# EXHIBIT A



**1stWEST**®

*Mergers & Acquisitions LLC*

August 15, 2017

**STRICTLY CONFIDENTIAL**

Mr. Billy Reeves, Jr.
President/Co-Owner
Mr. Robbie Baron
Vice President/Co-Owner
Founders Kitchen & Bath, Inc.
1755 Founders Parkway
Alpharetta, GA 30009

Dear Billy & Robbie:

Pursuant to our recent discussions, we are pleased to confirm the arrangements under which 1stWEST Mergers & Acquisitions, LLC ("1stWEST"), is exclusively engaged (as defined below) by Founders Kitchen & Bath, Inc. (together with any subsidiaries, the "Company") to act as its financial advisor in connection with a possible Transaction (as defined below) between the Company and any other person (any such person, together with its affiliates, a "Buyer" or "Investor," which terms shall be used interchangeably).

    1.    <u>Engagement and Services</u>. During the term of this letter agreement (the "Agreement"), 1stWEST will to the extent requested by the Company (a) assist the company in preparing an informational memorandum describing the Company and the opportunity; (b) assist the Company in identifying and contacting potential Buyers to ascertain their interest in a Transaction, and (c) advise and assist the Company in its negotiation of the financial aspects of a Transaction. The parties hereto agree that 1stWEST will not render any opinion as to the fairness to the Company, from a financial point of view, of the consideration to be received by the Company or its shareholders in connection with the Transaction. The Company and 1stWEST agree that the Standard Terms and Conditions attached hereto as <u>Exhibit A</u> form an integral part of this agreement and are hereby incorporated herein by reference in their entirety.

    2.    <u>Compensation</u>. The fees payable to 1stWEST for the foregoing services shall be as follows:

    (a)    A retainer of ten thousand dollars ($10,000) upon the signing of this agreement, plus

    (b)    Monthly retainers of five thousand dollars ($5,000) each, with the first such payment due thirty days after the signing of this agreement. A maximum of four (4) five thousand dollar ($5,000) retainers will be paid.

    (c)    A fee (the "Transaction Fee") equal to the Carved Out Transaction Fee Schedule of the total Consideration paid to the Company if one of the acquiring companies



    ("Carved Out Companies") are: Construction Resources, Strathmore Flooring or Sims-Lohman where the Company had prior negotiations. Any amount due under this section 2(c) will be reduced, dollar for dollar, by any amounts paid under sections 2(a) and 2(b).

  (d)  A fee (the "Transaction Fee") equal to the Non Carved Out Transaction Fee Schedule of the total Consideration paid to the Company for all companies that are not Carved Out Companies. Any amount due under this section 2(d) will be reduced, dollar for dollar, by any amounts paid under sections 2(a) and 2(b).

| 1stWEST Mergers & Acquisitions Transaction Fee Schedule - Founders Kitchen & Bath | | |
|---|---|---|
| Total Consideration Paid To Company | Carved Out Transaction Fee Schedule | Non Carved Out Transaction Fee Schedule |
| Under $20M | 1.50% | 3% |
| $20-$25M | 1.75% | 3.50% |
| $25M-$30M | 2% | 4% |
| $30M | 2.50% | 5% |

For purposes hereof, the term "Transaction" shall mean, whether in one or a series of transactions: (a) a merger, consolidation, joint venture or other business combination pursuant to which the business or certain of the assets or intellectual property rights of the Company are acquired by the Buyer; (b) the acquisition, directly or indirectly, by a Buyer by way of tender or exchange offer, negotiated purchase or other means of any capital stock of the Company; and/or (c) the acquisition by a Buyer, directly or indirectly, of some or all of the assets, properties and/or business of the Company by way of one or more licenses. The term "Consideration" shall mean the total amount of cash and the fair market value of other property paid or payable (whether payable at the closing or deferred or contingent, including such elements as purchase price of assets or stock, assumption of debt, covenant not to compete, employment agreement, management or consulting fees, performance incentives, and the present value of all rental payments to be made under any leases of realty or personalty and all payments with respect to options to purchase realty or personalty, to the extent that such payments exceed the fair market value thereof) to the Company and/or its shareholders in connection with the Transaction. Notwithstanding the foregoing, the term "Consideration" shall not include any lease or rental payments paid or payable by the Company or the Buyer to JHASK, L.L.C. For purposes of determining the fair market value of any non-cash consideration, such determination shall be made on the business day preceding the closing of the Transaction.



**1stWEST**
*Mergers & Acquisitions LLC*

3. <u>When Success Fee is Payable</u>. The Transaction Fee shall be payable in full in cash upon the signing of the final, closing documents for the Transaction. Both Company and 1stWEST agree and acknowledge that Company shall retain the sole and exclusive right and discretion to make any final decision regarding whether to consummate any Transaction, and 1stWEST shall be due no Transaction Fee hereunder unless and until a Transaction is consummated which was brought to the attention of Company through the efforts of 1stWEST, or where 1stWEST's work product was employed.

4. <u>Exclusivity</u>. During the term of this Agreement, 1stWEST will be the exclusive representative of the Company with respect to finding and executing one or more Transactions (other than the Company's legal and accounting professionals that may be involved in consummating a Transaction identified by 1stWEST).

5. <u>Expenses</u>. In addition to fees for professional services, Company agrees to reimburse 1stWEST for our reasonable, preapproved, expenses incurred in connection with this engagement, including out-of-region travel costs, extraordinary document production requests and other preapproved unusual expenses. Total reimbursed expenses listed above will be capped at $1,000.00. All reimbursed expenses must be preapproved by the Company.

