## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FARHONDA ROBINSON,<br><br>                    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; and SANTANDER CONSUMER USA INC.,<br><br>                    Defendants. | **Case No.:**<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br>1.  **FCRA, 15 U.S.C. § 1681,** *et seq.* |

Plaintiff Farhonda Robinson ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendant Santander Consumer USA Inc. ("Santander") and Defendant Equifax Information Services, LLC ("Equifax") (collectively, "Defendants").

## I.    <u>INTRODUCTION</u>

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* by Equifax. Plaintiff contends Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. §

1

1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.      Plaintiff's Complaint also alleges that Equifax also violated 15 U.S.C. § 1681, *et seq.,* by failing to reasonably investigate Plaintiff's consumer dispute, which resulted in Equifax reporting inaccurate information about Plaintiff.

3.      Plaintiff's Complaint also arises from violations of the FCRA by Defendant Santander for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Equifax.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.   **PARTIES**

6.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7.      Plaintiff is a natural person who resides in Clarkson, Georgia.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Santander is a financial institution engaged in the business of giving credit and collecting debt. Santander is also a "furnisher," as contemplated by 15 U.S.C. § 1681s-2. Upon information and belief, Santander is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Santander's principal place of business is located at Dallas, Texas. Santander can be served through its registered agent, CT Corporation System, located at 289 S Culver St., Lawrenceville, GA 30046.

10.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its

registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

11.     Defendant Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f) of the FCRA.

12.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

13.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

15.     Neither Santander nor Equifax maintained procedures reasonably adapted to avoid any such violations.

## IV.   **FACTUAL BACKGROUND**

16.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

17.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

18.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

19.    The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

20.    Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

21.     Equifax regularly obtains consumer bankruptcy information to include in consumer reports.

22.     Equifax's consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

23.     Equifax obtains consumer information from various sources. Some consumer information is sent directly to Equifax by furnishers, and other information is independently gathered by Equifax from third party providers, vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

24.     Equifax regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention

6

of including this bankruptcy information on the consumer reports it sells to third parties such as lenders.

25.     The diligence Equifax exercises in uncovering and recording consumer bankruptcy filings is not replicated in its subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

26.     Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

27.     Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

28.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions.

29.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in the consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Equifax's consumer reports.

30.     The information Equifax includes in a consumer report contributes to the consumer's overall creditworthiness and determines his or her FICO Scores.

31.     FICO Scores are calculated using information contained in Equifax's consumer reports.

32.     FICO and other third-party algorithms use variables or "attributes" derived from the consumer's consumer report to calculate a "credit score," which is a direct reflection of the consumer's creditworthiness.

33.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

   b.   The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is

in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

34.    Lenders also consider a consumer's debt-to-income ratio ("DTI") before deciding to extend credit or approve financing terms.

35.    DTI compares the total amount a consumer owes to the total amount the consumer earns.

36.    A consumer's income, however, is not included in his or her consumer report, only his or her amount of debt is.

37.    The higher the amount of reported debt that the consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for the consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

38.    A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

39.    Equifax is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have

been reaffirmed or successfully challenged in an adversary proceeding, are discharged.

40.    However, Equifax also knows that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

41.    Further, Equifax knows that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

42.    Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which Equifax independently obtains consumer bankruptcy case information.

43.    Equifax also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

44.    Despite the availability of accurate consumer information, Equifax regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

45.    Equifax regularly publishes consumer information that conflicts with information provided by data furnishers to Equifax, already included in its credit

files, contained in public records that it regularly accesses, or sourced through its independent and voluntary efforts.

46.     Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

47.     Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in its own files.

48.     Equifax also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

49.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Equifax for its inaccurate credit reporting following a Chapter 7 discharge.

50.     Thus, Equifax is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Equifax is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

<u>*Allegations Specific to Credit Reporting of Plaintiff*</u>

51.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about December 16, 2021, in the United States Bankruptcy Court for the Northern District of Georgia (Case No. 21-59342-jwc).

52.     Plaintiff received an Order of Discharge on or about March 29, 2022.

53.     Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

54.     Equifax prepared one or more consumer reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

55.     The allegations in this complaint against Defendants are based on the reporting by Defendants in Plaintiff's July 8, 2022, Equifax consumer disclosure obtained by Plaintiff.

56.     Equifax obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

57.     In the Public Records section of Plaintiff's consumer report, Equifax included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

58.     Equifax also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

59.     Equifax is aware that it is generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

60.     Equifax should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

61.     Equifax failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

62.     Equifax inaccurately reported Plaintiff's Santander Account (the "Santander Account"), ending with *************1000 and opened in February 2015, which pre-dated Plaintiff's bankruptcy filing.

