IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CADDO SYSTEMS, INC. and 511 TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PROGRESS SOFTWARE CORPORATION <br><br> Defendant. | Misc. Action No. _____ <br><br> (Case No. 1:22-cv-10815 pending in the United States District Court for the District of Massachusetts) |

**DEFENDANT PROGRESS SOFTWARE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH PLAINTIFFS' THIRD-PARTY SUBPOENAS**

Pursuant to Federal Rules of Civil Procedure 45 and 26, Defendant Progress Software Corporation ("Progress"), by and through its undersigned counsel, respectfully submits this memorandum in support of its motion to quash the *Subpoenas to Testify at a Deposition in a Civil Action* (the "Subpoenas") to SHI International Corp., ComponentSource Holding Corporation, Softchoice Corporation, Inc., dated May 1, 2023 and issued by Plaintiffs Caddo Systems, Inc. and 511 Technologies, Inc. ("Caddo"). (Subpoenas attached as Exhibit 1.)

4883-8272-1379.v1

Counsel for Progress in the Issuing Court met and conferred with counsel for Caddo concerning narrowing or withdrawing the Subpoenas; counsel for Caddo refused.

## I. INTRODUCTION

This Court should quash the Subpoenas for a straightforward reason: Caddo has already tried and failed to compel information about Progress's customers, the same information sought by the Subpoenas, in the underlying litigation in the District of Massachusetts (the "Issuing Court"). The Issuing Court sustained Progress's objection and denied Caddo's motion, finding that the information sought by Caddo was "significantly overbroad" and "not material to the issues in this case." See Exhibit 6 at p. 4 (No. 1:22-cv-10815, ECF No. 59 (D. Mass. May 5, 2023)). To avoid the adverse ruling in the Issuing Court, Caddo issued five subpoenas to Progress's resellers, located in jurisdictions throughout the country, seeking the same information it had been denied in the Issuing Court. Caddo should not be permitted to flout the rulings of the Issuing Court, while harassing and unduly burdening third-parties in the process. Its inappropriate end-run around the Issuing Court's prior Orders should be rejected and in turn, the Subpoenas should be quashed.

## II. BACKGROUND

Caddo sued Progress in the United States District Court for the District of Massachusetts in May 2022, alleging that certain of Progress's software products infringe the method claims of seven of Caddo's patents. Discovery has been open for six months. Progress has produced information about its sales and costs of the accused products, and Caddo is currently in the process of taking depositions of Progress's witnesses on those topics.

### A. Caddo's Motion to Compel

During discovery, Caddo sought from Progress the identity of Progress's customers and detailed information about them. Progress objected on two grounds: (i) customer information is not relevant to any claim or defense in the underlying case because the identity and contact information of Progress's customers has no bearing on whether the asserted method claims have been infringed or on the measure of requested damages and (ii) Progress's detailed customer lists constitute Progress's trade secret information and implicates privacy concerns of Progress's customers inside and outside the United States.

On March 6, 2023, Caddo filed a motion to compel seeking, among other things: the "identity, principal, and shipping address of those customers to which sales were made." (ECF No. 40. References to docket entries herein refer to the

docket in *Caddo Systems, Inc., et al. v. Progress Software Corp.,* Case No. 1:22-cv-10815-WGY (D. Mass.)).  In its memorandum accompanying the motion, Caddo argued that "Progress must provide the identification of its customers . . . as well as their principal and shipping address." (Ex. 3 at p. 25, ECF No. 41).  Caddo argued that the identity and detailed information about Progress's customers is relevant to direct and induced infringement as well as damages. (*Id.*).  Caddo also asserted that it must be able to "assess[] for itself where Progress has sold the Accused Instrumentalities and where the supposed 'foreign' customers use these instrumentalities." (Ex. 3 at p. 25, ECF No. 41).

In opposition, Progress explained why the identity of its customers and their addresses are not relevant to any claim or defense in the case. (Ex. 4 at pp. 16 - 18, ECF No. 48).  Progress noted that "[t]he actual identity of a customer is not relevant to the whether the steps of Caddo's asserted method claims have been practiced in the United States.  Nor is the information relevant to any damages inquiry—the *Georgia-Pacific* factors are indifferent as to the identity of the defendant's customers." (*Id.* at p. 17.)  Progress cited exemplary cases from around the country denying requests by plaintiffs for sensitive, trade secret customer lists and noted the heightened concerns surrounding information about Progress's foreign customers, which "implicates differing privacy regimes across the globe." (*Id.*).

