# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CADDO SYSTEMS, INC. and 511 TECHNOLOGIES, INC., | C.A. No. 1:22-cv-10815-WGY |
| Plaintiffs, |  |
| v. | **JURY TRIAL DEMANDED** |
| PROGRESS SOFTWARE CORPORATION |  |
| Defendant. |  |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Alex Chan (*pro hac vice*)
achan@devlinlawfirm.com
1526 Gilpin Ave.
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorney for Plaintiffs*
*Caddo Systems, Inc. and 511 Technologies, Inc.*

Dated: March 6, 2023

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL STANDARDS ....................................................................................... 4

IV.    ARGUMENT ....................................................................................................... 5

    A.    Progress's Worldwide Sales Information for the Accused Instrumentalities Is Relevant to Issues of Infringement, Validity, and Damages ..................................................... 6

        i.    Worldwide Sales Discovery Is Relevant to Progress's Liability for Infringement and Damages ............................................................................................... 6

        a.    Caddo Does Not Have to Prove Progress's Infringement Liability Before Progress Must Produce Worldwide Sales Information ................................................................. 8

        ii.    Worldwide Sales Discovery Is Relevant to the Reasonable Royalty Owed to Caddo for Progress's Infringement ................................................................. 9

        iii.    Worldwide Sales Discovery Is Relevant to Progress's Allegations That Caddo's Patents Are Obvious ......................................................................... 12

        iv.    Courts in This District and Other Districts Routinely Grant Motions to Compel the Production of Worldwide Sales Information .................................................... 14

    B.    Progress Must Produce Discovery Relating to the Identity and Principal/Shipping Address of Those Customers Whose Sales Progress Has Refused to Produce ......................... 16

    C.    Caddo is Entitled to Recover Costs and Fees in Connection with this Motion ................ 18

V.    CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*3Com Corp. v. D-Link Sys.*,
No. C-02-2177-VRW,
2007 U.S. Dist. LEXIS 26540 (N.D. Cal. Mar. 27, 2007)................................................. 11, 15

*Abiomed, Inc. v. Maquet Cardiovascular LLC*,
No. 16-10914-FDS,
2019 U.S. Dist. LEXIS 104597 (D. Mass. June 21, 2019) ...................................................... 14

*Amp, Inc. v. Molex, Inc.*,
No. 84-C-2814,
1988 U.S. Dist. LEXIS 4142 (N.D. Ill. May 6, 1988) .............................................................. 16

*Anvik Corp. v. Samsung Elecs.*,
Case No. 07 Civ. 825 (SCR)(LMS), Dkt. No. 104 (S.D.N.Y. Jan. 21, 2010) ........................ 15

*Apeldyn Corp v. AU Optronics Corp.*,
Case No. 08-568-SLR, Dkt. No. 290 (D. Del. Apr. 12, 2010) ................................................. 15

*Aronstein v. Mass. Mut. Life Ins. Co.*,
No. 15-12864-MGM,
2017 U.S. Dist. LEXIS 100867 (D. Mass. June 29, 2017) ........................................................ 5

*Bose Corp. v. JBL, Inc.*,
112 F. Supp. 2d 138 (D. Mass. 2000) ..................................................................................... 10

*BPP Retail Props., LLC v. N. Am. Roofing Servs., Inc.*,
300 F.R.D. 59 (D.P.R. 2014) .................................................................................................... 5

*Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*,
923 F. Supp. 2d 602 (D. Del. 2013)........................................................................................ 13

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*,
229 F.3d 1120 (Fed. Cir. 2000)............................................................................................... 12

*Cherkaoui v. City of Quincy*,
No. 14-cv-10571-LTS,
2015 U.S. Dist. LEXIS 96234 (D. Mass. July 23, 2015)........................................................... 4

*Cruz v. Bos. Litig. Sols.*,
No. 13-cv-11127-LTS,
2015 U.S. Dist. LEXIS 190647 (D. Mass. Apr. 17, 2015) ........................................................ 4

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
656 F. Supp. 1343 (D. Del. 1987)........................................................................................... 13

*EEOC v. Baystate Med. Ctr., Inc.*,
No. 3: 16-cv-30086-MGM,
2017 U.S. Dist. LEXIS 179016 (D. Mass. Oct. 30, 2017)......................................................... 5

*EEOC v. Electro-Term, Inc.*,
167 F.R.D. 344 (D. Mass. 1996).............................................................................................. 4

*Finjan, Inc. v. Qualys Inc.*,
    No. 18-cv-07229-YGR (TSH),
    2020 WL 5569704 (N.D. Cal. Sept. 17, 2020) ........................................................ 15

*FM Generator, Inc. v. MTU Onsite Energy Corp.*,
    No. 14-14354-DJC,
    2016 U.S. Dist. LEXIS 189539 (D. Mass. Aug. 25, 2016) ...................................... 5

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
    110 F.3d 1573 (Fed. Cir. 1997)............................................................................... 12

*GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.*,
    Case No. 1:14-CV-07080-LTS-SN,
    2015 U.S. Dist. LEXIS 159419 (S.D.N.Y. Nov. 25, 2015) .................................... 11

*Georgia-Pacific v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970).................................................................... 9, 10

*Green v. Cosby*,
    152 F. Supp. 3d 31 (D. Mass. Dec. 31, 2015) .......................................................... 5

*Gyrodata Inc. v. Scientific Drilling International, Inc.*,
    No. 6:20-cv-00566-ADA, Dkt. 58 (W.D. Tex. Jan. 11, 2022) ............................... 14

*Halo Elecs. v. Pulse Elecs.*,
    900 F.Supp. 2d 1600 (D. Nev. Oct. 25, 2012) ................................... 10, 11, 13, 15

*In re Google Litigation*,
    No. C-08-02172-RMW (PSG), Dkt. 559 (N.D. Cal. Oct. 31, 2011) ...................... 15

*Kratka v. Time Warner Cable, Inc.*,
    No. 3:16-cv-11393-MGM,
    2017 U.S. Dist. LEXIS 102359 (D. Mass. June 30, 2017) ...................................... 5

*Leader Techs., Inc. v. Facebook, Inc.*,
    770 F. Supp. 2d 686 (D. Del. 2011)........................................................................ 12

*Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*,
    730 F.2d 1452 (Fed. Cir. 1984)............................................................................... 13

*Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*,
    637 F. Supp. 2d 290 (E.D. Pa. 2009) ...................................................................... 10

*Minn. Mining & Mfg. v. Smith & Nephew, PLC*,
    No. 3-91 CIV 274,
    1992 U.S. Dist. LEXIS 22785 (D. Minn. July 27, 1992)........................................ 16

*Mixing Equip. Co. v. Innova-Tech*,
    No. 85-0535,
    1986 U.S. Dist. LEXIS 21134 (E.D. Pa. Aug. 29, 1986)........................................ 16

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
    422 F. Supp. 2d 934 (N.D. Ill. 2006) ...................................................................... 15

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
    No. 16-cv-300, 2017 WL 3275615 (C.D. Cal. Feb. 14, 2017) ............................... 12

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ................................................................................ 10

*Rosco, Inc. v. Mirror Lite Co.*,
   626 F. Supp. 2d 319 (E.D.N.Y. 2009) .................................................................. 10

*Sealed Air Corp. v. Int'l Packaging Sys.*,
   Case No. 86-0365-R,
   1987 U.S. Dist. LEXIS 13230 (E.D. Va. Jul. 24, 1987) ........................................ 13

*Skyhook Wireless, Inc. v. Google, Inc.*,
   No. 10-11571-RWZ, Dkt. 334 (D. Mass. Feb. 25, 2014) ...................................... 14

*SynQor, Inc. v. Artesyn Technologies., Inc.*,
   Case No. 2:07-CV-497-TJW-CE, Dkt. No. 1242 (E.D. Tex. July 11, 2011.) ........................ 11

*Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*,
   No. 12-cv-11935-PBS, Dkt. No. 318 (D. Mass. Jan. 16, 2014) ............................. 14

*W.H. Wall Fam. Holdings LLLP v. CeloNova Biosciences, Inc.*,
   No. 1:18-CV-303-LY,
   2020 WL 1644003 (W.D. Tex. Apr. 2, 2020) ....................................................... 15

*Xiao Wei Catering Linkage in Inner Mong. Co. v. Inner Mong. Xiao Wei Yang USA, Inc.*,
   No. 15-10114-DJC,
   2018 U.S. Dist. LEXIS 54488 (D. Mass. Mar. 30, 2018) ..................................... 19

**Statutes**

35 U.S.C. § 271 ................................................................................................... 6, 16

**Rules**

Fed. R. Civ. P. 26 .................................................................................................. 4, 14

Fed. R. Civ. P. 37 .................................................................................................. 1, 19

## TABLE OF DISPUTED DSICOVERY REQUESTS

**INTERROGATORY NO. 3:**

Describe Your sales, revenues, profit, and margin information, including gross profits, operating profits, net profits, and profits before taxes, for each product identified in Interrogatory No. 1 since May 2016, broken down by quarter and by U.S. versus worldwide sales and revenue, including Documents sufficient to explain any acronyms or terminology employed by Your accounting system.

**RESPONSE TO INTERROGATORY NO. 3:**

Progress objects to this Interrogatory because it seeks information that is not relevant to any claim or defense in the case, including insofar as it seeks profit and margin information, and information about "worldwide sales and revenue." Progress objects to this Interrogatory as overly broad because it lacks appropriate temporal limitation; Progress interprets this Interrogatory to be directed to the period between May 2016 and the expiration of the Asserted Patents. Progress objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, Progress responds as follows: Progress will produce, pursuant to Federal Rule of Civil Procedure 33(d), documents sufficient to show sales and revenue in the United States for each product identified in response to Interrogatory No. 1.

**INTERROGATORY NO. 7:**

Describe in detail the number of customers, visitors, users, vendors, suppliers, distributors, and/or clients who have used, operated, implemented, or executed the Breadcrumb Functionality of each product identified in Interrogatory No. 1, including the Accused Instrumentalities, since May 2016, including the identity of all Persons with relevant knowledge and the Documents reflecting these facts. Your answer should delineate the number of customers, visitors, users, vendors, suppliers, distributors, and/or clients who have used, operated, implemented, or executed the Breadcrumb Functionality for each of the following categories: (1) technical, hardware, and/or software implementation; (2) sales support; (3) marketing support; (4) source code support and search; (5) product-related document (*e.g.,* data sheet, user guide, brochure, white papers, presentation slides, and the like) download and support; and (6) software and/or firmware download and support.

**RESPONSE TO INTERROGATORY NO. 7:**

Progress objects to this Interrogatory being presented as a single interrogatory because it includes at least six distinct subparts. Progress objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case because it purports to require Progress to describe "the number of customers, visitors, users, vendors, suppliers, distributors, and/or clients who have used, operated, implemented, or executed the Breadcrumb Functionality of each product identified in Interrogatory No. 1" and "identification of "all Persons with Relevant knowledge." Progress objects to this Interrogatory as vague and ambiguous because the terms "sales support," "marketing support," "source code support and search," "product-related document . . . download and support," and "software and/or firmware download and support" are vague and ambiguous in the context of the Interrogatory, which seeks information about

individuals and entities "who have used, operated, implemented, or executed the Breadcrumb Functionality." Progress objects to this Interrogatory as overly broad because it lacks appropriate temporal limitation; Progress interprets this Interrogatory to be directed to the period between May 2016 and the expiration of the Asserted Patents. Progress objects to this Interrogatory because it seeks information concerning third parties that is not within Progress's possession, custody, or control. Progress objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, Progress responds as follows: Progress will produce, pursuant to Federal Rule of Civil Procedure 33(d), non-privileged documents sufficient to show the number of users in the United States of the Breadcrumb Functionality of the products identified in Progress's response to Interrogatory No. 1, to the extent Progress has such knowledge and has access to such information.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show the extent of use, operation, implementation, or execution of the Breadcrumb Functionality in each product and/or service described in Request for Production No. 1 by Progress and its existing or potential customers, visitors, users, vendors, suppliers, distributors, and/or clients since May 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Progress objects to this Request as vague and ambiguous because it refers to "each product and/or service described in Request for Production No. 1." Progress objects to this Request as vague and ambiguous because it requests documents concerning "the extent of use, operation, implementation, or execution," and "potential customers, visitors, users, vendors, suppliers, distributors, and/or clients." Progress objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case because it purports to seek information concerning Progress's "existing or potential customers, visitors, users, vendors, suppliers, distributors, and/or clients," the identity of which is not relevant to any claim or defense and is a protected trade secret. Progress objects to this Request as overly broad because it lacks appropriate temporal limitation; Progress interprets this Request to be directed to the period between May 2016 and the expiration of the Asserted Patents. Progress objects to this Request because it seeks information that is in the possession, custody, or control of third parties and is more easily accessible to them or is inaccessible to Progress. Progress objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the mediation privilege, or any other applicable privileges, protections, doctrines, or immunities from disclosure.

