# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CADDO SYSTEMS, INC. and 511 TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PROGRESS SOFTWARE CORPORATION, <br><br> Defendant. | Case No.: 2:22-cv-10815 |

**OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ ii

II. LEGAL STANDARD .......................................................................................................... 2

III. ARGUMENT ....................................................................................................................... 2

    A. Foreign Sales Information is Not Discoverable Because Caddo Only Asserts Method Claims that Must Be Practiced in the United States ................................................................. 2

        1. Progress's Foreign Sales Information is Not Relevant to Infringement or Damages ..... 3

        2. Progress's Foreign Sales Are Not Relevant to a Reasonable Royalty Analysis ............. 6

        3. Progress's Foreign Sales Are Not Relevant to the Obviousness Analysis ..................... 7

        4. Courts Routinely Deny Motions to Compel the Production of Foreign Sales Information ............................................................................................................................... 8

    B. The Identity of Progress's Customers and Their Addresses Are Not Relevant to Any Claim or Defense in the Case .................................................................................................. 10

    C. Caddo's Request for Fees and Costs Should be Denied .................................................. 12

IV. CONCLUSION ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abiomed, Inc. v. Maquet Cardiovascular LLC,*
   2019 WL 13089050 (D. Mass. Jun. 21, 2019) ............................................................................9

*Am. Ice Co. v. Royal Petroleum Corp.*,
   261 F.2d 365 (3d Cir.1958) ......................................................................................................11

*Anvik Corp. v. Samsung Elecs.*,
   No. 07-cv-825, ECF No. 104 (S.D.N.Y. Jan. 21, 2010) .............................................................9

*Apeldyn Corp. v. AU Optronics Corp.*
   No. 08-568-SLR, ECF No. 290 (D. Del. Apr. 12, 2010) ............................................................9

*ARK Nat'l Holdings LLC v. We Campaign LLC*,
   No. 12-cv-10893, 2021 WL 5918682 (D. Mass. Dec. 15, 2021) .............................................11

*Biax Corp. v. Nvidia Corp.*,
   271 F.R.D. 200 (D. Colo. 2010) ................................................................................................8

*Bose Corp. v. JBL, Inc.*,
   112 F. Supp. 2d 138 (D. Mass. 2000), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001) ...........................6

*Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*,
   923 F. Supp. 2d 602, 677 (D. Del. 2013), *aff'd*, 752 F.3d 967 (Fed. Cir. 2014). ......................8

*C & C Jewelry Mfg., Inc. v. West*,
   No. C09-01303 JF HRL, 2011 WL 2559638 (N.D. Cal. June 28, 2011) ...................................7

*Controlled Kinematics, Inc. v. Novanta Corp.*,
   No. 17-CV-11029-ADB, 2019 WL 3082354 (D. Mass. July 15, 2019) ....................................2

*Cutter v. HealthMarkets, Inc.*,
   No. 10-11488-JLT, 2011 WL 613703 (D. Mass. Feb. 10, 2011) ...............................................2

*Enpat, Inc. v. Microsoft Corp.*,
   6 F. Supp. 2d 537 (E.D. Va. 1998) ............................................................................................6

*Feldman v. Cmty. Coll. of Allegheny (CCAC)*,
   85 F. App'x 821 (3d Cir. 2004) ...............................................................................................11

*Finjan, Inc. v. Qualys Inc.*,
   No. 18-cv-07229-YGR, ECF No. 152 (N.D. Cal. Dec. 4, 2020) ...............................................8

*Finjan, Inc. v. Qualys, Inc.*,
   No. 18-cv-07229-YGR, 2020 WL 5569704 (N.D. Cal. Sept. 17, 2020) ............................... 8, 9

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*,
   No. 15-cv-1879-BEN, 2016 WL 6522808 (S.D. Cal. Nov. 3, 2016) ......................................... 6

*Gibson v. Resort at Paradise Lakes, LLC*,
   No. 16-cv-791, 2017 WL 735457 (M.D. Fla. Feb. 24, 2017) ................................................. 11

