# EXHIBIT 5

1                UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS (Boston)

3                          No. 1:22-cv-10815-WGY

4

5    CADDO SYSTEMS, INC., et al,
             Plaintiffs

6

7    vs.

8

9    PROGRESS SOFTWARE CORPORATION,
             Defendant

10

11                    * * * * * * * * *

12

13              For Hearing Before:
             Judge William G. Young

14

15              Markman Hearing

16

17              United States District Court
             District of Massachusetts (Boston)
18           One Courthouse Way
             Boston, Massachusetts 02210
19           Thursday, March 23, 2023

20                    * * * * * * * *

21

22       REPORTER: RICHARD H. ROMANOW, RPR
             Official Court Reporter
23           United States District Court
       One Courthouse Way, Room 5510, Boston, MA 02210
24           bulldog@richromanow.com

25

```
 1              A P P E A R A N C E S

 2

 3   ALEX CHAN, ESQ.
         Devlin Law Firm LLC
 4       1526 Gilpin Avenue
         Wilmington, DE 19806
 5       (302) 449-9010
         Email: Achan@devlinlawfirm.com
 6   and
     WILLIAM F. McGONIGLE, III, ESQ.
 7       Arrowood LLP
         10 Post Office Square, 7th Floor
 8       Boston, MA 02109
         (617) 849-6208
 9       Email: Wmcgonigle@arrowoodllp.com
         For Plaintiffs
10

11   JAMES R. ANDERSON, ESQ.
     COLIN G. CABRAL, ESQ.
12       Proskauer Rose LLP
         One International Place
13       Boston, MA 02110
         (617) 526-9851
14       Email: Jaanderson@proskauer.com
         For Defendant
15

16

17

18

19

20

21

22

23

24

25
```

1      P R O C E E D I N G S

2      (Begins, 2:10 p.m.)

3      THE CLERK:  Civil Matter 22-10815, Caddo Systems

4  versus Progress Software.

5      THE COURT:  If we're ready to go, would counsel

6  identify themselves.

7      MR. McGONIGLE:  Counsel for the plaintiff, Caddo

8  Industries, your Honor, Bill McGonigle of Arrowood, LLP.

9  With me today is Alex Chan of the Devlin Law Firm, who

10  will be handling the argument today.

11      THE COURT:  And good afternoon to you both.

12      MR. CABRAL:  Good afternoon, your Honor, Colin

13  Cabral from Proskauer and on behalf of the defendant,

14  Progress Software.

15      MR. ANDERSON:  And Jim Anderson also from

16  Proskauer.

17      THE COURT:  And good afternoon to you.

18      Now let's frame the matter here.  First I have 7

19  claim terms to construe and I very much appreciate

20  counsel's narrowing the, um, matter to those terms,

21  that's extraordinarily helpful.  These claim terms

22  appear in a variety of patents.  That may make a

23  difference.  We'll see.

24      The way -- I prepared as best I can, I've spent --

25  as my law clerks, some considerable time preparing for

 1    this hearing, so I have a view here, and the way I

 2    proceed in a markman hearing is if I am going to select

 3    one or the other of your views, I will state that.  If

 4    I've got language which I think more clearly captures

 5    it, I will state that.  And then we'll argue about it.

 6         Actually you're in agreement as to this term, in

 7    the '836 patent, Claim 8, "providing a means for

 8    navigating the multilevel hierarchical website," and

 9    you've got an agreed-upon construction.  The Court

10    adopts that construction.

11         So let's go to the term "active path," as it

12    appears, it's what you've termed "Disputed Term Number

13    1."  As to that I, um -- it seems that Progress, a

14    slightly similar approach -- well I've got like a

15    mid-level approach as between your two approaches.  So

16    let's try this.

17         Wouldn't the -- wouldn't this properly define

18    "active path"?  "A sequence of links constructed during

19    menu navigation."  Now that's Caddo's proposed

20    construction, except I prefer the use of the word "menu"

21    to "user navigation," which seems more limited.  And

22    we'll turn to Caddo.

