# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CONCENTRIC HEALTH ALLIANCE, INC., ) ) ) ) Plaintiff, ) ) v. ) ) PREMIER 1 LABS, LLC, ) ) ) ) Defendant. ) ) | CIVIL ACTION FILE NO. _____ |

## COMPLAINT

Plaintiff Concentric Health Alliance, Inc. ("Concentric") hereby files this Complaint against Defendant Premier 1 Labs, LLC, ("Premier") stating as follows:

### NATURE OF THE ACTION

1. Concentric brings this action to recover damages it has suffered as a result of Premier's refusal to pay for certain quantities of COVID tests delivered by Concentric and knowingly ordered, accepted, and retained by Premier pursuant to the terms of the parties' agreement.

2. As of the filing of this complaint, Premier has received nearly $1 million worth of COVID tests from Concentric for which it has not paid.

3. Concentric brings this action to recover the purchase price of those unpaid COVID tests according to the rate set forth in the parties' agreement or, alternatively, to recover the value of the benefit conferred and unjustly retained by Premier.

## PARTIES

4. Concentric is a corporation organized under the laws of the State of Wyoming that is registered to do business in the State of Georgia and maintains its principal office in Fulton County, Georgia.

5. Premier is a limited liability company organized under the laws of the State of Texas with a principal place of business located at 535 S. Nolen Dr., Suite 100A, Southlake, TX 76092. Upon information and belief, Chantal Swart is the sole member of Premier and is a resident and citizen of the State of Florida.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states with complete diversity between them, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Concentric's principal office and headquarters are located in Atlanta, Georgia.

8. Concentric's officers reside in Georgia.

9. Concentric does substantial business in Georgia.

10. Concentric has assets located in Georgia.

11. Both prior to and after negotiating the Sales Agreement at issue, Premier visited Georgia in person to meet with Concentric in connection with the parties' business relationship.

12. Premier sent purchase orders to Concentric in its capacity as a Georgia-based medical supplier.

13. Premier knew that Concentric was based in Georgia and sent representatives to Georgia to conduct business with Concentric.

14. Premier negotiated and entered into a Sales Agreement with Concentric containing a Georgia forum selection clause. In particular, Section 22 of the Parties' Agreement provides:

> **Governing Law and Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the State of Georgia governing such agreements, without regard to conflicts-of-law principles. The sole and exclusive jurisdiction and venue for any litigation arising out of this Agreement shall

be an appropriate federal or state court located in the State of Georgia. The Parties agree not to raise, and waive, any objections or defenses based upon venue or forum non convenes. This provision shall survive expiration or termination of this Agreement.

15. Premier promised to pay money into Georgia for the purchase of medical supplies from Concentric.

16. Accordingly, Premier has transacted business in Georgia and such conduct is the subject matter giving rise to this lawsuit.

17. Premier has also established sufficient minimum contacts in Georgia by purposefully availing itself of the privilege of conducting business in Georgia such that it should reasonably anticipate being haled into court in Georgia.

18. The exercise of jurisdiction over Premier does not otherwise violate traditional notions of fair play and substantial justice.

19. Accordingly, the Court's exercise of jurisdiction in this case is appropriate under Georgia's long-arm statute, O.C.G.A. § 9-10-91, and the Due Process Clause of the Fourteenth Amendment.

20. Venue is appropriate in this Court under 28 U.S.C. § 1391 because Premier is subject to this Court's personal jurisdiction with respect to the civil action in question.

## FACTUAL BACKGROUND

21. Concentric is in the business of procuring and selling healthcare-related resources, services, and manufactured products. Such products include, but are not limited to, medical supplies specific to COVID-19 such as FDA-approved at-home COVID tests ("COVID Tests").

22. In 2022, Concentric and Premier entered into a Sales Agreement for Premier to purchase COVID Tests exclusively from Concentric ("Agreement"). A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

23. Concentric and Premier agreed that the Agreement, as written, was final and binding.

24. Ms. Swart agreed to sign the Agreement on behalf of Premier. Copies of such communications are attached hereto as **Exhibit B**.

25. Over the next several months, Concentric performed its obligations under the Agreement by fulfilling orders placed by Premier for COVID Tests.

26. Premier accepted and retained the COVID Tests and made partial payment to Concentric according to the rate set forth in the Agreement.

27. On December 16, 2022, Concentric invoiced Premier for all outstanding amounts still owed for the COVID Tests and requested payment in full

pursuant to the terms of the Agreement (the "Invoices"). A true and correct copy of those invoices are attached hereto as **Exhibit C**.

28. Section 4 of the Agreement imposes the following payment terms on Premier:

> All invoices must be paid, in full, upon the earlier of (i) thirty (30) days from the date of invoice or (ii) two (2) business days from [Premier's] receipt of third party reimbursement for the [COVID] Tests, whichever comes first. . . . In any event, all invoices shall be due in full within sixty (60) days of the date of the invoice.

29. Premier has failed to pay the Invoices, which are now past due.

30. Concentric has delivered, and Premier has accepted and retained, more than $1 million worth of COVID Tests pursuant to the parties' Agreement.

