# Exhibit A

## Sales Agreement

This Sales Agreement (the **"Agreement"**) is entered into as of July 26, 2022 (the **"Effective Date"**), by and between Concentric Health Alliance Inc, with an address of 1100 Peachtree St NE #250 Atlanta GA 30309 (the **"Seller"**) and Premier 1 Labs LLC, with an address of 535 S Nolen Drive Suite 100 Southlake, Texas 76092, (the **"Buyer"**) Each party may be individually referred to herein as a "**Party**", and collectively "the **Parties.**"

WHEREAS, the Seller is the manufacturer/distributor of certain FDA approved, at home COVID tests (the "Tests"); and

WHEREAS, Buyer desires to purchase Tests from the Seller upon the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and other good and valuable consideration, the Parties hereto agree as follows:

1. **Sale of Tests.** The Seller shall sell to the Buyer, and the Buyer shall purchase exclusively from Seller, the Tests. Tests shall be sold in quantities of 8 Tests per unit, unless otherwise agreed by the parties.

2. **Ordering of Tests.** In consideration of the pricing made available to Buyer, beginning as of October 1, 2023, Buyer shall order tests through Seller's established ordering process, as such may be modified from time to time. Upon request of Buyer, Seller agrees to provide Buyer with assistance in ordering Tests.

3. **Delivery and Shipping.** The Seller shall deliver the Tests to the Buyer by drop shipping to the address(es) provided by Buyer for each order. Buyer is solely responsible for providing accurate shipping and delivery information for the Tests, and Seller shall not be responsible for ensuring the accuracy of any such information. The Tests shall be deemed delivered when the Seller ships each order of Tests. The shipping method shall be determined by the Seller and is included in the cost of purchase. All shipping costs associated with any returned Tests shall be the responsibility of Buyer and included in invoices provided to Buyer.

4. **Purchase Price & Payment Terms.** The Buyer agrees to purchase each Test for the price of $30/order of 8 tests. Upon request, Seller shall provide Buyer with periodic invoices of the aggregate amounts owed by Buyer for Tests sold to Buyer under this Agreement. All invoices must be paid, in full, upon the earlier of (i) thirty (30) days from the date of the invoice or (ii) two (2) business days from Buyer's receipt of third party reimbursement for the Tests, whichever comes first. Notwithstanding the foregoing, Buyer's payment obligations may be extended if Buyer has not received reimbursement for the Tests within thirty (30) days of any invoice, provided than any balances not paid within thirty (30) days of an invoice shall be subject to interest at one and one-half percent (1.5%) per month. In any event, all invoices shall be due in full within sixty (60) days of the date of the invoice.

5. **Obligation for Taxes.** The parties acknowledge that the pricing set forth herein does not include any sales, use, excise or other taxes or assessments that may be imposed by any taxing or other governmental authority in connection with the transactions contemplated under this Agreement. Buyer shall be responsible for all such taxes and assessments, provided that Buyer shall not have any liability for any taxes imposed on, or with respect to, the Seller's income, profits or revenue. This Section shall survive expiration or termination of this Agreement.

6. **Inspection of Goods & Rejection.** To the maximum extent permitted by applicable law, the Buyer hereby waives the right to inspect or reject the Tests upon delivery unless the goods are proven to not be the intended product(s).

7. **Risk of Loss.** Risk of loss will be on the Seller until the time when the Seller ships Tests to the Buyer or a third party designated by Buyer (e.g., Buyer's customer).

8. **Title.** Title to the Tests will remain with the Seller until the Seller ships Tests to the Buyer or a third party designated by Buyer (e.g., Buyer's customer).

9. **Excuse for Delay or Failure to Perform.** The Seller shall not be liable to the Buyer for any delay, non-delivery or default of this Agreement due to labor disputes, labor shortages, strikes, transportation shortages, supply chain issues, late deliveries, delay or shortage of materials, fires, accidents, Acts of God, or any other causes outside of the Seller's control. The Seller shall notify the Buyer promptly upon realization that it will not be able to deliver the Tests as intended.

10. **Term**. The term of this Agreement shall commence on the Effective Date and shall continue for a period of one (1) year thereafter (the "Initial Term"), for as the government reimbursement program is extended. Following the Initial Term, this Agreement shall automatically renew for successive terms of one (1) year each (each, a "Renewal Term"), unless either party notifies the other of its intent not to renew at least sixty (60) days prior to the expiration of the Initial Term or the then-current Renewal Term.

11. **Termination.** This Agreement may be terminated by either party if the other party materially breaches this Agreement and fails to cure such breach within thirty (30) days (or ten (10) days if the breach involves Buyer's failure to pay any amounts owed hereunder) of notice thereof from the non-breaching party. Seller may terminate this Agreement at any time upon written notice to the Buyer at least ninety (90) days in advance. After February 28, 2023, Buyer may terminate this Agreement upon written notice to Seller at least ninety (90) days in advance. The Buyer will be responsible for payment of all Tests delivered or shipped up to the date of termination.

