## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____

Bennon L. Prine, Jr.     )
          )
    *Plaintiff,*    )
          )
v.          )  Civil Action No. _____
          )
"Studio Mechanics Local No. 479", )
AKA Stage and Picture Operators )
AFL-CIO Local Union 479"  )
          )
Michael Akins, Individually and )
Professionally     )
          )
J. Doe (Unknown Co-Conspirators) )
          )
    *Defendants.*   )
_____ )

## NOTICE OF REMOVAL

  Pursuant to 28 U.S.C. §§ 1331 and 1446, Defendants Studio Mechanics

Local 479, International Alliance of Theatrical Stage Employees, Moving Picture

Technicians, Artists, and Allied Crafts of the United States and Canada, AFL-CIO

("I.A.T.S.E. Local 479") and Michael Akins (collectively "Defendants") jointly

file this Notice of Removal of this action from the Superior Court of Clayton

County, Georgia, in which it is now pending, to the United States District Court for

the Northern District of Georgia, Atlanta Division, and in support thereof respectfully state as follows:

1.      I.A.T.S.E. Local 479 and its Business Agent Michael Akins have been named as defendants in this action, which has been filed and is presently pending in the Superior Court of Clayton County, Georgia, under the caption, *Bennon L. Prine, Jr. v. Studio Mechanics Local 479, et al*., Civil Action No.2022-CV-02744-9. (Amended Complaint[1] ¶4).

2.      Defendants were served on April 16, 2023 and April 24, 2023; therefore, this Notice of Removal is filed within thirty days of receipt of the Summons and Amended Complaint as required by 28 U.S.C. § 1446(b).  Venue is proper in this district under 28 U.S.C. Section 1441(a) because this district and division embrace the place in which the removed action is pending, Clayton County, Georgia, and the alleged actions took place within this judicial district.  *Id.* at ¶9-10.  As set forth below, this Court has original jurisdiction over the subject matter of this litigation. Therefore, this action is properly removed to this Court pursuant to 28 U.S.C. §1331, 1441 and 1446.

3.      In accordance with 28 U.S.C. §1446(a), Defendants have attached hereto as Exhibit A, a true and correct copy of all process, pleadings and orders served on them in the state court action.

---

[1] Plaintiff's Amended Complaint is found beginning on page 22 of Exhibit "A" attached to the Declaration of Michael Akins filed herewith.

4.      Defendant IATSE Local 479 has offices located in Atlanta, Clayton County, Georgia.  *Id.* at ¶9.  It is an unincorporated association and labor organization as defined by Section 2 (5) of the National Labor Relations Act, 29 U.S.C. Section 152 (5) and subject to the Labor Management Reporting Disclosure Act of 1959 as amended.  (Amended Complaint ¶3).  It represents workers in the motion picture and television industry in the States of Georgia and Alabama. (Amended Complaint ¶ 3, 9 and 23; Declaration of Michael Akins.)

5.      The primary claim made by Plaintiff in his Amended Complaint against Defendants is that Defendant IATSE Local 479 is and has been improperly deducting the 3% working dues from meal penalties paid to him under the Area Standards Agreement.  *Id.* at 42. According to the Amended Complaint, IATSE Local 479 has and is violating the membership contract (Local Union Constitution and Bylaws) by enlarging the definition of "wages" to include "meal penalties". The Plaintiff asserts that the meal penalties payments are liquidated damages and not [gross] wages which can be a basis for the working dues deduction.  (Amended Complaint Paragraphs 40-44).

6.      Based on the assertion that the meal penalty payments are not [gross] wages and it was and is improper for the Union to include these payments in its 3% working dues, Plaintiff in his Amended Complaint alleges a number of claims against the Defendants including breach of contract (IATSE Local 479's

Constitution and Bylaws); violation of the Labor Management Reporting

Disclosure Act (LMRDA) 29 U.S.C. Section 411 (a) (3) (failure to hold a secret

ballot vote before collecting the 3% working dues on meal penalties); theft by

deception; conversion; deprivation of property; and violation of Georgia RICO

law. (Amended Complaint ¶ 63-113).  All of these claims involve the deduction of

working dues from meal penalties.

