# EXHIBIT A

☐ **Superior Court**     ☐ **Magistrate Court**

**CLAYTON COUNTY, GEORGIA**

CASE NUMBER _2022V03744_

_Bennon Drive_

Plaintiff ☐

VS.

_Michael Akins_

Defendant ☐

_4266 International Pkwy_
_#100_

Address ☐

_Atlanta GA 30354_

Attorney or Plaintiff's Name & Address

Garnishee ☐

Address ☐

Designate Party to be served by placing a check in box above.

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant ........................................................................................**personally with a copy** of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant ...........................................................................................**by leaving** a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of ......................................................................................**described as follows**

age, about .............. years; weight, about .............. pounds; height, about .............. feet and ........................ inches, domiciled at the residence of defendant, at .................... A.M. - P.M.

**CORPORATION** ☐

Served the (defendant, Garnishee) ...........................................................................................**a corporation**

by leaving a copy of the within action and summons with ..................................................................................... in charge of the office and place of doing business of said Corporation in this County, at ............ A.M. - P.M.

**TACK & MAIL** ☐

I have this day served the above affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class, in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant ..................................................................................................... not to be found in the jurisdiction of this Court.

The defendant is required to answer no later than ............................................................................. , 20............ , at the place stated in the summons.

This ................. day of ...................................... , 20........

........................................................

WHITE: Clerk     CANARY: Plaintiff     PINK: Defendant     **DEPUTY SHERIFF, CLAYTON COUNTY.**

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

FILED
CLAYTON COUNTY, GA
2023 APR 14  PM 4: 43

CHANAE O. CLEMONS
CLERK SUPERIOR COURT

| | |
|---|---|
| Bennon L. Prine, Jr. | |
| Plaintiff | Civil Action Number |
| | |
| Vs. | 2022-CV-02744-9 |
| | |
| "Studio Mechanics Local No. 479", AKA "Stage and Picture Operators AFL-CIO Local Union 479" | |
| | |
| Michael Akins (Individually and Professionally) | |
| | |
| J. Doe (Unknown Co-Conspirators) Defendants | |

## FOURTH MOTION FOR LEAVE TO FILE COMPLAINT

COMES NOW, the Plaintiff, and moves this court for leave to file a bill of complaint against the named defendants, and in support shows the court as follows:

History of this Motion

Plaintiff first filed this motion in accordance with the US Congress preference for considering this matter – which is that it be considered ex parte. This court declined exparte consideration and ordered Defendants be served before consideration.

In the second filing, Plaintiff served Defendants using certified mail and email. The court found that certified mail did not satisfy the service requirements.

In the third filing, Plaintiff paid and provided a correct address to the Clayton County Sherriff's Office for personal service on Defendants. On the date of consideration, the Sherriff's office had not made any attempt at service – ostensibly due to a lack of manpower which has led to a backlog of service requests – and through no fault of Plaintiff. In a motion for reconsideration, Plaintiff pointed to the record and the law that the eventual service would relate back to the filing

date.   The court found that service requirements had not been met and did not provide any explanation as to why this service was deficient.

Plaintiff has always tried to meet every expectation of him by any tribunal – and this tribunal is no exception.   All that Plaintiff has ever asked is that if he fails to meet expectations, that he be made aware of where he has failed and instructions on how to correct it.   To date, this court has not provided any guidance.

If this court denies this motion for any reason, Plaintiff respectfully requests that the court provide facts and conclusions of law.   Citing *Payson v. Payson*, 552 S.E.2d 839, 274 Ga. 231 (2001), "… findings of fact and conclusions of law are instructive to the parties (*Hopkins v. Hudgins & Co.,* 218 Ga.App. 508(1)(d), 462 S.E.2d 393 (1995)), and enable them "to complain of and appeal from the judgment rendered." *Brown v. Brown*, 237 Ga. 201, 202, 227 S.E.2d 360 (1976).

**Motion**

Plaintiff has "good cause" for filing a complaint against the named defendants as shown herein.

Plaintiff's attached affidavit, titled, "Affidavit in Support of Ex parte Motion for Leave to File Complaint," is included here by reference as if fully recited here.   The proposed complaint is also included here by reference as if fully recited here.

This Motion for Leave to File Complaint is authorized by 29 USC 501(b)[1];   Jurisdiction to hear this motion is proper "in any State court of competent jurisdiction" (29 USC 501(b)).   The proposed complaint contains questions of both state of Georgia and federal law claims.

This court is being asked to hear this motion and the federal law claims under the theory of "concurrent jurisdiction;" which is to say that this court is being asked to hear this motion as a

---

[1] This is part of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA); 29 USC Labor. The heart of the LMRDA is Title I, which is fittingly called the *"Bill of Rights of Members of Labor Organizations."* This law protects and guarantees the rights of labor union members to sue their labor union.  Before filing suit however, a plaintiff must file a motion with a court showing they have good cause to file said suit.  This motion satisfies this requirement.  A lawsuit that contains these federal causes of action cannot be maintained until this procedure is complete.

Northern District of Georgia federal court would, which includes applying the appropriate federal authority and procedures to the facts, and then issue an appropriate order. Citing *Yellow Freight System, Inc. v. Donnelly*, 494 US 820 (1990), in *Collins v. Dept. of Transp.*, 429 SE 2d 707 (Ga. Ct. of App. 1993) the court found:

> "Under our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' [Cits.] To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. [Cit.]" Id. at 823."

Thus, this court has the inherent authority to decide this federal question.

Neither congress nor the US Supreme court has unified the definition and requirements of what "Good Cause" means. The most commonly accepted authority is *Horner v. Ferron*, 362 F. 2d 224 (9th Cir. 1966). The 11th Circuit adopted *Horner's* reasoning in *Erkins v. Bryan*, 663 F. 2d 1048 (11th Cir 1981).

Plaintiff has met the burden of showing "Good Cause" and has laid this out in exhausting detail in his attached affidavit that shows, among other things: a) Plaintiff has standing, as evidenced by being a member of Local 479, and was in good-standing in the union on the date of filing the proposed complaint; b) The union was notified of basis for concerns and this motion includes a response letter showing that no resolution was possible using internal procedures; 3) The proposed complaint alleges violation of federal and state law and includes allegations to support them.

Per *Erkin, supra,* a defendant can only challenge "good cause" based on issues such as plaintiff failing to follow the LMRDA's procedures or estoppel, and not based on disputing the proposed complaint's allegations. The *Erkin* court emphasized that the proposed complaint itself may not be attacked until after a good cause motion has been granted and the case filed and served on defendants – which is to say that any attack on the complaint itself must wait and be done through summary judgment procedures.

Plaintiff has "good cause" for filing an action against the named defendants as shown herein.

WHEREFORE THEN, Plaintiff respectfully requests that this motion be granted.

This the 14th day of April, 2023.

FILED
CLAYTON COUNTY, GA

2023 APR 14  PM 4: 43

CHANAE G. CLEMONS
CLERK SUPERIOR COURT

Respectfully Submitted,

Bennon L. Prine, Jr.
PO Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net

2022CV02744-89

EFILED
CLAYTON COUNTY, GA
7/28/2022 2:31 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## AFFIDAVIT IN SUPPORT OF EX PARTE MOTION FOR LEAVE TO FILE COMPLAINT

UNDER OATH, Bennon L Prine, Jr., resident of Griffin, County of Spalding, State of Georgia and who makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his knowledge:

### Overview of Case

The case discussed here is a union member suing a labor union. This union, by and through its business representative, Michael Akins, has intentionally and improperly enlarged the meaning of a word (wages) in the constitution and bylaws (contract) for the purpose of increasing assessment income. I am coming before the court, asking it to interpret this contract in accordance with Georgia law and issue such orders as needed to bring this union in compliance with applicable law.

### Reasons for seeking exparte leave of court

I want to file a lawsuit in Clayton County, GA Superior Court. In researching the laws applicable to my case and the predicted response of the defendants, several issues and procedures are not clear - in that there is no on-point precedent in either Georgia or the 11th Circuit federal court system to guide either me or this court. What precedent is available in other federal circuits in several situations conflict and there is no pending case before the US Supreme Court to resolve these conflicts of law. So what I am attempting to do is identify any procedure, that might be adverse to my position if not complied with, and comply with it out of an abundance of caution. Doing this should benefit defendants by having fewer areas to attack, me by having fewer motions to defend and this court by having fewer motions/ arguments to resolve. This document is intended to give the court deeper insight into this matter.

There is absolutely nothing in either Georgia law or precedent that requires a plaintiff to a contract dispute to request leave of the court to file a complaint. However, when a federal law is listed in support, or a claim of violation of a federal law is attached to a state complaint, this leave might be required.

Page **1** of **9**

Nothing in the complaint gives jurisdiction to the National Labor Relations Board.

There are several federal laws at issue in the proposed case and at least 3 different federal laws that bring intricacy to this lawsuit. All are found under Title 29. The first is

SUBCHAPTER VI—SAFEGUARDS FOR
LABOR ORGANIZATIONS
§ 501. Fiduciary responsibility of officers of labor Organizations
(a) Duties of officers; exculpatory provisions and resolutions void
The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

A plain reading of the above paragraph suggests that this is not applicable to the submitted complaint. However, some federal court circuits[1] have ruled that this paragraph covers every

---

[1] Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963) ; several other circuits have found this holding persuasive – the 11th Circuit is not one of them.

breach of fiduciary duty by a union officer. If the conflicts in the different federal circuits were resolved to find this interpretation is the proper one, then the next paragraph is applicable and this leave of court is required.

**(b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses**

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown[2], which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

**Defendants are guilty of Criminal Conduct**

When most investigators, attorneys and judicial officers first look at a complaint, the first thing they usually do is - "peel the onion" – strip back every layer of the matter until its core issue is laid bare.

The core issue here, and what is laid out in the complaint, is a criminal violation of "The Hobbs Act of 1946." This case is a reincarnation of a well-worn theme: take money from labor union

---

[2] "Good cause shown," is understood to mean "not frivolous."

members - where no legitimate claim to such money exists - by means of threat of economic harm.

Under "The Hobbs Act of 1946," 18 U.S.C. § 1951[3]

Section 1951 - Interference with commerce by threats or violence

**(a)** Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

**(b)** As used in this section **(2)** The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. **(3)** The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

Thus, the 2 elements to a Hobbs Act extortion conviction are: 1) Interference with commerce and 2) extortion.  In this matter, (1) state borders and distance aside, for all practical purposes, Georgia is part of the back yard of Hollywood, California and New York – and the business of making movies and television shows does affect interstate commerce.  While each payroll company usually maintains an office in Georgia, pay is mostly calculated in California or New York, and the actual checks are then printed and mailed from a second state, which itself is drawn on a bank from a third state.  Most of the yearly form W2's show our employer to be located in California or New York.  The actions of defendants interfere with the process of Local

---

[3] Current through P.L. 117-148 (published on www.congress.gov on 06/16/2022)

479 members receiving all pay owed; (2) Defendants request money they are not entitled to (meal penalty payments) be paid to them, and should any member refuse to voluntarily pay defendants, they are placed on a bad standing list and eventually expelled from the union – destroying many opportunities for employment.

Simply stated, this is an illegal "pay to play" scheme. Either members pay defendants money not owed to them, or they might not work.

## Civil Case

This criminal matter[4] is being restated so that it can be prosecuted as a civil matter. Restated as a civil complaint, at its core this is a contract dispute and every other claim is derivative of this state-law claim.

## Actions taken prior to filing this complaint

I received a statement from Local 479 (via email), stating that I owed a sum of money (Plaintiff 0001); this document did not, however, specify what the money was owed for. I made a number of phone calls to office personnel, none of which had an explanation for what the charge was for. Trying a number of different calculations, what best fit was that I was being assessed for "meal penalties." I then sent a letter (via email) asking for a formal reply stating specifically what they claimed I owed money for (Plaintiff 0002). No response was ever received.

Believing this was a mistake; I next requested and attended a meeting with the union Business Representative, Michael Akins. During this meeting he confirmed that this charge was an assessment for meal penalties; after which I told him that I believed that this practice was illegal and gave him my reasons for concluding this – and requested that the union stop these assessments.

Also in attendance was the then Secretary-Treasurer, Frank Hatcher. Hatcher asked if this matter could result in litigation; and I stated that if this practice continued, then yes, litigation can be expected. He then demanded that the meeting be concluded – and it was.

---

[4] This case has neither been presented to, nor reviewed by any prosecutor.

**Formal response to meeting**

Akins followed up with a letter attached to an email (Plaintiff 0004). According to the letter, Akins discussed the matter with Hatcher and "our attorney Bob Giolito[5];" and then responded with Gioloti's opinion.

This letter does tacitly admit all factual allegations in my complaint. This letter also shows the framework of defendants' defense. This can be seen by the statement, "it is the <u>Local's interpretation</u> of its own constitution that governs the terms and requirements of Local membership."

With nearly a century of labor union history to look back on, courts have established policies on resolving labor union disputes. One such policy is for courts look to see if a union's interpretation of its own constitution is "reasonable." What is being referred to here is judicially created "policies" on adjudicating union cases. This judicial policy has, to my knowledge, never been codified at either a federal or state level. Defendants appear to want to use judicially created *policy* as a tool of defense. What defendants are suggesting here is that judicial policy supersedes both state and federal statutes and regulations. If defendants' interpretation is found to be correct, then a union can, with judicial agreement, waive compliance with any number of distasteful laws by merely having a union leader "interpret" their constitution and bylaws in such a way as to relieve them of compliance requirements. I know of no law, code or holding that would allow a court policy to create and/ or diminish substantive rights as defendants seem to suggest. To do so would create a second and superior legislative branch and a violation of both federal and state constitution's separation of power provisions. The state of New York court system is one that does have a large library of precedent in these matters, and if found persuasive in this court, this court would find that defendants are cherry-picking policies and misstating them. From <u>MATTER OF LASONDE v. Seabrook</u>, 89 AD 3d 132 - NY: Appellate Div., 1st Dept. 2011:

---

[5] According to required union filings with the Department of Labor, Local 479 has paid Giolito for "Legal Services" in each year of the last 10 years as an independent contractor (10 years is the maximum searchable). According to the Georgia Bar Association license verification site, Robert S Gioloti is listed as "INACTIVE IN GOOD STANDING." (Plaintiff 0005) According to the GA Bar Association, in a telephone call, Gioloti's law license has been inactive since 2011. While Giolito was formerly licensed to practice law in Georgia, he is NOT authorized to practice law in Georgia currently. A wider search does show that he has an active law license in the state of California.

Generally, a court considering the validity of actions taken by a union official must determine whether said actions are authorized under the union's constitution or bylaws (*Allen, 109 Misc 2d at 184*). In so doing, the court must assess the union official's claim that his or her actions are authorized under the constitution or bylaws by (1) independently reviewing the constitution or bylaws "in accordance with the general rules of construction appertaining to contracts" and (2) determining whether the union official's interpretation is a reasonable interpretation of the constitution or bylaws (*id.*).[9]

As the court can see, unions do not get to pick and choose what laws apply to them. If the determination of this case were to be decided by these standards however, the court need only answer a single question: "Is violating statutory law a reasonable act of a labor union official?"

However, this defense is short-sighted because the inquiry does not end here. Labor unions are NOT autocratic institutions; so unless a coronation is held and Akins is dubbed, "King Mike," Akins must follow federal law, state law, and the will of the members as spelled out in the constitution and bylaws. This inquiry does not turn on the opinion of Akins; what matters here is what the rank-and-file membership decides and authorizes in accordance with the following statute:

**TITLE I—BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS**

**Bill of Rights**
(29 U.S.C. 411)
SEC. 101. (a)

(3) DUES, INITIATION FEES, AND ASSESSMENTS.—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot;

NO vote authorizing assessments of Meal Penalties has ever been held.  Until such time as the rank-and-file membership authorizes an increase of assessments, to include meal penalties, meal penalties payments may not be assessed.

## SUMMATION

As the court can see, there are plenty of possible directions for this case to take.  Defendant's likely legal strategy though is predictable: deny and delay – and then look for a mistake on my part and seek a technical victory.  A number of legal detours are expected before the merits of the case are addressed.

After all detours are resolved, what will be left is as follows:

The US Supreme Court ruled that a union's constitution and bylaws is a ""contract between member and union and that "The courts' role is but to enforce the contract.""[6]

The contract at issue here was created in Georgia; between a recognized Georgia entity and its members, who are both Georgia residents; for the benefit of this Georgia entity and Georgia residents; where both are subject to Georgia laws.  The interpretation of this contract is thus subject to the laws of the state of Georgia.

The issues complained of were done by an individual and an organization that has its principal place of business for the last 8 years within the physical boundaries of Clayton County; and the actions complained of were performed and/ or orchestrated out this Clayton County Office.

---

[6] NLRB v. Allis-Chalmers Mfg. Co., at 182, 388 US 175 - Supreme Court 1967

2022CV02744-09

This court will then be tasked with applying Georgia law to a Georgia contract, and issue orders consistent with this application.

I am now asking this court to grant this motion and allow the case to move forward.

Further, Affiant Sayeth Not.

WITNESS my signature, this the 2.7 day of July, 2022.

_____
Signature of Affiant

Sworn and subscribed before me this 27ᵗʰ day of July, 2022.

_____
Notary Public                          Seal

TIFFANY HOLLIS
Notary Public - State of Georgia
Spalding County
My Commission Expires May 18, 2026

Page 9 of 9



**I.A.T.S.E. Local 479**
4220 International Parkway
Atlanta, GA 30354
Phone: (404) 361-5676
Fax: (404) 361-5677

Date : 7/26/2017
Invoice # : 479
**Total Invoice Balance :** $ 
**Total Due Now :** $

# INVOICE

Bill To:

Bennon Prine
P.O. Box 93
Griffin, GA, 30224

| Chg Date | Pay By | Type | Description | Amount | Amt Paid | Amt Due |
|----------|--------|------|-------------|--------|----------|---------|
| 7/26/2017 | 8/25/2017 | Assessment | Wonder View FKA Stranger Things, S2 Audit | $ | | $ |

**Total Due:** $ 

To pay by credit card, please fill out form below.
Please make checks payable to: **I.A.T.S.E. 479**

*Please cut along this line and return LOWER portion with your payment.*

-----------------------------------------------------------------------------

| Member Name | Invoice # | Invoice Date | Amt Due |
|-------------|-----------|--------------|---------|
| **Bennon Prine** | **479-00084157** | **7/26/17** | $ |

**Credit Card: AMEX DISCOVER MASTERCARD VISA**

Name on Credit Card: _____

Credit Card Number: _____

Exp. Date: _____  CSC Security Code:_____

*Remit payment to:*
*I.A.T.S.E. Local 479*
*4220 International Parkway*
*Atlanta, GA 30354*

Billing Zip Code:_____

2022CV02744-09

**Bennon L. Prine, Jr.**
Post Office Box 93
Griffin, Georgia 30224
678-995-5414

22 August 2017

I.A.T.S.E. Local 479
Attn. Billing Department
4220 International Parkway
Atlanta, GA 30354

Ref:  Claim for additional assessment fees due to work performed for "Cranetown Media LLC" (#4093) and payroll employer "Cast and Crew" on production series "STRANGER THINGS."

**Ladies and Gentlemen:**

I have audited my pay records from this production and all owed assessments appear to have been listed, calculated correctly and presumably sent to Local 479 – NO ADDITIONAL ASSESSMENTS ARE OWED BY ME TO LOCAL 479 for representation on this production.

I wonder however, is Local 479 attempting to collect an assessment on meal penalties?

This is a formal demand for strict proof of insufficient payroll deductions for union dues assessments for the show "Stranger Things" Season 2 or in the alternative that any accounting records be updated to reflect that no such fees are owed.

**Facts:**

1)  I received six paychecks from work performed on this show and identified as:

| Check Number | Gross Wages | Union Dues Withheld | Attachment Number |
|---|---|---|---|
| | | | |
| 75343872 | | | Member 3 |
| 75404330 | | | Member 4 |
| 75442682 | | | Member 5 |
| 75455618 | | | Member 6 |
| 75469036 | | | Member 7 |
| 75482345 | | | Member 8 |
| | | | |
| Gross Wages Total | | | |
| Total Union Dues Paid | | | |

2) On, or about, 26 July 2017, I received as an email attachment a pdf file *request for payment* which at the bottom shows the document is intended to be I.A.T.S.E. 479 Invoice number **479-00084157.** (Member 9)

In the body of the document, it indicates that I owe money to I.A.T.S.E. 479 for "Wonder View FKA Stranger Things, S2 Audit."

3) This *request for payment* document however fails to comport to commonly expected "invoice" call-outs[1] and thus does absolutely nothing to help me determine what may be deficient in the payment of representation dues; i.e.

   a) Is I.A.T.S.E. 479 claiming that the dues that were withheld were not remitted to I.A.T.S.E. 479 and that it is the union member's responsibility to guarantee such payment performance?

   b) Is I.A.T.S.E. 479 claiming that the wrong percentage number was used in calculating gross wages assessment withholding?

   c) Is I.A.T.S.E. 479 claiming that I received wages that were not reflected on some paycheck?

   d) Which specific check, or checks, does I.A.T.S.E. 479 claim the employer failed to properly withhold assessments from? And what amount is claimed owed from this/ these specifically identified payroll check(s)?

**Discussion and Conclusion**

Union members sign a withholding authorization with each new employer authorizing them to withhold three percent of gross wages and to remit same to I.A.T.S.E. 479. Three percent is the proper amount to withhold and is in accordance with I.A.T.S.E. 479 by-laws (Article VIII, Section 1). Employer withheld 3% of my gross wages while in their employ.

My gross wages for this production were $██████; three percent of $██████ equals $██████ (Rounded up equals $████). Employer withheld $████ as union dues. Accordingly, no additional representation fees appear to be owed.

**WHEREFORE THEN**, I respectfully demand that I.A.T.S.E. 479 provide strict proof to substantiate its claim for additional payment – or in the alternate, update its records to show no additional fees are owed.

With kind regards,

/s/ Bennon L. Prine, Jr.

---

[1] A Google search for the suggested contents of an "invoice" is encouraged. Also, a Google search for "statement" will show that this document comports to the requirements for a "statement" but not an "invoice."



IATSE Local 479    4220 International Pkwy
Suite 100
Atlanta, GA 30354
T  404-361-5676
F  404-361-5677
office@iatse479.org
http://www.iatse479.org

September 25, 2017

Ben,

Thank you for coming in last week. After our meeting, I discussed your concerns with Secretary/Treasurer Frank Hatcher as well as with our attorney Bob Giolito. Please see Bob's response, which I copied into this letter from an email he sent.

"Mike, you asked for my legal opinion whether the Local may legitimately collect work dues on meal penalties. You informed me that this has been the historical practice of the Local, and that it conforms with the practice followed by other IATSE local unions.

In my opinion, the Local may collect work dues from meal penalties paid to members on covered productions. The Local is a private, voluntary association and, as such, it is entitled to make, interpret, and enforce its own rules of membership. Article VIII, Sec. 1 of the Local's constitution provides in relevant part that members shall pay "working dues of 3% of gross wages earned under an IATSE agreement." Because it is a private association, the Local has inherent authority to interpret the term "gross wages" as encompassing all employee earnings from covered work, including meal penalties and other contractually required payments. It does not matter that the government, NLRB, IRS, or other third party may interpret the term differently, it is the Local's interpretation of its own constitution that governs the terms and requirements of Local membership. It should not be overlooked that meal penalties would not exist but for the Union's efforts to require them as a term and condition of employment. Thus, assessing dues against earnings from meal penalties is both in line with and supports the Union's traditional functions as collective bargaining representative.

If you have any other questions, please contact me. Sincerely, Bob"

Please be aware that while your account was in dispute, we removed the late charges associated with your assessment. The assessment has been reinstated with a charge date of today, 9/25/17, and will be due in 30 days. You are in good standing at this time.

In Solidarity,

*Michael Akins*

Michael Akins
Business Agent, IATSE Local 479

| Ray Brown | Whit Norris | Michael Akins | Frank Hatcher |
|-----------|-------------|---------------|---------------|
| *President* | *Vice- President* | *Business Agent* | *Secretary-Treasurer* |

*Member of the Georgia AFL-CIO*    *Member of the Atlanta Labor Council*

Plaintiff 0004

The State Bar of Georgia has verified this lawyer's membership status, public disciplinary history, and section membership. The lawyer has provided all additional information and the State Bar of Georgia has not approved or verified the authenticity of that information. The State Bar of Georgia does not recommend, approve or endorse any lawyer.

Home > Search Results > Mr. Robert S. Giolito



# Mr. Robert S. Giolito

Robert S Giolito PC

⊘ Attorney Verified  ⊘ Inactive Member in Good Standing

About    Disciplinary History    Education    Associations    Contact Info    Licenses

## DISCIPLINARY HISTORY

None on Record

### CONNECTING WITH

### Mr. Robert S. Giolito
Robert S Giolito PC

⬇ Download vCard

📞 Phone              ✉ Email

Primary Address

📍 1626 Montana Avenue Suite 201
Santa Monica, CA 90403

UP

## ACCREDITATIONS

### LICENSES

O State of Admission - GA
   Admitted On - May 19, 1974
   INACTIVE MEMBER IN GOOD STANDING

## ABOUT MY PRACTICE

## EDUCATION

O University of Wisconsin-Madison

## ASSOCIATIONS & AFFILIATIONS

### SECTIONS

Labor & Employment Law

CloudLaw, PBC dba RELIAGUIDE • support@reliaguide.com
© 2022 CloudLaw, PBC • All rights reserved.

UP



COPY

# IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

Bennon L. Prine, Jr.
            Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA "Stage
and Picture Operators AFL-CIO Local Union
479"

Michael Akins (Individually and professionally)

J. Doe (Unknown Co-Conspirators)
            Defendants

Civil Action Number

2022CV02744-09

**FILED CLAYTON COUNTY**
**2022 SEP 26 PM 5:00**
**JACQULINE D. WILLS**
**CLERK SUPERIOR COURT**

## AMENDED VERIFIED COMPLAINT

### Count 1   Breach of Contract

### Overview

This is a contract dispute. The parties disagree over the meaning of a single word: "Wages." This court is being called upon to define "wages," and equally important, what <u>does not</u> meet the definition of wages, and issue rulings consistent with it;

Defendant collects a portion of Plaintiff's wages earned for representing him to employers. By enlarging the definition of "wages," Defendant is able to assess, and collect substantially higher fees from Plaintiff. Plaintiff claims in this lawsuit that Defendant has impermissibly enlarged this word - wages - to include non-wage income and as a result, has previously, and is now, collecting more fees than it is entitled; and seeks to have Defendant limit its fees to what it has rightfully earned – according to the terms of said contract – and make reparations for past bad conduct;

Plaintiff met with Defendant's "Business Agent" to discuss this matter, and showed him the definitions from a dictionary, the Internal Revenue Service (IRS) definition and legal precedent.

Business Agent responded (in summation) that Defendant (by and through him - its business agent) may define "wages" however it sees fit. Plaintiff, not finding any language in their contract that allows Defendant to unilaterally alter the ordinary and usual definition of a word disagrees - and this lawsuit follows;

The Plaintiff, Bennon L. Prine, Jr., COMES NOW before this court seeking declarative judgment, injunctive relief to prevent similar future conduct, and an order requiring reparations for past bad conduct; and in support alleges:

**Parties**

1) **Plaintiff,** Bennon L. Prine, Jr., is a *sui juris* individual who earns his living working in the motion picture/ video production industry. Plaintiff is a member of Local 479 in good-standing;

2) This production industry includes, but is not limited to, making movies and shows for theater, television and streaming services. Work in this industry is primarily project-based, which means employment will have a definitive beginning and end. Work on each of these projects varies in duration from 1 day to many months, according to the needs of the production, and as such, an employee will usually have several different jobs each year. To find work and to deal with these employers, Plaintiff has joined a "Labor Union," which helps him find these work-projects and which negotiates (within limits) the terms and conditions of employment. If a problem with pay or working conditions occurs, the "labor union" works to resolve these also. This labor union collects a portion of Plaintiff's wages for performing such services;

3) **Defendant** is an unincorporated entity and a "labor organization" as defined in O.C.G.A. 34-6-20(4). According to its charter dated October 1, 1986, which granted the formation of a branch of the "International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada," it is to be known as "Studio Mechanics Local No. 479." In required filings with the federal government, this union is known as "Stage and Picture Operators AFL-CIO Local Union 479." This union is commonly referred to as "Local 479" and this is how it will be referred to in pleadings;

4) **Defendant** Michael Akins is the Local 479 "Business Representative" and is often times referred to as a Business Agent or just "BA." This is an elected position within Local 479 and a full-time paid job. He maintains an office within the Local 479 union hall.

