# EXHIBIT 2



# The Cincinnati Specialty Underwriters Insurance Company
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

| | |
|---|---|
| **POLICY NUMBER:** CSU0069556 | **PREVIOUS POLICY NUMBER:** |

**NAMED INSURED AND MAILING ADDRESS:**
G&D Construction Group Inc.


Refer to Named Insured Schedule CSIA409
PO BOX 490817
LAWRENCEVILLE GA 30049

This is a true and certified copy of the policy.

*Scott E. Hintze, Vice President*

| | |
|---|---|
| **PRODUCER - Your contact for matters pertaining to this policy:** 10-206<br>Kevin Panter Insurance, Inc.<br>95 Progress Circle<br>Blue Ridge GA 30513 | Broker: 831004<br>CSU Producer Resources, Inc.<br>6200 South Gilmore Road<br>Fairfield, OH 45014-5141<br>Scott Hintze |

**Policy Period: From** 04/22/2015 **To** 04/22/2016   AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

**Form of Business:**
☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Joint Venture  ☐ Limited Liability Company  ☐ Other

**Business Description:** Stucco and EIFS Contractor

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | | PREMIUM |
|---|---|---|
| **DEPOSIT PREMIUM** | | |
| Excess Liability | $ | 1,500.00 |
| Terrorism Risk Insurance Extension Act | | Excluded |
| Broker Fee | $ | 35.00 |
| **TOTAL POLICY PREMIUM** | $ | 1,535.00 |
| **CANCELLATION MINIMUM EARNED PREMIUM IS** 25.0**% OF TOTAL POLICY PREMIUM.** | | |
| Surplus Lines Taxes | $ | 61.40 |
| Stamping Fee | | N/A |
| Other Taxes or Fees | | N/A |
| **TOTAL** | $ | 1,596.40 |

**Premium is subject to annual audit:** ☐ Yes  ☒ No

**NOTICE TO POLICYHOLDER:**
**This contract is registered and delivered as a surplus line coverage under the Surplus Line Insurance Law, O.C.G.A. Chapter 33-5.**

**FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT TIME OF ISSUE:**

Refer to Forms and Endorsements Schedule  CSIA406

THIS COMMON POLICY DECLARATIONS AND THE SUPPLEMENTAL DECLARATION(S) TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENT(S), IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Signed by: _____ Date _____
               (Authorized representative or countersignature, where applicable)

Includes copyrighted material of ISO Properties, Inc., with its permission

**POLICY NUMBER** CSU0069556

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

### SCHEDULE

Named Insured:   G&D Construction Group Inc.

# Forms and Endorsements Schedule

**POLICY NUMBER:**  CSU0069556          **POLICY EFFECTIVE DATE:**  04/22/2015

**NAMED INSURED:** G&D Construction Group Inc.

**FORMS APPLICABLE**

**Forms Applicable - Common Forms**

| | |
|---|---|
| CSIA501 (07/14) | Common Policy Declarations |
| CSIA409 (01/08) | Named Insured Schedule |
| ADV654 (11/07) | Frequently Asked Questions About Your Surplus Lines Policy |
| CSIA403 (08/07) | Special Provisions - Premium |
| CSIA404 (08/07) | Service of Suit |
| CSIA410 (03/08) | Notice to Policyholders |
| CSIA300GA (01/09) | Exclusion of Certified Acts of Terrorism - Georgia |

**Forms Applicable - EXCESS**

| | |
|---|---|
| CSCX404 (06/09) | Excess Liability Premises Schedule |
| CSCX403 (06/09) | Calculation Of Premium |
| IL0017 (11/98) | Common Policy Conditions |
| CSCX500 (06/09) | Commercial Excess Liability Coverage Part Declarations |
| CSCX400 (06/09) | Commercial Excess Liability Schedule of Controlling Underlying Insurance |
| CSCX100TOC (02/13) | COMMERCIAL EXCESS LIABILITY COVERAGE FORM TABLE OF CONTENTS |
| CSCX100 (02/13) | COMMERCIAL EXCESS LIABILITY COVERAGE FORM |
| CSCX407 (06/09) | Limitation - Two or More Coverage Forms or Policies Issued By Us |
| CX0119 (09/08) | Georgia Changes |
| CSCX394 (06/09) | Exclusion - Exterior Insulation and Finish Systems EIFS and Direct-Applied Exterior Finish Systems |
| CSCX327 (06/09) | Contractual Liability Exclusion |
| CSCX3000 (08/09) | Damage To Premises Occupied Or Rented To You Exclusion |
| CSIA405 (08/09)-A | Optional Additional Insured |

**CSIA 406 08 07**                                                        **Page 1 of 1**

# FREQUENTLY ASKED QUESTIONS
# ABOUT YOUR *SURPLUS LINES* POLICY

Your broker has placed the insurance you requested in the "**surplus lines** market" with one or more **surplus lines** insurers. By definition, such **surplus lines** insurers are not licensed in the state, but this does not mean that the transaction is not regulated. The **surplus lines** market is an insurance marketplace that is established for the purpose of insuring unique or hard to place risks. Some of the rules that apply to **surplus lines** insurance policies and **surplus lines** insurance companies differ from those that govern coverage obtained from insurance companies licensed in your state. In order for you to better understand the **surplus lines** market and the rights you have in a **surplus lines** transaction, the following material is provided.

