# EXHIBIT 5

Fulton County Superior Court
***EFILED***TV
Date: 5/28/2020 5:14 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

NP 301, LLC,

        Plaintiff,

v.

METCON, INC.

        Defendant.

Civil Action File
No. _2020CV336620_____

### COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT

COMES NOW, Plaintiff NP 301, LLC ("Plaintiff" or "NP301") and files this Complaint for Damages For Breach of Contract against Metcon, Inc. ("Defendant" or "Metcon") showing this Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff NP 301, LLC, is a domestic limited liability company with principal place of business in Atlanta, Fulton County, Georgia.

2.     Defendant Metcon is a North Carolina corporation that purposefully availed itself to jurisdiction over it in Georgia by reaching out to Plaintiff NP301 while in the State of Georgia by bidding on the construction of a hotel to be built for Plaintiff NP301, securing the bid by an in person meeting in Georgia, entering in the contract for construction, concluded negotiations over a maintenance bond with Plaintiff NP301, which was in Georgia during the final negotiations and by other acts and communications with Plaintiff NP301 and the Georgia architect during the course of construction and afterwards.   Defendant Metcon may be served with a summons and copy of this Complaint through its Registered Agent and President Aaron Thomas, at its principal office

01755249-3 01742998-1



EXHIBIT
II

at 763 Comtech Drive, Pembroke, NC 28372, or one of its other officers, Deborah Alred, Secretary or W. Steve Ezzell at that address.

3.      This Court has jurisdiction over Defendant because it has purposefully availed itself of transacting business in this State through contacts in the State of Georgia directly associated with and arising in connection with the contract(s) at issue in this lawsuit and carried on regular and frequent business with Plaintiff NP301 in Georgia as well as the architect for the hotel project, which is in Georgia.   Defendant also obtained a maintenance bond with Plaintiff NP301 as Obligee, which was delivered in the State of Georgia.  Personal jurisdiction is properly in the Court pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91. Venue is proper in this Court because Plaintiff NP301's registered office and principal place of business is in Fulton County, Georgia.

## FACTUAL BACKGROUND

4.      Plaintiff NP301 is the owner of a SpringHill Suites Hotel located in Lumberton, North Carolina that was constructed pursuant to a written construction contract between NP301 and Metcon, Inc. ("Metcon")(the "Contract").  A true and correct copy of the Contract is attached hereto as Exhibit "A."

5.      Under the construction contract, Metcon acted as general contractor for the construction of the entire hotel pursuant to design documents prepared by architects Richard Rauh & Assoc., Ltd.  of Atlanta, Georgia, but, upon information and belief, utilized subcontractor(s) for some or all of the work giving rise to the property damage complained of herein.

6.      Metcon obtained the Contract by competitive bid which was submitted  to Plaintiff NP301's Atlanta, Georgia offices and subsequently negotiated through its agents in person in Plaintiff NP301's Atlanta, Georgia offices along with the Atlanta based architect.  The Contract was signed by Plaintiff NP301 in its Atlanta office.

7.      Among the requirements of the design documents for the hotel is the requirement that water not be permitted to enter the hotel, or to leak from the plumbing lines or fixtures, and damage the interiors or make the hotel rooms unusable.

8.      Water damage was observed in elements of the hotel at various locations where water was not to accumulate or run. Metcon was directed by NP301 pursuant to the Contract to resolve all instances of water penetration and leakage, as well as to correct damage to affected portions of the hotel. Metcon agreed to eliminate the water damage and its causes. It made efforts to do so.  Metcon acted to remedy water intrusion and apparent water intrusion at the hotel in a number of instances, sometimes asserting that it was shower pans and not the exterior envelope that was at issue, and assured Plaintiff NP301, until a certain point in time, that the leaks would be remedied as well as the associated resulting damage.

9.      As an additional assurance to NP301, Metcon, as principal, furnished NP301 with a "Maintenance Bond" ("Bond") in the penal sum of $300,000 such that should Metcon fail to resolve any construction defect without cost to Plaintiff NP301 for a period of three years from September 11, 2016, Liberty Mutual Insurance Company and Arch Insurance  (the "Sureties") as joint obligors with each other and Metcon, would be liable up to the penal sum for costs, expenses and damages suffered by Plaintiff NP301. A true and correct copy of the Bond is attached hereto as Exhibit "B."  The Maintenance Bond was delivered to Plaintiff NP301 in Atlanta.

10.      Following the effective date of the Bond of September 11, 2016, the hotel did experience renewed damage as a result of the defective construction of Metcon, which allowed water intrusion and accumulation in places not in compliance with the Contract. In December, 2018, subsurface tests were undertaken which were reported in February 2019 that revealed a previously hidden building envelope-wide problem with the way the exterior EIFS had been

-3-

01755249-3

applied.  Despite multiple demands against Metcon to remedy and repair its defective work and resulting damages at the hotel, Metcon has failed to do so.

11.     In or about February 2019, having received a report of the existence and details of the problems, Plaintiff NP301 timely put the Sureties and Metcon on notice of the occurrence of damage resulting from Metcon's defective work including additional water damage.

12.     On May 3, 2019, Plaintiff NP301 made demand to the Sureties and Metcon for payment in full of the penal amount of the Bond of $300,000.

13.     The Sureties and Metcon have failed and refused to make payment of any kind to Plaintiff NP301 or to provide other remedial relief pursuant to the Bond and the Contract. Accordingly, Plaintiff NP301 was forced to engage a remedial contractor, Pinkerton & Laws, Inc. ("P&L") to perform repairs to the construction defects left behind by Metcon.

14.     By way of letter dated November 15, 2019, on behalf of NP301, counsel submitted evidence of payment to P&L for remedial work due to Metcon's construction defects in excess of the penal sum of the Bond and repeated Plaintiff NP301's demand for payment to the Sureties and to Metcon. A true and correct copy of the letter is attached as Exhibit "C." Despite demand and evidence of damages, the Sureties and Metcon have failed to make any payment as required pursuant to the Bond and the Contract.  A lawsuit was timely brought against the Sureties in the Superior Court of Gwinnett County for recovery under the Bond.

<div align="center">

**COUNT ONE**

**BREACH OF CONTRACT AGAINST DEFENDANT METCON**

</div>

15.     Plaintiff NP301 incorporates by reference the foregoing paragraphs as if set completely forth herein.

16.     Under the Contract, Metcon had an obligation to Plaintiff NP301 for all the work under the Contract to be performed in accordance with the Contract, as well as all codes and applicable industry standards.

17.     Metcon breached its Contract with Plaintiff NP301 and has refused to remedy the construction defects caused by its breach of contract or to pay for the damages caused thereby despite having been provided evidence of the remedial costs attributable to defective construction work of Metcon.

18.     Metcon's failure to remedy the defects or to pay for the remedial work is without legal excuse.

19.     Plaintiff NP301 has fulfilled all conditions, if any, to recovery against Metcon under the Contract.

20.     Plaintiff NP301 has timely brought this action against Metcon under the Contract.

21.     Plaintiff NP301 has suffered damages in an amount to be shown at trial including but not limited to the following types of contractually allowed damages:

| | | |
|---|---|---|
| a. | Direct remediation costs: | $664,081.92 |
| b. | Direct Payments to P&L for reconstruction: | $1,449,182.00 |
| c. | Architectural and Engineering Fees: | $7,764.80 |
| d. | Permits and Fees: | $3,347.00 |
| e. | Taxes and Insurance Premiums: | $1,335.00 |
| f. | Furniture, Fixtures & Equipment: | $48,265.69 |
| g. | Testing and Inspections: | $29,720.70 |
| h. | Defect related travel costs: | $1,028.57 |
| | **Total** | $2,204,725.68 |

-5-

22.     Plaintiff NP301 is entitled to a judgment in at least the total of those amounts shown in paragraph 21 against Metcon, plus interest, attorneys' fees and expenses.  In addition to those amounts, Plaintiff NP301 suffered from the loss of room revenue because of unavailable rooms due to damage and/or disruption resulting from the remediation work, said being $746,024.00 in lost room revenue compared to the equivalent time period during the preceding year, including comped rooms. Moreover, Plaintiff NP301 has incurred other costs exceeding $37,621.65, not listed above, specifically because of Metcon's defective construction of the hotel.

<div align="center">

**COUNT TWO**

**ATTORNEYS' FEES AND EXPENSES**

</div>

23.     Plaintiff NP301 re-alleges and reincorporates paragraphs 1-22 as if restated herein.

24.     Metcon has been stubbornly litigious, has caused Plaintiff NP301 unnecessary trouble and expense and has acted in bad faith breach of the Contract and the Bond.

25.     By reason of the foregoing, Plaintiff NP301 is entitled to a judgment of all reasonable attorneys' fees and expenses of litigation incurred in prosecuting this case.

WHEREFORE, Plaintiff NP301 prays that:

(1)     It be granted judgment against Defendant Metcon for its breaches of Contract in an amount no less than $2,204,725.68, but otherwise in an amount to be proven at trial;

(2)     It be granted judgment for prejudgment interest on the unpaid amount totaling no less than $2,204,725.68 as of the date of this Complaint;

(3)     It additionally be granted judgment in the amount of Plaintiff NP301's reasonable and necessary attorney's fees and expenses incurred in pursuing this litigation;

(4)     All costs be cast against Defendant Metcon; and

(5)      It be granted such other and further relief as this Court deems just and proper.

This <u>28th</u> day of May, 2020.

<div align="right">

Respectfully submitted,

*/s/ Henry M. Quillian III*
Henry M. Quillian III
Georgia Bar No. 003160
hquillian@taylorenglish.com
Stephen L. Wright
Georgia Bar No. 778747
swright@taylorenglish.com

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
Facsimile: (404) 434-7376

</div>

01755249-3

# EXHIBIT A



# AIA® Document A101™ – 2007

**Standard Form of Agreement Between Owner and Contractor** *where the basis of payment is a Stipulated Sum*

**AGREEMENT** made as of the 27th day of December in the year 2013
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

NP 301, LLC
c/oNorth Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
(770) 817-8408

and the Contractor:
*(Name, legal status, address and other information)*

Metcon, Inc.
P.O. Box 1149
763 Comtech Drive
Pembroke, NC 28372
(910) 521-8013

for the following Project:
*(Name, location and detailed description)*

Springhill Suites Lumberton
5128 Fayetteville Road
Lumberton, NC 28358

The Architect:
*(Name, legal status, address and other information)*

Richard Rauh & Associates, LTD./Architects
433 Bishop Street N. W.
Atlanta, Georgia 30318-4303
(404) 892-2833
(404) 892-3946

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.



**AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.**
User Notes:                                                                                                                                                    (1634160998)

1

TABLE OF ARTICLES

1     THE CONTRACT DOCUMENTS

2     THE WORK OF THIS CONTRACT

3     DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4     CONTRACT SUM

5     PAYMENTS

6     DISPUTE RESOLUTION

7     TERMINATION OR SUSPENSION

8     MISCELLANEOUS PROVISIONS

9     ENUMERATION OF CONTRACT DOCUMENTS

10    INSURANCE AND BONDS

### ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

### ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

### ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be January 6, 2014, subject to the Owner providing a written Notice to Proceed to the Contractor no later than January 3, 2014 and  Owner providing a land disturbance permit from the city of Lumberton and NCDENR by January 3, 2014.  Should the above not take place until a later date, the date of commencement shall be adjusted to a date that is three (3) business days following the date that the Owner provides a Notice to Proceed and provides a land disturbance permit from the City of Lumberton and NCDENR..
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than ( Three Hundred Forty Eight - (348) days from the date of commencement, subject to adjustments of this Contract Time as provided in the Contract Documents and



Init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                            (1634160998)

2

provided that the Owner provides a full building permit from the City of Lumberton no later than a date that is forty-five (45) calendar days after the date of commencement. Should the Owner fail to provide the Contractor with the building permit within the specified time period above, the Contract Time shall be extended on a calendar "day for day" basis until such date that the Owner provides the Contractor with the building permit.

| Portion of Work | Substantial Completion Date |
|---|---|

*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4   CONTRACT SUM
**§ 4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Eight Million Four Hundred  Fifty-One Thousand Five Hundred Eighty Dollars and  Zero Cents ($ 8,451,580.00 ), subject to additions and deductions as provided in the Contract Documents.

**§ 4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

5-YR Elevator Maintenance + $30,000.00 Accepted Adds
1-YR l/s Maintenance +$ 9,750.00 Accepted Adds

**§ 4.3** Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|---|---|---|
| Concrete Footings per yard | $  150.00 | |
| Steel Reinf per ton in place | $   60.00 | |
| Undercut and replace per CY | $   24.00 | |
| 57 stone per CY | $   42.00 | |
| Topsoil per CY | $   50.00 | |
| Cedar screen wall fencing 8' tall/LF | $   21.00 | |

**§ 4.4** Allowances included in the Contract Sum, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|---|---|
| Owner's Marketing Trailer | $   5,000.00 |
| Light Fixtures | $ 200,000.00 |
| Contractor Provided | |

## ARTICLE 5   PAYMENTS
### § 5.1 PROGRESS PAYMENTS
**§ 5.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**§ 5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:


Init.

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                    (1634160998)

**§ 5.1.3** Provided that an Application for Payment is received by the Architect not later than the 25th day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 25th day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty ( 30 ) days after the Architect receives the Application for Payment. *(Federal, state or local laws may require payment within a certain period of time.)*

**§ 5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 5.1.5** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**§ 5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

   .1   Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent ( 10 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

   .2   Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ten percent ( 10 %);

   .3   Subtract the aggregate of previous payments made by the Owner; and

   .4   Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

**§ 5.1.7** The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

   .1   Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as called for in Section 1.08.E of the Supplemental Conditions.
       *(Section 9.8.5 of AIA Document A201–2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

   .2   Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

**§ 5.1.8** Reduction or limitation of retainage, if any, shall be as follows: in accordance
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

with Section 1.08.E of the Supplemental Conditions

**§ 5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**§ 5.2 FINAL PAYMENT**
**§ 5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when



**AIA Document A101™ – 2007**. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                        (1634160998)

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 6    DISPUTE RESOLUTION
### § 6.1 INITIAL DECISION MAKER
The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

Richard Rauh & Associates
433 Bishop Street NW
Atlanta, GA 30318-4303
(404) 892-2833
(404) 892-3946

### § 6.2 BINDING DISPUTE RESOLUTION
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[ X ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[   ]    Litigation in a court of competent jurisdiction

[   ]    Other *(Specify)*

## ARTICLE 7    TERMINATION OR SUSPENSION
§ 7.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2007.

§ 7.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

## ARTICLE 8    MISCELLANEOUS PROVISIONS
§ 8.1 Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 8.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

   %

§ 8.3 The Owner's representative:
*(Name, address and other information)*


Init.
/

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
**User Notes:**                                (1634160998)

NP 301, LLC
Mr. John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
(770) 817-8408
john.hicks@northpointhospitality.com

**§ 8.4** The Contractor's representative:
*(Name, address and other information)*

Mr. Sam Isham, Executive Vice President
Metcon, Inc.
P.O. Box 1149
763 Comtech Drive
Pembroke, NC 28372
(910) 521-8013
sisham@metconnc.com

**§ 8.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**§ 8.6** Other provisions: Accepted Clarifications

Provide romex cable in guestrooms and MC cable where required by code
Provide battery return for both elevators
Provide stain grade maple in lieu of specified teak veneer for public area millwork
Provide 640 LF of 8' tall Cedar privacy fence
Change rock wool insulation to fiberglass at walls
Delete stair to roof and change to roof hatch and ladder
Set storefront glazing at pool on a 3' knee wall
Change Bermuda seed to centipede seed for 68,000 SF area
Remove ¼" Dens Deck Primed on Roof Deck

"Other Provisions – Accepted Clarifications"
*Upon the request of Owner, Contractor agrees to subordinate irrevocably any lien, or claim or right of lien, against an approximate one (1) acre parcel (the "Restaurant Parcel") of the Property on which the Project is located which Contractor may now or hereafter have under law or by agreement on account of labor, services, materials, or supplies, or any or all of the foregoing, whether now or hereafter furnished by Contractor to or for the account of Owner or to or for the construction of the SpringHill Suites by Marriott Hotel and associated improvements or otherwise for the improvement or the benefit of the property (the "Project"), including but not limited to rights arising under any notices to lien agent, to the lien and encumbrance of any deed of trust, mortgage, financing statement and all other security instruments which have been or may hereafter be executed by Owner or any others to a construction lender ("Restaurant Lender") for the purpose of financing the construction of a restaurant on the Restaurant Parcel portion of the Property, conveying an interest in the Restaurant Parcel as security for the Restaurant Loan, including, without limitation, the lien and security interest granted to Restaurant Lender under the deed of trust and under the other loan documents, so that the lien, security interest, and any other interest of Restaurant Lender in the Restaurant Parcel shall be paramount and superior to any lien or claim of right to a lien which Contractor may now or hereafter have against the Restaurant Parcel or any portion thereof. Contractor also agrees to indemnify and hold Restaurant Lender harmless for any losses, damages and costs (including attorney's fees) which Restaurant Lender may suffer by reason of any lien or claim of right to lien which any person or entity employed by Contractor may now or hereafter have against the Restaurant Parcel or any portion thereof.*


Init.

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
**User Notes:**                                                                                                                            (1634160998)

*Contractor agrees to include this Agreement to Subordinate in each sub-contract issued by Contractor in connection with the construction of the Project.*

## ARTICLE 9   ENUMERATION OF CONTRACT DOCUMENTS

§ **9.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

§ **9.1.1** The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement Between Owner and Contractor.

§ **9.1.2** The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

§ **9.1.3** The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|----------|-------|------|-------|
| Exhibit A | Supplemental Conditions | | 19 |

§ **9.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
　　See Exhibit C Attached

| Section | Title | Date | Pages |
|---------|-------|------|-------|

§ **9.1.5** The Drawings: See Exhibit B Attached
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|--------|-------|------|

§ **9.1.6** The Addenda,noted below and attached here to as Exhibit D

| Number | Date | Pages |
|--------|------|-------|
| #1 | 11-19-13 | 9 |
| #2 | 11-20-13 | 1 |
| #3 | 11-20-19 | 1 |
| #4 | 11-21-19 | 5 |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

§ **9.1.7** Additional documents, if any, forming part of the Contract Documents:

　　.1　　AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

　　.2　　Other documents, if any, listed below:
　　　　*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement.  They should be listed here only if intended to be part of the Contract Documents.)*


Init.

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(1634160998)

**ARTICLE 10   INSURANCE AND BONDS**
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document
A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document
A201–2007.)*

| **Type of insurance or bond** | **Limit of liability or bond amount ($0.00)** |
|---|---|
| P & P Bonds | Full Amount of Contract $8,451,580.00 |

This Agreement entered into as of the day and year first written above.

**OWNER** *(Signature)*                **CONTRACTOR** *(Signature)*

S. Jay Patel President                    Aaron,Thomas  President
*(Printed name and title)*                *(Printed name and title)*



Init.

/

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American
Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law.** This document was produced by AIA software at 09:29:28 on 12/27/2013 under Order No.9517602656_1 which expires
on 03/06/2014, and is not for resale.
User Notes:                                         (1634160998)

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS**
**SECTION 00802**

1.   PART 1 - GENERAL

1.01 GENERAL

The following supplements modify, change, delete from, add to or amend applicable articles, paragraphs or subparagraphs of AIA Document A201, the General Conditions of the Contract for Construction, 2007 Edition. When any portion of the General Conditions is modified or any paragraph, subparagraph or clause thereof is modified or deleted by these supplementary conditions, the altered provisions of this Section shall take effect. For all portions of the document which are unaltered, the original, unmodified provisions of the document shall remain in effect.

