# EXHIBIT 11



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

**Mike Neubert**
Associate Superintendent, CSU Claims

January 21, 2021

*Via Certified U.S. Mail, Return Receipt Requested*
*Tracking No. 9414814902506449169956*

G&D Construction Group, Inc.
c/o George Puha
1582 Azalea Dr.
Lawrenceville, Georgia 30043

      Re:    *NP 301 LLC v. Metcon, Inc.*
                Superior Court of Fulton County, Georgia
                C.A. No. 2020-CV-336620
                American Arbitration Association
                AAA Arbitration No. 01-20-0005-4463

                Insured: G&D Construction Group, Inc.
                Claim No.: 3672008
                Policy No.: CSU0069555

                                                      **RESERVATION OF RIGHTS**

Dear Mr. Puha:

        The Cincinnati Specialty Underwriters Insurance Company ("CSU") is in receipt of the Complaint for Damages for Breach of Contract (the "Complaint") filed on February 26, 2020, in the lawsuit *NP 301, LLC v. Metcon, Inc.,* in the Superior Court of Fulton County, State of Georgia, Civil Action No. 2020CV336620 (the "Lawsuit") and related claims asserted in an arbitration proceeding before the American Arbitration Association, No. 01-20-0005-4463 ("Arbritation"). Defendant Metcon, Inc. ("Metcon") has sent a letter dated December 31, 2020, seeking a defense and indemnity to Plaintiff NP 301, LLC's claims ("NP 301") because such claims allegedly arise from construction work G&D Construction Group, Inc. ("G&D") performed under a contract with Metcon. G&D is the Named Insured on a policy of insurance issued by CSU, Policy No. CSU0069555, including in pertinent part commercial general liability coverage (the "Policy"). <u>You are listed as the registered agent for service of process for G&D, but if you are not the correct person to receive this correspondence, please immediately advise me who is the correct person</u>.

After review of the allegations and claims in the Lawsuit, Arbitration, and Metcon's correspondence of December 31, 2020 (the "Tender"), CSU has determined that the Policy may provide coverage to G&D with respect to such claims and allegations. The purpose of this correspondence is to advise G&D that CSU will investigate the claims and allegations asserted in the Lawsuit, subject to a full and complete reservation of rights under the Policy. By this correspondence, CSU advises G&D of the potentially applicable terms, conditions, and exclusions in the Policy, based on the information currently known by CSU, that may serve to limit or preclude coverage under the Policy. CSU fully and completely reserves its rights under the Policy to deny coverage for the claims or damages in the Lawsuit and Arbitration if it becomes apparent upon further investigation that such claims or damages are not covered under the Policy.

If G&D objects to CSU's reservation of rights set forth in this correspondence or believes that CSU has misstated any material fact or policy term stated below, please contact me immediately and CSU will give due consideration to such concerns or issues. <u>If G&D receives or has received any legal paperwork, pleadings, documents, summonses, complaints, or other legal paperwork pertaining to the Lawsuit, Arbitration, NP 301, or Metcon, please forward such documentation to my attention</u>. CSU acknowledges that by accepting this reservation of rights, G&D does not waive any rights it may have under the Policy or under Georgia law. G&D may consult independent legal counsel with respect to this reservation of rights.

## ALLEGATIONS IN THE COMPLAINT, ARBITRATION AND TENDER

Please note that while it is necessary to review the allegations set forth in the Complaint, Arbitration, and Tender as they relate to coverage under the Policy, by so doing, CSU does not wish to express or imply that the allegations made against G&D have merit or are true.

This matter begins with the Complaint filed by NP 301 on May 28, 2020, in the Lawsuit. It is alleged that NP 301 contracted with Metcon on January 6, 2014, to construct the SpringHill Suites Hotel in Lumberton, NC (the "Hotel"). At a date uncertain, Metcon supposedly performed repair work at the Hotel. Metcon also allegedly provided a maintenance bond, executed on September 11, 2016, to provide three years of maintenance for the exterior insulation and finish system ("EIFS") at the Project. NP 301 contends that it obtained an expert report, dated December 2018 and February 2019, that there has been further damage to the interiors after that September 11, 2016, date, including a hidden envelope problem, issues with the EIFS, and water damage in the Hotel. The expert report attached to the Complaint indicates that there was mold and water damage to the interior of the Hotel arising from construction defects in the flashing to the windows, roofing, waterproof envelope, and EIFs. Based on further statements provided by NP 301's expert, there is extensive mold growth and water intrusion throughout the Hotel. The expert contends that the EIFs must be demolished and redone because it is leaking at the expansion joints, flashing, and corners at the Hotel.

