# EXHIBIT 15



100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948

Tel: 770.818.0000

**www.fmglaw.com**

**Alexia Ruffner Roney**
**Senior Counsel**
_____

Direct Line
770.818.1290
_____

aroney@fmglaw.com

March 13, 2023

_**VIA EMAIL:  Info@gdconstructiongroup.com**_
_**& VIA CERTIFIED US MAIL – RETURN RECEIPT REQUESTED**_
_**ARTICLE NO.: 7020 0090 0000 0376 9078**_

G&D Construction Group, Inc.
c/o George Puha
1582 Azalea Dr.
Lawrenceville, Georgia 30043

> Re:   _Metcon, Inc. v. G& D Construction Group, Inc._
> Superior Court of Gwinnett County, Georgia
> C.A. No. 21-A-00102-3
>
> _NP 301, LLC v. Metcon, Inc._
> Superior Court of Fulton County, Georgia
> C.A. No. 2020-CV-336620
>
> American Arbitration Association
> AAA Arbitration No. 01-20-0005-4463
>
> **Insured: G&D Construction Group, Inc.**
> **Claim No.**: 3672008
> **Policy Nos.**: CSU0069555 & CSU0069556

**THE THIRD SUPPLEMENT TO**
**THE RESERVATION OF RIGHTS**

Dear Mr. Puha:

As you may recall, this firm has been retained by The Cincinnati Specialty Underwriters Insurance Company ("CSU") with respect to several related legal actions arising from the



George Puha
March 13, 2023
Page 2

construction of the SpringHill Suites Hotel in Lumberton, NC (the "Hotel"). In these actions, it has been alleged that the exterior installation and finish systems ("EIFS") work performed by G&D Construction Group, Inc. ("G&D") on the Hotel was defective. G&D is the Named Insured on a policy of insurance issued by CSU, Policy No. CSU0069555, including in pertinent part commercial general liability and excess liability coverage (the "Policy"). <u>Please read this letter in full, as it contains important information related to the defense of G&D to the multiple legal proceedings arising out of the allegedly defective work performed at the Hotel.</u>

     The legal actions are as follows. The owner of the Hotel, NP 301, LLC ("NP 301") filed a lawsuit, *NP 301, LLC v. Metcon, Inc.*, in the Superior Court of Fulton County, Georgia, Civil Action No. 2020-CV-336620, and pursued related arbitration proceeding, AAA Arbitration No. 01-20-0005-4463, against the general contractor, Metcon, Inc., ("Metcon") for the alleged defective construction of the Hotel. (Collectively the "Underlying Lawsuit"). Among the construction defects alleged, NP 301 contended that the EIFs at the Hotel had been improperly installed, causing water intrusion and damage. In turn, Metcon sued G&D separately for the alleged EIFs construction defects at the Hotel: Metcon filed a Complaint ("Complaint") in the lawsuit, *Metcon, Inc. v. G & D Construction Group, Inc*., in the Superior Court of Gwinnett County, State of Georgia, Civil Action No. 21-A-00102-3 (the "Lawsuit"). The Underlying Lawsuit, including the arbitration, has been resolved and dismissed, but Metcon has continued the Lawsuit, alleging that G&D improperly installed the EIFS at the Hotel.

     After review of the allegations and claims in the Underlying Lawsuit and Lawsuit, CSU has determined that the Policy may provide coverage to G&D with respect to such claims and allegations. As you are aware, CSU is providing G&D a defense against the claims and allegations asserted in the Lawsuit and Underlying Lawsuit, subject to a full and complete reservations of rights. This agreement has been set forth in several prior letters sent to G&D: the original reservation of rights, dated January 22, 2021; a supplement to the reservation of rights, dated February 11, 2021; and a second supplement to the reservation of rights, dated March 9, 2021. CSU will continue to provide a defense to G&D against the claims and allegations asserted in the Lawsuit and Underlying Lawsuit, subject to this supplement to the full and complete reservation of rights under the Policy. But, CSU advises G&D that it has an ongoing duty to comply the terms and conditions in the Policy, including G&D's duty to cooperate CSU and the counsel it is providing to defend G&D.

     In each of its prior letters, CSU specifically reserved the right to withdraw its defense and disclaim indemnity if it was determined that G&D failed to fulfill conditions precedent for coverage under the Policy, including G&D's duty to cooperate with CSU in the defense of Lawsuit and Underlying Lawsuit.[1] In addition, CSU has previously sent G&D a letter dated April 5, 2021, advising G&D of its need to cooperate with the defense of the claims asserted by Metcon in the Lawsuit. Copies of this prior correspondence are included in this letter.

---

[1] CSU expressly does not waive other reservations it has asserted in the letters of January 22, 2021, February 11, 2021, and March 9, 2021.



George Puha
March 13, 2023
Page 3

      As you are aware, CSU assigned the law firm Goodman McGuffey LLP to represent G&D with respect to the Lawsuit and Underlying Lawsuit. At this time, Goodman McGuffey attorney Adam C. Joffe is handling the defense of G&D and has attempted to arrange several appointments with you to discuss the defense the Lawsuit, but you have not appeared at these appointments. <u>As we have advised you previously, G&D must cooperate with defense counsel with respect to the investigation and defense of the claims against G&D arising out of its work on the Hotel. Failure to do so could imperil coverage under the Policy.</u>

      CSU fully and completely reserves its rights under the Policy to deny coverage for the claims or damages in the Lawsuit and Underlying Lawsuit if it becomes apparent upon further investigation and litigation that such claims or damages are not covered under the Policy. CSU also specifically reserves its rights to seek a declaratory judgment as to its rights and obligations to G&D under the Policy based upon G&D's failure to cooperate or any other applicable policy term, provision, exclusion or condition. If G&D objects to CSU's reservation of rights set forth in this correspondence or believes that CSU has misstated any material fact or policy term stated below, please contact me immediately and CSU will give due consideration to such concerns or issues. CSU acknowledges that by accepting this reservation of rights, G&D does not waive any rights it may have under the Policy or under Georgia law. G&D may consult independent legal counsel with respect to this reservation of rights.

