## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LYNDA RENAY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION NO: |
| v. | ) _____ |
| | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES LLC, | ) **JURY TRIAL DEMANDED** |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## **COMPLAINT**

PLAINTIFF LYNDA RENAY files this Complaint and states as follows:

1. Plaintiff is a non-binary individual. In 2019, after years of struggle, Plaintiff made the decision to change her gender marker from F to X.

2. As part of the transition, Plaintiff also made the decision to change her name. Although she made the change with trepidation, she believed that changing her name was necessary to becoming her authentic self.

3. Plaintiff took the appropriate and necessary steps to change her name, including obtaining a sealed order from a county judge and making the necessary changes with other governmental entities. The "Big Three" credit bureaus were

notified of Plaintiff's official name change, and Experian and Trans Union gave Plaintiff no problems and changed her name almost immediately.

4. But Equifax refused to change Plaintiff's name and remove her former name. Plaintiff notified Equifax numerous times of her name change, submitted multiple disputes along with legal documentation proving her name change, and submitted disputes through the Consumer Financial Protection Bureau.

5. Equifax's refusal to remove Plaintiff's inaccurate former name from her consumer report has caused Plaintiff significant damage. Because the name on Plaintiff's credit applications does not match the name on Equifax's consumer reports, prospective creditors have viewed her credit applications as potentially fraudulent and/or involving identity theft.

6. Because of Equifax's actions and inaction, Plaintiff brings this action against Defendant for multiple violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Equifax is headquarted in this division and district, it regularly conducts business in this

district and division, and a substantial part of the events giving rise to the claims occurred in this district and division.

9. Equifax has contracted to supply services or things in Georgia. It sells consumer reports in Georgia and produces consumer reports on Georgia residents. It also gathers and maintains substantial public records data from Georgia.

## PARTIES

10. Ms. Renay is a resident of Oregon. She is a natural person and a "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

11. Equifax is a Georgia limited liability company.

12. Equifax is a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f), and it has a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309-2402.

## FACTUAL ALLEGATIONS

### *Equifax and the Credit-Related Problems Encountered by Transgender and Non-Binary Consumers*

13. Transgender and non-binary consumers encounter a multitude of credit report challenges when they undergo name changes, which can have severe repercussions on their financial and personal well-being.

14. Equifax is aware of numerous consumers whose credit reports fragmented into separate disconnected files after changing their names.

15. Equifax is aware of consumers who have found that their name changes and subsequent credit activity are not accurately reflected in their credit reports.

16. As a result, as Equifax is aware that many individuals have seen their credit scores plummet by hundreds of points, impeding their ability to access essential services such as banking, mortgages, auto financing, employment opportunity, and rental housing.

17. Equifax is aware of the issues transgender and nonbinary consumers face when they change names.

18. On March 31, 2021, Equifax announced that it had implemented procedures to allow transgender and non-binary consumers to change their legal names on their credit reports. ([https://www.equifax.com/newsroom/all-news/-/story/changing-your-name-not-your-credit-score-helping-transgender-and-non-binary-people-with-name-changes-and-credit-reports/](https://www.equifax.com/newsroom/all-news/-/story/changing-your-name-not-your-credit-score-helping-transgender-and-non-binary-people-with-name-changes-and-credit-reports/))

19. In its announcement, Equifax acknowledged the difficulties faced by an external speaker whose credit score dropped significantly when he changed his full name as part of his transition.

20. Equifax stated that two of its employees, Chase Nicholson and Gabriel Charvat, "engaged some internal experts to learn more about why this occurred."

21. Equifax then stated it created a solution and recommended that "the best action a transgender or non-binary person can take is to directly inform Equifax and the other CRAs (Experian and TransUnion) after completing their name change. Doing this provided the critical link between their chosen name and their deadname, which will help maintain the integrity of their credit file during transition and potentially avoid any misunderstandings with creditors or lenders."

22. Following this announcement, Equifax launched a webpage in its "Knowledge Center" titled "How Transgender People Can Change Their Name on Their Equifax Credit Report." (https://www.equifax.com/personal/education/credit/report/change-update-name-credit-report/).

23. Equifax instructs consumers on this webpage that "[t]he easiest way to change your name on your Equifax credit report is through the myEquifax Dispute Center."

24. Equifax also informs consumers that they may need to submit documentation verifying the name change as part of their dispute, and that "[f]or transgender people specifically, the name change court order is the most important document."

25. On February 2, 2022, the Consumer Data Industry Association ("CDIA") issued a press release titled, "Credit Reporting Industry: Helping

Transgender and Nonbinary Individuals Prevent Potential Disruptions to Their Credit."

