### SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement and Release of All Claims ("Agreement") is made by and between **Sage Apartment Communities, Inc., a Nevada corporation** (the "Company") and **Michael Bracy** ("Bracy ") (collectively "the Parties").

### RECITALS

WHEREAS, the Company terminated Bracy on February 4, 2019;

WHEREAS, Bracy has been diagnosed with Multiple Sclerosis, which he contends is a disability as that term is defined under the Americans With Disabilities Act, as Amended ("ADA");

WHEREAS, Bracy contends that the Company wrongfully terminated him and did not engage in the interactive process with him regarding his alleged disability;

WHEREAS, the Company denies the violations of law asserted by Bracy and denies any liability whatsoever to him;

WHEREAS, the Company desires to reinstate and rehire Bracy as an at-will employee on the terms and conditions set forth below; and

WHEREAS, the Parties hereto wish to resolve all of their disputes and settle these matters in a confidential manner that will avoid the need for litigation.

NOW THEREFORE, in consideration of the material covenants and promises contained herein, the Parties agree as follows:

1.  **Consideration.** In consideration for Bracy's execution of and compliance with all of his obligations under this Agreement, the Company agrees to do the following:

    a.  Reinstate and rehire Bracy on the Effective Date as the Maintenance Supervisor at the Park Trace Apartments on an at-will basis. All pay, insurance and other benefits will also be reinstated on the Effective Date, retroactive to February 4, 2019, at the same levels as were provided to Bracy prior to his termination. Bracy agrees and understands that his employment with the Company will be at-will, meaning that the Company may terminate Bracy at any time for good cause, bad cause, or no cause at all, so long as it is not an illegal cause, and that Bracy may resign his employment with the Company at any time and for any reason;

    b.  Engage in the interactive process with Bracy regarding his alleged disability in good faith in compliance with the ADA and its regulations. Bracy also agrees to engage in the interactive process with the Company in good faith in compliance with the ADA and its regulations;

    c.  Pay to Bracy a gross amount equal to Bracy's lost wages from February 4, 2019 to the Effective Date, at the rate of $22.36 per hour/$894.40 per forty-hour week,

# EXHIBIT 2

    less all applicable and legally required withholdings and deductions, in accordance with the Company's normal payroll procedures and schedule. This amount will be made payable directly to Bracy;

d. Within three (3) business days of Bracy's execution of this Agreement, pay Twelve Thousand Five Hundred Dollars and No Cents ($12,500.00) jointly to Bracy and The Myer Law Firm as compensatory damages, including but not limited to Bracy's attorney's fees (a 1099 tax form will be issued to Bracy and The Myer Law Firm for this amount); and

e. Withdraw its demand that Bracy vacate the Park Trace apartment in which he currently resides, and not require that Bracy pay rent for same.

Bracy agrees and acknowledges that, but for the execution of this Agreement, he would not be entitled to receive the consideration provided for in this Agreement. Bracy further agrees and acknowledges that the consideration stated herein fully compensates him for any and all alleged wages (including those for all hours worked), overtime wages, benefits or any other form of compensation, damages, attorney's fees and costs, and that he neither seeks nor is entitled to any further wages, pay, overtime, benefits or any other form of compensation or relief, and that the Company is making this payment to eliminate any possible dispute or doubt that he has been paid fully and completely.

The Parties acknowledge the adequacy of consideration provided herein by each to the other, that this is a legally binding document, and that they intend to comply with and be faithful to its terms.

2. **Full and Complete Release.** In consideration for this Agreement, Bracy hereby settles, waives, releases and discharges all claims whatsoever against the Company and the other parties released (identified in Paragraph 3 below) with respect to each and every claim, cause of action, right, liability or demand of any kind or nature known and unknown at this time that he may have or may have had which arose at any time and which may arise at any time until this Agreement is executed by Bracy. Such claims that are hereby released include by way of example, but not limitation, all claims:

a. Arising from Bracy's employment with and termination from the Company on February 4, 2019, including claims for any pay, wages, severance or severance pay, medical expenses, bonus, vacation, sick pay, notice pay, reimbursement of expenses, insurance, pay for unused benefits and all other terms and conditions of employment or employment practices;

b. Based on discrimination, retaliation or harassment under the Civil Rights Act of 1866 (42 U.S.C. § 1981), the Age Discrimination in Employment Act of 1967 (as amended), Title VII of the Civil Rights Act of 1964 (as amended), the Equal Pay Act, the Employee Retirement and Income Security Act of 1974 (as amended), the ADA, the Family and Medical Leave Act, or any other federal, state or local anti-discrimination laws or common laws relating to discrimination in employment or otherwise regulating the employment relationship, or affecting the health or safety of employees in the workplace;

**EXHIBIT 2**

c. Based on any oral, written or implied contract, tort (including, but not limited to negligent or intentional infliction of emotional distress, negligence, negligent retention or supervision, assault, battery, defamation, fraud, slander, invasion of privacy, etc.), promissory estoppel, public policy, retaliation, or wrongful discharge theory; and

d. Relating to any attorney's fees, interest or costs, including attorney's fees incurred in connection with any review of this Agreement by an attorney (except as provided in Paragraph 1.d. above).

This Agreement does not release any right or claim which may arise after the date of this Agreement nor does it extend to vested benefits, if any.

