# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WAYNE SUSS, § | |
| § | |
| Plaintiff, § | CASE NUMBER |
| § | |
| v. § | |
| § | |
| LIBERTY MUTUAL INSURANCE § | |
| COMPANY, § | |
| § | |
| Defendant. § | |
| § | |
| _____/ | |

## COMPLAINT FOR AGE DISCRIMINATION AND DEFAMATION

**COMES NOW** Wayne Suss, Plaintiff in the above-styled action, and files this Complaint.

### PARTIES, JURISDICTION AND VENUE

**1.**

Plaintiff Wayne Suss is an individual resident of Forsyth County, Georgia.

**2.**

Defendant Liberty Mutual Insurance Company ("LM") is a Massachusetts corporation authorized to conduct business in Georgia. This Court has personal jurisdiction over LM. LM may be served with process through its Registered Agent,

1

Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

3.

This Complaint asserts an action for violation of the Age Discrimination in Employment Act, 29 USC §623(a)(1) ("ADEA"). This Court has original jurisdiction over this claim under 28 USC §1331.

4.

Plaintiff asserted a claim of violation of the ADEA against LM in a filing with the Equal Employment Opportunity Commission ("EEOC") within 180 days of LM's last discriminatory act.

5.

The EEOC issued a Notice of Right to Sue less than ninety days prior to the filing of Plaintiff's Complaint. A true and correct copy of the EEOC's letter is attached hereto as Exhibit 1.

6.

This Court has subject matter jurisdiction over Plaintiff's state law claim under both diversity jurisdiction and supplemental jurisdiction.

## PLAINTIFF WAYNE SUSS' WORK EXPERIENCE AND TERMINATION

**7.**

Plaintiff is a 57-year old male former employee of LM. He was continuously employed by LM for over thirty years, until August 12, 2022.

**8.**

During his tenure with LM, Plaintiff held multiple positions associated with claims handling, including as Bodily Injury Adjuster, Bodily Injury Team Manager, SIU Regional Manager, and Property Loss Specialist. Plaintiff's final title was Sr. Claims Property Specialist II.

**9.**

Plaintiff was highly compensated by LM *vis a vis* similarly situated, less experienced colleagues, with his final salary exceeding the top end of LM's posted salary range for new hires by approximately $30,000.

**10.**

While employed by LM, Plaintiff consistently exceeded expectations on his annual written performance reviews. His ratings on his three most recent written annual performance reviews, including the one completed six months before his

termination, ranged from 10 to 12 on a 15-point scale.  He was never placed on notice of any performance issues or alleged policy violations prior to his termination.

11.

In 2020, Plaintiff and other similarly situated LM senior employees in good standing were offered an early retirement package.  Plaintiff declined the retirement package in favor of continuing to work until he was closer to a traditional retirement age.

12.

Plaintiff was terminated by LM on or about August 12, 2022 on the premise that he had committed a "policy violation". Despite Plaintiff's requests for same, LM has not identified the policy he is accused of violating.

13.

In accordance with LM's internal procedures, Plaintiff timely appealed his termination and sought reinstatement to his position as Sr. Claims Property Specialist II with his full salary and benefits retroactive to his August 12, 2022 termination.

14.

On or about December 1, 2022, LM notified Plaintiff that his appeal and

request for reinstatement had been denied.

15.

After LM denied Plaintiff's appeal, Plaintiff filed his claim with the EEOC.

## LM'S INTERNAL INVESTIGATION

16.

In 2022, approximately six months after his last performance review, Plaintiff was notified by LM that it was investigating certain claims that he had adjusted during the previous three to four years.  The date range of the claims LM purported to be investigating both preceded and followed the dates when Mr. Suss was offered and rejected the early retirement package.

17.

During three phone calls in the summer of 2022, Plaintiff was questioned by LM about six claims that he had adjusted, representing less than 1% of the claims he adjusted during the three-to-four-year period immediately preceding the investigation.  Plaintiff was never told that he was under any investigation or at risk of discipline or termination with respect to the claims about which he was questioned.

**18.**

During LM's investigation in the summer of 2022, LM gave Plaintiff the impression that LM's focus was on the contractor who had performed the work associated with the claims it was investigating and not on Plaintiff or any other LM employee.

**19.**

On or about August 12, 2022, at the conclusion of his third telephone conversation with LM regarding his claims handling, LM notified Plaintiff that he was being terminated for cause due to an unspecified "policy violation". LM further stated that Plaintiff had failed to adhere to claims handling guidelines without identifying the guidelines to which he had allegedly failed to adhere.

**20.**

Plaintiff's handling of at least one of the claims about which LM questioned him had been reviewed and approved by others higher ranking than him at LM.

**21.**

Plaintiff's claims handling was consistent with policies and training provided to him during his tenure with LM.

**22.**

Upon information and belief, none of the LM employees ranking higher than Plaintiff who either approved his claims handling or provided guidance or training in claims handling on which he relied was ever disciplined or terminated in connection with any claim that formed the alleged basis for his termination.

**23.**

Subsequent to Plaintiff's termination, LM has notified Plaintiff that the alleged policy violation was a single incident that allegedly occurred in 2020, two years before Plaintiff's termination and the same year that Plaintiff declined LM's offer of early retirement.

