# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SAMERRIAH LUSTER, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CIVIL ACTION NO.: |
| V. ) | |
| ) | |
| ENVISION ORTHOPEDICS & ) | JURY TRIAL DEMANDED |
| SPINE, LLC, d/b/a SPINE CENTER ) | |
| OF ATLANTA, ) | |
| ) | |
| DEFENDANT. | |

## **COMPLAINT**

**I.      JURISDICTION**

1.     This is a suit authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

2.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  The Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

1

## II. PARTIES

3. Plaintiff, Samerriah Luster, ("Plaintiff" or "Luster") is a resident of DeKalb County, Georgia, and performed work for the Defendant in the counties composing the Northern District during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Georgia.

4. At all times relevant to this Complaint, Plaintiff was employed by and was an "employee" of Defendant, as defined under Title VII at 42 U.S.C. § 2000e(f).

5. Defendant Envision Orthopedic & Spine, LLC is a company registered and doing business in the State of Georgia and has sufficient minimum contacts with the State of Georgia that it is subject to service of process in Georgia.

6. Defendant employed at least fifteen (15) or more employees for the requisite duration under Title VII. Thus, Defendant was an "employer" of Plaintiff under Title VII in accordance with 42 U.S.C. § 2000e(a).

## III. FACTS

7. Luster incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

8. Luster was pregnant.

9. Luster is a person of African ancestry, colloquially referred to as Black.

10. During the middle of December 2021, the Defendant contacted Luster about a job opening in its Atlanta location.

11. Luster responded to Defendant, interviewed, and on December 23, 2021, Defendant offered her a full-time Medical Assistant position.

12. Luster reported to work on January 10, 2022, and began training in the Human Resources department.

13. On the third day, Luster began working in her assigned department and reported to Jesselyn Elliott ("Elliott").

14. After Luster reported to work, she went to Elliott and told her that she was pregnant and would be due in late spring.

15. Luster did not at that time ask for any time off work or any accommodation for her pregnancy.

16. Luster was not due to give birth until well after her 90-day probationary period expired.

17. Elliott did not immediately say there was any problem. In fact, Elliott told Luster that there was another employee who was also pregnant.

18. Luster observed the other pregnant employee, and she was not Black. The other pregnant employee appeared to be Latina.

19. The next day, the Human Resources Manager, Crystal Walker ("Walker"), came to get Luster from her workstation and took her to a meeting with her, Elliott, and Joseph Forese ("Forese"), the Director of Operations.

20. When Luster got to the meeting, Forese told Luster that she should have told them she was pregnant.

21. Forese also said, "I don't know what you are trying to do but you should have told us you were pregnant before we hired you."

22. Luster told Forese that she did not have to disclose her pregnancy during the hiring process.

23. Moreover, Luster was showing her pregnancy when she went to the interview.

24. Forese agreed and acknowledged that he was not allowed to turn Luster down for employment because of her pregnancy.

25. Then, Forese said, "We decided we are going to terminate you immediately."

26. After Luster was terminated, the company reported to the Georgia Department of Labor that her termination was without cause.

27. Defendant terminated Luster's employment on or about January 13, 2022.

## IV. CLAIMS FOR RELIEF

### COUNT I: TITLE VII – SEX

28. Luster incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

29. Luster is female.

30. Plaintiff was qualified for the Medical Assistant position.

31. On Luster's third day, she began working in her assigned department and reported to Elliott.

32. After Luster reported to work, she went to Elliott and told her that she was pregnant and would be due in late spring.

33. When Luster reported her pregnancy, Elliott did not say there was any problem. Instead, Elliott told Luster that there was another employee who was also pregnant.

34. The other pregnant employee appeared to be Latina.

35. The day after Luster reported her pregnancy she was brought to a meeting with Walker, Elliott, and Forese.

36. Forese told Luster that she should have told them she was pregnant.

37. Forese also said, "I don't know what you are trying to do but you should have told us you were pregnant before we hired you."

38. Luster told Forese that she did not have to disclose her pregnancy during the hiring process.

39. Luster was showing her pregnancy when she went to the interview.

40. Forese agreed and acknowledged that he was not allowed to turn Luster down for employment because of her pregnancy.

41. Defendant's employee, Forese, terminated Plaintiff's employment on or about January 13, 2022.

42. A Latina employee was also pregnant but remained employed.

43. Defendant's actions in terminating Plaintiff's employment violated Title VII.

44. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

45. Luster's pregnancy was a motivating factor in Defendant's decision to terminate Luster's employment.

46. Because of Defendant's discriminatory decision made in whole or in part because of Luster's pregnancy, Luster has lost pay and continues to be paid less.

