AFFIDAVIT:   CLAIRE E. TESKE, RN, BA, PMH-BC, LNC

I, Claire E. Teske, being duly sworn, make the following statements:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Affidavit. The evidence set out in the forgoing Affidavit is based on my personal knowledge.

2. I am a registered nurse and licensed in California. I am also competent to offer opinions as an expert on the matters at issue in this case in that I have education, training, and experience in these areas and the credentials outlined in my Curriculum Vitae, a copy of which is attached hereto and incorporated herein by reference as Exhibit "A".

3. I have been practicing nursing since 1974. For at least three of the five years preceding May 22, 2021, I have been actively involved in nursing.

4. Based upon my education, training and experience, I am familiar with that degree of care and skill ordinarily exercised by nurses under the same or similar circumstances and like surrounding conditions as the facts of this case. Specifically, I am familiar with that degree of care and skill ordinarily exercised by nurses and medical staff including paramedics when treating patients with behavioral issues/changes during the intake/booking process. Within the 5 years preceding May 22, 2021, I have also supervised, taught, and instructed medical support staff in their care and assessment of patients with drug abuse, mental health, and behavioral issues and I am familiar with the degree of care and skill ordinarily employed by these professionals.

5. At the time of the acts or omissions addressed in my standard of care opinions set forth herein below, I had actual knowledge and experience in the areas of practice or specialty in which these opinions are given.

6. In connection with the giving of this Affidavit, I have reviewed the medical records of Brady Barret Allen pertaining to his incarceration on May 22, 2021. I have also reviewed the Autopsy Report of Brady Barret Allen.

7. Each of the opinions that I have expressed herein are given to and based upon a reasonable degree of medical probability.

8. As the factual basis for my opinions herein, I have assumed the following facts to be true and, in my opinion, the following is an accurate summary of pertinent events and conditions that occurred in this matter:



EXHIBIT B

a. Mr. Allen was arrested on May 22, 2021, and held at the Cobb County Jail. Due to his unpredictable behavior, he was never processed/booked.

b. The Preliminary Health Screening Assessment was completed May 22, 2021, at 1801 hours by officer #19013. There were 8 positive responses: One response was unclear.

- Does the arresting or transport officer believe the Arrestee is currently in need of medical or mental health services? YES
- Strange behavior, hallucinating (Contact nurse and supervisor).
- Appears confused, disoriented, difficulty communicating.
- Hearing voices or seeing visions? Unclear answer but probably a YES.
- Have you ever thought of hurting yourself in the past? YES (If yes explain below/contact supervisor/nurse). No comment noted.
- Have you ingested any legal/illegal drugs within the last 24 – 72 hours? YES- (If yes, explain below and contact nurse/supervisor). Comment: Meth, Heroin 3 days ago.
- Do you take prescription medication? YES
- Have you had a head injury in the last 24 – 72 hours? YES (If yes, explain below and contact nurse/supervisor). No comment noted.
- Do you have flu-like symptoms such as fever, nausea, vomiting, diarrhea, or body aches? YES (If yes, contact the nurse).

c. The above positive responses along with his unusual behavior should have triggered a medical/mental health assessment by the medical staff. This information indicates that there may be a serious medical/mental health issue and warrants further assessment, a call to the medical provider, possible treatment and/or an evaluation at the emergency room.

d. There is no indication in the medical record that any assessment was done. There are no vital signs, documented calls to the medical provider or communication between the on-site medical staff regarding Mr. Allen.

e. In reviewing the interviews of several of the custody and medical staff that were present at the time Mr. Allen was in the Sallyport, it is documented that Paramedic Watson was in the Sallyport and spoke with Mr. Allen, but he did not do vital signs, or a documented assessment. He states he did not review the Screening form. The video shows him with a piece of paper in his hand, but he states, "I was never given this sheet, I didn't know it had been filled out". When asked what was the sheet in your hand that you were looking at in the video, Watson stated, "I was looking at, uh, I don't recall". When asked by Internal Affairs if he thought it would have been important to look at the sheet that described what was wrong with Inmate Allen, Paramedic Watson replied, "Yes sir, I do".

