# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ANJU SINGH, | ) |
| Plaintiff, | ) ) ) |
| | ) CIVIL ACTION FILE |
| v. | ) NO._____ |
| | ) |
| INFOTECH PRISM, LLC d/b/a CIRRUSLABS | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) |

## COMPLAINT

Plaintiff Anju Singh ("Plaintiff") submits the following Complaint for damages against Defendant Infotech Prism, LLC ("Defendant") and respectfully shows the court as follows:

## JURISDICTION AND VENUE

1. This action is for legal and equitable relief to redress unlawful discrimination on the basis of gender and retaliation arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Lilly Ledbetter Fair Pay Act of 2009 ("Lilly Ledbetter Act"); and the Equal Pay act of 1963, as amended, 29 U.S.C. § 206(d) ("Equal Pay Act"), which provide relief for discrimination in employment on the basis of sex. Plaintiff seeks declaratory and

injunctive relief, back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorney's fees and costs.

2. This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1331.

3. Venue is appropriate in this Court as upon information and belief the events complained of herein occurred within the geographic boundaries of the U.S. District Court for the Northern District of Georgia and upon information and belief all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

4. Plaintiff is a resident and citizen of the State of Georgia.

5. Plaintiff is female.

6. Defendant is a domestic for-profit corporation registered to conduct business in the state of Georgia.

7. Defendant may be served through its registered agent if service of process is not waived:

Registered Agent Name: **ZIAUR RAHMAN**
Physical Address: **5865 Northpoint Parkway, SUITE 200, ALPHARETTA, GA, 30022, USA**
County: **Fulton**

8. This Court has personal jurisdiction over Defendant.

## JURISDICTION AND VENUE

9. Plaintiff's gender discrimination and retaliation claims present federal questions over which this Court has jurisdiction under 28 U.S.C. §§ 1331 *et seq.*, and this Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

10. This Court is an appropriate venue for all of Plaintiff's claims under 28 U.S.C. § 1391(b) and (c) because all the parties reside within the Northern District of Georgia, and many events giving rise to Plaintiff's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

11. On January 30, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant. Attached hereto and incorporated herein is **Exhibit A**.

12. On February 16, 2023, the EEOC issued Plaintiff her notice of right to sue. Attached hereto and incorporated herein is **Exhibit B**.

13. Plaintiff has exhausted her administrative remedies prerequisite to the filing this suit pursuant to Title VII, the Lilly Ledbetter Act, and the Equal Pay Act.

14. This lawsuit has been filed within 90 days of Plaintiff's receipt of her notice of right to sue.

## STATEMENT OF FACTS

15. Defendant is an IT Services and Consulting firm.

16. During all time relevant to this lawsuit, the Defendant employed more than fifteen (15) employees for each working day during each of twenty (20) or more calendar weeks during Plaintiff's employment.

17. Defendant is an entity covered by Title VII, the Lilly Ledbetter Act, and the Equal Pay Act.

18. In January 2021, Defendant became affiliated through common ownership with Agile Trailblazers, LLC, d/b/a CirrusLabs, a Virginia LLC ("ATB").

19. Plaintiff was hired as the HR Manager for Defendant's US location with an annual salary of $96,000.

20. Plaintiff began working for Defendant on or about March 1, 2021.

21. During the interview process, Plaintiff was told that Defendant and ATB were in the process of merging policies, and that she would be offered similar benefits, including matching 401(k) contribution, starting on April 2021.

22. On or about April 1, 2021, Plaintiff was asked and accepted the position of Global HR Manager when she was also tasked with overseeing hiring for the company's India operation.

23. Plaintiff reported directly to the COO, Naeem Hussain ("Mr. Hussain"). Plaintiff was the only woman on the leadership team reporting to Mr. Hussain.

24. Plaintiff's workload increased significantly when she accepted the Global HR Manager role; however, her compensation was not adjusted accordingly.

25. Plaintiff often worked 70 to 80 hours per week.

26. Plaintiff was the only member of the leadership team reporting directly to Mr. Hussain that had a salary of less than $100,000.

27. In fact, the next lowest salary compared to Plaintiff was that of the Head of Innovation, Kjell Hegstad, whose salary was $180,000, almost twice that of Plaintiff.

