IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| *In re:*<br>Subpoenas Issued to Innovation Law Lab and Ariel Prado | Miscellaneous Action No. _____<br><br>**DECLARATION OF ARIEL PRADO IN SUPPORT OF NON-PARTIES INNOVATION LAW LAB AND ARIEL PRADO'S MOTION TO QUASH SUBPOENA DUCES TECUM** |

I, Ariel Prado, declare as follows:

1. I am the Codirector of Anticarceral Legal Organizing for Innovation Law Lab ("Law Lab"), a Portland-based nonprofit founded to improve the rights and well-being of immigrants and refugees by combining technology, data analysis, and representation. I am also a member of the executive leadership of Law Lab.

2. I am an Accredited Representative in good standing with the Executive Office of Immigration Review (EOIR) and the Department of Homeland Security, as recognized by the Office of Legal Access Programs of the Department

1

of Justice. My full accreditation is recognized through the accredited nonprofit organization where I am employed, Innovation Law Lab.

3. I am over 18 and have personal knowledge of the facts described herein.

4. Before working at Law Lab, I was the Project Coordinator of the Dilley Pro Bono Project, a detention-based project that provided universal representation to detained families in rapid removal proceedings. In my role with the Dilley Pro Bono Project, I mobilized, organized, and trained attorneys, law students, interpreters, researchers, social workers, and others to advocate for the rights of children and families seeking asylum in a detained setting.

5. At Law Lab, I assisted in the design, direction, and implementation of the pro bono representation project called the Centers of Excellence, which was launched in 2016. Law Lab continues to operate the Centers of Excellence, which provide support to noncitizens and their pro bono attorneys across the United States, including legal, technical, and strategic assistance in the preparation and presentation of claims.

6. At the time of the events giving rise to Mahendra Amin's complaint against NBCUniversal (and specifically, on September 15, 16, and 17, 2020), I supervised Law Lab's programming in the Southeast, including the Center of Excellence pro bono representation projects in Georgia. In Atlanta, Georgia, I

designed and implemented a monthly workshop at which unrepresented asylum seekers received limited legal assistance with completion of their asylum applications, orientation to the legal process, assistance with filings and complying with deadlines, assistance in preparing for hearings, orientation to available physical and mental health resources, and referrals to other nonprofit legal and social service programs as available and appropriate.

7. Currently, I serve as Codirector for Anticarceral Legal Organizing (AcLO) at Law Lab. The AcLO project is designed to build interconnected coalitions focused on releasing people from immigrant detention centers.

8. Through the AcLO project and the Centers of Excellence, Law Lab trains and coordinates volunteers and affiliates for the purpose of providing legal services or enabling legal services organizations to offer services in a carceral setting. Thus, any information that Law Lab collects through volunteers or affiliates from Law Lab clients relates to the legal services that its programs undertake to provide to clients. In other words, the information is collected within the context of Law Lab's attorney-client relationships.

9. At the time of the events giving rise to Mahendra Amin's complaint against NBCUniversal (and specifically, on September 15, 16, and 17, 2020), Law Lab was not engaging in pro bono legal representation work with and for women detained in ICDC. Likewise, Law Lab was not collecting information from or

investigating any matters relating to the subject of those statements. Neither Law Lab nor any person who worked or volunteered with Law Lab was mentioned or referred to in any of the five broadcasts that occurred on those dates.

10. Law Lab would be permanently damaged in its mission as a legal services organization if required to produce many of the documents that Mahedra Amin's subpoena demands that Law Lab produce. Law Lab is a nonprofit organization with a very small staff—only 30 employees. Searching for, reviewing, redacting, and producing responsive documents would force Law Lab's lawyers to pause their mission-related work to respond to these requests and would further result in harm to Law Lab's projects and clients.

11. Indeed, it could not fulfill its function as a legal services organization if it were required to produce protected information, including documents from, with, or about its clients. Producing the requested information would violate the attorney-client privilege, reveal client confidences in violation of the rules of professional conduct, and cause serious and long-lasting harm to Law Lab's mission and ability to perform its legal work.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty of perjury.

EXECUTED this 18th day of May, 2023.

By: /s/ Ariel Prado
**Ariel Prado**