# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| Magdalena Taylor, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| vs. | ) | |
| | ) | |
| I.C. Systems, Inc., | ) | **COMPLAINT WITH** |
| | ) | **JURY TRIAL DEMAND** |
| Defendant | ) | |
| | ) | |

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the Georgia Fair Business Practices Act, (GFBPA) O.C.G.A. 10-1-390 et seq.

## PARTIES

1. Plaintiff, Magdalena Taylor, is a natural person who resides in Gwinnett County, Georgia.

2. Defendant, I.C. Systems, Inc., is a foreign corporation registered to do business in Georgia. Defendant may be served with process via its registered agent, CT Corporation System at 289 S. Culver St, Lawrenceville, GA, 30046.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. Venue is proper in the Atlanta Division because the conduct complained of herein occurred in Gwinnett County, Georgia.

## FACTUAL ALLEGATIONS

7. Plaintiff is disabled, unable to engage in competitive employment, and is in the process of obtaining disability insurance benefits through the Social Security Administration.

8. Plaintiff is allegedly obligated to pay a consumer debt arising out the provision of veterinary services for her pet. Plaintiff is, therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

9. Defendant is a collection agency specializing in the collection of consumer debt.

10. Defendant uses interstate commerce and/or mail in its business in the collection of consumer debts.

11. Defendant manages, and collects upon, thousands of consumer debt accounts annually.

12. Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. As a result of her disability and inability to maintain employment, the Plaintiff has fallen behind on a number of consumer accounts. Despite her financial condition, the Plaintiff makes every effort to maintain control over her debt and her credit rating.

14. Plaintiff became aware of a collection account placed with the Defendant.

15. On August 25, 2022, the Plaintiff initiated a call to the Defendant to obtain more information.

16. The Plaintiff was connected with an individual identifying themselves as "Samantha," who, after verifying the Plaintiff's identity, advised that Defendant was collecting a debt on behalf of Banfield Pet Hospital (Banfield) in the amount of $387.16.

17. Defendant further advised that it was collecting a second account, this on behalf of the child care provider KinderCare related to childcare services

18. With regard to the Banfield account, Defendant advised Plaintiff it could offer her a "settlement" resolving the account for $232.30.

19. Based on her personal experience and the ordinary usage of the term "settle" related to her other consumer debt the Plaintiff understood this to mean that the claim being collected by the Defendant was in suit or subject to suit thus generating a "settlement offer".

20. Despite her fragile financial condition, Plaintiff expended a significant amount of time trying to raise the settlement figure provided by Defendant.

21. The Banfield account arose from services that were provided in October, 2013.

22. The Banfield account is subject to a statute of limitations of no more than four years per O.C.G.A. § 9-3-26. As a result, the statute of limitations applicable to the Defendant's claim expired no later than November 1, 2017.

23. Whether a debt is barred by an applicable statute of limitations is fundamental to the debt's character and legal status. *See Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1260 (11th Cir. 2014)* (explaining the significance to debtors of statutes of limitations in determining a debt's legal status), *cert. denied*, *135 S. Ct. 1844, 191 L. Ed. 2d 724 (2015)*.

24. A communication from a creditor offering a "settlement" on a debt that is time-barred creates confusion about a creditor's right to sue and violates § 1692e(2)(A). *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393 (6th Cir. 2015) *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016); *Holzman v. Malcolm S. Gerald & Associates, Inc.*, 920 F.3d 1264, 1271 (11th Cir. 2019).

25. Whether a debt is barred by an applicable statute of limitations is fundamental to the debt's character and legal status. *See Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1260 (11th Cir. 2014)* (explaining the significance to debtors

of statutes of limitations in determining a debt's legal status), *cert. denied*, *135 S. Ct. 1844, 191 L. Ed. 2d 724 (2015)*.

26.     At no time during their communications did the Defendant advise the Plaintiff that the applicable statute of limitations had expired.

27.     Plaintiff was then transferred to another collector with respect to the KinderCare account. The collector with whom the Plaintiff was connected identified himself as "Antonio Rivas," and a representative of the Defendant. Mr. Rivas informed the Plaintiff that Defendant was collecting an account on behalf of KinderCare with a balance of $500.00 and asked how Plaintiff wished to pay the debt.

28.     The Plaintiff responded by very clearly disputing the debt. Specifically, the Plaintiff informed Defendant that the amount sought was inaccurate and that the balance owed at the time she terminated her relationship with KinderCare was no more than $263.00.

29.     Defendant responded by stating that he understood, acknowledging the Plaintiff's dispute. He went on to advise the Plaintiff that if she did not feel like she owed the $500.00 he could offer her "a settlement" for the amount of $350.00 representing 70% of the claimed balance. The call ended shortly thereafter.

