# EXHIBIT A

1/19/23 at 2:39PM

E-FILED IN OFFICE - JM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
23-C-02460-S4
4/14/2023 4:40 PM
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**OXY-GEN Laboratory, LLC**

_____

_____

_____

PLAINTIFF

CIVIL ACTION
NUMBER:_____ **23-C-02460-S4**

VS.

# Southwest LTC, LLC

_____

_____

_____

DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Paul S. Suda, Esq.
The Lanier Law Group
402 Washington Street, Suite 201
Gainesville, Georgia 30501

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____**14th**_____ day of _____**April**_____, 20**23**.

Tiana P. Garner
Clerk of State Court

By_____

**Deputy Clerk**

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-02460-S4**
**4/13/2023 12:40 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

OXY-GEN LABORATORY, LLC.

    Plaintiff.

                                  CIVIL ACTION FILE

v.

                                  NO.:    23-C-02460-S4

SOUTHWEST LTC, LLC,

    Defendant.

### COMPLAINT

**COMES NOW** Plaintiff, OXY-GEN LABORATORY, LLC, and for its Complaint against Defendant, SOUTHWEST LTC, LLC, avers as follows.

1.

Plaintiff, OXY-GEN LABORATORY, LLC ("OXY-GEN"), is a limited liability company formed under the laws of, and licensed to do business in, the State of Georgia. OXY-GEN is in the business of operating a clinical laboratory providing laboratory testing services as ordered by authorized health care providers and laboratories.

2.

Defendant, SOUTHWEST LTC, LLC, ("SOUTHWEST") is a limited liability company formed under the laws of and, upon information and belief, licensed to do business in the State of Texas. Service of process may be perfected by serving its Chief Executive Officer, Ronald R. Payne, or any individual of authority found within SOUTHWEST'S principal place of business located at 5560 Tennyson Parkway, Suite 210, City of Plano, County of Collin, State of Texas, 75024.

3.

Commencing in or about June of 2020, pursuant to SOUTHWEST's request, OXY-GEN began providing SOUTHWEST Covid-19 testing services at the parties' agreed upon per test sum of One Hundred and NO/100 Dollars ($100.00)

4.

In or about August of 2020, OXY-GEN began providing SOUTHWEST monthly invoices reflecting the number of tests it had performed through the date thereof, and the amount of monies then owing to OXY-GEN resulting from its testing services. Thereafter, and continuing through September of 2020, OXY-GEN performed a total of six thousand nine hundred and six (6,906)

Covid-19 tests, at the aforementioned agreed upon per test price and, in accordance with the parties' agreement, OXY-GEN provided SOUTHWEST invoices totaling Four Hundred Fifty-Two Thousand Five Hundred Fifty and No/100 Dollars ($452,550.00) for its above described Covid-19 testing services.

5.

As of December 2021 SOUTHWEST had made payments towards the invoices provided to it by OXY-GEN and, consequently, reduced its indebtedness to OXY-GEN to a balance now due and owing of One Hundred Forty-Two Thousand Six Hundred Eighty and NO/100 Dollars ($142,680.00). Demand has been made by OXY-GEN upon SOUTHWEST to satisfy the remaining amount of monies owed to OXY-GEN, but SOUTHWEST has refused, and continues to refuse, to make arrangements to satisfy same.

6.

SOUTHWEST'S failure to remit payment to OXY-GEN for the Covid-19 testing services of OXY-GEN has been done knowingly, purposefully, and with the intent of SOUTHWEST to cause damage to OXY-GEN.

7.

Pursuant to O.C.G.A. § 13-1-11, OXY-GEN is today providing written notice to SOUTHWEST via the Summons and Complaint being served upon it in this action, that it is the intention of OXY-GEN to seek payment for all court costs and attorney's fees unless the principal amount of One Hundred Forty-Two Thousand Six Hundred Eighty and NO/100 Dollars ($142,680.00) mentioned above is received by OXY-GEN within ten (10) days of service of the Summons and Complaint in this action upon SOUTHWEST.

