**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| KYLE WESLEY BISHOP,<br><br>                              Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION<br>SERVICES LLC and TRANS UNION,<br>LLC,<br><br>                              Defendants. | CASE NO.:<br><br>**JURY TRIAL**<br>**DEMANDED** |

## COMPLAINT

Kyle Wesley Bishop ("Plaintiff") brings this Complaint against Equifax Information Services LLC ("Equifax"), and Trans Union, LLC ("Trans Union") (collectively "Defendants") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, arising out of the credit bureau defendants' mixing of Plaintiff's credit files with another consumer's credit file, despite the fact that the other consumer has an entirely different name and Social Security number than Plaintiff.

## PRELIMINARY STATEMENT

1

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.     Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     Theses CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning

individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.     "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.     Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other

information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities'". *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.    Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.    "Mixed files" create a false description and representation of a consumer's credit history.

9.    A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10.    The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to

Persons other than the Person who is the subject of that Consumer Report." *F.T.C.*

*v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11.    Mixed files are not a new phenomenon. Equifax and Trans Union have

been on notice of the existence of mixed files, and the fact that their procedures for

creating credit files, including their matching algorithms, are prone to frequently

cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail*

*Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.    More recently, Equifax, Experian, and Trans Union have been the

subject of numerous state attorney general actions relating to its mixed file problem.

13.    For example, in 2015, the New York Attorney General filed charges

and settled claims with Equifax, Experian, and Trans Union over mixed files.[1] *See*

*In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v.*

*Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans*

*Union LLC.*

14.    Notwithstanding Equifax, Experian, and Trans Union's notice and

being subject to repeated enforcement actions, mixed files continue to occur dispute

---

[1] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited January 24, 2021; *see also* https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited January 24, 2021.

consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

15.    Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

16.    Equifax, Experian, and Trans Union have each been sued thousands of times wherein an allegation was made that Equifax, Experian, and Trans Union violated the FCRA. Moreover, Equifax, Experian, and Trans Union are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

17.    Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

18.    For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them dispute Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

19.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms.  Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4 million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

21.     Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part,*

*rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

22.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

23.    No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

24.    Finally, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, Experian, and Trans Union, to review their procedures when a mixed file case occurs.

25.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## THE PARTIES

26.     Plaintiff Kyle Wesley Bishop ("Plaintiff") is a natural person who resides in the State of Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

27.     Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company and resides in the State of Georgia, including in this District.

28.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

29.     Defendant Trans Union, LLC ("Trans Union") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

30.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling,

evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

33.     Plaintiff mailed multiple written disputes regarding inaccurate information in Plaintiff's Equifax credit report to Equifax located in Fulton County; Atlanta, Georgia.

34.     Defendant Equifax received Plaintiff's multiple written disputes in Fulton County; Atlanta, Georgia.

35.     Upon receipt of Plaintiff's disputes, Defendant Equifax forwarded such disputes to furnishers via Automated Consumer Dispute Verification electronic forms. Upon completion of its investigations pursuant to 15 U.S.C. § 1681s-2(b), the furnishers responded to Defendant Equifax's electronic communications, which

originated from Atlanta, Georgia, by sending its results electronically to Defendant

Equifax in Fulton County; Atlanta, Georgia

36.     Defendant Equifax then processed the dispute results at its National

Consumer Assistance Center in Atlanta, Georgia, and mailed Plaintiff its final

dispute results from Atlanta, Georgia.

## FACTS

### Summary of the Fair Credit Reporting Act

37.     The FCRA governs the conduct of consumer reporting agencies in an

effort to preserve the integrity of the consumer banking system and to protect the

rights of consumers to fairness and accuracy in the reporting of their credit

information.

38.     The purpose of the FCRA is to require consumer reporting agencies to

"adopt reasonable procedures for meeting the needs of commerce for consumer

credit, personal, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy,

and proper utilization of such information…." 15 U.S.C. § 1681(b).

39.     The FCRA further requires that when preparing consumer reports a

consumer reporting agency must follow "reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

## The Credit Bureau's Processing of Credit Information

40.     Defendants Equifax and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

41.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

42.     Defendants collect information from thousands of furnishers.

43.     The process by which Defendants receive, sort, and store information is largely electronic.

44.     Furnishers report credit information to Defendants through the use of coded tapes that are transmitted on a monthly basis through software known as Metro 2.

