## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ESTHER HILL, | **Case No.:** |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EXPERIAN INFORMATION SOLUTIONS, INC.; and ONEMAIN FINANCIAL GROUP, LLC, | 1. **FCRA, 15 U.S.C. § 1681,** *et seq.* |
| Defendants. | |

Plaintiff Esther Hill ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendant OneMain Financial Group, LLC ("OneMain"), and Defendant Experian Information Solutions, Inc. ("Experian") (referenced collectively as "Defendants").

## I.    INTRODUCTION

1.    Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* by Experian. Plaintiff contends Experian failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. §

1

1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.     Plaintiff's Complaint alleges that Experian also violated 15 U.S.C. § 1681, *et seq.,* by failing to reasonably investigate Plaintiff's consumer dispute, which resulted in Defendant's reporting inaccurate information about Plaintiff.

3.     Plaintiff's Complaint also arises from violations of the FCRA against Defendant OneMain for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Experian.

## II.     JURISDICTION AND VENUE

4.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.     Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District or is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.   **PARTIES**

6.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7.      Plaintiff is a natural person who resides in Atlanta, Georgia.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant OneMain is a financial institution engaged in the business of giving credit and collecting debt. OneMain is also a "furnisher," as contemplated by 15 U.S.C. § 1681s-2. Upon information and belief, OneMain is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. OneMain is headquartered at 100 International Drive, 16th Floor, Baltimore, MD 21202. OneMain can be served through its registered agent, CT Corporation System, located at 289 S Culver Street, Lawrenceville, GA 30046.

10.      Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

3

11.    Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f) of the FCRA.

12.    During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

13.    During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14.    Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

15.    Neither OneMain nor Experian maintained procedures reasonably adapted to avoid any such violations.

//

## IV.   **FACTUAL BACKGROUND**

16.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

17.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

18.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

19.    The FCRA is intended to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

20.    Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

21.     Experian regularly obtains consumer bankruptcy information to include in consumer reports.

22.     Experian's consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

23.     Experian obtains consumer information from various sources. Some consumer information is sent directly to Experian by furnishers, and other information is independently gathered by Experian from third party providers, vendors or repositories, like computerized reporting services such as PACER and Lexis-Nexis.

24.     Experian regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports it sells to third parties such as lenders.

25.     The diligence Experian exercises in uncovering and recording consumer bankruptcy filings is not replicated in its subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

26.     Experian's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

27.     Experian knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

28.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Experian) to make lending decisions.

29.     Those institutions also use FICO Scores and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in the consumer's consumer report, which is based on the amount of

reported debt, payment history, and dates of delinquencies contained in Experian's consumer reports.

30.   The information Defendants include in a consumer report contributes to the consumer's overall creditworthiness and determines their FICO Scores.

31.   FICO Scores are calculated using information contained in Experian's consumer reports.

32.   FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

33.   FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

     b.  The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

34.    Lenders also consider a consumer's debt-to-income ratio ("DTI") before deciding to extend credit or approve financing terms.

35.    DTI compares the total amount the consumer owes to the total amount the consumer earns.

36.    A consumer's income, however, is not included in his or her consumer report; only his or her amount of debt is.

37.    The higher the amount of reported debt that the consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for the consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

38.    A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

39.     Experian is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged.

40.     However, Experian also knows that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

41.     Further, Experian knows that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

42.     Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which Experian independently obtains consumer bankruptcy case information.

43.     Experian also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

44.     Despite the availability of accurate consumer information, Experian regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

45. Experian regularly publishes consumer information that conflicts with information provided by data furnishers to Experian, already included in its credit files, contained in public records that it regularly accesses, or sourced through its independent and voluntary efforts.

46. Experian routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

47. Experian knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Experian's own files.

48. Experian also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the

consumer was guilty of a bad act for which he did not deserve a discharge of a particular debt.[1]

49.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Experian for its inaccurate credit reporting following a Chapter 7 discharge.

50.    Thus, Experian is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Experian is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

<u>Allegations Specific to Credit Reporting of Plaintiff</u>

51.    Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about December 10, 2021, in the United States Bankruptcy Court for the Northern District of Georgia (Case No. 21-59234-pmb).

52.    Plaintiff received an Order of Discharge on or about March 21, 2022.

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

53.    Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

54.    Experian prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

55.    The allegations in this complaint against Defendants are based on the reporting by Experian in Plaintiff's August 2022 consumer disclosure.

56.    Experian obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Experian in Plaintiff's consumer report.

57.    In the Public Records section of Plaintiff's consumer report, Experian included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

58.    Experian also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

59.    Experian is aware that it is generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

60.    Experian should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

61.    Experian failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

62.    Experian inaccurately reported Plaintiff's OneMain Account (the "OneMain Account"), starting with 4183************ and opened in April 2018, which pre-dated Plaintiff's bankruptcy filing.

63.    The OneMain Account was discharged on or about March 21, 2022. Therefore, the OneMain Account should have been reported as discharged in bankruptcy.

