**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

CALCHIP CONNECT, INC.,

        Plaintiffs,

    v.

EMRIT, INC. and ARUL MURUGAN,

        Defendant.

CIVIL ACTION NO._____

DEMAND FOR JURY TRIAL

## COMPLAINT IN CIVIL ACTION

CalChip Connect, Inc. ("CalChip"), through its undersigned attorneys, by this Complaint sets for a short and plain statement of its claims against Emrit, Inc. ("Emrit") and Mr. Arul Murugan ("Murugan") and allege as follows:

## NATURE OF THE ACTION

1.    This is an action for breach for Breach of Contract, Quantum Meruit, Unjust Enrichment, Fraudulent Misrepresentation, Negligent Misrepresentation, and Conversion relating to an agreement for the sale of goods between the parties named in the above caption.

1

## THE PARTIES

2.     Plaintiff, CalChip, is a Delaware corporation with its principal place of business at 59 Steamwhistle Drive, Warminster, Pennsylvania 18974.

3.     Defendant, Emrit, is a Georgia corporation with its principal place of business at 3333 Piedmont Road NE Suite 700, Atlanta, Georgia 30305.

4.     Defendant, Murugan, is an individual who, upon information and belief, is a resident of the State of Georgia. At all times mentioned herein, Murugan was an owner, executive, agent, servant, or employee of Emrit.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332 based on complete diversity of citizenship of the parties. CalChip's principal place of business is in Pennsylvania. Upon information and belief, Emrit is a citizen of the State of Georgia. The contracts at issue in this case were formed in Pennsylvania. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

6.     Venue is proper in this District pursuant to 27 U.S.C.A. § 1391 because the basis for this claim derives from the terms of a product supply

agreement between the parties (the "Product Supply Agreement") which was formed and performed in Pennsylvania.

## GENERAL ALLEGATIONS

7.     On information and belief, Emrit is a going concern that profits from the mining of cryptocurrency and other investment-related activities.

8.     Beginning on or about September 16, 2020, CalChip and Emrit entered into a series of integrated written agreements (the "Agreement") pursuant to which Emrit agreed to pay CalChip in return for provisioning services, shipment costs, and various Helium Network Token mining devices and equipment ("Units").

9.     Murugan enticed CalChip into a financial arrangement whereby CalChip procured, provisioned, and shipped IoT hardware to Emrit's end-user customers.

10.    To secure their arrangement, Murugan assured CalChip that Emrit and its investors were financially viable and capable of paying Emrit's obligations as they became due.

11.    CalChip relied on Murugan's assurances to its detriment.

12.     CalChip expended significant resources and substantially changed its position in order to accommodate an enormous demand for custom goods from Emrit.

13.     Under the Agreement, all goods sold to Emrit by CalChip were sold "as-is."

14.     Further, CalChip assigned all product warranties to Emrit upon the transaction of sale for all Units conveyed to Emrit.

15.     On or about November 11, 2021, CalChip and Emrit entered an agreement called the "Product Supply Agreement."

16.     Paragraph 8 of the Product Supply Agreement, and the companies' course of dealing and course of performance, contemplate an inspection period under which Emrit has fourteen (14) days to inspect the product for defect or deficiency and to notify CalChip.

17.     No such notice was provided to CalChip for any of the products delivered to Emrit for which payment is past due.

18.     Further, if Emrit were to assert that some of the product delivered was defective, that issue would be properly lodged against the manufacturer of the product and not against CalChip.

4

19.     In the absence of notice and a timely rejection, Emrit agreed that all products purchased were non-cancelable and non-returnable.

20.     Under its business model, Emrit purchased the IoT hardware for its end-user customers from CalChip.

21.     Emrit did not take physical possession of the goods but instead assumed the cost of shipment to its end customer and assumed any risk of loss.

22.     To secure the arrangement, Murugan assured CalChip that Emrit and its investors were financially viable and capable of paying its obligations as they became due.

