# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**



Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Ave
Atlanta, GA 30303-9913

Date: March 01, 2023

Ebony Henderson
3637 Mason Ridge Drive
Winston, GA 30187

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

> **Appeals Council**
> **5107 Leesburg Pike**
> **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Ebony Henderson (BNC#: 21GT768D70181)                          Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  My decision could also be used to deny a new application for benefits if the facts and issues are the same.  If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

Ebony Henderson (BNC#: 21GT768D70181)                                    Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (866) 331-2318.

SOCIAL SECURITY
908 S CARROLL RD
VILLA RICA, GA 30180-2556

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

Brendan Flanagan
Administrative Law Judge

Enclosures:
Decision Rationale

cc:     Kathleen Marie Flynn
        KATHLEEN M FLYNN LLC
        315 W PONCE DE LEON AV
        SUITE 940
        DECATUR, GA 30030

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

**IN THE CASE OF**                                    **CLAIM FOR**

                                                     Period of Disability and Disability Insurance
                                                     Benefits
Ebony Henderson
(Claimant)

                                                     21GT768D70181
(Wage Earner)                                        (Beneficiary Notice Control Number)
                                                     *Social Security Number removed for your protection*

## JURISDICTION AND PROCEDURAL HISTORY

## JURISDICTION AND PROCEDURAL HISTORY

On April 9, 2021, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 6, 2019.  The claim was denied initially on March 15, 2022, and upon reconsideration on June 1, 2022.  Thereafter, the claimant filed a written request for hearing received on July 28, 2022 (20 CFR 404.929 *et seq.*).  On December 1, 2022, the undersigned held an online video hearing due to the circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. The claimant participated by online video.  The claimant agreed to appear by online video before the hearing and confirmed such agreement at the start of the hearing.  The claimant's primary representative is Attorney Kathleen Marie Flynn; however, Attorney Erica Dempsey represented the claimant at the hearing.  Marcia H. Schulman, an impartial vocational expert, also appeared and testified at the hearing.

If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 404.935(a)). Pursuant to 20 CFR 404.935(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date.  The undersigned

See Next Page

Administrative Law Judge finds that the requirements of 20 CFR 404.935(b) are satisfied and admits this evidence into the record.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met.  The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2021 (hereinafter "the date last insured").  Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant was not under a disability within the meaning of the Social Security Act from September 6, 2019, through the date last insured.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575).  If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512 and 404.1560(c)).

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After careful consideration of the entire record, the undersigned makes the following findings:

See Next Page

**1.    The claimant last met the insured status requirements of the Social Security Act on September 30, 2021.**

**2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 6, 2019, through her date last insured of September 30, 2021 (20 CFR 404.1571 *et seq.*).**

**3.    Through the date last insured, the claimant had the following severe impairments: posttraumatic stress disorder (PTSD), anxiety disorder, major depressive disorder, alcohol use disorder, degenerative disc disease, and myofascial pain syndrome (20 CFR 404.1520(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

The claimant has also been diagnosed with hypothyroidism, degenerative joint disease in the toes and knees, lumbar facet arthropathy, and hand pain.  However, the record indicates that her hypothyroidism has been well-managed and associated with few, if any, symptoms.  In fact, in October 2019, the claimant's endocrinologist confirmed that the claimant had not experienced any recurrent cancer, and she "clinically does not seem hypothyroid."  Additionally, x-rays of the feet have only shown mild degenerative joint disease in the first MTP joints, bilaterally. Similarly, x-rays of the knees have only revealed mild degenerative changes.  Moreover, mild degenerative facet arthropathy has been identified at L4-5 and L5-S1.  While the claimant has also complained of hand pain, diagnostic imaging of the right hand and wrist were generally normal in March 2020 (Exhibit B15F).  Consequently, the undersigned finds that these impairments are non-severe in accordance with SSR 85-28 because the medical and other evidence regarding these impairments establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work.

**4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The claimant's impairments do not meet the criteria of any listed impairment described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). Moreover, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence otherwise establish medical equivalency.

Special consideration has been given to Listing 1.15 for Disorders of the skeletal spine resulting in compromise of a nerve root, Listing 1.16 for Lumbar spinal stenosis resulting in compromise of the cauda equina, and Listing 1.18 for Abnormality of a major joint in any extremity, as required by regulation (20 CFR 404.1526).

