IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **PERRY TYLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **MOXIE PEST CONTROL (ATLANTA), LLC,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT

COMES NOW Plaintiff Perry Tyler and files this Complaint against Defendant Moxie Pest Control, LLC ("Defendant or "Moxie") for damages and other relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

**1.**

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

**2.**

This Court has personal jurisdiction over Defendant.

**3.**

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in the Northern District of Georgia.

## ADMINISTRATIVE PREREQUISITES

**4.**

Plaintiff has exhausted all administrative requirements necessary to bring his claims. Plaintiff filed an EEOC charge related to his Title VII claims in this case on January 31, 2022. The EEOC issued its Notice of Right to Sue on February 23, 2023.

**5.**

This action is timely filed with respect to Plaintiff's Title VII claim as less than 90 days have passed since Plaintiff's receipt of the Notice of Right to Sue for the same.

## THE PARTIES

**6.**

Moxie is a domestic for-profit corporation doing business in the Northern District of Georgia. It provides residential and commercial pest control services across the United States. At all relevant times, it employed more than 15 employees.

**7.**

Perry Tyler is a former employee of Defendant who worked as a "termite inspector," essentially a commissioned sales role, on its Atlanta, GA based team. Mr. Tyler is African American.

**STATEMENT OF FACTS**

**8.**

On or about August 25, 2021, Moxie hired Mr. Tyler to work as a termite inspector. In that role, his primary job duty was providing termite inspections to potential customers' homes with the hope that he would be able to sell them Defendant's products. Mr. Tyler visited these homes according to a route that was pre-determined by the Company based on leads that it generated on a particular day.

**9.**

Mr. Tyler was hired along with four other employees, all of whom were white. In fact, during the span of his employment, Mr. Tyler was the only black employee in the office.

**10.**

From the outset, Mr. Tyler understood that his employment was going to be difficult, as his coworkers and managers (different than the managers who hired him) often singled him out as the subject of inappropriate and

harassing pranks. For example, one of his white managers shot him in the back of the head with a Nerf gun and a group of other employees laughed at him when he turned around. He complained about this disparate treatment to his supervisors.

11.

Despite his strong performance during the new hire training program, including a higher score on the knowledge test than any of his fellow trainees and exceeding his sales quota during that period of time, he found that once on the job, he was routinely given some of the worst routes of all salespersons, where many of the company's then-existing customers were in arrears on the pest control bills and many others could not afford Moxie's services. Many of these territories were also distant from him, such that he could not guarantee same-day treatment, which affected his ability to make sales.

12.

Mr. Tyler was also given a run-down technician's truck to drive around while the other, white trainees were given newer model sedans. He complained about this disparate treatment to his supervisors.

13.

On one occasion, one of Mr. Tyler's supervisors wrote him up for having driven over five miles over the posted speed limit. Mr. Tyler later heard a

manager tell a white employee who had been hired at the same time as him that he had received one of the lowest driving scores of any employee in the nation, but this employee was never written up.

**14.**

Moxie terminated Mr. Tyler's employment on or about September 22, 2021 for his mis-entering of data on certain customer visits. Specifically, Mr. Tyler entered visits in which he was unable to reach a potential customer either because they were not home or did not answer, as "visit completed," an indication used when a salesperson actually contacts the customer. Mr. Tyler was never trained on the correct way to enter this data in the Company's system. This was an easily correctable mistake for the Company.

**15.**

This mistake also had the effect of grossly skewing Mr. Tyler's closure rates, as it appeared that he had had many more customer encounters than he actually had. The Company was aware of this discrepancy, as he explained it to his supervisors.

**16.**

Furthermore, Mr. Tyler's daily gross sales were generally higher than his white counterparts who were not terminated.

**17.**

Mr. Tyler was never counseled about his sales ability.

**18.**

Mr. Tyler was informed by the former Director of Human Resources, Larry Frazier, that Defendant has a history of discriminatory actions and that it intentionally discriminates against minorities and women in its hiring and promotion practices.

**19.**

In fact, this Director indicated that Mr. Tyler had been targeted by his supervisors because he was a "pain in the ass" employee and that his manager hoped that shooting him in the head with a nerf gun would "help him."

