# EXHIBIT 1

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior** or ☐ **State Court of** _____ **County**

| | |
|---|---|
| **For Clerk Use Only** | |
| **Date Filed** _____ 4/21/2023 | **Case Number** _____ 23CV4086 |
| **MM-DD-YYYY** | |

**Plaintiff(s)**                                                    **Defendant(s)**

| | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |

| | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |

| | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |

| | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____ **State Bar Number** _____ **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**                              **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

FILED 4/21/2023 3:34 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

# IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

23CV4086

Case No.: _____

_____

_____

_____

Plaintiff

VS

_____

_____

_____

Defendant

# SUMMONS

## TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

J. Remington Huggins, Esq.

Huggins Law Firm, 110 Norcross Street, Roswell, GA 30075

770-913-6229

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____21st_____ day of _____April_____, 20___23____.

Honorable Debra DeBerry
Clerk of Superior Court

/s/ Selena Anderson

By_____

Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

*[handwritten:]* Delivery by Huggins has Firm - Vincent Vanasco on 4-28-23 received by Denita Mozel

FILED 4/21/2023 3:34 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **HIGHLANDS AT HIDDEN HILLS CONDO ASSOCIATION,** Plaintiff, | ) ) ) ) | |
| v. | ) ) | **CIVIL ACTION FILE NO.:** |
| **GENERAL STAR INDEMNITY COMPANY,** a foreign corporation, | ) ) ) ) | 23CV4086 |
| Defendant. | ) ) | |

## COMPLAINT

**COMES NOW** Plaintiff **Highlands at Hidden Hills Condo Association**, by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **General Star Indemnity Company**, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an entity located in DeKalb County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia through surplus lines contract. Pursuant to O.C.G.A. § 33-5-34(b), service of process may be made upon the Office of Insurance Commissioner of Georgia, located at Two Martin Luther King, Jr. Drive, West Tower, Suite 704, Atlanta, GA 30334, who will mail process to the person(s) designated by Defendant for the same purpose. In addition, pursuant to the Policy at issue, service

of process may be made upon Defendant's registered agent Corporate Secretary, Attention: Legal Department, General Star Indemnity Company, 120 Long Ridge Road, Stamford, CT 06902. (See Policy, attached hereto as Exhibit "A," at page 8).

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in the Superior Court of DeKalb County, Georgia because

a.  This is an action for breach of contract with damage more than Fifteen Thousand Dollars ($15,000.00), exclusive of interest, cost, and attorney's fee;

b.  The action arises out of a breach of contract of a surplus line contract issued by an unauthorized insurer, pursuance to O.C.G.A. § 33-5-34(a);

c.  The Policy at issue in this matter was entered into in DeKalb County, Georgia;

d.  The Property insured by Defendant's surplus line Policy is located in DeKalb County, Georgia;

e.  Defendant's actions giving rise to this action occurred in DeKalb County, Georgia.

2

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## **THE POLICY**

6.

Prior to April 24, 2021, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. IAG967197C (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property located at 6034 Highland Hills Parkway, Stone Mountain, Georgia 30088 (the "Insured Property," "Property," or the "home"). The Policy likewise insures against loss due to Wind and Hail, subject to a deductible of $5,000.00 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

3

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

On or about April 24, 2021, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Wind and Hail (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

4

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the event. Defendant failed to properly indemnify the Plaintiff and estimated Plaintiff's total loss to be $159,387.83. Plaintiff's deductible is $5,000.00 per occurrence, and Defendant withheld $72,842.66 in recoverable depreciation; thus, after deductions for depreciation and Plaintiff's deductible, Defendant claims Plaintiff was due $86,545.17 as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claim. A true and accurate copy of the estimate for this Property in the amount of $1,340,066.73 is attached hereto as Exhibit "C." Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's February 22, 2023, correspondence to Defendant was a letter of representation from Plaintiff's counsel, attached hereto as Exhibit D.

5

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

29.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

30.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

31.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

32.

**WHEREFORE,** Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c. Plaintiff's attorneys' fees and costs of suit in this action;

d. Plaintiff's consultant and expert fees;

e. Pre- and post-judgment interest in the maximum amount allowed by law;

f. All statutory penalties;

g. Any and all applicable multipliers; and,

8

h. Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 21st day of April, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

9

# EXHIBIT A



**NAME INSURED** : HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

**POLICY NUMBER:** IAG967197C

**POLICY PERIOD: From**     January 9, 2021     **To**     January 9, 2022

P.O. BOX 10354 STAMFORD,
CONNECTICUT 06904-2354

02 PP 700 front (02/11)



### GENERAL STAR INDEMNITY COMPANY
**(A STOCK INSURANCE COMPANY)**
**P.O. Box 10354**
**Stamford, Connecticut 06904-2354**

## COMMON POLICY DECLARATIONS

**POLICY NUMBER**   IAG967197C

**Previous Policy Number**   IAG967197B

**NAMED INSURED**   HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

This contract is registered and delivered as a surplus line coverage under the Surplus Line Insurance Law O.C.G.A. Chapter 33-5.

Broker Name/Initials: **Tomas E. Tio**

**MAILING ADDRESS**   P.O. Box 1255
Redan, GA 30074-1255

Georgia Premium: $21,263.00
Fees: $1,750.00
Surplus Lines Tax: $920.52

**FORM OF BUSINESS:** Corporation

**BUSINESS DESCRIPTION:**   Residential Condominium Association

**POLICY PERIOD:**   From   January 9, 2021   to   January 9, 2022   at 12:01 A.M. Standard Time at your mailing address shown above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | **PREMIUM** |
|---|---|
| Commercial General Liability Coverage Part | **NOT COVERED** |
| Commercial Property Coverage Part | $21,263.00 |
| Commercial Inland Marine Coverage Part | **NOT COVERED** |
| **TOTAL PREMIUM** | $21,263.00 |

Premium shown is payable at inception, unless otherwise stated.
Audit Period: Annual, unless otherwise stated.

PLEASE NOTE, PREMIUM ABOVE DOES NOT INCLUDE TAX AND FEES.  SEE INVOICE FOR TOTAL DUE.

## FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy.):

PP 09 0001 (04/19), IL 0262 (02/15), CP 0131 (01/20), IL 05 0001 (02/11), 02 PP 618 (09/02), 02 PP 608 (11/04), 02 PP 635 (11/04)

**THESE COMMON POLICY DECLARATIONS, COVERAGE PART DECLARATIONS AND COVERAGE FORMS TOGETHER WITH THE COMMON POLICY CONDITIONS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

**COUNTERSIGNED AT** Stamford, Connecticut   **on**   January 15, 2021

**BY:**  _____
**AUTHORIZED REPRESENTATIVE**

PP 10 0001 02 11

**GENERAL STAR INDEMNITY COMPANY**

# IMPORTANT NOTICE

### WHAT TO DO IN CASE OF A CLAIM

In the event of loss or damage to Covered Property, you should immediately report the details in writing to:

General Star Management Company
Property Claims
P.O. Box 1255
Stamford, CT  06904
Fax:  866-464-3678
E-Mail: GStarPropertyClaims@generalstar.com

Note: Failure to promptly report loss or damage could jeopardize your coverage.

# GENERAL STAR INDEMNITY COMPANY

**IL 02 62 02 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

  **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

  **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

  **(1)** 10 days from the date of mailing or delivering our notice; or

  **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

  **a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

  **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

  **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

  **d.** If the first Named Insured cancels, the refund may be less than pro rata.

  **e.** The cancellation will be effective even if we have not made or offered a refund.

**IL 02 62 02 15**          © Insurance Services Office, Inc., 2014          **Page 1 of 2**

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

**a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.**:

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

**a.** Nonpayment of premium, whether payable to us or to our agent;

**b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

**c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b.**, **c.** or **d.** above.

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

   © Insurance Services Office, Inc., 2014   IL 02 62 02 15

# GENERAL STAR INDEMNITY COMPANY

**COMMERCIAL PROPERTY**
CP 01 31 01 20

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following exclusion and related provisions are added to Paragraph **B.2. Exclusions** in the Causes Of Loss Forms and to any Coverage Form or policy to which a Causes Of Loss Form is not attached:

**1.** We will not pay for loss or damage arising out of any act committed:

**a.** By or at the direction of any insured; and

**b.** With the intent to cause a loss.

**2.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

**a.** Is otherwise covered under this Coverage Part; and

**b.** Arose out of an act of family violence or sexual assault by an insured against whom a family violence or sexual assault complaint is brought for such act.

**3.** If we pay a claim pursuant to Paragraph **B.2.,** our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**C.** The following explanation is added with respect to application of the Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria and the Limited Coverage of the same title:

With respect to the portion of Covered Property that would still have required repair or replacement had there been no "fungus", wet or dry rot or bacteria, this Exclusion and Limited Coverage will not serve to limit the amount of recovery for such repair or replacement.

However, the Exclusion and Limited Coverage shall continue to apply to:

**1.** The cost to treat, contain, remove or dispose of "fungus", wet rot, dry rot or bacteria beyond that which is required to repair or replace Covered Property;

**2.** The cost of testing as described in the Limited Coverage; and

**3.** Any increase in loss under Business Income and/or Extra Expense Forms resulting from Paragraph **1.** or **2.** above.

Regardless of whether the Exclusion and Limited Coverage apply to a loss, the Limit of Insurance on Covered Property is not increased. The maximum recoverable, for the total of the cost to repair or replace Covered Property and any additional covered cost to treat, contain, remove, dispose of or test for "fungus", wet or dry rot or bacteria, is the applicable Limit of Insurance on the affected Covered Property.

 © Insurance Services Office, Inc., 2019

**D.** This Paragraph, **D.,** applies to the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

CONDOMINIUM ASSOCIATION COVERAGE FORM

CONDOMINIUM COMMERCIAL UNIT OWNERS COVERAGE FORM

BUILDERS RISK COVERAGE FORM

STANDARD PROPERTY POLICY

Paragraph **a.** of the **Loss Payment** Condition is replaced by the following:

**a.** In the event of loss or damage covered by this Coverage Form, at our option we will either:

**(1)** Repair, rebuild or replace the property with other property of like kind and quality, or pay the cost of such repair, rebuilding or replacement, as limited by Paragraph **b.** of this Loss Payment Condition and any other applicable policy provisions, such as the Limit of Insurance provision, the Valuation Condition or any provision which amends or supersedes the Valuation Condition; or

**(2)** Take all or any part of the property at an agreed or appraised value.

With respect to Paragraph **a.(1),** this policy covers only the cost of repair, rebuilding or replacement. Such cost does not include recovery of, and therefore this policy does not pay any compensation for, an actual or perceived reduction in the market value of any property. But if the property that has sustained loss or damage is subject to an endorsement which explicitly addresses market value, then that endorsement will apply to such property in accordance with its terms.

© Insurance Services Office, Inc., 2019

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of General Star Indemnity Company (the "Insurer") to pay any amount claimed to be due hereunder, the Insurer, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such Court. However, nothing in this provision constitutes a waiver of the Insurer's rights to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States of America or of any State in the United States.

It is further agreed that service of process in such suit may be made upon the Insurer by certified mail, return receipt requested, addressed to the Insurer in care of its **Corporate Secretary**, Attention: Legal Department, General Star Indemnity Company, 120 Long Ridge Road, Stamford, CT 06902-1843. In any suit instituted under this contract, Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-referenced Corporate Secretary, or his designee, is authorized and directed to accept service of process on behalf of the Insurer in any such suit or upon the request of the insured to give a written undertaking to the insured that it will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or such other insurance department representative, or such other governmental officer, such as the Secretary of State, specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Insurer's Corporate Secretary as the person to whom the said insurance department representative is authorized to mail such process or a true copy thereof.

GENERAL STAR INDEMNITY COMPANY

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.
3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

## F. Representations On Application Warranty.

The following representations on application warranty applies to all Coverage Parts attached to this policy. By accepting this policy, you agree, represent and warrant that:
1. The statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application are:
   (a) Accurate and complete and no facts have been suppressed, omitted or misstated; and
   (b) Material to us, and we have issued this policy in reliance upon them;
2. Any failure to fully disclose the information requested in the application for insurance, whether by omission or suppression, or any misrepresentation in the statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application, renders coverage for any claim(s) null and void and entitles us to rescind the policy from its inception; and
3. The application for this policy is incorporated and made part of the policy by reference

## G. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement, effective      January 9, 2021      forms a part of Policy # IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

In the event of cancellation of this policy by the Insured, or cancellation by us for non-payment of premium, no less than the amount of  35%    shall be retained as fully earned minimum premium, and the premium will not be subject to pro-rata or short rate cancellation calculations.

All other terms, conditions and exclusions remain unchanged.

02 PP 608 (11/04)                                                                                                    Page 1 of 1

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL LOSS ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement, effective          January 9, 2021          forms a part of Policy #  IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

In consideration of the premium charged under this policy, we agree with you that in the event of a constructive total loss of the insured property, the full policy premium for the property shall be deemed fully earned for all coverages insured hereunder.  No return premium shall be payable to the insured for the unexpired term of the policy.

All other terms, conditions and exclusions remain the same.

## GENERAL STAR INDEMNITY COMPANY
### Stamford, Connecticut

# COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG967197C

## DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location | Construction Type | Occupancy |
|---|---|---|---|---|
| See Supplemental Declarations Page | | | | |

## COVERAGES PROVIDED (INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.)

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Sublimit of Insurance** | Covered Causes of Loss | Coinsurance* | Rates | Premium |
|---|---|---|---|---|---|---|---|---|
| See Supplemental Declarations Page | | | | | | | | |

&ast;&ast;  Any Sublimit listed on these Declarations is part of, and not in addition to, the lesser of the Limit of Insurance or the Values shown on the Location Schedule (Form 02 PP 639)

&ast;  If Extra Expense Coverage, Limits On Loss Payment

## OPTIONAL COVERAGES APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

| Prem. No. | Bldg. No. | Agreed Value Expiration Date | Coverage Amount | ✓ Replacement Cost Building | Business Personal Property | Including "Stock" |
|---|---|---|---|---|---|---|
| 1 | 1-15 | | | ✓ | ✓ | |

| | | Inflation Guard Building | (Percentage) Personal Property | *Monthly Limit of Indemnity (Fraction) | *Maximum Period Of Indemnity | *Extended Period Of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | | | | | |

*Applies to Business Income Only.

## MORTGAGE HOLDERS

| Prem. No. | Bldg. No. | Mortgage Holder Name | Street Address | City | State | Zip |
|---|---|---|---|---|---|---|
| | | | | | | |

## DEDUCTIBLE

SEE ENDORSEMENT  PP 03 0005 (08/19)

## FORMS APPLICABLE

**To all coverages:**
PP 04 0026 (12/17), 02 PP 674 (11/04), PP 11 0001 (06/13), PP 03 0005 (08/19), CP 0411 (09/17),02  PP 524 (06/06), CP 0090 (07/88), CP 0017 (10/12), PP 04 0006 (06/13), CP 1036 (10/12), PP 04 0002 (06/13), CP 1030 (09/17), 02 PP 548 (01/09), 02 PP 600 (11/04), 02 PP 605 (10/09), 02 PP 631 (11/04), 02 PP 633 (11/04), 02 PP 673 (11/04), PP 21 0037 (11/19), PP 21 0038 (11/19), PP 21 0039 (11/19), PP 21 0041 (07/20)

**To Specific Premises/Coverages:**

| Prem. No. | Bldg. No. | Coverages | Form Number |
|---|---|---|---|
| | | | |

---

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

# GENERAL STAR INDEMNITY COMPANY
## Stamford, Connecticut

## COMMERCIAL PROPERTY DECLARATIONS

**POLICY NUMBER** IAG967197C

## DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Street Address | City | State | Zip Code | Construction | Occupancy |
|-----------|-----------|----------------|------|-------|----------|--------------|-----------|
| 1 | 1 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 2 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 3 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 4 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 5 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 6 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 7 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 8 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 9 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 10 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 11 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 12 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 13 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 14 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |
| 1 | 15 | Highland Parkway | Stone Mountain | GA | 30088 | Frame | Condominiums |

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

# GENERAL STAR INDEMNITY COMPANY
## COMMERCIAL PROPERTY DECLARATIONS
### Stamford, Connecticut

**COVERAGES PROVIDED** (INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.)

| Prem. No. | Bldg. No. | Coverage | Limits of Insurance | Sublimit of Insurance** | Covered Causes of Loss | Coinsurance* | Rates | Premium |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | Building | $549,056 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 2 | Building | $563,224 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 3 | Building | $549,056 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 4 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 5 | Building | $563,224 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 6 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 7 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 8 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 9 | Building | $549,056 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 10 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 11 | Building | $563,224 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 12 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 13 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 14 | Building | $661,480 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | 15 | Building | $549,056 | | Special including Equipment Breakdown | NIL | Included | Included |
| 1 | N/A | Pool | $85,000 | | Special | NIL | Included | Included |
| 1 | N/A | Pool House | $60,000 | | Special | NIL | Included | Included |
| 1 | N/A | Pool Furniture | $5,000 | | Special | NIL | Included | Included |
| 1 | N/A | Fencing | $10,000 | | Special | NIL | Included | Included |
| 1 | N/A | Entrance | $20,000 | | Special | NIL | Included | Included |
| 1 | 1-15 | Sewer Back up | | $25,000 | Special | | | |

** Any Sublimit listed on these Declarations is part of, and not in addition to, the lesser of the Limit of Insurance or the Values as reported on the Location Schedule (Form 02 PP 639)

* If Extra Expense Coverage, Limits On Loss Payment

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

**GENERAL STAR INDEMNITY COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW COVERAGE – FULL COVERAGE A

This endorsement modifies insurance provided under this policy:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

This endorsement, effective     January 9, 2021     forms a part of Policy #  IAG967197C

issued to   HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by   General Star Indemnity Company.

**SCHEDULE\***

| Building Number/ Premises Number | Coverage A | Coverage B Limit Of Insurance | Coverage C Limit Of Insurance | Coverage B And C Combined Limit Of Insurance |
|---|---|---|---|---|
| 1-15   /   1 | ✓ | 10% of the declared value per building for Building Limit as shown on Coverages Provided. | 10% of the declared value per building for Building Limit as shown on Coverages Provided. | $       * |
| / | ☐ | | | $       * |
| / | ☐ | | | $       * |

\*   Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

\*\*   Do **not** enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages **B** or **C**, or if one of these Coverages is not applicable.

**All Limits of Insurance described above are included in, and do not increase the amount of, the Limit of Insurance noted on the Declarations Page. Any amount of loss in excess of the applicable Limit(s) of Insurance will not be considered to be part of the covered loss under this endorsement for purposes of application of any deductible(s) and, as such, will not offset, defray, or erode any deductible(s) provided in this policy.**

**A.** Each Coverage – Coverage **A**, Coverage **B** and Coverage **C** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

  **1.** The ordinance or law:

    **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

    **b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

  **2. a.** The building sustains direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

    **b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

     © Copyright, General Star Management Company, Stamford, CT 2017. Includes copyrighted material of Insurance Services Office, Inc., with its permission     

c. But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

3. In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/or **C** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

**C.** We will not pay under Coverage **A, B** or **C** of this endorsement for:

1. Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

2. The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**D.** We will not pay under this endorsement for any loss in value or any cost incurred due to an ordinance or law that you were required to comply with before the time of the current loss, even in the absence of building damage, if you failed to comply.

**E. Coverage**

**1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. Coverage **A** does not increase the Limit of Insurance.

**2. Coverage B – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

The Limit of Insurance for Coverage **B** as described in the Schedule above is included in, and does not increase the amount of, the Limit of Insurance noted on the Declarations Page as applicable to the covered building.

**3. Coverage C – Increased Cost Of Construction Coverage**

a. With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

(1) Repair or reconstruct damaged portions of that building; and/or

(2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

(1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

(2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Limit of Insurance for Coverage **C** as described in the Schedule above is included in, and does not increase the amount of, the Limit of Insurance noted on the Declarations Page as applicable to the covered building.

b. When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.**:

(1) The cost of excavations, grading, backfilling and filling;

(2) Foundation of the building;

© Copyright, General Star Management Company, Stamford, CT 2017
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**(3)** Pilings; and

**(4)** Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, **3.b.**

**c.** Paragraph **e. Increased Cost Of Construction** of subsection **4. Additional Coverages** in **A. Coverage** of the Coverage Form is deleted.

**F. Loss Payment**

1. All following loss payment provisions, **F.2.** through **F.5.**, are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

2. When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   **a.** If the Replacement Cost Coverage Option applies and such building is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

   **(1)** The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

   **(2)** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy provides a separate Limit of Insurance for a specific Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

   **b.** If the Replacement Cost Coverage Option applies and such building is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

   **(1)** The actual cash value of such building at the time of loss; or

**(2)** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy provides a separate Limit of Insurance for a specific Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

3. Unless Paragraph **F.5.** applies, loss payment under Coverage **B – Demolition Cost Coverage** will be determined as follows:

   We will not pay more than the lesser of the following:

   **a.** The amount you actually spend to demolish and clear the site of the described premises; or

   **b.** The applicable Limit of Insurance shown for Coverage **B** in the schedule above and included within the Limit Of Insurance shown in the Declarations as applicable to the covered building.

4. Unless Paragraph **F.5.** applies, loss payment under Coverage **C – Increased Cost Of Construction Coverage** will be determined as follows:

   **a.** We will not pay under Coverage **C**:

   **(1)** Until the property is actually repaired or replaced, at the same or another premises; and

   **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   **b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

   **(1)** The increased cost of construction at the same premises; or

   **(2)** The applicable Limit Of Insurance shown for Coverage **C** in the schedule above and included within the Limit of Insurance shown in the Declarations as applicable to the covered building.

   **c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

   **(1)** The increased cost of construction at the new premises; or

   **(2)** The applicable Limit Of Insurance shown for Coverage **C** in the schedule above and included within the Limit of Insurance shown in the Declarations as applicable to the covered building.

© Copyright, General Star Management Company, Stamford, CT 2017
Includes copyrighted material of Insurance Services Office, Inc., with its permission

5. If a **Combined** Limit Of Insurance is shown for Coverages **B** and **C** in the Schedule above, Paragraphs **F.3.** and **F.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Coverage **B** and Coverage **C**, is the Combined Limit of Insurance shown for Coverages **B** and **C** in the Schedule above and included within the Limit Of Insurance shown in the Declarations as applicable to the covered building. Subject to this Combined Limits of Insurance, the following loss payment provisions apply:

a. For Coverage **B**-Demolition Cost Coverage, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

c. For Coverage **C**-With respect to the Increased Cost of Construction:

  (1) We will not pay for the increased cost of construction:

    (a) Until the property is actually repaired or replaced, at the same or another premises; and

    (b) Unless the repairs or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  (2) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

  (3) If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

G. The terms of this endorsement apply separately to each building to which this endorsement applies.

H. Example of proportionate loss payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement).

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value

- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

Step **1:**

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

Step **2:**

Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

NOTE: The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

I. The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SEWER BACK UP ENDORSEMENT

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – SPECIAL FORM

This endorsement, effective       January 9, 2021       forms a part of Policy # IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

Subsection (3), in subsection g., Water, in section **B., Exclusions**, is deleted in its entirety.

