IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **CHRISTINA NIELSEN,** | ) | |
| | ) | |
| *Plaintiff,* | ) | **Civil Action File No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CROSSCOUNTRY MORTGAGE,** | ) | |
| **LLC, and STEVEN BOCCA,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Christina Nielsen ("Plaintiff") files this Complaint against Defendant CrossCountry Mortgage, LLC ("CCM") and Steven Bocca ("Mr. Bocca" or collectively "Defendants") in his individual and official capacity as an agent of CCM. Plaintiff respectfully shows this Court as follows:

## INTRODUCTION

1.      This action is for sexual harassment and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"), and related state-law claims. Plaintiff seeks declaratory and injunctive relief,

back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

2.     Plaintiff's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3.     Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia for assault, battery, negligent supervision, and negligent retention.

4.     Venue is appropriate in this Court as upon information and belief the events complained of herein occurred within the geographic boundaries of the U.S. District Court for the Northern District of Georgia and upon information and belief all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

5.     Plaintiff is a resident of the State of Georgia.

6.     CCM is a for-profit company registered to conduct business in the state of Georgia.

7.     CCM transacts business in the Northern District of Georgia.

8.      CCM is subject to this Court's jurisdiction. Defendant may be served through its registered agent if service of process is not waived:

Registered Agent Name:  **C T Corporation System**
Physical Address:  **289 S Culver St, Lawrenceville, GA, 30046-4805, USA**
County:  **Gwinnett**

9.      Mr. Bocca is a resident of GA.

10.     Mr. Bocca may be served at the CCM office that he manages, located at 925 North Point Pkwy #150, Alpharetta, GA 30005

## ADMINISTRATIVE PROCEEDINGS

11.     On May 20, 2022, Plaintiff filed a timely charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC"). A true and accurate copy of the Charge is attached hereto as Exhibit "A" and is incorporated herein.

12.     On February 24, 2023, Plaintiff received a notice of right to sue from the EEOC. A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit "B" and is incorporated herein.

13.     Plaintiff has exhausted her administrative remedies prerequisite to the filing this suit pursuant to Title VII.

14.     This lawsuit has been filed within 90 days of Plaintiff's receipt of her notice of right to sue.

## STATEMENT OF FACTS

15.     CCM is a mortgage lender conducting business throughout the United States that offers a range of mortgage loan services and products.

16.     During all time relevant to this lawsuit, CCM employed more than fifteen (15) employees for each working day during each of twenty (20) or more calendar weeks during Plaintiff's employment.

17.     CCM is subject to the anti-discrimination and anti-retaliation provisions of Title VII.

18.     Plaintiff is female.

19.     Plaintiff was an employee of CCM at all times material to this Complaint.

20.     Plaintiff began employment with CCM on or about July 28, 2018 as a loan processor.

21.     Prior to working for CCM Plaintiff had been in the Mortgage Industry for approximately 15+ years.

22.     Plaintiff was assigned to CCM's Alpharetta, Georgia branch under branch manager Mr. Bocca.

23.     In December 2020, Plaintiff began managing processing under Mr. Bocca.

24.    At that time, Plaintiff began to have more daily interaction with Mr. Bocca.

25.    Plaintiff began to notice that Mr. Bocca's leadership style was to intimidate, manipulate, and verbally abuse, and he commonly sexually harassed his female staff.

26.    For example, in December of 2021, Plaintiff was Christmas shopping and left her phone in the car. When she returned to the car, she noticed that she had a missed call and text message from Mr. Bocca.

27.    When Plaintiff returned Mr. Bocca's call, he began to scream at her, and it clearly seemed to Plaintiff that Mr. Bocca was intoxicated.

28.    Plaintiff was shocked by Mr. Bocca's tone and explained that her phone had been in the car. She did not know what else to say and remained silent.

29.    Mr. Bocca asked if Plaintiff had nothing to say.

30.    Plaintiff said she was caught off guard and not sure what else to say.

31.    Mr. Bocca then yelled, "You know what you say. You say, 'Yes, Sir.'"

32.    Plaintiff hung up and began to cry and went home instead of continuing her plans with her friend because she was so distraught.

