## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **SOLIANT HEALTH, LLC** | ) | **CASE No:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **AEQUOR HEALTHCARE** | ) | **DEMAND FOR JURY TRIAL** |
| **SERVICES, LLC** | ) | |
| | ) | |
| | ) | |
| | ) | |

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## AND REQUEST FOR JURY TRIAL

Plaintiff, Soliant Health, LLC ("Soliant"), by and through undersigned counsel, brings this suit against Defendant, Aequor Healthcare Services, LLC ("Aequor"), and alleges as follows:

## PARTIES

1.     Soliant is a Delaware limited liability company, with its principal place of business and headquarters in Georgia. Soliant conducts business nationwide.

2.     Aequor is listed as a limited liability company under the laws of New Jersey, with its principal place of business for nursing operations located at 377 Hoes Lane, 3rd Floor, Piscataway, New Jersey. Aequor conducts business nationwide.

<u>JURISDICTION AND VENUE</u>

3.     Soliant asserts claims against Aequor under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832-39 ("DTSA").

4.     Thus, this Court has federal question jurisdiction under 28 U.S.C § 1331.

5.     This Court can exercise supplemental jurisdiction over Soliant's state law claims against Aequor under 28 U.S.C. § 1367 because the state law claims are so related to the present action that they form part of the same case or controversy.

6.     Venue in this Court is proper under 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claims occurred or is occurring in this district.

7.     Aequor's actions harmed Soliant at its headquarters in Georgia.

8.     Aequor markets itself as a global company and conducts systematic and continuous business in Georgia.

## SOLIANT'S BUSINESS AND ITS CANDIDATE DATABASE

9.   There is an overall shortage of both healthcare and education professionals in the United States.

10.   As a healthcare and education staffing company, Soliant helps fill the healthcare employment gap by pairing medical staff with various healthcare providers and facilities throughout the United States.

11.   Soliant is one of the nation's largest healthcare staffing companies.

12.   In particular, Soliant specializes in "Travel Healthcare."

13.   When healthcare providers have staff shortages, the healthcare providers may retain "travel" healthcare professionals, such as nurses, for a period of time to alleviate the staffing shortage. A "travel" position allows the healthcare provider flexibility to travel to different locations across the county while continuing to earn compensation working in his or her chosen healthcare profession.

14.   Soliant was one of the pioneers of the travel healthcare industry.

15.   Soliant was also a pioneer in the education sector. Now one of the largest staffing companies in the space, Soliant helps to fill the employment gap there by pairing qualified educational professionals with schools around the county.

16.    Both the healthcare and educational staffing industries operate based on need, are fast-paced, and are highly competitive.

17.    Since its founding, Soliant has maintained an exceptional reputation among both professionals and facilities for providing immediate and reliable services placing highly skilled staff at competitive rates.

18.    Soliant's success depends in large part on developing and combining knowledge of (a) the needs of organizations for temporary staff and (b) the availability, qualifications, and identity of candidates to fill those roles.

19.    Soliant has expended considerable resources to develop this business reputation and customer goodwill.

20.    One of Soliant's most considerable resources is its Candidate Database, which it first created 31 years ago.

21.    The Candidate Database is a confidential compilation of data containing detailed information of prospective medical staff and teaching candidates.  The Candidate Database contains information for hundreds of thousands of potential staff candidates who could potentially take a role as a healthcare professional or teacher in various healthcare facilities or schools.

