# Exhibit B



# EMPLOYMENT AGREEMENT

This is an Employment Agreement ("Agreement") between Soliant Health, its successors and assigns (collectively referred to as "Company"), and Robert Lutz ("Colleague").

In consideration of mutual promises set forth in this Agreement, including, but not limited to, Company's employment, continued employment, promotion or reassignment of Colleague, new or additional compensation to Colleague, specialized training and access to new and different confidential information, any one or more of which Colleague acknowledges to be good and sufficient consideration, the receipt and sufficiency of which Colleague hereby acknowledges, the parties to this Agreement hereby agree to the following:

### Employment At Will

1.  Company hereby agrees to employ Colleague and Colleague hereby accepts such employment subject to the terms and conditions set forth herein. The parties acknowledge that Colleague is employed "at will." The parties agree that "at will" means that the employment relationship between the parties may be terminated by either party at any time, without prior notice, for any or no reason at all.

### Duty of Loyalty and Ethical Conduct

2.  Colleague will at all times utilize best efforts to perform the duties assigned to Colleague and shall faithfully devote all productive business time, energy and skill to performing these duties. While in Company's employ, Colleague will refrain from engaging in any other business activity, including, without limitation, providing consulting services, without Company's written consent. Colleague shall abide by Company's policies and guidelines including those regarding business ethics and conflict of interest.

### Confidential Information and Restrictive Covenants

3.  The parties agree that Confidential Information (defined below) of Company, its parents, affiliates, and subsidiaries ("Companies") is a valuable asset, and that the Companies have legitimate business interests in protecting such information (whether or not marked as "confidential"), as well as goodwill with clients, consultants and employees and/or extraordinary or specialized training. Confidential Information includes, but is not limited to, trade secrets, know how, research and development, software, systems, databases, inventions, processes, technology, designs and other intellectual property, information regarding the procedures, sales, marketing, pricing and costs, operations, training, finances, investments, profits, products, services, clients, personnel, compensation, recruiting, organization, plans, objectives and strategies, and suppliers of the Companies, client and candidate preferences, experiences, requirements, course of dealing and purchasing patterns, as well as the name, address, contact persons or requirements of any existing or prospective client, consultant or employee including such information contained in Colleague's social networking accounts, concerning the past, current or future business activities and operations of the Companies and any other information designated as confidential in Company's applicable policies (collectively referred to as "Confidential Information"). Confidential Information also includes all information with respect to the products, services, business or affairs of the Companies' clients which is in any way acquired during or by reason of Colleague's association with such clients during Colleague's employment. Confidential Information also includes personal health information ("PHI") and personally identifiable information ("PII") of Company's or its clients' employees, contractors or candidates. Colleague acknowledges that the Companies have invested considerable amounts of time and expense in attaining, developing, and protecting the confidentiality of its Confidential Information. Any unauthorized disclosure or release of such Confidential Information in any form would irreparably harm the Companies. To the extent Colleague had a prior existing relationship with any Company client, Colleague acknowledges and agrees that such relationship will be materially enhanced by Colleague's employment with Company and access to its Confidential Information.

4.  During Colleague's employment, Company promises to provide such Confidential Information as will help Colleague perform his or her job. Colleague shall refrain from directly or indirectly disclosing to any third party, or using for any purpose other than for the direct benefit of the Companies, any Confidential Information during his or

Employment Agreement – All States Final 01.17.12

her employ and for the maximum period permitted by law thereafter.

5.  Colleague recognizes that all of the items which contain any Confidential Information are the Companies' property exclusively, including those items which Colleague may have developed, or contributed to developing, or utilized during Colleague's employment, including, but not limited to, social networking accounts. Furthermore, Colleague recognizes that all materials, identification cards, keys, computer software and hardware, manuals, data bases, client and consultant lists, discs, tapes, memory devices, computer security devices, pagers and phones and equipment Company provides for Colleague are the property of Company exclusively. All items described in this paragraph are collectively referred to as "Company's Property". Colleague shall refrain from taking or reproducing, or allowing to be taken or reproduced, any Company Property except as necessary in furtherance of Colleague's duties under this Agreement.

