UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CASE NO.

KAT FLORENCE, LLC, a Florida Limited
Liability Company, and Don Kogen, an
individual,

      Plaintiffs,

v.

ELUMEO SE, a Foreign Corporation,

      Defendant.

_____/

## COMPLAINT

**COMES NOW**, Plaintiffs, Kat Florence, LLC and Don Kogen, by and through their undersigned counsel, and hereby sue Defendant, Elumeo SE, a foreign corporation, and in support, states as follows:

### *Jurisdiction and Venue*

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.  There is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.     Plaintiff, Kat Florence, LLC ("Kat Florence"), is Florida Limited Liability Company doing in business in the state of Georgia and specifically in Gwinnett County, Georgia.

3.     Plaintiff, Don Kogen ("Mr. Kogen"), is sui juris and a citizen of the state of Texas and residing in the country of Thailand.

4.     Defendant, Elumeo SE ("Defendant" or "Elumeo") is a foreign company, organized under the laws of Germany.  It has engaged in tortious actions in and directed such action to the

1

state of Georgia, and specifically within Gwinnett County, Georgia.

5.      This Court has personal jurisdiction over Defendant within this District as Defendant tortiously interfered with Kat Florence's business relationship from outside of the state of Georgia that caused injuries inside of the state of Georgia.  In addition, Defendant invaded the privacy of Plaintiffs in the state of Georgia, thereby conferring personal jurisdiction over Defendant.  Finally, this Court has personal jurisdiction over Defendant within this District as Defendant inflicted emotional distress through its actions in the state of Georgia as to Mr. Kogen, individually.

6.      By engaging in such intentional tortious actions as described above, Defendant anticipated being hailed into a court within the state of Georgia.  Defendant has further purposefully directed its actions to residents and/or companies in the state of Georgia.  This litigation arises directly out of Defendant's tortious actions in Georgia.

7.      Venue is proper herein such that the claims involving Defendant's tortious interference with Kat Florence's business relationship as alleged below occurred in and was directed to the state of Georgia, more specifically within Gwinett County, Georgia.  In addition, Plaintiffs sustained injuries within Gwinett County, Georgia as a result of the Defendant's tortious actions.

### *Facts Common to All Counts*

Plaintiffs reallege and reaver paragraphs 1 through 7 as though fully set forth herein.

8.      Kat Florence is a company that markets, sells, and distributes fine jewelry in the state of Georgia, as well as throughout the world.

9.      As part of its marketing and sales efforts to its consumers, Kat Florence uses various partners to assist it in the promotion, marketing, and sale of its merchandise.

10.     Gem Shopping Network, Inc. ("GSN") is located in Duluth, Georgia.   This television network provided Kat Florence with a nationwide vehicle to promote, advertise, and sell its fine jewelry directly to consumers that are watching the network through its various programming.

11.     GSN is further a television network that reaches over 40 million households across the United States and shows fine jewelry from all over the world.  It includes "top Gem World Class" gemstones, "Fine, exquisite designer jewelry", and "entertaining and knowledgeable on-air sales hosts."

12.     GSN hosts "combine entertainment and education while presenting rare gemstones and fine jewelry" to its audience.  Along with the fine gemstones and jewelry itself, the network provides on-air personalities and guests that share personal stories and provide valuable insight into the jewelry industry.

13.     GSN markets itself as providing entertainment and education regarding fine gems and jewelry where pieces "inevitably catches the eye" of the viewer and "they have to have it."

14.     Various programming on GSN includes: "Empire State Jewelry Collection," Colorful Gems & Exotic Jewelry," "South Beach Collection," and "Beverly Hills Estate Jewelry." Upon viewers seeing the jewelry on the network, including Plaintiff's merchandise, they can purchase it directly through this vehicle.

15.     Kat Florence and GSN had an established business relationship whereby Kat Florence would provide GSN with a significant amount of jewelry on an ongoing basis to sell to consumers that watched the GSN programming.  The relationship between both resulted in tens of millions of dollars of revenue for Kat Florence and was quite successful.

16.     Mr. Kogen is and was a board member of Elumeo.  He additionally is and was

affiliated with Kat Florence.  At all times material hereto, Mr. Kogen made television appearances as the host of various shows on GSN on behalf of Kat Florence as part of its efforts to sell its gems and jewelry to a worldwide audience.

