# EXHIBIT C



September 30, 2021

**ELECTRONIC MAIL ONLY**

janeensoler@icloud.com
**Janeen Soler and Tredrick Gray
3282 Saville ST SW
Atlanta, GA 30331**

RE:   *Rodricus Jackson v. The Voo 2 Sports Bar & Lounge, LLC; Gray's Automotive, LLC; Gray's Automotive and Towing, LLC; Trederick Gray; Jonnika Hart Gray; Jonathan Hart; and John Does 1-10*
   Claim Number:      K162505
   Policyholder:          Tredrick Gray
   Issuing Company:  United States Liability Insurance Company
   Policy:                    CP 1737120
   Policy Effective:    9/25/2020-9/25/2021

Dear Ms. Soler and Mr. Gray,

This supplements our previous correspondence in which United States Liability Insurance Company (the "Company") acknowledged receipt of the above-captioned complaint filed on behalf of Rodricus Jackson (the "Plaintiff") against The Voo 2 Sports Bar & Lounge, LLC; Gray's Automotive, LLC; Gray's Automotive and Towing, LLC; Trederick Gray; Jonnika Hart Gray; Jonathan Hart; and John Does 1-10 (collectively, the "Defendants") which arose out of a shooting incident that took place on November 9, 2020, at approximately 6:10 am, at 2997 Campbellton Road SW, Atlanta, GA 30311 (the "Premises"). Pursuant to our previous correspondence, the Company provided a defense to you in the Jackson claim and subsequently reached a settlement to resolve that matter on your behalf for $1,000,000.00. As you are aware, immediately following that settlement agreement, the Plaintiff's attorney sent another demand advising that he was now representing the Estate of Richard Giles who was fatally shot on November 9, 2020, at approximately the same time as Jackson while at the Premises. This letter addresses the Giles claim.

The Company issued a commercial package policy of insurance, CP 1737120 (the "Policy"), to Tredrick Gray (the "Policyholder") which includes commercial property and commercial general liability coverage parts. Should a lawsuit be filed on behalf of the Estate of Richard Giles, the Company will provide a defense for the Policyholder subject to a reservation of rights to limit or deny coverage based on the terms and conditions of the Policy. The Company's coverage determination is subject to change if additional facts and legal theories are developed, and the Company reserves its right to amend its coverage determination and/or to deny coverage on alternative basis and/or withdraw this defense should the underlying facts or theories so warrant. The Company reserves all rights to deny coverage for any damages awarded in connection with the Giles claim and reserves the right to seek judicial determination as to the Company's duties and obligations with respect to the Giles claim and any other claim that may be presented in connection with the

BERKSHIRE HATHAWAY COMPANIES

1190 DEVON PARK DRIVE • P.O. BOX 6700 • WAYNE, PA 19087 • 610-688-2535 • 888-523-5545 • FAX 610-688-4391

United States Liability Insurance Company • Mount Vernon Fire Insurance Company • U.S. Underwriters Insurance Company
Mount Vernon Specialty Insurance Co. • Radnor Specialty Insurance Co.

**USLI.COM • DEVONPARKSPECIALTY.COM**

November 9, 2020, events at the Premises. We remind you that Brian McGowan is the Claims Examiner handling this matter and can be reached via email at brianm@usli.com or telephone at 888-523-5545 ext. 2514 and we have retained the law firm of Gray, Rust, St. Amand, Moffett & Brieske, L.L.P., to represent the Policyholder in this matter. Throughout this correspondence I will quote certain policy provisions pertinent to the Company's coverage analysis.  Please refer to the Policy, as the language of all policy terms, conditions, exclusions and endorsements set forth in the Policy are determinative of the existence of coverage.

Please refer to policy form **CG 00 01 (12/07) Commercial General Liability Coverage Form**, which as modified by policy form **CG 21 44 (04/17)** states the following relevant language:

> **SECTION 1 – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.    Insuring Agreement**
>     **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>         **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
>         **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>     **b.**    This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:
>         **(1)**    The "bodily injury" or "property damage":
>             **(a)**    Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
>             **(b)**    Arises out of the project or operation shown in the Schedule;
>         **(2)**    The "bodily injury" or "property damage" occurs during the policy period…
>
> …

**SECTION III – LIMITS OF INSURANCE**
1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
    a. Insureds;
    b. Claims made or "suits" brought; or
    c. Persons or organizations making claims or bringing "suits".

…

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
    a. Damages under Coverage **A;** and
    b. Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

…

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

…

The use of quotation marks indicates that the term is defined in the Policy. Please refer to **SECTION V – DEFINITIONS** of the same form and note the following relevant definitions:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Policy form **L 610 11/04 EXPANDED DEFINITION OF BODILY INJURY** provides the following definition:

1. "Bodily injury" means:
    a. bodily injury,
    b. sickness,
    c. disease; or
    d. mental anguish or emotional distress arising out of a., b., or c., above,
sustained by a person, including death resulting from any of these at any time.

The above-cited Insuring Agreement states that coverage may apply when the insured becomes legally obligated to pay damages because of an "occurrence" that results in "bodily injury" that takes place on the scheduled premises during the policy period and that the most we will pay because of all "bodily injury" arising out of any one "occurrence" is the Each Occurrence Limit. The Each Occurrence Limit shown on the Policy's Declarations is $1,000,000.00. The above-cited definitions explain what is meant when those terms are used in the Policy. Since both the Jackson claim and Giles claim arise out of the same "occurrence", the limits have been exhausted in the settlement of the Jackson claim. Accordingly, the Company will not make any additional payments for the Giles claim or any other claim that arises out of the same "occurrence" as the Jackson claim.

We again refer you back to policy form **CG 00 01 (12/07) Commercial General Liability Coverage Form**, which includes the following relevant language:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
> …
> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>       **(1)** How, when and where the "occurrence" or offense took place;
>       **(2)** The names and addresses of any injured persons and witnesses; and
>       **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>    **b.** If a claim is made or "suit" is brought against any insured, you must:
>       **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>       **(2)** Notify us as soon as practicable.
>    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>    **c.** You and any other involved insured must:
>       **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>       **(2)** Authorize us to obtain records and other information;
>       **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>       **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

The above-cited language explains what your duties are in the event of a claim or "suit". As a reminder, although we are on notice of this claim, the above-cited conditions require that you cooperate with us and that you immediately send us copies of any letters, emails, correspondence, demands, notices, summonses or legal papers, received in connection with the claim or suit. Failure to do so may jeopardize coverage under the Policy.

For the reasons stated above, the Policy does not provide coverage for the Giles claim because the limits have already been exhausted for claims arising out of the November 9, 2020, shooting incident at the Premises. However, should suit be filed the Company will

provide a defense for you subject to the terms and conditions of the Policy and the above-described reservation of rights.  The Company's position may be subject to change if additional facts and legal theories are developed. The Company reserves its right to deny coverage on alternative bases should the underlying facts or theories so warrant.  The Company further reserves its rights to withdraw the defense at such time it is deemed no such participation is owed. The contents of this letter should not be construed as a waiver of any rights or defenses which the Company may have under the Policy.  We recommend that you notify any other insurance carriers that may possibly afford coverage for this claim as soon as possible.  Further, if you have additional information or legal authority that you believe may affect the Company's position regarding coverage for this claim, or you obtain such information or authority in the future, we would be happy to review the same at any time.

Regards,

Maureen Connor JD, AIC, CPCU, SCLA
Assistant Vice President
Coverage Specialist