**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SOULFUL NUTRITION INC., d/b/a REMEDY ORGANICS, | Misc. Action No.: Underlying Case No.: 2-21-cv-17455 (D.N.J.) |
| Plaintiff, | |
| v. | **DECLARATION OF HENRY GABATHULER** |
| REMEDY DRINKS PTY., LTD., and REMEDY DRINKS USA, LLC | |
| Defendant. | |

## DECLARATION OF HENRY GABATHULER IN SUPPORT OF SOULFUL NUTRITION INC. D/B/A REMEDY ORGANICS' MOTION TO ENFORCE SUBPOENA

I, Henry Gabathuler, under penalty of perjury, hereby state and declare as follows:

1.     I am an attorney at Leason Ellis LLP, which represents Plaintiff Soulful Nutrition d/b/a Remedy Organics ("Plaintiff").  I am an attorney at law, a member in good standing of the State Bar of New Jersey.

2.     I submit this Declaration in support of Plaintiff's Motion to Enforce Subpoena.  The facts stated herein are within my personal knowledge and are true to the best of my knowledge and belief.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of the subpoena served on Delta Airlines, Inc. "Delta Airlines," dated May 5, 2023.

4.     Attached hereto as **Exhibit 2** is a true and correct copy of the Proof of Service of the subpoena on Delta Airlines, dated May 10, 2023.

5.     Attached hereto as **Exhibit 3** is a true and correct copy of the Delta Airlines production cover e-mail sent by counsel for Delta Airlines, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), on May 18, 2023.

6.     Attached hereto as **Exhibit 4** is a true and correct copy of the Delta Airlines production cover letter sent by counsel for Delta Airlines, dated May 18, 2023.

7.     Attached hereto as **Exhibit 5** is a true and correct copy of a letter sent by Plaintiff's counsel, Leason Ellis LLP, on behalf of Plaintiff, dated May 22, 2023.

8.     Attached hereto as **Exhibit 6** is a true and correct copy of a letter sent by Delta Airlines' counsel, on behalf of Delta Airlines, dated May 23, 2023.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Dated this day of May 26, 2023 in Old Greenwich, Connecticut.

_____

Henry Gabathuler

# EXHIBIT 1

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### District of New Jersey

| | | |
|---|---|---|
| SOULFUL NUTRITION INC., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:21-cv-17455 (ES-LDW) |
| REMEDY DRINKS PTY., LTD., et al., | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Delta Air Lines, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Schedule A hereto.

| Place: To take place remotely via secure web-based platform offered by Veritext. | Date and Time: 05/25/2023 10:00 am |
|---|---|

The deposition will be recorded by this method:   Videographic and stenographic means.

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Schedule B hereto.  Production to be made by May 22, 2023 to Henry A. Gabathuler, Esq., Leason Ellis LLP, One Barker Avenue, Fifth Floor, White Plains, New York 10601, gabathuler@leasonellis.com.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/05/2023

| *CLERK OF COURT* | | |
|---|---|---|
| _____ | OR | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Plaintiff, Soulful Nutrition Inc. d/b/a Remedy Organics , who issues or requests this subpoena, are:

Henry A. Gabathuler, Leason Ellis LLP, One Barker Ave., 5th Fl., White Plains, NY 10601; Tel: 914-288-0022

**Notice to the person who issues or requests this subpoena** gabathuler@leasonellis.com
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:21-cv-17455 (ES-LDW)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                         _____
                                                        *Server's signature*

                                                        _____
                                                        *Printed name and title*

                                                        _____
                                                        *Server's address*

Additional information regarding attempted service, etc.:

**Print**        **Save As...**        **Add Attachment**                **Reset**

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

1.     "You" or "Your" or "Delta" shall refer to Delta Air Lines, Inc. including any shareholders, officers, directors, partners, associates, employees, staff members, lawyers, agents, representatives, divisions, subsidiaries, predecessors-in-interest, affiliates, successors, assigns, or any other entity related to Delta.

2.     "Action" shall refer to the case captioned *Soulful Nutrition Inc. d/b/a Remedy Organics v. Remedy Drinks Pty., LTD. et al.*, No. 2:21-cv-17455-ES-LDW, pending in the District of New Jersey.

3.     "Plaintiff" means and refers to Soulful Nutrition Inc., d/b/a Remedy Organics, including any predecessors, successors, parents, wholly or partially owned subsidiaries, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, attorneys, entities acting in joint-venture or partnership relations with Plaintiff, and persons acting or purporting to act on Plaintiff's behalf.

4.     "Defendants" means and refers to Remedy Drinks Pty., Ltd. and Remedy Drinks USA, LLC, individually and collectively, including any predecessors, successors, parents, wholly or partially owned subsidiaries, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, attorneys, entities acting in joint-venture or partnership relations with either entity, and persons acting or purporting to act on either entity's behalf.

5.     "Plaintiff's Mark" means and refers to Plaintiff's use of and rights in the mark REMEDY ORGANICS and variants thereof in connection with its goods and services, including the federal registration U.S. Reg. No. 6,316,000.

6.      "Accused Mark" shall be construed to mean the marks REMEDY or REMEDY DRINKS and any variants, including any mark containing the word REMEDY, used or intended to be used by Defendants.

7.      "Plaintiff's Goods and Services" means and refers to any commercial use of Plaintiff's Mark, i.e., any and all goods or services that Plaintiff has advertised, marketed, offered for sale, distributed, or otherwise used in United States commerce.

8.      "Defendants' Goods and Services" means and refers to any commercial use of the Accused Mark, i.e., any and all goods or services that Defendants have advertised, marketed, offered for sale, distributed, rendered or otherwise caused to be provided by Defendants, or that Defendants intend to advertise, market, offer for sale, distribute, render, or otherwise cause to be provided in the United States in connection with the Accused Mark.

9.      "Communication" means the transmittal of information in any form, including, without limitation, written, oral, or electronic transmittal.

10.     "Concerning" means relating to, referring to, describing, or constituting.

11.     "Document" is synonymous in meaning and equal in scope to the usage of the term" documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

12.     "Including" means "including, without limitation," "include" means "include, without limitation," and "includes" means "includes, without limitation."

13.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

15.     Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, at least one corporate representative with knowledge of the Topics identified herein must be presented to testify at the date, time, and location identified in this Subpoena, or other mutually agreeable date, time and location.

## PROTECTIVE ORDER

Enclosed is a copy of the Stipulated Discovery Confidentiality Order entered by the Court in this Litigation, captioned as *Soulful Nutrition Inc. d/b/a Remedy Organics v. Remedy Drinks Pty., LTD. et al., No. 2:21-cv-17455-ES-LDW*, pending in the United States District Court for the District of New Jersey.  The terms of this Stipulated Discovery Confidentiality Order apply to information disclosed by non-parties, and pursuant to Paragraphs 1 and 2, non-parties may designate documents and testimony as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

## <u>TESTIMONY TOPICS</u>

1.     Potential uncertainty, mistake, or confusion of Delta representatives Suzanne Ferguson and/or Ryan Hennen as between Plaintiff and Defendant and/or as between Plaintiff's Goods and Services and Defendant's Goods and Services occurring at the Natural Products Expo East show held September 28-30, 2022.

2.     Conversations Delta representatives Suzanne Ferguson and/or Ryan Hennen had with Plaintiff's representatives Cindy Kasindorf and/or Henry Kasindorf at the Natural Products Expo East, September 28-30, 2022, regarding: Defendant's kombucha products; whether Plaintiff sold kombucha products; and any potential uncertainty, mistake, or confusion as between Plaintiff

and Defendant and/or as between Plaintiff's Goods and Services and Defendant's Goods and Services.

3.     Authentication of any documents You produce in response to the requests for production set forth in Schedule B to the Subpoena.

## SCHEDULE B

## DEFINITIONS AND INSTRUCTIONS

1.       In addition to the following Instructions, the Definitions set forth in Schedule A are incorporated herein by reference.

2.       The following requests for production are directed to any and all documents in Your possession, custody, or control, regardless of whether those documents are possessed by You or by any agent, representative, attorney, or other third party, subject to a diligent search of documents and records in Your possession, custody, or control (including but not limited to paper records, computerized records, electronic mail records, voicemail records and text messages).

3.       All documents must be produced as they are kept in the ordinary course or must be organized and labeled to correspond with the categories in the request.

4.       You are required to produce responsive electronically stored information, including all associated metadata, and must produce it in a reasonably usable form.

5.       To the extent that You consider any of the following requests objectionable, respond to so much of each, and each part thereof, which is not objectionable in Your view, and separately state that part of each which is objectionable and the ground for each objection.

