### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| REBECA MERAZ, ) | |
| ) | Civil Action No. |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| RUSKEN PACKAGING, INC.; RUSKEN ) | JURY TRIAL DEMANDED |
| PACKAGING OF GEORGIA, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

COMES NOW, Plaintiff Rebeca Meraz ("Ms. Meraz" or "Plaintiff") and files this *Complaint* pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") against Defendants Rusken Packaging, Inc. ("Rusken Packaging") and Rusken Packaging of Georgia, Inc. ("Rusken Georgia") (collectively "Defendants").

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

2. Defendants do business in this district and division; therefore, this Court has personal jurisdiction over Defendants. In addition, a substantial part of

the acts and omissions that give rise to Plaintiff's claims occurred in this district. Accordingly, venue in this Court is proper pursuant to 29 U.S.C. § 1391.

## PARTIES

3. Plaintiff is a resident of citizen of Mecklenburg County, North Carolina. She submits herself to the jurisdiction of this Court.

4. Plaintiff is a woman.

5. Defendant Rusken Packaging is an Alabama domestic for-profit corporation with its registered office address at 64 Walnut St., NW, Cullman, Alabama 35055.

6. Defendant Rusken Packaging regularly conducts business in Georgia, including at its packaging plant located at 1474 GA-138 NE, Conyers, Georgia 30013 ("Conyers Plant").

7. The sign outside Rusken Packaging's plant located at the Conyers Plant identifies it as "Rusken Packaging, Inc."

8. According to its website, Defendant Rusken Packaging "is a dynamic, modern, integrated corrugated packaging company with locations throughout the United States."[1]

---

[1] https://rusken.com/

9. Defendant Rusken Packaging's website lists the Conyers Plant as one of its facilities.[2]

10. Defendant Rusken Packaging's website lists Steve Ingram as the General Manager of its Conyers Plant.[3]

11. Defendant Rusken Georgia is a Georgia domestic for-profit corporation with its principal office address at 64 Walnut St., NW, Cullman, Alabama 35055.

12. Upon information and belief, Defendants jointly operate the Conyers Plant.

13. At all relevant times, Defendants were joint employers of Plaintiff.

14. At all relevant times, there was an identity of interest between Defendants.

## ADMINISTRATIVE PREREQUISITES

15. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 20, 2022.

---

[2] https://rusken.com/contact/
[3] https://rusken.com/leadership-team/

16.     On April 7, 2023, the EEOC issued a Dismissal and Notice of Right to Sue. This Complaint has been timely filed within 90 days of receipt of the notice of Right to Sue.

**FACTS**

17.     Plaintiff worked on the production line at the Defendants' Conyers Plant from approximately December 2019 until she was constructively discharged on or about August 26, 2022.

18.     Until July 2022, Plaintiff was happy at her job and received positive feedback from her managers.

19.     In July 2022, a co-worker Plaintiff knows as "Aron" started making sexually explicit comments towards her.

20.     Plaintiff complained to her supervisor, who she knew as "Fernando," about the harassment.

21.     When Plaintiff brought the harassment to Fernando's attention, Plaintiff was engaged in statutorily protected activity.

22.     Rather than address the harassment, Fernando laughed and said the harassment was because Plaintiff "has a nice ass" (in Spanish, "tiene buenas nalgitas.").

23.     Plaintiff was deeply disturbed by Fernando's comment.

24. Fernando also told Plaintiff and others he did not like working with women, and that women are only good for cleaning.

25. Plaintiff reported the harassment to Defendants' Conyers Plant General Manager Steve Ingram and to another manager Plaintiff knows as "Don."

26. When Plaintiff brought the harassment to Mr. Ingram's and Don's attention, Plaintiff was engaged in statutorily protected activity.

27. Defendants did not take any appropriate remedial action against Fernando or Aron.

28. When Fernando learned Plaintiff had reported the harassment, he isolated Plaintiff, prohibited other employees from going to her work area, and started cutting back on her work hours.

29. Further, Plaintiff had in the past provided lunch service to her co-workers, with the support of her supervisors and managers, but Fernando made her stop.

30. Defendants' acts described in the preceding paragraphs constituted adverse employment actions taken because of Plaintiff's statutorily protected activity.

31.     On or about July 22, 2022, Plaintiff shared a letter from Dulce Jacobo, a Social Services Advocate with the Tahirih Justice Center, with her managers and Defendants' Human Resources Department.  In the letter, Ms. Jacobo stated that

> Rebecca has identified her safety and the safety of other women at work as a concern. As part of her team, we are supporting her in obtaining legal advice about her rights and protections against sexual harassment and physical safety in the workplace. Our work with Rebecca will continue and we will connect her with the necessary services to support her in regaining safety in her workspace.

32.     When Plaintiff shared this letter, she was engaged in statutorily protected activity.

33.     Defendants did not take any remedial action against the harassers, and Mr. Ingram told Plaintiff the letter "would not help" her.

34.     On or about July 29, 2022, Plaintiff asked for help tying some packaging, as was routine in her work.  Fernando told Plaintiff to "go to hell" (in Spanish, "vaya a la verga") and refused to help her.

35.     Fernando's statement and refusal to provide assistance constituted adverse employment actions taken because of Plaintiff's statutorily protected activity.

36.     Plaintiff reported Fernando's statement and refusal to provide assistance to another supervisor she knows as "Alejandro," but he also took no remedial action.

