**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| INCHIN'S BAMBOO GARDEN FRANCHISING LLC, <br><br> Plaintiff, <br><br> v. <br><br> F3 TRADING COMPANY LLC, ARFAN AHMED, AND SALMA AHMED, <br><br> Defendants. | Civil Action No. _____ |

**VERIFIED PETITION FOR WRIT OF REPLEVIN AND**
**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Inchin's Bamboo Garden Franchising LLC hereby files this Verified Petition for Writ of Replevin and Complaint for Damages and Equitable Relief against F3 Trading Company LLC, Arfan Ahmed, and Salma Ahmed ("Complaint"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This civil action is brought by a franchisor, Inchin's Bamboo Garden Franchising LLC, against its former franchisee, F3 Trading Company LLC, Arfan Ahmed, and Salma Ahmed, to prevent the former franchisee from engaging in unfair

competition under the Lanham Act, infringing the service mark and trade dress of IBGF, and breaching the post-termination obligations under the Franchise Agreement.   IBGF seeks monetary, injunctive, and equitable relief, as well as repossession of certain collateral of the franchisee in which it has a perfected security interest.

## JURISDICTION AND VENUE

2.    The Court has: (a) subject matter jurisdiction over the federal service mark and trade dress infringement claims under the Lanham Act pursuant to 28 U.S.C. § 1331 and § 1338(a); (b) subject matter jurisdiction over the unfair competition claim under the Lanham Act pursuant to 28 U.S.C. § 1338(a) and § 1338(b); and (c) subject matter jurisdiction over the remaining federal law claims pursuant to 28 U.S.C. § 1331.

3.    The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related that they form part of the same case or controversy.

4.    The Court has personal jurisdiction over the Defendants because they have sufficient minimum contacts with this forum in that each Defendant has had, since November 2019, business dealings with this Georgia franchisor during the term of the Franchise Agreement, used the Georgia's franchisor's service marks and

trade dress in the operation of the franchised restaurant, and submitted monthly royalties to this Georgia franchisor as required under the Franchise Agreement. In addition, each Defendant has consented to the exclusive jurisdiction of this Court and waived any objections to personal jurisdiction and venue per Section 21.1 of the Franchise Agreement.

5. Venue over this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions occurred in this judicial district. Venue over this action is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of the action is situated in this judicial district. Franchisor's service mark is registered to IBGF's principal place of business in Alpharetta, GA, and by virtue of its perfected security interest, Franchisor is entitled to take possession of its collateral as more fully set forth in the Franchise Agreement. As referenced above, Defendants also have waived any objections to venue in this judicial district per Section 21.1 of the Franchise Agreement.

6. The Atlanta Division of this Court is proper under LR 3.1(B)(3), NDGa and LR App. A, I, because the cause of action arose in Fulton County, namely Alpharetta, Georgia, which has been assigned to the Atlanta Division of this Court.

## PARTIES

7.      Plaintiff Inchin's Bamboo Garden Franchising LLC ("IBGF" or "Franchisor") is a Georgia limited liability company having its principal place of business at 11105 State Bridge Road, Suite 200, Alpharetta, Georgia 30022.  IBGF is the Franchisor.

8.      Defendant F3 Trading Company LLC is a Texas limited liability company having its principal place of business at 8512 Bobcat Drive, Round Rock, Texas 78681 ("F3 Trading").  F3 Trading is the former franchisee.

9.      Defendant Arfan Ahmed resides at 8512 Bobcat Drive, Round Rock, Texas 78681.  Defendant Arfan Ahmed owns 100% of the member interests of F3 Trading and is listed as the Manager of F3 Trading.

10.      Defendant Salma Ahmed resides at 8512 Bobcat Drive, Round Rock, Texas 78681.  Defendant Salma Ahmed is the spouse of Defendant Arfan Ahmed.

11.      Defendants Arfan Ahmed and Salma Ahmed are the individual guarantors of the franchisee obligations under the Franchise Agreement.

## FACTS

### *Franchisor Spends Considerable Time, Effort, Resources, and Funds Developing the Franchise System*

12.      IBGF opened Inchin's Bamboo Garden in Atlanta, Georgia in 2003 as one of the first Indo-Chinese restaurants in the United States.

13.     Since then, IBGF has been continually engaged in the franchising of a franchise system consisting of full service, casual dining restaurants offering Pan Asian cuisine and related services under the service mark INCHIN'S BAMBOO GARDEN® (the "Franchised Business").

14.     IBGF uses INCHIN'S BAMBOO GARDEN® as its primary service mark.  This service mark was registered by IBGF under U.S. Registration No. 4,620,582 on October 14, 2014 (the "Service Mark").

15.     Currently, no other business or individual in the United States maintains an active U.S. registration for a trademark or service mark using the words "Bamboo Garden."  A true and correct copy of the results of a trademark electronic search conducted on the United States Patent and Trademark Office site is attached hereto as **Exhibit A** and incorporated herein by reference.

16.     Over the course of two decades, IBGF has developed substantial goodwill in its system and brand, often referred to as either "Inchin's" or "Bamboo Garden" by its customers and in the restaurant industry.

17.     IBGF has developed this goodwill and accomplished its growth by acquiring experience and developing distinctive business methods in the operation of the Franchised Business, including through the design of its menu, ingredients, products, and restaurant appearance for a unique customer experience.

