IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IMANI GREEN, | : | |
| Green, | : | Civil Action File No. |
| | : | |
| vs. | : | |
| | : | |
| NV NIGHTS INVESTMENTS, INC. d/b/a NV LOUNGE, NICHOLAS PARKER, and AGNES HAWKINS, | : : : : | |
| | : | |
| Defendants. | | |

## COMPLAINT

Plaintiff Imani Green ("Green") brings this Complaint against Defendants NV Nights Investments, Inc. d/b/a NV Lounge ("NV Nights"), Nicholas Parker ("Parker"), and Agnes Hawkins ("Hawkins") (collectively referred to as "Defendants") as follows:

**INTRODUCTION**

1.

NV Nights failed to pay Green minimum wages as required by the FLSA.

**(a) Jurisdiction and Venue**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28

1

U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendant Hawkins and NV Nights' designated registered agent reside within this judicial district.

**(b) The Parties**

4.

Green resides in Muscogee County, Georgia.

5.

NV Nights has employed Green as a bartender from approximately July 7, 2022 through the date of filing the within Complaint (*i.e.* "the Relevant Time Period").

6.

At all times material hereto, Green was an "employee" of NV Nights within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

7.

Green was employed by NV Nights at the NV Lounge located at 6499 Veterans Parkway, Suite 1, Columbus, GA 31909.

8.

NV Nights is a domestic profit corporation organized under the laws of the State of Georgia.

9.

At all times material hereto, NV Nights was an "employer" of Green within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

10.

NV Nights is subject to the personal jurisdiction of this Court.

11.

NV Nights may be served with process through its registered agent Sweta Goenka at 3741 Terrasol Trail, SW, Lilburn, Georgia 30047.

12.

At all times material hereto, Parker was an owner of the NV Lounge in which Green worked.

13.

At all times material hereto, Green was an "employee" of Parker within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

14.

At all times material hereto, Parker was an "employer" of Green within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

15.

Parker is subject to the personal jurisdiction of this Court.

16.

Parker may be served with process at 3444 Miles Street, Columbus, Georgia 31909 or wherever he may be located.

17.

At all times material hereto, Hawkins was the CEO, CFO and Secretary of NV Nights.

18.

At all times material hereto, Green was an "employee" of Hawkins within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

19.

At all times material hereto, Hawkins was an "employer" of Green within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

20.

Hawkins is subject to the personal jurisdiction of this Court.

21.

Hawkins may be served with process at 1394 Rockbridge Road, Stone Mountain, Georgia 30087 or wherever she may be located.

**(c) Individual Coverage**

22.

At all times material hereto, Green used or handled the following, among other, instruments of interstate commerce: computers; cash registers; and credit card machines.

23.

At all times material hereto, Green was "engaged in commerce" as an individual employee of NV Nights within the meaning of 3(s)(1(A) and (B).

**(d) Enterprise Coverage:**

24.

At all times material hereto, NV Nights was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

25.

During 2022, NV Nights had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2023, NV Nights had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

At all times material hereto, Green and other employees of NV Nights handled goods which moved in interstate commerce in the furtherance of the commercial purpose of NV Nights including, but not limited to, wine, beer, liquor and other alcoholic products; food and food service items; computers; cash registers; credit card machines; furniture; and office supplies.

28.

During 2022, NV Nights had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2023, NV Nights had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

During 2022, NV Nights had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

31.

During 2023, NV Nights had or is expected to have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

32.

At all times material hereto, NV Nights has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**(e) Parker is an employer under the FLSA**

33.

At all times material hereto, Parker was an owner of the NV Lounge.

34.

At all times material hereto, Parker had authority to make business decisions on behalf of NV Nights.

35.

At all times material hereto, Parker exercised operational control over Green's work activities.

36.

At all times material hereto, Parker managed the day-to-day operation of the NV Lounge in which Green worked.

37.

At all times material hereto, NV Nights vested Parker with supervisory authority over Green.

38.

At all times material hereto, Parker exercised supervisory authority over Green.

39.

At all times material hereto, Parker scheduled Green's working hours or supervised the scheduling of Green's working hours.

40.

At all times material hereto, Parker exercised authority and supervision over Green's compensation.

41.

At all times material hereto, Parker had authority to set the schedules of NV Nights' employees.

42.

At all times material hereto, Parker had authority to set the compensation paid to NV Nights' employees.

43.

At all times material hereto, Parker had authority to hire employees on behalf of NV Nights.

44.

At all times material hereto, Parker had authority to terminate employees of NV Nights.

45.

At all times material hereto, Parker had authority to discipline employees of NV Nights.

**(f) Hawkins is an employer under the FLSA**

46.

At all times material hereto, Hawkins was an owner and/or operator of the NV Lounge.

47.

At all times material hereto, Hawkins was the CEO of NV Nights.

48.

At all times material hereto, Hawkins was the CFO of NV Nights.

49.

At all times material hereto, Hawkins was the Secretary of NV Nights.

50.

At all times material hereto, Hawkins had authority to make business decisions on behalf of NV Nights.

51.

At all times material hereto, Hawkins exercised operational control over Green's work activities.

52.

At all times material hereto, Hawkins managed the day-to-day operation of the NV Lounge in which Green worked.

53.

At all times material hereto, NV Nights vested Hawkins with supervisory authority over Green.

54.

At all times material hereto, Hawkins exercised supervisory authority over Green.

55.

At all times material hereto, Hawkins scheduled Green's working hours or supervised the scheduling of Green's working hours.

56.

