**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SHARONDA EL, | **Case No.:** |
| Plaintiff, | |
| v. | **COMPLAINT AND** **DEMAND FOR JURY TRIAL** |
| EQUIFAX INFORMATION SERVICES, LLC and TRANS UNION LLC, | 1. **FCRA, 15 U.S.C. § 1681,** *et seq.* |
| Defendants. | |

Plaintiff Sharonda El ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendants Equifax Information Services, LLC ("Equifax") and Trans Union LLC ("Trans Union") (referenced collectively as "Defendants").

## I. <u>INTRODUCTION</u>

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* by the Defendants. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently

reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.   JURISDICTION AND VENUE

2.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.     Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.   PARTIES

4.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.     Plaintiff is a natural person who resides in Riverdale, Georgia.

6.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.      Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

9.      During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

10. Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

11. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.   FACTUAL BACKGROUND

13. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting

methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.    Defendants, two of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

18.    Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants by furnishers, and other information is independently gathered by Defendants from third party providers, vendors or repositories, like computerized reporting services like PACER.

19.    Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

20.    The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

21.    Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

22.    The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the

amount of reported debt, payment history, and dates of delinquencies contained in Defendants' reports.

23.     The information Defendants include in consumer reports contributes to a consumer's overall creditworthiness and determines his or her FICO Score(s).

24.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of his or her creditworthiness.

25.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

> a.  "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.
>
> b.  The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is

in fact discharged, the CRA is indicating that the consumer's "amount
of debt" is higher than it actually is, which will undoubtedly impact the
consumer's credit score.

26.     Lenders also consider a consumer's debt-to-income ratio ("DTI") based
on the total amount of debt reported by Defendants in their consumer reports.  DTI
compares the total amount a consumer owes to the total amount a consumer earns.

27.     A consumer's income, however, is not included in his or her consumer
report; only his or her amount of debt is.

28.     Lenders consider a consumer's DTI when deciding whether to approve
financing and the credit terms thereof.

29.     The higher the amount of reported debt that a consumer has, or appears
to have, the worse the consumer's DTI will be, and the more difficult it will be for
the consumer to obtain credit and favorable credit terms (e.g., higher interest, lower
credit limits).

30.     A consumer who has obtained a bankruptcy discharge and has a
consumer report that is inaccurately reporting outstanding or past due balances after
the bankruptcy discharge suffers greater harm than if that account were
accurately reporting as having a zero-dollar balance.

8

31.     Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged; both such exceptions are rare and, furthermore, are identified on the individual consumer's bankruptcy docket sheet.

32.     Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendants independently obtain consumer bankruptcy case information.

33.     Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

34.     However, Defendants regularly report inaccurate information about consumers after they receive a Discharge Order.

35.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

36.     Defendants regularly publish consumer information that conflicts with information provided by data furnishers to Defendants, already included in

Defendants' credit files, contained in public records that Defendants regularly access, and/or sourced through Defendants' independent and voluntary efforts.

37.    Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

38.    Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681e(b), despite possessing information inconsistent with the reported information that establishes the reported information is inaccurate.

39.    Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

40.    Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

41.    Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendants' own files.

42.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

43.     Thus, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which cause Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

44.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about July 22, 2022, in the United States Bankruptcy Court for the Northern District of Georgia (Case No. 22-55543-jwc).

45.     Plaintiff received an Order of Discharge on or about November 17, 2022.

46.     Thereafter, Plaintiff was not personally liable for her dischargeable debts. All dischargeable debts carried zero-dollar balances after the bankruptcy discharge.

47.     Defendants prepared one or more consumer reports concerning Plaintiff after she was discharged from Chapter 7 Bankruptcy.

48.    In Plaintiff's consumer reports, Defendants included the bankruptcy case number, court, filing date and the fact that Plaintiff's bankruptcy had been discharged in the Public Records section of Plaintiff's consumer reports.

49.    Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

50.    Defendants obtained notice of Plaintiff's Chapter 7 bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendants in Plaintiff's consumer reports.

51.    Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

52.    Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance but did not.

53.     Defendants inaccurately reported Plaintiff's World Finance Account (the "World Account"), starting with 1020******* and opened in February 2022, which pre-dated Plaintiff's bankruptcy filing.

