

# 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I – SCOPE OF THE CONVENTION

### Article 1

The objects of the present Convention are –
- a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
- b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

### Article 3

The removal or the retention of a child is to be considered wrongful where –
- a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
- b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction* (ISBN 90 12 03616 X, 481 pp.).

Exhibit 1 - Pg 1

Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

Article 5

For the purposes of this Convention –
a) "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b) "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

CHAPTER II – CENTRAL AUTHORITIES

Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
a) to discover the whereabouts of a child who has been wrongfully removed or retained;
b) to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
c) to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
d) to exchange, where desirable, information relating to the social background of the child;
e) to provide information of a general character as to the law of their State in connection with the application of the Convention;
f) to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
g) where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
h) to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
i) to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

CHAPTER III – RETURN OF CHILDREN

Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –

Exhibit 1 - Pg 2

*a)*     information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;
*b)*     where available, the date of birth of the child;
*c)*     the grounds on which the applicant's claim for return of the child is based;
*d)*     all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

*e)*     an authenticated copy of any relevant decision or agreement;
*f)*     a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;
*g)*     any other relevant document.

### Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

### Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

### Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

### Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

### Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

*a)*     the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

Exhibit 1 - Pg 3

*b)*     there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.
In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

### Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

### Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

### Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

### Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

### Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

### Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

Exhibit 1 - Pg 4

Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV – RIGHTS OF ACCESS

Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V – GENERAL PROVISIONS

Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

Article 23

No legalisation or similar formality may be required in the context of this Convention.

Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Exhibit 1 - Pg 5

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)   any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)   any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

Exhibit 1 - Pg 6

Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI – FINAL CLAUSES

Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

Exhibit 1 - Pg 7

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Exhibit 1 - Pg 8

Thereafter the Convention shall enter into force –
(1)   for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;
(2)   for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.

Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.
If there has been no denunciation, it shall be renewed tacitly every five years.
Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.
The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –
(1)   the signatures and ratifications, acceptances and approvals referred to in Article 37;
(2)   the accessions referred to in Article 38;
(3)   the date on which the Convention enters into force in accordance with Article 43;
(4)   the extensions referred to in Article 39;
(5)   the declarations referred to in Articles 38 and 40;
(6)   the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;
(7)   the denunciations referred to in Article 44.

In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.

Exhibit 1 - Pg 9