IN UNITED STATES DISTRICT COURT
FOR NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

DESIREE DAVIS

     Plaintiff,

v.

LBA HOLDINGS LLC d/b/a
HUDSON GRILLE and RUSSELL
ADAMS

     Defendants.

Civil Action No.:

<u>Jury Trial Demanded</u>

## **COMPLAINT**

COMES NOW Plaintiff, Desiree Davis, by and through her undersigned counsel, files this lawsuit against Defendants LBA Holdings LLC d/b/a Hudson Grille and Russell Adams on behalf of herself and similarly situated employees, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., as amended, for unpaid wage violations.

## **I.  INTRODUCTION**

1.    This case arises from Defendants' violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of its employees at the federally mandated minimum wage rate and for Defendants' failure to pay Plaintiff and all similarly situated workers their earned minimum wages.  Plaintiff brings this case action under the FLSA, 29 U.S.C. 216(b).

2.      Defendants pay their servers below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA.  Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." See 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Bernal v. Bankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay owners for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA). *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees

2

and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC,* 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc*., No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.    Finally, an employer cannot require its tipped employees to perform nontipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc*., 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois*, LLC, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois*, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs

regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. §

531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ.

6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss

explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately

granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC),

2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is

that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her

time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL

10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the

ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee

can engage in related, non-tip-producing activity before such time must be compensated directly

by the employer at the full minimum wage rate.").

8.      Defendants violated the FLSA in the following respects:

a.  **Violation for failure to inform:**  Defendants failed to correctly inform Plaintiff
of the desire to rely on the tip credit to meet their minimum wage obligations.  In fact,
Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage
that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped
employee are increased on account of the tip credit; (3) that all tips received by the
employee must be retained by the employee except for tips contributed to a valid tip pool;
and (4) that the tip credit shall not apply to any employee who does not receive the
notice.

b.  **Violation for making illegal deductions that reduced the direct wage of
Plaintiff below the minimum required hourly wage for tipped employees:**  Plaintiff
was required to purchase certain clothing and equipment to work for Defendants.  These
costs further reduced her wages below the minimum hourly wage required for tipped
employees.

c.  **Violation for performing work unrelated to tipped occupation:**  Plaintiff was
required to perform an excessive amount of non-tipped work, including, but not limited

to, waiting for and seating customers, collecting trash, wiping tables, sweeping floors, sweeping front entry door areas, straightening up her section, cleaning server areas, cleaning condiment areas, cleaning the bottle service area, stocking server areas, stocking condiments, cleaning the counter around the POS machine and register, setting tables, stocking the bottle service area, folding napkins, rolling silverware, vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic wares and extra plates, placing chairs on tables, attending mandatory monthly meetings, and performing mandatory opening and closing procedures.  The mandatory monthly meetings are completely unpaid and typically last at least 2-3 hours.  Each evening, the opening and closing procedures required the completion of duties on a checklist, which added at least 1-2 hours to their non-tip generating work.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:**  Plaintiff was required to perform greater than 20% of her time in performing non-tip producing side work, including, but not limited to, time spent waiting for and seating customers, collecting trash, wiping tables, sweeping floors, sweeping front entry door areas, cleaning server areas, cleaning condiment areas, cleaning the bottle service area, stocking server areas, stocking the condiments, cleaning the counter around the POS machine and register, setting tables, stocking the bottle service area, folding napkins, vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic ware and extra plates, placing chairs on tables, attending mandatory monthly meetings, and performing mandatory opening and closing procedures.

e. **Violation for unpaid training:**  Plaintiff was also required to attend mandatory training that she was not paid to attend, which constituted additional non-tip generating work.

f. **Violations of the TIPA provisions against illegal tip pooling**:  Defendants required Plaintiff to share her tips with Defendants in violation of the tip credit provisions of the FLSA.  Under TIPA:[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit. 29 U.S.C. § 203.

g. **Violations of the Non-Retaliation Provisions of the FLSA**:  Defendants retaliated against Plaintiff immediately after she complained about her unpaid wages.  In December of 2022, Ms. Davis spoke to Michael Pickering, Service Manager, about her incorrect pay for parties and banquets, including concerns about not being paid minimum wages.  On January 17, 2023, Ms. Davis was terminated for complaining about not being paid minimum wages.  Her termination violated the anti-retaliation provisions of the

FLSA.

