# EXHIBIT 1

# This is your life insurance policy contract. Please keep it in a safe place with your other important papers.



**Legal & General**
AMERICA

**The person covered by this policy is:**

## ANGELO
## BELVIN

**Getting in touch with Customer Care is easy.  Here's the information you'll need.**



| | |
|---|---|
| **LIFE INSURANCE POLICY INFORMATION**<br>**Policy insured:** ANGELO BELVIN<br>**Policy number:** 181271893<br>**Policy plan:** 30 Year Term<br><br>**HOW TO REACH CUSTOMER CARE**<br>**Phone:** 1.800.638.8428<br>**Email:** customerservice@bannerlife.com<br>**Online:** www.LGAmerica.com | **LIFE INSURANCE POLICY INFORMATION**<br>**Policy insured:** ANGELO BELVIN<br>**Policy number:** 181271893<br>**Policy plan:** 30 Year Term<br><br>**HOW TO REACH CUSTOMER CARE**<br>**Phone:** 1.800.638.8428<br>**Email:** customerservice@bannerlife.com<br>**Online:** www.LGAmerica.com |
| **LIFE INSURANCE POLICY INFORMATION**<br>**Policy insured:** ANGELO BELVIN<br>**Policy number:** 181271893<br>**Policy plan:** 30 Year Term<br><br>**HOW TO REACH CUSTOMER CARE**<br>**Phone:** 1.800.638.8428<br>**Email:** customerservice@bannerlife.com<br>**Online:** www.LGAmerica.com | **LIFE INSURANCE POLICY INFORMATION**<br>**Policy insured:** ANGELO BELVIN<br>**Policy number:** 181271893<br>**Policy plan:** 30 Year Term<br><br>**HOW TO REACH CUSTOMER CARE**<br>**Phone:** 1.800.638.8428<br>**Email:** customerservice@bannerlife.com<br>**Online:** www.LGAmerica.com |



 **Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*

 **Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*

 **Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*

 **Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
1.800.638.8428

*This card is for informational purposes only and is not a guarantee nor proof of coverage. In the event of a discrepancy between this card and the Policy, the Policy controls. All terms and conditions of the Policy apply.*



# RENEWABLE AND CONVERTIBLE TERM LIFE INSURANCE.

**Banner Life Insurance Company** . 3275 Bennett Creek Avenue . Frederick, Maryland 21704 . 800-638-8428

| | | | |
|---|---|---|---|
| **Insured -** | ANGELO ERIC BELVIN | **Face Amount -** | $100,000 |
| **Policy Number -** | 181271893 | **Policy Date -** | 07/01/2016 |
| **Owner(s) -** | ANGELO ERIC BELVIN | | |

Details for Riders, if any, can be found on the Policy Schedule.

**RIGHT TO EXAMINE POLICY FOR 30 DAYS**
**Within 30 days after the Policy is received, it may be returned to the agent through whom it was purchased or to our Home Office. We will then refund any premium paid and the Policy will be deemed void from the beginning.**

**READ YOUR POLICY CAREFULLY**
**This Policy is a legal contract between the Policy Owner and Banner Life Insurance Company.**

In this Policy, Banner Life Insurance Company will be referred to as "we," "our," or "us."

We will pay the face amount to the Beneficiary if the Insured dies while this Policy is in force. Such payment will be subject to the provisions of this Policy.

All payments are subject to the terms of this Policy. The following pages are part of this Policy.

This Policy is issued in consideration of the application and of the payment of the first premium as provided herein. A copy of the application is attached and is made a part of the Policy.

This Policy was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards. Any provision of the Policy that, on the provision's effective date, is in conflict with Interstate Insurance Product Regulation Commission standards for this product type is hereby amended to conform to the Interstate Insurance Product Regulation Commission standards for this product type as of the provision's effective date.

Signed for Banner Life Insurance Company at its Home Office in Frederick, Maryland on the Policy Date.



Secretary

Senior Vice President,
Chief Financial Officer & Treasurer



## Renewable and Convertible Term Life Insurance.

**A change of premium provision is applicable subject to Guaranteed Maximum Premiums**

**The face amount is payable at death while the Policy is in force prior to Expiration Date**

**Premiums are payable as shown in the Policy Schedule to the Expiration Date or until the death of the Insured**

**This Policy is renewable to the Expiration Date**

**This Policy is convertible to the end of the Policy conversion period**

**This Policy is nonparticipating and no dividends are payable**



ICC12OPTN



**TABLE OF CONTENTS**

Change of Premium.................................................................................................................... 7

Conversion.................................................................................................................................. 8

Death Benefit Proceeds............................................................................................................. 9

Definitions.................................................................................................................................. 4

Election of Payment Options...................................................................................................... 10

General Provisions..................................................................................................................... 4

Owner and Beneficiary............................................................................................................... 6

Payment of Proceeds................................................................................................................. 9

Payment Options........................................................................................................................ 10

Payment Option Tables.............................................................................................................. 12

Policy Schedule.......................................................................................................................... 3

Premiums.................................................................................................................................... 6

Renewal...................................................................................................................................... 7

Termination................................................................................................................................. 5

**Concluded With:**

**Riders, benefits, amendments, and endorsements, if any; and copy of applications**

**PLEASE READ YOUR POLICY CAREFULLY**

ICC12OPTN

## POLICY SCHEDULE

| | | |
|---|---|---|
| **INSURED:** | ANGELO ERIC BELVIN | |
| **ISSUE AGE AND SEX:** | 52      MALE | |

| | |
|---|---|
| **POLICY NUMBER:** | 181271893 |
| **ISSUE DATE:** | 02/01/2017 |
| **POLICY DATE:** | 07/01/2016 |
| **POLICY EXPIRATION DATE:** | 07/01/2059 |

**OWNER:**      ANGELO ERIC BELVIN

**RATING CLASS:**      PREFERRED PLUS NONTOBACCO

**TERM PERIODS:**      INITIAL TERM PERIOD OF 30 YEARS, FOLLOWED BY ONE YEAR PERIODS

| FORM NUMBER | TYPE OF COVERAGE | EXPIRATION DATE | FACE AMOUNT | INITIAL ANNUAL PREMIUM* | INITIAL TERM PERIOD |
|---|---|---|---|---|---|
| ICC12OPTN | RENEWABLE AND CONVERTIBLE TERM | 07/01/2059 | $100,000 | $494.99 | 30 years |
| ICC10 ADB | ACCELERATED DEATH BENEFIT | | | FREE | |
| | POLICY FEE | | | $60.00 | |
| | TOTAL | | $100,000 | $554.99 | |

**END OF POLICY CONVERSION PERIOD:** 06/30/2034

**PAYMENT MODE:**      **QUARTERLY**
**PREMIUM DUE DATE:**      JULY  1, OCT  1, JAN  1, APRIL  1 of each year

| ***PREMIUM MODES AVAILABLE:** | ANNUAL | SEMI-ANNUAL | **QUARTERLY** | MONTHLY |
|---|---|---|---|---|
| | $554.99 | $283.04 | **$144.30** | $48.56 |

For all years, and subject to rounding, modal premiums are determined by multiplying the annual premium by the following factors:          semi-annual .51      quarterly .26      monthly .0875

FOR MAXIMUM RENEWAL PREMIUMS FOR BASE COVERAGE , SEE PAGE 3A.

Georgia Office of Insurance & Safety Fire Commissioner's number is 800-656-2298.

POLICY SCHEDULE (CONTINUED)

BASE COVERAGE:  30 YEAR RENEWABLE AND CONVERTIBLE TERM

| YEAR | BASE COVERAGE MAXIMUM ANNUAL RENEWAL PREMIUM* |
|------|-----------------------------------------------|
| 1 | $554.99 |
| 2 | $554.99 |
| 3 | $554.99 |
| 4 | $554.99 |
| 5 | $554.99 |
| 6 | $554.99 |
| 7 | $554.99 |
| 8 | $554.99 |
| 9 | $554.99 |
| 10 | $554.99 |
| 11 | $554.99 |
| 12 | $554.99 |
| 13 | $554.99 |
| 14 | $554.99 |
| 15 | $554.99 |
| 16 | $554.99 |
| 17 | $554.99 |
| 18 | $554.99 |
| 19 | $554.99 |
| 20 | $554.99 |
| 21 | $554.99 |
| 22 | $554.99 |
| 23 | $554.99 |
| 24 | $554.99 |
| 25 | $554.99 |
| 26 | $554.99 |
| 27 | $554.99 |
| 28 | $554.99 |
| 29 | $554.99 |
| 30 | $554.99 |
| 31 | $29,878.00 |
| 32 | $33,483.00 |
| 33 | $37,490.00 |
| 34 | $41,836.00 |
| 35 | $46,458.00 |
| 36 | $51,329.00 |
| 37 | $56,373.00 |
| 38 | $61,647.00 |
| 39 | $67,218.00 |
| 40 | $73,170.00 |

POLICY SCHEDULE (CONTINUED)

| YEAR | BASE COVERAGE MAXIMUM ANNUAL RENEWAL PREMIUM* |
|---|---|
| 41 | $79,676.00 |
| 42 | $86,982.00 |
| 43 | $96,146.00 |

*PREMIUMS MAY BE CHANGED AFTER YEAR 30 AS PROVIDED IN THE CHANGE OF PREMIUM PROVISION.  BASE COVERAGE PREMIUMS INCLUDE POLICY FEE, AND ANY RATING OR FLAT EXTRA, IF APPLICABLE.

