# EXHIBIT A

046 - FTGA                               FIFTH THIRD BANK

## Demand Note

OFFICER No. 46310                                                                                    NOTE No. ▓▓▓▓5873-_____
$100,000.00                                                                                                                  December 10, 2021
                                                                                                                                     (Effective Date)

1.       PROMISE TO PAY. On demand (the "Maturity Date"), the undersigned, Alif Transport Incorporated, a Georgia corporation located at 712 Kingsgate Ridge, Stone Mountain, Dekalb County, Georgia 30088 ("Borrower") for value received, hereby promises to pay to the order of Fifth Third Bank, National Association, a federally chartered institution located at 3344 Peachtree Rd. NE Ste. 1000, Atlanta, Fulton County, Georgia 30326 for itself and as agent for any affiliate of Fifth Third Bancorp (together with its successors and assigns, the "Lender") the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) (the "Borrowing"), or, if less, the outstanding principal balance, plus interest as provided herein. The outstanding balance of this Note shall appear on a supplemental bank record and is not necessarily the face amount of this Note, which record shall evidence the balance due pursuant to this Note at any time.

Principal and interest payments shall be initiated by Lender in accordance with the terms of this Note from Borrower's account through Auto BillPayer. Borrower hereby authorizes Lender to initiate such payments from Borrower's account located at Fifth Third Bank, N.A., routing number ▓▓▓▓0812 account number ▓▓▓▓9091. Borrower acknowledges and agrees that use of Auto BillPayer shall be governed by the Auto BillPayer Terms and Conditions, a copy of which Borrower acknowledges receipt. Borrower further acknowledges and agrees to maintain payments hereunder through Auto BillPayer throughout the term of this Note. Each payment hereunder may be applied in the following order: accrued interest, principal, fees, charges and advanced costs.

Lender, in its reasonable discretion, may loan hereunder to Borrower on a revolving basis such amounts as may from time to time be requested by Borrower, provided that: (a) the aggregate principal amount borrowed hereunder at any time shall not exceed the Borrowing, and (b) no Event of Default shall exist or be caused thereby. In addition to, and without limiting, any other provisions contained in this Note, the entire principal balance, together with all accrued and unpaid interest and any other charges, advances and fees, if any, outstanding hereunder, shall be due and payable in full upon Demand of the Lender. Until demand, Borrower shall pay interest only in accordance with the terms of this Note.

The principal sum outstanding shall bear interest at a floating rate per annum equal to 7.850% plus the rate of interest per annum established from time to time by Fifth Third Bank, National Association at its principal office as its "Prime Rate", whether or not Fifth Third Bank, National Association shall at times lend to borrowers at lower rates of interest or, if there is no such Prime Rate, then such other rate as may be substituted by Fifth Third Bank, National Association for such Prime Rate. Each determination by Lender of the Prime Rate shall be binding and conclusive in the absence of manifest error. In the event of a change in said Prime Rate, the interest rate shall be changed immediately to 7.850% plus such new Prime Rate. Interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed, and shall be payable on the 4th day of each calendar month beginning on January 4, 2022. Notwithstanding the foregoing, the interest rate charged under this Note shall not be less than 1.000% per annum at any time during the term of this Note.

Index Rate Minimum. Notwithstanding anything to the contrary in this Note, if at any time, the Prime Rate (or any substitute index hereunder) is determined to be less than 3.000%, then the Prime Rate shall be deemed to be 3.000%; provided, that, in no event shall the interest rate on this Note be more than the maximum rate allowed by applicable law.

In addition to, and without limiting, any other provisions contained in this Note, the entire outstanding principal balance, together with all accrued and unpaid interest and any charges, advances, and fees outstanding hereunder, shall be due and payable in full on the earlier of the Maturity Date or upon acceleration of this Note.

Borrower hereby agrees to reimburse and indemnify Lender from all costs and fees incurred by Lender relating to the offering of rates of interest based upon the interest rate index designated under this Note.

