# Exhibit B

A.C. 42587
FSTCV186034338S : STATE OF CONNECTICUT

LANCE LAMBERTON : APPELLATE COURT

VS. : AT HARTFORD

REARDEN LAMBERTON : July 9, 2019

**MEMORANDUM OF DECISION re: MOTION TO TERMINATE STAY (#124.00)**

Background

In this "probate appeal," the parties stipulated that there was no record of the Probate Court proceedings, such that the proceedings before this court were de novo. In hearing and determining such a matter, the court is not acting as a true appellate tribunal (notwithstanding the typical nomenclature of "probate appeal"), nor is it acting as a court of general jurisdiction as usually is the case for the Superior Court – the court is acting as if it were a Probate Court, subject to the limited jurisdiction and powers of a Probate Court.

Notwithstanding the foregoing, the parties treated this proceeding as something in the nature of an appellate process. The only evidence presented to the court was in the form of a stipulation of facts, and as discussed in the memorandum of decision on the merits of the dispute, it is far from clear that the facts as stipulated – in theory the universe of facts upon which the court can rely – were sufficient for a determination of the merits of the dispute set forth in the complaint/appeal. The parties, however, repeatedly indicated to the court that the court was effectively determining an issue of law – <u>can</u> the Probate Court authorize payment of legal fees prior to the acceptance of a will for probate and the related appointment of the executor named in the will?

2019 JUL -9 P 3:49
JUDICIAL DISTRICT
STAMFORD-NORWALK
SUPERIOR COURT

The defendant/appellee had been named as executor in what was submitted to the Probate Court as the last will of the decedent. The named defendant/appellee is a grandson of the testatrix. The testatrix's son – the named plaintiff/appellant – is challenging the admission of the will to probate (specifically challenging a codicil) which included the designation of the defendant as executor (and another grandson of the testatrix is also a plaintiff/appellant). As of the date of the court's decision on the merits of this proceeding, the Probate Court had not yet ruled on acceptance of the will and the Probate Court had not yet determined that the defendant should be appointed executor. Instead, a temporary administrator has been appointed, for limited purposes, pending outcome of some of these issues.

As a result of the ongoing legal dispute related to admission of the will to probate, the defendant requested that the Probate Court issue an order, allowing him to be reimbursed for legal expenses incurred to date, as well as providing him an allowance/advancement against legal fees that were to be incurred, and particularly sufficient funds for a retainer for counsel. As reflected in the probate award attached to the complaint and which was the basis for this appeal, the Probate Judge (Fox, J.) awarded $18,058 as reimbursement for legal expenses incurred between January 3, 2017 and September 12, 2017, and further ordered an additional $12,000 to be disbursed for purposes of a retainer for defendant's trial counsel. (The latter figure was a reduction from the $35,000 that had been requested for purposes of a retainer.)

After this court found for the defendant/appellee on the merits of this probate appeal, the plaintiffs/appellants appealed to the Appellate Court from the judgment entered in favor of the defendant. Pursuant to *Practice Book* § 61-11(a), there is an automatic stay that was triggered by the filing of that appeal to the Appellate Court. Pursuant to *Practice Book* § 61-11(d) and (e), the defendant has moved for a termination of that automatic stay. The plaintiffs filed an objection to that motion. The

motion was referred to this court for a decision, and a hearing on the motion was conducted on June 3, 2019.

Discussion/analysis

I. Balancing the equities

Focusing on the issue of termination of an appellate stay, the parties are in general agreement that the "*Griffin Hospital* factors" provide appropriate guidance for the court. As recited by the plaintiffs in opposing the motion:

> "The [defendant's] Motion correctly recites that 'due administration of justice' is considered using the 'balance of the equities' test, which was outlined in *[Griffin] Hospital v. Commission on Hospitals*, 196 Conn. 451 (1985). Motion at 6. In that case, the court considered four factors in determining whether to grant a stay, including (1) the likelihood that the appellant will prevail; (2) the irreparability of the injury to be suffered from the immediate implementation of the agency order; (3) the effect of the stay upon the other parties to the proceeding; and (4) the public interest involved." (Plaintiffs' brief at page 3.)

