**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>LEVITON MANUFACTURING CO., INC.,<br><br>Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this complaint against Leviton Manufacturing Co., Inc. ("Leviton" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D**, **Exhibit E**, and **Exhibit F** respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 7,567,580 | Edge Side Assembler |
| B. | RE44,742 | Dynamic Message Templates And Messaging Macros |
| C. | 7,474,667 | Multi-Path Gateway Communications Device |

|    | U.S. Patent No. | Title |
|----|-----------------|-------|
| D. | RE44,191 | Electric Device, Computer, Program, System and Method Of Setting Up User Applications |
| E. | 7,209,876 | System And Method For Automated Answering Of Natural Language Questions And Queries |
| F. | 7,983,282 | Edge Side Assembler |

2.    Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.    Leviton is a corporation organized under the laws of the State of Delaware with its principal place of business located at 201 N Service Rd, Melville, NY 11747.

5.    Leviton may be served through its registered agent for service, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

## JURISDICTION AND VENUE

6.    Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

7.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.     Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Georgia Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this State and in this District.

10.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this State, including in this District.

11.     Defendant maintains regular and established places of business in this District.   Defendant offers products and services and conducts business in this

District.  Defendant owns, operates, manages, conducts business, and directs and controls the operations of, and has employees that work from and out of, facilities at locations in this District, including the location at Franklin Rd, Marietta, GA 30067.[1]

12.     Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## THE ACCUSED PRODUCTS

13.     Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

14.     Based upon public information, Leviton owns, operates, advertises, and/or controls the website https://www.leviton.com through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services. *See* **Exhibit G**; **Exhibit N**; **Exhibit O**.

15.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its Smart Home control platform and systems, including but not limited to those products and services offered under the Decora brand name.  *See id.*[2]

16.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies,

---

[1] *See* https://www.leviton.com/en/company/about-leviton/locations.
[2] *See also* www.leviton.com/en/company/about-leviton/where-to-buy.

or distributes Leviton's Smart Home control platform and systems, which includes, but is not limited to, the Decora Smart® Devices (and their Wi-Fi, Zigbee, and/or Z-Wave/Z-Wave Plus capabilities), including but not limited to the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets, Smart Scene Controller Switches, Smart Fan Speed Controllers, the Leviton Smart Load Center, the Leviton Smart Breaker, the Smart Breaker Data Hub, the My Leviton Cloud Service, the My Leviton App, and associated phone apps and website functionality, and associated hardware, software and applications (the "Accused Products").  *See* **Ex. G**; **Exhibit H**; **Exhibit I**; **Exhibit K**; **Exhibit L**; **Ex. N**; **Ex. O**.

17.     Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for wireless light control.

18.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,567,580

19.     Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

20.     The USPTO duly issued U.S. Patent No. 7,567,580 (hereinafter, the "'580 patent") on July 28, 2009 after full and fair examination of Application No. 11/787,977 which was filed on April 18, 2007.  *See* **Ex. A** at A-1.

21.    IoT Innovations owns all substantial rights, interest, and title in and to the '580 patent, including the sole and exclusive right to prosecute this action and enforce the '580 patent against infringers and to collect damages for all relevant times.

22.    The claims of the '580 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of methods and systems for a personal digital gateway.

23.    The written description of the '580 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24.    Defendant has directly infringed one or more claims of the '580 patent by using, providing, supplying, or distributing the Accused Products.

25.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '580 patent.

26.    For example, Defendant, using the Accused Products, including but not limited to the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets,

Smart Scene Controller Switches, Smart Fan Speed Controllers, Leviton Smart Load Center, the Leviton Smart Breaker, the Smart Breaker Data Hub, the My Leviton Cloud Service, and the My Leviton App, performs method, comprising identifying data associated with a common user of a personal digital gateway and of a communications device selected from a plurality of communications devices; locating remote data stored the selected communications device; querying to retrieve the remote data; integrating the data and the remote data; formatting the integrated data according to a presentation format associated with the selected communications device; and communicating the formatted, integrated data to at least one of the plurality of communications devices.  *See, e.g.*, **Ex. H**; **Ex. N**; **Ex. O**.

27.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '580 patent.

28.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. RE44,742

29.     Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

*30.*     The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012.  *See* **Ex. B** at B-1.  The '724 patent is a reissue of U.S. Patent No. 7,751,533.  *See id.*

31.     IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce the '742 patent against infringers and to collect damages for all relevant times.

32.     The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template based messaging systems.

33.     The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been

considered conventional or generic in the art at the time of the invention.

34.   Defendant has directly infringed one or more claims of the '742 patent by using, providing, supplying, or distributing the Accused Products.

35.   Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 22 of the '742 patent.

