UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TYSON MEHLHOFF, STAYTON TYACKE, ALEX LYONS, SHAYLAR HATCH, CHASE BLACKWOOD, JAXON MEHLHOFF, TRENT MEHLHOFF, MATTHEW BREGMAN, and JASON NEWBY,<br><br>*Plaintiffs*,<br><br>v.<br><br>PROVIDE TECHNOLOGIES, INC. and KYLE THOMAS,<br><br>*Defendants*. | Civil Action File No. \_\_\_\_<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Tyson Mehlhoff, Stayton Tyacke, Alex Lyons, Shaylar Hatch, Chase Blackwood, Jaxon Mehlhoff, Trent Mehlhoff, Matthew Bregman, and Jason Newby (collectively, "Plaintiffs") file their Original Complaint against Defendants Provide Technologies, Inc. ("Provide") and Kyle Thomas as follows:

### I. NATURE OF THE ACTION

1. This is a breach of contract case involving nine separate convertible promissory notes (individually a "Note," collectively the "Notes"). Defendant Kyle

1

Thomas recruited Plaintiffs to fund his tech startup, Provide, using the Notes as a funding vehicle with a dangling carrot of potential equity in Provide at the end of the supposed rainbow. Each individual Plaintiff is the "holder" of his own Note, and Provide is the "maker" of each Note—*i.e.*, it is, according to the Notes' terms, responsible for paying the Notes' respective balances. The Notes have identical terms and became due and payable on October 1, 2022. Provide has paid nothing.

2. On the one hand, this is a simple breach of contract case. The Notes are indisputably due and payable, and Plaintiffs have not been paid. But behind this easily demonstrable breach there lies a more nefarious wrinkle— one that explains why Provide has not met its contractual obligations, and why Plaintiffs have named Kyle Thomas (Provide's founder, CEO, CFO, and Secretary) as a defendant. At Thomas's request, Plaintiffs used cryptocurrency to fund their respective principal amounts. Thomas sent Plaintiffs a "wallet" address (essentially, the cryptocurrency equivalent of a bank account), asserting that the wallet belonged to Provide. Plaintiffs sent their cryptocurrency to that wallet. In fact, as Plaintiffs later learned, the wallet belonged to Thomas himself. Thomas used Plaintiffs' funds to support his lavish personal lifestyle, and Provide curiously became unable to pay its debts. Plaintiffs have been left with empty pockets and hollow promises, and both Provide and Thomas should be held liable for the Notes' balances.

## II.   PARTIES

*<u>Plaintiffs</u>*

1. Tyson Mehlhoff is a natural person domiciled in Utah, and is therefore a citizen of Utah.

2. Stayton Tyacke is a natural person domiciled in Utah, and is therefore a citizen of Utah.

3. Alex Lyons is a natural person domiciled in Utah, and is therefore a citizen of Utah.

4. Shaylar Hatch is a natural person domiciled in Arizona, and is therefore a citizen of Arizona.

5. Chase Blackwood is a natural person domiciled in California, and is therefore a citizen of California.

6. Jaxon Mehlhoff is a natural person domiciled in Utah, and is therefore a citizen of Utah.

7. Trent Mehlhoff is a natural person domiciled in Utah, and is therefore a citizen of Utah.

8. Matthew Bregman is a natural person domiciled in Colorado, and is therefore a citizen of Colorado.

9.      Jason Newby is a natural person domiciled in California, and is therefore a citizen of California.

***Defendants***

10.     Defendant Provide Technologies, Inc. is a Georgia domestic corporation with its principal place of business at 107 Technology Parkway NW, Suite 215, Atlanta, Georgia 30092. Provide is therefore a citizen of Georgia. Provide can be served through its registered agent for service of process, Registered Agents Inc., 300 Colonial Center Parkway, Suite 100N, Roswell, Georgia 30076.

11.     Defendant Kyle Thomas is a natural person domiciled in North Carolina, and is therefore a citizen of North Carolina. Thomas can be served at his residence at 2000 Chartwell Court, Leland, North Carolina 28451.

