Exhibit B

THIS NOTE AND ANY SHARES ACQUIRED UPON CONVERSION OF THIS NOTE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT FILED UNDER SUCH ACT OR PURSUANT TO AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED.

## CONVERTIBLE PROMISSORY NOTE

$ 100,000                                                                 1/8/2022

1.    **General**.

FOR VALUE RECEIVED, Provide Technologies, Inc., a Georgia corporation (the "**Maker**"), promises to pay to _____Stayton Tyacke_____ or its assigns (the "**Holder**") the principal sum of _____one hundred thousand_____ ($ 100,000_____), together with interest on the unpaid principal balance of this Convertible Promissory Note (this "**Note**"), from time to time, outstanding at the rate of four percent (4.0%) per annum, cumulative, but not compounding (the "**Interest Rate**"), until paid in full. Subject to the conversion provisions set forth herein, all principal and accrued interest shall be due and payable on demand of the Holder on or after October 1, 2022 (the "**Maturity Date**").

Interest on this Note shall be computed on the basis of a year of 365 day year. All payments by the Maker under this Note shall be in immediately available funds.

Until the conversion of this Note, the Holder shall not have or exercise any rights by virtue hereof as a stockholder of the Maker.

This Note may not be transferred unless Holder has obtained the Maker's prior written consent, which may be granted or withheld in its sole discretion, and (a) such transfer is registered under the Securities Act of 1933, as amended (the "**Securities Act**") and any applicable state securities or blue sky laws, or (b) an exemption from registration for such transfer is available.

2.    **Conversion**.

Effective upon the closing of a Qualified Financing (as defined below), all of the outstanding principal and interest under this Note (the "**Outstanding Amount**") will automatically be converted into shares of a series of capital stock of the Maker with the same, rights, preferences and privileges as those issued to other investors in the Qualified Financing (the "**Qualified Financing Securities**"), except with a conversion price which shall be equal to the lesser of (i) fifty percent (50.0%) of the price per share of Qualified Financing Securities paid by the other investors in the Qualified Financing, and (ii) the Capped Price Per Share (as defined below), with any resulting fraction of a share rounded to the nearest whole share (with 0.5 being rounded up). "**Capped Price Per Share**" means the price per share calculated in the same manner as the price per share of Qualified Financing Securities, but instead based on a pre-money valuation of the Maker of $125,000,000, with any resulting fraction rounded to the nearest whole cent (with 0.5 being rounded up). "**Qualified Financing**" means the first issuance of equity by the Maker after the date hereof, with immediately available gross proceeds to the Maker (excluding proceeds from this and any other indebtedness of the Maker that convert into equity in such financing) of at least $1,000,000. The Maker shall notify the Holder in writing of the anticipated occurrence of a Qualified Financing at least ten (10) days prior to the closing date of the Qualified Financing.

3.    **Change of Control; Preferred Financing Provisions**.

Notwithstanding any provision of this Note to the contrary, if the Maker consummates a Sale of

the Maker (as defined below) prior to the conversion or repayment in full of this Note, then (i) the Maker will give the Holder at least five (5) days prior written notice of the anticipated closing date of such Sale of the Maker, and (ii) at the closing of such Sale of the Maker, in full satisfaction of the Maker's obligations under this Note, the Maker will pay the Holder an aggregate amount equal to the greater of (x) the aggregate amount of principal and interest then outstanding under this Note, or (y) the amount the Holder would have been entitled to receive in connection with such Sale of the Maker if the aggregate amount of principal and interest then outstanding under this Note had been converted into shares of common equity of the Maker pursuant to the immediately preceding paragraph, immediately prior to the closing of such Sale of the Maker.

