# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Ave.
Atlanta, GA 30303-9913

Date: November 02, 2022

Derrick Redding
6292 Thornhedge Drive
Riverdale, GA 30296

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council
5107 Leesburg Pike
Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?
Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Derrick Redding (BNC#: 21MU340K49886)                    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Derrick Redding (BNC#: 21MU340K49886)                                      Page 3 of 3

**If You Have Any Questions**

1.  Visit www.ssa.gov for fast, simple, and secure online service.
2.  Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3.  You may also call your local office at (866) 331-2215.

SOCIAL SECURITY
6665 PARK PLACE
MORROW, GA 30260-2349

**How are we doing?** Go to www.ssa.gov/feedback to tell us.


                                          Brendan Flanagan
                                          Administrative Law Judge


Enclosures:
Decision Rationale


cc:     Kathleen Marie Flynn
        315 W PONCE DE LEON AVE
        SUITE 940
        DECATUR, GA 30030

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Derrick Redding | Supplemental Security Income |
| (Claimant) | |
| | 21MU340K49886 |
| (Wage Earner) | (Beneficiary Notice Control Number) |
| | *Social Security Number removed for your protection* |

**JURISDICTION AND PROCEDURAL HISTORY**

On October 29, 2019, the claimant filed an application for supplemental security income, alleging disability beginning March 31, 2017.  The claim was denied initially on April 27, 2021, and upon reconsideration on August 20, 2021.  Thereafter, the claimant filed a written request for hearing received on September 2, 2021 (20 CFR 416.1429 *et seq.*).  On July 12, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic.  All participants attended the hearing by telephone.  The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing. The claimant is represented by Kathleen Marie Flynn, primary attorney of record. Attorney Erica Dempsey represented the claimant at the hearing. Deaunna Fronberger, an impartial vocational expert, also appeared at the hearing.

If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 416.1435(a)). Pursuant to 20 CFR 416.1435(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant informed the Administrative Law Judge about additional written evidence at the scheduled hearing date.  The undersigned then left the record open for two weeks to allow the claimant to submit additional evidence. Subsequently, the claimant submitted additional records from Grady Hospital, Dr. Emily Smith, M.D., and Wellstar Atlanta Medical Center. The undersigned Administrative Law Judge finds that the requirements of 20 CFR 416.1435(b) are satisfied and admits this evidence into the record as Exhibits B36F through B39F.

See Next Page

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since October 29, 2019, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

See Next Page

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant has not engaged in substantial gainful activity since October 29, 2019, the application date (20 CFR 416.971 *et seq.*).**

The claimant worked after the alleged disability onset date engaging in some substantial gainful activity. Specifically, the claimant testified that he was hired in 2021 at ABM Aviation, Gresham

Transport, Chick-fila, and People Ready. From 2021 to 2022, he reported he worked at Adesa Car Auction via People Ready earning $12/hour scanning cars into correct order, driving cars thru auction, and wiping cafeteria tables. He stated he worked three days per week for a total of 20 to 25 hours weekly. He also reported he worked for ABM Aviation cleaning offices, but he only completed the job for a total of one week. He testified that he worked as a van driver for Gresham Transport but again said he only worked temporarily during the training period. Beginning in May 2022, he reported he worked at the Delta Sky Club at the Atlanta Airport for two days per week. He stated he stopped working there on June 29, 2022. Finally, he reported he worked in maintenance to clean the Chick-fila in Philips Arena where he was required to lift 60 pounds. He reported he only worked one month and required the use of a cane every day (Testimony).

Additionally, the earnings records confirm the claimant worked 91.58 hours at People Ready from January through February 4, 2022. He earned $4,324 during the first quarter of 2022 (Exhibit B12D). He also has earnings at lesser amounts from People Ready, Gresham Transport, ABM Aviation, and Roadrunner (Exhibit B13D). In 2021, he also earned $2,569.85 (Exhibit B10D).

The average of the claimant's wages per month exceeded the allotted amount for the first quarter of 2022 pursuant to the Regulations (20 CFR § 404.1574).  Therefore, the undersigned concludes that the claimant engaged in substantial gainful activity during that quarter.  However, there are periods of alleged disability where the claimant did not engage in substantial gainful activity. While these amounts do not rise to the level of SGA, they do show good ability to perform work activity.

