## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **PABLO N. DANIEL** and **CORDIS ONYECHI** | ) ) ) ) Civil Action ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) CASE NO.:_____ ) |
| **UR MENDOZA JADDOU,** Director of U.S. Citizenship and Immigration Services**, SHINEKA MILLER,** Director of Atlanta Field Office of U.S. Citizenship and Immigration Services, **NICHOLAS S. BARTELL**, Director of Montgomery Field Office of U.S. Citizenship and Immigration Services, | ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT

**To the Honorable Judges of this Court:**

COME NOW, Pablo N. Daniel and Cordis Onyechi, Plaintiffs in the above-styled and numbered cause, by and through the undersigned attorney of record, and hereby file their COMPLAINT for relief under the Administrative Procedure Act and for cause of action would show this Honorable Court the following:

1

1.   This is an action for declaratory and injunctive relief under the Administrative Procedure Act (APA) brought against the Defendants, to compel corrective action on a Petition for Alien Relative and Application for Adjustment of Status filed by Plaintiffs. The application and petition were filed with and remain within the jurisdiction of the Defendants, who have unlawfully denied the application to Plaintiff's detriment.

2.   As the Defendants have acted arbitrarily, capriciously and not in accordance with the law this action seeks an order from the Court setting aside the Defendants' unlawful decision and compelling the Defendants to perform a duty that the Defendants owe to the Plaintiffs; to wit:  to cause the Defendants to adjudicate the Petitioner for Alien Relative and the Application for Adjustment of Status according to the law and regulations by which they are bound. The claim for declaratory relief seeks a judicial declaration that the Defendants are required under law to complete the adjudication process for the Plaintiffs according to the law.

**PARTIES**

3.   Plaintiff, Cordis Onyechi, (hereinafter "Plaintiff Beneficiary") is a 52-year-old native of Nigeria (Alien Number: 214-898-772).  She filed an I-485 Application to Register Permanent Residence or Adjust Status (MSC2090086215) which was received by USCIS on October 10, 2019 (See I-485 Interview Notice,

**Exhibit 1**). Her application was based on an I-130 Petition for Alien Relative filed on her behalf by Plaintiff, Pablo N. Daniel, (hereinafter "Plaintiff Petitioner"), her U.S citizen husband.

4.  Plaintiff Petitioner is a 55-year-old citizen of the United States of America.  He filed an I-130 Petition for Alien Relative (MSC2090086216) on behalf of his wife, Plaintiff Beneficiary, which was received by USCIS on October 10, 2019. (See I-130 Receipt Notice, **Exhibit 2**).

5.  Defendant, Ur Mendoza Jaddou, is the Director of USCIS.  USCIS is the branch of the Department of Homeland Security that is charged with all adjudication duties pertaining to immigration applications. Defendant is the official of USCIS generally charged with administrative and supervisory authority over all operations of USCIS including the Atlanta Field Office. Defendant Jaddou is sued in her official capacity.

6.  Defendant Shineka Miller is the USCIS Atlanta Field Office Director. Defendant Miller is sued in her official capacity and is the official of USCIS generally charged with supervisory authority over all operations of USCIS within her District with certain specific exceptions not relevant here. 8 C.F.R. § 103.1(g)(2)(ii)(B) Specifically, Defendant is responsible for the adjudication of applications for adjustment of status filed pursuant to § 245 of the Immigration and Nationality Act (hereinafter, "INA"), codified at 8 U.S.C. §

1255, which covers most of Georgia, and part of Alabama. Defendant is also responsible for the adjudication of petitions for alien relative filed pursuant to 8 U.S.C. § 1151(a)(1). As will be shown, Defendant is the official with whom Plaintiffs' applications were properly filed, and who ultimately decided them.

## JURISDICTION

7. Jurisdiction, in this case, is proper under 28 U.S.C. §§1331 and 1361, 5 U.S.C. § 701 et seq.; and, 28 U.S.C. § 2201 et seq. Relief is requested according to said statutes.

## VENUE

8. Venue is proper in this court, pursuant to 28 U.S.C. § 1391(e), insofar as this is an action against officers and agencies of the United States in their official capacities brought in the District where Plaintiff resides, and no real property is involved in the action.

## EXHAUSTION OF REMEDIES

9. The Plaintiffs in the instant case have exhausted their administrative remedies. No other remedy was adequate in this case because the Defendants failed to properly adjudicate Plaintiffs' immediate relative petition and application for adjustment of status.  Immediate action, such as that offered by a mandamus action under the Administrative Procedure Act (hereinafter "APA"), is the only relief available.

