# EXHIBIT C

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
MIAMI, FLORIDA



In the Matters of:

      D   G   , et al.

      V   , et al.

      L   , et al.

      E

      G

In removal proceedings

File Nos.:   A     019 /   /

A     /

A     /

A

A

## INTERLOCUTORY DECISION OF THE IMMIGRATION JUDGE

The Court has before it several cases involving aliens who the Department of Homeland Security ("Department") detained at the Southwest border and ultimately released into the interior of the United States. The paperwork documenting their release frequently says that they were released on a bond pursuant to INA § 236(a), consistent with the previously-binding decision of the Board of Immigration Appeals ("Board") in *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005). But after their release, we learned from the Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), and the Attorney General in *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), two important points. The first is that these aliens, as inadmissible applicants for admission, were detained under INA § 235(b). The second is that the exclusive legal means for the release of inadmissible applicants for admission is the parole authority under INA § 212(d)(5)(A).

Thus the question: have these aliens been paroled? Or stated another way: does the paperwork control, meaning they were released on a bond under INA § 236(a), or does our new understanding of the law control, such that they were paroled under INA § 212(d)(5)(A)? The answer is significant because if paroled, some of the aliens could seek to adjust their status under the Cuban Adjustment Act or INA § 245(a).

On November 4, 2020, the Court heard oral argument on this recurring issue in six unrelated cases. As a matter of administrative efficiency, the Court issues this order as to the remaining five cases.[1] The Court expresses its gratitude to the attorneys for their work, and appreciates their advocacy at oral argument.

## I.

The Court will not belabor the parties with an extensive recitation of the law from *Matter of X-K-* to *Jennings* to *Matter of M-S-*, and assumes they are now more than familiar with the issues presented. Ultimately, the Court concludes that it is the law, not the paperwork or anything else, that controls. Aliens like these respondents have been paroled into the United States. Their release by the Department cannot qualify as a bond under INA § 236(a), and can only be classified as a release on parole under INA § 212(d)(5)(A). The Court comes to this conclusion based on: (1) a simple application of *Jennings* to the undisputed facts in these cases; (2) the binding decision of the Board of Immigration Appeals ("Board") in a similar dispute on the issue of parole in *Matter of O-*, 16 I&N Dec. 344 (BIA 1977); and (3) the clear rule that judicial decisions like *Jennings* are presumptively retroactive.

## II.

The most persuasive reason to find that these respondents have been paroled is the simple, direct message sent by the Supreme Court in *Jennings*: parole under INA § 212(d)(5)(A) is the *exclusive* legal means for the release of inadmissible applicants for admission who are detained by the Department under INA § 235(b).

---

[1] One of the six cases, ▮▮▮▮▮ J▮▮▮▮ L▮▮▮▮, A▮▮▮▮▮▮, was terminated with prejudice on November 4, 2020, after the oral argument. Consistent with *Matter of Taerghodsi*, 16 I&N Dec. 260 (BIA 1977), the remaining five cases will no longer be consolidated on the Court's docket.

*See* 138 S. Ct. at 844. Applying this basic principle to the undisputed facts of these cases yields the following syllogism:

1. Inadmissible applicants for admission[2] "shall" be detained under INA § 235(b). *See* INA § 235(b)(1)(B)(ii), (iii)(IV), (2)(A).

2. Other than a parole under INA § 212(d)(5)(A), "there are no *other* circumstances under which aliens detained under § 1225(b) [INA § 235(b)] may be released." *Jennings*, 138 S. Ct. at 844 (emphasis in original).

3. The respondents were inadmissible applicants for admission who the Department detained and later released.

4. *Therefore*, the respondents were detained under INA § 235(b), and their release qualifies as a parole under INA § 212(d)(5)(A).

While the most straightforward view of the law is not always correct, here the Court is persuaded that the conclusion above is the right one.

## III.

Putting aside the appeal of a simple extrapolation from *Jennings*, the Court is not considering the issue on a blank slate. The Board has already considered a case where certain aliens argued they *were* paroled, and the Department argued they *were not* paroled. And in that binding decision, the Board stressed that the correct characterization of the release of those aliens was *controlled by the law*. The Board therefore rejected the contrary view that an alien can be paroled only if the

---

[2] Applicants for admission subject to mandatory detention include arriving aliens, "EWIs" subject to expedited removal, and "other aliens" who cannot show their admissibility by clear and convincing evidence. *See* INA § 235(a)(1), (b)(1)(B)(iii)(IV), (b)(2)(A).

Department clearly intended to grant parole, or issued the appropriate parole paperwork.

The case is *Matter of O-*, 16 I&N Dec. 344 (BIA 1977), which arose at the end of the Vietnam War. Approximately 130,000 aliens from Vietnam, mostly Vietnamese, were evacuated to the United States in April and May of 1975. *Id.* at 348. The Vietnamese aliens in this large group were considered to have been paroled by the government. *Id.* at 351. However, a small group of 126 non-Vietnamese aliens who were evacuated on American military aircraft were placed in exclusion proceedings. *Id.* at 345. The issue before the Board in the consolidated appeals of the 126 aliens was whether or not they had been paroled, with the aliens arguing they had been paroled, and the government arguing the opposite. *Id.*

Upon review, the Board recognized that none of the 126 non-Vietnamese aliens (or *any* of the 130,000 evacuees) was issued *paperwork* to memorialize that they were paroled (Form I-512). *Id.* at 348. The Board further recognized that evidence of *the intent of the government* to exercise its parole authority for the 126 non-Vietnamese aliens was "inconclusive." *Id.* at 349. Nevertheless, the Board held that all of these aliens were paroled under INA § 212(d)(5). *Id.* at 348, 351. The Board reasoned:

> We are unaware of, and the Service had not provided us any authority making it *lawful* for the Government to bring these aliens to the United States *other than the parole authority* granted the Attorney General under section 212(d)(5) of the Act.

*Id.* at 348 (emphasis added). The Board found that the aliens were paroled for several other reasons, including that: (1) the procedure used to bring them to the United States was no different than the procedure used to bring aliens to the United States who concededly were paroled, (2) Congress contemplated that non-Vietnamese evacuees would be treated similarly to Vietnamese evacuees, and (3) the aliens were removed from Vietnam with the express consent of the United States government. *Id.* at 351.

Just as in *Matter of O-*, here the Department cannot provide the Court any *lawful* authority justifying the release of these respondents "other than the parole authority granted the Attorney General under section 212(d)(5) of the Act." *Id.* at 348. The respondents were inadmissible applicants for admission, and the Supreme Court has made it clear that apart from a parole under INA § 212(d)(5)(A), "there are no *other* circumstances" justifying release. *Jennings*, 138 S. Ct. at 844 (emphasis in original). While the paperwork might have been issued under a mistaken view of the law, the only *lawful* authority for release was a parole.

IV.

Another way to look at the issue is to consider the case law on retroactivity. *Jennings* announced clear rules of law on detention and release. But the Department released some of these respondents *before* the Supreme Court decided *Jennings*. So when the Court decides if *all* of the respondents have been paroled, it is really determining if the legal principles in *Jennings* reach backwards in time.

The general rule on retroactivity is that legislation operates prospectively and only rarely retroactively, while judicial decisions are presumptively retroactive. *See De Niz Robles v. Lynch*, 803 F.3d 1165, 1169-71 (10th Cir. 2015); *Glazner v. Glazner*, 347 F.3d 1212, 1216 (11th Cir. 2003). Applying the general rule, the Court is confronted here not with legislation, but the binding decision of the Supreme Court in *Jennings*. The presumption is that this judicial decision—which simply explains what the law has always been—is retroactive. And the Court finds no reason to depart from the presumption here. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.") (citation omitted).[3]

---

[3] Because *Jennings* applied the rules of law it announced to the parties before it, the retroactivity inquiry is at an end for this Court and all other inferior courts. In assessing the retroactivity of a judicial (not administrative) decision in a civil case where the higher Federal Court *did not* apply the rule of law announced to the parties before it, the Eleventh Circuit applies the three-factor test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). *See Sussman v. Hampton*, 703 F. App'x 761, 764 (11th Cir. 2017). The factors to be considered include: (1) whether a new principle of law is established, (2) the purpose of the rule in question and whether retroactive operation would further

5

In finding *Jennings* retroactive as to the correct classification of the respondents' release, the Court recognizes it may feel unsettling to some in the Department. The Court is absolutely attaching "new legal consequences" to events completed before *Matter of M-S-* was announced (and even before *Jennings* in the cases of ████ E████ , A ████████ , and ██ G████ , A███████████ ). *See De Niz Robles v. Lynch*, 803 F.3d 1165, 1168 (10th Cir. 2015) (citing *INS v. St. Cyr*, 533 U.S. 289, 321 (2001) (holding that a statute or judicial order operates retroactively when it seeks to impose "new legal consequences to events completed before its announcement.") (internal quotation marks omitted). But that is inherent in retroactivity, and the Department can complain no more effectively than aliens who must also answer to the clear command of the law in similar contexts.

For example, consider the case of *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307 (11th Cir. 2006). There an alien applied for adjustment of status and fully disclosed to the Department that he had a cocaine conviction, yet the Department granted him adjustment of status anyways. *Id.* at 1310. When later placed in removal proceedings after a trip abroad, the alien sought relief from removal available to aliens "lawfully admitted for permanent residence": a waiver under former INA § 212(c). *Id.* at 1312. The Eleventh Circuit Court of Appeals recognized that the alien had done nothing wrong, and that the Department was at fault for mistakenly granting residency in the first place. *Id.* at 1314. Nevertheless, it agreed with the Board's conclusion that the alien was not eligible for the waiver because he was never "lawfully" admitted. *Id.* at 1313. The Eleventh Circuit reasoned that to be "lawfully" admitted requires more than the absence of fraud—it requires consistency with all applicable law. *Id.*

---

or hinder its operation, and (3) whether retroactive application of the rule would be inequitable. *Id.* Assuming the *Chevron Oil* test was applicable here, the Court would still conclude that *Jennings* was retroactive. While *Jennings* announced new principles of law with respect to detention and release, retroactivity would further (and certainly not hinder) operation of these rules by promoting uniformity in the treatment of applicants for admission in the field of immigration law. And for the reasons cited below in Section V.C. of this decision, it would not be inequitable for the rules to apply retroactively.

The takeaway from *Savoury* is that the alien could not hold up his permanent resident card as proof that he was "lawfully" admitted. The permanent resident card (the paperwork) did not control. Nor did the Department's past intent in granting his application for adjustment of status. What controlled was the law. It certainly must have felt unfair for the alien in *Savoury* to have held residency for a decade before the Department sought to take it away, but that was what the law required. And in the same vein, the Department cannot hold up its paperwork here indicating that the respondents were released on a bond under INA § 236(a), or successfully argue that its intent to grant a bond is what controls. Again, what matters is the law.

V.

The Court will now address the arguments of the Department. The Court notes that it encouraged the Department to reduce its position to writing in each of the five cases before it. While the Department submitted a brief addressing the parole issue in three of the five cases, it has not accepted the Court's invitation to file a brief on the parole issue in the other two cases.[4] The Department did, however, carefully prepare and deliver an "opening statement" at the oral argument of November 4, 2020. Because those remarks are much more detailed as to the

---

[4] The Department submitted briefs addressing the parole issue in the three cases where the respondents entered the United States without inspection and admission or parole. *See* Department of Homeland Security Memorandum of Law in Support of the Position that the Respondent Was Not Paroled into the United States (Sept. 18, 2020) (filed in the cases of ███████ L███ et al., A███ ████████ / ███; ███ E███ A███████████ and ████ G████ A████████). In the two cases where the respondents were classified as arriving aliens—where the regulations specify that USCIS would have jurisdiction over any request for adjustment of status—the Department argued that whether the respondents have been paroled was moot, not justiciable, and "bears no import to aspects of the case that the Court has jurisdiction to adjudicate." *See* Department of Homeland Security Memorandum of Law Supporting the Immigration Judge's Lack of Jurisdiction to Adjudicated Whether the Respondent was Paroled into the United States (Sept. 18, 2020) (filed in the cases of ████ D███ G████ et al., A███████ / ███ / ███; and ████████ V████████ et al., A ████████ / ███). It was only *in the middle of oral argument* when the Court was finally able to learn that the Department would be taking the position that the respondents in the latter two cases were not paroled. *See* Digital Audio Recording at 38:55, 48:53 (Nov. 4, 2020).

