E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03126-S1**

**5/8/2023 11:35 AM**

**TIANA P. GARNER, CLERK**

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior** or ☒ **State Court of** Gwinnett _____ **County**

| **For Clerk Use Only** | |
|---|---|
| **Date Filed** _____ | **Case Number** _____ |
| **MM-DD-YYYY** | 23-C-03126-S1 |

**Plaintiff(s)**

Stroman   James

| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
|---|---|---|---|---|
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |

**Defendant(s)**

PepsiCo, Inc.

| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
|---|---|---|---|---|
| John Doe 1 | | | | |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| John Doe 2 | | | | |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |

**Plaintiff's Attorney** Michael Ruppersburg     **Bar Number** 432211     **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☒ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Dissolution/Divorce/Separate Maintenance**
- ☐ **Family Violence Petition**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

**Post-Judgment – Check One Case Type**

- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Modification**
- ☐ **Other/Administrative**

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**                  **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03126-S1**
**5/8/2023 11:35 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

JAMES STROMAN,

        Plaintiff,

v.

PEPSICO, INC.; JOHN DOE 1;
JOHN DOE 2;

        Defendants.

**JURY TRIAL DEMANDED**

CIVIL ACTION
FILE NO. _____
      23-C-03126-S1

## COMPLAINT FOR DAMAGES

Plaintiff James Stroman brings this complaint against Defendants PepsiCo, Inc., John Doe 1, and John Doe 2, respectfully showing the Court the following:

## PARTIES AND JURISDICTION

1.

Mr. Stroman is a citizen of the state of Georgia.

2.

Defendant PepsiCo, Inc. ("PepsiCo") is a foreign for-profit corporation with its principal place of business at 700 Anderson Hill Road, Purchase, NY 10577. PepsiCo may be served through its registered agent, CT Corporation System, at 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia 30046.

3.

Upon information and belief, at all times relevant to this Complaint, John Doe 1 was employed by PepsiCo as a service technician. Upon information and belief, John Doe 1 is a resident and citizen of Georgia, but his address is currently unknown. Upon ascertaining the identity of John Doe 1 through discovery, Mr. Stroman will amend the Complaint to identify John Doe 1 and his address and will perfect service upon him in accordance with Georgia law.

4.

Upon information and belief, at all times relevant to this Complaint, John Doe 2 was employed by PepsiCo as a service technician. Upon information and belief, John Doe 2 is a resident and citizen of Georgia, but his address is currently unknown. Upon ascertaining the identity of John Doe 2, Mr. Stroman will amend the Complaint to identify John Doe 2 and his address and will perfect service upon him in accordance with Georgia law.

5.

Pursuant to Ga. Const., Art 6, § 2, ¶ IV, VI and O.C.G.A. 14-2-510(b)(1), venue is proper in Gwinnett County because PepsiCo maintains its registered office in Gwinnett County. This Court has jurisdiction over this action pursuant to O.C.G.A. § 15-7-4(a)(2).

## **BACKGROUND**

6.

James Stroman owns Café Sundaé located at 650 Henderson Drive, Suite 501 in Cartersville, Georgia.

7.

On July 8, 2021, John Does 1 and 2 arrived at Café Sundaé to install a soda fountain machine for PepsiCo.

8.

At the time of the installation, a fire extinguisher was hanging on the wall next to where John Does 1 and 2 were installing the back-of-the-store components of the soda fountain.

9.

The photograph below, though taken after the subject incident, shows the location of the fire extinguisher relative to the soda fountain components at the time of the installation.



10.

In connection with their efforts to install the soda fountain, John Doe 1 climbed on a ladder next to the fire extinguisher so that he could feed soda supply lines provided to him by John Doe 2 up through the drop ceiling in the kitchen and back down through the drop ceiling in the food service area in the front of the store where the soda-dispensing component of the fountain machine was to be located.

11.

John Does 1 and 2 did not remove the fire extinguisher from the wall before taking the actions described in Paragraph 10.

12.

As John Does 1 and 2 were feeding the supply lines through the ceiling, John Doe 2 dislodged the fire extinguisher from the wall.

13.

The fire extinguisher fell to the ground.  At impact, the fire extinguisher began spraying its contents throughout the kitchen and into the front of the restaurant where the service and dining areas were located.

14.

