# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LAUREN OVERSTREET, | |
| Plaintiff, | Civil Action No.: |
| v. | _____ |
| BRIDGE INVESTMENT GROUP HOLDINGS LLC, | JURY DEMAND |
| Defendant. | |

## COMPLAINT

Plaintiff Lauren Overstreet ("Ms. Overstreet") files this Complaint against Bridge Investment Group Holdings LLC ("Bridge"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for unpaid overtime wages brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA").

2. Ms. Overstreet alleges that Bridge willfully violated the FLSA by failing to pay her for all hours worked over 40 per week.

3. Ms. Overstreet further alleges that Bridge justified its failure to pay her for all hours worked by misclassifying her as holding a "full time, exempt, professional level position."

## JURISDICTION AND VENUE

4. Under 28 U.S.C. § 1331 this Court has jurisdiction over Ms. Overstreet's claims because the claims raise questions of federal law.

5. Under 28 U.S.C. § 1391(b) and Local Rule 3.1(B), venue is proper in this division because at least one defendant resides in this division or a substantial part of the events or omissions giving rise to the claims occurred in this division.

## PARTIES

6. Bridge is a foreign for-profit limited liability company incorporated in Delaware and registered to do business and operating in Georgia.

7. Bridge's primary offices in Georgia are located at 1277 Lenox Park Blvd, Suite 200, Atlanta, GA 30319.

8. Bridge may be served through its agent CT Corporation System at 289 S Culver Street., Lawrenceville, GA 30046.

9. Ms. Overstreet is an individual resident of DeKalb County, Georgia.

## BRIDGE IS COVERED BY THE FLSA & EMPLOYED PLAINTIFF

10. Bridge is an investment group in the business of investing in commercial real estate.

11. Bridge is an enterprise engaged in commerce or the production of goods for commerce.

12. Bridge employs two or more individuals who engage in commerce, the production of goods for commerce, or handle, sell, or work with goods or materials that have moved in or were produced for commerce.

13. Bridge employs two or more individuals who regularly communicate across state lines using interstate mail, internet, and telephone while performing their job duties.

14. Bridge employs two or more individuals who regularly communicate across state lines using the internet while performing their job duties.

15. Bridge employees handle and use materials that were manufactured outside the state of Georgia and traveled through interstate commerce, such as computers, computer software, paper supplies, printers, and copiers, while performing their job duties.

16. For the three years preceding the filing of this Complaint, Bridge's gross annual sales or business done was $500,000 or more.

17. At all relevant times, Bridge employed Ms. Overstreet.

18. Ms. Overstreet began working for Bridge on or about February 20, 2018.

19. Bridge determined the employment practices applicable to Ms. Overstreet.

20. Bridge had the authority to change the employment practices applicable to Ms. Overstreet.

21. Bridge determined how Ms. Overstreet was paid.

22. Bridge set Ms. Overstreet's schedule.

23. Bridge maintained Ms. Overstreet's employment records, such as time and payroll records.

24. Bridge terminated Ms. Overstreet's employment on or about April 19, 2023.

**FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIMS**

25. Ms. Overstreet was hired for the position of "Executive Assistant."

26. Ms. Overstreet's primary job duty was to provide clerical support to Bridge's Chief Information Officer, John Ward, and, beginning in the summer of 2020, to Chief Operations Officer, Mark Ferris (collectively the "Bridge Executives").

27. For example, Ms. Overstreet organized and annotated calendars for the Bridge Executives.

28. Ms. Overstreet organized correspondence to and from the Bridge Executives including sending documents to John Ward for his signature.

29. Ms. Overstreet booked travel for Bridge Executives.

30. Ms. Overstreet completed expense reports for Bridge Executives.

31. Ms. Overstreet took meeting minutes at standing meetings attended by the Bridge executives.

32. Ms. Overstreet also scheduled and took meeting minutes at non-standing meetings attended by the Bridge executives.

33. Ms. Overstreet also attended meetings with other Bridge staff members on a regular basis.

34. In performing these duties, Ms. Overstreet followed policies and procedures established by her superiors at Bridge.

35. Ms. Overstreet typically worked more than 40 hours per week.

36. Bridge scheduled Ms. Overstreet to work Monday through Friday from 8:00 am to 5:00 pm with a flexible one-hour lunch break.

