## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **NORTH AMERICAN MEDICAL CORPORATION,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action File No._____** |
| **YANIEL ESCALONA** and **HAROLD HICKS,** | **Jury Trial Requested** |
| **Defendants.** | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I.   Overview of Action

1. This action arises from a concerted and tortious effort by two former employees to divert customers from Plaintiff North American Medical Corporation ("NAM"), a leading medical device manufacturer in its specialized market for non-surgical spinal decompression. Under the guise of "service" to NAM's FDA-cleared and regulated Accu-Spina® devices, Defendants Yaniel Escalona and Harold Hicks have been using software pirated from NAM and selling remanufactured and materially different machines to NAM customers. Their actions not

1

only create marketplace confusion, harming both NAM and its customers, they threaten patient safety.

2. NAM therefore brings this action for trademark infringement, false advertising, copyright infringement, tortious interference with its business relationships, and conspiracy to tortiously interfere, seeking actual, statutory, and exemplary damages, as well as preliminary and permanent injunctive relief.

## II.   <u>The Parties, Jurisdiction, and Venue</u>

3. Plaintiff NAM is a corporation formed under the law of the State of Georgia. It has its principal place of business at 1649 Sands Place SE, Suite A, Marietta, GA 30067 in Georgia. NAM is an industry-leading designer, developer, and manufacturer of non-surgical spinal decompression equipment.

4. Defendant Yaniel Escalona is an individual citizen of Georgia, residing at 4066 Brookwood Drive, Austell, Georgia 30106..

5. Defendant Harold Hicks is an individual citizen of Georgia, residing at 508 Rivercrest Drive, Woodstock, Georgia 30188.

6. The Court has subject matter jurisdiction under 28 U.S. Code § 1331, in

that this is an action arising under the statutes of the United States and under 28 U.S.C. § 1367 as to claims arising under Georgia law.

7. Venue is appropriate in the Northern District of Georgia, where NAM has its own principal place of business, the Defendants reside, and where a substantial part of the events and omissions that are the subject of this action occurred. *See* 28 U.S.C. § 1391.

### III.    Factual Background

8. NAM works in a specialized medical market focused on the treatment of injured spinal discs, manufacturing a spinal decompression machine, the Accu-Spina® device, for which NAM also enjoys patent protection.[1]

9. NAM itself helped create this specialized market, having been an innovator in spinal decompression since 2000. It has invested a great deal of time and money over more than twenty years to help build the

---

[1]    NAM anticipates that discovery in this case may reveal that Defendants have also infringed a claim or claim in its patents; NAM holds patents on its spinal treatment technology and systems including U.S. Patent Nos. 6,984,217 B2 and 2009/0299247 A1. In that event, NAM anticipates an amendment to its Complaint to seek damages and injunctive relief for such patent infringement.

market and to educate its clinicians and consumers about the benefits of spinal decompression, the Accu-Spina®, and the accompanying IDD Therapy® treatment with which it is delivered.

10. Quality control is a critical part of NAM's business. Its reputation and goodwill are critical business assets, and as a medical device manufacturer, NAM maintains an FDA-compliant quality control system which is regularly inspected and audited by FDA.

11. NAM's operating expenses include its marketing and advertising, its compliance costs, registration fees, audit fees, management expenses, product liability insurance, and ISO certification expenses, among others.

12. As a result of that effort and expenditure, medical providers who purchase an Accu-Spina® device know they are receiving a product of high and consistent quality.

13. Similarly, when NAM services these devices under warranty, it does so with access to its current and updated technology, including the proprietary software code used to operate the device.

14. NAM sells its devices directly or through authorized distributors. For authorized    Accu-Spina®    sales,    NAM    provides    a    specific

manufacturer's warranty, factory service, as well as a license to provide service in markets where NAM does not readily maintain a presence. For NAM-authorized refurbishment and repair, NAM also provides a written, one-year limited warranty.

15. NAM's authorized service program allows it to ensure consistent quality and to make sure customers have its latest technology, including updated software, as well as best-in-class service.

## Defendant Escalona

16. Defendant Escalona worked in manufacturing, electrical and technical roles at NAM from 2002 until his departure in February 2012.

