IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DEBABRATA ROY d/b/a QUALITY MEAT MARKET, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. ) ) |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, | ) ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Debabrata Roy d/b/a Quality Meat Market hereby files this complaint against the Secretary of the United States Department of Agriculture, as follows.

### NATURE OF THE ACTION

1. This is an action, pursuant to 7 U.S.C. § 2023(a)(13) seeking judicial review of the May 9, 2023 Final Agency Decision of the United States Department of Agriculture imposing a hardship civil money penalty of $33,000.00.

### PARTIES

2. Debabrata Roy d/b/a Quality Meat Market is an individual resident of the State of Georgia, operating a food retailer in the State of Georgia. Mr. Roy's place of business is 2034 Sylvan Road, S.W., Atlanta, Fulton County, Georgia

30310-5057. Mr. Roy is subject to the jurisdiction of this Court and may be served by serving the undersigned.

3.   The Secretary of the United States Department of Agriculture is an officer, in his official capacity, of the United States Department of Agriculture.

## JURISDICTION AND VENUE

4.   Jurisdiction in this action is proper in this Court pursuant to 7 U.S.C. § 2023(a)(13) as this matter involves claims under Federal Law, specifically seeking judicial review of a Final Agency Decision of the United States Department of Agriculture.

5.   Venue in this action is proper in this Court pursuant to 7 U.S.C. § 2023(a)(13) because all, or substantially all, of the acts or omissions giving rise to the claims asserted herein occurred in this District, and because Mr. Roy's business is located and engaged in this District.

## FACTUAL BACKGROUND

6.   Mr. Roy operates a food services retail store located at 2034 Sylvan Road, S.W., Atlanta, Fulton County, Georgia 30310-5057 (hereafter, the "Store").

7.   The Store accepts SNAP payments in accordance with Federal Law.

8.   Mr. Roy maintains a policy of training all employees at the Store to behave in accordance with Federal SNAP Law.

9. Mr. Roy requires all employees to sign a written acknowledgement of Federal SNAP Law, specifically which items may be purchased using SNAP benefits.

10. According to the Government, from November 19, 2022 through December 16, 2022, the Government conducted an investigation of Mr. Roy relating to allegations of violations of Federal SNAP Law and Regulations.

11. On January 23, 2023, the Government charged Mr. Roy with accepting SNAP benefits as payment for merchandise which was not SNAP eligible, allegedly in violation of 7 CFR § 278.2(a).

12. According to the Government, during its investigation, one of Mr. Roy's employees who works at the Store was tested on five separate occasions and improperly allowed the purchase of merchandise which was not SNAP eligible on three of those test occasions.

13. This employee is an older gentleman who suffers from poor vision.

14. This employee has already informed the Government that (a) he was trained on Federal SNAP Law by Mr. Roy, (b) that he has poor vision, (c) that he made the three inappropriate sales accidentally due to his poor vision, and (d) that he has never received any kickback from any party for violation of Federal SNAP Law.

15. This information was provided to the Government on more than one occasion, including responses to the January 23, 2023 Charge, which were sent on January 26 and 27, 2023.

16. According to the Government, the Government utilized this information, and other information, to reduce Mr. Roy's penalty from a six-month disqualification to the hardship civil money penalty of $33,000.00.

17. On May 9, 2023, the Government issued a Final Agency Decision imposing a hardship civil money penalty of $33,000.00 against Mr. Roy (hereafter, the "Decision"). A true and correct copy of the Decision is attached hereto as Exhibit A.

18. Pursuant to 7 CFR § 278.6(d)(3), the Government must consider intent in rendering such a determination.

19. Pursuant to 7 CFR § 278.6(d)(1), the Government must consider scope in rendering such a determination.

20. The Government has found three instances out of five, all of which were the admitted error of an employee with poor eyesight.

21. Neither the alleged scope, nor the alleged intent support the Government's Decision.

22. Mr. Roy now sues judicial review of the Decision through 7 U.S.C. § 2023(a)(13).

# COUNT I
## Claim for Judicial Review
## 7 U.S.C. § 2023(a)(13)

23. Mr. Roy restates paragraphs 1-22 and incorporates said paragraphs herein by reference.

24. The Government issued its Decision on May 9, 2023.

25. This filing is made within thirty (30) days of the issuance of the Decision, and is therefore timely per 7 U.S.C. § 2023.

