**IN THE UNITED STATES DISTRICT COURT**
**for the NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| DR. LERLEAN JOHNSON, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| DEKALB COUNTY SCHOOL DISTRICT, | ) | ***Jury Trial Demanded*** |
| | ) | |
| DEFENDANT. | ) | |

## <u>COMPLAINT FOR EMPLOYMENT DISCRIMINATION</u>

COMES NOW Dr. Lerlean Johnson, Plaintiff in the above-styled matter, by and through her undersigned counsel, and files this, her Complaint for Employment Discrimination. In support of said Complaint, Plaintiff shows this Honorable Court as follows:

<u>PARTIES AND JURISDICTION</u>

1.

Plaintiff is a natural person residing in Dekalb County, Georgia.

2.

Defendant Dekalb County School District is Dekalb County, Georgia's county-level school system.

3.

Defendant Dekalb County School District is comprised of at least 100 schools, enrolls at least 100,000 students annually, and traditionally employs at least 6,000 teachers and/or full-time employees.

4.

Defendant Dekalb County School District maintains its principal offices at 1701 Mountain Industrial Boulevard, Stone Mountain GA 30083.

5.

Plaintiff brings this action for employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000e and also pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 (1967).

6.

Plaintiff duly filed a Charge (No. 410-2022-01928) with the Equal Opportunity Commission on or about January 14, 2022.

7.

Plaintiff received a Notice of Right to Sue on her Title VII claims from the Equal Employment Opportunity Commission on or about March 13, 2023.

8.

For the Court's convenience, Plaintiff's Notice of Right to Sue is attached hereto as "Exhibit A."

9.

Plaintiff received a Notice of Right to Sue on her ADEA claims from the Equal Employment Opportunity Commission on or about March 17, 2023.

10.

For the Court's convenience, Plaintiff's second Notice of Right to Sue is attached hereto as "Exhibit B."

11.

This Complaint for Employment Discrimination is timely filed before the expiration of ninety (90) days following the issuance of Plaintiff's Notice of Right to Sue.

12.

Jurisdiction is proper in this Court.

<u>FACTS</u>

13.

Plaintiff re-states and incorporates Paragraphs (1) through (12) above as if fully recited herein.

14.

At all times relevant hereto, Plaintiff was an employee of Defendant.

15.

Specifically, at all times relevant hereto, Plaintiff worked as one of three (3) Assistant Principals under Margie Smith at Dekalb Alternative School or "DAS."

16.

Plaintiff is a 60-year-old African American female.

17.

Plaintiff has darker skin than both of the other Assistant Principals at Dekalb Alternative School.

18.

Both prior to and during Plaintiff's time as a direct report to Smith, Defendant received numerous complaints about Smith including but not limited to Smith bullying, harassing, discriminating against, and retaliating against Smith's subordinates.

19.

Despite these complaints, Defendant allowed Smith to obtain and continue in leadership positions involving direct supervisory authority over other employees.

20.

Smith routinely publicly, cruelly, and unreasonably berated employes at Dekalb Alternative School (including Plaintiff).

21.

Smith's antics created and fostered a hostile work environment at Dekalb Alternative School which became more and more unbearable over the years.

22.

Smith's tirades often included race-based, skin color-based, age-based, sex (or sexual orientation)-based, and other generally cruel remarks to and about Plaintiff.

23.

Smith would make Plaintiff run personal errands and/or tend to personal business for Smith during school hours.

24.

For instance, on one occasion, Smith required Plaintiff to abandon her work duties and spend the day at Smith's house awaiting a refrigerator delivery.

25.

Smith would regularly yell and curse at Plaintiff angrily and abusively, including in front of students and/or Plaintiff's and Smith's subordinates.

26.

Smith accessed Plaintiff's home address from Plaintiff's personnel file and would show up at Plaintiff's home uninvited, unwelcome, and unannounced.

27.

On one particularly egregious occasion while Plaintiff and Smith were out of town on a trip to attend the funeral of another employee's mother, Smith entered Plaintiff's hotel room and climbed into Plaintiff's bed.

28.

On this occasion, Smith was only wearing a brassiere on the top half of her torso.

29.

On this occasion, when Smith climbed into Plaintiff's bed, Smith pressed her breasts against Plaintiff's arm.

30.

Plaintiff did **_not_** consent to Smith climbing into Plaintiff's bed.

31.

Smith's behavior in this instance was unwelcome, offensive, and humiliating to Plaintiff.

32.

