

Exhibit C



POST OFFICE BOX 2000
LAGRANGE, KENTUCKY 40031-2000

# FAX COVER SHEET

TO:                  Ms. Chante Simpson

DATE:                February 06, 2023

FAX NUMBER:          (866) 447-4293

PHONE:               (678) 589-1935

FROM:                Katelyn Cates
                     Subrogation Operations Management

PHONE:               **502-814-2584**

FAX:                 502-753-7310

Re:   Our Client:            WellCare Health Plan
      Member/Patient:        Janice Amerson/Janice Amerson
      Date of Injury:        01/28/2022
      Our Reference No.:     123364463
      Your Client:           Dondra Barnes
      Your Number:           0657948989

---

**Confidential Healthcare Information Enclosed**

Healthcare information is personal and sensitive information, and you, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Disclosure of this information without additional patient consent or as permitted by law is prohibited. Unauthorized disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

IMPORTANT WARNING: This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED. If you have received this message in error, please notify us immediately and destroy the related message.

---

Katelyn Cates   Reference No. 123364463



**THE RAWLINGS COMPANY** LLC
Subrogation Division

Post Office Box 2000
LaGrange, Kentucky 40031-2000

One Eden Parkway
LaGrange, Kentucky 40031-8100

February 06, 2023

Ms. Chante Simpson
Allstate Insurance Company
S Florida Casualty (3970) 4443 Lyons Rd
#201a
Coconut Creek, FL 33073

**Our Reference No.: 123364463**
Date of Loss: 01/28/2022
Your Number: 0657948989
Your Client: Dondra Barnes

Re:     Our Client: WellCare Health Plan
        Patient: Janice Amerson

Dear Ms. Simpson:

The Rawlings Company, LLC ("TRC") previously placed you on notice that WellCare Health Plan is asserting a subrogation claim against your insured on behalf of the health plan.

As indicated in the written notice previously provided to you, the health plan's claim cannot be negotiated, settled, resolved, or compromised in any way by the patient or the patient's representative. The patient's claim should not be settled without notifying TRC of the potential settlement and obtaining consent from TRC to the resolution of the health plan's subrogation claim.

I am writing in follow up to my voicemail message seeking information on the status of this claim. Please provide me with an update on the status of this claim in the space below and return to me via fax.

You may contact me directly to obtain the exact amount of the health plan's subrogation claim. Thank you for your cooperation.

Sincerely,

*Kate Cates*

Katelyn Cates | Subrogation Operations Management
PH: 502-814-2584 | FAX: 502-753-7310
KMC0@rawlingscompany.com

Comments:
_____
_____
_____



**THE**
**PRAWLINGS**
**COMPANY** LLC
Subrogation Division

Post Office Box 2000
LaGrange, Kentucky 40031-2000

One Eden Parkway
LaGrange, Kentucky 40031-8100

February 06, 2023

Ms. Chante Simpson
Allstate Insurance Company
S Florida Casualty (3970) 4443 Lyons Rd
#201a
Coconut Creek, FL 33073

**Our Reference No.: 123364463**
Date of Loss: 01/28/2022
Your Number: 0657948989
Your Client: Dondra Barnes

Re:     Our Client: WellCare Health Plan
        Patient: Janice Amerson

Dear Ms. Simpson:

As you may know, the Center for Medicare and Medicaid Services ("CMS"), the agency charged with administering Medicare and Medicaid, released a 2011 Position Memorandum commenting upon the recovery rights of Medicare Advantage health plans. In regards to the above-referenced incident, Janice Amerson was provided medical benefits from such a plan. Enclosed is a Memorandum from our legal department discussing CMS's position and court cases that have addressed Medicare Advantage health plan recovery rights. It is important that you, your client and/or insured, and the other parties involved in this matter understand the position of CMS and The Rawlings Company LLC as early as possible. Please contact me if you have any questions, and I look forward to working with you to resolve this case.

Sincerely,

*Kate Cates*

Katelyn Cates | Subrogation Operations Management
PH: 502-814-2584 | FAX:  502-753-7310
KMC0@rawlingscompany.com

**MEMORANDUM**

**FROM:**          **The Rawlings Company, LLC**

**DATE:**          **January 2023**

**RE:**              **Recovery Rights of Medicare Advantage Organizations**

The purpose of this document is to communicate the position of The Rawlings Company, LLC, after consultation with legal counsel, regarding the subrogation and reimbursement rights of Medicare Advantage organizations ("MAOs") under the Medicare Secondary Payer Act ("MSP Act").  As outlined in more detail below, the majority of courts that have reviewed this issue have held that (1) state laws limiting subrogation and reimbursement rights of MAOs are preempted under the Medicare Act, and (2) MAO's recovery rights under the MSP Act are identical to the recovery rights of traditional Medicare, including specifically the ability to pursue subrogation and reimbursement rights through a private cause of action.

