IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Rosalio Vega, Esperanza Morales Elizalde, Dayse Rezende, Gilmar De Oliveira Rezende, Laritza Chavez Gomez, Kevin Lezama Mendez, DLG, Ashly Valle Chavez, Maria Eduarda Maza Hellyzamaryry Mazao, Daniel Mazao, Ma Margarita Rodriguez Andrade, Maria Rojas Fajardo, Maximiliano Galvan Rojas, Mariano Galvan Rojas, Jaason Raudales, Juan Raudales, Rosa Godoy, ARIsai Gonzalez Carlon, Marcela Rodriguez Ramirez, Jose Mendoza Torres, Maria Martinez Osorio, Ulises Vera, Mayray Padron Hernandez, Paul Santos, Adriana Reyes Duque, Rita Jimenez Ortuno, Martha Cordova Guerrero, Maria de Lourdes Zavala, Xueyun Feng, Estela Jimares Gonzalez, Lucilene Dos Prazeres, Gabriela Gutierrez Gonzalez, Jose Batres Santos, Amadeo Marquez Nolasco, Bessy Medina Morazan, Joseth Aguero Castillo, Juan Carlos Baten Perez, Ramon Reyes Montoya, Carlos Perez Ayala, Silvia Marin Pacheco, Melvin Espana Melara, and Francisco Torres Almanza, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C/A No.: |
| | ) ) | **COMPLAINT** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Ur M. Jaddou, Director, United States Citizenship and Immigration Services, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## COMPLAINT

In 2008, Congress recognized that Defendant's visa program for victims of crime—the "U status" program—was broken because of adjudication delays. It therefore enacted interim work authorization and deferred action for U status applicants with bona fide applications to survive in the United States while they assisted law enforcement. Congress expected those interim benefits to be issued in 60 days; today, Defendant reports it takes 60 months to issue these interim benefits. Plaintiffs have waited between 6 and 65 months. And all Plaintiffs' benefits requests are pending at the Vermont Service Center. As such, this Court should compel action on Plaintiffs' pending immigration benefit petitions.

## PARTIES

1.      Plaintiff Rosalio Vega is a citizen and national of Mexico who currently lives in Forest Park, GA.

2.      Plaintiff Esperanza Morales Elizalde is a citizen and national of Brazil who currently lives in Forest Park, GA.

3.      Plaintiff Dayse Rezende is a citizen and national of Brazil who currently lives in Marietta, GA.

4.      Plaintiff Gilmar De Oliveira Rezende is a citizen and national of Brazil who currently lives in Marietta, GA.

5.     Plaintiff Laritza Chavez Gomez is a citizen and national of Honduran who currently lives in Greensboro, NC.

6.     Plaintiff Kevin Lezama Mendez is a citizen and national of Honduran who currently lives in Greensboro, NC.

7.     Plaintiff DLG is a citizen and national of Honduran who currently lives in Greensboro, NC. DLG is a minor. Pursuant to Federal Rule of Civil Procedure 17, DLG brings this case through their general guardian Laritza Chavez Gomez.

8.     Plaintiff Ashly Valle Chavez is a citizen and national of Honduran who currently lives in Greensboro, NC.

9.     Plaintiff Maria Eduarda Mazao is a citizen and national of Brazil who currently lives in Marietta, GA.

10.     Plaintiff Hellyzamaryry Mazao is a citizen and national of who currently lives in Marietta, GA.

11.     Plaintiff Daniel Mazao is a citizen and national of who currently lives in Marietta, GA.

12.     Plaintiff Ma Margarita Rodriguez Andrade is a citizen and national of Mexican who currently lives in Knightdale, NC.

13.     Plaintiff Maria Rojas Fajardo is a citizen and national of Mexican who currently lives in Bartow, FL.

14.   Plaintiff Maximiliano Galvan Rojas is a citizen and national of who currently lives in Bartow, FL.

15.   Plaintiff Mariano Galvan Rojas is a citizen and national of who currently lives in Bartow, FL.

16.   Plaintiff Jaason Raudales is a citizen and national of Honduran who currently lives in Bradenton, FL.

17.   Plaintiff Juan Raudales is a citizen and national of who currently lives in Bradenton, FL.

18.   Plaintiff Rosa Godoy is a citizen and national of who currently lives in Bradenton, FL.

19.   Plaintiff AR is a citizen and national of who currently lives in Bradenton, FL. AR is a minor. Pursuant to Federal Rule of Civil Procedure 17, AR brings this case through their general guardian Juan Raudales.

