**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009



U.S. Citizenship
and Immigration
Services

June 14, 2021                                                     PA-2021-13

# Policy Alert

SUBJECT:   Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment
           Authorization and Deferred Action for Certain Petitioners

## Purpose

U.S. Citizenship and Immigration Services (USCIS) is publishing guidance in the USCIS Policy
Manual[1] on employment authorization and deferred action for principal petitioners for U
nonimmigrant status and qualifying family members with pending, bona fide petitions.[2]

## Background

U nonimmigrant status is available to noncitizens who have been victims of certain crimes, including
domestic violence and sexual assault, and who are or have been helpful to law enforcement in the
prosecution or investigation of those crimes.[3] A noncitizen granted U-1 nonimmigrant status as a
principal petitioner is authorized to work based on that status. USCIS automatically issues an
Employment Authorization Document (EAD) to principal petitioners upon the approval of the
Petition for U Nonimmigrant Status (Form I-918).[4]

If the number of approvable petitions exceeds the annual visa cap allocation, USCIS places the
approvable petitions on a waiting list. USCIS grants deferred action or, in limited circumstances,
parole to U-1 principal petitioners and qualifying family members on the waiting list. USCIS may, as
a matter of discretion, also authorize employment for such petitioners and qualifying family
members.[5] USCIS generally provides such employment authorization under 8 CFR 274a.12(c)(14);
USCIS may also provide employment authorization under INA 214(p)(6), but has not done so
historically.[6]

---

[1] USCIS will expand and revise this content at a later date to fully detail the eligibility requirements petitioners must
establish to obtain U nonimmigrant status. USCIS will also publish additional Policy Manual content to address
documentation and evidence requirements and post-adjudicative matters.
[2] See INA 214(p)(6). USCIS provides guidance on what is a bona fide petition as part of this Policy Manual update; the
statute does not define this term so USCIS provides its interpretation.
[3] Petitioners must possess credible and reliable information about the qualifying crime; and have been, are being, or are
likely to be helpful to law enforcement in the detection, investigation, or prosecution of the qualifying criminal activity.
Petitioners must also establish that they suffered substantial physical or mental abuse as a result of the qualifying crime,
and that they are admissible or merit a discretionary waiver of any applicable grounds of inadmissibility.
[4] See 8 CFR 214.14(c)(7).
[5] See 8 CFR 214.14(d)(2).
[6] On December 23, 2008, the William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008)
amended the Immigration and Nationality Act (INA) to provide DHS with discretion to grant employment authorization

PA-2021-13: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment
Authorization and Deferred Action for Certain Petitioners
Page: 2

Due to drastic increases in the volume of U nonimmigrant petitions and a growing backlog awaiting
placement on the waiting list or final adjudication, USCIS has decided to exercise its discretion under
INA 214(p)(6) to conduct bona fide determinations (BFD) and provide EADs and deferred action to
noncitizens with pending, bona fide petitions who meet certain discretionary standards.[7]
This guidance, contained in Volume 3 of the Policy Manual, updates and replaces Chapter 39.1(d)(2)
and (f) of the Adjudicator's Field Manual (AFM), as well as the AFM's related appendices, and
related policy memoranda. USCIS is implementing this guidance immediately and the guidance
applies to all Form I-918 petitions that are currently pending, or filed on or after June 14, 2021.[8] The
guidance contained in the Policy Manual is controlling and supersedes any related prior guidance.

**Policy Highlights**

- Provides that USCIS conducts an initial review of Form I-918 and will issue BFD EADs and
  deferred action for 4 years to petitioners for U nonimmigrant status and qualifying family
  members if USCIS deems their petition "bona fide", instead of completing a full waiting list
  adjudication.

- Clarifies that, if USCIS determines the principal petition is bona fide, USCIS will then
  determine whether the principal petitioner poses a risk to national security[9] or public safety,
  and finally, whether the principal petitioner warrants a favorable exercise of discretion to
  receive employment authorization under INA 214(p)(6) and deferred action.

- Explains that those who do not receive a BFD EAD under this initial review will proceed to the
  full waiting list adjudication and, if their petitions are approvable, will be placed on the waiting
  list for a U visa. Principal petitioners placed on the waiting list, and their qualifying family
  members, receive deferred action; if they have properly filed for employment authorization,
  they also receive an EAD valid for 4 years.

- Provides that USCIS will generally not conduct waiting list adjudications for noncitizens who
  have been granted BFD EADs and deferred action. Instead, their next adjudicative step will be
  final adjudication for U nonimmigrant status when space is available under the statutory cap.

---

to a noncitizen who has a pending, bona fide petition for U nonimmigrant status. See Section 201(c) of Pub. L. 110-457,
122 Stat. 5044, 5053 (December 23, 2008) (amending INA 214(p)(6)). Though permitted by statute, DHS has not
previously implemented a process for providing such employment authorization, separate from the existing regulatory
waiting list. (The existing regulatory structure, which predates the TVPRA 2008 authority, does not provide a
mechanism for noncitizens with pending petitions to apply for employment authorization prior to waiting list
placement.)
[7] INA 214(p)(6) permits, but does not require, the agency to create a separate employment authorization process.
USCIS conducted an analysis under the Administrative Procedure Act regarding its implementation of INA 214(p)(6),
interpretation of 8 CFR 214.14(d)(2), criminal history checks, and potential reliance interests associated with this Policy
Manual update. For this analysis, see Appendix: Bona Fide Determination Process and Administrative Procedures Act
Considerations.
[8] USCIS also plans to amend the Application for Employment Authorization (Form I-765) at a later date to include a
specific reference to this EAD category.
[9] See INA 212(a)(3).

PA-2021-13: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners
Page: 3

- Explains that throughout the initial 4-year validity period for the BFD EAD and grant of deferred action until final adjudication for U nonimmigrant status, USCIS will update and review background checks at regular intervals to determine whether a principal petitioner or a qualifying family member may maintain his or her BFD EAD and deferred action. USCIS also retains discretion to update background and security checks at any time when case-specific circumstances warrant.

- Clarifies that USCIS will review all petitions, both petitioners placed on the waiting list and petitioners issued BFD EADs, in receipt date order for final adjudication of U nonimmigrant status.

- Clarifies that USCIS is adopting the decision issued by the Ninth Circuit in *Medina Tovar v. Zuchowski* for nationwide application.[10] Therefore, when confirming a relationship between the principal petitioner and the qualifying family member which is based on marriage, USCIS will evaluate whether the relationship existed at the time the principal petition was favorably adjudicated, rather than when the principal petition was filed.

**Citation**

Volume 3: Humanitarian Protection and Parole, Part C, Victims of Crimes [3 USCIS-PM C].

---

[10] See *Medina Tovar v. Zuchowski*, 982 F.3d 631 (9th Cir. 2020) (en banc) (holding invalid the regulatory requirement that a spousal relationship exist at the time the Form I-918 is filed in order for the spouse to be eligible for classification as a U-2 nonimmigrant).

**Appendix: Bona Fide Determination Process Flowchart**

Form I-918 filed by principal petitioner living in the United States is received by USCIS.



**Is the U nonimmigrant status petition bona fide?**

Is I-918 (petition for U nonimmigrant status) properly completed and signed?

Is I-918B (law enforcement certification) properly completed and signed?

Does the filing include a signed statement from the principal petitioner?

Has USCIS collected biometrics from the principal petitioner?

**No**

**Yes**

**May USCIS issue a Bona Fide Determination (BFD) Employment Authorization Document (EAD) and Deferred Action?**

Has the officer determined that the principal petitioner has filed a complete Form I-918? Has USCIS reviewed the results of the principal petitioner's biometrics?

Should USCIS exercise its discretion to grant EAD and deferred action because background checks have not revealed a national security or public safety risk, and the petitioner otherwise merits a favorable exercise of discretion?

**No**

**Eligible for Waiting List Placement?**

Has USCIS collected biometrics from the principal petitioner?

Has the officer identified all deficiencies within filing (if any)?

Has the officer issued an RFE notifying the principal petitioner that a BFD EAD cannot be issued and the initiation of waiting list adjudication?

Has the officer conducted full waiting list adjudication (discretion included)?

Has the officer determined that the principal petitioner has met all eligibility requirements?

**No**

**Petition Denied**

**Yes**

**Principal petitioner receives BFD EAD and deferred action**

**Principal petitioner placed back in receipt date order into queue for adjudication of full benefit**

**Yes**

**Principal petitioner receives EAD and deferred action; placed on waiting list**

Case 1:23-mi-99999-UNA Document 1881-2 Filed 06/09/23 Page 5 of 39

USCIS Response to Coronavirus (COVID-19)



Home > Records > Electronic Reading Room > U Nonimmigrant Status Bona Fide Determination Process FAQs

# U Nonimmigrant Status Bona Fide Determination Process FAQs

**Q1. What is the bona fide determination process?**

**A1.** By statute, USCIS has discretion to provide employment authorization to [noncitizens](#) with pending, bona fide U nonimmigrant status petitions. In June 2021, USCIS implemented the bona fide determination process. The bona fide determination process was created with the goal of conducting initial reviews of U nonimmigrant status petitions more efficiently and providing eligible victims of qualifying crimes with employment authorization and deferred action while they await a final adjudication of their petition for U nonimmigrant status under the annual statutory cap. This will provide victims with stability and better equip them to cooperate with and assist law enforcement.

**Q2. Who does the bona fide determination process apply to?**

**A2.** This policy applies to all Form I-918 petitions pending as of June 14, 2021, filed by principal petitioners and qualifying family members living in the United States, as well as Form I-918 petitions filed on or after this date by principal petitioners and their qualifying family members living in the United States. Principal petitioners and qualifying family members living outside of the United States are not considered for a bona fide determination as USCIS cannot provide deferred action or employment authorization to petitioners outside the United States.

**Q3. When did USCIS begin implementing the bona fide determination process?**

**A3.** USCIS published the new bona fide determination process in the [USCIS Policy Manual](#) on June 14, 2021, and began adjudicating and issuing EADs shortly thereafter.

**Q4. In what order will USCIS adjudicate cases for a bona fide determination?**

**A4.** USCIS will generally adjudicate cases for bona fide determinations in receipt date order, starting with the oldest pending petitions that had not already gone through a waiting list adjudication as of June 14, 2021.

