

**RLI INSURANCE COMPANY**

CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P 800-444-0406
F 866-692-6796
RLICORP.COM

March 2, 2023

<u>Certified Mail 9214 8969 0099 9790 1646 5679 61 Return Receipt Requested
and Email: john@abopharmaceuticals.com</u>
ABO Pharmaceuticals
John E. McCullogh / Kari O'Bannon
7930 Arjons Drive #A
San Diego, CA 92126

<u>Certified Mail 9214 8969 0099 9790 1646 5680 29 Return Receipt Requested
and Email: dbrenner@wrightlegal.net</u>
Wright Finlay & Zak
Darren T. Brenner, Esq.
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117

<u>Certified Mail 9214 8969 0099 9790 1646 5681 28 Return Receipt Requested</u>
Bennett International Transportation LLC
150-30 132nd Ave.
Room 228
Jamaica, NY, 11434

        Assured:  ABO Pharmaceuticals
        Certificate of Insurance No.: 950910
        RLI Claim No.: 498642
        Date of Shipment: June 15, 2021
        Date of Delivery in New York: June 21, 2021
        Loss Type:   Damage to blood product

Dear Sir / Madam:

        As you are aware, on June 30, 2021, ABO Pharmaceuticals submitted a claim to RLI Insurance Company ("RLI") under Certificate of Insurance No. 950910 for damage to a shipment of Fractional Paste transported from Mexico to New York in June 2021.

        Following its initial investigation, which included appointing surveyors WK Webster and Jurgen Schulze & Co., RLI issued a Reservation of Rights letter on March 22, 2022 (the "ROR"). Subsequent to the ROR, RLI has continued to investigate the claim and has been communicating with Darren T. Brenner, Esq., counsel for ABO Pharmaceuticals, culminating with Mr. Brenner's email of January 19, 2023. RLI has now completed its investigation and, unfortunately, for the reasons set forth herein, regrets to advise that neither the applicable Policy nor certificate of insurance provide coverage for the claimed loss.

Factual Background

        We understand that ABO Pharmaceuticals ("ABO") and National Bioproducts Institute ("NBI") in Johannesburg, South Africa entered into a contract of sale under which ABO agreed to provide certain quantities of Human Plasma Fractional Paste. In order to meet its delivery obligations, ABO purchased

INSURANCE COMPANY

2,440.28 kgs of Fraction I, II, III and V Paste from Genbio, S.A. de C.V. ("Genbio") located in Mexico City, Mexico (the "Fractional Paste"). According to an undated Genbio proforma invoice, the terms of sale were EXW, and the temperature of the Fractional Paste was "to be managed -25°C or below".

The Fractional Paste was transported in two legs; the first from Mexico to New York and the second from New York to Johannesburg. Consistent with the EXW terms of sale, ABO retained Bennett International Transport LLC ("Bennett") to arrange for the transport of the Fractional Paste from Genbio in Mexico to NBI in Johannesburg. Bennett, in turn, hired Able Transport ("Able") to transport the Fractional Paste from Genbio in Mexico to New York. Able retained Federal Express ("FedEx") to perform the actual air transportation.

According to Mr. Brenner's letter of August 9, 2022, in the weeks prior to transit, Del DeMarino, Bennett's Director of Sales – Cold Chain Solutions, was in regular communication with FedEx representatives regarding the booking of the shipment. According to a June 2, 2021, email from Oscar Zuluga of FedEx, FedEx offered to provide a one-day transit, assuming there were no customs delays, to monitor the shipment at various points in transit and provide regular email updates and re-ice the shipment with additional dry ice if needed due to delays in Memphis. We have not been provided any subsequent correspondence that confirms acceptance of these terms nor have we seen any correspondence in which FedEx was requested and/or instructed to maintain the temperature in transit.

In addition to retaining Bennett to transport the shipment, we understand that ABO also purchased cargo insurance through Bennett and paid a premium of $4,200.

According to the FedEx tracking information provided for the shipment, the Fractional Paste arrived at the Toluca airport on Tuesday, June 15, 2021, at 6:34 PM, but did not leave Toluca until the following day, Wednesday, June 16 at 9:41 PM. The Fractional Paste then arrived at FedEx's hub in Memphis, Tennessee on Thursday, June 17 at 12:30 AM. The shipment was then subject to a "clearance delay" and, as a result, the shipment did not depart from Memphis to New York until June 18, 2021, at 3:11 AM. The shipment arrived at John F. Kennedy International Airport ("JFK") at 6:20 AM on June 18.

