**Exhibit A**
**March 12, 2019 Loan Agreement**

## LOAN AGREEMENT

This Loan Agreement is entered into by and between **Customers Bank** (the "Lender"), **BTIC-Big Tic, Inc., a Georgia corporation** (the "Borrower"), and **Andries Van Pletzen and Lara Van Pletzen** (the "Guarantor", whether one or more), jointly and severally, this ⎯12⎯ day of March, 2019.

### ARTICLE I
### DEFINITIONS AND USE OF TERMS

1.1    **Definitions.** As used herein, the following terms have the meanings indicated, unless the context otherwise requires:

"**Advance**" means a disbursement by Lender of any proceeds of the Loan or Escrow.

"**Borrower**" means all parties named as Borrower in the first paragraph of this Loan Agreement.

"**Business Premises**" means the real property where Borrower is conducting business operations.

"**Code**" means the Uniform Commercial Code, as now enacted and hereinafter amended in the State of Georgia.

"**Collateral**" means all property and other interests, real, personal, mixed, or otherwise, now or hereafter subject to a Lien in favor of Lender to secure all or part of the Obligations, including without limitation, all property and other interests described in *Exhibit "B"* attached hereto.

"**Closing Date**" means the date of this Loan Agreement.

"**Current Date**" means a date within 30 days prior to the Closing Date.

"**Debtor Relief Laws**" means any applicable liquidation, conservatorship, bankruptcy, moratorium, arrangement, insolvency, reorganization, or other similar laws, domestic or foreign, including but not limited to those in Title 11, U.S.C.A., affecting the Rights of creditors generally, as in effect from time to time.

"**Deed of Trust**" means one or more deed(s) of trust, mortgage(s), or other document(s), in Proper Form, creating a Lien on the Land to secure payment and performance of all or part of the Obligations.

"**Default**" has the meaning set forth in Article VII hereof, and in any other provision hereof using the term.

"**Entity**" means a limited liability company, limited liability partnership, limited liability limited partnership, limited partnership, general partnership, corporation, and any other form of business organization allowed by law.

"**Escrow**" means any funds placed on deposit with Lender or Lender's Representative and to be disbursed pursuant to this Loan Agreement or any other agreement.

"**Fees**" means all fees, costs, and expenses due in connection with the Loan including, without limitation, all fees, costs, and expenses generally described in *Exhibit "C"* hereto.

"**Financial Statements**" means the financial information of Borrower and of Guarantor heretofore and/or hereafter submitted to Lender.

"**GAAP**" means, as to a particular Person, such accounting practice as, in the opinion of independent certified public accountants of recognized national standing, conforms at the time to generally accepted accounting principles, consistently applied. In addition, GAAP means those principles and practices (a) which are recognized as such by the Financial Accounting Standards Board; and (b) which are consistently applied for all periods after the Closing Date so as to properly reflect the financial condition, and results of operations and changes in financial position, of such Person. If any change in any accounting principle or practice is required by the Financial Accounting Standards Board in order for such principle or practice to continue as GAAP, all reports and Financial Statements required under this Agreement may be prepared in accordance with such change. Notwithstanding the foregoing, as to individuals only, GAAP means such accounting principles and practices as, in the opinion of such accountants, conform at the time to such individual's federal income tax basis of accounting, consistently applied.

"**Governing Documents**" means the initial formation documents of an Entity, including by way of example and not by limitation, (a) any certificate of formation, certificate of limited partnership, articles of incorporation, and articles of organization, (b) any operating agreement, company agreement, regulations, shareholder agreement, bylaws, and partnership agreement, along with any resolutions approved by the Entity's governing body, members, managers, shareholders, partners, or other Person(s) with authority. In the case of a trust, the Governing Documents will include the trust agreement, along with any certificate of the trustors and/or trustees. In the case of a general partnership, the Governing Documents will include the partnership agreement. In all cases, the term "Governing Documents" shall also include all amendments, modifications, and supplements to the foregoing, and other related documents.

"**Governmental Authority**" means the United States of America (and/or other country, as applicable), any state, county, city or other political subdivision, and any court, agency, board, department, commission, or instrumentality having jurisdiction over any Borrower, Guarantor, or Collateral.

"**Governmental Requirements**" means all statutes, laws, ordinances, rules, regulations, orders, writs, injunctions or decrees of any Governmental Authority applicable to any Borrower, Guarantor or Collateral.

"**Guarantor**" means all parties named as Guarantor in the first paragraph of this Loan Agreement.

LOAN AGREEMENT                                                                                     PAGE 2

"**Guaranty Agreement**" means a guaranty agreement, in Proper Form, to be executed by Guarantor in favor of Lender, as same may from time to time be amended, modified, restated, supplemented or substituted.

"**Land**" means the real property described in *Exhibit "B"*, and all improvements thereon, if any, whether now existing or hereafter constructed.

"**Lender**" means the Lender named in the first paragraph of this Loan Agreement and its successors and assigns, in whole or in part.

"**Lender's Representative**" means any agent, employee, attorney, or other Person authorized to act on behalf of Lender.

"**Lien**" means any pledge, deed of trust, mortgage, charge, encumbrance, security interest, collateral assignment or other lien whether based on common law, constitutional provision, statute, or contract.

"**Loan**" means the loan from Lender to Borrower in the amount of **Seven Hundred Thirteen Thousand and No/100 Dollars ($713,000.00)** under the terms stated in the SBA Authorization, together with any renewals, modifications, extensions and increases thereof.

"**Loan Agreement**" means this Loan Agreement, and all exhibits and schedules attached hereto, as same may be amended, modified, restated or supplemented from time to time.

"**Loan Documents**" means the Note, Guaranty Agreement, Security Documents, and this Loan Agreement, along with all other agreements, instruments, applications, affidavits, budgets, and documents executed and delivered at any time in connection with the Loan.

"**Material Adverse Change**" means any occurrence or combination of occurrences which is, or could reasonably be expected to be, material and adverse to the financial condition or business operation of any Borrower or Guarantor, or which could reasonably be expected to cause a Default. A Material Adverse Change includes, without limitation, any material deterioration, impairment, decline in character or value, whether actual or reasonably anticipated, in the assets, operations, or financial condition of any Borrower or Guarantor, or any part of the Collateral, or any other property subject to a Lien in favor of Lender as security for the Obligations.

"**Note**" means the promissory note of even date herewith, in Proper Form, in the amount of the Loan, executed by Borrower in favor of Lender, together with any renewals, modifications, extensions and increases thereof.

"**Obligations**" means the indebtedness evidenced by the Note and other Loan Documents, together with any and all present or future indebtedness, liabilities, and obligations of any Borrower and/or Guarantor to Lender of any kind and however evidenced, originally contracted with Lender or with another or others, or in which Lender may have or hereafter acquire a participating interest, direct or indirect, matured or not matured, absolute or contingent, and in any and all amendments, extensions, modifications, and renewals of any of the same. The term "Obligations" shall also include, and Borrower and Guarantor hereby agree to pay, any and all

attorneys' fees, costs, and expenses incurred by Lender in the collection or enforcement of any of the Obligations and the perfection, preservation, and enforcement of its Rights hereunder and its security interest in the Collateral.

"**Person**" means a firm, company, corporation, association, joint stock association, partnership, joint venture, and/or other Entity, as well as an individual, trust, trustee, unincorporated organization, and/or Governmental Authority.

"**Proper Form**" means in form, scope, and substance satisfactory to Lender.

"**Required Insurance**" means all insurance required by the SBA Authorization and/or by Lender, including but not limited to flood, fire, comprehensive property damage, public liability, life, disability, worker's compensation, and malpractice, with the Lender named as an additional insured, mortgagee, assignee, or loss payee, as applicable. All Required Insurance shall be issued and maintained in Proper Form, and by companies satisfactory to Lender, in its sole discretion.

"**Rights**" means rights, remedies, powers, and privileges.

"**Security Documents**" means any and all agreements, Deeds of Trust, chattel mortgages, security agreements, pledges, assignments, undertakings, subordination agreements and other instruments and financing statements, in Proper Form, as the same may be amended, modified, restated or supplemented from time to time, now or hereafter executed, delivered, and/or authorized by any Borrower, Guarantor, or others in order to create or perfect a Lien on the Collateral, or any portion thereof.

"**SBA**" means the United States Small Business Administration.

"**SBA Authorization**" means that certain United States Small Business Administration Authorization dated March 7, 2019, by and between Lender and the SBA, a true and correct copy of which is attached hereto as *Exhibit "A"* and incorporated herein by reference, and all amendments thereto.

"**Special Flood Hazard Area**" means an area having special flood, mudflow, or flood-related erosion hazards, as determined by Federal Emergency Management Agency, and shown on a Flood Hazard Boundary Map or a Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, V1-V30, VE, or V.

"**Survey**" [Not applicable to this transaction.]

"**Title Company**" [Not applicable to this transaction.]

"**Title Insurance**" [Not applicable to this transaction.]

LOAN AGREEMENT                                                                                          PAGE 4

## ARTICLE II
## THE LOAN

2.1  **SBA Guaranteed Loan.** The SBA has authorized a guaranty of the Loan under the terms stated in the SBA Authorization.  Subject to the terms and conditions set forth in the Loan Documents and the SBA Authorization, the Lender, Borrower, and Guarantor agree as follows:

(a)  Promissory Note.  The Loan will be evidenced by the Note.

(b)  Collateral.  As partial collateral and security for the Loan, and any and all other indebtedness or obligations from time to time owing by Borrower to the Lender, Borrower and/or Guarantor, as applicable, shall grant, and hereby grants, to the Lender, its successors and assigns, a first and superior Lien (except as otherwise noted in *Exhibit "B"* hereto) on all of the Collateral.  The Lender's Lien(s) on the Collateral shall be evidenced by such agreements, instruments, documents and certificates as may be required by the Lender, in Proper Form.

(c)  Guaranties.  As an inducement to the Lender to execute and deliver this Loan Agreement and to make the Loan to Borrower, Borrower agrees to cause each Guarantor to execute and deliver a Guaranty Agreement.

2.2  **Procedure for Borrowing.**  Subject to the conditions hereof, and provided that a Default has not occurred, Lender will make Advances to Borrower in accordance with this Loan Agreement and Lender's internal disbursement procedures and requirements, as same may be amended from time to time.

