**Exhibit K**
**Deed to Secure Debt and Security Agreement for**
**416 Pierpont Court, Canton, GA 30144**

AFTER RECORDING PLEASE RETURN TO:
LISA G. SHIPPEL
LISA SHIPPEL LAW, LLC
5755 NORTH POINT PARKWAY, STE 213
ALPHARETTA, GA 30022
G--6-11
Map Parcel 14N12G032

**NOTE TO TAX COMMISSIONER AND CLERK OF SUPERIOR COURT:** THIS INSTRUMENT DOES NOT SECURE A NOTE BUT SECURES GRANTOR'S GUARANTY OF OBLIGATIONS OF A PRINCIPAL UNDER A NOTE AND OTHER LOAN DOCUMENTS WITH A MATURITY DATE OF MARCH 12, 2029. CONSEQUENTLY, THIS INSTRUMENT IS NOT SUBJECT TO INTANGIBLE RECORDING TAX AND NO TAX IS DUE UPON THE RECORDING OF THIS INSTRUMENT. SEE RULE 560-11-8-.14(4) OF THE RULES AND REGULATIONS OF THE GEORGIA DEPARTMENT OF REVENUE.

**AFTER RECORDING, RETURN TO:**
Customers Bank
99 Bridge Street
Phoenixville, PA 19460-3411
Map/Parcel #14N12G 032

### DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made and entered into this 12 day of March, 2019, by and between Andries J. Van Pletzen and Lara Y. Van Pletzen, as joint tenants with right of survivorship and not as tenants in common, as parties of the first part, jointly, as grantor (hereinafter referred to as "Borrower", whether one or more), whose mailing address is 4963 Sydney Lane, Marietta, Georgia 30066, and Customers Bank, party of the second part, as grantee (hereinafter referred to as "Lender"), whose mailing address is 99 Bridge Street, Phoenixville, Pennsylvania 16460-3411;

### W I T N E S S E T H :

THAT FOR AND IN CONSIDERATION of the sum of TEN AND NO/100THS DOLLARS ($10.00) and other good and valuable considerations, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Borrower hereinafter set forth, Borrower does hereby grant, bargain, sell, convey, assign, transfer, pledge and set over unto Lender and the successors, successors-in-title and assigns of Lender all of the following described land and interests in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, appliances and appurtenances (hereinafter referred to collectively as the "Premises"):

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 1

(a) All those certain tracts, pieces or parcels of land more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land");

THE NAMES OF THE DEBTOR (HEREIN SOMETIMES CALLED "BORROWER") AND THE SECURED PARTY (HEREIN SOMETIMES CALLED "LENDER"), THE MAILING ADDRESS OF THE SECURED PARTY FROM WHICH INFORMATION CONCERNING THE SECURITY INTEREST MAY BE OBTAINED, THE MAILING ADDRESS OF THE DEBTOR AND A STATEMENT INDICATING THE TYPES, OR DESCRIBING THE ITEMS, OF COLLATERAL, ARE AS DESCRIBED IN PARAGRAPH 1.08(c) HEREOF, IN COMPLIANCE WITH THE REQUIREMENTS OF ARTICLE 9, OF THE UNIFORM COMMERCIAL CODE, TITLE 11 OF THE OFFICIAL CODE OF GEORGIA ANNOTATED.

(b) All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be attached to said buildings, structures or improvements, and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles (excluding Borrower's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Borrower and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Premises, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Borrower in any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Borrower or on behalf of Borrower, all tradenames, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Premises or any part thereof or are now or hereafter acquired by Borrower; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Premises as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed. The location of the above described collateral is also the location of the Land.

(c) All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Premises or any part thereof, or

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)                    PAGE 2

which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Borrower.

(d)  All income, rents, issues, profits and revenues of the Premises from time to time accruing (including, without limitation, all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Borrower or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Borrower of, in and to the same; reserving only the right to Borrower to collect the same so long as Borrower is not in Default hereunder.

(e)  Each lease, tenant contract or rental agreement described in Exhibit "B" attached hereto and by reference made a part hereof.

TO HAVE AND TO HOLD the Premises and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors and assigns of Lender, IN FEE SIMPLE forever; and Borrower covenants that Borrower is lawfully seized and possessed of the Premises as aforesaid, and has good right to convey the same, that the same are unencumbered and that Borrower does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

This Deed is intended to operate and is to be construed as a deed passing the title to the Premises to Lender and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the "Indebtedness"):

(a)  The debt (and Borrower's guaranty thereof) evidenced by that certain promissory note (hereinafter referred to as the "Note") of even date herewith, made by BTIC-Big Tic, Inc., a Georgia corporation, payable to the order of Lender in the principal face amount of SEVEN HUNDRED THIRTEEN THOUSAND AND NO/100 DOLLARS ($713,000.00), with the final payment being due on March 12, 2029; together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced by the Note, and Borrower's guaranty thereof.  It is the intention of Borrower and Lender to create an indefinite security interest in the real property conveyed hereby pursuant to O.C.G.A Section 44-14-80 (a)(1);

(b)  Any and all additional advances made by Lender to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Borrower's obligations hereunder or for any other purpose provided herein (whether or not the original Borrower remains the owner of the Premises at the time of such advances); and

(c)  Any and all other indebtedness now owing or which may hereafter be owing by Borrower to Lender, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations and extensions thereof.

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 3

Rec: $62.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7373500284 SubmitterID: 7067927936

Should the Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, and should Borrower perform all covenants herein contained in a timely manner, then this Deed shall be cancelled and surrendered.

Borrower hereby further covenants and agrees with Lender as follows:

## ARTICLE 1

1.01  <u>Payment of Indebtedness.</u> The Note shall be paid according to the tenor thereof and the remainder of the Indebtedness promptly as the same shall become due. Borrower shall pay all amounts due under its guaranty of the Note, immediately upon demand.

