IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SOUTHWEST ACTORS CONFERENCE LLC,<br>    Plaintiff,<br><br>v.<br><br>JESSE MALINOWSKI<br>    Defendant. | Civil Action File No.:<br>_____ |

## COMPLAINT

Plaintiff Southwest Actors Conference LLC, for its Complaint against Jesse Malinowski ("Defendant") states as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement, false destination of origin, and unfair competition arising under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq. (the "Lanham Act"), and under the common law of the State of Georgia.

2. In the highly competitive, entertainment world, where reputation counts for more than in most fields, Bella Hibbs ("Hibbs"), owner and creator of Southwest Actors Conference LLC ("Southwest" or "Plaintiff"), set herself apart as a renowned and talented acting coach and casting director, and as a result, brought Southwest distinction and a following in the industry.

3. Hibbs formed Southwest and planned and marketed the first Southwest conference starting in October 2019, wherein actors would be able to make professional connections and gain valuable skills through keynote speeches.

1

4.       Southwest organized networking events in 2019, including those at which Ms. Hibbs engaged in informational "Q&A" sessions to further promote the conference and provide information on the services to be expected at the event.

5.       Although the first Southwest conference was intended to take place in 2020, and substantial marketing and planning had been achieved, the COVID pandemic caused an unforeseen delay in the conference.

6.       Since 2019, Southwest has continuously marketed and developed a substantial following in the entertainment industry in connection with its services by holding mini-lessons with talent agents, growing an email list of 500 individuals, posting promotional ads on Instagram, and interviewing with several news sources.

7.       At long last and after substantial promotion and related events, in late September 2022, the first in-person major Southwest conference was held, at which hundreds of individuals were in attendance.

8.       Southwest has made extensive, continuous and substantial exclusive use of its distinctive SOUTHWEST ACTORS CONFERENCE mark (the "Southwest Mark"), which consumers have come to associate with Southwest and Bella Hibbs, and to which Southwest has dedicated significant time and resources to create and protect.

9.       Despite Southwest's prior rights, Defendant, in full awareness of Southwest, its activities, and its rights, adopted and used the term SOUTHEAST ACTOR CONFERENCE (the "Infringing Mark") in March 2023, after Southwest's successful conference and well after Southwest had commenced and developed extraordinary distinctiveness in its Southwest Mark, purporting to offer services identical to Southwest's services.

10. On information and belief, Defendant never made commercial use of the infringing mark prior to March 2023.

11. In March 2023, shortly after Southwest learned of Defendant's infringement, Southwest applied to register the Southwest Mark and immediately made contact with Defendant, in hopes that Defendant had merely been unaware of Southwest and its rights.

12. Plaintiff made three separate attempts to contact Defendant regarding the infringement, which were either ignored or unsuccessful.

13. Despite Southwest's prior rights to the service mark, Defendant, in full awareness of Southwest, its activities, and its rights, applied to register the Infringing Mark on April 18, 2023, alleging a first use in commerce date of November 20, 2022.

14. Upon information and belief, Defendant knew that he never made commercial use of the Infringing Mark on the date of first use represented to the USPTO.

15. Despite Southwest's numerous attempts to prevent market confusion, Defendant, in full knowledge of Southwest's rights and protestations, held his conference in May 2023.

16. Defendant then promised followers on social media that the conference was "not [his] last" with an emoticon of a winking, smiley face.



17. Defendant's infringing services are likely to cause, and in fact have caused, confusion among the trade and consuming public as to the source or origin of the infringing services, thereby causing ongoing irreparable harm to Southwest.

**THE PARTIES**

18. Southwest is a limited liability company organized and existing under the laws of the state of Arizona, having its principal place of business at 9414 E San Salvador Dr. Suite 115, Scottsdale, Arizona 85258.

19. All members of Southwest are also citizens domiciled in the state of Arizona.

20. On information and belief, Defendant Jesse Malinowski is an individual US citizen in the state of Georgia, having his domicile at 2338 Oakwood Way SE, Smyrna, Georgia 30080.

21. On information and belief, Defendant Jesse Malinowski exercises control over the Southeast Actor Conference.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction over this Complaint by virtue of 28 U.S.C. §§ 1331, 1332 and 1338, and under its supplemental jurisdiction of 28 U.S.C. § 1367, the Counts of which concern acts of fraudulent registration and unfair competition under the Lanham Act, 15 U.S.C. §§ 1120, 1125(a), 1125(d), and trademark infringement and unfair competition under the laws of the State of Georgia.

