## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **FRANK OSTEAN AND CLARA OSTEAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| **v.** | ) | |
| | ) | |
| **SAFECO INSURANCE COMPANY OF OF INDIANA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## DEFENDANT SAFECO INSURANCE COMPANY OF INDIANA'S NOTICE OF REMOVAL

COMES NOW Safeco Insurance Company of Indiana (hereafter "Safeco"), and files its Notice of Removal pursuant to Fed. R. Civ. P. 81(c) and 28 U.S.C. §§ 1441 and 1446(a) and (b).

1.

The Plaintiffs have filed a civil action against Safeco in the Superior Court of Gwinnett County, Georgia, Civil Action File No. 23-A-04316-1, (the "underlying action") which is located within the Atlanta Division of the United States District Court for the Northern District of Georgia.  See 28 U.S.C. § 90(a)(2).

2.

The Plaintiffs filed their Complaint in the underlying action on or about May 18, 2023.  (Exhibit "A", Complaint.)  The Summons and Complaint was served on Safeco on or about May 19, 2023.  (Id.)

3.

In their Complaint, Plaintiffs allege that they "are adult resident citizens of Cobb County, Georgia."  (Ex. A, Complaint, ¶ 4.)  Plaintiffs further allege that their cause of action arises out of damage to their property located at 126 Holland Street NW, Marietta, GA 30064 (the "Insured Location" or the "Property").  (Id. at ¶ 7.) The Plaintiffs are citizens of the State of Georgia.

4.

Safeco is an insurance company organized and existing under the laws of the State of Indiana, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts, 02116. There is no evidence that either Plaintiff is a citizen of either Indiana or Massachusetts.

5.

Therefore, at the time of removal, the Complaint asserts claims by two citizens of the State of Georgia against only a non-citizen Defendant, Safeco, and there is complete diversity of citizenship.

6.

In their Complaint, Plaintiffs' claim they are entitled to recover a judgment in amount of not less than $201,517.93.  (Complaint, Prayer for Relief, ¶ (i).)

7.

This is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332 based on complete diversity of citizenship among the parties and which may be removed to this Court pursuant to 28 U.S.C. § 1441.

8.

This Notice of Removal is filed within thirty (30) days of the date of service of the Complaint on Safeco.

9.

Defendant attaches as Exhibit "A" to this original pleading only, the entire record in the Superior Court of Gwinnett County, Georgia action.

10.

The undersigned has read this Notice of Removal, and to the best of the undersigned's knowledge, information and belief, formed after reasonable inquiry, it is well-grounded in fact and is warranted by existing law, and it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

WHEREFORE, Defendant hereby removes this action to the United States District Court for the Northern District of Georgia, Atlanta Division.

Respectfully submitted this 15th day of June 2023.

ISENBERG & HEWITT, P.C.

/s/ Hilary W. Hunter
Hilary W. Hunter
Georgia Bar No. 742696
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
(770) 351-4400 Telephone
hilary@isenberg-hewitt.com
**Attorney for Defendant**
**Safeco Insurance Company of Indiana**

## **LOCAL RULE 7.1 CERTIFICATE**

The undersigned counsel hereby certifies that this pleading was prepared with one of the font and point selections approved by the Court in L.R. 5.1.C. Specifically, Times New Roman was used in 14 point.

ISENBERG & HEWITT, P.C.

/s/ Hilary W. Hunter
Hilary W. Hunter
Georgia Bar No. 742696
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
(770) 351-4400 Telephone
(770) 828-0100 Facsimile
**Attorney for Defendant**
**Liberty Mutual Insurance Company**

# EXHIBIT A

E-FILED IN OFFICE - NL
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-04316-1
5/18/2023 5:39 PM
TIANA P. GARNER, CLERK

### IN THE SUPERIOR COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

**Frank Ostean and**

**Clara Ostean**

_____

23-A-04316-1

CIVIL ACTION
NUMBER:_____

PLAINTIFF

VS.

**Safeco Insurance**

**Company of Indiana**

_____

DEFENDANT

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Gregory O. Shenton
Shenton Law, P.C.
540 Powder Springs Street, Suite E-32
Marietta, GA 30064**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

19th day of May, 2023

This _____ day of _____, 20_____.

Tiana P. Garner
Clerk of Superior Court

By _____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - NL
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-04316-1
5/18/2023 5:39 PM
TIANA P. GARNER, CLERK

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of Gwinnett Superior Court _____ County

---

**For Clerk Use Only**

Date Filed _____                  Case Number 23-A-04316-1
                MM-DD-YYYY                     Case Number _____

---

| **Plaintiff(s)** | | | | | **Defendant(s)** | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Ostean, Frank | | | | | Safeco Insurance Company of Indiana | | | | |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| Ostean, Clara | | | | | | | | | |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |

**Plaintiff's Attorney** Gregory Shenton _____ **State Bar Number** 640943 _____ **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☒ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**
- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____                  _____
    **Case Number**                      **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

E-FILED IN OFFICE - NL
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-04316-1
5/18/2023 5:39 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

FRANK OSTEAN AND CLARA OSTEAN,                )
                                             )
    Plaintiffs,                           ) CIVIL ACTION FILE NO.
                                             )   23-A-04316-1
    v.                                    ) _____
                                             )
SAFECO INSURANCE COMPANY OF INDIANA,         )
                                             )
    Defendant.                            )

### VERIFIED COMPLAINT

Plaintiffs Frank Ostean ("Mr. Ostean") and Clara Ostean ("Ms. Ostean"; collectively, "Plaintiffs" or the "Osteans") file this Verified Complaint against Defendant Safeco Insurance Company of Indiana ("Defendant" or "Safeco") alleging cause of actions for declaratory judgment, breach of contract, and attorneys' fees under Georgia law.

### JURISDICTION AND VENUE

1.

This Court has subject matter jurisdiction pursuant to Article VI §4 of the Georgia Constitution.

2.

Venue is proper within the Superior Court of Gwinnett County County pursuant to Article VI §2 because such action shall be brought in the county in which any defendant resides.

3.

Defendant is subject to the personal jurisdiction of this Court.

## PARTIES

### 4.

Plaintiffs Frank Ostean and Clara Ostean are and were, at all relevant times, citizens of the United States and residents of the State of Georgia, Cobb County.

### 5.

Defendant Safeco is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts. Safeco is registered with the Georgia Secretary of State to conduct business in the State of Georgia and may be served with process through its registered agent, Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

## FACTS

### 6.

Safeco issued that certain policy of insurance bearing number OF2091553 (the "Policy") to Mr. Ostean on or about June 16, 2020 for the policy period from July 26, 2020 to July 26, 2021. A true and correct copy of the Policy is attached hereto as Exhibit A.

### 7.

The real property and improvements constituting the "Insured Location" under the Policy were those real property and improvements located at 126 Holland Street NW, Marietta, GA 30064 (the "Property").

### 8.

By virtue of Ms. Ostean being Mr. Ostean's wife at the time the Policy was issued and under the "Policy Definitions" portion of the Policy, the words "you" and "your" throughout the Policy referred to Ms. Ostean as well as Mr. Ostean.

2

9.

On June 20, 2021 (the "Date of Loss"), a significant portion of a large tree fell on the house (the "Home") located on the Property (the "Incident").

10.

The Incident constitutes an "occurrence" under the Policy.

11.

The Incident is a covered loss under the Policy.

12.

Safeco has acknowledged coverage for the Incident under the Policy.

13.

In fact, Safeco alleges to have paid out One Hundred Forty-Three Thousand, Four Hundred Sixty Dollars and Sixty-Eight Cents ($143,460.68) (the "Payments") as of February 1, 2023 related to the Incident.

14.

Only $121,001.68 of the Payments, however, have been paid to the Osteans for the repairs to the Home.

15.

On or shortly after the Date of Loss, Safeco contacted All Restoration Solutions, LLC ("ARS") to perform work (the "Work") to repair the Home as a result of the Incident.

16.

At all times relevant to this action, ARS was required to obtain Safeco's approval prior to performing any Work on the Property which was covered under the Policy.

3

17.

At all times relevant to this action, Safeco directed and controlled ARS's Work on the Property which was covered under the Policy

18.

Safeco informed the Osteans that the Osteans would not be privy to much of the documentation and communications between Safeco and ARS and would have to specifically request access to or copies of such documents or communications from Safeco.

19.

On or about August 3, 2021, ARS provided Safeco with an estimate (the "2001 Estimate") for its Work on the Property

20.

The 2021 Estimate was provided to Safeco by ARS in a format required by Safeco.

21.

The 2021 Estimate was in the amount of $134,080.09 before depreciation.

22.

The 2021 Estimate was in the amount of $133,580.09 after the Osteans' $500.00 deductible was deducted if depreciation was recovered.

23.

The 2021 Estimate was in the amount of $121,001.68 after the Osteans' $500.00 deductible was deducted if depreciation was not recovered.

24.

ARS's Work was deficient and/or defective in a number of ways.

4

25.

At one point, Safeco approved of ARS's removal as contractor for the Work to be replaced with another contractor (the "Replacement Contractor").

26.

The Replacement Contractor, however, abandoned the Work.

27.

When the Replacement Contractor abandoned the Work, Safeco directed that ARS be re-engaged to complete the Work.

28.

As ARS completed the work, ARS requested Safeco's approval of additional work (the "Supplemental Work") to be performed at the Property and covered by the Policy.

29.

Safeco approved of the Supplemental Work.

30.

On November 14, 2022, ARS produced an amended estimate (the "2022 Estimate") to include the Supplemental Work.

31.

The 2022 Estimate was provided to Safeco by ARS in a format required by Safeco.

32.

The 2022 Estimate was in the amount of $247,158.86 before depreciation.

33.

The 2022 Estimate was in the amount of $246,658.86 after the Osteans' $500.00 deductible was deducted if depreciation was recovered.

5

34.

The 2022 Estimate was in the amount of $240,487.30 after the Osteans' $500.00 deductible was deducted if depreciation was not recovered.

35.

All of the Work and the Supplemental Work was performed by ARS with Safeco's approval.

36.

A vast majority of the Work and the Supplemental Work was performed by ARS prior to ARS providing the 2022 Estimate.

37.

The 2022 Estimate was, for all intents and purposes, an invoice rather than an estimate.

38.

The Osteans had no control over the Work or the Supplemental Work.

39.

Safeco controlled and directed the Work and the Supplemental Work performed by ARS.

40.

Despite the fact that the 2021 Estimate and the 2022 Estimate stated that a metal roof, which was the roof that was on the Home prior to the Incident, would be installed on the Home, ARS installed a less expensive shingle roof on the home.

41.

Despite having received the 2022 Estimate in November 2022, Safeco has yet to approve or disapprove of the 2022 Estimate.

6

42.

As such, Safeco has refused to pay either the Osteans or ARS for the Supplemental Work.

43.

Presumably as a result of Safeco refusing to pay ARS for the Supplemental Work, All Restoration Solutions, Inc. recorded a Claim of Lien against the Property in the amount of $129,684.93 plus interest.

44.

The Osteans have demanded (the "Demand") that Safeco defend and indemnify the Osteans against the Lien. A true and correct copy of the Demand is attached hereto as Exhibit B.

45.

As of the execution of the Verification to this Complaint and/or the filing of this Complaint, Safeco has not responded to the Demand.

46.

Safeco has not made any payments to the Osteans or ARS for the claim arising from the covered Incident since May 2022.

47.

The Osteans dispute the validity of the 2022 Estimate and validity of the Lien.

48.

The cost to repair ARS's defective Work and Supplemental Work and to complete the Work and Supplemental Work that ARS failed to perform is $36,980.00.

49.

As a result of the Incident, the Home was uninhabitable.

7

50.

The Policy provides for coverage for Additional Living Expenses for two (2) years in circumstances such as those suffered by the Osteans.

51.

After considering the Osteans' alternative living arrangements necessitated by the Incident, Safeco agreed to pay the Osteans Two Thousand Dollars ($2,000.00) per month (the "Expenses") for as long as the Osteans' were unable to live in the Home.

52.

As of May 18, 2023, the Work and Supplemental Work on the Home remains incomplete, and the Osteans have not been able to live in the Home.

53.

Despite their agreement, Safeco only paid the Osteans the Expenses through May 2022 and then, without explanation to the Osteans, stopped paying the Expenses in the amount of $2,000.00 per month.

54.

The Policy also provides coverage for the moving and storage of the Osteans' personal property from the Home as required by the Work and/or Supplemental Work.

55.

While Safeco has paid a portion of the moving expenses, Safeco has failed and refused to pay the Osteans $4,264.00 in storage expenses incurred.

56.

The Policy also provides coverage for personal property belonging to the Osteans damaged by the Incident.

8

57.

Safeco has failed and refused to pay the Osteans $4,589.00 in damaged personal property.

58.

All conditions precedent to the Osteans bringing this action have been performed by the Osteans, satisfied, or waived, including the Osteans' compliance with the Policy.

## COUNT I

## BREACH OF CONTRACT

59.

Plaintiffs restate and incorporate the allegations of paragraphs 1 to 58 as if fully recited and set forth herein.

60.

Plaintiffs and Defendant are parties (or third-party beneficiaries such that one or both Plaintiffs have standing) to a contract—the Policy.

61.

Defendant has breached the Policy by failing to pay Plaintiffs and/or ARS for the Work and Supplemental Work performed by ARS.

62.

Defendant has breached the Policy by failing and refusing to repair the Osteans' Home to its condition prior to the Incident.

63.

Specifically, Defendant has breached the Policy by failing and refusing to pay Plaintiffs for the difference between the roof on the Home and the installed shingle roof.

9

64.

Defendant has breached the Policy by failing and refusing to pay the Osteans for their loss, less the Policy's deductible, as a result of the Incident.

65.

Defendant has breached the Policy by engaging a contractor that performed defective and/or negligent work on the Osteans' Property and by failing and refusing to correct such defective and/or negligent work.

66.

Defendant has breached the Policy by failing to pay Plaintiffs for the storage fees incurred for Plaintiffs' personal property.

67.

Defendant has breached the Policy by failing to pay Plaintiffs for personal property damaged as a result of the Incident.

68.

As a direct and proximate result of Defendant's breaches of the Policy, Plaintiffs have been damaged in an amount to be determined by the enlightened conscience of a jury, but not less than $201,517.93.

69.

Plaintiffs issued a Demand to Defendant for payment of the Damages, but Defendant has not paid Plaintiffs for the Damages.

10

70.

