EXHIBIT "B"

*Tiki Brown*
**Tiki Brown**
**Clerk of State Court**
**Clayton County, Georgia**
Cornelia Ramsey

## IN THE STATE COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

LINDA MCDUFFIE,

    **Plaintiff,**

vs.

**STATE FARM FIRE AND CASUALTY
COMPANY, a foreign insurance company,**

    **Defendant.**

Civil Action No.: 2023CV00934

### SUMMONS

TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff(s) attorney, whose name and address is:

WILLIAM L. FLOURNOY, ESQ.
Attorney for Plaintiff
HAIR SHUNNARAH TRIAL ATTORNEYS, LLC
4887 Belfort Road, Suite 200
Jacksonville, Florida 32256
(904) 552-1006
wfeservice@hstalaw.com

an answer to the complaint, which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ____21____ day of ____April____, 2023.

Clerk of State Court

BY: __/s/ Cornelia Ramsey__
Deputy Clerk

*Tiki Brown*
**Tiki Brown**
**Clerk of State Cour**
**Clayton County, Georgi**
Cornelia Rams

# IN THE STATE COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

**LINDA MCDUFFIE,**

    **Plaintiff,**

**vs.**

**STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurance company,**

    **Defendant.**

Civil Action No.:2023CV00934

---

## COMPLAINT & DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, LINDA MCDUFFIE, by and through undersigned counsel, hereby files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, STATE FARM FIRE AND CASUALTY COMPANY, and in support thereof states as follows:

### PARTIES

1.

Plaintiff resides at her principal address located at 2211 Carriage Drive, Morrow, GA 30260-1322.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

1

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this action for breach of contract and bad faith denial of insurance claim, and the Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the State of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A § 33-4-4 and O.C.G.A. § 33-4-4.

### 4.

Venue is proper in this court because Defendant has a registered agent doing business in Clayton County pursuant O.C.G.A. § 33-4-4.

### 5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

### 6.

In consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued its Policy No. 81-GDM200-3 (the "Policy"). Upon information belief, the Policy insures against property damage to Plaintiff' home located at 2211 Carriage Drive, Morrow, GA 30260-1322 (the "Property"), and the Policy likewise insures against fire damage.

### 7.

Plaintiff is not in possession of a complete certified copy of the Policy. The Policy is well-known to the Defendant and has been requested by the Plaintiff. Plaintiff has also requested a certified copy of the Policy through a Request to Produce, which has been served upon the

Defendant contemporaneously with this Complaint. A partial copy[1] of the Policy is attached hereto as **Exhibit "A"**.

8.

Upon information and belief, the Policy is an all-perils policy which provides coverage for all direct physical loss except as limited or excluded by the terms of the Policy. The Policy covers property repairs on a full replacement cost basis.

9.

The Policy covers various types of expenses, including mitigation and debris removal expenses.

**FIRE DAMAGE TO THE INSURED PROPERTY**

10.

On or about April 24, 2021, a fire caused direct physical loss of, or damage to, the Plaintiff's Property. The Policy was in effect at the time of the above-referenced event.

11.

Plaintiff promptly and timely notified Defendant of the damage caused by the fire and made a claim pursuant to the Policy. Defendant acknowledged receipt of the loss and assigned claim no. 11-18X8-52C to the loss (the "Claim").

12.

At all times, Plaintiff made herself and her property available to, and fully cooperated with the Defendant and its representative and agent to inspect and investigate the damages caused by the fire.

---

[1] Prior to initiating the above-styled action, Plaintiff requested a complete certified copy of the relevant policy of insurance (including all endorsements). Defendant has not provided said copy of the policy.

13.

On or around June 15, 2021, Defendant, through its authorized representatives and agents, performed a site inspection of the Property.

14.

Defendant incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's Claim when he undertook the handling of the disposition of the claim.

15.

Defendant grossly underestimated the scope of damages sustained to the Plaintiff's Property as a result of the fire event (*e.g.*, a resident of the Plaintiff's Property deceased during the fire, and Defendant has refused to properly adjust and pay for the damage).

16.

As a result of Defendant's gross underestimation, Plaintiff retained US Claim Adjusters ("US Claims") to serve as its licensed public adjuster. US Claims inspected the Property and determined the proper amount necessary to return the Property to its pre-loss condition to be $478,267.37[2]. A true and correct copy of US Claims' estimate is attached hereto as **Exhibit "B"**.

17.

On December 1, 2021, Defendant conducted a re-inspection of Plaintiff's Property. Plaintiff cooperated with Defendant's inspection at all times.

18.

To the date of the filing of this Complaint, Defendant has failed to provide Plaintiff with any updates or to otherwise supplement adjustment of the Claim. As such, Defendant has refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any

---

[2] Replacement cost value for mitigation, rebuild, and debris removal and additional living expenses.

additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the amount of damage and the amount it will cost the Plaintiff in order to be placed in the same position they were in prior to the fire.

19.

Plaintiff made repeated requests for payment of the claim, including Sworn Statement in Proof of Loss sent to Defendant on April 04, 2022. A true and accurate copy of the Sworn In Proof of Loss is attached hereto as **Exhibit "C"**. Despite this demand for $478,267.37, less prior payments and applicable deductible, Defendant has continued to frivolously underestimate and underpay Plaintiff's claim without just cause when the obligation to settle the claim has become reasonably clear, under one or more portions of the insurance policy coverage.

20.

The Plaintiff's April 12, 2022, correspondence (**Exhibit "D"**) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to O.C.G.A. §33-4-6 guidelines. After putting Defendant on notice of a potential lawsuit, through the formal 60-Day demand, the Defendant continued to frivolously and baselessly deny Plaintiff's claim without just cause.

21.

Defendant did not act fairly and honestly toward the Plaintiff with due regard to the Plaintiff's claim when the Defendant failed to compensate the Plaintiff for its damages in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward the Plaintiff, and with due regard for its interests.

22.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

23.

There exists a genuine, justifiable controversy between the Plaintiff and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiff's Property caused by the fire that occurred on February 18, 2021. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

24.

Plaintiff has suffered physical damage to its Property in the amount of $478,267.37, or in an amount to be determined at trial.

**COUNT I – BREACH OF CONTRACT**

25.

