## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DOUGLAS A. PAGE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action File No.** |
| ) | _____ |
| **CHAMPION PAINTING** ) | |
| **SPECIALTY SERVICES CORP.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT

Plaintiff Douglas A. Page, by and through undersigned counsel of record, files this Complaint against Defendant Champion Painting Specialty Services Corp. ("Defendant" or the "Company"), showing this Court as follows:

## PRELIMINARY STATEMENT

1.

Plaintiff brings Counts One and Two of this action against Defendant for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

2.

Defendant hired Plaintiff on or about January 1, 2018 as Senior Vice President.

3.

During his tenure at Champion Painting Specialty Services Corp., Plaintiff performed his job admirably and brought lucrative contracts to the company that it would not have otherwise secured in his absence.

4.

Despite Plaintiff's admirable performance and many achievements that benefited Defendant, Defendant subjected Plaintiff to unlawful discrimination and retaliation because he is a 68-year-old man.

5.

Plaintiff brings Counts Three and Four of this action based on Defendant's conduct both before and after it terminated Plaintiff's employment.

6.

As an inducement to Plaintiff working for Defendant, and during Plaintiff's employment, Defendant granted Plaintiff with a ten percent interest in the immediately prospective and anticipated sale of the Company, ultimately memorializing the grant of this interest in a written email.

7.

After terminating Plaintiff's employment, Defendant has, however, refused to acknowledge its prior grant of this future interest in the Company's sale.

## <u>PARTIES, JURISDICTION, AND VENUE</u>

8.

Plaintiff is a 68-year-old man who resides in Greensboro, Georgia.

9.

At all times relevant to this action, Plaintiff is and has been a citizen of the State of Georgia.

10.

Plaintiff was hired by Defendant in Georgia.

11.

For most of his employment with Defendant, Plaintiff was based in metropolitan Atlanta, Georgia and traveled for work engagements to other states on behalf of Defendant by flying from and back to Atlanta, Georgia.  Upon relocation in 2021 to Greensboro, Georgia, Plaintiff continued to travel for his out-of-state work for Defendant, by flying from and back to Atlanta, Georgia.

12.

Defendant is a Florida corporation with its principal office address and corporate headquarters located at 130 SW 22nd Street, Fort Lauderdale, Florida 33315, and is registered to conduct business in Georgia.

13.

Defendant may be served with summons and complaint by serving its

registered agent in Georgia, Northwest Registered Agent, LLC, located at 300

Colonial Century Parkway, Suite 100N, Roswell, Fulton County, Georgia 30076.

14.

This Court has jurisdiction over Counts One and Two of this action pursuant

to 28 U.S.C. §1331, in that this is a civil action arising under the ADEA.

15.

This Court has jurisdiction over Counts Three through Five of this action

which arise under state law, pursuant to 28 U.S.C. § 1332 because Plaintiff and

Defendant are citizens of different states and because the amount in controversy

exceeds $75,000.

16.

This Court also has supplemental jurisdiction over Plaintiff's state law

claims (Counts Three through Five) pursuant to 28 U.S.C. §1367(a).

17.

Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a

substantial part of the events or omissions giving rise to the claims occurred in this

district.

## CONDITIONS PRECEDENT

### 18.

On October 20, 2022, Plaintiff timely filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

### 19.

On March 22, 2023, the EEOC issued Plaintiff a Notice of Right to Sue.

### 20.

Plaintiff files this Complaint within 90 days of receiving the EEOC's Notice of Right to Sue.

### 21.

Plaintiff has fully complied with all prerequisites to filing this action, including any prerequisites necessary to invoke the jurisdiction of this Court under the ADEA.

## FACTS COMMON TO ALL COUNTS

### Plaintiff Hires On with Company

### 22.

On or about January 1, 2018, Defendant hired Plaintiff as a Senior Vice President to lead the Company's Specialty Services Division.

23.

In late October 2017, before joining Defendant, Plaintiff had discussions

with Kyle Hough, Defendant's Chief Operations Officer and Carlos Hernandez,

Defendant's President.

24.

Kyle Hough and Carlos Hernandez were, at all times relevant to the facts

giving rise to this Complaint, members of Defendant's leadership team.

25.

