**Exhibit A**



null / ALL
**Transmittal Number: 26957022**
**Date Processed: 05/19/2023**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Sharon Brooks - MS 08-A<br>The Travelers Companies, Inc.<br>1 Tower Sq<br>Rm 8MS<br>Hartford, CT 06183-0001 |

| | |
|---|---|
| **Entity:** | Travelers Personal Insurance Company<br>Entity ID Number  2317895 |
| **Entity Served:** | Travelers Personal Insurance Company |
| **Title of Action:** | Sharonna Curnell vs. Travelers Personal Insurance Company |
| **Matter Name/ID:** | Sharonna Curnell vs. Travelers Personal Insurance Company (14090401) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Gwinnett County Superior Court, GA |
| **Case/Reference No:** | 23-A-04150-5 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 05/19/2023 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | The Huggins Law Firm LLC<br>770-913-6229 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-04150-5**
**5/12/2023 3:26 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

**Sharonna Curnell**
9412 Mulligan Court
Jonesboro, GA 30238

23-A-04150-5

**PLAINTIFF**          CIVIL ACTION NUMBER: _____

**VS**

**Travelers Personal Insurance Company**
**RA: Corporation Service Company**
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

**DEFENDANT**

---

### SUMMONS

---

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael D. Turner**
**Attorney For the Plaintiff**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
mdturner@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

12th day of May, 2023

This _____ day of _____, 2023.

Tiana P. Garner,
Clerk of Superior Court

_Krystal Castaneda_
Deputy Clerk

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-04150-5
5/12/2023 3:26 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **SHARONNA CURNELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | 23-A-04150-5 |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | _____ |
| **TRAVELERS PERSONAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT

**COMES NOW** Plaintiff **Sharonna Curnell,** by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **Travelers Personal Insurance Company**, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an adult resident citizen of Clayton County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to July 23, 2022, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. 0M4154610316268633 1 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property located at 9412 Mulligan Court, Jonesboro, GA 30238 (the "Insured Property," "Property," or the "home"). The

2

Policy likewise insures against loss due to Wind and Water, subject to a deductible of UNKNOWN per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

On or about July 23, 2022, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Wind and Water (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

3

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Wind and Water event. Defendant failed to properly indemnify the Plaintiff and estimated Plaintiff's total loss to be $7,217.85. Plaintiff's deductible is UNKNOWN per occurrence, and Defendant withheld $3,379.49 in recoverable depreciation; thus, after deductions for depreciation and Plaintiff's deductible, Defendant claims Plaintiff was due  as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional

4

payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claim, including a written demand sent to Defendant on January 5, 2023. A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for $62,372.17 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's January 5, 2023, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

### <u>COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6</u>

32.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

35.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

8

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

9

40.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## DEMAND FOR JURY TRIAL

41.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

42.

**WHEREFORE,** Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a.  That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b.  Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c.  Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its

10

intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d.  Plaintiff's attorneys' fees and costs of suit in this action;

e.  Plaintiff's consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 12th day of May, 2023.

RESPECTFULLY SUBMITTED,

_____

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

# EXHIBIT A


**TRAVELERS**

This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page.   It is a full, true and complete reproduction of the insurance policy.   No additional insurance is afforded by this copy.

Signature:

Date: 5.10.2023



# TRAVELERS

## Homeowners Policy Declarations

**Named Insured and Mailing Address**
SHARRONA CURNELL
9412 MULLIGAN CT
JONESBORO, GA 30238-6226
MSTCURNELL03@GMAIL.COM

**Your Agency's Name and Address**
TRAVELERS BUSINESS CENTER
P.O. BOX 59059
KNOXVILLE, TN 37950-9059

**Residence Premises**
9412 MULLIGAN CT
JONESBORO, GA 30238-6226

**Mortgagee Name and Address**
1. REGIONS BANK
   ISAOA
   PO BOX 200401
   FLORENCE, SC 29502-0401
   LOAN NUMBER: ▓▓▓▓▓▓

## Policy Information

| | | | |
|---|---|---|---|
| **Your Policy Number** | 610316268 633 1 | **For Policy Service** | 1.877.490.4454 |
| **Your Account Number** | | **For Claim Service** | 1.800.252.4633 |

**Your Insurer:**   TRAVELERS PERSONAL INSURANCE COMPANY
a subsidiary or affiliate of The Travelers Indemnity Company
One Tower Square, Hartford, CT 06183

**The policy period is from September 22, 2021 at 12:01 A.M. STANDARD TIME to September 22, 2022 at 12:01 A.M. STANDARD TIME at the residence premises.**

**Total Premium for this Policy:**                                           **$1,533.00**
This is not a bill. You will be billed separately for this transaction.

## Discounts

The following discounts reduced your premium:

Early Quote                     Loss Free                          Good Payer
Fire Protective Device

## Savings Reflected in Your Total Premium:                    $476.00

## Coverages and Limits of Liability

| Property Coverage Section | Limit |
|---|---|
| Coverage A – Dwelling | $167,000 |
| Coverage B – Other Structures | $16,700 |
| Coverage C – Personal Property | $83,500 |
| Coverage D – Loss of Use | $33,400 |



**TRAVELERS**

---

| Liability Coverage Section | Limit |
|---|---|
| Coverage E – Personal Liability - Bodily Injury and Property Damage (each occurrence) | $100,000 |
| Coverage F – Medical Payments to Others (each person) | $2,000 |

## Deductibles

| Peril Deductible | Deductible |
|---|---|
| Property Coverage Deductible (All Perils) | $1,000 |

*In case of loss under the Property Coverage Section, only that part of the loss over*
*the applicable deductible will be paid (up to the coverage limit that applies).*

---

**Special Limits and Additional Coverages**
**Coverage Level: Travelers Protect®**

*The limit shown for each of the*
*Special Limits of Liability and Additional Coverages*
*is the total limit for each loss in that category.*

### Personal Property – Special Limits of Liability

| | | Limit |
|---|---|---|
| a. | Money, bank notes, coins, stored value cards | $250 |
| b. | Securities, accounts, passports, tickets, stamps | $1,500 |
| c. | Comic books and trading cards | $1,000 |
| d. | Collectibles, figurines, glassware, marble, porcelains, statuary | $1,000 |
| e. | Theft of jewelry, watches, precious stone | $1,500 |
| f. | Theft of furs | $1,500 |
| g. | Theft of silverware, goldware, pewterware | $1,500 |
| h. | Theft of firearms and related equipment | $1,500 |
| i. | Theft of tools and their accessories | $1,500 |
| j. | Theft of rugs, tapestries and wall hangings | $1,500 |
| k. | Business property on the residence premises | $3,000 |
| l. | Business property away from the residence premises | $1,500 |
| m. | Trailers or semitrailers not used with watercraft | $1,500 |
| n. | Motor vehicle parts or equipment not attached to motor vehicle | $500 |
| o. | Electronic apparatus while in or upon a motor vehicle or watercraft | $1,500 |

*The Special Limits of Liability do not increase your Coverage C – Personal Property Limit.*

### Property – Additional Coverages

| | Limit |
|---|---|
| Debris Removal (Additional % of damaged covered property limit) | 5% |
| Tree Removal | Per Tree $500 Per Loss $1,000 |
| Trees, Shrubs and Other Plants (5% of Coverage A - Dwelling Limit) | Per Tree $500 Per Loss $8,350 |
| Fire Department Service Charge | $500 |
| Credit Card, Fund Transfer, Forgery and Counterfeit Money | $1,000 |
| Loss Assessment | $1,000 |
| Landlord Furnishings | $2,500 |
| Ordinance or Law (10% of Coverage A - Dwelling Limit) | $16,700 |
| Personal Records and Data Replacement | $1,500 |

---



| Named Insured | SHARRONA CURNELL | Policy Number | 610316268 633 1 |
|---|---|---|---|
| Policy Period | September 22, 2021 to September 22, 2022 | Issued On Date | September 30, 2021 |

| **Property – Additional Coverages (continued)** | **Limit** |
|---|---|
| Limited Fungi or Other Microbes Remediation | $5,000 |

*The applicable policy deductible applies unless otherwise noted.*

| **Liability – Additional Coverages** | **Limit** |
|---|---|
| Damage to Property of Others | $1,000 |
| Loss Assessment | $1,000 |
| Limited Fungi or Other Microbes Liability Coverage | |
| Coverage E – Aggregate Limit of Liability | $50,000 |
| Coverage F – Sub Limit of Liability | $2,000 |

*Please review your policy for other Personal Property Special Limits of Liability and Additional Coverages that may apply.*

## Optional Coverages

| **Optional Coverages** | **Endorsement** | **Limit** | **Premium** |
|---|---|---|---|
| Personal Property Replacement Cost Loss Settlement | HQ-290 CW (04-20) | | Included* |
| Additional Replacement Cost Protection Coverage | HQ-420 CW (11-18) | $41,750 | Included* |
| 25% of Coverage A - Dwelling Limit | | | |

*\*Note: The additional cost or premium reduction for any optional coverage or package
shown as "Included" is contained in the Total Policy Premium Amount.*

## Required Forms and Endorsements Included in Your Policy:     Form: 633

| | |
|---|---|
| Policy Quick Reference | HQ-T77 CW (05-17) |
| Agreement, Definitions & Policy Conditions | HQ-D77 CW (05-17) |
| Property Coverage Section | HQ-P03 CW (05-17) |
| Liability Coverage Section | HQ-L77 CW (05-17) |
| Signature Page | HQ-S99 CW (05-17) |
| Limited Fungi or Other Microbes Liability Coverage | HQ-829 CW (05-17) |
| Special Provisions - Georgia | HQ-300 GA (11-20) |
| Additional Benefits | HQ-860 CW (08-18) |

**The Declarations along with the Optional Coverages, Optional Packages and Required Forms and
Endorsements listed above form your Homeowners Insurance Policy.
Please keep these documents for reference.**

## Information About Your Property

There are many factors that determine the premium on your policy, some of which are displayed below. If you
would like a policy review, please contact your agent or Travelers Representative.

| | | |
|---|---|---|
| # of Families: 1 Family | Year Built: 2005 | Construction Type: Frame |
| # of Stories: 2 | Square Footage: 1344 | Siding Type: Vinyl |
| # of Bathrooms: 3 | Age of Roof: 9 | Roof Material Type: Asphalt-Fiberglass |
| Garage - Number of Cars: 1 | Garage Type: Built-In | Foundation Type: Slab |



**TRAVELERS**

---

**Information About Your Property (continued)**

# of Employees: 00                                      Finished Basement: 00

---

Issued on 09-30-2021
Countersignature (Agent Use Only): _____

---

## For Your Information

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

We want to make sure we are using accurate information to rate your policy.  Because you are the most familiar with your home we need your help to make sure that the information on your Declarations is accurate and complete.  If any of the information on your Declarations has changed, appears incorrect or is missing, please advise your agent or Travelers representative.   We also need you to check our website at www.mytravelers.com/discounts to ensure that you are receiving all of the discounts for which you are eligible. Once at the website, type in your policy number 6103162686331 and product code QH2 to view all available discounts.  Should you have any questions about the information on your Declarations or your discounts, please call your agent or Travelers representative.

If you have recently replaced your roof it is important that you inform your Travelers Representative.

HQ-T77 CW (05-17)

## TRAVELERS INSURANCE POLICY

## YOUR HOMEOWNERS POLICY QUICK REFERENCE

Beginning
on Page

HOMEOWNERS POLICY DECLARATIONS ........................................................................................ D-1
    NAMED INSURED AND MAILING ADDRESS
    LOCATION OF YOUR RESIDENCE PREMISES
    YOUR AGENCY'S NAME AND ADDRESS
    MORTGAGEE NAME AND ADDRESS
    POLICY INFORMATION
    DISCOUNTS
    COVERAGES AND LIMITS OF LIABILITY
    DEDUCTIBLES

AGREEMENT ................................................................................................................................ A-1
DUTY TO REPORT CHANGES IN EXPOSURE ................................................................................ A-1
DEFINITIONS ............................................................................................................................... A-1
POLICY CONDITIONS .................................................................................................................... A-4

PROPERTY COVERAGE SECTION
    PROPERTY COVERAGE A – DWELLING ................................................................................ P-1
    PROPERTY COVERAGE B – OTHER STRUCTURES ................................................................ P-1
    PERILS INSURED AGAINST
        PROPERTY COVERAGE A – DWELLING
        PROPERTY COVERAGE B – OTHER STRUCTURES ...................................................... P-1
    PROPERTY COVERAGE C – PERSONAL PROPERTY .............................................................. P-3
    PERILS INSURED AGAINST
        PROPERTY COVERAGE C – PERSONAL PROPERTY ..................................................... P-5
    PROPERTY COVERAGE D – LOSS OF USE .......................................................................... P-6
    PROPERTY – ADDITIONAL COVERAGES.............................................................................. P-7
    PROPERTY – EXCLUSIONS.................................................................................................. P-11
    PROPERTY – CONDITIONS.................................................................................................. P-14

LIABILITY COVERAGE SECTION
    LIABILITY COVERAGE E – PERSONAL LIABILITY.................................................................. L-1
    LIABILITY COVERAGE F – MEDICAL PAYMENTS TO OTHERS ............................................... L-1
    LIABILITY – ADDITIONAL COVERAGES ................................................................................ L-1
    LIABILITY – EXCLUSIONS ................................................................................................... L-3
    LIABILITY – CONDITIONS.................................................................................................... L-8

SIGNATURE PAGE  ...................................................................................................................... S-1

© The Travelers Indemnity Company. All rights reserved.

HQ-D77 CW (05-17)

# TRAVELERS INSURANCE POLICY

**Travelers Personal Insurance Company**
One Tower Square, Hartford, Connecticut 06183
(A Stock Insurance Company)

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DUTY TO REPORT CHANGES IN EXPOSURE

You or an "insured" must notify us when:

1. There is a change to the mailing or "residence premises" address shown in the Declarations;

2. A named "insured" no longer resides on the "residence premises" or a person or persons begin to reside on the "residence premises";

3. A named "insured" dies;

4. Title to or ownership of the "residence premises" changes;

5. There is a change to the use of the "residence premises" with respect to "business" conducted or rental activity;

6. An addition, alteration or renovation is made to a dwelling or other building on the "residence premises"; or

7. A named "insured" acquires a replacement or additional residential property.

If you fail to report a change relating to the insured property within 60 days, it may result in denial of coverage under this policy.

## DEFINITIONS

In this policy, you and your refer to:

    a. The named "insured" shown in the Declarations; and

    b. The spouse if a resident of the same household. The term spouse includes, if a resident of the same household:

        (1) The civil partner of the named "insured", provided such civil union was obtained in a state where a civil union is legally recognized; or

        (2) The domestic partner of the named "insured", provided such domestic partner was in a continuing spouse-like relationship with the named "insured" for the purpose of a domestic life. Both persons must be 18 years of age or older and may not be related to each other by blood. Neither may be married to another person, or be a domestic partner or partner by civil union of any other person.

In this policy, we, us and our refer to the member company of Travelers providing this insurance and shown as Your Insurer in the Declarations.

In this policy, certain words and phrases are in quotes. Those words and phrases are defined as follows:

1. "Aircraft" means any device used or designed for flight, including any:

    a. Unmanned flying device, self-propelled missile or spacecraft; and

    b. Accessory, equipment or part for such device, whether or not attached to the device.

Under Property Coverage C – Personal Property, Liability Coverage E – Personal Liability, Liability Coverage F – Medical Payments to Others and Liability – Additional Coverages, "aircraft" does not include any unmanned flying device that:

    a. Is used or operated for recreational purposes only; and

    b. Weighs less than 10 pounds with or without any accessory, equipment or part attached.

2. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability" mean liability for "bodily injury" or "property damage" arising out of the:

    a. Ownership of such vehicle or craft by an "insured";

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

b.  Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

c.  Entrustment of such vehicle or craft by an "insured" to any person;

d.  Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

e.  Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

For the purpose of this definition:

a.  Aircraft means an "aircraft" as defined in Definitions **1.**;

b.  Hovercraft means a self-propelled motorized ground effect vehicle and includes flarecraft and air cushion vehicles;

c.  Motor vehicle means a "motor vehicle" as defined in Definitions **11.**; and

d.  Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

**3.**  "Apartment" means a single room or set of rooms, rented or held for rental, that is part of a covered building and is intended as a place to stay or reside, regardless of the length of the habitation.

**4.**  "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**5.**  "Business" means:

a.  A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

b.  Any other activity engaged in for money or other compensation, except the following:

(1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

(2) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

(3) Providing home day care services to a relative of an "insured".

**6.**  "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**7.**  "Fuel system" means:

a.  One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and

(1) Are, or were, used to hold fuel; and

(2) Are, or were, located on any one location;

b.  Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in **7.a.**;

c.  Filler pipes and flues connected to one or more containers, tanks or vessels described in **7.a.**;

d.  A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in **7.a.**;

e.  Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in **7.a.**; or

f.  A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in **7.a.**

A "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft owned by an "insured", used for powering the "motor vehicle" or watercraft and not used at any time or in any manner for "business".

**8.**  "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

Under the Liability Coverage Section, this does not include any "fungi" that are, are on, or are contained in, products or goods intended for consumption.

**9.**  "Insured" means:

a.  You and residents of your household who are:

(1) Your relatives; or

(2) Other persons under the age of 21 and in the care of any person named above;

b.  A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

(1) 24 and your relative; or

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(2)** 21 and in your care or the care of a person described in **9.a.(1)**; or

**c.** Any Additional Insured named in the Declarations, but only with respect to Coverages A, B, E and F if applicable to your policy and only for the "residence premises".

**d.** Under the Liability Coverage Section:

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **9.a.** or **b.**

"Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to any vehicle to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **9.a.** or **b.**; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both the Property and Liability Coverage Sections of this policy, when the word <u>an</u> immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**10.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence and:

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **10.a.** and **b.**;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured";

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use;

**i.** Any premises owned by you and rented to others for use as a residence by not more than four families, if shown in the Declarations as an Additional Residence Rented to Others; or

**j.** Any other structure on the "residence premises" rented to others as a private residence if a limit of liability is shown in the Declarations as Structures Rented to Others.

**11.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in **11.a.**

"Motor vehicle" does not include model, hobby or children's toy vehicles.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**13.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthful or hazardous building materials. Waste includes materials to be recycled, reconditioned or reclaimed.

**14.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**15.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured."

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**16.** "Residence premises" means:

   **a.** The one family dwelling or unit where you reside; or

   **b.** The two, three or four family dwelling where you reside in at least one of the family units;

   and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

**17.** "Vacant" means the dwelling or unit lacks the necessary amenities, adequate furnishings or utilities and services required to sustain normal occupancy. A dwelling or unit being constructed is not considered "vacant".

## POLICY CONDITIONS

**1.** **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions of coverage, whether that general program revision is implemented through introduction of:

   **a.** A subsequent edition of this policy form; or

   **b.** An amendatory endorsement.

**2.** **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**3.** **Duty to Cooperate and Inform.** The coverage provided by this policy and the premium charged for this policy are based on information you have given us. You agree:

   **a.** To cooperate with us in determining if this information is correct and complete;

   **b.** To inform us of any change in title, use or occupancy of the "residence premises".

   **c.** That if within 90 days of the policy effective date this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly by giving you notice. This notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. The notice will contain the changed, incorrect or incomplete information, along with the resulting premium change.

**4.** **Cancellation.** This policy may be cancelled during the policy period as follows:

   **a.** A named "insured" shown in the Declarations may cancel this policy by:

   **(1)** Returning this policy to us; or

   **(2)** Giving us advance written notice of the date cancellation is to take effect.

   We may accept another form of notice from a named "insured". The cancellation by a named "insured" will be binding on any other named "insured".

   **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

   **(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect;

   **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect; or

   **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      **(a)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      **(b)** If the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

If specific Cancellation provisions apply in your state, they will appear in the **Special Provisions Endorsement** that is part of this policy.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, electronically transmitting to you, if permissible by law, or mailing to you at the mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

If we offer to renew and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

If specific Nonrenewal provisions apply in your state, they will appear in the **Special Provisions Endorsement** that is part of this policy.

6. **Assignment.** Assignment of this policy is void unless we give our written consent. We, as the non-assigning party, will not recognize any assignment of this policy unless our written consent is provided.

7. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under the Liability Coverage Section to Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

b. "Insured" will then also include:

(1) An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-P03 CW (05-17)

## TRAVELERS HOMEOWNERS INSURANCE POLICY

## PROPERTY COVERAGE SECTION

## PROPERTY COVERAGE A - DWELLING

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

## PROPERTY COVERAGE B – OTHER STRUCTURES

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. It also includes other structures that are not buildings, including driveways, walkways and patios.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage. We do cover other structures rented to others as a private residence for which a limit of liability is shown in the Declarations for Structures Rented to Others;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. We do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

## PERILS INSURED AGAINST
## PROPERTY COVERAGE A – DWELLING
## PROPERTY COVERAGE B – OTHER STRUCTURES

1. We insure against direct physical loss to property described in Property Coverages A and B.

2. We do not insure for loss:

   a. Excluded under Property - Exclusions;

   b. Involving collapse or danger of collapse, except as provided in Property - Additional Coverage **9.** Collapse; or

   c. Caused by:

      (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have used reasonable care to:

         (a) Maintain heat in the building; or

         (b) Shut off the water supply and drain all systems and appliances of water.

      If the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

      For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment;

      (2) Freezing, thawing, pressure or weight of water, ice or snow, whether driven by wind or not, to a:

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(a) Fence, pavement or patio;

(b) Outdoor spa or hot tub, outdoor sauna or outdoor swimming pool and any related equipment;

(c) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building or other structure;

(d) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(e) Pier, wharf or dock.

This exclusion applies whether any item identified in **(2)(a)** through **(e)** of this exclusion is wholly or partially above or below ground;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss regardless of the policy's inception or renewal date;

**(5)** Theft or vandalism and malicious mischief in or to a dwelling while rented to others by an "insured" for a rental term of less than 30 consecutive days; or

**(6)** Any of the following:

(a) Wear and tear, marring, scratching or deterioration;

(b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

(c) Smog, rot, rust or other corrosion;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Property Coverage C;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings. This exclusion applies whether any item is wholly or partially above or below ground;

(g) Birds, bats, vermin, rodents, raccoons, skunks, arachnids or insects;

(h) Nesting or infestation, or discharge or release of waste products or secretions, by any animals;

(i) Animals owned or kept by an "insured" or "residence employee"; or

(j) Presence, pressure or intrusion of any root system.

**Exception to c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Property Coverages A and B resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, that causes damage to a building on the "residence premises", if the accidental discharge or overflow of water or steam originates from within a system or appliance:

**a.** On the "residence premises"; or

**b.** Off the "residence premises", if located on a premises adjacent to the "residence premises".

This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance from which this water or steam escaped.

We do not cover loss:

**a.** To the system or appliance from which this water or steam escaped;

**b.** Caused by accidental discharge or overflow of water or steam from within a storm drain whether located on or off the "residence premises"; or

**c.** Caused by accidental discharge or overflow of water or steam from within a steam or sewer pipe located off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

subsurface water, roof drain, gutter, down spout or similar fixtures or equipment.

