IN UNITED STATES DISTRICT COURT
FOR NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

INDIRA GOODING, and
JAIDA BELTON
      Plaintiffs,

v.

NEGRIL ATL, LLC, d/b/a
NEGRIL ATL and
PETER BEST

      Defendants.

Civil Action No.:

<u>Jury Trial Demanded</u>

## **<u>COMPLAINT</u>**

COMES NOW Plaintiffs, Indira Gooding and Jaida Belton by and through their undersigned counsel, file this lawsuit against Defendants Negril ATL, LLC and Peter Best on behalf of themselves and similarly situated employees, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., as amended, for unpaid wage violations.

## **I.  INTRODUCTION**

1.  This case arises from Defendants' violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of its employees at the federally mandated minimum wage rate and for Defendants' failure to pay Plaintiffs and all similarly situated workers their earned minimum wages.  Plaintiffs bring this action under the FLSA, 29 U.S.C. 216(b).

2.      Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA.  Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligation from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." See 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Nelson v. MLB Hotel Manager, LLC,* No. 21-10181 (11th Cir. Jul. 13, 2022)   ('An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.'); *Bernal v. Bankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay owners for

shortages and unpaid tabs).

5.    Additionally, an employer who is eligible to use a tip credit must pay the minimum statutory hourly rate of $2.13 per hour. *See* 29 U.S.C. 203(m).

6.    Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC,* 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc*., No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.    Finally, an employer cannot require its tipped employees to perform nontipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc*., 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v.*

*AppleIllinois*, LLC, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois*, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8.    Defendants violated the FLSA in the following respects:

a.    **Violation for failure to inform:**  Defendants failed to correctly inform Plaintiffs of the desire to rely on the tip credit to meet their minimum wage obligations.  In fact, Defendants failed to inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b.    **Violation for making illegal deductions that reduced the direct wage of**

**Plaintiffs below the minimum required hourly wage for tipped employees:**  Plaintiffs were required to purchase their uniforms; black pants, and non-slip shoes, to work for Defendants.   These costs further reduced her wages below the minimum hourly wage required for tipped employees.

    c.   **Violation for performing work unrelated to tipped occupation:**  Plaintiffs were required to perform an excessive amount of non-tipped work; including, but not limited to: waiting for and seating customers, cleaning tables, cleaning the counters, setting tables, stocking the bottle service area, folding napkins, collecting trash, sweeping or vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic wares and extra plates, performing "check-out" procedures, and attending mandatory meetings.   The mandatory meetings are completely unpaid and typically last up to 2 hours.

    d.   **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:**  Plaintiffs were required to perform greater than 20% of her time in performing non-tip producing side work; including, but not limited to:  waiting for and seating customers, cleaning tables, cleaning the counters, setting tables, stocking the bottle service area, folding napkins, collecting trash, sweeping or vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic wares and extra plates, performing "check-out" procedures, and attending mandatory meetings.

    e.   **Violations of the Non-Retaliation Provisions of the FLSA**:  Plaintiffs engaged in activity protected under the FLSA when they complained about Defendants' unfair compensation practices at a mandatory staff meeting on June 27, 2022, and again to supervisors on July 1, 2022.  Plaintiffs complained that they and other waitresses were being forced to work in a fast-paced environment that was understaffed with no help from supervisors. They also complained about managers withholding their and other waitresses' gratuities based on bogus reviews that were mostly the result of problems in the back of the house.   They also complained that waitresses were being subjected to illegal deductions from their pay because "taxes" were being withheld from the total amount of their gratuity, instead of the net amount earned after the mandatory tip-outs were completed.   They complained that taxes were being withheld on money that the waitresses never received because they were forced to tip out the food runners, bussers, and bartenders.

    Hours later, Defendants terminated Plaintiffs for alleged "irreconcilable differences." Since Plaintiffs were terminated subsequent to and in close temporal proximity to their complaints, the evidence supports a causal connection between their protected activity

and Defendants' adverse actions.

9.     Defendants did not pay Plaintiffs the applicable minimum wage in violation of 29 U.S.C. § 206.  As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiffs and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  To state it plainly, Defendants must account for the difference between the wage rates paid to Plaintiffs and their minimum wage rate due under federal law.

## II. SUBJECT MATTER JURISDICTION AND VENUE

10.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiffs worked in this District, were paid below the minimum wage in this District, and the violation of the law identified in this Complaint occurred in this District.  Additionally, Defendant Negril ATL, LLC d/b/a Negril ATL maintains its principal place of business in this District.

