# IN THE U.S. DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **JUSTIN HOWARD, CHRIS TAYLOR, BILLY MAYVILLE, SEAN BOWLING**, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| vs. | ) ) | _____ <br> **JURY TRIAL DEMANDED** |
| **COOL AIR MECHANICAL, LLC**. | ) ) ) ) | |
| Defendant. | ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1. This is a collective and class action brought pursuant to 29 U.S.C. §216(b) and Fed. R. Civ. P. 23 by Plaintiffs, Justin Howard, Chris Taylor, Billy Mayville and Sean Bowling ("Plaintiffs"), individually, and on behalf of all similarly situated persons employed by Defendant, Cool Air Mechanical LLC. ("Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. and for breach of contract as well as individual claims for retaliation under the FLSA.

2. During the relevant periods within the applicable statute of limitations for this litigation, the Plaintiffs and those similarly situated were employed by

Defendant as service and install technicians who were required to travel to clients' residential and/or commercial properties to provide services.

3. Defendant agreed to pay Plaintiff service technicians and those similarly situated either a salary for all hours without any compensation for overtime hours or an hourly rate for all hours worked but uniformly only counted the time Plaintiff and those similarly situated were at jobsites and excluded time spent driving between jobsites as well as other compensable time typically spent at Defendant's facility preparing for a job or doing other work before travelling to the first jobsite.

4. Defendant agreed to pay Plaintiff install technicians a piece rate for all hours related to an air conditioning installation with no pay for overtime hours worked or mandatory work at Defendant's facility including training.

5. The travel time Defendant willfully and uniformly excluded from the hours worked by Plaintiff service technicians and those similarly situated is compensable time. 29 C.F.R. 785.38.

6. Accordingly, Defendant failed to pay the federal minimum wage, in violation of 29 U.S.C. § 206(a)(1)(C), much less the hourly rate Defendant promised to pay, to Plaintiffs and those similarly situated for unpaid work hours such as during travel between jobs by service technicians, training, and/or working while at Defendant's facility.

7. Defendant has failed to pay overtime compensation owed to the Plaintiffs and those similarly situated each workweek total hours worked exceed 40, including all excluded travel and other compensable time, in violation of 29 U.S.C. § 207.

8. The putative Class is comprised of all persons who are or were employed by Defendant as hourly service technicians at any time within the past 4 years, based on the Rule 23 breach of contract claim based on unpaid hours and commissions, and all persons who are or were employed by Defendant as service or install technicians in the past 3 years based on Willful FLSA violations for minimum wage and overtime.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. § 1391(b)(2) because Defendant is located and conducts business in the District and most, if not all, of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

11. Plaintiff Justin Howard is a resident of Mableton, Georgia. He worked for the Defendant from the week of January 30 to the week of May 16, 2023 as an hourly service technician who provided installation and/or repair services at residential and/or commercial jobsites of Defendant's clients.  Mr. Howard signed a consent form to join this lawsuit, which is attached to this Complaint as Exhibit A.

12. Plaintiff Chris Taylor is a resident of Dallas, Georgia. He worked for the Defendant from late January to early May, 2023 as an hourly service technician who provided installation and/or repair services at Defendant's clients' residential and/or commercial jobsites. Mr. Taylor signed a consent form to join this lawsuit, which is attached to this Complaint as Exhibit B.

13. Plaintiff Billy Mayville is a resident of Stone Mountain, Georgia.  He worked for Defendant from 2015 until approximately November 26, 2021 working predominantly his last six months (relevant period within the statute of limitations) as a non-exempt salaried lead service technician who provided installation and/or repair services at Defendant's clients' residential and/or commercial jobsites. Mr. Mayville signed a consent form to join this lawsuit, which is attached to this Complaint as Exhibit C.

14. Plaintiff Sean Bowling is a resident of Marietta, Georgia.  He worked for Defendant since 2015 until late June, 2021, working predominantly as a piece-rate install technician who provided installation and/or repair services at Defendant's clients' residential and/or commercial jobsites. Mr. Bowling signed a consent form to join this lawsuit, which is attached to this Complaint as Exhibit D.

15. Plaintiffs bring this lawsuit on their own behalf and on behalf of all other service and install technicians who are currently or were formerly employed by Defendant during the relevant time period.

16. Defendant Cool Air Mechanical, LLC is a Georgia Limited Liability Company with its principal office at 1950 Guffin Lane, Marietta, GA 30066, and does business within the state of Georgia.

