# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DAVARD TURNER,** ) | |
| ) | |
| *Plaintiff*, ) | **Civil Action File No.** |
| ) | |
| v. ) | |
| ) | |
| **RELISH LABS LLC** ) | |
| ) | **JURY TRIAL DEMANDED** |
| *Defendant*. ) | |
| ) | |
| ) | |

## COMPLAINT

Davard Turner ("Plaintiff") files this Complaint against Defendant Relish Labs LLC ("Relish" or "Defendant"). Plaintiff respectfully shows this Court as follows:

## INTRODUCTION

1. This action is for sexual harassment and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"), and related state-law claims. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

2. Plaintiff's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3. Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia for assault, battery, negligent supervision, and negligent retention.

4. Venue is appropriate in this Court as upon information and belief the events complained of herein occurred within the geographic boundaries of the U.S. District Court for the Northern District of Georgia and upon information and belief all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

5. Plaintiff is a resident of the State of Georgia.

6. Defendant is a for-profit company registered to conduct business in the state of Georgia.

7. Defendant transacts business in the Northern District of Georgia.

8. Defendant is subject to this Court's jurisdiction. Defendant may be served through its registered agent if service of process is not waived:

Registered Agent Name: **CSC of Cobb County, Inc.**
Physical Address: **192 Anderson Street SE, Suite 125, Marietta, GA, 30060, USA**
County: **Cobb**

## ADMINISTRATIVE PROCEEDINGS

9. On September 6, 2022, Plaintiff filed a timely charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC"). A true and accurate copy of the Charge is attached hereto as Exhibit "A" and is incorporated herein.

10. On March 20, 2023, Plaintiff received a notice of right to sue from the EEOC. A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit "B" and is incorporated herein.

11. Plaintiff has exhausted his administrative remedies prerequisite to the filing this suit pursuant to Title VII.

12. This lawsuit has been filed within 90 days of Plaintiff's receipt of his notice of right to sue.

## STATEMENT OF FACTS

13. Relish Labs LLC is a meal kit delivery services that provides fresh, pre-portioned ingredients and easy-to-follow recipes throughout the United States.

14.  During all time relevant to this lawsuit, Defendant employed more than fifteen (15) employees for each working day during each of twenty (20) or more calendar weeks during Plaintiff's employment.

15.  Relish is subject to the anti-discrimination and anti-retaliation provisions of Title VII.

16.  Plaintiff is male.

17.  Plaintiff was an employee of Relish at all times material to this Complaint.

18.  Plaintiff began employment with Relish on or about January 1, 2022.

19.  Plaintiff was assigned to Relish's Lithonia, Georgia plant.

20.  Plaintiff's wife was also employed by Relish and assigned to the Lithonia, Georgia plant.

21.  Plaintiff worked with another employee named Jessica, who was a supervisor in Quality Control.

22.  During Plaintiff's tenure with Defendant, Jessica began to sexually harass Plaintiff.

23.  For example, one day, Plaintiff and his wife were working with a lead named Mr. Odell.

24.  Early during their shift, Plaintiff's wife asked to go to the restroom.

25. While Plaintiff's wife was in the restroom, Jessica approached Plaintiff in a sexually suggestive manner and began to stroke Plaintiff's hand and arm.

26. Plaintiff told Jessica to stop and not to touch him in that manner again and then walked away from Jessica. Jessica began to follow him and stare at him in a manner that continued to make Plaintiff uncomfortable.

27. Plaintiff believed Jessica to be intoxicated.

28. Jessica only stopped her behavior when Plaintiff's wife returned to the floor from the restroom.

29. Later the same day, Jessica approached the end of the table where Plaintiff and his wife were working, and Jessica was staring and snarling at Plaintiff's wife.

30. Plaintiff's wife was then called to the HR office where she was told by Craig Moore, the HR Director, and Jessica's supervisor that Jessica had complained that she felt uncomfortable with Plaintiff's wife. When questioned further, Jessica could not explain why she was uncomfortable.

31. Plaintiff's wife explained to Mr. Moore and Jessica's supervisor what happened previously between Plaintiff and Jessica.

32. After the meeting with Mr. Moore and Jessica's supervisor, Plaintiff's wife met with Mark, the plant manager.

33. Plaintiff's wife explained again that she had no issue with Jessica except that Jessica was behaving in an inappropriate manner with Plaintiff her husband.

