UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Arriston Worthy,<br><br>                   Plaintiff,<br><br>  -against-<br><br>Experian Information Solutions, Inc.;<br>TransUnion, LLC;<br>Chrysler Capital LLC,<br><br>                   Defendant(s). | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Arriston Worthy, by and through counsel, as for this Complaint against Defendants Experian Information Solutions, Inc. ("Experian"); TransUnion, LLC ("TransUnion"); (Experian and TransUnion each a "Bureau" and collectively "Bureaus"); and Chrysler Capital LLC ("Chrysler" or "Furnisher"), respectfully sets forth, complains, and alleges, upon information and belief, the following:

1.      Plaintiff brings this action for damages arising from the Defendants' violations of 15 U.S.C. § 1681 et seq., the Fair Credit Reporting Act ("FCRA").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. § 1681p et seq.

1

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred here, the Plaintiff resides here, and the Defendants transact business here.

## PARTIES

4. Plaintiff is a resident of the State of Georgia, County of Henry.

5. At all times material hereto, Plaintiff was a "consumer" as defined under 15 U.S.C. § 1681a (c).

6. Defendant Experian Information Solutions, Inc., is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

7. Experian is an Ohio corporation registered to do business in this State.

8. Experian may be served with process c/o CT Corporation System, 289 S Culver St, Lawrenceville, GA, 30046-4805.

9. Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

10. At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

11. Defendant TransUnion LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

12. Defendant TransUnion is a Delaware corporation registered to do business in this State.

13. TransUnion may be served with process c/o The Prentice-Hall Corporation System, Inc., 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

14. TransUnion is a consumer reporting agency regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681a(p) to third parties.

15. At all times material hereto, TransUnion disbursed such consumer reports to third parties under a contract for monetary compensation.

16. Defendant Chrysler is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

17. Chrysler may be served with process c/o Corporation Process Company, 2180 Satellite Boulevard, Suite 400, Duluth, GA, 30097.

## FACTUAL ALLEGATIONS

18. Plaintiff incorporates the above allegations as if set forth here.

19. Some time prior to December 2022, Plaintiff realized there was an account appearing on his credit report that did not belong.

20. Later it became clear to Plaintiff that more than one account that was not his was appearing on his credit report

21. The account alleged to belong to Plaintiff was a Chrysler Capital auto loan, account number beginning with 300002… ("Chrysler Account").

22. The total debt for the Chrysler Account is $38,962.

23. The Chrysler Account was being reported on Plaintiff's credit reports with each Bureau.

24. The Account did not belong to Plaintiff.

25. Plaintiff did not request nor received an auto loan from Chrysler.

26. Plaintiff is not and has never been in possession of the vehicle and has not benefited from this transaction.

27. The Account is false.

28. Identity theft fraud occurs when someone uses another consumer's identification information to establish credit without authority.

29. Plaintiff is a victim of identity theft.

30. Plaintiff had recently applied for a job and provided all his personal information in relation to obtaining employment.

31. Upon information and belief Plaintiff's personal information was then improperly used to open this account without Plaintiff's permission.

32. This identity thief seems to have opened other accounts in Plaintiff's name.

33. This person apparently obtained Plaintiff's personal information from his job application and used it to open this auto loan in Plaintiff's name.

34. Plaintiff did not authorize anyone to do so.

35. It appears that others have been similarly victimized by the same thief.

36. Upon information and belief, the thief has been arrested previously in other fraudulent activities.

37. It appears that the thief is a sophisticated and experienced con-artist who has similarly victimized others.

38. Plaintiff reported this identity theft crime to law enforcement.

39. In July 2020, Plaintiff filed an incident report with the DeKalb County Police Department ("Police Report").

40. The Report number is 20-050586.

41. At the time Plaintiff was unaware of the full impact of the crimes upon him

42. Plaintiff was not aware of all the fraudulent accounts opened without his knowledge but in his name.

43. Plaintiff confirmed to the police that he is a victim of the crime of identity theft.

44. Knowingly making false statement to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

45. Furnisher was reporting the Account to each Bureau.

46. Each Bureau was reporting the Account on Plaintiff's credit reports.

47. Upon receipt of notice of identity theft, each Bureau is required to block the disputed information pursuant to 15 U.S.C. § 1681c-2.

