# EXHIBIT 1

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                    EPAS ID: PAT4340495
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| JAMES MORRISON | 10/30/2014 |
| DANIEL ORLOW | 10/30/2014 |
| DAVID MANPEARL | 10/30/2014 |
| KENNETH WHITE | 05/06/2015 |
| BENJAMIN SCOTT STAHLHOOD II | 10/30/2014 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | GAME SPORTS NETWORK, INC. |
| Street Address: | 880 THIRD AVENUE, 6TH FLOOR |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 14847795 |

**CORRESPONDENCE DATA**

**Fax Number:**          (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 6174439292 |
| Email: | dderamo@sunsteinlaw.com |
| Correspondent Name: | JEFFREY T. KLAYMAN |
| Address Line 1: | 125 SUMMER STREET |
| Address Line 2: | SUNSTEIN KANN MURPHY & TIMBERS LLP |
| Address Line 4: | BOSTON, MASSACHUSETTS 02110 |

| ATTORNEY DOCKET NUMBER: | 4097/1004 |
|---|---|
| NAME OF SUBMITTER: | JEFFREY T. KLAYMAN |
| SIGNATURE: | /Jeffrey T. Klayman, #39,250/ |
| DATE SIGNED: | 03/28/2017 |

**Total Attachments: 12**

source=DD40971004AZ#page1.tif
source=DD40971004AZ#page2.tif
source=DD40971004AZ#page3.tif
source=DD40971004AZ#page4.tif
source=DD40971004AZ#page5.tif
source=DD40971004AZ#page6.tif
source=DD40971004AZ#page7.tif
source=DD40971004AZ#page8.tif
source=DD40971004AZ#page9.tif
source=DD40971004AZ#page10.tif
source=DD40971004AZ#page11.tif
source=DD40971004AZ#page12.tif

<u>ASSIGNMENT</u>

<u>ASSIGNOR</u>:    James Morrison
        Kenneth White
        David Manpearl
        Benjamin Scott Stahlhood, II
        Alan Pavlish
        Daniel Orlow
        Charles Goldman
        Joseph M. Brennan, Jr.

<u>ASSIGNEE</u>:    Game Sports Network, Inc.
        880 Third Avenue, 6th floor
        New York, NY 10022

<u>STATE OF
INCORPORATION</u>:  Delaware

<u>INVENTION</u>:   Method and System for Presenting and Operating a Skill-Based
        Activity

<u>ATTORNEY DOCKET</u>: 4097/1001

<u>SERIAL NO</u>:   62/047,743

<u>FILING DATE</u>:   September 8, 2014

   Assignor is a joint inventor of the above invention (the "Invention") described in a
United States patent application (the "Application") bearing the above attorney docket
number and having as a title the above name for the Invention.  The Application has a Patent
and Trademark Office filing date and serial number as indicated above, or if no filing date
and serial number are shown, has a Declaration executed by Assignor contemporaneously
with this Assignment.

   For valuable consideration, receipt of which is acknowledged, each Assignor hereby
assigns to Assignee (which term shall include Assignee's successors and assigns), all of
Assignor's right, title and interest in the Invention, all improvements therein, the Application

04097/01001 2194521.1

Page 1 of **6**

PATENT
REEL: 041767 FRAME: 0172

and all priority rights arising therefrom, and any patents, and any reissues and extensions thereof, which issue in any country upon any patent applications which correspond with any of the following:  the Application, any divisional, continuation-in-whole, or substitute United States application which is based on the Application; or any continuation-in-part United States application (including divisions, continuations-in-whole or -in-part, and substitutions thereof or therefor) based in-part on any of the above described applications.

Each Assignor further agrees that such Assignor and Assignor's heirs and legal representatives will, without further consideration, cooperate with Assignee in the prosecution of all of the above applications, execute, verify, acknowledge and deliver all such further papers, including applications for patents and for reissues and extensions therefor, and instruments of assignment and transfer thereof, and will communicate any facts known to Assignor relating to the Invention, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee.  Each Assignor further agrees that such Assignor will, without further compensation to Assignor during the term of such Assignor's employment by Assignee and thereafter for reasonable compensation as determined by Assignee, perform such other acts as may be reasonably required when requested by Assignee, including attending depositions, preparing and executing declarations and affidavits and testifying as a witness, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee.

I hereby authorize and request Sunstein Kann Murphy & Timbers LLP to supply any missing patent/application identification information or correct any errors in the patent/application identification information provided above, whether discovered prior to or after recordation.

04097/01001 2194521.1

Page 2 of 6

IN WITNESS WHEREOF, each Assignor hereby executes this instrument on the date set forth below.

Date: _OCTOBER 30th 2014_ _____
James Morrison, Assignor

STATE OF NEVADA

County of _CLARK_, ss.                    _OCTOBER 30_, 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared James Morrison, proved to me through satisfactory evidence of identification, which consisted of _CALIFORNIA DRIVERS LICENSE_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_Christine J. Power_
Notary Public

My commission expires: _MAY 11, 2017_

Seal

CHRISTINE J. POWER
Notary Public, State of Nevada
Appointment No. 09-10136-1
My Appt. Expires May 11, 2017

Date: _____          _____
Kenneth White, Assignor

STATE OF NEVADA

County of _____, ss.                    _____, 2014

On this ____ day of _____, 2014, before me, the undersigned notary public, personally appeared Kenneth White, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal                                   _____
Notary Public

My commission expires:

04097/01001 2194521.1

Page 3 of 6

Date: _10-30-14_

_____
David Manpearl, Assignor

STATE OF ~~CALIFORNIA~~ *NEVADA* OR

County of *CLARK* , ss.                    *OCTOBER 30* , 2014

On this *30th* day of *OCTOBER*, 2014, before me, the undersigned notary public, personally appeared David Manpearl, proved to me through satisfactory evidence of identification, which consisted of *CALIF. DRIVER'S LICENSE* , to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

*Christine J. Power*
Notary Public

My commission expires: *MAY 11, 2017*

Seal



Date: _10/30/14_

_____
Benjamin Scott Stahlhood II , Assignor

STATE OF ~~FLORIDA~~ *NEVADA* OR

County of *CLARK* , ss.                    *OCTOBER 30* , 2014

On this *30th* day of *OCTOBER*, 2014, before me, the undersigned notary public, personally appeared Benjamin Scott Stahlhood, proved to me through satisfactory evidence of identification, which consisted of *FLORIDA DRIVER'S LICENSE* to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

*Christine J. Power*
Notary Public

My commission expires: *MAY 11, 2017*

Seal



04097/01001 2194521.1

Page **4** of **6**

Date: 10-30-14

Alan Pavlish, Assignor

NEVADA (Cy)

STATE OF ~~CALIFORNIA~~

County of CLARK, ss.                                    October 30th 2014

On this 30th day of October, 2014, before me, the undersigned notary public, personally appeared Alan Pavlish, proved to me through satisfactory evidence of identification, which consisted of CALIF. DRIVER'S LICENSE, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.



Seal

Notary Public

My commission expires: MAY 11, 2017

---

Date: 10.30.14

Dan Orlow, Assignor

NEVADA (ep)

STATE OF ~~NEW YORK~~

County of CLARK, ss.                                    October 30, 2014

On this 30th day of October, 2014, before me, the undersigned notary public, personally appeared ~~Alan~~ Dan Orlow, proved to me through satisfactory evidence of identification, which consisted of New York Driver's License, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

Notary Public

My commission expires:



04097/01001 2194521.1

Page 5 of 6

PATENT
REEL: 041767 FRAME: 0176

Date: 11/4/14

_____
Charles Goldman, Assignor

STATE OF MASSACHUSETTS

County of NY , ss.                    11/4/2014

On this 4 day of *November* 2014, before me, the undersigned notary public, personally appeared Charles Goldman, proved to me through satisfactory evidence of identification, which consisted of *Drivers License MA* , to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

_____
Notary Public

My commission expires:

```
MATTHEW F CORDOVA
Notary Public, State of New York
No. 01CO6277901
Qualified in Kings County
Commission Expires Mar. 18, 2017
```

Date: _____

_____
Joseph M. Brennan, Jr., Assignor

STATE OF VIRGINIA

County of          , ss.                    _____, 2014

On this ____ day of _____, 2014, before me, the undersigned notary public, personally appeared Joseph M. Brennan, Jr., proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

_____
Notary Public

My commission expires:

PATENT
REEL: 041767 FRAME: 0177

(b)     Any suit, action or proceeding arising out of or relating to this Convertible Note, or any of the documents, agreements or transactions contemplated hereby or any action or proceeding to execute or otherwise enforce any judgment in respect of any breach under this Convertible Note or any document or agreement contemplated hereby may be brought by such party in any federal district court located in New York or any state court located in New York as such party may in its sole discretion elect, and by the execution and delivery of this agreement, the parties hereto irrevocably and unconditionally submit to the non-exclusive *in personam* jurisdiction of each such court, and each of the parties hereto irrevocably waives and agrees not to assert in any proceeding before any such court, by way of motion, as a defense or otherwise, any claim that it is not subject to the *in personam* jurisdiction of any such court.  In addition, each of the parties hereto irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of venue in any suit, action or proceeding arising out of or relating to this Convertible Note or any document, agreement or transaction contemplated hereby brought in any such court, and hereby irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in any inconvenient forum.

12.     **Notices**.  All notices and other communications required or permitted hereunder shall be in writing, shall be effective when given, and shall in any event be deemed to be given upon receipt or, if earlier, (a) five (5) days after deposit with the U.S. Postal Service or other applicable postal service, if delivered by registered or certified first class mail, postage prepaid, return-receipt requested, (b) upon delivery, if delivered by hand, (c) one (1) business day after the business day of deposit with Federal Express or similar overnight courier, freight prepaid, or (d) one (1) business day after the business day of email or facsimile transmission (with confirmation of receipt by the intended recipient), and shall be addressed as follows (or at such other address as a party may designate by ten (10) days advance written notice to the other party pursuant to the provisions above):

| If to the Holder: | Thomas Joyce |
|---|---|
| | 142 Goodwives River Road |
| | Darien, Connecticut  06820 |
| | Email: tom_joyce@mac.com |

| If to the Company: | Game Sports Network, Inc. |
|---|---|
| | 137 East 38th Street, 8E |
| | New York, New York 10016 |
| | Attention: Daniel K. Orlow, Vice President |
| | Email: do@linegamingcorp.com |

With a copy (which shall not constitute notice) to:
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Attention: Scott Towers, Esq.
Email: towerss@ballardspahr.com
Fax: 215.864.8999

6

DMEAST #20061862 v2

PATENT
REEL: 041767 FRAME: 0178

<u>ASSIGNMENT</u>

| | |
|---|---|
| <u>ASSIGNOR</u>: | James Morrison |
| | Daniel Orlow |
| | David Manpearl |
| | Kenneth White |
| | Greg Gorla |
| | Benjamin Scott Stahlhood, II |
| | |
| <u>ASSIGNEE</u>: | Game Sports Network, Inc. |
| | 880 Third Avenue, 6th floor |
| | New York, NY 10022 |
| | |
| <u>STATE OF</u><br><u>INCORPORATION</u>: | Delaware |
| | |
| <u>INVENTION</u>: | Method and System for Presenting and Operating a Skill-Based Activity |
| | |
| <u>ATTORNEY DOCKET</u>: | 4097/1003 |
| | |
| <u>SERIAL NO</u>: | 62/106,613 |
| | |
| <u>FILING DATE</u>: | January 22, 2015 |

Assignor is a joint inventor of the above invention (the "Invention") described in a United States patent application (the "Application") bearing the above attorney docket number and having as a title the above name for the Invention.  The Application has a Patent and Trademark Office filing date and serial number as indicated above, or if no filing date and serial number are shown, has a Declaration executed by Assignor contemporaneously with this Assignment.

For valuable consideration, receipt of which is acknowledged, each Assignor hereby assigns to Assignee (which term shall include Assignee's successors and assigns), all of Assignor's right, title and interest in the Invention, all improvements therein, the Application and all priority rights arising therefrom, and any patents, and any reissues and extensions thereof, which issue in any country upon any patent applications which correspond with any

Page **1** of **5**

**PATENT**<br>**REEL: 041767 FRAME: 0179**

of the following:  the Application, any divisional, continuation-in-whole, or substitute United States application which is based on the Application; or any continuation-in-part United States application (including divisions, continuations-in-whole or -in-part, and substitutions thereof or therefor) based in-part on any of the above described applications.

Each Assignor further agrees that such Assignor and Assignor's heirs and legal representatives will, without further consideration, cooperate with Assignee in the prosecution of all of the above applications, execute, verify, acknowledge and deliver all such further papers, including applications for patents and for reissues and extensions therefor, and instruments of assignment and transfer thereof, and will communicate any facts known to Assignor relating to the Invention, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee.  Each Assignor further agrees that such Assignor will, without further compensation to  Assignor during the term of such Assignor's employment by Assignee and thereafter for reasonable compensation as determined by Assignee, perform such other acts as may be reasonably required when requested by Assignee, including attending depositions, preparing and executing declarations and affidavits and testifying as a witness, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee.

I hereby authorize and request Sunstein Kann Murphy & Timbers LLP to supply any missing patent/application identification information or correct any errors in the patent/application identification information provided above, whether discovered prior to or after recordation.

PATENT
REEL: 041767 FRAME: 0180

IN WITNESS WHEREOF, each Assignor hereby executes this instrument on the date set forth below.

Date: _____          _____
                                     James Morrison, Assignor

STATE OF NEVADA

County of _____, ss.                              _____, 2015

On this ____ day of _____, 2015, before me, the undersigned notary public, personally appeared James Morrison, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

                                     _____
Seal                                 Notary Public

                                     My commission expires:

Date: _____          _____
                                     Daniel Orlow, Assignor

STATE OF NEW YORK

County of _____, ss.                              _____, 2015

On this ____ day of _____, 2015, before me, the undersigned notary public, personally appeared Daniel Orlow, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

                                     _____
Seal                                 Notary Public

                                     My commission expires:

04097/01003 2245068.1

PATENT
REEL: 041767 FRAME: 0181

Date: _____

David Manpearl, Assignor

STATE OF CALIFORNIA

County of _____, ss.                          _____, 2015

On this ____ day of _____, 2015, before me, the undersigned notary public,
personally appeared David Manpearl, proved to me through satisfactory evidence of
identification, which consisted of _____, to be the person
whose name is signed on the preceding or attached document, and acknowledged to
me that he/she signed it voluntarily for its stated purpose.

Seal                                    Notary Public

                                        My commission expires:

Date: 5/<15

                                        Kenneth White, Assignor

STATE OF NEVADA

County of ____, ss.                          ____, 2015

On this ___ day of _____, 2015, before me, the undersigned notary public,
personally appeared Kenneth White, proved to me through satisfactory evidence of
identification, which consisted of ____ _____, to be the person
whose name is signed on the preceding or attached document, and acknowledged to
me that he/she signed it voluntarily for its stated purpose.

Seal                                    Notary Public

LAURA GONZALES
Notary Public, State of Nevada
No. 06-5246-1
My Appt. Exp. Sept. 10, 2016

                                        My commission expires 9/10/16

Page 4 of 5

Date: _____                    _____
                                                Greg Gorla, Assignor

STATE OF NEVADA

County of _____, ss.                                  _____, 2015

On this _____ day of _____, 2015, before me, the undersigned notary public, personally appeared Greg Gorla, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal                                            _____
                                                Notary Public

                                                My commission expires:

Date: _____                    _____
                                                Benjamin Scottt Stahlhood II , Assignor

STATE OF FLORIDA

County of _____, ss.                                  _____, 2015

On this _____ day of _____, 2015, before me, the undersigned notary public, personally appeared Benjamin Scottt Stahlhood, II, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal                                            _____
                                                Notary Public

                                                My commission expires:

RECORDED: 03/28/2017

PATENT
REEL: 041767 FRAME: 0183

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT5515719

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | CHANGE OF NAME |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| GAME SPORTS NETWORK, INC. | 06/15/2017 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | AVAAGO, INC. |
| Street Address: | 1209 ORANGE STREET |
| City: | WILMINGTON |
| State/Country: | DELAWARE |
| Postal Code: | 19801 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Application Number: | 14847795 |

### CORRESPONDENCE DATA

**Fax Number:**    (617)443-0004
*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| **Phone:** | 6174439292 |
| **Email:** | dderamo@sunsteinlaw.com |
| **Correspondent Name:** | WENDY J. DEMORACSKI |
| **Address Line 1:** | 125 SUMMER STREET |
| **Address Line 2:** | SUNSTEIN KANN MURPHY & TIMBERS LLP |
| **Address Line 4:** | BOSTON, MASSACHUSETTS 02110 |

| ATTORNEY DOCKET NUMBER: | 4502/1004 |
|---|---|
| NAME OF SUBMITTER: | WENDY J. DEMORACSKI |
| SIGNATURE: | /Wendy J. Demoracski, #76,185/ |
| DATE SIGNED: | 05/09/2019 |

**Total Attachments: 17**
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page1.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page2.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page3.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page4.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page5.tif

source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page6.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page7.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page8.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page9.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page10.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page11.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page12.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page13.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page14.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page15.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page16.tif
source=DD45021004Change_of_Name_GAME_SPORTS_NETWORK_INC_to_AVAAGO_INC#page17.tif



# Delaware

### The First State

Page 1

    *I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "GAME SPORTS NETWORK, INC.", CHANGING ITS NAME FROM "GAME SPORTS NETWORK, INC." TO "AVAAGO, INC.", FILED IN THIS OFFICE ON THE NINTH DAY OF AUGUST, A.D. 2017, AT 4:56 O`CLOCK P.M.*

    *A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.*

Jeffrey W. Bullock, Secretary of State

4975497  8100
SR# 20175652931

Authentication: 203036744
Date: 08-10-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

**PATENT
REEL: 049146 FRAME: 0437**

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:56 PM 08/09/2017
FILED 04:56 PM 08/09/2017
SR 20175652931 - File Number 4975497

## GAME SPORTS NETWORK, INC.

## RESTATED CERTIFICATE OF INCORPORATION

(Pursuant to Sections 242 and 245 of the
General Corporation Law of the State of Delaware)

Game Sports Network, Inc., a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware (the "**General Corporation Law**"), does hereby certify as follows.

1.      The name of this corporation is Game Sports Network, Inc. and that this corporation was originally incorporated pursuant to the General Corporation Law on April 29, 2011 under the name Line Gaming Holdings Corp.

2.      The Board of Directors of this corporation duly adopted resolutions proposing to amend and restate the Certificate of Incorporation of this corporation, declaring said amendment and restatement to be advisable and in the best interests of this corporation and its stockholders, and authorizing the appropriate officers of this corporation to solicit the consent of the stockholders therefor, which resolution setting forth the proposed amendment and restatement is as follows.

RESOLVED, that the Certificate of Incorporation of this corporation be amended and restated in its entirety to read as set forth on Exhibit A attached hereto and incorporated herein by this reference.

3.      Exhibit A referred to above is attached hereto as Exhibit A and is hereby incorporated herein by this reference. This Restated Certificate of Incorporation was approved by the holders of the requisite number of shares of this corporation in accordance with Section 228 of the General Corporation Law.

4.      This Restated Certificate of Incorporation, which restates and integrates and further amends the provisions of this corporation's Certificate of Incorporation, has been duly adopted in accordance with Sections 242 and 245 of the General Corporation Law.

**IN WITNESS WHEREOF**, this Restated Certificate of Incorporation has been executed by a duly authorized officer of this corporation on June 15, 2017.

By: /s/ Marie Alexander
Marie Alexander, Chief Executive Officer

134938982 v2

## Exhibit A

## AVAAGO, INC.

## RESTATED CERTIFICATE OF INCORPORATION

### ARTICLE I:  NAME.

The name of this corporation is Avaago, Inc. (the "*Corporation*").

### ARTICLE II:  REGISTERED OFFICE.

The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, City of Wilmington, County of New Castle, 19801. The name of its registered agent at such address is The Corporation Trust Company.

### ARTICLE III:  DEFINITIONS.

As used in this Restated Certificate (the "*Restated Certificate*"), the following terms have the meanings set forth below:

"*Board*" means the board of directors of the Corporation.

"*Original Issue Price*" means $13.31 per share for the Series A Preferred Stock.

"*Requisite Holders*" means the holders of a majority of the outstanding shares of Preferred Stock (voting as a single class on an as-converted basis).

### ARTICLE IV:  PURPOSE.

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law.

### ARTICLE V:  AUTHORIZED SHARES.

The total number of shares of all classes of stock that the Corporation has authority to issue is 1,900,000 consisting of (a) 1,200,000 shares of Common Stock, par value $0.0001 (the "*Common Stock*") and (b) 700,000 shares of Preferred Stock, par value $0.0001 (the "*Preferred Stock*"). The Preferred Stock may be issued from time to time in one or more series, each of such series to consist of such number of shares and to have such terms, rights, powers and preferences, and the qualifications and limitations with respect thereto, as stated or expressed herein.  As of the effective date of this Restated Certificate, all shares of the Preferred Stock of the Corporation are hereby designated "*Series A Preferred Stock*".

**A.    COMMON STOCK**

The following rights, powers privileges and restrictions, qualifications, and limitations apply to the Common Stock.

1.    **General**.  The voting, dividend and liquidation rights of the holders of the Common Stock are subject to and qualified by the rights, powers and privileges of the holders of the Preferred Stock set forth in this Restated Certificate.

134938982 v2

PATENT
REEL: 049146 FRAME: 0439

**2.**     **Voting.**  The holders of the Common Stock are entitled to one vote for each share of Common Stock held at all meetings of stockholders (and written actions in lieu of meetings).  Unless required by law, there shall be no cumulative voting.  The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by (in addition to any vote of the holders of one or more series of Preferred Stock that may be required by the terms of the Restated Certificate) the affirmative vote of the holders of shares of capital stock of the Corporation representing a majority of the votes represented by all outstanding shares of capital stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law.

**B.**     **PREFERRED STOCK**

The following rights, powers and privileges, and restrictions, qualifications and limitations, shall apply to the Preferred Stock.  Unless otherwise indicated, references to "Sections" in this Part B of this Article V refer to sections of this Part B.

**1.**     **Liquidation, Dissolution, or Winding Up; Certain Mergers, Consolidations and Asset Sales.**

**1.1**     Payments to Holders of Preferred Stock.  In the event of any voluntary or involuntary liquidation, dissolution or winding up (a "***Liquidation Event***") of the Corporation or any Deemed Liquidation Event (as defined below), before any payment shall be made to the holders of Common Stock by reason of their ownership thereof, the holders of shares of Preferred Stock then outstanding must be paid out of the funds and assets available for distribution to its stockholders, an amount per share equal to the greater of (a) the Original Issue Price for such share of Preferred Stock, plus any dividends declared but unpaid thereon, or (b)  such amount per share as would have been payable had all shares of Preferred Stock been converted into Common Stock pursuant to Section 3 immediately prior to such liquidation, dissolution or winding up or Deemed Liquidation Event.  If upon any such liquidation, dissolution, or winding up or Deemed Liquidation Event of the Corporation, the funds and assets available for distribution to the stockholders of the Corporation are insufficient to pay the holders of shares of Preferred Stock the full amount to which they are entitled under this Section 1.1, the holders of shares of Preferred Stock will share ratably in any distribution of the funds and assets available for distribution in proportion to the respective amounts that would otherwise be payable in respect of the shares of Preferred Stock held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

**1.2**     Payments to Holders of Common Stock.  In the event of any Liquidation Event or Deemed Liquidation Event of the Corporation, after the payment of all preferential amounts required to be paid to the holders of shares of Preferred Stock as provided in Section 1.1, the remaining funds and assets available for distribution to the stockholders of the Corporation will be distributed among the holders of shares of Common Stock, pro rata based on the number of shares of Common Stock held by each such holder.

**1.3**     Deemed Liquidation Events.

**1.3.1**     Definition.  Each of the following events is a "***Deemed Liquidation Event***" unless the Requisite Holders elect otherwise by written notice received by the Corporation at least five days prior to the effective date of any such event:

(a)     a merger or consolidation in which (i) the Corporation is a constituent party or (ii) a subsidiary of the Corporation is a constituent party and the Corporation issues shares of its capital stock pursuant to such merger or consolidation, except any such merger or consolidation involving the Corporation or a subsidiary in which the shares of capital stock of the Corporation outstanding

- 2 -

PATENT
REEL: 049146 FRAME: 0440

immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for equity securities that represent, immediately following such merger or consolidation, a majority, by voting power, of the equity securities of (1) the surviving or resulting party or (2) if the surviving or resulting party is a wholly owned subsidiary of another party immediately following such merger or consolidation, the parent of such surviving or resulting party; *provided* that, for the purpose of this Section 1.3.1, all shares of Common Stock issuable upon exercise of options outstanding immediately prior to such merger or consolidation or upon conversion of Convertible Securities (as defined below) outstanding immediately prior to such merger or consolidation shall be deemed to be outstanding immediately prior to such merger or consolidation and, if applicable, deemed to be converted or exchanged in such merger or consolidation on the same terms as the actual outstanding shares of Common Stock are converted or exchanged; or

(b)     the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Corporation or any subsidiary of the Corporation of all or substantially all the assets of the Corporation and its subsidiaries taken as a whole, or, if substantially all of the assets of the Corporation and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, the sale or disposition (whether by merger or otherwise) of one or more subsidiaries of the Corporation, except where such sale, lease, transfer or other disposition is to the Corporation or one or more wholly owned subsidiaries of the Corporation.

