**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MICHAEL WAYNE WILLIAMS, HIGHGUARD CAPITAL, LP, and GUARDIAN OPPORTUNITY MANAGEMENT, LP,**<br><br>**Defendants.** | **CIV. ACTION NO. _____**<br><br>**JURY TRIAL DEMAND** |

**<u>COMPLAINT</u>**

Plaintiff, the United States Securities and Exchange Commission ("SEC or "Commission"), alleges as follows:

**<u>OVERVIEW</u>**

1.      Beginning in or about February 2016 and continuing through at least October 2022, Defendant Michael Wayne Williams ("Williams"), acting through two entities that he largely owned and controlled —  Defendants Highguard Capital, LP ("Highguard") and Guardian Opportunity Management, LP ("Guardian

Management") (collectively, "Defendants") — orchestrated various securities frauds.

2.     First, between February 2016 and July 2017, Defendants Williams and Highguard fraudulently offered and sold to multiple investors over $1.8 million of securities interests in Guardian Management, which they described to investors as the manager of a new private fund being launched called the Guardian Opportunity Fund, LP ("Guardian Opportunity Fund" or the "Fund").

3.     Defendants represented that the investors' funds in Guardian Management would be used to manage Guardian Management and launch and grow the Fund.

4.     In fact, Defendants – unbeknownst to some or all of the Guardian Management investors – wrongfully diverted the investor proceeds to repay investors in three prior funds which Williams was closing and from which he had lost assets through unprofitable trading.

5.     Second, while acting as investment managers of the Fund between approximately March 2016 to October 2022, Williams and Guardian Management falsified the Fund's claimed performance by underreporting the Fund's assets in calculating the Fund's returns – thereby creating an artificially higher rate of return on the assets under management – and provided such information to current and

prospective Fund investors in soliciting their investment into the Fund.  Using false

performance numbers, Williams solicited and obtained investments of at least $16

million in the Fund, including investments in the Fund as recently as October 2022.

6.    Third, beginning in or about February 2021, Williams and Highguard

fraudulently offered and sold approximately $1 million in securities interests in

Guardian Management and an affiliated entity to a Mississippi woman.

7.    Like the earlier investors in Guardian Management, Defendants told

this new investor that they would use her investment to manage Guardian

Management and grow the Fund.

8.    Again, however, Defendants diverted the investor money to pay off

several earlier Guardian Management investors who were complaining about a lack

of a return on their 2016-2017 investments.

9.    Moreover, while representing to this new investor that Guardian

Management would be a profitable investment for her, Defendants failed to disclose

that the Fund's largest investor, who had invested over ninety percent of the Fund's

total assets, had given notice of its intent to withdraw all of its Fund assets, thereby

significantly reducing any management or performance fees that Guardian

Management and this investor could potentially earn.

11.    Defendants engaged in acts or practices that violated Section 17(a) of

the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b)

of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].  Unless restrained and enjoined by

this Court, Defendants will continue to engage in acts and practices that violate

these provisions.

12.     Defendants Williams and Guardian Management also engaged in acts

or practices that violated Section 206(4) of the Investment Advisers Act of 1940

("Advisers Act")    [15 U.S.C. §§ 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R.

§ 275.206(4)-8].  Unless restrained and enjoined by this Court, Defendants Williams

and Guardian Management will continue to engage in acts and practices that violate

these provisions.

## JURISDICTION AND VENUE

13.     The Commission brings this action pursuant to Sections 20 and 22 of

the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21(d) and 21(e) of the

Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Sections 209(d) and 209(e) of

the Advisers Act [15 U.S.C. §§ 80b-9(b) and (d)] to enjoin Defendants from engaging

in the transactions, acts, practices, and courses of business alleged in this Complaint,

and transactions, acts, practices, and courses of business of similar purport and

object, for civil penalties, and for other equitable relief.

14.     This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section 214 of the Advisers Act [15U.S.C. § 80b-14(a)].

15.     Defendants, directly and indirectly, made use of the mails, and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this Complaint, including but not limited to emails to and from investors of Guardian Management and the Fund.

16.     Venue is proper in this Court because certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred in the Northern District of Georgia. Further, during the time when certain of the transactions, acts, practices, and courses of business occurred, Defendant Highguard was registered as an investment adviser within the State of Georgia, Guardian Management's and/or its predecessor's principal place of business was within the District, certain of the investors in Guardian Management resided within this District, and Defendants' misconduct occurred within this District.  Williams currently appears to claim residency in Miami, Florida.

