IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MOMNT TECHNOLOGIES, INC. ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> WASATCH MENS GROUP, LLC, ) <br> ) <br> DEFENDANT. ) <br> _____ ) | Civil Action No. _____ |

# COMPLAINT

Plaintiff Momnt Technologies, Inc. ("Momnt"), files this Complaint against Defendant Wasatch Mens Group, LLC ("Wasatch"), and alleges as follows:

## PARTIES

1. Momnt is a Delaware corporation with its principal place of business in Atlanta, Georgia.

2. Wasatch is a Utah limited liability company with its principal place of business in Murray, Utah.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, due to the complete diversity of citizenship of the parties and because the amount in controversy exceeds $75,000.

4. Wasatch has three members: (1) Robbie L. Duncan; (2) Summit Crest Capital LLC, a Florida limited liability company; and (3) Slim Ventures LLC, a Utah limited liability company.

5. Mr. Duncan is a citizen of Utah.

6. The sole member of Summit Crest Capital LLC is David C. Helm II, who is a citizen of Florida.

7. The sole member of Slim Ventures, LLC is D. Michael Bishop, who is a citizen of Utah.

8. Accordingly, Wasatch is a citizen of Florida and Utah.

9. The Court has personal jurisdiction over Wasatch because the contract at issue, executed by both parties, contains a forum selection clause whereby the parties submitted to the jurisdiction of the State or Superior Courts of Fulton County or the United States District Court for the Northern District of Georgia:

> ANY SUIT, COUNTERCLAIM, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, ANY RELATED DOCUMENT OR UNDER ANY OTHER DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, MUST BE BROUGHT BY EITHER PARTY EXCLUSIVELY IN THE STATE OR SUPERIOR COURT OF FULTON COUNTY, GEORGIA OR IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, AND THE PARTIES

HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND ANY APPELLATE COURTS THEREOF FOR THE PURPOSE OF ANY SUCH SUIT, COUNTERCLAIM, ACTION OR PROCEEDING OR JUDGMENT THEREON (IT BEING UNDERSTOOD THAT SUCH CONSENT TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS WAIVES ANY RIGHT TO SUBMIT ANY DISPUTES HEREUNDER TO ANY COURTS OTHER THAN THOSE ABOVE).

Merchant Agreement § 22, attached hereto as Exhibit B.

10. Venue is also proper in this Court due to the forum selection clause in the contract at issue.

## FACTUAL ALLEGATIONS

11. Momnt provides an embedded lending solution for businesses to provide low-friction, affordable financing to their customers at the point of need. The industries served by Momnt include home improvement and healthcare. Momnt partners with lenders to provide financing to customers.

12. Wasatch owns and operates a network of 42 men's health clinics around the country.

13. Wasatch Group Holdings, LLC first contracted with Momnt for use of Momnt's lending solution with its patients, pursuant to a Merchant Agreement, dated June 1, 2022.

14. On or around November 15, 2022, Andrew Rinehart (the principal of Wasatch Group Holdings, LLC) sold the business of Wasatch Group Holdings, LLC

(consisting of the 42 men's health clinics referenced above) to defendant Wasatch, pursuant to a Membership Interests Purchase Agreement (the "**MIPA**").  A true and correct copy of the MIPA is attached hereto as **Exhibit A**.

15.  Wasatch and Momnt then entered into a Merchant Agreement (the "**Merchant Agreement**"), dated as of November 18, 2022, pursuant to which Wasatch would be permitted to use Momnt's lending solution in exchange for a fee for each closed loan.  A true and correct copy of the Merchant Agreement is attached hereto as **Exhibit B**.

16.  The Merchant Agreement incorporated by reference the Operating Instructions, which are available on Momnt's website at https://www.momnt.com/operating-instructions/.  A true and correct copy of the Operating Instructions is attached hereto as **Exhibit C**.

17.  Pursuant to Section 17 of the Merchant Agreement, "This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without reference to the conflict of laws provisions thereof."

18.  From November 18, 2022 to present, Momnt has received hundreds of complaints from Wasatch customers.

19.  The complaints, which became more frequent and numerous in May and June of 2023, stemmed from several issues at Wasatch.

