# EXHIBIT C

**Operating Instructions**

These **OPERATING INSTRUCTIONS** (the "Operating Instructions") constitute the operating instructions for each Merchant's participation in the Program and are governed by the terms and conditions of the applicable Merchant Agreement between Company and Merchant (as the same may be amended from time to time) (with respect to each such Merchant, the "Agreement"). All capitalized references not defined herein shall have the same meaning as set forth in the Agreement.

**1. Overview of the Merchant's Obligations and Responsibilities under the Program.**

   (a) All of Merchant's obligations and responsibilities under the Program are detailed in the Agreement and herein. These obligations and responsibilities include:

   (i) ensuring all employees, agents, or subcontractors involved with the Program are advised of the requirements related to offering the Program to Merchant's customers and that Merchant's employees, agents, or subcontractors having sales and finance responsibilities have completed the orientation and training related to the Program adopted by Lenders and provided by Company;

   (ii) promoting the Program in a legally compliant, accurate, complete, unbiased, and fair manner and maintain commercially reasonable policies and procedures to ensure ongoing compliance with applicable law, the Agreement and these Operating Instructions;

   (iii) ensuring only authorized persons who have completed the orientation and training related to the Program promote the Loan products;

   (iv) ensuring that Loan proceeds are used only in connection with eligible Offerings and in connection with the purchase of the applicable products or services;

   (v) taking commercially reasonable measures to prevent fraudulent activity by an applicant, Borrower, or Merchant (including any of its employees, agents, or subcontractors) with respect to a Loan or Loan proceeds, including verifying the identification of each individual applying for a Program credit product or using an Access Device, Account Number, or Loan proceeds at the time of a sale of Offerings and ensuring that there is no discrepancy between the documents Merchant relies on to fulfill its obligation to verify the identity of such individual under Section 4(a) and such individual's physical appearance or other application information;

   (vi) cooperating with Company in investigating and remediating escalations, complaints, and disputes about Merchant and responding within five (5) Business Days, or such shorter time as required by the Agreement, to any request for information, audit, or review related to Merchant's participation in the Program;

   (vii) ensure that the Merchant's discussions with each Borrower and prospective Borrower regarding the Program are only conducted by Merchant's employees or agents who are authorized to speak regarding the Program and who have undergone all training required by Company;

   (viii) limiting Merchant's discussions with each Borrower or prospective Borrower with approved materials or expressly authorized information that are true and accurate statements about the Program, such as the telephone number to contact Company and the products offered by Company, acting on

behalf of Lenders, regarding the Program, Company's address and certain applicable codes or other identification numbers, and conducting such discussions in English or Spanish only;

(ix) maintaining any information Merchant receives regarding each Borrower or prospective Borrower (in such capacities) or a Loan as strictly confidential;

(x) maintaining control over projects;

(xi) providing to Company in a timely manner all information relating to Merchant's participation in the Program and any Borrower and prospective Borrower as set forth herein and otherwise requested by Company or a Lender (it being understood that Company and Lenders may share any such information with the any applicable sponsor referring the Merchant);

(xii) responding within five (5) Business Days, or such shorter time as required by the Agreement or the Operating Instructions, to any inquiry from Company, and fully cooperating with Company in connection with the resolution of any dispute involving a Borrower or prospective Borrower;

(xiii) referring questions from Borrowers or prospective Borrowers to Company or Program information available on Company's website; and

(xiv) with respect to any documents or forms provided to, or to be executed by, a Borrower or prospective Borrower or which constitute a disclosure required by Company or under applicable law in connection with the Program, only using such documents and forms provided to Merchant, or approved in writing by, Company (and only using the latest version thereof) and not modifying any such documents or forms without Company's prior written consent.

(b) In addition to Merchant's other obligations and responsibilities, Merchant shall not:

(i) prepare or disseminate any written materials regarding the Program other than those provided or approved in writing by Company acting on behalf of Lenders;

(ii) discuss with a prospective Borrower the likelihood of his or her approval for a Loan;

(iii) provide any misleading, confusing or incomplete information regarding the Program, including applicable interest rates or any terms or conditions of a Loan under the Program;

(iv) obtain any credit reports on prospective Borrowers or Borrowers;

(v) pursuant to Section 2(b), add any fees to prices charged to Borrowers for the application for or use of a Loan;

(vi) discriminate among prospective Borrowers or Borrowers in any unlawful way;

(vii) ask for or accept any document from a Borrower that includes a statement that the home improvement project on which Merchant is working on behalf of such Borrower has been completed to such Borrower's satisfaction in advance of the actual completion thereof; or

(viii) engage any subcontractor to work on a home improvement project funded in whole or in part by a Loan that is not properly licensed or who has any past or pending criminal conviction or order, decree, injunction or judgment in any proceeding or lawsuit, with respect to theft, fraud or deceptive practice on the part of it or any principal thereof.

