# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DAVID WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. _____ |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **GOOD TIMES RESTAURANT,** ) | |
| **INC., d/b/a BAD** ) | |
| **DADDY'S INTERNATIONAL,** ) | |
| **LLC,** ) | |
| **Defendant.** ) | |

## **COMPLAINT**

Plaintiff **David Williams** ("Plaintiff" or "Williams") brings this employment discrimination action for relief and damages against **Defendant Good Times Restaurant, Inc., d/b/a Bad Daddy's International LLC** ("Good Times" or "Good Times Restaurant" or "Defendant") based on the following allegations and causes of action.

1

## NATURE OF THE ACTION

1.      This case arises under the Americans with Disabilities Act of 1990 ("ADA"), as amended in 2008, 42 U.S.C.A. § 12101 *et seq*. Plaintiff David Williams alleges that he was subjected to discrimination under the ADA in that Defendant Good Times Restaurant, Inc., failed to provide reasonable accommodations for impairments from injuries that he suffered after a serious automobile accident, and Good Times subsequently terminated Williams because of his disability. He seeks back pay, front pay, and lost benefits, including the cost of health insurance; compensatory damages for mental anguish and emotional distress; punitive damages to the extent allowed by law; and his attorneys' fees and costs of litigation.

## THE PARTIES

2.      Plaintiff Williams, during the time of the events alleged in this complaint, was employed at the Bad Daddy's Restaurant at 2995 Atlanta Road SE, Bldg. A #300 Smyrna, GA 30080.

3.      Williams is an individual with physical impairments that substantially limit one or more major life activities, as defined by the ADA. 42 U.S.C.A. §

12102(1)(A)-(2)(A). Plaintiff was qualified to perform the essential functions of his position with reasonable accommodations.

4. Good Times Restaurant is a covered entity under Title I of the ADA in that it had more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 42 U.S.C.A. § 12111(5)(A).

## PERSONAL JURISDICTION

5. Defendant may be served with proper process through its registered agent, Registered Agent Solutions, Inc., at 900 Old Roswell Lakes Parkway, Suite #310 Roswell, GA 30076.

## SUBJECT-MATTER JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

7. Venue is proper in this Court under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this judicial district and division.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. On March 31, 2022, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Good Times, alleging claims including discrimination under the ADA; on May 18, 2022, he filed a counseled amended charge. *See* Ex. A. Plaintiff's Right-to-Sue letter was issued on April 4, 2023, and this lawsuit is initiated prior to his statutory deadline of 90 days. *See* Ex. B.

**FACTUAL ALLEGATIONS**

9. Bad Daddy's Burger Bar, located at 2995 Atlanta Road SE, Bldg. A #300 Smyrna, Georgia 30080, is a franchise establishment licensed by Good Times Restaurant, Inc., a Colorado-based entity that operates primarily in Colorado and the Southeast, d/b/a Bad Daddy's International LLC. It is a full-service, casual dining restaurant.

10. In July 2021, Williams was hired as Kitchen Manager of the Bad Daddy's location in Smyrna. He reported directly to Brandon Summers ("Summers"), General Manager for the Bad Daddy's Smyrna restaurant.

4

11. Williams was responsible for the operation of the kitchen, which included duties such as overseeing food orders and food prep, preparing the shift schedule for employees, hiring and onboarding kitchen employees, maintaining monthly inventory, and ensuring the cleanliness of the kitchen.

12. The position of Kitchen Manager is a physically and mentally demanding role; it involves standing or walking for long periods of time, repetitive movements, constant bending and lifting as well as a sustained ability to focus, pay close attention to detail, resolve conflict, and make sound business judgments.

13. On or around March 3, 2022, Williams was involved in a serious motor vehicle accident on Interstate 85 in the Atlanta area, suffering injuries to his back and upper extremities and a concussion that produced signs of neurological damage.

14. For close to two weeks, Williams was out of work recovering from the accident. He was released to return to work on March 15, 2022, with certain limitations, such as being restricted to sedentary duty for a month and temporary light duty with no heavy lifting.

