## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UTOPIA BOYNTON**, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO._____ |
| | ) | |
| **SITEL OPERATING** | ) | |
| **CORPORATION** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

Plaintiff Utopia Boynton ("Plaintiff") submits the following Complaint for damages under (1) the Americans with Disabilities Act of 1990 ("ADA") as amended, (2) under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. (the "FMLA") and (3) under 42 U.S.C. § 1981 ("Section 1981") against Defendant Sitel Operating Corporation. ("Sitel" or "Defendant").

## JURISDICTION AND VENUE

1. This action is for ADA discrimination, racial discrimination, and retaliation. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages, liquidated damages and attorney's fees and costs.

1.

2.	This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1331.

3.	Venue is appropriate in this Court as, upon information and belief, the Defendant is deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.  Here, Defendant is a Florida corporation licensed to do business in Georgia. Defendant does a substantial portion of its business in the Northern District and their registered agent is in the Northern District. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4.	Plaintiff is an African American female former employee of Sitel.

5.	Sitel is a foreign for-profit corporation registered to conduct business in the state of Georgia.

6.	Sitel may be served through its registered agent if service of process is not waived:

> Registered Agent Name: **Corporation Service Company**
> Physical Address: **2 SUN COURT, SUITE 400, PEACHTREE CORNERS, GA, 30092, USA**
> County: **Gwinnett**

7.	This Court has personal jurisdiction over Defendant.

## JURISDICTION AND VENUE

8. Plaintiff's 1981, ADA and FMLA claims present federal questions over which this Court has jurisdiction under 28 U.S.C. §§ 1331 *et seq.*, and this Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

9. This Court is an appropriate venue for all of Plaintiff's claims under 28 U.S.C. § 1391(b), (c), and (d).

## ADMINISTRATIVE PROCEEDINGS

10. On June 22, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Sitel. Attached hereto and incorporated herein is **Exhibit A**.

11. On March 30, 2023, the EEOC issued Plaintiff her notice of right to sue. Attached hereto and incorporated herein is **Exhibit B**.

12. Plaintiff has exhausted her administrative remedies prerequisite to the filing this suit.

13. Suit has been filed within 90 days of Plaintiff's receipt of her notice of right to sue.

## STATEMENT OF FACTS

14. Sitel is a global customer experience management company that operates customer contact centers in the United States, where it employs individuals to serve

as Customer Service Representatives who handle incoming calls providing service to customers of Sitel's clients.

15. At the time of her leave, Plaintiff was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.* in that she had been employed with Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding her serious health condition.

16. Sitel is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.* and the ADA, 42 U.S.C. § 12101 *et seq.*, as amended.

17. Sitel had more than 50 employees within a 75-mile radius of the location in which Plaintiff was employed in each of 20 or more consecutive calendar weeks during each of the years of Plaintiff's employment.

18. Plaintiff began working for Sitel on or about October 9, 2017.

19. Plaintiff was a CSR hired to work on Sitel's client accounts.

20. Plaintiff was a good employee, promoted twice within her first year at Sitel.

21. On or about April 8, 2018, Plaintiff was promoted from CSR to the Coach Growthpoint Training ("CGP") program.

22. On or about July 29, 2018, Plaintiff was promoted from the CGP program to Customer Service Coach.

23. As a coach, Plaintiff met goals to obtain monthly bonuses and often received the Top Coach award for the campaigns she worked on.

24. Plaintiff suffers from migraines, depression, and anxiety (hereinafter her "Disability").

25. Plaintiff's Disability constitutes a chronic condition disability as defined by the ADA.

26. Plaintiff's Disability also constitutes a serious health condition as defined by the FMLA.

27. Defendant was made aware of Plaintiff's disabilities and serious health conditions no later than October 2021.

28. Between May 2019 and January 2022, Plaintiff continued to request and get approval for intermittent FMLA for migraines and the aforementioned depression and anxiety.

29. In or around June 2021, Plaintiff began to report to Operations Manager Amber Mathis ("Ms. Mathis").

30. Ms. Mathis is a white female.

31. Everyone else whom Ms. Mathis supervised was white expect Plaintiff.

32. Ms. Mathis was initially complimentary of Plaintiff's work.

33. For example, after performing an audit of Plaintiff's work, Ms. Mathis sent her a message stating, "Omgosh! Speaking of skeps I just did your audit, your skeps are great, well done! 100% on both[.]" Attached hereto and incorporated herein is **Exhibit C**.

