**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| **THE HANOVER INSURANCE COMPANY,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) ) | **Case No.:** _____ |
| **WESLEY APARTMENT HOMES, LLC; AVILA REAL ESTATE LLC; WESLEY KENSINGTON PARTNERS, LLC; ADRIANNE HARDY, as ADMINSTRATOR OF THE ESTATE OF MICHAEL LAMAR WRIGHT; and CLEATONYA BRITTON as CONSERVATOR OF MINOR M.W.** | ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Hanover Insurance Company ("Hanover"), for its Complaint for

Declaratory Judgment ("Complaint") against Defendants Wesley Apartment

Homes, LLC ("Wesley Apartments"); Avila Real Estate LLC ("Avila"); Wesley

Kensington Partners, LLC ("Wesley Kensington"); Adrianne Hardy as

Administrator of the Estate of Michael Lamar Wright and as Parent of Minors A.W. and A.W.; and Cleatonya Britton as Conservator of Minor M.W., alleges, based upon its knowledge, information, and belief, as follows:

## NATURE OF THE ACTION

1.      Hanover files this Complaint to obtain a judicial determination and declaration as to the parties' respective rights and obligations under Miscellaneous Advantage Professional Liability Insurance Policy No. LH6 H024735 02, which Hanover issued to Wesley Apartments and Avila for the **Policy Period** of October 1, 2021 to October 1, 2022 (the "Policy").[1]  A true and correct copy of the Policy (except for the application) is attached as Exhibit A.

2.      Wesley Apartments is the property manager for a residential apartment complex in Georgia (the "Property").  Avila is Wesley Apartment's parent company.  They seek coverage under the Policy for four claims arising out of an incident at the Property in which Michael Lamar Wright was shot to death: (i) a letter dated August 18, 2022 from counsel for Adrianne Hardy, as the Administrator for the Estate of Michael Lamar Wright (the "Estate"), to Sompo Insurance Company, as insurer for Avila, demanding $5 million to settle a

---

[1] With the exception of headings, all terms in bold print are bolded and defined in the Policy.

wrongful death claim against Avila on behalf of the Estate (the "August 2022 Estate Demand Letter"); (ii) a lawsuit styled, *Hardy, et al. v. Wesley Kensington Partners LLC, et al.*, Case No. 22A04071, which is pending in the State Court of DeKalb County, Georgia, involving a wrongful death claim on behalf of Michael Lamar Wright's surviving minor children (the "Wrongful Death Litigation"); (iii) a declaratory judgment lawsuit styled, *Ascot Insurance Company v. Wesley Kensington Partners I, LLC, et al*., Case No. 1:22-cv-4064-LMM, which is currently pending in the United States District Court for the Northern District of Georgia, involving Wesley Kensington's and Wesley Apartments' request for coverage under an excess general liability policy for matters arising from Michael Lamar Wright's shooting (the "Ascot Coverage Litigation"); and (iv) a letter dated December 8, 2022 from Wesley Kensington demanding that Wesley Apartments defend Wesley Kensington in the Ascot Coverage Litigation and indemnify it for any potential loss of insurance coverage under the Ascot policy (the "December 2022 Wesley Kensington Demand Letter") (collectively, the "Underlying Matters").

3.     Hanover seeks a judicial determination that no coverage is available under the Policy for the Underlying Matters because the Policy's Lack of Prior Knowledge Condition of the Insuring Agreement has not been satisfied.

4.     Hanover also seeks a judicial determination that no coverage is available under the Policy for the Ascot Coverage Litigation because the Policy's Non-Monetary Relief Exclusion precludes coverage.

5.     Hanover also seeks a judicial determination that no coverage is available under the Policy for the December 2022 Wesley Kensington Demand Letter because the Policy's Related Entity Claim Exclusion and Owned Property Exclusion precludes coverage.

6.     An actual and justiciable controversy has arisen and now exists between the parties relating to their respective rights, duties, and obligations under the Policy regarding the Underlying Matters.

## PARTIES

7.     Plaintiff Hanover is a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business located in the State of Massachusetts.

8.     Defendant Wesley Apartments is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place business located in the State of Georgia.  Wesley Apartments' members, or the members' ultimate corporate parents or natural-person owners, are all citizens of either the State of Georgia or the State of South Carolina.  *See Ascot Insurance*

4

*Company v. Wesley Kensington Partners I, LLC, et al.*, Case No. 1:22-cv-4064-LMM (N.D. Ga.), Doc. No. 42.

9.     Defendant Avila is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place business also located in the State of Georgia.  Avila's members, or the members' ultimate corporate parents or natural-person owners, are all citizens of either the State of Georgia or the State of South Carolina.  *See Ascot Insurance Company v. Wesley Kensington Partners I, LLC, et al*., Case No. 1:22-cv-4064-LMM (N.D. Ga.), Doc. No. 42.

10.     Defendant Wesley Kensington is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place business also located in the State of Georgia.  Wesley Kensington's members, or the members' ultimate corporate parents or natural-person owners, are all citizens of either the State of Georgia or the State of South Carolina.  *See Ascot Insurance Company v. Wesley Kensington Partners I, LLC, et al*., Case No. 1:22-cv-4064-LMM (N.D. Ga.), Doc. No. 42.

11.    Defendant Adrianne Hardy, as Administrator of the Estate of Michael Lamar Wright., is a resident and a citizen of the State of Georgia. Mr. Hardy is also the mother of Minors A.W. and A.W.[2]

12.    Defendant Cleatonya Britton, as Conservator of Minor M.W., is a resident and a citizen of the State of Georgia.

## JURISDICTION AND VENUE

13.    This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining an actual and justiciable controversy between the parties.