6. <u>Term; Survival</u>. The initial term of this Agreement shall be for a period of thirty (30) days from the date of this Agreement, and thereafter shall be automatically renewed for successive periods of thirty (30) days until terminated. Notwithstanding the foregoing, Company may terminate this Agreement at any time by providing written notice of such termination to 1stWEST. Termination of this Agreement shall not affect 1stWEST's' right to the Transaction Fee in the event a Transaction is consummated within twelve (12) months after termination of this Agreement with a party identified by 1stWEST during the term of this Agreement or where 1stWEST's work product was employed; and Sections 1 and 2 set forth on <u>Exhibit A</u> shall survive termination of this Agreement.

7. <u>Entire Agreement: Binding Effect</u>. This Agreement, including <u>Exhibit A</u> attached hereto, contains the entire understanding of the parties and supersedes all prior discussions, understandings, or agreements relative to the subject matter hereof. This Agreement cannot be modified or changed orally but only in writing signed on behalf of the party against which enforcement of any waiver, modification, change, consent or discharge is sought. This Agreement shall be binding upon and inure to the benefit of the party's hereto and their respective personal representatives, successors, and assigns. This Agreement shall be legally binding with signatures received digitally.

8. <u>Heading: Counterparts</u>. Headings are for convenience only and shall not affect in any way the meaning or interpretation of this Agreement. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

9. <u>Notices</u>. All notices, demands and other communications hereunder shall be in writing and shall be deemed given if delivered personally (including delivery by any nationally recognized overnight delivery service) or three days after deposited in the United States mail, certified, return receipt requested, postage prepaid, to the parties at the addresses set forth at the beginning of this Agreement.



**Mergers & Acquisitions LLC**

    10.     <u>Severability</u>. The invalidity or illegality of any provision of this Agreement shall not affect the validity or legality of any other provision hereof. Any invalid or illegal provisions of this Agreement shall be construed by a court of competent jurisdiction to have the broadest scope permissible under the law of said jurisdiction, and if no validating construction is possible, shall be severable, and all other provisions hereof shall remain in full force and effect.

    11.     <u>Governing Law</u>. The laws of the State of Georgia shall govern the interpretation and performance of this Agreement.

    12.     <u>Default</u>. If the Transaction Fee is not paid in full at closing to 1stWEST by Company, then, in addition to any other remedies available at law, the Company will pay attorney fees and other expenses reasonably incurred by 1stWEST in the collection of the Transaction Fee.



**1stWEST**
*Mergers & Acquisitions LLC*

If the terms of our engagement set forth in this Agreement (including the attached Standard Terms and Conditions) are satisfactory, kindly sign the enclosed copy of this letter and return it to the undersigned. We look forward to working with Founders Kitchen & Bath on this assignment.

Accepted and Agreed As Of
The Date First Written Above

| Founders Kitchen & Bath | 1stWEST Mergers & Acquisitions, LLC |
|---|---|
| By: _____ | By: _____ |
| Name: Billy Reeves, Jr | Name: Ted R. Rieple |
| Title: President/Co-Owner | Title: Managing Partner |
| By: _____ | |
| Name: Robbie Baron | |
| Title: Vice President/Co-Owner | |



**EXHIBIT A**
Terms and Conditions

The following general terms and conditions shall be incorporated by reference into the engagement letter, dated August 15, 2017 (the "Engagement Letter"), by and between 1stWEST Mergers & Acquisitions, LLC ("1stWEST") and Founders Kitchen & Bath (together with any subsidiaries, the "Company"). Capitalized terms used below without definition shall have the meanings assigned to them in the Engagement Letter and any references to the Agreement shall mean the Engagement Letter together with these Standard Terms and Conditions.

Section 1. <u>Indemnification and Contribution</u>.

The Company agrees to indemnify and hold harmless 1stWEST and its affiliates, and the respective partners, members, agents and employees of 1stWEST and its affiliates (collectively, the "Indemnified Party"), from and against any losses, claims, demands, damages or liabilities of any kind relating to or arising out of activities performed under the agreement, any Transaction or 1stWEST's role in connection therewith, except to the extent they are determined to have resulted from 1stWEST's bad faith, gross negligence or willful misconduct. In no event shall any Indemnified Party be responsible for any special, indirect, punitive or consequential damages.

Section 2. <u>Financial Advisory Role, Information, Reliance, Confidentiality</u>.

(a) The Company understands that 1stWEST is acting solely as a financial advisor, is acting as an independent contractor and is not undertaking to provide any legal, accounting or tax advice in connection with its engagement under the Agreement and that 1stWEST's role in any due diligence will be limited to solely to assisting the Company in coordinating the work of the Company's other professional advisors.

(b) The Company agrees to provide to 1stWEST all information requested by 1stWEST for the purposes of its engagement under the Agreement and also to provide reasonable access to employees, officers and directors of the Company. 1stWEST shall be entitled to rely upon and assume, without any obligation of independent verification, the accuracy and completeness of all information that is publicly available and all information that has been furnished to it by the Company or the Buyer or otherwise reviewed by 1stWEST, and 1stWEST shall not have any responsibility or have any liability therefor.

(c) Information provided by the Company to 1stWEST in connection with this Agreement will be kept confidential and will be used by 1stWEST only for purposes of its engagement hereunder, except information that (i) was in 1stWEST's possession prior to its disclosure by the Company, (ii) is publicly disclosed other than by 1stWEST or its representatives, (iii) is obtained by 1stWEST from a source other than Company or its representatives, (iv) the Company agrees may be disclosed, or (v) is required or requested to be disclosed under compulsion of law, or by order or act of any court or governmental or regulatory authority.