63.     The Santander Account was discharged on or about March 29, 2022. Therefore, the Santander Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

64.     However, Equifax inaccurately reported the discharged Santander Account as a "Charge Off" account.

65.     Equifax did not indicate that the Santander Account was discharged in bankruptcy, despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer report and indicating that other pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7."

14

66.     The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially where, as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

67.     The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

68.     According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges. The timeframe is generally between 120 and 180 days after the consumer becomes delinquent, and a charge-off does not mean that the consumer no longer owes the debt; the consumer is still legally obligated to pay the debt.

69.     Notably, the other national consumer reporting agencies, Experian and Trans Union, did not inaccurately report the Santander Account like Equifax.

### *Plaintiff's Disputes*

70.     On or about October 7, 2022, Plaintiff sent a certified letter to Equifax disputing its inaccurate reporting of the Santander Account.

71.    The letter specifically advised that the Santander Account was discharged in bankruptcy.

72.    Upon information and belief, Equifax received Plaintiff's dispute letter.

73.    Upon information and belief, Equifax forwarded Plaintiff's dispute to Santander within 5 business days of receipt.

74.    Upon information and belief, Santander received Plaintiff's dispute.

75.    On or about October 17, 2022, Equifax completed its investigation into Plaintiff's dispute.

76.    Equifax's dispute response, however, stated that "THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY," and Equifax continued to report the Santander Account as a "Charged Off Account."

77.    Equifax did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded an automated dispute form to Santander, despite possessing independent information that indicated the Santander Account was discharged.

78.    Although Equifax could have verified that the Santander Account was discharged through the same sources from which it receives consumer bankruptcy information, it neglected to do so.

79.     Rather than perform an investigation of Plaintiff's dispute based on reasonably available public records and information known by it, Equifax merely parroted information furnished by Santander that indicated the Santander Account was not discharged in bankruptcy.

80.     Equifax's failure to report the Santander Account accurately after receiving Plaintiff's dispute is particularly egregious because Equifax knew the information it reported was factually inaccurate and conflicted with information contained in its own records.

81.     Santander failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax. Santander failed, among other things, to review (or intentionally ignored) all relevant information regarding the dispute.

82.     Consequently, Santander continued to furnish inaccurate data to Equifax despite possessing information from which it could have reported the Santander Account accurately. Santander's failure to provide Equifax with accurate account information is particularly egregious as Santander was notified of the inaccurate information through Plaintiff's dispute.

83.     Defendants inaccurately reported account statuses and/or payment histories.

84.     Santander and Equifax failed to indicate that the Santander Account was included/discharged in Chapter 7 Bankruptcy.

85.     Defendants' reporting of the Santander Account is patently false/incorrect and therefore inaccurate.

86.     If not patently false, Defendants' reporting of the Santander Account is materially misleading and therefore inaccurate.

87.     Plaintiff specifically notified Santander and Equifax that the Santander Account was discharged, but the Defendants rejected this specific notice.

<u>*Plaintiff's Damages*</u>

88.     Upon information and belief, had Defendants accurately reported the Santander Account with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

89.     The inaccurate reporting by Defendants suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the Santander Account.

90.     After Plaintiff's bankruptcy discharge, Plaintiff applied for a personal loan with various entities, and was denied due to the inaccurate reporting of the Santander Account by Equifax.

91.     Plaintiff applied for a credit card with Capital One in or around February 2023, and was approved at a less than favorable rate and a lower credit limit due to the inaccurate reporting of the Santander Account by Defendants.

92.     Defendants' inaccurate reporting of the Santander Account, along with additional information belonging to Plaintiff, was published to various creditors by Equifax during the process of Plaintiff's credit applications.

93.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

94.     Plaintiff sustained actual monetary damages from the expense of certified mail tracking of Plaintiff's dispute to Equifax.

95.     As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred.

96.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, and anxiety.

97.    Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild her credit.

## V.    COUNT I

### Equifax's Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)

98.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

99.    The FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

100.   In this case, Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

101.   Equifax independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

102.   When Equifax procured and published Plaintiff's bankruptcy information, it had an obligation to follow reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

103.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

104.   Equifax knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

105.   Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

106.   Additionally, Equifax possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

107.   Equifax knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

108.   Yet Equifax inaccurately reported the Santander Account, which predated Plaintiff's Chapter 7 Bankruptcy, as a "Charge-Off" account without any indication the account was discharged.