Progress also predicted in its opposition that Caddo would employ third-party discovery to harass Progress's customers for improper purposes: "Progress has genuine concerns that Caddo, a litigious non-practicing entity, would weaponize Caddo's trade secret information to harass Progress's customers with vexatious third-party subpoenas and follow-on lawsuits." (*Id.* at p. 18).

### B. The Court's Denial of Caddo's Motion to Compel

The Issuing Court denied Caddo's motion to compel in its entirety. At the conclusion of the parties' claim construction hearing on March 23, 2023, the Court stated: "And there's only one more thing that I should deal with this afternoon, and that's Caddo's motion to compel. That motion is denied." (Ex. 5 at p. 25 (Transcript of March 23, 2023 Markman Hearing.)) The decision appeared on the docket after the hearing: "The Court enters an order denying [40] Motion to Compel." (Ex. 6 at p. 2, ECF No. 51).

The Issuing Court reiterated its opinion that Caddo's discovery requests were overbroad in its order denying a *different* discovery motion by Caddo. The Issuing Court noted that Caddo's motion to amend its infringement contentions "appears to have been spurred by this Court's denial of Caddo's overbroad discovery requests." (Ex. 6 at p. 3, ECF No. 56).

On May 5, 2023, the Issuing Court reiterated its position a third time. Caddo asked the Issuing Court to issue a written opinion explaining its denial of the motion to compel. The Issuing Court denied the motion, stating: "The materials sought to be compelled are significantly overbroad and seek categories of material not material to the issues in this case." (Ex. 6 at p. 4, ECF No. 59).

C.   **The Subpoenas**

On May 1, 2023, after the Issuing Court had already denied its motion to compel detailed customer information, Caddo provided notice to Progress that it intended to serve subpoenas on five of Progress's resellers. (*See* Ex. 2). The Subpoenas at issue here, to SHI International Corp., ComponentSource Holding Corporation, Softchoice Corporation, Inc., request the same information as the other two that were served in different jurisdictions for compliance. (*See* Ex. 1).

Among other things, the subpoenas request that Progress's resellers produce documents and provide testimony on topics the Issuing Court already found were "significantly overbroad" and "not material to the issues in this case." For example, Requests for Production Nos. 7 and 8 specifically request the identities of Progress's customers and detailed information about them:

- **Request for Production No. 7:** Identify all customers to whom You sold the Accused Instrumentalities since May 2016, and for each Accused Instrumentality sold, state the total number of units purchased,

> licensed, and/or renewed, and total amount of sales for said purchase, license, and/or renewal.
>
> - **Request for Production No. 8:** For each customer identified in response to Request for Production No. 7, list the customer's deployment location at which each Accused Instrumentality was deployed, billed, shipped, or delivered since May 2016.

(*See* Ex. 1 at pp. 16). Other requests for production also sweep in information about customers and worldwide sales, both of which were the subject of Caddo's unsuccessful motion to compel, including, for example, Request for Production No. 3, which includes any contract or agreement "involving" Progress, such as "purchase orders and sales invoices," which themselves may include sensitive customer information. (*Id.* at p. 15). The deposition topics also sweep in this customer information. *See, e.g.*, Topic 4, 8 (requesting detailed sales information); *see also* Topics 1, 2 (requesting testimony on all documents produced). (*Id.* at pp. 17 – 18).

The customers of the resellers are *Progress's* customers as well.[1] Progress's products cannot be used without a license from Progress, regardless of whether Progress sells that license to a customer directly or through a reseller. There is no

---

[1] During his deposition, one of Progress's corporate designees testified in response to questioning from Caddo that customers of the resellers are in fact Progress's customers. The transcript of that deposition is not yet available because the deposition occurred on the same day these papers are being submitted.

4883-8272-1379.v1

legitimate reason for Caddo to seek information about Progress's customers from resellers, other than to avoid the orders of the Issuing Court.