**REQUEST FOR PRODUCTION NO. 4:**

Documents relating to Progress's products and/or services described in Request for Production No. 1 since May 2016, including derivative sales and sales of products and services sold, number of such sales, revenue from such sales and costs associated with these products and services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Progress objects to this Request as vague and ambiguous because it refers to "products and/or services described in Request for Production No. 1." Progress objects to this Request as vague and ambiguous because it requests documents concerning "derivative sales." Progress objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case because it purports to seek information concerning Progress's "costs associated with these products and services," which is not relevant to any claim or defense. Progress objects to this Request as overly broad because it lacks appropriate temporal limitation; Progress interprets this Request to be directed to the period between May 2016 and the expiration of the Asserted Patents. Progress objects to this Request because it seeks information that is in the possession, custody, or control of third parties and is more easily accessible to them or is inaccessible to Progress. Progress objects to this Request as premature to the extent it seeks information that is subject to expert discovery, which Progress will provide in accordance with the Scheduling Order. Progress objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the mediation privilege, or any other applicable privileges, protections, doctrines, or immunities from disclosure.

Subject to and without waiving the foregoing general and specific objections, Progress responds as follows: Progress will produce non-privileged, responsive documents sufficient to show sales and revenues in the United States of Progress's products or services that implement, incorporate, facilitate, or execute the Breadcrumb Functionality, since May 2016 through the expiration of the Asserted Patents to the extent they exist and can be located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 33:

Documents demonstrating Your estimate or analysis of the proportion of the products identified in Request for Production No. 1 that are imported into the U.S., either directly by You, on Your behalf, or by Your customers.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Progress objects to this Request as vague and ambiguous because it refers to "products identified in Request for Production No. 1" and to information concerning "import[ation]" of software. Progress objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case because it requests "Documents demonstrating Your estimate or analysis of the proportion of the products identified in Request for Production No. 1 that are imported into the U.S.," which are not relevant to any claim or defense in the case and requests trade secret information. Progress objects to this Request as overly broad because it lacks appropriate temporal limitation; Progress interprets this Request to be directed to the period between May 2016 and the expiration of the Asserted Patents. Progress objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, the mediation privilege, or any other applicable privileges, protections, doctrines, or immunities from disclosure.

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 37(a) and L.R. 37.1, Plaintiffs Caddo Systems, Inc. and 511 Technologies, Inc. (collectively, "Caddo" or "Plaintiffs") bring this present Motion to Compel the Production of Documents and Information ("Motion") relating to Defendant Progress Software Corporation's ("Progress" or "Defendant") worldwide sales of the Accused Instrumentalities, including the identity, principal, and shipping address of those customers to which sales were made.

Courts in this District and many other jurisdictions across the country permit discovery into a defendant's worldwide sales because this information is directly relevant to issues of direct and induced infringement, reasonable royalty determination, and commercial success to rebut a claim of obviousness.  Yet, despite at least four meet-and-confers between the parties and numerous correspondences from Caddo attempting to reach a compromise with Progress (a U.S. publicly traded company) on Progress's obligation to produce its worldwide sales, Progress continues to refuse to produce what it deems as sales attributed to customers practicing the infringing methods abroad.  These excluded sales constitute, for example, more than 84% of its total sales for Fiscal Year 2021 that Progress has reported in its public financial disclosures. Progress compounds on its discovery violation by refusing to produce ***any supporting information*** justifying that the excluded sales have no U.S. nexus.  This is not surprising because Progress ***lacks knowledge*** as to whether its customers abroad have used or deployed the Accused Instrumentalities within the U.S., whether in their U.S. offices or by their U.S. employees. Progress's withholding of its worldwide sales, as well as customer information necessary to support the alleged lack of a U.S. nexus, has substantially prejudiced Caddo's ability to challenge Progress's methodology or confirm that those customers for which sales have been categorially excluded did not use the Accused Instrumentalities in the United States.

Worse still, Progress puts the cart before the horse by requiring Caddo to prove Progress's direct and inducement infringement liability for the worldwide sales through a showing that its customers abroad practice the infringing methods in the United States ***prior*** to Progress having to produce the worldwide sales and its customer information Caddo seeks to prove liability.

Given the high degree of prejudice Caddo has suffered and continues to suffer from Progress's discovery misconduct, Caddo respectfully requests this Court award fees and costs in connection with this Motion.

## II.   FACTUAL BACKGROUND

On January 4, 2023, Caddo served its First Set of Discovery Requests, including Caddo's First Set of Requests for Production Nos. 1-63 ("RFPs") and First Set of Interrogatories Nos. 1-12 ("Interrogatories") that form the subject of this Motion.  On February 3, 2023, Defendant served its Responses and Objections to Caddo's RFPs ("RFP Responses") (Ex. 1)[1] and Interrogatories ("Interrogatory Responses") (Ex. 2).

On February 10, 2023, Caddo served Progress with a letter ("2/10 Letter") outlining Progress's discovery deficiencies.  (*See, e.g.,* Ex. 3).

On February 10, 2023, February 14, 2023, February 22, 2023, and March 1, 2023, the parties met and conferred regarding the discovery disputes outlined in Caddo's 2/10 Letter, including Progress's failure to produce worldwide sales data and customer information.  (*See, e.g.,* Exs. 4-7.)

On February 13, 2023, Progress produced one document reflecting its sales within the damages window from May 2016 to May 2022 ("Sales Document").  (Chan Decl. at ¶ 11.)

---

[1] All exhibits to this Motion are attached hereto to the Declaration of Alex Chan in Support of Plaintiffs' Motion to Compel ("Chan Decl.").

On February 14, 2023, the parties met and conferred, and again discussed Progress's repeated failure to produce worldwide sales data and customer information. (Ex. 6 at 3.)