*Gyrodata Inc. v. Scientific Drilling Int'l, Inc.*,
   No. 6:20-cv-00566-ADA, ECF. No. 58 (W.D. Tex. Jan. 11, 2022) ....................................... 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   900 F. Supp. 2d 1160 (D. Nev. 2012) ...................................................................................... 7

*Impinj, Inc. v. NXP USA, Inc.*,
   2022 WL 16586886 (N.D. Cal. Nov. 1, 2022) ..................................................................... 6, 8

*INVT SPE LLC v. Int'l Trade Comm'n*,
   46 F.4th 1361 (Fed. Cir. 2022) ................................................................................................ 3

*Johansen v. Liberty Mut. Grp., Inc.*,
   No. 15-cv-12920-ADB, 2017 WL 6045419 (D. Mass. Dec. 6, 2017) ..................................... 2

*Kajeet, Inc. v. Qustodio, LLC*,
   2019 WL 8060078 (C.D. Cal. Oct. 22, 2019) .......................................................................... 6

*Meyer Intell. Props. Ltd. v. Bodum, Inc.*,
   690 F.3d 1354 (Fed. Cir. 2012) ................................................................................................ 4

*Micro Motion, Inc. v. Kane Steel Co.*,
   894 F.2d 1318 (Fed. Cir. 1990) ................................................................................................ 5

*Microsoft Corp. v. AT & T Corp.*,
   550 U.S. 437 (2007) ................................................................................................................. 3

*Minn. Mining & Mfg. v. Smith & Nephew, PLC*,
   No. 91-cv-274, 1992 WL 464352 (D. Minn. July 27, 1992) ................................................... 9

*Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*,
   422 F. Supp. 2d 934 (N.D. Ill. 2006) ....................................................................................... 9

*Pierce v. Underwood*,
   487 U.S. 552 (1988) ............................................................................................................... 13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013) ................................................................................................ 3

iii

*Primarque Prods. Co., Inc. v. Williams West & Witt's Prods. Co.*,
   No. 15-cv-30067-TSH, 2016 WL 6090715 (D. Mass. Oct. 18, 2016) ...................................... 2

*Rasmussen Instruments, LLC v. Depuy Synthes Prods. Inc.*,
   No. 20-cv-11807-TSH (D. Mass. Feb. 11, 2022) ................................................................... 8

*Ricoh Co., Ltd. v. Quanta Comput. Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008) .............................................................................................. 4

*Skyhook Wireless, Inc. v. Google, Inc.*,
   No. 10-111561-RWZ, ECF No. 334 (D. Mass. Feb. 25, 2014) ............................................. 10

*Sustainable Sourcing, LLC v. Brandstorm, Inc.*,
   No. 12-cv-30093-MAP, 2017 WL 217747 (D. Mass. Jan. 18, 2017) ...................................... 2

*Touchstream Techs., Inc. v. Google LLC*,
   No. 6:21-CV-569-ADA, 2022 WL 17744051 (W.D. Tex. Dec. 16, 2022) .............................. 3

*Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*,
   No. 12-cv-11935-PBS, ECF No. 318 (D. Mass. Jan. 16, 2014). ............................................. 9

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*,
   887 F.3d 1117 (Fed. Cir. 2018) .............................................................................................. 4

*W.H. Wall Fam. Holdings LLLP v. CeloNova Biosciences, Inc.*,
   No. 1:18-CV-303-LY, 2020 WL 1644003 (W.D. Tex. Apr. 2, 2020) ................................... 10

*Xiao Wei Catering Linkage in Inner Mongolia Co. v. Inner Mongolia Xiao Wei
   Yang USA, Inc.*,
   No. 15-cv-10114-DJC, 2018 WL 1567604 (D. Mass. Mar. 30, 2018) .................................. 13

I.  **INTRODUCTION**

Plaintiffs Caddo Systems, Inc. and 511 Technologies, Inc. (collectively, "Caddo") seek to compel the production of information that is not relevant to any claim or defense in the case. Caddo seeks the production of worldwide sales information, despite the fact that Caddo only alleges infringement of claimed methods that must be practiced in the United States. Caddo also seeks the production of sensitive trade secret information in the form of Progress's customer list, as well as the physical address of every Progress customer. This information has no bearing on the liability or damages issues in this case. More importantly, Caddo has not even requested the trade secret information it now seeks to compel. This glaring oversight is fatal to its motion. Caddo's motion is not substantially justified.