23         Won't you go for that?

24         MR. CHAN:  Your Honor, I think that construction

25    makes sense, although I'm going to have to doublecheck

1    the claims because my understanding is not every

2    independent claim requires or recites the word "menu."

3         THE COURT:  I'm not saying it does, but that's the

4    function that's going on.  That's where this operation

5    is -- that's where we need to deal with it.

6         MR. CHAN:  Then in that regard, your Honor, I

7    would only seek further clarification on the scope of

8    "menu," because -- just giving you an example, '411

9    patent Claim 1 --

10        If you have that open, your Honor?

11        THE COURT:  I do not, but you go ahead.

12        MR. CHAN:  No worries.

13        So Claim 1 of the '411 patent would just be

14   "parent patents of all the other asserted patents recite

15   a practical user menu system," and so the word "menu

16   navigation" should be clarified whether it is referring

17   to the "navigation of the practical user menu system" or

18   some other menus that are not -- I'll give you an

19   example.  The very same claim recites "menu item," for

20   example, and "menu item" refers to that which "under the

21   active link."

22        And so when we say "menu navigation," are we

23   referring to the "graphical user menu system" or are we

24   referring to the "user item" or "menu item" that is

25   recited say under Limitation Number 2, "that recite

```
 1   dynamically-constructing active path as a sequence of
 2   active claims," and yada yada yada.
 3          THE COURT:  All right.  Well now I'm looking at
 4   it.  Just a second.
 5          MR. CHAN:  Sure.
 6          (Pause.)
 7          THE COURT:  Well I don't see -- if I substitute
 8   the word "menu," I would think it would be clear because
 9   it's going to appear in this claim.  I don't have to
10   recite the whole claim again in to interpret this phase.
11          Let's see what Progress has to say.  Are you
12   satisfied with that?
13          MR. CABRAL:  Your Honor, Colin Cabral for
14   Progress.
15          I think that construction is faithful to the
16   intrinsic evidence.  I think the one issue, um, we do
17   think it should be construed, so we agree with that.  We
18   do agree with the addition of "menu" to the
19   construction.  I think the only concept that could be
20   added is clarity about who is doing the navigation, and
21   that is the user here, and I think both parties are in
22   agreement that it's only the user who does navigation.
23   So if we added the words "by the user" at the end,
24   that's a construction that we'd be satisfied with.
25          THE COURT:  All right.  Is that okay, "by the
```

1  user"?

2      MR. CHAN:  Just one second, your Honor.

3      THE COURT:  "A sequence of links constructed

4  during menu navigation by the user."

5      (Pause.)

6      MR. CHAN:  I hate to say this.  I'm fine with

7  that, but if there's a choice between "user navigation"

8  and "menu navigation," I'll prefer the Court's

9  construction, which is "menu navigation."

10      THE COURT:  Well I say "menu navigation by the

11  user."

12      MR. CHAN:  Oh, "by the user"?

13      THE COURT:  We're okay?

14      MR. CHAN:  No objection there.

15      THE COURT:  Very well, that's how Item 1 will be

16  construed.

17      Just so we're clear though, and I'm not clouding

18  you for time, you've got me till 20 minutes of 4:00 and,

19  um, we'll resume if we don't get through it.

20      Okay.  Item 2 is "Preselection."  Here again I

21  don't see the need for any further construction.

22  "Preselecting," as it is used in the '411 patent, um, I

23  don't think I have to adopt Progress's construction

24  here, "preselecting" seems understandable.  I'll hear

25  Progress if that's a problem.

 1        MR. ANDERSON:  Note my objection.  And thank you,

 2   your Honor, Jim Anderson for Progress.

 3        THE COURT:  Sure.

 4        MR. ANDERSON:  The distinction that we think is

 5   important to draw is the distinction between selecting

 6   and, um, whether it's "preselecting" or "provisionally

 7   selecting" or "browsing," um, and the reason we think

 8   it's important to draw that distinction is because Caddo

 9   relied heavily on it both in the specification and in

10   the prosecution history.  And so the concern, your

11   Honor, is that without a construction that guides the

12   jury to the meaning of "preselecting" that Caddo adopted

13   and is reflected in the specification and prosecution

14   history, there's really a potential for jury confusion

15   as to what "preselecting" means in the specific context

16   of this patent.  So that's why our proposed

17   construction.