31. Concentric has demanded payment of the Invoices from Premier on multiple occasions.

32. Premier has failed to make such payment.

33. All past-due Invoices accrue interest under the Agreement at the rate of one and on-half percent (1.5%) per month.

34. After accounting for accrued interest, the total outstanding balance that Premier owes Concentric is $1,026,473.35.

## COUNT I
## Breach of Contract

35. Concentric repeats and incorporates by reference each of the allegations in paragraphs 1 through 34 as if fully set forth herein.

36. The parties entered into the Agreement pursuant to which Concentric would provide COVID Tests to Premier at agreed-upon pricing and at quantities set forth in the purchase orders provided by Premier.

37. The Agreement constitutes a valid, binding, and enforceable contract between Concentric and Premier.

38. Concentric has performed its obligations under the Agreement by fulfilling purchase orders for COVID Tests submitted by Premier.

39. Concentric invoiced Premier for the outstanding amount of all accepted but unpaid COVID Tests on December 16, 2022.

40. Premier has breached the Agreement by failing to pay the Invoices when due.

41. Premier has also breached the implied covenant of good faith and fair dealing, which was inherent in the parties' Agreement.

42. As a direct and proximate result of Premier's breach, Concentric has suffered damages.

43. Accordingly, Concentric is entitled to compensatory damages in the amount of $1,026,473.35, plus interest.

44. Premier has acted in bad faith, been stubbornly litigious, and caused Concentric unnecessary trouble and expense, thereby entitling Concentric to recover its attorneys' fees and expenses in this action pursuant to O.C.G.A. § 13-6-11.

## COUNT II
## Suit on Open Account

45. Concentric repeats and incorporates by reference each of the allegations in paragraphs 1 through 34 as if fully set forth herein

46. The parties negotiated and agreed to be bound by the terms of the Agreement pursuant to which Concentric would provide COVID Tests to Premier at agreed-upon pricing and at quantities set forth in purchase orders to be provided by Premier.

47. Premier assented to the terms of the Agreement when it submitted multiple purchase orders for COVID Tests to Concentric.

48. Concentric has fully performed its obligations to Premier under the Agreement by fulfilling those purchase orders placed by Premier for COVID Tests.

49. Upon accepting the COVID Tests, Premier incurred a duty to pay for the COVID Tests according to the rate and payment terms set forth under the Agreement.

50. Premier made partial payment to Concentric for the COVID Tests accepted and retained according to the rate set forth under the Agreement.

51. Concentric subsequently invoiced Premier for the outstanding amount of all accepted but unpaid COVID Tests on December 16, 2022.

52. Premier has breached the Agreement by failing to pay those Invoices when due.

53. As a direct and proximate result of Premier's breach, Concentric has suffered damages.

54. Accordingly, Concentric is entitled to compensatory damages in the amount of $1,026,473.35, plus interest.

55. Premier has acted in bad faith, been stubbornly litigious, and caused Concentric unnecessary trouble and expense, thereby entitling Concentric to recover its attorneys' fees and expenses in this action pursuant to O.C.G.A. § 13-6-11.

## COUNT III
### Unjust Enrichment
### (In the alternative to Counts I and II)

56. The allegations in paragraphs 1 through 34 are hereby incorporated by reference as if fully set forth herein.

57. Concentric conferred a benefit on Premier by fulfilling the purchase orders and delivering COVID Tests to Premier.

58. Premier knowingly accepted and retained the COVID Tests and had notice that Concentric expected to be paid for them.

59. Premier has been unjustly enriched by its acceptance and retention of the COVID Tests from Concentric for which Concentric has not been paid.

60. As a direct and proximate result of Premier's failure to pay for the COVID Tests, Concentric has been damaged and is entitled to a judgment against Premier equal to the amount of the benefit conferred on Premier.

61. This Court should impose an equitable and constructive trust in favor of Concentric with regard to the COVID Tests that Premier holds and equitably ought to return or pay for, along with any proceeds received from any sale or other transfer of the COVID Tests to third parties.

62. Concentric otherwise lacks an adequate remedy at law.

## PRAYER FOR RELIEF

NOW WHEREFORE, Concentric prays that the Court issue summons as to Premier, and that Concentric be awarded a judgment against Premier for the following relief:

(a) Compensatory damages against Premier in the amount of $1,026,473.35;

(b) Pre-judgment and post-judgment interest to the fullest extent permitted by law;

(c) Court costs;

(d) Attorneys' fees; and

(e) All other relief this Court deems just and proper.

Respectfully submitted this 15th day of May, 2023.

        **MORRIS, MANNING & MARTIN, LLP**

        By: */s/ Stephen M. Vaughn*
        Stephen M. Vaughn
        Georgia Bar No. 219482
        Hillary K. Lukacs
        Georgia Bar No. 141034
        1600 Atlanta Financial Center
        3343 Peachtree Road, N.E.
        Atlanta, Georgia 30326
        Tel.: (404) 233-7000
        Fax: (404) 365-9532

        *Attorneys for Plaintiff Concentric Health Alliance, Inc.*