12. **Confidential Information.** As used in this Agreement, "Confidential Information" means, subject to the exceptions set forth in Section 14 hereof, any non-public information or data disclosed or otherwise made available for receipt by one party (the "Disclosing Party") to the other party (the "Receiving Party") that (a) is clearly labeled or otherwise identified in writing as confidential, (b) is identified orally as

confidential at the time of disclosure or (c) is understood by a reasonable person to be confidential; provided that reports and/or information related to or regarding a Disclosing Party's intellectual property, including but not limited to trade secrets, patents and patent applications, business and development plans, business methodologies, marketing strategies, technology, specifications, vendors, suppliers, billing records, manufacturers, distributors, financial information, projections, personnel matters, sales estimates, performance results, designs, plans for products or services, concepts, reports, data, know-how, flow charts, databases, intellectual property rights, copyrights, proposed or actual trademarks, trade names, trade dress, service marks, prices, fees, commission structures, the terms of any agreement to which Disclosing Party is a party, discussions, negotiations, or proposals relating to agreements, all notes, analyses, compilations, studies, interpretations, or other materials prepared by Disclosing Party or its representatives, to the extent such materials contain or are based on Confidential Information, and products (including product formulations and test data) or services shall be deemed Confidential Information of the Disclosing Party even if not clearly marked or identified as such.

13. **Exclusions to Confidential Information; Representatives.** Notwithstanding the foregoing, Confidential Information does not include information that: (a) was available to Receiving Party (free of any confidentiality obligation in favor of Disclosing Party known to Receiving Party at the time of disclosure) prior to disclosure of such information by Disclosing Party to Receiving Party; (b) is made available to Receiving Party from a third party not known by Receiving Party (at the time of such availability) to be subject to a confidentiality obligation in favor of Disclosing Party; (c) is made available to third parties by Disclosing Party without restriction on the disclosure of such information; (d) is or becomes available to the public (other than as a result of disclosure by Receiving Party prohibited by this Agreement); or (e) is developed independently by Receiving Party or Receiving Party's Representatives.  As used herein, "Representatives" of the Receiving Party shall mean (i) directors, officers, employees, contractors, consultants, or agents of the Receiving Party; (ii) attorneys, accountants or other professional business advisors of the Receiving Party; and (iii) those entities directly or indirectly owned by the Receiving Party. All Representatives with access to the Confidential Information shall be informed of the confidential nature of the Confidential Information and shall agree to act in accordance within the terms of this Agreement. The Receiving Party shall be responsible for any breach of the terms of this Agreement by it or its Representatives.

14. **Use and Disclosure of Confidential Information.** Receiving Party agrees that, except as otherwise agreed to in writing by the Disclosing Party, Confidential Information received by it from Disclosing Party will be used and disclosed solely for the purpose of performing and exercising Receiving Party's obligations and rights under this Agreement, and will not be used or disclosed for any other purpose whatsoever. Receiving Party will use at least the same degree of care to maintain the confidentiality of the Confidential Information as Receiving Party uses to protect its own Confidential Information, but in no event not less than reasonable care. Notwithstanding the foregoing, the Receiving Party shall be permitted to disclose Confidential Information of the Disclosing Party if required by law, regulation,

court order, subpoena or other legal process, provided that prior to any such disclosure the Receiving Party shall notify the Disclosing Party of any such obligation to disclose so that the Disclosing Party may seek a protective order or other remedy deemed appropriate by the Disclosing Party.

15. **Disclaimer of Warranties.** THE TESTS AND ANY OTHER PRODUCTS OF SELLER ARE SOLD 'AS IS'. THE SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT, COURSE OF DEALING OR COURSE OF PERFORMANCE.  EXCEPT TO THE EXTENT PROHIBITED BY APPLICABLE LAW, SELLER MAKES NO WARRANTY THAT ANY PRODUCTS OR SERVICES PROVIDED HEREUNDER WILL MEET BUYER'S REQUIREMENTS, EXPECTATIONS OR INTENDED PURPOSES OR BE FREE FROM DEFECTS. THIS PROVISION SHALL SURVIVE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

16. **Limitation of Liability.** UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE TO BUYER OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL OR PUNITIVE DAMAGES RESULTING FROM OR ARISING OUT OF THIS AGREEMENT, SUCH AS, BUT NOT LIMITED TO, LOSS OF REVENUE OR ANTICIPATED PROFIT OR LOST BUSINESS, COSTS OF DELAY OR FAILURE OF DELIVERY. THIS PROVISION SHALL SURVIVE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

17. **Severability.** The provisions of this Agreement shall be severable. In the event any provision of this Agreement is deemed invalid or unenforceable, in whole or in part, that part shall be severed from the remainder of the Agreement and all other provisions should continue in full force and effect as valid and enforceable.