7.     Defendant IATSE Local 479 is one of the unions signatory to a series

of collective bargaining agreements with employers in the motion picture and

television industry nationwide.  These collective bargaining agreements are

normally three years in duration and have been in existence for the eight or more

years in which Plaintiff has been a member of and employed in the television and

motion picture industry.  *Id.* at ¶30.  These collective bargaining agreements are

and have historically been referred to as the Area Standards Agreement.  *Id.* at ¶30,

31.

8.     The Area Standards Agreements govern and have governed the

wages, hours and working conditions of employees represented by the unions

signatory to these collective bargaining agreements including Defendant IATSE

Local 479.  *Id*. at ¶30.  These Area Standards Agreements have, in most instances,

controlled the wages, hours and working conditions of Plaintiff during the time that

he has worked with and been represented by Defendant IATSE Local 479.  *Id.* at

¶30.  Attached as Exhibit B is a true and correct copy of the current Area Standards Agreement which includes the General Memorandum of Agreement of August 1, 2021 and the 2018-2021 Area Standards Agreement. (Declaration of Michael Akins.)

9.      Article 4 of the Area Standards Agreement establishes detailed rules concerning contractually prescribed meal breaks and meal periods.  Article 4 specifies the earliest and latest times for workers to begin a meal period and also the minimum time employees will have to consume their meals.  (Amended Complaint ¶32-34).  More specifically, Article 4 of the 2018-2021 Area Standards Agreement in part states:

ARTICLE 4 – MEALS

(A) Meal periods shall not be less than one-half (1/2) hour nor more than one (1) hour in length.

(B) The employee's first meal period shall commence within six (6) hours following the time of first call for the day; succeeding meal periods shall commence within six (6) hours after the end of the preceding meal period.  An employee's first meal period shall commence no earlier than two (2) hours after such employee reports for work except that persons called up to two (2) hours earlier than the regular crew call who are provided with a non-deductible hot breakfast and time to sit and eat (within one (1) hour before or after the regular crew call) will have their first deductible meal period due at the same time as a meal is due for the regular crew.

(C) Meal intervals may be extended twelve (12) minutes without penalty when used for completing a camera setup in

progress or one-half hour for wrap if the employee is dismissed within one-half hour.  If the employee is not dismissed within said one-half hour extension, meal penalty shall be computed from the end of the sixth hour following the previous meal.  (Amended Complaint Paragraph 32).

10.     The current version of Article 4 of the CBA is on pages 8-9 of the General Memorandum of Agreement  which is attached to Michael Akins' Declaration.  The above cited language was taken from Plaintiff's Amended Complaint.  As part of the collective bargaining agreements, the employers and unions have specified how employees will be compensated when an employer violates the above cited provision of the Area Standards Agreement which is referred to as meal penalties. The 2018-2021 Area Standards Agreement language dealing with this issue cited in the Complaint is as follows:

## ARTICLE 4 – MEALS

(D)(1) Except as provided in subparagraph (2) below, meal penalty for delayed meals shall be computed as follows:

First Half-hour meal delay or fraction thereof - $7.50

Second half-hour meal delay or fraction thereof - $10.00

Third and each succeeding half-hour meal delay or fraction thereof - $12.50

(2) Meal penalty for delayed meals for employees employed on television motion pictures shooting in a studio shall be computed as follows:

First half-hour meal delay or fraction thereof - $8.50

Second half-hour meal delay or fraction thereof - $11.00

Third and each succeeding half-hour meal delay or fraction thereof - $13.50

(Amended Complaint ¶ 32-34.)

11.     Attached as Exhibit C is a true and correct copy of the IATSE Local 479's Constitution and Bylaws. (Declaration of Michael Akins.)  Article VIII of the Defendant IATSE Local 479's Constitution and Bylaws provides:

ARTICLE VIII: REVENUES

SECTION 1. DUES AND INITIATION FEES

The dues payable by each member, except retired and honorary members, shall be the total of the applicable International Stamp Dues plus twelve dollars ($12.00), plus working dues of three percent (3%) of gross wages earned under an IATSE agreement in the craft and/or geographical jurisdiction of this Local.

(Amended Complaint ¶ 45.)