## Jurisdiction and Venue:

5) This court has subject-matter jurisdiction pursuant to Ga. Const. Art VI § II, Para. VI.;

6) Labor unions may be sued (OCGA 9-2-25(a));

7) Unless exclusive jurisdiction rests with a federal tribunal, a Superior Court may exercise original jurisdiction over complaints that contain federal questions;

8) **Plaintiff.** By filing this lawsuit in this court, the Plaintiff has voluntarily subjected himself to the jurisdiction and venue of this court;

9) **Defendant**, Local 479, maintains its base of operations at 4220 International Pkwy #100, Atlanta, GA 30354. This address is physically located within the boundaries of Clayton County, Georgia;

10) **Defendant**, Local 479, has had its physical base of operations located in Clayton County Georgia for over 8 years;

11) **Defendant**, Local 479, has continuously transacted business within the boundaries of Clayton County, Georgia for over 8 years;

12) **Defendant,** Michael Akins, the Local 479 "Business Representative," may be found in Clayton County where he maintains an office and regularly conducts business;

## Procedures Completed Before Filing Suit

13) Plaintiff met with the Business Representative, Akins, in an attempt to have him stop the complained of conduct;

14) Frank Hatcher, Local 479's then Secretary and Treasurer, was also in attendance;

15) Hatcher asked if this matter could result in litigation; Plaintiff responded that if the union continued demanding meal penalty assessments, then yes, litigation should be expected. Hatcher then demanded that no further discussion take place and the meeting be closed – and it was;

16) A formal reply was sent to Plaintiff claiming that Local 479 may define a word anyway it sees fit – and is not beholden to the usual and common understanding of a word;

17) The Local 479 Constitution and Bylaws does not contain any requirements that need to be met before a lawsuit is filed;

18) Plaintiff sought leave of the court to file this complaint, through motion and verified affidavit;

19) If filed, the court has granted Plaintiff's motion for leave to file this complaint.

**Service of Process**

20) To lower costs of this action, Plaintiff intends to ask defendants to waive service. Should either defendant refuse to waive service, then any Officer of Local 479 may be served this complaint.   However, the Business Representative, Michael Akins, is the preferred recipient, since all complaints may be served at one time and at one location; he maintains an office at Local 479's physical address listed above. If he refuses service, Michael Akins will need to be personally served.

**Membership Contract of Service**

21) Local 479 has a Constitution and Bylaws;

22) This Constitution and Bylaws is a contract between Local 479 and its members;

23) Local 479 is subject to the Labor-Management Reporting and Disclosure Act (LMRDA) of 1959, as amended, and must file electronic reports with the Office of Labor-Management Standards (OLMS) of the Department of Labor (DOL);

24) The latest amended and enacted Constitution and Bylaws is one of the documents required to be filed with the DOL;

25) Plaintiff will provide the court with an as-published copy of this contract. Independent verification of authenticity may be had by requesting a current copy of the Local 479 Constitution and Bylaws, as filed with the DOL, by requesting it through OLMS at 202-693-0123 or olms-public@dol.gov. Information about this service may be found at https://www.dol.gov/agencies/olms/public-disclosure-room ;

26) Among other things, this Constitution and Bylaws details the fees that members will pay to Local 479 for services rendered to them;

27) These provided services include, but are not limited to, negotiating the terms and conditions of member employment with employing entities (within limits). These successful negotiations are memorialized in a signed contract between the employing entity and Local 479 (This "Labor Contract" is more commonly known as a "Collective Bargaining Agreement").

**Definitions and Ordinary Usage**

28) From Black's Law Dictionary 5th edition:

   a) Wages means: "A compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production."

   b) Liquidated Damages means: "…[A] specific sum of money [that] has been expressly stipulated by the parties to a bond or other contract as the amount of damages to be recovered by either party for a breach of the agreement by the other."

**Meal Penalties**

29) All allegations recited in every other section of this complaint is included here by reference as if fully recited here;

30) Every three years (or so), production companies and labor unions meet and negotiate a series of generic contracts to cover specific working conditions, wages, and other payment contingencies that apply to each specific type of production. (Though the contracts may be reviewed every three years, all of them are not renegotiated at the same time.);

31) For brevity in this complaint, the "Area Standards Agreement" (ASA) will be referenced. All other contracts have similar worded clauses that apply to the respective Collective Bargaining Agreements;

32) As part of these collective bargaining agreements, employers and unions specify the earliest and latest times for workers to begin a meal period and also the minimum time employees will have to consume said meals. The language showing this in the Area Standards Agreement is found as follows:

### ARTICLE 4 – MEALS

(A) Meal periods shall not be less than one-half (½) hour nor more than one (1) hour in length…

(B) The employee's first meal period shall commence within six (6) hours following the time of first call for the day; succeeding meal periods shall commence within six (6) hours after the end of the preceding meal period. An employee's first meal period shall commence no earlier than two (2) hours after such employee reports for work except that persons called up to two (2) hours earlier than the regular crew call who are provided with a non-deductible hot breakfast and time to sit and eat (within one (1) hour before or after the regular crew call) will have their first deductible meal period due at the same time as a meal is due for the regular crew.

(C) Meal intervals may be extended twelve (12) minutes without penalty when used for completing a camera setup in progress or one-half hour for wrap if the employee is dismissed within one-half hour. If the employee is

not dismissed within said one-half hour extension, meal penalty shall be computed from the end of the sixth hour following the previous meal.

33) As part of these collective bargaining agreements, to avoid litigation over the issue, employers and unions have specified how employees will be compensated if/ when an employer violates the above provisions of the CBA contract.   The Area Standards Agreement language showing this is:

## ARTICLE 4 – MEALS

(D) (1) Except as provided in subparagraph (2) below, meal penalty for delayed meals shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 7.50

Second half-hour meal delay or fraction thereof …$10.00

Third and each succeeding half-hour meal delay or fraction thereof.. $12.50

(2) Meal penalty for delayed meals for employees employed on television motion pictures shooting in a studio shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 8.50

Second half-hour meal delay or fraction thereof $11.00

Third and each succeeding half-hour meal delay or fraction thereof. . $13.50

34) All collective bargaining agreements signed by production companies/ employing entities and Local 479 set forth these meal penalty provisions;

35) "Meal penalties" are paid to employees because the employer has violated a CBA contract provision;

36) Members regularly collect meal penalties;

37) Since the beginning of the Covid-19 pandemic, some production companies have completely done away with meal times, choosing instead to sometimes pay over 30 hours a week in meal penalties   A specific amount of damages cannot be pled because this amount may increase with each work day;

38) The additional pay and the assessments are not an insignificant sum.  Using the above example and rounded numbers.   30 hours X $25/ hour = $750/wk x 1000 workers = 750000/wk gross meal penalties per 1000 workers X 3% = $22,500 per week Local 479 is illicitly collecting each and every week.  On the date of filing, Local 479 had over 7000 members, with each and every member subject to the same contracts as Plaintiff.  On average roughly half of the members will be in a job where they will collect meal penalty payments.  As such, the 1000 member example should be considered a low number and the actual "take" significantly higher;

39) Meal Penalty payments are the sole property of the employees who are paid them.

**Violation of Membership Contract**

40) As it relates to this complaint, Local 479 has, and is, violating the membership contract by enlarging the definition of "wages" to include "meal penalties;"

41) Local 479 is now assessing members three per cent (3%) of what these members receive as payment for "meal penalties;"

42) Plaintiff specifically alleges that assessing members for any contractual liquidated damages (Meal Penalties) payment is a violation of the Constitution and Bylaws;

43) "Liquidated damages" are personal income, but NOT wages.  Local 479 is not entitled to assess all personal income received from work on a production – only wages;

44) Meal penalties are not wages.  No matter how early, how late, or how many hours an employee works, such work will not trigger the meal penalty clause of any CBA.  No matter how much, or how little, an employee accomplishes during working hours, such

accomplishments will not trigger the meal penalty clause of any CBA.  There is absolutely nothing that an employee can do to trigger meal penalties payments – Only the actions, or inactions, of an employing entity can trigger meal penalties.  And these actions or inactions must be a violation of a contract's provisions;

45)   The section of the Constitution and Bylaws that is being violated is as follows:

ARTICLE VIII: REVENUES

SECTION 1. DUES AND INITIATION FEES

The dues payable by each member, except retired and honorary members, shall be the total of the applicable International Stamp Dues plus twelve dollars ($12.00), plus working dues of **three per cent (3%) of gross wages** earned under an IATSE agreement in the craft and/or geographical jurisdiction of this Local.

46)   Aside from the "stamp dues", this (above) paragraph clearly shows that Local 479 is entitled to "**three per cent (3%) of gross wages** earned under an IATSE agreement" – and NOTHING more;

47)   Nothing in the Constitution and Bylaws allows for a union officer to unilaterally expand, enlarge or create any definition of "wages" other than how it is ordinarily understood and defined;

48)   While Local 479 members may choose to define "wages" in a manner not common to ordinary-and-customary, legal, and accounting, and "Internal Revenue Service," understanding, they have not done so;

49)   Unless, and until, the Local 479 Constitution and Bylaws are amended to reflect a different meaning, Local 479 must abide by the ordinary-and-customary meaning of words and phrases found its Constitution and Bylaws;

50)   Nothing in the Constitution and Bylaws allows Local 479 to receive any portion of payments to members for "meal penalties;"

51) If members do not pay to Local 479 an amount equal to three per cent (3%) of any "meal penalties" payments they receive from employers, Local 479 will place them in "Bad Standing" with the union, and then eventually expel them from the union;

52) Most hiring productions that have entered into a collective bargaining agreement will not, or at least prefer not to, hire employees that are not union members.  Not having IATSE union membership is tantamount to being fired, or non-hirable since most production companies will refuse to hire non-union members;

53) Local 479's message to members is clear, pay us or don't work in the movie production industry;

54) The breaches of contract complained of here have been occurring each and every week for at least eight (8) years[1], and such breaches are expected to continue into the future[2];

55) Local 479 members do not now and have never authorized employers to withhold meal penalties assessments from their pay[3];

56) Employers categorize meal penalty payments as "meal penalty" payments.   These payments are not comingled under any other withholding category[4];

57) Each and every successive meal penalty assessment is a separate and distinct claim for breach of contract;

58) Local 479 has an obligation to follow and confine its conduct to what is allowed in the Local 479 constitution and bylaws;

59) By breeching the mandates found in the Local 479 constitution and bylaws, Local 479 has failed its responsibilities to its members;

---

[1] Eight years is the length of time that Plaintiff has been a member of this labor union.
[2] Unless this court issues such orders as may be required to prevent such future conduct.
[3] A copy of the standard Local 479 employer withholding authorization is attached at Plaintiff 007.
[4] A copy of one of the checks that Local 479 initially claimed that meal penalty payments were owed on is attached at Plaintiff 0008.  (The gross wages of this check were higher than usual).

60) The failure of Local 479 to honorably and faithfully discharge its responsibilities to its members is the proximate cause of the injuries complained of;

61) The failure of Akins to properly supervise union employees and to honorably and faithfully discharge his responsibilities to Local 479 members is the proximate cause of the injuries complained of;

62) WHEREFORE THEN Local 479 has breached the contract between it and its members in violation of the provisions of OCGA 13-1-1 et seq.


**Counts 2 through 7**

**Overview**

63) Counts 2 through 7 includes 6 claims that for brevity and economy are presented under one heading since they share of a common set of facts. These claims include: 3 claims of "tort of conversion," violation of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3);  violation of OCGA 16-8-3 - Theft by deception, and violation of OCGA 16-14-1 et seq. RICO (Racketeer Influenced and Corrupt Organizations Act);

64) All claims and allegations of Count 1 are included here by reference as if fully recited here;

65) Michael Akins is the Local 479 "Business Representative;"

66) Michael Akins (Akins) has been the Local 479 "Business Representative" for over eight (8) years;

67) The duties and responsibilities of the Local 479 Business Representative are, and can be found in the Local 479 Constitution and Bylaws at:

> **ARTICLE VI: DUTIES OF OFFICERS, TRUSTEES, AND DELEGATES**
>
> *SECTION 3. BUSINESS REPRESENTATIVE*
>
> The Business Representative shall represent the Local at all times in all dealings with employers, pursuing all avenues of employment for members

in the Local's jurisdiction, negotiating all minimum Contracts and Agreements, supplying all employers with current directories of members and organizing the unorganized.

The Business Representative shall have the right to refer any member in good standing, subject to qualifications required by the employer and as the situation so warrants.

The Business Representative shall have full charge of the Business Office of this Local, and may, with the approval of the Executive Board, and as funds permit, employ an Office Manager and other employees as necessary. Such employees shall be under the direct supervision of the Business Representative to operate the business affairs of the Local and to assist the Officers of this Local in their official duties.

Compensation of all office employees shall be subject to the approval of the Executive Board...

68)  As Business Representative, Akins:

    a.  Hires office staff;

    b.  creates and implements the policy these employees work under;

    c.  supervises the office staff;

    d.  Created an auditing section;

    e.  Directed, and still directs, the office staff to assess "meal penalties;"

    f.  Directed, and still directs, the office staff to collect "meal penalties" payments from members when a payroll deduction of these assessments is not made;

    g.  Directs the office staff to place members who have not paid "meal penalties" assessments into a "Bad Standing" list;

    h.  If a member does not timely pay fees claimed owed, and cure any "Bad Standing," they are expelled from Local 479 membership;

      i.  The creation of records, that purportedly show the non fulfillment of member responsibilities, when no such responsibility actually exists – such as demanding payment for meal penalty assessments – is a form of coercion and/ or extortion, because any such refusal to acquiesce carries with it the penalty of membership expulsion from Local 479.

69)   Akins has both a job obligation and a fiduciary responsibility to the Local 479 union and its membership to conduct and comport his actions in such a manner that is lawful under both federal and state of Georgia law;

70)  No other Local 479 officer, other than Akins, has the constitutional authority to implement office worker policy, direct or supervise the Local 479 office staff;

71)  Akins has demanded that Employers and/ or Payroll companies withhold meal penalties assessments from members' paychecks and turn said monies over to Local 479 – all without authority, cause or justification;

72)  Akins has created, or caused to be created, a separate LLC, namely, Shadow Data, LLC, for the purpose of collecting and aggregating member financial information for the purpose of exacting more monies from them;

73)  Akins DOES NOT have the authority to define words, or enlarge their meaning, outside of their usual and customary meaning;

74)  The Local 479 membership, by secret ballot vote, may enlarge or define any word in any manner it sees fit;

75)  The Local 479 membership has never voted to enlarge or define any word outside of its usual and customary meaning;

76)  The Labor Management Reporting and Disclosure Act of 1959 (also "LMRDA" or the Landrum–Griffin Act) grants certain rights to union members and protects their interests by promoting democratic procedures within labor organizations, including, but not limited to:

    a. Guarantees union members equal voting rights and free speech and assembly rights;

    b. To raise "dues, initiation fees, and assessments," 29 U.S.C. § 411(a)(3) requires "...majority vote by secret ballot ..."

77) The rights guaranteed under the LMDRA Bill of Rights are the personal intangible property of each and every labor union member;

78) Local 479 has NEVER voted to assess Meal Penalties;

79) By fiat and artifice, Akins has implemented, and continues to demand, meal penalty assessments;

80) When Akins first took office, he had obligation to assess the actions of his office and the actions of Local 479 and to determine if such actions were in-fact legal - and to intercede and stop any found illegal actions. This responsibility is an ongoing and continuous obligation of the "Business Representative;"

81) Akins has failed to take any action to stop illegal actions by himself, his office and/ or that of Local 479;

82) Akins has told and held out to at least one pay check processor (Cast and Crew), that meal penalties are wages in an effort to have them withhold assessments on member paychecks and then turn over said funds to Akins and/ or Local 479;

83) Akins has failed to stop/ correct the withholding of meal penalty payment assessments from at least one paycheck processor, who, once withheld, would turn over said monies to Local 479;

84) When meal penalty payments, were received from payroll processors, Akins and/ or Local 479 failed to refund them to the members, instead choosing to keep this money for their own use;

85) Akins failure to take action and stop illegal action of his office and that of Local 479 is the direct and proximate cause of Plaintiff's injuries;

86) By implementing, and or continuing to assess, meal penalty payments Akins has thereby extorted, stolen, impinged, usurped, abridged, interfered with and denied Local 479 rank-and-file membership intangible personal property rights under the LMRDA;

87) Akins and/ or Local 479 has intentionally deceived new and old members alike by telling them that meal penalties payments are wages;

88) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions in such a manner that is lawful under both federal and state of Georgia law;

89) Akins has failed his fiduciary responsibility to conduct and comport is actions in a lawful manner under both federal and state of Georgia law;

90) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions and discharge the office of Business Representative in compliance with Local 479 constitution and bylaws;

91) Akins has NOT comported his actions and discharged the office of Business Representative in compliance with Local 479 constitution and bylaws;

92) Akins failure to comply with federal and state law is the proximate cause of the injuries complained of;

93) Akins failure to honorably and faithfully discharge the fiduciary responsibilities of the office of the Business Representative is the proximate cause of the injuries complained of;

94) Akins has exceeded and abused the powers of the Office of the Business Representative;

95) Akins exceeding and abusing the powers of the Office of the Business Representative are the proximate cause of the injuries complained of herein;

96) Local 479 has failed in its fiduciary responsibilities to its members;

97) The failure of Local 479 to honorably and faithfully discharge its fiduciary responsibilities to its members is the proximate cause of the injuries complained of;

98) Akins has acted in an "ultra vires" manner;

99) Meal penalty payments are specific and traceable funds;

100) Akins and/ or Local 479 has claimed ownership of every meal penalty assessment received by them;

WHEREFORE THEN, Akins and/or Local 479 Have violated laws as follows:

101) **Count 2:**   Akins and/or Local 479, by implementing, and/or continuing to allow, meal penalty payment assessments, without a vote by secret ballot of the membership in good-standing, has violated the provisions of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3).

102) **Count 3:**   By stating, publishing documents, and/ or otherwise holding out to membership that meal penalty payments are wages, and then by exploiting this member belief to extract monies from members, Akins and/ or Local 479 has committed violations of OCGA 16-8-3 - Theft by deception.

103) **Count 4:**   By directing payroll processors withhold meal penalty assessments, and turn said funds over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479 have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1. Right of action for deprivation of possession of personalty.

104) **Count 5:**   By not refunding meal penalty payment assessments, that were erroneously withheld by payroll processors, and where said funds were turned over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479

have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1. <u>Right of action for deprivation of possession of personalty.</u>

105) **Count 6:**   The rights under the LMRDA are the personal property to each and every union member, and only by vote may assessments be altered – which is to say that if assessments have been raised it is because a vote has taken place affirming the change in assessments, and here Akins and/or Local 479 has raised assessments without member involvement, Akins and Local 479 have thus converted the voting property rights of members to their own and have exercised dominion over them in violation of OCGA 51-10-1. <u>Right of action for deprivation of possession of personalty[5].</u>

106) **Count 7:**   RICO (Racketeer Influenced and Corrupt Organizations Act) violations, as promulgated under **OCGA** 16-14-1 et seq.   The necessary prongs of this violation are as follows:

A) At the center is Akins, who runs this illicit enterprise[6] and who has conspired with at least 1 other actor to take money from Local 479 members.   Culpable members include, Akins, Local 479, Certain Local 479 employees functioning in a dual capacity; Shadow Data LLC, and at least 3 payroll companies.   Shadow Data and the payroll companies are not named as defendants because they are believed to have relied on fraudulent inducements[7] of Akins and as such are more valuable as cooperating witnesses than adversarial defendants.   Certain Local 479 employees, though culpable for illegal conduct, are following Akins commands and to do otherwise would leave them unemployed, thus they too are more valuable as

---

[5] The application of these facts to this statute is a first impression in Georgia.   It is not however an original idea of Plaintiff.   Plaintiff has merely copied these allegations from successful claims in other jurisdictions and submitted them here as his own.

[6] While Michael Akins does have lawful responsibilities within Local 479, he has comingled these illicit actions, with his legitimate duties in such a way that it is difficult to discern the two.   Indeed, it is this appearance of legitimacy that allows him to successfully perform illicit activities so effectively – and unchallenged up until this action.

[7] Before meeting with Akins, Plaintiff talked to Cast and Crew staff and was told that meal penalty assessments were not deducted because they were not wages.   Personal belief and these discussions suggest that the payroll entities only withhold meal penalty assessments when informed that under the Local's constitution and bylaws, that meal penalty payments assessments has been approved by membership.

cooperating witnesses than adversarial defendants. The complaint will be amended if discovery shows these assumptions are erroneous. Discovery may reveal the names of additional coconspirators not now known; they will be added, as appropriate, when discovered.

B) Neither Local 479 nor Akins has any lawful claim to the monies being taken as "meal penalties" assessments;

C) Actual force in the form of Expulsion from Local 479 is used to ensure compliance – which is tantamount to a bar to employment - if members do not voluntarily pay meal penalty assessments; they are placed in a bad standing list and in time expelled from the union.

D) Affects interstate commerce by, among other things, changing the amount of monies transferred to members;

E) Predicate Acts - Mail and Wire Fraud, conversion,   The assertions given to payroll companies via electronic means and the resultant check transport through mails which show a deduction not authorized satisfies the predicate acts. The acts of conversion, as detailed above, are likewise predicate acts. Acts of "Theft by Deception" are predicate acts. This claim contains a buffet of different predicate acts to choose from;

F) These racketeering acts are the regular way Akins conducts ongoing business;

G) The racketeering acts have the same or similar intents, purposes, results, participants, victims, and methods of commission – Namely, the targets are members who are all subject to both the Local 479 contract for service (constitution and bylaws) and the identical collective bargaining agreements. The culpable members of this enterprise, listed above, take monies from members, where they have a no legal claim to, and then exercise dominion over it;

H) The acts of racketeering activity committed by Defendants have the same or similar results, in that they did all result in Defendants exerting control and possession over Plaintiffs' property,

I) New violations occur every week, have been occurring for at least 8 years and will continue indefinitely into the future unless a court acts to stop it;

J) To date, there have been quite literally thousands of unlawful acts in the furtherance of this scheme and the present "take" totals in the millions of dollars.

K) As a direct and proximate result of Defendants' Georgia RICO violations, Plaintiff has suffered injury.

M) Plaintiff is entitled to three times the actual damages sustained and to recover their attorneys' fees and costs of investigation and litigation reasonably incurred under O.C.G.A. § 16-14-6(c).

N) Because Defendants' actions in violation of the Georgia RICO statute show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, Plaintiff is also entitled to an award of punitive damages.

**Plaintiff Note to Court**:  Plaintiff notifies the court that Local 479 has over 7000 members. Each and every one of these members is subject to both the Local 479 "Constitution and Bylaws" and the contracts of employment (CBA) referenced in this complaint.  A significant portion of these members has suffered as Plaintiff has.  Accordingly, class action status will likely be sought.[8]

---

[8] In the interest of costs and judicial economy, Plaintiff will ask other putative Plaintiffs to refrain from joining this lawsuit initially, but ultimately it is their choice.  At the appropriate time, Plaintiff will engage a licensed attorney who has the requisite experience to represent this class.

113)   **WHEREFORE THEN** Plaintiff respectfully requests the following relief for each and all complaints:

a)  Process according to law;

b)  Declaration that meal penalties are not wages;

c)  Injunction to prevent the assessment of meal penalties in the future, unless and until such time that the membership has voted to approve such assessment;

d)  A refund of all meal penalty assessments collected;

e)  Exemplary damages where allowed;

f)  Treble damages on RICO claim;

g)  Costs of this action;

h)  Jury trial on all questions that a jury may consider;

i)  Attorney fees where allowed;

j)  Such other relief as this court deems just and proper.

This the _27_ day of July, 2022.

Respectfully Submitted,

Bennon L. Prine, Jr.
Post Office Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net



**IATSE**
Local 479

| FORM | *Standard Payroll Deduction Form* |
|------|-----------------------------------|
| **PD-1** | *This form should not be used for Cast & Crew Inc.* |

Revised: 11/17/2020

Effective from date of hire, I do hereby authorize Studio Mechanics Local 479 I.A.T.S.E. to act for me as my collective bargaining agent in all matters pertaining to minimum wages, terms, conditions, and benefits of my employment with _____ for the production of _____. I also assign Studio Mechanics Local 479 I.A.T.S.E. three per cent (3%) of all wages earned and to be earned by me as an employee, and authorize and direct my employer to deduct such three per cent (3%) from my wages and to remit same to Studio Mechanics Local 479 I.A.T.S.E. I further authorize Studio Mechanics Local 479 I.A.T.S.E. to deposit this authorization with any employer under contract with Studio Mechanics Local 479 I.A.T.S.E. This assignment shall be irrevocable for a period consisting of one (1) year, and shall be automatically renewed, with the same irrevocability, for a successive like period unless canceled by me in writing not more than thirty (30), nor less than ten (10) days prior to the expiration of such period.

**Name** (please print) _____

**Signature** _____

**Date** _____     **Social Security #** _____
           (month, day, year)

**IATSE Local 479**
4220 International Pkwy • Suite 100 • Atlanta, GA 30354
(404) 361-5676 Office • (404) 361-5677 • office@iatse479.org • www.iatse479.org

Payroll Employ: Cast & Crew Production Payroll / 450 Seventh Ave. / Suite 900 / New York, NY 10123 / (212) 594-5686 / FEIN# 95-4362622

Please retain this stub for your records

| PRINE JR., BENNON L. | | | | \*\*\*\*\*\*\*GET YOUR W2 FORM ONLINE\*\*\*\*\*\*\*\*\* | W-2 ADDRESS: | PLEASE VERIFY |
|---|---|---|---|---|---|---|

SSN / Tax ID: xxx-xx-4812   Exemptions: S-1   Check Date: 6/8/17   Check Number: 75455618

Now there is no waiting at the mailbox for your W2 to arrive. Register to receive your W2 online at www.mytaxform.com or visit our website at www.castandcrew.com for more information!

W-2 ADDRESS:
PRINE, BENNON L
P.O. BOX 93
GRIFFIN GA 30224

Controlling Employer: CRANETOWN MEDIA, LLC (#4093)

RESIDENT OF GEORGIA

244 FIFTH AVENUE
SUITE 2263
NEW YORK, NY 10001

Dates worked: 5/29-31 6/1-3/2017
Pay period: 05/29 - 06/03/2017

### EARNINGS

FIRST AID (EMT, PARAMEDIC, RN) LOCAL 479 479K

| Project | Week End | Invoice# |
|---|---|---|
| STRANGER THINGS (68) | 06/03/2017 | 17395454 |

STRANGER THINGS (Series Code: 002)
STRANGER THINGS (Series Code: 209)

| Description | Hours | Rate | Amount |
|---|---|---|---|
| Straight | 32.00 | 29.80 | 953.60 |
| 6th Day | 13.00 | 44.70 | 581.10 |
| Time & One-half | 18.40 | 44.70 | 822.48 |
| Double Time | 0.80 | 59.60 | 47.68 |
| Meal Pen. | | | 239.50 |
| Unworked Holiday | 8.00 | 29.80 | 238.40 |
| Totals: | 72.20 | | 2,882.76 |

### TAXES/WITHHOLDING

| Description | Amount | YTD |
|---|---|---|
| FICA | 178.73 | 453.16 |
| Medicare | 41.80 | 105.99 |
| FWT | 638.01 | 1,221.38 |
| GA SWT | 163.54 | 372.58 |
| Total Taxes/Withholding: 1,022.08 | | |

### DEDUCTIONS

| Description | Amount | YTD |
|---|---|---|
| 479 Wkdues | 79.30 | 204.34 |

### REIMBURSEMENTS

| Description | Amount | YTD |
|---|---|---|
| Equipment | 125.00 | 255.00 |

|  |  |
|---|---|
| Total Hours: | 72.20 |
| Gross Wages: | 2,882.76 |
| Taxes: | 1,022.08 |
| Deductions: | 79.30 |
| Reimbursements: | 125.00 |
| Net Wages: | 1,906.38 |

YTD Gross:   7,309.18

Seq #71630587   Run #17246811   Ref #1496935892

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

Bennon L. Prine, Jr.
          Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA "Stage and Picture Operators AFL-CIO Local Union 479"

Michael Akins (Individually and professionally)

J. Doe (Unknown Co-Conspirators)
          Defendants

Civil Action Number

_____

## VERIFICATION

PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths, BENNON L. PRINE, JR., who after first being duly sworn, states that he has read the foregoing *Verified Complaint and* that the factual information contained therein is true and correct.

_____
Signature

Sworn and subscribed before me
This 27 day of July, 2022.

_____
Notary Public

My Commission Expires: May 18, 2026

[NOTORIAL SEAL]

TIFFANY HOLLIS
Notary Public · State of Georgia
Spalding County
My Commission Expires May 18, 2026

☐ ~~Superior Court~~     ☐ **Magistrate Court**

CASE NUMBER 20__-CV-027__-9

**CLAYTON COUNTY, GEORGIA**

BENNON L TAMI ___

Plaintiff ☐

VS.

SUN M____ T____ 479

4250 INTERNATIONAL P.___=___

Defendant ☐

ATLANTA GEORGIA

Address ☐

Attorney or Plaintiff's Name & Address

BENNON L TAMI PA

PSb ___ G

GRIFFIN GEORGIA 30224

Garnishee ☐

Address ☐

Designate Party to be served by placing a check in box above.

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant .................................................................................................................................................. personally with a copy of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant .................................................................................................................................................. by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of .................................................................................................................................................. described as follows

age, about ............. years; weight, about ............. pounds; height, about ............. feet and ................ inches, domiciled at the residence of defendant, at .................... A.M. - P.M.

**CORPORATION** ☐

Served the (defendant, Garnishee) .................................................................................................................................................. a corporation

by leaving a copy of the within action and summons with .................................................................................................................................................. in charge of the office and place of doing business of said Corporation in this County, at ........... A.M. - P.M.

**TACK & MAIL** ☐

I have this day served the above affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class, in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant .................................................................................................................................................. not to be found in the jurisdiction of this Court.

The defendant is required to answer no later than .................................................................................................................................................. , 20............ , at the place stated in the summons.