Please read this **brochure** carefully, and should you have any questions after reading the material, do not hesitate to ask your broker. If you wish further information, please contact the Regulatory Services Division, Room 604 West Tower, 2 Martin Luther King, Jr. Drive, Atlanta, Georgia 30334 or (404) 656- 2074 or toll free at (800) 656-2298 (request Regulatory Services Division).

WHAT IS A **SURPLUS LINES** POLICY?

A **surplus lines** policy is a policy placed with an insurer that is not licensed or admitted in this state, but is nonetheless eligible to provide insurance on property or liability insurance protection to citizens of this state through specially licensed agents or brokers known as **surplus lines** brokers.

WHY AM I GETTING COVERAGE FROM A SURPLUS LINES INSURER?

Your agent or broker may have been unable to obtain the coverage you requested from insurance companies licensed in this state, but was able to obtain coverage from an eligible **surplus lines** insurance company. The reason for your agent or broker's action is that the risk or property for which you sought coverage may be unique or have certain risk characteristics that caused licensed insurers to decline to write the policy. In circumstances where licensed insurers will not write the risk, your broker is authorized by state law or regulation to obtain the coverage from a "**surplus lines**" insurer.

SINCE THE **SURPLUS LINES** INSURER IS UNLICENSED, IS THE TRANSACTION UNREGULATED?

Surplus lines transactions are regulated by state law that requires that surplus lines policies be procured only by specially licensed brokers. These are called surplus lines brokers and they are authorized to transact business with certain unlicensed insurers that meet financial and other eligibility standards set by the state. These insurers are known as surplus lines insurers. Your agent may have worked with a licensed surplus lines broker in securing your policy. Alternatively, your agent may hold a surplus lines broker's license.

IS MY **SURPLUS LINES** POLICY COVERED BY THE STATE GUARANTY OR INSOLVENCY FUND?

No. There is no guaranty fund for coverage for **surplus lines** policies. The guaranty fund, which provides payments in the event that your insurance company becomes insolvent, only covers policies of licensed insurers.

HOW IS THE RATE OR PRICE OF A **SURPLUS LINES** POLICY DETERMINED?

The rate or premium charged for a **surplus lines** policy is determined by the **surplus lines** insurer. As unlicensed insurers, **surplus lines** insurers do not file their rates or premiums with the state for review or approval.

DOES THE GEORGIA DEPARTMENT OF INSURANCE REVIEW OR APPROVE THE TERMS AND CONDITIONS OF THIS POLICY?

Pursuant to O.C.G.A. § 33-5-21.1, policies of **surplus lines** insurers are not reviewed or approved by the Georgia Department of Insurance.

CAN MY POLICY BE RENEWED OR EXTENDED?

Your **surplus lines** policy may or may not be renewed or extended when the policy expires. An extension of the policy coverage will be dependent upon the continued unavailability of the policy coverage from insurers licensed in this state and the willingness of the **surplus lines** insurer to continue to accept the risk. Since a **surplus lines** policy is generally not subject to the same notice requirements as a policy issued by a licensed insurer, notice of a premium increase for a new policy term or the company's intent not to extend the policy at the same terms and conditions might not be provided until close to the date the policy expires. Therefore, you should keep in contact with your agent or broker, particularly as the expiration of the policy term nears, to ascertain the status of the policy and to assure continuity of coverage.

**ADV 654 11 07**

**This is not a policy. For a complete statement of the coverages and exclusions, please see the policy contract.**

POLICY NUMBER: CSU0069556

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS - PREMIUM

This endorsement modifies the policy to add the following special provisions:

---

**SCHEDULE**

**Deposit Premium and Minimum Premium**

    The minimum premium is equal to 100% of the deposit premium

**Cancellation Minimum Earned Premium**

    Cancellation minimum earned premium is equal to 25 % of the total policy premium.

---

We will compute all premiums for coverage in accordance with our rules and rates.

The deposit premium is subject to audit when indicated as such on the declarations. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the due date on the bill.