1.02 ARTICLE 1 - GENERAL PROVISIONS

A.   Add subparagraphs 1.1.9 and 1.1.10 as follows:
   1.1.9    The term "Project Manual" as used in these supplementary conditions is the volume which includes the working drawings and specifications, the Agreement Between Owner and Contractor, all Addenda issued prior to, and all Modifications issued after, execution of Contract.
   1.1.10  The term "review" as used herein in relation to analysis of potential substitutions for specified products and processes, completed and ongoing work, project submittals and all other project conditions and components, shall adequately imply that the responsible party has checked the product(s) or situation(s) for general compliance with the original design intent.  Following such "review", the responsible party shall have the capacity to reject or accept the product(s) or situation(s) for incorporation within the project construction in accordance with the contract conditions.
B.   Add the following subparagraphs to the end of Paragraph 1.2:
   1.2.4   In the event of a possible discrepancy or conflict in the Contract Documents, the Contractor shall notify the Architect in writing and a written clarification shall be issued by the Architect. Should a conflict occur in, or between portions of the Contract Documents, the Contractor shall have included the better quality and larger quantity of the Work indicated.  Subject to the foregoing the documents to hold precedence over others shall be in the following order (highest importance to lesser importance):
      1.2.4.1    Change Orders - Those of a later date shall take precedence over those of an earlier date.
      1.2.4.2    Written amendments to the Standard Form of Agreement Between the Owner and the Contractor signed by both parties - those of a later date shall take precedence over those of an earlier date.
      1.2.4.3    Supplementary Conditions (Specification Section 00 802)
      1.2.4.4    General Conditions of the Contract for Construction
      1.2.4.5    The Standard Form of Agreement Between the Owner and the Contractor (including Modifications thereto)
      1.2.4.6    Written Modifications - Those of a later date shall take precedence over those of an earlier date.
      1.2.4.7    Written Addenda - Those of a later date shall take precedence over those of an earlier date.
      1.2.4.8    Technical Specification Divisions 2 through 16
      1.2.4.9    Schedules in the Specifications

Owner Initial here
Contractor Initial here

EXHIBIT A

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

1.2.4.10   Schedules on the Working Drawings
1.2.4.11   Drawing Details-Large scale drawings take precedence over small scale drawings
1.2.4.12   Drawings which are dimensioned

1.2.4.13   Calculated dimensions
1.2.4.14   Drawings which are not dimensioned
1.2.4.15   Reviewed Submittals

1.2.5   All components of the Contract Documents are complimentary and what is required by one shall be binding as if required by all.

## 1.03 ARTICLE 2 – OWNER

A.   Add the following subparagraph to Paragraph 2.4:

If it should be determined by the Architect that the Contractor is in default as described above, the Owner shall have the right at any time or from time to time, to take over and perform any portion of the Work upon seven (7) calendar days' written notice to the Contractor that it is in default. Notwithstanding such action by the Owner, the Contractor shall maintain the progress of the balance of the Work in accordance with the Original Construction Schedule. In such event, the Contract Sum shall be adjusted by deducting therefrom the actual and necessary costs incurred by Owner to complete that portion of the Work performed by the Owner due to Contractor's default.

B.   Add the following at the end of Article 2:

2.5   EXTENT OF OWNERS RIGHTS

2.5.1   In no event shall the Owner have control over, charge of or any responsibility for, the construction means, methods, techniques, sequences of procedures or safety precautions for programs in connection with the Work notwithstanding any of the rights and authority granted the Owner in the Contract Documents.

## 1.04 ARTICLE 3 – CONTRACTOR

A.   Add the following new General Conditions Paragraph 3.3.4

3.3.4 Contractor shall provide management staff in accordance with General Conditions Section 3.9.1. Contractor shall supplement such management staff with whatever additional supervisory personnel are required to ensure that the Work will be completed by the Contractual Date of Substantial Completion. Owner shall have the right to approve or deny all Contractor's management staff and at Owner's reasonable request, Contractor shall replace any personnel unacceptable to the Owner upon fifteen (15) days written notice to do so.

B.   Add the following Paragraphs to General Conditions Section 3.5:

3.5.2   In addition to any specific warranty required by the Contract Documents, the Contractor shall perform the Work in a good, workmanlike manner and warrant the work against defects in material or workmanship for a period of one year from the date of Substantial Completion, unless specified otherwise. The Contractor shall


Owner Initial here
Contractor Initial here

## EXHIBIT A

**SHS LUMBERTON**

### SUPPLEMENTAL CONDITIONS
### SECTION 00802

secure all written warranties of equipment and materials furnished to Contractor and its Subcontractors by any manufacturer or supplier and such warranties shall be deemed to inure to the benefit of Owner.

3.5.3    The Contractor shall submit on the Contractor's letterhead two (2) copies of a notarized warranty on the form attached in Specification 01 740. The Contractor shall submit all of the warranties to the Owner as a prerequisite to Final Payment. Each Subcontractor shall submit on the Subcontractor's letterhead two (2) copies of a notarized warranty on the form attached in Specification 01 741. The Contractor shall submit all of the warranties to the Owner as a prerequisite to Final Payment.

3.5.4    Prior to Final Payment and acceptance of the Work, Contractor shall deliver to Owner those items requested by Contract Closeout Specification 01 700. Notwithstanding anything to the contrary in the Agreement regarding the Owner's obligation to make Final payment to the Contractor when the Work and all related punch list items have been completed, the Owner shall withhold $15,000 from the Final Payment until such time that the Contractor delivers all close out items to the Architect and the Architect has reviewed said documents and approved the submittal.

C.    Add the following language to the end of Paragraph 3.6:

...including, but not limited to, all sales taxes, use taxes, occupational taxes, excise taxes, social security benefits, unemployment compensation taxes, or similar levy on all materials, labor, tools and equipment furnished under this agreement, as required by the laws of the State of North Carolina.

D.    Substitute the following new paragraph to General Conditions Part 3.7.1:

3.7.1    Unless otherwise provided in the Contract Documents, and with the exception of the Master Building Permit(s) only, the Contractor shall secure and pay for all permits, fees, licenses and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time of execution of this Contract.

E.    Add the following to the end of Paragraph 3.7.3:

3.7.3 The Contractor shall comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority having jurisdiction for the safety of persons or property or to protect them from damage, injury or loss. The Williams-Steiger Occupational Safety Act of 1970, administered by the United States Department of Labor, is specifically applicable. The Contractor shall erect and maintain, as required by existing conditions and the progress of the Work, all reasonable safeguards for safety and protection, including barriers and the posting of danger signs and other warnings against hazards, promulgate safety regulations and notify owners and users of adjacent utilities.

F.    Add the following new General Conditions Paragraph 3.7.6:

Owner Initial here

Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS**
**SECTION 00802**

3.7.6   Required permits fees, licenses, inspections, and certificates shall be carefully preserved and prominently posted during the construction period at the Project for the convenient access by the various inspecting authorities.

G.   Add the following language to the end of Paragraph 3.10.3 of the General Conditions:

Contractor's schedule shall comply with all requirements set forth in the Contract Documents. See Section 01 370-Schedule of Values and Section 01 371-Notes to Schedule of Values in the Specifications.

H.   Add the following new paragraphs to General Conditions Paragraph 3.10:

3.10.4 "The Contract Time shall not be extended for unforeseen events or additional work which is not associated with work indicated to be on the critical path in the original or updated CPM construction schedules."

3.10.5 Throughout the progress of the Work, the Contractor shall submit to the Owner monthly reports including the following information:
   .1   Work performed during the previous month.
   .2   Work intended to be performed during the following month.
   .3   Status of the Work relative to the original and revised construction progress schedule.
   .4   Current and anticipated problems.
   .5   Status of deliveries and orders.
   .6   Anticipated delays from strikes, product shortages, and other causes, with suggested actions to minimize the effects of the delays.
   .7   Questions requiring interpretation.
   .8   Claims and delays for preceding month, if any.
   .9   Work up to the date for which Change Orders are requested.
   .10   Materials and details to which the Contractor objects with reasons for objection and description of alternate materials and details which are proposed, if any.
   .11   Other pertinent information Contractor wishes to include in the report.

3.10.6 PROGRESS SCHEDULE & SUBMITTAL

1.1   SCOPE

   A.   Requirements

   1.   Contractor shall prepare and submit to the Owner at the Pre-Construction Conference a preliminary construction schedule for the Project.
      2.   The schedule shall contain the critical elements of the Owner's FF&E and


Owner Initial here
Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS**
**SECTION 00802**

separate contractors for the beginning and completion dates of those components.

3.    Schedule shall identify all activities expected to interrupt or affect Hotel Pre-Opening Activities.

4.    Contractor shall submit updated progress schedule with each subsequent Monthly Application for Payment.

5.    The preliminary schedule must be distributed at the Pre-Construction Conference and a final schedule completed and submitted to the Owner for approval within four (4) weeks of the Preconstruction meeting. The Owner shall have ten (10) days after receipt of the Contractor's final schedule to review and approve said schedule. Failure to respond on behalf of the Owner shall be deemed approval of the schedule. Once approved this schedule shall be known as the "Baseline Schedule" from which all other schedules shall be measured against.

1.2   SCHEDULE FORM

A.    Prepare progress schedules in CPM form.

1. Provide separate responsibility of early start listing and location code listing.
2. Identify each work day of each week on horizontal time scale.
3. Allow space for notations and future revisions.
4. CPM Schedule shall be in precedence form.

B.    Format of listings shall comply with the chronological order of start of each item of Work along the Critical Path. All items of Work which constitute a component of the Critical Path shall be readily identifiable.

C.    Identify listings by pertinent major specification section.

1.3   PROGRESS SCHEDULE CONTENT & SUBMITTAL LOGS

A.    Progress Schedules shall indicate the following:

1. Complete sequence of construction by activity along Critical Path.
2. Dates for beginning and completion of each major element of construction based on early start and late start.
3. Projected percentage of completion for each period.
4. Show float time and number of days duration for each activity.
5. Show predecessor and successor activities for each activity.
6. Completion dates for items critical for the start of Furniture, Fixtures and Equipment Installation on a floor-by-floor basis.
7. Start-up, adjustment and turnover of elevators and major



Owner Initial here
Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

portions of equipment.

B.   Within thirty (30) days of receipt of the Notice to Proceed the Contractor
shall submit to the Owner and Architect a proposed Submittal Log for
shop drawings, product data and samples which indicates:

1.   Key dates for Contractor's submittal sequence
2.   Dates reviewed submittals will be required from
Architect

The Architect shall have ten (10) days after receipt of the Contractor's
proposed Submittal Log to review and approve said log. Failure to
respond on behalf of the Architect shall be deemed approval of the
submittal log as presented by the Contractor.

C.   Include product delivery schedule which indicates delivery dates for
products specified under allowances.

1.4. PROGRESS SCHEDULE SUBMITTAL REQUIREMENTS

A.   Contractor shall submit preliminary progress schedules at the Pre-
Construction Conference.  Architect and Owner shall review progress
schedules and return reviewed copies within ten (10) days following
receipt.  If required by Architect or Owner, Contractor shall resubmit
schedules within seven days after return of reviewed copy until accepted.
The accepted schedule and approved subsequent updates, shall remain
as the basis for determining whether the Contractor is on schedule, ahead
of schedule or behind schedule.

B. Contractor shall submit three (3) copies of revised monthly progress
schedules to Architect with each application for payment.

1.5   PROGRESS SCHEDULE REVISIONS

A.   Indicate progress of each activity up to five (5)
days prior to submittal of revised progress schedule.

B. Show  changes occurring since  previous submittal of progress schedule
Including:
  i.  Major  changes in project scope
  ii.  Activities modified since  previous submittal
  iii.  Revised projections o f  progress  and  completion date

C.   Provide project narrative report  which  defines:

Owner Initial here_
Contractor Initial here 

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS**
**SECTION 00802**

    i.  Problem areas, anticipated delays  and impact on schedule.
    ii.  Corrective action recommended  and its proposed effect.
    iii.  Effect of changes on schedules of primary
       subcontractors.

D.     If any of the Work  indicated to be on the Critical  Path is not on the schedule, the Contractor  shall immediately advise  the Owner in writing  of its proposed  action to include  the Work on the schedule.  In such event, the Contractor  shall adjust its work forces to include  additional time over regular hours, including  weekends and holidays, at no additional  cost to Owner, to bring the Work back on schedule.

## 1.6  PROJECT SCHEDULE DISTRIBUTION

    A.    Contractor shall distribute copies of reviewed progress schedules to job site file, subcontractors and all other concerned parties.
    B.    Contractor shall instruct all recipients to report promptly, in writing, any problems by projections shown in progress schedules.

## 1.05 ARTICLE 6 - CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

    A.    Substitute the following subparagraph 6.2.4:

      6.2.4    Should the Contractor cause damage to the work or property of any separate contractor, the Contractor shall, upon due notice, promptly settle with such other contractor by agreement, if he will so settle.  If such separate contractor sues or initiates an arbitration proceeding against the Owner on account of any damage alleged to have been caused by the Contractor, the Owner shall notify the Contractor who shall defend such proceedings at the Owner's expense, and if any judgment or award against the Owner arises therefrom, the Contractor shall pay or satisfy it and shall reimburse the Owner for all attorneys' fees and court or arbitration costs which the Owner has incurred.

## 1.06 ARTICLE 7 - CHANGES IN THE WORK

    A.    Add the following paragraphs to the end of General Conditions Article 7.1.2

In order to facilitate evaluation of proposals for extras or credits, all proposals, except those so minor that their property can be seen by review, shall be accompanied by a complete itemization of costs including labor and materials.  Subcontractor's labor and materials shall be itemized in the manner prescribed above.  Where major cost items are Subcontracts, they shall also be itemized.  In no case shall a change involving over $1,000.00 be reviewed without such itemization.

The total cost or credit to the Owner for all proposed change orders shall be based upon the following:

Owner Initial here
Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

a. All change orders reducing the Contract Sum shall be calculated at actual cost of labor and materials.

b. The total markup for profit and overhead allowed for all Work which increases the Contract Sum shall not exceed **fifteen percent (15%)** of the additional Net Cost, including the **five percent (5%)** Contractor and **ten percent (10%)** Subcontractor's mark-ups.

c. The total mark-up for profit and overhead allowed to the Contractor, for Work which it performs with its own forces shall not exceed 15%.

d. These percentages shall be applied to the additional Net Cost as defined herein. If a change results in a credit from the Contractor or Subcontractor, the credit given shall be the Net Cost without overhead or profit. The term "Net Cost" used herein may include all items of labor or materials, the use of power tools and equipment, and all such items of cost as liability and workmen's compensation insurance, prorated charges for additional time of foremen, social security, old age and unemployment insurance. Among the items to be considered as overhead are insurance other than as mentioned in this article, bond premiums, supervision, superintendence, time-keepers, clerks, watchmen, small tools, incidental job burdens and general office expense and all other items not included in the Net Cost as defined in this article. Only direct out-of-pocket costs not stipulated elsewhere, plus percentages set forth herein, shall be allowable expenses.

B. Add the following language to the end of subparagraph 7.1.3:

7.1.3   ..except as permitted in Paragraph 7.3 a change in the Contract Sum or the Contract Time shall be accomplished only by Change Order.

C. Add the following new General Conditions Paragraph 7.1.4:

Owner, without nullifying any portion of the Contract Documents, may make changes in the Work, either to decrease, increase or modify the Work, by giving Contractor a written Request for Proposal ("RFP") setting forth in detail the nature of the change. Upon receipt of an RFP, Contractor shall provide to Owner within fourteen (14) days, a proposal setting forth in detail, as required by Owner, Contractor's request for changes in the Contract, if applicable, Contractor's Fee, if applicable, General Conditions Cost, if applicable, and Time attributable to the changes set forth in such RFP if applicable. As applicable, Change Order Requests shall be consistent with the Allowances, Alternates and Unit Prices listed in the Contract Documents. Owner shall at all times have the right to participate directly in the negotiations of Change Order Requests with subcontractors and material suppliers. If Owner approves in writing such proposal by the Contractor, such Change Order Request and such proposal shall constitute a change ("Change Order") and the Contract, if



Owner Initial here
Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

applicable, Contractor's Fee, if applicable, General Conditions Cost, if applicable, and Contract Time, if applicable, shall be adjusted accordingly.

D.   Substitute the following new General Conditions Paragraph 7.2.1.2

7.2.1.2   The amount of the adjustment, if any, in the Contract Sum, including General Conditions Cost and Contractor's Fee; and

E.   Add the following new paragraphs to General Conditions Paragraph 7.2.3:

7.2.3.1   If Owner decreases the Work, the Contract Sum shall be decreased by the actual cost of such decreased work and the General Conditions Cost and Contractor's Fee shall not be adjusted.

7.2.3.2 If Owner increases the Work, and if such additional Work does not extend the Contract Time, the Contract Sum shall be increased by the actual cost of such additional Work and the General Conditions Cost shall not be adjusted, however, the Contractor's Fee, including the cost for all bond and insurance premiums, and printing charges of $100.00 or less per Change Order Request, shall be increased by an amount equal to **five percent (5%)** of the actual cost of such additional Work. If such additional Work does extend the Contract Time, in addition to the increase of the Contract Sum for the actual cost of such additional Work, the Contract Sum shall be increased by the increased General Conditions Cost at the rate indicated in Section 4.3 of A 101 and the Contract Time as set out in Article 3.3 of A 101, will be extended by the length of Work time fairly attributable to such additional Work and the Contractor's Fee, including the cost for all bond and insurance premiums, and printing charges of $100.00 or less per RFP, will be increased by **five percent (5%)** of the actual cost of such additional Work. Contractor shall allow increases in the Work that affect Subcontractors to be increased in an amount not to exceed **ten percent (10%)** of the actual cost of such additional Work of the Subcontractor for overhead and profit, subject to the provisions of Paragraph 7.1.2 of the Supplementary Conditions.

**1.07 ARTICLE 8 - TIME**

A.   Delete all language in subparagraph 8.3.1 following the word "order" in the sixth line and substitute the following in lieu thereof:
"...to the extent such delay will prevent the Contractor from achieving Substantial Completion within the Contract Time, and any of the performance of the Work is not or would not have been delayed by any other cause for which the Contractor is not entitled to an extension in the Contract Time under the Contract Documents. The Contractor further acknowledges and agrees that adjustments in the Contract Time will be permitted for a delay only to the extent that such delay (1) is not caused or could not have been anticipated, by the Contractor; (2) could not have been limited or avoided by the Contractor's timely notice to the Owner of the delay."

B.   Add the following new subparagraph 8.3.4:

Owner Initial here _____
Contractor Initial here _____

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS**
**SECTION 00802**

8.3.4    Labor disputes in this agreement shall be defined as disputes arising out of the renewal or modification of area labor agreements to which the Contractor or his suppliers are signatory. Grievances under existing agreements, representational matters, informational picketing and other labor matters shall not constitute a basis for extension of the construction time period.

All requests for time extensions shall be issued in writing by the Contractor to the Architect within seven (7) calendar days of the event which causes the delay. This requirement shall be strictly enforced. All requests for time extensions to the Contract received by the Architect from the Contractor after seven (7) calendar days of an event which may cause a delay shall not be recognized.