In the Complaint, NP 301 contends that Metcon did not perform in accordance with the bond and, as such, NP 301 arranged with a different contractor to perform the repairs. Based on these factual allegations, NP 301 asserts a claim for Breach of Contract in Count One against Metcon. NP 301 specifically contends that Metcon was required to construct the Hotel in compliance with the contract documents and to repair and remedy defects, but failed to do so. NP 301 seeks $2,204,725.68 in damages, including damages to furniture, fixtures, and equipment.

NP 301 also asserts a claim for Attorneys' Fees and Expenses under O.C.G.A. § 13-6-11 in Count Two of the Complaint.

Subsequently, on September 15, 2020, the Lawsuit was stayed so that NP 301 and Metcon could address the construction defect issues concerning the Hotel in Arbitration. As part of that Arbitration, NP 301 provided a Notice of Defects, which identified supposed defects in the EIFS installation, window installation, PTAC units, and Ice Machines.

On December 31, 2020, Metcon sent the Tender to CSU, seeking a defense and indemnity to NP 301's claims and allegations in the Lawsuit and Arbitration. Metcon contends that the alleged construction defects asserted by NP 301 include, among other issues, improperly installed EIFS. It claims that G&D performed the EIFS work at the Hotel and represents that it has sent a Demand for Joinder and Notice of Arbitration to G&D because G&D is, according to Metcon, contractually obliged to arbitrate such disputes. With the Tender, Metcon included what is purported to be part of the subcontract with G&D, dated February 26, 2014, and June 2, 2014, that requires G&D to defend and indemnify Metcon for the claims and allegations in the Lawsuit and Arbitration. It represents that there is a mediation planned in the Arbitration for January 25, 2021.

If G&D has received a copy of Metcon's Demand for Joinder or Notice of Arbitration, G&D should immediately forward these documents to CSU.

## REFERENCE TO THE POLICY

As stated above, the Policy Number is CSU0069555, including in relevant part commercial general liability coverage. There are two policy terms implicated by the claims and allegations of NP 301 and Metcon: term period April 22, 2015, to April 22, 2016; and term period April 22, 2016, until December 9, 2016.

Excerpts of certain pertinent and potentially applicable Policy provisions identified by CSU, based on the information currently known regarding the claims and allegations at issue, are provided in **Appendix A** included with this letter. The positions set forth in this letter are based on all of the provisions of the Policy, and not only on the excerpts cited in Appendix A. Nothing in this letter is intended to modify the terms of the Policy. To the extent cited portions of the Policy differ in any manner from the actual language of the Policy, the Policy language shall control. Further, inclusion of selected provisions of the Policy does not in any way limit or waive CSU's right to rely on additional terms.

## RESERVATION OF RIGHTS

Without waiving additional coverage defenses that may become evident during the course of investigating the allegations and claims set forth in the Lawsuit and Arbitration, CSU contends that the Policy may not provide coverage to G&D for some or all of the claims asserted in the Complaint, Arbitration, or Tender for the reasons provided below:

(a)  Some or all of the damages sought by NP 301 may not constitute or arise out of "property damage", "bodily injury", "personal and advertising injury", or any other covered damage as defined in the Policy and/or Georgia law.

(b)      The Policy provides liability insurance coverage for damages because of "property damage" only if the "property damage" is caused by an "occurrence" as that term is defined in the Policy, and the "property damage" occurs during the Policy period.

(c)      The Policy does not provide liability insurance coverage for "property damage" which is expected or intended from the standpoint of G&D, but this exclusion does not apply to "property damage" resulting from the use of reasonable force to protect persons or property.

(d)      The Policy does not provide liability insurance coverage for "property damage" for which G&D is obligated to pay damages by reason of the assumption of liability in a contract or agreement; however, this exclusion does not apply to liability for damages that G&D would have in the absence of the contract or agreement; or assumed in a contract or agreement that is an "insured contract", provided the "property damage" occurs subsequent to the execution of the contract or agreement.