<u>ALLEGATIONS IN THE COMPLAINT</u>

      Please note that while it is necessary to review the allegations set forth in the Complaint as they relate to coverage under the Policy, by so doing, CSU does not wish to express or imply that the allegations made against G&D have merit or are true.

      The Lawsuit arises out of separate litigation between NP 301, the owner of the Hotel, and Metcon, the general contractor, in *NP 301, LLC v. Metcon, Inc.,* pending in the Superior Court of Fulton County, State of Georgia, Civil Action No. 2020CV336620  and related claims asserted in an arbitration proceeding before the American Arbitration Association, No. 01-20-0005-4463 ("Underlying Lawsuit"). As the claims pursued by Metcon against G&D in the Lawsuit involve the claims and allegations in the Underlying Lawsuit, this separate matter will be addressed below first.

      In the Underlying Lawsuit, NP 301 allegedly contracted with Metcon on January 6, 2014, to construct the Hotel. At a date uncertain, Metcon also supposedly performed repair work at the Hotel and provided a maintenance bond, executed on September 11, 2016, to provide three years of maintenance for EIFS at the Hotel. NP 301 contends that expert reports show damage after the September 11th date, including issues with the EIFS. Specifically, NP 301 alleges that there was mold and water damage to the interior of the Hotel arising from construction defects in the flashing to the windows, roofing, waterproof envelope, and EIFS. NP 301 seeks $2,204,725.68 in damages arising from the alleged construction defects. Subsequently, the Lawsuit was stayed so that NP 301 and Metcon could address the construction defect issues concerning the Hotel in arbitration.



George Puha
March 13, 2023
Page 4

On December 31, 2020, Metcon sent correspondence to CSU, seeking a defense and indemnification to NP 301's claims and allegations in the Underlying Lawsuit based on a subcontract (the "Subcontract") with G&D. Shortly thereafter Metcon filed the Complaint against G&D on January 7, 2021, in the Lawsuit with respect to work G&D allegedly performed on the Hotel. Specifically, Metcon contends that it was the general contractor on the Hotel based on a contract with NP 301. Metcon alleges that it entered the Subcontract with G&D to perform construction services at the Hotel, including the installation of the EIFS, and paid sums to G&D until G&D suspended work at the Hotel. Metcon contends that, after the Hotel was completed, NP 301 alleged that the EIFS was improperly installed at the Hotel, resulting in water intrusion and damage outside the scope of G&D's work, including sheathing, framing, and other building components. In the Complaint, Metcon alleges that NP 301 filed the Underlying Lawsuit against Metcon, seeking 2.2 million dollars and attorneys' fees and expenses and the matter is currently stayed pending arbitration.

Based on these allegations, Metcon brings Count I – Breach of Written Contract against G&D. Metcon contends that G&D agreed to warrant its work through the Subcontract and otherwise that such work would be of good quality, without material defect, and performed according to all relevant terms and general conditions and all applicable codes and industry standards. Metcon also alleges that G&D agreed as follows in the Subcontract: (1) to indemnify Metcon and its agents and employees from and against all claims, damages, loss and expenses, including attorneys' fees, arising out of or resulting from the performance of G&D's work; (2) to submit any controversy arising out of the Subcontract or the Hotel to arbitration; (3) to maintain comprehensive general liability insurance that could not be cancelled or not renewed without thirty days prior written notice to Metcon; and (4) to list Metcon as an additional insured under the relevant commercial general liability policy that covered G&D for the Hotel.

Continuing with Count I, Metcon contends that G&D has breached the Subcontract in the following ways. First, the improper installation of the EIFS, as alleged by NP 301, represents a breach of the Subcontract by G&D. Second, G&D allegedly failed to participate in the Arbitration after notice and demand, causing Metcon damage, including attorneys' fees and expenses in attempting to compel compliance. Third, G&D allegedly failed to indemnify Metcon. Fourth, G&D allegedly failed to maintain appropriate insurance as required by the Subcontract. Metcon contends that G&D must indemnify Metcon or provide contribution for any liability that may be adjudicated against Metcon and in favor of NP 301.

Metcon brings Count II – Breach of Warranties against Defendant G&D, contending that G&D agreed through the Subcontract or otherwise to provide warranties, both express and implied, concerning the work performed on the Hotel. If the Hotel has been damaged, as NP 301 alleges, Metcon contends that G&D breached its warranties. As a consequence, Metcon contends that G&D must indemnify Metcon or provide contribution for any liability that may be adjudicated against Metcon and in favor of NP 301.



George Puha
March 13, 2023
Page 5

Metcon brings Count III – Negligence, contending that G&D had a duty to properly perform its scope of work in compliance with the Subcontract, plans, specifications, industrial standards, and/or building codes, and the applicable standard of care. If Metcon is liable to NP 301, Metcon claims that such liability is due to G&D's breach of its duties. Thus, Metcon seeks actual, consequential, and special damages, including the costs of defending the Underlying Lawsuit, due to G&D's negligence. Metcon contends that G&D must indemnify Metcon or provide contribution for any liability that may be adjudicated against Metcon in favor of NP 301.