26. In the press release, the CDIA states that "as the primary body representing the credit reporting industry, CDIA is working to raise awareness about what people transitioning into their true gender identity can do to ensure a smooth credit update from their dead name to their new legal name."

27. The CDIA recommends that consumers "[i]nforming each of the three nationwide credit bureaus of a first or middle name change can be done by using their online customer support systems or by calling the credit bureaus directly."

28. The CDIA notes that a consumer may need to submit documentation of the name change, including a court order, an updated Social Security Card, or the update Driver's License or state issued ID card with new identifying information.

29. Equifax is aware of the CDIA's press release.

30. On February 24, 2022, a group of 145 organizations sent a letter to Equifax's Chief Executive Officer, Mark Bego, urging Equifax to take additional needed steps to correct credit report problems for transgender and nonbinary consumer who change their names.  (https://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/cra-coalition-to-cdia-24feb2022.pdf)

31. The signatories of the letter included prominent LBTQ+ advocacy organizations, community centers, chambers of commerce, community groups, and consumer, employment, housing, and anti-poverty organizations.

32. Equifax's CEO received and reviewed the letter.

33. The letter recommended, among other things, that Equifax "facilitate name changes by having clear procedures to update a consumer's name on their credit report when presented with a legal name change order, and ensure that staff are sufficiently trained in those procedures and are able to provide culturally competent service to transgender and nonbinary consumers."

34. The letter also urged Equifax to "[p]revent the disclosure of transgender and non-binary consumers' deadnames to landlords, employers, and underwriters by disclosing only a consumer's current legal name in reports provided to credit report users."

35. Finally, the letter welcomed an opportunity for senior executives at Equifax to discuss these proposals and additional steps.

36. Upon information and belief, Equifax's senior executives did not hold any follow up communications with the signatories of the letter regarding the proposals or additional steps to support transgender and non-binary consumers who have changed their names.

37. Despite all of this notice, and Equifax's public-facing promises to implement effective procedures, transgender and non-binary consumers still routinely encounter difficulties when changing their names with Equifax.

38. This is the result of Equifax inadequately training its dispute operators and delegating the vast majority of its statutorily mandated FCRA investigation responsibilities to either an affiliated company in Costa Rica or to a subcontractor in India.

39. These dispute-processing entities are not hired to perform actual FCRA investigations, let alone to meaningfully review consumers' name change disputes. Instead, their sole responsibility is to read consumer dispute letters, select from a handful of common dispute codes in a drop-down menu, and then click that code.

40. These dispute-processing entities do not have clear procedures to update a transgender or non-binary consumer's name on their credit report and they do not receive sufficient training related to transgender and non-binary consumers who submit disputes for name changes.

41. Indeed, since its press release in March 2021, Equifax has received many disputes from transgender and non-binary consumers who complain that Equifax failed to change their names following a dispute.

42. Equifax has also received many complaints from consumers through the Consumer Financial Protection Bureau related to Equifax's failure to change their names, and continuing to include their deadnames in consumer reports.

43. Because Equifax's procedures have proven inadequate, on March 23, 2023, Representative Ayanna Pressley (D-MA) introduced the Name Accuracy in Credit Reporting Act, which would require consumer reporting agencies use only a person's current legal name in consumer reports.

### *Plaintiff's Experience*

44. In June 2019, Plaintiff decided to change her name as part of her gender marker transition.

45. As part of her transition, Plaintiff changed her name with the necessary proper governmental agencies.

46. After legally changing her name with these governmental agencies, Trans Union, Experian, and Equifax were notified that Plaintiff had a new name and her former name was no longer accurate.

47. At that point, Trans Union, Experian, and Equifax knew that Plaintiff's old name no longer existed, and including it on a consumer report would be inaccurate.

48. Trans Union and Experian changed the name on Plaintiff's credit file to match her new name.

49. Equifax, however, refused to change Plaintiff's name on her Equifax credit file.

50. Since 2019, Plaintiff has attempted multiple times with Equifax to remove her old inaccurate name from her consumer file, and change it to her new name.

51. Plaintiff has written letters to Equifax, filed a complaint with the Consumer Financial Protection Bureau, filed an online complaint at myequifax.com, and mailed certified copies of her former and current driver's licenses and social security cards.