Bracy agrees not to sue or authorize anyone else to file a lawsuit on his behalf against the Company (or any of the parties released herein) on any claims released herein. Bracy further agrees not to become a member of any class suing the Company (or the other parties released) on any claims released herein. Nothing in the Agreement is intended to or prevents Bracy from filing a charge or complaint with the Equal Employment Opportunity Commission ("EEOC") or other governmental agency or from participating in any investigation or proceeding conducted by the EEOC or other governmental agency. Bracy, however, agrees not to accept or recover any damages or any other form of relief which may arise out of or in connection with any administrative proceedings pursued by Bracy, or pursued independently by the EEOC or any other person, agency or class on any claims released herein, and if awarded any damages from such an action, Bracy agrees to return any amount he is awarded to the Company. Notwithstanding the preceding sentence, Bracy shall not be required to pay the Company the amount of any unemployment compensation he may have received prior to the Effective Date.

Bracy further agrees not to assist any of the Company's current or former employees with any lawsuit or claims against the Company arising prior to Bracy's execution of this Agreement, except that he may provide truthful testimony in response to a subpoena or court order.

3. **Parties Released.** Bracy acknowledges that this Agreement and the release provision in Paragraph 2 above apply to and protect in all respects the Company and each of the Company's past, current and future parent companies, insurers, affiliates, related companies, successors and assigns, attorneys, officers, managers, directors, agents, and employees of any such entity.

4. **Modification.** No modification, amendments, cancellation, deletion, addition, extension or other changes in this Agreement shall be effective for any purpose unless specifically set forth in a written agreement signed by Bracy and an authorized representative of the Company. This Agreement constitutes a single, integrated written agreement containing the entire understanding between Bracy and the Company regarding the subject matter hereof and supersedes and replaces any and all prior agreements and understandings, written or oral.

5. **Confidentiality.** Unless otherwise required by law or pursuant to court order, Bracy agrees to keep the existence of this Agreement and the fact he received any money from the Company in connection with this Agreement absolutely confidential forever. Bracy represents that he has not disclosed the subject matter or terms of this Agreement or the amount

of the consideration at any time before execution of the Agreement, other than to his attorney. Bracy agrees not to discuss anything about this Agreement with anyone (other than his attorney, accountant, or insurer, when consulted for professional advice, and all such persons shall be apprised of the provisions of this Paragraph and agree to be bound by them prior to making any disclosures to them), and he will not authorize anyone to discuss anything about this Agreement, including all of the matters that he agreed to keep confidential.

Bracy acknowledges that this confidentiality clause is a material provision of this Agreement and if he breaches this clause, he must refund the money paid to him or on his behalf listed in Paragraph 1 above. The Company will insist on strict compliance with this provision and will vigorously seek to enforce it. If the Company asserts a breach of this provision, the Company will seek not only repayment of the money set forth in Paragraph 1 above but its attorney's fees and any other available relief.

6. **Non-Disparagement.** Bracy agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of the Company to any persons, including but not limited to current or former employees, or members of the media. Bracy further agrees that he will not direct, encourage or assist anyone else to do so.

7. **Non-Admissions.** This Agreement does not constitute an admission by the Parties that they have violated any law or statute and the Company has specifically denied any such violation occurred.

8. **Non-Waiver.** The Company's failure to enforce any provision of this Agreement shall not act as a waiver of that or any other provision. The Company's waiver of any breach of this Agreement shall not act as a waiver of any other breach.

9. **Severability.** The provisions of this Agreement are severable. If any provision is determined to be invalid, illegal, or unenforceable, in whole or in part, then such provision shall be modified so as to be enforceable to the maximum extent permitted by law. If such provision cannot be modified to be enforceable, then the unenforceable element of the provision (or, failing that, the entire provision) shall be severed from this Agreement. The remaining provisions and any partially enforceable provisions shall remain in full force and effect.

10. **Neutral Interpretation of Agreement.** This Agreement will be construed as though jointly prepared by the Parties. Any uncertainty or ambiguity may not be interpreted for or against any one party. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

11. **Acknowledgments.** By signing this Agreement, Bracy acknowledges and warrants that:

   a. He has carefully read and fully understands every provision of this Agreement;

   b. He has had the opportunity to consult with his attorney before signing this Agreement.

**EXHIBIT 2**

c. He has had a reasonable amount of time, up to 21 days, after receiving this Agreement to consider it, but has chosen to consider it and execute it sooner;

d. He accepts this Agreement knowingly and voluntarily, and he was not intimidated, coerced or pressure; and

e. He may revoke this Agreement within seven (7) days after executing the Agreement by providing written notice of cancellation to be received by Cheryl Rice, the Company's Human Resource Manager, by the close of business on the seventh (7th) day following his execution of the Agreement.

**12. Representations.** Bracy represents and warrants that he is fully authorized to execute this Agreement and that he has not assigned, transferred or pledged all or any portion of the claims hereby released.

**13. Governing Law.** This Agreement and any disputes arising under or in connection with it shall be governed, construed and enforced in accordance with the laws of the State of Georgia, without regard to the principles of conflicts of law.

**14. Counterparts.** This Agreement may be executed in any number of counterparts with the same effect as if all Parties hereto had signed the same document. All counterparts shall be construed together and shall constitute one Agreement.

**15. Corporate Authority.** Sage represents and warrants that it has full power and authority to enter into this Agreement, and that the person executing this Agreement on behalf of Sage has the authority to bind Sage.

**16. Effective Date.** The Effective Date of this Agreement shall be the eighth (8th) calendar day following Bracy's execution of this Agreement.

BRACY DECLARES THAT HE HAS CAREFULLY READ THIS AGREEMENT, CONSULTED AN ATTORNEY, UNDERSTANDS THIS AGREEMENT, AND EXECUTES THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

Dated: April 24, 2019          _____
                               Michael Bracy

                               Sage Apartment Communities, Inc., a Nevada corporation

Dated: April ___, 2019         _____
                               Amber Monte
                               Title: President

**EXHIBIT 2**