**24.**

Plaintiff has experience as an LM manager partnering with human resources professionals on performance and cause issues concerning investigations of other employees. In all of those instances when Plaintiff partnered with human resources on other employees' performance and cause issues, LM's practice was to notify the employee of the specific policy(ies) s/he was alleged to have violated or of the nature of the alleged violation(s) during the course of the investigation.   LM provided no such notification to Plaintiff when it questioned him.

**25.**

Upon information and belief, otherwise similarly situated LM employees who were younger than Plaintiff and who were paid less than Plaintiff engaged in the same conduct that formed the alleged basis for Plaintiff's termination, and those younger and lower paid employees were not terminated.

**26.**

Subsequent to Plaintiff's termination, LM has failed to identify the alleged policy that Plaintiff is accused of violating.

**27.**

LM's failure to identify an applicable policy suggests that no applicable policy exists.

**COUNT I**

**AGE DISCRIMINATION IN EMPLOYMENT**

**28.**

Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1-27 of this Complaint.

**29.**

Plaintiff's termination was an adverse impact on Plaintiff.

**30.**

LM terminated Plaintiff because Plaintiff was older and more highly compensated than otherwise similarly situated younger, less experienced employees.

**31.**

LM's accusation that Plaintiff committed a policy violation that warranted his termination was pretextual when LM's real reason to terminate Plaintiff was his age.

**32.**

LM's failure to identify a policy allegedly violated by Plaintiff demonstrates that LM's termination of Plaintiff was pretextual.

**33.**

Plaintiff has been harmed by LM's adverse action of termination on the basis of his age.

**34.**

Plaintiff is entitled to an award of back pay and front pay pursuant to the ADEA in amounts to be established at trial.

**35.**

Plaintiff is entitled to reinstatement to his position with LM pursuant to the

ADEA.

**36.**

LM's conduct was willful or with reckless disregard of whether its conduct was prohibited by the ADEA, and for this reason LM's actions support an award of liquidated damages pursuant to the ADEA.

**37.**

Plaintiff is entitled to an award of attorney's fees and litigation expenses pursuant to the ADEA.

**WHEREFORE**, Plaintiff Wayne Suss prays for Judgment against LM under Count I as follows:

    a. Front pay and back pay in amounts to be determined at trial;

    b. Reinstatement to his position with LM;

    c. Liquidated damages under the ADEA;

    d. Attorney's fees and litigation expenses pursuant to the ADEA; and

    e. Such other and further relief as the Court deems appropriate.

## COUNT II

## DEFAMATION

**38.**

Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1-27 of this Complaint.

**39.**

Subsequent to Plaintiff's termination, Plaintiff has learned from multiple sources that he has been accused within the claims handling industry of malfeasance warranting his termination by LM. Because Plaintiff has not himself published any such allegations, those allegations can only have been published by agents of LM.

**40.**

LM's accusations that Plaintiff engaged in malfeasance warranting his termination are false.

**41.**

More than seven days before filing this action, Plaintiff sought retraction of LM's false accusations that he engaged in malfeasance warranting his termination by filing an appeal of his termination with LM and by filing a claim with the EEOC.

**42.**

LM has failed and refused to retract its false allegations that Plaintiff engaged in malfeasance warranting his termination.

**43.**

Plaintiff has been harmed by LM's accusations that Plaintiff engaged in malfeasance warranting his termination.

**44.**

LM's false accusations against Plaintiff tend to injure Plaintiff's reputation and expose Plaintiff to public hatred, contempt, or ridicule.  Accordingly, said accusations constitute libel in violation of O.C.G.A. §51-5-1.

**45.**

LM's false allegations against Plaintiff are malicious because they tend to injure Plaintiff in connection with his profession.

**46.**

Plaintiff has suffered reputational and other damage as a consequence of Defendants' libel, and Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

**47.**

Plaintiff is entitled to injunctive relief to prevent LM from further defaming him.

**48.**

LM's conduct alleged in this Count II was willful or with conscious indifference to the consequences and was undertaken with a specific intent to cause harm to Plaintiff. LM's actions support an award of punitive damages in an amount to be determined by the enlightened conscience of an impartial jury.

**49.**

LM's conduct constitutes bad faith and stubborn litigiousness, and has caused Plaintiff unnecessary trouble and expense. Plaintiff has incurred expenses in connection with his efforts to enforce his rights, and accordingly, he is entitled to recover from LM all costs of litigation associated with this Count II of the Complaint, including reasonable attorney's fees, pursuant to O.C.G.A. §13-6-11.

**WHEREFORE**, Plaintiff Wayne Suss prays for Judgment against LM under Count II as follows:

a. Compensatory damages for defamation in an amount to be determined at trial;

b. Punitive damages as to this Count in an amount to be determined by the enlightened conscience of an impartial jury;

c. Attorney's fees and litigation expenses as to this Count pursuant to O.C.G.A. §13-6-11; and

d. Such other and further relief as the Court deems appropriate.

**PLAINTIFF WAYNE SUSS PRAYS FOR TRIAL BY A TWELVE-PERSON JURY.**

Respectfully submitted,

**THE MYER LAW FIRM**
Attorney for Plaintiff Wayne Suss
*/s/ Mari L. Myer*
MARI L. MYER
Georgia Bar No. 533020

125 East Trinity Place, Suite 308
Decatur, Georgia  30030
404-601-4125
mmyer@myerlawatlanta.com