### COUNT II: TITLE VII – RACE

47. Luster incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

48. Luster is a person of African ancestry colloquially referred to as "black" or "African American."

49. Luster was qualified for the Medical Assistant position.

50. Luster told Elliot that she was pregnant and would be due in late spring.

51. When Luster reported her pregnancy, Elliott did not say there was any problem. Instead, Elliott told Luster that there was another employee who was also pregnant.

52. The other pregnant employee appeared to be Latina.

53. The day after Luster reported her pregnancy she was brought to a meeting with Walker, Elliott, and Forese.

54. Forese told Luster that she should have told them she was pregnant.

55. Forese also said, "I don't know what you are trying to do but you should have told us you were pregnant before we hired you."

56. Luster told Forese that she did not have to disclose her pregnancy during the hiring process.

57. Luster was showing her pregnancy when she went to the interview.

58. Forese agreed and acknowledged that he was not allowed to turn Luster down for employment because of pregnancy.

59. Defendant's employee, Forese, terminated Plaintiff's employment on or about January 13, 2022.

60. Defendant treated Luster differently than the pregnant Latina employee.

61. Defendant did not terminate the Latina employee for being pregnant.

62. Defendant's actions in terminating Luster's employment violated Title VII.

63. Luster's race was a motivating factor in Defendant's decision to terminate Luster's employment.

64. Because of Defendant's violation of Title VII, Luster has been damaged, suffering loss of pay and benefits.

65. Because of Defendant's discriminatory decision made in whole or in part because of Luster's race, Luster has lost pay and continues to be paid less.

### COUNT III: 42. U.S.C. § 1981

66. Luster incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

67. Luster is a person of African ancestry colloquially referred to as "black" or "African American."

68. Luster was qualified for the Medical Assistant position.

69. Luster told Elliot that she was pregnant and would be due in late spring.

70. When Luster reported her pregnancy, Elliott did not say there was any problem. Instead, Elliott told Luster that there was another employee who was also pregnant.

71. The other pregnant employee appeared to be Latina.

72. The day after Luster reported her pregnancy she was brought to a meeting with Walker, Elliott, and Forese.

73. Forese told Luster that she should have told them she was pregnant.

74. Forese also said, "I don't know what you are trying to do but you should have told us you were pregnant before we hired you."

75. Luster told Forese that she did not have to disclose her pregnancy during the hiring process.

76. Luster was showing her pregnancy when she went to the interview.

77. Forese agreed and acknowledged that he was not allowed to turn Luster down for employment because of her pregnancy.

78. Defendant's employee, Forese, terminated Plaintiff's employment on or about January 13, 2022.

79. Luster's race was a motivating factor in Defendant's decision to terminate Luster's employment.

80. Because of Defendant's violation of 42 U. S. C. § 1981, Luster has been damaged, suffering loss of pay, benefits, and mental anguish.

81. Because of Defendant's discriminatory decision made in whole or in part because of Luster's race, Luster has lost pay and continues to be paid less.

## PRAYER FOR RELIEF

**WHEREFORE, Luster respectfully prays for the following relief:**

A. Grant Luster a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B. Grant Luster a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981

C. Grant Luster a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

D. Enter an Order requiring the Defendant to make Luster whole by awarding reinstatement to the position she would have had, had she not been terminated;

E. Award Luster back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

F. Attorneys' fees and costs;

G. Luster requests that the Court award Plaintiff equitable relief as provided by law; and,

H. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

Kira Fonteneau (FON007)

**OF COUNSEL:**

Barrett & Farahany
2 20th N. St. Suite 900
Birmingham AL 35203

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SAMERRIAH LUSTER, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CIVIL ACTION NO.: |
| V. ) | |
| ) | |
| ENVISION ORTHOPEDICS & ) | JURY TRIAL DEMANDED |
| SPINE, LLC, d/b/a SPINE CENTER ) | |
| OF ATLANTA, ) | |
| ) | |
| DEFENDANT. | |

## CONFLICT DISCLOSURE STATEMENT

COMES NOW the Plaintiff, Samerriah Luster, through the undersigned attorney of record, and under the Order of this Court, making the following disclosure about parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but not trust beneficiaries), affiliates, or similar entities reportable under the Northern District of Georgia's Order: **This party is an individual.**

Respectfully submitted on May 17, 2023.

*/s/ Kira Fonteneau*
Kira Fonteneau (FON007)

**OF COUNSEL:**

Barrett & Farahany
2 20th N. St. Suite 900
Birmingham, AL 35203