f.  Mr. Watson cleared Mr. Allen for booking and did not provide any further care or discuss him with the nurse on duty. There is no documentation that any information regarding Mr. Allen was passed on to the next shift.

g.  On May 22, 2021 @ 1939 hours, Jesica Reynold, RN completed a Prescription Drug Inventory Record.  The medications on this record were currently being prescribed by a community provider and were for depression and anxiety.  Mr. Allen brought these medications to the jail at the time of his arrest.  It is unknown what happened to this list after its completion, but it would have been important to notify the on-call provider and have the medications continued.  It is apparent that Mr. Allen was taking these medications judging by the date of refills and number of pills left in the bottles.  Nurse Reynolds should have known that these medications would have helped to calm Mr. Allen and she should have notified the jail medical provider for orders.  She also should have reviewed his records at this time.  Discovering that he had not been assessed and no vital signs had been done may have changed the outcome of this situation if she would have completed an assessment.

h.  Mr. Allen was placed in a holding cell pending further processing/booking.  Over the next 8 hours his behavior continued to be abnormal.  He was seen taking his shirt on/off, pacing, banging on the cell door.  His level of agitation was escalating.

i.  Later in the evening, (May 23, 2021 @ 0109) Nurse Ngethe stated she attempted to see Mr. Allen but was told by custody staff that he was too agitated, and she could not see him at that time.

j.  The Internal Affairs Investigative Interviews of the custody staff on duty at the time Mr. Allen was present at the jail expressed the following:
<u>Deputy J. Williams:</u>  Mr. Allen appeared to be "under the influence of something".
"He needed to see a nurse".  Medical did not call for him/see him.  They felt he was too combative at the time.
<u>Deputy Brittingham:</u>  Asked medical to see Mr. Allen.  Was told, "not until he calms down".  Second request to medical to see Mr. Allen.  "Exception Form already completed.  Will refer to next shift for evaluation".
<u>Deputy Velez:</u>  Assigned to intake/evening shift.  He was seen by medical in sallyport (Watson).  Watson stated, "He's fine".  Mr. Allen appeared anxious (detoxing?).

The correctional staff were all in agreement that Mr. Allen was not acting normally.  Multiple requests were made to medical to assess/evaluate him, but this was not done.

k.  The fact that Mr. Allen was "too agitated" should have been an indication to the nurse that there may be a problem and further assessment should be pursued.
Mr. Allen remained in a holding cell for the next 8 hours, his condition deteriorating.

3

l.  At the end of the shift, Officer Brittingham made 2 requests to medical (Watson) that Mr. Allen be seen by medical.  The response was that a Refusal Exception Form had been completed and that the day shift would follow up.  Mr. Allen was never assessed by the medical staff.  The night shift referred him to the day shift.  The day shift did not see him.  On May 23, 2021 @ 0911 hours, 3 hours after the change of shift, Mr. Allen was transported to the hospital, unresponsive and pronounced dead at 0938.

9.  Paramedic Watson failed to render appropriate care to Mr. Allen.  He knew his behavior was not normal but did not do an assessment to evaluate him for a serious medical condition.  He did not take the basic vital signs required for all new intakes.  He did not discuss the patient with the nurse on duty.  The on-call medical provider was not notified of Mr. Allen's situation.  No treatment was initiated.  Mr. Allen's current mental health prescriptions were not verified and continued.  Mr. Allen was never assessed and asked questions regarding hospitalizations, current medications/treatments.  The fact that he was just an inpatient for serious medical issues and left hospital AMA is information that would have prompted a call to the medical provider and a trip to the emergency room.

10. Paramedic Watson failed to follow up assessing Mr. Allen, after his initial contact with him.  In fact, he did not see Mr. Allen at all for the remainder of the shift.

11. Nurse Ngethe failed to do an assessment on Mr. Allen.  She stated she was told he was too agitated, but this should have been a red flag and she should have insisted that she be able to evaluate him, or he would have to go to the emergency room for evaluation.