28. Plaintiff made complaints of gender discrimination regarding these pay disparities to Defendant, but no action was taken.

29. On or about June 20, 2021, Plaintiff presented information to Mr. Hussain showing that although her compensation was in line with market conditions for the position she was originally hired for, her new responsibilities were more consistent with those of an HR Director with an average base pay of $149,000. (*See* **Exhibit C**).

30. Plaintiff requested a salary increase that would put her at $110,000-$125,000, still demonstrably less than the rest of the leadership team, but her request was denied.

31. Plaintiff's presentation to Mr. Hussain also showed that while other members of Mr. Hussain's leadership team received a 3 percent 401(k) match, Plaintiff had not received the matching contribution that she was told would begin in April 2021.

32. Plaintiff was the only member of the leadership team who did not have a matching 401(k) contribution.

33. Plaintiff never received any 401(k) match.

34. Plaintiff was also the only member of the leadership team that was not given three weeks of PTO until Plaintiff made her presentation to Mr. Hussain.

35. Only after showing him in writing that she did not have the same PTO benefit was she extended an extra week of PTO.

36. Plaintiff's complaints of gender discrimination and unequal pay upset Mr. Hussain and other members of Defendant's management team.

37. As a result of Plaintiff's complaint, Plaintiff was required by Defendant to undergo a 360-degree review as a way to create a pretextual reason for termination.

38. Plaintiff was the only employee of Defendant and member of the leadership team to undergo a 360-degree review.

39. Defendant knew that the 360-degree review would be low as it was undertaken shortly after a reduction in force ("RIF), during which Defendant terminated several employees.

40. Because Plaintiff was the Global HR Manager, she was put in the position of executing the RIF on behalf of Defendant.

41. As a result of Plaintiff executing the RIF, many employees blamed Plaintiff for employees losing their job, and they gave Plaintiff low marks on her 360 review.

42. Plaintiff was terminated on July 28, 2021.

43. Defendant's pretextual reason for termination was her low 360 Review scores.

44. Defendant's real reason for termination was her complaints of gender discrimination.

45. As a further form of retaliation, every employee who was involuntarily terminated from Defendant during Plaintiff's tenure was given severance pay.

46. Plaintiff was not given any severance package.

47. When Plaintiff questioned why she was not given severance, Defendant offered her one week of severance pay, which Plaintiff refused, since based on her role, she should have been offered four weeks.

## COUNT I

## VIOLATION OF TITLE VII - GENDER DISCRIMINATION

48. Plaintiff incorporates by refence each and every preceding paragraph of this Complaint.

49. Defendant discriminated against Plaintiff because of her gender, female, in the terms of wages/compensation and other terms, conditions and privileges of her employment.

50. The selection and pay procedures of Defendant had, and continue to have, a disparate impact on female employees, including Plaintiff.

51. Plaintiff was denied a higher salary because of her sex.

52. The criteria used by Defendant to make selection decisions for employee compensation are discriminatory.

53. Plaintiff has been, and continues to be, directly affected by the discriminatory practices described including being denied equal pay for equal work and being denied the opportunity to work in an environment free from sexual discrimination.

54. The sex discrimination set forth herein also further adversely affected Plaintiff and other female employees by promoting and reinforcing sexual stereotypes and sexual bias in the workplace.

55. Plaintiff has been subjected to systemic sexual discrimination including, but not limited to, a pattern and practice of intentional discrimination and practices that have an unlawful disparate impact on her employment opportunities. Such sexual discrimination includes a policy and practice of restricting female employment opportunities to lower classifications and compensation levels. The means of accomplishing such sex discrimination includes, but is not limited to, Defendant's promotion selection and compensation procedures, sexually discriminatory working conditions, and unequal terms and conditions of employment.

56. Defendant's selection and compensation procedures incorporate the following sexually discriminatory practices: 1) reliance upon subjective procedures and criteria which permit and encourage the incorporation of sexual stereotypes and bias against female employees; 2) refusal to establish policies, procedures, or criteria that reduce or eliminate disparate impact and/or intentional sexual bias or stereotypes in Defendant's decision making process for compensation and promotion; 3) refusal to place women on appropriate salary schedules; 4) refusal to compensate women at the same level as male employees; and, 5) paying women less than male employees for the same or substantially same work.