30. On October 26, 2022, the Plaintiff obtained a copy of her credit report as published by TransUnion and Experian, two major credit reporting agencies.

31. In reviewing those reports, the Plaintiff noted that on October 23, 2022 Defendant reported to each bureau the debt in collection on behalf of KinderCare.

32. The Defendant reported to each that the account as a "charge off" and in collection with a balance owed of $500.00. The reporting of the Defendant did not include the critical information that the debt had been disputed by the Plaintiff.

33. The FDCPA also prohibits communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

34. The right to dispute a debt is the most fundamental of those set forth in 15 U.S.C. § 1692g(a).

35. If a debt collector elects to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt.

36. Courts have routinely found that credit reporting is 'a powerful tool designed, in part, to wrench compliance with payment terms.

37. The Defendant's communications with the credit reporting agencies was in connection with, and indeed intended to facilitate, the collection of a consumer debt from the Plaintiff.

38. The information, and misinformation, reported by the Defendant to the two credit reporting agencies listed above has, upon information and belief, been published to third parties in keeping with the credit bureau's respective business models.

## INJURIES-IN-FACT AND DAMAGES

39. The FDCPA provides consumers with statutorily created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

40. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

41. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

42. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

a.) Being subjected to false, deceptive, and unfair debt collection practices;

b.) Confusion related to the Defendant's credit reporting practice that adversely impacted the Plaintiff's ability to prioritize debt payments when they were possible;

c.) Defendant's false and misleading communications to leading credit reporting bureaus were akin to defamation of the Plaintiff resulting in subscribers to the credit reporting services receiving a false impression of Plaintiff's credit worthiness and debt-to-income ratio;

d.) Uncompensated time expended away from activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

e.) Anxiety and worry caused by concern that Plaintiff was "missing out" on a substantial settlement opportunity that would leave her subject to legal process. and,

f.) Anxiety and worry caused by concern that Defendant was engaging in false credit reporting. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect her demeanor, her ability to engage in daily activities, resulted in sleeplessness, and adversely affected her relationships with others.

43. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiff has suffered an injury-in-fact sufficient to establish Article III standing.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. § 1692 et. seq.**

*Violations of 15 U.SC. § 1692e and its subparts*

44. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

45. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

46. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive

disadvantage. 15 U.S.C. § 1692(e). Section 1692e forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection, and provides a non-exhaustive list of prohibited conduct." *United States v. National Financial Servs.*, 98 F.3d 131, 135 (4th Cir. 1996).

47. "Violations of Section 1692e are viewed from the perspective of the "least sophisticated consumer."

48. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence,"

49. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

50. The Defendant's offer to "settle" a time-barred debt without disclosing that fact obscured and misrepresented the status of the debt and was a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10).

51. The Defendant's failure to report the debt in collection as disputed is a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8) and 1692e(10).

***Violations of 15 U.SC. § 1692f and its subparts***

52. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon a perceived lack of sophistication of the Plaintiff.

53. Defendant's conduct violated 15 U.S.C. § 1692f.

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## O.C.G.A. § 10-1-390, et seq.

54. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully stated herein.

55. O.C.G.A. § 10-1-390 et seq is commonly known as the "Fair Business Practices Act of 1975" (the "GFBPA").

56. The purpose of the GFBPA, is to protect consumers from unfair and/or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. O.C.G.A. § 10-1-391.

57. O.C.G.A. § 10-1-391 directs that the GFPBA is to be interpreted and applied liberally and in harmony with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which implements the FDCPA.

58. O.C.G.A. § 10-1-393(a) of the GFBPA broadly prohibits unfair and/or deceptive business practices.

59. Defendant intentionally engaged in unfair and deceptive business practices, as set forth herein, in an effort to collect a consumer debt.

60. Defendant's conduct has implications for the consuming public in general.

61. Defendant's conduct negatively impacts the consumer marketplace.

62. Upon information and belief, Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiffs of the Notice and Demand requirements of O.C.G.A. § 10-1-399(b).

63. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

64. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

65. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover treble damages pursuant to O.C.G.A. § 10-1-399(c).

66. Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 10-1-399(d).

## TRIAL BY JURY

67. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages pursuant to 15 U.S.C. § 1692k(a)(1) and;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) General, exemplary, and treble damages pursuant to O.C.G.A. § 10-1-399(a) & (c);

d.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k and O.C.G.A. § 10-1-399(d); and

e) Such other and further relief as may be just and proper.

Respectfully submitted this 17th day of May, 2023.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
matt@mattberry.com
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3300
Fax (404) 235-3333

*Plaintiff's Attorney*