**WHEREFORE** Plaintiff, OXY-GEN LABORATORY, LLC respectfully prays for the following:

a.   The principal amount of One Hundred Forty-Two Thousand Six Hundred Eighty and NO/100 Dollars ($142,680.00) from SOUTHWEST;

b.   Post-judgment interest at the rate governed by Georgia law from the date of judgment through and to said judgment's satisfaction by SOUTHWEST;

c.   Upon the passage of ten (10) days of proof of service of the Summons and Complaint upon SOUTHWEST, Attorney's fees in an amount equal to fifteen percent (15%) of the first Five Hundred and No/100 Dollars ($500.00) of principal owed by SOUTHWEST (to wit: Seventy-Five and No/100 Dollars ($75.00)), and ten percent (10%) of any and all principal owed and awarded thereafter (to wit: Fourteen Thousand Two Hundred Eighteen and No/100 Dollars ($14,218.00), for a total of Fourteen Thousand Two Hundred and Ninety-Three and No/00 Dollars ($14,293.00) in Attorney fees);

d   Costs and disbursements of this action; and,

e   Any and all other such relief which this Court may deem proper

This 13th day of April, 2023.

Respectfully submitted,

Paul S. Suda
Attorney for Plaintiff
OXY-GEN Laboratory, LLC
Georgia Bar I. D. # 690748

The Lanier Law Group, LLC
402 Washington Street, SE
Suite 201
Gainesville, Georgia 30501
404.219.1775
sudalaw@bellsouth.net

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-02460-S4**
**4/13/2023 12:40 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

OXY-GEN LABORATORY, LLC,

    Plaintiff,

                                 CIVIL ACTION FILE

v.

                                 NO.:    23-C-02460-S4

SOUTHWEST LTC, LLC,

    Defendant.

## PLAINTIFF'S FIRST INTERROGATORIES
## TO DEFENDANT, SOUTHWEST LTC, LLC

    **COMES NOW** Plaintiff, OXY-GEN LABORATORY, LLC ("OXY-GEN"), and for its First Interrogatories to Defendant, SOUTHWEST LTC, LLC ("SOUTHWEST") avers as follows:

### DEFINITIONS

The following definitions apply to these interrogatories:

1.    "SOUTHWEST" means the Defendant limited liability company, or any other agents, employees, and representatives acting on SOUTHWEST's behalf.

2.    "Document" means anything on or in which any information is fixed and can be perceived, reproduced, or otherwise communicated, with or without the aid of any machine or device, and regardless of the medium of expression in which the information is fixed (*e.g.*, print, video, audio, digital, or other medium of expression). The term "document" includes any copy or copies of any of the foregoing on which any mark, alteration, or additional writing or other change from the original, or from any other copy, has been made. This includes any and all documents in the possession of SOUTHWEST or its agents, representatives, attorneys, or any other person acting on its behalf.

3. "Identify" and "Identification" and "the identity of" means as follows:

    a.  When used in reference to an individual person, his or her full name, present or last known business affiliation and position, last known residential address, and last known business address;

    b.  When used in reference to a corporation, firm, or other legal entity, its full name, form or organization, and its present or last known address;

    c.  When used in reference to a document, the type of documents (*e.g.*, letter, memorandum, telegram, chart, contract, prospectus, newspaper article, or the like), its author or originator, the

date it was originated, its recipients, its present location by address, and its custodian, and a summary of its contents and if the document was, but is no longer, in your possession or subject to control, state what disposition was made of it;

d. When used in reference to a meeting or conference, such means the date of the meeting or conference, the place of the meeting or conference, and the full name and residential address of each person attending the meeting or conference; and,

e. When used in reference to an oral communication, it means the full name of the participants to the oral communication, their business affiliation and business address at the time, their present or last known position, their residential address, the location of each participant at the time the oral communication took place, which participants initiated the oral communication, and both when and where the oral communication took place.

4. "Person" includes an individual, corporation, limited liability company, partnership, joint venture, or any other legally recognized entity.

## INSTRUCTIONS

1. Terms not defined in the definition section above shall have the respective meanings ascribed to such terms in the Complaint or the Answer.

2. If you refuse to answer any Interrogatory in whole or in part, describe the basis of your refusal to answer in sufficient detail so as to permit the court to adjudicate the validity of the refusal.

3. If any documents or records which reflect or relate to anything about these Interrogatories ask have been destroyed, identify the document, the date of destruction, and the name of the person who ordered or authorized the destruction.

4. These Interrogatories are continuing in nature and require supplemental responses as permitted by the Georgia Rules of Civil Procedure.

1.

Did SOUTHWEST enter into any form of agreement with OXY-GEN at any time, either written or orally? If your response is an affirmative, then please state in full and complete detail:

a.      The name and address of each person involved in any aspect of the negotiation of said agreement;

b.      The date(s) and time in which said negotiations took place;

c.      A complete description of the terms of said agreement(s) and the dates on which said terms were to be performed; and,

d.      Whether any documents, physically or electronically, exist detailing the terms or existence of such contract or agreement.