45.     Defendants take the credit information reported by furnishers and create consumer credit files.

46.     Defendants maintain credit files on more than 200 million consumers.

47.    Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

## Equifax and Trans Union's Mixed File Problem

48.    Defendants know that different consumers can have similar names.

49.    Defendants know that different consumers can have similar Social Security numbers.

50.    Defendants know that different consumers with similar names can also have similar Social Security numbers.

51.    Defendants know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

52.    Defendants match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

53.    Defendants accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

54.     Sometimes Defendants' matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

55.     Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the three major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

56.     Despite Defendants' long-standing and specific knowledge of the mixed file problem, Plaintiff's credit report was still generated by Defendants containing information belonging to another consumer.

57.     A mixed or merged credit file is the result of Defendants inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

58.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Defendants to match personal identifying information and credit information, including public record information, to a particular consumer's credit file.

59.    The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Defendants.

60.    A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendants.

61.    These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

62.    Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

### The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

63.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

64.    Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows

data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

65.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

66.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

67.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

68.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

69.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

70.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

71.    The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

72.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**Plaintiff Denied Credit May 23, 2021**

73.    In or about May 23, 2021, Plaintiff sought approval for an apartment lease and submitted a credit application.

74.    Upon submitting a credit application, Michael Miller via Fidelis Screening Solutions denied Plaintiff's credit application.

75.     Michael Miller via Fidelis Screening Solutions relied on the contents of Plaintiff's credit files at the time it denied Plaintiff's credit application. As of May 23, 2021, the date Michael Miller via Fidelis Screening Solutions accessed Plaintiff's credit file, it was mixed with another consumer's personal and credit account information.

76.     The credit bureaus' inaccurate credit reporting adversely impacted Plaintiff's credit score and caused Michael Miller via Fidelis Screening Solutions to deny Plaintiff's credit application.

### Plaintiff's 2021 Dispute with Equifax

77.     Prior to May 2021, Plaintiff filed a dispute with Equifax regarding the inaccurate information on his credit report relating to his twin sister.

### Equifax's Response to Plaintiff's 2021 Dispute

78.     Defendant Equifax did not remove the errors on Plaintiff's credit file.

79.     Defendant Equifax failed to conduct a reinvestigation of Plaintiff's 2021 dispute, in violation of 15 U.S.C. § 1681i.

80.     Thereafter, Equifax continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

**Plaintiff's Mixed Trans Union Credit File as of June 3, 2022**

81.     Upon information and belief, as of June 3, 2022, Plaintiff's Trans Union credit report contained the following accounts, which belong to another consumer:

Account Name Grain Technology
Balance $749

Account Name Commuter Cars
Account Number # 1161*

Account Name Central Florida Auto
Account Number # 2414***

Account Name Dept of Ed/Navient
Account Number 98520622781e0012013**** Date Opened 9/20/13

Account Name Dept of Ed/Navient
Account Number # 98520622781e0022013**** Date Opened 9/20/13

Account Name Dept of Ed/Navient
Account Number 98520622781e0032014**** Date Opened 10/14/14

Account Name Dept of Ed/Navient
Account Number 98520622781e0042014**** Date Opened 10/14/14

Account Name Dept of Ed/Navient
Account Number 98520622781e0052014**** Date Opened 12/15/14

Account Name Dept of Ed/Navient
Account Number # 98520622781e0062015**** Date Opened 5/11/15

Account Name Dept of Ed/Navient
Account Number # 98520622781e0072015**** Date Opened 5/11/15

Account Name Dept of Ed/Navient
Account Number 98520622781e0082016010416**** Date Opened
1/4/16

Account Name Dept of Ed/Navient
Account Number 98520622781e0092016010416**** Date Opened
1/4/16

Account Name Dept of Ed/Navient
Account Number 98520622781e0102016030216**** Date Opened
3/2/16

Account Name Dept of Ed/Navient
Account  Number  98520622781eo112016030216****  Date  Opened
3/2/16

Account Name Dept of Ed/Navient
Account  Number  98520622781e0122019060519****  Date  Opened
6/15/2019

Account Name Dept of Ed/Navient
Account  Number  98520622781e0132019060519****  Date  Opened
6/15/2019

Account Name Dept of Ed/Navient
Account  Number  98520622781e1042021090921****  Date  Opened
9/9/21