64.    However, Experian inaccurately reported the OneMain Account as a "Charge-Off account."

14

65.   Specifically, Experian reported the OneMain Account with a status of "Closed. $4,680 written off," and with a notation that the OneMain Account was "Charge[d] Off as of Jan 2019, Dec 2018."

66.   Experian did not indicate that the OneMain Account was discharged in bankruptcy, despite reporting Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer report and indicating that other pre-bankruptcy accounts were "Discharged through in Bankruptcy Chapter 7" and carried zero-dollar balances.

67.   The status of "Charge Off" in the consumer credit reporting industry means that a debt may still be owed, especially where as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

68.   The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

69.   According to Experian, creditors typically charge off accounts after they have been delinquent; *i.e.*, gone without any scheduled payments for six months; a charge-off does not mean the consumer's debt is forgiven, as the consumer is still legally responsible for repaying the outstanding amount.

15

70.     Notably, the other national consumer reporting agencies, Equifax and Trans Union, did not inaccurately report the OneMain Account like Experian.

*Plaintiff's Dispute*

71.     On or about June 24, 2022, Plaintiff sent a certified letter to Experian, disputing its inaccurate reporting of the OneMain Account.

72.     The letter specifically advised Experian that the OneMain Account was discharged in bankruptcy.

73.     Upon information and belief, Experian received Plaintiff's dispute.

74.     Upon information and belief, Experian forwarded Plaintiff's disputes to OneMain within 5 business days of receipt.

75.     Upon information and belief, OneMain received Plaintiff's dispute.

76.     On or about August 8, 2022, Experian responded to Plaintiff's dispute, stating "[t]he company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute."

77.     Consequently, Experian continued to inaccurately report the OneMain Account with a status of "Closed. $4,680 written off."

78.     Experian did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded an automated dispute form to

16

OneMain, despite possessing independent information that indicated the OneMain Account was discharged.

79.    Although Experian could have verified that the OneMain Account was discharged through the same sources from which it receives consumer bankruptcy information, it neglected to do so.

80.    Rather than perform an investigation of Plaintiff's dispute based on reasonably available public records and information known by it, Experian merely parroted information furnished by OneMain that indicated the OneMain Account was not discharged in bankruptcy.

81.    Experian's failure to report the OneMain Account accurately after receiving Plaintiff's dispute is particularly egregious because Experian knew the information it reported was factually inaccurate and conflicted with information contained in its own records.

82.    OneMain failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian. OneMain failed, among other things, to review (or intentionally ignored) all relevant information regarding the dispute.

83.    Consequently, OneMain continued to furnish inaccurate data to Experian despite possessing information from which OneMain could have reported the OneMain Account accurately. OneMain's failure to provide Experian with

accurate information is particularly egregious as OneMain was notified of the inaccurate information through Plaintiff's dispute to Experian.

84.　OneMain and Experian reported inaccurate account statuses for the OneMain Account.

85.　OneMain and Experian failed to indicate that the OneMain Account was included/discharged in Chapter 7 Bankruptcy and instead inaccurately reported the account as a "Charge Off."

86.　Defendants' reporting of the OneMain Account is patently false/incorrect and therefore inaccurate.

87.　If not patently false, Defendants' reporting of the OneMain Account is materially misleading and therefore inaccurate.

88.　Plaintiff specifically notified Defendants that the OneMain Account was discharged, but Defendants rejected this specific notice.

*Plaintiff's Damages*

89.　Upon information and belief, had Defendants accurately reported the OneMain Account's status, Plaintiff's credit scores and/or DTI would have been better.

90.    Defendants' reporting of an additional $4,680 of debt which Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

91.    The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

92.    The inaccurate reporting by Defendants suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the OneMain Account.

93.    After Plaintiff's bankruptcy discharge, Plaintiff applied for credit with multiple creditors, including but not limited to Credit One Bank, Capital One, and Synchrony Bank, and was denied by each due to the inaccurate reporting of Defendants.

94.    Defendants' inaccurate reporting of the OneMain Account, along with additional information belonging to Plaintiff, was published to creditors by Defendants during the process of Plaintiff's credit applications.

95.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

96.    Plaintiff sustained actual monetary damages from the expense of certified mail tracking of Plaintiff's disputes to Experian.

97.    As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred related to Defendants' inaccurate reporting.

98.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

99.    Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild her credit.

## V.    COUNT I
### Experian's Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)

100.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

101.   The FCRA requires CRAs, like Experian, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

102.   In this case, Experian negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

103.   Experian independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

104.   When Experian procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

105.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Experian from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

106.   Experian knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

107.   Experian knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

21

108.   Additionally, Experian possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

109.   Despite knowledge of these legal obligations, Experian willfully and consciously breached its duties under the FCRA. Accordingly, Experian deprived Plaintiff of her rights under the FCRA.

110.   Experian had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

111.   Individual furnishers of account information also notified Experian of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled "discharged in bankruptcy" with zero-dollar balances.