23.     On September 16, 2021, Emrit issued Sales Order (SO-000009) to CalChip for the purchase of two thousand (2,000) RAK Hotspot Miners for a total cost of $499,980. On October 30, 2020, Emrit paid $499,980.

24.     On September 23, 2021, Emrit paid $80,000 for CalChip provisioning services for the two thousand (2,000) Units provisioned by CalChip on behalf of Emrit pursuant to order SO-000009.

25.     On February 5, 2021, CalChip and Emrit entered into Sales Order (SO-000091) for the sale of six thousand (6,000) RAK Hotspot Miners for a total cost of $1,560,000.

26.     With assurances from Murugan that all goods and services would be timely paid, Sales Order (SO-000091) was received by CalChip from an entity called IoT Gateway Capital LLC, which was to purchase the goods and services on behalf of Emrit.

27.     Upon information and belief, Murugan was an owner, member, manager, executive, officer, employee, or affiliate of IoT Gateway Capital LLC.

28.     On September 7, 2021, Emrit paid $1,500,000 towards the purchase price of goods and services ordered pursuant to SO-000091, and on September 23, 2021 the balance of $60,000 was paid by Emrit.

29.     On September 23, 2021, Emrit paid $240,000 for CalChip provisioning services of six thousand (6,000) Units provisioned by CalChip on behalf of Emrit pursuant to order SO-000091.

30.     On April 16, 2021, CalChip and Emrit entered into Purchase Order 01 / Cal Chip / 2021, also referred to Sales Order SO36 ("SO36"), for 10,000 of Helium Compatible RAK Miner Gateway Units for a total price of $3,278,137.50.

31.     With assurances from Murugan that all goods and services would be timely paid, Purchase Order 01 / Cal Chip / 2021, also referred to Sales Order SO36, was received by CalChip from an entity called HNT Multi Strategy Fund LLC, which was to purchase the goods and services on behalf of Emrit.

6

32.     Upon information and belief, Murugan was an owner, member, manager, executive, officer, employee, or affiliate of HNT Multi Strategy Fund, LLC.

33.     On or about September 30, 2021, CalChip promptly procured, provisioned and shipped 1,294 Helium Compatible RAK Miner Gateway Units to Emrit end user customers pursuant to Purchase Order 01 / CalChip / 2021, also referred to as Sales Order SO36.

34.     CalChip issued Invoice 10130 to Emrit in the amount of $434,230 in connection with Sales Order SO36.

35.     To date, Emrit has not paid any of the balance due under Invoice 10130.

36.     On May 14, 2021, Emrit agreed to purchase 8,000 Helium Compatible RAK Miner Gateway Units from CalChip under Purchase Order Cal Chip / 002 / 2021 at a rate of $313.50 per unit, for a cost to Emrit, for product and provisioning services, of $2,828,000.

37.     Pursuant to Purchase Order Cal Chip / 002 / 2021, CalChip promptly procured, provisioned, and shipped 2,301 Helium Compatible RAK Miner Gateway Units to Emrit end user customers.

7

38.     On December 31, 2021, pursuant to Purchase Order Cal Chip / 002 / 2021, CalChip issued Invoice 10131 for 2,301 Helium Compatible RAK Miner Gateway Units to Emrit in the total amount of $813,883.50.

39.     To date, Emrit has failed to make any payment towards Invoice 10131.

40.     On November 24, 2021, CalChip and Emrit entered into the Product Supply Agreement under which CalChip is referred to as "Supplier" and Emrit is referred to as "Purchaser".

41.     Paragraph 1 of the Product Supply Agreement states: "Purchaser wishes to purchase from Supplier the Supplier products listed in Exhibit A attached hereto and incorporated herein by reference (as such list may be amended by mutual written agreement of the parties from time to time, (the "Products"), as reflected in purchase orders from time to time in accordance with the provisions of this Agreement."

42.     Paragraph 4 of the Product Supply Agreement states: "Purchaser is responsible for all realized shipping costs Supplier incurs when shipping the Products. Supplier will bill Purchaser for the actual cost of delivering the Product(s) to Purchaser's desired employees, agents, or representatives."