See Next Page

The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15.  In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant had a mild limitation.  In her function report, the claimant reported that she requires assistance with grooming, she is no longer able to drive, and no longer able to manage finances (Exhibit B8E).  However, during the November 2021 consultative psychological evaluation, the claimant confirmed ability to execute her daily routine independently (Exhibit B18F, page 4).  Likewise, records from November 2021 show that the claimant has been managing her mother's medical appointments and driving her to them multiple times per day (Exhibits B17F, page 21; B21F, page 37).  The record also indicates that she was homeschooling her 16-year-old daughter and caring for her elderly parents (Exhibit B15F).

In interacting with others, the claimant had a moderate limitation.  Treatment notes show that the claimant experiences irritability due to depression, and she limits her interaction with others due to PTSD (Exhibit B15F).  Treatment notes show that she has presented with excess irritability.  However, the claimant acknowledged that she tries to be intentional so that her irritability does not negatively impact those around her (Exhibit 21F).  The claimant also stated in her function report that she limits social interaction to immediate family members (Exhibit B8E).

With regard to concentrating, persisting or maintaining pace, the claimant had a mild limitation.  The claimant has endorsed limited ability to pay attention as well as inability to finish what she starts (Exhibit B8E).  However, mental status examinations have corroborated linear and logical thought process, adequate attention, and intact memory (Exhibits B15F, B16F).  Similarly, a mental status examination during the November 2021 consultative psychological evaluation corroborated normal amount and rate of thought production and logical thought processes.  The claimant's memory and concentration also appeared to be intact (Exhibit B18F).

As for adapting or managing oneself, the claimant had experienced a moderate limitation.  The claimant reported inability to handle stress and changes in routine (Exhibit B8E).  While she has exhibited some issues with impulse control during mental status examinations, the claimant has exhibited good insight and judgment (Exhibits B15F, B16F).  Nevertheless, the undersigned notes that the claimant has struggled to manage her alcohol use disorder, as she repeatedly reported drinking multiple times per week through at least the date last insured (Exhibits B15F, B16F, B18F).

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.

The undersigned has also considered whether the paragraph C criteria are satisfied.  In this case, the evidence fails to establish the presence of the paragraph C criteria.  The evidence does not reveal the claimant has a medically documented history of chronic affective disorder of at least two years' duration that has caused more than a minimal limitation in her ability to perform basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, or that she has experienced repeated episodes of decompensation, has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or changes in the environment has been predicted to cause her to decompensate, or that she has a current history of one or more years' inability to function outside a highly supportive arrangement.  Also, the claimant has required no psychiatric hospitalizations, has not attended or been referred to a partial hospitalization program nor has she resided in a halfway house or in any other highly supportive living arrangement due to a medically documented.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b).  The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can sit, stand, and walk 6 hours each in an 8 hour workday.  She can perform unlimited pushing and pulling within the limits for lifting and carrying.  She can occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid exposure to hazards, moving mechanical parts, and unprotected heights.  Socially, the claimant can withstand no more than occasional interaction with the public, crowds, coworkers, and supervisors.  With regard to adaptation, she is limited to no more than occasional changes in the routine work setting.  She cannot perform fast paced high production demands, such as work that has defined hourly quotas.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

See Next Page

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant asserts that she suffers from debilitating migraines, PTSD, depression, and spinal stenosis.  She stated that she is limited in her ability to perform any outdoor activities.  She also states that she is unable to attend many social events with family or friends due to her inability to sit, stand, or walk for long periods as well as her anxiety and PTSD (Exhibit B8E).

During the December 2022 hearing, the claimant testified that her condition has worsened over the past three years.  She endorsed reduced ability to lift and carry objects due to pain, and she stated that she drops things.  She also noted reduced ability to sit, stand, and walk due to pain.  Additionally, the claimant testified that her psychotropic medications cause brain fog.  She purported that her husband and daughter currently perform all of the household tasks.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent.  The longitudinal medical evidence of record does not fully support the claimant's allegations of disability since the alleged onset date of September 6, 2019. While the treatment notes show that the claimant has some functional limitations due to impairments, her symptoms do not prevent her from performing some basic work activity at light and less exertional levels.  Specifically, the evidence confirms a history of PTSD, anxiety disorder, major depressive disorder, alcohol use disorder, degenerative disc disease, and myofascial pain syndrome.  However, the claimant's impairments had not been disabling through the date last insured.