**20.**

Moreover, Chief Sales Officer Greg Donaldson resisted efforts to change the discriminatory culture at Moxie and stated on numerous occasions that the company liked to be able to discriminate, from whom they hire, to how they allow PTO for employees, and to who they promote.  The Director of HR informed Mr. Donaldson that what he was doing was wrong and was told that he did not care and was going to do what he wanted.

**21.**

In fact, the Director of HR complained to company officials about the

discriminatory treatment of Plaintiff and three days later, his employment was terminated.

## COUNT I
## DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**22.**

Plaintiff incorporates by reference all previous Paragraphs of this Complaint as if fully set forth herein.

**23.**

As an African American, Plaintiff is a member of protected class for purposes of Title VII.

**24.**

Defendant terminated Plaintiff's employment because of his race, as evidenced by his different treatment compared to similarly situated white employees leading up to and including his termination.

**25.**

These and other facts entitle Plaintiff to all damages permitted by law, including but not limited to, compensatory damages, emotional distress damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs stemming from Defendant's discrimination in violation of Title VII.  Plaintiff also seeks injunctive relief to prevent the impermissible

discrimination against himself and others by Defendant.

## COUNT II
## DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

**26.**

Plaintiff incorporates by reference all previous paragraphs of this Compliant as if fully set forth herein.

**27.**

As an African American, Plaintiff is a member of a protected class for purposes of Section 1981.

**28.**

Defendant terminated Plaintiff's employment because of his race, as evidenced by his different treatment compared to similarly situated white employees leading up to and including his termination.

**29.**

These and other facts entitle Plaintiff to all damages permitted by law, including but not limited to, compensatory damages, emotional distress damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs stemming from Defendant's discrimination in violation of Section 1981. Plaintiff also seeks injunctive relief to prevent the impermissible discrimination against himself and others by Defendant.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

**30.**

Plaintiff incorporates by reference all previous paragraphs of this Compliant as if fully set forth herein.

**31.**

By complaining about being singled out for his disparate treatment as the only African American at Defendant's Atlanta office, including in being shot with a Nerf gun and subsequently belittled, and through being given a worse sales vehicle than the newly hired white employees, Plaintiff engaged in protected activity under Title VII.

**32.**

Defendant terminated Plaintiff's employment because he partook in this protected activity.

**33.**

These and other facts entitle Plaintiff to all damages permitted by law, including but not limited to, compensatory damages, emotional distress damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs stemming from Defendant's retaliation in violation of Title VII. Plaintiff also seeks injunctive relief to prevent the impermissible discrimination against himself and others by Defendant.

## COUNT IV
## RETALIATION IN VIOLATION OF SECTION 1981

**34.**

Plaintiff incorporates by reference all previous paragraphs of this Compliant as if fully set forth herein.

**35.**

By complaining about being singled out for his disparate treatment as the only African American at Defendant's Atlanta office, including in being shot with a Nerf gun and subsequently belittled, and through being given a worse sales vehicle than the newly hired white employees, Plaintiff engaged in protected activity under Section 1981.

**36.**

Defendant terminated Plaintiff's employment because he partook in this protected activity.

**37.**

These and other facts entitle Plaintiff to all damages permitted by law, including but not limited to, compensatory, emotional distress, and punitive damages, pre- and post-judgment interest, and attorneys' fees and costs stemming from Defendant's retaliation in violation of Section 1981. Plaintiff also seeks injunctive relief to prevent the impermissible discrimination against himself and others by Defendant.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests judgment in its favor on each count in this Complaint and demands:

(a)  That judgment be awarded for and in favor of Plaintiff Perry Tyler, and against Defendant Moxie Pest Control (Atlanta), LLC. d/b/a on Counts I & III for all relief allowable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*;

(b)  That judgment be awarded for and in favor of Plaintiff Perry Tyler, and against Defendant Moxie Pest Control (Atlanta), LLC. on Counts II & IV for all relief allowable under 42 U.S.C. § 1981.

(c)  Any and all other relief as the Court deems just and proper.

This 24th day of May 2023,

*/s/ S. Graham White*
James M. McCabe
Georgia Bar No. 724618
S. Graham White
Georgia Bar No. 535538
The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA  30326
Office: (404) 250-3233
Fax: (404) 400-1724
jim@mccabe-lawfirm.com

Attorneys for Plaintiff