All other terms, conditions and exclusions remain unchanged.

02 PP 674 (11/04)

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGUS CLEAN UP AND REMOVAL LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS --- BASIC FORM
CAUSES OF LOSS --- BROAD FORM
CAUSES OF LOSS --- SPECIAL FORM

This endorsement, effective    January 9, 2021    forms a part of Policy # IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

| SCHEDULE |
| --- |
| **FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT** $5,000 |

A.  Paragraph **h.**, **"Fungus"**, **Wet Rot**, **Dry Rot and Bacteria** in subsection **1.** of section **B. Exclusions** in the CAUSES OF LOSS --- BASIC FORM, CAUSES OF LOSS --- BROAD FORM and CAUSES OF LOSS --- SPECIAL FORM are deleted in their entirety and are replaced with the following:

    **h.**  **"Fungus", "Spore(s)", Wet Rot, Dry Rot And Bacteria**
        Presence, growth, proliferation, spread or any activity of "fungus", "spore(s)", wet or dry rot or bacteria.

B.  The following amend the CAUSES OF LOSS --- BASIC FORM:

    1.  Section **C. Additional Coverage – Limited Coverage For "Fungus"**, **Wet Rot**, **Dry Rot and Bacteria** is deleted in its entirety and replaced with the following:

        **C.  Additional Coverage – Limited Coverage For "Fungus", "Spores", Wet Rot, Dry Rot and Bacteria**

            **1.**  Subject to all other policy provisions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "fungus" or "spores" or any substance, vapor, gas, or byproducts produced by or arising out of any "fungus" or "spores" provided:

                **a.**  Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;

                **b.**  Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and

                **c.**  We authorize you to incur such expense.

            This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

            **2.**  **a.**  Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all

covered expense described in paragraph **C.1.a.** above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE of this endorsement.

    **b.**    Subject to paragraph **2.a.** above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of "fungus" or "spore(s)".

**2.** The definition of "fungus" in Section **E. Definitions** is deleted in its entirety and replaced by the following:

    **1.**    The term "fungus", as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

**3.** The following paragraph **2.** is added to section **E. Definitions**:

    **2.**    The term "spore(s)", as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any "fungus".

**C.** The following amend the CAUSES OF LOSS --- BROAD FORM:

**1.** Section **D. Additional Coverage – Limited Coverage For "Fungus"**, **Wet Rot**, **Dry Rot** and **Bacteria** is deleted in its entirety and replaced with the following:

    **D.**    **Additional Coverage – Limited Coverage For "Fungus"**, **"Spores"**, **Wet Rot**, **Dry Rot** and **Bacteria**

        **1.**    Subject to all other policy provisions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "fungus" or "spores" or any substance, vapor, gas, or byproducts produced by or arising out of any "fungus" or "spores" provided:

            **a.**    Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;

            **b.**    Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and

            **c.**    We authorize you to incur such expense.

        This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

        **2.**    **a.**    Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all covered expense described in paragraph **D.1.a.** above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE of this endorsement.

            **b.**    Subject to paragraph **2.a.** above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of "fungus" or "spore(s)".

**2.** The definition of "fungus" in Section **F. Definitions** is deleted in its entirety and replaced by the following:

    **1.**    The term "fungus", as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust,

smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

3.   The following paragraph **2.** is added to section **F. Definitions**:

    **2.**   The term "spore(s)", as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any "fungus".

D.   The following amend the CAUSES OF LOSS--- SPECIAL FORM:

1.   Section **E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot and Bacteria** is deleted in its entirety and replaced with the following:

    **E.**   **Additional Coverage – Limited Coverage For "Fungus", "Spores", Wet Rot, Dry Rot and Bacteria**

        **1.**   Subject to all other policy provisions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "fungus" or "spores" or any substance, vapor, gas, or byproducts produced by or arising out of any "fungus" or "spores" provided:

            **a.**   Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;

            **b.**   Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and

            **c.**   We authorize you to incur such expense.

        This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

        **2.**   **a.**   Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all covered expense described in paragraph **E.1.a.** above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE of this endorsement.

            **b.**   Subject to paragraph **2.a.** above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of "fungus" or "spore(s)".

2.   Subsection **1.** of section **G. Definitions** is deleted in its entirety and replaced by the following:

    **1.**   The term "fungus", as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

3.   The following paragraph **3.** is added to section **G. Definitions**:

    **3.**   The term "spore(s)", as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any "fungus".

All other terms, conditions and exclusions remain unchanged.

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## APPLICATION OF THE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

| Prem. No. | Bldg. No. | Deductible | Covered Cause(s) of Loss** | Deductible applies per: | | | |
|-----------|-----------|------------|----------------------------|--------------------------|---|---|---|
| | | | | **Schedule*** | | | |
| 1 | *see below | $5,000 | (2) | ☒ Per Occurrence ☐ Per Location | | ☐ Per Building ☐ Per Unit | |
| 1 | *see below | $25,000 | (9) | ☐ Per Occurrence ☐ Per Location | | ☐ Per Building ☒ Per Unit | |
| | | | | ☐ Per Occurrence ☐ Per Location | | ☐ Per Building ☐ Per Unit | |
| | | | | ☐ Per Occurrence ☐ Per Location | | ☐ Per Building ☐ Per Unit | |

\* 1-15 and all additional structures shown on Commercial Property Declarations, Coverages Provided

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

    **(1)** All Covered Causes of Loss
    **(2)** All Covered Causes of Loss, except                Water Damage
    **(3)** Windstorm or Hail
    **(4)** Windstorm or Hail except Windstorm or Hail caused by a "Named Storm"
    **(5)** "Named Storm"
    **(6)** Theft
    **(7)** Flood
    **(8)** Earthquake
    **(9)** Other:  Water Damage
            Common areas are considered one unit per structure

Section **D. Deductible** is deleted and replaced with the following:

**D. Deductible**

    1.  We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition; Agreed Value Optional Coverage; or any provision in a Value Reporting Form relating to full reporting or failure to submit such reports.

    2.  The Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by the Covered Cause of Loss shown in the Schedule for that Deductible. The Deductible applies separately to each occurrence.

3.  When property is covered under the Coverage Extension for Newly Acquired Or Constructed Property:  In determining the amount, if any, that we will pay for loss or damage, we will deduct from the value(s) of the property at time of loss.  The applicable deductible is the largest deductible shown in the Schedule for the Covered Cause of Loss for any described premises.

4.  When the occurrence involves loss to a specific Covered Property caused by or resulting from a Covered Cause of Loss that is subject to a Sublimit(s) as stated in this Coverage Form, Declarations or in any endorsement to this policy, then any amount of such loss in excess of the applicable Sublimit(s) will not be considered to be part of the covered loss under this policy for purposes of application of any Deductible(s) and, as such, will not be offset, defray, or erode any Deductible(s) provided by this policy.

5.  In the event that loss or damage by multiple Covered Causes of Loss occurs to Covered Property as a result of one occurrence, each deductible applicable to the Covered Cause of Loss, as shown in the Schedule above, will apply to that portion of the loss or damage resulting from the Covered Cause of Loss corresponding to each deductible.

6.  **Calculation Of The Deductible – Fixed Dollar Amount**

    In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the dollar amount applicable to that Covered Cause of Loss shown in the Schedule above from the loss or damage sustained.

    a.  If the deductible applies on a Per Occurrence basis, then the applicable Deductible for that Covered Cause of Loss will be subtracted from the total loss or damage to all Covered Property damaged in that occurrence.  In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

    b.  If the deductible applies on a Per Location basis, then the applicable Deductible for that Covered Cause of Loss will be applied separately to each location that sustains loss or damage.

    c.  If the deductible applies on a Per Building basis, then the applicable Deductible for that Covered Cause of Loss will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents or loss of income.

    d.  The deductible applies on a Per Unit basis, then the applicable Deductible for that Covered Cause of Loss will be applied separately to each unit of insurance.

7.  **Calculation Of The Deductible – Percentage Deductible**

    a.  **Specific Insurance Other than Builders' Risk**

        (1) **Property Not Subject To Value Reporting Forms**

            In determining the amount, if any, that we will pay for loss or damage:

            (a) If the Deductible applies on a Per occurrence basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all property covered on the policy.

            (b) If the Deductible applies on a Per Location basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in

the Schedule) multiplied by the total value(s) of all Covered Property at the location that sustained loss or damage. The deductible will be applied separately to each location that sustains loss or damage.

**(c)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the building that sustained loss or damage. The deductible will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents or loss of income.

**(d)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the value(s) of the property that has sustained loss or damage.

The value(s) to be used is that shown in the most recent Statement of Values on file with us.

**(2) Property Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage:

**(a)** If the Deductible applies on a Per Occurrence basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all property covered by this policy.

**(b)** If the Deductible applies on a Per Location basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the location that sustained loss or damage. The deductible will be applied separately to each location that sustains loss or damage.

**(c)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the building that sustained the loss or damage. The deductible will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents or loss of income.

**(d)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the value(s) of the property that has sustained loss or damage.

The value(s) to be used is the latest value(s) shown in the most recent Report of Values on file with us. However:

**(a)** If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

**(b)** If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

**b. Blanket Insurance Other Than Builders Risk**

**(1) Property Not Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage:

**(a)** If the Deductible applies on a Per Occurrence basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all property covered by this policy.

**(b)** If the Deductible applies on a Per Location basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the location where the loss or damage occurred. The deductible will be applied separately to each location that sustains loss or damage.

**(c)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the building that sustained loss or damage. The Deductible will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents or loss of income.

**(d)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the applicable Deductible Percentage Covered Cause of Loss (as shown in the Schedule) multiplied by the value(s) of the property that has sustained loss or damage.

The value(s) to be used is that shown in the most recent Statement of Values on file with us.

**(2) Property Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for property that has sustained loss or damage:

**(a)** If the Deductible applies on a Per Occurrence basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all property covered by this policy as of the time of loss or damage.

**(b)** If the Deductible applies on a Per Location basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the location where the loss or damage occurred as of the time of the loss or damage. The deductible will be applied separately to each location that sustains loss or damage.

**(c)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the building that sustained loss or damage as of the time of the loss or damage. The Deductible will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents or loss of income.

**(d)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the value(s) of that property as of the time of loss or damage.

The value(s) to be used is the latest value(s) shown in the most recent Report of Values on file with us.  However:

**(a)** If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

**(b)** If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

**c.  Builders' Risk Insurance**

**(1)  Builders' Risk Other Than Reporting Form**

In determining the amount, if any, that we will pay for property that has sustained loss or damage:

**(a)** If the Deductible applies on a Per Occurrence basis, we deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the actual cash value(s) of all property covered by this policy as of the time of loss or damage.

**(b)** If the Deductible applies on a Per Location basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the actual cash value(s) of all Covered Property at the location where the loss or damage occurred as of the time of loss or damage.  The deductible will be applied separately to each location that sustains loss or damage.

**(c)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the actual cash value(s) of all Covered Property at the building that sustained loss or damage as of the time of the loss or damage.  The Deductible will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents and loss of income.

**(d)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the actual cash value(s) of that property as of the time of loss or damage.

**(2)  Builders Risk Reporting Form**

In determining the amount, if any, that we will pay for loss or damage:

**(a)** If the Deductible applies on a Per Occurrence basis, we will deduct an amount equal to the Deductible Percentage (as shown in the Schedule) multiplied by the value(s) of all property covered by this policy.

© Copyright, General Star Management Company, Stamford, CT 2019
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**(b)** If the Deductible applies on a Per Location basis, we will deduct an amount equal to the Deductible Percentage (as shown in the Schedule) multiplied by the value(s) of all Covered Property at the location where the loss or damage occurred.

**(c)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the Deductible Percentage (as shown in the Schedule) multiplied by the value(s) of all Covered Property at the building that sustained loss or damage.

**(d)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the Deductible Percentage (as shown in the Schedule) multiplied by the value(s) of the property that has sustained loss or damage.

The value(s) to be used is the actual cash value(s) shown in the most recent Report of Values on file with us.

However:

**(a)** If the most recent Report of Values shows less than the actual cash value(s) of the property on the report date, we will determine the deductible amount as a percentage of the actual cash value(s) as of the report date.

**(b)** If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the actual cash value(s) of the property as of the time of loss or damage.

**8.** Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of any exclusion in this policy.

**9.** As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings:  Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance.  Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance.  Items of insurance corresponding Limit(s) Of Insurance are shown in the Declarations.

**10.** As used in this endorsement, the term "Per Unit basis" means that the applicable Deductible for that Covered Cause of Loss will be applied separately to:

**(1)** Each building that sustains loss or damage;
**(2)** The personal property at each building at which there is a loss or damage to personal property;
**(3)** Personal property in the open; and
**(4)** Business income coverage applicable to each building that sustains loss or damage.

If there is damage to both a building and personal property in that building, separate deductibles apply to the building, the personal property, and the resulting loss of business income.

All other terms, conditions and exclusions remain unchanged.

POLICY NUMBER:  IAG967197C

**COMMERCIAL PROPERTY**
**CP 04 11 09 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|:---:|:---:|:---:|
| 1 | 1-15 | P-1 |
| 1 | 1-15 | P-9 |
|  |  |  |

**Describe Any "P-9":**
Working smoke detectors & fire extinguishers in each unit

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

As a condition of this insurance, you are required to:

**1.** Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

**2.** Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

**3.** Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form

Causes Of Loss – Broad Form

Causes Of Loss – Special Form

Mortgageholders Errors And Omissions Coverage Form

Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

© Insurance Services Office, Inc., 2016

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

© Insurance Services Office, Inc., 2016

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REPRESENTATIONS ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

**COMMERCIAL PROPERTY COVERAGE PART**

This endorsement, effective        January 9, 2021        forms a part of Policy  #  IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

### SCHEDULE*

| Prem. No. | Bldg. No. | Representations Symbols Applicable |
|---|---|---|
| 1 | 1-15 | W-4 |

**Describe any "W-10":**

| | | |
|---|---|---|

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.** The following is added to the:
   **Commercial Property Conditions**

**REPRESENTATIONS**

1.  As a condition precedent to coverage, you agree that those items listed in the Schedule above do not exist or are satisfied at policy inception, and will not exist or will continue to be satisfied throughout the policy period.

2.  The representations to which this endorsement applies are identified by the following symbols:

**"W-1"**   No "vacant" or "unoccupied" buildings throughout the policy period.

    **a.**   The term "unoccupied" means containing contents pertaining to the occupancy of the building while operations or other customary activities are suspended.

    **b.**   The term "vacant" means containing no contents pertaining to operations or activities customary to occupancy of the building.

**"W-2"**   Commercial buildings at least ___% occupied throughout the policy period.

**"W-3"**   Residential buildings at least ___% occupied throughout the policy period.

**"W-4"**   No aluminum wiring in any building or other structure.

© Copyright, General Star Management Company, Stamford, CT 2006.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**"W-5"**   No covered building or other structure that has a wood shake, wood shingle, or other wood by-product comprising or incorporated in the roof or roofing material.

**"W-6"**   No covered building or other structure that has a mansard roof.

**"W-7"**   No Department of Housing and Urban Development (HUD) housing.

**"W-8"**   No student housing, including but not limited to preparatory school, college or university housing.

**"W-9"**   No nursing home or other elderly-related housing.

**"W-10"**  The representation described in the Schedule.

**B.** With respect to this endorsement, the following is added to the policy:

It is agreed that the specific representations shown in the Schedule above are considered incorporated into and constitute a part of this policy.   By acceptance of this policy, you agree:

**1.**   That the representations indicated are deemed material to the acceptance of the risk or hazard under this policy and that the policy is issued in reliance upon the truth of these representations; and

**2.**   That in the event one or more representations are misrepresented by you that would materially affect the acceptance of the risk or hazard assumed, we may:

    **a.**   Reevaluate the risk or hazard in light of the misrepresentation, revise our coverage and/or rating and, if you agree, continue coverage under this policy; or

    **b.**   Decide to remove the specific risk or hazard from our policy entirely; or

    **c.**   Enforce the provisions of section A. Concealment, Misrepresentation Or Fraud in the Commercial Property Conditions.

Policy Number   IAG967197C

**COMMERCIAL PROPERTY**

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

I. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

COMMERCIAL PROPERTY
CP 00 17 10 12

# CONDOMINIUM ASSOCIATION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, outside of individual units, including outdoor fixtures;

(3) Permanently installed:

   (a) Machinery; and

   (b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

   (a) Fire-extinguishing equipment;

   (b) Outdoor furniture;

   (c) Floor coverings; and

   (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

(5) If not covered by other insurance:

   (a) Additions under construction, alterations and repairs to the building or structure;

   (b) Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure; and

(6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

   (a) Fixtures, improvements and alterations that are a part of the building or structure; and

   (b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph **A.1.a.(6)** above.

**b. Your Business Personal Property** located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

(1) Personal property owned by you or owned indivisibly by all unit-owners;

(2) Your interest in the labor, materials or services furnished or arranged by you on personal property of others; and

(3) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

But Your Business Personal Property does not include personal property owned only by a unit-owner.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities.

**b.** Animals, unless owned by others and boarded by you;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.**, does not apply to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

© Insurance Services Office, Inc., 2011

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops; or

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(c)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(d)** Remove deposits of mud or earth from the grounds of the described premises;

**(e)** Extract "pollutants" from land or water; or

**(f)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

## Example 1

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

## Example 2

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 = 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

 © Insurance Services Office, Inc., 2011

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

You may extend the insurance that applies to Building to apply to:

**(a)** Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

    (i) Similar use as the building described in the Declarations; or

    (ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

    (i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

    (ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

    (i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

    (ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the described premises.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the business personal property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−      250
$ 59,850   Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $  70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $  90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $  60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $  80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

  **(1)** Pay the value of lost or damaged property;

  **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

  **(3)** Take all or any part of the property at an agreed or appraised value; or

  **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

  **(1)** We have reached agreement with you on the amount of loss; or

  **(2)** An appraisal award has been made.

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Unit-owner's Insurance**

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary and not to contribute with such other insurance.

**7. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**8. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b.** and **c.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** Glass at the cost of replacement with safety-glazing material if required by law.

**9. Waiver Of Rights Of Recovery**

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

(4) Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

When:   The value of the property is:   $ 250,000

The Coinsurance percentage for it is:   80%

The Limit of Insurance for it is:   $ 100,000

The Deductible is:   $    250

The amount of loss is:   $  40,000

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

When:   The value of the property is:   $ 250,000

The Coinsurance percentage for it is:   80%

The Limit of Insurance for it is:   $ 200,000

The Deductible is:   $    250

The amount of loss is:   $  40,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

    **b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:   The value of the property is:

Building at Location 1:   $  75,000

Building at Location 2:   $ 100,000

Personal Property at Location 2:   $  75,000

$ 250,000

The Coinsurance percentage for it is:   90%

The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is:   $ 180,000

The Deductible is:   $    1,000

The amount of loss is:

Building at Location 2:   $  30,000

Personal Property at Location 2:   $  20,000

$  50,000

Step **(1)**: $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2)**: $180,000 ÷ $225,000 = .80

Step **(3)**: $50,000 x .80 = $40,000

Step **(4)**: $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

    **2. Mortgageholders**

      **a.** The term mortgageholder includes trustee.

      **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

      **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

      **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $    3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence; or

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit-owners, and the property covered under Paragraph **A.1.a.(6)** of this Coverage Form, are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# Commercial Property Additional Coverage Endorsement (COMPAC)

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CAUSES OF LOSS- SPECIAL FORM**

The following is a summary of the Limits of Insurance for each Additional Coverage, Coverage Extension and Optional Coverage provided by this endorsement. Unless otherwise noted these Limits of Insurance apply per occurrence.

| COVERAGE | LIMIT OF INSURANCE |
| --- | --- |
| 1. Fire Department Service Charge | $2,500 each occurrence |
| 2. Personal Effects & Property Of Others | $5,000 at described location subject to $1,000 any one item |
| 3. Valuable Papers & Records (Other Than Electronic Data) | $10,000      each described premises |
| 4. Property Off-Premises | $15,000 each occurrence |
| 5. Outdoor Property – Trees, Shrubs, Plants | $2,500 each occurrence subject to $500 any one item |
| 6. Outdoor Property – Fences; Radio / Television Antennas; Signs | $10,000 each occurrence fences; radio / television antennas (broadened specified perils); $2,500 each occurrence per sign (non-specified perils) |
| 7. Accounts Receivable | $10,000      each occurrence at the described premises |
| 8. Employee Dishonesty | $5,000 all claims or occurrence |
| 9. Loss Of Monies & Securities | $5,000 all claims or occurrences during the policy period |
| 10. Property In Transit – Your Vehicles | $10,000 each occurrence |

## A. ADDITIONAL COVERAGES

Provision **c.** in Section **A.4. Additional Coverages** of the **Building And Personal Property Coverage Form** or the **Condominium Association Coverage Form [which ever coverage form is attached to the policy]** is amended as follows:

**FIRE DEPARTMENT SERVICE CHARGES**
Paragraph **c. Fire Department Service Charge** of Section **A.4. Additional Coverages** is deleted and replaced with the following:

    **c.**    **Fire Department Service Charge**
        When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations.  Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

© Copyright, General Star Management Company, Stamford, CT 2013.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

This Additional Coverage applies to your liability for fire department service charges:
**(1)** Assumed by contract or agreement prior to loss; or
**(2)** Required by local ordinance.

No deductible applies to this Additional Coverage

## B. COVERAGE EXTENSIONS

Provisions **b.** through **e.** in Section **A.5. Coverage Extensions** of the **Building And Personal Property Coverage Form** or the **Condominium Association Coverage Form [which ever coverage form is attached to the policy]** are amended as follows:

### PERSONAL EFFECTS AND PROPERTY OF OTHERS

Paragraph **b. Personal Effects And Property Of Others** of Section **A.5. Coverage Extensions** is deleted and replaced with the following:

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:
**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees.  This extension does not apply to loss or damage by theft.
**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $5,000 at each described premises, but not more than $1,000 for any one item of property.  Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

### VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA)

Paragraph **c.(4)** in **Valuable Papers And Records (Other Than Electronic Data)** of Section **A.5. Coverage Extensions** is deleted and replaced with the following:

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(4)** Under this Extension, the most we will pay to replace or restore the lost information at each described premises is the amount shown in the Schedule, unless a higher limit is shown in the **Declarations.** Such amount is additional insurance.
**(5)** We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records.  The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

### PROPERTY OFF-PREMISES

Subparagraph **d.(3)** in **Property Off-Premises** of Section **A.5. Coverage Extensions** is deleted and replaced by the following:

**d. Property Off-Premises**
**(3)** The most we will pay for loss or damage under this Extension is $15,000 each occurrence.