33.    Plaintiff further recalls that there were lots of occasions where Mr. Bocca made sexually inappropriate comments to her.

34.    For example, on several occasions Mr. Bocca told Plaintiff that he wanted to f*** her.

35.    On yet another occasion, Mr. Bocca said that he "could not wait to f*** Plaintiff."

36.    If Plaintiff did not respond or tried to create boundaries from his offensive sexual comments, Mr. Bocca would tell her that she just needed to "f*** him and make things all better."

37.    Mr. Bocca has repeatedly told Plaintiff that she was, "so f***ing hot."

38.    On two separate occasions, Mr. Bocca tried to put Plaintiff's hand on his penis over his pants.

39.    Plaintiff is also aware of multiple other employees or former employees who have had similar experiences with Mr. Bocca.

40.    CCM is aware of prior incidents where female employees were sexually harassed by Mr. Bocca, but despite these complaints, CCM has never disciplined him, and he remains employed with CCM.

41.    In April of 2022, Mr. Bocca demanded that Plaintiff "come over here and make out with me!"

42.    During this incident, Mr. Bocca was intoxicated, and grabbed Plaintiff's buttock, and pulled her toward him.

43.     Plaintiff was able to get away, but she was very disturbed.

44.     Plaintiff was distraught about Mr. Bocca's sexual harassment. She knew of other women employed by Defendant who had complained to CCM's Human Resources, but their complaints never resulted in punishment of Mr. Bocca, and all those women left CCM's employment.

45.     On or around Wednesday, May 18, 2022, Plaintiff met with some of her co-workers and told them that she was likely going to resign.

46.     Later that day, Plaintiff called Michelle Novak, a Senior Vice President in CCM's Human Resources department in the presence of three other co-workers. Plaintiff stated that she was looking to resign (the "Call").

47.     Further, during the Call, Plaintiff made a complaint of sexual harassment against Mr. Bocca.

48.     During the Call, Plaintiff told Ms. Novak that she was fearful of retaliation, as she was aware of at other female employees who had been sexually harassed by Mr. Bocca and that at least three (3) of them had made sexual harassment complaints against Mr. Bocca and nothing happened. (See Plaintiff's email to Ms. Novack memorializing this call attached as "Exhibit C.")

49.     After the Call, Ms. Novak sent Plaintiff home for the remainder of the week.

50.     During the Call, Plaintiff did not resign.

51.     Plaintiff did mention that she was contemplating resigning because she feared that CCM would not act against Mr. Bocca, but she did not resign.

52.     During the Call, Plaintiff was told that Ms. Novak would "explain [Plaintiff's] options moving forward within CCM as a remote employee."  (See Exhibit C)

53.     During the Call, Plaintiff was told that Ms. Novak was going to email her a recap of her sexual harassment complaint so that Defendant could start an investigation. (See Exhibit C)

54.     As of Friday, May 20, Plaintiff had not heard from Ms. Novak or CCM, so she sent an email to Ms. Novak (attached as Exhibit C).

55.     In Plaintiff's email to Ms. Novak, she identified six (6) other females who had been victims of sexual harassment by Mr. Bocca. These six females were specifically identified by their first and last names (See Exhibit C).

56.     Also on May 20, 2022, Plaintiff filed a charge of sexual harassment with the EEOC. (See Exhibit A)

57.     On May 21, 2022, Ms. Novak responded to Plaintiff's email. (See "Exhibit D").

58.     Ms. Novak acknowledged that Plaintiff made a complaint of sexual harassment, that CCM would be investigating her complaint, that she would call Plaintiff on Monday, May 23 to follow up (See Exhibit D).

59.     In Ms. Novak's email to Plaintiff, she did not contend that Plaintiff resigned. (See Exhibit D).

60.     Upon information and belief, CCM never conducted any investigation into Mr. Bocca systemic sexual harassment, Plaintiff's allegations of sexual harassment, nor were any of the six other women questioned.

61.     After filing her EEOC charge, Plaintiff requested information from CCM regarding how she could continue working for CCM remotely, but CCM failed to respond.

62.     After filing her EEOC charge, CCM cut off Plaintiff's access to her CCM email and ended her ability to work remotely.