22.     The information in the Candidate Database is exhaustive and includes,

among other information:

- First and Last Name
- Primary Phone Number
- Work Phone Number
- Mobile Phone Number
- Email Address
- Skills Status
- Education
- Distance Willing to Travel
- Desired Location
- Certifications
- Credentials
- Work Authorization (Country Candidate Is Allowed to Work)
- Employment Preference
- Date Available to Work
- Gender
- Current Title

23.     The following is a sample of the information from the Candidate

Database:

| id | Name | Primary Phone | Gender | Resource | Current Title | Date Added | Department | Skills | Skills Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| id | name | phone | gender | owner | occupation | dateAdded | customText4 | primarySkills | primarySkillsCou | status |
| Status | Employment Preference | Date Available | Last Note | Primary Email | Candidate Categor | Candidate Catego | Interviews | Permanent Addres: | Address2 | |
| status | employmentPreference | dateAvailable | dateLastComment | email | categories | categoriesCount | interviews | address1 | address2 | |
| Permanent City | Permanent State | ACA Employee Type | ACA Locked Status | ACA Measurement Per | Additional Imported | Additional Skills (re | All Job Respons | Authorized to work i | Available Until | Birth Day |
| city | state | customText2 | customText17 | customText3 | customTextBlock2 | skillSet | customTextBloc | workAuthorized | dateAvailableEn | customInt1 |
| Birth Month | Candidate Name | Credentials | Certifications | Current Company | Last Source Date | Secondary Email | Employee Type | First Name | General Candidate Comments | |
| customText12 | namePrefix | certificationList | certifications | companyName | customDate10 | email2 | employeeType | firstName | comments | |
| Last Name | Mobile Phone | Nickname | Other Phone | Prism Employee id | Candidate Source | Referred By | Referred By (Oth | Candidate Name | Date Last Modifi | Desired Location - State/Region |
| lastName | mobile | nickName | phone2 | customText39 | source | referredByPerson | referredBy | nameSuffix | dateLastModifie | desiredLocations |
| Distance Willing to Travel (mile: | Education | Last Candidate Source | Last Job Response | Last Placement End D: | Last Placement St: | Marketing Campai; | Master ID | Middle Name | Opted Out | |
| travelLimit | educations | customText27 | customText8 | customDate2 | customText15 | customText28 | customText26 | middleName | massMailOptOut | |
| Payroll Client Start Date | Payroll Status | Social Media | Specialty / Disciplin | Specialty / Discipline C | Web Responses | Willing to Relocate | Work History | Work Phone | Years Experience | |
| payrollClientStartDate | payrollStatus | companyURL | specialties | specialtiesCount | webResponses | willRelocate | workHistories | workPhone | experience | |

24.     The compilation of information is trade secret. It took Soliant several decades, thousands of hours of effort, and millions of dollars in financial investment to build the Candidate Database.

25.     The Candidate Database cannot be easily replicated.

26.     The Candidate Database is not available for general public access.

27.     To maintain an edge over Soliant's competitors, Soliant must continuously expend resources to recruit candidates and continuously update potential candidates' contact and skill-set information in the Candidate Database.

28.     The Candidate Database is integral to Soliant's business operations because when a healthcare provider or school retains Soliant to assist with a staff shortage, Soliant uses the information in the Candidate Database to contact potential candidates to fill the shortage. The compilation of information allows Soliant to quickly identify ideal candidates and pair them with open positions, giving Soliant a competitive advantage over individuals or companies without the same data, knowledge, and ability to rapidly utilize the same.

29.     The Candidate Database undeniably constitutes one of Soliant's most valuable assets.

30.     The Candidate Database provides a competitive advantage in the healthcare and education staffing industries. Each healthcare or education staffing company keeps its database confidential (if it has one).  It would be devastating to Soliant's business if the Candidate Database were to be disclosed to a competitor.

31.     If a competitor were able to gain access to the Candidate Database, such a competitor would immediately gain a significant advantage over Soliant and other industry leaders. The competitor would reap the benefit of immediately having an extensive network of carefully selected, highly skilled candidates at its fingertips,

without having to expend the significant resources Soliant spent over years to collect, catalogue, and verify this information.