6.  As used herein, the term "Market Area" shall mean the 50 mile radius of the Company office(s) to which Colleague is assigned or, if applicable, the territory to which Colleague is assigned to work and in which Colleague will have management responsibilities or contact involving any business matter. During Colleague's employment with Company and for a period of twelve (12) months thereafter, whatever the reason for Colleague's termination of employment, unless Colleague receives Company's advance written waiver as described herein, Colleague shall not, either directly or indirectly, either on his or her own behalf or on behalf of another person or entity, engage in or assist others in the following activities:

   a) Soliciting, hiring, recruiting, or attempting to recruit any person employed by or contracted with Company, who either worked within the Market Area at the time Colleague was employed by Company or with whom Colleague had personal contact through his/her employment with Company, at any time during the lesser of the twelve (12) months immediately prior to Colleague's termination of employment with Company or the term of Colleague's employment;

   b) Soliciting, contacting, calling upon, or attempting to call upon, for or on behalf of any business which competes with Company, any established or prospective Company's client(s) (s)he served or solicited while employed by Company, or any Company's client(s) which were served by Company in the Market Area, at any time during the lesser of the twelve (12) months immediately prior to Colleague's termination of employment with Company or the term of Colleague's employment.

   c) Within the Market Area, entering into, engaging in, being employed by, consulting or rendering services for, any business which competes with, or is similar to, Company's business at the time of Colleague's separation from employment with Company, in a capacity performing functions similar to those performed or managed by Colleague while employed by Company. This provision shall not restrict Colleague from owning a passive investment interest of less than 5% of the outstanding equity ownership or share in an organization represented by securities publicly traded on a recognized national securities exchange.

   d) For purposes of this Section, "Soliciting" shall include direct and indirect solicitations made through social-networking platforms.

   e) Colleague acknowledges that Sections 6 (a), (b), (c) and (d) are narrowly tailored to protect Company's legitimate business interests and will not unreasonably restrict Colleague's ability to secure gainful employment in Colleague's chosen occupation.

7.  The parties recognize that if Colleague were to breach the non-disclosure, non-solicitation or non-competition covenants of this Agreement (the "Restrictive Covenant(s)"), Company would suffer irreparable injury, the value of which would be difficult, if not impossible, to ascertain. Accordingly, in addition to any other remedy which may be available to Company, if Colleague breaches a Restrictive Covenant contained in this Agreement, the parties acknowledge that injunctive relief in favor of Company is proper and may be entered without necessity of a bond. If Colleague breaches a Restrictive Covenant of this Agreement containing a specified term, the length of the covenant shall be extended by the period of time between the inception of such a breach and the date a remedy is awarded for such breach of the covenant. A waiver of any of Colleague's obligations under the Restrictive Covenants hereunder shall be ineffective unless it is set forth in writing and signed by the Colleague and Company's

President. Furthermore, Company's waiver of one breach of this Agreement by Colleague does not constitute a waiver of any other or subsequent breach(es).

8. The parties acknowledge that the Restrictive Covenants in this Agreement are essential independent elements of this Agreement necessary and appropriate to protect Company's valuable and protectable client, employee and candidate relationships and Confidential Information (including trade secrets), and that but for Colleague agreeing to comply with them Company would not have employed or have continued to employ Colleague.

9. Colleague represents that Colleague has no agreement with or legal obligation to any prior employer that restricts Colleague's ability to accept employment with or perform any function for Company. Colleague acknowledges that Company has directed Colleague not to retain or use in an unlawful or improper manner any confidential information of any other person or entity for or on behalf of Company. Colleague represents that all confidential information and property in Colleague's possession relating to any such former employer has been returned.

### Inventions

10. All inventions, improvements, developments, or discoveries ("Inventions") conceived or made by Colleague, either alone or with others, during his/her employment with Company, which relate to the actual or anticipated business of Company, whether or not conceived or made on Company's time or with Company's resources, are the sole and exclusive property of Company, and Company may use or pursue them without restriction or further compensation. Title to the Inventions, including ownership rights to any and all patents, copyrights, trademarks and trade secrets therein or in connection therewith shall be the exclusive property of Company. Colleague hereby assigns and transfers to Company all of his/her rights, title and interest in and to such Inventions effective immediately upon their creation. To the extent that any inventions are copyrightable, such Invention shall be deemed "work made for hire" within the meaning of the U.S. Copyright Act, 17 U.S.C. Sections 101 and 201, and shall be owned exclusively by Company.