17.     Defendant is a German online and TV shopping jewelry distributor in Europe.

18.     On or about January 26, 2016, Defendant entered into a contract with Kat Florence Design Limited, a Cyprus Company ("Kat Florence Cyprus").  On September 7, 2018, Kat Florence Cyprus terminated is contract with Defendant due to Defendant's failure to make substantial payments that were well over 100 days past due.

19.     As a result of Kat Florence Cyprus terminating the agreement, Defendant went on a course of attempting to harass and destroy any individual and/or business entity that was associated with the Kat Florence Brand.  For example, Defendant engaged in a series of harassment efforts of Kristy Florence, the brand's face and designer.  It further made slanderous accusations about her husband and gem hunter celebrity Plaintiff, Mr. Kogen.

20.     Kat Florence Company Limited, a Thailand Company ("Kat Florence Thailand"), and parent company of Plaintiff, Kat Florence, was another entity Defendant pursued with its harassment and slanderous efforts.  For example, on March 9, 2019, Defendant filed for an ex-parte injunction against Kat Florence Cyprus, and then used it to block a marketing event of Kat Florence Thailand, at the SOHO house in Berlin, Germany.  Defendant knew that Kat Florence Thailand was a different entity than its contract partner and had nothing to do with the contractual dispute that transpired between Defendant and Kat Florence Cyprus.  Notwithstanding, Defendant engaged in such conduct to attempt to wreak havoc and denigrate the Kat Florence Brand.  Furthermore, Defendant's management actively tried to hijack and/or intimidate the guests to the event by approaching them directly in front of the SOHO house building in Berlin, Germany.

21.     Kat Florence Thailand had, in fact, spent hundreds of thousands of dollars on organizing this event, which was lost as a result of Defendant's actions. Thus, Defendant used its injunction against a company with a similar name to interfere with and stop the marketing efforts of another company that it had no relationship with. This was done all with the intent to hurt the Kat Florence Brand that its actual contract partner, Kat Florence Cyprus, was selling.

22.     Subsequently, Defendant engaged in additional efforts to hurt those associated with the Kat Florence Brand, such as harassing Kristy Florence in Canada and interfering with her business in that country. This was likewise done based on its dispute with Kat Florence Cyprus.

23.     Thereafter, and in a further effort to hurt the Kat Florence Brand, which it believed would thereby hurt its former contractual partner, Kat Florence Cyprus, Defendant turned its attention to Plaintiffs in the state of Georgia. Defendant was aware of the fact that Kat Florence was the wholly owned subsidiary of Kat Florence Thailand. It further had knowledge that Kat Florence has an actual and/or prospective business relationship with GSN and that Kat Florence was selling tens of millions of dollars' worth of Kat Florence Brand jewelry on GSN through its programming. It further had knowledge that Mr. Kogen, a former Elumeo board member, was the "face" of the brand through his appearances on GSN, selling the Kat Florence Brand jewelry, and that allegations of impropriety regarding the alleged stolen gems and jewelry would affect his ability to continue his ability to earn wages in this business.

24.     Based on this knowledge, and with the malicious intent to hurt Kat Florence, Kat Florence Thailand, and Mr. Kogen personally, Defendant engaged in both written and oral communications to GSN that included false statements about Kat Florence and Mr. Kogen. Specifically, and knowing that the statements about Kat Florence and Mr. Kogen were false, and in an effort to further its scheme to hurt Kat Florence's business and further cause monetary losses

to Mr. Kogen, in July 2021, Defendant contacted GSN at its headquarters in Duluth, Georgia and made a false claim about Kat Florence and Mr. Kogen being involved in criminal scheme to sell stolen jewelry on GSN's network.

25.     Defendant concocted a false narrative and told GSN that in late 2018, "an unauthorized shipment of grandidierite gems was sent from a PWK Jewelry Company, Ltd. factory to Gemvault, Ltd. This never occurred. It further stated that in 2020, Kat Florence sold jewelry to GSN containing gemstones that "match the grandidierite missing from PWK." This similarly did not happen. PWK Jewelry Company is, in fact, a company owned and/or affiliated with Defendant. Defendant further stated that Kat Florence's spokesman, Mr. Kogen, was affiliated with these entities and thereby involved in these illegal activities. Defendant created a fictitious story about Plaintiffs stating that they were involved in a scheme to steal gems from Defendant, bring to the state of Georgia, and sell them on national television.

26.     Defendant was further telling GSN its on air personality, Mr. Kogen, on behalf of Kat Florence, is part of what would equate to be an ongoing criminal enterprise.