6.       These requests are continuing so as to require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

7.       If any of the documents requested herein has been destroyed or is no longer in existence, for any reason, describe the content of such document as completely as possible, the date of such destruction and the name of the person who ordered or authorized such destruction.

8.       If You object to any request or part thereof on the basis of a claim of attorney-client or work product privilege, identify the privilege claimed as well as each statement,

communication, or subject matter of the information for which such privilege is claimed, and provide the following with respect to each such statement or communication:

a. the date thereof;

b. identify all persons present, if an oral communication, or all persons who received a copy of such communication, if written; and

c. the basis on which the privilege is claimed.

### PROTECTIVE ORDER

Enclosed is a copy of the Stipulated Discovery Confidentiality Order entered by the Court in this Litigation, captioned as *Soulful Nutrition Inc. d/b/a Remedy Organics v. Remedy Drinks Pty., LTD. et al., No. 2:21-cv-17455-ES-LDW*, pending in the United States District Court for the District of New Jersey. The terms of this Stipulated Discovery Confidentiality Order apply to information disclosed by non-parties, and pursuant to Paragraphs 1 and 2, non-parties may designate documents and testimony as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

### DOCUMENT REQUESTS

1.      Any and all documents concerning potential uncertainty, mistake, or confusion of Delta representatives Suzanne Ferguson and/or Ryan Hennen as between Plaintiff and Defendant and/or as between Plaintiff's Goods and Services and Defendant's Goods and Services occurring at the Natural Products Expo East show held September 28-30, 2022.

2.      Any and all documents concerning conversations Delta representatives Suzanne Ferguson and/or Ryan Hennen had with Plaintiff's representatives Cindy Kasindorf and/or Henry Kasindorf at the Natural Products Expo East, September 28-30, 2022, regarding: Defendant's kombucha products; whether Plaintiff sold kombucha products; and any potential uncertainty,

mistake, or confusion as between Plaintiff and Defendant and/or as between Plaintiff's Goods and Services and Defendant's Goods and Services.

3.      Any and all documents to, from, cc, or bcc to an email address ending in "@remedydrinks.com."

4.      Any and all documents referring to both Plaintiff or Plaintiff's Goods and Services on the one hand and Defendant or Defendant's Goods and Services on the other hand.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOULFUL NUTRITION INC., d/b/a REMEDY ORGANICS, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| REMEDY DRINKS PTY., LTD., REMEDY DRINKS USA, LLC, and REMEDY DRINKS USA, LLC, | |
| Defendants. | |

Plaintiff Soulful Nutrition, Inc. d/b/a Remedy Organics ("Plaintiff"), by its undersigned counsel, as and for its Complaint against Defendants Remedy Drinks Pty., Ltd. ("Remedy Australia"), Remedy Drinks USA, LLC, a Delaware entity ("Remedy Delaware"), and Remedy Drinks USA, LLC, an Oregon entity ("Remedy Oregon," and together with Remedy Australia and Remedy Delaware, "Defendants"), hereby alleges as follows, upon knowledge with respect to its own acts and upon information and belief with respect to all other allegations:

## <u>NATURE OF ACTION</u>

1.     This action arises from Defendants' trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114, unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition and trademark infringement under the common laws of the State of New Jersey. Defendants have intentionally infringed the intellectual property of Plaintiff in the REMEDY ORGANICS trademark for beverage products by using the confusingly similar mark REMEDY DRINKS for competing beverage products.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events, omissions and acts giving rise to this litigation have occurred in this district, including without limitation Defendants' sales and promotion of goods under the REMEDY DRINKS mark.

## PARTIES

4.      Plaintiff, Soulful Nutrition, Inc. d/b/a Remedy Organics ("Remedy Organics") is a Delaware corporation, with its principal place of business in this judicial District.  Plaintiff is engaged in the business of producing and marketing beverages.

5.      Upon information and belief, Defendant Remedy Australia is an Australian proprietary limited company, with a principal place of business at Level 7, 612-616 St. Kilda Road, Melbourne Victoria, Australia.  Remedy Australia is engaged in the business of producing and marketing beverages.

6.      Upon information and belief, Defendant Remedy Oregon is an Oregon limited liability company, which lists its principal place of business as c/o Anchin Accountants, 1375 Broadway, New York, New York 10018.  Remedy Oregon is engaged in the business of producing and marketing beverages.

7.      Upon information and belief, Defendant Remedy Delaware, which has the same corporate name as Remedy Oregon, is a Delaware limited liability company engaged in the business of producing and marketing beverages.

2

8.     Upon information and belief Remedy Oregon and Remedy Delaware are wholly-owned subsidiaries of Remedy Australia.  Remedy Australia, Remedy Oregon, and Remedy Delaware are hereafter referred to collectively as "Defendants."

9.     Upon information and belief, Defendants market and sell their products throughout the United States, and solicit and conduct business in and/or derive revenue from products provided to residents of New Jersey and in this judicial District.

10.     Remedy Organics is a health food and beverage company.  Its products, including plant-based wellness shakes and immunity beverages, are sold throughout the United States in CVS, Walmart, Whole Foods, Wegmans, 7-Eleven, and other retailers, as well as online, including on amazon.com and on Plaintiff's website remedyorganics.com.

11.     Remedy Organics is the owner of the trademark REMEDY ORGANICS, registered on the Principal Register of the U.S. Patent and Trademark Office ("USPTO") as U.S. Reg. No. 6,316,000 ("Plaintiff's Mark" or "REMEDY ORGANICS Mark"), in connection with the following goods and services in International Class 029: Almond milk-based beverages; seed protein-based snacks; nut protein-based snacks; vegetable protein-based snacks; fruit protein-based snacks; all of the aforementioned goods are made in whole or substantial part of organic ingredients.

12.     Plaintiff's Mark is also registered in connection with the following goods and services in International Class 032:  Fruit juices; Vegetable juices; Fruit beverages; Smoothies; all of the aforementioned good are made in whole or substantial part of organic ingredients.

13.     In or about May 2017, the company first started using the REMEDY ORGANICS Mark in commerce in connection with selling its goods.  Since that time, it has spent millions of

dollars developing and promoting the REMEDY ORGANICS brand and the REMEDY ORGANICS Mark.

14.     On January 18, 2017, Plaintiff filed an application with the USPTO for the REMEDY ORGANICS Mark on an intent-to-use basis for a range of different products.  Plaintiff subsequently timely filed for several extensions to submit its statement of use.

15.     On August 15, 2017 Plaintiff's trademark application was published by the USPTO for opposition.  No opposition was filed.

16.     On November 26, 2019, almost three years after Plaintiff's application to register REMEDY ORGANICS, Remedy Australia filed an application with the USPTO for the trademark REMEDY DRINKS (the "Infringing Mark"), App. Serial No. 88,706,986, in connection with the following goods and services in International Class 029: Fermented milk.

17.     Remedy Australia also applied for the Infringing Mark in connection with the following goods and services in International Class 030: Beverages made of tea, namely, kombucha; tea-based beverages, namely, kombucha; fermented beverages with tea base; fermented tea; fermented tea-based beverages; fermented tea-based beverages containing wild kombucha cultures; fermented tea-based beverages containing vinegar.

18.     Remedy Australia also applied for the Infringing Mark in connection with the following goods and services in International Class 032: Live cultured or fermented soft drinks; beverages containing not more than 1.15% (by volume) of alcohol, namely, live cultured sodas and fermented soft drinks; low alcohol beverages containing not more than 1.15% (by volume) of alcohol, namely, live cultured sodas and fermented soft drinks; non-alcoholic fermented beverages flavoured with tea; fermented sodas; fermented soft drinks; fermented sodas and soft drinks containing coconut water; live cultured sodas and soft drinks; live cultured or fermented sparkling

4

water; non-alcoholic honey-based beverages; alcohol-free cider; fermented soft drinks and sodas containing natural apple extract; fermented soft drinks and sodas containing natural lemon extract; fermented soft drinks and sodas containing natural raspberry extract; fermented soft drinks and sodas containing natural berries extract; fermented soft drinks and sodas containing natural ginger extract.

19.     On March 4, 2020, the USPTO issued an Office Action expressing concern over potential confusion between the REMEDY ORGANICS Mark and the Infringing Mark and blocked Remedy Australia's application for the Infringing Mark.

20.     On May 13, 2020, Plaintiff filed its Statement of Use with the USPTO.

21.     On October 1, 2020, the USPTO suspended the application for the Infringing Mark pending registration of the trademarks cited against it, including the REMEDY ORGANICS Mark.