37.     When Plaintiff made this report to Alejandro, she was engaged in statutorily protected activity.

38.     On or about August 4, 2022, Plaintiff asked for help with one of the machines that was not working properly.  Again, this was a routine request.

39.     In response Fernando aggressively responded, "fuck your mother" (in Spanish, "chinga tu madra"), refused to help, and told Plaintiff he was following Mr. Ingram's orders.

40.     Fernando's statement and refusal to provide assistance constituted adverse employment actions taken because of Plaintiff's statutorily protected activity.

41.     Plaintiff was scared and felt threated by Fernando's verbal assault. She started crying and had to leave the building and go to the parking lot because she was so upset.

42.     Alejandro and Mr. Ingram followed her to the parking lot and told her she needed to calm down.

43. Plaintiff then had a meeting with her managers and Human Resources Department staff.  When Plaintiff explained the problem to them, they told her the only option was to switch to the night shift (she had been working the day shift).

44. Plaintiff was not able to work the night shift because she did not have access to transportation at night. Further, on the night shift, she would have worked fewer hours, resulting in lower wages.

45. Telling Plaintiff she would have to move to the night shift to avoid the harassment constituted an adverse employment action taken because of Plaintiff's statutorily protected activity.

46. Plaintiff suggested the Human Resources Department staff speak with other employees who Fernando supervised, because they would confirm Fernando sexually harassed Plaintiff and other female employees.

47. Defendants took no remedial action to address Fernando's behavior.

48. Fernando's harassment continued.  Among other things, he frequently looked at Plaintiff's rear end and other women's rear ends while laughing and making lewd gestures and facial expressions.

49. After it became clear to Plaintiff that she would not receive support from her managers or Human Resources staff, Plaintiff reasonably believed she could not safely continue to work for Defendants.

50. Plaintiff left her employment with Defendants on or about August 26, 2022.

51. Defendants constructively discharged Plaintiff.

52. Defendants' constructive discharge of Plaintiff constituted an adverse employment action taken because of Plaintiff's statutorily protected activity.

## CAUSES OF ACTION

### Count 1
### Title VII – 42 U.S.C. § 2000e-2(a)
### Sexual Harassment

53. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

54. Defendants subjected Plaintiff to harassment based on her sex on a consistent basis from July 2022 until she was constructively terminated on or about August 26, 2022.

55. Plaintiff was forced to work in a hostile atmosphere with uninvited and unwelcome sex-based comments and other sexually charged conduct.

56. The sexual harassment to which Plaintiff was subjected was sufficiently severe and pervasive to alter the terms and conditions of her employment and create an abusive working environment.

57. The sexual harassment to which Plaintiff was subjected detrimentally affected Plaintiff, was viewed as subjectively hostile and abusive by Plaintiff and would be viewed as objectively hostile and abusive to a reasonable person.

58. Title VII requires employers to prevent and correct any harassing behavior in the workplace.

59. Management, supervisors, and Human Resources Personnel at Defendants' Conyers Plant were aware of the sexually hostile behavior but took no prompt remedial action.

60. Because of their failure to take prompt and remedial action and their deliberate indifference to sexually hostile conduct, Defendants intentionally engaged in impermissible employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), resulting in the denial of equal employment opportunities on the basis of sex.

61. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was

caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment, as well as to endure emotional pain and trauma, all to her detriment.

62. Defendant's violation of Title VII was willful, knowing, malicious, or carried out in reckless disregard for its lawfulness.

## Count 2
## Title VII – 42 U.S.C. § 2000e-3(a)
## Rataliation for Engaging in Protected Activity

63. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

64. Plaintiff engaged in statutorily protected activity when she opposed and complained about discrimination and harassment based on her sex.

65. In retaliation for Plaintiff's protected activity, Defendants took materially adverse actions against Plaintiff.

66. There was a causal connection between Plaintiff's protected activity and the materially adverse actions taken against Plaintiff.

67. The retaliation Plaintiff endured would dissuade a reasonable employee from opposing or making complaints of discrimination and harassment.

68. Defendants' retaliation against Plaintiff for engaging in statutorily protected activity violated Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

69. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment, as well as to endure emotional pain and trauma, all to her detriment.

70. Defendant's violation of Title VII was willful, knowing, malicious, or carried out in reckless disregard for its lawfulness.

## DEMAND FOR TRIAL BY JURY

71. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(a) Compensatory damages, including general damages for mental and emotional suffering caused by Defendants;

(b)     Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)     Damages for lost wages and benefits and prejudgment interest thereon;

(d)     Reasonable attorneys' fees and expenses of litigation;

(e)     Trial by jury as to all issues;

(f)     Prejudgment interest at the rate allowed by law;

(g)     Declaratory relief to the effect that Defendants have violated Plaintiff's statutory rights;

(h)     Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendants from further unlawful conduct of the type described herein; and

(i)     All other relief to which Plaintiff may be entitled.

Respectfully submitted this day: May 29, 2023

                                      */s/ Daniel Werner*
                                      Daniel Werner
                                      Georgia Bar No. 422070
                                      dan@decaturlegal.com
                                      RADFORD & KEEBAUGH, LLC
                                      315 W. Ponce de Leon Ave.
                                      Suite 1080
                                      Decatur, Georgia 30030
                                      (678) 271-0300

                                      *Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This is to certify that I prepared the foregoing in Book Antiqua, 13-point type in accordance with L.R. 5.1(C).

/s/ Daniel Werner
Daniel Werner