18.    In each of its franchise locations, IBGF repeats these same operating methods, menu, ingredients, products, and restaurant design, consistently creating the same visual appearance for its franchise restaurants.  This includes the distinctive and identifying interior and exterior store layout, signage, and design and décor features, including the fixtures and accessories that IBGF created and developed for the exclusive use of franchisees (the "Bamboo Garden Trade Dress.").

19.    IBGF has likewise expended significant time, research, skill, effort, money, and practical business experience in developing a distinctive system for the operation of full-service restaurants specializing in Indo-Chinese cuisine prepared, marketed, and distributed in accordance with its franchise-wide standards.

20.    IBGF has curated distinct menu items and developed unique recipes for Indo-Chinese cuisine that are featured in its Franchised Business (the "IBGF Menu Items").  Some representative IBGF Menu Items include the following offerings:

(a)      <u>Drinks</u>: Masala Soda;

(b)      <u>Soups</u>: Veg Manchow Soup; and Tomato Ginger Clear Soup;

(c)      <u>Starters</u>: Chili Baby Corn; Lat Mai Paneer; Wings of Heaven; Kuchow Chicken; and Shrimp Pepper Salt;

(d)      <u>Entrées</u>: Vegetable Coins; Chili Bean Eggplant; Paneer Tomato Chili; Paneer Butter Masala; Crispy Chicken Chili Honey; Sambal Lamb; and Fish Hongkong;

(e)        <u>Rice and Noodles</u>: Burnt Garlic Fried Rice; Curried Fried
           Rice; Chicken 65 Fried Rice; and Paneer 65 Fried Rice;

(f)        <u>Desserts</u>: Darsaan; Date Wonton With Ice Cream; and
           Chocolate Spring Rolls.

The IBGF Menu Items create a uniform customer experience at each of its franchisee

restaurant locations within the Franchised Business.

21.    This formula has been successful:  IBGF has taken its brand to over 25

cities across the United States, and it now has 24 franchisees licensed throughout the

country (excluding the Defendants' franchise, which has since been terminated by

IBGF).   Most recently,  IBGF has expanded into quick service versions of its

restaurants, which operate using the Bamboo Garden Trade Dress and Service Mark.

22.    IBGF provides its franchisees with training in Franchisor's methods of

doing business and with the experience, expertise, and know-how of the Franchisor

in the operation of the Franchised Business to help them succeed with their own

businesses.  This includes IBGF's distinctive plans for establishing, operating, and

promoting franchise restaurants, as well as its licensed methods of doing business,

which include, but are not limited to, recipes, menu items, and cooking methods;

technical restaurant equipment standards; order and take-out fulfillment methods;

customer relations; marketing techniques; written promotional materials and

Operations Manual contents; advertising; and accounting systems (collectively the

"Bamboo Garden Trade Secrets").  These distinctive business methods, together with the other benefits of being a franchisee, including use of the Bamboo Garden Trade Dress and Service Mark, shall hereinafter be referred to as the "Bamboo Garden System."

23.    The training and other aspects of the Bamboo Garden System are designed to promote and enhance the value of the Service Mark and Bamboo Garden Trade Dress and to encourage uniformity among the franchisees operations, which itself is beneficial to successful promotion of the Service Mark and the franchisees operated thereunder.

24.    The benefits offered to franchisees of the Bamboo Garden System include: (a) providing initial, additional, and refresher training for the development and operation of a franchise restaurant; (b) providing advice on plans and specifications for the build out, design, trade dress, and construction of a franchise restaurant; (c) providing manuals and periodic updates thereto, which contain, among other things, recipes, specifications, and operational requirements of the Bamboo Garden System; (d) maintaining a continuing advisory relationship, including written communication and telephone consultation in the areas of advertising, marketing, training, and general business operations for use by all franchisees; (e) assisting with site selection and financial services; (f) providing

point of sale and computer systems, as well as other proprietary systems and know-how, including advice on approved equipment, materials, and food suppliers to meet IBGF high quality standards that its customers have come to know.

25.    In the development of the Bamboo Garden System, IBGF and its affiliates have invested millions of dollars, and the integrity of the Bamboo Garden System remains critical to the operations and success of IBGF's franchise restaurants located throughout the country.

### The Franchise Agreement is Transferred to Defendants

26.    On February 24, 2012, Sunil Konda, Ravi Ramisetti, and Valaprasad Challa executed a franchise agreement (the "Original Franchise Agreement") to operate an Inchin's Bamboo Garden franchise restaurant in Round Rock, Texas (the "Round Rock Restaurant").  IBGF executed the Original Franchise Agreement on March 6, 2012.  A true and correct copy of the Original Franchise Agreement is attached hereto as **Exhibit B** and incorporated herein by reference.

27.    On May 7, 2016, Sunil Konda, Ravi Ramisetti, and Valaprasad Challa executed an addendum to the Original Franchise Agreement to effectuate a transfer of the Franchise Agreement to Sahil, LLC and Gautam Talreja and Asha Talreja.  A true and correct copy of the May 7, 2016 Addendum is attached hereto as **Exhibit C** and incorporated herein by reference.