At all times material hereto, Hawkins exercised authority and supervision over Green's compensation.

57.

At all times material hereto, Hawkins had authority to set the schedules of NV Nights' employees.

58.

At all times material hereto, Hawkins had authority to set the compensation paid to NV Nights' employees.

59.

At all times material hereto, Hawkins had authority to hire employees on behalf of NV Nights.

60.

At all times material hereto, Hawkins had authority to terminate employees of NV Nights.

61.

At all times material hereto, Hawkins had authority to discipline employees of NV Nights.

**(g) Lack of FLSA Exemptions**

62.

At all times material hereto, Green was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

63.

At all times material hereto, NV Nights did not employ Green in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

64.

At all times material hereto, NV Nights did not employ Green in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

65.

At all times material hereto, NV Nights did not employ Green in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

66.

At all times material hereto, Green did not supervise two or more employees.

67.

At all times material hereto, NV Nights did not employ Green in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

68.

NV Nights has failed to meet the requirements for any of the exemptions from the application of the minimum wage requirements of the Fair Labor Standards Act under 29 U.S.C. § 206.

(h) Additional Factual Allegations

69.

NV Nights employed Green as a bartender from approximately July 7, 2022 through the date of filing the within Complaint.

70.

NV Nights did not compensate Green on a salaried basis.

71.

NV Nights did not compensate Green on an hourly rate basis.

72.

Defendants failed to pay Green any wages or compensation whatsoever.

73.

At all times during her employment, Green's sole form of remuneration for the work she performed for NV Nights was tips paid by customers.

74.

At all times during her employment, Green normally worked two or three nights per week.

75.

From approximately July 7, 2022 through September 7, 2022, Green normally worked Thursday, Friday and Saturday.

76.

From approximately September 7, 2022 through February 2023, Green normally worked Thursday and Saturday.

77.

From approximately September 7, 2022 through February 2023, Green occasionally worked on Friday.

78.

From approximately March 2023 through the date of filing the within Complaint, Green has worked a regular schedule of Thursday one week, then Thursday and Saturday the next week.

79.

From July 7, 2023 through the date of filing the within Complaint, Green normally reported to work at NV Lounge at 9:00 p.m. however, she was not permitted to clock-in until 9:45 p.m. or 10:00 p.m.

80.

From July 7, 2023 through the date of filing the within Complaint, NV Lounge's managers often clocked Green out of Defendants' time keeping system before Green completed her work shifts.

81.

During the Relevant Time Period, Defendants did not permit Green to leave work until all the cash registers.

82.

During the Relevant Time Period, Green usually working "off the clock" for approximately 30 minutes to one (1) hour after her scheduled shifts performing clean up, side tasks, and/or waiting for the registers to be counted to assure there were no shortages.

83.

During the Relevant Time Period, Defendants truncated the hours Green actually worked.

84.

During the Relevant Time Period, Green normally worked 6 ½ to 7 hours during each work shift, including time spent working before clocking in at the

beginning of each shift and time spent working after managers clocked her out at the end of each shift.

85.

At all times during the Relevant Time Period, Defendants were aware of the actual number of hours Green worked during each work week.

86.

Defendants knew or should have known that the FLSA applied to Green.

87.

Section 6 of the FLSA (29 U.S.C. § 206) requires that Defendants compensate Green at a rate of no less than $7.25 per hour for every hour worked in a work week.

88.

Defendants knew or should have known that Section 6 of the FLSA requires that Defendants compensate Green at a rate of at least $7.25 per hour for every hour she worked in a work week.

89.

NV Nights failed to compensate Green at a rate of $7.25 per hour for each hour she worked.

90.

NV Nights willfully failed to compensate Green at a rate of $7.25 per hour for each hour she worked.

91.

Upon information and belief, in failing or refusing to pay Green minimum wages as required by the FLSA, Defendants have not relied on any letter ruling from the Department of Labor indicating that Green was not entitled to minimum wage.

92.

Defendants' conduct constitutes willful violations of § 206 of the FLSA, entitling Green to all relief afforded under the FLSA, including the award of liquidated damages.

### COUNT 1 - FAILURE TO PAY MINIMUM WAGE

93.

The allegations in paragraphs 1-92 above are incorporated herein by reference.

94.

At all times material hereto, Green was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

95.

At all times material hereto, Defendants failed to pay Green any wages whatsoever.

96.

At all times material hereto, Defendants failed to compensate Green at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

97.

At all times material hereto, Defendants willfully failed to compensate Green at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

98.

As a result of the underpayment of minimum wages as alleged above, Green is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

99.

As a result of the underpayment of minimum wages as alleged above, Green is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b), declaratory and injunctive relief, and reimbursement of her costs of litigation, including her reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Green respectfully prays:

1. That her claims be tried before a jury;
2. That she be awarded due but unpaid minimum wages in an amount to be determined at trial against Defendants, jointly and severally, plus an additional like amount in liquidated damages;

3. That she be awarded nominal damages; and

4. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

|  |  |
|---|---|
|  | **DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC** |
| 101 MARIETTA STREET SUITE 2650 ATLANTA, GEORGIA 30303 (404) 979-3150 (404) 979-3170 (f) michaelcaldwell@dcbflegal.com charlesbridgers@dcbflegal.com | /s/ MICHAEL A. CALDWELL MICHAEL A. CALDWELL GA. BAR NO. 102775  /s/ CHARLES R. BRIDGERS CHARLES R. BRIDGERS GA. BAR NO. 080791  COUNSEL FOR PLAINTIFF |