54.     The World Account was included in Plaintiff's bankruptcy and discharged on or about November 17, 2022. Therefore, the World Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

55.     However, Equifax inaccurately reported the World Account as a "Charge-Off" account with a balance of $2,692, and $925 reported as "PAST DUE."

56.     Similarly, Trans Union reported the World Account inaccurately as a "Charge-Off" account with a balance of $2,692, and $925 reported as "PAST DUE."

57.     Defendants did not indicate that the World Account was discharged in bankruptcy or report the World Account with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

58.     The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially where, as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or

the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

59.     The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

60.     According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges. The timeframe is generally between 120 and 180 days after the consumer becomes delinquent, and a charge-off does not mean that the consumer no longer owes the debt. The consumer is still legally obligated to pay the debt.

61.     Notably, the other national consumer reporting agency, Experian, did not inaccurately report the World Account like Defendants.

62.     World Finance furnished information to Defendants that indicated Plaintiff's debt was included or discharged in bankruptcy and/or had a zero-dollar balance after the bankruptcy discharge, but Defendants rejected or otherwise overrode the data they received.

63.     Alternatively, Defendants knew from past experiences that World Finance furnished inaccurate information regarding discharged debts or has

historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

64.     Nevertheless, Defendants blindly relied on the information provided by World Finance even though this information conflicted with or was contradicted by information contained in Defendants' records, as well as Defendants' knowledge regarding Plaintiff's bankruptcy and discharge.

65.     Defendants' reliance on the furnisher, World Finance, was therefore unreasonable.

66.     Defendants inaccurately reported that Plaintiff owed a balance that she did not actually owe, and also reported inaccurate account statuses and/or payment histories.

67.     Defendants inaccurately reported the World Account as a "Charge-Off" after the World Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

68.     Defendants failed to indicate that the World Account had a zero-dollar balance and/or was included/discharged in Chapter 7 Bankruptcy, and instead inaccurately reported the account as a "Charge-Off."

69.     Defendants' reporting of the World Account is patently false/incorrect and therefore inaccurate.

70.    If not patently false/incorrect, Defendants' reporting of the World Account is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

71.    After Plaintiff's bankruptcy discharge, Plaintiff applied for various credit cards, personal loans, and automobile financing opportunities, but was denied for each due to the inaccurate reporting of the World Account by Defendants.

72.    Defendants' inaccurate reporting of the World Account, along with additional information belonging to Plaintiff, was published to multiple potential creditors by Defendants during the process of Plaintiff's credit applications.

73.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

74.    Additionally, Plaintiff suffered economic damages in the form of attorneys' fees incurred for a necessary review of her credit reports.

75.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

//

**V.    COUNT I**
**Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**

76.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

77.    The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

78.    Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after she received a Discharge Order.

79.    Defendants independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

80.    When Defendants procured and published Plaintiff's bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

81.    Defendants knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable

debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

82.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

83.     Additionally, Defendants possess or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

84.     Despite knowledge of these legal obligations, Defendants willfully and consciously breached their known duties and deprived Plaintiff of her rights under the FCRA.

85.     In this case, Defendants inaccurately reported accounts that Defendants knew pre-dated Plaintiff's Chapter 7 Bankruptcy and were included and discharged by Plaintiff's bankruptcy discharge.

86.     Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in Plaintiff's

consumer reports, including Plaintiff's bankruptcy case number, court, date of filing and date of discharge.

87.    Defendants are also on notice from other tradelines reported by Defendants that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

88.    Defendants received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

89.    Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

90.    Yet in this case, Defendants reported the World Account, which pre-dated Plaintiff's bankruptcy, as a "Charge-Off" account without any indication the account was discharged or had a zero balance.

91.    Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendants knew or should have known the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information

known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

92.   Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

93.   Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

94.   Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

95.   Plaintiff suffers actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

96.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

97.   Defendants are direct and proximate causes of Plaintiff's damages.

98.   Defendants are substantial factors in Plaintiff's damages.

99.   Therefore, Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e)    An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.   <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial on all issues so triable.

//

21

RESPECTFULLY SUBMITTED this 30th day of May 2023.

By: */s/ Jenna Dakroub*
Jenna Dakroub, GA #385021
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com
*Attorney for Plaintiff,*
*Sharonda El*