In addition, Defendants retaliated against Plaintiff shortly after receiving her demand letter requesting payment for unpaid wages and overtime.  Defendants received a demand letter from Plaintiff's Attorney on March 14, 2023.  On Wednesday, April 19, 2023, Ms. Davis visited the Hudson Grille, Sandy Springs Restaurant as a patron, to watch the Lakers v Grizzlies Playoff Game, and was told that she was banned from coming inside of Hudson Grille, Sandy Springs because Director of Operations, Russ Adams, knew that Plaintiff "was speaking bad" the Hudson Grille.[1]

9.      As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## II. SUBJECT MATTER JURISDICTION AND VENUE

10.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.  In particular, Plaintiff worked for Defendants in this District and was denied the wages she is owed in this District.  Thus, Plaintiff was harmed in this District.

---

1 See *Mei-Gsr Holdings, LLC D/B/A Grand Sierra Resort & Casino/Hg Staffing, LLC*, 32-CA-134057 (N.L.R.B-ALJ May 4, 2015) (found employer retaliated by banning former employees an establishment open to the general public because she filed a legal action relating to her workplace).

### III. PARTIES AND PERSONAL JURISDICTION

12.    Plaintiff Desiree Davis is an individual who worked for the Defendants.  She is also a resident of Fulton County, Georgia (within this District).

13.    Plaintiff worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.

14.    Defendant, LBA Holdings LLC d/b/a Hudson Grille, is a Georgia Domestic Corporation with six locations in Georgia, and a principal place of business located at 6317 Roswell Road, Atlanta, GA 30328 (within the District).  On information and belief, Defendant Amy Landau is an owner of Hudson Grille as well as Defendant LBA Holdings, LLC's registered agent.  LBA Holdings LLC can be served with a copy of the summons and complaint by leaving a copy with its registered agent for service Amy Landau, 177 Maribeau Square NW, Atlanta, GA, 30327 (Fulton County).

15.    Defendant Russell Adams ("Adams") is a natural person and the Director of Operations of the Hudson Grille, as well as a resident of DeKalb County, Georgia (within the District).  Russell Adams exercised operational control over Hudson Grille's business operations.  Russell Adams acted directly or indirectly on behalf of Hudson Grille, and, at all times mentioned herein, was an "employer" or joint employer of Plaintiff within the meaning of the FLSA.  Defendant Russell Adams may be served at 3535 Hidden Acres Drive Doraville, GA 30340.

16.    Personal jurisdiction exists over Defendants because they have sufficient minimum contacts with the State of Georgia to confer personal jurisdiction.  Defendants conduct business

throughout Georgia.  Furthermore, Defendants contract with and employ Georgia residents, have Georgia customers, market to residents of Georgia, and own property in Georgia. Moreover, the violation of the law and the harm committed to Plaintiff occurred in Georgia.

## IV. COVERAGE

17.   At all material times, Defendants have been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

18.   At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

19.   At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

20.   At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

## V. FACTS

21.   Defendants operate a restaurant chain in Atlanta, Georgia (Fulton County) commonly known as "Hudson Grille."

22.   Defendants are a full-service restaurant that employ servers and bartenders to provide services to customers.

23.   Defendants' servers gather orders from customers and deliver food and beverages to the customers.  The servers were rarely paid an hourly wage by Defendants but did receive tips from customers.