For all years and subject to rounding, modal premiums are determined by multiplying the annual premium by the following factors:                    semi-annual  .51        quarterly  .26        monthly  .0875

ICC12OPTN-T30

Page 3A  (CONTINUED)



**DEFINITIONS– All capitalized terms, not otherwise defined herein, shall have the meanings provided below.**

**Beneficiary**
The person to receive the proceeds payable at the Insured's death.

**Contingent Owner**
The Contingent Owner is as named in the application or as subsequently changed by the Owner.

**Expiration Date**
The Expiration Date is the end of the last Term Period. The Expiration Date is shown in the Policy Schedule. After the Expiration Date, no insurance will be provided under this Policy.

**Home and Administrative Office**
Our Home and Administrative Office is located at 3275 Bennett Creek Avenue, Frederick, Maryland 21704.

**Insured**
The Insured is the individual shown in the Policy Schedule.

**Issue Age**
Issue Age is shown in the Policy Schedule and is the Insured's age as of the nearest birthday on the Policy Date.

**Issue Date**
The Issue Date is shown on the Policy Schedule. It is the date we complete the processing of the Insured's approved application, and issue to the Insured or the Owner this life insurance Policy.

**Owner**
The Owner is as named in the application, unless later changed by the Owner. If no Owner is specified, the Insured is the Owner.

**Policy**
Policy shall mean the life insurance policy specified in the Policy Schedule.

**Policy Date**
The Policy Date is shown on the Policy Schedule. This date is used to determine premium due dates, policy anniversaries, years, and months. Coverage will be effective on the Policy Date.

**Renewal Date**
A Renewal Date is the date on which the previous Term Period ended.

**Term Period**
A Term Period is the period of time that premiums are level. The Term Periods are shown in the Policy Schedule.

**Written Notice/Recording Thereof**
Written Notice means a notification or request received from the Owner in a form satisfactory to us. Written Notices are recorded at our Administrative Office. We will not be responsible for the validity of any Written Notice.

**GENERAL PROVISIONS**

**Contract**
The entire contract consists of the following:

- This Policy, including any applicable endorsements;
- Riders, if any;
- Any notice of policy changes sent to the Owner for attachment to this Policy;
- The application, including any supplemental application or amendment to the application; and
- Any application for reinstatement.

ICC12OPTN

4



An application includes all sections and forms the Company has designated as parts of the application.

All statements made in an application are, in the absence of fraud, deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in the application attached to, or considered to have been attached to, this Policy when issued or delivered.

Only the President, a Vice President, or Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

We may not change or amend this Policy without the Owner's consent except as expressly provided in the Policy. However, we may change or amend this Policy if such change or amendment is necessary for it to comply with any state or federal law, rule, or regulation.

**Incontestability**
Statements may be used to contest the validity of this Policy or in defense of a claim only if they are contained in the application or in an endorsement or amendment, and a copy of that application, endorsement, or amendment is attached to, or considered to be attached to, the Policy at issue or is made part of the Policy when a change becomes effective.

We will not contest this Policy after it has been in force during the Insured's lifetime for two years from the Issue Date, except for failure to pay premiums or fraud in the procurement of the Policy (when permitted by applicable law in the state the Policy is delivered for issuance).

If this Policy is reinstated, except for failure to pay premiums and fraud in the procurement of the reinstated Policy (when permitted by applicable law in the state the Policy is delivered for issuance), it will be incontestable after it has been in force during the Insured's lifetime for two years from the effective date of the Reinstatement. The Incontestability period will be based only on statements in the most recent applications, unless the original contestable period has not yet expired. Any Policy change requiring underwriting will be incontestable after it has been in force during the Insured's lifetime for two years from the effective date of the change. Any Policy change will be contestable only for reasons pertaining to statements that were provided to us for the Policy change.

**Misstatement of Age and Sex**
If the Insured's age or sex has been misstated, we will pay the death benefit that the most recent premium paid would have purchased at the correct age and sex. If the correct age is outside of the issue age ranges, the premium and benefit will be extrapolated.

**Suicide Exclusion**
If the Insured, while sane or insane, dies by suicide within two years from the Issue Date or date of reinstatement, our liability will be limited to a refund of all premiums paid to us.

**Nonparticipating**
This Policy is nonparticipating and the Owner will not share in Banner Life Insurance Company's profits or surplus. No dividends are payable on this Policy.

**TERMINATION**

All coverage under this Policy will terminate at the earliest of:

1. The end of the Grace Period, if as described in the Grace Period provision, the minimum premium due was not received;
2. The date we receive Written Notice at our Administrative Office to terminate the Policy;
3. The date of the Insured's death;
4. The Expiration Date specified in the Policy Schedule; or
5. The date the Owner converts to a new Policy.

**OWNER AND BENEFICIARY**

The Owner, primary Beneficiary, and contingent Beneficiary are as shown in the application or a notice of change that has been received at the Home Office in a form acceptable to the Company. The designation of Contingent Owner is as shown in the application or as subsequently elected by the Owner in a Written Notice received at the Home Office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The rights of the Owner are subject to the rights of any irrevocable Beneficiary or assignee we have on record.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living or in existence, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive or in existence at the Owner's death, all ownership rights vest in the Owner's estate or successors. In the event the Owner is other than an individual, and there are no surviving Contingent Owners or successors to the Owner, then the Insured or the Insured's estate becomes the Owner.

**Changes of Owner and Beneficiary**
The Owner, Contingent Owner, primary Beneficiary, and contingent Beneficiary are as shown in the application, unless later changed by the Owner. The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's and the Owner's lifetime. Any change of the irrevocable Beneficiary is subject to the written consent of an irrevocable Beneficiary.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be received at the Home Office in a form acceptable to the Company. Any change will then take effect as of the date the Owner signed the notice unless otherwise specified by the Owner. Such a change shall be subject to and not affect any payment made or other action taken by the Company before Written Notice is received.

**Death of a Beneficiary**
Unless otherwise provided in the Beneficiary designation:

1. The interest of any Beneficiary who dies before the Insured will pass to any surviving Beneficiaries according to their respective interests; or
2. If no Beneficiary survives the Insured, the proceeds will be paid to any surviving contingent Beneficiary according to their respective interest. If no Beneficiary or contingent Beneficiary survives the Insured, the proceeds will be paid in one sum to the Owner, if living; otherwise, to the Owner's estate.

If a trust is named as the Owner or Beneficiary of this Policy, the Company will have no obligation to verify that the trust is valid or that a trustee is acting within the scope of that trustee's authority. Any payment to the trust will release the Company from all obligations under this Policy and the Company will have no obligation to ensure that such payment is applied according to the trust agreement.

**Assignment of Policy**
This Policy may be assigned. We will not be responsible for the validity of an assignment. Written Notice of an assignment must be received by our Home Office in a form acceptable to the Company The assignment will then take effect as of the date the Owner signed the notice unless otherwise specified by the Owner. Such a change shall not affect any payment made or other action taken by the Company before Written Notice is received. Payments to any assignee will only be made in a lump sum.

**PREMIUMS**

**Payment of Premiums**
The first premium must be paid during the Insured's lifetime before any insurance becomes effective. The due date of the first premium is the Policy Date. Each subsequent premium is due on the premium due date(s) shown in the Policy Schedule, and must be paid during the Insured's lifetime. The Owner may change the frequency of the premium payment to any frequency we offer on the date such change is requested. All premiums, after the first, are payable in advance at our Administrative Office. A premium receipt signed by one of our officers will be furnished upon request. In no event may premiums be paid beyond the Expiration Date.

ICC12OPTN

**Grace Period**

Except for the first premium, we will allow a 31 day grace period after the premium due date to pay each premium. During the Grace Period, the Policy will remain in force. We will send notification of the Grace Period and the minimum premium due to the Owner's last known address and to any assignee of record at least 30 days prior to the date the Policy is to terminate.

If sufficient premium is not paid, all coverage under this Policy will terminate without value at the end of the Grace Period. Sufficient premium payment sent by U.S. mail must be postmarked within the Grace Period. If death of the Insured occurs during the Grace Period, we will subtract the premium amount required to provide insurance coverage to the end of the Policy month in which the date of death of the Insured occurred from the Death Benefit Proceeds.

**Reinstatement**

A Policy which terminates in accordance with the Grace Period provision may be reinstated if:

1. Written request for Reinstatement is made within five years after the expiration of the Grace Period and before the Expiration Date of the Policy. The reinstated Policy will be in force from the latter of the date we approve the application for Reinstatement and the date required premiums are paid;
2. The Owner submits a written application;
3. Evidence of the Insured's insurability is received and approved by us; and
4. All due and unpaid premiums, including back payments, with interest payable at an annual rate of [6%] are paid.

## CHANGE OF PREMIUM

We may, at our sole discretion, change the premium for this Policy after the initial Term Period, exclusive of any riders, subject to the following:

1. The annual renewal premium for this Policy will not exceed the maximum annual renewal premium shown in the Policy Schedule;
2. The premium may not be changed more than once during any 12 month period;
3. We will send the Owner, at the address in our records, a Written Notice of any change in premium at least 30 days before the date on which the change will be effective;
4. Any change of premium will be based on our expectations as to future experience for such elements as persistency, expenses, mortality, taxes, and investment earnings;
5. The modal premium will be calculated on the same basis as used on the Issue Date of this Policy;
6. Any change in premium will be on a uniform basis applying to all policies with the same issue age, sex, rating classification, duration, and plan of insurance as this Policy. A change of health will not cause a change of premium; and
7. Any change in premium will take effect on the Policy anniversary date following the date we make the change.