Without limiting the generality of any other provision of this Note or the Loan Documents, and in addition thereto, if (any of the following being a "Change"): (x) any law, rule, regulation, guideline, or directive (in each case whether or not having the force of law) is passed,

enacted, promulgated, ordered, issued or adopted, (y) there is any change in any law, rule, regulation, guideline, or directive (in each case whether or not having the force of law and including, without limitation, any request, rule, guideline or directive (1) in connection with the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") or (2) enacted, promulgated, adopted, issued or implemented by the Bank of International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority), or the United States or foreign financial regulatory authorities), or in the interpretation or administration thereof by any governmental authority, central bank or comparable agency charged with the interpretation, application or administration of any of the foregoing, or (z) Lender complies with any request or directive made regarding capital adequacy (whether or not having the force of law) from any such authority, central bank or comparable agency, and such Change shall:

(A)   increase the cost to Lender, by an amount which Lender deems to be material, of making, converting into, continuing or maintaining the aggregate principal amount (or any portion thereof) borrowed hereunder, or reduce any amount receivable hereunder in respect thereof, or

(B)   have the effect of reducing the rate of return on Lender's capital as a consequence of its obligations hereunder to a level below that which Lender could have achieved but for such Change by an amount deemed by Lender to be material, then, in any such case, after submission by Lender to Borrower of a written request therefor, Borrower shall pay Lender any additional amounts necessary to compensate Lender for such increased cost or reduction. Notwithstanding anything to the contrary contained herein, for all purposes of this Note, all requests, rules, guidelines and directives (I) in connection with the Dodd-Frank Act or (II) enacted, promulgated, adopted, issued or implemented by the Bank of International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority), or the United States or foreign financial regulatory authorities shall, in each case, be deemed to constitute a Change whether or not such request, rule, guideline or directive has the force of law and regardless of the date on which such request, rule, guideline or directive was enacted, promulgated, adopted, issued or implemented. A certificate of Lender setting forth the amount or amounts necessary to compensate Lender as specified in this paragraph and delivered to Borrower shall be conclusive absent manifest error. Borrower shall pay Lender the amount shown as due on any such certificate within 10 days after receipt thereof.

Conforming Changes and Replacement of Index Rate.

Lender may from time to time make Conforming Changes to the terms of this Note as may be appropriate, in Lender's sole discretion, to reflect the adoption and implementation of the interest rate index designated in this Note (or any substitute index) in an administratively preferable manner or to align with market practice, and, other than as set forth in the immediately succeeding paragraph, such Conforming Changes will become effective and bind Borrower without notice to Borrower or any action or consent by Borrower.

If Lender determines, in its sole discretion, that (i) an interest rate index designated in this Note (or any substitute index) has become unavailable, unrepresentative, illegal, or unreliable, or that such index rate will not adequately and fairly reflect the cost to Lender of making or maintaining advances under the Note, during the term of this Note (whether any of the aforementioned circumstances are temporary, indefinite, or permanent), or (ii) another interest rate index has become widely recognized in the market to replace such index rate, then in either case, Lender may designate a substitute index by providing written notice of such designation to Borrower. Lender may also add a positive or negative amount to the substitute index value ("Spread Adjustment"), and Conforming Changes as part of the rate replacement. Lender may take into consideration any then-prevailing market convention for selecting a substitute index, Spread Adjustment, and Conforming Changes for the specific index rate that is to be replaced. Such changes to the terms of this Note will become effective and bind Borrower on the date set forth in the written notice Lender gives to Borrower without any action or consent of Borrower.  For clarity, the substitute interest rate will consist of the substitute index, any Spread Adjustment, and the Applicable Margin.

Lender does not warrant or accept any responsibility for, and shall not have any liability with respect to, the administration, submission, or any other matter related to the interest rate index, a substitute index, Spread Adjustment, and Conforming Changes, including without limitation, whether the composition or characteristics of any successor, alternative, or replacement index will be similar to, or produce the same value as or economic equivalence of, the original terms of the Note.

Notwithstanding any provision to the contrary in this Note, in no event shall the interest rate charged on the Borrowing exceed the maximum rate of interest permitted under applicable state and/or federal usury law.  Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the



principal sum outstanding and any other sums (other than interest) due and payable to Lender under this Note, and the provisions hereof shall be deemed amended to provide for the highest rate of interest permitted under applicable law.

    2.    USE OF PROCEEDS. Borrower certifies that the proceeds of this loan are to be used for business purposes.

    3.    NOTE PROCESSING FEE. Lender may charge, and Borrower agrees to pay on the above Effective Date and on each anniversary date of such Effective Date during the term of this Note, a note processing fee in the amount of $175.00.

    4.    TAX RETURNS AND FINANCIAL INFORMATION. Within 30 days of filing, Borrower shall provide Lender with copies of all federal, state and local income tax returns. Within 15 days of the request of Lender, Borrower shall provide to Lender such financial information and financial statements as Lender may reasonably request.