The court has a minor quibble with this formulation. In *Griffin Hospital*, the four recited factors were matters that a court could or should consider in balancing the equities:

> "While we thus approve the 'balancing of the equities' test employed by the trial court, we do not in its application eschew such factors as the likely outcome of the appeal, the irreparability of the prospective harm to the applicant, or the effect of delay in implementation of the order upon other parties as well as upon the public interest. We have vested a large measure of discretion in trial judges in terminating or granting stays and, upon review, the issue usually is whether that discretion has

been abused." *Griffin Hospital v. Commission on Hospitals & Health Care*, 196 Conn. 451, 458–59, 493 A.2d 229, 234 (1985).

In other words, the four factors are to be considered in the context of balancing the equities, and the inclusion of the qualifier "such factors as" indicates a somewhat open-ended quality – inferentially, as appropriate, other factors may properly be considered in balancing the equities in the process of determining what the "due administration of justice" requires (*Practice Book* § 61-11(d)).

The court also notes that *Griffin Hospital* included a discussion of a situation somewhat related to one discussed during argument – that relief from a stay may have the net effect of ordering a result that was at odds with the decision being appealed, effectively authorizing something that had not been authorized.[1] Here, the situation is somewhat the opposite, involving two levels of proceedings.

The decision of the Probate Court was not automatically stayed during the pendency of the proceedings in Superior Court, and the motion for stay eventually was denied. Therefore, the *status quo ante* as to this proceeding was that the defendant was entitled to the payments authorized by the Probate Court. The purpose of the automatic stay under *Practice Book* § 61-11 is to preserve the status quo as it existed prior to the issuance of the decision being appealed – but that status quo "logically" would be the continued operative effect of the order issued by the Probate Court. Thus, the effect of a stay appears to be, in a sense, opposite to the notion of preserving the status of the parties prior to the challenged decision. The fact that the

---

[1] "Stays of enforcement of the orders of an administrative agency frequently have the effect of permitting the continuation of activities that normally require a license or other authority from an agency to be conducted legally. When a person appeals from the revocation of or refusal to renew his license or from orders affecting the operation of a business, a stay necessarily sanctions for its duration conduct that has been disapproved by the controlling agency." *Griffin Hospital*, 196 Conn. at 455.

Superior Court proceeding was on a de novo basis somewhat limits that as having a paradoxical quality, but that does not eliminate the status of the probate order as not having been stayed during the pendency of the Superior Court proceedings. Having noted this procedural quirk, the court will move on to the merits of the motion.

Unsurprisingly, the parties reach opposite conclusions in their application of the *Griffin Hospital* factors to this case. Part of this is due to emphasis on different facts and priorities, and some of this is due to different understandings as to how the factors are to be applied.

1. Likelihood that the appellants will prevail:

At the outset of argument as pertains to this factor, the court observed the awkward position in which it was placed, effectively trying to gauge the likelihood that the court had committed reversible error in finding for the defendant. On a more practical level, the court notes that, although perhaps not often discussed, a court in deciding a contested issue, or deciding an entire dispute, can have varying levels of confidence in its decision. Some decisions may fall into the category of being a "no-brainer" with the court virtually certain of the correctness of the outcome. Other cases may involve issues that are so close that the court may struggle at reaching a definitive conclusion as to which party should prevail. The law defines the outcome in a case that is literally "too close to call" – if the party with the burden of proof cannot tip the balance in his or her favor, then a decision is mandated in favor of the party without the burden of proof, but even then, there is a question as to the level of confidence that the evidence is so evenly balanced.