36.   For example, Defendant, using the Accused Products, including but not limited to the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets, Smart Scene Controller Switches, Smart Fan Speed Controllers, Leviton Smart Load Center, the Leviton Smart Breaker, the Smart Breaker Data Hub, the My Leviton Cloud Service, and the My Leviton App, performs a method comprising determining, by a processing device, a message to be generated from a message template; automatically populating, by the processing device, a dynamic field of the message template with message context data in response to the determination; and sending, by the processing device, the message having the message context data in the dynamic field of the message template to a remote device.

37.   Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '742 patent by inducing others to directly infringe the '742 patent.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either

literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '742 patent. Defendant's inducement is ongoing. *See, e.g.*, **Ex. I**; **Ex. N**; **Ex. O**.

38.     Defendant has also indirectly infringed by contributing to the infringement of the '742 patent. Defendant has contributed to the direct infringement of the '742 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or

more claims of the '742 patent, including, for example, claim 22 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing. *See, e.g.*, **Ex. I**; **Ex. N**; **Ex. O**.

39.     Defendant had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

40.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

41.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

42.     Defendant's direct infringement of one or more claims of  the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

43.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law

for infringement of one or more claims of the '742 patent.

44.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

45.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '742 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,474,667

46.     Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

47.     The USPTO duly issued U.S. Patent No. 7,474,667 (hereinafter, the "'667 patent") on January 6, 2009 after full and fair examination of Application No. 11/879,576 which was filed on July 18, 2007.  *See* **Ex. C** at C-1.  A Certificate of

Correction was issued on January 1, 2013. *See id.* at C-18.

48.     IoT Innovations owns all substantial rights, interest, and title in and to the '667 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

49.     The claims of the '667 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices.

50.     The written description of the '667 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

51.     Defendant has directly infringed one or more claims of the '667 patent by using, providing, supplying, or distributing the Accused Products.

52.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '667 patent.

53.     For example, Defendant, using the Accused Products, including but not limited to the Decora Smart® Devices and related products and services, such as,

for example, the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets, Smart Scene Controller Switches, Smart Fan Speed Controllers, the My Leviton Cloud Service, the My Leviton App, and associated phone apps and website functionality, and associated hardware, software and applications, performs a method for receiving a selection of a communications device from a plurality of communications devices associated with a common user, receiving the data associated with the selected communications device, accessing a database of rule-based profiles comprising configuration and presentation parameters for the plurality of communications devices, querying the database of rule-based profiles for the selected communications device, retrieving a profile associated with the selected communications device, integrating the data into the profile; and communicating the integrated data and the profile to the selected communications device.

54.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '667 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '667 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to

cause them to use the Accused Products in a manner that infringes one or more claims of the '667 patent, including, for example, claim 1 of the '667 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '667 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '667 patent. Defendant's inducement is ongoing. *See, e.g.*, **Exhibit J**; **Exhibit M**; **Ex. N**; **Ex. O**.

55.    Defendant has also indirectly infringed by contributing to the infringement of the '667 patent. Defendant has contributed to the direct infringement of the '667 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '667 patent, including, for example, claim 1 of the '667 patent. The special features constitute a material part of the invention of one or more of the claims of the '667 patent and are not staple articles of commerce suitable for

substantial non-infringing use.  Defendant's contributory infringement is ongoing. *See, e.g.*, **Ex. J**; **Ex. M**; **Ex. N**; **Ex. O**.

56.     Defendant had knowledge of the '667 patent at least as of the date when it was notified of the filing of this action.

57.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

58.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

59.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '667 patent.

60.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

61.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '667 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. RE44,191

62.     Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

*63.*     The USPTO duly issued U.S. Patent No. RE44,191 (hereinafter, the "'191 patent") on April 30, 2013 after full and fair examination of Application No. 12/788,218 which was filed on May 26, 2010.  *See* **Ex. D** at D-1.  The '191 patent is a reissue of U.S. Patent No. 7,379,975.  *See id.*

64.     IoT Innovations owns all substantial rights, interest, and title in and to the '191 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

65.     The claims of the '191 patent are not directed to an abstract idea and are

not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve the setting up of applications involving shared application data.

66.     The written description of the '191 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

67.     Defendant has directly infringed one or more claims of the '191 patent by using, providing, supplying, or distributing the Accused Products.

68.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 18 of the '191 patent.