### III.     JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000. Plaintiffs are citizens of Arizona, California, Colorado, and Utah. Defendants are citizens of Georgia and North Carolina.

13.     This Court has personal jurisdiction over non-resident Defendant Kyle Thomas. Thomas is the CEO, CFO, and Secretary of Provide, a Georgia domestic

corporation with its principal place of business in Atlanta, Georgia. This action arises out of Thomas's Georgia contacts—Thomas **personally:** (a) recruited Plaintiffs to fund Provide via the Notes; (b) obtained Plaintiffs' signatures on the Notes; (c) collected cryptocurrency tokens from Plaintiffs to satisfy the Notes' principal amounts; (d) misrepresented that the cryptocurrency was being sent to Provide; (e) provided his own personal cryptocurrency wallet for the receipt of the cryptocurrency transfers; and (f) received, kept, and on information and belief enjoyed for his own personal use the proceeds from the cryptocurrency transfers intended instead as loans to Provide. Further, Thomas personally secured Plaintiffs' agreement to the Notes' terms, including the governing law provision that clearly states: "All rights and obligations hereunder shall be governed by the laws of the State of Georgia." Given Thomas's multiple executive positions with Provide and his negotiations with Plaintiffs regarding the Notes, Thomas could reasonably anticipate being hailed into court in Georgia.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant Provide "resides" in this District and Division.

## IV.     FACTUAL ALLEGATIONS

**A.     The Nature of Provide Technologies, Inc.'s Business, and the Importance of Web3 and Cryptocurrency to this Lawsuit.**

15. Defendant Provide markets itself as "market-leading web3 infrastructure for synchronizing data and tokenizing enterprise assets." While the precise technical details of this baseline description are largely irrelevant to this lawsuit, a surface-level understanding of some terminology is important to help shed light on Provide's business model, why Plaintiffs committed to funding Provide, and why they funded their commitments using cryptocurrency.

16. Web3, also referred to as Web 3.0, is a proposed new iteration or "version" of the World Wide Web. Web 1.0, the first iteration, primarily consisted of "static" pages—web users simply browsed and observed content that companies like Yahoo or AOL published. This first iteration lasted from approximately 1989 to 2004. Web 2.0, the next and current iteration, has a more dynamic, interactive approach—rather than merely *observing* published content, web users can take on a more engaging role by *creating* their own content and uploading it to websites for others to view or interact with (*e.g.*, Facebook posts, YouTube videos, blog posts, and so on). Further, the content displayed for a web user is often tailored to that particular user's preferences based on a litany of factors, including his or her previous browsing activity.

17. While Web 2.0 is thus well-suited to delivering a customized web browsing experience, technological advancements and the gradual refinement of the mechanisms used to curate that experience have led to ever-increasing concerns over privacy and the centralized storage of users' personal information and data. This is especially true, for example, when it comes to private corporations harvesting users' data and selling it to advertisers.

18. Largely in response to these concerns, the postulated Web3 is designed to foster a decentralized web browsing approach. For example, whereas a Web 2.0 user often must agree to allow a website host to access and collect personal data in exchange for the user's ability to create or share content, a Web3 user would essentially own a piece of the platform along with the platform's operators. In essence, web applications would not be centrally controlled by an entity, but would instead operate more like a cooperative, community body.

19. Cryptocurrency goes hand-in-hand with Web3 and its goals of decentralization. Cryptocurrency (like Bitcoin, for example) is decentralized digital currency—whereas traditional currency is monitored and regulated by banks and government authorities, cryptocurrency is essentially "monitored" by its users through a ledger (a series of publicly available, recorded transactions). A unit of cryptocurrency is often referred to as a "token." A user's tokens are stored in a

"wallet." Users can transfer tokens to another user's wallet if they are given the wallet's address (similar to a wire transfer to another's bank account). Through marketplaces known as "exchanges," tokens can be traded for traditional fiat money or other types of tokens.

20. Provide's technology is aimed at connecting enterprise resource planning software—i.e., integrated computer applications used in business management practices—to public cryptocurrency ledgers.