A "*Sale*" of the Maker shall mean (i) any merger or consolidation to which the Maker is a party (except any merger or consolidation in which the holders of capital stock of the Maker immediately prior to such merger or consolidation continue to hold, immediately following such merger or consolidation and in approximately the same relative proportions as they held voting stock of the Maker, at least fifty-one percent (51.0%) of the voting power of the capital stock of (A) the surviving or resulting corporation, or (B) if the surviving or resulting corporation is a wholly-owned subsidiary of another corporation immediately following such merger or consolidation, of the parent corporation of such surviving or resulting corporation), (ii) the sale by the stockholders of the Maker, in a single transaction or series of related transactions, of capital stock representing at least eighty-five percent (85.0%) of the outstanding voting power of the Maker, or (iii) the sale of all or substantially all of the assets of the Maker. The Maker shall notify the Holder in writing of the anticipated occurrence of a Sale at least ten (10) days prior to the closing date of the Sale.

In addition to the foregoing rights of conversion in case of a Qualified Financing, upon Maturity or upon a Sale, in the event that, at any time that any amount remains outstanding under this Note, if the Maker issues and sells any shares of preferred equity (at any level of investment) (any such event, a "*Preferred Transaction*"), the Holder shall have the right to participate in such Preferred Transaction by conversion of all (but not less than all) of the then Outstanding Amount into shares of such preferred equity on the same terms and conditions (including purchase price) as those being given to the purchasers in such Preferred Transaction. The Maker shall give notice of its intent to consummate any Preferred Transaction at least fifteen (15) days prior to the closing of such transaction. The Holder's rights of participation in any Preferred Transaction shall lapse upon the closing of such transaction, but any failure to exercise such rights shall not impact the Holder's rights to exercise such rights in any subsequent Preferred Transaction.

4. **Events of Default**.

This Note shall become immediately due and payable without notice or demand (but subject to the conversion rights set forth herein) upon the occurrence at any time of any of the following events of default (individually, an "*Event of Default*" and, collectively, "*Events of Default*"):

(i)     the Maker fails to pay any of the principal, interest or any other amounts payable under this Note when due and payable;

(ii)    the Maker files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or seeks the appointment of a custodian, receiver, trustee (or other similar official) of the Maker or all or any substantial portion of the Maker's assets, or makes any assignment for the benefit of creditors or takes any action in furtherance of any of the foregoing, or fails to generally pay its debts as they become due; or

(iii)   an involuntary petition is filed, or any proceeding or case is commenced, against the Maker (unless such proceeding or case is dismissed or discharged within sixty (60) days of the filing or commencement thereof) under any bankruptcy, reorganization,

arrangement, insolvency, adjustment of debt, liquidation or moratorium statute now or hereafter in effect, or a custodian, receiver, trustee, assignee for the benefit of creditors (or other similar official) is applied or appointed for the Maker or to take possession, custody or control of any property of the Maker, or an order for relief is entered against the Maker in any of the foregoing.

Upon the occurrence of an Event of Default, the Holder shall have then, or at any time thereafter, all of the rights and remedies afforded creditors generally by the applicable federal laws or the laws of the State of Georgia.

The Maker agrees to pay all expenses, including reasonable attorneys' fees and disbursements, incurred by the Holder in endeavoring to collect any amounts payable hereunder which are not paid when due or to otherwise enforce its rights hereunder.

5.    **Accredited Investor Status**.

The Holder understands that under the requirements of the Securities Act and Regulation D promulgated thereunder, and applicable state securities laws, the Holder must provide the Maker with candid and full disclosure of certain facts and personal information, including financial information, which facts and information will be relied upon by the Maker in deciding whether to offer and sell the Note to the Holder. Please check below the category of "Accredited Investor" (as that term is defined in 17 C.F.R. § 230.501 of Regulation D under the 1933 Act) into which the Holder qualifies (and, if the Holder, does not qualify as an "accredited investor" please so indicate):

__x__    A natural person whose individual net worth or joint net worth with that person's spouse, at the time of his or her purchase exceeds $1,000,000 (excluding in such calculation the value of your primary residence and the related amount of indebtedness secured by your primary residence up to its fair market value and including in such calculation, if applicable, the related amount of indebtedness secured by your primary residence that exceeds its fair market value); or

_____    A natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year; or

_____    A director or executive officer of the Maker; or

_____    An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership not formed for the specific purpose of acquiring the securities offered pursuant to this Note, with total assets in excess of $5,000,000; or