He also alleged his work at Chick-fila was an unsuccessful work attempt that required the use of a cane daily. While this appears inconsistent with his own admission that he had to lift 60 pounds working at Chick-fil-A, the undersigned finds this work does not constitute SGA. Therefore, the undersigned must continue to the following steps of the sequential evaluation process to determine whether the claimant is disabled.

**2.   The claimant has the following severe impairments: gout, depressive disorder, diabetes mellitus, remote history of left arm burn, osteoarthritis of the knees, and degenerative disc disease (20 CFR 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

In addition, the undersigned notes that the claimant also has the following "non-severe" medically determinable impairments: left retrobulbar hematoma, vision impairment, glaucoma, obstructive sleep apnea, and hypertension.  A "non-severe" impairment produces a slight abnormality or a combination of slight abnormalities that has had no more than a minimal effect on the ability to perform basic work activities. The medical evidence of record reflects that the claimant was assessed with these impairments, but his symptoms were minimal in nature since the application date (Exhibits B6F – B27F).  He passed a vision test for employment at a truck company job in 2021. Visual acuity exams also show 20/30 and 20/20 visual acuity. His sleep

apnea does not appear to require significant treatment or the aid of a CPAP device. His blood pressure is well managed with simple medication compliance. His left retrobulbar hematoma also shows no significant limitations. Based on these findings, the undersigned finds these impairments are "non-severe. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

Additionally, with respect to precipitating and aggravating factors, the claimant has the medical condition of obesity. He is approximately 5'11" tall and weighs 272 pounds (Testimony). As noted in SSR 19-2P, obesity can affect physical and mental health and can cause additional limitations related to sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect a person's ability to sustain mental and physical function over time due to fatigue caused by obesity. Consequently, the claimant may be more limited mentally and physically than indicated by the objective evidence due to this precipitating and aggravating factor. However, any limitations are only minimal in nature and, therefore, are also non-severe.

**3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment, including but not limited to Listings 1.00, 14.00 or, specifically, 1.15, 1.18, and 14.09.

Furthermore, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a moderate limitation. In interacting with others, the claimant has a moderate limitation. With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has experienced a moderate limitation.

These findings are supported by the fact that records from a consultative examination in July 2020 show he uses a microwave to heat food. He regularly watches documentaries on television. He occasionally uses a computer to look up information. He is able to dress himself and manage his hygiene independently. He also visits with his mother and brothers regularly (Exhibit B12F). He testified that he has a valid driver's license. He has a GED. He can count change. He also admitted he worked after the alleged onset date performing various jobs such a van driver, car

auction driver, cafeteria cleaner, maintenance worker, and custodial worker for the airport (Testimony). In a Function Report, he also admitted he had no problems with personal care needs such as feeding himself and using the toilet. He shops for groceries by mail and via telephone. He can count change. He reported he spends time with others as he lives with his mother. He also noted that he interacts with others via telephone and skype (Exhibit B11E). These activities show no more than moderate limitations and are indicative of good functioning capabilities.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand, and walk 6 hours each in an 8-hour workday. He has unlimited pushing and pulling within the limits for lifting and carrying. He can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. He can frequently balance, kneel, crouch, and crawl. He can occasionally stoop. He must avoid extreme cold, exposure to hazards, moving mechanical parts, and unprotected heights. Mentally, he can understand, remember, and carryout simple instructions. He can concentrate and persist in two-hour segments. Socially, he is limited to no more than occasional interaction with the public, crowds, co-workers, and supervisors. His adaptation s limited to no more than occasional changes in the routine work setting. He cannot perform fast-paced high production demands, such as work that has defined hourly quotas.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

See Next Page

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant's allegations are generally inconsistent and unsupported by the medical evidence of record. He was 51 years old on the application date and he is currently 54 years old. He did not complete high school but later received a GED. He has some temporary work history driving cars for a car auction, cleaning cafeteria tables, transporting patients, maintenance work, and custodial work for the airport. He has no military experience. At the hearing, he testified that he was disabled due to knee problems, arthritis, third degree burn on my elbow causing inability to move the left arm properly, lower back pain, diabetes, and high blood pressure. He testified to uncontrolled symptoms, including overall soreness, limited range of motion, decreased mobility, reduced concentration, depression, and problems bending, lifting, standing, or walking. He complained of medication side effects and drowsiness. He also testified that he requires the use of a cane for ambulation at times (Testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Ultimately, the undersigned is not persuaded that the claimant is as limited as alleged, nor do I believe that he has been incapable of performing full-time work. The evidence largely includes routine and sporadic medical records showing mostly controlled symptoms. Specifically, while the evidence confirms diagnoses including severe gout, depressive disorder, diabetes mellitus, remote history of left arm burn, osteoarthritis of the knees, and degenerative disc disease, his treatment has been only conservative in nature.