# LEGAL BACKGROUND

## *Family Based Immigrant Petitions*

### *The Adjudication of Petitions for Alien Relative*

10.   When a Form I-130 is filed on behalf of the alien-spouse, USCIS conducts an investigation of every Form I-130 petition, in part to determine whether the marriage is valid. See 8 U.S.C. § 1154(a)-(b). If the USCIS determines that the marriage is not a sham and the alien-spouse is in fact a "spouse," then it shall approve the Form I-130 petition. See 8 U.S.C. § 1154(b). Approval of the Form I-130 petition allows the alien/immediate relative who is already lawfully in the United States under a temporary visa to apply for adjustment of status using a Form I-485. See 8 U.S.C. § 5 1255(a).

11.   The Service must first determine whether the marriage is valid under a state's law, then whether the marriage qualifies under the INA. *Miezgiel v. Holder*, 33 F.Supp.3d 184 (E.D.N.Y. 2014).

12.   To qualify under the INA, the question is whether the spouses intended to establish life together at the time of marriage. *Lutwak v. U.S.*, 344 U.S. 604 (1954); *Agyeman v. INS,* 296 F.3d 871, 883 (9th Cir. 2002); *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980); *Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983). This is a matter of subjective intent – objective facts and evidence serve only to indicate the state of mind at the time.

13. The conduct of the parties after marriage is relevant to their intent at the time of marriage. *Matter of Laureano,* 19 I&N Dec. 1, 3 (BIA 1983).

14. There is no requirement that the marriage be ideal, or conform to a particular societal expectation. See, e.g., *Matter of Peterson*, 12 I&N Dec. 663 (BIA 1968) (marriage of elderly couple as a caregiving arrangement with mutual friendship and intent to share their lives, though without consummation and sleeping in separate rooms, was a bona fide marital relationship).

15. Later separation or nonviability is not a bar to the approval of a marital visa. "The issue is not whether there is a presently subsisting or 'viable' marriage (assuming there is no legal separation or dissolution of the marriage), but rather whether the marriage was entered into for the primary purpose of circumventing the immigration laws." *Matter of Boromand,* 17 I&N Dec. 450, 453 (BIA 1980).

16. This determination is fact-based and nondiscretionary. See INA §§ 203(a) and 204(a)(1)(A)-(D), 8 C.F.R. § 204.

### *The Legal Framework of Adjustment of Status*

17. Ultimately, the Form I-485 Application for Adjustment of Status is a request to become a lawful permanent resident. See *Freeman v. Gonzales*, 444 F.3d at 1033. An immigrant visa must be immediately available to an alien in order to qualify for adjustment of status. Id. Without an approved Form I-130 petition,

an immigrant visa is not immediately available and the USCIS cannot adjudicate the Form I-485 application. If the Form I-130 petition is approved and the Form I-485 Application for Adjustment of Status is granted, then the alien is afforded permanent residence status.

18. Adjustment of Status is the mechanism by which an eligible alien who is present in the United States applies for lawful permanent resident status based on a relationship to a U.S. citizen family member.

19. Adjustment of Status allows applicants to apply to obtain lawful status while remaining in the United States, instead of requiring them to first return to their home countries and apply for immigrant visas from a U.S. embassy or consulate abroad, which is often a lengthy application process.

20. In general, to apply for Adjustment of Status, an individual must demonstrate that he or she has been "inspected and admitted or paroled into the United States." See 8 U.S.C. § 1255(a).

21. Additionally, an adjustment applicant must demonstrate that he or she is eligible to receive an immigrant visa (based on the qualifying relationship) and has an immigrant visa immediately available at the time the individual files an adjustment application. 8 U.S.C. § 1255(a).

22. The Immigration and Nationality Act (hereinafter "INA") regulates the number of immigrant visas that can be issued in a given year. Section 1151(a) generally

establishes quotas for the number of immigrants that may be issued a visa from each foreign country in a given year. See 8 U.S.C. § 1151(a).

23. Sub-section (b), however, describes categories of aliens who are not subject to the numerical limitations in § 1151(a). See 8 U.S.C. § 1151(b).