Department's view of the law *in general terms* than its written briefing, the Court has reproduced its "opening statement," and a few other exchanges, at Appendix A.[5]

The Department argues that: (A) the quotation from *Jennings* relied on by the Court is dicta and incorrect as a matter of law, (B) the detention of inadmissible applicants for admission is discretionary, (C) *Matter of M-S-* is not retroactive, (D) *Matter of M-S-* is distinguishable, and (E) Immigration Judges have no authority to grant parole *nunc pro tunc*. As explained below, the Department's arguments are unpersuasive.

A.

The linchpin of the Court's ruling today is the holding of the Supreme Court in *Jennings* that other than a release on parole under INA § 212(d)(5)(A), "there are no *other* circumstances under which aliens detained under § 1225(b) [INA § 235(b)] may be released." *Jennings*, 138 S. Ct. at 844 (emphasis in original). The Department claimed during oral argument that these words of the Supreme Court were "of no moment" and "dicta." *See* Digital Audio Recording at 1:04:35 (Nov. 4, 2020). When pressed if the Supreme Court's conclusion was legally correct, dicta or not, the Court was surprised by the Department's answer: "No, your Honor, it's not a correct statement of the law at all. It ignores *E-R-M-*, it ignores *M-S-*, and it completely takes *Jennings* out of context." *Id.* at 1:09:11.

This case therefore calls for the Court to choose between the Supreme Court of the United States, or instead the Department, as to a disputed conclusion of law. Unsurprisingly, the Court chooses the former. The Court will not be faulting the Supreme Court for "ignoring" *Matter of E-R-M- & L-R-M-* or any other case, and finds the reasoning of the Supreme Court, even if dicta, highly persuasive and correct. *See generally Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (recognizing that Supreme Court dicta is not something to be lightly cast aside: "there is dicta, and then there is Supreme Court dicta.").

---

[5] The Court is providing all of the parties with a copy of the Digital Audio Recording of the oral argument of November 4, 2020, concurrently with the issuance of this decision.

Furthermore, the Court is not taking the words of the Supreme Court "out of context." The Supreme Court's statement came during review of a broad ruling of the Ninth Circuit Court of Appeals requiring periodic bond hearings in a class action lawsuit. *See Jennings*, 138 S. Ct. at 838. The certified class included certain aliens detained longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, and was ultimately divided into three broad subclasses: those detained under INA § 235(b), INA § 236(a), and INA § 236(c). *Id.* at 839. In that context, the Supreme Court held that periodic bond hearings were not required for any of the three subclasses. *Id.* at 842. And in that context, the Supreme Court explained that *the reason* bond hearings were not required *was because parole, not bond, is the exclusive legal means to release an alien detained under INA § 235(b). See id.* at 844. The Supreme Court's conclusion is not dicta – it is the express reasoning invoked in *Jennings* to overrule the contrary conclusion of the Ninth Circuit Court of Appeals that periodic bond hearings were required. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 67 (1996) (the holding of a case includes the result of the case and "those portions of the opinion necessary to that result.").

And while the Department now says it disagrees with the straightforward conclusion of the Supreme Court in *Jennings*, it appears it has taken that position for these cases only. As a represented party, the Department has repeatedly argued before the Federal Courts, without qualification, that parole is the sole legal means to release aliens detained under INA § 235(b). In fact, the Department has even *cited to the exact language* from *Jennings* it now says is "not a correct statement of the law at all."[6] To put it mildly, the Department's shifting positions are problematic.

## B.

Having attacked the reasoning of the Supreme Court, the Department does provide its own theory of detention and release at the U.S. border. Relying heavily on *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520 (BIA 2011), the Department argues

---

[6] A few of the Department's public statements on this issue are collected at Appendix B.

that the detention of inadmissible applicants for admission is not mandatory, but discretionary. If the Department chooses as a matter of discretion to process an alien for expedited removal, the alien is apparently detained under INA § 235(b) and can be released only on a parole. If the Department instead chooses to afford an alien full removal proceedings (as it chose for the respondents here), the alien is apparently detained under INA § 236(a) and can be released only on a bond. Therefore, "[t]he section elected by the Department, either 235 expedited removal or 240 full removal proceedings, *determines* the legal authority to utilize to detain and to release." *See* Digital Audio Recording at 1:04:03 (Nov. 4, 2020) (emphasis added).[7]

The Court's response is twofold. *First*, the Department's theory is contradicted by a full reading of all of the provisions of INA § 235. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (holding that a statute should be construed to give effect to all of its provisions). INA § 235(b)(2) requires, with certain exceptions inapplicable here, that inadmissible applicants for admission "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A). This mandatory detention provision is separate and apart from the expedited removal provisions at INA § 235(b)(1), *explicitly refers to full removal proceedings under INA § 240*, and nevertheless mandates detention. And if the text of the statute were somehow unclear, the Supreme Court has explained that INA § 235(b)(2)(A) "serves as a catchall provision that applies to *all* applicants for admission not covered by § 1225(b)(1) [INA § 235(b)(1)] (with specific exceptions not relevant here)." *Jennings*, 138 S. Ct. at 837 (emphasis added). Therefore, the Department's assertion that it can exercise its discretion to (1) elect to issue a Notice to Appear, and then (2) grant a bond under INA § 236(a), is simply not true. INA § 235(b)(2)(A) *requires* the detention of inadmissible applicants for admission in full removal proceedings, subject to the parole authority at INA § 212(d)(5)(A). *See*

---

[7] Apparently the only constraint on the Department's discretion is the "credible fear cutoff"—"what *M-S-* said is at a certain point, there is no switchover, and that point occurs after a positive credible fear." *Id.* at 1:12:53. Therefore, "[the Department] can switch to 240 proceedings with the ability to release [on a bond under INA § 236(a)] up until that positive credible fear finding." *Id.* at 1:15:00.

*Jennings*, 138 S. Ct. at 842 ("Read most naturally, §§ 1225(b)(1) *and (b)(2)* thus mandate detention of applicants for admission until certain proceedings have concluded") (emphasis added).

*Second*, the Department reads too much into *Matter of E-R-M- & L-R-M-*. In that case, an Immigration Judge terminated removal proceedings under INA § 240. *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. at 520. Relying on the use of the word "shall" in INA § 235(b)(1)(A)(i) – which states that certain inadmissible aliens "shall" be ordered removed "without a hearing" – the Immigration Judge concluded that the Department was required to process the alien under expedited removal proceedings, and could not pursue full removal proceedings under INA § 240. *Id.* at 520-22. Reversing, the Board held that the word "shall" in INA § 235(b)(1)(A)(i) did not carry its ordinary meaning and instead meant "may." *Id.* at 522-23. The Board explained that historically, the word "shall" has not constrained Executive Branch decisions on whether to charge an individual with a crime, and which charges are brought. *Id.* at 522. Similarly, the Board found that INA § 235(b)(1)(A)(i) should not be interpreted to operate as a restraint on the Department's prosecutorial discretion to elect to pursue full removal proceedings under INA § 240. *Id.* at 523.

Quite plainly, the Board in *Matter of E-R-M- & L-R-M-* did not come to any conclusions regarding the *detention* of inadmissible applicants for admission under INA § 235(b). Instead, *Matter of E-R-M- & L-R-M-* held that the Department retains prosecutorial discretion under INA § 235(b)(1)(A)(i) when choosing the *type of proceeding* to pursue against an inadmissible applicant for admission: expedited removal proceedings under INA § 235(b)(1) or full removal proceedings under INA § 240. The Court notes that *Matter of E-R-M- & L-R-M-* was certainly on the books when *Jennings* was decided, and the Supreme Court nevertheless found that the word "shall" used repeatedly in INA § 235(b) *as to detention* was mandatory. *See Jennings*, 138 S. Ct. at 844 (holding that the use of the word "shall" in INA § 235(b)(1) and (b)(2) as to detention was mandatory—those provisions "unequivocally mandate that aliens falling within their scope 'shall' be detained.").

11

C.

The Department also argues that "*M-S-* was a change in the law . . . ." *See* Digital Audio Recording at 1:02:44 (Nov. 4, 2020). As "every single one of these respondents were apprehended, processed, and released prior to *M-S-'s* effective date," *Matter of M-S-* cannot apply. *Id.* at 1:04:24. In the Department view, *Matter of M-S-* applies only prospectively and is therefore "beyond the scope" of the cases before the Court. *Id.* at 1:16:06.

But it is *Jennings* that clarified the nature of the Department's obligation to detain inadmissible aliens arriving at our borders, and its corresponding release authority. *Jennings* did not change the law, but explained what the law has always been. *See generally De Niz Robles*, 803 F.3d at 1170. As the Court held above in Section IV., *Jennings* is a judicial decision that is retroactive. *Matter of M-S-* merely adopted *Jennings* and overruled contradictory Board precedent; it did not change the law in a way where looking backwards is off limits.

A perfect example of these principles is *Yu v. U.S. Atty. Gen.*, 568 F.3d 1328 (11th Cir. 2009). There an alien sought asylum based on the forced abortion and sterilization of his wife. *Id.* at 1329. When his hearings before the Immigration Judge were held, the respondent's case was governed by the precedent decision of the Board in *Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997), which held that the persecution of one spouse could be established by coerced abortion or sterilization of the other spouse. *Id.* at 1329-30. During the pendency of the respondent's appeal to the Board, however, the Attorney General overruled *Matter of C-Y-Z-* in *Matter of J-S-*, 24 I&N Dec. 520 (A.G. 2008), concluding that the spouse of a person subjected to coerced abortion and sterilization *was not* automatically eligible for refugee status. *Id.* at 1330. When the Board relied upon the Attorney General's intervening decision in *Matter of J-S-* in dismissing his appeal, the alien sought review before the Eleventh Circuit Court of Appeals. *Id.*

Affirming the Board's decision, the Eleventh Circuit concluded that the Attorney General's decision in *Matter of J-S-* was correct because it was required by the plain language of the relevant statute (INA § 101(a)(42)(B)), and clearly and

12

unambiguously reflected Congressional intent. *Id.* at 1332. And importantly, the Eleventh Circuit rejected the alien's claim that it was improper for the Board to retroactively apply *Matter of J-S-* to his case. *Id.* at 1333. "The BIA did not retroactively apply a new law but instead applied the Attorney General's determination of what the law 'had always meant.' " *Id.* (citation omitted). The alien's reliance on *Matter of C-Y-Z-* therefore did not bar applying *Matter of J-S-* to his pending administrative proceeding: "[o]nce the Attorney General clarified the meaning of § 1101(a)(42)(B) in *Matter of J-S-*, that decision became the controlling interpretation of the law and was entitled to *full retroactive effect* in all cases still open on direct review, *regardless of whether the events predated the Attorney General's decision.*" *Id.* at 1333-34 (emphasis added and citations omitted).

Just as in *Yu*, the Court is presiding over pending administrative proceedings which have not come to a conclusion in any of these five cases. And just as in *Yu*, the Attorney General here did not change the law in deciding *Matter of M-S-*; he simply adopted the Supreme Court's explanation of what the law has always meant. So when the Department says that *Matter of M-S-* is "beyond the scope" of these pending proceedings because "every single one of these respondents were apprehended, processed, and released prior to *M-S-*'s effective date", it misses the mark. *Jennings* (and *Matter of M-S-*) apply to these pending proceedings *regardless of whether the events predated the Attorney General's decision.* The forum for determining the legal significance of past events—whether it be the Department's decision to release the respondents, or the forced sterilization of an alien's spouse in their home country—is this one.[8]

The Court acknowledges that there is a line of cases specifying when the actions of an administrative agency, either by rulemaking or adjudication, apply

---

[8] Flipping the script, the Court would guess that the private bar would love to argue that a number of recent landmark decisions of the Attorney General restricting asylum eligibility, and reversing prior Board precedent, should be considered "beyond the scope" because their clients were harmed in (and fled from) their home countries before those decisions were announced. *See, e.g., Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018); *Matter of L-E-A-*, 27 I&N Dec. 581 (A.G. 2019). But it is well known to all who practice immigration law that the Department's position on the retroactivity *of those decisions of the Attorney General* is quite different than their view of *Matter of M-S-* here.

retroactively. *See, e.g., Matter of Cordero-Garcia*, 27 I&N Dec. 652 (BIA 2019). The Court finds these cases are inapplicable because this is not a situation where the Attorney General has "changed the law" by exercising his authority to give meaning to an ambiguous statute. *Compare De Niz Robles*, 803 F.3d at 1173 (holding that a new agency rule announced in a *Chevron* step two adjudication did not apply retroactively). Instead, it was the Supreme Court in *Jennings* who explained that the law applicable to the detention and release of applicants for admission was clear and unambiguous. *See Jennings*, 138 S. Ct. at 842 (referring to the "clear language" in INA §§ 235(b)(1) and (b)(2)), 844 (holding that those provisions "unequivocally mandate" detention and cannot be characterized as ambiguous).