The yellow chemical powder emitted by the fire extinguisher covered every surface in the building. Mr. Stroman and his wife cleaned the substance over the course of several hours.

15.

The yellow chemical powder emitted from the fire extinguisher consisted primarily of monoammonium phosphate.

16.

Monoammonium phosphate is a known irritant to the respiratory system, including the mucous membranes that line the nasal cavity, throat, and sinuses.

17.

Over the next several days, Mr. Stroman developed severe pressure, pain, and swelling in his head, face, and nose.

18.

On July 11, 2021, Mr. Stroman presented to the Emergency Department at Southern Regional Medical Center in Riverdale, Georgia with a stated complaint of "pressure in head/nose swollen." He was diagnosed with "acute maxillary sinusitis" and discharged with at-home treatment instructions.

19.

Sinusitis is the inflammation or swelling of the mucous membranes lining the sinuses. Sinusitis is caused by, *inter alia*, chemicals or irritants in the air.  When mucous membranes become inflamed, mucus inside the sinuses can become trapped, which creates additional pressure that can contribute to increased pain.  Bacteria can also proliferate within the trapped mucus, leading to a bacterial sinus infection.

20.

Mr. Stroman's pain persisted after discharge from Southern Regional.  He also began to develop an abscess in his left nostril.  Abscesses are generally caused by bacterial infections.  Sinusitis is one cause of nasal abscesses.

21.

On July 13, 2021, Mr. Stroman presented to Spencer Family Medicine for further evaluation of his condition, including the left nostril abscess. Mr. Stroman was diagnosed with an acute upper respiratory infection and underwent an incision and drainage procedure for the abscess. Mr. Stroman was prescribed antibiotics for the infection.

22.

Over the next several weeks, Mr. Stroman noticed that he had lost his sense of taste and smell.

23.

Sinusitis/sinus infection are known causes of loss of taste and smell.

24.

On September 7, 2021, Mr. Stroman presented to Northwest ENT and Allergy Center in Cartersville, GA with a chief complaint of "loss of smell and taste post exposure to bursted fire extinguisher." Dr. Bryan Stringham diagnosed Mr. Stroman with face pain, anosmia (loss of smell),

and bilateral impacted cerumen.  A nasal endoscopy revealed findings of continued swelling and redness in the nasal passages. Dr. Stringham prescribed Mr. Stroman steroids and antibiotics and ordered a CT scan of his sinuses.

25.

On September 21, 2021, Dr. Stringham reviewed the CT scan and diagnosed Mr. Stroman with anosmia, deviated septum, chronic frontal sinusitis, chronic maxillary sinusitis, and inferior turbinate hypertrophy (enlarged/swollen nasal tissues).  Dr. Stringham recommended that Mr. Stroman undergo surgery to address these conditions.

26.

On October 26, 2021, Dr. Stringham performed the following procedures on Mr. Stroman: septoplasty; bilateral inferior turbinate reduction; and functional endoscopic sinus surgery.

27.

Despite these surgeries, Mr. Stroman still cannot taste or smell.

28.

Dr. Stringham attributes Mr. Stroman's loss of taste and smell to the discharge of the fire extinguisher on July 8, 2021 because Mr. Stroman had no history of previous sinus disease or loss of taste/smell before this incident, because Mr. Stroman's recovery for the surgery was uneventful, and because Mr. Stroman has tested negative for Covid-19 on multiple occasions.

29.

Because Mr. Stroman's sense of taste and smell has not returned for more than 18 months, Dr. Stringham believes that Mr. Stroman's loss of these senses is, more likely than not, permanent.

## COUNT I – NEGLIGENCE OF JOHN DOES 1 AND 2

30.

Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 29 above as if fully restated herein.

31.

At the time John Does 1 and 2 were working in the area of the wall-mounted fire extinguisher, they knew or should have known that there was a risk that they could dislodge the fire extinguisher from the wall during their work and that injury or harm to others could occur as a result.

32.

When working in the area of the wall-mounted fire extinguisher, John Does 1 and 2 were required to exercise ordinary care—that degree of care exercised by ordinarily prudent persons under the same or similar circumstances—to prevent harm to others in the building, including Mr. Stroman.

33.