37. Bridge's executives and employees often work with or report to colleagues in offices across the United States and in time zones outside of the Eastern Standard Time zone.

38. John Ward and Mark Ferris frequently reported to executives working out of Bridge's corporate headquarters in Salt Lake City, Utah.

39. Because Ms. Overstreet provided support to the Bridge Executives, she was often required to respond to requests for support outside of her scheduled hours.

40. For example, Ms. Overstreet was frequently required to stay past her scheduled hours to support Ward in meetings involving Bridge's Salt Lake City staff.

41. Ms. Overstreet was often required to respond to scheduling issues, communications, and requests for Ward's signature after her scheduled work hours.

42. Ms. Overstreet was often required to respond after hours to requests from the Bridge Executives regarding their travel arrangements.

43. From October of 2021 to April 2022, Ms. Overstreet was required to work a significant number of hours outside of her scheduled hours to assist with the move of Bridge's Atlanta office space.

44. As a result, Ms. Overstreet often worked outside of her scheduled hours and in excess of 40 hours per week.

45. Bridge knew that Ms. Overstreet worked in excess of 40 hours per week due to the demands of the Bridge Executives.

46. Additionally, Ms. Overstreet sent emails before and after her scheduled shift showing that she was working in excess of her scheduled hours.

47. Bridge, however, failed to maintain accurate records of the hours Ms. Overstreet worked.

48. Bridge's failure to keep complete and accurate records of Ms.

Overstreet's hours worked violated the FLSA's recordkeeping requirement.

49. During the duration of her employment with Bridge, Bridge paid Ms. Overstreet a fixed annual salary paid on a bi-weekly basis.

50. During the time Ms. Overstreet was paid a fixed salary, Bridge failed to pay Ms. Overstreet any wages for hours worked in excess of 40 per week.

51. Bridge did not pay Ms. Overstreet 1.5 times her regular hourly rate for all hours worked over 40 per workweek.

52. Bridge knew or should have known that Ms. Overstreet worked uncompensated overtime hours during the time she was paid a fixed salary.

**COUNT 1: WILLFUL FAILURE TO PAY OVERTIME WAGES**

53. For the duration of her employment, Ms. Overstreet was entitled to 1.5 times her regular rate of pay for all hours worked over 40 per week.

54. Ms. Overstreet regularly worked more than 40 hours per week.

55. While Bridge failed to keep accurate records of the hours that Ms. Overstreet worked, Bridge knew she regularly worked more than 40 hours per week.

56. Bridge failed to pay Ms. Overstreet 1.5 times her regular rate of pay for all hours worked over 40 per week in violation of the FLSA.

57. Bridge's failure to pay Ms. Overstreet 1.5 times her regular rate of pay for all hours worked over 40 per week was a willful violation of the FLSA.

58. Because Bridge willfully violated Ms. Overstreet's rights under the FLSA, Ms. Overstreet is entitled to all unpaid overtime wages dating back three years prior to the filing of this action, an equal amount in liquidated damages, and attorney's fees and costs of litigation.

## DEMAND FOR JUDGMENT

Ms. Overstreet respectfully requests that the Court enter judgment in her favor:

(1) That Bridge violated Ms. Overstreet's rights under the FLSA;

(2) That Bridge's violations of Ms. Overstreet's rights under the FLSA were willful;

(3) Award Ms. Overstreet all unpaid overtime wages for a period of three years;

(4) Award Ms. Overstreet liquidated damages in an amount equal to her unpaid wages;

(5) Award Ms. Overstreet her reasonable attorney's fees, costs, and expenses; and

(6) Award all other relief to which Ms. Overstreet may be entitled.

## DEMAND FOR TRIAL BY JURY

Ms. Overstreet requests a trial by jury under Fed. R. Civ. P. 38.

Respectfully submitted, Wednesday, June 7, 2023.

|  |  |
|---|---|
| **PARKS, CHESIN & WALBERT, P.C.**<br>75 14th Street NE, Suite 2600<br>Atlanta, GA 30309<br>(404) 873-8000<br>jmays@pcwlawfirm.com<br>edrew@pcwlawfirm.com | *s/John L. Mays*<br>John L. Mays<br>Georgia Bar No. 986574<br>Evan Drew<br>Georgia Bar No. 747996<br><br>*Counsel for Plaintiff* |