17. At the outset of his employment, he signed a written Employee Confidentiality, Nondisclosure and Nonuse Agreement (the "Escalona Agreement,") in which he acknowledged the nature of the confidential and trade secret information to which he had access, and his obligation to maintain that strict confidentiality. A true and correct copy of the Escalona Agreement is attached hereto as Exhibit A.

18. During his employment at NAM, he was provided specialized training on NAM's equipment and confidential information relating to NAM's business and valuable to NAM, including access to proprietary wiring

diagrams, electrical schematics, and proprietary Accu-Spina® components.

19. Escalona became aware of this confidential information solely by virtue of his employment at NAM.

20. In his role as a field service technician, Escalona also had access to additional confidential information pertaining to NAM's proprietary software, as well as service technician passcodes to obtain otherwise inaccessible technical software access.

21. Multiple times over the years, including on December 9, 2008, Escalona acknowledged the nature of the confidential and trade secret information to which he had access, and his obligation to maintain that strict confidentiality.

22. On or about October 27, 2011, Escalona, while still employed by NAM, entered into a second written agreement with NAM (the "2011 Agreement"). The catalyst for the 2011 Agreement was NAM's discovery that Escalona had misappropriated company software in order to unfairly and covertly compete against NAM, resulting in at least one loss of a device sale.

23. As part of that 2011 Agreement, Escalona acknowledge that he was

"trained by NAM to perform [his] job functions and was given access to confidential product knowledge for which [he] signed a contractual obligation on December 9, 2008 to maintain full confidentiality and never to use [his] training or knowledge outside of [his] capacity as an employee of NAM in relation to any NAM products or services which are sources of revenue to the company." He further acknowledged that to do so would be causing direct monetary damage to NAM.

### Defendant Hicks

24. Defendant Hicks began employment with NAM in 2001 and worked there until his termination in 2007.

25. On April 22, 2002 Defendant Hicks signed a written Employee Confidentiality, Nondisclosure and Nonuse Agreement (the "Hicks Agreement"), in which he acknowledged the nature of the confidential and trade secret information to which he had access, and his obligation to maintain that strict confidentiality. A true and correct copy of the Hicks Agreement is attached hereto as Exhibit B.

26. Defendant Hicks was terminated on February 16, 2007 when NAM discovered he had not only accepted employment with a competitor while working at NAM, he was actively seeking to divert business to

that competitor.

27. In attempting to do so, Defendant Hicks made untrue statements to at least one of NAM's distributors.

## Defendants' Joint Efforts and Pattern of Deceit

28. Working together, Defendants have demonstrated a pattern over time of acting to harm NAM through unfair competitive conduct.

29. In 2011, for example, Defendant Hicks attempted, covertly, to sell a used Accu-Spina® device to a NAM customer. To do so, he used Defendant Escalona as an intermediary and front person.

30. On information and belief, Defendants Escalona and Hicks have continued their covert and unauthorized sales and unauthorized second-hand repairs operations, using NAM's confidential information and infringing its intellectual property rights.

31. On information and belief, Defendants' joint objective, implemented through these wrongful actions, is to lure customers and business relationships away from NAM.

32. Operating as the front person, Defendant Escalona has claimed he will only work on NAM devices because of their quality and because he was "factory trained," communications that are intended to imply and

do imply authorization from NAM.

33. Although they are selling, refurbishing and/or remanufacturing[2] medical devices, Defendants have not registered their business with FDA. Nor, on information and belief, do they have GMP quality system requirements or any mode of reporting or the mandatory recordkeeping and required of legitimate remanufacturers or medical device sellers.

34. In this regard, Defendants' failure to obtain FDA registration for refurbishment or remanufacture of these medical devices illustrates Defendants' disregard for patient safety and quality control.

35. Defendants have even promoted and sold a cervical treatment accessory purportedly for use as an Accu-Spina® system accessory but which Defendants they had never cleared with the FDA and which use does in fact bypass a critical safety design of the Accu-Spina.

36. Defendants' actions mislead consumers, and present significant legal risk and liability to NAM and to healthcare providers who, based on

---

[2]   NAM believes that Escalona's substantial remanufacturing has included entirely replacing critical components of the Accu-Spina® device like decompression heads and motors.

Defendants implicit and explicit representations, buy and use patients

devices with which Defendants have tampered.

## IV.   Claims

### COUNT I
*(Trademark Infringement—Escalona and Hicks)*

37. NAM restates as if set forth fully herein the allegations of paragraphs 1-36 above.

38. When Defendants promote their business as an Accu-Spina repair or sales business, they are utilizing NAM's proprietary marks without license or authority.