26. The scope of the alleged conduct is *de minimis* at best.

27. No intent to perform the alleged conduct exists.

28. The imposition of any penalty, including, but not limited to imposition of the hardship civil money penalty of $33,000.00 against Mr. Roy, is improper.

29. Mr. Roy now sues judicial review of the Decision through 7 U.S.C. § 2023(a)(13).

## PRAYER FOR RELIEF

WHEREFORE, Mr. Roy prays for judgment as requested above against the Secretary and further requests:

    a.    Judicial review of the Final Agency Decision;

    b.    An award of attorneys' fees and costs in bringing and maintaining this action; and

    c.    Any other relief as this Court may deem just and reasonable.

## **DEMAND FOR JURY TRIAL**

Mr. Smith requests a trial by jury on all issues so triable.

Respectfully submitted, this 8th day of June, 2023.

        FGP LAW, LLC

        /s/ Frank G. Podesta
        Frank G. Podesta
        GA Bar No. 496530
        fpodesta@fgplaw.com

        555 Sun Valley Drive
        Suite N-3
        Roswell, Georgia 30076
        678.677.5143 (voice)
        678.222.0123 (facsimile)
        *Attorneys for Debabrata Roy*

# Exhibit A

United States Department of Agriculture



Food and Nutrition Service

Administrative Review Branch 4th Floor

3101 Park Center Drive

Alexandria, VA 22302

Phone: (703) 305-2817

Lorie.Conneen @usda.gov

May 9, 2023

Debabrata Roy
Quality Meat Market
2034 Sylvan Rd SW
Atlanta, GA 30310-5057

RE:  Case Number C0259833

Dear Owner:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS), in response to your request for administrative review via email correspondence of March 4, 2023, filed on behalf of Quality Meat Market.  Also included therein is a statement regarding relevant rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support a finding that the Retailer Operations Division properly imposed a hardship civil money penalty of $33,000.00 in lieu of a six month disqualification from the Supplemental Nutrition Assistance Program against Quality Meat Market.

You may contact the FNS Retailer Repayment Team at 1-703-605-0483 to discuss payment options, or follow the instructions in the Retailer Operations Division's letter dated February 23, 2023 regarding online or check payment options.

Sincerely,

LORIE L. CONNEEN
Administrative Review Officer

Enclosure – Final Agency Decision

USDA is an Equal Opportunity Provider, Employer, and Lender

U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review Branch

**Quality Meat Market,**

**Appellant,**

v.

**Retailer Operations Division,**

**Respondent.**

Case Number: C0259833

### FINAL AGENCY DECISION

It is the decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS), that there is sufficient evidence to support the Retailer Operations Division's assessment of a $33,000.00 hardship civil money penalty (CMP) against Quality Meat Market (hereinafter "Quality Meat Market" or "Appellant") in lieu of a six month disqualification from the Supplemental Nutrition Assistance Program (SNAP).

### ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with 7 CFR § 278.6(e)(5), 7 CFR § 278.6(f)(1), and 7 CFR § 278.6(g) in its administration of the SNAP, when it imposed a hardship CMP of $33,000.00 in lieu of a six month disqualification against Quality Meat Market.

### AUTHORITY

7 U.S.C. § 2023 and its implementing regulations at 7 CFR § 279.1 provide that "[A] food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS".

### CASE CHRONOLOGY

The Department of Agriculture conducted an investigation of the compliance of Quality Meat Market with Federal SNAP law and regulations during the period November 19, 2022 through December 16, 2022. In a letter dated January 23, 2023, the Retailer Operations Division charged the Appellant with accepting SNAP benefits in exchange for merchandise which included ineligible nonfood items in violation of 7 CFR § 278.2(a). These SNAP violations occurred on three out of five compliance visits. The letter further informed the Appellant that the violations warranted a disqualification period of six months as provided in 7 CFR § 278.6(e)(5). The letter also stated that under certain conditions, FNS may impose a hardship civil money penalty (CMP) in lieu of a disqualification as provided in 7 CFR § 278.6(f)(1).

The charge letter noted that per SNAP regulations Section 278.6(b), the Appellant has the right to present any information, explanation or evidence regarding the charges and must reply within 10 calendar days of the date of receipt of the charge letter.  Per UPS confirmation of delivery, the charge letter was delivered to the Appellant at the store address of record on January 25, 2023.

In responses to the Retailer Operations Division of January 26, 2023 and January 27, 2023, the Appellant responded to the letter of charges.  The record reflects that the Retailer Operations Division received and considered the information provided prior to making a determination.