On another particularly egregious occasion, Smith continuously groped Plaintiff's inner thigh/groin area while some DAS staffers attended a basketball game.

33.

Plaintiff did **_not_** consent to being groped by Smith.

34.

Smith's behavior in this instance was unwelcome, offensive, and humiliating to Plaintiff.

35.

Smith also had a habit of demanding and collecting money, often for personal reasons, from DAS staffers.

36.

These and similar instances happened regularly, often in the presence of other employees, including Plaintiff's subordinates.

37.

Smith often abused her supervisory authority, often resorting to punishing employees (including Plaintiff) according to her personal whims and retaliating against anyone who dared to speak up against her harsh treatment.

38.

For instance, if Plaintiff spoke out against Smith (or was perceived by Smith to speak speaking against Smith) or otherwise did anything Smith disliked or disapproved of, Smith would respond by employing a variety of retaliatory tactics.

39.

These tactics included but were not limited to:

a.  assigning additional duties;

b.  shortening deadlines;

c.  giving intentionally ambiguous directions regarding work assignments;

d.  re-assigning Plaintiff to middle school;

e.  moving Plaintiff's office;

f.  gossiping about Plaintiff or starting rumors about Plaintiff;

g.  isolating Plaintiff from co-workers;

h.  giving Plaintiff the silent treatment;

i.   daring Plaintiff to file complaints against Smith;

j.   taunting Plaintiff that if a complaint were filed, nothing would be done; and

k.  threatening Plaintiff's job.

40.

Smith engaged in a decade-long campaign of discrimination, hostility, harassment, and retaliation, the highlights of which appear above but the entirety of which is impossible to detail herein.

41.

On or about September 27, 2020, Plaintiff made a formal complaint regarding Smith to Regional Superintendent Pamela Benford.

42.

Plaintiff's complaints to Benford detailed Smith's characteristic abuse, intimidation, and retaliation as well as the level of fear Smith had strategically instilled in DAS employees regarding advancing their complaints to higher-ups.

43.

Plaintiff's complaints to Benford fell on deaf ears.

44.

Plaintiff was never contacted again regarding the complaint to Benford.

45.

On or about March 29, 2021, Plaintiff filed a formal personnel complaint and launched an internal grievance against Margie Smith.

46.

The basis for the internal grievance was unprofessional conduct, hostile work environment, and bullying.

47.

On April 14, 2021, Defendant – through Regional Superintendent
Candace Alexander – held a mediation on Plaintiff's grievance.

48.

In response to the item on the personnel complaint form requesting "the
date of the occurrence of the most recent incident or other matter on which the
Complaint is based," Plaintiff wrote, "March 23, 2021 and March 26, 2021 and
August 19, 2020 and other dates).

49.

Despite the various dates listed, Alexander expressly limited the scope of
the mediation to two days – March 23, 2021 and March 26, 2021.

50.

During the mediation, Alexander stated that she would initiate a "climate
survey" amongst DAS employees regarding Smith's leadership of the school.

51.

Defendant went silent for one month following the mediation.

52.

During this time, Smith continued her abusive behaviors toward Plaintiff
which included excluding Plaintiff from administrative/leadership meetings and
banning Plaintiff from entering the school's administrative suite.

53.

On May 13, 2021, Alexander met with Plaintiff, Smith, and other members of DAS administrative staff regarding procedures for the end of the 2020-2021 school year.

54.

After the May 13, 2021 meeting, Plaintiff reminded Alexander that Plaintiff had not heard or received any communications in follow-up to the April 14, 2021 mediation and, further, that the climate survey had not been conducted.

55.

The following day, on May 14, 2021, Alexander e-mailed Plaintiff to inform Plaintiff of the results of the mediation.

56.

Specifically, Alexander found no evidence of harassment, retaliation, or unprofessional conduct by Margie Smith.

57.

Alexander further advised Plaintiff that if she wished to move forward with her complaint Plaintiff should contact Employee Relations and, in the meantime, Plaintiff was to "complete her duties as assigned."

58.

From approximately May 24th through June 3, 2021, Alexander conducted a climate survey at DAS.

59.

Prior to the survey, Smith met with and threatened DAS staff, advising them that survey input would not be kept confidential.

60.

Prior to the survey, Smith advised DAS staff that that unsavory survey input regarding Smith or her leadership would constitute just cause for job loss.

61.

Notwithstanding the intimidation attempt, the survey results corroborated that Smith had created an unprofessional and toxic environment at DAS.