1. **Preemption:**

**42 U.S.C. § 1395w-26(b)(3)**

Medicare Part C contains an express preemption provision: "[t]he standards established under [Part C] shall supersede any State law or regulation . . . with respect to MA plans which are offered by MA organizations under this part."  *See also* 42 C.F.R. § 422.108(f).

***Meek-Horton v. Trover Solutions, Inc.*, 910 F. Supp. 2d 690 (S.D.N.Y. 2012)**

This matter involved a class action lawsuit against 40 Medicare Advantage plans alleging various violations of New York law by seeking and obtaining reimbursement out of the proceeds of settlements.   Following *Potts v. The Rawlings Co., LLC*, the U.S. District Court for the Southern District of New York granted the defendants' motion to dismiss after determining that the basis of plaintiffs' claims—New York's anti-subrogation statute—was "expressly preempted by the 'plain wording' of federal law [42 U.S.C. § 1395w-26(b)(3), and 42 C.F.R. § 422.108(f)]", and dismissed the case.  *Id*. at 696.

***Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012)**

Three months prior to *Meek-Horton*, the U.S. District Court for the Southern District of New York held that New York's anti-subrogation statute (GOL § 5-335) was preempted by the Medicare Act: "to whatever extent the New York statute applies to Medicare or MA organizations, it is expressly preempted by the Medicare Act." *Id*. at 196.  In reaching its conclusion, the court held that applicable statutory and regulatory preemption, exhaustion of remedies, and reimbursement provisions apply equally to traditional Medicare and MAOs.  The court also distinguished the issue of whether a MAO has a private cause of action from the issue of preemption of state law: "given the broad express preemption clause in the Medicare Act, whether there is a private right of action for MA organizations is immaterial to the question whether GOL § 5-335 is preempted." *Id*.

***Trezza v. Trezza*, 104 A.D.3d 37 (N.Y. App. Div. 2d Dep't 2012)**

The New York Supreme Court, Appellate Division, held that New York's anti-subrogation statute, as applied to MAOs, was preempted by federal law because it restricted reimbursement rights provided by the Medicare Act and applicable regulations.  In reversing the trial court's order extinguishing a MAO's reimbursement claim, the appellate court held that the express preemption provisions in 42 USC 1395w-26(b)(3) and as explained in 42 CFR 422.108(f), prohibited a state from limiting MAOs' ability to obtain reimbursement under the MSP Act.

2. **Private Cause of Action:**

*In re Avandia Mktg.*, 685 F.3d 353 (3d Cir. 2012)

In *Avandia*, the U.S. Court of Appeals for the Third Circuit held that 42 U.S.C. § 1395y(b)(3)(A) provides MAOs with "a private cause of action for damages . . . placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary payer plan fails to appropriately reimburse" the MAO. *Id*. at 359. The Third Circuit further held that even if 42 U.S.C. § 1395y(b)(3)(A) were deemed ambiguous in this regard, courts must to defer to CMS regulations—specifically 42 C.F.R. § 108—which states: "The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D or part 411 of this chapter." *Id*. at 365-66.

In addition to relying on statutory analysis and the CMS-issued regulations, the Third Circuit also used a December 5, 2011 memorandum issued by CMS—the federal agency that administers Medicare—to support its holding.  The CMS memorandum reiterated that MAOs exercise the same recovery rights as traditional Medicare under the MSP Act, including preemption of state law under 42 C.F.R. § 422.108, and the ability to file a private cause of action in federal court.

*Avandia* is the first court of appeals decision to specifically analyze a MAO's recovery rights under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2).  The Third Circuit distinguished prior cases—including *Care Choices HMO v. Engstrom*, and *Nott v. Aetna*—as those cases did not address the issue of whether a MAO could bring suit under the MSP private cause of action provision. *Id*. at 362.