20.   Plaintiff Isai Gonzalez Carlon is a citizen and national of Mexican who currently lives in Durham, NC.

21.   Plaintiff Marcela Rodriguez Ramirez is a citizen and national of Mexican who currently lives in Durham, NC.

22.   Plaintiff Jose Mendoza Torres is a citizen and national of Mexican who currently lives in Durham, NC.

23.     Plaintiff Maria Martinez Osorio is a citizen and national of Mexican who currently lives in Durham, NC.

24.     Plaintiff Ulises Vera is a citizen and national of Mexican who currently lives in Cary, NC.

25.     Plaintiff Mayray Padron Hernandez is a citizen and national of Mexican who currently lives in Cary, NC.

26.     Plaintiff Paul Santos is a citizen and national of Mexico who currently lives in Marietta, GA.

27.     Plaintiff Adriana Reyes Duque is a citizen and national of Mexico who currently lives in Thomasville, GA.

28.     Plaintiff Rita Jimenez Ortuno is a citizen and national of Mexico who currently lives in Marietta, GA.

29.     Plaintiff Martha Cordova Guerrero is a citizen and national of Mexico who currently lives in Marietta, GA.

30.     Plaintiff Maria de Lourdes Zavala is a citizen and national of Mexico who currently lives in Oxford, AL.

31.     Plaintiff Xueyun Feng is a citizen and national of China who currently lives in Gainseville, GA.

32.     Plaintiff Estela Jimares Gonzalez is a citizen and national of Mexico who currently lives in Clyde, NC.

33.    Plaintiff Lucilene Dos Prazeres is a citizen and national of Brazil who currently lives in Robbins, NC.

34.    Plaintiff Gabriela Gutierrez Gonzalez is a citizen and national of Mexico who currently lives in Cullowhee, NC.

35.    Plaintiff Jose Batres Santos is a citizen and national of El Salvador who currently lives in Hillsborough, NC.

36.    Plaintiff Amadeo Marquez Nolasco is a citizen and national of Honduras who currently lives in Charlotte, NC.

37.    Plaintiff Bessy Medina Morazan is a citizen and national of Honduras who currently lives in Creedmoor, NC.

38.    Plaintiff Joseth Aguero Castillo is a citizen and national of Honduras who currently lives in Creedmoor, NC.

39.    Plaintiff Juan Carlos Baten Perez is a citizen and national of Guatemalan who currently lives in Raleigh, NC.

40.    Plaintiff Ramon Reyes Montoya is a citizen and national of Honduran who currently lives in Durham, NC.

41.    Plaintiff Carlos Perez Ayala is a citizen and national of Salvadoran who currently lives in Durham, NC.

42.    Plaintiff Silvia Marin Pacheco is a citizen and national of Mexican who currently lives in Durham, NC.

43.     Plaintiff Melvin Espana Melara is a citizen and national of Honduran who currently lives in Durham, NC.

44.     Plaintiff Francisco Torres Almanza is a citizen and national of Mexican who currently lives in Sandord, NC.

45.     Defendant Ur Jaddou is the Director of United States Citizenship and Immigration Services. In her official capacity, she is responsible for adjudicating U visas and bona fide determinations and work authorization applications.

## VENUE AND JURISDICTION

46.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

47.     Under federal question jurisdiction, this Court can hear causes of action under the Administrative Procedure Act ("APA") challenging, *inter alia*, unlawfully withheld and unreasonably delayed agency actions. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977).

48.     This Court can enter declaratory relief under 28 U.S.C. § 2201 as a remedy for a violation of the APA, though § 2201 neither confers jurisdiction nor provides a cause of action. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

49.     Plaintiffs have exhausted all administrative remedies, and exhaustion is not required for an unreasonable delay case. *Darby v. Cisneros*, 509 U.S. 137 (1993).

50.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(e) because a majority of the Plaintiffs live in this District and Division.

51.     Joinder is proper for these Plaintiffs under Federal Rule of Civil Procedure 20(a)(1)(A) because the Plaintiffs assert a right to relief jointly or severally with respect to and arising out of the same series of transactions or occurrences. *Gutta*, 2021 U.S. Dist. LEXIS 27913. As detailed below, the Plaintiffs all allege that USCIS has intentionally, systematically, and unreasonably delayed adjudication of their immigrant benefit request.

52.     Joinder is also proper for these Plaintiffs under Federal Rule of Civil Procedure 20(a)(1)(B) because all Plaintiffs present a common question of law: Plaintiffs all allege that the adjudication delays associated with their immigrant benefit requests are unreasonable under *Telecommunications Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). *See Gutta,* 2021 U.S. Dist. LEXIS 27913, at *18-20; *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 U.S. Dist. LEXIS 235760, at *4 (N.D. Cal. Dec. 15, 2020). Further, upon information and belief, the Defendants will claim that it treats all of the Plaintiffs' petitions identically, thereby, basing its defense on a common set of facts.

53.     Finally, joinder is proper because Plaintiffs allege that all of their delays stem from a common policy and practice to withhold and delay adjudication of bona fide determinations under Defendant's June 2021 policy.

**FACTS**

54.     Plaintiffs Rosalio Vega and Esperanza Morales Elizalde are from Mexico and have lived in the United States since approximately 3/1997. Plaintiff Rosalio Vega was the victim of Felonius Assault on approximately 4/14/2012 in Forest Park, GA. Plaintiff Rosalio Vega then filed a complete U status application 3/29/2019 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting 50 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

55.     Plaintiffs Dayse Rezende and Gilmar De Oliveira Rezende are from Brazil and have lived in the United States since approximately 3/2000. Plaintiff Dayse Rezende was the victim of Armed robbery on approximately 10/14/2017 in Atlanta, GA. Plaintiff Dayse Rezende then filed a complete U status application 4/19/2019 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of

their applications, and they have been waiting 49 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

56.     Plaintiffs Laritza Chavez Gomez, Kevin Lezama Mendez, DLG, and Ashly Valle Chavez are from Honduras and have lived in the United States since approximately 3/28/2008. Plaintiff Laritza Chavez Gomez was the victim of Felonious Assault, Rape, and Sexual Assault on approximately 11/22/2017 in Durham, NC. Plaintiff Laritza Chavez Gomez then filed a complete U status application 10/21/2021 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting 19 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