**Q5. I filed a petition for U nonimmigrant status several years ago. Will my petition now go through three different adjudications: bona fide determination, waiting list, and final adjudication? What happens if I was already placed on the waiting list before this policy was issued?**

**A5.** Principal petitioners and qualifying family members will not all go through three different adjudications. As of June 14, 2021, USCIS began adjudicating pending, non-waitlisted petitions filed by noncitizens living in the United States in receipt date order for bona fide determinations. If a principal petitioner receives a bona fide determination, and the principal petitioner merits a favorable exercise of discretion, they will be issued an Employment Authorization Document (EAD) and deferred action, and their petition will be placed in the queue in receipt date order to await final adjudication for U nonimmigrant status. These petitioners will not have to go through a waiting list adjudication unless new adverse information impacts their ability to maintain a bona fide determination EAD.

Principal petitioners who USCIS determines will not receive a bona fide determination EAD and deferred action will receive a waiting list adjudication.

Principal petitioners and their qualifying family members placed on the waiting list prior to June 14, 2021, do not need to go through the bona fide determination process because they already can receive an EAD and deferred action. The petitioners placed on the waiting list before June 14, 2021, will be adjudicated for U nonimmigrant status in receipt date order concurrently with those petitioners who received bona fide determination EADs and deferred action.

## Q6. How are bona fide determinations for principal petitioners different from qualifying family members?

**A6.** USCIS will first determine whether a principal petitioner living in the United States may receive a bona fide determination EAD and deferred action before making a bona fide determination for any associated qualifying family member living in the United States. USCIS determines whether a principal petition is bona fide if an officer finds that:

- The principal petitioner properly filed Form I-918;

- The principal petitioner included a properly completed law enforcement certification (Form I-918B U Nonimmigrant Status Certification);

- The principal petitioner included a personal statement describing the facts of the victimization; and

- USCIS has received the results of the principal petitioner's background and security checks based on biometrics.

USCIS then considers whether the principal petitioner with a bona fide petition merits a favorable exercise of discretion to be granted a bona fide determination EAD and deferred action.

Once the principal petitioner receives employment authorization and deferred action, USCIS will evaluate the petitions of any qualifying family members living in the United States. The principal petitioner must be issued employment authorization and deferred action before the petition for any qualifying family member may receive a bona fide determination.

Additionally, a qualifying family member living in the United States is not guaranteed a bona fide determination EAD solely because the principal petitioner receives a bona fide determination EAD. The record must independently demonstrate the Form I-918, Supplement A, is bona fide. USCIS determines a qualifying family member's petition is bona fide when:

- The principal petitioner receives a bona fide determination EAD;

- The petitioner has properly filed a complete Petition for Qualifying Family Member of U-1 Recipient (Form I-918, Supplement A);

- The petition includes credible evidence of the qualifying family relationship; and
- USCIS has received the results of the qualifying family member's background and security checks based upon biometrics.

As with principal petitioners, USCIS then considers whether the qualifying family member living in the United States merits a favorable exercise of discretion to be granted a bona fide determination EAD and deferred action.

For more information on the bona fide determination process for principal petitioners, please see the USCIS Policy Manual Appendix: Bona Fide Determination Process Flowchart (PDF, 95.1 KB). For more information on the bona fide determination process for qualifying family members, please see Chapter 5: Bona Fide Determination, A. Bona Fide Determination, 2. Qualifying Family Members.

**Q7. What do I need to file in order to receive a bona fide determination EAD?**

**A7**. USCIS will initiate bona fide determination adjudications of pending petitions not already placed on the waiting list without any action required by principal petitioners, qualifying family members, or counsel. USCIS is reviewing pending petitions in receipt date order filed by petitioners living in the United States. Petitioners will not need to submit any additional request for USCIS to initiate a bona fide determination adjudication of pending petitions not already placed on the waiting list. The petitioner will receive a notice from USCIS if any documentation is needed to complete the bona fide determination adjudication, such as a Form I-765, Application for Employment Authorization.

**Q8. I did not previously file a Form I-765, Application for Employment Authorization, with my U visa petition. What should I do?**

**A8.** If a petitioner has filed a Form I-918 or Form I-918 Supplement A, but has not filed an accompanying Application for Employment Authorization (Form I-765), USCIS will issue a notice indicating that the petitioner has received a bona fide determination, merits a favorable exercise of discretion, and may receive a bona fide determination EAD. To obtain an EAD after receiving this notice, the petitioner must file a Form I-765 under 8 CFR 274a.12(c)(14).

For petitioners who have already filed an Application for Employment Authorization (Form I-765) under 8 CFR 274a.12(a)(19), (a)(20) and (c)(14) and who USCIS determines will receive a bona fide determination EAD and deferred action, the petitioner will not need to submit another Form I-765.

For additional information, please see Chapter 5: Bona Fide Determination, C. Adjudicative Process, 2. Previously Filed Form I-765 for Bona Fide Determination Process.

**Q9: Can petitioners still file both the I-918 and I-765 together, or should we wait until USCIS issues a bona fide determination notice?**

**A9.** Principal petitioners and their qualifying family members can continue to file a Form I-765 with their initial filing under (a)(19) (a)(20), or (c)(14) for employment authorization associated with principal status, derivative status, bona fide determination EAD, or placement on the waiting list, respectively.

USCIS will initiate bona fide determination adjudications without any action required by petitioners, qualifying family members, or counsel. The petitioner will receive a notice from USCIS if any documentation is needed to complete the bona fide determination adjudication, such as a Form I-765, Application for Employment Authorization.

**Q10: I am a new petitioner. Do I need to submit a fee or a fee waiver with my application for employment authorization for the waiting list (under (c)(14))? Do I need to submit a fee or a fee waiver for the bona fide determination EAD?**

**A10.** Generally, USCIS does not charge a fee for the filing of certain victim-based and humanitarian benefit requests, including Form I-918, and the initial Form I-765 associated with this form.

If Form I-765 was not filed concurrently with the Form I-918 and USCIS determines the petitioner (principal petitioner or qualifying family member) may receive a bona fide determination EAD, USCIS will issue a notice indicating that the petitioner has received a bona fide determination, merits a favorable exercise of discretion, and may receive a bona fide determination EAD if they file a Form I-765. Petitioners do not need to submit a filing fee for the initial Form I-765 associated with the bona fide determination EAD.

While USCIS does not charge a filing fee for the initial Form I-765 requesting a bona fide determination EAD, if a petitioner chooses to renew their bona fide determination EAD, they will need to submit the appropriate fee or fee waiver request.

Petitioners filing an application for employment authorization associated with waiting list placement should continue to submit the appropriate fee or fee waiver request.

**Q11. Do I need to submit proof of economic necessity or file an I-765 worksheet?**

**A11.** No, principal petitioners and their qualifying family members do not need to submit proof of economic necessity or file an I-765 worksheet to receive a bona fide determination EAD. USCIS will initiate bona fide determination adjudications of pending petitions not already placed on the waiting list without any action required by principal petitioners, qualifying family members, or counsel. Petitioners with pending petitions not already placed on the waiting list will not need to submit an additional request for bona fide determination adjudication; if any documentation is needed to complete the bona fide determination adjudication, such as a Form I-765, Application for Employment Authorization, the petitioner will receive a notice from USCIS.

**Q12. I received a bona fide determination notice from the Vermont Service Center, but I live in California, and the website says I should send my Form I-765 to Nebraska. What should I do?**
**A12.** Please follow the directions included in the bona fide determination notice. If you received a bona fide determination notice from the Vermont Service Center, send your Form I-765 to the Vermont Service Center.

**Q13. Will USCIS refund my filing fee if my Form I-765 under (a)(20) or (c)(14) filing is converted for a bona fide determination EAD?**

**A13.** USCIS cannot refund the filing fees for previously submitted Form I-765 filed for (a)(20) and (c)(14). Derivative petitioners must include the appropriate fee or request for a fee waiver when filing Form I-765.

**Q14. Will I have an opportunity to submit additional information so I can receive a bona fide determination EAD?**

**A14:** When USCIS determines a principal petitioner will not be granted a bona fide determination EAD and deferred action, USCIS will issue a Request for Evidence (RFE) providing notice that a bona fide determination EAD will not be granted, and requesting the additional evidence needed for the waiting list adjudication. Consequently, a principal petitioner who does not receive a bona fide determination EAD and deferred action still is able to obtain employment authorization, a grant of deferred action if they are

found eligible for U nonimmigrant status but for the annual statutory cap, and be placed on the waiting list. If USCIS determines that the principal petitioner can be placed on the waiting list, that decision generally does not affect the timeline in which the petition is adjudicated for final determination of U nonimmigrant status. A determination that a petitioner (principal petitioner or qualifying family member) will not receive a bona fide determination EAD and deferred action is not a denial of Form I-918 or the initial Form I-765.

**Q15. My family member was living outside of the country when I filed my I-918 petition. Does that mean my family member won't receive a bona fide determination? Do I need to request the bona fide determination and submit an I-765 now that they are in the United States?**

**A15.** The bona fide determination process is for principal petitioners and their qualifying family members living in the United States. USCIS will generally adjudicate cases for bona fide determinations in receipt date order, starting with the oldest pending petitions that did not already go through a waiting list adjudication as of June 14, 2021.

USCIS will initiate bona fide determination adjudications for pending petitions not already placed on the waiting list without any action required by principal petitioners, qualifying family members, or counsel. USCIS first determines whether the principal petitioner may receive a bona fide determination EAD and grant of deferred action. Once the principal petitioner receives a bona fide determination EAD, USCIS then determines if the qualifying family member living in the United States may receive a bona fide determination EAD and grant of deferred action. If any documentation is needed to complete the bona fide determination adjudication, such as a Form I-765, Application for Employment Authorization, the petitioner will receive a notice from USCIS.

As long as the qualifying family member has their current address updated to show they are residing in the U.S., USCIS will review their petition for a bona fide determination EAD and no further action will be necessary. Family members previously residing outside the U.S. who are now physically present may update their address at any time.

If the principal petitioner does not live in the United States at the time their petition is to be reviewed in receipt date order, USCIS will perform a waiting list adjudication.

**Q16. How long will it take to receive my bona fide determination EAD?**

**A16.** USCIS is committed to adjudicating petitions in a timely and efficient manner. While the goal of the bona fide determination process is to provide initial reviews of pending U petitions more efficiently, USCIS does not yet have sufficient data to provide an estimated processing time at this stage.

**Q17. How does the bona fide determination process affect certifying officials?**

**A17.** The bona fide determination process does not change the role of certifying officials who complete the law enforcement certification. USCIS evaluates whether the Form I-918, Supplement B, meets initial evidence requirements during the bona fide determination process. USCIS then considers whether the Form I-918, Supplement B, as well as the other evidence in the record, establishes eligibility during the final adjudication of Form I-918 when visas are available under the statutory cap. A complete and properly filed Form I-918, Supplement B, is a requirement for both the bona fide determination EAD and the final adjudication of Form I-918, so USCIS encourages certifying officials to answer all questions on the form as fully as possible.