ABO has advised that on June 19, CFI, the trucker hired to pick up the Shipment from JFK, went to the airport, allegedly to re-ice the shipment and deliver it to its warehouse where it was placed in cold storage. However, the FedEx tracking data indicates that the shipment remained at the FedEx facility until June 21, when it was delivered to a "non FedEx clearance broker". Apparently, until the trucker allegedly re-iced the shipment at JFK, the Fractional Paste had not been re-iced at any point in transit. None of the FedEx air waybills noted the requirement that the temperature of the shipment was to be maintained at -25°C in transit.

On June 24, the shipment was delivered to British Airways ("BA") at JFK for transport to Johannesburg where it was delivered to NBI at 7:48AM on June 27, 2021. According to the BA Air Waybill dated June 23, the quantity of dry ice was listed as 400 kg and required a set temperature of -25°C in transit.

When NBI downloaded the temperature data from the Sensitech Temptale Temperature Loggers placed in each of the 4 pallets, NBI discovered that on June 17 at about 10:44 AM, the temperature of all 4 pallets exceeded -20°C until some point on June 24, and exceeded -5°C beginning at 2:11 PM on June 18 until some point on June 23. According to NBI:



The specific wording of the European Pharmacopeia 0853 on Storage and Transport is as follows:

Frozen plasma is stored and transported in conditions designed to maintain the temperature at or below -20°C; for accidental reasons, the storage temperature may rise above -20°C on one or more occasions during storage and transport but the plasma is nevertheless considered suitable for fractionation if all the following conditions are fulfilled:

1. The total period of time during which the temperature exceeds -20°C does not exceed 72 h;
2. The temperature does not exceed -15°C on more than one occasion;
3. The temperature at no time exceeds -5°C.

Since compliance with this temperature requirement is specifically in NBI's final product dossiers, and a SAHPRA [South African Health Products Regulatory Authority] requirement, the product sustained spoilage the moment that the specific conditions listed above could not be met.

As a result, NBI rejected the shipment and on June 30, 2021, ABO submitted a claim to RLI seeking coverage for the claimed loss under Certificate of Insurance No. 950910. Unfortunately, RLI now concludes, for the reasons set forth herein, the Policy does not provide coverage for the claim.

## The Delay Warranty Precludes Coverage

According to Certificate of Insurance No. 950910 issued on June 15, 2021 (the "COI"), RLI agreed to insure a shipment of 4 pallets of blood plasma in transit from Mexico City, Mexico to Queens, New York at an insured value of US$820,147.36 subject to the terms, conditions, exclusions and limitations set forth in the COI and the Policy. With respect to the insuring conditions, the COI provides, in relevant part:

> *This insurance covers against "All Risks" of physical loss or damage from any external cause irrespective of percentage, but excluding nevertheless the risks of War, Strikes, Riots, Seizure, Detention and other risks excluded by the Nuclear/Radioactive Contamination Exclusions clause, the F.C. & S. (Free of Capture and Seizure) Warranty and the S.R.&C.C. (Strikes, Riots and Civil Commotions) Warranty of this policy, except to the extent that such risks are specifically covered by endorsement.*

> *Coverage specifically includes deterioration/decay of or damage to the goods insured, including spoilage, from any cause which shall arise during the insured voyage.*

> *Warranted: must be properly packed and in sound condition at the time of attachment of the insurance.*

> *Each and every loss is subject to a deductible of ½ of 1% of the total insured value of the shipment.*

> *Warranted all carrier(s) are to be instructed that temperature to be maintained throughout transit.*

INSURANCE COMPANY

> *Excluding claims arising as a result of fault in preparation.*
>
> *Excluding loss of market.*

In relevant part, the COI further provides:

> *This certifies that the Assured is insured under and subject to the conditions of the Open Policy and in this Certificate.*
> *Assured:*
> *ABO Pharmaceuticals*
>
> *Loss payable at/to: Assured or order*
>
> *. . . This Certificate is subject to all the terms of the Open Policy, provided, however, that the right of a bona fide holder of this Certificate for value shall not be prejudiced by any terms of the Open Policy which are in conflict with the terms of this Certificate*
>
> \* \* \*
>
> *PARAMOUNT WARRANTIES: The following warranties shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risk excluded by these warranties and expressly assumes the said risks.*
>
> \* \* \*
>
> *Delay Warranty*