## ARTICLE III
## ADVANCES

3.1  **Conditions Precedent to the Loan and the First Advance.**  As conditions precedent to any obligation of the Lender to make the Loan and/or the first Advance thereunder, Borrower and Guarantor, as applicable, agree that such First Advance is subject to the prior satisfaction of, and compliance with, all of the terms, conditions, and  requirements (a) set forth in the Loan Documents and/or (b) of the SBA, including, without limitation, the terms, conditions and requirements of (i) the SBA Authorization, (ii) applicable statutes, regulations, and SBA's standard operating procedures, and (iii) the SBA Loan Guarantee Agreement (SBA Form 750B for short-term agreements) between Lender and SBA, and the complete and continuing satisfaction, on or before the date of any such Advance, of the following additional conditions precedent:

(a)  Borrower, Guarantor, and any other person or entity required to do so shall have executed and delivered to the Lender the Loan Documents to which they are a party and any and all other agreements, instruments, documents, and certificates reasonably required or requested by the Lender to give effect to the transactions contemplated by this Loan Agreement, including but not limited to all certifications, documents or other information which Lender is required by the SBA Authorization to obtain from Borrower or any third party, all in Proper Form;

**LOAN AGREEMENT**                                                    **PAGE 5**

(b)    As of the date of each Advance and after giving effect thereto (1) all representations and warranties made to the Lender by each Borrower and Guarantor in the Loan Documents shall be true and correct, as of and as if made on such date, and (2) no Material Adverse Change shall have occurred and be continuing since the effective date of the most recent Financial Statements furnished to the Lender by Borrower or Guarantor;

(c)    Each Borrower and Guarantor, if applicable, shall have submitted to Lender evidence that Borrower and/or Guarantor, as the case may be, has obtained all Required Insurance;

(d)    Borrower and Guarantor shall have satisfied, and be in compliance with, all of the covenants, conditions, and provisions contained in the Loan Documents; and

(e)    Borrower must pay to Lender, in cash, all Fees, and execute and deliver to, obtain for and deliver to, Lender, and if appropriate, record in the proper records, the documents, certificates, and other items referred to in Exhibit "C", hereto, together with such other documents, certificates and items as Lender may require. Except as otherwise specifically provided herein or agreed in writing by Lender, all such documents, certificates and other items shall be in Proper Form and bear a Current Date.

**3.2**    **Conditions to Each Advance.** As conditions precedent to each Advance, including the first Advance, in addition to all other requirements herein, Borrower and Guarantor, as applicable, must satisfy the following requirements and, if required by Lender, deliver to Lender evidence of such satisfaction:

(a)    All conditions precedent to the first Advance or stated elsewhere herein shall have been satisfied. The failure, whether intentional or not, of Lender to insist upon full compliance with any conditions precedent to the first Advance, shall not constitute a waiver of such requirement(s), and Lender may, in its sole discretion, insist upon full compliance with any such requirement at any time.

(b)    There shall then exist no Default nor shall there have occurred any event which with the giving of notice or the lapse of time, or both, could become a Default.

(c)    The representations and warranties made in the Loan Documents including, without limitation, those set out in Article IV, below, must continue to be true and correct on, and as of, the date of each Advance. Each request for an Advance, and Borrower's acceptance of each Advance, shall constitute a reaffirmation by each Borrower and Guarantor on the date of such request or acceptance, as applicable, of the accuracy of all representations and warranties.

(d)    Promptly deliver to Lender all evidence required by Lender to document that all proceeds of the Loan have been, and will continue to be, used only for those purposes specified in the SBA Authorization.

**3.3**    **No Waiver.** No Advance shall constitute a waiver of any condition precedent to the obligation of Lender to make any further Advance, or preclude Lender from thereafter declaring the failure

**LOAN AGREEMENT**                                                        **PAGE 6**

of Borrower to satisfy such condition precedent to be a Default. The making of an Advance by Lender shall not be deemed or interpreted by Borrower, Guarantor, or anyone else to be an acknowledgment or belief by Lender that all of the conditions to the making of such Advance, as specified in this Loan Agreement, have been satisfied.

3.4     **Conditions Precedent for the Benefit of Lender.** All conditions precedent to the obligation of Lender to make any Advance are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or be entitled to assume that Lender will refuse to make any Advance in the absence of strict compliance with such conditions precedent. Any requirement of this Loan Agreement may be waived by Lender, in whole or in part, at any time. Any requirement herein of submission of evidence of the existence or nonexistence of a fact means that the fact shall exist or not exist, as the case may be, and without waiving any condition or any obligation of Borrower, Lender may at all times independently establish to its satisfaction such existence or nonexistence.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES

4.1     <u>Representations and Warranties</u>. Each Borrower and Guarantor hereby represents and warrants, and upon each Advance further represents and warrants, as follows:

(a)     Each Borrower and Guarantor that is an Entity has all requisite power and authority to execute and deliver the Loan Documents and is, and shall until the Obligations are fully discharged continue to be: (1) duly organized, validly existing, and in good standing under the laws of the state of its organization, and validly existing and in good standing under the laws of every other state in which it transacts business, if any; (2) in compliance with all conditions prerequisite to its lawfully doing business in the state of its organization and in every other state in which it transacts business, if any; and (3) possessed of all power and authority necessary to (i) own the Land and other property serving as Collateral, (ii) operate the business(es) located on each Business Premises, (iii) enter into and perform Borrower's/Guarantor's obligations under the Loan Documents, and (iv) enter into the transaction described in the Loan Documents.

(b)     The execution, delivery, and performance of the Loan Documents by each Borrower and Guarantor have been duly authorized by all necessary action required by the Governing Documents, if applicable, and constitute legal, valid and binding obligations of each Borrower and Guarantor, enforceable in accordance with their terms except as the enforcement thereof may be limited by Debtor Relief Laws.

(c)     For each Borrower and Guarantor, the execution, delivery and performance of the Loan Documents, and the consummation of the transactions contemplated thereby, do not conflict with, result in a violation of, or constitute a default under (1) any provision of any applicable Governing Documents (applies only if Borrower/Guarantor is an Entity or a trust), (2) any agreement or other instrument binding upon Borrower/Guarantor, or (3) any Governmental Requirement applicable to any Borrower or Guarantor, or require the consent, approval or authorization of any third party;

**LOAN AGREEMENT**                                                                                            **PAGE 7**

(d)     Each Borrower and Guarantor which is conducting business has and will, for the term of the Loan, maintain an Employer Identification Number (EIN), and comply with all Governmental Requirements including, without limitation, all insurance, licenses, permits and other matters as are necessary to lawfully conduct its business on the Business Premises;

(e)     All proceeds of the Loan and Escrow, if any, will only be used for those purposes set forth in the SBA Authorization. Such Loan and Escrow will not be used directly or indirectly for personal, family, household or agricultural purposes;

(f)     Borrower and Guarantor currently own no "instruments" or "chattel paper", as those terms are defined in the Code, but will immediately advise Lender if Borrower and/or Guarantor later acquire(s) any right or interest in and to any such property and will execute whatever documents may be required by Lender to create and perfect a security interest in such property, and deliver the originals of instruments and chattel paper to Lender, properly endorsed to Lender, with full recourse. This provision applies only if the Collateral includes "instruments" or "chattel paper" of any Borrower or Guarantor.

(g)     All Financial Statements previously delivered to Lender are true, correct, and complete as of the dates specified therein, and fully and accurately present the financial condition of each Borrower and Guarantor, as applicable, as of the dates specified. Since the date of the most-recently submitted Financial Statements, no Material Adverse Change has occurred, except as heretofore disclosed in writing to Lender, nor has any Borrower or Guarantor incurred any material liability, direct or indirect, fixed or contingent. Each Borrower and Guarantor is solvent.

(h)     There are no actions, suits, or proceedings pending or, to the knowledge of Borrower and/or Guarantor, threatened before or by any Governmental Authority against or affecting any Borrower, Guarantor or Collateral, or involving the validity or enforceability of the Loan Documents, or priority of any Lien on any Collateral. Neither Borrower nor Guarantor is, and the consummation of the transactions contemplated hereby, and the performance or satisfaction of any of the terms or conditions hereof and of the other Loan Documents will not cause Borrower or Guarantor to be, in violation of or in default with respect to any Governmental Requirement, or in default (or provide cause for acceleration of indebtedness) under any mortgage, deed of trust, lease, promissory note, loan agreement, credit agreement, partnership agreement or other agreement or restriction to which any Borrower or Guarantor is a party or by which any Borrower or Guarantor or any portion of the Collateral may be bound or affected.

(i)     There is no fact that Borrower and/or Guarantor have not disclosed to Lender in writing that could materially adversely affect any of the Collateral, or the business or financial condition of any Borrower or Guarantor. No representation or warranty made by any Borrower or Guarantor under any of the Loan Documents, and no document, instrument or certificate furnished, to be furnished or caused to be furnished by any Borrower or Guarantor to Lender in anticipation of or pursuant to the Loan, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained therein not misleading.

(j)     The Person executing the Deed of Trust is the legal and equitable fee simple absolute owner of the Land, subject only to title exceptions (specified in the Title Insurance, if any) which are approved by Lender in writing.

(k)     The Business Premises abuts and has both actual vehicular and pedestrian access to and from a public street (the "Street"), which Street is physically open and publicly maintained. Borrower has the right to use existing curb cuts or entries along that portion of the Street abutting the Business Premises.

(l)     All utility and municipal services required for the intended use of the Business Premises, including but not limited to, water supply, storm and sanitary sewer systems, gas, electric, high-speed internet, and telephone facilities, are all available for use at the Business Premises.

## ARTICLE V
## COVENANTS AND AGREEMENTS

5.1     **Affirmative Covenants**.  Until the Note and all other obligations and liabilities of Borrower under the Loan Documents are fully paid and satisfied, each Borrower and Guarantor jointly and severally certify, covenant, and agree that it and they will, unless the Lender shall otherwise consent in writing, do all of the following:

(a)     Promptly pay and discharge when due all of its Obligations.

(b)     Promptly pay or cause to be paid, before delinquent, all amounts owing by any Borrower and/or Guarantor to any, landlord, property association, developer, Governmental Authority, or other Person including, without limitation, all taxes, assessments, charges, levies, and Liens of every kind and nature owed, now or in the future, by any Borrower or Guarantor and/or relating to any Collateral and, upon request by Lender, furnish evidence satisfactory to Lender of the timely payment of such amount(s).

(c)     Promptly inform the Lender of (1) any Material Adverse Change, (2) any litigation or threatened litigation against any Borrower and/or Guarantor, and/or affecting any Collateral, and (3) any claim or controversy which might become the subject of litigation against any Borrower and/or Guarantor, and/or affecting any Collateral, and furnish such additional information relative to (1), (2), or (3), above, as the Lender may request.

(d)     Maintain complete and proper books, records, and accounts in a manner satisfactory to Lender and, at Borrower's/Guarantor's expense, permit the Lender to inspect, audit, and copy the books, records and papers relating to any Borrower's and/or Guarantor's financial or business condition, inspect and appraise any of Borrower's (or Guarantor's) assets, and permit any Governmental Authority to furnish reports of examination, or any records pertaining to any Borrower and/or Guarantor, upon request by Lender.

(e)     Purchase and maintain all Required Insurance.

**LOAN AGREEMENT**                                                                **PAGE 9**

(f)    Permit such persons as the Lender may designate to visit the Business Premises, and examine the property(ies) and installation(s), along with any records located thereon.

(g)    Promptly cure any defects in any of the Loan Documents and execute and deliver, or cause to be executed and delivered, any and all other agreements, instruments or documents which the Lender may reasonably request in order to give effect to the transactions contemplated under the Loan Documents.

(h)    Allow the use of the name of any Borrower and/or Guarantor in advertisements indicating that the Lender has provided financing.

(i)    Perform due diligence to ensure that the Collateral is in compliance with, and maintain the Collateral in compliance with, all applicable Governmental Requirements including, without limitation, the Americans with Disabilities Act of 1990, as amended, and all other Governmental Requirements concerning accessibility to disabled and handicapped individuals.