1.02  <u>Taxes, Liens and Other Charges.</u>

(a) Borrower shall pay, on or before the due date thereof, all taxes, assessments, levies, license fees, permit fees and all other charges (in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen) of every character whatsoever (including all penalties and interest thereon) now or hereafter levied, assessed, confirmed or imposed on, or in respect of, or which may be a lien upon, the Premises, or any part thereof, or any estate, right or interest therein, or upon the rents, issues, income or profits thereof, and shall submit to Lender such evidence of the due and punctual payment of all such taxes, assessments and other fees and charges as Lender may require.

(b) Borrower shall pay, on or before the due date thereof, all taxes, assessments, charges, expenses, costs and fees which may now or hereafter be levied upon, or assessed or charged against, or incurred in connection with, the Note, the other Indebtedness, this Deed or any other instrument now or hereafter evidencing, securing or otherwise relating to the Indebtedness, and shall submit to Lender such evidence of the due and punctual payment of all such taxes, assessments, charges, expenses, costs, and fees as Lender may require.

(c) Borrower shall pay, on or before the due date thereof, (i) all premiums on policies of insurance covering, affecting or relating to the Premises, as required pursuant to Paragraph 1.03; (ii) all premiums on life insurance policies, if any, collaterally assigned or to be collaterally assigned to Lender; (iii) all premiums for mortgage insurance, if this Deed and the Note are so insured; and (iv) all ground rentals, other lease rentals and other sums, if any, owing by Borrower and becoming due under any lease or rental contract affecting the Premises. Borrower shall submit to Lender such evidence of the due and punctual payment of all such premiums, rentals and other sums as Lender may require.

(d) In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of deeds to secure debt or security agreements or debts secured thereby or the manner of collecting such taxes so as to adversely affect Lender, Borrower will pay any such tax on or before the due date thereof. If Borrower fails to make such prompt payment or if, in the opinion of Lender, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Borrower from making such payment or would penalize Lender if Borrower makes such payment or if, in the opinion of

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          **PAGE 4**

Lender, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the Indebtedness and all interest accrued thereon shall, at the option of Lender, become immediately due and payable.

(e)  Borrower will not suffer any mechanic's, materialman's, laborer's, statutory or other lien to be filed of record or to remain outstanding against the Premises.

1.03    Insurance.

(a)  Borrower shall procure for, deliver to and maintain for the benefit of Lender during the term of this Deed, original paid up insurance policies of such insurance companies, in such amounts, in such form and substance, and with such expiration dates as are acceptable to Lender and containing non-contributory standard mortgagee clauses, their equivalent or a satisfactory mortgagee loss payable endorsement in favor of Lender, providing the following types of insurance covering the Premises and the interest and liabilities incident to the ownership, possession and operation thereof:

(i) insurance against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, vandalism and malicious mischief and against such other hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location, the amount of which insurance shall not be less than the greater of (A) the balance of the Indebtedness or (B) one hundred percent (100%) of the full replacement cost of the Premises without deduction for depreciation, and which policies of insurance shall contain satisfactory replacement cost endorsements;

(ii) when obtainable from the United States of America or any agency or instrumentality thereof, war risk insurance in the maximum amount available up to an amount equal to the replacement cost of the Premises;

(iii) rent insurance against loss of income arising out of damage or destruction by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, vandalism and malicious mischief and such other hazards as are presently included in so-called "extended coverage" in an amount not less than one hundred percent (100%) of one (1) year's gross rental income from the Premises; and

(iv) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Lender against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor.

(b)  Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies.  Each insurance company is hereby

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 5

authorized and directed to make payment for all such losses directly to Lender, instead of to Borrower and Lender jointly. In the event that any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Borrower or to Borrower and Lender jointly, Borrower agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Borrower to endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfers for and in the name of Borrower and Borrower hereby irrevocably appoints Lender as Borrower's agent and attorney-in-fact so to do. After deduction from said insurance proceeds of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the Indebtedness, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Premises, and/or (iii) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the security interest created by this Deed; and any balance of such moneys then remaining shall be paid to Borrower or the person or entity lawfully entitled thereto. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

(c) At least thirty (30) days prior to the expiration date of each policy maintained pursuant to this Paragraph 1.03, a renewal or replacement thereof satisfactory to Lender shall be delivered to Lender. Borrower shall deliver to Lender receipts evidencing the payment for all such insurance policies and renewals or replacements. The delivery of any insurance policies hereunder shall constitute an assignment of all unearned premiums as further security hereunder. In the event of the foreclosure of this Deed or any other transfer of title to the Premises in extinguishment or partial extinguishment of the Indebtedness, all right, title and interest of Borrower in and to all insurance policies then in force shall pass to the purchaser or to Lender, as the case may be, and Lender is hereby irrevocably appointed by Borrower as attorney-in-fact for Borrower to assign any such policy to said purchaser or to Lender, as the case may be, without accounting to Borrower for any unearned premiums thereon.

1.04    Monthly Deposits. At the request of Lender and further to secure the payment of the taxes and assessments referred to in Paragraph 1.02 and the premiums on the insurance referred to in Paragraph 1.03, Borrower shall deposit with Lender, on the due date of each installment under the Note, such amounts as, in the estimation of Lender, shall be necessary to pay such charges as they become due; said deposits to be held by Lender, free of interest, and free of any liens or claims on the part of creditors of Borrower and as part of the security of Lender, and to be used by Lender to pay current taxes and assessments and insurance premiums on the Premises as the same accrue and are payable. Payment from said sums for said purposes shall be made by Lender at its discretion and may be made even though such payments will benefit subsequent owners of the Premises. Said deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Lender. If said deposits are insufficient to pay the taxes and assessments and insurance premiums in full as the same become payable, Borrower will deposit with Lender such additional sum or sums as may be required in order for Lender to pay such taxes and assessments and insurance premiums in full. Upon any default in the provisions of this Deed or the Note, or any instrument evidencing, securing or in any way relating to the Indebtedness, Lender may, at its option, apply any money in the fund resulting from said deposits to the payment of the Indebtedness in such manner as it may elect. Borrower hereby agrees to promptly pay all taxes and assessments on the Premises and will

furnish to Lender proof of payment within forty five (45) days of the due date by submitting cancelled checks along with the tax and/or assessment statements of the taxing authorities.