23. The Court has supplemental jurisdiction over the claims arising under the laws of the State of Georgia, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

24. This Court has personal jurisdiction over Defendant because Defendant has deliberately and intentionally marketed and sold or caused to be marketed and sold the infringing services to the State of Georgia and to Plaintiff's customers therein.

25. Venue is proper in this Court under 28 U.S.C. § 1391 in that Defendant is subject to the personal jurisdiction of this judicial district, and that a substantial part of the events giving rise to this action occurred in this judicial district.

**STATEMENT OF FACTS**

26. Beginning in early 2019, Hibbs, based on her knowledge of the entertainment industry and impeccable reputation, determined to create an annual conference for actors to make connections with top industry professionals and develop skills to boost the conference goers' competitive advantages in their uniquely competitive field.

27. Southwest began developing the Southwest Actors Conference brand by investing time, capital, and connections, and by winning earned media and paid media attention in the form of televised interviews, social media posts, and commentary in local newspapers.

28. Southwest's marketing efforts developed brand awareness of Southwest among the consuming public prior to the inaugural conference.

29. Although Southwest was delayed by the global pandemic, Southwest consistently used the Southwest Mark and developed its brand awareness significantly during the pandemic period through the use of continuous outreach and marketing efforts; ultimately, it successfully maintained market interest in the conference until the conference could be rescheduled.

30. On September 23-24, 2022, Southwest successfully conducted its first live in-person full conference, and it is scheduled to conduct the next conference in October 2023.

31. The individuals attending this conference come from all around the United States due to the reputation that Southwest and its principal have built in the entertainment industry.

32. The Southwest Mark is distinctive, durable, well-known in the entertainment industry, and associated with Southwest and its principal's name and reputation.

**Defendant's Infringing Acts**

33. Defendant, in full knowledge of Plaintiff's prior rights, is marketing, offering for sale, and selling identical or similar services, albeit of lower quality and value to attendees, under the confusingly similar name, SOUTHEAST ACTOR CONFERENCE.

34. Defendant had, for the preceding three (3) years, conducted conferences with identical services under the name ATLANTA ACTORS SUMMIT.

35. Only after Southwest held its conference did Defendant change the conference name to the infringing name SOUTHEAST ACTOR CONFERENCE, at which time the event sold out.

36. Defendant markets and sells the infringing services through trade channels materially identical or similar to those of Southwest, including the internet and Instagram.

37. On information and belief, Defendant deliberately intended to trade on Southwest and Ms. Hibbs' goodwill and reputation in the industry in which both Plaintiff and Defendant will operate.

38. Defendant is not, and has never been, affiliated with, sponsored, or licensed by Southwest to use the Southwest mark or the infringing mark in connection with services materially identical to genuine Southwest services.

39. Defendant has never obtained permission to use or license the Southwest Mark or any other marks or designs confusingly similar thereto, for the use on or in connection with any goods or services, including the infringing services.

40. Southwest has corresponded in good faith with Defendant on several occasions to demand that Defendant immediately cease all marketing and sales of the infringing services under the Infringing Mark.

41. Defendant is aware of Southwest's objections as to Defendant's use of the Infringing Mark, as Defendant responded to one of Southwest's communications on April 12, 2023, but then failed to meaningfully respond to any more.

42. Notwithstanding Defendant's awareness of Southwest's rights in the Southwest Mark and Southwest's business, Defendant has refused to cease his unlawful actions.

43. By using the Infringing Mark in connection with his competing and infringing services, Defendant seeks to confuse and deceive the trade and the consuming public as to the source or origin of the infringing services and the genuine Southwest services, with the result that attendees obtaining the infringing services will believe, wrongly, that they may receive the same knowledge, information, and connections as are available through Southwest, when in fact none of these are available.

44. On information and belief, Defendant intended to free-ride on the goodwill represented by the Southwest Mark developed by Southwest when they adopted a similar mark.

45. Defendant culpably disregarded the risk of confusion to the public in his adoption of the infringing mark.

46. On information and belief, Defendant therefore knowingly, willfully, intentionally, and maliciously adopted and used the Infringing Mark for marketing and selling the infringing services, knowing that such use would mislead, deceive, and generate confusion among the consuming public.