Through its actions and inactions, Defendant has acted in bad faith, been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense, thereby entitling Plaintiffs to an award of attorneys' fees and expenses of litigation pursuant to O.C.G.A. sections 13-1-11, 13-6-11, and/or 9-15-14.

## COUNT II

## DECLARATORY JUDGMENT

71.

Plaintiffs restate and incorporate the allegations of paragraphs 1 to 70 as if fully recited and set forth herein.

72.

An "actual controversy" exists between Plaintiffs and Defendant regarding the rights and obligations of Plaintiffs and Defendant under the Policy—specifically the rights of Plaintiffs to payment for its damages suffered and the defense and indemnity against the Lien and the obligations of Defendant to make such payments and provide such a defense and indemnity.

73.

Plaintiffs are entitled to a declaration by this Court as to the rights of Plaintiffs to payment for its damages suffered and the defense and indemnity against the Lien and the obligations of Defendant to make such payments and provide such a defense and indemnity.

74.

Defendant has acted in bad faith, been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense, thereby entitling Plaintiffs to an award of attorneys' fees and expenses of litigation pursuant to O.C.G.A. sections 13-1-11, 13-6-11, and/or 9-15-14.

11

## COUNT III

### ATTORNEYS' FEES PURSUANT TO O.C.G.A. SECTION 13-6-11

75.

Plaintiffs restate and incorporate the allegations of paragraphs 1 to 74 as if fully recited and set forth herein.

76.

Defendant is liable to Plaintiffs on the claims set forth above.

77.

Defendant has acted in bad faith, been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense, thereby entitling Plaintiffs to an award of attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

### PRAYER FOR RELIEF

For these reasons set forth above, Plaintiffs pray for the following relief:

i.  That, pursuant to Count I, the Court award a judgment in Plaintiffs' favor against Defendant in an amount to be determined by the enlightened conscience of a jury, but not less than Two Hundred One Thousand, Five Hundred Seventeen Dollars and Ninety-Three Cents ($201,517.93);

ii.  That, pursuant to Count II, the Court declare Plaintiffs' the rights of Plaintiffs to payment for its damages suffered and the defense and indemnity against the Lien and the obligations of Defendant to make such payments and provide such a defense and indemnity;

iii.  That, pursuant to all counts and Count III specifically, the Court order payment to Plaintiffs their reasonable attorneys 'fees, expenses, and the costs of litigation incurred

12

in this action pursuant to O.C.G.A § 9-15-14 and/or O.C.G.A. § 13-1-11 and/or

O.C.G.A § 13-6-11; and

iv.   The court order such other and further legal and/or equitable relief as the Court deems

just and proper.

### JURY TRIAL DEMANDED

Respectfully submitted,

**Shenton Law, P.C.**

Gregory O. Shenton
Georgia Bar Number 640943

540 Powder Springs Street, Suite 32-E
Marietta, Georgia 30064
greg@shentonlawfirm.com
678-290-6530 (phone)
678-290-6531 (fax)

13

··· REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ···

**Safeco Insurance™**

A Liberty Mutual Company

HAMBY & ALOISIO INC
53 PERIMETER CTR E STE 400
ATLANTA       GA   30346-2204

June 16, 2020

Policy Number: OF2091553

24-Hour Claims: 1-800-332-3226

Policy Service: (770) 551-3270

Online Account Services: www.safeco.com

**THIS IS NOT A BILL.**

FRANK OSTEAN
126 HOLLAND ST NW
MARIETTA GA  30064-2242

Thank you for allowing us to continue serving your home insurance needs.  We appreciate your business and the trust that you have placed in us.

This renewal reflects adjustments to your dwelling, other structures, and personal property limits. We have adjusted your dwelling coverage limit to reflect increases in labor and materials costs in your area.  As part of your responsibility to maintain adequate amounts of insurance, please contact your agent to ensure that your limits reflect your dwelling's current features and characteristics,  particularly if you have remodeled recently.

Your other structures and personal property limits, which are based on your dwelling coverage, have also been adjusted.  You should review whether your coverage is adequate at least annually, and after each significant personal property purchase.  If you would like to change your limits, or schedule any of your high value items, please contact your agent.

With this renewal the following changes were made, including those requested by you or your agent or broker:

- Your Dwelling Limits (Coverage A) changed from $311,900 to $317,600.  Other coverage limits
  listed below also changed since they are factors of your dwelling limits.
- Your Other Structure Limits (Coverage B) changed from $31,190 to $31,760.
- Your Personal Property Limits (Coverage C) changed from $155,950 to $158,800.
- Your Additional Living Expense (Coverage D) changed from $62,380 to $63,520.

We would also like to draw your attention to the following:

• Your new policy period begins July 26, 2020.  The 12-month premium for this policy is $1,715.00 for the July 26, 2020 to July 26, 2021 policy term.

• This is not a bill.  Your bill will be sent in a separate mailing approximately 25 days before it is due.  It will provide an explanation of any money owed, your payment options with applicable fees and your payment due date.

**PLEASE SEE REVERSE**
**SAFECO INSURANCE COMPANY OF INDIANA**
P O BOX 515097, LOS ANGELES, CA 90051

OC-429/EP  10/13

EXHIBIT

*A*

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

Your renewal premium is $1,715.00.   We have sent a bill for this amount to your mortgage servicing company.

If you have any questions or wish to make any changes to your policy, you can do so by calling your agent at (770) 551-3270.

We appreciate the opportunity to serve you.   Thank you.

Tyler Asher
President, Safeco Insurance

CC-430/EP 5/98
Q1

— REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS —

# Ask yourself: Do you have enough insurance coverage?

**How much would it take to reconstruct your home?**

Surprisingly, it has been estimated that 58% of American homes are underinsured by an average of 21%*. Make sure yours isn't one of them.

Each home is unique. You know your home best. It's your responsibility to make sure you're "fully insured" and "insured to value." That means you need to have enough insurance coverage to rebuild your home and replace all of your personal belongings in the event of total loss.

How can you determine your needs? Ask yourself the questions below. If you need help answering them, call your agent and discuss your insurance needs with them.

They will assist you in determining how much insurance would be needed to fully protect your home and belongings.

**How much would it take to reconstruct your home at today's prices:**
Things to consider:
- Your home's age (older homes tend to be more expensive to reconstruct) and style (contemporary, colonial, ranch, etc.)
- Features — fireplaces, cabinetry, built-in features, vaulted ceilings
- Flooring — hardwood, tile, natural stone, carpeting
- Finishes — crown molding, window and floor trim, faux paint, wall paper, wainscoting, chair rails, staircases, etc.
- Recent improvements you may have made (remodeled bathroom or kitchen, recessed lighting, built-in cabinets)
- A basement you may have finished or a room you may have added

**How much is enough to replace the structures surrounding your home at today's prices?**
Things to consider:
- Your fence, detached garage, gazebo, barn or storage shed
- If you have an in-ground swimming pool or just repaved your driveway or sidewalk

**What would it take to replace your personal belongings at today's prices?**
Things to consider:
- All your basics (furniture, rugs, linens, kitchenware, tools) and every electronic gadget
- Your entire wardrobe, your jewelry, medicines and personal effects
- Have you made any big purchases lately?
- If you have a garage full of tools, are passionate about the latest gadgets or collect just about anything, you should seriously consider getting more personal belongings coverage than the standard policy provides.

© 2008 Marshall & Swift / Boeckh, LLC and its licensors. All rights reserved. Used with permission.

— REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS. —

## Let's make sure you're "fully insured."

Your agent uses replacement cost estimation tools to establish a starting point for your insurance coverage. But you know your home best. And we look to you to give your agent the most complete, up-to-date information in order to protect your home and lifestyle. Here are two quick things you can do today:

1. **Look critically at your coverage statement page (also known as the policy declarations page,** which comes after the opening letter in this package). Do you believe you have enough Coverage A? (This is the amount you'd get for reconstruction of an as-close-as-possible replica of your home in the event of total loss.) If you're not sure, call your agent for help.

2. **Take inventory.** Compare the value of your personal belongings to the Coverage C amount on your coverage statement page. Safeco has created a form that can help you get started. You'll find it at **Safeco.com/homeinventory.**

**It's important to know: your home's market value is totally different from what it would cost to reconstruct.** Today's market value reflects economic conditions, taxes, school districts, the market value of land and many other factors that have nothing to do with how much it would cost to reconstruct your home from scratch.

Reconstruction cost — the amount needed to get you back home quickly — is based almost exclusively on the cost of materials and labor as well as demand for contractor services. In the event of total loss, a properly insured Safeco policyholder can rebuild with the same quality of materials and workmanship in their current home (unless a functional replacement cost policy was deliberately selected). Of course, we hope you'll never need these services. But we'll all sleep better knowing you're fully insured.

Thank you for trusting Safeco with your home insurance needs.

— REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS —

 **Insurance.™**

A Liberty Mutual Company

## NOTICE OF INFORMATION PRACTICES

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information" or "information") and we value you as a customer.

To learn more about how we collect and use information about you, please read the following notice.

### OUR SOURCES OF INFORMATION ABOUT YOU

Most of the information we obtain comes directly from you and your independent insurance producer. Your application gives us information we need to review your request, such as your name, address and Social Security Number.

We may also ask for information from other outside sources, including:

- Your transactions with our affiliates or other insurance companies (such as your payment history or claims history); and/or,
- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record, claims history or verification of the value and condition of your property).

Insurance support organizations from which we obtain information may keep such information and disclose it to others as permitted by law.

If we obtain medical information about you, it is generally received in connection with the administration or management of your insurance policy or claim or for the detection and prevention of fraud. We will not share your medical information with our affiliates or non-affiliates for marketing purposes.

It is our policy to treat information we receive about you in the same confidential way we treat information that you have provided to us on your application. The same confidentiality applies to information about our former customers.

### OUR USE OF INFORMATION ABOUT YOU

We only disclose personal information about you as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. We require these parties to use your personal data only for the reasons we gave it to them. These third parties may include:

- Insurance support organizations, consumer reporting agencies or other insurance companies (including for the detection and prevention of fraud);
- Independent insurance producers authorized to sell Safeco insurance products;
- Independent contractors (such as automobile repair facilities, towing companies, property inspectors and independent claims representatives);
- Auditors, attorneys, courts and government agencies;
- Other companies which may reinsure your policy or with which you have other coverage;
- Group policyholders in connection with reporting claims data or an audit; and/or,
- Other companies and insurance support organizations for actuarial or research studies.

We may also disclose your personal information to other financial institutions with which we have joint marketing agreements for products offered by Safeco and in response to judicial orders such as subpoenas.

We may also share information about our transactions (such as payment history) and experiences (such as claims made) with you within our Safeco family of companies.

We do not sell your personal information to others and we do not provide your information to third parties who are doing business on our behalf for their own marketing purposes.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

## PROTECTING YOUR INFORMATION FROM UNAUTHORIZED ACCESS

We maintain physical, electronic and administrative safeguards to protect your information from unauthorized access. Our employees are authorized to access customer information only for legitimate business purposes.

### INDEPENDENT SAFECO INSURANCE AGENTS

The independent insurance producers authorized to sell Safeco products are not Safeco employees and are not subject to Safeco's privacy policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco producer to learn more about their privacy practices.

### HOW YOU CAN REVIEW YOUR INFORMATION

You can request a copy of the information about you in our files to review it for accuracy. You must make your request in writing. Within 30 business days (or as required by law) of receiving your request, we will send you the information. We will advise you of any person or group to whom we have given the information during the last two years. We will also give you the name and address of any reporting organization from which we received information about you.

There are certain types of information, such as information collected when we evaluate a claim or when the possibility of a lawsuit exists, that we are not required to provide you. We obtain medical information about you only in connection with claims and lawsuits. If the law allows you to review such information in our files, we will include it with the other information we send to you.

### IF YOU DISAGREE WITH OUR RECORDS

If you believe information in our files is wrong, you can notify us in writing. We will review your file within 30 business days of receiving your notice. If we agree with you, we will amend our records and notify you about the change. This change will become part of the file. It will be included in any future disclosures to others and will be sent to:

- Anyone you designate who may have received the information during the previous two years.
- Any person or organization who may have received the information from us during the previous seven years.
- Insurance support organizations that provided the information that was amended or changed pursuant to your request.

If we disagree with you, we will explain why. You can provide us with a written statement explaining why you believe the information is wrong. This statement will become part of the file and will be included in any future disclosures of the disputed subject matter. Your statement will also be sent to the persons listed above.

### SAFECO'S WEB SITE

If you have Internet access and want to learn more about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

**This Privacy Statement applies to the following members of the Safeco family of companies:**

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco National Insurance Company**
**Safeco Surplus Lines Insurance Company**

(For mailing address, please contact your agent of the nearest local Safeco office.)

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

## Safeco Insurance™
A Liberty Mutual Company

### SAFECO INSURANCE COMPANY OF INDIANA
Home Office: 350 East 96th St, Indianapolis, IN 46240 (A stock insurance company.)

### HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER:**
OF2091553

**POLICY PERIOD: FROM:** JULY 26, 2020 12:01 A.M.
**TO:** JULY 26, 2021 12:01 A.M.

**NAMED INSURED AND MAILING ADDRESS:**
FRANK OSTEAN
126 HOLLAND ST NW
MARIETTA GA 30064-2242

**AGENT:**
HAMBY & ALOISIO INC
53 PERIMETER CTR E STE 400
ATLANTA      GA   30346-2204

Valued Homeowners Customer Since: APR. 29, 2011

**INSURED LOCATION:**
Same

**POLICY SERVICE INFORMATION:**
TELEPHONE:  (770) 551-3270
E-MAIL:   INFO@HAINS.COM
WEBSITE:  www.hains.com

---

### IMPORTANT MESSAGES

- Your policy has renewed effective July 26, 2020.