Plaintiff adopts, re-allege, and incorporate its allegations set forth in Paragraphs 1-24 of this Complaint as if fully set forth herein.

26.

Plaintiff has performed all conditions to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property, and or the Defendant has waived any and all other conditions.

27.

Defendant is required to compensate the Plaintiff for all direct physical losses under the terms of the Policy.

28.

Despite Plaintiff's timely written demand that Defendant pay the covered losses, Defendant has frivolously and baselessly failed, and refused to properly adjust payment of Plaintiff's claim under the terms of the Policy, causing further delay in restoring Plaintiff's property to its pre-loss condition.

29.

Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

30.

Defendant has used the tactic of denying compensation to the Plaintiff for her covered losses that were sustained due to the fire event. Further, Defendant has used the tactic of delaying payment to the Plaintiff in an effort to misrepresent the language of the Policy.

31.

As a result of the Defendant's tactic of denying and delaying Plaintiff's claim, the Plaintiff has sustained covered losses from direct physical damage to the insured Property in the amount of $478,267.37, or in an amount to be determined at trial. In addition, Plaintiff has further covered losses from mitigation, debris removal, and temporary repairs in an amount to be determined at trial.

7

32.

As a direct result of Defendant's breaches of its respective insurance contract, Plaintiff has been damaged and continues to suffer significant damages.

33.

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

34.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor for compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II – BAD FAITH

35.

Plaintiff adopts, realleges, and incorporates its allegations set forth in Paragraphs 1-34 of this Complaint as if fully set forth herein.

36.

Defendant has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and faith dealing to achieve a proper disposition of the Plaintiff's Claim.

37.

Defendant has not attempted in good faith to settle the Plaintiff's claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for its interests, namely, but not limited to:

8

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue.  <u>See</u> O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies.  <u>See</u> O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies.  <u>See</u> O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear.  <u>See</u> O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.  <u>See</u> O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation.  <u>See</u> O.C.G.A. § 33-6-34(6);

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims.  <u>See</u> O.C.G.A. § 33-6-34(7); and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action.  In the case of claims denials, such denials shall be in writing.  <u>See</u> O.C.G.A. § 33-6-34(10).

38.

The above and foregoing actions of Defendant give rise to a cause of action for bad faith as the Defendant has frivolously and without a reasonable basis refused to pay Plaintiff's covered

9

loss within sixty (60) days after Plaintiff's timely written demand (Exhibit "D") for payment according to O.C.G.A § 33-4-6.

### 39.

Defendant has frivolously and without a reasonable basis used the tactic of denying compensation to the Plaintiff for her covered loss that was sustained due to the fire event. Further, Defendant has frivolously and without a reasonable basis used the tactic of delaying payment to pay the Plaintiff in an effort to misrepresent the language of the Policy.

### 40.

Defendant's refusal to pay Plaintiff's covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

### 41.

Defendant's breach of the Policy it sold to the Plaintiff is in bad faith, and, pursuant to O.C.G.A. § 33-4-6, Defendant is obligated in bad faith, and, as such, Plaintiff is entitled to all damages, whether foreseeable or not, that are a direct result of Defendant's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and Plaintiff's consultant and expert fees.

### 42.

Pursuant to O.C.G.A. § 33-4-6, Defendant is obligated to pay any amounts owed to the Plaintiff within sixty (60) days of receipt of formal demand and have failed to do so. As a result of that frivolous failure – which was arbitrary, capricious, and without a reasonable basis – Defendant is liable for all amounts due under its respective policy plus fifty percent (50%), pursuant to O.C.G.A. § 33-4-6.

### 43.

Pursuant to O.C.G.A. § 33-6-34, Defendant owed Plaintiff a duty of good faith and fair dealing and had an affirmative duty to adjust Plaintiff's claim fairly and promptly and to make a reasonable effort to settle claims with the insured when, under all the circumstances it could and should have done so had it acted fairly and honestly.  Because Defendant has breached these duties, it is liable to Plaintiff for all damages as a result of the breach, including but not limited to those specified in O.C.G.A. § 33-4-6.

44.

Pursuant to O.C.G.A. § 33-6-34, Defendant breached its duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly when it failed to pay the Plaintiff when it conducted a reasonable re-investigation of Plaintiff's Claim.  Moreover, such failure was arbitrary, capricious, and without probable cause.

45.

As a result, pursuant to O.C.G.A. § 33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5000, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer." Plaintiff is entitled, in addition to its covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, under O.C.G.A. § 33-4-6 for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss Claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

11

## COUNT III – ATTORNEY'S FEES

46.

Plaintiff incorporates and re-alleges paragraphs 1 through 45 as if set out fully herein.

47.

Defendant has acted in bad faith and has been stubbornly and maliciously litigious and has caused Plaintiff unnecessary trouble and expense.

48.

Under the circumstances, Defendant is liable to Plaintiff for all of Plaintiff's costs and expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 9-15-14, O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

46.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

47.

**WHEREFORE**, Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which it is justly entitled, and thus prays for judgment against the Defendant, as follows:

a.  That this Court grant judgment in favor of the Plaintiff and against Defendant in the amount of $478,367.37, or in an amount to be determined at trial.

b.  Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

c.  Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, for Defendant's bad faith delay, denial, and its

12

intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d.  Plaintiff's attorneys' fees and costs of suit in this action;

e.  Plaintiff's consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.


Respectfully submitted this 21st day of April, 2023.

**Hair Shunnarah Trial Attorneys, LLC**

William L. Flournoy, Esq.
Georgia Bar No.: 755135
4887 Belfort Road, Ste. 200
Jacksonville, Florida 32256
Tel.: (904) 552-1006

***E-Mail for Electronic Service:***
WFEservice@hstalaw.com
***Secondary E-Mail Addresses:***
wflournoy@hstalaw.com
jdepalo@hstalaw.com
rallen@hstalaw.com

2023CV00034

PLAINTIFFS'
EXHIBIT
A

State Farm Fire and Casualty Company
*A Stock Company With Home Offices in Bloomington, Illinois*

PO Box 88049
Atlanta GA 30356-9901

AT2          H-27-2257-FB82  F  H  W
                    3200
MCDUFFIE, LINDA
2211 CARRIAGE DR
MORROW GA   30260-1322



# RENEWAL DECLARATIONS

**AMOUNT DUE:**                          **None**
**Payment is due by** TO BE PAID BY MORTGAGEE

**Policy Number:**   81-GD-M200-3

**Policy Period:**   12 Months
**Effective Dates:** OCT 17 2020 to OCT 17 2021
The policy period begins and ends at 12:01 am standard
time at the residence premises.