During these discussions, which were held at a hotel near Atlanta Hartsfield-

Jackson International Airport, Hernandez and Kyle Hough told Plaintiff and others

at this meeting that the Company's leadership team was focused on opportunities

to sell the Company, promising Plaintiff a portion of the proceeds of the sale of the

Company as inducement for Plaintiff to join and help grow the Company.

26.

In reliance upon the promise by Defendant's leadership team members,

Plaintiff accepted Defendant's offer of employment.

27.

When Plaintiff started working for Defendant, Plaintiff was a 62-year-old,

seasoned construction executive with nearly four decades of experience at all

management levels for construction, maintenance, modifications, demolition, and plant upgrades serving the power industry – Hydro, Fossil, and Nuclear.

28.

When Plaintiff started working for Defendant, Plaintiff also possessed extensive experience in similar management levels related to petrochemical and pulp and paper facilities.

29.

When Plaintiff started working for Defendant, Plaintiff brought with him a team of experienced professionals who also joined the Company.

30.

In his role as a Senior Vice President for the Company, Plaintiff focused on the development and performance management of the Company's leadership team.

31.

As Senior Vice President for the Company, Plaintiff oversaw business development for the Company's Specialty Services Division, including cultivating relationships to support sales, staffing, and partnerships.

32.

For example, when he started working for Defendant, Plaintiff brought with him a team of experienced professionals who also joined the Company.

33.

When Plaintiff joined Defendant at the beginning of 2018, Defendant's

annual revenues, on information and belief, were roughly $26 million.

**Defendant Agrees to Give Plaintiff Interest in Sale of Company**

34.

In early October of 2018, while still employed by Defendant, Plaintiff

participated in a meeting at the Whitley Hotel in the Buckhead area of Atlanta,

Georgia along with several other Company employees who were part of the

Company's leadership team (the "Whitley Meeting").

35.

At the Whitley Meeting, Hernandez verbally conveyed to Plaintiff and three

other key employees of the Company, Duane Hough, Jeff Gibbons, and Anthony

Maracic, the Company's agreement to pay each of these four employees a 10%

interest on the sale of the Company.

36.

Everyone agreed to and accepted the Company's proposal at the Whitley

Meeting.

37.

On April 7, 2020, Defendant once again confirmed and memorialized this

agreement, this time in writing when Hernandez stated to Plaintiff and Messrs.

Duane Hough, Gibbons, and Maracic, that "the best route forward is a simple 10% portion of the total sale price of the company for each of you upon the successful sale minus any shared fees." **Exhibit 1** to this Complaint contains a true and correct copy of Hernandez's April 7, 2020 email to Plaintiff, Duane Hough, Gibbons, and Maracic.

38.

At the time of memorializing Defendant's agreement with Plaintiff, Defendant informed Plaintiff of an existing proposed buyer for the sale of the Company and ongoing negotiations for the sale with that proposed buyer.  Plaintiff relied upon this representation of impending sale in agreeing to stay with and continue growing the Company.

39.

After the Whitley Meeting and the April 7, 2020 email, Plaintiff continued performing his job and performing it well, as he had done throughout his employment with Defendant.

40.

In 2021, Defendant secured a deal to sell the Company to BrandSafway Scaffolding Systems for $100,000,000. That deal fell through in November of 2021 when BrandSafway was unable to secure a bond for the sale.

41.

During that timeframe, Plaintiff warned Defendant of the high-level of risk associated with dealing with one proposed buyer for the Company. Defendant ignored Plaintiff, and the deal fell through.

42.

From late 2021 into 2022, Plaintiff was instrumental in securing a series of nuclear power plant decommissioning[1] contracts for Defendant with anticipated revenues of more than $500,000,000.00 over a ten-year period (revenues of roughly $50,000,000.00 per year).

43.

Defendant would not have obtained these decommissioning contracts but for Plaintiff's efforts and business connections.

44.

Shortly before Defendant terminated Plaintiff's employment, Plaintiff was instrumental in securing a roughly $20,000,000.00 contract between Defendant and Florida Power & Light.

---

[1] Decommissioning is highly-skilled work performed as part of retiring an existing nuclear plant. This work typically includes dismantling the plant and returning the plant site to green space.

45.