Under Perils Insured Against **2.b.** and **c.**, any ensuing loss to property described in Property Coverages A and B not excluded by any other provision in this policy is covered.

## PROPERTY COVERAGE C – PERSONAL PROPERTY

1. **Covered Property.** We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

   **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

This request may be made after a loss.

2. **Limit for Property at Other Locations.**

   **a. Other Residences.**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Property Coverage C, or $1,000, whichever is greater. This limitation does not apply to personal property:

   **(1)** Moved from the "residence premises" because the "residence premises" is:

   **(a)** Being repaired, renovated or rebuilt; and

   **(b)** Not fit to live in or store property in;

   **(2)** Removed, for a period of 60 days or less, from the "residence premises" endangered by a Peril Insured Against; or

   **(3)** In a newly acquired principal residence for 60 days from the time you begin to move the property there.

   **b. Storage Facilities.**

   Our limit of liability for personal property owned or used by an "insured" and located in a storage facility is 10% of the limit of liability for Property Coverage C, or $1,000, whichever is greater. This limitation does not apply to personal property:

   **(1)** Moved from the "residence premises" because the "residence premises" is:

   **(a)** Being repaired, renovated or rebuilt; and

   **(b)** Not fit to live in or store property in;

   **(2)** Removed, for a period of 60 days or less, from the "residence premises" endangered by a Peril Insured Against; or

   **(3)** Usually located in an "insured's" residence, other than the "residence premises".

3. **Special Limits of Liability.** The following categories of personal property are covered only up to the Special Limits of Liability indicated below or shown in the Declarations. The special limit for each category described below is the total limit for each loss for all property in that category. These special limits do not increase the Property Coverage C limit of liability.

   **a.** Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards, gift certificates, digital currency and any related currencies used in place of money.

   **b.** Securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps. This limit includes the cost to research, replace or restore information from the lost or damaged material.

   **c.** Comic books and trading cards, including sport cards, game cards and non-sports cards.

   **d.** Collectibles, including figurines, glassware, marble, porcelains, statuary and similar articles.

   **e.** Loss by theft of jewelry, watches, precious and semiprecious stones.

   **f.** Loss by theft of furs.

   **g.** Loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

   **h.** Loss by theft of firearms and related equipment.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

i.   Loss by theft of tools and their accessories.

j.   Loss by theft of any rugs, carpets, tapestries, wall hangings or other similar articles. This limit does not apply to wall-to-wall carpet.

k.   Covered property, on the "residence premises", used primarily for "business" purposes.

l.   Covered property, away from the "residence premises", used primarily for "business" purposes. This limit does not apply to loss to electronic apparatus and accessories while in or upon a "motor vehicle".

m.   Trailers or semitrailers not used with watercraft.

n.   "Motor vehicle" accessories, equipment or parts while not attached to, located in or upon or while removed from any "motor vehicle".

o.   Electronic apparatus and accessories, while in or upon a "motor vehicle" or watercraft, but only if the apparatus is equipped to be operated by power from the "motor vehicle's" or watercraft's electrical system while still capable of being operated by other power sources.

p.   $500 for tapes, records, discs, antennas, wires, electronic music and movies or other media that can be used with any electronic apparatus and accessories while in or upon a "motor vehicle" or watercraft.

q.   $1,500 for watercraft, including their trailers, furnishings, accessories, equipment, parts and outboard engines or motors.

This limit does not apply to non-motorized personal craft under 20 feet in length, such as kayaks, surf boards, canoes, paddle boards, row boats, wind surfers or kite boards.

r.   $250 for legally obtained or prescribed marijuana.

s.   $1,000 for fine arts, including paintings, etchings, drawings, lithographs, photographs, sculptures and other bonafide works of art of rarity, historical value or artistic merit.

4.   **Property Not Covered.**

We do not cover:

a.   Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b.   Animals, birds or fish;

c.   "Motor vehicles".

(1) This includes:

(a) Accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle".

The exclusion of property described in **4.c.(1)(a)** and **(b)** applies only while such property is attached to or located in or upon the "motor vehicle";

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property, which are:

(a) Used to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d.   "Aircraft";

e.   Hovercraft, including accessories, equipment and parts, whether or not attached to the hovercraft. Hovercraft means a self-propelled motorized ground effect vehicle and includes flarecraft and air cushion vehicles;

f.   Property of roomers, boarders, tenants and other occupants who provide compensation to an "insured" for use of all or part of the "residence premises". This includes property of guests of any such roomer, boarder, tenant or other occupant.

We do cover property of roomers, boarders, tenants, other occupants and guests of any such roomer, boarder, tenant and other occupants related to an "insured";

g.   Property in an "apartment" rented or held for rental to others by an "insured", except as provided under Property - Additional Coverage **11.** Landlord's Furnishings;

h.   Property rented or held for rental to others off the "residence premises";

i.   "Business" or personal records or data, including such data stored in:

(1) Books of account, drawings or other paper records;

(2) Computers and related or similar equipment; or

(3) Digital, electronic or virtual form;

except as provided in Property – Additional Coverage **14.** Personal Records and Data Replacement.

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in Property - Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money;

**k.** Grave markers, except as provided in Property - Additional Coverage **13.** Grave Markers; or

**l.** Water or steam.

---

## PERILS INSURED AGAINST
## PROPERTY COVERAGE C – PERSONAL PROPERTY

---

We insure for direct physical loss to the property described in Property Coverage C caused by any of the following perils, unless the loss is excluded in Property - Exclusions.

**1. Fire or Lightning.**

**2. Windstorm or Hail.**

This peril includes loss to watercraft and their trailers, furnishings, accessories, equipment, parts and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion.**

**4. Riot or Civil Commotion.**

**5. Aircraft.**

This peril includes remotely operated, unmanned flying device, self-propelled missile or spacecraft.

**6. Vehicles.**

**7. Smoke.**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from the manufacture of controlled substances, agricultural smudging or industrial operations.

**8. Vandalism or Malicious Mischief.**

This peril does not include loss to property caused by vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss regardless of the policy's inception or renewal date.

**9. Theft.**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured";

**(4)** Anywhere on the "residence premises" when any portion is rented by an "insured" to someone other than another "insured" for a continuous period of less than 30 days; or

**(5)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft, including their furnishings, accessories, equipment, parts and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured", who is a student, is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects.**

This peril does not include loss to property contained in a building unless the roof or an

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of Ice, Snow or Sleet.**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge or Overflow of Water or Steam.**

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance, if the accidental discharge or overflow of water or steam originates from within a system or appliance:

   **(1)** On the "residence premises"; or

   **(2)** Off the "residence premises", if located on a premises adjacent to the "residence premises".

**b.** This peril does not include loss:

   **(1)** To the system or appliance from which the water or steam escaped;

   **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

   **(3)** Caused by accidental discharge or overflow of water or steam from within a storm drain whether located on or off the "residence premises"; or

   **(4)** Caused by accidental discharge or overflow of water or steam from within a steam or sewer pipe located off the "residence premises".

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or

subsurface water, roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Property – Exclusion **3.** Water, paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging.**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing.

**14. Freezing.**

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

   **(1)** Maintain heat in the building; or

   **(2)** Shut off the water supply and drain all systems and appliances of water.

If the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden and Accidental Damage from Artificially Generated Electrical Current.**

---

## PROPERTY COVERAGE D – LOSS OF USE

The limit of liability for Property Coverage D is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use.

**1. Additional Living Expense.** If a loss covered under the Property Coverage Section makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your

household can maintain its normal standard of living.

Payment will be for the lesser of:

**a.** The shortest time required to:

   **(1)** Repair or replace the damage; or

   **(2)** Settle your household elsewhere, if you permanently relocate; or

**b.** 24 months.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. **Fair Rental Value.** If a loss covered under the Property Coverage Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the amount of fair rental value of such premises lost, less any expenses that do not continue while it is not fit to live in.

Coverage under Fair Rental Value will only apply when that part of the "residence premises" is held for rental or rented to others for a term of 6 consecutive months or more by the same roomer, boarder, tenant or other occupant who provides compensation to an "insured".

Payment will be for the shortest time required to repair or replace such premises, but for no more than 24 months.

Written proof that part of the "residence premises" is rented, was held for rental at the time of loss or has been rented within the 12 months prior to the date of loss is required.

3. **Civil Authority Prohibits Use.** If a civil authority prohibits you from use of the "residence premises" as a result of direct physical damage to neighboring premises caused by a Peril Insured Against under this policy, we cover resulting **1.** Additional Living Expense and **2.** Fair Rental Value as provided above for no more than 30 days. Neighboring premises means a premises in sufficient proximity to the "residence premises" that there exists a reasonable risk that the damage affecting the neighboring premises could endanger either the "residence premises" or the safety of its occupants while in the "residence premises".

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

4. **Loss or Expense Not Covered.** We do not cover loss or expense due to cancellation of a lease or agreement.

## PROPERTY - ADDITIONAL COVERAGES

Unless otherwise stated, the following coverages are additional insurance and are subject to the applicable deductible.

1. **Debris Removal.** We will pay your reasonable expense for the removal of debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional percentage, as shown in the Declarations for this Property – Additional Coverage, of that limit is available for such expense.

We do not pay for the removal of trees except as provided under Property – Additional Coverage **2.** Tree Removal. We also do not pay for:

a. Extraction of "pollutants" from land or water; or

b. Removal, restoration or replacement of polluted land or water.

2. **Tree Removal.** We will pay your reasonable expense, up to the limit shown in the Declarations for this Property - Additional Coverage, for the removal of trees fallen on the "residence premises" as a result of a Peril Insured Against, provided the tree(s):

a. Damage(s) a covered structure; or

b. Do(es) not damage a covered structure, but:

   (1) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

   (2) Block(s) a ramp or other fixture designed to assist a person to enter or leave the dwelling building.

The Per Loss Limit shown in the Declarations for this Property – Additional Coverage is the most we will pay in any one loss regardless of the number of fallen trees. No more than the Per Tree Limit shown in the Declarations for this Property - Additional Coverage will be paid for the removal of any one tree.

3. **Reasonable Repairs.**

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will pay only if that

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

property is covered under this policy and the damage is caused by a Peril Insured Against.

This coverage does not increase the limit of liability that applies to the covered property or relieve you of your duties described in Property – Conditions **2.d.** Duties After Loss.

4. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

   a. Fire or Lightning;

   b. Explosion;

   c. Riot or Civil Commotion;

   d. Aircraft;

   e. Vehicles not owned or operated by a resident of the "residence premises";

   f. Vandalism or Malicious Mischief; or

   g. Theft.

   We will pay up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for all damaged trees, shrubs, plants or lawns. No more than the Per Tree Limit shown in the Declarations for this Property – Additional Coverage will be paid for any one tree, shrub or plant. We do not cover property illegally grown or grown for "business" purposes.

5. **Fire Department Service Charge.** We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for reasonable and necessary fire department charges incurred by you when the fire department is called to save or protect covered property from a Peril Insured Against.

   No deductible applies to this coverage.

6. **Property Removed.** We insure covered property against direct loss from any cause while being removed from or returned to a premises endangered by a Peril Insured Against and for no more than 60 days while removed. This coverage does not change the limit of liability that applies to the removed property.

7. **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money.**

   a. We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for:

      (1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

      (2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

      (3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

      (4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

   b. All loss resulting from a series of acts:

      (1) Committed by any one person or group of persons acting in concert; or

      (2) In which any one person or group of persons acting in concert is concerned or implicated;

      is considered to be one loss.

   c. We do not cover:

      (1) Use of a credit card, electronic fund transfer card or access device:

         (a) By a resident of your household;

         (b) By a person who has been entrusted with either type of card or access device; or

         (c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

      (2) Loss arising out of "business" use or dishonesty of an "insured".

   d. If the coverage in **7.a.** applies, the following defense provisions also apply:

      (1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

      (2) If a suit is brought against an "insured" for liability under **7.a.(1)** or **(2)**, we will provide a defense at our expense by counsel of our choice.

      (3) We have the option to defend, at our expense, an "insured" or an "insured's" bank against any suit for the enforcement of payment under **7.a.(3)**.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**8. Loss Assessment.**

a. We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Property Coverage A.

This coverage does not apply to assessments made as a result of damage caused by earthquake and other earthquake shocks, including land shock waves or tremors before, during or after volcanic activity.

We do cover loss caused directly by fire, explosion or theft resulting from earthquake and other earthquake shocks.

The limit shown in the Declarations is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Property - Condition **16.** Policy Period does not apply to this coverage.

**9. Collapse.**

a. With respect to this Property - Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state

of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) A Peril Insured Against under Property Coverage C;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse or there are visible signs of damage and the "insured" has not taken prompt action to prevent further damage;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material, methods or faulty, inadequate workmanship in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, footing, foundation, wall, floor, retaining wall, bulkhead, pier, wharf or dock, whether any item is wholly or partially above or below ground, is not included under **9.b.(2)** through **(6)**, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

**10. Glass or Safety Glazing Material.**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(2) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **10.a.(2)**; or

(2) On the "residence premises" if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**11. Landlord's Furnishings.** We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for your appliances, carpeting and other household furnishings, in each "apartment" on the "residence premises" rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Property Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**12. Ordinance or Law.**

**a.** You may use up to the percentage of Property Coverage A shown in the Declarations for this Property - Additional Coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **12.a.**

**c.** We do not cover:

(1) Stigma damage or any actual or perceived reduction or diminution in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" in or on any covered building or other structure.

**d.** The most we will pay for any increased costs to comply with any ordinance or law that becomes effective after the date of loss is $5,000.

**13. Grave Markers.** We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Property Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**14. Personal Records and Data Replacement.** We will pay up to the limit shown in the Declarations for this Property – Additional Coverage to research, replace or restore personal records or data lost as a result of a Peril Insured Against. This limit includes replacing or restoring information from the lost or damaged material, including blank recording, storage media and prerecorded computer programs available on the retail market.

We will pay only when the records or data are replaced or recreated.

**15. Inflation Coverage.** We may adjust the limits of liability for Property Coverage A at the beginning of each successive policy term to reflect estimated increases in rebuilding costs for your dwelling. We may also adjust the limits of liability for Property Coverages B, C and D. The rules then in use by us will determine the new amounts for these coverages.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted increased limits.

We will also adjust the limits of liability at the time of a loss by the same percentage pro-rated from the effective date of the policy period or the effective date of change if you have requested a change to the limit of liability for Property Coverage A during the policy period.

**16. Limited "Fungi" or Other Microbes Remediation.**

**a.** If a loss covered under the Property Coverage Section results in "fungi" or other microbes, we will pay up to the limit shown in the Declarations for this Property - Additional Coverage for:

**(1)** Remediation of the "fungi" or other microbes. This includes payment for the reasonable and necessary cost to:

**(a)** Remove the "fungi" or other microbes from covered property or to repair, restore or replace that property; and

**(b)** Tear out and replace any part of the building as needed to gain access to the "fungi" or other microbes;

**(2)** Any reasonable and necessary:

**(a)** Increase in living expense you incur; or

**(b)** Loss of fair rental value;

as covered under Property Coverage D – Loss of Use, if the "fungi" or other microbes makes the "residence premises" not fit to live in; and

**(3)** Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi" or other microbes, whether performed prior to, during or after removal, repair, restoration or replacement.

**b.** We will pay under this Property - Additional Coverage only if:

**(1)** The covered loss occurs during the policy period;

**(2)** All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

**(3)** We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi" or other microbes.

**c.** The most we will pay under this Property - Additional Coverage is the limit of liability shown in the Declarations for Limited "Fungi" or Other Microbes Remediation. This is the most we will pay for the total of all loss or costs during the policy period regardless of the:

**(1)** Number of locations or items of property insured under this policy; or

**(2)** Number of losses or claims made.

Any amount payable under Property Coverage D as described in **16.a.(2)** of this Property – Additional Coverage is included within the limit of liability shown in the Declarations for Limited "Fungi" or Other Microbes Remediation.

**d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi" or other microbes, loss payment will not be limited by the terms of this Property – Additional Coverage, except to the extent that "fungi" or other microbes cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Property – Additional Coverage.

**e.** This coverage does not increase the limit of liability that applies to:

**(1)** The damaged property; or

**(2)** Property Coverage D – Loss of Use.

All other provisions of this policy apply to Property – Additional Coverages.

## PROPERTY – EXCLUSIONS

**A.** We do not insure for any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

**(1)** Results in widespread damage;

**(2)** Affects a substantial area; or

**(3)** Occurs gradually or suddenly.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

These exclusions also apply whether or not the loss event arises from:

    **(1)** Any acts of nature;

    **(2)** Any human action or inaction;

    **(3)** The forces of animals, plants or other living or dead organisms; or

    **(4)** Any other natural or artificial process.

**1.** **Ordinance or Law,** meaning any ordinance or law:

    **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion, **A.1.a.,** does not apply to the amount of coverage that may be provided for under Property - Additional Coverage **12.** Ordinance or Law;

    **b.** The requirements of which result in stigma damage or any actual or perceived reduction or diminution in value to property; or

    **c.** Requiring an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

This exclusion applies whether or not the property has been physically damaged.

**2.** **Earth Movement,** meaning:

    **a.** Earthquake and other earthquake shocks, including land shock waves or tremors before, during or after volcanic activity;

    **b.** Volcano activity, including:

        **(1)** Volcanic eruption;

        **(2)** Volcanic explosion;

        **(3)** Effusion of volcanic material; or

        **(4)** Lava flow;

    **c.** Mudslide, including mudflow, debris flow, landslide, avalanche or sediment;

    **d.** Sinkhole;

    **e.** Subsidence;

    **f.** Excavation;

    **g.** Erosion; or

    **h.** Any expansion, shifting, rising, sinking, contracting or settling of the earth, soil or land.

This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man-made material.

We do cover loss caused directly by fire, explosion or theft resulting from any earth movement.

**3.** **Water,** meaning any:

    **a.** Flood, surface water, ground water, subsurface water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water or spray from any of these, whether a result of precipitation or driven by wind;

    **b.** Water or water borne material that enters through or backs up from a sewer or drain, or which discharges or overflows from a sump, sump pump, related equipment or any other system designed to remove surface or subsurface water which is drained from the foundation area;

    **c.** Water or water borne material located below the surface of the ground including water or water borne material:

        **(1)** Which exerts pressure on, seeps, leaks or flows into:

            **(a)** Any part of the dwelling or other structures;

            **(b)** The foundation of the dwelling or other structures;

            **(c)** Any paved surface located on the "residence premises"; or

            **(d)** Any spa, hot tub or swimming pool; or

        **(2)** Which causes earth movement; or

    **d.** Overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

We do cover loss caused directly by fire, explosion or theft resulting from water.

**4.** **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises".

If the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that peril.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

5. **Neglect,** meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War.** War includes the following and any consequence of any of the following:

   **a.** Declared or undeclared war, civil war, insurrection, rebellion or revolution;

   **b.** Warlike act by a military force or military personnel; or

   **c.** Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon, even if the discharge is accidental, will be deemed a warlike act.

7. **Nuclear Hazard,** meaning any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   Loss caused by nuclear reaction, radiation or radioactive contamination is not considered loss caused by fire, explosion or smoke.

   We do cover loss caused directly by fire resulting from any nuclear hazard.

8. **Illegal Activities or Operations,** meaning:

   **a.** Illegal growing of plants or the illegal raising or keeping of animals; or

   **b.** Illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials or any other natural or synthetic substance.

   This exclusion applies whether or not the illegal activities or operations described above were known to or within the control of an "insured".

   We do cover loss caused directly by fire or explosion resulting from any illegal activities or operations described in **8.a.** and **b.**

9. **Intentional Loss,** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

10. **Governmental Action,** meaning the destruction, confiscation or seizure of property described in Property Coverages A, B or C by order of any governmental or public authority.

    This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

11. **"Fungi" or Other Microbes,** meaning any loss or cost resulting from, arising out of, caused by, consisting of or related to "fungi", other microbes or rot. This exclusion does not apply to:

    **a.** "Fungi" or other microbes remediation coverage that may be afforded under Property - Additional Coverage **16.** Limited "Fungi" or Other Microbes Remediation; or

    **b.** "Fungi" or other microbes that results from fire or lightning.

12. **Seepage or Leakage,** meaning constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years.

    This exclusion applies regardless of the source from which the water, steam or condensation seeped or leaked.

**B.** We do not insure for loss to property described in Property Coverages A and B caused by any of the following. However, any ensuing loss to property described in Property Coverages A and B not excluded by any other provision in this policy is covered.

1. Weather conditions. This exclusion applies only if weather conditions contribute in any way with a cause or event excluded in Property - Exclusion **A.** to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

   **a.** Planning, zoning, development, surveying or siting;

   **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

---

## PROPERTY - CONDITIONS

**1. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**a.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**b.** For more than the applicable limit of liability.

**2. Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the following duties are not performed. These duties must be performed either by you, an "insured" seeking coverage or a representative of either.

**a.** Give us prompt notice. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than one year after the date of loss;

**b.** Notify the police in case of loss by theft;

**c.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in Property - Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money;

**d.** Protect the property from further damage. If repairs to the property are required, you must:

**(1)** Make reasonable and necessary repairs to protect the property; and

**(2)** Keep an accurate record of repair expenses;

**e.** Cooperate with us in the investigation of a claim;

**f.** Prepare an inventory of damaged personal property showing the quantity, description, value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**g.** As often as we reasonably require:

**(1)** Show the damaged property;

**(2)** Provide us with records and documents we request and permit us to make copies; and

**(3)** Submit to examination under oath, while not in the presence of another "insured", and sign the same; and

**h.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**(1)** The time and cause of loss;

**(2)** The interest of all "insureds" and all others in the property involved and all liens on the property;

**(3)** Other insurance which may cover the loss;

**(4)** Changes in title or occupancy of the property during the term of the policy;

**(5)** Specifications of damaged buildings and detailed repair estimates;

**(6)** The inventory of damaged personal property described in **2.f.**;

**(7)** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

**(8)** Evidence or affidavit that supports a claim under Property - Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money, stating the amount and cause of loss.

**3. Loss Settlement.** In this Property - Condition, repair or replace and replacement cost do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in Property - Additional Coverage **12.** Ordinance or Law. Covered property losses are settled as follows:

**a.** Property of the following types:

**(1)** Personal property;

**(2)** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

**(3)** Structures that are not buildings; and

**(4)** Grave markers, including mausoleums;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**b.** Buildings covered under Property Coverages A or B at replacement cost without deduction for depreciation, subject to the following:

**(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the replacement cost, without deduction for depreciation, but not more than the least of the following amounts:

  **(a)** The limit of liability under this policy that applies to the building;

  **(b)** The replacement cost of that part of the building damaged with materials of like kind and quality and for like use; or

  **(c)** The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **3.b.(1)(b)** is limited to the cost which would have been incurred if the building had been built at the original premises.