## III. PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Indira Gooding resided in Dekalb County Georgia and Plaintiff Jaida Belton resided in Fulton County, Georgia at the time they were terminated.

13.     The Plaintiffs are former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.

14.     Defendant,  Negril ATL LLC, is a Georgia Domestic Corporation with one location in Georgia, and a principal place of business located at 30 North Avenue NE, Atlanta, Georgia

30308 (within the District).  Defendant, Negril ATL, LLC can be served with a copy of the summons and complaint by leaving a copy with its registered agent for service, Townsend & Lockett, LLC, 1100 Peachtree Street NE, Suite 950, Atlanta, Georgia 30309 (Fulton County).

15.   Defendant Peter Best ("Best") is a natural person, an owner and General Manager of Negril ATL, as well as a resident of DeKalb County, Georgia (within the District).  Best exercised operational control over Negril ATL's business operations.  Best acted directly or indirectly on behalf of Negril ATL, and, at all times mentioned herein, was an "employer" or joint employer of Plaintiffs within the meaning of the FLSA.  Defendant Peter Best can be served at Negril ATL 30 North Avenue NE, Atlanta, GA 30308.

16.   Personal jurisdiction exists over Defendants because they have sufficient minimum contacts with the State of Georgia to confer personal jurisdiction.  Defendants conduct business throughout Georgia.  Furthermore, Defendants contract with and employ Georgia residents, have Georgia customers, market to residents of Georgia, and own property in Georgia.  Moreover, the violation of the law and the harm committed to Plaintiffs occurred in Georgia.

## IV. <u>COVERAGE</u>

17.   At all material times, Defendants have been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

18.   At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

19.   At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

20.   At all material times, Plaintiffs were employees engaged in commerce or the

production of goods for commerce.

21.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is, Defendants perform related activities through unified operation and common control for a common business purpose.

22.     Defendants operate multiple restaurants with the name "Negril" under the control of the same senior-level management, with locations in Georgia and New York.  Indeed, the restaurants advertise themselves as a unified entity through the same website.

23.     Defendants represent their restaurants to the public as one restaurant chain operating at multiple locations.  They share employees, have a common management, pool their resources, have common ownership, and have the same operating name.

24.     Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

25.     Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

### V. <u>FACTS</u>

26.     Defendants operate a restaurant chain in Atlanta, Georgia (Fulton County) commonly known as "Negril ATL," as well as in Brooklyn, New York, commonly known as "Negril BK."

27.     Defendants' restaurants are full-service restaurants that employ servers and bartenders to provide services to customers.

28.     Defendants' servers gather orders from customers and deliver food and beverages to the customers.  The servers were rarely paid an hourly wage and only received tips from

customers.

29.   Defendants' managers often retained the tips earned by their tipped workers, including the Plaintiffs.

30.   Defendants tipped workers, including the Plaintiffs Indira Gooding, were required to pay the owners for shortages out of their tips.

31.   There were also some instances in which Defendants' tipped workers were required to cover the costs of unpaid customer tabs.

32.   The checks Defendants issued their tipped workers, including the Plaintiffs, were handwritten and did not include any accounting of their hours worked or rates of pay.

33.   Defendants paid their tipped workers, including the Plaintiffs, less than the minimum wage under the law.

34.   Defendants attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiffs.

35.   Plaintiff Indira Gooding worked as a waitress and was paid less than the federal minimum wage.  She worked for Defendants from approximately September 26, 2020, to July 2, 2022.   After openly expressing opposition against Defendants' illegal deductions from its employees' wages, Ms. Gooding was terminated the following day.

36.   Plaintiff Jaida Belton worked as a bartender for Defendants from approximately September 7, 2021, to July 2, 2022, before she was terminated within hours after openly expressing opposition against Defendants' illegal deductions from its employees' wages.

37.   To date, the payment issues Plaintiffs complained about have not been resolved.

38.   The tip credit has a harmful effect on workers that threatens the health of the

economy.   Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.[1]   The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.**
>
> As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color.   The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushing to recoup the costs of free, exploited labor.[2]

39.   Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

40.   In this case, Defendants failed to satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to properly provide Plaintiffs with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee, (4) that they could not be paid lower than the minimum statutory amount per hour ($2.13 per hour under the FLSA), and (5) that the tip credit shall not apply to any employee who does not receive the notice.