17. Defendant describes itself as providing residential and commercial cooling, heating and plumbing service, repair, maintenance and installations throughout metro Atlanta, Georgia.

18. Defendant's registered agent is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## FACTUAL ALLEGATIONS

19. During all periods relevant to this litigation, Defendant's annual sales exceeded $500,000 and it had more than two employees such that the FLSA applies in this case on an enterprise basis.

20. Defendant employs over 50 technicians who provide service, repair, maintenance and installations related to heating, cooling and plumbing at its clients' residential and commercial jobsites around metro Atlanta.

21. Defendant hired Plaintiff Justin Howard promising $25 per hour plus 10% commission as described in his offer letter attached as Exhibit E.

22. Defendant hired Plaintiff Chris Taylor with a similar offer letter promising the exact same hourly rate and commission.

23. Defendant hired Billy Mayville and promised to pay him a salary plus commission.

24. Defendant hired Sean Bowling and promised to pay him an hourly rate plus commission for service work and a piece rate for installations.

25. Defendant employs the majority of its other technicians who provide service, repair, maintenance and installations related to heating, cooling and plumbing at its clients' residential and commercial jobsites around metro Atlanta at a set hourly rate plus commission and piece rate for HVAC installations.

26. Similar to how Defendant paid Plaintiffs, Defendant has not paid its other hourly technicians the promised hourly rate of pay for travel time to or between jobs during the workday nor paid all time technicians spent in training or performing work at Defendant's facility.

27. The FLSA requires Defendant to keep a record of all compensable hours worked. 29 U.S.C. § 211.

28. Defendant does not have records that show the total of all compensable time, including travel between jobs, for each workweek for Plaintiffs and those similarly situated.

29. Defendant does not have records that show the regular rate upon which overtime premium must be calculated for workweeks where Plaintiffs or those similarly situated worked more than 40 hours in a workweek.

30. Defendant kept no records to show the hours worked by technicians while being paid piece work for HVAC installations.

31. Defendant required Plaintiffs and other technicians while working hourly providing service, repair, maintenance and installations related to heating, cooling and plumbing at Defendant's clients' residential and commercial jobsites around metro Atlanta ("Service Techs") to routinely drive to multiple jobsites in a single day without counting the time spent driving between the jobsites or from Defendant's facility to the first jobsite as compensable time.

Accordingly, Defendant repeatedly stole the wages of Service Techs by refusing to pay them their basic hourly rate for hours worked at Defendant's direction.

32. Defendant tracks the time Service Techs spend travelling between jobs and willfully and intentionally chose not to pay them for those hours.

33. By not paying the Service Techs for travel time and depriving them, their children and other family members of their earnings, Defendant increased its profits by stealing from its employees.

34. Defendant routinely mandated employees, including Plaintiffs and those similarly situated, attend meetings and trainings and regularly did not treat that time as compensable.

35. Defendant often treated as non-compensable time Plaintiffs and those similarly situated spent working at Defendant's facility when the work was not billable to a client.

36. When Defendant paid a non-exempt Service Tech like Billy Mayville a salary, Defendant did not pay any additional money for hours worked beyond 40 in a workweek.

37. Plaintiff Billy Mayville worked approximately 80 hours per week during the relevant period.

38. Plaintiff Sean Bowling and other similarly situated technicians to whom Defendant paid a piece rate to install HVAC units ("Install Techs") were not paid any overtime premium for hours worked over 40 in a workweek, which routinely occurred.

39. Defendant paid Install Techs hourly for any work performed other than installing HVAC units and did not pay an overtime premium when the hours worked exceeded 40 in a workweek.

40. At some point in 2021, Defendant agreed to begin paying Install Techs for Friday morning's hour meetings, but did not pay Install Techs for those meetings prior.

41. Employees have complained to Defendant's management about not being paid for all hours or for overtime since at least 2019.

42. In addition to other employee complaints about pay, Plaintiffs also notified Defendants through numerous members of management that Defendant was stealing wages and not complying with its contractual agreements or federal law.

43. Defendant continued stealing wages from Plaintiffs and those similarly situated, breaching its contract with the technicians and violating the FLSA.

44. Defendant obtains a portion of the work Plaintiffs and those similarly situated performed on behalf of Defendant through Costco and has not notified Costco

of Defendant's wage theft practices, non-compliance with its contractual wage obligations with its technicians or blatant violations of federal wage law in order to further profit from its illegal wage theft.