34. Plaintiff felt that Jessica was trying to get Plaintiff's wife in trouble since Plaintiff had rebuffed her sexual advances.

35. On another occasion, Plaintiff and his wife were stationed at a table with a lead named Anika. Anika moved Plaintiff from his workstation to a position further away from his wife.

36. At that point, a young female QA employee who had been trained by Jessica, approached Plaintiff, and touched him in a sexually suggestive manner by sticking her hands underneath his arm and rubbing his chest.

37. Plaintiff immediately put his hands up in the air and said, "What are you doing? Don't touch me."

38. The quality control tech replied, "Calm down, I can touch you. There's nothing wrong."

39. Plaintiff continued to say, "Stop touching me. Use your words. Stop touching me," and the quality control tech replied by yelling at him, saying, "I can touch you. You're not that special."

40. Other co-workers then had to pull the quality control tech away from the floor.

41. Plaintiff was then called into Mr. Moore's office to explain what happened where he again complained of sexual harassment.

42. Mr. Moore stated he would review the camera footage of the incident.

43. When Plaintiff returned to the floor, the quality control tech again approached him, rubbed his arm, and said, "I'm sorry, baby. I'm sorry I touched you."

44. Plaintiff again raised his hands and said, "Keep your hands off of me. Stop touching me."

45. Mr. Moore came to the floor as this was happening and told Mr. Turner that he didn't need to worry about the quality control tech anymore.

46. The quality control tech was escorted off of the floor.

47. On another occasion, when Plaintiff told his supervisor and a lead that he needed to go to the restroom.

48. As he left the table, a female coworker grabbed his genitals.

49. Plaintiff went directly to HR and spoke with Kim and Carl, making another verbal complaint about the sexual harassment he was facing.

50. As detailed above, Plaintiff verbally complained about the sexual harassment on numerous occasions.

51. After his repeated complaints, Plaintiff continued to be harassed and bullied on a daily basis by both his peers and supervisors in retaliation for his complaints.

52. For example, Plaintiff's leads would put him alone in areas that were usually occupied by two (2) technicians, increasing his workload unreasonably.

53. Further, on shipping days, the shift manager, Jaylin, would direct employees to remove trays from Plaintiff's area, which meant that he had to leave his station and grab extra trays more often than other employees, decreasing his productivity.

54. On meal bagging days, the leads and/or supervisors would add extra "starters" on Plaintiff's table. Usually a table would only have one (1) starter, but they would often put two (2) or three (3) starters with Plaintiff, making it unreasonable for Plaintiff to keep up.

55. Plaintiff recalls complaining about the retaliatory treatment at least twice a week.

56. In addition, other employees would regularly make false complaints about Plaintiff.

57. Mr. Moore would investigate the incidents, find that Plaintiff did nothing wrong, and apologize to Plaintiff, stating he didn't understand why it kept happening.

58. Mr. Moore told Plaintiff to complain every time he was harassed, and Plaintiff replied, "Do you want me here every day, Craig? Because it's happening every day."

59. The harassment and retalition continued for months, culminating in an incident in late October, 2022.

60. On that day, Jaylin, the shift manager, confronted Plaintiff about his productivity on a shipping day.

61. Plaintiff tried to explain to Jaylin that other meal runners were taking his trays (a complaint Plaintiff had made several times to his lead, Teddy, as well as other supervisors and managers).

62. Jaylin then said to Plaintiff that she did not care about that and that he needed to get more trays, and she identified another supervisor that she wanted Plaintiff to get more trays from.

63. Plaintiff followed this instruction and went to get the trays from that supervisor.

64. Jaylin followed him and said, "Why are you not listening?"

65. Plaintiff was confused because he was doing exactly what Jaylin asked of him.

66. Jaylin then took Plaintiff to Mark's office, where there were multiple people, including HR representatives.

67. Jaylin began to loudly tell Mark that Plaintiff wasn't listening to what she was asking him to do and accused him of not doing his job.