48. On or about December 29, 2022, Plaintiff disputed the Account to each Bureau ("Dispute").

49. In his Dispute, Plaintiff included a copy of the police report describing the identity theft, his social security information, and a copy of his identification.

50. A police report is acceptable proof of identity theft to block items in a consumer's credit report as disputed for being fraudulent.

51. Despite this, and subsequent to this, the Account remained on Plaintiff's credit report from each Bureau.

52. On information and belief, on date(s) better known to each Bureau, it issued credit reports concerning the Plaintiff that included the Account.

53. The information furnished by Chrysler and published by each Bureau was inaccurate.

54. Each Bureau is required to notify Furnisher of Plaintiff's dispute(s).

55. It appears and is therefore averred that each Bureau notified Furnisher of Plaintiff's dispute(s).

56. Upon receipt of the dispute of the Account by the Plaintiff from each Bureau, Furnisher failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed Account.

57. Had Furnisher done a reasonable investigation it would have been revealed to Furnisher that the Account is inaccurate.

58. A reasonable investigation by each Defendant would have revealed that the account is being incorrectly reported.

59. Despite the dispute by the Plaintiff that the information on his consumer report was inaccurate with respect to the disputed account, Defendants

did not evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not make an attempt to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate.

60. Each Defendant failed to review the information which confirmed that Plaintiff was correct.

61. Each Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the inaccurate information within 30 days of receiving Plaintiff's dispute letter.

62. Each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute to Furnisher or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

63. Each Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report.

64. Furnisher violated 15 U.S.C. § 1681s-2 (b) by failing to fully and properly investigate Plaintiff's dispute(s).

65. Each Bureau further violated 15 U.S.C. § 1681c-2 (a) (Block of information resulting from identity theft).

66. Furnishers' actions described herein violated 15 U.S.C. 1681s-2 (b).

67. Notwithstanding Plaintiff's efforts, Defendants continue to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

68. Each Defendant constructively knew the information was inaccurate.

69. Each Defendant was in possession of, or had the ability to obtain, evidence showing its reporting of the Account was inaccurate.

70. Had each Bureau enacted and followed reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report, the negative account information would not have appeared on Plaintiff's credit report.

71. Furnisher continued to furnish credit data which is inaccurate and materially misleading, and each Bureau's reporting of the above-referenced trade line continued to be inaccurate and materially misleading.

72. In response to Plaintiff's Dispute, Transunion even claimed it was ignoring his Dispute because it incredibly did not believe that Plaintiff made the dispute, but that someone else was sending in the Dispute.

73.     Not only was Plaintiff's ID stolen to open fraudulent accounts, but even the credit bureaus believed Plaintiff was no longer the owner of his own information.

74.     Chrysler's response was that it was "unable to confirm your claim of identity theft".

75.     However, that is a false standard and it should have promptly deleted the credit information from Plaintiff's credit reports.

## Damages

76.     Defendants' erroneous reporting affected and continued to affect Plaintiff's creditworthiness and credit score.

77.     As a result of Defendants' failure to comply with the FCRA, Plaintiff has been damaged.

78.     Plaintiff suffered damage to his reputation as it falsely appears as if he was delinquent on the Account.

79.     This false information was published to numerous third-parties.

80.     This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's lawful business, trade, or profession.

81.     The Plaintiff suffered damage, inter alia, by loss of credit, loss of money due to the loss of credit, loss of ability to purchase and benefit from credit, lost time, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of having fraudulent information on his credit report disseminated to others, and for credit denial and its after-effects.

82.     Plaintiff was denied funding opportunities, including refinancing home, due to Defendants' actions.

83.     Plaintiff's mortgage broker noted that Plaintiff's credit score from Equifax, whose credit report did not contain the Account, was significantly higher.

84.     Plaintiff also attempted to obtain personal loans from Sofi and Upgrade but was denied from both lenders due to the seriously delinquent Account.

85.     The only serious delinquency om Plaintiff's credit report if the fraudulent Chrysler Account.

86.     These denials and increased credit costs caused Plaintiff to suffer tangible and intangible losses of lack of available credit, and higher credit cost.