1.3.2    Amount Deemed Paid or Distributed.  The funds and assets deemed paid or distributed to the holders of capital stock of the Corporation upon any such merger, consolidation, sale, transfer or other disposition described in this Section 1.3 will be the cash or the value of the property, rights or securities paid or distributed to such holders by the Corporation or the acquiring person, firm or other entity.  The value of such property, rights or securities shall be determined in good faith by the Board.

2.     **Voting.**

2.1    General.  On any matter presented to the stockholders of the Corporation for their action or consideration at any meeting of stockholders of the Corporation (or by written consent of stockholders in lieu of meeting), each holder of outstanding shares of Preferred Stock may cast the number of votes equal to the number of whole shares of Common Stock into which the shares of Preferred Stock held by such holder are convertible as of the record date for determining stockholders entitled to vote on such matter.  Fractional votes shall not be permitted and any fractional voting rights available on an as-converted basis (after aggregating all shares into which shares of Preferred Stock held by each holder could be converted) will be rounded down to the nearest whole number.  Except as provided by law or by the other provisions of this Restated Certificate, holders of Preferred Stock shall vote together with the holders of Common Stock as a single class on an as-converted basis, shall have full voting rights and powers equal to the voting rights and powers of the holders of Common Stock, and shall be entitled, notwithstanding any provision of this Restated Certificate, to notice of any stockholder meeting in accordance with the Bylaws of the Corporation.

2.2    Election of Directors.  The holders of record of the Corporation's capital stock, exclusively and voting together as a single class, shall be entitled to elect the total number of directors of the Corporation.  Any director elected as provided in the preceding sentence may be removed without cause by the affirmative vote of the holders of the shares of the Corporation's capital stock entitled to elect the director or directors, given either at a special meeting of the stockholders duly called for that purpose or pursuant to a written consent of stockholders.  At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the Corporation's capital stock entitled to elect the director constitutes a quorum for the purpose of electing the director.

134938982 v2

PATENT
REEL: 049146 FRAME: 0441

2.3     <u>Preferred Stock Protective Provisions</u>.  At any time when at least 25% of the initially issued shares of Series A Preferred Stock remain outstanding, the Corporation shall not, either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by law or the Restated Certificate) the written consent or affirmative vote of the holders of a majority of the outstanding shares of Series A Preferred Stock, given in writing or by vote at a meeting, consenting, or voting (as the case may be) separately as a single class:

(a)     alter the rights, powers or privileges of the Series A Preferred Stock set forth in the Restated Certificate or the Bylaws, as then in effect, in a way that by its terms treats the Series A Preferred Stock adversely and in a manner in which such alteration does not treat all other series of Preferred Stock; or

(b)     increase the authorized number of shares of the Series A Preferred Stock.

**3.     Conversion.**  The holders of the Preferred Stock have the following conversion rights (the "***Conversion Rights***"):

3.1     <u>Right to Convert</u>.

3.1.1     <u>Conversion Ratio</u>.  Each share of Preferred Stock is convertible, at the option of the holder thereof, at any time, and without the payment of additional consideration by the holder thereof, into such number of fully paid and nonassessable shares of Common Stock as is determined by dividing the Original Issue Price for the series of Preferred Stock by the Conversion Price for that series of Preferred Stock in effect at the time of conversion.  The "***Conversion Price***" for each series of Preferred Stock means the Original Issue Price for such series of Preferred Stock, which initial Conversion Price, and the rate at which shares of Preferred Stock may be converted into shares of Common Stock, is subject to adjustment as provided in this Restated Certificate.

3.1.2     <u>Termination of Conversion Rights</u>.  Subject to Section 3.3.1 in the case of a Contingency Event (as defined below) herein, in the event of a Liquidation Event or a Deemed Liquidation Event, the Conversion Rights will terminate at the close of business on the last full day preceding the date fixed for the first payment of any funds and assets distributable on such event to the holders of Preferred Stock.

3.2     <u>Fractional Shares</u>.  No fractional shares of Common Stock will be issued upon conversion of the Preferred Stock.  In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall pay cash equal to such fraction multiplied by the fair market value of a share of Common Stock as determined in good faith by the Board.  Whether or not fractional shares would be issuable upon such conversion will be determined on the basis of the total number of shares of Preferred Stock the holder is at the time converting into Common Stock and the aggregate number of shares of Common Stock issuable upon such conversion.

3.3     <u>Mechanics of Conversion</u>.

3.3.1     <u>Notice of Conversion</u>.  To voluntarily convert shares of Preferred Stock into shares of Common Stock, a holder of Preferred Stock shall surrender the certificate or certificates for the shares of Preferred Stock (or, if such registered holder alleges that any such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate), at the office of the transfer agent for the Preferred Stock (or at the principal office of the Corporation if the Corporation serves as its own transfer agent),

PATENT
REEL: 049146 FRAME: 0442

together with written notice that the holder elects to convert all or any number of the shares of the Preferred Stock represented by the certificate or certificates and, if applicable, any event on which the conversion is contingent (a "***Contingency Event***"). The conversion notice must state the holder's name or the names of the nominees in which such holder wishes the certificate or certificates for shares of Common Stock to be issued. If required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by a written instrument or instruments of transfer, in form reasonably satisfactory to the Corporation, duly executed by the registered holder or such holder's attorney duly authorized in writing. The close of business on the date of receipt by the transfer agent (or by the Corporation if the Corporation serves as its own transfer agent) of the certificates (or lost certificate affidavit and agreement) and notice (or, if later, the date on which all Contingency Events have occurred) will be the time of conversion (the "***Conversion Time***"), and the shares of Common Stock issuable upon conversion of the shares represented by such certificate shall be deemed to be outstanding of record as of such time. The Corporation shall, as soon as practicable after the Conversion Time, (a) issue and deliver to the holder, or to the holder's nominees, a certificate or certificates for the number of full shares of Common Stock issuable upon the conversion in accordance with the provisions of this Restated Certificate and a certificate for the number (if any) of the shares of Preferred Stock represented by the surrendered certificate that were not converted into Common Stock, (b) pay in cash such amount as provided in Section 3.2 in lieu of any fraction of a share of Common Stock otherwise issuable upon such conversion and (c) pay all declared but unpaid dividends on the shares of Preferred Stock converted.

3.3.2   <u>Reservation of Shares</u>. For the purpose of effecting the conversion of the Preferred Stock, the Corporation shall at all times while any share of Preferred Stock is outstanding, reserve and keep available out of its authorized but unissued capital stock, that number of its duly authorized shares of Common Stock as may from time to time be sufficient to effect the conversion of all outstanding Preferred Stock; and if at any time the number of authorized but unissued shares of Common Stock is not sufficient to effect the conversion of all then-outstanding shares of the Preferred Stock, the Corporation shall use its best efforts to cause such corporate action to be taken as may be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite stockholder approval of any necessary amendment to this Restated Certificate. Before taking any action that would cause an adjustment reducing the Conversion Price of a series of Preferred Stock below the then-par value of the shares of Common Stock issuable upon conversion of such series of Preferred Stock, the Corporation shall take any corporate action that may be necessary so that the Corporation may validly and legally issue fully paid and nonassessable shares of Common Stock at such adjusted Conversion Price.

3.3.3   <u>Effect of Conversion</u>. All shares of Preferred Stock that shall have been surrendered for conversion as provided in this Restated Certificate shall no longer be deemed to be outstanding and all rights with respect to such shares will immediately cease and terminate at the Conversion Time, except only the right of the holders thereof to receive shares of Common Stock in exchange therefor, to receive payment in lieu of any fraction of a share otherwise issuable upon such conversion as provided in Section 3.2, and to receive payment of any dividends declared but unpaid thereon. Any shares of Preferred Stock so converted shall be retired and cancelled and may not be reissued.

3.3.4   <u>No Further Adjustment</u>. Upon any conversion of shares of Preferred Stock, no adjustment to the Conversion Price of the applicable series of Preferred Stock will be made with respect to the converted shares for any declared but unpaid dividends on such series of Preferred Stock or on the Common Stock delivered upon conversion.

3.4   <u>Adjustments to Conversion Price for Diluting Issues</u>.

134938982 v2

PATENT
REEL: 049146 FRAME: 0443

3.4.1   <u>Special Definitions</u>.  For purposes of this Article Fourth, the following definitions shall apply:

(a)   "**Option**" shall mean rights, options or warrants to subscribe for, purchase or otherwise acquire Common Stock or Convertible Securities.

(b)   "**Original Issue Date**" shall mean the date on which the first share of a series of Preferred Stock was issued.

(c)   "**Convertible Securities**" shall mean any evidences of indebtedness, shares or other securities directly or indirectly convertible into or exchangeable for Common Stock, but excluding Options.

(d)   "**Additional Shares of Common Stock**" shall mean all shares of Common Stock issued (or, pursuant to Section 3.4.3 below, deemed to be issued) by the Corporation after the Original Issue Date, other than (1) the following shares of Common Stock and (2) shares of Common Stock deemed issued pursuant to the following Options and Convertible Securities (clauses (1) and (2), collectively, "**Exempted Securities**"):

(i)   shares of Common Stock or Convertible Securities issued upon conversion of those certain Series 2017A Convertible Promissory Notes issued by the Company on or about February 3, 2017;

(ii)   shares of Common Stock, Options or Convertible Securities issued as a dividend or distribution on Preferred Stock;

(iii)   shares of Common Stock, Options or Convertible Securities issued by reason of a dividend, stock split, split-up or other distribution on shares of Common Stock that is covered by Sections 3.5, 3.6, 3.7 or 3.8;

(iv)   shares of Common Stock or Options issued to employees or directors of, or consultants or advisors to, the Corporation or any of its subsidiaries pursuant to a plan, agreement or arrangement approved by the Board;

(v)   shares of Common Stock or Convertible Securities actually issued upon the exercise of Options or shares of Common Stock actually issued upon the conversion or exchange of Convertible Securities, in each case provided such issuance is pursuant to the terms of such Option or Convertible Security;

(vi)   shares of Common Stock, Options or Convertible Securities issued to banks, equipment lessors or other financial institutions, or to real property lessors, pursuant to a debt financing, equipment leasing or real property leasing transaction approved by the Board;

PATENT
REEL: 049146 FRAME: 0444

(vii)    shares of Common Stock, Options or Convertible Securities issued to suppliers or third party service providers in connection with the provision of goods or services pursuant to transactions approved by the Board;

(viii)    shares of Common Stock, Options or Convertible Securities issued pursuant to the acquisition of another corporation by the Corporation by merger, purchase of substantially all of the assets or other reorganization or to a joint venture agreement, provided that such issuances are approved by the Board; or

(ix)    shares of Common Stock, Options or Convertible Securities issued in connection with sponsored research, collaboration, technology license, development, OEM, marketing or other similar agreements or strategic partnerships approved by the Board.

3.4.2   No Adjustment of Conversion Price.  No adjustment in the applicable Conversion Price shall be made as the result of the issuance or deemed issuance of Additional Shares of Common Stock if the Corporation receives written notice from the holders of at least a majority of the then outstanding shares of such series of Preferred Stock agreeing that no such adjustment shall be made as the result of the issuance or deemed issuance of such Additional Shares of Common Stock.

3.4.3   Deemed Issue of Additional Shares of Common Stock.

(a)    If the Corporation at any time or from time to time after the Original Issue Date shall issue any Options or Convertible Securities (excluding Options or Convertible Securities which are themselves Exempted Securities) or shall fix a record date for the determination of holders of any class of securities entitled to receive any such Options or Convertible Securities, then the maximum number of shares of Common Stock (as set forth in the instrument relating thereto, assuming the satisfaction of any conditions to exercisability, convertibility or exchangeability but without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or, in the case of Convertible Securities and Options therefor, the conversion or exchange of such Convertible Securities, shall be deemed to be Additional Shares of Common Stock issued as of the time of such issue or, in case such a record date shall have been fixed, as of the close of business on such record date.

(b)    If the terms of any Option or Convertible Security, the issuance of which resulted in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4, are revised as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase or decrease in the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any such Option or Convertible Security or (2) any increase or decrease in the consideration payable to the Corporation upon such exercise, conversion and/or exchange, then, effective upon such increase or decrease becoming effective, the Conversion Price computed upon the original issue of such Option or Convertible Security (or upon the occurrence of a record date with respect thereto) shall be readjusted to such Conversion Price as would have obtained had such revised terms been in effect upon the original date of

PATENT
REEL: 049146 FRAME: 0445

issuance of such Option or Convertible Security.  Notwithstanding the foregoing, no readjustment pursuant to this clause (b) shall have the effect of increasing the Conversion Price to an amount which exceeds the lower of (i) the Conversion Price in effect immediately prior to the original adjustment made as a result of the issuance of such Option or Convertible Security, or (ii) the Conversion Price that would have resulted from any issuances of Additional Shares of Common Stock (other than deemed issuances of Additional Shares of Common Stock as a result of the issuance of such Option or Convertible Security) between the original adjustment date and such readjustment date.

(c)     If the terms of any Option or Convertible Security (excluding Options or Convertible Securities which are themselves Exempted Securities), the issuance of which did not result in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4 (either because the consideration per share (determined pursuant to Section 3.4.5) of the Additional Shares of Common Stock subject thereto was equal to or greater than the Conversion Price then in effect, or because such Option or Convertible Security was issued before the Original Issue Date), are revised after the Original Issue Date as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase in the number of shares of Common Stock issuable upon the exercise, conversion or exchange of any such Option or Convertible Security or (2) any decrease in the consideration payable to the Corporation upon such exercise, conversion or exchange, then such Option or Convertible Security, as so amended or adjusted, and the Additional Shares of Common Stock subject thereto (determined in the manner provided in Section 3.4.3.(a) shall be deemed to have been issued effective upon such increase or decrease becoming effective.

(d)     Upon the expiration or termination of any unexercised Option or unconverted or unexchanged Convertible Security (or portion thereof) which resulted (either upon its original issuance or upon a revision of its terms) in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4, the Conversion Price shall be readjusted to such Conversion Price as would have obtained had such Option or Convertible Security (or portion thereof) never been issued.

(e)     If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, is calculable at the time such Option or Convertible Security is issued or amended but is subject to adjustment based upon subsequent events, any adjustment to the Conversion Price provided for in this Section 3.4.3 shall be effected at the time of such issuance or amendment based on such number of shares or amount of consideration without regard to any provisions for subsequent adjustments (and any subsequent adjustments shall be treated as provided in clauses (b) and (c) of this Section 3.4.3).  If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, cannot be calculated at all at the time such Option or Convertible Security is issued or amended, any adjustment to the Conversion Price that would result under the terms of this Section 3.4.3  at the time of such issuance or amendment shall instead be effected at the time such number of shares and/or amount of consideration is first calculable (even if subject to subsequent adjustments), assuming for purposes of calculating such adjustment to the Conversion Price that such issuance or amendment took place at the time such calculation can first be made.

3.4.4   Adjustment of Conversion Price Upon Issuance of Additional Shares of Common Stock.  In the event the Corporation shall at any time after the Original Issue Date issue Additional Shares of Common Stock (including Additional Shares of Common Stock deemed to be issued pursuant to Section 3.4.3), without consideration or for a consideration per share less than the Conversion Price in effect immediately prior to such issue, then the Conversion Price shall be reduced, concurrently

134938982 v2

PATENT
REEL: 049146 FRAME: 0446

with such issue, to a price (calculated to the nearest one-hundredth of a cent) determined in accordance with the following formula:

$$CP_2 = CP_1 * (A + B) \div (A + C).$$

For purposes of the foregoing formula, the following definitions shall apply:

"$CP_2$" shall mean the Conversion Price in effect immediately after such issue of Additional Shares of Common Stock

"$CP_1$" shall mean the Conversion Price in effect immediately prior to such issue of Additional Shares of Common Stock;

"A" shall mean the number of shares of Common Stock outstanding immediately prior to such issue of Additional Shares of Common Stock (treating for this purpose as outstanding all shares of Common Stock issuable upon exercise of Options outstanding immediately prior to such issue or upon conversion or exchange of Convertible Securities (including the Preferred Stock) outstanding (assuming exercise of any outstanding Options therefor) immediately prior to such issue);

"B" shall mean the number of shares of Common Stock that would have been issued if such Additional Shares of Common Stock had been issued at a price per share equal to $CP_1$ (determined by dividing the aggregate consideration received by the Corporation in respect of such issue by $CP_1$); and

"C" shall mean the number of such Additional Shares of Common Stock issued in such transaction.

3.4.5    <u>Determination of Consideration</u>.  For purposes of this Section 3.4, the consideration received by the Corporation for the issue of any Additional Shares of Common Stock shall be computed as follows:

(a)    <u>Cash and Property</u>:  Such consideration shall:

(i)    insofar as it consists of cash, be computed at the aggregate amount of cash received by the Corporation, excluding amounts paid or payable for accrued interest;

(ii)    insofar as it consists of property other than cash, be computed at the fair market value thereof at the time of such issue, as determined in good faith by the Board; and

(iii)    in the event Additional Shares of Common Stock are issued together with other shares or securities or other assets of the Corporation for consideration which covers both, be the proportion of such consideration so received, computed as provided in clauses (i) and (ii) above, as determined in good faith by the Board.

- 9 -

PATENT
REEL: 049146 FRAME: 0447

(b)     Options and Convertible Securities.  The consideration per share received by the Corporation for Additional Shares of Common Stock deemed to have been issued pursuant to Section 3.4.3, relating to Options and Convertible Securities, shall be determined by dividing:

(i)     the total amount, if any, received or receivable by the Corporation as consideration for the issue of such Options or Convertible Securities, plus the minimum aggregate amount of additional consideration (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such consideration) payable to the Corporation upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities, by

(ii)    the maximum number of shares of Common Stock (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities.

3.4.6   Multiple Closing Dates.  In the event the Corporation shall issue on more than one date Additional Shares of Common Stock that are a part of one transaction or a series of related transactions and that would result in an adjustment to the Conversion Price pursuant to the terms of Section 3.4, and such issuance dates occur within a period of no more than ninety (90) days from the first such issuance to the final such issuance, then, upon the final such issuance, the Conversion Price shall be readjusted to give effect to all such issuances as if they occurred on the date of the first such issuance (and without giving effect to any additional adjustments as a result of any such subsequent issuances within such period).

3.5     Adjustment for Stock Splits and Combinations.  If the Corporation at any time or from time to time after the date on which the first share of a series of Preferred Stock is issued by the Corporation (such date referred to herein as the "*Original Issue Date*" for such series of Preferred Stock) effects a subdivision of the outstanding Common Stock, the Conversion Price for each series of Preferred Stock in effect immediately before that subdivision shall be proportionately decreased so that the number of shares of Common Stock issuable on conversion of each share of that series will be increased in proportion to the increase in the aggregate number of shares of Common Stock outstanding.  If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock combines the outstanding shares of Common Stock, the Conversion Price for each series of Preferred Stock in effect immediately before the combination will be proportionately increased so that the number of shares of Common Stock issuable on conversion of each share of such series shall be decreased in proportion to such decrease in the aggregate number of shares of Common Stock outstanding.  Any adjustment under this Section 3.4 becomes effective at the close of business on the date the subdivision or combination becomes effective.

- 10 -

PATENT
REEL: 049146 FRAME: 0448

3.6    Adjustment for Certain Dividends and Distributions.  If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock shall make or issue, or fix a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable on the Common Stock in additional shares of Common Stock, then and in each such event the Conversion Price for such series of Preferred Stock in effect immediately before the event will be decreased as of the time of such issuance or, in the event a record date has been fixed, as of the close of business on such record date, by multiplying such Conversion Price then in effect by a fraction:

(a)    the numerator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of the issuance or the close of business on the record date, and

(b)    the denominator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on the record date plus the number of shares of Common Stock issuable in payment of such dividend or distribution.

Notwithstanding the foregoing, (i) if such record date has been fixed and the dividend is not fully paid or if such distribution is not fully made on the date fixed therefor, such Conversion Price shall be recomputed accordingly as of the close of business on such record date and thereafter such Conversion Price shall be adjusted pursuant to this Section 3.5 as of the time of actual payment of such dividends or distributions; and (ii) no such adjustment shall be made if the holders of such series of Preferred Stock simultaneously receive a dividend or other distribution of shares of Common Stock in a number equal to the number of shares of Common Stock that they would have received if all outstanding shares of such series of Preferred Stock had been converted into Common Stock on the date of the event.

3.7    Adjustments for Other Dividends and Distributions.  If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock makes or issues, or fixes a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable in securities of the Corporation (other than a distribution of shares of Common Stock in respect of outstanding shares of Common Stock), then and in each such event the Corporation shall make, simultaneously with the distribution to the holders of Common Stock, a dividend or other distribution to the holders of the series of Preferred Stock in an amount equal to the amount of securities as the holders would have received if all outstanding shares of such series of Preferred Stock had been converted into Common Stock on the date of such event.

3.8    Adjustment for Reclassification, Exchange and Substitution.  If at any time or from time to time after the Original Issue Date for a series of Preferred Stock the Common Stock issuable upon the conversion of such series of Preferred Stock is changed into the same or a different number of shares of any class or classes of stock of the Corporation, whether by recapitalization, reclassification, or otherwise (other than by a stock split or combination, dividend, distribution, merger or consolidation covered by Sections 3.4, 3.5, 3.6 or 3.8 or by Section 1.3 regarding a Deemed Liquidation Event), then in any such event each holder of such series of Preferred Stock may thereafter convert such stock into the kind and amount of stock and other securities and property receivable upon such recapitalization, reclassification or other change by holders of the number of shares of Common Stock into which such shares of Preferred Stock could have been converted immediately prior to such recapitalization, reclassification or change.

3.9    Adjustment for Merger or Consolidation.  Subject to the provisions of Section 1.3, if any consolidation or merger occurs involving the Corporation in which the Common Stock (but not a series of Preferred Stock) is converted into or exchanged for securities, cash, or other property (other than a transaction covered by Sections 3.5, 3.6 or 3.7), then, following any such consolidation or merger, the

134938982 v2

PATENT
REEL: 049146 FRAME: 0449

Corporation shall provide that each share of such series of Preferred Stock will thereafter be convertible, in lieu of the Common Stock into which it was convertible prior to such event, into the kind and amount of securities, cash, or other property that a holder of the number of shares of Common Stock of the Corporation issuable upon conversion of one share of such series of Preferred Stock immediately prior to the consolidation or merger would have been entitled to receive pursuant to the transaction; and, in such case, the Corporation shall make appropriate adjustment (as determined in good faith by the Board) in the application of the provisions in this Section 3 with respect to the rights and interests thereafter of the holders of such series of Preferred Stock, to the end that the provisions set forth in this Section 3 (including provisions with respect to changes in and other adjustments of the Conversion Price of such series of Preferred Stock) shall thereafter be applicable, as nearly as reasonably may be, in relation to any securities or other property thereafter deliverable upon the conversion of such series of Preferred Stock.

        3.10   <u>Certificate as to Adjustments</u>.   Upon the occurrence of each adjustment or readjustment of the Conversion Price of a series of Preferred Stock pursuant to this Section 3, the Corporation at its expense shall, as promptly as reasonably practicable but in any event not later than 15 days thereafter, compute such adjustment or readjustment in accordance with the terms of this Restated Certificate and furnish to each holder of such series of Preferred Stock a certificate setting forth the adjustment or readjustment (including the kind and amount of securities, cash, or other property into which such series of Preferred Stock is convertible) and showing in detail the facts upon which such adjustment or readjustment is based.   The Corporation shall, as promptly as reasonably practicable after the written request at any time of any holder of any series of Preferred Stock (but in any event not later than 10 days thereafter), furnish or cause to be furnished to such holder a certificate setting forth (a) the Conversion Price of such series of Preferred Stock then in effect and (b) the number of shares of Common Stock and the amount, if any, of other securities, cash, or property which then would be received upon the conversion of such series of Preferred Stock.

        3.11   <u>Mandatory Conversion</u>.   Upon either (a) the closing of the sale of shares of Common Stock to the public in a firm-commitment underwritten public offering pursuant to an effective registration statement under the Securities Act of 1933, as amended for a total offering of not less than $25,000,000 (before deduction of underwriters' commissions and expenses) or (b) the date and time, or the occurrence of an event, specified by vote or written consent of the Requisite Holders at the time of such vote or consent, voting as a single class on an as-converted basis (the time of such closing or the date and time specified or the time of the event specified in such vote or written consent, the "***Mandatory Conversion Time***"), (i) all outstanding shares of Preferred Stock will automatically convert into shares of Common Stock, at the applicable ratio described in Section 3.1.1 as the same may be adjusted from time to time in accordance with Section 3 and (ii) such shares may not be reissued by the Corporation.