## THE DEFENDANTS

17.    Michael Wayne Williams has held Financial Industry Regulatory Authority ("FINRA") Series 3 and 65 licenses and, through Highguard, was an investment adviser representative, registered with the State of Georgia, from in or about August 2009 until April 2021.

18.    Highguard Capital, LP (f/k/a Williams Capital Investments, LLC and Lightshield Capital, LP) was registered as an investment adviser with the State of Georgia from in or about 2009 until May 2021.  Highguard is a Delaware limited partnership that is a limited partner and majority owner in Guardian Opportunity Partners, LLC ("Guardian Partners") and Guardian Management.  At all times relevant herein, Highguard acted as Williams's alter ego, with Williams wholly controlling Highguard as its sole investment adviser representative, its managing member and majority owner. In or about May 2021, Highguard withdrew its Georgia registration.

19.    Guardian Opportunity Management, LP is a Delaware limited partnership that acted as the investment manager for the Guardian Opportunity Fund.  Until its name change in or about 2017, Guardian Management was formerly known as Arclight Fund Management, LLC ("Arclight Management"), which was a Georgia entity with its principal place of business in Atlanta, Georgia.  At all times

relevant herein, Guardian Management acted as Williams' alter ego, with Williams wholly controlling Guardian Management through his ownership, management, and control of Highguard, which owned a majority of Guardian Management.

## OTHER RELEVANT ENTITIES

20.     Guardian Opportunity Fund, LP ("Guardian Opportunity Fund" or the "Fund") is a Delaware limited partnership and private fund, whose investment manager was Guardian Management.  At all times relevant hereto, Defendants exercised control over the Fund.  Williams described the Guardian Opportunity Fund as a "hedge fund" whose investment strategy was to trade options.

21.     Guardian Partners is a Delaware limited liability company and the general partner of the Guardian Opportunity Fund.  The majority of its membership interests are held by Highguard.

## WILLIAMS' PRIOR FUNDS

22.     Between approximately 2009 and late 2015, Williams managed three private investment funds – Guardian Fund, LP, Guardian Multi-Strategy Fund, LP, and Guardian Phalanx Offshore Fund, Ltd. (collectively, the "Prior Guardian Funds").  Williams managed each of these funds through Highguard, which he owned and controlled, and who was each those three funds' general partner.

23.     In or about August 2015, the Prior Guardian Funds had lost

approximately $5 million of their combined $11 million value, and Williams

notified the Prior Guardian Funds' investors that he intended to wind down those

funds and return investor capital in December 2015.

24.    Williams also notified the Prior Guardian Funds' fund administrator

that he was redeeming the Prior Guardian Funds' investors as of December 1, 2015,

and asked the fund administrator to calculate the redemption amount for each

investor.

25.    As of November 30, 2015, the Prior Guardian Funds' aggregate

brokerage account balance was approximately $5.375 million, of which the fund

administrator told Williams slightly more than $5 million belonged to the investors.

The balance of approximately $336,000 belonged to Highguard as the general

partner.

26.    Notwithstanding the foregoing, Williams and Highguard continued to

trade in the Prior Guardian Funds' brokerage account in December 2015 and

January 2016.

27.    While Williams and Highguard's trading in December resulted in a

modest profit of approximately $100,000, their trading in January 2016 resulted in

losses exceeding $2.1 million — money that was due to be returned to the Prior

Guardian Funds' investors.

## WILLIAMS AND HIGHGUARD'S CREATION OF
## GUARDIAN MANAGEMENT AND THE
## <u>GUARDIAN OPPORTUNTY FUND</u>

28.     In early 2016, at or about the same time that Williams and Highguard

were sustaining trading losses in the Prior Guardian Funds, Williams created a new

private fund and management company, which he named, respectively, Arclight

Fund and Arclight Fund Management, LLC, a Georgia entity.  He subsequently

changed the names of these entities to Guardian Opportunity Fund and Guardian

Management, respectively.

29.     At all times, Williams maintained control over both these new entities

through his ownership and control over Highguard.

30.     Williams and Highguard offered and sold Class A securities interests to

investors in Guardian Management, representing to them that they would receive a

return based on the management and performance fees that Guardian Management

would charge the Guardian Opportunity Fund.

31.     Between in or about February 2016 and July 2017, Williams and

Highguard raised approximately $1.8 million from several investors.