20. Some of the most concerning complaints Momnt received were from Wasatch patients claiming that Wasatch clinics had closed, with no sign of reopening.

21. Several Wasatch patients, who received loans through Momnt to fund their treatment with Wasatch, complained to Momnt that they had not received the medical services promised by Wasatch. The complaints put in jeopardy the repayment of the majority of loans made to Wasatch patients.

22. The total outstanding balance of loans provided through Momnt's lending solution to Wasatch patients as of June 6, 2023 exceeded $50 million.

23. Pursuant to Section 7(a)(i) of the Operating Instructions (incorporated by reference into the Merchant Agreement), Wasatch agreed to refund, upon demand by Momnt, the amount of any loan plus any finance charges related to a loan if the loan is fraudulent or the credit application is subject to any claim of illegality or cancellation, including negligence, fraud, misrepresentation, or dishonesty on the part of the borrower or Wasatch.

24. In addition, Operating Instructions Section 7(a)(ii) states that if a borrower disputes the delivery, quality, or performance of the services provided by Wasatch, Wasatch will refund the money for the loan upon demand.

25. And Section 1(a)(v) of the Operating Instructions requires Wasatch to take reasonable measures to prevent fraudulent activity by an applicant, including verifying the identification of each individual applying for a credit product.

26. In addition to complaints of clinic closures, Momnt has also received multiple complaints from Wasatch patients claiming that they were not aware that they were completing an application for a loan through Momnt and/or that representatives of Wasatch (rather than the patients themselves) had completed the loan application.

27. Section 1(a)(vi) of the Operating Instructions requires Wasatch to cooperate with Momnt in connection with investigating and remediating escalations, complaints, and disputes about Wasatch.

28. Wasatch has failed to cooperate with the investigation of several complaints from Wasatch customers.

29. By email dated June 5, 2023, Wasatch approved refunds for all patient financing occurring within the prior 120 days.

30. However, when Momnt attempted to initiate those refunds by debiting accounts for the respective clinics at issue, Momnt was unable to complete the debits because the accounts did not allow debits.

31. Accordingly, on June 7, 2023, Momnt demanded that Wasatch immediately permit all clinic accounts to be debited by Momnt for financings that had occurred over the prior 120 days.

32. On June 9, 2023, one of Wasatch's principals, Robbie Duncan, represented that Wasatch had run out of money and there was no money in the accounts for the promised refunds.  Mr. Duncan indicated that Wasatch had shut down all of its 42 clinics and no Wasatch patients were receiving any treatment.

33. Mr. Duncan placed blame for the financial condition of Wasatch on poor cash management and an inability to cut expenses as revenue slowed. Mr. Duncan indicated that Wasatch may file for bankruptcy and that it was trying to raise additional capital.

## COUNT I: BREACH OF CONTRACT

34. Momnt repeats and re-alleges the allegations contained in paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. Momnt and Wasatch entered into the Merchant Agreement, which is valid and binding.

36. Momnt tendered full performance of its obligations under the Merchant Agreement.

37. Wasatch breached its obligations to Momnt by failing to refund the loan proceeds upon demand for its customers who disputed the delivery, quality, or performance of the services provided by Wasatch.

38. Wasatch breached its obligations to Momnt by failing to refund, upon demand by Momnt, the amount of any loan plus any finance charges related to a loan if the loan is fraudulent or the credit application is subject to any claim of illegality or cancellation, including negligence, fraud, misrepresentation, or dishonesty on the part of the borrower or Wasatch.

39. Wasatch breached its obligations to Momnt by failing to take reasonable measures to prevent fraudulent activity by an applicant, including verifying the identification of each individual applying for a credit product.

40. Wasatch breached its obligations to Momnt by failing to cooperate with Momnt in connection with investigating and remediating escalations, complaints, and disputes about Wasatch.

41. As a direct and proximate consequence of Wasatch's breaches of its obligations, Momnt has suffered actual damages, including damage to its reputation and good will, in an amount exceeding $75,000.