(c) In the event that Company or a Lender believes Merchant has failed to comply with the Agreement or the Operating Instructions or that any illegal or fraudulent conduct has or is likely to occur related to or arising from the Merchant's participation in the Program, Company may suspend Merchant's participation in the Program and take such other action as it deems appropriate, including terminating the Agreement.

**2. Promotion of the Program.**

(a) If Merchant chooses to participate in the Program, Merchant agrees to promote the Program in a commercially reasonable manner and in full compliance with all applicable laws and regulations. Any written material referring or relating to the Program, including the fact that Merchant participates in the Program or specific Loan credit terms or credit products Merchant accepts, shall be prepared or furnished by Company or, if prepared by Merchant, shall be subject to review and approval by Company in advance of being used by Merchant. Any such review and approval shall be limited to the review and approval of Program-specific representations and statements and shall not be construed as a review or approval of any advertising or solicitation materials for any other purpose or for compliance with any other provisions of any local, state or federal laws not related to the Program.

(b) Merchant shall not require, through a surcharge, an increase in price or otherwise, any Borrower to pay any fees as a consequence of Borrower applying for or using his or her Loan to pay Merchant. Specifically, Merchant may not charge Borrower any part of any charge or fee imposed by the Program on Merchant, provided that Merchant may treat such fees as overhead to be distributed across all customers regardless of whether the customer uses a Loan to pay for his or her purchase from Merchant.

(c) During the term of the Agreement, Merchant shall not issue, or arrange to issue, to prospective Borrowers any other third-party financing programs unless Merchant has first sought a Program Loan for such prospective Borrower.

(d) Merchant shall not use a Loan as a "bridge" loan or intend for Borrower to use the proceeds of another loan to pay off a Loan under the Program.

**3. Loan Terms and Approval.**

(a) Through the Program, a Lender may offer Loan(s) to Merchant's qualified customers under a separate Loan Agreement between Lender and such qualified customer. As between the parties, Company, at the direction and under the control of Lenders, (i) has sole authority to prescribe the terms and conditions of the credit application, the Loan Agreement and each Loan (including interest rate, maximum amount and term), (ii) may prospectively modify such terms and conditions with respect to Loans for which approval is granted subsequent to the time of the modification, (iii) may at any time change the credit standards without notice to Merchant, and (iv) may reject and accept credit applications in its sole discretion. A Lender shall not be obligated to take any action with respect to a Loan, including accepting the credit application or making future credit available to a prospective Borrower or a Borrower, and has no obligation to approve any particular Loan or to approve Loans meeting any particular set of requirements. A Lender may withdraw any previously issued Loan approval prior to funding of the Loan, which Loan approvals, unless earlier withdrawn, shall automatically expire

at the end of the purchase window for the applicable credit product. Lenders may at any time suspend, and restart, any of the Loan products offered in connection with the Program.

(b) Except as provided in the Agreement and herein, Lenders shall own the Loans and shall bear the credit risk for the Loans. Merchant acknowledges and agrees that it shall have no ownership interest in the Loans.

**4. Eligible Sales Transactions.**

(a) Merchant must verify the identification of each individual for which it is presenting a Transaction Request at the time of sale by obtaining a government-issued photo identification document. In the event Merchant identifies, or reasonably should identify, a discrepancy between the Borrower's identification documents used to fulfill Merchant's obligations under this subsection and Borrower's physical appearance, Merchant shall not submit a Transaction Request to the Program from any such Borrower and shall promptly inform Company.

(b) All transactions shall be evidenced by a Transaction Request. Merchant shall complete the Transaction Request in accordance with the Agreement and the Operating Instructions. Company, on behalf of Lenders, in its sole discretion, may grant, deny or revoke any Transaction Request and may restrict or condition payment to Merchant in respect of any Borrower. Neither Company nor such Lender shall be responsible, however, for any delay in funding a Loan caused by a merchant processor or otherwise.