15. On or around March 12, 2022, before Williams returned to work,

he spoke by FaceTime with Summers and Amanda Sevin ("Sevin"), the district manager to whom Summers reported.

16.     During the video call, Williams informed Summers and Sevin of the full extent of his injuries and the immediate health issues he was experiencing, including a series of neurological problems related to the accident. Williams described symptoms including heightened emotions, racing thoughts, bouts of dizziness, nausea, brain fog, and increased anxiousness and agitation. Williams advised Summers and Sevin that while he would be on a range of medication to address these issues, his doctors were uncertain of the frequency with which these conditions might recur.

17.     During this video call, Williams identified several additional accommodations that he needed in addition to the sedentary and light-duty restrictions. He expressed to Summers and Sevin that in the short term, he needed to have a shadow manager assigned to help with cognitive tasks like scheduling assignments, inventory orders, and making nonroutine decisions during his shifts.

18.     Williams was in visible distress and became emotional at several points during the virtual call.

19. As Williams prepared to return to work, he submitted medical documentation regarding his physical work restrictions to Helena Kehagias-Reed ("Kehagias-Reed"), a manager in Defendant's Human Resources Department ("HR"). He also sent her a scanned copy of a fact sheet provided to him during his treatment that described the impacts of a head injury, such as a concussion.

20. The head injury document detailed expected symptoms of a head injury and a concussion. These included problems with decisional capacity; changes in personality; and unreasonable feelings of anger, all reactions that Williams had verbally described to Summers and Sevin in the March 12 call.

21. When Williams returned to work on March 15, he discovered that the sedentary and no-heavy-lifting accommodations were met and that he was assigned an extra employee, but only for the limited task of assisting with the opening and closing of the restaurant. Williams was told by Summers that HR was evaluating the additional accommodation of a shadow manager to relieve him of more-advanced cognitive tasks.

22. On March 16, 2022, Defendant's Vice President of Operations, James Abbott ("Abbott"), visited the Bad Daddy's Smyrna location and witnessed

Williams in a state of distress—he was dizzy and standing unsteadily over the prep area. Abbott questioned Williams about his prognosis and whether Williams' doctor thought he was capable of working. In turn, Williams described his diagnosis of post-concussion symptoms.

23. Later, on March 16, Williams contacted Kehagias-Reed to inquire about the process for requesting leave under the Family Medical and Leave Act ("FMLA"). While Williams had not been employed with the company long enough to qualify for leave under the FMLA, his request made it clear to Good Times that he was struggling with medical issues to the point that he needed to request time off.

24. On the morning of March 18, 2022, Williams and a fellow Bad Daddy's employee got in an admittedly heated argument at work. At no time did Williams use or threaten to use physical force, but he raised his voice and lost control of his temper.

25. Loss of emotional regulation and bouts of anger are recognized as typical consequences of traumatic head injuries, as Williams had informed Summers and Sevin during their March 12, 2022 virtual call and as was

documented in the fact sheet about head injuries that Williams sent to the HR department a week earlier.

26. After the incident, Williams was profusely apologetic and spoke with Sevin about the connection between his behavior and the effects of the concussion. Sevin even responded to Williams that "this is exactly what you said might happen."

27. Later the same day, on March 18, 2023, Summers and Sevin notified Williams that he was being terminated for violating the company's policies regarding "aggression," "profane or abusive language," and "rudeness."

28. The decision to terminate Williams was made by Abbott and HR Manager Kehagias-Reed. The HR manager had full knowledge of Williams' recent request for leave and his involvement in an accident that caused traumatic head injury; and upon information and belief, she would have disclosed to Abbott the full scope of her conversations with Williams and the information she received from him.

29. In addition, prior to the termination decision, Good Times' position statement to the EEOC acknowledges that Sevin discussed the March 18 incident

directly with Abbott. It can be inferred she likely mentioned her prior conversations with Williams about his head injury and its effects.

30. Under the ADA, Good Times had sufficient information in mid-to-late March 2022 to trigger an interactive process to discuss the full scope of Williams' post-accident limitations and the range of accommodations available to him. Williams had verbally disclosed details about the continuing cognitive effects of his injury and had provided a written fact sheet to the HR department outlining the aforementioned effects.