34. In October of 2021, Plaintiff began experiencing symptoms of anxiety and depression.

35. Plaintiff discussed her symptoms with Ms. Mathis; in fact, it was Ms. Mathis who first suggested to Plaintiff that she may be experiencing anxiety.

36. However, after Plaintiff spoke with Ms. Mathis about her symptoms, she began to notice that Ms. Mathis began treating her differently.

37. After seeing the change in Ms. Mathis, Plaintiff reached out to Joshua Peters ("Mr. Peters"), the senior operations manager of her campaign for a meeting.

38. Mr. Peters did not initially respond to Plaintiff.

39. In October 2021, Plaintiff and her team were assigned to a training class to learn a new set of call types.

40. While they were in training, they did not have performance metrics.

41. In November 2021, Plaintiff's former supervisor, Brittney Heard ("Ms. Heard"), reached out to Plaintiff after she noticed that Plaintiff was out of the office.

42. Plaintiff told Ms. Heard about feeling discriminated against and that she'd tried to speak with Mr. Peters, but he'd never responded.

43. Ms. Heard then told Plaintiff she would reach out to Mr. Peters and that Plaintiff should expect to hear from him.

44. On or about November 9, 2021, Mr. Peters met with Plaintiff. During that meeting, she told him that she felt like Ms. Mathis was discriminating against her.

45. Mr. Peters told Plaintiff that both Ms. Mathis and she had communication issues, and they just needed to work on it.

46. Plaintiff did not feel supported after meeting with Mr. Peters.

47. Shortly after this occurred, Plaintiff and her therapist determined that the best option for Plaintiff's mental health at the time was a leave of absence ("LOA").

48. Plaintiff's LOA was approved, and Plaintiff was out until January 11, 2022.

49. Upon Plaintiff's return to work, she began to have significant difficulties with her work computer.

50. Each time she had an issue, Plaintiff reached out to IT and to Ms. Mathis, keeping her consistently apprised of her situation, including sending her ticket numbers and screenshots.

51. Plaintiff was told she would need an entirely new system.

52. Plaintiff returned her computer as instructed and was diligent on checking in with IT about the status of her new system but was often met with days of silence.

53. Plaintiff noticed that she had not been paid while she was waiting for her new system and asked Ms. Mathis about it.

54. Plaintiff understood that agents did not get paid during system downtime, but as a salaried employee, Plaintiff's pay had never been affected.

55. Ms. Mathis stated that it was Sitel policy that she would not be paid despite the fact that other salaried employees are normally paid for similar situations.

56. Plaintiff filed an ethics complaint, stating that she felt like Ms. Mathis was discriminating against her.

57. Plaintiff followed up with HR but felt like they were giving her the run-around, and her pay issue was never resolved.

58. Plaintiff finally received her new computer on or about January 31, 2022.

59. When Plaintiff tried to connect on February 1, 2022, she noticed that there were no programs installed.

60. Plaintiff again let IT and Ms. Mathis know immediately. IT told Plaintiff that they would reach out to her to install her programs remotely.

61. Instead, on February 2, 2022, Mr. Peters and Ms. Mathis called Plaintiff and terminated her, effective immediately.

62. Plaintiff asked Mr. Peters why she was being terminated, and he told her it was due to attendance and poor performance over the prior three months.

63. Plaintiff then tried to ask Mr. Peters to explain how she could have poor performance over the previous months if she was in training and had no metrics in October and November and was out on an LOA in December, only to not have a reliable computer system when she returned.

64. Plaintiff also asked about her attendance since she had been out on an approved LOA.

65. Mr. Peters told Plaintiff that it was because she had not notified them prior to her LOA.

66. However, Plaintiff understood that Reed Group, the third-party company that handles Sitel's employee leaves, would have been in communication with her supervisors.

67. Further, Plaintiff exchanged text messages with Ms. Mathis regarding her leave. Attached hereto and incorporated herein is **Exhibit D.**

68. Plaintiff also asked how it was possible that she could be terminated with having no prior disciplinary or corrective action regarding her attendance or performance.