14.    This action currently is ripe for adjudication.

15.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between Plaintiff Hanover and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Wesley Apartments and Avila seek coverage under the Policy for the Underlying Matters, which include the August 2022 Estate Demand Letter and the December 2022 Wesley Kensington Demand Letter.  The August 2022 Estate Demand Letter

---

[2] When a conservator is named to represent A.W. and A.W., Hanover will evaluate whether it is necessary to file a motion to amend the complaint to name the minors' conservator to the extent that the minors claim any interest in the Policy and are necessary parties to the Court's adjudication of this dispute.

asserts that Avila is liable for damages for Michael Lamar Wright's injuries and demands $5 million.  The December 2022 Wesley Kensington Demand Letter demands a defense from Wesley Apartments in the Ascot Coverage Litigation and seeks to hold Wesley Apartments and Avila responsible for up to $25 million in lost insurance coverage to the extent that the insurer prevails in the Ascot Coverage Litigation.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events and/or omissions giving rise to the Underlying Matters at issue occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Affiliation Between Wesley Kensington and Wesley Apartments

17.     Wesley Kensington owns an apartment complex named Wesley Kensington Apartment Homes (*i.e,* the Property), located at 100 Kensington Circle, Stonecrest, Georgia.

18.     Beginning on or about September 6, 2019, Wesley Kensington and Wesley Apartments entered into a contract, pursuant to which Wesley Apartments agreed to serve as Wesley Kensington's property manager for the Property.

19.     Avila is the parent company of Wesley Apartments.

20.     There is significant overlap in the ownership, management, and control of Wesley Kensington, on the one hand, and each of Avila and Wesley Apartments, on the other hand.

21.     Ownership of Wesley Kensington is structured as follows:

    a.  ID Family Holdings, LLLP ultimately has a 42% ownership share of Wesley Kensington.  Ignacio Diego is the sole general partner of ID Family Holdings, LLLP.

    b.  JD Family Holdings, LLLP a 42% ownership share of Wesley Kensington.  Jaime Diego is the sole general partner of JD Family Holdings, LLLP.

    c.  MDT Family Holdings, LLLP ultimately has a non-voting 8% ownership interest in Wesley Kensington.  Maria Diego Taboada is the sole general partner of MDT Family Holdings, LLLP.

    d.  PED Family Holdings, LLLP ultimately has a non-voting 8% ownership interest in Wesley Kensington.  Pedro Diego is the sole general partner of PED Family Holdings, LLLP.

22.     Ownership of Avila and, in turn, Wesley Apartments, is structured as follows:

    a.  ID Family Holdings, LLLP ultimately has a 40% ownership share of Avila and, in turn, Wesley Apartments.  Ignacio Diego is the sole general partner of ID Family Holdings, LLLP.

    b.  JD Family Holdings, LLLP ultimately has a 40% ownership share of Avila and, in turn, Wesley Apartments.  Jaime Diego is the sole general partner of JD Family Holdings, LLLP.

    c.  IMD Family Holdings, LLLP ultimately has the remaining 20% ownership share in Avila and, in turn, Wesley Apartments.  Ignacio M. Diego is the sole general partner of IMD Family Holdings, LLLP.

23.    Ignacio Diego is listed as a current "principal" of Avila on its website.

24.    Jaime Diego is listed as a current "principal" of Avila on its website.

25.    Ignacio M. Diego is listed as a current "principal" of Avila on its website.

**The Death of Michael Lamar Wright**

26.    Michael Lamar Wright was a resident at the Property.

27.    On December 14, 2020, Mr. Wright suffered a gunshot wound to the torso while he was on the Property.

28.    Mr. Wright ultimately died of his injuries.

29.     On March 2, 2021, counsel for the Estate issued a letter to Avila demanding that Avila preserve all evidence related to the injuries Mr. Wright suffered on December 14, 2020 as a result of "the dangerous conditions of your property" (the "March 2021 Spoliation Letter").

30.     Avila received a copy of the March 2021 Spoliation Letter no later than March 9, 2021.

31.     On May 4, 2021, counsel for the Estate issued a second letter to Avila again demanding that Avila preserve all evidence related to injuries Mr. Wright suffered on December 14, 2020 as a result of "the dangerous conditions of your property" (the "May 2021 Spoliation Letter").

32.     Avila received a copy of the May 2021 Spoliation Letter no later than May 17, 2021.

**The August 2022 Estate Demand Letter**

33.     On August 18, 2022, counsel for Adrianne Hardy, as the Administrator for the Estate, issued the August 2022 Estate Demand Letter to Avila's insurer, Sompo Insurance Company.

34.     The August 2022 Estate Demand Letter alleges that, on or about December 14, 2020, Mr. Wright was shot and killed while he was lawfully on Avila's premises.

35.     According to the August 2022 Estate Demand Letter, Mr. Wright's death was the result of Avila's failure to exercise ordinary care in inspecting and keeping its premises in a safe condition.

36.     The August 2022 Estate Demand Letter contends that, on the day of Mr. Wright's shooting, an unauthorized red vehicle, which was later implicated in the shooting, was able to enter the Property complex by tailgating another vehicle through the Property's security gate.  The August 2022 Demand Letter asserts that Avila knew or should have known that the security gate's delay in fully closing allowed unauthorized persons to access the property, as residents had expressed concerns about the gate for several years.

37.     Additionally, the August 2022 Estate Demand Letter alleges that no security personnel were actively monitoring the surveillance footage in real time, such that no security guard responded to the shooting.

38.     Finally, the August 2022 Estate Demand Letter contends that Avila failed to implement any additional security measures, despite knowing of the area's crime history and a prior shooting at the apartment complex.

39.     Based on these allegations, the August 2022 Estate Demand Letter asserts that Avila is liable for damages for Mr. Wright's injuries and demands $5 million.