21

109.   Despite knowledge of these legal obligations, Equifax willfully and consciously breached its duties under the FCRA. Accordingly, Equifax deprived Plaintiff of her rights under the FCRA.

110.   Equifax had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

111.   Individual furnishers of account information also notified Equifax of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer report that are labeled "discharged in bankruptcy" with zero-dollar balances.

112.   Yet in this case, Equifax reported the Santander Account, which pre-dated Plaintiff's bankruptcy, with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

113.   Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to it.

114.   Even after Plaintiff notified Equifax of the inaccurate information it included in Plaintiff's credit file, Equifax continued to inaccurately report the Santander Account with an outstanding balance.

115.   Equifax's inaccurate reporting was particularly egregious because it has the ability to independently confirm that the Santander Account was discharged by reviewing its own records or accessing readily available public records.

116.   Equifax therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, Equifax possessed the information confirming that the Santander Account was discharged, including information concerning continued payments, and/or specific notice from Plaintiff.

117.   In around 2009, Equifax implemented its own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols., Inc.*, No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

118.   Equifax's bankruptcy scrub software identifies pre-petition accounts and makes assumptions about which accounts were discharged through the Chapter 7, even when the furnisher does not update the accounts as discharged.

119.   In other words, Equifax's automated bankruptcy scrub assumes Equifax's notice of a Chapter 7 discharge is in fact notice that a consumer's pre-

petition accounts may be reporting inaccurately, and Equifax will override data reported by a furnisher according to Equifax's assumptions and algorithms.

120.   However, Equifax has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations of certain types of pre-bankruptcy accounts in Equifax's software programming of its automated "bankruptcy scrub" it has been employing for well over a decade.

121.   Equifax also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the Santander Account was discharged following Plaintiff's dispute, which information is reasonably available from the same sources Equifax procures consumer bankruptcy information.

122.   Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

123.   Alternatively, Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

124.   When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

125.   When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

126.   Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

127.   Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Equifax also violated the FCRA by failing to perform a reasonable reinvestigation of the Santander Account even after Plaintiff notified it of the inaccurate information in Plaintiff's credit file.

128.   Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to, the following:

(a)   Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)   Failing to consider all relevant information while investigating Plaintiff's dispute.

25

(c)     Failing to include all relevant information when notifying Santander of
Plaintiff's dispute.

129.   Instead of reasonably reinvestigating Plaintiff's dispute, Equifax
continued to report the Santander Account with an outstanding balance after
Plaintiff's bankruptcy discharge.

130.   Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

131.   Plaintiff suffers actual damages, including a decreased credit score, loss
of credit opportunities, credit denial, and other financial harm caused by Equifax's
inaccurately reporting a balance for a debt that was discharged in bankruptcy, and
otherwise failing to report that the debt was discharged in bankruptcy.

132.   Plaintiff also suffers interference with daily activities caused by other
harm including, but not limited to, emotional distress, mental anguish, loss of sleep,
humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

133.   Equifax is a direct and proximate cause of Plaintiff's damages.

134.   Equifax is a substantial factor in Plaintiff's damages.

135.   Equifax's acts, as described above, were done willfully and knowingly;
or, alternatively, were committed negligently.

136.    Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq.*

## VI.    COUNT II
## Santander's Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

137.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

138.    The FCRA requires furnishers of information like Santander to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

139.    Santander knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law. Santander obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, Santander acted

consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

140.   Plaintiff disputed the Santander tradeline through Equifax.

141.   Thereafter, Equifax forwarded Plaintiff's dispute to Santander, notifying Santander that Plaintiff was disputing the information it had furnished about the Santander Account.

142.   Santander received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

143.   Santander continues to furnish inaccurate information about Plaintiff to Equifax, even though Santander possessed all relevant information about the Santander Account and the inaccuracy that Plaintiff disputed.

144.   The inaccurate Santander account materially and adversely affects Plaintiff's credit standing.

145.   On at least one occasion within the past two years, by example only and without limitations, Santander violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Equifax.

146.   Santander violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-

2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)     Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b)     Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c)     Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)     Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)     Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the

Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

147.   Santander unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to Equifax.

148.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Santander's violative conduct.

149.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

150.   Santander is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

151.   Consequently, Santander is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)   Declaratory judgment that Equifax violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

(b)   Declaratory judgment that Santander violated the FCRA, 15 U.S.C. § 1681s-2(b);

(c)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e)   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f)   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(g)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII. __JURY DEMAND__

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 12th day of May 2023.

By: */s/ Jenna Dakroub*
Jenna Dakroub, GA #385021
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com
*Attorney for Plaintiff,*
*FaRhonda Robinson*