The balance of the subpoenas seek information that is, at best, unreasonably cumulative of information that Caddo can and should pursue with Progress as a party to the litigation. For example, Deposition Topic No. 3 requests testimony on: "The design, development, structure, function, operation, configuration, and/or maintenance of the Breadcrumb and/or Navigational Functionality sold, leased, licensed, or provided to You by PSC," which is information that is the subject of several interrogatories and Rule 30(b)(6) deposition topics from Caddo to Progress. (*See* Ex. 1 at p. 17). Likewise, the requests for production seek documents and communications "involving" Progress and "between" the reseller and Progress. *E.g.*, Request for Production Nos. 3, 4 (Ex. 1 at pp. 15 – 16). The requests and topics seek detailed sales and financial information from the resellers, which has no relevance whatsoever to a case between Caddo and Progress.

### III. ARGUMENT

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . fails to allow a reasonable time to comply . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . or subjects a person to undue burden." Fed. R. Civ. P.

45(d)(3)(A). Moreover, "[t]o protect a person subject to **or affected by** a subpoena," the compliance court can quash a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B) (emphasis added). Rule 26 also provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C).

When evaluating whether to quash a Rule 45 subpoena to a third party, courts routinely consider the relevance of the information being sought. *See Staff4Jobs, LLC v. List Logistics, LLC*, No. CV1813399BRMLHG, 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020) ("[A]lthough lack of relevance is not among the list of reasons to quash a subpoena set forth in Rule 45, courts have incorporated it as a factor when considering a motion to quash."); *R. Prasad Indus. v. Flat Iron Envt'l. Sols. Corp.*, No. CV-12-08261-PCT-JAT, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014) ("Th[e] mere 'relevance' standard, however, does not apply to non-parties."); *Solamere Cap. v. DiManno*, No. 22-MC-91197-ADB, 2022 WL 3154551, at *5 (D.

Mass. Aug. 8, 2022) (citations omitted) (noting relevance is a consideration in assessing undue burden).

### A. Progress has standing to move to quash the Subpoenas.

Progress will be "affected by" the Subpoenas and therefore has standing to challenge them. The Subpoenas seek Progress's proprietary and trade secret customer information and contravenes prior orders of the Issuing Court that rejected Caddo's bid to discover such information in the litigation between Caddo and Progress. Parties to a litigation can have standing to challenge a Rule 45 subpoena on a number of grounds, including where third-party subpoena seek information that implicates a party's trade secrets and privacy interests. *See* Fed. R. Civ. P. 45(d)(3)(A); *Malibu Media, LLC v. Doe*, No. 15-1742, 2015 U.S. Dist. LEXIS 139966, at *2 (D.N.J. Oct. 14, 2015) (holding a defendant had sufficient interest in his personal identifying information to seek an order quashing a subpoena to a third party.); *Randstad Gen. Partner (US), LLC v. Beacon Hill Staffing Grp. LLC*, No. 19-cv-1655-ODE, 2020 WL 10460621, at *5 (N.D. Ga. Mar. 18, 2020) (finding standing where plaintiff requested documents and, upon defendant's objection, plaintiff served subpoenas on third-parties seeking the same documents);[2] *Orthoflex,*

---

[2] Should the Court decide that Progress does not have standing to move to quash the subpoenas, Progress respectfully requests the Court interpret its motion as one for a protective order under Fed. R. Civ. 26, consistent with standing practice in jurisdictions across the country.

*Inc. v. Thermotek, Inc.*, No. 12-mc-13-PHX-JAT, 2012 WL 1038801, at *1 (D. Ariz. Mar. 28, 2012) (finding Defendant had standing to challenge third-party subpoena which "contain[ed] trade secrets in the form of confidential customer information" and noting that court where action was pending "ha[d] issued an order limiting the disclosure of that information"). The party's claim to protection need not be "weighty" but rather simply "*some* personal right or privilege in the information." *Ponder v. Ocwen Loan Servicing, LLC*, No. 19-MC-91215-ADB, 2019 WL 2249675, at *2 (D. Mass. May 24, 2019) (citation omitted). There can be no genuine dispute that Progress has standing to challenge Caddo's previously-denied request for *Progress's* customer information.