In preparation for this Motion, on February 20, 2023, Caddo approached Progress before the parties' scheduled February 22, 2023, to confirm that Progress's Sales Document had improperly excluded worldwide sales. (Ex. 6 at 2.) Progress did not provide a written response. (*Id.*)

During the parties' February 22, 2023 meet and confer, Progress confirmed that it would not produce its worldwide sales data in connection with RFP Nos. 4 and 33 and Interrogatory Nos. 3 and 7. (Ex. 7 at 8.) Despite repeated inquiries from Caddo, Progress provided ***no explanation*** as to how Progress determined the sales data produced in the Sales Document, including the methodology used to determine what Progress believed to be its "U.S. sales." (*Id.* at 9.)

As a follow-up correspondence to the parties' February 22, 2023 meet and confer, Caddo reiterated its request for Progress to produce supporting information, including principal and shipping addresses, along with the total number of accused products and services sold in the U.S. versus worldwide being sought in RFP No. 4, in order to allow Caddo to assess whether Progress's methodology used to determine what sales constitute "U.S. sales" is proper. (*Id.* at 9.)

Caddo repeated these requests again in a subsequent February 24, 2023, correspondence. (*Id.* at 7.) On March 1, 2023, Progress again refused to produce the requested information and reiterated that it would not produce any worldwide sales information, nor would it supplement its responses to Caddo's interrogatories to demonstrate such information, including:

1) financial data reflecting all sales of the Accused Instrumentalities, including sales from purchase orders received by Progress in the U.S. from abroad;

2)      financial data from U.S. customers who downloaded or ordered the Accused

         Instrumentalities abroad;

3)      financial data reflecting sales made to foreign customers with U.S. addresses;

4)      the total number of downloads and purchases of the Accused Instrumentalities in

         the U.S. v. worldwide sales; and

5)      the identity, office address, and shipping address in connection with each sale

         Progress has excluded from discovery as a "foreign sale."

(*Id.* at 4-5.)

On March 1, 2023, the parties held their fourth and final meet and confer, confirmed

Progress would not provide the information listed above and, as such, the parties were at an

impasse.  (*Id.* at 1-2.)

## III.    LEGAL STANDARDS

Rule 26 permits "discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense," and this rule is generally understood to permit "liberal discovery of

relevant information." Fed. R. Civ. P. 26; *see Cruz v. Bos. Litig. Sols.*, No. 13-cv-11127-LTS,

2015 U.S. Dist. LEXIS 190647, at *10 (D. Mass. Apr. 17, 2015) (granting motion to compel

financial information and other documents).

While there are limits on discovery, "[a]s a general matter, relevancy must be broadly

construed at the discovery stage such that information is discoverable if there is any possibility it

might be relevant to the subject matter of the action."  *Cherkaoui v. City of Quincy*, No. 14-cv-

10571-LTS, 2015 U.S. Dist. LEXIS 96234, at *3-4 (D. Mass. July 23, 2015) (*quoting EEOC v.

Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)).  "[B]ecause discovery itself is

designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed

broadly to encompass any matter that bears on, or that reasonably could lead to other matters that

could bear on, any issue that is or may be in the case." *Kratka v. Time Warner Cable, Inc.*, No. 3:16-cv-11393-MGM, 2017 U.S. Dist. LEXIS 102359, at *8 (D. Mass. June 30, 2017) (*quoting Green v. Cosby*, 152 F. Supp. 3d 31 (D. Mass. Dec. 31, 2015)); *see also FM Generator, Inc. v. MTU Onsite Energy Corp.*, No. 14-14354-DJC, 2016 U.S. Dist. LEXIS 189539, at *5-6 (D. Mass. Aug. 25, 2016) ("Rule 26(b)(l) generally permits liberal discovery of relevant information.") (Boal, Mag. J.).

"The party seeking discovery over the opposing party's objection has the initial burden of demonstrating the relevance of the requested information." *Aronstein v. Mass. Mut. Life Ins. Co.*, No. 15-12864-MGM, 2017 U.S. Dist. LEXIS 100867, at *5-6 (D. Mass. June 29, 2017). "This burden is not onerous." (*Id.* at *6.)  However, "[o]nce the possibility of relevance is shown, the burden shifts to the party opposing disclosure to show that the discovery is improper." *EEOC v. Baystate Med. Ctr., Inc.*, No. 3: 16-cv-30086-MGM, 2017 U.S. Dist. LEXIS 179016, at *6 (D. Mass. Oct. 30, 2017). Namely, "[t]he party resisting discovery has the burden of showing 'specifically how each interrogatory is not relevant or how [the request at issue] is overly broad, burdensome, or oppressive.'" *BPP Retail Props., LLC v. N. Am. Roofing Servs., Inc.*, 300 F.R.D. 59, 61 (D.P.R. 2014) (internal quotations omitted).

## IV.  ARGUMENT

Caddo moves the Court for an order compelling Progress to produce documents and information relating to Progress's worldwide sales of the Accused Instrumentalities, including the identity and location of its customers whose sales Progress has improperly excluded from Caddo's discovery, as listed in the Table of Disputed Discovery Requests ("Table").

### A. Progress's Worldwide Sales Information for the Accused Instrumentalities Is Relevant to Issues of Infringement, Validity, and Damages

As described in Caddo's Complaint and Preliminary Infringement Contentions, Caddo has alleged direct and induced infringement for all asserted claims of the Asserted Patents under 35 U.S.C. § 271(a) and (b). *See, e.g.,* Dkt. 1 at ¶¶ 31, 40-42. Many of the Accused Instrumentalities include certain Progress software, products, and desktop and web applications that are available for online purchase and download while other products (*e.g.,* the SiteFinity Content Management System) are available for purchase directly through Progress.

Progress's worldwide sales for the Accused Instrumentalities, including sales, revenue, margin, and profit information, is relevant to: 1) Progress's liability for direct and induced infringement; 2) the reasonable royalty determination, and; 3) evidence of commercial success to rebut Progress's allegations that each of the Asserted Patents is invalid as obvious. Progress has produced only sales for those Accused Instrumentalities it unilaterally deems to be U.S. sales and has refused to explain how it made the determination regarding which worldwide sales to exclude. Progress's unilateral decision to withhold information relevant to liability, damages, and Progress's affirmative defenses and counterclaims severely prejudices Caddo's ability to prepare for trial. Most importantly, Progress's improper decision to withhold this information— based on its mistaken belief that Caddo must somehow prove liability without the discovery necessary to do so—finds no support in the law, as explained below.