In support of its motion, Caddo refers repeatedly to the fact that Progress's company-wide revenues are higher than the revenues from sales of the accused instrumentalities.[1] That observation should come as no surprise—Caddo's infringement allegations are directed at just one feature that is present in only a subset of Progress's products.

Caddo seeks discovery regarding overseas sales that (i) have no connection to a domestic act of infringement, and (ii) cannot infringe the asserted method claims as a matter of law. Recognizing this, Caddo moved to amend its infringement contentions after filing this motion (without good cause) to add a host of previously unasserted apparatus claims. The move is a tacit acknowledgement that Caddo has no legitimate claim to foreign sales information based on their existing contentions.

Progress respectfully requests that that the Court deny Caddo's motion to compel.

---

[1] *See* Memorandum in Support of Plaintiffs' Motion to Compel, ECF No. 41 ("Op. Br.") at 1, 7, n.2.

## II.     LEGAL STANDARD

Discovery is only permitted into matters that are "relevant to any party's claim or defense." FED. R. CIV. P. 26(b).  "On a motion to compel, '[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance.'" *Controlled Kinematics, Inc. v. Novanta Corp.*, No. 17-CV-11029-ADB, 2019 WL 3082354, at *2 (D. Mass. July 15, 2019) (quoting *Johansen v. Liberty Mut. Grp., Inc.*, No. 15-cv-12920-ADB, 2017 WL 6045419, at *1 (D. Mass. Dec. 6, 2017)).

In assessing whether requested discovery is relevant and proportional to the needs of the case, "Rule 26(b)(1) 'vests the trial judge with broad discretion to tailor discovery narrowly.'" *Primarque Prods. Co., Inc. v. Williams West & Witt's Prods. Co.*, No. 15-cv-30067-TSH, 2016 WL 6090715, at *2 (D. Mass. Oct. 18, 2016) (quoting *Cutter v. HealthMarkets, Inc.*, No. 10-11488-JLT, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011)); *see also Sustainable Sourcing, LLC v. Brandstorm, Inc.*, No. 12-cv-30093-MAP, 2017 WL 217747, at *2 (D. Mass. Jan. 18, 2017) ("concepts of relevance and proportionality dictate limits on the discovery to which Plaintiff is entitled").

## III.     ARGUMENT

### A.     Foreign Sales Information is Not Discoverable Because Caddo Only Asserts Method Claims that Must Be Practiced in the United States

Caddo's motion to compel worldwide sales information fails because such information is not relevant to any of the issues in the case.  Even if it had marginal relevance to the issues of determining a reasonable royalty or secondary indicia of non-obviousness (*e.g.*, commercial success), the production of worldwide sales information is not proportional to the needs of the case because it is not necessary or important to the Court or the jury's evaluation of either of these issues.  Caddo's motion to compel worldwide sales information should therefore be denied.

2

1. **Progress's Foreign Sales Information is Not Relevant to Infringement or Damages.**

Caddo's argument that worldwide sales information is discoverable in this case violates the fundamental principle that "that U.S. patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454–55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law.").