18        THE COURT:  I think I understand your problem --

19   not problem, I think I understand your position.  Let's

20   jump to this Item 4 that you have --

21        MR. ANDERSON:  Sure enough.

22        THE COURT:  -- because there it's a different term

23   that I have to construe and it's the term "browse" or

24   "browser," and of all of these that's the one that gave

25   me the most trouble.  So let me try that.

 1          MR. ANDERSON:  I think that makes sense.

 2          THE COURT:  And if I could understand what's meant

 3     by "browsing," or we could work our way through, in this

 4     Item 2, a different patent, a different phrase, I think

 5     maybe I would know more.

 6          So here -- I'm on 4.

 7          MR. ANDERSON:  Yes.

 8          THE COURT:  Now here's how I would, um, define the

 9     word "browse" or "browsing," um -- and it's too verbose,

10     but here's the best I could do.  How about this,

11     "rolling over with the potential of actively choosing,"

12     and stop there.  Now I think that's what "browsing" is.

13          MR. ANDERSON:  So, your Honor, I -- "rolling over

14     with the potential of actually choosing."

15          THE COURT:  "of actively choosing."

16          MR. ANDERSON:  "Of actively choosing," right.  So

17     here's our issue -- here's my issue with that

18     construction.  Is that we're still leaving open, I

19     think, um, or unstated the distinction between "rolling

20     over" and "selecting," and just to give sort of a

21     practical example of how we read the patent.  So -- and

22     actually it's in our slide, if you'd refer to Slide 11,

23     we have it.

24          THE COURT:  Go ahead.

25          MR. ANDERSON:  We have "selecting" means "actively

1    choosing," um, which is in the specification of four of

2    the six patents that we're talking about here including

3    the patents that include the "browsing" term.  So that's

4    the source of the "actively choosing" language in our

5    proposed construction.

6         In the sentence -- and I'm in the highlighted --

7    the middle highlight on Slide 11.

8         THE COURT:  I got it.

9         MR. ANDERSON:  The sentence before "selecting

10   means actively choosing," that's used here in the term

11   "selecting" is distinguished from the term "browsing."

12        THE COURT:  I follow.

13        MR. ANDERSON:  Right.  And so the concern that we

14   have -- that we would have with the construction, the

15   piece of the construction, the potential of "actually

16   choosing" -- of "actively choosing," excuse me, is that

17   it's -- that's not a distinction -- it's not

18   distinguished from "actively choosing" there, it's

19   leaving open the possibility of "actively choosing," um,

20   and that's not -- we don't think that faithful to the

21   intrinsic evidence.

22        THE COURT:  But I guess I don't -- the ordinary

23   meaning of the words.  "Browsing" is "rolling over with

24   the ability actively to choose," you could put in

25   another sentence, "but active choice is not required,"

1  because of course it's not.  That's why I said

2  "potential."  "Rolling over with the potential of

3  actively choosing," that's "browsing."

4      And I guess -- I see what you mean, but I don't

5  think I'm doing violence to these words.  It says

6  nothing about "selecting."

7      MR. ANDERSON:  What the -- "browsing" doesn't say

8  anything about "selecting," you mean?

9      THE COURT:  Correct.

10      MR. ANDERSON:  So I would agree with that.  And

11  that's the distinction we're trying to draw.  And one

12  would -- I know this is a little to the side of what

13  we're talking about, but if it's the words "actively

14  choosing" that are sort of creating a little bit of an

15  issue in our proposed construction and in the verbosity

16  of -- and your Honor said the construction is a little

17  verbose, for one "rolling over" would be something --

18  leaving it there, um, is something that we could

19  probably or possibly live with.

20      THE COURT:  Well that's their proposal, "rolling

21  over."

22      MR. ANDERSON:  Right.  And so "rolling over" is

23  sort of one place, the other place is "rolling over

24  without selecting."  And so -- and the reason that we

25  think it's faithful, your Honor, is that --

1          THE COURT:  "Without selecting but with the

2     ability to select"?