18. **Waiver.** The failure by either Party to exercise any right, power, or privilege under the terms of this Agreement will not be construed as a waiver of any subsequent or future exercise of that right, power, or privilege or the exercise of any other right, power, or privilege.

19. **Limited Remedies.** THE BUYER'S SOLE REMEDY FOR ANY AND ALL LOSSES OR DAMAGES RESULTING FROM DEFECTIVE TESTS OR FROM ANY OTHER CAUSE WILL BE LIMITED TO THE PURCHASE PRICE OF THE PARTICULAR PRODUCTS WITH RESPECT TO WHICH LOSSES OR DAMAGES ARE CLAIMED. THIS PROVISION SHALL SURVIVE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

20. **Legal and Binding Agreement.** This Agreement is legal and binding between the Parties as stated above. The Parties each represent and warrant that they have the authority to enter into this Agreement.

21. **Independent Contractor Status.** The parties shall at all times be considered independent contractors of each other and nothing in this Agreement shall create, or be deemed to create, any agency, joint

venture, partnership, employment or other relationship inconsistent with independent parties contracting for the provision of goods and services.

22. **Governing Law and Jurisdiction.** This Agreement will be governed by and construed in accordance with the laws of the State of Georgia governing such agreements, without regard to conflicts-of-law principles. The sole and exclusive jurisdiction and venue for any litigation arising out of this Agreement shall be an appropriate federal or state court located in the State of Georgia. The Parties agree not to raise, and waive, any objections or defenses based upon venue or forum non convenes. This provision shall survive expiration or termination of this Agreement.

23. **Exclusive Vendor.**  Unless otherwise restricted by applicable law, Buyer agrees that it shall use Seller as its exclusive supplier of the Tests and similar products. Buyer agrees that during the term of this Agreement, it shall not engage in activity or conduct the purpose of which is to circumvent Buyer's obligations under this provision.

24. **Entire Agreement.** This Agreement contains the complete and exclusive agreement of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings whether written or oral, express or implied. Except where expressly indicated otherwise, the words "written" or "in writing" shall include, but not be limited to, written or printed documents, in any format now known or later developed, including electronic and facsimile transmissions and computer disks or tapes (whether machine or user readable).

25. **Amendment**.  No amendment or alteration of the terms of this Agreement will be effective unless made in writing and executed by both Parties hereto.

26. **No Third Party Beneficiary**.  This Agreement is intended for the sole benefit of the parties hereto and their respective successors and permitted assigns and, to the maximum extent permitted by applicable law, nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever.

27. **Compliance with Laws; No Referrals.**  Seller and Buyer agree that it is their intent to perform under this Agreement in compliance with all applicable laws and regulations and that each of Seller and Buyer shall take such steps as may be reasonably necessary to ensure compliance with applicable law. Seller and Buyer further agree that any payments made hereunder are not intended to induce or require the referral of patients, clients or customers for either party or to otherwise generate business for a party.

28. **Personal Information**.  Each Seller and Buyer shall comply with applicable laws relating to the privacy and security of personal information including, without limitation, the Health Insurance Portability and Accountability Act of 1996 and all regulations enacted or implemented thereunder.

29. **Assignment.**  Neither party shall assign, transfer or delegate this Agreement or any of its rights and obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld. Any assignment, transfer or delegation made in violation of this provision shall be null and void. Notwithstanding the foregoing, each party shall, without the prior consent of the other party, be entitled to transfer or assign this Agreement in connection with the reorganization, consolidation or merger of such party or in connection with a sale of all or substantially all of such party's assets.

30. **Notice**.  Any notice, consent, or other communication permitted or required under this Agreement shall be in writing and may be delivered by registered or certified mail, return receipt requested, by receipted hand delivery, or by FedEx, UPS or other similar and reliable overnight courier. All notices sent pursuant to the terms of this Section shall be deemed received: (a) if hand delivered, then on the date of delivery; (b) if sent by overnight courier, then on the next business day immediately following the day sent; or (c) if sent by registered or certified mail, then on the earlier of the third business day following the day sent or when actually received.  Each party may change its address for notification purposes by giving the other party written notice of the new address and the date upon which it shall become effective.  Notices required hereunder shall be provided to the parties at their respective addresses set forth below:

If to Seller:

1100 Peachtree St NE
#250
Atlanta GA 30309

If to Buyer:

535 S Nolen Drive
Suite 100
Southlake, Texas 76092

*[Signatures Appear on the Following Page(s)]*

The Parties agree to the terms and conditions set forth above as demonstrated by their signatures as follows:

**Seller: CONCENTRIC HEALTH ALLIANCE INC**

Signed: _____

Name: _____

Date: \_\_\_\_10/1/2022_____

**Buyer: PREMIER 1 LABS INC**

Signed: _____

Name: _____

Date: \_10/1/2022_____