## **GROUNDS FOR REMOVAL**

12.     There are three grounds upon which this removal is based. The first ground for the removal of this lawsuit to this Court  is Section 301 of the Labor Management Relations Act, 29 U.S.C. §185.  Plaintiff's claims are completely preempted by Section 301.  The second ground for removal of this action is 29 U.S.C. §411(a)(3) and this Court has original jurisdiction over such claims by virtue of 29 U.S.C. §412. This claim appears on the face of the Amended

Complaint.  (Amended Complaint ¶75-79 and 101).  Finally, the third ground is

supplemental jurisdiction.  All of Plaintiff's claims arise out of a common set of

operative facts.

13.     A defendant or defendants may remove a state court action to federal

district court if the district court has original jurisdiction over the action.  28 U.S.C.

§1441 (a) ("[A]ny civil action brought in a state court of which the district courts

of the United States have original jurisdiction may be removed by the defendant to

the district court of the United States. . . .").

14.     Federal district courts have original jurisdiction over lawsuits that

arise under federal law.  28 U.S.C. §1331 ("The district courts have original

jurisdiction of all civil actions arising under the Constitution, laws or treaties of the

United States.")

15.     Under Section 301 of the LMRA, federal district courts have original

jurisdiction over lawsuits alleging a breach of contract between an employer and a

labor organization.  29 U.S.C., §185 (a) ("Suits for violation of contracts between

an employer and a labor organization. . .may be brought in any district court of the

United States. . .").

16.     The United States Supreme Court and the Eleventh Circuit Court of

Appeals have interpreted Section 301 of the LMRA to require "complete

preemption" of state law causes of action that are inextricably intertwined with

consideration of the terms of a labor contract.  *See Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *Bartholomew v. AGL Resources, Inc.*, 361 F. 3d 1333, 1338 (11th Cir. 2004); *Atwater v. National Football League Players Assoc.*, 626 F. 2d 1170, 1187 fn. 8 (11th Cir. 2020).

17.     Preemption under Section 301 encompasses not only state-law contract claims, but state-law tort claims as well. *See Allis-Chalmers Corp.,* 471 U.S. at 271; *Bartholomew* at 361 F. 3d 1338-1342.

18.     More specifically, state law claims that require a court's interpretation of a collective bargaining agreement are preempted.  *See Allis-Chalmers Corp.,* 471 U.S. at 213.  In *Allis-Chalmers* a unionized employee sued his employer alleging a bad faith handling of an insurance claim, a recognized tort under Wisconsin law. *Id.* at 206.  The Supreme Court concluded that the tort claim was preempted by Section 301 "[b]ecause the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith [and] any attempt to assess liability" would inevitably involve "contract interpretation."  *Id.* at 218.

19.     Under well established Eleventh Circuit law, a state law claim will be preempted by Section 301 of the LMRA if (a) the claim arises from a CBA or (b) "the resolution of [the]state-law claim depends upon the meaning of a collective bargaining agreement." *Atwater v. National Football League Players Association*,

626 F. 3d 1170, 1174 (11t Cir.  2010); *Towns v. Directors Guild of America, Inc.*,

2020 WL 40001131 (N.D. GA 2020).  As the Eleventh Circuit explained in *Towns*

*v. Directors Guild of America, Inc.*, 2022 WL169017 (11th Cir. 2022) slip at 4:

> To determine whether Section 301 preempts a state law claim, we ask
> "whether the resolution of this state-law claim depends upon the
> meaning of a collective-bargaining agreement."  *Id.* (Internal
> quotation marks omitted).  If the state claim is dependent on the
> meaning of the collective-bargaining agreement, then application of
> state law principles is preempted and federal labor law principles must
> be applied to resolve the dispute.  *Id.* at 1176-77.

20.     In Count 1 of the Amended Complaint, the Plaintiff asserts a breach

of contract claim against Defendants.  In particular, he alleges that Local 479 has

and is violating the membership contract (Local Union Constitution and Bylaws)

by enlarging the definition of "wages" to include "meal penalties".  (*See* Paragraph

40 of the Amended Complaint).  Plaintiff further alleges in his Amended

Complaint  "[m]eal penalties are not wages and no matter how early, how late, or

how many hours an employee works, such work will not trigger the meal penalty

clause of any CBA."  *Id.*¶ 44.  Plaintiff's breach of contract claim is tied directly to

the meaning and interpretation of the Area Standards Agreement which is the

collective bargaining agreement which governs Plaintiff's employment with

employers in the movie industry.  The CBA is the sole source for the meal

penalties.  Plaintiff in his Amended Complaint is directly relying on the language

of the CBA in an attempt to support his claims and is requesting this Court to

interpret the CBA, specifically Article 4, in resolving this dispute.  Therefore, Plaintiff is invoking the Court's 301 jurisdiction over this dispute and his claims are preempted under Section 301.