This ................. day of ...................................... , 20.......

WHITE: Clerk     CANARY: Plaintiff     PINK: Defendant

.............................................................
**DEPUTY SHERIFF, CLAYTON COUNTY.**

**IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA**

FILED
CLAYTON COUNTY, GA

2023 APR 14  PM 4: 44

CHANAE O. CLEMONS
CLERK SUPERIOR COURT

Bennon L. Prine, Jr.
      Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA
"Stage and Picture Operators AFL-CIO Local
Union 479"

Michael Akins
   (Individually and Professionally)

J. Doe (Unknown Co-Conspirators)
      Defendants

|

Civil Action Number

2022-CV-02744-9

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT:

     You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Bennon L. Prine, Jr.
PO Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___14___ day of April, 2023.

                  Clerk of Superior Court

                  By: _Challuia tthnd_____, Deputy Clerk

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

FILED
CLAYTON COUNTY, GA

2023 APR 14  PM 4: 43

CHANAE O. CLEMONS
CLERK SUPERIOR COURT

Bennon L. Prine, Jr.
    Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA
"Stage and Picture Operators AFL-CIO Local
Union 479"

Michael Akins
   (Individually and Professionally)

J. Doe (Unknown Co-Conspirators)
    Defendants

Civil Action Number

2022-CV-02744-9

## FOURTH MOTION FOR LEAVE TO FILE COMPLAINT

COMES NOW, the Plaintiff, and moves this court for leave to file a bill of complaint against the named defendants, and in support shows the court as follows:

History of this Motion

Plaintiff first filed this motion in accordance with the US Congress preference for considering this matter – which is that it be considered ex parte. This court declined exparte consideration and ordered Defendants be served before consideration.

In the second filing, Plaintiff served Defendants using certified mail and email. The court found that certified mail did not satisfy the service requirements.

In the third filing, Plaintiff paid and provided a correct address to the Clayton County Sherriff's Office for personal service on Defendants. On the date of consideration, the Sherriff's office had not made any attempt at service – ostensibly due to a lack of manpower which has led to a backlog of service requests – and through no fault of Plaintiff. In a motion for reconsideration, Plaintiff pointed to the record and the law that the eventual service would relate back to the filing

date. The court found that service requirements had not been met and did not provide any explanation as to why this service was deficient.

Plaintiff has always tried to meet every expectation of him by any tribunal – and this tribunal is no exception. All that Plaintiff has ever asked is that if he fails to meet expectations, that he be made aware of where he has failed and instructions on how to correct it. To date, this court has not provided any guidance.

If this court denies this motion for any reason, Plaintiff respectfully requests that the court provide facts and conclusions of law. Citing *Payson v. Payson*, 552 S.E.2d 839, 274 Ga. 231 (2001), "... findings of fact and conclusions of law are instructive to the parties (*Hopkins v. Hudgins & Co.*, 218 Ga.App. 508(1)(d), 462 S.E.2d 393 (1995)), and enable them "to complain of and appeal from the judgment rendered." *Brown v. Brown*, 237 Ga. 201, 202, 227 S.E.2d 360 (1976).

### Motion

Plaintiff has "good cause" for filing a complaint against the named defendants as shown herein.

Plaintiff's attached affidavit, titled, "Affidavit in Support of Ex parte Motion for Leave to File Complaint," is included here by reference as if fully recited here. The proposed complaint is also included here by reference as if fully recited here.

This Motion for Leave to File Complaint is authorized by 29 USC 501(b)[1];  Jurisdiction to hear this motion is proper "in any State court of competent jurisdiction" (29 USC 501(b)). The proposed complaint contains questions of both state of Georgia and federal law claims.

This court is being asked to hear this motion and the federal law claims under the theory of "concurrent jurisdiction;" which is to say that this court is being asked to hear this motion as a

---

[1] This is part of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA); 29 USC Labor. The heart of the LMRDA is Title I, which is fittingly called the *"Bill of Rights of Members of Labor Organizations."* This law protects and guarantees the rights of labor union members to sue their labor union. Before filing suit however, a plaintiff must file a motion with a court showing they have good cause to file said suit. This motion satisfies this requirement. A lawsuit that contains these federal causes of action cannot be maintained until this procedure is complete.

Northern District of Georgia federal court would, which includes applying the appropriate federal authority and procedures to the facts, and then issue an appropriate order. Citing *Yellow Freight System, Inc. v. Donnelly*, 494 US 820 (1990), in *Collins v. Dept. of Transp.*, 429 SE 2d 707 (Ga. Ct. of App. 1993) the court found:

> "Under our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' [Cits.] To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. [Cit.]" Id. at 823."

Thus, this court has the inherent authority to decide this federal question.

Neither congress nor the US Supreme court has unified the definition and requirements of what "Good Cause" means. The most commonly accepted authority is *Horner v. Ferron*, 362 F. 2d 224 (9th Cir. 1966). The 11th Circuit adopted *Horner's* reasoning in *Erkins v. Bryan*, 663 F. 2d 1048 (11th Cir 1981).

Plaintiff has met the burden of showing "Good Cause" and has laid this out in exhausting detail in his attached affidavit that shows, among other things: a) Plaintiff has standing, as evidenced by being a member of Local 479, and was in good-standing in the union on the date of filing the proposed complaint; b) The union was notified of basis for concerns and this motion includes a response letter showing that no resolution was possible using internal procedures; 3) The proposed complaint alleges violation of federal and state law and includes allegations to support them.

Per *Erkin, supra*, a defendant can only challenge "good cause" based on issues such as plaintiff failing to follow the LMRDA's procedures or estoppel, and not based on disputing the proposed complaint's allegations. The *Erkin* court emphasized that the proposed complaint itself may not be attacked until after a good cause motion has been granted and the case filed and served on defendants – which is to say that any attack on the complaint itself must wait and be done through summary judgment procedures.

Plaintiff has "good cause" for filing an action against the named defendants as shown herein.

WHEREFORE THEN, Plaintiff respectfully requests that this motion be granted.

This the 14th day of April, 2023.

Respectfully Submitted,

Bennon L. Prine, Jr.
PO Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net

EFILED
CLAYTON COUNTY, GA
7/28/2022 2:31 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## AFFIDAVIT IN SUPPORT OF EX PARTE MOTION FOR LEAVE TO FILE COMPLAINT

UNDER OATH, Bennon L Prine, Jr., resident of Griffin, County of Spalding, State of Georgia and who makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his knowledge:

### Overview of Case

The case discussed here is a union member suing a labor union. This union, by and through its business representative, Michael Akins, has intentionally and improperly enlarged the meaning of a word (wages) in the constitution and bylaws (contract) for the purpose of increasing assessment income. I am coming before the court, asking it to interpret this contract in accordance with Georgia law and issue such orders as needed to bring this union in compliance with applicable law.

### Reasons for seeking exparte leave of court

I want to file a lawsuit in Clayton County, GA Superior Court. In researching the laws applicable to my case and the predicted response of the defendants, several issues and procedures are not clear - in that there is no on-point precedent in either Georgia or the 11th Circuit federal court system to guide either me or this court. What precedent is available in other federal circuits in several situations conflict and there is no pending case before the US Supreme Court to resolve these conflicts of law. So what I am attempting to do is identify any procedure, that might be adverse to my position if not complied with, and comply with it out of an abundance of caution. Doing this should benefit defendants by having fewer areas to attack, me by having fewer motions to defend and this court by having fewer motions/ arguments to resolve. This document is intended to give the court deeper insight into this matter.

There is absolutely nothing in either Georgia law or precedent that requires a plaintiff to a contract dispute to request leave of the court to file a complaint. However, when a federal law is listed in support, or a claim of violation of a federal law is attached to a state complaint, this leave might be required.

Page **1** of 9

Nothing in the complaint gives jurisdiction to the National Labor Relations Board.

There are several federal laws at issue in the proposed case and at least 3 different federal laws that bring intricacy to this lawsuit. All are found under Title 29. The first is

SUBCHAPTER VI—SAFEGUARDS FOR

LABOR ORGANIZATIONS

§ 501. Fiduciary responsibility of officers of labor Organizations

(a) Duties of officers; exculpatory provisions and resolutions void

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

A plain reading of the above paragraph suggests that this is not applicable to the submitted complaint. However, some federal court circuits[1] have ruled that this paragraph covers every

---

[1] Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963) ; several other circuits have found this holding persuasive – the 11th Circuit is not one of them.

breach of fiduciary duty by a union officer.  If the conflicts in the different federal circuits were resolved to find this interpretation is the proper one, then the next paragraph is applicable and this leave of court is required.

### (b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. <u>No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown[2], which application may be made ex parte.</u> The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

### Defendants are guilty of Criminal Conduct

When most investigators, attorneys and judicial officers first look at a complaint, the first thing they usually do is - "peel the onion" – strip back every layer of the matter until its core issue is laid bare.

The core issue here, and what is laid out in the complaint, is a criminal violation of "The Hobbs Act of 1946."   This case is a reincarnation of a well-worn theme: take money from labor union

---

[2] "Good cause shown," is understood to mean "not frivolous."

members - where no legitimate claim to such money exists - by means of threat of economic harm.

Under "The Hobbs Act of 1946," 18 U.S.C. § 1951[3]

Section 1951 - Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

Thus, the 2 elements to a Hobbs Act extortion conviction are: 1) Interference with commerce and 2) extortion. In this matter, (1) state borders and distance aside, for all practical purposes, Georgia is part of the back yard of Hollywood, California and New York – and the business of making movies and television shows does affect interstate commerce. While each payroll company usually maintains an office in Georgia, pay is mostly calculated in California or New York, and the actual checks are then printed and mailed from a second state, which itself is drawn on a bank from a third state. Most of the yearly form W2's show our employer to be located in California or New York. The actions of defendants interfere with the process of Local

---

[3] Current through P.L. 117-148 (published on www.congress.gov on 06/16/2022)

479 members receiving all pay owed; (2) Defendants request money they are not entitled to (meal penalty payments) be paid to them, and should any member refuse to voluntarily pay defendants, they are placed on a bad standing list and eventually expelled from the union – destroying many opportunities for employment.

Simply stated, this is an illegal "pay to play" scheme. Either members pay defendants money not owed to them, or they might not work.

## Civil Case

This criminal matter[4] is being restated so that it can be prosecuted as a civil matter. Restated as a civil complaint, at its core this is a contract dispute and every other claim is derivative of this state-law claim.

## Actions taken prior to filing this complaint

I received a statement from Local 479 (via email), stating that I owed a sum of money (Plaintiff 0001); this document did not, however, specify what the money was owed for. I made a number of phone calls to office personnel, none of which had an explanation for what the charge was for. Trying a number of different calculations, what best fit was that I was being assessed for "meal penalties." I then sent a letter (via email) asking for a formal reply stating specifically what they claimed I owed money for (Plaintiff 0002). No response was ever received.

Believing this was a mistake; I next requested and attended a meeting with the union Business Representative, Michael Akins. During this meeting he confirmed that this charge was an assessment for meal penalties; after which I told him that I believed that this practice was illegal and gave him my reasons for concluding this – and requested that the union stop these assessments.

Also in attendance was the then Secretary-Treasurer, Frank Hatcher. Hatcher asked if this matter could result in litigation; and I stated that if this practice continued, then yes, litigation can be expected. He then demanded that the meeting be concluded – and it was.

---

[4] This case has neither been presented to, nor reviewed by any prosecutor.

**Formal response to meeting**

Akins followed up with a letter attached to an email (Plaintiff 0004). According to the letter, Akins discussed the matter with Hatcher and "our attorney Bob Giolito[5];" and then responded with Gioloti's opinion.

This letter does tacitly admit all factual allegations in my complaint. This letter also shows the framework of defendants' defense. This can be seen by the statement, "it is the <u>Local's interpretation</u> of its own constitution that governs the terms and requirements of Local membership."

With nearly a century of labor union history to look back on, courts have established policies on resolving labor union disputes. One such policy is for courts look to see if a union's interpretation of its own constitution is "reasonable." What is being referred to here is judicially created "policies" on adjudicating union cases. This judicial policy has, to my knowledge, never been codified at either a federal or state level. Defendants appear to want to use judicially created *policy* as a tool of defense. What defendants are suggesting here is that judicial policy supersedes both state and federal statutes and regulations. If defendants' interpretation is found to be correct, then a union can, with judicial agreement, waive compliance with any number of distasteful laws by merely having a union leader "interpret" their constitution and bylaws in such a way as to relieve them of compliance requirements. I know of no law, code or holding that would allow a court policy to create and/ or diminish substantive rights as defendants seem to suggest. To do so would create a second and superior legislative branch and a violation of both federal and state constitution's separation of power provisions. The state of New York court system is one that does have a large library of precedent in these matters, and if found persuasive in this court, this court would find that defendants are cherry-picking policies and misstating them. From <u>MATTER OF LASONDE v. Seabrook</u>, 89 AD 3d 132 - NY: Appellate Div., 1st Dept. 2011:

---

[5] According to required union filings with the Department of Labor, Local 479 has paid Giolito for "Legal Services" in each year of the last 10 years as an independent contractor (10 years is the maximum searchable). According to the Georgia Bar Association license verification site, Robert S Gioloti is listed as "INACTIVE IN GOOD STANDING." (Plaintiff 0005) According to the GA Bar Association, in a telephone call, Giolito's law license has been inactive since 2011. While Giolito was formerly licensed to practice law in Georgia, he is NOT authorized to practice law in Georgia currently. A wider search does show that he has an active law license in the state of California.

Generally, a court considering the validity of actions taken by a union official must determine whether said actions are authorized under the union's constitution or bylaws (*Allen*, 109 Misc 2d at 184). In so doing, the court must assess the union official's claim that his or her actions are authorized under the constitution or bylaws by (1) independently reviewing the constitution or bylaws "<u>in accordance with the general rules of construction appertaining to contracts</u>" and (2) determining whether the union official's interpretation is a reasonable interpretation of the constitution or bylaws (*id.*).[9]

As the court can see, unions do not get to pick and choose what laws apply to them. If the determination of this case were to be decided by these standards however, the court need only answer a single question: "Is violating statutory law a reasonable act of a labor union official?"

However, this defense is short-sighted because the inquiry does not end here. Labor unions are NOT autocratic institutions; so unless a coronation is held and Akins is dubbed, "King Mike," Akins must follow federal law, state law, and the will of the members as spelled out in the constitution and bylaws. This inquiry does not turn on the opinion of Akins; what matters here is what the rank-and-file membership decides and authorizes in accordance with the following statute:

### TITLE I—BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS

**Bill of Rights**
(29 U.S.C. 411)
SEC. 101. (a)

(3) DUES, INITIATION FEES, AND ASSESSMENTS.—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot;

NO vote authorizing assessments of Meal Penalties has ever been held. Until such time as the rank-and-file membership authorizes an increase of assessments, to include meal penalties, meal penalties payments may not be assessed.

## SUMMATION

As the court can see, there are plenty of possible directions for this case to take. Defendant's likely legal strategy though is predictable: deny and delay – and then look for a mistake on my part and seek a technical victory. A number of legal detours are expected before the merits of the case are addressed.

After all detours are resolved, what will be left is as follows:

The US Supreme Court ruled that a union's constitution and bylaws is a ""contract between member and union and that "The courts' role is but to enforce the contract.""[6]

The contract at issue here was created in Georgia; between a recognized Georgia entity and its members, who are both Georgia residents; for the benefit of this Georgia entity and Georgia residents; where both are subject to Georgia laws. The interpretation of this contract is thus subject to the laws of the state of Georgia.

The issues complained of were done by an individual and an organization that has its principal place of business for the last 8 years within the physical boundaries of Clayton County; and the actions complained of were performed and/ or orchestrated out this Clayton County Office.

---

[6] <u>NLRB v. Allis-Chalmers Mfg. Co.</u>, at 182, 388 US 175 - Supreme Court 1967

Page **8** of **9**

2022CV02744-09

This court will then be tasked with applying Georgia law to a Georgia contract, and issue orders consistent with this application.

I am now asking this court to grant this motion and allow the case to move forward.

Further, Affiant Sayeth Not.

WITNESS my signature, this the 27 day of July, 2022.

Signature of Affiant

Sworn and subscribed before me this 27th day of July, 2022.

Notary Public                                        Seal

TIFFANY HOLLIS
Notary Public - State of Georgia
Spalding County
My Commission Expires May 18, 2026

Page 9 of 9

2022CV02744-09



**I.A.T.S.E. Local 479**
4220 International Parkway
Atlanta, GA 30354
Phone: (404) 361-5676
Fax: (404) 361-5677

Date :   7/26/2017
Invoice # :  479
**Total Invoice Balance :**   $ 
**Total Due Now :**   $

# INVOICE

Bill To:

Bennon Prine
P.O. Box 93
Griffin, GA, 30224

| Chg Date | Pay By | Type | Description | Amount | Amt Paid | Amt Due |
|----------|--------|------|-------------|--------|----------|---------|
| 7/26/2017 | 8/25/2017 | Assessment | Wonder View FKA Stranger Things, S2 Audit | $  | | $ |
| | | | **Total Due:** | | | $ |

To pay by credit card, please fill out form below.
**Please make checks payable to: I.A.T.S.E. 479**

*Please cut along this line and return LOWER portion with your payment.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| Member Name | Invoice # | Invoice Date | Amt Due |
|-------------|-----------|--------------|---------|
| Bennon Prine | 479-00084157 | 7/26/17 | $ |

**Credit Card:  AMEX  DISCOVER  MASTERCARD  VISA**
**Name on Credit Card:** _____
**Credit Card Number:** _____

**Exp. Date:** _____   **CSC Security Code:** _____

*Remit payment to:*
*I.A.T.S.E. Local 479*
*4220 International Parkway*
*Atlanta, GA 30354*

**Billing Zip Code:** _____

2022CV02744-09

**Bennon L. Prine, Jr.**
Post Office Box 93
Griffin, Georgia 30224
678-995-5414

22 August 2017

I.A.T.S.E. Local 479
Attn. Billing Department
4220 International Parkway
Atlanta, GA 30354

Ref:  Claim for additional assessment fees due to work performed for "Cranetown Media LLC" (#4093) and payroll employer "Cast and Crew" on production series "STRANGER THINGS."

**Ladies and Gentlemen:**

I have audited my pay records from this production and all owed assessments appear to have been listed, calculated correctly and presumably sent to Local 479 – NO ADDITIONAL ASSESSMENTS ARE OWED BY ME TO LOCAL 479 for representation on this production.

I wonder however, is Local 479 attempting to collect an assessment on meal penalties?

This is a formal demand for strict proof of insufficient payroll deductions for union dues assessments for the show "Stranger Things" Season 2 or in the alternative that any accounting records be updated to reflect that no such fees are owed.

**Facts:**

1)  I received six paychecks from work performed on this show and identified as:

| Check Number | Gross Wages | Union Dues Withheld | Attachment Number |
|---|---|---|---|
| 75343872 | ███ | | Member 3 |
| 75404330 | | | Member 4 |
| 75442682 | | | Member 5 |
| 75455618 | ██ | | Member 6 |
| 75469036 | | ██ | Member 7 |
| 75482345 | | | Member 8 |
| | | | |
| Gross Wages Total | ███ | | |
| Total Union Dues Paid | | ██ | |

2) On, or about, 26 July 2017, I received as an email attachment a pdf file *request for payment* which at the bottom shows the document is intended to be I.A.T.S.E. 479 Invoice number **479-00084157.** (Member 9)

In the body of the document, it indicates that I owe money to I.A.T.S.E. 479 for "Wonder View FKA Stranger Things, S2 Audit."

3) This *request for payment* document however fails to comport to commonly expected "invoice" call-outs[1] and thus does absolutely nothing to help me determine what may be deficient in the payment of representation dues; i.e.

   a) Is I.A.T.S.E. 479 claiming that the dues that were withheld were not remitted to I.A.T.S.E. 479 and that it is the union member's responsibility to guarantee such payment performance?

   b) Is I.A.T.S.E. 479 claiming that the wrong percentage number was used in calculating gross wages assessment withholding?

   c) Is I.A.T.S.E. 479 claiming that I received wages that were not reflected on some paycheck?

   d) Which specific check, or checks, does I.A.T.S.E. 479 claim the employer failed to properly withhold assessments from? And what amount is claimed owed from this/ these specifically identified payroll check(s)?

**Discussion and Conclusion**

Union members sign a withholding authorization with each new employer authorizing them to withhold three percent of <u>gross wages</u> and to remit same to I.A.T.S.E. 479. Three percent is the proper amount to withhold and is in accordance with I.A.T.S.E. 479 by-laws (Article VIII, Section 1). Employer withheld 3% of my gross wages while in their employ.

My gross wages for this production were $███████; three percent of $███████ equals $███████ (Rounded up equals $██████). Employer withheld $██████ as union dues. Accordingly, no additional representation fees appear to be owed.

**WHEREFORE THEN,** I respectfully demand that I.A.T.S.E. 479 provide strict proof to substantiate its claim for additional payment – or in the alternate, update its records to show no additional fees are owed.

With kind regards,

/s/ Bennon L. Prine, Jr.

---

[1] A Google search for the suggested contents of an "invoice" is encouraged. Also, a Google search for "statement" will show that this document comports to the requirements for a "statement" but not an "invoice."

2022CV02744-09



IATSE Local 479    **4220 International Pkwy**
**Suite 100**
**Atlanta, GA 30354**
**T   404-361-5676**
**F   404-361-5677**
**office@iatse479.org**
**http://www.iatse479.org**

September 25, 2017

Ben,

Thank you for coming in last week. After our meeting, I discussed your concerns with Secretary/Treasurer Frank Hatcher as well as with our attorney Bob Giolito. Please see Bob's response, which I copied into this letter from an email he sent.

"Mike, you asked for my legal opinion whether the Local may legitimately collect work dues on meal penalties. You informed me that this has been the historical practice of the Local, and that it conforms with the practice followed by other IATSE local unions.

In my opinion, the Local may collect work dues from meal penalties paid to members on covered productions. The Local is a private, voluntary association and, as such, it is entitled to make, interpret, and enforce its own rules of membership. Article VIII, Sec. 1 of the Local's constitution provides in relevant part that members shall pay "working dues of 3% of gross wages earned under an IATSE agreement." Because it is a private association, the Local has inherent authority to interpret the term "gross wages" as encompassing all employee earnings from covered work, including meal penalties and other contractually required payments. It does not matter that the government, NLRB, IRS, or other third party may interpret the term differently, it is the Local's interpretation of its own constitution that governs the terms and requirements of Local membership. It should not be overlooked that meal penalties would not exist but for the Union's efforts to require them as a term and condition of employment. Thus, assessing dues against earnings from meal penalties is both in line with and supports the Union's traditional functions as collective bargaining representative.

If you have any other questions, please contact me. Sincerely, Bob"

Please be aware that while your account was in dispute, we removed the late charges associated with your assessment. The assessment has been reinstated with a charge date of today, 9/25/17, and will be due in 30 days. You are in good standing at this time.

In Solidarity,

*Michael Akins*

Michael Akins
Business Agent, IATSE Local 479

Ray Brown          Whit Norris          Michael Akins          Frank Hatcher
*President*         *Vice- President*    *Business Agent*       *Secretary-Treasurer*

*Member of the Georgia AFL-CIO*          *Member of the Atlanta Labor Council*

Plaintiff 0004

The State Bar of Georgia has verified this lawyer's membership status, public disciplinary history, and section membership. The lawyer has provided all additional information and the State Bar of Georgia has not approved or verified the authenticity of that information. The State Bar of Georgia does not recommend, approve or endorse any lawyer.

Home  >  Search Results  >  Mr. Robert S. Giolito



# Mr. Robert S. Giolito

Robert S Giolito PC

⊘ Attorney Verified   ⊘ Inactive Member in Good Standing

About     Disciplinary History     Education     Associations     Contact Info     Licenses

## DISCIPLINARY HISTORY

None on Record

### CONNECTING WITH

## Mr. Robert S. Giolito
Robert S Giolito PC

↓ Download vCard

📞 Phone                              ✉ Email

Primary Address

📍 1626 Montana Avenue Suite 201                                                     UP
Santa Monica, CA 90403

Plaintiff 0005

2022CV02744-09

## ACCREDITATIONS

### LICENSES

O  State of Admission - GA
Admitted On - May 19, 1974
INACTIVE MEMBER IN GOOD STANDING

## ABOUT MY PRACTICE

## EDUCATION

O  University of Wisconsin-Madison

## ASSOCIATIONS & AFFILIATIONS

### SECTIONS

Labor & Employment Law

CloudLaw, PBC dba RELIAGUIDE • support@reliaguide.com
© 2022 CloudLaw, PBC • All rights reserved.

UP

Plaintiff 0006



## IN THE SUPERIOR COURT OF CLAYTON COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| Bennon L. Prine, Jr.<br>    Plaintiff | Civil Action Number |
| Vs. | 2022CV02744-09 |
| "Studio Mechanics Local No. 479", AKA "Stage and Picture Operators AFL-CIO Local Union 479" | |
| Michael Akins (Individually and professionally) | |
| J. Doe (Unknown Co-Conspirators)<br>    Defendants | |

### AMENDED VERIFIED COMPLAINT

#### Count 1  Breach of Contract

#### Overview

This is a contract dispute. The parties disagree over the meaning of a single word: "Wages." This court is being called upon to define "wages," and equally important, what does not meet the definition of wages, and issue rulings consistent with it;

Defendant collects a portion of Plaintiff's wages earned for representing him to employers. By enlarging the definition of "wages," Defendant is able to assess, and collect substantially higher fees from Plaintiff. Plaintiff claims in this lawsuit that Defendant has impermissibly enlarged this word - wages - to include non-wage income and as a result, has previously, and is now, collecting more fees than it is entitled; and seeks to have Defendant limit its fees to what it has rightfully earned – according to the terms of said contract – and make reparations for past bad conduct;

Plaintiff met with Defendant's "Business Agent" to discuss this matter, and showed him the definitions from a dictionary, the Internal Revenue Service (IRS) definition and legal precedent.

Business Agent responded (in summation) that Defendant (by and through him - its business agent) may define "wages" however it sees fit. Plaintiff, not finding any language in their contract that allows Defendant to unilaterally alter the ordinary and usual definition of a word disagrees - and this lawsuit follows;

The Plaintiff, Bennon L. Prine, Jr., COMES NOW before this court seeking declaratory judgment, injunctive relief to prevent similar future conduct, and an order requiring reparations for past bad conduct; and in support alleges:

## Parties

1) **Plaintiff,** Bennon L. Prine, Jr., is a *sui juris* individual who earns his living working in the motion picture/ video production industry. Plaintiff is a member of Local 479 in good-standing;

2) This production industry includes, but is not limited to, making movies and shows for theater, television and streaming services. Work in this industry is primarily project-based, which means employment will have a definitive beginning and end. Work on each of these projects varies in duration from 1 day to many months, according to the needs of the production, and as such, an employee will usually have several different jobs each year. To find work and to deal with these employers, Plaintiff has joined a "Labor Union," which helps him find these work-projects and which negotiates (within limits) the terms and conditions of employment. If a problem with pay or working conditions occurs, the "labor union" works to resolve these also. This labor union collects a portion of Plaintiff's wages for performing such services;

3) **Defendant** is an unincorporated entity and a "labor organization" as defined in O.C.G.A. 34-6-20(4). According to its charter dated October 1, 1986, which granted the formation of a branch of the "International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada," it is to be known as "Studio Mechanics Local No. 479." In required filings with the federal government, this union is known as "Stage and Picture Operators AFL-CIO Local Union 479." This union is commonly referred to as "Local 479" and this is how it will be referred to in pleadings;

4) **Defendant** Michael Akins is the Local 479 "Business Representative" and is often times referred to as a Business Agent or just "BA." This is an elected position within Local 479 and a full-time paid job. He maintains an office within the Local 479 union hall.

## Jurisdiction and Venue:

5) This court has subject-matter jurisdiction pursuant to Ga. Const. Art VI § II, Para. VI.;

6) Labor unions may be sued (OCGA 9-2-25(a));

7) Unless exclusive jurisdiction rests with a federal tribunal, a Superior Court may exercise original jurisdiction over complaints that contain federal questions;

8) **Plaintiff.** By filing this lawsuit in this court, the Plaintiff has voluntarily subjected himself to the jurisdiction and venue of this court;

9) **Defendant,** Local 479, maintains its base of operations at 4220 International Pkwy #100, Atlanta, GA 30354. This address is physically located within the boundaries of Clayton County, Georgia;

10) **Defendant,** Local 479, has had its physical base of operations located in Clayton County Georgia for over 8 years;

11) **Defendant,** Local 479, has continuously transacted business within the boundaries of Clayton County, Georgia for over 8 years;

12) **Defendant,** Michael Akins, the Local 479 "Business Representative," may be found in Clayton County where he maintains an office and regularly conducts business;

## Procedures Completed Before Filing Suit

13) Plaintiff met with the Business Representative, Akins, in an attempt to have him stop the complained of conduct;

14) Frank Hatcher, Local 479's then Secretary and Treasurer, was also in attendance;

15) Hatcher asked if this matter could result in litigation; Plaintiff responded that if the union continued demanding meal penalty assessments, then yes, litigation should be expected. Hatcher then demanded that no further discussion take place and the meeting be closed – and it was;

16) A formal reply was sent to Plaintiff claiming that Local 479 may define a word anyway it sees fit – and is not beholden to the usual and common understanding of a word;

17) The Local 479 Constitution and Bylaws does not contain any requirements that need to be met before a lawsuit is filed;

18) Plaintiff sought leave of the court to file this complaint, through motion and verified affidavit;

19) If filed, the court has granted Plaintiff's motion for leave to file this complaint.