If the earned premium is less than the deposit premium paid for the policy period, we will return the excess to the first Named Insured, subject to the minimum premium as defined below. If the earned premium is greater than the deposit premium paid for the policy period the additional premium shall become due and payable to the company.

Deposit premium is the premium stated in the Declarations payable in full at the inception of the policy.

Earned premium is computed by applying the policy rates to the actual premium basis for the audit period.

Minimum premium is the lowest amount to be retained as premium for the policy period. The minimum premium is equal to 100% of the deposit premium shown in the Declarations unless otherwise indicated in the Schedule above.

Cancellation minimum earned premium is the minimum amount to be retained as premium if you request cancellation of this policy.  Cancellation minimum earned premium is equal to 25% of the total policy premium shown in the Declarations unless otherwise indicated in the Schedule above.

Any premium shown as flat charge is fully earned and is not subject to the cancellation minimum earned premium.

The first Named Insured must keep records of the information we need for premium computations, and send us copies at such times as we may request.

**CSIA 403 08 07**

POLICY NUMBER: CSU0069556

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

**Schedule**

Service of Process will be accepted by:

```
Cincinnati Specialty Underwriters
c/o Richard Hill
6200 South Gilmore Road
Fairfield, OH 45014
```

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the party shown in the Schedule above and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The party named in the Schedule above is authorized and directed to accept service of process on behalf of the Company in any such suit or upon request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Pursuant to any statute of any state, territory or district of the United States of America which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance  or other officer specified for that purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary arising out of this contract of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**CSIA 404 08 07**

**THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY**

# NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Specialty Underwriters Insurance Company, a subsidiary of The Cincinnati Insurance Company. The information disclosed in the application and all information collected by  this company or The Cincinnati Insurance Company, The Cincinnati Casualty Company or The Cincinnati Indemnity Company may be shared among all four companies.

**CSIA 410 03 08**                                                                                                      **Page 1 of 1**

CSIA 300 GA 01 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM - GEORGIA

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

We will not pay for any loss, injury or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following modifies insurance provided under the following: Commercial Inland Marine Coverage Part, Commercial Property Coverage Part, Farm Coverage Part and Standard Property Policy:

If a "certified act of terrorism" causes fire damage to property that is subject to the Standard Fire Policy in a state that utilizes the Standard Fire Policy as its minimum fire coverage standard, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and / or Extra Expense coverages, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

With respect to fire resulting from any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

This Section **C.** does not apply to a Commercial Inland Marine Coverage Part for a "certified act of terrorism" that occurs in a state that allows a commercial inland marine exception to their Standard Fire Policy minimum fire coverage regulations.

**D. Exception Covering Minimum Financial Responsibility**

The following applies to the Business Auto Coverage Form, Business Auto Physical Damage Coverage Form, Garage Coverage Form, Motor Carrier Coverage Form, Single Interest Automobile Physical Damage Insurance Policy and Truckers Coverage Form if they are included in, or are part of, this Policy and if the "certified act of terrorism" causes loss in a state that requires compulsory or financial responsibility minimum limits apply to excluded acts of terrorism:

The exclusion stated in Section **B.** of this endorsement does not apply to:

**1.** Liability or Personal Injury Protection Coverage, but only up to the state compulsory or financial responsibility law minimum limits of insurance for each coverage; and

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, Inc., with its permission.

**2.** Uninsured and / or Underinsured Motorists Coverage, if applicable, but only up to the minimum statutory permitted limits of insurance for each coverage.

**E.  Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss, injury or damage.

**F.  Conformity With Statute**

If any terms or conditions of this endorsement are in conflict with the laws of the jurisdiction under which this policy is construed, then such terms and conditions will be deemed changed to conform with such laws, but only to the extent that such terms and conditions are otherwise covered by the Coverage Part, Coverage Form, Policy or Endorsement to which this endorsement applies.

**G.  Supersession**

The exclusion for acts of terrorism in this endorsement supersedes any offers of terrorism coverage.

**H.  Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, Inc., with its permission.

**CSIA 300 GA 01 09**                                                     **Page 2 of 2**  ☐

# EXCESS LIABILITY PREMISES SCHEDULE

**POLICY NUMBER:** CSU0069556      **POLICY EFFECTIVE DATE:** 04/22/2015

**NAMED INSURED:**  G&D Construction Group Inc.

| LOC. | ADDRESS |
|------|---------|
| 1    | 1582 AZALEA DR |
|      | LAWRENCEVILLE GA 30043 |

COMMERCIAL EXCESS LIABILITY
CSCX 403 06 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

     Copyright, Insurance Services Office, Inc., 1998

## THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY

# COMMERCIAL EXCESS LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: CSU0069556     Effective Date: 04/22/2015

Named Insured: G&D Construction Group Inc.

| Commercial Excess Liability Coverage Limits of Insurance: | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| Aggregate Limit | $1,000,000 |

**FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**
Refer to Forms and Endorsements Schedule **CSIA 406**

**SCHEDULE OF CONTROLLING UNDERLYING INSURANCE:**
Refer to form **CSCX 400** which is part of the Commercial Excess Liability policy declarations.