Completion time shall not be extended for normally expected bad weather. The time for completion as stated in the Contract Documents by the Contractor shall include due allowance for days on which work cannot be performed out-of-doors. Any days lost due to the weather shall be documented and verified by the Contractor. These days shall be reported by the Contractor at the job site progress meetings. For the purpose of this Contract, the Contractor agrees that he may expect to lose working days due to inclement weather in accordance with the following Table:

Projected mean number of days with precipitation greater than or equal to 1/10" for Lumberton, NC.

| January | 7 | May | 6 | September | 6 |
|---|---|---|---|---|---|
| February | 6 | June | 7 | October | 5 |
| March | 6 | July | 8 | November | 5 |
| April | 5 | August | 8 | December | 6 |

During the first month after the Contract has been initiated, if the Contract was signed after the first of the month, the number of days scheduled to be lost due to precipitation for the month shall be prorated a number based on the date the Contract was signed. During the last month of the Contract term, if the date of Substantial Completion occurs prior to the end of the month, the number of days scheduled to be lost due to precipitation for that month shall also be prorated.

No changes in the Contract Sum shall be authorized because of adjustment of Contract Time due to days lost due to precipitation. No time extensions shall be allowed for high winds. No time extensions shall be allowed for days on which total precipitation volume is less than 1/10" as recorded by a source acceptable to the Architect. No time extensions shall be allowed for

Owner Initial here
Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

precipitation occurring on any Saturday, Sunday, or nationally-recognized holidays during the project life. Days lost due to inclement weather shall be CUMULATIVE: If the total accumulated number of working week days (Monday through Friday) lost due to precipitation from the date the Contract between the Owner and the General Contractor is signed until the project is enclosed (as determined by the Architect) exceeds the total accumulated number to be expected for the same period from the previous table. The Date of Substantial Completion shall be extended by the number of calendar days needed to include the EXCESS number of days lost.

Only the dates defined in the original Construction Schedule shall be used during the determination of time extensions to the Contract.

1.08 ARTICLE 9 - PAYMENTS AND COMPLETION

A.   Delete Paragraph 9.2 and substitute the following in lieu thereof:
9.2   Before submitting its first Application for Payment, the Contractor shall submit to the Owner and the Architect, on a form similar to that provided in Specification Section 01370, a Schedule of Values aggregating the total Contract Sum divided into the categories shown on the form and supported by such data to substantiate its accuracy as the Owner may require. Each item in the Schedule of Values shall include its appropriate share of overhead and profit. This schedule, when approved by the Owner, shall be used as a basis for the Contractor's Applications for Payment.

B.   Add the following to the end of subparagraph 9.3.1.2:
"...Each Application for Payment shall be accompanied by the following all in form and substance satisfactory to the Owner: (1) a current Contractor's lien waiver duly executed and an acknowledged sworn statement showing all Subcontractors and material men with the Contractor's and Subcontracts, the amount of each Subcontract, the amount requested for any Subcontractor or material, the requested progress payment and the amount to be paid to the Contractor for such progress payment, together with similar sworn statements attesting to the accuracy of each Application for Payment from all such Subcontractors and materialmen; (2) duly executed waivers of mechanics and materialmen's liens from all Subcontractors when appropriate, from material men and Subcontractors established payment or satisfaction of payment of all amounts requested by the Contractor on behalf of such entities or persons in any previous Application for Payment."

C.   Add the following clause 9.3.1.3:
9.3.1.3   Submit Applications for Payment in triplicate on AIA Form G702. Fill in all blanks, sign and notarize all copies.

D.   Add the following to the end of subparagraph 9.3.3:
The issuance of an Application for Payment shall constitute a representation by the Contractor to the Owner that the Work has progressed to the point indicated, that the quality of the Work is in accordance with the Contract Documents and that the Contractor is entitled to payment in the amount certified.

E.   Add new subparagraph 9.3.4 as follows:

9.3.4   Ten (10%) percent shall be retained from each progress payment, and such retainage will be reduced to **three percent (3%)** at Substantial Completion, provided that:

Owner Initial here
Contractor Initial here

## EXHIBIT A

**SHS LUMBERTON**

### SUPPLEMENTAL CONDITIONS
### SECTION 00802

   a.   The work is not behind schedule as determined by the Architect, based on the originally issued time scaled CPM schedule as such schedules may be adjusted in accordance with the Contract Documents with monthly anticipated progress payment amounts submitted at or before the preconstruction meeting, and

   b.   The work is being performed in a satisfactory manner in compliance with the Contract Documents as determined by the Architect and,

   c.   There are no outstanding claims or liens on the property.

Remaining retainage shall be paid to the Contractor thirty (30) days or less after Final Completion.

F.   Add the following language to the end of General Conditions Paragraph 9.5.1:

   .8   failure of the Contractor to make payments to Subcontractors or others for labor, services, materials or equipment;

   .9   failure to provide the revised Construction Schedule or Monthly Status Report with Certificate for Payment;

   .10   an Event of Default has occurred; or

   .11   failure of Contractor to provide Owner with satisfactory releases and lien waivers.

G.   Add the following new General Conditions Paragraph 9.5.4:

   9.5.4 Owner shall not be in breach of this Agreement by reason of withholding of any payments pursuant to the provisions of said Subparagraph 9.5.1.

H.   Add the following to subparagraph 9.6.1:

   "...The Contractor shall submit to the Architect on, or prior to, the **twenty-fifth (25th)** day of each month an itemized Application for Payment, notarized by a duly registered Notary Public, supported by data substantiating the contractor's right to payment as specified herein and as the Owner and the Architect may require, and reflecting retainage as required by the contract documents. The form of Applications for Payment shall be AIA Document G702 supported by AIA Document G702A.

   The Owner shall make payment to the Contractor by 5:00 P.M. not later than the **twenty-fifth (25th)** day of the month following the month that the Application for Payment was issued and submitted to the Architect. If the **twenty-fifth (25th)** falls on a Saturday or holiday, payment shall be made by the **twenty-fourth (24th).** If the **twenty-fifth (25th)** falls on a Sunday or holiday, payment shall be made on the **twenty-sixth (26th).** The General Contractor shall be fully responsible for payment to the subcontractors no later than seven (7) calendar days after the General Contractor receives payment from the Owner each month. Such payments shall be equal to the full amount determined as acceptable by the Architect. If the Contractor does not comply with this requirement, the Owner shall have the right to issue further payments naming the Contractor and applicable Subcontractors as joint payees. Such joint check procedure, if employed by the Owner shall create no rights in favor of any person or entity beyond the right of the named payees to payment of the check and shall not be deemed to commit the Owner to repeat the procedure in the future."

Owner Initial here
Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

I.  Substitute the following new General Conditions Part 9.8.1:

> Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently completed in accordance with the Contract Documents so that the Owner may occupy or utilize the Work for its intended use and
> (i)   all minor punch list items or similar manner corrective work is complete and ready for Hotel Franchisor's final inspection;
> (ii)  the Hotel Franchisor has completed its Pre-Construction Opening and Opening Day inspections and has approved the Owner to open the Project and turn on its reservation system;
> (iii) a certificate of use and occupancy and any other permits or approvals necessary to allow use and occupancy of the Project have been issued;
> (iv)  the Architect has certified that the Project, or the agreed, defined portion thereof, has achieved Substantial Completion.
> (v)   Contractor has submitted the Key and Keying Schedule to the Owner;
> (vi)  the Contractor has given the Owner certifications and completed startup documentation related to hot water heating systems and make up air equipment and systems as outlined in the Project Specifications.

J.  Add the following language to the end of General Conditions Part 9.8.3:

> Only two (2) such inspections shall be at Owner's cost. The cost of all subsequent inspections shall be paid by Contractor at a rate of One Thousand Five Hundred Dollars ($1,500) per man day.

K.  Add the following new paragraph to General Conditions Part 9.9.4:

> 9.9.4   In order for the Owner to have adequate time to place its FF&E orders so that the Project's FF&E can arrive onsite when required by the Contractor's Project Schedule, prepare the Project for inspection by Hotel Franchisor and opening for business, the Owner needs to make use of certain spaces in advance of the date of Substantial Completion. Specific areas required for access and use by the Owner and its contractors in advance of the Project's Substantial Completion are as follows:

|  |  | Calendar Days |
| --- | --- | --- |
| 9.9.4. | Model Room | 180 days in advance |
| 9.9.4.2 | Front Desk | 15 days in advance |
| 9.9.4.3 | Back Office | 17 days in advance |
| 9.9.4.4 | Laundry | 15 days in advance |
| 9.9.4.5 | Meeting Room | 17 days in advance |
| 9.9.4.6 | Linen Storage | 7 days in advance |
| 9.9.4.7 | General Storage | 15 days in advance |

Owner Initial here_____
Contractor Initial here_____

# EXHIBIT A

**SHS LUMBERTON**

## SUPPLEMENTAL CONDITIONS
## SECTION 00802

| | | |
|---|---|---|
| 9.9.4.8 | Lobby & Breakfast | 7 days in advance |
| 9.9.4.9 | Maintenance Areas | 15 days in advance |
| 9.9.4.10 | Elevators | See below |

With the exception of the Elevators for purposes of this Agreement the term "access and use" shall mean that the Contractor has completed all of its work in the specific area and that the area has been "punched" by the Architect and/or Owner and the Contractor has completed all punch list items for that area. Once an area has been turned over to the Owner the Contractor shall have the locks changed to their final keying set up and shall turn over the keys to that area to the Owner. Following turnover of an area the Owner shall be responsible for all damage to the area resulting from its use of the area prior to the Date of Substantial Completion.

With respect to the Elevators for purposes of this Agreement the term "access and use" shall mean that the Contractor has completed that portion of the elevator work so that all elevators may be used in their "manual" mode of operation no later than forty-five (45) calendar days prior to Substantial Completion. During said operation of the elevators in "manual" mode the Contractor will be responsible for all costs associated with the operational staffing of the elevators. Secondly, no later than thirty (30) days prior to Substantial Completion the Contractor shall obtain a final certificate of completion from the local and/or state elevator authority governing the use of the elevators for all elevators on the Project and shall immediately turn all elevators to an "automatic" mode of operation. At any time prior to the date of Substantial Completion the Contractor shall have the right to ask the Architect and/or Owner to inspect the interior cab portion of the elevators in order to prepare a punch list for these areas. Upon completion of the punch list the Owner and/or Architect shall re-inspect these areas and if complete shall accept these areas. The acceptance of the interior cab finishes by the Owner and/or Architect prior to the date of Substantial Completion shall not relieve the Contractor of its obligations to at all times protect these areas from incidental damage from its own forces, its Subcontractors, the Owner and its forces up until the date of Substantial Completion of the Project. The Owner shall only be responsible for damage to the interior cab finishes after its date of acceptance of these areas that was specifically caused by its own forces and/or contractors and only if these areas were properly protected and the Contractor can provide irrefutable evidence that none of its forces or Subcontractors used the damaged elevator in question.

Failure of the Contractor to comply with the above referenced dates shall result in a "day for day" delay in the Owner's ability to meet its own internal "non-construction" related operational requirements to open the Project in a timely fashion and as such, the Owner, at its sole discretion, may require the Contractor to adjust the Project Schedule and projected Date of Substantial Completion by adding additional days to the Contract Time to take into account the impact of the delay on the Owner's operational needs. The Owner shall provide written notice to the Contractor should it decide to enforce this requirement within two (2) business days of the failure of the Contractor to meet any of the above referenced critical milestone dates. The Owner's

Owner Initial here
Contractor Initial here

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

right to increase the Contract Time shall not relieve the Contractor of any of its obligations pursuant to paragraphs 9.10 and 9.11.

L.    Substitute the following new General Conditions Part 9.10.1:

9.10.1   Final Completion of the Work shall be the date certified by the Architect and approved by Owner when Contractor has completed all the Work, including, but not limited to the satisfactory operation of all equipment, by means of acceptance tests, correction of all punch list items to the satisfaction of Owner and Architect, release of all mechanics', materialmen's and like liens, delivery of all warranties, air balance reports, equipment operation and maintenance manuals, As Built Drawings, building certificates required prior to occupancy, mechanical, electrical and plumbing final inspections, all other required approvals and acceptances by city, county and state governments, or other authority having jurisdiction for which the Contractor is responsible hereunder, and removal of all rubbish, tools, scaffolding and surplus materials and equipment from the Project Site, and delivery of Final Affidavit.

M.    Add new subparagraphs 9.10.6 as follows:

9.10.6   The Contractor shall not be entitled to final payment unless the following issues have been addressed to the Owner's' satisfaction:

A.   An affidavit is submitted indicating that all payrolls, invoices for materials and equipment and other liabilities connected with the work which the Owner or the Owner's property might be responsible, have been paid or otherwise satisfied except for payments to be made out of funds not yet paid by Owner.

B.   Releases and waivers of lien from the Contractor and all Subcontractors and other parties as required by the Owner have been submitted to the extent of previous payments made by Owner. If any third party fails or refuses to provide a release of claim or waiver of lien as required above, the Contractor shall furnish a bond satisfactory to the Owner to discharge any such lien or indemnify the Owner from all liability.

C.   Written consent of the Contractor's Surety Company relating to final payment has been issued.

N.    Add new paragraph 9.11 as follows:

9.11 LIQUIDATED DAMAGES AND BONUS

9.11.1   Time is of the essence with regard to the work required by the Contract Documents and all obligations thereunder. The Contractor acknowledges and recognizes that the Owner is entitled to full use of the completed Work following the expiration of the Contract Time. The Contractor further acknowledges and agrees that if the Contractor fails to complete substantially, or fails to cause the Substantial Completion of any portion of the Work within the Contract Time, the Owner will sustain extensive damages and serious loss as a



Owner Initial here_____
Contractor Initial here_____

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS**
**SECTION 00802**

result of such failure. Therefore, the Owner and Contractor agree as follows in subparagraph 9.11.2:

9.11.2  In the event completion of the Work is delayed more than fourteen (14) calendar days due to Contractor's unexcused fault or negligence, Contractor shall be liable for liquidated damages in the amount of Five Hundred Dollars ($500) per calendar day for each day over fourteen (14) calendar days until Substantial Completion is achieved.
In the event completion of work is achieved more than fourteen (14) calendar days prior to the date initially established for Substantial Completion on the Contractor's original Construction Schedule, Contractor shall be paid a bonus for early completion of Five Hundred Dollars ($500) per calendar day for each calendar day earlier than fourteen (14) calendar days that Substantial Completion is actually achieved.

9.11.3  The Owner may deduct liquidated damages described in Paragraph 9.11.2 from any unpaid amounts then or thereafter due the Contractor. Any liquidated damages not so deducted from any unpaid amounts due the Contractor shall be payable to the Owner at the demand of the Owner, together with interest from the date of the demand at a rate equal to the lower of the Treasury Bill rate or the highest, legally-recoverable rate of interest payable by the Contractor.

9.11.4  The Owner shall not be liable to the Contractor, or any Subcontractor for claims or damages of any nature caused by or arising out of delays, unless the delays will affect or have affected work initially identified to be on the critical path schedule, as such schedule may be modified in accordance with the Contract Documents, not caused by the Contractor or its Subcontractors.

9.11.5  The Contractor agrees to make no claim for damages for delay in the performance of this Contract occasioned by any acts or omission to act of the Owner or any of its officers, directors, employees, architects or other representatives or because of any injunctions which may be brought against the Owner or its representatives unless, the delays will affect or have affected work initially identified to be on the critical path schedule, as such schedule may be modified in accordance with the Contract Documents, not caused by the Contractor or its Subcontractors.

9.11.6  The Contractor shall have no claim against the Owner for increase in the contract price or payment or allowance of any kind based upon any damage, loss or additional expense the Contractor may suffer as a result of any delays in prosecuting or completing the Work under the Contract, whether such delays are caused by the circumstances set forth in the preceding paragraph or by any other circumstances unless the delays will affect or have affected work initially identified to be on the critical path schedule, as such schedule may be modified in accordance with the Contract Documents, not caused by the Contractor or its Subcontractors.

9.11.7  Should the Contractor be obstructed or delayed in the commencement, prosecution or completion of the Work because conditions attributable to the Owner and which by the terms of the Contract may be grounds for an extension of time, the Contractor shall promptly make a claim therefor in writing pursuant to the claims provisions in the General Conditions, Notice of a claim is a condition precedent to entitlement.

1.09 ARTICLE 11 - INSURANCE AND BONDS

A.  Substitute the following in lieu of subparagraph 11.1.1:

11.1.1  Until final completion and final acceptance of the Work by the Owner, Contractor shall

Owner Initial here _____
Contractor Initial here _____



**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS**
**SECTION 00802**

purchase and maintain Worker's Compensation Insurance, Employer's Liability Insurance, Direct Liability Insurance for Contractor's own operations, Contingent Liability Insurance for the operations of Subcontractors and Contractual Liability Insurance to insure the indemnifying portions of this Contract, such insurance shall include Bodily Injury Liability and Property Damage Liability.  Certificates of such insurance (and copies of policies if requested) shall be filed with the Owner and shall be subject to its approval for adequacy of protection and the satisfactory character of the insurer, but in no case shall they be less than the following limits:

11.1.1.1  Worker's Compensation: Statutory;

11.1.1.2  Employer's Liability: One Million ($1,000,000) Dollars

11.1.1.3  Comprehensive General Liability (including Premises-Operations; Independent Contractors' Protective; Products and Completed Operation; Broad Form Property Damage):

    i)   Bodily Injury
        One Million ($1,000,000) Dollars each occurrence
        One Million ($1,000,000) Dollars annual aggregate

    ii)  Property Damage:
        One Million ($1,000,000) Dollars each occurrence
        One Million ($1,000,000) Dollars annual aggregate

    iii) Products and Completed Operations to be maintained for three (3) years after final payment.

    iv) Property Damage Liability Insurance will provide X, C or U and Liquor Liability Coverage.

11.1.1.4  Contractual Liability:

    i)   One Million ($1,000,000) Dollars each occurrence
        One Million ($1,000,000) Dollars annual aggregate

    ii)  Property Damage:
        One Million ($1,000,000) Dollars each occurrence
        One Million ($1,000,000) Dollars annual aggregate

11.1.1.5  Personal Injury, with Employment Exclusion deleted:
        One Million ($1,000,000) Dollars annual aggregate

11.1.1.6  Comprehensive Automobile Liability (no-fault, owned, non-owned and hired vehicles):

    i)   Bodily Injury:
        One Million ($1,000,000) Dollars each occurrence
        One Million ($1,000,000) Dollars annual aggregate

    ii)  Property Damage
        One Million ($1,000,000) Dollars each occurrence
        One Million ($1,000,000) Dollars annual aggregate

11.1.1.7  Subcontractor's Public Liability and Property Damage Insurance and Vehicle Liability Insurance:  The Contractor shall either:

    i)   Require each of its Subcontractors to procure and to maintain during the life of its Subcontract, Subcontractor's Public Liability and Property Damage Insurance and Vehicle Liability Insurance of the type and in the amounts specified for the Contractor herein, or

    ii)  Insure the activities of its Subcontractors in its policy as specified herein.