(e)      The Policy does not provide liability insurance coverage for "property damage" to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it; but this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

(f)      The Policy does not provide liability insurance coverage for "property damage" to "your product", arising out of it and any part of it.

(g)      The Policy does not provide liability insurance coverage for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard", but this exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(h)      The Policy does not provide liability insurance coverage for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. However, this exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(i)      The Policy does not provide liability insurance coverage for "property damage" that occurred prior to the effective date of the Policy, is alleged to be in the process of occurring as of the effective date of the Policy, or is in the process of settlement, adjustment or "suit". This exclusion applies to all continuing injury or damage arising from the same or similar cause, including continuous or repeated exposure to substantially the same general harmful conditions; or at the same or adjacent location; or from the same or similar work; or from the same product or service.

(j) The Policy does not provide liability insurance coverage for "property damage" arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract, but this exclusion does not apply to liability for damages that an insured would have in the absence of the contract.

(k) The Policy does not provide liability insurance coverage for "property damage" arising out of operations or completed operations performed for you by any independent contractors or subcontractors unless you meet all conditions set forth in the Endorsement titled **Independent Contractors Limitations of Coverage**.

(l) The Policy does not provide liability insurance coverage for "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened: inhalation of; ingestion of; contact with; absorption of; exposure to; existence of; or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage. However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(m) The Policy does not provide liability insurance coverage for any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage. However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(n) The Policy does not provide liability insurance coverage for any liability with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with: the existence of "fungi" or bacteria; the prevention of "fungi" or bacteria; the remediation of "fungi" or bacteria; any operation described in Reservation (m) above; "your product"; or "your work" regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage. However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(o) The Policy does not provide liability insurance coverage for any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Reservations (l), (m), or (n) above regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage. However,

    this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(p) The Policy does not provide liability insurance coverage for "property damage" that occurred between April 22, 2015, and April 22, 2016, arising out of, caused by, or attributable to, whether in whole or in part, the design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system.

(q) The Policy does not provide liability insurance coverage for "property damage" that occurred between April 22, 2015, and April 22, 2016, that arises out of, caused by, or attributable to, whether in whole or in part "your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

(r) The Policy does not provide liability insurance coverage for "property damage" that occurred between April 22, 2016, and December 9, 2016, that is caused directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indirectly, in whole or in part, by the "wall finish system" as set forth in Endorsement **Exclusion – Exterior Insulation and Finish Systems ("EIFS") And Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form With Specific Exceptions**. But this exclusion does not apply if:

  (1) The "wall finish system" is a "drainable or water managed system"; and

  (2) The substrate that forms a part of the "wall finish system", or to which the "wall finish system" is attached, is non-combustible, such as gypsum sheathing, or is one of the following types of construction:

    (i) Non-combustible construction meaning structures where the exterior walls and the floors are constructed of, and supported by, metal, gypsum or other non- combustible materials; or

    (ii) Masonry non-combustible construction meaning structures where the exterior walls are constructed of masonry materials such as adobe, brick, concrete, gypsum block, hollow concrete block, stone, tile or similar materials, with the floors and roof being metal or other non- combustible materials; or

    (iii) Modified fire resistive or fire resistive construction meaning structures where the exterior walls and the floors and roof are

    constructed of masonry or fire resistive materials having a fire resistance rating of one hour or more; and

   (3) The structure on which the "wall finish system" is installed is not intended for "residential" occupancy.

(s) The Policy does not provide liability insurance coverage if it is determined that G&D has breached a term or condition for coverage under the Policy, including but not limited to, failing to: (1) provide notice as soon as practicable to CSU of an "occurrence" which may result in a claim; (2) see to it that CSU receives prompt written notice of any claim; (3) immediately send to CSU copies of any demands, notices, summons, or legal papers that G&D received in connection with the claim; and/or (4) cooperate with CSU in the investigation or settlement of the claim.

(t) The Policy does not provide liability insurance coverage for any insured who admits to liability, consents to judgment, or settles any claims or "suit" without CSU's prior written consent.