In Count IV – Common Law and Contractual Indemnity, Metcon contends that any damage sustained by NP 301 was the result of the acts, omissions, negligence, breach of contract, and/or breaches of warranty by G&D, while Metcon was without fault. A special relationship allegedly exists between Metcon and G&D under Georgia law and the Subcontract. Thus, Metcon contends that G&D must indemnify Metcon or provide contribution for any liability that may be adjudicated against Metcon in favor of NP 301.

Metcon brings Count V – Breach of Implied Contract, contending that G&D bid and/or submitted a proposal to perform certain work, including the EIFS, at the Hotel. It is further alleged that Metcon accepted the proposal, G&D performed the work, and G&D received payment. This allegedly constitutes an implied contract with Metcon, which G&D breached. Thus, Metcon contends that G&D must indemnify it or provide contribution for any liability that may be adjudicated against Metcon in favor of NP 301.

As relief, Metcon seeks compensatory damages, attorneys' fees, expenses and costs of litigation, an order requiring G&D to join arbitration immediately, consent to consolidate this Lawsuit with the Underlying Lawsuit, and any further relief the court deems equitable.

During the subsequent investigation into the claims, allegations, and damages asserted by Metcon in the Lawsuit, several letters have come to CSU's attention. First, in a letter dated August 25, 2015, Metcon claimed that G&D had installed the EIFs system incorrectly and out of compliance with the relevant subcontract. Metcon demanded that G&D remedy the defects. In a second letter dated October 11, 2017, Metcon demanded a defense and indemnification from G&D due to water penetration and mold damage at the Hotel due to G&D's defective EIFs work. Finally, in a letter dated October 30, 2020, Metcon advised G&D of the Underlying Lawsuit, which included allegations that the EIFs at the Hotel was defectively constructed. CSU did not receive notification of the alleged defective EIFs construction at the Hotel or the Underlying Lawsuit until it received a letter from Metcon on December 31, 2020.

## REFERENCE TO THE POLICY

As stated above, the Policy Numbers are CSU0069555 and CSU0069556, including in relevant part commercial general liability and commercial excess liability coverage. These are the policies implicated by the claims and allegations of NP 301 and Metcon:

(1) Policy No. CSU0069555. Term Period - April 22, 2015, to April 22, 2016.



George Puha
March 13, 2023
Page 6

(2) Policy No. CSU0069556. Term Period – April 22, 2015, to April 22, 2016.
(3) Policy No. CSU0069555. Term Period - April 22, 2016, to December 9, 2016
(4) Policy No. CSU0069556. Term Period – April 22, 2016, to December 9, 2016.

Excerpts of certain pertinent and potentially applicable Policy provisions identified by CSU, based on the information currently known regarding the claims and allegations at issue, are provided in **Appendix A** included with this letter. The positions set forth in this letter are based on all of the provisions of the Policy, and not only on the excerpts cited in Appendix A. Nothing in this letter is intended to modify the terms of the Policy. To the extent cited portions of the Policy differ in any manner from the actual language of the Policy, the Policy language shall control. Further, inclusion of selected provisions of the Policy does not in any way limit or waive CSU's right to rely on additional terms.

### RESERVATION OF RIGHTS

Without waiving additional coverage defenses that may become evident during the course of investigating and defending the allegations and claims set forth in the Lawsuit and Underlying Lawsuit, CSU contends that the Policy may not provide coverage to G&D for some or all of the claims asserted with respect to the Hotel construction for the reasons provided below:

(a)     Some or all of the damages sought by Metcon and/or NP 301 may not constitute or arise out of "property damage", "bodily injury", "personal and advertising injury", or any other covered damage as defined in the Policy and/or Georgia law.

(b)     The Policy provides liability insurance coverage for damages because of "property damage" only if the "property damage" is caused by an "occurrence" as that term is defined in the Policy, and the "property damage" occurs during the Policy period.

(c)     The Policy does not provide liability insurance coverage for "property damage" which is expected or intended from the standpoint of G&D, but this exclusion does not apply to "property damage" resulting from the use of reasonable force to protect persons or property.

(d)     The Policy does not provide commercial general liability insurance coverage for "property damage" for which G&D is obligated to pay damages by reason of the assumption of liability in a contract or agreement; however, this exclusion does not apply to liability for damages that G&D would have in the absence of the contract or agreement; or assumed in a contract or agreement that is an "insured contract", provided the "property damage" occurs subsequent to the execution of the contract or agreement.

(e)     The Policy does not provide commercial excess liability coverage for any liability for which any insured is obligated to pay damages by reason of the assumption of



George Puha
March 13, 2023
Page 7

liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

(f)     The Policy does not provide liability insurance coverage for "property damage" to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it; but this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

(g)     The Policy does not provide liability insurance coverage for "property damage" to "your product", arising out of it and any part of it.

(h)     The Policy does not provide liability insurance coverage for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard", but this exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(i)     The Policy does not provide liability insurance coverage for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. However, this exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(j)     The Policy does not provide liability insurance coverage for "property damage" that occurred prior to the effective date of the Policy, is alleged to be in the process of occurring as of the effective date of the Policy, or is in the process of settlement, adjustment or "suit". This exclusion applies to all continuing injury or damage arising from the same or similar cause, including continuous or repeated exposure to substantially the same general harmful conditions; or at the same or adjacent location; or from the same or similar work; or from the same product or service.

(k)     The Policy does not provide liability insurance coverage for "property damage" arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract, but this exclusion does not apply to liability for damages that an insured would have in the absence of the contract.

(l)     The Policy does not provide liability insurance coverage for "property damage" unless such damage arises out of the operations which are classified and shown in



George Puha
March 13, 2023
Page 8

the Commercial General Liability Coverage Part Declarations classification section.