52. For example, on October 22, 2022, Plaintiff mailed her dispute to Equifax:

> I have written you June 2021 about the errors on my credit report. After you ignored my request I filed a complaint with the Consumer Financial Protection Bureau which you ignored as well because when I attempted to apply for credit I was denied by Well Fargo with a flagged warning against me that I was committing identity fraud.  Then I went directly to you website and once again stated my grievance that Equifax refuses to correct my file; sure enough request denied.
>
> I wanted to sell my home last May, but I cannot sell my home with the ability to apply for credit so I can move in to another home.  I'm shocked that Equifax has so much power over my life that you can prevent me from doing anything until this is once and for all finally cleared …
>
> I've legally changed my name September of 2019.  You refuse to update my credit file as trans union and Experian did so

immediately. Why three years later are you still refusing to make this change?

53. Equifax has received Plaintiff's multiple disputes.

54. Upon information and belief, Equifax has failed to conduct reasonable investigations into Plaintiff's disputes.

55. For example, Equifax failed to consider the driver's licenses, social security cards, and other documents that Plaintiff submitted showing her name change inaccuracies.

56. Equifax ignored information received from Plaintiff's creditors, which showed the name change.

57. Equifax responded to Plaintiff's disputes and refused to change Plaintiff's name.

58. When Equifax responded to Plaintiff's disputes showing her name had not been changed and continuing its use of Plaintiff's inaccurate dead name, it even addressed the dispute response letters to that dead name.

59. Equifax's refusal to change Plaintiff's name has caused Plaintiff substantial harm.

60. Primarily, Plaintiff embarked on this transition with considerable apprehension. Only a select few individuals in her personal life were aware of the

transition, as she intentionally guarded her privacy due to the understanding that not everyone would be accepting of her decision to change her gender identity marker.

61. Yet every time Plaintiff applies for credit, Equifax outs her by using her deadname. She is forced to explain her transition and name change to strangers. This is humiliating and strips Plaintiff of the dignity of her transition being a private and personal matter.

62. Even worse, because Equifax has refused to make the name change for several years, Plaintiff has been left with no choice but forego her desired privacy and obtain legal representation to file a lawsuit in federal court.

63. Furthermore, because Equifax has refused to make the name change and remove the inaccurate dead name, Plaintiff has been unable to obtain credit in several situations. Prospective creditors have viewed her applications as potential fraudulent and/or involving identity theft because the name on her credit application does not match the name on Equifax's consumer reports.

64. As just one example, Plaintiff applied for a loan with Wells Fargo in 2022. Wells Fargo informed Plaintiff that it had obtained her consumer report from Equifax, and it would not approve her application at that time because her "Identity can't be verified."

65. As a result of Equifax's repeated failures to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer actual

damages, including economic loss, lost opportunity to receive credit, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

## FIRST CLAIM FOR RELIEF

## (15 U.S.C. § 1681e(b))

66. Plaintiff realleges Paragraph Nos. 1-65 as if fully set forth herein.

67. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

68. Equifax knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

69. Equifax obtained or had available substantial written materials that apprised it of its duties under the FCRA.

70. Despite knowing of these legal obligations, Equifax acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

71. As a result of these FCRA violations, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunities to receive credit, economic

loss, damage to reputation, reduction in credit score, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

72. The violations by Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

73. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## SECOND CLAIM FOR RELIEF

### (15 U.S.C. § 1681i)

74. Plaintiff realleges Paragraph Nos. 1-65 as if fully set forth herein.

75. Equifax violated 15 U.S.C. § 1681i by, among other things, failing to (1) "conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller," and (2) provide to Plaintiff the notices required under 15 U.S.C. § 1681i(a)(6).

76. Equifax knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

77. Equifax obtained or had available substantial written materials that apprised it of its duties under the FCRA.

78. Despite knowing of these legal obligations, Equifax acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

79. As a result of these FCRA violations, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunities to receive credit, economic loss, damage to reputation, reduction in credit score, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

80. The violations by Equifax were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a. An award of actual, statutory and punitive damages for Plaintiff;

b. An award of pre-judgment and post-judgment interest as provided by law;

c. An award of attorneys' fees and costs; and

d. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**PLAINTIFF hereby demands a jury trial on all claims for which she has a right to a jury.**

DATED: May 17, 2023

By: /s/ Andrew Weiner
Andrew L. Weiner
Georgia Bar No. 808278
Jeffrey B. Sand
Georgia Bar No. 181568
WEINER & SAND LLC
800 Battery Ave. SE
Suite 100
Atlanta, GA  30339
(404) 205-5029 (Tel.)
(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
aw@wsjustice.com

js@wsjustice.com

COUNSEL FOR PLAINTIFF