12. There is no documentation of a change of shift report for the medical staff.  The day shift staff for intake was Paramedic Brooke Stevic and Nurse Donnette Duggan-Pierre. During an interview between Georgia Bureau of Investigation and Paramedic Stevic, she stated she had no interaction with Inmate Allen prior to the incident. Also, during  Nurse Duggan-Pierre's interview with Georgia Bureau of Investigation, she stated she had no interaction with Inmate Allen prior to the incident. On May 23, 2021 @ 0942 hours a telephone call was made from the Charge Nurse Desk (7072) to intake triage (4349) – One member of the medical staff asks another what was on the back of Allen's Preliminary medical form. The nurse states, "Strange behavior, appears confused and disoriented, hearing voices, have you ever thought of hurting yourself, there's a yes on that, have you ingested anything illegal, yes, have you had a head injury in the last 24 – 72 hours, that's a yes too. The other nurse replies, "Oh God".

13. It is my opinion, with a reasonable degree of medical certainty based on my education, training, and experience, and the facts contained in the records that I reviewed, that Nurse Ngethe, Nurse Reynolds,  and Paramedic Watson were charged with the care and treatment of Mr. Allen, and that they failed to exercise that degree of care and skill ordinarily exercised by nurses and paramedics under the same or similar circumstances and like surrounding conditions ( the standard of care).

14. In my opinion, with a reasonable degree of medical certainty based upon my education, training, experience, and my review of the medical records, that Nurse Ngethe, Nurse Reynolds, and Paramedic Watson breached the standard of care by:

    a. Failing to appropriately assess/evaluate Mr. Allen who was presenting with signs/symptoms of potential serious medical issues. His behavioral changes could have indicated several possibilities such as dehydration, drug withdrawals, hyperglycemia, toxicity, electrolyte imbalance, brain injury.

    b. Failing to send Mr. Allen to the emergency room for evaluation of a recent head injury as stated on his screening form, as well as several other "YES" answers to medical questions.

    c. Failing to follow the procedure for continuing current medications. If Mr. Allen had been given his anti-anxiety medication it may have calmed him down, circumventing the disastrous outcome.

15. There is no documentation of a medical assessment or any medical care being provided from Paramedic Stevic or Nurse Duggan-Pierre to Mr. Allen, prior to him becoming unresponsive. It is apparent that nothing was done for Mr. Allen. A telephone call (May 23. 2021 @ 1005 hours) from the Watch Commander (4212) to Intake Triage (4349) – Lieutenant Garrett asks the nurse if her notes indicate if Mr. Allen was ever talked to by medical. The nurse explained there was nothing in Inmate Allen's chart other than an Exception and he was in a side cell due to behavior. No documentation of care exists because Paramedic Stevic and Nurse Duggan-Pierre did not provide any medical care to Mr. Allen prior to his unresponsiveness incident. It is my opinion, with a reasonable degree of medical certainty based on my education, training, and experience, that this is a breach of the standard of care and the day shift staff, Paramedic Stevic and Nurse Duggan-Pierre, who was assigned to the care of Mr. Allen should be accountable for their actions, or lack of action.

16. This Affidavit is not intended to provide an exhaustive listing of all the opinions which I may have concerning the matters at issue in this case, and I reserve the right to express additional opinions based on any additional information which may come to my attention as this case proceeds through the discovery and litigation process.

17. To a reasonable degree of medical certainty, it is my professional opinion that the above-mentioned medical staff's failure to properly care for Mr. Allen contributed to his death.

_____
Claire E. Teske, RN, BA, PMH-BC, LNC

Sworn and subscribed
Before me this 21st day
Of April, 2023.

_____
Notary Public

My Commission Expires: 11/21/2024

JENNIFER LYNN HILSTAD
COMM. # 2338047
NOTARY PUBLIC - CALIFORNIA
PLACER COUNTY
COMM. EXPIRES NOV. 21, 2024

6