57. Defendant's compensation and selection procedures have had a disparate impact on Plaintiff. Such procedures are not valid, job related or justified by business

necessity. There are objective and structured compensation and selection procedures available to Defendant, which would have a less disparate impact on females and equal or greater validity and job relatedness, but Defendant has refused to consider and/or to use such procedures.

58. Defendant's compensation and selection procedures were implemented with the intent of having a disparate impact on Plaintiff and other female employees.

59. Defendant's compensation and selection procedures have adversely affected Plaintiff and other female employees, including but not limited to, the following ways: assigning females to inferior pay rates, and other unequal terms and conditions of employment in favor of male employees; and encouraging or ratifying sexually discriminatory conditions of work and sexually demeaning stereotypes regarding the capabilities, motivation, and interests of females.

60. Defendant engaged centralized control over the compensation of Plaintiff and other female employees.

61. Defendant has continuously engaged in, condoned and ratified discriminatory practices to constitute a continuing violation of Title VII.

62. Plaintiff has no plain, adequate, or complete remedy of law to redress the wrongs alleged herein, and this suit for back-pay, an injunction, other equitable

relief, and a declaratory judgment is her only means of securing adequate equitable relief.

63. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant Employers' unlawful practices as set forth herein unless enjoined by this Court.

64. Because of Defendant's discriminatory employment practices, Plaintiff has experienced harm, including loss of compensation, back and front pay, and other employment benefits.

## COUNT II

## RETALIATION

65. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

66. Plaintiff engaged in protected activity under Title VII by making complaints of gender discrimination and disparate treatment.

67. After Plaintiff's complaints of gender discrimination and disparate treatment, Plaintiff was retaliated against and subject to adverse employment actions, including termination.

68. The true reason for Plaintiff's termination was to retaliate against her for making complaints of gender discrimination and disparate treatment.

69. As a direct and proximate result of the above-mentioned discriminatory conduct, Plaintiff suffered lost wages and benefits, diminished employment opportunities and emotional distress, for which Defendant Employers are liable.

70. Defendant willfully and wantonly disregarded Plaintiff's rights and Defendant's retaliation against Plaintiff was undertaken intentionally and in bad faith.

71. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

### COUNTS III & IV

### VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 AND THE EQUAL PAY ACT

72. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

73. Defendant violated Plaintiff's rights under the Equal Pay Act when they deprived her of pay equivalent to those of males performing the same duties as Plaintiff.

74. Defendant Employers received notice of the above alleged wage inequities directly from Plaintiff.

75. All Defendant's actions were executed intentionally, willfully, knowingly and with malice and recklessness. Moreover, Defendant acted with deliberate indifference to the known or apparent consequences of their actions.

76. Plaintiff has suffered actual injuries and damages as a direct and proximate result of the above-described violations including but not limited to back pay, front pay, and compensatory damages due to the daily emotional distress suffered at her work and the effect of that distress on her health and personal life. Moreover, Plaintiff is entitled to collect liquidated damages against Defendant under the Equal Pay Act for the pay disparities equal to the full amount of back pay owed. And, because the denial of equal pay was willful, Plaintiff is additionally entitled to recover for three years of back pay.

77. As a direct and proximate result of the Defendant's sex-based discrimination, Plaintiff suffered lost wages and benefits, bonuses, significantly diminished employment opportunities, and emotional distress.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a) a declaratory judgment that Defendant has engaged in unlawful employment practices in violation of Title VII, The Lilly Ledbetter Act, and the Equal Pay Act;

(b)     an injunction prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII, The Lilly Ledbetter Act, and the Equal Pay Act;

(c)     full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)     front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e)     liquidated damages and compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f)     punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct toward Plaintiff and deter it from similar conduct in the future;

(g)     reasonable attorney's fees and costs; and

(h)     nominal damages and any other and further relief as the Court deems just and proper.

Respectfully submitted this 16th day of May, 2023.

*/s/ J. Stephen Mixon*

J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorneys for Plaintiff
THE MIXON LAW FIRM
3344 Peachtree Street
Suite 800
Atlanta, Georgia 30326
Telephone: (770) 955-0100