2.

Were the terms of any agreement or understanding which SOUTHWEST may have had with OXY-GEN completed in accordance with the terms thereof? If so, then please describe how so. If not, then please explain how and why not.

3.

Identify, by stating the name, address, and occupation of each officer, agent, servant, or employee of yours, or any other entity to which you have knowledge, who was involved in creating a relationship between OXY-GEN and SOUTHWEST, and describe their role with respect thereto.

4.

Identify all of SOUTHWEST'S agents, employees, and representatives who are familiar with or have knowledge of the material facts given in answering these interrogatories, referring to the particular interrogatory response of which such person has knowledge.

5.

Please describe in detail the facts in support of those defenses which SOUTHWEST may claim to have with respect to those allegations found in OXY-GEN's Complaint.

6.

State whether any books, documents, writings, schedules, memoranda, computer files, emails, or other records or thing regarding the submission of specimens from SOUTHWEST and/or its affiliates to OXY-GEN exist that evidences any fact, situation, or circumstance supporting OXY-GEN'S allegations against SOUTHWEST. If your answer is in the affirmative, please state the following as to each such fact, situation, or circumstance:

a. A description of such book, document, writing, schedule, memoranda or other tangible thing or record;
b. The name and address of the person or entity preparing such document;
c. The name and address of the person or entity who has custody and control of such document; and,
d. The substance and content of each such document.

7.

Please state the amount of monies thought by SOUTHWEST to be owed to OXY-GEN. With respect to such amount, please provide the means by which said amount was calculated or derived, and describe the document(s) or other physical record(s) which you claim to exist which supports your claim.

8.

Give a full and complete account of any and all meetings, telephone conversations, email transmissions, or encounters in which a SOUTHWEST representative may have had with any representative(s) of OXY-GEN with respect to any dealings between the parties as described in Plaintiff's Complaint. Include in such response the dates of such meetings, the people in attendance, and the substance of the conversations and outcomes of such meetings.

9

State whether SOUTHWEST has been involved in any litigation, arbitration, or mediation proceedings in the past five (5) years. If your answer is in the affirmative, please state the following:

a. The name and address of parties to such proceedings;
b. The court and docket number of the suit;
c. The name of the dispute resolution entity/individual who is the arbiter of such proceedings;
d. The nature of the dispute; and
e. The current status of such proceedings.

10.

As to each paragraph possibly denied by SOUTHWEST in its Answer to OXY-GEN's Complaint, please describe in detail the facts upon which such denials were based. As to each, should written documents exist which support such denial, please describe such document, when such was prepared, who prepared same, and the present whereabouts of said documents.

This 13th day of April, 2023.

Respectfully submitted,

Paul S. Suda
Attorney for Plaintiff
OXY-GEN Laboratory, LLC
Georgia Bar I. D. # 690748

The Lanier Law Group, LLC
402 Washington Street, SE
Suite 201
Gainesville, Georgia 30501
404.219.1775
sudalaw@bellsouth.net

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-02460-S4**
**4/13/2023 12:40 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

OXY-GEN LABORATORY, LLC,

    Plaintiff,

v.

SOUTHWEST LTC, LLC,

    Defendant.

CIVIL ACTION FILE

NO.:    23-C-02460-S4

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## TO DEFENDANT, SOUTHWEST LTC, LLC.

**COMES NOW** Plaintiff, OXY-GEN LABORATORY ("OXY-GEN") and hereby propounds its First Request for Production of Documents upon Defendant, SOUTHWEST LTC, LLC ("SOUTHWEST"). Unless otherwise agreed, production shall be made to the offices of Plaintiff's counsel within that time set by the Georgia Rules of Civil Procedure. Those definitions and instructions found within Plaintiff's First Interrogatories to Defendant delivered this even date shall apply to this Request for Production of Documents.

1.

Produce copies of all materials relating to your response to Interrogatory Number 1.

2.

Produce copies of all materials relating to your response to Interrogatory Number 2.

3.

Produce copies of all materials relating to your response to Interrogatory Number 4.

4.

Produce copies of all materials relating to your response to Interrogatory Number 5.

5

Produce copies of all materials relating to your response to Interrogatory Number 6.

6.

Produce copies of all materials relating to your response to Interrogatory Number 7.