Account Name First Premier Bank
Account Number 517800685736****

Account Name JPMCB Card Services
Account Number 426684158448****

Account Name SyncB/Amazon Secured
Account Number 604578125139****

Account Name Sully Financial
Account Number 1011**

Account Name U S Auto Credit
Account Number 530018****

Account Name Online Information Services
Balance $250.00

Account Name Account Resolution Services
Balance $60.00

Account Name Southwest Credit Systems
Balance $546

82.     Upon information and belief, as of June 3, 2022, Plaintiff's Trans Union

credit report contained the following name, which belong to another consumer:

Kayla Nicole Bishop
Kayla B. Bishop

83.     Defendants   mixed   another   consumer's   personal   and   account

information   into   Plaintiff's   credit   reports   despite   the   fact   that   numerous

discrepancies   exist   between   their   personal   identification   information.   The

discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

    a) Plaintiff's legal name is Kyle Wesley Bishop and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to his sister, Kayla Bishop; and

    b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

### Defendant Trans Union Fails to Provide Credit Disclosure June 6, 2022

84. On or about June 6, 2022, Plaintiff requested a credit disclosure from Defendant Trans Union.

85. Defendant Trans Union failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

### Plaintiff's June 6, 2022 Dispute with Trans Union

86. On June 6, 2022, Plaintiff filed a written dispute regarding the information that does not belong to him with Defendant Trans Union because they were reporting another consumer's information.

87.    Plaintiff's June 6, 2022 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

88.    Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to Plaintiff's June 6, 2022 dispute.

### Trans Union's Response to Plaintiff's June 2022 Dispute

89.    Upon receiving Plaintiff's June 2022 written dispute, Trans Union sent an ACDV to the following furnishers regarding the following credit account Plaintiff disputed:

Account Name Grain Technology
Balance $749

Account Name Commuter Cars
Account Number # 1161*

Account Name Central Florida Auto
Account Number # 2414***

Account Name Dept of Ed/Navient
Account Number 98520622781e0012013**** Date Opened 9/20/13

Account Name Dept of Ed/Navient
Account Number # 98520622781e0022013**** Date Opened 9/20/13

Account Name Dept of Ed/Navient
Account Number 98520622781e0032014**** Date Opened 10/14/14

Account Name Dept of Ed/Navient
Account Number 98520622781e0042014**** Date Opened 10/14/14

Account Name Dept of Ed/Navient
Account Number 98520622781e0052014**** Date Opened 12/15/14

Account Name Dept of Ed/Navient
Account Number # 98520622781e0062015**** Date Opened 5/11/15

Account Name Dept of Ed/Navient
Account Number # 98520622781e0072015**** Date Opened 5/11/15

Account Name Dept of Ed/Navient
Account Number 98520622781e0082016010416**** Date Opened
1/4/16

Account Name Dept of Ed/Navient
Account Number 98520622781e0092016010416**** Date Opened
1/4/16

Account Name Dept of Ed/Navient
Account Number 98520622781e0102016030216**** Date Opened
3/2/16

Account Name Dept of Ed/Navient
Account  Number  98520622781eo112016030216****  Date  Opened
3/2/16

Account Name Dept of Ed/Navient

Account  Number  98520622781e0122019060519****  Date  Opened
6/15/2019

Account Name Dept of Ed/Navient
Account  Number  98520622781e0132019060519****  Date  Opened
6/15/2019

Account Name Dept of Ed/Navient
Account  Number  98520622781e1042021090921****  Date  Opened
9/9/21

Account Name First Premier Bank
Account Number 517800685736****

Account Name JPMCB Card Services
Account Number 426684158448****

Account Name SyncB/Amazon Secured
Account Number 604578125139****

Account Name Sully Financial
Account Number 1011**

Account Name U S Auto Credit
Account Number 530018****

Account Name Online Information Services
Balance $250.00

Account Name Account Resolution Services
Balance $60.00

Account Name Southwest Credit Systems

Balance $546

90.     US Auto Credit verified for Trans Union that Account # 530018••

belongs to Plaintiff, and that the account is accurately reporting on Plaintiff's Trans

Union credit report.

91.     Central Florida Auto Wholesale verified for Trans Union that Account

# 2414•• to Plaintiff, and that the account is accurately reporting on Plaintiff's Trans

Union credit report.

92.     Commuter Cars verified for Trans Union that Account # 1161 •• to

Plaintiff, and that the account is accurately reporting on Plaintiff's Trans Union credit

report.

93.     The Account Resolution Services account was properly removed from

the Trans Union report.