112.   Yet Experian inaccurately reported the OneMain Account, which pre-dated Plaintiff's Chapter 7 Bankruptcy, as a "Charge-Off" account without any indication the OneMain Account was discharged or had a zero balance.

113.   Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when Experian knew or should have known the information it was

22

reporting is inaccurate, or otherwise contradicted by information known by Experian, reported to Experian, or reasonably available to Experian.

114.   Even after Plaintiff notified Experian of the inaccurate information it included in Plaintiff's credit file, Experian continued to inaccurately report the OneMain Account with an outstanding balance.

115.   Experian's inaccurate reporting was particularly egregious because it has the ability to independently confirm that the OneMain Account was discharged by reviewing its own records or accessing readily available public records.

116.   Experian therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, Experian possessed information confirming that the OneMain Account was discharged, including information concerning continued payments, and/or specific notice from Plaintiff.

117.   In around 2009, Experian implemented its own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols., Inc.*, No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

118.   Experian's bankruptcy scrub software identifies pre-petition accounts and makes assumptions about which accounts were discharged through the Chapter 7, even when the furnisher does not update the accounts as discharged.

119.   In other words, Experian's automated bankruptcy scrub assumes Experian's notice of a Chapter 7 discharge is in fact notice that a consumer's pre-petition accounts may be reporting inaccurately, and Experian will override data reported by a furnisher according to Experian's assumptions and algorithms.

120.   However, Experian has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations of certain types of pre-bankruptcy accounts in Experian's software programming of its automated "bankruptcy scrub" it has been employing for well over a decade.

121.   Experian also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the OneMain Account was discharged following Plaintiff's dispute, which information is reasonably available from the same sources Experian procures consumer bankruptcy information.

122.   Experian's violations of 15 U.S.C. § 1681e(b) were willful.

123.   Alternatively, Experian's violations of 15 U.S.C. § 1681e(b) were negligent.

124.   When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed

information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

125.   When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

126.   Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

127.   Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Experian also violated the FCRA by failing to perform a reasonable reinvestigation of the OneMain Account even after Plaintiff notified it of the inaccurate information in her credit file.

128.   Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

(a)   Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)    Failing to consider all relevant information while investigating Plaintiff's dispute.

(c)    Failing to include all relevant information when notifying OneMain of Plaintiff's dispute.

129.    Instead of reasonably reinvestigating Plaintiff's dispute, Experian did not respond to Plaintiff's dispute and continued to report the OneMain Account as a "Charge Off" account.

130.    Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

131.    Plaintiff suffers actual damages, including the above-referenced economic harm, a decreased credit score, loss of credit opportunities, credit denials, and other financial harm caused by Experian inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

132.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

133.    Experian is a direct and proximate cause of Plaintiff's damages.

134.    Experian is a substantial factor in Plaintiff's damages.

135.   Experian's acts, as described above, were done willfully and knowingly, or alternatively, were committed negligently.

136.   Therefore, Experian is liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## VI.   COUNT II
## OneMain's Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

137.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

138.   The FCRA requires furnishers of information like One Mani to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

139.   OneMain knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law. OneMain obtained or had available substantial written materials that apprised it of

its duties under the FCRA. Despite knowing these legal obligations, OneMain acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

140.   Plaintiff disputed the OneMain tradeline through Experian.

141.   Thereafter, Experian forwarded Plaintiff's dispute to OneMain, notifying OneMain that Plaintiff was disputing the information it had furnished about the OneMain Account.

142.   OneMain received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

143.   OneMain continues to furnish inaccurate information about Plaintiff to Experian, even though OneMain possessed all relevant information about the OneMain Account and the inaccuracy that Plaintiff disputed.

144.   The inaccurate OneMain Account materially and adversely affects Plaintiff's credit standing.

145.   On at least one occasion within the past two years, by example only and without limitations, Defendant OneMain violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian.

146.    OneMain violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)     Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b)     Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c)     Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)     Willfully and negligently failing to report to Experian that the disputed information is indeed inaccurate;

(e)     Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the

Plaintiff to Experian despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

147.   OneMain unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

148.   Plaintiff suffers actual damages, including the above-referenced economic harm, a decreased credit score, loss of credit opportunities, credit denials, and other financial harm caused by Experian inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

149.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

150.   OneMain is a direct and proximate cause, as well as a substantial factor, in causing damage and harm to Plaintiff.

151.   Consequently, OneMain is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law.

Additionally, Plaintiff is entitled to her attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)   Declaratory judgment that Experian violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

(b)   Declaratory judgment that OneMain violated the FCRA, 15 U.S.C. § 1681s-2(b);

(c)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e)   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f)   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(g)    Such other and further relief as this Honorable Court may deem just and

proper, including any applicable pre-judgment and post-judgment

interest, and/or declaratory relief.

## VIII.  JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 22nd day of May 2023.

**CONSUMER ATTORNEYS**

By: *s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 385021
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (602) 807-1525
Fax: (718) 715-1750
E: jdakroub@consumerattorneys.com
*Attorneys for Plaintiff Esther Hill*

32