43.     Paragraph 7 of the Product Supply Agreement states: "Form of Delivery. Subject to Section 8 below title and risk of loss to the Products shall pass to Purchaser immediately upon delivery F.O.B. Supplier's warehouse in Warminster, Pennsylvania."

44.     Paragraph 9 of the Product Supply Agreement states: "Payment Terms. Method of Payment. Purchaser shall make payments for Products purchased under this Agreement in full without deduction or offset in U.S. Dollars based on the payment schedule listed in Exhibit C."

45.     On March 3, 2022, Emrit purchased 17 Helium Compatible RAK Miner Gateway Units from CalChip under Purchase Order Cal Chip / 002 / 2021 at a rate of $313.50 per unit, for a total price of $5,329.50.

46.     Pursuant to Purchase Order Cal Chip / 002 / 2021, CalChip promptly procured, provisioned and shipped 17 Helium Compatible RAK Miner Gateway Units to Emrit end user customers.

47.     On March 31, 2022, pursuant to Purchase Order Cal Chip / 002 / 2021, CalChip issued Invoice 10132 for 17 Helium Compatible RAK Miner Gateway Units to Emrit in the total amount of $5,329.50.

48.     To date, Emrit has failed to make any payment towards Invoice 10132.

9

49.     On January 31, 2022, Emrit purchased 144 Kerlink iStation EU Outdoor Miners and 4,138 Finestra Indoor Units from CalChip under the terms of the Product Supply Agreement at a rate of $685 per unit for the Kerlinks and $675 per unit for the Finestras, for a total price of $1,445,895.

50.     Pursuant to the Product Supply Agreement, CalChip issued to Emrit Invoice 10111 in the amount of $1,445,895.

51.     To date, Emrit has not paid any of the balance owed under Invoice 10111.

52.     On June 21, 2021, Emrit entered into an agreement represented by Invoice 10139, dated June 30, 2021, to pay for the domestic and international shipping of Units at the price of $26,414.75. To date, Emrit has failed to make a payment towards the balance due for this invoice.

53.     Under the Product Supply Agreement, Emrit agreed to pay CalChip for shipping any and all Units.

54.     Accordingly, CalChip issued to Emrit Invoice 10112 in the amount of $75,160.54 for international shipping of all Units shipped between October 2021 and December of 2021. To date, Emrit has failed to make any payment towards the balance due for this invoice.

55.     CalChip issued to Emrit Invoice 10135 in the amount of $69,256.52 for domestic shipping of all Units shipped from October 2021 to December of 2021. To date, Emrit has failed to make a payment towards the balance due for this invoice.

56.     CalChip issued to Emrit Invoice 10136 in the amount of $43,222.53 for international shipping of all Units shipped from January 2022 to March of 2022. To date, Emrit has failed to make a payment towards the balance due for this invoice.

57.     CalChip issued to Emrit Invoice 10137 in the amount of $218,701.69 for domestic shipping of all Units shipped from January 2022 to March of 2022. To date, Emrit has failed to make a payment towards the balance due for this invoice.

58.     Emrit is in default in the amount of $3,132,094.03 for payment for the aforementioned deficiencies which are summarized below:

      a.  Invoice 10130: $434,230

      b.  Invoice 10131: $813,883.50

      c.  Invoice 10132: $5,329.50

      d.  Invoice 10111 (Finestra Indoor Units): $1,396,575

e.  Invoice 10111 (Kerlink iStation EU Outdoor Miners & Finestra Indoor Units): $49,320

f.  Invoice 10139: $26,414.75

g.  Invoice 10112: $75,160.54

h.  Invoice 10135: $69,256.52

i.  Invoice 10136: $43,222.53

j.  Invoice 10137: $218,701.69

59.  Emrit agreed to pay outstanding invoice balances on a net 30 basis.

60.  Pursuant to the terms of the Agreement and the Product Supply Agreement, Emrit agreed to pay interest and fees for delinquent payment.