The record documents complaints of neck, back, and shoulder pain as well as back pain radiating into the right leg.  Treatment notes show that the claimant's pain has been treated conservatively with pain medication, stretch exercises, TENS unit, lumbar branch block, and trigger point injections (Exhibits B15F, pages 99 and 109; B17F, page 65; B21F, page 77).  X-rays of the thoracic and lumbar spine have revealed merely mild degenerative disc disease at C5-6 andC6-7 with disc space narrowing, osteophytosis and endplate sclerosis (Exhibit B15F, page 23).  A physical examination has demonstrated tenderness and slightly limited range of motion in the cervical spine as well as tenderness and some decreased range of motion in the back.  While her cadence was slowed, the claimant's gait has been described as normal and straight leg raise testing was negative (Exhibits B15F, pages 167, 205; B17F, pages 76 and 85; B21F, pages 39,

167).  Moreover, an MRI of the lumbar spine in August 2021 confirmed merely mild findings (Exhibits B17F, page 73; B21F, pages 39-40).  The undersigned notes that the claimant requested that she be prescribed a cane after she slipped and fell; however, this did not occur until October 2021, which is after the date last insured (see Exhibit B17F, page 49).

The record reflects that the claimant carries a diagnosis of PTSD and depressive disorder.  Treatment notes show that the claimant called a suicide prevention hotline in March 2021.  Thankfully, the clinical impression and level of suicide risk at that time was moderate to low risk.  Moreover, the claimant acknowledged that she did not have a suicide plan (Exhibit B15F, page 59).  Of note, chronic pain and alcohol use disorder were reported during the call.  In fact, the claimant admitted that she was using alcohol daily and declined resources for alcohol use support (Exhibit B15F, page 61).  Other evidence of record corroborates elevated alcohol use with two to three alcoholic beverages daily (Exhibits B15F, pages 67, 73, 91; B16F, page 15; B18F, page 4; B21F, page 44).  Despite her reported suicidal ideations, the claimant stated that she was homeschooling her 16-year-old as well as caring for her elderly parents.  The claimant committed to participating in activities/communication in an effort to reduce her suicidal thoughts (Exhibit B15F, page 61).

Mental status examinations have corroborated full orientation, normal speech, normal motor activity, appropriate affect, linear and logical thought process, normal thought content without perceptual delusions or hallucinations, good insight and judgment, good memory, fair impulse control, and adequate attention and concentration with good functional interactions (Exhibits B15F, pages 67, 73, 93; B16F, page 20; B17F, page 93; B22F, page 29).  Treatment records also denote some improvement of depressive and PTSD-related symptoms with psychotropic medication.  Moreover, contrary to the allegations, no persistent side effects were reported (Exhibits B15F, pages 67, 73; B21F, page 44; B22F, page 30).

Consultative evaluating psychologist Rebecca Blakeman, PhD conducted a psychological evaluation in November 2021.  Dr. Blakeman noted that the information the claimant provided during the evaluation was often vague – her description of her irritability and homicidal ideations – and contradictory – stated she only eats one slice of bread with hummus per day but noted stable weight (Exhibit B18F, page 3).  after which she stated that the results of the evaluation were suggestive of PTSD, depression and considerable irritability.  Dr. Blakeman noted that memory problems did not appear to be at a level consistent with a cognitive disorder.  She further assessed that the claimant might be unmotivated to seek employment.  Nevertheless, Dr. Blakeman opined that the claimant might be prone to experiencing irritability if placed in a work setting.  She stated that the claimant appeared capable of acquiring and using new information and was expected to be able to understand and follow verbal directions.  She further noted that the claimant might have difficulty interacting with others; she might be prone to irritability and arguing, particularly if given negative feedback or if under stress.  Dr. Blakeman stated that memory and concentration were expected to be adequate for at least simple job tasks.  However, production norms might trigger anxiety and irritability (Exhibit B18F, page 6).

Based on the objective medical findings of record, the claimant's impairments would result in work-related restrictions consistent with the residual functional capacity assessment provided above.

See Next Page

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings.

The residual functional capacity conclusions reached by State Disability Determination Services medical consultants S. Jessee, MD, R. Rubin, MD, N. Woodruff, PhD, and A. Thaxton-Brooks, MD also support a finding of "not disabled" (Exhibits B3A, B5A). Although those medical consultants were non-examining, and therefore their opinions do not as a general matter deserve as much consideration as those of examining or treating sources, those opinions do deserve some consideration, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision). The State agency medical consultants' opinions are supported by specific reasoning regarding the claimant's residual functional capacity showing that these opinions were grounded in the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations. Therefore, the undersigned finds these opinions persuasive.