### OUTDOOR PROPERTY

Paragraph **e. Outdoor Property** of Section **A.5. Coverage Extensions** is deleted and replaced by the following:

**e. Outdoor Property**
You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs, trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss:

**(1)** For trees, shrubs, or plants:
   **(a)** Fire;
   **(b)** Lightning;
   **(c)** Explosion;
   **(d)** Riot or Civil Commotion; or
   **(e)** Aircraft.
   The most we will pay for loss or damage for the property listed above under Subparagraph **e.(1)** is $2,500 but not more than $500 for any one tree, shrub, or plant.
**(2)** For outdoor fences, radio and television antennas (including satellite dishes) and signs:
   **(a)** Fire;
   **(b)** Lightning;
   **(c)** Explosion;
   **(d)** Riot or Civil Commotion;
   **(e)** Aircraft;
   **(f)** Windstorm, if not excluded elsewhere in the policy;
   **(g)** Hail, if not excluded elsewhere in the policy;
   **(h)** Smoke;
   **(i)** Vehicles;
   **(j)** Vandalism;
   **(k)** Breakage of glass;
   **(l)** Falling objects;
   **(m)** Weight of snow, ice, or sleet;
   **(n)** Water damage; or
   **(o)** Collapse resulting from use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling, or renovation.
   The most we will pay for loss or damage for the property listed above under Subparagraph **e.(2)** is $10,000.
**(3)** For signs, the most we will pay for loss or damage caused by a covered cause of loss not listed in Paragraph **(2)** above is $2,500 per sign in any one occurrence.

These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

The following provisions **g.** through **i.** are added to Section **A.5. Coverage Extensions** of the **Building And Personal Property Coverage Form** or the **Condominium Association Coverage Form [which ever form is attached to the policy]:**

## ACCOUNTS RECEIVABLE

**g. Accounts Receivable**
  **(1)** If this policy covers Your Business Personal Property, this Extension extends that insurance to apply to accounts receivable.

   We will pay as a result of direct physical loss or damage by a Covered Cause of Loss to your records of accounts receivable:
   **(a)** All amounts due from your customers that you are unable to collect;
   **(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;
   **(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss of damage; and
   **(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

**(2)** Coverage does not apply to:
    **(a)**  Records of account receivable in storage away from the described premises; or
    **(b)**  Contraband, or property in the course of illegal transportation or trade.
**(3)** If you give us written notice within 10 days of removal of your records of accounts receivable because of imminent danger of loss or damage, we will pay for loss or damage while they are:
    **(a)**  At a safe place away from the described premises;
    **(b)**  Being taken to and returned from that place.
**(4)** The most we will pay under this Extension for loss or damage in any one occurrence at the described premises is the amount shown in the Schedule.
**(5)** With respect to this Extension, the following Exclusions as stated in Section **B. Exclusions** in the **Causes of Loss – Special Form** apply:
    **(a)**  Paragraph **B.1.c. Governmental Action;**
    **(b)**  Paragraph **B.1.d. Nuclear Hazard;**
    **(c)**  Paragraph **B.1.f. War and Military Action;**
    **(d)**  Paragraph **B.2.i.;** and
    **(e)**  Paragraph **B.3.**
**(6)** Paragraph **B.2.h.** of the **Causes of Loss – Special Form** is deleted and replaced by the following:
    **h.**  Dishonest or criminal acts by you, anyone else with an interest in the property, or their employees or authorized representatives, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
        **(1)**  Acting alone or in collusion with others; or
        **(2)**  Whether or not occurring during the hours of employment.
        This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered;
**(7)** With respect to this Extension, the following exclusions are added:
    **(a)**  Loss or damage caused by or resulting from:
        **i.**  Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities, or other property;
        **ii.**  Bookkeeping, accounting or billing errors or omissions;
        **iii.**  Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:
            **(i)**  Programming errors or faulty machine instructions;
            **(ii)**  Faulty installation or maintenance of data processing equipment or component parts;
            **(iii)**  An occurrence that took place more than 100 feet from the described premises; or
            **(iv)**  Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from the described premises.
            But we will pay for direct loss or damage caused by lightning;
        **iv.**  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss; or
        **v.**  Unauthorized instructions to transfer property to any person or to any place.
    **(b)**  Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**EMPLOYEE DISHONESTY**

  **h.**  **Employee Dishonesty**
    **(1)** We will pay for direct loss of or damage to Your Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you or your partner) with the intent to:
    **(a)**  Cause you to sustain loss or damage; and also
    **(b)**  Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:
        **i.**  Any "employee"; or

      **ii.**    Any other person or organization.

**(2)** We will not pay for loss or damage:

    **(a)**   Resulting from any dishonest or criminal act that you, any of your partners, or any of your "members" commit whether acting alone or in collusion with any other persons.

    **(b)**   The only proof of which as its existence or amount is dependent upon,

        **i.**    An inventory computation; or

        **ii.**   A profit and loss computation.

        However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of loss claimed.

    **(c)**   Resulting from an "employee" of yours or predecessor in interest of yours, for whom similar prior insurance has been canceled and not reinstated since the last such cancellation.

    **(d)**   Resulting from trading, whether in your name or in genuine or fictitious account.

    **(e)**   Resulting from fraudulent or dishonest signing, issuing, canceling, or failing to cancel, a warehouse receipt or any papers connected with it.

**(3)** All loss or damage:

    **(a)**   Caused by one or more persons; or

    **(b)**   Involving a single act or series of related acts;

    is considered one occurrence.

**(4)** The most we will pay, under this Employee Dishonesty Coverage Extension, for loss or damage regardless of the number of claims or occurrences is $5,000.

**(5)** We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**(6)** This Extension does not apply to any "employee" immediately upon discovery by:

    **(a)**   You; or

    **(b)**   Any of your partners, officers or directors not in collusion with the "employee";

    of any dishonest act committed by that "employee" before or after being hired by you.

**(7)** We will pay only for covered loss or damage discovered no later than one year from the end of the policy period.

**(8)** If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Extension, provided:

    **(a)**   This Extension became effective at the time of cancellation or termination of the prior insurance; and

    **(b)**   The loss or damage would have been covered by this Extension had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**(9)** The insurance under Subparagraph **(8)** above is part of, not in addition to, the Limit of Insurance applying to this Extension and is limited to the lesser of the amount recoverable under:

    **(a)**   This Extension as of its effective date; or

    **(b)**   The prior insurance had it remained in effect.

**(10)** With respect to this Extension only, paragraph **a.** in Section **A.2. Property Not Covered** is deleted and replaced with the following:

    **a.**   Accounts, bills, currency, food stamps, notes or other evidences of debt.

**(11)** With respect to this Extension only, Paragraph **2.h.** in Section **B. Exclusions** of the **Causes of Loss – Special Form** does not apply.

**(12)** With respect to this Extension only, we will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds a $250 Deductible. We will then pay the amount of loss excess of that Deductible, up to the applicable Limit of Insurance. No other Deductible in this policy applies to the coverage provided by this Extension.

**(13)** With respect to this Extension only, the following definitions apply:

    **(a)**   "Employee(s)" means:

        **i.**    Any natural person:

            **(i)**    While in your service (and for 30 days after termination of service);

            **(ii)**   Who you compensate directly by salary, wages or commissions; and

            **(iii)**  Whom you have the right to direct and control while performing services for you; or

© Copyright, General Star Management Company, Stamford, CT 2013.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

      **ii.**   Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises.

**(b)** "Manager" means a person serving in a directorial capacity.

**(c)** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**(d)** "Money" means:

    **i.**   Currency, coins and bank notes in current use and having a face value; and

    **ii.**  Traveler's checks, register checks and money orders held for sale to the public.

**(e)** "Securities" means negotiable and non-negotiable instruments or contract representing either "money" or other property includes:

    **i.**   Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **ii.**  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    "Securities" does not include "money" or lottery tickets held for sale.

## LOSS OF MONEY AND SECURITIES

**i.**  **Loss Of Money And Securities**

**(1)** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, at the described premises or in transit between any of these places, resulting directly from:

    **(a)** "Theft", unless excluded elsewhere in the policy;

    **(b)** Disappearance; or

    **(c)** Destruction.

**(2)** In addition to the limitations shown in Section **C. Limitations** and exclusions shown in Section **B. Exclusions** of the **Covered Causes of Loss – Special Form,** we will not pay for the loss:

    **(a)** Resulting from accounting or arithmetical errors or omissions;

    **(b)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(c)** Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

    **(d)**  **i.**   Of property after it has been transferred or surrendered to a person or place outside the bank or savings institution or the described premises:

        **(i)**  On the basis of unauthorized instructions; or

        **(ii)** As a result of a threat to do:

            **1)**  Bodily harm to any person; or

            **2)**  Damage to any property.

      **ii.**  But, this exclusion does not apply to loss of Covered Property while outside the bank or savings institution or the described premises if you:

        **(i)**  Had no knowledge of any threat at the time the conveyance began; or

        **(ii)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

    **(e)** Resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**(3)** Loss or damage:

    **(a)** Caused by one or more persons; or

    **(b)** Involving a single act or series of related acts;

    Is considered one occurrence.

**(4)** The most we will pay under this Extension for loss or damage regardless of the number of claims or occurrences is $5,000.

**(5)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**(6)** With respect to this Extension only, paragraph **a.** in Section **A.2. Property Not Covered** is deleted and replaced with the following:

    **a.** Accounts, bills, currency, food stamps, notes or other evidences of debt.

**(7)** With respect to this Extension only, we will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds a $250 Deductible.  We will then pay the amount of loss excess of that Deductible, up to the applicable Limit of Insurance.  No other Deductible in this policy applies to the coverage provided by this Extension.

**(8)** With respect to this Extension only, the following definitions apply:

    **(a)** "Money" means:
        **i.** Currency, coins and bank notes in current use and having a face value; and
        **ii.** Traveler's checks, register checks and money orders held for sale to the public.

    **(b)** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:
        **i.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and
        **ii.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;
        "Securities" does not include "money" or lottery tickets held for sale.

    **(c)** "Theft" means any act of stealing except by an employee, director, officer, trustee or representative.

## C. LIMITS OF INSURANCE

Section **C.** of the **Building And Personal Property Coverage Form** or the **Condominium Association Coverage Form [which ever form is attached to the policy]** is deleted and replaced by the following:

**C. Limits of Insurance**

The most we will pay for loss or damage in any on occurrence is the applicable Limit Of Insurance shown in the **Declarations.**

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the **Declarations** for any other coverage:

**1.** Fire Department Service Charge;
**2.** Pollutant Clean-up And Removal;
**3.** Increased Cost Of Construction; and
**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

## D. LOSS CONDITIONS

Paragraph **4. Loss Payment** of Section **E. Loss Conditions** of the **Building And Personal Property Coverage Form** or the **Condominium Association Coverage Form [which ever form is attached to the policy]** is deleted and replaced by the following:

**4. LOSS PAYMENT**

    **a.** Except with respect to loss or damage provided under Paragraph **g. Accounts Receivable,** Paragraph **h. Employee Dishonesty** and Paragraph **i. Loss of Money And Securities** in Section **B. Coverage Extensions** of this endorsement, the following condition applies:

        **(1)** In the event of loss or damage covered by this Coverage Part, at our option, we will either:
            **(a)** Pay the value of lost or damaged property;
            **(b)** Pay the cost of repairing or replacing the lost or damage property, subject to Subparagraph **(2)** below;
            **(c)** Take all or any part of the property at an agreed or appraised value; or
            **(d)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Subparagraph **(2)** below.

        We will determine the value of lost or damage property, or the cost of its repair or replacement, in accordance with the applicable terms of Paragraph **7. Valuation** in Section **E. Loss Conditions** of the

© Copyright, General Star Management Company, Stamford, CT 2013.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**Building and Personal Property Coverage Form** or any applicable provision that amends or supersedes Paragraph **7. Valuation**, or Paragraph **8. Valuation** in Section **E. Loss Conditions** of the **Condominium Association Coverage Form** or any applicable provisions that amends or supersedes Paragraph **8.** which ever coverage form is attached to the policy.

(2) The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

(3) We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

(4) We will not pay you more than your financial interest in the Covered Property.

(5) We may adjust losses with the owners of lost or damaged property if other than you.  If we pay the owners, such payments will satisfy your claims against us for the owners' property.  We will not pay the owners more than their financial interest in the Covered Property.

(6) We may elect to defend you against suits arising from claims of owners of property.  We will do this at our expense.

(7) We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

(a)   We have reached agreement with you on the amount of loss; or

(b)                                                    An appraisal award has been made.

If you are a condominium association and you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee.  If we pay the trustee, the payments will satisfy your claims against us.

(8) A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties.  In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building.  However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including the Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition.  Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights OF Recovery Against Others To US Condition in this policy.

b. **Accounts Receivable Condition**

With respect to coverage provided in Paragraph **g. Accounts Receivable** in Section **B. Coverage Extensions** of this Endorsement, the following condition applies:

(1) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(a)   We will determine the total of the average monthly amount of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(b)   We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(2) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(a)   The amount of the accounts for which there is no loss or damage;

(b)   The amount of the accounts that you are able to re-establish or collect;

(c)   An amount to allow for probable bad debts that you are normally unable to collect; and

(d)   All unearned interest and service charges.

c. **Employee Dishonesty Condition**

With respect to coverage provided in Paragraph **h. Employee Dishonesty** in Section **4. Coverage Extensions** of this Endorsement, the following condition applies:

(1) We will pay for:

(a)   Loss of "money" but only up to and including its face value.  We may, at our option, pay for loss of "money" issued by any country other than the United States of America;

i.   At face value in the "money" issued by the country; or

© Copyright, General Star Management Company, Stamford, CT 2013.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

   **ii.** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

  **(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered.  We may, at our option:

   **i.** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in those "securities".

   **ii.** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of those "securities".  However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the value of the "securities" at the close of business on the day the loss was discovered or the Limit of Insurance.

 **(2)** We may at our option pay for loss of, or loss from damage to property other than "money":

  **(a)** In the "money" of the country in which the loss occurred; or

  **(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

 **(3)** Any property that we pay for or replace becomes our property.

 **d. Loss Of Money And Securities Condition**

 With respect to coverage provided in Paragraph **i. Loss Of Money And Securities** of Section **2. Coverage Extensions** of this Endorsement, the following condition applies:

 **(1)** We will pay for:

  **(a)** Loss of "money" but only up to and including its face value.  We may, at our option, pay for loss of "money" issued by any country other than the United States of America;

   **i.** At face value in the "money" issued by the country; or

   **ii.** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

  **(b)** Loss of "securities" but only up to and including its face value.  We may, at our option, pay for loss of "money" issued by any country other than the United States of America;

   **i.** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in those "securities".

   **ii.** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of those "securities".  However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the value of the "securities" at the close of business on the day the loss was discovered or the Limit of Insurance.

 **(2)** We may at our option pay for the loss of, or loss from damage to property other than "money":

  **(a)** In the "money" of the country in which the loss occurred; or

  **(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

 **(3)** Any property that we pay for or replace becomes our property.

## E. ADDITIONAL COVERAGE EXTENSIONS

**PROPERTY IN TRANSIT**
Paragraph **1.c.** in **Property in Transit** of Section **F. Additional Coverage Extensions** of the **Causes of Loss – Special Form** is deleted and replaced by the following:

### 1. Property In Transit

 **c.** The most we will pay for loss or damage under this Extension is $10,000.

POLICY NUMBER: IAG967197C

**COMMERCIAL PROPERTY**
**CP 10 36 10 12**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATIONS ON COVERAGE FOR ROOF SURFACING

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number | Building Number | Indicate Applicability (Paragraph A. and/or Paragraph B.) |
|---|---|---|
| All premises with roof age of 12 years or greater. | All buildings with roof age of 12 years or greater. | Paragraph A |
| | | |
| | | |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following applies with respect to loss or damage by a **Covered Cause of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule as being subject to this Paragraph **A.:**

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

**B.** The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.:**

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

**C.** For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL COVERED PROPERTY – FENCES

This Endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**

This Endorsement  , effective   January 9, 2021   forms a part of Policy # IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by General Star Indemnity Company.

1.  The following property is added to Section **A.1.a Covered Property**:

Fences.

2.  Paragraph **A.2.q.(2) Property Not Covered** is hereby deleted and replaced with the following:

(2)  Radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs, or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

3.  Paragraph **A.5.e. Outdoor Property** is hereby deleted and replaced with the following:

e.  **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1)  Fire;
(2)  Lightning;
(3)  Explosion;
(4)  Riot or Civil Commotion; or
(5)  Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant.  These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

All other terms, conditions, and exclusions remain unchanged.

PP 04 0002 06 13              © Copyright, General Star Management Company, Stamford, CT, 2013              Page 1 of 1

COMMERCIAL PROPERTY
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2016

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

© Insurance Services Office, Inc., 2016

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

  **(1)** You do your best to maintain heat in the building or structure; or

  **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

  This exclusion:

  **(1)** Applies whether or not an act occurs during your normal hours of operation;

  **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

  **(1)** An abrupt falling down or caving in;

  **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

  **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

  But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

  **(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

  **(b)** To collapse caused by one or more of the following:

    **(i)** The "specified causes of loss";

    **(ii)** Breakage of building glass;

    **(iii)** Weight of rain that collects on a roof; or

    **(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

  This exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

  **a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

  **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

  **c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

**c. Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.** Ordinance Or Law;

(b) Paragraph **B.1.c.** Governmental Action;

(c) Paragraph **B.1.d.** Nuclear Hazard;

(d) Paragraph **B.1.e.** Utility Services; and

(e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

© Insurance Services Office, Inc., 2016

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   **d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

      **(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      **(2)** Business Income Coverage or Extra Expense Coverage.

   **e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   **f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   **g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      **(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

      **(2)** Changes in or extremes of temperature;

      **(3)** Disease;

      **(4)** Frost or hail; or

      **(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   **a.** Animals, and then only if they are killed or their destruction is made necessary.

   **b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      **(1)** Glass; or

      **(2)** Containers of property held for sale.

   **c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

      **(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

(2) To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      (1) A cause of loss listed in **2.a.** or **2.b.;**

      (2) One or more of the "specified causes of loss";

      (3) Breakage of building glass;

      (4) Weight of people or personal property; or

      (5) Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b.  Awnings, gutters and downspouts;

c.  Yard fixtures;

d.  Outdoor swimming pools;

e.  Fences;

f.  Piers, wharves and docks;

g.  Beach or diving platforms or appurtenances;

h.  Retaining walls; and

i.  Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

(1)  Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2)  The property is Covered Property under this Coverage Form.

5.  If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a.  The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b.  The personal property which collapses is inside a building; and

c.  The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6.  This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7.  This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8.  The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E.  **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1.  The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a.  A "specified cause of loss" other than fire or lightning; or

b.  Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2.  We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a.  Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b.  The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c.  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3.  The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

## F. Additional Coverage Extensions

### 1. Property In Transit

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

   **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

   **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

   **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

### 2. Water Damage, Other Liquids, Powder Or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

 © Insurance Services Office, Inc., 2016

3. **Glass**

    **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        **(1)** The cost of filling sinkholes; or

        **(2)** Sinking or collapse of land into man-made underground cavities.

    **b.** Falling objects does not include loss or damage to:

        **(1)** Personal property in the open; or

        **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means:

        **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

        **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

# GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

This endorsement , effective      January 9, 2021      forms a part of Policy # IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by General Star Indemnity Company.

A.    The following is added as an Additional Coverage to the Causes of Loss— Basic Form, Broad Form or Special Form.

Additional Coverage-- Equipment Breakdown
The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1.    We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

a.    mechanical breakdown, including rupture or bursting caused by centrifugal force;

b.    artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

c.    explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

d.    loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

e.    loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2.    Unless otherwise shown in a Schedule, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

a.    Expediting Expenses
With respect to your damaged Covered Property, we will pay up to $25,000 unless otherwise shown in a Schedule, the reasonable extra cost to:

(1)    make temporary repairs; and

(2)    expedite permanent repairs or permanent replacement.

b.    Hazardous Substances
We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.
This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in 2.c.(1)(b) below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $25,000 unless otherwise shown in a Schedule.

    c.    Spoilage

        (1)    We will pay:

            (a)    for physical damage to "perishable goods" due to spoilage;

            (b)    for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

            (c)    any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

        (2)    If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in a Schedule.

    d.    Data Restoration

We will pay for your reasonable and necessary cost to research, replace and restore lost "data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $500 unless otherwise shown in a Schedule.

    e.    Service Interruption

        (1)    Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by an "accident" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

        (2)    Unless otherwise shown in a Schedule, Service Interruption coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident."

        (3)    The most we will pay for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense or Spoilage, except that if a limit is shown in a Schedule for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

    f.    Business Income and Extra Expense

Any insurance provided under this coverage part for Business Income or Extra Expense is extended to the coverage provided by this endorsement. The most we will pay for loss of Business Income you sustain or necessary Extra Expense you incur is the limit shown in the Declarations for that coverage, unless otherwise shown in a Schedule.

  3.    EXCLUSIONS

All exclusions in the Causes of Loss form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

    a.    The exclusions are modified as follows:

        (1)    If the Causes of Loss -- Basic Form or Causes of Loss -- Broad Form applies, the following is added to Exclusion B.2.:

Depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. But if an "accident" results, we will pay for the resulting loss, damage or expense.

(2) If the Causes of Loss—Special Form applies, as respects this endorsement only, the last paragraph of Exclusion B.2.d. is deleted and replaced with the following:

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

b. We will not pay under this endorsement for loss, damage or expense caused by or resulting from:

(1) any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense; or

(2) any of the following tests:

a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

c. With respect to Service Interruption coverage, we will also not pay for

an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

d. With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for any increase in loss resulting from an agreement between you and your customer or supplier.

e. We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident": Any mold, fungus, mildew or yeast, including any spores or toxins produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such mold, fungus, mildew or yeast, spores or toxins. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that spoilage is covered under Spoilage coverage.

f. We will not pay under this endorsement for any loss or damage to animals.

4. DEFINITIONS

The following definitions are added:

a. "Boilers and vessels" means:

(1) Any boiler, including attached steam, condensate and feedwater piping; and

(2) Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

b. "Covered equipment"

(1) "Covered equipment" means, unless otherwise specified in a Schedule, Covered Property:

(a) that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

(b) which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

(2) None of the following is "covered equipment":

(a) structure, foundation, cabinet, compartment or air supported structure or building;

(b) insulating or refractory material;

(c)     sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

(d)     water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

(e)     "vehicle" or any equipment mounted on a "vehicle";

(f)     satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

(g)     dragline, excavation or construction equipment; or

(h)     equipment manufactured by you for sale.

c.     "Data" means information or instructions stored in digital code capable of being processed by machinery.

d.     "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

e.     "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

f.     "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

g.     "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

h.     "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any fired or unfired pressure vessel other than a cylinder containing a movable plunger or piston.

This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

i.     "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

B.     The Commercial Property Coverage Form to which this endorsement is attached is modified as follows.

The definitions stated above also apply to section B. of this endorsement.

1.     **DEDUCTIBLE**

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a Schedule.  If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision D. DEDUCTIBLE is deleted and replaced with the following:

a.     Deductibles for Each Coverage

(1)     Unless the Schedule indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

(2)     We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

(3)     If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

b.     Direct and Indirect Coverages

 © Copyright, General Star Management Company, Stamford, CT 2009.

      (1)     Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule.

      (2)     Unless more specifically indicated in the Schedule:

          (a)    Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and

          (b)    Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

    c.     Application of Deductibles

      (1)     Dollar Deductibles

We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

      (2)     Time Deductible

If a time deductible is shown in the Schedule, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

      (3)     Multiple of Average Daily Value (ADV)

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the period of restoration.