63.     Plaintiff attempted to communicate with CCM via her attorney regarding her return to work, if she was terminated, etc., but CCM failed to respond.

64.     On July 5, 2022, Plaintiff was informed that CCM had accepted her termination during the Call on May 18, and that her last day of pay would be July 1, 2022. (See Plaintiff's Separation Notice from CCM marked as "Exhibit E")

65.     CCM had no basis to fire Plaintiff except for retaliation from her complaint of sexual harassment.

## COUNT I
## Sexual Harassment in Violation of Title VII

66.     Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

67.     As a woman, Plaintiff is a member of a protected group.

68.     As detailed above, throughout her employment with CCM, Plaintiff was subjected to sexual harassment and a hostile work environment by CCM's employee and manager, Mr. Bocca.

69.     All the above conduct by Mr. Bocca was unwelcome, offensive, and intimidating to Plaintiff as well as open and obvious in the workplace.

70.     Plaintiff complained that the sexually harassing conduct was unwelcome.

71.     At all times relevant to this action, CCM knew from past complaints or should have known of the sexual harassment endured by Plaintiff as well as the existence of a sexually harassing work environment, and they failed to meaningfully remedy the workplace environment to protect Plaintiff.

72.     CCM willfully and wantonly disregarded Plaintiff's rights. Additionally, CCM's discrimination and retaliation against Plaintiff was undertaken

in bad faith and constitutes unlawful, intentional gender discrimination in violation of Title VII.

73.     As a result of CCM's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities. Plaintiff seeks all damages available.

74.     Plaintiff seeks all remedies available by law or equity.

## COUNT II
### Retaliation in Violation of Title VII

75.     Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

76.     Plaintiff engaged in protected activities protected under Title VII by making complaints of sexual harassment.

77.     As a result of her complaints of sexual harassment, Plaintiff suffered adverse employment actions including but not limited to (1) being sent home without pay and (2) being terminated.

78.     As a direct and proximate result of CCM's unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation because she exercised her rights under Title VII.

79.     Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith.

80.     As a result, Plaintiff is entitled to both equitable and monetary relief in all forms provided by law.

81.     Plaintiff seeks all remedies available to her by law or equity.

## COUNT III
## Assault and Battery

78.      Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

79.     Mr. Bocca touched Plaintiff without her consent.

80.     Mr. Bocca threatened multiple times to touch Plaintiff without her consent.

81.      Mr. Bocca's behavior as detailed above constitutes civil assault and battery.

82.     Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

## COUNTS IV AND V
## Negligent Retention and Negligent Supervision

83.    Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

84.    At all times material to this Complaint, CCM owed a legal duty of care toward their employees to exercise reasonable care and prudence in the hiring, supervision, and retention of its employees.

85.    By and through the conduct, actions, and malfeasance cited above, CCM breached the above-described legal duties of care that it owed to Plaintiff.

86.    CCM knew that Mr. Bocca was subjecting employees to sexually harassing comments and touchings without their consent.

87.    CCM failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment.

88.    Because of CCM's negligent supervision and retention, CCM ratified Mr. Bocca's behavior.

89.    Because of CCM's negligent supervision and retention, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

**WHEREFORE**, Plaintiff demands an arbitration and the following relief:

(a)    cause process to issue;

(b)     issue a declaratory judgment that CCM's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under Title VII and state law;

(c)     grant Plaintiff a permanent injunction enjoining CCM, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under Title VII or because of their participation in this lawsuit;

(d)     grant Plaintiff judgment in her favor and against each Defendant under all Counts of this Complaint;

(e)     order Defendants to make the Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(f)     grant to Plaintiff compensatory and punitive damages for Defendants' willful violations of Title VII;

(g)     grant to Plaintiff reasonable attorney's fees together with any and all other costs associated with this action as provided by Title VII and state law violations; and

(h)     grant Plaintiff all other damages including nominal damages, available by law.

(i)     grant such additional relief as this court deems proper and just.

Respectfully submitted on this 25th day of May, 2023.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
Attorney for Plaintiff


THE MIXON LAW FIRM
3344 Peachtree Street, Suite 800
Atlanta, Georgia 30326
Phone: 770-955-0100
steve@mixon-law.com