32.     Indeed, Soliant has taken reasonable measures to protect the confidentiality of the Candidate Database such as keeping it stored on a secure, password protected environment that requires multi-factor authentication. Soliant also requires its employees to sign employment agreements, which reasonably restrict such employees both during and after termination of their employment from, among other things, using, disclosing and/or keeping Soliant's confidential information, which includes the Candidate Database.

33.     In addition to the Candidate Database, Soliant maintains databases with pricing and pay data ("Pricing Databases"). The Pricing Databases are critical to Soliant's ability to maintain a competitive advantage. The following is a sample of the information from the Pricing Databases:



34.     If a competitor obtained the Pricing Databases, it could steal Soliant's business by paying a particular candidate (i.e., a traveling nurse) more than Soliant pays them, and charge a particular client (i.e., medical facility or provider), less than what Soliant charges. For example, if a competitor knows that Soliant charged a client $1,000 for the employment of a particular candidate, then a competitor, armed with this information, could simply charge $950 to win the business. And the same competitor, armed with the same information, could pay a particular candidate $1 more per hour than Soliant paid the same candidate. Over time, the competitor would be able to eviscerate Soliant's market share through improper means.

<u>AEQUOR</u>

35.     Aequor is a healthcare staffing firm that provides workforce staffing services in the healthcare industry. Aequor markets itself as one of the fastest growing travel nursing agencies.

36.     Aequor provides services that are similar to Soliant's and markets itself in some of the same locations.

37.     Aequor, a smaller and younger company, competes with Soliant to recruit staffing candidates.

38.    It is not uncommon for a healthcare provider to ask both Soliant and Aequor to provide medical staff for a facility. Soliant and Aequor then compete for that business by finding candidates as quickly as possible.

39.    Soliant and Aequor coexisted as competitors in the healthcare staffing industry for approximately twenty years.

40.     However, in or about 2021, Soliant became aware of Aequor's campaign to actively solicit Soliant's employees, including those under employment agreements containing confidentiality restrictions and restrictive covenants, for the purpose of gaining an unfair competitive advantage over Soliant by unlawfully obtaining Soliant's confidential and trade secret information.

41.    Aequor induced several Soliant employees under employment agreements containing confidentiality restrictions and restrictive covenants to leave Soliant and join Aequor to perform roles at Aequor the same or similar to that performed at Soliant.

42.    Aequor has induced at least eight Soliant employees to leave Soliant and join Aequor. The former employees Soliant knows to have subsequently joined Aequor include Thomas Yates, Serina Fitzgerald, Kayla Lowman, Gennaro Ruggiero, Robert Lutz, Kay Merry, Andrae Cook, and Rachelle Smith Brown.

43.     Aequor, which recently entered the education staffing industry, has demonstrated a particular interest in taking Soliant's education recruiters. At least four of the individuals named above worked for Soliant as educational recruiters.

44.     For example, on Thursday, May 11, 2023, Soliant learned through the below posting that Aequor had hired Rachelle Smith Brown as an education recruiter:



45.     Smith Brown resigned from her position at Soliant as an education recruiter just weeks prior.

46.     Aequor has used Soliant's confidential and trade secret information to solicit current or prospective Soliant candidates and other clients, including inducing Soliant's clients not to enter into or to end their business relationship with Soliant.

47.     Aequor has been on notice since at least July 2021 of the substance of Soliant's employment agreement with its employees, including the employees' post-contractual obligations, as well as Soliant's intent to enforce the same.

48.     By letter dated July 26, 2021, Soliant informed Aequor that Thomas Yates, a then-new employee of Aequor hired to perform a role similar to that which he performed with Soliant, remained under certain post-employment contractual obligations with Soliant. In particular, Soliant informed Aequor of Yates' agreement to refrain from (1) recruiting Soliant employees to leave Soliant; (2) soliciting or contacting Soliant clients; (3) providing competing professional services within a defined area; and (4) using Soliant's confidential trade secret information for unauthorized purposes. Soliant attached a copy of Yates' employment agreement. A copy of the letter from Soliant to Aequor is attached at **Exhibit "A."**

49.    Aequor's executive vice president acknowledged receipt of the letter and indicated Aequor and Yates understood Yates' post-employment obligations and would comply with the same.