### Dispute Resolution and Arbitration Program

11. It is Company's goal that workplace disputes or claims be handled responsibly and on a prompt basis. Colleague and Company are encouraged to take advantage of the procedures in Company's Open Door Policy and Code of Business Conduct and solve problems and disputes informally, through dialog with Colleague's supervisor, manager or Human Resources representative. Absent resolution through such process, Company and Colleague agree that any and all legally cognizable disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship, shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect. These Rules can be obtained from the Human Resources Department or on line at www.adr.org. The agreement to arbitrate includes any claims that Company may have against Colleague, or that Colleague may have against Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities, except as set forth below. The arbitration shall take place in the county or parish where Colleague is or was last employed by Company. Company and Colleague agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law sets forth for such claim. This Agreement shall be enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. Sec 1 *et seq.* and shall survive after the employment relationship terminates. **BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.**

12. The arbitration requirement does not apply to (i) claims for workers compensation, state disability insurance and unemployment insurance benefits; (ii) claims for employee benefits under any benefit plan sponsored by Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance; however, the arbitration requirement does apply to claims for breach of fiduciary duty, for penalties, or alleging any other violation of the Employment Retirement Income Security Act of 1974, as amended, even if such claim is combined with a claim for benefits; and (iii) disputes that may not be subject to predispute arbitration agreements as

provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203). Regardless of any other terms of this Agreement, claims may be brought before an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims may include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Although Colleague will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of the arbitration requirement including the following class, collective and/or representative action waivers under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims.

13. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief. Accordingly, the arbitration requirement does not prevent preliminary or temporary injunctive relief in court to prevent irreparable harm caused by the violation of any Restrictive Covenant of this Agreement in advance of the arbitration.

14. BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS AND/OR COLLECTIVE PROCEEDING.

15. FURTHERMORE, BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT IN ANY REPRESENATATIVE PROCEEDING UNDER ANY PRIVATE ATTORNEY GENERAL STATUTE ("PAGA CLAIM"), UNLESS APPLICABLE LAW REQUIRES OTHERWISE. IF THE PRECEDING SENTENCE IS DETERMINED TO BE UNENFORCEABLE, THEN THE PAGA CLAIM SHALL BE LITIGATED IN A CIVIL COURT OF COMPETENT JURISDICTION AND ALL REMAINING CLAIMS WILL PROCEED IN ARBITRATION.

16. Within 30 days after signing this Agreement, Colleague may submit a form stating that Colleague wishes to opt out and not be subject to the Dispute Resolution and Arbitration Program contained herein. Colleague must submit a signed and dated statement on a "Dispute Resolution and Arbitration Program Opt Out Form" ("Form") that can be obtained from Tina Musgrove, Human Resources Department, 847-588-7493 or tina.musgrove@soliant.com. A Colleague who opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to the Dispute Resolution and Arbitration Program. Should Colleague not opt out of the Dispute Resolution and Arbitration Program in a timely manner, Colleague and Company will be deemed to have mutually accepted the terms of the Dispute Resolution and Arbitration Program.

17. The Company may change or modify the terms of the Dispute Resolution and Arbitration Program at any time with reasonable prior notice to Colleague. It is understood that future changes will supersede or eliminate, in whole or in part, the applicable terms of the Dispute Resolution and Arbitration Program. Current versions of the Dispute Resolution and Arbitration Program shall be maintained by the Company on the Company's intranet site or such other location(s) designated by the Company.

### Miscellaneous

18. Company's rights and obligations under this Agreement shall inure to the benefit of and be binding upon Company's assigns and successors. The parties agree that this Agreement may be freely assigned by Company without further notice or action.

19. If any provision(s) of this Agreement is declared overbroad, invalid or unenforceable such provision(s) shall be severed from this Agreement and the remaining provisions of this Agreement shall remain in full force and effect and shall be construed in a fashion which gives meaning to all of the other terms of this Agreement.

20. Except for the Dispute Resolution and Arbitration Program contained herein which is covered by the FAA, this Agreement shall be construed and enforced in accordance with the laws of the State of Georgia, except as federal law may apply, without giving effect to principles of conflict of law thereof.

21. This Agreement expressly supersedes all prior practices, understandings, and agreements, whether written or oral, between Colleague and Company and constitutes the entire agreement between Company and Colleague concerning the subject matter herein. Except for the Dispute Resolution and Arbitration Program contained herein, this Agreement may not be modified, except in writing signed by both Colleague and the President or CEO of Company. The section headings herein are for convenience only and shall have no contractual effect.

IN WITNESS WHEREOF, the parties to this Agreement have voluntarily and knowingly executed this Agreement effective as of the date set forth below.

COLLEAGUE

_____
Colleague Signature

Robert Lutz   *Robert A. Lutz*
Print Name

_____9/13/2012_____
Date

SOLIANT HEALTH

_____
Employer Signature

*Tina Musgrove / HRBP*
Print Name/Title

_____9/18/12_____
Date

5