27.     These statements were false and done with the specific intent to harm Mr. Kogen personally, Kat Florence's business, and its business relationships. They were not done to provide Defendant any economic benefit. Rather, they were a continuation of a calculated scheme to hurt Mr. Kogen, Kat Florence, and Kat Florence Thailand; a scheme that has played out in various countries prior thereto, including both Germany and Canada, as described above.

28.     These statements were clearly false such that was no unauthorized shipment of grandidierite gems sent from a PWK Jewelry Company, Ltd. factory to Gemvault, Ltd. Kat Florence further did not acquire any stolen gems from this shipment and thereafter sell stolen grandidierite gems, with the assistance of Mr. Kogen, on the GSN Network.

29.     Defendant knew that these allegations were completely false.  It knew that Kat Florence had nothing to do with Defendant, but it was simply selling the Kat Florence Brand jewelry.  It further knew that Kat Florence, including Mr. Kogen, had never engaged in any type of criminal activity.  It further knew that there were no unauthorized shipments of grandidierite gems.  It additionally knew that even if they were making a claim involving other entities, it knew that Kat Florence's gems that it was selling on GSN had nothing to do with any of these claims being made by Defendant against other entities.

30.     Defendant further knew that Gemvault never sold, transferred, or sent any gemstones to Kat Florence or its parent company, Kat Florence Thailand.  Furthermore, it knew that Kat Florence and its parent company, Kat Florence Thailand, never received any gemstones from Gemvault company.

31.     Defendant concocted this entire narrative to hurt Kat Florence, the Kat Florence Brand, and those associated with same, including Mr. Kogen.

32.     As a result of Defendant's actions, Plaintiffs suffered damages.

### Count I
### Tortious Interference with Business Relations
### (Kat Florence)

Kat Florence realleges and reavers paragraphs 1 through 32 as if fully set forth herein.

33.     As stated above, Kat Florence had a business relationship with GSN in the state of Georgia where it maintained legal rights related thereto.  Specially, Kat Florence agreed to provide jewelry to GSN for GSN to sell on its television network.  Upon making a sale, GSN would pay Kat Florence the sales proceeds either directly and/or through its agent.  GSN would then retain a portion of the profits from the sale.  Kat Florence collected millions of dollars in revenues as a result of this relationship.

34.     At all times material, Defendant had direct knowledge of this relationship between these entities. Defendant further took actions that were aimed at the state of Georgia where Defendant was aware Kat Florence operated. These actions further caused harm to Kat Florence that Defendant should have anticipated would be suffered in the state of Georgia.

35.     Defendant engaged in an intentional and unjustified interference and disruption with this relationship and eliminated Kat Florence's ability to perform. It did so by contacting GSN with false claims that Kat Florence was involved in criminal activities related to gems being sold on the GSN network. Specifically, Defendant contacted GSN and stated that the gems had been stolen by Kat Florence or those affiliated with the Kat Florence Brand—i.e., Kat Florence's spokesperson, Mr. Kogen—and that Kat Florence thereafter engaged in a criminal conspiracy by selling these exact stolen gems on the GSN network, through the business relationship that it had with GSN. GSN was additionally indirectly being accused of profiting from the sale of Defendant's stolen gems by continuing its relationship with Kat Florence.

36.     Defendant has claimed that these statements were being made to GSN as part of a discovery effort to obtain information about a lawsuit involving these parties. This is not true. Rather, Defendant made these statements with full knowledge and intent to hurt Kat Florence and its brand, just as it had done in Germany and Canada.

37.     Any claim by Defendant that accusing Kat Florence of stealing its gems and selling them on GSN in Georgia as part of an "investigation" to file a "future lawsuit" in a foreign country is false and simply an effort to cover up the true motives regarding its actions; i.e., to end Kat Florence's business relationship with GSN, which would then cripple the Kat Florence Brand itself.

38.     Moreover, Defendant's false claim that it was simply performing an "investigation"

is even more demonstrably false by the fact that its alleged investigation for a "future lawsuit" had nothing to do with any actions taken by Kat Florence. Rather, it claims that this investigation was being done to "possibly" file a lawsuit against someone other than Kat Florence.

39.     Had Defendant truly only been seeking information in support of a lawsuit against another party, it could have easily engaged in a number of discovery mechanisms through the courts, including subpoenas, to obtain such information without accusing Kat Florence of being involved in a criminal conspiracy and selling stolen gems with GSN.

40.     Rather, the true motives behind Defendant's actions were in fact to interfere with Kat Florence's business with GSN in order to destroy the relationship.