22.     On April 26, 2021, the USPTO issued the registration for the REMEDY ORGANICS Mark on the Principal Register.  No disclaimer of the term REMEDY was required or entered.

23.     A true and correct copy of the registration certificate for the REMEDY ORGANICS Mark will be attached as Exhibit 1 to the Declaration of Henry Kasindorf ("Kasindorf Decl."), which will be filed in support of Plaintiff's forthcoming Motion for a Preliminary Injunction and Expedited Discovery.

24.     Attached to the Kasindorf Decl. as Exhibit 2 is a true and correct copy of the application Remedy Australia filed with the USPTO for the Infringing Mark.

25.     Starting in late 2019, long after the application was filed for the REMEDY ORGANICS Mark, and shortly after Defendants began offering their products in the United States, Plaintiff started to receive correspondence from third parties confusing Remedy Organics with

Remedy Australia (and vice versa) and confusing the REMEDY ORGANICS Mark with the Infringing Mark (and vice versa) on health beverages sold by the companies.

26.     For example, on December 13, 2019, Plaintiff received the first of several emails from one of Defendants' freight forwarders.  Carol McLeod from Mainfreight Inc. emailed Kristy Lundgren at Lineage Logistics that a cargo coming for Remedy Drinks was arriving and that unpaid invoices needed to be settled.  Ms. McLeod copied one of Plaintiff's email addresses, info@remedyorganics.com, on the communication.  Ms. Lundgren kept Plaintiff's email address on her reply.  Attached to the Kasindorf Decl. as Exhibit 3 is a true and correct copy of the email chain beginning on December 13, 2019.

27.     On December 16, 2019, Ms. McLeod emailed the arrival notice for Defendants' shipment to Ms. Lundgren.  Ms. Lundgren's reply apparently intended to copy Defendants' corporate officers, but she copied Plaintiff's email address on the email chain as well.  On December 22, 2019, Defendants' COO replied and continued to copy Plaintiff's email address.  Attached to the Kasindorf Decl. as Exhibit 4 is a true and correct copy of the email chain beginning on December 16, 2019.

28.     On December 16, 2019 Plaintiff's founder and CEO, Henry Kasindorf, replied to Ms. Lundgren and requested that Plaintiff's email address be removed from the email chain but my request went unanswered.  Attached to the Kasindorf Decl. as Exhibit 5 is a true and correct copy of Mr. Kasindorf's email to Ms. Lundgren, which also copied Defendants' corporate officers.

29.     On May 6, 2020, Plaintiff received another email from Mainfreight Inc. intended for Defendants, this time in connection with a request for payment.  The email cover sheet specifically identified Defendant "REMEDY DRINKS USA, LCC" with Plaintiff's email addresses info@remedyorganics.com.  Attached to the Kasindorf Decl. as Exhibit 6 is a true and

correct copy of the email cover sheet received by Mainfreight Inc. on May 6, 2020.

30.    On May 26, 2020 an Instagram user incorrectly tagged a health beverage sold by Defendants with Plaintiff's Instagram handle "@REMEDYORGANICS." Attached to the Kasindorf Decl. as Exhibit 7 is a true and correct copy of the May 26, 2020 Instagram post.

31.    On December 27, 2020 Plaintiff's Instagram handle was mistakenly tagged again in connection with Defendants' product. Attached to the Kasindorf Decl. as Exhibit 8 is a true and correct copy of the December 27, 2020 Instagram post.

32.    Moreover, in or about December 2020, Defendants updated their packaging to include the word "Organic" directly below the word "Remedy" on many of their products. Defendants also expanded their product line to include, in addition to kombucha and "live cultured drinks," cola, switchel/apple cider vinegar, teapache and kefir products. These actions further aggravated the confusing similarity between the parties' respective marks and goods.

33.    On January 7, 2021, Jenny Dye from Lineage Logistics apparently intended to email Defendants concerning a customs bond. However, in addition to emailing Defendants' corporate officers, Ms. Dye copied Mr. Kasindorf on her communication. Attached to the Kasindorf Decl. as Exhibit 9 is a true and correct copy of the email chain beginning on January 7, 2021.

34.    Upon information and belief, in or about February 2021 Defendants hired a Vice President of Sales for the United States. Also, in late June 2021, a press release stated that Defendants were launching fermented beverages, including kombucha (a sweetened tea drink), in the United States market. Attached to the Kasindorf Decl. as Exhibit 10 is a true and correct copy of the press release dated June 23, 2021.

35.    Almost immediately after Defendants expanded their sales team and added

kombucha to the offerings in the United States, Plaintiff learned of additional and more frequent instances of actual confusion between Defendants' brand and Plaintiff's brand.

36.     On July 28, 2021 a representative from Tops Supermarkets received a solicitation from Defendants to sell their kombucha beverage at Tops' stores.  In response, the Tops' representative emailed Chesapeake North Group and asked, "Is this the same company you represent?"  Chesapeake North Group is one of Plaintiff's marketing and advertising brokers and facilitated the placement of Plaintiff's products at Tops.  Attached to the Kasindorf Decl. as Exhibit 11 is a true and correct copy of the email chain between Tops and Chesapeake North Group.

37.     On August 31, 2021 a representative from Presence Marketing, the largest and most prominent marketing and advertising broker in the industry, contacted Plaintiff confused about Kombucha beverage samples that were being sent to retailers for product reviews.  The products being received were in fact samples from Defendants.  Plaintiff instructed Presence Marketing to alert their sales managers that the products did not belong to Plaintiff.  Attached to the Kasindorf Decl. as Exhibit 12 is a true and correct copy of the email chain beginning on August 31, 2021.

38.      On September 3, 2021 another representative from Presence Marketing relayed to Plaintiff his conversation with a San Francisco supermarket chain that received samples of what it believed were Plaintiff's new Kombucha beverage, but again the products were in fact samples from Defendants.  Attached to the Kasindorf Decl. as Exhibit 13 is a true and correct copy of the email chain beginning on September 3, 2021.

39.     Upon information and belief, Plaintiff suspects that there are also instances where its brand and the REMEDY ORGANICS Mark were confused with Defendants' brand.  Evidence of this confusion would be in the Defendants' possession, which Plaintiff believes will be revealed in discovery.

40.     Aside from specific instances of actual confusion, Plaintiff and Defendants both offer health beverages, which are similar in look and appearance and appeal to the same consumers.

41.     On Amazon's website, when searching for REMEDY ORGANICS, Defendants' products are identified as "Products related to this item."  Attached to the Kasindorf Decl. as Exhibit 14 is a true and correct copy of screenshot Plaintiff took on December 27, 2020 from www.amazon.com.

42.     As of September 22, 2021, Amazon.com offered both Plaintiff's products and Defendants' products at prices below fifty cents ($0.50) per fluid ounce.

43.     On January 30, 2020, Mr. Kasindorf received an email from Daniel Bookman, the Chief Investment Officer with Kin Group, an Australian investment firm.  Mr. Bookman's email stated that he worked with Remedy Australia.  Mr. Bookman proposed that Plaintiff and Remedy Australia enter into a co-existence agreement in the United States whereby each party would continue to use their respective trademarks regardless of the existence of confusion in the marketplace related to the companies' respective health beverages.

44.     On March 2, 2020, Mr. Kasindorf respectfully declined Mr. Bookman's offer and explained that Plaintiff is aware of actual instances of confusion between the REMEDY ORGANICS Mark and the Infringing Mark.

45.     On March 4, 2020, Mr. Bookman again proposed the idea of a co-existence agreement and offered financial compensation to Plaintiff to "show our good faith in pursuing this matter."  Mr. Bookman also stated that Remedy Australia "noted the USPTO's concerns of potential confusion, and you'll see in PTO records that Remedy Drinks is actively addressing those concerns and has limited its description of goods to avoid any conflict."

46.     On April 7, 2020, Mr. Kasindorf received a draft co-existence agreement from Mr. Bookman.  He rejected Defendants' offer again and explained Plaintiff's concern that its products were being merchandised side by side with Defendants in major retailers in the United States and that Remedy Organics was mistakenly copied on fifteen emails between December 2019 and April 2020 from Remedy Australia's freight companies.

47.     As an example of the side-by-side marketing of the parties' goods, attached to the Kasindorf Decl. as Exhibit 15 is a series of true and correct photographs, taken in April 2020 at a WalMart store in Saratoga Springs, New York, documenting that the goods were shelved in close proximity (either directly adjacent to or above and below) in the same refrigerated beverage case.