28.   On November 18, 2019, Sahil, LLC and Gautam Talreja and Asha Talreja executed an addendum to the Original Franchise Agreement to effectuate a transfer of the Original Franchise Agreement to Defendants Arfan Ahmed and Salma Ahmed.  A true and correct copy of the November 18, 2019 Addendum is attached hereto as **<u>Exhibit D</u>** and incorporated herein by reference.

29.   Defendant F3 Trading was formed by Defendants Arfan Ahmed and Salma Ahmed in Texas with a registered address of 8512 Bobcat Drive, Round Rock, Texas 78681.  That address is the residence address of Defendants Arfan Ahmed and Salma Ahmed.

30.   Defendant F3 Trading[1] and IBGF entered into a new franchise agreement (the "Franchise Agreement") on November 29, 2019 for Defendants to operate the Round Rock Restaurant.  A true and correct copy of the Franchise Agreement is attached hereto as **<u>Exhibit E</u>** and incorporated herein by reference.

31.   The Franchise Agreement has a term of ten years from the Effective Date that ends on November 28, 2029.  *See* Section 17.1 of the Franchise Agreement.

32.   In the Franchise Agreement, Defendants Arfan Ahmed and Salma Ahmed personally guaranteed that all of the obligations of F3 Trading under the Franchise Agreement would be performed.

---

[1] Defendant F3 Trading entered into the Franchise Agreement as "F3 Trading Co LLC."

33.     Defendants did not have any prior experience in the restaurant business or in a franchise system in the United States before becoming an authorized franchisee of Franchisor.  Defendants essentially learned everything they know about the Franchised Business as a result of their participation in the Bamboo Garden System and the support that they received from Franchisor and their predecessors under the Franchise Agreement.

### Defendants Operate as Inchin's Bamboo Garden in Round Rock, Texas

34.     Upon becoming a franchisee, IBGF granted Defendants the right to enjoy the benefits of using the Bamboo Garden System and the Bamboo Garden Trade Secrets, and it licensed its Service Mark to them for use at the Round Rock Restaurant under the Franchise Agreement.

35.     As part of the Franchise Agreement, IBGF licensed to Defendants the methods that it developed for establishing, operating, and promoting restaurants offering Indo-Chinese cuisine, beverages and related restaurant and carry-out services under the Service Mark, as well as Franchisor's proprietary and confidential techniques, expertise, and knowledge in establishing, operating, and promoting restaurants and related methods of doing business in this manner.

36.     The Franchise Agreement also allowed Defendants to use the Bamboo Garden Trade Dress, which included: (a) all items of tangible property bearing the

Service Mark; (b) the exterior sign; (c) all interior signage; (d) all paper goods bearing the Service mark; (e) a signature wall mural; and (f) furniture, consumables, and décor, such as certain crockery, a rickshaw, foo dogs with stands, a sofa set with tables, leather folders for menus, and main menus.

37.     In exchange, Defendants agreed to all other provisions of the Franchise Agreement, including its post-termination obligations.  Among them, Defendants agreed to cease using the Bamboo Garden Trade Dress and Service Mark immediately upon termination of the Franchise Agreement, as well as to return, destroy, and/or sell to another authorized IBGF franchisee all of the written materials, furniture, fixtures, equipment and supplies.  Defendants Arfan and Salma personally guaranteed such obligations.

38.     With the consent of IBGF and under the terms and conditions of the Franchise Agreement, Defendants continually operated as the Round Rock franchisee, as evidenced by their use and enjoyment of the Bamboo Garden System, Service Mark, and Trade Dress.

39.     Throughout this time, IBGF provided, or made available, to Defendants training, a confidential Operating Manual, promotional and marketing materials, operations and business support via direct telephone and email contact, and periodic visits aimed at increasing business.

40.    IBGF has fully performed its obligations under the Franchise Agreement as evidenced by the absence of any default notices from the Defendants.

### Franchisor Terminated the Franchise Agreement for Defendants' Abandonment of the Franchised Business

41.    On March 16, 2023, Defendants sent IBGF a series of photos depicting that the exterior signage of the Round Rock Restaurant had been changed to "The Bamboo Garden | Authentic Indo-Chinese Cuisine."  Defendants therefore only dropped "Inchin's" from the name that it used and operated under as the Round Rock Restaurant and continued to use "Bamboo Garden," a well-known shortened version of IBGF's Service Mark.

42.    On March 21, 2023, Franchisor notified Defendants that, in light of their abandonment of the Franchised Business, the Franchise Agreement was being terminated immediately pursuant to Section 18.2 of the Franchise Agreement.

43.    In that letter, Franchisor also reminded Defendants of their post-termination obligations under the Franchise Agreement and required that those actions be completed by March 31, 2023.

44.    Upon termination by the Franchisor, Defendants were required to (a) cease their use of the Bamboo Garden System, Service Mark, and Trade Dress; (b) disassociate from the Franchised Business; (c) dispose of all Trade Dress, signs, advertising materials, forms, and other material bearing the Mark; (d) return the

Operations Manual and other proprietary information and documents to Franchisor; and (e) terminate its telephone number and appearance in any directory.

### *Defendants Continue Business As Usual Following Termination of the Franchise Agreement*

45.     Since the termination of the Franchise Agreement, Defendants have failed to comply with nearly all of their post-termination obligations.