24.   Defendants paid their tipped workers, including the Plaintiff, less than the minimum wage under the law.

25.   Defendants attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiff.

26.   Plaintiff Desiree Davis worked as a server and a backup bartender, and was paid less than the federal minimum wage.  She worked for Defendants from approximately January 11, 2021 to January 17, 2023, before she was terminated about three weeks after formally demanding payment of her unpaid wages.  Plaintiff spoke to Michael Pickering (Service Manager) about her pay for parties and banquets in December 2022.  Mr. Pickering acknowledged her complaint about Defendants' failure to pay her and stated that he would talk to Heather Watson (Event Coordinator) regarding Plaintiff's complaint.  The payment issues were never addressed.

27.   The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.[2] The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.**
>
> As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color.  The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushing to recoup the costs of free, exploited labor.[3]

---

[2] *See* <u>Investor Statement in Support of Ending the Subminimum Wage</u> (last visited May 22, 2022)
[3] *Id.* (emphasis in original).

28.    Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

29.    In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to properly provide Plaintiff with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee, (4) that they could not be paid lower than the minimum statutory amount per hour ($2.13 per hour under the FLSA), and (5) that the tip credit shall not apply to any employee who does not receive the notice.

30.    Defendants also maintained a policy and practice whereby tipped employees, including Plaintiff, were required to perform non-tip producing side work unrelated to the employees' tipped occupation.  As a result, Plaintiff was engaged in dual occupations while being compensated at the tip credit rate.

31.    Defendants also maintained a policy and practice whereby tipped employees, including Plaintiff, were required to spend a substantial amount of time throughout a workweek, in excess of 20 percent or for more than 30 consecutive minutes, performing non-tip-producing side work related to the employees' tipped occupation.

32.    Specifically, Defendants maintained a policy and practice whereby Plaintiff and other tipped employees were required to spend a substantial amount of time performing non-tip producing side-work, including but not limited to waiting for and seating customers, collecting

trash, wiping tables, sweeping floors, sweeping front entry door areas, straightening up her section, cleaning the server area, cleaning condiment areas, cleaning the bottle service area, stocking server areas, stocking the condiments, cleaning the counter around the POS machine and register, setting tables, stocking the bottle service area, folding napkins, rolling silverware, vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic ware and extra plates, placing chairs on tables, attending mandatory monthly meetings, and performing mandatory opening and closing procedures.

33.   Defendants required Plaintiff to perform work prior to the opening of the restaurant when there were no customers from whom she could earn and generate tips. Specifically, she was required to perform manual labor, cleaning, and setup duties.

34.   Likewise, Defendants required the Plaintiff to remain at the restaurant to perform manual labor, cleaning duties and closing procedures, after Plaintiff was already clocked out and the restaurant had closed for business.  During this time, there was no opportunity to earn tips. At times, Plaintiff spent over 31 minutes upward to 2 hours performing work before the restaurant opened and the same amount of time after the club was closed performing non-tipped producing work.

35. However, Defendants did not pay Plaintiff or its other servers or bartenders a minimum wage rate for this work.  In fact, Plaintiff only received wage payments twice during her entire employment with Defendant as server and as backup bartender.

36.   On January 17, 2023, Plaintiff was terminated approximately three weeks after she complained to her Manager, Michael Pickering, about not being paid minimum wages.  Her termination violated the anti-retaliation provisions of the FLSA.

37.   The duties that Defendants required Plaintiff to perform were duties that are customarily assigned to "back-of-house" employees in other establishments, who typically receive at least the full minimum wage rate.

38.   When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

39.   Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts of non-tipped work.

40.   Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.  Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track the specific tasks for Plaintiff.

41.   However, Defendants did not allow its tipped employees to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

42.   Defendants required their servers to purchase costly uniforms. Defendants' failure to reimburse servers for their uniform constitutes an unlawful deduction which caused Plainatiff's hourly wages (that she never received) to fall further below the minimum wage.

43.   Plaintiff incurred this uniform cost for the benefit and convenience of Defendants.

44.   Because Defendants failed to pay Plaintiff an hourly wage during any week in which she was required to pay for work-related expenses, her compensation fell further below the minimum wage rate.

45.   As a result, Plainatiff was not paid the minimum hourly rate necessary for Defendants to claim the tip credit.

46.     Defendants failed to meet the requirements to claim the tip credit; thus, Defendants were not entitled to take a credit toward their minimum wage obligation to Plaintiff.