## RENEWAL

**Renewability**

This Policy may be renewable for additional Term Periods. Evidence of the Insured's insurability need not be furnished. Renewal will occur only if premiums have been paid to the Renewal Date. This Policy, however, will not continue beyond the Expiration Date.

**Effective Date of Renewal**

The renewal premium must be paid within 31 days of the Renewal Date in order for the renewal to become effective. If the Insured dies during this period, the Policy will be renewed automatically and the portion of the renewal premium required to provide insurance from the premium due date to the end of the Policy month in which the Insured's death occurs will be deducted in the calculation of proceeds payable.

**Renewal Premiums**

The maximum annual renewal premium rates for this Policy, including riders and benefits, are shown in the Policy Schedule.

ICC12OPTN

**Automatic Renewal**

This Policy will be automatically renewed on the Renewal Date if:

1. This Policy contains a total disability benefit; and
2. Premiums are being waived to the Renewal Date under such disability benefit.

We will waive renewal premiums as long as the Insured continues to be totally disabled under such total disability benefit.

## CONVERSION

This Policy may be converted to a new policy on the Insured's life. Evidence of the Insured's insurability is not required. Any conversion will be subject to the following:

1. Occurring on any premium due date, but not later than the end of the Policy conversion period shown in the Policy Schedule;
2. Receipt of the Owner's written request and application for conversion;
3. Payment of the first premium for the new policy;
4. The Owner returning this Policy to us; and
5. Except for as provided in the Automatic Conversion provision, no conversion shall occur while the Insured is totally disabled under the terms of a total disability benefit.

The new policy will be issued:

1. With the date of conversion as its Policy Date;
2. At the Insured's age on the date of conversion;
3. With the same rating classification as that under this Policy;
4. On any permanent life plan which we, at our sole discretion, make available for conversion and, for the amount converted, we customarily issue on the date of conversion to applicants with the Insured's rating classification;
5. With premiums based on our rates for the rating classification and plan of insurance on the date of conversion;
6. For an amount of insurance not less than our minimum for the plan provided nor greater than the face amount of this Policy on the conversion date. At least one plan of insurance will be available for conversion in an amount equal to the face amount of this Policy on the conversion date;
7. So that the time limit specified in the Incontestability and Suicide provisions of the new policy will be measured from the Issue Date of this Policy; and
8. Subject to any assignment of this Policy received at our office.

The new policy will contain a total disability benefit if:

1. This Policy contains such benefit in force on the date of conversion;
2. On the date of conversion, we customarily issue such benefit to applicants with the Insured's age, sex, and rating classification; and
3. On the date of conversion, we customarily issue such benefit in conjunction with the plan to which the Insured converts.

If more than one type of total disability benefit is available on the date of conversion, the benefit attached to the new policy will be the benefit with the lowest premium.

**Automatic Conversion**

This Policy will be converted to a permanent life plan selected by us at the end of the Policy conversion period if:

1. This Policy contains a total disability benefit;
2. The Insured is totally disabled under the terms of the disability benefit at the end of the Policy conversion period; and
3. Such disability continued during the six months prior to the end of the Policy conversion period.



The new policy's premiums will be based on the Insured's age on the date this Policy is converted. The new policy will be issued for an amount equal to the face amount on this Policy on the conversion date. Any premium falling due while the Insured continues to be totally disabled will be waived.

**DEATH BENEFIT PROCEEDS**

The life insurance proceeds payable at the Insured's death will be (1) plus (2) plus (3) minus (4) where:

(1) Is the face amount of this Policy, shown in the Policy Schedule;
(2) Is any insurance on the Insured's life provided by riders;
(3) Is the portion of any premium paid for a period beyond the Policy month in which the Insured's death occurs; and
(4) Is any premium which is due and unpaid for a period from the premium due date to the end of the Policy month in which the Insured's death occurs.

The payment of interest on the death benefit shall be as follows:

1. Interest shall accrue and be payable from the date of death.
2. Interest will accrue at the rate or rates applicable to the Policy for funds left on deposit. In determining these effective annual rate or rates, the Company shall use the rate in effect on the date due proof is received by the Company.
3. Interest will accrue at the effective annual rate determined in Item 2 above, plus additional interest at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of Items (a), (b), and (c) to the date the claim is paid, where it is:
   a. The date that due proof of death is received by the Company;
   b. The date the Company receives sufficient information to determine its liability, and the appropriate payee legally entitled to the proceeds; and
   c. The date that legal impediments to payment of proceeds that depend on the action of parties other than the Company are resolved and sufficient evidence of the same is provided to the Company. Legal impediments to payment include, but are not limited to: (i) the establishment of guardianships and conservatorships; (ii) the appointment and qualification of trustees, executors, and administrators; and (iii) the submission of information required to satisfy any state and federal reporting requirements.

We will not pay the death proceeds until we receive all of the following at our Administrative Office:

1. This Policy or a completed and notarized lost policy affidavit;
2. Due proof of death, satisfactory to the Company, that the Insured died while the Policy was in effect;
3. A written claim for the death proceeds completed on a form that we supply; and
4. If this Policy or a policy change or reinstatement is contestable as set forth in the Incontestability provision when the Insured died, an authorization, on a form that we supply, from a person authorized to allow us to obtain and disclose information about the Insured.

We reserve the right to require the return of the Policy at time of settlement.

**PAYMENT OF PROCEEDS**

Any amount payable under this contract will be paid in one sum unless otherwise provided. All or part of this sum may be applied to any Payment Option. However, options will not be available if:

1. The net proceeds are less than $2,500;
2. The amount of each payment is less than $50; or
3. In the case of Payment Option 1, 3, or 4, the payee is not a natural person receiving payment in his or her own right.

Proceeds left with us may be withdrawn by Written Notice where such right is given. We reserve the right to postpone payment of any withdrawal for as long as six months from the date we receive Written Notice.

We may require evidence of the survival of any payee before any settlement payment payable to the payee is made.

ICC12OPTN

**ELECTION OF PAYMENT OPTIONS**

**By Owner**
During the Insured's lifetime, the Owner may elect any Payment Option and may change such election if he or she has reserved the right to do so.

If the Owner elects a Payment Option for the Beneficiary, the Beneficiary may not:

1. Change or cancel the election;
2. Assign or transfer the amount held by us; or
3. Withdraw any future installments or unpaid interest installments unless these rights are granted in the election.

**By Beneficiary**
If the Owner does not elect a payment option, the Beneficiary may do so after the Insured's death.

Such election by the Beneficiary:

1. Must be made before the payment of any Policy proceeds has been made; and
2. Shall be effective as of the date of the Insured's death.

**Conditions of Election**
Any election or change must be made by Written Notice to us. No election or change will be effective until we record it.

**PAYMENT OPTIONS**

The annuity benefits at the time of their commencement will not be less than those that would be provided by the application of the cash surrender value to purchase a single consideration immediate annuity contract at purchase rates offered by the Company at the time to the same class of annuitants whether the annuity benefits are payable in fixed or variable amounts, or both.

The following sections describe the payments options available under this Policy.

**Option 1 − At Interest**
The proceeds may be left with us to draw interest. Interest may be paid annually, semi-annually, quarterly, or monthly. The first payment will be made at the end of the interest frequency period chosen. The guaranteed interest rate is 1.5%, compounded yearly. Interest shall not be paid beyond the lifetime of one payee except with our consent.

**Option 2 − Payments of a Fixed Amount**
Under this option, the Company will make monthly payments in the amount chosen until the proceeds and earned interest have been paid in full. The total amount paid each year must be at least 5% of the original proceeds. The length of the payment period will depend on the amount chosen the amount of the proceeds applied, and the amount of interest earned.

**Option 3 − Payments for a Fixed Period**
We will make payments for a fixed period. The amount of each payment, per $1,000 of Policy proceeds, will not be less than that shown in Table A. At the payee's death, we will continue to pay the balance of the unpaid payments to the payee's Beneficiary.

**Option 4 − Life Income**
We will make equal monthly payments during the payee's lifetime, with a minimum period guaranteed (60 or 120 months). Payments will end with the last monthly payment before payee's death. The amount of each payment, per $1,000 of Policy proceeds, will not be less than that shown in Table B.



**Evidence of Survival**

We have the right to require satisfactory proof of any payee's age. The right to change options is not available after payments commence under this option.

**Basis of Values**

The Payment Option tables are based on an interest rate of 1.5% compounded yearly. For options involving lifetime income, mortality rates are based on the 2000A Mortality Table. We may offer more favorable rates than those determined on this basis.

**Additional Options**

Any proceeds payable under this Policy may be paid under any other method of payment agreed to by us at the time of settlement.