    5.    DEPOSITORY/BANKING SERVICES. Lender shall be the principal depository in which substantially all of Borrower's funds are deposited, and the principal bank of account of Borrower, as long as any Obligations are outstanding, and Borrower shall grant Lender the first and last opportunity to provide any corporate banking services required by Borrower and its affiliates.

    6.    COSTS. Borrower shall reimburse Lender for any and all fees, costs and expenses including, without limitation, reasonable attorneys' fees, and paralegal fees incurred in connection with litigation, mediation, arbitration, other alternate dispute processes, administrative proceedings and appeals of all of the same, other professionals' fees, appraisal fees, environmental assessment fees (including Phase I and Phase II assessments), field exam audits, expert fees, court costs, litigation, documentary stamp taxes, if any, intangible taxes, if any, and other expenses (collectively, the "Costs") incurred or paid by Lender or any of its officers, employees or agents in connection with: (a) the preparation, negotiation, procurement, review, administration or enforcement of the Loan Documents or any instrument, agreement, document, policy, consent, waiver, subordination, release of lien, termination statement, satisfaction of mortgage, financing statement or other lien search, recording or filing related thereto (or any amendment, modification or extension to, or any replacement or substitution for, any of the foregoing), whether or not any particular portion of the transactions contemplated during such negotiations is ultimately consummated, and (b) the defense, preservation and protection of Lender's rights and remedies thereunder, including without limitation, its security interest in the Collateral or any other property pledged to secure the Loans, whether incurred in bankruptcy, insolvency, foreclosure or other litigation or proceedings or otherwise. The Costs shall be due and payable upon demand by Lender. If Borrower fails to pay the Costs when upon such demand, Lender is entitled to disburse such sums as Obligations. Thereafter, the Costs shall bear interest from the date incurred or disbursed at the highest rate set forth in this Note. This provision shall survive the termination of this Note and the other Loan Documents and/or the repayment of any amounts due or the performance of any Obligation.

    7.    DEFINITIONS. Certain capitalized terms have the meanings set forth on any exhibit hereto, in the Security Agreement, if applicable, or any other Loan Document. All financial terms used herein but not defined on the exhibits, in the Security Agreement, if applicable, or any other Loan Document have the meanings given to them by generally accepted accounting principles. All other undefined terms have the meanings given to them in the Uniform Commercial Code as adopted in the state whose law governs this instrument. The following definitions are used herein:

    (a)    "Business Day" means any day on which commercial banks in New York, New York or Cincinnati, Ohio are required to be open for business; *provided* that, notwithstanding anything to the contrary in this definition of "Business Day", at any time during which a Rate Management Agreement with Lender is then in effect with respect to all or a portion of this Note, then the definitions of "Business Day" and "Banking Day", as applicable, pursuant to such Rate Management Agreement shall govern with respect to all purposes in connection with such portion of this Note subject to such Rate Management Agreement. Periods of days referred to in this Note will be counted in calendar days unless Business Days are expressly prescribed.

    (b)    "Collateral" means all personal and/or real property provided by Borrower to Lender as collateral security for the obligations.

    (c)    "Rate Management Agreement" means any agreement, device or arrangement providing for payments which are related to fluctuations of interest rates, exchange rates, forward rates, commodities, or equity prices, including, without limitation, any transaction, device, agreement or arrangement (i) that is or is the functional equivalent of a rate swap transaction, swap option, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor



transaction, collar transaction, currency swap transaction, cross-currency rate swap transaction, currency option, credit protection transaction, credit swap, credit default swap, credit default option, total return swap, credit spread transaction, repurchase transaction, reverse repurchase transaction, buy/sell-back transaction, securities lending transaction, weather index transaction or forward purchase or sale of a security, commodity or other financial instrument or interest (including any option with respect to any of these transactions) or (ii) which is a type of transaction that is similar to any transaction referred to in clause (i) above that is currently, or in the future becomes, recurrently entered into in the financial markets (including terms and conditions incorporated by reference in such agreement) and which is a forward, swap, future, option or other derivative on one or more rates, currencies, commodities, equity securities or other equity instruments, debt securities or other debt instruments, economic indices or measures of economic risk or value, or other benchmarks against which payments or deliveries are to be made, or any combination of these transactions, which transactions may be evidenced by an ISDA Master Agreement between Borrower and Lender or any affiliate of Fifth Third Bancorp, and any schedules, confirmations and documents and other confirming evidence between the parties confirming transactions thereunder, all whether now existing or hereafter arising, and in each case as amended, modified or supplemented from time to time.