During the course of argument on this motion and in their brief, the plaintiffs made some good points as to policy reasons that would justify the interpretation they

have given to the statute in question. For example, they posited a situation in which a will was an out-and-out forgery – in such a situation, there is or would be good reason to defer any decision relating to an award of attorney's fees to the nominal executor for prosecuting the will. That is a theoretical consideration – as discussed below, the record before this court contains no indication as to the basis on which the plaintiffs are challenging admission of the will to probate (although there was a mention, during argument, concerning the circumstances surrounding a codicil to the will).

As emphasized in the court's memorandum of decision, this case was presented essentially as a pure legal issue involving interpretation of the statute. Should there be a fact-based reason to deny any anticipatory award of attorney's fees – such as the plaintiffs' hypothetical of a forged will – presumably the Probate judge, or a Superior Court judge in a statutory appeal, would exercise his/her discretion and take such a circumstance into consideration. That would be a fact-based determination, and here, the parties have presented this court as a legal rather than factual determination.

As cited by this court in its memorandum of decision, there is substantial appellate authority for characterizing a nominated executor, prior to acceptance of the will to probate (or even after the will has been rejected), as executor, for at least certain administrative purposes. The Probate Court, in an independent determination of the same legal issue, also concluded that the defendant was entitled to reimbursement of certain legal fees already incurred as well as an advance against future fees. The statutory language and the purpose for the statute also indicate the likelihood that the proper interpretation and application of the statute do not require waiting for an ultimate decision on admission of the will and appointment of the executor before fees can be allowed/awarded. Although the arguments presented by

the plaintiffs may have reduced, to some limited extent, the court's confidence in its decision (at least in terms of a policy rationale), the court remains of the opinion that it is highly unlikely that the plaintiffs will prevail on appeal.

2. Irreparability of harm:

At the outset, the court must note that in general, courts do not recognize financial (cash) losses as constituting irreparable harm.

Against that backdrop, it is important to frame the issue properly – is the court evaluating harm from granting relief from the stay or the harm should the stay not be granted? The defendant, in his motion, has framed the issue from the perspective of the stay remaining in place. The caption for the discussion is "Appellee will suffer irreparable injury if the stay is not lifted" and the first sentence of the discussion is "This factor requires the Court to consider the prospect of irreparable harm to the moving party" (page 8 of motion).

The plaintiffs, however, approach the issue from the perspective of the impact on the plaintiffs should relief be granted. Thus, the concluding sentence of their discussion of this sub-issue is "The lack of a stay without a mechanism to recover funds would put the Estate in a difficult position of spending substantial fees in a separate plenary action is a dubious effort to recover the fees paid." Their concern is about the consequences of granting this motion on them.

The court's review of recent trial court decisions indicates that the general trend is towards evaluating irreparable harm from the perspective of the consequences of granting relief from a stay (or in suitable situations, declining to enter a discretionary stay).

In *Deutsche Bank Trust Co. Americas for RALI 2005 QA10 v. Porzio*, No. FSTCV116011134S, 2017 WL 1429940, at *7 (Conn. Super. Ct. Mar. 31, 2017) the issue was framed as "The irreparability of injury to be suffered from immediate implementation of the court's order." In *TD Bank, N.A. v. Cordeiro*, No. TTDCV154022881S, 2017 WL 6262235, at *3 (Conn. Super. Ct. Nov. 13, 2017), the issue was framed as "[the appellant] will Not Suffer Irreparable Harm if the Stay is Terminated." In *Garden Homes Mgmt. Corp. v. Planning & Zoning Commission of Town of Oxford*, No. HHDCV146052002S, 2017 WL 3481523, at *8 (Conn. Super. Ct. June 2, 2017), the issue was whether to grant a discretionary stay, and the court framed the issue as "Irreparability of Prospective Harm to the Applicant for the Stay."[2] In *Pena v. Gladstone*, No. FSTFA094016002S, 2015 WL 6249167, at *4 (Conn. Super. Ct. Sept. 22, 2015), the issue was framed as "[t]he next *Griffin Hospital* factor is the irreparability of the injury that would be suffered if the stay is terminated."