69.     For example, Defendant, using the Accused Products, including but not limited to the Decora Smart® Devices and related products and services, such as, for example, the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets, Smart Scene Controller Switches, Smart Fan Speed Controllers, the My Leviton Cloud Service, the My Leviton App, and associated phone apps and website functionality, and associated hardware, software and applications, that employ a computer process including the steps of:  (1) using, as input, at least a portion of a

second set of information communicated from a second electric device to a first electric device over a wireless proximity interface, the second set of information being associated with a second user application of the second electric device; (2) evaluating a correspondence indicator value on the basis of at least a portion of a first set of information and the at least a portion of the second set of information, the first set of information being associated with a first user application of the first electric device, the first user application and the second user application using shared application data communicated between the first electric device and the second electric device by using a wireless interface, the correspondence indicator value characterizing the readiness of the first electric device and the second electric device to execute at least one command associated with the first user application and the second user application; (3) deciding, on the basis of the correspondence indicator value, whether to execute the at least one command, wherein the at least one command is used to replace a series of actions of the user; (4) inputting instructions to execute the at least one command associated with the first user application and the second user application, the instructions being based on a comparison between the correspondence indicator value and a correspondence indicator threshold value; and (5) executing the at least one command associated with the first user application and the second user application on the basis of instructions.

70.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '191 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '191 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '191 patent, including, for example, claim 18 of the '191 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '191 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '191 patent. Defendant's inducement is ongoing.  *See, e.g.*, **Ex. K**; **Ex. M**; **Ex. N**; **Ex. O**.

71.     Defendant  has  also  indirectly  infringed  by  contributing  to  the

infringement of the '191 patent.   Defendant has contributed to the direct infringement of the '191 patent by their personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '191 patent, including, for example, claim 18 of the '191 patent. The special features constitute a material part of the invention of one or more of the claims of the '191 patent and are not staple articles of commerce suitable for substantial non-infringing use.   Defendant's contributory infringement is ongoing. *See, e.g.*, **Ex. K**; **Ex. M**; **Ex. N**; **Ex. O**.

72.     Defendant had knowledge of the '191 patent at least as of the date when it was notified of the filing of this action.

73.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

74.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

75.     Defendant's direct infringement of one or more claims of  the '191 patent

is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

76.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '191 patent.

77.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

78.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '191 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,209,876

79.     Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

80.     The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007 after full and fair examination of Application No. 10/293,743 which was filed on November 13, 2002.  *See* **Ex. E** at E-1.

81.     IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

82.     The claims of the '876 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

83.     The written description of the '876 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84.     Defendant has directly infringed one or more claims of the '876 patent by using, providing, supplying, or distributing the Accused Products.

85.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the'876 patent.

86.     For example, Defendant, using the Accused Products, including but not limited to the Decora Smart® Devices and related products and services, such as, for example, the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets, Smart Scene Controller Switches, Smart Fan Speed Controllers, the My Leviton Cloud Service, the My Leviton App, and associated phone apps and website functionality, and associated hardware, software and applications, incorporates voice commands, performs a method for producing answers to a question or query issued to an information repository containing natural language data, executable in a computer system, comprising the steps of: (a) receiving a search question or query containing at least one variable expression that is representative of desired answer data that is to be searched for in said information repository; (b) initiating a search of said information repository for information containing terms present in said search question or query and receiving a first data set comprising the information resulting from said search question or query; (c) searching said first data set for answer phrases present in syntactically similar form to said search question or query

and containing answer data which may replace said variable expression to provide an answer to said search question or query, and retrieving answer phrases resulting from such search; and (d) modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query.  For instance, when the Decora Smart® Voice Dimmer system is asked to turn off the kitchen lights, the Decora Smart® Voice Dimmer responds by stating that the Decora Smart® Voice Dimmer lights are off if the state of the system is off.  *See, e.g.*, **Ex. L**.  More specifically, as one example of an instance of infringement, when the Decora Smart® Voice Dimmer receives the expression "Alexa, turn on the kitchen lights," the Decora Smart® Voice Dimmer responds "Okay, turning on the kitchen lights."[3]

87.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '876 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '876 patent by providing or requiring use of the Accused Products.  Defendant took active steps,

---

[3] *See* Leviton Installation Manual - DWVAA, at p. 22 (updated Feb. 24 2020), https://www.leviton.com/en/docs/DI-000-DWVAA-02B-W.pdf.

directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '876 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '876 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '876 patent. Defendant's inducement is ongoing. *See, e.g.*, **Ex. L**; **Ex. M**; **Ex. N**; **Ex. O**.

88.     Defendant has also indirectly infringed by contributing to the infringement of the '876 patent. Defendant has contributed to the direct infringement of the '876 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '876 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '876

patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.  *See, e.g.*, **Ex. L**; **Ex. M**; **Ex. N**; **Ex. O**.

89.     Defendant had knowledge of the '876 patent at least as of the date when it was notified of the filing of this action.

90.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

91.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

92.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '876 patent.

93.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35

U.S.C. § 284.