**B.  Plaintiffs Execute the Notes and Commit to Funding Provide.**

21. One by one, Thomas reached out to Plaintiffs and recruited them to loan money to Provide. Based on Thomas's representations, including those regarding Provide's potential impact in the technological marketplace, Plaintiffs agreed to make loans through promissory notes that could be converted to equity interests in Provide.

22. Each individual Plaintiff executed a separate Note as follows:

   a) Tyson Mehlhoff executed a $250,000 Note on January 6, 2022;

   b) Stayton Tyacke executed a $100,000 Note on January 8, 2022;

   c) Alex Lyons executed a $100,000 Note on January 11, 2022;

   d) Shaylar Hatch executed a $500,000 Note on January 12, 2022;

   e) Chase Blackwood executed a $100,000 Note on January 30, 2022;

  f) Jaxon Mehlhoff executed a $100,000 Note on March 20, 2022;

  g) Trent Mehlhoff executed a $100,000 Note on March 20, 2022;

  h) Matthew Bregman executed a $50,000 Note on March 30, 2022; and

  i) Jason Newby executed a $200,000 Note on May 11, 2022.

  23. To fund their respective loans, Plaintiffs agreed to transfer cryptocurrency tokens. Thomas directed each of them to transfer their tokens to a specific wallet address he represented belonged to Provide. Each Plaintiff transferred an amount equal to his Note's principal (*e.g.*, if one token was worth $1, for example, one would transfer 250,000 tokens for a Note with a $250,000 principal).

  24. Under the Notes' terms, each Plaintiff's outstanding principal and interest would convert into capital stock shares of Provide "upon the closing of a Qualified Financing" by Provide. Making the deal even more attractive, each Plaintiff would receive a 50% discount on the share price as compared to that paid by later investors. So, in exchange for lending Provide early money, Plaintiffs were promised either the repayment of their loan or, in the event of conversion, an investment that would yield them twice as many shares as someone later investing the same amount would receive.

### C.    Provide Defaults on the Notes.

25.    Each Note contains a list of "Events of Default," one of which provides that a Note becomes immediately due and payable without notice or demand if Provide fails to pay the principal or interest when due and payable.

26.    Each Note became due and payable on October 1, 2022.

27.    Provide did not pay any principal or interest due to Plaintiffs under the Notes on or before October 1, 2022.

28.    On January 1, 2023—three months after the Notes became due and payable and Provide defaulted on them—Thomas advised Plaintiffs by email: "**I propose amending your outstanding convertible note to reflect an updated Maturity Date of October 1, 2023**":



29. Plaintiffs declined this request to update the Notes' maturity date.

30. To date, Provide has not paid ***any*** outstanding principal or interest under the Notes.

**D.   Misappropriation of funds by Thomas and/or Provide.**

31. Plaintiffs collectively loaned Provide $1.5 million and expected either (a) a conversion of their loans to Provide shares, or (b) a repayment of their principal (with interest). Yet the Notes' maturity date has come and gone, and Plaintiffs

remain unpaid by Provide.

32. Provide's inability to repay its debts is, now, not surprising. Once a given Plaintiff had signed his Note, Thomas would send that Plaintiff a cryptocurrency wallet address (an alpha-numeric code) and request that the tokens be transferred to that wallet. Although Thomas told Plaintiffs the wallet belonged to Provide, it was actually Thomas's personal wallet. On information and belief, Thomas used the proceeds from Plaintiffs' cryptocurrency transfers to fund his personal, lavish lifestyle.

33. Thomas made off with Plaintiffs' loans in this manner from approximately January 2022 through May 2022.

V. **CAUSES OF ACTION**

A. **Count I – Breach of Contract (against Defendant Provide and Defendant Thomas)**

34. Plaintiffs incorporate by reference and re-allege the foregoing paragraphs as if fully set forth herein.

35. On the dates referenced in Paragraph 22 above, Plaintiffs and Defendant Provide entered into written contracts—the Notes attached to this Complaint as Exhibits A–I. The Notes' terms require Provide to pay all principal and accrued interest on or after the October 1, 2022 maturity date, subject to the Notes' conversion provisions.