_____    A trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered pursuant to this Note, whose purchase is directed by a sophisticated person as described in SEC Rule 506(b)(2)(ii); or

_____    A bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; an insurance company as defined in section 2(a)(13) of the Securities Act; an investment company registered under the Investment Company Act of 1940, as amended ("*ICA*") or a business development company as defined in Section 2(a)(48) of the ICA; a Small Business Investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the

benefit of employees, if such plan has total assets in excess of $5,000,000; an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("***ERISA***") if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors; or

    \_\_\_\_ A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended; or

    \_\_\_\_ An entity in which all of the equity owners are accredited investors.

*– or –*

    \_\_\_\_ The Holder does not qualify as an "accredited investor".

**6.**      **<u>Risk Factors</u>**.

The following is a non-exhaustive list of risks associated with an investment in the Maker. Investors should carefully consider the following risk factors in light of their potential impact on the financial condition and results of operations of the Maker.

(a)      The Maker has a limited operating history, and, further, does not have a profitable operating history and is thinly capitalized. The proceeds received in this offering may be used in the sole discretion of the management of the Maker, including for general working capital purposes.

(b)      The Maker's critical products, upon which it intends to derive a large part of its revenue are still in the development stage and technological problems could arise in final testing. Furthermore, the Maker's products under development could develop unanticipated problems in the testing and commercialization phases. The Maker may, in the sole discretion of the management, determine that one or more of its product lines may be abandoned or altered, and may pursue alternative product or service lines in the future.

(c)      The Maker's patents may not be approved by the U.S. Patent Office and the Maker's core intellectual property may not be protectable. Furthermore, other companies could assert that the Maker's technology violates their patent or other Intellectual Property rights.

(d)      The projections developed internally by the Maker for its own uses cannot be confirmed as reliable due, among other things, to the lack of a well developed market for new and improved products under development by the Maker, as well as the inherent difficulty in predicting demand for new types of products.

(e)      The Note and Maker's underlying common stock is illiquid and will likely remain so.

**7.**      **<u>Miscellaneous</u>**.

This Note may not be prepaid, in whole or in part, without the express consent of the Holder.

All payments by the Maker under this Note shall be made without set-off or counterclaim and be free and clear and without any deduction or withholding for any taxes or fees of any nature whatever, unless the obligation to make such deduction or withholding is imposed by law.

No delay or omission on the part of the Holder in exercising any right under this Note shall operate as a waiver of such right or of any other right of the Holder, nor shall any delay, omission or

waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion.

The terms and provisions of this Note may be modified or amended only by a written instrument duly executed by the Maker and by the Holder.

All payments by the Maker under this Note shall be applied first to any fees and expenses due and payable hereunder, then to the accrued interest due and payable hereunder and the remainder, if any, to the outstanding principal.

The Maker and every endorser or guarantor of this Note, regardless of the time, order or place of signing, hereby waives presentment, demand, protest and notices of every kind and assents to any permitted extension of the time of payment and to the addition or release of any other party primarily or secondarily liable hereunder.

The Holder agrees that no stockholder, manager, director or officer of the Maker shall have any personal liability for the repayment of this Note.

All rights and obligations hereunder shall be governed by the laws of the State of Georgia (without giving effect to principles of conflicts or choices of law) and this Note is executed as an instrument under seal.

\* \* \*

*[Signatures Appear on Following Page]*

**IN WITNESS WHEREOF**, the Parties hereto have executed this Convertible Promissory Note as of the date first written above.

**MAKER:**

**PROVIDE TECHNOLOGIES, INC.**

Name: Kyle Thomas

Title: CEO

Date: 1/8/2022

**HOLDER**:

Name: Stayton Tyacke

Title (if applicable): Mr.

Date: 1/8/2022

Address: ███████████████

Mapleton, UT ██████

Email: staytontyacke@me.com

CONVERTIBLE PROMISSORY NOTE – PROVIDE TECHNOLOGIES, INC.