Prior to the alleged onset date, treatment records show history of left elbow burn with some complaints of difficulty lifting due to pain. He was also diagnosed with diabetes back in 2013 but his treatment consisted of mostly of conservative medication management (Exhibits B1F – B2F); *see also* Exhibit B10F). In October 2017, examination confirmed steady gait with good range of motion in all extremities. He also had no erythema or edema (Exhibits B2F and B20F).

Since the application date, medical records from 2019 show the claimant suffered a concussion after being knocked out during a fight. He spent one week in Grady Hospital. A CT confirmed left retrobulbar hematoma causing visual impairment. He was evaluated by ophthalmology and found to have an orbital compartment syndrome, for which they performed a canthotomy and cantholysis. He was later treated with erythromycin ointment and his vision continued to

improve. He was maintained inpatient for resolution of initial altered mental state, which improved. He worked with physical therapy and initially had a gout flare, which was treated, and he was then cleared for discharge home. He was then discharged in stable condition. Records show no history of seizure, stroke or migraine headaches (Exhibit B6F).

Subsequently, almost every evaluation of strength shows 5/5, which is very significant. Treatment notes from February 2020 show a history of chronic osteoarthritis and gouty arthropathy. The claimant visited the emergency department with complaints of bilateral knee and ankle joint pains and swelling, and bilateral hand and wrist pain and swelling. He reported he was unable to walk or sleep because of worsening pain but denied dizziness, fall, traumatic injury, nausea, vomiting, diarrhea, fever, chills, chest pain or shortness of breath, heavy lifting, or low back pain. He was prescribed conservative pain medication treatment and released in stable condition (Exhibit B9F).

On March 26, 2020, Consultative Examiner Dr. Oluropo Ayeni, M.D., examined the claimant and diagnosed him with widespread joint pain and stiffness, history of gout, chest pain and lower extremity edema, type II diabetes mellitus with peripheral neuropathy, declining visual acuity, limited left arm range of motion secondary to burn, and history of hypertension. Dr. Ayeni noted he was alert, oriented, and in no acute distress. He had 3/5 upper and lower extremity motor strength. He was unable to perform straight leg raise. He reported he needed a cane to ambulate. He reported some racing thoughts but admitted to no mental health treatment or psychotropic medications. Based on these findings, Dr. Ayeni recommended follow-up treatment with cardiologist, orthopedist, ophthalmologist, and nephrologist (Exhibit B10F).

A couple of months later, on June 5, 2020, the claimant underwent a virtual telephonic follow-up visit for gout. Treatment notes show he was diagnosed with gout 10 years prior. He underwent medication reconciliation and was prescribed simple allopurinol for symptom management (Exhibit B24F). Current medications included Lisinopril 20 mg, allopurinol 10 mg, Crestor 40 mg, Metformin 500 mg, Indomethacin 50 mg, Prednisone, and Penicillin 500 mg. In August of 2020, records from WellStar Atlanta Medical Center show the claimant presented the emergency department with reports of gout swelling. He complained of left and right ankle swelling. However, the treatment notes report he was noncompliant with gout medication. His musculoskeletal findings also showed normal range of motion (Exhibit B15F). Records from August 5, 2020 also show no side effects from Crestor. During a follow-up at Grady Hospital in October 2020, treatment notes show some right ankle swelling and gout, but it was only noted to be moderate in nature and stable. Records also confirm diabetes was well controlled (Exhibit B16F).

On April 12, 2021, x-rays of the back show no acute osseous or soft tissue abnormality with subtle deformity of the distal ulna which could represent a chronic healed fracture. No significant degenerative joint disease was found. Left elbow and right shoulder x-rays showed no acute fracture or sublimation with only mild right glenohumeral joint degenerative arthrosis and no significant abnormality. Lumbosacral radiographs also revealed normal alignment with mild to moderate degenerative disc disease at L1-2, L2-3, L5-S1 (Exhibit B23F).