24. Sub-section (b) was enacted as part of the Immigration Reform Act of 1965 and is intended to ensure that relatives of U.S. citizens and legal aliens are allowed to enter and remain in the United States. Sub-section (b) therefore defines several categories of aliens, including "immediate relatives," who are not subject to the numerical limitations in the INA. See 8 U.S.C. § 1151(b)(2)(A)(i). In pertinent part, 8 U.S.C. § 1151(b)(2)(A)(1) provides:

> (2)(A)(i) Immediate relatives.--For purposes of this subsection, the term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries. . . .

25. Under the first sentence of § 1151(b)(2)(A)(1), an alien is an "immediate relative" if he/she is the spouse of a U.S. citizen. After the couple marries, the citizen-spouse may file an alien relative visa petition with the USCIS. See 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R §§ 204.1(a)(1) and 204.2(a).

26. Finally, the applicant must demonstrate admissibility to the United States; i.e., that he or she either is not subject to an enumerated ground of inadmissibility set forth in 8 U.S.C. § 1182 or qualifies for a waiver of any such ground. Id. With exceptions, an otherwise eligible individual is barred from adjusting if, *inter alia*, he or she has worked in the United States without authorization, is in unlawful immigration status on the date of filing an adjustment application or has failed to maintain continuously a lawful status since entry into the United States. 8 U.S.C. § 1255(c)(2).

27. Certain individuals are not subject to the § 1255(c)(2) bar to adjustment, including: (a) "immediate relatives," defined as the children and spouses of U.S. citizens and the parents of U.S. citizens provided the citizen son or daughter is at least 21 years old, [*See* 8 U.S.C. § 1151(b)(2)(A)(i)]; and (b) employment-based visa beneficiaries who: (i) are present in the United States pursuant to a lawful admission on the date of filing the adjustment application; and (ii) after such lawful admission, have not, for an aggregate period of more than 180 days, failed to maintain continuous lawful status, engaged in unauthorized employment, or otherwise violated the terms of admission.

### *Administrative Procedure Act*

28. The APA, 5 U.S.C. §701 *et seq.* at § 704 states that acts by government agencies that are, "final agency action for which there is no other adequate remedy in a

court are subject to judicial review."  There is no other adequate remedy in this situation because the Defendants have acted contrary to the law and regulations and wrongfully denied the Plaintiffs Hatchet's I-485 application, and no deportation proceedings have been initiated in which a decision may be reopened or challenged.  There not being no other adequate remedy in this situation, the only option for Plaintiff is this instant action in this court.

29.  Moreover, 5 U.S.C. § 706 states:

The reviewing court shall—

**(1)** compel agency action unlawfully withheld or unreasonably delayed; and

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—

**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**(B)** contrary to constitutional right, power, privilege, or immunity;

**(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

**(D)** without observance of procedure required by law;

**(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

**(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

30.  In this case, this Court has jurisdiction to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Thus, this Court has jurisdiction to compel agency action unlawfully withheld or unreasonably delayed because Defendants have failed to properly adjudicate Plaintiffs' Form I-130, Petition for Alien Relative.

31.  Accordingly, Plaintiff has been forced to pursue the instant action.

**CAUSE OF ACTION**

***Factual background***

32.  Plaintiff Pablo Niguel Daniel, a United States citizen, married Plaintiff Cordis Ngozi Onyechi on August 25, 2017.

33.  Plaintiff Petitioner filed a Petition for Alien Relative (Form I-130) on Plaintiff Beneficiary's behalf, which was received by USCIS Atlanta on October 10, 2019. (See I-130 Decision Notice, **Exhibit 2**).

34.  Plaintiff Beneficiary and Plaintiff Petitioner were interviewed at USCIS Montgomery (which is a typical practice when the USCIS Atlanta Field Office has low interview availability) regarding their applications on April 9, 2020. (See I-485 Interview Notice, **Exhibit 1**).

35.  Defendants held an additional interview on July 18, 2022 at the Atlanta Field Office. During this interview, the Plaintiffs were separated and interviewed individually. (See Notice of Intent to Deny, **Exhibit 3**). During Plaintiff

Petitioner's interview, he testified that he had been living in a mental health treatment center, also describing it as a transition house and a program to help with independent living. Id.

36.    On August 4, 2022, the Service issued a Notice of Intent to Deny (NOID) the Petition and Application, stating that the Plaintiffs' alleged "discrepancies, evidentiary shortcomings, and inconsistencies in . . . testimon[y]" were such that the Plaintiffs had not demonstrated, by a preponderance of the evidence, that they were in a bona fide marriage. Id.