Assuming the Court were incorrect, it would still conclude that *Matter of M-S-* applies retroactively as to the correct classification of the release of these respondents. To determine if an agency decision which changes the law applies retroactively, a number of factors must be considered: "(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard." *Matter of Cordero-Garcia*, 27 I&N Dec. at 658 (citation omitted).

Here, the issue is not one of first impression. *See generally Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005). And it does represent a departure from the well-established (although mistaken) practice of the Department at the border in processing applicants for admission. It is now clear that a category of aliens previously released on bonds under INA § 236(a) will be eligible for release only if paroled in accordance with INA § 212(d)(5)(A).

The most interesting factor, however, is reliance by the Department. It cannot be denied that the Department relied upon, and indeed was bound by, the prior precedent decision of the Board in *Matter of X-K-*. But the Court cannot ignore

14

that the Department *opposed* the rule of law announced in *Matter of X-K-*. And since its appeals in *Matter of X-K-* were dismissed in 2005, the Department has repeatedly advocated for a broad view of its detention obligation under INA § 235(b) before the Federal Courts, and has made explicit statements that parole is the exclusive means for the release of aliens detained under INA § 235(b). Importantly, these representations to the Federal Courts date back to at least March 15, 2013, *see* Appendix B, and therefore they *precede* the release of all of the respondents here, with the exception o▮▮▮▮▮▮▮ A▮▮▮▮▮▮▮.

Assessing this history, the Court concludes that the Department has embarked on a longstanding, strategic effort to persuade the Courts to accept a view of detention (and release) at the border inconsistent with *Matter of X-K-*. That effort included a successful appeal to the Supreme Court in *Jennings*, and a successful effort to overrule *Matter of X-K-* before the Attorney General. So while in a sense the Department relied upon prior law, it did so with its eyes open. Accordingly, any reliance by the Department does not weigh heavily against retroactivity.

With respect to the statutory interest in applying the new rule, the Court finds this factor cuts strongly in favor of retroactivity. INA § 235(b) "unequivocally mandate[s]" detention absent parole. *Jennings*, 138 S. Ct. at 844. Honoring this clear statutory command is important in the field of immigration law, where uniformity is expected. *Matter of Cordero-Garcia*, 27 I&N Dec. at 662-63. And the fact that retroactive application of the law here operates *to benefit* the respondents makes no difference. The Department's interests here perfectly coincide with the dictates of the law, and there is no reason the Court can see why the Department would prefer that *Jennings* apply only prospectively (or be burdened if it applied retroactively). The Department does not take positions on discrete legal issues with an eye to whether the position will hurt or benefit the aliens to whom the rules apply.

Finally, the Court would note that the Department has already argued that *Matter of M-S-* should be retroactive *as to the detention* of aliens released on a bond under *Matter of X-K-*. In its brief to the Attorney General in *Matter of M-S-*, the

Department stated that ruling in its favor by overruling *Matter of X-K-* would have an "immediate and significant impact on detention operations." *See* U.S. Department of Homeland Security Brief on Referral to the Attorney General at 23 n.16, *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) (attached as Appendix C). Referring to statistics showing there were 42,883 past cases from fiscal year 2017 where a credible fear was found, the Department argued that "[t]his entire population" would "immediately" be subject to detention and could only be released on parole. *Id.* Ruling in the Department's favor, the Attorney General agreed that the mandatory detention called for by INA § 235(b) would apply retroactively, holding that the alien in *Matter of M-S-* "must be detained" unless paroled. *Matter of M-S-*, 27 I&N Dec. at 519. And at the Department's request, the Attorney General delayed the effective date of his decision so that the Department could conduct the necessary planning "for additional detention and parole decisions." *Id.* at 519 n.8.[9]

The Court has considered all of the five factors set forth in *Matter of Cordero-Garcia*. Assuming the Attorney General "changed the law" in *Matter of M-S-*, that change applies retroactively. The Court finds it particularly important that the Department itself advocated that *Matter of M-S-* should be applied retroactively *as to detention,* and its arguments along those lines are strong and perhaps ultimately will prevail. Having taken that position, however, the Court finds it inapposite for

---

[9] *Matter of M-S-* was the subject of immediate review by the United States District Court for the Western District of Washington in *Padilla v. ICE*, 2:18-cv-928 MJP (W.D. Wash). In that litigation, the Department qualified its prior suggestion that a favorable ruling in *Matter of M-S-* would require a full 90 days of operational planning to apparently re-detain large numbers of aliens released on a bond under *Matter of X-K-*. In a declaration submitted to the District Court (which had already issued injunctive relief), the Department indicated that "at this time" it did not intend to re-detain aliens released on a bond before *Matter of M-S-* went into effect on July 15, 2019. *See* Declaration of Russell Hott at 2, *Padilla v. ICE*, 18-cv-928 MJP (W.D. Wash. June 3, 2019), (ECF 137). A subsequent declaration submitted on appeal to the Ninth Circuit Court of Appeals also clarified that the Department would not re-detain aliens released prior to July 15, 2019 "solely" on account of the Attorney General's decision. *See* Declaration of Clemente Hinojosa and "Interim" ERO Guidance at 5, *Padilla v. ICE*, 19-35565 (9th Cir. July 18, 2019) (ECF 16-2). As of the date of this order, the Department has a petition for a writ of certiorari pending before the Supreme Court. *See* Petition for a Writ of Certiorari, *Department of Homeland Security v. Padilla*, No. 20-234 (Aug. 24, 2020). If the Department were to again prevail at the Supreme Court, it could certainly revisit the issue of whether to re-detain aliens released on a bond prior to *Matter of M-S-*.

the Department to simultaneously argue that *Matter of M-S-* should not be applied retroactively *as to the nature of a prior release.* Viewing the circumstances in their totality, there is little justifiable reliance by the Department on the prior rule, and there are strong reasons to uniformly and retroactively apply *Matter of M-S-* as it pertains to the release of these respondents.[10]

D.

The Department also argues that respondents ████ L████, et al., A██ ████ / ██, and ████ G████, A ████████, have not been paroled because their cases are distinguishable from *Matter of M-S-*. *See* Department of Homeland Security Memorandum of Law in Support of the Position that the Respondent Was Not Paroled into the United States at 7 (Sept. 18, 2020) (filed in the cases of ████ L████, et al., A████████ /██; and ████ G████, A ████████). The Department reasons that: (1) *Matter of M-S-* applies only to the class of aliens transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear, (2) the two respondents above were never subjected to expedited removal, and (3) "as such" they were not paroled. *Id.* at 7-8.

But even though the facts in *Matter of M-S-* are distinguishable, the Department's argument proves too little. The Supreme Court has held that the exclusive means to release aliens *detained under INA § 235(b)* is parole. *See Jennings*, 138 S. Ct. at 844. The Supreme Court *did not* hold that the exclusive means to release aliens *initially processed for expedited removal and detained under INA § 235(b)(1)(B)(iii)(IV)* is parole. So the Department has identified a distinction that makes no difference to the issue at hand. The class of aliens before the

---

[10] A good counterexample is *Matter of Z-R-Z-C-*, Adopted Decision 2020-02, 2020 WL 5255637 (AAO Aug. 20, 2020). There the Administrative Appeals Office ("AAO") held that an alien who had been granted temporary protected status had not been "paroled" under INA § 245(a), despite the fact that the Department: (1) granted the alien permission to travel abroad through the issuance of an Authorization for Parole of an Alien into the United States (Form I-512), and (2) even placed a parole stamp on the Form I-512 upon the alien's return to the United States following a trip abroad. *Id.* at *3-7. The AAO reasoned that finding the alien to be "paroled"–even with paperwork showing the same—would be inconsistent with the statute addressing the effect of travel abroad by recipients of temporary protected status. *Id.* at *7. But recognizing that it was interpreting the law differently from the past, the AAO also held that its new interpretation would not apply retroactively to aliens who had reasonably relied on the Department's past practice. *Id.* at *9.

17

Attorney General in *Matter of M-S-* simply does not define the full scope of the Department's obligation to detain inadmissible applicants for admission under INA § 235(b) (and to release those aliens only on parole). *See* U.S. Department of Homeland Security Brief on Referral to the Attorney General at 15, *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) (Appendix C at 025a) ("INA § 235(b)(2)(A) *requires detention* 'for a [removal] proceeding' of aliens seeking admission *outside the expedited removal process*.") (emphasis added) (citing *Jennings*, 138 S. Ct. at 844).

E.

Finally, the Department points out that the parole authority has been delegated *exclusively* to the Secretary of Homeland Security. *See* Department of Homeland Security Memorandum of Law in Support of the Position that the Respondent Was Not Paroled into the United States at 5 (Sept. 18, 2020) (filed in the cases of ████ I████, et al., A████████ / ██; ████ E████ A████████; and ████ G████, A████████). Accordingly, it argues that Immigration Judges may not "constructive parole" an alien into the United States. *Id.* at 6. "In the absence of a definitive determination by the Department, an immigration judge is effectively paroling the alien, *nunc pro tunc*, into the United States without the legal authority to do so, and in direct contravention of the statutes, regulations, and caselaw." *Id.*

The Department misses the point. The Court is not ordering the release of detained aliens under INA § 212(d)(5)(A). Instead, the Court is presiding over the cases of respondents *who have already been released by the Department*, and determining the correct legal classification for that release. This is *exactly* what was done in *Matter of O-*. A legal ruling that the respondents have been paroled is not a "constructive parole" or a "*nunc pro tunc*" parole. It is a rather unremarkable function of a judge—the application of the law to past facts. *See, e.g., Matter of Quilantan*, 25 I&N Dec. 285 (BIA 2010) (concluding that the Department's decision to allow an alien to pass through a port of entry without questioning qualified as an "admission" to the United States).

18

VI.

To summarize: the law is clear that these respondents were inadmissible applicants for admission who were detained under INA § 235(b). The only legal basis for their release was a parole under INA § 212(d)(5)(A). This was made clear by the Supreme Court, whose words this Court will not lightly cast aside. The Department's contrary theory about detention and release at the U.S. border is contradicted by INA § 235(b)(2). The only bona fide issue the Court sees is retroactivity, and the Court has been offered no persuasive reason why *Jennings* should not apply retroactively. Simply put, the paperwork issued to these respondents does not control. The law controls. Just as in *Matter of O-*, there is no other *lawful* explanation for the release of these respondents other than parole. For all of the reasons above and after a careful review, the Court therefore concludes that the respondents have been paroled for the purposes of their eligibility for adjustment of status under the Cuban Adjustment Act and INA § 245(a).

VII.

Having come to that legal conclusion, the Court hereby advises all of the respondents that it appears they may be eligible for adjustment of status. *See* 8 C.F.R. § 1240.11(a)(2) (requiring the Court to advise aliens of their apparent eligibility for relief from removal).[11] With that advisal, the next step is therefore to ensure that the respondents are given a meaningful opportunity to apply for that relief, *see Matter of Cordova*, 22 I&N Dec. 966, 971 (BIA 1999), assuming they can establish good cause for a continuance, *see Matter of L-A-B-R-*, 27 I&N Dec. 405 (A.G. 2018). The Court makes that determination acknowledging that the federal regulations dictate that United States Citizenship and Immigration Services ("USCIS") retains exclusive jurisdiction over applications for adjustment of status submitted by arriving aliens. *See* 8 C.F.R. § 1245.2(a)(1)(ii); *but see Perez-Sanchez v.*

---

[11] These respondents may be eligible for adjustment of status under the Cuban Adjustment Act: ▮▮ G▮▮, et al., A▮▮ / ▮▮ ; ▮▮ V▮▮, et al., A▮▮ / and ▮▮ I▮▮, et al., A▮▮ / These respondents may be eligible for adjustment of status under INA § 245(a): ▮▮ E▮▮, A▮▮, and ▮▮ G▮▮, A▮▮ .

19

*U.S. Att'y Gen.*, 935 F.3d 1148, 1156 (11th Cir. 2019) ("Congress has not authorized the Attorney General to promulgate regulations of 'jurisdictional dimension.') (citation omitted).

A.

The Court will turn first to the respondents who are *not* classified as arriving aliens under the regulations:

███████ I███, et al., A█████████ /██, would be seeking adjustment of status under the Cuban Adjustment Act, and the Court sees no impediment to her pursuit of that relief. Her case is therefore scheduled by separate notice for a final merits hearing on any and all relief from removal. Any applications for adjustment of status and supporting documentation must be received at least 30 days prior to the final merits hearing.