By failing to remove the wall-mounted fire extinguisher from the wall before they began installing the soda fountain machine, John Does 1 and 2 failed to exercise ordinary care. The failure to remove the wall-mounted fire extinguisher from the wall before they began their work was unreasonable in light of the recognizable risk of harm posed by a fire extinguisher detaching from the wall and falling to the ground.

34.

John Does 1 and 2 further failed to exercise ordinary care by failing to take appropriate precautions to ensure that they did not dislodge the fire extinguisher from the wall while installing the soda fountain machine. Their failures included, but were not limited to, the failure to position their ladder and their bodies away from the fire extinguisher while feeding the supply lines through the

ceiling in order to eliminate the risk of dislodging the fire extinguisher from the wall. The failure to take this precaution and others was unreasonable in light of the recognizable risk of harm posed by a fire extinguisher detaching from the wall and falling to the ground.

35.

The negligence of John Does 1 and 2 proximately caused the fire extinguisher to detach from the wall, hit the ground, and discharge its contents, which in turn caused Mr. Stroman to suffer injuries, including severe pain and pressure in his face and nose, the development of a nasal abscess, and the permanent loss of his senses of taste and smell. These physical injuries have in turn caused Mr. Stroman to suffer emotional and mental distress.

36.

As a result of the negligence of John Does 1 and 2, Mr. Stroman has also incurred medical expenses that he would not have otherwise incurred, which are listed below. Mr. Stroman continues to incur medical expenses as a result of the negligence of John Does 1 and 2.

| Provider | Amt. Billed |
|---|---|
| Spencer Family Medicine | $1,199.00 |
| Southern Regional Medical Center/Harmony Grove ER Physicians | $392.00 |
| Northwest ENT & Allergy Center | $13,638.82 |

## COUNT II – VICARIOUS LIABILITY OF DEFENDANT PEPSICO

37.

Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 36 above as if fully restated herein.

- 8 -

38.

At the time John Does 1 and 2 dislodged the fire extinguisher from the wall of Mr. Stroman's restaurant on July 8, 2021, they were employed by PepsiCo and were acting within the course and scope of their employment with PepsiCo.

39.

As a result, PepsiCo is vicariously liable for the negligent acts of John Does 1 and 2 and thus for the damages their acts proximately caused to Mr. Stroman, which are outlined above.

## <u>COUNT III – NEGLIGENT TRAINING BY DEFENDANT PEPSICO</u>

40.

Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 29 above as if fully restated herein.

41.

PepsiCo failed to adequately train its employees to ensure that they knew to either (1) remove wall-mounted fire extinguishers before working near them; or (2) position themselves away from wall-mounted fire extinguishers to eliminate the risks of fire extinguishers dislodging and causing injury to others.

42.

PepsiCo knew or should have known that its technicians installing soda fountain machines would be working in or around fire extinguishers in kitchens and other back-of-store environments.

43.

PepsiCo knew or should have known that wall-mounted fire extinguishers could injure or harm others if they were dislodged from the wall by employees during the course of their work.

44.

PepsiCo failed to adequately train its technicians installing soda fountain machines to ensure that they knew to either (1) remove wall-mounted fire extinguishers before working near them; (2) position themselves away from wall-mounted fire extinguishers to eliminate the risks of fire extinguishers dislodging and causing injury to others; or (3) take other reasonable precautions to ensure that fire extinguishers were not dislodged from walls.  By failing to so train its employees, PepsiCo failed to exercise that degree of care exercised by ordinarily prudent employers or businesses under the same or similar circumstances.  PepsiCo's failure to train its employees was unreasonable in light of the recognizable risk of harm posed by a fire extinguisher detaching from the wall and falling to the ground.

45.

PepsiCo's negligent failure to train its employees proximately caused the fire extinguisher to detach from the wall, hit the ground, and discharge its contents, which in turn caused the injuries to Mr. Stroman described in Paragraphs 35 and 36.

**WHEREFORE**, Mr. Stroman prays that he has a trial on all issues and judgment against Defendants as follows:

a.      That he recover the full value of his past and future medical expenses in an amount to be proved at trial but no less than $15,229.82

b.      That he recover for physical and mental pain and suffering in an amount to be determined by the enlightened conscience of a jury; and

c.      That he recover such other and further relief as is just and proper.

This 8th day of May, 2023.