39. Specifically, NAM has been using the Accu-Spina mark since 2000, and owns the trademark listed under U.S. Registration No. 6292066, a true and correct copy of which is attached hereto as Exhibit C.

40. In the years since Defendants' departure from NAM, the company has made specification and product changes to which Defendants are not privy.

41. By circumventing factory service and field performance data along with related manufacturer-specification changes, Defendants are placing purported NAM products, covered by trademark, in

commerce with materially inconsistent quality and/or performance.

42. The unauthorized products Defendants are selling have also been materially altered (in a manner not known to FDA), creating the potential to and/or actually misleading consumers. Among other things, these devices would not have been serviced or re-manufactured with access to the latest NAM technical specifications and/or be subject to the same level of warranty protection.

43. The consequences are serious not only for NAM but for the end users, the health care providers and patients who are using the devices. Apart from being misled, the potential for danger to their safety is high.

44. By selling or supplying machines that are materially different – as to quality, technology, software, and safety – Defendant are compromising NAM's brand, reputation and goodwill in the marketplace, as well as creating risks for consumers and inconsistent quality or results with purported repairs.

45. These actions constitute trademark infringement of the Accu-Spina® mark.

46. Defendants' misrepresentations are likely to cause confusion among

customers and are likely to cause NAM to suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

47. As a direct and foreseeable result of this conduct, NAM has been damaged, in an amount to be proven at trial, but exceeding $75,000, including incidental, consequential, and actual damages as well as Defendants' profits under 15 U.S.C. § 1117.

48. NAM will also prove that Defendants' trademark infringement has also been willful, such that damages should be enhanced and NAM awarded its attorney's fees.

## COUNT II
### *(False Advertising—Escalona and Hicks)*

49. NAM restates as if set forth fully herein the allegations of paragraphs 1-36 above.

50. Defendants are engaging in false advertising under Section 43 of the Lanham Act,[3] misleading customers into thinking they are providing

---

[3] "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation

the same level of service and quality as NAM and that the refurbishment or re-manufacturing they perform on Accu-Spina machines are materially the same as those performed or sold directly by NAM.

51. They are not, and Defendant's representations, whether implicit or explicit, concern quality and safety and are material to customers.

52. Defendants' actions also violate Section 43(a) by conveying approval, authorization, and association between NAM and Defendants that does not exist.

53. Defendants imply that they are indeed FDA-registered and/or that they have privileged access to NAM technology and that the devices they are tampering with reflect current NAM technology. These misrepresentations concerning NAM and the Accu-Spina® have an impact on interstate commerce.

54. Additionally, these misrepresentations are likely to cause confusion

---

of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

among customers and are likely to cause Plaintiff to suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

55. As a direct and foreseeable result of this conduct, NAM has been damaged, in an amount to be proven at trial, but exceeding $75,000, including incidental, consequential, and actual damages as well as Defendants' profits under 15 U.S.C. § 1117.

56. NAM also seeks its attorney's fees and costs of litigation.

## COUNT III
### *(Copyright Infringement—Escalona and Hicks)*

57. NAM restates as if set forth fully herein the allegations of paragraphs 1-36 above.

58. Defendants have also engaged in software piracy.

59. As the owner of a valid copyright subsisting in its operating software, NAM has the exclusive right, *inter alia*, to reproduce the copyrighted work in copies and to distribute copies to the public by sale or other transfer of ownership.

60. On information and belief, and as NAM expects discovery will more fully reveal, as part of their covert operation, Defendants have

obtained NAM's software by illegally copying or mirroring NAM's software onto new computers in order to sell new computers loaded with the pirated NAM software, in contravention of NAM's license terms and without authorization or permission.

61. Defendants' software piracy including their installation of Plaintiff's copyrighted software on Accu-Spina devices constitutes copyright infringement under 17 U.S.C. § 501.

62. Defendants' actions have caused and will continue to cause Plaintiff to suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

63. As a direct and foreseeable result of this conduct, NAM has been damaged and seeks recovery of damages, in an amount to be proven at trial and subject to discovery of Defendants' profits, under 17 U.S.C. § 504.