After considering the Appellant's responses and the evidence in the case, the Retailer Operations Division issued a determination letter dated February 23, 2023 informing the Appellant that the violations cited in the charge letter occurred at the firm and that a six month period of disqualification was warranted.  The determination letter also stated that the Appellant was eligible for a hardship CMP as Quality Meat Market is selling a substantial variety of staple food items and the firm's disqualification would cause hardship to SNAP households.  Thus, a hardship CMP in the amount of $33,000.00 was imposed in lieu of the six month SNAP disqualification.

In an email correspondence of March 4, 2023, the Appellant requested an administrative review of the Retailer Operations Division's decision to impose a hardship CMP in lieu of a six month disqualification of Quality Meat Market from participation in the SNAP.  FNS granted the Appellant's request for administrative review by letter dated March 10, 2023 and implementation of the hardship CMP was held in abeyance pending completion of this review.

## STANDARD OF REVIEW

In appeals of adverse actions, the Appellant bears the burden of proving by a preponderance of the evidence, that the administrative actions should be reversed.  That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW AND REGULATIONS

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 U.S.C. § 2021 and § 278 of Title 7 of the Code of Federal Regulations (CFR). Sections 278.6(a) and (e) establish the authority upon which a one year disqualification may be imposed against a retail food store or wholesale food concern.

7 CFR § 278.2 (a) states, in part:  "Coupons may be accepted by an authorized retail food store only from eligible households or the households' authorized representative, and only in exchange for eligible food."

7 CFR § 271.2 states that the definition of "coupon" includes:  … an electronic benefit transfer card or personal identification number issued pursuant to the provisions of the Food and Nutrition Act of 2008, as amended, for the purchase of eligible food.

7 CFR § 271.2 states, in part:  (1) Eligible foods means: Any food or food product intended for human consumption except alcoholic beverages, tobacco and hot food and hot food products prepared for immediate consumption ….

7 CFR § 278.6(a) states, in part:  "FNS may disqualify any authorized retail food store … if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part.  Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-

site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system…"

7 CFR § 278.6(e)(5) states, in part:  "Disqualify the firm for 6 months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as, but not limited to, the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management".

7 CFR § 278.6(f)(1) states, in part: "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

7 CFR § 278.6(g) states, in part:  "Amount of civil money penalties for hardship and transfer of ownership.  FNS shall determine the amount of the civil money penalty as follows:

(1) Determine the firm's average monthly redemptions … for the 12-month period ending with the month immediately preceding that month during which the firm was charged with violations.

(2) Multiply the average monthly redemption figure by 10 percent.

(3) Multiply the product arrived at in paragraph (g)(2) by the number of months for which the firm would have been disqualified under paragraph (e) of this section …."

Notwithstanding the above, there is an agency limit of $11,000 per violation as the maximum CMP amount.

## SUMMARY OF THE CHARGES

During an investigation conducted from November 19, 2022 through December 16, 2022, USDA conducted five compliance visits at Quality Meat Market.  A report of the investigation was provided to the Appellant as an attachment to the charge letter dated January 23, 2023.  The investigation report included Exhibits A through E which provide full details on the results of each compliance visit.  The investigation report documents that SNAP violations were recorded during three of the five compliance visits and involved the sale of a variety of items best described in regulatory terms as "common nonfood items".  The misuse of SNAP benefits noted in Exhibits B, D, and E warrants a disqualification as a SNAP retail food store for a period of six months.  The exchange of these ineligible items for SNAP benefits is in violation of 7 CFR § 278.2(a).

The Retailer Operations Division determined that the assessment of a hardship CMP of $33,000.00 in lieu of a six month disqualification was the appropriate penalty for these violations as Quality Meat Market is selling a substantial variety of staple food items and the firm's disqualification would cause hardship to SNAP households.

## APPELLANT'S CONTENTIONS

In the replies to the charge letter and in the request for administrative review, the Appellant made the following summarized contentions, in relevant part:

- The owner has owned the Appellant for the last eight years and has always followed and maintained the SNAP rules.
- The owner is very diligent when hiring a new employee and always trains them on the SNAP rules.
- Because of the SNAP rules, the store does not carry too many nonfood items so that the owner and employees will not make mistakes when ringing up SNAP transactions.
- The Appellant also has signs in the store so customers can comply with the SNAP rules as sometimes customers make the store pack meats and show that they do not have their EBT card on them but on their phone. However, the Appellant declines these sales. Customers claim that Walmart and Family Dollar allow them to do that but the Appellant tells them that it cannot be done here.
- An employee admits that he made mistakes and that it will never happen again. He admits that he sometimes makes mistakes because he has eye condition issues.
- The Appellant has removed all of the nonfood merchandise from the store.
- A SNAP disqualification would impose a financial hardship on the Appellant.
- A SNAP disqualification would impose a hardship on area participating SNAP households as they do not have transportation to go to other stores. Many of the area stores are not authorized SNAP retailers. The Appellant sells quality meats at competitive prices.