62.

The survey results showed that employees were experiencing stress, tension, and fear of retaliation.

63.

The survey results showed that employees found Margie Smith to be an overall ineffective leader.

64.

Notwithstanding the survey results, Smith continued as Principal of DAS.

65.

In late August 2021, a sexual harassment complaint involving another DAS staffer was lodged against Margie Smith.

66.

On August 31, 2021, Margie Smith went out on leave.

67.

Smith continued her abusive, retaliatory, discriminatory conduct towards Plaintiff right up to and through this date.

68.

As of August 31, 2021, Defendant had still not provided any findings or results from Plaintiff's complaints regarding Smith.

69.

On September 20, 2021, Plaintiff emailed Defendant to request a follow up on her complaint.

70.

Defendant did not respond to Plaintiff's request.

71.

On January 14, 2022, still with no response from Defendant regarding the complaint and still experiencing daily anxiety in not knowing whether Smith would return to DAS, Plaintiff filed an EEOC Charge.

72.

On several days throughout late April and early-to-mid May 2022, Kawanna Findlay, a Legal Analyst and Investigator in Defendant's Employee Affairs department, visited DAS.

73.

Defendant had recovered some of funds from Smith that Smith had collected under false pretenses and not returned to DAS staffers.

74.

Findlay visited DAS for the purpose of disbursing the recovered funds to DAS staffers and having the staffers, including Plaintiff, sign "acknowledgements" to this effect.

75.

At this time, Defendant still had not responded to Plaintiff's request for follow-up regarding Plaintiff's complaint against Smith.

76.

On or about July 13, 2022, Defendant filed a Position Statement in response to Plaintiff's EEOC Charge.

77.

In September 2022, the EEOC provided a copy of Defendant's Position Statement to Plaintiff (through Plaintiff's counsel).

78.

Defendant's Position Statement to the EEOC included as an exhibit a Memorandum purportedly authored by Marissa Key, Executive Director of Employee Relations.

79.

The Memorandum purportedly contains the findings of Plaintiff's March 2021 grievance.

80.

Dated August 31, 2021, the memorandum was issued no sooner than six (6) months after Plaintiff's March 2021 formal grievance against Smith was initiated and approximately one year after Plaintiff's September 2020 complaint to Benford regarding Smith.

81.

September 2022 was the first time Plaintiff ever received a copy of the Memorandum from Defendant.

82.

Key findings as memorialized in the Memorandum include that allegations against Smith had been continuous since at least August 19, 2020.

83.

Key findings as memorialized in the Memorandum include that on numerous occasions, Smith "yelled [at], screamed[at], belittled, and cursed [at]" Plaintiff in front of Plaintiff's colleagues and subordinates, and this was corroborated by several employees interviewed by Employee Relations.

84.

Key findings as memorialized in the Memorandum include that the culture of fear Margie Smith created included fear of reporting her behavior to higher ups as Smith would taunt her staff by assuring them that any complaints – like Plaintiff's – would fall on deaf ears.

85.

Ultimately, Defendant through Executive Director of Employee Relations Marissa Key determined that Smith created a hostile work environment due to bullying, unprofessional conduct, and harassment.

86.

Key recommended that Smith be removed from DAS, placed in a non-school setting, required to attend extensive training, and directed to immediately refund monies wrongfully collected from DAS staffers.

<u>DEFENDANT'S FAILURES</u>

87.

Plaintiff re-states and incorporates Paragraphs (1) through (86) above as if fully recited herein.

88.

With respect to the September 2020 complaint to Benford, Defendant through Benford and others breached its duties to Plaintiff.

89.

With respect to the September 2020 complaint to Benford, Defendant failed to investigate promptly and/or properly.

90.

With respect to the September 2020 complaint to Benford, Defendant failed to take reasonable steps to prevent or correct Smith's problematic and/or illegal behaviors.

91.

With respect to the September 2020 complaint to Benford, Defendant failed to take reasonable steps to protect Plaintiff from further harm.

92.

With respect to the September 2020 complaint to Benford, Defendant failed to follow its own policies and procedures regarding complaints of this nature.

93.

With respect to the September 2020 complaint, Defendant failed other ways to be demonstrated at trial.

94.

With respect to the March 2021 grievance, Defendant through Smith and others breached its duties to Plaintiff.

95.

With respect to the March 2021 grievance, Defendant failed to investigate promptly and/or properly.

96.