In sum, pursuant to the *Avandia* decision, MAOs' recovery rights under the MSP Act are identical to the recovery rights of Medicare.  Practically speaking, that means MAOs can pursue a claim directly against any source of benefits defined as primary under the statutes and regulations, even if it has already reimbursed the beneficiary. *See* 42 U.S.C. § 1395w-22(a)(4); 42 C.F.R. § 422.108(f).  Additionally, by virtue of exercising the same rights to recover from a primary plan, entity, or individual that Medicare exercises under the MSP regulations, MAOs have a direct cause of action against any entity who made payment and any beneficiary or attorney who received payment and failed to reimburse the plan. *See* 42 C.F.R. § 411.24(g).

*Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014)

The U.S. Court of Appeals for the Sixth Circuit held that a provider could pursue a private cause of action under the Medicare Secondary Payer Act against an automobile no-fault carrier.  Although this case involved a provider, the holding would justify a similar cause of action by a MAO, should a primary payer—whether it be a no-fault or liability carrier—refuse to reimburse the plan.

*Humana Medical Plan, Inc. v. W. Heritage Ins. Co.*, Case No. 15-11436, 2016 U.S. App. LEXIS 14509 (11th Cir. Aug. 8, 2016)

The U.S. Court of Appeals for the 11th Circuit followed the 3rd Circuit in *Avandia* and held that a Medicare Advantage Organization had private cause of action to sue a primary payer third party carrier under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A).  The Court gave *Chevron* deference to CMS regulation 42 C.F.R. § 411.24(i)(1) which requires a primary payer like the tortfeasor's carrier in the present case to "reimburse Medicare even though it has already reimbursed the beneficiary or other party" if such beneficiary or party fails to reimburse Medicare within 60 days of receiving a primary payment from a carrier.

*MSP Recovery, LLC v. Allstate Ins. Co.*, 2016 U.S. App. LEXIS 15984 (11th Cir. August 30, 2016)

The U.S. Court of Appeals for the 11th Circuit, following its decision in *Humana Medical Plan, Inc. v. W. Heritage Ins. Co.*, vacated and remanded seven district court opinions which held Medicare Advantage Organizations must demonstrate first party personal injury protection insurers' responsibility to pay primary to the MA plan through a state court action before bringing a claim in federal court under the Medicare Secondary Payer Act.  Instead, the 11th Circuit held that

demonstrating responsibility in a tort scenario with a third party primary payer was different than establishing primary payment responsibility in first party contracts between Medicare Advantage beneficiaries and the their auto carriers. The 11th Circuit held that the contract between a beneficiary and his or her auto insurer is enough to demonstrate responsibility to pay for purposes of maintaining a private cause of action under the MSP against PIP carriers.

*Collins v. Wellcare Healthcare Plans, Inc.*, 2014 U.S. Dist. LEXIS 174420 (E.D. La. Dec. 16, 2014)

In *Collins*, the plaintiff received medical benefits from a MAO after being involved in an automobile accident. She obtained a settlement from the tortfeasor, which she deposited into a trust account, and then filed a declaratory judgment action in state court against the MAO, arguing that the MAO was not entitled to subrogation or reimbursement. The MAO removed the case to the U.S. District Court for the Eastern District of Louisiana, and filed a counterclaim against the plaintiff seeking to recover the benefits it incurred out of the plaintiff's settlement with the tortfeasor.

The district court dismissed the plaintiff's declaratory judgment action for lack of subject matter jurisdiction, as it inherently demanded an interpretation of the Medicare Act, even though it was fashioned as a state law claim. Claims that arise under the Medicare Act must exhaust their administrative remedies prior to judicial review under 42 U.S.C. § 405(h). *Id.* at *17.

The district court then granted the MAO's counterclaim, in part. Citing to *Avandia* and the CMS regulations in support, it held that an MAO could pursue a private cause of action in federal court against the plaintiff to obtain reimbursement out of the proceeds of her settlement under 42 U.S.C. § 1395y(b)(3)(A) ("There is established a private cause of action for damages. . .in the case of a primary plan which fails to provide for primary payment . . . ."). *Id.* at *30. The court reasoned there was "no real distinction between a claim against a tortfeasor or his insurer to obtain reimbursement and a claim against a beneficiary to obtain reimbursement from a settlement funded by a tortfeasor or his insurer" for the purposes of a MAO's cause of action under 42 U.S.C. § 1395y(b)(3)(A). *Id.* at *31.