57.     Plaintiffs Maria Eduarda Mazao, Hellyzamaryry Mazao, and Daniel Mazao are from Brazil and have lived in the United States since approximately 11/2018. Plaintiff Maria Eduarda Mazao was the victim of Simple battery on approximately 3/3/2020 in Cobb County, GA. Plaintiff Maria Eduarda Mazao then filed a complete U status application 5/5/2021 on behalf of themselves and their family—

including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting 25 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

58.    Plaintiff Ma Margarita Rodriguez Andrade is from Mexican and has lived in the United States since approximately 12/23/2006. Plaintiff Ma Margarita Rodriguez Andrade was the victim of Domestic Violence on approximately 12/6/2017 in Knightdale, NC. Plaintiff Ma Margarita Rodriguez Andrade then filed a complete U status application 11/13/2018 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 55 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

59.    Plaintiffs Maria Rojas Fajardo, Maximiliano Galvan Rojas, and Mariano Galvan Rojas are from Mexico and have lived in the United States since approximately 2003. Plaintiff Maria Rojas Fajardo was the victim of Domestic

Violence & Felonious Assault on approximately 07/5/15 & 9/5/15 in Kenansville, NC. Plaintiff Maria Rojas Fajardo then filed a complete U status application 2/8/2019 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting 52 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

60.    Plaintiffs Jaason Raudales, Juan Raudales, Rosa Godoy, and AR are from Hondurus and have lived in the United States since approximately 11/22/2014. Plaintiff Jaason Raudales was the victim of assualt, battery, culpable negligence on approximately 10/23/2016 in Palmetto, FL. Plaintiff Jaason Raudales then filed a complete U status application 2/19/2019 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting 52 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

61.    Plaintiffs Isai Gonzalez Carlon and Marcela Rodriguez Ramirez are from Mexico and have lived in the United States since approximately March 2005. Plaintiff Isai Gonzalez Carlon was the victim of Felonious Assault & Kidnapping on approximately 3/3/2021 in Durham. NC. Plaintiff Isai Gonzalez Carlon then filed a complete U status application 01/24/20222 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting #VALUE! months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

62.    Plaintiffs Jose Mendoza Torres and Maria Martinez Osorio are from Mexican and have lived in the United States since approximately Aug-99. Plaintiff Jose Mendoza Torres was the victim of Kidnapping, Unlawful Criminal Restraint on approximately 11/6/2018 in Durham, NC. Plaintiff Jose Mendoza Torres then filed a complete U status application 4/16/2019 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting

50 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

63.     Plaintiffs Ulises Vera and Mayray Padron Hernandez are from Mexico and have lived in the United States since approximately 2007. Plaintiff Ulises Vera was the victim of Attempt Felonious Assault on approximately 3/21/2012 in Cary, NC. Plaintiff Ulises Vera then filed a complete U status application 7/29/2019 on behalf of themselves and their family—including but not limited to complete Forms I-918 or I-918A, a personal statement, and a timely and signed supplement B. They also field Forms I-765 for work authorization. Plaintiffs have no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been waiting 46 months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

64.     Plaintiff Paul Santos is from Mexico and has lived in the United States since approximately 8/1999. Plaintiff Paul Santos was the victim of Victom of aggravated assault and robbery on approximately 4/5/2009 in Cobb County, GA. Plaintiff Paul Santos then filed a complete U status application 12/10/2021 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 18 waiting

months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

65.    Plaintiff Adriana Reyes Duque is from Mexico and has lived in the United States since approximately 09/01/2002. Plaintiff Adriana Reyes Duque was the victim of Domestic violence on approximately 5/25/2017 in Thomas County, GA. Plaintiff Adriana Reyes Duque then filed a complete U status application 1/26/2022 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 16 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

66.    Plaintiff Rita Jimenez Ortuno is from Mexico and has lived in the United States since approximately 1998. Plaintiff Rita Jimenez Ortuno was the victim of Domestic Violence on approximately 2001 in Marietta, GA. Plaintiff Rita Jimenez Ortuno then filed a complete U status application 4/9/2020 on behalf of themself— including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 38 waiting

months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

67.     Plaintiff Martha Cordova Guerrero is from Mexico and has lived in the United States since approximately 1999. Plaintiff Martha Cordova Guerrero was the victim of Sexual Assault on approximately 12/21/2018 in Cobb County, GA. Plaintiff Martha Cordova Guerrero then filed a complete U status application 2/6/2020 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 40 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

68.     Plaintiff Maria de Lourdes Zavala is from Mexico and has lived in the United States since approximately 5/23/2002. Plaintiff Maria de Lourdes Zavala was the victim of Domestic violence on approximately 10/18/2019 in Oxford, AL. Plaintiff Maria de Lourdes Zavala then filed a complete U status application 8/24/2020 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have

been 33 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

69.     Plaintiff Xueyun Feng is from China and has lived in the United States since approximately 8/2018. Plaintiff Xueyun Feng was the victim of Stalking on approximately 3/24/2022 in Hall County, GA. Plaintiff Xueyun Feng then filed a complete U status application 3/24/2022 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 14 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

70.     Plaintiff Estela Jimares Gonzalez is from Mexico and has lived in the United States since approximately 10/2006. Plaintiff Estela Jimares Gonzalez was the victim of Domestic violence on approximately 11/24/2019 in Waynesville, NC. Plaintiff Estela Jimares Gonzalez then filed a complete U status application 2/18/2022 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have

been 16 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

71.     Plaintiff Lucilene Dos Prazeres is from Brazil and has lived in the United States since approximately 6/23/2003. Plaintiff Lucilene Dos Prazeres was the victim of Domestic violence on approximately 4/5/2020 in Carthage, NC. Plaintiff Lucilene Dos Prazeres then filed a complete U status application 12/14/2022 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 6 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