**Q18. Can the bona fide determination EAD and grant of deferred action be renewed?**

**A18.** Generally, yes. If USCIS does not adjudicate a principal petitioner or qualifying family member's petition for U nonimmigrant status before the 4-year validity period of the EAD and deferred action ends, the noncitizen may apply for renewal according to Form I-765 Instructions. If granted, the noncitizen would receive a bona fide determination EAD and grant of deferred action for another 4-year validity period. At any point during the validity period, USCIS has the right to revoke the bona fide determination EAD and terminate the grant of deferred action if USCIS determines that the bona fide determination EAD and deferred action are no longer warranted, or the prior bona fide determination EAD was issued in error. For example, USCIS may revoke the EAD and terminate the grant of deferred action if the Form I-918 Supplement B law enforcement certification is withdrawn, or a national security or public safety concern is present.

For more information, please see Chapter 5: Bona Fide Determination, A. Bona Fide Determination, 6. Request to Renew Bona Fide Determination Employment Authorization Document and Deferred Action.

**Q19. How long will my bona fide determination EAD and grant of deferred action be valid for?**

**A19.** An initial bona fide determination EAD and grant of deferred action will be valid for 4 years. The grant of deferred action will begin on the issuance date listed on your EAD. The bona fide determination process provides an EAD and grant of deferred action to petitioners who meet the criteria; neither is available independent of each other.

Petitioners who do not receive a bona fide determination EAD and grant of deferred action, but who eventually receive waitlist placement, if eligible, will also receive an EAD and grant of deferred action for 4 years to promote consistency and fairness in the U program.

**Q20. How does the bona fide determination process impact petitioners who are in removal proceedings?**

**A20.** The bona fide determination process satisfies the prima facie standard that U.S. Immigration and Customs Enforcement (ICE) previously requested in specific circumstances. The steps taken to determine whether a petition is bona fide and whether a petitioner receives a bona fide determination EAD rely on the initial evidence submitted with a petition for U nonimmigrant status, as well as the results of background checks. USCIS will continue to coordinate with ICE on individual cases as requested by ICE. See Chapter 5: Bona Fide Determination, C. Adjudicative Process, 4. Prima Facie Approval.

**Q21. I have seen information posted by USCIS on the Policy Manual webpage. Are there other materials that USCIS or DHS has released to the public about the bona fide determination process?**

**A21.** Below is a list of the public-facing materials released by USCIS:

- PM-V3-Part C: Bona Fide Determination Process

- PM-V3-Part C Appendix: Bona Fide Determination Process Flowchart (PDF, 95.1 KB) (PDF, 95.1 KB)

- Victims of Criminal Activity: U Nonimmigrant Status

- USCIS Issues Policy Providing Further Protections for Victims of Crime News Release

- Twitter⧉/Twitter-Spanish⧉

- Facebook⧉/Facebook-Spanish⧉

- Eng./Sp. Stakeholder Message

**Q22. Where else can I find more information about the bona fide determination process?**

**A22.** The bona fide determination process was introduced on June 14, 2021, in the USCIS Policy Manual. Information on the process can be found in Volume 3, Part C, Chapter 5. A flowchart (PDF, 95.1 KB) of the process for principal petitioners can be found in the "appendices" tab in the USCIS Policy Manual. Additionally, information on the bona fide determination process can be found on the special instructions section of the Form I-765 webpage and the special instructions of the Form I-918 webpage.

**Q23. How can I stay up to date on USCIS policies?**

**A23.** You can sign up to receive notifications of new alerts from USCIS by entering your email here.

Last Reviewed/Updated: 09/23/2021



U.S. Citizenship
and Immigration
Services

Home > Policy Manual > Volume 3 - Humanitarian Protection and Parole > Part C - Victims of Crimes > Chapter 1 - Purpose and Background

# Chapter 1 - Purpose and Background

**Guidance**

Resources (18)

Appendices (2)

Updates (2)

History (0)

## A. Purpose

In 2000, Congress created the U nonimmigrant classification (also known as the "U visa") through the passage of the Victims of Trafficking and Violence Protection Act (including the Battered Immigrant Women's Protection Act (BIWPA)).[1] The U visa serves two purposes:

- Strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic violence, sexual assault, trafficking, and other crimes; and

- Protect victims of crime who have suffered substantial mental or physical abuse due to the qualifying crime and are willing to help law enforcement authorities in the investigation or prosecution of the qualifying criminal activity or the qualifying crime (QCA).[2]

## B. Background

U nonimmigrant status is available to any noncitizen who is a victim of a QCA and is otherwise eligible for the status, regardless of gender or sex.[3] Such victims may self-petition for U nonimmigrant status by filing a Petition for U Nonimmigrant Status (Form I-918).

Noncitizens petitioning for U nonimmigrant status must provide a certification from a federal, state, tribal, or local law enforcement official, prosecutor, judge, or other authority investigating or prosecuting the QCA. The certification must state that the petitioner "has been helpful, is being helpful, or is likely to be helpful" in the "investigation or prosecution"[4] of the QCA.[5]

Noncitizens can file petitions for or pursue U nonimmigrant status while living inside or outside of the United States.

Principal petitioners can submit U nonimmigrant petitions on behalf of certain qualifying family members. Qualifying family members may include the petitioner's spouse, unmarried children under the age of 21, and unmarried siblings under the age of 18. Qualifying family member eligibility depends on the age of the principal petitioner at the time the principal petitioner files the petition for U nonimmigrant status.[6] USCIS must grant the principal petitioner U-1 nonimmigrant status before granting U nonimmigrant status to qualifying family members.

USCIS may grant U nonimmigrant status for an initial period of up to 4 years.[7] Principal petitioners in the United States receive employment authorization incident to status.[8] Qualifying family members in the United States are also authorized to work incident to status.[9]

After at least 3 years of continuous physical presence in the United States in U nonimmigrant status, principal U nonimmigrants and their qualifying family members may apply for adjustment of status to that of a lawful permanent resident.[10]

## 1. Acts and Amendments

Congress first established the U nonimmigrant status in 2000. Since then, Congress has enacted several amendments. The table below provides an overview of major legislation related to U nonimmigrant status.

U Nonimmigrant Status: Acts and Amendments

| Acts and Amendments | Key Changes |
|---|---|
| Violence Against Women Act of 2000[11] | <ul><li>Established U nonimmigrant status for noncitizen victims of certain serious crimes when:<ul><li>The victim has suffered substantial physical or mental abuse as a result of the crime;</li><li>The victim has information about the crime; and</li><li>A law enforcement official or a judge certifies that the victim "has been helpful, is being helpful, or is likely to be helpful" in the "investigation or prosecution" of that crime.</li><li>Established a list of QCA categories.</li></ul></li></ul> |

| Acts and Amendments | Key Changes |
| --- | --- |
| Violence Against Women and Department of Justice Reauthorization Act of 2005[12] | <ul><li>Clarified that the duration of status for an initial grant of U nonimmigrant status is 4 years.</li><li>Clarified that noncitizens in the United States on K visas (fiancé(e) or spouse) and S visas (informant), or persons admitted under the visa waiver program, are not prohibited from qualifying for U nonimmigrant status.</li><li>Clarified that noncitizens who came to the United States on J visas to receive graduate medical training, and noncitizens who are subject to the 2-year foreign residence requirement, may also qualify for U nonimmigrant status.</li><li>Established discretion for DHS to grant stays of removal to petitioners for U nonimmigrant status who have received prima facie determinations.</li><li>Established a prohibition on adverse determinations of admissibility or deportability based on information provided to DHS by abusers or perpetrators of QCA.</li></ul> |
| William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008[13] | <ul><li>Clarified that the duration of status for an initial grant of U nonimmigrant status is up to 4 years.</li><li>Provided for extensions of status based on law enforcement need or exceptional circumstances, or while an application for adjustment of status is pending.</li><li>Provided discretion to grant employment authorization to a noncitizen who has a pending, bona fide petition for U nonimmigrant status.</li></ul> |
| Violence Against Women Reauthorization Act of 2013[14] | <ul><li>Provided age-out protection by preserving the age of certain family members at the time the principal petitioner files his or her petition for U nonimmigrant status.</li><li>Provided that the exception for disclosure to law enforcement officials for a legitimate law enforcement purpose must be in a manner that protects confidentiality of the information.</li><li>Provided an additional exception for disclosure of protected information to national security officials for national security purposes.</li></ul> |

## 2. Program History

Congress created the U visa program in 2000 through the passage of the Victims of Trafficking and Violence Protection Act (including the Battered Immigrant Women's Protection Act (BIWPA)). On September 17, 2007, DHS published an interim rule implementing the U nonimmigrant status provisions of BIWPA at 8 CFR 214.14 and 8 CFR 212.17.[15]

Between the time BIWPA was enacted and when the implementing regulations were published, legacy Immigration and Naturalization Service (INS) and DHS gave noncitizen crime victims who may have been eligible based on the statutory criteria the opportunity to seek interim relief until regulations were promulgated. The 2007 interim rule formally created Form I-918, as well as the current administrative and adjudications processes for U nonimmigrant status.[16]

The 2007 interim rule addresses eligibility criteria, the petition process, filing requirements, evidentiary standards, and benefits associated with the U nonimmigrant classification.[17] The rule also provided that DHS would automatically issue an Employment Authorization Document (EAD) to principal petitioners upon the approval of the petition for U nonimmigrant status.[18]

The statute provides for 10,000 U visas available every fiscal year.[19] This statutory cap only applies to principal petitioners, not their qualifying family members. The statutory cap has been met each fiscal year, beginning in Fiscal Year (FY) 2010. Starting in FY 2011, DHS began to receive more petitions than visas available under the statutory cap.[20]

DHS created the waiting list process through the 2007 interim rule as a mechanism to address the remaining eligible petitioners after the statutory cap had been reached in a given fiscal year. U nonimmigrant petitioners placed on the waiting list, whose petitions have been deemed approvable but for the statutory cap, are eligible for employment authorization and receive a grant of deferred action[21] or, in limited circumstances, parole.

The William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008), signed into law on December 23, 2008, amended the Immigration and Nationality Act (INA) to provide DHS with discretion to grant employment authorization to a noncitizen who has a pending, bona fide petition for U nonimmigrant status.[22]

In June 2021, USCIS implemented the Bona Fide Determination (BFD) process for principal petitioners and qualifying family members with pending, bona fide petitions who USCIS determines merit a favorable exercise of discretion. Under this process, USCIS exercises its discretion on a case-by-case basis to grant BFD Employment Authorization Documents (BFD EADs) and deferred action. The BFD process is distinct from the waiting list process. Before June 2021, a principal petitioner and his or her qualifying family members received employment authorization and deferred action only when USCIS placed the principal petitioner on the waiting list.