The Delay Warranty of the Policy provides:

> **PARAMOUNT WARRANTIES**
> *The following warranties shall be paramount and shall not be modified or superseded by any other provision included herein, or stamped, or endorsed hereon unless such other provision refers specifically to the risks excluded by these warranties and expressly assumes the dais risks:*
>
> \* \* \*
>
> **Delay Warranty**
> *Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, whether such delay was caused by a peril insured against or otherwise.*

Based on the information provided, the claimed damage to the Fractional Paste was caused by the delay encountered while in transit. As the foregoing paramount warranty unambiguously precludes coverage for loss, damage or deterioration caused by delay, there is no coverage for the claim under either the COI and/or the Policy.

### There is No Evidence FedEx was Instructed to Maintain Temperature in Transit

As noted above, the COI provides, in relevant part:

RLI INSURANCE COMPANY

> *Warranted all carrier(s) are to be instructed that temperature to be maintained throughout transit.*

According to Mr. Brenner's letter of August 9, 2022, in the weeks prior to transit, Del DeMarino, Bennett's Director of Sales – Cold Chain Solutions, was in regular communication with FedEx representatives regarding the booking of the Shipment. According to a June 2, 2021, email from Oscar Zuluga of FedEx, FedEx offered to provide a one day transit, assuming there were no customs delays, to monitor the Shipment at various points in transit and provide regular email updates and re-ice the Shipment with additional dry ice if needed due to delays in Memphis.

However, we have not been provided any subsequent correspondence that confirms acceptance of these terms nor have we seen any correspondence in which FedEx was requested and/or instructed to maintain the temperature in transit. As the foregoing warranty unambiguously states that *"all carrier(s) are to be instructed that temperature to be maintained throughout transit"*, and there is no evidence that FedEx was instructed to maintain temperature in transit, there is no coverage for the claimed loss under either the COI and/or the Policy.

## The Packing Warranty was Breached

The COI further provides:

> *Warranted: must be properly packed and in sound condition at the time of attachment of the insurance.*

Under the EXW terms of sale, risk of loss transferred to ABO once the Fractional Paste was picked up at Genbio in Mexico City and, therefore, that is when coverage under the COI and Policy attached. Based on its investigation, RLI has concluded that at the time coverage attached, the Factional Paste was not properly packed. In particular, the U-Line Fiber Drums and thermal blankets lacked the proper validation and insulating characteristics to ensure that the required temperature was maintained throughout transit. Furthermore, the placement and location of dry ice solely on the top tier within the pallets was also improper. Consequently, as RLI has concluded that the Fractional Paste was not properly packed at the time coverage attached, the foregoing Warranty was breached and, as a result, there is no coverage under either the COI and/or the Policy.

## Conclusion

In sum, based upon the investigation conducted and information provided to date, RLI must respectfully deny coverage for the claim under the Policy.

This letter is not an exhaustive listing of all of the terms, conditions, exclusions or limitations of the insurance policies that might bar or limit RLI's obligations in this matter. There may be other facts and circumstances, as well as other policy provisions, which would further serve to relieve RLI of any obligation under the Policy Therefore, please be advised that this correspondence should not be deemed or construed as a waiver of any of the rights and defenses available to RLI, including but not limited to those rights and defenses provided under the applicable policy of insurance.



Should you wish to take this matter up with the New York State Department of Financial Services, you may file a complaint with the department either on its website at HTTP://WWW.DFS.NY.GOV/CONSUMER/FILEACOMPLAINT.HTM or by writing to the Consumer Assistance Unit, New York State Department of Financial Services, at: One State Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257; 1399 Franklin Avenue, Garden City, NY 11530; or 535 Washington Street, Suite 305, Buffalo, NY 14203.

Should you have any questions or wish to discuss this matter in additional detail, please do not hesitate to contact the undersigned.

Sincerely,

*Stephanie Meyers*

Stephanie Meyers
RLI Marine


cc:   *Via Email to:*

Marvin Margolies
Marine Adjuster
Global Risk Solutions
Email: mmargolies@globalrisksolutions.com

Matthew Archibald
Account Executive
Epic Brokers
Email: matthew.archibald@epicbrokers.com

*Via Regular Mail and Email to:*

Lawrence Arnold
Global Risk Solutions
1000 Brickell Avenue, Suite 610
Miami, FL 33131
Email: larnold@globalrisksolutions.com