(j)    Comply with each and every covenant, condition, term, and requirement (i) set forth in the Loan Documents, and (ii) of the SBA, including, without limitation, the terms, conditions and requirements of (1) the SBA Authorization, (2) applicable statutes, regulations, and SBA's standard operating procedures, and (3) the SBA Loan Guarantee Agreement (SBA Form 750B for short-term agreements) between Lender and SBA.

(k)    Timely comply with and promptly furnish to Lender true and complete copies of any notice or claim by any Governmental Authority pertaining to any Business Premises, Collateral, and/or the business operations of any Borrower or Guarantor.

(l)    Promptly notify Lender of any fire or other casualty, or any notice of taking or eminent domain action or proceeding, affecting any Business Premises or any Collateral.

(m)    Pay when due all taxes, assessments, costs, expenses, and other amounts affecting or relating to the (1) Land, (2) Business Premises, (3) Collateral, (4) business operations of any Borrower or Guarantor, (5) Title Insurance, and all endorsements requested by Lender, if any (6) Survey, if any (7) Required Insurance, and (8) creation and perfection of Lender's Lien(s) on the Collateral, and, to the extent not already covered, above, will also pay, when due, all taxes, assessments, costs, expenses, and other amounts required by the Loan Documents and/or incurred by Lender and payable to third parties in connection with the consummation of the transactions contemplated by this Loan Agreement.

(n)    Ensure that hazard insurance on the Collateral is maintained at all times in an amount insuring the full replacement cost for the Collateral or maximum insurable value of the Collateral, whichever is greater.

(o)    Ensure that all Required Insurance on hazards to the Collateral (i) contains a mortgage clause (without contribution) in favor of Lender for real property Collateral and/or a loss payable clause for personal property Collateral in favor of Lender, with loss proceeds

**LOAN AGREEMENT**                                                              **PAGE 10**

payable to Lender as its interest may appear (if such insurance pertains to any Land or Business Premises), (ii) contains a provision requiring not less than ten (10) days' prior written notice to Lender of any cancellation or change of coverage, and (iii) provides that no act or failure to act of the insured or any occupant, and no occupancy or use of the Land or Business Premises, as applicable, for purposes more hazardous than permitted by the terms of the policy, will affect the validity or enforceability of the insurance as respects Lender.

(p)     Purchase flood insurance, in Proper Form, if any Land or Business Premises is located within in a Special Flood Hazard Area. The flood insurance will be in an amount equal to the maximum Loan amount, or the maximum amount available under the Flood Disaster Protection Act of 1973 and regulations issued pursuant thereto, as amended from time to time, whichever is less, in form complying with the "insurance purchase requirement" of that Act.

(q)     Execute and deliver to Lender, from time to time as required by Lender, such other documents as shall reasonably be necessary to provide the Rights to Lender granted or provided for by the Loan Documents.

(r)     Keep the Collateral free and clear of any Liens, charges or claims other than the Lien(s) created in favor of Lender to secure the Loan, and other Lien(s), if any, approved in writing by Lender.

(s)     Promptly deliver to Lender all evidence required by Lender to confirm that all proceeds of the Loan were used for the purposes set forth in the SBA Authorization.

(t)     From time to time, at the request of Lender, certify to Lender the names, signatures, and positions of all persons authorized to execute and deliver any of the Loan Documents.

(u)     Notify Lender immediately of the filing of any petition, case, proceeding or other action against any Borrower or Guarantor, or any of the Collateral, and/or any proceeding by or against any Borrower or Guarantor under any Debtor Relief Law. Borrower agrees that any transfer, encumbrance or other use of any Collateral (or any proceeds of such Collateral) after the filing of any such petition or other action and without specific written consent of Lender shall constitute a conversion of Lender's right, title and interest in such Collateral or the proceeds thereof, as the case may be.

(v)     Comply with all Governmental Requirements affecting any (i) Borrower or Guarantor, (ii) business being conducted by any Borrower or Guarantor, and/or (iii) Collateral.

(w)     Comply with all of the terms, conditions, requirements and other agreements contained in any franchise and/or license agreements, if any, applicable to any Borrower or Guarantor.

(x)     Comply with all of the terms, conditions, requirements and other agreements contained in each lease.

**LOAN AGREEMENT**                                                                 **PAGE 11**

(y)    Borrower will establish and maintain with a financial institution acceptable to Lender, a deposit account for the term of the Loan from which all payments due to Lender will automatically be debited when due.

(z)    Contributed Capital/Equity Capital.  Borrower acknowledges and agrees that, absent the express written consent of Lender, all capital contributed by Borrower to the project being financed by the proceeds of the Loan (the "Project") and any equity capital generated by the Project itself shall remain in the Project until the earliest of: (i) the Project being converted to its permanent phase (if applicable); (ii) the Loan being paid in full, or (iii) the Project being sold.

**5.2**    <u>Negative Covenants</u>.  Until the Note and all other obligations and liabilities of Borrower under the Loan Documents are fully paid and satisfied, each Borrower and Guarantor jointly and severally certify, covenant, and agree that it and they will not, unless the Lender shall otherwise consent in writing, do any of the following:

(a)    Make any material change in the nature of its business as carried on as of the date hereof.

(b)    Change the ownership interests and/or percentages in, or management of, any Borrower or Guarantor, or implement any new management practices.

(c)    Liquidate, merge or consolidate with or into any other Entity.

(d)    Sell, lease, pledge, encumber (except by purchase money liens on property acquired in the ordinary course of business after the date of the Note), transfer or otherwise dispose of any assets or properties of any Borrower or Guarantor, other than in the ordinary course of business.

(e)    Make a distribution of any company assets, including without limitation, money or property, that could create a Material Adverse Change, as determined by Lender in its sole discretion.

(f)    Incur any additional debt, except for usual and customary trade debt incurred in the ordinary course of business, or permit any additional Lien(s) on any Collateral.

(g)    Impose any restrictive covenants or encumbrances upon the Land, execute or file any subdivision plat affecting the Land, or consent to the annexation of the Land to any city, utility district, or other similar entity.

(h)    Permit any Material Adverse Change.

(i)    Suspend, liquidate, or dissolve any business or operations of any Borrower or Guarantor.

**5.3**    <u>Disclaimer of Additional Financing.</u>  Each Borrower and Guarantor acknowledges and agrees that Lender has not made any commitments, either express or implied, to extend the term of the Loan past its stated maturity date or to provide any Borrower or Guarantor with any financing other than the Loan.

**LOAN AGREEMENT**                                     **PAGE 12**

## ARTICLE VI
## REPORTING REQUIREMENTS

6.1    Until the Note and all other obligations and liabilities of Borrower under the Loan Documents are fully paid and satisfied, each Borrower and Guarantor jointly and severally certify, covenant, and agree that it and they will, unless the Lender shall otherwise consent in writing, furnish to the Lender, in Proper Form, the Financial Statements, reports and information described on ***Schedule 1*** attached hereto and made a part hereof. All of such Financial Statements and reports shall be prepared in accordance with GAAP, and shall in all respects present a true, correct, complete and fair representation of the financial position of the Person and shall be prepared and certified as to accuracy by an independent certified public accountant and/or representative of the reporting party acceptable to Lender, as Lender may require.

## ARTICLE VII
## DEFAULT

7.1    **Events of Default.** Each of the following shall constitute a "Default" under this Loan Agreement:

(a)    Any default in payment of any of the Obligations.

(b)    Any default, breach, or failure of or by any Borrower or Guarantor in the performance of any term, provision, condition, covenant, requirement, or agreement contained in any of the Loan Documents, or in any other document or agreement in favor of Lender, now or in the future, whether in connection with the Loan, or otherwise, which default, breach, or failure is not otherwise specifically addressed in this Section 7.1.

(c)    Any representation or warranty of any Borrower or Guarantor set forth in any (1) Loan Document, (2) Financial Statement, or (3) other document or agreement furnished to Lender, now or in the future, is found by Lender to have been false or misleading in any material respect when made.

(d)    Any Borrower or Guarantor (1) suspends the transaction of its business for any period of time, (2) sells, subleases, transfers, encumbers, or abandons the Business Premises, (3) makes or sends any notice of an intended bulk transfer, or (4) executes or files a certificate or other instrument evidencing a change in legal name.

(e)    Any Borrower or Guarantor that is an Entity fails to maintain its organizational existence in good standing.

(f)    Any Borrower or Guarantor (1) makes a general assignment for the benefit of creditors (or takes any action in furtherance thereof), (2) becomes insolvent, (3) fails generally to pay its debts as they become due, (4) petitions or applies to any tribunal for the appointment of a trustee, custodian, receiver, or other similar official of any Borrower or Guarantor of all or any substantial part of the assets of such Borrower or Guarantor, or (5) commences a voluntary case or any other proceeding relating to any Borrower or Guarantor under any Debtor Relief Laws (or takes any action in furtherance thereof).

LOAN AGREEMENT                                                                          PAGE 13

(g)    A final judgment for the payment of money is rendered against any Borrower or Guarantor and the same is not immediately paid or sufficiently bonded or escrowed.

(h)    Any Borrower, Guarantor or other Person claims, or any Governmental Authority finds or rules, that Lender does not have a valid Lien on the property described in any Security Document.

(i)    Any Borrower or Guarantor voluntarily becomes a party to any proceeding seeking to effect a suspension, or having the effect of suspending, any of the Rights of Lender granted or referred to in the Loan Documents, or of the trustee under any Deed of Trust, or takes any action in furtherance thereof.

(j)    Any Borrower or Guarantor sells, leases, transfers, encumbers, or abandons (except as otherwise expressly permitted by the Loan Documents) any of the Collateral, or any significant portion of Borrower's or Guarantor's other property; or any levy, seizure, execution, garnishment, attachment, sequestration or other writ or similar proceeding is made on any material portion thereof or thereon and same is not permanently dismissed or discharged within 30 days; or any material portion of the Collateral is lost, stolen, substantially damaged or destroyed unless such loss, damage or destruction is in Lender's judgment adequately covered by insurance, the proceeds of which are, or will immediately be, paid to Lender.

(k)    Any Borrower or Guarantor (1) conceals, removes, or permits to be concealed or removed, any part of its property, with intent to hinder, delay or defraud any of its creditors, (2) makes or suffers a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law, or (3) suffers or permits, while insolvent (under any applicable definition of the term), any creditor to obtain a Lien upon any of its property through legal proceedings, distraint, or otherwise, which is not permanently vacated within 30 days from the date thereof.

(l)    The dissolution, liquidation, business failure, merger, termination, forfeiture of right to do business, or similar event of any Borrower or Guarantor, or, if any Borrower or Guarantor is an individual, the death of any such Borrower or Guarantor.

(m)    An inability of Borrower to satisfy any condition specified in this Loan Agreement as precedent to the obligation of Lender to make an Advance after a request for an Advance has been submitted by Borrower to Lender.

(n)    A petition, case, proceeding or other action is commenced to appoint a receiver, trustee, custodian, liquidator or other officer of a court or other tribunal for any Borrower or Guarantor, or for any of the property of any Borrower or Guarantor, and such petition, case, proceeding or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or 30 days next following the date of its filing.