1.05 Condemnation. If all or any portion of the Premises shall be damaged or taken through condemnation (which term when used in this Deed shall include any damage or taking by any governmental or quasi-governmental authority and any transfer by private sale in lieu thereof), either temporarily or permanently, then the entire Indebtedness shall, at the option of Lender, immediately become due and payable. Borrower, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Premises or any part thereof will notify Lender, and Lender is hereby authorized, at its option, to commence, appear in and prosecute, through counsel selected by Lender, in its own or in Borrower's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Borrower to Lender, and Lender is authorized, at its option, to collect and receive all such compensation, awards or damages and to give proper receipts and acquittances therefor without any obligation to question the amount of any such compensation, awards or damages. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the Indebtedness, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Premises and/or (iii) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the security interest created by this Deed, and any balance of such moneys then remaining shall be paid to Borrower or any other person or entity lawfully entitled thereto. Borrower agrees to execute such further assignments of any compensation, awards, damages, claims, rights of action and proceeds as Lender may require. If, prior to the receipt by Lender of such award or proceeds, the Premises shall have been sold on foreclosure of this Deed, or under the power of sale herein granted, Lender shall have the right to receive such award or proceeds to the extent of any unpaid Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed or the Note shall have been sought or recovered, and to the extent of reasonable counsel fees, costs and disbursements incurred by Lender in connection with the collection of such award or proceeds.

1.06 Care of Premises.

(a) Borrower will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which would or could increase the risk of fire or other hazard to the Premises or any part thereof or which would or could result in the cancellation of any insurance policy carried with respect to the Premises.

(b) Borrower will not remove, demolish or alter the structural character of any improvement located on the Land without the written consent of Lender.

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)                    PAGE 7

Rec: $62.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7373500284 SubmitterID: 7067927936

(c) If the Premises or any part thereof is damaged by fire or other cause, Borrower will give immediate written notice thereof to Lender.

(d) Lender or its representative is hereby authorized to enter upon and inspect the Premises at any time during normal business hours.

(e) Borrower will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Premises or any part thereof.

(f) If all or any part of the Premises shall be damaged by fire or other casualty, Borrower will promptly restore the Premises to the equivalent of its original condition; and if a part of the Premises shall be damaged through condemnation, Borrower will promptly restore, repair or alter the remaining portions of the Premises in a manner satisfactory to Lender. Notwithstanding the foregoing, Borrower shall not be obligated so to restore, repair or alter unless in each instance, Lender agrees to make available to Borrower (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration, repair or alteration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration, repair or alteration shall in no way relieve Borrower of its obligation to restore, repair or alter. In the event all or any portion of the Premises shall be damaged or destroyed by fire or other casualty or by condemnation, Borrower shall promptly deposit with Lender a sum equal to the amount by which the estimated cost of the restoration of the Premises (as determined by Lender in its good faith judgment) exceeds the actual net insurance or condemnation proceeds with respect to such damage or destruction.

1.07    Leases, Contracts, Etc.

(a) As additional collateral and further security for the Indebtedness, Borrower does hereby assign to Lender Borrower's interest in any and all leases, tenant contracts, rental agreements, franchise agreements, management contracts, construction contracts, and other contracts, licenses and permits now or hereafter affecting the Premises, or any part thereof, and Borrower agrees to execute and deliver to Lender such additional instruments, in form and substance satisfactory to Lender, as may hereafter be requested by Lender further to evidence and confirm said assignment; provided, however, that acceptance of any such assignment shall not be construed as a consent by Lender to any lease, tenant contract, rental agreement, franchise agreement, management contract, construction contract, or other contract, license or permit, or to impose upon Lender any obligation with respect thereto. Without first obtaining on each occasion the written approval of Lender, Borrower shall not cancel or permit the cancellation of any such lease, tenant contract, rental agreement, franchise agreement, management contract, construction contract, or other contract, license or permit, or modify any of said instruments, or accept, or permit to be made, any prepayment of any installment of rent or fees thereunder (except for security deposits and the usual prepayment of rent which results from the acceptance by a landlord on the first day of each month of the rent for that month). Borrower shall faithfully keep and perform, or cause to be kept and performed, all of the covenants, conditions and agreements contained in each of said instruments, now or hereafter existing, on the part of Borrower to be kept and performed and shall at all times do all things

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 8

necessary to compel performance by each other party to said instruments of all obligations, covenants and agreements by such other party to be performed thereunder.

(b) Borrower shall not execute an assignment of the income, rents, issues or profits, or any part thereof, from the Premises unless Lender shall first consent to such assignment and unless such assignment shall expressly provide that it is subordinate to the assignment contained in this Deed and any assignment executed pursuant hereto or concerning the Indebtedness, or permitted prior lien(s) previously approved by Lender.

(c) Borrower shall furnish to Lender, within ten (10) days after a request by Lender to do so, a sworn statement setting forth the names of all lessees and tenants of the Premises, the terms of their respective leases, tenant contracts or rental agreements, the space occupied, and the rentals payable thereunder, and stating whether any defaults, off-sets or defenses exist under or in connection with any of said leases, tenant contracts or rental agreements.  Any and all leases, tenant contracts and rental agreements affecting the Premises shall provide for giving by the lessees or tenants thereunder of certificates with respect to the status of such leases, tenant contracts or rental agreements, and Borrower shall exercise Borrower's right to request such certificates within five (5) days of any demand therefor by Lender.