47. Defendant applied to register the Infringing Mark with the US Patent & Trademark Office ("USPTO") on April 18, 2023, after it had been put on notice of Plaintiff's rights.

48. Defendant alleged a first use in commerce of the Infringing Mark on November 20, 2022.

49. Defendant signed the infringing application, attesting that, "to the best of [his] knowledge and belief, no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

50. Defendant knew of Southwest and its rights in the Southwest Mark at the time Defendant signed this attestation.

51. Defendant, while marketing the infringing services, copied confusingly similar language as Southwest displays on its homepage. Specifically, Southwest's website states "Be empowered. Make connections. Get Results." Defendant advertised that the "conference is designed to *empower*, *connect*, and equip actors with the tools they need." (Emphasis added).

**The Harm to Southwest as a Result of Defendant's Unlawful Conduct**

52. Both Southwest and Defendant provide services to identical customers in the entertainment industry.

53. Upon information and belief, Defendant has intentionally and willfully directed his advertising and promotional sales efforts at the same customers as Southwest.

54. Southwest has received actual comments from Defendant's customers in regard to the services provided by or to be provided by Defendant.

55. Defendant's infringing services are identical to the services offered under the Southwest Mark.

56. Thus, Defendant's use of the Infringing Mark is likely to cause the consuming public to be deceived and to erroneously assume that the parties' respective services are in some way connected with one another.

57. Given Defendant's cavalier attitude toward intellectual property infringement and Southwest's manifestly superior rights in the Southwest Mark, Defendant puts at risk and damages Southwest's reputation, goodwill, and ability to market and promote its goods and services.

58. Defendant's unauthorized use of the confusingly similar Infringing Mark has injured Southwest's interests and will continue to do so unless enjoined. Specifically, Defendant

(a) has damaged and continues to damage Southwest's rights and valuable goodwill in the Southwest Mark; and (b) has injured and continues to injure Southwest's right to use and license the Southwest Mark as exclusive indicia of origin of Southwest's goods and services.

59. All conditions precedent to the filing of this action have occurred or have been waived or excused.

60. As a result of the wrongful conduct by Defendant alleged herein, Southwest has been forced to engage its counsel of record to enforce its rights in connection with the trademarks at issue. Its counsel is accordingly entitled to its reasonable attorneys' fees and costs in connection with these legal services.

## COUNT I

### False Designation of Origin
### (Lanham Act, 15 U.S.C. § 1125(a))

61. Southwest repeats and realleges the allegations in Paragraphs 1 through 60 above as if fully set forth herein.

62. Through Southwest's continuous and substantially exclusive use of the Southwest Mark in commerce for nearly four years, the relevant trade and consuming public has come to identify the Southwest Mark and the services offered under it as originating with Southwest or. Hibbs.

63. Southwest has built a valuable business in its use of the Southwest Mark, and the goodwill associated with Southwest is of high value, both to Southwest and on an objective economic basis.

64. Defendant's conduct as described herein constitutes use of a false designation of origin and/or a false or misleading description or representation of fact on or in connection with their services which is likely to cause confusion, mistake, or deception as to the affiliation,

connection, or association of the parties, and/or as to the origin, sponsorship, or approval of their respective goods and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant's conduct as described herein also constitutes an attempt to arrogate to themselves the substantial goodwill that Southwest has developed in the Southwest Mark, all to the damage of Southwest.

65. Defendant's use in commerce of designations which are confusingly similar and/or identical to the Southwest Mark, despite having actual and constructive notice of Southwest's prior rights in and to the Southwest Mark, constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about their goods, services, and commercial activities.

66. Defendant has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to Southwest as a result of the foregoing acts, in an amount to be determined at trial.

## COUNT II

### Common Law Trademark Infringement Under Georgia Law

67. Southwest repeats and realleges the allegations in Paragraphs 1 through 66 as if fully set forth herein.

68. Through the long-standing, continuous, and exclusive use of the Southwest Mark in commerce, the relevant trade and consuming public have come to understand the Southwest Mark as identifying Southwest and indicating the source of origin of the Southwest services as coming from Southwest and Bella Hibbs.

69. Southwest has built a valuable business in its use of the Southwest Mark, and the goodwill associated with the Southwest Mark is of great value to Southwest. The Southwest Mark

has come to indicate to the trade and the consuming public that the particular products and services bearing the Southwest Mark originate from Southwest.