### LIMITS OF LIABILITY
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $317,600 | $31,760 | $158,800 | $63,520 | $300,000 | $5,000 |

**DEDUCTIBLES.**
The following deductibles apply unless otherwise stated within the policy.

|  | AMOUNT |
|---|---|
| Section I - Property Coverages | $      500 |

|  | PREMIUM |
|---|---|
| BASIC COVERAGES | $   1,944.00 |
| OTHER COVERAGES, LIMITS AND OPTIONAL COVERAGES | $     200.00 |
| DISCOUNTS AND SURCHARGES | $    -429.00 |

| TOTAL POLICY PREMIUM: | $   1,715.00 |
|---|---|

**Premium Payer:**  Servicing Mortgagee

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay. Installment fees for all other billing plans
are listed below. If more than one policy is billed on the installment bill, only
the highest fee is charged. The fee is:
   $0.00 per installment for recurring automatic deduction (EFT)
   $0.00 per installment for recurring credit card or debit card
   $5.00 per installment for all other payment methods

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

## SAFECO INSURANCE COMPANY OF INDIANA
## HOMEOWNERS POLICY DECLARATIONS

|  |  |  |
|---|---|---|
| CONTINUED | **POLICY NUMBER:** | OF2091553 |

Servicing Mortgagee
  US BANK NA ISAOA
  C/O US BANK HOME MORTGAGE
  PO BOX 961045
  FORT WORTH TX  76161-0045
  LOAN NUMBER:  6800060529

**POLICY LIMITS AND OTHER ADDITIONAL COVERAGES**
(Unless otherwise stated, all limits and coverages are included in basic coverages)
   **COVERAGE LEVEL: OPTIMUM**
SECTION I - PROPERTY COVERAGES
COVERAGE C - PERSONAL PROPERTY - 3. SPECIAL LIMITS OF LIABILITY

| | | | | |
|---|---|---|---|---|
| a.Money, pre-paid cards... | $  1,000 | h.Business Property | | |
| b.Rare coins and currency... | $  5,000 |   On Premises... | $  3,000 | |
| c.Securities, debit cards... | $  5,000 |   Off Premises Sub-limit | $  1,000 | |
| d.Watercraft... | $  3,000 | i.Tapes, records, discs... | $    500 | |
| e.Trailers... | $  3,000 | j.Theft of rugs... | $ 10,000 | |
| f.Theft of jewelry, watches... | $  5,000 | k.Grave Markers... | $  5,000 | |
| g.Theft of silverware... | $  5,000 | | | |

| OTHER INCLUDED COVERAGES/POLICY PROVISIONS | | Limit | Premium |
|---|---|---|---|
| Loss Assessment Coverage | $ | 5,000 | Included |
| Building Ordinance or Law Coverage ( 10%) | $ | 31,760 | Included |
| Refrigerated Spoilage Coverage | | | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $ | 10,000 | Included |
| Reasonable Repairs | $ | 5,000 | Included |
| Fire Department Service Charge | $ | 5,000 | Included |
| Land Stabilization | $ | 10,000 | Included |
| Arson Reward | $ | 25,000 | Included |
| Criminal Conviction Reward - Item a. Information | $ | 2,500 | Included |
| Criminal Conviction Reward - Item b. Property Recovery | $ | 5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $ | 5,000 | Included |
| Volunteer America | | | Included |
|    Section I (All Perils Coverage) | | | Included |
|    Section II - Liability Coverage | | | Included |
|    Section II - Property Damage | $ | 2,000 | Included |

| OPTIONAL COVERAGES | Limit | | Premium |
|---|---|---|---|
| Personal Property Replacement Cost | | | Included |
| Escape of Water from Sump (Building/Contents) | $   5,000 | $ | 30.00 |
| Special Personal Property Coverage | | $ | 152.00 |
| Additional Dwelling Liability | | $ | 18.00 |
|    (1 dwelling owned and occupied by insured) | | | |

| DISCOUNTS AND SURCHARGES | | Premium |
|---|---|---|
| Package Auto Discount | $ | -429.00 |

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

**FORMS APPLICABLE TO THIS POLICY:**

| | |
|---|---|
| HOM-7301/EP 1/09 | - PERSONAL PROPERTY REPLACEMENT COST |
| HOM-7308/EP 1/09 | - SPECIAL PERSONAL PROPERTY COVERAGE |
| HOM-7311/EP 1/09 | - ESCAPE OF WATER FROM SUMP/SUMP PUMP DRAIN (BLDG AND CONT) |
| HOM-7030/EP R2 1/09 | - HOMEOWNERS POLICY |
| HOM-7220/EP 1/12 | - SAFECO OPTIMUM HOMEOWNERS COVERAGE |
| HOM-7232/EP 1/09 | - EXECUTION CLAUSE |
| HOM-7100/GAEP 9/19 | - SPECIAL PROVISIONS - GEORGIA |

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

# SPECIAL PROVISIONS — GEORGIA

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

Item 5. is deleted and replaced with:

5.  continuous or repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years unless such seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all insureds and is hidden within the walls or ceilings or beneath the floors or above the ceiling of a structure.

Item 6.f. is deleted and replaced by the following:

f.  birds, vermin, rodents or domestic animals except for breakage of glass;

Item 7. Pollution or Contamination is deleted and replaced by:

7.  Pollution or Contamination, meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants or contaminants* at any time. This exclusion does not apply to loss that is sudden or accidental or as provided by **Additional Property Coverages — Household Products Coverage under Section I — Property Coverages**.

Item 15. Intentional Loss is deleted and replaced by the following:

15.  Intentional Loss, meaning any loss arising out of any act an *insured* or any person or organization named as an additional *insured* commits or conspires to commit with the intent to cause a loss.

a.  In the event of such loss, neither the *insured* nor any such person or organization is entitled to coverage, even those who did not commit or conspire to commit the act causing the loss.

b.  However, this exclusion will not apply to deny payment to an innocent co-*insured* victim of family violence if the loss:

(1)  arose out of family violence or sexual assault; and

(2)  is caused by the intentional act of an *insured* against whom a family violence or sexual assault complaint is brought for the act causing the loss.

c.  If we pay a claim pursuant to Paragraph 15.b., our payment to the innocent co-*insured* is limited to that *insured's* insurable interest in the property. In no event will we pay more than the limit of liability.

---

### ADDITIONAL PROPERTY COVERAGES

Under Item 1. Debris Removal, the second paragraph is deleted and replaced by the following:

We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the *residence premises*, provided the tree(s):

a.  damage Building Property We Cover; or

b.  does not damage Building Property We Cover, but:

(1)  block(s) a driveway on the *residence premises* which prevent(s) a motor vehicle, that is registered for use on public roads or property, from entering or leaving the *residence premises;* or

(2)  block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

## ADDITIONAL PROPERTY COVERAGES

Under item 7. **Building Ordinance or Law Coverage** the following changes are made:

Item b. is deleted and replaced by the following:

> **b.** the costs to comply with any ordinance which requires any insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants*. However, for purposes of **Building Ordinance or Law Coverage**, *pollutants or contaminants* shall not include asbestos or materials containing asbestos or lead.

The following is added to the paragraph describing limit of liability:

In the event of a covered loss resulting from an Insurance Services Offices® declared catastrophe for the state in which the *residence premises* is located, the limit for Building Ordinance or Law shall be up to twice the percentage shown for Building Ordinance or Law on the Policy Declarations.

Item 10. **Fungi, Wet or Dry Rot, or Bacteria** is deleted and replaced by the following:

10. **Fungi, Wet or Dry Rot, or Bacteria.** In the event a covered cause of loss results in damage to covered property by **Fungi, Wet or Dry Rot, or Bacteria,** we cover:

> **a.** the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria including the cost to remove *fungi,* wet or dry rot, or bacteria from covered property, the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

> **b.** consequential loss up to the **Fungi, Wet or Dry Rot, or Bacteria** Remediation limit of liability as stated in the Policy Declarations for:

> > **(1)** the cost of any testing of air or property to confirm the absence, presence or level of *fungi,* wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi,* wet or dry rot, or bacteria;

> > **(2)** the cost to treat, contain, remove or dispose of or remediate covered property beyond that which is required to repair or replace the covered property physically damaged by a peril insured against; and

> > **(3)** **Coverage D — Additional Living Expenses or Loss of Use.**

> The limit of liability shown in the declarations for **Fungi, Wet or Dry Rot, or Bacteria** is the most we will pay for the sum of all loss under **10.b.,** above.

> **c.** This coverage only applies when such loss or costs:

> > **(1)** are a result of a loss we cover that occurs during the policy period;

> > **(2)** are not excluded under **Building Property Losses We Do Not Cover;** and

> > **(3)** only if all reasonable means are used to save and preserve the property from further damage.

> This coverage does not apply to loss to trees, shrubs, or other plants.

Under item 11. **Collapse** the following changes are made:

Item 11.a.(1) is deleted and replaced by the following:

> **(1)** Collapse means:

> > **(a)** an abrupt falling down or caving in of a building or any part of a building; or

> > **(b)** any part of the interior of the dwelling separates from another part of the interior of the dwelling, with the result that the building or part of the building cannot be occupied for its current intended purpose.

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

Item **14. Mortgage Acquisition Expense Coverage** is added as follows (this is item **16.** for the **New Quality-Plus** coverage level; item **18.** for the **Optimum** and **Ultra** coverage levels):

**14. Mortgage Acquisition Expense Coverage.** In the event of a total loss of the dwelling shown in the Policy Declarations by a covered cause of loss, we will pay necessary expenses and fees toward the acquisition of a new first mortgage to repair or replace the insured dwelling, up to a maximum of $5000.

No deductible applies to this coverage.

This is an additional amount of insurance.

This coverage **14. Mortgage Acquisition Expense Coverage** does not apply to policies endorsed with **HOM-7428/GAEP 1/13, Ultra Plus/Special Ultra Plus Coverage.**

## BUILDING PROPERTY LOSSES WE DO NOT COVER

The following is added:

**21. Cosmetic loss or damage,** meaning any loss that is limited to the physical appearance of a metal roof surface.

Metal roof means all metal roofing materials on a metal roofing system. For purposes of this exclusion, metal roof does not include the coverings of bay or bow windows. This exclusion does not apply when the roof overlay is a material other than metal.

This exclusion does not apply to policies endorsed with **HOM-7220, Optimum Homeowners Coverage.**

## SECTION I — PROPERTY CONDITIONS

Under **5. Loss Settlement,** item a.(3) is deleted and replaced by the following:

(3) If the cost to repair or replace is $2,500 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

The following is added to **5. Loss Settlement:**

c. We will not pay for any loss in value of property, whether actual or perceived, or any;

(1) adverse impact on the ownership of, or transfer of ownership or title of property; or

(2) adverse impact on the acquisition of financing resulting from the covered physical damage to the property. If **Mortgage Acquisition Expense Coverage** or **Mortgage Extra Expense Coverage** is provided under Additional Property Coverages, the application of this provision (2) does not apply to the extent coverage is provided for **Mortgage Acquisition Expense** or **Mortgage Extra Expense.**

Item **7. Appraisal** is deleted and replaced by the following:

**7. Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

a. pay its own appraiser; and

b. bear the other expenses of the appraisal and umpire equally.

— REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FUNDS —

In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

Item 8. **Suit Against Us**, is deleted and replaced by the following:

8. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within two years after the inception of the loss or damage.

Under 12., **Mortgage Clause**, the following paragraph is deleted:

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is cancelled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or non-renewal takes effect.

And the following paragraph substituted:

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is cancelled or not renewed by us, the mortgagee shall be notified at least 15 days before the date cancellation or non-renewal takes effect. If the policy has been in effect for less than 60 days or is cancelled for nonpayment of premium, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

## SECTION II — LIABILITY COVERAGES

### LIABILITY LOSSES WE DO NOT COVER

Item 1.f.(2)(d) is deleted and replaced by the following:

    **(d)** a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of a residence, which is:

        **i.** not designated for travel on public roads; and

        **ii.** not subject to motor vehicle registration, licensing or permits;

Item 1.I. is deleted and replaced by the following:

**I.** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

However, this exclusion does not apply:

    **(1)** To the legitimate use of prescription drugs by a person following the orders of a licensed physician; or

    **(2)** Where the involvement with controlled substance(s) is not within the knowledge of any *insured*.

Item 2.g. is deleted.

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

Item 2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We do not provide coverage for any insured who has:

    **a.** intentionally concealed or misrepresented any material fact or circumstance; or

    **b.** made false statements or engaged in fraudulent conduct relating to this insurance at the time application was made or any time during the policy period.

--- REPRODUCED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

Item 4. Cancellation is deleted and replaced by the following:

4. **Cancellation.**

  a. You may cancel this policy at any time by:

   (1) Returning this policy to us; or

   (2) Giving us or our authorized agent advance notice of cancellation in one of the following ways:

      (a) orally;

      (b) electronically; or

      (c) mailing or delivering to us written notice;

   stating a future date on which the policy is to be cancelled, subject to the following:

   (1) If only your interest is affected, the effective date of cancellation will be either the date:

      (a) this policy is returned to us;

      (b) we receive your notice of cancellation; or

      (c) specified in the notice;

   whichever is later.

   However, upon our receipt of your notice of cancellation, we may waive the requirement that the notice state the future effective date of cancellation, as provided in either a.(1)(a), a.(1)(b), or a.(1)(c) above, by confirming to you the date and time of cancellation.

   (2) If by statute, regulation or contract, this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to you and the third party as soon as practicable after receiving your request for cancellation.

   Our notice will state the effective date of cancellation, which will be the later of the following:

      (a) 10 days from the date of mailing or delivering our notice; or

      (b) the effective date of cancellation stated in your notice to us.

   (3) In the event of oral cancellation, we shall, within 10 days provide you, electronically or in writing, confirmation of such requested cancellation.

   (4) We may require that you provide written, electronic or other recorded verification of the request for cancellation prior to such cancellation taking effect

  b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your last known mailing address. A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service shall be sufficient proof of notice.

   (1) When you have not paid the premium, whether payable to us or to our agent, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been:

      (a) conviction of a crime having as one of its necessary elements an act increasing the hazard insured against; or

      (b) discovery of fraud or material misrepresentation; or

      (c) discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

      (d) physical changes in the property insured against which result in the property becoming uninsurable.

This can be done by notifying you at least 31 days before the date cancellation takes effect.

c. When the policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When the policy is cancelled, the return premium will be pro rata.

Item 5. Non-renewal is deleted and replaced by the following:

6. Non-renewal. We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations and to any lienholder named in the policy, written notice at least 31 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

The following is added:

9.   Our Right To Re-compute Premium

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to re-compute the premium if we later obtain information which affects the premium we charged.

## POLICY DEFINITIONS

Under 7.a. "Actual Cash Value", item (4) is deleted.

All other provisions of the policy apply.

REPRINTED FROM THE FORMS LIBRARY

# PERSONAL PROPERTY REPLACEMENT COST

**1. PROPERTY COVERED**

For an additional premium, we cover:

**a.** personal property under Coverage C; and

**b.** awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings

at *replacement cost* at the time of loss.