### Homeowners Policy

**Location of Residence Premises**
2211 CARRIAGE DR
MORROW GA 30260-1322

**Your State Farm Agent**
MARK HUTCHENS
2147 MOUNT ZION PKWY
MORROW GA          30260-3318

**Phone:** (770) 892-0179

| | |
|---|---|
| **Construction:**   Masonry Veneer | **Roof Material:** Composition Shingle |
| **Year Built:**   1967 | **Roof Installation Year:**   2008 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-holder written notice in compliance with the policy provisions or as required by law.

## IMPORTANT MESSAGES

NOTICE: Information concerning changes in your policy language is included.  Please call your agent with any questions. Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

## PREMIUM

| | |
|---|---|
| Annual Premium | $2,462.00 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert Discount            Home/Auto Discount | |

| | |
|---|---|
| **Total Premium** | **$2,462.00** |

Prepared  AUG 24 2020
HO 3000

*Thank you for letting us serve you...*

Page  1 of  4

**State Farm**

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| MCDUFFIE, LINDA | **Mortgagee**<br>PHH MORTGAGE SERVICES<br>ITS SUCC AND/OR ASSIGNS ATIMA<br>PO BOX 5954<br>SPRINGFIELD OH  45501-5954<br><br>Loan Number:<br>0706514072 |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 406,700 |
| Other Structures | $ 40,670 |
| B Personal Property | $ 305,025 |
| C Loss of Use | $ 122,010 |
| Fungus (including Mold) Limited Coverage | $ 10,000 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 300,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

## INFLATION

Inflation Coverage Index: 268.2

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses 1% | $ 4,067 |

## LOSS SETTLEMENT PROVISIONS

A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

AUG 24 2020

HO 3000

81-GD-M200-3

 **StateFarm**

## FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| HW-2111 | Homeowners Policy |
| Option ID | Increase Dwlg up to $81,340 |
| Option OL | Ordinance/Law  10%/  $40,670 |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| HO-2465 | Fungus (Incl Mold) Liability |
| HO-2584 | Fungus (Incl Mold) Limited Cov |
| HO-2444 | Back-Up Of Sewer Or Drain - |
| | 5% of Coverage A/$ 20,335 |
| HO-2231.1 | *Amendatory Endorsement |
| HO-2356 | *Amendatory End - Liability |
| | *New Form Attached |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaxell*
Secretary

*Michael F. Tipsord*
President

**&** *StateFarm*®

**Your coverage amount....**

It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home.  State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

AUG 24 2020

HO-3000

81-GD-M200-3      028518

HO-2231.1C
Page 1 of 3

# IMPORTANT NOTICE

## Regarding Changes to Your Policy

Effective with this policy term, **HO-2231.1 HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)** replaces **HO-2231 HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)**

This notice summarizes the changes being made to your policy.  Please read the new endorsement carefully and note the following changes:

- Under **DEFINITIONS**, the definition of "occurrence" has been updated as it relates to bodily injury and property damage. In order to be considered one occurrence, bodily injury and property damage may occur from continuous or repeated exposure.
- Under **SECTION I -- LOSSES NOT INSURED**, the Intentional Losses provision has been revised to add reference to sexual assault to the exceptions for loss arising out of or caused by family violence.
- Editorial changes have been made to the following provisions:
    - o   **SECTION I -- CONDITIONS, Mortgagee Clause**
    - o   **SECTION I AND SECTION II -- CONDITIONS, Cancellation**
    - o   **SECTION I AND SECTION II -- CONDITIONS, Nonrenewal**
    - o   **OPTIONAL POLICY PROVISIONS, Option ID -- Increased Dwelling Limit**
- **SECTION I AND SECTION II -- CONDITIONS**
    - o   **Electronic Delivery** has been deleted.
    - o   **Concealment or Fraud** has been revised as follows:
        - -   The word "void" has been removed.
        - -   Added reference to sexual assault to the exceptions for loss arising out of or caused by family violence.

Endorsement **HO-2231.1** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)

This endorsement modifies insurance provided under the HOMEOWNERS POLICY

### DEFINITIONS

The definition of "*occurrence*" is replaced by the following:

*"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.   *bodily injury*; or

b.   *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

### SECTION I -- LOSSES NOT INSURED

Intentional Losses is replaced by the following:

**Intentional Losses.** If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss.  This applies regardless of whether the *insured* is charged with or convicted of a crime.

This does not apply to:

a.   an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss; or

b.   a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

(1) arises out of family violence or sexual assault against an innocent *insured*; and

(2) is caused by an intentional act of an *insured* against whom a family violence or sexual assault complaint is brought.

## SECTION I – CONDITIONS

Under **Mortgagee Clause**, paragraph 10.c. is replaced by the following:

c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

## SECTION I AND SECTION II – CONDITIONS

**Concealment or Fraud** is replaced by the following:

**Concealment or Fraud.**

a. *We* do not provide any coverages under this policy for *you* or any other *insured* if *you* or any other *insured* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

(1) on which *we* rely and are either:

(a) material; or

(b) made with intent to deceive; or

(2) that contribute to the loss.

b. No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

(1) increases the risk at the time of loss; or

(2) contributes to the loss.

This item, b., does not apply to failure to tender payment of premium.

c. Violation of this condition by an *insured* does not apply to a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

(1) arises out of family violence or sexual assault against an innocent *insured*; and

(2) is caused by an intentional act of an *insured* against whom a family violence or sexual assault complaint is brought.

Under **Cancellation**, paragraphs 5.a. and 5.b. are replaced by the following:

a. *You* may cancel this policy at any time by giving *us* advance notice of the date cancellation is to take effect. *We* may require written, electronic, or other recorded verification of the request for cancellation prior to such cancellation taking effect.

If only *your* interest is affected, the effective date of cancellation will be the later of:

(1) the date *we* received *your* notice of cancellation; or

(2) the date specified in the notice.