Plaintiff would not have continued to grow the business and bring in lucrative contracts but for his 10% interest in the sale proceeds of the Company.

## **Defendant's Corporate Office Environment**

46.

For many years, Defendant has permitted conduct among employees exhibiting little, if any, commitment to a harassment-free workplace.

47.

Defendant has cultivated and tolerated an extremely hostile, antisemitic, racist, and sexually-charged workplace.

48.

During the course of his employment with Defendant, Plaintiff had numerous occasions to visit the Defendant's corporate office in Florida at which times he experienced what can best be described as a hostile, discriminatory, and sexually-charged atmosphere, embraced and participated in by the other members of Defendant's leadership team.

49.

Plaintiff had no authority to control or stop this conduct which created a culture that was intimidating and discriminatory to Plaintiff and others.

50.

During such visits to Defendant's corporate offices in Florida, Plaintiff
observed a work environment fraught with sexual innuendo as well as animosity
towards others based on gender, race, and national origin.

51.

When Defendant asked Plaintiff to hire an experienced executive to grow
pulp and paper sector business, Plaintiff recruited a highly-experienced woman for
the role.  Hernandez told Plaintiff and others on the phone call that he would hire
her but would not give her a Vice President title as her male peers held because
there will never be a female vice president in Operations.  She resigned in April
2023 citing a hostile and discriminatory environment caused by Defendant.

52.

Plaintiff attended a company party in January 2019 shortly after joining the
Company, and at this party, Plaintiff and several other executives engaged in a
conversation with Defendant's Chief Administrative Officer and Human Resources
executive, Jenny Guzman.  During this conversation, Guzman, gave unsolicited
details of a highly-charged sexual nature to Plaintiff related to her male companion,
calling him "my boy toy." Guzman later approached the Plaintiff and stated, "and
he can go all night long."

53.

On another occasion when Plaintiff visited Defendant's corporate office, Guzman—as she had regularly done based on Plaintiff's experience—initiated a conversation with Plaintiff in which she included statements of an extremely offensive and derogatory nature.

54.

The first topic Guzman initiated with Plaintiff during this visit concerned a consultant to the Company, Garth Dolderer, who was visiting the office and who Hernandez and Kyle Hough commonly referred to as the "greedy little Jew bastard" in front of the Plaintiff and others.  On this particular occasion, Guzman, referring to Dolderer's visit to Defendant's corporate office, asked Plaintiff, "What's that little mother fucker want now?"  Plaintiff tried to end the appalling path of this conversation by explaining to Guzman a legitimate business reason as to why Dolderer was in Defendant's corporate office.

55.

The conversation continued, and Guzman shifted the topic, without any prompting from Plaintiff, to her sex life—as she regularly did based on Plaintiff's experience.  Guzman shared that she had a new boyfriend who was her "first white guy" and described him as a good guy and a good sexual partner.  Guzman's repeated and uninvited representations regarding her sex life and her sex partner's

race were unprofessional and created a hostile workplace for Plaintiff and others. The discriminatory and inappropriate conduct of Guzman and others within the Company was accepted and tolerated by the Company's leadership team.

### Defendant Urges Plaintiff to Retire

56.

During his employment with Defendant, Plaintiff had no interest in retiring, nor did he communicate any such interest directly to Defendant.

57.

In late August or early September 2022, Plaintiff discussed his future plans with Kyle Hough, telling Kyle Hough that Plaintiff did not want to retire.

58.

In this late August/early September 2022 discussion, Kyle Hough told Plaintiff not to worry about anything and to just keep bringing in big accounts and all would be fine.

59.

In late September 2022, Plaintiff communicated by email to Kyle Hough Plaintiff's desire to continue working on key customer accounts for the Company, indefinitely, and to continue managing operations with a "hand off" of Plaintiff's management responsibilities at some future time.

60.

In late September 2022, Plaintiff did not communicate to Kyle Hough or any other employee any desire by Plaintiff to retire from his job with Defendant; instead, in this late September 2022 communication from Plaintiff to Kyle Hough, Plaintiff made clear that he looked forward to continuing his role in the Company and "push[ing] towards the goals we will aspire to achieve together."

61.