**(2)** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

  **(a)** The actual cash value of that part of the building damaged; or

  **(b)** That proportion of the replacement cost, without deduction for depreciation, for that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**(3)** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, we will not include the value of:

  **(a)** Excavations, footings, foundations, piers or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

  **(b)** Those supports described in **(3)(a)** which are below the surface of the ground inside the foundation walls, if there is no basement; and

  **(c)** Underground flues, pipes, wiring and drains.

**(4)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in Property Condition **3.** Loss Settlement **b.(1)** and **b.(2)**.

If the replacement cost is less than $2,500, we will settle the loss as noted in Property – Condition **3.** Loss Settlement **b.(1)** and **b.(2)** whether or not actual repair or replacement is complete.

**(5)** You may disregard Property - Condition **3.** Loss Settlement **b.** and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Property - Condition **3.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**c.** The amount we will pay to settle a covered loss does not include:

**(1)** Compensation for stigma damage or any actual or perceived reduction or diminution in value of such property that may remain after repair or replacement; or

**(2)** The cost to replace undamaged roofing materials due to any mismatch between the existing undamaged roof on a building and new materials used to repair or replace the damaged roof on a building because of:

  **(a)** Wear and tear, marring, scratching or deterioration;

  **(b)** Fading, weathering, oxidizing or color;

  **(c)** Texture or dimensional differences; or

  **(d)** Obsolescence or discontinuation.

**(3)** The cost to replace undamaged siding materials due to any mismatch between the existing undamaged siding on a

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

building and new materials used to repair or replace the damaged siding on a building because of:

**(a)** Wear and tear, marring, scratching or deterioration;

**(b)** Fading, weathering, oxidizing or color;

**(c)** Texture or dimensional differences; or

**(d)** Obsolescence or discontinuation.

**4. Loss Deductible.** Unless otherwise stated in this policy, the following deductible provision applies:

**a.** Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under the Property Coverage Section that exceeds the deductible amount shown in the Declarations.

**b.** If two or more deductibles under this policy apply to the same loss, the total amount of all deductibles applied to the loss will not exceed the amount of the largest applicable deductible.

**5. Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

**a.** Repair or replace any part to restore the pair or set to its value before the loss; or

**b.** Pay the difference between actual cash value of the property before and after the loss.

Property - Condition **3.** Loss Settlement **c.(1)** does not apply to this Condition.

**6. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**a.** Reach an agreement with you;

**b.** There is an entry of a final judgment; or

**c.** There is a filing of an appraisal award with us.

**7. Appraisal.** If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a report

of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.** Pay its own appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

**8. Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

**a.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**b.** A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**9. Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under the Property Coverage Section of this policy and the action is started within two years after the date of loss.

**10. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**11. Abandonment of Property.** We need not accept any property abandoned by an "insured".

**12. Mortgage Clause.**

**a.** If a mortgagee is named in this policy, any loss payable under Property Coverages A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**b.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**(1)** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**(2)** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(3) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Property Conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

c. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

d. If we pay the mortgagee for any loss and deny payment to you:

(1) We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**15. Salvage.** We have the option to take the salvage or remnant part of any covered property for which we have made a loss payment for the actual cash value or the replacement cost of the damaged covered property. At our option, we may allow you to retain damaged property and will adjust any loss payment by the agreed or appraised value of the salvage or remnant portion of the damaged property.

**16. Policy Period.** This policy applies only to loss which occurs during the policy period.

**17. Concealment or Fraud.** We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

**18. Premises Alarm, Security or Fire Protection System.** When Protective Devices Credit is shown in the Declarations, you agree to maintain any alarm, security or automatic protection systems, including fire and sprinkler system(s), in working order. You also agree to advise us promptly of any change, including removal, made to any of these system(s).

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## LIABILITY COVERAGE SECTION

### LIABILITY COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" is exhausted by the payment of a judgment or settlement.

### LIABILITY COVERAGE F - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, optical, dental, ambulance, hospital, professional nursing, prosthetic devices, chiropractic, rehabilitative, extended care and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on an "insured location" with the permission of an "insured"; or

2. To a person off an "insured location", if the "bodily injury":

   a. Arises out of a condition on an "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

### LIABILITY – ADDITIONAL COVERAGES

Unless otherwise stated, we cover the following in addition to the Liability Coverage E and Liability Coverage F limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

3. **Damage to Property of Others.** We will pay replacement cost per "occurrence" for "property damage" to property of others caused by an "insured", up to the limit shown in the Declarations for this Liability – Additional Coverage.

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under the Property Coverage Section of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a roomer, boarder, tenant or other occupant who provides compensation to an "insured" for

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TRAVELERS DOC MGMT  Page 33 of 68

use of all or part of the "residence premises" including property of any guests of any roomer, boarder, tenant or other occupant;

**e.** To property owned by or rented to a resident in your household; or

**f.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than an "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of "aircraft", hovercraft, watercraft or "motor vehicles".

Exclusion **f.(3)** does not apply to a "motor vehicle" that is:

**(a)** Designed for recreational use off public roads;

**(b)** Not owned by an "insured"; and

**(c)** At the time and place of an "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used at the place of the "occurrence".

**4. Loss Assessment.** We will pay up to the limit shown in the Declarations for this Liability - Additional Coverage for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded under the Liability Coverage Section of this policy; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Liability - Condition **9.** Policy Period does not apply to this coverage.

Regardless of the number of assessments, the limit shown in the Declarations for this Liability -

Additional Coverage is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition;

**b.** A covered act involving one or more than one director, officer or trustee; or

**c.** Repeated acts by one or more than one director, officer or trustee.

Repeated acts will be considered a single covered act.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**5. Property Damage Coverage for Military Personnel and United States Government Employees.**

If an "insured" is a:

**a.** United States government employee; or

**b.** Member of the United States Military;

we agree to pay for "property damage" to United States government property, for which an "insured" is legally responsible under applicable rules or regulations.

We will pay no more than replacement cost for "property damage" arising out of an "occurrence". Replacement cost is the amount necessary to repair or replace the damaged property without deduction for depreciation, subject to the limit of liability for this Liability – Additional Coverage.

The most we will pay for all damages resulting from any one "occurrence" will not exceed two months military basic pay or government issued salary for the "insured", as of the time of the "occurrence".

We will not pay for "property damage" to:

**a.** "Aircraft";

**b.** Hovercraft;

**c.** "Motor vehicles";

**d.** Watercraft; or

**e.** Weapons.

We will not pay for "property damage":

**a.** To the extent of any amount payable under the Property Coverage Section of this policy; or

**b.** Caused intentionally by any "insured" who is 13 years of age or older.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## LIABILITY - EXCLUSIONS

**A. Liability Coverage E – Personal Liability and Coverage F – Medical Payments to Others.**

Liability Coverages E and F do not apply to the following:

1.  "Aircraft Liability".

    This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

2.  "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

    Exclusion **A.2.** applies to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business".

    Exclusion **A.2.** does not apply to:

    a.  The rental or holding for rental of an "insured location":

        (1) Used, in whole or in part, as a temporary place to stay for a total of 30 days or less during the 12 consecutive months prior to an "occurrence";

        (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers, boarders or tenants;

        (3) In part, as an office, studio or private garage;

        (4) If the "insured location" is shown in the Declarations as an Additional Residence Rented to Others; or

        (5) If the "insured location" is shown in the Declarations as Structures Rented to Others;

    b.  The rental or holding for rental of the "residence premises" on a regular basis if Unit Owners Rental is shown in the Declarations;

    c.  An "insured" under the age of 18 years involved in a part-time or occasional, self-employed "business" with no employees; or

    d.  One or more activities, for which no "insured" receives more than $5,000 in total

compensation during the 12 consecutive months prior to an "occurrence".

3.  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened transmission of a communicable disease or illness by an "insured". This exclusion applies whether the transmission was voluntary or involuntary or whether an "insured" knew or should have known that the infected person was infected with the disease or illness.

4.  "Bodily injury" or "property damage" caused by an animal owned by or in the care, custody or control of an "insured" or a guest of an "insured" or, in the care, custody or control of a roomer, boarder, tenant, resident, "residence employee" or guest of such roomer, boarder, tenant or other occupant of the "residence premises" that is:

    a.  Wild by birth or by nature or a species not customarily domesticated;

    b.  Illegal to acquire, own or keep;

    c.  A bird of prey;

    d.  Venomous or poisonous; or

    e.  A non-human primate.

5.  "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage" is:

    a.  Of a different kind, quality or degree than initially expected or intended; or

    b.  Sustained by a different person, entity, real or personal property, than initially expected or intended.

    This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property.

6.  "Bodily injury" or "property damage" arising out of the escape or release of fuel from a "fuel system". This exclusion applies to any:

    a.  Supervision, instructions, recommendations, warnings or advice given in connection with the above;

    b.  Obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

c. Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

This exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion that results from such escaped or released fuel.

7. "Bodily injury" or "property damage" arising out of the actual or alleged presence of or actual, alleged or threatened dispersal, release, ingestion, inhalation, contact with or exposure to, whether directly or indirectly, by "fungi" or other microbes. This includes any:

a. Supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes, or the activities described in **7.c.** below;

b. Obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage";

c. Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of "fungi" or other microbes; and

d. Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes.

8. "Bodily injury" or "property damage" arising out of any oral, written, electronic, digital or other means of communication, publication or physical action that:

a. Is directed at or to an individual or group of individuals; and

b. Includes content, material or action that is or is perceived as:

(1) Bullying, harassing, degrading, intimidating, threatening, tormenting or otherwise abusive; or

(2) Causing or having caused emotional or psychological distress or fear of imminent harm or death.

This exclusion applies whether or not the communication, publication or action is:

a. Composed, created, sent or performed by an "insured";

b. Part of a series of communications, publications or actions;

c. Directed at or to the person who suffered "bodily injury" or "property damage";

d. Expected or intended to cause emotional, mental or physical harm to an individual; or

e. Intended to be public or private.

9. "Hovercraft Liability".

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

10. "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Illegal or Controlled Substances include but are not limited to cocaine, heroin, LSD, methamphetamines, marijuana and all narcotic drugs.

This exclusion does not apply to the lawful use of prescription drugs by a person following the orders of a licensed healthcare provider.

11. "Bodily injury" or "property damage" arising out of the:

a. Illegal growing of plants or the illegal raising or keeping of animals; or

b. Illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials.

This exclusion applies whether or not the illegal activities described above were within the control or knowledge of an "insured".

12. "Bodily injury" or "property damage" arising out of the actual or alleged presence of or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies to any:

a. Supervision, instructions, recommendations, warnings or advice given in connection with the above;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**b.** Obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense;

**c.** Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form; or

**d.** Loss, cost, payment or expense related to any claim, suit, order, defense, demand or investigation of any kind incurred in connection with the above.

**13.** "Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location".

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**14.** "Bodily injury" or "property damage" arising out of "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle" is:

**a.** Registered for use on public roads or property;

**b.** Not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be lawfully used at the place of the "occurrence"; or

**c.** Being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used by a roomer, boarder, tenant or other occupant who provide compensation to an "insured" for use of all or part of the "residence premises" including guests of any such roomers, boarders, tenants or other occupants;

(4) Used, or during the period of time it is available for hire, as a public or livery conveyance whether or not there is:

(a) A passenger in, upon, or getting in, on, out or off the vehicle; or

(b) Property being transported for a fee in or upon the vehicle; or

(5) Used for any other "business" purpose except for a motorized golf cart used for incidental "business" entertainment while on a golfing facility.

If "motor vehicle liability" is not excluded under Liability - Exclusion **14.a.-c.** Liability Coverages E and F still do not apply to "motor vehicle liability" unless at the time of an "occurrence", the involved "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service an "insured's" residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

(1) Being used to assist a handicapped person; or

(2) Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

(1) Not owned by an "insured"; or

(2) Owned by an "insured" provided the "occurrence" takes place:

(a) On an "insured location"; or

(b) Off all "insured locations" and the "motor vehicle" is:

(i) Designed as a toy vehicle to be ridden in or upon by children under 7 years of age;

(ii) Powered by one or more batteries; or

(iii) Not built or modified after manufacture to exceed a speed of 5 miles per hour on level ground; or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**15.** "Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services.

**16.** "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse.

**17.** "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Declared or undeclared war, civil war, acts of terrorism, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon, even if the discharge is accidental, will be deemed a warlike act.

**18.** "Watercraft liability" if, at the time and place of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used by a roomer, boarder, tenant or other occupant who provides compensation to an "insured" for use of all or part of the "residence premises" including guests of any such roomers, boarders, tenants or other occupants;

**d.** Used, or during the period of time it is available for hire, as a public or livery conveyance whether or not there is:

**(1)** A passenger in, upon, or getting in, on, out or off the watercraft; or

**(2)** Property being transported for a fee in or upon the watercraft; or

**e.** Used for any other "business" purpose.

If "watercraft liability" is not excluded under Liability - Exclusion **18.a.-e.**, Liability Coverages E and F still do not apply to "watercraft liability" unless, at the time of an "occurrence", the involved watercraft is:

**a.** Stored;

**b.** A sailing vessel, with or without auxiliary power that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured";

**c.** Not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 50 total horsepower or less; or

**(b)** More than 50 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 50 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 50 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(1)** You declare them at policy inception; or

**(2)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The exceptions in **18.c.(2)(c)** and **(d)** apply for the policy period.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**B. Liability Coverage E - Personal Liability.**

Liability Coverage E does not apply to the following:

1. Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in Liability - Additional Coverage **4.** Loss Assessment;

   b. Under any contract or agreement entered into by an "insured". This exclusion does not apply to written contracts:

      (1) That directly relate to the ownership, maintenance or use of an "insured location"; or

      (2) In which the liability of others is assumed by the "insured" prior to an "occurrence";

      unless excluded in **1.a.** or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke, water or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      (1) Nuclear Energy Liability Insurance Association;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under that policy but for the exhaustion of its limit of liability;

6. "Bodily injury" to you or an "insured" as defined in Definition **9.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured" to:

   a. Repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured"; or

7. "Bodily injury" to an "employee", "residence employee" or a temporary employee furnished to the "insured" to substitute for a permanent "residence employee" arising out of or in the course of the employee's employment by any Additional Insured named in the Declarations.

**C. Liability Coverage F - Medical Payments to Others.**

Liability Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off an "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", residing on any part of an "insured location".

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## LIABILITY - CONDITIONS

1. **Limit of Liability.** Our total liability under Liability Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Liability Coverage E shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

   Our total liability under Liability Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Liability Coverage F limit of liability shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured". This Liability - Condition will not increase our limit of liability for any one "occurrence".

3. **Duties After "Occurrence".** In the event of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if you fail to comply with the following duties:

   a. Give us written notice as soon as is practical, which sets forth:

      (1) The identity of the policy and the named "insured" shown in the Declarations;

      (2) Reasonably available information on the time, place and circumstances of the "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit;

   c. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. With respect to Liability - Additional Coverage **3.** Damage to Property of Others, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

   f. With respect to Liability - Additional Coverage **5.** Property Damage Coverage for Military Personnel and United States Government Employees, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control; and

   g. No "insured" will, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person - Liability Coverage F - Medical Payments to Others.**

   a. The injured person or someone acting for the injured person will:

      (1) Give us written proof of claim, under oath if required, as soon as is practical; and

      (2) Authorize us to obtain copies of medical reports and records.

   b. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Liability Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under the Liability Coverage Section of this policy.

   No one will have the right to join us as a party to any action against an "insured".

   Also, no action with respect to Liability Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance.** This insurance is excess over other valid and collectible insurance except

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Policy Period.** This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

10. **Concealment or Fraud.** We do not provide coverage to an "insured" who, whether before or after a loss, has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-S99 CW (05-17)

## SIGNATURE PAGE

This policy is signed for the member company of Travelers which is the insurer under this policy.

Wendy C. Skjerven
Corporate Secretary

Michael Klein
President
Personal Insurance

© 2016 The Travelers Indemnity Company. All rights reserved.

HQ-290 CW (04-20)

## PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**This Endorsement Changes The Policy. Please Read It Carefully.**

**PROPERTY COVERAGE SECTION**

**PROPERTY - CONDITIONS**

For purposes of this Personal Property Replacement Cost Loss Settlement only, the following replaces **3.** Loss Settlement paragraph **a.** :

**3. Loss Settlement.**

**Eligible Property.** Covered losses to the following property are settled at replacement cost at the time of the loss:

**a.** Property described in Property Coverage C – Personal Property;

**b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings, if covered in this policy; and

**c.** Property of the following types:

(1) Jewelry;

(2) Furs and garments:

    (a) Trimmed with fur; or

    (b) Consisting principally of fur;

(3) Silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This does not include:

    (a) Pens or pencils;

    (b) Flasks;

    (c) Smoking implements or accessories; or

    (d) Jewelry;

(4) Cameras, projection machines and related articles of equipment;

(5) Musical instruments and related equipment; and

(6) Golfer's equipment including golf clubs, golf clothing and related equipment;

if separately described and specifically insured in this policy and not subject to agreed value loss settlement.

Personal Property Replacement Cost Loss Settlement will not apply to other classes of property separately described and specifically insured.

**Ineligible Property.** Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace:

**a.** Antiques and similar articles of rarity or antiquity which cannot be replaced;

**b.** Fine arts including paintings, etchings, drawings, lithographs, photographs, sculptures and other bona fide works of art of rarity, historical value or artistic merit;

**c.** Memorabilia, souvenirs and similar articles whose age or history contribute to their value;

**d.** Collectibles including figurines, glassware, marble, porcelains, statuary and similar articles;

**e.** Articles not maintained in good or workable condition; and

**f.** Articles that are outdated or obsolete and are stored or not being used.

**Replacement Cost Loss Settlement Condition.** The following loss settlement condition applies to all property described under Eligible Property:

**a.** We will pay no more than the least of the following amounts:

(1) Replacement cost at the time of loss;

(2) The full cost of repair at the time of loss;

(3) The limit of liability that applies to Property Coverage C – Personal Property, if applicable;

(4) Any applicable Special Limits of Liability stated in this policy; or

(5) For loss to any item described under Eligible Property **c.(1)** through **c.(6)**, the limit of liability that applies to the item.

**b.** If the replacement cost for the property described under Eligible Property is more than $2,500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

**c.** You may make a claim for loss on an actual cash value basis and then make claim for any additional liability according to the provisions of this endorsement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged property.

All other provisions of this policy apply.

© 2019 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-300 GA (11-20)

## SPECIAL PROVISIONS – GEORGIA

**This Endorsement Changes The Policy. Please Read It Carefully.**

### DEFINITIONS

When this Special Provisions – Georgia is used with form **HQ-D77**, Definition **7.** "fuel system" is deleted, and when this Special Provisions – Georgia is used with form **HQ-D88**, Definition **6.** "fuel system" is deleted.

### POLICY CONDITIONS

**4.** **Cancellation** is replaced by the following:

**4.** **Cancellation.**

   **a.** You may cancel this policy at any time by returning it to us or by giving us advanced written notice of the date cancellation is to take effect, subject to the following:

   **(1)** If only your interest is affected, the effective date of cancellation will be the later of the following:

   **(a)** The date we receive your notice of cancellation; or

   **(b)** The date specified in the notice.

   However, upon our receipt of your notice of cancellation, we may waive the requirement that the notice state the future effective date of cancellation, as provided in either **4.a.(1)(a)** or **4.a.(1)(b)**, by confirming to you in writing the date and time of cancellation.

   **(2)** If by statute, regulation or contract, this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to you and the third party as soon as practicable after receiving your request for cancellation.

   Our notice will state the effective date of cancellation, which will be the later of the following:

   **(a)** 10 days from the date of mailing or delivering our notice; or

   **(b)** The effective date of cancellation stated in your notice to us.

   **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, together with our reason for cancellation, may be delivered to you, electronically transmitted to you, if

permissible by law, or mailed to you at your last known mailing address shown in the Declarations. United States Postal Service receipt or other evidence of mailing prescribed or accepted by the United States Postal Service, or electronic transmission, will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

   **(1)** When you have not paid the premium, whether payable to us or to our agent, we may cancel at any time by letting you and any lienholder named in the policy know at least 10 days before the date cancellation takes effect.

   **(2)** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by letting you and any lienholder named in the policy know at least 10 days before the date cancellation takes effect.

   **(3)** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

   **(a)** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by, or with the knowledge of, any "insured" in obtaining this policy, continuing the policy, or presenting a claim under this policy;

   **(b)** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

   **(c)** Upon the violation, by the "insured", of any of the material terms or conditions of the policy.

   This can be done by letting you and any lienholder named in the policy know at least 30 days before the date cancellation takes effect.

   **c.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   **d.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it by the date cancellation takes effect.

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TRAVELERS DOC MGMT  Page 47 of 68

**5. Nonrenewal** is replaced by the following:

**5. Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, electronically transmitting to you, if permissible by law, or mailing to you at the mailing address shown in the Declarations and to any lienholder named in the policy, written notice, together with our reason for nonrenewal at least 30 days before the expiration date of this policy. United States Postal Service receipt or other evidence of mailing prescribed or accepted by the United States Postal Service, or electronic transmission, will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

The following is added under **POLICY CONDITIONS**:

**Our Right To Recompute Premium.** We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged.

## PROPERTY COVERAGE SECTION
## PROPERTY – PERILS INSURED AGAINST

When this Special Provisions – Georgia is used with form **HQ-P02**, paragraph **b.(5)** under **12. Accidental Discharge or Overflow of Water or Steam** is deleted, and when this Special Provisions – Georgia is used with forms **HQ-P53** or **HQ-P56**, paragraph **b.(5)** under **11. Accidental Discharge or Overflow of Water or Steam** is deleted.

## PROPERTY – ADDITIONAL COVERAGES

When this Special Provisions – Georgia is used with forms **HQ-P02**, **HQ-P03**, **HQ-P04**, or **HQ-P06**, under **9. Collapse**, and when this Special Provisions – Georgia is used with forms **HQ-P53** or **HQ-P56**, under **7. Collapse**, paragraph **a.(3)** is replaced by the following:

**Collapse.**

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building. However, if any part of the interior dwelling building separates from another part of the interior of the dwelling building, with the result that any part of the interior dwelling building cannot be occupied for its intended purpose, it would be considered in a state of collapse.

## PROPERTY EXCLUSIONS

**9. Intentional Loss** is replaced by the following:

**9. Intentional Loss.**

a. We do not provide coverage for any loss arising out of any act committed by or at the direction of an "insured" with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

b. This exclusion will not apply to deny payment to an innocent co-"insured" if the loss:

(1) Arose out of family violence or sexual assault; and

(2) Is caused by the intentional act of an "insured" against whom a family violence or sexual assault complaint is brought for the act causing the loss.

c. If we pay a claim pursuant to **9.b.**, our payment to the innocent co-"insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the limit of liability.

**12. Seepage or Leakage** is replaced by the following:

**12. Seepage or Leakage,** meaning constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years.

This exclusion applies unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## PROPERTY – CONDITIONS

When this Special Provisions – Georgia is used with forms **HQ-P02**, **HQ-P03** and **HQ-P53**, **3. Loss Settlement** paragraphs **c.(2)** and **c.(3)** are deleted.