---

[1] *See* <u>Investor Statement in Support of Ending the Subminimum Wage</u> (last visited May 22, 2022)
[2] *Id.* (emphasis in original).

41.   Defendants also maintained a policy and practice whereby tipped employees, including Plaintiffs, were required to perform non-tip producing side work unrelated to the employees' tipped occupation.  As a result, Plaintiffs were engaged in dual occupations while being compensated at the tip credit rate, or not at all.

42.   Defendants also maintained a policy and practice whereby tipped employees, including Plaintiffs, were required to spend a substantial amount of time throughout a workweek, in excess of 20 percent or for more than 30 consecutive minutes, performing non-tip-producing side work related to the employees' tipped occupation.

43.   Defendants maintained a policy and practice whereby Plaintiff Indira Gooding and other waitresses were required to spend a substantial amount of time performing non-tip producing side-work, including but not limited to waiting for and seating customers, cleaning tables, cleaning the counters, setting tables, stocking the bottle service area, folding napkins, collecting trash, sweeping or vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic wares and extra plates, performing "check-out" procedures, and attending mandatory meetings.   The mandatory monthly meetings are completely unpaid and typically last up to 2 hours.

44.   Defendants maintained a policy and practice whereby Plaintiff Jaida Belton and other bartenders were required to spend a substantial amount of time performing non-tip producing side-work, including but not limited to thawing out the purees, making drink batches, cutting fruit, bussing tables, washing glassware, doing inventory, stocking the bar, cleaning the frozen drink machine, cleaning tables, cleaning the counters, setting tables, stocking the bottle service area, folding napkins, collecting trash, sweeping or vacuuming under tables in the dining

area, bussing tables, pre-filing condiment containers, bringing out plastic ware and extra plates, performing "check-out" procedures, and attending mandatory meetings.

45.    Defendants required Plaintiff Indira Gooding to perform work prior to the opening of the restaurant when there were no customers from whom she could earn and generate tips.  At the beginning of her shifts on Saturday and Sunday, and after all of the guests left for the evening on Thursday, Friday and Saturday, Ms. Gooding assisted with Negril's mandatory opening and closing tasks.  Opening tasks included cutting fruit; lemons, limes, oranges, rolling silverware, folding napkins, stocking condiments on tables, wiping menus down, and stocking ice, sweeping the floor and setting up the back of the house.

46.    Defendants required Plaintiff Jaida Belton to perform work prior to the opening of the restaurant when there were no customers from whom she could earn and generate tips.  At the beginning of her shifts on Thursday through Sunday, and after all of the guests left for the evening, Ms. Belton assisted with Negril's mandatory opening and closing tasks.  Opening tasks included cutting fruit; lemons, limes, oranges, thawing out the purees, making drink batches, stocking the bar, cleaning out the frozen drink machine, rolling silverware, folding napkins, stocking condiments, wiping menus down, and stocking ice, sweeping the floor and setting up the back of the house.

47.    Likewise, Defendants required the Plaintiffs to remain at the restaurant to perform closing tasks.  The closing duties added at least another hour to their non-tip generating work. This included time meeting with the manager on duty to receive and discuss the payout sheet and making various mandatory payments from their tips to other bartenders, servers, and bussers. Their closing duties included, but were not limited to collecting trash, wiping tables, sweeping floors, sweeping under their section, cleaning server areas, cleaning condiment areas, cleaning

the bottle service area, stocking server areas, and stocking the condiments.

48.   Plaintiff Gooding worked approximately 31 hours each week, in addition to 10 hours off the clock, for a total of 41 hours each week.

49.   Plaintiff Belton worked approximately 46 hours each week, in addition to 10 hours off the clock, for a total of 56 hours each week.

50.   However, Defendants never paid Plaintiffs or its other servers or bartenders an appropriate minimum wage rate for this work.  In fact, there were very few occasions when Plaintiffs received any wage payments at all during their employment with Defendants.

51.   On July 2, 2022, both Plaintiffs were terminated within hours of complaining about not being paid appropriately. Their terminations violated the anti-retaliation provisions of the FLSA.

52.   The duties that Defendants required Plaintiffs to perform were duties customarily assigned to "back-of-house" employees in other establishments, who typically receive at least the full minimum wage rate.

53.   When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

54.   Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts of non-tipped work.

55.   Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.

56.   However, Defendants did not allow its tipped employees to clock in at the full minimum wage rate when performing non-tipped work described in this Complaint.