45. Defendant failed to pay Plaintiffs commissions Defendant promised to pay on jobs Plaintiffs sold and/ work Plaintiffs performed.

46. Defendant did not pay other similarly situated technicians commissions as promised in breach of agreements Defendant entered with similarly situated technicians.

47. Defendant used to have each Service Techs enter his/her time manually and more recently into a software program that created a spreadsheet to show the start and end time of each job, and travel time between jobs, and all other work activity.  Based on the face of Defendant's own electronic records, Defendant purposely did not pay Plaintiffs and those similarly situated for all hours worked or proper commissions.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

48. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

49. Plaintiffs bring this action individually and on behalf of all other individuals similarly situated pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Members of the proposed collective were employed by Defendant within the

meaning of the FLSA, as service technicians who provide service, repair, maintenance and installations related to heating, cooling and plumbing at Defendant's clients' residential and commercial jobsites around metro Atlanta.

50. The proposed collective is defined as follows:

> All persons who worked for Defendant as cooling, heating or plumbing technicians at any time within three years prior to the commencement of this action, and who were not paid an overtime premium or correct overtime premium for hours worked over 40 in a workweek, and/or were not paid for all hours worked for travel between jobsites, training or unpaid work at Defendant's facility (the "Collective").

51. Plaintiffs have consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and their consent forms are attached as Exhibits A-D.

52. As this case proceeds, additional individuals will file consent forms and join the FLSA Collective Action as opt-in plaintiffs.

53. Plaintiffs estimate the size of the proposed Collective to be more than 100 technicians. The precise size of the proposed Collective can be easily ascertained from Defendant's records.

54. With respect to this case, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs

under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices and/or policies of not paying for certain hours worked and not properly paying overtime; (c) their claims are based upon the same factual and legal theories; and (d) the payroll records needed to determine the extent of the violations and amount of damages are the same among all potential Collective members.

55. The employment relationship between Defendant and every Collective member, including named Plaintiffs, is the same and differ only by the individual's name, type of service performed, exact number of hours worked each week, and rate of pay.

56. The key issues—the extent to which Defendant failed to pay for (a) travel time spent travelling between jobsites, (b) training, (c) pre-shift work at Defendant's facility, (d) overtime, and (e) how overtime was calculated—do not vary among the Collective members.

57. The key legal issues—whether (a) the unpaid time is compensable, (b) the overtime is owed for hours worked over 40 in a workweek, and (c) the regular rate was correctly calculated—are also the same for the Collective members.

## RULE 23 CLASS ACTION ALLEGATIONS

58. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

59. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on their own behalf and on behalf of all similarly situated individuals who are current and former employees of Defendant since June 17, 2019 based on a four-year statute of limitation for breach of contract in Georgia.

60. The proposed Rule 23 Class is defined as:

   a. All persons who worked for Defendant as cooling, heating or plumbing technicians at any time within four years prior to the commencement of this action, and who were not paid all wages earned for hours worked for travel between jobsites, training and meetings, unpaid work performed at Defendant's facility, and/or earned commission that was not paid (the "Class").

61. The individuals in the proposed Class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, Defendant has employed at least 150 service technicians during the class period.

62. There is a well-defined community of interest among the Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Class.

63. These common legal and factual questions, include, but are not limited to:

> (a) Whether the unpaid travel time service technicians spent travelling within a workday between jobsites is compensable;
>
> (b) Whether the unpaid time service technicians within the proposed Class spent in meeting and/or training that Defendant mandated is compensable;
>
> (c) Whether the unpaid time service technicians within the proposed Class spent at Defendant's workplace is compensable;
>
> (d) Whether service technicians in the proposed Class earned commission on jobs they sold and/or worked that was not paid;
>
> (e) Whether Install Techs paid piece rate still must be paid an overtime premium for all hours worked beyond 40 each workweek;
>
> (f) Whether all compensation, including hourly rate, commission, piece rate payments, salaries and non-discretionary bonuses must be included in total compensation and divided by all hours

worked to determine the regular rate for each employee each workweek;

(g) The data necessary and formula to calculate the damages for each member of the proposed Class;

(h) Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract;

(i) Whether Defendant's non-payment of earned commissions amounted to a breach of contract.