68. Mark had to continuously ask Jaylin to calm down because of her agitated state.

69. Mark told Plaintiff to return to the floor.

70. Jaylin overheard this and said to Mark, "No, you need to do something. I want something."

71. Mark replied, "For what, Jaylin?"

72. Jaylin again stated that she wanted something, and that Mark should send Plaintiff home for the day.

73. Plaintiff was sent home.

74. When Plaintiff returned to work a couple of days later, he was not able to clock in.

75. He spoke to Mr. Moore and was informed that a termination email was sent to him on October 31, 2022.

76. The reason for his termination as stated in the email Plaintiff received was that he was insubordinate.

77. Not only was Plaintiff never insubordinate, but he also repeatedly complained about both the sexual harassment and bullying he faced that was creating a hostile work environment.

78. Relish had no basis to fire Plaintiff except for retaliation from his complaints, and insubordination was a merely pretextual justification for his termination.

## COUNT I
## Sexual Harassment in Violation of Title VII

79. Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

80. As a man, Plaintiff is a member of a protected group.

81. As detailed above, throughout his employment with Relish, Plaintiff was subjected to sexual harassment and a hostile work environment by at least three other employees.

82. All the above conduct by was unwelcome, offensive, and intimidating to Plaintiff as well as open and obvious in the workplace.

83. Plaintiff complained that the sexually harassing conduct was unwelcome.

84. At all times relevant to this action, Relish knew from past complaints or should have known of the sexual harassment endured by Plaintiff as well as the existence of a sexually harassing work environment, and they failed to meaningfully remedy the workplace environment to protect Plaintiff.

85. Relish willfully and wantonly disregarded Plaintiff's rights. Additionally, Relish's discrimination and retaliation against Plaintiff was undertaken in bad faith and constitutes unlawful, intentional gender discrimination in violation of Title VII.

86. As a result of Relish's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities. Plaintiff seeks all damages available.

87. Plaintiff seeks all remedies available by law or equity.

## COUNT II
### Retaliation in Violation of Title VII

88. Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

89. Plaintiff engaged in protected activities protected under Title VII by making complaints of sexual harassment.

90. As a result of his complaints of sexual harassment, Plaintiff suffered adverse employment actions including but not limited to being terminated.

91. As a direct and proximate result of Relish's unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation because he exercised his rights under Title VII.

92. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith.

93. As a result, Plaintiff is entitled to both equitable and monetary relief in all forms provided by law.

94. Plaintiff seeks all remedies available to him by law or equity.

## COUNT III
### Assault and Battery

78. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

79. At least three employees -- Jessica, the quality control technician, and the female that grabbed his genitals -- touched Plaintiff without his consent.

80. This behavior, as detailed above, constitutes civil assault and battery.

81. Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

## COUNTS IV AND V
### Negligent Retention and Negligent Supervision

82. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

83. At all times material to this Complaint, Relish owed a legal duty of care toward their employees to exercise reasonable care and prudence in the hiring, supervision, and retention of its employees.

84. By and through the conduct, actions, and malfeasance cited above, Relish breached the above-described legal duties of care that it owed to Plaintiff.

85. Relish knew that multiple employees were subjecting Plaintiff to sexually harassing comments and touchings without his consent.

86. Relish failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment.

87. Because of Relish's negligent supervision and retention, Relish ratified the harassers' behavior.

88. Because of Relish's negligent supervision and retention, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

**WHEREFORE**, Plaintiff demands an arbitration and the following relief:

(a)  cause process to issue;

(b) issue a declaratory judgment that Relish's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under Title VII and state law;

(c) grant Plaintiff a permanent injunction enjoining Relish, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under Title VII or because of their participation in this lawsuit;

(d) grant Plaintiff judgment in her favor and against each Defendant under all Counts of this Complaint;

(e) order Defendant to make the Plaintiff whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(f) grant to Plaintiff compensatory and punitive damages for Defendant's willful violations of Title VII;

(g) grant to Plaintiff reasonable attorney's fees together with any and all other costs associated with this action as provided by Title VII and state law violations; and

(h) grant Plaintiff all other damages including nominal damages, available by law.

(i) grant such additional relief as this court deems proper and just.

Respectfully submitted on this 19th day of June, 2023.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
Attorney for Plaintiff

THE MIXON LAW FIRM
3344 Peachtree Street, Suite 800
Atlanta, Georgia 30326
Phone: 770-955-0100
steve@mixon-law.com