87.     Plaintiff suffered and continues to suffer due to Defendants' improper actions.

11

88. Plaintiff was emotionally distraught and damaged, had difficulty sleeping, and difficulty staying asleep.

## FIRST CAUSE OF ACTION
### (Violation of the FCRA as to each Bureau)

89. Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

90. This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

91. Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained or furnished concerning the Plaintiff.

92. Each Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

93. The FCRA has additional provisions that govern disputes based on alleged identity theft, yet each Bureau failed to comply with those provisions.

94. When Plaintiff alleged identity theft and sent a valid identity theft report that was filed with law enforcement, each Bureau was required to stop reporting the fraudulent information in the Plaintiff's credit report. See 15 U.S.C. §§ 1681c-2(a), 1681a(q)(4); 12 C.F.R. § 1022.3(i)(1).

95. The FCRA thus reflects congressional recognition that it is unreasonable for each Bureau not to block information that is contained in a credit report due to identity theft when the crime has been reported to law enforcement.

96. Each Bureau further violated 15 U.S.C. § 1681c-2(a) (Block of information resulting from identity theft) by failing to block information in Plaintiff's credit report after receiving the Dispute.

97. Each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the Dispute to Furnisher or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

98. Each Bureau has willfully and recklessly, or in the alternative negligently, failed to comply with the Act.

99. The failure of each Bureau to comply with the Act include but is not necessarily limited to:

a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

c) The failure to promptly and adequately investigate information which each Bureau had notice was inaccurate;

d) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

e) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau to delete;

f) Failing to block information in Plaintiff's credit report after Plaintiff identified it as information that resulted from identity theft;

g) Failing to promptly notify the furnisher of information identified by Plaintiff as information that resulted from identity theft;

h) The failure to take adequate steps to verify information the Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

      i) The failure to provide notice of a dispute to the Furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the Furnisher in response to a dispute.

100. As a result of the conduct, action and inaction of each Bureau, Plaintiff suffered damage as described above.

101. The conduct, action and inaction of each Bureau was willful rendering each Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

102. In the alternative, the conduct, action, and inaction of each Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

103. Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, an individual, demands judgment for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n.

### SECOND CAUSE OF ACTION
**(Violation of the FCRA as to Furnisher)**

104. Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

105. This is an action for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

106. Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

107. Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

108. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

109. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

110. Furnisher violated 15 U.S.C. § 1681s-2 (b) as described above, including, but not limited to, failing to fully and properly investigate the disputes of the Plaintiff, failing to review all relevant information regarding same, and

failing to correctly report results of an accurate investigation to the credit reporting agencies.

111.    Furnisher continued to report this account on the Plaintiff's credit report after being notified of his dispute(s) regarding the Account as described above.

112.    As a result of the conduct, action, and inaction of Furnisher, Plaintiff suffered damage as described above.

113.    The conduct, action, and inaction of Furnisher was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

114.    In the alternative, the conduct, action, and inaction of Furnisher was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

115.    Plaintiff is entitled to recover reasonable costs and attorney's fees from each Furnisher in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, an individual, demands judgment for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n.

## DEMAND FOR TRIAL BY JURY

116. Plaintiff demands a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a) For actual damages provided and pursuant to 15 U.S.C. § 1681o (a) be awarded for each negligent violation as alleged herein;

b) For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c) For statutory damages provided and pursuant to 15 U.S.C. § 1681n (a);

d) For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e) For punitive damages provided and pursuant to 15 U.S.C. § 1681n (a)(2);

f) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n (a)(3), 15 U.S.C. § 1681o (a)(2) and 15 U.S.C. § 1640(a)(3);

g) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:  June 20, 2023

                  <u>*s/ Misty Oaks Paxton*</u>
                  Misty Oaks Paxton, Esq.
                  3895 Brookgreen Point
                  Decatur, GA 30034
                  P: (405) 529-6257
                  F: (775) 320-3698
                  attyoaks@yahoo.com

                  Stein Saks, PLLC
                  <u>*s/ Eliyahu Babad*</u>
                  Eliyahu Babad, Esq.
                  One University Plaza, Suite 620
                  Hackensack, NJ 07601
                  (201) 282-6500 ext. 121
                  EBabad@SteinSaksLegal.com
                  *Pending Admission Pro Hac Vice*

                  *Attorneys for Plaintiff*