        3.12   <u>Procedural Requirements</u>.   The Corporation shall notify in writing all holders of record of shares of Preferred Stock of the Mandatory Conversion Time and the place designated for mandatory conversion of all such shares of Preferred Stock pursuant to Section 3.10.   Unless otherwise provided in this Restated Certificate, the notice need not be sent in advance of the occurrence of the Mandatory Conversion Time.   Upon receipt of the notice, each holder of shares of Preferred Stock shall surrender such holder's certificate or certificates for all such shares (or, if such holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate) to the Corporation at the place designated in such notice, and shall thereafter receive certificates for the number of shares of Common Stock to which such holder is entitled pursuant to this Section 3.   If so required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form reasonably satisfactory to the Corporation, duly executed by the registered holder or such holder's attorney duly authorized in writing.   All rights with respect to the Preferred Stock converted

- 12 -

PATENT
REEL: 049146 FRAME: 0450

pursuant to Section 3.10, including the rights, if any, to receive notices and vote (other than as a holder of Common Stock), will terminate at the Mandatory Conversion Time (notwithstanding the failure of the holder or holders thereof to surrender the certificates at or prior to such time), except only the rights of the holders thereof, upon surrender of their certificate or certificates (or lost certificate affidavit and agreement) therefor, to receive the items provided for in the next sentence of this Section 3.11. As soon as practicable after the Mandatory Conversion Time and the surrender of the certificate or certificates (or lost certificate affidavit and agreement) for Preferred Stock, the Corporation shall issue and deliver to such holder, or to such holder's nominee(s), a certificate or certificates for the number of full shares of Common Stock issuable on such conversion in accordance with the provisions hereof, together with cash as provided in Section 3.2 in lieu of any fraction of a share of Common Stock otherwise issuable upon such conversion and the payment of any declared but unpaid dividends on the shares of Preferred Stock converted. Such converted Preferred Stock shall be retired and cancelled and may not be reissued as shares of such series, and the Corporation may thereafter take such appropriate action (without the need for stockholder action) as may be necessary to reduce the authorized number of shares of Preferred Stock (and the applicable series thereof) accordingly.

## 4.    **Dividends.**

4.1    <u>Non-Cumulative Preferred Stock Dividend</u>.  The Corporation shall not pay or set aside any dividends on shares of any other class or series of capital stock of the Corporation (other than dividends on shares of Common Stock payable in shares of Common Stock) unless (in addition to the obtaining of any consents required elsewhere in this Restated Certificate) the holders of the Preferred Stock then outstanding shall first receive, or simultaneously receive, out of funds legally available therefor, a dividend on each outstanding share of Preferred Stock in an amount in cash equal to 6% of the applicable Original Issue Price per annum on each outstanding share of such Preferred Stock calculated from the date of issuance of such share of Preferred Stock.  The foregoing dividends shall not be cumulative and shall be paid when, as and if declared by the Board.

4.2    <u>Participation in Additional Dividends</u>. If, after dividends in the full preferential amount specified in Section  4.1 for the Preferred Stock have been paid or set apart for payment, the Board shall declare additional dividends out of funds legally available therefor, then such additional dividends shall be declared *pro rata* on the Common Stock and the Preferred Stock on a *pari passu* basis in a per share amount equal (on an as-if-converted to Common Stock basis) to the amount paid or set aside for each share of Common Stock.

4.3    <u>Non-Cash Dividends</u>. Whenever a dividend provided for in this Section 4 shall be payable in property other than cash, the value of such dividend shall be deemed to be the fair market value of such property as determined in good faith by the Board.

## 5.    **Redeemed or Otherwise Acquired Shares.**    Any shares of Preferred Stock that are redeemed or otherwise acquired by the Corporation or any of its subsidiaries will be automatically and immediately cancelled and retired and shall not be reissued, sold or transferred.  Neither the Corporation nor any of its subsidiaries may exercise any voting or other rights granted to the holders of Preferred Stock following any such redemption.

## 6.    **Waiver.**    Any of the rights, powers, privileges and other terms of the Preferred Stock set forth herein may be waived prospectively or retrospectively on behalf of all holders of Preferred Stock by the affirmative written consent or vote of the Requisite Holders.

## 7.    **Notice of Record Date.**    In the event:

PATENT
REEL: 049146 FRAME: 0451

(a)    the Corporation takes a record of the holders of its Common Stock (or other capital stock or securities at the time issuable upon conversion of the Preferred Stock) for the purpose of entitling or enabling them to receive any dividend or other distribution, or to receive any right to subscribe for or purchase any shares of capital stock of any class or any other securities, or to receive any other security; or

(b)    of any capital reorganization of the Corporation, any reclassification of the Common Stock of the Corporation, or any Liquidation Event or Deemed Liquidation Event,

then, and in each such case, the Corporation shall send or cause to be sent to the holders of the Preferred Stock a written notice specifying, as the case may be, (i) the record date for such dividend, distribution, or right, and the amount and character of such dividend, distribution or right, or (ii) the effective date on which such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up is proposed to take place, and the time, if any is to be fixed, as of which the holders of record of Common Stock (or such other capital stock or securities at the time issuable upon the conversion of the Preferred Stock) will be entitled to exchange their shares of Common Stock (or such other capital stock or securities) for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up, and the amount per share and character of such exchange applicable to the Preferred Stock and the Common Stock.  The Corporation shall send the notice at least 20 days before  the earlier of the record date or effective date for the event specified in the notice.

**8.**    **Notices.**  Except as otherwise provided herein, any notice required or permitted by the provisions of this Article V to be given to a holder of shares of Preferred Stock must be mailed, postage prepaid, to the post office address last shown on the records of the Corporation, or given by electronic communication in compliance with the provisions of the General Corporation Law, and will be deemed sent upon such mailing or electronic transmission.

## ARTICLE VI: PREEMPTIVE RIGHTS.

No stockholder of the Corporation has a right to purchase shares of capital stock of the Corporation sold or issued by the Corporation except to the extent that such a right may from time to time be set forth in a written agreement between the Corporation and the stockholder.

## ARTICLE VII: BYLAW PROVISIONS.

**A.**    **AMENDMENT OF BYLAWS.**  Subject to any additional vote required by this Restated Certificate or bylaws of the Corporation (the "*Bylaws*"), in furtherance and not in limitation of the powers conferred by statute, the Board is expressly authorized to make, repeal, alter, amend and rescind any or all of the Bylaws.

**B.**    **NUMBER OF DIRECTORS.**  Subject to any additional vote required by this Restated Certificate, the number of directors of the Corporation will be determined in the manner set forth in the Bylaws.

**C.**    **BALLOT.**  Elections of directors need not be by written ballot unless the Bylaws so provide.

**D.**    **MEETINGS AND BOOKS.**  Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws may provide.  The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the Board or in the Bylaws.

## ARTICLE VIII: DIRECTOR LIABILITY.

134938982 v2

PATENT
REEL: 049146 FRAME: 0452

**A.      LIMITATION.**  To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.  If the General Corporation Law or any other law of the State of Delaware is amended after approval by the stockholders of this Article VIII to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law as so amended.  Any repeal or modification of the foregoing provisions of this Article VIII by the stockholders will not adversely affect any right or protection of a director of the Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director occurring prior to, such repeal or modification.

**B.      INDEMNIFICATION.**  To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation (and any other persons to which General Corporation Law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the General Corporation Law.

**C.      MODIFICATION.**  Any amendment, repeal, or modification of the foregoing provisions of this Article VIII will not adversely affect any right or protection of any director, officer or other agent of the Corporation existing at the time of such amendment, repeal or modification.

\*      \*      \*      \*      \*

134938982 v2

**RECORDED: 05/09/2019**

**PATENT**
**REEL: 049146 FRAME: 0453**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT5366820

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| AVAAGO, INC. | 03/09/2018 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | MAKO CAPITAL, LLC |
| Street Address: | 1 SUTTON PLACE SOUTH |
| Internal Address: | APT. 7 |
| City: | NEW YORK CITY |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

### PROPERTY NUMBERS Total: 4

| Property Type | Number |
|---|---|
| Application Number: | 62047473 |
| Application Number: | 62106613 |
| Application Number: | 14847795 |
| PCT Number: | US2015048970 |

### CORRESPONDENCE DATA

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 215-569-2700 |
| Email: | TRADEMARKS@KLEHR.COM |
| Correspondent Name: | BENJAMIN FULLER |
| Address Line 1: | 1835 MARKET STREET |
| Address Line 2: | SUITE 1400 |
| Address Line 4: | PHILADELPHIA, PENNSYLVANIA 19103 |

| ATTORNEY DOCKET NUMBER: | 20003.0001 |
|---|---|
| NAME OF SUBMITTER: | BENJAMIN E. FULLER |
| SIGNATURE: | /BENJAMIN E. FULLER/ |
| DATE SIGNED: | 02/08/2019 |

Total Attachments: 2

source=Bill of Sale and Patent Assignment Agreement#page1.tif

source=Bill of Sale and Patent Assignment Agreement#page2.tif

## CONFIRMATORY ASSIGNMENT

This confirmatory assignment confirms the assignment of certain assets by virtue of the BILL OF SALE and PATENT ASSIGNMENT AGREEMENT made on March 9, 2018 by and between the following parties (the "PARTIES"):

Ian J. Gazes as chapter 7 trustee of AVAAGO, INC. (the "Assignor), having its place of business at Gazes LLC, 151 Hudson Street, New York, New York 10013; and

MAKO CAPITAL, LLC (the "Assignee"), having its principal place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022.

WHEREAS on February 22, 2018, the United States Bankruptcy Court for the Southern District of New York entered an order authorizing the Assignor's sale of all of AVAAGO, INC.'S assets, including all of AVAAGO INC.'S intellectual property, to MAKO CAPITAL, LLC (the ":Sale Order") pursuant to the terms of that certain Asset Purchase Agreement between the PARTIES.

WHEREAS the Sale Order provides, among other things, that the Assignor "is authorized and directed to do and perform all acts, to make, and execute all related instruments and documents, which may be required or necessary for performance pursuant to the terms of the Asset Purchase Agreement.    WHEREAS the Parties had executed a BILL OF SALE effective March 9, 2018 in which Assignor sold to Assignee "all of Assignor's intellectual property of any kind or nature" including United States Patent Application No. 62/106,613 and the inventions related thereto.

WHEREAS the Parties had executed a PATENT ASSIGNMENT AGREEMENT effective March 9, 2018 in which Assignor assigned to Assignee all right, title, and interest in United States Patent Application No. 62/106,613 sufficient to allow Assignee to acquire all right, title, and interest in any Patent subsequently granted thereon.

WHEREAS the Assignor owned other related patent applications that were not explicitly mentioned in the BILL OF SALE or the PATENT ASSIGNMENT AGREEMENT but nonetheless were sold and assigned by Assignor to Assignee by virtue of the terms of these agreements, as listed in the following table (hereinafter the "Patents"):

| Country Name | App. Title: | Application #: | Filing Date: |
|---|---|---|---|
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/047,473 | 08-Sep-2014 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/106,613 | 22-Jan-2015 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | 08-Sep-2015 |
| PCT | Method and System for Presenting and Operating a Skill-Based Activity | PCT/US2015/048970 | 08-Sep-2015 |

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor confirms that it has sold, assigned and transferred, and,

by these presents does hereby sell, assign and transfer to Assignee, its successors and assigns, for the territory of the United States of America and the entire world, effective as of **March 9, 2018**, its entire right, title and interest in and to such inventions, any applications included in the Patents, and any patents, and any reissues and extensions thereof, which issue or have issued in any country upon patent applications which correspond with or claim priority from any of such applications or patents or any divisional, continuation-in-whole, or continuation-in-part thereof, including the right to sue and collect for past, present, and future infringement; the same to be held and enjoyed by Assignee for its own use, and for the use of its legal representatives, to the full term for which such patents have been granted as fully and entirely as the same would have been held by Assignor had this assignment not been made. The BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby amended to the extent necessary, if any, to give effect to the foregoing effective this date. In all other respects, the BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby ratified and confirmed.

ASSIGNOR

By: _____          Date: ____1/14____, 2019

Ian J. Gazes

as chapter 7 trustee of AVAAGO, INC.

4780 SW 86th Terrace

Miami, Florida 33143

Title: Trustee

State of Florida                    NOTARY PUBLIC
County of Dade          ss. ___01 | 14___, 2019

On this 14ᵗʰ day of January, 2019, before me, the undersigned notary public, personally appeared Ian Krawieck Gates, proved to me through satisfactory evidence of identification, which consisted of FL Driver licene, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

JENNYFER C. TORRECILLAS
Notary Public - State of Florida
Commission # FF...
My Comm. Expires...
Notary Public
My commission expires: Oct. 13, 2019

### DECLARATION OF ACCEPTANCE BY ASSIGNEE

The above named Assignee, Mako Capital, LLC, hereby declares that with effect from this _6th_ day of ___February___, 2019  it accepts the patents, including all goodwill of the business symbolized by such patents including all rights to recover past, present and future damages for infringement, assigned to it by Assignor, Ian J. Gazes as chapter 7 trustee of AVAAGO, INC., pursuant to the foregoing Confirmatory Assignment.

MAKO CAPITAL, LLC

By: _____          Date: February 6, 2019

Barbara Laurence

1 Sutton Place South, Apt. 7

New York, New York 10022

Title: Managing Member

**PATENT**
**REEL: 048275 FRAME: 0510**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT5515737

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| AVAAGO, INC. | 03/09/2018 |

### RECEIVING PARTY DATA

| Name: | MAKO CAPITAL, LLC |
|---|---|
| Street Address: | 1 SUTTON PLACE SOUTH, APT. 7 |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Application Number: | 14847795 |

### CORRESPONDENCE DATA

**Fax Number:** (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:** 6174439292
**Email:** dderamo@sunsteinlaw.com
**Correspondent Name:** WENDY J. DEMORACSKI
**Address Line 1:** 125 SUMMER STREET
**Address Line 2:** SUNSTEIN KANN MURPHY & TIMBERS LLP
**Address Line 4:** BOSTON, MASSACHUSETTS 02110

| ATTORNEY DOCKET NUMBER: | 4502/1004 |
|---|---|
| NAME OF SUBMITTER: | WENDY J. DEMORACSKI |
| SIGNATURE: | /Wendy J. Demoracski, #76,185/ |
| DATE SIGNED: | 05/09/2019 |

**Total Attachments: 2**
source=DD45021004AZ_AVAAGO_TO_MAKO#page1.tif
source=DD45021004AZ_AVAAGO_TO_MAKO#page2.tif

## CONFIRMATORY ASSIGNMENT

This confirmatory assignment confirms the assignment of certain assets by virtue of the BILL OF SALE and PATENT ASSIGNMENT AGREEMENT made on March 9, 2018 by and between the following parties (the "PARTIES"):

Ian J. Gazes as chapter 7 trustee of AVAAGO, INC. (the "Assignor), having its place of business at Gazes LLC, 151 Hudson Street, New York, New York 10013; and

MAKO CAPITAL, LLC (the "Assignee"), having its principal place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022.

WHEREAS on February 22, 2018, the United States Bankruptcy Court for the Southern District of New York entered an order authorizing the Assignor's sale of all of AVAAGO, INC.'S assets, including all of AVAAGO INC.'S intellectual property, to MAKO CAPITAL, LLC (the ":Sale Order") pursuant to the terms of that certain Asset Purchase Agreement between the PARTIES.

WHEREAS the Sale Order provides, among other things, that the Assignor "is authorized and directed to do and perform all acts, to make, and execute all related instruments and documents, which may be required or necessary for performance pursuant to the terms of the Asset Purchase Agreement.   WHEREAS the Parties had executed a BILL OF SALE effective March 9, 2018 in which Assignor sold to Assignee "all of Assignor's intellectual property of any kind or nature" including United States Patent Application No. 62/106,613 and the inventions related thereto.

WHEREAS the Parties had executed a PATENT ASSIGNMENT AGREEMENT effective March 9, 2018 in which Assignor assigned to Assignee all right, title, and interest in United States Patent Application No. 62/106,613 sufficient to allow Assignee to acquire all right, title, and interest in any Patent subsequently granted thereon.

WHEREAS the Assignor owned other related patent applications that were not explicitly mentioned in the BILL OF SALE or the PATENT ASSIGNMENT AGREEMENT but nonetheless were sold and assigned by Assignor to Assignee by virtue of the terms of these agreements, as listed in the following table (hereinafter the "Patents"):

| Country Name | App. Title: | Application #: | Filing Date: |
|---|---|---|---|
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/047,473 | 08-Sep-2014 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/106,613 | 22-Jan-2015 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | 08-Sep-2015 |
| PCT | Method and System for Presenting and Operating a Skill-Based Activity | PCT/US2015/048970 | 08-Sep-2015 |

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor confirms that it has sold, assigned and transferred, and,

by these presents does hereby sell, assign and transfer to Assignee, its successors and assigns, for the territory of the United States of America and the entire world, effective as of **March 9, 2018**, its entire right, title and interest in and to such inventions, any applications included in the Patents, and any patents, and any reissues and extensions thereof, which issue or have issued in any country upon patent applications which correspond with or claim priority from any of such applications or patents or any divisional, continuation-in-whole, or continuation-in-part thereof, including the right to sue and collect for past, present, and future infringement; the same to be held and enjoyed by Assignee for its own use, and for the use of its legal representatives, to the full term for which such patents have been granted as fully and entirely as the same would have been held by Assignor had this assignment not been made. The BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby amended to the extent necessary, if any, to give effect to the foregoing effective this date. In all other respects, the BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby ratified and confirmed.

ASSIGNOR

By: _____     Date: ____1/14____, 2019

Ian J. Gazes

as chapter 7 trustee of AVAAGO, INC.

4780 SW 86th Terrace

Miami, Florida 33143

Title: Trustee

NOTARY PUBLIC

State of _Florida_

County of _Dade_ , ss. _01|14____, 2019

On this _14th_ day of _January_, 2019, before me, the undersigned notary public, personally appeared _Ian Krawick Gates_ proved to me through satisfactory evidence of identification, which consisted of _FL Driver licene_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

JENNYFER C. TORRECILLAS
Notary Public - State of Florida
Commission # FF...
My Comm. Expires ...3, 2019

My commission expires: _Oct. 13, 2019_

## DECLARATION OF ACCEPTANCE BY ASSIGNEE

The above named Assignee, Mako Capital, LLC, hereby declares that with effect from this _6th_ day of _February_, 2019   it accepts the patents, including all goodwill of the business symbolized by such patents including all rights to recover past, present and future damages for infringement, assigned to it by Assignor, Ian J. Gazes as chapter 7 trustee of AVAAGO, INC., pursuant to the foregoing Confirmatory Assignment.

MAKO CAPITAL, LLC

By: _____     Date: February 6, 2019

Barbara Laurence

1 Sutton Place South, Apt. 7

New York, New York 10022

Title: Managing Member

**PATENT**
**REEL: 049132 FRAME: 0212**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                                                 EPAS ID: PAT5754046
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| MAKO CAPITAL, LLC | 02/21/2019 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | VETNOS LLC |
| Street Address: | 1 SUTTON PLACE SOUTH, APT. 7 |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

### PROPERTY NUMBERS Total: 5

| Property Type | Number |
|---|---|
| Application Number: | 62047473 |
| Application Number: | 62106613 |
| Application Number: | 14847795 |
| PCT Number: | US2015048970 |
| Application Number: | 16502169 |

### CORRESPONDENCE DATA

**Fax Number:**          (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 6174439292 |
| Email: | dderamo@sunsteinlaw.com |
| Correspondent Name: | WENDY J. DEMORACSKI |
| Address Line 1: | 125 SUMMER STREET |
| Address Line 2: | SUNSTEIN KANN MURPHY & TIMBERS LLP |
| Address Line 4: | BOSTON, MASSACHUSETTS 02110 |

| ATTORNEY DOCKET NUMBER: | 4502/0001 |
|---|---|
| NAME OF SUBMITTER: | WENDY J. DEMORACSKI |
| SIGNATURE: | /Wendy J. Demoracski, #76,185/ |
| DATE SIGNED: | 10/03/2019 |

| Total Attachments: 4 |
|---|

source=DD4502Assignment#page1.tif
source=DD4502Assignment#page2.tif
source=DD4502Assignment#page3.tif
source=DD4502Assignment#page4.tif

## PATENT ASSIGNMENT AGREEMENT

THIS AGREEMENT is effective this 21st day of February 2019, by and between Mako Capital, LLC (the "Assignor"), having its primary place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022, and Vetnos LLC, having its primary place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022 (collectively the "Parties").

WHEREAS, Mako Capital, LLC is the owner of the following Patent Applications:

| Country Name | Patent Application Title | Application No. | Filing Date |
|---|---|---|---|
| USA | Method and System for Presenting and Operating a Skill-Based Activity | 62/047,473 | September 8, 2014 |
| USA | Method and System for Presenting and Operating a Skill-Based Activity | 62/106,613 | January 22, 2015 |
| USA | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | September 8, 2015 |
| PCT | Method and System for Presenting and Operating a Skill-Based Activity | PCT/US2015/048970 | September 8, 2015 |

WHEREAS, Assignee wishes to acquire all rights, titles, and interests in the Patent Applications and any Patents subsequently granted thereunder, and Assignor wishes to sell its interest in the Patents to Assignee;

NOW THEREFORE, in consideration of the mutual promises, covenants, warranties, and other good and valuable consideration set forth herein, and in accordance with applicable law, the Parties hereby agree as follows:

1. *Assignment.* For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns to Assignee, and its successors, representatives, and assigns, all rights, titles, and interests in the above-mentioned Patents, including all reexaminations, extensions, and reissues thereof. Assignor hereby requests the Commissioner of Patents of the United States to record this assignment of all rights, titles, and interests in the above-mentioned Patents to Assignee.

2. *Assignor's Representations and Warranties.* Assignor hereby represents and warrants:

   a. That it has the legal right and authority to execute this Agreement, and to validly assign the entire interest in the above-mentioned Patents to the Assignee;
   b. That it has not executed any other agreement that would conflict with the terms of this Agreement, nor shall it execute any such agreement in the future; and
   c. That to the best of the Assignor's knowledge, the above-mentioned Patents are valid and enforceable as of the date of this Agreement. Assignor makes not representations or warranties as to the validity or enforceability of the above-mentioned Patents subsequent to the date of this Agreement.

1

3. *Patent Status.* Assignee hereby acknowledges that any finding or ruling subsequent to the date of this Agreement that the above-mentioned Patents are invalid or unenforceable shall not give rise to a cause of action against Assignor under this Agreement, unless Assignor has committed fraud in executing this Agreement.

4. *Further Actions.* Assignor hereby agrees to execute any further agreements and to take any further actions necessary to aid Assignee in perfecting its interest in the above-mentioned Patents and in enforcing any and all protections or privileges deriving from the above-mentioned Patents.

5. *Governing Law.* This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of Delaware, without regard to conflicts of law principles.

6. *Counterparts.* This Agreement may be executed in several counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one agreement

7. *Severability.* If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force or effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

8. *Notice.* Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service, addressed as follows:

If to the Assignor:          Mako Capital LLC
                             1 Sutton Place South, Apt. 7
                             New York, NY  10022

If to the Assignee:          Vetnos LLC
                             1 Sutton Place South, Apt. 7
                             New York, NY  10022

9. *Headings.* The headings for sections herein are for convenience only and shall not affect the meaning of the provisions of this Agreement.

10. *Entire Agreement.* This Agreement constitutes the entire agreement between Assignor and Assignee, and superseded any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings, or other agreements, either oral or written, relating to the subject matter of this Agreement.

[Signature Page Follows]

2

**PATENT
REEL: 050623 FRAME: 0452**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

**ASSIGNOR**

_____
Joshua Berkowitz
Manager, Mako Capital LLC

ACKNOWLEDGMENT

STATE OF _New York_                            )
                                               )SS.
COUNTY OF _New York_                           )

On the ___8th___ day of February, 2019, before me personally appeared Joshua Berkowitz, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that he executed the same in his authorized capacity as the Manager of Mako Capital LLC, and acknowledged the instrument to be the free act and deed of Mako Capital LLC for the uses and purposes mentioned in the instrument.

_____
Notary Public
Printed Name: Benjamin Barillin

My Commission Expires: April 16 222

ASSIGNEE

_____
Daniel Orlow
President, Vetnos LLC

ACKNOWLEDGMENT

STATE OF _____                       )
                                               )SS.
COUNTY OF _____                      )

On the _____ day of February, 2019, before me personally appeared Daniel Orlow, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that he executed the same in his authorized capacity as the President of Vetnos LLC, and acknowledged the instrument to be the free act and deed of Vetnos LLC for the uses and purposes mentioned in the instrument.

_____
Notary Public
Printed Name:

My Commission Expires: _____

3

**PATENT**
**REEL: 050623 FRAME: 0453**

IN WITNESS WHEREOF the parties have caused this Agreement to be executed the day and year first above written.

**ASSIGNOR**

_____
Joshua Berkowitz
Manager, Mako Capital LLC

**ACKNOWLEDGMENT**

STATE OF _____                               )
                                                        )SS.
COUNTY OF _____                              )

On the _____ day of February, 2019, before me personally appeared Joshua Berkowitz, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that he executed the same in his authorized capacity as the Manager of Mako Capital LLC, and acknowledged the instrument to be the free act and deed of Mako Capital LLC for the uses and purposes mentioned in the instrument.

                                    _____
                                    Notary Public
                                    Printed Name:

My Commission Expires: _____

**ASSIGNEE**

_____
Daniel Orlow
President, Vetnos LLC

**ACKNOWLEDGMENT**

STATE OF _New York_                                     )
                                                        )SS.
COUNTY OF _New York_    _October_                       )

On the _2nd_ day of ~~August~~, 2019, before me personally appeared Daniel Orlow, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that he executed the same in his authorized capacity as the President of Vetnos LLC, and acknowledged the instrument to be the free act and deed of Vetnos LLC for the uses and purposes mentioned in the instrument.