32.     In connection with the offer and sale of the securities interests in

Guardian Management, Williams and Highguard represented to some or all of the

investors that the Prior Guardian Funds had been successful and that those earlier

investors would be contributing millions to the new Guardian Opportunity Fund.

33.     In connection with the offer and sale of securities interests in Guardian Management, Williams and Highguard sent various offering documents to investors by email, including a private offering memorandum.

34.     In emails, Williams and Highguard represented to investors that their invested capital would be used to cover Guardian Management's expenses, including expenses soliciting investors for the Guardian Opportunity Fund.

35.     Williams and Highguard failed to disclose to the investors, however, that they were still in the process of winding down the Prior Guardian Funds and redeeming those funds' earlier investors, that they had lost a significant portion of the assets of the Prior Guardian Funds' assets due to their trading in January 2016, and that they would be using a great portion of the Guardian Management investors' funds to pay off investors in the Prior Guardian Funds.

## THE DIVERSION OF GUARDIAN MANAGEMENT INVESTOR FUNDS TO THE PRIOR FUND INVESTORS

36.     In or about January and February 2016, Williams withdrew the balance of assets in the Prior Guardian Funds, which was then approximately $3.3 million, and made partial redemptions to the Prior Guardian Funds' investors.  By March 2016, however, Williams and Highguard still owed those investors approximately $1.7 million in redemptions.

-10-

37.    Williams addressed this shortfall in at least three ways, none of which was disclosed to the Guardian Management investors.

38.    First, between March and August 2016, without disclosure to the investors in Guardian Management, Williams took approximately $417,000 of the investors' funds in Guardian Management, transferred those funds to the bank accounts of the Prior Guardian Funds, and made redemptions to several of the investors in the Prior Guardian Funds.

39.    Second, Williams convinced a Prior Guardian Funds' investor to forego his redemption and instead "invest" the money into Guardian Management, while failing to disclose to the investor that his money no longer existed because it had been lost through unprofitable trading.

40.    Third, Williams convinced a third investor ("Prior Guardian Funds Investor") to also forgo full redemption and instead invest approximately $1 million that he was owed into the new Guardian Opportunity Fund.  Williams then credited this Prior Guardian Funds Investor with having invested the $1 million even though—unknown to that investor—his money no longer existed because Williams had lost it in his earlier trading.

41.    Between in or about March and the fall of 2016, Williams transferred $925,000 from Guardian Management into the Prior Guardian Funds' TD

Ameritrade account, opened a new TD Ameritrade account in the name of the Guardian Opportunity Fund, and transferred the balance of the Prior Guardian Funds' account into that new account.  Following a redemption notice by the Prior Guardian Funds Investor of his investment Guardian Opportunity Fund, Williams withdrew funds from that Fund's account – much of the money effectively being the money of Guardian Management investors – to pay the Prior Guardian Funds' Investor $915,825 in "redemption."

## DEFENDANTS' FRAUDULENT
## SOLICIATIONS OF FUND INVESTORS

42.    Beginning in or about March 2016 and continuing as recently as October 2022, Williams and Highguard, acting individually and through Guardian Management, solicited investors in the Fund using false performance returns.

43.    Defendants consistently touted the Guardian Opportunity Fund's performance through monthly "tear sheets" and other emailed communications to investors of the Fund.

44.    However, Defendants falsified the performance returns included in the tear sheets and other communications created and distributed to investors and potential investors.

45.    Specifically, Defendants provided information on the assets invested and their performance to the Fund's fund administrator, who calculated the Fund's

return percentages relying on Defendants' representations as to the amount of net assets in the Fund.

46.     However, Defendants reduced the asset amount reported to the fund administrator, resulting in inflated return performance numbers.

47.     Defendants then included the inflated returns on the Fund performance's "tear sheets" and emailed those and other communications to Fund investors in connection with investments into the Fund.

48.     For instance, in January 2019, Defendants reported to the administrator that the net assets for the Fund were $5,000, despite the fact that there was over $100,000 in the Fund.  The performance numbers, as calculated by the administrator, therefore, reflected a 2.77% return, net of fees, when in reality, his return based on the actual balance of the Fund was approximately 0.18%.

49.     Defendants sent these inaccurate performance numbers to investors and potential investors of the Guardian Opportunity Fund.

50.      In or about March 2019, Defendants convinced an investor, who had received these tear sheets with the inaccurate performance numbers, to invest $200,000 in the Guardian Opportunity Fund.