## COUNT II: CONVERSION

42. Momnt incorporates the allegations contained in paragraphs 1 through 33 of the Complaint.

43. Wasatch has engaged in an unauthorized assumption and exercise of the right of ownership over the loan proceeds by not permitting the proceeds to be refunded upon demand.

44. Momnt demanded refund of the loan proceeds on June 7, 2023. To date, Wasatch has failed to refund the loan proceeds.

45. Wasatch's use and possession of and other act of dominion over the loan proceeds, and refusal to refund the loan proceeds constitutes conversion.

## COUNT III: ATTORNEYS' FEES

46. Momnt repeats and re-alleges the allegations contained in paragraphs 1 through 33 of this Complaint as if fully set forth herein.

47. Because Wasatch failed and refused to refund the loans, Momnt was required to expend considerable time and resources pursuing compensation and to retain attorneys to prosecute this action.

48. Wasatch's failure and refusal to refund the loans has been in bad faith, stubbornly litigious, and has caused unnecessary trouble and expense for Momnt.

49. In addition, pursuant to Section 21 of the Merchant Agreement, Momnt is entitled to recover its fees and expenses incurred in this action from Wasatch:

> MERCHANT SHALL BE LIABLE TO PROGRAM INDEMNIFIED PERSONS FOR ALL DAMAGES UNDER APPLICABLE LAW AND COSTS INCURRED IN ANY COLLECTION ACTION OR OTHER LEGAL PROCEEDING ANY PROGRAM INDEMNIFIED PERSON MAY BRING AGAINST MERCHANT (INCLUDING ATTORNEYS' FEES, COURT COSTS, INTEREST, FILING FEES AND OTHER EXPENSES OF ANY KIND WHATSOEVER).

50. Accordingly, Momnt is entitled to recover its attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 and Section 21 of the Merchant Agreement.

## COUNT IV: EQUITABLE RELIEF

51. Momnt incorporates the allegations contained in paragraphs 1 through 33 of the Complaint.

52. Wasatch is obligated to refund the loan proceeds, and is either unable or unwilling to refund them.

53. Accordingly, Momnt is entitled to (i) an accounting from Wasatch so that Momnt's rights can be protected; (ii) a constructive trust against the assets of Wasatch, pursuant to O.C.G.A. § 53-12-132(a); (iii) appointment of a receiver to receive and disburse payments from Wasatch's customers, pursuant to 28 U.S.C. § 754; and/or (iv) injunctive relief.

## **PRAYER FOR RELIEF**

For these reasons, Momnt respectfully requests that the Court issue summons for Wasatch to appear and answer, and that Momnt be awarded a judgment against Wasatch for the following:

a. Compensatory damages to be proven at trial and, in any event, exceeding $75,000;

b. a constructive trust against the assets of Wasatch, pursuant to O.C.G.A. § 53-12-132(a);

c. appointing a receiver to receive and disburse payments from Wasatch's customers, pursuant to 28 U.S.C. § 754; allowing the receiver to open a receivership bank account and notify Wasatch's customers of the receivership and request that future payments be sent directly to the receiver; requiring the receiver to provide monthly reporting to the parties and the Court; providing that the costs, fees, and compensation of the receiver be secured by Wasatch;

d. in the event that the Court does not appoint a receiver, enjoining Wasatch from using, spending, transferring, or otherwise dissipating revenues received;

e. Post-judgment interest to the fullest extent permitted by law;

f.      Court costs;

g.      Attorneys' fees; and

h.      All other relief that the Court deems just and proper.

Date: June 23, 2023　　　　　　　　　　Respectfully submitted,

                                          **MORRIS, MANNING & MARTIN, LLP**

                                          By: */s/ Eric A. Larson*
                                              Jeffrey K. Douglass
                                              Georgia Bar No. 227523
                                              Eric A. Larson
                                              Georgia Bar No. 800631

                                              *Attorneys for Momnt Technologies, Inc.*

1600 Atlanta Financial Center
3343 Peachtree Road NE
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Facsimile: (404) 365-9532
jkd@mmmlaw.com
elarson@mmmlaw.com