(c) Merchant agrees not to divide a single transaction (or project) between two or more Transaction Requests (for one or more Borrowers) or between a Transaction Request and a sales or credit slip from another credit provider; provided, however, that Merchant may divide a single transaction between a Transaction Request and a sales or credit slip from another credit provider when an approved Loan amount is insufficient to pay Borrower's total transaction amount and Company has been provided written notice of such total transaction amount.

(d) With respect to each transaction, Merchant agrees to:

(i) enter legibly on the Transaction Request sufficient information to identify the Borrower and Merchant, including Merchant's identification number, and the amount and date of the transaction (and, by submitting the transaction, Merchant warrants the Borrower's true identity);

(ii) transmit information relating to such transaction that include a description of all Offerings purchased in detail sufficient to identify the date of such transaction and the entire amount due for such transaction, including any applicable taxes (the "Invoice") to Company for recordkeeping;

(iii) deliver a true and completed copy of the Invoice to the Borrower at the earlier of processing such transaction or the delivery of (or performance with respect to) the Offerings; and

(iv) present the Transaction Request to Company for authorization only upon Borrower's express written approval, provided that if such transaction is canceled or if the Offerings are canceled or returned, such Transaction Request shall be subject to chargeback or refund, and Merchant agrees that the submission of such transaction for authorization shall constitute a representation by Merchant that there is a valid Invoice for such transaction that complies with the terms of the Agreement and the Operating Instructions.

(e) All transactions financed pursuant to the Agreement shall be for personal, family or household purposes unless otherwise authorized in writing by Company.

(f) Merchant agrees that all extended warranties and service agreements it offers will comply with applicable law. Merchant agrees that it will comply with all obligations under any such extended warranty or service agreement, whether underwritten by Merchant, an Affiliate, or a third party.

**5. Customer Payments.**

Merchant agrees that Company, on behalf of, and at the direction and under the control of, Lenders, has engaged a third party servicer that has the sole right to receive payments on Loans. Merchant agrees not to attempt to collect a Loan unless specifically authorized in writing by the Relevant Lender, as communicated by Company. Merchant agrees to hold in trust for the Relevant Lender any payment received by Merchant in respect of such Loan and to deliver such payment to Company, acting on behalf of the Relevant Lender and its servicer, together with the Borrower's name, Account Number, and any correspondence accompanying the payment, within five (5) days of receipt by Merchant. Merchant agrees that Merchant shall be deemed to have endorsed, in favor of the Relevant Lender to which any such payment relates, any Borrower payments by check, money order or other instrument made payable to Merchant that a Borrower presents to Company, and Merchant hereby authorizes Company or its servicer, on behalf of the Relevant Lender, to supply such necessary endorsements on behalf of Merchant. Merchant agrees that it shall not, directly or indirectly, make any payment on a Loan on behalf of a Borrower without the prior written approval of Company, acting on behalf of Lenders, and Company, in its sole discretion, shall have the right to immediately (a) suspend Merchant's right to submit new referrals for funding transactions on approved Loans or refer new credit applications or (b) terminate the Agreement in the event that Merchant fails to comply with this provision.

**6. Representations and Warranties.**

(a) As to each credit application referral, Transaction Request or other material presented or delivered in connection with the Program, and the transaction it evidences, Merchant represents and warrants the following: (i) that Merchant has verified the identity of the customer and that the customer was of legal age and competent to execute the credit application, Loan Agreement and transaction authorization at the time of the execution thereof; (ii) that the credit application, Loan Agreement and Transaction Request are bona fide and were actually made and agreed to by each person identified as an applicant or Borrower; (iii) that each Loan Agreement and Transaction Request (A) will arise out of a bona fide sale of Offerings by Merchant and the express consent of Borrower, (B) will not involve the use of the Loan for any purpose other than for the purchase of the Offerings that are the subject of the Loan Agreement and Transaction Request, which are truly and accurately described therein, are fit and merchantable for their intended purpose, have been delivered into the possession of the Borrower and any services so described have been performed, and that all installation (if applicable) has been completed in a proper and workmanlike manner to the Borrower's complete satisfaction, and (C) represents Merchant's satisfactory performance of all of its other obligations to the Borrower in connection with the transaction evidenced by such Transaction Request; (iii) that Merchant has conveyed full and complete title to the Offerings, if any, to the Borrower; (iv) that such transaction is, in all respects, in compliance with these Operating Instructions, the Agreement, and all laws, rules and regulations of any federal, state or local governmental agency governing the same; (v) that Merchant has no knowledge or notice of any fact, event, issue or circumstance that would impair enforceability or