31. In addition, as of March 16, Williams had added medical leave to his requests for accommodation after he became ill and disoriented in front of Abbott.

32. Had Good Times met its obligations under the ADA to engage in an adequate interactive dialogue with Williams, it is likely he would have been placed on leave or, at a minimum, his duties at work would have been substantially limited prior to the date of the incident on March 18 that led to his termination. As a proximate result of Good Times' failure to provide reasonable accommodations, Williams ultimately suffered the adverse action of termination.

33. Rather than accommodate Williams, Good Times also terminated him because of the state of his health in mid-March 2022 and the company's unwillingness to accommodate him. Williams was fired within two days of Good Times' Vice President of Operations, James Abbott, observing Williams in physical distress while at work and Williams subsequently requesting medical leave. The same day of Williams' termination, Abbott conferred with an HR manager and a district manager whom Williams had informed about his cognitive challenges.

34. Good Times' violations of Williams' rights under the ADA have deprived him of substantial lost wages and benefits as well as causing noneconomic compensatory damages, including mental anguish and emotional distress.

## COUNT I
## FAILURE TO ACCOMMODATE
### (Americans with Disabilities Act, 42 U.S.C.A. § 12112(b)(5)(A))

35. Plaintiff Williams incorporates by reference the preceding paragraphs as if fully set forth herein.

36.     Defendant Good Times Restaurant, Inc., is a covered entity under the ADA. 42 U.S.C.A. § 12111(5)(A).

37.     Williams at all times relevant to this complaint was a person with an ADA-qualifying disability in that he suffered an impairment in the form of a concussion and a head injury that substantially limited major life activities, but he could have performed his job with reasonable accommodations.

38.     Good Times Restaurant failed to provide Williams with reasonable accommodations, including but not limited to time off to receive care and treatment related to his concussion and head injury.

39.     Good Times Restaurant failed to engage in an adequate interactive process to discuss the scope of Williams' cognitive limitations and to explore the full range of accommodations appropriate for Williams' disability.

40.     Good Times Restaurant's failure to provide reasonable accommodations to Williams and its failure to engage in an interactive process regarding said accommodations proximately led to the events that caused an adverse action—termination—which therefore constitutes unlawful discrimination under the ADA.

41. Good Times Restaurant's unlawful disability-based discrimination has inflicted various damages on Williams, including but not limited to loss of back pay, front pay, and benefits as well as noneconomic compensatory damages related to mental anguish, emotional distress, humiliation, embarrassment, and reputational stigma. Williams has also been made to bear the costs of litigation and attorneys' fees.

42. Good Times Restaurant's unlawful conduct was undertaken willfully, with deliberate indifference to Williams' right to be free from discrimination based on his disability.

## COUNT II
## DISCRIMINATORY TERMINATION
### (Americans with Disabilities Act, 42 U.S.C.A. § 12112(a))

43. Plaintiff Williams incorporates by reference the preceding paragraphs as if fully set forth herein.

44. Defendant Good Times Restaurant, Inc., a covered entity under the ADA, discriminated against Williams, a qualified employee under the ADA, by terminating him based on their unwillingness to accommodate his disability and the prospect that his condition might require extended time off from the company.

45. Good Times Restaurant's unlawful discrimination based on Plaintiff's disability has inflicted various damages on Williams, including but not limited to loss of back pay, front pay, and benefits as well as noneconomic compensatory damages related to mental anguish, emotional distress, humiliation, embarrassment, and reputational stigma. Williams has also been made to bear the costs of litigation and attorneys' fees.

46. Good Times Restaurant's unlawful conduct was undertaken willfully, with deliberate indifference to Williams' right to be free from discrimination based on his disability.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits;

B. Compensatory damages to the extent allowed by law;

C. Punitive damages;

D. Attorneys' fees and costs of litigation;

E. Prejudgment and post-judgment interest at the highest lawful rate; and

F. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted, the 27th day of June, 2023.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com


*s/Kendra Livingston*
Kendra Livingston
GA Bar No. 791806
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-301-402
klivingston@hkm.com


Attorneys for Plaintiff David Williams

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.