69. Mr. Peters merely stated that her termination stood.

70. Plaintiff then emailed HR since the Sitel termination process was not followed.

71. Plaintiff also filed an ethics complaint since she felt that she was being discriminated against because of her disability, serious health condition, and her race, and retaliated against because she had spoken to Mr. Peters about Ms. Mathis and because of the previous ethics complaint she filed against Ms. Mathis when she was not being paid.

72. The true reason for Plaintiff's termination was in retaliation for her complaints of discrimination against Ms. Mathis.

73. The close temporal proximity between Plaintiff's return from her approved LOA on January 11, 2022 and her termination on February 2, 2022 as well as the failure to follow the correct process for termination is clearly indicative that Plaintiff's attendance and performance "issues" were pretextual and not the real reason for her termination.

## COUNT I

## VIOLATION OF ADA

74. Plaintiff incorporates by refence each and every preceding paragraph of this Complaint.

75. Plaintiff has a disability as defined by the ADA.

76. As detailed above, Plaintiff notified Defendant of her disability.

77. Plaintiff's supervisor began to discriminate against Plaintiff after finding out about Plaintiff's disability, didn't offer her reasonable accommodations, and ultimately terminated her.

78. Defendant's actions violated the ADA.

79. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered damages, including but not limited to loss pay, job benefits, emotional distress, and all other damages allowed by law.

## COUNT II

## DISCRIMINATION ON THE BASIS OF RACE

80. Plaintiff incorporates by refence each and every preceding paragraph of this Complaint.

81. As detailed above, Plaintiff was treated unfavorably as compared to her non-African American counterparts.

82. Defendant's actions violated § 1981.

83. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to,

outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

## COUNT III

## INTERFERENCE WITH THE FMLA

84. Plaintiff incorporates by reference paragraphs 1 through 83 of this Complaint as if fully set forth verbatim herein.

85. Plaintiff had been employed with Defendant for more than twelve (12) months and for at least 1,250 hours of service during the previous twelve (12) month period, qualifying her for leave.

86. At all times relevant to this action, Defendant had more than 50 employees in twenty (20) or more workweeks in 2021-2022 and were engaged in commerce or were part of an industry affecting commerce, making them an "eligible employer" as defined by the FMLA, 29 U.S.C. § 2611(40(A).

87. Plaintiff had a serious health condition as defined by the FMLA.

88. This serious health condition rendered Plaintiff unable to perform the functions of her position with Defendant.

89. Plaintiff had not exhausted her FMLA leave limit in 2021 or 2022.

90. Plaintiff timely notified Defendant Employers of her serious medical condition.

91. Defendant Employers knew that Plaintiff was qualified for leave under the FMLA, and that Plaintiff needed leave under the FMLA; Defendant Employers, however terminated Plaintiff so that she could not continue use of her FMLA.

92. As a result of Plaintiff's use and requests for leave, Defendant Employers unlawfully terminated Plaintiff's employment to prevent her from taking intermittent FMLA leave, thus interfering with Plaintiff's right to FMLA.

## COUNT IV

## RETALIATION

93. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

94. Plaintiff engaged in protected activity under the ADA, 1981, and the FMLA.

95. As detailed above and in response, Defendant retaliated against Plaintiff.

96. Specifically, Plaintiff was retaliated against (1) when her pay was withheld during system downtime and when she was terminated, (2) by Defendant terminating her, (3) and in the other disparate ways that Plaintiff was treated after her complaints of discrimination.

97. Defendant's actions constitute unlawful retaliation in violation of all the above cited statues.

98. Defendant willfully and wantonly disregarded Plaintiff's rights and Defendant's retaliation against Plaintiff was undertaken intentionally and in bad faith.

99. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a)   a declaratory judgment that Defendants have engaged in unlawful employment practices in violation of the ADA, FMLA as amended, and Section 1981;

(b)   an injunction prohibiting Defendants from engaging in unlawful employment practices in violation of the ADA, FMLA as amended, and Section 1981;

(c)   full back pay from the date of Plaintiff's constructive termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)   front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e)     liquidated damages and compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f)     punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for its conduct toward Plaintiff and deter it from similar conduct in the future;

(g)     reasonable attorney's fees and costs; and

(h)     nominal damages and any other and further relief as the Court deems just and proper.

Respectfully submitted this 28th day of June, 2023.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorneys for Plaintiff

THE MIXON LAW FIRM
3344 Peachtree Rd. Suite 800
Atlanta, GA 30326
Telephone: (770) 955-0100
Facsimile: (678) 999-5039