40.     Avila received a copy of the August 2022 Estate Demand Letter on August 26, 2022.

**The Wrongful Death Litigation on behalf of Mr. Wright's surviving children**

41.     On or about October 19, 2022, Adrianne Hardy, as parent of minors A.W. and A.W., and Cleatonya Britton, as conservator of minor M.W., the surviving children of Mr. Wright, filed the complaint in the Wrongful Death Litigation, naming Wesley Kensington, Avila, and Elisha Wright (Mr. Wright's estranged wife) as defendants.  A true and correct copy of the complaint in the Wrongful Death Litigation, with exhibits, is attached as Exhibit B.

42.     The Wrongful Death Litigation alleges that Mr. Wright lived at the Property and that, on December 14, 2020, a red vehicle allegedly gained access through the Property's unsecured entry gate by tailgating another vehicle.  *See* Wrongful Death Litigation Compl., ¶¶  15-16 (Ex. B).

43.     The driver of the red vehicle, Ms. Wright, then allegedly accosted Mr. Wright and shot him.  *See* Wrongful Death Litigation Compl., ¶ 16 (Ex. B).

44.     The complaint in the Wrongful Death Litigation contends that Wesley Kensington and Avila owed both a legal duty of reasonable care and a duty of ordinary care to inspect and keep the property in a safe condition.  *See* Wrongful Death Litigation Compl., ¶¶ 26, 28 (Ex. B).

45.     The complaint in the Wrongful Death Litigation also alleges that—prior to the shooting—Wesley Kensington and Avila knew that the security gate remained open for stretches of time (thereby allowing multiple vehicles to unlawfully enter the property), knew of criminal activity on the Property and surrounding areas, and also knew that the Property had inadequate security.  *See* Wrongful Death Litigation Compl., ¶¶ 17-18, 31-32 (Ex. B).

46.     Despite this knowledge, Wesley Kensington and Avila allegedly failed to have working security gates at all times, failed to have proper security on the Property, failed to have security personnel on the Property, and failed to implement measures to prevent or reduce criminal activity on the Property.  *See* Wrongful Death Litigation Compl., ¶ 30 (Ex. B).

47.     Based on these allegations, the complaint asserts that Wesley Kensington and Avila breached their duties of reasonable care and ordinary care to Mr. Wright and caused injuries to Mr. Wright's three surviving children.  *See* Wrongful Death Litigation Compl., ¶¶ 27, 29, 34 (Ex. B).

48.     As to Avila and Wesley Kensington, the Wrongful Death Litigation asserts a single cause of action for negligence and seeks relief in the form of damages and attorneys' fees and costs.  *See* Wrongful Death Litigation Compl., ¶¶ 25-35, 56 (Ex. B).

**The Ascot Coverage Litigation**

49.      Ascot Insurance Company ("Ascot") issued an umbrella liability insurance policy to Wesley Kensington Partners I, LLC and Wesley Kensington Partners II, LLC (the "Ascot Policy").  *See* Ascot Coverage Litigation Am. Compl. ¶ 18, a true and correct copy of which, with exhibits, is attached as Exhibit C.

50.      The Ascot Policy applies in excess of two underlying insurance policies issued by Ohio Security Insurance Company.  *See* Ascot Coverage Litigation Am. Compl. ¶ 21 (Ex. C).

51.      Wesley Kensington sought coverage under the Ascot Policy for two claims asserted against it in connection with Mr. Wright's death: (i) a September 12, 2022 demand letter issued to Ascot by the Estate for the full policy limits under the Ascot Policy; and (ii) the Wrongful Death Litigation.

52.      On or about October 11, 2022, Ascot filed the complaint in the Ascot Coverage Litigation, naming as defendants Wesley Kensington Partners I, LLC; Wesley Kensington Partners II, LLC; and Adrianne Hardy, as administrator for the Estate.

53.      On or about December 22, 2022, Ascot filed the operative amended complaint against Wesley Kensington Partners I, LLC; Wesley Kensington Partners II, LLC; Wesley Kensington; Avila; Adrianne Hardy, as administrator for

14

the Estate and as parent of minors A.W. and A.W.; and Cleatonya Briton, as

conservator of minor M.W.  *See* Ascot Coverage Litigation Am. Compl. (Ex. C).

54.     Wesley Kensington Partners I, LLC and Wesley Kensington Partners

II, LLC were subsequently dismissed from the Ascot Coverage Litigation.

55.     The amended complaint alleges that the Ascot Policy imposes a

condition to coverage, which requires that "[i]n the event of an 'event', claim or

suit, we or our representative must receive prompt notice of the 'event.'"  *See*

Ascot Coverage Litigation Am. Compl. ¶ 22 (Ex. C).

56.     The Ascot Policy allegedly provides that this "requirement for giving

notice of a claim, if not satisfied by the insured within 30 days of the date of the

'event', may be satisfied by an injured third party who, as the result of such

'event', has a claim against the insured.  However, in this event, notice of a claim

given by an injured third party must be mailed to us."  *See* Ascot Coverage

Litigation Am. Compl. ¶ 22 (Ex. C).

57.     The amended complaint contends that, on or about December 14,

2020, Mr. Wright was fatally shot on the Property.  *See* Ascot Coverage Litigation

Am. Compl. ¶ 14 (Ex. C).

58.     Ascot alleges that, although notice of this event was allegedly

provided to Ohio Security Insurance Company on or about December 20, 2020,

Ascot did not receive notice of the event until July 12, 2022.  *See* Ascot Coverage

Litigation Am. Compl. ¶¶ 25, 27-28 (Ex. C).

59.     The amended complaint seeks a declaration that the Ascot Policy does

not provide coverage for any of the claims arising out of the December 14, 2020

shooting and death of Mr. Wright because notice of the matter to Ascot was

untimely and did not satisfy the Ascot Policy's notice condition.  *See* Ascot

Coverage Litigation Am. Compl. ¶¶ 39-41 (Ex. C).