**B.     The Subpoenas should be quashed because they are an end-run around the Issuing Court's prior discovery orders.**

A party cannot use a third-party subpoena as an "end-run around Rule 34" to seek improperly information that it wants from the opposing party. *Xiao Wei Catering Linkage in Inner Mongolia Co. Ltd. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, No. 15-cv-10114-DJC, 2018 WL 1567604, at *3, *6 (D. Mass. Mar. 30, 2018); *see also PCA-Corrs., LLC v. Akron Healthcare LLC*, 2021 WL 2043118, at *3 (S.D.

---

*Kemper v. Equity Ins. Co.*, No. 1:15-CV-2961-TCB, 2016 WL 7428215, at *7 (N.D. Ga. Apr. 29, 2016); *Ramos v. Walmart, Inc.*, No. 21-cv-13827, 2023 WL 2327208, at *3 n.3 (D.N.J. Mar. 2, 2023) (same).

Ohio May 21, 2021) (granting defendant's motion to quash where plaintiff "sen[t] out requests to a nonparty for the opposing side's own documents" in "an attempt to circumvent Rule 34" that was "unreasonably cumulative"); *Stokes v. Xerox Corp.*, 2006 WL 6686584, at *3 (E.D. Mich. Oct.. 5, 2006) (same).  Here, Caddo sought customer information from Progress, and the Issuing Court denied the request.  Caddo's decision to issue Rule 45 subpoenas to seek the same information is a classic end-run around the established procedures for party discovery under, for example, Rules 26, 30, and 33.

    The Issuing Court has already ruled on the relevance of the information in question, finding that it is not material to the issues in the case.  Where a court has already found information to be not relevant to the action, the court should quash a subpoena for the same information. *See Cabi v. Boston Childs. Hosp.*, No. 15-CV-12306-DJC, 2017 WL 8232179, at *4 (D. Mass. June 21, 2017) (granting motion to quash third-party subpoena for information that the court "already had occasion to consider . . . in the context of a previously filed motion and concluded that the information requested [was] not relevant"); *see also Randstad Gen. Partner (US)*, 2020 WL 10460621, at *5 (considering prior objections to production during party discovery in evaluation of motion to quash third-party discovery).  Third-party

12

discovery on detailed customer information would be in direct conflict with the prior orders of the Issuing Court.

The fact that the Subpoenas seek Progress's confidential commercial information, including customer lists and detailed information about those customers, provides an independent basis to quash the subpoena. Fed. R. Civ. P. 45(d)(3)(B); *see*, *e.g.*, *AmSurg Holdings Inc. v. Anireddy*, No. 17-cv-4181, 2020 WL 1703617, at *2 (D. Ariz. Apr. 8, 2020) (Rule 45 "permits a court to quash or modify a subpoena requiring disclosure of confidential commercial information to protect a person subject to or affected by it") (internal alterations and quotation marks omitted).

Caddo may argue that it is seeking information about the customers of the resellers, as opposed to the customers of Progress, such that Progress's confidential commercial information is not implicated. This would be a red herring. The only possible basis Caddo could have to seek information about the resellers' customers is if Caddo believed that information sought had something to do with Progress and Caddo's infringement claims against Progress. But here, the Issuing Court has already determined that detailed customer information about Progress's customers is not relevant, and such information about customers of resellers of Progress's products is even more attenuated.

### C. The Subpoenas should be quashed because they are unreasonably cumulative or duplicative of information sought from Progress.

The topics and requests for production that do not directly concern Progress's customer information should also be quashed because they are totally irrelevant to the claims and defenses in the litigation and unreasonably cumulative of the information sought from Progress in the litigation. Requests concerning financial information about the resellers has no relevance to the case. Requests concerning discussions with or agreements between resellers and Progress are also not relevant and, in any event, should be sought from Progress, rather than third-party resellers. Any objections to those requests are properly addressed between the parties before the Issuing Court, without involving or burdening third parties and risking inconsistent approaches to discovery.

### D. In the alternative, the Court should transfer these proceedings to the Issuing Court.

Federal Rule of Civil Procedure 45(f) provides that a court where compliance is required "may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." If the Court is not inclined to grant this motion or is inclined to grant this motion in part subject to further proceedings, Progress respectfully requests that the Court

4883-8272-1379.v1

transfer further proceedings on the motion to the United States District Court for the District of Massachusetts, where the underlying litigation is pending.