#### i. Worldwide Sales Discovery Is Relevant to Progress's Liability for Infringement and Damages

Each of Caddo's discovery requests listed in the Table is directly related to Progress's liability for infringement and damages. For example, Interrogatory No. 3 seeks information on Progress's "sales, revenues, profit, and margin information" for each of the Accused Instrumentalities, with a breakdown of what sales and revenue occur in the "U.S. versus

worldwide"; and Interrogatory No. 7 seeks information on customers who have "used, operated, implemented, or executed" the Accused Instrumentalities. This information is a necessary predicate to Caddo's ability to identify the amount of sales and purchases for which Progress is liable for direct infringement in the United States versus those where Progress may only be liable for induced infringement—where Progress itself did not make, use, sell, offer for sale, or import into the United States the Accused Instrumentalities but its customers, end-users, or distributors did. This information equally counts towards damages Progress owes Caddo.

Similarly, Caddo's RFP Nos. 3, 4 and 33 seek to further clarify Progress's financial information, including "the extent of use" by its customers (which obviously is not limited to U.S. customers), the number of all sales (*e.g.,* the number of purchases and downloads made anywhere), and importation rates, respectively. These discovery requests are vital for Caddo to understand the universe of Progress's worldwide sales so Caddo can begin to prove which sales and revenue are attributable to products that have a U.S. nexus.

This dispute matters also because the scale of sales Progress is attempting to shield from liability is not trivial—they are multiples of what Progress has thus far claimed to be its "U.S. sales." Indeed, the sales numbers Progress has provided for certain Accused Instrumentalities are but a small fraction of Progress's total sales publicly disclosed in its SEC filings. For example, for the Fiscal Year ending in 2021, Progress publicly reported more than $317.8M in sales in North America (Ex. 8 at 24); yet, the Sales Document produced by Progress reflects less than 16% of this reported figure.[2] (*Id.*; Chan Decl. at ¶ 11.) Caddo cannot and should not be

---

[2] Even if Progress's total North America sales in 2021 may include sales of certain products not accused in this litigation, the amount of sales Progress has categorily excluded is still likely several magnitudes higher than Progress's actual U.S. sales of the accused instrumentalities for the entire damages period.

required to take Progress's word at face value that over 84% of its sales and revenues are irrelevant to this case without being able to take discovery to challenge or confirm which of those sales Progress is directly and indirectly liable.

> ### a. Caddo Does Not Have to Prove Progress's Infringement Liability Before Progress Must Produce Worldwide Sales Information

A threshold issue in this dispute is whether Caddo must prove Progress's liability for any worldwide sales—for example, by proving that its customers abroad practice the infringing methods in the U.S. such that Progress is liable for induced infringement—prior to Progress having to produce the worldwide sales (and customer information; *see infra* Section IV(B)) Caddo seeks to prove liability. During the numerous meet and confers between the parties, Progress simply stated, without producing ***any*** supporting documents or evidence, that the excluded sales are directed to customers who practice the infringing methods outside of the United States. (Ex. 7 at 4, 9-10; Ex. 6 at 2.)

But to date, ***Progress has refused to produce discovery*** identifying which customers are allegedly practicing the infringing methods outside of the United States—information that is also the subject of this Motion (*see infra* Section IV(B); *see also* RFP No. 3 ("the extent of use" by its existing customers) and RFP No. 7 (customers "who have used" the accused functionality)). Without producing this foundational discovery, Progress cannot categorically exclude sales that it wrongfully interprets as "foreign" sales or sales attributed to customers performing the infringing methods outside of the United States. Indeed, the fact that sales are made to customers abroad, without more, is not enough to absolve Progress's liability because Progress has ***no knowledge*** as to whether customers abroad have used or deployed the Accused Instrumentalities within the U.S. (*e.g.*, in their U.S. offices or by their U.S. employees).

Progress is no different than every other defendant in any other patent case involving

worldwide sales in the context of direct and indirect infringement, and disputing the merits of Caddo's allegations does not relieve it from its obligation to produce evidence relevant to those allegations. Unsurprisingly, Progress has not been able to provide Caddo with a single case that justifies Progress's withholding relevant discovery on this issue. *See, e.g.,* Ex. 7.

Progress's arguments about the alleged irrelevance of worldwide sales are not properly subject of a discovery motion, and may be raised only in a Rule 12 or Rule 56 motion. But Progress has not filed a motion to dismiss alleging that Caddo's contentions are insufficient, and Progress must first produce the necessary discovery to Caddo to be able to challenge the sufficiency of Caddo's proof in a Rule 56 motion. Thus, regardless of whether Caddo may be able to prove that those customers whose sales Progress has improperly excluded actually practice the infringing methods in the U.S., Progress's worldwide sales information related to the Accused Instrumentalities are undeniably relevant to Caddo's claims of induced infringement.

      ii.      **Worldwide Sales Discovery Is Relevant to the Reasonable Royalty Owed to Caddo for Progress's Infringement**

Progress's worldwide sales information for the Accused Instrumentalities is also relevant to calculating a reasonable royalty. Progress's worldwide sales of the Accused Instrumentalities are relevant to a *Georgia-Pacific* analysis used in patent cases to determine a reasonable royalty, as well as to the reasonable royalty damages base to adequately compensate Caddo for Progress's infringement. *See Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Thus, Progress's refusal to produce this relevant information severely limits Caddo's ability to properly calculate damages owed in this case.[3]

For example, *Georgia-Pacific* factor 8 considers "the established profitability of the

---

[3] Progress has not stated its position as to why it believes its worldwide sales information is irrelevant to a reasonable royalty calculation.

product made under the patent; its commercial success; and its current popularity." Under this factor, the trier of fact considers infringing sales, profits, and margins to determine the value of the patented invention. *See Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290, 311 (E.D. Pa. 2009) (finding **infringer's sales success relevant** to increasing the patentee's reasonable royalty award);[4] *Rosco, Inc. v. Mirror Lite Co.*, 626 F. Supp. 2d 319, 333 (E.D.N.Y. 2009) (same); *Bose Corp. v. JBL, Inc.,* 112 F. Supp. 2d 138, 164 (D. Mass. 2000) (considering infringing sales as relevant to the *Georgia-Pacific* analysis).[5] Evidence relevant to *Georgia-Pacific* factor 8 is also not limited to sales or financial information within the United States. *Halo Elecs. v. Pulse Elecs.,* 900 F.Supp. 2d 1600,1167 (D. Nev. Oct. 25, 2012) ("Factor 8 considers, among other things, the commercial success of the product, and the **worldwide sales figures are relevant** to that determination as well.").