Caddo has asserted 60 claims from 7 patents against Progress. All of the asserted claims are method claims.[2] Liability for infringement of a method claim can only be found where all of the steps of the method are performed within the United States. *See INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022) (method claims "require[] actual performance of each claimed step . . . in the United States"); *Touchstream Techs., Inc. v. Google LLC*, No. 6:21-CV-569-ADA, 2022 WL 17744051, at *2 (W.D. Tex. Dec. 16, 2022) (denying motion to reconsider denial of motion to compel foreign sales information and stating "[t]here is no dispute that infringement of a method claim requires that each of the claimed steps be performed within the United States").[3]

Caddo does not cite a single case in support of its contention that sales outside of the United States are relevant to the infringement allegations in this case. Instead, Caddo asserts that the

---

[2] Three days after filing this motion to compel, Caddo filed a motion to amend its preliminary infringement contentions to add 13 more claims, which Caddo claims is needed so that it can take discovery on worldwide discovery on "those customers allegedly practicing the infringing methods abroad." ECF No. 45, at 9.

[3] Progress has agreed to produce documents sufficient to show sales, cost, and extent of use information for customers in the United States. Progress only objects to producing that information for customers outside of the United States.

3

foreign sales discovery is "a necessary predicate to Caddo's ability to identify the amount of sales and purchases for which Progress is liable for direct infringement in the United States." Op. Br. at 7.  But this argument fails for a simple reason: Progress cannot be liable for the sale of any Accused Instrumentality because Caddo has asserted only method claims, which cannot be infringed by a sale.  A method cannot be "sold," so the mere sale of a software product that allegedly performs a claimed method does not constitute direct infringement.  *Meyer Intell. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012); *see also Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a).").

Caddo has openly admitted that it seeks information concerning the practice of method steps abroad: "*Progress has refused to produce discovery* identifying which customers are allegedly practicing the infringing methods outside of the United States—information that is also the subject of this Motion." Op. Br. at 8 (italic emphasis in original, underlined emphasis added). Such discovery is not relevant as a matter of law.  Progress should not be required to produce it.

Caddo also asserts that foreign sales information is potentially relevant to "sales and purchases . . . where Progress may only be liable for induced infringement—where Progress itself did not make, use, sell, offer for sale, or import into the United States the Accused Instrumentalities but its customers, end-users, or distributors did." Op. Br. at 7.  Caddo does not endeavor to analyze the requirements for induced infringement under section 271(b).  But there is no question that "direct infringement is a necessary predicate for a finding of induced infringement in the usual patent case." *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018).  Like direct infringement under section 271(a), the induced infringement inquiry also requires the performance of each one of the method steps in the United States. *Id.*

4

Caddo has no good-faith reason to believe that any Progress customer has purchased the accused software abroad only to later use the software in the United States. Caddo states that "***Progress*** has ***no knowledge*** as to whether customers abroad have used or deployed the Accused Instrumentalities within the U.S. (*e.g.*, in their U.S. offices or by their U.S. employees)." Op. Br. at 8 (emphasis in original). And there are no allegations in the Complaint (or in Caddo's infringement contentions) of any customer abroad using or deploying the Accused Instrumentalities in the United States. Indeed, Caddo admits in its co-pending motion that it is aware "of only a single customer who has disclosed the use of the Accused Instrumentalities to Caddo . . . a U.S. company, *not a foreign entity*." ECF No. 45, at 10 (emphasis added). Simply put, Caddo has no factual basis to reasonably believe that Progress has foreign customers that practice the asserted method claims in the United States. Discovery is not a means for Caddo to conduct a fishing expedition to find out if it has a factual basis for such a claim. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.").

Finally, Caddo asserts that "the sales numbers Progress has provided for certain Accused Instrumentalities are but a small fraction of Progress's total sales publicly disclosed in its SEC filings." Op. Br. at 7.[4] But Caddo has not accused all of Progress's products and services of infringing its patents. Nor could it credibly do so. The accused breadcrumb functionality is quite

---

[4] In a footnote, Caddo acknowledges that "Progress's total North America sales in 2021 [as reflected in its public filings] may include sales of certain products not accused in this litigation," but then speculates that "the amount of sales Progress has categorically excluded is still likely several magnitudes higher than Progress's actual U.S. sales of the accused instrumentalities for the entire damages period." Op. Br. at 7 n.2. Caddo has no basis for such conjecture.

5

narrow. Progress has produced all relevant sales information for products that Caddo has alleged practice that functionality in the United States. Caddo is not entitled to anything more.