3          MR. ANDERSON:  That would be fine.

4          THE COURT:  Well let's see -- let's see what they

5     say about that.  Let see if I can catch that.

6          "Rolling over without selecting but with the

7     ability to select."  What do you say to that?

8          MR. CHAN:  It's very convoluted, for one.  But I

9     wanted to, um --

10          THE COURT:  It is.  I accept that.  But it seems

11     to work.

12          MR. CHAN:  I respectfully disagree.  First and

13     foremost, your Honor, the very slide that they're

14     pointing to, this is the '836 patents, this is a

15     continuation-in-parts patents.

16          THE COURT:  Let's stick to the language.

17          MR. CHAN:  I understand.  But I wanted to preface

18     my argument by saying that they're trying to draw some

19     statement from the continuation and trying to impute the

20     meaning of one word, "selecting," to an entirely

21     different word, "browsing," in the parent application.

22     This statement, "selecting means actively choosing,"

23     does not appear in '411 or '517 patents.

24          THE COURT:  I'm not asked -- I'm not asked to

25     interpret "selecting" here, so we're not getting into

1    that, it's "browsing."

2         MR. CHAN:  Understood.

3         But I also wanted to follow-up on their side of

4    the argument about "actively choosing."  "Rolling over"

5    just simply doesn't comport with "actively choosing."

6    If a user is "rolling over" something, by implication

7    they're trying to select something.

8         For example, applying the context of the claims,

9    if a user is "rolling over an active link," they, by

10   implication, is actively choosing to look at that active

11   link and everything underneath that.  And so when you

12   say "rolling over" --

13        THE COURT:  Well that's not so, is it?  When I

14   "browse" these various patents -- what's patented here,

15   I can "browse" down quickly through the file items and

16   then I can click on something.  Now when I click on it,

17   whatever language we're going to use here, I actively

18   choose it and then all the subtitles come up.  Isn't

19   that right?

20        MR. CHAN:  That is not correct, your Honor.  I'm

21   going to direct your --

22        THE COURT:  That's not correct?

23        MR. CHAN:  I'm going to direct your attention to

24   Figure 5(c).  Do you have the '411 patents?

25        THE COURT:  I do.  Now Figure 5(c) in '411?

1        MR. CHAN:  Correct.  So let's look at the picture

2    and drawing.

3        THE COURT:  I have 5(c).

4        MR. CHAN:  So if you look at 5(c), the patents are

5    demonstrated -- it's demonstrated that we can actually

6    actively choose to view, for example, Item 12(b), do you

7    see the shaded region?  And so they can put their mouse

8    over "active link," 102(b), and then proceed to select

9    12(b) and actively choose to look at further

10   subordinate-level Item 12(c).  So the whole process

11   itself is a user actively choosing the very item to

12   which he is accessing.  And so by saying there's no

13   "actively choosing," that conflates with the very

14   purpose of rolling over the mouse and picking Item 12(b)

15   --

16       THE COURT:  No, I -- I -- I guess this is a

17   conceptual -- it's a real conceptual issue.

18       As I look at Figure 5(c), I can see that I'm

19   browsing over these active links denominated 12(a)

20   through 12(d), as are illustrated, and then I actively

21   choose 102(b).  Once I do that, I get 12(b)(1) through

22   12(b)(4).  I can browse all four of them, actively

23   choose 12(b), which gives me 12(c)(1) -- well it looks

24   like a typo here, 12(c)(1), 12(c), and 12(c)(3), and

25   then I actively choose 12(c).  Now that's what you're

1    illustrating can be done here.  That's --

2         Now the hash marks teach me or illustrate to me

3    this is browsing plus active choosing.  Browsing is when

4    I can look at all -- a group of things, and so it's

5    without actively choosing.  And that's -- to me that

6    equates, it's your language, I roll over those things.

7         MR. CHAN:  Yeah, but once I get to 12(c), I have

8    actively chosen 12(c), there's nothing further or more

9    beyond that.

10        THE COURT:  In this particular illustration there

11   isn't.