21.    The elements of a right to recover for a breach of contract under Georgia law are "the breach and resultant damages to the party who has the right to complain about the contract being broken."  *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278 (1996).  To determine whether the Defendants breached the Union Constitution and Bylaws by collecting working dues on meal penalties, the Court will be required and called upon to consider and interpret the terms of the collective bargaining agreement (Area Standards Agreement), as Plaintiff does in his Amended Complaint, in order to determine if the meal penalties are part of the worker's gross wages.  The Area Standards Agreement is the sole source cited in the Amended Complaint for the meal breaks, sets all of the terms and conditions under which the meal penalties are paid and the specific remedy that is given to the workers when the employer fails to honor the workers' meal breaks.  Therefore, the Plaintiff's state-law breach of contract claims are substantially dependent upon an analysis of the collective bargaining agreement, specifically Article 4 of the CBA, and are preempted under Section 301 of the LMRA.  *See Bartholomew v. AGL Resources*, 361 F. 3d 1333,1338-1339 (11th Cir.2004).  Accordingly, removal

of this claim to federal court is appropriate and the breach of contract claim is 301 preempted.

22.     In Count 2 of the Amended Complaint, Plaintiff alleges that Defendant Akins and/or Local 479, by implementing, and/or continuing to allow, meal penalty payments assessments, without a vote by secret ballot of the membership in good standing, has violated the provisions of Title I of the LMRDA, 28 U.S.C. §401(a)(3).  (*See* ¶ 101 of the Amended Complaint.) Numerous courts have held that actions brought under Title I of LMRDA 29 U.S.C. §411 may be removed to federal court and there is original jurisdiction for such actions under 29 USC §412.  *See Harrell v.* Mundy, 1977 WL 1659 (E.D. Mich. 1977); *Berg v. Watson*, 417 F. Supp. 806 fn. 1 (SDNY 1976); *Denov v. Chicago Federation of Musicians Local 10-208,* 703 F. 2d 1034, (7th Cir. 1983). These types of claims fall under Title I of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §411 *et. seq.* and the Eleventh Circuit Court of Appeals has specifically held that LMRDA Title I claims may be removed from state to federal district court.  Federal district courts have original jurisdiction over these claims.  *Pruitt v. Carpenters Local No. 225*, 893 F. 2d. 1216, 1218 (11th Cir. 1990). Therefore, this Court has original jurisdiction over the Count 2 claims based on 29 U.S.C. §412.

23.     In Count 3 of the Amended Complaint, Plaintiff alleges that by

stating, publishing documents, and/or otherwise holding out to membership that

meal penalty payments are wages and exploiting this belief, the Defendants have

extracted monies from the members and violated OCGA 16-8-3, theft by

deception.  (Amended Complaint ¶103).  The Georgia courts have specifically held

that the violation of a criminal law or statute does not automatically give rise to a

civil cause of action and OCGA Section 16-8-3 does not provide any private cause

of action.  *See Oswald v. American National Can Co.*, 194 Ga. App. 882 (1990);

*Stroman v. Bunt of America Corp.,* 852 F. Supp. 1366, 1380 (N.D. GA 2012).

While the Georgia courts have consistently dismissed actions brought under

OCGA §16-8-3, if there is a viable claim for theft by conversion or deception, it

would be necessary for the Plaintiff to prove that the meal break penalties and/or

payments are not "gross wages" and it was and is in violation of the Union

Constitution to deduct the working dues from these payments.  OCGA §16-8-3

requires proof that someone obtained the property of another by intentionally

creating a false impression as to an existing fact or past event.  *Z-Space Inc. v.*

*Datannas CNN Center,* 349 Ga. App. 248 (2019).  Therefore, this claim and the

Section 301 claim (contract claim) referenced above are both derived from a

common set of operative facts and relief under both claims are dependent on proof

that substantially relies on the Area Standards Agreement dealing with meal

penalties.  The state law claim of theft by deception is preempted under Section 301 of the LMRA and is removed on that ground.  Additionally, since these claims "arise from a common nucleus of operative facts" to the preempted contract breach claim, this Court also has supplemental jurisdiction over Plaintiff's claims of theft by deception.  *See* 28 U.S.C. §1367.