## Service of Process

20) To lower costs of this action, Plaintiff intends to ask defendants to waive service. Should either defendant refuse to waive service, then any Officer of Local 479 may be served this complaint. However, the Business Representative, Michael Akins, is the preferred recipient, since all complaints may be served at one time and at one location; he maintains an office at Local 479's physical address listed above. If he refuses service, Michael Akins will need to be personally served.

## Membership Contract of Service

21) Local 479 has a Constitution and Bylaws;

22) This Constitution and Bylaws is a contract between Local 479 and its members;

23) Local 479 is subject to the Labor-Management Reporting and Disclosure Act (LMRDA) of 1959, as amended, and must file electronic reports with the Office of Labor-Management Standards (OLMS) of the Department of Labor (DOL);

24) The latest amended and enacted Constitution and Bylaws is one of the documents required to be filed with the DOL;

25) Plaintiff will provide the court with an as-published copy of this contract. Independent verification of authenticity may be had by requesting a current copy of the Local 479 Constitution and Bylaws, as filed with the DOL, by requesting it through OLMS at 202-693-0123 or olms-public@dol.gov. Information about this service may be found at https://www.dol.gov/agencies/olms/public-disclosure-room ;

26) Among other things, this Constitution and Bylaws details the fees that members will pay to Local 479 for services rendered to them;

27) These provided services include, but are not limited to, negotiating the terms and conditions of member employment with employing entities (within limits). These successful negotiations are memorialized in a signed contract between the employing entity and Local 479 (This "Labor Contract" is more commonly known as a "Collective Bargaining Agreement").

**Definitions and Ordinary Usage**

28) From Black's Law Dictionary 5th edition:

   a) Wages means: "A compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production."

   b) Liquidated Damages means: "…[A] specific sum of money [that] has been expressly stipulated by the parties to a bond or other contract as the amount of damages to be recovered by either party for a breach of the agreement by the other."

**Meal Penalties**

29) All allegations recited in every other section of this complaint is included here by reference as if fully recited here;

30) Every three years (or so), production companies and labor unions meet and negotiate a series of generic contracts to cover specific working conditions, wages, and other payment contingencies that apply to each specific type of production. (Though the contracts may be reviewed every three years, all of them are not renegotiated at the same time.);

31) For brevity in this complaint, the "Area Standards Agreement" (ASA) will be referenced. All other contracts have similar worded clauses that apply to the respective Collective Bargaining Agreements;

32) As part of these collective bargaining agreements, employers and unions specify the earliest and latest times for workers to begin a meal period and also the minimum time employees will have to consume said meals. The language showing this in the Area Standards Agreement is found as follows:

## ARTICLE 4 – MEALS

(A) Meal periods shall not be less than one-half (½) hour nor more than one (1) hour in length...

(B) The employee's first meal period shall commence within six (6) hours following the time of first call for the day; succeeding meal periods shall commence within six (6) hours after the end of the preceding meal period. An employee's first meal period shall commence no earlier than two (2) hours after such employee reports for work except that persons called up to two (2) hours earlier than the regular crew call who are provided with a non-deductible hot breakfast and time to sit and eat (within one (1) hour before or after the regular crew call) will have their first deductible meal period due at the same time as a meal is due for the regular crew.

(C) Meal intervals may be extended twelve (12) minutes without penalty when used for completing a camera setup in progress or one-half hour for wrap if the employee is dismissed within one-half hour. If the employee is

not dismissed within said one-half hour extension, meal penalty shall be computed from the end of the sixth hour following the previous meal.

33) As part of these collective bargaining agreements, to avoid litigation over the issue, employers and unions have specified how employees will be compensated if/ when an employer violates the above provisions of the CBA contract. The Area Standards Agreement language showing this is:

## ARTICLE 4 – MEALS

(D) (1) Except as provided in subparagraph (2) below, meal penalty for delayed meals shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 7.50

Second half-hour meal delay or fraction thereof ...$10.00

Third and each succeeding half-hour meal delay or fraction thereof.. $12.50

(2) Meal penalty for delayed meals for employees employed on television motion pictures shooting in a studio shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 8.50

Second half-hour meal delay or fraction thereof $11.00

Third and each succeeding half-hour meal delay or fraction thereof. . $13.50

34) All collective bargaining agreements signed by production companies/ employing entities and Local 479 set forth these meal penalty provisions;

35) "Meal penalties" are paid to employees because the employer has violated a CBA contract provision;

36) Members regularly collect meal penalties;

37) Since the beginning of the Covid-19 pandemic, some production companies have completely done away with meal times, choosing instead to sometimes pay over 30 hours a week in meal penalties   A specific amount of damages cannot be pled because this amount may increase with each work day;

38) The additional pay and the assessments are not an insignificant sum.  Using the above example and rounded numbers.  30 hours X $25/ hour = $750/wk x 1000 workers = 750000/wk gross meal penalties per 1000 workers X 3% = $22,500 per week Local 479 is illicitly collecting each and every week. On the date of filing, Local 479 had over 7000 members, with each and every member subject to the same contracts as Plaintiff.  On average roughly half of the members will be in a job where they will collect meal penalty payments.  As such, the 1000 member example should be considered a low number and the actual "take" significantly higher;

39) Meal Penalty payments are the sole property of the employees who are paid them.

**Violation of Membership Contract**

40) As it relates to this complaint, Local 479 has, and is, violating the membership contract by enlarging the definition of "wages" to include "meal penalties;"

41) Local 479 is now assessing members three per cent (3%) of what these members receive as payment for "meal penalties;"

42) Plaintiff specifically alleges that assessing members for any contractual liquidated damages (Meal Penalties) payment is a violation of the Constitution and Bylaws;

43) "Liquidated damages" are personal income, but NOT wages.  Local 479 is not entitled to assess all personal income received from work on a production – only wages;

44) Meal penalties are not wages.  No matter how early, how late, or how many hours an employee works, such work will not trigger the meal penalty clause of any CBA.  No matter how much, or how little, an employee accomplishes during working hours, such

accomplishments will not trigger the meal penalty clause of any CBA.  There is absolutely nothing that an employee can do to trigger meal penalties payments – Only the actions, or inactions, of an employing entity can trigger meal penalties.  And these actions or inactions must be a violation of a contract's provisions;

45)  The section of the Constitution and Bylaws that is being violated is as follows:

> ARTICLE VIII: REVENUES
>
> SECTION 1. DUES AND INITIATION FEES
>
> The dues payable by each member, except retired and honorary members, shall be the total of the applicable International Stamp Dues plus twelve dollars ($12.00), plus working dues of **three per cent (3%) of gross wages** earned under an IATSE agreement in the craft and/or geographical jurisdiction of this Local.

46)  Aside from the "stamp dues", this (above) paragraph clearly shows that Local 479 is entitled to "**three per cent (3%) of gross wages** earned under an IATSE agreement" – and NOTHING more;

47)  Nothing in the Constitution and Bylaws allows for a union officer to unilaterally expand, enlarge or create any definition of "wages" other than how it is ordinarily understood and defined;

48)  While Local 479 members may choose to define "wages" in a manner not common to ordinary-and-customary, legal, and accounting, and "Internal Revenue Service," understanding, they have not done so;

49)  Unless, and until, the Local 479 Constitution and Bylaws are amended to reflect a different meaning, Local 479 must abide by the ordinary-and-customary meaning of words and phrases found its Constitution and Bylaws;

50)  Nothing in the Constitution and Bylaws allows Local 479 to receive any portion of payments to members for "meal penalties;"

51) If members do not pay to Local 479 an amount equal to three per cent (3%) of any "meal penalties" payments they receive from employers, Local 479 will place them in "Bad Standing" with the union, and then eventually expel them from the union;

52) Most hiring productions that have entered into a collective bargaining agreement will not, or at least prefer not to, hire employees that are not union members. Not having IATSE union membership is tantamount to being fired, or non-hirable since most production companies will refuse to hire non-union members;

53) Local 479's message to members is clear, pay us or don't work in the movie production industry;

54) The breaches of contract complained of here have been occurring each and every week for at least eight (8) years[1], and such breaches are expected to continue into the future[2];

55) Local 479 members do not now and have never authorized employers to withhold meal penalties assessments from their pay[3];

56) Employers categorize meal penalty payments as "meal penalty" payments. These payments are not comingled under any other withholding category[4];

57) Each and every successive meal penalty assessment is a separate and distinct claim for breach of contract;

58) Local 479 has an obligation to follow and confine its conduct to what is allowed in the Local 479 constitution and bylaws;

59) By breeching the mandates found in the Local 479 constitution and bylaws, Local 479 has failed its responsibilities to its members;

---

[1] Eight years is the length of time that Plaintiff has been a member of this labor union.
[2] Unless this court issues such orders as may be required to prevent such future conduct.
[3] A copy of the standard Local 479 employer withholding authorization is attached at Plaintiff 007.
[4] A copy of one of the checks that Local 479 initially claimed that meal penalty payments were owed on is attached at Plaintiff 0008. (The gross wages of this check were higher than usual).

60) The failure of Local 479 to honorably and faithfully discharge its responsibilities to its members is the proximate cause of the injuries complained of;

61) The failure of Akins to properly supervise union employees and to honorably and faithfully discharge his responsibilities to Local 479 members is the proximate cause of the injuries complained of;

62) WHEREFORE THEN Local 479 has breached the contract between it and its members in violation of the provisions of OCGA 13-1-1 et seq.

## Counts 2 through 7

## Overview

63) Counts 2 through 7 includes 6 claims that for brevity and economy are presented under one heading since they share of a common set of facts.   These claims include: 3 claims of "tort of conversion," violation of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3);   violation of OCGA 16-8-3 - Theft by deception, and violation of OCGA 16-14-1 et seq. RICO (Racketeer Influenced and Corrupt Organizations Act);

64) All claims and allegations of Count 1 are included here by reference as if fully recited here;

65) Michael Akins is the Local 479 "Business Representative;"

66) Michael Akins (Akins) has been the Local 479 "Business Representative" for over eight (8) years;

67) The duties and responsibilities of the Local 479 Business Representative are, and can be found in the Local 479 Constitution and Bylaws at:

ARTICLE VI: DUTIES OF OFFICERS, TRUSTEES, AND DELEGATES

*SECTION 3. BUSINESS REPRESENTATIVE*

The Business Representative shall represent the Local at all times in all dealings with employers, pursuing all avenues of employment for members

in the Local's jurisdiction, negotiating all minimum Contracts and Agreements, supplying all employers with current directories of members and organizing the unorganized.

The Business Representative shall have the right to refer any member in good standing, subject to qualifications required by the employer and as the situation so warrants.

The Business Representative shall have full charge of the Business Office of this Local, and may, with the approval of the Executive Board, and as funds permit, employ an Office Manager and other employees as necessary. Such employees shall be under the direct supervision of the Business Representative to operate the business affairs of the Local and to assist the Officers of this Local in their official duties.

Compensation of all office employees shall be subject to the approval of the Executive Board…

68)   As Business Representative, Akins:

   a.  Hires office staff;

   b.  creates and implements the policy these employees work under;

   c.  supervises the office staff;

   d.  Created an auditing section;

   e.  Directed, and still directs, the office staff to assess "meal penalties;"

   f.  Directed, and still directs, the office staff to collect "meal penalties" payments from members when a payroll deduction of these assessments is not made;

   g.  Directs the office staff to place members who have not paid "meal penalties" assessments into a "Bad Standing" list;

   h.  If a member does not timely pay fees claimed owed, and cure any "Bad Standing," they are expelled from Local 479 membership;

i.   The creation of records, that purportedly show the non fulfillment of member responsibilities, when no such responsibility actually exists – such as demanding payment for meal penalty assessments – is a form of coercion and/ or extortion, because any such refusal to acquiesce carries with it the penalty of membership expulsion from Local 479.

69)   Akins has both a job obligation and a fiduciary responsibility to the Local 479 union and its membership to conduct and comport his actions in such a manner that is lawful under both federal and state of Georgia law;

70)   No other Local 479 officer, other than Akins, has the constitutional authority to implement office worker policy, direct or supervise the Local 479 office staff;

71)   Akins has demanded that Employers and/ or Payroll companies withhold meal penalties assessments from members' paychecks and turn said monies over to Local 479 – all without authority, cause or justification;

72)   Akins has created, or caused to be created, a separate LLC, namely, Shadow Data, LLC, for the purpose of collecting and aggregating member financial information for the purpose of exacting more monies from them;

73)   Akins DOES NOT have the authority to define words, or enlarge their meaning, outside of their usual and customary meaning;

74)   The Local 479 membership, by secret ballot vote, may enlarge or define any word in any manner it sees fit;

75)   The Local 479 membership has never voted to enlarge or define any word outside of its usual and customary meaning;

76)   The Labor Management Reporting and Disclosure Act of 1959 (also "LMRDA" or the Landrum–Griffin Act) grants certain rights to union members and protects their interests by promoting democratic procedures within labor organizations, including, but not limited to:

    a. Guarantees union members equal voting rights and free speech and assembly rights;

    b. To raise "dues, initiation fees, and assessments," 29 U.S.C. § 411(a)(3) requires "…majority vote by secret ballot …"

77) The rights guaranteed under the LMDRA Bill of Rights are the personal intangible property of each and every labor union member;

78) Local 479 has NEVER voted to assess Meal Penalties;

79) By fiat and artifice, Akins has implemented, and continues to demand, meal penalty assessments;

80) When Akins first took office, he had obligation to assess the actions of his office and the actions of Local 479 and to determine if such actions were in-fact legal - and to intercede and stop any found illegal actions. This responsibility is an ongoing and continuous obligation of the "Business Representative;"

81) Akins has failed to take any action to stop illegal actions by himself, his office and/ or that of Local 479;

82) Akins has told and held out to at least one pay check processor (Cast and Crew), that meal penalties are wages in an effort to have them withhold assessments on member paychecks and then turn over said funds to Akins and/ or Local 479;

83) Akins has failed to stop/ correct the withholding of meal penalty payment assessments from at least one paycheck processor, who, once withheld, would turn over said monies to Local 479;

84) When meal penalty payments, were received from payroll processors, Akins and/ or Local 479 failed to refund them to the members, instead choosing to keep this money for their own use;

85) Akins failure to take action and stop illegal action of his office and that of Local 479 is the direct and proximate cause of Plaintiff's injuries;

86) By implementing, and or continuing to assess, meal penalty payments Akins has thereby extorted, stolen, impinged, usurped, abridged, interfered with and denied Local 479 rank-and-file membership intangible personal property rights under the LMRDA;

87) Akins and/ or Local 479 has intentionally deceived new and old members alike by telling them that meal penalties payments are wages;

88) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions in such a manner that is lawful under both federal and state of Georgia law;

89) Akins has failed his fiduciary responsibility to conduct and comport is actions in a lawful manner under both federal and state of Georgia law;

90) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions and discharge the office of Business Representative in compliance with Local 479 constitution and bylaws;

91) Akins has NOT comported his actions and discharged the office of Business Representative in compliance with Local 479 constitution and bylaws;

92) Akins failure to comply with federal and state law is the proximate cause of the injuries complained of;

93) Akins failure to honorably and faithfully discharge the fiduciary responsibilities of the office of the Business Representative is the proximate cause of the injuries complained of;

94) Akins has exceeded and abused the powers of the Office of the Business Representative;

95) Akins exceeding and abusing the powers of the Office of the Business Representative are the proximate cause of the injuries complained of herein;

96) Local 479 has failed in its fiduciary responsibilities to its members;

97)  The failure of Local 479 to honorably and faithfully discharge its fiduciary responsibilities to its members is the proximate cause of the injuries complained of;

98)  Akins has acted in an "ultra vires" manner;

99)  Meal penalty payments are specific and traceable funds;

100) Akins and/ or Local 479 has claimed ownership of every meal penalty assessment received by them;

WHEREFORE THEN, Akins and/or Local 479 Have violated laws as follows:

101) **Count 2:**  Akins and/or Local 479, by implementing, and/or continuing to allow, meal penalty payment assessments, without a vote by secret ballot of the membership in good-standing, has violated the provisions of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3).

102) **Count 3:**  By stating, publishing documents, and/ or otherwise holding out to membership that meal penalty payments are wages, and then by exploiting this member belief to extract monies from members, Akins and/ or Local 479 has committed violations of OCGA 16-8-3 - Theft by deception.

103) **Count 4:**   By directing payroll processors withhold meal penalty assessments, and turn said funds over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479 have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1. Right of action for deprivation of possession of personalty.

104) **Count 5:**  By not refunding meal penalty payment assessments, that were erroneously withheld by payroll processors, and where said funds were turned over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479

have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1. <u>Right of action for deprivation of possession of personalty.</u>

105) **Count 6:**   The rights under the LMRDA are the personal property to each and every union member, and only by vote may assessments be altered – which is to say that if assessments have been raised it is because a vote has taken place affirming the change in assessments, and here Akins and/or Local 479 has raised assessments without member involvement, Akins and Local 479 have thus converted the voting property rights of members to their own and have exercised dominion over them in violation of OCGA 51-10-1. <u>Right of action for deprivation of possession of personalty[5].</u>

106) **Count 7:**   RICO (Racketeer Influenced and Corrupt Organizations Act) violations, as promulgated under **OCGA** 16-14-1 et seq.   The necessary prongs of this violation are as follows:

A) At the center is Akins, who runs this illicit enterprise[6] and who has conspired with at least 1 other actor to take money from Local 479 members.   Culpable members include, Akins, Local 479, Certain Local 479 employees functioning in a dual capacity; Shadow Data LLC, and at least 3 payroll companies.   Shadow Data and the payroll companies are not named as defendants because they are believed to have relied on fraudulent inducements[7] of Akins and as such are more valuable as cooperating witnesses than adversarial defendants.   Certain Local 479 employees, though culpable for illegal conduct, are following Akins commands and to do otherwise would leave them unemployed, thus they too are more valuable as

---

[5] The application of these facts to this statute is a first impression in Georgia.   It is not however an original idea of Plaintiff.   Plaintiff has merely copied these allegations from successful claims in other jurisdictions and submitted them here as his own.

[6] While Michael Akins does have lawful responsibilities within Local 479, he has comingled these illicit actions, with his legitimate duties in such a way that it is difficult to discern the two.   Indeed, it is this appearance of legitimacy that allows him to successfully perform illicit activities so effectively – and unchallenged up until this action.

[7] Before meeting with Akins, Plaintiff talked to Cast and Crew staff and was told that meal penalty assessments were not deducted because they were not wages.   Personal belief and these discussions suggest that the payroll entities only withhold meal penalty assessments when informed that under the Local's constitution and bylaws, that meal penalty payments assessments has been approved by membership.

cooperating witnesses than adversarial defendants. The complaint will be amended if discovery shows these assumptions are erroneous. Discovery may reveal the names of additional coconspirators not now known; they will be added, as appropriate, when discovered.

B) Neither Local 479 nor Akins has any lawful claim to the monies being taken as "meal penalties" assessments;

C) Actual force in the form of Expulsion from Local 479 is used to ensure compliance – which is tantamount to a bar to employment - if members do not voluntarily pay meal penalty assessments; they are placed in a bad standing list and in time expelled from the union.

D) Affects interstate commerce by, among other things, changing the amount of monies transferred to members;

E) Predicate Acts - Mail and Wire Fraud, conversion,  The assertions given to payroll companies via electronic means and the resultant check transport through mails which show a deduction not authorized satisfies the predicate acts. The acts of conversion, as detailed above, are likewise predicate acts. Acts of "Theft by Deception" are predicate acts. This claim contains a buffet of different predicate acts to choose from;

F) These racketeering acts are the regular way Akins conducts ongoing business;

G) The racketeering acts have the same or similar intents, purposes, results, participants, victims, and methods of commission – Namely, the targets are members who are all subject to both the Local 479 contract for service (constitution and bylaws) and the identical collective bargaining agreements. The culpable members of this enterprise, listed above, take monies from members, where they have a no legal claim to, and then exercise dominion over it;

H) The acts of racketeering activity committed by Defendants have the same or similar results, in that they did all result in Defendants exerting control and possession over Plaintiffs' property,

I) New violations occur every week, have been occurring for at least 8 years and will continue indefinitely into the future unless a court acts to stop it;

J) To date, there have been quite literally thousands of unlawful acts in the furtherance of this scheme and the present "take" totals in the millions of dollars.

K) As a direct and proximate result of Defendants' Georgia RICO violations, Plaintiff has suffered injury.

M) Plaintiff is entitled to three times the actual damages sustained and to recover their attorneys' fees and costs of investigation and litigation reasonably incurred under O.C.G.A. § 16-14-6(c).

N) Because Defendants' actions in violation of the Georgia RICO statute show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, Plaintiff is also entitled to an award of punitive damages.

**Plaintiff Note to Court:** Plaintiff notifies the court that Local 479 has over 7000 members. Each and every one of these members is subject to both the Local 479 "Constitution and Bylaws" and the contracts of employment (CBA) referenced in this complaint. A significant portion of these members has suffered as Plaintiff has. Accordingly, class action status will likely be sought.[8]

---

[8] In the interest of costs and judicial economy, Plaintiff will ask other putative Plaintiffs to refrain from joining this lawsuit initially, but ultimately it is their choice. At the appropriate time, Plaintiff will engage a licensed attorney who has the requisite experience to represent this class.

113)   **WHEREFORE THEN** Plaintiff respectfully requests the following relief for each and all complaints:

a)   Process according to law;

b)   Declaration that meal penalties are not wages;

c)   Injunction to prevent the assessment of meal penalties in the future, unless and until such time that the membership has voted to approve such assessment;

d)   A refund of all meal penalty assessments collected;

e)   Exemplary damages where allowed;

f)   Treble damages on RICO claim;

g)   Costs of this action;

h)   Jury trial on all questions that a jury may consider;

i)   Attorney fees where allowed;

j)   Such other relief as this court deems just and proper.

This the _27_ day of July, 2022.

Respectfully Submitted,

Bennon L. Prine, Jr.
Post Office Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net



**IATSE**
Local 479

| FORM | **_Standard Payroll Deduction Form_** |
|:---:|:---|
| **PD-1** | _This form should not be used for Cast & Crew Inc._ |

Revised: 11/17/2020

Effective from date of hire, I do hereby authorize Studio Mechanics Local 479 I.A.T.S.E. to act for me as my collective bargaining agent in all matters pertaining to minimum wages, terms, conditions, and benefits of my employment with _____ for the production of _____. I also assign Studio Mechan-ics Local 479 I.A.T.S.E. three per cent (3%) of all wages earned and to be earned by me as an employee, and authorize and direct my employer to deduct such three per cent (3%) from my wages and to remit same to Studio Mechanics Local 479 I.A.T.S.E. I further authorize Studio Mechanics Local 479 I.A.T.S.E. to deposit this authorization with any employer under contract with Studio Mechanics Local 479 I.A.T.S.E. This assignment shall be irrevocable for a period consisting of one (1) year, and shall be automatically renewed, with the same irrevocability, for a successive like period unless canceled by me in writing not more than thirty (30), nor less than ten (10) days prior to the expiration of such period.

**Name** (please print) _____

**Signature** _____

**Date** _____   **Social Security #** _____
          (month, day, year)

## IATSE Local 479
4220 International Pkwy • Suite 100 • Atlanta, GA 30354
(404) 361-5676 Office • (404) 361-5677 • office@iatse479.org • www.iatse479.org
Plaintiff 0007

Payroll Employers / st & Crew Production Payroll / 450 Seventh Ave. / Suite 900 / New York, NY 10123 / (212) 594-5686 / FEIN# 95-4362622

Please retain this stub for your records

| PRINE JR., DENNON L. | | | |
|---|---|---|---|
| SSN / Tax ID | Exemptions | Check Date | Check Number |
| xxx-xx-4812 | S-1 | 6/8/17 | 75455618 |

**GET YOUR W2 FORM ONLINE**
Now there is no waiting at the mailbox for your W2 to arrive. Register to receive your W2 online at www.mytaxform.com or visit our website at www.castandcrew.com for more information!

**W-2 ADDRESS:** **PLEASE VERIFY**

PRINE, DENNON L
P.O. BOX 93
GRIFFIN GA 30224

Controlling Employer: CRANETOWN MEDIA, LLC (#4093)

RESIDENT OF GEORGIA

244 FIFTH AVENUE
SUITE 2263
NEW YORK, NY 10001

Dates worked: 5/29-31 6/1-3/2017
Pay period: 05/29 - 06/03/2017

**EARNINGS**
FIRST AID (EMT, PARAMEDIC, RN) LOCAL 479 479K

| Project | Week End | Invoice# |
|---|---|---|
| STRANGER THINGS (68) | 06/03/2017 | 17395454 |

STRANGER THINGS (Series Code: 002)
STRANGER THINGS (Series Code: 209)

| Description | Hours | Rate | Amount |
|---|---|---|---|
| Straight | 32.00 | 29.80 | 953.60 |
| 6th Day | 13.00 | 44.70 | 581.10 |
| Time & One-half | 18.40 | 44.70 | 822.48 |
| Double Time | 0.80 | 59.60 | 47.68 |
| Meal Pen. | | | 239.50 |
| Unworked Holiday | 8.00 | 29.80 | 238.40 |
| Totals: | 72.20 | | 2,882.76 |

**TAXES/WITHHOLDING**

| Description | Amount | YTD |
|---|---|---|
| FICA | 178.73 | 453.16 |
| Medicare | 41.80 | 105.99 |
| FWT | 638.01 | 1,221.38 |
| GA SWT | 163.54 | 372.58 |
| Total Taxes/Withholding: 1,022.08 | | |

**DEDUCTIONS**

| Description | Amount | YTD |
|---|---|---|
| 479 Wkdues | 79.30 | 204.34 |

**REIMBURSEMENTS**

| Description | Amount | YTD |
|---|---|---|
| Equipment | 125.00 | 255.00 |

| | |
|---|---|
| Total Hours: | 72.20 |
| Gross Wages: | 2,882.76 |
| Taxes: | 1,022.08 |
| Deductions: | 79.30 |
| Reimbursements: | 125.00 |
| Net Wages: | 1,906.38 |

YTD Gross:    7,309.18

Seq #71630587    Run #17246811    Ref #1496935892

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
### STATE OF GEORGIA

Bennon L. Prine, Jr.
        Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA "Stage and Picture Operators AFL-CIO Local Union 479"

Michael Akins (Individually and professionally)

J. Doe (Unknown Co-Conspirators)
        Defendants

Civil Action Number

_____

## VERIFICATION

PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths, BENNON L. PRINE, JR., who after first being duly sworn, states that he has read the foregoing *Verified Complaint and* that the factual information contained therein is true and correct.

_____
Signature

Sworn and subscribed before me
This 27 day of July, 2022.

_____
Notary Public

My Commission Expires: May 18, 2026

[NOTORIAL SEAL]

TIFFANY HOLLIS
Notary Public - State of Georgia
Spalding County
My Commission Expires May 18, 2026

**ORIGINAL SUMMONS**

## SUPERIOR COURT OF CLAYTON COUNTY

### STATE OF GEORGIA

_RENNON L PRINE, JR_
Plaintiff

CASE NUMBER _2022- CV-02744-9_

_P. Box 93_
Address

**SUMMONS**

_GRIFFIN GA 30224_

_NOVEMBER_ Term, 20 _22_

VS.

**CALENDAR DATES**

_MICHAEL AKINS,_
Defendant

_# 100_

_4220 INTERNATIONAL PKWY_
Address

_ATLANTA GA 30354_

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:   _RENNON L PRINE, JR._
_P. Box 93_
_GRIFFIN, GA30224_

an answer to the complaint which is herewith served upon you, **within 30 days** after service of this summons, upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Jacquline D. Wills
Clerk of Court
Superior Court Division

By_Sonya Brown-Hood_
Deputy Clerk

ORIGINAL SUMMONS.wpd

01/01/11

☐ Superior Court     ☐ Magistrate Court

**CLAYTON COUNTY, GEORGIA**

CASE NUMBER *2022 - CV - 02741-9*

*RENND L PRINEY Sr.*

Plaintiff ☐

VS.

*MICHAEL AKINS*

Defendant ☐ *#100*

*4220 INTERNATIONAL PKWY*

Address ☐

*ATLANTA GA 30354*

FOR CLERK'S USE ONLY:

Mailed copy to Pltf Atty ___/___/ 20___

*T.S. paid*

Garnishee ☐

Attorney or Plaintiff's Name & Address

*RENND L PRINEY Sr.*

*P.O. Box 93*

*GRIFFIN GA 30224*

Address ☐

Designate Party to be served by placing a check in box above.

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant ............................................................................................ personally with a copy of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant ............................................................................................ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of ......................................................................................... described as follows

age, about ............ years; weight, about .............. pounds; height, about ............... feet and ..................... inches, domiciled at the residence of defendant, at ................... A.M. - P.M.

**CORPORATION** ☐

Served the (defendant, Garnishee) ........ *Michael Akins* ........................................................... a corporation

by leaving a copy of the within action and summons with ...... *Saane* ................................................................... in charge of the office and place of doing business of said Corporation in this County, at ........... A.M. - P.M.

**TACK & MAIL** ☐

I have this day served the above affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class, in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant .......................................................................................................... not to be found in the jurisdiction of this Court.