**COMMERCIAL EXCESS LIABILITY PREMISES SCHEDULE:**
Refer to **CSCX 404**

**TOTAL DEPOSIT PREMIUM:** $ 1,500
**Premium is subject to audit:** ☐ Yes   ☒ No

**NOTICES OF CLAIMS OR EVENTS SHOULD BE REPORTED IMMEDIATELY TO:**

The Cincinnati Specialty Underwriters Insurance Company:
Claims Department
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Email: ClaimsMainDesk@cinfin.com
Fax: (877) 242-3665

THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY

# COMMERCIAL EXCESS LIABILITY
# SCHEDULE OF CONTROLLING UNDERLYING INSURANCE

**Attached to and forming part of POLICY NUMBER:** CSU0069556      **Effective date:** 04/22/2015

**Named Insured:** G&D Construction Group Inc.

| General Liability | **Company:** The Cincinnati Specialty Underwriters Insurance Company |||
|---|---|---|---|
| | **Policy Number:** CSU0069555 |||
| | **Policy Period:** 04-22-2015 To 04-22-2016 |||
| | **Limits Of Insurance:** |||
| | Each Occurrence | $1,000,000 | |
| | Personal And Advertising Injury | $1,000,000 | Any one person or organization |
| | Products-Completed Operations Aggregate | $2,000,000 | |
| | General Aggregate | $2,000,000 | |

# COMMERCIAL EXCESS LIABILITY COVERAGE FORM
## TABLE OF CONTENTS

**Page No.**

**SECTION I - COVERAGES** _____ **1**

1. **Insuring Agreement**_____ **1**
2. **Exclusions** _____ **1**
   a. **Asbestos** _____ **1**
   b. **Auto** _____ **1**
   c. **Recording And Distribution Of Material Or Information in Violation Of Law**_____ **2**
   d. **E.R.I.S.A.** _____ **2**
   e. **Employment Practices**_____ **2**
   f. **Fines, Penalties, Punitive, Exemplary, Multiplied or Uninsurable Damages** _____ **2**
   g. **Nuclear** _____ **2**
   h. **Pollutant or Pollutant-Related** _____ **2**
   i. **War** _____ **3**
   j. **Workers' Compensation And Similar Laws**_____ **3**
3. **Defense** _____ **3**

**SECTION II - LIMITS OF INSURANCE** _____ **3**

**SECTION III - CONDITIONS** _____ **4**

1. **Appeals**_____ **4**
2. **Bankruptcy**_____ **4**
   a. **Bankruptcy Of Insured** _____ **4**
   b. **Bankruptcy Of Controlling Underlying Insurer** _____ **4**
3. **Duties In The Event Of An Event, Claim Or Suit** _____ **4**
4. **First Named Insured Duties** _____ **4**
5. **Cancellation**_____ **4**
6. **Changes** _____ **5**
7. **Maintenance Of Changes To Controlling Underlying Insurance** _____ **5**
8. **Other Insurance**_____ **5**
9. **Premium Audit** _____ **5**
10. **Loss Payable** _____ **5**
11. **Legal Action Against Us** _____ **5**
12. **Transfer Of Defense** _____ **6**
    a. **Defense Transferred To Us** _____ **6**
    b. **Defense Transferred By Us** _____ **6**
13. **When We Do Not Renew**_____ **6**

**SECTION IV - DEFINITIONS** _____ **6**

1. **"Controlling underlying insurance"**_____ **6**
2. **"Controlling underlying insurer"** _____ **6**
3. **"Event"**_____ **6**
4. **"Loss"** _____ **6**
5. **"Retained Limit"**_____ **6**
6. **"Pollutants"** _____ **6**

CSCX 100 TOC 02 13

Includes copyrighted material of Insurance
Services Office Inc., with its permission.

Page 1 of 1

# COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy or under "controlling underlying insurance". The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".

Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section **IV** - Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

## SECTION I - COVERAGES

1. **Insuring Agreement**

   a. We will pay on behalf of the insured, except as stated in this Coverage Part, those sums in excess of the "retained limit" any insured becomes legally obligated to pay as damages to which insurance provided under this Coverage Part applies.

   b. The amount we will pay for "loss" is limited as described in Section **II** - Limits Of Insurance.

   c. This insurance applies to damages that are subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to damages arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

   d. If the "controlling underlying insurance" requires, for a particular claim, that the injury or damages occur during its policy period in order for that coverage to apply, then this insurance will only apply to that injury or damages if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular damage takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that damage takes place during the policy period of this Coverage Part.