11.1.1.8  Umbrella Excess Liability

Owner Initial here
Contractor Initial here 

## EXHIBIT A

**SHS LUMBERTON**

### SUPPLEMENTAL CONDITIONS
### SECTION 00802

    i)    Ten Million ($10,000,000) Dollars (to cover at least all risks described in the Comprehensive General Liability and Comprehensive Motor Vehicle Liability Policies) which shall cover and relate to the Project and no other work of the Contractor.

B.    Add the following subparagraph to the end of paragraph 11.1:

11.1.5    All insurance shall include the Marriott International, Inc., the Owner, the Architect, title insurers, and any financing agencies as additional named insureds. The foregoing additional insured status shall not extend to the actual or alleged negligence of the additional insured. Each such policy shall contain the following cross-liability wording except for the actual or alleged negligence of the additional insured: "In the event of a claim being made hereunder by one insured for which another insured is or may be liable, then this policy shall cover such insured against whom a claim is or may be made in the same manner as if separate policies had been issued to each insured hereunder." All such insurance shall be primary and any similar or additional insurance maintained by the Owner shall be secondary and excess to that carried by the Contractor or any Subcontractor. Before commencing the Work, the Contractor shall furnish a certificate from its insurance carrier showing that it has complied with the provisions of this Paragraph, and providing that the said insurance policies will not be changed or canceled during their term until at least thirty (30) calendar days' prior notice by registered mail to the Owner. In the event of failure of the Contractor to furnish and maintain such insurance or to furnish a satisfactory certificate therefor, the Owner shall have the right to acquire and maintain the said insurance for, and in the name of the Contractor, and the Contractor agrees to furnish all necessary information to permit the Owner to acquire and maintain such insurance for the account of the Contractor and to pay the cost thereof to the Owner immediately upon presentation of a bill. Compliance by the Contractor with the foregoing requirements concerning carrying insurance and furnishing certificates shall not relieve the Contractor from liability under this Contract.

11.1.6    Each of the Public and Auto Liability policies shall name as additional insureds those listed in the paragraph below by including a clause containing the following express language -

    "Marriott International, Inc. and any subsidiaries and affiliates of these companies, including their employees, offices and directors, now existing or which may hereafter exist as additional insureds";

11.1.7    Thirty (30)-day written notice to Marriott prior to the termination, expiration, reduction or cancellation of any of the policies listed in 11.1.1.

11.1.8    Submission of a Certificate of Insurance showing the renewal or extension of the policy, Thirty (30)-days prior to expiration of any of the policies listed in 11.1.1 and

11.1.9    Hotel name typed on the Certificate of Insurance.

11.1.10    Issue the Certificate to:
Marriott International, Inc.
Attn: Risk Management
10400 Fernwood Road
Bethesda, MD 20817

11.1.11    The Owner shall purchase and maintain property insurance upon the entire Work required by the Contract Documents and to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work (but shall not cover tools, equipment or other property used or consumed on the Site but not incorporated into the Project) and shall insure against the perils of fire and standard extended coverage.

Owner Initial here _____
Contractor Initial here _____ 

**EXHIBIT A**

**SHS LUMBERTON**

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

11.1.12   The Owner shall maintain and pay for Builder's Risk Insurance in an amount of coverage equal to the Contract Sum.  This Builder's Risk Insurance will not cover tools, equipment or other property used or consumed on the Site but not incorporated in the Work.  The Contractor shall provide coverage for such tools, equipment or other property.  The Owner shall be responsible for any deductibles which the Owner provides and the Contractor shall be responsible for any deductibles required by insurance under any insurance that it provides.  Builders Risk Insurance shall be modified during the life of the project to compensate for modifications to the Contract Sum.

C.   Delete Paragraph 11.2 and substitute the following in lieu thereof:

11.2   OWNER'S LIABILITY INSURANCE
11.2.1   The Owner shall be responsible for purchasing and maintaining its own liability insurance and, at its option, may purchase and maintain such insurance as will protect it against claims which may arise from operations under the Contract.

D.   Add the following subparagraph 11.4.3:

11.4.3   The General Contractor shall provide both a Performance Bond and Payment Bond, each in the amount of 100% of the Contract Sum.  The surety company which issues the bonds shall be one which is authorized to do business in the State of North Carolina and is listed on "U.S. Department of the Treasury Circular 570".  In addition, the company which will provide the bonds shall have an A.M. Best Company rating of at least a Class "A" with a financial size of VI or better.  Bonds shall be accompanied by a letter which defines the company's current rating for verification prior to acceptance by the Owner and execution of the formal Agreement Between the Owner and the Contractor.  It shall be specifically understood that the Performance Bond fully protects the Owner and guarantees the completion of the project in accordance with the requirements of the Bid Documents.  After the award of the Contract, the Contractor shall submit a properly executed "Performance Bond and Payment Bond" using 2010 AIA Form A312.  Submit original and two copies of each bond not later than Pre-Construction Conference.

1.10 ARTICLE 15 - ADMINISTRATION OF THE CONTRACT

A.   Add the following language to the end of subparagraph 15.1.4:
"Contractor shall not be entitled to any recovery from the Owner for any additional costs or damages caused by any delay to the Contractor's performance unless such delay will affect or has affected work initially identified to be on the critical path and not caused by the Contractor or its Subcontractors.  In connection with any claim by the Contractor against the Owner for compensation in excess of the contract price, any liability of the Owner for the Contractor's costs shall be strictly limited to direct costs incurred by the Contractor and shall in no event include indirect costs or consequential damages experienced by the Contractor.  The Owner shall not be liable to the Contractor for claims of third parties, including subcontractors unless and until liability of the Contractor has been established therefor in a court of competent jurisdiction."

B.   Add the following to the end of clause 15.1.5.2:

Owner Initial here_____
Contractor Initial here_____

**EXHIBIT A**

SHS LUMBERTON

**SUPPLEMENTAL CONDITIONS
SECTION 00802**

"Extensions of time shall not be granted for delays caused by inadequate construction force, or the failure of the Contractor to place orders for equipment or materials sufficiently in advance to ensure delivery when needed."

C.   Add the following clauses to the end of subparagraph 15.1.5:

   15.1.5.3  If the Contractor is delayed by: (1) the combined action of workmen (either those employed on the Work or in any industry essential to the completion of the Work) in no way caused by or resulting from default or collusion on the part of the Contractor, (2) strikes, lockouts, embargoes, fire, unavoidable casualties, unusual delays in transportation, national emergency, unusually severe and adverse weather conditions not reasonably anticipated, or (3) any other cause which the Contractor could not reasonably control or circumvent, and if such delay affects a critical path activity initially defined by the Contractor, then the Contract Time shall be adjusted for such delay.

   15.1.5.4  All claims for extension of time hereof shall be made in writing to the Owner no more than seven (7) calendar days after the commencement of the delay; otherwise they shall be waived.  In the case of a continuing cause of delay only one claim is necessary.

   15.1.5.5  No adjustments shall be made for any suspension, delay or interruption (i) to the extent that performance would have been so suspended, delayed or interrupted by any other cause, including the fault or negligence of the Contractor, or (ii) for which an equitable adjustment is provided or excluded under any other provision of the Agreement Between the Owner and the Contractor.  The Owner's exercise of any of its rights under the Agreement Between the Owner and the Contractor, regardless of the extent or numbers of such changes, will not entitle Contractor to delay damages, unless the Owner's exercise of his rights causes the Contractor's performance of the Work to be delayed or extended and are not caused in whole or in part by the Contractor or its subcontractors, or the Owner's requirement of correction or re-execution of any defective Work which shall not, under any circumstances, be construed as interference with the Contractor's performance of the Work.

   15.1.5.6  All Subcontracts shall contain the foregoing provisions.

END OF SECTION

Owner Initial here_____
Contractor Initial here_____ 

# Drawing List–Exhibit B

| SHEET TITLE | | PERMIT RELEASE DATE | CURRENT RELEASE DATE | SHEET TITLE | | PERMIT RELEASE DATE | CURRENT RELEASE DATE | SHEET TITLE | | PERMIT RELEASE DATE | CURRENT RELEASE DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CIVIL | | | | | | | | ELECTRICAL | | | |
| C-000 | COVER | | 10/25/13 | A-1100.1 | DOOR SCHEDULE AND DETAILS | | 10/25/13 | E-001 | GENERAL NOTES, LEGENDS | | 10/25/13 |
| C-001 | EXISTING CONDITIONS | | 10/29/13 | A-1100.2 | WINDOW SCHEDULE AND DETAILS | | 10/25/13 | E-N00 | SITE PLAN - ELECTRICAL | | 10/29/13 |
| C-101 | SITE PLAN | | 10/29/13 | A-1101 | INTERIOR FINISH INDEX | | 10/25/13 | E-100A | SITE PLAN - PHOTOMETRICS | | 10/25/13 |
| C-102 | GRADING PLAN | | 10/29/13 | A-1102 | INTERIOR FINISH INDEX | | 10/25/13 | E-101 | FIRST FLOOR PLAN | | 10/25/13 |
| C-103 | EROSION & SEDIMENTATION | | 10/29/13 | A-1103 | INTERIOR FINISH INDEX | | 10/25/13 | E-102 | SECOND FLOOR PLAN | | 10/25/13 |
| | CONTROL PLAN | | | A-1104 | INTERIOR FINISH INDEX | | 10/25/13 | E-103 | THIRD FLOOR PLAN | | 10/25/13 |
| C-104 | SITE UTILITIES PLAN | | 10/29/13 | A-1105 | INTERIOR FINISH INDEX | | 10/25/13 | E-104 | FOURTH FLOOR PLAN | | 10/25/13 |
| C-201 | LANDSCAPING SITE | | 10/29/13 | A-1106 | INTERIOR FINISH INDEX | | 10/25/13 | E-105 | ROOF PLAN | | 10/25/13 |
| C-202 | LANDSCAPING DETAILED VIEW | | 10/29/13 | A-1200 | PARTITION TYPES | | 10/25/13 | E-201 | FIRST FLOOR LIGHTING PLAN | | 10/29/13 |
| C-203 | IRRIGATION PLAN | | 10/25/13 | A-1201 | PARTITION TYPES | | 10/25/13 | E-401 | GUESTROOM ENLARGED PLANS - | | 10/25/13 |
| C-301 | SEWER PLAN AND PROFILE | | 10/25/13 | A-1400 | TYPICAL EIFS DETAILS | | 10/25/13 | | ELECTRICAL | | |
| C-302 | SEWER PLAN AND PROFILE | | 10/25/13 | A-1401 | TYPICAL EIFS DETAILS | | 10/25/13 | E-402 | GUESTROOM ENLARGED PLANS - | | 10/29/13 |
| C-401 | WATER PLAN AND PROFILE | | 10/29/13 | A-1403 | TYPICAL EIFS DETAILS | | 10/25/13 | | ELECTRICAL | | |
| C-402 | WATER PLAN AND PROFILE | | 10/25/13 | A-1500 | FIRE PROTECTION DETAILS | | 10/25/13 | E-501 | ONE-LINE AND SCHEDULES | | 10/29/13 |
| C-601 | SITE DETAILS | | 10/25/13 | A-1601 | TYPICAL ROOF DETAILS | | 10/25/13 | E-502 | PANEL SCHEDULES | | 10/25/13 |
| C-621 | WATER DETAILS | | 10/25/13 | A-1602 | TYPICAL ROOF DETAILS | | 10/25/13 | E-503 | PANEL SCHEDULES | | 10/29/13 |
| C-622 | WATER DETAILS | | 10/25/13 | A-1603 | TYPICAL ROOF DETAILS | | 10/25/13 | E-504 | LIGHTING SCHEDULES | | 10/25/13 |
| C-623 | WATER DETAILS | | 10/25/13 | | | | | | | | |
| C-631 | EROSION CONTROL DETAILS | | 10/25/13 | | | | | | | | |
| C-632 | EROSION CONTROL DETAILS | | 10/25/13 | INTERIOR DESIGN | | | | PLUMBING | | | |
| | | | | ID-1 | KING SHOWER GUESTROOM | | 10/29/13 | | | | |
| 800 | Food Service Equipment Plan | 7/1/13 | | ID-2 | KING ADA, ROLL-IN GUESTROOM | | 10/29/13 | P-001 | PLUMBING SCHEDULES AND NOTES | | 10/25/13 |
| 810 | Food Service Elevations | 7/1/13 | | ID-3 | KING ACCESSIBLE GUESTROOM | | 10/29/13 | P-002 | SPRINKLER SCHEDULES AND NOTES | | 10/25/13 |
| 320 | The Market Equipment Plan | 7/1/13 | | ID-4 | QUEEN QUEEN GUESTROOM | | 10/29/13 | P-100 | PLUMBING FIRST FLOOR - O, N & V | | 10/25/13 |
| | | | | ID-5 | DBL QUEEN ADA, ROLL-IN GUESTRM. | | 10/29/13 | P-101 | PLUMBING FIRST FLOOR - WATER | | 10/25/13 |
| ARCHITECTURAL | | | | ID-6 | DBL, QUEEN 4_6 TUB GUESTROOM | | 10/29/13 | P-102 | PLUMBING FIRST FLOOR - FIRST | | 10/25/13 |
| A-000 | DRAWING INDEX | | 10/29/13 | ID-7 | DBL, QUEEN ACC, GUESTROOM | | 10/25/13 | | SPRINKLER | | |
| A-001 | SYMBOLS, ABBREVIATIONS AND | | 10/29/13 | ID-8 | DBL, QUEEN 5_0 TUB GUESTROOM | | 10/29/13 | P-103 | PLUMBING SECOND AND THIRD FLOOR | | 10/25/13 |
| | MATERIALS LEGEND | | | ID-9 | PUBLIC SPACE FURNITURE PLAN | | 10/25/13 | P-104 | PLUMBING FOURTH FLOOR | | 10/25/13 |
| A-100 | ARCHITECTURAL SITE PLAN | | 10/29/13 | ID-10 | PUBLIC SPACE FLOOR FINISH PLAN | | 10/25/13 | P-105 | PLUMBING ROOF PLAN | | 10/25/13 |
| A-101 | FIRST FLOOR PLAN | | 10/25/13 | ID-11 | GUESTROOM DETAILS | | 10/25/13 | P-301 | PLUMBING SANITARY RISERS | | 10/25/13 |
| A-102 | SECOND FLOOR PLAN | | 10/25/13 | ID-12 | GUESTROOM DETAILS | | 10/25/13 | P-302 | PLUMBING SANITARY AND GAS | | 10/25/13 |
| A-103 | THIRD FLOOR PLAN | | 10/25/13 | ID-13 | CAFE TABLE & BUSINESS LIBRARY | | 10/25/13 | | RISER DIAGRAMS | | |
| A-104 | FOURTH FLOOR PLAN | | 10/25/13 | | MILLWORK DETAILS | | | P-303 | PLUMBING WATER RISER DIAGRAMS | | 10/25/13 |
| A-105 | ROOF PLAN | | 10/25/13 | | | | | P-401 | GUEST ROOM PLANS | | 10/25/13 |
| A-200 | BUILDING ELEVATIONS | | 10/25/13 | STRUCTURAL | | | | P-402 | ENLARGED PLUMBING PLANS | | 10/25/13 |
| A-201 | BUILDING ELEVATIONS | | 10/29/13 | S-001 | GENERAL NOTES | | 10/25/13 | P-403 | ENLARGED PLUMBING PLANS | | 10/29/13 |
| A-401 | FIRST FLOOR RCP | | 10/25/13 | S-011 | GENERAL NOTES CONTINUED | | 10/25/13 | P-501 | PLUMBING DETAILS | | 10/25/13 |
| A-402 | SECOND FLOOR RCP | | 10/29/13 | S-012 | SPECIAL INSPECTIONS | | 10/25/13 | P-502 | PLUMBING DETAILS | | 10/25/13 |
| A-403 | THIRD FLOOR RCP | | 10/29/13 | S-013 | SPECIAL INSPECTIONS CONTINUED | | 10/25/13 | | | | |
| A-404 | FOURTH FLOOR RCP | | 10/29/13 | S-101 | FOUNDATION PLAN | | 10/25/13 | | | | |
| A-600 | ENLARGED FIRST FLOOR PLAN | | 10/25/13 | | | | | TELECOMMUNICATIONS | | | |
| A-601 | ENLARGED FIRST FLOOR PLAN | | 10/25/13 | S-201 | FOUNDATION SECTIONS AND DETAILS | | 10/25/13 | DV-000 | GENERAL INSTALLATION NOTES, SPECS | | 10/25/13 |
| A-602 | ENLARGED FIRST FLOOR PLAN | | 10/25/13 | S-202 | FOUNDATION SECTIONS AND DETAILS | | 10/29/13 | | & SCHEDULES - SPECIAL SYSTEMS | | |
| A-603 | ENLARGED FIRST FLOOR PLAN | | 10/29/13 | S-301 | SECOND FLOOR FRAMING PLAN | | 10/29/13 | DV-001 | DEVICE REQUIREMENT SCHEDULE, RISER | | 10/29/13 |
| A-604 | ENLARGED UPPER FLOOR PLAN | | 10/29/13 | S-302 | THIRD FLOOR FRAMING PLAN | | 10/29/13 | | GROUNDING & DETAILS - SYSTEMS | | |
| A-801 | PUBLIC SPACE ELEVATIONS | | 10/29/13 | S-303 | FOURTH FLOOR FRAMING PLAN | | 10/29/13 | DV-101 | FIRST FLOOR PLAN - SPECIAL SYSTEMS | | 10/29/13 |
| A-802 | BACK OF HOUSE ELEVATIONS | | 10/25/13 | S-304 | ROOF FRAMING PLAN | | 10/29/13 | DV-102 | SECOND FLOOR PLAN-SPECIAL SYSTEMS | | 10/25/13 |
| A-803 | PUBLIC SPACE ELEVATIONS | | 10/25/13 | S-401 | FRAMING SECTIONS AND DETAILS | | 10/29/13 | DV-103 | THIRD FLOOR PLAN - SPECIAL SYSTEMS | | 10/29/13 |
| A-804 | PUBLIC SPACE ELEVATIONS | | 10/29/13 | S-401A | FRAMING SECTIONS AND DETAILS | | 10/29/13 | DV-104 | FOURTH FLOOR PLAN-SPECIAL SYSTEMS | | 10/29/13 |
| A-805 | PUBLIC RESTROOM PLANS & DETAILS | | 10/25/13 | S-402 | FRAMING SECTIONS AND DETAILS | | 10/29/13 | DV-105 | ROOF PLAN-SPECIAL SYSTEMS | | 10/29/13 |
| A-806 | BUFFET PLANS SECTIONS & DETAILS | | 10/25/13 | S-408 | FRAMING SECTIONS AND DETAILS | | 10/29/13 | DV-201 | TYPICAL GUESTROOMS LAYOUT | | 10/25/13 |
| A-807 | CAFE TABLE & BUS. LIBRARY DETAILS | | 10/25/13 | S-404 | FRAMING SECTIONS AND DETAILS | | 10/25/13 | DV-202 | ENLARGED EQUIPMENT PLANS AND | | 10/29/13 |
| A-808 | THE MARKET PLANS SECTIONS & DETAILS | | 10/25/13 | S-405 | FRAMING SECTIONS AND DETAILS | | 10/29/13 | DV-400 | ELEVATIONS - SPECIAL SYSTEMS | | 10/29/13 |
| A-809 | FRONT DESK PLANS SECTIONS & DETAILS | | 10/25/13 | S-409A | FRAMING SECTIONS | | 10/29/13 | | | | |
| A-810 | WEAVE WALL PLANS & DETAILS | | 10/25/13 | S-406 | SECTIONS AND DETAILS | | 10/25/13 | DV-401 | TELEPHONE/DATA/HATV COMM RISER | | 10/29/13 |
| A-811 | CEILING & SOFFIT DETAILS | | 10/25/13 | S-407 | METAL FASTENER DETAILS | | 10/25/13 | | DIAGRAM - SPECIAL SYSTEMS | | |
| A-812 | POOL PLAN AND DETAILS | | 10/25/13 | | | | | DV-402 | TELEPHONE/DATA CABLING RISER | | 10/25/13 |
| A-813 | SITE DETAILS | | 10/25/13 | | | | | | DIAGRAM - SPECIAL SYSTEMS | | |
| A-814 | PATIO DETAILS | | 10/25/13 | | | | | DV-403 | HATV CABLING RISER DIAGRAM - | | 10/29/13 |
| A-400 | EXTERIOR WALL SECTION | | 10/25/13 | | | | | | SPECIAL SYSTEMS | | |
| A-401 | EXTERIOR WALL SECTION DETAILS | | 10/25/13 | | | | | DV-404 | EQUIPMENT RACK DETAILS - | | 10/29/13 |
| A-402 | EXTERIOR WALL SECTIONS | | 10/25/13 | | | | | | SPECIAL SYSTEMS | | |
| A-402.1 | EXTERIOR WALL SECTION DETAILS | | 10/25/13 | | | | | DV-405 | INSTALLATION DETAILS - | | 10/29/13 |
| A-403 | SECTION @ CORRIDOR WALLS | | 10/25/13 | MECHANICAL | | | | | SPECIAL SYSTEMS | | |
| A-404 | SECTION @ ELEVATOR SHAFT | | 10/25/13 | M-001 | HVAC SCHEDULES | | 10/25/13 | DV-906 | SECURITY INSTALLATION DETAILS- | | 10/25/13 |
| A-405 | EXTERIOR WALL SECTIONS | | 10/25/13 | M-002 | HVAC DETAILS | | 10/25/13 | | SPECIAL SYSTEMS | | |
| A-406 | EXTERIOR WALL SECTIONS | | 10/25/13 | M-003 | HVAC NOTES AND LEGENDS | | 10/25/13 | | | | |
| A-407 | EXTERIOR WALL SECTIONS | | 10/25/13 | M-004 | HVAC DETAILS AND RISERS | | 10/25/13 | | | | |
| A-912 | SECT. @ PLBG./TOILET EXH. FAN! | | 10/29/13 | M-101 | MAIN FLOOR PLAN | | 10/25/13 | | | | |
| A-1000 | STAIR "A" PLANS & SECTION | | 10/25/13 | M-102 | SECOND FLOOR PLAN | | 10/25/13 | | | | |
| A-1001 | STAIR "B" PLANS & SECTION | | 10/25/13 | M-103 | THIRD FLOOR PLAN | | 10/25/13 | | | | |
| A-1002 | STAIR DETAILS | | 10/25/13 | M-104 | FOURTH FLOOR PLAN | | 10/25/13 | | | | |
| A-1100 | INTERIOR FINISH SCHEDULE | | 10/25/13 | M-105 | ROOF PLAN | | 10/25/13 | | | | |