  Based on the allegations in the Complaint, Arbitration, and Tender, the Policy may provide indemnity coverage to G&D for the allegations and claims that NP 301 and Metcon assert. Accordingly, CSU will investigate the claims and allegations with respect to the Lawsuit and Arbitration, subject to a full and complete reservation of rights. However, please be advised that further investigation of the claims may reveal information or documentation demonstrating that the Policy does not provide coverage, or that coverage is limited, for some or all of the claims and damages alleged in the Lawsuit or Arbitration.

  Specifically, CSU directs your attention to the following relevant provision of your Policy which may serve to limit or exclude coverage entirely for the claims or damages that Metcon and NP 301 seek with respect to your work. For the effective Policy term of April 22, 2015 through April 22, 2016, the Policy contains the endorsement titled, **Exclusion-Exterior Insulation and Finish Systems**, which excludes coverage for "property damage" arising out of, caused by, or attributable to, in whole or in part, of EIFS. Metcon contends that G&D's defective work was the application of EIFS and, thus, the endorsement would exclude coverage for "property damage" arising from G&D's work on the Hotel, to the extent such damage occurred between April 22, 2015, and April 22, 2016.

  In addition, the Policy contains the endorsement titled, **Exclusion-Exterior Insulation and Finish Systems ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form with Specified Exceptions**, which is applicable to "property damage" that occurred between April 22, 2016, and December 9, 2016. This Endorsement excludes coverage for "property damage" arising from dry-rot of or water-related or moisture-related entry into the structure on which the EIFS or "wall finish systems" has been installed unless such EIFS or "water finish system" has been constructed as specified in the Endorsement. The investigation of the claims and allegations in the Lawsuit and Arbitration may reveal that the construction does not comply with the requirements of the Endorsement, thereby precluding coverage for the damages sought with respect to G&D's work.

Finally, the Policy also contains the endorsement titled **Exclusion-Fungi or Bacteria**. This endorsement excludes liability coverage for "property damage" arising from "fungi" and bacteria. Based on the investigation of the Lawsuit and Arbitration, it appears that NP 301 contends that the water penetration from the defective construction of the EIFS at the Hotel has caused extensive property damage due to mold, a type of fungi, for which repairs are necessary. The "property damage" due to this mold will be excluded under the Endorsement from coverage under the Policy.

Nonetheless, as set forth above, CSU, by its representatives, will investigate the claims and allegations in the Arbitration and Lawsuit with respect to G&D's work at the Hotel, subject to a full and complete reservation of rights to contest at a later date any assertion that the insurance coverage provided by the Policy is applicable to the allegations or claims in the Arbitration or Lawsuit, to deny liabilities under the Policy, to deny any obligation to defend, indemnify, and/or otherwise refuse to pay any judgment which may be rendered against G&D in the future.

Though this letter references several potential bases on which coverage may be precluded or limited, this letter is not intended to limit or restrict CSU from later relying upon or asserting other facts, grounds, and/or Policy provisions that are or may be applicable as that information becomes known to CSU. CSU specifically does not waive or relinquish any rights or defenses available to it under the Policy and reserves the right to amend or modify its coverage position. CSU reserves the right to seek settlement contribution from G&D and the right to require G&D to obtain an allocation of damages between covered and non-covered allegations in any future settlement, litigation, or as a result of any judgment. CSU reserves the right to file a declaratory relief action seeking the court's determination as to coverage under the Policy.

Please advise us if you believe anything set forth in this letter is in error.  CSU is open to any further information that G&D wishes to provide and will consider any facts or information submitted to CSU. It is expressly understood that any action undertaken by CSU in investigating, attempting to adjust, or any future defense of the claims and allegations set forth in the Arbitration and Complaint shall not be construed as a waiver of its rights to deny coverage under the Policy. CSU acknowledges that G&D may consult independent legal counsel with respect to this reservation of rights and does not waive any rights it has under the Policy or Georgia law.

If you have any questions about this matter or would like a copy of the Policy, please contact me. I will be happy to respond to any request for additional information concerning CSU's reservation of rights.

Sincerely,

*mike neubert*

Mike Neubert, AIC, AIM, SCLA

Cc: Kevin Panter Insurance