(m)     The Policy does not provide liability insurance coverage for "property damage" arising out of operations or completed operations performed for you by any independent contractors or subcontractors unless you meet all conditions set forth in the Endorsement titled **Independent Contractors Limitations of Coverage**.

(n)     The Policy does not provide liability insurance coverage for "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened: inhalation of; ingestion of; contact with; absorption of; exposure to; existence of; or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage. However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(o)     The Policy does not provide liability insurance coverage for any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage. However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(p)     The Policy does not provide liability insurance coverage for any liability with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with: the existence of "fungi" or bacteria; the prevention of "fungi" or bacteria; the remediation of "fungi" or bacteria; any operation described in Reservation (o) above; "your product"; or "your work" regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage. However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(q)     The Policy does not provide liability insurance coverage for any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Reservations (n), (o), or (p) above regardless of any other cause, event, material, product and/or building component that contributed



George Puha
March 13, 2023
Page 9

concurrently or in any sequence to the injury or damage. However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in a good or product intended for human ingestion.

(r)     The Policy does not provide liability insurance coverage for "property damage" that occurred between April 22, 2015, and April 22, 2016, arising out of, caused by, or attributable to, whether in whole or in part, the design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system.

(s)     The Policy does not provide liability insurance coverage for "property damage" that occurred between April 22, 2015, and April 22, 2016, that arises out of, caused by, or attributable to, whether in whole or in part "your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

(t)     The Policy does not provide general commercial liability insurance coverage for "property damage" that occurred between April 22, 2016, and December 9, 2016, that is caused directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indirectly, in whole or in part, by the "wall finish system" unless such "wall finish system" meets the requirements set forth in the Endorsement **Exclusion – Exterior Insulation and Finish Systems ("EIFS") And Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form With Specific Exceptions.**

(u)     The Policy does not provide commercial excess liability coverage for any liability as set forth in the endorsement **Exclusion – Exterior Insulation and Finish Systems ("EIFS") And Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form** except for the time period May 16, 2016, to December 9, 2016.

(v)     The Policy does not provide commercial excess liability coverage for punitive or exemplary damages; the multiplied portion of multiplied damages; any amount for which an insured is not financially liable; or any award that is uninsurable under the law governing this Policy



George Puha
March 13, 2023
Page 10

(w)     The Policy does not provide liability insurance coverage if it is determined that G&D has breached a term or condition for coverage under the Policy, including but not limited to, failing to: (1) provide notice as soon as practicable to CSU of an "occurrence" which may result in a claim; (2) see to it that CSU receives prompt written notice of any claim; (3) immediately send to CSU copies of any demands, notices, summons, or legal papers that G&D received in connection with the claim; and/or (4) cooperate with CSU in the investigation or settlement of the claim.

(x)     The Policy does not provide liability insurance coverage for any insured who admits to liability, consents to judgment, or settles any claims or "suit" without CSU's prior written consent.

Based on the allegations in the Complaint, Lawsuit, and Underlying Lawsuit, the Policy may provide indemnity coverage to G&D for the allegations and claims that NP 301 and Metcon asserted in the Underlying Lawsuit and that Metcon asserts in the pending Lawsuit. Accordingly, CSU will investigate and defend G&D against the claims and allegations asserted in the Lawsuit and Underlying, subject to a full and complete reservation of rights. However, please be advised that further investigation or defense of the claims may reveal information or documentation demonstrating that the Policy does not provide coverage, or that coverage is limited, for some or all of the claims and damages alleged in the Lawsuit and Underlying Lawsuit.

Specifically, CSU directs your attention to the following relevant provisions of your Policy which may serve to limit or exclude coverage entirely for the claims or damages that Metcon seeks with respect to your work.

Under **Section IV – Commercial General Liability Conditions** of the **Commercial General Liability Coverage Form**, G&D "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim" as set forth in subparagraph **a.** of **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**. Also, under subparagraph **b.**, G&D " must: (1) [i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim…." Based on correspondence, G&D was aware that Metcon contended the EIFs work G&D performed at the Hotel was defective in August of 2015. G&D received a demand from Metcon on October 11, 2017, seeking a defense and indemnification for alleged damage from water penetration and mold at the Hotel due in part to G&D's EIFs work. Yet, G&D does not appear to have complied with the condition precedent to notify CSU of Metcon's claim of October 11, 2017, or send a copy of Metcon's demand letter to CSU. Similarly, G&D did not immediately send a copy of the October 30, 2020, letter to CSU even though it alerted G&D that a lawsuit had been filed implicating G&D's work. CSU learned of the Underlying Lawsuit from Metcon on December 31, 2020.

For there to be coverage under the Policy, G&D is required to comply with the provisions of the Policy to provide CSU notice. It does not appear that G&D provided the required notice and has fulfilled a condition precedent to coverage under the Policy. <u>As such, CSU reserves the right</u>



George Puha
March 13, 2023
Page 11

to file a declaratory judgment action to withdraw the defense of G&D in the Lawsuit and to disclaim coverage under the Policy for the claims and allegations arising out of G&D's alleged defective EIFs work at the Hotel.