7.

Produce copies of all materials relating to your response to Interrogatory Number 8.

8.

Produce copies of all materials relating to your response to Interrogatory Number 10.

9.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 2.

10.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 3.

11.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 7.

12.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 10.

13.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 14.

14.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 17.

15.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 20.

16.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 22.

17.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 26.

18.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 29.

19.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 33.

20.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 36.

21.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 39.

22.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 44.

23.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 45.

24.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 57.

25.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 60.

26.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 63.

27.

Produce copies of all materials relating to your response to First Request for Admissions of Fact Number 66.

This 13th day of April, 2023.

Respectfully submitted,

Paul S. Suda
Attorney for Plaintiff
OXY-GEN Laboratory, LLC
Georgia Bar I. D. # 690748

The Lanier Law Group, LLC
402 Washington Street, SE
Suite 201
Gainesville, Georgia 30501
404.219.1775
sudalaw@bellsouth.net

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-02460-S4**
**4/13/2023 12:40 PM**
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

OXY-GEN LABORATORY, LLC,

    Plaintiff,

v.

    CIVIL ACTION FILE

    NO.:  23-C-02460-S4

SOUTHWEST LTC, LLC,

    Defendant.

### PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS OF FACT TO DEFENDANT, SOUTHWEST LTC, LLC

    **COMES NOW** Plaintiff, OXY-GEN LABORATORY, LLC ("OXY-GEN") and files this, its First Request for Admissions of Fact pursuant to O.C.G.A. § 9-11-36. Defendant, SOUTHWEST LTC, LLC ("SOUTHWEST") is required to admit or deny the truthfulness of the following statements within forty-five (45) days after service of this request. Please note that according to O.C.G.A. § 9-11-37(c) any Request for Admission of Facts that is denied and which OXY-GEN subsequently proves the truthfulness of at trial will allow Plaintiff an award of expenses including, but not limited to, attorneys' fees necessary to prove the truthfulness of the admission(s).

1.

    Commencing in or about June of 2020, SOUTHWEST requested that OXY-GEN perform laboratory testing services for itself and its affiliates.

2.

    In or about June of 2020, SOUTHWEST requested that OXY-GEN perform laboratory testing services, with OXY-GEN being compensated for same by SOUTHWEST'S payment to OXY-GEN the sum of One Hundred and No/100 Dollars ($100.00) for each Covid-19 specimen received from SOUTHWEST and its affiliates, and subsequently tested by OXY-GEN.

3.

    Commencing in or about June of 2020, OXY-GEN began providing SOUTHWEST laboratory testing services for Covid-19 specimens.

4.

    Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN

performed tests for one thousand (1,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

5.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for one thousand five hundred (1,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

6.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for two thousand (2,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN

7.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for two thousand five hundred (2,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

8.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for three thousand (3,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

9.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for three thousand five hundred (3,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

10.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for four thousand (4,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN

11.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for four thousand five hundred (4,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

12.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for five thousand (5,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

13.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for five thousand five hundred (5,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

14.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for six thousand (6,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

15.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for six thousand five hundred (6,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

16.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for seven thousand (7,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

17.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN

performed tests for seven thousand five hundred (7,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

18.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for eight thousand (8,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

19.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for eight thousand five hundred (8,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

20.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for nine thousand (9,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

21.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for nine thousand five hundred (9,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

22.

Commencing in or about June of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for ten thousand (10,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

23.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for one thousand (1,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

24.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for one thousand five hundred (1,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

25.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for two thousand (2,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN

26.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for two thousand five hundred (2,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN

27.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for three thousand (3,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

28.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN performed tests for three thousand five hundred (3,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

29.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for four thousand (4,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN

30.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for four thousand five hundred (4,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

31.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for five thousand (5,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

32.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for five thousand five hundred (5,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

33.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for six thousand (6,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

34.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for six thousand five hundred (6,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

35.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for seven thousand (7,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

36.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for seven thousand five hundred (7,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

37.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for eight thousand (8,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

38.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for eight thousand five hundred (8,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

39.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for nine thousand (9,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

40.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for nine thousand five hundred (9,500) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

41.

Commencing in or about August of 2020, and continuing through that point in time in which OXY-GEN ceased to perform laboratory testing services for SOUTHWEST'S benefit, OXY-GEN received payment from SOUTHWEST for its performing tests for ten thousand

(10,000) or more Covid-19 specimens which SOUTHWEST had caused to be delivered to OXY-GEN.