94.     Sometime after the dispute, Trans Union completed its reinvestigation

of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute

reinvestigation to Plaintiff. Trans Union failed to properly reinvestigate and delete

twenty-three of the disputed accounts that it sent out ACDVs in relation to, which

do not belong to Plaintiff, and continued to appear on Plaintiff's Trans Union credit

report.

**Plaintiff's Mixed Credit Files as of June 22, 2022**

95.     Upon information and belief, as of June 22, 2022, Plaintiff's Trans Union credit report contained the following accounts, which belong to another consumer:

Account Name Commuter Cars
Account Number # 1161*

Account Name Central Florida Auto
Account Number # 2414***

Account Name Dept of Ed/Navient
Account Number 98520622781e0012013**** Date Opened 9/20/13

Account Name Dept of Ed/Navient
Account Number # 98520622781e0022013**** Date Opened 9/20/13

Account Name Dept of Ed/Navient
Account Number 98520622781e0032014**** Date Opened 10/14/14

Account Name Dept of Ed/Navient
Account Number 98520622781e0042014**** Date Opened 10/14/14

Account Name Dept of Ed/Navient
Account Number 98520622781e0052014**** Date Opened 12/15/14

Account Name Dept of Ed/Navient
Account Number # 98520622781e0062015**** Date Opened 5/11/15

Account Name Dept of Ed/Navient

Account Number # 98520622781e0072015**** Date Opened 5/11/15

Account Name Dept of Ed/Navient
Account Number 98520622781e0082016010416**** Date Opened
1/4/16

Account Name Dept of Ed/Navient
Account Number 98520622781e0092016010416**** Date Opened
1/4/16

Account Name Dept of Ed/Navient
Account Number 98520622781e0102016030216**** Date Opened
3/2/16

Account Name Dept of Ed/Navient
Account  Number  98520622781eo112016030216****  Date  Opened
3/2/16

Account Name Dept of Ed/Navient
Account  Number  98520622781e0122019060519****  Date  Opened
6/15/2019

Account Name Dept of Ed/Navient
Account  Number  98520622781e0132019060519****  Date  Opened
6/15/2019

Account Name Dept of Ed/Navient
Account  Number  98520622781e1042021090921****  Date  Opened
9/9/21

Account Name First Premier Bank
Account Number 517800685736****

Account Name JPMCB Card Services
Account Number 426684158448****

Account Name SyncB/Amazon Secured
Account Number 604578125139****

Account Name Sully Financial
Account Number 1011**

Account Name U S Auto Credit
Account Number 530018****

Account Name Online Information Services
Balance $250.00

Account Name Southwest Credit Systems
Balance $546

96.     Upon information and belief, as of June 22, 2022, Plaintiff's Trans Union credit report contained the following inquiries, which belong to another consumer:

F5 Mortgage LLC via ADV CRDG5 Mortgage LLC February 21, 2022
Rocket Mortgage LLC via CredCo February 14, 2022

97.     Upon information and belief, as of June 22, 2022, Plaintiff's Trans Union credit report contained the following name, which belong to another consumer:

Kayla Nicole Bishop
Kayla B. Bishop

98.     Upon information and belief, as of June 22, 2022, Plaintiff's Trans Union credit report contained the following addresses, which belong to another consumer:

137 Beaver Cir, Brinson GA 39825
1060 SW Versailles Ave, Port Saint Lucie FL 34953
1060 SWVersailles Ave, Port Saint Lucie FL 34953
1712 15th Ave Phenix City AL 36867
7527 Pine Lakes Blvd Port Saint Lucie FL 34952
246767 101st Rd OBrien FL 32071
1503 E College St Apt 16 Bainbridge GA 39819
4285 Salt Rive Rd Leitchfield KY 42754
685 SW Lakehurst Dr Port Saint Lucie FL 34983
1733 SW Capehart Ave Port Saint Lucie FL 34953
1874 SW Bradway Ln Port Saint Lucie FL 34953

99.     Upon information and belief, as of June 22, 2022, Plaintiff's Trans Union credit report contained the following phone numbers, which belong to another consumer:

229-416-1178
772-877-1084
772-333-0589
270-816-4950
229-400-4798
772-359-6135
561-371-1568
762-822-6884
561-261-2767

229-216-0155

100. Upon information and belief, as of June 22, 2022, Plaintiff's Trans Union credit report contained the following employers, which belong to another consumer:

> Treasure Coast Urgent Care
> Carespot
> South Florida Endocrine Center
> Day Medical Center
> Waffle House
> Straight Up Preservation

101. Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

a) Plaintiff's legal name is Kyle Wesley Bishop and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to his sister, Kayla Bishop; and

b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's July 13, 2022 Dispute with Trans Union**

102.   In July 13, 2022, Plaintiff filed written disputes regarding the information that does not belong to Plaintiff with Defendant because they were reporting another consumer's accounts and information.