61.  Emrit functions as an alter ego of Murugan.

62.  On information and belief, Emrit has generated more than $200 million from its business operations.

63.  Murugan has been personally enriched by Emrit's cryptocurrency mining operation.

64.  Murugan unilaterally invested cash and/or cryptocurrency from HNT Fund into Emrit.

65.  Murugan abused the privilege of his office and commingled funds held by HNT Fund when he invested those funds in Emrit.

66.     Murugan represented to CalChip that Emrit was financially viable and capable of paying its obligations as they came due.

67.     Murugan represented that IoT Gateway and HNT Fund were investor entities with no relationship to Emrit.

68.     Murugan failed to disclose the relationship between IoT Gateway, HNT Fund, Emrit, and himself.

## CLAIMS
## COUNT I – BREACH OF CONTRACT
## CALCHIP v. EMRIT

69.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

70.     The Agreement and the Product Supply Agreement constitute binding and enforceable contracts by and between CalChip, on the one hand, and Emrit, on the other hand.

71.     CalChip performed and discharged all of its obligations under the Agreement, including attempting in good faith to verify and correct any defects for which CalChip would be responsible.

72.     Emrit breached the Agreement by, inter alia, failing to perform its obligations to pay CalChip for products and services rendered.

73.     Emrit breached Paragraphs 1, 4, and 9 of the Product Supply Agreement by failing to pay for product, services and shipping costs.

74.     As a direct result of Emrit's breaches, CalChip has incurred damages in excess of $3,132,094.03.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant Emrit in the amount of $3,132,094.03, and award costs, interest and attorney fees, as well as punitive and/or exemplary damages.

## COUNT II – QUANTUM MERUIT
### CALCHIP v. EMRIT

75.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

76.     From about October 7, 2020, until the present, at the request of Emrit and in reliance on Emrit's promise to pay CalChip, CalChip performed services for, and provided materials and equipment to, Emrit by sending to Emrit the products described in Sales Orders and the Product Supply Agreement.

77.     Such services were performed, and such materials and equipment were provided for the benefit of Emrit to resell products for its profit.

78.     The exact reasonable value of the work performed and materials and equipment provided that remains due, owing or unpaid by Emrit is $3,132,094.03.

14

79.     CalChip has made demand upon Emrit for payment of reasonable value of said services and materials and equipment, but Emrit has failed and refused to make that payment.

80.     As a result of Emrit's failure to pay, CalChip has incurred damages in excess of $3,132,094.03.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant Emrit in the amount of $3,132,094.03, and award costs, interest and attorney fees, as well as punitive and/or exemplary damages.

## COUNT III—UNJUST ENRICHMENT
## CALCHIP v. EMRIT

81.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

82.     Emrit is in possession of valuable consideration received in the form of services, materials and equipment provided by CalChip in connection with the Agreement.

83.     Emrit has refused to pay CalChip reasonable value for these services, materials and equipment.

84.    Emrit has been unjustly enriched by the use of the fruits of these services, and these materials and equipment.

85.    As a result of Emrit's unjust enrichment, CalChip has incurred damages in excess of $3,132,094.03.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant Emrit in the amount of $3,132,094.03, and award costs, interest and attorney fees, as well as punitive and/or exemplary damages.

## COUNT IV—FRAUDULENT MISREPRESENTATION
### CALCHIP v. MURUGAN

86.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

87.    Murugan, as a corporate executive of Emrit, had a duty to act in the best interests of the company.

88.    Murugan made false and misleading statements to induce CalChip to enter into transactions with Emrit, specifically, for the sale of goods and services to Emrit for payment.

89.    Murugan knew or should have known that the statements were false and misleading.

16

90.   CalChip relied on Murugan's false and misleading statements and entered into the transaction.

91.   CalChip suffered damages as a result of Murugan's fraudulent misrepresentations.

92.   Murugan's conduct was intentional, willful, and/or reckless.

93.   As a direct and proximate result of Defendant's fraudulent misrepresentations, Plaintiff has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant Murugan in the amount of $3,132,094.03, and award costs, interest and attorney fees, as well as punitive and/or exemplary damages.