The medical opinions provided by Deauna Webb, PsyD in January 2018 and Nary Motahar, MD in January 2018 and November 2022 are not persuasive because they are unpersuasive and are not consistent with the evidence. The manner in which they were completed renders them unreliable and unpersuasive (Exhibits B5F, B6F, B24F). The claimant testified that Dr. Motohar filled out the disability forms in front of the claimant after "asking every question on the form." In addition, the medical source statement forms completed by Dr. Webb were filled out in front of the claimant as Dr. Webb asked questions from the forms. The undersigned notes that the medical source statement completed by Dr. Webb in January 2018 is not entirely disabling. Moreover, the medical source statements completed by Dr. Motahar are based on subjective complaints of pain and do not reference any clinical findings such as examinations or diagnostic imaging to support the restrictions reported. In fact, Dr. Motahar incorrectly states that the claimant was diagnosed with arachnoiditis; there is no evidence of such a diagnosis in the records. The manner in which the forms were  completed renders them unreliable as the information provided in the forms is not the product of the treatment provider's independent judgment but rather the claimant's subjective reports. The undersigned notes further that the severe limits in the opinions are not consistent with the evidence, including mild radiographic imaging.

Dr. Blakeman's opinion is persuasive (Exhibit B18F). Dr. Blakeman's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the claimant's case record.

Letters provided by treating psychiatrist Kalpana Prasad, MD in February 2018 and June 2019 do not provide a medical opinion in accordance with 20 CFR 404.1513a(2) (Exhibits B7F, B8F). Nevertheless, the letter has been given great consideration because it documents an essentially normal mental status examination, which is consistent with claimant's other mental health records.

See Next Page

The record also includes Department of Veterans Affairs' disability rating of 100 percent (Exhibit B22F).  The disability determination processes utilized by the Department of Veterans Affairs and the Social Security Administration are fundamentally different. Department of Veterans Affairs does not make the same function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. In fact, their procedures for assessing inconsistencies are quite different from the Social Security Administration's process. Thus, a disability rating by the Department of Veterans Affairs is of less probative value in these proceedings, which are using a different standard to determine disability. Further, statements of disability are an issue reserved to the Commissioner. That said, the undersigned has fully considered the record of evidence from the Department of Veterans Affairs resulting in those findings in assessing the claimant's residual functional capacity.

The undersigned carefully considered lay witness statements pursuant to Social Security Ruling 16-3p. Specifically, the claimant's husband completed a third-party function report (Exhibit B7E). With respect to the third-party report, the undersigned has given it some consideration. However, since the claimant's husband is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms, the accuracy of the reports is questionable. Additionally, the claimant's husband cannot be considered disinterested third party witness whose reports would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.

In sum, the above residual functional capacity assessment is supported by a preponderance of evidence gleaned from statements of record, testimony and medical evidence of record from treating sources, medical consultants and state agency physicians. The claimant has impairments that cause significant limitations, but considering treating and examining source opinions, limitations are not of a severity to preclude ability to meet demands of basic work activities and not contrary to a finding the claimant has the residual functional capacity for work at the level assigned.

**6.   Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a communication technician (DOT #828.261-022, medium, SVP 7) and a supervisor electronic system maintenance (DOT #828.161-010, light but heavy as performed, SVP 8).  As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance and was performed within the relevant period. Based on the hypothetical given, the vocational expert opined the individual would be unable to perform past relevant work.  The undersigned concurs with the vocational expert and finds that the claimant is unable to perform past relevant work as actually or generally performed.

See Next Page

**7.    The claimant was born on July 20, 1975 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).**

**8.    The claimant has at least a high school education (20 CFR 404.1564).**

**9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as:

| Job Title | DOT Number | Exertional Level | Skill Level | Job Numbers National Economy |
|---|---|---|---|---|
| Garment folder | 789.687-066 | Light | SVP 2 | 78,000 |
| Mail clerk | 209.687-026 | Light | SVP 2 | 69,000 |
| Garment sorter | 222.687-014 | Light | SVP 2 | 42,000 |

Pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the Dictionary of Occupational Titles and, to the extent that the vocational expert's testimony was beyond the

scope of the Dictionary of Occupational Titles, the vocational expert relied on experience, education, and training.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from September 6, 2019, the alleged onset date, through September 30, 2021, the date last insured (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on April 9, 2021, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through September 30, 2021, the last date insured.