The number indicated in the Schedule will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

      (4)     Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

2.     CONDITIONS

The following conditions are in addition to the Conditions in the Commercial Property Coverage Form to which this endorsement is attached and the Common Policy Conditions.

    a.     Suspension

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

      (1)     your last known address; or

      (2)     the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period

of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

b.     Jurisdictional Inspections

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

c.     Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

d.     Coinsurance

If a coinsurance percentage is shown in a Schedule for specified coverages, the following condition applies.

We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a Schedule. Coverage provided under this endorsement does not provide an additional amount of insurance.

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION AND TOXIC MATERIALS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under this policy.

This endorsement, effective     January 9, 2021     forms a part of Policy # IAG967197C

issued to HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

The following exclusions are added to the policy.

1. We will not pay for any loss, damage or expense arising out of:
   a. the actual, alleged or threatened release or escape of asbestos,
   b. the removal of asbestos from any structure, fixture, item of   personal  property or product,
   c. any demolition, increased cost of reconstruction, repair or loss of use necessitated by a governmental entity's enforcement of any statute, regulation or order regulating asbestos.

   This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expense.

2. We will not pay for any loss, damage or expense arising out of the actual, alleged or threatened release or escape of any solid, liquid or gaseous material that is toxic or poisonous to humans or animals, ("toxic materials"), including but not limited to dioxin, polychlorinated biphenyls and lead.

   This exclusion also applies to:
   a. the removal of toxic materials from any structure, fixture, item of  personal property or product, and
   b. any demolition, increased cost of reconstruction, repair or loss of use necessitated by a governmental entity's enforcement of any statute, regulation or order regulating toxic materials.

   This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expense.

All other terms, conditions and exclusions remain unchanged.

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION EXCLUSION ENDORSEMENT (SPECIAL FORM)

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – SPECIAL FORM

This endorsement, effective     January 9, 2021      forms a part of Policy # IAG967197C
issued to HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by General Star Indemnity Company.

Paragraph **2.l.** of Section **B. Exclusions** of the **Causes of Loss – Special Form** is hereby deleted and replaced with the following:

**l.**  Discharge, dispersal, seepage, migration, release or escape of "pollutants".  This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expense.  However, smoke is not considered to be a "pollutant" if the discharge, dispersal, seepage, migration, release or escape of the smoke is caused by any of the "specified causes of loss" covered by this policy.

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

All other terms, conditions and exclusions remain unchanged.

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CATASTROPHIC CAUSE OF LOSS PER OCCURRENCE ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement, effective        January 9, 2021        forms a part of Policy #  IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

**A.  PERIODS OF OCCURRENCE**

    **1.**  If Windstorm or Hail is covered under this Policy, the following conditions will apply:  All Windstorm or Hail events occurring within any 72-hour period will constitute a single occurrence. The expiration of this policy will not reduce the 72-hour period.  When filing the proof of loss, you may elect the moment at which the 72-hour period will be deemed to have commenced, but no earlier than when the first loss to the Covered Property occurred.

    **2.**  If Earthquake or Volcanic Eruption is covered under this Policy, the following conditions will apply: All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single Earthquake or Volcanic Eruption.  The expiration of this policy will not reduce the 168-hour period.

    **3.**  If Flood is covered under this Policy, the following condition will apply:  All flooding in a continuous or protracted event will constitute a single flood.

In no event will payment made under this policy exceed the applicable Limit of Insurance shown in the Declarations, regardless of the number of covered locations involved or sublimits applicable in any one occurrence.

All other terms, conditions and exclusions remain unchanged.

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OCCURRENCE LIMIT OF INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

This endorsement, effective        January 9, 2021      forms a part of Policy #  IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

The premium for this policy is based on the latest statement of values that is either on file with us or attached to this policy.  In the event of loss or damage to Coverage Property, we will pay the least of:

    a.   The actual adjusted amount of loss, less applicable deductible(s);
    b.   The total stated value(s) for the covered property involved as shown on the latest statement of values on file with the company, less applicable deductible(s);
    c.   The applicable Limit of Insurance shown in the Declarations or endorsed onto this policy; or
    d.   The remaining amount of any applicable aggregate limit.

Not withstanding the foregoing, the most we will pay for loss or damage to Covered Property in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

All other terms, conditions and exclusions remain unchanged.

02 PP 633 (11/04)                                                                                  Page 1 of 1

GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXTERIOR INSULATION AND FINISHING SYSTEMS EXCLUSION OF WIND, HAIL AND WATER DAMAGE

This endorsement modifies insurance provided under this Policy.

This endorsement, effective      January 9, 2021      forms a part of Policy #  IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by  General Star Indemnity Company.

The following exclusion is added to the Policy.

We will not pay for loss or damage caused directly or indirectly by or resulting from wind, hail or  water damage to buildings constructed of Exterior Insulation and Finishing Systems (EIFS), Dryvit or synthetic stucco.

As used in this endorsement, Exterior Insulation and Finishing Systems (EIFS) means a non-load bearing exterior wall cladding system consisting of an insulation board, an adhesive and/or mechanical attachment of the insulation board to the substrate, an integrally reinforced base coat and applicable accessories, flashing, coating and sealants that interact to form an energy efficient wall.

All other terms, conditions and exclusions remain unchanged.

02 PP 673 (11/04)

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BIOLOGICAL OR CHEMICAL MATERIALS
# EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM

This endorsement , effective   January 9, 2021   forms a part of Policy # IAG967197C

issued to HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by General Star Indemnity Company.

The following exclusion is added to Section **B. Exclusions:**

This policy does not provide any coverage for any loss, cost, expense or damage of any nature, however caused, directly or indirectly, arising out of, resulting from, or in any way related to the actual or suspected presence or threat of any pathogenic or poisonous biological or chemical substance or material of any kind, including, but not limited to, any malicious use of such substance or material, whether isolated or widespread, regardless of any other cause or event contributing at the same time or in any sequence.

All other terms, conditions and exclusions remain unchanged.

PP 21 0037 11 19

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF THE NUCLEAR HAZARD
## EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM

This endorsement ,  effective       January 9, 2021       forms a part of Policy #  IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by General Star Indemnity Company.

Paragraph **1.d. Nuclear Hazard** of Section **B. Exclusions** is deleted and replaced by the following:

**d.  Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss, cost, expense or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property in the states where required by law.  Such coverage applies only to direct loss or damage by fire to Covered Property.  Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms.

All other terms, conditions and exclusions remain unchanged.

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TERRORISM EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM

This endorsement , effective    January 9, 2021    forms a part of Policy # IAG967197C

issued to  HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by General Star Indemnity Company.

**A.** The following exclusion is added to Section **B. Exclusions:**

**EXCLUSION OF TERRORISM**

We will not pay for loss, cost, expense or damage however caused, directly or indirectly, arising out of, resulting from, or in any way related to an actual or threatened act of "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss, cost, expense or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

However, if "terrorism" results in fire, we will pay for the loss, cost, expense or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property in the states where required by law. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms.

**B.** The following definition is added to Section **G. Definitions:**

1.  "Certified acct of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    As respects "certified acts of terrorism", if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**2.** "Terrorism" means activities against persons, organizations or property of any nature:

    **a.** That involves the following or preparation for the following:

        **(1)** Use or threat of force or violence; or

        **(2)** Commission or threat of a dangerous act; or

        **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; or

        **(4)** Commission or threat of an act of destruction, assassination, kidnapping or hostage-taking; or

        **(5)** Commission or threat of a hijacking or any unlawful exercise or control of any mode of transportation, including, but not limited to aircraft, watercraft, truck(s) or automobile(s), including any attempted seizure of control; and

    **b.** When one or more of the following applies:

        **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

As used in this endorsement, "terrorism" includes "certified acts of terrorism".

All other terms, conditions and exclusions remain unchanged.

# GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS, BACTERIA, PARASITE OR OTHER ORGANISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

This endorsement #            , effective        January 9, 2021       forms a part of Policy #  IAG967197C

issued to   HIGHLANDS OF HIDDEN HILLS CONDO ASSOCIATION, INC

by General Star Indemnity Company.

**A.**   The exclusion set forth in this endorsement applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.**   We will not pay for any loss, damage, claim, cost, expense or other sum, directly or indirectly caused by, arising out of, resulting from or in connection with the actual or suspected presence of any virus (including, but not limited to, SARS-CoV-2), bacterium, parasite or other organism that induces or is capable of inducing physical distress, illness or disease or the fear or threat (whether actual or perceived) of a virus (including, but not limited to, SARS-CoV-2), bacterium, parasite or other organism that induces or is capable of inducing physical distress, illness or disease, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot.  Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.**   For purposes of this endorsement, loss, damage, claim, cost, expense or other sum, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test:

1.   For the presence of any virus, bacterium, parasite or other organism, or

2.   Any property insured hereunder that is affected by such virus, bacterium, parasite or other organism.

**D.**   With respect to any loss, damage, claim, cost, expense or other sum subject to the exclusion in this endorsement, such exclusion supersedes any exclusion relating to "pollutants".

**E.**   The provisions in this Coverage Part and Policy are hereby amended to remove any and all reference to, and coverage provided for, bacteria or bacterium of any kind including, but not limited to, the following:

1.   Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria;

2.   Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria, including any endorsement increasing the scope or amount of coverage; and

3.   Any definition of "fungus".

**F.**   The terms of this exclusion, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

All other terms, conditions and exclusions remain unchanged.

## GENERAL STAR INDEMNITY COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SIGNATURE PAGE

IN WITNESS WHEREOF the      **GENERAL STAR INDEMNITY COMPANY**      has caused this Policy
to be signed by its President and Secretary at Stamford, Connecticut.

GENERAL STAR INDEMNITY COMPANY

_____          _____
Secretary                                              President

SGN 90 0001 0710                    General Star Management Company                    Page 1 of 1

# EXHIBIT B

 **Engle Martin**

**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

| | |
|---|---|
| Insured: | Highlands of Hidden Hills Condo Association, Inc |
| Property: | Highland Hills Parkway |
| | Stone Mountain, GA 30088 |

| Claim Rep.: | Dan Reeder | | Business: | (770) 401-2946 |
|---|---|---|---|---|
| Business: | 5565 Glenridge Connector | Suite 900 | E-mail: | DReeder@englemartin.com |
| | Atlanta, GA 30342 | | | |

| Estimator: | Dan Reeder | | Business: | (770) 401-2946 |
|---|---|---|---|---|
| Business: | 5565 Glenridge Connector | Suite 900 | E-mail: | DReeder@englemartin.com |
| | Atlanta, GA 30342 | | | |

**Claim Number:** G10067888        **Policy Number:** IAG967197C        **Type of Loss:** Wind & Hail

| Date Contacted: | 12/14/2022 7:12 AM | | |
|---|---|---|---|
| Date of Loss: | 4/24/2022 7:11 AM | Date Received: | 12/14/2022 7:12 AM |
| Date Inspected: | 2/7/2023 7:12 AM | Date Entered: | 3/31/2023 7:11 AM |

| Price List: | GAAT8X_MAR23 |
|---|---|
| | Restoration/Service/Remodel |
| Estimate: | 1000386704 |

**IMPORTANT! - PLEASE READ:** This document is an initial estimate ONLY concerning the probable cost of repair of the damage observed during inspection of the claimed loss. Additional inspection and/or investigation of the cause of loss and the damage related thereto may be required before this estimate can be finalized. Please note that this document is NOT a promise or agreement of payment for the claimed loss from Your insurance company or Engle Martin (EM). Instead, this document will be forwarded to Your insurance company for coverage and payment review and decision. This estimate is subject to final review and approval by Your insurance company and is thus subject to further revisions until final written approval is received. All final payment and coverage decisions are made by Your insurance company and NOT by EM. While You await final review and approval by Your insurance company, we request that You present this estimate to Your contractor for its review and comment. In the event of a scope of work or pricing discrepancy between this estimate and Your contractor's estimate, if any, we will work with You and Your contractor to attempt to resolve any such discrepancy; however, the authority to make a final decision on any such discrepancy belongs to Your insurance company, not EM. Finally, please note that You are responsible for selecting and hiring the contractor(s) that You want to perform Your repair work. Neither Your insurance company, nor EM guarantee the work of any contractor, nor do either inspect or monitor the work of any contractor. It is solely Your responsibility to make sure that Your repair work is properly and timely completed.



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

**1000386704**

**5047 Highland Hills Pkwy**

**5047**



**Main Home**

| | |
|---|---|
| 2034.64  Surface Area | 20.35  Number of Squares |
| 308.44  Total Perimeter Length | 73.11  Total Ridge Length |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 1. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 20.35 SQ | 64.08 | 0.00 | 1,304.03 | 16/30 yrs | Avg. | NA | <0.00> | 1,304.03 |
| 2. Remove Additional charge for high roof (2 stories or greater) | | | | | | | | | |
| | 13.16 SQ | 5.67 | 0.00 | 74.62 | 16/NA | Avg. | NA | <0.00> | 74.62 |
| 3. Remove Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | |
| | 1.25 SQ | 23.59 | 0.00 | 29.49 | 16/NA | Avg. | NA | <0.00> | 29.49 |
| 4. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 22.67 SQ | 297.22 | 232.67 | 6,970.65 | 16/30 yrs | Avg. | 53.33% | <3,717.68> | 3,252.97 |
| 5. Additional charge for high roof (2 stories or greater) | | | | | | | | | |
| | 14.47 SQ | 22.71 | 0.00 | 328.61 | 16/NA | Avg. | 0% | <0.00> | 328.61 |
| 6. Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | |
| | 1.37 SQ | 80.83 | 0.00 | 110.74 | 16/NA | Avg. | 0% | <0.00> | 110.74 |
| 7. Asphalt starter - universal starter course | | | | | | | | | |
| | 308.44 LF | 2.17 | 14.06 | 683.37 | 16/20 yrs | Avg. | 80% | <546.70> | 136.67 |
| 8. R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 73.11 LF | 11.24 | 24.68 | 846.44 | 16/35 yrs | Avg. | 45.71% | <356.86> | 489.58 |
| 9. R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 73.11 LF | 8.00 | 7.78 | 592.66 | 16/25 yrs | Avg. | 64% | <231.91> | 360.75 |
| 10. R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 16/35 yrs | Avg. | 45.71% | <73.64> | 110.13 |
| 11. Digital satellite system - Detach & reset | | | | | | | | | |
| | 1.00 EA | 41.02 | 0.00 | 41.02 | 16/NA | Avg. | 0% | <0.00> | 41.02 |
| 12. R&R Valley metal | | | | | | | | | |
| | 45.99 LF | 7.25 | 9.31 | 342.73 | 16/35 yrs | Avg. | 45.71% | <143.44> | 199.29 |
| 13. R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 16/35 yrs | Avg. | 45.71% | <213.38> | 273.52 |
| 14. R&R Skylight flashing kit - dome | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 16/15 yrs | Avg. | 100% [M] | <280.89> | 13.40 |
| **Totals: Main Home** | | | **315.03** | **12,289.32** | | | | **5,564.50** | **6,724.82** |
| **Total: 5047** | | | **315.03** | **12,289.32** | | | | **5,564.50** | **6,724.82** |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

| Total:  5047 Highland Hills Pkwy | 315.03 | 12,289.32 | | | 5,564.50 | 6,724.82 |
|---|---|---|---|---|---|---|

**5066 Highland Hills Pkwy**

**5066 Highland Hills Pkwy**



**Main Roof**

| | | |
|---|---|---|
| 3032.03  Surface Area | | 30.32  Number of Squares |
| 443.12  Total Perimeter Length | | 95.00  Total Ridge Length |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 15. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 30.32 SQ | 64.08 | 0.00 | 1,942.91 | 16/30 yrs | Avg. | NA | <0.00> | 1,942.91 |
| 16. Remove Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 30.32 SQ | 15.01 | 0.00 | 455.10 | 16/NA | Avg. | NA | <0.00> | 455.10 |
| 17. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 33.67 SQ | 297.22 | 345.56 | 10,352.96 | 16/30 yrs | Avg. | 53.33% | <5,521.58> | 4,831.38 |
| 18. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 33.35 SQ | 51.42 | 0.00 | 1,714.86 | 16/NA | Avg. | 0% | <0.00> | 1,714.86 |
| 19. Asphalt starter - universal starter course | | | | | | | | | |
| | 443.12 LF | 2.17 | 20.21 | 981.78 | 16/20 yrs | Avg. | 80% | <785.43> | 196.35 |
| 20. R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 95.00 LF | 11.24 | 32.07 | 1,099.87 | 16/35 yrs | Avg. | 45.71% | <463.71> | 636.16 |
| 21. R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 95.00 LF | 8.00 | 10.11 | 770.11 | 16/25 yrs | Avg. | 64% | <301.35> | 468.76 |
| 22. R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 16/35 yrs | Avg. | 45.71% | <73.64> | 110.13 |
| 23. R&R Valley metal | | | | | | | | | |
| | 77.60 LF | 7.25 | 15.71 | 578.31 | 16/35 yrs | Avg. | 45.71% | <242.02> | 336.29 |
| 24. R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 16/35 yrs | Avg. | 45.71% | <213.38> | 273.52 |
| 25. R&R Skylight flashing kit - dome | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 16/15 yrs | Avg. | 100%  [M] | <280.89> | 13.40 |

| **Totals:  Main Roof** | | | **450.19** | **18,860.86** | | | | **7,882.00** | **10,978.86** |
|---|---|---|---|---|---|---|---|---|---|

| **Total: 5066 Highland Hills Pkwy** | | | **450.19** | **18,860.86** | | | | **7,882.00** | **10,978.86** |
|---|---|---|---|---|---|---|---|---|---|

| **Total: 5066 Highland Hills Pkwy** | | | **450.19** | **18,860.86** | | | | **7,882.00** | **10,978.86** |
|---|---|---|---|---|---|---|---|---|---|

**5099 Highland Hills Pkwy**



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### 5099 Highland Hills Pkwy



**Main Roof**

| | | |
|---|---|---|
| 3032.03 Surface Area | | 30.32 Number of Squares |
| 443.12 Total Perimeter Length | | 95.00 Total Ridge Length |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 26. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 30.32 SQ | 64.08 | 0.00 | 1,942.91 | 15/30 yrs | Avg. | NA | <0.00> | 1,942.91 |
| 27. Remove Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 30.32 SQ | 15.01 | 0.00 | 455.10 | 15/NA | Avg. | NA | <0.00> | 455.10 |
| 28. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 33.67 SQ | 297.22 | 345.56 | 10,352.96 | 15/30 yrs | Avg. | 50% | <5,176.48> | 5,176.48 |
| 29. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 33.35 SQ | 51.42 | 0.00 | 1,714.86 | 15/NA | Avg. | 0% | <0.00> | 1,714.86 |
| 30. Asphalt starter - universal starter course | | | | | | | | | |
| | 443.12 LF | 2.17 | 20.21 | 981.78 | 15/20 yrs | Avg. | 75% | <736.34> | 245.44 |
| 31. R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 95.00 LF | 11.24 | 32.07 | 1,099.87 | 15/35 yrs | Avg. | 42.86% | <434.73> | 665.14 |
| 32. R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 95.00 LF | 8.00 | 10.11 | 770.11 | 15/25 yrs | Avg. | 60% | <282.52> | 487.59 |
| 33. R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 15/35 yrs | Avg. | 42.86% | <69.04> | 114.73 |
| 34. R&R Valley metal | | | | | | | | | |
| | 77.47 LF | 7.25 | 15.68 | 577.34 | 15/35 yrs | Avg. | 42.86% | <226.51> | 350.83 |
| 35. R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 15/35 yrs | Avg. | 42.86% | <200.04> | 286.86 |
| 36. R&R Skylight flashing kit - dome | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 15/15 yrs | Avg. | 100% [M] | <280.89> | 13.40 |
| **Totals: Main Roof** | | | **450.16** | **18,859.89** | | | | **7,406.55** | **11,453.34** |
| **Total: 5099 Highland Hills Pkwy** | | | **450.16** | **18,859.89** | | | | **7,406.55** | **11,453.34** |
| **Total: 5099 Highland Hills Pkwy** | | | **450.16** | **18,859.89** | | | | **7,406.55** | **11,453.34** |

### 6034 Highland Hills Pkwy

### 6034 Highland Hills Pkwy

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Main Roof



| | |
|---|---|
| 2457.68 Surface Area | 24.58 Number of Squares |
| 349.21 Total Perimeter Length | 85.96 Total Ridge Length |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 37. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 24.58 SQ | 64.08 | 0.00 | 1,575.09 | 20/30 yrs | Avg. | NA | <0.00> | 1,575.09 |
| 38. Remove Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 24.58 SQ | 15.01 | 0.00 | 368.95 | 20/NA | Avg. | NA | <0.00> | 368.95 |
| 39. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 27.33 SQ | 297.22 | 280.49 | 8,403.51 | 20/30 yrs | Avg. | 66.67% | <5,602.34> | 2,801.17 |
| 40. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 27.03 SQ | 51.42 | 0.00 | 1,389.88 | 20/NA | Avg. | 0% | <0.00> | 1,389.88 |
| 41. Asphalt starter - universal starter course | | | | | | | | | |
| | 349.21 LF | 2.17 | 15.92 | 773.71 | 20/20 yrs | Avg. | 100% [M] | <773.71> | 0.00 |
| 42. R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 85.96 LF | 11.24 | 29.02 | 995.21 | 20/35 yrs | Avg. | 57.14% | <524.48> | 470.73 |
| 43. R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 85.96 LF | 8.00 | 9.15 | 696.83 | 20/25 yrs | Avg. | 80% | <340.85> | 355.98 |
| 44. R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 20/35 yrs | Avg. | 57.14% | <92.05> | 91.72 |
| 45. R&R Valley metal | | | | | | | | | |
| | 53.32 LF | 7.25 | 10.79 | 397.36 | 20/35 yrs | Avg. | 57.14% | <207.87> | 189.49 |
| 46. R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 20/35 yrs | Avg. | 57.14% | <266.73> | 220.17 |
| 47. R&R Skylight flashing kit - dome | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 20/15 yrs | Avg. | 100% [M] | <280.89> | 13.40 |
| **Totals: Main Roof** | | | **371.90** | **15,565.50** | | | | **8,088.92** | **7,476.58** |
| **Total: 6034 Highland Hills Pkwy** | | | **371.90** | **15,565.50** | | | | **8,088.92** | **7,476.58** |
| **Total: 6034 Highland Hills Pkwy** | | | **371.90** | **15,565.50** | | | | **8,088.92** | **7,476.58** |

### 6035 Highland Hills Pkwy

### Main Level



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342



**Roof**                                                                                       **Height: 8'**

| 384.00 SF Walls | 144.00 SF Ceiling |
| 528.00 SF Walls & Ceiling | 144.00 SF Floor |
| 16.00 SY Flooring | 48.00 LF Floor Perimeter |
| 48.00 LF Ceil. Perimeter | |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 48. Remove Laminated - comp. shingle rfg (per SHINGLE) | | | | | | | | | |
| | 4.00 EA | 7.95 | 0.00 | 31.80 | 0/30 yrs | Avg. | NA | <0.00> | 31.80 |
| 49. Laminated - comp. shingle rfg (per SHINGLE) | | | | | | | | | |
| | 4.00 EA | 18.45 | 0.85 | 74.65 | 0/30 yrs | Avg. | 0% | <0.00> | 74.65 |
| 50. Roofer - per hour | | | | | | | | | |
| | 0.00 HR | 144.79 | 0.00 | 0.00 | 0/NA | Avg. | 0% | <0.00> | 0.00 |
| additional labor to identify damaged shingle and make repair | | | | | | | | | |

| **Totals: Roof** | | | **0.85** | **106.45** | | | | **0.00** | **106.45** |

| **Total: Main Level** | | | **0.85** | **106.45** | | | | **0.00** | **106.45** |

| **Total: 6035 Highland Hills Pkwy** | | | **0.85** | **106.45** | | | | **0.00** | **106.45** |