50.    Upon information and belief, Yates has not complied with his post-employment obligations and Aequor has aided Yates in violating his post-employment obligations. Further, upon information and belief, Aequor has continued its unfair campaign of obtaining confidential and trade secret Soliant information from former Soliant employees and inducing former Soliant employees to otherwise breach their post-employment covenants.

## LUTZ ACCESSES AND DELETES SOLIANT DATA AND JOINS AEQUOR

51.    Robert Lutz is one of the latest Soliant employees to resign and subsequently join Aequor.

52.    On or about September 2012, Soliant hired Lutz as an employee.

53.    As part of his employment, Lutz executed an employment agreement with Soliant.  Lutz's employment agreement is attached as **Exhibit "B."**

54.    The employment agreement contained a confidentiality clause that described Confidential Information as including, but not limited to, "trade secrets,

know how, research and development, software, systems, *databases* . . . information regarding the procedures, sales, marketing, . . . clients, personnel, compensation, recruiting . . . ."

55.     The employment agreement provides, in part, the following:

5.      Colleague recognizes that all of the items which contain any Confidential Information are the Companies' property exclusively, including those items which Colleague may have developed, or contributed to developing, or utilized during Colleague's employment, including, but not limited to, social networking accounts. Furthermore, Colleague recognizes that all materials, identification cards, keys, computer software and hardware, manuals, data bases, client and consultant lists, discs, tapes, memory devices, computer security devices, pagers and phones and equipment Company provides for Colleague are the property of Company exclusively. All items described in this paragraph are collectively referred to as "Company's Property". Colleague shall refrain from taking or reproducing, or allowing to be taken or reproduced, any Company Property except as necessary in furtherance of Colleague's duties under this Agreement.

56.     The confidentiality provision of Lutz's employment agreement is the same or similar to the employment agreements Soliant has entered into with its employees over the course of the past several years.

57.     Lutz eventually became a division director at Soliant and was considered a member of leadership with high-level access to Soliant's proprietary, confidential and trade secret information, such as customer lists, nurse rates, business plans, commissions, the Candidate Database, and the Pricing Databases.

58.     On or about November 22, 2022, Lutz resigned from Soliant. Pursuant to his employment agreement, Lutz was required to return all of Soliant's confidential information.

59.     To remind Lutz of his post-employment contractual obligations, Soliant's attorney sent Lutz a letter on February 28, 2023 and sent a copy to Aequor. A copy of the letter is attached at **Exhibit "C."**

60.     After Lutz joined Aequor, Soliant conducted a forensic investigation of Lutz's access, usage and deletion of data on Soliant's computer and network systems.

61.     The forensic investigation is ongoing, but Soliant confirmed that Lutz accessed Soliant's proprietary, confidential and trade secret information, including the Candidate Database and the Pricing Database, shortly before tendering his resignation from Soliant.

62.     Soliant's investigation revealed that just prior to his resignation from Soliant, for no business reason whatsoever, Lutz destroyed Soliant's property by deleting years of emails from his inbox, sent box, and deleted box (otherwise known as double-deleting data). The deletions were well beyond the scope of normal activity in the course of business at Soliant.  Lutz's activities are indicative of an employee on the verge of resigning and sanitizing communications to destroy evidence of nefarious conduct.

<u>SOLIANT EXECUTIVE RECEIVES</u>

<u>SOLICITATION TEXT MESSAGE FROM AEQUOR</u>

63.     Within months after Aequor hired Lutz, on April 27, 2023, a Soliant employee, Ron Washburn, received the following text message from McKenzey Harvey at Aequor:



64.     Washburn received the above-referenced text at his work number, which is the number listed in the Candidate Database.