41.     As a direct result of the actions of Defendant, Kat Florence suffered damages, including but not limited to the loss of revenues and the loss of its relationship with GSN and its viewers.

42.     The actions by Defendant were intentional and willful, done with a reckless disregard for the rights of Kat Florence, and done with a specific effort to hurt Kat Florence and the Kat Florence Brand that it was selling through GSN. As a result, Kat Florence is further entitled to a recovery of punitive damage against Defendant.

**WHEREFORE**, Kat Florence seeks judgment against Defendant for compensatory damages as set forth above, punitive damages, the costs of this action, and for any additional relief this Court deems just and proper.

### *Count II*
### *Tortious Interference with a Prospective Business Relations*
### *(Kat Florence)*

Kat Florence realleges and reavers paragraphs 1 through 32 as if fully set forth herein.

43.     As stated above, Kat Florence had a prospective business relationship with GSN in

the state of Georgia where it maintained legal rights related thereto. Specially, Kat Florence agreed to provide jewelry to GSN for GSN to sell on its television network. Upon making a sale, GSN would pay Kat Florence the sales proceeds either directly and/or through its agent. GSN would then retain a portion of the profits from the sale. Kat Florence collected millions of dollars in revenues as a result of this relationship.

44.     At all times material, Defendant had direct knowledge of this relationship between these entities. Defendant further took actions that were aimed at the state of Georgia where Defendant was aware Kat Florence operated. These actions further caused harm to Kat Florence that Defendant should have anticipated would be suffered in the state of Georgia.

45.     Defendant engaged in an intentional and unjustified interference and disruption with this relationship and eliminated Kat Florence's ability to perform. Absent such interference its relations were likely to further develop in fact. It did so by contacting GSN with false claims that Kat Florence was involved in criminal activities related to gems being sold on the GSN network. Specifically, Defendant contacted GSN and stated that the gems had been stolen by Kat Florence or those affiliated with the Kat Florence Brand—i.e., Kat Florence's spokesperson, Mr. Kogen—and that Kat Florence thereafter engaged in a criminal conspiracy by selling these exact stolen gems on the GSN network, through the business relationship that it had with GSN. GSN was additionally indirectly being accused of profiting from the sale of Defendant's stolen gems by continuing its relationship with Kat Florence.

46.     Defendant has claimed that these statements were being made to GSN as part of a discovery effort to obtain information about a lawsuit involving these parties. This is not true. Rather, the Defendant made these statements with full knowledge and intent to hurt Kat Florence and its brand, just as it had done in Germany and Canada.

47.     Any claim by Defendant that accusing Kat Florence of stealing its gems and selling them on GSN in Georgia as part of an "investigation" to file a "future lawsuit" in a foreign country is false and simply an effort to cover up the true motives regarding its actions; i.e., to end Kat Florence's business relationship with GSN, which would then cripple the Kat Florence Brand itself.

48.     Moreover, Defendant's false claim that it was simply performing an "investigation' is even more demonstrably false by the fact that its alleged investigation for a "future lawsuit" had nothing to do with any actions taken by Kat Florence.  Rather, it claims that this investigation was being done to "possibly" file a lawsuit against someone other than Kat Florence.

49.     Had Defendant truly only been seeking information in support of a lawsuit against another party, it could have easily engaged in a number of discovery mechanisms through the courts, including subpoenas, to obtain such information without accusing Kat Florence of being involved in a criminal conspiracy and selling stolen gems with GSN.

50.     Rather, the true motives behind Defendant's actions were in fact to interfere with Kat Florence's business with GSN in order to destroy the relationship.

51.     As a direct result of the actions of Defendant, Kat Florence suffered damages, including but not limited to the loss of revenues and the loss of its relationship with GSN and its viewers.

52.     The actions by Defendant were intentional and willful, done with a reckless disregard for the rights of Kat Florence, and done with a specific effort to hurt Kat Florence and the Kat Florence Brand that it was selling through GSN.  As a result, Kat Florence is further entitled to a recovery of punitive damage against Defendant.

**WHEREFORE**, Kat Florence seeks judgment against Defendant for compensatory

damages as set forth above, punitive damages, the costs of this action, and for any additional relief this Court deems just and proper.

***Count III***
***Invasion of Privacy***
***(Kat Florence)***

Kat Florence realleges and reavers paragraphs 1 through 32 as if fully set forth herein.