48.     On May 25, 2020 Mr. Bookman reached out to Mr. Kasindorf again and stated that one of Defendants' directors, Gary Cobbledick, was going to provide a further response "after Remedy's next Board meeting, which is in about 2 weeks."

49.     On December 7, 2020, having not received the promised response, Plaintiff's attorney at the time sent a cease and desist letter to Mr. Cobbledick and Mr. Bookman stating that Remedy Australia was willfully infringing on the REMEDY ORGANICS Mark and that Plaintiff was prepared to take legal action.

50.     Two weeks later, on December 21, 2020, Mr. Cobbledick responded and explained that his delayed response was due to the heavy impact the COVID-19 pandemic had on Defendants' business in Australia and asked for a further meeting to discuss the situation.

51.     Based on Mr. Cobbledick's and Mr. Bookman's representations to that date, Plaintiff believed that Remedy Australia would not continue to expand their product line or make any further attempt to enter the United States market with their products.

52.     Pursuant to Mr. Cobbledick's earlier request, a Zoom teleconference was held on

January 18, 2021.  Plaintiff requested that Remedy Australia change its name in the United States to prevent any further confusion between the brands.  Mr. Kasindorf followed the Zoom conference with an email restating Plaintiff's concern over the actual confusion caused by the Infringing Mark and the damage that it would cause to Plaintiff's brand as the companies continued to grow.

53.     About one month later, in February 2021, Mr. Cobbledick asked for another meeting "to discuss future options."  Mr. Kasindorf learned for the first time that Remedy Australia hired a new external CEO and took on a new investor, both of whom were based in the United States.  The investment group, L Catterton, is a well-known private equity fund that invests in consumer products and brands.

54.     Plaintiff also learned at this time that Remedy Australia formed at least one domestic subsidiary.

55.     Upon information and belief, Remedy Australia licenses the Infringing Mark to one or more of its subsidiaries in the U.S.

56.     Plaintiff also became aware that Defendants were hiring additional staff and rather than withdrawing their existing product line in the United States in the aftereffects of the COVID-19 pandemic, Defendants were expanding their product line and attempting to expand distribution of their products.

57.     At this point, Plaintiff was growing weary of Defendants' continuous and substantial delays in addressing the confusion caused by the Infringing Mark and suspicious of Remedy Australia's expansion into the United States market and recent investment by L Catterton (which signaled that further expansion was coming) and therefore declined an offer to meet until Plaintiff received a response as to whether Remedy Australia would change their name in the

United States and cease using the Infringing Mark.

58.     On March 5, 2021, Defendants' external CEO Cory Comstock sent Mr. Kasindorf a letter proposing a Joint Consent Agreement.  Mr. Comstock did not agree that Remedy Australia would stop using the Infringing Mark but offered what he claimed was an "open pathway to continue growing" and an "intended plan" to "easily define our use of Remedy."  Up to this point, efforts to resolve the dispute between the parties centered around Defendants limiting the categories of products that they would offer in the United States, eliminating certain competitive product lines, and Defendants offering to pay Plaintiff for the confusion and harm that had already occurred between the parties' brands and products. Ultimately, Defendants would not agree to a more narrowly defined category use that was acceptable to Plaintiff given the growth that both brands are experiencing.

59.     Defendants also more recently appear to be expanding and investing significant resources toward their product line in the United States, which has led to frequent instances of actual confusion.

60.     On April 15, 2021, following a meeting between the parties, Mr. Comstock sent Mr. Kasindorf a revised Joint Consent Agreement proposal.  However, the proposal still did not contain any promise from Remedy Australia to change its name in the United States market or stop using the Infringing Mark on its products and was thus rejected by Plaintiff.

61.     Injunctive relief is necessary to stop Defendants' willful infringement of the REMEDY ORGANICS Mark, the confusion in the marketplace that it has caused and continues to cause, and the ongoing damage to Plaintiff's brand.

62.     Under these circumstances monetary damages, which would be difficult to calculate, would not make Plaintiff whole.

63.     The value of Plaintiff's business will be negatively affected if Defendants are permitted to continue to use the Infringing Mark because Plaintiff will not be in control of its own reputation in the marketplace, as shown by the numerous instances of actual confusion that have already occurred, and some incalculable portion of Plaintiff's own hard-earned goodwill with beverage consumers will unjustly inure to the benefit of Defendants.

64.     Continued use of the Infringing Mark will compromise the value of Plaintiff's brand in the United States where Plaintiff's most tangible value creation opportunity exists.

### FIRST CAUSE OF ACTION
### (Trademark Infringement of Registered REMEDY ORGANICS Mark)

65.     Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

66.     Since at least as early as May 2017, and beginning on a date long prior to any date on which Defendants can establish they made use of the infringing REMEDY DRINKS mark in U.S. commerce, Remedy has continuously used its REMEDY ORGANICS Mark in commerce in connection with the marketing, promotion, and sale of Remedy's beverages throughout the United States.

67.     Remedy's use of the REMEDY ORGANICS Mark with Remedy's goods has been valid and continuous since that time and has not been abandoned.

68.     Remedy's first use of the REMEDY ORGANICS Mark in commerce is earlier than any date of first use Defendant may establish for the REMEDY DRINKS mark in U.S commerce.

69.     Remedy has priority based on its prior use of the REMEDY ORGANICS Mark in U.S. commerce in connection with Remedy's beverage products before any date of first use that Defendants may establish for their infringing REMEDY DRINKS Mark.

70.     Since at least as early as May 2017, Plaintiff has engaged in extensive, nationwide

advertising, promotion and use of its REMEDY ORGANICS mark in connection with Plaintiff's goods, and Plaintiff has invested a substantial amount of time and money to advertise and promote its goods under the REMEDY ORGANICS mark.

71.     By reason of years of continuous advertising, promotion, use, and public exposure, Plaintiff's REMEDY ORGANICS mark has achieved favorable public recognition as a mark exclusively identified with Plaintiff, and with Plaintiff's goods, and designates goods sold with the mark as goods of the highest quality originating with Plaintiff.

72.     Plaintiff has had substantial nationwide sales of its goods under the REMEDY ORGANICS mark.  Plaintiff has acquired a considerable and valuable goodwill and wide-scale recognition for the REMEDY ORGANICS mark, which is an asset of great value.

73.     Plaintiff has taken reasonable and substantial steps to protect the value and exclusivity of the REMEDY ORGANICS trademark, including securing federal registration. Plaintiff is entitled to control all use in U.S. commerce of the REMEDY ORGANICS mark and confusingly similar marks in connection with confusingly similar goods.

74.     Subsequent to Plaintiff's adoption and use of the REMEDY ORGANICS mark, Defendants, without Plaintiff's authorization, began to use the confusingly similar REMEDY DRINKS mark to market, promote, and offer for sale its beverages throughout the United States.

75.     Defendants' use of the REMEDY DRINKS mark in connection with their goods is likely to cause confusion, mistake or deception with Plaintiff's REMEDY ORGANICS mark in the minds of prospective purchasers as to the origin or source of Defendants' beverages. Consumers familiar with Plaintiff's goods are likely to mistakenly believe that Defendants' goods, services, or commercial activities are sponsored, authorized, endorsed, affiliated with, associated with or otherwise approved by Plaintiff.

76. Defendant uses the REMEDY DRINKS mark in connection with the same or confusingly similar types of goods as are sold by Plaintiff, in interstate commerce and in the same channels of trade as Plaintiff and to the same classes of purchasers as Plaintiff's goods.

77. The consumer confusion, mistake or deception caused by Defendants' use of the REMEDY DRINKS mark in connection with Defendants' goods is likely to result in loss of revenues to Plaintiff and/or damage Plaintiff's reputation and to cause a significant level of sales by Defendants to consumers who would be confused into believing that Plaintiff is the source of Defendants' goods. As a result, Defendants' use of the REMEDY DRINKS mark will result in Defendants trading off and benefiting from the goodwill associated with Plaintiff.

78. Any faults in the quality of Defendants' beverages, which often sell for lower prices than Plaintiff's beverages, are likely to reflect negatively upon, tarnish and/or seriously injure the reputation that Plaintiff has established for Plaintiff's goods under the REMEDY ORGANICS mark.

79. Upon Information and belief, Defendants adopted and used the REMEDY DRINKS mark in the U.S. with full knowledge of Plaintiff's prior extensive and exclusive use of the REMEDY ORGANICS mark in the U.S. in connection with Plaintiff's marketing and selling of beverages.