46.     Despite the Franchise Agreement's termination, Defendants continue to use, to IBGF's detriment, the Bamboo Garden System, Service Mark, Trade Dress, and Trade Secrets.   They have also refused to disassociate themselves completely from the Franchised Business as depicted below.

47.     Although IBGF has taken down the former franchisee's Round Rock location from Google, Defendants continue to use "Bamboo Garden" as their new business name, which ensures that when Google is searched, IBGF's photos are populated, amounting to complete plagiarism by Defendants.



*Scottdale, Arizona Current Franchisee of IBGF*



*Defendants' Exterior at Former Franchisee
Location in Round Rock, Texas (Before Name Change)*



*Defendants' Current Exterior at Former Franchisee*
*Location in Round Rock, Texas (After Name Change)*

48.    IBGF has confirmed that Defendants have not disassociated themselves

and continue to operate as if they were an authorized Franchised Business by, among

other ways, continuing to offer the same menu, ingredients, and products as they did

when operating the Round Rock Restaurant as a franchisee.   Defendants also

continue to use the same unique recipes that IBGF developed for its franchisees in

their operation of the Franchised Business.

49.    IBGF has also confirmed that Defendants continue to use the Bamboo

Garden Trade Dress, including the look and décor of the restaurant, the menu,

furniture, and fixtures, such as the foo dogs with stands and sofa set, all of which the

Franchisor procured from China for use in its franchisee locations.

*SERVICE STATION*



*Purchased by IBGF in China in 2014 for Use by Franchisees*



*Defendants' Use of Service Station at*
*Current Location in Round Rock, Texas*

50.    Defendants' ongoing use of the Bamboo Garden Trade Dress and Service Mark also includes the distinctive barnwood, bamboo ceilings and screens, furniture, service station, and color scheme found at locations throughout the Franchised System, as depicted below.



*Herndon, Virginia, Current Franchisee of IBGF*



*Sunnyvale, California, Current Franchisee of IBGF*



*Defendants' Current Interior in*
*Former Franchisee Location in Round Rock, Texas*



*Defendants' Current Interior in*
*Former Franchisee Location in Round Rock, Texas*

51.   In fact, the interior of Defendants' current location appears to be virtually indistinguishable from IBGF's locations around the country:



*Scottdale, Arizona Current Franchisee of IBGF*



*Defendants' Current Interior in*
*Former Franchisee Location in Round Rock, Texas*

52.    Defendants have also continued to offer the IBGF Menu Items – the unique Indo-Chinese cuisine that IBGF specifically developed to feature in its franchise location.



*IBGF Current Menu Sample*




*Defendants' Current Menu at Former*
*Franchisee Location in Round Rock, Texas*

53.     Defendants' continued use of the Bamboo Garden System, Trade Dress, and Service Mark contravenes their post-term obligations under the Franchise Agreement, the Lanham Act, and Defend Trade Secrets Act.

### *Defendants Owe Franchisor Liquidated Damages*

54.     Section 20.4 of the Franchise Agreement entitles Franchisor to recover liquidated damages from Defendants if the Franchise Agreement is terminated prior to the end of the term due to a default by the franchisee, according to the following formula below:

Franchisee shall also promptly pay to Franchisor liquidated damages in an amount equal to the product of: (i) the number of years (full and partial) remaining in the term of this Agreement, (ii) the aggregate amount of Royalty Fee Payments, Marketing and Promotion Fees and Senior Executive Compensation due and payable to Franchisor for the period of the twelve full calendar months immediately preceding the date of such termination, and (iii) a factor of sixty percent (60%).

55.     As set forth above, Franchisor terminated the Franchise Agreement due to Defendants' default in abandoning the Franchised Business.

56.     By virtue of this Complaint, Franchisor has calculated and seeks from Defendants liquidated damages as follows:

| | |
|---|---|
| Total Sales for 6.75 years | $14,144,961.49 |
| Franchise Fees 6% | $848,697.69 |
| Marketing Fund 1% | $141,449.61 |
| IBG Supplies 7.3% | $1,032,582.19 |
| | $2,022,729.49 |
| Liquidated Damages 60% | $1,213,637.70 |

### *In the Alternative, Franchisor is Entitled to Enforce the Post-Termination Non-Compete If Defendants Do Not Pay to Franchisor Liquidated Damages*

57.     In the alternative, the failure of Defendants to pay liquidated damages to Franchisor entitles Franchisor to enforce the post-termination covenant not to compete contained within Section 20.3 of the Franchise Agreement.

58.     Section 20.3 provides, in pertinent, part as follows:

In the event of a termination of this Agreement due to a default hereunder by Franchisee and if Franchisor does not receive payment of all amounts then due to Franchisor for any reason, including, without limitation, liquidated damages pursuant to Section 20.4 below because the law of the state in which Restaurant is located renders such provision unenforceable or for any other reason, then in such event, for a period of two (2) years from the effective date of termination or expiration of this Agreement for any reason, or the date on which Franchisee and all other Bound Parties begin to comply with this Section, whichever is later, neither Franchisee nor any other Bound Party shall have any direct or indirect interest as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative, agent, or in any other capacity in any Competitive Business located or operating within a fifty (50) mile radius of the former Franchised Location or within a fifty (50) miles radius of any other Restaurant existing on the later of the effective date of termination or expiration of this Agreement or the date on which Franchisee and all other Bound Parties begin to comply with this Section.    The restrictions of this Section shall not be applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent five percent (5%) or less of the number of shares of that class of securities issued and outstanding. Franchisee and the other Bound Parties expressly acknowledge that they possess skills and abilities of a general nature and have other opportunities for exploiting such skills.  Consequently, enforcement of the covenants made in this Section will not deprive

them of their personal goodwill or ability to earn a living. This provision shall survive termination of this Agreement and Franchisor shall have the right to injunctive relief to enforce this provision in addition to such other relief to which it may be entitled in law and equity.