47.     As such, Plaintiff  was not compensated at the federally mandated minimum wage.

48.     Defendants' owners (Jeffrey Landau and Amy Landau) and Defendants' management knew or should have known that their policies and practices violated the law because they were previously sued for similar FLSA violations.  See *Washington et al v. Metrotainment Cafe, LLC et al* No, 1:14-cv-3888-AT (N.D.Ga. 2014).   They have not made a good faith effort to comply with the FLSA.   Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law.

<u>**REVISED FIELD OPERATIONS HANDBOOK**</u>
<u>**AND NEW DUAL JOBS REGULATION**</u>

49.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27, which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.   However, nearly every court to have considered that opinion letter held that the opinion letter was not entitled to any deference. *See Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019); *Callaway v. DenOne, LLC*, No. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019).

50.    Therefore, the Department of Labor announced its intention to revise the dual jobs regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.[3]

51.     Therefore, the Department of Labor announced its intention to revise the dual jobs

regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.[4]

52. After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021.[5] After delaying the effective date of the Final Rule, on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit."[6]

53. After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Dual Jobs final rule). The Dual Jobs Final Rule became effective December 28, 2021.[7]

54. Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes.  That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

55. Here, Defendants required Plaintiff to perform non-tip producing work for periods that exceeded 30 minutes. Plaintiff completed non-tipped work prior to when the restaurant was open to the public, throughout her shifts during busuenss hours, and after the restaurant was closed.  During this time, Defendants paid Plaintiff below the minimum wage rate.

56. Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff the full minimum wage rate per hour for all hours she worked for Defendants.

57. Plaintiff was not given proper notice of the tip credit provisions, and performed

substantial work that was unrelated to her tip producing duties.

58.   Plaintiff was not properly informed of Defendants' intent to utilize the tip credit.

59.   Plaintiff was burdened with deductions and expenses, including uniform costs, that further lowered her compensation below the minimum wage.  Such "deductions" constitute an employer's unlawful retention of tips in violation of the FLSA tip credit conditions under 29 U.S.C. 203(m), and preclude Defendants from invoking the "tip credit," *See Widjaja v. Kang Yue USA Corp.*, No. 09-CV-2089 RRM CLP, 2011 WL 4460642, at *6 (E.D.N.Y. Sept. 26, 2011). The tips inappropriately withheld constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act, and invalidate Defendants' eligibility to use the tip credit. *See Martins v. MRG of S. Florida, Inc.*, 112 So. 3d 705 (Fla. Dist. Ct. App. 2013)(FLSA is violated when waitresses' costs incurred for uniforms and payment of walk-out customer's bills caused aggregate wages to fall below the minimum wage in a given week).

## CAUSE OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### FAILURE TO PAY THE MINIMUM WAGE

60.   Plaintiff incorporates the preceding paragraphs by reference.

61.   This count arises from Defendants' violation of the FLSA in connection with its failure to pay the minimum wages. See 29 U.S.C. § 206.

62.   Plaintiff was paid hourly rates less than the minimum wage while working for Defendants.

63. Plaintiff was not exempt from the minimum wage requirements of the FLSA.

64.   Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff being paid less than the Federal minimum wage rate.

65.   Since Defendants are not eligible to apply a tip credit, they owe Plaintiff $5.12 for each hour she worked each week during their employment.  Since Plaintiff was rarely paid $2.13 for the hours she worked each week, Plaintiff is also owed an additional $2.13 for each of the unpaid hours she worked each week.

66.   Defendants' failure to pay the minimum wage to Plaintiff in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. 29 U.S.C. § 255(a).

## COUNT II
### VIOLATION OF THE FAIR LABOR STANDARDS
### OVERTIME PROVISIONS

67.   Plaintiff incorporates the preceding paragraphs by reference.

68.   Ms. Davis worked over 40 hours each week during approximately 32 weeks of employment.  She is owed 1.5 times her regular rate of pay for each hour worked beyond 40.