ICC12OPTN

**PAYMENT OPTION TABLES**

**Table A − Monthly Payments for Each $1,000 of Proceeds**

| Number of Years | Monthly Payments |
|:---:|:---:|
| 5 | 17.28 |
| 6 | 14.51 |
| 7 | 12.53 |
| 8 | 11.04 |
| 9 | 9.89 |
| 10 | 8.96 |
| 11 | 8.21 |
| 12 | 7.58 |
| 13 | 7.05 |
| 14 | 6.59 |
| 15 | 6.20 |
| 16 | 5.85 |
| 17 | 5.55 |
| 18 | 5.27 |
| 19 | 5.03 |
| 20 | 4.81 |
| 21 | 4.62 |
| 22 | 4.44 |
| 23 | 4.28 |
| 24 | 4.13 |
| 25 | 3.99 |
| 26 | 3.86 |
| 27 | 3.75 |
| 28 | 3.64 |
| 29 | 3.54 |
| 30 | 3.44 |

ICC12OPTN

**Table B, Monthly Payments for Each $1,000 of Proceeds**

| | LIFE ONLY | | LIFE WITH PERIOD CERTAIN | | | |
| | | | 5 Years | | 10 Years | |
| Age | Male | Female | Male | Female | Male | Female |
|---|---|---|---|---|---|---|
| 50 | 3.24 | 3.00 | 3.24 | 3.00 | 3.22 | 2.99 |
| 51 | 3.32 | 3.06 | 3.31 | 3.06 | 3.29 | 3.05 |
| 52 | 3.39 | 3.13 | 3.38 | 3.12 | 3.36 | 3.11 |
| 53 | 3.47 | 3.19 | 3.46 | 3.19 | 3.44 | 3.18 |
| 54 | 3.55 | 3.26 | 3.54 | 3.26 | 3.51 | 3.25 |
| 55 | 3.63 | 3.34 | 3.63 | 3.33 | 3.60 | 3.32 |
| 56 | 3.73 | 3.42 | 3.72 | 3.41 | 3.68 | 3.39 |
| 57 | 3.82 | 3.50 | 3.81 | 3.49 | 3.77 | 3.47 |
| 58 | 3.92 | 3.59 | 3.91 | 3.58 | 3.87 | 3.56 |
| 59 | 4.03 | 3.68 | 4.02 | 3.67 | 3.97 | 3.64 |
| 60 | 4.15 | 3.78 | 4.13 | 3.77 | 4.07 | 3.74 |
| 61 | 4.27 | 3.88 | 4.25 | 3.87 | 4.19 | 3.83 |
| 62 | 4.40 | 3.99 | 4.38 | 3.98 | 4.30 | 3.94 |
| 63 | 4.54 | 4.11 | 4.52 | 4.09 | 4.43 | 4.05 |
| 64 | 4.69 | 4.23 | 4.66 | 4.22 | 4.55 | 4.16 |
| 65 | 4.85 | 4.37 | 4.81 | 4.35 | 4.69 | 4.28 |
| 66 | 5.02 | 4.51 | 4.98 | 4.49 | 4.83 | 4.41 |
| 67 | 5.20 | 4.66 | 5.15 | 4.64 | 4.98 | 4.55 |
| 68 | 5.39 | 4.83 | 5.33 | 4.80 | 5.13 | 4.69 |
| 69 | 5.60 | 5.00 | 5.53 | 4.97 | 5.29 | 4.84 |
| 70 | 5.82 | 5.19 | 5.73 | 5.15 | 5.45 | 5.00 |
| 71 | 6.05 | 5.40 | 5.95 | 5.34 | 5.62 | 5.17 |
| 72 | 6.30 | 5.62 | 6.18 | 5.55 | 5.79 | 5.34 |
| 73 | 6.57 | 5.85 | 6.42 | 5.78 | 5.96 | 5.52 |
| 74 | 6.85 | 6.11 | 6.67 | 6.02 | 6.14 | 5.71 |
| 75 | 7.15 | 6.39 | 6.94 | 6.28 | 6.32 | 5.91 |
| 76 | 7.48 | 6.69 | 7.22 | 6.55 | 6.51 | 6.11 |
| 77 | 7.82 | 7.01 | 7.52 | 6.84 | 6.69 | 6.31 |
| 78 | 8.19 | 7.37 | 7.83 | 7.16 | 6.87 | 6.52 |
| 79 | 8.59 | 7.75 | 8.15 | 7.49 | 7.05 | 6.73 |
| 80 | 9.02 | 8.16 | 8.49 | 7.84 | 7.22 | 6.93 |
| 81 | 9.47 | 8.61 | 8.85 | 8.21 | 7.39 | 7.14 |
| 82 | 9.95 | 9.09 | 9.21 | 8.60 | 7.56 | 7.33 |
| 83 | 10.47 | 9.62 | 9.59 | 9.01 | 7.71 | 7.52 |
| 84 | 11.02 | 10.18 | 9.97 | 9.44 | 7.86 | 7.69 |
| 85 | 11.61 | 10.80 | 10.37 | 9.87 | 8.00 | 7.86 |
| 86 | 12.24 | 11.46 | 10.76 | 10.32 | 8.13 | 8.01 |
| 87 | 12.91 | 12.16 | 11.17 | 10.77 | 8.24 | 8.15 |
| 88 | 13.62 | 12.92 | 11.57 | 11.22 | 8.35 | 8.27 |
| 89 | 14.37 | 13.72 | 11.97 | 11.66 | 8.45 | 8.38 |
| 90 | 15.17 | 14.56 | 12.37 | 12.10 | 8.54 | 8.48 |
| 91 | 16.02 | 15.43 | 12.77 | 12.52 | 8.61 | 8.56 |
| 92 | 16.92 | 16.35 | 13.16 | 12.92 | 8.68 | 8.64 |
| 93 | 17.87 | 17.30 | 13.54 | 13.31 | 8.74 | 8.71 |
| 94 | 18.88 | 18.30 | 13.91 | 13.69 | 8.80 | 8.76 |
| 95 | 19.97 | 19.33 | 14.28 | 14.05 | 8.84 | 8.81 |

Income Payments for ages not shown furnished upon request. The values above are based on 1.5% and the 2000A Mortality Table. Age above is based on age nearest birthday.

ICC12OPTN



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428

## SUPPLEMENT TO THE APPLICATION

Proposed Insured: ANGELO ERIC BELVIN                              Policy Number: 181271893

## STATEMENT OF GOOD HEALTH AND CONTINUED INSURABILITY

**Declaration of Understanding and Agreement**
I/we understand that insurance under the terms of the Policy cannot become effective until all requirements for the delivery of the Policy are fulfilled, including the completion of this Supplement Regarding Good Health and Continued Insurability Application.

**Representations**

Since the date of the Application Part 1 or Part 2, and except as stated below, has any proposed insured:

1. Consulted, been examined or been treated by a member of the medical profession; or made any appointment for a visit to a medical facility or member of the medical profession?   ☐ Yes   ☐ No

2. Had any answers or statements contained in Part 1 or Part 2 of the Application or supplements thereto changed since the date of the Application? or   ☐ Yes   ☐ No

3. Had any life or accident, health or medical service benefit postponed, declined, rated up, ridered, modified, canceled, or been refused issue, renewal or reinstatement of such insurance or benefits?   ☐ Yes   ☐ No

**If the answer to any of the above questions is "Yes", please provide details below:**

Additional Information                     Date                     Name/Address of Care Provider or Treatment Facility

_____

_____

_____

_____

_____

**Representation and Agreement:**

I/we represent that, to the best of my/our knowledge and belief, these statements are complete and true and agree that this Statement and the answers given herewith will be made part of the Policy.

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

I/we understand and agree that if any of the above representations are answered "Yes", no Policy will be in force and coverage cannot begin unless and until the Company approves this Statement.


_____                    _____
Signature of Proposed Insured (s)                            Date (MM/DD/YYYY)


_____   _____   _____
Signature of Owner (if other than Proposed Insured)   Include title if signing for business
                                                      or trust                    Date (MM/DD/YYYY)

ICC14-LU1013





**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland  21704
800-638-8428
www.LGAmerica.com

## ACCELERATED DEATH BENEFIT

**This rider provides for an accelerated death benefit payment to the Owner of the policy during the lifetime of the Insured subject to eligibility requirements.  An accelerated death benefit payment, hereafter referred to as an ADB, will reduce the policy's death benefit proceeds otherwise payable and limit the availability of any policy cash surrender value and/or any available loan value.  This rider is not intended or designed to provide health, nursing home, or long-term care.  There are no restrictions on the use of an ADB.**

**The policy owner should seek assistance from a tax advisor regarding the tax status of any ADB payment.**
• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

In this Benefit Rider, Banner Life Insurance Company will be referred to as "we"," our" or "us" or "company".  The "policy" is the policy to which this rider is attached. Coverage pursuant to this rider begins on the same date as the coverage for the policy.  This rider is subject to all terms and conditions of the policy, except as provided in this rider. The rider is made part of the policy on the policy issue date.  For purposes of this rider, the insured is as defined in the policy.

### BENEFIT
We will make an accelerated death payment subject to the provisions of this rider.  An ADB payment will require:
1. The Owner's written request, sent to our home office, for an ADB payment.
2. Proof that is acceptable to us that the Owner is eligible for receipt of an ADB payment.
3. A signed acknowledgement of concurrence for payment from all irrevocable beneficiaries and any assignee on the policy.  If the company paying the ADB is itself the assignee under the policy, no signed acknowledgement is required.
4. A full release of any collateral assignment of the policy with the exception of collateral assignment to the company.
5. That, if the policy is a term insurance, it cannot have less than twelve months remaining until the maturity date on the date that payment is to be made.
6. That the policy has not been voided and is not being contested.

The ADB will be paid to the Owner or Owner's estate while the insured is living, unless the benefit has been otherwise assigned or designated by the Owner.  The payment of the accelerated death benefit is due immediately upon receipt of the due written proof sufficient by the company to confirm eligibility for the ADB.