(d) "Rate Management Obligations" means any and all obligations of Borrower to Lender or any affiliate of Fifth Third Bancorp, whether absolute, contingent or otherwise and howsoever and whensoever (whether now or hereafter) created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefore), under or in connection with (i) any and all Rate Management Agreements, and (ii) any and all cancellations, buy backs, reversals, terminations or assignments of any Rate Management Agreement.

(e) "Commodity Exchange Act" means the Commodity Exchange Act (7 U.S.C. § 1 et seq.), as amended from time to time, and any successor statute.

(f) "Excluded Swap Obligation" means, with respect to any guarantor of a Swap Obligation, including the grant of a security interest to secure the guaranty of such Swap Obligation, any Swap Obligation if, and to the extent that, such Swap Obligation is or becomes illegal under the Commodity Exchange Act or any rule, regulation or order of the Commodity Futures Trading Commission (or the application or official interpretation of any thereof) by virtue of such guarantor's failure for any reason to constitute an "eligible contract participant" as defined in the Commodity Exchange Act and the regulations thereunder at the time the guaranty or grant of such security interest becomes effective with respect to such Swap Obligation. If a Swap Obligation arises under a master agreement governing more than one swap, such exclusion shall apply only to the portion of such Swap Obligation that is attributable to swaps for which such Swap Obligation or security interest is or becomes illegal.

(g) "Swap Obligation" means any Rate Management Obligation that constitutes a "swap" within the meaning of section 1a(47) of the Commodity Exchange Act, as amended from time to time.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by Lender of any breach hereunder shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence in the future.

8. LATE PAYMENTS; DEFAULT RATE; FEES. If any payment is not paid when due (whether by acceleration or otherwise) or within 10 days thereafter, undersigned agrees to pay to Lender a late payment fee as provided for in any loan agreement or 5% of the payment amount, whichever is greater with a minimum fee of $20.00. After a breach hereunder, Borrower agrees to pay to Lender a fixed charge of $25.00, or Borrower agrees that Lender may, without notice, increase the interest rate charged hereunder by five percentage points (5%) (the "Default Rate"), whichever is greater. Lender may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

9. ENTIRE AGREEMENT. Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.



10. **SEVERABILITY.** The declaration of invalidity of any provision of this Note shall not affect any part of the remainder of the provisions.

11. **ASSIGNMENT.** Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender. Borrower agrees that Lender may assign some or all of its rights and remedies described in this Note without notice to, or prior consent from, the Borrower.

12. **MODIFICATION; WAIVER OF LENDER.** The modification or waiver of any of Borrower's obligations or Lender's rights under this Note must be contained in a writing signed by Lender. Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion. Borrower's obligations under this Note shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co- borrower, endorser or guarantor or (ii) any of its rights against any co- borrower, guarantor or endorser.

13. **WAIVER OF BORROWER.** Demand, presentment, protest and notice of dishonor, notice of protest and notice of default are hereby waived by Borrower, and any endorser or guarantor hereof. Each of Borrower, including but not limited to all co-makers and accommodation makers of this Note, hereby waives all suretyship defenses including but not limited to all defenses based upon impairment of collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code (the "UCC"). Such waiver is entered to the full extent permitted by Section 3-605 (i) of the UCC.

14. **GOVERNING LAW; CONSENT TO JURISDICTION.** This Note is delivered in, is intended to be performed in, will be governed, construed, and enforceable in accordance with and governed by the internal laws of, the State of Georgia, without regard to principles of conflicts of law. Borrower hereby consents to the jurisdiction of any state or federal court located in the State of Georgia, and, to the extent permitted by applicable law, waives any objection based on venue or forum non conveniens with respect to any action instituted in any such court and agrees that process in any such action will be sufficient if served on Borrower by certified mail, return receipt requested or in any manner provided by law. Notwithstanding the foregoing, Lender shall have the right to bring any action or proceeding against Borrower or Borrower's property in the courts of any other jurisdiction Lender deems necessary or appropriate in order to enforce the obligations of Borrower under this Note.

15. **JURY WAIVER.** BORROWER, AND ANY ENDORSER OR GUARANTOR HEREOF, WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

BORROWER:

Alif Transport Incorporated, a Georgia corporation

By: _____
(Authorized Signer)

Adnan N. Mohamed, CEO
(Print Name and Title)