In *Roles v. Pape*, No. UWYCV156028598, 2016 WL 1577814, at *3 (Conn. Super. Ct. Mar. 30, 2016), the issue was the granting of a stay when a probate order initially had been appealed to the Superior Court. The court applied the *Griffin Hospital* factors, and in its discussion of the second factor, focused on the claim of irreparable harm that would be suffered by the estate, should funds be disbursed while the appeal to the Superior Court was pending.

It seems clear, then, that there is consistency among trial courts in focusing on the claim of irreparable harm should a stay be terminated or should a stay not be granted. Therefore, the court will focus on the contentions of the plaintiffs as to the

---

[2] Earlier in the decision, when reciting the *Griffin Hospital* factors, the court seems to have borrowed from an earlier decision without making all appropriate corrections – particularly apropos of this case, the court recited the second factor as "(2) the irreparability of the injury to be suffered from immediate implementation of the Probate Court's order." Id. at *5.

harm they claim they will sustain (through their interest in the estate), should the stay be terminated.

The court perceives there to be little or no likelihood of irreparable harm likely to be suffered by the plaintiffs, should the court lift the automatic stay. The plaintiffs contend that if money is disbursed to the defendant for legal fees, and the will ultimately is not accepted by the Probate Court, there would be difficulty in recovering the funds from the defendant. That argument has a number of sub-components, none of which has substantial merit for purposes of this discussion.

To the extent that it is implicit in these proceedings that the defendant, in a personal capacity, is a beneficiary (acknowledged by the plaintiffs in their objection (at page 5)), the Probate Court will have at least a theoretical ability to charge any required repayment against his eventual/potential distribution. The plaintiffs argue that the money would need to be reimbursed by counsel (and with counsel as a non-party, that is claimed to be potentially cumbersome), but the payment, in a technical sense, would be to the defendant as designated executor, seeking payment of <u>his</u> expenses as executor, pursuant to General Statutes § 45a-294.

On a less hypothetical level, attempting to counter the defendant's claim that it would be onerous to advance, out of his own funds, money for legal counsel in advance of reimbursement via probate, the plaintiffs argued that the defendant (personally) recently received a substantial amount of money such that there would not be any financial hardship if he were required to advance the funds. Assuming that to be true, that has no bearing on the question of irreparable harm should the stay be lifted. Instead, that would be pertinent if the issue were whether there would be irreparable harm should the stay be left in place, and that issue is not currently before the court – for reasons set forth above, the court has concluded that that is not the proper analytic approach. The court must note that, in addition to the general

proposition that a loss of money is not deemed irreparable harm, this argument has a counterproductive quality insofar as the claim that the defendant now has substantial assets from another source means that there is less of a likelihood that the plaintiffs or the estate could not recover any funds later determined to have been paid out improvidently.

The court recognizes that in *Roles v. Pape*, supra, the court considered the likely difficulty in obtaining reimbursement of funds once disbursed to be a form of irreparable harm to the estate. The court did not discuss the general proposition that a debt of money does not constitute irreparable harm, nor did it discuss the likelihood of future payments against which overpayments or premature payments could be charged. The court did note that premature disbursement would be contrary to the very purpose of the instrument in question in that case – "when the purpose of the trust was to protect the money from the minors and their parents' use." *Id.* at *3. In the current case, there is no counterpart to the frustration of the purpose of a restriction on disbursements of money; to the contrary, there is a statutory basis for seeking funds that are or will be needed to prosecute the admission of the will to probate.