94.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '876 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,983,282

95.    Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

96.    The USPTO duly issued U.S. Patent No. 7,983,282 (hereinafter, the "'282 patent") on July 19, 2011 after full and fair examination of Application No. 12/486,008 which was filed on June.17, 2009.  *See* **Ex. F** at F-1.  A Certificate of Correction was issued July 16, 2013.  *See id.* at F-19.

97.    IoT Innovations owns all substantial rights, interest, and title in and to the '282 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

98.    The claims of the '282 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities hat improve upon the function, operation, and security of communications devices and networks by personalizing a user experience across devices by using a personal digital gateway to communicate data associated with a common user to a plurality of communication devices.

99.    The written description of the '282 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100.    Defendant has directly infringed one or more claims of the '282 patent by using, providing, supplying, or distributing the Accused Products.

101.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '282 patent.

102.    For example, Defendant, using the Accused Products, including but not limited to Decora Smart® Devices and related products and services, such as, for example, the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets,

Smart Scene Controller Switches, Smart Fan Speed Controllers, Leviton Smart Load Center, the Leviton Smart Breaker, the Smart Breaker Data Hub, the My Leviton Cloud Service, the My Leviton App and associated hardware and software, performs a method, comprising: (a) identifying data associated with a common user of a personal digital gateway and of a plurality of communications devices; (b) receiving a selection of a communications device from the plurality of communications devices; (c) retrieving remote data from a selected communications device; and (d) forwarding the remote data to another one of the plurality of communications devices.

103.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '282 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '282 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '282 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-

users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '282 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '282 patent.  Defendant's inducement is ongoing.  *See, e.g.*, **Ex. G**; **Ex. M**; **Ex. N**; **Ex. O**.

104.    Defendant has also indirectly infringed by contributing to the infringement of the '282 patent.   Defendant has contributed to the direct infringement of the '282 patent by their personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '282 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '282 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.  *See, e.g.*, **Ex. G**; **Ex. M**; **Ex. N**; **Ex. O**.

105.    Defendant had knowledge of the '282 patent at least as of the date when

it was notified of the filing of this action.

106.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

107.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

108.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '282 patent.

109.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

110.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of

the '282 patent.  Defendant's actions have interfered with and will interfere with IoT

Innovations' ability to license technology.   The balance of hardships favors IoT

Innovations' ability to commercialize its own ideas and technology.   The public

interest in allowing IoT Innovations to enforce its right to exclude outweighs other

public interests, which supports injunctive relief in this case.

## JURY DEMAND

111.    IoT Innovations hereby requests a trial by jury on all issues so triable by

right.

## PRAYER FOR RELIEF

112.    IoT Innovations requests that the Court find in its favor and against

Defendant, and that the Court grant IoT Innovations the following relief:

a.   Judgment that one or more claims of each of the Asserted Patents has been

infringed, either literally or under the doctrine of equivalents, by

Defendant or others acting in concert therewith;

b.   A permanent injunction enjoining Defendant and its officers, directors,

agents, servants, affiliates, employees, divisions, branches, subsidiaries,

parents, and all others acting in concert therewith from infringement of

the '742 patent, the '667 patent, the '191 patent, the '876 patent, and the

'282 patent; or, in the alternative, an award of a reasonable ongoing

royalty for future infringement of the '742 patent, the '667 patent, the '191 patent, the '876 patent, and the '282 patent by such entities;

c.  Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringements be found willful as to the '742 patent, the '667 patent, the '191 patent, the '876 patent, and the '282 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 1, 2023</u>                    Respectfully submitted,

By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088)
Jonathan R. Miller (GA 507179)
Travis E. Lynch (GA 162373)
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH PLLC**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

***Attorneys for Plaintiff IOT INNOVATIONS LLC***

\* admission *pro hac vice* anticipated

**List of Exhibits**

A. U.S. Patent No. 7,567,580
B. U.S. Patent No. RE44,742
C. U.S. Patent No. 7,474,667
D. U.S. Patent No. RE44,191
E. U.S. Patent No. 7,209,876
F. U.S. Patent No. 7,983,282
G. Webpage – The Leviton Smart Load Center
H. Webpage – Adding a Leviton Smart Load Center – Leviton Decora Smart Support
I. Webpage – How do I receive notifications from my Smart Load Center – Leviton Decora Smart Support
J. Webpage – If I lose Internet will my programmed schedules still occur? – Leviton Decora Smart Support
K. Webpage – Video – IFTTT Integration with the My Leviton app and Decora Smart® Wi-Fi Devices – Leviton Decora Smart Support
L. Webpage – Decora Smart with Amazon Alexa built-in
M. Webpage – Leviton Decora Smart Support
N. Webpage – Smart Switches, Dimmers and Outlets – Decora Smart
O. Webpage – Decora Smart Z-Wave – Smart home dimmers, switches and plug-ins