36. Plaintiffs have performed all conditions, covenants, promises, and agreements required of them under the Notes' terms.

37. Defendant Provide has failed and refused, and continues to fail and refuse, to tender its performance under the Notes.

38. Because of Defendant Provide's failure to perform its obligations under the Notes, each Plaintiffs has been damaged in the sum of his respective Note's principal—plus simple interest accruing at a rate of 4% per annum—no part of which has been paid.

39. Under the Notes' terms, Plaintiffs are entitled to an award of reasonable attorney's fees incurred in endeavoring to collect any amounts payable under the Notes or to otherwise enforce Plaintiffs' rights.

### *Alter Ego*

40. Defendant Thomas is Defendant Provide's CEO, CFO, and Secretary.

41. In his roles with Provide, Thomas shares the same business address as Provide's principal office address.

42. To secure Plaintiffs' commitments (the Notes' principal), Thomas sent Plaintiffs a cryptocurrency wallet address and represented that it belonged to Provide, and Thomas accepted Plaintiffs' transfer of cryptocurrency tokens to that address. This wallet did not belong to Provide—it was Thomas's personal wallet.

43. Thomas disregarded Provide's corporate entity status and made it an instrument to transact his own personal, financial affairs. Specifically, despite knowing that Plaintiffs fund Provide (not Thomas's own lifestyle), telling Plaintiffs that they were committing cryptocurrency tokens directly with Provide, and securing those commitments with the Notes designating Provide as the "Maker," Thomas accepted Plaintiffs' funds directly into his own personal wallet.

44. In the months following Thomas's deceptive receipt of Plaintiffs' funds, Thomas used the funds to support a lavish personal lifestyle, including the purchase of two luxury automobiles.

45. Plaintiffs do not have an adequate remedy at law as to Provide with respect to the Notes' outstanding balances. Provide is insolvent. Provide does not have sufficient assets to satisfy the outstanding principal and interest due under Plaintiffs' Notes.

46. To the extent Provide is held liable for the outstanding balance on the Notes (and Plaintiffs' incurred reasonable attorney's fees and costs), under the alter ego doctrine, Thomas should also be found liable for the amount of the judgment.

B.      **Count II – Fraud (against Defendant Thomas)** [1]

47.     Plaintiffs incorporate by reference and re-allege the foregoing paragraphs as if fully set forth herein.

48.     Defendant Thomas falsely represented to Plaintiffs that they were making loans to Provide. Specifically, Thomas sent Plaintiffs a cryptocurrency wallet address that he claimed belonged to Provide, when in fact it was Thomas's own personal wallet address. Thomas solicited and accepted Plaintiffs' cryptocurrency deposits into this personal wallet.

49.     Defendant Thomas knew that the wallet address he provided to Plaintiffs corresponded to his personal wallet, rather than to Provide's.

50.     Defendant Thomas intended for Plaintiffs to transfer cryptocurrency to his personal cryptocurrency wallet. He induced Plaintiffs to make these transfers by representing to them that they were transferring cryptocurrency to Provide's wallet as the method of loaning money to Provide.

51.     Plaintiffs were justified in relying on Thomas's representations that the wallet address pertained to Provide's wallet, particularly as Thomas was the

---

[1] For purposes of Count II only, the term "Plaintiffs" refers to all Plaintiffs except for Plaintiff Matthew Bregman.

individual with full knowledge of which wallet addresses pertained to his own wallet and (assuming one even exists) to Provide's wallet.

52. Thomas's misrepresentations caused damage to Plaintiffs, who believed they were funding their respective loan commitments to Provide—commitments they wished to make after they had heard Thomas's pitch about Provide's technological marketplace potential. Instead, Plaintiffs' funds went straight into Thomas's personal wallet, and he used those funds to enrich his personal lifestyle to the detriment of Provide and its lenders and investors. Now, because of Thomas's misrepresentations regarding where the loaned funds would be sent, Plaintiffs have not been made whole on their Notes.