Regarding the claimant's testimony that he requires a cane or walker every day, there is no documentation of a prescription for a cane. He reported he bought the cane at CVS. Few records show the need for a cane. On May 20, 2021 he stated that he required a cane but strength was 5/5 during examination. He was also instructed to visit urgent care during gout flareups to have joints aspirated, but records show few such visits for flares. Records from December 17, 2021, show he was not using a cane. Multiple records show normal and steady gait (*see* Exhibits B2F – B29F showing examinations on 7/14/17, 10/21/20, 8/5/20; 2/25/19, 11/9/19, 3/6/20, 4/25/20, 7/15/20, 10/1/20, 12/29/20, and 5/5/20).  He worked at a job requiring him to lift 60 pounds while cleaning, which is likely incompatible with a cane.

On September 4, 2021, treatment notes show gout flareups two to three times per month. Another record shows the flares were mild.  He was supposed to take Allopurinol 400 mg per day. However, pharmacy records show he was dispensed Allopurinol medication for gout just once over a five-year period (see Exhibits 24E – 25E  showing 30 tables filled in April 2021 for prescription written in October 2020).

The claimant further testified that he visits the emergency department when he gets flare-ups where he cannot walk, but there are few emergency room visits that show flareups. Records from June 6, 2021, August 14, 2021, and December 17, 2021 show no edema (Exhibits B26F, B32F, and B35F – B36F).  Gout flares were noted to be mild and he denied edema and on March 11, 2022 (Exhibit B29F). In addition, testimony regarding drowsiness and dizziness do not appear to be supported by the medical records.

Turning to mental impairments, on July 10, 2020, Consultative Examiner Dr. Steven Snook, Ph.D., diagnosed the claimant with major depressive disorder with mild and anxious distress (Exhibit B12F). Dr. Snook noted that the claimant reported a history of recurrent major depressive episodes and stated that he was hospitalized at Georgia Regional Hospital at some point in the 1990's. However, the claimant admitted that he was currently without psychiatric care or mental health treatment. He presented as sad, dysphoric, and described having passive suicidal ideation as well as feelings of worthlessness. His mentation was slowed and concrete. In the past, the claimant has worked as a general laborer through temporary services and at an auto auction, but not for a number of years. Based upon the claimant's presentation at the time of examination, he appeared capable of understanding and remembering simple, but not detailed directives. From a psychological perspective, the claimant would have difficulty sustaining concentration, pace and persistence to permit the time and completion of assigned tasks given his slowed responses and poor focus evident during the examination. The claimant would have no significant difficulty interacting with coworkers, supervisors and the general public based upon his appropriate social skills evident during the assessment. The claimant would have "difficulty" adapting to the stress of a typical work environment given the chronicity of his depression. Dr. Snook noted that he would anticipate that there would be improvement in the claimant's functioning with consistent psychiatric care and mental health treatment (Exhibit B12F).

Furthermore, the evidence shows he has not had any formal mental health care. He testified that he requested a psychiatric referral from physicians at Grady Hospital but never received one. This indicates his mental condition is not severely limiting (Testimony).

See Next Page

Based on these findings, while the undersigned acknowledges the claimant has some functional limitations, the objective medical findings show the claimant's symptoms are well controlled with only conservative treatment and fail to support a disabling condition during the alleged period of disability. Therefore, the undersigned finds the claimant was capable of performing a significant range of work activity at the light and less exertional levels with the above-noted postural, environmental, and mental limitations to account for his severe physical and mental impairments.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. Additionally, other governmental agencies and nongovernmental entities decisions about disability, blindness, employability, Medicaid, Workers' Compensation, and other benefits use their own rules and are inherently neither valuable nor persuasive to this decision. Likewise, statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive to this decision. The undersigned has also reviewed the functional statements found in Section E, and evidence from nonmedical sources such as statements by the claimant or other nonmedical sources (20 CFR 404.1520c(d)).