37.    The NOID found fault with *each* document submitted at both interviews on the question of the bona fides of the marriage. Id.

38.    The NOID also listed four pages of alleged inconsistencies in testimony between the Plaintiffs, the bulk of which reflected a consistent narrative through-line. Id.

39.    On November 4, 2022, the Plaintiffs responded to the NOID with additional documentation and argument.  The Response addressed each of the alleged inconsistencies or failures of the documentary evidence. (See Response to Notice of Intent to Deny, **Exhibit 4**).

40.    The Response also highlighted and pointed out the Petitioner's diagnosis of schizoaffective bipolar disorder and included additional documentation explaining the symptoms of the disorder, including disorganized thinking and

speech. It also included letters from Middle Flint Behavioral Health Care, one generally explaining Plaintiff Petitioner's disabilities, including limitations in communication, focus, concentration, memory, and cognitive functioning; and the other addressed to the Social Security Administration, reflecting Plaintiff Petitioner's ongoing treatment in an independent housing program. (<u>See</u> Diagnostic Statement, **Exhibit 5**)

41.  The Response noted that these cognitive limitations significantly affect Plaintiff Petitioner's ability to accurately recall events, and account for the testimonial inconsistencies observed. (<u>See</u> Response to Notice of Intent to Deny, **Exhibit 4**).

42.  The Response added twenty-three additional exhibits, consisting of over 250 pages of utility bills, bank account statements, lease agreements, tax returns, personal statements, e-mails, letters, and the like, as additional evidence of the bona fides of the relationship.

43.  On November 30, 2022, the Service Denied the Petition. The Denial abandoned any objections regarding inconsistent testimony given during the interviews and general allegations of failure to cohabitate. The Denial did, however, leverage prior testimony of Plaintiff Petitioner where available to cast doubt upon documentary evidence presented. (<u>See</u> I-130 Decision Notice, **Exhibit 6**).

44. The Denial focused almost entirely on the commingling of marital assets, stating, in summary, that the majority of bills were in Plaintiff Beneficiary's name, and the majority of transactions in the joint accounts were conducted by Plaintiff Beneficiary. (See I-130 Decision Notice, **Exhibit 6**).

45. As the Petition had been denied, the Application was denied in turn. (See I-485 Decision Notice, **Exhibit 7**)

## COUNT 1

*Defendants violated the Administrative Procedure Act 5 U.S.C. § 701, et seq. and Plaintiff is entitled to review by this Court pursuant to U.S.C. §§ 701-706*

46. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-45 above.

47. Plaintiff is entitled to review by this Court pursuant to 5 U.S.C. §§ 701-706. A reviewing court shall "hold unlawful and set aside agency action … found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A).

48. The Present Court has jurisdiction under the APA to review certain agency determinations outlined in 8 U.S.C. § 1252. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." See 5 U.S.C. § 702.

49. Under the APA, the Court has jurisdiction to review an agency decision if the agency action is final, the action adversely affects the party seeking review, and the agency's decision is non-discretionary. <u>See</u> 5 U.S.C. §§ 702, 704 ("Agency action made reviewable by statute and final agency action for which there is not other adequate remedy in a court are subject to judicial review."). The Court "shall decide all relevant questions of law," and "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." <u>See</u> 5 U.S.C. § 706 (2)(A).

50. "To determine whether an agency decision [is] arbitrary or capricious, the reviewing court must consider whether the decision [is] based on a consideration of the relevant factors and whether there ha[s] been a clear error of judgment." <u>See</u> *N. Buckhead Civic Ass'n v. Skinner,* 903 F.2d 1533, 1538 (11th Cir. 1990).

51. Examples of arbitrary or capricious agency decisions include those where an agency considers material "Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product

of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

52. Here, there is no doubt that the Defendants not only failed to consider evidence in the record and ignored the plethora of evidence submitted, attesting to the bona fide nature of the Plaintiffs' marriage, but did so to the point of using impermissible bias as the basis of a factual decision, which is clearly an abuse of discretion and error of judgment.

## COUNT 2

*The Defendants, in Violation of the APA, failed to properly consider all evidence in the record and follow the law and established principles in arriving at their determination.*

53. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-52 above.