███ G███, A█████████, would be seeking adjustment of status under INA § 245(a). He does have an approved immediate relative visa petition, and the Court sees no impediment to his pursuit of adjustment of status. His case is therefore scheduled by separate notice for a final merits hearing on any and all relief from removal. Any application for adjustment of status and supporting documentation must be received at least 30 days prior to the final merits hearing.

███ E███, A█████████, would be seeking adjustment of status under INA § 245(a). However, she does not have an approved immediate relative visa petition. The immediate relative visa petition was filed on December 13, 2017, and when the Court asked the Department on January 31, 2020 for an estimate of how long adjudication would take, no timeline was provided. The Court notes that the record of proceedings for her case does contain a copy of the Form I-130, other supporting documentation, and the receipt notice issued by USCIS. The petitioning U.S. citizen husband has appeared in Court on two separate occasions to show his support for the respondent: first on December 19, 2017, and again on January 31, 2020. Finally, while the Department opposed a continuance for adjudication of the visa petition on January 31, 2020, the only basis for opposition was that she was not eligible for adjustment of status in the United States due to her manner of entry

20

(her lack of admission or parole). Given the totality of the circumstances, and after a review of all of the factors identified in *Matter of L-A-B-R-*, the Court finds that the respondent has established good cause for a continuance to allow for adjudication of the visa petition. *See also Bull v. INS*, 790 F.2d 869 (11th Cir. 1986). Her case is therefore scheduled by separate notice for a master calendar hearing, where the parties can advise the Court of the status of the visa petition.

## B.

The Court will turn next to the respondents who are classified as arriving aliens under the regulations:

██████ v ██████, et al., A ████████ / ██, is seeking adjustment of status under the Cuban Adjustment Act, and the Court sees no impediment to her pursuit of that relief. She already has applications for adjustment of status pending before USCIS. The Court notes that *less than a week prior to the oral argument on November 4, 2020*, the Department on October 29, 2020 renewed a previously-filed written motion to terminate proceedings to allow USCIS to adjudicate those applications. While that motion to terminate was (quite surprisingly) withdrawn at the oral argument, the Department did indicate it had no opposition to a continuance for USCIS to adjudicate the applications. *See* Digital Audio Recording at 53:40 (Nov. 4, 2020). The Department ultimately explained that it originally agreed to termination because the respondents had filed a brief with their applications for adjustment of status with USCIS, and the USCIS National Benefits Center made a "prima facie finding of parole." *Id.* at 55:07.[12] Given the totality of

---

[12] In addition to the Department's concession that USCIS made a "prima facie finding of parole" in a case where it is now arguing the exact opposite, the Court has before it another indication that USCIS sees the parole issue differently than the Department counsels who have appeared before the Court. Mr. Mark Prada, Esq. (counsel for ██████ L████ et al., A ████████ / ██, and ██████ J████ L████, A ████████) represented at oral argument that the private bar had filed about 40 to 50 applications for adjustment of status with USCIS, each making the same arguments made here on the parole issue, and that of the 10 to 12 applications already adjudicated, about 50 percent were approved. *See* Digital Audio Recording at 36:46 (Nov. 4, 2020). Mr. Prada also represented that there would be District Court litigation on the issue once it became ripe. *Id.* at 37:04. These representations, unchallenged by the Department, show that the respondents have a very significant chance that their applications for adjustment of status will be favorably adjudicated by USCIS. And given his success (along with Mr. Anthony Dominguez, Esq.) before the United States District Court for the Southern District of Florida in the case of ██████ J████ L████,

the circumstances, and after a review of all of the factors identified in *Matter of L-A-B-R-*, the Court finds that the respondent has established good cause for a continuance to allow for adjudication of her applications for adjustment of status by USCIS. Her case is therefore scheduled by separate notice for a master calendar hearing, where the parties can advise the Court of the status of the applications for adjustment of status.

██████ D███ G███████, et al., A████████ / ███ / ███ is seeking adjustment of status under the Cuban Adjustment Act, and the Court sees no impediment to her pursuit of that relief. The only distinction the Court sees between her case and the one just discussed is that she has (apparently) not yet filed applications for adjustment of status. Having now ruled in her favor and concluded that she has been paroled, the Court finds that she should be provided a meaningful opportunity to apply for adjustment of status in accordance with *Matter of Cordova*, 22 I&N Dec. 966, 971 (BIA 1999). Given the totality of the circumstances, and after a review of all of the factors identified in *Matter of L-A-B-R-*, the Court finds that the respondent has established good cause for a continuance to allow for the filing of applications for adjustment of status before USCIS on or before **April 5, 2021**, and if filed, for their adjudication. Her case is therefore scheduled by separate notice for a master calendar hearing, where the parties can advise the Court if the applications have been timely filed, and if so, their status.

\*        \*        \*

The Court has issued this initial decision on an issue that has recurred on its docket for some time, and will continue to do so. It would be impossible to predict the exact number of inadmissible applicants for admission who have passed through our borders prior to *Matter of M-S-*, were released by the Department like these

---

A ██████████, the Court does not doubt Mr. Prada's prediction that the parole issue will come before the United States District Court in the near future.

respondents, and would be eligible to adjust their status *if* their release qualifies as a parole. But the Court believes that the number is high. Simply put, the Court finds the issue it has resolved is a significant one. If the Court is correct in the legal conclusions reached here, large numbers of similarly-situated aliens will be properly seeking to adjust their status before the Court, or will be seeking a continuance to adjust their status before USCIS. If it is not correct, the Court will be leading these aliens down the wrong path and wasting the time of all involved.

Given the importance and complexity of this recurring issue, the Court will be exercising its authority to certify these cases to the Board for review. *See* 8 C.F.R. § 1240.1(a)(2) (an immigration judge may certify his or her decision in "any case" in removal proceedings where it involves an unusually complex or novel question of law or fact); 8 C.F.R. § 1003.1(c) (an immigration judge may certify "any case" arising under the Board's appellate jurisdiction at 8 C.F.R. § 1003.1(b)); 8 C.F.R. § 1003.1(b)(3) (holding that the Board's appellate jurisdiction extends to review of decisions of Immigration Judges in removal proceedings); 8 C.F.R. § 1003.7 (an Immigration Judge may certify a case after an "initial" decision has been made); BIA Practice Manual, Chapter 4.14(a) (Oct. 5, 2020) (an interlocutory appeal requires the Board to review a ruling of the Immigration Judge before the immigration judge issues a "final" decision).[13] While the Board does not normally exercise its jurisdiction to review interlocutory decisions, it does so occasionally to address important jurisdictional questions or recurring issues handled by Immigration Judges. *See generally Matter of Guevara,* 20 I&N Dec. 238, 239 (BIA 1990, 1991). Here, the Court believes the issue presented is one the Board may wish to address now, rather than waiting to address upon the conclusion of a larger number of cases. *See generally Matter of M-D-,* 24 I&N Dec. 138, 139 (BIA 2007)

---

[13] While the Court does not believe it affects the Board's jurisdiction, this decision is issued prior to the January 15, 2021 effective date of a new final rule restricting the Board's certification authority. *See* Appellate Procedures and Decisional Finality in Immigration Proceedings: Administrative Closure, 85 Fed. Reg. 81,588 (Dec. 16, 2020).

(finding it appropriate to rule on a recurring issue in an interlocutory appeal "in order to provide guidance to the Immigration Judges and the parties").[14]

Notice of Certification

In accordance with 8 C.F.R. § 1003.7, the parties are notified that these cases are required to be certified to the Board and that they have the right to make representations before the Board, including the making of a request for oral argument and the submission of a brief. **If any party desires to submit a brief to be considered by the Board, it shall be filed directly with the Miami Immigration Court on or before <u>January 25, 2021</u>.** Upon receipt of briefs from the parties (or a written waiver of the right to submit a brief), or upon expiration of the deadline, these cases will then be certified and forwarded to the Board.

| | |
|---|---|
| 1 - 4 - 21 | _Timothy M. Cole_ |
| Date | Timothy M. Cole<br>Immigration Judge |

---

### Certificate of Service

This document was served by: [✓] Mail   [ ] Personal Service
To: [ ] Alien   [ ] Alien c/o Custodial Officer   [✓] Alien's Atty / Rep   [✓] DHS

Date: 1/4/21                   By: Court Staff _____

---

[14] The parties are free to file interlocutory appeals notwithstanding the Court's certification of these cases to the Board. The Court notes that the Department specifically reserved its right to file an interlocutory appeal in one of these five cases earlier this year. *See* Digital Audio Recording, ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆, at 38:13 (Jan. 31, 2020).

## APPENDIX A

### Department's Opening Statement
### from Oral Argument on November 4, 2020

Thank you, your Honor, and we prepared a brief opening statement:

When properly framed, the analysis is factual in nature, it is straightforward. All the cases being argued today occurred before *Matter of M-S-* was precedent, and as such, the legal framework of *M-S-* is inapplicable. ***M-S-* was a change in the law** and the AG realized it, changed the law, and stayed the effective date of the change for ninety days, specifically to give DHS time to realign its procedures.

**The preliminary inquiry in each of these cases begins with determining one thing: did the Department place the respondent in expedited removal proceedings? If the answer is "no," then no further analysis needs to be done.**

DHS at the inception of every process utilizes its prosecutorial discretion and makes a threshold screening determination of deciding whether to place an alien in either expedited removal proceedings, if qualified to be in such proceedings, or to elect to utilize the provisions of 236 and issue a NTA, placing the respondent in 240 full removal proceedings. This is the case even if a respondent was eligible for expedited removal under 235. *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, established this and it is binding precedent. There is no question *E-R-M-* remains precedential as it was cited by the AG in *Matter of M-S-* and by the BIA in *Matter of M-D-V-C-*. Therefore, back when these respondents entered and through today, DHS retains prosecutorial discretion to place aliens into section 240 removal proceedings, even though they may also be subject to expedited removal proceedings under 235. **The section elected by the Department, either 235 expedited removal or 240 full removal proceedings, determines the legal authority to utilize to detain and to release.**

The Department's decision to proceed under 235, once initiated, is not set in stone. It was understood that factors that made proceeding under 235 practical may change. Since every single one of these respondents were apprehended, processed, and released prior to *M-S-*'s effective date, the consequences of when this shift occurred is not at issue in these case. **The single quote from *Jennings* that underpins the entire argument of opposing counsel and cited to by the Court is of no moment. The quote from *Jennings* is dicta.** Of the three questions the Supreme Court granted certiorari to decide in *Jennings*, none of them had to do with the mechanics of placing someone into 235 expedited removal proceedings. This makes sense because the pertinent 235 class that *Jennings* was examining had been placed by the Department in 235 expedited removal proceedings. Correctly contextualized and framed, it is clear that the language used speaks of the class before them as they are, not the broader proposition. The only binding holding in *Jennings* is that the Ninth Circuit Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions under review.

Counsel and the Court, it seems, presuppose everyone is and can only be in 235, and fails to even analyze to any extent 236. The viewpoint inexplicably fails to account for *Matter of E-R-M- & L-R-M-*, and builds the entire argument on a single pedestal: dicta from *Jennings*. By missing an analytical step, and reframing and decontextualizing *Jennings*, the resulting equation is flawed, and the argument hopelessly circular.

Missing is the first analytical step: the role of prosecutorial discretion possessed by the Department, as explained by *E-R-M-*. When properly framed, this equation now complements a key aspect of statutory construction: all sections of an act should be read in harmony with each other, the sections should complement each other, and no section should do violence to the other, or cause another to be rendered meaningless. Also equally as important is that no reading of the statute should yield an absurd result.

Opposing counsel propounds that all people detained are processed under 235, placed in expedited removal proceedings, and no one, not an arriving alien, not an

EWI, no one, can be released but by 212(d)(5) parole. That reading is wrong as a matter of law.

Factually, all but two respondents were placed in 240 full removal proceedings. The Department has filed the evidence attached to its responses filed on September 18, 2020. These respondents have never been in 235 expedited removal proceedings, they do not and have never fallen under 235 expedited removal proceedings. Because each of these respondents were placed in 240 full removal proceedings, their releases were authorized.

Of the two respondent placed in 235 expedited removal proceedings, the mechanics of when and how they were released are irrelevant. For one, *M-S-* hadn't even been handed down, and for the other, *M-S-* was stayed during the release.

Congress gave the Department the tool of expedited removal to utilize at its discretion. The BIA in 2011 has precedently so held in *Matter of E-R-M- & L-R-M-*. The BIA was clear the Department in its prosecutorial discretion chooses in its unreviewable discretion who they place in 235 expedited removal proceedings and who they place in 240 full removal proceedings. The Department still retains this prosecutorial discretion, and when viewed realistically, it makes sense. The Secretary is vested with the plenary power to manage the border and is tasked with maintaining the safety and security of DHS personnel and those detained.