/s/ *Michael Ruppersburg*
Michael Ruppersburg
Georgia Bar No. 432211
Charles W. Ruffin
Georgia Bar No. 829668
*Counsel for Plaintiff*

BLASINGAME, BURCH,
GARRARD & ASHLEY, P.C.
P.O. Box 832
Athens, Georgia 30603
Tel: (706) 354-4000
Fax: (706) 354-4544

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03126-S1**
**5/8/2023 11:35 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

JAMES STROMAN,

      Plaintiff,

v.

PEPSICO, INC.; JOHN DOE 1;
JOHN DOE 2;

      Defendants.

**JURY TRIAL DEMANDED**

23-C-03126-S1

CIVIL ACTION
FILE NO. _____

## PLAINTIFF'S FIRST INTERROGATORIES TO
## DEFENDANT PEPSICO, INC.

Plaintiff, pursuant to O.C.G.A. § 9-11-33, submits to Defendant PepsiCo, Inc. (hereinafter referred to as "you", "your", or "PepsiCo") for response within forty-five days after service hereof, in the form provided by law, the following interrogatories.

You are required, when answering these interrogatories, to furnish all information that is available to you, your attorneys or agents, and anyone else acting on your behalf. If the complete answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory unless negated by the context:

**DEFINITIONS**

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, video recordings, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations, including every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Identify" or "Identity", when used in reference to:

(a) an individual, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b) a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c) <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of the person signing it, type of document (i.e., a letter, memorandum, notation, book, telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## **INTERROGATORIES**

1.

Identify the following persons:

a.      John Does 1 and 2, the service technicians who installed the soda fountain machine at Café Sundaé at 650 Henderson Drive, Suite 501 in Cartersville, GA on July 8, 2021.

b.      All persons with knowledge or information relevant to the allegations in the Complaint and/or your defenses thereto;

c.      The supervisors and/or managers for John Does 1 and 2 on and before July 8, 2021.

d.      All persons, other than attorneys, with whom John Does 1 and 2 have spoken regarding the July 8, 2021 incident referenced in the Complaint.

2.

Please state whether there was any investigation or evaluation of the incident referenced in the Complaint and, if there was, please identify the individuals who conducted the investigation,

the dates the investigation was performed, and any documents that were collected or generated through the investigation.

3.

Has John Doe 1 or John Doe 2 ever been suspended, reprimanded, cited, warned, or otherwise disciplined while in PepsiCo's employment? If so, please state for each instance:

    (a) The dates of each disciplinary action, suspension, reprimand, citation, or warning.

    (b) The nature of and the reason for each disciplinary action, suspension, reprimand, citation, or warning.

4.

Please explain the nature of the employment relationship between Defendant PepsiCo and John Does 1 and 2, including, but not limited to: the date the employment relationship began and, if the employment relationship has been terminated, the date of such termination, the reasons for the termination, and the identity of the person who terminated John Does 1 or 2.

5.

Please state how John Does 1 and 2 were compensated for their work for Defendant PepsiCo (e.g. hourly wage, salary, commission, etc.) between the date they began their employment with Defendant PepsiCo and the date of the subject incident.

6.

Identify all manuals, policies, practices, procedures, rules, regulations, guidelines, and programs that have governed or otherwise applied to John Does 1 and 2 at any time between the dates they began their employment with Defendant PepsiCo and the date of your responses to these interrogatories.

- 4 -

7.

Were there any photographs, videos, or audio recordings taken as a result of this incident? If so, for each photograph, video recording, or audio recording, please identify the person who took each photograph, video, or audio recording, identify the date the photograph, video, or audio recording was taken, and describe what is depicted (or heard) in each photograph, video, or audio recording.

8.

Describe all job training provided to John Does 1 and 2.

9.

Has any entity issued a policy of liability insurance, including excess or umbrella insurance, to you or which is or arguably should be extending insurance coverage to you?  If so, please state for each policy:

(a) the name of the insurer providing liability insurance;

(b) the limits of coverage;

(c) the name of the insured on the policy; and

(d) the policy number.

10.

Has any insurer referred to in your answer to Interrogatory No. 9 denied coverage or reserved its rights to later deny coverage under any such policy of liability insurance?  If so, please explain.

11.