## COUNT IV
### *(Tortious Interference—Escalona and Hicks)*

64. NAM restates as if set forth fully herein the allegations of paragraphs 1-36 above.

65. Information regarding NAM's distributors and suppliers, and its financial and management information, are confidential and trade secret information of the company, not readily accessible to the public.

66. Defendants' use of NAM's confidential information and proprietary technology to service Accu-Spina devices is wrongful, as would be any misrepresentations about their operations' affiliation, association, or sponsorship by NAM. Based on their past conduct already known to NAM, NAM anticipates that discovery will reveal further details of Defendants' wrongful activities.

67. In addition to the safety issues presented to patients, Defendants resulting diversion of business from NAM constitutes tortious interference with Plaintiff's business relationships and prospective economic advantage.

68. Defendants' actions have caused and will continue to cause Plaintiff to

suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

69. As a direct and foreseeable result of this conduct, NAM has been damaged, in an amount to be proven at trial, but exceeding $75,000, including incidental, consequential, and actual damages.

## COUNT V
### *(Conspiracy to Tortiously Interfere—Escalona and Hicks)*

70. NAM restates as if set forth fully herein the allegations of paragraphs 1-36 above.

71. Defendants' actions were not taken in isolation, but rather were part of a conspiracy to tortiously interfere with NAM's business relationships and prospective economic advantage.

72. On information and belief, Defendants have agreed to work together to use NAM's confidential information and proprietary technology to improper and misleadingly service Accu-Spina devices and compete unfairly with NAM.

73. As detailed above, Defendants are effectively operating an unlicensed and unauthorized medical device repair and service business, doing so through wrongful actions and the infringement of NAM's

intellectual property and use of its confidential information.

74. As a direct and foreseeable result of this conduct, NAM has been damaged, in an amount to be proven at trial, including incidental, consequential, and actual damages.

## COUNT VI
### (Breach of Contract – Defendant Escalona)

75. NAM restates as if set forth fully herein the allegations of paragraphs 1-36 above.

76. NAM has fully complied with all of its responsibilities and obligations under the 2011 Agreement, and any and all conditions precedent to a claim for breach have occurred.

77. Defendant Hicks has breached the 2011 Agreement in at least the activities described in this Complaint, and NAM expectsdiscovery to establish additional breaches.

78. NAM has been damaged by Escalona's breaches in an amount to be proven at trial, but exceeding $75,000, including incidental, consequential, and actual damages.

79. In addition to amounts owed under the Agreement, NAM requests an award of pre-judgment interest, running from the date of demand, and

post-judgment interest, all as provided by Georgia law.

## COUNT VII
### (Attorney's Fees Under O.C.G.A. § 13-6-11)

80. NAM restates as if set forth fully herein the allegations of paragraphs 1-36 above.

81. Defendants' actions have caused NAM unnecessary trouble and expense and, as detailed above, Defendants have acted in bad faith.

82. As a result of Defendants' actions, they are liable under O.C.G.A. § 13-6-11 for NAM's attorney's fees incurred in connection with this matter.

## V.  <u>Request for Relief</u>

WHEREFORE, NAM prays for an award of the following relief against Defendants as follows:

a)   For monetary damages as to Counts I through VI in an amount to be determined at trial, including but not limited to compensatory, statutory and/or enhanced damages, as appropriate;

b)   Because Defendants' actions as described in this Complaint demonstrate willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the

presumption of conscious indifference to consequences, for an award of punitive damages under O.C.G.A. § 51-12-5.1

c)   Grant of preliminary and permanent injunctive relief prohibiting Defendants from engaging in any further trademark infringement, false advertising, tortious interference with business or conspiracy to tortiously interfere with NAM's business;

d)   For attorney's fees in accordance with O.C.G.A. § 13-6-11;

e)   For pre- and post-judgment interest;

f)   That all costs of this action be taxed against Defendants;

g)   For a trial by jury on all issues so triable; and

h)   For such other and further relief that the Court deems just, equitable and proper.

Dated: June 7, 2023.

Respectfully submitted by

THE FLAKE LAW FIRM, LLC

*/s/ Andrew B. Flake*
Andrew B. Flake
Georgia Bar No. 262425

1778 Century Blvd. NE, Suite A
Atlanta, Georgia 30345
Telephone: 678-528-1688

E: andrew.flake@flakelaw.com

*Counsel for Plaintiff*
*North American Medical Corporatio*n