In support of these contentions, the Appellant submitted the following information for review:

- Statement from store employee stating that he has an eye condition and sometimes makes mistakes when ringing up transactions. In addition, he was trained on the SNAP rules when initially hired; and
- Food Stamp/EBT purchase rules signed by two employees. The rules were not dated.

The preceding may represent only a brief summary of the Appellant's contentions in this matter. Please be assured, however, that in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein.

## ANALYSIS AND FINDINGS

This review is to either validate or to invalidate the determination made by the Retailer Operations Division; it is limited to the facts at the basis of the Retailer Operations Division's determination at the time it was made.

The Appellant contends that an employee admits that he made mistakes and that it will never happen again. He admits that he sometimes makes mistakes because he has eye condition issues.

However, when store ownership signed the certification page of the SNAP retailer authorization application to become a SNAP retailer, it confirmed it understood and agreed to abide by program rules and regulatory provisions. It also agreed to accept responsibility on behalf of the firm for SNAP violations including those committed by any of the firm's employees, paid or unpaid, new, full-time or part-time. The certification is clear that store ownership understood by signing the document that violations of program rules can result in administrative actions such as fines, sanctions, withdrawal, or disqualification from the SNAP.

Regardless of who the store owner utilizes to handle store business, ownership is accountable for the proper handling of SNAP benefit transactions. The regulations establish that an authorized food store may be disqualified from participating in the program when the store fails to comply with the Act or

regulations because of the wrongful conduct of an owner, manager, or someone acting on their behalf. The acceptance of SNAP benefits for ineligible items is a violation of SNAP rules and regulations.

The FNS investigative report shows that an employee working at the Appellant firm accepted SNAP benefits for ineligible nonfood items on three separate occasions during the investigative period indicating an ongoing pattern of SNAP violations as defined by Section 271.2 of the SNAP regulations.  The report shows that the nature and scope of the violations under review do violate SNAP regulations, and the transaction amounts cited in the report also match FNS transaction records for the dates in question.  Additionally, a review of the report shows no errors or discrepancies.

Investigative personnel stand by their report that the items listed in the investigation report were, in fact, purchased and have documentation on file that confirms the items listed were donated to and signed for by a charitable organization following each transaction.  Also supporting the conclusion that the investigation did take place at the subject store are EBT receipts obtained during the investigation whose transaction amounts correspond exactly to the purchase amounts and times indicated in each of the Exhibits of the investigation report, and clearly bear the name and address of the subject store.  Therefore, the evidence supports the conclusion that the Appellant was not misidentified as the offending store and that the SNAP violations as noted occurred.

The acceptance of SNAP benefits for ineligible items is a violation of the SNAP rules and regulations. 7 CFR Section 278.6(e)(5) specifies that FNS shall "disqualify the firm for six months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as, but not limited to, the sale of nonfood items due to carelessness or poor supervision by the firm's ownership or management."  There is no regulatory threshold for the dollar value of the ineligible items purchased or for the timeframe in which they were purchased.  The acceptance of SNAP benefits for ineligible items as noted in Exhibits B, D, and E is a violation of SNAP rules and regulations.  The ineligible items sold were obvious nonfood items and would not readily be confused with eligible edible food items.  Three violations are considered evidence of carelessness.  Therefore, the violations in this case are not too limited to warrant a disqualification.

The Appellant is correct that the firm has no previous history of SNAP program violations or warnings. However, a record of participation in the SNAP with no previously documented instance of violations does not constitute valid grounds for dismissal of the current charges of violations or for mitigating the impact of those charges.

In appeals of adverse actions, the Appellant bears the burden of proving by a preponderance of the evidence, that the administrative actions should be reversed.  That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true. Assertions that the firm has not violated program rules, by themselves and without supporting evidence and rationale, do not constitute valid grounds for dismissal of the current charges of violations or for mitigating their impact.  The Appellant did not provide any evidence that the violations cited in the charge letter did not occur.