With respect to the March 2021 grievance, Defendant failed to take reasonable steps to prevent or correct Smith's problematic and/or illegal behaviors.

97.

With respect to the March 2021 grievance, Defendant failed to take reasonable steps to protect Plaintiff from further harm.

98.

With respect to the March 2021 grievance, Defendant failed to follow its own policies and procedures regarding internal grievances.

99.

With respect to the March 2021 grievance, Defendant failed in other ways to be demonstrated at trial.

100.

With respect to the April 2021 mediation held by Alexander, Defendant breached its duties to Plaintiff.

101.

With respect to the April 2021 mediation held by Alexander, Defendant to investigate promptly and/or promptly, including but not limited to in limiting evidence presented by Plaintiff to only two (2) days despite knowledge that Plaintiff's complaints extended well beyond this timeframe.

102.

With respect to the 2021 mediation held by Alexander, Defendant failed in its unreasonable delay regarding providing results of the mediation to Plaintiff.

103.

With respect to the 2021 mediation held by Alexander, Defendant failed in other ways to be demonstrated at trial.

104.

With respect to the May 2021 climate survey, Defendant breached its duties to Plaintiff.

105.

Following (and despite the results of) the May 2021 climate survey, Defendant failed to take reasonable steps to prevent or correct Smith's problematic and/or illegal behaviors.

106.

Following (and despite the results of) the May 2021 climate survey, Defendant failed to take reasonable steps to protect Plaintiff from further harm.

107.

With respect to the May 2021 climate survey, Defendant failed in other ways to be demonstrated at trial.

108.

With respect to the August 2021 Memorandum, Defendant breached its duties to Plaintiff.

109.

With respect to the August 2021 Memorandum, Defendant failed in its unreasonable delay in issuing the same following the initiation of the March 2021 internal grievance.

110.

With respect to the August 2021 Memorandum, Defendant failed to follow its own policies and procedures regarding internal grievances including but not limited to Defendant's failure to provide the Memorandum to Plaintiff.

111.

With respect to the August 2021 Memorandum, Defendant failed in other ways to be demonstrated at trial.

112.

At all times relevant, Defendant's failures regarding Smith's treatment of Plaintiff and Defendant's response to same were numerous, repetitive, callous, and intentional.

## CAUSES OF ACTION

### 113.

Plaintiff re-states and incorporates Paragraphs (1) through (112) above as if fully recited herein.

### 114.

Plaintiff brings this action for age discrimination under ADEA.

### 115.

The ADEA protects employees 40 years of age and older from discrimination on the basis of age in hiring, promotion, discharge, compensation or terms and conditions of employment.

### 116.

Plaintiff, a 60-year-old woman, falls into the class of persons protected by the ADEA.

### 117.

Plaintiff's work was of a standard meeting legitimate employment expectations.

### 118.

Despite Plaintiff's work being of a standard meeting legitimate employment expectations, Plaintiff experienced one or more adverse employment events.

119.

Plaintiff's experience of these adverse employment events was, in whole or in part, due to Plaintiff's age.

120.

Plaintiff also brings this action for race/skin color discrimination and retaliation under Title VII of the Civil rights Act of 1964.

121.

Title VII of the Civil Rights Act of 1964 prohibits discrimination based on race and skin color, harassment based on sex, and retaliation for participation in protected activities with regard to any aspect, term, or condition of employment.

122.

Defendant maintains at least 15 employees and, as such, falls within the employers covered by the statute.

123.

Plaintiff, an African American female, falls into the class of persons protected by Title VII.

124.

Plaintiff was qualified for her job and had been hired based on these qualifications.

125.

Plaintiff experienced disparate treatment due to her status as an African-American female having darker skin than her counterparts.

126.

Plaintiff experienced adverse employment events due to her status as an African-American female having darker skin than her counterparts.

127.

Plaintiff experienced disparate treatment due to her status as a female who identifies as part of the LGBTQ community or who was perceived by her employer to be part of the LGBTQ community.

128.

Plaintiff experienced adverse employment events due to her status as a female who identifies as part of the LGBTQ community or who was perceived by her employer to be part of the LGBTQ community.

129.

Plaintiff engaged in statutorily protected activity.

130.

Plaintiff opposed discriminatory practices including but not limited to filing and participating in internal grievance proceedings and employment discrimination proceedings.

131.

Plaintiff was subjected to treatment which might have dissuaded a reasonable worker from engaging in such statutorily protected activity.

DAMAGES

132.