*Humana Ins. Co. v. Farmers Tex. County Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 166654 (W.D. Tex. Sept. 24, 2014)

In this matter, Humana – the MAO – made conditional payments to several enrollees who were injured as a result of an automobile accident. Each individual also had an automobile insurance policy with Farmers, who the MAO argued was the primary payer. Farmers refused the MAO's request for reimbursement, and the MAO filed suit in the U.S. District Court for the Western District of Texas. In response, Farmers filed a motion to dismiss, arguing that a MAO did not have a private cause of action under the MSP Act. The district court agreed with the Third Circuit's analysis in *Avandia*, and denied Farmer's motion to dismiss, finding that "any private plaintiff with standing may bring an action [under 42 U.S.C. 1395(b)(3)(A)]." *Id.* at *4.

*Humana Ins. Co. v. Paris Blank, LLP*, 2015 U.S. Dist. LEXIS 61814 (E.D. Va. May 10, 2016)

Addressing MAO recovery rights for the first time in the 4th Circuit, the U.S. District Court for the Eastern District of Virginia held MAOs have a private cause of action under the MSP statute. The Court adopted the reasoning of the 3rd Circuit in *Avandia*. The MSP statute is "broad and unambiguous" and places "no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary payer." Like in *Avandia*, the Court held that even if the statute had been construed to be ambiguous, the CMS regulations reiterating these rights would be given *Chevron* deference. Again relying on *Avandia*'s reasoning, the Court went on to hold that the MSP private cause of action permitted MAOs to pursue members' attorneys and their law firms.

*Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4[th] 66 (2nd Cir. 2022)

The U.S. Court of Appeals for the 2nd Circuit has followed the precedent set in the Third and Eleventh Circuits upholding the rights of the MAO include a private cause of action against the primary payer under the Paragraphs (1) and (2)(A) of

the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A) ("There is established a private cause of action for damages. . .in the case of a primary plan which fails to provide for primary payment . . . ."). In this case, the beneficiary of the Medicare Advantage plan sustained injuries at a Big Y store, a self-insured business, and received medical treatment in the amount of $9,854.16. The tortfeasor insurer executed a settlement agreement directly with the beneficiary, through counsel, who subsequently failed to reimburse the MAO for paid medical expenses. The Court first considered the definition of "primary payer" in 42 U.S.C. § 1395y(b)(2)(A)(ii) and determined that it shall be broadly construed to include a wide range of plans including those which are deemed self-insured. Citing the persuasive decisions of *Avandia* and *Humana,* the court affirmed that the obligation of the primary payer to reimburse the MA plan was not satisfied by simply settling with the plan beneficiary.

In examining whether the terms of any settlement shall impact MAO's private cause of action, the court concluded that no admission or determination of liability is necessary to effectuate the primary payer's obligation to reimburse the plan. Similarly, the settlement or agreement is not required to specifically identify medical costs. The existence of a payment conditioned upon a release intends to resolve all claims which, necessarily, includes any claim for medical expenses.

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Center for Medicare
7500 Security Boulevard, Mail Stop C4-21-26
Baltimore, Maryland 21244-1850



## CENTER FOR MEDICARE

DATE:          December 5, 2011

TO:            Medicare Advantage Organizations and Prescription Drug Plan Sponsors

FROM:          Danielle R. Moon, J.D., M.P.A.
               Director, Medicare Drug & Health Plan Contract Administration Group

               Cynthia Tudor, Ph.D.
               Director, Medicare Drug Benefit and C&D Data Group

SUBJECT:       Medicare Secondary Payment Subrogation Rights

The purpose of this memorandum is to summarize and convey our support for our regulations giving Medicare Advantage organizations (MAOs) and Prescription Drug Plan (PDP) sponsors the right, under existing Federal law, to collect for services for which Medicare is not the primary payer. In recent decisions, several courts have challenged Federal regulations governing these collections. Specifically, several MAOs have not been able to take private action to collect for Medicare Secondary Payer (MSP) services under Federal law because they have been limited to seeking remedy in State court.

CMS regulations at 42 CFR § 422.108 describes MSP procedures for MAOs to follow when billing for covered Medicare services for which Medicare is not the primary payer. These regulations also assign the right (and responsibility) to collect for these services to MAOs. Specifically, §422.108(f) stipulates that MAOs will exercise the same rights of recovery that the Secretary exercises under the Original Medicare MSP regulations in subparts B through D of part 411 of 42 CFR and that the rules established in this section supersede any State laws. Additionally, the MSP regulations at 42 CFR §422.108 are extended to Prescription Drug Plan (PDP) sponsors at 42 CFR §423.462. Accordingly, PDP sponsors have the same MSP rights and responsibilities as MAOs.