72.     Plaintiff Gabriela Gutierrez Gonzalez is from Mexico and has lived in the United States since approximately 10/10/2002. Plaintiff Gabriela Gutierrez Gonzalez was the victim of Domestic violence and assault on approximately 8/16/2020 in Franklin, NC. Plaintiff Gabriela Gutierrez Gonzalez then filed a complete U status application 5/28/2021 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their

applications, and they have been 24 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

73.     Plaintiff Jose Batres Santos is from El Salvador and has lived in the United States since approximately 3/1/2016. Plaintiff Jose Batres Santos was the victim of Felonious Assault, Kidnapping on approximately 10/24/2016 in Durham, NC. Plaintiff Jose Batres Santos then filed a complete U status application 6/27/2022 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 12 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

74.     Plaintiff Amadeo Marquez Nolasco is from Honduras and has lived in the United States since approximately 12/1/1998. Plaintiff Amadeo Marquez Nolasco was the victim of Felonious Assault on approximately 10/26/2020 in Charlotte, NC. Plaintiff Amadeo Marquez Nolasco then filed a complete U status application 11/2/2021 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history.

To date, USCIS has taken no action on any of their applications, and they have been 19 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

75.    Plaintiff Bessy Medina Morazan is from Honduras and has lived in the United States since approximately 7/27/2019. Plaintiff Bessy Medina Morazan was the victim of Felonious Assault on approximately 9/26/2020 in Durham, NC. Plaintiff Bessy Medina Morazan then filed a complete U status application I918A on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been #VALUE! waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

76.    Plaintiff Joseth Aguero Castillo is from Honduras and has lived in the United States since approximately 8/1/2016. Plaintiff Joseth Aguero Castillo was the victim of Felonious Assault on approximately 9/26/2020 in Durham, NC. Plaintiff Joseth Aguero Castillo then filed a complete U status application I918A on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS

has taken no action on any of their applications, and they have been #VALUE!

waiting months. This delay leaves them without a bona fide determination, work

authorization, or deferred action. This delay is harmful.

77.     Plaintiff Juan Carlos Baten Perez is from Guatemalan and has lived in the

United States since approximately Feb-21. Plaintiff Juan Carlos Baten Perez was

the victim of False Imprisonment; Kidnapping; Unlawful Criminal Restraint on

approximately 4/30/2022 in Durham, NC. Plaintiff Juan Carlos Baten Perez then

filed a complete U status application 11/21/2022 on behalf of themself—including

but not limited to a complete Form I-918, a personal statement, and a timely and

signed supplement B. They also field Form I-765 for work authorization. Plaintiff

has no disqualifying criminal history. To date, USCIS has taken no action on any of

their applications, and they have been 7 waiting months. This delay leaves them

without a bona fide determination, work authorization, or deferred action. This

delay is harmful.

78.     Plaintiff Ramon Reyes Montoya is from Honduran and has lived in the

United States since approximately Apr-05. Plaintiff Ramon Reyes Montoya was

the victim of Kidnapping & Unlawful Criminal Restraint on approximately

5/29/2017 in Durham, NC. Plaintiff Ramon Reyes Montoya then filed a complete

U status application 8/29/2018 on behalf of themself—including but not limited to

a complete Form I-918, a personal statement, and a timely and signed supplement

B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 58 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

79.    Plaintiff Carlos Perez Ayala is from Salvadoran and has lived in the United States since approximately Dec-16. Plaintiff Carlos Perez Ayala was the victim of Kidnaping on approximately 4/2/2019 in Durham, NC. Plaintiff Carlos Perez Ayala then filed a complete U status application 3/30/2020 on behalf of themself— including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 39 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

80.    Plaintiff Silvia Marin Pacheco is from Mexican and has lived in the United States since approximately Mar-02. Plaintiff Silvia Marin Pacheco was the victim of Domestic Violence on approximately 7/3/2017 in Durham, NC. Plaintiff Silvia Marin Pacheco then filed a complete U status application 1/8/2018 on behalf of themself—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for

work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 65 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

81.    Plaintiff Melvin Espana Melara is from Honduran and has lived in the United States since approximately 8/9/2016. Plaintiff Melvin Espana Melara was the victim of Felonious Assault on approximately 10/10/2019 in Durham, NC.. Plaintiff Melvin Espana Melara then filed a complete U status application 6/17/2021 on behalf of themselves—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B. They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 24 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

82.    Plaintiff Francisco Torres Almanza is from Mexican and has lived in the United States since approximately 1/1/2007. Plaintiff Francisco Torres Almanza was the victim of Attempt Murder and Felonious Assault on approximately 4/10/1998 in Vass,NC. Plaintiff Francisco Torres Almanza then filed a complete U status application 7/16/2019 on behalf of themselves—including but not limited to a complete Form I-918, a personal statement, and a timely and signed supplement B.

They also field Form I-765 for work authorization. Plaintiff has no disqualifying criminal history. To date, USCIS has taken no action on any of their applications, and they have been 47 waiting months. This delay leaves them without a bona fide determination, work authorization, or deferred action. This delay is harmful.

## FIRST CAUSE OF ACTION
### (APA – Unreasonable Delay for BFD/EAD)

83.    Congress enacted the "U visa" statute in 2000 as part of a decades-long legislative effort to empower and assist law enforcement to investigate and prosecute crime against undocumented immigrants.