## C. Legal Authorities

- INA 101(a)(15)(U) - Definition of U nonimmigrant classification

- INA 103(a) - Powers and duties of the Secretary of Homeland Security

- INA 214(p) - Requirements applicable to U nonimmigrant status visas

- 8 CFR 214.14 - Alien victims of certain qualifying criminal activity

- INA 212(a) - Classes of "aliens" ineligible for visas or admission

- INA 212(d)(3) - Temporary admission of nonimmigrants

- INA 212(d)(14) - Discretion to waive ground of inadmissibility for U nonimmigrant status

- INA 212(a)(4)(E)(ii) – Exemption from public charge ground of inadmissibility

- INA 237(d) – Administrative stay of final order of removal

- INA 248(b) – Change of nonimmigrant classification

- 8 U.S.C. 1367 – Penalties for disclosure of information

- 8 CFR 212.17 – Applications for the exercise of discretion relating to U nonimmigrant status

- 8 CFR 274a.12 – Classes of "aliens" authorized to accept employment

## Footnotes

[^ 1] See Section 1513 of the Victims of Trafficking and Violence Protection Act of 2000 (VTVPA 2000), Pub. L. 106-386 (PDF), 114 Stat. 1464, 1533 (October 28, 2000), as amended by Section 801 of the Violence Against Women and Department of Justice Reauthorization Act of 2005 (VAWA 2005), Pub. L. 109-162 (PDF), 119 Stat. 2960, 3053 (January 5, 2006); Violence Against Women and Department of Justice Reauthorization Act of 2005—Technical Corrections, Pub. L. 109-271 (PDF), 120 Stat. 750 (August 12, 2006); William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA 2008), Pub. L. 110-457 (PDF), 122 Stat. 5044 (December 23, 2008); and Title VIII of the Violence Against Women Reauthorization Act of 2013 (VAWA 2013), Pub. L. 113-4 (PDF), 127 Stat. 54, 110 (March 7, 2013).

[^ 2] See Section 1502 and 1513(a)(2) of the Violence Against Women Act of 2000, Pub. L. 106-386 (PDF), 114 Stat. 1518, 1533-1534 (October 28, 2000) ("[P]roviding battered immigrant women and children who were experiencing domestic violence at home with protection against deportation allows them to obtain protection orders against their abusers and frees them to cooperate with law enforcement and prosecutors in criminal cases brought against their abusers and the abusers of their children . . .").

[^ 3] For specific requirements, see Chapter 2, Eligibility Requirements for U Nonimmigrant Status [3 USCIS-PM C.2].

[^ 4] In this context, the terms "investigation or prosecution" encompass detection, investigation, prosecution, conviction, and sentencing. See 8 CFR 214.14(a)(5).

[^ 5] See INA 214(p)(1).

[^ 6] See 8 CFR 214.14(f)(1).

[^ 7] See INA 214(p)(6) (subject to extension based on law enforcement need, while an application for adjustment of status under INA 245(m) is pending, or if warranted due to exceptional circumstances). See 8 CFR 214.14(g)(2).

[^ 8] See 8 CFR 274a.12(a)(19).

[^ 9] See INA 101(a)(15)(U)(ii). See INA 214(p)(3)(B). See 8 CFR 274a.12(a)(20). Under 8 CFR 214.14(f)(7), qualifying family members must file a separate Application for Employment Authorization (Form I-765) to obtain an employment authorization document.

[^ 10] See INA 245(m).

[^ 11] See Section 1513 of VTVPA 2000, Pub. L. 106-386 (PDF), 114 Stat. 1464, 1533 (October 28, 2000).

[^ 12] See Title VIII of VAWA 2005, Pub. L. 109-162 (PDF), 119 Stat. 2960, 3053 (January 5, 2006).

[^ 13] See TVPRA 2008, Pub. L. 110-457 (PDF) (December 23, 2008).

[^ 14] See VAWA 2013, Pub. L. 113-4 (PDF) (March 7, 2013).

[^ 15] See 72 FR 53014 (PDF) (Sept. 17, 2007) (interim rule).

[^ 16] See 72 FR 53014 (PDF) (Sept. 17, 2007) (interim rule).

[^ 17] See 72 FR 53014 (PDF) (Sept. 17, 2007) (interim rule).

[^ 18] See 8 CFR 214.14(c)(7).

[^ 19] See INA 214(p)(2).

[^ 20] See Number of Form I-918, Petition for U Nonimmigrant Status by Fiscal Year, Quarter, and Case Status (Fiscal Years 2009-2020) (PDF, 112.43 KB).

[^ 21] Deferred action is an exercise of prosecutorial discretion that makes the noncitizen a lower priority for removal. See 72 FR 53014 (PDF), 53015 (Sept. 17, 2007), footnote 3. See 8 CFR 274a.12(c)(14).

[^ 22] See Section 201(c) of Pub. L. 110-457 (PDF), 122 Stat. 5044, 5053 (December 23, 2008). See INA 214(p)(6).

Current as of July 01, 2022



U.S. Citizenship
and Immigration
Services

Home  >  Policy Manual  >  Volume 3 - Humanitarian Protection and Parole  >  Part C -
Victims of Crimes  >  Chapter 5 - Bona Fide Determination Process

# Chapter 5 - Bona Fide Determination Process

**Guidance**

[Resources (18)](#)

[Appendices (2)](#)

[Updates (2)](#)

[History (0)](#)

By statute, USCIS has discretion to provide employment authorization to [noncitizens](#) with pending, bona fide U nonimmigrant status petitions.[1] Consequently, USCIS implemented the Bona Fide Determination (BFD) process.

During the BFD process, USCIS first determines whether a pending petition is bona fide. Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion. If USCIS grants a noncitizen a Bona Fide Determination Employment Authorization Document (BFD EAD) as a result of the BFD process, USCIS then also exercises its discretion to grant that noncitizen deferred action for the period of the BFD EAD. USCIS generally does not conduct waiting list adjudications for noncitizens who USCIS grants BFD EADs and deferred action to; these petitioners' next adjudicative step is final adjudication when space is available under the statutory cap.[2]

As a matter of policy, USCIS interprets "bona fide" as part of its administrative authority to implement the statute as outlined below. Bona fide generally means "made in good faith; without fraud or deceit."[3] Accordingly, when interpreting the statutory term within the context of U nonimmigrant status, USCIS determines whether a petition is bona fide based on the petitioner's compliance with initial evidence requirements and successful completion of background checks. If USCIS determines a petition is bona fide, USCIS then considers any national security and public safety risks, as well as any other relevant considerations, as part of the discretionary adjudication.[4]

As a primary goal, USCIS seeks to adequately evaluate and adjudicate petitions as efficiently as possible. The BFD process provides an opportunity for certain petitioners to receive BFD EADs and deferred action while their petitions are pending, consistent with the William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008).[5]

Only petitioners living in the United States may receive BFD EADs, since those outside the United States cannot as a practical matter work in the United States.[6] Likewise, deferred action can only be accorded to petitioners in the United States since those outside the United States have no potential removal to be deferred.

# A. Bona Fide Determination

## 1. Principal Petitioners

USCIS determines a principal petition is bona fide if:

- The principal petitioner has properly filed a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence,[7] except for the Application for Advance Permission to Enter as a Nonimmigrant (Form I-192).[8] Required initial evidence includes:

  - A complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and

  - A personal statement from the petitioner describing the facts of the victimization; and

- USCIS has received the result of the principal petitioner's background and security checks based upon biometrics.[9]

## 2. Qualifying Family Members

A qualifying family member is not guaranteed a BFD EAD solely because the principal petitioner receives a BFD EAD.[10] The record must independently demonstrate the Form I-918, Supplement A is bona fide. USCIS determines a qualifying family member's petition is bona fide when:

- The principal petitioner receives a BFD EAD;

- The petitioner has properly filed a complete Petition for Qualifying Family Member of U-1 Recipient (Form I-918, Supplement A);

- The petition includes credible evidence of the qualifying family relationship;[11] and

- USCIS has received the results of the qualifying family member's background and security checks based upon biometrics.[12]

# B. Exercise of Discretion, Including Risk to National Security or Public Safety and Other Factors

Once USCIS has determined a petition is bona fide, USCIS determines whether the petitioner poses a risk to national security[13] or public safety by reviewing the results of background checks, and considers other relevant discretionary factors.[14] USCIS then determines whether to exercise its discretion to issue a BFD EAD and grant deferred action to a petitioner.

Section 214(p)(6) of the Immigration and Nationality Act (INA) gives the Secretary of Homeland Security, and USCIS as his or her designee, discretionary authority over the issuance of employment authorization to noncitizens with pending, bona fide U nonimmigrant status petitions.[15] A principal petitioner or qualifying family member who poses a risk to national security or public safety, or has other adverse discretionary factors, may not merit the favorable exercise of discretion necessary to grant deferred action.

Moreover, at the final adjudication, such individuals may require a waiver for any grounds of inadmissibility, and may be ineligible for U nonimmigrant status if they do not merit a favorable exercise of discretion. Therefore, in exercising the discretion granted by the INA, USCIS grants BFD EADs to principal petitioners and qualifying family members with pending bona fide petitions who it determines merit a favorable exercise of discretion, considering any risk to national security or public safety, as well as other relevant discretionary factors.

USCIS may choose not to exercise its discretion to grant a BFD EAD and deferred action where a petitioner appears to pose a risk to national security or public safety. For example, where a principal petitioner or qualifying family member has been convicted of or arrested for any of the following acts, USCIS generally does not issue a BFD EAD and deferred action and instead proceeds to a full adjudication to assess eligibility for waiting list placement. The following categories generally overlap with inadmissibility grounds[16] and may include:

- National security concerns;[17] and

- Public safety concerns, which include but are not limited to:

  - Murder, rape, or sexual abuse;

  - Offenses involving firearms, explosive materials, or destructive devices;[18]

  - Offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons;[19]

  - Aggravated assault;

  - An offense relating to child pornography; and

  - Manufacturing, distributing, or selling of drugs or narcotics.[20]

Violent and dangerous crimes, such as those listed above, embody the very activities law enforcement seeks to deter and prevent through cooperation facilitated by the U nonimmigrant status program.

Additionally, USCIS may determine on a case-by-case basis that other adverse factors weigh against a favorable exercise of discretion. USCIS may also exercise discretion favorably notwithstanding the above concerns if case-specific circumstances warrant it.