(o)    The commencement or institution of bankruptcy, reorganization, insolvency or liquidation proceedings by or against any Borrower or Guarantor.

**LOAN AGREEMENT**                                     **PAGE 14**

(p)     Any change in ownership of any Borrower or Guarantor that is an Entity.

(q)     Any litigation, action, or other proceeding is commenced which hinders or delays the collection of any part of the Obligations or the exercise of any Right or option of Lender.

(r)     Borrower uses the Loan proceeds or Collateral in any manner different from the manner contemplated in the Loan Documents.

(s)     The existence or entry of any judgment against any Borrower or Guarantor, or the issuance or entry of any attachment or other Lien against any of the property of any Borrower or Guarantor which remains undischarged, unbonded or undismissed within thirty (30) days after such issuance/entry.

(t)     The occurrence of a Material Adverse Change with respect to any Borrower or Guarantor, as determined by Lender in its sole discretion.

(u)     Any Borrower or Guarantor fails to pay any other indebtedness or any part thereof, as the same shall become due and payable, which may be secured by a Lien on the Collateral.

(v)     Any default claimed by any franchisor or licensor (if any Borrower or Guarantor is a franchisee or licensee), that remains unresolved to the satisfaction of Lender by written agreement of such franchisor/licensor, and Borrower or Guarantor, as applicable, within thirty (30) days.

(w)     Any default claimed by any landlord, that remains unresolved to the satisfaction of Lender by written agreement of such Landlord and Borrower or Guarantor, as applicable, within thirty (30) days.

(x)     Any dispute among the owners, partners, managers, directors, and/or officers of any Borrower or Guarantor relative to any decision directly or indirectly affecting the Loan (a "Dispute") which is not resolved within thirty (30) days by the unanimous written agreement of all such owners, partners, managers, directors, and officers, in a form acceptable to Lender. However, notwithstanding the thirty (30) day time period allowed above, Lender may immediately refrain from taking any further action in connection with the Loan, including without limitation withholding any or all further Advances, upon notification of any Dispute.

Nothing contained in this Loan Agreement shall be construed to limit the events of default contained in any of the other Loan Documents or any other document executed in connection with the Loan and all such Events of Default shall be cumulative.

**LOAN AGREEMENT**                                                          **PAGE 15**

## ARTICLE VIII
## RIGHTS AND REMEDIES OF LENDER

8.1     **Remedies.**  Upon the occurrence of any Default, Lender may, at its sole discretion, do any one or more of the following:

    (a)    Declare the Obligations, or any part thereof, immediately due and payable, whereupon it shall be due and payable, without further presentation, demand for payment, notice of intent to accelerate, notice of acceleration or dishonor, protest or notice of protest of any kind, all of which are expressly hereby waived by each Borrower and Guarantor.

    (b)    Terminate its commitment to lend, and cease further Advances.

    (c)    Exercise the right of offset and/or banker's lien against the interest of any Borrower and/or Guarantor in and to each and every account and other property of Borrower and/or Guarantor which are in the possession of Lender, to the extent of the full amount of the Obligations.

    (d)    Reduce any claim to judgment.

    (e)    Apply any remaining Escrow to the Obligations.

    (f)    All Obligations secured by the Loan Documents shall be payable without relief from valuation and appraisement laws.

8.2     **Rights Cumulative.**  All Rights of the Lender under the terms of this Loan Agreement shall be cumulative of, and in addition to, the Rights of the Lender under any and all other agreements between Borrower and/or Guarantor and the Lender (including, but not limited to, the other Loan Documents), and not in substitution or diminution of any Rights now or hereafter held by the Lender under the terms of any other agreement.  All such Rights shall also be cumulative of and in addition to all other Rights of Lender at law, in equity or otherwise, whether or not the Obligations be due and payable and whether or not Lender shall have instituted any suit for collection, foreclosure, or other action in connection with the Loan Documents, and such Rights may be pursued separately, successively or concurrently against any Borrower, Guarantor or Collateral, at the sole discretion of Lender.  The exercise or failure to exercise any such Right shall not constitute a waiver or release thereof or of any other Right, and the same shall be nonexclusive.

8.3     **Waiver and Agreement.**  Neither the failure nor any delay on the part of the Lender to exercise any Right under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of such Right preclude any other or further exercise thereof or the exercise of any other Right.  No waiver of any provision in any of the Loan Documents will be presumed, and no departure by any Borrower or Guarantor therefrom shall be effective, unless the same shall be approved in writing and signed by the Lender, and then shall be effective only in the specific instance and for the purpose for which given and to the extent specified in such writing.

8.4    **Performance by Lender.** Should any covenant, duty, or agreement of any Borrower and/or Guarantor fail to be performed in accordance with the terms of the Loan Documents, Lender may, at its option, perform, or attempt to perform, such covenant, duty, or agreement on behalf of Borrower/Guarantor. In such event, Borrower shall pay to Lender on demand any amount expended by Lender in such performance or attempted performance, together with interest thereon at the rate provided in the Note for past-due principal from the date of such expenditure by Lender until paid. Notwithstanding the foregoing, it is expressly understood that Lender does not assume and shall never have any liability or responsibility for the performance, or attempted performance, or non-performance, of any duties of any Borrower or Guarantor under the Loan Documents.

8.5    **No Waiver.** The acceptance or payment from the Loan or Escrow by Lender at any time and from time to time of part payment on the Obligations shall not be deemed to be a waiver of any Default then existing. No waiver by Lender of any Default shall be deemed to be a waiver of any other then existing or subsequent Default. No waiver by Lender of any of its Rights hereunder, in the other Loan Documents or otherwise, shall be considered a waiver of any other or subsequent Right of Lender. No delay or omission by Lender in exercising any Right under the Loan Documents or otherwise shall impair such Right or be construed as a waiver thereof or any acquiescence therein, nor shall any single or partial exercise of any such Right exhaust the same or preclude other or further exercise thereof, or the exercise of any other Right under the Loan Documents, applicable law, or otherwise.

8.6    **Funds of Lender.** Any funds of Lender used for any purpose referred to in this Article VIII shall be secured by the Security Documents and shall bear interest at the rate specified in the Note for past-due principal.

8.7    **Indemnification of Lender.** Each Borrower and Guarantor hereby expressly acknowledges and recognizes Borrower's responsibility for and agrees to indemnify and hold Lender and Lender's successors and assigns and Lender's Representative(s) absolutely harmless from and against all costs, expenses, liabilities, loss, damage or obligations incurred by or imposed upon or alleged to be due of Lender or Lender's successors and assigns and Lender's Representative in connection with the assertion of: (a) any claim for brokerage, agency or finder's fees or commissions in connection with the Loan and/or the Land; or (b) any claim for attorneys', appraisal, title insurance, if any, inspection or other fees, costs and expenses incurred in connection with the negotiation, closing, administration, collection or refinancing of the Loan, which arise by, through or on behalf of any Borrower or Guarantor or any agent or representative of any of them; or (c) any claim arising out of or occurring because of or related to any Default hereunder. Without limiting the remedies available to Lender with respect to the enforcement of its indemnification Rights as stated herein or as stated in any of the other Loan Documents, in the event any claim or demand is made or any other fact comes to the attention of Lender in connection with, relating or pertaining to, or arising out of the transactions contemplated by this Loan Agreement, which Lender reasonably believes might involve or lead to some liability of Lender, Borrower shall, immediately upon receipt of written notification of any such claim or demand, assume in full the personal responsibility for and, to the extent requested by Lender, the defense of any such claim or demand and pay in connection therewith any loss, damage, deficiency, liability or obligation, including without limitation, attorneys' fees and court costs incurred in connection therewith. In the event of court action in connection with any such claim

**LOAN AGREEMENT**                                                                                           **PAGE 17**

or demand, Borrower shall assume, to the extent requested by Lender, the responsibility for the defense of any such action, and shall immediately satisfy and discharge any final decree or judgment rendered therein. Lender may, in its sole discretion, make any payments sustained or incurred by reason of any of the foregoing, and Borrower shall immediately repay to Lender in cash the amount of such payment, with interest thereon at the rate specified in the Note to be applicable to past-due principal. Lender shall have the right to join Borrower as a party defendant in any legal action brought against Lender, and Borrower hereby consents to the entry of an order making Borrower a party defendant to any such action.

**ARTICLE IX**
**GENERAL TERMS AND CONDITIONS**

9.1   **Notices.** Except as otherwise provided herein, any notice required or permitted hereunder or under applicable law shall be in writing and shall be deemed effective if either (1) hand delivered, (2) sent by certified mail, return receipt requested, postage prepaid, or (3) sent by overnight courier. All notices sent by U.S. mail and addressed as shown below shall be deemed received on the earlier of (i) the third day (excluding Sundays and legal holidays when the U.S. mail is not delivered) immediately following the date of deposit in the U.S. mail to the applicable address shown below, postage prepaid, or (ii) the date of actual receipt. All notices which are hand delivered or sent by overnight courier shall be deemed received on the day of delivery to the applicable address shown below. The address(es) shown below may be changed by any party by giving notice as provided above.

|  |  |
|---|---|
| If to Borrower: | BTIC-Big Tic, Inc.<br>380 Winkler Drive, Suite 400<br>Alpharetta, Georgia 30004-5740 |
| If to Guarantor: | Andries Van Pletzen and Lara Van Pletzen<br>4963 Sydney Lane<br>Marietta, Georgia 30066 |
| If to Lender: | Customers Bank<br>99 Bridge Street<br>Phoenixville, Pennsylvania 19460 |

9.2   **Construction.** This Loan Agreement and, except as otherwise provided therein, the other Loan Documents, shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and the laws of the United States applicable to transactions within the State of Georgia, and shall be performable by the parties hereto in Chester County, Pennsylvania, where it is stipulated that jurisdiction and venue lies with respect to this Loan Agreement.

9.3   **Headings.** The headings, captions, and arrangements used in any of the Loan Documents are, unless specified otherwise, for convenience only and shall not be deemed to limit, amplify, or modify the terms of the Loan Documents nor to affect the meaning thereof.

9.4 **Number and Gender of Words.** Whenever the singular number is used in any of the Loan Documents, the same shall include the plural where appropriate, and words of any gender shall be applicable to all genders where appropriate. Reference herein to Borrower or to Guarantor shall mean, jointly and severally, each Person comprising same.

9.5 **Money.** Unless stipulated otherwise, all references herein or in any of the Loan Documents to "dollars", "money", "payments", or other similar financial or monetary terms, are references to currency of the United States of America.

9.6 **Articles, Sections, and Exhibits.** All references herein to Articles and Sections are, unless specified otherwise, references to articles and sections of this Loan Agreement. All references herein to an "Exhibit" and/or "Schedule" are references to exhibits and schedules attached hereto, all of which are incorporated by reference herein and made a part hereof for all purposes, the same as if set forth herein verbatim, it being understood that if any exhibit or schedule attached hereto contains blanks, the same shall be completed correctly and in accordance with the terms and provisions contained and as contemplated herein prior to or at the time of the execution and delivery thereof. The words "herein", "hereof", "hereunder" and other similar compounds of the word "here" when used in this Loan Agreement shall refer to the entire Loan Agreement and not to any particular provision or section.