(d) Each lease, tenant contract and rental agreement pertaining to the Premises, or any part thereof, shall provide that, in the event of the enforcement by Lender of the remedies provided by law or by this Deed, the lessee or tenant thereunder will, upon request of Lender or any other person or entity succeeding to the interest of Lender as a result of such enforcement, automatically become the lessee or tenant of Lender or said successor in interest, without change in the terms or other provisions of said lease, tenant contract or rental agreement; provided, however, that neither Lender nor any such successor in interest shall be (i) bound by any payment of rental or additional rental for more than one (1) month in advance, except prepayments in the nature of security for the performance by said lessee or tenant of its obligations under said lease, tenant contract or rental agreement (and then only if such prepayments have been deposited with and are under the control of Lender); or (ii) bound by any amendment or modification of said lease, tenant contract or rental agreement made without the express written consent of Lender or said successor in interest; or (iii) personally liable beyond its interest in the Premises for the performance of any obligation of the landlord or lessor thereunder. Each lease, tenant contract and rental agreement pertaining to the Premises shall also provide that, upon request by Lender or any such successor in interest, the lessee or tenant thereunder shall deliver an instrument or instruments confirming such attornment.

(e) Notwithstanding any other provisions of this Deed, Borrower shall not hereafter enter into any lease, tenant contract, rental agreement, franchise agreement, management contract or other contract, license or permit affecting the Premises, or any part thereof, without the prior written consent of Lender and except upon the following conditions:  (i) each such instrument shall contain a provision that the rights of the parties thereunder are expressly subordinated to all of the rights and title of Lender under this Deed; (ii) any such instrument shall contain a provision whereby the parties thereunder expressly recognize and agree that, notwithstanding such subordination, Lender may sell the Premises in the manner provided in Article II, and thereby, at the option of Lender, sell the same subject to such instrument; and (iii) at or prior to the time of execution of any such instrument, Borrower shall, as a condition

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 9

to such execution, procure from the other party or parties thereto an agreement in favor of Lender, in form and substance satisfactory to Lender, under which such party or parties agree to be bound by the provisions of Article II, regarding the manner in which Lender may foreclose or exercise the power of sale under this Deed.

1.08    Security Agreement.

(a) With respect to the articles of personal property, farm products and general intangibles referred to or described in this Deed, or in any way connected with the use and enjoyment of the Premises, this Deed is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Premises, in compliance with the provisions of the Uniform Commercial Code as enacted in the State of Georgia. Upon request by Lender, at any time and from time to time, a financing statement or statements reciting this Deed to be a security agreement affecting all of such property shall be executed by Borrower and Lender and appropriately filed. The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Deed shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Lender's sole election. Borrower and Lender agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Borrower and Lender that everything used in connection the production of income from the Premises or adapted for use therein or which is described or reflected in this Deed, is, and at all times and for all purposes and in all proceedings, legal or equitable, shall be, regarded as part of the real estate conveyed hereby regardless of whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Deed, or (iii) any such item is referred to or reflected in any such financing statement or statements so filed at any time. Similarly, the mention in any such financing statement or statements of the rights in and to (i) the proceeds of any fire and/or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) Borrower's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Premises, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Lender as determined by this Deed or affect the priority of Lender's security interest granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Lender in the event any court shall at any time hold with respect to the foregoing clauses (i), (ii) or (iii) of this sentence, that notice of Lender's priority of interest, to be effective against a particular class of persons, must be filed in the Uniform Commercial Code records.

(b) Borrower warrants that (i) Borrower's (that is, "Debtor's") name, identity or corporate structure and residence or principal place of business are as set forth in Subparagraph 1.08(c) hereof; (ii) Borrower (that is, "Debtor") has been using or operating under said name, identity or corporate structure without change for the time period set forth in Subparagraph 1.08(c) hereof; and (iii) the location of the collateral is upon the Land. Borrower covenants and agrees that Borrower will furnish Lender with notice of any change in the matters addressed by clauses (i) or (iii) of this Subparagraph 1.08(b) within thirty (30) days of the

effective date of any such change and Borrower will promptly execute any financing statements or other instruments deemed necessary by Lender to prevent any filed financing statement from becoming misleading or losing its perfected status.

(c) The information contained in this Subparagraph 1.08(c) is provided in order that this Deed shall comply with the requirements of the Uniform Commercial Code, as enacted in the State of Georgia, for instruments to be filed as financing statements. The names of the "Debtor" and the "Secured Party", the identity or corporate structure and residence or principal place of business of "Debtor", and the time period for which "Debtor" has been using or operating under said name and identity or corporate structure without change, are as set forth in Schedule 1 of Exhibit "C" attached hereto and by this reference made a part hereof; the mailing address of the "Secured Party" from which information concerning the security interest may be obtained, and the mailing address of "Debtor", are as set forth in Schedule 2 of said Exhibit "C" attached hereto; and a statement indicating the types, or describing the items, of collateral is set forth hereinabove.

1.09    Further Assurances; After-Acquired Property. At any time, and from time to time, upon request by Lender, Borrower will make, execute and deliver, or cause to be made, executed and delivered, to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be re-recorded and/or refiled at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further deeds to secure debt, mortgages, deeds of trust, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve (i) the obligation of Borrower under the Note and under this Deed and (ii) the security interest created by this Deed as a first and prior security interest upon and security title in and to all of the Premises, whether now owned or hereafter acquired by Borrower. Upon any failure by Borrower so to do, Lender may make, execute, record, file, re-record and/or refile any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates and documents for and in the name of Borrower, and Borrower hereby irrevocably appoints Lender the agent and attorney-in-fact of Borrower so to do. The security title of this Deed and the security interest created hereby will automatically attach, without further act, to all after-acquired property of Borrower attached to and/or used in the operation of the Premises or any part thereof.