70. Defendant has used, and is continuing to use, designations that are confusingly similar and/or identical to Southwest's Southwest Mark in interstate commerce, including the State of Georgia, in connection with products and services identical to those offered under the Southwest Mark.

71. Defendant's unauthorized use of the infringing services is likely to cause, and has caused, confusion in the marketplace between the parties' respective services.

72. Defendant's infringement of Southwest's Southwest Mark is in willful and wanton disregard of Southwest's rights in and to the same, and without the consent of Southwest.

## COUNT III

### Attorney's Fees and Prejudgment Interest

73. Southwest repeats and realleges the allegations in Paragraphs 1 through 66 as if fully set forth herein.

74. In relation to his wrongful acts described above and to each and every count set forth above, Defendant has acted in bad faith and has caused Southwest Actors Conference unnecessary trouble and expense. As detailed above, Defendant intentionally and in bad faith engaged in infringement and unfair competition with full knowledge of the harm that would result to the public and to Southwest Actors Conference.

75. Additionally, Defendant has refused to cease use of the Infringing Mark despite knowing of the infringement from the time he first began using the Infringing Mark.

76. Southwest Actors Conference is entitled to recover all expenses and fees arising from the misconduct of Defendant giving rise to the present litigation, including the reasonable

attorney fees expended by Southwest Actors Conference, pursuant to O.C.G.A. § 13-6-11 and applicable federal law.

77. Southwest Actors Conference is also entitled to attorney fees under the Lanham Act.

78. Southwest Actors Conference is also entitled to recover prejudgment interest on its damages pursuant to O.C.G.A. § 13-6-13.

## **PRAYER FOR RELIEF**

WHEREFORE, Southwest Actors Conference, LLC prays for relief against Defendant Jesse Malinowski as follows:

A. That Defendant and his agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them, or any of their successors or assigns or any of them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

   a. using the marks "Southeast Actor Conference", "Southwest Actors Conference", or any other reproduction, counterfeit, copy, confusingly similar variant, or colorable imitation of the Southwest Mark, in commerce in any medium;

   b. advertising, marketing, offering for sale, or providing or selling the infringing services;

   c. using the Southwest Mark, or any reproduction, counterfeit, copy, confusingly similar variant or colorable imitation of the same, in any manner likely to cause others to believe that Defendant's goods or services are connected with Southwest or are genuine Southwest-licensed products or services;

d.  committing any other acts that may cause the purchasing public to believe that Defendant's goods and services are genuinely licensed by Southwest or otherwise provided for the benefit of Southwest.

e.  shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of any materials falsely bearing the infringing mark, or any other reproduction, copy, confusingly similar variant or colorable imitation of the Southwest Mark; and

f.  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (e).

B.  That Defendant be required to account for and pay to Southwest Defendant's profits from sales of the infringing services and any other product or service incorporating, copying, or imitating the Southwest Mark or any other brand element of Southwest, or sold under the infringing mark, and such sum in addition thereto as the Court shall find just.

C.  That this case be found exceptional and Southwest be awarded its attorneys' fees pursuant to 15 U.S.C. § 1117(a) and/or other applicable law.

D.  That Southwest recover the damages arising out of the Defendant's wrongful acts in a sum equal to three times the actual damages suffered by Southwest, as provided in 15 U.S.C. § 1117(b) and/or other applicable law.

E.  That Defendant be required to disgorge his profits and other ill-gotten gains pursuant to 15 U.S.C. § 1117(a) and other applicable law.

F.  That Southwest have and recover the taxable costs of this civil action, including reasonable attorneys' fees and costs, and interest.

G. That Southwest be awarded punitive or exemplary damages in view of Defendant's reckless, willful, and wanton acts committed with conscious disregard for the rights of Southwest.

H. That Southwest have such other general and further relief as this Court deems just and proper.

## JURY DEMAND

Southwest hereby demands a trial by jury as to all issues so triable.

Respectfully Submitted this June 14, 2023,

SOUTHWEST ACTORS CONFERENCE, LLC

By Counsel

*/s/Kennington R. Groff*
Kennington R. Groff
GA Bar No.: 782901
Zachary C. Eyster
GA Bar No.: 192335
Melanie Lane
GA Bar No.: 831941

BEKIARES ELIEZER, LLP
2870 Peachtree Rd. #512
Atlanta GA 30305
Telephone: 404.537.3686
kgroff@founderslegal.com
zeyster@founderslegal.com
mlane@legalfounders.com