**2. PROPERTY NOT COVERED**

The following property is not eligible for *replacement cost* settlement. Any loss shall be settled at *actual cash value* at the time of loss but not exceeding the amount necessary to repair or replace:

**a.** antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

**b.** memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

**c.** personal property not maintained in good or workable condition;

**d.** personal property that is outdated or obsolete and is stored or not being used;

**e.** property not owned by any *insured;* and

**f.** motorized land vehicles or earth moving or excavating equipment used to service the *residence premises.*

**3. CONDITIONS**

**a.** We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

    **(1)** the limit of liability of this policy applicable to the damaged, destroyed or stolen property;

    **(2)** the *replacement cost* of the property or any part;

    **(3)** the full amount actually and necessarily incurred by the *insured* in repairing or replacing the property or any part;

    **(4)** the direct financial loss you incur; or

    **(5)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

**b.** We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

**c.** You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

All other provisions of this policy apply.

HOM-7301/EP 1/09

REPRINTED FROM THE FORMS LIBRARY

# SPECIAL PERSONAL PROPERTY COVERAGE

For an additional premium **Section I — Property Coverages** is amended as described below.

**Personal Property We Cover, Coverage C — Personal Property** is amended as follows:

Under **3. Special Limits of Liability** items f. and g., coverage is extended beyond theft to include misplacing or losing the described property.

---

**Personal Property Losses We Cover and Personal Property Losses We Do Not Cover** are deleted and replaced by the following:

## PERSONAL PROPERTY LOSSES WE COVER

We insure for accidental direct physical loss to property described in Coverage C, except as limited or excluded under **Personal Property Losses We Do Not Cover.**

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover** (**Personal Property Losses We Do Not Cover** in policy HOM-7040). Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

In addition, we do not insure loss caused directly or indirectly by any of the following excluded perils:

1. Breakage of eyeglasses, glassware, statuary, sculptures, objects made from marble, porcelain, ceramics, china and crystal. However, jewelry, watches, bronzes, cameras and photographic lenses are covered.

   There is coverage for breakage of the above described personal property which is caused by or results from:

   a. fire, lightning, windstorm, hail;

   b. smoke, other than smoke from agricultural smudging or industrial operations;

   c. explosion, riot, civil commotion;

   d. aircraft, vehicles, vandalism and malicious mischief not otherwise excluded, or volcanic eruption;

   e. collapse of a building or any part of a building;

   f. water not otherwise excluded;

   g. theft or attempted theft; or

   h. sudden and accidental tearing apart, cracking, burning or bulging of:

      (1) a steam or hot water heating system;

      (2) an air conditioning or automatic fire protective sprinkler system; or

      (3) an appliance for heating water.

2. Dampness of atmosphere.

3. Refinishing, renovating or repairing property other than watches, jewelry and furs;

4. Sinking, swamping, stranding, or collision, other than collision with a land vehicle, of watercraft, including their trailers, furnishings, equipment and outboard motors.

5. Destruction, confiscation or seizure by order of any government or public authority.

---

Under **Section I — Property Coverages, Additional Property Coverages,** item **9. Household Products Coverage** is amended to include loss to property described in **Coverage C — Personal Property** (applies to only Homeowners Policy, HOM-7030 and Condominium Policy, HOM-7080).

All other provisions of this policy apply.

REPRINTED FROM THE FUTURE LIBRARY

## ESCAPE OF WATER FROM A SUMP, SUMP PUMP OR
## DRAIN ON THE RESIDENCE PREMISES (BUILDING AND CONTENTS)

1. To the extent coverage is provided by this **EXTENSION OF COVERAGE** and up to the **LIMIT OF LIABILITY** described below, **Section I — Building Property Losses We Do Not Cover, Water Damage, 10.d. and 10.e.** do not apply (items 3.d. and 3.e. under **Section I — Personal Property Losses We Do Not Cover** for HOM-7040/EP, Renters Policy).

2. **EXTENSION OF COVERAGE**

   For an additional premium, we cover accidental direct physical loss to property covered under **Section I — Property Coverages** caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the *residence premises.*

   For purposes of coverage under this **EXTENSION OF COVERAGE**, a drain or related plumbing appliance does not include a roof drain, gutter, downspout or similar fixture or equipment.

3. **EXCLUSION**

   **THIS IS NOT FLOOD INSURANCE.**

   There shall be no coverage under this **EXTENSION OF COVERAGE** if water excluded under **Section I—Building Property Losses We Do Not Cover, Water Damage, 10.a., 10.b. or 10.c.** (items 3.a., 3.b. or 3.c. under **Section I — Personal Property Losses We Do Not Cover** for HOM-7040/EP, Renters Policy):

   a. is concurrent with, in sequence with, or causes or contributes to the escape of water as described in this **EXTENSION OF COVERAGE**, and

   b. damages property covered under **Section I — Property Coverages** other than solely by escape, overflow or discharge from a sump, sump pump, sump pump well, or a drain or related plumbing appliance located on the *residence premises.*

4. **LIMIT OF LIABILITY**

   Our limit of liability for this **EXTENSION OF COVERAGE** shall be up to the amount shown in the Declarations for this **EXTENSION OF COVERAGE.**

5. **DEDUCTIBLE**

   We will pay only that part of the loss that exceeds the applicable deductible shown in the Policy Declarations.

All other provisions of this policy apply.

HOM-7311/EP 1/09

REPRINTED FROM THE FORMS LIBRARY



**Insurance.**

A Liberty Mutual Company

## SAFECO HOMEOWNERS POLICY

### Table of Contents

| | Beginning On Page |
|---|---|
| **INSURING AGREEMENT** | 1 |
| **SECTION I — PROPERTY COVERAGES** | 1 |
|     **COVERAGE A — DWELLING** | 1 |
|     **COVERAGE B — OTHER STRUCTURES** | 1 |
|         Building Property We Cover | 1 |
|         Building Property We Do Not Cover | 1 |
|         Building Property Losses We Cover | 1 |
|         Building Property Losses We Do Not Cover | 1 |
|     **COVERAGE C — PERSONAL PROPERTY** | 4 |
|         Personal Property We Cover | 4 |
|         Personal Property We Do Not Cover | 5 |
|         Personal Property Losses We Cover | 6 |
|         Personal Property Losses We Do Not Cover | 7 |
|     **COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT** | 7 |
|     **ADDITIONAL PROPERTY COVERAGES** | 8 |
|     **PROPERTY CONDITIONS** | |
|         Deductible | 11 |
|         Your Duties | 11 |
|         Loss Settlement | 12 |
| **SECTION II — LIABILITY COVERAGES** | |
|     **COVERAGE E — PERSONAL LIABILITY AND COVERAGE F — MEDICAL PAYMENTS TO OTHERS** | |
|         Liability Losses We Cover | 14 |
|         Liability Losses We Do Not Cover | 14 |
|     **ADDITIONAL LIABILITY COVERAGES** | 18 |
|     **LIABILITY CONDITIONS** | 20 |
| **SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS** | |
|         Policy Period and Changes | 22 |
|         Concealment or Fraud | 22 |
|         Liberalization Clause | 22 |
|         Cancellation | 22 |
|         Non-Renewal | 23 |
|         Assignment | 23 |
|         Our Right to Recover Payment | 23 |
|         Death | 23 |
| **POLICY DEFINITIONS** | 23 |

REPRINTED FROM THE FORMS LIBRARY

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY WE COVER

### COVERAGE A — DWELLING

We cover:

1.  the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

2.  attached carpeting, built-in appliances, fixtures; and

3.  materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

### COVERAGE B — OTHER STRUCTURES

We cover:

1.  fences, driveways and walkways; and

2.  other structures on the *residence premises,* separated from the dwelling by clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

### BUILDING PROPERTY WE DO NOT COVER

1.  Land, no matter where it is located, including land on which the dwelling is located, except as noted in Additional Property Coverages, Land Stabilization.

2.  Other structures:

    a.  used in whole or in part for *business;* or

    b.  rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

### BUILDING PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.

### BUILDING PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;

1.  freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired. This provision does not apply if you have used reasonable care to:

    a.  maintain heat in the building; or

    b.  shut off the water supply and drain the system and appliances of water;

- 1 -

REPRINTED FROM THE FORMS LIBRARY

2.  freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, decorative or privacy wall, bulkhead, pier, wharf or dock;

3.  theft in, to or from a dwelling under construction, including materials and supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being newly built, remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss;

4.  vandalism and malicious mischief, including fire caused by arson, or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling under construction, including being newly built, remodeled, reconstructed, renovated or repaired is not considered vacant.

5.  continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

6.  a.  wear and tear, marring, scratching, deterioration;

    b.  inherent defect, mechanical breakdown;

    c.  smog, rust or other corrosion, or electrolysis;

    d.  smoke from agricultural smudging or industrial operations;

    e.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

    f.  birds, vermin, rodents, insects or domestic animals;

    g.  pressure from or presence of plant roots.

However, we do insure for any resulting loss from items 1. through 6. unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

7.  **Pollution or Contamination,** meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants or contaminants* at any time except as provided by **Additional Property Coverages — Household Products Coverage** under **Section I — Property Coverages.**

8.  **Ordinance or Law,** meaning any ordinance or law:

    a.  requiring or regulating the construction, remodeling, renovation, repair, or demolition of building property, including removal of resulting debris, unless specifically provided under this policy;

    b.  the requirements of which result in a loss in value to property; or

    c.  requiring any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.*

    This exclusion applies whether or not the building property has been physically damaged.

9.  **Earth Movement,** meaning:

    a.  the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

    b.  erosion, shifting or displacement of materials supporting the foundation; and

    c.  volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

    This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

    We do cover direct loss by fire, explosion or theft.

REPRINTED FROM THE FORMS LIBRARY

10. **Water Damage,** meaning:

    **a.**  **(1)** flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

        **(2)** release of water held by a dam, levee, dike or by a water or flood control device or structure;

    **b.** water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

    **c.** water which escapes or overflows from sewers or drains located off the *residence premises;*

    **d.** water which escapes or overflows from drains or related plumbing appliances on the *residence premises.* However, this exclusion does not apply to overflow and escape caused by malfunction on the *residence premises,* or obstruction on the *residence premises,* of a drain or plumbing appliance on the *residence premises;* or

    **e.** water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

11. **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the *residence premises.* If any **Building Property Losses We Cover** ensues on the *residence premises,* we will pay only for the ensuing loss.

12. **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

13. Loss caused directly or indirectly by war, including the following and any consequence of any of the following:

    **a.** undeclared war, civil war, insurrection, rebellion, or revolution;

    **b.** warlike act by a military force or military personnel; or

    **c.** destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

14. **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

15. **Intentional Loss,** meaning any loss arising out of any act committed:

    **a.** by or at the direction of any *insured;*

    **b.** with the intent to cause a loss.

This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

    **c.** the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

    **d.** the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to **Section I — Property Conditions, Mortgage Clause.**

REPRODUCED FROM THE FURBISH LIBRARY

    **e.** For purposes of this provision, "domestic abuse" means:

        **(1)** physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

        **(2)** sexual assault of one family or household member by another;

        **(3)** stalking of one family or household member by another family or household member; or

        **(4)** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**16. Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**17. Weather** that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

**18. Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

    **a.** planning, zoning, development, surveying, siting;

    **b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **c.** materials used in repair, construction, renovation or remodeling; or

    **d.** maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

**19. Fungi, Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi*, wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for under Additional Property Coverages — *Fungi*, Wet or Dry Rot, or Bacteria in Section I — Property Coverages.

**20. Collapse,** except as provided under **Additional Property Coverages — Collapse in Section I — Property Coverages.** However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

---

## PERSONAL PROPERTY WE COVER

### COVERAGE C — PERSONAL PROPERTY

**1.** Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises*, coverage is limited to 10% of the Coverage C limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

During the time the *residence premises* is under construction by or for the *insured*, our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage C. Our total limit shall not exceed the policy limit for Coverage C in any one loss.

**2.** At your request we cover:

    **a.** personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *insured;*

    **b.** personal property owned by a guest or a *residence employee,* while the property is at any residence occupied by any *insured.*

**3. SPECIAL LIMITS FOR PERSONAL PROPERTY**

The following groups of personal property are covered only up to the special limit shown on your Policy Declarations page. The special limit is the total amount available for any one group for any one loss and does not increase the Coverage C limit. The loss of, or damage to, more than one item in a group arising from the same cause or event is considered one loss.

    **a.** Money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

    **b.** Rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

REPRINTED FROM THE FORMS LIBRARY

c. Securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

The dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

The limit includes the cost to research, replace or restore the material from the lost or damaged medium.

d. Watercraft, including their trailers, furnishings, equipment and outboard motors.

e. Trailers not used with watercraft.

f. Theft of jewelry, watches, furs, precious and semiprecious stones.

g. Theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

Silverware, goldware and pewterware include:

(1) plateware, flatware, hollowware, tea sets, trays, trophies and the like;

(2) other utilitarian items made of or including silver or gold; and

(3) all items of pewterware.

h. *Business* property, not excluded elsewhere, while located on the *residence premises*. Up to $1,000 of the limit on your Policy Declarations may be used for *business* property, not excluded elsewhere, while located off the *residence premises*.

i. Tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the *residence premises*.

j. Theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

k. Grave markers.

## PERSONAL PROPERTY WE DO NOT COVER

1. Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

2. Animals, birds or fish.

3. Motorized land vehicles including their equipment, parts and accessories while in or upon the vehicle.

   However, we do cover:

   a. motorized land vehicles used solely to service the *residence premises* and not subject to motor vehicle registration or licensed for road use;

   b. vehicles designed for the handicapped and not licensed for road use;

   c. up to $500 for disassembled parts of a motorized land vehicle while located on the *residence premises*; or

   d. up to $500 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour.

4. Electronic apparatus, including their accessories and antennas, designed to be operated solely by power from the electrical system of a motor vehicle. This exclusion applies only while such property is in or upon a motor vehicle.

5. Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

6. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

7. Property of roomers, boarders, tenants and other residents not related to any *insured*.

8. Property in a location on the *residence premises*, when the location is rented or held for rental to others by any *insured* for more than 31 days in a calendar year. This exclusion does not apply to

property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises*.

8. Property, away from the *residence premises*, rented or held for rental to others.

10. *Business* property or merchandise:

   a. In storage;

   b. held as a sample; or

   c. held for sale or delivery after sale.

11. *Business* documents, records or data regardless of the medium on which they exist. However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

---

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in Coverage C — Personal Property caused by a peril listed below except as limited or excluded.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

   a. continuous walls on all sides extending from ground level to the roof;

   b. doors and windows in the walls at various locations; and

   c. a continuous roof sheltering all areas within the wall perimeter.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft, including self-propelled missiles and spacecraft.**

6. **Vehicles, meaning impact by, or with, or upset of, a vehicle.**

7. **Smoke, meaning sudden and accidental damage from smoke.**

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations, including steel burns.