If notice must be given to a governmental agency, mortgagee, or other third party, the effective date of cancellation may be extended in order for *us* to provide notice of cancellation to *you* and the other party at least 10 days before the date cancellation takes effect.

b. *We* may cancel this policy by providing notice to a named insured shown on the *Declarations*. The notice will provide the date cancellation is effective.

(1) When *you* have not paid the premium, *we* may cancel at any time by providing notice at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by providing notice at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

(a) if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

(b) if the risk has changed substantially since this policy was issued.

*We* may cancel this policy by providing notice at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

**Nonrenewal** is replaced by the following:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

81-GD-M200-3     028519

HO-2231.1C
Page 3 of 3

**Nonrenewal.** If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will provide a nonrenewal notice to a named insured shown on the *Declarations*.

If *we* decide not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

**Electronic Delivery** is deleted.

## OPTIONAL POLICY PROVISIONS

**Option ID** is replaced by the following:

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under COVERAGE A – DWELLING according to the **Loss Settlement Provision** shown in the *Declarations*.

1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amounts

HO-2231.1

not to exceed the Option ID limit shown in the *Declarations*.

2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under COVERAGE A – DWELLING, Other Structures exceeds the limit of liability shown in the *Declarations* for Other Structures, *we* will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations*.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

(CONTINUED)

# IMPORTANT NOTICE

## Regarding Changes to Your Policy

Effective with this policy term, **HO-2356 AMENDATORY ENDORSEMENT – SECTION II – LIABILITY COVERAGES** is added to your policy.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

- Under **SECTION II – EXCLUSIONS**, Under item 2.a., language has been added to the exclusion to create exceptions for written contracts that directly relate to the ownership, maintenance, or use of any insured location and when the liability of others is assumed by you.
- Under **SECTION II – EXCLUSIONS**, Under item 2.c., language has been added to the exclusion to create an exception for pet damage to property rented to, used or occupied by, or in the care, custody, or control of any insured.

Endorsement **HO-2356** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## AMENDATORY ENDORSEMENT– SECTION II – LIABILITY COVERAGES

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

SECTION II – EXCLUSIONS

Under **SECTION II – EXCLUSIONS**, 2.a. and 2.c. are replaced by the following:

2. Coverage L does not apply to:

   a. liability:

      (1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

      (2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to:

         (a) liability for damages that the *insured* would have in absence of the contract or agreement; or

         (b) written contracts:

            (i) that directly relate to the ownership, maintenance, or use of any *insured location*; or

            (ii) when the liability of others is assumed by *you* prior to the *occurrence*;

         unless excluded elsewhere in the policy;

   c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by:

      (1) fire;

      (2) smoke;

      (3) explosion;

      (4) abrupt and accidental damage from water; or

      (5) household pets, up to $500 in excess of *your* security deposit;

   All other policy provisions apply.

HO-2356

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

81-GD-M200-3      028520

553-2634.1

## PREMIUM DISCOUNT AVAILABLE FOR USE OF IMPACT-RESISTIVE ROOFING PRODUCTS

State Farm® offers a premium discount for homes that have qualified impact-resistive roofing materials.

Underwriters Laboratories (UL) and Factory Mutual (FM) are nationally recognized testing laboratories that develop safety standards and test products to verify they meet specific performance standards. Both UL and FM have developed testing standards that measure the impact resistance of various roofing materials. The roofing products tested by UL and FM are rated from Class 1 to Class 4, with Class 4 providing the greatest roofing protection.

State Farm offers a premium discount when qualified UL certified or FM approved Class 3 or Class 4 roofing materials have been installed on your home. The discount applies to both new and replacement roofs installed since May 1996 with UL certified products, and since July 2005 with FM approved products.

Discounts are not available for wood roofs, or roofs (other than qualifying metal roofs) that have been overlaid on to existing roofing. Discounts are also subject to limitations and may not be available on all UL or FM Class 3 and 4 impact-resistant roofing products.

Manufacturers continue to bring UL certified and FM approved roofing products to the consumer marketplace. You can visit our web site at http://www.statefarm.com/insurance/other/roofinfo.asp for a list of qualifying products in your state.

If you have any questions about the discounts available for installing an impact-resistive roof or to see if your roof qualifies, please contact your State Farm agent.

**This discount program does not constitute an endorsement or any warranty of performance on the part of State Farm for any particular roofing product. Please research and determine what roofing material is best suited for your home, location and environmental conditions.**

553-2634.1 (C)                    (12/09)

553-3665 GA

## Information About Your Premium

Claims and information from other State Farm® policies in your household may have been used to determine the premium shown. A policy may be considered "in your household" if, according to our records, the policy has a name and address in common with this policy.

Consumer reports may also be used to determine the price you are charged. We may obtain and use a credit-based insurance score developed from information contained in these reports. We may use a third party in connection with the development of your insurance score.

If a credit-based insurance score is used, you have the right to request, no more than once in a 12 month period that your policy be re-rated. The resulting impact due to the credit portion of the re-rated insurance score will not increase your premium; however, your overall premium may decrease, remain the same, or increase due to other factors impacting your total premium.

We occasionally collect personal information from persons other than the individual or individuals listed on the policy. Such personal information may, in certain circumstances, be disclosed to third parties without your authorization. If you would like additional information concerning the collection and disclosure of your personal information – and your right to see and correct any personal information in your files – it will be furnished upon request.

553-3665 GA (C)

(CONTINUED)

553-2798

# IMPORTANT NOTICE . . . Discounts and Rating

The longer you are insured with State Farm* and the fewer claims you have, the lower your premium. For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for the Plan in the most recent three-year period since becoming insured with State Farm. Premium adjustments under the Claim Record Rating Plan are based on the number of years you have been insured with State Farm and on the number of claims that we consider for the Plan. Depending on the Plan(s) that applies in your state/province, claims considered for the Plans generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium. For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for the Plans, please contact your State Farm agent.