On October 6, 2022, during a meeting with Hernandez and Kyle Hough, Kyle Hough told Plaintiff the meeting would be brief.  Kyle Hough said, "You have to retire. Somebody your age is no longer productive, and somebody your age is no longer motivated."

62.

At this October 6, 2022 meeting, Kyle Hough proceeded to suggest that Plaintiff come to the Project Manager's meeting in January to mark his retirement at the end of 2022.

63.

During this October 6, 2022 meeting, Kyle Hough also told Plaintiff that people of Plaintiff's age are not motivated to perform business development efforts.

64.

During this October 6, 2022 meeting, Kyle Hough also denigrated and discredited, without substantiation, Plaintiff's accomplishments during Plaintiff's employment with the Company up to that point.

65.

Plaintiff, deeply offended by these statements, told Kyle Hough that Plaintiff was not considering retirement at the end of 2022.

66.

During this October 6, 2022 conversation, Plaintiff also reminded Kyle Hough of Plaintiff's 10% interest in the sale of the Company.

67.

At this October 6, 2022 meeting, Kyle Hough told Plaintiff that Plaintiff had to retire then, along with Hernandez, abruptly walked out of the meeting room.

68.

On information and belief, when Kyle Hough told Plaintiff that Plaintiff needed to retire, Defendant had already identified a replacement for Plaintiff.

69.

On information and belief, Plaintiff's replacement is the 53-year old male, younger and less-experienced than Plaintiff and whom Defendant had only recently hired before it fired Plaintiff.

**<u>Defendant's Sexual Harassment Claim Against Plaintiff is a Pretext</u>**

70.

On October 7, 2022, the day after Plaintiff's meeting with Kyle Hough and
Hernandez, during which meeting Kyle Hough told Plaintiff to retire at the end of
2022—an instruction with which Plaintiff refused to agree—Defendant informed
Plaintiff by text that Plaintiff was being placed on administrative leave "pending
the result of an investigation stemming from an allegation of sexual harassment
against [Plaintiff]."

71.

This sexual harassment allegation against Plaintiff, lodged by the same
Jenny Guzman who, even though she was Defendant's Chief Administrative
Officer with Human Resources responsibilities, repeatedly made unsolicited
remarks of a sexually and racially explicit nature to Plaintiff, is unsupported by
credible evidence.

72.

Moreover, on information and belief, as the Chief Administrative Officer,
Guzman was tasked with investigating her own allegations against Plaintiff. The
Plaintiff informed the Defendant by email that if Guzman was the complainant,
then Defendant should conduct an investigation using a neutral, external third party
in order to investigate the claim fairly.  Upon information and belief, no

17

independent investigation of Guzman's allegations was ever undertaken by Defendant or any neutral third-party, nor was Guzman ever disciplined for her own inappropriate and unprofessional conduct.

73.

Defendant's sexual harassment allegation against Plaintiff by Guzman was merely a pretext for first placing Plaintiff on administrative leave then terminating Plaintiff's employment, due to Plaintiff's refusal to retire based on his age.

74.

Defendant's failure to investigate other instances of inappropriate workplace conduct compel the conclusion that the purported grounds for Plaintiff's termination were illusory.

75.

Defendant placed Plaintiff on administrative leave on October 7, 2022 denying him access to all of his company-issued devices and to his email account, pending the Company's ostensible "investigation" into the sexual harassment allegations against Plaintiff.

76.

Before completion of this so-called investigation, on information and belief Defendant communicated to a third-party that Plaintiff was "done" with the Company.

77.

Defendant terminated Plaintiff's employment, effective October 31, 2022 and cut off all of Plaintiff's employment benefits, including healthcare coverage, as of that date.

78.

Defendant was obligated, and has an ongoing obligation, to protect Plaintiff's 10% interest in the sale of the Company.

79.

Since terminating Plaintiff's employment, however, Defendant has failed and refused to acknowledge that Plaintiff maintains a 10% interest in the sale of the Company or to take any steps to honor its agreement with Plaintiff.

80.

When Defendant terminated Plaintiff's employment, Defendant's annual revenues, on information and belief were roughly $165-180 million – representing more than six-fold growth over Plaintiff's tenure with Defendant. The Defendant continues to bring in revenue from the work and relationships secured by the Plaintiff which continue to increase the value of the company.

81.