**12. Mortgage Clause**, paragraph **c.**, is replaced by the following (this Property Condition is not applicable in form **HQ-P04**):

**12. Mortgage Clause.**

c. If we decide to cancel or not renew this policy, the mortgagee will be notified at least 30 days before the date cancellation or nonrenewal takes effect. If the policy has been in effect for less than 60 days or is cancelled for

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

nonpayment of premium, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

## LIABILITY COVERAGE SECTION

## LIABILITY – EXCLUSIONS

When this Special Provisions – Georgia is used with form **HQ-L77, A.6.** under **A. Liability Coverage E – Personal Liability and Coverage F – Medical Payments to Others**, and when this Special Provisions – Georgia is used with form **HQ-L88, A.6.** under **A. Liability Coverage E – Premises Liability and Coverage F – Medical payments to others** is deleted.

When this Special Provisions – Georgia is used with form **HQ-L77, A.10.** under **A. Liability Coverage E – Personal Liability and Coverage F – Medical Payments to Others**, and when this Special Provisions – Georgia is used with form **HQ-L88, A.11.** under **A. Liability Coverage E – Premises Liability and Coverage F – Medical Payments to Others** is replaced by the following:

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Illegal or Controlled Substances include but are not limited to cocaine, heroin, LSD, methamphetamines, marijuana and all narcotic drugs.

This exclusion does not apply:

**a.** To the lawful use of prescription drugs by a person following the orders of a licensed healthcare provider; or

**b.** Where the involvement with controlled substance(s) is not within the knowledge of any "insured".

When this Special Provisions – Georgia is used with form **HQ-L77, A.12.** under **A. Liability Coverage E –**

**Personal Liability and Coverage F – Medical Payments to Others**, and when this Special Provisions – Georgia is used with form **HQ-L88, A.13.** under **A. Liability Coverage E – Premises Liability and Coverage F – Medical Payments to Others** is deleted.

When this Special Provisions – Georgia is used with form **HQ-L77**, for purposes of **A.14.(e)** under **A. Liability Coverage E – Personal Liability and Coverage F – Medical Payments to Others** only, the first paragraphs **a.** and **b.** under **A.14.** which state:

**a.** Registered for use on public roads or property;

**b.** Not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be lawfully used at the place of the "occurrence"; or

are deleted, and paragraph **A.14.(e)** is replaced by the following:

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the golfing facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored on the golfing facility; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility.

All other provisions of this policy apply.

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-420 CW (11-18)

## ADDITIONAL REPLACEMENT COST PROTECTION COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

(Applies only when loss to the dwelling exceeds the Property Coverage A
Limit of Liability shown in the Declarations)

**PROPERTY COVERAGE SECTION**

**PROPERTY – CONDITIONS**

If Functional Replacement Cost Loss Settlement form **HQ-825** is part of this policy, the defined term "functional replacement cost" replaces any reference to replacement cost in this Additional Replacement Cost Protection Coverage.

To the extent that coverage is provided, we agree to provide an additional amount of insurance under Property Coverage A only in accordance with the following provisions:

**A.** If you have:

    **1.** Allowed us to adjust the Property Coverage A limit of liability and the premium in accordance with:

        **a.** The property evaluations we make; and

        **b.** Any increases in inflation; and

    **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling insured under Property Coverage A which increase the replacement cost of the dwelling by 5% or more;

    the provisions of this Additional Replacement Cost Protection Coverage will apply after a loss, provided you repair or replace the damaged dwelling.

**B.** If there is a loss to the dwelling insured under Property Coverage A that exceeds the Property Coverage A limit of liability shown in the Declarations, for purposes of settling only that loss to the dwelling:

    **1.** We will provide an additional amount of insurance up to the percentage of Property Coverage A shown in the Declarations; and

    **2.** The following replaces **3.** Loss Settlement, paragraph **b.** However, if Roof Systems Payment Schedule Windstorm or Hail Losses form **HQ-646** is part of this policy, this change does not apply to loss or damage by the peril of windstorm or hail to which the Roof Systems Payment Schedule Windstorm or Hail Losses form **HQ-646** applies:

        **b.** The dwelling covered under Property Coverage A at replacement cost without deduction for depreciation, subject to the following:

        **(1)** We will pay the replacement cost without deduction for depreciation, but not more than the least of the following amounts:

            **(a)** The limit of liability under this policy that applies to the dwelling covered under Property Coverage A, plus any additional amount of insurance provided under **B.1.** of the Additional Replacement Cost Protection Coverage form **HQ-420;**

            **(b)** The replacement cost of that part of the dwelling damaged with materials of like kind and quality and for like use (or, if Functional Replacement Cost Loss Settlement form **HQ-825** is part of this policy, functionally equivalent materials and methods as defined in that endorsement); or

            **(c)** The necessary amount actually spent to repair or replace the damaged dwelling.

        If the dwelling is rebuilt at a new premises, the cost described in **b.(1)(b)** is limited to the cost which would have been incurred if the dwelling had been built at the original premises.

        **(2)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

        **(3)** You may disregard Property – Condition **3.** Loss Settlement **b.** and make claim under this policy for loss to the dwelling on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Property – Condition **3.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged dwelling.

All other provisions of this policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-829 CW (05-17)

# LIMITED FUNGI OR OTHER MICROBES LIABILITY COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

## DEFINITIONS

The following definition is added:

"Fungi liability hazard" means "bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation, contact with or exposure to, whether directly or indirectly, by "fungi" or other microbes. This includes any:

**a.** Supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes, or the activities described in **c.** below;

**b.** Obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this Limited Fungi or Other Microbes Liability Coverage. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage";

**c.** Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of "fungi" or other microbes; and

**d.** Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes.

## LIABILITY COVERAGE SECTION

## LIABILITY – EXCLUSIONS

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, Liability - Exclusion **A.7.** does not apply.

## LIABILITY – CONDITIONS

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, the following sentence is added to both the first and second paragraphs of **1.** Limit of Liability:

**1. Limit of Liability.**

Damages for "bodily injury" or "property damage" included in the "fungi liability hazard" are not included in this limit.

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, the following paragraphs are added:

**Liability Coverage E - Aggregate Limit of Liability.** Our total limit of liability under Liability Coverage E for damages because of "bodily injury" or "property damage" from all "occurrences" combined included in the "fungi liability hazard" during the policy period will be no more than the aggregate limit of liability shown in the Declarations for this Limited Fungi or Other Microbes Liability Coverage.

**Liability Coverage F - Sub-Limit of Liability.** Subject to the Liability Coverage E - Aggregate Limit of Liability described above, our total limit of liability under Liability Coverage F for all medical expense payable for "bodily injury" to one person as the result of all accidents combined included in the "fungi liability hazard" during the policy period will not be more than the Liability Coverage F - Sub-Limit of Liability shown in the Declarations for this Limited Fungi or Other Microbes Liability Coverage. This Sub-Limit of Liability does not increase the Liability Coverage E - Aggregate Limit of Liability.

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, the following sentence is added to **2.** Severability of Insurance:

**2. Severability of Insurance.**

With respect to the "fungi liability hazard", this condition shall not increase the Liability Coverage E Aggregate Limit of Liability or the Liability Coverage F Sub-Limit of Liability.

All other provisions of this policy apply.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## ADDITIONAL BENEFITS

**This Endorsement Changes The Policy. Please Read It Carefully.**

**POLICY CONDITIONS**

For purposes of this Additional Benefits only, the following policy condition is added:

**Additional Benefits.** From time to time we may provide you or allow others to provide you, or another person insured under this policy with:

a. Goods and services, devices, equipment, memberships, merchandise, points, rewards, gift cards, redemption codes, coupons, vouchers, airline miles, special offers, classes, seminars, other program benefits or other items of value; or

b. Make charitable contributions, donations or gifts on your behalf.

These Additional Benefits may be provided in any form. If one or more of our benefit programs apply, you or another person insured under this policy may be eligible to receive benefits specific to that program depending on the terms of the program and Additional Benefit provided.

You are under no obligation to pursue any of these Additional Benefits.

We do not warrant the merchantability, fitness or quality of any goods or services provided under this endorsement or assume any additional obligation related to any Additional Benefits provided.

We have the right to modify or discontinue benefits provided under this endorsement without notice to you.

All other provisions of this policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## Important Information About Flood Damage

Many people find out too late their property is at risk of flooding, or that their property insurance does not cover flood damage.

> **YOUR TRAVELERS HOMEOWNERS POLICY <u>DOES NOT</u> COVER FLOOD LOSS TO YOUR HOME AND ITS CONTENTS.**

While we don't offer flood insurance, we believe it's up to you to decide if you need the specialized coverage it offers to help protect your home or condo.

**If you think you need flood insurance:**

- Contact your insurance agent
- Learn more about the National Flood Insurance Program at www.floodsmart.gov
- Even if you already have a flood policy, you may want to ensure it is up to date

**PL-50369 (05-17)**

**This information is intended for general education purposes only. All statements herein are subject to the provisions, exclusions and conditions of the applicable policy. For an actual description of all coverages, terms and conditions, refer to the insurance policy.**

**IMPORTANT NOTICE – Annual Renewal Notice**

At annual renewal you may request to have your policy rerated using an updated insurance score. Be aware that this may result in a number of possible outcomes, including a higher or lower rate or no change. To request to have your policy rerated using an updated insurance score please, contact your Travelers representative at the Policy Service number listed on your Policy Declarations page.

PL-50483 (05-17)

TRAVELERS DOC MGMT  Page 59 of 68

# PRIVACY NOTICE

## Privacy Statement for Individual U.S. Personal Insurance Consumers

Your privacy is important to us. When we quote or sell an insurance policy to a person, we get information about the people and property that we're insuring. This Privacy Notice describes the types of information about you ("personal information") we collect, where we get it, and how we use, share and protect it. It applies to current and former Travelers personal insurance customers in the United States.

A few key points include:

- We collect personal information from you, your agent, and from third parties
- We will not share your personal information with others for their marketing purposes without your permission
- We maintain safeguards designed to help prevent unauthorized use, access and disclosure of personal information

| What type of information do we collect? | You give us most of what we need in the application process. To make sure what we have is correct, or to obtain additional information, we may need to check back with you. For example, you may be asked to give us some details in writing, via e-mail or over the phone. In addition, we may obtain other information, including but not limited to the following: |
|---|---|
| | - Information from consumer reporting agencies and other insurance support organizations to the extent permitted by law. This may include items such as credit history, credit-based insurance score, driving record, accident and motor vehicle conviction history, and claim history. Information given to us by an insurance support organization, including consumer reporting agencies, may be retained by them and disclosed to others. |
| | - Your past insurance history, including information about your policies and claims, from insurance support organizations or your former insurers. |
| | - Information regarding your property. We may obtain this through third party reports and through a property inspection. We or an independent inspector may visit the property to inspect its condition, or we may use an unmanned aircraft system. We may obtain geospatial information, and take pictures or video. If we need more details about the property, we may need to schedule an interior inspection. |
| | - Information from government agencies or independent reporting companies. |
| | - Other third party data relating to the insured risk, such as possible drivers and vehicles associated with your household and odometer readings associated with any vehicle(s). |
| | - In some instances, we may need to know about your health. For example, if we need to know whether a physical limitation will affect your ability to drive, we may ask for a statement from your doctor. |

| How do we use your personal information? | We use the personal information we collect to sell, underwrite and rate, service and administer insurance; to handle claims; to create and market products and services; to prevent and detect fraud; to satisfy legal or regulatory requirements; and for other business purposes and as otherwise allowed by law. |
| --- | --- |
| | Once you're insured with us, we will retain details about your policy(ies). This may include, among other things, bill payment, transaction or claim history and details, as well as other information. |
| | When you give us a telephone number, you consent to being contacted at that number, including if the number is for a cell phone or other wireless device. We may contact you in person, by recorded message, by the use of automated dialing equipment, by text (SMS) message, or by any other means your device is capable of receiving, to the extent permitted by law and for reasonable business purposes, including to service your policy or alert you to other relevant information. |
| How do we share your personal information? | We do not give or sell your personal information to nonaffiliated third parties for their own marketing purposes without your prior consent. |
| | We may give the personal information we collect to others to help us conduct, manage or service our business. When we do, we require them to use it only for the reasons we gave it to them. We may give, without your past permission and to the extent permitted by law, personal information about you to certain persons or organizations such as: your agent or insurance representative; our affiliated property and casualty insurance companies; independent claim adjusters or investigators; persons or organizations that conduct research; insurance support organizations (including consumer reporting agencies); third party service providers; another insurer; law enforcement; state insurance departments or other governmental or regulatory agencies; or as otherwise required or permitted by law. Information we share with insurance support organizations, such as your claims history, may be retained by them and disclosed to others. |
| | We may also share your personal information: to comply with legal process; to address suspected fraud or other illegal activities; or to protect our rights, privacy, safety or property, and/or that of you or others. |
| How do we protect your personal information? | We maintain physical, electronic and administrative safeguards designed to help protect personal information. For example, we limit access to personal information and require those who have access to use it only for legitimate business purposes. |

TRAVELERS DOC MGMT  Page 62 of 68

| How can I review and correct the personal information you have about me? | If you have questions about what personal information we maintain about you, please make your request in writing and include your full name, mailing address, phone number and policy number. When we receive your written request, we will respond within thirty (30) business days. We will describe the personal information we maintain, whom we know we've shared it with in the last two (2) years, and how you may request a correction, if necessary. If we requested a consumer report, we will tell you the name and address of the consumer reporting agency. |
|---|---|
| | You may also see and copy the information we have, except for certain documents about claims and lawsuits. If you believe our information is incorrect, let us know in writing. We will review it, and, if we agree, we will correct it, notify you, and send a correction letter to anyone who received the original information. If we do not agree, you are allowed to file a letter with your comments. |
| | For questions about the right of access or correction to your information, please write to: Travelers, One Tower Square, Hartford, CT 06183, Attn: Privacy Office. |

This notice is given by The Travelers Indemnity Company and its personal insurance property casualty affiliates.

This notice may be amended at any time. The most current version will be posted on Travelers.com.

A statement concerning our use of Insurance Score is available on request for Oregon residents.

Last revised December 2016

## Important Notice about Consumer Reporting

Thank you for trusting us with your insurance. We are committed to providing you excellent service at a competitive price. A lot of information is used to determine your price, including information about your credit history(ies). We are required to tell you that based on the information we received, you did not receive our best rating classification. Your price is competitive and accurate based on your unique characteristics. Please refer to the reverse side of this page for the details from your credit history affecting your price.

The consumer reporting agency(ies) that provided information about you:

Insurance Score (Credit History) Information:
TransUnion National Disclosure Center
P.O. Box 1000
Chester, PA 19022
Telephone:  1.800.645.1938
Web Address: www.transunion.com

**Remember:**

- You have the right to a free copy of the consumer report(s) listed above. Simply contact the agency(ies) listed above within 60 days of receipt of this notice.

- You have the right to dispute the accuracy or completeness of any information in a consumer report. Simply contact the agency to discuss or dispute any information in the report.

- The consumer reporting agency(ies) did not make the pricing determination and cannot answer questions regarding your Travelers policy.

- Notify us if your information changes.  We will reevaluate your situation, which could save you money.

Please refer to the reverse side of this page for a description of your additional rights.

PL-50351 (05-17)

The information from your credit report is used to create an insurance score. Your insurance score was impacted by:

* Length of credit history.
* Number of customer initiated mortgage credit inquiries within the past 2 years.
* Length of active revolving credit history or no revolving account information available.
* Total balance to limit ratio on revolving accounts or no revolving info available.

To learn more about how your credit relates to your insurance policy please contact our Insurance Score Resource Center at 1.800.550.7717. For any other questions, please contact your Travelers agent or representative.

Please note: this information does not necessarily reflect a poor or average credit standing.


A DESCRIPTION OF YOUR ADDITIONAL RIGHTS:

You have a right to a written statement containing specific items of information that support the reason given for our action and the names and addresses of the institutional sources and insurance support organizations that supplied the items of information.

You also have the right to see and obtain a copy of all recorded information which we used to take this action or to be told the nature and substance of that information after properly identifying yourself.

You must make a written request within 90 business days of the date of this notice to exercise these rights.

If you disagree with the accuracy of the recorded information used to take this action, you have the right to request in writing a change, correction, or deletion of the recorded information in dispute. If we refuse your request, you have the right to file a statement containing supplemental information or explaining why you disagree. We will put your statement in our file so that anyone reviewing your file will see it.

PL-50351 (05-17)

## Important Notice about Billing Options and Disclosures

This notice contains important information about our billing options and charges.

You have chosen to pay your insurance premium in monthly installments and will be billed by mail / email. Please note that a service charge of $6.00 will apply per installment. There will be no service charge on the first installment of the policy period. Other charges that may apply include a $10.00 late charge and a $25.00 fee for payments returned by your bank. If a payment is late we may require the total balance on your account be paid, in order to continue coverage.

If your billing needs change, you may pay your premium by:

| Bill Plan | Monthly | Pay in Full |
|---|---|---|
| Electronic Funds Transfer (EFT) | $2.00 | No Charge |
| Recurring Credit Card (RCC) | $2.00 | No Charge |
| Bill by Mail / Email | $6.00 | No Charge |
| Late Charge: $10.00 per occurrence | | |
| Payments returned by your bank: $25.00 per occurrence | | |

In the event two payments are returned during a 12 month period you will be required to pay with guaranteed funds for 182 days from the date of the last returned payment. Guaranteed funds are credit card, bank check, money order or home banking payments. Other forms of payment will be returned. You will not be eligible to use our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plans.

Visit www.amp.travelers.com if you would like to enroll in our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plan.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

If you have multiple policies with us you may be able to combine those policies into a single billing account. If you have selected one of our monthly billing options, and you combine your policies into a single billing account, you will be charged just one service charge per installment, and not per individual account.

To add this policy to an existing billing account or if you have other questions about this notice, please call your insurance representative at 1-877-490-4454.

PL-50019 (11-17)

# EXHIBIT B

## SHARRONA_CURNELL

### Main Level



| Bedroom | | | | | | | | Height: 8' 3" |
|---|---|---|---|---|---|---|---|---|

404.25 SF Walls
554.28 SF Walls & Ceiling
16.67 SY Flooring
49.00 LF Ceil. Perimeter

150.03 SF Ceiling
150.03 SF Floor
49.00 LF Floor Perimeter

| Door | 2' X 6' 8" | Opens into Exterior |
|---|---|---|
| Door | 2' X 6' 8" | Opens into Exterior |
| Window | 6' X 5' | Opens into Exterior |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| **DWELLING** | | | | | | | | | |
| 1. Contents - move out then reset [S 1:2] | | | | | | | | | |
| | 1.00 EA | 60.26 | 0.00 | 60.26 | 0/NA | Avg. | 0% | (0.00) | 60.26 |
| 2. Seal & texture paint the surface area [S 1:2] | | | | | | | | | |
| | 44.00 SF | 1.19 | 1.13 | 53.49 | 0/15 yrs | Avg. | 0% | (0.00) | 53.49 |
| 3. Paint the ceiling - one coat [S 1:2] | | | | | | | | | |
| | 150.03 SF | 0.69 | 1.68 | 105.20 | 0/15 yrs | Avg. | 0% | (0.00) | 105.20 |
| **Totals: Bedroom** | | | 2.81 | 218.95 | | | | 0.00 | 218.95 |
| **Total: Main Level** | | | 2.81 | 218.95 | | | | 0.00 | 218.95 |

| Roof | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| **DWELLING** | | | | | | | | | |
| 4. Tear off, haul and dispose of comp. shingles - 3 tab [S 1:1] | | | | | | | | | |
| | 13.70 SQ | 57.91 | 0.00 | 793.37 | NA | NA | NA | (0.00) | 793.37 |
| 5. Remove Additional charge for high roof (2 stories or greater) [S 1:1] | | | | | | | | | |
| | 13.70 SQ | 5.50 | 0.00 | 75.35 | NA | NA | NA | (0.00) | 75.35 |
| 6. Remove Additional charge for steep roof - 7/12 to 9/12 slope [S 1:1] | | | | | | | | | |
| | 7.27 SQ | 14.57 | 0.00 | 105.92 | NA | NA | NA | (0.00) | 105.92 |
| 7. Remove Additional charge for steep roof - 10/12 - 12/12 slope [S 1:1] | | | | | | | | | |
| | 6.01 SQ | 22.90 | 0.00 | 137.63 | NA | NA | NA | (0.00) | 137.63 |
| 8. Roofing felt - 15 lb. [S 1:1] | | | | | | | | | |
| | 13.28 SQ | 31.24 | 7.00 | 421.87 | 15/20 yrs | Avg. | 75% | (316.40) | 105.47 |
| 10. Roofing felt - 15 lb. [S 1:1] | | | | | | | | | |
| | 0.35 SQ | 31.24 | 0.18 | 11.11 | 15/20 yrs | Avg. | 75% | (8.34) | 2.77 |
| ***Amount of felt equal to the valley liner*** | | | | | | | | | |

8/3/2022                               Page: 3

**CONTINUED - Roof**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 11. 3 tab - 25 yr. - comp. shingle roofing - w/out felt [S 1:1] | | | | | | | | | |
| | 0.67 SQ | 220.28 | 5.64 | 153.23 | 15/25 yrs | Avg. | 60% | (91.93) | 61.30 |
| ***Line item includes material and labor for starter course*** | | | | | | | | | |
| 12. 3 tab - 25 yr. - comp. shingle roofing - w/out felt [S 1:1] | | | | | | | | | |
| | 15.00 SQ | 220.28 | 126.28 | 3,430.48 | 15/25 yrs | Avg. | 60% | (2058.29) | 1,372.19 |
| ***8% waste included for cut waste only*** | | | | | | | | | |
| 13. 3 tab - 25 yr. - comp. shingle roofing - w/out felt [S 1:1] | | | | | | | | | |
| | 0.67 SQ | 220.28 | 5.64 | 153.23 | 15/25 yrs | Avg. | 60% | (91.93) | 61.30 |
| ***Line item includes material and labor for cap shingles*** | | | | | | | | | |
| 14. Additional charge for high roof (2 stories or greater) [S 1:1] | | | | | | | | | |
| | 13.28 SQ | 19.18 | 0.00 | 254.71 | 0/NA | Avg. | 60% % | (152.83) | 101.88 |
| 15. Additional charge for steep roof - 7/12 to 9/12 slope [S 1:1] | | | | | | | | | |
| | 7.27 SQ | 43.42 | 0.00 | 315.66 | 0/NA | Avg. | 60% % | (189.40) | 126.26 |
| 16. Additional charge for steep roof - 10/12 - 12/12 slope [S 1:1] | | | | | | | | | |
| | 6.01 SQ | 68.25 | 0.00 | 410.18 | 0/NA | Avg. | 60% % | (246.11) | 164.07 |
| 17. Flashing - pipe jack [S 1:1] | | | | | | | | | |
| | 3.00 EA | 44.07 | 3.13 | 135.34 | 15/35 yrs | Avg. | 42.86% | (58.00) | 77.34 |
| 19. Roof vent - turtle type - Metal [S 1:1] | | | | | | | | | |
| | 6.00 EA | 62.93 | 10.36 | 387.94 | 15/35 yrs | Avg. | 42.86% | (166.26) | 221.68 |
| 20. Roofer - per hour [S 1:1] | | | | | | | | | |
| | 1.00 HR | 122.25 | 0.00 | 122.25 | 15/NA | Avg. | 0% | (0.00) | 122.25 |
| ***Labor to work around non-damaged flashing items as needed*** Chimney flashing | | | | | | | | | |
| DWELLING - CODE UPGRADE | | | | | | | | | |
| ~~9. Roll rooting - w/out felt~~ | | | | | | | | | |
| | ~~0.35 SQ~~ | ~~82.58~~ | ~~1.84~~ | ~~30.74~~ | ~~15/20 yrs~~ | ~~Avg.~~ | ~~75%~~ | ~~(0.00)~~ | ~~30.74~~ |
| This item replaces RFGFELT15 Roofing felt - 15 lb. or expands the scope of repairs, as required by current building codes. Settlement is based on the associated item until the code upgrade cost is incurred, subject to limits. ***Roll roofing valley liner if present or required per code*** | | | | | | | | | |
| ~~18. R&R Drip edge~~ | | | | | | | | | |
| | ~~230.59 LF~~ | ~~3.06~~ | ~~24.40~~ | ~~726.98~~ | ~~15/35 yrs~~ | ~~Avg.~~ | ~~42.86%~~ | ~~(0.00)~~ | ~~726.98~~ |
| This item did not previously exist or expands the scope of repairs, but is required by current building codes. The code upgrade cost is payable when incurred, subject to limits. | | | | | | | | | |

| **Totals: Roof** | | | 158.23 | 6,908.27 | | | | 3,379.49 | 3,528.78 |
|---|---|---|---|---|---|---|---|---|---|