57.   Defendants required their servers to purchase costly uniforms. Defendants' failure to reimburse servers for their uniform constitutes an unlawful deduction which caused Plaintiffs' hourly wages (that were never received) to fall further below the minimum wage.

58.   Plaintiffs incurred this uniform cost for the benefit and convenience of Defendants.

59.   Since Defendants failed to pay Plaintiffs an hourly wage during any week in which they were required to pay for work-related expenses, shortages and unpaid tabs, their compensation fell further below the minimum wage rate.

60.   As a result, Plaintiffs were not paid the minimum hourly rate necessary for Defendants to claim the tip credit.

61.   Defendants failed to meet the requirements to claim the tip credit; thus, Defendants were not entitled to take a credit toward their minimum wage obligation to Plaintiff.

62.   As such, Plaintiffs were not compensated at the federally mandated minimum wage.

63.   Defendants' owner, Peter Best, and Defendants' management knew or should have known that their policies and practices violated the law because they were previously sued for FLSA violations in 2015. See *Flores et al v. Negril Village et al* No, 1:15-cv-02658-AJN (S.D.NY. 2015).   Defendants acted knowingly, willfully, and/or with reckless disregard of the law in violating Plaintiffs' rights to minimum and overtime wages under the FLSA.   Defendants have failed to make a good faith effort to comply with the FLSA.

## REVISED FIELD OPERATIONS HANDBOOK
## AND NEW DUAL JOBS REGULATION

64.   On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27, which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.   However, nearly every court to have

considered that opinion letter held that the opinion letter was not entitled to any deference. *See Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019); *Callaway v. DenOne, LLC*, No. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019).

65.    Therefore, the Department of Labor announced its intention to revise the dual jobs regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.[3]

66.    After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021.[5] After delaying the effective date of the Final Rule, on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit."[6]

67.    After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Dual Jobs final rule).  The Dual Jobs Final Rule became effective December 28, 2021.[7]

68.    Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes.  That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

69.    Here, Defendants required Plaintiffs to perform non-tip producing work for periods that exceeded 30 minutes.  Plaintiffs completed non-tipped work prior to when the restaurant was

open to the public, throughout her shifts during business hours, and after the restaurant was closed.  During this time, Defendants paid Plaintiffs below the minimum wage rate.

70.    Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiffs  the full minimum wage rate per hour for all hours she worked for Defendants.

71.    Plaintiffs were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to her tip-producing duties.

72.    Plaintiffs were not properly informed of Defendants' intent to utilize the tip credit.

73.    Plaintiffs were burdened with deductions and expenses, including uniform costs, shortages and unpaid tabs, that further lowered their compensation below the minimum wage. Such "deductions" constitute an employer's unlawful retention of tips in violation of the FLSA tip credit conditions under 29 U.S.C. 203(m), and preclude Defendants from invoking the "tip credit," *See Widjaja v. Kang Yue* USA Corp., No. 09-CV-2089 RRM CLP, 2011 WL 4460642, at *6 (E.D.N.Y. Sept. 26, 2011).  The tips inappropriately withheld constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act, and invalidate Defendants' eligibility to use the tip credit. *See Martins v. MRG of S. Florida, Inc*., 112 So. 3d 705 (Fla. Dist. Ct. App. 2013)(FLSA is violated when waitresses' costs incurred for uniforms and payment of walk-out customer's bills caused aggregate wages to fall below the minimum wage in a given week).

**<u>CAUSE OF ACTION</u>**

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY THE MINIMUM WAGE**

74.   Plaintiffs incorporate the preceding paragraphs by reference.

75.   This count arises from Defendants' violation of the FLSA in connection with its failure to pay the minimum wages. See 29 U.S.C. § 206.

76.   Plaintiffs were paid hourly rates less than the minimum wage while working for Defendants.

78.  Plaintiffs were not exempt from the minimum wage requirements of the FLSA.

79.   Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiffs being paid less than the Federal minimum wage rate.

80.   Since Defendants are not eligible to apply a tip credit, they owe each Plaintiff $5.12 for each hour they worked each week during their employment.  Since Plaintiffs were not paid $2.13 for the hours they worked each week, each Plaintiff is also owed an additional $2.13 for each of the unpaid hours they worked each week.

81.   Defendants' failure to pay the minimum wage to Plaintiffs in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. 29 U.S.C. § 255(a).