64. Plaintiffs' claims are typical of those of the Class in that they and all other Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Class members' claims and their legal theories are based on the legal theories are the same among Class members.

65. Plaintiffs fairly and adequately represent the interests of the Class, will be able to continue doing so, and have retained counsel highly experienced in wage and hour and class litigation.

66. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Class.

67. The questions of law and fact common to the Class predominate over any questions solely affecting individual members of the proposed Class.

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for some individuals along with the fear of reprisal. Prosecution of this case as a Class action will also eliminate the possibility of duplicative lawsuits being filed in both state and federal courts.

69. This case will be manageable as a Class action. Plaintiffs and their counsel know of no unusual difficulties in this case.

70. Defendant is owned by Turnpoint Services with over 5,000 employees and three dozen service companies. It has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be dealt with and resolved with relative ease.

71. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

72. Because Defendant acted and refused to act in ways that apply generally to the Class and declaratory relief is appropriate in this case with respect to the Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 USC § 216(b) Collective Action)**
**<u>VIOLATION OF THE FLSA – MINIMUM WAGE & OVERTIME</u>**

73. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

74. Defendant is an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1).

75. Defendant suffered or permitted the Plaintiffs and members of the proposed Collective to work for them within the meaning of 29 U.S.C. § 203(g).

76. At all times relevant to this action, Plaintiffs and members of the proposed Collective were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

77. During all times relevant to this action, Defendant routinely required Plaintiffs and members of the proposed Collective to travel to more than one jobsite in a day and did not pay the FLSA minimum wage to Service Techs for travel time.

78. During all times relevant to this action, Defendant required or permitted Plaintiffs and members of the proposed Collective to begin their workday by commuting to Defendant's office location and then travel to the first jobsite and did not pay Service Techs the FLSA minimum wage for the travel time from the office to the first job and sometimes also did not pay any amount for the time technicians spent working at Defendant's office location.

79. During all times relevant to this action, Defendant required or permitted Plaintiffs and members of the proposed Collective to attend training and/or meetings related to their work for Defendant and did not pay the FLSA minimum wage for that time.

80. In workweeks where Plaintiffs and other Collective members' total hours worked exceeded 40 hours, the uncompensated time is overtime that must be paid at the federally mandated rate of 1.5 times each employee's regular rate. 29 U.S.C. § 207.

81. In workweeks where Plaintiffs and other Collective members' hours that Defendant did include as compensable time exceeded 40, Defendant only paid 150% of the employee's hourly rate, which resulted in a lower overtime premium than paying 150% of the regular rate which had to include all compensation including commission.

82. Defendant acted willfully or with reckless disregard as to their obligation to pay workers a minimum hourly wage and proper overtime, and, accordingly, Defendant's violations were willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260. Defendant has the data necessary to calculate and properly pay for all hours and knew it was not paying its service technicians for all hours worked or properly calculating overtime.

83. Defendant's failure to pay members of the proposed Collective the federally mandated minimum wage and overtime premiums results from Defendant's generally applicable payroll policies and practices, and does not depend on the personal circumstances of individual members of the proposed Collective.

84. Defendant's illegal conduct, as alleged above, was widespread, repetitious, and consistent among members of the proposed Collective.

85. As a result of Defendants' unlawful conduct, Plaintiffs and other Collective members have incurred lost wages in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

86. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages including overtime plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## (Rule 23 Class Action)
## <u>BREACH OF CONTRACT</u>

87. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

88. At all times relevant to this action, Defendant had a contract with Service Techs to pay them for each hour they worked at a pre-established (contractual) hourly rate plus commission.

89. For non-exempt Service Techs paid a salary, like Plaintiff Billy Mayville, the contractual hourly rate is determined by dividing the promised weekly salary by 40 hours.

90. Each Class member's contractual hourly rate is identified in an offer letter, paystubs and/or other records that Defendant prepared and maintains as part of its regular business activities.

91. The total hours Service Techs worked, including the unpaid travel time, training, meetings, and work at Defendant's facility is contained in Defendant's timekeeping system and maintained as part of its regular business records along with sales information from which commissions can be calculated.

92. All Service Techs within the proposed Class performed under the contract by doing their jobs and carrying out the work they were assigned each shift

including the unpaid work that Defendant required of them such as travel between jobsites, attending training or meetings, and working at Defendant's facility.