                                    _____
                                    Notary Public
                                    Printed Name: _Noemi Santos_

My Commission Expires: _08/20/2022_

NOEMI J SANTOS
Notary Public, State of New York
Registration #01SA6372501
Qualified in Kings County
Commission Expires Aug. 20, 2022

3

PATENT
REEL: 050623 FRAME: 0454

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT5776047

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
| --- | --- |
| MAKO CAPITAL, LLC | 10/17/2019 |

**RECEIVING PARTY DATA**

| Name: | VETNOS LLC |
| --- | --- |
| Street Address: | 1 SUTTON PLACE SOUTH, APT. 7 |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number |
| --- | --- |
| Application Number: | 14847795 |
| Application Number: | 16502169 |

**CORRESPONDENCE DATA**

**Fax Number:** (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| Phone: | 6174439292 |
| --- | --- |
| Email: | dderamo@sunsteinlaw.com |
| Correspondent Name: | WENDY J. DEMORACSKI |
| Address Line 1: | 125 SUMMER STREET |
| Address Line 2: | SUNSTEIN KANN MURPHY & TIMBERS LLP |
| Address Line 4: | BOSTON, MASSACHUSETTS 02110 |

| ATTORNEY DOCKET NUMBER: | 4502/1004; 4502/1006 |
| --- | --- |
| NAME OF SUBMITTER: | WENDY J. DEMORACSKI |
| SIGNATURE: | /Wendy J. Demoracski, #76,185/ |
| DATE SIGNED: | 10/17/2019 |

**Total Attachments: 2**
source=DD45021004_and_1006#page1.tif
source=DD45021004_and_1006#page2.tif

CONFIRMATORY ASSIGNMENT

WHEREAS, Mako Capital, LLC (the "Assignor), having its place of business at 1 Sutton Place South, Apt. 7B, New York, New York 10022 was the owner of the following Patent Applications:

| Country Name | App. Title: | Application # | Filing Date: | Patent # | Issue Date |
|---|---|---|---|---|---|
| US | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | 08-Sep-2015 | 10,353,543 | 16-July-2019 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 16/502,169 | 03-July-2019 | | |

WHEREAS Assignor, by a Patent Assignment Agreement executed on February 21, 2019 by Joshua Berkowitz, Manager of Mako Capital, LLC, assigned all rights, titles, and interests in the foregoing Patent Applications to Vetnos LLC (the "Assignee"), having its principal place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022;

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor confirms that it has assigned and transferred, and, by these presents does hereby assign and transfer to Assignee, its successors and assigns, for the territory of the United States of America and the entire world, effective as of **February 21, 2019**, its entire right, title and interest in and to any inventions, included in the Patent Applications, and any patents, and any reissues and extensions thereof, which issue or have issued in any country upon patent applications which correspond to or claim priority from any of such applications or any divisional, continuation-in-whole, or continuation-in-part thereof, including the right to sue and collect for past, present, and future infringement; the same to be held and enjoyed by Assignee for its own use, and for the use of its legal representatives, to the full term for which such patents have been granted as fully and entirely as the same would have been held by Assignor had this assignment not been made.

Assignor does hereby further covenant and agree that it will not execute any writing or do any act whatsoever conflicting with these presents, and that Assignor, its successors and assigns, will at any time upon request without further additional consideration, but at the expense of Assignee, its successors and assigns, execute such additional writings and do such additional acts as Assignee, its successors and assigns, may determine as necessary or desirable in the enjoyment of this grant, and in any proceedings or transactions involving such inventions, patent applications or patents.

1

ASSIGNOR:

MAKO CAPITAL, LLC

By: _____     Date: _10_/_17_, 2019
Joshua Berkowitz
Manager, Mako Capital, LLC
1 Sutton Place South, Apt. 7B
New York, New York 10022

## NOTARY PUBLIC

State of New York

County of Bronx , ss.                      10/17 , 2019

On this 17 day of October, 2019, before me, the undersigned notary public,

personally appeared Joshua Berkowitz proved to me through satisfactory

evidence of identification, which consisted of NYSDL , to be the

person whose name is signed on the preceding or attached document, and acknowledged

to me that he/she signed it voluntarily for its stated purpose.

Seal

_____
Notary Public
My commission expires: June 1, 2020

DIANA RIVERA
Notary Public · State of New York
NO. 01RI6119607
Qualified in Bronx County
My Commission Expires Jun 1, 2020

2

**PATENT**
**REEL: 050756 FRAME: 0430**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT6795329

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| JAMES MORRISON | 10/30/2014 |
| KENNETH WHITE | 05/16/2015 |
| DAVID MANPEARL | 10/30/2014 |
| BENJAMIN SCOTT STAHLHOOD II | 10/30/2014 |
| DANIEL ORLOW | 10/30/2014 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | GAME SPORTS NETWORK, INC. |
| Street Address: | 880 THIRD AVENUE, 6TH FLOOR |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 17184264 |

**CORRESPONDENCE DATA**

**Fax Number:** (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 6174439292 |
| Email: | kwhitehouse@sunsteinlaw.com |
| Correspondent Name: | SUNSTEIN LLP |
| Address Line 1: | 100 HIGH STREET |
| Address Line 4: | BOSTON, MASSACHUSETTS 02110 |

| ATTORNEY DOCKET NUMBER: | 4502/1011 |
|---|---|
| NAME OF SUBMITTER: | ANDREW P. SIUTA |
| SIGNATURE: | /Andrew P. Siuta, #78,990/ |
| DATE SIGNED: | 07/02/2021 |

**Total Attachments: 7**
source=klw4502_1011_Inventors_GameSports#page1.tif

source=klw4502_1011_Inventors_GameSports#page2.tif
source=klw4502_1011_Inventors_GameSports#page3.tif
source=klw4502_1011_Inventors_GameSports#page4.tif
source=klw4502_1011_Inventors_GameSports#page5.tif
source=klw4502_1011_Inventors_GameSports#page6.tif
source=klw4502_1011_Inventors_GameSports#page7.tif

**PATENT**
**REEL: 056744 FRAME: 0498**

## ASSIGNMENT

| | |
|---|---|
| **ASSIGNOR:** | James Morrison |
| | Kenneth White |
| | David Manpearl |
| | Benjamin Scott Stahlhood, II |
| | Alan Pavlish |
| | Daniel Orlow |
| | Charles Goldman |
| | Joseph M. Brennan, Jr. |
| | |
| **ASSIGNEE:** | Game Sports Network, Inc. |
| | 880 Third Avenue, 6th floor |
| | New York, NY 10022 |
| | |
| **STATE OF INCORPORATION:** | Delaware |
| | |
| **INVENTION:** | Method and System for Presenting and Operating a Skill-Based Activity |
| | |
| **ATTORNEY DOCKET:** | 4097/1001 |
| | |
| **SERIAL NO:** | 62/047,743 |
| | |
| **FILING DATE:** | September 8, 2014 |

Assignor is a joint inventor of the above invention (the "Invention") described in a United States patent application (the "Application") bearing the above attorney docket number and having as a title the above name for the Invention. The Application has a Patent and Trademark Office filing date and serial number as indicated above, or if no filing date and serial number are shown, has a Declaration executed by Assignor contemporaneously with this Assignment.

For valuable consideration, receipt of which is acknowledged, each Assignor hereby assigns to Assignee (which term shall include Assignee's successors and assigns), all of Assignor's right, title and interest in the Invention, all improvements therein, the Application

04097/01001 2194521.1

PATENT
REEL: 056744 FRAME: 0499

and all priority rights arising therefrom, and any patents, and any reissues and extensions thereof, which issue in any country upon any patent applications which correspond with any of the following: the Application, any divisional, continuation-in-whole, or substitute United States application which is based on the Application; or any continuation-in-part United States application (including divisions, continuations-in-whole or -in-part, and substitutions thereof or therefor) based in-part on any of the above described applications.

Each Assignor further agrees that such Assignor and Assignor's heirs and legal representatives will, without further consideration, cooperate with Assignee in the prosecution of all of the above applications, execute, verify, acknowledge and deliver all such further papers, including applications for patents and for reissues and extensions therefor, and instruments of assignment and transfer thereof, and will communicate any facts known to Assignor relating to the Invention, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee. Each Assignor further agrees that such Assignor will, without further compensation to Assignor during the term of such Assignor's employment by Assignee and thereafter for reasonable compensation as determined by Assignee, perform such other acts as may be reasonably required when requested by Assignee, including attending depositions, preparing and executing declarations and affidavits and testifying as a witness, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee.

I hereby authorize and request Sunstein Kann Murphy & Timbers LLP to supply any missing patent/application identification information or correct any errors in the patent/application identification information provided above, whether discovered prior to or after recordation.

04097/01001 2194521.1

Page **2** of **6**

PATENT
REEL: 056744 FRAME: 0500

IN WITNESS WHEREOF, each Assignor hereby executes this instrument on the date set forth below.

Date: *OCTOBER 30th 2014* _____
James Morrison, Assignor

STATE OF NEVADA

County of *CLARK*, ss.                                   *OCTOBER 30*, 2014

On this *30th* day of *October*, 2014, before me, the undersigned notary public, personally appeared James Morrison, proved to me through satisfactory evidence of identification, which consisted of *CALIFORNIA DRIVERS LICENSE*, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

*Christine J. Posner*
Notary Public

My commission expires: *MAY 11, 2017*

Seal

CHRISTINE J. POSNER
Notary Public, State of Nevada
Appointment No. 00-10136-1
My Appt. Expires May 11, 2017

Date: _____        _____
Kenneth White, Assignor

STATE OF NEVADA

County of _____, ss.                                   _____, 2014

On this ____ day of _____, 2014, before me, the undersigned notary public, personally appeared Kenneth White, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal                                        _____
Notary Public

My commission expires:

04097/01001 2194521.1

Page 3 of 6

PATENT
REEL: 056744 FRAME: 0501

IN WITNESS WHEREOF, each Assignor hereby executes this instrument on the date set forth below.

Date: _____        _____
                                                              James Morrison, Assignor

STATE OF NEVADA

County of _____, ss.                                _____, 2015

On this _____ day of _____, 2015, before me, the undersigned notary public, personally appeared James Morrison, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal                                                   _____
                                                              Notary Public

                                                              My commission expires:

Date: __5/6/15__                          _____
                                                              Kenneth White, Assignor

STATE OF NEVADA

County of Clark, ss.                                May 6, 2015

On this 6 day of May, 2015, before me, the undersigned notary public, personally appeared Kenneth White, proved to me through satisfactory evidence of identification, which consisted of NV DL, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal    LAURA GONZALES                  _____
         Notary Public, State of Nevada          Notary Public
         No. 06-6246-1
         My Appt. Exp. Sept. 10, 2016          My commission expires: 9/10/16

PATENT
REEL: 056744 FRAME: 0502

Date: _10 - 30 - 14_

_____
David Manpearl, Assignor

STATE OF ~~CALIFORNIA~~ _NEVADA_ OF

County of _CLARK_, ss.                    _OCTOBER 30_, 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared David Manpearl, proved to me through satisfactory evidence of identification, which consisted of _CALIF. DRIVER'S LICENSE_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he)/she signed it voluntarily for its stated purpose.

_Christine J. Pemer_
Notary Public

My commission expires: _MAY 11, 2017_

Seal



Date: _10/30/14_

_____
Benjamin ~~Scott Stahlhood~~ II, Assignor

STATE OF ~~FLORIDA~~ _NEVADA_ OF

County of _CLARK_, ss.                    _OCTOBER 30_, 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared Benjamin Scottt Stahlhood, proved to me through satisfactory evidence of identification, which consisted of _FLORIDA DRIVER'S LICENSE_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he)/she signed it voluntarily for its stated purpose.

_Christine J. Pemer_
Notary Public

My commission expires: _MAY 11, 2017_

Seal



PATENT
REEL: 056744 FRAME: 0503

Date: 10-30-14

Alan Pavlish, Assignor

NEVADA (CP)

STATE OF ~~CALIFORNIA~~

County of CLARK, ss.                    October 30th, 2014

On this 30th day of October, 2014, before me, the undersigned notary public, personally appeared Alan Pavlish, proved to me through satisfactory evidence of identification, which consisted of CALIF. DRIVER'S LICENSE, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.



Seal

Christine J Power
Notary Public

My commission expires: MAY 11, 2017

Date: 10.30.14

Dan Orlow, Assignor

NEVADA (CP)

STATE OF ~~NEW YORK~~

County of CLARK, ss.                    October 30, 2014

On this 30th day of October, 2014, before me, the undersigned notary public, personally appeared ~~Alan~~ Dan Orlow, proved to me through satisfactory evidence of identification, which consisted of New York Driver's License, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Christine J Power
Notary Public

Seal

My commission expires:



PATENT
REEL: 056744 FRAME: 0504

Date: **11/4/14**

_____
Charles Goldman, Assignor

STATE OF MASSACHUSETTS

County of **VY** , ss.                                                **11/4/**, 2014

On this **4** day of **November**, 2014, before me, the undersigned notary public, personally appeared Charles Goldman, proved to me through satisfactory evidence of identification, which consisted of **Drivers License MA**, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

> **MATTHEW F CORDOVA**
> Notary Public, State of New York
> No. 01CO6277901
> Qualified in Kings County
> Commission Expires Mar. 18, 2017

Notary Public

My commission expires:

Date: _____

_____
Joseph M. Brennan, Jr., Assignor

STATE OF VIRGINIA

County of           , ss.                                           _____, 2014

On this ____ day of _____, 2014, before me, the undersigned notary public, personally appeared Joseph M. Brennan, Jr., proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

_____
Notary Public

My commission expires:

04097/01001  2194521.1

**PATENT**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                                          EPAS ID: PAT6795335
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | CHANGE OF NAME |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| GAME SPORTS NETWORK, INC. | 08/09/2017 |

### RECEIVING PARTY DATA

| Name: | AVAAGO, INC. |
|---|---|
| Street Address: | 151 HUDSON STREET |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10013 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Application Number: | 17184264 |

### CORRESPONDENCE DATA

**Fax Number:**       (617)443-0004
*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*
**Phone:**       6174439292
**Email:**       kwhitehouse@sunsteinlaw.com
**Correspondent Name:**       SUNSTEIN LLP
**Address Line 1:**       100 HIGH STREET
**Address Line 4:**       BOSTON, MASSACHUSETTS 02110

| ATTORNEY DOCKET NUMBER: | 4502/1011 |
|---|---|
| NAME OF SUBMITTER: | ANDREW P. SIUTA |
| SIGNATURE: | /Andrew P. Siuta, #78,990/ |
| DATE SIGNED: | 07/02/2021 |

**Total Attachments: 17**
source=klw4502_1011_NameChange_GamesSports_Avaago#page1.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page2.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page3.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page4.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page5.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page6.tif

source=klw4502_1011_NameChange_GamesSports_Avaago#page7.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page8.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page9.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page10.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page11.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page12.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page13.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page14.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page15.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page16.tif
source=klw4502_1011_NameChange_GamesSports_Avaago#page17.tif



Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "GAME SPORTS NETWORK, INC.", CHANGING ITS NAME FROM "GAME SPORTS NETWORK, INC." TO "AVAAGO, INC.", FILED IN THIS OFFICE ON THE NINTH DAY OF AUGUST, A.D. 2017, AT 4:56 O`CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

4975497  8100
SR# 20175652931

Authentication: 203036744
Date: 08-10-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

**PATENT**
**REEL: 056757 FRAME: 0701**

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:56 PM 08/09/2017
FILED 04:56 PM 08/09/2017
SR 20175652931 - File Number 4975497

**GAME SPORTS NETWORK, INC.**

**RESTATED CERTIFICATE OF INCORPORATION**

(Pursuant to Sections 242 and 245 of the
General Corporation Law of the State of Delaware)

Game Sports Network, Inc., a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware (the "*General Corporation Law*"), does hereby certify as follows.

1.      The name of this corporation is Game Sports Network, Inc. and that this corporation was originally incorporated pursuant to the General Corporation Law on April 29, 2011 under the name Line Gaming Holdings Corp.

2.      The Board of Directors of this corporation duly adopted resolutions proposing to amend and restate the Certificate of Incorporation of this corporation, declaring said amendment and restatement to be advisable and in the best interests of this corporation and its stockholders, and authorizing the appropriate officers of this corporation to solicit the consent of the stockholders therefor, which resolution setting forth the proposed amendment and restatement is as follows.

RESOLVED, that the Certificate of Incorporation of this corporation be amended and restated in its entirety to read as set forth on Exhibit A attached hereto and incorporated herein by this reference.

3.      Exhibit A referred to above is attached hereto as Exhibit A and is hereby incorporated herein by this reference.  This Restated Certificate of Incorporation was approved by the holders of the requisite number of shares of this corporation in accordance with Section 228 of the General Corporation Law.

4.      This Restated Certificate of Incorporation, which restates and integrates and further amends the provisions of this corporation's Certificate of Incorporation, has been duly adopted in accordance with Sections 242 and 245 of the General Corporation Law.

**IN WITNESS WHEREOF**, this Restated Certificate of Incorporation has been executed by a duly authorized officer of this corporation on June 15, 2017.

By: /s/ Marie Alexander
Marie Alexander, Chief Executive Officer

**PATENT
REEL: 056757 FRAME: 0702**

**Exhibit A**

**AVAAGO, INC.**

**RESTATED CERTIFICATE OF INCORPORATION**

**ARTICLE I:  NAME.**

The name of this corporation is Avaago, Inc. (the "*Corporation*").

**ARTICLE II:  REGISTERED OFFICE.**

The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, City of Wilmington, County of New Castle, 19801. The name of its registered agent at such address is The Corporation Trust Company.

**ARTICLE III:  DEFINITIONS.**

As used in this Restated Certificate (the "*Restated Certificate*"), the following terms have the meanings set forth below:

"*Board*" means the board of directors of the Corporation.

"*Original Issue Price*" means $13.31 per share for the Series A Preferred Stock.

"*Requisite Holders*" means the holders of a majority of the outstanding shares of Preferred Stock (voting as a single class on an as-converted basis).

**ARTICLE IV:  PURPOSE.**

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law.

**ARTICLE V:  AUTHORIZED SHARES.**

The total number of shares of all classes of stock that the Corporation has authority to issue is 1,900,000 consisting of (a) 1,200,000 shares of Common Stock, par value $0.0001 (the "*Common Stock*") and (b) 700,000 shares of Preferred Stock, par value $0.0001 (the "*Preferred Stock*"). The Preferred Stock may be issued from time to time in one or more series, each of such series to consist of such number of shares and to have such terms, rights, powers and preferences, and the qualifications and limitations with respect thereto, as stated or expressed herein.  As of the effective date of this Restated Certificate, all shares of the Preferred Stock of the Corporation are hereby designated "*Series A Preferred Stock*".

**A.    COMMON STOCK**

The following rights, powers privileges and restrictions, qualifications, and limitations apply to the Common Stock.

1.      **General**.  The voting, dividend and liquidation rights of the holders of the Common Stock are subject to and qualified by the rights, powers and privileges of the holders of the Preferred Stock set forth in this Restated Certificate.

134938982 v2

**PATENT**
**REEL: 056757 FRAME: 0703**

**2.** **Voting.** The holders of the Common Stock are entitled to one vote for each share of Common Stock held at all meetings of stockholders (and written actions in lieu of meetings). Unless required by law, there shall be no cumulative voting. The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by (in addition to any vote of the holders of one or more series of Preferred Stock that may be required by the terms of the Restated Certificate) the affirmative vote of the holders of shares of capital stock of the Corporation representing a majority of the votes represented by all outstanding shares of capital stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law.

**B.** **PREFERRED STOCK**

The following rights, powers and privileges, and restrictions, qualifications and limitations, shall apply to the Preferred Stock. Unless otherwise indicated, references to "Sections" in this Part B of this Article V refer to sections of this Part B.

**1.** **Liquidation, Dissolution, or Winding Up; Certain Mergers, Consolidations and Asset Sales.**

1.1 <u>Payments to Holders of Preferred Stock</u>. In the event of any voluntary or involuntary liquidation, dissolution or winding up (a "***Liquidation Event***") of the Corporation or any Deemed Liquidation Event (as defined below), before any payment shall be made to the holders of Common Stock by reason of their ownership thereof, the holders of shares of Preferred Stock then outstanding must be paid out of the funds and assets available for distribution to its stockholders, an amount per share equal to the greater of (a) the Original Issue Price for such share of Preferred Stock, plus any dividends declared but unpaid thereon, or (b) such amount per share as would have been payable had all shares of Preferred Stock been converted into Common Stock pursuant to Section 3 immediately prior to such liquidation, dissolution or winding up or Deemed Liquidation Event. If upon any such liquidation, dissolution, or winding up or Deemed Liquidation Event of the Corporation, the funds and assets available for distribution to the stockholders of the Corporation are insufficient to pay the holders of shares of Preferred Stock the full amount to which they are entitled under this Section 1.1, the holders of shares of Preferred Stock will share ratably in any distribution of the funds and assets available for distribution in proportion to the respective amounts that would otherwise be payable in respect of the shares of Preferred Stock held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

1.2 <u>Payments to Holders of Common Stock</u>. In the event of any Liquidation Event or Deemed Liquidation Event of the Corporation, after the payment of all preferential amounts required to be paid to the holders of shares of Preferred Stock as provided in Section 1.1, the remaining funds and assets available for distribution to the stockholders of the Corporation will be distributed among the holders of shares of Common Stock, pro rata based on the number of shares of Common Stock held by each such holder.

1.3 <u>Deemed Liquidation Events</u>.

1.3.1 <u>Definition</u>. Each of the following events is a "***Deemed Liquidation Event***" unless the Requisite Holders elect otherwise by written notice received by the Corporation at least five days prior to the effective date of any such event:

(a) a merger or consolidation in which (i) the Corporation is a constituent party or (ii) a subsidiary of the Corporation is a constituent party and the Corporation issues shares of its capital stock pursuant to such merger or consolidation, except any such merger or consolidation involving the Corporation or a subsidiary in which the shares of capital stock of the Corporation outstanding

PATENT
REEL: 056757 FRAME: 0704

immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for equity securities that represent, immediately following such merger or consolidation, a majority, by voting power, of the equity securities of (1) the surviving or resulting party or (2) if the surviving or resulting party is a wholly owned subsidiary of another party immediately following such merger or consolidation, the parent of such surviving or resulting party; *provided* that, for the purpose of this Section 1.3.1, all shares of Common Stock issuable upon exercise of options outstanding immediately prior to such merger or consolidation or upon conversion of Convertible Securities (as defined below) outstanding immediately prior to such merger or consolidation shall be deemed to be outstanding immediately prior to such merger or consolidation and, if applicable, deemed to be converted or exchanged in such merger or consolidation on the same terms as the actual outstanding shares of Common Stock are converted or exchanged; or

(b)     the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Corporation or any subsidiary of the Corporation of all or substantially all the assets of the Corporation and its subsidiaries taken as a whole, or, if substantially all of the assets of the Corporation and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, the sale or disposition (whether by merger or otherwise) of one or more subsidiaries of the Corporation, except where such sale, lease, transfer or other disposition is to the Corporation or one or more wholly owned subsidiaries of the Corporation.

1.3.2    <u>Amount Deemed Paid or Distributed</u>.  The funds and assets deemed paid or distributed to the holders of capital stock of the Corporation upon any such merger, consolidation, sale, transfer or other disposition described in this Section 1.3 will be the cash or the value of the property, rights or securities paid or distributed to such holders by the Corporation or the acquiring person, firm or other entity.  The value of such property, rights or securities shall be determined in good faith by the Board.

2.      <u>Voting.</u>

2.1     <u>General</u>.  On any matter presented to the stockholders of the Corporation for their action or consideration at any meeting of stockholders of the Corporation (or by written consent of stockholders in lieu of meeting), each holder of outstanding shares of Preferred Stock may cast the number of votes equal to the number of whole shares of Common Stock into which the shares of Preferred Stock held by such holder are convertible as of the record date for determining stockholders entitled to vote on such matter.  Fractional votes shall not be permitted and any fractional voting rights available on an as-converted basis (after aggregating all shares into which shares of Preferred Stock held by each holder could be converted) will be rounded down to the nearest whole number.  Except as provided by law or by the other provisions of this Restated Certificate, holders of Preferred Stock shall vote together with the holders of Common Stock as a single class on an as-converted basis, shall have full voting rights and powers equal to the voting rights and powers of the holders of Common Stock, and shall be entitled, notwithstanding any provision of this Restated Certificate, to notice of any stockholder meeting in accordance with the Bylaws of the Corporation.

2.2     <u>Election of Directors</u>.  The holders of record of the Corporation's capital stock, exclusively and voting together as a single class, shall be entitled to elect the total number of directors of the Corporation.  Any director elected as provided in the preceding sentence may be removed without cause by the affirmative vote of the holders of the shares of the Corporation's capital stock entitled to elect the director or directors, given either at a special meeting of the stockholders duly called for that purpose or pursuant to a written consent of stockholders.  At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the Corporation's capital stock entitled to elect the director constitutes a quorum for the purpose of electing the director.