51.     Defendants also obtained investment into the Guardian Opportunity Fund of approximately $14 million from a family office investor ("Family Office

Investor") who had also received these tear sheets reflecting the inaccurate performance returns.

52.     During all the times relevant herein, Williams and Guardian Management engaged in the business of advising the Guardian Opportunity Fund regarding its investment of securities and received compensation from the Fund, including management fees and the payment of expenses.

**DEFENDANTS DEFRAUD A MISSISSIPPI INVESTOR**

53.     On or about January 28, 2021, the Family Officer Investor presented Williams with a request for withdrawal of its interest in the Guardian Opportunity Fund by no later than May 31, 2021.  At that time, the Family Office Investor's investment was worth approximately $16 million and represented more than 90% of the net assets in the Guardian Opportunity Fund.

54.     In or about January and February 2021, Defendants gave a presentation to several members of a high net worth family in Mississippi and solicited them to manage their investments.

55.     As part of this solicitation, Defendants provided them with information about investing in the Guardian Opportunity Fund.

56.     Although most of the family members were not interested, the family matriarch ("Mississippi Investor") decided to invest approximately $1 million with

Defendants.

57.     Williams met with the Mississippi Investor at least twice more prior to

or at the time of investing, including on February 23, 2021,

58.     Defendants represented to the Mississippi Investor that the funds

invested would be used to grow the Guardian Opportunity Fund, and that she would

receive management and performance fees from the management of that Fund.

59.     On the day the documents were signed, Williams presented the

Mississippi Investor only with the signature pages to sign.  The full agreements

were not delivered to the Mississippi Investor until a number of days later.

60.     Contrary to what the Mississippi Investor had been led to believe, her

investment proceeds did not go to Guardian Management or Guardian Partners;

rather, the securities interests purchased were owned by Williams through

Highguard.

61.     By Defendants' structuring the transaction in this manner, the

Mississippi Investor's funds effectively went to Williams through Highguard and

did not go to Guardian Management or Guardian Partners for use in operating those

entities or growing the Fund.

62.     Moreover, Defendants represented to the Mississippi Investor that the

investment in Guardian Management and Guardian Partners was a better investment

for her because she would receive portions of the management fees and performance allocations.

63.     Defendants failed to disclose, however, that the Guardian Management investors had received little to no distributions to date.

64.     Defendants further failed to disclose to the Mississippi Investor that the Family Office Investor – whose funds constituted more than ninety percent of the Guardian Opportunity Fund's value – had already given notice that it would be withdrawing its investment within the next several months – thereby reducing significantly any management and performance fees from which the Mississippi Investor could likely expect to profit.

65.     Defendants also failed to disclose to the Mississippi Investor that a portion of her investor proceeds would be used to pay back other Guardian Management investors who were complaining about their investment.

66.     On or about February 26, 2021, the Mississippi Investor wrote a check for $1,005,000 to Highguard.

67.     After depositing the funds in Highguard's bank account, Williams and Highguard transferred $1,101,662 to a bank account in the name of the entity through which he previously had managed the Prior Guardian Funds and, on March 18, 2021, Williams transferred $951,662 to a bank account in the name of Guardian

Management.

68.     Between March 19 and 26, 2021, from that same account, Williams wired approximately $656,000 to several of the original investors in Guardian Management, representing a buyout of their shares, thereby effectively diverting the Mississippi Investor's investment to earlier Guardian Management investors.

69.     In or about June 2021, the Family Office withdrew the vast majority of its money from the Guardian Opportunity Fund.

## COUNT I—FRAUD
### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

### (Against all Defendants)

70.     Paragraphs 1 through 69 are hereby re-alleged and incorporated herein by reference.

71.     Beginning in or about early 2016 and continuing through at least February 2021, Defendants, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities; all as more particularly described above.

72.     Defendants knowingly, intentionally, and/or recklessly engaged in the

aforementioned devices, schemes and artifices to defraud.

73.    While engaging in the course of conduct described above, Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

74.    By reason of the foregoing, Defendants, directly and indirectly, violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II—FRAUD
**Violations of Section 17(a)(3) of the Securities Act**
**[15 U.S.C. §§ 77q(a)(3)]**

**(Against all Defendants)**

75.    Paragraphs 1 through 69 are hereby re-alleged and incorporated herein by reference.

76.    Beginning in or about early 2016, Defendants, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly engaged in transactions, practices and courses of business which either would or did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

77.    By reason of the foregoing, Defendants directly and indirectly violated

and, unless enjoined, will continue to violate Section 17(a)(3) of the Securities Act
[15 U.S.C. §§ 77q(a)(3)].