collection of the Loan as against Borrower; (vi) that there are no liens, mortgages, encumbrances or security interests upon the Transaction Request or the rights evidenced by the Transaction Request; (vii) that there are no present or future unvested or unrecorded rights related to such transaction that could give rise to a mechanic's, materialman's or laborer's lien, except to the extent those rights are in favor of Merchant, in which event Merchant agrees not to assert those rights to the detriment of any Lender; (viii) that Borrower has no claim or defense to payment of any amount reflected on such Transaction Request based upon materials or workmanship or any act or omission of Merchant or Merchant's employees, contractors, laborers or representatives; (ix) that there have been no representations or warranties made to Borrower other than warranties approved by the Relevant Lender, as communicated by Company, or a third party's or manufacturer's standard warranties, and in the event a manufacturer or third party breaches a standard warranty, Merchant will cure such breach within thirty (30) days of notice thereof; (x) that Merchant has not increased the purchase price or added any additional fees as a result of Borrower's use of the Loan to purchase the Offerings; and (xi) that Merchant has not taken any adverse action against a prospective Borrower or Borrower because the prospective Borrower or Borrower is a member of a protected class, as defined by applicable law, or because the prospective Borrower or Borrower has chosen to use credit to finance the purchase, nor has Merchant engaged in any practice that has or could have an impermissible negative or disparate impact on members of any protected class, including steering prospective Borrowers or Borrowers to more expensive or less favorable financing options because of the prospective Borrowers' or Borrowers' membership in a protected class.

**(b) If Merchant offers products or services to any consumer located in New Jersey**, Merchant represents and warrants that Merchant will comply with the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*), the New Jersey Contractors' Registration Act (N.J.S.A. 56:8-136 *et seq.*), the New Jersey Contractor Registration Regulations (N.J.A.C. 13:45A-17.1 *et seq.*) and the New Jersey Home Improvement Regulations (N.J.A.C. 13:45A-16.1 *et seq.*). In the event Company learns that Merchant has failed to comply with this Section 7(b), Company will terminate the Agreement and may seek any other remedies available under the Agreement or otherwise.

(c) Merchant represents and warrants that it is in compliance with, and will continue to comply with, all applicable laws, rules and regulations, including those relating to privacy and data security and to its sale of Offerings, point-of-sale practices and representations made by Merchant's employees and representatives and that Merchant has retained and will retain all required licenses, permits, approvals, certifications and the like that are required under applicable law to conduct its business, to deliver Offerings, to participate in the Program and to perform its obligations under this Agreement, each of which remains and shall remain in full force and effect. Merchant represents and warrants that it will comply with the Merchant Agreement Compliance Addendum attached to the Agreement.

(d) Merchant represents and warrants that it will not violate any agreement it has with third parties and will advise Company promptly of any event that may adversely affect its prospects or continued operations.

**7. Chargebacks and Refunds.**

(a) Without duplication of any amounts paid by Merchant pursuant to Section 13(b) of the Agreement, Merchant agrees that it will refund on demand, and Company, at the direction and under the control of Lenders, may charge back against Merchant, the amount of any Loan affected, plus any

finance or other charges related to the Loan under the Borrower's Loan Agreement, in each of the following events:

(i) Company or the Relevant Lender determines that (A) Merchant has breached or failed to fulfill any of its obligations under the Agreement, including these Operating Instructions, or has breached any of its representations or warranties under the Agreement, or (B) the Invoice or Transaction Request or the transaction to which such Invoice or Transaction Request relates, credit application or sale of Offerings is fraudulent or is subject to any claim of illegality, cancellation, rescission, avoidance or offset, including negligence, fraud, misrepresentation or dishonesty on the part of the Borrower or Merchant, its agents, employees, representatives or franchisees;

(ii) the Borrower disputes or denies the transaction, the execution of the transaction authorization, credit application or Loan Agreement, or the delivery, quality, or performance of the Offerings purchased or any warranties thereto, or the Borrower has not authorized the transaction, or alleges that a credit adjustment to which Borrower was entitled was requested and refused by Merchant or that a credit adjustment was issued by Merchant but not posted to the Loan due to Merchant's failure to submit the credit adjustment to the Program; or

(iii) Borrower asserts any claim or defense against Company or the Relevant Lender as a result of any act or omission of Merchant in violation of any applicable law (other than those that relate solely to the terms and conditions of such Loan).