60.     In addition, the amended complaint asserts that neither Wesley

Kensington nor Avila are insureds under the Ascot Policy and seeks a declaration

as to what duty, if any, Ascot owes to these two entities.  *See* Ascot Coverage

Litigation Am. Compl. ¶¶ 42-43 (Ex. C).

**The December 2022 Wesley Kensington Demand Letter**

61.     On December 8, 2022, Wesley Kensington issued the December 2022

Wesley Kensington Demand Letter to Wesley Apartments.

62.     The December 2022 Wesley Kensington Demand Letter states that

Wesley Kensington has been subject to claims made by the Estate and minor

children of Mr. Wright in connection with his shooting on the Property.

63.     The December 2022 Wesley Kensington Demand Letter further states

that Wesley Kensington's umbrella liability insurance carrier (Ascot) declined

coverage for claims arising from the shooting and has filed the Ascot Coverage Litigation to obtain a declaration that it owes no duty to defend or cover the matters based on untimely notice.

64.     Wesley Kensington asserts that, if Ascot prevails in the Ascot Coverage Litigation, then Wesley Kensington would lose up to $25 million in insurance coverage.

65.     According to the December 2022 Wesley Kensington Demand Letter, pursuant to the terms of an agreement between Wesley Kensington and Wesley Apartments dated September 6, 2019, Wesley Apartments was required to handle property and general liability insurance matters, including "claims notification" to Wesley Kensington's insurance carriers.

66.     Per the December 2022 Wesley Kensington Demand Letter, Wesley Kensington seeks to hold Wesley Apartments responsible for any failure to timely notify Ascot of the shooting and related fallout from the shooting, including any resulting loss of insurance coverage under the Ascot Policy.

67.     Wesley Kensington also demands that Wesley Apartments defend Wesley Kensington's interests in the Ascot Coverage Litigation.

**The Policy**

68.     Hanover issued Miscellaneous Advantage Professional Liability Insurance Policy No. LH6 H024735 02 to Wesley Apartments and Avila for the **Policy Period** of October 1, 2021 to October 1, 2022.  *See* Policy, Declarations Page, Items 1-2 (Ex. A).

69.     The Policy has a $2,000,000 each **Claim** and aggregate Limit of Liability.  *See id.*, Declarations Page, Item 3 (Ex. A).

70.     Subject to all of its terms and conditions, the Policy's Professional Services Coverage Insuring Agreement provides that Hanover will

> pay on **Your** behalf those sums which **You** become legally obligated to pay as **Damages** because of any **Claim** made against **You** for a **Wrongful Act**.

*See id.*, Section A.1 (Ex. A).

71.     The Policy defines ""**You**"" and ""**Your**"" as the **Named Insured** and:

1.      If the **Named Insured** is a sole proprietorship, any past or present employee, but only while acting on behalf of the **Named Insured** in their capacity as an employee;

2.      If the **Named Insured** is a partnership, any past or present general or managing partner, principal or employee, but only while acting on behalf of the **Named Insured** in such capacity;

3.      If the **Named Insured** is a limited liability company, any past or present managing member, principal or employee**,** but only while acting on behalf of the **Named Insured** in such capacity;

18

4.  If the **Named Insured** is a corporation, any past or present officer, director, trustee, or employee, but only while acting on behalf of the **Named Insured** in such capacity;

5.  The **Named Insured's** temporary or leased employees, but only while acting on behalf of the **Named Insured**;

6.  A past or present **Subsidiary** of the **Named Insured**, but only for **Professional Services** rendered while a **Subsidiary** of the **Named Insured**;

7.  Your lawful spouse or **Domestic Partner**, solely for liability arising from any **Wrongful Act** of an **Insured** committed without the participation of such spouse or **Domestic Partner**;

8.  **Your** heirs, assigns and legal representatives in the event of **Your** death, incapacity or bankruptcy to the extent that **You** would have been covered; or

9.  An **Independent Contractor**, but only while acting in such capacity on behalf of the **Named Insured**.

*See id.*, Section D (Ex. A).

72.  The Policy defines the **Named Insured** as Wesley Apartments and Avila, as the entities designated in the Declarations page.  *See id.*, Section D (Ex. A); *see also id.*, Declarations, Item 1 (Ex. A).

73.  The Policy defines **Claim** in relevant part as a "[w]ritten demand received by an **Insured** for **Damages** or **Equitable Relief**" or a "**Suit**."  *See id.*, Section D (Ex. A).

74.  The Policy defines **Damages** to mean:

monetary judgments, awards or settlements unless otherwise excluded.  **Damages** includes pre-judgment interest; and post judgment interest that accrues after entry of judgment and before **We** have paid, offered to pay or deposited in court that part of judgment within the applicable Limit of Liability.

**Damages** also means punitive of exemplary **Damages** or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such **Damages**.

**Damages** do not include any costs or expenses in complying with any demand for or award of **Equitable Relief**, even if such compliance is compelled as a result of a judgment, award or settlement. **Damages** also do not include return, restitution or reduction of professional fees, or fines, statutory penalties, or sanctions against **You** (except as provided with respect to punitive or exemplary damages), whether imposed by law or otherwise.

*Id.*, Section D (Ex. A).

75.     The term **Equitable Relief** means "a remedy other than the payment of monetary damages.  **Equitable Relief** includes non-monetary relief and injunctive relief."  *Id.*, Section D (Ex. A).

76.     **Suit** is defined as "a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading.  **Suit** includes a binding arbitration proceeding in which **Damages** are alleged, and to which **You** must submit or do submit with **Our** consent."  *Id.*, Section D (Ex. A).

77.    The Policy defines **Wrongful Act** as "any actual or alleged negligent act, error, omission, misstatement, or **Personal Injury**, in the rendering or failure to render **Your Professional Services**."  2021-2022 Policy, Section D (Ex. A).