Counsel for Progress has conferred with counsel for SHI International Corp. and ComponentSource Holding Corporation; counsel for those entities indicated that they consent to the transfer. Counsel for Progress has been unsuccessful in reaching Softchoice Corporation, Inc.

Caddo has issued subpoenas to five different Progress resellers, requesting subpoena compliance in three remote jurisdictions, the District of Arizona, the District of New Jersey, and the Northern District of Georgia. Each of the subpoenas seek substantially similar information from each of the five resellers. Transfer of the subpoenas to the issuing court is therefore appropriate for purposes of uniformity in the resolution of the issues across the multiple subpoenas and because the subpoenas are little more than an end-around the prior orders of the issuing court. These factors support a finding of exceptional circumstances here. *See OrthoAccel Techs. Inc. v. Propel Orthodontics LLC*, No. 16-mc-71, 2016 WL 6093367, at *2 (D. Ariz. Oct. 19, 2016) (noting that (i) pendency of multiple subpoenas across several districts, (ii) implication of prior orders of the issuing court, and (iii) potential for inconsistent rulings support transfer of subpoena-related dispute to the issuing court); *Harapeti v. CBS Television Stations Inc.*, No. 21-15675, 2021 WL 8316391,

at *2 (D.N.J. Dec. 1, 2021) ("Such exceptional circumstances include the need 'to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts.'") (citing Fed. R. Civ. P. 45(f) advisory committee's note (2013)).

## IV.   CONCLUSION

For the foregoing reasons, Progress respectfully requests that this Court enter an order:

1.  relieving third-parties SHI International Corp., ComponentSource Holding Corporation, Softchoice Corporation, Inc. from having to respond to any Caddo subpoena pending further Court order;

2.  prohibiting Caddo from contacting Progress's third-party resellers pending further Court order;

3.  quashing the subpoena or, in the alternative, entering a protective order limiting the scope of the subpoena; and

4.  entering any such further relief as the Court deems proper.

In the alternative or in addition to the relief requested above, Progress respectfully requests that this Court transfer proceedings concerning the Subpoena to the Issuing Court, the District of Massachusetts, in accordance with Federal Rule of Civil Procedure 45(f). Transfer to the Issuing Court will promote judicial efficiency and reduce the risk for inconsistent rulings, including with respect to the prior orders of the Issuing Court. Counsel for Progress has conferred with counsel

for SHI International Corp. and ComponentSource Holding Corporation; counsel for those entities indicated that they consent to the transfer.  Counsel for Progress has been unsuccessful in reaching Softchoice Corporation, Inc.

Respectfully submitted this 12th  day of May, 2023.

>ARNALL GOLDEN GREGORY LLP
>
>*/s/Aaron M. Danzig*
>Aaron M. Danzig (GA Bar No. 205151)
>171 17th Street NW
>Suite 2100
>Atlanta, GA  30363
>404.873.8504 phone
>404.873.8505 fax
>aaron.danzig@agg.com
>
>and
>
>James R. Anderson (*admission pro hac vice application forthcoming*)
>Proskauer
>One International Place
>Boston, MA 02110-2600
>617.526.9851 phone
>617.526.9899 fax
>jaanderson@proskauer.com
>
>*Attorneys for Defendant Progress Software Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed served on the following counsel of record via email:

Raymond P. Ausrotas
William F. McGonigle
ARROWOOD LLP
10 Post Office Square, 7th Floor South
Boston, MA 02109
RAusrotas@arrowoodllp.com
wmcgonigle@arrowoodllp.com

Alex Chan
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
achan@devlinlawfirm.com

SHI International Corp.
c/o Kevin C. McCann, General Counsel
290 Davidson Avenue
Somerset, NJ 08873
kevin_mccann@shi.com

ComponentSource Holding Corporation
c/o Mackenzie Martin, Partner
BakerMcKenzie
1900 N. Pearl Street, Suite 1500
Dallas, TX 75238
Mackenzie.Martin@bakermckenzie.com

Softchoice Corporation, Inc.
Habeeb Syed
680 Engineering Drive, Suite 100
Norcross, GA 30092
habeeb.syed@softchoice.com

This 12th day of May, 2023.

> */s/ Aaron M. Danzig*
> Aaron M. Danzig

4883-8272-1379.v1