Worldwide sales information is also relevant to the analysis under *Georgia-Pacific* factor 6, which in part considers the effect of selling infringing products on the sales of other products. For example, in *Halo*, the court rejected the defendant's argument that the plaintiff's damages expert should be precluded from discussing the defendant's worldwide sales under *Georgia-Pacific* factor 6. 900 F. Supp. 2d at 1167. Instead, the court found that "the extent of [the defendant's] **worldwide sales of the accused products is relevant** to determining its effect on the sale of [the defendant's] other products internationally." (*Id.*) In that same vein, just like the defendant in *Halo*, Progress claims that the vast majority of its sales occur internationally, and its worldwide sales of the accused products is likewise relevant to determining the effect Progress's

---

[4] Unless otherwise indicated, emphasis has been added in this Motion.
[5] *Georgia-Pacific* describes a total of 15 unprioritized and sometimes overlapping factors. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). For clarity, Caddo is emphasizing the factors most relevant to this dispute.

infringing sales have on its other international sales.

In addition, other courts have noted that worldwide sales are generally relevant to the valuation of patented inventions and the defendant's financial condition, both of which are also relevant to a reasonable royalty analysis. *See GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.*, Case No. 1:14-CV-07080-LTS-SN, 2015 U.S. Dist. LEXIS 159419, at *7-8 (S.D.N.Y. Nov. 25, 2015) (the presumption against territoriality does ***not*** preclude discovery of foreign sales information because "it has, at a minimum, implications for valuation of the invention" and is "relevant to the determination of a reasonable royalty"); *3Com Corp. v. D-Link Sys.,* No. C-02-2177-VRW, 2007 U.S. Dist. LEXIS 26540, at *9-11 (N.D. Cal. Mar. 27, 2007) (granting motion to compel worldwide sales because "worldwide profits and sales are relevant to a reasonable royalty calculation.").

Further, Caddo is entitled to discovery of Progress's worldwide sales information for the purposes of determining the appropriate royalty base—the sum total of Progress's revenue derived from infringing use of Caddo's patented inventions—to which its damages apply. (*See Halo*, 900 F. Supp. 2d at 1167; *SynQor, Inc. v. Artesyn Technologies., Inc.*, Case No. 2:07-CV-497-TJW-CE, Dkt. No. 1242, at 11, ¶5 (E.D. Tex. July 11, 2011.) Whether or not Caddo ultimately succeeds in proving that Progress is liable for all of its worldwide sales, or some portion thereof, Caddo is entitled to discovery from Progress that would enable it to obtain such proof in the first place.

For these reasons too, the Court should grant this Motion because Caddo's discovery requests seek information relevant to the royalty base and the *Georgia-Pacific* factors necessary for Caddo to determine the reasonable royalty it is owed in this litigation. *See SynQor, Inc.* Case No. 2:07-CV-497-TJW-CE at 11, ¶5 (finding worldwide sales "have an influence on or affect the

outcome of a claim or defense" because they would be part of the royalty base for the "damage model" to be considered and multiplied by the "importation rates" by the plaintiff's damages expert); *see also Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. 16-cv-300, 2017 WL 3275615, at *5 (C.D. Cal. Feb. 14, 2017) (finding "worldwide sales information [] relevant to inducement, reasonable royalty calculations, and commercial success").

### iii.  Worldwide Sales Discovery Is Relevant to Progress's Allegations That Caddo's Patents Are Obvious

Independent of the bases stated above, Caddo's requested discovery is also relevant to claims Progress itself introduced in this case—its allegations that each of the Asserted Patents are invalid as obvious. Progress has put the commercial success of the patented inventions— represented by the *worldwide* sales, revenues, profits, and margins of the Accused Instrumentalities—squarely at issue by alleging each of the Asserted Patents invalid as obvious under 35 U.S.C. § 103. (Dkt. 22 at ¶ 168.) Progress's unilateral decision to deny Caddo access to discoverable information exclusively within Progress's possession—even more so when that evidence is relevant to issues Progress itself introduced in the case—is improper.[6]

It is well-established that an infringer's sales figures can be used to show the commercial success of a patented invention, and thus are relevant to the obviousness inquiry. *See Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention."); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997) (finding infringing sales evidence of significant commercial success and, in part, requiring a holding of nonobviousness); *Leader Techs., Inc. v.*

---

[6] Progress's Answers, Counterclaims, or Preliminary Invalidity Contentions do not articulate why worldwide sales information for the Accused Instrumentalities is not relevant to rebut its allegations that each of the Asserted Patents are invalid as obvious.

*Facebook, Inc.*, 770 F. Supp. 2d 686, 706 (D. Del. 2011) ("Moreover, the Court finds ample evidence of non-obviousness which supports the jury's verdict, including that the Facebook website is a commercial success, as stipulated by Facebook."); *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 656 F. Supp. 1343, 1369 (D. Del. 1987), *rev'd in part on other grounds* ("[Infringer's] sales may be considered as part of the proof of commercial success when determining nonobviousness.").

Importantly, when considering the commercial success of a patented invention, courts must consider worldwide sales, and not restrict their analysis to sales within the United States. *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1461 (Fed. Cir. 1984) (finding district court improperly discounted commercial success occurring abroad because "[a] showing of commercial success of a claimed invention, ***wherever such success occurs***, is relevant in resolving the issue of non-obviousness."); *see also Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 923 F. Supp. 2d 602, 633 (D. Del. 2013) (discussing worldwide sales in relation to commercial success in the context of objective indicia of non-obviousness); *Halo*, 900 F. Supp. 2d at 1167 (finding infringers worldwide sales figures relevant to the determination of a reasonable royalty and to the commercial success of the patented inventions); *Sealed Air Corp. v. Int'l Packaging Sys.*, Case No. 86-0365-R, 1987 U.S. Dist. LEXIS 13230, at *81 (E.D. Va. Jul. 24, 1987) ("commercial success in foreign markets is also relevant in assessing nonobviousness").