> **2. Progress's Foreign Sales Are Not Relevant to a Reasonable Royalty Analysis**

Numerous courts have denied discovery into foreign sales despite a plaintiff's insistence that such sales are relevant to a reasonable royalty analysis. *See Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 8060078, at *13 (C.D. Cal. Oct. 22, 2019) ("information regarding defendant's foreign sales is not relevant to the hypothetical negotiation of the reasonable royalty amount because defendant would not be liable for foreign sales that do not violate U.S. patent laws"); *see also Impinj, Inc. v. NXP USA, Inc.*, 2022 WL 16586886 (N.D. Cal. Nov. 1, 2022) (denying discovery into foreign sales information, citing *Kajeet*); *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15-cv-1879-BEN, 2016 WL 6522808, at *7 (S.D. Cal. Nov. 3, 2016) ("Defendant does not have to provide discovery regarding its foreign sales and offers to sell that result in foreign sales"); *Enpat, Inc. v. Microsoft Corp.*, 6 F. Supp. 2d 537, 539–40 (E.D. Va. 1998) (holding *Georgia-Pacific* factors for determination of reasonable royalty do not "support a conclusion that [a defendant] would pay for the right to engage in foreign sales it already has a legal right to make" such that "foreign sales may not be taken into account in any determination of a reasonable royalty").

Caddo cites cases that speak about the inclusion of sales information as part of the reasonable royalty analysis, but those cases are silent as to the applicability of worldwide sales to such an analysis. *See generally* Op. Br. at 10–11. Where foreign sales are found to be relevant to the reasonable royalty analysis, there is an underlying allegation of U.S.-based infringing activity. *See*, *e.g.*, *Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 168 (D. Mass. 2000), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001) (considering "foreign sales of products that were either made in the United States

6

or warehoused here for some period of time"); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 900 F. Supp. 2d 1160, 1163 (D. Nev. 2012) (considering foreign sales figure for "accused products that were imported back into the U.S. by third parties"). These cases concern physical products that are made or sold in the United States and/or capable of importation into the United States. Here, Caddo has asserted only method claims, which cannot be "made," "sold," or "imported," against downloadable software products. The cases cited by Caddo are inapplicable to these facts.

Nor is Progress's overall "financial condition" relevant to a reasonable royalty analysis. *C & C Jewelry Mfg., Inc. v. West*, No. C09-01303 JF HRL, 2011 WL 2559638, at *1 (N.D. Cal. June 28, 2011) (holding that the *3Com* case cited by Caddo does not stand for the proposition that an accused infringer's "overall financial condition" is *per se* relevant to a reasonable royalty analysis).[5]

### 3. Progress's Foreign Sales Are Not Relevant to the Obviousness Analysis

Progress's foreign sales information is not relevant to, let alone important to, the resolution of, the validity of the asserted claims or secondary indicia of non-obviousness. Caddo relies on cases that support the unremarkable proposition that commercial success may be relevant to the obviousness analysis. *See generally* Op. Br. at 12–13. These cases do not address the discoverability of foreign sales information, but instead analyze whether previously-produced global sales information *could* be considered as part of the obviousness analysis. Op. Br. at 13.

---

[5] Caddo asserts, without citing any factual support, that "Progress claims that the vast majority of its sales occur internationally." Op. Br. at 10. Progress has never made such a claim. In fact, Progress stated in the same public SEC filing cited by Caddo that "[t]otal revenue generated in markets outside North America represented 40% of total revenue in fiscal year 2021 compared to 41% of total revenue in the same period last year." *See* Progress Software 10-K for Year Ended November 30, 2021, at 24, *available at* https://investors.progress.com/node/25076/html (last accessed March 20, 2023).

<br>

7

Moreover, in *Bristol-Myers Squibb Co. v. Teva Pharmaceuticals USA, Inc.*, the court analyzed the commercial success of the *plaintiff's* product, not the products accused of infringement. 923 F. Supp. 2d 602, 677 (D. Del. 2013), *aff'd*, 752 F.3d 967 (Fed. Cir. 2014).