12        MR. CHAN:  Right.  So that's one embodiment that

13   is disclosed, and their construction would effectively

14   exclude --

15        THE COURT:  No, I think it would not.  I don't

16   read it as excluding.

17        Let's, um -- read this language back to me,

18   Mr. Anderson, that you would agree with.

19        MR. ANDERSON:  Sure.

20        "Rolling over without selecting, but with the

21   ability to select."

22        THE COURT:  Yeah, I'm adopting that.  So that at

23   least, for purposes of our discussion today, is that's

24   Number 4.

25        Now, um, if -- now I'm back to Number 2.  And

1   frankly again, having construed what, for ease here

2   we're calling "Number 4," having construed Number 4, I'm

3   satisfied that nothing further is necessary for

4   construing Number 2.  You want to construe Number 2, um,

5   more closely to Number 4.  It's a different phrase.

6   And, um, I don't think we need to construe it.

7           All right, let's see Number 3.

8           MR. ANDERSON:  May I be heard on Number 2 for a

9   moment?

10          THE COURT:  Of course you may.

11          MR. ANDERSON:  Thank you, your Honor.

12          THE COURT:  It's fine.

13          MR. ANDERSON:  So -- and I -- if I could refer the

14   Court to Slide Number 12 in our presentation.

15          THE COURT:  I have it.

16          MR. ANDERSON:  And actually we could go to Slide

17   13 and then I'll go back to 12.

18          THE COURT:  Fine.

19          MR. ANDERSON:  So the issue that we continue to

20   have with not providing a construction with

21   "preselecting," um, is this, is that there's obviously a

22   little bit of interpretation that can be done with

23   respect to what the term "browsing" means, we just went

24   through that and the jury can't be permitted to do that,

25   and our position is that the jury would be doing

1    something similar, um, if we don't provide them with a

2    construction of "preselecting."

3         And so referring to the center, um -- well the

4    reason that the construction the Court adopted just now

5    for "browse," um, would be equally applicable to

6    "preselecting," is that it too finds support in both the

7    specification of the '411 patent, which I acknowledge

8    and agree is different from the specification of the

9    other continuation of our patents, as well as the file

10   history of the '414.

11        And so in the specification, which we're looking

12   at on Slide 12, the first highlighted portion, um,

13   discusses, quote, "simply rolling over an active link

14   does not alter the active path 100, it merely causes the

15   sibling menu items to be displayed."  I think that's

16   what we were just talking about, was going over each of

17   the 102(a), 102(b) at the top.

18        But then you get to the second portion, um, the

19   second highlighted portion, which is "selecting will

20   cause the sibling menu items to be displayed and will

21   trigger the construction of a new active path."

22        And so there's this same -- the specification

23   draws the same distinction between, um, "selecting" and

24   "browsing," um, as the continuation-in-part

25   specifications do.  But the specification -- so it's

1   there, the distinction is there.  What's not there is

2   the word "preselecting," and for that we need to go to

3   the prosecution history and that's on Slide 12, um, that

4   we handed up.

5        Slide 12, the patent applicant amended the claims

6   to get over the prior art by adding the word

7   "preselecting" and introducing that addition by reciting

8   "Amended Claim 1 recites a feature where preselecting,"

9   quote "browsing" "a given active link" does the things

10  we just talked about, and then emphasizes that "It

11  should be appreciated that the action of preselecting an

12  active link is distinguished from the action of

13  selecting an active link," which is consistent with the

14  discussion that we just had about "browsing" as well.

15       So, your Honor, I think not only is the

16  construction that the Court adopted for "browsing" just

17  now consistent with the intrinsic evidence surrounding

18  the term "preselecting," but also as a practical matter,

19  you know, that's how this is going to be presented to

20  the jury, um, is that a user is -- has the ability to

21  preselect or browse and then we'll be looking at the

22  claims in that manner.

23       THE COURT:  And so why do I need to define

24  anything for it?

25       MR. ANDERSON:  Because otherwise "preselecting"

1    may be permitted to have a different meaning than

2    browsing and --

3        THE COURT:  Okay, I -- unless it does, and I --

4    Oh, no, I see the force of what you're saying, but, um,

5    this is the markman hearing and so with all -- I'm not

6    trying to make life easier for me, in fact it may be

7    more difficult, I am trying to define those things that

8    appear to me to need definition for the jury.