24.     In Count 4 of the Amended Complaint, Plaintiff asserts that by directing payroll processors to withhold meal penalty assessments and turn these funds over to the Defendants, when the Defendants did not have a lawful right to these monies and the Defendants have exercised sole dominion over these monies, Defendants have violated OCGA §51-10-1 – Right of action for deprivation of possession of property.  Under Georgia law, the tort of deprivation of possession of property under OCGA Section 51-10-1 involves the unauthorized assumption and exercise of right of ownership over personal property of another, contrary to the owner's rights.  *See Edible IP, LLC v. Google LLC*, 358 Ga. App. 218, 222 (2021). Again, for Plaintiff to prove this claim, he must prove that the meal penalties are not "gross wages" and it was improper to deduct or checkoff money associated with these penalties as part of the working dues.  Since the Area Standards Agreement established these meal breaks and penalties, specifies the circumstances in which the penalties are paid out, and how much is to be paid to workers when they are denied timely meals breaks, the Area Standards Agreement must be

examined and interpreted by the Court to determine if the meal penalties are "gross wages" and can properly be subjected to the working dues assessments.  Therefore, Plaintiff's claims in Count 4 of the Amended Complaint under OCGA §51-10-1 are preempted under Section 301 and this Court also has supplemental jurisdiction over these claims under 28 U.S.C. §1367 because these claims arise from a common nucleus of operative facts as Plaintiff's preempted breach of contract claims and other claims.

25.    In Count 5, Plaintiff alleges that by not refunding meal penalty payments when they did not have a lawful right to these funds and by exercising sole dominion over these monies Defendants violated and committed the tort of conversion within the meaning of OCGA §51-10-1.  Under Georgia law, the tort of conversion as set forth in OCGA §51-10-1 involves the unauthorized assumption and exercise of right of ownership over the monies of another, contrary to the owner's rights.  *See Edible IP, LLC v. Google LLC*, 358 Ga. App. 218, 222 (2021). To prove this tort, Plaintiff must establish that the meal penalties are not "gross wages" and it was improper to deduct 3% from these monies as part of the working dues.  Since the collective bargaining agreement established and controls all aspect of the meal penalties payments, any resolution of the propriety of including these payments in the working dues assessment will require an analysis of the applicable provisions of the Area Standards Agreement.  Accordingly, Section 301

preemption applies to this claim, and since this claim arises under the same nucleus of operative facts as the breach of contract claim and the other preempted claims, this Court has supplemental jurisdiction under 28 U.S.C. §1367 over the Count 5 claims.

26.     Count 6 of the Complaint alleges another claim based on OCGA 51-10-1 and Plaintiff alleges that Defendant Michael Akins and Local 479 have raised assessments without member involvement and they have converted the voting rights of the members to their own.  Plaintiff also alleges that Defendants have exercised sole dominion over the monies in violation of OCGA 51-10-1.  This claim is clearly covered by Count 2 of the Amended Complaint and any right of action under 29 U.S. C. §411 (a)(3) preempts any state claim.  Further, if any such claim exists, it involves the same operative facts as the LMRDA claim set forth in Count 2 of the Amended Complaint and this Court has supplemental jurisdiction over such claims under 29 U.S.C. §411 (a)(3) and/or 29 U.S.C. §412. Additionally, because the core issue in all of these claims is whether the meal penalties can be considered gross wages.  These claims are also preempted under Section 301.

27.     Count 7 of the Amended Complaint alleges a RICO claim under OCGA §16-14-1 et seq.  Basically, the Plaintiff alleges that Defendants have engaged in and/or are engaging in a criminal enterprise in which they are extorting

money from the Union members by unlawfully collecting the 3% working dues

assessment from the meal break penalties.  (*See* Amended Complaint ¶106.)  The

Georgia law is clear that to make out a claim of a RICO violation under OCGA

based on the facts that Plaintiff has alleged in Court 7 of his Amended Complaint

he must prove "theft by taking".  *See Edible IP, LLC v. Google, LLC*, 358 Ga. App.