The defendant is required to answer no later than ..................................................................... , 20........... , at the place stated in the summons.

This ..... *24* ..... day of ..... *April* ..................... , 20 *22*

.................................................................................
**DEPUTY SHERIFF, CLAYTON COUNTY,**

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

CLAYTON COUNTY, GA

2023 JAN 10  PM 4: 47

CHARAE D. CLEMONS
CLERK SUPERIOR COURT

Bennon L. Prine, Jr.
       Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA
"Stage and Picture Operators AFL-CIO Local
Union 479"

Michael Akins
    (Individually and Professionally)

J. Doe (Unknown Co-Conspirators)
    Defendants

Civil Action Number

2022-CV-02744-9

## THIRD MOTION FOR LEAVE TO FILE COMPLAINT

COMES NOW, the Plaintiff, and moves this court for leave to file a bill of complaint against the named defendants, and in support shows the court as follows:

Plaintiff has "good cause" for filing a complaint against the named defendants as shown herein.

Plaintiff's attached affidavit, titled, "Affidavit in Support of Ex parte Motion for Leave to File Complaint," is included here by reference as if fully recited here. The proposed complaint is also included here by reference as if fully recited here.

This motion invokes federal law and procedures only. This Motion for Leave to File Complaint is authorized by 29 USC 501(b)[1];   Jurisdiction to hear this motion is proper "in any State court of competent jurisdiction" (29 USC 501(b)). The proposed complaint contains questions of both state of Georgia and federal law claims.

---

[1] This is part of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA); 29 USC Labor. The heart of the LMRDA is Title I, which is fittingly called the *"Bill of Rights of Members of Labor Organizations."* This law protects and guarantees the rights of labor union members to sue their labor union. Before filing suit however, a plaintiff must file a motion with a court showing they have good cause to file said suit. This motion satisfies this requirement. A lawsuit that contains these federal causes of action cannot be maintained until this procedure is complete.

This court is being asked to hear this motion and the federal law claims under the theory of "concurrent jurisdiction;" which is to say that this court is being asked to hear this motion as a Northern District of Georgia federal court would, which includes applying the appropriate federal authority and procedures to the facts, and then issue an appropriate order. Citing *Yellow Freight System, Inc. v. Donnelly*, 494 US 820 (1990), in *Collins v. Dept. of Transp.*, 429 SE 2d 707 (Ga. Ct. of App. 1993) the court found:

> "Under our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' [Cits.] To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. [Cit.]" Id. at 823."

Thus, this court has the inherent authority to decide this federal question.

The service requirements[23] for this motion are found in the Federal Rules of Civil Procedure (FRCP) at:

### Rule 5. Serving and Filing Pleadings and Other Papers
(a) Service: When Required.
(1) *In General*. Unless these rules provide otherwise, each of the following papers must be served on every party:
(D) a written motion, except one that may be heard ex parte;

Since this motion may be heard ex parte, no service is required. The court does though have discretion to order service before the motion is considered. In a previous order, this court has ordered service be made on defendants before consideration. The proper service method, unless otherwise ordered, is found in the FRCP at:

Rule 5. Serving and Filing Pleadings and Other Papers

(b) Service: How Made.
(2) *Service in General*. A paper is served under this rule by:
(A) handing it to the person;
(B) leaving it:
(i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
(ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

---

[2] As amended to December 1, 2022
[3] This motion is not a complaint against any defendant.

A copy of the Motion and supporting documents was sent via certified mail to defendants; and though not required, an email with all documents was also sent to defendants. A copy of the USPS receipt, USPS proof of delivery and a copy of the sent email was filed with the court clerk's office and a courtesy copy sent by email to Judge Carter's listed email address for receiving courtesy copies ( JudgeCarterCourtesyFilings@claytoncountyga.gov.)   In an order dated December 05, 2022, it appears that the court desires a more formal service method and as such Plaintiff will ask the Clayton county sheriff's office (or other authorized process server) to serve this *Motion*.[4]

Neither congress nor the US Supreme court has unified the definition and requirements of what "Good Cause" means. The most commonly accepted authority is *Horner v. Ferron*, 362 F. 2d 224 (9th Cir. 1966).  The 11th Circuit adopted *Horner's* reasoning in *Erkins v. Bryan*, 663 F. 2d 1048 (11th Cir 1981).  The US Department of Labor offers some additional compare-and-contrast type details between the different circuits on their website found at:

https://www.dol.gov/agencies/olms/compliance-assistance/interprative-manual/500-union-safeguards .  (This is a very long page thus Plaintiff suggests the court skip down to the section titled, "Court Must Grant Leave to Sue.")

Plaintiff has met the burden of showing "Good Cause" and has laid this out in exhausting detail in his attached affidavit that shows, among other things: a) Plaintiff has standing, as evidenced by being a member of Local 479, and was in good-standing in the union on the date of filing the proposed complaint; b) The union was notified of basis for concerns and this motion includes a response letter showing that no resolution was possible using internal procedures; 3) The proposed complaint alleges violation of federal and state law and includes allegations to support them.

---

[4] Due to filing problems, Plaintiff recognizes that the court may not have had a complete file when issuing this order.  Plaintiff first filed the case using "eFile".  After 6 weeks with no response, Plaintiff visited the clerk's office and learned that they were short-staffed and this was an expected delay.  The first Motion for Leave to file complaint, filed with the original upload still hasn't appeared.  On a second attempt at using eFile, Plaintiff did not even receive an acknowledgement of upload.  Plaintiff has resorted to hand filing pleadings, but even this has had problems; ie. Plaintiff filed a document in one week and checked on it the next only to be told that no record of filing existed.  Plaintiff has refiled several documents not found by the clerk's office (while in the customer service line, Plaintiff heard other litigants complaining of the same issues.)  In the middle of December, 2022, Plaintiff visited the clerk's office to see if any responses or orders had been filed – and was told none had.  A court's order, dated December 05, 2022, was received by Plaintiff on January 04, 2023.  To date, no acknowledgment of any courtesy filings made to the Judge's courtesy filing email address has occurred.

Per *Erkin, supra,* a defendant can only challenge "good cause" based on issues such as plaintiff failing to follow the LMRDA's procedures or estoppel, and not based on disputing the proposed complaint's allegations. The *Erkin* court emphasized that the proposed complaint itself may not be attacked until after a good cause motion has been granted and the case filed and served on defendants – which is to say that any attack on the complaint itself must wait and be done through summary judgment procedures.

Plaintiff further shows the court that:

- The clerk of court has – rightfully – <u>not</u> - issued a summons in this matter;
- There is a "complaint" on file in the clerk's office, but this is a "complaint" in name only, it is a proposed complaint. It was submitted this way because of the eFile upload requirements. Had this been hand-filed, it would be shown as merely an attachment to this motion (and not as a separately filed complaint);
- No rights of defendants, substantive or otherwise, are affected by this motion. The rights at issue in this motion are solely those of Plaintiff's. The only rights at issue in this motion are Plaintiff's federally guaranteed rights to sue a labor union;
- Assuming, arguendo, that this motion is granted, the Plaintiff will then file a new amended complaint with the clerk's office showing court approval to file said complaint, the clerk will issue a summons, and service (or waiver of service) will then be done in accordance with the OCGA.

WHEREFORE THEN, Plaintiff respectfully requests that this motion be granted.

This the 7th day of January, 2023.

Respectfully Submitted,

Bennon L. Prine, Jr.
PO Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net

2022CV02744-09

EFILED
CLAYTON COUNTY, GA
7/28/2022 2:31 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## AFFIDAVIT IN SUPPORT OF EX PARTE MOTION FOR LEAVE TO FILE COMPLAINT

UNDER OATH, Bennon L Prine, Jr., resident of Griffin, County of Spalding, State of Georgia and who makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his knowledge:

### Overview of Case

The case discussed here is a union member suing a labor union. This union, by and through its business representative, Michael Akins, has intentionally and improperly enlarged the meaning of a word (wages) in the constitution and bylaws (contract) for the purpose of increasing assessment income. I am coming before the court, asking it to interpret this contract in accordance with Georgia law and issue such orders as needed to bring this union in compliance with applicable law.

### Reasons for seeking exparte leave of court

I want to file a lawsuit in Clayton County, GA Superior Court. In researching the laws applicable to my case and the predicted response of the defendants, several issues and procedures are not clear - in that there is no on-point precedent in either Georgia or the 11th Circuit federal court system to guide either me or this court. What precedent is available in other federal circuits in several situations conflict and there is no pending case before the US Supreme Court to resolve these conflicts of law. So what I am attempting to do is identify any procedure, that might be adverse to my position if not complied with, and comply with it out of an abundance of caution. Doing this should benefit defendants by having fewer areas to attack, me by having fewer motions to defend and this court by having fewer motions/ arguments to resolve. This document is intended to give the court deeper insight into this matter.

There is absolutely nothing in either Georgia law or precedent that requires a plaintiff to a contract dispute to request leave of the court to file a complaint. However, when a federal law is listed in support, or a claim of violation of a federal law is attached to a state complaint, this leave might be required.

Page 1 of 9

Nothing in the complaint gives jurisdiction to the National Labor Relations Board.

There are several federal laws at issue in the proposed case and at least 3 different federal laws that bring intricacy to this lawsuit. All are found under Title 29. The first is

### SUBCHAPTER VI—SAFEGUARDS FOR LABOR ORGANIZATIONS

### § 501. Fiduciary responsibility of officers of labor Organizations

### (a) Duties of officers; exculpatory provisions and resolutions void

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

A plain reading of the above paragraph suggests that this is not applicable to the submitted complaint. However, some federal court circuits[1] have ruled that this paragraph covers every

---

[1] Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963) ; several other circuits have found this holding persuasive – the 11th Circuit is not one of them.

2022CV02744-09

breach of fiduciary duty by a union officer. If the conflicts in the different federal circuits were resolved to find this interpretation is the proper one, then the next paragraph is applicable and this leave of court is required.

> **(b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses**
>
> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown[2], which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

## Defendants are guilty of Criminal Conduct

When most investigators, attorneys and judicial officers first look at a complaint, the first thing they usually do is - "peel the onion" – strip back every layer of the matter until its core issue is laid bare.

The core issue here, and what is laid out in the complaint, is a criminal violation of "The Hobbs Act of 1946." This case is a reincarnation of a well-worn theme: take money from labor union

---

[2] "Good cause shown," is understood to mean "not frivolous."

members - where no legitimate claim to such money exists - by means of threat of economic harm.

Under "The Hobbs Act of 1946," 18 U.S.C. § 1951[3]

Section 1951 - Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

Thus, the 2 elements to a Hobbs Act extortion conviction are: 1) Interference with commerce and 2) extortion. In this matter, (1) state borders and distance aside, for all practical purposes, Georgia is part of the back yard of Hollywood, California and New York – and the business of making movies and television shows does affect interstate commerce. While each payroll company usually maintains an office in Georgia, pay is mostly calculated in California or New York, and the actual checks are then printed and mailed from a second state, which itself is drawn on a bank from a third state. Most of the yearly form W2's show our employer to be located in California or New York. The actions of defendants interfere with the process of Local

---

[3] Current through P.L. 117-148 (published on www.congress.gov on 06/16/2022)

479 members receiving all pay owed; (2) Defendants request money they are not entitled to (meal penalty payments) be paid to them, and should any member refuse to voluntarily pay defendants, they are placed on a bad standing list and eventually expelled from the union – destroying many opportunities for employment.

Simply stated, this is an illegal "pay to play" scheme. Either members pay defendants money not owed to them, or they might not work.

## Civil Case

This criminal matter[4] is being restated so that it can be prosecuted as a civil matter. Restated as a civil complaint, at its core this is a contract dispute and every other claim is derivative of this state-law claim.

## Actions taken prior to filing this complaint

I received a statement from Local 479 (via email), stating that I owed a sum of money (Plaintiff 0001); this document did not, however, specify what the money was owed for. I made a number of phone calls to office personnel, none of which had an explanation for what the charge was for. Trying a number of different calculations, what best fit was that I was being assessed for "meal penalties." I then sent a letter (via email) asking for a formal reply stating specifically what they claimed I owed money for (Plaintiff 0002). No response was ever received.

Believing this was a mistake; I next requested and attended a meeting with the union Business Representative, Michael Akins. During this meeting he confirmed that this charge was an assessment for meal penalties; after which I told him that I believed that this practice was illegal and gave him my reasons for concluding this – and requested that the union stop these assessments.

Also in attendance was the then Secretary-Treasurer, Frank Hatcher. Hatcher asked if this matter could result in litigation; and I stated that if this practice continued, then yes, litigation can be expected. He then demanded that the meeting be concluded – and it was.

---

[4] This case has neither been presented to, nor reviewed by any prosecutor.

2022CV02744-09

### Formal response to meeting

Akins followed up with a letter attached to an email (Plaintiff 0004). According to the letter, Akins discussed the matter with Hatcher and "our attorney Bob Giolito[5];" and then responded with Gioloti's opinion.

This letter does tacitly admit all factual allegations in my complaint. This letter also shows the framework of defendants' defense. This can be seen by the statement, "it is the Local's interpretation of its own constitution that governs the terms and requirements of Local membership."

With nearly a century of labor union history to look back on, courts have established policies on resolving labor union disputes. One such policy is for courts look to see if a union's interpretation of its own constitution is "reasonable." What is being referred to here is judicially created "policies" on adjudicating union cases. This judicial policy has, to my knowledge, never been codified at either a federal or state level. Defendants appear to want to use judicially created *policy* as a tool of defense. What defendants are suggesting here is that judicial policy supersedes both state and federal statutes and regulations. If defendants' interpretation is found to be correct, then a union can, with judicial agreement, waive compliance with any number of distasteful laws by merely having a union leader "interpret" their constitution and bylaws in such a way as to relieve them of compliance requirements. I know of no law, code or holding that would allow a court policy to create and/ or diminish substantive rights as defendants seem to suggest. To do so would create a second and superior legislative branch and a violation of both federal and state constitution's separation of power provisions. The state of New York court system is one that does have a large library of precedent in these matters, and if found persuasive in this court, this court would find that defendants are cherry-picking policies and misstating them. From <u>MATTER OF LASONDE v. Seabrook</u>, 89 AD 3d 132 - NY: Appellate Div., 1st Dept. 2011:

---

[5] According to required union filings with the Department of Labor, Local 479 has paid Giolito for "Legal Services" in each year of the last 10 years as an independent contractor (10 years is the maximum searchable). According to the Georgia Bar Association license verification site, Robert S Gioloti is listed as "INACTIVE IN GOOD STANDING." (Plaintiff 0005) According to the GA Bar Association, in a telephone call, Giolito's law license has been inactive since 2011. While Giolito was formerly licensed to practice law in Georgia, he is NOT authorized to practice law in Georgia currently. A wider search does show that he has an active law license in the state of California.

2022CV02744-09

> Generally, a court considering the validity of actions taken by a union official must determine whether said actions are authorized under the union's constitution or bylaws (*Allen,* 109 Misc 2d at 184). In so doing, the court must assess the union official's claim that his or her actions are authorized under the constitution or bylaws by (1) independently reviewing the constitution or bylaws "in accordance with the general rules of construction appertaining to contracts" and (2) determining whether the union official's interpretation is a reasonable interpretation of the constitution or bylaws (*id.*).[9]

As the court can see, unions do not get to pick and choose what laws apply to them. If the determination of this case were to be decided by these standards however, the court need only answer a single question: "Is violating statutory law a reasonable act of a labor union official?"

However, this defense is short-sighted because the inquiry does not end here. Labor unions are NOT autocratic institutions; so unless a coronation is held and Akins is dubbed, "King Mike," Akins must follow federal law, state law, and the will of the members as spelled out in the constitution and bylaws. This inquiry does not turn on the opinion of Akins; what matters here is what the rank-and-file membership decides and authorizes in accordance with the following statute:

### TITLE I—BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS

**Bill of Rights**
(29 U.S.C. 411)
SEC. 101. (a)

(3) DUES, INITIATION FEES, AND ASSESSMENTS.—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except—

2022CV02744-09

(A) in the case of a local organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot;

NO vote authorizing assessments of Meal Penalties has ever been held. Until such time as the rank-and-file membership authorizes an increase of assessments, to include meal penalties, meal penalties payments may not be assessed.

## SUMMATION

As the court can see, there are plenty of possible directions for this case to take. Defendant's likely legal strategy though is predictable: deny and delay – and then look for a mistake on my part and seek a technical victory. A number of legal detours are expected before the merits of the case are addressed.

After all detours are resolved, what will be left is as follows:

The US Supreme Court ruled that a union's constitution and bylaws is a ""contract between member and union and that "The courts' role is but to enforce the contract.""[6]

The contract at issue here was created in Georgia; between a recognized Georgia entity and its members, who are both Georgia residents; for the benefit of this Georgia entity and Georgia residents; where both are subject to Georgia laws. The interpretation of this contract is thus subject to the laws of the state of Georgia.

The issues complained of were done by an individual and an organization that has its principal place of business for the last 8 years within the physical boundaries of Clayton County; and the actions complained of were performed and/ or orchestrated out this Clayton County Office.

---

[6] NLRB v. Allis-Chalmers Mfg. Co., at 182, 388 US 175 - Supreme Court 1967

2022CV02744-09

This court will then be tasked with applying Georgia law to a Georgia contract, and issue orders consistent with this application.

I am now asking this court to grant this motion and allow the case to move forward.

Further, Affiant Sayeth Not.

WITNESS my signature, this the $\underline{2\,7}$ day of July, 2022.

_____
Signature of Affiant

Sworn and subscribed before me this $\underline{27^{th}}$ day of July, 2022.

_____
Notary Public                                        Seal

TIFFANY HOLLIS
Notary Public - State of Georgia
Spalding County
My Commission Expires May 18, 2026

2022CV02744-09



**I.A.T.S.E. Local 479**
4220 International Parkway
Atlanta, GA 30354
Phone: (404) 361-5676
Fax: (404) 361-5677

Date :   7/26/2017
Invoice # :  479
Total Invoice Balance :   $ 
Total Due Now :   $

## INVOICE

Bill To:

Bennon Prine
P.O. Box 93
Griffin, GA, 30224

| Chg Date | Pay By | Type | Description | Amount | Amt Paid | Amt Due |
|----------|--------|------|-------------|--------|----------|---------|
| 7/26/2017 | 8/25/2017 | Assessment | Wonder View FKA Stranger Things, S2 Audit | $ | | $ |
| | | | | **Total Due:** | | $  |

To pay by credit card, please fill out form below.
**Please make checks payable to: I.A.T.S.E. 479**
*Please cut along this line and return LOWER portion with your payment.*

| Member Name | Invoice # | Invoice Date | Amt Due |
|-------------|-----------|--------------|---------|
| Bennon Prine | 479-00084157 | 7/26/17 | $ |

**Credit Card:  AMEX  DISCOVER  MASTERCARD  VISA**

Name on Credit Card: _____

Credit Card Number: _____

Exp. Date: _____    CSC Security Code: _____

*Remit payment to:*
*I.A.T.S.E. Local 479*
*4220 International Parkway*
*Atlanta, GA 30354*

Billing Zip Code: _____

Plaintiff 0001

2022CV02744-09

# Bennon L. Prine, Jr.
Post Office Box 93
Griffin, Georgia 30224
678-995-5414

22 August 2017

I.A.T.S.E. Local 479
Attn. Billing Department
4220 International Parkway
Atlanta, GA 30354

Ref:  Claim for additional assessment fees due to work performed for "Cranetown Media LLC" (#4093) and payroll employer "Cast and Crew" on production series "STRANGER THINGS,"

**Ladies and Gentlemen:**

I have audited my pay records from this production and all owed assessments appear to have been listed, calculated correctly and presumably sent to Local 479 – NO ADDITIONAL ASSESSMENTS ARE OWED BY ME TO LOCAL 479 for representation on this production.

I wonder however, is Local 479 attempting to collect an assessment on meal penalties?

This is a formal demand for strict proof of insufficient payroll deductions for union dues assessments for the show "Stranger Things" Season 2 or in the alternative that any accounting records be updated to reflect that no such fees are owed.

**Facts:**

1)  I received six paychecks from work performed on this show and identified as:

| Check Number | Gross Wages | Union Dues Withheld | Attachment Number |
|---|---|---|---|
| 75343872 | | | Member 3 |
| 75404330 | | | Member 4 |
| 75442682 | | | Member 5 |
| 75455618 | | | Member 6 |
| 75469036 | | | Member 7 |
| 75482345 | | | Member 8 |
| | | | |
| Gross Wages Total | | | |
| Total Union Dues Paid | | | |

Page 1 of 2

Plaintiff 0002

2022CVQ2744-09

2) On, or about, 26 July 2017, I received as an email attachment a pdf file *request for payment* which at the bottom shows the document is intended to be I.A.T.S.E. 479 Invoice number **479-00084157.** (Member 9)

In the body of the document, it indicates that I owe money to I.A.T.S.E. 479 for "Wonder View FKA Stranger Things, S2 Audit."

3) This *request for payment* document however fails to comport to commonly expected "invoice" call-outs[1] and thus does absolutely nothing to help me determine what may be deficient in the payment of representation dues; i.e.

   a) Is I.A.T.S.E. 479 claiming that the dues that were withheld were not remitted to I.A.T.S.E. 479 and that it is the union member's responsibility to guarantee such payment performance?

   b) Is I.A.T.S.E. 479 claiming that the wrong percentage number was used in calculating gross wages assessment withholding?

   c) Is I.A.T.S.E. 479 claiming that I received wages that were not reflected on some paycheck?

   d) Which specific check, or checks, does I.A.T.S.E. 479 claim the employer failed to properly withhold assessments from? And what amount is claimed owed from this/ these specifically identified payroll check(s)?

**Discussion and Conclusion**

Union members sign a withholding authorization with each new employer authorizing them to withhold three percent of gross wages and to remit same to I.A.T.S.E. 479. Three percent is the proper amount to withhold and is in accordance with I.A.T.S.E. 479 by-laws (Article VIII, Section 1). Employer withheld 3% of my gross wages while in their employ.

My gross wages for this production were $___; three percent of $___ equals $___ (Rounded up equals $___). Employer withheld $___ as union dues. Accordingly, no additional representation fees appear to be owed.

**WHEREFORE THEN,** I respectfully demand that I.A.T.S.E. 479 provide strict proof to substantiate its claim for additional payment – or in the alternate, update its records to show no additional fees are owed.

With kind regards,

/s/ Bennon L. Prine, Jr.

---

[1] A Google search for the suggested contents of an "invoice" is encouraged. Also, a Google search for "statement" will show that this document comports to the requirements for a "statement" but not an "invoice."

2022CV02744-09



IATSE Local 479      4220 International Pkwy
Suite 100
Atlanta, GA 30354
T  404-361-5676
F  404-361-5677
office@iatse479.org
http://www.iatse479.org

September 25, 2017

Ben,

Thank you for coming in last week. After our meeting, I discussed your concerns with Secretary/Treasurer Frank Hatcher as well as with our attorney Bob Giolito. Please see Bob's response, which I copied into this letter from an email he sent.

"Mike, you asked for my legal opinion whether the Local may legitimately collect work dues on meal penalties. You informed me that this has been the historical practice of the Local, and that it conforms with the practice followed by other IATSE local unions.

In my opinion, the Local may collect work dues from meal penalties paid to members on covered productions. The Local is a private, voluntary association and, as such, it is entitled to make, interpret, and enforce its own rules of membership. Article VIII, Sec. 1 of the Local's constitution provides in relevant part that members shall pay "working dues of 3% of gross wages earned under an IATSE agreement." Because it is a private association, the Local has inherent authority to interpret the term "gross wages" as encompassing all employee earnings from covered work, including meal penalties and other contractually required payments. It does not matter that the government, NLRB, IRS, or other third party may interpret the term differently, it is the Local's interpretation of its own constitution that governs the terms and requirements of Local membership. It should not be overlooked that meal penalties would not exist but for the Union's efforts to require them as a term and condition of employment. Thus, assessing dues against earnings from meal penalties is both in line with and supports the Union's traditional functions as collective bargaining representative.

If you have any other questions, please contact me. Sincerely, Bob"

Please be aware that while your account was in dispute, we removed the late charges associated with your assessment. The assessment has been reinstated with a charge date of today, 9/25/17, and will be due in 30 days. You are in good standing at this time.

In Solidarity,

Michael Akins

Michael Akins
Business Agent, IATSE Local 479

Ray Brown          Whit Norris          Michael Akins          Frank Hatcher
President          Vice-President       Business Agent         Secretary-Treasurer

Member of the Georgia AFL-CIO          Member of the Atlanta Labor Council

Plaintiff 0004

## ACCREDITATIONS

### LICENSES

O State of Admission - GA
Admitted On - May 19, 1974
INACTIVE MEMBER IN GOOD STANDING

## ABOUT MY PRACTICE

## EDUCATION

O University of Wisconsin-Madison

## ASSOCIATIONS & AFFILIATIONS

### SECTIONS

Labor & Employment Law

CloudLaw, PBC dba RELIAGUIDE • support@reliaguide.com
© 2022 CloudLaw, PBC • All rights reserved.

UP

Plaintiff 0006



IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

Bennon L. Prine, Jr.
                    Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA "Stage
and Picture Operators AFL-CIO Local Union
479"

Michael Akins (Individually and professionally)

J. Doe (Unknown Co-Conspirators)
                    Defendants

Civil Action Number

2022CV02744-09

### AMENDED VERIFIED COMPLAINT

Count 1  Breach of Contract

Overview

This is a contract dispute.  The parties disagree over the meaning of a single word: "Wages."  This court is being called upon to define "wages," and equally important, what does not meet the definition of wages, and issue rulings consistent with it;

Defendant collects a portion of Plaintiff's wages earned for representing him to employers.  By enlarging the definition of "wages," Defendant is able to assess, and collect substantially higher fees from Plaintiff.  Plaintiff claims in this lawsuit that Defendant has impermissibly enlarged this word - wages - to include non-wage income and as a result, has previously, and is now, collecting more fees than it is entitled; and seeks to have Defendant limit its fees to what it has rightfully earned — according to the terms of said contract — and make reparations for past bad conduct;

Plaintiff met with Defendant's "Business Agent" to discuss this matter, and showed him the definitions from a dictionary, the Internal Revenue Service (IRS) definition and legal precedent,

Business Agent responded (in summation) that Defendant (by and through him – its business agent) may define "wages" however it sees fit. Plaintiff, not finding any language in their contract that allows Defendant to unilaterally alter the ordinary and usual definition of a word disagrees – and this lawsuit follows;

The Plaintiff, Bennon L. Prine, Jr., COMES NOW before this court seeking declaratory judgment, injunctive relief to prevent similar future conduct, and an order requiring reparations for past bad conduct; and in support alleges:

**Parties**

1) **Plaintiff,** Bennon L. Prine, Jr., is a *sui juris* individual who earns his living working in the motion picture/ video production industry. Plaintiff is a member of Local 479 in good-standing;

2) This production industry includes, but is not limited to, making movies and shows for theater, television and streaming services. Work in this industry is primarily project-based, which means employment will have a definitive beginning and end. Work on each of these projects varies in duration from 1 day to many months, according to the needs of the production, and as such, an employee will usually have several different jobs each year. To find work and to deal with these employers, Plaintiff has joined a "Labor Union," which helps him find these work-projects and which negotiates (within limits) the terms and conditions of employment. If a problem with pay or working conditions occurs, the "labor union" works to resolve these also. This labor union collects a portion of Plaintiff's wages for performing such services;

3) **Defendant** is an unincorporated entity and a "labor organization" as defined in O.C.G.A. 34-6-20(4). According to its charter dated October 1, 1986, which granted the formation of a branch of the "International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada," it is to be known as "Studio Mechanics Local No. 479." In required filings with the federal government, this union is known as "Stage and Picture Operators AFL-CIO Local Union 479." This union is commonly referred to as "Local 479" and this is how it will be referred to in pleadings;

4) **Defendant** Michael Akins is the Local 479 "Business Representative" and is often times referred to as a Business Agent or just "BA." This is an elected position within Local 479 and a full-time paid job. He maintains an office within the Local 479 union hall.

## Jurisdiction and Venue:

5) This court has subject-matter jurisdiction pursuant to Ga. Const. Art VI § II, Para. VI.;

6) Labor unions may be sued (OCGA 9-2-25(a));

7) Unless exclusive jurisdiction rests with a federal tribunal, a Superior Court may exercise original jurisdiction over complaints that contain federal questions;

8) **Plaintiff.** By filing this lawsuit in this court, the Plaintiff has voluntarily subjected himself to the jurisdiction and venue of this court;

9) **Defendant,** Local 479, maintains its base of operations at 4220 International Pkwy #100, Atlanta, GA 30354. This address is physically located within the boundaries of Clayton County, Georgia;

10) **Defendant,** Local 479, has had its physical base of operations located in Clayton County Georgia for over 8 years;

11) **Defendant,** Local 479, has continuously transacted business within the boundaries of Clayton County, Georgia for over 8 years;

12) **Defendant,** Michael Akins, the Local 479 "Business Representative," may be found in Clayton County where he maintains an office and regularly conducts business;

## Procedures Completed Before Filing Suit

13) Plaintiff met with the Business Representative, Akins, in an attempt to have him stop the complained of conduct;

14) Frank Hatcher, Local 479's then Secretary and Treasurer, was also in attendance;

15) Hatcher asked if this matter could result in litigation; Plaintiff responded that if the union continued demanding meal penalty assessments, then yes, litigation should be expected. Hatcher then demanded that no further discussion take place and the meeting be closed – and it was;

16) A formal reply was sent to Plaintiff claiming that Local 479 may define a word anyway it sees fit – and is not beholden to the usual and common understanding of a word;

17) The Local 479 Constitution and Bylaws does not contain any requirements that need to be met before a lawsuit is filed;

18) Plaintiff sought leave of the court to file this complaint, through motion and verified affidavit;

19) If filed, the court has granted Plaintiff's motion for leave to file this complaint.