2. **Exclusions**

   The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. The exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

   Insurance provided under this Coverage Part does not apply to:

   a. **Asbestos**

      Any liability or damages:

      (1) Caused by or arising out of, attributable to, or in any way related to asbestos in any form or transmitted in any manner; or

      (2) For any asbestos related diseases.

   b. **Auto**

      Any loss, cost or expense caused by or resulting from any of the following auto coverages:

      (1) First-party physical damage coverage;

      (2) No-fault coverage;

      (3) Personal injury protection or auto medical payments coverage; or

      (4) Uninsured or underinsured motorists coverage.

CSCX 100 02 13

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Page 1 of 6

**c.** **Recording and Distribution of Material or Information in Violation of Law**

Any liability or damages arising out of:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**d.** **E.R.I.S.A.**

Any liability or damages arising out of:

**(1)** Any insured's activities as a fiduciary under the Employment Retirement Income Security Act of 1974, or any amendments thereof or any regulation or orders issued pursuant thereof; or

**(2)** The Pension Benefits Act and the Consolidation Omnibus Budget Reconciliation Act of 1986 (COBRA);

Including any amendments, regulations or enabling statutes pursuant thereto, or any similar federal, state or provincial statute or regulation.

**e.** **Employment Practices**

Any injury to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs **(1)(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(1)(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

**f.** **Fines, Penalties, Punitive, Exemplary, Multiplied or Uninsurable Damages**

**(1)** Civil or criminal fines or penalties imposed by law;

**(2)** Punitive or exemplary damages;

**(3)** The multiplied portion of multiplied damages;

**(4)** Any amount for which an insured is not financially liable; or

**(5)** Any award that is uninsurable under the law governing this policy,

**g.** **Nuclear**

Any liability or damages based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the hazardous properties, including radioactive, toxic or explosive properties, of any nuclear material. Nuclear material means any source material, special nuclear material, or by-product materials as those terms are defined under the Atomic Energy Act of 1954 or any amendments thereto.

**h.** **Pollutant or Pollutant-Related**

**(1)** Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutral-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**i.  War**

Injury, however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**3.  Defense**

**a.** We have no duty to defend any insured or participate in the settlement or defense of any claim, suit or proceedings.

**b.** We have the right, but not the duty, to be associated with the insured or "controlling underlying insurers" in the investigation, defense or settlement of any claim, suit or proceeding to which we think this Coverage Part may apply.

**c.** If the "controlling underlying insurance" limits are exhausted by payment of "loss", we have the right but not the duty to investigate, defend or settle any claim or suit to which we think this Coverage Part may apply. However, at our discretion, if we assume our right to investigate, defend

or settle any claim or suit we may withdraw from such investigation, defense or settlement proceedings after our applicable Limits of Insurance as stated in the Commercial Excess Liability Declarations have been exhausted by payments.

We will not pay any expenses except those we directly incur at our discretion.

## SECTION II - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Commercial Excess Liability Coverage Declarations, and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or suits brought, or number of vehicles involved;

**c.** Persons or organizations making claims or bringing suits;

**d.** Coverages provided by this insurance; or

**e.** Limits available under any "controlling underlying insurance.

**2.** The Limits of Insurance of this Coverage Part will apply as follows:

**a.** This insurance only applies in excess of the "retained limit".

**b.** The Aggregate Limit is the most we will pay for the sum of all "loss" for all damages covered under this Coverage Part.

**c.** The Each Occurrence Limit is the most we will pay for the sum of all "loss" under this insurance because of all damages arising out of any one "event". Any amount we pay for damages arising out of an "event" will reduce or exhaust the amount of our applicable aggregate limit of insurance available for payment of any other "event".

**d.** With respect to any claim or suit to which this insurance applies and for which we assume charge of the settlement or defense, if the limits of insurance of any "controlling underlying insurance" are reduced by defense expenses then any defense expense payments we make will reduce our applicable Limits of Insurance in the same manner.

**3.** If any "controlling underlying insurance" has a policy period that is different from the policy period of this Coverage Part then, for the purposes of this insurance, the "retained limit" will only be reduced or exhausted by payments made for damages covered under this insurance.

The Aggregate Limits of this Coverage Part applies separately to each consecutive annual period of this Coverage Part and to any remaining period of this Coverage Part of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional pe-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

riod will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION III - CONDITIONS

The following Conditions apply. The Conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this insurance unless superseded by the following conditions.