Initial Here

# EXHIBIT B

Additional Sheets Missing from Drawing Index:

| | | |
|---|---|---|
| C-105 | Stormwater Management Plan | 10.25.13 |
| C-501 | Storm Drainage Plan & Profile | 10.25.13 |
| C-602 | Site Details | 10.25.13 |
| C-611 | Sewer Details | 10.25.13 |
| C-612 | Sewer Details | 10.25.13 |
| AV-000 | Cover Sheet AV Systems | 10.25.13 |
| AV-001 | Symbols & Legend Sheet – AV Systems | 10.25.13 |
| AV-101 | 1st Floor Plan – AV Systems | 10.25.13 |
| AV-201 | 1st Floor RCP – AV Systems | 10.25.13 |
| AV-801 | Head-End Equipment Connectivity | 10.25.13 |
| AV-900 | Detail Sheet – AV Systems | 10.25.13 |

Sheet with Alternate Date on it:

| | | |
|---|---|---|
| ID-13 | Café Table/Business Library Millwork DTLS | 10.04.13 |

Note:
There are 2 C-103 Sheets

| | | |
|---|---|---|
| C-103 A | Phase I | 10.25.13 |
| C-103 B | Phase II | 10.25.13 |

Initial     Initial 

## Exhibit C

### TABLE OF CONTENTS

**INTRODUCTORY INFORMATION,**
**BIDDING REQUIREMENTS, CONTRACT FORMS, AND CONDITIONS OF THE CONTRACT**

| | | |
|---|---|---|
| Document | 00001 | Project Directory |
| Document | 00003 | Table of Contents |
| Document | 00010 | Pre-Bid Information |
| Document | 00100 | Instructions to Bidders |
| Document | 00300 | Bid Form |
| Document | 00500 | AIA Form A101- 2007 Edition |
| Document | 00700 | AIA Form A201- 2007 Edition |
| Document | 00802 | Supplemental Conditions |

**DIVISION 1 - GENERAL REQUIREMENTS**

| | | |
|---|---|---|
| Section | 01009 | Summary of Work |
| Section | 01010 | General Condition Requirements |
| Section | 01026 | Unit Prices |
| Section | 01027 | Applications for Payment |
| Section | 01028 | Change Order Procedures |
| Section | 01035 | Modification Procedures |
| Section | 01040 | Coordination |
| Section | 01045 | Cutting and Patching |
| Section | 01090 | Reference Standards |
| Section | 01100 | Special Project Procedures |
| Section | 01101 | FF&E Responsibilities |
| Section | 01102 | Furniture, Fixtures & Equipment General Requirements |
| Section | 01220 | Progress Meetings |
| Section | 01310 | Progress Schedules |
| Section | 01340 | Shop Drawings, Product Data, and Samples |
| Section | 01370 | Schedule of Values |
| Section | 01371 | Notes to Itemized Schedule of Values |
| Section | 01405 | Contract Quality Control |
| Section | 01410 | Testing Laboratory Services |
| Section | 01500 | Construction Facilities and Temporary Controls |
| Section | 01600 | Materials and Equipment |
| Section | 01700 | Contract Closeout |
| Section | 01710 | Final Cleaning |
| Section | 01740 | Warranties and Bonds |
| Section | 01750 | Spare Parts, Overages and Maintenance Materials |

**DIVISION 2 - SITEWORK**

| | | |
|---|---|---|
| Section | 02050 | Common Work Results for Utilities |
| Section | 02070 | Geogrids for Exterior Improvements |
| Section | 02200 | Site Clearing |
| Section | 02240 | Dewatering |
| Section | 02260 | Excavation Support and Protection |
| Section | 02281 | Soil Treatment |
| Section | 02300 | Earth Moving |
| Section | 02510 | Water Utility Distribution Piping |
| Section | 02535 | Sanitary Utility Sewerage Piping |

SpringHill Suites Lumberton
Richard Rauh & Associates/ Architects

00003-1
10.25.13

Initial Here 

```
Section   02620        Subdrainage
Section   02630        Strom Utility Drainage Piping
Section   02740        Asphalt Paving
Section   02751        Concrete Paving
Section   02760        Pavement Markings
Section   02810        Planting Irrigation
Section   02821        Chain Link Fences and Gates
Section   02830        Segmental Concrete Unit Masonry Retaining Walls
Section   02840        Parking Bumpers
Section   02900        Planting
```

## DIVISION 3 - CONCRETE

```
Section   03100        Concrete Formwork
Section   03200        Concrete Reinforcement
Section   03300        Cast-in-place Concrete
Section   03410        Plant Precast Structural Concrete Products
Section   03510        Gypsum Concrete
```

## DIVISION 4 - MASONRY

```
Section   04100        Mortar and Masonry Grout
Section   04220        Concrete Unit Masonry
```

## DIVISION 5 - METALS

```
Section   05120        Structural Steel
Section   05500        Metal Fabrications
```

## DIVISION 6 - WOOD AND PLASTICS

```
Section   06100        Rough Carpentry
Section   06193        Plate Connected Wood Trusses
Section   06200        Finish Carpentry
Section   06620        Cast Cultured Marble
```

## DIVISION 7 - THERMAL AND MOISTURE PROTECTION

```
Section   07113        Membrane Waterproofing
Section   07200        Insulation
Section   07240        Exterior Insulation and Finish System
Section   07270        Firestopping
Section   07533        Sure-Weld Carlisle Thermoplastic Polyolefin
Section   07600        Flashing and Sheet Metal
Section   07900        Joint Sealers
```

## DIVISION 8 - DOORS AND WINDOWS

```
Section   08100        Metal Doors and Frames
Section   08211        Flush Plastic Laminate Faced Doors
```

SpringHill Suites Lumberton
Richard Rauh & Associates/ Architects

00003-2
10.25.13

Initial Here

Section  08300          Specialty Doors
Section  08400          Entrances and Storefronts
Section  08520          Aluminum Windows
Section  08700          Door Hardware
Section  08800          Glazing

## DIVISION 9 - FINISHES

Section  09260          Gypsum Board Systems and Acoustical Ceilings
Section  09310          Ceramic Tile
Section  09650          Resilient Flooring
Section  09680          Carpet
Section  09790          Fluid Applied Flooring for Concrete
Section  09900          Paint and Coatings
Section  09950          Wallcoverings

## DIVISION 10 - SPECIALTIES

Section  10050          Miscellaneous Specialties
Section  10210          Extruded Aluminum Louvers and PTAC Grilles
Section  10260          Wall and Corner Guards
Section  10520          Fire Protection Specialties
Section  10670          Storage Shelving
Section  10800          Toilet Accessories

## DIVISION 11 - EQUIPMENT

Section  11400          Equipment and Furniture

## DIVISION 12 - FURNISHINGS

        NOT USED

## DIVISION 13 - SPECIAL CONSTRUCTION

Section  13152          Swimming Pool and Spa- Interior

## DIVISION 14 - CONVEYING SYSTEMS

Section  14240          Hydraulic Elevators
Section  14560          Laundry Chutes

## DIVISION 15 - MECHANICAL

Section  15000          HVAC General
Section  15020          Ductwork and Accessories
Section  15030          Louvers, Grilles,Registers and Diffusers
Section  15055          Split System Air Conditioning

SpringHill Suites Lumberton
Richard Rauh & Associates/ Architects

00003-3
10.25.13

Initial Here 

| Section | 15060 | Refrigerant Piping |
| Section | 15070 | Vibration and Seismic Control for HVAC Piping |
| Section | 15075 | Identification for HVAC Piping and Equipment |
| Section | 15130 | 100% Outside Air Rooftop Units |
| Section | 15137 | Dehumidifying Pool HVAC Units (PAH & PCU) |
| Section | 15150 | Automatic controls |
| Section | 15170 | HVAC Insulation |
| Section | 15260 | Packaged Terminal Air Conditioners (PTAC) |
| Section | 15400 | Plumbing General |
| Section | 15401 | Natural Gas Piping Systems |
| Section | 15410 | Domestic Water Pressure Booster System |
| Section | 15450 | Plumbing Fixtures |
| Section | 15500 | Fire Protection General |
| Section | 15525 | Electric Fire Pump and Accessories |
| Section | 15605 | Electric Wall Heaters |
| Section | 15830 | Unitary Exhaust Supply Fans and Ventilators |
| Section | 15855 | Roof Curbs |
| Section | 15940 | Sequence of Operations for HVAC Controls |
| Section | 15950 | Testing, Adjusting and Balancing (TAB) |

## DIVISION 16 - ELECTRICAL

| Section | 16000 | Electrical General |
| Section | 16110 | Conduit and Raceways |
| Section | 16115 | Fire Stopping for Electrical systems |
| Section | 16120 | Conductors |
| Section | 16130 | Outlet Boxes and Junction Boxes |
| Section | 16140 | Wiring Devices |
| Section | 16160 | Panel Boards |
| Section | 16170 | Disconnect Switches |
| Section | 16200 | Switchboards |
| Section | 16450 | Grounding |
| Section | 16500 | Lighting |
| Section | 16520 | Occupancy Sensors |
| Section | 16600 | Lighting Protection System |
| Section | 16700 | Fire Alarm - Addressable |

**END OF DOCUMENT**

**Exhibit D**

**RICHARD RAUH & ASSOCIATES, LTD./ARCHITECTS**
MEMBERS, AMERICAN INSTITUTE OF ARCHITECTS
**433 BISHOP STREET, N.W.**
**ATLANTA, GEORGIA 30318-4303**
404/892-2833
TELECOPIER: 404-892-3946

<u>MEMORANDUM</u>

DATE:      11.19.13

TO:        Bidders

FROM:      Ann Fitzgerald

RE:        Lumberton SpringHill Suites, File 1114/I.3

SUBJECT:   Addendum #1

COPIES:    File

Addendum #1

8 1/2" x 12"
11" x 17"
24" x 36"

General:
1.  Add hold open devices(specified under hardware) at all
interior fire stair doors to the design build fire alarm
system.
2.  Please note that there may be references on certain
plans and in the specifications to Marriott's Design Guide
Project Manual and Standards for the SpringHill Suites
brand.  Bidders are only responsible for pricing what is
shown on the plans, specifications and other related
documents that have been posted to the Digital Plan Room
and/or emailed to Bidders by 6:00 pm 11.19.13.  When
submitting bids, Bidders are to qualify their bid in regards
to any scope conflicts between the plans, specifications and
other related documents that have been posted to the Digital
Plan Room by 6:00 pm 11.19.13 and/or emailed to Bidders.
3.  Hardware Set 4A revise as follows: Delete 2 sets Pivot
Hinges and provide 6 each Hinges TA2714 4.5 x 4.5 US26D MCK.
4.  Provide a $4,000.00 allowance for the exterior fire pit.
5.  Delete Specification Section 01101 FF&E Responsibilities
dated 10.25.13 and substitute Section 01101 FF&E
Responsibilities dated 11.19.13.



6. Incorporate the following emails from John Hicks into the Contract:

a) SHS Lumberton - Final Posting of Project Specifications email date and time 11.6.13 5:29 pm

b) SHS Lumberton - Bid reply requirements & Schedule of Values (Excel spreadsheet) email date and time 11.12.13 6:28 am

c) SHS Lumberton - 00300 Bid Form REV 1.doc; 00300 Bid Form REV 1.pdf email date and time 11.13.13 4:56 pm

d) SHS Lumberton - Geotechnical Report email date and time 11.19.13 10:32 am

e) SHS Lumberton - References to Marriott's Design Guide Project Manual and Standards email date and time 11.19.13 11:31 am

f) SHS Lumberton - ECS Carolinas Geotechnical Report 2.28.12 email date and time 11.19.13 11:42 am

| SHEET NO. | REASON FOR CHANGE | DATE |
|---|---|---|
| C104 | RFI clarification | 11.19.13 |
| C201 | RFI clarification | 11.19.13 |
| C202 | RFI clarification | 11.19.13 |
| C301 | RFI clarification | 11.19.13 |
| C302 | RFI clarification | 11.19.13 |
| C501 | RFI clarification | 11.19.13 |
| C612 | RFI clarification | 11.19.13 |
| CAD-001 | RFI clarification | 11.19.13 |
| CAD-002 | RFI clarification | 11.19.13 |
| CAD-003 | RFI clarification | 11.19.13 |
| CIVIL MEMO | RFI clarification | 11.19.13 |
| SK-1 | Door, frame and hardware set revisions. | 11.19.13 |
| SK-2 | Added door number to connecting door. | 11.19.13 |
| SK-3 | Added door number to connecting door. | 11.19.13 |
| SK-4 | Revised fire stair door number. | 11.19.13 |



Exhibit D

| SK-5 | Added omitted door numbers, space numbers and revised meeting room door from a single leaf to a pair. | 11.19.13 |
|------|-----------------------------------------------------------------------------------------------------|----------|
| SK-6 | Revised Fire Pump Room door number. | 11.19.13 |
| SK-7 | Revised structural parapet framing details. | 11.19.13 |
| SK-8 | Added note to Stud/Framing Schedule | 11.19.13 |
| SK-9 | Framing revisions to Shear Wall Schedule. | 11.19.13 |
| SK-10 | Added Boardroom Closet to finish schedule. | 11.19.13 |
| SK-11 | Added typical round column detail. | 11.19.13 |



## SHS Lumberton Owner Emails

**Exhibit D** 

**John Hicks**

### Total of Six (6) Emails

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Wednesday, November 06, 2013 5:29 PM |
| **To:** | Mark Webb; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Dean Reaves ; Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton – Final Posting of Project Specifications |
| **Importance:** | High |

To all SHS Lumberton Bidders:

Please see the below link for the final posting of specifications for this project.

http://dpsinc.spinnerdog.net/cgi-bin/PickupEP?Fetcher,20131106-022

Should you have any questions in the interim please address them to Ann Fitzgerald with a copy to myself.

Thank you for your patience and we look forward to hearing back from all of you on the 22nd.

Have a nice evening.

John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
Phone: (770) 817-8408 Direct Line
Cell: (404) 797-9870
Email: john.hicks@northpointhospitality.com
www.northpointhospitality.com



Exhibit D 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 12, 2013 6:28 AM |
| **To:** | Chris Spies (chriss@d-jcc.com); Mark Webb; Dean Reaves ; Sam Isham (sisham@metconnc.com); Ronda Deese; Amy Trefy (estimating@kelloggkimsey.com); mark@d-jcc.com |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton - Bid reply requirements & Schedule of Values (Excel spreadsheet) |
| **Attachments:** | 01370 - SHS LUM Schedule of Values.xls |
| | |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please note that you may email a copy of your bid on the 22nd. There is no requirement to deliver a hard copy of your bid at our office on the afternoon of the 22nd.

Secondly, please note the requirement to turn in your itemized Schedule of Values no later than 2 pm EST on November 25th. I have attached an Excel copy of the itemized Schedule of Values that you can use to compile these numbers.

**John P. Hicks, LEED AP**
**Vice President Development**
**North Point Hospitality Group, Inc.**
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



Exhibit D 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Wednesday, November 13, 2013 4:56 PM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Chris Spies (chriss@d-jcc.com); Sam Isham (sisham@metconnc.com); Ronda Deese; Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton - 00300 Bid Form REV 1 |
| **Attachments:** | 00300 - SHS LUM Bid Form REV 1.doc; 00300 - SHS LUM Bid Form REV 1.pdf |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please use the revised Bid Form that is attached. The only change was on the Bid Modification Form in which the incorrect email address for the architect was indicated. Thank you.

John P. Hicks, LEED AP
**Vice President Development**
**North Point Hospitality Group, Inc.**
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



I

**Exhibit D** 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 19, 2013 10:32 AM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton - Geotechnical Report |
| **Attachments:** | SpringHill Suites Lumberton ECS Report 33-2470.pdf |
| | |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please see the attached copy of the Geotechnical Report dated July 19th, 2013 that was prepared by ECS Carolinas. This has also been posted to the FTP site.