In addition, under subparagraph **c.** of **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**, G&D "must: … **(2)** [a]uthorize us to obtain records and other information;" and "**(3)** [c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit'". The **Commercial Excess Liability Coverage Form** also imposes the same requirements to cooperate on G&D as set forth in **Section III – Conditions**, Paragraph **3. Duties in the Event of an Event, Claim or Suit**, as modified by the Endorsement titled, **Georgia Changes**. On April 5, 2021, CSU explicitly advised you that you must cooperate with assigned defense counsel, including returning telephone calls, responding to emails, and otherwise assist assigned counsel for several weeks. In the Second Supplement to the Reservation of Rights, dated March 9, 2021, CSU stated,

> Accordingly, as a condition of coverage under the Policy, G&D must cooperate with CSU and assigned counsel, including remaining in contact, timely responding, locating evidence or documentation related to the Hotel, and other items that may be needed to defend the Lawsuit and/or the Underlying Lawsuit. The Commercial Excess Liability Coverage Form also imposes the same requirements to cooperate on G&D as set forth in **Section III – Conditions,** Paragraph **3. Duties in the Event of an Event, Claim or Suit,** as modified by the Endorsement titled, **Georgia Changes.** Failure to comply with the duty to cooperate with CSU could result in withdrawal and disclaimer of coverage under the Policy.

We have recently learned that you have failed to attend several appointments with defense counsel, and this will be considered a failure of the condition precedent under the Policy to cooperate with the defense of the Lawsuit. As such, CSU reserves the right to file a declaratory judgment action to withdraw its defense of G&D in the Lawsuit and disclaim coverage under the Policy for claims and allegations arising out of G&D's alleged defective work at the Hotel.

CSU further directs you to other terms and conditions that may limit or exclude coverage for the claims and damages that Metcon seeks arising out of your allegedly defective EIFs work at the Hotel.

First, for the effective Policy term of April 22, 2015, through April 22, 2016, the Policy contains the endorsement titled, **Exclusion-Exterior Insulation and Finish Systems**, which excludes coverage for "property damage" arising out of, caused by, or attributable to, in whole or in part, EIFS. Metcon contends that G&D's defective work was the installation of EIFS and, thus, the endorsement would exclude coverage for "property damage" arising from G&D's work on the



George Puha
March 13, 2023
Page 12

Hotel, to the extent such damage occurred between April 22, 2015, and April 22, 2016. Based on the allegations in the Complaint, this endorsement could exclude coverage for most or all sums that may be awarded against G&D in the Complaint and Lawsuit.

Second, the Policy contains the endorsement titled, **Exclusion-Exterior Insulation and Finish Systems ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form with Specified Exceptions**, which is applicable to "property damage" that occurred between April 22, 2016, and December 9, 2016. This Endorsement excludes coverage for "property damage" arising from dry-rot of or water-related or moisture-related entry into the structure on which the EIFS or "wall finish system" has been installed unless such EIFS or "wall finish system" has been constructed as specified in the Endorsement. The litigation of the claims and allegations in the Lawsuit may reveal that the construction does not comply with the requirements of the Endorsement, thereby precluding commercial general liability coverage for the damages sought with respect to G&D's work. This means that G&D may not have any insurance coverage for damages that are awarded to Metcon or NP 301 arising out of G&D's work on the Hotel.

Third, the Policy includes commercial excess liability coverage for the term period of April 22, 2015, to April 22, 2016, and April 22, 2016, to December 9, 2016. However, **the Commercial Excess Liability Coverage Form** is modified by the endorsement **Exclusion – Exterior Insulation And Finish Systems ("EIFS") And Direct-Applied Exterior Finish Systems ("DEFS") – Broad Form**, which excludes coverage for liability arising out of EIFS and DEFS. This Exclusion was in effect for the entirety of the first term, April 22, 2015, to April 22, 2016, and during the second term, April 22, 2016, until it was removed from the excess policy on May 16, 2016. Thus, to the extent that there may be coverage under the commercial general liability coverage for the term period of April 22, 2016, through May 16, 2016, there may be no further coverage under the Commercial Excess Liability Coverage Form for the damages awarded to NP 301 and Metcon arising out of G&D's work on the Hotel

Finally, the Policy contains the endorsement titled **Exclusion-Fungi or Bacteria**. This endorsement excludes liability coverage for "property damage" arising from "fungi" and bacteria. It appears that NP 301 contends that the water penetration from the defective construction of the EIFS at the Hotel has caused extensive property damage due to mold, a type of fungi, for which repairs are necessary. The "property damage" due to this mold will be excluded under the Endorsement from coverage under the Policy.

Though this letter references several potential bases on which coverage may be precluded or limited, this letter is not intended to limit or restrict CSU from later relying upon or asserting other facts, grounds, and/or Policy provisions that are or may be applicable as that information becomes known to CSU. CSU specifically does not waive or relinquish any rights or defenses available to it under the Policy and reserves the right to amend or modify its coverage position. CSU reserves the right to seek settlement contribution from G&D and the right to require G&D to obtain an allocation of damages between covered and non-covered allegations in any future



George Puha
March 13, 2023
Page 13

settlement, litigation, or as a result of any judgment. CSU reserves the right to file a declaratory relief action seeking the court's determination as to coverage under the Policy.

Nonetheless, CSU, by its representatives, will continue defend G&D from the claims and allegations in the Lawsuit with respect to G&D's work at the Hotel, subject to this full and complete reservation of rights to contest at a later date any assertion that the insurance coverage provided by the Policy is applicable to the allegations or claims arising from the construction of the Hotel, to deny liabilities under the Policy, to deny any obligation to defend, indemnify, and/or otherwise refuse to pay any judgment which may be rendered against G&D in the future. By issuing this Third Supplement to the Reservation of Rights, CSU does not waive any reservation or defense previously raised in the prior Reservations of Rights.

CSU is open to any further information that G&D wishes to provide and will consider any facts or information submitted to CSU. It is expressly understood that any action undertaken by CSU in investigating, attempting to adjust, or defense of the claims and allegations set forth in the Complaint, Lawsuit, and Underlying Lawsuit shall not be construed as a waiver of its rights to deny coverage under the Policy. CSU acknowledges that G&D may consult independent legal counsel with respect to this reservation of rights and does not waive any rights it has under the Policy or Georgia law.