42.

OXY-GEN has made a demand upon SOUTHWEST for payment for its services.

43.

OXY-GEN has provided SOUTHWEST a copy or copies of invoices for its services.

44.

SOUTHWEST has satisfied in full the demands for payment made upon it by OXY-GEN.

45.

SOUTHWEST has satisfied in full the invoices provided to it by OXY-GEN

46.

SOUTHWEST has made a partial payment towards the demand for payment made upon it by OXY-GEN.

47.

SOUTHWEST has made a partial payment towards the invoices provided to it by OXY-GEN.

48.

SOUTHWEST's failure to remit to OXY-GEN those monies owed to it was done knowingly.

49.

SOUTHWEST's failure to remit to OXY-GEN those monies owed to it was done purposefully.

50.

SOUTHWEST's failure to remit to OXY-GEN those monies owed to it was done recklessly.

51.

SOUTHWEST's failure to remit to OXY-GEN those monies owed to it was done with the intent of causing OXY-GEN damage.

52.

SOUTHWEST's failure to remit to OXY-GEN those monies owed to it as claimed in Plaintiff's Complaint was done with the intent of causing OXY-GEN damage.

53.

SOUTHWEST's officers made the decision to not pay OXY-GEN the monies owed to it as better outlined in the Complaint.

54.

SOUTHWEST's officers had sole authority to make the decision not to pay OXY-GEN those monies better outlined in the Complaint.

55.

SOUTHWEST's officers instructed its employees to not pay OXY-GEN those monies better outlined in the Complaint.

56.

SOUTHWEST recognizes and acknowledges that SOUTHWEST was obligated to pay to OXY-GEN for each and every Covid-19 specimen it caused to be delivered to OXY-GEN.

57.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of Fifty Thousand and No/100 Dollars ($50,000.00) or more.

58.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of Sixty Thousand and No/100 Dollars ($60,000.00) or more.

59.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of Seventy Thousand and No/100 Dollars ($70,000.00) or more.

60.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of Eighty Thousand and No/100 Dollars ($80,000.00) or more.

61.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of Ninety Thousand and No/100 Dollars ($90,000.00) or more.

62.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of One Hundred Thousand and No/100 Dollars ($100,000.00) or more.

63.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of One Hundred Ten Thousand and No/100 Dollars ($110,000.00) or more.

64.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of One Hundred Twenty Thousand and No/100 Dollars ($120,000.00) or more.

65.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of One Hundred Thirty Thousand and No/100 Dollars ($130,000.00) or more.

66.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of One Hundred Forty Thousand and No/100 Dollars ($140,000.00) or more.

67.

SOUTHWEST recognizes and acknowledges that SOUTHWEST owes to OXY-GEN the sum of One Hundred Forty-Two Thousand Six Hundred Eighty and No/100 Dollars ($142,680.00).

68.

SOUTHWEST recognizes and acknowledges that it owes some amount of monies to OXY-GEN.

69

In or about December of 2021 SOUTHWEST agreed to settle and resolve its financial obligations to OXY-GEN, but later reneged on such agreement to tender to OXY-GEN an agreed amount of monies.

This 13 th day of April, 2023.

Respectfully submitted,

Paul S. Suda
Attorney for Plaintiff
OXY-GEN Laboratory, LLC
Georgia Bar I. D. # 690748

402 Washington Street, SE
Suite 201
Gainesville, Georgia 30501
404.219.1775
sudalaw@bellsouth.net

E-FILED IN OFFICE - JM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-02460-S4**
**4/18/2023 3:56 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

OXY-GEN LABORATORY, LLC,

      Plaintiff,

                                  CIVIL ACTION FILE

v.

                                  NO.:   23-C-02460-S4

SOUTHWEST LTC, LLC,

         Defendant.

### ORDER NOMINATING PROCESS SERVER

Plaintiff, OXY-GEN LABORATORY, LLC ("OXY-GEN"), having filed its Motion to Nominate Process Server, and this Court having since considered same, it is hereby

**ORDERED** that Plaintiff's Motion to Nominate Process Server be **GRANTED**; and, it is further

**ORDERED** that Cody. W, Pennington of Pennington Legal Investigations, LLC located in Frisco, Texas, 75034, is authorized to perfect service of the Summons and Complaint upon the Defendant in this action.

This \_\_\_\_ day of April, 2023.

_____
Honorable Ronda S. Colvin
Judge, State Court of Gwinnett County