103.   Plaintiff's July 13, 2022 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

104.   Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to Plaintiff's July 13, 2022 dispute.

**Trans Union's Response to Plaintiff's July 13, 2022 Dispute**

105.   Defendant Trans Union did not respond to Plaintiff's July 2022 dispute.

106.   Defendant did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

107.   Defendant failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

108.   Thereafter, Trans Union continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

109.   Defendant also failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Defendant Trans Union Fails to Provide Credit Disclosure August 22, 2022**

110.   On or about August 22, 2022, Plaintiff requested a credit disclosure from Defendant Trans Union.

111.   Defendant Trans Union failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Plaintiff's August 22, 2022 Dispute with Trans Union**

112.   In August 22, 2022, Plaintiff filed written disputes regarding the information that does not belong to Plaintiff with Defendant because they were reporting another consumer's accounts and information.

113.   Plaintiff's August 22, 2022 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

114.   Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to Plaintiff's August 22, 2022 dispute.

33

**Trans Union's Response to Plaintiff's August 22, 2022 Dispute**

115.   Defendant Trans Union did not respond to Plaintiff's August 2022 dispute.

116.   Defendant did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

117.   Defendant failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

118.   Thereafter, Trans Union continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

119.   Defendant also failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Plaintiff's Mixed Trans Union Credit File as of October 4, 2022**

120.   Upon information and belief, as of October 4, 2022, Plaintiff's Trans Union credit report contained the following accounts, which belong to another consumer:

Account Name CENTRAL FLORIDA AUTO
Account Number 2414***

Account Name DEPT OF ED/NAVIENT

34

Account Number # 98520622781EO112016030216****

Account Name DEPT OF ED/NAVIENT
Account Number 98520622781E0082016010416****

Account Name SOUTHWEST CREDIT SYSTEMS
Balance $546

121.   Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

    a) Plaintiff's legal name is Kyle Wesley Bishop and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to his sister, Kayla Bishop; and

    b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's Mixed Equifax Credit Files as of October 4, 2022**

122.   Upon information and belief, as of October 4, 2022, Plaintiff's Equifax credit report contained the following name, which belongs to another consumer:

Kayla Nicole Bishop

123.   Upon information and belief, as of October 4, 2022, Plaintiff's Equifax credit report contained the following address, which belongs to another consumer:

4285 Salt River Rd Leitchfield, KY

124.   Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

a) Plaintiff's legal name is Kyle Wesley Bishop and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to his sister, Kayla Bishop; and

b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's October 24, 2022 Dispute with Equifax and TransUnion**

125.   In October 24, 2022, Plaintiff filed written disputes regarding the information that does not belong to Plaintiff with Defendants because each were reporting another consumer's information.

36

126.   Plaintiff's October 24, 2022 disputes specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

127.   Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to the October 24, 2022 dispute.

**Trans Union's Response to Plaintiff's October 24, 2022 Dispute**

128.   Defendant Trans Union did not respond to Plaintiff's October 24, 2022 dispute.

129.   Defendant did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

130.   Defendant failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

131.   Thereafter, Trans Union continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

132.   Defendant also failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Equifax's Response to Plaintiff's October 24, 2022 Dispute**

133.   Defendant Equifax did not respond to Plaintiff's October 24, 2022 dispute.

134.   Defendant did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

135.   Defendant failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

136.   Thereafter, Equifax continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

137.   Defendant also failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Plaintiff's Mixed Trans Union Credit File as of November 2022**

138.   Upon information and belief, as of November 2022, Plaintiff's Trans Union credit report contained the following account, which belongs to another consumer:

> Account Name Southwest Credit Systems
> Balance $546

139.   Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous

discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

    a) Plaintiff's legal name is Kyle Wesley Bishop and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to his sister, Kayla Bishop; and

    b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's November 23, 2022 Dispute with Trans Union**

140.   On November 23, 2022, Plaintiff filed a written dispute regarding the information that does not belong to Plaintiff with Defendant because they were reporting another consumer's accounts and information.