## COUNT V—NEGLIGENT MISREPRESENTATION
### CALCHIP v. MURUGAN

94.   Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

95.   Murugan, as a corporate executive of Emrit, had a duty to act in the best interests of the company.

96.     Murugan made statements to CalChip regarding the payment for goods and services rendered to Emrit.

97.     Murugan negligently made these statements without reasonable grounds for believing them to be true.

98.     CalChip relied on Murugan's negligent misrepresentations and entered into the transaction.

99.     CalChip suffered damages as a result of Murugan's negligent misrepresentations.

100.    Murugan breached his duty to act with reasonable care in making statements to CalChip.

101.    As a direct and proximate result of Murugan's negligent misrepresentations, CalChip suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant Murugan in the amount of $3,132,094.03, and award costs, interest and attorney fees, as well as punitive and/or exemplary damages.

## COUNT VI—CONVERSION
## CALCHIP v. MURUGAN

102.   Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

103.   Murugan, as a corporate executive of Emrit, intentionally and wrongfully took possession of CalChip's property, specifically funds owed to CalChip for goods and services rendered to Emrit.

104.   Murugan did not have a lawful right to take possession of CalChip's property.

105.   CalChip suffered damages as a result of Murugan's conversion of CalChip's property.

106.   Murugan's conduct was intentional, willful, and/or reckless.

107.   Murugan's conversion of CalChip property was a direct and proximate cause of CalChip's damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendants, jointly and severally, in the amount of $3,132,094.03, and award costs, interest and attorney fees, as well as punitive and/or exemplary damages.

## COUNT VII—UNJUST ENRICHMENT
## CALCHIP v. MURUGAN

108.   Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

109.   Murugan is in possession of valuable consideration received in the form of services, materials and equipment provided by CalChip in connection with the Agreement.

110.   Murugan has refused to pay CalChip reasonable value for these services, materials and equipment.

111.   Murugan has been unjustly enriched by the use of the fruits of these services, and these materials and equipment.

112.   As a result of Murugan's unjust enrichment, CalChip has incurred damages in excess of $3,132,094.03.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant Murugan in the amount of $3,132,094.03, and award costs, interest and attorney fees, as well as punitive and/or exemplary damages.

## DEMAND FOR TRIAL BY JURY

113.   CalChip hereby demands a trial by jury with respect to all issues raised in this action.

**WHEREFORE**, CalChip demands judgment as follows:

a) On its first claim, damages in an amount to be determined at trial, but in no event less than $3,132,094.03, plus interest.

b) On its second claim, damages in an amount to be determined at trial, but in no event less than $3,132,094.03, plus interest.

c) On its third claim, damages in an amount to be determined at trial, but in no event less than $3,132,094.03, plus interest.

d) On its fourth claim, disgorgement in an amount to be determined at trial, but in no event less than $3,132,094.03, plus interest.

e) On its fifth claim, damages in an amount to be determined at trial, but in no event less than $3,132,094.03, plus interest.

f) On its sixth claim, damages in an amount to be determined at trial, but in no event less than $3,132,094.03, plus interest.

g) On its seventh claim, damages in an amount to be determined at trial, but in no event less than $3,132,094.03, plus interest.

h) Plaintiff recover an award for punitive damages as set forth in greater detail above.

i) Plaintiff recover its reasonable attorney's fees and costs as set forth in greater detail above.

j) Plaintiff be granted such other, different, and additional relief as the Court deems just and proper.

Respectfully Submitted this 23rd day of May, 2023.

/s/ T. Lockett
D. Tennell Lockett, Esq.
Bar No. 455547
tennell.lockett@townsendlockett.com

**TOWNSEND & LOCKETT, LLC**
1100 Peachtree Street, NE #950
Atlanta, Georgia 30309
(404) 870-8506 (phone)

*Attorney for Plaintiff CalChip Connect, Inc.*