/s/ *Brendan Flanagan*

Brendan Flanagan
Administrative Law Judge

March 01, 2023

Date

# LIST OF EXHIBITS

### Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1A | ALJ Hearing Decision | | 2019-08-30 | 31 |
| Y13 | B2A | AC Denial | | 2019-12-30 | 6 |
| Y13 | B3A | DDET2: MDI/PRT/MRFC signed by S Jessee MD, R Rubin | | 2022-03-14 | 7 |
| Y13 | B4A | Disability Determination Transmittal-DIB | | 2022-03-15 | 1 |
| Y13 | B5A | DDET2:MDI/PRT/MRFC signed by Nancy Woodruff PhD, RFC/PRFC signed A Thaxton-Brooks MD | | 2022-05-31 | 11 |
| Y13 | B6A | OQR Assessment-A Thaxton-Brooks MD | | 2022-05-31 | 6 |
| Y13 | B7A | Disability Determination Transmittal-RCDIB | | 2022-06-01 | 1 |

### Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1B | Fee-Authorization to Charge/Collect Fee | | 2021-04-09 | 1 |
| Y13 | B2B | SSA-1696 - Claimant's Appointment of a Representative | | 2021-04-09 | 4 |
| Y13 | B3B | T2 Notice of Disapproved Claim | | 2022-03-15 | 5 |
| Y13 | B4B | Request for Reconsideration | | 2022-04-07 | 1 |
| Y13 | B5B | T2 Disability Reconsideration Notice | | 2022-06-10 | 5 |
| Y13 | B6B | Request for Hearing by ALJ | | 2022-07-28 | 2 |
| Y13 | B7B | Request for Hearing Acknowledgement Letter | | 2022-08-08 | 20 |

| Y13 | B8B | COVID Hearing Agreement Form | | 2022-08-16 | 2 |
| Y13 | B9B | Hearing Notice | | 2022-09-09 | 18 |
| Y13 | B10B | Notice Of Hearing Reminder | | 2022-11-09 | 4 |
| Y13 | B11B | SSA-1696 - Claimant's Appointment of a Representative | | 2022-11-23 | 4 |
| Y13 | B12B | Fee Agreement for Representation before SSA | | 2022-11-23 | 1 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1D | VA Disability Rating Verification | | 2021-03-19 | 4 |
| Y13 | B2D | Application for Disability Insurance Benefits | | 2021-04-09 | 5 |
| Y13 | B3D | Application for Disability Insurance Benefits | | 2021-04-09 | 5 |
| Y13 | B4D | Lead Protective Filing Worksheet | | 2021-04-09 | 3 |
| Y13 | B5D | Application for Disability Insurance Benefits | | 2021-04-13 | 7 |
| Y13 | B6D | Certified Earnings Records | | 2022-10-14 | 3 |
| Y13 | B7D | Detailed Earnings Query | | 2022-10-14 | 4 |
| Y13 | B8D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-10-14 | 1 |
| Y13 | B9D | Summary Earnings Query | | 2022-10-14 | 1 |
| Y13 | B10D | WHAT - Work History Assistant Tool | | 2022-11-18 | 16 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | B1E | Disability Report - Field Office | | Field Office | 2021-04-27 to 2021-04-27 | 3 |