**5040 Bedlington Cir**

**5040 Bedlington Cir**



**Roof**                                                                                       **Height: 8'**

| 384.00 SF Walls | 144.00 SF Ceiling |
| 528.00 SF Walls & Ceiling | 144.00 SF Floor |
| 16.00 SY Flooring | 48.00 LF Floor Perimeter |
| 48.00 LF Ceil. Perimeter | |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 51. Remove Laminated - comp. shingle rfg (per SHINGLE) | | | | | | | | | |
| | 4.00 EA | 7.95 | 0.00 | 31.80 | 0/30 yrs | Avg. | NA | <0.00> | 31.80 |
| 52. Laminated - comp. shingle rfg (per SHINGLE) | | | | | | | | | |
| | 4.00 EA | 18.45 | 0.85 | 74.65 | 0/30 yrs | Avg. | 0% | <0.00> | 74.65 |
| 53. Roofer - per hour | | | | | | | | | |
| | 0.00 HR | 144.79 | 0.00 | 0.00 | 0/NA | Avg. | 0% | <0.00> | 0.00 |
| additional labor to identify damaged shingle and make repair | | | | | | | | | |

| **Totals: Roof** | | | **0.85** | **106.45** | | | | **0.00** | **106.45** |

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Total: 5040 Bedlington Cir** | | 0.85 | 106.45 | | | | 0.00 | 106.45 |
| **Total: 5040 Bedlington Cir** | | 0.85 | 106.45 | | | | 0.00 | 106.45 |

**5046 Bedlington Cir**

**Main Level**

 **Main Roof**

2369.09  Surface Area                     23.69  Number of Squares
334.91  Total Perimeter Length        85.77  Total Ridge Length

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 54. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 23.69 SQ | 64.08 | 0.00 | 1,518.06 | 20/30 yrs | Avg. | NA | <0.00> | 1,518.06 |
| 55. Remove Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 23.69 SQ | 15.01 | 0.00 | 355.59 | 20/NA | Avg. | NA | <0.00> | 355.59 |
| 56. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 26.33 SQ | 297.22 | 270.23 | 8,096.03 | 20/30 yrs | Avg. | 66.67% | <5,397.35> | 2,698.68 |
| 57. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 26.06 SQ | 51.42 | 0.00 | 1,340.01 | 20/NA | Avg. | 0% | <0.00> | 1,340.01 |
| 58. Asphalt starter - universal starter course | | | | | | | | | |
| | 334.91 LF | 2.17 | 15.27 | 742.02 | 20/20 yrs | Avg. | 100% [M] | <742.02> | 0.00 |
| 59. R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 85.77 LF | 11.24 | 28.96 | 993.01 | 20/35 yrs | Avg. | 57.14% | <523.33> | 469.68 |
| 60. R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 85.77 LF | 8.00 | 9.13 | 695.29 | 20/25 yrs | Avg. | 80% | <340.08> | 355.21 |
| 61. R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 20/35 yrs | Avg. | 57.14% | <92.05> | 91.72 |
| 62. R&R Valley metal | | | | | | | | | |
| | 56.17 LF | 7.25 | 11.37 | 418.61 | 20/35 yrs | Avg. | 57.14% | <218.99> | 199.62 |
| 63. R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 20/35 yrs | Avg. | 57.14% | <266.73> | 220.17 |
| 64. R&R Skylight flashing kit - dome | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 20/15 yrs | Avg. | 100% [M] | <280.89> | 13.40 |
| **Totals: Main Roof** | | | 361.49 | 15,123.58 | | | | 7,861.44 | 7,262.14 |
| **Total: Main Level** | | | 361.49 | 15,123.58 | | | | 7,861.44 | 7,262.14 |
| **Total: 5046 Bedlington Cir** | | | 361.49 | 15,123.58 | | | | 7,861.44 | 7,262.14 |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

**5055 Highland Hills Ct**

**5055 Highland Hills Ct**



### Main Roof

| | |
|---|---|
| 3830.44 Surface Area | 38.30 Number of Squares |
| 409.51 Total Perimeter Length | 104.40 Total Ridge Length |
| 74.73 Total Hip Length | |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 65. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | | |
| | 38.30 SQ | 64.08 | 0.00 | 2,454.26 | 20/30 yrs | Avg. | NA | | <0.00> | 2,454.26 |
| 66. Remove Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | | |
| | 38.30 SQ | 15.01 | 0.00 | 574.88 | 20/NA | Avg. | NA | | <0.00> | 574.88 |
| 67. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | | |
| | 42.33 SQ | 297.22 | 434.44 | 13,015.76 | 20/30 yrs | Avg. | 66.67% | | <8,677.18> | 4,338.58 |
| 68. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | | |
| | 42.13 SQ | 51.42 | 0.00 | 2,166.32 | 20/NA | Avg. | 0% | | <0.00> | 2,166.32 |
| 69. Asphalt starter - universal starter course | | | | | | | | | | |
| | 409.51 LF | 2.17 | 18.67 | 907.31 | 20/20 yrs | Avg. | 100% | [M] | <907.31> | 0.00 |
| 70. R&R Continuous ridge vent - shingle-over style | | | | | | | | | | |
| | 104.40 LF | 11.24 | 35.25 | 1,208.71 | 20/35 yrs | Avg. | 57.14% | | <637.00> | 571.71 |
| 71. R&R Hip / Ridge cap - composition shingles | | | | | | | | | | |
| | 104.40 LF | 8.00 | 11.11 | 846.31 | 20/25 yrs | Avg. | 80% | | <413.96> | 432.35 |
| 72. R&R Flashing - pipe jack | | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 20/35 yrs | Avg. | 57.14% | | <92.05> | 91.72 |
| 73. R&R Valley metal | | | | | | | | | | |
| | 77.05 LF | 7.25 | 15.60 | 574.21 | 20/35 yrs | Avg. | 57.14% | | <300.38> | 273.83 |
| 74. R&R Chimney flashing - average (32" x 36") | | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 20/35 yrs | Avg. | 57.14% | | <266.73> | 220.17 |
| 75. R&R Skylight flashing kit - dome | | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 20/15 yrs | Avg. | 100% | [M] | <280.89> | 13.40 |
| **Totals: Main Roof** | | | **541.60** | **22,712.72** | | | | | **11,575.50** | **11,137.22** |
| **Total: 5055 Highland Hills Ct** | | | **541.60** | **22,712.72** | | | | | **11,575.50** | **11,137.22** |
| **Total: 5055 Highland Hills Ct** | | | **541.60** | **22,712.72** | | | | | **11,575.50** | **11,137.22** |

**5075 Highland Hills Ct**

**5075 Highland Hills Ct**



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342



### Main Home

| | |
|---|---|
| 2279.99 Surface Area | 22.80 Number of Squares |
| 300.30 Total Perimeter Length | 55.69 Total Ridge Length |
| 106.38 Total Hip Length | |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 76. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 22.80 SQ | 64.08 | 0.00 | 1,461.02 | 20/30 yrs | Avg. | NA | <0.00> | 1,461.02 |
| 77. Remove Additional charge for high roof (2 stories or greater) | | | | | | | | | |
| | 14.81 SQ | 5.67 | 0.00 | 83.97 | 20/NA | Avg. | NA | <0.00> | 83.97 |
| 78. Remove Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | |
| | 2.97 SQ | 23.59 | 0.00 | 70.06 | 20/NA | Avg. | NA | <0.00> | 70.06 |
| 79. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 25.33 SQ | 297.22 | 259.97 | 7,788.55 | 20/30 yrs | Avg. | 66.67% | <5,192.36> | 2,596.19 |
| 80. Additional charge for high roof (2 stories or greater) | | | | | | | | | |
| | 16.29 SQ | 22.71 | 0.00 | 369.95 | 20/NA | Avg. | 0% | <0.00> | 369.95 |
| 81. Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | |
| | 3.27 SQ | 80.83 | 0.00 | 264.31 | 20/NA | Avg. | 0% | <0.00> | 264.31 |
| 82. Asphalt starter - universal starter course | | | | | | | | | |
| | 300.30 LF | 2.17 | 13.69 | 665.34 | 20/20 yrs | Avg. | 100% [M] | <665.34> | 0.00 |
| 83. R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 55.69 LF | 11.24 | 18.80 | 644.75 | 20/35 yrs | Avg. | 57.14% | <339.79> | 304.96 |
| 84. R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 55.69 LF | 8.00 | 5.93 | 451.45 | 20/25 yrs | Avg. | 80% | <220.82> | 230.63 |
| 85. R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 20/35 yrs | Avg. | 57.14% | <92.05> | 91.72 |
| 86. Digital satellite system - Detach & reset | | | | | | | | | |
| | 1.00 EA | 41.02 | 0.00 | 41.02 | 20/NA | Avg. | 0% | <0.00> | 41.02 |
| 87. R&R Valley metal | | | | | | | | | |
| | 46.34 LF | 7.25 | 9.38 | 345.34 | 20/35 yrs | Avg. | 57.14% | <180.66> | 164.68 |
| 88. R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 20/35 yrs | Avg. | 57.14% | <266.73> | 220.17 |

| | | TAX | RCV | | | | | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| **Totals: Main Home** | | 319.55 | 12,856.43 | | | | | 6,957.75 | 5,898.68 |
| **Total: 5075 Highland Hills Ct** | | 319.55 | 12,856.43 | | | | | 6,957.75 | 5,898.68 |
| **Total: 5075 Highland Hills Ct** | | 319.55 | 12,856.43 | | | | | 6,957.75 | 5,898.68 |

### 5081 Lynmouth Cir

### 5081 Lynmouth Cir



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342



### Main Roof

| | | |
|---|---|---|
| 3830.44 Surface Area | | 38.30 Number of Squares |
| 409.51 Total Perimeter Length | | 104.40 Total Ridge Length |
| 74.73 Total Hip Length | | |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 89. Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 38.30 SQ | 64.08 | 0.00 | 2,454.26 | 16/30 yrs | Avg. | NA | <0.00> | 2,454.26 |
| 90. Remove Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 38.30 SQ | 15.01 | 0.00 | 574.88 | 16/NA | Avg. | NA | <0.00> | 574.88 |
| 91. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 42.33 SQ | 297.22 | 434.44 | 13,015.76 | 16/30 yrs | Avg. | 53.33% | <6,941.74> | 6,074.02 |
| 92. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | |
| | 42.13 SQ | 51.42 | 0.00 | 2,166.32 | 16/NA | Avg. | 0% | <0.00> | 2,166.32 |
| 93. Asphalt starter - universal starter course | | | | | | | | | |
| | 409.51 LF | 2.17 | 18.67 | 907.31 | 16/20 yrs | Avg. | 80% | <725.85> | 181.46 |
| 94. R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 104.40 LF | 11.24 | 35.25 | 1,208.71 | 16/35 yrs | Avg. | 45.71% | <509.60> | 699.11 |
| 95. R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 104.40 LF | 8.00 | 11.11 | 846.31 | 16/25 yrs | Avg. | 64% | <331.17> | 515.14 |
| 96. R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 16/35 yrs | Avg. | 45.71% | <73.64> | 110.13 |
| 97. R&R Valley metal | | | | | | | | | |
| | 77.05 LF | 7.25 | 15.60 | 574.21 | 16/35 yrs | Avg. | 45.71% | <240.30> | 333.91 |
| 98. R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 16/35 yrs | Avg. | 45.71% | <213.38> | 273.52 |
| 99. R&R Skylight flashing kit - dome | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 16/15 yrs | Avg. | 100% [M] | <280.89> | 13.40 |
| **Totals: Main Roof** | | | **541.60** | **22,712.72** | | | | **9,316.57** | **13,396.15** |
| **Total: 5081 Lynmouth Cir** | | | **541.60** | **22,712.72** | | | | **9,316.57** | **13,396.15** |
| **Total: 5081 Lynmouth Cir** | | | **541.60** | **22,712.72** | | | | **9,316.57** | **13,396.15** |

**5061 Highland Hills Ct**

**5061 Highland Hills Ct**



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342



**Main Roof**

| | |
|---|---|
| 2434.53  Surface Area | 24.35  Number of Squares |
| 335.56  Total Perimeter Length | 93.33  Total Ridge Length |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 100. | Remove Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 24.35 SQ | 64.08 | 0.00 | 1,560.35 | 20/30 yrs | Avg. | NA | | <0.00> | 1,560.35 |
| 101. | Remove Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | |
| | 24.35 SQ | 23.59 | 0.00 | 574.42 | 20/NA | Avg. | NA | | <0.00> | 574.42 |
| 102. | Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | |
| | 27.00 SQ | 297.22 | 277.11 | 8,302.05 | 20/30 yrs | Avg. | 66.67% | | <5,534.70> | 2,767.35 |
| 103. | Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | |
| | 24.35 SQ | 80.83 | 0.00 | 1,968.21 | 20/NA | Avg. | 0% | | <0.00> | 1,968.21 |
| 104. | Asphalt starter - universal starter course | | | | | | | | | |
| | 335.56 LF | 2.17 | 15.30 | 743.47 | 20/20 yrs | Avg. | 100% | [M] | <743.47> | 0.00 |
| 105. | R&R Continuous ridge vent - shingle-over style | | | | | | | | | |
| | 93.33 LF | 11.24 | 31.51 | 1,080.54 | 20/35 yrs | Avg. | 57.14% | | <569.46> | 511.08 |
| 106. | R&R Hip / Ridge cap - composition shingles | | | | | | | | | |
| | 93.33 LF | 8.00 | 9.93 | 756.57 | 20/25 yrs | Avg. | 80% | | <370.06> | 386.51 |
| 107. | R&R Flashing - pipe jack | | | | | | | | | |
| | 3.00 EA | 60.00 | 3.77 | 183.77 | 20/35 yrs | Avg. | 57.14% | | <92.05> | 91.72 |
| 108. | R&R Valley metal | | | | | | | | | |
| | 85.18 LF | 7.25 | 17.24 | 634.79 | 20/35 yrs | Avg. | 57.14% | | <332.07> | 302.72 |
| 109. | R&R Chimney flashing - average (32" x 36") | | | | | | | | | |
| | 1.00 EA | 478.89 | 8.01 | 486.90 | 20/35 yrs | Avg. | 57.14% | | <266.73> | 220.17 |
| 110. | R&R Skylight flashing kit - dome | | | | | | | | | |
| | 2.00 EA | 139.77 | 14.75 | 294.29 | 20/15 yrs | Avg. | 100% | [M] | <280.89> | 13.40 |
| **Totals: Main Roof** | | | 377.62 | 16,585.36 | | | | | 8,189.43 | 8,395.93 |
| **Total: 5061 Highland Hills Ct** | | | 377.62 | 16,585.36 | | | | | 8,189.43 | 8,395.93 |
| **Total: 5061 Highland Hills Ct** | | | 377.62 | 16,585.36 | | | | | 8,189.43 | 8,395.93 |

**General**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 111. | Commercial Supervision / Project Management - per hour | | | | | | | | |
| | 45.00 HR | 80.19 | 0.00 | 3,608.55 | 0/NA | Avg. | 0% | <0.00> | 3,608.55 |
| 5 hours for each of the nine roof replacements | | | | | | | | | |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

**CONTINUED - General**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| Totals: General | | | 0.00 | 3,608.55 | | | | 0.00 | 3,608.55 |
| Line Item Totals: 1000386704 | | | 3,730.84 | 159,387.83 | | | | 72,842.66 | 86,545.17 |

[%] - Indicates that depreciate by percent was used for this item
[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 768.00 | SF Walls | 288.00 | SF Ceiling | 1,056.00 | SF Walls and Ceiling |
| 288.00 | SF Floor | 32.00 | SY Flooring | 96.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 96.00 | LF Ceil. Perimeter |
| | | | | | |
| 288.00 | Floor Area | 320.89 | Total Area | 768.00 | Interior Wall Area |
| 17,703.59 | Exterior Wall Area | 101.33 | Exterior Perimeter of Walls | | |
| | | | | | |
| 25,300.87 | Surface Area | 253.01 | Number of Squares | 3,333.68 | Total Perimeter Length |
| 792.65 | Total Ridge Length | 255.84 | Total Hip Length | | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| 5047 Highland Hills Pkwy | 15,897.87 | 9.97% | 10,333.37 | 11.94% |
| 5066 Highland Hills Pkwy | 18,860.86 | 11.83% | 10,978.86 | 12.69% |
| 5099 Highland Hills Pkwy | 18,859.89 | 11.83% | 11,453.34 | 13.23% |
| 6034 Highland Hills Pkwy | 15,565.50 | 9.77% | 7,476.58 | 8.64% |
| 6035 Highland Hills Pkwy | 106.45 | 0.07% | 106.45 | 0.12% |
| 5040 Bedlington Cir | 106.45 | 0.07% | 106.45 | 0.12% |
| 5046 Bedlington Cir | 15,123.58 | 9.49% | 7,262.14 | 8.39% |
| 5055 Highland Hills Ct | 22,712.72 | 14.25% | 11,137.22 | 12.87% |
| 5061 Highland Hills Ct | 16,585.36 | 10.41% | 8,395.93 | 9.70% |
| 5075 Highland Hills Ct | 12,856.43 | 8.07% | 5,898.68 | 6.82% |
| 5081 Lynmouth Cir | 22,712.72 | 14.25% | 13,396.15 | 15.48% |
| Total | 159,387.83 | 100.00% | 86,545.17 | 100.00% |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Summary for 5047 Highland Hills Pkwy

| | |
|---|---:|
| Line Item Total | 15,582.84 |
| Material Sales Tax | 315.03 |
| **Replacement Cost Value** | **$15,897.87** |
| Less Non-recoverable Depreciation | <5,564.50> |
| **Actual Cash Value** | **$10,333.37** |
| Less Deductible | (5,000.00) |
| **Net Claim** | **$5,333.37** |

Dan Reeder

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Summary for 5066 Highland Hills Pkwy

| | |
|---|---:|
| Line Item Total | 18,410.67 |
| Material Sales Tax | 450.19 |
| **Replacement Cost Value** | **$18,860.86** |
| Less Non-recoverable Depreciation | <7,882.00> |
| **Actual Cash Value** | **$10,978.86** |
| **Net Claim** | **$10,978.86** |

Dan Reeder

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Summary for 5099 Highland Hills Pkwy

| | |
|---|---:|
| Line Item Total | 18,409.73 |
| Material Sales Tax | 450.16 |
| **Replacement Cost Value** | **$18,859.89** |
| Less Non-recoverable Depreciation | <7,406.55> |
| **Actual Cash Value** | **$11,453.34** |
| **Net Claim** | **$11,453.34** |

_____

Dan Reeder



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Summary for 6034 Highland Hills Pkwy

| | |
|---|---|
| Line Item Total | 15,193.60 |
| Material Sales Tax | 371.90 |
| **Replacement Cost Value** | **$15,565.50** |
| Less Non-recoverable Depreciation | <8,088.92> |
| **Actual Cash Value** | **$7,476.58** |
| **Net Claim** | **$7,476.58** |

Dan Reeder

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Summary for 6035 Highland Hills Pkwy

| | |
|---|---:|
| Line Item Total | 105.60 |
| Material Sales Tax | 0.85 |
| **Replacement Cost Value** | **$106.45** |
| **Net Claim** | **$106.45** |

Dan Reeder

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Summary for 5040 Bedlington Cir

| | |
|---|---:|
| Line Item Total | 105.60 |
| Material Sales Tax | 0.85 |
| **Replacement Cost Value** | **$106.45** |
| **Net Claim** | **$106.45** |

Dan Reeder

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Summary for 5046 Bedlington Cir

| | |
|---|---:|
| Line Item Total | 14,762.09 |
| Material Sales Tax | 361.49 |
| **Replacement Cost Value** | **$15,123.58** |
| Less Non-recoverable Depreciation | <7,861.44> |
| **Actual Cash Value** | **$7,262.14** |
| **Net Claim** | **$7,262.14** |

Dan Reeder



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Summary for 5055 Highland Hills Ct

| | |
|---|---:|
| Line Item Total | 22,171.12 |
| Material Sales Tax | 541.60 |
| **Replacement Cost Value** | **$22,712.72** |
| Less Non-recoverable Depreciation | <11,575.50> |
| **Actual Cash Value** | **$11,137.22** |
| **Net Claim** | **$11,137.22** |

Dan Reeder



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Summary for 5061 Highland Hills Ct

| | |
|---|---:|
| Line Item Total | 16,207.74 |
| Material Sales Tax | 377.62 |
| **Replacement Cost Value** | **$16,585.36** |
| Less Non-recoverable Depreciation | <8,189.43> |
| **Actual Cash Value** | **$8,395.93** |
| **Net Claim** | **$8,395.93** |

Dan Reeder



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Summary for 5075 Highland Hills Ct

| | |
|---|---:|
| Line Item Total | 12,536.88 |
| Material Sales Tax | 319.55 |
| **Replacement Cost Value** | **$12,856.43** |
| Less Non-recoverable Depreciation | <6,957.75> |
| **Actual Cash Value** | **$5,898.68** |
| **Net Claim** | **$5,898.68** |

Dan Reeder

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Summary for 5081 Lynmouth Cir

| | |
|---|---:|
| Line Item Total | 22,171.12 |
| Material Sales Tax | 541.60 |
| **Replacement Cost Value** | **$22,712.72** |
| Less Non-recoverable Depreciation | <9,316.57> |
| **Actual Cash Value** | **$13,396.15** |
| **Net Claim** | **$13,396.15** |

Dan Reeder

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Recap of Taxes

|  | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|
| Line Items | 3,730.84 | 0.00 | 0.00 |
| **Total** | **3,730.84** | **0.00** | **0.00** |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Recap by Room

**Estimate: 1000386704**

**Area: 5047 Highland Hills Pkwy**

**Area: 5047**

| | | | | |
|---|---|---|---|---|
| **Main Home** | | | **11,974.29** | **7.69%** |
| Coverage: 5047 Highland Hills Pkwy | 100.00% | = | 11,974.29 | |
| **Area Subtotal: 5047** | | | **11,974.29** | **7.69%** |
| Coverage: 5047 Highland Hills Pkwy | 100.00% | = | 11,974.29 | |
| **Area Subtotal: 5047 Highland Hills Pkwy** | | | **11,974.29** | **7.69%** |
| Coverage: 5047 Highland Hills Pkwy | 100.00% | = | 11,974.29 | |