65.     On May 24, 2023, Washburn received the following text to his work number from McKenzey Harvey at Aequor:

McKenzey.Harvey@aequor.c
om

**Thursday April 27, 2023 6:22 p.m.**

This conversation was opened at 6:22
p.m.

May 24, 2023

Hi! Are you looking for your
spring/summertime travel
nursing assignment? We
have jobs nationwide! Please
let me know what you are
looking for.  :)

McKenzey with Aequor
McKenzey.Harvey@aequor.c
om

Today 10:53 p.m.

66.  A search of LinkedIn confirms McKenzey Harvey works at Aequor as a Travel Nurse Recruiter.

67.  Ron Washburn is the Executive Vice President at Soliant. He is not a medical professional and has never been a nurse, and has not otherwise ever held himself out as a candidate to serve in a traveling nurse assignment for Soliant or any other staffing organization.

68.  However, Washburn was added to Soliant's Candidate Database for purposes of testing the Candidate Database for quality control.

69.    The Candidate Database contains Washburn's name, contact information, and categorizes him as a nurse.

70.    Because Washburn is not a nurse, he does not publicly hold himself out as a nurse. Soliant is unaware of any public information that suggests Washburn is a nurse. Indeed, a simple google search of just Washburn's name reveals his position as Executive Vice President of Soliant.

71.    Only a select few people at Soliant were aware that Washburn's name had been added to the Candidate Database for testing purposes.

72.    Washburn's addition to the Candidate Database was completed over one year ago, well prior to Lutz's resignation.

73.    The only plausible reason Aequor sent Washburn a recruiting text message is because it improperly obtained the Candidate Database, trusted its accuracy, did not expend the resources and labor to verify all the data, and started sending blast text messages to individuals listed in the database.

74.    The fact that Aequor sent Washburn two recruiting text messages under the mistaken belief that he was a nurse is evidence that Aequor has misappropriated the Candidate Database and is using it to contact individuals identified in the database.

<u>CONDITIONS PRECEDENT</u>

75.     All conditions precedent to the commencement or maintenance of the actions alleged have occurred or the occurrence of such has been waived by Aequor.

<u>COUNT I</u>

**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C §§ 1831-39 ("DTSA")**

76.     Soliant incorporates the allegations of paragraphs 1 – 75 as if set forth in full herein.

77.     This is an action for misappropriation of trade secrets in violation of the DTSA.

78.     Soliant possesses trade secrets and other confidential information and, as more particularly described herein, has taken steps to protect the secrecy of that information.

79.     Specifically, the Candidate and Pricing Databases are Soliant trade secrets that are related to Soliant's services that are used in, or intended for use in, interstate commerce.

80.     Soliant derives independent economic value from the Candidate and Pricing Databases by virtue of their secrecy.   Soliant maintained reasonable measures to ensure the secrecy of this information.

81.    As a former Soliant high-level employee, Lutz was privy to various trade secrets that belong to Soliant, including the Candidate and Pricing Databases.

82.    Because of his employment agreement, Lutz had a contractual duty and obligation to maintain the secrecy of the Candidate and Pricing Databases. Lutz was aware of his personal obligation to keep the Candidate and Pricing Databases secret even after no longer being employed at Soliant. Aequor was also aware that Lutz had an obligation to keep the Candidate and Pricing Databases confidential.

83.    Aequor has misappropriated the Candidate and Pricing Databases via Lutz, or via another former Soliant employee under post-employment obligations of confidentiality to Soliant, and has used it for economic benefit to the detriment of Soliant.

84.    Specifically, Aequor acquired and used the Candidate and Pricing Databases without consent and Aequor knew or had reason to know that the Candidate and Pricing Databases are trade secrets that (1) were acquired by improper means, (2) were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets, or (3) were derived from or through a person who owed a duty to Soliant to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

85.     If not enjoined, Aequor will continue to misappropriate and use the Candidate and Pricing Databases for its benefit and to Soliant's detriment.