53.     As stated above, in July 2021, Defendant contacted GSN and made false claims to a television station and various individuals therein about Kat Florence being involved in criminal activities in relation to Kat Florence's inventory being sold on its network.

54.     The claims by Defendant concerning Kat Florence, which constitutes false publicity of Kat Florence and places it in a false light in the public eye, has depicted Kat Florence as something it is not; i.e., a criminal, thief, felon, wrongdoer, and/or similarly being associated with such activities.

55.     Defendant's actions in creating a fictious scheme depicting Kat Florence as a criminal and involved in an international criminal conspiracy involved in the trafficking of stolen gems and jewelry is highly offensive to a reasonable person.

56.     As a direct and proximate result of the actions of Defendant, Kat Florence has suffered damages, including but not limited to lost profits, loss of income, loss of good will, and damage to the value of the Kat Florence Brand, and related economic damages.

57.     Kat Florence further seeks punitive damages against Defendant.

**WHEREFORE**, Kat Florence demand judgment in its favor and against Defendant for damages as set forth above, the costs of this matter, pre-judgment and post judgment interest, and for any additional relief this court deems just and proper.

12

### Count IV
### Invasion of Privacy
### (Don Kogen)

Mr. Kogen realleges and reavers paragraphs 1 through 32 as if fully set forth herein.

58.    As stated above, in July 2021, Defendant contacted GSN and made false claims to a television station and various individuals therein about Mr. Kogen being involved in criminal activities in relation to Kat Florence's inventory being sold on its network.

59.    The claims by Defendant concerning Mr. Kogen, which constitutes false publicity of Mr. Kogen and places him in a false light in the public eye, particularly when Mr. Kogen is the host of a television show on a national television network that reaches millions of audience members, has depicted Mr. Kogen as something he is not; i.e., a criminal, thief, felon, wrongdoer, and/or similarly being associated with such activities.

60.    Defendant's actions in creating a fictious scheme depicting Mr. Kogen as a criminal and involved in an international criminal conspiracy involved in the trafficking of stolen gems and jewelry is highly offensive to a reasonable person.

61.    As a direct and proximate result of the actions of Defendant, Mr. Kogen has suffered damages, including but not limited to loss of income and related damages.

62.    Mr. Kogen further seeks punitive damages against Defendant.

**WHEREFORE**, Mr. Kogen demand judgment in its favor and against Defendant for damages as set forth above, the costs of this matter, pre-judgment and post judgment interest, and for any additional relief this court deems just and proper.

### Count V
### Intentional Infliction of Emotional Distress
### (Don Kogen)

Mr. Kogen realleges and reavers paragraphs 1 through 32 as if fully set forth herein.

62.     As stated above Defendant engaged in certain actions in relation to Mr. Kogen by making false claims that he is involved in an international criminal conspiracy by stealing gems and bringing them into the state of Georgia.

63.     Defendant has further claimed and/or implied that Mr. Kogen has taken those stolen gems and has engaged in the selling of jewelry through his television appearance to millions of viewers of GSN.

64.     Defendant's conduct in relation to Mr. Kogen was intentional, deliberate, malicious, and/or reckless and done with the effort to inflict emotional distress upon Mr. Kogen.

65.     As reflected in Defendant's letter, the content therein is the type of conduct that would cause a reasonable person to deem or otherwise consider same to be outrageous, extreme, indecent, odious, utterly intolerable, and/or beyond all possible bounds of decency in a civilized society. This is specifically true to the extent that Defendant has depicted Mr. Kogen as a criminal, thief, felon, wrongdoer, or somehow being associated with such activities when there is nothing to substantiate same.

66.     Defendant intended such actions when it knew or should have known that emotional distress would result.

67.     Consequently, Defendant's aforementioned intentional misconduct caused, in fact, Mr. Kogen to suffer severe emotional distress.

68.     As a direct and proximate result of Defendant's conduct described herein, Mr. Kogen suffered damages.

14

69.   Mr. Kogen further seeks punitive damages against Defendant.

**WHEREFORE**, Mr. Kogen demands judgment in his favor and against Defendant for damages as set forth above, the costs of this matter, pre-judgment and post judgment interest, and for any additional relief this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands trial by jury of all counts as described above.

> **C. Thomas Law, LLC**
> 101 Marietta St. NW, Suite 3340
> Atlanta, GA 30303
> chelsea@c-thomaslaw.com
> Telephone: (470) 377-5105
> *Attorneys for the Plaintiff*
>
> /s/ Chelsea N. Thomas
> Chelsea N. Thomas, Esq.