80. Defendants' unauthorized and tortious conduct has deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of Plaintiff's products and services offered under the REMEDY ORGANICS mark, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

81. Defendants have willfully and knowingly violated and infringed, and threaten to further violate and infringe, Plaintiff's rights in the mark REMEDY ORGANICS in violation of

Section 32 of the Lanham Act, 15 U.S.C. § 1114, by confusing, deceiving and/or misleading Defendants' customers, the relevant industry and the public at large, and/or wrongfully trading on the goodwill and reputation of Plaintiff.

82.    Defendants will continue to unjustly benefit, at Plaintiff's expense, from gains, profits and/or advantages derived from Defendants' knowing use of the confusingly similar REMEDY DRINKS mark in connection with the marketing, promotion and sale of Defendants' goods in the U.S.

83.    Defendants' aforesaid acts have caused and continue to cause great and irreparable damage to Plaintiff, including the continuing loss of the goodwill and reputation Plaintiff has established in the REMEDY ORGANICS mark. This continuing loss of goodwill cannot be properly calculated, and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law, and said irreparable harm and injury will continue unless enjoined by this Court.

84.    As a result of the foregoing, a remedy at law is not adequate to compensate Plaintiff for the injury caused and threatened by Defendants' infringement of Plaintiff's trademark rights.

85.    As a result of the foregoing, Plaintiff demands all monetary and preliminary and permanent injunctive relief permitted by applicable law, including without limitation attorney's fees and full costs.

86.    Plaintiff demands trial by jury of all issues so triable.

### SECOND CAUSE OF ACTION
### (Federal Unfair Competition/False Designation of Origin)

87.    Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

88.    Defendants, by the acts alleged herein, have falsely described or represented their

products as goods originating from or associated with Plaintiff and have, by causing such products to enter into interstate commerce, created a likelihood that consumers will falsely believe that Defendants' goods have their origin with Plaintiff or are affiliated or associated with Plaintiff. Plaintiff has been, is being and is likely to be damaged by the use by Defendants of the aforesaid false description or representation in U.S. commerce.

89.    At all relevant times, Defendants were aware of Plaintiff's use of the REMEDY ORGANICS trademark.

90.    Defendants' use of the trademark REMEDY DRINKS in connection with its goods misappropriates the goodwill generated by Plaintiff through its use of the REMEDY ORGANICS Mark, for Defendants' own commercial advantage and to the detriment of Plaintiff, and was done without the authorization or consent of Plaintiff.

91.    Through the foregoing acts, Defendants are confusing the purchasing public, and attempting to capitalize on Plaintiff's goodwill, to falsely imply that some association exists between Plaintiff and/or Plaintiff and Defendants.

92.    Defendants have acted intentionally and willfully by their use of the mark REMEDY DRINKS in connection with Defendants' goods in interstate commerce.

93.    At all relevant times, Defendants' use of the REMEDY DRINKS mark was wrongful and without authorization.

94.    Defendants' aforesaid acts misrepresent the nature, characteristics and quality of Defendants' goods.

95.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.    Defendants' aforesaid acts have caused and are causing irreparable damage to

Plaintiff and unless enjoined by this Court, said irreparable injury will continue.

97.     Plaintiff demands all monetary and preliminary and permanent injunctive relief permitted by applicable law, including without limitation attorney's fees and full costs.

98.     Plaintiff demands trial by jury of all issues so triable.

### THIRD CAUSE OF ACTION
**(Common Law Trademark Infringement Under New Jersey Law)**

99.     Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

100.    Plaintiff owns all right, title and interest in and to the REMEDY ORGANICS trademark as applied to or used in connection with beverages.

101.    Defendants, by their aforesaid acts, (hereafter "Defendants' Infringing Activities") have been infringing and continue to infringe upon Plaintiff's common-law trademark in New Jersey and elsewhere in the United States by selling or offering to sell goods that are confusingly similar or closely related to Plaintiff's REMEDY ORGANICS goods using the confusingly similar REMEDY DRINKS mark.

102.    Defendants' Infringing Activities have not been approved or otherwise consented to by Plaintiff.

103.    Defendants' Infringing Activities have caused, are likely to cause, and are causing confusion, mistake or deception on the part of consumers regarding the origin and quality of Defendants' goods promoted under the mark REMEDY DRINKS.

104.    Defendants' Infringing Activities have caused, are likely to cause, and are causing confusion, mistake or deception on the part of consumers regarding the association (or lack therof) of Defendants with Plaintiff, and as to the origin, sponsorship or approval of Defendants' goods by Plaintiff.

105.    Defendants' Infringing Activities misrepresent the nature, characteristics, qualities, or origin of Defendants' goods.

106.    Defendants' Infringing Activities have caused, are likely to cause, and are causing damage to Plaintiff in an amount which is difficult to quantify.

107.    Defendants' Infringing Activities have caused, are likely to cause, and are causing irreparable harm to Plaintiff and Plaintiff's goodwill and reputation.

108.    Defendants' Infringing Activities constitute common law infringement of Plaintiff's REMEDY ORGANICS trademark under the law of New Jersey.

109.    Defendant has been infringing and continues to infringe Plaintiff's trademark rights with full knowledge of Plaintiff's common law rights and knowing that the REMEDY ORGANICS mark is associated exclusively with Plaintiff and designates the goods of Plaintiff.

110.    Defendants' conduct is intentional and willful and is undertaken with intent to reap the benefit of Plaintiff's goodwill in its REMEDY ORGANICS Mark.

111.    Unless enjoined by the Court, Defendants will continue to engage in such infringing activities, irreparably harm and injure Plaintiff, and deceive and confuse the public.  Plaintiff has no adequate remedy at law in that Defendants will continue their infringing activities as alleged above, unless enjoined.

112.    Plaintiff demands all monetary and preliminary and permanent injunctive relief permitted by applicable law, including without limitation attorney's fees and full costs.

113.    Plaintiff demands trial by jury of all issues so triable.

### FOURTH CAUSE OF ACTION
**(Common Law Unfair Competition Under New Jersey Law)**

114.    Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

19

115.    The actions of Defendants as alleged above create and have created a likelihood of confusion and actual confusion by misleading the public as to the source, sponsorship, affiliation or association of their goods, in violation of the common law of unfair competition of the State of New Jersey.

116.    The actions of Defendants as alleged above constitute misappropriation of the goodwill of Plaintiff in violation of the common law of unfair competition of the State of New Jersey.

117.    Upon information and belief, the actions of Defendants as alleged above were committed with the intention of passing off or palming off their products as if such products were those of Plaintiff, in violation of the common law of unfair competition of the State of New Jersey.

118.    Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to Plaintiff if not enjoined by this Court.

119.    Plaintiff has no adequate remedy at law.

120.    Plaintiff demands all monetary and preliminary and permanent injunctive relief permitted by applicable law, including without limitation attorney's fees and full costs.

121.    Plaintiff demands trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court order the following relief: all monetary and injunctive relief permitted by applicable law, including without limitation monetary damages in an amount to be determined at trial, plus attorney's fees and full costs, and a preliminary and permanent injunction as follows:

I.    Ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be temporarily restrained, and preliminarily and

permanently enjoined, from: (a) using any reproduction, counterfeit, copy, or colorable imitation of the Infringing Mark to identify any goods; (b) engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Plaintiff's business reputation or weaken the distinctive quality of the Plaintiff's Mark; (c) using a false description or representation including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff or sponsored by or associated with Plaintiff and from offering such goods in commerce; (d) further infringing the Plaintiff's rights by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products bearing the Infringing Mark; (e) using the Infringing Mark or any simulation, reproduction, counterfeit, copy or colorable imitation thereof in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff or to any goods sold, manufactured, sponsored or approved by, or connected with the Plaintiff; (f) making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold or offered for sale by Defendants are in any way associated or connected with Plaintiff, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff; (g) engaging in any conduct constituting an infringement of the Plaintiff's Mark; (h) using or continuing to use the Infringing Mark or any variation thereof on the Internet (either in the text of a website, as a domain name, or as a key word, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index); (i) hosting or acting as Internet Service Provider for, or operating any websites, that offer for sale any

products bearing the Infringing Mark; (j) using any email addresses to offer for sale any products bearing the Infringing Mark; (k) having any connection whatsoever with any websites that offer for sale any merchandise bearing the Infringing Mark; (l) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all products bearing the Infringing Mark; and (m) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (m).

II.     Directing that Defendants take all steps necessary to remove from all websites and social media channels or accounts they own or control all text or other media offering for sale or promoting any goods bearing the Infringing Mark.

III.     Directing that Defendants, within seven (7) days of the court's Order, file and serve Plaintiff with a sworn statement setting forth in detail the manner in which Defendants have complied with this injunction pursuant to 15 U.S.C. § 1116(a).