59.     Defendants continue to directly or indirectly operate a Competitive Business, as that term is defined in the Franchise Agreement, in the same location as the Round Rock Restaurant.

### *Franchisor Is Suffering Irreparable Harm*

60.     Unless and until Defendants are enjoined from using the Bamboo Garden System, Trade Dress, and Service Mark, from misappropriating the Bamboo Garden Trade Secrets, and from unfairly competing with IBGF, Franchisor and its franchisees are being and will continue to be irreparably harmed in the nature of:

(a)     Confusion of customers who intend to patron at a legitimate IBGF franchisee;

(b)     Harm to IBGF's goodwill and the confidence and trust customers repose in Franchisor and its franchisees;

(c)     Disturbance of Franchisor and its franchisees' relationships with customers;

(d)     Harm to Franchisor's business reputation;

(e)     Loss of confidence of Franchisor's remaining franchisees who rely on Franchisor to enforce the post-termination obligations;

    (f)      Loss of the integrity of the Bamboo Garden System, Trade Dress, and Service Mark for which Franchisor's remaining franchisees continue to pay under their respective Franchise Agreements; and

    (g)      Harm to the continued viability of Franchisor's franchise system.

61.    Further, it is typical for other franchisees to monitor the actions of Franchisors in response to franchisees like Defendants who continue to operate in violation of the Franchise Agreement.  If Defendants are permitted to breach their post-termination obligations, this will establish a dangerous precedent and potentially encourage other franchisees to "break away" and leave the Bamboo Garden System and continue to operate their existing businesses under a slightly different name at or near the location of their former Franchised Business.

62.    In addition, Defendants' continued operation of their business interferes with IBGF's ability to continue the Franchised Business in the Austin, Texas area.  So far, Defendants have impeded IBGF from re-franchising in the Austin, Texas area, as a potential franchisee has declined to enter the Bamboo Garden System while Defendants continue with business as usual despite the slight change of name.

63.    All of this conduct by Defendants causes an irreparable loss of IBGF's goodwill, developed and associated with the Bamboo Garden System, Trade Dress, and Service Mark and the businesses operated thereunder.

### *Franchisor Holds a Security Interest in the Collateral*

64.     Pursuant to Section 22 of the Franchise Agreement, Defendants and their predecessors granted to IBGF a security interest in the Collateral described in Section 22.1 of the Franchise Agreement to secure the performance of all obligations of the Franchise under the Franchise Agreement and the payment of the Indebtedness described in Section 22.2 of the Franchise Agreement.

65.     As provided in Section 22.4 of the Franchise Agreement, upon the occurrence of a default by the Franchisee under the Franchise Agreement and the termination of Franchisee's rights under the Franchise Agreement, IBGF has the immediate right to possession of the Collateral.

66.     The Collateral includes, but is not limited to, the assets constituting the Bamboo Garden Trade Dress, such as all of the furniture, fixtures, equipment, signage, and realty.

67.     The abandonment of the Franchised Business constitutes an event of default under the Franchise Agreement which led to the delivery of the Termination Notice.

## COUNT I:  BREACH OF CONTRACT
## (IRREPARABLE HARM, LIQUIDATED DAMAGES,
## AND ATTORNEYS' FEES)

68.    IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 67 of the Complaint as if each was separately restated here.

69.    The Franchise Agreement is a valid, enforceable contract between IBGF and Defendants.

70.    IBGF has fully performed all its obligations under the Franchise Agreement.

71.    Defendants were required upon termination to comply with their post-termination obligations as set forth in the Franchise Agreement.

72.    Defendants have failed to comply with these remaining post-termination obligations in breach of the Franchise Agreement, including by failing to disassociate themselves completely from the Franchised Business, dispose of all Trade Dress, return the Operations Manual, or terminate its telephone number and appearance in any directory.

73.    Defendants have not paid liquidated damages to IBGF as required under Section 22.1 of the Franchise Agreement.

74.    The conduct of Defendants is willful, intentional, and unprivileged, and it has caused and is continuing to cause irreparable harm to IBGF.

75.     IBGF has also been required to retain the services of attorneys to represent it in this proceeding and is entitled to recover its attorneys' fees and costs as a result of Defendants' default the Franchise Agreement.  IBGF will continue to incur attorneys' fees and costs in this proceeding.

76.     As a result of Defendants' intentional, willful and deliberate breach of contract, IBGF is entitled to injunctive relief, liquidated damages, costs and attorneys' fees.

## <u>COUNT II:  IN THE ALTERNATIVE, BREACH OF CONTRACT<br>(ENFORCEMENT OF POST-TERMINATION NON-COMPETE)</u>

77.     IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 76 of the Complaint as if each was separately restated here.