69.   By its actions alleged herein Defendants willfully, knowingly and/or recklessly violated the FLSA provisions and corresponding federal regulations as detailed herein, by failing to properly pay overtime wage compensation to Plaintiff in accordance with §§ 203, and 207 of the FLSA.

70.   Plaintiff was not an exempt employee under FLSA.

71.   Plaintiff was never told that she was an independent contractor, nor did she qualify to be considered an independent contractor under the FLSA.

72.    Defendants deliberately avoided paying Plaintiff her full compensation earned for all overtime hours worked.

73.    Defendants were aware that it could not lawfully deny Plaintiff her appropriately calculated overtime wages.

74.    Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff's overtime compensation.

75.    As a result of Defendants' violations of the FLSA, Plaintiff suffered damages by failing to receive overtime compensation in accordance with §§ 203, and 207 of the FLSA.

76. As a result of Defendants' unlawful acts, Plaintiff was deprived of overtime compensation in an amount to be determined at trial, and she is entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, costs, attorneys' fees, and other relief.

## COUNT III

### VIOLATION OF THE FAIR LABOR STANDARDS
### ANTI- RETALIATION PROVISIONS

77.    Plaintiff repeats, re-alleges and reiterates the foregoing allegations set forth in the prior paragraphs, as set forth herein and states:

The FLSA's anti-retaliation provision states:

> It shall be unlawful for any person – (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

78.    Plaintiff engaged in an activity protected by the FLSA when she inquired about

payment for parties and banquets  in December 2022.

79.   Defendants acknowledged Plaintiff's complaints about unpaid wages but failed to properly compensate her.

80.   Plaintiff suffered an adverse action by the Defendants' subsequent to and contemporaneous with her protected activity, in that she was terminated.

81.   Shortly before initiating this lawsuit, Plaintiff sent Defendants a formal demand letter seeking payment of her unpaid wages.  Shortly after receiving Plaintiff's demand letter, Defendants immediately banned Plaintiff from entering Defendants' restaurant, which was open to the general public because she was allegedly "talking bad" about Defendants.

82.   Defendants' termination and banning of Plaintiff from its restaurant occurred in close temporal proximity of Plaintiffs' complaints about unpaid wages, which supports a causal connection between the protected activity and the Defendants' adverse actions.

## **WAGE DAMAGES SOUGHT**

83.   Plaintiff  is entitled to receive the minimum wage of $2.13 for each unpaid hour she worked.

84.   Plaintiff is also entitled to receive the difference between the $2.13 minimum wage and the tip credit adjusted minimum wage for each hour she worked.

85.   Plaintiff is also entitled to recover her attorney's fees and costs, as required by the FLSA.

86.   Plaintiff is also entitled damages for emotional distress and mental anguish recoverable in retaliation claims brought under FLSA.

## **JURY DEMAND**

87.   Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

88. For these reasons, Plaintiff respectfully requests that judgment be entered in her favor awarding her:

a.   Minimum wage compensation unadulterated by the tip credit;

b.   Unpaid overtime;

c.   Unpaid regular wages,

e.   Liquidated damages;

f..   Lost wages and back pay;

g.   General compensatory damages for retaliation including but not limited to damages for mental anguish and emotional distress;

h.   Reimbursement for all expenses and wages wrongfully withheld;

i.   An order requiring Defendants to correct its pay practices going forward;

j.   Reasonable attorney's fees, costs, and expenses of this action;

h.   Pre-judgment interest (to the extent liquidated damages are not awarded) and post judgment interest; and

i.   All such other and further relief to which Plaintiff may be entitled, both in law and in equity.

Signature is on the following page

Respectfully submitted,

/s/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No. 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (470) 207-1559
F: (470) 231.0672
alizana@attorneylizana.com

/s/ Tia T. Brown
The Law Office of Thornton Brown, LLC
GA Bar No. 518875
235 Peachtree Street Suite 400
Atlanta, Georgia 30303
T: (404) 946-8702
F: (229) 337-5459
tjbrown@thorntonbrown.com