We will not make an ADB if the policy is being continued as extended term insurance or reduced paid-up insurance on the date payment is to be made.

### BENEFIT LIMITS
The maximum accelerated death benefit is the lesser of:
1. 75% of the policy's primary death benefit as determined on the date that the company approves payment of the ADB; and
2. $500,000.
This amount is further reduced by any outstanding policy loan, with accrued interest, on the date of payment of the ADB.

### ADB ELIGIBILITY REQUIREMENTS
To be eligible for an ADB payment the Owner must provide to us:
1. evidence acceptable to us that the Insured is living and has a medical condition that is reasonably expected to result in a life expectancy of twelve months or less; this evidence must include, but is not limited to, certification by a physician that we approve who is licensed to practice medicine in the United States or Canada and is acting within the scope of that license.

2. evidence that election of this benefit is voluntary and without coercion on the part of any third party, including any creditor or government agency.
3. evidence that only one of the Insureds is living, if the policy is a last survivor policy.

Additionally, the company has the right to require a second or third medical opinion to confirm benefit eligibility. Such second and third opinions are at the company's expense. The second medical opinion may include a physical examination by a physician designated by the company. In the case of conflicting opinions, eligibility for benefits shall be determined by a third medical opinion that is provided by a physician that is mutually acceptable to the Owner and the Company.

## EFFECT OF THE ACCELERATED DEATH BENEFIT

The ADB will be treated as a lien against the policy's death benefit. Such lien will limit the availability of any surrender benefit and any future policy loans, policy withdrawals or policy surrenders.

Prior to, and concurrent with, the election to receive an ADB, the owner and irrevocable beneficiary will be given a statement demonstrating the effect of an ADB on the policy's cash surrender values, death benefit, and policy loans.

The lien amount will at any time equal:
1. the amount of the ADB payment to the owner; plus
2. the administrative fee; plus
3. the amount of any premium required to remove the policy from the grace period; plus
4. any unpaid required premiums added to the lien as described below; plus
5. accrued lien interest charges as described below.

For the amount of the lien equal to the policy's cash surrender value at the time the lien is in effect, interest will be charged at the policy loan interest rate stated in the policy. For the amount of the lien in excess of such cash surrender value, interest will be charged at a rate that is no greater than the greater of:
1. the current  yield on a 90-day treasury bill on the date of the ADB payment; and
2. the current maximum adjustable policy loan interest rate allowed by law on the date of payment subject to the Interstate Insurance Product Regulation Commission standards.

After the company makes an ADB payment, the Owner will be liable for premium payments required to keep the policy, and applicable riders, in force through the date of death of the Insured. Any such premium payments, if not paid to the company, will be added to the lien. Cost of insurance charges, if applicable, will continue to be charged against the policy (unless being waived because of a waiver of monthly deduction benefit that is in effect). Waiver of premium benefits, if in effect following payment of an ADB, will continue to apply.

Subsequent to payment of an ADB, upon the death of the insured the proceeds payable will equal the death benefit proceeds, as defined in the policy, less the total lien in effect at the date death.

If the policy has an accidental death benefit provision, that provision shall not be affected by the payment of the accelerated death benefit.

## ADDITIONAL PROVISIONS

There is no premium or cost of insurance charge for this rider. However, an administrative fee that will not exceed $250 will apply at the time the ADB is paid and it will be added to the lien.

The policy's primary death benefit is the death benefit provided by the policy. It does not include any accidental death benefits, the death benefit provided by any riders, or death benefits payable due to the death of anyone other than the Insured. If the policy does not provide for policy loans, the loan value is defined as zero. If the policy does not provide cash surrender values, the cash surrender value is defined as zero.

**INCONTESTABILITY**
The policy's incontestability provision will apply to this rider.

**PAYMENT OPTIONS**
The ADB will be payable to the Owner as a lump sum payment.

If the policy has a cash surrender value, the available ADB will be at least 75% of any such cash surrender value, where such cash surrender value reflects the deduction of any outstanding policy indebtedness.

If the insured dies after the owner elects to receive an ADB, but before the Owner receives such benefits, the election is cancelled and the death benefit is paid pursuant to the policy.

**REINSTATEMENT**
The policy's reinstatement provision will apply to this rider.

**TERMINATION**
This rider will terminate on the earliest of:
1. the date of maturity or termination of the policy;
2. when a nonforfeiture option has become effective under the policy; or
3. at the date the Owner's written request for termination is signed; this request must be received in our home office.

If at any time the total lien amount equals or exceeds the policy's death benefit proceeds as defined in the policy, the policy will terminate. Termination will occur 31 days after the company has mailed a notice of termination to the last known address of the Owner, unless all or part of the lien amount is repaid with 31 days after the noticed is mailed. We will accept a partial repayment only if the death benefit proceeds of the policy would exceed the lien amount after the partial repayment is applied.

Termination shall not prejudice the payment of benefits if the insured became eligible for an ADB while the policy was in force.

This rider is subject to the conditions of this policy. Where a conflict between the rider and the policy exists, the conditions of the rider will control.

The issue date of this benefit is the policy date, or a later date if shown here.

Signed for us at our home office in Frederick, Maryland.

Secretary

Senior Vice President,
Chief Financial Officer & Treasurer



 **Legal & General** AMERICA

Banner Life Insurance Company
3275 Bennett Creek Avenue
Frederick, Maryland 21704
(800) 638-8428

Page 1 - ICC08-LIA (10/08)

**PART 1**
(Please Print)

**SECTION A   PROPOSED INSURED**

| 1. Full Name (Include maiden name in parentheses) | 2. Sex | 3. Date of Birth | | | 4. Social Security Number |
|---|---|---|---|---|---|
| Angelo Eric Belvin | ☒ M ☐ F | Month ▮ | Day ▮ | Year 1964 | ▮4268 |

**5. a. Home Address**

| | | | 5. b. How Long |
|---|---|---|---|
| Street ▮ | City, State  Lithonia, GA | Zip  30038 | 3 years |

| 6. Phone Numbers | 7. State/Country of Birth | 8. U.S. Citizen ☒ Yes ☐ No   Visa Type _____ |
|---|---|---|
| Home ▮ | | If No, Date of Entry into U.S. _____ |
| Work (    ) | Florida | Country of Citizenship _____ |

| 9. Marital Status | 10. Driver's License Number and State of Issue or State ID Number |
|---|---|
| ☐ M  ☒ S  ☐ W  ☐ D | ▮ |

| 11. Occupation (include duties) | 12. Annual Income | 13. Total Net Worth |
|---|---|---|
| Coordinator - Set up groups for mental health | 40,000 | 40,000 |

| 14. a. Employer's Name and Address and Nature of Business | 14. b. How Long Employed |
|---|---|
| 4151 109 C. Memorial Dr. Decatur, GA. 30032  Assertive Community Recovery | 8 years |

15. Have you ever used tobacco or nicotine products in any form?   ☐ Yes - give details below   ☒ No

| Product | Date last used  (month/year) | Amount / Frequency |
|---|---|---|
| Cigarettes | | |
| Cigars | | |
| Other | | |

**SECTION B   BENEFICIARY**  (Share percentage totals must equal 100%. If necessary, use Remarks section, Question 48. If Beneficiary is a trust, check box ☐ and complete Section D.)

16. Primary

| Name  Gale Stewart | Relationship  Sister | % Share  50 |
|---|---|---|
| SSN | Date of Birth  ▮1960 | |
| Name  D▮ R▮ | Relationship  Son | % Share  25 |
| SSN | Date of Birth  ▮2006 | |

17. ~~Continue~~ Primary: Demario Belvin

| Name | Relationship  Son | % Share  25 |
|---|---|---|
| SSN | Date of Birth  ▮1987 | |
| Name | Relationship | % Share |
| SSN | Date of Birth | |

**SECTION C   OWNER**

18. Owner is  ☒ Proposed Insured   ☐ Trust (also complete Section D)   ☐ Other than Proposed Insured or Trust
Complete if the Proposed Insured is not the Owner. (If contingent Owner is required, use Remarks section, Question 48).

| Name  Angelo Eric Belvin | SSN or Tax ID #  ▮4268 | Date of Birth  ▮1964 |
|---|---|---|
| Address ▮ | City, State  Lithonia, GA | Zip  30038 |
| Contact Phone # ▮ | Relationship to Proposed Insured  Self | |
| If Owner is a business, web site address | Email address  angelo.belvin@yahoo.com | |

**SECTION D   TRUST INFORMATION**  (If Trust is Beneficiary and/or Owner).

| 19. Exact Name of Trust | Trust Tax ID # |
|---|---|
| Current Trustee(s) | Date of Trust |

ICC08-LIA (10/08)                                    Page 1



**PART 1** (continued)

**SECTION E    PAYOR**

20. Send premium notices to:   ☒ Insured    ☐ Owner    ☐ Other - If Other, complete the information below

Name   Angelo Eric Belvin                          Relationship to Insured/Owners _____

Address  ███████ ███████              Lithonia                GA           30038
              Street                                          City                    State         Zip

Contact Phone #   ████████████            Email address _____

**SECTION F    INSURANCE APPLIED FOR**

OP Term 30

21. Amount of Insurance  $   100,000          22. Plan of Insurance   30 year term- Preferred Rate

23. Death Benefit Option (if available with Plan):   ☒ Level Death Benefit      ☐ Increasing Death Benefit

24. Payment method:              ☐ Direct Bill ☒ Electronic Funds Transfer (EFT)

25. Frequency of premium payment:   ☐ Single   ☐ Annual   ☐ Semi-annual   ☒ Quarterly   ☐ Monthly (EFT only)

26. Planned periodic premium for universal life product: (Provide details in Remarks section, Question 48.)

   a. ☐ 1st Year Only $_____   2nd Year and Thereafter $_____   b. ☐ Premium For All Years $_____

27. Will the premiums for this policy be loaned or otherwise financed by an individual(s) or entity other than the Proposed Insured or
   immediate family members of the Proposed Insured?   ☐ Yes   ☒ No
   If Yes, please identify all parties involved and provide copies of all financing agreements or promissory notes and all related side
   agreements and schedules. (Provide details in Remarks section, Question 48.)