To the extent of that the proper framework for evaluation of this factor might be from the perspective of the defendant should the stay remain in place, the court briefly will address that alternate argument. While money may typically be deemed an inappropriate subject for irreparable harm, a lack of money to pay for services of an attorney can only have adverse consequences of a non-monetary nature. Counsel may be reluctant to prioritize a case in which funds are slow in being paid, potentially prolonging the period of time necessary to reach an ultimate resolution. To the extent that the court has used a metaphor of a "war of attrition," slowing or cutting off payments is a potent weapon in a litigation context, reinforced by the plaintiffs' earlier

reference to the goal of pressuring the defendant to seek a settlement of the dispute between the parties. The defendant identified ongoing estate costs, e.g., storage, that continue to be incurred (and can never be recovered), due to the delay in adjudication of the main probate issue – admission of the will to probate. To the extent the delay is even partially attributable to limited funds for legal representation, the money expended while nothing of substance happens in Probate Court can never be recovered by the estate.

Accordingly, the court finds there to be no likelihood of irreparable harm should the stay be lifted.

3. The effect of the stay upon the other parties to the proceeding:

There is no direct effect on other parties to the proceeding. Adjustments can be made should the Probate Court determine at some later date that excessive fees have been authorized/awarded to the defendant. As a practical matter, given the extent of litigation that already has transpired, and the likely costs incurred in pursuing the appeal, even a substantial percentage reduction in a later order of the Probate Court as to legal fees in the aggregate, would still likely exceed the modest amount that was ordered to be advanced by the Probate Court in the order sought to be removed from the effect of the automatic stay.

The foregoing, however brief, is somewhat beside the point. The court believes that the plaintiffs' analysis of this point is closer to the proper one – there do not appear to be any other parties whose interests or rights might be affected. Therefore, this factor is inherently neutral in this case – there would be no negative impact of consequence on any other parties, however the court might rule. This factor has no weight in the balancing of equities relating to relief from the automatic stay.

4. The public interest involved:

The only public interests that appear to be involved are the public policy favoring prompt settlement of estates and the public policy favoring implementation of the wishes of a testatrix. Extensive litigation relating to a relatively modest allowance for attorney's fees can only slow down the process, at a minimum a distraction from the ultimate issues that need to be resolved by the Probate Court. To the extent that the plaintiffs' articulated goals includes pressuring the defendant towards possible settlement, any "coerced" compromise would tend to frustrate the intended dispositions of the testatrix. While these interests/policy factors apply in virtually all probate disputes, they are implicated in this dispute – they are not purely hypothetical.

The plaintiffs address this factor from the perspective of their arguments relating to the proper legal interpretation of the relevant statute, e.g., the possibility that a fraudulent will might be submitted for probate resulting in disbursement of funds for legal fees. The court's recollection of argument on this motion is that the court noted that the record was devoid of any fact or claim relating to the basis for the challenge to the admission of the subject will (codicil) to probate, and the court further recalls a general inquiry as to whether there was anything like a claim of fraud being made by the plaintiffs. In other words, the court was seeking to determine whether any of the hypothetical situations posited by the plaintiffs had any bearing on the dispute actually before the court. The plaintiffs' argument effectively was and is that the only public policy considerations are those of a generalized nature that they claim support the reasonableness of their proffered statutory interpretation – they do not link any public interest or public policy consideration to this case, and the court does

not see any such linkage. Therefore, there is no basis for any public interest concern to be a potential reason for the court to find that this *Griffin Hospital* factor supports their position as to the propriety of maintaining the stay *in this case*.

The court finds that this factor favors the defendant, if not to an overwhelming extent.

In sum, then, the court finds that all four *Griffin Hospital* factors that have been identified as appropriate considerations in balancing the equities, necessary for a determination that "the due administration of justice" requires termination of the stay (Practice Book § 61-11(d), are either neutral or point in favor of the defendant. Based on the foregoing analysis, relief from the stay should be granted.