53. In additional to their actual damages, because Thomas's conduct and misrepresentations were intentional, willful, or at a minimum exhibited a want of care and indifference to the consequences, Plaintiffs are entitled to punitive damages.

    **C.**    **Count III – Fraud (by Plaintiff Bregman against Defendant Thomas)**

54. Plaintiffs incorporate by reference and re-allege the foregoing paragraphs as if fully set forth herein.

55. Unlike with the other Plaintiffs, Defendant Thomas solicited Plaintiff Matthew Bregman to loan money to Provide through a wire transfer of traditional fiat currency to Provide's bank account (rather than cryptocurrency to a wallet).

56. Before securing Plaintiff Bregman's commitment, however, Defendant Thomas represented to him that all other Notes that had been executed had been secured by cash/traditional currency. Defendant Thomas did not inform Plaintiff Bregman that the other Notes were, in fact, funded by cryptocurrency, nor did he inform him that the cryptocurrency was actually sent to Thomas's personal wallet rather than to Provide's wallet.

57. Defendant Thomas knew that the other Notes were funded through cryptocurrency transfers, rather than through transfers of traditional currency.

58. Defendant Thomas intended for Plaintiff Bregman to loan money to Provide via a wire transfer to Provide's bank account, and intended to make the prospect more comfortable by representing that others had done the same thing. He induced Plaintiff Bregman to fund Provide by falsely representing to him that others had funded Provide via the Notes using traditional currency, as opposed to cryptocurrency.

59. Plaintiff Bregman was justified in relying on Thomas's representation that the other Notes had been funded with traditional currency, rather than

cryptocurrency, particularly as Thomas was in a position as Provide's executive to have the knowledge of how particular loans were secured.

60. Thomas's misrepresentation caused damage to Plaintiff Bregman, who was led to falsely believe he was loaning money to Provide in precisely the same manner as the other Plaintiffs had with their respective Notes. Had Plaintiff Bregman been aware that the other Notes were funded by cryptocurrency transfers rather than by traditional currency transfers, he would not have committed to funding Provide and would not have executed his Note. Now, because of Thomas's misrepresentation and its cascading effects, Plaintiff Bregman has not been made whole on his Note.

61. In addition to his actual damages, because Thomas's conduct and misrepresentations were intentional, willful, or at a minimum exhibited a want of care and indifference to the consequences, Plaintiff Bregman is entitled to punitive damages.

## **JURY DEMAND**

62. Plaintiffs demand a jury trial in accordance with Federal Rule of Civil Procedure 38.

## VI.   **PRAYER**

Accordingly, Plaintiffs pray for judgment against Defendants Provide Technologies, Inc. and Kyle Thomas as follows:

1. For actual damages, together with interest, in an amount to be proven at trial;

2. For punitive damages in an amount to be proven at trial;

3. For an award of reasonable attorney's fees and costs of suit incurred by Plaintiffs;

4. For an award of pre- and post-judgment interest at the maximum rate allowed by law; and

5. For such other and further relief as the Court deems just and equitable.

Dated: June 2, 2023

        Respectfully submitted,

        *Halima H. White*
        Halima H. White
        Ga. Bar No. 367888
        hwhite@theemploymentlawsolution.com
        The Employment Law Solution, LLC
        800 Mt. Vernon Hwy. NE, Suite 410
        Atlanta, GA 30328
        (678) 503-5464
        (404) 891-6840

        GREATHOUSE HOLLOWAY
        MCFADDEN TRACHTENBERG PLLC

        Brian Trachtenberg, *pro hac vice* application forthcoming
        Texas Bar No.: 24037608
        brian@GreatLaw.com

Brian A. Srubar, *pro hac vice* application forthcoming
Texas Bar No. 24098460
srubar@GreatLaw.com
4200 Montrose Boulevard, Suite 300
Houston, Texas 77006
Telephone: (713) 688-6789

**ATTORNEYS FOR PLAINTIFFS**