Regarding prior administrative opinions, on the initial level of disability review of the current application, the State Agency Consultant found the claimant had severe physical and mental impairments that resulted in a medium exertional level with frequent and postural limitations, environmental limitations, and mental limitations (Exhibit B5A). On the reconsideration level of disability review of the current application, the State Agency Consultant found the claimant had more severe physical impairments that resulted in a light exertional level with frequent and occasional postural limitations, no environmental limitations, and no mental limitations (Exhibit B8A). The undersigned has considered the DDS determinations and the evidence relied upon therein and finds the reconsideration determination mostly persuasive and consistent with the medical evidence. However, the longitudinal medical records, including the evidence received since the DDS determinations, shows the claimant has more severe physical and mental impairments that cause limitations that result in more restrictive postural, environmental, and mental limitations than were initially determined.

On March 26, 2020, Consultative Examiner Dr. Oluropo Ayeni, M.D., opined that the claimant had unsteady gait and required a cane to ambulate. He has difficulty reaching and pulling with his left arm. He also has difficulty typing and getting in and out of the bathtub due to pain (Exhibit B10F). These opinions are unpersuasive as they are unsupported by the objective radiographs that show only mild to moderate findings. They are also inconsistent with the claimant's own reported functioning capabilities as well as his work history. While Dr. Ayeni found grip and upper extremity strengths of 3/5 and that the claimant needed a cane, these findings are inconsistent with longitudinal records that show consistent 5/5 strengths and normal gait discussed above. Records also show his pain and symptoms are well controlled when complaint with simple medication treatment. Any limitations due to gout, left arm pain, degenerative disc disease, and knee osteoarthritis are also considered in the postural and environmental limitations noted in the above residual functional capacity.

See Next Page

On July 10, 2020, Psychological Examiner Dr. Steven Snook opined that the claimant appeared capable of understanding and remembering simple, but not detailed directives. From a psychological perspective, the claimant "would have difficulty" sustaining concentration, pace and persistence to permit the time and completion of assigned tasks given his slowed responses and poor focus evident during the examination. The claimant would have no significant difficulty interacting with coworkers, supervisors and the general public based upon his appropriate social skills evident during the assessment. The claimant would have difficulty adapting to the stress of a typical work environment given the chronicity of his depression. Dr. Snook noted that he would anticipate that there would be improvement in the claimant's functioning with consistent psychiatric care and mental health treatment (Exhibit B12F). These opinions are mostly persuasive given the claimant's lack of recent formal mental health treatment. Giving the claimant the benefit of the doubt, however, the undersigned finds the claimant has moderate limitations in all mental functioning and is limited to simple instructions, concentrating and persisting in two-hour segments, no more than occasional interaction with the public, crowds, co-workers, and supervisors, no more than occasional changes in the routine work setting, and no fast-paced high production demands.

In addition, the claimant submitted a treating source statement from Dr. Emily Smith, M.D., (Exhibit B39F). Dr. Smith's opinions are partially persuasive. Dr. Smith performed a telephone visit with the claimant, reviewed "some paperwork for disability," and correctly noted no abnormal motion instability or immobility that affected the joints and no medically documented need for a handheld assistive device, walker, cane, or mobility device. This is consistent with the objective medical findings as well as Dr. Smith's own reports of no instability or immobility. However, Dr. Smith also opined that the claimant has persistent inflammation or persistent deformity which conditions are not shown in the independent medical notes. Rather, Dr. Smith did not perform any physical examination but simply relied on a telephone visit with the claimant and a review of "some paperwork for disability" on June 23, 2022.  (Exhibit B37F, p. 7). Therefore, her assessment is unpersuasive for the reasons explained herein.

In conclusion, although the evidence as a whole establishes underlying medical conditions capable of producing some limitations, that evidence neither confirms disabling limitations arising from the claimant's underlying medical conditions, nor does it support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling limitations.  After having carefully considered the entire documentary evidence of record, as well as the testimony at the hearing, the undersigned concludes that the claimant retained the residual functional capacity to perform work as described above.