54. Defendants failed to properly consider all evidence in the record; misapplied and misconstrued the governing statute and regulations; and erroneously denied the Petition and Application based almost entirely on misread bank statements and utility account labels. Its text suggests a result-oriented process in which the Service chose to find fault with certain evidence in the record and ignored favorable evidence in the record to substantiate a pre-determined outcome.

55. Read as a whole, the evidentiary record establishes a bona fide marital relationship, established in spite of significant difficulties associated with Plaintiff Petitioner's condition, which the Service has improperly leveraged to deny the petition and application.

56. The NOID initially presented several pages of testimony, alleging them to be inconsistent. (See Notice of Intent to Deny, **Exhibit 3**). However, nothing in the testimony is alleged to be a misrepresentation or an effort at obfuscation. Plaintiff Petitioner, for instance, gave two different addresses for his current residence, and two different answers regarding who he lived with, which is presented as a significant testimonial inconsistency. Id. The record at large, however, reflects consistently that he was living in a treatment center in Warner Robbins, Georgia with a roommate, and when not in treatment, with Plaintiff Beneficiary in Grayson, Georgia. Id.

57. This tendency toward mis-statement and faulty memory, which nonetheless points toward otherwise verifiable truths, is a consistent element of Plaintiff Petitioner's testimony.

58. After noting various alleged inconsistencies of the Plaintiff Petitioner's testimony, the Decision notice, then states that due to his cognitive limitations, the Service chose to read his testimony as broadly lacking credibility, and

therefore was not considered meaningfully in rendering the decision. (See I-130 Decision Notice, **Exhibit 6**).

59. The Service generally holds Plaintiff Petitioner to two different standards: it almost completely discounts his testimony, consistent or no, due to his cognitive limitations, but finds significant his lack of engagement in the family finances due to these same limitations. This appears to be the primary driver of the denial.

60. The Record reflects a statement from a medical practitioner to the Social Security Administration that Plaintiff Petitioner is categorized as a "most significant disability priority," and that his "deficits would make it difficult to hold competitive employment over an extended period." (See Diagnostic Statement, **Exhibit 5**). The letters also reflect that he was in continued attendance in an independent housing program receiving support services five days a week. Id.

61. The Service takes issue with Plaintiff Petitioner's limited financial engagement on the couple's joint bank accounts, without considering a disability that prevents him from consistent work and his relatively restrictive living conditions during his treatment. (See I-130 Decision Notice, **Exhibit 6**).

62. The demonstration of commingling of assets is predicated upon the ability of all parties to secure assets. Where one party has a well-documented inability to

secure assets in a consistent and easily-documented fashion, a failure to comingle assets is of limited probative value.

63. Even so, the Decision Notice is internally inconsistent regarding the use of the joint bank accounts. It states that Plaintiff Petitioner "failed to submit evidence that [he had] used the . . . Truist account." In the immediately following bullet point, it notes "two transactions in [his] name" on said account. Id.

64. The Decision states that, though the couple had submitted copies of their debit cards, it was unable to determine which card belonged to which individual. Id. Plaintiffs here note that the original submission displays the cardholders' respective names on the front surface. (See Prior Evidentiary Submission, **Exhibit 8**).

65. The Plaintiffs have submitted joint leases, life insurance policies, joint AARP membership cards, joint bank accounts open and used for over three years, several years of joint tax returns, evidence of shared residence between two homes over the course of the application process, life insurance reflecting Plaintiff Beneficiary giving all funds to Plaintiff Petitioner, etc. all reflecting shared residence and responsibilities.

66. Defendants' Decision lists no evidence tending to demonstrate the bona fides of the relationship whatsoever. The Decision omits, for instance, the length of the marriage, the continued submission of substantial evidence throughout the

application process, the couples' appearance at two interviews, the broad consistency of their testimony, or any other factor which might tend to demonstrate a marital relationship. The sole mention of any evidence tending to prove a bona fide marital relationship is a note in the Notice of Intent to Deny stating that the couple knew each other's birth dates, the date and location of the marriage, and their current address and the date that they had moved there. (See Notice of Intent to Deny, **Exhibit 3**).

67. Therefore, the Defendants clearly failed to properly consider all evidence in the record and their errors were arbitrary, capricious and in violation of the law, as they did not take into consideration the evidence in the record, which clearly contradicted their own observations, and ultimately their factual determinations. Decisions on I-130 Petitions for Alien Relative are, by law, fact-based and nondiscretionary. See INA §§ 203(a) and 204(a)(1)(A)-(D), 8 C.F.R. § 204. The Decision does not reflect a full accounting of the evidence presented, nor a process endeavoring to make an even-handed factual finding.