Viewing 235 *ab initio* as mandatory for all does violence to other sections of the INA, including, but not limited to, section 236, and destroys the concept of prosecutorial discretion, completely ignores *E-R-M-* and 236, and is unsupported by law and regulation.

*See* Digital Audio Recording at 1:02:27 – 1:07:59 (Nov. 4, 2020) (emphasis added).

**Other Excerpts from Oral Argument on November 4, 2020**

The Court:              First of all, the main reason we're here is one clear cut statement
                        in *Jennings* in my opinion. That statement is that there are "no
                        other circumstances" in which aliens detained under INA section
                        235 may be released other than the parole authority under INA
                        212(d)(5). Now, I heard what you said about *Jennings*, and the
                        only thing that can be taking from *Jennings*, and what you think
                        the holding is in *Jennings*. Notwithstanding whether the
                        statement I read is dicta or not, is it a correct statement of the
                        law?

The Department:         **No, your Honor, it's not a correct statement of the law at
                        all.** It ignores *E-R-M-*, it ignores *M-S-*, and it completely takes
                        *Jennings* out of context.

The Court:              Well I'm reading, [crosstalk] hold on, hold on, Mr. Eth, Mr. Eth,
                        I'm reading [to] you from *Jennings*. That's the statement from
                        *Jennings*.

The Department:         No you're reading [to] me from a portion of *Jennings* that you're
                        taking out of context. *Jennings* had nothing to do with 235 versus
                        236 proceedings. That statement in *Jennings* presupposed that
                        we [the Department] had placed them in expedited removal
                        proceedings, because there was no reason to frame that sentence
                        any other way in *Jennings*, because *Jennings* was talking about
                        people the Department put into 235. So when you frame *Jennings*
                        appropriately, the blurb that you're taking out of context is not
                        what it purports to be, and it completely ignores how the Attorney
                        General himself, who you're bound by, read *Jennings*. And he said

it himself in *Matter of M-S-*. So the Court cannot just take out of context a statement in *Jennings* and hold it for a broad proposition that it just doesn't take.

*See* Digital Audio Recording at 1:08:27 – 1:10:20 (Nov. 4, 2020) (emphasis added).

*      *      *

**The Court:**     Let's talk about *M-S-* himself, okay, the alien in *M-S-*. He was originally processed, right, expedited removal and then referred to 240 proceedings, right?

**The Department:**     That's correct.

**The Court:**     Okay so the government elected to put him into 240, right, under its discretion under *E-R-M-* & *L-R-M-*. And now *M-S-* could be released on a bond? Or not?

**The Department:**     No, again the Court is misconstruing the issue. **What *M-S-* said is at a certain point, there is no switchover, and that point occurs after a positive credible fear.** At that point, he's held. Even if he's put into 240 proceedings, once there's a credible fear finding, you cannot go past that. And that's exactly what the Attorney General said: an alien who's transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond.

The Court:          Because 240 does not decide the nature of the detention authority.
                    It doesn't matter if he's in 240 or stays under an asylum-only type
                    proceeding [or] expedited removal. What matters is that the alien
                    was an applicant for admission, no?

The Department:     **No, what matters is it was after the credible fear cutoff.**
                    [crosstalk] The focus is when an individual appears before an
                    immigration officer, and that immigration officer has the ability
                    to exercise our prosecutorial discretion, at that juncture, they can
                    decide to put the respondent in 240 proceedings. At that point,
                    once the respondent is in 240 proceedings, the analysis ends. They
                    never were in expedited removal proceedings, and they can
                    proceed on their way [on a bond under INA § 236(a)]. That's what
                    happens to a majority of these respondents.

The Court:          So *M-S-* is in 240, could he be released on a bond?

The Department:     Well the Court would have to read *M-S-*, and as the Department
                    said again, **the cutoff is after a positive credible fear.** So
                    continuing that rationale, if in prosecutorial discretion the
                    immigration officer chooses to begin to screen and process under
                    expedited removal, **we can switch to 240 proceedings with
                    the ability to release [on a bond under INA § 236(a)] up
                    until that positive credible fear finding.** Once that positive
                    credible fear finding is made, we can still move to 240
                    proceedings, but we do not have the ability to release in general
                    terms [on a bond under INA § 236(a)]. And again, the Department
                    is only going to speak on these cases before your Honor, not in any
                    broader propositions. And on the cases properly before your
                    Honor, and only the cases properly before your Honor, the issue

is clear. The respondents, who were never in 235 proceedings because we used our powers under *E-R-M-*, are those respondents who were released perfectly entitled to release [on a bond under INA § 236(a)]? And they were. And those respondents who were placed into 235, and anything that happened with them, it was previous to *M-S-*, so we don't need to expound further on whether that could have happened under *M-S-* or anything else because that's beyond the scope. I'm sure they'll be a case where we'll be able to discuss the broader implications of *M-S-*, but these are not these cases.

*See* Digital Audio Recording at 1:12:12 – 1:16:14 (Nov. 4, 2020) (emphasis added).

# APPENDIX B

| Date | Statement of the Department (through counsel) | Citation |
|---|---|---|
| March 15, 2013 | "8 U.S.C. §1225 [INA § 235] mandates the detention of *all* inadmissible arriving aliens." [ . . . ] "[S]ection 1225(b) [INA § 235(b)] unambiguously requires detention while allowing for parole, not bond, under section 1182(d)(5)(a) [INA § 212(d)(5)(A)]." | Respondents' Motion for Summary Judgment at 4, 27, *Rodriguez v. Robbins*, 07-3239-TJH (C.D. Cal. Mar. 15, 2013) (ECF 299) (emphasis added) |
| March 25, 2016 | "Aliens detained under Section 1225(b) [INA § 235(b)] may be released into the interior of the United States during their removal proceedings *only* through the exercise of the Secretary of Homeland Security's discretionary parole authority." | Petition for a Writ of Certiorari at 4, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (emphasis added) |
| August 26, 2016 | "Parole is thus properly the *sole mechanism* for releasing such aliens [detained under INA § 235(b)] during removal proceedings . . . ." | Brief for the Petitioners at 24, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (emphasis added) |
| June 3, 2019 | "*Jennings* made clear that the parole process expounded in 8 U.S.C. § 1182(d)(5) [INA § 212(d)(5)]—which does not provide for a hearing before an immigration judge—is the *exclusive mechanism* by which an alien could seek release from detention under section 1225(b) [INA § 235(b)]; 'there are no *other* circumstances under which aliens detained under § 1225(b) [INA § 235(b)] may be released,' a fact that significantly undermines Plaintiffs' contentions that they are entitled to a manufactured process they call 'parole' bond hearings." | Defendants' Motion to Dismiss Third Amended Complaint at 15, *Padilla v. ICE*, 18-cv-928 MJP (W.D. Wash. June 3, 2019) (ECF 136) (emphasis added) (citing *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)) |

## APPENDIX C

U.S. Department of Homeland Security Brief on Referral to the Attorney General, *Matter of M-S-*, 27 I&N Dec. 509 (A,G, 2019)

Rhonda M. Dent
Acting Chief
Ronald A.A. Lapid
Deputy Division Chief
**James T. Dehn**
Associate Legal Advisor
Immigration Law and Practice Division
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
500 12th St., SW
Mail Stop 5900
Washington, D.C. 20536
(202) 732-5000

**NON-DETAINED**



UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL

In the Matter of:               )
                                )
M█████ S███                     )      File No.    A████████
                                )
In Bond Proceedings             )
                                )

**U.S. DEPARTMENT OF HOMELAND SECURITY
BRIEF ON REFERRAL TO THE ATTORNEY GENERAL**

## TABLE OF CONTENTS

INTRODUCTION .............................................................................................................................2

ISSUE PRESENTED ........................................................................................................................4

STANDARD OF REVIEW ...............................................................................................................4

SUMMARY OF THE ARGUMENT .................................................................................................4

STATEMENT OF FACTS ................................................................................................................5

ARGUMENT....................................................................................................................................7

    I.     The Expedited Removal Statutory Regime Contemplates Detention of Aliens
        Determined to Have a Credible Fear of Persecution .....................................................7

    II.    The BIA's Decision in *Matter of X-K-* Incorrectly Applied the Statutory Regime .......9

    III.   The Supreme Court's Reasoning in *Jennings v. Rodriguez* Supports Overruling
        *Matter of X-K-*...........................................................................................................14

    IV.   Aliens Determined to Have a Credible Fear of Persecution and Referred for Removal
        Proceedings are Detained under INA § 235(b), *Not* § 236..............................15

    V.    The Attorney General May Issue a Decision in This Case Even Though DHS
        Released the Respondent. ..............................................................................................19

CONCLUSION...............................................................................................................................23

(

'

## INTRODUCTION

On October 12, 2018, the Attorney General directed the Board of Immigration Appeals (Board or BIA) to refer for his review its decision in this matter concerning the respondent's application for a change in custody status. *See Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018). In his referral order, the Attorney General invited the Department of Homeland Security (DHS), the respondent, and interested amici curiae to address whether the BIA's decision in *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005) (affording bond hearings for certain aliens subject to expedited removal upon referral for removal proceedings), should be overruled. As discussed herein, DHS urges the Attorney General to overrule *Matter of X-K-* and hold that immigration judges lack authority to conduct bond hearings for aliens who, like the respondent, DHS detains under section 235(b) of the Immigration and Nationality Act (INA or Act) following a positive credible fear finding and referral for further consideration of an asylum claim in INA § 240 removal proceedings.

By way of background, arriving aliens,[1] regardless of whether they are processed under the INA's expedited removal and credible fear provisions, have long been ineligible for a custody redetermination hearing before an immigration judge. Indeed, federal regulations now make clear that immigration judges lack the authority to consider questions concerning an arriving alien's custody. *See* 8 C.F.R. § 1003.19(h)(2)(i)(B). In *Matter of X-K-*, the BIA considered whether immigration judges have authority to redetermine DHS custody decisions involving applicants for admission categorized as "certain other aliens" (i.e., not "arriving aliens") who are subject to expedited removal, establish a credible fear, and are placed in

---

[1] "Arriving alien" is defined by regulation in relevant part as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. §§ 1.2, 1001.1(q).

A▮▮▮▮▮▮

2

INA § 240 removal proceedings.  Specifically, the respondent in *X-K-*, like the respondent in this case, was subject to expedited removal because he was covered by the August 11, 2004 *Notice Designating Aliens For Expedited Removal*, 69 Fed. Reg. 48,877, which applies to unlawful entrants encountered by DHS within 14 days of entry and 100 miles of the border.  The BIA concluded that the immigration judge was permitted to grant bond to the respondent in *X-K-* because the regulation at 8 C.F.R. § 1003.19(h)(2)(i), which generally limits immigration judge custody redetermination authority, does not include any specific limitation with respect to expedited removal cases involving "certain other aliens."

The BIA correctly recognized that a "regulatory gap" exists as to the scope of immigration judge bond authority over the class of aliens described in *X-K-*.  Finding no express language in § 1003.19(h)(2)(i) to the contrary, the BIA erroneously concluded that, once removal proceedings under INA § 240 are commenced, immigration judges may exercise their general custody authority under INA § 236 over such aliens.  DHS disagreed with the BIA's decision, arguing in a motion to reconsider that the BIA had erred because the expedited removal statute itself does not differentiate between "arriving aliens" and "certain other aliens" when providing that aliens determined to have a credible fear "*shall be detained* for further consideration of the application for asylum," INA § 235(b)(1)(B)(ii) (emphasis added).  Indeed, the *Federal Register* Notice that designated for expedited removal aliens like the respondent in this case and in *Matter of X-K-* specified that such aliens are detained pursuant to INA § 235(b)(1)(B)(ii) and ineligible for a bond redetermination before an immigration judge.[2]  Recently, in *Jennings v. Rodriguez*,

---

[2] *See* 69 Fed. Reg. 48,877, 48,879 (Aug. 11, 2004) ("Section 235(b)(1)(B)(ii) of the Act directs that if a credible fear has been established, the alien shall be detained for further consideration of the protection claim or claims.  Under Department of Justice regulations, immigration judge review of custody determinations is permitted only for bond and custody determinations pursuant to section 236 of the Act . . . .  Aliens subject to expedited removal procedures under section 235 of the Act (including those aliens who are referred after a positive credible fear determination to



3

138 S. Ct. 830, 845-46 (2018), the Supreme Court confirmed DHS's position that INA § 235(b) provides its own detention authority and creates no entitlement to a bond hearing.