With regard to each statement (oral, written, recorded, court or deposition transcript, etc.) taken from any person with knowledge relevant to this lawsuit, please state the name of each person giving each statement, the name and address of the persons or entity taking each statement

and the names and addresses of the persons present when the statement was taken, the date each statement was taken, and the name and address of each person having possession, custody or control of each statement.

12.

Identify any written communications or documents regarding the subject incident, including accident or incident reports, emails, letters, memos or other correspondence, that were exchanged between Defendant PepsiCo's employees/representatives or between Defendant PepsiCo's employees/representatives and other persons, businesses, and/or entities.

13.

If you contend that any witness has been convicted of or pleaded guilty to a crime of moral turpitude and/or felony, please identify:

(a) each eyewitness that will testify regarding the conviction or guilty plea or the underlying facts of the conviction or plea; and

(b) each and every document or tangible piece of evidence that contains information about the conviction or guilty plea or the crime(s) underlying the conviction or plea.

14.

Please state the name and address of all individuals whom you expect to provide expert testimony at the trial of this case, stating also:

(a) the expert's area of expertise;

(b) the opinions held by each such expert; and

(c) a summary of the grounds for each opinion held.

15.

To your knowledge, information, or belief, are there any plats or drawings of the scene of the incident referred to in the Complaint or Plaintiff?  If so, please describe such plats or drawings and give the name and address of the person having custody and control thereof.

16.

Please identify any and all documentary or other tangible evidence not previously identified that you believe demonstrates and/or supports facts relevant to the claims and/or defenses in this case.

17.

Please detail the factual and legal basis for each defense pleaded in your Answer, including all United States statutes, state statutes, city ordinances, county ordinances, case law and all other governmental laws, rules or regulations which you contend Plaintiff, or any other person or entity, violated with respect to the incident giving rise to this lawsuit.

18.

Please identify every person who provided any job training to John Does 1 and 2 at any point before or during their employment with Defendant PepsiCo.  For each person identified, describe the nature of the training provided and the approximate dates or time frame during which the training was provided.

19.

If any documents or tangible things that are responsive to any of Plaintiff's Requests for Production existed at one time but no longer exist, please identify such documents or things, state when the documents or things were destroyed, deleted, or otherwise became unavailable, explain why the documents or things were destroyed, deleted, or otherwise became unavailable, and

- 7 -

identify the persons with knowledge of the circumstances surrounding the destruction or deletion of the documents or things.

This 8th day of May, 2023.

/s/ *Michael Ruppersburg*
Michael Ruppersburg
Georgia Bar No. 432211
Charles W. Ruffin
Georgia Bar No. 829668
*Counsel for Plaintiff*

BLASINGAME, BURCH,
GARRARD & ASHLEY, P.C.
P.O. Box 832
Athens, Georgia 30603
Tel: (706) 354-4000
Fax: (706) 354-4544

- 8 -

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03126-S1**
**5/8/2023 11:35 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

JAMES STROMAN,

      Plaintiff,

v.

PEPSICO, INC.; JOHN DOE 1;
JOHN DOE 2;

      Defendants.

**JURY TRIAL DEMANDED**

23-C-03126-S1

CIVIL ACTION
FILE NO. _____

### PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT PEPSICO, INC.

Pursuant to O.C.G.A. § 9-11-34, Plaintiff hereby requests that Defendant PepsiCo, Inc. ("Defendant PepsiCo") respond separately in writing as required by law and serve such responses, along with copies of the documents requested herein, upon the undersigned counsel of record for the Plaintiff at Blasingame, Burch, Garrard & Ashley, P.C., P.O. Box 832, Athens, GA 30603. Please include the text of each request prior to each response. Plaintiff will do the same in response to Defendant's discovery requests. To facilitate this, Plaintiff will also provide an electronic copy of this discovery upon request.

### DEFINITIONS AND INSTRUCTIONS

A. This request for production of documents and notice to produce shall be deemed continuing to the extent permitted by O.C.G.A. § 9-11-26, *et seq.*, and O.C.G.A. § 24-10-26, *et seq.*, so as to require Defendant to serve or produce upon all parties supplemental answers or documents if Defendant or its attorneys obtain further information between the time the answers are served and the time of trial. Plaintiff also requests that Defendant produce the originals of each document at trial and of any deposition of Defendant or its agents or employees.