## Corrective Action

With regard to the Appellant's contentions with respect to the implementation of corrective actions to ensure that future SNAP violations do not occur, it is important to clarify for the record that the purpose of this review is to either validate or to invalidate the earlier decision of the Retailer Operations Division. This review is limited to what circumstances were at the basis of the Retailer Operations Division action at the time such action was made.  It is not the authority of this review to consider what subsequent

remedial actions may have been taken so that the store may begin to comply with program requirements. There is no provision in the SNAP regulations or internal agency policy directives for waiver or reduction of an administrative penalty assessment on the basis of after-the-fact corrective action implemented subsequent to investigative findings of program violations.  Therefore, the Appellant's contention that it has taken or will take corrective actions, though they would have been valuable towards preventing future program violations, does not provide any valid basis for dismissing the charges or for mitigating the penalty imposed.

### Financial Hardship

With regard to the Appellant's contention that the imposed sanction would impose a financial hardship on the firm, it is recognized that some degree of economic hardship is a likely consequence whenever a store is disqualified from participation in SNAP.  However, there is no provision in the SNAP regulations for waiver or reduction of an administrative penalty assessment on the basis of possible economic hardship to the firm or to ownership resulting from imposition of such penalty.  To allow ownership to be excused from an assessed administrative penalty based on purported economic hardship to the firm would render virtually meaningless the enforcement provisions of the Food and Nutrition Act of 2008, as amended, and the enforcement efforts of the USDA.

Furthermore, giving special consideration to economic hardship to the firm would forsake fairness and equity, not only to competing stores and other participating retailers who are complying fully with program regulations, but also to those retailers who have been disqualified from the program in the past for similar violations.  Therefore, Appellant's contention that the firm may incur economic hardship based on the assessment of an administrative penalty does not provide any valid basis for dismissing the charges or for mitigating the penalty imposed.

### CIVIL MONEY PENALTY

The Retailer Operations Division correctly concluded that the Appellant was eligible for a hardship CMP in lieu of a six month SNAP disqualification as Quality Meat Market is selling a substantial variety of staple food items and the firm's disqualification would cause hardship to SNAP households.  Thus, a hardship CMP in the amount of $33,000.00 was imposed in lieu of the six month SNAP disqualification.

The case record documents that the Retailer Operations Division correctly calculated the amount of the hardship CMP under 7 CFR § 278.6(g).  That regulation states that the hardship CMP is to be calculated on a formula which includes the SNAP redemption volume of the store during the twelve months prior to the firm being notified of the violations.  Modifications to the hardship CMP may occur only when there is an error in calculation or the amount exceeds the agency limit.  The Retailer Operations Division correctly determined, using the methodology described in 7 CFR § 278.6(g), that the calculated amount of the hardship CMP was $33,000.00.

### CONCLUSION

Accordingly, the determination by the Retailer Operations Division to assess a hardship CMP in the amount of $33,000.00 in lieu of a six month disqualification from participating as an authorized retailer in the SNAP is sustained.  Based on the discussion above, the amount of the hardship CMP was properly computed by the Retailer Operations Division.  Please note that if the penalty is not paid, the six month SNAP disqualification will be imposed.  The Appellant may contact the FNS Financial Management Accounting Division at 1-703-605-0483 to discuss a monthly payment plan, or follow the instructions in the Retailer Operations Division's letter dated February 23, 2023, regarding payment options.

In accordance with the Food and Nutrition Act, and the regulations thereunder, this penalty shall become effective thirty (30) days after receipt of this letter. In the event a six month disqualification is imposed for failure to pay the CMP, or some lesser disqualification period reflecting the unpaid portion of the CMP, the Appellant may reapply for authorization to participate in the SNAP up to 10 days prior to the end of the disqualification period. When eligible, the Appellant may reapply for SNAP authorization using the application instructions contained on the FNS web site. Questions regarding the application process can be answered by the FNS Retailer Service Center at 1-877-823-4369.

## RIGHTS AND REMEDIES

Your attention is called to Section 14 of the Food and Nutrition Act (7 U.S.C. 2023) and to Section 279.7 of the Regulations (7 CFR § 279.7) with respect to your right to a judicial review of this determination. Please note that if a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which you reside or are engaged in business, or in any court of record of the State having competent jurisdiction. If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision.

Under the Freedom of Information Act, FNS is releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.


LORIE L. CONNEEN                                                        May 9, 2023
ADMINISTRATIVE REVIEW OFFICER