Plaintiff re-states and incorporates Paragraphs (1) through (131) above as if fully recited herein.

133.

Plaintiff seeks compensatory damages of no less than $300,000 and up the maximum amount allowed by law.

134.

Such damages include but may not be limited to:

a.  Back pay;

b.  Front pay;

c.  Lost benefits; and

d.  Other pecuniary losses stemming directly from the wrongful conduct by Defendant including by Smith.

135.

Plaintiff developed crippling anxiety and other mental, emotional, and physical symptoms due to the treatment by Smith and the environment created by Smith.

136.

Plaintiff developed crippling anxiety and other mental, emotional, and physical symptoms due to Defendant's failures regarding Smith's conduct.

137.

Plaintiff's damages also include compensation for her medical treatment and bills in an amount to be demonstrated at trial.

138.

Defendants were wanton, reckless, intentional, and/or callous with respect to failure to address Smith's conduct and/or to respond to Plaintiff's and other employees' complaints regarding Smith.

139.

Thus, Plaintiff also seeks punitive damages in an amount to be determined by this Honorable Court and/or a jury of her peers.

140.

Defendants have also been stubbornly litigious.

141.

Plaintiff also requests that her attorney's fees, litigation costs, and other expenses be awarded for Defendant's stubborn litigiousness.

<u>PRAYER</u>

142.

Plaintiff prays:

a.  That this Complaint for Employment Discrimination be served upon the
    Defendant;

b.  That this matter be heard before a jury of her peers;

c.  That this Court issue judgment for Plaintiff's damages;

d.  That Plaintiff be compensated and made whole for the events forming the
    subject matter hereof;

e.  That Plaintiff be awarded punitive damages for the callous and wanton
    conduct of the Defendants;

f.  That Plaintiff be awarded her attorney's fees, litigation costs, and other
    expenses; and

g.  That Plaintiff receive all other relief to which she is entitled under
    applicable law.

This 9th day of June, 2023

by: **WILLIAMS LEGAL GROUP, LLC**

Raqketa D. Williams
Georgia Bar No. 591631
180 Interstate N Pkwy, Suite 510
Atlanta GA 30339

E-mail:        raqketa@williams-legal-group.com
Fax: 762.212.4954
Phone: 770.575.0187
**ATTORNEY FOR PLAINTIFF**

# EXHIBIT A



**VIA EMAIL**

U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

150 M Street, N.E.
Karen Ferguson , EMP, 4CON, Room 9.514
Washington, DC 20530

March 13, 2023

Dr. Lerlean N. Johnson
c/o Raqketa D. Williams, Esquire
Williams Legal Group
180 Interstate North Parkway
Suite 510
Atlanta, GA  30339

Re:  EEOC Charge Against DeKalb County School District
        No. 410202201928

Dear Dr. Johnson:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Atlanta District Office, Atlanta, GA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by       /s/ Karen L. Ferguson
          Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Atlanta District Office, EEOC
    DeKalb County School District

# EXHIBIT B

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Dr. Lerlean N. Johnson**<br>**2448 Landeau Circle**<br>**TUCKER, GA 30084** | From:  **Atlanta District Office**<br>**100 Alabama Street, SW, Suite 4R30**<br>**Atlanta, GA 30303** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **410-2022-01928** | **TREY PYLE,**<br>**Sr. Federal Investigator** | **470-531-4849** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

***Age Discrimination in Employment Act (ADEA):*** *You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** *of your receipt of this Notice.*  Otherwise, your right to sue based on the above-numbered charge will be lost.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Darrell Graham
03/17/2023

Enclosures(s)                                         **Darrell Graham**
                                                                **District Director**

cc:   **Derek  Carson**
       **1701 Mountain Industrial Blvd**
       **Stone Mountain, GA 30083**

       **Raqketa D Williams**
       **Williams Legal Group LLC**
       **180 Interstate North Parkway Suite 510**
       **Atlanta, GA 30339**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this **Plaintiff's Complaint for Employment Discrimination** was forwarded to all known parties and/or their counsel, if known, in accordance with the applicable Rules of Civil Procedure.

This \9th day of June, 2023

by:  **WILLIAMS   LEGAL   GROUP, LLC**

Raqketa D. Williams
Georgia Bar No. 591631
180 Interstate N Pkwy, Suite 510
Atlanta GA 30339
E-mail:        raqketa@williams-legal-group.com
Fax: 762.212.4954
Phone: 770.575.0187
**ATTORNEY FOR PLAINTIFF**