84.    These efforts began with the Violence Against Women Act of 1994 ("VAWA"), Pub. L. No. 103-322, 108 Stat. 1796 (1994). To encourage foreign nationals to report domestic violence to law enforcement, VAWA created legal protections for foreign national victims. *Id.* at § 40701, 108 Stat. 1953 (codified at 8 U.S.C. § 1154(a)(1)). VAWA provided an effective tool for law enforcement to ferret out, investigate, and prosecute domestic violence among a vulnerable community that historically would not report such crimes for fear of immigration consequences. But VAWA fell short where the abuser was not an immediate relative. *Id.*

85.    To address this gap in protections, in 2000, Congress created the U-Visa. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (codified at 8 U.S.C. § 1101(a)(15)(U)).

86.     U-Visas are available to foreign nationals who are the victims of "serious

crimes," including but not limited to the following:

> Rape; torture; trafficking; incest; domestic violence; sexual assault;
> abusive sexual contact; prostitution; sexual exploitation; female genital
> mutilation; being held hostage; peonage; involuntary servitude; slave
> trade; kidnapping; abduction; unlawful criminal restraint; false
> imprisonment; blackmail; extortion; manslaughter; murder; felonious
> assault; witness tampering; obstruction of justice; perjury; or attempt,
> conspiracy, or solicitation to commit any of the above mentioned
> crimes.

8 C.F.R. § 214.14(a)(9).

87.     Foreign national victims of such crimes who suffer direct and proximate

harm as a consequence of such qualifying crime must acquire U-status

"certification" from a "certifying agency" that states, *inter alia*, that the foreign

national possesses important information about the crime and he or she will

cooperate in the certifying agency's ongoing investigation or prosecution. 8 C.F.R.

§ 214.14(c)(2)(i).

88.     A "certifying agency" is a "federal, state, or local law enforcement agency,

prosecutor, judge, or other authority that has responsibility for the investigation or

prosecution of a qualifying crime or criminal activity." 8 C.F.R. § 214.14(a)(2).

89.     In effect, these law enforcement agencies *sponsor* the U-Visa on behalf of

the crime victim because the law enforcement agency *needs* them to be present in

the United States to assist in their investigations and prosecutions. By sponsoring

U-Visas, law enforcement agencies offer protection to victims who assist their law enforcement efforts.

90.     After obtaining the law enforcement sponsorship, the foreign national must complete and submit an application for U nonimmigrant status, comprising the U-Visa petition (Form I-918), the U status certification (I-918B), a personal statement, and other evidence of eligibility. *See* Form I-918 Instructions at 10-13 (Apr. 24, 2019) (available at https://www.uscis.gov/i-918 (then click on link to "Form I-918 Instructions").

91.     In addition, "qualifying family members" of the victim may also acquire U-Visa. 8 C.F.R. § 214.14(f). Such derivative beneficiaries' petitions succeed or fail with the principal applicant's petition.

92.     Once a foreign national crime victim or their family member is "admitted" into the United States in U-Visa status, they have work authorization incident to status and, after three years in such status, they may apply for lawful permanent residency (colloquially called a "green card"). However, Congress only allocated 10000 U-Visas per fiscal year. 8 U.S.C. § 1184(p)(2)(A).

93.     The U-Visa program was a rousing success. But the success of the program created two distinct problems.

94.     First, by 2007, it appeared law enforcement would certify more than 10,000 U-status applicants in a fiscal year. This would mean there would be more eligible

U-Visa applicants than U-Visas available, leaving eligible applicants waiting until the following fiscal year for a U-Visa number. In turn, these applicants would go another year without work authorization or protection from deportation.

95.    USCIS addressed this over-subscription problem by creating a regulatory waiting list for eligible applicants who only had to wait for a U-Visa to be available. See 8 C.F.R. § 214.14(d)(2); New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (Sep. 17, 2007).

96.    "All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." 8 C.F.R. §214.14(d)(2) (emphasis added). Once the applicant is moved to the waiting list, he or she would receive deferred action (protection from removal) or parole (permission to physically enter the United States) and would have the right to apply for work authorization. *Id.*

97.    While this fixed the over-subscription problem, this lead to a second problem: an increase in processing times.

98.    In 2008, Congress recognized that wait times for the U-Visa waiting list were growing and U-Visa applicants now needed pre-waiting list work authorization. 154 Cong. Rec. H10,888, 10,905 (Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865.

99.    The bill's sponsor stated U-visa applicants "should not have to wait for up to a year before they can support themselves and their families" and added that USCIS should strive to issue work authorization within 60 days of filing. *Id.* Congress therefore enacted pre-waiting list work authorization for "any alien who has a pending, bona fide application for [U] status." Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, 122 Stat. 5044 (codified in part at 8 U.S.C. § 1184(p)(6)) (emphasis added). This "fix" would ensure U-status applicants could swiftly get work authorization and allow them to make a living while assisting law enforcement and waiting for a space on the waiting list, and then waiting for a U-Visa to become available.

100.   While the Agency's waiting list started in 2007, the Agency refused to implement the pre-waiting list work authorization program for 12 years.

101.   In response to dozens of losses in litigation related to unreasonably delayed waiting list decisions—several in this jurisdiction—on June 14, 2021, the Agency implemented Congress's 2008 "bona fide determination" policy ("BFD"). *See* BFD Policies 1-39 (attached as Ex. A).