Recognizing that many factors may influence whether criminal activity is prosecuted and results in a conviction, an arrest for a serious crime is relevant to whether USCIS should exercise its discretion favorably. A determination about whether to favorably exercise discretion when there are indicators of national security or public safety concerns requires a comprehensive review of the available evidence.

For example, officers may need to request additional evidence or information in certain cases where security checks indicate that a petitioner has an arrest record.[21] Therefore, USCIS does not conduct this

in-depth, discretionary review during the BFD process. Instead, if USCIS determines that a petitioner may pose a risk to national security or public safety, or has other relevant adverse factors that would require further review, and therefore will not receive a BFD EAD, USCIS initiates a waiting list adjudication and conducts a comprehensive discretionary review as part of the evaluation of Form I-192 if one is submitted.

USCIS evaluates all evidence provided by petitioners regarding their arrest records before making determinations for waiting list placement.[22]

# C. Adjudicative Process

USCIS evaluates all petitions for U nonimmigrant status filed by noncitizens living in the United States as described above.[23] If USCIS determines a principal petitioner and any other qualifying family members have a bona fide petition and warrant a favorable exercise of discretion, USCIS issues them BFD EADs and grants deferred action.

USCIS initiates waiting list adjudication for petitioners who do not receive BFD EADs. When USCIS determines a principal petitioner will not receive a BFD EAD, USCIS proceeds to a full adjudication for waiting list placement for the principal petitioner and his or her qualifying family members.

A determination that a petitioner will not receive a BFD EAD and deferred action is not a denial of Form I-918 or the Application for Employment Authorization (Form I-765). A petitioner who does not receive a BFD EAD and deferred action is evaluated for waiting list eligibility and still has the opportunity to obtain employment authorization and a grant of deferred action if deemed eligible for waiting list placement. Consequently, non-issuance of a BFD EAD is not a final agency action. Correspondingly, USCIS does not accept or process motions to reopen or reconsider, appeals,[24] or requests to re-apply for a BFD EAD.

For any qualifying family member who will not receive a BFD EAD, USCIS completes a full adjudication for that qualifying family member. The full adjudication includes the issuance of Requests for Evidence (RFEs) to address any deficiencies or concerns identified in the qualifying family member's record but it is not an adjudication for waiting list placement. Because qualifying family members are "accompanying or following to join" the principal petitioner, they will not be placed on the waiting list unless the principal petitioner was placed on the waiting list.[25]

If the qualifying family member resolves the deficiencies or concerns in the record, USCIS issues a BFD EAD and grants deferred action to the qualifying family member. If additional evidence provided by the qualifying family member does not resolve the deficiencies or concerns identified, then USCIS does not issue a BFD EAD and generally places the qualifying family member's petition with the principal petition back in line to await a final statutory cap adjudication.

When USCIS issues a final decision to the principal petitioner, USCIS also issues a final decision for any qualifying family member who did not receive a BFD EAD. USCIS retains the authority to deny any petition when, after full adjudication, USCIS determines the qualifying family member is ineligible for the underlying benefit.

For example, USCIS may deny the petition where the record establishes that the claimed family member does not have a qualifying family relationship with the petitioner, or where USCIS determines a favorable exercise of discretion is not warranted to waive the qualifying family member's grounds of inadmissibility.

# 1. Criminal History Check for Bona Fide Determination Employment Authorization Documents

To efficiently determine whether to issue BFD EADs and grant deferred action, USCIS conducts background and security checks to identify petitioners who may pose risks to national security and public safety, or other adverse discretionary factors. USCIS relies on a variety of databases that collect information from law enforcement agencies and other federal, state, local, and tribal agencies, including information regarding arrests and convictions.

USCIS uses this information to determine whether a petitioner is admissible for the purposes of receiving a grant of U nonimmigrant status or merits a favorable exercise of discretion to waive any grounds of inadmissibility. USCIS' consideration of national security and public safety risks at the BFD EAD stage aligns with inadmissibility grounds evaluated during the adjudication of a petition for U nonimmigrant status and is therefore a consistent exercise of discretion within the authority afforded by INA 214(p)(6) to grant BFD EADs.

A petitioner who is not issued a BFD EAD due to the risk the petitioner appears to pose to national security or public safety receives a full adjudication for waiting list placement. During the adjudication for waiting list placement, petitioners have the opportunity to provide USCIS with potentially mitigating information or other evidence pertaining to arrests or convictions.

USCIS issues petitioners a BFD EAD and grants deferred action in order to promote victim stability and continued cooperation with law enforcement. However, USCIS updates and reviews background and security checks at regular intervals during the validity period of a principal petitioner or a qualifying family member's BFD EAD.

Additionally, USCIS retains discretion to update background and security checks at any time when case-specific circumstances warrant. During those reviews, USCIS evaluates whether the petitioner and qualifying family members who have been granted BFD EADs and deferred action continue to warrant the BFD EAD and merit a favorable exercise of discretion while their petitions for U nonimmigrant status are pending with USCIS.

USCIS reserves the right to revoke the BFD EAD[26] and terminate the grant of deferred action at any time if it determines the BFD EAD or favorable exercise of discretion are no longer warranted, or the prior BFD EAD and deferred action were granted in error.

For example, USCIS may revoke the BFD EAD and terminate deferred action if USCIS identifies any adverse information, such as new information pertaining to the risks the petitioner poses to national security or public safety, or the withdrawal of a petitioner's Form I-918, Supplement B. At that time, USCIS initiates a waiting list adjudication to gather additional information and evidence to determine if the petitioner is eligible for a waiver of inadmissibility for any relevant inadmissibility grounds and placement on the waiting list.

# 2. Previously Filed Form I-765 for Bona Fide Determination Process

USCIS uses all Applications for Employment Authorization (Form I-765) already filed by principal petitioners under 8 CFR 274a.12(a)(19) and (c)(14) to issue a BFD EAD. USCIS also uses Form I-765 applications previously filed under 8 CFR 274a.12(a)(20) and (c)(14) for a qualifying family member to issue

a BFD EAD to qualifying family members. Using previously filed applications limits the burden on petitioners to file additional paperwork.

Where a petitioner has filed a Form I-918 but has not filed an accompanying application for employment authorization under 8 CFR 274a.12(a)(19), (a)(20) or (c)(14), USCIS issues a notice indicating that the petitioner has received a BFD and may receive a BFD EAD. To obtain an EAD, the petitioner must file a Form I-765 after receiving this notice.

## 3. Bona Fide Determination Employment Authorization Document Issuance

Once USCIS has determined that a petitioner present in the United States has a bona fide petition and merits a favorable exercise of discretion, and therefore may receive a BFD EAD, USCIS issues a notice to inform the petitioner of the decision.

Such petitioners who have already filed a Form I-765 under either of the EAD classifications noted above then receive an EAD and a grant of deferred action valid for 4 years. Petitioners who must file a new Form I-765 after receiving the BFD notice from USCIS receive employment authorization and deferred action valid for 4 years once USCIS finishes adjudicating the Form I-765.

## 4. Prima Facie Case for Approval

Where USCIS issues a BFD EAD to a petitioner, the petitioner is also considered to have established a prima facie case for approval within the meaning of INA 237(d)(1). The term "prima facie" refers to a petition appearing sufficient on its face.

The evaluation performed by USCIS to determine whether a petition is bona fide and whether a petitioner receives a BFD EAD is a more complex evaluation than looking at the petition on its face alone. The BFD process satisfies the prima facie standard that U.S. Immigration and Customs Enforcement (ICE) previously requested in specific circumstances[27] since the steps taken to determine whether a petition is bona fide and a petitioner receives a BFD EAD rely on the initial evidence submitted with a petition for U nonimmigrant status, as well as the results of background checks.

## 5. Waiting List Adjudication for Petitioners Not Issued a Bona Fide Determination Employment Authorization Document

Once an officer has determined that a petitioner will not receive a BFD EAD, the officer reviews the complete filing and identifies any deficiencies or concerns that need to be addressed for waiting list adjudication. The officer then issues an RFE or Notice of Intent to Deny (NOID), which includes:[28]

- A notice explaining that USCIS will not be issuing a BFD EAD; and

- An RFE to address any deficiencies or concerns associated with waiting list adjudication.

If USCIS determines that a petitioner will not receive a BFD EAD, but can be placed on the waiting list, that decision generally does not affect the timeline in which the petition for U nonimmigrant status is adjudicated for final determination of U nonimmigrant status. If USCIS determines that a petitioner will not receive a BFD EAD and cannot be placed on the waiting list, USCIS will deny the petition.

# 6. Request to Renew Bona Fide Determination Employment Authorization Document and Deferred Action

Generally, USCIS does not charge a fee for the filing of certain victim-based and humanitarian benefit requests, including Form I-918 and Form I-918, Supplement A.[29] Consequently, petitioners who receive BFD EADs do not need to submit a filing fee for the initial Form I-765 associated with the BFD EAD. Petitioners who choose to renew their BFD EADs may do so under existing procedures.[30] Once a BFD EAD is renewed, the accompanying grant of deferred action is also renewed.

TVPRA 2008 requires USCIS to permit petitioners for U nonimmigrant status to apply for fee waivers for "any fees associated with filing an application for relief through final adjudication of the adjustment of status."[31] USCIS has interpreted this to mean that, in addition to the main benefit request, applicants and petitioners must have the opportunity to request a fee waiver for any form associated with the main benefit, including applications for waivers of inadmissibility or employment authorization. Principal petitioners and qualifying family members who are seeking to renew a BFD EAD must either submit a filing fee or submit a Request for Fee Waiver (Form I-912).

An initial BFD EAD grant does not guarantee future renewals. Principal petitioners and qualifying family members are evaluated independently for each EAD and deferred action renewal to ensure that the BFD EAD and grant of deferred action are still warranted as a matter of discretion.

>Additionally, USCIS may identify principal petitioners and qualifying family members who pose a risk to national security and public safety during the validity period of the BFD EAD and deferred action, until final adjudication of U nonimmigrant status.

At any point during the validity period, USCIS has the right to revoke employment authorization or terminate deferred action if USCIS determines a national security or public safety concern is present, if USCIS determines the BFD EAD and deferred action  is no longer warranted, the Form I-918 Supplement B law enforcement certification is withdrawn, or USCIS determines the prior BFD EAD was issued in error.[32]

If USCIS determines that adverse information may impact a principal petitioner's ability to maintain a BFD EAD and deferred action, USCIS will initiate a waiting list review for the principal petition. Similarly, if USCIS determines that adverse information may impact a qualifying family member's ability to maintain a BFD EAD and deferred action, USCIS will conduct a full adjudication of the qualifying family member's petition as described above to determine whether the qualifying family member can maintain a BFD EAD and deferred action.