9.7 **Defense of Actions.** Lender may (but shall not be obligated to) commence, appear in or defend any action or proceeding purporting to affect the Loan, the Collateral or the respective Rights and obligations of Lender or Borrower pursuant to this Loan Agreement. Lender may (but shall not be obligated to) pay all necessary expenses, including reasonable attorney's fees and expenses incurred in connection with any such proceedings or actions, which Borrower and Guarantor agree to repay to Lender upon demand.

9.8 **Loan Participation.** Each Borrower and Guarantor acknowledges and agrees that Lender may, from time to time, sell or offer for sale participation interest in the Loan and the Loan Documents to one or more participants. Each Borrower and Guarantor authorizes Lender to disseminate any information it has pertaining to the Loan, including, without limitation, complete and current credit information of any Borrower, any of its principals and any Guarantor, to any participant or prospective participant in the Loan.

9.9 **Hold Harmless.** Borrower shall defend, at its own cost and expense, and hold Lender and Lender's Representative harmless from, any proceeding or claim in any way relating to the Collateral or the Loan Documents. All costs and expenses incurred by Lender in protecting its interests hereunder, including all court costs and attorneys' fees and expenses, shall be borne by Borrower. The provisions of this Section shall survive the payment in full of the Loan and all other indebtedness secured by the Collateral, and the release of the Collateral as to events occurring and causes of action arising before such payment and release.

9.10 **Assignment.** Lender may assign its Rights or obligations hereunder from time to time in whole or in part.

9.11 **No Third Party Beneficiary.** This Loan Agreement is for the sole benefit of Lender and Borrower and is not for the benefit of any third party.

**9.12**   **Benefits.**  This Loan Agreement shall be binding upon and inure to the benefit of the Lender and Borrower, and their respective successors and assigns, provided, however, that Borrower may not, without the prior written consent of the Lender, assign any Rights, duties or obligations under any of the Loan Documents.

**9.13**   **Waiver/Estoppel.**  Lender's failure at any time to enforce any covenant or agreement contained in any of the Loan Documents, whether any breach or violation is known or not, shall not constitute a waiver or estoppel of the right to do so.  No waiver by Lender of a Default shall be a waiver of any other Default.

**9.14**   **Closing.**  All covenants, agreements, undertakings, representations and warranties made in the Loan Documents shall survive any closing hereunder.

**9.15**   **Expenses.**  Borrower shall pay all costs and expenses (including, without limitation, the reasonable attorneys' fees of Lender's internal or independent legal counsel) in connection with (1) the preparation of the Loan Documents, and any and all extensions, renewals, amendments, supplements, extensions or modifications thereof, (2) any action required in the course of administration of the Loan and (3) any action in the enforcement of the Lender's Rights upon the occurrence of a Default.

**9.16**   **Counterparts.**  Any of the Loan Documents, including, without limitation, this Loan Agreement, may be separately executed in any number of counterparts, each of which shall be an original, but all of which, taken together, shall be deemed to constitute one and the same agreement.

**9.17**   **Amendment.**  No provision hereof may be amended, modified, waived, or supplemented, except by a writing signed by the party to be charged thereby.

**9.18**   **Reports to Credit Agencies.**  The Lender is required by the Debt Collection Improvement Act of 1996 and by the SBA to comply with the provisions of 31 U.S.C. §3711 and report information relating to the extension of this Loan to consumer or commercial reporting agencies or bureaus, as appropriate (the "Reporting Agencies").  The Borrower and Guarantor acknowledge this requirement and further, by execution of this Loan Agreement, agree that the Lender may in the future report further information concerning the Loan, including delinquent payments or other Loan defaults, to Reporting Agencies.  This information may be reflected in reports issued by Reporting Agencies.

**9.19**   **Interpretation of SBA Certifications and Agreements.**  The various certifications and agreements set out in the other Loan Documents and/or in the SBA Authorization, are intended to be in addition to, and not in conflict with or in limitation of, other certifications, representations, covenants, and agreements contained in this Loan Agreement.  In the event that any of the certifications and agreements set out in the Loan Documents (and/or SBA Authorization), are interpreted to conflict with any certification, representation, covenant, and/or agreement contained in this Loan Agreement and/or any of the other Loan Documents, Lender will choose which of the conflicting certifications, representations, covenants, and/or agreements will control, in its sole discretion.

**LOAN AGREEMENT**                                                                                          **PAGE 20**

**9.20**  **Continuation and Survival.**  All covenants, agreements, representations and warranties made in or pursuant to this Loan Agreement shall be deemed continuing and made at and as of the date of this Loan Agreement and at and as of all times thereafter.  All statements contained in any certificate, financial statement, legal opinion or other instrument delivered by or on behalf of any Borrower or Guarantor pursuant to or in connection with any of the Loan Documents shall constitute additional representations and warranties made under this Loan Agreement.  All covenants, agreements, representations and warranties made in or pursuant to this Loan Agreement shall survive until payment in full of all sums owing and performance of all other obligations hereunder by Borrower and Guarantor to Lender, and shall not be waived by the execution and delivery of this Loan Agreement, any Advance hereunder, any investigation by Lender, or any other event except a specific written waiver by Lender.

**9.21**  **Severability.**  If any one or more of the provisions (or portion thereof) of any of the Loan Documents, or the applicability of any such provision (or portion thereof) to a specific situation, shall be held invalid or unenforceable, such provisions (or portion thereof) shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Loan Agreement and/or other Loan Documents, as applicable, and all other applications of any such provision (or portion thereof) shall not be affected thereby.

**9.22**  **Form and Substance.**  All documents, certificates, insurance policies, evidence and other items required under this Loan Agreement to be executed and/or delivered to Lender shall be in Proper Form.

**9.23**  **Controlling Agreement.**  The parties hereto intend to conform strictly to the applicable usury laws.  In no event, whether by reason of demand for payment or acceleration of the maturity of the Obligations or otherwise, shall the interest contacted for, charged or received by Lender hereunder or otherwise exceed the maximum amount permissible under applicable law.  If, from any circumstance whatsoever, interest would otherwise be payable to Lender in excess of the maximum lawful amount, the interest payable to Lender shall be reduced automatically to the maximum amount permitted under applicable law.  If Lender shall ever receive anything of value deemed interest under applicable law which would apart from this provision be in excess of the maximum lawful amount, an amount equal to any amount which would have been excessive interest shall be applied to the reduction of the principal amount owing on the Obligations in the inverse order of its maturity and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid principal balance of the Obligations, such excess shall be refunded to Borrower.  All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest on account of such indebtedness does not exceed the maximum permitted by applicable law.

**9.24**  **Borrower in Control.**  In no event shall Lender's Rights and interest under the Loan Documents be construed to give Lender the right to, or to be deemed to indicate that Lender is in control of the business, management or properties of any Borrower or Guarantor, or has power over the daily management or properties of any Borrower or Guarantor, or has power over the daily management functions and operating decisions made by any Borrower or Guarantor.  Provided,

however, that if Lender acquires an ownership interest in any Entity, whether through foreclosure or otherwise, Lender shall be entitled to exercise such legal Rights as it may have by being an owner of such Entity.

9.25 **Negation of Partnership.**  None of the terms or provisions of this Loan Agreement shall be deemed to create a partnership between or among Lender and any Borrower or Guarantor in their respective businesses or otherwise; nor shall it cause them to be considered joint venturers or members of any joint enterprise.

9.26 **Joint and Several Liability.**  If Borrower and/or Guarantor, respectively, consists of more than one person or entity, each shall be jointly and severally liable to perform the obligations of the Borrower and/or the Guarantor under this Loan Agreement.

9.27 **Waiver of Defenses.**  Borrower and Guarantor agree that the Obligations shall not be discharged, impaired or affected by any defense (other than full payment of the Obligations per the Loan Documents) that the Borrower and/or Guarantor may have as to the Borrower's and/or Guarantor's respective undertakings, covenants, requirements, liabilities and duties under the Loan Documents, and each and every such defense is hereby waived by each undersigned Borrower and Guarantor.

9.28 **COLLATERAL PROTECTION INSURANCE.**  BORROWER IS REQUIRED TO (1) KEEP ALL COLLATERAL INSURED AGAINST DAMAGE IN THE AMOUNT REQUIRED BY LENDER; (2) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE WHERE THE INSURED COLLATERAL IS LOCATED OR AN ELIGIBLE SURPLUS LINES INSURER; AND (3) NAME THE LENDER AS THE PERSON TO BE PAID UNDER EACH POLICY IN THE EVENT OF A LOSS.  BORROWER MUST IMMEDIATELY DELIVER TO LENDER, UPON REQUEST, A COMPLETE COPY OF EACH POLICY OF INSURANCE, ALONG WITH PROOF OF PAYMENT OF ALL PREMIUMS RELATING THERETO.  IF BORROWER FAILS TO MEET ANY OF THE REQUIREMENTS LISTED ABOVE, OR ANY OTHER REQUIREMENT IN THE LOAN DOCUMENTS RELATIVE TO INSURANCE, LENDER MAY (BUT IS NOT REQUIRED TO) PURCHASE SUCH INSURANCE AS LENDER DEEMS APPROPRIATE, IN LENDER'S SOLE DISCRETION, ON BEHALF OF BORROWER (OR ANY GUARANTOR, IF ANY SUCH COLLATERAL IS OWNED BY A GUARANTOR) AT BORROWER'S EXPENSE.  BORROWER'S FAILURE TO PURCHASE AND MAINTAIN THE INSURANCE REQUIRED HEREIN AND/OR BORROWER'S FAILURE TO TIMELY DELIVER PROOF OF SUCH INSURANCE TO LENDER AS REQUIRED HEREUNDER WILL BE A DEFAULT UNDER THE LOAN, AND LENDER'S PURCHASE OF ANY SUCH INSURANCE, AS ALLOWED HEREUNDER, AND/OR BORROWER'S LATER DELIVERY OF EVIDENCE OF SUCH INSURANCE TO LENDER, WILL NOT BE DEEMED TO BE A CURE OF SUCH DEFAULT.  ALL COSTS AND OTHER CHARGES INCURRED BY LENDER IN CONNECTION WITH EXERCISING AND/OR ENFORCING ITS RIGHTS UNDER THIS SECTION, ALONG WITH INTEREST AT THE MAXIMUM RATE ALLOWED BY LAW (OR IF NO MAXIMUM RATE IS ESTABLISHED BY APPLICABLE LAW, THEN AT THE RATE OF EIGHTEEN

PERCENT (18%) PER ANNUM), MUST BE PAID IN FULL BY BORROWER IMMEDIATELY UPON DEMAND BY LENDER.

9.29    **Entire Agreement and Modifications.**  The Loan Documents constitute the entire understanding and agreement between the undersigned with respect to the transactions arising in connection with the Loan and supersede all prior written or oral understandings and agreements between the undersigned in connection therewith. No provision of this Loan Agreement or the other Loan Documents may be modified, waived, or terminated except by instrument in writing executed by the party against whom a modification, waiver, or termination is sought to be enforced.