1.10    Expenses. Borrower will pay or reimburse Lender, upon demand therefor, for all attorney's fees, costs and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Deed or the interest created herein, or the Premises, including but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Premises or any action to protect the security hereof, and any such amounts paid by Lender shall be added to the Indebtedness and shall be secured by this Deed.

1.11    Estoppel Affidavits. Borrower, upon ten (10) days' prior written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the Indebtedness, stating whether or not any offsets or defenses exist against the Indebtedness, or

any portion thereof, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

1.12 <u>Subrogation.</u> To the full extent of the Indebtedness, Lender is hereby subrogated to the liens, claims and demands, and to the rights of the owners and holders of each and every lien, claim, demand and other encumbrance on the Premises which is paid or satisfied, in whole or in part, out of the proceeds of the Indebtedness, and the respective liens, claims, demands and other encumbrances shall be, and each of them is hereby, preserved and shall pass to and be held by Lender as additional collateral and further security for the Indebtedness, to the same extent they would have been preserved and would have been passed to and held by Lender had they been duly and legally assigned, transferred, set over and delivered unto Lender by assignment, notwithstanding the fact that any instrument providing public notice of the same may be satisfied and cancelled of record.

1.13 <u>Books, Records, Accounts and Annual Reports.</u> Borrower shall keep and maintain or shall cause to be kept and maintained, at Borrower's cost and expense and in accordance with generally accepted accounting principles, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Premises and in connection with any services, equipment or furnishings provided in connection with the operation of the Premises. Lender, by Lender's agents, accountants and attorneys, shall have the right from time to time to examine such books, records and accounts at the office of Borrower or such other person or entity maintaining such books, records and accounts, to make copies or extracts thereof as Lender shall desire and to discuss Borrower's affairs, finances and accounts with Borrower and with the officers and principals of Borrower, at such reasonable times as may be requested by Lender. Borrower will furnish to Lender annually within ninety (90) days after the end of Borrower's fiscal year an audited financial statement for the Premises for such fiscal year prepared by an independent certified public accountant satisfactory to Lender containing a profit and loss statement and all supporting schedules covering the operation of the Premises, all in reasonable detail, prepared in accordance with generally accepted accounting standards consistently applied and accompanied by the unqualified opinion and certification of such independent certified public accountant who shall have examined and certified the accuracy of such audit; and Borrower will furnish to Lender, at any time within thirty (30) days after demand by Lender, unaudited statements, certified by Borrower's principal financial or accounting officer, covering such financial matters as Lender may reasonably request, including, without limitation, monthly operating statements with respect to the Premises.

1.14 <u>Limit of Validity.</u> If from any circumstances whatsoever, fulfillment of any provision of this Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then, <u>ipso facto</u>, the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph shall control every other provision of this Deed and of the Note.

1.15    No Default Affidavits. At Lender's request, all advances or payments made under the Note or hereunder shall be accompanied by a currently dated affidavit of Borrower or a principal financial or accounting officer of Borrower, swearing that he knows of no Default (as hereinafter defined), nor of any circumstance which after notice or lapse of time or both would constitute a Default, which has occurred and is continuing or, if any such Default has occurred and is continuing, specifying the nature and period of existence thereof and the action Borrower has taken or proposes to take with respect thereto and, except as otherwise specified, stating that Borrower has fulfilled all of Borrower's obligations under the Note or this Deed which are required to be fulfilled on or prior to the date of such affidavit.

1.16    Use and Management of Premises. Borrower shall at all times operate the Premises as described in Exhibit "D" attached hereto and by this reference made a part hereof. Borrower shall not be permitted to alter or change the use of the Premises or to abandon the Premises without the prior written consent of Lender.

1.17    Conveyance of Premises. Borrower hereby acknowledges to Lender that (i) the identity and expertise of Borrower were and continue to be material circumstances upon which Lender has relied in connection with, and which constitute valuable consideration to Lender for, the extending to Borrower of the indebtedness evidenced by the Note and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Lender by this Deed. Borrower therefore covenants and agrees with Lender, as part of the consideration for the extending to Borrower of the indebtedness evidenced by the Note, that Borrower shall not encumber, pledge, convey, transfer or assign any or all of its interest in the Premises without the prior written consent of Lender.

1.18    Acquisition of Collateral. Borrower shall not acquire any portion of the collateral affected by the security agreement set forth in this Deed subject to any security interest, conditional sales contract, title retention arrangement or other charge or lien taking precedence over the security interest, security title and lien of this Deed.

ARTICLE II

2.01    Default. The terms "Default" or "Defaults", wherever used in this Deed, shall mean any one or more of the following events:

(a) Failure by Borrower to pay as and when due and payable any portion of the Indebtedness; or

(b) Failure by Borrower duly to observe or perform any other term, covenant, condition or agreement of this Deed; or

(c) Failure by Borrower duly to observe or perform any term, covenant, condition or agreement in any loan agreement, assignment of leases or any other agreement now or hereafter evidencing, securing or otherwise relating to the Note or this Deed or the Indebtedness; or

(d) The occurrence of a default or event of default under any loan agreement, assignment of leases or any other agreement now or hereafter evidencing, securing or otherwise relating to the Note or this Deed or the Indebtedness;

(e) Any warranty of Borrower contained in the Note, this Deed, or in any loan agreement, assignment of leases or any other agreement now or hereafter evidencing or securing or otherwise relating to the Note or this Deed or the Indebtedness, proves to be untrue or misleading in any material respect; or

(f) The filing by Borrower or any endorser or guarantor of the Note of a voluntary petition in bankruptcy or the filing by Borrower or any such endorser or guarantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or Borrower's or any such endorser's or guarantor's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Borrower, such endorser or guarantor, or of all or any substantial part of the Premises or of any other property or assets of Borrower, such endorser or guarantor, or of any or all of the income, rents, issues, profits or revenues thereof, or the making by Borrower, or any such endorser or guarantor, of any general assignment for the benefit of creditors, or the admission in writing by Borrower, or by any such endorser or guarantor, of its inability to pay its debts generally as they become due or the commission by Borrower or any such other endorser or guarantor of an act of bankruptcy; or