8. **Vandalism or malicious mischief.**

9. **Theft, including attempted theft and loss of property from a known location when it is likely that the property has been stolen.**

   This peril does not include loss caused by theft:

   a. committed by any *insured* or by any other person regularly residing on the *insured location*;

   b. In, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   c. from that part of a *residence premises* rented by any *insured* to other than an *insured*.

   This peril does not include loss caused by theft that occurs away from the *residence premises* of property while at any other residence owned, rented to, or occupied by any *insured*, except while an *insured* is temporarily residing there.

   Property of a student who is an *insured* is covered while at a residence away from home.

10. **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

REPRINTED FROM THE PURDUE LIBRARY

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

    **a.** to the appliance or system from which the water or steam escaped;

    **b.** caused by or resulting from freezing except as provided in the peril of freezing below; or

    **c.** on the *residence premises* caused by accidental discharge or overflow which occurs off the *residence premises.*

    For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging of** a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

    This peril does not include loss on the *residence premises* while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired, unless you have used reasonable care to:

    **a.** maintain heat in the building; or

    **b.** shut off the water supply and drain the system and appliances of water.

    For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden and accidental damage from artificially generated electrical current.**

16. **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises.* There is no coverage if breakage of glass is caused by *earthquake.* There is no coverage for loss or damage to the glass.

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

## COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

1. If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

   Payment shall be for the shortest time required, not exceeding 24 months, to repair or replace the damage or to permanently relocate.

2. If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover your loss of rent, meaning the rental income to you from that part of the *residence premises* you rent to others at the time of the loss, less any expenses that do not continue while the premises is uninhabitable.

   This coverage does not apply to:

   **a.** The *residence premises* or that part of the *insured location* that is not rented or leased to a tenant at the time of the loss; or

   **b.** to any increase in rent or lease payment that occurs after the time of the loss.

REPRINTED FROM THE FORMS LIBRARY

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

3. If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a cause of loss we cover in this policy we cover the **Additional Living Expense** as provided under 1., above for no more than two weeks during which use is prohibited.

The total limit of liability available for **Additional Living Expense** and **Loss of Rent** is stated on your Policy Declarations page and is the most we will pay for all loss or costs under 1., 2. and 3., above.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

   We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the *residence premises*, provided the trees damage **Building Property We Cover.** The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** We will pay up to the amount stated in your Policy Declarations for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the *residence premises*, for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the *residence premises*, Vandalism or Malicious mischief and Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

4. **Fire Department Service Charge.** We will pay, up to the amount stated in your Policy Declarations, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Land Stabilization.** We will pay up to the amount stated in your Policy Declarations for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

7. **Building Ordinance or Law Coverage.** We will pay for damage to **Building Property We Cover** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

   This coverage does not apply unless you choose to repair or rebuild your property at its present location.

   We do not cover:

   a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

REPRINTED FROM THE FORMS LIBRARY

**b.** the costs to comply with any ordinance which requires any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants*. However, for purposes of **Building Ordinance or Law Coverage**, *pollutants or contaminants* shall not include asbestos or materials containing asbestos.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

The limit of liability shown in your Policy Declarations is the most we will pay for the total of all loss or costs for **Building Property We Cover**, regardless of the number of locations or number of claims made.

This is an additional amount of insurance.

**8.** **Arson Reward.** We will pay up to the amount stated in your Policy Declarations for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable.

However, we will not pay more than the amount stated in your Policy Declarations per event regardless of the number of persons providing information.

**9.** **Household Products Coverage.** We cover direct physical loss to the property described in Coverages A and B arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises*. Household products include items currently in use or your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

We will pay up to 5% of the Coverage A limit of liability stated in your Policy Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

**a.** any fee, assessment or expense of any governmental authority;

**b.** loss arising out of household products possessed or used:

   **(1)** for *business* purposes;

   **(2)** for illegal purposes;

   **(3)** by contractors; or

   **(4)** on driveways or walkways.

**Pollution or Contamination under Section I — Building Property Losses We Do Not Cover** does not apply to this **Additional Property Coverage.**

In the event that a loss is covered under both this coverage and **Additional Property Coverages — Building Ordinance or Law Coverage**, you may elect either one of these coverages, but not both.

**10.** *Fungi,* **Wet or Dry Rot, or Bacteria.** We will pay up to the amount stated in your Policy Declarations for:

**a.** the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria;

**b.** the cost to remove *fungi,* wet or dry rot, or bacteria from covered property;

**c.** the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

**d.** the cost of any testing of air or property to confirm the absence, presence or level of *fungi,* wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi,* wet or dry rot, or bacteria; and

**e.** **Coverage D — Additional Living Expense and Loss Of Rent.**

This coverage, **10.** *Fungi,* **Wet or Dry Rot, or Bacteria,** only applies when such loss or costs:

**f.** are a result of a loss we cover that occurs during the policy period;

REPRINTED FROM THE FUNDS LIBRARY

g. are not excluded under **Building Property Losses We Do Not Cover**; and

h. only if all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants.

The limit of liability stated in your Policy Declarations for **Fungi, Wet or Dry Rot, or Bacteria** is the most we will pay for the total of all loss or costs for Coverages A, B, C and D, and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

11. **Collapse.**

   a. With respect to this coverage collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose:

      (1) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

      (2) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

      (3) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   b. We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

      (1) The perils under **Personal Property Losses We Cover**;

      (2) Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

      (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   c. Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

   This coverage does not increase the limit of liability that applies to the damaged covered property.

12. **Volunteer America**

   We insure for all risks of accidental and direct physical loss to the property described in **Coverage C — Personal Property**, when the loss occurs as a direct result of acting as a *volunteer*. No deductible applies to this coverage.

13. **Criminal Conviction Reward.**

   a. We will pay the amount stated in your Policy Declarations to an eligible person for information leading to the arrest and conviction of the person(s) committing a crime resulting in loss to covered property; and

   b. We will pay up to the amount stated in your Policy Declarations to an eligible person for the return of stolen covered property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

      (1) *actual cash value* of the stolen property at the time the property is returned, but not more than the amount that would have been required to repair or replace; or

      (2) the amount determined by the loss settlement procedure applicable to the property returned had the property not been recovered.

c. This coverage applies subject to the following conditions:

   (1) An eligible person means that person identified by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

       (a) an insured;

       (b) a relative of an insured;

       (c) an employee of a law enforcement agency;

       (d) an employee of a business engaged in property protection;

       (e) any person who had custody of the property at the time the theft was committed; or

       (f) any person involved in the crime.

   (2) No reward will be paid unless and until the person(s) committing the crime is (are) convicted or the property returned. The amount of the reward in items a. and b. above is the most we will pay for any one loss to an eligible person.

## SECTION I — PROPERTY CONDITIONS

1. **Deductible.** In case of loss under **Section I — Property Coverages** of this policy, we cover only that part of the loss over the applicable deductible stated in your **Policy Declarations**.

   The deductible does not apply to **Coverage D — Additional Living Expense And Loss Of Rent** or **Fire Department Service Charge**.

2. **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility, we will suggest annual changes to your policy limits. These suggestions will be made effective on the renewal of your policy and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or construction cost specialists. Labor and material cost trends for your area are supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

3. **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

   a. cooperate with us in the investigation, settlement or defense of any claim or suit;

   b. give immediate notice to us or our agent;

   c. notify the police in case of loss by theft;

   d. protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

   e. prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, replacement cost and age. Attach all bills, receipts and related documents that justify the figures in the inventory.

   f. as often as we reasonably require:

      (1) exhibit the damaged and undamaged property;

      (2) provide us with records and documents we request and permit us to make copies; and

      (3) submit to examinations under oath, and subscribe the same. We may examine you separately and apart from your spouse, civil or domestic partner, or any other insured. You shall not interfere with us examining any other insured.

   g. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the insured and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

REPRINTED FROM THE FORMS LIBRARY

    (4)  changes in title or occupancy of the property during the term of the policy;

    (5)  specifications of any damaged building and detailed repair estimates;

    (6)  an inventory of damaged personal property described in 3.e.;

    (7)  receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent**.

4.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a.  for more than the amount of the *insured's* interest at the time of loss; or

    b.  for more than the applicable limit of liability,

    whichever is less.

5.  **Loss Settlement.** Covered property losses are settled as follows:

    a.  **Replacement Cost.** Property under Coverage A or B at *replacement cost*, not including those items listed in 5.b.(2) and (3) below subject to the following:

        (1)  We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

            (a)  the limit of liability under the policy applying to Coverage A or B;

            (b)  the *replacement cost* of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

            (c)  the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;

            (d)  the direct financial loss you incur; or

            (e)  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

        (2)  When more than one layer of siding or roofing exists for **Building Property We Cover**, we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

            When more than one layer of finished flooring exists we will pay for the finish of only one layer.

        (3)  If the cost to repair or replace is $1,000 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

        (4)  You may disregard the *replacement cost* loss settlement provisions and make claim under this policy for loss or damage to buildings on an *actual cash value* basis but not exceeding the smallest of the following amounts:

            (a)  the applicable limit of liability;

            (b)  the direct financial loss you incur; or

            (c)  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

            You may still make claim on a *replacement cost* basis by notifying us of your intent to do so within 180 days after the date of loss.

    b.  *Actual Cash Value.*

        (1)  Personal property covered under Coverage C;

        (2)  Wood fences, outdoor antennae and awnings, all whether attached or not to buildings; and

        (3)  Structures that are not buildings under Coverage B, except driveways, walkways and other structures connected to the building by only a fence, utility line, plumbing or similar connection;

      at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

6.  **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a.  repair or replace any part to restore the pair or set to its value before the loss; or

RETURN TO FROM THE FORMS LIBRARY

    **b.**  pay the difference between *actual cash value* of the pair or set before and after the loss.

**7.**  **Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

    **a.**  pay its own appraiser; and

    **b.**  bear the other expenses of the appraisal and umpire equally.

**8.**  **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

**9.**  **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

**10.** **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

    **a.**  we reach agreement with you;

    **b.**  there is an entry of a final judgment; or

    **c.**  there is a filing of an appraisal award with us.

**11.** **Abandonment of Property.** We need not accept any property abandoned by any *Insured.*

**12.** **Mortgage Clause.**

The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    **a.**  notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    **b.**  pays any premium due under this policy on demand if you have neglected to pay the premium;

    **c.**  submits assigned, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

    **d.**  complies with item 3.e. of **Section I — Property Conditions.**

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

    **e.**  we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    **f.**  at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13.** **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

REPRINTED FROM THE FORMS LIBRARY

14. **Other Insurance and Service Agreements.** If a loss covered by this policy is also covered by:

   a. other insurance, we will pay only the proportion of the loss caused by a peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the loss; or

   b. a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Salvage Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage*.

## SECTION II — LIABILITY COVERAGES

### LIABILITY LOSSES WE COVER

### COVERAGE E — PERSONAL LIABILITY

If a claim is made or a suit is brought against any insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

### COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees*. As to others, this coverage applies only:

1. to a person on the *insured location* with the permission of any *insured*; or

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of any *insured*;

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured*; or

   d. is caused by an animal owned by or in the care of any *insured*.

### LIABILITY LOSSES WE DO NOT COVER

1. **Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** do not apply to *bodily injury* or *property damage*:

   a. which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*;

   This exclusion applies even if:

   (1) such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

   (2) such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

REPRINTED FROM THIS FORMS LIBRARY

This exclusion does not apply to *bodily injury* resulting from the use of reasonable force by any *insured* to protect persons or property.

b. which results from violation of criminal law committed by, or with the knowledge or consent of any *insured*.

This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

c. arising out of *business* pursuits of any *insured*.

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-*business* pursuits;

(2) the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

(3) the rental or holding for rental of an *insured location:*

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

d. arising out of the rendering or failing to render professional services;

e. arising out of any premises owned or rented to any *insured* which is not an *insured location;*

f. arising out of the ownership, maintenance, use, loading or unloading of:

(1) aircraft.

This does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

(2) motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any *insured.*

This exclusion does not apply to:

(a) a trailer not towed by or carried on a motorized land vehicle;

(b) a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

i.   not owned by any *insured;* or

ii.  owned by any *insured,* while on an *insured location;*

(c) a motorized golf cart which is owned by an *insured,* designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and at the time of an *occurrence* is within the legal boundaries of:

i.   a golfing facility and is parked or stored there, or being used by an *insured* to:

(i)   play the game of golf or for other recreational or leisure activity allowed by the facility;

(ii)  travel to or from an area where motor vehicles or golf carts are parked or stored; or

(iii) cross public roads at designated points to access other parts of the golfing facility; or

ii.  a private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an *insured's* residence.

(d) a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an *insured location,* which is:

i.   not designed for travel on public roads; and

ii.  not subject to motor vehicle registration, licensing or permits; or

REPRINTED FROM THE FORMS LIBRARY

(e) electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

(f) a motorized land vehicle in dead storage on an *insured location*.

(3) watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

(c) powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any *insured*.

However, outboard motors of 50 or more total horsepower are covered for the policy period if:

i. you acquired them prior to the policy inception, and:

(i) declared them at policy inception; or

(ii) you ask us in writing to insure them within 45 days after you become the owner;

ii. you acquire them during the policy period, provided you ask us to insure them:

(i) during the policy period in which you become the owner; or

(ii) within 45 days after you become the owner;

whichever is greater, and pay any resulting additional premium from the date acquired.

(d) designed as an air boat, air cushion, or similar type of craft; or

(e) owned by any *insured* which is a personal watercraft.

This exclusion does not apply while the watercraft is stored.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

Exclusions e. and f. do not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

g. arising out of:

(1) the entrustment by any insured to any person;

(2) the supervision by any insured of any person;

(3) any act, decision or omission by any insured;

(4) any liability statutorily imposed on any insured; or

(5) any liability assumed through an unwritten or written agreement by any insured;

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II of this policy.

h. caused directly or indirectly by war, including the following and any consequences of the following:

(1) undeclared war, civil war, insurrection, rebellion, or revolution;

(2) warlike act by a military force or military personnel; or

(3) destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

i. which results from the legal liability of any *insured* because of home care services, day care or any hospice related activity provided to any person on a regular basis by or at the direction of:

(1) any insured;

(2) any employee of any insured;

(3) any other person actually or apparently acting on behalf of any insured.