553-2798 (C)        (10/07)

553-4157

# NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Declarations are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Declarations are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Declarations will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-4157 (C)



## US Claims Adjusters

US Claims Adjusters
4439 Carnes St Suite 13
Acworth, GA 30101

**PLAINTIFFS' EXHIBIT**
**B**

(850) 642-7876 PH
(800) 558-0138 FX

| | |
|---|---|
| Client: | McDuffie |
| Property: | 2211 Carriage Dr |
| | Morrow, GA 30260 |

Operator:    IAMLORIB

| | | | |
|---|---|---|---|
| Estimator: | Lori Bradshaw | Business: | (850) 642-7876 |
| Business: | 4439 Carnes St Suite 13 | | |
| | Acworth, GA 30101 | | |

| | | | |
|---|---|---|---|
| Type of Estimate: | Fire | | |
| Date Entered: | 8/1/2022 | Date Assigned: | |

| | |
|---|---|
| Price List: | GAAT8X_APR22 |
| Labor Efficiency: | Restoration/Service/Remodel |
| Estimate: | MCDUFFIE |

This estimate is based off of Trade Expert Reports and or Estimates.
I gather the information from the  experts in their respective trades
 and compile the information . There are occasions where I add
to the estimates for known missed items.



## US Claims Adjusters

US Claims Adjusters
4439 Carnes St Suite 13
Acworth, GA 30101

(850) 642-7876 PH
(800) 558-0138 FX

**MCDUFFIE**

**MCDUFFIE**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. Electrical Hall and sons* | 1.00 EA | 7,560.00 | 0.00 | 7,560.00 | (0.00) | 7,560.00 |

Main Level:

kitchen
 drain and water lines
Ice maker box for refrigerator
Remove and install new wash box connection for drain, hot and cold water lines.

Bathroom 1
Bust up floor and rough in bathtub, toilet and sink

Bathroom 2
Install shower liner, drain for toilet and water lines

Bathroom 3
Install new drain, water lines for new fixtures

Primary Bathroom
rough in drain for toilet, bathtub, shower pan and sink

| | | | | | | |
|---|---|---|---|---|---|---|
| 2. Adv Pro Refrig & Elec* | 1.00 EA | 112.60 | 0.00 | 112.60 | (0.00) | 112.60 |
| 3. Adv Pro Refrig & Elec* | 1.00 EA | 9,580.00 | 0.00 | 9,580.00 | (0.00) | 9,580.00 |

Replace 2 ton heat pump complete system

| | | | | | | |
|---|---|---|---|---|---|---|
| 4. Adv Pro Refrig & Elec* | 1.00 EA | 16,080.00 | 0.00 | 16,080.00 | (0.00) | 16,080.00 |

Replace electric throughout the home and panels

| | | | | | | |
|---|---|---|---|---|---|---|
| 5. Adv Pro Refrig & Elec* | 1.00 EA | 1,175.00 | 0.00 | 1,175.00 | (0.00) | 1,175.00 |

REMOVE GAS LINE AND RE-INSTALL TO A DIFFERENT
LOCATION PART AND LABOR INCLUDING PROJECT
TURNKEY

| | | | | | | |
|---|---|---|---|---|---|---|
| 6. Rebuild Estimate Helping Hands co. * | 1.00 EA | 32,727.38 | 0.00 | 32,727.38 | (0.00) | 32,727.38 |

Additional framing
Treat wood studs
replacement of some flooring.

| | | | | | | |
|---|---|---|---|---|---|---|
| 7. Drywall TGE* | 1.00 EA | 8,750.00 | 0.00 | 8,750.00 | (0.00) | 8,750.00 |

Labor only for Drywall installation

To this point the supplement for the above items is
87,132.38

| | | | | | | |
|---|---|---|---|---|---|---|
| 8. Insurance company Estimate* | 1.00 EA | 149,764.84 | 0.00 | 149,764.84 | (0.00) | 149,764.84 |



**US Claims Adjusters**

US Claims Adjusters
4439 Carnes St Suite 13
Acworth, GA 30101

(850) 642-7876 PH
(800) 558-0138 FX

**CONTINUED - MCDUFFIE**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| This line item is referring to the estimate received from state farm. | | | | | | |
| The date and time is located in the bottom left hand corner. 01/24/2022  9:54 am | | | | | | |
| It appears the estimate was written by Van Camp, Bryan at 844-458-4300 X 3099940631 | | | | | | |
| It has an RCV of $149,764.84 and an ACV of $115,927.12 | | | | | | |
| | | | | | | |
| The estimate contains a statement that says: | | | | | | |
| The estimate is priced based on estimated market pricing at the time of the loss | | | | | | |
| Adjusters in market pricing and timing of the repairs may impact the final cost of covered repairs. | | | | | | |
| Should you or the contractor you select have questions concerning our estimate, | | | | | | |
| Contract your claim representative. If your contractor's estimate is higher than ours, | | | | | | |
| You should contract your claim representative prior to beginning repairs. | | | | | | |
| State Farm will work with you and your contractor to determine the actual and necessary cost of | | | | | | |
| Covered repairs at the time repairs will be completed, subject to policy limits. | | | | | | |
| 9.  Personal Content s* | 1.00 EA | 87,875.95 | 0.00 | 87,875.95 | (0.00) | 87,875.95 |
| See Excel spread sheet attached | | | | | | |
| 10.  Water Extraction & Remediation Serv Pro* | 1.00 EA | 28,421.62 | 0.00 | 28,421.62 | (0.00) | 28,421.62 |
| see 2 word documents that add up to this total. | | | | | | |
| 11.  Hazardous Material Remediation Asbestos MB Construction* | 1.00 EA | 3,062.58 | 0.00 | 3,062.58 | (0.00) | 3,062.58 |
| See Servpro estimate | | | | | | |
| 12.  Additional Living expenses will be exhausted * | 1.00 EA | 122,010.00 | 0.00 | 122,010.00 | (0.00) | 122,010.00 |
| see payments paid toward ALE and also her list of expenses | | | | | | |
| | | | | | | |
| **Total:  MCDUFFIE** | | | **0.00** | **467,119.97** | **0.00** | **467,119.97** |
| | | | | | | |
| **Line Item Totals:  MCDUFFIE** | | | **0.00** | **467,119.97** | **0.00** | **467,119.97** |



**US Claims Adjusters**

US Claims Adjusters
4439 Carnes St Suite 13
Acworth, GA 30101

(850) 642-7876 PH
(800) 558-0138 FX

## Summary

| | |
|---|---:|
| Line Item Total | 467,119.97 |
| **Replacement Cost Value** | **$467,119.97** |
| **Net Claim** | **$467,119.97** |