All conditions necessary to the bringing of this lawsuit have been satisfied or, by conduct of the parties, waived.

## COUNT ONE
**Discriminatory Termination Based on Age in Violation of the Age
Discrimination in Employment Act 29 U.S.C. § 621, *et seq*.**

82.

Plaintiff restates and realleges paragraphs 1 through 81 of this Complaint, as if fully set forth herein.

83.

Plaintiff was 68 years old and qualified to perform all duties and responsibilities for his position when Defendant fired him.

84.

Plaintiff was instrumental in increasing Defendant's revenues over the course of his employment, including securing contracts that assure continued financial success of the Company for years to come, which was both important for the Company's ongoing financial health and essential for maximizing value upon the sale of the Company.

85.

During his employment with the Company, Plaintiff was instrumental in bringing in key personnel to help in the management and operations of the Company.

86.

During his employment with the Company, Plaintiff was instrumental in establishing the good will of the business, enhancing the Company name, and helping the Company with increased business opportunities.

87.

Despite these accomplishments, Defendant insisted that Plaintiff retire and, the day after Plaintiff refused to retire, Defendant placed Plaintiff on administrative leave.

88.

Defendant made discriminatory comments to Plaintiff regarding Plaintiff's age and ability to perform his job.

89.

Defendant marginalized Plaintiff while treating a similarly-situated employee more favorably, when it delegated Plaintiff's responsibilities to a younger man, Michael Kelly Powers.

90.

At or around the time it fired Plaintiff, Defendant replaced him with Powers who is at least 15 years younger than Plaintiff, has less experience in operations and business development, and had been with the Company for a very short time.

91.

Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, the costs of bringing this action, and the promised 10% of the price of the sale of the Company.

92.

Defendant willfully violated Plaintiff's rights under the ADEA and, as a result, is liable to Plaintiff for liquidated damages.

## COUNT TWO
**Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.***

93.

Plaintiff restates and realleges paragraphs 1 through 81 of this Complaint, as if fully set forth herein.

94.

Plaintiff was 68 years old and qualified for his position when Defendant fired him.

95.

On October 6, 2022, Plaintiff engaged in protected activity by complaining to Kyle Hough about the Company's discriminatory treatment based on Plaintiff's age.

96.

Plaintiff again engaged in protected activity on October 8, 2022 when he complained to Hernandez by email about the Company's discriminatory treatment based on Plaintiff's age.

97.

Within a day of Plaintiff first engaging in this protected activity, the Company placed Plaintiff on administrative and then, on October 31, 2022, the Company terminated Plaintiff's employment.

98.

Defendant informed Plaintiff that Defendant was terminating Plaintiff's employment with the Company for violation of Company policies and procedures.

99.

At or around the time it fired Plaintiff, Defendant replaced Plaintiff with Powers who is at least 15 years younger than Plaintiff, has less experience in operations and business development, and had been employed by the Company for a very short time before the Company fired Plaintiff.

100.

Defendant's alleged reason for terminating Plaintiff's employment is pretextual and baseless.  Defendant fired Plaintiff because he complained of age discrimination.

101.

Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful retaliatory actions, including past and future lost wages and the promised 10% of the price of sale of the Company.

102.

Defendant willfully violated Plaintiff's rights under the ADEA and, as a result, is liable for liquidated damages in an amount to be proven at trial.

## COUNT THREE
### Breach of Contract

103.

Plaintiff restates and realleges paragraphs 1 through 81 of this Complaint, as if fully set forth herein.

104.

Defendant promised to pay Plaintiff 10% of the proceeds of the sale of the Company.

105.

Plaintiff, by his conduct of first joining, and then continuing his employment with the Company, accepted Defendant's promise.

106.

Both parties provided consideration—Defendant promising to pay 10% of the sales proceeds to Plaintiff and Plaintiff first joining and then continuing his employment with the Company.

107.

Defendant further memorialized the agreement in writing.

108.

The parties formed an enforceable contract for Plaintiff to receive 10% of the proceeds of the sale of the Company.

109.

Defendant placed no condition of employment or timing upon its promise to pay Plaintiff 10% of the proceeds of the sale of the Company.

110.

Defendant has a duty to pay Plaintiff this amount upon the sale of the Company.