**Labor Minimums Applied**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| DWELLING | | | | | | | | | |
| 21. Painting labor minimum [S 1:2] | | | | | | | | | |
| | 1.00 EA | 89.24 | 0.00 | 89.24 | 0/NA | Avg. | 0% | (0.00) | 89.24 |

8/3/2022                                    Page: 4

### CONTINUED - Labor Minimums Applied

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 22. General labor - labor minimum [S 1:2] | | | | | | | | | |
| | 1.00 EA | 1.39 | 0.00 | 1.39 | 0/NA | Avg. | 0% | (0.00) | 1.39 |
| **Totals: Labor Minimums Applied** | | | 0.00 | 90.63 | | | | 0.00 | 90.63 |
| **Line Item Totals: SHARRONA_ CURNELL** | | | 161.04 | 7,217.85 | | | | 3,379.49 | 3,838.36 |

[%] - Indicates that depreciate by percent was used for this item
[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

### Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 404.25 | SF Walls | 150.03 | SF Ceiling | 554.28 | SF Walls and Ceiling |
| 150.03 | SF Floor | 16.67 | SY Flooring | 49.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 49.00 | LF Ceil. Perimeter |
| | | | | | |
| 150.03 | Floor Area | 166.81 | Total Area | 404.25 | Interior Wall Area |
| 477.92 | Exterior Wall Area | 51.67 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 7,217.85 | 100.00% | 3,838.36 | 100.00% |
| Dwelling - Code Upgrade | 0.00 | 0.00% | 0.00 | 0.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 7,217.85 | 100.00% | 3,838.36 | 100.00% |

8/3/2022      Page: 5

Mail - Milphew Wilson - Outlook

## Summary for
### Dwelling

#### Summary for All Items

| | |
|---|---:|
| Line Item Total | 7,056.81 |
| Material Sales Tax | 161.04 |
| **Replacement Cost Value** | **$7,217.85** |
| Less Depreciation | (3,379.49) |
| **Actual Cash Value** | **$3,838.36** |
| Less Deductible | (1,000.00) |
| **Net Claim** | **$2,838.36** |
| Total Depreciation | 3,379.49 |
| Total Recoverable Depreciation | 3,379.49 |
| **Net Claim if Depreciation is Recovered** | **$6,217.85** |

### Sublimit Recap

| Description | Single Item Limit | Aggregate Limit | ACV | RCV | Overage |
|---|---:|---:|---:|---:|---:|
| Roof | $0.00 | $0.00 | $3,528.78 | $6,908.27 | $0.00 |
| Dwelling-interior | $0.00 | $0.00 | $309.58 | $309.58 | $0.00 |
| | | | $3,838.36 | $7,217.85 | $0.00 |

Mail - Milphew Wilson - Outlook

---

### Summary for
### Dwelling - Code Upgrade

#### Summary for All Items

| | |
|---|---|
| Line Item Total | 0.00 |
| **Replacement Cost Value** | **$746.61** |
| **Actual Cash Value** | **$0.00** |
| **Net Claim** | **$0.00** |

### Dwelling - Code Upgrade Paid When Incurred

| | |
|---|---|
| Line Item Total | 723.55 |
| Material Sales Tax | 23.06 |
| **Replacement Cost Value** | **$746.61** |
| **Total Paid When Incurred** | **$746.61** |
| **Net Claim** | **$0.00** |
| **Net Claim if Additional Amounts are Recovered** | **$746.61** |

---

Mail - Milphew Wilson - Outlook

### Recap of Taxes

| | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|
| Line Items | 161.04 | 0.00 | 0.00 |
| Total | 161.04 | 0.00 | 0.00 |

## Recap by Room

**Estimate: SHARRONA_CURNELL**

| | | | |
|---|---|---:|---:|
| **Area: Main Level** | | | |
| **Bedroom** | | **216.14** | **3.06%** |
| Coverage: Dwelling | 100.00% = | 216.14 | |
| **Area Subtotal:  Main Level** | | **216.14** | **3.06%** |
| Coverage: Dwelling | 100.00% = | 216.14 | |
| **Roof** | | **6,750.04** | **95.65%** |
| Coverage: Dwelling | 100.00% = | 6,750.04 | |
| **Labor Minimums Applied** | | **90.63** | **1.28%** |
| Coverage: Dwelling | 100.00% = | 90.63 | |
| **Subtotal of Areas** | | **7,056.81** | **100.00%** |
| Coverage: Dwelling | 100.00% = | 7,056.81 | |
| **Total** | | **7,056.81** | **100.00%** |

## Recap by Category with Depreciation

| Items | | | RCV | Deprec. | ACV |
|---|---|---|---|---|---|
| **CONTENT MANIPULATION** | | | 60.26 | | 60.26 |
| Coverage: Dwelling | @ | 100.00% = | 60.26 | | |
| **GENERAL DEMOLITION** | | | 1,112.27 | | 1,112.27 |
| Coverage: Dwelling | @ | 100.00% = | 1,112.27 | | |
| **LABOR ONLY** | | | 1.39 | | 1.39 |
| Coverage: Dwelling | @ | 100.00% = | 1.39 | | |
| **PAINTING** | | | 245.12 | | 245.12 |
| Coverage: Dwelling | @ | 100.00% = | 245.12 | | |
| **ROOFING** | | | 5,637.77 | 3,285.79 | 2,351.98 |
| Coverage: Dwelling | @ | 100.00% = | 5,637.77 | | |
| **Subtotal** | | | 7,056.81 | 3,285.79 | 3,771.02 |
| **Material Sales Tax** | | | 161.04 | 93.70 | 67.34 |
| Coverage: Dwelling | @ | 100.00% = | 161.04 | | |
| **Total** | | | 7,217.85 | 3,379.49 | 3,838.36 |

8/3/2022          Page: 10

# EXHIBIT C



**HUGGINS** LAW FIRM

**Michael D. Turner, Esq.**
110 Norcross Street
Roswell, GA 30075
mdturner@lawhuggins.com
(770) 913-6229

January 5, 2023

Travelers Personal Insurance Company
P.O. Box 430
Buffalo, NY 14240

**Sent Via email:**
ashotuyo@travelers.com

Re:  Named Insured(s):   Sharonna Curnell
      Policy Number:      0M4154610316268633 1
      Claim Number:       IVN4325001H
      Date of Loss:       July 23, 2022

To Whom it May Concern:

I have been retained by Sharonna Curnell ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why Travelers Personal Insurance Company ("Travelers") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that Travelers has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$62,372.17, less previous payments and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

To:  Travelers Personal Insurance Company
Client: Sharonna Curnell
January 5, 2023
Page **2** of **2**

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage Travelers to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at mdturner@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

Michael D. Turner, Esq.
Attorney at Law

MDT/aak
Encl.



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

| | | | | |
|---|---|---|---|---|
| Insured: | Sharonna Curnell | | Home: | (203) 570-8028 |
| Property: | 9412 Mulligan Ct.<br>Jonesboro, GA 30238 | | E-mail: | mstcurnell03@gmail.com |

| | | | | |
|---|---|---|---|---|
| Estimator: | Kerry Ruff | | Business: | (203) 570-8028 |
| Company: | LLoyds of Abindon PA Firm | | E-mail: | policypros@lloydsofabindonp<br>afirm.com |
| Business: | 258 Beartooth Parkway<br>Dawsonville, GA 30534 | | | |

| | | | | |
|---|---|---|---|---|
| Reference: | Milphew Wilson III | | Business: | (203) 570-8028 |
| Position: | Public Adjuster | | E-mail: | milphew@lloydsofabingdonpa<br>firm.com |
| Company: | Lloyds of Abingdon Public Adjusting Firm | | | |
| Business: | 258 Beartooth Parkway Suite 100<br>Dawsonville, GA 30534 | | | |

**Claim Number:** IVN4325001H          **Policy Number:** 0M4154610316268633
1          **Type of Loss:** Weather/Water

| | | | |
|---|---|---|---|
| Date Contacted: | 8/7/2022 12:00 AM | | |
| Date of Loss: | 7/23/2018 12:00 AM | Date Received: | 8/7/2022 12:00 AM |
| Date Inspected: | 8/11/2022 1:00 PM | Date Entered: | 8/11/2022 1:00 PM |

| | |
|---|---|
| Price List: | GAAT8X_AUG22<br>Restoration/Service/Remodel |
| Estimate: | SHARRONA_CURNELL-1 |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

**Mitigation Estimate Price: $20,574.44**

**Contents Estimate Price:  $4094.74**

**Rebuild/Repair Estimate:  $36,643.08**

**Other Structures Estimate:  $1059.71**

**Total Estimate totals:   $62.372.17**

Lloyds of Abingdon PA FIrm, understands that the subject property experienced a recent wind/water-loss event that began from the roof that ultimately allowed a water intrusion that flowed
downward resulting in impact to the Attic, Upstairs bedrooms- 1 and 2 as well as the Upstairs  Bathroom.

**Subject property:  Suffered weather related wind/ water loss due to an un-named storm, on or around the 23rd of July, 2022.**
High winds severely damaged 80% of the roof of dwelling.  Three tab shingles were lifted and or removed from roofing system, causing in approximately 30-37% of the interior dwelling, to be directly exposed to heavy rains, accompanying strong winds. These rains potentially dumped hundreds of gallons of water, directly into the interior of the dwelling.  The direct rain fall into the dwelling damaged structural and surface materials.  Drywall, floor coverings, trim, contents , etc... The bedroom 1, ceiling was severely damaged almost entirely due to the saturation of rain water once roofing system was compromised. Moisture has been observed within ceiling and wall cavities multiple rooms upstairs in the dwelling. Trapped and bound moisture and or moisture damage, has also been observed between multiple interior walls throughout the upper part of the dwelling.
The risk of  Secondary damages is imminent, even before the rain subsided, due to the nature of the roof exposures.
A comprehensive mitigation plan has been outlined by prospective mitigation professionals, in an effort to restore the subject property back to it's pre-loss condition. Restorative drying principles provided by
trusted IICRC guidelines are not only ideal, but possibly, the only methods available to garner the restorative results necessary, to render dwelling, safe and liveable again.

**Comprehensive Mitigation/Restoration Plan:**

**Definitions/Background:** Defining a water loss event is made by applying the following guidelines as provided by the IICRC
*Standard and Reference Guide for Professional Water Damage Restoration* (IICRC S500):
**Categories of Water** (abbreviated summary only: ref. *Standard and Reference Guide for  Professional Water Damage Restoration* (IICRC S500):
        • **Category 1,** clean water at the source;
  • **Category 2,** begins with contamination, could cause sickness or discomfort if consumed by humans;
  • **Category 3,** highly unsanitary (sewage), could cause illness or death if consumed by humans. Category 1 or 2 water changes to Category 2 or 3 if left untreated for sufficient time.
**Classes of Water Losses** (abbreviated summary only; ref. IICRC ASD consensus documents)**:**
        • **Class 1,** losses that are confined, caught quickly, and contain few absorbent materials;
  • **Class 2,** losses with quantities of highly absorbent flooring materials primarily, such as carpet and pad;
  • **Class 3,** water originates overhead; ceilings, wall frames, insulation, drywall, and highly absorbent flooring materials are affected;
  • **Class 4,** specialty drying of hardwood, concrete, stucco, plaster, masonry, saturated ground soil.

 Three interior rooms so far, has ceilings/walls that will require technicians to remove insulation from above the ceiling in attic to insure all water damaged materials are removed and then continue with normal removal and



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028 Fax. 404.393.1772

subsequent repairs. *Drying equipment will need to be placed in affected areas once coverings have been removed. rough framing will be semi-moisturized during the cleaning phase. This is due to liquid chemicals that will be utilized during the cleaning process.* Due to the proximity and or location to the severest roof damage, has sustained heavy moisture damage to the building materials present. It is recommended to fully de-construct bedroom 1 ceiling area. This should include removing complete ceiling covering, trim, switch covers, flooring, and 1/4 of the walls (that portion of the wall that faces upstairs hall bath) etc... This is necessary to access rough framing, wall studs and ceiling joists. These will need to be thoroughly dried and cleaned so an anti-microbial coating and or antimicrobial sanitizing agent can be effectively applied to these areas. This will in turn restore integrity to framing members by discouraging future molds wet rot. Also, minimizing microscopic bacterium build-up upon the wood, which eventually reduces it's integrity and becomes weaponized within an indoor environment when Heating and Air systems are utilized. These harmful contaminants began to grow approximately 24 hours after water intrusion events that involve surface coverings and framing materials. They are dangerous to humans, pets, etc...

The work area in most rooms is visually free of accumulated water however, water-affected materials (i.e. gypsum drywall, insulation, wood finish) remain in place at the time of the site assessment. Moisture content of representative building substrates indicate conditions that are considered to not elevated and are below background Temperature and relative humidity conditions taken were found to be within the levels established by the American Society of Heating Ventilation and Air Conditioning Engineers as acceptable at the time of the site assessment. No excessive construction/demolition dust or debris was observed within the work areas. Light residual water staining and fungal emergent growth was observed to drywall ceiling in the Kitchen/Laundry room/Bathroom and Bedroom locations.

*Based on the visual observations and description of water/moisture impact, It is concluded that the water and moisture-affected building materials previously identified within the property-*
        *would be recommended to be removed, cleaned and/or treated by proper means and methods. The assessed rooms: Foyer, Kitchen, Laundry room, Bathroom, and Bedrooms- 1-3 areas*
        *would have qualified under a Level 2.*
        *The Living room work area is qualified as a level 3. These levels are so under OSHA guidelines and a Category 3, Class 3 water-loss event as described in IICRC''s Standard and Reference Guide for Professional Water Damage Restoration S500.*

**Uncontrolled proliferation of water or secondary damages, may result in damage of construction materials or compromise the structural integrity of building materials or indoor**
        **air quality of the subject property so the water and fungal-affected materials would have been recommended to be properly addressed.**

**The following recommendations would be considered industry standard for a property experiencing adverse impact as observed and described:**

    \*IICRC guidelines recommend a contractor that is knowledgeable and trained in conducting the required work to perform all water and high moisture-related services. The selected contractor should use engineering controls (pre-cleaning, containment, air filtration devices, etc.) and appropriate personal protective equipment (PPE) while performing said services.
    \*IICRC guidelines recommend removal of furniture in all affected work areas (Ex. bedroom, kitchen, etc...).
    \*IICRC guidelines recommend repair and/or removal of water-affected materials of the subject property in accordance with IICRC Standard and Reference Guide for Professional Water Damage Restoration S500 for a Category 3, Class 3 water-loss event. This would include removal of water-affected/damaged gypsum drywall, insulation.
    \*IIRC guidelines recommend conducting Extensive and Heavy mitigation cleaning and/or treatment, as appropriate, to remaining gypsum drywall, finishes and wood framing substrates of all interior rooms affected- Foyer; Living room, Kitchen, Laundry room, Bathroom and Bedrooms- 1-3. Per Level 2-Level 3 Water damage mitigation, as described in Standard and Reference Guide for Professional Water Damage Restoration S500 for a Category 3, Class 3 water-loss event. This would include removal of water-affected/damaged gypsum drywall, insulation, flooring, etc...
    \*IICRC guidelines recommend utilizing appropriately sized, three-staged HEPA air scrubbers during the de-construction, Water Mitigation and cleaning phase.
    \*IICRC guidelines recommend thorough general cleaning during the subsequent reconstruction phases.
    As a general recommendation, IICRC guidelines recommend maintaining: Indoor relative humidity levels in accordance



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

with guidelines established by the American Society of Heating Ventilation and Air Conditioning Engineers (ASHRAE). Those guidelines suggest maintaining indoor relative humidity levels between 30-60%RH. Maintaining indoor relative humidity at these levels will generally not promote bacterial growth similar to that which is has been observed within the property, and is a staple element, once a property has been exposed to direct rain water or even clean water that sits on Indoor building materials unaddressed, for more than 24 hours.

### Personnel:

Individuals trained in the handling of restorative drying/water mitigation/ WRT-ASD familiarity.

Provide right-to-know training on exposure to the chemicals used and the health effects of exposure to the fungal organisms.

Personnel holds daily safety meeting in the morning during remediation work.

Personnel spend no more than 1 and ½ hours in Tyvek suits. Hydration is provided.

### PPE (Personal Protection Equipment) requirements:

Full faced negative pressure respirators (North 7600 series or equivalent) with CD/CL/HC/HF/OV/SD/P100 cartridges. The cartridge protects against chlorine dioxide, chlorine, hydrogen chloride hydrogen fluoride, organic vapor, sulfur dioxide and provides a HEPA filter to protect against particles.

Disposable Tyvek coveralls or equivalent covering both the head and the shoes.

Gloves: Neoprene, rubber, leather or cotton depending upon the material to be removed. Leather is recommended when sharp material is expected to be encountered during the demolition.

Shoes: OSHA/ANSI approved steel toed shoes are required on removal work sites.

Tools: Pliers or cutters to break up metal mesh in plaster walls. These and other tools are used to reduce skin contact with sharp objects.

#### Prior to the Start of Mitigation/Restoration:

Submit all Pre-Approval Items (Health and Safety Plan, Environmental Protection Plan, Work Plan, MSDS for any chemicals used).

Obtain all necessary permits.

Establish Controlled Access Work Area.

All **appliances and furniture** should be removed, cleaned and stored. If not stored, reset after mitigation.

Turn off HVAC system and seal openings.



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### SHARRONA_CURNELL-1

#### Pack-Out

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 1. Contents Evaluation and/or Supervisor/Admin - per hour | 8.00 HR | | 0.00 | 55.08 | 0.00 | 0.00 | 440.64 |
| 2. Cargo van and equipment - per day | 1.00 EA | | 0.00 | 334.56 | 0.00 | 0.00 | 334.56 |
| 3. On-Site Inventory, Packing, Boxing, Moving chrg - per hour (6 technicians) | 49.00 HR | | 0.00 | 48.96 | 0.00 | 0.00 | 2,399.04 |
| 4. Provide box & tape - medium size | 20.00 EA | | 0.00 | 4.21 | 5.29 | 0.00 | 89.49 |
| 5. Bubble Wrap - Add-on cost for fragile items | 350.00 LF | | 0.00 | 0.23 | 7.25 | 0.00 | 87.75 |
| 6. Provide stretch film/wrap | 3.00 RL | | 0.00 | 27.23 | 7.35 | 0.00 | 89.04 |
| 7. Provide furniture heavyweight blanket/pad | 9.00 EA | | 0.00 | 17.83 | 13.75 | 0.00 | 174.22 |
| Totals: Pack-Out | | | | | 33.64 | 0.00 | 3,614.74 |

#### Storage-Off site

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 8. Off-site storage & insur. - climate controlled - per month | 200.00 SF | | 0.00 | 2.00 | 0.00 | 80.00 | 480.00 |

Price includes one month of storage fees. It is the hope of LLoyds, that repairs can be finished in less than 30 days. However, delays for materials and other unforseen challenges do often occur on job sites. If the repairs are not completed in the time frame, an additional month's charge for storage will be on final rebuild invoice.  This charge includes leather sofas, big screen tvs, beds, toys, etc....