**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS**
**OVERTIME PROVISIONS**


82.   Plaintiffs incorporate the preceding paragraphs by reference.

83.   Ms. Gooding worked 41 hours each week during approximately 92 weeks of

employment.  Defendants failed to pay her 1.5 times her regular rate of pay ($7.25) for each hour worked beyond 40.

84.    Ms. Belton worked 56 hours each week during approximately 43 weeks of employment.  Defendants failed to pay her 1.5 times her regular rate of pay ($7.25) for each hour worked beyond 40.

85.    By its actions alleged herein, Defendants willfully, knowingly, and/or recklessly violated the FLSA provisions and corresponding federal regulations as detailed herein, by failing to properly pay overtime wage compensation to Plaintiffs in accordance with §§ 203, and 207 of the FLSA.

86.    Plaintiffs were not exempt employees under FLSA.

87.    Plaintiffs were never told that they were independent contractors, nor did they qualify to be considered independent contractors under the FLSA.

88.    Defendants deliberately avoided paying Plaintiffs their full compensation earned for all overtime hours worked.

89.    Defendants were aware that they could not lawfully deny Plaintiffs their appropriately calculated overtime wages.

90.    Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' overtime compensation.

91.    As a result of Defendants' violations of the FLSA, Plaintiffs suffered damages by failing to receive overtime compensation in accordance with §§ 203, and 207 of the FLSA.

92.    As a result of Defendants' unlawful acts, Plaintiffs were deprived of overtime compensation in an amount to be determined at trial, and they are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, costs, attorneys' fees, and other

relief.

## COUNT III

### VIOLATION OF THE FAIR LABOR STANDARDS
### ANTI- RETALIATION PROVISIONS

93.     Plaintiffs repeat, re-allege, and reiterate the foregoing allegations set forth in the prior paragraphs, as set forth herein and states:

The FLSA's anti-retaliation provision states:

> *It shall be unlawful for any person – (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.*

94.     Plaintiffs engaged in protected activities when they openly opposed Defendants' illegal pay practices on June 27, 2022, and July 1, 2022.  Plaintiffs were terminated within hours of their protected activity.

95.     Defendants acknowledged Plaintiffs' complaints about unpaid wages but refused to properly compensate them.

96.     Plaintiffs suffered adverse action by the Defendants subsequent to and contemporaneous with their protected activity, in that they were terminated.

97.     Defendants' termination of Plaintiffs occurred in close temporal proximity to Plaintiffs' complaints about unpaid wages, which supports a causal connection between the protected activity and the Defendants' adverse actions.

### WAGE DAMAGES SOUGHT

98.     Each Plaintiff is entitled to receive the minimum wage of $2.13 for each unpaid

19

hour they worked.

99.   Each Plaintiff is also entitled to receive $5.12 for each hour they worked, to account for the tip credit Defendants were not eligible to apply to Plaintiffs' wages.

100.  Each Plaintiff is also entitled to receive payment of at least 1.5 times their hourly rate for each hour they worked, to account for the tip credit Defendants were not eligible to apply to Plaintiffs' wages.

101.  Each Plaintiff is also entitled to recover her attorney's fees and costs, as required by the FLSA.

102.  Plaintiffs are also entitled damages for emotional distress and mental anguish recoverable in retaliation claims brought under FLSA.

## JURY DEMAND

103.  Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

104.  For these reasons, each Plaintiff respectfully requests that judgment be entered in her favor awarding her:

     a.  Minimum wage compensation unadulterated by the tip credit;

     b.  Unpaid overtime;

     c.  Unpaid regular wages;

     e.  Liquidated damages;

     f.  Lost wages and back pay;

g. General compensatory damages for retaliation including but not limited to damages for mental anguish and emotional distress;

h. Reimbursement for all expenses and wages wrongfully withheld;

i. An order requiring Defendants to correct its pay practices going forward;

j. Reasonable attorney's fees, costs, and expenses of this action;

h. Pre-judgment interest (to the extent liquidated damages are not awarded) and post judgment interest; and

i. All such other and further relief to which Plaintiffs may be entitled, both in law and in equity.

Signature is on the following page

Respectfully submitted,

/s/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No. 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (470) 207-1559
F: (470) 231.0672
alizana@attorneylizana.com

/s/ Tia T. Brown
The Law Office of Thornton Brown, LLC
GA Bar No. 518875
235 Peachtree Street, Suite 400
Atlanta, Georgia 30303
T: (404) 946-8702
F: (229) 337-5459
tjbrown@thorntonbrown.com

21