93. By not paying Service Techs within the proposed Class the agreed upon hourly wage for the time Defendant recorded but chose to exclude from employees' compensable time, Defendant systematically breached its contracts with these Plaintiffs and Class members.

94. Remedies under the FLSA for these Plaintiffs and Class members are inadequate during workweeks with total hours under 40 as Defendant agreed to pay an hourly rate more than the federally mandated minimum wage of $7.25 per hour (i.e., pure "gap time" claims).

95. Based on Defendant's systemic payroll practice of not paying for travel between jobs and sometimes not paying for training, meetings, travel to the first jobsite from Defendant's facility, Defendants failed to pay Service Techs any wages for certain hours worked each workweek from June 17, 2019 to present.

96. As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Service Techs within the Class have been damaged, in an amount to be determined at trial.

97. These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because the facts giving rise to the alleged breaches and the contractual law to be applied are the same for all Class members, the common questions of law and fact predominate over any question affecting only individuals and a Class Action is the best way to fairly and efficiently adjudicate the controversy.

**COUNT III**
**(Individual Claims of Plaintiffs Howard & Taylor)**
**<u>FLSA RETALIATION</u>**

98. Plaintiffs Howard and Taylor re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

99. Plaintiffs Howard and Taylor ("These Plaintiffs") both complained to their manager, Danny Glass, repeatedly by at least early March 2023 up until the day they were forced to leave their employment with Defendant that Defendant was not paying them correctly including not paying for all hours worked.

100. Plaintiff Howard also made Defendant's HR manager, Josh Wilcox, aware that Defendant was not paying for all required hours or all commissions earned.

101. Wilcox promised to get back to Howard but never did.

102. Danny Glass told These Plaintiffs that they should stop complaining if they wanted to be on his "good side."

103. In retaliation for These Plaintiffs' complaints about not being paid properly in compliance with the FLSA, Defendant delayed putting these Plaintiffs in proper work trucks, assigned them less desirable and less profitable jobs, berated them professionally and personally in front of co-workers, scrutinized and criticized their work, cut hours from payroll, and refused to pay them certain commissions.

104. These Plaintiffs' complaints to Mr. Glass constituted the assertion of protected rights under the anti-retaliation provision of the FLSA.

105. As a result of Defendant's illegal retaliation, both Plaintiffs endured harassment, defamation of their character, a more challenging and stressful work environment, lost days of work/pay from being ill, reduced pay that led to unpaid bills and reduction in credit score, reduced self-esteem and confidence, inability to care for family including new born child, loss of personal time looking for a new job and loss of benefits having to change jobs.

106. Defendants have willfully and deliberately discriminated and retaliated against These Plaintiffs for asserting their FLSA minimum wage and overtime rights, in violation of Plaintiffs' rights under 29 U.S.C. § 215(a).

107. As a direct and proximate result of Defendants' willful retaliatory conduct, These Plaintiffs have been damaged and are entitled to the relief set forth in the Prayer for Relief below.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, individually and behalf of others similarly situated, pray that this Court grant relief in their favor, and against Defendant, as follows:

(a) An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA Collective claims set forth in Count I;

(b) An Order certifying this action as a class action (for the Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

(c) An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all potential Collective members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including by text and other manners that are reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

(d) An Order designating Plaintiffs as representatives of the proposed FLSA Collective, the Class and undersigned counsel as Class counsel for the same;

(e) An Order tolling the statute of limitations for Collective members who timely join the litigation;

(f)   An order declaring Defendant violated the FLSA and did so willfully;

(g) An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Class by failing to pay them for each hour they worked at a pre-established (contractual) hourly rate;

(g) Judgment against Defendants in an amount equal to Plaintiffs' and all opt-in Plaintiffs' unpaid back wages for a period of three years and an equal amount in liquidated damages on Count I;

(h) Judgment against Defendant in an amount equal to Plaintiffs and all Class members' unpaid back wages, including unpaid commissions, for a period of four years plus interest and other consequential damages resulting from Defendant's failure to pay contractually agreed upon wages on Count II.

(i) Judgment against Defendant for compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiffs Howard and Taylor's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages on Count III;

(j) An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing and pursuing this action as provided by statute;

(k) An Order awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Dane Steffenson*
DANE STEFFENSON
GA Bar no. 677780
Dane@TheDaneLawFirm.com

**DANE LAW LLC**
3575 Piedmont Rd.
Suite L120
Atlanta, GA 30305
(404) 919-9719