PATENT
REEL: 056757 FRAME: 0705

2.3     <u>Preferred Stock Protective Provisions</u>.  At any time when at least 25% of the initially issued shares of Series A Preferred Stock remain outstanding, the Corporation shall not, either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by law or the Restated Certificate) the written consent or affirmative vote of the holders of a majority of the outstanding shares of Series A Preferred Stock, given in writing or by vote at a meeting, consenting, or voting (as the case may be) separately as a single class:

(a)     alter the rights, powers or privileges of the Series A Preferred Stock set forth in the Restated Certificate or the Bylaws, as then in effect, in a way that by its terms treats the Series A Preferred Stock adversely and in a manner in which such alteration does not treat all other series of Preferred Stock; or

(b)     increase the authorized number of shares of the Series A Preferred Stock.

**3.     Conversion.**  The holders of the Preferred Stock have the following conversion rights (the "***Conversion Rights***"):

3.1     <u>Right to Convert</u>.

3.1.1     <u>Conversion Ratio</u>.  Each share of Preferred Stock is convertible, at the option of the holder thereof, at any time, and without the payment of additional consideration by the holder thereof, into such number of fully paid and nonassessable shares of Common Stock as is determined by dividing the Original Issue Price for the series of Preferred Stock by the Conversion Price for that series of Preferred Stock in effect at the time of conversion.  The "***Conversion Price***" for each series of Preferred Stock means the Original Issue Price for such series of Preferred Stock, which initial Conversion Price, and the rate at which shares of Preferred Stock may be converted into shares of Common Stock, is subject to adjustment as provided in this Restated Certificate.

3.1.2     <u>Termination of Conversion Rights</u>.  Subject to Section 3.3.1 in the case of a Contingency Event (as defined below) herein, in the event of a Liquidation Event or a Deemed Liquidation Event, the Conversion Rights will terminate at the close of business on the last full day preceding the date fixed for the first payment of any funds and assets distributable on such event to the holders of Preferred Stock.

3.2     <u>Fractional Shares</u>.  No fractional shares of Common Stock will be issued upon conversion of the Preferred Stock.  In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall pay cash equal to such fraction multiplied by the fair market value of a share of Common Stock as determined in good faith by the Board.  Whether or not fractional shares would be issuable upon such conversion will be determined on the basis of the total number of shares of Preferred Stock the holder is at the time converting into Common Stock and the aggregate number of shares of Common Stock issuable upon such conversion.

3.3     <u>Mechanics of Conversion</u>.

3.3.1     <u>Notice of Conversion</u>.  To voluntarily convert shares of Preferred Stock into shares of Common Stock, a holder of Preferred Stock shall surrender the certificate or certificates for the shares of Preferred Stock (or, if such registered holder alleges that any such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate), at the office of the transfer agent for the Preferred Stock (or at the principal office of the Corporation if the Corporation serves as its own transfer agent),

PATENT
REEL: 056757 FRAME: 0706

together with written notice that the holder elects to convert all or any number of the shares of the Preferred Stock represented by the certificate or certificates and, if applicable, any event on which the conversion is contingent (a "**Contingency Event**"). The conversion notice must state the holder's name or the names of the nominees in which such holder wishes the certificate or certificates for shares of Common Stock to be issued. If required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by a written instrument or instruments of transfer, in form reasonably satisfactory to the Corporation, duly executed by the registered holder or such holder's attorney duly authorized in writing. The close of business on the date of receipt by the transfer agent (or by the Corporation if the Corporation serves as its own transfer agent) of the certificates (or lost certificate affidavit and agreement) and notice (or, if later, the date on which all Contingency Events have occurred) will be the time of conversion (the "**Conversion Time**"), and the shares of Common Stock issuable upon conversion of the shares represented by such certificate shall be deemed to be outstanding of record as of such time. The Corporation shall, as soon as practicable after the Conversion Time, (a) issue and deliver to the holder, or to the holder's nominees, a certificate or certificates for the number of full shares of Common Stock issuable upon the conversion in accordance with the provisions of this Restated Certificate and a certificate for the number (if any) of the shares of Preferred Stock represented by the surrendered certificate that were not converted into Common Stock, (b) pay in cash such amount as provided in Section 3.2 in lieu of any fraction of a share of Common Stock otherwise issuable upon such conversion and (c) pay all declared but unpaid dividends on the shares of Preferred Stock converted.

        3.3.2   <u>Reservation of Shares</u>.  For the purpose of effecting the conversion of the Preferred Stock, the Corporation shall at all times while any share of Preferred Stock is outstanding, reserve and keep available out of its authorized but unissued capital stock, that number of its duly authorized shares of Common Stock as may from time to time be sufficient to effect the conversion of all outstanding Preferred Stock; and if at any time the number of authorized but unissued shares of Common Stock is not sufficient to effect the conversion of all then-outstanding shares of the Preferred Stock, the Corporation shall use its best efforts to cause such corporate action to be taken as may be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite stockholder approval of any necessary amendment to this Restated Certificate. Before taking any action that would cause an adjustment reducing the Conversion Price of a series of Preferred Stock below the then-par value of the shares of Common Stock issuable upon conversion of such series of Preferred Stock, the Corporation shall take any corporate action that may be necessary so that the Corporation may validly and legally issue fully paid and nonassessable shares of Common Stock at such adjusted Conversion Price.

        3.3.3   <u>Effect of Conversion</u>.  All shares of Preferred Stock that shall have been surrendered for conversion as provided in this Restated Certificate shall no longer be deemed to be outstanding and all rights with respect to such shares will immediately cease and terminate at the Conversion Time, except only the right of the holders thereof to receive shares of Common Stock in exchange therefor, to receive payment in lieu of any fraction of a share otherwise issuable upon such conversion as provided in Section 3.2, and to receive payment of any dividends declared but unpaid thereon. Any shares of Preferred Stock so converted shall be retired and cancelled and may not be reissued.

        3.3.4   <u>No Further Adjustment</u>.  Upon any conversion of shares of Preferred Stock, no adjustment to the Conversion Price of the applicable series of Preferred Stock will be made with respect to the converted shares for any declared but unpaid dividends on such series of Preferred Stock or on the Common Stock delivered upon conversion.

      3.4   <u>Adjustments to Conversion Price for Diluting Issues</u>.

**PATENT
REEL: 056757 FRAME: 0707**

3.4.1    Special Definitions.  For purposes of this Article Fourth, the following definitions shall apply:

(a)    "**Option**" shall mean rights, options or warrants to subscribe for, purchase or otherwise acquire Common Stock or Convertible Securities.

(b)    "**Original Issue Date**" shall mean the date on which the first share of a series of Preferred Stock was issued.

(c)    "**Convertible Securities**" shall mean any evidences of indebtedness, shares or other securities directly or indirectly convertible into or exchangeable for Common Stock, but excluding Options.

(d)    "**Additional Shares of Common Stock**" shall mean all shares of Common Stock issued (or, pursuant to Section 3.4.3 below, deemed to be issued) by the Corporation after the Original Issue Date, other than (1) the following shares of Common Stock and (2) shares of Common Stock deemed issued pursuant to the following Options and Convertible Securities (clauses (1) and (2), collectively, "**Exempted Securities**"):

(i)    shares of Common Stock or Convertible Securities issued upon conversion of those certain Series 2017A Convertible Promissory Notes issued by the Company on or about February 3, 2017;

(ii)    shares of Common Stock, Options or Convertible Securities issued as a dividend or distribution on Preferred Stock;

(iii)    shares of Common Stock, Options or Convertible Securities issued by reason of a dividend, stock split, split-up or other distribution on shares of Common Stock that is covered by Sections 3.5, 3.6, 3.7 or 3.8;

(iv)    shares of Common Stock or Options issued to employees or directors of, or consultants or advisors to, the Corporation or any of its subsidiaries pursuant to a plan, agreement or arrangement approved by the Board;

(v)    shares of Common Stock or Convertible Securities actually issued upon the exercise of Options or shares of Common Stock actually issued upon the conversion or exchange of Convertible Securities, in each case provided such issuance is pursuant to the terms of such Option or Convertible Security;

(vi)    shares of Common Stock, Options or Convertible Securities issued to banks, equipment lessors or other financial institutions, or to real property lessors, pursuant to a debt financing, equipment leasing or real property leasing transaction approved by the Board;

134938982 v2

PATENT
REEL: 056757 FRAME: 0708

(vii)    shares of Common Stock, Options or Convertible Securities issued to suppliers or third party service providers in connection with the provision of goods or services pursuant to transactions approved by the Board;

(viii)    shares of Common Stock, Options or Convertible Securities issued pursuant to the acquisition of another corporation by the Corporation by merger, purchase of substantially all of the assets or other reorganization or to a joint venture agreement, _provided_ that such issuances are approved by the Board; or

(ix)    shares of Common Stock, Options or Convertible Securities issued in connection with sponsored research, collaboration, technology license, development, OEM, marketing or other similar agreements or strategic partnerships approved by the Board.

3.4.2   No Adjustment of Conversion Price.   No adjustment in the applicable Conversion Price shall be made as the result of the issuance or deemed issuance of Additional Shares of Common Stock if the Corporation receives written notice from the holders of at least a majority of the then outstanding shares of such series of Preferred Stock agreeing that no such adjustment shall be made as the result of the issuance or deemed issuance of such Additional Shares of Common Stock.

3.4.3   Deemed Issue of Additional Shares of Common Stock.

(a)   If the Corporation at any time or from time to time after the Original Issue Date shall issue any Options or Convertible Securities (excluding Options or Convertible Securities which are themselves Exempted Securities) or shall fix a record date for the determination of holders of any class of securities entitled to receive any such Options or Convertible Securities, then the maximum number of shares of Common Stock (as set forth in the instrument relating thereto, assuming the satisfaction of any conditions to exercisability, convertibility or exchangeability but without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or, in the case of Convertible Securities and Options therefor, the conversion or exchange of such Convertible Securities, shall be deemed to be Additional Shares of Common Stock issued as of the time of such issue or, in case such a record date shall have been fixed, as of the close of business on such record date.

(b)   If the terms of any Option or Convertible Security, the issuance of which resulted in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4, are revised as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase or decrease in the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any such Option or Convertible Security or (2) any increase or decrease in the consideration payable to the Corporation upon such exercise, conversion and/or exchange, then, effective upon such increase or decrease becoming effective, the Conversion Price computed upon the original issue of such Option or Convertible Security (or upon the occurrence of a record date with respect thereto) shall be readjusted to such Conversion Price as would have obtained had such revised terms been in effect upon the original date of

134938982 v2

PATENT
REEL: 056757 FRAME: 0709

issuance of such Option or Convertible Security.  Notwithstanding the foregoing, no readjustment pursuant to this clause (b) shall have the effect of increasing the Conversion Price to an amount which exceeds the lower of (i) the Conversion Price in effect immediately prior to the original adjustment made as a result of the issuance of such Option or Convertible Security, or (ii) the Conversion Price that would have resulted from any issuances of Additional Shares of Common Stock (other than deemed issuances of Additional Shares of Common Stock as a result of the issuance of such Option or Convertible Security) between the original adjustment date and such readjustment date.

(c)    If the terms of any Option or Convertible Security (excluding Options or Convertible Securities which are themselves Exempted Securities), the issuance of which did not result in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4 (either because the consideration per share (determined pursuant to Section 3.4.5) of the Additional Shares of Common Stock subject thereto was equal to or greater than the Conversion Price then in effect, or because such Option or Convertible Security was issued before the Original Issue Date), are revised after the Original Issue Date as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase in the number of shares of Common Stock issuable upon the exercise, conversion or exchange of any such Option or Convertible Security or (2) any decrease in the consideration payable to the Corporation upon such exercise, conversion or exchange, then such Option or Convertible Security, as so amended or adjusted, and the Additional Shares of Common Stock subject thereto (determined in the manner provided in Section 3.4.3.(a) shall be deemed to have been issued effective upon such increase or decrease becoming effective.

(d)    Upon the expiration or termination of any unexercised Option or unconverted or unexchanged Convertible Security (or portion thereof) which resulted (either upon its original issuance or upon a revision of its terms) in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4, the Conversion Price shall be readjusted to such Conversion Price as would have obtained had such Option or Convertible Security (or portion thereof) never been issued.

(e)    If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, is calculable at the time such Option or Convertible Security is issued or amended but is subject to adjustment based upon subsequent events, any adjustment to the Conversion Price provided for in this Section 3.4.3 shall be effected at the time of such issuance or amendment based on such number of shares or amount of consideration without regard to any provisions for subsequent adjustments (and any subsequent adjustments shall be treated as provided in clauses (b) and (c) of this Section 3.4.3).  If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, cannot be calculated at all at the time such Option or Convertible Security is issued or amended, any adjustment to the Conversion Price that would result under the terms of this Section 3.4.3  at the time of such issuance or amendment shall instead be effected at the time such number of shares and/or amount of consideration is first calculable (even if subject to subsequent adjustments), assuming for purposes of calculating such adjustment to the Conversion Price that such issuance or amendment took place at the time such calculation can first be made.

3.4.4    Adjustment of Conversion Price Upon Issuance of Additional Shares of Common Stock.  In the event the Corporation shall at any time after the Original Issue Date issue Additional Shares of Common Stock (including Additional Shares of Common Stock deemed to be issued pursuant to Section 3.4.3), without consideration or for a consideration per share less than the Conversion Price in effect immediately prior to such issue, then the Conversion Price shall be reduced, concurrently

PATENT
REEL: 056757 FRAME: 0710

with such issue, to a price (calculated to the nearest one-hundredth of a cent) determined in accordance with the following formula:

$$CP_2 = CP_1 * \ (A + B) \div (A + C).$$

For purposes of the foregoing formula, the following definitions shall apply:

$\qquad$ "$CP_2$" shall mean the Conversion Price in effect immediately after such issue of Additional Shares of Common Stock

$\qquad$ "$CP_1$" shall mean the Conversion Price in effect immediately prior to such issue of Additional Shares of Common Stock;

$\qquad$ "A" shall mean the number of shares of Common Stock outstanding immediately prior to such issue of Additional Shares of Common Stock (treating for this purpose as outstanding all shares of Common Stock issuable upon exercise of Options outstanding immediately prior to such issue or upon conversion or exchange of Convertible Securities (including the Preferred Stock) outstanding (assuming exercise of any outstanding Options therefor) immediately prior to such issue);

$\qquad$ "B" shall mean the number of shares of Common Stock that would have been issued if such Additional Shares of Common Stock had been issued at a price per share equal to $CP_1$ (determined by dividing the aggregate consideration received by the Corporation in respect of such issue by $CP_1$); and

$\qquad$ "C" shall mean the number of such Additional Shares of Common Stock issued in such transaction.

$\qquad$ 3.4.5   Determination of Consideration.  For purposes of this Section 3.4, the consideration received by the Corporation for the issue of any Additional Shares of Common Stock shall be computed as follows:

$\qquad$ (a)   Cash and Property:  Such consideration shall:

$\qquad$ (i)   insofar as it consists of cash, be computed at the aggregate amount of cash received by the Corporation, excluding amounts paid or payable for accrued interest;

$\qquad$ (ii)   insofar as it consists of property other than cash, be computed at the fair market value thereof at the time of such issue, as determined in good faith by the Board; and

$\qquad$ (iii)   in the event Additional Shares of Common Stock are issued together with other shares or securities or other assets of the Corporation for consideration which covers both, be the proportion of such consideration so received, computed as provided in clauses (i) and (ii) above, as determined in good faith by the Board.

134938982 v2

**PATENT**
**REEL: 056757 FRAME: 0711**

(b)      Options and Convertible Securities.  The consideration per share received by the Corporation for Additional Shares of Common Stock deemed to have been issued pursuant to Section 3.4.3, relating to Options and Convertible Securities, shall be determined by dividing:

(i)      the total amount, if any, received or receivable by the Corporation as consideration for the issue of such Options or Convertible Securities, plus the minimum aggregate amount of additional consideration (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such consideration) payable to the Corporation upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities, by

(ii)     the maximum number of shares of Common Stock (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities.

3.4.6   Multiple Closing Dates.  In the event the Corporation shall issue on more than one date Additional Shares of Common Stock that are a part of one transaction or a series of related transactions and that would result in an adjustment to the Conversion Price pursuant to the terms of Section 3.4, and such issuance dates occur within a period of no more than ninety (90) days from the first such issuance to the final such issuance, then, upon the final such issuance, the Conversion Price shall be readjusted to give effect to all such issuances as if they occurred on the date of the first such issuance (and without giving effect to any additional adjustments as a result of any such subsequent issuances within such period).

3.5      Adjustment for Stock Splits and Combinations.  If the Corporation at any time or from time to time after the date on which the first share of a series of Preferred Stock is issued by the Corporation (such date referred to herein as the "*Original Issue Date*" for such series of Preferred Stock) effects a subdivision of the outstanding Common Stock, the Conversion Price for each series of Preferred Stock in effect immediately before that subdivision shall be proportionately decreased so that the number of shares of Common Stock issuable on conversion of each share of that series will be increased in proportion to the increase in the aggregate number of shares of Common Stock outstanding.  If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock combines the outstanding shares of Common Stock, the Conversion Price for each series of Preferred Stock in effect immediately before the combination will be proportionately increased so that the number of shares of Common Stock issuable on conversion of each share of such series shall be decreased in proportion to such decrease in the aggregate number of shares of Common Stock outstanding.  Any adjustment under this Section 3.4 becomes effective at the close of business on the date the subdivision or combination becomes effective.

134938982 v2

PATENT
REEL: 056757 FRAME: 0712

3.6     Adjustment for Certain Dividends and Distributions. If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock shall make or issue, or fix a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable on the Common Stock in additional shares of Common Stock, then and in each such event the Conversion Price for such series of Preferred Stock in effect immediately before the event will be decreased as of the time of such issuance or, in the event a record date has been fixed, as of the close of business on such record date, by multiplying such Conversion Price then in effect by a fraction:

>      (a)     the numerator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of the issuance or the close of business on the record date, and

>      (b)     the denominator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on the record date plus the number of shares of Common Stock issuable in payment of such dividend or distribution.

Notwithstanding the foregoing, (i) if such record date has been fixed and the dividend is not fully paid or if such distribution is not fully made on the date fixed therefor, such Conversion Price shall be recomputed accordingly as of the close of business on such record date and thereafter such Conversion Price shall be adjusted pursuant to this Section 3.5 as of the time of actual payment of such dividends or distributions; and (ii) no such adjustment shall be made if the holders of such series of Preferred Stock simultaneously receive a dividend or other distribution of shares of Common Stock in a number equal to the number of shares of Common Stock that they would have received if all outstanding shares of such series of Preferred Stock had been converted into Common Stock on the date of the event.

3.7     Adjustments for Other Dividends and Distributions. If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock makes or issues, or fixes a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable in securities of the Corporation (other than a distribution of shares of Common Stock in respect of outstanding shares of Common Stock), then and in each such event the Corporation shall make, simultaneously with the distribution to the holders of Common Stock, a dividend or other distribution to the holders of the series of Preferred Stock in an amount equal to the amount of securities as the holders would have received if all outstanding shares of such series of Preferred Stock had been converted into Common Stock on the date of such event.

3.8     Adjustment for Reclassification, Exchange and Substitution. If at any time or from time to time after the Original Issue Date for a series of Preferred Stock the Common Stock issuable upon the conversion of such series of Preferred Stock is changed into the same or a different number of shares of any class or classes of stock of the Corporation, whether by recapitalization, reclassification, or otherwise (other than by a stock split or combination, dividend, distribution, merger or consolidation covered by Sections 3.4, 3.5, 3.6 or 3.8 or by Section 1.3 regarding a Deemed Liquidation Event), then in any such event each holder of such series of Preferred Stock may thereafter convert such stock into the kind and amount of stock and other securities and property receivable upon such recapitalization, reclassification or other change by holders of the number of shares of Common Stock into which such shares of Preferred Stock could have been converted immediately prior to such recapitalization, reclassification or change.

3.9     Adjustment for Merger or Consolidation. Subject to the provisions of Section 1.3, if any consolidation or merger occurs involving the Corporation in which the Common Stock (but not a series of Preferred Stock) is converted into or exchanged for securities, cash, or other property (other than a transaction covered by Sections 3.5, 3.6 or 3.7), then, following any such consolidation or merger, the

PATENT
REEL: 056757 FRAME: 0713

Corporation shall provide that each share of such series of Preferred Stock will thereafter be convertible, in lieu of the Common Stock into which it was convertible prior to such event, into the kind and amount of securities, cash, or other property that a holder of the number of shares of Common Stock of the Corporation issuable upon conversion of one share of such series of Preferred Stock immediately prior to the consolidation or merger would have been entitled to receive pursuant to the transaction; and, in such case, the Corporation shall make appropriate adjustment (as determined in good faith by the Board) in the application of the provisions in this Section 3 with respect to the rights and interests thereafter of the holders of such series of Preferred Stock, to the end that the provisions set forth in this Section 3 (including provisions with respect to changes in and other adjustments of the Conversion Price of such series of Preferred Stock) shall thereafter be applicable, as nearly as reasonably may be, in relation to any securities or other property thereafter deliverable upon the conversion of such series of Preferred Stock.

3.10   Certificate as to Adjustments.   Upon the occurrence of each adjustment or readjustment of the Conversion Price of a series of Preferred Stock pursuant to this Section 3, the Corporation at its expense shall, as promptly as reasonably practicable but in any event not later than 15 days thereafter, compute such adjustment or readjustment in accordance with the terms of this Restated Certificate and furnish to each holder of such series of Preferred Stock a certificate setting forth the adjustment or readjustment (including the kind and amount of securities, cash, or other property into which such series of Preferred Stock is convertible) and showing in detail the facts upon which such adjustment or readjustment is based.  The Corporation shall, as promptly as reasonably practicable after the written request at any time of any holder of any series of Preferred Stock (but in any event not later than 10 days thereafter), furnish or cause to be furnished to such holder a certificate setting forth (a) the Conversion Price of such series of Preferred Stock then in effect and (b) the number of shares of Common Stock and the amount, if any, of other securities, cash, or property which then would be received upon the conversion of such series of Preferred Stock.

3.11   Mandatory Conversion.   Upon either (a) the closing of the sale of shares of Common Stock to the public in a firm-commitment underwritten public offering pursuant to an effective registration statement under the Securities Act of 1933, as amended for a total offering of not less than $25,000,000 (before deduction of underwriters' commissions and expenses) or (b) the date and time, or the occurrence of an event, specified by vote or written consent of the Requisite Holders at the time of such vote or consent, voting as a single class on an as-converted basis (the time of such closing or the date and time specified or the time of the event specified in such vote or written consent, the "***Mandatory Conversion Time***"), (i) all outstanding shares of Preferred Stock will automatically convert into shares of Common Stock, at the applicable ratio described in Section 3.1.1 as the same may be adjusted from time to time in accordance with Section 3 and (ii) such shares may not be reissued by the Corporation.

3.12   Procedural Requirements.   The Corporation shall notify in writing all holders of record of shares of Preferred Stock of the Mandatory Conversion Time and the place designated for mandatory conversion of all such shares of Preferred Stock pursuant to Section 3.10.  Unless otherwise provided in this Restated Certificate, the notice need not be sent in advance of the occurrence of the Mandatory Conversion Time.  Upon receipt of the notice, each holder of shares of Preferred Stock shall surrender such holder's certificate or certificates for all such shares (or, if such holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate) to the Corporation at the place designated in such notice, and shall thereafter receive certificates for the number of shares of Common Stock to which such holder is entitled pursuant to this Section 3.  If so required by the Corporation, cer-tificates surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form reasonably satisfactory to the Corporation, duly executed by the registered holder or such holder's attorney duly authorized in writing.  All rights with respect to the Preferred Stock converted

- 12 -

PATENT
REEL: 056757 FRAME: 0714

pursuant to Section 3.10, including the rights, if any, to receive notices and vote (other than as a holder of Common Stock), will terminate at the Mandatory Conversion Time (notwithstanding the failure of the holder or holders thereof to surrender the certificates at or prior to such time), except only the rights of the holders thereof, upon surrender of their certificate or certificates (or lost certificate affidavit and agreement) therefor, to receive the items provided for in the next sentence of this Section 3.11. As soon as practicable after the Mandatory Conversion Time and the surrender of the certificate or certificates (or lost certificate affidavit and agreement) for Preferred Stock, the Corporation shall issue and deliver to such holder, or to such holder's nominee(s), a certificate or certificates for the number of full shares of Common Stock issuable on such conversion in accordance with the provisions hereof, together with cash as provided in Section 3.2 in lieu of any fraction of a share of Common Stock otherwise issuable upon such conversion and the payment of any declared but unpaid dividends on the shares of Preferred Stock converted. Such converted Preferred Stock shall be retired and cancelled and may not be reissued as shares of such series, and the Corporation may thereafter take such appropriate action (without the need for stockholder action) as may be necessary to reduce the authorized number of shares of Preferred Stock (and the applicable series thereof) accordingly.

4.  **Dividends.**

4.1  <u>Non-Cumulative Preferred Stock Dividend</u>.  The Corporation shall not pay or set aside any dividends on shares of any other class or series of capital stock of the Corporation (other than dividends on shares of Common Stock payable in shares of Common Stock) unless (in addition to the obtaining of any consents required elsewhere in this Restated Certificate) the holders of the Preferred Stock then outstanding shall first receive, or simultaneously receive, out of funds legally available therefor, a dividend on each outstanding share of Preferred Stock in an amount in cash equal to 6% of the applicable Original Issue Price per annum on each outstanding share of such Preferred Stock calculated from the date of issuance of such share of Preferred Stock. The foregoing dividends shall not be cumulative and shall be paid when, as and if declared by the Board.