## COUNT III—FRAUD
### Violations of Section 17(a)(2) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2)]

### (Against all Defendants)

78.     Paragraphs 1 through 69 are hereby re-alleged and incorporated herein
by reference.

79.     Beginning in or about early 2016, Defendants, in connection with the
offer and sale of securities described herein, by the use of the means and
instrumentalities of interstate commerce and by use of the mails, directly and
indirectly, obtained money or property by means of an untrue statement of a material
act or omission to state a material act necessary in order to make the statements made,
in light of the circumstances under which they were made, not misleading."

80.     Defendants knowingly, intentionally, recklessly and/or negligently
engaged in the aforementioned devices, schemes and artifices to defraud.

81.     By reason of the foregoing, Defendants, directly and indirectly, violated
and, unless enjoined, will continue to violate Section 17(a)(2) of the Securities Act
[15 U.S.C. § 77q(a)(2)].

## COUNT IV—FRAUD
### Violations of Section 10(b) of the Exchange Act and
### Rule 10b 5(a)(b) and (c) Thereunder
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a), (b) and (c)]

### (Against all Defendants)

82.     Paragraphs 1 through 69 are hereby re-alleged and incorporated herein by reference.

83.     Beginning in or about early 2016, Defendants, in connection with the purchase or sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

    a.     employed devices, schemes, and artifices to defraud;

    b.     made untrue statements of material facts or omitted to state a material fact necessary in order to make other statements made, in light of the circumstances in which they were made, not misleading, and

    c.      engaged in acts, practices, and courses of business which would and or did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

82.     Defendants intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts,

-20-

practices and courses of business.

83.     In engaging in such conduct, Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud, with a severe reckless disregard for the truth.

84.     By reason of the foregoing, Defendants directly and indirectly violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Sections (a), (b) and (c) of Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)].

### COUNT V – FRAUD
**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder
[15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8]**

**(Against Defendants Williams and Guardian Management)**

85.     Paragraphs 1 through 69 are hereby re-alleged and are incorporated herein by reference.

86.     By engaging in the conduct described above, Defendants Williams and Guardian Management, while acting as investment adviser to a pooled investment vehicle, by use of the means and instrumentalities of interstate commerce and of the mails,

a.     made untrue statements of material fact and omitted to state material facts necessary to make statements made, in the light of the circumstances

-21-

under which they were made, not misleading, to investors and prospective investors in the pooled investment vehicles; and

   b. engaged in acts, practices, and courses of business that were fraudulent, deceptive, and manipulative with respect to investors and prospective investors in pooled investment vehicles, as more particularly described above.

  87. By reason thereof, Defendants Williams and Guardian Management violated and, unless enjoined, will continue to violate Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder [15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8].

## **PRAYER FOR RELIEF**

  WHEREFORE, the Commission respectfully prays for:

### **I.**

  Findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that Defendants committed the violations alleged;

### **II.**

  An order permanently restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys from violating, directly or indirectly, Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2)

AND (3) ]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (c)]

## III.

A permanent injunction enjoining Defendants Williams and Guardian Management, their agents, servants, employees, and attorneys from violating, directly or indirectly, Sections 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

## IV.

An order permanently enjoining Williams from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Williams from purchasing or selling securities for his own personal accounts

## V.

An order ordering Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## VI.

An order imposing civil penalties against all Defendants pursuant to

-23-

Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of

the Exchange Act [15 U.S.C. § 78u(d)(3)];

## VII.

An order imposing civil penalties against Defendants Williams and

Guardian Management pursuant to Section 209(e) of the Advisers Act [15 U.S.C.

§ 80b-9(e)].

## VII.

The grant of such other and further relief as this Court may deem just,

equitable, and appropriate in connection with the enforcement of the federal

securities laws and for the protection of investors.

## JURY TRIAL DEMAND

The Commission hereby demands a trial by jury as to all issues that may be

so tried.

This 21st day of June 2023.

Respectfully submitted,

*/s/M. Graham Loomis*
M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

-24-

Paul T. Kim
Senior Trial Counsel
Georgia Bar No. 418841
kimpau@sec.gov

*Attorneys for Plaintiff*
*Securities and Exchange Commission*
*950 East Paces Ferry Road, NE, Suite 900*
*Atlanta, GA 30326*
*Tel:(404) 842-7600*