(b) With respect to any chargeback or refund:

(i) Purchases of Offerings made by Borrowers utilizing Access Devices or Account Numbers issued as part of the Program, and processed by a payment card network, will be processed by the applicable payment card network and, to the extent applicable, all related chargebacks will be processed in accordance with the applicable payment card network procedures.

(ii) Chargebacks for purchases of Offerings made by Borrowers not processed by the applicable payment card network, if any, or when payment card network's process otherwise is not available, will be paid by Merchant in a manner as consistent as practicable with the original funds transfer.

(iii) In its reasonable discretion but upon prior notice to Merchant, the Relevant Lender, as communicated by Company, may compromise and settle any claim made by any Borrower if such claim may give the Relevant Lender a right to chargeback (or a right to a refund) in accordance with the Agreement. The Relevant Lender, as communicated by Company, may settle such claim in an amount equal to the amount paid for the disputed Offerings, not to exceed the face amount of any Transaction Request.

(iv) If a Lender exercises its right of chargeback (or seeks a refund) in accordance with the Agreement, such Lender may set off or recoup amounts charged-back or subject to refund against any sums due to Merchant under the Agreement and, if the amount of such chargeback or refund exceeds the sums due Merchant, such Lender may demand payment from Merchant for such amount (or set off or recoup such amount up to the amount of sums due to Merchant and demand payment from Merchant for such excess amount).

  (v) If the full amount due with respect to any Loan is charged back or otherwise refunded by Merchant, Merchant shall be entitled to recover the unpaid amount of the Transaction Request from the customer as if the financing had not occurred, although Merchant shall have no rights under the Loan Agreement or to the proceeds of the Loan. In such event, Merchant shall bear all liability and risk of loss associated with such Transaction Request without warranty by, or recourse or liability to, Company or any Lender.

  (vi) Company shall promptly notify Merchant of all requests by Borrowers for a chargeback or refund. Merchant is required to address any dispute or other circumstance described in Section 8(a) to the reasonable satisfaction of the Relevant Lender and to Company, on behalf of the Relevant Lender, within fifteen (15) Business Days of notice of any such chargeback or refund.

  (vii) Where a chargeback or refund occurs within thirty (30) days following initial funding and Company determines that such chargeback or refund was not due in any way to Merchant's bad faith, Company will refund to Merchant the amount of the Transaction Fee paid with respect to the relevant portion of the Loan to which such chargeback or refund relates. Otherwise, Company will have no obligation to refund any Transaction Fees. In addition, Merchant's entitlement to receive a refund of fees imposed by the applicable payment card network will be governed by the applicable rules thereof, and Company and Lenders shall have no obligation with respect thereto.

**8. Authorization for Automatic Direct Deposits (ACH Credits) and Direct Debits (ACH Debits).**

 (a) Merchant authorizes Company, on behalf of itself and Lenders (as applicable), to initiate credit entries for amounts that Company or Lenders may owe Merchant or that may otherwise be due Merchant under the Agreement. Merchant authorizes Company to initiate debit entries for (i) any credit entries in error, (ii) Transaction Fees or (iii) the amount which Merchant owes under the Agreement, including Transaction Fees, which is more than the amount owed Merchant. Such credit and debit entries will be to the bank account identified by Merchant. Merchant and Company acknowledge that the origination of ACH transactions described in this Section 9 must comply with applicable law and NACHA rules.

 (b) The authorizations set forth in Section 9(a) will remain in effect until the date on which no Loans remain outstanding. Merchant must notify Company within three (3) Business Days of any change to the bank account for such ACH credits and ACH debits. Company agrees to comply with written notifications from Merchant that alter Merchant's bank account information (i.e., name and address of the bank or financial institution, transit/routing number or account number), provided that Company receives such notification in sufficient time and manner to give Company and the bank or financial institution reasonable opportunity to act on it.

**9. Records.**

 (a) All data transmitted shall be in a medium, form and format designated by Company under the Program. Any errors in such data or in its transmission by Merchant shall be the responsibility of Merchant, and any errors in such data or in its transmission by Company shall be the responsibility of Company. Electronic transmission shall be the exclusive means utilized by Merchant for the transmission of transaction data to the Program except to the extent otherwise provided by Company.