78.    **Professional Services** includes **Property Manager**.  *See id.*, Section D (Ex. A); *id.*, Declarations, Item 7 (Ex. A).

79.    **Property Manager** is in turn defined as:

a person or entity providing the following services regarding a commercial or residential property, including a Real Estate Owned (REO) property, foreclosure, or short sale, provided that all necessary licenses or certifications are held by the . . . person or entity at the time of the **Wrongful Act**:

1.   Development and implementation of management plans and budget;

2.   Oversight of physical maintenance of property;

3.   Solicitation, evaluation, selecting and securing of tenants, management of tenant relations, collection of rent and processing evictions;

4.   Development, implementation and management of loss control and risk management plans for real property;

5.   Development, implementation and management of contracts and subcontracts necessary for the daily functioning of the property; or

6.   Personnel administration and record keeping in connection with a managed property;

**Property Manager** does not include **Construction Manager**.

21

*Id.*, Section D, as amended by Endorsement No. 2 (Ex. A).

80.     The Policy imposes the following condition precedent to coverage

under the Professional Services Coverage Insuring Agreement:

> None of **You** had knowledge of facts which could have
> reasonably caused **You** to foresee a **Claim** or **Supplemental**
> **Coverage Matter** or knowledge of any **Claim** or
> **Supplemental Coverage Matter**, prior to the inception date of
> this **Policy**.

*Id.*, Section A (Ex. A) (the "Prior Knowledge Condition").

81.     The Policy bars coverage for **Claims** "[b]ased upon, arising out of, or

in any way related to, directly or indirectly, any demand for **Equitable Relief**."

*Id.*, Section E.4 (Ex. A) (the "Non-Monetary Relief Exclusion").

82.     The Policy also bars coverage for **Claims**

> Arising out of a **Claim** by any **Insured** under this **Policy**
> against any other insured under this **Policy**, or against **You** that
> is brought by or on behalf of:
>
> 1.   Any business entity that is owned, managed, or operated,
>      directly or indirectly, in whole or in part, by **You**;
>
> 2.   Any parent company, **Subsidiary**, successor or assignee
>      of **Yours**, or anyone affiliated with **You** or such business
>      entity through common majority ownership or control; or
>
> 3.   Any independent contractor supplying material or
>      services to **You**.

*Id.*, Section E.16 (Ex. A) (the "Related Entity Claim Exclusion").

83.     The Policy precludes coverage, in relevant part, for **Claims**

Based upon, arising out of, or in any way relating to, directly or indirectly,  . . . any actual or attempted sale, purchase, leasing, appraisal, or property management of **Owned Property**. However, in regard to:

    1.  Services as **Property Manager** that in any way involve **Owned Property**, however, subject to the corresponding sublimit and deductible in the Schedule above, this exclusion o.1) shall not apply if:

        a.  The **Claim** is not brought or maintained by, on behalf of, in the right of, or at the direction of any other owner, or any business entity that is owned, managed or operated, directly or indirectly by any other owner, in any capacity; or

        b.  If the **Claim** is brought or maintained by, on behalf of, in the right of, or at the direction of any other owner, or any business entity that is owned, managed or operated, directly or indirectly by any other owner, in any capacity, the amounts payable as **Loss** by **Us** will be reduced by that percent of the ownership/equity owned by all **Insureds** and all **Insureds' Immediate Family** . . . .

*Id.*, Section E.o, as amended by Endorsement No. 2 (Ex. A) (the "Owned Property

Exclusion").

84.     The Policy defines **Owned Property** as:

real property owned by:

    1.  Any **Insured**;

2. Any entity in which the **Insured** had a financial or contemplated financial interest;

3. Any entity with a financial interest or contemplated financial interest in the **Named Insured**; or

4. Any entity under the same financial control as the **Named Insured**.

*Id.*, Section D, as amended by Endorsement No. 2 (Ex. A).

85. **Immediate Family** is defined to mean "a spouse, ex-spouse, sibling(s), children, parent(s) or **Domestic Partner**." *Id.*, Section D, as amended by Endorsement No. 2 (Ex. A).

## Wesley Apartments and Avila Notify Hanover of the Underlying Matters and Hanover Denies Coverage

86. On November 10, 2022, during the **Extended Reporting** period of the Policy, Wesley Apartments and Avila tendered the Ascot Coverage Litigation for coverage under the Policy. *See* Policy, Section A and Section F.1 (Ex. A).

87. Wesley Apartments and Avila subsequently provided notice to Hanover of the August 2022 Estate Demand Letter, the Wrongful Death Litigation, and the December 2022 Wesley Kensington Demand Letter, and thereafter provided other information to Hanover in connection with Hanover's investigation of coverage.

*88.* The Underlying Matters all arise out of the shooting death of Mr. Wright and assert that Wesley Apartments and/or Avila committed negligent acts, errors, or omissions in connection with Mr. Wright's death and the resulting circumstances surrounding his death. Accordingly, Hanover concluded that the Underlying Matters include, in whole or in part, allegations of **Wrongful Acts**, facts or circumstances that have a causal or logical connection, and thus are considered one **Claim** first made and reported under the Policy. *See* Policy, Section D (Ex. A).

89. By letter dated May 4, 2023, Hanover denied coverage on the following grounds: (i) the Policy's Prior Knowledge Coverage Condition was not satisfied as to all of the Underlying Matters; (ii) the Policy's Non-Monetary Relief Exclusion barred coverage for the Ascot Coverage Litigation; and (iii) the Policy's Related Entity Claim Exclusion and Owned Property Exclusion barred coverage for the December 2022 Wesley Kensington Demand Letter.

90. Finally, Hanover reserved its rights to rescind the Policy and any subsequently issued policy to the extent that Wesley Apartments and/or Avila made material misrepresentations in the Application.