Given that Progress has alleged that every asserted claim of every Asserted Patent is obvious, and that obviousness appears to be Progress's primary invalidity challenge for some, if not all, of the Asserted Patents, Progress's decision to withhold the worldwide sales is improper. Each of Caddo's discovery requests directly bears on Progress's allegations of obviousness

because they provide Caddo with an understanding of commercial success—the total sales, revenue, profit, and margin information is indisputably relevant to that inquiry.

### iv. Courts in This District and Other Districts Routinely Grant Motions to Compel the Production of Worldwide Sales Information

Progress cannot dictate what proof Caddo can use in Caddo's case-in-chief. Because worldwide sales information is a critical predicate to a showing of direct and induced infringement, reasonable royalty, and non-obviousness, courts in this District routinely grant motions to compel production of defendants' worldwide sales information.

For example, in *Abiomed*, Chief Judge Saylor IV denied the accused infringer's motion for a protect order prohibiting the patentee from seeking discovery of foreign sales attributed to products that were exported from the United States and sold outside of the United States. *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. 16-10914-FDS, 2019 U.S. Dist. LEXIS 104597, at *4 (D. Mass. June 21, 2019). *Citing* Fed. R. Civ. P. 26(b)(1) for the reasoning that "discovery itself is designed to help define and clarify the issues," the court ruled that "[d]iscovery related to worldwide sales" was necessary because it was "potentially relevant to [the patentee's] claims under § 271 (for example, as to damages)."

Two other courts in this District have followed this same view. *Skyhook Wireless, Inc. v. Google, Inc.*, No. 10-11571-RWZ, Dkt. 334 at 4 (D. Mass. Feb. 25, 2014) (granting motion to compel "information regarding worldwide sales"); *Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*, No. 12-cv-11935-PBS, Dkt. No. 318, at *8 (D. Mass. Jan. 16, 2014) (allowing "information regarding worldwide sales and customers" because they "are relevant to the issue of direct infringement") (internal citation omitted).

Like courts in this District, courts in other districts have taken a similar stance. *Gyrodata Inc. v. Scientific Drilling International, Inc.*, No. 6:20-cv-00566-ADA, Dkt. 58 at 1 (W.D. Tex.

Jan. 11, 2022) (granting motion to compel "[i]nformation sufficient to understand all US and

foreign sales and performance of the [accused instrumentality] service" and "information relating

to moving and/or exporting the [accused] service and related products and services overseas");

*Finjan, Inc. v. Qualys Inc.*, No. 18-cv-07229-YGR (TSH), 2020 WL 5569704 (N.D. Cal. Sept.

17, 2020), at *1 ("[F]oreign sales are relevant for infringing products that are made, used, offered

for sale, or sold within the United States."); *W.H. Wall Fam. Holdings LLLP v. CeloNova*

*Biosciences, Inc.*, No. 1:18-CV-303-LY, 2020 WL 1644003, at *3 (W.D. Tex. Apr. 2, 2020)

(granting motion to compel foreign sales information because "[c]ourts have found that foreign

damages may be compensable for domestic infringement under 271(a)"); *In re Google*

*Litigation,* No. C-08-02172-RMW (PSG), Dkt. 559 at 9-10 (N.D. Cal. Oct. 31, 2011) (granting

motion to compel server location data as it was relevant "damages-related discovery"); *Apeldyn*

*Corp v. AU Optronics Corp.*, Case No. 08-568-SLR, Dkt. No. 290, at * 2 (D. Del. Apr. 12, 2010)

(requiring defendant to produce worldwide sales information because it "is relevant to (i)

inducement infringement liability . . ."); *Anvik Corp. v. Samsung Elecs.*, Case No. 07 Civ. 825

(SCR)(LMS), Dkt. No. 104, at *7-8 (S.D.N.Y. Jan. 21, 2010) (finding worldwide sales

information related to inducement allegations relevant discovery and noting the defendants'

objections were better suited for dispositive motion practice under Rule 12 or 56 rather than Rule

26); *Halo Elecs., Inc. v. Pulse Eng'g, Inc.*, Case No. 2:07-cv-00331-PMP-PAL, Dkt. No. 146, at

*2 (D. Nev. Dec. 11, 2009) ("[T]he court finds that defendants' worldwide sales documents . . .

are relevant and discoverable within the meaning of Rule 26(b)(1) and should be produced");

*3Com Corp. v. D-Link Sys.*, Case No. C 03-2177 VRW, 2007 U.S. Dist. LEXIS 26540, at *9-11

(N.D. Cal. Mar. 27, 2007) (granting motion to compel worldwide sales information because it is

relevant to direct infringement, induced infringement, a reasonable royalty calculation, and non-

obviousness); *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 946 (N.D. Ill. 2006)

("[Plaintiff] has pled a claim for inducement of infringement, and [Defendant] has made no

attempt to question the claim under Rule 12(b)(6). Foreign sales information, as [Defendant]

admits, is relevant to that claim. Consequently, [Plaintiff] is entitled to the discovery it seeks on

foreign sales without what is effectively a showing of liability . . . and [Defendant] must produce

the documents sought."); *Minn. Mining & Mfg. v. Smith & Nephew, PLC*, No. 3-91 CIV 274,

1992 U.S. Dist. LEXIS 22785, at *6 (D. Minn. July 27, 1992) (granting motion to compel

foreign sales discovery because defendant "bases much of its defense upon the obviousness of

the allegedly infringed patents" and commercial success is relevant to that inquiry); *Amp, Inc. v.

Molex, Inc.*, No. 84-C-2814, 1988 U.S. Dist. LEXIS 4142, at *1 (N.D. Ill. May 6, 1988)

(granting plaintiff's motion to compel worldwide sales discovery because defendant's

obviousness allegations implicate commercial success, which is not limited to the United States);

*Mixing Equip. Co. v. Innova-Tech*, No. 85-0535, 1986 U.S. Dist. LEXIS 21134, at *8 (E.D. Pa.

Aug. 29, 1986) (ordering accused infringer to provide worldwide discovery relevant to the

commercial success of the patented inventions).

> **B.** **Progress Must Produce Discovery Relating to the Identity and Principal/Shipping Address of Those Customers Whose Sales Progress Has Refused to Produce**

In addition to or as part of its worldwide sales information, Progress must provide the

identification of its customers whose sales Progress has unliterally excluded from Caddo's

discovery as well as their principal and shipping addresses. This information is also relevant to

Caddo's claims of direct and induced infringement. At the outset, to whom, and therefore where,

Progress sells the Accused Instrumentalities is indisputably relevant to Caddo's claims of direct

infringement. Each time Progress sells an Accused Instrumentality within the United States or

imports it into the United States, it commits a separate act of patent infringement. 35 U.S.C.