When courts have considered commercial success as a basis for a motion to compel, they have denied the motion, finding that foreign sales data would only be of "marginal relevance" at best in determining commercial success. *See*, *e.g.*, *Impinj*, 2022 WL 16586886, at *7.

### 4. Courts Routinely Deny Motions to Compel the Production of Foreign Sales Information

Courts do not simply grant access to foreign sales information as a matter of course, as Caddo argues. Rather, courts frequently deny discovery of such information where, like here, it lacks any connection to a domestic act of infringement. *See Rasmussen Instruments, LLC v. Depuy Synthes Prods. Inc.*, No. 20-cv-11807-TSH (D. Mass. Feb. 11, 2022) (denying "Motion to Compel Foreign Sales and Distribution Data" in patent case); *Finjan, Inc. v. Qualys Inc.*, No. 18-cv-07229-YGR, ECF No. 152 (N.D. Cal. Dec. 4, 2020) (denying discovery of foreign sales data because "overseas sales are only relevant if they are tied to a domestic act of infringement"); *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 210 (D. Colo. 2010) (denying motion to compel production of worldwide sales, noting the absence of "an adequate explanation of the facts an evidence supporting [the plaintiff]'s stated allegations of indirect infringement and inducement," and characterizing the request as "akin to [a] fishing expedition").

In one of the cases cited by Caddo, the Court *denied* a motion to compel foreign sales information. *See Finjan, Inc. v. Qualys, Inc.*, No. 18-cv-07229-YGR, 2020 WL 5569704, *1 (N.D. Cal. Sept. 17, 2020). The *Finjan* court first stated the unremarkable proposition that "foreign sales are relevant for infringing products that are made, used, offered for sale, or sold within the United States." *Id.* It then went on to deny Finjan's motion to compel because "foreign sales information

8

that Finjan seeks has nothing to do with the liability evidence that either does or does not show that the products Qualys has sold overseas were infringing when they were made here, or that Qualys used, offered for sale, or sold here products for its foreign customers." *Id.* Caddo's motion here suffers from the same infirmity—foreign sales information does not answer the question of liability.

The other cases cited by Caddo are distinguishable. They all concern situations that, unlike here, involve allegations of actionable foreign conduct. For example, in *Abiomed, Inc. v. Maquet Cardiovascular LLC*, the court permitted discovery of "foreign sales attributed to products whose components were exported from the United States for assembly and sale outside of the United States" as potentially relevant. 2019 WL 13089050, at *1 (D. Mass. Jun. 21, 2019).[6] Unlike *Abiomed*, this case does not involve "components" exported "for assembly and sale outside of the United States." Likewise, in *Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*, the court permitted discovery about worldwide sales only because it concerned information regarding customers who had "sold or imported an accused product into the United States." No. 12-cv-11935-PBS, ECF No. 318, at *8 (D. Mass. Jan. 16, 2014). Again, that analysis is inapplicable here because downloadable software cannot be "imported" into the United States. Moreover, there is no

---

[6] *See also Anvik Corp. v. Samsung Elecs.*, No. 07-cv-825, ECF No. 104, at *7–8 (S.D.N.Y. Jan. 21, 2010) (infringement allegation was that defendants "each used an allegedly infringing FX machine . . . to produce LCD panels," which were "then sold to third parties who then incorporated the panels into a variety of electronic products for sale"); *Apeldyn Corp. v. AU Optronics Corp.* No. 08-568-SLR, ECF No. 290, at *2 (D. Del. Apr. 12, 2010) (relying on reasoning from *Anvik* and ordering production where there were allegations that infringing products sold abroad may enter the United States); *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 945 (N.D. Ill. 2006) (allegation that defendant "is inducing non-party component manufacturers in the Far East to incorporate Bel Fuse's infringing modular jacks into their products and import or sell them in the United States"); *Minn. Mining & Mfg. v. Smith & Nephew, PLC*, No. 91-cv-274, 1992 WL 464352, at *1–2 (D. Minn. July 27, 1992) (undisputed allegations that defendants "command a significantly larger portion of the synthetic orthopedic casting market in England and Continental Europe than in the United States").