9        Now when it comes to be presented, maybe I'll have

10   to make a further definition.  Nothing prevents me from

11   further construing.  And I do hear your argument, and

12   Caddo should take note of it, and I know they will.  But

13   I don't see the need for adding language here,

14   "preselecting" seems, as these things go, fairly

15   straightforward.

16       MR. ANDERSON:  I understand, your Honor.

17       THE COURT:  So we'll stick with that.

18       So, um, Number 3, for much of the same --

19       MR. CHAN:  Your Honor, if I -- just for

20   clarification.

21       So for "preselecting," are you affording this term

22   its plain and ordinary meaning in --

23       THE COURT:  I am, yes.

24       MR. CHAN:  Thank you, your Honor.

25       THE COURT:  And I propose to do the same thing

1    with "provisional selection of" or

2    "provisionally-selected active link."  I think I need

3    not say anything further.

4         MR. CHAN:  Thank you, your Honor.

5         THE COURT:  Now I don't think that prevents me

6    from saying something or construing something further

7    downstream, but I'm not going to do it willy-nilly, only

8    if I come to believe that it is required.

9         So that is, um -- then there's 5, information --

10         Now for 5 and 6, Progress takes the position that

11    these terms are indefinite, and I guess my, um, I have

12    sort of a legal pushback on that, not a construction.

13         I don't view the issue of definiteness as one

14    properly before me in a markman hearing.  I have to take

15    the language and, under markman and its progeny,

16    interpret it for the jury.  It may still be indefinite

17    and you may well get to the jury on whether it's

18    indefinite, but absent expert testimony and the like.

19    So the record will be clear that by taking the position

20    that it is -- and Caddo says, "Well it doesn't need to

21    be construed and it's not indefinite."  No.  I'm taking

22    no position on the definiteness of 5 and 6, just that I

23    don't see the need for any further construction.

24         So, um -- except that, on 6, Caddo offers an

25    alternative -- and candidly I like that better than "the

1    selective link," I like the word "a selectable link."

2    Does that alter the meaning?  And Caddo will go for it.

3         What does Progress say to that?

4         MR. ANDERSON:  Thank you, your Honor.  I would

5    refer the Court to Slide 25, which is a little verbose

6    so I'll say it.  But it's on 25.

7         THE COURT:  Thank you.

8         MR. ANDERSON:  The -- the construction "a

9    selectable link" is not acceptable to us.

10        "The selectable link," um, the reason we think

11   it's indefinite, and I know they're withholding judgment

12   on that, is that there are multiple selectable links

13   recited previously in the claim.  And so the question is

14   which one of those selectable links does "the selectable

15   link" refer to?

16        And just very quickly there are, in the case law,

17   which I don't have at my fingertips, indefiniteness

18   issues that can be resolved at the claim construction

19   phase because they relate to the meaning of the claim

20   terms, you know most directly, and whether they are

21   construable, and then there are kind of indefiniteness

22   issues -- and these are my words, but kind of as-applied

23   or that come up later in the case.

24        THE COURT:  No, I follow.  I follow.

25        MR. ANDERSON:  Yeah.  And so that's why we brought

1    these ones up here at this stage.

2         So going back, "the selectable link" is not

3    acceptable to us because there's just no clarity as to

4    which one of the links it's referring to.

5         The issue with "a selectable link" is in Number 2

6    on Slide 25.  In patent law an indefinite Article A, um,

7    can refer to, um, does not necessarily refer to and in

8    fact I believe is presumed not to refer to something

9    that was previously recited in the claim.  And so

10   adopting -- by adopting a construction "a selectable

11   link," what we're changing it from is it can be any one

12   of the selectable links as well as -- that were

13   previously recited, as well as a different unrecited

14   selectable link, which may happen.  As the patent -- you

15   know you have 102(a), 102(b), 102(c), 102(d), they can

16   continue, so there doesn't have to be three, there

17   doesn't have to be two, there can be any.