218 (2021).  To prove "theft" in the present situation Plaintiff must establish that

the meal penalties payments were and are not part of "gross wages".  The Area

Standards Agreement must be analyzed and examined in order to prove this

assertion because the Area Standards Agreement governs all aspects of these

payments and is the source from which these payments or penalties arose.

Therefore, Plaintiff's Georgia RICO claim is 301 preempted and this Court has

supplemental jurisdiction over this claim because it arises out of the same nucleus

of operative facts as Plaintiff's breach of contract claim which is preempted.

      28.     Plaintiff has also sued Defendant Union Business Agent Michael

Akins individually and in his capacity as Union Business Agent.  (*See* Caption to

Complaint).  As in the case of Defendant IATSE Local 479, each of these claims

against Defendant Akins centers around Plaintiff's assertion that meal penalties are

not "[gross] wages" and are or should not be subject to the 3% working dues.

(Amended Complaint ¶40).  Since the source of the meal breaks and the remedies

associated with employers not honoring meal breaks are governed by the Area

Standards Agreement, any resolution of Plaintiff's assertion that meal penalties are not part of gross wages and his claims against this Defendant will result in the Court interpreting Article 4 of the CBA. Therefore, all of these claims against Business Agent Akins are completely preempted under Section 301 and this Court has original jurisdiction over them. *Towns, supra*. at slip 4*; Atwater,* supra at 1176*, Bartholomew, supra* at 1338, 1343.

29. 28 U.S.C. §1367 also provides that district courts "shall have supplemental jurisdiction over all claims that are so related to claims in the action with [the original jurisdiction of the district court] that they form part of the same case or controversy under Article III of the United States Constitution. Here, all of Plaintiff's claims arise out of the same set of operative facts and the claims asserted against Defendant Akins are basically the same as are against Defendant IATSE Local 479. In ¶63 of the Amended Complaint, Plaintiff alleges that "Counts 2 through 7 share a common set of facts". Therefore, removal is also appropriate as to all of the claims brought against Defendant Akins based on the pendant or supplemental jurisdiction of this Court. The courts have specifically held that labor cases removed to federal court are subject to 28 U.S.C. §1367 and pendant claims are properly removable. *See Jackson v. Southern California Gas Co.*, 881 F. 2d 638, 641-642 (9th Cir.1989) (district court had

jurisdiction on removal to address state claims which could have been brought originally in district court as pendant to claim preempted by Section 301). Additionally, Plaintiff's claims asserted against Defendant Akins involving 29 U.S.C. §411 (a)(3) and the tort claim associated therewith in Count 6 of the Amended Complaint arise out of the same set of operative facts and are properly removable under 28 U.S.C. §1367 and 29 U.S.C. §412. *See* also *Baker v. Farmers Electric Coop*, 34 F. 2nd 274, 283 (5th Cir. 1994).

30. Accordingly, this Court has original jurisdiction over Plaintiff's Complaint against Defendants pursuant to 29 U.S.C., §185, 28 U.S.C. §1331, 1441 and 1446, and 29 U.S.C. §412.

31. As required by 28 U.S.C. § 1446(d), Defendants have served a copy of this Notice of Removal on Plaintiff and will promptly file a copy of this Notice of Removal in the Superior Court of Clayton County, Georgia.

WHEREFORE, Defendants I.A.T.S.E. Local 479 and Michael Akins respectfully submit their Notice of Removal to this Court so that it may exercise jurisdiction over this action.

Respectfully submitted this 15th day of May, 2023, by:

By:     s/ James D. Fagan Jr.
          Georgia Bar No. 253950

Michael B. Schoenfeld
Georgia Bar No. 86372
Stanford Fagan LLC
2540 Lakewood Avenue SW
Atlanta, GA  30315
(404) 897-1000
jfagan@sfglawyers.com
michaels@sfglawyers.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2023, I submitted the foregoing **NOTICE OF REMOVAL** to the Clerk of Court using the CM/ECF system and I served a copy on Plaintiff by U.S. Mail, postage prepaid, at the following address:

Pennon L. Prine Jr.
P.O. Box 93
Griffin, GA  30224

By:   <u>s/ James D. Fagan Jr.</u>