**Service of Process**

20) To lower costs of this action, Plaintiff intends to ask defendants to waive service. Should either defendant refuse to waive service, then any Officer of Local 479 may be served this complaint. However, the Business Representative, Michael Akins, is the preferred recipient, since all complaints may be served at one time and at one location; he maintains an office at Local 479's physical address listed above. If he refuses service, Michael Akins will need to be personally served.

**Membership Contract of Service**

21) Local 479 has a Constitution and Bylaws;

22) This Constitution and Bylaws is a contract between Local 479 and its members;

23) Local 479 is subject to the Labor-Management Reporting and Disclosure Act (LMRDA) of 1959, as amended, and must file electronic reports with the Office of Labor-Management Standards (OLMS) of the Department of Labor (DOL);

24) The latest amended and enacted Constitution and Bylaws is one of the documents required to be filed with the DOL;

25) Plaintiff will provide the court with an as-published copy of this contract. Independent verification of authenticity may be had by requesting a current copy of the Local 479 Constitution and Bylaws, as filed with the DOL, by requesting it through OLMS at 202-693-0123 or olms-public@dol.gov. Information about this service may be found at https://www.dol.gov/agencies/olms/public-disclosure-room ;

26) Among other things, this Constitution and Bylaws details the fees that members will pay to Local 479 for services rendered to them;

27) These provided services include, but are not limited to, negotiating the terms and conditions of member employment with employing entities (within limits). These successful negotiations are memorialized in a signed contract between the employing entity and Local 479 (This "Labor Contract" is more commonly known as a "Collective Bargaining Agreement").

**Definitions and Ordinary Usage**

28) From Black's Law Dictionary 5th edition:

   a) Wages means: "A compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production."

   b) Liquidated Damages means: "...[A] specific sum of money [that] has been expressly stipulated by the parties to a bond or other contract as the amount of damages to be recovered by either party for a breach of the agreement by the other."

**Meal Penalties**

29) All allegations recited in every other section of this complaint is included here by reference as if fully recited here;

30) Every three years (or so), production companies and labor unions meet and negotiate a series of generic contracts to cover specific working conditions, wages, and other payment contingencies that apply to each specific type of production. (Though the contracts may be reviewed every three years, all of them are not renegotiated at the same time.);

31) For brevity in this complaint, the "Area Standards Agreement" (ASA) will be referenced. All other contracts have similar worded clauses that apply to the respective Collective Bargaining Agreements;

32) As part of these collective bargaining agreements, employers and unions specify the earliest and latest times for workers to begin a meal period and also the minimum time employees will have to consume said meals. The language showing this in the Area Standards Agreement is found as follows:

## ARTICLE 4 – MEALS

(A) Meal periods shall not be less than one-half (½) hour nor more than one (1) hour in length…

(B) The employee's first meal period shall commence within six (6) hours following the time of first call for the day; succeeding meal periods shall commence within six (6) hours after the end of the preceding meal period. An employee's first meal period shall commence no earlier than two (2) hours after such employee reports for work except that persons called up to two (2) hours earlier than the regular crew call who are provided with a non-deductible hot breakfast and time to sit and eat (within one (1) hour before or after the regular crew call) will have their first deductible meal period due at the same time as a meal is due for the regular crew.

(C) Meal intervals may be extended twelve (12) minutes without penalty when used for completing a camera setup in progress or one-half hour for wrap if the employee is dismissed within one-half hour. If the employee is

not dismissed within said one-half hour extension, meal penalty shall be computed from the end of the sixth hour following the previous meal.

33) As part of these collective bargaining agreements, to avoid litigation over the issue, employers and unions have specified how employees will be compensated if/ when an employer violates the above provisions of the CBA contract.   The Area Standards Agreement language showing this is:

### ARTICLE 4 – MEALS

(D) (1) Except as provided in subparagraph (2) below, meal penalty for delayed meals shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 7.50

Second half-hour meal delay or fraction thereof …$10.00

Third and each succeeding half-hour meal delay or fraction thereof.. $12.50

(2) Meal penalty for delayed meals for employees employed on television motion pictures shooting in a studio shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 8.50

Second half-hour meal delay or fraction thereof $11.00

Third and each succeeding half-hour meal delay or fraction thereof. . $13.50

34) All collective bargaining agreements signed by production companies/ employing entities and Local 479 set forth these meal penalty provisions;

35) "Meal penalties" are paid to employees because the employer has violated a CBA contract provision;

36) Members regularly collect meal penalties;

37) Since the beginning of the Covid-19 pandemic, some production companies have completely done away with meal times, choosing instead to sometimes pay over 30 hours a week in meal penalties   A specific amount of damages cannot be pled because this amount may increase with each work day;

38) The additional pay and the assessments are not an insignificant sum.  Using the above example and rounded numbers.  30 hours X $25/ hour = $750/wk x 1000 workers = 750000/wk gross meal penalties per 1000 workers X 3% = $22,500 per week Local 479 is illicitly collecting each and every week.  On the date of filing, Local 479 had over 7000 members, with each and every member subject to the same contracts as Plaintiff.  On average roughly half of the members will be in a job where they will collect meal penalty payments.  As such, the 1000 member example should be considered a low number and the actual "take" significantly higher;

39) Meal Penalty payments are the sole property of the employees who are paid them.

**Violation of Membership Contract**

40) As it relates to this complaint, Local 479 has, and is, violating the membership contract by enlarging the definition of "wages" to include "meal penalties;"

41) Local 479 is now assessing members three per cent (3%) of what these members receive as payment for "meal penalties;"

42) Plaintiff specifically alleges that assessing members for any contractual liquidated damages (Meal Penalties) payment is a violation of the Constitution and Bylaws;

43) "Liquidated damages" are personal income, but NOT wages.  Local 479 is not entitled to assess all personal income received from work on a production – only wages;

44) Meal penalties are not wages.  No matter how early, how late, or how many hours an employee works, such work will not trigger the meal penalty clause of any CBA.  No matter how much, or how little, an employee accomplishes during working hours, such

accomplishments will not trigger the meal penalty clause of any CBA. There is absolutely nothing that an employee can do to trigger meal penalties payments – Only the actions, or inactions, of an employing entity can trigger meal penalties. And these actions or inactions must be a violation of a contract's provisions;

45) The section of the Constitution and Bylaws that is being violated is as follows:

ARTICLE VIII: REVENUES

SECTION 1. DUES AND INITIATION FEES

The dues payable by each member, except retired and honorary members, shall be the total of the applicable International Stamp Dues plus twelve dollars ($12.00), plus working dues of **three per cent (3%) of gross wages** · earned under an IATSE agreement in the craft and/or geographical jurisdiction of this Local.

46) Aside from the "stamp dues", this (above) paragraph clearly shows that Local 479 is entitled to "**three per cent (3%) of gross wages** earned under an IATSE agreement" – and NOTHING more;

47) Nothing in the Constitution and Bylaws allows for a union officer to unilaterally expand, enlarge or create any definition of "wages" other than how it is ordinarily understood and defined;

48) While Local 479 members may choose to define "wages" in a manner not common to ordinary-and-customary, legal, and accounting, and "Internal Revenue Service," understanding, they have not done so;

49) Unless, and until, the Local 479 Constitution and Bylaws are amended to reflect a different meaning, Local 479 must abide by the ordinary-and-customary meaning of words and phrases found its Constitution and Bylaws;

50) Nothing in the Constitution and Bylaws allows Local 479 to receive any portion of payments to members for "meal penalties;"

51) If members do not pay to Local 479 an amount equal to three per cent (3%) of any "meal penalties" payments they receive from employers, Local 479 will place them in "Bad Standing" with the union, and then eventually expel them from the union;

52) Most hiring productions that have entered into a collective bargaining agreement will not, or at least prefer not to, hire employees that are not union members.  Not having IATSE union membership is tantamount to being fired, or non-hirable since most production companies will refuse to hire non-union members;

53) Local 479's message to members is clear, pay us or don't work in the movie production industry;

54) The breaches of contract complained of here have been occurring each and every week for at least eight (8) years[1], and such breaches are expected to continue into the future[2];

55) Local 479 members do not now and have never authorized employers to withhold meal penalties assessments from their pay[3];

56) Employers categorize meal penalty payments as "meal penalty" payments.   These payments are not comingled under any other withholding category[4];

57) Each and every successive meal penalty assessment is a separate and distinct claim for breach of contract;

58) Local 479 has an obligation to follow and confine its conduct to what is allowed in the Local 479 constitution and bylaws;

59) By breeching the mandates found in the Local 479 constitution and bylaws, Local 479 has failed its responsibilities to its members;

---

[1] Eight years is the length of time that Plaintiff has been a member of this labor union.
[2] Unless this court issues such orders as may be required to prevent such future conduct.
[3] A copy of the standard Local 479 employer withholding authorization is attached at Plaintiff 007.
[4] A copy of one of the checks that Local 479 initially claimed that meal penalty payments were owed on is attached at Plaintiff 0008.  (The gross wages of this check were higher than usual).

60) The failure of Local 479 to honorably and faithfully discharge its responsibilities to its members is the proximate cause of the injuries complained of;

61) The failure of Akins to properly supervise union employees and to honorably and faithfully discharge his responsibilities to Local 479 members is the proximate cause of the injuries complained of;

62) WHEREFORE THEN Local 479 has breached the contract between it and its members in violation of the provisions of OCGA 13-1-1 et seq.

## Counts 2 through 7

### Overview

63) Counts 2 through 7 includes 6 claims that for brevity and economy are presented under one heading since they share of a common set of facts. These claims include: 3 claims of "tort of conversion," violation of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3); violation of OCGA 16-8-3 - Theft by deception, and violation of OCGA 16-14-1 et seq. RICO (Racketeer Influenced and Corrupt Organizations Act);

64) All claims and allegations of Count 1 are included here by reference as if fully recited here;

65) Michael Akins is the Local 479 "Business Representative;"

66) Michael Akins (Akins) has been the Local 479 "Business Representative" for over eight (8) years;

67) The duties and responsibilities of the Local 479 Business Representative are, and can be found in the Local 479 Constitution and Bylaws at:

### ARTICLE VI: DUTIES OF OFFICERS, TRUSTEES, AND DELEGATES

### *SECTION 3. BUSINESS REPRESENTATIVE*

The Business Representative shall represent the Local at all times in all dealings with employers, pursuing all avenues of employment for members

in the Local's jurisdiction, negotiating all minimum Contracts and Agreements, supplying all employers with current directories of members and organizing the unorganized.

The Business Representative shall have the right to refer any member in good standing, subject to qualifications required by the employer and as the situation so warrants.

The Business Representative shall have full charge of the Business Office of this Local, and may, with the approval of the Executive Board, and as funds permit, employ an Office Manager and other employees as necessary. Such employees shall be under the direct supervision of the Business Representative to operate the business affairs of the Local and to assist the Officers of this Local in their official duties.

Compensation of all office employees shall be subject to the approval of the Executive Board...

68) As Business Representative, Akins:

    a.  Hires office staff;

    b.  creates and implements the policy these employees work under;

    c.  supervises the office staff;

    d.  Created an auditing section;

    e.  Directed, and still directs, the office staff to assess "meal penalties;"

    f.  Directed, and still directs, the office staff to collect "meal penalties" payments from members when a payroll deduction of these assessments is not made;

    g.  Directs the office staff to place members who have not paid "meal penalties" assessments into a "Bad Standing" list;

    h.  If a member does not timely pay fees claimed owed, and cure any "Bad Standing," they are expelled from Local 479 membership;

    i.  The creation of records, that purportedly show the non fulfillment of member responsibilities, when no such responsibility actually exists – such as demanding payment for meal penalty assessments – is a form of coercion and/ or extortion, because any such refusal to acquiesce carries with it the penalty of membership expulsion from Local 479.

69) Akins has both a job obligation and a fiduciary responsibility to the Local 479 union and its membership to conduct and comport his actions in such a manner that is lawful under both federal and state of Georgia law;

70) No other Local 479 officer, other than Akins, has the constitutional authority to implement office worker policy, direct or supervise the Local 479 office staff;

71) Akins has demanded that Employers and/ or Payroll companies withhold meal penalties assessments from members' paychecks and turn said monies over to Local 479 – all without authority, cause or justification;

72) Akins has created, or caused to be created, a separate LLC, namely, Shadow Data, LLC, for the purpose of collecting and aggregating member financial information for the purpose of exacting more monies from them;

73) Akins DOES NOT have the authority to define words, or enlarge their meaning, outside of their usual and customary meaning;

74) The Local 479 membership, by secret ballot vote, may enlarge or define any word in any manner it sees fit;

75) The Local 479 membership has never voted to enlarge or define any word outside of its usual and customary meaning;

76) The Labor Management Reporting and Disclosure Act of 1959 (also "LMRDA" or the Landrum–Griffin Act) grants certain rights to union members and protects their interests by promoting democratic procedures within labor organizations, including, but not limited to:

    a. Guarantees union members equal voting rights and free speech and assembly rights;

    b. To raise "dues, initiation fees, and assessments," 29 U.S.C. § 411(a)(3) requires "...majority vote by secret ballot ..."

77) The rights guaranteed under the LMDRA Bill of Rights are the personal intangible property of each and every labor union member;

78) Local 479 has NEVER voted to assess Meal Penalties;

79) By fiat and artifice, Akins has implemented, and continues to demand, meal penalty assessments;

80) When Akins first took office, he had obligation to assess the actions of his office and the actions of Local 479 and to determine if such actions were in-fact legal - and to intercede and stop any found illegal actions. This responsibility is an ongoing and continuous obligation of the "Business Representative;"

81) Akins has failed to take any action to stop illegal actions by himself, his office and/ or that of Local 479;

82) Akins has told and held out to at least one pay check processor (Cast and Crew), that meal penalties are wages in an effort to have them withhold assessments on member paychecks and then turn over said funds to Akins and/ or Local 479;

83) Akins has failed to stop/ correct the withholding of meal penalty payment assessments from at least one paycheck processor, who, once withheld, would turn over said monies to Local 479;

84) When meal penalty payments, were received from payroll processors, Akins and/ or Local 479 failed to refund them to the members, instead choosing to keep this money for their own use;

85) Akins failure to take action and stop illegal action of his office and that of Local 479 is the direct and proximate cause of Plaintiff's injuries;

86) By implementing, and or continuing to assess, meal penalty payments Akins has thereby extorted, stolen, impinged, usurped, abridged, interfered with and denied Local 479 rank-and-file membership intangible personal property rights under the LMRDA;

87) Akins and/ or Local 479 has intentionally deceived new and old members alike by telling them that meal penalties payments are wages;

88) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions in such a manner that is lawful under both federal and state of Georgia law;

89) Akins has failed his fiduciary responsibility to conduct and comport is actions in a lawful manner under both federal and state of Georgia law;

90) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions and discharge the office of Business Representative in compliance with Local 479 constitution and bylaws;

91) Akins has NOT comported his actions and discharged the office of Business Representative in compliance with Local 479 constitution and bylaws;

92) Akins failure to comply with federal and state law is the proximate cause of the injuries complained of;

93) Akins failure to honorably and faithfully discharge the fiduciary responsibilities of the office of the Business Representative is the proximate cause of the injuries complained of;

94) Akins has exceeded and abused the powers of the Office of the Business Representative;

95) Akins exceeding and abusing the powers of the Office of the Business Representative are the proximate cause of the injuries complained of herein;

96) Local 479 has failed in its fiduciary responsibilities to its members;

97) The failure of Local 479 to honorably and faithfully discharge its fiduciary responsibilities to its members is the proximate cause of the injuries complained of;

98) Akins has acted in an "ultra vires" manner;

99) Meal penalty payments are specific and traceable funds;

100) Akins and/ or Local 479 has claimed ownership of every meal penalty assessment received by them;

WHEREFORE THEN, Akins and/or Local 479 Have violated laws as follows:

101) **Count 2:** Akins and/or Local 479, by implementing, and/or continuing to allow, meal penalty payment assessments, without a vote by secret ballot of the membership in good-standing, has violated the provisions of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3).

102) **Count 3:** By stating, publishing documents, and/ or otherwise holding out to membership that meal penalty payments are wages, and then by exploiting this member belief to extract monies from members, Akins and/ or Local 479 has committed violations of OCGA 16-8-3 - Theft by deception.

103) **Count 4:** By directing payroll processors withhold meal penalty assessments, and turn said funds over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479 have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1, Right of action for deprivation of possession of personalty.

104) **Count 5:** By not refunding meal penalty payment assessments, that were erroneously withheld by payroll processors, and where said funds were turned over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479

have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1. <u>Right of action for deprivation of possession of personalty.</u>

105) **Count 6:**   The rights under the LMRDA are the personal property to each and every union member, and only by vote may assessments be altered – which is to say that if assessments have been raised it is because a vote has taken place affirming the change in assessments, and here Akins and/or Local 479 has raised assessments without member involvement, Akins and Local 479 have thus converted the voting property rights of members to their own and have exercised dominion over them in violation of OCGA 51-10-1. <u>Right of action for deprivation of possession of personalty[5].</u>

106) **Count 7:**   RICO (Racketeer Influenced and Corrupt Organizations Act) violations, as promulgated under **OCGA 16-14-1 et seq.**  The necessary prongs of this violation are as follows:

A) At the center is Akins, who runs this illicit enterprise[6] and who has conspired with at least 1 other actor to take money from Local 479 members.   Culpable members include, Akins, Local 479, Certain Local 479 employees functioning in a dual capacity; Shadow Data LLC, and at least 3 payroll companies.   Shadow Data and the payroll companies are not named as defendants because they are believed to have relied on fraudulent inducements[7] of Akins and as such are more valuable as cooperating witnesses than adversarial defendants.   Certain Local 479 employees, though culpable for illegal conduct, are following Akins commands and to do otherwise would leave them unemployed, thus they too are more valuable as

---

[5] The application of these facts to this statute is a first impression in Georgia. It is not however an original idea of Plaintiff. Plaintiff has merely copied these allegations from successful claims in other jurisdictions and submitted them here as his own.

[6] While Michael Akins does have lawful responsibilities within Local 479, he has comingled these illicit actions, with his legitimate duties in such a way that it is difficult to discern the two. Indeed, it is this appearance of legitimacy that allows him to successfully perform illicit activities so effectively – and unchallenged up until this action.

[7] Before meeting with Akins, Plaintiff talked to Cast and Crew staff and was told that meal penalty assessments were not deducted because they were not wages. Personal belief and these discussions suggest that the payroll entities only withhold meal penalty assessments when informed that under the Local's constitution and bylaws, that meal penalty payments assessments has been approved by membership.

cooperating witnesses than adversarial defendants. The complaint will be amended if discovery shows these assumptions are erroneous. Discovery may reveal the names of additional coconspirators not now known; they will be added, as appropriate, when discovered.

B) Neither Local 479 nor Akins has any lawful claim to the monies being taken as "meal penalties" assessments;

C) Actual force in the form of Expulsion from Local 479 is used to ensure compliance – which is tantamount to a bar to employment - if members do not voluntarily pay meal penalty assessments; they are placed in a bad standing list and in time expelled from the union.

D) Affects interstate commerce by, among other things, changing the amount of monies transferred to members;

E) Predicate Acts - Mail and Wire Fraud, conversion,   The assertions given to payroll companies via electronic means and the resultant check transport through mails which show a deduction not authorized satisfies the predicate acts. The acts of conversion, as detailed above, are likewise predicate acts. Acts of "Theft by Deception" are predicate acts. This claim contains a buffet of different predicate acts to choose from;

F) These racketeering acts are the regular way Akins conducts ongoing business;

G) The racketeering acts have the same or similar intents, purposes, results, participants, victims, and methods of commission – Namely, the targets are members who are all subject to both the Local 479 contract for service (constitution and bylaws) and the identical collective bargaining agreements. The culpable members of this enterprise, listed above, take monies from members, where they have a no legal claim to, and then exercise dominion over it;

H) The acts of racketeering activity committed by Defendants have the same or similar results, in that they did all result in Defendants exerting control and possession over Plaintiffs' property,

I) New violations occur every week, have been occurring for at least 8 years and will continue indefinitely into the future unless a court acts to stop it;

J) To date, there have been quite literally thousands of unlawful acts in the furtherance of this scheme and the present "take" totals in the millions of dollars.

K) As a direct and proximate result of Defendants' Georgia RICO violations, Plaintiff has suffered injury.

M) Plaintiff is entitled to three times the actual damages sustained and to recover their attorneys' fees and costs of investigation and litigation reasonably incurred under O.C.G.A. § 16-14-6(c).

N) Because Defendants' actions in violation of the Georgia RICO statute show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, Plaintiff is also entitled to an award of punitive damages.

**Plaintiff Note to Court:** Plaintiff notifies the court that Local 479 has over 7000 members. Each and every one of these members is subject to both the Local 479 "Constitution and Bylaws" and the contracts of employment (CBA) referenced in this complaint. A significant portion of these members has suffered as Plaintiff has. Accordingly, class action status will likely be sought.[8]

---

[8] In the interest of costs and judicial economy, Plaintiff will ask other putative Plaintiffs to refrain from joining this lawsuit initially, but ultimately it is their choice. At the appropriate time, Plaintiff will engage a licensed attorney who has the requisite experience to represent this class.

113)   **WHEREFORE THEN** Plaintiff respectfully requests the following relief for each and all complaints:

a)   Process according to law;

b)   Declaration that meal penalties are not wages;

c)   Injunction to prevent the assessment of meal penalties in the future, unless and until such time that the membership has voted to approve such assessment;

d)   A refund of all meal penalty assessments collected;

e)   Exemplary damages where allowed;

f)   Treble damages on RICO claim;

g)   Costs of this action;

h)   Jury trial on all questions that a jury may consider;

i)   Attorney fees where allowed;

j)   Such other relief as this court deems just and proper.

This the _27_ day of July, 2022.

Respectfully Submitted,

Bennon L. Prine, Jr.
Post Office Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net



**IATSE**
Local 479



**FORM**

**PD-1**

# *Standard Payroll Deduction Form*
*This form should not be used for Cast & Crew Inc.*

Revised: 11/17/2020

Effective from date of hire, I do hereby authorize Studio Mechanics Local 479 I.A.T.S.E. to act for me as my collective bargaining agent in all matters pertaining to minimum wages, terms, conditions, and benefits of my employment with _____ for the production of _____, I also assign Studio Mechanics Local 479 I.A.T.S.E. three per cent (3%) of all wages earned and to be earned by me as an employee, and authorize and direct my employer to deduct such three per cent (3%) from my wages and to remit same to Studio Mechanics Local 479 I.A.T.S.E. I further authorize Studio Mechanics Local 479 I.A.T.S.E. to deposit this authorization with any employer under contract with Studio Mechanics Local 479 I.A.T.S.E. This assignment shall be irrevocable for a period consisting of one (1) year, and shall be automatically renewed, with the same irrevocability, for a successive like period unless canceled by me in writing not more than thirty (30), nor less than ten (10) days prior to the expiration of such period.

Name (please print) _____

Signature _____

Date _____       Social Security # _____
          (month, day, year)

**IATSE Local 479**
4220 International Pkwy • Suite 100 • Atlanta, GA 30354
(404) 361-5676 Office • (404) 361-5677 • office@iatse479.org • www.iatse479.org

Payroll Employer: Cast & Crew Production Payroll / 450 Seventh Ave. / Suite 900 / New York, NY 10123 / (212) 594-5688 / FEIN# 95-4362022

Please retain this stub for your records

| PRINE JR., BENNON L. | | | |
|---|---|---|---|
| SSN / Tax ID | Exemptions | Check Date | Check Number |
| xxx-xx-4812 | S-1 | 6/8/17 | 75465618 |

Controlling Employer: CRANETOWN MEDIA, LLC (#4093)

244 FIFTH AVENUE
SUITE 2263
NEW YORK, NY 10001

Dates worked: 5/29-31 6/1-3/2017
Pay period: 05/29 - 06/03/2017

************GET YOUR W2 FORM ONLINE************
Now there is no waiting at the mailbox for your
W2 to arrive. Register to receive your W2 online
at www.mytaxform.com or visit our website at
www.castandcrew.com for more information!

RESIDENT OF GEORGIA

W-2 ADDRESS: ********PLEASE VERIFY********

PRINE, BENNON L.
P.O. BOX 93
GRIFFIN GA 30224

### TAXES/WITHHOLDING

| Description | Amount | YTD |
|---|---|---|
| FICA | 178.73 | 453.16 |
| Medicare | 41.80 | 105.99 |
| FWT | 638.01 | 1,221.38 |
| GA SWT | 163.54 | 372.58 |
| Total Taxes/Withholding: | 1,022.08 | |

### EARNINGS

FIRST AID (EMT, PARAMEDIC, RN) LOCAL 479 479K

| Project | Week End | Invoice# |
|---|---|---|
| STRANGER THINGS (68) | 06/03/2017 | 17395454 |

STRANGER THINGS (Series Code: 002)
STRANGER THINGS (Series Code: 209)

| Description | Hours | Rate | Amount |
|---|---|---|---|
| Straight | 32.00 | 29.80 | 953.60 |
| 6th Day | 13.00 | 44.70 | 581.10 |
| Time & One-half | 18.40 | 44.70 | 822.48 |
| Double Time | 0.80 | 59.60 | 47.68 |
| Meal Pen. | | | 239.50 |
| Unworked Holiday | 8.00 | 29.80 | 238.40 |
| Totals: | 72.20 | | 2,882.76 |

### DEDUCTIONS

| Description | Amount | YTD |
|---|---|---|
| 479 Wkdues | 79.30 | 204.34 |

### REIMBURSEMENTS

| Description | Amount | YTD |
|---|---|---|
| Equipment | 125.00 | 255.00 |

| | | |
|---|---|---|
| Total Hours: | | 72.20 |
| Gross Wages: | | 2,882.76 |
| Taxes: | | 1,022.08 |
| Deductions: | | 79.30 |
| Reimbursements: | | 125.00 |
| Net Wages: | | 1,906.38 |

YTD Gross: 7,309.18

Seq #71630587    Run #17246811    Ref #1496935892

Plaintiff 0008                                    Member 008

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
### STATE OF GEORGIA

Bennon L. Prine, Jr.
         Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA "Stage
and Picture Operators AFL-CIO Local Union
479"

`Michael Akins (Individually and professionally)

J. Doe (Unknown Co-Conspirators) .
         Defendants

Civil Action Number

_____

---

## VERIFICATION

---

PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths,
BENNON L. PRINE, JR., who after first being duly sworn, states that he has read the foregoing
*Verified Complaint and* that the factual information contained therein is true and correct.

Signature

Sworn and subscribed before me
This _27_ day of July, 2022.

Notary Public

My Commission Expires: _May 18, 2026_

[NOTORIAL SEAL]

TIFFANY HOLLIS
Notary Public - State of Georgia
Spalding County
My Commission Expires May 18, 2026

**ORIGINAL SUMMONS**

## SUPERIOR COURT OF CLAYTON COUNTY

### STATE OF GEORGIA

_Renvov l Prine, Jr._
_____
Plaintiff

CASE NUMBER _2022 -CV- 02744-9_

_Po Box 92_
_____
Address

**SUMMONS**

_Griffin, GA 30224_

_NOVEMBER_ Term, 20 _22_

VS.

**CALENDAR DATES**

_Studio Mechanics Local No. 479 (Scave Michank + Mkus.)_
_____
Defendant

_4220 International Pkwy #100_
_____
Address

_Atlanta, GA 30354_

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

_Renvon l Prine, Jr_
_Po Box 92_
_Griffin GA 30224_

an answer to the complaint which is herewith served upon you, **within 30 days** after service of this summons, upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Jacquline D. Wills
Clerk of Court
Superior Court Division

By _Senya Brown-Hood_
Deputy Clerk

01/01/11

☑ **Superior Court**          ☐ **Magistrate Court**

**CLAYTON COUNTY, GEORGIA**

FOR CLERK'S USE ONLY:

Mailed copy to Plf Atty    /       /20

T.S. Paid

CASE NUMBER 2022 - CV - 02744 - 8

RENNON L PRINE, J,,

Plaintiff ☐

VS.

STUDIO MECHANICS LOCAL #479

Defendant ☐

4220 INTERNATIONAL PKWY #100

Address ☐

ATLANTA GA 30354

Attorney or Plaintiff's Name & Address

RENNON L PRINE, J,.

PO BOX 93

GRIFFIN GA 30224

Garnishee ☐

Address ☐

Designate Party to be served by placing a check in
box above.

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant ................................................................................................ personally with a copy
of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant ................................................................................................, by leaving
a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of ................................................................................................ described as follows

age, about ............ years; weight, about ............ pounds; height, about ............ feet and ............ inches,
domiciled at the residence of defendant, at .................... A.M. - P.M.

**CORPORATION** ☐

Served the (defendant, Garnishee) ... Studio Mechanics Local # 479 ............ a corporation
by leaving a copy of the within action and summons with .... Michael Akins ....
in charge of the office and place of doing business of said Corporation in this County, at 08:57 A.M. - P.M.