1. **Appeals**

   If the "controlling underlying insurer" or insured elects not to appeal a judgment in excess of the amount of the "retained limit", we may do so at our own expense. We will also pay for taxable court costs, pre- and post judgment interest and disbursements associated with such appeal. In no event will this provision increase our liability beyond the Limits of Insurance described in Section **II** - Limits Of Insurance.

2. **Bankruptcy**

   a. **Bankruptcy of Insured**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

   b. **Bankruptcy of Controlling Underlying Insurer**

      Bankruptcy of the "controlling underlying insurer" will not relieve us of our obligations under this Coverage Part.

   However, insurance provided under this Coverage Part will not replace any "controlling underlying insurance" in the event of bankruptcy or insolvency of the "controlling underlying insurer". The insurance provided under this Coverage Part will apply as if the "controlling underlying insurance" were in full effect and recoverable.

3. **Duties in the Event of an Event, Claim or Suit**

   a. You must see to it that we are notified in writing as soon as practicable of an "event" which may result in a claim under this insurance.

   b. If a claim is made or suit is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or suit and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or suit as soon as practicable.

   c. You and any other insured involved must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of damages to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, admit to any liability, consent to any judgment, settle any claim or suit, assume any obligation, or incur any expense, other than for first aid, without our consent.

4. **First Named Insured Duties**

   The first Named Insured is the person or organization first named in the Declarations and is responsible for the payment of all premiums. The first Named Insured will act on behalf of all other Named Insureds for giving and receiving of notice of cancellation or the receipt of any return premium that may become payable.

   At our request, the first Named Insured will furnish us, as soon as practicable, with a complete copy of any "controlling underlying insurance" and any subsequently issued endorsements or policies which may in any way affect the insurance provided under this Coverage Part.

5. **Cancellation**

   a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## 6. Changes

This Coverage Part contains all the agreements between you and us concerning the insurance afforded. The first Named Insured is authorized by all other insureds to make changes in the terms of this Coverage Part with our written consent. This Coverage Part's terms can be amended or waived only by endorsement issued by us and made part of this insurance.

## 7. Maintenance of Changes to Controlling Underlying Insurance

Any "controlling underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of aggregate limits in accordance with the provisions of such "controlling underlying insurance" that results from injury or damages to which this insurance applies.

Such exhaustion or reduction is not a failure to maintain "controlling underlying insurance". Failure to maintain "controlling underlying insurance" will not invalidate insurance provided under this Coverage Part, but insurance provided under this Coverage Part will apply as if the "controlling underlying insurance" were in full effect.

The first Named Insured must notify us in writing, as soon as practicable, if any "controlling underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "controlling underlying insurance" is changed.

## 8. Other Insurance

**a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

## 9. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** If this policy is auditable, the premium shown in this Coverage Part is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premium is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 10. Loss Payable

Liability under this Coverage Part does not apply to a given claim unless and until:

**a.** The insured or insured's "controlling underlying insurer" has become obligated to pay the "retained limit"; and

**b.** The obligation of the insured to pay the "loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.

## 11. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against

an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, "controlling underlying insurer" and the claimant or the claimant's legal representative.

## 12. Transfer of Defense

### a. Defense Transferred To Us

When the limits of "controlling underlying insurance" have been exhausted, in accordance with the provisions of "controlling underlying insurance", we may elect to have the defense transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or suits seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

### b. Defense Transferred By Us

If we exercise our right to defend any claim, suit or proceeding, when our limits of insurance have been exhausted our right to provide a defense will cease.

We will cooperate in the transfer of control of defense to any insurer specifically written as excess over this Coverage Part of any outstanding claims or suits seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

In the event that there is no insurance written as excess over this Coverage Part, we will cooperate in the transfer of control to the insured and its designated representative.

## 13. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION IV - DEFINITIONS

Except as otherwise defined in this Coverage Part or in any endorsement to this Coverage Part, the definition of terms and phrases contained in this Coverage Part and any endorsements will be the same as those terms and phases are defined in the "controlling underlying insurance".

1. "Controlling underlying insurance" means any policy of insurance or self-insurance listed as such in our Schedule of Controlling Underlying Insurance.

2. "Controlling underlying insurer" means any insurer who provides any policy of insurance listed as such in our Schedule of Controlling Underlying Insurance.

3. "Event" means an occurrence, offense, accident, act, error or omission, or other event to which the applicable "controlling underlying insurance" applies.

4. "Loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

   a. Settlements, judgments, binding arbitration; or

   b. Other binding alternate dispute resolution proceeding entered into with our consent.