John P. Hicks, LEED AP
**Vice President Development**
**North Point Hospitality Group, Inc.**
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



Exhibit D 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 19, 2013 11:31 AM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net; ryoung@lillyyoung.com; Jamie Mullis; Sam Powers |
| **Subject:** | SHS Lumberton - References to Marriott's Design Guide Project Manual and Standards |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please note that there may be references on certain plans and in the specifications to Marriott's Design Guide Project Manual and Standards for the Springhill Suites brand. Please let this email serve to notify all Bidders that each Bidder is only responsible for pricing what is shown on the plans, specifications and other related documents that have been posted to the FTP site and/or emailed to all Bidders. If an item or other document is referenced on a plan or in a specification and that document has not been posted to the FTP site and/or emailed to all Bidders by 6 pm EST TODAY then the Bidder is not responsible for adhering to any requirements contained in said document that are in conflict with what has been shown on the posted plans, specifications and other related posted documents and that may have an impact on the scope and price of the work. **In order to allow each Bidder ample time to prepare their Bid there will be no further postings of any "material" information that would have an impact on pricing after 6 PM EST TODAY.**

**Finally, if you find a scope conflict between the posted plans, specifications and other related documents that have been posted to the FTP site and/or emailed to all Bidders please qualify this when you submit your Bid so that the Owner and Architect are clear as to what is contained in your Bid.**

This same comments will be articulated in Addendum One which will be posted by 6 PM EST TODAY.

John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*





**Exhibit D**

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 19, 2013 11:42 AM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton – ECS Carolinas Geotechnical Report dated February 28, 2012 |
| **Attachments:** | ECS Report 33-1848 Final.zip |
| | |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please see the attached copy of the Geotechnical Report dated February 12th, 2012 that was prepared by ECS Carolinas. This was the first report that is referenced in the 2nd report dated July 19th, 20913. Please note that all soils that were impacted by petroleum that are discussed in this report were removed from this site during the summer of 2012 by the State of North Carolina. **Should any further soils be encountered during construction that require special handling and disposal the handling and disposal of these materials will be handled on a change order basis.** This report will also be posted to the FTP site late today.

John P. Hicks, LEED AP
**Vice President Development**
**North Point Hospitality Group, Inc.**
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



i

**Exhibit D**

## RICHARD RAUH & ASSOCIATES, LTD./ ARCHITECTS
MEMBERS, AMERICAN INSTITUTE OF ARCHITECTS

**433 BISHOP STREET, N.W.**
**ATLANTA, GEORGIA 30318-4303**
404/892-2833
TELECOPIER: 404-892-3946

MEMORANDUM

DATE:      11.20.13

TO:        Bidders

FROM:      Ann Fitzgerald

RE:        Lumberton SpringHill Suites, File 1114/I.3

SUBJECT:   Addendum #2

COPIES:    File

Addendum #2

8 ½" x 12"

Light Fixture Clarifications:
1) Substitute light fixture tag P01 for every light fixture
tagged on the drawings as P06.
2) Provide a $350.00 allowance for all light fixtures tagged
as D170. These are the four wall sconces in the Boardroom.
3.  R31E is the same light fixture specification for a
downlight as light fixture R31 with the added accessory of
an emergency ballast.  (Specification "-EM.")
4.  R50E is the same light fixture specification as light
fixture R50 with the added accessory of an emergency
ballast.  (Specification "-EM.")



Exhibit D

### RICHARD RAUH & ASSOCIATES, LTD./ARCHITECTS
MEMBERS, AMERICAN INSTITUTE OF ARCHITECTS
**433 BISHOP STREET, N.W.**
**ATLANTA, GEORGIA 30318-4303**
404/892-2833
TELECOPIER: 404-892-3946

<u>MEMORANDUM</u>

DATE:      11.20.13

TO:        Bidders

FROM:      Ann Fitzgerald

RE:        Lumberton SpringHill Suites, File 1114/I.3

SUBJECT:   Addendum #3

COPIES:    File

Addendum #3

8 ½" x 12"

RFI Question: I'm questioning the note on draftstopping plans which state: Typical max area between draft stopping (160 cubic feet).  If we follow the volume max, we would have draft stopping on each floor truss.

Answer: In areas where the truss spans are long, draftstopping is typically required on every truss.

RFI Question: The dimensions I was looking for are Column Lines A-R.

Answer: Horizontal framing dimensions are not on the drawings with the exception of the typical demising wall centerlines.  Horizontal dimensions required for construction will be provided via addendum to the awarded General Contractor upon resolution of scope (incorporation of building permit comments, Marriott comments and any VE agreed to by the Owner).



**SHS Lumberton - Addendum 4**                                    **Exhibit D**

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Thursday, November 21, 2013 2:57 PM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net; Jamie Mullis; ryoung@lillyyoung.com |
| **Subject:** | SHS Lumberton - Addendum 4 Electrical Clarifications |
| **Importance:** | High |

To all SHS Lumberton Bidders:

This email will serve as Addendum 4.

Please see the below clarifications from the Electrical Engineer regarding the electrical plans and specifications. *If you have time to disburse this to your electrical subcontractor bidders and factor into your final bid please do so.*

The fire alarm system is not a voice evacuation system. The electrical drawings showed a symbol for speakers over horns. These should be horns.

The smoke detectors in the guest rooms should not be battery powered stand alone. They should be system detectors.

There should be a smoke detector in all elevator lobbies. They are missing on the 1st and 3rd floors.
The board room and the kitchen should have notification devices. The Board Room should have a strobe. The kitchen should have a horn/strobe.

There should also be a smoke detector in the electrical room.

Please acknowledge receipt by responding to this email or acknowledge with your bid tomorrow.

John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



1

SHS Lumberton - Addendum 4

Exhibit D



RICHARD RAUH & ASSOCIATES/Architecture    433 BISHOP STREET, N.W.  ATLANTA, GEORGIA 30318





E-001

GENERAL NOTES, LEGENDS
LUMBERTON SPRINGHILL SUITES
LUMBERTON, NC

PROJECT NUMBER 1114
DATE 10.25.13

SHS Lumberton - Addendum 4      Exhibit D



RICHARD RAUH & ASSOCIATES/Architecture    433 BISHOP STREET, N.W.  ATLANTA, GEORGIA  30318

| FIRST FLOOR PLAN | |
|---|---|
| LUMBERTON  SPRINGHILL  SUITES | |

SHEET NUMBER
E-101

PROJECT NUMBER 1114
DATE  10.25.13

SPRINGHILL SUITES

REVISIONS



SHS Lumberton - Addendum 4

Exhibit D



RICHARD RAUH & ASSOCIATES/Architecture   433 BISHOP STREET, N.W.  ATLANTA, GEORGIA  30318

| SHEET NUMBER | GUEST ROOM ENLARGED PLANS - ELECTRICAL | | REVISIONS |
| E-401 | LUMBERTON SPRINGHILL SUITES | SPRINGHILL SUITES | |
| PROJECT NUMBER 1114 | | | |
| DATE 10.25.13 | | | |





SHS Lumberton - Addendum 4        Exhibit D

RICHARD RAUH & ASSOCIATES/Architecture    433 BISHOP STREET, N.W.   ATLANTA, GEORGIA  30318

SHEET NUMBER: E-402

GUEST ROOM ENLARGED PLANS - ELECTRICAL
LUMBERTON  SPRINGHILL  SUITES

PROJECT NUMBER: 1114
DATE: 10.25.13

SPRINGHILL SUITES



**Exhibit D**

### RICHARD RAUH & ASSOCIATES, LTD./ARCHITECTS
MEMBERS, AMERICAN INSTITUTE OF ARCHITECTS
433 BISHOP STREET, N.W.
ATLANTA, GEORGIA 30318-4303
404/892-2833
TELECOPIER: 404-892-3946

<u>MEMORANDUM</u>

DATE:       11.19.13

TO:         Bidders

FROM:       Ann Fitzgerald

RE:         Lumberton SpringHill Suites, File 1114/I.3

SUBJECT:    Addendum #1

COPIES:     File

Addendum #1

8 1/2" x 12"
11" x 17"
24" x 36"

General:
1.   Add hold open devices(specified under hardware) at all
interior fire stair doors to the design build fire alarm
system.
2.   Please note that there may be references on certain
plans and in the specifications to Marriott's Design Guide
Project Manual and Standards for the SpringHill Suites
brand.  Bidders are only responsible for pricing what is
shown on the plans, specifications and other related
documents that have been posted to the Digital Plan Room
and/or emailed to Bidders by 6:00 pm 11.19.13.  When
submitting bids, Bidders are to qualify their bid in regards
to any scope conflicts between the plans, specifications and
other related documents that have been posted to the Digital
Plan Room by 6:00 pm 11.19.13 and/or emailed to Bidders.
3.   Hardware Set 4A revise as follows: Delete 2 sets Pivot
Hinges and provide 6 each Hinges TA2714 4.5 x 4.5 US26D MCK.
4.   Provide a $4,000.00 allowance for the exterior fire pit.
5.   Delete Specification Section 01101 FF&E Responsibilities
dated 10.25.13 and substitute Section 01101 FF&E
Responsibilities dated 11.19.13.



6.  Incorporate the following emails from John Hicks into the Contract:
a) SHS Lumberton – Final Posting of Project Specifications email date and time 11.6.13 5:29 pm
b) SHS Lumberton – Bid reply requirements & Schedule of Values (Excel spreadsheet)  email date and time 11.12.13 6:28 am
c) SHS Lumberton - 00300 Bid Form REV 1.doc; 00300 Bid Form REV 1.pdf  email date and time 11.13.13 4:56 pm
d) SHS Lumberton – Geotechnical Report  email date and time 11.19.13 10:32 am
e) SHS Lumberton – References to Marriott's Design Guide Project Manual and Standards  email date and time 11.19.13 11:31 am
f) SHS Lumberton – ECS Carolinas Geotechnical Report 2.28.12 email date and time 11.19.13 11:42 am

| SHEET NO. | REASON FOR CHANGE | DATE |
|-----------|-------------------|------|
| C104 | RFI clarification | 11.19.13 |
| C201 | RFI clarification | 11.19.13 |
| C202 | RFI clarification | 11.19.13 |
| C301 | RFI clarification | 11.19.13 |
| C302 | RFI clarification | 11.19.13 |
| C501 | RFI clarification | 11.19.13 |
| C612 | RFI clarification | 11.19.13 |
| CAD-001 | RFI clarification | 11.19.13 |
| CAD-002 | RFI clarification | 11.19.13 |
| CAD-003 | RFI clarification | 11.19.13 |
| CIVIL MEMO | RFI clarification | 11.19.13 |
| SK-1 | Door, frame and hardware set revisions. | 11.19.13 |
| SK-2 | Added door number to connecting door. | 11.19.13 |
| SK-3 | Added door number to connecting door. | 11.19.13 |
| SK-4 | Revised fire stair door number. | 11.19.13 |



Exhibit D

| SK-5 | Added omitted door numbers, space numbers and revised meeting room door from a single leaf to a pair. | 11.19.13 |
|------|-----------------------------------------------------------------------------------------------------------|----------|
| SK-6 | Revised Fire Pump Room door number. | 11.19.13 |
| SK-7 | Revised structural parapet framing details. | 11.19.13 |
| SK-8 | Added note to Stud/Framing Schedule | 11.19.13 |
| SK-9 | Framing revisions to Shear Wall Schedule. | 11.19.13 |
| SK-10 | Added Boardroom Closet to finish schedule. | 11.19.13 |
| SK-11 | Added typical round column detail. | 11.19.13 |



## SHS Lumberton Owner Emails

**Exhibit D** 

**John Hicks**                    **Total of Six (6) Emails**

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Wednesday, November 06, 2013 5:29 PM |
| **To:** | Mark Webb; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Dean Reaves ; Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton – Final Posting of Project Specifications |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please see the below link for the final posting of specifications for this project.

http://dpsinc.spinnerdog.net/cgi-bin/PickupEP?Fetcher,20131106-022

Should you have any questions in the interim please address them to Ann Fitzgerald with a copy to myself.

Thank you for your patience and we look forward to hearing back from all of you on the 22nd.

Have a nice evening.

John P. Hicks, LEED AP
**Vice President Development**
**North Point Hospitality Group, Inc.**
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



Exhibit D 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 12, 2013 6:28 AM |
| **To:** | Chris Spies (chriss@d-jcc.com); Mark Webb; Dean Reaves ; Sam Isham (sisham@metconnc.com); Ronda Deese; Amy Trefy (estimating@kelloggkimsey.com); mark@d-jcc.com |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton - Bid reply requirements & Schedule of Values (Excel spreadsheet) |
| **Attachments:** | 01370 - SHS LUM Schedule of Values.xls |
| | |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please note that you may email a copy of your bid on the 22nd. There is no requirement to deliver a hard copy of your bid at our office on the afternoon of the 22nd.

Secondly, please note the requirement to turn in your itemized Schedule of Values no later than 2 pm EST on November 25th. I have attached an Excel copy of the itemized Schedule of Values that you can use to compile these numbers.

John P. Hicks, LEED AP
**Vice President Development**
**North Point Hospitality Group, Inc.**
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



**Exhibit D** 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Wednesday, November 13, 2013 4:56 PM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Chris Spies (chriss@d-jcc.com); Sam Isham (sisham@metconnc.com); Ronda Deese; Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton - 00300 Bid Form REV 1 |
| **Attachments:** | 00300 - SHS LUM Bid Form REV 1.doc; 00300 - SHS LUM Bid Form REV 1.pdf |
| | |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please use the revised Bid Form that is attached. The only change was on the Bid Modification Form in which the incorrect email address for the architect was indicated. Thank you.

John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
Phone: (770) 817-8408 Direct Line
Cell: (404) 797-9870
Email: john.hicks@northpointhospitality.com
www.northpointhospitality.com



1

**John Hicks**

Exhibit D 

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 19, 2013 10:32 AM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton - Geotechnical Report |
| **Attachments:** | SpringHill Suites Lumberton ECS Report 33-2470.pdf |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please see the attached copy of the Geotechnical Report dated July 19th, 2013 that was prepared by ECS Carolinas. This has also been posted to the FTP site.

John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
Phone: (770) 817-8408 Direct Line
Cell: (404) 797-9870
Email: john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



1

Exhibit D 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 19, 2013 11:31 AM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net; ryoung@lillyyoung.com; Jamie Mullis; Sam Powers |
| **Subject:** | SHS Lumberton - References to Marriott's Design Guide Project Manual and Standards |
| **Importance:** | High |

**To all SHS Lumberton Bidders:**

Please note that there may be references on certain plans and in the specifications to Marriott's Design Guide Project Manual and Standards for the Springhill Suites brand. Please let this email serve to notify all Bidders that each Bidder is only responsible for pricing what is shown on the plans, specifications and other related documents that have been posted to the FTP site and/or emailed to all Bidders. If an item or other document is referenced on a plan or in a specification and that document has not been posted to the FTP site and/or emailed to all Bidders by 6 pm EST TODAY then the Bidder is not responsible for adhering to any requirements contained in said document that are in conflict with what has been shown on the posted plans, specifications and other related posted documents and that may have an impact on the scope and price of the work. **In order to allow each Bidder ample time to prepare their Bid there will be no further postings of any "material" information that would have an impact on pricing after 6 PM EST TODAY.**

**Finally, if you find a scope conflict between the posted plans, specifications and other related documents that have been posted to the FTP site and/or emailed to all Bidders please qualify this when you submit your Bid so that the Owner and Architect are clear as to what is contained in your Bid.**

This same comments will be articulated in Addendum One which will be posted by 6 PM EST TODAY.

John P. Hicks, LEED AP
**Vice President Development**
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



i

**Exhibit D** 

## John Hicks

| | |
|---|---|
| **From:** | John Hicks |
| **Sent:** | Tuesday, November 19, 2013 11:42 AM |
| **To:** | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| **Cc:** | rrauh@mailatlanta.net |
| **Subject:** | SHS Lumberton - ECS Carolinas Geotechnical Report dated February 28, 2012 |
| **Attachments:** | ECS Report 33-1848 Final.zip |
| **Importance:** | High |

To all SHS Lumberton Bidders:

Please see the attached copy of the Geotechnical Report dated February 12th, 2012 that was prepared by ECS Carolinas. This was the first report that is referenced in the 2ⁿᵈ report dated July 19ᵗʰ, 20913. Please note that all soils that were impacted by petroleum that are discussed in this report were removed from this site during the summer of 2012 by the State of North Carolina. **Should any further soils be encountered during construction that require special handling and disposal the handling and disposal of these materials will be handled on a change order basis.** This report will also be posted to the FTP site late today.

John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
Phone: (770) 817-8408 Direct Line
Cell: (404) 797-9870
Email: john.hicks@northpointhospitality.com
*www.northpointhospitality.com*



**Exhibit D**

### RICHARD RAUH & ASSOCIATES, LTD. / ARCHITECTS
MEMBERS, AMERICAN INSTITUTE OF ARCHITECTS
**433 BISHOP STREET, N.W.**
**ATLANTA, GEORGIA 30318-4303**
404/892-2833
TELECOPIER: 404-892-3946

<u>MEMORANDUM</u>

DATE:     11.20.13

TO:       Bidders

FROM:     Ann Fitzgerald

RE:       Lumberton SpringHill Suites, File 1114/I.3

SUBJECT:  Addendum #2

COPIES:   File

Addendum #2

8 ½" x 12"

Light Fixture Clarifications:
1) Substitute light fixture tag P01 for every light fixture
tagged on the drawings as P06.
2) Provide a $350.00 allowance for all light fixtures tagged
as D170. These are the four wall sconces in the Boardroom.
3.  R31E is the same light fixture specification for a
downlight as light fixture R31 with the added accessory of
an emergency ballast. (Specification "-EM.")
4.  R50E is the same light fixture specification as light
fixture R50 with the added accessory of an emergency
ballast. (Specification "-EM.")



Exhibit D

**RICHARD RAUH & ASSOCIATES, LTD./ARCHITECTS**
MEMBERS, AMERICAN INSTITUTE OF ARCHITECTS
**433 BISHOP STREET, N.W.**
**ATLANTA, GEORGIA 30318-4303**
404/892-2833
TELECOPIER: 404-892-3946

<u>MEMORANDUM</u>

DATE:      11.20.13

TO:        Bidders

FROM:      Ann Fitzgerald

RE:        Lumberton SpringHill Suites, File 1114/I.3

SUBJECT:   Addendum #3

COPIES:    File

Addendum #3

8 ½" x 12"

RFI Question: I'm questioning the note on draftstopping
plans which state: Typical max area between draft stopping
(160 cubic feet). If we follow the volume max, we would
have draft stopping on each floor truss.

Answer: In areas where the truss spans are long,
draftstopping is typically required on every truss.

RFI Question: The dimensions I was looking for are Column
Lines A-R.

Answer: Horizontal framing dimensions are not on the
drawings with the exception of the typical demising wall
centerlines. Horizontal dimensions required for
construction will be provided via addendum to the awarded
General Contractor upon resolution of scope (incorporation
of building permit comments, Marriott comments and any VE
agreed to by the Owner).



SHS Lumberton - Addendum 4                                           Exhibit D

## John Hicks

| From: | John Hicks |
|---|---|
| Sent: | Thursday, November 21, 2013 2:57 PM |
| To: | mwebb@pinkerton-laws.com; dreaves@darganconstruction.com; Ronda Deese; Sam Isham (sisham@metconnc.com); Chris Spies (chriss@d-jcc.com); Amy Trefy (estimating@kelloggkimsey.com) |
| Cc: | rrauh@mailatlanta.net; Jamie Mullis; ryoung@lillyyoung.com |
| Subject: | SHS Lumberton - Addendum 4 Electrical Clarifications |
| Importance: | High |

To all SHS Lumberton Bidders:

This email will serve as Addendum 4.