If you have any questions about this matter or would like a copy of the Policy, please contact me. I will be happy to respond to any request for additional information concerning CSU's reservation of rights.

Sincerely,

Alexia R. Roney

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

# <u>APPENDIX A</u>

\*\*\*

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 04 13**

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\*\*\*

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

    \*\*\*

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

\*\*\*

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**  That the insured would have in the absence of the contract or agreement; or

**(2)**  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**  Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*\*\*

**j.  Damage To Property**

"Property damage" to:

\*\*\*

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\*\*\*

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*\*\*

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

***

## SECTION V – DEFINITIONS

***

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL GENERAL LIABILITY**
**CSGA401 02 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES TO COMMERCIAL GENERAL LIABILITY COVERAGE FORM

***

## EXCLUSION - PRIOR INJURY OR DAMAGE

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage**:

This insurance does not apply to any "bodily injury" or "property damage" that:

**1.** first occurred prior to the Effective date of this Coverage Part;

**2.** is alleged to be in the process of occurring as of the Effective date of this Coverage Part; or

**3.** is in the process of settlement, adjustment or "suit".

This exclusion applies to all continuing injury or damage:

**1.** arising from the same or similar cause, including continuous or repeated exposure to substantially the same general harmful conditions; or

**2.** at the same or adjacent location; or

**3.** from the same or similar work; or

**4.** from the same product or service.

***

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL GENERAL LIABILITY**
**CSGA 402 05 16**

# CONTRACTORS - CHANGES TO COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

\*\*\*

**EXCLUSION - BREACH OF CONTRACT**

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage A Bodily Injury And Property Damage Liability:**

This insurance does not apply to any claim for "bodily injury" or "property damage" arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract. This exclusion does not apply to liability for damages that an insured would have in the absence of the contract.

\*\*\*

**LIMITATION OF COVERAGE TO SCHEDULED CLASSIFICATIONS ONLY**

This insurance applies only to "bodily injury", "property damage", or "personal and advertising injury" arising out of the operations which are classified and shown in the Commercial General Liability Coverage Part Declarations classification section.

\*\*\*

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

COMMERCIAL GENERAL LIABILITY
CSGA 416 04 08

\*\*\*

# INDEPENDENT CONTRACTORS LIMITATIONS OF COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.  Section IV - Commercial General Liability Conditions** is amended to include the following language:

As a condition to and for coverage to be pro- vided by this policy, you must do all of the following:

**1.** Obtain a formal written contract with all independent contractors and subcontractors in force at the time of the injury or damage verifying valid Commercial General Liability Insurance written on an "occurrence" basis with Limits of Liability of at least:

   **a.** $1,000,000 each "occurrence";

   **b.** $2,000,000 general aggregate, per project basis; and

   **c.** $2,000,000 Products-Completed Operations aggregate.

**2.** Obtain a formal written contract stating the independent contractors and sub- contractors have agreed to defend, indemnify and hold you harmless from any and all liability, loss, actions, costs, including attorney fees for any claim or lawsuit presented, arising from the negligent or intentional acts, errors or omissions of any independent contractor and subcontractor.

**3.** Verify in the contract that your independent contractors and subcontractors have named you as an additional insured on their Commercial General Liability Policy for damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of or caused by any operations and completed operations of any independent contractor or subcontractor. Coverage provided to you by any independent contractor or subcontractor must be primary and must be provided by endorsement CG 20 10 (7/04 edition) and CG 20 37 (7/04 edition), or their equivalent. Completed operations coverage must be maintained for a minimum of two years after the completion of the formal written contract.

**This insurance will not apply to any loss, claim or "suit" for any liability or any damages arising out of operations or completed operations performed for you by any independent contractors or subcontractors unless all of the above conditions have been met.**

\*\*\*

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS[1]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions Section**:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

---

[1] This is the endorsement in effect for Policy Term May 22, 2015, through May 22, 2016. It was not effect with the subsequent Term, May 22, 2016, until December 9, 2016.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

COMMERCIAL GENERAL LIABILITY
CSGA 343 03 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS[2]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverages, Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverages, Coverage B - Personal And Advertising Injury Liability**:

   **a.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part, any of the following:

   **(1)** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

   **(2)** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a structure to which a "wall finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

   **b.** This exclusion also applies to any "bodily injury", "property damage" or "personal and advertising injury":

   **(1)** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an "insured contract";

   **(2)** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

---

[2] This Endorsement was effective during the Term in May 22, 2016, through December 9, 2016.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

    **(3)** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warning or instructions with regard to a "wall finish system".

  **c.** Exclusions **a.** and **b.** above apply only if the injury or damage is caused, directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indirectly, in whole or in part, by the "wall finish system."

  **d.** Exclusions **a.** and **b.** above do not apply if all three of the following conditions are met:

    **(1)** The "wall finish system" is a "drainable or water managed system"; and

    **(2)** The substrate that forms a part of the "wall finish system", or to which the "wall finish system" is attached, is non-combustible, such as gypsum sheathing, or is one of the following types of construction:

      **(a)** Non-combustible construction meaning structures where the exterior walls and the floors are constructed of, and supported by, metal, gypsum or other non-combustible materials; or

      **(b)** Masonry non-combustible construction meaning structures where the exterior walls are constructed of masonry materials such as adobe, brick, concrete, gypsum block, hollow concrete block, stone, tile or similar materials, with the floors and roof being metal or other non- combustible materials; or

      **(c)** Modified fire resistive or fire resistive construction meaning structures where the exterior walls and the floors and roof are constructed of masonry or fire resistive materials having a fire resistance rating of one hour or more; and

    **(3)** The structure on which the "wall finish system" is installed is not intended for "residential" occupancy.

**e.** If this insurance would otherwise not apply to injury or damage as a result of the application of Paragraphs **1.a. – c.** above, however this insurance does apply after the application of Paragraph **1.d.** above:

    **(1)** Our obligation to pay damages on your behalf applies only to the amount of damages which are in excess of a deductible amount of $5,000 for each "occurrence". Our limits of insurance will not be reduced by the application of such deductible amount. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

    **(2) Section IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** applies to each claim or "suit" irrespective of the amount.