141.   Plaintiff's dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

142.   Plaintiff also attached a copy of Plaintiff's driver's license, copy of Plaintiff's Social Security card, and a written explanation to Plaintiff's dispute.

**Trans Union's Response to Plaintiff's November 2022 Dispute**

143.   Defendant Trans Union did not respond to Plaintiff's November 2022 dispute.

144.   Defendant did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

145.   Defendant failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

146.   Thereafter, Trans Union continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

147.   Defendant also failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Plaintiff's Mixed Trans Union Credit File as of January 12, 2023**

148.   Upon information and belief, as of January 12, 2023, Plaintiff's Trans Union credit report contained the following account, which belongs to another consumer:

> Account Name Commuter Cars
> Account #1161*

149.   Defendants mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The

discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

      a)  Plaintiff's legal name is Kyle Wesley Bishop and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to his sister, Kayla Bishop; and

      b)  Plaintiff's Social Security number is different than the other consumer's Social Security number.

150.   As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit files.

151.   Equifax and Trans Union maintain/maintained multiple credit files for Plaintiff.

152.   At least one of Plaintiff's Equifax and Trans Union credit files contain or have contained personal information and credit account information, including

derogatory collection accounts and charge offs, which do not belong or pertain to her.

153.   Equifax and Trans Union's merging and matching algorithms have caused Plaintiff's credit files to become mixed with personal and credit account information belonging to a different consumer.

154.   Within the two (2) years previous to the filing of this Complaint, Equifax and Trans Union prepared and distributed one or more consumer reports, as that term is defined by 15 U.S.C. § 1681a(d), pertaining to Plaintiff that contained misleading and inaccurate information which belongs to another consumer, including without limitation, personal information and credit accounts, which actually belong to a different consumer.

155.   Equifax and Trans Union failed to maintain and follow reasonable procedures to assure the maximum possible accuracy of the personal and credit account information contained within at least one of the credit files they maintain for Plaintiff.

156.   Equifax and Trans Union know that their matching algorithms are flawed and frequently result in mixed information and credit files belonging to two different consumers.

157.   Equifax and Trans Union have been sued thousands of times by consumers and suffered judgments as a result of mixing consumer credit information and credit files.

158.   When Equifax and Trans Union assemble consumer reports for their subscribers, they allow such subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases, like the instant matter, belong to another consumer.

159.   Equifax and Trans Union also fail to require an exact match of all digits of a consumer's Social Security number, which may in some cases result in the inclusion of credit information which belongs to another consumer.

160.   However, when consumers like Plaintiff request copies of their credit files, Equifax and Trans Union require a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

161.   Consequently, Equifax and Trans Union's own procedures for disclosing information to consumers, as they are required to do by the FCRA, tend to mask or conceal the problem of mixed files.

162.   By concealing this information, Equifax and Trans Union impair the ability of consumers, like Plaintiff, to identify and dispute errors resulting from mixed credit information or credit files.

163.   Equifax and Trans Union have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports, in violation of 15 U.S.C. § 1681e(b).

164.   Equifax and Trans Union's failure to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports was negligent and/or willful.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants)

165.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-166 as if fully stated herein.

166.   Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the

preparation of the credit reports and credit file they published and maintain concerning Plaintiff.

167.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit file.

168.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

169.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax and Trans Union)**

170.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-166 as if fully stated herein.

171.   Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after they received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of both disputed credit accounts and hard inquiries; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

172.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit file.

173.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

174.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681g
### Failure to Provide Disclosures to Plaintiff

175.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-166 as if fully stated herein.

176.   Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiff's credit disclosure after each request.

177.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment.

178.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

179.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)   Determining that each Defendant negligently and/or willfully violated the FCRA;

b)   Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c)   Awarding Plaintiff reasonable attorney's fees and costs from each Defendant as provided by the FCRA; and

d)   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

180.   Plaintiff demands a trial by jury.

Dated:       May 22, 2023

                                        */s/ Joseph P. McClelland*

Joseph P. McClelland
LAW FIRM OF JOSEPH P.
MCCLELLAND, LLC
Georgia Bar No: 483407
235 East Ponce de Leon Avenue,
Suite 215
Decatur, GA 30030
Telephone: (770) 775-0938
Fax: (470) 468-0070
Email: joseph@jacksonlaws.com

*ATTORNEY FOR PLAINTIFF*