| Y13 | B2E | Work History Report | | Field Office | 2021-04-27 to 2021-04-27 | 7 |
|---|---|---|---|---|---|---|
| Y13 | B3E | Disability Report - Adult | | Field Office | 2021-04-27 to 2021-04-27 | 8 |
| Y13 | B4E | Function Report - Adult | | Claimant | 2021-06-01 to 2021-06-01 | 8 |
| Y13 | B5E | Disability Report - Appeals | | Field Office | 2022-04-12 to 2022-04-12 | 7 |
| Y13 | B6E | Disability Report - Field Office | | Field Office | 2022-04-12 to 2022-04-12 | 2 |
| Y13 | B7E | 3rd Party Function Report - Adult | | Claimants Husband | 2022-06-02 to 2022-06-02 | 9 |
| Y13 | B8E | Function Report - Adult | | Claimant | 2022-06-02 to 2022-06-02 | 9 |
| Y13 | B9E | Disability Report - Field Office | | Field Office | 2022-07-29 to 2022-07-29 | 2 |
| Y13 | B10E | Disability Report - Appeals | | Field Office | 2022-07-29 to 2022-07-29 | 7 |
| Y13 | B11E | Exhibit List to Rep PH2E | | | to 2022-10-15 | 11 |
| Y13 | B12E | Correspondence regarding efforts to obtain evidence | | Kathleen M. Flynn | to 2022-11-03 | 2 |
| Y13 | B13E | Resume of Vocational Expert | | Marcia H. Schulman | to 2022-11-17 | 2 |
| Y13 | B14E | Work Background | | | to 2022-11-21 | 2 |
| Y13 | B15E | Recent Medical Treatment | | | to 2022-11-21 | 2 |
| Y13 | B16E | Medications | | | to 2022-11-21 | 2 |

## **Medical Records**

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|

| Y13 | B1F | Outpatient Hospital Records | Department Of The Navy | 2005-07-28 to 2015-12-28 | 813 |
|---|---|---|---|---|---|
| Y13 | B2F | HIT MER | Department Of Defense (Dod) | 1991-11-07 to 2015-12-28 | 42 |
| Y13 | B3F | Emergency Department Records | Wellstar Cobb Hospital | 2016-04-21 to 2016-04-21 | 13 |
| Y13 | B4F | Office Treatment Records | Department Of The Navy | 2001-01-01 to 2018-01-09 | 511 |
| Y13 | B5F | Medical Assessment Mental Ability-Work Related Activities | Deauna Webb Psyd | 2018-01-16 to 2018-01-16 | 12 |
| Y13 | B6F | Physical RFC Assessment | Atl Va Clinic | 2018-01-23 to 2018-01-23 | 11 |
| Y13 | B7F | Treating Source Statement | Atl Va Clinic | 2018-02-13 to 2018-02-13 | 1 |
| Y13 | B8F | Treating Source Statement | Atl Va Clinic | 2019-06-24 to 2019-06-24 | 1 |
| Y13 | B9F | Physical RFC Assessment | Atl Va Clinic | 2019-07-11 to 2019-07-11 | 11 |
| Y13 | B10F | Emergency Department Records | Grady Hospital | 2019-07-14 to 2019-07-14 | 5 |
| Y13 | B11F | Progress Notes | Southwest Atlanta Chiropractic | 2019-07-17 to 2019-07-17 | 32 |
| Y13 | B12F | Emergency Department Records | Piedmont | 2018-07-28 to 2019-09-28 | 29 |
| Y13 | B13F | Office Treatment Records | Ent Institute | 2021-02-12 to 2021-02-12 | 12 |
| Y13 | B14F | Office Treatment Records | Ent Institute | 2020-09-04 to 2021-02-12 | 43 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | B15F | Outpatient Hospital Records | Atl Va Clinic | 2019-06-14 to 2021-04-09 | 272 |
| Y13 | B16F | Progress Notes | Atl Va Clinic | 2021-04-14 to 2021-07-08 | 39 |
| Y13 | B17F | Progress Notes | Atl Va Clinic | 2021-07-21 to 2021-11-05 | 158 |
| Y13 | B18F | CE Psychology | Rebecca Blakeman PhD | 2021-11-10 to 2021-11-10 | 7 |
| Y13 | B19F | Emergency Department Records | Piedmont Fayette Hospital | 2021-12-16 to 2021-12-16 | 48 |
| Y13 | B20F | Emergency Department Records | Piedmont Fayette Hospital | 2019-07-24 to 2021-12-16 | 48 |
| Y13 | B21F | HIT MER | Federal Jhie | 2018-01-15 to 2022-05-13 | 350 |
| Y13 | B22F | Progress Notes | Atl Va Clinic | 2021-12-21 to 2022-07-12 | 50 |
| Y13 | B23F | Progress Notes | Atlanta Vamc | to 2022-09-08 | 7 |
| Y13 | B24F | Pain & Physical Capacities Evaluation | Atlanta Va Clinic | to 2022-11-10 | 12 |
| Y13 | B25F | Medical Evidence of Record | Atlanta Ga Vamc | 2022-05-19 to 2022-11-14 | 90 |
| Y13 | B26F | Medical Evidence of Record | | | 13 |