**Area: 5066 Highland Hills Pkwy**

**Area: 5066 Highland Hills Pkwy**

| | | | | |
|---|---|---|---|---|
| **Main Roof** | | | **18,410.67** | **11.83%** |
| Coverage: 5066 Highland Hills Pkwy | 100.00% | = | 18,410.67 | |
| **Area Subtotal: 5066 Highland Hills Pkwy** | | | **18,410.67** | **11.83%** |
| Coverage: 5066 Highland Hills Pkwy | 100.00% | = | 18,410.67 | |
| **Area Subtotal: 5066 Highland Hills Pkwy** | | | **18,410.67** | **11.83%** |
| Coverage: 5066 Highland Hills Pkwy | 100.00% | = | 18,410.67 | |

**Area: 5099 Highland Hills Pkwy**

**Area: 5099 Highland Hills Pkwy**

| | | | | |
|---|---|---|---|---|
| **Main Roof** | | | **18,409.73** | **11.83%** |
| Coverage: 5099 Highland Hills Pkwy | 100.00% | = | 18,409.73 | |
| **Area Subtotal: 5099 Highland Hills Pkwy** | | | **18,409.73** | **11.83%** |
| Coverage: 5099 Highland Hills Pkwy | 100.00% | = | 18,409.73 | |
| **Area Subtotal: 5099 Highland Hills Pkwy** | | | **18,409.73** | **11.83%** |
| Coverage: 5099 Highland Hills Pkwy | 100.00% | = | 18,409.73 | |

**Area: 6034 Highland Hills Pkwy**

**Area: 6034 Highland Hills Pkwy**

| | | | | |
|---|---|---|---|---|
| **Main Roof** | | | **15,193.60** | **9.76%** |
| Coverage: 6034 Highland Hills Pkwy | 100.00% | = | 15,193.60 | |

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

| | | | |
|---|---|---|---|
| **Area Subtotal: 6034 Highland Hills Pkwy** | | **15,193.60** | **9.76%** |
| Coverage: 6034 Highland Hills Pkwy | 100.00% = | 15,193.60 | |
| **Area Subtotal: 6034 Highland Hills Pkwy** | | **15,193.60** | **9.76%** |
| Coverage: 6034 Highland Hills Pkwy | 100.00% = | 15,193.60 | |

**Area: 6035 Highland Hills Pkwy**

**Area: Main Level**

| | | | |
|---|---|---|---|
| **Roof** | | **105.60** | **0.07%** |
| Coverage: 6035 Highland Hills Pkwy | 100.00% = | 105.60 | |
| **Area Subtotal: Main Level** | | **105.60** | **0.07%** |
| Coverage: 6035 Highland Hills Pkwy | 100.00% = | 105.60 | |
| **Area Subtotal: 6035 Highland Hills Pkwy** | | **105.60** | **0.07%** |
| Coverage: 6035 Highland Hills Pkwy | 100.00% = | 105.60 | |

**Area: 5040 Bedlington Cir**

**Area: 5040 Bedlington Cir**

| | | | |
|---|---|---|---|
| **Roof** | | **105.60** | **0.07%** |
| Coverage: 5040 Bedlington Cir | 100.00% = | 105.60 | |
| **Area Subtotal: 5040 Bedlington Cir** | | **105.60** | **0.07%** |
| Coverage: 5040 Bedlington Cir | 100.00% = | 105.60 | |
| **Area Subtotal: 5040 Bedlington Cir** | | **105.60** | **0.07%** |
| Coverage: 5040 Bedlington Cir | 100.00% = | 105.60 | |

**Area: 5046 Bedlington Cir**

**Area: Main Level**

| | | | |
|---|---|---|---|
| **Main Roof** | | **14,762.09** | **9.48%** |
| Coverage: 5046 Bedlington Cir | 100.00% = | 14,762.09 | |
| **Area Subtotal: Main Level** | | **14,762.09** | **9.48%** |
| Coverage: 5046 Bedlington Cir | 100.00% = | 14,762.09 | |
| **Area Subtotal: 5046 Bedlington Cir** | | **14,762.09** | **9.48%** |
| Coverage: 5046 Bedlington Cir | 100.00% = | 14,762.09 | |

**Area: 5055 Highland Hills Ct**

**Area: 5055 Highland Hills Ct**

| | | | |
|---|---|---|---|
| **Main Roof** | | **22,171.12** | **14.24%** |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

| | | |
|---|---|---|
| Coverage: 5055 Highland Hills Ct | 100.00% = | 22,171.12 |
| **Area Subtotal:  5055 Highland Hills Ct** | | **22,171.12**  **14.24%** |
| Coverage: 5055 Highland Hills Ct | 100.00% = | 22,171.12 |
| **Area Subtotal:  5055 Highland Hills Ct** | | **22,171.12**  **14.24%** |
| Coverage: 5055 Highland Hills Ct | 100.00% = | 22,171.12 |

**Area: 5075 Highland Hills Ct**

**Area: 5075 Highland Hills Ct**

| | | |
|---|---|---|
| **Main Home** | | **12,536.88**  **8.05%** |
| Coverage: 5075 Highland Hills Ct | 100.00% = | 12,536.88 |
| **Area Subtotal:  5075 Highland Hills Ct** | | **12,536.88**  **8.05%** |
| Coverage: 5075 Highland Hills Ct | 100.00% = | 12,536.88 |
| **Area Subtotal:  5075 Highland Hills Ct** | | **12,536.88**  **8.05%** |
| Coverage: 5075 Highland Hills Ct | 100.00% = | 12,536.88 |

**Area: 5081 Lynmouth Cir**

**Area: 5081 Lynmouth Cir**

| | | |
|---|---|---|
| **Main Roof** | | **22,171.12**  **14.24%** |
| Coverage: 5081 Lynmouth Cir | 100.00% = | 22,171.12 |
| **Area Subtotal:  5081 Lynmouth Cir** | | **22,171.12**  **14.24%** |
| Coverage: 5081 Lynmouth Cir | 100.00% = | 22,171.12 |
| **Area Subtotal:  5081 Lynmouth Cir** | | **22,171.12**  **14.24%** |
| Coverage: 5081 Lynmouth Cir | 100.00% = | 22,171.12 |

**Area: 5061 Highland Hills Ct**

**Area: 5061 Highland Hills Ct**

| | | |
|---|---|---|
| **Main Roof** | | **16,207.74**  **10.41%** |
| Coverage: 5061 Highland Hills Ct | 100.00% = | 16,207.74 |
| **Area Subtotal:  5061 Highland Hills Ct** | | **16,207.74**  **10.41%** |
| Coverage: 5061 Highland Hills Ct | 100.00% = | 16,207.74 |
| **Area Subtotal:  5061 Highland Hills Ct** | | **16,207.74**  **10.41%** |
| Coverage: 5061 Highland Hills Ct | 100.00% = | 16,207.74 |
| **General** | | **3,608.55**  **2.32%** |
| Coverage: 5047 Highland Hills Pkwy | 100.00% = | 3,608.55 |

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

| **Subtotal of Areas** | | | **155,656.99** | **100.00%** |
|---|---|---|---|---|
| Coverage: 5047 Highland Hills Pkwy | 10.01% | = | 15,582.84 | |
| Coverage: 5066 Highland Hills Pkwy | 11.83% | = | 18,410.67 | |
| Coverage: 5099 Highland Hills Pkwy | 11.83% | = | 18,409.73 | |
| Coverage: 6034 Highland Hills Pkwy | 9.76% | = | 15,193.60 | |
| Coverage: 6035 Highland Hills Pkwy | 0.07% | = | 105.60 | |
| Coverage: 5040 Bedlington Cir | 0.07% | = | 105.60 | |
| Coverage: 5046 Bedlington Cir | 9.48% | = | 14,762.09 | |
| Coverage: 5055 Highland Hills Ct | 14.24% | = | 22,171.12 | |
| Coverage: 5061 Highland Hills Ct | 10.41% | = | 16,207.74 | |
| Coverage: 5075 Highland Hills Ct | 8.05% | = | 12,536.88 | |
| Coverage: 5081 Lynmouth Cir | 14.24% | = | 22,171.12 | |
| **Total** | | | **155,656.99** | **100.00%** |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Recap by Category with Depreciation

| Items | | | RCV | Deprec. | ACV |
|---|---|---|---:|---:|---:|
| **GENERAL DEMOLITION** | | | **23,971.89** | | **23,971.89** |
| Coverage: 5047 Highland Hills Pkwy | @ | 7.46% = | 1,789.42 | | |
| Coverage: 5066 Highland Hills Pkwy | @ | 12.05% = | 2,887.86 | | |
| Coverage: 5099 Highland Hills Pkwy | @ | 12.05% = | 2,887.78 | | |
| Coverage: 6034 Highland Hills Pkwy | @ | 9.94% = | 2,381.97 | | |
| Coverage: 6035 Highland Hills Pkwy | @ | 0.13% = | 31.80 | | |
| Coverage: 5040 Bedlington Cir | @ | 0.13% = | 31.80 | | |
| Coverage: 5046 Bedlington Cir | @ | 9.65% = | 2,312.62 | | |
| Coverage: 5055 Highland Hills Ct | @ | 14.84% = | 3,556.71 | | |
| Coverage: 5061 Highland Hills Ct | @ | 10.94% = | 2,622.63 | | |
| Coverage: 5075 Highland Hills Ct | @ | 7.98% = | 1,912.59 | | |
| Coverage: 5081 Lynmouth Cir | @ | 14.84% = | 3,556.71 | | |
| **ELECTRICAL - SPECIAL SYSTEMS** | | | **82.04** | | **82.04** |
| Coverage: 5047 Highland Hills Pkwy | @ | 50.00% = | 41.02 | | |
| Coverage: 5075 Highland Hills Ct | @ | 50.00% = | 41.02 | | |
| **LABOR ONLY** | | | **3,608.55** | | **3,608.55** |
| Coverage: 5047 Highland Hills Pkwy | @ | 100.00% = | 3,608.55 | | |
| **ROOFING** | | | **127,994.51** | **70,545.05** | **57,449.46** |
| Coverage: 5047 Highland Hills Pkwy | @ | 7.93% = | 10,143.85 | | |
| Coverage: 5066 Highland Hills Pkwy | @ | 12.13% = | 15,522.81 | | |
| Coverage: 5099 Highland Hills Pkwy | @ | 12.13% = | 15,521.95 | | |
| Coverage: 6034 Highland Hills Pkwy | @ | 10.01% = | 12,811.63 | | |
| Coverage: 6035 Highland Hills Pkwy | @ | 0.06% = | 73.80 | | |
| Coverage: 5040 Bedlington Cir | @ | 0.06% = | 73.80 | | |
| Coverage: 5046 Bedlington Cir | @ | 9.73% = | 12,449.47 | | |
| Coverage: 5055 Highland Hills Ct | @ | 14.54% = | 18,614.41 | | |
| Coverage: 5061 Highland Hills Ct | @ | 10.61% = | 13,585.11 | | |
| Coverage: 5075 Highland Hills Ct | @ | 8.27% = | 10,583.27 | | |
| Coverage: 5081 Lynmouth Cir | @ | 14.54% = | 18,614.41 | | |
| **Subtotal** | | | **155,656.99** | **70,545.05** | **85,111.94** |
| **Material Sales Tax** | | | **3,730.84** | **2,297.61** | **1,433.23** |
| Coverage: 5047 Highland Hills Pkwy | @ | 8.44% = | 315.03 | | |
| Coverage: 5066 Highland Hills Pkwy | @ | 12.07% = | 450.19 | | |
| Coverage: 5099 Highland Hills Pkwy | @ | 12.07% = | 450.16 | | |
| Coverage: 6034 Highland Hills Pkwy | @ | 9.97% = | 371.90 | | |
| Coverage: 6035 Highland Hills Pkwy | @ | 0.02% = | 0.85 | | |
| Coverage: 5040 Bedlington Cir | @ | 0.02% = | 0.85 | | |
| Coverage: 5046 Bedlington Cir | @ | 9.69% = | 361.49 | | |
| Coverage: 5055 Highland Hills Ct | @ | 14.52% = | 541.60 | | |
| Coverage: 5061 Highland Hills Ct | @ | 10.12% = | 377.62 | | |
| Coverage: 5075 Highland Hills Ct | @ | 8.57% = | 319.55 | | |
| Coverage: 5081 Lynmouth Cir | @ | 14.52% = | 541.60 | | |

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

| | | | |
|---|---|---|---|
| **Total** | 159,387.83 | 72,842.66 | 86,545.17 |

**IMPORTANT! - PLEASE READ:** This document is an initial estimate ONLY concerning the probable cost of repair of the damage observed during inspection of the claimed loss. Additional inspection and/or investigation of the cause of loss and the damage related thereto may be required before this estimate can be finalized. Please note that this document is NOT a promise or agreement of payment for the claimed loss from Your insurance company or Engle Martin (EM). Instead, this document will be forwarded to Your insurance company for coverage and payment review and decision. This estimate is subject to final review and approval by Your insurance company and is thus subject to further revisions until final written approval is received. All final payment and coverage decisions are made by Your insurance company and NOT by EM. While You await final review and approval by Your insurance company, we request that You present this estimate to Your contractor for its review and comment. In the event of a scope of work or pricing discrepancy between this estimate and Your contractor's estimate, if any, we will work with You and Your contractor to attempt to resolve any such discrepancy; however, the authority to make a final decision on any such discrepancy belongs to Your insurance company, not EM. Finally, please note that You are responsible for selecting and hiring the contractor(s) that You want to perform Your repair work. Neither Your insurance company, nor EM guarantee the work of any contractor, nor do either inspect or monitor the work of any contractor. It is solely Your responsibility to make sure that Your repair work is properly and timely completed.

# EXHIBIT C

 **Premier Claims**

Insured: Highlands at Hidden Hills Condo Association
Property: 6034 Highland Hills Pkwy
Stone Mountain, GA 30088-3762

**Claim Number:** G10067888          **Policy Number:** IAG967197C          **Type of Loss:** Hail

Date of Loss: 3/25/2021 12:00 AM          Date Received:
Date Inspected:                           Date Entered:   3/13/2023 2:20 PM

Price List: GAAT8X_MAR23
           Restoration/Service/Remodel
Estimate: 6034_HIGHLAND_E4447

 **Premier Claims**

### 6034_HIGHLAND_E4447
### Roof Level
### Main Level

#### 5065 Highland Hills

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1. Remove Laminated - comp. shingle rfg. - w/out felt | 66.50 SQ | 64.08 | 0.00 | 0.00 | 852.26 | 5,113.58 |
| 2. Laminated - comp. shingle rfg. - w/out felt | 76.67 SQ | 0.00 | 260.06 | 742.17 | 4,136.20 | 24,817.17 |
| 3. Roofing felt - synthetic underlayment - Standard grade | 33.50 SQ | 0.00 | 41.10 | 31.89 | 281.76 | 1,690.50 |
| 4. Re-nailing of roof sheathing - complete re-nail | 66,500.00 SF | 0.00 | 0.28 | 53.20 | 3,734.64 | 22,407.84 |
| 5. Ice & water barrier | 900.00 SF | 0.00 | 1.77 | 33.84 | 325.36 | 1,952.20 |
| 6. R&R Hip / Ridge cap - composition shingles | 250.00 LF | 3.15 | 4.85 | 26.60 | 405.32 | 2,431.92 |
| 7. Asphalt starter - peel and stick | 400.00 LF | 0.00 | 2.25 | 20.80 | 184.16 | 1,104.96 |
| 8. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 9. Caulking - butyl rubber | 400.00 LF | 0.00 | 4.24 | 14.40 | 342.08 | 2,052.48 |
| 10. R&R Continuous ridge vent - shingle-over style | 30.00 LF | 0.90 | 10.34 | 10.13 | 69.46 | 416.79 |
| 11. R&R Drip edge | 400.00 LF | 0.35 | 3.03 | 38.08 | 278.02 | 1,668.10 |
| 12. R&R Rain cap - 6" | 10.00 EA | 5.37 | 45.15 | 19.76 | 105.00 | 629.96 |
| 13. Digital satellite system - Detach & reset | 2.00 EA | 0.00 | 41.02 | 0.00 | 16.40 | 98.44 |
| 14. Digital satellite system - alignment and calibration only | 2.00 EA | 0.00 | 123.05 | 0.00 | 49.22 | 295.32 |
| 15. R&R Chimney flashing - average (32" x 36") | 2.00 EA | 20.13 | 458.76 | 16.02 | 194.76 | 1,168.56 |
| 16. R&R Skylight flashing kit - dome | 4.00 EA | 6.70 | 133.07 | 29.50 | 117.72 | 706.30 |

| Totals: 5065 Highland Hills | | | | 1,039.54 | 11,138.08 | 66,828.39 |

#### 5035, 5037, 5039, 5041 Highland Hills



| 10,583.47 Surface Area | 105.83 Number of Squares |
|---|---|
| 1,355.95 Total Perimeter Length | 394.04 Total Ridge Length |
| 4.31 Total Hip Length | |

 **Premier Claims**

## CONTINUED - 5035, 5037, 5039, 5041 Highland Hills

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 17.  Remove Laminated - comp. shingle rfg. - w/out felt | 105.83 SQ | 64.08 | 0.00 | 0.00 | 1,356.32 | 8,137.91 |
| 18.  Laminated - comp. shingle rfg. - w/out felt | 122.00 SQ | 0.00 | 260.06 | 1,180.96 | 6,581.66 | 39,489.94 |
| 19.  Roofing felt - synthetic underlayment - Standard grade | 105.83 SQ | 0.00 | 41.10 | 100.75 | 890.08 | 5,340.44 |
| 20.  Re-nailing of roof sheathing - complete re-nail | 10,583. SF 47 | 0.00 | 0.28 | 8.47 | 594.38 | 3,566.22 |
| 21.  Ice & water barrier | 958.89 SF | 0.00 | 1.77 | 36.05 | 346.66 | 2,079.95 |
| 22.  R&R Hip / Ridge cap - composition shingles | 398.35 LF | 3.15 | 4.85 | 42.38 | 645.84 | 3,875.02 |
| 23.  Asphalt starter - peel and stick | 1,355.95 LF | 0.00 | 2.25 | 70.51 | 624.28 | 3,745.68 |
| 24.  Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 25.  Caulking - butyl rubber | 1,355.95 LF | 0.00 | 4.24 | 48.81 | 1,159.60 | 6,957.64 |
| 26.  R&R Continuous ridge vent - shingle-over style | 394.04 LF | 0.90 | 10.34 | 133.03 | 912.40 | 5,474.44 |
| 27.  R&R Drip edge | 1,355.95 LF | 0.35 | 3.03 | 129.09 | 942.44 | 5,654.64 |
| 28.  R&R Rain cap - 4" to 5" | 10.00 EA | 5.37 | 39.99 | 15.63 | 93.84 | 563.07 |
| 29.  R&R Chimney flashing - average (32" x 36") | 4.00 EA | 20.13 | 458.76 | 32.04 | 389.50 | 2,337.10 |
| 30.  Digital satellite system - Detach & reset | 3.00 EA | 0.00 | 41.02 | 0.00 | 24.62 | 147.68 |
| 31.  Digital satellite system - alignment and calibration only | 3.00 EA | 0.00 | 123.05 | 0.00 | 73.84 | 442.99 |
| 32.  R&R Skylight flashing kit - dome | 8.00 EA | 6.70 | 133.07 | 59.00 | 235.44 | 1,412.60 |
| 33.  R&R Gutter / downspout - aluminum - up to 5" | 509.46 LF | 0.54 | 10.21 | 219.27 | 1,139.20 | 6,835.17 |

Totals: 5035, 5037, 5039, 5041 Highland Hills                                2,079.14    16,055.82    96,334.76

 **5045, 5047, 5049, Highland, 1803 Montrose Hills**

| 9,735.39 Surface Area | 97.35 Number of Squares |
|---|---|
| 1,351.19 Total Perimeter Length | 314.90 Total Ridge Length |
| 38.13 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 34.  Remove Laminated - comp. shingle rfg. - w/out felt | 97.35 SQ | 64.08 | 0.00 | 0.00 | 1,247.64 | 7,485.83 |

6034_HIGHLAND_E4447                                                    3/13/2023        Page: 3

 **Premier Claims**

**CONTINUED - 5045, 5047, 5049, Highland, 1803 Montrose Hills**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 35. Laminated - comp. shingle rfg. - w/out felt | 112.00 SQ | 0.00 | 260.06 | 1,084.16 | 6,042.18 | 36,253.06 |
| 36. Roofing felt - synthetic underlayment - Standard grade | 97.35 SQ | 0.00 | 41.10 | 92.68 | 818.76 | 4,912.53 |
| 37. Re-nailing of roof sheathing - complete re-nail | 9,735.39 SF | 0.00 | 0.28 | 7.79 | 546.74 | 3,280.44 |
| 38. R&R Hip / Ridge cap - composition shingles | 353.04 LF | 3.15 | 4.85 | 37.56 | 572.38 | 3,434.26 |
| 39. Asphalt starter - peel and stick | 1,351.19 LF | 0.00 | 2.25 | 70.26 | 622.10 | 3,732.54 |
| 40. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 41. Caulking - butyl rubber | 1,351.19 LF | 0.00 | 4.24 | 48.64 | 1,155.54 | 6,933.23 |
| 42. R&R Continuous ridge vent - shingle-over style | 314.90 LF | 0.90 | 10.34 | 106.31 | 729.16 | 4,374.95 |
| 43. R&R Drip edge | 1,351.19 LF | 0.35 | 3.03 | 128.63 | 939.12 | 5,634.78 |
| 44. Ice & water barrier | 714.75 SF | 0.00 | 1.77 | 26.87 | 258.40 | 1,550.38 |
| 45. R&R Rain cap - 4" to 5" | 10.00 EA | 5.37 | 39.99 | 15.63 | 93.84 | 563.07 |
| 46. R&R Chimney flashing - average (32" x 36") | 3.00 EA | 20.13 | 458.76 | 24.03 | 292.14 | 1,752.84 |
| 47. Digital satellite system - Detach & reset | 4.00 EA | 0.00 | 41.02 | 0.00 | 32.82 | 196.90 |
| 48. Digital satellite system - alignment and calibration only | 4.00 EA | 0.00 | 123.05 | 0.00 | 98.44 | 590.64 |
| 49. R&R Skylight flashing kit - dome | 4.00 EA | 6.70 | 133.07 | 29.50 | 117.72 | 706.30 |
| 50. R&R Gutter / downspout - aluminum - up to 5" | 527.02 LF | 0.54 | 10.21 | 226.83 | 1,178.46 | 7,070.75 |

Totals:  5045, 5047, 5049, Highland, 1803 Montrose Hills | | | | 1,902.04 | 14,791.16 | 88,746.77

 **5064, 5066, 5068 Highland Hills**

| 9,108.76 Surface Area | 91.09 Number of Squares |
|---|---|
| 1,115.52 Total Perimeter Length | 265.68 Total Ridge Length |
| 64.79 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 51. Remove Laminated - comp. shingle rfg. - w/out felt | 91.09 SQ | 64.08 | 0.00 | 0.00 | 1,167.42 | 7,004.47 |
| 52. Laminated - comp. shingle rfg. - w/out felt | 105.00 SQ | 0.00 | 260.06 | 1,016.40 | 5,664.54 | 33,987.24 |