86.     As a result, Soliant has suffered the loss of customer goodwill and other intangible benefits, and will continue to do so in ways that are incapable of precise calculation, and for which monetary damages alone would be inadequate. Soliant's competitive advantage in the marketplace is critically dependent on Soliant's ability to maintain the secrecy of its confidential, proprietary, and sensitive business information.

87.     Soliant has a substantial likelihood of success on the merits because of Aequor's blatant, willful, and malicious misappropriation of trade secrets through improper means.

88.     There is no adequate remedy at law to compensate Soliant for the harm that it will incur as a result of Aequor's violations of the DTSA.

89.     An injunction will not disserve the public interest, and Soliant is entitled to injunctive relief against Aequor and all those acting in concert with it, including the former Soliant employees who are now employed at Aequor.

90.     This misappropriation of trade secrets by Aequor has also caused damages to Soliant in the form of out-of-pocket costs, diminished revenue, lost

profits, lost business opportunities, reputational harm, and other damages. In addition, Soliant is entitled to disgorgement of Aequor's ill-gotten profits as a result of the misappropriation and use of Soliant's trade secrets.

## COUNT II

### Misappropriation of Trade Secrets Under the Georgia Trade Secrets Act, O.C.G.A § 10-1-760 *et seq.* ("GTSA")

91.     Soliant incorporates the allegations of paragraphs 1 – 75 as if set forth in full herein.

92.     This is an action for misappropriation of trade secrets in violation of the GTSA.

93.     The Candidate and Pricing Databases are a trade secret as defined under applicable law.

94.     Soliant maintained reasonable measures to ensure the secrecy of the Candidate and Pricing Databases.

95.     Soliant derives independent economic value from the Candidate and Pricing Databases by virtue of its secrecy.

96.     As a former Soliant, high-level employee, Lutz was privy to various trade secrets that belong to Soliant, including the Candidate and Pricing Databases.

97. Because of his employment agreement, Lutz had a contractual duty and obligation to maintain the secrecy of the Candidate and Pricing Databases. Lutz was aware of his personal obligation to keep the Candidate and Pricing Databases secret even after no longer being employed at Soliant. Aequor was also aware that Lutz had an obligation to keep the Candidate and Pricing Databases confidential.

98. Aequor has misappropriated the Candidate and Pricing Databases via Lutz, or via another former Soliant employee under post-employment obligations of confidentiality to Soliant, and Aequor has used it for economic benefit to the detriment of Soliant.

99. Specifically, Aequor acquired and used the Candidate and Pricing Databases without consent and Aequor knew or had reason to know that the Candidate and Pricing Databases were a trade secret that (1) were acquired by improper means, (2) were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets, or (3) were derived from or through a person who owed a duty to Soliant to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

100. If not enjoined, Aequor will continue to misappropriate and use the Candidate and Pricing Databases for its benefit and to Soliant's detriment.

101.   As a result, Soliant has suffered the loss of customer goodwill and other intangible benefits, and will continue to do so in ways that are incapable of precise calculation, and for which monetary damages alone would be inadequate.  Soliant's competitive advantage in the marketplace is critically dependent on Soliant's ability to maintain the secrecy of its confidential, proprietary, and sensitive business information.

102.   Soliant has a substantial likelihood of success on the merits because of Aequor's blatant, willful, and malicious misappropriation of trade secrets through improper means.

103.   There is no adequate remedy at law to compensate Soliant for the harm that it will incur as a result of Aequor's violations of the GTSA.

104.   An injunction will not disserve the public interest, and Soliant is entitled to injunctive relief against Aequor and all those acting in concert with it, including the former Soliant employees who are now employed at Aequor.

105.   This misappropriation of trade secrets by Aequor has also caused damages to Soliant in the form of out-of-pocket costs, diminished revenue, lost profits, lost business opportunities, reputational harm, and other damages.  In

addition, Soliant is entitled to disgorgement of Aequor's ill-gotten profits as a result of the theft and use of Soliant's trade secrets.