IV.     Directing that Defendants deliver up for destruction to Plaintiff all products and advertisements in their possession or under their control bearing the Infringing Mark, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. §1118.

V.     Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold or otherwise marketed or promoted by Defendants are authorized by Plaintiff or related in any way to Plaintiff's products.

VI.     Ordering that Plaintiff recover the costs of this action, together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. §1117.

VII.    Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  September 23, 2021

                                    Respectfully submitted,

                                    **REITLER KAILAS & ROSENBLATT LLP**

                                     *s/ Brett Van Benthysen*
                                    Brian D. Caplan (pending pro hac vice admission)
                                    Robert W. Clarida (pending pro hac vice admission)
                                    Brett Van Benthysen
                                    885 Third Avenue, 20th Floor
                                    New York, New York 10022
                                    Phone:  212-209-3050
                                    Fax:  212-371-5500
                                    Email:  bcaplan@reitlerlaw.com
                                            rclarida@reitlerlaw.com
                                            bvanbnthysen@reitlerlaw.com
                                    *Attorneys for Soulful Nutrition Inc., d/b/a Remedy Organics*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SOULFUL NUTRITION INC., d/b/a REMEDY ORGANICS, <br><br> Plaintiff, <br><br> v. <br><br> REMEDY DRINKS PTY., LTD., REMEDY DRINKS USA, LLC, and REMEDY DRINKS USA, LLC, <br><br> Defendants. | Civil Action No. 2:21-cv-17455 (ES-LDW) <br><br><br> **STIPULATED DISCOVERY CONFIDENTIALITY ORDER** |

It appearing that discovery in the above-captioned action is likely to involve the disclosure of confidential information, it is ORDERED as follows:

1.  Any party to this litigation and any third-party shall have the right to designate as "Confidential" and subject to this Order any information, document, or thing, or portion of any document or thing: (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information, or (b) that contains private or confidential personal information, or (c) that contains information received in confidence from third parties, or (d) which the producing party otherwise believes in good faith to be entitled to protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and Local Civil Rule 5.3. Any party to this litigation or any third party covered by this Order, who produces or discloses any Confidential material, including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony, shall mark the same with the foregoing or similar legend: "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Confidential").

2.        Any party to this litigation and any third-party shall have the right to designate as "Highly Confidential - Attorneys' Eyes Only" and subject to this Order any information, document, or thing, or portion of any document or thing that contains highly sensitive business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the designating party.  Any party to this litigation or any third party who is covered by this Order, who produces or discloses any Attorneys' Eyes Only material, including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony, shall mark the same with the foregoing or similar legend: "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY – SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Attorneys' Eyes Only").

3.        All Confidential and Attorneys' Eyes Only material shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in Paragraph 4, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court.  It is, however, understood that counsel for a party may give advice and opinions to his or her client solely relating to the above-captioned action based on his or her evaluation of Confidential and/or Attorneys' Eyes Only material, provided that such advice and opinions shall not reveal the content of such Confidential and/or Attorneys' Eyes Only material except by prior written agreement of counsel for the parties, or by Order of the Court.

4.      Confidential material and the contents of Confidential material may be disclosed only to the following individuals under the following conditions:

a.  Outside counsel (herein defined as any attorney at the parties' outside law firms) and relevant in-house counsel for the parties;

b.  Outside experts or consultants retained by outside counsel for purposes of this action, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A;

c.  Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

d.  The Court and court personnel;

e.  Any deponent may be shown or examined on any information, document or thing designated Confidential if it appears that the witness authored or received a copy of it, was involved in the subject matter described therein or is employed by the party who produced the information, document or thing, or if the producing party consents to such disclosure;

f.  Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings including, but not limited to, court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials; and,

g. The parties. In the case of parties that are corporations or other business entities, "party" shall mean executives who are required to participate in decisions with reference to this lawsuit.

5. Confidential material shall be used only by individuals permitted access to it under Paragraph 4. Confidential material, copies thereof, and the information contained therein, shall not be disclosed in any manner to any other individual, until and unless (a) outside counsel for the party asserting confidentiality waives the claim of confidentiality, or (b) the Court orders such disclosure.

6. With respect to any depositions that involve a disclosure of Confidential material of a party to this action, such party shall have until thirty (30) days after receipt of the deposition transcript within which to inform all other parties that portions of the transcript are to be designated Confidential, which period may be extended by agreement of the parties. No such deposition transcript shall be disclosed to any individual other than the individuals described in Paragraph 4(a), (b), (c), (d) and (f) above and the deponent during these thirty (30) days, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in Paragraph 4(a), (b), (c), (d) and (f) above during said thirty (30) days. Upon being informed that certain portions of a deposition are to be designated as Confidential, all parties shall immediately cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with Paragraphs 3 and 4.

7. Material produced and marked as Highly Confidential - Attorneys' Eyes Only may be disclosed only to outside counsel for the receiving party and to such other persons as

counsel for the producing party agrees in advance or as Ordered by the Court, and to the following individuals under the following conditions:

    a.  Outside counsel (herein defined as any attorney at the parties' outside law firms);

    b.  Outside experts or consultants retained by outside counsel for purposes of this action, provided they are not an employee or consultant of either party and they have signed a non-disclosure agreement in the form attached hereto as Exhibit A;

    c.  The Court and court personnel;

    d.  Any deponent may be shown or examined on any information, document or thing designated Highly Confidential – Attorneys' Eyes Only if it appears that the witness authored or received a copy of it, was involved in the subject matter described therein, or if the producing party consents to such disclosure; and,

    e.  Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings including, but not limited to, court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials.

8.    Attorneys' Eyes Only material shall be used only by individuals permitted access to it under Paragraph 7.  Attorneys' Eyes Only materials, copies thereof, and the information contained therein, shall not be disclosed in any manner to any other individual, until and unless (a) outside counsel for the party asserting confidentiality waives the claim of confidentiality, or (b) the Court orders such disclosure.

9.      With respect to any depositions that involve a disclosure of Attorneys' Eyes Only material of a party to this action, such party shall have until thirty (30) days after receipt of the deposition transcript within which to inform all other parties that portions of the transcript are to be designated Attorneys' Eyes Only, which period may be extended by agreement of the parties. No such deposition transcript shall be disclosed to any individual other than the individuals described in Paragraph 7(a), (b), (c), (d), and (f) above and the deponent during these thirty (30) days, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in Paragraph 7(a), (b), (c), (d), and (f) above during the said thirty (30) days.  Upon being informed that certain portions of a deposition are to be designated as Attorneys' Eyes Only, all parties shall immediately cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with Paragraphs 3 and 7.

10.     If counsel for a party receiving documents or information designated as Confidential or Attorneys' Eyes Only hereunder objects to such designation of any or all of such items, the following procedure shall apply:

a.   Counsel for the objecting party shall serve on the designating party or third party a written objection to such designation, which shall describe with particularity the documents or information in question and shall state the grounds for objection. Counsel for the designating party or third party shall respond in writing to such objection within 14 days, and shall state with particularity the grounds for asserting that the document or information is Confidential or Attorneys' Eyes Only.  If no timely written response is made to the objection, the challenged designation will be deemed to be void.  If the designating party or nonparty makes

a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute.

b. If a dispute as to a Confidential or Attorneys' Eyes Only designation of a document or item of information cannot be resolved by agreement, the proponent of the designation being challenged shall present the dispute to the Court initially by telephone or letter, in accordance with Local Civil Rule 37.1(a)(1), before filing a formal motion for an order regarding the challenged designation. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

11. Any document designated "Confidential" or "Attorneys' Eyes Only" by a party or non-party and which document is filed with the Court shall be filed under seal, in accordance with Local Civil Rule 5.3.

12. The parties recognize that, in view of the expedited discovery for and briefing schedule on the Preliminary Injunction in this matter, confidentiality designations may not have been finalized and/or disputes may not have been resolved at the time that briefing is required to be filed. Accordingly, the parties agree that, for all documents filed with the Court in advance of or in connection with the resolution of Plaintiff's Motion for a Preliminary Injunction, if the filing party has a good faith belief that documents or testimony being cited or discussed may contain information that is protected from disclosure under this Order and/or is likely to be designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, the filing will be made under seal on the date due under the Court's October 1, 2021 Order (Dkt. No. 21). Thereafter, the parties will meet and confer on any open confidentiality questions and prepare a joint submission to file public versions of all filings with redactions as necessary to

protect information that has been designated as CONFIDENTIAL OR HIGHLY
CONFIDENTIAL-ATTORNEYS' EYES ONLY.  After the Motion for a Preliminary Injunction
is resolved, the parties will return to following the sealing procedures set forth in the Local Rules
without prejudice to future applications to file additional documents under seal as necessary.