78.     In the alternative and to the extent that Defendants do not pay to IBGF the amount of liquidated damages owed and identified above, then IBGF is entitled to enforce the Section 20.3 of the post-termination covenant not to compete.

79.     The Franchise Agreement is a valid, enforceable contract between IBGF and Defendants.

80.     IBGF has fully performed all its obligations under the Franchise Agreement.

81.     Defendants were required upon termination to comply with their post-termination obligations as set forth in the Franchise Agreement.

82.     By failing to pay liquidated damages to IBGF as required under Section 22.1 of the Franchise Agreement, IBGF is entitled to prevent Defendants, directly or indirectly, through relatives, representatives or other persons, from operating the current restaurant, which is a Competitive Business, in the former Franchised location in Round Rock, Texas.

83.     The conduct of Defendants is willful, intentional, and unprivileged, and it has caused and is continuing to cause irreparable harm to IBGF.

84.     IBGF has also been required to retain the services of attorneys to represent it in this proceeding and is entitled to recover its attorneys' fees and costs as a result of Defendants' default the Franchise Agreement.  IBGF will continue to incur attorneys' fees and costs in this proceeding.

85.     As a result of Defendants' intentional, willful and deliberate breach of contract, IBGF is entitled to injunctive relief, costs and attorneys' fees.

## COUNT III: SERVICE MARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

86.     IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 85 of the Complaint as if each was separately restated here.

87.     Defendants are currently using the Bamboo Garden Service Mark and System even though the Franchise Agreement has been terminated, and IBGF no

longer consents to Defendants' use of the Bamboo Garden Service Mark and System.

88.    Defendants' conduct willfully violates their obligations to IBGF and flagrantly violates the Lanham Act.

89.    Defendants' use of the Bamboo Garden Service Mark in connection with the operation of their business is likely to cause confusion or mistake in the minds of the public and cause purchasers to believe that the services being offered or intended to be offered are the services of IBGF, and thus constitute an infringement of IBGF's service mark rights.

90.    Defendants' infringement was and is a willful and deliberate attempt to deceive the public, trade upon the goodwill of IBGF and cause irreparable harm to Franchisor.

91.    The conduct of Defendants constitutes fraud and deceit upon the consuming public in the United States.

92.    Said conduct has resulted and will continue to result in the loss of IBGF's goodwill and have caused and will continue to cause IBGF irreparable injury.

93.   As a result of Defendants' intentional, willful and deliberate infringement of the Bamboo Garden Service Mark, IBGF is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT IV: TRADE DRESS INFRINGEMENT UNDER SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

94.   IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 93 of the Complaint as if each was separately restated here.

95.   The unique combination of the elements of the Bamboo Garden Trade Dress has resulted in a distinctive, non-functional trade dress that consumers identify with an Inchin's Bamboo Garden franchise restaurant.

96.   The Bamboo Garden Trade Dress is comprised of non-functional designs and aesthetic features, which together are arbitrary embellishments that create an overall look to the Bamboo Garden Trade Dress that is unique to IBGF and adopted for the purpose of identifying IBGF as the source.

97.   The Bamboo Garden Trade Dress serves as an indication of source because it has acquired distinctiveness.

98.   The Bamboo Garden Trade Dress has acquired secondary meaning and become a symbol of an Inchin's Bamboo Garden franchise restaurant.

99.   Defendants' unauthorized use and display in commerce of a trade dress similar to the distinctive Bamboo Garden Trade Dress is deceptive and likely to

cause confusion or mistake among consumers and to cause consumers to erroneously believe that the Defendants' restaurant originates from or is sponsored by IBGF.

100.   IBGF has spent considerable time and money developing the Bamboo Garden Trade Dress, and as a result of its effort and investment, IBGF has built a successful franchise system that stands out and is distinguished from the competition in the highly competitive restaurant business.

101.   Defendants' infringement was and is a willful and deliberate attempt to deceive the public, trade upon the goodwill of IBGF and cause irreparable harm to Franchisor.

102.   The conduct of Defendants constitutes fraud and deceit upon the consuming public in the United States.

103.   Said conduct has resulted and will continue to result in the loss of IBGF's goodwill and have caused and will continue to cause IBGF irreparable injury.

104.   As a result of Defendants' intentional, willful and deliberate infringement of the Bamboo Garden Service Mark, IBGF is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT V:  UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

105.   IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 104 of the Complaint as if each was separately restated here.

106.   Defendants are in the business of operating an Indo-Chinese restaurant at the same location as the Round Rock Restaurant.

107.   Defendants are still using the Bamboo Garden Mark and Trade Dress at the Round Rock Restaurant location in a manner confusingly similar to the Bamboo Garden Mark and Trade Dress used by Franchisor and its franchisees.

108.   The business format currently used at the Round Rock Restaurant is the same or closely related to the Bamboo Garden System that has been developed by IBGF.

109.   The continued use of Bamboo Garden System, Service Mark, and Trade Dress is likely to cause mistake or confusion in the marketplace in the minds of purchasers and lead them to believe that the Round Rock Restaurant is that of IBGF or one of its authorized franchisees.

110.   The continued use of the Bamboo Garden System, Service Mark, and Trade Dress in connection with the services offered at the Round Rock Restaurant constitutes unfair competition under the Lanham Act.