28. a. Date to Save Age?  ☒ Yes  ☐ No      b. Specific Policy Date?   ☐ Yes   ☐ No   Date _____

**Additional Benefits (if available)**

29. ☐ Waiver of Premium     ☐ Other (description and amount) _____

**SECTION G    OTHER INSURANCE**

30. a.  Excluding this application, amount of insurance currently pending with other companies. If NONE state NONE.  $  NONE

    b.  Of the above pending amount in 30.a., how much do you intend to accept?            $  ———

    c.  Provide information for each policy in force (except group insurance). (If necessary, use Remarks section, Question 48.)
        If NONE state NONE.

| Company | Policy Number | Face Amount | Business? Yes | Business? No | Issue Date | Replacing? Yes | Replacing? No | Beneficiary |
|---------|---------------|-------------|------|------|------------|------|------|-------------|
| NONE |  |  | ☐ | ☐ |  | ☐ | ☐ |  |
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |

|  | Yes | No |
|---|---|---|
| 31. Have you ever had an application for life or health insurance declined, postponed, rated or offered with a reduced face amount?  (If Yes, provide details in Remarks section, Question 48.) | ☐ | ☒ |
| 32. Will you, or are you likely to, replace, end, or change existing insurance or annuity with any company or society with the insurance for which you are applying? (If Yes, the broker may be required to provide additional forms for your review and signature.) | ☐ | ☒ |
| 33. Are there any plans to sell or permanently assign the policy to another person or entity, life settlement provider or an investor, or will it replace a policy that has already been sold to another life settlement company or investor? (If Yes, provide details in Remarks section, Question 45.) | ☐ | ☒ |

**PART 1** (continued)

| SECTION H     GENERAL QUESTIONS   (Explain all Yes answers in Remarks section, Question 48.) | Yes | No |
|---|---|---|
| 34. Has any person promised or agreed to give or have they given to any party to the application, any inducement, fee or compensation as an incentive to purchase the policy? | ☐ | ☒ |
| 35. Has any party to the application ever sold, transferred or assigned any life insurance policy to a third party, such as a viatical settlement entity, life settlement entity, insurance company, other secondary market provider, or premium financing entity? | ☐ | ☒ |
| 36. Has any party to the application ever received inducement, fee or compensation as an incentive to purchase, sell, transfer or assign a policy? | ☐ | ☒ |
| 37. In the past 5 years, have you requested or received a Worker's Compensation, Social Security, or disability income payment? | ☐ | ☒ |
| 38. Have you ever been convicted of, or are you currently charged with, a felony or misdemeanor, or are you currently on parole or probation? | ☐ | ☒ |
| 39. In the past 5 years, has your driver's license been suspended or revoked, or have you been convicted of 2 or more moving violations or accidents? | ☒ | ☐ |
| 40. In the past 5 years, have you been convicted of, or plead guilty or no contest to, driving while impaired, intoxicated, or under the influence of alcohol or drugs?  (If Yes, complete Alcohol/Drug Usage Questionnaire.) | ☐ | ☒ |
| 41. Are you a member, or do you intend to become a member, of the armed forces, including the reserves? | ☐ | ☒ |

| SECTION I     OTHER ACTIVITIES | Yes | No |
|---|---|---|
| 42. Do you hold a current pilot license, or have you in the past 5 years flown, or within the next 2 years do you intend to fly, other than as a passenger in any type of aircraft?  (If Yes, complete Aviation Questionnaire.) | ☐ | ☒ |
| 43. Have you in the past 2 years engaged in, or within the next 2 years do you intend to engage in, certain activities such as hang gliding, hot-air ballooning, ultra-light flying, heli-skiing, mountain, ice or rock climbing, cliff or base jumping, motor vehicle racing, motorcycle or any other motorized land or water vehicle racing, or scuba or sky diving?   (If Yes, complete appropriate questionnaire.) | ☐ | ☒ |
| 44. Do you intend to travel outside the U.S. or Canada, or change your country of residence in the next 12 months? (If Yes, list countries, cities, duration and purpose of travel in Remarks section, Question 48.) | ☐ | ☒ |

**SECTION J     PROPOSED INSURED FINANCIAL INFORMATION**

**Complete this section when applying for face amount over $1,000,000 or when the Proposed Insured is over age 65:**

45. a.  What is the purpose of this insurance? (e.g. income replacement, buy-sell, keyperson, estate conservation)

_____

   b.  How was the need for the face amount determined? _____

|   | Yes | No |
|---|---|---|
| c.  In the last 5 years, has the Proposed Insured filed for bankruptcy or had any charge off of bad debts? | ☐ | ☐ |

   If Yes, type of bankruptcy and discharge date or charge off date. _____

46. a.  Gross annual earned income (salary, bonuses, etc. from W-2 forms)          $ _____

   b.  Gross annual unearned income (dividends, interest, rental income, etc.)      $ _____

|   | Yes | No |
|---|---|---|
| c.  Is the Proposed Insured self-supporting? | ☐ | ☐ |

   If No, how much insurance is in-force on the life of the person providing the support?   $ _____

   What is that person's relationship to the Proposed Insured? _____



Submit this page with the rest of the application even if no information entered.                    Page 4 – ICC08-LIA (10/08)

**PART 1** (continued)

**SECTION K     BUSINESS FINANCIAL INFORMATION**

Complete this section when applying for face amount over $1,000,000 and if Beneficiary or Owner is a business:

|  | Current YTD | Previous Year |
|---|---|---|
| 47. a. Assets | $ | $ |
| b. Liabilities | $ | $ |
| c. Gross Sales | $ | $ |
| d. Net Income after Taxes | $ | $ |
| e. Fair Market Value of the business | $ | $ |

f. How long has the business been established? _____

g. What percentage of the business does the Proposed Insured own? _____

|  | Yes | No |
|---|---|---|
| h. Are other partners/owners/executives being insured?  (If Yes, use Remarks section, Question 48.) | ☐ | ☐ |
| i. In the last 5 years, has the business filed for bankruptcy or had any charge off of bad debts? | ☐ | ☐ |

If Yes, type of bankruptcy and discharge date or charge off date. _____

j. Company web site address, if available _____

**48. Remarks:** Explanations and/or special requests. Use Part 1 Supplement to Application if necessary.

Mr. Belvin may had more than 2 speeding tickets in the past five years.  Maybe not though.  He can't recall.

Add Demario Belvin, relationship is Angelo's son as a primary beneficiary.  Share of 25%   Birthdate is █████1987
Will get the social security number.

Page 5 - ICC08-LIA (10/08)

**IN CONNECTION WITH THIS APPLICATION FOR INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:**

I/we have read the application and all statements and answers contained in Part 1 and Part 2 of this application and any supplements thereto, copies of which shall be attached to and made a part of any policy to be issued, are true and complete to the best of my/our knowledge and belief and made to induce Banner Life Insurance Company (the Company) to issue an insurance policy. The statements and answers in the application are the basis for any policy issued by the Company, and no information about me will be considered to have been given to the Company unless it is stated in the application. I agree to notify the Company of any changes to the statements and answers given in any part of the application before accepting delivery of any policy.

No agent or other person has power to: (a) accept risk; (b) make or modify contracts; (c) make, void, waive or change any conditions or provisions of the application, policy or receipt, as applicable; (d) waive any Company rights or requirements; (e) waive any information the Company requests; (f) discharge any contract of insurance; or (g) bind the Company by making promises respecting benefits upon any policy to be issued.

I agree that: (1) I/we will notify the insurer if any statement or answer given in any part of the application changes prior to policy delivery; and (2) except as provided in the Temporary Insurance Application and Agreement, if any, insurance will not begin unless all persons proposed for insurance are living and insurable as set forth in the application at the time a policy is delivered to and accepted by the Owner and the first modal premium is paid.

Changes or corrections made by the Company and noted in Part 1, Question 48 above are ratified by the Owner upon acceptance of a contract containing this application with the noted changes or corrections. In those states where written consent is required by statute or State Insurance Department regulation for amendments as to plan, amount, classification, age at issue, or benefits, such changes will be made only with the Owner's written consent.

### AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I hereby authorize any physician, medical professional, hospital, clinic or medical care facility; pharmacy benefit manager, prescription database; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB), to provide the Company and its legal representatives or affiliated insurers, all information they have pertaining to: medical consultations; treatments; hospitalizations for physical and/or mental conditions, use of drugs or alcohol; drug prescriptions; or any other information for me. Other information could include items such as: other insurance information; personal finances; habits; hazardous avocations; motor vehicle records; court records; or foreign travel, etc.