II. Delay

The alternate consideration under Practice Book § 61-11(d) is whether the appeal has been filed for purposes of delay. Although the plaintiffs have argued in their objection to the motion that the defendant did not identify this as a basis for terminating the automatic stay, the defendant explicitly cites delay in footnote 2 in his motion. Although utilization of a footnote may be a disfavored way to present an issue, the defendant identified the first *Griffin Hospital* factor as doing double duty, both as a factor in balancing the equities and also justifying the contention that the appeal is for the purpose of delay.

Further, the defendant argued and in its memorandum of decision the court had recognized that there is a certain "war of attrition" quality to the plaintiffs' appeal. The very nature of a "war of attrition" is that delay will work in favor of one of the parties, the party who can outlast the other. The rationale for a war of attrition is that

while a party may not be able to prevail on the battlefield in more direct combat, the longer the war takes, the greater the likelihood that it will be able to prevail nonetheless, simply as a matter of endurance. That necessarily implicates a desire for delay as opposed to expeditious resolution of the issues between the parties.

There are at least a few indicia of delay as a tactic. For one, the plaintiffs continue to rely upon the text of the Probate Rules[3] as explicit authority for their position, notwithstanding the express recognition in the rules that they are inapplicable to proceedings in the Superior Court in connection with a probate appeal. While those rules may be suggestive of the proper interpretation of the relevant statute, the seeming continued failure/refusal of the plaintiffs to recognize the inability to rely on those rules as primary authorities for their position can only reinforce the perception of a continued "war of attrition" approach. More directly, in their trial brief, they implicitly justified a "war of attrition" interpretation by claiming that denying the defendant legal fees would tend to encourage him to discuss settlement, and the settlement they appear to have had in mind does not appear to be settlement of the issue of legal fees but rather a global settlement including the substantive issues

---

[3] During the course of argument on this motion, the plaintiffs pointed out an error in the court's earlier memorandum of decision. In that decision, the court alluded to the absence of specific identified statutory authority for the Probate Rules upon which the plaintiffs relied extensively. The plaintiffs pointed out that there is statutory authority for such rules (General Statutes § 45a-78). The plaintiffs have not challenged the court's recitation of the specific provision in those Probate Rules to the effect that the Probate Rules are not applicable to this court sitting as a Probate Court for purposes of a probate appeal. On at least one occasion, in its decision, the court noted that even assuming that the Probate Rules were binding on the Probate Court, the absence of any binding effect on this court meant that those rules could not be determinative of the outcome of the dispute before this court (although they might be instructive or otherwise provide guidance). Therefore, the court's error with respect to existence of such statutory authority (General Statutes § 45a-78) had no bearing on the merits of the court's earlier decision – while an error, it was harmless in the context of this matter.

before the Probate Court. This clearly is an indication that delay – a proxy for financial pressure – is being used as a tool (or perhaps more accurately, a weapon).

Although the court cannot conclude that the appeal has been taken solely for purposes of delay ("only for delay" as recited in Practice Book § 61-11(d)), the court believes that it is an additional factor that can be considered in weighing the equities and determining what "the due administration of justice … requires." "Only for delay" is/would be a sufficient and independent basis for granting the motion; the court cannot ignore the lesser level of motivation for delay actually found but rather can consider it as reinforcing the determination that the equities favor terminating the stay. As noted earlier, the *Griffin Hospital* factors are not necessarily exclusive, and the court believes that the situation presented in this case warrants consideration of delay as an additional factor, favoring lifting the stay.

Conclusion

The court is satisfied that from any viewpoint, the stay should be terminated. The equities overwhelmingly favor the defendant, and there is an overlay that the plaintiffs are seeking to delay the actual disbursement of the modest amount of funds ordered to be released for payment of the defendant's legal fees. Although the appeal will still have to be defended, the defendant will not have to put his own funds at risk in order to do so, somewhat leveling the playing field with respect to what appears to have the makings of a war that will encompass all possible substantive and procedural battles. In this skirmish relating to equities, the court finds that the equities warrant relief from the automatic stay.

For all these reasons, then, the court grants the motion to terminate the automatic stay.

POVODATOR, JTR.