**5.    The claimant has no past relevant work (20 CFR 416.965).**

**6.    The claimant was born on June 29, 1968 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).**

**7.    The claimant has at least a high school education (20 CFR 416.964).**

See Next Page

**8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.13.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of light, SVP 2 representative occupations such as follows:

| Occupation | DOT Code | Jobs In The National Economy |
|---|---|---|
| Photocopy machine operator | 207.685-014 | 10,000 |
| Router | 222.587-038 | 31,000 |
| Marker | 209.587-034 | 130,000 |

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) and its companion publications. For matters not directly addressed in the DOT, the Vocational Expert stated that he also relied upon his professional education, training, and work experience as a vocational and rehabilitation counselor.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the

Derrick Redding (BNC#: 21MU340K49886)                    Page 13 of 13

national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10.  The claimant has not been under a disability, as defined in the Social Security Act, since October 29, 2019, the date the application was filed (20 CFR 416.920(g)).**

<u>DECISION</u>

Based on the application for supplemental security income filed on October 29, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ **_Brendan F. Flanagan_**
_____
Brendan Flanagan
Administrative Law Judge

November 02, 2022
_____
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1A | ALJ Hearing Decision | | 2016-01-22 | 15 |
| Y13 | B2A | AC Denial | | 2017-02-06 | 5 |
| Y13 | B3A | Disability Determination Explanation - DDE T-16, PRT by PHD; RFC by MD | | 2018-08-20 | 14 |
| Y13 | B4A | Disability Determination Transmittal - INDI | | 2018-08-20 | 1 |
| Y13 | B5A | Disability Determination Explanation - DDE T-16; PRT, RFC by MD; MRFC by MD | | 2021-04-21 | 29 |
| Y13 | B6A | Disability Determination Transmittal - INDI | | 2021-04-21 | 1 |
| Y13 | B7A | Disability Determination Transmittal - RCDI | | 2021-04-22 | 1 |
| Y13 | B8A | Disability Determination Explanation - DDE-T16; RFC by MD | | 2021-08-20 | 8 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | B1B | SSA-1696-SUP2 - Representative's Withdrawal of Acceptance of Appointment | | 2016-01-27 | 1 |
| Y13 | B2B | Request for Review of Hearing Decision/Order | | 2016-03-28 | 1 |
| Y13 | B3B | AC Correspondence | | 2016-04-14 | 2 |
| Y13 | B4B | T16 Notice of Disapproved Claim | | 2018-08-21 | 5 |
| Y13 | B5B | SSA-1696 - Claimant's Appointment of a Representative | | 2019-12-30 | 1 |

| Y13 | B6B | Fee Agreement for Representation before SSA | 2019-12-30 | 1 |
| Y13 | B7B | T16 Notice of Disapproved Claim | 2021-04-27 | 6 |
| Y13 | B8B | Request for Reconsideration | 2021-05-04 | 3 |
| Y13 | B9B | T16 Disability Reconsideration Notice | 2021-08-20 | 3 |
| Y13 | B10B | Request for Hearing by ALJ | 2021-09-02 | 3 |
| Y13 | B11B | Request for Hearing Acknowledgement Letter | 2021-09-23 | 15 |
| Y13 | B12B | COVID Hearing Agreement Form | 2021-10-08 | 18 |
| Y13 | B13B | Outgoing ODAR Correspondence | 2021-10-08 | 4 |
| Y13 | B14B | Objection to Video Hearing | 2021-10-11 | 1 |
| Y13 | B15B | Request for Hearing Acknowledgement Letter | 2021-10-12 | 20 |
| Y13 | B16B | COVID Hearing Agreement Form | 2021-10-19 | 2 |
| Y13 | B17B | Claimant's Change of Address Notification | 2021-12-30 | 2 |
| Y13 | B18B | Hearing Notice | 2019-04-22 | 14 |
| Y13 | B19B | Acknowledge Notice of Hearing | 2022-05-04 | 2 |
| Y13 | B20B | Notice Of Hearing Reminder | 2022-06-14 | 4 |
| Y13 | B21B | Request for Review of Hearing Decision/Order | 2016-04-05 | 2 |
| Y13 | B22B | SSA-1696 - Claimant's Appointment of a Representative | 2022-07-07 | 4 |
| Y13 | B23B | Fee Agreement for Representation before SSA | 2022-07-07 | 1 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|-----------|-----|-------------|----------|-------|-------|