## COUNT 3

*The Defendants clearly and unequivocally misapplied the law by applying an elevated standard.*

68. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-67 above.

69. Defendants misapplied the law and the facts in determining that Plaintiff had failed to meet the preponderance of the evidence standard for demonstrating a bona fide marriage.

70. *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010) states that the standard of proof in administrative immigration proceedings is "preponderance of the evidence," as clarified by the regulations. In an application for a spousal visa, filings are not required to demonstrate eligibility beyond a reasonable doubt. USCIS is required to consider and give due weight to all facts, evidence and testimony on record. See *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972). "[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of§ 706." *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

71. USCIS cannot "unilaterally impose novel substantive or evidentiary requirements beyond those set forth [by law]." See *Riffin v. Surface Transp. Bd.*, 592 F.3d 195, 195 (D.C. Cir. 2010) ("The APA requires the agency to articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' . . .[The agency] must state its reasons for doing so and conduct an appropriate analysis.") The Board of Immigration Appeals ("BIA") explained that "preponderance of the evidence" is the "rock bottom [of] the fact-finding level of civil litigation," a

lower standard than "clear, convincing and unequivocal." Matter of E-M-, 20 I. & N. Dec. 77, 79, fn.1 (BIA 1989). Only a very low standard of proof is required to be established.

72. The Supreme Court has stated that if the Petitioner submits relevant, probative, and credible evidence that shows the claim is "more likely than not" true, the Applicant or Petitioner has satisfied the standard of proof. See *U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987).

73. The specific question in I-130 petitions filed on the basis of marriage is whether the parties entered into a bona fide marriage with the intent of joining together as spouses, rather than for the primary purpose of obtaining immigration benefits.

74. The record of testimony reflects a broadly consistent narrative of the courtship, relationship, and living arrangements. Inconsistencies in the testimony are reflective of failures of memory or expression consistent with Plaintiff Petitioner's schizoaffective bipolar disorder.

75. The couple have pursued the present Application and Petition for three-and-a-half years, having been married for over five years.

76. The Decision notice makes no mention of any positive showing by the couple, nor does it identify an iota of evidence suggesting that the marriage is in any

way a sham. There is no clear indication of any weighing of probative evidence against whatever doubts the Service may have.

77. The Decision notice does not indicate a consideration of the evidence presented according to the "preponderance of the evidence" standard. Particularly taking into account Plaintiff Petitioner's condition, it is little more than a recitation of various failings of the couple as bookkeepers.

78. The Defendants clearly and unequivocally misinterpreted and/or misapplied the law when they denied Applicant's I-130 Petition based on a failure to meet a preponderance of the evidence standard regarding the bona fides of the marital relationship.

79. Defendants' decision reflects the application of an elevated and novel standard of proof to the Plaintiffs' application and petition for adjustment of status, which is clearly and unequivocally an abuse of discretion.

## PRAYER FOR RELIEF

WHEREFORE, in view of the arguments and authority noted herein, Plaintiff respectfully prays that the Defendants be cited to appear herein and that, upon due consideration, the Court shall:

(a) Assume jurisdiction in this case;

(b) Find that Defendants are in violation of the Administrative Procedure Act as they acted arbitrarily and capriciously and thus, failed to follow the law and perform their duties as mandated by statute and regulation;

(c) Find that Defendants' decision is unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court;

(d) Declare that the Defendants' denials of Plaintiffs' I-485 Application for Adjustment of Status and I-130 Petition for Alien Relative are unlawful, and order the Defendants to reopen, adjudicate, and approve the application on the merits according to the law;

(e) Award Plaintiffs' reasonable attorney's fees and costs under the Equal Access to Justice Act; and,

(f) Grant such other relief at law and in equity as justice may require.

Respectfully submitted,

This 31st day of May, 2023,

**THE FOGLE LAW FIRM, LLC**

/S/H. Glenn Fogle, Jr.
by: H. Glenn Fogle, Jr.
Georgia Bar No. 266963
Attorney for the Plaintiff

55 Allen Plaza, Suite 830
55 Ivan Allen Jr. Boulevard
Atlanta, Ga 30308
Tel.: (404) 522-1852
Fax.: (470) 592-6989
Email: glenn@foglelaw.com