## ISSUE PRESENTED

Whether *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), which held that immigration judges may hold bond hearings for certain aliens initially screened for expedited removal under section 235(b)(1) of the INA but later placed in removal proceedings under INA § 240, should be overruled in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), and for other reasons discussed in this brief.

## STANDARD OF REVIEW

The Attorney General reviews decisions of the BIA *de novo* and is not confined to review of legal or factual error. *Matter of J-F-F-*, 23 I&N Dec. 912, 913 (A.G. 2006) (stating that the Attorney General reserves the right to "receive additional information and to make de novo factual determinations"); *Matter of A-H-*, 23 I&N Dec. 774, 779 n.4 (A.G. 2005) ("The Attorney General has authority to conduct de novo review of BIA decisions."); *Matter of D-J-*, 23 I&N Dec. 572, 575 (A.G. 2003) (same).

## SUMMARY OF THE ARGUMENT

The Attorney General should reexamine the BIA's interpretation in *Matter of X-K-* addressing the question whether an immigration judge may review DHS's decision to detain aliens processed for expedited removal in light of the Supreme Court's recent decision in *Jennings* and for other reasons discussed in this brief. Contrary to the BIA's interpretation of the framework for detaining "certain other aliens" processed for expedited removal, the plain

---

an immigration judge for proceedings under section 240 of the Act) are not eligible for bond, and therefore are not eligible for a bond redetermination before an immigration judge.").

4

ǀ

language of the INA, as described by the Supreme Court in *Jennings*, directs that an alien who has initially been detained for expedited removal pursuant to INA § 235(b)(1)(a)(iii), but who has subsequently been referred for removal proceedings under INA § 240 following a positive credible fear determination, remains in custody under INA § 235(b)(1) and is therefore not eligible for a bond hearing before an immigration judge. Accordingly, the immigration judge lacked authority to hold a bond hearing in the respondent's case, notwithstanding the BIA's decision in *Matter of X-K-*. As discussed below, the BIA previously filled a regulatory gap with an interpretation that conflicts with the Supreme Court's subsequent plain language reading of the expedited removal statute. As such, the Attorney General should issue a decision that interprets the regulatory framework in a manner consistent with the authorizing statute and in line with Supreme Court precedent.

## STATEMENT OF FACTS

The respondent, M███████ S███, is a native and citizen of India who illegally entered the United States at or near Otay Mesa, California, on March 13, 2018. *See Record of Deportable/Inadmissible Alien (Form I-213)*. A U.S. Border Patrol agent responding to sensor activity in the sector encountered the respondent approximately 3 miles east of a designated port-of-entry and 50 miles north of the United States-Mexico border and promptly apprehended him. *Id.* On March 14, 2018, U.S. Customs and Border Protection processed the respondent for expedited removal and detained him pursuant to INA § 235(b). *Id.*; *see also* Notice and Order of Expedited Removal (Form I-860). While in DHS custody, the respondent expressed a fear of persecution if returned to India. *See* Form I-213.

An asylum officer conducted a credible fear interview, determined that the respondent

A█████████

5

ǀ

had a credible fear of persecution,[3] and issued a Notice to Appear (NTA) for full consideration of the asylum and withholding of removal claims in removal proceedings under section 240 of the Act. Notice to Appear (Form I-862); *see also* 8 C.F.R. § 208.30(f) (procedures for positive credible fear findings). In the NTA, DHS charged the respondent as inadmissible under INA §§ 212(a)(7)(A)(i)(I) (no valid immigration documents) and 212(a)(6)(A)(i) (present in the United States without admission or parole). *See* Form I-862.

On June 29, 2018, the immigration judge held a hearing on the respondent's application for a change in custody status. *See* IJ Bond Order (June 29, 2018) ("IJ Bond Order I"). As a threshold matter, the immigration judge ruled that he had jurisdiction to entertain the respondent's custody redetermination request pursuant to INA § 236(a). IJ Bond Memorandum (July 18, 2018) ("IJ Bond Memo I") at 1. The immigration judge also predicated jurisdiction on the regulations at 8 C.F.R. §§ 1236.1(d) and 1003.19(a)-(c) as well as *Matter of A-W-*, 25 I&N Dec. 45, 46 & n.2 (BIA 2009). IJ Bond Memo I at 1. On the merits of the application, the immigration judge determined that the respondent was a flight risk, but that conditions of release could adequately ensure his presence at future immigration hearings. IJ Bond Memo I at 1, 3. Accordingly, the immigration judge ordered release from DHS custody under bond of $17,500 and on condition that he provide a valid passport verifying his identify. *Id.* On appeal by the respondent, the BIA affirmed the immigration judge's decision and dismissed the respondent's bond appeal. *See* M██ S█, A██, at 1 (BIA Sept. 28, 2018).

On September 6, 2018—prior to the Board's September 28 decision dismissing the respondent's bond appeal—the respondent filed a motion for new bond redetermination based on

---

[3] Although the asylum officer initially made a negative credible fear finding on April 10, 2018, that decision was superseded by a positive credible fear finding on May 31, 2018.

6



\

changed circumstances pursuant to 8 C.F.R. § 1003.19(e).[4] The respondent argued that

producing a passport should be removed as a condition of release, because the Indian consulate

denied his request for a replacement Indian passport. *See* Motion for New Bond on Changed

Circumstances, at 5-6, 11 (Sept. 6, 2018). On September 17, 2018, the immigration judge[5]

issued a new bond decision in which she eliminated the passport condition but raised the

monetary bond amount to $27,000. *See* Decision and Order of the Immigration Judge (Sept. 17,

2018) ("IJ Bond Order II").[6] On September 27, 2018, the respondent posted bond, and DHS

released him from custody. *See* Notice of Release and Proof of Service; Notice of Change of

Custody (Sept. 27, 2018) (Form I-830). Neither party appealed the second bond decision. The

respondent's removal proceedings remain pending on the non-detained docket.[7]

## ARGUMENT

### I. The Expedited Removal Statutory Regime Contemplates Detention of Aliens Determined to Have a Credible Fear of Persecution.

The enforcement of our nation's immigration laws involves daily determinations by DHS

immigration officers as to whether to admit, parole, or remove aliens encountered at designated

ports-of-entry or who are apprehended between the ports-of-entry. Aliens who are "applicants

for admission" are subject to an immigration inspection. *See* INA § 235(a)(1), (3). Applicants

for admission who are amenable to the expedited removal process include: (1) "arriving aliens"

---

[4] "After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e) (2018).

[5] A different immigration judge presided over the second bond hearing.

[6] The immigration judge's decision was issued before DHS submitted a response. *See* IJ Bond Order II at 1 *available at* https://www.justice.gov/eoir/file/1105001/download.

[7] On October 12, 2018, upon consideration of the respondent's motion for a change of venue, the immigration judge transferred the removal proceedings to the immigration court in New York, New York. *See* Order of the Immigration Judge, A216 183 613 (Oct. 12, 2018).

7

A▮▮▮

who are inadmissible due to fraud, misrepresentation or lack of valid immigration documents; as well as (2) "certain other aliens" designated by the Secretary of Homeland Security who are subject to these inadmissibility grounds. INA § 235(b)(1)(A).

The expedited removal process results in a removal order entered by an immigration officer unless the alien expresses fear of persecution or torture, a fear of return, or an intention to apply for asylum. *See id.* § 235(b)(1)(A)(ii); 8 C.F.R.§ 235.3(b)(4). Under those circumstances, the alien is referred to an asylum officer for a credible fear interview. *Id.* The INA then directs that if the officer makes a positive credible fear determination, the alien "shall be detained for further consideration of the application for asylum." *Id.* § 235(b)(1)(B)(ii).

Pursuant to 8 C.F.R. § 208.30(f), for positive credible fear determinations, the asylum officer refers the alien for removal proceedings before an immigration judge by issuing an NTA and placing the alien in removal proceedings under INA § 240. However, at no point does the asylum officer issue a warrant of arrest or a custody determination as is done by U.S. Immigration and Customs Enforcement or U.S. Customs and Border Protection officers for aliens arrested and detained under INA § 236. *See* 8 C.F.R. §§ 236.1(b)(1), 1236.1(b)(1) (a warrant of arrest may only be issued by those immigration officers listed in 8 C.F.R. § 287.5(e)(2), which does not include asylum officers). The expedited removal scheme covers the initial encounter with DHS through execution of the final order of removal. Throughout the process, including during INA § 240 removal proceedings, where applicable, aliens subject to expedited removal remain detained pursuant to INA § 235(b). *See* INA § 235(b)(2)(A); 8 C.F.R. §§ 235.6(a)(1), 1235.6(a)(i).

Section 235(b)(1)(A)(iii)(I) of the INA provides that the Secretary of Homeland Security may apply the expedited removal process to aliens, like the respondent in this case, who are

8

described in section 235(b)(1)(A)(iii)(II) of the INA as designated by the Secretary pursuant to section 235(b)(1)(A)(iii)(I). In making the designation, the Secretary is authorized by statute to "apply clauses (i) and (ii)" of section 235(b)(1)(A) to such aliens. INA § 235(b)(1)(A)(iii)(I). This language indicates that Congress intended for aliens so designated to be subject to exactly the same processes as the arriving aliens described in clause (i) of the statute. On August 11, 2004, the Secretary published such a notice in the *Federal Register*, designating certain aliens for inclusion under the expedited removal provisions of INA § 235(b). *See* 69 Fed. Reg. 48,877. The Department of Justice had previously exercised this same authority to designate classes of aliens for expedited removal. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the INA, 67 Fed. Reg. 68,924 (Nov. 13, 2002). In both instances, the notices advised that an alien, processed for expedited removal and later referred to an immigration judge for proceedings under INA § 240 after a positive credible fear determination, is ineligible for a custody redetermination before the immigration judge. *Compare* 69 Fed. Reg. at 48,880-81 (stating that "[a]liens detained pursuant to the expedited removal proceedings under section 235 of the Act (including those aliens who are referred after a positive credible fear determination to an immigration judge for proceedings under section 240 of the INA) are not eligible for bond, and therefore not eligible for a bond redetermination before an immigration judge."), *with* 67 Fed. Reg. at 68,926 (stating that "[a]n alien found to have a credible fear and subsequently placed into removal proceedings before an immigration judge will be detained").

## II.  The BIA's Decision in *Matter of X-K-* Incorrectly Applied the Statutory Regime.

As evidenced by the Supreme Court's recent ruling in *Jennings*, the BIA's prior resolution of the gap in the regulations governing immigration judge bond authority under

9

8 C.F.R. § 1003.19 in *Matter of X-K-* was incorrect. Subsection (h)(2)(i) of that regulation is silent as to whether "certain other aliens" may be afforded bond redeterminations. *See generally Marsh v. J. Alexander's LLC*, 905 F.3d 610, 625 (9th Cir. 2018) (en banc) ("The regulation's silence on this point is compelling evidence of its ambiguity."). Nor is there any indication that the regulation's drafters "had an intention on the precise question at issue," *Negusie v. Holder*, 555 U.S. 511, 518 (2009). In fact, section 1003.19 does not specifically address the unique subclass of "certain other aliens," primarily because the regulation long predates the 2004 expedited removal designation under INA § 235(b)(1)(A)(iii). *See* 63 Fed. Reg. 27,448 (May 19, 1988).[8] Certainly, the regulatory text is not so plain as to foreclose a contrary interpretation. *See generally Thomas Jefferson Univ v Shalala*, 512 U.S. 504, 512 (1994) (holding that court must defer to the agency's interpretation of its ambiguous regulation unless an "alternative reading is *compelled* by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation") (emphasis added).

The Attorney General, moreover, should avoid any interpretation, like the one adopted in *Matter of X-K-*, that runs contrary to the statutory framework and leads to anomalous results that thwart the obvious intent of Congress in INA § 235(b). *See, e.g., Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 733 (9th Cir. 2017) (instructing that reviewing court "must ensure that the [agency's] interpretation [of its own regulation] is not inconsistent with a congressional directive"); *cf., e.g., In re Magic Restaurants, Inc.*, 205 F.3d 108, 116 (3d Cir. 2000) ("Even where the express language of a statute appears unambiguous, a

---

[8] Similarly, 8 C.F.R. § 1003.19 does not specifically address aliens detained by DHS under INA § 217 pursuant to the visa waiver program; yet, the Board has ruled that immigration judges lack authority to hold bond hearings for this group of aliens. *See Matter of A-W-*, 25 I&N Dec. 45 (BIA 2009). DHS examines *Matter of A-W-* in greater detail in Section IV, *infra*.