B. Each Request is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and

other representatives.  If Defendant is unable to comply with a Request completely, Defendant should comply with the request to the greatest extent possible.  When a Request is directed to Defendant, the Request is also directed to the aforementioned persons.  These Requests shall be deemed continuing, and you are under a duty to seasonably supplement or amend a prior response.

C.    "Person"    means    any    natural    person,    corporation,    partnership, association,  governmental entity, agency, group, organization, etc.

D.  If a requested document is no longer in your possession, custody or control, please identify the document with specificity.  If Defendant does not possess any document responsive to a request, please state so in writing.

E.  If you object to part of a request, <u>please state whether you are withholding documents, identify the documents or types of documents being withheld, and describe with specificity the basis for the withholding</u>. If you object to the scope or time period of the request, please answer the request for the scope or time period you believe is appropriate.

F.  If work product or privilege is claimed as to any document or any information responsive to these requests, please identify the information or document(s) to which a privilege is claimed with such particularity and in such a manner that the Court, and not defense counsel unilaterally, may determine whether the document or information is indeed entitled to privileged status.  To support a claim of privilege, for each responsive document to which a privilege is claimed, provide a privilege log setting forth a general description of the document, the author of the document, the recipients of the document (including "cc's"), the date the document was prepared, and the privilege claimed.

## REQUEST FOR PRODUCTION OF DOCUMENTS

Please produce the following documents:

1.

Copies of the entire personnel files for John Does 1 and 2.

2.

Copies of all performance reviews, assessments, evaluations or similar documents for John Does 1 and 2.

3.

Copies of all documents collected or generated from any investigation into or evaluation or assessment of the subject incident.

4.

Copies of all reports, memoranda, notes, logs or other documents containing information about any complaints, concerns, or criticisms about/of John Does 1 and 2.

5.

Copies of all photographs and videos taken of the scene of the subject incident.

6.

Please produce all policies of insurance, to include the declaration pages, which do or may afford insurance coverage to Defendant PepsiCo with regard to Plaintiff's claims against Defendant PepsiCo. This Request includes primary insurance coverage, excess insurance coverage, or any other type of liability insurance coverage, and medical-payments coverage. This request includes any and all documents affecting coverage, including reservation of rights documents.

- 3 -

7.

Copies of all documents evidencing, reflecting, relating to, and/or constituting an accident or incident report regarding the subject incident.

8.

Copies of all manuals, company policies, rules, regulations, guidelines, and/or programs that have governed or otherwise applied to John Does 1 and/or 2 (or to the positions they held) at any time between the date they began their employment with Defendant PepsiCo and the date of your responses to these requests.

9.

Copies of all safety manuals, brochures, handouts, literature, and/or other written documents pertaining to safety that were provided to John Does 1 or 2 (or to anyone in a same or similar job role) between the dates John Does 1 and 2 began their employment with Defendant PepsiCo and the date of your responses to these requests or that were otherwise maintained by Defendant PepsiCo during that time period.

10.

Copies of all documents relating to John Does 1 and/or 2 being disciplined, suspended, reprimanded, cited, or warned while in Defendant PepsiCo's employment.

11.

Copies of all documents, photos, audio recording, and/or videos reflecting information about any job training John Does 1 and/or 2 received from PepsiCo.

12.

All witness statements and/or reports obtained relating to the subject incident.

13.

All videotapes, audio recordings, photographs, plats or drawings that reflect or purport to reflect information about the subject incident or people involved in the incident, including any video footage or audio recordings taken on the day of the subject incident.

14.

Copies of any and all documents received from non-parties in connection with your investigation of the subject incident or your litigation of this matter, including documents received in response to informal requests, open records requests, subpoenas or non-party requests for production of documents.

15.

Copies of any and all written documents and communications regarding, containing information about, or exchanged because of or in connection with the subject incident (including emails, text messages, instant messages, social media messages, letters, memos, and/or other electronic or non-electronic correspondence). This request seeks communications that were exchanged between Defendant PepsiCo's employees/representatives as well as communications exchanged between Defendant PepsiCo's employees/representatives and other persons, businesses, and entities.

16.

Copies of any and all written documents and communications that reference and/or contain information about John Does 1 and/or 2 (including emails, text messages, instant messages, social media messages, letters, memos, and/or other electronic or non-electronic correspondence), including communications that were exchanged between Defendant PepsiCo's employees/representatives and communications exchanged between Defendant PepsiCo's employees/representatives and other persons, businesses and entities.