102.   Under the Agency's BFD policy, it will provide a BFD to U-Visa applicants who meet the following eligibility criteria:

A complete Form I-918

A complete Form I-918B submitted within 6 months of the certifier's signature;

A personal statement from the petitioner; and

The applicant does not present national security concerns and has not committed violent or dangerous crimes.

Ex. A at 19.

103.   USCIS also considers "other relevant factors." *Id.* USCIS must then exercise its discretion to award or decline a BFD.

104.   If USCIS awards the BFD, the applicant acquires deferred action—protection from physical removal from the United States—and work authorization. *Id.* In this situation, USCIS issues a BFD notice and employment authorization document.

105.   If USCIS denies the BFD, USCIS simply conducts a complete and full waiting list determination.

106.   The analysis is identical for qualifying relatives; however, such analysis cannot take place until USCIS makes a decision on the principal' BFD. Like the other U-Visa benefits, the derivatives' cases rise and fall with the principals.

107.   The BFD process was intended to provide U-Visa applicants work authorization and deferred action faster than the waiting list process.

108.   One year into the program, USCIS has simply substituted the BFD process for the Waiting List process and unreasonably delayed it.

109.   Today, USCIS claims it takes 61.5 months to issue a BFD.

110.   USCIS claims it takes more than 5 years to ensure an application is complete and review the results of standard background checks; this is patently unreasonable.

111.   USCIS has either or both unlawfully withheld or unreasonably delayed bona fide determinations ("BFDs") and BFD Employment Authorization Documents ("EADs") for all Plaintiffs. 5 U.S.C. §§ 551(b), 706(1).

*A BFD is Discrete and Required*

112.   BFD and EADs are required and discrete actions. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ("SUWA")

113.   This Court has jurisdiction in unreasonable delay claims over agency actions that are required and discrete. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).

114.   First, USCIS is required to make a BFD and EAD decision. *Barrios Garcia v. U.S. Dep't Homeland Security*, 25 F.4th 430, 441-52 (6th Cir. 2022).

115.   USCIS's policy guide makes it clear it has a two-step BFD process. First, it reviews the application to determine whether the I918 is complete—whether it includes the I918B certification and the personal statement; second, it reviews the results of the background checks to determine whether it should exercise its discretion to issue a BFD. ECF No. 1-1 at 19.

116.   USCIS confirms that it will review all petitioners pending and filed after June 14, 2021 for BFDs: "USCIS evaluates all petitions for U nonimmigrant status filed by noncitizens living in the United States[.] If USCIS determines a principal petitioner and any other qualifying family members have a bona fide petition and warrant a favorable exercise of discretion, USCIS issues them BFD EADs and grants deferred action." *Id.* at 21.

117.   USCIS chose to make the decision for a BFD and EAD required through its policy guide. *See id.*; *Barrios*, 25 F.4th at 441-52.

118.   Further, USCIS's general adjudicatory regulations require it to make a decision on all benefits where it promulgates a form. *See* 8 C.F.R. § 103.2(b)(19) (defining procedures for notification of approvals); *Id.* at § 103.3 (defining notification procedures for denials).

119.   Neither a statutory nor a regulatory timeline or deadline is necessary to show a "required" action under *SUWA*. *See, e.g., Barrios*, 25 F.4th at 454 ("The violation of a statutory deadline is not required to succeed on a § 706(1) claim.").

120.   Similarly, *a decision* is required even if a benefit is ultimately discretionary. *See SUWA*, 542 U.S. at 66 (citing *Safeway Stores, Inc. v. Brown,* 138 F.2d 278, 280 (Emerg. Ct. App. 1943) (noting a mandamus was appropriate even for discretionary judgments)),

121.   USCIS has a duty under the Administrative Procedures Act ("APA") to make BFDs and EAD decisions for all Plaintiffs "within a reasonable amount of time." 5 U.S.C. § 555(b); *see Barrios*, 25 F.4th at 454.

122.   Second, BFDs and EAD decisions are discrete acts.

*123*.   USCIS has promulgated Forms I-918, I918A, and I765. Decisions on these applications constitute an "order" under 5 U.S.C. § 551(6). Because this Court will not be directing the Agency *how to exercise its discretion* it will only be ordering it to take a discrete, narrow, limited, and easily identifiable decision, it is discrete. *SUWA*, 54 U.S. at 63-68.

*124*.   Because a BFD and EAD decision are required, discrete acts, this Court has jurisdiction to review Plaintiffs' unlawful withholding and unreasonable delay claims.

   *Plaintiffs Allege Specific, Nonconclusory Facts that State a Plausible Claim*

125.   Plaintiffs here allege specific, nonconclusory facts that USCIS is unlawfully withholding or unreasonably delaying final agency action on their BFD and EAD decisions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2008).

126.   Under *Iqbal*, Plaintiffs need only allege non-conclusory, specific facts that demonstrate a plausible claim to relief to state a sufficient claim under Rule 12(b)(6). *Id.*

127.   This is a two-step analysis. First, the Court should review the complaint for well-pleaded allegations—those allegations that are non-conclusory. *Id.* at 678.

128.   Second, the Court should assume all well-pleaded allegations as true and determine whether the complaint states a "plausible" claim. *Id.* at 679.