An initial grant or renewal of a BFD EAD and deferred action does not guarantee that USCIS will approve the principal petitioner or his or her qualifying family members for U nonimmigrant status. Generally, USCIS adjudicates petitions for U nonimmigrant status in the order in which they are received, subject to limited exceptions. When the principal petitioner's filing is next in line for final adjudication, an officer assesses eligibility requirements for U nonimmigrant status. This adjudication does not include consideration of prior grants or renewals of BFD EAD or deferred action.

# 7. Petitioners Residing Outside of the United States

USCIS only issues BFD EADs and deferred action to petitioners living in the United States as it cannot provide deferred action or employment authorization to petitioners outside the United States. Deferred action, as an exercise of prosecutorial discretion to make a noncitizen a lower priority for removal from the

United States, is only applicable to noncitizens in the United States. Additionally, INA 274A gives the Secretary of Homeland Security, and USCIS as his or her designee, authority over noncitizen employment authorization in the United States.

Because the BFD EAD is only for petitioners living in the United States, principal petitioners (and their qualifying family members) who live outside of the United States proceed directly to waiting list adjudication.

Generally, USCIS adjudicates cases in the order in which they were received to determine waiting list placement. If USCIS determines a principal petitioner residing outside the United States is eligible for waiting list placement, the principal petitioner and his or her qualifying family members should submit a Form I-765 upon admission to the United States to receive an EAD.

# Footnotes

[^ 1] See INA 214(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U).").

[^ 2] See Appendix: Bona Fide Determination Process Flowchart [3 USCIS-PM C.5, Appendices Tab].

[^ 3] See Black's Law Dictionary (11th ed. 2019).

[^ 4] Submission of biometrics is a requirement for principal petitioners as well as derivatives. See 8 CFR 214.14(c)(3) and 8 CFR 214.14(f)(5).

[^ 5] See Pub. L. 110-457 (PDF) (December 23, 2008). See INA 214(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U).").

[^ 6] See INA 274A. See 8 CFR 274a.12(a), (b), (c) (referring to employment in the United States).

[^ 7] See 8 CFR 214.14(c)(2).

[^ 8] One of the main purposes for issuing employment authorization to those with pending, bona fide petitions is to provide EADs to good faith petitioners who are vulnerable due to lengthy wait times. Requiring and adjudicating Form I-192 for purposes of the EAD would delay the EAD adjudication and undermine efficiency. Instead of adjudicating the Form I-192 at this stage, USCIS relies on criminal history checks.

[^ 9] See instructions for the Petition for U Nonimmigrant Status (Form I-918).

[^ 10] The principal petitioner enables access to the benefits associated with U nonimmigrant status for the qualifying family member. Therefore, USCIS does not consider a qualifying family member for a BFD unless the principal petitioner receives a BFD EAD.

[^ 11] Under INA 214(p)(4), USCIS considers any credible evidence relevant to the petition.

[^ 12] See instructions for Petition for Qualifying Family Member of U-1 Recipient (Form I-918, Supplement A).

[^ 13] See INA 212(a)(3).

[^ 14] See Section C, Adjudicative Process, Subsection 1, Criminal History Check for BFD EADs [3 USCIS-PM C.5(C)(1)].

[^ 15] See INA 214(p)(6) ("The Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U).") (emphasis added).

[^ 16] See INA 212(a).

[^ 17] As listed in INA 212(a)(3).

[^ 18] Such as those defined in INA 101(a)(43)(C) and (E).

[^ 19] As defined in INA 101(a)(43)(K)(iii).

[^ 20] This includes acts defined in INA 101(a)(43)(B).

[^ 21] See *Matter of Arreguin*, 21 I&N Dec. 38, 42 (BIA 1995) (considering but hesitating to give "substantial weight" to an uncorroborated arrest report). See *Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1350 (11th Cir. 2010) ("Absent corroboration, the arrest reports by themselves do not offer reasonable, substantial, and probative evidence that there is reason to believe Garces engaged in drug trafficking.").

[^ 22] See *Henry v. I.N.S.*, 74 F.3d 1, 6 (1st Cir. 1996) (noting "while an arrest, without more, is simply an unproven charge, the fact of the arrest, and its attendant circumstances, often have probative value in immigration proceedings.").

[^ 23] See Section A, Principal Petitioners [3 USCIS-PM C.5(A)] and Section B, Qualifying Family Members [3 USCIS-PM C.5(B)].

[^ 24] Appeals are not available to applicants who have been denied employment authorization under 8 CFR 274a.13(c). Therefore, even if the BFD EAD issuance was considered a final agency action, the lack of an appeals process for BFD EADs aligns with regulatory practice pertaining to employment authorization generally.

[^ 25] See INA 101(a)(15)(U)(ii).

[^ 26] See 8 CFR 274a.14(b).

[^ 27] See ICE's Revision of Stay of Removal Request Reviews for U Visa Petitioners webpage.

[^ 28] See Chapter 6, Waiting List [3 USCIS-PM C.6].

[^ 29] See 8 CFR 103.7(b)(1)(i)(VV).

[^ 30] See 8 CFR 274a.13(d). See Instructions for Form I-765.

[^ 31] See INA 245(l)(7).

[^ 32] See 8 CFR 274a.14(b).

7/1/22, 11:28 PM
Case 1:23-mi-99999-UNA    Document 181-2    Filed 06/09/23    Page 27 of 39
Chapter 5 - Bona Fide Determination Process | USCIS
Current as of July 01, 2022

7/1/22, 11:29 PM   Case 1:23-mi-99999-UNA   Document 181-2 Filed 06/09/23 Page 28 of 39
Chapter 5 - Bona Fide Determination Process | USCIS

USCIS Response to Coronavirus (COVID-19)



Home > Policy Manual > Volume 3 - Humanitarian Protection and Parole > Part C - Victims of Crimes > Chapter 5 - Bona Fide Determination Process

# Chapter 5 - Bona Fide Determination Process

[Guidance](#)

[Resources (18)](#)

**[Appendices (2)](#)**

[Updates (2)](#)

[History (0)](#)

---

## Appendices

Appendix: Bona Fide Determination Process and Administrative Procedure Act Considerations ⌃

## A. Background

A **noncitizen** granted U-1 nonimmigrant status as a principal petitioner is employment authorized incident to status. USCIS automatically issues an Employment Authorization Document (EAD) to principal petitioners upon the approval of the U nonimmigrant status petition.[1]

The statute only allows 10,000 U nonimmigrant visas to be issued every fiscal year.[2] If the number of approvable petitions exceeds 10,000, USCIS places the approvable petitions on a waiting list. Once they are on the waiting list, USCIS grants deferred action or, in limited circumstances, parole to U-1 principal petitioners and qualifying family members and, as a matter of discretion, may authorize employment for such petitioners and qualifying family members.[3] USCIS generally provides such employment authorization under . Under the existing regulatory structure, noncitizens with pending petitions are currently unable to apply for employment authorization before waiting list placement.

The William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008), signed into law on December 23, 2008, amended Section 214(p)(6) of the Immigration and Nationality Act (INA)

to provide DHS with discretion to grant employment authorization to a noncitizen who has a pending, bona fide petition for U nonimmigrant status.[4] Though permitted by statute, DHS had not previously implemented a process for providing such employment authorization, separate from the existing regulatory waiting list, before June 14, 2021.

The permissive language of INA 214(p)(6) does not require the agency to create a separate employment authorization process. However, because of drastic increases in the volume of U nonimmigrant petitions and a growing backlog, USCIS decided to exercise its discretion to conduct bona fide determinations (BFD) and provide EADs and deferred action to noncitizens with pending, bona fide petitions who meet certain discretionary standards, beginning on June 14, 2021.

INA 103(a) grants the Secretary of Homeland Security the authority to enforce the immigration laws and provides general authority for deferred action. The U.S. Supreme Court has clarified that decisions made to either initiate or terminate enforcement proceedings are under the purview of the Executive Branch,[5] and therefore fall within DHS's authority. The Executive Branch has exercised its discretion to grant deferred action, and the federal courts have consistently recognized the existence of this authority, since the mid-1970s.[6]

While USCIS has approved the statutory maximum of petitions each year since Fiscal Year 2010, the increasing number of petitions and complexity of the adjudication resulted in increased processing times. USCIS attempted to keep up with this increase by shifting resources as well as hiring and training new officers; yet, despite these attempts, the burden quickly outpaced resources given competing demands and priorities across the agency.

Consequently, the number of remaining pending petitions after the annual cap was reached grew dramatically. Though the waiting list was initially conceived to address the gap between petitions filed and available visas, USCIS' ability to adjudicate pending petitions for placement on the waiting list has been and continues to be outmatched by the steady number of new filings.

To illustrate, in 2009, USCIS received 6,850 principal petitions; in 2020, 22,358 principal petitions were filed. From 2015-2018, over 30,000 principal petitions were filed annually.[7] The pending backlog, and the corresponding delay in adjudication time, is due to the increase in U visa filings overall, the complexity of the adjudication, the statutory cap mandated by Congress, and the agency's priorities and limited resources.

As of June 14, 2021, USCIS is unable to adjudicate the tens of thousands of petitions for the waiting list, as well as completing full adjudication for the 10,000 principal visas available under the statutory cap, in a single fiscal year without incurring a negative impact in other humanitarian programs and fee-based applications or petitions.

Taking into consideration the overall filings increase and the numerous adjudications USCIS is responsible for, USCIS must allocate resources among the competing adjudicative priorities and balance the number of resources that can be assigned to the U visa program.

Additionally, as of June 14, 2021, USCIS is facing substantial litigation fueled by the years-long wait times for petitioners to be placed on the waiting list and obtain U nonimmigrant status due to the number of new petitions filed each year exceeding the statutory cap. Case review has revealed that most U nonimmigrant petitioners do not have lawful immigration status and are not otherwise authorized to work, so they may be vulnerable during the lengthy adjudication period.