9.30    ACKNOWLEDGMENT OF CAIVRS DATABASE NOTICE. BORROWER AND GUARANTOR HAVE BEEN INFORMED BY LENDER THAT, IN THE EVENT OF A DEFAULT UNDER THE LOAN WHICH RESULTS IN A LOSS TO THE SBA, THE NAMES OF EACH BORROWER AND GUARANTOR WILL BE REFERRED FOR LISTING IN THE CREDIT ALERT INTERACTIVE VOICE RESPONSE SYSTEM (CAIVRS) DATABASE, WHICH MAY AFFECT THEIR ELIGIBILITY FOR FURTHER FINANCIAL ASSISTANCE.

9.31    **Waiver.**  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND GUARANTOR HEREBY JOINTLY, SEVERALLY AND UNCONDITIONALLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY LENDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF ANY OF THE LOAN DOCUMENTS.

EXECUTED AND DELIVERED effective as of the Closing Date.

LENDER:

Customers Bank

By _____

Name: *Jennifer Mason*

Title: *Vice President*

BORROWER:

BTIC-Big Tic, Inc.,
a Georgia corporation

By: _____

Andries Van Pletzen, President

LOAN AGREEMENT                                                              PAGE 23

**PERCENT (18%) PER ANNUM), MUST BE PAID IN FULL BY BORROWER IMMEDIATELY UPON DEMAND BY LENDER.**

9.29   <u>Entire Agreement and Modifications</u>.   The Loan Documents constitute the entire understanding and agreement between the undersigned with respect to the transactions arising in connection with the Loan and supersede all prior written or oral understandings and agreements between the undersigned in connection therewith.   No provision of this Loan Agreement or the other Loan Documents may be modified, waived, or terminated except by instrument in writing executed by the party against whom a modification, waiver, or termination is sought to be enforced.

9.30   **ACKNOWLEDGMENT OF CAIVRS DATABASE NOTICE.   BORROWER AND GUARANTOR HAVE BEEN INFORMED BY LENDER THAT, IN THE EVENT OF A DEFAULT UNDER THE LOAN WHICH RESULTS IN A LOSS TO THE SBA, THE NAMES OF EACH BORROWER AND GUARANTOR WILL BE REFERRED FOR LISTING IN THE CREDIT ALERT INTERACTIVE VOICE RESPONSE SYSTEM (CAIVRS) DATABASE, WHICH MAY AFFECT THEIR ELIGIBILITY FOR FURTHER FINANCIAL ASSISTANCE.**

9.31   <u>Waiver</u>.   **TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND GUARANTOR HEREBY JOINTLY, SEVERALLY AND UNCONDITIONALLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY LENDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF ANY OF THE LOAN DOCUMENTS.**

**EXECUTED AND DELIVERED** effective as of the Closing Date.

**LENDER:**

Customers Bank

By:_____
        Name:_____
        Title:_____

**BORROWER:**

BTIC-Big Tic, Inc.,
a Georgia corporation

By:_____
Andries Van Pletzen, President

**LOAN AGREEMENT**                                              **PAGE 23**

GUARANTOR:

Andries Van Pletzen

Lara Van Pletzen

**LOAN AGREEMENT**                                                                          **PAGE 24**

# Exhibit "A"



**U.S. Small Business Administration**

## AUTHORIZATION
## (SBA 7(A) GUARANTEED LOAN)

| | |
|---|---|
| SBA Loan # | 35865970-07 |
| SBA Loan Name | BTIC-Big Tic, Inc. |
| Approval Date | March 7, 2019 |

Lender:

Customers Bank
99 Bridge Street
Phoenixville, PA 19460-3411

U. S. Small Business Administration (SBA):

7a Loan Guaranty Processing Center (Citrus Heights)
6501 Sylvan Road, Suite 122
Citrus Heights, CA 95610-5017

SBA approves, under Section 7(a) of the Small Business Act as amended, Lender's application, received March 7, 2019, for SBA to guaranty 75% of a loan ("Loan") in the amount of $713,000.00 to assist:

Borrower:

1.  BTIC-Big Tic, Inc.
    380 Winkler Dr, Ste 400
    Alpharetta, GA 30004-5740

All requirements in the Authorization which refer to Borrower also apply to any Co-Borrower.

**A. THE GUARANTY FEE IS $18,716.25.**

Lender must pay the guaranty fee within 90 days of the approval date of this Authorization. Failure to timely pay the guaranty fee will result in cancellation of the SBA guarantee. The 90-day deadline may not be extended. Lenders are required to make their payments electronically. Payment can be made at www.pay.gov or by ACH if they have previously enrolled with the SBA. No part of the guaranty fee is refundable if Lender has made any disbursement. Lender may collect this fee from Borrower after initial disbursement of Loan, except when an escrow closing is used, Lender may not collect the fee until all Loan funds have been disbursed to the Borrower from the escrow account. Borrower may use Loan proceeds to reimburse Lender for the guaranty fee.

For loans of $150,000 or less, Lender may retain 25% of any required guaranty fee but must remit the remainder to SBA.

**B. ON-GOING GUARANTY FEE** (Lender's Annual Service Fee):

1.  Lender agrees to pay SBA an on-going guaranty fee equal to 0.550 of one percent per year of the guaranteed portion of the outstanding balance.

2.  Lender may not charge or otherwise pass through this fee to Borrower.

C.  **IT IS LENDER'S SOLE RESPONSIBILITY TO:**

1. Close the Loan in accordance with the terms and conditions of this Authorization.

2. Obtain valid and enforceable Loan documents, including obtaining the signature or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.

3. Retain all Loan closing documents.  Lender must submit these documents, along with other required documents, to SBA for review if Lender requests SBA to honor its guarantee on the Loan, or at any time SBA requests the documents for review.

D.  **REQUIRED FORMS**

NOTE:  LENDER MAY USE ITS OWN NOTE AND GUARANTEE AGREEMENTS IN LIEU OF THE SBA NOTE AND GUARANTEE AGREEMENTS.  IF LENDER USES ITS OWN NOTE AND/OR GUARANTEE FORMS, LENDER MUST ENSURE THE DOCUMENTS COMPLY WITH THE REQUIREMENTS SET FORTH IN SOP 50 10.

1. Lender may use its own forms except as otherwise instructed in this Authorization. Lender must use the following SBA forms for the Loan:
   SBA Form 147, Note or Lender's own Note that complies with SOP 50 10
   SBA Form 1050, Settlement Sheet
   SBA Form 159, Compensation Agreement, for each required agent
   SBA Form 722, Equal Opportunity Poster
   Guarantee:  SBA Form 148 or Lender equivalent

2. Lender may use computer-generated versions of mandatory SBA Forms, as long as the text is identical.

3. Lender must submit a copy of each completed SBA Form 159 by email to the SBA fiscal and transfer agent after initial disbursement and in conjunction with Lender's 1502 Report for the month.  Lender must maintain each original SBA Form 159 in its file.

E.  **CONTINGENCIES**—SBA issues this Authorization in reliance on representations in the Loan application, including supporting documents.  The guarantee is contingent upon Lender:

1. Having and complying with a valid SBA Loan Guarantee Agreement (SBA Form 750, SBA Form 750B for short-term loans, or 750CA for Community Advantage (CA) loans, if applicable) and any required supplemental guarantee agreements, between Lender and SBA;

2. Having paid the full guaranty fee in the time and manner required by this Authorization and SBA Loan Program Requirements;

3. Complying with the current SOP 50 10 and all applicable appendices;

4. Completing disbursement no later than 48 months from the approval date of this Authorization. (The loan must be fully disbursed within 48 months from the date of this Authorization. Any undisbursed balance remaining after 48 months will be automatically cancelled by SBA.);

5. Having no evidence since the date of the Loan application, or since any preceding disbursement, of any unremedied adverse change in the financial condition, organization, management, operation, or assets of Borrower or Operating Company which would warrant withholding or not making any further disbursement; and,

6. Satisfying all of the conditions in this Authorization.

F.  **NOTE TERMS:**

1.  **Maturity:** This Note will mature in 10.00 years from date of Note.

2.  **Repayment Terms:**

If Lender uses its own Note, Lender must comply with the repayment terms set forth below and must ensure the Note is legally enforceable and assignable, has a stated maturity and is not payable on demand. The Note must include the following language:

> *"When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law."*

If Lender uses SBA Note, Form 147, Lender must insert into Note, to be executed by Borrower, the following terms, without modification. Lender must complete all blank terms on the Note at time of closing.

The interest rate on this Note will fluctuate. The initial interest rate is 8.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay principal and interest payments of $8,745.13 every month, beginning one month from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every 3 years (the "change period") beginning _____ (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.
**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a.  Give Lender written notice;

b.  Pay all accrued interest; and

c.  If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10.00 years from date of Note.

**Late Charge:** If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

3.  Lender must include in the Note the following language:

"The undersigned borrower hereby waives the right to require the Holder of this obligation to confirm any foreclosure sale as a condition for taking action to collect on this note."

G.  **USE OF PROCEEDS**

1.  $628,000.00 to purchase the business known as Paykargar LLC dba Big T Moving and Delivery, according to the executed Purchase Agreement dated December 19, 2018, including $559,000.00 for intangible assets described as Goodwill.

2.  $50,000.00 for working capital.

3.  $18,716.25 to pay the guaranty fee. (Lender may not disburse Loan proceeds solely to pay the guaranty fee).

4.  $16,283.75 Closing Costs.

All amounts listed above are approximate. Lender may not disburse Loan proceeds solely to pay the guaranty fee. Lender may disburse to Borrower, as working capital only, funds not spent for the listed purposes as long as those funds do not exceed 20% of the specific purpose authorized or $50,000.00, whichever is less. An Eligible Passive Company may not receive working capital funds or funds to be used for the purchase of other assets, including intangible assets, for the Operating Company's use.

SBA Loan Number: 35865970-07
SBA Loan Name: BTIC-Big Tic, Inc.

Page 4
(7a Wizard 2018)

The loan must be made for a sound business purpose and must benefit the small business, and one 7(a) loan may not be split into two 7(a) loans merely to benefit the Lender. 13 CFR 120.120 and 120.130(f).

Lender must document that Borrower used the loan proceeds for the purposes stated in this Authorization. Except under SBA Express, Export Express, and 7(a) Small Loans, Lender and Borrower must complete and sign SBA Form 1050 at the time of first disbursement. Lender must document the first and all subsequent disbursements by attaching required documentation to the original SBA Form 1050 and must maintain the documentation in the Loan file, following the procedures described in SOP 50 10.

II.   **COLLATERAL CONDITIONS**

Lender must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions.

The following language must appear in Lender's Guarantee when Lender uses its own Guarantee.