(g) The filing of a petition against Borrower, or any endorser or guarantor of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the appointment of any trustee, receiver or liquidator of Borrower, or of any such endorser or guarantor or of all or any substantial part of the Premises or of any or all of the income, rents, issues, profits or revenues thereof unless such petition shall be dismissed within thirty (30) days after such filing, but in any event prior to the entry of an order, judgment or decree approving such petition; or

(h) The Premises are subjected to actual or threatened waste, or any part thereof is removed, demolished or altered without the prior written consent of Lender; or

(i) Borrower or any endorser or guarantor of the Note (if a corporation) is liquidated or dissolved or its charter expires or is revoked, or Borrower or such endorser or guarantor (if a partnership or business association) is dissolved or partitioned, or Borrower or such endorser or guarantor (if a trust) is terminated or expires, or Borrower or such endorser or guarantor (if an individual) dies; or

(j) If Borrower is an entity other than a natural person (such as a corporation or other organization), and (a) any beneficial interest in Borrower is sold or transferred, (b) there is a change in either the identity or number of owners, or (c) there is a change in ownership of more than 25% of the voting interests in Borrower.

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 14

Rec: $62.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7373500284 SubmitterID: 7067927936

2.02    <u>Acceleration of Maturity</u>. If a Default shall have occurred, then the entire Indebtedness shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right. Borrower hereby waives notices of: demand, presentment, dishonor, protest, intent to accelerate or notice of acceleration.

2.03    <u>Right to Enter and Take Possession</u>.

(a) If a Default shall have occurred, Borrower, upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Premises and if, and to the extent, permitted by law, Lender itself, or by such officers or agents as it may appoint, may enter and take possession of all of the Premises without the appointment of a receiver, or an application therefor, and may exclude Borrower and its agents and employees wholly therefrom, and may have joint access with Borrower to the books, papers and accounts of Borrower.

(b) If Borrower shall for any reason fail to surrender or deliver the Premises or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Borrower to deliver immediate possession of the Premises to Lender, and Borrower hereby specifically covenants and agrees that Borrower will not oppose, contest or otherwise hinder or delay Lender in any action or proceeding by Lender to obtain such judgment or decree. Borrower will pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Indebtedness and shall be secured by this Deed.

(c) Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Premises and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Premises insured; (iii) manage and operate the Premises and exercise all the rights and powers of Borrower to the same extent as Borrower could in its own name or otherwise act with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted to Lender, all as Lender from time to time may determine to be in its best interest. Lender may collect and receive all the income, rents, issues, profits and revenues from the Premises, including those past due as well as those accruing thereafter, and Lender may apply any moneys and proceeds received by Lender, in whatever order or priority Lender in its sole discretion may determine, to the payment of (i) all expenses of taking, holding, managing and operating the Premises (including compensation for the services of all persons employed for such purposes); (ii) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (iii) the cost of such insurance; (iv) such taxes, assessments and other similar charges as Lender may at its option pay; (v) other proper charges upon the Premises or any part thereof; (vi) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender; (vii) accrued interest; (viii) deposits required in Paragraph 1.04 and other sums required to be paid under this Deed; or (ix) overdue installments of principal.    Anything in this Paragraph 2.03 to the

contrary notwithstanding, Lender shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as the result of any exercise by Lender of its rights under this Deed, and Lender shall be liable to account only for the income, rents, issues, profits and revenues actually received by Lender.

(d) In the event that all such interest, deposits and principal installments and other sums due under any of the terms, covenants, conditions and agreements of this Deed shall be paid and all Defaults shall be cured, and as a result thereof Lender surrenders possession of the Premises to Borrower, the same right of taking possession shall continue to exist if any subsequent Default shall occur.

2.04    Performance by Lender. If a Default shall have occurred in the payment, performance or observance of any term, covenant or condition of this Deed, Lender may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Borrower to Lender with interest thereon at the default rate provided in the Note. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Lender is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Borrower or any person in possession holding under Borrower.

2.05    Receiver. If a Default shall have occurred, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the adequacy or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the income, rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Borrower will pay to Lender upon demand all expenses, including receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05, and any such amounts paid by Lender shall be added to the Indebtedness and shall be secured by this Deed.

2.06    Enforcement.

(a) If a Default shall have occurred, Lender, at its option, may sell the Premises or any part of the Premises at one or more public sale or sales before the door of the courthouse of the county in which the Land or any part of the Land is situated, to the highest bidder for cash, in order to pay the Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including reasonable attorney's fees, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Premises or any part of the Premises in fee simple with full warranties of title, and to this end Borrower hereby constitutes and appoints Lender the agent and attorney-in-fact of Borrower to make such sale and conveyance, and thereby to divest Borrower of all rights, title and equity that Borrower may have in and to the Premises and to vest the same in the purchaser or purchasers at such

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)            PAGE 16

sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Borrower and conclusive upon Borrower, and the conveyance made by Lender shall be effectual to bar all right, title and interest, equity of redemption including all statutory redemption, homestead, dower, curtsey and all other exemptions of Borrower, or its successors in interest in and to the Premises. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Indebtedness. In the event of any sale under this Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Premises may be sold as an entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Lender may sell the personal property covered by this Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Premises are sold or the Indebtedness is paid in full. If the Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Lender may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such other order as Lender may determine.

(b) If a Default shall have occurred, Lender may, in addition to and not in abrogation of the rights covered under Subparagraph 2.06(a), either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Deed or any other right and (ii) to pursue any other remedy available to it, all as Lender at its sole discretion shall elect.

2.07   Purchase by Lender. Upon any foreclosure sale or sales of all or any portion of the Premises under the power herein granted, Lender may bid for and purchase the Premises and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

2.08   Application of Proceeds of Sale. In the event of a foreclosure or a sale of all or any portion of the Premises under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith, including attorneys' fees, to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Lender, to payment of the outstanding principal balance of the Indebtedness, or to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Borrower, or to the person or entity lawfully entitled thereto.