Regular basis means more than 20 hours per week. This exclusion does not apply to:

   (1) home care services provided to the relatives of any *insured*;

   (2) occasional or part-time home care services provided by any *insured* under 23 years of age.

j. which arises out of the transmission of a communicable disease by any *insured*;

k. arising out of physical or mental abuse, sexual molestation or sexual harassment.

l. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

m. arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. **Coverage E — Personal Liability** does not apply to:

a. *Liability*:

   (1) for any assessment charged against you as a member of an association of property owners except as provided under Additional Liability Coverages — Loss Assessment Coverage in Section II — Liability Coverages;

   (2) under any contract or agreement. However, this does not apply to written contracts:

      (a) that directly relate to the ownership, maintenance or use of an *insured location*; or

      (b) where the liability of others is assumed by the *insured* prior to an *occurrence*;

      unless excluded in 2.a.(1) above or elsewhere in this policy;

   (3) liability arising out of any written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

      (a) known or unknown property or structural defects;

      (b) known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

      (c) known or unknown soil conditions or drainage problems; or

      (d) concealment or misrepresentation of any known defects.

b. *property damage* to property owned by any *insured*;

c. *property damage* to property rented to, occupied or used by or in the care of any *insured*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion or water.

d. *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *insured* under:

   (1) any workers compensation;

   (2) non-occupational disability; or

   (3) occupational disease law;

e. *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

f. *bodily injury* to an *insured* within the meaning of parts (1) or (2) of Policy Definitions, 3.g. *insured*:

PERMANENT GENERAL ASSUR. CO. FOR HOME USE PLEASE LIBRARY

g. **bodily injury** or **property damage** arising, in whole or in part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of **pollutants or contaminants** at any time. This includes any loss, cost or expense arising out of any:

(1) request, demand or order that any **insured** or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of **pollutants or contaminants**; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of **pollutants or contaminants**;

This exclusion does not apply to **bodily injury** sustained within a building on the **residence premises** and caused by, smoke, fumes, including carbon monoxide, vapor or soot from equipment used to heat that building.

h. liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

i. liability arising out of any animal that any **insured** acquires, owns or keeps that:

(1) is or is a breed or kind named by or controlled by any local, state, or federal ordinance or law because of public safety concerns;

(2) has previously inflicted injury upon any person resulting in:

(a) maiming, disfigurement, mutilation, impairment, disability or death; or

(b) loss of work, schooling, or a loss of ability to carry on with a normal routine;

(3) has been trained to fight or attack;

(4) has been trained to kill;

(5) is a wild canine or feral dog or an offspring from breeding with a wild canine;

(6) is illegal to acquire, own or keep;

(7) is wild by birth or by nature and the species is not customarily domesticated;

(8) is a bird of prey;

(9) is venomous; or

(10) is a primate.

Item (3) above does not apply in the event the animal is reacting to protect people or property from imminent harm.

This exclusion does not apply to any person or organization described as an **insured** in Policy Definitions, Item g.(3).

3. Coverage F — Medical Payments to Others does not apply to **bodily injury**:

a. to a **residence employee** if the **bodily injury** occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation; non-occupational disability, or occupational disease law;

c. from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to any person, other than a **residence employee** of any **insured**, regularly residing on any part of the **insured location**.

ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

a. expenses we incur and costs taxed against any **insured** in any suit we defend;

REPRINTED FROM THE PURDUE LIBRARY

    **b.** premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability.** We are not obligated to apply for or furnish any bond; and

    **c.** reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit.

**2.** **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured.*

**3.** **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $500 per *occurrence* for *property damage* to property of others caused by any *insured.*

We will not pay for *property damage:*

    **a.** if insurance is otherwise provided in this policy;

    **b.** caused intentionally by any *insured* who is 13 years of age or older;

    **c.** to property owned by or rented to any *insured*, a tenant of any *insured*, or a resident in your household; or

    **d.** arising out of:

        **(1)** *business* pursuits;

        **(2)** any act or omission in connection with a premises owned, rented or controlled by an *insured*, other than the *insured location;* or

        **(3)** the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles. This does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured.*

**4.** **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to the limit shown on your Policy Declarations page for:

    **a.** the legal obligation of an *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

    **b.** loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

    **c.** loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

    **d.** loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of *business* pursuits or dishonesty of any *insured.*

Defense:

    **a.** We may make any investigation and settle any claim or suit that we decide is appropriate.

    **b.** If a suit is brought against any *insured* for liability covered under this Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

    **c.** We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

**5.** **Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

    **a.** the statutorily imposed limit; or

    **b.** $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

6. **Loss Assessment.**

   a.   We will pay only loss assessments charged during the policy period against you by the association of property owners up to the limit of liability stated in your Policy Declarations, when the assessment is made as a result of:

   (1)  each direct loss to property, caused by a peril that would be covered under Section I — Property Coverages of this policy;

   SPECIAL EXCLUSION: There is no coverage for any loss assessment resulting from the peril of *earthquake*. However, loss assessment for ensuing direct loss by fire, explosion or theft is covered.

   (2)  each *occurrence* to which Section II — Liability Coverages of this policy would apply; and

   (3)  liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   (a)  the director, officer or trustee is elected by the members of the association of property owners; and

   (b)  the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

   b.   DEDUCTIBLE. We will pay only that part of your assessment per unit for property insured under Section I that exceeds $500. No other deductible applies to this coverage. If our liability for a loss results under Section I and coverage under this option, only the larger deductible will apply.

7. **Volunteer America.**

   a.   Under Section II — Liability Coverages, the following applies:

   (1)  **Property Damage to Others.** We will pay an additional $2,000 for direct damage caused as direct result of acting as a *volunteer.*

   (2)  **Medical Payments to Others.** We will pay up to double the amount stated in your Policy Declarations for *bodily injury* caused as a direct result of acting as a *volunteer.*

   b.   Under Section II — Liability Losses We Do Not Cover the following items are modified as follows:

   (1)  Item 1.c. does not apply to activities as a *volunteer.*

   (2)  Item 1.d. does not apply to professional services, other than professional health care services by a doctor, performed as a *volunteer.*

## SECTION II — LIABILITY CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage E stated in your Policy Declarations. This limit is the same regardless of the number of *insureds,* claims made or persons injured.

   Our total liability under Coverage F for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in your Policy Declarations.

2. **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

3. **Your Duties After Loss.** In case of an accident or occurrence, the *insured* shall perform the following duties that apply:

   a.   give written notice to us or our agent as soon as practicable, which sets forth:

   (1)  the identity of the policy and *insured;*

REPRINTED FROM THE FORMS LIBRARY

     **(2)**  reasonably available information on the time, place and circumstances of the accident or *occurrence;*

     **(3)**  names and addresses of any claimants and witnesses; and

     **(4)**  in case of loss under the **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money** also notify the credit card or fund transfer card company;

  **b.**  promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence;*

  **c.**  at our request, help us:

     **(1)**  to make a settlement;

     **(2)**  to enforce any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

     **(3)**  with the conduct of suits and attend hearings and trials;

     **(4)**  to secure and give evidence and obtain the attendance of witnesses;

  **d.**  under the **Additional Liability Coverages — Damage to the Property of Others** — submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *insured's* control;

  **e.**  submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money Coverage,** stating the amount and cause of loss;

  **f.**  the insured shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

**4.**  **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone acting for the injured person will:

  **a.**  give us written proof of claim, under oath if required, as soon as practical;

  **b.**  authorize us to obtain copies of medical reports and records.

The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

**5.**  **Payment of Claim — Coverage F — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

**6.**  **Payment of Interest — Coverage E — Personal Liability.**

If a notice, demand, summons, judgment, or other process is promptly forwarded to us as required by **Liability Condition 3.b.** under **Your Duties After Loss** and we accept the defense or agree to the judgment, we will pay interest on the judgment, subject to all of the following:

  **a.**  We will pay the interest on that part of the judgment that is covered by this policy and that does not exceed our applicable limit of liability.

  **b.**  We will pay interest that accrues on the judgment until we pay, tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

  **c.**  If we appeal the judgment, we will pay interest on the entire judgment.

  **d.**  Post-judgment interest is in addition to the applicable limit of liability.

  **e.**  Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

**7.**  **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any *insured.* Further, no action with respect to Coverage E shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

**8.**  **Bankruptcy of an Insured.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

9. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

1. **Policy Period and Changes.**

   a. The effective time of this policy is 12:01 A.M. at the *residence premises.* This policy applies only to loss under Section I, or *bodily injury* or *property damage* under Section II, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

   b. Changes:

      (1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

      (2) This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

2. **Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

   We may void this policy or deny coverage for a loss or *occurrence* if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

   We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or *occurrence.* This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

   This liberalization clause does not apply to changes implemented that involve a broadening and a restriction of coverage or an increase in premium.

4. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in your Policy Declarations. Proof of mailing shall be sufficient proof of notice.

      (1) When you have not paid the premium we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 15 days before the date cancellation takes effect.

c. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 20 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply under Section II to Coverage F — Medical Payments to Others or Additional Liability Coverages, Damage to Property of Others.

8. **Death.** If you die:
   a. we insure your legal representative, but only with respect to the premises and property of the deceased covered under the policy at the time of death.
   b. *insured* shall include:
   (1) any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises*; and
   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## POLICY DEFINITIONS

1. Throughout this policy, "you" and "your" refer to:
   a. the "named insured" shown in your Policy Declarations; and

   if a resident of the same household:
   b. the spouse;
   c. the civil partner by civil union licensed and certified by the state; or
   d. the domestic partner.

2. "We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

3. In addition, certain words and phrases are defined as follows:
   a. **"Actual cash value"**
   (1) When damage to property is economically repairable, *actual cash value* shall mean the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.
   (2) When damage to property is not economically repairable or loss prevents repair, *actual cash value* shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.
   (3) Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.
   (4) *Actual cash value* shall not include taxes or any expenses incurred following the loss.

REPRINTED FROM THE FORMS LIBRARY

**b.** *"Bodily injury"* means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

**c.** *"Business"* means a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:

    **(1)** One or more activities, not described in (2) below, for which no *insured* receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and

    **(2)** *volunteer* activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

**d.** *"Domestic partner"* means a person living as a continuing partner with you and:

    **(1)** is at least 18 years of age and competent to contract;

    **(2)** is not a relative; and

    **(3)** shares with you the responsibility for each other's welfare, evidence of which includes:

        **(a)** the sharing in domestic responsibilities for the maintenance of the household; or

        **(b)** having joint financial obligations, resources or assets; or

        **(c)** one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

    **Domestic partner** does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named *insured.*

**e.** *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

**f.** *"Fungi"* means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or by-products produced, released by or arising out of *fungi*, including growth, proliferation or spread of *fungi* or the current or past presence of *fungi*. However, this definition does not include any *fungi* intended by the *insured* for consumption.

**g.** *"Insured"* means:

    **(1)** you; and

    **(2)** so long as you remain a resident of the *residence premises,* the following residents of the *residence premises:*

        **(a)** your relatives;

        **(b)** any other person under the age of 24 who is in the care of any person described in (1) or (2)(a) above.

    Anyone described above who is a student temporarily residing away from your *residence premises* while attending school shall be considered a resident of your *residence premises.*

Under Section II — Liability Coverage, *"insured"* also means:

    **(3)** with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in g.(2)(a) or (b). A person or organization using or having custody of these animals or watercraft in the course of any *business,* or without permission of the owner is not an *insured;*

    **(4)** with respect to any vehicle to which this policy applies:

        **(a)** any person while engaged in your employment or the employment of any person included in g.(2)(a) or (b); or

        **(b)** any other person using the vehicle on an *insured location* with any *insured's* permission.

**h.** *"Insured location"* means:

    **(1)** the *residence premises;*

(2) that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

(3) any premises not owned by you which you have the right or privilege to use arising out of h.1. or h.2. above;

(4) any part of a premises not owned by any *insured* but where any *insured* is temporarily residing;

(5) vacant land, including that which is vacant except for a fence, owned by or rented to any *insured* other than farmland;

(6) land owned by or rented to any *insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *insured;*

(7) individual or family cemetery plots or burial vaults of any *insured;* or

(8) any part of a premises occasionally rented to any *insured* for other than *business* purposes.

i. *"Occurrence"* means an accident, including exposure to conditions which results in:

(1) *bodily injury;* or

(2) *property damage;*

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

j. *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

k. *"Pollutants or contaminants"* means any of the following:

(1) liquid fuels;

(2) lead or any materials containing lead;

(3) asbestos or any materials containing asbestos;

(4) radon;

(5) formaldehyde or any materials containing formaldehyde;

(6) electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

(7) carbon monoxide;

(8) pathogenic or poisonous biological materials;

(9) acids, alkalis or chemicals;

(10) radioactive substances; or

(11) any other irritant or contaminant, including waste, vapor, fumes or odors.

l. *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

m. *"Replacement cost"*

(1) In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

(2) In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

n. *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises,* including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

REPRODUCED FROM THE FORDS LIBRARY

o.   *"Residence premises"* means:

   (1)  the one, two, three or four family dwelling, used principally as a private residence;

   (2)  other structures and grounds; or

   (3)  that part of any other building;

   where you reside and which is shown in your Policy Declarations.

p.   *"Salvage"* means property having value and included in a covered loss.

q.   *"Volunteer"* means an *insured* employed by an organization for a charitable purpose or in direct service to the general public or the community.

   *Volunteer* service does not include the *insured's* primary employment. *Volunteer* Service includes, but is not limited to, service performed for churches, schools, hospitals, and charitable, arts and civic organizations.

REPRINTED FROM THE FORMS LIBRARY

## SAFECO OPTIMUM™ HOMEOWNERS COVERAGE

It is agreed your policy is amended as follows:

**SECTION I — PROPERTY COVERAGES**
**PERSONAL PROPERTY WE DO NOT COVER**

Under **Personal Property We Do Not Cover, 3.**, describing motorized land vehicles and covered exceptions, the following is changed:

For item **3.c.**, describing disassembled parts, the amount is increased to $5,000.

For item **3.d.**, electric motorized ride-on vehicles for children, the amount is increased to $5,000.

The following is added:

**e.** Up to $7,500 for golf carts.

---

**SECTION I — PROPERTY COVERAGES**
**ADDITIONAL PROPERTY COVERAGES**

The following item is deleted and replaced by:

1. **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

   We will also pay the reasonable expenses you incur, up to $1,000, for the removal of trees from the *residence premises*. No more than $500 of this limit will be paid for the removal of any one tree.