Lori Bradshaw



**US Claims Adjusters**

US Claims Adjusters
4439 Carnes St Suite 13
Acworth, GA 30101

(850) 642-7876 PH
(800) 558-0138 FX

## Recap of Taxes

|  | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|
| Line Items | 0.00 | 0.00 | 0.00 |
| **Total** | **0.00** | **0.00** | **0.00** |



**US Claims Adjusters**

US Claims Adjusters
4439 Carnes St Suite 13
Acworth, GA 30101

(850) 642-7876 PH
(800) 558-0138 FX

## Recap by Room

| | | |
|---|---|---|
| **Estimate: MCDUFFIE** | **467,119.97** | **100.00%** |
| **Subtotal of Areas** | **467,119.97** | **100.00%** |
| **Total** | **467,119.97** | **100.00%** |



**US Claims Adjusters**

US Claims Adjusters
4439 Carnes St Suite 13
Acworth, GA 30101

(850) 642-7876 PH
(800) 558-0138 FX

## Recap by Category

| Items | Total | % |
|---|---:|---:|
| CONTENT MANIPULATION | 87,875.95 | 18.81% |
| DRYWALL | 8,750.00 | 1.87% |
| ELECTRICAL | 7,560.00 | 1.62% |
| HAZARDOUS MATERIAL REMEDIATION | 3,062.58 | 0.66% |
| HEAT,  VENT & AIR CONDITIONING | 26,947.60 | 5.77% |
| USER DEFINED ITEMS | 304,502.22 | 65.19% |
| WATER EXTRACTION & REMEDIATION | 28,421.62 | 6.08% |
| Subtotal | 467,119.97 | 100.00% |

This Estimate is a preliminary estimate only. It is subject to change if any further damages are discovered during the
Investigation, Mitigation, Demolition or build back portion of the claim.

MCDUFFIE                                                                            4/10/2023        Page: 7

**PLAINTIFFS EXHIBIT**

**C**

POLICY NUMBER:

81-GD-M200-3

COMPANY CLAIM NUMBER:

11-18X8-52C

## Sworn Statement

POLICY AMT. AT TIME OF LOSS:

Cov A 406, 700  Cov 41,670,  Cov B 203,025  Cov C122,010

IN

## PROOF OF LOSS

AGENT:

AGENCY AT:

DATE ISSUED:

Oct 17, 2020

On 04/20/22, Linda J. McDuffie personally appeared before me and produced a GA DL as identification.
My commission expires 03/15/26

DATE EXPIRES:

Oct 17, 2021

To the: iDesk Adjuster/Claim owner
Of State Farm Insurance company
At time of loss, by the above indicated policy of insurance you insured:
2211 Carriage Dr Morrow, GA 30260

Against loss by Fire _____ to the property described according to the terms and conditions of said policy and all of forms, endorsements, transfers and assignments attached thereto.

TIME AND ORIGIN

A Fire _____ loss occurred about the hour of _____ o'clock AM/PM., on the _____ day of April 24 , 20 21 . The cause and origin of the said loss were: Electrical fire in the wall at the outlet

OCCUPANCY

The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: Residence

TITLE AND CHANGES

At the time of the loss, the interest of your insured in the property described therein was Home Owner/Policy Holder _____ INTEREST 100% _____. No other person or persons had any interest therein or encumbrance thereon, except: _____ Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except N/A

TOTAL

THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss, $ 872,405.00 _____, as more particularly specified in the apportionment attached, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

VALUE

THE ACTUAL CASH VALUE of said property at the time of the loss was . . . . . . $ 872,405

LOSS

THE WHOLE LOSS AND DAMAGE was . . . . . . . . . . . . . . . . . . . . . . $ 356257.37

AMT. CLAIMED

THE AMOUNT CLAIMED under the above numbered policy number is . . . . . . $ 356,287.37+ALF 122,010=478,267.37 *

STATEMENTS OF INSURED

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

State of GA _____

County of Gwinnett _____

Insured Linda J. McDuffie

Insured: _____

Subscribed and sworn to before me this 20th day of April , 20 22. Personally Known to Me _____ I.D. GA DL

Notary: Nicholas Harris

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THRID DEGREE.

* The insured(s) reserve(s) all right(s) he/she/it/they may have under the insurance policy, including, but not limited to, supplementing the claim/or filing additional proofs of loss, should cause arise. This proof of loss does not address hidden damages and does not include any unknown damages or complications or additional costs that may be associated with any repair/replacement of the damages to the insured(s) property. If this proof of loss does not comply with the policy conditions, you are hereby instructed to inform the insured(s) within 15 days from the date of the proof of loss or any deficiencies will be considered waived.



*swift / currie*

PLAINTIFFS'
EXHIBIT

___D___

ATLANTA / BIRMINGHAM

June 21, 2022

**VIA E-MAIL:  msbrown@bushlawgoup.net**
Matthew S.  Brown, Esq.
Bush Law Group, LLC
4887 Belfort Road
Suite 200
Jacksonville, Florida 32256

>     Re:   Insured:              Linda McDuffie
>           Policy No.:           81-GDM200-3
>           Claim No.:            11-18X8-52C
>           Date of Loss:         April 24, 2021
>           Location:             2211 Carriage Drive
>                                 Morrow, Georgia  30260-1322

Dear Matthew:

This Firm has been retained to represent State Farm Fire and Casualty Company in conjunction with the above referenced claim.  Please allow the following to serve as a response to your April 22, 2022, letter.  At this time, and for the below reasons, State Farm respectfully rejects Ms.  McDuffie's request for additional payment to the extent that it purports to be a Demand under O.C.G.A.  § 33-4-6.  In so doing, State Farm relies on the following:

(a)   The purported O.C.G.A.  § 33-4-6 demand is untimely and premature under the terms of the Policy;

(b)   The purported O.C.G.A.  § 33-4-6 demand is improper because Plaintiff has failed to satisfy her obligations under the Policy and the claim is not yet payable;

(c)   Even if the purported Demand were timely and Ms. McDuffie had complied with the terms of the Policy, both of which State Farm denies, at all times State Farm has acted in accordance with the terms and conditions of the Policy based on the facts and circumstances of this claim;

Each of the foregoing is taken in turn below.