111.

Defendant now denies, without justification or excuse, that it had or has such a duty to Plaintiff.

112.

Defendant's denial of its promise to pay Plaintiff 10% of the proceeds of the sale of the Company is a breach of contract.

113.

As a direct and proximate result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be proven at trial, but not less than $15,000,000.00, subject to a full valuation and accounting of the Company.

## COUNT FOUR
## Breach of the Implied Duty of Good Faith and Fair Dealing

114.

Plaintiff restates and realleges paragraphs 1 through 81 of this Complaint, as if fully set forth herein.

115.

In Georgia, every contract imposes upon each party a duty of good faith and fair dealing in the performance of their respective duties and obligations.

116.

Defendant has mis-managed the Company where it has failed to recognize its prior promise to pay Plaintiff 10% of the proceeds of the future sale of the Company and/or where it is now attempting to place conditions on this promise to pay—namely Plaintiff's continued employment.

117.

By terminating Plaintiff's employment without acknowledging this promise to pay Plaintiff his future interest, and by excluding Plaintiff from participating in in this future interest, Defendant has breached its implied covenant of good faith and fair dealing to Plaintiff.

118.

As a direct and proximate result of Defendant's breach of its implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at trial but not less than $15,000,000.00, subject to a full valuation and accounting of the Company.

## **COUNT FIVE**
### **Attorney Fees and Litigation Expenses**

119.

Plaintiff restates and realleges paragraphs 1 through 81 of this Complaint, as if fully set forth herein.

120.

Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense within the meaning of O.C.G.A. §-13-6-11.

121.

Defendant is liable to Plaintiff for all attorney fees incurred in prosecution of this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Douglas A. Page petitions this Honorable Court for the following relief:

(1)     That summons and process issue as provided by law to Defendant;

(2)     That Plaintiff have judgment against Defendant for Discriminatory Termination based on Age in violation of the ADEA as set forth in Count One of this Complaint, including an award of Plaintiff's past and future loss of wages and benefits, plus interest, and in an amount to be proven at trial and an award of liquidated damages incurred in connection with this action;

(3)     That Plaintiff have judgment against Defendant for Unlawful Retaliation in violation of the ADEA as set forth in Count Two of the Complaint, including an award of Plaintiff's past and future loss of wages and benefits, plus interest, and in an amount to be proven at trial, and an award of liquidated damages incurred in connection with this action;

(4)     As to Counts Three and Four of the Complaint, the Court declare the rights and other legal relations of the Plaintiff and the Defendant as to Plaintiff's interest in the sale of the Company created by reason of the written instrument

dated April 7, 2020, attached to the Complaint as **Exhibit 1**, and specifically declare that Plaintiff has a vested interest of ten percent (10%) of the proceeds of any sale of the Company by reason of the written instrument.

(5)     That Plaintiff have judgment against Defendant for Breach of Contract as set forth in Count Three of the Complaint in an amount to be proven at trial, but not less than $15,000,000.00, subject to a full valuation and accounting of the Company;

(6)     That Plaintiff have judgment against Defendant for Breach of the Implied Duty of Good Faith and Fair Dealing as set forth in Count Four of the Complaint in an amount to be proven at trial, but not less than $15,000,000.00, subject to a full valuation and accounting of the Company;

(7)     That Plaintiff have judgment against Defendant as to attorney fees and litigation expenses due to Defendant's bad faith and stubborn litigiousness and Defendant's causing Plaintiff unnecessary trouble and expense in the management and administration of Defendant's contractual obligations to Plaintiff;

(8)     That the Court award Plaintiff its reasonable attorney fees and costs incurred in connection with this action; and

(9)     That the Court grant Plaintiff such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues properly triable by a jury.

Respectfully submitted this 15th day of June, 2023.

G. Scott Walters
Georgia Bar Number 735610
Stephen M. Reams
Georgia Bar Number 597165
Daniel S. Wolcott
Georgia Bar Number: 377203

Attorneys for Plaintiff Douglas A. Page

**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia 30303-1227
Telephone: (404) 582-8051
Facsimile: (404) 688-0671
Email: gswalters@smithcurrie.com
Email: smreams@smithcurrie.com
Email: dswolcott@smithcurrie.com