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Storage-Off site | | | | | 0.00 | 80.00 | 480.00 |

#### General Conditions-Mitigation

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 9. Tarp - all-purpose poly - per sq ft (lab/mat) - after hrs | 192.00 SF | | 0.00 | 3.00 | 4.84 | 0.00 | 580.84 |
| Elevated cost due to steep pitch of roof. | | | | | | | |
| 10. Cleaning - Supervisory/Administrative - per hour | 8.00 HR | | 0.00 | 65.98 | 0.00 | 0.00 | 527.84 |
| 11. Thermal imaging | 1.00 EA | | 0.00 | 231.04 | 0.00 | 0.00 | 231.04 |



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### CONTINUED – General Conditions-Mitigation

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Using infrared thermography to address, assess and mitigate water damage claims is one of the most effective ways to minimize costs, maximize dry-down effectiveness and provide thorough documentation of the damage caused by water loss. The use of thermal imaging devices can save many hours of labor and help to allocate drying equipment more effectively, resulting in cost saving.. It is also the most effective and efficient way to mitigate water damage of commercial/residential buildings. | | | | | | | |
| 12. Scaffolding-Bakers for 7 day weekly rental | 1.00 EA | | 0.00 | 186.09 | 0.00 | 0.00 | 186.09 |
| 13. Scaffolding Setup & Take down - per hour | 6.00 HR | | 0.00 | 36.82 | 0.00 | 0.00 | 220.92 |
| 14. Power distribution box (per week) | 1.00 WK | | 0.00 | 246.73 | 0.00 | 0.00 | 246.73 |
| Alternative power utilized to keep equipment running safely and efficiently without tripping breakers. Furthermore, preventing extended drying time and tripping of 15 amp breakers/circuits. | | | | | | | |
| 15. General Laborer - per hour | 6.00 HR | | 0.00 | 38.49 | 0.00 | 0.00 | 230.94 |
| Additional labor to cart debris downstairs and out to risk front, where job site receptacle is located. | | | | | | | |
| 16. Add for personal protective equipment (hazardous cleanup) | 6.00 EA | | 0.00 | 43.91 | 8.23 | 0.00 | 271.69 |
| 6 sets of PPE costs were remarkably elevated due to a shortage caused by covid 19 outbreak. | | | | | | | |
| 17. Equipment setup, take down, and monitoring (hourly charge) | 23.00 HR | | 0.00 | 50.20 | 0.00 | 0.00 | 1,154.60 |
| 18. Equipment decontamination charge - per piece of equipment | 28.00 EA | | 0.00 | 41.78 | 10.36 | 0.00 | 1,180.20 |
| Charge is for decontaminating all equipment used on this claim for the purposes of structural drying (dehus/air movers). | | | | | | | |
| Totals: General Conditions-Mitigation | | | | | 23.43 | 0.00 | 4,830.89 |

### Mitigation Upper Level

### Upper Level

| Stairs | | | Height: Sloped |
|---|---|---|---|



| 214.78 SF Walls | 48.26 SF Ceiling |
|---|---|
| 263.04 SF Walls & Ceiling | 68.63 SF Floor |
| 7.63 SY Flooring | 31.67 LF Floor Perimeter |
| 32.37 LF Ceil. Perimeter | |

| Missing Wall | 3' X 8' | Opens into Exterior |
|---|---|---|
| Missing Wall | 3' X 8' | Opens into HALLWAY1 |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 19. Floor protection - plastic and tape - 10 mil | 68.63 SF | | 0.00 | 0.30 | 0.68 | 0.00 | 21.27 |



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

**CONTINUED - Stairs**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 20.  Clean and deodorize carpet | 68.63 SF | | 0.00 | 2.03 | 0.06 | 0.00 | 139.38 |
| **Air Decontamination Equipment** | | | | | | | |
| 21.  Deodorize building - Hot thermal fog | 332.86 CF | | 0.00 | 0.06 | 0.00 | 0.00 | 19.97 |
| Totals:  Stairs | | | | | 0.74 | 0.00 | 180.62 |



| Hallway | | | | | | | Height: 8' |
|---|---|---|---|---|---|---|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 218.67 SF Walls | | | | 37.61 SF Ceiling | | | |
| 256.27 SF Walls & Ceiling | | | | 37.61 SF Floor | | | |
| 4.18 SY Flooring | | | | 27.33 LF Floor Perimeter | | | |
| 27.33 LF Ceil. Perimeter | | | | | | | |

| Missing Wall | 3' X 8' | | | Opens into STAIRS1 | | | |
|---|---|---|---|---|---|---|---|

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 22.  Floor protection - plastic and tape - 10 mil | 37.61 SF | | 0.00 | 0.30 | 0.37 | 0.00 | 11.65 |
| 23.  Clean and deodorize carpet | 37.61 SF | | 0.00 | 2.03 | 0.03 | 0.00 | 76.38 |
| **Air Decontamination Equipment** | | | | | | | |
| 24.  Deodorize building - Hot thermal fog | 300.86 CF | | 0.00 | 0.06 | 0.00 | 0.00 | 18.05 |
| Totals:  Hallway | | | | | 0.40 | 0.00 | 106.08 |



| Bedroom 1 | | | | | | | Height: 8' |
|---|---|---|---|---|---|---|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 400.00 SF Walls | | | | 156.14 SF Ceiling | | | |
| 556.14 SF Walls & Ceiling | | | | 156.14 SF Floor | | | |
| 17.35 SY Flooring | | | | 50.00 LF Floor Perimeter | | | |
| 50.00 LF Ceil. Perimeter | | | | | | | |



### LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

**CONTINUED – Bedroom 1**



**Subroom:  Bdrm 1 Closet 2 (2)**                                        Height: 8'

| | |
|---|---|
| 108.00 SF Walls | 11.31 SF Ceiling |
| 119.31 SF Walls & Ceiling | 11.31 SF Floor |
| 1.26 SY Flooring | 13.50 LF Floor Perimeter |
| 13.50 LF Ceil. Perimeter | |



**Subroom:  Bdrm 1 closet (1)**                                        Height: 8'

| | |
|---|---|
| 108.00 SF Walls | 11.31 SF Ceiling |
| 119.31 SF Walls & Ceiling | 11.31 SF Floor |
| 1.26 SY Flooring | 13.50 LF Floor Perimeter |
| 13.50 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 25.  Plastic bag - used for disposal of water damaged items | 12.00 EA | | 0.00 | 3.05 | 3.29 | 0.00 | 39.89 |
| 26.  Floor protection - plastic and tape - 10 mil | 178.75 SF | | 0.00 | 0.30 | 1.77 | 0.00 | 55.40 |
| Mitigation/ Tear out/Removal | | | | | | | |
| 27.  Remove Light fixture | 1.00 EA | | 8.18 | 0.00 | 0.00 | 0.00 | 8.18 |
| 28.  Remove Heat/AC register - Mechanically attached | 1.00 EA | | 2.60 | 0.00 | 0.00 | 0.00 | 2.60 |
| 29.  Remove Outlet or switch cover | 2.00 EA | | 0.61 | 0.00 | 0.00 | 0.00 | 1.22 |
| 30.  Remove Window blind - PVC - 1" - 7.1 to 14 SF | 1.00 EA | | 10.24 | 0.00 | 0.00 | 0.00 | 10.24 |
| 31.  Tear out wet drywall, cleanup, bag for disposal | 178.75 SF | | 3.11 | 0.00 | 2.57 | 0.00 | 558.48 |
| 32.  Tear out and bag wet insulation | 178.75 SF | | 3.11 | 0.00 | 0.97 | 0.00 | 556.88 |
| To tear out and bag cellulose insulation from attic above, damaged by water from compromised roof. | | | | | | | |
| 33.  Tear out wet drywall (wall), cleanup, bag, per LF - to 8" - Cat 3 | 34.00 LF | | 4.45 | 0.00 | 0.15 | 0.00 | 151.45 |
| 34.  Tear out baseboard and bag for disposal - up to Cat 3 | 13.00 PL | | 0.81 | 0.00 | 0.20 | 0.00 | 10.73 |
| 35.  Tear out wet carpet pad and bag for disposal | 178.75 SF | | 0.52 | 0.00 | 0.97 | 0.00 | 93.92 |
| 36.  Tear out wet non-salvageable carpet, cut & bag for disp. | 178.75 SF | | 0.56 | 0.00 | 0.97 | 0.00 | 101.07 |
| Cleaning | | | | | | | |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

## CONTINUED - Bedroom 1

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 37. Apply anti-microbial agent to more than the ceiling | 973.50 SF | | 0.00 | 1.02 | 2.63 | 0.00 | 995.60 |

SF quantities account for agent used on finished surfaces excluding rough framing that was sealed with anitimicrobial coating according IICRC guidelines.

Structural Drying

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 38. Air mover (per 24 hour period) - No monitoring | 40.00 EA | | 0.00 | 31.89 | 0.00 | 0.00 | 1,275.60 |

Eight air movers for five days of drying time.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39. Dehumidifier (per 24 hour period) - Large - No monitoring | 5.00 EA | | 0.00 | 101.50 | 0.00 | 0.00 | 507.50 |

One Dehu for 5 days of drying time.

**Air Decontamination Equipment**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 40. Deodorize building - Hot thermal fog | 1,430.00 CF | | 0.00 | 0.06 | 0.00 | 0.00 | 85.80 |

| Totals: Bedroom 1 | | | | | 13.52 | 0.00 | 4,454.56 |
|---|---|---|---|---|---|---|---|



**Bedroom 2**          **Height: 8'**

| | |
|---|---|
| 430.67 SF Walls | 160.83 SF Ceiling |
| 591.50 SF Walls & Ceiling | 160.83 SF Floor |
| 17.87 SY Flooring | 53.83 LF Floor Perimeter |
| 53.83 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 41. Plastic bag - used for disposal of water damaged items | 6.00 EA | | 0.00 | 3.05 | 1.65 | 0.00 | 19.95 |
| 42. Floor protection - plastic and tape - 10 mil | 160.83 SF | | 0.00 | 0.30 | 1.59 | 0.00 | 49.84 |

Mitigation/ Tear out/Removal

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 43. Remove Window blind - PVC - 1" - 7.1 to 14 SF | 1.00 EA | | 10.24 | 0.00 | 0.00 | 0.00 | 10.24 |
| 44. Tear out wet drywall, cleanup, bag for disposal | 48.25 SF | | 3.11 | 0.00 | 0.69 | 0.00 | 150.75 |
| 45. Tear out and bag wet insulation | 48.25 SF | | 3.11 | 0.00 | 0.26 | 0.00 | 150.32 |

To tear out and bag cellulose insulation from attic above, damaged by water from compromised roof.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 46. Tear out wet drywall (wall), cleanup, bag, per LF - to 4" - Cat 3 | 20.00 LF | | 4.45 | 0.00 | 0.09 | 0.00 | 89.09 |

The section of drywall that is wet, touches the ceiling. This section will be removed.

SHARRONA_CURNELL-1                                       11/3/2022          Page: 9



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### CONTINUED – Bedroom 2

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 47. Tear out baseboard and bag for disposal - up to Cat 3 | 6.00 LF | | 0.81 | 0.00 | 0.09 | 0.00 | 4.95 |

Cleaning

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48. Apply anti-microbial agent to more than the ceiling | 752.33 SF | | 0.00 | 1.02 | 2.03 | 0.00 | 769.41 |

SF quantities account for agent used on finished surfaces excluding rough framing that was sealed with anitimicrobial coating according IICRC guidelines.

Structural Drying

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 49. Air mover (per 24 hour period) - No monitoring | 25.00 EA | | 0.00 | 31.89 | 0.00 | 0.00 | 797.25 |

Five air movers for five days of drying time.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 50. Dehumidifier (per 24 hour period) - Large - No monitoring | 5.00 EA | | 0.00 | 101.50 | 0.00 | 0.00 | 507.50 |

One Dehu for 5 days of drying time.

**Air Decontamination Equipment**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51. Deodorize building - Hot thermal fog | 1,286.67 CF | | 0.00 | 0.06 | 0.00 | 0.00 | 77.20 |
| 52. Clean and deodorize carpet | 160.83 SF | | 0.00 | 2.03 | 0.14 | 0.00 | 326.62 |

| Totals: Bedroom 2 | | | | | 6.54 | 0.00 | 2,953.12 |
|---|---|---|---|---|---|---|---|



**Hall Bath**                                                                    **Height: 8'**

173.33 SF Walls                 29.17 SF Ceiling
202.50 SF Walls & Ceiling        29.17 SF Floor
3.24 SY Flooring                21.67 LF Floor Perimeter
21.67 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 53. Cleaning - Supervisory/Administrative - per hour | 3.00 HR | | 0.00 | 65.98 | 0.00 | 0.00 | 197.94 |
| 54. Plastic bag - used for disposal of water damaged items | 12.00 EA | | 0.00 | 3.05 | 3.29 | 0.00 | 39.89 |

Mitigation/ Tear out/Removal

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 55. Floor protection - cloth - skid resistant, breathable | 29.17 SF | | 1.06 | 0.00 | 1.37 | 0.00 | 32.29 |
| 56. Remove Heat/AC register - Mechanically attached | 1.00 EA | | 2.60 | 0.00 | 0.00 | 0.00 | 2.60 |
| 57. Remove Mirror - 1/4" plate glass | 8.00 SF | | 0.29 | 0.00 | 0.00 | 0.00 | 2.32 |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

**CONTINUED - Hall Bath**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 58.  Remove Light bar - 3 lights | 1.00 EA | | 20.71 | 0.00 | 0.00 | 0.00 | 20.71 |
| 59.  Remove Bathroom ventilation fan, light, and heater | 1.00 EA | | 18.23 | 0.00 | 0.00 | 0.00 | 18.23 |
| 60.  Remove Ground fault interrupter (GFI) outlet | 1.00 EA | | 5.21 | 0.00 | 0.00 | 0.00 | 5.21 |
| 61.  Remove Outlet | 2.00 EA | | 5.21 | 0.00 | 0.00 | 0.00 | 10.42 |
| 62.  Remove Switch | 1.00 EA | | 5.21 | 0.00 | 0.00 | 0.00 | 5.21 |
| 63.  Tear out trim and bag for disposal - up to Cat 3 - aft hrs | 12.00 LF | | 1.02 | 0.00 | 0.17 | 0.00 | 12.41 |
| 64.  Tear out wet ceiling drywall, cleanup, bag for disposal | 29.17 SF | | 3.11 | 0.00 | 0.42 | 0.00 | 91.14 |
| 65.  Tear out and bag wet insulation | 29.17 SF | | 3.11 | 0.00 | 0.16 | 0.00 | 90.88 |

To tear out and bag cellulose insulation from attic above, damaged by water from compromised roof.

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 66.  Tear out wet drywall, cleanup, bag for disposal | 173.33 SF | | 2.00 | 0.00 | 2.50 | 0.00 | 349.16 |
| 67.  Remove Sink - single | 1.00 EA | | 19.42 | 0.00 | 0.00 | 0.00 | 19.42 |
| 68.  Tear out cabinetry - vanity | 3.00 LF | | 10.35 | 0.00 | 0.00 | 0.00 | 31.05 |
| 69.  Remove P-trap assembly - ABS (plastic) | 1.00 EA | | 7.77 | 0.00 | 0.00 | 0.00 | 7.77 |
| 70.  Remove Angle stop valve | 1.00 EA | | 5.18 | 0.00 | 0.00 | 0.00 | 5.18 |
| 71.  Remove Plumbing fixture supply line | 1.00 EA | | 5.18 | 0.00 | 0.00 | 0.00 | 5.18 |
| 72.  Remove Shower curtain rod | 1.00 EA | | 6.49 | 0.00 | 0.00 | 0.00 | 6.49 |
| 73.  Remove Tub/shower faucet - High grade | 1.00 EA | | 25.89 | 0.00 | 0.00 | 0.00 | 25.89 |
| 74.  Remove Fiberglass tub & shower combination | 1.00 EA | | 345.00 | 0.00 | 0.00 | 0.00 | 345.00 |
| 75.  Detach & Reset Toilet | 1.00 EA | 245.56 | 0.00 | 0.00 | 0.50 | 0.00 | 246.06 |
| 76.  Remove Vinyl floor covering (sheet goods) - Standard grade | 29.17 SF | | 0.78 | 0.00 | 0.00 | 0.00 | 22.75 |

Cleaning

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 77.  Apply anti-microbial agent to more than the ceiling | 231.67 SF | | 0.00 | 1.02 | 0.63 | 0.00 | 236.93 |

SF quantities account for agent used on finished surfaces excluding rough framing that was sealed with anitimicrobial coating according IICRC guidelines.

**Equipment**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 78.  Deodorize building - Ozone treatment | 233.33 CF | | 0.00 | 0.20 | 0.00 | 0.00 | 46.67 |
| 79.  Equipment decontamination charge - HVY, per piece of equip | 1.00 EA | | 0.00 | 79.58 | 0.39 | 0.00 | 79.97 |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### CONTINUED – Hall Bath

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Structural Drying | | | | | | | |
| 80.  Air mover (per 24 hour period) - No monitoring | 16.00 EA | | 0.00 | 31.89 | 0.00 | 0.00 | 510.24 |
| Four air movers for four days of drying time. | | | | | | | |
| 81.  Dehumidifier (per 24 hour period) - Large - No monitoring | 5.00 EA | | 0.00 | 75.66 | 0.00 | 0.00 | 378.30 |
| One Dehu for 3 days of drying time. | | | | | | | |
| **Air Decontamination Equipment** | | | | | | | |
| 82.  Deodorize building - Hot thermal fog | 233.33 CF | | 0.00 | 0.06 | 0.00 | 0.00 | 14.00 |
| Totals:  Hall Bath | | | | | 9.43 | 0.00 | 2,859.31 |



**Upstrs Hall closet**                                                                 Height: 8'

| 65.87 SF Walls | 4.19 SF Ceiling |
|---|---|
| 70.06 SF Walls & Ceiling | 4.19 SF Floor |
| 0.47 SY Flooring | 8.23 LF Floor Perimeter |
| 8.23 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 83.  Floor protection - plastic and tape - 10 mil | 4.19 SF | | 0.00 | 0.30 | 0.04 | 0.00 | 1.30 |
| 84.  Clean and deodorize carpet | 4.19 SF | | 0.00 | 2.03 | 0.00 | 0.00 | 8.51 |
| **Air Decontamination Equipment** | | | | | | | |
| 85.  Deodorize building - Hot thermal fog | 33.49 CF | | 0.00 | 0.06 | 0.00 | 0.00 | 2.01 |
| Totals:  Upstrs Hall closet | | | | | 0.04 | 0.00 | 11.82 |
| Total: Upper Level | | | | | 30.67 | 0.00 | 10,565.51 |
| Total: Mitigation Upper Level | | | | | 30.67 | 0.00 | 10,565.51 |

### Mitigation-Attic

### Attic-partial-Mit



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772



| Attic-partial | | | | | | | Height: 8' |
|---|---|---|---|---|---|---|---|
| 573.33  SF Walls | | | | | 259.02  SF Ceiling | | |
| 832.35  SF Walls & Ceiling | | | | | 259.02  SF Floor | | |
| 28.78  SY Flooring | | | | | 71.67  LF Floor Perimeter | | |
| 71.67  LF Ceil. Perimeter | | | | | | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 86.  Plastic bag - used for disposal of water damaged items | 18.00 EA | | 0.00 | 3.13 | 5.07 | 0.00 | 61.41 |
| Mitigation/ Tear out/Removal | | | | | | | |
| 87.  Remove Blown-in cellulose insulation - 12" depth - R44 | 259.02 SF | | 3.08 | 0.00 | 0.00 | 0.00 | 797.78 |
| Cellulose insulation was damaged by standing water once roofing system was compromised. | | | | | | | |
| Cleaning | | | | | | | |
| 88.  Apply anti-microbial agent to more than the ceiling | 1,091.38 SF | | 0.00 | 1.05 | 2.95 | 0.00 | 1,148.90 |
| SF quantities account for agent used on finished surfaces excluding rough framing that was sealed with anitimicrobial coating according IICRC guidelines. | | | | | | | |
| Structural Drying | | | | | | | |
| 89.  Air mover (per 24 hour period) - No monitoring | 35.00 EA | | 0.00 | 32.69 | 0.00 | 0.00 | 1,144.15 |
| Seven air movers for five days of drying time. | | | | | | | |
| 90.  Dehumidifier (per 24 hour period) - Large - No monitoring | 5.00 EA | | 0.00 | 104.04 | 0.00 | 0.00 | 520.20 |
| One Dehu for 5 days of drying time. | | | | | | | |
| **Air Decontamination Equipment** | | | | | | | |
| 91.  Deodorize building - Hot thermal fog | 2,072.17 CF | | 0.00 | 0.06 | 0.00 | 0.00 | 124.33 |
| Totals:  Attic-partial | | | | | 8.02 | 0.00 | 3,796.77 |
| Total: Attic-partial-Mit | | | | | **8.02** | **0.00** | **3,796.77** |

| Debris Removal- Mitigation | | | | | | | |
|---|---|---|---|---|---|---|---|
| **DESCRIPTION** | **QTY** | **RESET** | **REMOVE** | **REPLACE** | **TAX** | **O&P** | **TOTAL** |
| 92.  Dumpster load - Approx. 12 yards, 1-3 tons of debris | 1.00 EA | | 528.00 | 0.00 | 0.00 | 0.00 | 528.00 |
| Totals:  Debris Removal- Mitigation | | | | | 0.00 | 0.00 | 528.00 |

SHARRONA_CURNELL-1

11/3/2022          Page: 13



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028 Fax. 404.393.1772

| | | | |
|---|---|---|---|
| Total: Mitigation-Attic | **8.02** | **0.00** | **4,324.77** |

### General Conditions-Rebuild

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 93. Residential Supervision / Project Management - per hour | 16.00 HR | | 0.00 | 70.27 | 0.00 | 224.86 | 1,349.18 |
| 94. General Laborer - per hour | 6.00 HR | | 0.00 | 39.53 | 0.00 | 47.44 | 284.62 |
| Additional labor to cart debris downstairs and out to risk front, where job site receptacle is located. | | | | | | | |
| 95. Power distribution box (per week) | 1.00 WK | | 0.00 | 253.39 | 0.00 | 50.68 | 304.07 |
| Alternative power utilized to keep equipment running safely and efficiently without tripping breakers. Furthermore, preventing extended drying time and tripping of 15 amp breakers/circuits. | | | | | | | |
| 96. Scaffolding-Bakers for 7 day weekly rental | 1.00 EA | | 0.00 | 191.11 | 0.00 | 38.22 | 229.33 |
| 97. Scaffolding Setup & Take down - per hour | 24.00 HR | | 0.00 | 37.81 | 0.00 | 181.48 | 1,088.92 |
| 98. Neg. air fan/Air scrub.-Large (per 24 hr period)-No monit. | 7.00 DA | | 0.00 | 132.43 | 0.00 | 185.40 | 1,112.41 |
| Per Georgia/OSHA standards, air must be filtered when sanding, grinding, cutting, etc... as to reduce the amount of fine dust particles being inhaled by workers and reduce particulates being introduced into the HVAC returns. Occupants present in structure, include children which are allergy sensitive. An Air filtration device will be utilized only the first 7 days of the project. | | | | | | | |
| 99. Add for HEPA filter (for negative air exhaust fan) | 1.00 EA | | 0.00 | 205.46 | 15.75 | 44.26 | 265.47 |
| 100. Final cleaning - construction - Residential | 700.00 SF | | 0.00 | 0.24 | 0.00 | 33.60 | 201.60 |
| Totals: General Conditions-Rebuild | | | | | 15.75 | 805.94 | 4,835.60 |

### Fencing

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 101. R&R Wood fence 5'- 6' high - cedar or equal | 10.00 LF | | 6.51 | 64.00 | 19.61 | 144.94 | 869.65 |
| High winds from storm damaged fencing. | | | | | | | |
| 102. Seal the surface area w/PVA primer - one coat | 60.00 SF | | 0.00 | 0.61 | 0.32 | 7.38 | 44.30 |
| 103. Paint the surface area - two coats | 60.00 SF | | 0.00 | 2.00 | 1.46 | 24.30 | 145.76 |
| Totals: Fencing | | | | | 21.39 | 176.62 | 1,059.71 |
| Total: Fencing | | | | | **21.39** | **176.62** | **1,059.71** |