4.2  <u>Participation in Additional Dividends</u>. If, after dividends in the full preferential amount specified in Section 4.1 for the Preferred Stock have been paid or set apart for payment, the Board shall declare additional dividends out of funds legally available therefor, then such additional dividends shall be declared *pro rata* on the Common Stock and the Preferred Stock on a *pari passu* basis in a per share amount equal (on an as-if-converted to Common Stock basis) to the amount paid or set aside for each share of Common Stock.

4.3  <u>Non-Cash Dividends</u>. Whenever a dividend provided for in this Section 4 shall be payable in property other than cash, the value of such dividend shall be deemed to be the fair market value of such property as determined in good faith by the Board.

5.  **Redeemed or Otherwise Acquired Shares.**  Any shares of Preferred Stock that are redeemed or otherwise acquired by the Corporation or any of its subsidiaries will be automatically and immediately cancelled and retired and shall not be reissued, sold or transferred. Neither the Corporation nor any of its subsidiaries may exercise any voting or other rights granted to the holders of Preferred Stock following any such redemption.

6.  **Waiver.**  Any of the rights, powers, privileges and other terms of the Preferred Stock set forth herein may be waived prospectively or retrospectively on behalf of all holders of Preferred Stock by the affirmative written consent or vote of the Requisite Holders.

7.  **Notice of Record Date.**  In the event:

PATENT
REEL: 056757 FRAME: 0715

(a)    the Corporation takes a record of the holders of its Common Stock (or other capital stock or securities at the time issuable upon conversion of the Preferred Stock) for the purpose of entitling or enabling them to receive any dividend or other distribution, or to receive any right to subscribe for or purchase any shares of capital stock of any class or any other securities, or to receive any other security; or

(b)    of any capital reorganization of the Corporation, any reclassification of the Common Stock of the Corporation, or any Liquidation Event or Deemed Liquidation Event,

then, and in each such case, the Corporation shall send or cause to be sent to the holders of the Preferred Stock a written notice specifying, as the case may be, (i) the record date for such dividend, distribution, or right, and the amount and character of such dividend, distribution or right, or (ii) the effective date on which such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up is proposed to take place, and the time, if any is to be fixed, as of which the holders of record of Common Stock (or such other capital stock or securities at the time issuable upon the conversion of the Preferred Stock) will be entitled to exchange their shares of Common Stock (or such other capital stock or securities) for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up, and the amount per share and character of such exchange applicable to the Preferred Stock and the Common Stock.  The Corporation shall send the notice at least 20 days before  the earlier of the record date or effective date for the event specified in the notice.

**8.    Notices.**  Except as otherwise provided herein, any notice required or permitted by the provisions of this Article V to be given to a holder of shares of Preferred Stock must be mailed, postage prepaid, to the post office address last shown on the records of the Corporation, or given by electronic communication in compliance with the provisions of the General Corporation Law, and will be deemed sent upon such mailing or electronic transmission.

## ARTICLE VI: PREEMPTIVE RIGHTS.

No stockholder of the Corporation has a right to purchase shares of capital stock of the Corporation sold or issued by the Corporation except to the extent that such a right may from time to time be set forth in a written agreement between the Corporation and the stockholder.

## ARTICLE VII: BYLAW PROVISIONS.

**A.    AMENDMENT OF BYLAWS.**  Subject to any additional vote required by this Restated Certificate or bylaws of the Corporation (the "*Bylaws*"), in furtherance and not in limitation of the powers conferred by statute, the Board is expressly authorized to make, repeal, alter, amend and rescind any or all of the Bylaws.

**B.    NUMBER OF DIRECTORS.**  Subject to any additional vote required by this Restated Certificate, the number of directors of the Corporation will be determined in the manner set forth in the Bylaws.

**C.    BALLOT.**  Elections of directors need not be by written ballot unless the Bylaws so provide.

**D.    MEETINGS AND BOOKS.**  Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws may provide.  The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the Board or in the Bylaws.

## ARTICLE VIII: DIRECTOR LIABILITY.

- 14 -

PATENT
REEL: 056757 FRAME: 0716

**A.     LIMITATION.**  To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.  If the General Corporation Law or any other law of the State of Delaware is amended after approval by the stockholders of this Article VIII to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law as so amended.  Any repeal or modification of the foregoing provisions of this Article VIII by the stockholders will not adversely affect any right or protection of a director of the Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director occurring prior to, such repeal or modification.

**B.     INDEMNIFICATION.**  To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation (and any other persons to which General Corporation Law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the General Corporation Law.

**C.     MODIFICATION.**  Any amendment, repeal, or modification of the foregoing provisions of this Article VIII will not adversely affect any right or protection of any director, officer or other agent of the Corporation existing at the time of such amendment, repeal or modification.

*     *     *     *     *

- 15 -

**PATENT**
**RECORDED: 07/02/2021**                                        **REEL: 056757 FRAME: 0717**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                           EPAS ID: PAT6795342
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| AVAAGO, INC. | 01/14/2019 |

**RECEIVING PARTY DATA**

| Name: | MAKO CAPITAL, LLC |
|---|---|
| Street Address: | 1 SUTTON PLACE SOUTH, APT. 7 |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 17184264 |

**CORRESPONDENCE DATA**

**Fax Number:** (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:** 6174439292
**Email:** kwhitehouse@sunsteinlaw.com
**Correspondent Name:** SUNSTEIN LLP
**Address Line 1:** 100 HIGH STREET
**Address Line 4:** BOSTON, MASSACHUSETTS 02110

| ATTORNEY DOCKET NUMBER: | 4502/1011 |
|---|---|
| NAME OF SUBMITTER: | ANDREW P. SIUTA |
| SIGNATURE: | /Andrew P. Siuta, #78,990/ |
| DATE SIGNED: | 07/02/2021 |

**Total Attachments: 2**
source=klw4502_1011_Avaago_Mako#page1.tif
source=klw4502_1011_Avaago_Mako#page2.tif

## CONFIRMATORY ASSIGNMENT

This confirmatory assignment confirms the assignment of certain assets by virtue of the BILL OF SALE and PATENT ASSIGNMENT AGREEMENT made on March 9, 2018 by and between the following parties (the "PARTIES"):

Ian J. Gazes as chapter 7 trustee of AVAAGO, INC. (the "Assignor), having its place of business at Gazes LLC, 151 Hudson Street, New York, New York 10013; and

MAKO CAPITAL, LLC (the "Assignee"), having its principal place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022.

WHEREAS on February 22, 2018, the United States Bankruptcy Court for the Southern District of New York entered an order authorizing the Assignor's sale of all of AVAAGO, INC.'S assets, including all of AVAAGO INC.'S intellectual property, to MAKO CAPITAL, LLC (the ":Sale Order") pursuant to the terms of that certain Asset Purchase Agreement between the PARTIES.

WHEREAS the Sale Order provides, among other things, that the Assignor "is authorized and directed to do and perform all acts, to make, and execute all related instruments and documents, which may be required or necessary for performance pursuant to the terms of the Asset Purchase Agreement.   WHEREAS the Parties had executed a BILL OF SALE effective March 9, 2018 in which Assignor sold to Assignee "all of Assignor's intellectual property of any kind or nature" including United States Patent Application No. 62/106,613 and the inventions related thereto.

WHEREAS the Parties had executed a PATENT ASSIGNMENT AGREEMENT effective March 9, 2018 in which Assignor assigned to Assignee all right, title, and interest in United States Patent Application No. 62/106,613 sufficient to allow Assignee to acquire all right, title, and interest in any Patent subsequently granted thereon.

WHEREAS the Assignor owned other related patent applications that were not explicitly mentioned in the BILL OF SALE or the PATENT ASSIGNMENT AGREEMENT but nonetheless were sold and assigned by Assignor to Assignee by virtue of the terms of these agreements, as listed in the following table (hereinafter the "Patents"):

| Country Name | App. Title: | Application #: | Filing Date: |
|---|---|---|---|
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/047,473 | 08-Sep-2014 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/106,613 | 22-Jan-2015 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | 08-Sep-2015 |
| PCT | Method and System for Presenting and Operating a Skill-Based Activity | PCT/US2015/048970 | 08-Sep-2015 |

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor confirms that it has sold, assigned and transferred, and,

**PATENT**
**REEL: 056744 FRAME: 0547**

by these presents does hereby sell, assign and transfer to Assignee, its successors and assigns, for the territory of the United States of America and the entire world, effective as of **March 9, 2018**, its entire right, title and interest in and to such inventions, any applications included in the Patents, and any patents, and any reissues and extensions thereof, which issue or have issued in any country upon patent applications which correspond with or claim priority from any of such applications or patents or any divisional, continuation-in-whole, or continuation-in-part thereof, including the right to sue and collect for past, present, and future infringement; the same to be held and enjoyed by Assignee for its own use, and for the use of its legal representatives, to the full term for which such patents have been granted as fully and entirely as the same would have been held by Assignor had this assignment not been made. The BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby amended to the extent necessary, if any, to give effect to the foregoing effective this date. In all other respects, the BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby ratified and confirmed.

ASSIGNOR

By: _____      Date: _____1/14____, 2019

Ian J. Gazes

as chapter 7 trustee of AVAAGO, INC.

4780 SW 86th Terrace

Miami, Florida 33143

Title: Trustee

State of Florida                    NOTARY PUBLIC
County of Dade          . ss.   01 | 14    , 2019

On this 14th day of January, 2019, before me, the undersigned notary public, personally appeared Ian Krawiek Gazes, proved to me through satisfactory evidence of identification, which consisted of FL Driver licene, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

JENNYFER C. TORRECILLAS
Notary Public - State of Florida
Commission # FF...
My Comm. Expires ... 2019

My commission expires: Oct. 13, 2019

## DECLARATION OF ACCEPTANCE BY ASSIGNEE

The above named Assignee, Mako Capital, LLC, hereby declares that with effect from this _6th_ day of _____February_____, 2019   it accepts the patents, including all goodwill of the business symbolized by such patents including all rights to recover past, present and future damages for infringement, assigned to it by Assignor, Ian J. Gazes as chapter 7 trustee of AVAAGO, INC., pursuant to the foregoing Confirmatory Assignment.

MAKO CAPITAL, LLC

By: _____      Date: February 6, 2019

Barbara Laurence

1 Sutton Place South, Apt. 7

New York, New York 10022

Title: Managing Member

**PATENT**
**REEL: 056744 FRAME: 0548**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                                    EPAS ID: PAT6795352
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| MAKO CAPITAL, LLC | 10/17/2019 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | VETNOS LLC |
| Street Address: | 1 SUTTON PLACE SOUTH, APT. 7 |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 17184264 |

**CORRESPONDENCE DATA**

**Fax Number:**    (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 6174439292 |
| Email: | kwhitehouse@sunsteinlaw.com |
| Correspondent Name: | SUNSTEIN LLP |
| Address Line 1: | 100 HIGH STREET |
| Address Line 4: | BOSTON, MASSACHUSETTS 02110 |

| ATTORNEY DOCKET NUMBER: | 4502/1011 |
|---|---|
| NAME OF SUBMITTER: | ANDREW P. SIUTA |
| SIGNATURE: | /Andrew P. Siuta, #78,990/ |
| DATE SIGNED: | 07/02/2021 |

**Total Attachments: 2**
source=klw4502_1011_Mako_Vetnos#page1.tif
source=klw4502_1011_Mako_Vetnos#page2.tif

CONFIRMATORY ASSIGNMENT

WHEREAS, Mako Capital, LLC (the "Assignor), having its place of business at 1 Sutton Place South, Apt. 7B, New York, New York 10022 was the owner of the following Patent Applications:

| Country Name | App. Title: | Application # | Filing Date: | Patent # | Issue Date |
|---|---|---|---|---|---|
| US | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | 08-Sep-2015 | 10,353,543 | 16-July-2019 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 16/502,169 | 03-July-2019 | | |

WHEREAS Assignor, by a Patent Assignment Agreement executed on February 21, 2019 by Joshua Berkowitz, Manager of Mako Capital, LLC, assigned all rights, titles, and interests in the foregoing Patent Applications to Vetnos LLC (the "Assignee"), having its principal place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022;

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor confirms that it has assigned and transferred, and, by these presents does hereby assign and transfer to Assignee, its successors and assigns, for the territory of the United States of America and the entire world, effective as of **February 21, 2019**, its entire right, title and interest in and to any inventions, included in the Patent Applications, and any patents, and any reissues and extensions thereof, which issue or have issued in any country upon patent applications which correspond to or claim priority from any of such applications or any divisional, continuation-in-whole, or continuation-in-part thereof, including the right to sue and collect for past, present, and future infringement; the same to be held and enjoyed by Assignee for its own use, and for the use of its legal representatives, to the full term for which such patents have been granted as fully and entirely as the same would have been held by Assignor had this assignment not been made.

Assignor does hereby further covenant and agree that it will not execute any writing or do any act whatsoever conflicting with these presents, and that Assignor, its successors and assigns, will at any time upon request without further additional consideration, but at the expense of Assignee, its successors and assigns, execute such additional writings and do such additional acts as Assignee, its successors and assigns, may determine as necessary or desirable in the enjoyment of this grant, and in any proceedings or transactions involving such inventions, patent applications or patents.

1

ASSIGNOR:

MAKO CAPITAL, LLC

By: _____          Date: _10_/_17_, 2019
    Joshua Berkowitz
    Manager, Mako Capital, LLC
    1 Sutton Place South, Apt. 7B
    New York, New York 10022

NOTARY PUBLIC

State of _New York_

County of _Bronx_, ss.                              _10|17_, 2019

On this _17_ day of _October_, 2019, before me, the undersigned notary public,

personally appeared _Joshua Berkowitz_ proved to me through satisfactory

evidence of identification, which consisted of _NYSDL_, to be the

person whose name is signed on the preceding or attached document, and acknowledged

to me that he/she signed it voluntarily for its stated purpose.

Seal

Notary Public
My commission expires: _June 1, 2020_

DIANA RIVERA
Notary Public - State of New York
NO. 01RI6110607
Qualified in Bronx County
My Commission Expires Jun 1, 2020

2

**PATENT**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT7115265

| **SUBMISSION TYPE:** | NEW ASSIGNMENT |
|---|---|
| **NATURE OF CONVEYANCE:** | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| JAMES MORRISON | 10/30/2014 |
| KENNETH WHITE | 05/06/2015 |
| DAVID MANPEARL | 10/30/2014 |
| BENJAMIN SCOTT STAHLHOOD II | 10/30/2014 |
| DANIEL ORLOW | 10/30/2014 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| **Name:** | GAME SPORTS NETWORK, INC. |
| **Street Address:** | 880 THIRD AVENUE, 6TH FLOOR |
| **City:** | NEW YORK |
| **State/Country:** | NEW YORK |
| **Postal Code:** | 10022 |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number |
|---|---|
| Application Number: | 17509766 |
| Application Number: | 17527496 |

**CORRESPONDENCE DATA**

**Fax Number:**              (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:**                       6174439292
**Email:**                        kwhitehouse@sunsteinlaw.com
**Correspondent Name:**    SUNSTEIN LLP
**Address Line 1:**           100 HIGH STREET
**Address Line 4:**           BOSTON, MASSACHUSETTS 02110

| **ATTORNEY DOCKET NUMBER:** | 4502/1012, 1014 |
|---|---|
| **NAME OF SUBMITTER:** | ANDREW P. SIUTA |
| **SIGNATURE:** | /Andrew P. Siuta, #78,990/ |
| **DATE SIGNED:** | 01/11/2022 |

**Total Attachments: 7**

source=klw4502_1012_Inventors_GameSports#page1.tif
source=klw4502_1012_Inventors_GameSports#page2.tif
source=klw4502_1012_Inventors_GameSports#page3.tif
source=klw4502_1012_Inventors_GameSports#page4.tif
source=klw4502_1012_Inventors_GameSports#page5.tif
source=klw4502_1012_Inventors_GameSports#page6.tif
source=klw4502_1012_Inventors_GameSports#page7.tif

## ASSIGNMENT

**ASSIGNOR:**           James Morrison
                        Kenneth White
                        David Manpearl
                        Benjamin Scott Stahlhood, II
                        Alan Pavlish
                        Daniel Orlow
                        Charles Goldman
                        Joseph M. Brennan, Jr.

**ASSIGNEE:**           Game Sports Network, Inc.
                        880 Third Avenue, 6th floor
                        New York, NY 10022

**STATE OF
INCORPORATION:**        Delaware

**INVENTION:**          Method and System for Presenting and Operating a Skill-Based
                        Activity

**ATTORNEY DOCKET:**    4097/1001

**SERIAL NO:**          62/047,473

**FILING DATE:**        September 8, 2014

Assignor is a joint inventor of the above invention (the "Invention") described in a United States patent application (the "Application") bearing the above attorney docket number and having as a title the above name for the Invention. The Application has a Patent and Trademark Office filing date and serial number as indicated above, or if no filing date and serial number are shown, has a Declaration executed by Assignor contemporaneously with this Assignment.

For valuable consideration, receipt of which is acknowledged, each Assignor hereby assigns to Assignee (which term shall include Assignee's successors and assigns), all of Assignor's right, title and interest in the Invention, all improvements therein, the Application

04097/01001 2194521.1

PATENT
REEL: 058622 FRAME: 0267

and all priority rights arising therefrom, and any patents, and any reissues and extensions thereof, which issue in any country upon any patent applications which correspond with any of the following:  the Application, any divisional, continuation-in-whole, or substitute United States application which is based on the Application; or any continuation-in-part United States application (including divisions, continuations-in-whole or -in-part, and substitutions thereof or therefor) based in-part on any of the above described applications.

Each Assignor further agrees that such Assignor and Assignor's heirs and legal representatives will, without further consideration, cooperate with Assignee in the prosecution of all of the above applications, execute, verify, acknowledge and deliver all such further papers, including applications for patents and for reissues and extensions therefor, and instruments of assignment and transfer thereof, and will communicate any facts known to Assignor relating to the Invention, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee.  Each Assignor further agrees that such Assignor will, without further compensation to Assignor during the term of such Assignor's employment by Assignee and thereafter for reasonable compensation as determined by Assignee, perform such other acts as may be reasonably required when requested by Assignee, including attending depositions, preparing and executing declarations and affidavits and testifying as a witness, to obtain or maintain or enforce patents for the Invention and improvements therein in any and all countries and to vest title thereto in Assignee.

I hereby authorize and request Sunstein Kann Murphy & Timbers LLP to supply any missing patent/application identification information or correct any errors in the patent/application identification information provided above, whether discovered prior to or after recordation.

PATENT
REEL: 058622 FRAME: 0268

IN WITNESS WHEREOF, each Assignor hereby executes this instrument on the date set forth below.

Date: _OCTOBER 30th 2014_ _____

James Morrison, Assignor

STATE OF NEVADA

County of _CLARK_, ss.                              _OCTOBER 30_, 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared James Morrison, proved to me through satisfactory evidence of identification, which consisted of _CALIFORNIA DRIVERS LICENSE_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

_Christine J. Posner_

Notary Public

My commission expires: _MAY 11, 2017_

CHRISTINE J. POSNER
Notary Public, State of Nevada
Appointment No. 00-10138-1
My Appt. Expires May 11, 2017

Date: _____        _____

Kenneth White, Assignor

STATE OF NEVADA

County of _____, ss.                    _____, 2014

On this ____ day of _____, 2014, before me, the undersigned notary public, personally appeared Kenneth White, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal                                _____

Notary Public

My commission expires:

04097/01001 2194521.1

Page 3 of 6

PATENT
REEL: 058622 FRAME: 0269

IN WITNESS WHEREOF, each Assignor hereby executes this instrument on the date set forth below.

Date: _____         _____
                                         James Morrison, Assignor

STATE OF NEVADA

County of _____, ss.                                   _____, 2015

On this _____ day of _____, 2015, before me, the undersigned notary public, personally appeared James Morrison, proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal                                     Notary Public

                                         My commission expires:

Date: __5/6/15_____              _____
                                         Kenneth White, Assignor

STATE OF NEVADA

County of Clark, ss.                                 May 6, 2015

On this 6 day of May, 2015, before me, the undersigned notary public, personally appeared Kenneth White, proved to me through satisfactory evidence of identification, which consisted of NN OL, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal    LAURA GONZALES                   Notary Public
        Notary Public State of Nevada
        No. 06-6240-1                    My commission expires: 9/10/16
        My Appt. Exp. Sept. 10, 2016

04097/01001 2196525.1                    Page 3 of 6

PATENT
REEL: 058622 FRAME: 0270

Date: _10 - 30 - 14_

_____
David Manpearl, Assignor

STATE OF ~~CALIFORNIA~~ _NEVADA_

County of _CLARK_, ss.                    _October 30_, 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared David Manpearl, proved to me through satisfactory evidence of identification, which consisted of _CALIF. DRIVEN'S LICENSE_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that  he/she signed it voluntarily for its stated purpose.

_Christine J. Pemer_
Notary Public

My commission expires: _MAY 11, 2017_

Seal

[Notary seal: CHRISTINE J. POMER, Notary Public, State of Nevada, Appointment No. 09-10193-1, My Appt. Expires May 11, 2017]

Date: _10/30/14_

_____
Benjamin Scott Stahlhood II, Assignor

STATE OF ~~FLORIDA~~ _NEVADA_

County of _CLARK_, ss.                    _October 30_, 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared Benjamin Scottt Stahlhood, proved to me through satisfactory evidence of identification, which consisted of _FLORIDA DRIVEN'S LICENSE_ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_Christine J. Pemer_
Notary Public

My commission expires: _MAY 11, 2017_

Seal

[Notary seal: CHRISTINE J. POMER, Notary Public, State of Nevada, Appointment No. 09-10193-1, My Appt. Expires May 11, 2017]

04097/01001 2194521.1

Page **4** of 6

**PATENT**
**REEL: 058622 FRAME: 0271**

Date: _10-30-14_

_NEVADA (CP)_

STATE OF ~~CALIFORNIA~~

Alan Pavlish, Assignor

County of _CLARK_, ss.                    _October 30th,_ 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared Alan Pavlish, proved to me through satisfactory evidence of identification, which consisted of _Calif. Driver's License,_ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.



Seal

_Christine J Power_
Notary Public

My commission expires: _MAY 11, 2017_

Date: _10.30.14_

_NEVADA (CP)_

STATE OF ~~NEW YORK~~

Dan Orlow, Assignor

County of _CLARK_, ss.                    _October 30_, 2014

On this _30th_ day of _October_, 2014, before me, the undersigned notary public, personally appeared ~~Alan~~ Dan Orlow, proved to me through satisfactory evidence of identification, which consisted of _New York Driver's Licence,_ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_Christine J Power_
Notary Public

Seal

My commission expires:



04097/01001 2194521.1

Page **5** of **6**

Date: 11/4/14

_____
Charles Goldman, Assignor

STATE OF MASSACHUSETTS

County of  NY  , ss.

11/4/, 2014

On this 4 day of November, 2014, before me, the undersigned notary public, personally appeared Charles Goldman, proved to me through satisfactory evidence of identification, which consisted of Drivers License MA , to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

```
><><><><><><><><><><><><><><
    MATTHEW F CORDOVA
  Notary Public, State of New York
         No. 01CO6277901
      Qualified in Kings County
  Commission Expires Mar. 18, 2017
><><><><><><><><><><><><><><
```

Notary Public

My commission expires:

Date: _____

_____
Joseph M. Brennan, Jr., Assignor

STATE OF VIRGINIA

County of          , ss.

_____, 2014

On this ____ day of _____, 2014, before me, the undersigned notary public, personally appeared Joseph M. Brennan, Jr., proved to me through satisfactory evidence of identification, which consisted of _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Seal

_____
Notary Public

My commission expires:

04097/01001 2194521.1

Page 6 of 6

PATENT
REEL: 058622 FRAME: 0273

RECORDED: 01/11/2022

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT7115288

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | CHANGE OF NAME |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| GAME SPORTS NETWORK, INC. | 06/15/2017 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | AVAAGO, INC. |
| Street Address: | 151 HUDSON STREET |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10013 |

### PROPERTY NUMBERS Total: 2

| Property Type | Number |
|---|---|
| Application Number: | 17509766 |
| Application Number: | 17527496 |

### CORRESPONDENCE DATA

**Fax Number:** (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:** 6174439292
**Email:** kwhitehouse@sunsteinlaw.com
**Correspondent Name:** SUNSTEIN LLP
**Address Line 1:** 100 HIGH STREET
**Address Line 4:** BOSTON, MASSACHUSETTS 02110

| ATTORNEY DOCKET NUMBER: | 4502/1012, 1014 |
|---|---|
| NAME OF SUBMITTER: | ANDREW P. SIUTA |
| SIGNATURE: | /Andrew P. Siuta, #78,990/ |
| DATE SIGNED: | 01/11/2022 |

**Total Attachments: 17**
source=klw4502_1012_NameChange_GamesSports_Avaago#page1.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page2.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page3.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page4.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page5.tif

source=klw4502_1012_NameChange_GamesSports_Avaago#page6.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page7.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page8.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page9.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page10.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page11.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page12.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page13.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page14.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page15.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page16.tif
source=klw4502_1012_NameChange_GamesSports_Avaago#page17.tif



# Delaware

Page 1

## The First State

*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "GAME SPORTS NETWORK, INC.", CHANGING ITS NAME FROM "GAME SPORTS NETWORK, INC." TO "AVAAGO, INC.", FILED IN THIS OFFICE ON THE NINTH DAY OF AUGUST, A.D. 2017, AT 4:56 O`CLOCK P.M.*

*A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.*

Jeffrey W. Bullock, Secretary of State

4975497  8100
SR# 20175652931

Authentication: 203036744
Date: 08-10-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered  04:56 PM 08/09/2017
FILED  04:56 PM 08/09/2017
SR  20175652931  - File Number  4975497

**GAME SPORTS NETWORK, INC.**

**RESTATED CERTIFICATE OF INCORPORATION**

(Pursuant to Sections 242 and 245 of the
General Corporation Law of the State of Delaware)

Game Sports Network, Inc., a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware (the "*General Corporation Law*"), does hereby certify as follows.