(b) Merchant shall maintain paper copies (when used) or copies of electronic images of Transaction Requests and Invoices and other records pertaining to any Loan or transaction covered by the Agreement for such time and in such manner as Company, at the direction and under the control of Lenders, or any law or regulation may require, but in no event less than seven (7) years from the date of the Transaction Request. Within ten (10) days, or such earlier time as may be required by Company, of receipt of Company's request, Merchant shall provide to Company the Transaction Request, Invoice or other transaction records, including evidence of an applicant's or Borrower's express consent to a transaction, and any other documentary evidence available to Merchant and reasonably requested by Company (i) to meet its obligations under applicable law or otherwise to respond to questions, complaints, lawsuits, counterclaims or claims concerning Loans or requests from Borrowers or regulatory authorities, (ii) to provide any information in connection with Company's pursuit, at the direction and under the control of Lenders, of bad debt tax refunds, deductions, credits, or audit offsets (including providing copies of Merchant's state sales and use tax returns), (iii) to ensure Merchant's compliance with the Agreement, or (iv) to enforce any rights a Lender or Company may have against Merchant or a Borrower, including litigation by or against Company or such Lender, collection efforts and bankruptcy proceedings, or for any other reason.

(c) Merchant agrees to permit Company, at the direction and under the control of Lenders, to examine, upon reasonable notice, Merchant's books and records concerning Merchant's participation in the Program or any transaction giving rise to any Transaction Request or Loan and to provide Company, at the direction and under the control of Lenders, with such further information as may reasonably be required concerning Merchant's participation in the Program or any transaction. Merchant authorizes Company, at the direction and under the control of Lenders, to obtain credit reports with respect to Merchant and, to the extent permitted by law, to obtain credit reports individually with respect to all principals, partners or owners of Merchant, for the purpose of qualifying Merchant's business for participation in the Program and for evaluating Merchant's business for continued participation in the Program. Merchant agrees that it is authorizing Company to obtain credit reports and instructing any consumer reporting agency to provide such report now and in the future for the purpose of evaluating Merchant's business for future retention and participation in the Program. Merchant also agrees that, upon request, Merchant shall provide a copy of Merchant's most recent financial statements, including Merchant's balance sheets, statements of income and retained earnings, cash flows and any accompanying notes, in reasonable detail and prepared in accordance with generally accepted accounting principles.

(d) Merchant will provide Company with all original or electronically reproducible copies of documents required to be retained under the Agreement upon request within five (5) Business Days, or such shorter time as required by the Agreement.

**10. Information Security.**

(a) Merchant shall not disclose, and shall take all commercially reasonable measures to protect, Borrower Information, including any nonpublic personal information (as defined in the Gramm-Leach-Bliley Act, its implementing regulations, and other similar laws and regulations), to (i) any third party or (ii) any employee, officer, shareholder, member, partner, director, manager or representative of Merchant who is not engaged in the implementation and execution of the Program and having a need to know such information for Merchant to perform its obligations and responsibilities under the

Agreement. Merchant shall not retain in any format, electronic or otherwise, any Borrower Information beyond what is required pursuant to the Agreement. Without by implication limiting the foregoing, if Merchant allows individuals to submit personal identifying information via the Internet, Merchant shall adopt and maintain a comprehensive privacy policy with respect to its handling of such personal information and Merchant's privacy policy shall be available on Merchant's Internet websites.

(b) Merchant shall keep confidential and not disclose to any person (except to employees, officers, shareholders, members, partners, directors, managers or representatives of Merchant who are engaged in the implementation and execution of the Program) all information, software, systems and data that Merchant receives from Company or from any other source relating to the Program and matters that are subject to the terms of the Agreement and shall use, and cause to be used, such information solely for the purposes of the performance of Merchant's obligations under the terms of the Agreement.

(c) Company will keep confidential and not disclose to any person (except Lenders or the employees, officers, shareholders, members, partners, directors, managers, agents or representatives of Company, its subsidiaries, Affiliates or its designees who are engaged in the implementation and execution of the Program) any information that Company receives from Merchant that is designated confidential by Merchant. However, nothing in the Agreement shall limit Company's or Lenders' rights to (i) report information regarding Borrowers to consumer and commercial credit reporting agencies and credit bureaus to the extent permitted by the Loan Documents and other agreements with the Borrower or by applicable law, (ii) share Borrower Information with third-party service providers in the ordinary course of business for the purposes of administering the Program, (iii) disclose Borrower Information or any segment thereof to actual and potential third-party lenders that are bound by customary confidentiality obligations with respect to such data, or (iv) in the event a Loan or any part thereof is sold or assigned, disclose any information reasonably necessary or required to effectuate such sale or assignment.