## COUNT I

### For a Declaration That There Is No Coverage under the Policy for the Underlying Matters Because the Lack of Prior Knowledge Condition Is Not <u>Satisfied</u>

91.     Hanover realleges and incorporates by reference the allegations in Paragraphs 1 through 90 of this Complaint.

92.     The Policy's Professional Services Coverage Insuring Agreement provides that, as a condition precedent to coverage, "None of **You** had knowledge of facts which could have reasonably caused **You** to foresee a **Claim** or **Supplemental Coverage Matter** or knowledge of any **Claim** or **Supplemental Coverage Matter**, prior to the inception date of this **Policy**."  Policy, Section A (Ex. A) (*i.e.,* the Prior Knowledge Condition).

93.     Wesley Apartments was the property manager for the Property on December 14, 2020, when Mr. Wright was shot and killed on the Property.

94.     On March 2, 2021, counsel for the Estate issued the March 2021 Spoliation Letter to Avila, demanding that Avila, Wesley Apartments' parent company, preserve all evidence related to injuries Mr. Wright suffered on December 14, 2020 as a result of "the dangerous conditions of your property."

95.     Avila received a copy of the March 2021 Spoliation Letter no later than March 9, 2021.

96.     On May 4, 2021, counsel for the Estate issued the May 2021 Spoliation Letter to Avila, again demanding that Avila preserve all evidence related to injuries Mr. Wright suffered on December 14, 2020 as a result of "the dangerous conditions of your property."

97.     Avila received a copy of the May 2021 Spoliation Letter no later than May 17, 2021.

98.     Accordingly, based on receipt of the March 2021 and May 2021 Spoilation Letters, prior to the inception date of the Policy on October 1, 2021, Wesley Apartments and Avila, each of which qualifies as a **"You"** under the Policy, had knowledge of facts that could have reasonably caused Wesley Apartments and Avila to foresee a **Claim** arising out of the shooting and death of Mr. Wright.

99.     Each of the Underlying Matters in turn assert that Wesley Apartments and/or Avila committed a negligent act, error, or omission in connection with the shooting and death of Mr. Wright.

100.   By reason of the foregoing, Hanover is entitled to a judgment declaring that the Policy does not afford coverage for the Underlying Matters because the lack of Prior Knowledge Condition is not satisfied.

## COUNT II

### For a Declaration That There Is No Coverage under the Policy for the Ascot Coverage Litigation Because the Non-Monetary Relief Exclusion Bars Coverage

101.   Hanover realleges and incorporates by reference the allegations in Paragraphs 1 through 90 of this Complaint.

102.   The Non-Monetary Relief Exclusion provides that there is no coverage for **Claims** "based upon, arising out of, or in any way related to, directly or indirectly, any demand for **Equitable Relief**."  Policy, Section E.4 (Ex. A).

103.   The Policy defines **Equitable Relief** as "a remedy other than the payment of monetary damages.  **Equitable Relief** includes non-monetary relief and injunctive relief."  *Id.*, Section D (Ex. A).

104.   The sole relief sought in the Ascot Coverage Litigation is a declaration that the insurance policy issued by Ascot does not afford coverage for any claim arising out of the December 14, 2020 shooting and death of Mr. Wright.

105.   By reason of the foregoing, Hanover is entitled to a judgment declaring that the Non-Monetary Relief Exclusion bars coverage for the Ascot Coverage Litigation.

## COUNT III

### For a Declaration That There Is No Coverage under the Policy for the December 2022 Wesley Kensington Demand Letter <u>Because the Related Entity Claim Exclusion Bars Coverage</u>

106.   Hanover realleges and incorporates by reference the allegations in Paragraphs 1 through 90 of this Complaint.

107.   The Related Entity Claim Exclusion precludes coverage for **Claims**:

Arising out of a **Claim** by any **Insured** under this **Policy** against any other insured under this **Policy**, or against **You** that is brought by or on behalf of:

1.  Any business entity that is owned, managed, or operated, directly or indirectly, in whole or in part, by **You**;

2.  Any parent company, **Subsidiary**, successor or assignee of **Yours**, or anyone affiliated with **You** or such business entity through common majority ownership or control; or

3.  Any independent contractor supplying material or services to **You**.

Policy, Section E.16 (Ex. A).

108.   The Policy defines "**Insured**," "**You**," and "**Your**" as the **Named Insured** and, in relevant part, "[i]f the **Named Insured** is a limited liability company, any past or present managing member, principal or employee, but only while acting on behalf of the **Named Insured** in such capacity." *Id.*, Section D (Ex. A).

29

109.   The Policy defines the **Named Insured** as Wesley Apartments and Avila, as the entities designated in the Declarations page.  *See id.*, Section D (Ex. A); *see also id.*, Declarations, Item 1 (Ex. A).

110.   Avila is the parent company of Wesley Apartments.

111.   In the December 2022 Wesley Kensington Demand Letter, Wesley Kensington demands that Wesley Apartments undertake the defense of Wesley Kensington in the Ascot Coverage Litigation due to Wesley Apartments' alleged failure to timely notify Ascot of the shooting of Mr. Wright, in violation of its contractual responsibilities.

112.   There is significant overlap in the ownership, management, and control of Wesley Kensington, on the one hand, and Avila and Wesley Apartments, on the other hand.

113.   Ownership of Wesley Kensington is structured as follows:

    a.   ID Family Holdings, LLLP ultimately has a 42% ownership share of Wesley Kensington.  Ignacio Diego is the sole general partner of ID Family Holdings, LLLP.

    b.   JD Family Holdings, LLLP a 42% ownership share of Wesley Kensington.  Jaime Diego is the sole general partner of JD Family Holdings, LLLP.

c. MDT Family Holdings, LLLP ultimately has a non-voting 8% ownership interest in Wesley Kensington.  Maria Diego Taboada is the sole general partner of MDT Family Holdings, LLLP.

d. PED Family Holdings, LLLP ultimately has a non-voting 8% ownership interest in Wesley Kensington.  Pedro Diego is the sole general partner of PED Family Holdings, LLLP.