271(a). Further, Progress is liable for selling the Accused Instrumentalities to its customers outside the United States under Caddo's theory of induced infringement as long as those products are used or end up in the United States.

But this customer-related information is even more critical here because, as alluded above, Progress has categorically excluded much of the publicly-reported U.S. sales without producing any evidence to justify such exclusion. During the parties' meet-and-confers, other than stating that its customers' identity and address information is "sensitive," Progress was unwilling to engage in any further meaningful discussion, simply confirming that it will not produce the identity, office address, and shipping address of its customers. (Ex. 7 at 5.)

Progress has only provided a summary of sales (only in amounts, but *not* units sold, to whom they were sold, and where the sales took place) (*see, e.g.,* Ex. 9) that Progress has unilaterally determined to have been made in the United States. Caddo does not dispute those sales Progress already admits to have occurred in the United States. Instead, Caddo seeks discovery to confirm whether, and if so, which sales Progress *claims did not occur* in the United States actually occurred in the United States, and which accused products ended up in the United States that are/were subsequently used by its customers.

To date, Progress has produced no information to Caddo to prove that sales excluded from its one-and-only financial document were not made in the United States or that those customers for which sales have been excluded did not use the Accused Instrumentalities or practice the infringing methods in the United States. Thus, Progress apparently agrees that its customer information is relevant—or else *it could not have determined which sales to which customers it believes occurred in the United States*—but disagrees that Caddo can challenge its methodology, or even view the underlying information Progress used in its own analysis.

Progress's selective use of its customer information when it benefited Progress should not be allowed. Progress cannot use its customer identities as a sword and a shield in both resisting discovery and attacking Caddo's infringement, damages, and non-obviousness theories. Caddo must be given an opportunity to test Progress's U.S. nexus methodology by assessing for itself where Progress has sold the Accused Instrumentalities and where the supposed "foreign" customers use these instrumentalities.

### C. Caddo is Entitled to Recover Costs and Fees in Connection with this Motion

As outlined above, Progress's worldwide sales information is highly relevant to Caddo's claims and defenses and proportional to the needs of the case—discovery that is widely accepted and permitted in this District and other districts. (*See supra* Section IV(A)(iv).) By repeatedly denying Caddo's discovery with *less than three months* from the parties' fact discovery cutoff and the opening of their expert reports (Dkt. 18 at 7), Progress has impeded and continues to impede Caddo's ability to prepare its case-in-chief, including establishing infringement liability, seeking third-party discovery, and computing the damages to which Caddo is entitled to recover.

Moreover, because evidence adduced to date strongly suggests that Progress—a U.S. publicly traded company—has improperly excluded more than 84% of its sales for the Accused Instrumentalities from Caddo's discovery for at least FY2021, Caddo's risk of prejudice is not just theoretical; absent an order compelling the requested discovery, Caddo's ultimate damages award in this case will be improperly and substantially diminished.

The parties had four meet-and-confers (all initiated by Caddo) and Caddo sent multiple correspondences to Progress regarding Progress's discovery deficiencies relating to Progress's worldwide sales. (*See* Section II.) Yet, Progress has never once applied for a protective order under Rule 26(c). Without a protective order, Progress's failure to produce the requested worldwide sales information cannot be excused, even if Progress believes (albeit mistakenly)

that it is objectionable.  Because Progress's repeated refusal to produce the worldwide sales information has caused and continues to cause substantial prejudice to Caddo, Caddo respectfully requests its reasonable expenses incurred in connection with this Motion, including its attorneys' fees, pursuant to Fed. R. Civ. P. 37.  *See, e.g.,* Fed. R. Civ. P. 37(d)(3) ("Instead of or in addition to [the orders listed in Rule 37(b)(2)(A)(i)-(vi)], ***the court must require the party failing to act***, ***the attorney advising that party, or both*** to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").[7]  An award of expenses and fees is appropriate where, as here, Progress "will not follow the rules of discovery, is not willing to engage in meaningful discussions with opposing counsel, [and] maintains legal positions that are not supported by law."  *Xiao Wei Catering Linkage in Inner Mong. Co. v. Inner Mong. Xiao Wei Yang USA, Inc.*, No. 15-10114-DJC, 2018 U.S. Dist. LEXIS 54488, at \*16 (D. Mass. Mar. 30, 2018).

## V.  CONCLUSION

For all the foregoing reasons, Caddo respectfully requests this Court grant its Motion in its entirety.

---

[7] Caddo requests its reasonable expenses in this Motion in order to avoid burdening the Court with a separate Rule 37 motion and to minimize the issues and briefing on this dispute by including its request for reasonable expenses herein.

Dated:  March 6, 2023

/s/ Alex Chan
Alex Chan (*pro hac vice*)
achan@devlinlawfirm.com
1526 Gilpin Ave.
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorney for Plaintiffs*
*Caddo Systems, Inc. and 511 Technologies,*
*Inc.*

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.l(d), Caddo believes that oral argument may assist the court in resolving the instant dispute and therefore wishes to be heard regarding the same.

## L.R. 37.1(a) CERTIFICATE OF CONFERENCE

In accordance with Local Rule 7. l(a)(2), the undersigned counsel hereby certifies that counsel for Caddo (including Mr. Alex Chan, Ms. Veronica McCarty, Mr. Christian Ruiz, and Mr. Adam Woodward) met and conferred with counsel for Progress (Mr. James Anderson) telephonically via Zoom on February 10, 2023 at 1:00 pm for approximately 30 minutes; February 14, 2023 at 3:00 pm for approximately 90 minutes; February 22, 2023 at 12:00 pm for approximately 40 minutes; and March 1, 2023 at 2:30 pm for approximately 25 minutes, and attempted in good faith to resolve or narrow the issues relating to Caddo's Motion for expenses pursuant to Rule 37 before filing this brief.

*/s/ Alex Chan*
Alex Chan

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2023, I caused a copy of this document to be served by transmitting it via e-mail or electronic transmission to counsel of record for Defendant.

*/s/ Alex Chan*
Alex Chan

21