9

analysis whatsoever in *Skyhook Wireless, Inc. v. Google, Inc.*, where the Court even acknowledged the potential lack of relevance of such information. No. 10-111561-RWZ, ECF No. 334, at 4 (D. Mass. Feb. 25, 2014) ("However, this order is without prejudice to Google's right to argue, at a later point in the proceedings, that such information is not relevant.").

In still other cases cited by Caddo, the plaintiffs were permitted certain extraterritorial discovery because they sought damages based on a lost profits theory of damages, where U.S.-based infringement may result in lost profits abroad. *E.g.*, *W.H. Wall Fam. Holdings LLLP v. CeloNova Biosciences, Inc.*, No. 1:18-CV-303-LY, 2020 WL 1644003, at *3 (W.D. Tex. Apr. 2, 2020) (finding that "foreign damages may be compensable for domestic infringement under 271(a)" in a lost profits context).[7] Caddo cannot pursue a lost profits theory here. It is a non-practicing entity that does not sell any products, much less products that are covered by the Asserted Patents. Caddo should not be permitted discovery that may only be relevant to a theory of damages that it cannot pursue.

### B. The Identity of Progress's Customers and Their Addresses Are Not Relevant to Any Claim or Defense in the Case

None of Caddo's discovery requests, let alone the discovery requests it has moved on here, request the information it now seeks to compel—namely, the identity of Progress's customers and their principal and shipping addresses. For example, Caddo's Interrogatory No. 7 requests that Progress "[d]escribe in detail *the number* of customers . . . who have used, operated, implemented, or executed the Breadcrumb Functionality" of the accused products. (Emphasis added.) Likewise, Request for Production No. 4 asks for "[d]ocuments related to Progress's products and/or services

---

[7] *Cf. Gyrodata Inc. v. Scientific Drilling Int'l, Inc.*, No. 6:20-cv-00566-ADA, ECF. No. 58 at 1 (W.D. Tex. Jan. 11, 2022) (allowing discovery in an "Agreed" order without any analysis or discussion of the facts, in competitor-vs-competitor case involving oil and gas drilling (*see* ECF No. 1 (Complaint))).

10

. . . including derivative sales and sales of products and services sold, *number* of such sales, *revenue* from such sales and **costs** associated with these products and services." (Emphasis added.) In fact, Caddo does not identify any discovery request that covers the information it now seeks to compel. *See* Op. Br. at 16–18. This oversight is fatal to Caddo's motion, which was not substantially justified.

The information sought by Caddo is not discoverable in any event. Caddo does not cite a single case or provide any factual basis showing why the identity and location of Progress's customers are relevant to any claim or defense. The actual identity of a customer is not relevant to the whether the steps of Caddo's asserted method claims have been practiced in the United States. Nor is the information relevant to any damages inquiry—the *Georgia-Pacific* factors are indifferent as to the identity of the defendant's customers.

Courts throughout the country have denied discovery requests like this one, finding that they implicate trade secret and privacy concerns and, as such, are disproportionate to the needs of the case. *See, e.g.*, *ARK Nat'l Holdings LLC v. We Campaign LLC*, No. 12-cv-10893, 2021 WL 5918682, at *5 (D. Mass. Dec. 15, 2021) (holding "customer data qualifies as a trade secret because it is a compilation of information that derives independent economic value from not being generally known to, or readily ascertainable by proper means by, the public") (internal quotation marks omitted); *Feldman v. Cmty. Coll. of Allegheny (CCAC)*, 85 F. App'x 821, 827–28 (3d Cir. 2004) (denying motion to compel customer, affirming that "customer lists are confidential and entitled to protection as trade secrets" and noting that the request would be "burdensome and require disclosure of confidential information.") (citing *Am. Ice Co. v. Royal Petroleum Corp.*, 261 F.2d 365, 367 (3d Cir.1958)); *Gibson v. Resort at Paradise Lakes, LLC*, No. 16-cv-791, 2017 WL 735457, at *1 (M.D. Fla. Feb. 24, 2017) (denying motion to compel customer lists as requesting

11

information that is overbroad and protected as trade secret). The same concerns are present here, and indeed are magnified because information about Progress's foreign customers implicates differing privacy regimes across the globe.