18        And so by replacing the definite article with the

19   indefinite article, you're really changing the scope of

20   the -- that construction, excuse me, would really be

21   changing the scope of the claim.  And for that reason it

22   would be unacceptable to us.

23        THE COURT:  Let me understand your Slide 25, and I

24   think I do.

25        MR. ANDERSON:  Uh-huh.

1      THE COURT:  The title, and the language in the

2  left-hand column, is, in essence, synopsizes your

3  argument.  The right-hand column refers to the '053

4  patent Claim 1?

5      MR. ANDERSON:  Yes, with one tweak to that.

6  Number 1 in the left-hand column is Caddo's, um, what

7  I've been calling their "alternative alternative

8  proposed construction," which came up for the first time

9  in their reply briefing and in the context of a

10  certificate of correction.  So I put this slide together

11  to distinguish between those two.  But with that, yes.

12      THE COURT:  I understand the argument.

13      I'll hear you.

14      MR. CHAN:  Your Honor, I want to preface this by

15  saying that this very term is a term introduced by the

16  Patent Office, by the very same patent examiner that

17  allowed the application.  And the law is very clear that

18  it is presumed --

19      THE COURT:  This term --

20      MR. CHAN:  "The selectable link."

21      THE COURT:  "The selectable link."

22      MR. CHAN:  -- was the term introduced in the

23  prosecution history by the patent examiner to place the

24  application in condition for allowance.  This is

25  something that was entirely omitted in their responsive

1  brief.  And we even included a copy of our interview

2  summary with this patent examiner stating he has no

3  objection to the proposed amendment to the claim, which

4  is in response to "selection of one of the selectable

5  links."

6       But setting that aside, there is no dispute that

7  the Patent Office does not object to this term.  Because

8  they're presumed to understand the term that they very

9  much introduced into the amendment by themselves.  There

10 is a strong presumption by the Federal Circuit and they

11 haven't rebutted that presumption.

12      THE COURT:  Well their task is different than

13 mine, their task is to allow or disallow a patent as

14 compared to the prior art.  My function here is to see

15 if the jury can understand it.

16      Can you take a moment and argue against his

17 reasoning why I should not adopt the term, which you've

18 proposed in the alternative, "a selectable link."  He

19 says that if I do that I'll change the meaning.

20      R. CHAN:  I respectfully disagree, your Honor,

21 because I think they even highlighted themselves that if

22 -- the selection of this selectable link clearly refers

23 to one of the three selectable links that is in the

24 preceding limitation.  There is no other selectable link

25 recited in this claim, it's only the first, the second,

1    or the third selectable link.  That's it.  There's

2    nothing else.

3          As far as which ones?  Well that's really a claim

4    breathe issue, not a claim indefiniteness issue.  The

5    patentee is entitled to broaden the claim to have any

6    one of those selectable links selected.

7          THE COURT:  All right.  Well thank you.  Here's

8    how we're going to proceed.

9          We have, or I have, and I take responsibility, um

10   -- I've interpreted or I've resolved all the issues but

11   for Number 6.  Number 6 I'm taking under advisement.

12   You already have the tentative judgment of the Court

13   with respect to each of issues 1 through 5 and 7.  I

14   will support this with a memorandum and I will resolve

15   Number 6 and include that in the memorandum.

16         And there's only one more thing that I should deal

17   with this afternoon, and that's Caddo's motion to

18   compel.  That motion is denied.

19         Is there anything else that we should do this

20   afternoon?

21         (Silence.)

22         THE COURT:  I hear nothing.

23         And I do thank you for this, it's very helpful.

24   We'll stand in recess.

25         THE CLERK:  All rise.

1          (Ends, 2:45 p.m.)

2

3              C E R T I F I C A T E

4

5          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

6     do hereby certify that the foregoing record is a true

7     and accurate transcription of my stenographic notes

8     before Judge William G. Young, on Thursday, March 23,

9     2023, to the best of my skill and ability.

10

11

12    /s/ Richard H. Romanow 05-01-23
      _____
13    RICHARD H. ROMANOW    Date

14

15

16

17

18

19

20

21

22

23

24

25