**TACK & MAIL** ☐

I have this day served the above affidavit and summons on the defendant(s) by posting a copy of the same to
the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true
copy of same in the United States Mail, First Class, in an envelope properly addressed to the defendant(s) at
the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s)
to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant ................................................................................................
not to be found in the jurisdiction of this Court.

The defendant is required to answer no later than ................................................................................ , 20 ............ ,
at the place stated in the summons.

This .... 24 .... day of .... April .... , 20 23.

Judge Price 30324

DEPUTY SHERIFF, CLAYTON COUNTY.

**WHITE: Clerk          CANARY: Defendant**

2022CV02744-09

EFILED
CLAYTON COUNTY, GA
7/28/2022 2:31 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## AFFIDAVIT IN SUPPORT OF EX PARTE MOTION FOR LEAVE TO FILE COMPLAINT

UNDER OATH, Bennon L Prine, Jr., resident of Griffin, County of Spalding, State of Georgia and who makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his knowledge:

### Overview of Case

The case discussed here is a union member suing a labor union. This union, by and through its business representative, Michael Akins, has intentionally and improperly enlarged the meaning of a word (wages) in the constitution and bylaws (contract) for the purpose of increasing assessment income. I am coming before the court, asking it to interpret this contract in accordance with Georgia law and issue such orders as needed to bring this union in compliance with applicable law.

### Reasons for seeking exparte leave of court

I want to file a lawsuit in Clayton County, GA Superior Court. In researching the laws applicable to my case and the predicted response of the defendants, several issues and procedures are not clear - in that there is no on-point precedent in either Georgia or the 11th Circuit federal court system to guide either me or this court. What precedent is available in other federal circuits in several situations conflict and there is no pending case before the US Supreme Court to resolve these conflicts of law. So what I am attempting to do is identify any procedure, that might be adverse to my position if not complied with, and comply with it out of an abundance of caution. Doing this should benefit defendants by having fewer areas to attack, me by having fewer motions to defend and this court by having fewer motions/ arguments to resolve. This document is intended to give the court deeper insight into this matter.

There is absolutely nothing in either Georgia law or precedent that requires a plaintiff to a contract dispute to request leave of the court to file a complaint. However, when a federal law is listed in support, or a claim of violation of a federal law is attached to a state complaint, this leave might be required.

Nothing in the complaint gives jurisdiction to the National Labor Relations Board.

There are several federal laws at issue in the proposed case and at least 3 different federal laws that bring intricacy to this lawsuit. All are found under Title 29. The first is

### SUBCHAPTER VI—SAFEGUARDS FOR LABOR ORGANIZATIONS

**§ 501. Fiduciary responsibility of officers of labor Organizations**

**(a) Duties of officers; exculpatory provisions and resolutions void**

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

A plain reading of the above paragraph suggests that this is not applicable to the submitted complaint. However, some federal court circuits[1] have ruled that this paragraph covers every

---

[1] Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963) ; several other circuits have found this holding persuasive – the 11th Circuit is not one of them.

2022CV02744-09

breach of fiduciary duty by a union officer. If the conflicts in the different federal circuits were resolved to find this interpretation is the proper one, then the next paragraph is applicable and this leave of court is required.

**(b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses**

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. <u>No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown</u>[2], <u>which application may be made ex parte.</u> The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

## Defendants are guilty of Criminal Conduct

When most investigators, attorneys and judicial officers first look at a complaint, the first thing they usually do is - "peel the onion" – strip back every layer of the matter until its core issue is laid bare.

The core issue here, and what is laid out in the complaint, is a criminal violation of "The Hobbs Act of 1946." This case is a reincarnation of a well-worn theme: take money from labor union

---

[2] "Good cause shown," is understood to mean "not frivolous."

2022CV02744-09

members - where no legitimate claim to such money exists - by means of threat of economic harm.

Under "The Hobbs Act of 1946," 18 U.S.C. § 1951[3]

Section 1951 - Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

Thus, the 2 elements to a Hobbs Act extortion conviction are: 1) Interference with commerce and 2) extortion.  In this matter, (1) state borders and distance aside, for all practical purposes, Georgia is part of the back yard of Hollywood, California and New York – and the business of making movies and television shows does affect interstate commerce.  While each payroll company usually maintains an office in Georgia, pay is mostly calculated in California or New York, and the actual checks are then printed and mailed from a second state, which itself is drawn on a bank from a third state.  Most of the yearly form W2's show our employer to be located in California or New York.  The actions of defendants interfere with the process of Local

---

[3] Current through P.L. 117-148 (published on www.congress.gov on 06/16/2022)

479 members receiving all pay owed; (2) Defendants request money they are not entitled to (meal penalty payments) be paid to them, and should any member refuse to voluntarily pay defendants, they are placed on a bad standing list and eventually expelled from the union -- destroying many opportunities for employment.

Simply stated, this is an illegal "pay to play" scheme. Either members pay defendants money not owed to them, or they might not work.

## Civil Case

This criminal matter[4] is being restated so that it can be prosecuted as a civil matter. Restated as a civil complaint, at its core this is a contract dispute and every other claim is derivative of this state-law claim.

## Actions taken prior to filing this complaint

I received a statement from Local 479 (via email), stating that I owed a sum of money (Plaintiff 0001); this document did not, however, specify what the money was owed for. I made a number of phone calls to office personnel, none of which had an explanation for what the charge was for. Trying a number of different calculations, what best fit was that I was being assessed for "meal penalties." I then sent a letter (via email) asking for a formal reply stating specifically what they claimed I owed money for (Plaintiff 0002). No response was ever received.

Believing this was a mistake; I next requested and attended a meeting with the union Business Representative, Michael Akins. During this meeting he confirmed that this charge was an assessment for meal penalties; after which I told him that I believed that this practice was illegal and gave him my reasons for concluding this – and requested that the union stop these assessments.

Also in attendance was the then Secretary-Treasurer, Frank Hatcher. Hatcher asked if this matter could result in litigation; and I stated that if this practice continued, then yes, litigation can be expected. He then demanded that the meeting be concluded – and it was.

---

[4] This case has neither been presented to, nor reviewed by any prosecutor.

**Formal response to meeting**

Akins followed up with a letter attached to an email (Plaintiff 0004). According to the letter, Akins discussed the matter with Hatcher and "our attorney Bob Giolito[5];" and then responded with Gioloti's opinion.

This letter does tacitly admit all factual allegations in my complaint. This letter also shows the framework of defendants' defense. This can be seen by the statement, "it is the Local's interpretation of its own constitution that governs the terms and requirements of Local membership."

With nearly a century of labor union history to look back on, courts have established policies on resolving labor union disputes. One such policy is for courts look to see if a union's interpretation of its own constitution is "reasonable." What is being referred to here is judicially created "policies" on adjudicating union cases. This judicial policy has, to my knowledge, never been codified at either a federal or state level. Defendants appear to want to use judicially created *policy* as a tool of defense. What defendants are suggesting here is that judicial policy supersedes both state and federal statutes and regulations. If defendants' interpretation is found to be correct, then a union can, with judicial agreement, waive compliance with any number of distasteful laws by merely having a union leader "interpret" their constitution and bylaws in such a way as to relieve them of compliance requirements. I know of no law, code or holding that would allow a court policy to create and/ or diminish substantive rights as defendants seem to suggest. To do so would create a second and superior legislative branch and a violation of both federal and state constitution's separation of power provisions. The state of New York court system is one that does have a large library of precedent in these matters, and if found persuasive in this court, this court would find that defendants are cherry-picking policies and misstating them. From MATTER OF LASONDE v. Seabrook, 89 AD 3d 132 - NY: Appellate Div., 1st Dept. 2011:

---

[5] According to required union filings with the Department of Labor, Local 479 has paid Giolito for "Legal Services" in each year of the last 10 years as an independent contractor (10 years is the maximum searchable). According to the Georgia Bar Association license verification site, Robert S Gioloti is listed as "INACTIVE IN GOOD STANDING." (Plaintiff 0005) According to the GA Bar Association, in a telephone call, Giolito's law license has been inactive since 2011. While Giolito was formerly licensed to practice law in Georgia, he is NOT authorized to practice law in Georgia currently. A wider search does show that he has an active law license in the state of California.

2022CV02744-09

> Generally, a court considering the validity of actions taken by a union official
> must determine whether said actions are authorized under the union's constitution
> or bylaws (*Allen,* 109 Misc 2d at 184). In so doing, the court must assess the
> union official's claim that his or her actions are authorized under the constitution
> or bylaws by (1) independently reviewing the constitution or bylaws "in
> accordance with the general rules of construction appertaining to contracts" and
> (2) determining whether the union official's interpretation is a reasonable
> interpretation of the constitution or bylaws (*id.*).[9]

As the court can see, unions do not get to pick and choose what laws apply to them. If the determination of this case were to be decided by these standards however, the court need only answer a single question: "Is violating statutory law a reasonable act of a labor union official?"

However, this defense is short-sighted because the inquiry does not end here. Labor unions are NOT autocratic institutions; so unless a coronation is held and Akins is dubbed, "King Mike," Akins must follow federal law, state law, and the will of the members as spelled out in the constitution and bylaws. This inquiry does not turn on the opinion of Akins; what matters here is what the rank-and-file membership decides and authorizes in accordance with the following statute:

### TITLE I—BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS

**Bill of Rights**
(29 U.S.C. 411)
SEC. 101. (a)

(3) DUES, INITIATION FEES, AND ASSESSMENTS.—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except—

2022CV02744-09

> (A) in the case of a local organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot;

NO vote authorizing assessments of Meal Penalties has ever been held. Until such time as the rank-and-file membership authorizes an increase of assessments, to include meal penalties, meal penalties payments may not be assessed.

## SUMMATION

As the court can see, there are plenty of possible directions for this case to take. Defendant's likely legal strategy though is predictable: deny and delay – and then look for a mistake on my part and seek a technical victory. A number of legal detours are expected before the merits of the case are addressed.

After all detours are resolved, what will be left is as follows:

> The US Supreme Court ruled that a union's constitution and bylaws is a ""contract between member and union and that "The courts' role is but to enforce the contract."[6]

> The contract at issue here was created in Georgia; between a recognized Georgia entity and its members, who are both Georgia residents; for the benefit of this Georgia entity and Georgia residents; where both are subject to Georgia laws. The interpretation of this contract is thus subject to the laws of the state of Georgia.

> The issues complained of were done by an individual and an organization that has its principal place of business for the last 8 years within the physical boundaries of Clayton County; and the actions complained of were performed and/ or orchestrated out this Clayton County Office.

---

[6] NLRB v. Allis-Chalmers Mfg. Co., at 182, 388 US 175 - Supreme Court 1967

Page 8 of 9

2022CV02744-09

This court will then be tasked with applying Georgia law to a Georgia contract, and issue orders consistent with this application.

I am now asking this court to grant this motion and allow the case to move forward.

Further, Affiant Sayeth Not.

WITNESS my signature, this the 2 7 day of July, 2022.

_____
Signature of Affiant

Sworn and subscribed before me this 27th day of July, 2022.

_____
Notary Public                                    Seal

TIFFANY HOLLIS
Notary Public - State of Georgia
Spalding County
My Commission Expires May 18, 2026

2022CV02744-09

 **I.A.T.S.E. Local 479**
4220 International Parkway
Atlanta, GA 30354
Phone: (404) 361-5676
Fax: (404) 361-5677

Date :     7/26/2017
Invoice # : 479
Total Invoice Balance :     $ 
Total Due Now :     $

# INVOICE

Bill To:

Bennon Prine
P.O. Box 93
Griffin, GA, 30224

| Chg Date | Pay By | Type | Description | Amount | Amt Paid | Amt Due |
|----------|--------|------|-------------|--------|----------|---------|
| 7/26/2017 | 8/25/2017 | Assessment | Wonder View FKA Stranger Things, S2 Audit | $ | | $ |

**Total Due:**     $

To pay by credit card, please fill out form below.
Please make checks payable to: **I.A.T.S.E. 479**
    *Please cut along this line and return LOWER portion with your payment.*

| Member Name | Invoice # | Invoice Date | Amt Due |
|-------------|-----------|--------------|---------|
| Bennon Prine | 479-00084157 | 7/26/17 | $ |

**Credit Card: AMEX DISCOVER MASTERCARD VISA**

Name on Credit Card: _____

Credit Card Number: _____

Exp. Date: _____    CSC Security Code: _____

*Remit payment to:*
*I.A.T.S.E. Local 479*
*4220 International Parkway*
*Atlanta, GA 30354*

Billing Zip Code: _____

Plaintiff 0001

2022CV02744-09

**Bennon L. Prine, Jr.**
Post Office Box 93
Griffin, Georgia 30224
678-995-5414

22 August 2017

I.A.T.S.E. Local 479
Attn. Billing Department
4220 International Parkway
Atlanta, GA 30354

Ref: Claim for additional assessment fees due to work performed for "Cranetown Media LLC" (#4093) and payroll employer "Cast and Crew" on production series "STRANGER THINGS."

**Ladies and Gentlemen:**

I have audited my pay records from this production and all owed assessments appear to have been listed, calculated correctly and presumably sent to Local 479 – NO ADDITIONAL ASSESSMENTS ARE OWED BY ME TO LOCAL 479 for representation on this production.

I wonder however, is Local 479 attempting to collect an assessment on meal penalties?

This is a formal demand for strict proof of insufficient payroll deductions for union dues assessments for the show "Stranger Things" Season 2 or in the alternative that any accounting records be updated to reflect that no such fees are owed.

**Facts:**

1) I received six paychecks from work performed on this show and identified as:

| Check Number | Gross Wages | Union Dues Withheld | Attachment Number |
|---|---|---|---|
| 75343872 | | | Member 3 |
| 75404330 | | | Member 4 |
| 75442682 | | | Member 5 |
| 75455618 | | | Member 6 |
| 75469036 | | | Member 7 |
| 75482345 | | | Member 8 |
| | | | |
| Gross Wages Total | | | |
| Total Union Dues Paid | | | |

2) On, or about, 26 July 2017, I received as an email attachment a pdf file *request for payment* which at the bottom shows the document is intended to be I.A.T.S.E. 479 Invoice number **479-00084157.** (Member 9)

In the body of the document, it indicates that I owe money to I.A.T.S.E. 479 for "Wonder View FKA Stranger Things, S2 Audit."

3) This *request for payment* document however fails to comport to commonly expected "invoice" call-outs[1] and thus does absolutely nothing to help me determine what may be deficient in the payment of representation dues; i.e.

   a) Is I.A.T.S.E. 479 claiming that the dues that were withheld were not remitted to I.A.T.S.E. 479 and that it is the union member's responsibility to guarantee such payment performance?

   b) Is I.A.T.S.E. 479 claiming that the wrong percentage number was used in calculating gross wages assessment withholding?

   c) Is I.A.T.S.E. 479 claiming that I received wages that were not reflected on some paycheck?

   d) Which specific check, or checks, does I.A.T.S.E. 479 claim the employer failed to properly withhold assessments from? And what amount is claimed owed from this/ these specifically identified payroll check(s)?

**Discussion and Conclusion**

Union members sign a withholding authorization with each new employer authorizing them to withhold three percent of gross wages and to remit same to I.A.T.S.E. 479. Three percent is the proper amount to withhold and is in accordance with I.A.T.S.E. 479 by-laws. (Article VIII, Section 1). Employer withheld 3% of my gross wages while in their employ.

My gross wages for this production were $███████; three percent of $███████ equals $███████ (Rounded up equals $████). Employer withheld $████ as union dues. Accordingly, no additional representation fees appear to be owed.

**WHEREFORE THEN,** I respectfully demand that I.A.T.S.E. 479 provide strict proof to substantiate its claim for additional payment – or in the alternate, update its records to show no additional fees are owed.

With kind regards,

/s/ Bennon L. Prine, Jr.

---

[1] A Google search for the suggested contents of an "invoice" is encouraged. Also, a Google search for "statement" will show that this document comports to the requirements for a "statement" but not an "invoice."

2022CV02744-09



IATSE Local 479    4220 International Pkwy
Suite 100  ·
Atlanta, GA 30354
T  404-361-5676
F  404-361-5677
office@iatse479.org
http://www.iatse479.org

September 25, 2017

Ben,

Thank you for coming in last week. After our meeting, I discussed your concerns with Secretary/Treasurer Frank Hatcher as well as with our attorney Bob Giolito. Please see Bob's response, which I copied into this letter from an email he sent.

"Mike, you asked for my legal opinion whether the Local may legitimately collect work dues on meal penalties. You informed me that this has been the historical practice of the Local, and that it conforms with the practice followed by other IATSE local unions.

In my opinion, the Local may collect work dues from meal penalties paid to members on covered productions. The Local is a private, voluntary association and, as such, it is entitled to make, interpret, and enforce its own rules of membership. Article VIII, Sec. 1 of the Local's constitution provides in relevant part that members shall pay "working dues of 3% of gross wages earned under an IATSE agreement." Because it is a private association, the Local has inherent authority to interpret the term "gross wages" as encompassing all employee earnings from covered work, including meal penalties and other contractually required payments. It does not matter that the government, NLRB, IRS, or other third party may interpret the term differently, it is the Local's interpretation of its own constitution that governs the terms and requirements of Local membership. It should not be overlooked that meal penalties would not exist but for the Union's efforts to require them as a term and condition of employment. Thus, assessing dues against earnings from meal penalties is both in line with and supports the Union's traditional functions as collective bargaining representative.

If you have any other questions, please contact me. Sincerely, Bob"

Please be aware that while your account was in dispute, we removed the late charges associated with your assessment. The assessment has been reinstated with a charge date of today, 9/25/17, and will be due in 30 days. You are in good standing at this time.

In Solidarity,

Michael Akins
Business Agent, IATSE Local 479

| Ray Brown | Whit Norris | Michael Akins | Frank Hatcher |
|-----------|-------------|---------------|---------------|
| President | Vice-President | Business Agent | Secretary-Treasurer |

Member of the Georgia AFL-CIO          Member of the Atlanta Labor Council

Plaintiff 0004

2022CV02744-09

The State Bar of Georgia has verified this lawyer's membership status, public disciplinary history, and section membership. The lawyer has provided all additional information and the State Bar of Georgia has not approved or verified the authenticity of that information. The State Bar of Georgia does not recommend, approve or endorse any lawyer.

Home > Search Results > Mr. Robert S. Giolito



# Mr. Robert S. Giolito

Robert S Giolito PC

⊘ Attorney Verified   ⊘ Inactive Member in Good Standing

About      Disciplinary History      Education      Associations      Contact Info      Licenses

### DISCIPLINARY HISTORY

None on Record

### CONNECTING WITH

## Mr. Robert S. Giolito
Robert S Giolito PC

⬇ Download vCard

📞 Phone                                 ✉ Email

Primary Address

📍 1626 Montana Avenue Suite 201
Santa Monica, CA 90403

UP

Plaintiff 0005

**ACCREDITATIONS**

**LICENSES**

O  State of Admission - GA
   Admitted On - May 19, 1974
   INACTIVE MEMBER IN GOOD STANDING

**ABOUT MY PRACTICE**

**EDUCATION**

O  University of Wisconsin-Madison

**ASSOCIATIONS & AFFILIATIONS**

**SECTIONS**

Labor & Employment Law

CloudLaw, PBC dba RELIAGUIDE • support@reliaguide.com
© 2022 CloudLaw, PBC • All rights reserved.

UP

Plaintiff 0006

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

CLAYTON COUNTY, GA

2023 JAN 10  PM 4: 47

Bennon L. Prine, Jr.
        Plaintiff

CHARLA D. CLEMONS  Civil Action Number
CLERK SUPERIOR COURT

Vs.                                                              2022-CV-02744-9

"Studio Mechanics Local No. 479", AKA
"Stage and Picture Operators AFL-CIO Local
Union 479"

Michael Akins
    (Individually and Professionally)

J. Doe (Unknown Co-Conspirators)
        Defendants

## THIRD MOTION FOR LEAVE TO FILE COMPLAINT

COMES NOW, the Plaintiff, and moves this court for leave to file a bill of complaint against the named defendants, and in support shows the court as follows:

Plaintiff has "good cause" for filing a complaint against the named defendants as shown herein.

Plaintiff's attached affidavit, titled, "Affidavit in Support of Ex parte Motion for Leave to File Complaint," is included here by reference as if fully recited here.  The proposed complaint is also included here by reference as if fully recited here.

This motion invokes federal law and procedures only.  This Motion for Leave to File Complaint is authorized by 29 USC 501(b)[1];   Jurisdiction to hear this motion is proper "in any State court of competent jurisdiction" (29 USC 501(b)).  The proposed complaint contains questions of both state of Georgia and federal law claims.

---

[1] This is part of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA); 29 USC Labor. The heart of the LMRDA is Title I, which is fittingly called the *"Bill of Rights of Members of Labor Organizations."* This law protects and guarantees the rights of labor union members to sue their labor union.  Before filing suit however, a plaintiff must file a motion with a court showing they have good cause to file said suit. This motion satisfies this requirement.  A lawsuit that contains these federal causes of action cannot be maintained until this procedure is complete.

This court is being asked to hear this motion and the federal law claims under the theory of "concurrent jurisdiction;" which is to say that this court is being asked to hear this motion as a Northern District of Georgia federal court would, which includes applying the appropriate federal authority and procedures to the facts, and then issue an appropriate order.  Citing *Yellow Freight System, Inc. v. Donnelly*, 494 US 820 (1990), in *Collins v. Dept. of Transp.*, 429 SE 2d 707 (Ga. Ct. of App. 1993) the court found:

> "Under our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' [Cits.] To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. [Cit.]" Id. at 823."

Thus, this court has the inherent authority to decide this federal question.

The service requirements[23] for this motion are found in the Federal Rules of Civil Procedure (FRCP) at:

### Rule 5. Serving and Filing Pleadings and Other Papers
(a) Service: When Required.
(1) *In General.* Unless these rules provide otherwise, each of the following papers must be served on every party:
(D) a written motion, except one that may be heard ex parte;

Since this motion may be heard ex parte, no service is required.  The court does though have discretion to order service before the motion is considered.  In a previous order, this court has ordered service be made on defendants before consideration.  The proper service method, unless otherwise ordered, is found in the FRCP at:

Rule 5. Serving and Filing Pleadings and Other Papers

(b) Service: How Made.
(2) *Service in General.* A paper is served under this rule by:
(A) handing it to the person;
(B) leaving it:
(i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
(ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

---

[2] As amended to December 1, 2022
[3] This motion is not a complaint against any defendant.

A copy of the Motion and supporting documents was sent via certified mail to defendants; and though not required, an email with all documents was also sent to defendants. A copy of the USPS receipt, USPS proof of delivery and a copy of the sent email was filed with the court clerk's office and a courtesy copy sent by email to Judge Carter's listed email address for receiving courtesy copies ( JudgeCarterCourtesyFilings@claytoncountyga.gov.)   In an order dated December 05, 2022, it appears that the court desires a more formal service method and as such Plaintiff will ask the Clayton county sheriff's office (or other authorized process server) to serve this *Motion*.[4]

Neither congress nor the US Supreme court has unified the definition and requirements of what "Good Cause" means. The most commonly accepted authority is *Horner v. Ferron*, 362 F. 2d 224 (9th Cir. 1966). The 11th Circuit adopted *Horner's* reasoning in *Erkins v. Bryan*, 663 F. 2d 1048 (11th Cir 1981). The US Department of Labor offers some additional compare-and-contrast type details between the different circuits on their website found at:

https://www.dol.gov/agencies/olms/compliance-assistance/interprative-manual/500-union-safeguards . (This is a very long page thus Plaintiff suggests the court skip down to the section titled, "Court Must Grant Leave to Sue.")

Plaintiff has met the burden of showing "Good Cause" and has laid this out in exhausting detail in his attached affidavit that shows, among other things: a) Plaintiff has standing, as evidenced by being a member of Local 479, and was in good-standing in the union on the date of filing the proposed complaint; b) The union was notified of basis for concerns and this motion includes a response letter showing that no resolution was possible using internal procedures; 3) The proposed complaint alleges violation of federal and state law and includes allegations to support them.

---

[4] Due to filing problems, Plaintiff recognizes that the court may not have had a complete file when issuing this order. Plaintiff first filed the case using "eFile". After 6 weeks with no response, Plaintiff visited the clerk's office and learned that they were short-staffed and this was an expected delay. The first Motion for Leave to file complaint, filed with the original upload still hasn't appeared. On a second attempt at using eFile, Plaintiff did not even receive an acknowledgement of upload. Plaintiff has resorted to hand filing pleadings, but even this has had problems; ie, Plaintiff filed a document in one week and checked on it the next only to be told that no record of filing existed. Plaintiff has refiled several documents not found by the clerk's office (while in the customer service line, Plaintiff heard other litigants complaining of the same issues.) In the middle of December, 2022, Plaintiff visited the clerk's office to see if any responses or orders had been filed — and was told none had. A court's order, dated December 05, 2022, was received by Plaintiff on January 04, 2023. To date, no acknowledgment of any courtesy filings made to the Judge's courtesy filing email address has occurred.

Per *Erkin, supra,* a defendant can only challenge "good cause" based on issues such as plaintiff failing to follow the LMRDA's procedures or estoppel, and not based on disputing the proposed complaint's allegations. The *Erkin* court emphasized that the proposed complaint itself may not be attacked until after a good cause motion has been granted and the case filed and served on defendants – which is to say that any attack on the complaint itself must wait and be done through summary judgment procedures.

Plaintiff further shows the court that:

- The clerk of court has – rightfully – <u>not</u> - issued a summons in this matter;

- There is a "complaint" on file in the clerk's office, but this is a "complaint" in name only, it is a proposed complaint. It was submitted this way because of the eFile upload requirements. Had this been hand-filed, it would be shown as merely an attachment to this motion (and not as a separately filed complaint);

- No rights of defendants, substantive or otherwise, are affected by this motion. The rights at issue in this motion are solely those of Plaintiff's. The only rights at issue in this motion are Plaintiff's federally guaranteed rights to sue a labor union;

- Assuming, arguendo, that this motion is granted, the Plaintiff will then file a new amended complaint with the clerk's office showing court approval to file said complaint, the clerk will issue a summons, and service (or waiver of service) will then be done in accordance with the OCGA.

WHEREFORE THEN, Plaintiff respectfully requests that this motion be granted.

This the 7th day of January, 2023.

Respectfully Submitted,

Bennon L. Prine, Jr.
PO Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net



## IN THE SUPERIOR COURT OF CLAYTON COUNTY
### STATE OF GEORGIA

Bennon L. Prine, Jr.
                    Plaintiff

Vs.

"Studio Mechanics Local No. 479", AKA "Stage
and Picture Operators AFL-CIO Local Union
479"

Michael Akins (Individually and professionally)

J. Doe (Unknown Co-Conspirators)
                    Defendants

Civil Action Number

2022CV02744-09

### AMENDED VERIFIED COMPLAINT

#### Count 1 Breach of Contract

#### Overview

This is a contract dispute. The parties disagree over the meaning of a single word: "Wages."
This court is being called upon to define "wages," and equally important, what <u>does not</u> meet the
definition of wages, and issue rulings consistent with it;

Defendant collects a portion of Plaintiff's wages earned for representing him to employers. By
enlarging the definition of "wages," Defendant is able to assess, and collect substantially higher
fees from Plaintiff. Plaintiff claims in this lawsuit that Defendant has impermissibly enlarged
this word - wages - to include non-wage income and as a result, has previously, and is now,
collecting more fees than it is entitled; and seeks to have Defendant limit its fees to what it has
rightfully earned – according to the terms of said contract – and make reparations for past bad
conduct;

Plaintiff met with Defendant's "Business Agent" to discuss this matter, and showed him the
definitions from a dictionary, the Internal Revenue Service (IRS) definition and legal precedent.

Business Agent responded (in summation) that Defendant (by and through him - its business agent) may define "wages" however it sees fit. Plaintiff, not finding any language in their contract that allows Defendant to unilaterally alter the ordinary and usual definition of a word disagrees - and this lawsuit follows;

The Plaintiff, Bennon L. Prine, Jr., COMES NOW before this court seeking declaratory judgment, injunctive relief to prevent similar future conduct, and an order requiring reparations for past bad conduct; and in support alleges:

## Parties

1) **Plaintiff,** Bennon L. Prine, Jr., is a *sui juris* individual who earns his living working in the motion picture/ video production industry. Plaintiff is a member of Local 479 in good-standing;

2) This production industry includes, but is not limited to, making movies and shows for theater, television and streaming services. Work in this industry is primarily project-based, which means employment will have a definitive beginning and end. Work on each of these projects varies in duration from 1 day to many months, according to the needs of the production, and as such, an employee will usually have several different jobs each year. To find work and to deal with these employers, Plaintiff has joined a "Labor Union," which helps him find these work-projects and which negotiates (within limits) the terms and conditions of employment. If a problem with pay or working conditions occurs, the "labor union" works to resolve these also. This labor union collects a portion of Plaintiff's wages for performing such services;

3) **Defendant** is an unincorporated entity and a "labor organization" as defined in O.C.G.A. 34-6-20(4). According to its charter dated October 1, 1986, which granted the formation of a branch of the "International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada," it is to be known as "Studio Mechanics Local No. 479." In required filings with the federal government, this union is known as "Stage and Picture Operators AFL-CIO Local Union 479." This union is commonly referred to as "Local 479" and this is how it will be referred to in pleadings;

4) **Defendant** Michael Akins is the Local 479 "Business Representative" and is often times referred to as a Business Agent or just "BA." This is an elected position within Local 479 and a full-time paid job. He maintains an office within the Local 479 union hall.