   "Loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

5. "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim

6. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to, that which has been recognized in industry or government to be harmful or toxic to persons, property or the environment, regardless of whether the injury, damage, or contamination is caused directly or indirectly by the "pollutants" and regardless of whether:

   a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

   b. The insured uses, generates or produces the "pollutant".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL EXCESS LIABILITY
CSCX 407 06 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION - TWO OR MORE COVERAGE FORMS
# OR POLICIES ISSUED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following condition is added to **Section III - Conditions:**

**14.  Two or More Coverage Forms or Policies Issued by Us**

If two or more liability coverage forms, coverage parts or policies issued to you by us or any company affiliated with us apply to the same injury or claim for damages, the maximum Limits of Insurance shall not exceed the highest applicable Limits of Insurance available under any one coverage form, coverage part or policy. This condition does not apply to any coverage form, coverage part or policy issued by us or an affiliated company specifically to apply as excess insurance over this policy.

**CSCX 407 06 09**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**Page 1 of 1**  ☐

COMMERCIAL EXCESS LIABILITY
CX 01 19 09 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

**A.** Paragraph **3.a.** of **Duties In The Event Of An Event, Claim Or Suit** Provisions of **Section III - Conditions** is replaced by the following:

**a.** In the event of an "event", claim or suit, we or our representative must receive prompt notice of the "event". Include:

**(1)** How, when and where the "event" occurred;

**(2)** The insured's name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "event", may be satisfied by an injured third party who, as the result of such "event", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

**B.** Paragraph **5.a.** of the **Cancellation** Provisions of **Section III - Conditions** is replaced by the following:

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**(1)** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**(2)** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(a)** 10 days from the date of mailing or delivering our notice, or

**(b)** The effective date of cancellation stated in the first Named Insured's notice to us.

**C.** Paragraph **5.e.** of the **Cancellation** Provisions of **Section III - Conditions** is replaced by the following:

**e.** **Premium Refund**

**(1)** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**(2)** If we cancel, the refund will be pro rata, except as provided in **(3)** below.

**(3)** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**(4)** If the first Named Insured cancels, the refund may be less than pro rata.

**(5)** The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added to Paragraph **5. Cancellation** of **Section III - Conditions** and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **E.** below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**E.** Paragraph **5.f.** of the **Cancellation** Provisions of **Section III - Conditions** is replaced by the following:

If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

© Insurance Services Office, Inc., 2008

COMMERCIAL EXCESS LIABILITY
CSCX 394 06 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverages:**

Insurance provided by this Coverage Part does not apply to any liability that arises out of, is caused by, or is attributable to, whether in whole or in part, any of the following:

**a.** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

**b.** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or structure to which a "wall finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

This exclusion also applies to any liability:

**a.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an insured contract;

**b.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

**c.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warning or instructions with regard to a "wall finish system".

**2.** The **DEFINITIONS Section** is amended to include the following:

**a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

  **(1)** A rigid or semi-rigid substrate;

  **(2)** The adhesive and / or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

  **(3)** A reinforced or unreinforced base coat or mesh;

  **(4)** A finish coat providing surface texture to which color may be added; and

  **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

  that interact to form an energy efficient wall.

**b.** "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**(1)** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

**(2)** The adhesive and / or mechanical fasteners used to attach the insulation board to the substrate;

**(3)** A reinforced or unreinforced base coat or mesh;

**(4)** A finish coat providing surface texture to which color may be added; and

**(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

that interact to form an energy efficient wall.

**c.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom, or mildew and mycotoxins, spores, scents or byproducts produced or released by fungi.

**d.** "Wall finish system" means:

**(1)** An "exterior insulation and finish system";

**(2)** A "direct-applied exterior finish system"; or

**(3)** Any energy efficient exterior cladding or finish system substantially similar to Paragraph **(1)** or **(2)** above.

Includes copyrighted material of ISO Properties, Inc., with its permission.

COMMERCIAL EXCESS LIABILITY
CSCX 327 06 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**A.**  The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverages:**

Insurance provided by this Coverage Part does not apply to:

**1.**  Any liability for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**COMMERCIAL EXCESS LIABILITY**
**CSCX 3000 08 09**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DAMAGE TO PREMISES OCCUPIED OR RENTED
# TO YOU EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverages:**

Insurance provided by this Coverage Part does not apply to any loss or damage to any property or premises:

**1.** You or any insured rent or lease;

**2.** You or any insured temporarily occupy; or

**3.** Loaned to you or any insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OPTIONAL COVERAGE TO ANY ADDITIONAL INSURED**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**A.** At the option of the first Named Insured only, and subject to the terms of this insurance, any additional insureds covered in the "controlling underlying insurance" listed in the Schedule of Underlying Insurance are also insureds, but only to the extent that insurance is provided for such additional insureds thereunder.