Please see the below clarifications from the Electrical Engineer regarding the electrical plans and specifications. *If you have time to disburse this to your electrical subcontractor bidders and factor into your final bid please do so.*

The fire alarm system is not a voice evacuation system. The electrical drawings showed a symbol for speakers over horns. These should be horns.

The smoke detectors in the guest rooms should not be battery powered stand alone. They should be system detectors.

There should be a smoke detector in all elevator lobbies. They are missing on the 1st and 3rd floors.
The board room and the kitchen should have notification devices. The Board Room should have a strobe. The kitchen should have a horn/strobe.

There should also be a smoke detector in the electrical room.

Please acknowledge receipt by responding to this email or acknowledge with your bid tomorrow.

John P. Hicks, LEED AP
Vice President Development
North Point Hospitality Group, Inc.
3405 Piedmont Rd NE
Suite 175
Atlanta, GA 30305
**Phone:** (770) 817-8408 Direct Line
**Cell:** (404) 797-9870
**Email:** john.hicks@northpointhospitality.com
www.northpointhospitality.com



1

SHS Lumberton - Addendum 4

Exhibit D



RICHARD RAUH & ASSOCIATES/Architecture        433 BISHOP STREET, N.W.   ATLANTA, GEORGIA  30318







| SHEET NUMBER | GENERAL NOTES, LEGENDS | | REVISIONS |
| --- | --- | --- | --- |
| E-001 | LUMBERTON SPRINGHILL SUITES | | |
| PROJECT NUMBER 1114 | LUMBERTON, NC | SPRINGHILL | |
| DATE  10.25.13 | | SUITES | |



SHS Lumberton - Addendum 4

Exhibit D



RICHARD RAUH & ASSOCIATES/Architecture   433 BISHOP STREET, N.W.   ATLANTA, GEORGIA 30318

FIRST FLOOR PLAN

LUMBERTON SPRINGHILL SUITES

SHEET NUMBER
E-101

PROJECT NUMBER 1114

DATE  10.25.13

SPRINGHILL SUITES



SHS Lumberton - Addendum 4

Exhibit D





SHS Lumberton - Addendum 4        Exhibit D





SHS Lumberton – Addendum 4

Exhibit D

LIGHTING CONTROL SCHEDULE

LIGHTING FIXTURE SCHEDULE

LIGHTING FIXTURE SCHEDULE





RICHARD RAUH & ASSOCIATES/Architecture     433 BISHOP STREET, N.W.  ATLANTA,  GEORGIA  30318

SHEET NUMBER
E-504

PROJECT NUMBER 1114
DATE 10.25.13

LIGHTING SCHEDULES

LUMBERTON SPRINGHILL SUITES
LUMBERTON, NC

SPRINGHILL SUITES

REVISIONS



# AIA® Document A201™ – 2007

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address)*
Springhill Suites Lumberton
5218 Fayetteville Road
Lumberton, NC 28358

THE OWNER:
*(Name, legal status and address)*
NP 301, LLC
c/o North Point Hospitality Group
3405 Piedmont Rd NC
Suite 175
Atlanta, GA 30305
(770) 817-8408

THE ARCHITECT:
*(Name, legal status and address)*
Richard Rauh & Associates, LTD./Architects
433 Bishop Street N. W.
Atlanta, Georgia 30318-4303
(404) 892-2833
(404) 892-3946

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.



TABLE OF ARTICLES

1       GENERAL PROVISIONS

2       OWNER

3       CONTRACTOR

4       ARCHITECT

5       SUBCONTRACTORS

6       CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7       CHANGES IN THE WORK

8       TIME

9       PAYMENTS AND COMPLETION

10      PROTECTION OF PERSONS AND PROPERTY

11      INSURANCE AND BONDS

12      UNCOVERING AND CORRECTION OF WORK


Init.
/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/08/2014, and is not for resale.
User Notes:                                                                                               (1094010923)

1

13      MISCELLANEOUS PROVISIONS

14      TERMINATION OR SUSPENSION OF THE CONTRACT

15      CLAIMS AND DISPUTES



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                   (1094010923)

INDEX
(Topics and numbers in bold are section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5,
10.2.8, 13.4.2, 13.7, 14.1, 15.2
Addenda
1.1.1, 3.11.1
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7, 9.10, 11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10,
4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect, Definition of**
**4.1.1**
Architect, Extent of Authority
2.4.1, 3.12.7, 4.1, 4.2, 5.2, 6.3, 7.1.2, 7.3.7, 7.4, 9.2,
9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1,
13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, **3.12.4**, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3,
4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2,
9.5.3, 9.6.4, 15.1.3, 15.2
Architect's Additional Services and Expenses
2.4.1, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4

Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4.1, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1,
13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18,
4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5,
9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for**
**Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7, 11.3.9, 11.3.10, 13.1.1, 15.2.5, 15.2.6.1, 15.3.1,
15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**
Building Permit
3.7.1


**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                    (1094010023)

3

**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, 2.4.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.6, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9, 12.1.2, 15.1.3
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, **7**, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1, 11.3.9
**Claims**, Definition of
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, 3.7.4,6.1.1, 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
**Cleaning Up**
3.15, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1, 15.1.4
**Commencement of the Work**, Definition of
**8.1.2**
**Communications Facilitating Contract Administration**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 13.7

Compliance with Laws
1.6.1, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
1.1.4, **6**
**Construction Change Directive**, Definition of
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 11.3.9, **14**
Contract Administration
3.1.3, **4**, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4, 15.2.5
**Contract Sum**, Definition of
**9.1**
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4, 8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2, 15.1.5.1, 15.2.5
**Contract Time**, Definition of
**8.1.1**
**CONTRACTOR**
**3**
**Contractor**, Definition of
**3.1, 6.1.2**


**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA˚ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA˚ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:

4

(1094010923)

**Contractor's Construction Schedules**
**3.10**, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.3.7, 14.1, 14.2.1.1
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors
and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2, 6.2.2,
7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3,
11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 5.3.1, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2,
9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3,
7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, **3.17**
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**
**Correlation and Intent of the Contract Documents**
**1.2**
**Cost**, Definition of
**7.3.7**
Costs
2.4.1, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.3,
12.1.2, 12.2.1, 12.2.4, 13.5, 14

**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3,
12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4.1, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3.1, 2.4.1, 3.5, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7,
10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
Drawings, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13.1, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2



Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:

(1094010923)

Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5,
3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2,
9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2,
10.4.1, 14.3, 15.1.5, 15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
12.3.1, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**
Guarantees (See Warranty)
**Hazardous Materials**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2,
11.3.7
**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4.1
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2
**Instruments of Service**, Definition of
**1.1.7**
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 11

**Insurance, Boiler and Machinery**
**11.3.2**
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 11.1.2
**Insurance, Loss of Use**
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
10.2.5, **11.3**
Insurance, Stored Materials
9.3.2
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest**
**13.6**
**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13.1, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1.1, 11.3, 13.1.1, 13.4, 13.5.1, 13.5.2,
13.6.1, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3.1, 3.2.2, 3.5, 3.12.10, 3.17, 3.18.1, 4.2.6, 4.2.7,
4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3, 11.1.2,
11.2, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3.1, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5,
11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
**Loss of Use Insurance**
**11.3.3**
Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
**Materials, Hazardous**
10.2.4, **10.3**



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
**User Notes:**                                                                                                                                                                     (1094010923)

Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13.1,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3,**
15.4.1
**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, **7.4**
**MISCELLANEOUS PROVISIONS**
**13**
Modifications, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
10.3.2, 11.3.1
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.3.1, 2.4.1, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4,
12.2.1
Notice
2.2.1, 2.3.1, 2.4.1, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, 9.7,
9.10, 10.2.2, 11.1.3, 12.2.2.1, 13.3, 13.5.1, 13.5.2,
14.1, 14.2, 15.2.8, 15.4.1
Notice, Written
2.3.1, 2.4.1, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7,
9.10, 10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3,** 14,
15.2.8, 15.4.1
Notice of Claims
3.7.4, 10.2.8, **15.1.2,** 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1, 13.5.2,
14.3.1
**OWNER**
**2**
**Owner,** Definition of
**2.1.1**
**Owner, Information and Services Required of the**
2.1.2, **2.2,** 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.3, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3

Owner's Authority
1.5, 2.1.1, 2.3.1, 3.4.2, 3.8.1, 3.12.10, 3.14.2,
4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3,
7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4,
9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2,
12.3.1, 13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
**Owner's Liability Insurance**
**11.2**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.4,** 14.2.2
**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to**
**Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.3**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
**Ownership and Use of Drawings, Specifications**
**and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5,** 2.2.5, 3.2.2, 3.11.1, 3.17,
4.2.12, 5.3.1
**Partial Occupancy or Use**
9.6.6, **9.9,** 11.3.1.5
**Patching, Cutting and**
**3.14,** 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, **9.3,** 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1,
14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, **9.4,** 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7,** 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 12.3.1,
13.7, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Payments, Progress**
9.3, **9.6,** 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**PAYMENTS AND COMPLETION**
**9**
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. **All rights reserved. WARNING:** This AIA   Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA   Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517802658_1 which expires
on 03/06/2014, and is not for resale.
User Notes:                                                                                                                                (1094010923)

**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, 11.4
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, **3.7**, 3.13, 7.3.7.4, 10.2.2
PERSONS AND PROPERTY, PROTECTION OF
10
Polychlorinated Biphenyl
10.3.1
**Product Data,** Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**Project,** Definition of
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.3**
PROTECTION OF PERSONS AND PROPERTY
10
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14,
15.2.8, 15.4
Rejection of Work
3.5, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2,
9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2,
13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field**
**Conditions by Contractor**
**3.2,** 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples
by Contractor
3.12
**Rights and Remedies**
1.1.2, 2.3, 2.4, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1,
6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4,
**13.4,** 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**

Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2,** 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1,** 10.2, 10.4
**Samples,** Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12,** 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2,** 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
**Shop Drawings,** Definition of
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12,** 4.2.7
**Site, Use of**
**3.13,** 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
**Specifications,** Definition of
**1.1.6**
**Specifications**
1.1.1, **1.1.6,** 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
**Subcontractor,** Definition of
**5.1.1**
SUBCONTRACTORS
5
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3,** 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3, 9.8,
9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, **11.3.7**


Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                       (1094010923)

**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 12.2, 13.7
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
**Taxes**
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE
CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 11.4.1.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5

Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 12.2, 13.5, 13.7, 14, 15.1.2, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**
**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7
Weather Delays
15.1.5.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 12.2.2, 12.2.4, **13.3**, 14, 15.4.1
Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                                (1094010923)

### ARTICLE 1    GENERAL PROVISIONS
### § 1.1 BASIC DEFINITIONS
### § 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

### § 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 THE WORK
The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.1.4 THE PROJECT
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

### § 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### § 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### § 1.1.7 INSTRUMENTS OF SERVICE
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

### § 1.1.8 INITIAL DECISION MAKER
The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:** (1094010923)

Init.

**10**

**§ 1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

### § 1.3 CAPITALIZATION
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

### § 1.4 INTERPRETATION
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

### § 1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

**§ 1.5.2** The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

### § 1.6 TRANSMISSION OF DATA IN DIGITAL FORM
If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

### ARTICLE 2   OWNER
### § 2.1 GENERAL
**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### § 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
**§ 2.2.1** Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA   Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA   Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                        (1094010923)

portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.2.3 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 2.2.4 The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

§ 2.3 OWNER'S RIGHT TO STOP THE WORK
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

§ 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

ARTICLE 3   CONTRACTOR
§ 3.1 GENERAL
§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.


Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                                  (1094010923)

**12**

## § 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

**§ 3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

## § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

## § 3.4 LABOR AND MATERIALS

**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                  (1094010923)

**§ 3.4.2** Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

### § 3.5 WARRANTY
The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

### § 3.6 TAXES
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

### § 3.7 PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS
**§ 3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                (1094010923)

### § 3.8 ALLOWANCES

**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,

.1   Allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2   Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

.3   Whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

### § 3.9 SUPERINTENDENT

**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the name and qualifications of a proposed superintendent. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or (2) that the Architect requires additional time to review. Failure of the Architect to reply within the 14 day period shall constitute notice of no reasonable objection.

**§ 3.9.3** The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.

### § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**§ 3.10.2** The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

### § 3.11 DOCUMENTS AND SAMPLES AT THE SITE

The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/00/2014, and is not for resale.
**User Notes:**                                                                                      (1094010923)

**§ 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES**
**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

**§ 3.12.6** By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and


Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**® **Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
**User Notes:**                                                                                                      (1094010923)

16

completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

### § 3.13 USE OF SITE
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

### § 3.14 CUTTING AND PATCHING
§ 3.14.1 The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

§ 3.14.2 The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

### § 3.15 CLEANING UP
§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about the Project.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

### § 3.16 ACCESS TO WORK
The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

### § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

### § 3.18 INDEMNIFICATION
§ 3.18.1 To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section 3.18.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                                    (1094010923)

Init.

**17**

§ 3.18.2 In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4   ARCHITECT
### § 4.1 GENERAL
§ 4.1.1 The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

§ 4.1.3 If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

### § 4.2 ADMINISTRATION OF THE CONTRACT
§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

§ 4.2.2 The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

§ 4.2.3 On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

### § 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION
Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

§ 4.2.5 Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ 4.2.6 The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.


Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                        (1094010923)

§ **4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ **4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

§ **4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

§ **4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

§ **4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

§ **4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

§ **4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ **4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

## ARTICLE 5    SUBCONTRACTORS
### § 5.1 DEFINITIONS
§ **5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

§ **5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.


Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA° Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA° Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                              (1094010923)

**§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK**
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Architect requires additional time for review. Failure of the Owner or Architect to reply within the 14-day period shall constitute notice of no reasonable objection.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

**§ 5.3 SUBCONTRACTUAL RELATIONS**
By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS**
**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that
    .1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and
    .2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

**§ 5.4.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**§ 5.4.3** Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/08/2014, and is not for resale.
User Notes:                (1094010923)

Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

### ARTICLE 6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

§ **6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

§ **6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

§ **6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

§ **6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### § 6.2 MUTUAL RESPONSIBILITY

§ **6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

§ **6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ **6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

§ **6.2.4** The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ **6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

### § 6.3 OWNER'S RIGHT TO CLEAN UP

If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
**User Notes:** (1094010923)

ARTICLE 7   CHANGES IN THE WORK
§ 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

§ 7.2 CHANGE ORDERS
§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:
    .1    The change in the Work;
    .2    The amount of the adjustment, if any, in the Contract Sum; and
    .3    The extent of the adjustment, if any, in the Contract Time.

§ 7.3 CONSTRUCTION CHANGE DIRECTIVES
§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
    .1    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
    .2    Unit prices stated in the Contract Documents or subsequently agreed upon;
    .3    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
    .4    As provided in Section 7.3.7.

§ 7.3.4 If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

§ 7.3.5 Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ 7.3.6 A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

§ 7.3.7 If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:    (1094010923)

for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

.1 Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2 Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3 Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4 Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5 Additional costs of supervision and field office personnel directly attributable to the change.

§ 7.3.8 The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

§ 7.3.9 Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

§ 7.3.10 When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

### § 7.4 MINOR CHANGES IN THE WORK
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.

### ARTICLE 8   TIME
### § 8.1 DEFINITIONS
§ 8.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

§ 8.1.2 The date of commencement of the Work is the date established in the Agreement.

§ 8.1.3 The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

§ 8.1.4 The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### § 8.2 PROGRESS AND COMPLETION
§ 8.2.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance.



AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                    (1094010923)

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

### § 8.3 DELAYS AND EXTENSIONS OF TIME
**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

**§ 8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 15.

**§ 8.3.3** This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

### ARTICLE 9   PAYMENTS AND COMPLETION
### § 9.1 CONTRACT SUM
The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### § 9.2 SCHEDULE OF VALUES
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### § 9.3 APPLICATIONS FOR PAYMENT
**§ 9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2, for completed portions of the Work. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**§ 9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or


Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes: (1094010923)

24

encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

## § 9.4 CERTIFICATES FOR PAYMENT

§ 9.4.1 The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

§ 9.4.2 The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

## § 9.5 DECISIONS TO WITHHOLD CERTIFICATION

§ 9.5.1 The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

 .1 defective Work not remedied;
 .2 third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
 .3 failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
 .4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
 .5 damage to the Owner or a separate contractor;
 .6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
 .7 repeated failure to carry out the Work in accordance with the Contract Documents.

§ 9.5.2 When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

§ 9.5.3 If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.

## § 9.6 PROGRESS PAYMENTS

§ 9.6.1 After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
**User Notes:** (1094010923)

**25**

**§ 9.6.2** The Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**§ 9.7 FAILURE OF PAYMENT**
If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

**§ 9.8 SUBSTANTIAL COMPLETION**
**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.


Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602058_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                              (1094010923)

§ **9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ **9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

## § 9.9 PARTIAL OCCUPANCY OR USE
§ **9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

§ **9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ **9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## § 9.10 FINAL COMPLETION AND FINAL PAYMENT
§ **9.10.1** Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

§ **9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
**User Notes:**                                                                                                                                     (1094010923)

§ **9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

§ **9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
.1    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
.2    failure of the Work to comply with the requirements of the Contract Documents; or
.3    terms of special warranties required by the Contract Documents.

§ **9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10    PROTECTION OF PERSONS AND PROPERTY
### § 10.1 SAFETY PRECAUTIONS AND PROGRAMS
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 SAFETY OF PERSONS AND PROPERTY
§ **10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to
.1    employees on the Work and other persons who may be affected thereby;
.2    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
.3    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ **10.2.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ **10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

§ **10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ **10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                          (1094010923)

28

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

### § 10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY

If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

### § 10.3 HAZARDOUS MATERIALS

**§ 10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**§ 10.3.2** Upon receipt of the Contractor's written notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

**§ 10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.

**§ 10.3.4** The Owner shall not be responsible under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

**§ 10.3.5** The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:08 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes: (1094010923)

**29**

### § 10.4 EMERGENCIES

In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

## ARTICLE 11   INSURANCE AND BONDS
### § 11.1 CONTRACTOR'S LIABILITY INSURANCE

§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1   Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;

.2   Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

.3   Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

.4   Claims for damages insured by usual personal injury liability coverage;

.5   Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

.6   Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

.7   Claims for bodily injury or property damage arising out of completed operations; and

.8   Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

§ 11.1.2 The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the Contract Documents.

§ 11.1.3 Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness.

§ 11.1.4 The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

### § 11.2 OWNER'S LIABILITY INSURANCE

The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.


Init.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                        (1094010923)

**30**

## § 11.3 PROPERTY INSURANCE

§ 11.3.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§ 11.3.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.3.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.3.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.3.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.3.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

## § 11.3.2 BOILER AND MACHINERY INSURANCE

The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

## § 11.3.3 LOSS OF USE INSURANCE

The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

§ 11.3.4 If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

§ 11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/08/2014, and is not for resale.
User Notes:                                                                                                              (1094010923)

property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.3.6 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

§ 11.3.7 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.3.8 A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.3.9 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.3.10 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

§ 11.4 PERFORMANCE BOND AND PAYMENT BOND
§ 11.4.1 The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

§ 11.4.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                                                          (1094010923)

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK
**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK
### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### § 12.2.2 AFTER SUBSTANTIAL COMPLETION
**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                            (1094010923)

### § 12.3 ACCEPTANCE OF NONCONFORMING WORK

If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

### ARTICLE 13    MISCELLANEOUS PROVISIONS
### § 13.1 GOVERNING LAW

The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.