**2. Section V - Definitions** is amended to include the following:

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

**(1)** A rigid or semi-rigid substrate;

**(2)** The adhesive and / or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

**(3)** A reinforced or unreinforced base coat or mesh;

**(4)** A finish coat providing surface texture to which color may be added; and

**(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose; that interact to form an energy efficient wall.

**b.** "Drainable or water managed system" means a "wall finish system":

**(1)** With a secondary weather-resistant barrier that protects the substrate; and

**(2)** That includes a drainage feature that is specifically designed to channel water to the outside of the "wall finish system".

**c.** "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

**(1)** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

**(2)** The adhesive and / or mechanical fasteners used to attach the insulation board to the substrate;

**(3)** A reinforced or unreinforced base coat or mesh;

**(4)** A finish coat providing surface texture to which color may be added; and

**(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose; that interact to form an energy efficient wall.

**d.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom, or mildew and mycotoxins, spores, scents or byproducts produced or released by fungi.

**e.** "Residential" means:

**(1)** A structure where 15% or more of the structure's square foot area is used, or is intended, for the purpose of human habitation and includes, but is not limited to, single-family housing, multi-family housing, apartments, condominiums, townhouses, and similar structures intended for human habitation; and

**(2)** Common areas and appurtenant structures of those structures listed in Paragraph **2.e.(1)** above.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

"Residential" does not include:

**(1)** Hospitals or prisons; and

**(2)** Military housing, dormitories, long-term care facilities, hotels or motels, provided there is no individual ownership of units.

**f.** "Wall finish system" means:

**(1)** An "exterior insulation and finish system";

**(2)** A "direct-applied exterior finish system"; or

**(3)** Any energy efficient exterior cladding or finish system substantially similar to Paragraph **f.(1)** or **f.(2)** above.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL GENERAL LIABILITY**
**CSGA 361 06 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - FUNGI OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury", "property damage" or "personal and advertising injury" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

**(1)** Inhalation of;

**(2)** Ingestion of;

**(3)** Contact with;

**(4)** Absorption of;

**(5)** Exposure to;

**(6)** Existence of; or

**(7)** Presence of,

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

    **c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

        **(1)** The existence of "fungi" or bacteria;

        **(2)** The prevention of "fungi" or bacteria;

        **(3)** The remediation of "fungi" or bacteria;

        **(4)** Any operation described in Paragraph A.2. b. above;

        **(5)** "Your product"; or

        **(6)** "Your work"; or

    **d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **A.2. a., b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However, this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**C.** For the purposes of this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

"Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL GENERAL LIABILITY**
**CSGA 439 11 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT CONDITION

This endorsement modifies insurance provided under the following:

COMMERICAL GENERAL LIABILITY COVERAGE FORM

The following is added to Paragraph **2., Duties In The Event Of Occurrence, Offense, Claim Or Suit** of **Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**e**. No insured will admit to any liability, consent to any judgment, or settle any claim or "suit" without our prior written consent.

\*\*\*

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

## CANCELLATION CREDIT

***

| Date of Cancellation: 12/09/2016 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE. | Signature of authorized representative or countersignature, where applicable: |
|---|---|

***

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

# COMMERCIAL EXCESS LIABILITY COVERAGE PART DECLARATIONS[3]

Attached to and forming part of POLICY NUMBER: CSU0069556          Effective Date: 04/22/2015

Named Insured: G&D Construction Group Inc.

| Commercial Excess Liability Coverage Limits of Insurance: | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| Aggregate Limit | $1,000,000 |

\*\*\*

# COMMERCIAL EXCESS LIABILITY SCHEDULE OF CONTROLLING UNDERLYING INSURANCE

Attached to and forming part of POLICY NUMBER: CSU0069556          Effective date: 04/22/2015

Named Insured: G&D Construction Group Inc.

| | | | |
|---|---|---|---|
| **General Liability** | **Company:** The Cincinnati Specialty Underwriters Insurance Company | | |
| | **Policy Number:** CSU0069555 | | |
| | **Policy Period:** 04-22-2015 To 04-22-2016 | | |
| | **Limits Of Insurance:** | | |
| | **Each Occurrence** | $1,000,000 | |
| | **Personal And Advertising Injury** | $1,000,000 | Any one person or organization |
| | **Products-Completed Operations Aggregate** | $2,000,000 | |
| | **General Aggregate** | $2,000,000 | |

\*\*\*

---

[3] Unless otherwise stated, the provisions between term April 22, 2015, to April 22, 2016, and April 22, 2016, to December 9, 2017, are the same.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

# COMMERCIAL EXCESS LIABILITY
# SCHEDULE OF CONTROLLING UNDERLYING INSURANCE

**Attached to and forming part of POLICY NUMBER:** CSU0069556    **Effective date:** 04/22/2016

**Named Insured:** G&D Construction Group Inc.

| General Liability | **Company:** The Cincinnati Specialty Underwriters Insurance Company | | |
|---|---|---|---|
| | **Policy Number:** CSU0069555 | | |
| | **Policy Period:** 04-22-2016 To 04-22-2017 | | |
| | **Limits Of Insurance:** | | |
| | **Each Occurrence** | $1,000,000 | |
| | **Personal And Advertising Injury** | $1,000,000 | Any one person or organization |
| | **Products-Completed Operations Aggregate** | $2,000,000 | |
| | **General Aggregate** | $2,000,000 | |

\*\*\*

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL EXCESS LIABILITY**
**CSCX 100 02 13**

# COMMERCIAL EXCESS LIABILITY COVERAGE FORM

***

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

## SECTION I - COVERAGES

**1. Insuring Agreement**

    **a.** We will pay on behalf of the insured, except as stated in this Coverage Part, those sums in excess of the "retained limit" any insured becomes legally obligated to pay as damages to which insurance provided under this Coverage Part applies.