 **Premier Claims**

### CONTINUED - 5064, 5066, 5068 Highland Hills

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 53. Roofing felt - synthetic underlayment - Standard grade | 91.09 SQ | 0.00 | 41.10 | 86.72 | 766.10 | 4,596.62 |
| 54. Re-nailing of roof sheathing - complete re-nail | 9,108.76 SF | 0.00 | 0.28 | 7.29 | 511.56 | 3,069.30 |
| 55. R&R Hip / Ridge cap - composition shingles | 330.47 LF | 3.15 | 4.85 | 35.16 | 535.80 | 3,214.72 |
| 56. Asphalt starter - peel and stick | 1,115.52 LF | 0.00 | 2.25 | 58.01 | 513.58 | 3,081.51 |
| 57. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 58. Caulking - butyl rubber | 1,115.52 LF | 0.00 | 4.24 | 40.16 | 954.00 | 5,723.96 |
| 59. R&R Continuous ridge vent - shingle-over style | 265.68 LF | 0.90 | 10.34 | 89.69 | 615.18 | 3,691.11 |
| 60. R&R Drip edge | 1,115.52 LF | 0.35 | 3.03 | 106.20 | 775.32 | 4,651.98 |
| 61. Ice & water barrier | 615.46 SF | 0.00 | 1.77 | 23.14 | 222.50 | 1,335.00 |
| 62. R&R Rain cap - 4" to 5" | 7.00 EA | 5.37 | 39.99 | 10.94 | 65.68 | 394.14 |
| 63. R&R Chimney flashing - average (32" x 36") | 3.00 EA | 20.13 | 458.76 | 24.03 | 292.14 | 1,752.84 |
| 64. Digital satellite system - Detach & reset | 3.00 EA | 0.00 | 41.02 | 0.00 | 24.62 | 147.68 |
| 65. Digital satellite system - alignment and calibration only | 3.00 EA | 0.00 | 123.05 | 0.00 | 73.84 | 442.99 |
| 66. R&R Skylight flashing kit - dome | 4.00 EA | 6.70 | 133.07 | 29.50 | 117.72 | 706.30 |
| 67. R&R Roof vent - turtle type - Metal | 3.00 EA | 9.65 | 79.71 | 7.38 | 55.10 | 330.56 |
| 68. R&R Gutter / downspout - aluminum - up to 5" | 422.53 LF | 0.54 | 10.21 | 181.86 | 944.82 | 5,668.88 |

Totals: 5064, 5066, 5068 Highland Hills     1,719.63     13,345.64     80,073.57

 **5093, 5095, 5097, 5099 Highland Hills**

11,299.65 Surface Area     113.00 Number of Squares
1,404.88 Total Perimeter Length     407.57 Total Ridge Length
5.18 Total Hip Length

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 69. Remove Laminated - comp. shingle rfg. - w/out felt | 113.00 SQ | 64.08 | 0.00 | 0.00 | 1,448.20 | 8,689.24 |
| 70. Laminated - comp. shingle rfg. - w/out felt | 130.00 SQ | 0.00 | 260.06 | 1,258.40 | 7,013.24 | 42,079.44 |

 **Premier Claims**

### CONTINUED - 5093, 5095, 5097, 5099 Highland Hills

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 71. Roofing felt - synthetic underlayment - Standard grade | 113.00 SQ | 0.00 | 41.10 | 107.58 | 950.38 | 5,702.26 |
| 72. Re-nailing of roof sheathing - complete re-nail | 11,299. SF 65 | 0.00 | 0.28 | 9.04 | 634.58 | 3,807.52 |
| 73. R&R Hip / Ridge cap - composition shingles | 412.75 LF | 3.15 | 4.85 | 43.92 | 669.18 | 4,015.10 |
| 74. Asphalt starter - peel and stick | 1,404.88 LF | 0.00 | 2.25 | 73.05 | 646.82 | 3,880.85 |
| 75. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 76. Caulking - butyl rubber | 1,404.88 LF | 0.00 | 4.24 | 50.58 | 1,201.46 | 7,208.73 |
| 77. R&R Continuous ridge vent - shingle-over style | 407.57 LF | 0.90 | 10.34 | 137.60 | 943.74 | 5,662.42 |
| 78. R&R Drip edge | 1,404.88 LF | 0.35 | 3.03 | 133.74 | 976.44 | 5,858.68 |
| 79. Ice & water barrier | 979.42 SF | 0.00 | 1.77 | 36.83 | 354.08 | 2,124.48 |
| 80. R&R Rain cap - 4" to 5" | 10.00 EA | 5.37 | 39.99 | 15.63 | 93.84 | 563.07 |
| 81. R&R Chimney flashing - average (32" x 36") | 4.00 EA | 20.13 | 458.76 | 32.04 | 389.50 | 2,337.10 |
| 82. Digital satellite system - Detach & reset | 4.00 EA | 0.00 | 41.02 | 0.00 | 32.82 | 196.90 |
| 83. Digital satellite system - alignment and calibration only | 4.00 EA | 0.00 | 123.05 | 0.00 | 98.44 | 590.64 |
| 84. R&R Skylight flashing kit - dome | 5.00 EA | 6.70 | 133.07 | 36.88 | 147.16 | 882.89 |
| 85. R&R Gutter / downspout - aluminum - up to 5" | 506.42 LF | 0.54 | 10.21 | 217.96 | 1,132.42 | 6,794.40 |

Totals: 5093, 5095, 5097, 5099 Highland Hills          2,156.40          16,778.02          100,667.99

 **6033, 6035, 6037, 6039 Highland Hills**

| | |
|---|---|
| 10,894.18 Surface Area | 108.94 Number of Squares |
| 1,479.62 Total Perimeter Length | 376.23 Total Ridge Length |
| 8.21 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 86. Remove Laminated - comp. shingle rfg. - w/out felt | 108.94 SQ | 64.08 | 0.00 | 0.00 | 1,396.18 | 8,377.06 |
| 87. Laminated - comp. shingle rfg. - w/out felt | 125.33 SQ | 0.00 | 260.06 | 1,213.19 | 6,761.30 | 40,567.81 |
| 88. Roofing felt - synthetic underlayment - Standard grade | 108.94 SQ | 0.00 | 41.10 | 103.71 | 916.22 | 5,497.36 |

 **Premier Claims**

### CONTINUED - 6033, 6035, 6037, 6039 Highland Hills

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 89. Re-nailing of roof sheathing - complete re-nail | 10,894. SF 18 | 0.00 | 0.28 | 8.72 | 611.82 | 3,670.91 |
| 90. R&R Hip / Ridge cap - composition shingles | 384.44 LF | 3.15 | 4.85 | 40.90 | 623.28 | 3,739.70 |
| 91. Asphalt starter - peel and stick | 1,479.62 LF | 0.00 | 2.25 | 76.94 | 681.22 | 4,087.31 |
| 92. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 93. Caulking - butyl rubber | 1,479.62 LF | 0.00 | 4.24 | 53.27 | 1,265.38 | 7,592.24 |
| 94. R&R Continuous ridge vent - shingle-over style | 376.23 LF | 0.90 | 10.34 | 127.02 | 871.16 | 5,227.01 |
| 95. R&R Drip edge | 1,479.62 LF | 0.35 | 3.03 | 140.86 | 1,028.42 | 6,170.40 |
| 96. Ice & water barrier | 901.69 SF | 0.00 | 1.77 | 33.90 | 325.98 | 1,955.87 |
| 97. R&R Rain cap - 4" to 5" | 6.00 EA | 5.37 | 39.99 | 9.38 | 56.30 | 337.84 |
| 98. R&R Chimney flashing - average (32" x 36") | 4.00 EA | 20.13 | 458.76 | 32.04 | 389.50 | 2,337.10 |
| 99. Digital satellite system - Detach & reset | 1.00 EA | 0.00 | 41.02 | 0.00 | 8.20 | 49.22 |
| 100. Digital satellite system - alignment and calibration only | 1.00 EA | 0.00 | 123.05 | 0.00 | 24.62 | 147.67 |
| 101. R&R Gutter / downspout - aluminum - up to 5" | 482.80 LF | 0.54 | 10.21 | 207.80 | 1,079.58 | 6,477.48 |

Totals: 6033, 6035, 6037, 6039 Highland Hills     2,050.88    16,084.88    96,509.25



### 6034, 6036 Highland Hills

| | | |
|---|---|---|
| 4,803.59 Surface Area | 48.04 Number of Squares | |
| 627.80 Total Perimeter Length | 175.75 Total Ridge Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 102. Remove Laminated - comp. shingle rfg. - w/out felt | 48.04 SQ | 64.08 | 0.00 | 0.00 | 615.68 | 3,694.08 |
| 103. Laminated - comp. shingle rfg. - w/out felt | 55.33 SQ | 0.00 | 260.06 | 535.59 | 2,984.94 | 17,909.65 |
| 104. Roofing felt - synthetic underlayment - Standard grade | 48.04 SQ | 0.00 | 41.10 | 45.73 | 404.02 | 2,424.19 |
| 105. Re-nailing of roof sheathing - complete re-nail | 4,803.59 SF | 0.00 | 0.28 | 3.84 | 269.76 | 1,618.61 |
| 106. R&R Hip / Ridge cap - composition shingles | 175.75 LF | 3.15 | 4.85 | 18.70 | 284.94 | 1,709.64 |

 **Premier Claims**

### CONTINUED - 6034, 6036 Highland Hills

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 107. Asphalt starter - peel and stick | 627.80 LF | 0.00 | 2.25 | 32.65 | 289.06 | 1,734.26 |
| 108. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 109. Caulking - butyl rubber | 627.80 LF | 0.00 | 4.24 | 22.60 | 536.90 | 3,221.37 |
| 110. R&R Continuous ridge vent - shingle-over style | 175.75 LF | 0.90 | 10.34 | 59.33 | 406.96 | 2,441.73 |
| 111. R&R Drip edge | 627.80 LF | 0.35 | 3.03 | 59.77 | 436.34 | 2,618.07 |
| 112. Ice & water barrier | 361.05 SF | 0.00 | 1.77 | 13.58 | 130.54 | 783.18 |
| 113. R&R Rain cap - 4" to 5" | 4.00 EA | 5.37 | 39.99 | 6.25 | 37.56 | 225.25 |
| 114. R&R Chimney flashing - average (32" x 36") | 2.00 EA | 20.13 | 458.76 | 16.02 | 194.76 | 1,168.56 |
| 115. Digital satellite system - Detach & reset | 2.00 EA | 0.00 | 41.02 | 0.00 | 16.40 | 98.44 |
| 116. Digital satellite system - alignment and calibration only | 2.00 EA | 0.00 | 123.05 | 0.00 | 49.22 | 295.32 |
| 117. R&R Skylight flashing kit - dome | 3.00 EA | 6.70 | 133.07 | 22.13 | 88.28 | 529.72 |
| 118. R&R Gutter / downspout - aluminum - up to 5" | 261.82 LF | 0.54 | 10.21 | 112.69 | 585.46 | 3,512.71 |

| Totals: 6034, 6036 Highland Hills | | | | 952.03 | 7,376.54 | 44,259.05 |
|---|---|---|---|---|---|---|



### 5073, 5075, 5077, 5079, 5081 Lynmouth Circle

| | |
|---|---|
| 12,021.98 Surface Area | 120.22 Number of Squares |
| 1,509.32 Total Perimeter Length | 414.88 Total Ridge Length |
| 93.80 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 119. Remove Laminated - comp. shingle rfg. - w/out felt | 120.22 SQ | 64.08 | 0.00 | 0.00 | 1,540.74 | 9,244.44 |
| 120. Laminated - comp. shingle rfg. - w/out felt | 138.33 SQ | 0.00 | 260.06 | 1,339.03 | 7,462.62 | 44,775.75 |
| 121. Roofing felt - synthetic underlayment - Standard grade | 120.22 SQ | 0.00 | 41.10 | 114.45 | 1,011.10 | 6,066.59 |
| 122. Re-nailing of roof sheathing - complete re-nail | 12,021.98 SF | 0.00 | 0.28 | 9.62 | 675.16 | 4,050.93 |
| 123. R&R Hip / Ridge cap - composition shingles | 508.68 LF | 3.15 | 4.85 | 54.12 | 824.70 | 4,948.26 |
| 124. Asphalt starter - peel and stick | 1,509.32 LF | 0.00 | 2.25 | 78.48 | 694.90 | 4,169.35 |
| 125. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |



**Premier Claims**

### CONTINUED - 5073, 5075, 5077, 5079, 5081 Lynmouth Circle

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 126. Caulking - butyl rubber | 1,509.32 LF | 0.00 | 4.24 | 54.34 | 1,290.76 | 7,744.62 |
| 127. R&R Continuous ridge vent - shingle-over style | 414.88 LF | 0.90 | 10.34 | 140.06 | 960.68 | 5,763.99 |
| 128. R&R Drip edge | 1,509.32 LF | 0.35 | 3.03 | 143.69 | 1,049.04 | 6,294.23 |
| 129. Ice & water barrier | 1,057.14 SF | 0.00 | 1.77 | 39.75 | 382.18 | 2,293.07 |
| 130. R&R Rain cap - 4" to 5" | 10.00 EA | 5.37 | 39.99 | 15.63 | 93.84 | 563.07 |
| 131. R&R Chimney flashing - average (32" x 36") | 5.00 EA | 20.13 | 458.76 | 40.06 | 486.92 | 2,921.43 |
| 132. Digital satellite system - Detach & reset | 5.00 EA | 0.00 | 41.02 | 0.00 | 41.02 | 246.12 |
| 133. Digital satellite system - alignment and calibration only | 5.00 EA | 0.00 | 123.05 | 0.00 | 123.06 | 738.31 |
| 134. R&R Skylight flashing kit - dome | 6.00 EA | 6.70 | 133.07 | 44.25 | 176.58 | 1,059.45 |
| 135. R&R Gutter / downspout - aluminum - up to 5" | 573.43 LF | 0.54 | 10.21 | 246.80 | 1,282.24 | 7,693.41 |

Totals: 5073, 5075, 5077, 5079, 5081 Lynmouth Circle     2,323.43    18,141.26    108,847.29



### 5055, 5057, 5059, 5061 Highland Hills Ct

| | |
|---|---|
| 12,022.51 Surface Area | 120.23 Number of Squares |
| 1,480.80 Total Perimeter Length | 400.57 Total Ridge Length |
| 139.21 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 136. Remove Laminated - comp. shingle rfg. - w/out felt | 120.23 SQ | 64.08 | 0.00 | 0.00 | 1,540.86 | 9,245.20 |
| 137. Laminated - comp. shingle rfg. - w/out felt | 138.33 SQ | 0.00 | 260.06 | 1,339.03 | 7,462.62 | 44,775.75 |
| 138. Roofing felt - synthetic underlayment - Standard grade | 120.23 SQ | 0.00 | 41.10 | 114.46 | 1,011.20 | 6,067.11 |
| 139. Re-nailing of roof sheathing - complete re-nail | 12,022.51 SF | 0.00 | 0.28 | 9.62 | 675.18 | 4,051.10 |
| 140. R&R Hip / Ridge cap - composition shingles | 539.78 LF | 3.15 | 4.85 | 57.43 | 875.12 | 5,250.79 |
| 141. Asphalt starter - peel and stick | 1,480.80 LF | 0.00 | 2.25 | 77.00 | 681.76 | 4,090.56 |
| 142. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 143. Caulking - butyl rubber | 1,480.80 LF | 0.00 | 4.24 | 53.31 | 1,266.38 | 7,598.28 |
| 144. R&R Continuous ridge vent - shingle-over style | 400.57 LF | 0.90 | 10.34 | 135.23 | 927.52 | 5,565.15 |

 **Premier Claims**

### CONTINUED - 5055, 5057, 5059, 5061 Highland Hills Ct

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 145. R&R Drip edge | 1,480.80 LF | 0.35 | 3.03 | 140.97 | 1,029.22 | 6,175.29 |
| 146. Ice & water barrier | 1,064.91 SF | 0.00 | 1.77 | 40.04 | 384.98 | 2,309.91 |
| 147. R&R Rain cap - 4" to 5" | 7.00 EA | 5.37 | 39.99 | 10.94 | 65.68 | 394.14 |
| 148. R&R Chimney flashing - average (32" x 36") | 4.00 EA | 20.13 | 458.76 | 32.04 | 389.50 | 2,337.10 |
| 149. Digital satellite system - Detach & reset | 4.00 EA | 0.00 | 41.02 | 0.00 | 32.82 | 196.90 |
| 150. Digital satellite system - alignment and calibration only | 4.00 EA | 0.00 | 123.05 | 0.00 | 98.44 | 590.64 |
| 151. R&R Skylight flashing kit - dome | 2.00 EA | 6.70 | 133.07 | 14.75 | 58.86 | 353.15 |
| 152. R&R Gutter / downspout - aluminum - up to 5" | 595.37 LF | 0.54 | 10.21 | 256.25 | 1,331.30 | 7,987.78 |

| Totals: 5055, 5057, 5059, 5061 Highland Hills Ct | | | | 2,284.22 | 17,877.16 | 107,263.12 |
|---|---|---|---|---|---|---|



### 5067, 5069, 5071 Highland Hills Court

| 8,862.31 Surface Area | 88.62 Number of Squares |
|---|---|
| 942.41 Total Perimeter Length | 240.19 Total Ridge Length |
| 240.86 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 153. Remove Laminated - comp. shingle rfg. - w/out felt | 88.62 SQ | 64.08 | 0.00 | 0.00 | 1,135.76 | 6,814.53 |
| 154. Laminated - comp. shingle rfg. - w/out felt | 102.00 SQ | 0.00 | 260.06 | 987.36 | 5,502.70 | 33,016.18 |
| 155. Roofing felt - synthetic underlayment - Standard grade | 88.62 SQ | 0.00 | 41.10 | 84.37 | 745.34 | 4,471.99 |
| 156. Re-nailing of roof sheathing - complete re-nail | 8,862.31 SF | 0.00 | 0.28 | 7.09 | 497.72 | 2,986.26 |
| 157. R&R Hip / Ridge cap - composition shingles | 481.05 LF | 3.15 | 4.85 | 51.18 | 779.92 | 4,679.50 |
| 158. Asphalt starter - peel and stick | 942.41 LF | 0.00 | 2.25 | 49.01 | 433.88 | 2,603.31 |
| 159. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 160. Caulking - butyl rubber | 942.41 LF | 0.00 | 4.24 | 33.93 | 805.94 | 4,835.69 |
| 161. R&R Continuous ridge vent - shingle-over style | 240.19 LF | 0.90 | 10.34 | 81.09 | 556.18 | 3,337.00 |
| 162. R&R Drip edge | 942.41 LF | 0.35 | 3.03 | 89.72 | 655.00 | 3,930.06 |
| 163. Ice & water barrier | 651.15 SF | 0.00 | 1.77 | 24.48 | 235.40 | 1,412.42 |

 Premier Claims

## CONTINUED - 5067, 5069, 5071 Highland Hills Court

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 164. R&R Rain cap - 4" to 5" | 9.00 EA | 5.37 | 39.99 | 14.07 | 84.46 | 506.77 |
| 165. R&R Chimney flashing - average (32" x 36") | 3.00 EA | 20.13 | 458.76 | 24.03 | 292.14 | 1,752.84 |
| 166. Digital satellite system - Detach & reset | 1.00 EA | 0.00 | 41.02 | 0.00 | 8.20 | 49.22 |
| 167. Digital satellite system - alignment and calibration only | 1.00 EA | 0.00 | 123.05 | 0.00 | 24.62 | 147.67 |
| 168. R&R Skylight flashing kit - dome | 4.00 EA | 6.70 | 133.07 | 29.50 | 117.72 | 706.30 |
| 169. R&R Gutter / downspout - aluminum - up to 5" | 535.00 LF | 0.54 | 10.21 | 230.26 | 1,196.32 | 7,177.83 |

Totals: 5067, 5069, 5071 Highland Hills Court      1,709.24    13,117.02    78,701.84



### 5073, 5075 Highland Hills Court

| 5,890.58 Surface Area | 58.91 Number of Squares |
|---|---|
| 721.85 Total Perimeter Length | 194.20 Total Ridge Length |
| 148.70 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 170. Remove Laminated - comp. shingle rfg. - w/out felt | 58.91 SQ | 64.08 | 0.00 | 0.00 | 755.00 | 4,529.95 |
| 171. Laminated - comp. shingle rfg - w/out felt | 68.00 SQ | 0.00 | 260.06 | 658.24 | 3,668.46 | 22,010.78 |
| 172. Roofing felt - synthetic underlayment - Standard grade | 58.91 SQ | 0.00 | 41.10 | 56.08 | 495.46 | 2,972.74 |
| 173. Re-nailing of roof sheathing - complete re-nail | 5,890.58 SF | 0.00 | 0.28 | 4.71 | 330.82 | 1,984.89 |
| 174. R&R Hip / Ridge cap - composition shingles | 342.90 LF | 3.15 | 4.85 | 36.48 | 555.94 | 3,335.63 |
| 175. Asphalt starter - peel and stick | 721.85 LF | 0.00 | 2.25 | 37.54 | 332.34 | 1,994.04 |
| 176. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 177. Caulking - butyl rubber | 721.85 LF | 0.00 | 4.24 | 25.99 | 617.32 | 3,703.95 |
| 178. R&R Continuous ridge vent - shingle-over style | 194.20 LF | 0.90 | 10.34 | 65.56 | 449.68 | 2,698.05 |
| 179. R&R Drip edge | 721.85 LF | 0.35 | 3.03 | 68.72 | 501.72 | 3,010.30 |
| 180. Ice & water barrier | 510.04 SF | 0.00 | 1.77 | 19.18 | 184.40 | 1,106.35 |
| 181. R&R Rain cap - 4" to 5" | 7.00 EA | 5.37 | 39.99 | 10.94 | 65.68 | 394.14 |
| 182. R&R Chimney flashing - average (32" x 36") | 2.00 EA | 20.13 | 458.76 | 16.02 | 194.76 | 1,168.56 |

6034_HIGHLAND_E4447          3/13/2023      Page: 11

 **Premier Claims**

### CONTINUED - 5073, 5075 Highland Hills Court

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 183. Digital satellite system - Detach & reset | 2.00 EA | 0.00 | 41.02 | 0.00 | 16.40 | 98.44 |
| 184. Digital satellite system - alignment and calibration only | 2.00 EA | 0.00 | 123.05 | 0.00 | 49.22 | 295.32 |
| 185. R&R Skylight flashing kit - dome | 4.00 EA | 6.70 | 133.07 | 29.50 | 117.72 | 706.30 |
| 186. R&R Gutter / downspout - aluminum - up to 5" | 389.74 LF | 0.54 | 10.21 | 167.74 | 871.50 | 5,228.95 |

| Totals: 5073, 5075 Highland Hills Court | | | | 1,199.85 | 9,252.14 | 55,512.66 |
|---|---|---|---|---|---|---|