106.   Aequor's misappropriation of Soliant's confidential, proprietary, and sensitive business information was knowing, intentional, willful, malicious, fraudulent, and oppressive.  Soliant is entitled to an award of exemplary damages and reasonable attorneys' fees and costs as allowed under the GTSA.

<u>COUNT III</u>

**Tortious Interference with Business and Contract Relations
Under Georgia Law**

107.   Soliant incorporates the allegations of paragraphs 1 – 75 as if set forth in full herein.

108.   Aequor interfered with Soliant's contractual relationships between it and its former employees and, upon information and belief, Aequor induced Soliant's clients not to enter into or to end their business relationships with Soliant. Aequor made the unlawful solicitations to Soliant's current and/or prospective clients by using information obtained from former Soliant employees in violation of the former Soliant employees' post-contractual obligations to Soliant and/or by using former Soliant employees to contact Soliant clients in violation of the former Soliant employees' post-contractual obligations to Soliant.

109.   Aequor acted improperly and without privilege to engage in its wrongful conduct when it induced Soliant's clients not to enter into or to end their business relationship with Soliant and when it induced former Soliant employees to breach their obligations to Soliant.

110.   By inducing Soliant's clients not to enter into or to end their business relationships with Soliant and by inducing former Soliant employees to breach their obligations to Soliant, Aequor acted purposely and with malice and with the intent to harm Soliant.

111.   But for Aequor's interference, Soliant had a reasonable probability of continuing and maintaining such relationships with its clients and potential clients, including those contacted by Aequor.

112.   Aequor's wrongful conduct has caused financial injury to Soliant in the form of loss and misuse of proprietary assets, loss of profits, loss of business goodwill, loss of customers, a loss of future business opportunities, reputational harm, and other damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Soliant prays for judgment and relief against Aequor as follows:

a.  Enjoin Aequor and those persons, individuals, or entities (including employees) acting in concert therewith from using the Candidate and Pricing Databases.

b.  Order Aequor and those persons, individuals, or entities acting in concert therewith (including employees) to immediately return the Candidate and Pricing Databases to Soliant and to destroy any copies.

c.  Order Aequor and those persons, individuals, or entities acting in concert therewith (including employees) to immediately destroy any information or data that was copied, transferred or exfiltrated from the Candidate and Pricing Databases.

d.  Enter a final judgment in Soliant's favor and against Aequor for monetary damages, including, but not limited to, all amounts necessary to compensate Soliant for Aequor's wrongful conduct, including attorneys' fees.

e.  Enter a final judgment in Soliant's favor and against Aequor for punitive and/or exemplary damages for its willful and malicious conduct.

f.  Grant an award for costs and attorneys' fees as allowed under applicable law.

g.  Such other relief as the Court deems just and proper.

## FONT CERTIFICATION

The undersigned hereby certifies that the pleading was prepared in 14-point Times New Roman and the margins comply with Local Rule 5.1 (C) & (D).

This 25th day of May, 2023.

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Sasha N. Greenberg*
Sasha N. Greenberg
Georgia Bar No. 497615

1105 W. Peachtree Street NE
Suite 1000
Atlanta, Georgia 30309
404.815.3500
sgreenberg@sgrlaw.com

Jason P. Stearns *(pending pro hac vice admission)*
Florida Bar No. 59550
Robert A. Stines *(pending pro hac vice admission)*
Florida Bar No. 78447
Sarah A. Gottlieb *(pending pro hac vice admission)*
Florida Bar No. 12532

201 N. Franklin Street
Suite 3550
Tampa, Florida 33602
jstearns@sgrlaw.com
sbrust@sgrlaw.com
sgottlieb@sgrlaw.com

*Attorneys for Soliant Health, LLC*