13.     If the need arises during trial or at any Hearing before the Court for any party to
disclose Confidential or Attorneys' Eyes Only information, it may do so only after giving notice
to the producing party and as directed by the Court.

14.     To the extent consistent with applicable law, the inadvertent or unintentional
disclosure of Confidential or Attorneys' Eyes Only material that should have been designated as
such, regardless of whether the information, document or thing was so designated at the time of
disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality,
either as to the specific information, document or thing disclosed or as to any other material or
information concerning the same or related subject matter.  Such inadvertent or unintentional
disclosure may be rectified by notifying in writing counsel for all parties to whom the material
was disclosed that the material should have been designated Confidential or Attorneys' Eyes
Only within a reasonable time after disclosure. Such notice shall constitute a designation of the
information, document or thing as Confidential or Attorneys' Eyes Only under this Discovery
Confidentiality Order.

15.     When the inadvertent or mistaken disclosure of any information, document or
thing protected by privilege or work-product immunity is discovered by the producing party and
brought to the attention of the receiving party, the receiving party's treatment of such material
shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). Such inadvertent or
mistaken disclosure of such information, document or thing shall not by itself constitute a waiver

by the producing party of any claims of privilege or work-product immunity. However, nothing herein restricts the right of the receiving party to challenge the producing party's claim of privilege if appropriate within a reasonable time after receiving notice of the inadvertent or mistaken disclosure.

16.     No information that is in the public domain or which is already known by the receiving party through proper means or which is or becomes available to a party from a source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Confidential material under this Discovery Confidentiality Order.

17.     This Discovery Confidentiality Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Discovery Confidentiality Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms.

18.     This Discovery Confidentiality Order shall survive the termination of this action and shall remain in full force and effect unless modified by an Order of this Court or by the written stipulation of the parties filed with the Court.

19.     Upon final conclusion of this litigation, each party or other individual subject to the terms hereof shall be under an obligation to assemble and to return to the originating source all originals and unmarked copies of documents and things containing Confidential or Attorneys' Eyes Only material and to destroy, should such source so request, all copies of Confidential or Attorneys' Eyes Only material that contain and/or constitute attorney work product as well as excerpts, summaries and digests revealing Confidential or Attorneys' Eyes Only material; provided, however, that counsel may retain complete copies of all transcripts and pleadings

including any exhibits attached thereto for archival purposes, subject to the provisions of this Discovery Confidentiality Order.  To the extent a party requests the return of Confidential or Attorneys' Eyes Only material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals therefrom and all related proceedings, the party shall file a motion seeking such relief.

**AGREED AND STIPULATED TO**:

October 29, 2021

By: */s/ Liza M. Walsh*
Liza M. Walsh
William T. Walsh, Jr.
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

*Counsel for Defendants*
*Remedy Drinks Pty., Ltd., and Remedy Drinks USA,*
*LLC*

*Of Counsel*:

Howard S. Hogan (*pro hac vice*)
GIBSON DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 887-3640
Email: hhogan@gibsondunn.com

Laura C. Mumm (*pro hac vice*)
GIBSON DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY 10166
(212) 351-2404
Email: lmumm@gibsondunn.com

By: */s/ Brett Van Benthysen*
Brian D. Caplan
Robert W. Clarida
Brett Van Benthysen
885 Third Avenue, 20th Floor
New York, New York 10022
(212) 209-3050

*Counsel for Plaintiff*
*Soulful Nutrition Inc. d/b/a Remedy*
*Organics*

**IT IS SO ORDERED**

Dated:  November 2  , 2021

_Leda Dunn Wettre_
_____
The Honorable Leda Dunn Wettre, U.S.M.J.

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SOULFUL NUTRITION INC., d/b/a REMEDY ORGANICS,<br><br>Plaintiff,<br><br>v.<br><br>REMEDY DRINKS PTY., LTD., REMEDY DRINKS USA, LLC, and REMEDY DRINKS USA, LLC,<br><br>Defendants. | Civil Action No. 2:21-cv-17455<br>(ES-LDW)<br><br>**AGREEMENT TO BE BOUND BY DISCOVERY CONFIDENTIALITY ORDER** |

I, _____, being duly sworn, state that:

1.  My address is _____.

2.  My present employer is _____ and the address of my present employment is _____.

3.  My present occupation or job description is _____.

4.  I have carefully read and understood the provisions of the Discovery Confidentiality Order in this case signed by the Court, and I will comply with all provisions of the Discovery Confidentiality Order.

5.  I will hold in confidence and not disclose to anyone not qualified under the Discovery Confidentiality Order any Confidential and/or Highly Confidential – Attorneys' Eyes Only Material or any words, summaries, abstracts, or indices of Confidential Information and/or Highly Confidential – Attorneys' Eyes Only Information disclosed to me.

6.  I will limit use of Confidential and/or Highly Confidential – Attorneys' Eyes Only Material disclosed to me solely for purpose of this action.

7.      No later than the final conclusion of the case, I will return all Confidential and/or

Highly Confidential – Attorneys' Eyes Only Material and summaries, abstracts, and indices

thereof which come into my possession, and documents or things which I have prepared relating

thereto, to counsel for the party for whom I was employed or retained.


I declare under penalty of perjury that the foregoing is true and correct.

Dated:_____ _____[Name]

# EXHIBIT 2

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:21-cv-17455 (ES-LDW)

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* <u>Delta Air Lines, Inc. c/o Corporation Service Company</u> on *(date)* <u>May 5, 2023</u>.

[X]   I served the subpoena by delivering a copy to the named individual as follows: <u>Jane Doe</u> on *(date)* <u>Mon, May 08 2023</u>; or

[ ]   I returned the subpoena unexecuted because: _____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: 05/10/2023

_____
*Server's signature*

Thomas Newton
_____
*Printed name and title*

107 S West St #417, Alexandria, VA 22314
_____
*Server's address*

Additional information regarding attempted service, etc.:
1) Successful Attempt: May 8, 2023, 12:04 pm EDT at 251 LITTLE FALLS DR, WILMINGTON, DE 19808-1674 received by Refused Name. Age: 50; Ethnicity: Caucasian; Gender: Female; Weight: 185; Height: 5'6"; Hair: Brown; Eyes: Brown; Relationship: Litigation Management Representative ;

# EXHIBIT 3

**Tatsuya Adachi**

| | |
|---|---|
| **From:** | Woolley, Monica Limeng <MWoolley@gibsondunn.com> |
| **Sent:** | Thursday, May 18, 2023 11:51 PM |
| **To:** | Lauren B. Emerson; Wolek, Adam; Sabol, Lauren; Henry Gabathuler; Tatsuya Adachi; Stefanie M. Garibyan; LeLitPara; Sara Gruber; Lori Cooper |
| **Cc:** | Hogan, Howard S.; Sullivan, Connor S.; Ferguson, Andrew D.; Fishman, Ariel M.; lwalsh@walsh.law; HRuiz@walsh.law; Barbara Troyan |
| **Subject:** | Soulful Nutrition v. Remedy Drinks - Delta Air Lines Production |
| **Attachments:** | Attachments.html; 2023.05.18 Delta Production Cover Letter.pdf |

 Counsel,

We represent Delta Air Lines, Inc. ("Delta") with respect to your subpoena to Delta in connection with this litigation.  We are providing here a declaration from Delta Manager of In-Flight Service Brand Strategy Suzanne Ferguson, including a production of documents in response to Soulful's subpoena attached as exhibits to the declaration.  Delta believes its good-faith search for and production of documents and provision of testimony in the attached declaration constitutes a good-faith effort to comply with your subpoena.  Delta does not believe it is reasonable or appropriate to impose any additional discovery burden on Delta under the circumstances in light of Delta's nonparty status and given the extremely limited relevance of any information in Delta's possession, custody, or control to this dispute.

---

### Citrix Attachments                          Expires June 17, 2023

DAL001.zip                                                          4 MB

**Download Attachments**

Monica Woolley uses Citrix Files to share documents securely.