111.   Defendants are deliberately attempting to trade upon the goodwill of IBGF by selling and advertising their restaurant in the same manner as an IBGF franchisee and continuing to provide the same experience as if a franchise of the Bamboo Garden System.

112.   The acts of Defendants constitute a fraud and deceit upon the consuming public in the United States.

113.   Said conduct has resulted and will continue to result in the loss of IBGF's goodwill and have caused and will continue to cause IBGF's irreparable injury.

114.   As a result of Defendants' intentional, willful and deliberate infringement of the Bamboo Garden Service Mark, IBGF is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT VI:  VIOLATION OF THE DEFEND TRADE SECRETS ACT<br>(18 U.S.C. § 1832, *ET SEQ.*)

115.   IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 114 of the Complaint as if each was separately restated here.

116.   Under the Defend Trade Secrets Act ("DTSA"), "trade secrets" include all forms and types of financial, business or economic information, including plans, compilations, methods, techniques, processes, or procedures, provided the owner has taken reasonable measures to keep such information secret and the information

has independent economic value (actual or potential) derived from not being generally known and not being readily ascertainable through proper means by others who can obtain economic value from its disclosure or use.

117. IBGF is the owner of the Bamboo Garden Trade Secrets, which it has spent significant time and money developing.

118. The Bamboo Garden Trade Secrets to which the Defendants had access are related to IBGF's products or services that are used in or intended for use in interstate or foreign commerce.

119. The Bamboo Garden Trade Secrets are trade secrets under the DTSA that are protected, kept confidential, and not publicly disclosed.

120. IBGF has taken reasonable and appropriate measures to protect the Bamboo Garden Trade Secrets and keep them as confidential. Among other things, IBGF has labeled certain information as trade secrets in its Franchise Agreements and required its franchisees, including the Defendants, to treat such information as trade secrets and cease use of these trade secrets upon termination of the Franchise Agreement.

121. IBGF derives actual economic value from the Bamboo Garden Trade Secrets as it licenses them as part of the Franchised Business.

122.   IBGF did not expressly or impliedly consent to Defendants' acquisition or use of the Bamboo Garden Trade Secrets following the Termination Notice.

123.   Defendants nevertheless retained and continued to use the Bamboo Garden Trade Secrets after the Termination Notice, which constitutes a misappropriation of trade secrets.

124.   Defendants have therefore acquired the Bamboo Garden Trade Secrets through improper means.

125.   Disclosure and unauthorized use of the Bamboo Garden Trade Secrets undermines IBGF's competitive position in the restaurant industry.

126.   The conduct of Defendants is willful, malicious, intentional, and unprivileged, has resulted and will continue to result in the loss of IBGF's goodwill, and has caused and will continue to cause IBGF's irreparable injury, as well as monetary damages.

127.   As a result of Defendants' misappropriation of the Bamboo Garden Trade Secrets, IBGF is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT VII:  VIOLATION OF THE  GEORGIA TRADE SECRETS ACT (O.C.G.A. §§ 10-1-760, *ET SEQ.*)

128.   IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 127 of the Complaint as if each was separately restated here.

129.   Under the Georgia Trade Secrets Act ("GTSA"), "trade secrets" includes technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information which (a) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

130.   IBGF is the owner of the Bamboo Garden Trade Secrets, which it has spent significant time and money developing.

131.   The Bamboo Garden Trade Secrets to which the Defendants had access are related to IBGF's products or services that are used in or intended for use in interstate or foreign commerce.

132.   The Bamboo Garden Trade Secrets are trade secrets under the GTSA that are protected, kept confidential, and not publicly disclosed.

133.   IBGF has taken reasonable and appropriate measures to protect the Bamboo Garden Trade Secrets and keep them as confidential.  Among other things, IBGF has labeled certain information as trade secrets in its Franchise Agreements and required its franchisees, including the Defendants, to treat such information as trade secrets and cease use of these trade secrets upon termination of the Franchise Agreement.

134.   IBGF derives actual economic value from the Bamboo Garden Trade Secrets as it licenses them as part of the Franchised Business.

135.   IBGF did not expressly or impliedly consent to Defendants' acquisition or use of the Bamboo Garden Trade Secrets following the Termination Notice.

136.   Defendants nevertheless retained and continued to use the Bamboo Garden Trade Secrets after the Termination Notice, which constitutes a misappropriation of trade secrets.

137.   Defendants have therefore acquired the Bamboo Garden Trade Secrets through improper means.

138.   Disclosure and unauthorized use of the Bamboo Garden Trade Secrets undermines IBGF's competitive position in the restaurant industry.

139.   The conduct of Defendants is willful, malicious, intentional, and unprivileged, has resulted and will continue to result in the loss of IBGF's goodwill,

and has caused and will continue to cause IBGF's irreparable injury, as well as monetary damages.

140.   As a result of Defendants' misappropriation of the Bamboo Garden Trade Secrets, IBGF is entitled to injunctive relief, damages, costs and attorneys' fees.

## COUNT VIII – REPLEVIN

141.   IBGF incorporates by reference each of the allegations contained in Paragraphs 1 through 140 of the Complaint as if each was separately restated here.

142.   IBGF has a valid and perfected first priority perfected security interest in the Collateral.

143.   Section 22 of the Franchise Agreement authorizes IBGF to take possession of and remove the Collateral upon the occurrence of an event of default under the Franchise Agreement.