I understand that the information obtained will be used by the Company to determine my eligibility for insurance. I authorize that any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I understand that this consent may be revoked at any time by sending a written request to the Company, Attn: Director of Underwriting, Banner Life Insurance Company, 3275 Bennett Creek Avenue, Frederick, Maryland 21704.

The consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize the Company to obtain an investigative consumer report on me. I understand that I may request to be interviewed for the report and receive, upon written request, a copy of such report.

If an investigative consumer report is prepared, I elect to be interviewed:  ☒ Yes   ☐ No

### DECLARATION

I/we have carefully read the Temporary Insurance Application and Agreement (TIAA) and understand and agree to the terms thereof including the conditions under which a limited amount of insurance may become effective prior to policy delivery. I/we understand that all premium checks are to be made payable to **Banner Life Insurance Company** (payee should not be left blank); checks are not to be made payable to the agent, agency or other third party. I/we have received the Notice to Proposed Insured, which includes the Medical Information Bureau Pre-Notice Disclosure and the Federal Fair Credit Reporting Notice.

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law. **Please see fraud warnings on page 6 prior to signing this application.**

| | | |
|---|---|---|
| _Angela E. Selin_ | Signed at _Lithonia GA._ on _12/22/2016_ |
| Signature of Proposed Insured | City/State |

Signed at _____ on __/__/__
                City/State

Signature of Owner (if other than Proposed Insured)
If Owner is a firm or corporation, include officers' title with signature

Print Owner/Officer Name and Title (if applicable)

_Deral Pitts_          Signed at _Atlanta GA_ on _12/22 / 2016_
Signature of Licensed Insurance Agent                City/State

ICC08-LIA (10/08)                          Page 5





EXTRA

80 4626 0360



ICC08 LU-1267 (10/08)

BAN

**PART 2**
Medical History

**Legal & General** AMERICA

Banner Life Insurance Company
3275 Bennett Creek Avenue
Frederick, Maryland 21704
(800) 638-8428

1. Name of Proposed Insured    Angelo E. Belvini    Date of Birth ▮▮ 6 4
2. Height 5 ft. 10 in.    3. Weight 170 lbs.
   If your weight has changed by over 10 lbs. in the last year, indicate amount and reason    NONE

**PHYSICIAN INFORMATION**

4. **Primary Physician**
   Name    NONE
   Address
   Telephone                          Date last seen
   Reason last seen and results of visit

5. **Physician Last Consulted**
   Name    NONE          Specialty
   Address
   Telephone                          Date last seen
   Reason last seen and results of visit

6. Has a parent or sibling ever been diagnosed or treated by a member of the medical profession for heart or kidney disease, stroke, diabetes, cancer, melanoma, suicide or Huntington's Disease, Sickle Cell Disease or Familial Adenomatous Polyposis (FAP)? If Yes, give details in the Family History chart below. ........................
   **Yes    No**    ▮

**Family History: Include the age at onset/event for each medical condition.**

|          | Medical Conditions | Age at Onset/Event | Age if Living | Cause of Death | Age at Death |
|----------|-------------------|--------------------|---------------|----------------|--------------|
| Father   |                   |                    |               | ANEURYSM       | 60           |
| Mother   |                   |                    |               | CANCER TYPE UNKNOWN | 55      |
| (4) Brothers | Good          |                    | 65-           | UNKNOWN        | 50           |
| (6) Sisters | Good           |                    | 58-46         |                |              |

**MEDICAL HISTORY** - Provide details to Yes answers in the Remarks section. Include provider, date, symptoms, diagnosis and treatment.

**Remarks - Explain All Yes Answers**
Enter question number before detailed response.

Questions 7-22, have you ever consulted a member of the medical profession regarding or have you been diagnosed or treated for:

7. High blood pressure, high cholesterol, abnormal electrocardiogram, chest pain, irregular heart rhythm, palpitations, heart murmur, heart attack, angina, phlebitis, peripheral vascular disease, or any other disease or disorder of the heart or blood vessels?........................

8. Hepatitis, ulcer, internal bleeding, colitis, acid reflux, GERD, or any other disease or disorder of the stomach, gall bladder, esophagus, liver, pancreas, spleen, intestines, colon, or rectum? ........................

9. A disorder of your blood or immune system including anemia, blood clots, bleeding, immune deficiency, leukemia, or lymphoma (excluding HIV)?........................

ICC08 LU-1267 (10/08)

**PART 2 - Medical History (continued)**

| Name of Proposed Insured Aregzio Bzckins | Yes | No | Remarks - Explain All Yes Answers |
|---|---|---|---|
| 10. Cancer, tumor, melanoma, or any other malignant disorder?............................. | | | |
| 11. Diabetes or high blood sugar or any other disease or disorder of the pituitary, thyroid, or endocrine glands? ............................................................................ | | | |
| 12. Albumin, protein, blood or sugar in the urine or any other disease or disorder of the kidney or bladder? ................................................................................ | | | |
| 13. Cyst, polyp, lump, or other growth, or any disease or disorder of the skin or lymph nodes? ............................................................................................... | | | |
| 14. Any disease or disorder of the uterus, cervix, ovaries, or breasts?....................... | | | |
| 15. Any disease or disorder of the prostate or reproductive system? .......................... | | | |
| 16. Any sexually transmitted disorders or diseases?............................................... | | | |
| 17. Pregnancy, complications of pregnancy or infertility? .......................................<br>If now pregnant, what is the expected date of delivery? _____ | | | |
| 18. Asthma, shortness of breath, chronic cough or hoarseness, bronchitis, emphysema, COPD (chronic obstructive pulmonary disease), sarcoidosis, pneumonia, TB (tuberculosis), sleep apnea, or any other disorder of the respiratory system? .................................................................................... | | | |
| 19. A disorder of the brain, spinal cord, or nervous system including chronic headaches, convulsions or loss of consciousness, seizures, tremors, paralysis, fainting, stroke, MS (multiple sclerosis), or TIA (transient ischemic attack)?......... | | | |
| 20. Depression, anxiety, psychosis, suicidal thoughts or attempts of suicide, anorexia or bulimia, obsessive compulsive disorder, bipolar disorder, or other mental, nervous or emotional disorder?............................................ | | | |
| 21. Arthritis or disorder of the bones, skin or muscles? ............................................ | | | |
| 22. Any disease or disorder of the eyes, ears, nose or throat?................................. | | | |
| 23. In the **last 5 years**, unless previously stated on this application, have you:<br>a. Been treated by a member of the medical profession or at a medical facility? .....<br>b. Had an electrocardiogram, x-ray, blood test, or other diagnostic test, excluding an HIV test? ................................................................................<br>c. Had surgery or biopsy, or been an inpatient or outpatient in a hospital, clinic, or other medical or mental health facility? .............................................<br>d. Been advised by a member of the medical profession to have surgery, medical treatment, biopsy, or diagnostic testing, excluding HIV testing, that has not yet been completed?....................................................................<br>e. Been referred to any other member of the medical profession or medical facility? ......................................................................................................<br>f. Been unable to work, attend school or perform the normal activities of like age and gender, or been confined at home? .................................................. | | | |
| 24. a. Have you ever used amphetamines, barbiturates, cocaine, heroin, crack, marijuana, LSD, PCP or other illegal, restricted or controlled substances, except as prescribed by a licensed physician? ...................................................<br>If Yes, please provide dates of use:  From_____ To _____<br>Name of drug used: _____<br>Amount and frequency of use: _____ | ☐ | ☒ | |



ICC08 LU-1267 (10/08)

**PART 2 - Medical History (continued)**

| Name of Proposed Insured Angelo Belvin | Yes | No | Remarks - Explain All Yes Answers |
|---|---|---|---|

24. b. Have you ever been addicted to prescription medication or been advised by a physician to discontinue using habit forming drugs?........................... ☐ ☒
   If Yes, provide dates of use, type and frequency.

25. Have you ever:
   a. Consumed alcoholic beverages?.......................................................... ☐ ☒
      If Yes, give type and number of drinks per day and/or per week.
      Date of last consumption: _____
   b. Been advised by a physician or other licensed medical practitioner to limit or cease the use of alcoholic beverages?............................................. ☐ ☒
   c. Been counseled, sought help or treatment, or been advised by a physician or other licensed medical practitioner to undergo counseling or treatment for alcohol problems?............................................................................ ☐ ☒
   d. Attended or joined any organization due to alcohol or related problems? ......... ☐ ☒

26. Are you currently:
   a. Taking or have you been advised to take any prescribed medication (other than contraceptives)?.................................................................
   b. Taking any herbal or non-prescription medication at least weekly?...............
      If Yes, give details. _____

27. Have you taken any other medications in the **past 2 years**?.............................
   If Yes, list in Remarks section at right.

28. Have you tested positive for exposure to the HIV infection or been diagnosed as having ARC (AIDS-Related Complex) or AIDS (Auto Immune Deficiency Syndrome) caused by HIV infection or other sickness or condition derived from such infection?....................................................................................

29. In the past 5 years, have you been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for any disease or disorder not previously stated on this application? ..............................................
   If Yes, give details. _____

30. Additional remarks (please indicate which question number remarks reference)

I have read the answers as written before signing, the answers are true and complete to the best of my knowledge and belief, and there are no exceptions to any answers other than written on this document.