| Y13 | B1D | Application for Supplemental Security Income Benefits | 2019-12-13 | 7 |
|-----|------|------------------------------------------------------|------------|---|
| Y13 | B2D | WHAT - Work History Assistant Tool | 2022-04-01 | 15 |
| Y13 | B3D | Certified Earnings Records | 2022-04-01 | 3 |
| Y13 | B4D | Summary Earnings Query | 2022-04-01 | 1 |
| Y13 | B5D | Detailed Earnings Query | 2022-04-01 | 3 |
| Y13 | B6D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2022-04-01 | 2 |
| Y13 | B7D | WHAT - Work History Assistant Tool | 2022-06-15 | 15 |
| Y13 | B8D | Certified Earnings Records | 2022-06-15 | 3 |
| Y13 | B9D | Detailed Earnings Query | 2022-06-15 | 3 |
| Y13 | B10D | Summary Earnings Query | 2022-06-15 | 1 |
| Y13 | B11D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2022-06-15 | 2 |
| Y13 | B12D | Wage Information | 2022-08-22 | 6 |
| Y13 | B13D | 2021 W-2 and Earnings Summary | 2022-08-22 | 4 |

### Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|-----------|------|-------------|----------|--------|-------|-------|
| Y13 | B5E | Work History Report | | | to 2019-12-13 | 11 |
| Y13 | B6E | Disability Report - Field Office | | | to 2019-12-13 | 3 |
| Y13 | B7E | Disability Report - Adult | | | to 2019-12-13 | 7 |
| Y13 | B8E | Function Report - Adult | | | to 2020-01-13 | 10 |
| Y13 | B9E | Disability Report - Field Office | | | to 2021-05-05 | 2 |
| Y13 | B10E | Disability Report - Appeals | | | to 2021-05-05 | 7 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | B11E | Function Report - Adult | | to 2021-06-30 | 8 |
| Y13 | B12E | Work History Report | | to 2021-07-02 | 21 |
| Y13 | B13E | Disability Report - Field Office | | to 2021-09-08 | 2 |
| Y13 | B14E | Disability Report - Appeals | | to 2021-09-08 | 9 |
| Y13 | B15E | Exhibit List to Rep PH2E | | to 2022-01-14 | 11 |
| Y13 | B16E | Recent Medical Treatment | | to 2022-02-09 | 2 |
| Y13 | B17E | Medications | | to 2022-02-09 | 2 |
| Y13 | B1E | Work History Report | | to 2018-04-18 | 10 |
| Y13 | B2E | Disability Report - Field Office | | to 2018-04-18 | 3 |
| Y13 | B3E | Disability Report - Adult | | to 2018-04-18 | 9 |
| Y13 | B4E | Function Report - Adult | Redding, Derrick | to 2018-05-01 | 12 |
| Y13 | B18E | Exhibit List to Rep PH2E | | to 2022-04-01 | 11 |
| Y13 | B19E | Correspondence regarding efforts to obtain evidence | Kathleen Flynn | to 2022-06-08 | 2 |
| Y13 | B20E | Recent Medical Treatment | | to 2022-06-10 | 2 |
| Y13 | B21E | Medications | | to 2022-06-10 | 2 |
| Y13 | B22E | Correspondence regarding efforts to obtain evidence | Kathleen Flynn | to 2022-07-05 | 2 |
| Y13 | B23E | Resume of Vocational Expert | Deauna Froneberger | to 2022-07-06 | 5 |
| Y13 | B24E | Pharmacy Prescription History/Records | Enterpriserx Pharmacy System | 2017-02-07 to 2022-06-20 | 6 |
| Y13 | B25E | Pharmacy Prescription History/Records | Wal-Mart Pharmacy | 2016-02-19 to 2022-07-09 | 10 |