10

court must look beyond that plain language where a literal interpretation of this language would thwart the purpose of the overall statutory scheme, would lead to an absurd result, or would otherwise produce a result demonstrably at odds with the intentions of the drafters." (quotation marks and citations omitted)).

In *Matter of X-K-*, the BIA held that an alien who is initially placed in expedited removal under INA § 235(b)(1)(A) as a member of the class of aliens designated pursuant to the authority in INA § 235(b)(1)(A)(iii), but who is subsequently placed in INA § 240 removal proceedings following a positive credible fear determination, is eligible for a custody redetermination hearing before an immigration judge unless the alien is a member of any of the listed classes of aliens who are specifically excluded from the custody jurisdiction of immigration judges pursuant to 8 C.F.R. § 1003.19(h)(2)(i). *See* 23 I&N Dec. at 731. Turning to the general custody authority of immigration judges at 8 C.F.R. § 1003.19(h)(2), the BIA observed that "arriving aliens" in removal proceedings are specifically excluded, but there is no parallel provision pertaining to "certain other aliens" who are initially processed for expedited removal and placed in removal proceedings following a positive credible fear determination. *See id.* at 735. The BIA noted that a "regulatory gap" exists, and then concluded that immigration judges must have authority to hold bond hearings for the class of "certain other aliens" described in INA § 235(b)(1)(A)(iii), since they are not expressly precluded from doing so under 8 C.F.R. § 1003.19. *See id.*

Although the Board correctly viewed 8 C.F.R. § 1003.19's silence with respect to "certain other aliens" as a "regulatory gap," its resolution of that issue in *Matter of X-K-* was analytically flawed and contrary to INA § 235(b), and it has led to anomalous results. A key consideration of the BIA was that DHS had initiated removal proceedings through the filing of an NTA. *See id.* at 733-34. Focusing on this fact, the BIA failed to analyze under what custody

11

(

authority DHS detained the respondent.  Indeed, the BIA appears to have assumed, without

further explanation, that DHS's custody authority automatically converted from INA § 235 to

INA § 236 by the mere filing of the NTA.  The BIA also reasoned that, once there is a final

positive credible fear determination, an alien is no longer subject to the expedited removal

statute.  *See id.* at 733.  The BIA stated that the INA and its implementing regulations provided

no specific guidance regarding the custody authority over an alien who is initially processed for

expedited removal but who is later placed in INA § 240 removal proceedings following a

credible fear determination.  *See id.* at 734.

     The INA is not silent, however.  Subsection 235(b)(1)(B)(ii) specifically states that "if

the [asylum] officer determines at the time of the interview that an alien has a credible fear of

persecution . . . the alien shall be detained for further consideration of the application for

asylum."  That statutory directive would be frustrated if immigration judges were authorized to

order DHS to release aliens, like the respondent, on bond pending further consideration of their

asylum applications.  Additionally, the legislative history relied upon by the BIA establishes that

it was the intent of Congress that an alien like the respondent remain detained even if referred for

INA § 240 removal proceedings.  *See* H.R. Conf. Rep. No. 104-828, at 209 (1996) ("[I]f the

officer finds that the alien has a credible fear of persecution, the alien shall be detained for

further consideration of the application for asylum under normal non-expedited removal

proceedings").  Further, the availability of immigration judge bond proceedings to "certain other

aliens" determined to have a credible fear is anomalous, because the regulations make clear that

aliens pending the expedited removal process under INA § 235(b), whether claiming credible

fear or not, may be released only in the sole unreviewable discretion of DHS.  *See* 8 C.F.R.

§ 235.3(b)(4)(ii) (pending the credible fear determination by an asylum officer and any review of

A ██████

12

that determination by an immigration judge, the alien shall be detained); *see also* 8 C.F.R.

§§ 208.30(f) (parole of aliens found to have established a credible fear may be considered only in

accordance with INA § 212(d)(5) and 8 C.F.R. § 212.5), 235.3(b)(2)(iii) (an alien whose

inadmissibility is being considered under INA § 235 or who has been ordered removed under

INA § 235 shall be detained pending determination of inadmissibility and removal); *cf. Matter of*

*Castillo-Padilla*, 25 I&N Dec. 257. 263 (BIA 2010) (clarifying that parole into the United States

by DHS under INA § 212(d)(5) is a distinct and different procedure from release on "conditional

parole" by an immigration judge under INA § 236(a)(2)(B)). Moreover, it is anomalous that

aliens who commit the crime of illegally entering or re-entering the United States, *see generally*

8 U.S.C. §§ 1325, 1326, and only seek asylum once apprehended and placed into the expedited

removal process as a "certain other alien" would receive more favorable custody consideration

than an alien who arrives in the United States at a port-of-entry, presents him- or herself for

inspection, and immediately seeks asylum from U.S. officials. *Cf.* United Nations Convention

Relating to the Status of Refugees art. 31(1), 189 U.N.T.S. 150, 174 (July 28, 1951) (committing

Convention signatories not to "impose penalties, on account of [] illegal entry or presence, on

refugees who, coming directly from a territory where their life or freedom would be

threatened..., enter or are present in their territory without authorization, *provided they present*

*themselves without delay* to the authorities and show good cause for their illegal entry or

presence.") (emphasis added).

  The BIA erred in *Matter of X-K-* when it found that an alien is no longer subject to

expedited removal procedures on account of his placement in removal proceedings under INA

§ 240 through the filing of a NTA. Since the respondent here expressed fear of persecution if

returned to his country of nationality, he was referred to an asylum officer for a credible fear

interview, as part of the overarching expedited removal process. *See* INA § 235(b)(1)(A)(ii),
(B); 8 C.F.R. §§ 235.3(b)(4), 1235.3(b)(4).  After an interview conducted in accordance with
8 C.F.R. § 208.30, the asylum officer found the respondent had a credible fear of persecution.[9]
The asylum officer then issued an NTA dated May 31, 2018, referring the respondent's claim to
an immigration judge for full consideration of the asylum and withholding of removal claim in
removal proceedings under section 240 of the Act.  *See generally* 8 C.F.R. § 208.30(f).  The
referral of the respondent to INA § 240 removal proceedings through the filing of an NTA is part
of the expedited removal process, and for detention purposes, an alien like the respondent
remains in DHS custody pending further consideration of his application for asylum in removal
proceedings.  *See* INA § 235(b)(1)(B)(ii) (stating that "if the [asylum] officer determines at the
time of the interview that an alien has a credible fear of persecution . . . the alien shall be
detained for further consideration of the application for asylum").

III.  **The Supreme Court's Reasoning in *Jennings v. Rodriguez* Supports Overruling
      *Matter of X-K-*.**

In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court reversed the decision
of the U.S. Court of Appeals for the Ninth Circuit in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th
Cir. 2015).  In doing so, the Court determined that the Ninth Circuit had erred in applying the
canon of constitutional avoidance because the plain language of the relevant sections of the INA,
including provisions pertaining to expedited removal, imposes no limit on the length of
detention.  *See Jennings*, 138 S. Ct. at 842.  In relevant part, the Court ruled that INA
§ 235(b)(1)(B)(ii) mandates detention "for further consideration of the application for asylum" of

---

[9] The term "credible fear" means that there is a "significant possibility, taking into account the credibility of the
statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the
alien could establish eligibility for asylum" under INA § 208.  INA § 235(b)(1)(B)(v).

14

aliens determined to have a credible fear of persecution, while INA § 235(b)(2)(A) requires detention "for a [removal] proceeding" of aliens seeking admission outside the expedited removal process. *Id.* at 844. According to the Court, the plain language of these clauses means that detention must continue until immigration officers have finished considering the application for asylum or until removal proceedings have concluded. *See id.* The Court also stated that, "read most naturally," INA § 235(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded, and "nothing in the statutory text imposes a limit on the length of detention, and neither provision says anything whatsoever about bond hearings." *Id.* at 842. Consequently, the Court held that INA § 235(b)(1) and (b)(2) "mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id.* at 845.

In this case, where the respondent is detained under INA § 235, neither that statute nor the regulations give an immigration judge the authority to re-determine the respondent's custody or bond. The immigration judge appears to have relied on the BIA's interpretation of the regulations governing bond authority in *Matter of X-K-* to determine that the respondent was eligible for a bond hearing. Based on the Supreme Court's reasoning in *Jennings*, however, immigration judges may not re-determine custody or bond for aliens such as the respondent, as they are subject to mandatory detention throughout their removal proceedings. Therefore, the Attorney General should overrule *Matter of X-K-*.

### IV. Aliens Determined to Have a Credible Fear of Persecution and Referred for Removal Proceedings are Detained under INA § 235(b), Not § 236.

The applicable regulations can and should be interpreted in a manner more consistent with the statute, and more in line with the Supreme Court's ruling in *Jennings*, than the approach taken by the Board in *Matter of X-K-*. Under this more consistent interpretation of the

15

A

ı                                                        ı

regulations, immigration judges lack bond authority in the cases of aliens detained pursuant to the expedited removal framework. Instead of reading the regulatory gap in 8 C.F.R. § 1003.19 as a license to expand immigration judge bond authority under INA § 236, the better reading is that the gap reflects a lack of expressly delegated authority for immigration judges to review DHS decisions to detain aliens under other provisions of the INA, including INA § 235. *Cf. Matter of S-O-G- & F-D-B-*, 27 I&N Dec. 462, 465 (A.G. 2018) (reiterating that immigration judges may "exercise *only* the authority provided by statute or delegated by the Attorney General." (quoting *Matter of Castro-Tum*, 27 I&N Dec. 271, 283 (A.G. 2018) (emphasis added)).

The decision to detain aliens subject to expedited removal under INA § 235 is not reviewable by immigration judges under INA § 236. In fact, immigration judge bond authority is expressly limited to aliens apprehended and detained pursuant to INA § 236. The regulations provide that immigration judges have authority to review "[c]ustody and bond determinations made by the [DHS] pursuant to 8 CFR part 1236," not part 235. *See* 8 C.F.R. § 1003.19(a); *see also* 69 Fed. Reg. at 48,879 (stating that "[a]liens subject to expedited removal procedures under section 235 of the Act (including those aliens who are referred after a positive credible fear determination to an immigration judge for proceedings under section 240 of the Act) are not eligible for bond, and therefore are not eligible for bond redetermination before an immigration judge"). The regulations at 8 C.F.R. § 1236.1(a)-(d) "only provide immigration judges with authority to redetermine the conditions of custody imposed by [DHS] *with respect to aliens against whom an arrest warrant has been issued* in conjunction with the service of a Notice to Appear. . . ." *Matter of A-W-*, 25 I&N Dec. at 46 (holding that aliens admitted pursuant to the

(                                        |

visa waiver program and referred to asylum only proceedings are ineligible for a bond redetermination by an immigration judge) (emphasis added).[10]

      This case illustrates how the statutory and regulatory framework applicable to the detention of aliens processed for expedited removal differs from general pre-order detention. Here, DHS processed the respondent for expedited removal and detained him pursuant to INA § 235, not INA § 236. In fact, precisely because the respondent was subject to the expedited removal detention framework, DHS never issued a warrant of arrest (Form I-200), which it normally must do under the regulations for pre-order detention under INA § 236. *See* 8 C.F.R. §§ 236.1(b)(1), 1236.1(b)(1) ("At the time of issuance of the NTA . . . the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."). That regulation further provides that a "warrant of arrest may be issued only by those immigration officers listed in section 287.5(e)(2)." *Id* Yet, asylum officers, who are the DHS officials authorized to make credible fear determinations and refer cases for INA § 240 proceedings, are not among the officers authorized to issue a warrant of arrest or otherwise to make custody determinations. *See* 8 C.F.R. §§ 287.5(c)(2), 236.1(b)(1). The BIA, in *Matter of X-K-*, inordinately focused on the issuance of the charging document (i.e., the NTA) as the trigger for INA § 236 bond authority, rather than considering DHS's underlying statutory authority for arresting and detaining the alien in the first place. Had it done the latter, the BIA would have

---

[10] The former regulatory framework that conferred upon immigration judges the authority to redetermine conditions of custody imposed by the former Immigration and Naturalization Service extended only to aliens in deportation proceedings under former section 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252 (1992), but not exclusion proceedings under former section 236 of the Act, 8 U.S.C. § 1226 (1992). *See* 8 C.F.R. § 242.2(d) (1992-1996). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C., 110 Stat. 3009-546, created a single unified removal proceeding in lieu of exclusion and deportation proceedings, *see Matter of Rosas*, 22 I&N Dec. 616 (BIA 1999), but the limited nature of the delegation of authority to immigration judges to redetermine custody is certainly nothing new.

recognized that the respondent in *Matter of X-K-* was detained under INA § 235, not INA § 236, and therefore should not have authorized a bond hearing.