- 5 -

17.

Any emails, text messages, or other electronic communications of any sort sent or received by John Does 1 and/or 2 related to the subject incident.

18.

Please produce all reports received from any experts who have investigated any issue(s) relevant to the subject occurrence and/or Plaintiff's injuries and damages. Also, produce all materials reviewed and/or relied upon by each expert in formulating their opinions and conclusions.

19.

The curriculum vitae of all experts who are expected to testify on behalf of Defendants and any documents they created, reviewed or relied on.

20.

Any and all documents identified, referenced, or used to answer any of Plaintiff's discovery in this matter.

21.

Any and all documents referencing or related to other incidents where John Does 1 or 2, or persons holding their same jobs, caused property damage or bodily injury to another within the last 10 years, including but not limited to other instances involving fire extinguishers.

This 8th day of May, 2023.

*/s/ Michael Ruppersburg*
Michael Ruppersburg
Georgia Bar No. 432211
Charles W. Ruffin
Georgia Bar No. 829668
*Counsel for Plaintiff*

BLASINGAME, BURCH,
GARRARD & ASHLEY, P.C.
P.O. Box 832
Athens, Georgia 30603
Tel: (706) 354-4000
Fax: (706) 354-4544

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-03126-S1**
**5/8/2023 11:35 AM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**James Stroman**

PLAINTIFF

23-C-03126-S1

CIVIL ACTION
NUMBER:_____

VS.

**PepsiCo, Inc.**

DEFENDANT

SERVED: Complaint, 1st Interrogatories
to PepsiCo, Inc., 1st Request for
Production of Documents to PepsiCo,
Inc.

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**  PepsiCo, Inc. c/o Registered Agent, CT Corporation System

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Michael Ruppersburg - Blasingame, Burch, Garrard & Ashley, P.C.
P.O. Box 832 - Athens, Georgia 30603
(706) 354-4000

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of ____8th day of May, 2023_____, 20_____.

Tiana P. Garner
**Clerk of State Court**

By _____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-03126-S1**

**5/16/2023 1:20 PM**
TIANA P. GARNER, CLERK

**AFFIDAVIT OF SERVICE**

| Case:<br>23-C-03126-S1 | Court:<br>State Court of Gwinnett County | County:<br>Gwinnett, GA | Job:<br>8834032 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>James Stroman | | **Defendant / Respondent:**<br>Pepsico, Inc.; John Doe 1; John Doe 2 | |
| **Received by:**<br>CGA Solutions | | **For:**<br>Blasingame Burch Garrard Ashley PC | |
| **To be served upon:**<br>Pepsico Inc. c/o CT Corporation System, Registered Agent | | | |

I, Thomas David Gibbs III, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Linda Banks, CT Corporation System: 289 S Culver St, Lawrenceville, GA 30046

**Manner of Service:**   Registered Agent, May 11, 2023, 1:24 pm EDT

**Documents:**   Summons, Complaint for Damages, Plaintiff's First Interrogatories to Defendant Pepsico Inc, Plaintiff's First Requests for Production of Documents to Defendant Pepsico Inc (Received May 8, 2023 at 12:00pm EDT)

**Additional Comments:**
1) Successful Attempt: May 11, 2023, 1:24 pm EDT at CT Corporation System: 289 S Culver St, Lawrenceville, GA 30046 received by Linda Banks.
,Agent designated by CT Corporation to accept service

_____        Subscribed and sworn to before me by the affiant who is
Thomas David Gibbs III            Date        personally known to me.

CGA Solutions                        _____
723 Main Street                        Notary Public
Stone Mountain, GA 30083
866-217-8581                        _____        _____
                                Date            Commission Expires

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: **23 C-01315-6**

### ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this _2nd_ day of _March_, 20_23_.

_Veronica Cope_
Veronica Cope (Mar 2, 2023 14:39 EST)
Presiding Judge
Gwinnett County State Court

TIANA P. GARNER, CLERK
2023 MAR -3 AM 8: 25
FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA.

Applicant:

Name    _Thomas David Gibbs III_

Address    _1215 Coranto Court_
    _Stone Mountain, GA 30087_