129.   This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

130.   Tellingly, *Iqbal* does not instruct courts to determine the "merits" of the claim.

131.   This is an unreasonable delay under the factors laid out in *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984). Those factors comprise:

> (1) "the time an agency takes to make a decision should be governed by a 'rule of reason' "; (2) "[t]he content of a rule of reason can sometimes be supplied by a congressional indication of the speed at which the agency should act"; (3) "the reasonableness of a delay will differ based on the nature of the regulation; that is, an unreasonable delay on a matter affecting human health and welfare might be reasonable in the sphere of economic regulation"; (4) "the effect of expediting delayed actions on agency activity of a higher or competing priority . . . [and] the extent of the interests prejudiced by the delay"; and (5) "a finding of unreasonableness does not require a finding of impropriety by the agency."

*Id.*

132.   At the time of filing this Complaint, Plaintiffs' BFDs and EAD decisions been pending between 3 and 62 months.

133.   All of the *TRAC* Factors weigh in favor of compelling agency action.

*TRAC 1: No Rule of Reason*

134.   First, there is no rule of reason controlling USCIS's BFDs and EAD decisions.

135.   USCIS does not make them on a first in, first out basis.

136.   On June 14, 2021, USCIS declared that it would consider all pending U Visa applications and all future U Visa applications for BFDs and EAD decisions.

137.   Since that date, USCIS has not made BFDs or EAD decisions in chronological order.

138.   There is no "line." Rather, the pending U Visa applications are in a pool and USCIS choses the applications to decide at random.

139.   Under its new BFD policy, USCIS has substituted a vast majority of

140.   To the extent USCIS has a rule of reason for BFDs and EAD decisions, it does not apply it.

141.   The current BFD processing times demonstrate that USCIS has no rule of reason for BFD and EAD determinations.

142.   Whether USCIS has a rule of reason or whether it applies it in a particular case is a question of fact. *see Gonzalez*, 985 F.3d at n. 374-75.

143.   USCIS systematically prioritizes BFDs and EAD determinations for later filed petitions over earlier filed petitions for U-status waiting list decisions.

144.   There is no cap for BFDs and EAD determinations.

145.   USCIS's published processing times for BFDs and EAD determinations are

inaccurate and they are not particularly helpful to determine what is reasonable:

> The average adjudication time says little about the unreasonableness of
> USCIS's delay in Plaintiffs' case; this number also does not alter how
> most (if not all) U-visa adjudications might be unreasonably delayed.
> We find it unhelpful to fixate on the average snail's pace when
> comparing snails against snails in a snails' race.

*Barrios*, 25 F.4th at 456.

146.   Because the processing times only articulate when 80% of the BFDs and

EAD determinations are decided, later-filed applications get U-status waiting list

decisions ahead of earlier filed applications.

147.   It has been the policy of USCIS to expedite BFDs for foreign nationals in

removal proceedings or foreign nationals subject to a final order of removal upon a

request from ICE, regardless of whether they are detained or non-detained.

148.   USCIS has failed to follow its own policy in this case expediting BFDs and

EAD determinations for those applicants in removal proceedings.

149.   USCIS makes BFDs and EADs for derivatives whenever it makes a BFD or

EAD determination for the principal, even if the petitions for the derivatives were

filed years later than other principals.

150.   USCIS has no demonstrable rule of reason.

151.   To the extent it has a rule of reason, it must provide proof of such rule of

reason *and* that it follows the rule of reason. *Id.* ("discovery is critical to

understanding whether the U-visa process is a systematic line or not"); *Solis*, 2019

WL 8219790, at *14 (finding "USCIS has not established adherence to its own rule

of reason such that court-ordered action on Plaintiffs' petitions would interfere with

USCIS's other functions and activities.").

152.   Therefore, this factor weighs in favor of a finding of an unreasonable delay.

*TRAC 2: Congressional Intent*

153.   Second, Congress has indicated that all immigration applications for non-

immigrant benefits, such as U-status waiting list decisions, should be made in 30

days:

> It is the sense of Congress that the processing of an immigration benefit
> Petition should be completed not later than 180 days after the initial
> filing of the Petition, except that a petition for a nonimmigrant status
> under section 1184(c) of this title should be processed not later than 30
> days after the filing of the petition.

8 U.S.C. § 1571(b).

154.   USCIS strives to meet this six-month timeline, indicating that section

1571(b) does provide content for USCIS's timelines.

155.   While § 1571(b) is not binding, courts should be mindful of its dictates: "we

are mindful that Congress *has* expressed that immigration-benefit applications

should be adjudicated within six months." *Garcia*, 2021 U.S. App. LEXIS 27444, at *51.

156.   Further, Congress indicated that it should take months, not years to adjudicate BFDs. *See* 154 Cong. Rec. H10,888, 10,905 (Dec.10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865. This factor favors finding that this delay is unreasonable.

### *TRAC 3: Human Health and Welfare or Economic Regulation*

157.   Third, USCIS's BFDs and EAD decisions impact human health and welfare.

158.   Plaintiffs are unable to acquire deferred action.

159.   Plaintiffs are unable to acquire work authorization. Without work authorization they are unable to provide for themselves and their families. Additionally, without work authorization to secure employment, they also lack the economic stability needed to further their rehabilitation and healing following their victimization.

160.   Plaintiffs are unable to seek a social security number, and without a social security number, they often cannot acquire a driver's licenses.

161.   This prevents them from enjoying the benefits of opening a bank account, paying into social security, and safely paying taxes.

162.   Plaintiffs are in jeopardy of being subject to physical removal from the United States.

163.   All of these deprivations impact Plaintiffs' health and welfare. This delay, therefore, affects health and welfare interests, not purely economic interests, and Plaintiffs' health and welfare interests "are weighty, implicate health and welfare, and [demonstrate they] are harmed by principal petitioners' years-long wait to be placed on the U-visa waitlist." *Garcia*, 25 F. 4th at 444.