USCIS recognizes concerns regarding such vulnerability raised by stakeholders and believes implementing the statute's authorization to provide EADs to those with pending, bona fide petitions better aligns the U program with its dual purpose as envisioned by Congress: stabilizing victims of crime and serving as a tool for law enforcement.[8]

In addition, the BFD process enables USCIS to review petitions more efficiently, and provide the benefits of employment authorization and deferred action to more petitioners in a shorter time period than the waiting list process alone, which requires a full adjudicative review of eligibility for nonimmigrant status. USCIS notes that from FY 2009 through FY 2020, over 75 percent of fully adjudicated Petition for U Nonimmigrant Status (**Form I-918**) have been approved.[9]

Therefore, under this policy, USCIS deems a petition "bona fide" when USCIS determines that the Form I-918 is complete and properly filed[10] and has received the result of the petitioner's biometrics. Because INA 214(p)(6) gives the Secretary of Homeland Security, and USCIS as the Secretary's designee, discretion to issue employment authorization to pending, bona fide principal petitioners and qualifying family members, USCIS also considers whether the principal petitioners or qualifying family members appear to pose a risk to national security[11] or public safety, and otherwise merit a favorable exercise of discretion.

The EAD and deferred action that USCIS issues for these cases is valid for 4 years, subject to termination if USCIS determines a national security or public safety concern has arisen, or a determination that the BFD EAD is no longer warranted, or that the prior BFD EAD and deferred action was issued in error.

USCIS issues BFD EADs under **8 CFR 274a.12(c)(14)** because recipients of BFD EADs also receive deferred action. Furthermore, there is currently no other EAD category specifically designated for principal petitioners and qualifying family members with pending, bona fide petitions. INA 214(p)(6) provides the statutory foundation for the implementation of the BFD process, and explicitly speaks to the granting of employment authorization. As such, petitioners granted BFD EADs receive employment authorization documents under **8 CFR 274a.12(c)(14)**.

## B. Administrative Procedure Act Considerations

The Administrative Procedure Act (APA) excepts interpretive rules; general statements of policy; and rules of agency organization, procedure, or practice from notice and comment requirements.[12]

On June 14, 2021, USCIS updated the Policy Manual to notify the public of its interpretation of "bona fide application" at **INA 214(p)(6)**, its exercise of discretion under that provision, and explain its policy for issuing such EADs and granting deferred action. USCIS' interpretation is reasonable because "bona fide" generally means "made in good faith; without fraud or deceit."[13]

In this context,  USCIS interprets the bona fide standard[14] as being met once the entire petition (including the required certification on **Form I-918, Supplement B**) is properly filed and biometrics are submitted and received. The completion of the Supplement B by a law enforcement official or judge provides an appropriate assurance of the bona fide nature of the petition in this context.

Likewise, because INA 214(p)(6) gives USCIS discretionary authority to issue such employment authorization, it is reasonable, in the exercise of such discretion,  to assess security checks to

determine whether petitioners may pose a threat to national security or public safety before according benefits under this section.

The Policy Manual guidance explains and provides clarification to officers but does not add to the substantive regulations, create legally binding rights or obligations, or change the substantive standards by which USCIS evaluates applications for immigration benefit requests.

## 1. Unfair Surprise and Reliance Interests

An agency changing its interpretation of a regulation should consider, among other factors, whether the interpretative change creates unfair surprise.[15] USCIS is issuing this guidance to clarify what the law and regulations permit or require. USCIS is not restricting the program for pending petitioners; rather, USCIS is using its statutory authority to provide an additional pathway to employment authorization and deferred action. Pending petitioners will not be treated in a disparate or unfair manner, as the evaluation for an EAD is based on the initial evidence petitioners must submit when filing a Petition for U Nonimmigrant Status (**Form I-918**).

This process does not create an undue burden on pending or future petitioners, as it does not change any evidentiary requirement. Rather, it utilizes the filing system already in place to issue benefits to Form I-918 petitioners and mitigate any vulnerabilities they may face due to the lengthy adjudicatory wait times.

Additionally, those who are not granted BFD EADs and deferred action under the first phase of review proceed to the full waiting list adjudication, thereby receiving the same adjudicative review they would have had before this policy implementation. Consequently, the new policy only has an adverse impact on overseas derivatives where the principal petitioner resides in the U.S.

USCIS notes that overseas principal petitioners and qualifying family members would not benefit from this EAD and deferred action process because they are not physically located in the United States. Neither deferred action nor employment authorization are accorded to noncitizens outside the United States.

USCIS considered the potential impact to such petitioners and determined that offering employment authorization and deferred action to the majority of petitioners (as a majority of Form I-918 petitioners are physically located in the United States), coupled with the statutory authority to provide employment to pending, bona fide petitioners, provides numerous benefits.

Additionally, USCIS does not anticipate that overseas principal petitioners and qualifying family members would be harmed by this process, since the agency continues to conduct full waiting list adjudications for overseas principal petitioners and qualifying family members, as the agency has previously done. Consequently, this policy has no adverse impact upon overseas principal petitioners and qualifying family members.

USCIS notes that there will be adverse impacts to overseas qualifying family members where the principal petitioner is in the United States; if the principal petitioner receives the BFD EAD and deferred action, there is not a sufficient basis to conduct a waiting list adjudication for the qualifying family member.

However, USCIS believes the overall benefits of this policy change outweigh the adverse impacts. The BFD process only provides a basic review of the principal petition for U nonimmigrant status, and does not require the petitioner to establish eligibility for U nonimmigrant status but for visa availability in a given fiscal year under the statutory cap.

USCIS cannot provide different levels of adjudication to a principal petitioner and the petitioner's qualifying family members. Advancing qualifying family members to an adjudicative phase beyond that of the principal petitioner would conflict with the INA's requirement that the qualifying family members be "accompanying or following to join" the principal petitioner, and in addition would be confusing and difficult to administer.[16]

USCIS also considered providing petitioners in the United States who have overseas beneficiaries the option of forgoing the BFD process for a waiting list adjudication; however, this would create multiple adjudicatory tracks and result in operational inefficiencies that this policy change was meant to eliminate.

USCIS recognizes that 8 CFR 214.14(d)(2) states, "After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed." Historically, USCIS has interpreted and applied this provision to mean that it will grant visas to those on the waiting list, based on the date the petition was filed, before granting visas to those not on the waiting list. Yet the regulation also clearly states "the oldest petitions receiving the highest priority" for such cap numbers.

Under this policy, as part of the first phase of review, USCIS issues EADs and deferred action to noncitizens in the United States with a bona fide petition, instead of placing them in the queue for a waiting list adjudication. Those who do not receive an EAD under the first phase proceed to the full waiting list adjudication.

That is, if their petitions are approvable, they are placed on the waiting list to receive an EAD and deferred action. As these two tracks receive the same benefits (EAD and deferred action), the most equitable path is to continue to issue visas based on the date a petition is filed, regardless of whether a petitioner is placed on the waiting list or not. USCIS believes this approach best implements the regulatory provision and statute, and provides the greatest benefit to all petitioners, without adversely impacting any petitioner.

USCIS considered the alternative of continuing to adjudicate petitions on the waiting list first, before those with BFD EADs, but believes that would be inequitable and in conflict with the regulatory language directing that the oldest petitions receive the highest priority. Most of those with BFD EADs will never be placed on the waiting list.

To make them wait behind all petitioners on the current waiting list regardless of filing date, and to prioritize those placed on the waiting list in the future, would effectively penalize those who were able to receive BFD EADs because they had properly filed a complete Form I-918 that did not raise any public safety or national security risks. Accordingly, USCIS will adjudicate petitions for U nonimmigrant status in date-filed order, drawing from both BFD EAD recipients and petitioners on the waiting list.

## 2. Criminal History Check for Bona Fide Determination Employment Authorization Documents

Before June 14, 2021, USCIS officers considered criminal history background checks when adjudicating a Form I-918 petition: first, for waiting list placement and second, for the final adjudication when a visa has become available.

USCIS continues to evaluate whether a principal petitioner or a qualifying family member may maintain a BFD EAD and grant of deferred action throughout the 4-year validity period until final adjudication for U nonimmigrant status; however, as of June 14, 2021, USCIS will review and update background and security checks at regular intervals during the validity period of a principal petitioner or qualifying family member's BFD EAD and deferred action. USCIS also retains discretion to update background and security checks at any time when case-specific circumstances warrant.

By reviewing updated background and security checks at regular intervals during the validity period, USCIS will ensure the petitioner continues to pose no risk to public safety and national security. USCIS does not believe this review would adversely impact any petitioner's reliance interests or raise retroactivity concerns, as the checks are already run regularly.

Additionally, implementing these checks allows USCIS to maintain a balance between providing employment authorization to eligible immigrant victims of crime and ensuring the security of the United States. Finally, any public safety and national security issues raised anew after a BFD EAD and deferred action have been granted will be fully evaluated during the waiting list adjudication, under the same adjudicative review as would have occurred before this policy implementation.

# C. Implementation

USCIS began implementing this policy on June 14, 2021. This policy applies to all Form I-918 petitions pending on June 14, 2021, as well as Form I-918 petitions filed on or after that date. The guidance contained in the Policy Manual is controlling and supersedes any related prior guidance.

# Footnotes

[^ 1] See 8 CFR 214.14(c)(7). See Petition for U Nonimmigrant Status (Form I-918).

[^ 2] See INA 214(p)(2).

[^ 3] See 8 CFR 214.14(d)(2).

[^ 4] See Section 201(c) of Pub. L. 110-457 (PDF), 122 Stat. 5044, 5053 (December 23, 2008) (amending INA 214(p)(6)).

[^ 5] See *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (holding that "an agency's decision not to prosecute or enforce. . . is a decision generally committed to an agency's absolute discretion" and noting that enforcement decisions involve a "complicated balancing of a number of factors which are peculiarly within [the agency's expertise, including] whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular

enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing.").

[^ 6] See, for example, *Soon Bok Yoon v. INS*, 538 F.2d 1211, 1213 (5th Cir. 1976); *Vergel v. INS*, 536 F.2d 755, 757-58 (8th Cir. 1976); and *Nicholas v. INS*, 590 F.2d 802, 806-08 (9th Cir. 1979), *superseded by rule on other grounds*, as stated in *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1024 (9th Cir. 1985).

[^ 7] See **Number of Form I-918, Petition for U Nonimmigrant Status Statistics by Fiscal Year, Quarter, and Case Status (Fiscal Years 2009-2020) (PDF, 112.43 KB)**.

[^ 8] See Section 1502 and 1513(a)(2) of the Victims of Trafficking and Violence Protection Act of 2000, **Pub. L. 106-386 (PDF)**, 114 Stat. 1464, 1518 (October 28, 2000) ("[P]roviding battered immigrant women and children who were experiencing domestic violence at home with protection against deportation allows them to obtain protection orders against their abusers and frees them to cooperate with law enforcement and prosecutors in criminal cases brought against their abusers and the abusers of their children .  .  .  .").

[^ 9] See **Number of Form I-918, Petition for U Nonimmigrant Status By Fiscal Year, Quarter, and Case Status (Fiscal Years 2009-2020) (PDF, 112.43 KB)**.