*"When SBA is the holder, the Note and this Guarantee will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt federal law."*

1. **First Perfected Security Interest, subject to no other liens,** in the following personal property (including any proceeds and products), whether now owned or later acquired, wherever located:
   Equipment; Fixtures; Inventory; Accounts; Instruments; Chattel Paper; General Intangibles; Machinery; Furniture; Including Vehicles: 2007 International 4000 Series 43; 2-2010 Freightliner M2; 2012 Freightliner M2 106

   a. Lender must obtain a written agreement from all Lessors (including sublessors) agreeing to: (1) Subordinate to Lender Lessor's interest, if any, in this property; (2) Provide Lender written notice of default and reasonable opportunity to cure the default; and (3) Allow Lender the right to take possession and dispose of or remove the collateral.

   b. Lender must obtain a list of all equipment and fixtures that are collateral for the Loan. For items with a unit value of $5,000 or more, the list must include a description and serial number, if applicable.

   c. Lender must obtain an appropriate Uniform Commercial Code lien search evidencing all required lien positions. If UCC search is not available, another type of lien search may be substituted.

2. **Guarantee on SBA Form 148** or equivalent lender's form, by Andries and Lara Van Pletzen, resident in Georgia.

   Secured by:

   a. **Third Deed to Secure Debt** (including assignment of rents) on land and improvements located at 4963 Sydney Lane, Marietta, GA 30066. This property is residential. The collateral property is the Guarantor's primary residence.

(1) Subject only to prior lien(s) as follows:
    (a) First: Suntrust in the amount of $303,800.00
    (b) Second: Suntrust in the present amount of $54,023.00, with a revolving provision limited to a total principal outstanding of $75,000.00

(2) Any prior open ended lien(s) that is (are) open ended as to future advances must be closed in writing according to applicable state law. The revolving line(s) of credit set out above, if any, must be limited in writing to the amount stated.

(3) Lender must obtain from prior lienholders written verification (1) of amount owing on prior obligation, (2) that prior obligation is current on payments, and (3) that prior obligation is not otherwise in default.

(4) Evidence of title and priority of lien must be based upon:
    (a) Title and/or Lien Search or other evidence of proper ownership and lien position.

b. **Second Deed to Secure Debt** (including assignment of rents) on land and improvements located at 416 Pierpont Court, Canton, GA 30144. This property is residential.

(1) Subject only to prior lien(s) as follows:
    (a) First: Suntrust in the amount of $110,300.00

(2) Any prior open ended lien(s) that is (are) open ended as to future advances must be closed in writing according to applicable state law. The revolving line(s) of credit set out above, if any, must be limited in writing to the amount stated.

(3) Lender must obtain from prior lienholders written verification (1) of amount owing on prior obligation, (2) that prior obligation is current on payments, and (3) that prior obligation is not otherwise in default.

(4) Evidence of title and priority of lien must be based upon:
    (a) Title and/or Lien Search or other evidence of proper ownership and lien position.

The following language must appear in all security instruments including Mortgages, Deeds of Trust, and Security Agreements:

*"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

*b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax, or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*

**Georgia Mandatory Provision**—The following language must appear in all guarantees (including limited guarantees) signed by Georgia residents:

*"The undersigned guarantor hereby waives the right to require the Holder of the obligations hereby guaranteed to take action against the debtor as provided for in O.C.G.A. 10-7-24. The guarantor further waives the right to require the Holder to confirm any foreclosure sale as a condition for taking action to collect the guarantee."*

I.   **ADDITIONAL CONDITIONS**

1.   **Insurance Requirements**

Prior to disbursement, Lender must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

a.   **Flood Insurance.** Based on the Standard Flood Hazard Determination (FEMA Form 086-0-32):

(1)   If any portion of a building that is collateral for the Loan is located in a special flood hazard area, Lender must require Borrower to obtain flood insurance for the building under the NFIP.

(2)   If any equipment, fixtures, or inventory that is collateral for the loan ("Personal Property Collateral") is in a building any portion of which is located in a special flood hazard area and that building is collateral for the Loan, Lender must require Borrower to also obtain flood insurance for the Personal Property Collateral under the NFIP.

(3)   If any Personal Property Collateral is in a building any portion of which is located in a special flood hazard area and that building is not collateral for the Loan, Lender must require Borrower to obtain available flood insurance for the Personal Property Collateral. Lender may waive this requirement when the building is not collateral for the Loan if it uses prudent lending standards and includes in the Loan file a written justification that fully explains why flood insurance is not economically feasible or, if flood insurance is not available, the steps taken to determine that it is not available.

Insurance coverage must be at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001 et seq,), whichever is less. ("Maximum limit of coverage available" is the lesser of the maximum limit available under the NFIP for the type of structure or the insurable value of the structure.) Insurance coverage must contain a MORTGAGEE CLAUSE/LENDER'S LOSS PAYABLE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender and SBA. (Borrower will be ineligible for any future SBA disaster assistance or business loan assistance if Borrower does not maintain any required flood insurance for the entire term of the Loan.)

b.   **Real Estate Hazard Insurance** coverage (including any required additional coverage, such as wind, hail, earthquake, etc., if the business is located in a state that requires additional coverage) on all real estate that is collateral for the Loan in the amount of the full replacement cost. If full replacement cost insurance is not available, coverage must be for maximum insurable value. Insurance coverage must contain a MORTGAGEE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the mortgagor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

---

SBA Loan Number: 35865970-07
SBA Loan Name: BTIC-Big Tie, Inc.

Page 7
(7a Wizard 2018)

c. **Personal Property Hazard Insurance** coverage (including required additional coverage, such as wind, hail, earthquake, etc., if the business is located in a state that requires additional coverage) on all equipment, fixtures or inventory that is collateral for the Loan, in the amount of full replacement costs. If full replacement cost insurance is not available, coverage must be for maximum insurable value. Insurance coverage must contain a <u>LENDER'S LOSS PAYABLE CLAUSE</u> in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

d. **Life Insurance**, satisfactory to Lender:

    (1) on the life of <u>Andries Van Pletzen</u> in the amount of <u>$356,500.00</u>.

    (2) on the life of <u>Lara Van Pletzen</u> in the amount of <u>$356,500.00</u>.

Lender must obtain a collateral assignment of each policy with Lender as assignee and Lender must also obtain acknowledgment of the assignment by the Home Office of the Insurer. Lender must ensure that Borrower pays the premium on the policy.

e. **Liability Insurance** in an amount and with an insurance company satisfactory to Lender.

f. **Workers' Compensation Insurance** in an amount meeting state law requirements and with an insurance company satisfactory to Lender.

2. **Borrower, Guarantor and Operating Company Documents**

a. Prior to closing, Lender must obtain from Borrower, Guarantor and Operating Company a current copy of each of the following as appropriate:

    (1) **Corporate Documents**—Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

    (2) **Limited Liability Company (LLC) Documents**—Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

    (3) **General Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

    (4) **Limited Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

    (5) **Limited Liability Partnership (LLP) Documents**—Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

    (6) **Trustee Certification**—A Certificate from the trustee warranting that:

        (a) The trust will not be revoked or substantially amended for the term of the Loan without the consent of Lender/SBA;

        (b) The trustee has authority to act;

        (c) The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;

        (d) If the trust is an Eligible Passive Company, the trustee has authority to lease the property to the Operating Company;

SBA Loan Number: <u>35865970-07</u>
SBA Loan Name: <u>BTIC-Big Tic, Inc.</u>

Page 8
(7a Wizard 2018)

    (e)  There is nothing in the trust agreement that would prevent Lender from realizing on any security interest in trust assets;

    (f)  The trust agreement has specific language confirming the above; and

    (g)  The trustee has provided and will continue to provide Lender/SBA with a true and complete list of all trustors and donors.

(7) **Trade Name**—Documentation that Borrower has complied with state requirements for registration of Borrower's or Operating Company's trade name (or fictitious name), if one is used.

b.   Prior to closing, Lender must obtain from Borrower and Operating Company:

    (1)  **Ownership**—Evidence that ownership and management have not changed without Lender's approval since the application was submitted.

    (2)  **Purchase-Sale Agreement**—Executed Purchase-Sale Agreement (to include satisfactory non-compete agreement).

3.   **Operating Information**

Prior to any disbursement of Loan proceeds, Lender must obtain:

a.   **Verification of Financial Information**—Lender must submit IRS Form 4506-T to the Internal Revenue Service to obtain federal income tax information on Borrower, or the Operating Company if the Borrower is an EPC, for the last 3 years (unless Borrower or Operating Company is a start-up business). If the business has been operating for less than 3 years, Lender must obtain the information for all years in operation. This requirement does not include tax information for the most recent fiscal year if the fiscal year-end is within 6 months of the date SBA received the application. If the applicant has filed an extension for the most recent fiscal year, Lender must obtain a copy of the extension along with evidence of payment of estimated taxes. Lender must compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan. Borrower must resolve any significant differences to the satisfaction of Lender and SBA. Failure to resolve differences may result in cancellation of the Loan.

If the Loan involves a change of ownership, Lender must verify financial information provided by the seller of the business in the same manner as above.

If the IRS responds and the transcript reflects "Record not Found" for any tax year, Lender must follow the procedures detailed in SOP 50 10 to determine what steps must be taken to satisfy the SBA tax verification requirement.

If Lender is processing a loan under its delegated authority and does not receive a response from the IRS or copy of the tax transcript within 10 business days of submitting the IRS Form 4506-T, then Lender may close and disburse the loan provided that Lender sends a second request following precisely the procedures detailed in SOP 50 10 and Lender performs the verification and resolves any significant differences discovered, even if the Loan is fully disbursed.

b.   **Authority to Conduct Business**—Evidence that Borrower and Operating Company have an Employer Identification Number and all insurance, licenses, permits and other approvals necessary to lawfully operate the business, including, but not limited to, the ability to operate at the business location.

c.   **Flood Hazard Determination**—A completed Standard Flood Hazard Determination (FEMA Form 086-0-32).

d.   **Lease**—Current lease(s) on all business premises where collateral is located with term, including options, at least as long as the term of the Loan.

4.   **Injection**

Lender must obtain evidence that prior to disbursement:

a.   **Cash Injection**—At least $80,000.00 cash has been injected into the project. This cash is for Purchase Business. The source of the cash is Personal Funds.

5.   **Business Valuation**

a.   Prior to disbursement, and in accordance with SOP 50 10, Lender must request and obtain a business valuation of Paykargar LLC, showing a value of $708,000.00, exclusive of the appraised value of real estate and equipment.

b.   Lender must obtain a copy of the financial information relied upon by the individual who performed the business valuation and verify that information against the seller's IRS transcripts to ensure the accuracy of the information.

c.   Any amount in excess of the business valuation may not be financed with the SBA guaranteed loan.

6.   **Certifications and Agreements**

a.   Prior to disbursement, Lender must require Borrower and Operating Company to certify that:

   (1)   **Receipt of Authorization**—Borrower and Operating Company have received a copy of this Authorization from Lender, and acknowledge that:
      (a)   The Authorization is <u>not</u> a commitment by Lender to make a loan to Borrower;
      (b)   The Authorization is between Lender and SBA and creates no third party rights or benefits to Borrower;
      (c)   The Note will require Borrower to give Lender prior notice of intent to prepay.
      (d)   If Borrower defaults on Loan, SBA may be required to pay Lender under the SBA guaranty. SBA may then seek recovery of these funds from Borrower. Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or defenses available under local law to defeat, modify or otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.
      (e)   Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligations of any personal guarantor of the Note.
      (f)   If the small business defaults on the SBA-guaranteed loan and SBA suffers a loss, the names of the small business and the guarantors of the SBA-guaranteed loan will be referred for listing in the Credit Alert Verification Reporting System (CAIVRS) database, which may affect their eligibility for further financial assistance.