2.09   Borrower as Tenant Holding Over. In the event of any such foreclosure sale or sales under the power herein granted, Borrower shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 17

DEED BOOK:143 PG:4173 Filed:09/09/2019 12:32 PM Cherokee Clerk:
Rec: $62.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7373500284 SubmitterID: 7067927936

Case 4:23-md-03019-NMG Document 10-4 Filed 06/16/23   Page 19 of 30

2.10   Waiver of Appraisement, Valuation, etc. Borrower agrees, to the full extent permitted by law, that in case of a Default on the part of Borrower hereunder, neither Borrower nor anyone claiming through or under Borrower will set up, claim or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed, or the absolute sale of the Premises, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Borrower, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets subject to the lien, security interest or security title of this Deed marshalled upon any foreclosure or sale under the power herein granted.

2.11   Waiver of Homestead. Borrower hereby waives and renounces all homestead and exemption rights provided for by the Constitution and the laws of the United States and of any state, in and to the Premises as against the collection of the Indebtedness, or any part hereof.

2.12   Leases. Lender, at its option, is authorized to foreclose this Deed subject to the rights of any tenants of the Premises, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Borrower, a defense to any proceedings instituted by Lender to collect the Indebtedness.

2.13   Discontinuance of Proceedings. In case Lender shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise or in the event Lender commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding or advertisement shall have been withdrawn, discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every such case, to the maximum extent permitted by law (i) Borrower and Lender shall be restored to their former positions and rights, (ii) all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken, (iii) each and every Default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall and shall be deemed to be a continuing Default and (iv) neither this Deed, nor the Note, nor the Indebtedness, nor any other instrument concerned therewith, shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and Borrower hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the above.

2.14   Remedies Cumulative. No right, power or remedy conferred upon or reserved to Lender by this Deed is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law, in equity or by statute.

2.15   Waiver.

(a) No delay or omission by Lender or by any holder of the Note to exercise any right, power or remedy accruing upon any breach or Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such breach or Default, or

acquiescence therein, and every right, power and remedy given by this Deed to Lender may be exercised from time to time and as often as may be deemed expedient by Lender. No consent or waiver, expressed or implied, by Lender to or of any breach or Default by Borrower in the performance of the obligations of Borrower hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Borrower hereunder. Failure on the part of Lender to complain of any act or failure to act or to declare a Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers or remedies of Lender hereunder.

(b) No act or omission by Lender shall release, discharge, modify, change or otherwise affect the original liability under the Note, this Deed or any other obligation of Borrower or any subsequent purchaser of the Premises or any part thereof, or any maker, co-signer, endorser, surety or guarantor, or preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default, or alter the security title, security interest or lien of this Deed except as expressly provided in an instrument or instruments executed by Lender. Without limiting the generality of the foregoing, Lender may: (i) grant forbearance or an extension of time for the payment of all or any portion of the Indebtedness; (ii) take other or additional security for the payment of the Indebtedness; (iii) waive or fail to exercise any right granted hereunder or in the Note; (iv) release any part of the Premises from the security title, security interest or lien of this Deed or otherwise change any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consent to the filing of any map, plat or replat affecting the Premises; (vi) consent to the granting of any easement or other right affecting the Premises; (vii) make or consent to any agreement subordinating the security title, security interest or lien hereof; or (viii) take or omit to take any action whatsoever with respect to the Note, this Deed, the Premises or any document or instrument evidencing, securing or in any way relating to the Indebtedness; all without releasing, discharging, modifying, changing or affecting any such liability, or precluding Lender from exercising any such right, power or privilege or affecting the security title, security interest or lien of this Deed. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing and/or discharging any liabilities, obligations or undertakings.

2.16  Suits to Protect the Premises. Lender shall have the power to institute and maintain such suits and proceedings as it may deem expedient (i) to prevent any impairment of the Premises by any actions which may be unlawful or constitute a Default under this Deed, (ii) to preserve or protect its interest in the Premises and in the income, rents, issues, profits and revenues arising therefrom and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

2.17  <u>Proofs of Claim</u>. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Borrower, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Lender allowed in such proceedings for the entire amount of the Indebtedness at the date of the institution of such proceedings and for any additional amount of the Indebtedness after such date.

2.18  <u>Waiver of Borrower's Rights</u>. BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.18, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF LENDER TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES OF AMERICA (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS OF BORROWER REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER, AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THIS DEED AND INITIALING THIS PARAGRAPH 2.18; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS DEED IS VALID AND ENFORCEABLE BY LENDER AGAINST BORROWER IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

INITIALED BY BORROWER:

## ARTICLE III

3.01  <u>Successors and Assigns</u>. This Deed shall inure to the benefit of and be binding upon Borrower and Lender and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns. Whenever a reference is made in this Deed to "Borrower" or "Lender"

2.17   Proofs of Claim. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Borrower, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Lender allowed in such proceedings for the entire amount of the Indebtedness at the date of the institution of such proceedings and for any additional amount of the Indebtedness after such date.

2.18   Waiver of Borrower's Rights. BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.18, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF LENDER TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES OF AMERICA (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS OF BORROWER REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER, AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THIS DEED AND INITIALING THIS PARAGRAPH 2.18; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS DEED IS VALID AND ENFORCEABLE BY LENDER AGAINST BORROWER IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

INITIALED BY BORROWER:

### ARTICLE III

3.01   Successors and Assigns. This Deed shall inure to the benefit of and be binding upon Borrower and Lender and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns. Whenever a reference is made in this Deed to "Borrower" or "Lender"

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 20

such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors, successors-in-title and assigns of Borrower and Lender, as the case may be. The provisions of this Paragraph 3.01 are subject to the restrictions on transfer contained in Paragraph 1.17.