The following **Additional Property Coverages** are added:

14. **Locks.** We will pay the reasonable expenses you incur to re-key the locks on all entrances to the dwelling or other structure at the *residence premises* if the keys are lost or stolen. No deductible applies to this coverage.

    This coverage includes the cost to replace an automatic garage door transmitter(s), and the cost to change the frequency of the garage door control unit and/or additional transmitters if:

    a. The control unit is on the part of the *residence premises* where you reside; and

    b. It is likely the corresponding transmitters have been lost or stolen.

    This coverage does not apply to a dwelling under construction, renovation or remodeling.

15. **Golf Cart Collision.** We cover accidental direct physical loss to any golf cart to which **Personal Property We Cover** under this policy applies caused by upset or impact with another vehicle or object.

16. **Refrigerated Spoilage.** We will pay up to $500 for any one loss to covered property stored in freezers or refrigerators on the *residence premises* for direct loss caused by:

    a. the interruption of power or other utility service; or

    b. mechanical failure of the unit storing the property.

    Interruption of power or mechanical failure shall not include removal of a plug from an electrical outlet or turning off an electrical switch unless resulting from a loss we cover.

    This coverage is subject to a $100 deductible in place of the deductible shown in the Declarations.

    For purposes of this additional coverage, exclusion **Power Interruption** under **Building Property Losses We Do Not Cover** in your policy does not apply.

17. **Kidnap/Ransom Negotiation Expenses.** We will pay up to $50,000 for ransom negotiation expenses incurred by you as a result of the kidnapping of an *insured*. We will also pay up to $5,000 to any person or organization for information leading to the arrest and conviction of any person(s) who kidnaps an *insured*. This coverage does not apply to the kidnapping of a child by the child's parent. This coverage also does not apply unless:

    a. the kidnapping occurred in the contiguous continental United States, Alaska or Hawaii; and

REPRODUCED FROM THE PURDUE LIBRARY

b. you have notified the Federal Bureau of Investigation or other law enforcement agency having jurisdiction over the kidnapping, and have complied with their recommendations and instructions.

c. "Kidnap/Ransom Negotiation Expenses" means reasonable fees and expenses of independent negotiators, and reasonable costs of travel, communications and accommodations incurred by you.

   Kidnap/Ransom Negotiation Expenses does not include the ransom.

## SECTION I — PROPERTY CONDITIONS

Item 6. is deleted and replaced by the following:

6. Loss to a Pair or Set. In case of loss of an item belonging to a pair or set, at your option, we will pay:

   a. to repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the *replacement cost* of the pair or set. If you elect *replacement cost*, the pair or set becomes our property.

## SECTION II — LIABILITY COVERAGES
## ADDITIONAL LIABILITY COVERAGES

The following items are changed:

1. Claim Expenses. The amount provided in item c. is increased to $500.

3. Damage to Property of Others. The amount stated for Damage to Property of Others is increased to $5,000.

All other provisions of this policy apply.

This policy is signed on our behalf by our President and Secretary.

James MacPhee
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance Services Office, Inc. with its permission.

REPRINTED FROM THE FORMS LIBRARY

# SPECIAL PROVISIONS — GEORGIA

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

Item 5. is deleted and replaced with:

5. continuous or repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years unless such seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all insureds and is hidden within the walls or ceilings or beneath the floors or above the ceiling of a structure.

Item 6.f. is deleted and replaced by the following:

f. birds, vermin, rodents or domestic animals except for breakage of glass;

Item 7. Pollution or Contamination is deleted and replaced by:

7. Pollution or Contamination, meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants or contaminants* at any time. This exclusion does not apply to loss that is sudden or accidental or as provided by **Additional Property Coverages — Household Products Coverage under Section I — Property Coverages**.

Item 15. Intentional Loss is deleted and replaced by the following:

15. Intentional Loss, meaning any loss arising out of any act an *insured* or any person or organization named as an additional *insured* commits or conspires to commit with the intent to cause a loss.

   a. In the event of such loss, neither the *insured* nor any such person or organization is entitled to coverage, even those who did not commit or conspire to commit the act causing the loss.

   b. However, this exclusion will not apply to deny payment to an innocent co-*insured* victim of family violence if the loss:

      (1) arose out of family violence or sexual assault; and

      (2) is caused by the intentional act of an *insured* against whom a family violence or sexual assault complaint is brought for the act causing the loss.

   c. If we pay a claim pursuant to Paragraph 15.b., our payment to the innocent co-*insured* is limited to that *insured's* insurable interest in the property. In no event will we pay more than the limit of liability.

### ADDITIONAL PROPERTY COVERAGES

Under item 1. Debris Removal, the second paragraph is deleted and replaced by the following:

We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the *residence premises*, provided the tree(s):

   a. damage Building Property We Cover; or

   b. does not damage Building Property We Cover, but:

      (1) block(s) a driveway on the *residence premises* which prevent(s) a motor vehicle, that is registered for use on public roads or property, from entering or leaving the *residence premises;* or

      (2) block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

REPRINTED FROM THE FORMS LIBRARY

## ADDITIONAL PROPERTY COVERAGES

Under item **7. Building Ordinance or Law Coverage** the following changes are made:

Item **b.** is deleted and replaced by the following:

> **b.** the costs to comply with any ordinance which requires any insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants or contaminants.** However, for purposes of **Building Ordinance or Law Coverage,** **pollutants or contaminants** shall not include asbestos or materials containing asbestos or lead.

The following is added to the paragraph describing limit of liability:

> In the event of a covered loss resulting from an Insurance Services Offices® declared catastrophe for the state in which the **residence premises** is located, the limit for Building Ordinance or Law shall be up to twice the percentage shown for Building Ordinance or Law on the Policy Declarations.

Item **10. Fungi, Wet or Dry Rot, or Bacteria** is deleted and replaced by the following:

**10. Fungi, Wet or Dry Rot, or Bacteria.** In the event a covered cause of loss results in damage to covered property by **Fungi, Wet or Dry Rot, or Bacteria,** we cover:

> **a.** the direct physical loss to covered property caused by **fungi,** wet or dry rot, or bacteria including the cost to remove **fungi,** wet or dry rot, or bacteria from covered property, the cost to tear out and replace any part of the building or other covered property as needed to gain access to the **fungi,** wet or dry rot, or bacteria;

> **b.** consequential loss up to the **Fungi, Wet or Dry Rot, or Bacteria** Remediation limit of liability as stated in the Policy Declarations for:
>
> > **(1)** the cost of any testing of air or property to confirm the absence, presence or level of **fungi,** wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of **fungi,** wet or dry rot, or bacteria;
> >
> > **(2)** the cost to treat, contain, remove or dispose of or remediate covered property beyond that which is required to repair or replace the covered property physically damaged by a peril insured against; and
> >
> > **(3) Coverage D — Additional Living Expenses or Loss of Use.**

The limit of liability shown in the declarations for **Fungi, Wet or Dry Rot, or Bacteria** is the most we will pay for the sum of all loss under 10.b., above.

> **c.** This coverage only applies when such loss or costs:
>
> > **(1)** are a result of a loss we cover that occurs during the policy period;
> >
> > **(2)** are not excluded under **Building Property Losses We Do Not Cover;** and
> >
> > **(3)** only if all reasonable means are used to save and preserve the property from further damage.
>
> This coverage does not apply to loss to trees, shrubs, or other plants.

Under item **11. Collapse** the following changes are made:

Item **11.a.(1)** is deleted and replaced by the following:

> **(1)** Collapse means:
>
> > **(a)** an abrupt falling down or caving in of a building or any part of a building; or
> >
> > **(b)** any part of the interior of the dwelling separates from another part of the interior of the dwelling, with the result that the building or part of the building cannot be occupied for its current intended purpose.

REPRINTED FROM THE FORMS LIBRARY

Item **14. Mortgage Acquisition Expense Coverage** is added as follows (this is item **16.** for the **New Quality-Plus** coverage level; item **18.** for the **Optimum** and **Ultra** coverage levels):

**14. Mortgage Acquisition Expense Coverage.** In the event of a total loss of the dwelling shown in the Policy Declarations by a covered cause of loss, we will pay necessary expenses and fees toward the acquisition of a new first mortgage to repair or replace the insured dwelling, up to a maximum of $5000.

No deductible applies to this coverage.

This is an additional amount of insurance.

This coverage **14. Mortgage Acquisition Expense Coverage** does not apply to policies endorsed with **HOM-7428/GAEP 1/13, Ultra Plus/Special Ultra Plus Coverage.**

---

## BUILDING PROPERTY LOSSES WE DO NOT COVER

The following is added:

**21. Cosmetic loss or damage,** meaning any loss that is limited to the physical appearance of a metal roof surface.

Metal roof means all metal roofing materials on a metal roofing system. For purposes of this exclusion, metal roof does not include the coverings of bay or bow windows. This exclusion does not apply when the roof overlay is a material other than metal.

This exclusion does not apply to policies endorsed with **HOM-7220, Optimum Homeowners Coverage.**

---

## SECTION I — PROPERTY CONDITIONS

Under **5. Loss Settlement**, item a.(3) is deleted and replaced by the following:

> (3) If the cost to repair or replace is $2,500 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

The following is added to **5. Loss Settlement:**

c. We will not pay for any loss in value of property, whether actual or perceived, or any;

(1) adverse impact on the ownership of, or transfer of ownership or title of property; or

(2) adverse impact on the acquisition of financing resulting from the covered physical damage to the property. If **Mortgage Acquisition Expense Coverage** or **Mortgage Extra Expense Coverage** is provided under Additional Property Coverages, the application of this provision (2) does not apply to the extent coverage is provided for **Mortgage Acquisition Expense** or **Mortgage Extra Expense.**

Item **7. Appraisal** is deleted and replaced by the following:

**7. Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost*, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

a. pay its own appraiser; and

b. bear the other expenses of the appraisal and umpire equally.

REPRINTED FROM THE FORMS LIBRARY

In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

Item 8. **Suit Against Us,** is deleted and replaced by the following:

8.   **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within two years after the inception of the loss or damage.

Under 12., **Mortgage Clause,** the following paragraph is deleted:

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is cancelled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or non-renewal takes effect.

And the following paragraph substituted:

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is cancelled or not renewed by us, the mortgagee shall be notified at least 15 days before the date cancellation or non-renewal takes effect. If the policy has been in effect for less than 60 days or is cancelled for nonpayment of premium, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

## SECTION II — LIABILITY COVERAGES

### LIABILITY LOSSES WE DO NOT COVER

Item 1.f.(2)(d) is deleted and replaced by the following:

   (d)   a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of a residence, which is:

      i.   not designated for travel on public roads; and

      ii.   not subject to motor vehicle registration, licensing or permits;

Item 1.l. is deleted and replaced by the following:

l.   arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

   However, this exclusion does not apply:

   (1)   To the legitimate use of prescription drugs by a person following the orders of a licensed physician; or

   (2)   Where the involvement with controlled substance(s) is not within the knowledge of any *insured*.

Item 2.g. is deleted.

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

Item 2. **Concealment or Fraud** is deleted and replaced by the following:

2.   **Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We do not provide coverage for any insured who has:

   a.   intentionally concealed or misrepresented any material fact or circumstance; or

   b.   made false statements or engaged in fraudulent conduct relating to this insurance at the time application was made or any time during the policy period.

REPRINTED FROM THE FORMS LIBRARY

Item 4. **Cancellation** is deleted and replaced by the following:

4. **Cancellation.**

   a. You may cancel this policy at any time by:

      (1) Returning this policy to us; or

      (2) Giving us or our authorized agent advance notice of cancellation in one of the following ways:

         (a) orally;

         (b) electronically; or

         (c) mailing or delivering to us written notice;

      stating a future date on which the policy is to be cancelled, subject to the following:

      (1) If only your interest is affected, the effective date of cancellation will be either the date:

         (a) this policy is returned to us;

         (b) we receive your notice of cancellation; or

         (c) specified in the notice;

      whichever is later.

      However, upon our receipt of your notice of cancellation, we may waive the requirement that the notice state the future effective date of cancellation, as provided in either a.(1)(a), a.(1)(b), or a.(1)(c) above, by confirming to you the date and time of cancellation.

      (2) If by statute, regulation or contract, this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to you and the third party as soon as practicable after receiving your request for cancellation.

      Our notice will state the effective date of cancellation, which will be the later of the following:

         (a) 10 days from the date of mailing or delivering our notice; or

         (b) the effective date of cancellation stated in your notice to us.

      (3) In the event of oral cancellation, we shall, within 10 days provide you, electronically or in writing, confirmation of such requested cancellation.

      (4) We may require that you provide written, electronic or other recorded verification of the request for cancellation prior to such cancellation taking effect

   b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your last known mailing address. A receipt provided by, or such other evidence of mailing as prescribed or accepted by the U.S. Postal Service shall be sufficient proof of notice.

      (1) When you have not paid the premium, whether payable to us or to our agent, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been:

         (a) conviction of a crime having as one of its necessary elements an act increasing the hazard insured against; or

         (b) discovery of fraud or material misrepresentation; or

         (c) discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

         (d) physical changes in the property insured against which result in the property becoming uninsurable.

REPRINTED FROM THE FORMS LIBRARY

This can be done by notifying you at least 31 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When the policy is cancelled, the return premium will be pro rata.

Item 5. **Non-renewal** is deleted and replaced by the following:

5. **Non-renewal.** We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations and to any lienholder named in the policy, written notice at least 31 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

The following is added:

9. **Our Right To Re-compute Premium**

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to re-compute the premium if we later obtain information which affects the premium we charged.

---

## POLICY DEFINITIONS

---

Under 3.a. *"Actual Cash Value"*, item (4) is deleted.

All other provisions of this policy apply.

# SHENTON LAW

540 Powder Springs St., #32E
Marietta, GA 30064

678-290-6530 (phone)
678-290-6531 (fax)
greg@shentonlawfirm.com

May 18, 2023

**VIA CERTIFIED MAIL
AND U.S. MAIL**

Safeco Insurance Company of Indiana
P.O. Box 5014
Scranton, PA 18505-5014

**VIA CERTIFIED MAIL
AND U.S. MAIL**

Safeco Insurance Company of Indiana
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

Re:   Policy No.:        OF2091553
      Claim No.:         0459892400-01
      Your Insured(s):   Frank (and Clara) Ostean
      Date of Loss:      June 20, 2021
      Property:          126 Holland Street; Marietta, GA 30060

Dear Sir or Madam:

This firm represents Frank and Clara Ostean (the "Osteans") with respect to the above loss. In the nearly two (2) years since the loss, Safeco Insurance Company of Indiana ("Safeco") has breached its policy obligations to the Osteans in a number of ways. First, despite the fact that Safeco dealt directly with the contractor on the Osteans' home, directed and approved of the work performed on the Osteans' home, and cut the Osteans out of all communications with the contractor regarding billing, Safeco has failed and refused to pay the contractor (All Restoration Solutions, Inc. ("ARS")) that Safeco selected to perform the repair work at the Property and directed by Safeco—work that was performed negligently and must be corrected. Despite ARS's claim that Safeco directly and expressly pre-approved ARS's work, Safeco has refused to pay on the invoice received in November 2022, revised in January 2023, and revised again in April 2023. ARS recently recorded the enclosed Claim of Lien (the "Lien") against the Property as a direct and proximate result of Safeco refusing to pay ARS for its work, despite Safeco directing and apparently pre-approving ARS's work.