**JESSICA M.  PHILLIPS**
P: 404.888.6148 / F: 404.888.6199
Jessica.phillips@swiftcurrie.com

SWIFT, CURRIE, McGHEE & HIERS, LLP
2

(a)    **The purported O.C.G.A. § 33-4-6 demand is untimely and premature under the terms of the Policy.**

State Farm hereby rejects any purported bad faith demand contained in the April 22, 2022, letter as untimely and premature as it was not made at a time when the claim was payable. Ms. McDuffie signed her purported Sworn Proof of Loss statement on April 20, 2022 but the proof of loss was not received by State Farm until April 29, 2022. This means that, under the terms of the Policy, the earliest that the claim could become payable was on Tuesday, June 28, 2022. Any demand made before that date was ineffective and untimely as a matter of law. Specifically, the Policy provides:

### SECTION I – CONDITIONS

8. **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after *we* receive *your* proof of loss and:
   a. Reach agreement with *you*;
   b. There is an entry of final judgment; or
   c. There is a filing of an appraisal award with *us*.

Even if State Farm had completed its investigation and Ms. McDuffie had complied with all of the terms of coverage, which State Farm denies as explained in more detail below, the claim would still not be payable until 60 days *after* the proof of loss was submitted. Under Georgia law, in order to be valid, a purported bad faith claim pursuant to O.C.G.A. § 33-4-6 can only be made when a claim is payable. Lloyds Syndicate No. 5820 v. AGCO Corp., 294 Ga. 805 (2014).

In light of the foregoing, State Farm hereby rejects Ms. Linda McDuffie's purported bad faith demand in the above referenced claim as premature and untimely in accordance with the terms and provisions of the Policy and applicable Georgia law.

(b)    **The purported O.C.G.A. § 33-4-6 demand is improper because Plaintiff has failed to satisfy her obligations under the Policy.**

In addition to the reasons set forth above, your April 22, 2022 letter is untimely and improper because Ms. McDuffie has failed to satisfy her obligations under the Policy as of the time the letter was sent and thus the claim was not payable. Specifically, the Policy provides:

## SECTION I – CONDITIONS

2. **Your Duties After Loss.**  After a loss to which this insurance may apply, **you** must cooperate with us in the investigation of the claim and also see that the following duties are performed:

    a. give immediate notice to **us** or **our** agent and also notify:
        (1)  The police if the loss is caused by theft, vandalism, or any other criminal act; and
        (2)  The credit card company if the loss involved a credit card or back fund transfer card;

    b. Protect the property from further damage or loss and also:
        (1)  Make reasonable and necessary repairs required to protect the property; and
        (2)  Keep an accurate record of repair expenses;

    c. Prepare an inventory of damaged or stolen personal property:
        (1)  Showing in detail the quantity, description, age, replacement cost, and amount of loss; and
        (2)  Attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d. As often as **we** reasonable require;
        (1)  Exhibit the damaged property,
        (2)  Provide **us** with any requested records and documents and allow us to make copies;
        (3)  While not in the present of any other **insured**;
            (a)  Give statements; and
            (b)  Submit to examinations under oath; and
        (4)  Produce employees, members of the **insured's** household, or other for examination under oath to the extent it is within the **insured's** power to do so; and

    e. Submit to **us**, within 60 days after the loss, **your** signed, sworn proof of loss that sets forth, to the best of **your** knowledge and belief;

        (1)  The time and cause of loss;
        (2)  Interest of the **insured** and all others in the property involved and all encumbrances on the property;
        (3)  Other insurance that may cover the loss;

SWIFT, CURRIE, McGHEE & HIERS, LLP
4

    (4)  Changes in title or occupancy of the property during the term of this policy;

    (5)  Specifications of any damaged structure and detailed estimates for repair of the damage

    (6)  An inventory of damaged or stolen personal property described in 2.c.;

    (7)  Receipts for additional living expenses supporting the fair rental value loss;

...

To date, Ms. McDuffie failed to satisfy her duties under the Policy by failing to provide critical information related to the adjustment and investigation of her claim. As recently as April 20, 2022, Bryan Van Camp, State Farm representative, sent Ms. McDuffie and her Public Adjuster, Lori Bradshaw, correspondence requesting this information. The April 20, 2022 request was the most recent in a series of correspondence from State Farm asking for this critical information, including but not limited to, letters dated December 27, 2021, January 5, 2022, January 17, 2022, March 18, 2022, and March 21, 2022. Specifically, the information requested included:

- Information regarding the status of repairs to the Property;

- Receipts for permits obtained in conjunction with these repairs;

- The invoice from the contractor who performed the original asbestos abatement for the Property;

- The dates of commencement and completion of the original asbestos abatement for the Property; and

- A breakout of the charges for the electrical bid to identify what electrical work is considered related to "code upgrades".

Furthermore, because State Farm has concerns regarding some of the information contained on the purported personal property inventory submitted by Ms. McDuffie, specifically regarding the repairability of items listed therein and the ages for the items listed therein, State Farm requested that Ms. McDuffie submit supporting documentation to support the representations regarding repairability and age of the items included on the inventory. Moreover, some of the items listed on this inventory are missing critical information such as price and age of item. State Farm requests that Ms. McDuffie revise her inventory to provide this information for further consideration of her personal property claim. State Farm also asks that Ms. McDuffie note who owned these items at the time of the loss, the location of these items at the time of the Loss, and the current location of these items.

SWIFT, CURRIE, McGHEE & HIERS, LLP
5

Finally, your April 22, 2022 letter references an estimate which you contend provides support for the basis of your request for payment of $470,267.57 however no estimate was included in your letter.  It is our understanding that, shortly after receipt of your letter, State Farm representative Bryan Van Camp contacted you to ask about the status of the estimate.  It is our understanding that you indicated you also did not have a copy of the estimate.  To date, no such estimate has been provided.  Therefore, even if State Farm believed that your demand was timely, which it does not as explained above,   State Farm could not consider the request for payment contained in your April 22, 2022 letter because it was not provided with sufficient information to evaluate the basis for this request.  As such, it must be rejected.