SHARRONA_CURNELL-1



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### Roof

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 104.  Tear off, haul and dispose of comp. shingles - 3 tab | 13.70 SQ | | 66.76 | 0.00 | 0.00 | 182.92 | 1,097.53 |
| 105.  Remove Add charge for removing sheathing steep roof - 7/12 - 9/12 slope | 124.00 SF | | 2.05 | 0.00 | 0.00 | 50.84 | 305.04 |
| 106.  Remove Additional charge for high roof (2 stories or greater) | 13.70 SQ | | 0.00 | 27.73 | 0.00 | 75.98 | 455.88 |
| 107.  Remove Additional charge for steep roof - 7/12 to 9/12 slope | 7.27 SQ | | 0.00 | 43.41 | 0.00 | 63.12 | 378.71 |
| 108.  Remove Remove Additional charge for steep roof - 10/12 - 12/12 slope | 6.01 SQ | | 27.73 | 0.00 | 0.00 | 33.34 | 200.00 |
| 109.  3 tab - 25 yr. - comp. shingle roofing - w/out felt | 15.33 SQ | | 0.00 | 256.75 | 130.00 | 813.20 | 4,879.18 |
| 110.  Asphalt starter - universal starter course | 126.00 LF | | 0.00 | 3.08 | 6.69 | 78.96 | 473.73 |
| Used at eaves. | | | | | | | |
| 111.  Roofer - per hour | 2.00 HR | | 0.00 | 149.94 | 0.00 | 59.98 | 359.86 |
| Additional labor charge to replace flashing around chimney. | | | | | | | |
| 112.  R&R Chimney flashing - average (32" x 36") | 1.00 EA | | 18.93 | 436.48 | 7.18 | 92.52 | 555.11 |
| 113.  Sheathing - plywood - 1/2" - treated | 124.00 SF | | 0.00 | 6.47 | 32.70 | 167.00 | 1,001.98 |
| Sheathing was damaged due to wind created opening. | | | | | | | |
| 114.  Roofing felt - 15 lb. | 13.67 SQ | | 0.00 | 35.95 | 7.09 | 99.70 | 598.23 |
| 115.  R&R Valley metal | 70.22 LF | | 0.63 | 5.81 | 12.83 | 93.00 | 558.05 |
| 116.  R&R Drip edge/gutter apron | 231.00 LF | | 0.34 | 2.63 | 22.66 | 141.74 | 850.47 |
| 117.  R&R Flashing - pipe jack | 3.00 EA | | 7.47 | 46.67 | 3.53 | 33.18 | 199.13 |
| 118.  R&R Roof vent - turtle type - Metal | 6.00 EA | | 9.06 | 86.27 | 11.66 | 116.74 | 700.38 |
| 119.  Remove Additional charge for high roof (2 stories or greater) | 15.33 SQ | | 20.54 | 0.00 | 0.00 | 62.98 | 377.86 |
| Charge includes industry standard charges, quoted to insured by roofing contractor's company. | | | | | | | |

| Totals: Roof | | | | | 234.34 | 2,165.20 | 12,991.14 |
|---|---|---|---|---|---|---|---|

**Rebuild-Upper Level**

**Rebuild-Upper Level**



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772



| Stairs | | | | | | Height: Sloped |
|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| 214.78 SF Walls | | 48.26 SF Ceiling |
| 263.04 SF Walls & Ceiling | | 68.63 SF Floor |
| 7.63 SY Flooring | | 31.67 LF Floor Perimeter |
| 32.37 LF Ceil. Perimeter | | |

| Missing Wall | 3' X 8' | Opens into Exterior |
|---|---|---|
| Missing Wall | 3' X 8' | Opens into HALLWAY |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 120.  Floor protection - plastic and tape - 10 mil | 68.63 SF | | 0.00 | 0.31 | 0.68 | 4.40 | 26.36 |
| 121.  Clean and deodorize carpet | 68.63 SF | | 0.00 | 2.08 | 0.06 | 28.58 | 171.39 |

| Totals: Stairs | | | | | 0.74 | 32.98 | 197.75 |
|---|---|---|---|---|---|---|---|



| Hallway | | | | | | Height: 8' |
|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| 218.67 SF Walls | | 37.61 SF Ceiling |
| 256.27 SF Walls & Ceiling | | 37.61 SF Floor |
| 4.18 SY Flooring | | 27.33 LF Floor Perimeter |
| 27.33 LF Ceil. Perimeter | | |

| Missing Wall | 3' X 8' | Opens into STAIRS |
|---|---|---|

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 122.  Floor protection - plastic and tape - 10 mil | 37.61 SF | | 0.00 | 0.31 | 0.37 | 2.42 | 14.45 |
| 123.  Clean and deodorize carpet | 37.61 SF | | 0.00 | 2.08 | 0.03 | 15.64 | 93.90 |

| Totals: Hallway | | | | | 0.40 | 18.06 | 108.35 |
|---|---|---|---|---|---|---|---|



| Bedroom 1 | | | | | | Height: 8' |
|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| 400.00 SF Walls | | 156.14 SF Ceiling |
| 556.14 SF Walls & Ceiling | | 156.14 SF Floor |
| 17.35 SY Flooring | | 50.00 LF Floor Perimeter |
| 50.00 LF Ceil. Perimeter | | |



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### CONTINUED - Bedroom 1



| Subroom: Bdrm 1 Closet 2 (2) | | Height: 8' |
|---|---|---|
| 108.00 SF Walls | 11.31 SF Ceiling | |
| 119.31 SF Walls & Ceiling | 11.31 SF Floor | |
| 1.26 SY Flooring | 13.50 LF Floor Perimeter | |
| 13.50 LF Ceil. Perimeter | | |



| Subroom: Bdrm 1 closet (1) | | Height: 8' |
|---|---|---|
| 108.00 SF Walls | 11.31 SF Ceiling | |
| 119.31 SF Walls & Ceiling | 11.31 SF Floor | |
| 1.26 SY Flooring | 13.50 LF Floor Perimeter | |
| 13.50 LF Ceil. Perimeter | | |

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| *Ceiling* | | | | | | | |
| 124.  Remove Light fixture | 1.00 EA | | 8.40 | 0.00 | 0.00 | 1.68 | 10.08 |
| 125.  Clean register - heat / AC | 1.00 EA | | 0.00 | 5.15 | 0.00 | 1.04 | 6.19 |
| 126.  Mask and cover register / air return | 1.00 EA | | 0.00 | 3.14 | 0.02 | 0.62 | 3.78 |
| 127.  Blown-in insulation - 12" depth - R30 | 178.75 SF | | 0.00 | 2.05 | 13.67 | 76.02 | 456.13 |
| 128.  5/8" acoustic drywall - hung, taped, ready for texture | 178.75 SF | | 0.00 | 6.16 | 48.74 | 229.96 | 1,379.80 |
| 129.  Seal the ceiling w/latex based stain blocker - one coat | 178.75 SF | | 0.00 | 1.03 | 1.13 | 37.04 | 222.28 |
| 130.  Acoustic ceiling (popcorn) texture | 178.75 SF | | 0.00 | 1.73 | 0.97 | 62.04 | 372.25 |
| *Walls* | | | | | | | |
| 131.  Detach & Reset Window blind - PVC - 1" - 7.1 to 14 SF | 2.00 EA | 30.40 | 0.00 | 0.00 | 0.00 | 12.16 | 72.96 |
| 132.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 30.31 | 0.79 | 12.28 | 73.69 |
| Mitigation company used window to exhaust contaminated air outside of risk (negative air/Engineering controls). | | | | | | | |
| 133.  R&R Outlet or switch cover | 2.00 EA | | 0.62 | 3.06 | 0.13 | 1.48 | 8.97 |
| 134.  Mask and prep for paint - plastic, paper, tape (per LF) | 77.00 LF | | 0.00 | 1.37 | 1.80 | 21.46 | 128.75 |
| 135.  1/2" drywall - hung, taped, floated, ready for paint | 613.00 SF | | 0.00 | 3.29 | 27.59 | 408.88 | 2,453.24 |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

**CONTINUED - Bedroom 1**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 136. Seal part of the walls w/PVA primer - one coat | 613.00 SF | | | 0.00 | 0.58 | 3.31 | 71.76 | 430.61 |
| 137. Paint the walls - two coats | 616.00 SF | | | 0.00 | 1.48 | 11.64 | 184.66 | 1,107.98 |
| *Floors* | | | | | | | | |
| 138. Mask or cover per square foot | 178.75 SF | | | 0.42 | 0.00 | 1.13 | 15.24 | 91.45 |
| 139. Baseboard - 3 1/4" | 77.00 LF | | | 0.00 | 3.11 | 8.04 | 49.50 | 297.01 |
| 140. Paint baseboard - two coats | 77.00 LF | | | 0.00 | 1.40 | 0.90 | 21.74 | 130.44 |
| 141. Carpet pad - Standard grade | 178.75 SF | | | 0.00 | 1.14 | 5.31 | 41.82 | 250.91 |
| 142. Carpet | 205.56 SF | | | 0.00 | 3.39 | 38.85 | 147.16 | 882.86 |

15 % waste added for Carpet - Standard grade.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: Bedroom 1 | | | | | 164.02 | 1,396.54 | 8,379.38 |



| Bedroom 2 | | | | | | Height: 8' |
|---|---|---|---|---|---|---|

430.67 SF Walls                160.83 SF Ceiling
591.50 SF Walls & Ceiling      160.83 SF Floor
17.87 SY Flooring              53.83 LF Floor Perimeter
53.83 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| *Ceiling* | | | | | | | |
| 143. Remove Light fixture | 1.00 EA | | | 8.40 | 0.00 | 0.00 | 1.68 | 10.08 |
| 144. Clean register - heat / AC | 1.00 EA | | | 0.00 | 5.15 | 0.00 | 1.04 | 6.19 |
| 145. Mask and cover register / air return | 1.00 EA | | | 0.00 | 3.14 | 0.02 | 0.62 | 3.78 |
| 146. Remove Tear off painted acoustic ceiling (popcorn) texture | 119.83 SF | | | 0.92 | 0.00 | 0.00 | 22.04 | 132.28 |
| 147. Blown-in insulation - 12" depth - R30 | 41.00 SF | | | 0.00 | 2.05 | 3.14 | 17.44 | 104.63 |
| 148. 5/8" acoustic drywall - hung, taped, ready for texture | 41.00 SF | | | 0.00 | 6.16 | 11.18 | 52.76 | 316.50 |
| 149. Seal the surface area w/latex based stain blocker - one coat | 41.00 SF | | | 0.00 | 1.03 | 0.26 | 8.50 | 50.99 |
| 150. Acoustic ceiling (popcorn) texture | 160.83 SF | | | 0.00 | 1.73 | 0.87 | 55.82 | 334.93 |
| *Walls* | | | | | | | |

SHARRONA_CURNELL-1                                      11/3/2022        Page: 18



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

**CONTINUED – Bedroom 2**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 151.  Detach & Reset Window blind – PVC – 1" - 7.1 to 14 SF | 2.00 EA | 30.40 | 0.00 | 0.00 | 0.00 | 12.16 | 72.96 |
| 152.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 30.31 | 0.79 | 12.28 | 73.69 |
| Mitigation company used window to exhaust contaminated air outside of risk (negative air/Engineering controls). | | | | | | | |
| 153.  Mask and prep for paint - plastic, paper, tape (per LF) | 53.83 LF | | 0.00 | 1.37 | 1.26 | 15.02 | 90.03 |
| 154.  1/2" drywall - hung, taped, floated, ready for paint | 41.00 SF | | 0.00 | 4.11 | 1.85 | 34.08 | 204.44 |
| 155.  Seal the surface area w/latex based stain blocker - one coat | 41.00 SF | | 0.00 | 1.03 | 0.26 | 8.50 | 50.99 |
| 156.  Seal the surface area w/PVA primer - one coat | 41.00 SF | | 0.00 | 0.58 | 0.22 | 4.80 | 28.80 |
| 157.  Paint the walls - two coats | 430.67 SF | | 0.00 | 1.48 | 8.14 | 129.10 | 774.63 |
| *Floors* | | | | | | | |
| 158.  Mask or cover per square foot | 160.83 SF | | 0.42 | 0.00 | 1.01 | 13.72 | 82.28 |
| 159.  Baseboard - 3 1/4" | 6.00 LF | | 0.00 | 3.11 | 0.63 | 3.86 | 23.15 |
| 160.  Paint baseboard - two coats | 53.83 LF | | 0.00 | 1.40 | 0.63 | 15.20 | 91.19 |
| 161.  Clean and deodorize carpet | 160.83 SF | | 0.00 | 2.08 | 0.14 | 66.92 | 401.59 |
| Totals:  Bedroom 2 | | | | | 30.40 | 475.54 | 2,853.13 |



**Hall Bath**                                                                 **Height: 8'**

173.33 SF Walls                        29.17 SF Ceiling
202.50 SF Walls & Ceiling              29.17 SF Floor
3.24 SY Flooring                       21.67 LF Floor Perimeter
21.67 LF Ceil. Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| *Ceiling* | | | | | | | |
| 162.  Heat/AC register - Mechanically attached | 1.00 EA | | 0.00 | 23.56 | 0.81 | 4.88 | 29.25 |
| 163.  Blown-in insulation - 12" depth - R30 | 29.17 SF | | 0.00 | 2.05 | 2.23 | 12.40 | 74.43 |
| 164.  5/8" acoustic drywall - hung, taped, ready for texture | 29.17 SF | | 0.00 | 6.16 | 7.96 | 37.54 | 225.19 |
| 165.  Seal the ceiling w/latex based stain blocker - one coat | 29.17 SF | | 0.00 | 1.03 | 0.18 | 6.06 | 36.29 |



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

**CONTINUED - Hall Bath**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 166.  Acoustic ceiling (popcorn) texture | 29.17 SF | | 0.00 | 1.73 | 0.16 | 10.14 | 60.76 |
| **_Walls_** | | | | | | | |
| 167.  Mirror - 1/4" plate glass | 8.00 SF | | 0.00 | 16.78 | 8.50 | 28.54 | 171.28 |
| 168.  Light bar - 3 lights | 1.00 EA | | 0.00 | 79.15 | 2.41 | 16.32 | 97.88 |
| 169.  Bathroom ventilation fan, light, and heater | 1.00 EA | | 0.00 | 262.52 | 16.65 | 55.84 | 335.01 |
| 170.  Ground fault interrupter (GFI) outlet | 1.00 EA | | 0.00 | 31.25 | 1.39 | 6.54 | 39.18 |
| 171.  Outlet | 2.00 EA | | 0.00 | 15.66 | 0.31 | 6.32 | 37.95 |
| 172.  Outlet or switch cover | 1.00 EA | | 0.00 | 3.06 | 0.07 | 0.64 | 3.77 |
| 173.  Switch | 1.00 EA | | 0.00 | 16.03 | 0.19 | 3.24 | 19.46 |
| 174.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | | 0.00 | 30.31 | 0.79 | 12.28 | 73.69 |
| Mitigation company used window to exhaust contaminated air outside of risk (negative air/Engineering controls). | | | | | | | |
| 175.  Mask and prep for paint - plastic, paper, tape (per LF) | 21.67 LF | | 0.00 | 1.37 | 0.51 | 6.04 | 36.24 |
| 176.  1/2" drywall - hung, taped, floated, ready for paint | 173.33 SF | | 0.00 | 3.29 | 7.80 | 115.62 | 693.68 |
| 177.  Seal the walls w/PVA primer - one coat | 173.33 SF | | 0.00 | 0.58 | 0.94 | 20.28 | 121.75 |
| 178.  Paint the walls - two coats | 173.33 SF | | 0.00 | 1.48 | 3.28 | 51.96 | 311.77 |
| 179.  Detach & Reset Sink - single | 1.00 EA | 169.21 | 0.00 | 0.00 | 0.04 | 33.84 | 203.09 |
| 180.  Vanity | 3.00 LF | | 0.00 | 222.86 | 46.11 | 142.94 | 857.63 |
| 181.  P-trap assembly - ABS (plastic) | 1.00 EA | | 0.00 | 68.39 | 0.62 | 13.80 | 82.81 |
| 182.  Shower curtain rod | 1.00 EA | | 0.00 | 29.28 | 1.48 | 6.16 | 36.92 |
| 183.  Tub/shower faucet - Standard grade | 1.00 EA | | 0.00 | 282.73 | 8.55 | 58.26 | 349.54 |
| 184.  Fiberglass tub & shower combination | 1.00 EA | | 0.00 | 1,515.85 | 52.12 | 313.60 | 1,881.57 |
| **_Floors_** | | | | | | | |
| 185.  Floor protection - cloth - skid resistant, breathable | 29.17 SF | | 1.09 | 0.00 | 1.37 | 6.64 | 39.81 |
| 186.  Remove Plumbing fixture supply line | 1.00 EA | | 5.32 | 0.00 | 0.00 | 1.06 | 6.38 |
| 187.  Angle stop valve | 1.00 EA | | 0.00 | 38.04 | 0.65 | 7.74 | 46.43 |
| 188.  Detach & Reset Toilet | 1.00 EA | 252.19 | 0.00 | 0.00 | 0.50 | 50.54 | 303.23 |
| 189.  Remove Vinyl floor covering (sheet goods) - Standard grade | 29.17 SF | | 0.80 | 0.00 | 0.00 | 4.66 | 28.00 |



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### CONTINUED - Hall Bath

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| Totals: Hall Bath | | | | | 165.62 | 1,033.88 | 6,202.99 |

**Upstrs Hall closet** — Height: 8'

65.87 SF Walls
70.06 SF Walls & Ceiling
0.47 SY Flooring
8.23 LF Ceil. Perimeter

4.19 SF Ceiling
4.19 SF Floor
8.23 LF Floor Perimeter

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 190.  Floor protection - plastic and tape - 10 mil | 4.19 SF | | 0.00 | 0.31 | 0.04 | 0.26 | 1.60 |
| 191.  Clean and deodorize carpet | 4.19 SF | | 0.00 | 2.08 | 0.00 | 1.74 | 10.46 |
| Totals:  Upstrs Hall closet | | | | | 0.04 | 2.00 | 12.06 |
| Total: Rebuild-Upper Level | | | | | 361.22 | 2,959.00 | 17,753.66 |
| Total: Rebuild-Upper Level | | | | | 361.22 | 2,959.00 | 17,753.66 |

**Debris Removal- Rebuild**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 192.  Dumpster load – Approx. 12 yards, 1-3 tons of debris | 1.00 EA | | 542.26 | 0.00 | 0.00 | 108.46 | 650.72 |
| Totals: Debris Removal- Rebuild | | | | | 0.00 | 108.46 | 650.72 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 193.  Heat, vent, & air cond. labor minimum | 1.00 EA | | 0.00 | 251.96 | 0.00 | 50.40 | 302.36 |
| 194.  Finish hardware labor minimum | 1.00 EA | | 0.00 | 116.81 | 0.00 | 23.36 | 140.17 |
| 195.  Finish carpentry labor minimum | 1.00 EA | | 0.00 | 39.01 | 0.00 | 7.80 | 46.81 |
| 196.  Carpet labor minimum | 1.00 EA | | 0.00 | 37.90 | 0.00 | 7.58 | 45.48 |
| 197.  Vinyl floor covering labor minimum | 1.00 EA | | 0.00 | 84.85 | 0.00 | 16.98 | 101.83 |

SHARRONA_CURNELL-1

11/3/2022      Page: 21



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

## CONTINUED - Labor Minimums Applied

| DESCRIPTION | QTY | RESET | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 198. Mirror/shower door labor minimum | 1.00 EA | | 0.00 | 96.62 | 0.00 | 19.32 | 115.94 |
| 199. Temporary repair services labor minimum | 1.00 EA | | 0.00 | 12.89 | 0.00 | 2.58 | 15.47 |
| 200. Trauma/crime scene labor minimum | 1.00 EA | | 0.00 | 148.08 | 0.00 | 29.62 | 177.70 |
| 201. Cabinetry labor minimum | 1.00 EA | | 0.00 | 65.78 | 0.00 | 13.16 | 78.94 |
| 202. Framing labor minimum | 1.00 EA | | 0.00 | 200.61 | 0.00 | 40.12 | 240.73 |
| Totals: Labor Minimums Applied | | | | | 0.00 | 210.92 | 1,265.43 |
| **Line Item Totals: SHARRONA_CURNELL-1** | | | | | **728.46** | **6,506.14** | **62,372.17** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 4,585.31 | SF Walls | 1,435.65 | SF Ceiling | 6,020.96 | SF Walls and Ceiling |
| 1,476.38 | SF Floor | 164.04 | SY Flooring | 582.80 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 584.22 | LF Ceil. Perimeter |
| 1,476.38 | Floor Area | 1,573.65 | Total Area | 3,945.07 | Interior Wall Area |
| 2,887.50 | Exterior Wall Area | 320.17 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 36,643.08 | 58.75% | 36,643.08 | 58.75% |
| Other Structures | 1,059.71 | 1.70% | 1,059.71 | 1.70% |
| Contents | 4,094.74 | 6.57% | 4,094.74 | 6.57% |
| Mitigation | 20,574.64 | 32.99% | 20,574.64 | 32.99% |
| Total | 62,372.17 | 100.00% | 62,372.17 | 100.00% |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 29,924.51 |
| Material Sales Tax | 611.31 |
| Subtotal | 30,535.82 |
| Overhead | 3,053.63 |
| Profit | 3,053.63 |
| **Replacement Cost Value** | **$36,643.08** |
| **Net Claim** | **$36,643.08** |

Kerry Ruff



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

## Summary for Other Structures

| | |
|---|---:|
| Line Item Total | 861.70 |
| Material Sales Tax | 21.39 |
| Subtotal | 883.09 |
| Overhead | 88.31 |
| Profit | 88.31 |
| **Replacement Cost Value** | **$1,059.71** |
| **Net Claim** | **$1,059.71** |

Kerry Ruff



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### Summary for Contents

| | |
|---|---|
| Line Item Total | 3,981.10 |
| Material Sales Tax | 33.64 |
| Subtotal | 4,014.74 |
| Overhead | 40.00 |
| Profit | 40.00 |
| **Replacement Cost Value** | **$4,094.74** |
| **Net Claim** | **$4,094.74** |

Kerry Ruff



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

## Summary for Mitigation

| | |
|---|---:|
| Line Item Total | 20,370.26 |
| Material Sales Tax | 62.12 |
| Subtotal | 20,432.38 |
| Overhead | 71.13 |
| Profit | 71.13 |
| **Replacement Cost Value** | **$20,574.64** |
| **Net Claim** | **$20,574.64** |

Kerry Ruff



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (9%) | Storage Rental Tax (9%) | Local Food Tax (5%) |
|---|---|---|---|---|---|
| Line Items | 3,253.07 | 3,253.07 | 728.46 | 0.00 | 0.00 |
| **Total** | **3,253.07** | **3,253.07** | **728.46** | **0.00** | **0.00** |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

## Recap by Room

**Estimate: SHARRONA_CURNELL-1**

| | | | |
|---|---|---|---|
| **Pack-Out** | | **3,581.10** | **6.49%** |
| Coverage: Contents | 100.00% = | 3,581.10 | |
| **Storage-Off site** | | **400.00** | **0.73%** |
| Coverage: Contents | 100.00% = | 400.00 | |
| **General Conditions-Mitigation** | | **4,807.46** | **8.72%** |
| Coverage: Mitigation | 100.00% = | 4,807.46 | |

**Area: Mitigation Upper Level**

**Area: Upper Level**

| | | | |
|---|---|---|---|
| **Stairs** | | **179.88** | **0.33%** |
| Coverage: Mitigation | 100.00% = | 179.88 | |
| **Hallway** | | **105.68** | **0.19%** |
| Coverage: Mitigation | 100.00% = | 105.68 | |
| **Bedroom 1** | | **4,441.04** | **8.05%** |
| Coverage: Mitigation | 100.00% = | 4,441.04 | |
| **Bedroom 2** | | **2,946.58** | **5.34%** |
| Coverage: Mitigation | 100.00% = | 2,946.58 | |
| **Hall Bath** | | **2,849.88** | **5.17%** |
| Coverage: Mitigation | 100.00% = | 2,849.88 | |
| **Upstrs Hall closet** | | **11.78** | **0.02%** |
| Coverage: Mitigation | 100.00% = | 11.78 | |

| | | | |
|---|---|---|---|
| **Area Subtotal:  Upper Level** | | **10,534.84** | **19.11%** |
| Coverage: Mitigation | 100.00% = | 10,534.84 | |

| | | | |
|---|---|---|---|
| **Area Subtotal:  Mitigation Upper Level** | | **10,534.84** | **19.11%** |
| Coverage: Mitigation | 100.00% = | 10,534.84 | |