1.      The name of this corporation is Game Sports Network, Inc. and that this corporation was originally incorporated pursuant to the General Corporation Law on April 29, 2011 under the name Line Gaming Holdings Corp.

2.      The Board of Directors of this corporation duly adopted resolutions proposing to amend and restate the Certificate of Incorporation of this corporation, declaring said amendment and restatement to be advisable and in the best interests of this corporation and its stockholders, and authorizing the appropriate officers of this corporation to solicit the consent of the stockholders therefor, which resolution setting forth the proposed amendment and restatement is as follows.

RESOLVED, that the Certificate of Incorporation of this corporation be amended and restated in its entirety to read as set forth on Exhibit A attached hereto and incorporated herein by this reference.

3.      Exhibit A referred to above is attached hereto as Exhibit A and is hereby incorporated herein by this reference.  This Restated Certificate of Incorporation was approved by the holders of the requisite number of shares of this corporation in accordance with Section 228 of the General Corporation Law.

4.      This Restated Certificate of Incorporation, which restates and integrates and further amends the provisions of this corporation's Certificate of Incorporation, has been duly adopted in accordance with Sections 242 and 245 of the General Corporation Law.

**IN WITNESS WHEREOF**, this Restated Certificate of Incorporation has been executed by a duly authorized officer of this corporation on June 15, 2017.

By: /s/ Marie Alexander
Marie Alexander, Chief Executive Officer

PATENT
REEL: 058701 FRAME: 0273

**Exhibit A**

**AVAAGO, INC.**

**RESTATED CERTIFICATE OF INCORPORATION**

**ARTICLE I:  NAME.**

The name of this corporation is Avaago, Inc. (the "**Corporation**").

**ARTICLE II:  REGISTERED OFFICE.**

The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, City of Wilmington, County of New Castle, 19801. The name of its registered agent at such address is The Corporation Trust Company.

**ARTICLE III:  DEFINITIONS.**

As used in this Restated Certificate (the "**Restated Certificate**"), the following terms have the meanings set forth below:

"**Board**" means the board of directors of the Corporation.

"**Original Issue Price**" means $13.31 per share for the Series A Preferred Stock.

"**Requisite Holders**" means the holders of a majority of the outstanding shares of Preferred Stock (voting as a single class on an as-converted basis).

**ARTICLE IV:  PURPOSE.**

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law.

**ARTICLE V:  AUTHORIZED SHARES.**

The total number of shares of all classes of stock that the Corporation has authority to issue is 1,900,000 consisting of (a) 1,200,000 shares of Common Stock, par value $0.0001 (the "**Common Stock**") and (b) 700,000 shares of Preferred Stock, par value $0.0001 (the "**Preferred Stock**"). The Preferred Stock may be issued from time to time in one or more series, each of such series to consist of such number of shares and to have such terms, rights, powers and preferences, and the qualifications and limitations with respect thereto, as stated or expressed herein.  As of the effective date of this Restated Certificate, all shares of the Preferred Stock of the Corporation are hereby designated "**Series A Preferred Stock**".

**A.   COMMON STOCK**

The following rights, powers privileges and restrictions, qualifications, and limitations apply to the Common Stock.

1.   **General**.  The voting, dividend and liquidation rights of the holders of the Common Stock are subject to and qualified by the rights, powers and privileges of the holders of the Preferred Stock set forth in this Restated Certificate.

134938982 v2

**PATENT**
**REEL: 058701 FRAME: 0274**

2.      **Voting.**  The holders of the Common Stock are entitled to one vote for each share of Common Stock held at all meetings of stockholders (and written actions in lieu of meetings).  Unless required by law, there shall be no cumulative voting.  The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by (in addition to any vote of the holders of one or more series of Preferred Stock that may be required by the terms of the Restated Certificate) the affirmative vote of the holders of shares of capital stock of the Corporation representing a majority of the votes represented by all outstanding shares of capital stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law.

**B.      PREFERRED STOCK**

The following rights, powers and privileges, and restrictions, qualifications and limitations, shall apply to the Preferred Stock.  Unless otherwise indicated, references to "Sections" in this Part B of this Article V refer to sections of this Part B.

1.      **Liquidation, Dissolution, or Winding Up; Certain Mergers, Consolidations and Asset Sales.**

1.1      Payments to Holders of Preferred Stock.  In the event of any voluntary or involuntary liquidation, dissolution or winding up (a "**Liquidation Event**") of the Corporation or any Deemed Liquidation Event (as defined below), before any payment shall be made to the holders of Common Stock by reason of their ownership thereof, the holders of shares of Preferred Stock then outstanding must be paid out of the funds and assets available for distribution to its stockholders, an amount per share equal to the greater of (a) the Original Issue Price for such share of Preferred Stock, plus any dividends declared but unpaid thereon, or (b)  such amount per share as would have been payable had all shares of Preferred Stock been converted into Common Stock pursuant to Section 3 immediately prior to such liquidation, dissolution or winding up or Deemed Liquidation Event.  If upon any such liquidation, dissolution, or winding up or Deemed Liquidation Event of the Corporation, the funds and assets available for distribution to the stockholders of the Corporation are insufficient to pay the holders of shares of Preferred Stock the full amount to which they are entitled under this Section 1.1, the holders of shares of Preferred Stock will share ratably in any distribution of the funds and assets available for distribution in proportion to the respective amounts that would otherwise be payable in respect of the shares of Preferred Stock held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

1.2      Payments to Holders of Common Stock.  In the event of any Liquidation Event or Deemed Liquidation Event of the Corporation, after the payment of all preferential amounts required to be paid to the holders of shares of Preferred Stock as provided in Section 1.1, the remaining funds and assets available for distribution to the stockholders of the Corporation will be distributed among the holders of shares of Common Stock, pro rata based on the number of shares of Common Stock held by each such holder.

1.3      Deemed Liquidation Events.

1.3.1      Definition.  Each of the following events is a "**Deemed Liquidation Event**" unless the Requisite Holders elect otherwise by written notice received by the Corporation at least five days prior to the effective date of any such event:

(a)      a merger or consolidation in which (i) the Corporation is a constituent party or (ii) a subsidiary of the Corporation is a constituent party and the Corporation issues shares of its capital stock pursuant to such merger or consolidation, except any such merger or consolidation involving the Corporation or a subsidiary in which the shares of capital stock of the Corporation outstanding

**PATENT**
**REEL: 058701 FRAME: 0275**

immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for equity securities that represent, immediately following such merger or consolidation, a majority, by voting power, of the equity securities of (1) the surviving or resulting party or (2) if the surviving or resulting party is a wholly owned subsidiary of another party immediately following such merger or consolidation, the parent of such surviving or resulting party; *provided* that, for the purpose of this Section 1.3.1, all shares of Common Stock issuable upon exercise of options outstanding immediately prior to such merger or consolidation or upon conversion of Convertible Securities (as defined below) outstanding immediately prior to such merger or consolidation shall be deemed to be outstanding immediately prior to such merger or consolidation and, if applicable, deemed to be converted or exchanged in such merger or consolidation on the same terms as the actual outstanding shares of Common Stock are converted or exchanged; or

(b)     the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Corporation or any subsidiary of the Corporation of all or substantially all the assets of the Corporation and its subsidiaries taken as a whole, or, if substantially all of the assets of the Corporation and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, the sale or disposition (whether by merger or otherwise) of one or more subsidiaries of the Corporation, except where such sale, lease, transfer or other disposition is to the Corporation or one or more wholly owned subsidiaries of the Corporation.

1.3.2     <u>Amount Deemed Paid or Distributed</u>.  The funds and assets deemed paid or distributed to the holders of capital stock of the Corporation upon any such merger, consolidation, sale, transfer or other disposition described in this Section 1.3 will be the cash or the value of the property, rights or securities paid or distributed to such holders by the Corporation or the acquiring person, firm or other entity.  The value of such property, rights or securities shall be determined in good faith by the Board.

2.     **<u>Voting</u>.**

2.1     <u>General</u>.  On any matter presented to the stockholders of the Corporation for their action or consideration at any meeting of stockholders of the Corporation (or by written consent of stockholders in lieu of meeting), each holder of outstanding shares of Preferred Stock may cast the number of votes equal to the number of whole shares of Common Stock into which the shares of Preferred Stock held by such holder are convertible as of the record date for determining stockholders entitled to vote on such matter.  Fractional votes shall not be permitted and any fractional voting rights available on an as-converted basis (after aggregating all shares into which shares of Preferred Stock held by each holder could be converted) will be rounded down to the nearest whole number.  Except as provided by law or by the other provisions of this Restated Certificate, holders of Preferred Stock shall vote together with the holders of Common Stock as a single class on an as-converted basis, shall have full voting rights and powers equal to the voting rights and powers of the holders of Common Stock, and shall be entitled, notwithstanding any provision of this Restated Certificate, to notice of any stockholder meeting in accordance with the Bylaws of the Corporation.

2.2     <u>Election of Directors</u>.  The holders of record of the Corporation's capital stock, exclusively and voting together as a single class, shall be entitled to elect the total number of directors of the Corporation.  Any director elected as provided in the preceding sentence may be removed without cause by the affirmative vote of the holders of the shares of the Corporation's capital stock entitled to elect the director or directors, given either at a special meeting of the stockholders duly called for that purpose or pursuant to a written consent of stockholders.  At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the Corporation's capital stock entitled to elect the director constitutes a quorum for the purpose of electing the director.

PATENT
REEL: 058701 FRAME: 0276

2.3    <u>Preferred Stock Protective Provisions</u>.   At any time when at least 25% of the initially issued shares of Series A Preferred Stock remain outstanding, the Corporation shall not, either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by law or the Restated Certificate) the written consent or affirmative vote of the holders of a majority of the outstanding shares of Series A Preferred Stock, given in writing or by vote at a meeting, consenting, or voting (as the case may be) separately as a single class:

(a)    alter the rights, powers or privileges of the Series A Preferred Stock set forth in the Restated Certificate or the Bylaws, as then in effect, in a way that by its terms treats the Series A Preferred Stock adversely and in a manner in which such alteration does not treat all other series of Preferred Stock; or

(b)    increase the authorized number of shares of the Series A Preferred Stock.

**3.    <u>Conversion</u>.**   The holders of the Preferred Stock have the following conversion rights (the "***Conversion Rights***"):

3.1    <u>Right to Convert</u>.

3.1.1    <u>Conversion Ratio</u>.   Each share of Preferred Stock is convertible, at the option of the holder thereof, at any time, and without the payment of additional consideration by the holder thereof, into such number of fully paid and nonassessable shares of Common Stock as is determined by dividing the Original Issue Price for the series of Preferred Stock by the Conversion Price for that series of Preferred Stock in effect at the time of conversion.   The "***Conversion Price***" for each series of Preferred Stock means the Original Issue Price for such series of Preferred Stock, which initial Conversion Price, and the rate at which shares of Preferred Stock may be converted into shares of Common Stock, is subject to adjustment as provided in this Restated Certificate.

3.1.2    <u>Termination of Conversion Rights</u>.   Subject to Section 3.3.1 in the case of a Contingency Event (as defined below) herein, in the event of a Liquidation Event or a Deemed Liquidation Event, the Conversion Rights will terminate at the close of business on the last full day preceding the date fixed for the first payment of any funds and assets distributable on such event to the holders of Preferred Stock.

3.2    <u>Fractional Shares</u>.   No fractional shares of Common Stock will be issued upon conversion of the Preferred Stock.   In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall pay cash equal to such fraction multiplied by the fair market value of a share of Common Stock as determined in good faith by the Board.   Whether or not fractional shares would be issuable upon such conversion will be determined on the basis of the total number of shares of Preferred Stock the holder is at the time converting into Common Stock and the aggregate number of shares of Common Stock issuable upon such conversion.

3.3    <u>Mechanics of Conversion</u>.

3.3.1    <u>Notice of Conversion</u>.   To voluntarily convert shares of Preferred Stock into shares of Common Stock, a holder of Preferred Stock shall surrender the certificate or certificates for the shares of Preferred Stock (or, if such registered holder alleges that any such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate), at the office of the transfer agent for the Preferred Stock (or at the principal office of the Corporation if the Corporation serves as its own transfer agent),

PATENT
REEL: 058701 FRAME: 0277

together with written notice that the holder elects to convert all or any number of the shares of the Preferred Stock represented by the certificate or certificates and, if applicable, any event on which the conversion is contingent (a "**Contingency Event**"). The conversion notice must state the holder's name or the names of the nominees in which such holder wishes the certificate or certificates for shares of Common Stock to be issued. If required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by a written instrument or instruments of transfer, in form reasonably satisfactory to the Corporation, duly executed by the registered holder or such holder's attorney duly authorized in writing. The close of business on the date of receipt by the transfer agent (or by the Corporation if the Corporation serves as its own transfer agent) of the certificates (or lost certificate affidavit and agreement) and notice (or, if later, the date on which all Contingency Events have occurred) will be the time of conversion (the "**Conversion Time**"), and the shares of Common Stock issuable upon conversion of such certificate represented by such certificate shall be deemed to be outstanding of record as of such time. The Corporation shall, as soon as practicable after the Conversion Time, (a) issue and deliver to the holder, or to the holder's nominees, a certificate or certificates for the number of full shares of Common Stock issuable upon the conversion in accordance with the provisions of this Restated Certificate and a certificate for the number (if any) of the shares of Preferred Stock represented by the surrendered certificate that were not converted into Common Stock, (b) pay in cash such amount as provided in Section 3.2 in lieu of any fraction of a share of Common Stock otherwise issuable upon such conversion and (c) pay all declared but unpaid dividends on the shares of Preferred Stock converted.

3.3.2   Reservation of Shares. For the purpose of effecting the conversion of the Preferred Stock, the Corporation shall at all times while any share of Preferred Stock is outstanding, reserve and keep available out of its authorized but unissued capital stock, that number of its duly authorized shares of Common Stock as may from time to time be sufficient to effect the conversion of all outstanding Preferred Stock; and if at any time the number of authorized but unissued shares of Common Stock is not sufficient to effect the conversion of all then-outstanding shares of the Preferred Stock, the Corporation shall use its best efforts to cause such corporate action to be taken as may be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite stockholder approval of any necessary amendment to this Restated Certificate. Before taking any action that would cause an adjustment reducing the Conversion Price of a series of Preferred Stock below the then-par value of the shares of Common Stock issuable upon conversion of such series of Preferred Stock, the Corporation shall take any corporate action that may be necessary so that the Corporation may validly and legally issue fully paid and nonassessable shares of Common Stock at such adjusted Conversion Price.

3.3.3   Effect of Conversion. All shares of Preferred Stock that shall have been surrendered for conversion as provided in this Restated Certificate shall no longer be deemed to be outstanding and all rights with respect to such shares will immediately cease and terminate at the Conversion Time, except only the right of the holders thereof to receive shares of Common Stock in exchange therefor, to receive payment in lieu of any fraction of a share otherwise issuable upon such conversion as provided in Section 3.2, and to receive payment of any dividends declared but unpaid thereon. Any shares of Preferred Stock so converted shall be retired and cancelled and may not be reissued.

3.3.4   No Further Adjustment. Upon any conversion of shares of Preferred Stock, no adjustment to the Conversion Price of the applicable series of Preferred Stock will be made with respect to the converted shares for any declared but unpaid dividends on such series of Preferred Stock or on the Common Stock delivered upon conversion.

3.4   Adjustments to Conversion Price for Diluting Issues.

PATENT
REEL: 058701 FRAME: 0278

3.4.1   Special Definitions.   For purposes of this Article Fourth, the following definitions shall apply:

(a)   "**Option**" shall mean rights, options or warrants to subscribe for, purchase or otherwise acquire Common Stock or Convertible Securities.

(b)   "**Original Issue Date**" shall mean the date on which the first share of a series of Preferred Stock was issued.

(c)   "**Convertible Securities**" shall mean any evidences of indebtedness, shares or other securities directly or indirectly convertible into or exchangeable for Common Stock, but excluding Options.

(d)   "**Additional Shares of Common Stock**" shall mean all shares of Common Stock issued (or, pursuant to Section 3.4.3 below, deemed to be issued) by the Corporation after the Original Issue Date, other than (1) the following shares of Common Stock and (2) shares of Common Stock deemed issued pursuant to the following Options and Convertible Securities (clauses (1) and (2), collectively, "**Exempted Securities**"):

(i)   shares of Common Stock or Convertible Securities issued upon conversion of those certain Series 2017A Convertible Promissory Notes issued by the Company on or about February 3, 2017;

(ii)   shares of Common Stock, Options or Convertible Securities issued as a dividend or distribution on Preferred Stock;

(iii)   shares of Common Stock, Options or Convertible Securities issued by reason of a dividend, stock split, split-up or other distribution on shares of Common Stock that is covered by Sections 3.5, 3.6, 3.7 or 3.8;

(iv)   shares of Common Stock or Options issued to employees or directors of, or consultants or advisors to, the Corporation or any of its subsidiaries pursuant to a plan, agreement or arrangement approved by the Board;

(v)   shares of Common Stock or Convertible Securities actually issued upon the exercise of Options or shares of Common Stock actually issued upon the conversion or exchange of Convertible Securities, in each case provided such issuance is pursuant to the terms of such Option or Convertible Security;

(vi)   shares of Common Stock, Options or Convertible Securities issued to banks, equipment lessors or other financial institutions, or to real property lessors, pursuant to a debt financing, equipment leasing or real property leasing transaction approved by the Board;

- 6 -

PATENT
REEL: 058701 FRAME: 0279

      (vii)    shares of Common Stock, Options or Convertible Securities issued to suppliers or third party service providers in connection with the provision of goods or services pursuant to transactions approved by the Board;

      (viii)    shares of Common Stock, Options or Convertible Securities issued pursuant to the acquisition of another corporation by the Corporation by merger, purchase of substantially all of the assets or other reorganization or to a joint venture agreement, provided that such issuances are approved by the Board; or

      (ix)    shares of Common Stock, Options or Convertible Securities issued in connection with sponsored research, collaboration, technology license, development, OEM, marketing or other similar agreements or strategic partnerships approved by the Board.

      3.4.2   No Adjustment of Conversion Price.  No adjustment in the applicable Conversion Price shall be made as the result of the issuance or deemed issuance of Additional Shares of Common Stock if the Corporation receives written notice from the holders of at least a majority of the then outstanding shares of such series of Preferred Stock agreeing that no such adjustment shall be made as the result of the issuance or deemed issuance of such Additional Shares of Common Stock.

      3.4.3   Deemed Issue of Additional Shares of Common Stock.

      (a)    If the Corporation at any time or from time to time after the Original Issue Date shall issue any Options or Convertible Securities (excluding Options or Convertible Securities which are themselves Exempted Securities) or shall fix a record date for the determination of holders of any class of securities entitled to receive any such Options or Convertible Securities, then the maximum number of shares of Common Stock (as set forth in the instrument relating thereto, assuming the satisfaction of any conditions to exercisability, convertibility or exchangeability but without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or, in the case of Convertible Securities and Options therefor, the conversion or exchange of such Convertible Securities, shall be deemed to be Additional Shares of Common Stock issued as of the time of such issue or, in case such a record date shall have been fixed, as of the close of business on such record date.

      (b)    If the terms of any Option or Convertible Security, the issuance of which resulted in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4, are revised as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase or decrease in the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any such Option or Convertible Security or (2) any increase or decrease in the consideration payable to the Corporation upon such exercise, conversion and/or exchange, then, effective upon such increase or decrease becoming effective, the Conversion Price computed upon the original issue of such Option or Convertible Security (or upon the occurrence of a record date with respect thereto) shall be readjusted to such Conversion Price as would have obtained had such revised terms been in effect upon the original date of

PATENT
REEL: 058701 FRAME: 0280

issuance of such Option or Convertible Security.  Notwithstanding the foregoing, no readjustment pursuant to this clause (b) shall have the effect of increasing the Conversion Price to an amount which exceeds the lower of (i) the Conversion Price in effect immediately prior to the original adjustment made as a result of the issuance of such Option or Convertible Security, or (ii) the Conversion Price that would have resulted from any issuances of Additional Shares of Common Stock (other than deemed issuances of Additional Shares of Common Stock as a result of the issuance of such Option or Convertible Security) between the original adjustment date and such readjustment date.

(c)     If the terms of any Option or Convertible Security (excluding Options or Convertible Securities which are themselves Exempted Securities), the issuance of which did not result in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4 (either because the consideration per share (determined pursuant to Section 3.4.5) of the Additional Shares of Common Stock subject thereto was equal to or greater than the Conversion Price then in effect, or because such Option or Convertible Security was issued before the Original Issue Date), are revised after the Original Issue Date as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase in the number of shares of Common Stock issuable upon the exercise, conversion or exchange of any such Option or Convertible Security or (2) any decrease in the consideration payable to the Corporation upon such exercise, conversion or exchange, then such Option or Convertible Security, as so amended or adjusted, and the Additional Shares of Common Stock subject thereto (determined in the manner provided in Section 3.4.3.(a) shall be deemed to have been issued effective upon such increase or decrease becoming effective.

(d)     Upon the expiration or termination of any unexercised Option or unconverted or unexchanged Convertible Security (or portion thereof) which resulted (either upon its original issuance or upon a revision of its terms) in an adjustment to the Conversion Price pursuant to the terms of Section 3.4.4, the Conversion Price shall be readjusted to such Conversion Price as would have obtained had such Option or Convertible Security (or portion thereof) never been issued.

(e)     If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, is calculable at the time such Option or Convertible Security is issued or amended but is subject to adjustment based upon subsequent events, any adjustment to the Conversion Price provided for in this Section 3.4.3 shall be effected at the time of such issuance or amendment based on such number of shares or amount of consideration without regard to any provisions for subsequent adjustments (and any subsequent adjustments shall be treated as provided in clauses (b) and (c) of this Section 3.4.3).  If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, cannot be calculated at all at the time such Option or Convertible Security is issued or amended, any adjustment to the Conversion Price that would result under the terms of this Section 3.4.3  at the time of such issuance or amendment shall instead be effected at the time such number of shares and/or amount of consideration is first calculable (even if subject to subsequent adjustments), assuming for purposes of calculating such adjustment to the Conversion Price that such issuance or amendment took place at the time such calculation can first be made.

3.4.4   Adjustment of Conversion Price Upon Issuance of Additional Shares of Common Stock.  In the event the Corporation shall at any time after the Original Issue Date issue Additional Shares of Common Stock (including Additional Shares of Common Stock deemed to be issued pursuant to Section 3.4.3), without consideration or for a consideration per share less than the Conversion Price in effect immediately prior to such issue, then the Conversion Price shall be reduced, concurrently

PATENT
REEL: 058701 FRAME: 0281

with such issue, to a price (calculated to the nearest one-hundredth of a cent) determined in accordance with the following formula:

$$CP_2 = CP_1 * \ (A + B) \div (A + C).$$

For purposes of the foregoing formula, the following definitions shall apply:

"$CP_2$" shall mean the Conversion Price in effect immediately after such issue of Additional Shares of Common Stock

"$CP_1$" shall mean the Conversion Price in effect immediately prior to such issue of Additional Shares of Common Stock;

"A" shall mean the number of shares of Common Stock outstanding immediately prior to such issue of Additional Shares of Common Stock (treating for this purpose as outstanding all shares of Common Stock issuable upon exercise of Options outstanding immediately prior to such issue or upon conversion or exchange of Convertible Securities (including the Preferred Stock) outstanding (assuming exercise of any outstanding Options therefor) immediately prior to such issue);

"B" shall mean the number of shares of Common Stock that would have been issued if such Additional Shares of Common Stock had been issued at a price per share equal to $CP_1$ (determined by dividing the aggregate consideration received by the Corporation in respect of such issue by $CP_1$); and

"C" shall mean the number of such Additional Shares of Common Stock issued in such transaction.

3.4.5   Determination of Consideration.  For purposes of this Section 3.4, the consideration received by the Corporation for the issue of any Additional Shares of Common Stock shall be computed as follows:

(a)   Cash and Property:  Such consideration shall:

(i)   insofar as it consists of cash, be computed at the aggregate amount of cash received by the Corporation, excluding amounts paid or payable for accrued interest;

(ii)   insofar as it consists of property other than cash, be computed at the fair market value thereof at the time of such issue, as determined in good faith by the Board; and

(iii)   in the event Additional Shares of Common Stock are issued together with other shares or securities or other assets of the Corporation for consideration which covers both, be the proportion of such consideration so received, computed as provided in clauses (i) and (ii) above, as determined in good faith by the Board.