(d) Merchant and, on behalf of Lenders, Company each agrees that it has developed, implemented and will maintain at all relevant times contemplated by the Agreement effective information security policies and procedures that include administrative, technical and physical safeguards designed to (i) ensure the security and confidentiality of Borrower Information, (ii) protect against anticipated threats or hazards to the security or integrity of Borrower Information, (iii) protect against unauthorized access or use of Borrower Information, and (iv) ensure the proper disposal of Borrower Information. All personnel handling Borrower Information shall be appropriately trained in the implementation of such information security policies and procedures. Each party shall regularly audit and review its information security policies and procedures and systems to ensure their continued effectiveness and determine whether adjustments are necessary in light of circumstances, including changes in technology, customer information systems or threats or hazards to Borrower Information.

(e) Merchant shall promptly notify Company of any unauthorized access to Borrower Information or any breach in security measures or systems for the protection of Borrower Information and take appropriate action to prevent further unauthorized access or cure such breach. Merchant shall cooperate with Company with respect to its investigation or inquiry as to any such unauthorized access or breach, provide any notices regarding such unauthorized access or breach to appropriate law enforcement agencies and government regulatory authorities, affected applicants, Borrowers and customers as Company, at the direction and under the control of the Lenders, in its sole discretion, deems appropriate, and pay all expenses related thereto.

(f) Merchant agrees that Company, at the direction and under the control of Lenders, may at any time upon notice to Merchant, review and audit Merchant's information security policies, procedures and systems to verify their adequacy for protection of Borrower Information. Merchant will correct promptly any weakness in such policies, procedures or systems identified by Company in its reviews thereof.

**11. Borrower Complaints.**

Within five (5) Business Days of receipt, Merchant shall provide Company, acting on behalf of, and at the direction and under the control of, the Relevant Lender for the Loan to which such complaint relates, with a copy of any written complaint or a report of any verbal complaint received from any Borrower or any third party, including any regulatory authority. Merchant agrees it will cooperate with Company, acting on behalf of, and at the direction and under the control of, the Relevant Lender, in responding to complaints, which cooperation may include providing documents evidencing applicant or Borrower authorization to submit a transaction.

**12. Merchant Ineligible for Loan.**

Merchant acknowledges and agrees that neither it nor any of its owners, directors, officers, members, managers, representatives, employees or any member of their immediate families is eligible for a Loan.

**13. Insurance.**

During the term of the Agreement and thereafter for so long as Merchant has any obligations with respect to the Program, Merchant shall maintain at its expense insurance in such amount and against such risks as is customary for businesses of a comparable size in the industry in which Merchant operates. Insurance coverage shall be issued by a carrier rated "A VIII" or higher by A.M. Best or that otherwise is reasonably acceptable to Company, acting on behalf of, and at the direction and under the control of, Lenders, which acceptance will not be unreasonably withheld. If requested by Company or Lenders, Company and Lenders shall be named as additional insureds under each policy. If requested by Company acting on behalf of Lenders, Merchant shall provide Company with a certificate of insurance evidencing such insurance coverage and renewals thereof. Merchant shall notify Company if any required insurance policy is cancelled, not renewed or modified in any material respect within fifteen (15) days of any such cancellation, non-renewal or modification.

**14. Actions of Employees.**

Each party is responsible for the actions of its employees. In the event employment of an employee is terminated, the party that employed such former employee will take reasonable steps to ensure that such former employee no longer has access to the Program systems (including changing any passwords necessary to access such information or system or any confidential information relating to, or arising from, the Program).

**15. Marks.**

Merchant hereby grants Company, on behalf of itself and Lenders, a nonexclusive license to use its name, trademarks, logos and other marks in connection with the administration and operation of the Program during and after the term of the Agreement.

**16. Press Release.**

Merchant agrees not to issue any announcement concerning the Program or Merchant's relationship with Company or any Lender in a press release or other similar communication to the general public without Company's prior written consent.

**17. Call Monitoring.**

With respect to any calls Company may make to Merchant or Merchant may make to Company, Merchant acknowledges that such calls may be monitored or recorded by Company for quality assurance or other purposes.