114. Ownership of Avila and, in turn, Wesley Apartments, is structured as follows:

a. ID Family Holdings, LLLP ultimately has a 40% ownership share of Avila and, in turn, Wesley Apartments.  Ignacio Diego is the sole general partner of ID Family Holdings, LLLP.

b. JD Family Holdings, LLLP ultimately has a 40% ownership share of Avila and, in turn, Wesley Apartments.  Jaime Diego is the sole general partner of JD Family Holdings, LLLP.

c. IMD Family Holdings, LLLP ultimately has the remaining 20% ownership share in Avila and, in turn, Wesley Apartments.  Ignacio M. Diego is the sole general partner of IMD Family Holdings, LLLP.

115. Ignacio Diego is listed as a current "principal" of Avila on its website.

116. Jaime Diego is listed as a current "principal" of Avila on its website

31

117.   Ignacio Diego and Jaime Diego are **Insureds** under the Policy because they are each past or present principals of Avila.

118.   Wesley Kensington is therefore a business entity that is owned, managed, or operated, directly or indirectly, in whole or in part, by **Insureds**.

119.   In addition, Wesley Kensington, on the one hand, and Avila and Wesley Apartments, on the other hand, are affiliated through common majority ownership or control.

120.   Thus, the December 2022 Wesley Kensington Demand Letter is a **Claim** against Wesley Apartments that is brought by or on behalf of either a "business entity that is owned, managed, or operated, directly or indirectly, in whole or in part, by" an **Insured** or a "parent company, **Subsidiary**, successor or assignee of **Yours**, or anyone affiliated with **You** or such business entity through common majority ownership or control."  Policy, Section E.16 (Ex. A).

121.   By reason of the foregoing, Hanover is entitled to a judgment declaring that the Related Entity Claim Exclusion bars coverage for the December 2022 Wesley Kensington Demand Letter.

## COUNT IV

### For a Declaration That There Is No Coverage under the Policy for the December 2022 Wesley Kensington Demand Letter <u>Because the Owned Property Exclusion Bars Coverage</u>

122.   Hanover realleges and incorporates by reference the allegations in Paragraphs 1 through 90 of this Complaint.

123.   The Policy precludes coverage, in relevant part, for **Claims**

Based upon, arising out of, or in any way relating to, directly or indirectly,  . . . any actual or attempted sale, purchase, leasing, appraisal, or property management of **Owned Property**. However, in regard to:

1.  Services as **Property Manager** that in any way involve **Owned Property**, however, subject to the corresponding sublimit and deductible in the Schedule above, this exclusion o.1) shall not apply if:

    a.  The **Claim** is not brought or maintained by, on behalf of, in the right of, or at the direction of any other owner, or any business entity that is owned, managed or operated, directly or indirectly by any other owner, in any capacity; or

    b.  If the **Claim** is brought or maintained by, on behalf of, in the right of, or at the direction of any other owner, or any business entity that is owned, managed or operated, directly or indirectly by any other owner, in any capacity, the amounts payable as **Loss** by **Us** will be reduced by that percent of the ownership/equity owned by all **Insureds** and all **Insureds' Immediate Family** . . . .

Policy, Section E.o, as amended by Endorsement No. 2 (Ex. A) (the "Owned

Property Exclusion").

124.   The Policy defines **Owned Property**, in relevant part, as "real

property owned by . . . [a]ny entity under the same financial control as the **Named**

**Insured**." *Id.*, Section D, as amended by Endorsement No. 2 (Ex. A).

125.   The Policy defines "**Insured**," "**you**," and "**your**" as the **Named**

**Insured** and, in relevant part, "[i]f the **Named Insured** is a limited liability

company, any past or present managing member, principal or employee, but only

while acting on behalf of the **Named Insured** in such capacity." *Id.*, Section D

(Ex. A).

126.   The Policy defines the **Named Insured** as Wesley Apartments and

Avila, as the entities designated in the Declarations page.  *See id.*, Section D (Ex.

A); *see also id.*, Declarations, Item 1 (Ex. A).

127.   Avila is the parent company of Wesley Apartments.

128.   **Property Manager** is defined to include, in relevant part, "a person

or entity providing the following services regarding a commercial or residential

property . . . [d]evelopment, implementation and management of loss control and

risk management plans for real property . . . ." *Id.*, Section D, as amended by

Endorsement No. 2 (Ex. A).

34

129. **Immediate Family** is in turn defined to mean "a spouse, ex-spouse, sibling(s), children, parent(s) or **Domestic Partner**." *Id.*, Section D, as amended by Endorsement No. 2 (Ex. A).

130. The Property at issue in the December 2022 Wesley Kensington Demand Letter is owned by Wesley Kensington.

131. There is significant overlap in the ownership, management, and control of Wesley Kensington, on the one hand, and Avila and Wesley Apartments, on the other hand.

132. Ownership of Wesley Kensington is structured as follows:

   a. ID Family Holdings, LLLP ultimately has a 42% ownership share of Wesley Kensington. Ignacio Diego is the sole general partner of ID Family Holdings, LLLP.

   b. JD Family Holdings, LLLP a 42% ownership share of Wesley Kensington. Jaime Diego is the sole general partner of JD Family Holdings, LLLP.

   c. MDT Family Holdings, LLLP ultimately has a non-voting 8% ownership interest in Wesley Kensington. Maria Diego Taboada is the sole general partner of MDT Family Holdings, LLLP.

    d.  PED Family Holdings, LLLP ultimately has a non-voting 8% ownership interest in Wesley Kensington.  Pedro Diego is the sole general partner of PED Family Holdings, LLLP.