Caddo argues that it "must be given an opportunity to test Progress's U.S. nexus methodology" by assessing for itself where Progress sells the accused products and where "foreign" customers use those products. Op. Br. at 18. But Caddo does not need sensitive trade secret information to conduct this inquiry. Before Caddo filed its motion, Progress agreed to provide (and now has provided) relevant sales-related information, including for example concerning number of licenses sold, cost information, and service and maintenance information, which Caddo can use to evaluate damages. *E.g.*, Caddo Ex. 7. To the extent Caddo is not satisfied with how Progress determines its U.S. revenues,[8] Caddo can explore Progress's U.S. revenues by other means of less burdensome discovery, including through interrogatories or deposition testimony pursuant to Rule 30(b)(6).

Progress has genuine concerns that Caddo, a litigious non-practicing entity, would weaponize Caddo's trade secret information to harass Progress's customers with vexatious third-party subpoenas and follow-on lawsuits.

Caddo's request for Progress's customer list and physical addresses should be denied.

### C. Caddo's Request for Fees and Costs Should be Denied

Caddo has no basis for its request for costs and fees under Fed. R. Civ. P. 37. Progress's objections to Caddo's discovery requests have a well-founded basis in the law and the facts of this case. Thus, the only portion of Rule 37 that is applicable here is Rule 37(a)(5)(B), under which

---

[8] *See, e.g.*, Caddo Ex. 7 ("The produced financial data includes sales bookings for the Accused Products for customers in the United States (referred to at Progress as 'ship to' bookings, even though the products are downloaded and physical media is not shipped).").

12

the Court may issue a protective order and award Progress its reasonable costs and attorneys' fees incurred in opposing this motion.

At minimum, Caddo's request for fees and costs must be denied because Progress's objections were "substantially justified." FED. R. CIV. P. 37(a)(5)(A)(ii) ("[T]he court must not order this payment [of reasonable expenses] if . . . the opposing party's . . . objection was substantially justified"); *see Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ("[S]ubstantially justified . . . has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or 'if reasonable people could differ as to the appropriateness of the contested action.'") (internal citations omitted). Further, an award of reasonable expenses to Caddo would be unjust because Progress has been participating in the discovery process in good faith. *See* FED. R. CIV. P. 37(a)(5)(A)(iii). The only case cited by Caddo analyzed sanctions under 28 U.S.C. § 1927, an inapplicable statute under which Caddo has not requested relief. *See Xiao Wei Catering Linkage in Inner Mongolia Co. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, No. 15-cv-10114-DJC, 2018 WL 1567604, at *6 (D. Mass. Mar. 30, 2018). Moreover, the request in that case involved sanctions in view of a lengthy history of bad faith litigation conduct, including multiple frivolous and vexatious motions and false accusations of fabrication of evidence by opposing counsel. *Id.* Progress's good-faith objections here bear no relation to such egregious misconduct.

**IV.  CONCLUSION**

For the foregoing reasons, the Court should deny Caddo's motion to compel in its entirety and award Progress its reasonable expenses incurred in opposing this motion, including attorneys' fees.

March 20, 2023

                              Respectfully submitted,

                              **PROSKAUER ROSE LLP**

By:    /s/ *James R. Anderson*
        Colin G. Cabral (BBO No. 670234)
        James R. Anderson (BBO No. 693781)
        One International Place
        Boston, MA 02110
        (617) 526-9600
        ccabral@proskauer.com
        jaanderson@proskauer.com

*Attorneys for Progress Software Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document and accompanying papers were served on all counsel of record via operation of the Court's CM/ECF system.

                              /s/ *James R. Anderson*
                              James R. Anderson