## Jurisdiction and Venue:

5) This court has subject-matter jurisdiction pursuant to Ga. Const. Art VI § II, Para. VI.;

6) Labor unions may be sued (OCGA 9-2-25(a));

7) Unless exclusive jurisdiction rests with a federal tribunal, a Superior Court may exercise original jurisdiction over complaints that contain federal questions;

8) **Plaintiff.** By filing this lawsuit in this court, the Plaintiff has voluntarily subjected himself to the jurisdiction and venue of this court;

9) **Defendant,** Local 479, maintains its base of operations at 4220 International Pkwy #100, Atlanta, GA 30354. This address is physically located within the boundaries of Clayton County, Georgia;

10) **Defendant,** Local 479, has had its physical base of operations located in Clayton County Georgia for over 8 years;

11) **Defendant,** Local 479, has continuously transacted business within the boundaries of Clayton County, Georgia for over 8 years;

12) **Defendant,** Michael Akins, the Local 479 "Business Representative," may be found in Clayton County where he maintains an office and regularly conducts business;

## Procedures Completed Before Filing Suit

13) Plaintiff met with the Business Representative, Akins, in an attempt to have him stop the complained of conduct;

14) Frank Hatcher, Local 479's then Secretary and Treasurer, was also in attendance;

15) Hatcher asked if this matter could result in litigation; Plaintiff responded that if the union continued demanding meal penalty assessments, then yes, litigation should be expected. Hatcher then demanded that no further discussion take place and the meeting be closed – and it was;

16) A formal reply was sent to Plaintiff claiming that Local 479 may define a word anyway it sees fit – and is not beholden to the usual and common understanding of a word;

17) The Local 479 Constitution and Bylaws does not contain any requirements that need to be met before a lawsuit is filed;

18) Plaintiff sought leave of the court to file this complaint, through motion and verified affidavit;

19) If filed, the court has granted Plaintiff's motion for leave to file this complaint.

**Service of Process**

20) To lower costs of this action, Plaintiff intends to ask defendants to waive service. Should either defendant refuse to waive service, then any Officer of Local 479 may be served this complaint. However, the Business Representative, Michael Akins, is the preferred recipient, since all complaints may be served at one time and at one location; he maintains an office at Local 479's physical address listed above. If he refuses service, Michael Akins will need to be personally served.

**Membership Contract of Service**

21) Local 479 has a Constitution and Bylaws;

22) This Constitution and Bylaws is a contract between Local 479 and its members;

23) Local 479 is subject to the Labor-Management Reporting and Disclosure Act (LMRDA) of 1959, as amended, and must file electronic reports with the Office of Labor-Management Standards (OLMS) of the Department of Labor (DOL);

24) The latest amended and enacted Constitution and Bylaws is one of the documents required to be filed with the DOL;

25) Plaintiff will provide the court with an as-published copy of this contract. Independent verification of authenticity may be had by requesting a current copy of the Local 479 Constitution and Bylaws, as filed with the DOL, by requesting it through OLMS at 202-693-0123 or olms-public@dol.gov.   Information about this service may be found at https://www.dol.gov/agencies/olms/public-disclosure-room ;

26) Among other things, this Constitution and Bylaws details the fees that members will pay to Local 479 for services rendered to them;

27) These provided services include, but are not limited to, negotiating the terms and conditions of member employment with employing entities (within limits). These successful negotiations are memorialized in a signed contract between the employing entity and Local 479 (This "Labor Contract" is more commonly known as a "Collective Bargaining Agreement").

## Definitions and Ordinary Usage

28) From Black's Law Dictionary 5th edition:

   a) Wages means: "A compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production."

   b) Liquidated Damages means: "...[A] specific sum of money [that] has been expressly stipulated by the parties to a bond or other contract as the amount of damages to be recovered by either party for a breach of the agreement by the other."

## Meal Penalties

29) All allegations recited in every other section of this complaint is included here by reference as if fully recited here;

30) Every three years (or so), production companies and labor unions meet and negotiate a series of generic contracts to cover specific working conditions, wages, and other payment contingencies that apply to each specific type of production. (Though the contracts may be reviewed every three years, all of them are not renegotiated at the same time.);

31) For brevity in this complaint, the "Area Standards Agreement" (ASA) will be referenced. All other contracts have similar worded clauses that apply to the respective Collective Bargaining Agreements;

32) As part of these collective bargaining agreements, employers and unions specify the earliest and latest times for workers to begin a meal period and also the minimum time employees will have to consume said meals. The language showing this in the Area Standards Agreement is found as follows:

### ARTICLE 4 – MEALS

(A) Meal periods shall not be less than one-half (½) hour nor more than one (1) hour in length...

(B) The employee's first meal period shall commence within six (6) hours following the time of first call for the day; succeeding meal periods shall commence within six (6) hours after the end of the preceding meal period. An employee's first meal period shall commence no earlier than two (2) hours after such employee reports for work except that persons called up to two (2) hours earlier than the regular crew call who are provided with a non-deductible hot breakfast and time to sit and eat (within one (1) hour before or after the regular crew call) will have their first deductible meal period due at the same time as a meal is due for the regular crew.

(C) Meal intervals may be extended twelve (12) minutes without penalty when used for completing a camera setup in progress or one-half hour for wrap if the employee is dismissed within one-half hour. If the employee is

not dismissed within said one-half hour extension, meal penalty shall be computed from the end of the sixth hour following the previous meal.

33) As part of these collective bargaining agreements, to avoid litigation over the issue, employers and unions have specified how employees will be compensated if/ when an employer violates the above provisions of the CBA contract. The Area Standards Agreement language showing this is:

### ARTICLE 4 – MEALS

(D) (1) Except as provided in subparagraph (2) below, meal penalty for delayed meals shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 7.50

Second half-hour meal delay or fraction thereof ...$10.00

Third and each succeeding half-hour meal delay or fraction thereof.. $12.50

(2) Meal penalty for delayed meals for employees employed on television motion pictures shooting in a studio shall be computed as follows:

First half-hour meal delay or fraction thereof. . . $ 8.50

, Second half-hour meal delay or fraction thereof $11.00

Third and each succeeding half-hour meal delay or fraction thereof. . $13.50

34) All collective bargaining agreements signed by production companies/ employing entities and Local 479 set forth these meal penalty provisions;

35) "Meal penalties" are paid to employees because the employer has violated a CBA contract provision;

36) Members regularly collect meal penalties;

37) Since the beginning of the Covid-19 pandemic, some production companies have completely done away with meal times, choosing instead to sometimes pay over 30 hours a week in meal penalties   A specific amount of damages cannot be pled because this amount may increase with each work day;

38) The additional pay and the assessments are not an insignificant sum.  Using the above example and rounded numbers.   30 hours X $25/ hour = $750/wk x 1000 workers = 750000/wk gross meal penalties per 1000 workers X 3% = $22,500 per week Local 479 is illicitly collecting each and every week.  On the date of filing, Local 479 had over 7000 members, with each and every member subject to the same contracts as Plaintiff.  On average roughly half of the members will be in a job where they will collect meal penalty payments.  As such, the 1000 member example should be considered a low number and the actual "take" significantly higher;

39) Meal Penalty payments are the sole property of the employees who are paid them.

## Violation of Membership Contract

40) As it relates to this complaint, Local 479 has, and is, violating the membership contract by enlarging the definition of "wages" to include "meal penalties;"

41) Local 479 is now assessing members three per cent (3%) of what these members receive as payment for "meal penalties;"

42) Plaintiff specifically alleges that assessing members for any contractual liquidated damages (Meal Penalties) payment is a violation of the Constitution and Bylaws;

43) "Liquidated damages" are personal income, but NOT wages.  Local 479 is not entitled to assess all personal income received from work on a production – only wages;

44) Meal penalties are not wages.  No matter how early, how late, or how many hours an employee works, such work will not trigger the meal penalty clause of any CBA.  No matter how much, or how little, an employee accomplishes during working hours, such

accomplishments will not trigger the meal penalty clause of any CBA. There is absolutely nothing that an employee can do to trigger meal penalties payments – Only the actions, or inactions, of an employing entity can trigger meal penalties. And these actions or inactions must be a violation of a contract's provisions;

45)   The section of the Constitution and Bylaws that is being violated is as follows:

ARTICLE VIII: REVENUES

SECTION 1. DUES AND INITIATION FEES

The dues payable by each member, except retired and honorary members, shall be the total of the applicable International Stamp Dues plus twelve dollars ($12.00), plus working dues of **three per cent (3%) of gross wages** earned under an IATSE agreement in the craft and/or geographical jurisdiction of this Local.

46)   Aside from the "stamp dues", this (above) paragraph clearly shows that Local 479 is entitled to "**three per cent (3%) of gross wages** earned under an IATSE agreement" – and NOTHING more;

47)   Nothing in the Constitution and Bylaws allows for a union officer to unilaterally expand, enlarge or create any definition of "wages" other than how it is ordinarily understood and defined;

48)   While Local 479 members may choose to define "wages" in a manner not common to ordinary-and-customary, legal, and accounting, and "Internal Revenue Service," understanding, they have not done so;

49)   Unless, and until, the Local 479 Constitution and Bylaws are amended to reflect a different meaning, Local 479 must abide by the ordinary-and-customary meaning of words and phrases found its Constitution and Bylaws;

50)   Nothing in the Constitution and Bylaws allows Local 479 to receive any portion of payments to members for "meal penalties;"

51) If members do not pay to Local 479 an amount equal to three per cent (3%) of any "meal penalties" payments they receive from employers, Local 479 will place them in "Bad Standing" with the union, and then eventually expel them from the union;

52) Most hiring productions that have entered into a collective bargaining agreement will not, or at least prefer not to, hire employees that are not union members. Not having IATSE union membership is tantamount to being fired, or non-hirable since most production companies will refuse to hire non-union members;

53) Local 479's message to members is clear, pay us or don't work in the movie production industry;

54) The breaches of contract complained of here have been occurring each and every week for at least eight (8) years[1], and such breaches are expected to continue into the future[2];

55) Local 479 members do not now and have never authorized employers to withhold meal penalties assessments from their pay[3];

56) Employers categorize meal penalty payments as "meal penalty" payments. These payments are not comingled under any other withholding category[4];

57) Each and every successive meal penalty assessment is a separate and distinct claim for breach of contract;

58) Local 479 has an obligation to follow and confine its conduct to what is allowed in the Local 479 constitution and bylaws;

59) By breeching the mandates found in the Local 479 constitution and bylaws, Local 479 has failed its responsibilities to its members;

---

[1] Eight years is the length of time that Plaintiff has been a member of this labor union.

[2] Unless this court issues such orders as may be required to prevent such future conduct.

[3] A copy of the standard Local 479 employer withholding authorization is attached at Plaintiff 007.

[4] A copy of one of the checks that Local 479 initially claimed that meal penalty payments were owed on is attached at Plaintiff 0008. (The gross wages of this check were higher than usual).

60) The failure of Local 479 to honorably and faithfully discharge its responsibilities to its members is the proximate cause of the injuries complained of;

61) The failure of Akins to properly supervise union employees and to honorably and faithfully discharge his responsibilities to Local 479 members is the proximate cause of the injuries complained of;

62) WHEREFORE THEN Local 479 has breached the contract between it and its members in violation of the provisions of OCGA 13-1-1 et seq.

## Counts 2 through 7

### Overview

63) Counts 2 through 7 includes 6 claims that for brevity and economy are presented under one heading since they share of a common set of facts. These claims include: 3 claims of "tort of conversion," violation of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3); violation of OCGA 16-8-3 - Theft by deception, and violation of OCGA 16-14-1 et seq. RICO (Racketeer Influenced and Corrupt Organizations Act);

64) All claims and allegations of Count 1 are included here by reference as if fully recited here;

65) Michael Akins is the Local 479 "Business Representative;"

66) Michael Akins (Akins) has been the Local 479 "Business Representative" for over eight (8) years;

67) The duties and responsibilities of the Local 479 Business Representative are, and can be found in the Local 479 Constitution and Bylaws at:

> **ARTICLE VI: DUTIES OF OFFICERS, TRUSTEES, AND DELEGATES**
>
> *SECTION 3. BUSINESS REPRESENTATIVE*
>
> The Business Representative shall represent the Local at all times in all dealings with employers, pursuing all avenues of employment for members

in the Local's jurisdiction, negotiating all minimum Contracts and Agreements, supplying all employers with current directories of members and organizing the unorganized.

The Business Representative shall have the right to refer any member in good standing, subject to qualifications required by the employer and as the situation so warrants.

The Business Representative shall have full charge of the Business Office of this Local, and may, with the approval of the Executive Board, and as funds permit, employ an Office Manager and other employees as necessary. Such employees shall be under the direct supervision of the Business Representative to operate the business affairs of the Local and to assist the Officers of this Local in their official duties.

Compensation of all office employees shall be subject to the approval of the Executive Board...

68) As Business Representative, Akins:

    a.  Hires office staff;

    b.  creates and implements the policy these employees work under;

    c.  supervises the office staff;

    d.  Created an auditing section;

    e.  Directed, and still directs, the office staff to assess "meal penalties;"

    f.  Directed, and still directs, the office staff to collect "meal penalties" payments from members when a payroll deduction of these assessments is not made;

    g.  Directs the office staff to place members who have not paid "meal penalties" assessments into a "Bad Standing" list;

    h.  If a member does not timely pay fees claimed owed, and cure any "Bad Standing," they are expelled from Local 479 membership;

i. The creation of records, that purportedly show the non fulfillment of member responsibilities, when no such responsibility actually exists – such as demanding payment for meal penalty assessments – is a form of coercion and/ or extortion, because any such refusal to acquiesce carries with it the penalty of membership expulsion from Local 479.

69) Akins has both a job obligation and a fiduciary responsibility to the Local 479 union and its membership to conduct and comport his actions in such a manner that is lawful under both federal and state of Georgia law;

70) No other Local 479 officer, other than Akins, has the constitutional authority to implement office worker policy, direct or supervise the Local 479 office staff;

71) Akins has demanded that Employers and/ or Payroll companies withhold meal penalties assessments from members' paychecks and turn said monies over to Local 479 – all without authority, cause or justification;

72) Akins has created, or caused to be created, a separate LLC, namely, Shadow Data, LLC, for the purpose of collecting and aggregating member financial information for the purpose of exacting more monies from them;

73) Akins DOES NOT have the authority to define words, or enlarge their meaning, outside of their usual and customary meaning;

74) The Local 479 membership, by secret ballot vote, may enlarge or define any word in any manner it sees fit;

75) The Local 479 membership has never voted to enlarge or define any word outside of its usual and customary meaning;

76) The Labor Management Reporting and Disclosure Act of 1959 (also "LMRDA" or the Landrum–Griffin Act) grants certain rights to union members and protects their interests by promoting democratic procedures within labor organizations, including, but not limited to:

a. Guarantees union members equal voting rights and free speech and assembly rights;

b. To raise "dues, initiation fees, and assessments," 29 U.S.C. § 411(a)(3) requires "...majority vote by secret ballot ..."

77) The rights guaranteed under the LMDRA Bill of Rights are the personal intangible property of each and every labor union member;

78) Local 479 has NEVER voted to assess Meal Penalties;

79) By fiat and artifice, Akins has implemented, and continues to demand, meal penalty assessments;

80) When Akins first took office, he had obligation to assess the actions of his office and the actions of Local 479 and to determine if such actions were in-fact legal - and to intercede and stop any found illegal actions. This responsibility is an ongoing and continuous obligation of the "Business Representative;"

81) Akins has failed to take any action to stop illegal actions by himself, his office and/ or that of Local 479;

82) Akins has told and held out to at least one pay check processor (Cast and Crew), that meal penalties are wages in an effort to have them withhold assessments on member paychecks and then turn over said funds to Akins and/ or Local 479;

83) Akins has failed to stop/ correct the withholding of meal penalty payment assessments from at least one paycheck processor, who, once withheld, would turn over said monies to Local 479;

84) When meal penalty payments, were received from payroll processors, Akins and/ or Local 479 failed to refund them to the members, instead choosing to keep this money for their own use;

85) Akins failure to take action and stop illegal action of his office and that of Local 479 is the direct and proximate cause of Plaintiff's injuries;

86) By implementing, and or continuing to assess, meal penalty payments Akins has thereby extorted, stolen, impinged, usurped, abridged, interfered with and denied Local 479 rank-and-file membership intangible personal property rights under the LMRDA;

87) Akins and/ or Local 479 has intentionally deceived new and old members alike by telling them that meal penalties payments are wages;

88) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions in such a manner that is lawful under both federal and state of Georgia law;

89) Akins has failed his fiduciary responsibility to conduct and comport is actions in a lawful manner under both federal and state of Georgia law;

90) Akins has a fiduciary responsibility to the Local 479 union and its membership to comport his actions and discharge the office of Business Representative in compliance with Local 479 constitution and bylaws;

91) Akins has NOT comported his actions and discharged the office of Business Representative in compliance with Local 479 constitution and bylaws;

92) Akins failure to comply with federal and state law is the proximate cause of the injuries complained of;

93) Akins failure to honorably and faithfully discharge the fiduciary responsibilities of the office of the Business Representative is the proximate cause of the injuries complained of;

94) Akins has exceeded and abused the powers of the Office of the Business Representative;

95) Akins exceeding and abusing the powers of the Office of the Business Representative are the proximate cause of the injuries complained of herein;

96) Local 479 has failed in its fiduciary responsibilities to its members;

97)  The failure of Local 479 to honorably and faithfully discharge its fiduciary responsibilities to its members is the proximate cause of the injuries complained of;

98)  Akins has acted in an "ultra vires" manner;

99)  Meal penalty payments are specific and traceable funds;

100) Akins and/ or Local 479 has claimed ownership of every meal penalty assessment received by them;

WHEREFORE THEN, Akins and/or Local 479 Have violated laws as follows:

101) **Count 2:**  Akins and/or Local 479, by implementing, and/or continuing to allow, meal penalty payment assessments, without a vote by secret ballot of the membership in good-standing, has violated the provisions of Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3).

102) **Count 3:**  By stating, publishing documents, and/ or otherwise holding out to membership that meal penalty payments are wages, and then by exploiting this member belief to extract monies from members, Akins and/ or Local 479 has committed violations of OCGA 16-8-3 - Theft by deception.

103) **Count 4:**  By directing payroll processors withhold meal penalty assessments, and turn said funds over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479 have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1. Right of action for deprivation of possession of personalty.

104) **Count 5:**  By not refunding meal penalty payment assessments, that were erroneously withheld by payroll processors, and where said funds were turned over to Akins and/or Local 479, when neither Akins nor Local 479 had a lawful right to said funds, and where Akins and/or Local 479 then exercised sole dominion over them, Akins and/or Local 479

have violated and committed "tort of conversion" within the meaning of OCGA 51-10-1, <u>Right of action for deprivation of possession of personalty.</u>

105) **Count 6:**   The rights under the LMRDA are the personal property to each and every union member, and only by vote may assessments be altered – which is to say that if assessments have been raised it is because a vote has taken place affirming the change in assessments, and here Akins and/or Local 479 has raised assessments without member involvement, Akins and Local 479 have thus converted the voting property rights of members to their own and have exercised dominion over them in violation of OCGA 51-10-1, <u>Right of action for deprivation of possession of personalty</u>[5].

106) **Count 7:**   RICO (Racketeer Influenced and Corrupt Organizations Act) violations, as promulgated under **OCGA** 16-14-1 et seq.  The necessary prongs of this violation are as follows:

A) At the center is Akins, who runs this illicit enterprise[6] and who has conspired with at least 1 other actor to take money from Local 479 members.   Culpable members include, Akins, Local 479, Certain Local 479 employees functioning in a dual capacity; Shadow Data LLC, and at least 3 payroll companies.   Shadow Data and the payroll companies are not named as defendants because they are believed to have relied on fraudulent inducements[7] of Akins and as such are more valuable as cooperating witnesses than adversarial defendants.   Certain Local 479 employees, though culpable for illegal conduct, are following Akins commands and to do otherwise would leave them unemployed, thus they too are more valuable as

---

[5] The application of these facts to this statute is a first impression in Georgia.   It is not however an original idea of Plaintiff.   Plaintiff has merely copied these allegations from successful claims in other jurisdictions and submitted them here as his own.

[6] While Michael Akins does have lawful responsibilities within Local 479, he has comingled these illicit actions, with his legitimate duties in such a way that it is difficult to discern the two.   Indeed, it is this appearance of legitimacy that allows him to successfully perform illicit activities so effectively – and unchallenged up until this action.

[7] Before meeting with Akins, Plaintiff talked to Cast and Crew staff and was told that meal penalty assessments were not deducted because they were not wages.   Personal belief and these discussions suggest that the payroll entities only withhold meal penalty assessments when informed that under the Local's constitution and bylaws, that meal penalty payments assessments has been approved by membership.

cooperating witnesses than adversarial defendants. The complaint will be amended if discovery shows these assumptions are erroneous. Discovery may reveal the names of additional coconspirators not now known; they will be added, as appropriate, when discovered.

B) Neither Local 479 nor Akins has any lawful claim to the monies being taken as "meal penalties" assessments;

C) Actual force in the form of Expulsion from Local 479 is used to ensure compliance — which is tantamount to a bar to employment - if members do not voluntarily pay meal penalty assessments; they are placed in a bad standing list and in time expelled from the union.

D) Affects interstate commerce by, among other things, changing the amount of monies transferred to members;

E) Predicate Acts - Mail and Wire Fraud, conversion,   The assertions given to payroll companies via electronic means and the resultant check transport through mails which show a deduction not authorized satisfies the predicate acts. The acts of conversion, as detailed above, are likewise predicate acts.  Acts of "Theft by Deception" are predicate acts. This claim contains a buffet of different predicate acts to choose from;

F) These racketeering acts are the regular way Akins conducts ongoing business;

G) The racketeering acts have the same or similar intents, purposes, results, participants, victims, and methods of commission — Namely, the targets are members who are all subject to both the Local 479 contract for service (constitution and bylaws) and the identical collective bargaining agreements.  The culpable members of this enterprise, listed above, take monies from members, where they have a no legal claim to, and then exercise dominion over it;

H) The acts of racketeering activity committed by Defendants have the same or similar results, in that they did all result in Defendants exerting control and possession over Plaintiffs' property,

I) New violations occur every week, have been occurring for at least 8 years and will continue indefinitely into the future unless a court acts to stop it;

J) To date, there have been quite literally thousands of unlawful acts in the furtherance of this scheme and the present "take" totals in the millions of dollars.

K) As a direct and proximate result of Defendants' Georgia RICO violations, Plaintiff has suffered injury.

M) Plaintiff is entitled to three times the actual damages sustained and to recover their attorneys' fees and costs of investigation and litigation reasonably incurred under O.C.G.A. § 16-14-6(c).

N) Because Defendants' actions in violation of the Georgia RICO statute show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, Plaintiff is also entitled to an award of punitive damages.

**Plaintiff Note to Court:**   Plaintiff notifies the court that Local 479 has over 7000 members. Each and every one of these members is subject to both the Local 479 "Constitution and Bylaws" and the contracts of employment (CBA) referenced in this complaint.  A significant portion of these members has suffered as Plaintiff has.  Accordingly, class action status will likely be sought.[8]

---

[8] In the interest of costs and judicial economy, Plaintiff will ask other putative Plaintiffs to refrain from joining this lawsuit initially, but ultimately it is their choice.  At the appropriate time, Plaintiff will engage a licensed attorney who has the requisite experience to represent this class.

113)   **WHEREFORE THEN** Plaintiff respectfully requests the following relief for each and all complaints:

a)  Process according to law;

b)  Declaration that meal penalties are not wages;

c)  Injunction to prevent the assessment of meal penalties in the future, unless and until such time that the membership has voted to approve such assessment;

d)  A refund of all meal penalty assessments collected;

e)  Exemplary damages where allowed;

f)  Treble damages on RICO claim;

g)  Costs of this action;

h)  Jury trial on all questions that a jury may consider;

i)  Attorney fees where allowed;

j)  Such other relief as this court deems just and proper.

This the ___27___ day of July, 2022.

Respectfully Submitted,

Bennon L. Prine, Jr.
Post Office Box 93
Griffin, Georgia 30224
770-227-2439
Prine.b@comcast.net


IATSE
Local 479

**FORM**
**PD-1**

## *Standard Payroll Deduction Form*
*This form should not be used for Cast & Crew Inc.*

Revised: 11/17/2020

Effective from date of hire, I do hereby authorize Studio Mechanics Local 479 I.A.T.S.E. to act for me as my collective bargaining agent in all matters pertaining to minimum wages, terms, conditions, and benefits of my employment with _____ for the production of _____. I also assign Studio Mechanics Local 479 I.A.T.S.E. three per cent (3%) of all wages earned and to be earned by me as an employee, and authorize and direct my employer to deduct such three per cent (3%) from my wages and to remit same to Studio Mechanics Local 479 I.A.T.S.E. I further authorize Studio Mechanics Local 479 I.A.T.S.E. to deposit this authorization with any employer under contract with Studio Mechanics Local 479 I.A.T.S.E. This assignment shall be irrevocable for a period consisting of one (1) year, and shall be automatically renewed, with the same irrevocability, for a successive like period unless canceled by me in writing not more than thirty (30), nor less than ten (10) days prior to the expiration of such period.

Name (please print) _____

Signature _____

Date _____
(month, day, year)

Social Security # _____

## IATSE Local 479
4220 International Pkwy • Suite 100 • Atlanta, GA 30354
(404) 361-5676 Office • (404) 361-5677 • office@iatse479.org • www.iatse479.org

Plaintiff 0007

Payroll Employers Cast & Crew Production Payroll / 450 Seventh Ave. / Suite 900 / New York, NY 10123 / (212) 594-5686 / FEIN# 95-4362622          Please retain this stub for your records

| | |
|---|---|
| PRINE JR., BENNON L. | ***********GET YOUR W2 FORM ONLINE*********** |

| SSN / Tax ID | Exemptions | Check Date | Check Number |
|---|---|---|---|
| xxx-xx-4612 | S-1 | 6/8/17 | 75455618 |

**Controlling Employer:** CRANETOWN MEDIA, LLC (#4093)

W-2 ADDRESS:  PLEASE VERIFY
PRINE, BENNON L.
P.O. BOX 93
GRIFFIN GA 30224

RESIDENT OF GEORGIA

244 FIFTH AVENUE
SUITE 2263
NEW YORK, NY 10001

Dates worked: 5/29-31 6/1-3/2017
Pay period: 05/29 - 06/03/2017

### TAXES/WITHHOLDING

| Description | Amount | YTD |
|---|---|---|
| FICA | 178.73 | 453.16 |
| Medicare | 41.80 | 105.99 |
| FWT | 638.01 | 1,221.38 |
| GA SWT | 163.54 | 372.58 |
| Total Taxes/Withholding: | 1,022.08 | |

### EARNINGS

FIRST AID (EMT, PARAMEDIC, RN) LOCAL 479 479K

| Project | Week End | Invoice# |
|---|---|---|
| STRANGER THINGS (68) | 06/03/2017 | 17395454 |

STRANGER THINGS (Series Code: 002)
STRANGER THINGS (Series Code: 209)

| Description | Hours | Rate | Amount |
|---|---|---|---|
| Straight | 32.00 | 29.80 | 953.60 |
| 6th Day | 13.00 | 44.70 | 581.10 |
| Time & One-half | 18.40 | 44.70 | 822.48 |
| Double Time | 0.80 | 59.60 | 47.68 |
| Meal Pen | | | 239.50 |
| Unworked Holiday | 8.00 | 29.80 | 238.40 |
| Totals: | 72.20 | | 2,882.76 |

### DEDUCTIONS

| Description | Amount | YTD |
|---|---|---|
| 479 Wkdues | 79.30 | 204.34 |

### REIMBURSEMENTS

| Description | Amount | YTD |
|---|---|---|
| Equipment | 125.00 | 255.00 |

| | |
|---|---|
| Total Hours: | 72.20 |
| Gross Wages: | 2,882.76 |
| Taxes: | 1,022.08 |
| Deductions: | 79.30 |
| Reimbursements: | 125.00 |
| Net Wages: | 1,906.38 |

YTD Gross: 7,309.18

Seq #71630587   Run #17246811   Ref #1496935892

**IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| Bennon L. Prine, Jr.<br>　　　　　Plaintiff | Civil Action Number |
| Vs. | |
| "Studio Mechanics Local No. 479", AKA "Stage and Picture Operators AFL-CIO Local Union 479" | _____ |
| ·Michael Akins (Individually and professionally) | |
| J. Doe (Unknown Co-Conspirators) .<br>　　　　　Defendants | |

---

## VERIFICATION

---

PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths, BENNON L. PRINE, JR., who after first being duly sworn, states that he has read the foregoing *Verified Complaint and* that the factual information contained therein is true and correct.

_____
　　　　　　　　Signature

Sworn and subscribed before me
This 27 day of July, 2022.

_____
Notary Public

My Commission Expires: May 18, 2026

[NOTORIAL SEAL]

TIFFANY.HOLLIS
Notary Public - State of Georgia
Spalding County
My Commission Expires May 18, 2026