**CSIA405 (08/09)-A**                                                                                          **Page 1  of  1**

CINCINNATI SPECIALTY UW COMPANY
PO BOX 145496
CINCINNATI OH 45250-5496

# REINSTATEMENT NOTICE

Named Insured & Mailing Address:

G&D CONSTRUCTION GROUP INC.
PO BOX 490817
LAWRENCEVILLE GA 30049

Producer: 10-206

KEVIN PANTER INSURANCE, INC.
95 PROGRESS CIRCLE
BLUE RIDGE GA 30513

Policy No.:   CSU0069556
Type of Policy:   PACKAGE

You recently received a notice advising this policy was being cancelled effective 06/01/2015 .

This notice is to advise that the policy is being reinstated without lapse in coverage.

Named Insured

G&D CONSTRUCTION GROUP INC.
PO BOX 490817
LAWRENCEVILLE GA 30049

Date Mailed:
23rd day of May, 2015

*Scott E. Hintze*

SCOTT HINTZE

CINCINNATI SPECIALTY UW COMPANY
PO BOX 145496
CINCINNATI OH 45250-5496

Named Insured: G&D CONSTRUCTION GROUP INC.                    Policy Number: CSU0069556

This page is separate and independent from the notice given.
We are informing you that the following parties were notified of this action.

**PARTIES NOTIFIED**

Named Insured
G&D Construction Group Inc.
PO BOX 490817
LAWRENCEVILLE GA 30049

Producer
Kevin Panter Insurance, Inc.
95 Progress Circle
Blue Ridge GA 30513

CINCINNATI SPECIALTY UW COMPANY
PO BOX 145496
CINCINNATI OH 45250-5496

# NOTICE OF CANCELLATION OF INSURANCE

Named Insured & Mailing Address:

G&D CONSTRUCTION GROUP INC.
PO BOX 490817
LAWRENCEVILLE GA 30049

Producer: 10-206

KEVIN PANTER INSURANCE, INC.
95 PROGRESS CIRCLE
BLUE RIDGE GA 30513

---

Policy No.:   CSU0069556
Type of Policy:   PACKAGE
Date of Cancellation:   06/01/2015; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We are cancelling this policy.  Your insurance will cease on the Date of Cancellation shown above.

---

The reason for cancellation is  Non Pay

If loss information is not included with this notice, you may request that we provide it to you.  The information will give you details on closed claims, open claims, and information on notices of occurrences.  We will provide you this information within 30 days of receipt of your request.

Named Insured

G&D CONSTRUCTION GROUP INC.
PO BOX 490817
LAWRENCEVILLE GA 30049

Date Mailed:
19th day of May, 2015

*Scott E. Hintze*

SCOTT HINTZE

FORM# CC969705GA31996
ODEN 3.0.14.08a
Copy for Named Insured
GACC19NONPMNT
05182015BNNY
Page 1 of 1

CINCINNATI SPECIALTY UW COMPANY
PO BOX 145496
CINCINNATI OH 45250-5496

Named Insured: G&D CONSTRUCTION GROUP INC.                    Policy Number: CSU0069556

This page is separate and independent from the notice given.
We are informing you that the following parties were notified of this action.

**PARTIES NOTIFIED**

Named Insured
G&D Construction Group Inc.
PO BOX 490817
LAWRENCEVILLE GA 30049

Producer
Kevin Panter Insurance, Inc.
95 Progress Circle
Blue Ridge GA 30513

**THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY**
P.O. Box 145496, CINCINNATI, OH 45250-5496

# CANCELLATION CREDIT

POLICY NUMBER: CSU0069556
**NAMED INSURED AND MAILING ADDRESS:**
G&D Construction Group Inc.


Refer to Named Insured Schedule CSIA 409
PO BOX 490817

LAWRENCEVILLE GA 30049

---

**PRODUCER - Your contact for matters pertaining to this policy:**
Kevin Panter Insurance, Inc.                                          10-206
95 Progress Circle

Blue Ridge GA 30513

---

Broker: 831004
CSU Producer Resources, Inc.
6200 South Gilmore Road
Fairfield, OH 45014-5141
Scott Hintze

---

**Date of Cancellation:** 06/01/2015 AT 12:01 A.M.     Signature of authorized representative or countersignature,
STANDARD TIME AT YOUR MAILING ADDRESS     where applicable:
SHOWN ABOVE.

---

|  | RETURN PREMIUM |
|---|---|
| Premium: | $1,125.00 |
| Terrorism Risk Insurance Extension Act | $.00 |
| Broker Fee | $.00 |
| Surplus Lines Taxes | $45.00 |
| Stamping Fee | $.00 |
| Other taxes or fees | $.00 |
| **TOTAL RETURN:** | $1,170.00 |

This policy is canceled as indicated in the Direct Notice of Cancellation mailed to
you. The Return Premium, if any, is subject to the terms and conditions of the policy.