### § 13.2 SUCCESSORS AND ASSIGNS

§ **13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ **13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### § 13.3 WRITTEN NOTICE

Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES

§ **13.4.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ **13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

### § 13.5 TESTS AND INSPECTIONS

§ **13.5.1** Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

§ **13.5.2** If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ **13.5.3** If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by



Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                               (1094010923)

such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**§ 13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**§ 13.5.5** If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**§ 13.5.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

### § 13.6 INTEREST
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

### § 13.7 TIME LIMITS ON CLAIMS
The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.

## ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT
### § 14.1 TERMINATION BY THE CONTRACTOR
**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

    .1    Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;

    .2    An act of government, such as a declaration of national emergency that requires all Work to be stopped;

    .3    Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

    .4    The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, and damages.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.**
User Notes:                                                 (1094010923)

## § 14.2 TERMINATION BY THE OWNER FOR CAUSE

§ 14.2.1 The Owner may terminate the Contract if the Contractor

  .1    repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
  .2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
  .3    repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or
  .4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ 14.2.2 When any of the above reasons exist, the Owner, upon certification by the Initial Decision Maker that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

  .1    Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
  .2    Accept assignment of subcontracts pursuant to Section 5.4; and
  .3    Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ 14.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ 14.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

## § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE

§ 14.3.1 The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ 14.3.2 The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

  .1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or
  .2    that an equitable adjustment is made or denied under another provision of the Contract.

## § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE

§ 14.4.1 The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

§ 14.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall

  .1    cease operations as directed by the Owner in the notice;
  .2    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and
  .3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ 14.4.3 In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/08/2014, and is not for resale.
User Notes:          (1094010923)

Init.

## ARTICLE 15   CLAIMS AND DISPUTES
### § 15.1 CLAIMS
### § 15.1.1 DEFINITION
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

### § 15.1.2 NOTICE OF CLAIMS
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

### § 15.1.3 CONTINUING CONTRACT PERFORMANCE
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

### § 15.1.4 CLAIMS FOR ADDITIONAL COST
If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.5 CLAIMS FOR ADDITIONAL TIME
§ 15.1.5.1 If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

§ 15.1.5.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

### § 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES
The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

    .1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

    .2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

### § 15.2 INITIAL DECISION
§ 15.2.1 Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                      (1094010923)

**§ 15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

**§ 15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

**§ 15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

**§ 15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

**§ 15.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

**§ 15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

**§ 15.3 MEDIATION**
**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes: (1094010923)

§ **15.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

§ **15.4 ARBITRATION**
§ **15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ **15.4.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

§ **15.4.2** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

§ **15.4.3** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ **15.4.4 CONSOLIDATION OR JOINDER**
§ **15.4.4.1** Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

§ **15.4.4.2** Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

§ **15.4.4.3** The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under this Agreement.



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:50:06 on 12/20/2013 under Order No.9517602658_1 which expires on 03/06/2014, and is not for resale.
User Notes:                                                                                                          (1094010923)

# EXHIBIT B

# MAINTENANCE BOND

Bond Number: 018037722 / SU1130031

KNOW ALL MEN BY THESE PRESENTS, that we Metcon, Inc.
763 Comtech Drive, Pembroke, NC 28372

_____, as principal (the "Principal"),
and Liberty Mutual Insurance Company, a Massachusetts stock insurance company, AND Arch Insurance
Company, a Missouri stock company as surety (the "Surety"), are held and firmly bound unto_____
NP 301, LLC c/o North Hospitality Group, Inc. _____, as obligee (the "Obligee"),
in the penal sum of Three Hundred Thousand and 00/100

Dollars ($ 300,000.00          ),
for the payment of which sum well and truly to be made, the Principal and the Surety, bind ourselves, our heirs,
executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal has by written agreement dated December 27, 2013          entered into a contract (the
"Contract") with the Obligee for Drainable Exterior Wall Insulation and Finish System with a Secondary Weather
Resistive Barrier – Springhill Suites, Lumberton, NC
which contract is by reference made a part hereof.

NOW, THEREFORE, the condition of this obligation is such that if the Principal shall remedy without cost to the
Obligee any defect which may develop during a period of  Three (3) years from 09/11/2016 (the date of completion,
acceptance of the work performed under the contract and the end of the one year maintenance period)
 provided such
defects are caused by defective or inferior materials or workmanship, then this obligation shall be null and void;
otherwise, it shall be and remain in full force and effect.
PROVIDED AND SUBJECT TO THE CONDITIONS PRECEDENT:

1. Obligee shall provide both Principal and Surety with written notice of the discovery (Notice of Discovery) of
   any item of defective or inferior materials or workmanship during the covered period (a "Covered Item").
   Should Principal improperly fail to remedy the Covered Item, then Obligee shall make a written demand
   upon the Surety ("Demand") within ninety (90) days of the Obligee's issuance of the Notice of Discovery of
   the Covered Item.

2. The Notice of Discovery and the Demand shall be in writing and via certified mail to the Principal and to
   the Surety.  Notice to the Surety shall be delivered to the attention of the Surety Law Department at the above
   address.

3. No suit or action may be commenced by the Obligee against the Surety after the expiration of one (1) year (or
   such lesser time period as otherwise permitted by relevant law) from the date of Obligee's discovery of
   a Covered Item.  If the provision of this paragraph is void or prohibited by law, the minimum period of
   limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

DATED as of this 10th          day of September          , 20 15    .

WITNESS / ATTEST

_____          Aaron Thomas
                                   (Principal)

                                   By: _____ (Seal)
                                       Name:
                                       Title: President

                                   LIBERTY MUTUAL INSURANCE COMPANY

                                   By: _____ (Seal)
                                       Attorney-in-Fact

                                   ARCH INSURANCE COMPANY
                                   By: _____ (Seal)
                                       Attorney-in-Fact

AIC 0000151058

In Testimony Whereof, the Company has caused this instrument to be signed and its corporate seal to be affixed by their authorized officers, this 21st day of April, 2015.

Attested and Certified

Patrick K. Nails, Secretary

STATE OF PENNSYLVANIA SS

COUNTY OF PHILADELPHIA SS

Arch Insurance Company

David M. Finkelstein, Executive Vice President

I, Helen Szafran, a Notary Public, do hereby certify that Patrick K. Nails and David M. Finkelstein personally known to me to be the same persons whose names are respectively as Secretary and Executive Vice President of the Arch Insurance Company, a Corporation organized and existing under the laws of the State of Missouri, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seal and delivered the said instrument as the free and voluntary act of said corporation and as their own free and voluntary acts for the uses and purposes therein set forth.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
HELEN SZAFRAN, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 3, 2017

Helen Szafran, Notary Public
My commission expires 10/03/2017

CERTIFICATION

I, Patrick K. Nails, Secretary of the Arch Insurance Company, do hereby certify that the attached Power of Attorney dated April 21, 2015 on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said David M. Finkelstein, who executed the Power of Attorney as Executive Vice President, was on the date of execution of the attached Power of Attorney the duly elected Executive Vice President of the Arch Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Arch Insurance Company on this 10th day of September, 2015.

Patrick K. Nails, Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

**PLEASE SEND ALL CLAIM INQUIRIES RELATING TO THIS BOND TO THE FOLLOWING ADDRESS:**

**Arch Insurance – Surety Division
3 Parkway, Suite 1500
Philadelphia, PA 19102**



00ML0013 00 03 03                    Page 2 of 2                    Printed in U.S.A.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
**This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

Certificate No. 6715000

American Fire and Casualty Company
The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That American Fire & Casualty Company and The Ohio Casualty Insurance Company are corporations duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Bobbi D. Pendleton; Camille Smith; Christopher Lydick; Heather Burroughs; Julie McElligott; Kenneth J. Peeples; Kitara A. Smith; Neil Biller; Phoebe C. Honeycutt

all of the city of Durham, state of NC each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 17th day of September, 2014.

American Fire and Casualty Company
The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: [signature]
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA ss
COUNTY OF MONTGOMERY

On this 17th day of September, 2014, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American Fire and Casualty Company, Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at Plymouth Meeting, Pennsylvania, on the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Plymouth Twp., Montgomery County
My Commission Expires March 28, 2017
Member, Pennsylvania Association of Notaries

By: [signature]
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Gregory W. Davenport, the undersigned, Assistant Secretary, of American Fire and Casualty Company, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed the seals of said Companies this 10th day of September, 2015.

By: [signature]
Gregory W. Davenport, Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

# EXHIBIT C



Taylor English Duma LLP 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 taylorenglish.com

Stephen L. Wright
Direct (678) 336-7262
swright@taylorenglish.com

November 15, 2019

VIA E-MAIL AND U.S. MAIL

Christina Craddock, Esq.                    Toby Pilcher, Esq.
Senior Surety Counsel                       Surety Claims Counsel
Liberty Mutual Insurance Company            Liberty Mutual Surety
2055 Sugarloaf Circle, Suite 275            2055 Sugarloaf Circle, Suite 275
Duluth, GA 30097                            Duluth, Georgia 30097
*Christina.Craddock@LibertyMutual.com*      *Toby.Pilcher@LibertyMutual.com*

Re:     **Liberty Mutual claim no. 018037722.0**
        **Bond Nos.: 018037722/SU1130031 - Maintenance Bond**
        **Principal: Metcon, Inc.**
        **Obligee: NP 301, LLC**

Dear Ms. Craddock and Mr. Pilcher:

As you know from letters of February 22, 2019 and May 3, 2019, our client, NP 301, LLC ("Northpoint") has asserted a claim for compensation under the Maintenance Bond for deficiencies in the work of Liberty Mutual's principal, Metcon, Inc., discovered by Northpoint. The deficiencies permitted water to penetrate Northpoint's property, Springhill Suites in Lumberton, NC ("Property") and cause continuing damage.

Liberty Mutual and Metcon, despite having notice of the deficiencies and continuing injury to the Property and opportunity to investigate (see, e.g. my letter to Liberty Mutual dated June 18, 2019 and accompanying documents; inspection of Rooms 127 and 129 on July 16, 2019), did not timely offer a solution. The continuing damage to the Property and Northpoint's obligation to mitigate its injuries compelled it to undertake investigation and then remediation of the damage. To that end, Pinkerton and Laws, Inc. ("P&L") was, as you know from previous correspondence engaged under contract to perform repairs. (See, e.g., my email to you dated July 29, 2019 forwarding photos from the first day of P&L's work showing damage to structural wooden members of the Property discovered that same day.)

P&L's work has continued since July, whereby Liberty Mutual and Metcon's construction consultants and experts, including Ralf Leistikow of Wiss Janney Elstner Assoc., Inc., have inspected the work, most recently on Monday, October 28, 2019. After inspection, neither Liberty

01620939-1

Christina Craddock, Esq.
Toby Pilcher, Esq.
November 15, 2019
Page 2


Mutual nor Metcon have objected to the work of P&L and Northpoint as either excessive in scope, unnecessary or otherwise inappropriate.

P&L has, of course, required payment as condition of its work and submitted payment requests to Northpoint.  The most recent application for payment of P&L, dated October 30, 2019, accompanies this letter.  P&L's application for payment acknowledges previous payments by Northpoint of the total amount of $483,413 which Northpoint can also independently confirm. The total payments exceed the penal amount of the Bond of $300,000 (see attached copy). Accordingly, Northpoint hereby demands immediate payment as provided by the Bond in the amount of $300,000.

Upon payment in  full of the penal amount of the Bond as demanded, Northpoint will, of course, be willing to execute an acceptable release and waiver of claims under the Bond in favor of Liberty Mutual and its co-surety, Arch Insurance Co.  We look forward to Liberty Mutual's payment of the amounts owed Northpoint pursuant to the Bond.  Please contact me to arrange for payment to Northpoint and the execution of a release and waiver.

Please also feel free to contact me should you have any questions.

Sincerely,

**TAYLOR ENGLISH DUMA LLP**

By: _____
       Stephen L. Wright, Esq.
       Attorney for NP 301, LLC

Encl.

cc w/encl., via e-mail:
       Ed Stelling, Esq.
       Jay Wilkerson, Esq.

01620939-1

## Application and Certification for Payment

| TO OWNER: | NP301, LLC | PROJECT: | SpringHill Suites Exterior Repair | APPLICATION NO: | 4015-04 |
|---|---|---|---|---|---|
| | 3405 Piedmont Road NE | | 5128 Fayetteville Road | PERIOD TO: | 10/31/19 |
| | Atlanta GA 30305 | | Lumberton NC 28360 | CONTRACT FOR: | Repairs |
| | Attn: Jay Patel | | | CONTRACT DATE: | July 2, 2019 |

| FROM CONTRACTOR: | | VIA ARCHITECT: | | | |
|---|---|---|---|---|---|
| | Pinkerton & Laws Construction of Atlanta Inc | | | PROJECT NOS: | #77-4015-19 |
| | 1165 Northchase Pkwy #100 | | | | |
| | Marietta GA 30067 (770.956.9000 George) | | | | |

### CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract. Continuation Sheet is attached.

| | | | |
|---|---|---|---|
| 1. ORIGINAL CONTRACT SUM | | $ | 958,000 |
| 2. NET CHANGE BY CHANGE ORDERS | | $ | 33,663 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) | | $ | 991,663 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on Continuation Sheet) | | $ | 626,163 |
| 5. RETAINAGE: | | | |
|   a.   0   % of Completed Work | $ | - | |
|     (Column D + E on Continuation Sheet) | | | |
|   b.      % of Stored Material | $ | - | |
|     (Column F on Continuation Sheet) | | | |
|   Total Retainage (Lines 5a + 5b or Total in Column I of Continuation Sheet) | | $ | - |
| 6. TOTAL EARNED LESS RETAINAGE | | $ | 626,163 |
|   (Line 4 Less Line 5 Total) | | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | | | |
|   (Line 6 from prior Certificate) | | $ | 483,413 |
| 8. CURRENT PAYMENT DUE | | $ | 142,750 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | | |
|   (Line 3 less Line 6) | | $ | 365,500 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved | | |
| in previous months by Owner | $ 33,663 | $ - |
| Total approved this Month | $ - | $ - |
| TOTALS | $ 33,663 | $ - |
| NET CHANGES by Change Order | $ | 33,663 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:    **Pinkerton & Laws Construction of Atlanta Inc**

By: -                     Date:   10/30/19

State of:    **GEORGIA**

County of:    **COBB**

Subscribed and sworn to before me this      day of   October-19

Notary Public

My Commission expires:

### ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

**AMOUNT CERTIFIED**      $ *142,750.00*

(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)

ARCHITECT:   *Director, Design & Construction*

By:                     Date: *10.30.19*

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

# PINKERTON & LAWS CONSTRUCTION OF ATLANTA, INC.

SUPPORTING SCHEDULE TO APPLICATION FOR PAYMENT

| PROJECT: | SpringHill Suites Exterior Repair, Lumberton NC | | | APPLICATION NO.: | 4015-04 |
|---|---|---|---|---|---|
| PROJ #: | 77-4015-19 | | | APPLICATION DATE: | 10/30/19 |
| | | | | PERIOD TO: | 10/31/19 |

| A | B | C | D | E | F | G | % | H |
|---|---|---|---|---|---|---|---|---|
| | | | Work Completed | | Materials Presently Stored (Not in D or E) | Total Completed and Stored to Date (D+E+F) | | |
| Item No. | Description of Work | Scheduled Value | From Prev Applications | This Period | | | (G/C) | Balance to Finish (C-G) |
| 110 | Preconstruction and Mobilization | 15,000 | 15,000 | 0 | | 15,000 | 100% | 0 |
| 120 | General Conditions | 70,000 | 42,000 | 17,500 | | 59,500 | 85% | 10,500 |
| 130 | Insurance | 15,000 | 15,000 | 0 | | 15,000 | 100% | 0 |
| 140 | Remove & Re-Install PTACs | 7,000 | 2,310 | 1,190 | | 3,500 | 50% | 3,500 |
| 150 | Demolition - Windows & Sheathing | 52,000 | 21,840 | 9,360 | | 31,200 | 60% | 20,800 |
| 160 | Rough Carpentry | 117,000 | 40,950 | 23,400 | | 64,350 | 55% | 52,650 |
| 170 | Insulation | 38,000 | 13,300 | 7,600 | | 20,900 | 55% | 17,100 |
| 180 | Install Windows | 9,000 | 2,700 | 2,250 | | 4,950 | 55% | 4,050 |
| 190 | Demolition - EIFS | 90,000 | 40,500 | 13,500 | | 54,000 | 60% | 36,000 |
| 200 | EIFS | 460,000 | 216,200 | 55,200 | | 271,400 | 59% | 188,600 |
| 210 | OH/P | 85,000 | 39,950 | 12,750 | | 52,700 | 62% | 32,300 |
| | ORIGINAL CONTRACT | 958,000 | 449,750 | 142,750 | 0 | 592,500 | 62% | 365,500 |
| 310 | Change Order# 4015-01 | 33,663 | 33,663 | 0 | | 33,663 | 100% | 0 |
| | CHANGE ORDER - TOTAL | 33,663 | 33,663 | 0 | 0 | 33,663 | | 0 |
| | CURRENT CONTRACT | 991,663 | 483,413 | 142,750 | 0 | 626,163 | 63% | 365,500 |

STATE OF GEORGIA
COUNTY OF COBB

Job# 77401519
SHS Lumberton NC

## CONTRACTOR'S AFFIDAVIT
## AND
## LIEN WAIVER

The undersigned **PINKERTON & LAWS CONSTRUCTION OF ATLANTA, INC.** is a contractor in connection with the construction of improvements on the real property (the "Property") **SPRINGHILL SUITES EXTERIOR REPAIR, LUMBERTON NC** and does hereby represent, warrant and agree:

1.    That the value of the undersigned's work in place or materials supplied, as the case may be, is not less than **$626,163** as shown on the draw request for payment attached hereto.

2.    That the undersigned acknowledges receipt funding of **$483,413** on its contract with **NP301, LCC**.

3.    That all rental and lease purchase agreements entered into by the undersigned in connection with services or materials supplied to the Property through **October 31, 2019** have been paid in full or will be paid with the proceeds of this and previous month's draw.

4.    That all laborers, subcontractors, suppliers and materialmen who have furnished labor, services and material to the Property through **October 31, 2019** have been paid and satisfied in full with exception of some retainage or will be paid and satisfied in full with exception of some retainage from the proceeds of this and previous month's draw; and that no such materialmen, subcontractors, mechanics or laborers have any claim of lien against the Property; and that to the undersigned's knowledge there are no outstanding or pending claims arising out of the performance of the contract; and that the undersigned has paid or will pay when due, all Federal, State and other payroll deductions and contributions.

5.    That upon receipt of payment of this draw, the undersigned waives and releases any and all lien and claim or right to lien which the undersigned might have as of the date hereof with respect to the Property and any improvements located thereon.

6.    This affidavit is given to induce the payment of Request No. **4015-04 (10/31/19)** in the amount of **$142,750**.

This 30th day of October, 2019.

PINKERTON & LAWS
CONSTRUCTION OF ATLANTA, INC.

Helena Koo Prieto
CFO

Notary Public

My Commission Expires:

D HILL
NOTARY
EXPIRES
GEORGIA
JAN 6, 2023
PUBLIC
PAULDING COUNTY