***

    **d.** If the "controlling underlying insurance" requires, for a particular claim, that the injury or damages occur during its policy period in order for that coverage to apply, then this insurance will only apply to that injury or damages if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular damage takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that damage takes place during the policy period of this Coverage Part.

**2. Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. The exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

Insurance provided under this Coverage Part does not apply to:

***

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

### f. Fines, Penalties, Punitive, Exemplary, Multiplied or Uninsurable Damages

**(1)** Civil or criminal fines or penalties imposed by law;

**(2)** Punitive or exemplary damages;

**(3)** The multiplied portion of multiplied damages;

**(4)** Any amount for which an insured is not financially liable; or

**(5)** Any award that is uninsurable under the law governing this policy,

\*\*\*

## SECTION III - CONDITIONS

\*\*\*

### 3. Duties in the Event of an Event, Claim or Suit

**a.** You must see to it that we are notified in writing as soon as practicable of an "event" which may result in a claim under this insurance.

**b.** If a claim is made or suit is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or suit and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

**c.** You and any other insured involved must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of damages to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, admit to any liability, consent to any judgment, settle any claim or suit, assume any obligation, or incur any expense, other than for first aid, without our consent.

\*\*\*

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL EXCESS LIABILITY**
**CX 01 19 09 08**

# GEORGIA CHANGES

\*\*\*

**A.** Paragraph **3.a.** of **Duties In The Event Of An Event, Claim Or Suit** Provisions of **Section III - Conditions** is replaced by the following:

**a.** In the event of an "event", claim or suit, we or our representative must receive prompt notice of the "event". Include:

**(1)** How, when and where the "event" occurred;

**(2)** The insured's name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

The requirement for giving notice of a claim, if not satisfied by the insured within 30 days of the date of the "event", may be satisfied by an injured third party who, as the result of such "event", has a claim against the insured. However, in this event, notice of a claim given by an injured third party must be mailed to us.

\*\*\*

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL EXCESS LIABILITY**
**CSCX 394 06 09**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM

**\*\*\***

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverages:**

Insurance provided by this Coverage Part does not apply to any liability that arises out of, is caused by, or is attributable to, whether in whole or in part, any of the following:

**a.** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

**b.** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or structure to which a "wall finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

This exclusion also applies to any liability:

**a.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an insured contract;

**b.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

**c.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warning or instructions with regard to a "wall finish system".

**2.** The DEFINITIONS Section is amended to include the following:

**a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

**(1)** A rigid or semi-rigid substrate;

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

   **(2)** The adhesive and / or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

   **(3)** A reinforced or unreinforced base coat or mesh;

   **(4)** A finish coat providing surface texture to which color may be added; and

   **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

that interact to form an energy efficient wall.

**b.** "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

   **(1)** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

   **(2)** The adhesive and / or mechanical fasteners used to attach the insulation board to the substrate;

   **(3)** A reinforced or unreinforced base coat or mesh;

   **(4)** A finish coat providing surface texture to which color may be added; and

   **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

that interact to form an energy efficient wall.

**c.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom, or mildew and mycotoxins, spores, scents or byproducts produced or released by fungi.

**d.** "Wall finish system" means:

   **(1)** An "exterior insulation and finish system";

   **(2)** A "direct-applied exterior finish system"; or

   **(3)** Any energy efficient exterior cladding or finish system substantially similar to Paragraph **(1)** or **(2)** above.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

**COMMERCIAL EXCESS LIABILITY**
**CSCX 327 06 09**

# CONTRACTUAL LIABILITY EXCLUSION

**\*\*\***

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverages:**

Insurance provided by this Coverage Part does not apply to:

**1.** Any liability for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**\*\*\***

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

# POLICY CHANGE ENDORSEMENT[4]

Attached to and forming part of POLICY NUMBER: **CSU0069556**          Policy Change Endorsement Number: **1**

**NAMED INSURED AND MAILING ADDRESS:**

G&D Construction Group Inc.
**Refer to Named Insured Schedule CSIA 409**
PO BOX 490817
LAWRENCEVILLE GA 30049

\*\*\*

**Effective Date of Policy Change:** 05/16/2016 | Signature of authorized representative or countersignature, where applicable:

\*\*\*

| TYPE OF CHANGE | COVERAGE | DESCRIPTION |
| --- | --- | --- |
| **Delete** | **Forms** | **Exclusion – EIFS and DEFS – Broad Form, CSCX394** |

\*\*\*

---

[4] This policy change endorsement is in effect on May 16, 2016, during the second Policy Term, April 22, 2016, to December 9, 2017.

Insured: G&D Construction, Inc.
Insurer: Cincinnati Specialty Underwriters Insurance Company
Policy: CSU0069555 & CSU0069556
Claim No.: 3672008

# CANCELLATION CREDIT

\*\*\*

| Date of Cancellation: 12/09/2016 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE. | Signature of authorized representative or countersignature, where applicable: |
|---|---|