### 5079, 5081, 5083 Highland Hills Court

| 8,841.37 Surface Area | 88.41 Number of Squares |
|---|---|
| 1,039.08 Total Perimeter Length | 247.79 Total Ridge Length |
| 235.86 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 187. Remove Laminated - comp. shingle rfg. - w/out felt | 88.41 SQ | 64.08 | 0.00 | 0.00 | 1,133.06 | 6,798.37 |
| 188. Laminated - comp. shingle rfg. - w/out felt | 102.00 SQ | 0.00 | 260.06 | 987.36 | 5,502.70 | 33,016.18 |
| 189. Roofing felt - synthetic underlayment - Standard grade | 88.41 SQ | 0.00 | 41.10 | 84.17 | 743.58 | 4,461.40 |
| 190. Re-nailing of roof sheathing - complete re-nail | 8,841.37 SF | 0.00 | 0.28 | 7.07 | 496.54 | 2,979.19 |
| 191. R&R Hip / Ridge cap - composition shingles | 483.65 LF | 3.15 | 4.85 | 51.46 | 784.14 | 4,704.80 |
| 192. Asphalt starter - peel and stick | 1,039.08 LF | 0.00 | 2.25 | 54.03 | 478.38 | 2,870.34 |
| 193. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 194. Caulking - butyl rubber | 1,039.08 LF | 0.00 | 4.24 | 37.41 | 888.62 | 5,331.73 |
| 195. R&R Continuous ridge vent - shingle-over style | 247.79 LF | 0.90 | 10.34 | 83.65 | 573.78 | 3,442.59 |
| 196. R&R Drip edge | 1,039.08 LF | 0.35 | 3.03 | 98.92 | 722.20 | 4,333.21 |
| 197. Ice & water barrier | 763.37 SF | 0.00 | 1.77 | 28.70 | 275.98 | 1,655.84 |
| 198. R&R Rain cap - 4" to 5" | 10.00 EA | 5.37 | 39.99 | 15.63 | 93.84 | 563.07 |
| 199. R&R Chimney flashing - average (32" x 36") | 3.00 EA | 20.13 | 458.76 | 24.03 | 292.14 | 1,752.84 |
| 200. Digital satellite system - Detach & reset | 3.00 EA | 0.00 | 41.02 | 0.00 | 24.62 | 147.68 |

6034_HIGHLAND_E4447

3/13/2023      Page: 12

 **Premier Claims**

CONTINUED - 5079, 5081, 5083 Highland Hills Court

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 201. Digital satellite system - alignment and calibration only | 3.00 EA | 0.00 | 123.05 | 0.00 | 73.84 | 442.99 |
| 202. R&R Skylight flashing kit - dome | 1.00 EA | 6.70 | 133.07 | 7.38 | 29.44 | 176.59 |
| 203. R&R Gutter / downspout - aluminum - up to 5" | 526.10 LF | 0.54 | 10.21 | 226.43 | 1,176.40 | 7,058.40 |

| Totals: 5079, 5081, 5083 Highland Hills Court | | | | 1,709.39 | 13,334.98 | 80,009.49 |
|---|---|---|---|---|---|---|



### 5089, 5091 Highland Hills Court

| 7,442.39 Surface Area | 74.42 Number of Squares |
|---|---|
| 702.64 Total Perimeter Length | 112.86 Total Ridge Length |
| 81.37 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 204. Remove Laminated - comp. shingle rfg. - w/out felt | 74.42 SQ | 64.08 | 0.00 | 0.00 | 953.76 | 5,722.59 |
| 205. Laminated - comp. shingle rfg. - w/out felt | 85.67 SQ | 0.00 | 260.06 | 829.29 | 4,621.72 | 27,730.35 |
| 206. Roofing felt - synthetic underlayment - Standard grade | 74.42 SQ | 0.00 | 41.10 | 70.85 | 625.92 | 3,755.43 |
| 207. Re-nailing of roof sheathing - complete re-nail | 7,442.39 SF | 0.00 | 0.28 | 5.95 | 417.98 | 2,507.80 |
| 208. R&R Hip / Ridge cap - composition shingles | 194.22 LF | 3.15 | 4.85 | 20.66 | 314.90 | 1,889.32 |
| 209. Asphalt starter - peel and stick | 702.64 LF | 0.00 | 2.25 | 36.54 | 323.48 | 1,940.96 |
| 210. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 211. Caulking - butyl rubber | 702.64 LF | 0.00 | 4.24 | 25.30 | 600.90 | 3,605.39 |
| 212. R&R Continuous ridge vent - shingle-over style | 112.86 LF | 0.90 | 10.34 | 38.10 | 261.34 | 1,567.98 |
| 213. R&R Drip edge | 702.64 LF | 0.35 | 3.03 | 66.89 | 488.36 | 2,930.17 |
| 214. Ice & water barrier | SF | 0.00 | 1.77 | 0.00 | 0.00 | 0.00 |
| 215. R&R Rain cap - 4" to 5" | 5.00 EA | 5.37 | 39.99 | 7.82 | 46.94 | 281.56 |
| 216. R&R Chimney flashing - average (32" x 36") | 2.00 EA | 20.13 | 458.76 | 16.02 | 194.76 | 1,168.56 |
| 217. Digital satellite system - Detach & reset | 1.00 EA | 0.00 | 41.02 | 0.00 | 8.20 | 49.22 |
| 218. Digital satellite system - alignment and calibration only | 1.00 EA | 0.00 | 123.05 | 0.00 | 24.62 | 147.67 |
| 219. R&R Skylight flashing kit - dome | 4.00 EA | 6.70 | 133.07 | 29.50 | 117.72 | 706.30 |

 Premier Claims

**CONTINUED - 5089, 5091 Highland Hills Court**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 220.  R&R Roof vent - turtle type - Metal | 4.00 EA | 9.65 | 79.71 | 9.83 | 73.44 | 440.71 |
| 221.  R&R Gutter / downspout - aluminum - up to 5" | 377.77 LF | 0.54 | 10.21 | 162.59 | 844.72 | 5,068.34 |
| Totals:  5089. 5091 Highland Hills Court | | | | 1,322.49 | 9,964.48 | 59,786.62 |



### 5038, 5040 Bedlington Circle

6,080.41  Surface Area      60.80  Number of Squares
564.48  Total Perimeter Length      199.05  Total Ridge Length
232.78  Total Hip Length

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 222.  Remove Laminated - comp. shingle rfg. - w/out felt | 60.80 SQ | 64.08 | 0.00 | 0.00 | 779.22 | 4,675.28 |
| 223.  Laminated - comp. shingle rfg. - w/out felt | 70.00 SQ | 0.00 | 260.06 | 677.60 | 3,776.36 | 22,658.16 |
| 224.  Roofing felt - synthetic underlayment - Standard grade | 60.80 SQ | 0.00 | 41.10 | 57.88 | 511.36 | 3,068.12 |
| 225.  Re-nailing of roof sheathing - complete re-nail | 6,080.41 SF | 0.00 | 0.28 | 4.86 | 341.48 | 2,048.85 |
| 226.  R&R Hip / Ridge cap - composition shingles | 431.83 LF | 3.15 | 4.85 | 45.95 | 700.14 | 4,200.73 |
| 227.  Asphalt starter - peel and stick | 564.48 LF | 0.00 | 2.25 | 29.35 | 259.90 | 1,559.33 |
| 228.  Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 229.  Caulking - butyl rubber | 564.48 LF | 0.00 | 4.24 | 20.32 | 482.74 | 2,896.46 |
| 230.  R&R Continuous ridge vent - shingle-over style | 199.05 LF | 0.90 | 10.34 | 67.20 | 460.92 | 2,765.45 |
| 231.  R&R Drip edge | 564.48 LF | 0.35 | 3.03 | 53.74 | 392.34 | 2,354.02 |
| 232.  Ice & water barrier | 850.46 SF | 0.00 | 1.77 | 31.98 | 307.46 | 1,844.75 |
| 233.  R&R Rain cap - 4" to 5" | 8.00 EA | 5.37 | 39.99 | 12.51 | 75.08 | 450.47 |
| 234.  R&R Chimney flashing - average (32" x 36") | 2.00 EA | 20.13 | 458.76 | 16.02 | 194.76 | 1,168.56 |
| 235.  R&R Gutter / downspout - aluminum - up to 5" | 363.75 LF | 0.54 | 10.21 | 156.56 | 813.38 | 4,880.26 |
| Totals:  5038, 5040 Bedlington Circle | | | | 1,177.12 | 9,140.86 | 54,844.71 |

 Premier Claims



### 5044, 5046, 5048, 5050 Bedlington Circle

10,496.31 Surface Area      104.96 Number of Squares
1,501.12 Total Perimeter Length      355.12 Total Ridge Length

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 236. Remove Laminated - comp. shingle rfg. - w/out felt | 104.96 SQ | 64.08 | 0.00 | 0.00 | 1,345.16 | 8,071.00 |
| 237. Laminated - comp. shingle rfg. - w/out felt | 121.00 SQ | 0.00 | 260.06 | 1,171.28 | 6,527.72 | 39,166.26 |
| 238. Roofing felt - synthetic underlayment - Standard grade | 104.96 SQ | 0.00 | 41.10 | 99.92 | 882.76 | 5,296.54 |
| 239. Re-nailing of roof sheathing - complete re-nail | 10,496. SF 31 | 0.00 | 0.28 | 8.40 | 589.48 | 3,536.85 |
| 240. R&R Hip / Ridge cap - composition shingles | 355.12 LF | 3.15 | 4.85 | 37.78 | 575.74 | 3,454.48 |
| 241. Asphalt starter - peel and stick | 1,501.12 LF | 0.00 | 2.25 | 78.06 | 691.12 | 4,146.70 |
| 242. Step flashing | 20.00 LF | 0.00 | 11.27 | 3.15 | 45.72 | 274.27 |
| 243. Caulking - butyl rubber | 1,501.12 LF | 0.00 | 4.24 | 54.04 | 1,283.76 | 7,702.55 |
| 244. R&R Continuous ridge vent - shingle-over style | 355.12 LF | 0.90 | 10.34 | 119.89 | 822.28 | 4,933.72 |
| 245. R&R Drip edge | 1,501.12 LF | 0.35 | 3.03 | 142.91 | 1,043.34 | 6,260.03 |
| 246. Ice & water barrier | 786.23 SF | 0.00 | 1.77 | 29.56 | 284.24 | 1,705.43 |
| 247. R&R Rain cap - 4" to 5" | 10.00 EA | 5.37 | 39.99 | 15.63 | 93.84 | 563.07 |
| 248. R&R Chimney flashing - average (32" x 36") | 4.00 EA | 20.13 | 458.76 | 32.04 | 389.50 | 2,337.10 |
| 249. Digital satellite system - Detach & reset | 2.00 EA | 0.00 | 41.02 | 0.00 | 16.40 | 98.44 |
| 250. Digital satellite system - alignment and calibration only | 2.00 EA | 0.00 | 123.05 | 0.00 | 49.22 | 295.32 |
| 251. R&R Skylight flashing kit - dome | 6.00 EA | 6.70 | 133.07 | 44.25 | 176.58 | 1,059.45 |
| 252. R&R Power attic vent cover only - metal | 7.00 EA | 13.43 | 98.52 | 17.01 | 160.12 | 960.78 |
| 253. R&R Gutter / downspout - aluminum - up to 5" | 498.71 LF | 0.54 | 10.21 | 214.64 | 1,115.14 | 6,690.91 |
| Totals: 5044, 5046, 5048, 5050 Bedlington Circle | | | | 2,068.56 | 16,092.12 | 96,552.90 |
| Total: Main Level | | | | 25,693.96 | 202,490.16 | 1,214,938.41 |

### General Conditions

 Premier Claims

**CONTINUED - General Conditions**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 254. Dumpster load - Approx. 40 yards, 7-8 tons of debris | 23.00 EA | 920.00 | 0.00 | 0.00 | 4,232.00 | 25,392.00 |
| 255. Telehandler/forklift (per month) - no operator | 4.00 MO | 0.00 | 2,892.00 | 0.00 | 2,313.60 | 13,881.60 |
| 256. Equipment Operator - per hour | 320.00 HR | 0.00 | 63.20 | 0.00 | 4,044.80 | 24,268.80 |
| 257. Commercial Supervision / Project Management - per hour | 640.00 HR | 0.00 | 80.19 | 0.00 | 10,264.32 | 61,585.92 |
| Totals: General Conditions | | | | 0.00 | 20,854.72 | 125,128.32 |
| Total: Roof Level | | | | 25,693.96 | 223,344.88 | 1,340,066.73 |
| Line Item Totals: 6034_HIGHLAND_E4447 | | | | 25,693.96 | 223,344.88 | 1,340,066.73 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 135,768. 94 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 128,082. 91 | Surface Area | 1,280.83 | Number of Squares | 15,796.68 | Total Perimeter Length |
| 4,098.84 | Total Ridge Length | 1,293.20 | Total Hip Length | | |

 **Premier Claims**

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 1,091,027.89 |
| Material Sales Tax | 25,693.96 |
| | |
| Subtotal | 1,116,721.85 |
| Overhead | 111,672.44 |
| Profit | 111,672.44 |
| | |
| **Replacement Cost Value** | **$1,340,066.73** |
| **Net Claim** | **$1,340,066.73** |

 **Premier Claims**

## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|---|---|
| Line Items | 111,672.44 | 111,672.44 | 25,693.96 | 0.00 | 0.00 |
| **Total** | **111,672.44** | **111,672.44** | **25,693.96** | **0.00** | **0.00** |

 **Premier Claims**

## Recap by Room

**Estimate: 6034_HIGHLAND_E4447**

**Area: Roof Level**

**Area: Main Level**

| | | |
|---|---|---|
| 5065 Highland Hills | 54,650.77 | 5.01% |
| 5035, 5037, 5039, 5041 Highland Hills | 78,199.80 | 7.17% |
| 5045, 5047, 5049, Highland, 1803 Montrose Hills | 72,053.57 | 6.60% |
| 5064, 5066, 5068 Highland Hills | 65,008.30 | 5.96% |
| 5093, 5095, 5097, 5099 Highland Hills | 81,733.57 | 7.49% |
| 6033, 6035, 6037, 6039 Highland Hills | 78,373.49 | 7.18% |
| 6034, 6036 Highland Hills | 35,930.48 | 3.29% |
| 5073, 5075, 5077, 5079, 5081 Lynmouth Circle | 88,382.60 | 8.10% |
| 5055, 5057, 5059, 5061 Highland Hills Ct | 87,101.74 | 7.98% |
| 5067, 5069, 5071 Highland Hills Court | 63,875.58 | 5.85% |
| 5073, 5075 Highland Hills Court | 45,060.67 | 4.13% |
| 5079, 5081, 5083 Highland Hills Court | 64,965.12 | 5.95% |
| 5089, 5091 Highland Hills Court | 48,499.65 | 4.45% |
| 5038, 5040 Bedlington Circle | 44,526.73 | 4.08% |
| 5044, 5046, 5048, 5050 Bedlington Circle | 78,392.22 | 7.19% |

|  | | |
|---|---|---|
| **Area Subtotal:  Main Level** | 986,754.29 | 90.44% |
| **General Conditions** | 104,273.60 | 9.56% |

|  | | |
|---|---|---|
| **Area Subtotal:  Roof Level** | 1,091,027.89 | 100.00% |

| **Subtotal of Areas** | 1,091,027.89 | 100.00% |
|---|---|---|

| **Total** | 1,091,027.89 | 100.00% |
|---|---|---|

 **Premier Claims**

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| GENERAL DEMOLITION | 140,337.89 | 10.47% |
| ELECTRICAL - SPECIAL SYSTEMS | 4,552.85 | 0.34% |
| HEAVY EQUIPMENT | 31,792.00 | 2.37% |
| LABOR ONLY | 51,321.60 | 3.83% |
| MOISTURE PROTECTION | 68,673.84 | 5.12% |
| ROOFING | 727,270.82 | 54.27% |
| SOFFIT, FASCIA, & GUTTER | 67,078.89 | 5.01% |
| O&P Items Subtotal | 1,091,027.89 | 81.42% |
| Material Sales Tax | 25,693.96 | 1.92% |
| Overhead | 111,672.44 | 8.33% |
| Profit | 111,672.44 | 8.33% |
| Total | 1,340,066.73 | 100.00% |

# EXHIBIT D



**HUGGINS** LAW FIRM

**J. Remington Huggins, Esq.**
110 Norcross Street
Roswell, GA 30075
remington@lawhuggins.com
(770) 913-6229

February 22, 2023

General Star Indemnity Company          **Sent Via email:**
P.O. Box 1255                           GStarPropertyClaims@generalstar.com
Stamford, CT 06904

Re:   Named Insured(s):   Highlands at Hidden Hills Condo Association
      Policy Number:      IAG967197C
      Claim Number:       G10067888
      Date of Loss:       March 25, 2021

To Whom it May Concern:

I have been retained by Highlands at Hidden Hills Condo Association ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why General Star Indemnity Company ("General Star") has not afforded the proper coverage under the applicable policy.

The purpose of this correspondence is to encourage General Star to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation.

I look forward to working with you to resolve this matter quickly and amicably. Should you have any questions or concerns, please reach out to me at remington@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

J. Remington Huggins, Esq.
Attorney at Law

JRH/aak

FILED 4/21/2023 3:34 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

23CV4086

**Highlands at Hidden Hills**

**Condo Association**

_____
Case No.:    _____

_____
Plaintiff

VS

**General Star Indemnity**

**Company**

_____
Defendant

# SUMMONS

## TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at
https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

J. Remington Huggins, Esq.
Huggins Law Firm, 110 Norcross Street, Roswell, GA 30075
770-913-6229

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.

This _____21st_____ day of _____April_____, 20___23___.

Honorable Debra DeBerry
Clerk of Superior Court

/s/ Selena Anderson
By_____
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the
parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will
be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the
case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To
access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed make notation on this sheet if addendum sheet is used.

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| HIGHLANDS AT HIDDEN HILLS CONDO ASSOCIATION,<br>Plaintiff,<br><br>v.<br><br>GENERAL STAR INDEMNITY COMPANY,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION FILE NO.:<br>23CV4086 |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiff, **Highlands at Hidden Hills Condo Association**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **General Star Indemnity**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

### GENERAL INSTRUCTIONS

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4. Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiff to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a.   The date the document was prepared or created;

    b.   The name and title of the author or authors of the document;

    a.   A summary of the subject matter of the document;

    b.   The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c.   The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d.   A statement of the basis on which privilege is claimed; and

    e.   The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## **DEFINITIONS**

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholder's Claim" shall refer to Claim No. G10067888, which was drafted by the Insurance Company and issued to the Policyholder for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

   a. when used to refer to a document, means to state the following:

      1. The subject of the document;

      2. The title of the document;

      3. The type of document (e.g., letter, memorandum, telegram, chart);

4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6. The present or last known location and custodian of the document.

b.  when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c.  when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d.  when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e.  "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff" and "Policyholder" mean the above-captioned Plaintiff or the Policyholder listed on IAG967197C and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10. "Property" or "Insured Property" means the property located at 6034 Highland Hills Parkway, Stone Mountain, Georgia 30088.

11. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

12. "Policy" means Policy No. IAG967197C issued by General Star Indemnity Company ** SURPLUS LINES .

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around April 24, 2021, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the Loss on or about April 24, 2021, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from April 24, 2021 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiff's Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiff all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiff; the date and manner in which You notified the Plaintiff in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiff.

7.

Have You extended coverage for any part of Plaintiff's Claim for insurance benefits, or have You denied or rejected Plaintiff's Claim? If You extended coverage for any part of Plaintiff's Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiff's Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiff's Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiff's Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiff's deductible.

8.

Do You contend the damage to the Property can be repaired? If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting losses that were in effect on April 24, 2021 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiff's cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding April 24, 2021 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiff failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiff failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiff's Complaint.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

1.

All documents responsive to Plaintiff's Interrogatories identified in Your responses to Plaintiff's Interrogatories or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of claims in the state of Georgia for the year preceding April 24, 2021 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding April 24, 2021 to present.

7.

The Operation Guides which relate to the handling of claims in the state of Georgia in effect for the year preceding April 24, 2021 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel,

contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

9.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

10.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of claims in the state of Georgia that were issued one year preceding April 24, 2021 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

12.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in

Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same);

all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

17.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

18.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

19.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this this 27th day of April, 2023.

RESPECTFULLY SUBMITTED,

THE HUGGINS LAW FIRM, LLC
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

FILED 4/21/2023 3:34 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **HIGHLANDS AT HIDDEN HILLS** | ) | |
| **CONDO ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **GENERAL STAR INDEMNITY** | ) | 23CV4086 |
| **COMPANY,** | ) | |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant General Star Indemnity Company by serving them with the ***Summons, Complaint and Exhibits***, and ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to Defendant General Star Indemnity Company at the address listed below:

**Office of Insurance Commissioner of Georgia**
**Registered Agent for Defendant General Star Indemnity Company**
**Two Martin Luther King, Jr. Drive**
**West Tower, Suite 704**
**Atlanta, GA 30334**

**AND**

**Corporate Secretary, Attention: Legal Department**
**Registered Agent for General Star Indemnity Company**
**120 Long Ridge Road, Stamford, CT 06902**

*[Signatures contained on next page.]*

Respectfully submitted, this 21st day of April, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

FILED 4/21/2023 3:34 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **HIGHLANDS AT HIDDEN HILLS** | ) | |
| **CONDO ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **GENERAL STAR INDEMNITY** | ) | 23CV4086 |
| **COMPANY,** | ) | |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant General Star Indemnity Company by serving them with the ***Summons, Complaint and Exhibits***, and ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to Defendant General Star Indemnity Company at the address listed below:

**Office of Insurance Commissioner of Georgia**
**Registered Agent for Defendant General Star Indemnity Company**
**Two Martin Luther King, Jr. Drive**
**West Tower, Suite 704**
**Atlanta, GA 30334**

**AND**

**Corporate Secretary, Attention: Legal Department**
**Registered Agent for General Star Indemnity Company**
**120 Long Ridge Road, Stamford, CT 06902**

*[Signatures contained on next page.]*

Respectfully submitted, this 21st day of April, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

FILED 5/1/2023 10:18 AM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

HIGHLANDS AT HIDDEN HILLS )
CONDO ASSOCIATION, )
    Plaintiff, )
     )
     )
v. )
     )
GENERAL STAR INDEMNITY )
COMPANY, )
a foreign corporation, )
     )
    Defendant. )

**CIVIL ACTION FILE NO.:**
**23CV4086**

### AFFIDAVIT OF SERVICE

Personally appeared before the undersigned officer duly authorized to administer oaths, Vincent Vanasco , who after first being duly sworn, deposes as follows:

My name is VINCENT VANASCO . I am over the age of eighteen (18) and I am a citizen of the United States. I am not related to or employed by any party or attorney in this lawsuit.

I hereby certify that on APRIL 28, 2023 , at 10:40 A.M., I delivered a copy of the Summons, Complaint & exhibits and Plaintiff's Interrogatories & Requests for Production of Documents to Defendant's Registered Agent Corporate Secretary, Attention: Legal Department located at 120 Long Ridge Road, Stamford, CT 06902.

AFFIANT SAYETH NOT FURTHER this the 28th day of APRIL , 2023.

Process Server VINCENT J VANASCO

Sworn to and subscribed before me
this 28th day of APRIL , 2023

Notary Public
My Commission Expires:

BRIANA JADE GIVENS
NOTARY PUBLIC
My Commission Expires May 31, 2026

TD