---

Regards,

**Monica Limeng Woolley**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3758 • Fax +1 202.831.6128
MWoolley@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

EXHIBIT 4

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Tel 202.955.8500
www.gibsondunn.com

Monica Limeng Woolley
Direct: +1 202.887.3758
Fax: +1 202.831.6128
MWoolley@gibsondunn.com

May 18, 2023

<u>VIA E-MAIL</u>

Lauren Emerson
Leason Ellis LLP
One Barker Avenue
White Plains, New York 10601

***Re:  <u>Soulful Nutrition Inc. d/b/a Remedy Organics v. Remedy Drinks Pty., Ltd., et al., No. 2:21-cv-17455 (ES/LDW)</u>***

Dear Counsel:

On behalf of our client, Delta Air Lines, Inc. ("Delta"), we are producing documents and information in response to your May 5, 2023 Subpoena and the accompanying Requests for the Production of Documents in connection with the above-captioned matter.  The Bates range for this production is DAL_0000001 to DAL_0000022.  We are sending the documents and information via ShareFile, a link to which will be sent to all counsel of record via email under separate cover.

We have designated the documents as Confidential, in accordance with the agreed confidentiality order in this matter.  You must treat the documents in accordance with these designations.  Delta will vigorously pursue appropriate remedies in the case of any breach of these obligations.

This production is not intended to and does not waive any applicable privilege or protection, including without limitation the attorney-client privilege or work product protection.  As provided in Paragraph 14 and 15 of the confidentiality order, inadvertent production of any document or information that may be subject to a claim of privilege or other protection from disclosure is not intended to constitute a waiver of any immunity or privilege as to any portion of any such document or any other document, whether involving the same or different subject matter.  Delta specifically reserves the right to supplement or correct the production.

Sincerely,

Monica Limeng Woolley

# EXHIBIT 5



One Barker Avenue
White Plains, New York 10601
T    914.821.3079
gabathuler@leasonellis.com

**Henry A. Gabathuler**
PARTNER

May 22, 2023

Howard Hogan, Esq.
Gibson Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Re: *Soulful Nutrition Inc. v. Remedy Drinks Pty. Ltd, et al.*, No. 2:21-cv-17455 (ES-LDW)

Dear Counsel:

Thank you for providing Delta Air Lines, Inc.'s ("Delta") response to Plaintiff's subpoena (the "Subpoena") in the subject action between Soulful Nutrition Inc. d/b/a Remedy Organics ("Remedy Organics" or "Plaintiff") and Remedy Drinks Pty. Ltd. and Remedy Drinks USA LLC ("Defendants" or "Remedy Drinks"). Unfortunately, the declaration of Suzanne Ferguson and the few emails attached thereto do not constitute a good-faith effort by Delta to comply with the Subpoena for at least the reasons noted below.

Ms. Ferguson's declaration indicates that she searched "[her] records for all communications with or about either party in this litigation" and located only the few emails between her and Remedy Organics that are attached to the declaration. However, Ms. Ferguson is just one Delta employee and the subpoena *to Delta* called for, *inter alia*:

- documents to, from, cc, or bcc to an email address ending in "@remedydrinks.com."

- documents referring to both Plaintiff or Plaintiff's Goods and Services on the one hand and Defendant or Defendant's Goods and Services on the other hand.

- documents concerning potential uncertainty, mistake, or confusion of Delta representatives Suzanne Ferguson and/or Ryan Hennen as between Plaintiff and Defendant and/or as between Plaintiff's Goods and Services and Defendant's Goods and Services occurring at the Natural Products Expo East show held September 28-30, 2022.

Conspicuously absent from Delta's response to the Subpoena is any communication with or about Remedy Drinks, or any information from a Delta employee aside from Ms. Ferguson (e.g., Mr. Hennen). Also absent from Ms. Ferguson's declaration is any indication as to whether she or Mr. Hennen visited Remedy Drinks' booth at the Natural Products Expo East show held September 28-30, 2022, or documents relating to any such visit. Among other things, defense witnesses have testified to the occurrence of a subsequent meeting at Expo West, and a later meeting after that— both of which may have involved a new Delta buyer; as such, we are hard pressed to believe that the document production received to date is reasonably comprehensive.

# LEASON ELLIS

Howard Hogan, Esq.
May 22, 2023
Page 2

We are entitled to probe the instance of potential confusion by Ms. Ferguson and/or Mr. Hennen, and the impact of any such confusion within Delta as between Plaintiff and Defendants or their goods.  We cannot be reasonably expected to accept Ms. Ferguson's incomplete declaration as fulfilling Delta's modest obligations under the Subpoena.  Accordingly, we require that Delta at least supplement its response with: all correspondence between Delta and Remedy Drinks; any documents referring to both Plaintiff, or Plaintiff's goods on the one hand and Defendant or Defendant's goods on the other hand; and documents or information relating to any meetings between Delta with Remedy Drinks.

Lastly, Ms. Ferguson's declaration volunteers opinions as to purported differences between Remedy Organics' and Remedy Drinks' products and visual branding. See e.g., Ferguson Decl. at 6.  Such opinions, in addition to Delta's aforementioned omissions, further warrant our proceeding with oral examination of Delta pursuant to the Subpoena.

Please contact us to confirm Delta will supplement its response to the Subpoena as we require.  Should you disagree with our requests, or wish to discuss Delta's compliance with the Subpoena, we are available to meet and confer on this issue tomorrow (5/23/2023).

Best regards,

Henry A. Gabathuler

# EXHIBIT 6

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Tel 202.955.8500
www.gibsondunn.com

Howard S. Hogan
Direct: +1 202.887.3640
Fax: +1 202.530.9550
HHogan@gibsondunn.com

May 23, 2023

<u>VIA E-MAIL</u>

Henry A. Gabathuler
Leason Ellis LLP
One Barker Avenue
White Plains, New York 10601

**Re:  *Soulful Nutrition Inc. d/b/a Remedy Organics v. Remedy Drinks Pty., Ltd., et al.,
No. 2:21-cv-17455 (ES/LDW)***

Counsel,

We write in response to your letter received yesterday, May 22, 2023, regarding Delta Air
Lines, Inc.'s ("Delta") response to your subpoena to Delta in connection with the above-
captioned litigation.

Delta is a nonparty in this case.  It is not surprising that Delta has a limited number of
documents in its possession that are relevant to this litigation and responsive to Plaintiff's
subpoena.  Delta is confident that it has satisfied its obligation to respond to Plaintiff's
subpoena by conducting a good-faith search of its documents and producing the responsive,
non-privileged documents in its records.  As your letter states, the conversation between
representatives of Delta and representatives of Remedy Organics that Plaintiff is interested in
took place in September of last year.  Plaintiff has had eight months to seek evidence from
Delta, but waited to serve a subpoena until three weeks before the close of discovery in this
case.  Plaintiff's delay does not justify placing an additional burden on Delta if Plaintiff has
now decided it lacks sufficient evidence to support its claims regarding Delta.  Indeed, quite
the opposite; courts in the District of New Jersey "afford greater protection to non-parties in
discovery, and nonparty subpoenas must meet a higher standard of relevance than subpoenas
directed toward parties."  *Conforti v. St. Joseph's Healthcare Sys., Inc.*, 2019 WL 3847994,
at *2 (D.N.J. Aug. 15, 2019); *see also Burgess v. Galloway*, 2021 WL 2661290, at *3 (D.N.J.
Jan. 28, 2021); *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).

Delta has already made a good-faith effort to search for and produce documents and to
provide testimony in the form of a declaration.  Plaintiff's speculation that there are
additional responsive documents is not enough to justify demanding that Delta—a third party
not connected to this litigation and headquartered not within the District of New Jersey but in
Atlanta, Georgia—must make itself available for a deposition.  Nor does the fact that
Plaintiff does not agree with the testimony Delta has already provided entitle Plaintiff to seek
further testimony.  Courts will quash a subpoena seeking a deposition of a nonparty where,
as here, there is no "need to further probe" the nonparty, *Conforti*, 2019 WL 3847994, at *6,

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · San Francisco · Singapore · Washington, D.C.

**GIBSON DUNN**

Henry A. Gabathuler
Leason Ellis LLP
May 23, 2023
Page 2

or the plaintiff cannot "specif[y] any information that is missing or that needs to be acquired through deposition," *Kelley v. Enhanced Recovery Co.*, 2016 WL 8673055, at *3 (D.N.J. Oct. 7, 2016).  Further, courts will still quash a subpoena even if the plaintiff can identify some "minimal possible relevance" for the information it seeks from a nonparty where requiring the nonparty to provide it "would not be proportional to the needs of the case[] when considering the full range of interests involved."  *In re EthiCare Advisors, Inc.*, 2020 WL 4670914, at *5 (D.N.J. Aug. 12, 2020).  Even if Delta agreed that the burden of a deposition was appropriate for a third party in this case, which it does not, the witness is not available to be deposed this week.

Sincerely,

*Howard Hogan*

Howard S. Hogan

CC:    Counsel of Record, via email