144.   Defendants have defaulted on their obligations under the Franchise Agreement by, *inter alia*, abandoning the Round Rock Restaurant.

145.   Upon information and belief: the Collateral (i) is located at the premises of the Round Rock Restaurant; and (ii) has been transferred to a third party conducting a restaurant business at that location.

146.   IBGF is entitled to repossess the Collateral, including by requiring Defendants to (i) deliver the Collateral to IBGF and (ii) assemble the Collateral and make it available to IBGF at a place designated by IBGF.

147.   IBGF is unable to take possession of the Collateral without a breach of the peace.

148.   Should the Collateral be repossessed by IBGF as permitted under the Franchise Agreement upon an event of default, IBGF may sell the Collateral in accordance with state and federal law, including, without limitation, the applicable Uniform Commercial Code ("UCC"), and apply the sale proceeds to any judgment entered against Defendants in this action.

149.   Before the Collateral can be sold, however, it may be necessary for it to be restored to good order and repaired to operating condition.

150.    The expenses IBGF may incur to do so may be added to the obligations of Defendants, as provided in the Franchise Agreement.

151.   If the sale proceeds are insufficient to cover the entire indebtedness owed by Defendants, IBGF is entitled to a deficiency judgment against them.

152.   IBGF has performed all conditions precedent under the Franchise Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Inchin's Bamboo Garden Franchising LLC demands judgment in its favor and against Defendants with respect to all Counts of the Complaint as follows:

A.    That Defendants and their officers, owners, agents, servants, employees, attorneys, guarantors, and all persons in active concert or participation with them be preliminarily and thereafter permanently enjoined from using the Bamboo Garden System, Service Mark, and Trade Dress, or any elements thereof, in connection with the operation of any business that operates as an Indo-Chinese restaurant.

B.    That Defendants be required to make such changes in the signage of the Round Rock Restaurant, cease using any articles or other instrumentalities that contain the Bamboo Garden Service Mark or Trade Dress, and cease any communications that would identify Defendants as being associated with IBGF.

C.    That Defendants be preliminarily and thereafter permanently enjoined from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction.

D.     That Defendants be required to return to IBGF all confidential information relating to the operation of the Franchised Business (and any copies thereof) to IBGF.

E.     That Defendants be required to make a verified report to the Court within thirty (30) days setting forth all actions taken by the Defendants to comply with the injunction and the relief granted herein and dates such actions were taken.

F.     That Defendants be required to furnish a verified accounting of all sales and profits derived by them through the operation of the Round Rock Restaurant since the date of the Termination Notice.

G.     That IBGF be awarded liquidated damages under Section 20.4 of the Franchise Agreement.

H.     That in the alternative and upon the failure of Defendants to pay liquidated damages under Section 20.4 of the Franchise Agreement, IBGF and their officers, owners, agents, servants, employees, attorneys, guarantors, and all persons in active concert or participation with them be preliminarily and thereafter permanently enjoined from operating an Indo-Chinese restaurant in the same location as the former Franchised location per Section 20.3 of the Franchise Agreement.

I.      That IBGF be awarded exemplary damages in an amount to be proven at trial.

J.      That Defendants be required to immediately surrender possession of the Collateral to IBGF or its duly authorized representative.

K.      That IBGF be permitted to sell the Collateral at public or private sale pursuant to the UCC as determined by IBGF (*i.e.*, "as-is" condition, auction, private sale, etc.), without any obligation to incur the costs and expense of repairing the Collateral prior to the auction or private sale or otherwise, provided that such sale is conducted in accordance with the UCC and that the net proceeds shall be applied to the amounts owing under said judgment.

L.      That IBGF be awarded treble damages, statutory damages, and all other legal and equitable relief available under the Lanham Act.

M.      That IBGF be awarded its reasonable costs and expenses, including reasonable attorneys' fees.

N.      That IBGF be given such other and further relief as the Court may deem just and proper.

*/s/* W. Brian Holladay

W. Brian Holladay
GA Bar No. 300576
Martenson, Hasbrouck & Simon LLP
2573 Apple Valley Road NE
Atlanta, Georgia 30319
Phone: (404) 909-8100
Facsimile: (404) 909-8120
bholladay@martensonlaw.com

Gretchen L. Jankowski
PA Bar ID No. 74540
(*pro hac vice motion forthcoming*)
Matthew C. Pilsner
PA Bar ID No. 314606
(*pro hac vice motion forthcoming*)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Phone: (412) 562-8800
Facsimile: (412) 562-1041
gretchen.jankowski@bipc.com
matthew.pilsner@bipc.com

*Attorneys for Inchin's Bamboo Garden
Franchising LLC*

## VERIFICATION

I, Amitabh Agrawal, of full age, declare as follows·

    1.    I am the Chief Executive Officer and Director of Operations of Franchisor, Inchin's Bamboo Garden Franchising LLC, the Plaintiff in this action I am the person most familiar with the facts underlying this action and am authorized to make this Verification on behalf of Inchin's Bamboo Garden Franchising LLC

    2.    I have reviewed the foregoing Verified Complaint and the factual allegations set forth therein are true and correct to the best of my knowledge, information and belief

    I declare under penalty of perjury of the laws of the United States of America that the foregoing statements are true and correct

Dated·    **May 26, 2023**

**Amitabh Agrawal**