_____
Signature of Proposed Insured

Signed at ___Lithonia Ga___ on ___1-11-17___
                City/State                    Date

ICC08 LU-1267 (10/08)                    Page 3



**Legal & General**
AMERICA

**Additional Details
Supplement to Application**

☐ 3275 Bennett Creek Avenue
Frederick, Maryland 21704

☐ 100 Quentin Roosevelt Boulevard
Garden City, New York 11539-9841

Supplement to application for life insurance on the life of ___Anegelo  E  Belvin___
(Print Name of Proposed Insured(s).)

### PART II ADDITIONAL DETAILS

| Question No. | Name of Proposed Insured | Details |
|---|---|---|
| | | No Additional Medical History |

To the best of my knowledge and belief, the answers recorded herein are true and complete. It is agreed that this Supplement to Application, a copy of which shall be attached to the policy when issued, shall become a part of the policy.

**(Please DO NOT use felt tip pen for signatures.)**

Signed at ___Lithonia  GA  30038___ on ___1-11-17___
City          State     Zip          Date (month/day/year)

X _____          X _____
Proposed Insured (or parent or legal guardian if          Owner, if other than Proposed Insured
Proposed Insured is a minor)

X _____          Agent # _____
Agent

LU-1032 (Part II) 2-05





 **Renewable and Convertible Term Life Insurance.**

**A change of premium provision is applicable subject to Guaranteed Maximum Premiums**

**The face amount is payable at death while the Policy is in force prior to Expiration Date**

**Premiums are payable as shown in the Policy Schedule to the Expiration Date or until the death of the Insured**

**This Policy is renewable to the Expiration Date**

**This Policy is convertible to the end of the Policy conversion period**

**This Policy is nonparticipating and no dividends are payable**



ICC12OPTN

STATEMENT OF POLICY COST AND BENEFIT INFORMATION FOR POLICY   181271893

ANY CORRESPONDENCE REGARDING THIS POLICY SUMMARY MAY BE FORWARDED EITHER TO OUR HOME OFFICE OR TO THE AGENT LISTED BELOW:

PREPARED BY:

BANNER LIFE INSURANCE COMPANY
3275 BENNETT CREEK AVENUE
FREDERICK, MD 21704

AGENT:
ALL AXCESS INSURANCE LLC
9040 TOWN CENTER PARKWAY
LAKEWOOD RANCH, FL 34202
USA

THIS POLICY SUMMARY WAS PREPARED ON   JULY 01, 2016 FOR THE LIFE OF
 ANGELO ERIC BELVIN ( MALE ) ISSUE AGE 52.

YOUR COVERAGE CONSISTS OF A RENEWABLE AND CONVERTIBLE TERM POLICY WITH A CHANGE OF PREMIUM PROVISION.  THE TOTAL ANNUAL PREMIUM WILL INCLUDE THE COST FOR WAIVER OF PREMIUM BENEFIT, ACCIDENTAL DEATH BENEFIT, OR RATED EXTRAS IF ISSUED IN YOUR POLICY.

| AGE | YEAR | ANNUAL PREMIUMS GUAR MAX | CUMULATIVE PREMIUMS GUAR MAX | FACE AMOUNT OF INSURANCE |
|---|---|---|---|---|
| 52 | 1 | 554.99 | 554.99 | 100,000 |
| 53 | 2 | 554.99 | 1,109.98 | 100,000 |
| 54 | 3 | 554.99 | 1,664.97 | 100,000 |
| 55 | 4 | 554.99 | 2,219.96 | 100,000 |
| 56 | 5 | 554.99 | 2,774.95 | 100,000 |
| 57 | 6 | 554.99 | 3,329.94 | 100,000 |
| 58 | 7 | 554.99 | 3,884.93 | 100,000 |
| 59 | 8 | 554.99 | 4,439.92 | 100,000 |
| 60 | 9 | 554.99 | 4,994.91 | 100,000 |
| 61 | 10 | 554.99 | 5,549.90 | 100,000 |
| 62 | 11 | 554.99 | 6,104.89 | 100,000 |
| 63 | 12 | 554.99 | 6,659.88 | 100,000 |
| 64 | 13 | 554.99 | 7,214.87 | 100,000 |
| 65 | 14 | 554.99 | 7,769.86 | 100,000 |
| 66 | 15 | 554.99 | 8,324.85 | 100,000 |
| 67 | 16 | 554.99 | 8,879.84 | 100,000 |
| 68 | 17 | 554.99 | 9,434.83 | 100,000 |
| 69 | 18 | 554.99 | 9,989.82 | 100,000 |
| 70 | 19 | 554.99 | 10,544.81 | 100,000 |
| 71 | 20 | 554.99 | 11,099.80 | 100,000 |
| 72 | 21 | 554.99 | 11,654.79 | 100,000 |
| 73 | 22 | 554.99 | 12,209.78 | 100,000 |
| 74 | 23 | 554.99 | 12,764.77 | 100,000 |
| 75 | 24 | 554.99 | 13,319.76 | 100,000 |
| 76 | 25 | 554.99 | 13,874.75 | 100,000 |
| 77 | 26 | 554.99 | 14,429.74 | 100,000 |
| 78 | 27 | 554.99 | 14,984.73 | 100,000 |
| 79 | 28 | 554.99 | 15,539.72 | 100,000 |
| 80 | 29 | 554.99 | 16,094.71 | 100,000 |
| 81 | 30 | 554.99 | 16,649.70 | 100,000 |

| LIFE INSURANCE COST INDICES: | GUARANTEED PREMIUM | |
|---|---|---|
| | 10 YEAR | 20 YEAR |
| SURRENDER COST INDEX | 5.55 | 5.55 |
| NET PAYMENT INDEX | 5.55 | 5.55 |

AN EXPLANATION OF THE INTENDED USE OF THESE INDICES IS PROVIDED IN THE LIFE INSURANCE BUYER'S GUIDE.  THESE INDICES ARE USEFUL ONLY FOR THE COMPARISON OF RELATIVE COSTS OF TWO OR MORE SIMILAR POLICIES.





**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland  21704
800-638-8428
www.LGAmerica.com

**Privacy Policy**

**LEGAL & GENERAL AMERICA PRIVACY POLICY**

**Your privacy is important to us.**

Your privacy is important to us. At Legal & General America (Banner Life Insurance Company, William Penn Life Insurance Company of New York, and Legal & General America Retirement Services, Banner's retirement division), we understand that the information you provide to us or we collect about you is private. This privacy policy is provided to you so that you will understand what Legal & General America does with the personal information you provide to us and the measures we take to protect your privacy.

**Who has access to LIFE INSURANCE policy customer information?**

The information that you provide to us is used for company purposes only. Our employees and independent agents of Legal & General America have access to your information, and are authorized to review it, only for the purposes of carrying out their official duties and responsibilities. Our employees and independent agents are required to keep customer information confidential.

**Who has access to ANNUITY customer information?**

The information that is provided to us is used for company purposes only. Our employees have access to your information, and are authorized to review it, only for the purposes of carrying out their official duties and responsibilities. Our employees are required to keep customer information confidential.

**Why does Legal & General America collect and maintain information?**

As regulated insurance carriers, the Legal & General America companies are required by state laws and regulations to collect and maintain certain information about our customers. The information we collect also enables us to provide you with services and products that meet your individual needs and to provide you with the high level of customer care that you have come to expect from Legal & General America.

**What type of information does Legal & General America collect and maintain?**

We collect and maintain various types of information about our customers. The types of personal information we collect and share depend on the product or service you have with us. This information can include:

- Information that you submit to us, such as your name, address, telephone number, and Social Security Number.

- Information about your transactions, such as payment history and account balance.

- Information from non-affiliated third parties about your medical, employment and income history; banking relationships; your assets and liabilities and your driving record.

- Information from consumer reporting agencies about your credit history.

- Information about you that may be derived from your visits to Legal & General America's website (www.LGAmerica.com).

LU1236BA (8-16)



**Does Legal & General America disclose customer information to, or share customer information with, outsiders?**

We do not disclose any non-public personal financial or any non-public personal medical information about our customers or former customers to anyone, except as permitted or required by law.

As allowed by law, we may from time to time share non-public personal financial information with a non-affiliated third party that performs services or functions on our behalf. These services or functions may include marketing of our own products and services; or financial products or services offered pursuant to a joint agreement between us and one or more financial institutions.

If our privacy policy changes in any material respect, we will notify you of such change as required by law.

**How can you contact Legal & General America if you have privacy questions?**

If you have any questions about the privacy of your information, you can contact our Customer Service Department.

**If you have a Banner life insurance policy, contact:**
Banner Customer Service
Call: 800-638-8428 Toll Free
Fax: 301-294-6960
Hours: 8:00-5:00 ET, Monday - Friday
3275 Bennett Creek Avenue
Frederick, Maryland 21704

**If you have a William Penn life insurance policy, contact:**
William Penn Customer Service
Call: 800-346-4773 Toll Free
Fax: 516-229-3081
Hours: 8:30-4:45 ET, Monday - Friday
3275 Bennett Creek Avenue
Frederick, Maryland 21704

**If you have a Banner retirement annuity, contact:**
Retirement Customer Service
Call: 800-664-6129 Toll Free
Fax: 301-810-4889
Hours: 9:00-6:00 ET, Monday - Friday
3275 Bennett Creek Avenue
Frederick, Maryland 21704

We are in the business of maintaining long-term relationships, and we know there is no quicker way to lose trust than to misuse information.

**Legal & General America Companies**
This notice is provided by: Legal & General America, Banner Life Insurance Company, and William Penn Life Insurance Company of New York.