| Y13 | B26E | Representative Correspondence | | Kathleen Flynn | to 2022-08-02 | 1 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|-----------|-----|-------------|----------|--------|-------|-------|
| Y13 | B1F | Emergency Department Records | | Southern Regional Medical Center | 2012-02-21 to 2014-12-02 | 117 |
| Y13 | B2F | HIT MER | | Wellstar Health System | 2016-05-05 to 2017-09-22 | 19 |
| Y13 | B3F | Treating Source Statement | | Grady | to 2018-04-18 | 2 |
| Y13 | B4F | Consultative Examination Report | | Oluropo Alfred Ayeni Md | to 2018-08-08 | 13 |
| Y13 | B5F | Progress Notes | | Grady Hospital | 2017-06-12 to 2018-08-09 | 137 |
| Y13 | B6F | Hospital Records | | Grady Memorial Hospital | 2019-03-17 to 2019-03-20 | 49 |
| Y13 | B7F | Medical Source - No MER Available | | Georgia Regional Hospital | to 2019-12-31 | 6 |
| Y13 | B8F | Medical Source - No MER Available | | Peachford Behavioral Health System | to 2020-01-08 | 6 |
| Y13 | B9F | Emergency Department Records | | Southern Regional Medical Ctr | to 2020-02-20 | 54 |
| Y13 | B10F | Consultative Examination Report | | Oluropo A. Ayeni, Md | to 2020-03-26 | 8 |
| Y13 | B11F | Emergency Department Records | | Wellstar Atlanta Medical Center | 2018-08-19 to 2020-04-25 | 724 |
| Y13 | B12F | Consultative Examination Report | | Steven Snook PhD | to 2020-07-10 | 5 |
| Y13 | B13F | Emergency Department Records | | Wellstar Atlanta Medical Center | 2020-05-27 to 2020-07-15 | 19 |
| Y13 | B14F | Office Treatment Records | | Grady Memorial Hosptial | to 2020-08-05 | 7 |

| Y13 | B15F | Emergency Department Records | Wellstar Atlanta Medical Ctr | 2020-08-21 to 2020-08-21 | 9 |
| Y13 | B16F | Progress Notes | Grady Health Systems | 2018-08-09 to 2020-11-19 | 167 |
| Y13 | B17F | Emergency Department Records | Wellstar Atlanta Medical Ctr Sth | 2020-10-01 to 2020-12-07 | 67 |
| Y13 | B18F | Consultative Examination Report | Prime Healthcare Foundation Southern Regional- CE | to 2020-12-23 | 6 |
| Y13 | B19F | Emergency Department Records | Wellstar Atlanta Medical Ctr South Em | 2020-12-07 to 2021-02-05 | 135 |
| Y13 | B20F | HIT MER | Wellstar Atlanta Medical Center | 2017-06-26 to 2021-02-05 | 194 |
| Y13 | B21F | Progress Notes | Grady Hospital | 2020-10-21 to 2021-02-24 | 22 |
| Y13 | B22F | Medical Source - No MER Available | Wellstar Atlanta Medical Ctr | to 2021-03-26 | 1 |
| Y13 | B23F | Consultative Examination Report | Prime Healthcare Foundation Southern Regional- CE | to 2021-04-12 | 5 |
| Y13 | B24F | Progress Notes | Grady Memorial Hospital | 2017-06-12 to 2021-05-20 | 110 |
| Y13 | B25F | Medical Source - No MER Available | Grady Memorial Hospital | to 2021-05-21 | 1 |
| Y13 | B26F | Emergency Department Records | Wellstar Atlanta Medical Ctr | 2021-06-06 to 2021-08-14 | 36 |
| Y13 | B27F | Progress Notes | Grady Hospital | 2021-09-01 to 2021-09-02 | 26 |

| Y13 | B28F | Medical Source - No MER Available | Southern Regional Medical Ctr | to 2021-09-16 | 8 |
| Y13 | B29F | Progress Notes | Grady Hospital | 2021-09-09 to 2022-04-07 | 47 |
| Y13 | B30F | Medical Source - No MER Available | Wellstar Atlanta Medical Center | to 2022-04-08 | 4 |
| Y13 | B31F | Progress Notes | Southside Medical Center | 2012-04-19 to 2012-12-27 | 6 |
| Y13 | B32F | Emergency Department Records | Atlanta Medical Center | 2013-03-26 to 2017-09-22 | 291 |
| Y13 | B33F | Hospital Records | Grady Memorial Hospital | 2017-06-12 to 2018-05-10 | 64 |
| Y13 | B34F | Progress Notes | Grady Memorial Hospital | to 2018-08-09 | 4 |
| Y13 | B35F | Emergency Department Records | Atlanta Medical Center | 2018-08-19 to 2018-08-19 | 12 |
| Y13 | B36F | Emergency Department Records | Ws Atlanta Medical Center Hospital South | 2022-05-05 to 2022-05-05 | 18 |
| Y13 | B37F | Progress Notes | Grady Hospital | 2022-06-16 to 2022-06-23 | 10 |
| Y13 | B38F | Medications | Grady Hospital | 2018-04-13 to 2022-06-23 | 7 |
| Y13 | B39F | Treating Source Statement | Emily Smith, Md | to 2022-06-30 | 6 |