Similarly, in the first bond order issued in the respondent's case, the immigration judge misread *Matter of A-W-* when invoking that case as authority for holding a bond hearing. *See* IJ Bond Memo I at 1. By focusing solely on the issuance of an NTA as the trigger for bond authority, the immigration judge ignored the additional requirement in the regulations that the relevant immigration detention occur pursuant to a warrant of arrest. *Matter of A-W-*, 25 I&N Dec. at 46. Indeed, bond hearings are permitted even without the issuance of an NTA. *See* 8 C.F.R. § 1003.14(a) (providing that an NTA is not required to be filed with the immigration court to commence bond proceedings pursuant to 8 C.F.R. §§ 1003.19, 1236.1(d), and 1240.2(b)). The immigration judge should have considered the particular custody authority under which DHS detains a respondent.[11] It is erroneous to find that the issuance of an NTA alone confers authority upon an immigration judge to redetermine custody. Rather, an arrest warrant (Form I-200) must also be issued, reflecting that DHS is exercising custody authority under INA § 236. It follows that aliens like the respondent, who are arrested and detained pursuant to INA § 235, rather than INA § 236, are not eligible for bond hearings.

Further, where an asylum officer issues an NTA pursuant to expedited removal procedures, the credible fear determination, the referral, and the removal proceedings are all part of a continuum of the expedited removal process that does not end until the conclusion of removal proceedings, when a final ruling on the application for asylum is made. *See* INA

---

[11] DHS is required to issue Form I-200, Warrant of Arrest, when detaining aliens pursuant to INA § 236. *See* 8 C.F.R. §§ 236.1(b) and 1236.1(b). DHS is not required to issue a warrant of arrest when detaining aliens pursuant to INA § 235(b) (expedited removal); INA § 238(b) (administrative removal of aggravated felons); INA § 217(c) (visa waiver program); or INA § 241(a)(5) (reinstatement of removal). *But see* 8 C.F.R. § 1241.14(a)(2) (continued detention of removable aliens based on special circumstances). DHS did not issue a Form I-200 to the respondent in this case since it exercised custody authority pursuant to INA § 235(b).

18

§ 235(b)(1)(B)(ii) ("If the officer determines at the time of the interview that an alien has a credible fear of persecution ... the alien shall be detained for further consideration of the application for asylum."). The credible fear interview, after all, is simply a screening procedure and does not include the same degree of formality or process present in removal proceedings before an immigration judge. *Compare* 8 C.F.R. § 208.30 *with id.* pt. 1240. "The purpose of the [credible fear] interview is to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture." 8 C.F.R. § 208.30(d). Credible fear interviews are used to screen for possible asylum eligibility and not to develop every element of an applicant's protection claim.

In addition, the BIA's mistaken reliance in *Matter of X-K-* on the absence in 8 C.F.R. § 1003.19(h)(2)(i) of a reference to section 235(b)(1)(a)(iii) "certain other aliens" like the respondent overlooks the fact that, before reaching that particular regulatory provision, an immigration judge must first overcome the 8 C.F.R. § 1003.19(a) threshold issue: does DHS's custody in the case arise under INA § 236? The Attorney General should conclude that immigration judges and, by extension, the Board have no authority to conduct bond hearings where DHS's authority to detain the alien is predicated instead upon INA § 235.

## V.   The Attorney General May Issue a Decision in This Case Even Though DHS Released the Respondent.

The authority of the Attorney General to refer cases to himself for review is well-established. *Matter of Castro-Tum*, 27 I&N Dec. at 280 ("When exercising my authority to oversee immigration law, I may choose between rulemaking or adjudication."); *see also* INA § 103(g)(2) (providing that the Attorney General may "review . . . administrative determinations in immigration proceedings"); 8 C.F.R. § 1003.1(h)(1) (discussing the referral process). Pursuant to the regulations, "the Board shall refer to the Attorney General for review of its

19

029a

decision all cases" that the Attorney General directs the Board to refer to him. 8 C.F.R. § 1003.1(h)(1). In this case, the Attorney General appropriately exercised his authority to order referral of the BIA's decision on the respondent's appeal of the denial of his application for a change in custody status.[12] *See Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018).

As noted in the recitation of facts, DHS released the respondent when he posted bond pursuant to the second immigration judge bond order. *See* IJ Bond Order II; Form I-830. The release from custody occurred one day before the BIA ruled on the appeal of the first bond decision. *Compare* Form I-180 (Sept. 27, 2018) *with* Maninder Pal Singh, A216 183 613, at 1 (BIA Sept. 28, 2018). However, the 30-day appeal period for challenging the second bond order did not expire until September 17, 2018. *See* IJ Bond Order II; *see also* 8 C.F.R. § 1003.38(b). Nevertheless, neither party appealed the second bond decision. Also, as permitted under the regulations,[13] the respondent had sought the second bond redetermination before exhausting his appeal of the initial bond decision. *See* Motion for New Bond on Changed Circumstances. Ordinarily, the issuance of a second bond decision during the pendency of an appeal will moot the initial bond decision. *See generally Matter of Valles*, 21 I&N Dec. 769, 773 (BIA 1997), *modified on other grounds by Matter of Joseph*, 22 I&N Dec. 660, 669 (BIA 1999).

In *Matter of Valles*, the Board held, "[i]f, after a bond appeal has been filed by the alien, the Immigration Judge grants an alien's bond redetermination request, that appeal is rendered moot, and the Board will return the record to the Immigration Court promptly." *Id.* at 773. The Board's holding established the rule that an immigration judge is not divested of jurisdiction over

---

[12] M▮▮▮▮▮ S▮▮▮, A▮▮▮▮▮▮ (BIA July 31, 2018).

[13] "After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

A▮▮▮▮▮

a second bond redetermination request when an appeal has been timely filed with the Board from a previous bond decision. *See id.* at 769. Accordingly, the second bond redetermination request in *Matter of Valles* was allowed to proceed to a decision; and the appeal to the Board was deemed moot and remanded without adjudication, for expediency and in order to preserve agency resources that would otherwise be expended on adjudicating multiple concurrent bond requests. *See id.* at 772 ("Allowing an Immigration Judge the opportunity to hear a bond redetermination request, without the need to first seek a remand from the Board, is a more expeditious procedure, when every day represents either an unwarranted delay in the release of an alien or a delay in the immediate detention of an alien who represents a risk of flight or a threat to the community.").

The rule in *Matter of Valles* has as its purpose that multiple bond appeals or requests for custody redetermination by the same alien are not pending concurrently. The considerations for applying mootness in *Matter of Valles*, however, do not apply equally to the respondent's case. Because *Matter of Valles* is distinguishable,[14] any concerns about mootness should not prevent the Attorney General from issuing a decision in this case, for at least four reasons.

First, the BIA, and by logical extension the Attorney General, are not subject to the case-or-controversy requirement of Article III courts.[15] *See Matter of Luis-Rodriguez*, 22 I&N Dec. 747, 752-54 (BIA 1999); *see also Jimenez-Barrera v. Holder*, 350 F. App'x 137, 138 (9th Cir. 2009) ("*Luis* does not stand for the proposition that a forcible removal of a petitioner from the United States by the government automatically moots a pending appeal. In fact, the holding in

---

[14] In addition to distinguishing *Matter of Valles*, the Attorney General is not bound to follow it. *See Matter of A-B-*, 27 I&N Dec. 247, 250 (A.G. 2018) ("Board precedent, however, does not bind my ultimate decision in this matter.").

[15] U.S. CONST. art. III, § 2, cl. 1.

*Luis* was that the departure of the petitioner in that case did not moot the appeal."); *cf. Matter of Cerda-Reyes*, 26 I&N Dec. 528, 528 n.3 (BIA 2015) (dismissing cases as moot "as a matter of prudence"); *Matter of Castro-Tum*, 27 I&N Dec. at 280 ("When exercising my authority to oversee immigration law, I may choose between rulemaking or adjudication.").

Second, since the respondent's underlying removal proceedings remain pending, the issue of bond eligibility is not moot because both the alien and DHS have a continuing interest in whether the respondent is subject to detention without bond pending a final administrative order in his case. *See Matter of Valles*, 21 I&N Dec. at 771 ("[N]o bond decision is final as long as the alien remains subject to a bond."); *cf. DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (observing that a case is moot when the court's decision "cannot affect the rights of litigants in the case before them"); *Oregon v. F.E.R.C.*, 636 F.3d 1203, 1206 (9th Cir. 2011) ("A case is moot when it has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" (internal citations omitted)).

Third, even if the fact of the respondent's release from DHS custody were to implicate the justiciability of this matter by the Attorney General, an exception to mootness exists where the issue is "capable of repetition but evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514 (1911). As reflected in this case, a respondent who is permitted to seek a new bond redetermination, even though an appeal to the Board remains pending, could be released from DHS custody before the initial bond appeal is fully adjudicated by the Board. Also, the regulations do not currently provide for direct review of immigration judge decisions by referral to the Attorney General. *Compare* 8 C.F.R. § 1003.1(h)(1) (referral of Board decision) *with* INA § 103(g)(2) (providing that the Attorney General may "review . . . administrative determinations in immigration proceedings"); *see also, e.g., Matter of M-G-G-*, 27 I&N Dec. 475 (A.G. 2018)

A███████

22

(declining to review a referred case on the same issue present in this matter because the alien had been removed from the United States).  Therefore, if the mootness doctrine were always strictly applied to legal issues arising in the context of bond appeals, an alien could thwart referral of his bond decision to the Attorney General merely by exercising the right to seek a new bond redetermination under 8 C.F.R. § 1003.19(e) or by satisfying the conditions of the bond order.

Finally, the Supreme Court's recent decision in *Jennings* strongly counsels in favor of promptly resolving the legal issue presented in this case, specifically, whether immigration judges may hold bond hearings for aliens screened for expedited removal proceedings under INA § 235(b)(1)(A), given the plain language reading of the statutory framework for detaining the same class of aliens in *Jennings. See Matter of A-B-*, 27 I&N Dec. at 250 (explaining that the Attorney General retains full decision-making authority under the immigration statues, and when he requests briefing on a purely legal question, the parties are encouraged to focus their briefing on that question).

## CONCLUSION

Based on the foregoing, DHS respectfully requests that the Attorney General overrule *Matter of X-K-*.[16]  DHS urges the Attorney General to hold that immigration judges lack authority to conduct bond hearings for aliens, like the respondent, whom DHS detains under INA § 235(b)(1)(A)(iii) even after the alien establishes credible fear and is referred for INA § 240

---

[16] DHS anticipates an immediate and significant impact on detention operations should *Matter of X-K-* be overruled. DHS statistics for FY2017 show 54,187 case receipts involving "Inland Credible Fear" cases, which are those cases to which *X-K-* applied. *See* USCIS CREDIBLE FEAR WORKLOAD REPORT SUMMARY FY2017, *available at* https://www.uscis.gov/sites/default/files/USCIS/Outreach/Upcoming%20National%20Engagements/FY18CFandRF stats_2018_06_30.pdf.  Positive credible fear findings were made in 42,883 cases. *Id.* This entire population would no longer be eligible for release on bond by an immigration judge and would immediately be subject to detention and could only be released on parole in the discretion of DHS under INA § 212(d)(5).  Therefore, should there be a change in the legal precedent, DHS requests that the effective date of any decision overruling *Matter of X-K-* be delayed for 90 days from issuance so that DHS may conduct necessary operational planning to effectively implement any such decision.

removal proceedings to further consider the respondent's asylum claim.  If, however, the

Attorney General issues a decision that does not resolve the regulatory gap in the detention

scheme to clarify that detainees in custody pursuant to INA § 235 cannot be afforded bond

hearings before immigration judges, DHS stands ready to engage in coordinated rulemaking with

the Department of Justice to align both agencies' regulations with the Supreme Court's decision

in *Jennings*.

      Respectfully submitted this 2d day of November 2018,

                                      James T. Dehn
                                      Associate Legal Advisor
                                      Immigration Law and Practice Division
                                      U.S. Immigration and Customs Enforcement
                                      U.S. Department of Homeland Security

24



## PROOF OF SERVICE

On November 2, 2018, I, Fredrick Gaskins, Mission Support Specialist, Immigration Law and Practice Division, mailed or delivered a copy of the U.S. Department of Homeland Security Brief on Referral to the Attorney General and any attached pages to the respondent and his last attorney of record, addressed as follows:



And

Luis Macias
Law Office of Luis Macias, Jr. APC
642 Third Avenue, Suite K
Chula Vista, CA 91910

Via UPS next day delivery service.

Fredrick Gaskins