164.   Further, these allegations alone are sufficient to state a claim for unreasonable delay or unlawful withholding. *Id.*

*TRAC 4: Prejudice to Plaintiff versus Harm to Higher Priority Function*

165.   Fourth, compelling USCIS to make BFDs and EAD determinations would have no effect on a USCIS activity of a higher or competing priority.

166.   USCIS claims that timely adjudication of BFDs is a priority. Compelling agency action here would comport with USCIS policy.

167.   USCIS is treating Plaintiff differently than other U status applicants because it has made BFDs for later-filed applications.

168.   USCIS knowingly cites to inaccurate processing times to claim that Plaintiff's BFD is within processing times. In fact, USCIS stopped reporting processing times for such decisions in 2021.

169.   Compelling USCIS to make a BFD and EAD Determination for each Plaintiff would not push Plaintiff to "the front of the line" because there is no "line." USCIS does not make BFDs and EAD decisions on a first in, first out basis.

170.   Further, to the extent compelling USCIS to make BFDs and EAD decisions delays adjudication of earlier filed petitions, it only delays such decisions by the amount of time it takes an immigration service officer to decide one application. Upon information and belief, this time is matter of mere minutes. Thus, any effect is *de minimis* and has no impact on the overall adjudication waiting times or process.

171.   USCIS has sufficient resources to make BFDs and EAD decisions in a reasonable amount of time.

172.   Additional resources do not affect processing times; thus, the delays associated with BFDs and EAD decisions are not due to lack of resources. Despite the addition if adjudicators, the processing times have remained constant. Defendant has sufficient resources to adjudicate twice as many applications as it does.

173.   For example, in Fiscal Year 2018—October 1, 2017 to September 30, 2018—Defendant's adjudicators took 3.74 hours to make waiting list decisions.

174.   During that same time, USCIS dedicated 83 adjudicators to adjudicating solely U status petitions. *Solis v. Cissna*, No. CV 9:18-00083-MBS, 2019 WL 8219790, at *12 (D.S.C. July 11, 2019).

175.   Based on Defendant's reported actual adjudication times, USCIS could have decided at least 44,919 waiting list decisions (83 adjudicators x 40 hours x 50

weeks divided by 3.74 hours); this calculation does not include the additional 15 hours per week of overtime USCIS approved for these adjudicators at that time. *Id.*

176.   But Defendant reported only 22,785 completions for FY 2018. USCIS adjudicated approximately half of the U status waiting list decisions it should have.

177.   This is the same for FY 2019 and FY 2020.

178.   Upon information and belief, the relevant service centers have increased efficiency through procedural changes, rather than additional resources.

179.   In November 2019, USCIS proposed to raise application fees on various immigration benefits applications to ensure sufficient resources to adjudicate applications with no filing fees, like U status applications.

180.   On the other hand, Plaintiff's interests are prejudiced by the continued delay. Plaintiffs are deprived of the right to deferred action and work authorization, a social security number, and for some a driver's license.

*TRAC 5: Agency Impropriety*

181.   Fifth, it is not required to find agency impropriety to determine these delays as unreasonable.

182.   But, upon information and belief, the Agency has intentionally slowed adjudication BFD and EAD decisions. It has regularly adjudicated half as many applications as its resources would allow.

183.   Further, USCIS regularly represents in district courts around the country representations about its processing that it cannot prove. This is bad faith.

184.   The *TRAC* Factors weigh in favor of this Court compelling USCIS to determine immediately whether Plaintiff should be put on the U status waiting list.

185.   It is, however, inappropriate for this Court to make a decision on the merits of this case— whether the TRAC Factors militate in favor or against a finding of unreasonable delay— unless or until USCIS answers and submits to discovery.

186.   Whether a delay is reasonable under the APA requires a case by case analysis.

187.   Further, a declaration or affidavit from USCIS is an insufficient substitute for the actual reason for the delay contained in the certified administrative record.

188.   This court cannot take judicial notice of inaccurate processing times, even if they are published on government website.

189.   Once Plaintiffs have BFDs and EADs, they still have to wait years to actually receive a U status.

190.   These delays are substantially unjustified.

## EQUAL ACCESS TO JUSTICE CLAIM

191.   Plaintiffs re-allege all facts above as though restated here.

192.   Plaintiffs are all eligible for fees under the Equal Access to Justice Act.

193.   Defendant's BFD and EAD decision delays are substantially unjustified.

194.   No special circumstances preclude an award of fees.

## RESERVATION OF RIGHTS

195.   Plaintiffs reserve the right to add additional allegations of agency error and related causes of action under common law or the APA after receiving the certified administrative record.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS PRAY THAT THIS COURT WILL:

196.   Take jurisdiction over this case;

197.   Declare the delays described above as unreasonable;

198.   Order USCIS to make *bona fide* determinations and decisions on the pending work authorization applications within 14 days;

199.   Order USCIS to pay reasonable attorney's fees under the Equal Access to Justice Act or any other provision of law; and

200.   Any other order necessary to ensure justice.

June 9, 2023                              Respectfully submitted,

                                         /s/ Tracie L. Morgan
                                         Tracie Morgan, Esq.
                                         Bar Number: GA 411089
                                         Hope Immigration, LLC
                                         2110 Powers Ferry Rd., Ste. 310
                                         Atlanta, GA 30339
                                         (678) 713-4255
                                         tracie@hopeimmigration.com

                                         Attorney for the Plaintiffs