[^ 10] This includes all required initial evidence, except the Application for Advance Permission to Enter as a Nonimmigrant (**Form I-192**). One of the main purposes for issuing employment authorization to those with pending, bona fide petitions is to provide EADs to good faith petitioners who are vulnerable due to lengthy wait times. Requiring and adjudicating the Form I-192 for purposes of the EAD would delay the EAD adjudication and undermine the efficiency goals of this change. Instead of adjudicating the Form I-192 at this stage, USCIS relies on criminal history checks.

[^ 11] See **INA 212(a)(3)**.

[^ 12] See **5 U.S.C. 553(b)(A)**.

[^ 13] See Black's Law Dictionary (11th ed. 2019).

[^ 14] USCIS considered different potential definitions of "bona fide" and ultimately determined that this definition was best suited to this context. USCIS specifically considered the criteria for the "bona fide determination" at 8 CFR 214.11(e), regarding noncitizen victims of severe forms of trafficking, but ultimately decided not to adopt those criteria because of the differences between the U and T visa requirements, such as the law enforcement certification requirement for U nonimmigrant petitioners. See **INA 214(p)(1)**; **8 CFR 214.14(c)(2)(i)**. The completion of the Supplement B by a law enforcement official or judge provides an appropriate assurance of the bona fide nature of the petition in this context. Additionally, the T regulation requires consideration of waivers of inadmissibility, for which an RFE is often required. This would significantly delay the U BFD adjudication, contrary to Congress' likely intent in authorizing the issuance of this interim benefit. It would also undermine the procedural efficiencies this policy was intended to create in comparison with the waiting list process.

[^ 15] See *Long Island Care at Home Ltd. v. Coke*, 551 U.S. 158, 170-71 (2007). See *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012).

[^ 16] See **INA 101(a)(15)(U)(ii)**.

## Appendix: Bona Fide Determination Process Flowchart ⌃

**Appendix: Bona Fide Determination Process Flowchart (PDF, 95.1 KB)**

Current as of July 01, 2022



**U.S. Citizenship
and Immigration
Services**

Home > Policy Manual > Volume 3 - Humanitarian Protection and Parole > Part C - Victims of Crimes > Chapter 6 - Waiting List

# Chapter 6 - Waiting List

**Guidance**

Resources (18)

Appendices (2)

Updates (2)

History (0)

When the 10,000 visas under the statutory cap have been allocated in a given fiscal year, USCIS places remaining petitioners eligible for U nonimmigrant status on the waiting list. Principal petitioners placed on the waiting list are eligible for employment authorization and receive a grant of deferred action or, in limited circumstances, parole.[1] Additionally, USCIS grants these same benefits to the qualifying family members of principal petitioners placed on the waiting list.

Officers initiate a waiting list adjudication for petitioners who do not receive employment authorization and deferred action based on the Bona Fide Determination (BFD) process.[2] While the BFD process does not include a full analysis of eligibility requirements, USCIS conducts a full adjudication necessary to determine eligibility for U nonimmigrant status as part of the waiting list process. Unlike the BFD process, officers may issue a Request for Evidence (RFE) or a Notice of Intent to Deny (NOID) to gather additional information necessary to adjudicate for waiting list placement.

Consistent with longstanding practice, U.S. Immigration and Customs Enforcement (ICE) may request expedited waiting list adjudications for specific petitioners, in relation to enforcement priorities.[3]

Except in cases where ICE requests expedited waiting list adjudication, or where USCIS revokes the Bona Fide Determination Employment Authorization Document (BFD EAD) and terminates deferred action, USCIS generally does not conduct waiting list adjudications for noncitizens who USCIS grants BFD EADs and deferred action to.

## A. Eligibility

To be placed on the waiting list, a petitioner must establish all statutory and regulatory requirements by a preponderance of the evidence.[4] At the time of placement on the waiting list, a petitioner is considered eligible for U nonimmigrant status, but not granted U nonimmigrant status "due solely to the cap."[5]

Though petitioners placed on the waiting list are generally approved for U nonimmigrant status, approval is not guaranteed.[6]

# B. Adjudication of Waiting List Eligibility

USCIS determines waiting list placement on a case-by-case basis. Officers:

- Perform a full evaluation of eligibility requirements, which includes but is not limited to:

  - Determining whether the petitioner was the victim of qualifying criminal activity or qualifying crime (QCA);

  - Analyzing evidence submitted to establish substantial mental and physical abuse;

  - Assessing the U Nonimmigrant Status Certification (Form I-918, Supplement B) for all details regarding the QCA;

- Complete a full review of background checks; and

  - Determine whether any applicable inadmissibility grounds are waivable in the exercise of discretion in the final adjudication, which includes a detailed, individualized assessment for principal petitioners and qualifying family members who have one or more applicable grounds of inadmissibility.[7]

Petitioners or qualifying family members who are inadmissible under INA 212(a) are generally ineligible to receive visas or be admitted to the United States. USCIS may exercise its discretion to deny waiver requests in the following circumstances:

- Noncitizens with criminal histories or serious immigration violations;

- Noncitizens who pose a national security or public safety risk;

- Noncitizens determined to have committed fraud or misrepresentation; or

- For any other reasons that USCIS deems necessary and appropriate.

For example, officers may need to request additional evidence or information in certain cases where security checks indicate that a petitioner has an arrest record.[8] The courts and administrative appellate bodies have deemed an arrest record, as well as police reports and other corroborating information, as appropriate for consideration for purposes of applications for discretionary relief, provided that the evidentiary weight of the arrest and police reports is properly assessed and considered.[9]

Although officers fully evaluate a petition for placement on the waiting list, officers must review the filing again and determine that the petitioner remains eligible for U nonimmigrant status before approving the petition when space becomes available under the statutory cap in a subsequent fiscal year.

*Decision*

Upon determining eligibility for waiting list placement, USCIS issues a notice to petitioners with information regarding eligibility for work authorization and deferred action. Employment authorization

based on deferred action is permitted under 8 CFR 274a.12(c)(14) to petitioners living in the United States who have filed an Application for Employment Authorization (Form I-765).

Waitlisted petitioners remain on the waiting list until their petitions are adjudicated for U nonimmigrant status in the order they were received. Grants of deferred action or parole to principal petitioners placed on the waiting list, and their qualifying family members, are preserved until a final agency decision is made on the petition, unless the individual grant of deferred action or parole is terminated at USCIS' discretion.[10]

Waitlisted petitioners do not accrue unlawful presence while on the waiting list.[11] Petitioners on the waiting list and their qualifying family members, who are outside the United States, may generally seek parole on a case-by-case basis through the processes available to other noncitizens.

Principal petitioners placed on the waiting list, and their qualifying family members, receive employment authorization valid for a period of 4 years, similar to petitioners who receive a BFD EAD. Principal petitioners who file an application for employment authorization under 8 CFR 274a.12(c)(14) must submit a fee or a Request for Fee Waiver (Form I-912). Principal petitioners placed on the waiting list and their qualifying family members may request renewals of employment authorization and deferred action if they remain on the waiting list longer than 4 years.

Principal petitioners are granted employment authorization incident to a grant of U nonimmigrant status. Consequently, USCIS converts applications for employment authorization under 8 CFR 274a.12(a)(19) to 8 CFR 274a.12(c)(14) for principal petitioners placed on the waiting list.

For applications for employment authorization under 8 CFR 274a.12(a)(20) or (c)(14), qualifying family members must submit a fee or a Form I-912.[12]

USCIS issues an RFE or NOID to principal petitioners who are determined ineligible for waiting list placement based on the file review. Petitioners have the opportunity to submit additional information to address deficiencies or concerns identified in the RFE or the NOID. If, after reviewing the additional evidence, the officer determines that the petitioner has not established eligibility for U nonimmigrant status by a preponderance of the evidence, USCIS issues a notice of denial of the petition for U nonimmigrant status to the petitioner.

# Footnotes

[^ 1] See 8 CFR 214.14(d)(2).

[^ 2] See Chapter 5, Bona Fide Determination Process [3 USCIS-PM C.5].

[^ 3] See ICE Directive 11005.2: Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners, issued August 2, 2019.

[^ 4] See Chapter 2, Eligibility Requirements for U Nonimmigrant Status, Section A, Principal Petitioners [3 USCIS-PM C.2].

[^ 5] See 8 CFR 214.14(d)(2).

[^ 6] See Chapter 7, Adjudication for Statutory Cap, Section C, Adjudicative Order [3 USCIS-PM C.7].

[^ 7] Congress granted DHS the discretionary authority to waive most inadmissibility grounds for a person seeking U nonimmigrant status if it is in the public or national interest to do so. See INA 212(d)(3)(A)(ii). See INA 212(d)(14) (authorizing the waiver of any inadmissibility ground except for participation in Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing). See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 8] See *Matter of Arreguin*, 21 I&N Dec. 38, 42 (BIA 1995) (considering but hesitating to give "substantial weight" to an uncorroborated arrest report). See *Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1350 (11th Cir. 2010) ("Absent corroboration, the arrest reports by themselves do not offer reasonable, substantial, and probative evidence that there is reason to believe Garces engaged in drug trafficking.").

[^ 9] See *Paredes-Urrestarazu v. U.S. I.N.S.*, 36 F.3d 801, 810 (9th Cir. 1994) *Paredes-Urrestarazu v. I.N.S.*, 36 F.3d 801, 810 (9th Cir. 1994) (holding that an arrest can be relevant to a discretionary determination). See *Matter of Grijalva (PDF)*, 19 I&N Dec. 713, 721-22 (BIA 1988) (hearsay evidence is admissible in deportation proceedings unless its use is fundamentally unfair; the admission into evidence of police reports concerning the circumstances of an arrest and conviction is appropriate in cases involving discretionary relief). See *Matter of Teixeira (PDF)*, 21 I&N Dec. 316, 321 (BIA 1996) (police reports that are not part of the "record of conviction" may be appropriately considered for purposes of an application for discretionary relief, where the focus is on conduct rather than conviction). See *Avila-Ramirez v. Holder*, 764 F.3d 717, 725 (7th Cir. 2014) (consideration of arrest reports in the weighing of discretionary factors is not prohibited but must be given appropriate evidentiary weight). See *Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015) (noting "it is settled beyond hope of contradiction that in reviewing requests for discretionary relief, immigration courts may consider police reports" and that this holds true even where there is no conviction.).

[^ 10] See 8 CFR 214.14(d)(3).

[^ 11] See INA 212(a)(9)(B). See 8 CFR 214.14(d)(3).

[^ 12] See 8 CFR 274a.12(c)(14).

Current as of July 01, 2022