   (2)   There has been no adverse change in Borrower's (and Operating Company's) financial condition, organization, operations, or fixed assets since the date the Loan application was signed.

   (3)   **Child Support**—No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

SBA Loan Number: 35865970-07
SBA Loan Name: BTIC-Big Tie, Inc.

Page 10
(7a Wizard 2018)

(4) **Current Taxes**—Borrower and Operating Company are current (or will be current with any loan proceeds specified for eligible tax payments) on all federal, state, and local taxes, including but not limited to income taxes, payroll taxes, real estate taxes, and sales taxes.

(5) **Environmental**—For any real estate pledged as collateral for the Loan or where the Borrower or Operating Company (if applicable) is conducting business operations (collectively "the Property"):

    (a) At the time Borrower and Operating Company submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

    (b) Borrower and Operating Company will continue to comply with these laws and regulations;

    (c) Borrower and Operating Company, and all of its principals, have no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater under such Property, other than what was disclosed in connection with the Environmental Investigation of the Property;

    (d) Until full repayment of the Loan, Borrower and Operating Company will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or Operating Company or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater;

    (e) As to any Property owned by Borrower or Operating Company, Borrower and Operating Company indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at, or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's or Operating Company's operations. (Lender or SBA may require Borrower and Operating Company to execute a separate indemnification agreement).

b. Prior to disbursement, Lender must require Borrower and Operating Company to certify that they will:

(1) **Reimbursable Expenses**—Reimburse Lender for expenses incurred in the making and administration of the Loan.

(2) **Books, Records, and Reports**—

    (a) Keep proper books of account in a manner satisfactory to Lender;

    (b) Furnish year-end statements to Lender within 120 days of fiscal year end;

    (c) Furnish additional financial statements or reports whenever Lender requests them;

    (d)  Allow Lender or SBA, at Borrower's or Operating Company's expense, to:
- [1] Inspect and audit books, records and papers relating to Borrower's and Operating Company's financial or business condition; and
- [2] Inspect and appraise any of Borrower's and Operating Company's assets; and
- [3] Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower and Operating Company, upon request by Lender or SBA.

(3) **Equal Opportunity**—Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public.

(4) **American-made Products**—To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

(5) **Taxes**—Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

(6) **Leasing** – During the life of the loan, the real estate pledged as Collateral for the Loan or where the Borrower or Operating Company conducts its business operations will not be leased to or occupied by any business that Borrower or Operating Company knows is engaged in any activity that is illegal under federal, state or local law or any activity that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.

  c.  Lender must require Borrower and Operating Company to certify that they will not, without Lender's prior written consent:

(1) **Distributions**—Make any distribution of company assets that will adversely affect the financial condition of Borrower and/or Operating Company.

(2) **Ownership Changes**—Change the ownership structure or interests in the business during the term of the Loan.

(3) **Transfer of Assets**—Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

ADMINISTRATOR
SMALL BUSINESS ADMINISTRATION

March 7, 2019

By:   [SBLender],                                      Date
    a Preferred Lender, as Lender and as an agent of and on behalf of the SBA for the purpose of executing this Authorization.

## EXHIBIT "B"

The following personal property of Borrower, wherever located, and now owned, or hereafter acquired or arising, including Proceeds and Supporting Obligations:

1.   **Accounts;**
2.   **Chattel Paper,** including Tangible Chattel Paper and Electronic Chattel Paper;
3.   **Deposit Accounts;**
4.   **Documents;**
5.   **General Intangibles,** including Payment Intangibles;
6.   **Goods,** including Equipment, Fixtures, Inventory, and Accessions;
7.   **Instruments,** including Promissory Notes;
8.   **Records;**
9.   **Software;**
10.  **2007 International 4000, Series 43, VIN 1HTMMAAM47H382707;**
11.  **2012 Freightliner M2 106, VIN 1FVACWDTXCDBU7773;**
12.  **2010 Freightliner M2 106, VIN 1FVACWDT9ADAP8572; and**
13.  **2010 Freightliner M2 106, VIN 1FVACWDT7ADAP8571.**

**Collateral assignment of life insurance policy in the minimum amount of $356,500.00 on the life of Andries Van Pletzen.**

**Collateral assignment of life insurance policy in the minimum amount of $356,500.00 on the life of Lara Van Pletzen.**

A second lien on the real estate owned by the Guarantors, situated in Cherokee County, Georgia, which is more particularly described below, together with all buildings, structures, and other improvements located thereon and rents and revenues therefrom:

**All that tract or parcel of land lying and being in Land Lot 125 of the 14th District, 2nd Section, Cherokee County, Georgia, being Lot 32, Canton Heights Townhouse District Subdivision, Phase 1, as per plat recorded in Plat Book 79, Pages 159-161, Cherokee County, Georgia Records, being more commonly known as 416 Pierpont Court, Canton, Georgia 30114.**

A third lien on the real estate owned by the Guarantors, situated in Cobb County, Georgia, which is more particularly described below, together with all buildings, structures, and other improvements located thereon and rents and revenues therefrom:

**All that tract or parcel of land lying and being in Land Lot 55, 16th District, 2nd Section, Cobb County, Georgia, being Lot 10, Tanglewood Crest, as per plat recorded in Plat Book 272, Pages 98 and 99, Cobb County, Georgia Records, which plat is hereby referred to and made a part of this description.**

## EXHIBIT "C"

**Fees:**

SBA Guaranty Fee set out on Page 1 of the SBA Authorization.

Other fees in the amount(s) required by Lender.

All filing and recording fees and taxes relating to any of the Loan Documents, and all of the documents, certificates, and other items generally described below and/or required by Lender from time to time.

Fees, charges and other costs relating to any appraisal, survey, environmental report, lien search, preparation of the Loan Documents, photocopies, postage, courier, and all of other fees charges and costs relating to the Loan.

**Documents, certificates, and other items:**

The executed lease.

The executed Landlord Subordination.

An appraisal of the Land and/or Business Premises, as may be required by Lender, by a qualified MAI appraiser approved by Lender.

The fully-executed Loan Documents.

The ttitle and tax searches.

A Survey of the Business Premises, if applicable.

Tax, judgment, and UCC lien searches, bearing a Current Date, reflecting that there are no prior liens against any Borrower, Guarantor, or the Collateral, except such lien(s) as may be specifically approved by Lender in writing.

Financial Statements as required by Lender.

Evidence of all Required Insurance.

Proof of cash injection satisfactory to Lender.

Environmental investigation and report as to the Land (and Business Premises if required by Lender), and such other environmental studies/investigations as Lender may require.

Subordination of all leases and other contracts affecting the Land, if any, to the Deed of Trust.

Evidence of Borrower's or Guarantor's compliance with, or satisfaction of, all conditions applicable to any leases affecting the Land.

Evidence that all zoning ordinances or restrictive covenants affecting the Business Premises permit the intended use(s) of the Business Premises and have been and will be complied with.

Evidence that the Business Premises is/are in compliance with all Governmental Requirements.

Evidence that all of the streets providing access to the Business Premises and Land have been either dedicated to public use or established by private easement, duly recorded in the records of the County in which the  Business Premises and Land, respectively, is located, and have been fully installed and accepted by each applicable appropriate Governmental Authority, that all costs and expenses of the installation and acceptance thereof have been paid in full, and that there are no restrictions on the use and enjoyment of such streets that adversely affect, limit or impair Borrower's ability to operate the Business Premises for the purposes and in the manner represented to Lender.

Evidence (a) that the Business Premises has adequate vehicular and pedestrian access to and from a public road, and (b) of the availability of all utilities to the Business Premises including, without limitation, gas, electricity, sewer, water, internet, and telephone services, and are adequate to serve the Business Premises and the intended use(s) thereof.

If any Borrower or Guarantor is an Entity or a trust, (a) a copy of all Governing Documents, as well as such other documents as Lender may require to ascertain and verify Borrower's/Guarantor's organizational structure and/or determine and verify which persons have authority to act on behalf of, and bind, said Borrower/Guarantor, (b) a certificate identifying the names and percentages of ownership of each owner, (c) a certificate of incumbency of all persons who will be authorized to execute or attest any of the Loan Documents on behalf of each Borrower/Guarantor, dated the Closing Date, (d) resolutions approving the Loan Documents and authorizing the transactions contemplated therein, duly adopted by the owners, officers, managers, and directors, as applicable, dated as of the Closing Date, all in Proper Form, and (e) satisfactory evidence of the existence, good standing and qualification to do business of each Borrower/Guarantor.

Such other satisfactory evidence as Lender shall require, that all necessary action on the part of each Borrower and Guarantor has been taken with respect to the execution and delivery of the Loan Documents and the consummation of the transactions contemplated thereby, so that this Loan Agreement and all other Loan Documents to be executed and delivered by or on behalf of each Borrower and Guarantor will be valid and binding upon each Borrower, Guarantor, or other Person executing and delivering such document(s), as the case may be.

A copy of the executed purchase agreement (including all amendments thereto) pursuant to which Borrower acquired, or will acquire, the Business Premises, if applicable, showing the purchase price and the terms and conditions of purchase.

## Schedule 1

### Reporting Requirements

Each Borrower and Guarantor, as applicable, agree to deliver to Lender the following statements and reports:

(a)    As soon as possible and in any event within five (5) days after the occurrence of each Default, or each event which, with the giving of notice of lapse of time or both, would constitute a Default, continuing on the date of such statement, a statement setting forth the details of such Default or event, and the action which is proposed to be taken with respect thereto;

(b)    Promptly after the commencement thereof, notice of all actions, suits and proceedings before any Governmental Authority affecting any Borrower and/or Guarantor or any of their respective properties;

(c)    For the Borrower, year-end Financial Statements, within one hundred twenty (120) days of each fiscal year-end, which statements shall be company-prepared and certified by the chief financial officer or chief executive officer of Borrower, and include, at a minimum, a balance sheet as of the end of such fiscal year, an income statement, a statement of cash flows, a profit and loss statement showing the result of operations for such fiscal year, and a reconciliation of surplus, each for such fiscal year, all setting forth in comparative form the corresponding figures from the previous fiscal year, all prepared in conformity with GAAP;

(d)    For each Guarantor, year-end Financial Statements within one hundred twenty (120) days of each calendar year-end, which Financial Statements shall include a balance sheet, statement of cash flows, and a statement of contingent liabilities, and be certified and signed by said Guarantor, as applicable, as being true, correct and complete;

(e)    Copies of annual personal and business tax returns for the Borrower and each Guarantor, with all forms, schedules, and K-1's attached within fifteen (15) days of filing, or one hundred twenty (120) days from year-end, whichever date is earlier.  In the event a request for extension is filed by any Borrower or Guarantor, a copy of any such extension request(s), along with all other documents (if any) supporting such request within fifteen (15) days of filing; and

(f)    Such other information respecting the business, properties or condition or the operations, financial or otherwise, of each Borrower and/or Guarantor as the Lender may from time to time reasonably request.