3.02  Terminology. All personal pronouns used in this Deed whether used in the masculine, feminine, or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles of articles and paragraphs are for convenience only and neither limit nor amplify the provisions of this Deed, and all references herein to articles, paragraphs or subparagraphs shall refer to the corresponding articles, paragraphs, or subparagraphs of this Deed unless specific reference is made to articles, paragraphs, or subparagraphs of another document or instrument.

3.03  Severability. If any provisions of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

3.04  Applicable Law. This Deed shall be interpreted, construed and enforced according to the laws of the State of Georgia.

3.05  Notices. Any and all notices, elections or demands permitted or required to be made under this Deed shall be in writing, signed by the party giving such notice, election or demand, and shall be delivered personally or sent by registered or certified United States mail, postage prepaid, to the other party at the address set forth below, or at such other address within the continental United States of America as may have theretofore been designated in writing. The date of personal delivery or the date of mailing, as the case may be, shall be the date of such notice, election or demand. For the purposes of this Deed:

| | |
|---|---|
| The address of Borrower is: | Andries J. Van Pletzen and Lara Y. Van Pletzen<br>4963 Sydney Lane<br>Marietta, Georgia 30066 |
| The address of Lender is: | Customers Bank<br>99 Bridge Street<br>Phoenixville, Pennsylvania 19460-3411 |

3.06  Replacement of Note. Upon receipt of evidence reasonably satisfactory to Borrower of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Borrower or, in the case of any such mutilation, upon surrender and cancellation of the Note, Borrower will execute and deliver, in lieu thereof, a replacement Note, identical in form and substance to the Note and dated as of the date of the Note and upon such execution and delivery all references in this Deed to the Note shall be deemed to refer to such replacement Note.

3.07   <u>Assignment.</u> This Deed is assignable by Lender, and any assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender.

3.08   <u>Time of the Essence.</u> Time is of the essence with respect to each and every covenant, agreement and obligation of Borrower under this Deed, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Indebtedness.

3.09   <u>Federal Law Application.</u> The loan secured by this Deed to Secure Debt ("Loan") was made under a SBA nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulation:

    (a)     When SBA is the holder of the Note, this document and all documents evidencing or securing the Loan will be construed in accordance with federal law.

    (b)     Lender or SBA may use local or state procedures for purposes such as filing paper, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. Neither Borrower nor any other obligor of the Indebtedness may claim or assert against SBA any local or state law to deny any obligation of Borrower or any obligor of the Indebtedness, or defeat any claims of SBA with respect to the Loan.

    (c)     Any clause in this Deed to Secure Debt requiring arbitration is not enforceable when SBA is the holder of the Note.

3.10   <u>Homestead Disclaimer.</u> Borrower expressly represents that the Land forms no part of any property owned, used or claimed by Borrower as exempted from forced sale under the Laws of the State of Georgia, and Borrower renounces all and every claim thereto under any such law or laws.

(Signatures on the following page.)

IN WITNESS WHEREOF, Borrower has executed this Deed under seal, as of the day and year first above written.

Signed, sealed and delivered in the presence of the following:

Unofficial Witness

Name: Sarah Knight

Unofficial Witness

Name: Deanna Ouellette

NOTARY PUBLIC

Commission Expiration Date:

_____ (Seal)
Andries J. Van Pletzen

_____ (Seal)
Lara Y. Van Pletzen

**DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)**          **PAGE 23**

IN WITNESS WHEREOF, Borrower has executed this Deed under seal, as of the day and year first above written.

Signed, sealed and delivered in the presence of the following:

_____
Unofficial Witness
Name: Sarah Knight

_____
Unofficial Witness
Name: Deanna Ouellette

NOTARY PUBLIC

Commission Expiration Date:

_____ (Seal)
Andries J. Van Pletzen

_____ (Seal)
Lara Y. Van Pletzen

DEED TO SECURE DEBT AND SECURITY AGREEMENT (416 Pierpont Court)          PAGE 23

Rec: $62.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7373500284  SubmitterID: 7067927936

<u>EXHIBIT "A"</u>

All that tract or parcel of land lying and being in Land Lot 125 of the 14th District, 2nd Section, Cherokee County, Georgia, being Lot 32, Canton Heights Townhouse District Subdivision, Phase 1, as per plat recorded in Plat Book 79, Pages 159-161, Cherokee County, Georgia Records, being more commonly known as 416 Pierpont Court, Canton, Georgia 30114.

Rec: $62.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7373500284 SubmitterID: 7067927936

EXHIBIT "B"

(Description of Permitted Encumbrances)

Security Deed dated December 12, 2017 in favor of Mortgage Electronic Registration Systems,
Inc., as nominee for SunTrust Mortgage, Inc. in the original principal amount of $112,000.00, filed
under Clerk File Number 28-2017-044786, Clerk of Superior Court, Cherokee County, Georgia.

EXHIBIT "C"

Schedule 1

(Description of "Debtor" and "Secured Party")

A.    Debtor:

1. Name and Identity or Corporate Structure:
   Andries J. Van Pletzen
   Lara Y. Van Pletzen

2. The Debtor's residential address in the State of Georgia is located at:
   4963 Sydney Lane
   Marietta, Georgia 30066.

B.    Secured Party:

Customers Bank
99 Bridge Street
Phoenixville, PA 19460-3411

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Schedule 2

(Notice Mailing Addresses of "Debtor" and "Secured Party")

A.    The mailing address of Debtor is:          4963 Sydney Lane
                                                  Marietta, Georgia 30066

B.    The mailing address of Secured Party is:    99 Bridge Street
                                                  Phoenixville, Pennsylvania 19460-3411

Rec: $62.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7373500284 SubmitterID: 7067927936

EXHIBIT "D"

(Use of Premises)

The Premises shall at all times be used and operated as a private residence.