Additionally, the ARS estimate included Forty Thousand Dollars ($42,677.73) for the replacement of the Osteans' metal roof. However, ARS did not receive a new metal roof. Instead, ARS installed a shingle roof, which cost approximately Seventeen Thousand Dollars ($17,000.00), yet ARS is billing for a metal roof. As Safeco has acknowledged, the Osteans are entitled to the difference between the value of the metal roof that the Osteans should have received. Safeco is obligated to pay the Osteans the value of the

EXHIBIT
B
SUPPLIADJUSTICE.COM

SHENTON LAW

Safeco Insurance Company of Indiana
May 18, 2023
Page 2

metal roof even if the Osteans have to contest ARS's billing for a metal roof when it only installed a shingle roof.

As part of the billing dispute with ARS, Safeco also improperly allowed ARS to deduct Seven Thousand, Nine Hundred Sixteen Dollars and Sixty-Two Cents ($7,916.62) in credit from the amount that Safeco was to pay ARS, which ARS is now demanding from the Osteans and has included in their Lien.

The Osteans hereby demand that Safeco (a) defend and indemnify the Osteans from and against any and all claims asserted by ARS, including (without limitation) any lien action and any other lawsuit or other action that ARS may file, and (b) bond the Lien off of the Ostean's property.  The amount of the Lien claimed by ARS is One Hundred Twenty-Nine Thousand, Six Hundred Eighty-Four Dollars and Ninety-Three Cents ($129,684.93).  This is over and above the approximately $101,501.29 already paid to ARS for their defective work.

In addition, the Osteans have obtained the enclosed estimate from Rescon Chandler Group to complete and correct ARS's work and to repair the damage to the Osteans' house that ARS caused in performing their defective work.  This estimate totals Thirty-Six Thousand, Nine Hundred Eighty Dollars and ($36,980.00).

Second, Safeco has breached the Policy by failing to pay Coverage D-Additional Living Expense beyond May 2022. The Policy provides for the payment of living expenses to the Osteans due to displacement for a period of two (2) years.  Now, nearly twenty-three (23) months following the loss, the Osteans' Property has still not been repaired and is not habitable for the Osteans to live in due to the refusal of Safeco to pay ARS for its work and ARS's defective work.  Safeco arranged with the Osteans to pay the Osteans a minimum of Two Thousand Dollars ($2,000.00) per month as compensation then, without notice or justification, stopped paying additional living expenses.  The Osteans actual additional living expenses incurred as a result of their displacement may be in excess of this amount up to the Sixty-Three Thousand, Five Hundred Twenty Dollar ($63,520.00) Policy sublimit.  At $2,000.00 per month, this adds up to a minimum of Twenty-Six Thousand Dollars ($26,000.00).

Third, Safeco has breached the Policy by failing to pay the Osteans for the storage fees incurred for their personal property.  To date, the Osteans have incurred Four Thousand, Two Hundred Sixty-Four Dollars ($4,264.00).

Fourth, Safeco has breached the Policy by failing to compensate the Osteans for the personal property lost as a result of the Loss.  These amounts total Four Thousand, Eighty-Nine Dollars ($4,089.00).

Given (a) the current posture of the matter, (b) Safeco's silence with respect to (and apparent disapproval of) ARS's supplemental estimate dated January 30, 2023, (c), the fact that ARS's work are only part of the damages incurred by the Osteans as a result of the Loss, and (d) the existence of the Lien, any check related to ARS's work and/or ARS's claim should be paid directly to the Osteans—as should all other amounts owed. Accordingly, the Osteans request that any check be written to the Osteans and NOT include ARS.

SHENTON LAW

Safeco Insurance Company of Indiana
May 18, 2023
Page 3

Therefore, the Osteans demand payment of **Two Hundred One Thousand, Seventeen Dollars and Ninety-Three Cents ($201,017.93)** from Safeco for their Loss under the Policy. This demanded payment is in addition to and above (a) those amounts already paid to the Osteans and/or ARS, which is approximately $121,001.68, and (b) any additional amounts paid to third-parties such as a tree contractor, moving company, temporary power, or any engineer.

To the extent that the Policy provides for the recovery of reasonable attorney's fees, the Osteans notify Safeco that the Osteans intend to enforce the provision(s) of the Policy relevant to the payment of attorneys' fees. Pursuant to the Policy and O.C.G.A. §13-1-11, Safeco has ten (10) days from Safeco's receipt of this letter within which to pay the amount of **Two Hundred One Thousand, Seventeen Dollars and Ninety-Three Cents ($201,017.93)**, without also being liable for attorneys' fees. Safeco can avoid the obligation to pay attorneys' fees by paying the above-referenced sums within ten (10) days of receipt of this letter. If Safeco fails to pay all such sums, as well as any additional sums which may accrue, within ten (10) days after Safeco's receipt of this letter, Safeco shall be liable for attorneys' fees in addition to the principal, interest and other charges due under the Policy.

Should Safeco continue to refuse to pay the Osteans for their loss, the Osteans intend to pursue bad faith damages against Safeco pursuant to O.C.G.A. § 33-4-6.

Please do not hesitate to call me if you have any questions.

Very Truly Yours,

Gregory O. Shenton

Enclosures

cc:   marc.pierson@libertymutual.com (via e-mail; w/ encls.)
      charles.walter@libertymutual.com (via e-mail; w/ encls.)
      devin.sim@libertymutual.com (via e-mail; w/ encls.)
      phillip.angelillo@libertymutual.com (via e-mail; w/ encls.)
      john.pemberton@libertymutual.com (via e-mail; w/ encls.)

Lien Book 151 Page 1676
Filed and Recorded 03/03/23 4:23:00 PM
2023-0015039
Connie Taylor
Clerk of Superior Court
Cobb County, GA
Participant IDs 6904462240

Return Recorded Instrument to:
O'DELL, O'NEAL, HUNGERFORD, & BLANCHARD
506 Roswell Street, Suite 210
Marietta, Georgia 30060

Cross-Reference:
Deed Book 10292, Pages 134-135
Parcel No. 16115800120

## CLAIM OF LIEN

STATE OF GEORGIA
COUNTY OF COBB

**All Restoration Solutions, Inc.**, a contractor engaged in the business of performing services and furnishing labor, materials, and/or equipment, claims a lien in the amount of **$129,684.93**, plus interest thereon as provided by law, upon the premises or real estate of **Frank Ostean**, for satisfaction of a claim which became due on **December 10, 2022**, for furnishing labor and materials used in the improvements of property located at **126 Holland Street, Marietta, Georgia 30064**, and being more particularly described in the Warranty Deed recorded in **Deed Book 10292, Pages 134-135**, Cobb County, Georgia, which deed is hereby referred and made a part of this description.

**THIS CLAIM OF LIEN EXPIRES AND IS VOID 395 DAYS FROM THE DATE OF FILING OF THE CLAIM OF LIEN IF NO NOTICE OF COMMENCEMENT OF LIEN ACTION IS FILED IN THAT TIME PERIOD.**

**Pursuant to OCGA § 44-14-368, the owner of the real property described herein, or the owner's agent or attorney, or the contractor's agent or attorney shall have the right to elect to contest this lien and shorten the time prescribed in which to commence a lien action to enforce this claim of lien by recording in the superior court clerk's office a notice of contest of lien all as provided for in OCGA § 44-14-368.**

This notice and claim of lien is filed for record, pursuant to the provisions of OCGA § 44-14-360 *et seq.*, within 90 days since the furnishing or performance of the aforementioned labor, services, or material.

Dated this 3rd day of March, 2023.

By:    */s/ Nicholas M. Booth*
       O'DELL, O'NEAL, HUNGERFORD, & BLANCHARD
       Attorneys for All Restoration Solutions, Inc.
       506 Roswell Street, Suite 210
       Marietta, Georgia 30060
       (770) 405-0164

CANCELLATION: THIS DEBT WHICH THIS INSTRUMENT WAS GIVEN TO SECURE HAVING BEEN PAID IN FULL, THE INSTRUMENT IS HEREBY CANCELLED, AND THE CLERK OF SUPERIOR COURT OF THE AFOREMENTIONED COUNTY IS HEREBY AUTHORIZED AND DIRECTED TO SATISFY IT OF RECORD.
THIS _____ DAY OF _____, _____.          By: _____
                                                        All Restoration Solutions, Inc.

# Proposal

ResCon Chandler Group

237 Sable Ridge Way

Acworth, Ga 30102

678 665 1423 Ginger Chandler   404 271 8181 Eric Chandler

| 4/11/2023 | | | | | |
|---|---|---|---|---|---|
| CUSTOMER | DESCRIPTION | | Sheets | Mat Allow | Labor |
| Osison | | | | | |
| 126 Holland St | Front Porch/Staircase | | | | $7,200 |
| Marietta, Ga | Temp support for roof structure | | | | |
| | Remove side railing, floor boards, staircase | | | | |
| | Resupport existing floor joist system /footings | | | | |
| | Prov/inst new wood posts, handrails, bottom rail and staircase/footing | | | | |
| | Wrap all posts with finished grade trim | | | | |
| | Rem/repl lattice on skirt | | | | |
| | Rebuild staircase with new footing | | | | |
| | Paint/finish porch wood | | | | $1,200 |
| | New front and screen door | | | | $2,100 |
| | Light fixture add waterproof J Channel | | | | $85 |
| | Side Deck | | | | $6,900 |
| | Rem entire deck/staircase | | | | |
| | Rebuild entire deck, stairs to code | | | | |
| | Door to deck, subfloor rot (4 places) | | | | $750 |
| | Adjust, weatherstripping, retrim, paint | | | | |

## Plumbing

| | |
|---|---|
| Install a Water Supply, Copper, connects cold water to outside faucet relocated to make room for side deck added. | $538 |
| Drain lines in house may need fishing because paper towels used by crew | $700 |
| and house plumbing hasn't been used | |

## Insulation

| | |
|---|---|
| Reinstall properly adding where needed-attic area | $1,050 |
| Rem/repl insulation damaged under stairs by deck | $550 |

## Attic Bracing

| | |
|---|---|
| Attic Add support to short cuts on bracing 2x8 rafters | $750 |

## Flooring

| | |
|---|---|
| Kitchen Flooring | |
| Pro/inst eng flooring 208sf | $4,423 |
| Refinish wood flooring throughout damaged by crew | $2,500 |

## Windows

| | |
|---|---|
| Room on right as walk in (Office) Reinstall glass or replace correctly | $1,364 |
| Repair trim on office window properly | $245 |
| Window Stationary Glass in Living Room Window-glass broken-camoflaged | $410 |
| Window in front Bedroom where tree hit - glass seal broken-replace glass | $410 |

## Plaster/painting

| | |
|---|---|
| Plaster missing around window in room to right (Office) as you walk in, not finished-cracks | $2,200 |

| | | |
|---|---|---|
| Room to left (downstairs Bedroom), plaster seams where plaster was cut out, smooth out | | $1,200 |
| repaint walls | | |
| | | |
| **HVAC** | | |
| HVAC system ductwork- clean and deodorize | | $1,300 |
| Duct pipe in attic disconnected/damaged | | |
| Reconnect hvac in upstairs bedroom | | |
| | | |
| **Siding** | | $350 |
| Reattttach pieces not installed properly | | |
| | | |
| **Roofing** | | |
| Nail holes left in new roof must be sealed cannot warranty repair for no leaks in future | | |
| | | |
| Chimney Pipe – for wood stove, stainless pipe 35 ft kit with chimney cap & | | $775 |

TOTAL    $36,980

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| FRANK OSTEAN AND CLARA OSTEAN, | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION FILE NO. |
| | ) |
| v. | )    23-A-04316-1 |
| | ) |
| SAFECO INSURANCE COMPANY OF INDIANA, | ) |
| | ) |
| Defendant. | ) |

## **VERIFICATION**

I, Frank Ostean, being duly sworn, under penalty of perjury, deposes and says that I have

read the Verified Complaint to be filed and the facts stated therein are from first-hand knowledge

and are true and correct to the best of my knowledge and belief.

Frank Ostean

Subscribed and sworn to before me,
this _18th_ day of May, 2023.

Notary Public

My Commission Expires: _____

GREGORY O SHENTON
NOTARY PUBLIC
Cobb County, Georgia
My Commission Expires
August 8, 2025

14

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

FRANK OSTEAN AND CLARA OSTEAN,    )
    )
    Plaintiffs,    ) CIVIL ACTION FILE NO.
    )    23-A-04316-1
    v.    ) _____
    )
SAFECO INSURANCE COMPANY OF INDIANA,    )
    )
    Defendant.    )

### VERIFICATION

I, Clara Ostean, being duly sworn, under penalty of perjury, deposes and says that I have read the Verified Complaint to be filed and the facts stated therein are from first-hand knowledge and are true and correct to the best of my knowledge and belief.

_____
Clara Ostean

Subscribed and sworn to before me,
this _/8th_ day of May, 2023.

_____
Notary Public

My Commission Expires: _____

GREGORY O SHENTON
NOTARY PUBLIC
Cobb County, Georgia
My Commission Expires
August 8, 2025

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **FRANK OSTEAN AND CLARA OSTEAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| **v.** | ) | |
| | ) | |
| **SAFECO INSURANCE COMPANY OF OF INDIANA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 15, 2023, she electronically filed a copy of Defendant Safeco Insurance Company of Indiana's Notice Of Removal with the United States District Court's Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney:

Gregory O. Shenton
Shenton Law, P.C.
greg@shentonlawfirm.com

ISENBERG & HEWITT, P.C.

<u>/s/ Hilary W. Hunter</u>
Hilary W. Hunter
Georgia Bar No. 742696
600 Embassy Row, Suite 150
Atlanta, GA  30328

hilary@isenberg-hewitt.com
**Attorney for Defendant**