**(c)     Even if the purported Demand were timely and Ms.  McDuffie had complied with the terms of the Policy, neither of which State Farm contends occurred, at all times State Farm acted reasonably and in accordance with the terms and provisions of the Policy.**

Finally, even if Ms.  McDuffie's purported demand letter were timely, and she had complied with the terms of the Policy, both of which State Farm denies, State Farm at all times acted reasonably and in accordance with the terms and provisions of the Policy.  Under Georgia law, in order to recover bad faith damages, an insured must prove that the carriers' decision on the claim was "frivolous or unfounded." Progressive Casualty Ins.  Co.  v.  Avery, 165 Ga.  App.  703, 302 S.E.2d 605 (1983).

Here, State Farm's decisions with respect to this claim were not frivolous or unfounded in any respect.  In fact, State Farm has paid more than $297,000.00 over the course of the claim based on the undisputed damages to date.  During the course of the claim, Mr.  Van Camp requested information on numerous occasion related to the mitigation and repair progress at Ms.  McDuffie's home and the basis for her claim requests.  Despite this, Ms.  McDuffie and her public adjuster Ms.  Bradshaw failed to provide updates, documentation, or estimates in a timely manner.   During an inspection on December 1, 2021, completed by Mr.  Van Camp,  it became clear that Ms.  McDuffie's property was not actively being repaired.  On that date, Mr.  Van Camp verified that only demolition and basic electrical work had been completed, despite the loss having occurred nearly eight months prior and Ms. McDuffie having received substantial claim payments to repair this damage.  As discussed above, Mr. Van Camp requested documentation regarding the claim progress on numerous occasions, including but not limited to April 20, 2022, December 15, 2021, December 27, 2021, December 29, 2021, January 4, 2022, February 24, 2022, March 18, 2022, and March 21, 2022.  This information was not provided.

Ms.  McDuffie has yet to provide necessary information relative to her personal property claim, and as such, this portion of the claim is not ripe for resolution. However, even though Ms. McDuffie has failed to provide State Farm with necessary information related to the adjustment of her personal property claim, it has made

SWIFT, CURRIE, McGHEE & HIERS, LLP
6

every effort to issue payment for the portions of the claim it could confirm based on the documentation provided to date.  For example, on June 18, 2021, Ms.  McDuffie was paid $4,679.41 based on photographs from the property following the fire loss. This payment was made prior to Ms.  McDuffie preparing an inventory list.  On October 18, 2021, Ms.  McDuffie was paid $16,305.77 for personal property cleaned by ServPro and/or Textile Restorations.  Additional supplemental payments were issued based on information submitted by Ms. McDuffie during the course of the claim.  To date, Ms.  McDuffie has received $28,321.18 in personal property payments.

However, as explained above, to date, Ms. McDuffie has not submitted the information necessary for further consideration of her personal property claim, including the issuance of additional policy benefits related to the claim.  Therefore, State Farm's continued investigation into this element of her claim is warranted given the facts and circumstances of the claim and the information generated to date.

Finally, your letter cites specific provisions of Georgia's Unfair Claims Settlement Practices Act which you contend indicates that State Farm acted in bad faith.  These portions include the provisions of O.C.G.A. 33-6-34, et seq.  State Farm disagrees that it violated any term or provisions of Georgia's Unfair Claims Settlement Practices Act or that it acted in bad faith during the course of the claim.  However, under Georgia law, violation of any term of Georgia's Unfair Claims Settlement Practices Act does not create and/or imply a private cause of action and does not serve as a standard by which to measure when an insurance carrier has acted in bad faith.  See O.C.G.A. 33-6-37.

Furthermore, given the limited claim specific information provided in your April 22, 2022 letter, it is impossible for State Farm to evaluate the basis for the additional claim payments sought by Ms. McDuffie and whether these payments are additional claims for structural repair, personal property damages, or additional ALE benefits. As such, this demand is not proper given the failure of Ms. McDuffie to provide detailed information about her claim as previously described in detail above.

To date, State Farm has not yet completed its investigation of these claims. Notwithstanding the foregoing, even if State Farm had completed its investigation, which it denies, Ms.  McDuffie's purported bad faith demand would still be untimely in accordance with the terms and provisions of the Policy, and unfounded as a matter of law, as described above.

As State Farm had not received the information previously requested as outlined above, State Farm cannot consider any additional payments at this time. State Farm hereby reiterates its request for additional information as set forth below:

- Information regarding the status of repairs to the Property;

SWIFT, CURRIE, McGHEE & HIERS, LLP
7

- Receipts for permits obtained in conjunction with these repairs;

- The invoice from the contractor who performed the original asbestos abatement for the Property;

- The dates of commencement and completion of the original asbestos abatement for the Property;

- A breakout of the charges for the electrical bid to identify what electrical work is considered related to "code upgrades";

- Documentation confirming the purchase and age of the items listed on the inventory;

- A revised inventory listing the ages and prices for all items contained therein, as well as ownership of the items at the time of the loss, the location of items at the time of the loss, and the current location of these items; and

- To the extent Ms. McDuffie contends that the roofing system needs to be replaced in its entirety, information regarding the roof's condition, including, but not limited to, documents detailing estimates for repair of the roof, inspection reports of the roof, and the information related to the date of repairs and the identity of the contractor completing the repairs, if the repairs have already been completed.

Pursuant to O.C.G.A. § 33-24-40, State Farm reserves all of its rights including the right to rely upon other exclusions and limitations on coverage. State Farm reserves its right to continue to investigate this claim once it receives the information outlined above, including but not limited to completing additional inspections of the Property and taking an examination under oath of Ms. McDuffie and any other critical witnesses.

## **CONCLUSION**

For the above reasons, State Farm respectfully rejects Ms. McDuffie's request for additional payment of this claim to the extent that it purports to be a Demand under O.C.G.A. § 33-4-6. This letter is not intended to be a complete statement of all facts relevant to the Current Claim. Please be advised that State Farm continues to insist upon strict compliance with the terms and provisions of the Policy. As a result, nothing contained herein should be considered a waiver of any of State Farm's rights and defenses under the terms and provisions of the Policy and applicable Georgia law. State Farm strictly reserves all rights and defenses available to it under the terms of the Policy and applicable Georgia law

   Upon review of the foregoing, please do not hesitate to contact me should you have any questions and/or concerns.

                    Sincerely,

                    SWIFT, CURRIE, McGHEE & HIERS, LLP

                    *Jessica M. Phillips*
                    Jessica M.  Phillips
                    *Counsel for State Farm Fire and Casualty Company*

JMP