**Area: Mitigation-Attic**

**Area: Attic-partial-Mit**

| | | | |
|---|---|---|---|
| **Attic-partial** | | **3,788.75** | **6.87%** |
| Coverage: Mitigation | 100.00% = | 3,788.75 | |

| | | | |
|---|---|---|---|
| **Area Subtotal:  Attic-partial-Mit** | | **3,788.75** | **6.87%** |
| Coverage: Mitigation | 100.00% = | 3,788.75 | |
| **Debris Removal- Mitigation** | | **528.00** | **0.96%** |
| Coverage: Mitigation | 100.00% = | 528.00 | |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

| | | | |
|---|---|---:|---:|
| **Area Subtotal:  Mitigation-Attic** | | **4,316.75** | **7.83%** |
| Coverage: Mitigation | 100.00% = | 4,316.75 | |
| **General Conditions-Rebuild** | | **4,013.91** | **7.28%** |
| Coverage: Dwelling | 100.00% = | 4,013.91 | |
| **Area: Fencing** | | | |
| **Fencing** | | **861.70** | **1.56%** |
| Coverage: Other Structures | 100.00% = | 861.70 | |
| **Area Subtotal:  Fencing** | | **861.70** | **1.56%** |
| Coverage: Other Structures | 100.00% = | 861.70 | |
| **Roof** | | **10,591.60** | **19.21%** |
| Coverage: Dwelling | 100.00% = | 10,591.60 | |
| **Area: Rebuild-Upper Level** | | | |
| **Area: Rebuild-Upper Level** | | | |
| **Stairs** | | **164.03** | **0.30%** |
| Coverage: Dwelling | 100.00% = | 164.03 | |
| **Hallway** | | **89.89** | **0.16%** |
| Coverage: Dwelling | 100.00% = | 89.89 | |
| **Bedroom 1** | | **6,818.82** | **12.37%** |
| Coverage: Dwelling | 100.00% = | 6,818.82 | |
| **Bedroom 2** | | **2,347.19** | **4.26%** |
| Coverage: Dwelling | 100.00% = | 2,347.19 | |
| **Hall Bath** | | **5,003.49** | **9.07%** |
| Coverage: Dwelling | 100.00% = | 5,003.49 | |
| **Upstrs Hall closet** | | **10.02** | **0.02%** |
| Coverage: Dwelling | 100.00% = | 10.02 | |
| **Area Subtotal:  Rebuild-Upper Level** | | **14,433.44** | **26.18%** |
| Coverage: Dwelling | 100.00% = | 14,433.44 | |
| **Area Subtotal:  Rebuild-Upper Level** | | **14,433.44** | **26.18%** |
| Coverage: Dwelling | 100.00% = | 14,433.44 | |
| **Debris Removal- Rebuild** | | **542.26** | **0.98%** |
| Coverage: Dwelling | 100.00% = | 542.26 | |
| **Labor Minimums Applied** | | **1,054.51** | **1.91%** |
| Coverage: Dwelling | 32.56% = | 343.30 | |
| Coverage: Mitigation | 67.44% = | 711.21 | |
| **Subtotal of Areas** | | **55,137.57** | **100.00%** |
| Coverage: Dwelling | 54.27% = | 29,924.51 | |



## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

| | | |
|---|---|---|
| Coverage: Other Structures | 1.56% = | 861.70 |
| Coverage: Contents | 7.22% = | 3,981.10 |
| Coverage: Mitigation | 36.94% = | 20,370.26 |

**Total** 55,137.57  **100.00%**



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

## Recap by Category

| O&P Items | | | Total | % |
|---|---|---|---:|---:|
| **CABINETRY** | | | **734.36** | **1.18%** |
| Coverage: Dwelling | @ | 100.00% = | 734.36 | |
| **CONT: GARMENT & SOFT GOODS CLN** | | | **400.00** | **0.64%** |
| Coverage: Contents | @ | 100.00% = | 400.00 | |
| **CLEANING** | | | **742.53** | **1.19%** |
| Coverage: Dwelling | @ | 100.00% = | 742.53 | |
| **GENERAL DEMOLITION** | | | **2,807.56** | **4.50%** |
| Coverage: Dwelling | @ | 97.68% = | 2,742.46 | |
| Coverage: Other Structures | @ | 2.32% = | 65.10 | |
| **DRYWALL** | | | **4,926.83** | **7.90%** |
| Coverage: Dwelling | @ | 100.00% = | 4,926.83 | |
| **ELECTRICAL** | | | **350.30** | **0.56%** |
| Coverage: Dwelling | @ | 100.00% = | 350.30 | |
| **FLOOR COVERING - CARPET** | | | **938.53** | **1.50%** |
| Coverage: Dwelling | @ | 100.00% = | 938.53 | |
| **FLOOR COVERING - VINYL** | | | **84.85** | **0.14%** |
| Coverage: Mitigation | @ | 100.00% = | 84.85 | |
| **FENCING** | | | **640.00** | **1.03%** |
| Coverage: Other Structures | @ | 100.00% = | 640.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **297.14** | **0.48%** |
| Coverage: Dwelling | @ | 100.00% = | 297.14 | |
| **FINISH HARDWARE** | | | **146.09** | **0.23%** |
| Coverage: Dwelling | @ | 20.04% = | 29.28 | |
| Coverage: Mitigation | @ | 79.96% = | 116.81 | |
| **FRAMING & ROUGH CARPENTRY** | | | **200.61** | **0.32%** |
| Coverage: Dwelling | @ | 100.00% = | 200.61 | |
| **HAZARDOUS MATERIAL REMEDIATION** | | | **205.46** | **0.33%** |
| Coverage: Dwelling | @ | 100.00% = | 205.46 | |
| **HEAT,  VENT & AIR CONDITIONING** | | | **275.52** | **0.44%** |
| Coverage: Dwelling | @ | 8.55% = | 23.56 | |
| Coverage: Mitigation | @ | 91.45% = | 251.96 | |
| **INSULATION** | | | **510.29** | **0.82%** |
| Coverage: Dwelling | @ | 100.00% = | 510.29 | |
| **LABOR ONLY** | | | **1,361.50** | **2.18%** |
| Coverage: Dwelling | @ | 100.00% = | 1,361.50 | |
| **LIGHT FIXTURES** | | | **79.15** | **0.13%** |
| Coverage: Dwelling | @ | 100.00% = | 79.15 | |
| **MIRRORS & SHOWER DOORS** | | | **230.86** | **0.37%** |
| Coverage: Dwelling | @ | 58.15% = | 134.24 | |
| Coverage: Mitigation | @ | 41.85% = | 96.62 | |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

| O&P Items | | | Total | % |
|---|---|---|---:|---:|
| **PLUMBING** | | | **2,326.41** | **3.73%** |
| Coverage: Dwelling | @ | 100.00% = | 2,326.41 | |
| **PAINTING** | | | **3,348.86** | **5.37%** |
| Coverage: Dwelling | @ | 95.32% = | 3,192.26 | |
| Coverage: Other Structures | @ | 4.68% = | 156.60 | |
| **ROOFING** | | | **8,722.77** | **13.99%** |
| Coverage: Dwelling | @ | 100.00% = | 8,722.77 | |
| **SCAFFOLDING** | | | **1,098.55** | **1.76%** |
| Coverage: Dwelling | @ | 100.00% = | 1,098.55 | |
| **TRAUMA/CRIME SCENE REMEDIATION** | | | **148.08** | **0.24%** |
| Coverage: Mitigation | @ | 100.00% = | 148.08 | |
| **TEMPORARY REPAIRS** | | | **266.28** | **0.43%** |
| Coverage: Dwelling | @ | 95.16% = | 253.39 | |
| Coverage: Mitigation | @ | 4.84% = | 12.89 | |
| **WINDOW TREATMENT** | | | **121.60** | **0.19%** |
| Coverage: Dwelling | @ | 100.00% = | 121.60 | |
| **WATER EXTRACTION & REMEDIATION** | | | **933.29** | **1.50%** |
| Coverage: Dwelling | @ | 100.00% = | 933.29 | |
| **O&P Items Subtotal** | | | **31,897.42** | **51.14%** |

| Non-O&P Items | | | Total | % |
|---|---|---|---:|---:|
| **CONT: GARMENT & SOFT GOODS CLN** | | | **2,483.24** | **3.98%** |
| Coverage: Contents | @ | 100.00% = | 2,483.24 | |
| **CLEANING** | | | **1,664.47** | **2.67%** |
| Coverage: Mitigation | @ | 100.00% = | 1,664.47 | |
| **CONT: PACKING,HANDLNG,STORAGE** | | | **1,097.86** | **1.76%** |
| Coverage: Contents | @ | 100.00% = | 1,097.86 | |
| **GENERAL DEMOLITION** | | | **4,323.63** | **6.93%** |
| Coverage: Mitigation | @ | 100.00% = | 4,323.63 | |
| **HAZARDOUS MATERIAL REMEDIATION** | | | **1,433.30** | **2.30%** |
| Coverage: Mitigation | @ | 100.00% = | 1,433.30 | |
| **LABOR ONLY** | | | **230.94** | **0.37%** |
| Coverage: Mitigation | @ | 100.00% = | 230.94 | |
| **PLUMBING** | | | **245.56** | **0.39%** |
| Coverage: Mitigation | @ | 100.00% = | 245.56 | |
| **PAINTING** | | | **135.01** | **0.22%** |
| Coverage: Mitigation | @ | 100.00% = | 135.01 | |
| **SCAFFOLDING** | | | **407.01** | **0.65%** |
| Coverage: Mitigation | @ | 100.00% = | 407.01 | |
| **TRAUMA/CRIME SCENE REMEDIATION** | | | **79.58** | **0.13%** |
| Coverage: Mitigation | @ | 100.00% = | 79.58 | |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

| Non-O&P Items | | | | Total | % |
|---|---|---|---|---|---|
| **TEMPORARY REPAIRS** | | | | **822.73** | **1.32%** |
| Coverage: Mitigation | @ | 100.00% | = | 822.73 | |
| **WATER EXTRACTION & REMEDIATION** | | | | **10,316.82** | **16.54%** |
| Coverage: Mitigation | @ | 100.00% | = | 10,316.82 | |
| **Non-O&P Items Subtotal** | | | | **23,240.15** | **37.26%** |
| **O&P Items Subtotal** | | | | **31,897.42** | **51.14%** |
| **Material Sales Tax** | | | | **728.46** | **1.17%** |
| Coverage: Dwelling | @ | 83.92% | = | 611.31 | |
| Coverage: Other Structures | @ | 2.94% | = | 21.39 | |
| Coverage: Contents | @ | 4.62% | = | 33.64 | |
| Coverage: Mitigation | @ | 8.53% | = | 62.12 | |
| **Overhead** | | | | **3,253.07** | **5.22%** |
| Coverage: Dwelling | @ | 93.87% | = | 3,053.63 | |
| Coverage: Other Structures | @ | 2.71% | = | 88.31 | |
| Coverage: Contents | @ | 1.23% | = | 40.00 | |
| Coverage: Mitigation | @ | 2.19% | = | 71.13 | |
| **Profit** | | | | **3,253.07** | **5.22%** |
| Coverage: Dwelling | @ | 93.87% | = | 3,053.63 | |
| Coverage: Other Structures | @ | 2.71% | = | 88.31 | |
| Coverage: Contents | @ | 1.23% | = | 40.00 | |
| Coverage: Mitigation | @ | 2.19% | = | 71.13 | |
| **Total** | | | | **62,372.17** | **100.00%** |



**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

1   Mitigation Upper Level/Upper
    Level - 27-Front Entrance
    Date Taken: 8/11/2022



2   Exterior - 83-Front Risk
    Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

3   Exterior - 84-Address Risk
    Date Taken: 8/11/2022



4   Exterior - 88-Front Left Elevation
    Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

5    Exterior - 25-Front Left slope
     Date Taken: 8/11/2022

     Wind damage.



6    Exterior - 16-Rear Right Elevation
     Date Taken: 8/11/2022





## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

7    Exterior - 15-Rear Elevation
     Date Taken: 8/11/2022



8    Exterior - 19-Rear Right slope
     Date Taken: 8/11/2022


     Wind damage- Property preservation





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393:1772

9    Exterior - 17-Rear Right Elevation
     Date Taken: 8/11/2022



10   Exterior - 14-Rear Left Elevation
     Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

11   Exterior - 18-Rear Left slope
Date Taken: 8/11/2022


Wind damage



12   Exterior - 22-Rear Left Slope
Date Taken: 8/11/2022


Wind damage.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

13   Exterior - 24-Rear Left Slope
Date Taken: 8/11/2022

Wind damage



14   Exterior - 11-Rear Appertenance
Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

15   Exterior - 71-Rear Appertenance
     Date Taken: 8/11/2022



16   Exterior - 72-Rear Appertenance
     Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

17   Exterior - 91-Rear Appertenance
     Date Taken: 8/11/2022



18   Exterior - 13-Rear Appertenance
     Date Taken: 8/11/2022

     Wind damage.





## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

19   Exterior - 12-Rear Appertenance
     Date Taken: 8/11/2022

     Wind damage



20   Exterior - 74-Rear Appertenance
     Date Taken: 8/11/2022

     Wind damage.





## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

21   Exterior - 90-Rear Appertenance
Date Taken: 8/11/2022

Wind damage.



22   Exterior - 76-Rear Appertenance
Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

23   Exterior - 89-Front Right Elevation
     Date Taken: 8/11/2022



24   29-Interior Stairs
     Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

25   30-Upstairs Hallway
     Date Taken: 8/11/2022



26   31-Upstairs Bdrm 1
     Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

27   95-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Water damage



28   94-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Water damage





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

29   96-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Water damage



30   97-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Water damage





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

31   98-Upstairs Bdrm 1
Date Taken: 8/11/2022

Water damage



32   1-Upstairs Bdrm 1
Date Taken: 8/11/2022

Pre-mitigation. Highly elevated
moiture readings signifying ambient
air. It is nearly saturated with
moisture. Secondary damages occur at
60 RH and higher (IICRC S520
Standard of care). Dehumidification is
Urgently needed.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

33   32-Upstairs Bdrm 1
     Date Taken: 8/11/2022



34   33-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Interior water damage.





## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

35   35-Upstairs Bdrm 1
    Date Taken: 8/11/2022

Interior water damage.



36   36-Upstairs Bdrm 1
    Date Taken: 8/11/2022

Interior water damage.





# LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

37   37-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Interior water damage.



38   38-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Interior water damage. Upstairs hall
     bath is on the other side of wall.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

39   39-Upstairs Bdrm 1
Date Taken: 8/11/2022

Interior water damage.



40   40-Upstairs Bdrm 1
Date Taken: 8/11/2022

Interior water damage.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

41    41-Upstairs Bdrm 1
      Date Taken: 8/11/2022

      Interior water damage.



42    42-Upstairs Bdrm 1
      Date Taken: 8/11/2022

      Interior water damage.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

43   43-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Interior water damage.



44   61-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Pre- Mitigation/Remediation.
     Saturation of MC (moisture content)
     of surface materials (drywall) framing
     members, etc...  Secondary damages
     may be present due to bound, high
     moisture.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

45   65-Upstairs Bdrm 2
     Date Taken: 8/11/2022

     Interior water damage (ceiling).



46   87-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Thermography:  Bound moisture
     trapped within closed ceiling and wall
     cavities.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

47   62-Upstairs Bdrm 1
Date Taken: 8/11/2022

  Pre- Mitigation/Remediation.
Saturation of MC (moisture content)
of surface materials (drywall) framing
members, etc...  Secondary damages
may be present due to bound, high
moisture.



48   86-Upstairs Bdrm 1
Date Taken: 8/11/2022

  Pre- Mitigation/Remediation.
Saturation of MC (moisture content)
of surface materials (drywall) framing
members, etc...  Secondary damages
may be present due to bound, high
moisture.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

49   63-Upstairs Bdrm 1
Date Taken: 8/11/2022

  Pre- Mitigation/Remediation.
Saturation of MC (moisture content)
of surface materials (drywall) framing
members, etc...  Secondary damages
may be present due to bound, high
moisture.



50   3-Upstairs Bdrm 1
Date Taken: 8/11/2022

  Pre- Mitigation/Remediation.
Saturation of MC (moisture content)
of surface materials (drywall) framing
members, etc...  Secondary damages
may be present due to bound, high
moisture.





## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

51   5-Upstairs Bdrm 1
     Date Taken: 8/11/2022

     Pre- Mitigation/Remediation.
     Saturation of MC (moisture content)
     of surface materials (drywall) framing
     members, etc... Secondary damages
     may be present due to bound, high
     moisture.



52   34-Upstairs Bdrm 1
     Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

53  44-Attic
    Date Taken: 8/11/2022



54  53-Attic
    Date Taken: 8/11/2022

Pre-mitigation. Highly elevated
moiture readings signifying ambient
air. It is nearly saturated with
moisture. Secondary damages occur at
60 RH and higher (IICRC S520
Standard of care). Dehumidification is
Urgently needed.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

55   45-Attic
Date Taken: 8/11/2022



56   46-Attic
Date Taken: 8/11/2022

Thermography:  Moisture trapped
within attic cellulose insulation.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

57   47-Attic
     Date Taken: 8/11/2022

     Thermography:  Moisture trapped
     within attic cellulose insulation.



58   48-Attic
     Date Taken: 8/11/2022

     Thermography:  Moisture trapped
     within attic cellulose insulation.





## LLoyds of Abingdon Public Adjusting Firm

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

59   49-Attic
     Date Taken: 8/11/2022

     Thermography:  Moisture trapped
     within attic cellulose insulation.



60   56-Upstairs Hall Bath
     Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

61   60-Upstairs Hall Bath
     Date Taken: 8/11/2022



62   57-Upstairs Hall Bath
     Date Taken: 8/11/2022





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

63   93-Upstairs Hall Bath
Date Taken: 8/11/2022

Water damage on ceiling.



64   92-Upstairs Hall Bath
Date Taken: 8/11/2022

Water damage on ceiling.





**LLoyds of Abingdon Public Adjusting Firm**

Lloyds of Abingdon Public Adjusting Firm
258 Beartooth Parkway 30534
Suite 1000 PMB 1006
Office. 203.570.8028  Fax. 404.393.1772

65   58-Upstairs Hall Bath
       Date Taken: 8/11/2022



Water damage in interior space upstairs.



**Upper Level**



Attic-partial

Attic-partial-Mit

Rebuild-Upper Level – Rebuild-Upper Level



Rebuild-Upper Level



Attic-Rebuild-partial

SHARRONA_CURNELL-1

9' 11"

⇒ N

Fencing

11/3/2022

**IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| SHARONNA CURNELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **CIVIL ACTION FILE NO.:** |
| | )    **23-A-04150-5** |
| TRAVELERS PERSONAL INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiff, **Sharonna Curnell**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **Travelers Personal Insurance Company**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

## GENERAL INSTRUCTIONS

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4. Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiff to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a.  The date the document was prepared or created;

    b.  The name and title of the author or authors of the document;

    a.  A summary of the subject matter of the document;

    b.  The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c.  The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d.  A statement of the basis on which privilege is claimed; and

    e.  The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholder's Claim" shall refer to Claim No. IVN4325001H, which was drafted by the Insurance Company and issued to the Policyholder for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a. when used to refer to a document, means to state the following:

        1.The subject of the document;

        2.The title of the document;

        3.The type of document (e.g., letter, memorandum, telegram, chart);

4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6. The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff" and "Policyholder" mean the above-captioned Plaintiff or the Policyholder listed on 0M4154610316268633 1 and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10. "Property" or "Insured Property" means the property located at 9412 Mulligan Court, Jonesboro, GA 30238.

11. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

12. "Policy" means Policy No. 0M4154610316268633 1 issued by Travelers Personal Insurance Company.

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around July 23, 2022, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the Loss on or about July 23, 2022, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from July 23, 2022 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiff's Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiff all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiff; the date and manner in which You notified the Plaintiff in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiff.

7.

Have You extended coverage for any part of Plaintiff's Claim for insurance benefits, or have You denied or rejected Plaintiff's Claim? If You extended coverage for any part of Plaintiff's Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiff's Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiff's Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiff's Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiff's deductible.

8.

Do You contend the damage to the Property can be repaired?  If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Wind and Water losses that were in effect on July 23, 2022 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiff's cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Wind and Water claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding July 23, 2022 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiff failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiff failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiff's Complaint.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

All documents responsive to Plaintiff's Interrogatories identified in Your responses to Plaintiff's Interrogatories or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Wind and Water claims in the state of Georgia for the year preceding July 23, 2022 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding July 23, 2022 to present.

7.

The Operation Guides which relate to the handling of Wind and Water claims in the state of Georgia in effect for the year preceding July 23, 2022 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel,

contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

9.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

10.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Wind and Water claims in the state of Georgia that were issued one year preceding July 23, 2022 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

12.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in

Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same);

all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

17.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

18.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

19.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this 17th day of May, 2023.

RESPECTFULLY SUBMITTED,

_____
J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-04150-5**
5/12/2023 3:26 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **SHARONNA CURNELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** 23-A-04150-5 |
| | ) | _____ |
| **TRAVELERS PERSONAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant Travelers Personal Insurance Company by serving them with the ***Summons, Complaint and Exhibits***, and ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to Defendant Travelers Personal Insurance Company at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant Travelers Personal Insurance Company**
**2 Sun Court, Suite 400**
**Peachtree Corners, GA 30092**

Respectfully submitted, this 12th day of May, 2023.

For: The Huggins Law Firm, LLC,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

SHERIFF'S ENTRY OF SERVICE

| | |
|---|---|
| Civil Action No. 23-A-04150-5 | Superior Court ☒  Magistrate Court ☐ |
| | State Court ☐  Probate Court ☐ |
| | Juvenile Court ☐ |
| Date Filed 5/12/2023 | Georgia, Gwinnett _____ COUNTY |
| | Sharonna Curnell |
| Attorney's Address | |
| Huggins Law Firm, LLC | |
| | Plaintiff |
| 110 Norcross St. | VS. |
| Roswell, GA 30075 | Travelers Personal Insurance Company |
| Name and Address of Party to Served | |
| Travelers Personal Insurance Company | |
| | Defendant |
| RA: Corporation Service Company | |
| 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 | |
| | Garnishee |

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
I have this day served the defendant _____ personally with a copy
☐ of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place abode in this County.

☐ Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
Served the defendant _____ a corporation
☐ by leaving a copy of the within action and summons with _____
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
☐ envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
☐ not to be found in the jurisdiction of this Court.

This _____ day of _____, 20___.

DEPUTY _____

**CLERK'S | DEFENDANT'S | PLAINTIFF'S COPY**