134938982 v2

PATENT
REEL: 058701 FRAME: 0282

(b)     <u>Options and Convertible Securities</u>.  The consideration per share received by the Corporation for Additional Shares of Common Stock deemed to have been issued pursuant to Section 3.4.3, relating to Options and Convertible Securities, shall be determined by dividing:

(i)     the total amount, if any, received or receivable by the Corporation as consideration for the issue of such Options or Convertible Securities, plus the minimum aggregate amount of additional consideration (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such consideration) payable to the Corporation upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities, by

(ii)    the maximum number of shares of Common Stock (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities.

3.4.6   <u>Multiple Closing Dates</u>.  In the event the Corporation shall issue on more than one date Additional Shares of Common Stock that are a part of one transaction or a series of related transactions and that would result in an adjustment to the Conversion Price pursuant to the terms of Section 3.4, and such issuance dates occur within a period of no more than ninety (90) days from the first such issuance to the final such issuance, then, upon the final such issuance, the Conversion Price shall be readjusted to give effect to all such issuances as if they occurred on the date of the first such issuance (and without giving effect to any additional adjustments as a result of any such subsequent issuances within such period).

3.5     <u>Adjustment for Stock Splits and Combinations</u>.  If the Corporation at any time or from time to time after the date on which the first share of a series of Preferred Stock is issued by the Corporation (such date referred to herein as the "***Original Issue Date***" for such series of Preferred Stock) effects a subdivision of the outstanding Common Stock, the Conversion Price for each series of Preferred Stock in effect immediately before that subdivision shall be proportionately decreased so that the number of shares of Common Stock issuable on conversion of each share of that series will be increased in proportion to the increase in the aggregate number of shares of Common Stock outstanding.  If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock combines the outstanding shares of Common Stock, the Conversion Price for each series of Preferred Stock in effect immediately before the combination will be proportionately increased so that the number of shares of Common Stock issuable on conversion of each share of such series shall be decreased in proportion to such decrease in the aggregate number of shares of Common Stock outstanding.  Any adjustment under this Section 3.4 becomes effective at the close of business on the date the subdivision or combination becomes effective.

- 10 -

PATENT
REEL: 058701 FRAME: 0283

3.6     Adjustment for Certain Dividends and Distributions.  If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock shall make or issue, or fix a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable on the Common Stock in additional shares of Common Stock, then and in each such event the Conversion Price for such series of Preferred Stock in effect immediately before the event will be decreased as of the time of such issuance or, in the event a record date has been fixed, as of the close of business on such record date, by multiplying such Conversion Price then in effect by a fraction:

(a)     the numerator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of the issuance or the close of business on the record date, and

(b)     the denominator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on the record date plus the number of shares of Common Stock issuable in payment of such dividend or distribution.

Notwithstanding the foregoing, (i) if such record date has been fixed and the dividend is not fully paid or if such distribution is not fully made on the date fixed therefor, such Conversion Price shall be recomputed accordingly as of the close of business on such record date and thereafter such Conversion Price shall be adjusted pursuant to this Section 3.5 as of the time of actual payment of such dividends or distributions; and (ii) no such adjustment shall be made if the holders of such series of Preferred Stock simultaneously receive a dividend or other distribution of shares of Common Stock in a number equal to the number of shares of Common Stock that they would have received if all outstanding shares of such series of Preferred Stock had been converted into Common Stock on the date of the event.

3.7     Adjustments for Other Dividends and Distributions.  If the Corporation at any time or from time to time after the Original Issue Date for a series of Preferred Stock makes or issues, or fixes a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable in securities of the Corporation (other than a distribution of shares of Common Stock in respect of outstanding shares of Common Stock), then and in each such event the Corporation shall make, simultaneously with the distribution to the holders of Common Stock, a dividend or other distribution to the holders of the series of Preferred Stock in an amount equal to the amount of securities as the holders would have received if all outstanding shares of such series of Preferred Stock had been converted into Common Stock on the date of such event.

3.8     Adjustment for Reclassification, Exchange and Substitution.  If at any time or from time to time after the Original Issue Date for a series of Preferred Stock the Common Stock issuable upon the conversion of such series of Preferred Stock is changed into the same or a different number of shares of any class or classes of stock of the Corporation, whether by recapitalization, reclassification, or otherwise (other than by a stock split or combination, dividend, distribution, merger or consolidation covered by Sections 3.4, 3.5, 3.6 or 3.8 or by Section 1.3 regarding a Deemed Liquidation Event), then in any such event each holder of such series of Preferred Stock may thereafter convert such stock into the kind and amount of stock and other securities and property receivable upon such recapitalization, reclassification or other change by holders of the number of shares of Common Stock into which such shares of Preferred Stock could have been converted immediately prior to such recapitalization, reclassification or change.

3.9     Adjustment for Merger or Consolidation.  Subject to the provisions of Section 1.3, if any consolidation or merger occurs involving the Corporation in which the Common Stock (but not a series of Preferred Stock) is converted into or exchanged for securities, cash, or other property (other than a transaction covered by Sections 3.5, 3.6 or 3.7), then, following any such consolidation or merger, the

PATENT
REEL: 058701 FRAME: 0284

Corporation shall provide that each share of such series of Preferred Stock will thereafter be convertible, in lieu of the Common Stock into which it was convertible prior to such event, into the kind and amount of securities, cash, or other property that a holder of the number of shares of Common Stock of the Corporation issuable upon conversion of one share of such series of Preferred Stock immediately prior to the consolidation or merger would have been entitled to receive pursuant to the transaction; and, in such case, the Corporation shall make appropriate adjustment (as determined in good faith by the Board) in the application of the provisions in this Section 3 with respect to the rights and interests thereafter of the holders of such series of Preferred Stock, to the end that the provisions set forth in this Section 3 (including provisions with respect to changes in and other adjustments of the Conversion Price of such series of Preferred Stock) shall thereafter be applicable, as nearly as reasonably may be, in relation to any securities or other property thereafter deliverable upon the conversion of such series of Preferred Stock.

        3.10   <u>Certificate as to Adjustments</u>.  Upon the occurrence of each adjustment or readjustment of the Conversion Price of a series of Preferred Stock pursuant to this Section 3, the Corporation at its expense shall, as promptly as reasonably practicable but in any event not later than 15 days thereafter, compute such adjustment or readjustment in accordance with the terms of this Restated Certificate and furnish to each holder of such series of Preferred Stock a certificate setting forth the adjustment or readjustment (including the kind and amount of securities, cash, or other property into which such series of Preferred Stock is convertible) and showing in detail the facts upon which such adjustment or readjustment is based.  The Corporation shall, as promptly as reasonably practicable after the written request at any time of any holder of any series of Preferred Stock (but in any event not later than 10 days thereafter), furnish or cause to be furnished to such holder a certificate setting forth (a) the Conversion Price of such series of Preferred Stock then in effect and (b) the number of shares of Common Stock and the amount, if any, of other securities, cash, or property which then would be received upon the conversion of such series of Preferred Stock.

        3.11   <u>Mandatory Conversion</u>.  Upon either (a) the closing of the sale of shares of Common Stock to the public in a firm-commitment underwritten public offering pursuant to an effective registration statement under the Securities Act of 1933, as amended for a total offering of not less than $25,000,000 (before deduction of underwriters' commissions and expenses) or (b) the date and time, or the occurrence of an event, specified by vote or written consent of the Requisite Holders at the time of such vote or consent, voting as a single class on an as-converted basis (the time of such closing or the date and time specified or the time of the event specified in such vote or written consent, the "***Mandatory Conversion Time***"), (i) all outstanding shares of Preferred Stock will automatically convert into shares of Common Stock, at the applicable ratio described in Section 3.1.1 as the same may be adjusted from time to time in accordance with Section 3 and (ii) such shares may not be reissued by the Corporation.

        3.12   <u>Procedural Requirements</u>.  The Corporation shall notify in writing all holders of record of shares of Preferred Stock of the Mandatory Conversion Time and the place designated for mandatory conversion of all such shares of Preferred Stock pursuant to Section 3.10.  Unless otherwise provided in this Restated Certificate, the notice need not be sent in advance of the occurrence of the Mandatory Conversion Time.  Upon receipt of the notice, each holder of shares of Preferred Stock shall surrender such holder's certificate or certificates for all such shares (or, if such holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate) to the Corporation at the place designated in such notice, and shall thereafter receive certificates for the number of shares of Common Stock to which such holder is entitled pursuant to this Section 3.  If so required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form reasonably satisfactory to the Corporation, duly executed by the registered holder or such holder's attorney duly authorized in writing.  All rights with respect to the Preferred Stock converted

134938982 v2

PATENT
REEL: 058701 FRAME: 0285

pursuant to Section 3.10, including the rights, if any, to receive notices and vote (other than as a holder of Common Stock), will terminate at the Mandatory Conversion Time (notwithstanding the failure of the holder or holders thereof to surrender the certificates at or prior to such time), except only the rights of the holders thereof, upon surrender of their certificate or certificates (or lost certificate affidavit and agreement) therefor, to receive the items provided for in the next sentence of this Section 3.11. As soon as practicable after the Mandatory Conversion Time and the surrender of the certificate or certificates (or lost certificate affidavit and agreement) for Preferred Stock, the Corporation shall issue and deliver to such holder, or to such holder's nominee(s), a certificate or certificates for the number of full shares of Common Stock issuable on such conversion in accordance with the provisions hereof, together with cash as provided in Section 3.2 in lieu of any fraction of a share of Common Stock otherwise issuable upon such conversion and the payment of any declared but unpaid dividends on the shares of Preferred Stock converted. Such converted Preferred Stock shall be retired and cancelled and may not be reissued as shares of such series, and the Corporation may thereafter take such appropriate action (without the need for stockholder action) as may be necessary to reduce the authorized number of shares of Preferred Stock (and the applicable series thereof) accordingly.

4.      **Dividends.**

4.1     <u>Non-Cumulative Preferred Stock Dividend</u>.  The Corporation shall not pay or set aside any dividends on shares of any other class or series of capital stock of the Corporation (other than dividends on shares of Common Stock payable in shares of Common Stock) unless (in addition to the obtaining of any consents required elsewhere in this Restated Certificate) the holders of the Preferred Stock then outstanding shall first receive, or simultaneously receive, out of funds legally available therefor, a dividend on each outstanding share of Preferred Stock in an amount in cash equal to 6% of the applicable Original Issue Price per annum on each outstanding share of such Preferred Stock calculated from the date of issuance of such share of Preferred Stock. The foregoing dividends shall not be cumulative and shall be paid when, as and if declared by the Board.

4.2     <u>Participation in Additional Dividends</u>. If, after dividends in the full preferential amount specified in Section 4.1 for the Preferred Stock have been paid or set apart for payment, the Board shall declare additional dividends out of funds legally available therefor, then such additional dividends shall be declared *pro rata* on the Common Stock and the Preferred Stock on a *pari passu* basis in a per share amount equal (on an as-if-converted to Common Stock basis) to the amount paid or set aside for each share of Common Stock.

4.3     <u>Non-Cash Dividends</u>. Whenever a dividend provided for in this Section 4 shall be payable in property other than cash, the value of such dividend shall be deemed to be the fair market value of such property as determined in good faith by the Board.

5.      **Redeemed or Otherwise Acquired Shares.**  Any shares of Preferred Stock that are redeemed or otherwise acquired by the Corporation or any of its subsidiaries will be automatically and immediately cancelled and retired and shall not be reissued, sold or transferred. Neither the Corporation nor any of its subsidiaries may exercise any voting or other rights granted to the holders of Preferred Stock following any such redemption.

6.      **Waiver.**  Any of the rights, powers, privileges and other terms of the Preferred Stock set forth herein may be waived prospectively or retrospectively on behalf of all holders of Preferred Stock by the affirmative written consent or vote of the Requisite Holders.

7.      **Notice of Record Date.**  In the event:

- 13 -

PATENT
REEL: 058701 FRAME: 0286

(a)     the Corporation takes a record of the holders of its Common Stock (or other capital stock or securities at the time issuable upon conversion of the Preferred Stock) for the purpose of entitling or enabling them to receive any dividend or other distribution, or to receive any right to subscribe for or purchase any shares of capital stock of any class or any other securities, or to receive any other security; or

(b)     of any capital reorganization of the Corporation, any reclassification of the Common Stock of the Corporation, or any Liquidation Event or Deemed Liquidation Event,

then, and in each such case, the Corporation shall send or cause to be sent to the holders of the Preferred Stock a written notice specifying, as the case may be, (i) the record date for such dividend, distribution, or right, and the amount and character of such dividend, distribution or right, or (ii) the effective date on which such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up is proposed to take place, and the time, if any is to be fixed, as of which the holders of record of Common Stock (or such other capital stock or securities at the time issuable upon the conversion of the Preferred Stock) will be entitled to exchange their shares of Common Stock (or such other capital stock or securities) for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up, and the amount per share and character of such exchange applicable to the Preferred Stock and the Common Stock.  The Corporation shall send the notice at least 20 days before  the earlier of the record date or effective date for the event specified in the notice.

**8.**     **Notices.**  Except as otherwise provided herein, any notice required or permitted by the provisions of this Article V to be given to a holder of shares of Preferred Stock must be mailed, postage prepaid, to the post office address last shown on the records of the Corporation, or given by electronic communication in compliance with the provisions of the General Corporation Law, and will be deemed sent upon such mailing or electronic transmission.

## ARTICLE VI:  PREEMPTIVE RIGHTS.

No stockholder of the Corporation has a right to purchase shares of capital stock of the Corporation sold or issued by the Corporation except to the extent that such a right may from time to time be set forth in a written agreement between the Corporation and the stockholder.

## ARTICLE VII:  BYLAW PROVISIONS.

**A.**     **AMENDMENT OF BYLAWS.**   Subject to any additional vote required by this Restated Certificate or bylaws of the Corporation (the "***Bylaws***"), in furtherance and not in limitation of the powers conferred by statute, the Board is expressly authorized to make, repeal, alter, amend and rescind any or all of the Bylaws.

**B.**     **NUMBER OF DIRECTORS.**  Subject to any additional vote required by this Restated Certificate, the number of directors of the Corporation will be determined in the manner set forth in the Bylaws.

**C.**     **BALLOT.**  Elections of directors need not be by written ballot unless the Bylaws so provide.

**D.**     **MEETINGS AND BOOKS.**  Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws may provide.  The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the Board or in the Bylaws.

## ARTICLE VIII:  DIRECTOR LIABILITY.

PATENT
REEL: 058701 FRAME: 0287

**A.** **LIMITATION.** To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. If the General Corporation Law or any other law of the State of Delaware is amended after approval by the stockholders of this Article VIII to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law as so amended. Any repeal or modification of the foregoing provisions of this Article VIII by the stockholders will not adversely affect any right or protection of a director of the Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director occurring prior to, such repeal or modification.

**B.** **INDEMNIFICATION.** To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation (and any other persons to which General Corporation Law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the General Corporation Law.

**C.** **MODIFICATION.** Any amendment, repeal, or modification of the foregoing provisions of this Article VIII will not adversely affect any right or protection of any director, officer or other agent of the Corporation existing at the time of such amendment, repeal or modification.

*   *   *   *   *

134938982 v2

**RECORDED: 01/11/2022**

**PATENT**
**REEL: 058701 FRAME: 0288**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT7115292

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| AVAAGO, INC. | 01/14/2019 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | MAKO CAPITAL, LLC |
| Street Address: | 1 SUTTON PLACE SOUTH, APT. 7 |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number |
|---|---|
| Application Number: | 17509766 |
| Application Number: | 17527496 |

**CORRESPONDENCE DATA**

**Fax Number:**    (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:**    6174439292
**Email:**    kwhitehouse@sunsteinlaw.com
**Correspondent Name:**    SUNSTEIN LLP
**Address Line 1:**    100 HIGH STREET
**Address Line 4:**    BOSTON, MASSACHUSETTS 02110

| ATTORNEY DOCKET NUMBER: | 4502/1012, 1014 |
|---|---|
| NAME OF SUBMITTER: | ANDREW P. SIUTA |
| SIGNATURE: | /Andrew P. Siuta, #78,990/ |
| DATE SIGNED: | 01/11/2022 |

**Total Attachments: 2**
source=klw4502_1012_Avaago_Mako#page1.tif
source=klw4502_1012_Avaago_Mako#page2.tif

## CONFIRMATORY ASSIGNMENT

This confirmatory assignment confirms the assignment of certain assets by virtue of the BILL OF SALE and PATENT ASSIGNMENT AGREEMENT made on March 9, 2018 by and between the following parties (the "PARTIES"):

Ian J. Gazes as chapter 7 trustee of AVAAGO, INC. (the "Assignor), having its place of business at Gazes LLC, 151 Hudson Street, New York, New York 10013; and

MAKO CAPITAL, LLC (the "Assignee"), having its principal place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022.

WHEREAS on February 22, 2018, the United States Bankruptcy Court for the Southern District of New York entered an order authorizing the Assignor's sale of all of AVAAGO, INC.'S assets, including all of AVAAGO INC.'S intellectual property, to MAKO CAPITAL, LLC (the ":Sale Order") pursuant to the terms of that certain Asset Purchase Agreement between the PARTIES.

WHEREAS the Sale Order provides, among other things, that the Assignor "is authorized and directed to do and perform all acts, to make, and execute all related instruments and documents, which may be required or necessary for performance pursuant to the terms of the Asset Purchase Agreement.    WHEREAS the Parties had executed a BILL OF SALE effective March 9, 2018 in which Assignor sold to Assignee "all of Assignor's intellectual property of any kind or nature" including United States Patent Application No. 62/106,613 and the inventions related thereto.

WHEREAS the Parties had executed a PATENT ASSIGNMENT AGREEMENT effective March 9, 2018 in which Assignor assigned to Assignee all right, title, and interest in United States Patent Application No. 62/106,613 sufficient to allow Assignee to acquire all right, title, and interest in any Patent subsequently granted thereon.

WHEREAS the Assignor owned other related patent applications that were not explicitly mentioned in the BILL OF SALE or the PATENT ASSIGNMENT AGREEMENT but nonetheless were sold and assigned by Assignor to Assignee by virtue of the terms of these agreements, as listed in the following table (hereinafter the "Patents"):

| Country Name | App. Title: | Application #: | Filing Date: |
|---|---|---|---|
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/047,473 | 08-Sep-2014 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 62/106,613 | 22-Jan-2015 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | 08-Sep-2015 |
| PCT | Method and System for Presenting and Operating a Skill-Based Activity | PCT/US2015/048970 | 08-Sep-2015 |

NOW, THEREFORE, for good and valuable consideration, receipt ⟨ ⟩ hereby acknowledged, Assignor confirms that it has sold, assigned and tran⟨ ⟩

by these presents does hereby sell, assign and transfer to Assignee, its successors and assigns, for the territory of the United States of America and the entire world, effective as of **March 9, 2018**, its entire right, title and interest in and to such inventions, any applications included in the Patents, and any patents, and any reissues and extensions thereof, which issue or have issued in any country upon patent applications which correspond with or claim priority from any of such applications or patents or any divisional, continuation-in-whole, or continuation-in-part thereof, including the right to sue and collect for past, present, and future infringement; the same to be held and enjoyed by Assignee for its own use, and for the use of its legal representatives, to the full term for which such patents have been granted as fully and entirely as the same would have been held by Assignor had this assignment not been made. The BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby amended to the extent necessary, if any, to give effect to the foregoing effective this date. In all other respects, the BILL OF SALE and the PATENT ASSIGNMENT AGREEMENT are hereby ratified and confirmed.

ASSIGNOR

By: _____     Date: ___1/14___, 2019

Ian J. Gazes

as chapter 7 trustee of AVAAGO, INC.

4780 SW 86th Terrace

Miami, Florida 33143

Title: Trustee

NOTARY PUBLIC

State of _Florida_

County of _Dade_  ss.  __01 | 14__, 2019

On this _14th_ day of _January_, 2019, before me, the undersigned notary public, personally appeared _Ian Krawick Gates_ proved to me through satisfactory evidence of identification, which consisted of _FL Driver License_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

JENNYFER C. TORRECILLAS
Notary Public - State of Florida
Commission # FF...
My Comm. Expires ... 2019
Notary Public

My commission expires: _Oct. 13, 2019_

## DECLARATION OF ACCEPTANCE BY ASSIGNEE

The above named Assignee, Mako Capital, LLC, hereby declares that with effect from this _6th_ day of _February_, 2019 it accepts the patents, including all goodwill of the business symbolized by such patents including all rights to recover past, present and future damages for infringement, assigned to it by Assignor, Ian J. Gazes as chapter 7 trustee of AVAAGO, INC., pursuant to the foregoing Confirmatory Assignment.

MAKO CAPITAL, LLC

By: _____     Date: February 6, 2019

Barbara Laurence

1 Sutton Place South, Apt. 7

New York, New York 10022

Title: Managing Member

**PATENT**
**REEL: 058622 FRAME: 0392**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT7115300

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| MAKO CAPITAL, LLC | 10/17/2019 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | VETNOS LLC |
| Street Address: | 135 EAST 57TH STREET, 14TH FLOOR |
| City: | NEW YORK |
| State/Country: | NEW YORK |
| Postal Code: | 10022 |

### PROPERTY NUMBERS Total: 2

| Property Type | Number |
|---|---|
| Application Number: | 17509766 |
| Application Number: | 17527496 |

### CORRESPONDENCE DATA

**Fax Number:** (617)443-0004

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:** 6174439292
**Email:** kwhitehouse@sunsteinlaw.com
**Correspondent Name:** SUNSTEIN LLP
**Address Line 1:** 100 HIGH STREET
**Address Line 4:** BOSTON, MASSACHUSETTS 02110

| ATTORNEY DOCKET NUMBER: | 4502/1012, 1014 |
|---|---|
| NAME OF SUBMITTER: | ANDREW P. SIUTA |
| SIGNATURE: | /Andrew P. Siuta, #78,990/ |
| DATE SIGNED: | 01/11/2022 |

**Total Attachments: 2**
source=klw4502_1012_Mako_Vetnos#page1.tif
source=klw4502_1012_Mako_Vetnos#page2.tif

## CONFIRMATORY ASSIGNMENT

WHEREAS, Mako Capital, LLC (the "Assignor), having its place of business at 1 Sutton Place South, Apt. 7B, New York, New York 10022 was the owner of the following Patent Applications:

| Country Name | App. Title: | Application # | Filing Date: | Patent # | Issue Date |
|---|---|---|---|---|---|
| US | Method and System for Presenting and Operating a Skill-Based Activity | 14/847,795 | 08-Sep-2015 | 10,353,543 | 16-July-2019 |
| US | Method and System for Presenting and Operating a Skill-Based Activity | 16/502,169 | 03-July-2019 | | |

WHEREAS Assignor, by a Patent Assignment Agreement executed on February 21, 2019 by Joshua Berkowitz, Manager of Mako Capital, LLC, assigned all rights, titles, and interests in the foregoing Patent Applications to Vetnos LLC (the "Assignee"), having its principal place of business at 1 Sutton Place South, Apt. 7, New York, New York 10022;

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor confirms that it has assigned and transferred, and, by these presents does hereby assign and transfer to Assignee, its successors and assigns, for the territory of the United States of America and the entire world, effective as of **February 21, 2019**, its entire right, title and interest in and to any inventions, included in the Patent Applications, and any patents, and any reissues and extensions thereof, which issue or have issued in any country upon patent applications which correspond to or claim priority from any of such applications or any divisional, continuation-in-whole, or continuation-in-part thereof, including the right to sue and collect for past, present, and future infringement; the same to be held and enjoyed by Assignee for its own use, and for the use of its legal representatives, to the full term for which such patents have been granted as fully and entirely as the same would have been held by Assignor had this assignment not been made.

Assignor does hereby further covenant and agree that it will not execute any writing or do any act whatsoever conflicting with these presents, and that Assignor, its successors and assigns, will at any time upon request without further additional consideration, but at the expense of Assignee, its successors and assigns, execute such additional writings and do such additional acts as Assignee, its successors and assigns, may determine as necessary or desirable in the enjoyment of this grant, and in any proceedings or transactions involving such inventions, patent applications or patents.

1

ASSIGNOR:

MAKO CAPITAL, LLC

By: _____         Date: _10_/_17_, 2019
Joshua Berkowitz
Manager, Mako Capital, LLC
1 Sutton Place South, Apt. 7B
New York, New York 10022

NOTARY PUBLIC

State of New York

County of Bronx _____, ss.                    _10_/_17_____, 2019

On this 17 day of October, 2019, before me, the undersigned notary public,

personally appeared Joshua Berkowitz proved to me through satisfactory

evidence of identification, which consisted of _N Y S D L_____, to be the

person whose name is signed on the preceding or attached document, and acknowledged

to me that he/she signed it voluntarily for its stated purpose.

Seal                                        _____
                                            Notary Public
                                            My commission expires: June 1, 2020

DIANA RIVERA
Notary Public - State of New York
NO. 01RI6110607
Qualified in Bronx County
My Commission Expires Jun 1, 2020

2

PATENT
RECORDED: 01/11/2022                         REEL: 058622 FRAME: 0433