133.  Ownership of Avila and, in turn, Wesley Apartments, is structured as follows:

    a.  ID Family Holdings, LLLP ultimately has a 40% ownership share of Avila and, in turn, Wesley Apartments.  Ignacio Diego is the sole general partner of ID Family Holdings, LLLP.

    b.  JD Family Holdings, LLLP ultimately has a 40% ownership share of Avila and, in turn, Wesley Apartments.  Jaime Diego is the sole general partner of JD Family Holdings, LLLP.

    c.  IMD Family Holdings, LLLP ultimately has the remaining 20% ownership share in Avila and, in turn, Wesley Apartments.  Ignacio M. Diego is the sole general partner of IMD Family Holdings, LLLP.

134.  Therefore, the property at issue is **Owned Property**, as defined under the Policy, because it is owned by Wesley Kensington—an entity under the same financial control as the **Named Insureds** Avila and Wesley Apartments.

135.  In the December 2022 Wesley Kensington Demand Letter, Wesley Kensington demands that Wesley Apartments undertake the defense of Wesley

Kensington in the Ascot Coverage Litigation due to Wesley Apartments' failure to timely notify Ascot of the shooting of Mr. Wright at this **Owned Property**, in violation of its contractual responsibilities.

136.   The December 2022 Wesley Kensington Demand Letter thus asserts claims against Wesley Apartments based on Wesley Apartments' services as a **Property Manager** for this **Owned Property**.

137.   The December 2022 Wesley Kensington Demand Letter is therefore a **Claim** "[b]ased upon, arising out of, or in some way relating to, directly or indirectly, . . . property management of **Owned Property**" that is **"**brought or maintained by, on behalf of, in the right of, or at the direction of any other owner, or any business entity that is owned, managed or operated, directly or indirectly by any other owner." *Id.*, Section E.o, as amended by Endorsement No. 2 (Ex. A).

138.   Pursuant to the terms of the Owned Property Exclusion, "the amounts payable as **Loss** must be reduced by that percent of the ownership/equity owned by all **Insureds** and all **Insureds' Immediate Family**." *Id.*, Section E.o, as amended by Endorsement No. 2 (Ex. A).

139.   Wesley Kensington and Avila and Wesley Apartments are all ultimately 100%, fully owned by Ignacio Diego, Jaime Diego, Ignacio M. Diego, Maria Diego Taboada, and/or Pedro Diego.

140.   Ignacio Diego is listed as a current "principal" of Avila on its website.

141.   Jaime Diego is listed as a current "principal" of Avila on its website.

142.   Ignacio M. Diego is listed as a current "principal" of Avila on its website.

143.   Ignacio Diego, Jaime Diego, and Ignacio M. Diego are **Insureds** under the Policy because they are each past or present principals of Avila.

144.   Upon information and belief, Maria Diego Taboada and Pedro Diego each qualify as **Insureds' Immediate Family** under the Policy.

145.   By reason of the foregoing, Hanover is entitled to a judgment declaring that the Owned Property Exclusion bars coverage for the December 2022 Wesley Kensington Demand Letter.

**WHEREFORE**, Hanover respectfully requests the Court enter judgment in its favor and declare that there is no coverage available under the Policy for the Underlying Matters, and, more specifically:

(A)   Enter judgment that there is no coverage for the Underlying Matters because the Policy's lack of Prior Knowledge Condition has not been satisfied and, thus, Hanover has no duty to defend or indemnify Wesley Apartments or Avila in the Underlying Matters;

(B)   Enter judgment that there is no coverage for the Ascot Coverage Litigation because the Non-Monetary Relief Exclusion bars coverage and, thus, Hanover has no duty to defend or indemnify Wesley Apartments or Avila in connection with the Ascot Coverage Litigation;

38

(C)    Enter judgment that there is no coverage for the December 2022 Wesley Kensington Demand Letter because the Related Entity Claim Exclusion bars coverage and, thus, Hanover has no duty to defend or indemnify Wesley Apartments or Avila in connection with the December 2022 Wesley Kensington Demand Letter;

(D)    Enter judgment that there is no coverage for the December 2022 Wesley Kensington Demand Letter because the Owned Property Exclusion bars coverage and, thus, Hanover has no duty to defend or indemnify Wesley Apartments or Avila in connection with the December 2022 Wesley Kensington Demand Letter; and

(E)    Award Hanover all other relief to which it may be entitled.

Dated: June 29, 2023                    Respectfully submitted,

s/ Kathryn S. Whitlock

Kathryn S. Whitlock
Georgia Bar No. 756233
McAngus Goudelock & Courie, LLC
270 Peachtree Street, NW, Suite 1800
Atlanta, Georgia 30303
Phone: (678) 500-7300
Fax:  (678) 669-3546
Kate.Whitlock@mgclaw.com

Kimberly Cereijo (*pro hac vice*
forthcoming*)*
Leland H. Jones IV (*pro hac vice*
forthcoming)
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036
Phone: (202) 719-7000
Fax:  (202) 719-7049
kcereijo@wiley.law
ljones@wiley.law

**Counsel for Plaintiff The Hanover
Insurance Company**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that, pursuant to Local Rules 5.1C and 7.1D, this filing complies with the font and point selections approved in Local Rule 5.1C.  The filing was prepared using 14-point Times New Roman font.

<div style="margin-left: 40%;">

*/s/ Kathryn S. Whitlock*
Kathryn S. Whitlock
Georgia Bar No. 756233
McAngus Goudelock & Courie, LLC
270 Peachtree Street, NW, Suite 1800
Atlanta, Georgia 30303
Phone: (678) 500-7300
Fax:  (678) 669-3546
Kate.Whitlock@mgclaw.com

*Counsel for Plaintiff The Hanover Insurance Company*

</div>