

**HANOVER**

# Miscellaneous Advantage
## Professional Liability Insurance

### *Declarations Page*

**NOTICE: THIS POLICY IS A CLAIMS-MADE POLICY.  PLEASE READ THE POLICY CAREFULLY.**

| **Policy Number** | **The Hanover Insurance Company** |
|---|---|
| LH6 H024735 02 | 440 Lincoln Street |
| | Worcester, MA  01653 |
| | (A Stock Insurance Company,  herein called the **Insurer**) |

**Issue Date**     10/14/2021

**Item 1.**     **NAMED INSURED AND ADDRESS**

Wesley Apartment Homes, LLC; Avila Real Estate LLC
1010 Huntcliff
Suite 2210
ATLANTA, GA 30350

**Item 2.**     **POLICY PERIOD**

Inception Date: 10/01/2021                    Expiration Date: 10/01/2022

(12:01 AM standard time at the address shown in Item 1.)

**Item 3.**     **LIMIT OF LIABILITY**

**a.** $2,000,000 for each **Claim**; not to exceed
**b.** $2,000,000 for all **Claims** in the Aggregate

**Item 4.**     **SUBLIMITS OF LIABILITY**
Privacy and Security        **a.** $1,000,000 for each **Claim**; not to exceed
Liability Coverage
                                            **b.** $1,000,000 for all **Claims** in the Aggregate

**Item 5.**     **DEDUCTIBLE**

a. $7,500 each **Claim**
b. N/A for all **Claims** in the Aggregate

**Item 6.**     **SUPPLEMENTAL COVERAGE LIMIT AND DEDUCTIBLE**

| | LIMIT | DEDUCTIBLE |
|---|---|---|
| Disciplinary Proceedings Coverage | $25,000 per **Insured** / $50,000 for all **Insureds** | $0 |
| Subpoena Assistance | $25,000 in the Aggregate | $0 |
| Crisis Event Expense | $25,000 per Event / $50,000 in the Aggregate | $0 |
| Reputation Protection Expense | $15,000 in the Aggregate | $0 |
| Withheld Client Fee Assistance | $25,000 in the Aggregate | $0 |
| Nonprofit Directors and Officers Expense | $10,000 in the Aggregate | $0 |



**HANOVER**
# Miscellaneous Advantage
### Professional Liability Insurance

## Declarations Page

**Item 7.**   **PROFESSIONAL SERVICES**

Property Manager

**Item 8.**   **RETROACTIVE DATE**                    08/01/2019

**Item 9.**   **PREMIUM FOR THE POLICY PERIOD**                    ■■■■■■

**Total Premium:**                    ■■■■■■

**Item 10.**   **ENDORSEMENTS EFFECTIVE AT INCEPTION:**  See Schedule of Forms attached.

**Item 11.**   **NOTICE TO INSURER**

Report a claim to the Company as required by Section G. Duties in the Event of Claim(s) or Potential Claim(s) to:

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653

**National Claims Telephone Number:** 800-628-0250.  For Cyber Claims: 800-385-5271
**Facsimile:** 800-399-4734
**Email:** firstreport@hanover.com  For Cyber Claims: Cyberclaims@hanover.com

**Agent on behalf of:**            HUB INTERNATIONAL SOUTHEAST
1213 W MOREHEAD ST S 410
CHARLOTTE, NC 28208
1901255

---

We have caused this Policy to be signed by our President and Secretary and countersigned where required by a duly authorized agent of the Company.

John C. Roche, President                    Charles F. Cronin, Secretary



# Miscellaneous Advantage
## Professional Liability Insurance

**TABLE OF CONTENTS**

A. COVERAGE – WHAT THIS POLICY INSURES...................................................................... 1
   1. Professional Services Coverage .................................................................................. 1
   2. Personal Injury Coverage ............................................................................................ 1
   3. Privacy and Security Liability Coverage ...................................................................... 1
   4. Supplemental Coverage .............................................................................................. 1
B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY) ...................... 2
C. LIMIT OF LIABILITY AND DEDUCTIBLE ......................................................................... 3
   1. Limit of Liability ........................................................................................................... 3
   2. Deductible ................................................................................................................... 3
   3. Aggregate Deductible ................................................................................................. 3
   4. Reimbursement ........................................................................................................... 3
D. DEFINITIONS .................................................................................................................... 4
E. EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE ............................................ 8
F. EXTENDED REPORTING PERIODS ................................................................................. 11
G. DUTIES IN THE EVENT OF CLAIM(S), POTENTIAL CLAIM(S), OR
   SUPPLEMENTAL COVERAGE MATTER(S) ..................................................................... 12
H. CONDITIONS .................................................................................................................... 13
   1. Cancellation and Non-Renewal ................................................................................... 13
   2. Representations and Application .................................................................................. 13
   3. Legal Action Against Us .............................................................................................. 13
   4. Change in Ownership, Control, or Exposure ............................................................... 14
   5. Transfer of Rights of Recovery Against Others to Us .................................................. 14
   6. Assignment ................................................................................................................. 14
   7. Sole Agent for the Insured .......................................................................................... 14
   8. Coverage Territory and Valuation ............................................................................... 14
   9. Other Insurance .......................................................................................................... 14
   10. Two or More Policies, Coverage Parts, or Endorsements Issued by Us ...................... 15
   11. Conformance to Law and Trade Sanctions ................................................................. 15
   12. Section Titles .............................................................................................................. 15
   13. Bankruptcy .................................................................................................................. 15
   14. Liberalization .............................................................................................................. 15

 © 2019 The Hanover Insurance Company. All Rights Reserved.



# Miscellaneous Advantage
## Professional Liability Insurance

**This is a CLAIMS-MADE AND REPORTED policy.  Subject to the terms, conditions, exclusions and limitations of this Policy, coverage is limited to liability for only those Claims that are first made against You and reported to Us in writing after the Retroactive Date and during the Policy Period or any optional Extended Reporting Period, if exercised by You.**

**This is a "defense within limits" Policy with Claim Expenses included within the Limit of Liability.  The Limit of Liability available to pay Damages will be reduced by amounts We pay for Claim Expenses as defined in the Policy.  Further note that amounts incurred for Claim Expenses and Damages are subject to the deductible.**

**Please read this policy carefully.**

Throughout this **Policy**, the terms **We**, **Us** and **Our** refer to the **Company** providing this insurance.  The terms **You** and **Your** refer to the persons and entities insured under this **Policy**.  Other terms in bold print have special meaning and are defined in this **Policy**.

In consideration of the premium charged, in reliance upon the statements in **Your** application and subject to the Declarations page, limitations, conditions, definitions and other provisions of this **Policy**, including endorsements hereto, **We** agree with **You** as follows:

## A.  COVERAGE – WHAT THIS POLICY INSURES

1. Professional Services Coverage

   **We** will pay on **Your** behalf those sums which **You** become legally obligated to pay as **Damages** because of any **Claim** made against **You** for a **Wrongful Act**.

2. Personal Injury Coverage

   **We** will pay on **Your** behalf those sums which **You** become legally obligated to pay as **Damages** because of any **Claim** made against **You** for a **Wrongful Act** and are for **Personal Injury**.

3. Privacy and Security Liability Coverage

   **We** will pay on **Your** behalf those sums which **You** become legally obligated to pay as **Damages** because of any **Claim** made against **You** for a **Wrongful Act** resulting in a **Privacy Breach** or **Security Breach**.  Any payment made hereunder is subject to the sublimit of liability referenced in Item 4. of the Declarations page.  The sublimit of liability is part of, and not in addition to the Limits of Liability referenced in Item 3. of the Declarations page.

4. Supplemental Coverage

   a. Pre-Claim Assistance

      If **You** report a **Potential Claim** to **Us** in writing during the **Policy Period**, any costs or **Defense Expenses** **We** incur in investigating or monitoring the **Potential Claim** will be paid by **Us**.  The decision to incur any costs or **Defense Expenses** in regards to a **Potential Claim** is at **Our** sole discretion.

   b. Disciplinary Proceedings

      **We** will pay on **Your** behalf only **Defense Expenses** incurred in responding to a **Disciplinary Proceeding** commenced against **You** and reported to **Us** in writing during the **Policy Period**, or which was commenced during the **Policy Period** and, if exercised, reported to **Us** in writing during any optional **Extended Reporting Period**.  Inclusive within this coverage, **We** will pay up to $500 per day for any salaries and expenses of **Your** employees required to attend or participate in any **Disciplinary Proceeding**.  **We** shall not pay any **Damages** incurred as a result of **Disciplinary Proceedings**.

   c. Subpoena Assistance

      **We** will pay on **Your** behalf only **Defense Expenses** incurred in responding to a **Subpoena** first received by **You** and reported to **Us** in writing during the **Policy Period**.  Any notice **You** give to **Us** of such **Subpoena** that complies with the conditions under Section G.3.will be deemed notification of a **Potential Claim** under Section G.4. of this **Policy**.



# Miscellaneous Advantage
## Professional Liability Insurance

d. <u>Crisis Event</u>

**We** will pay on **Your** behalf **Event Expenses** for a **Crisis Event** first occurring and reported to **Us** in writing during the **Policy Period**.

e. <u>Reputation Protection</u>

**We** will reimburse **You** up to fifty percent (50%) of reasonable **Event Expenses You** incur responding to a **Reputation Event** first occurring and reported to **Us** in writing during the **Policy Period**.

f. <u>Withheld Client Fee Assistance</u>

If **You** attempt to collect a contractual fee due for **Professional Services** that **Your** client has refused to pay for more than three (3) months from the time payment was due ("Withheld Client Fee") and:

1) As a result of such collection attempts, **Your** client brings a **Claim** against **You** during the **Policy Period** alleging negligence in the rendering of **Your Professional Services** for an amount greater than owed to **You**; and

2) **Your Professional Services** were rendered under a fully executed, written professional services contract with **Your** client; and

3) **You** provide **Us** with written confirmation from **Your** client, acceptable to **Us**, that **Your** client will withdraw their **Claim** against **You** ("written confirmation"),

then **We** will pay fifty percent (50%) of **Your** Withheld Client Fee. **We** must receive such written confirmation prior to payment of **Your** Withheld Client Fee under this section.

g. <u>Nonprofit Directors and Officers Expense</u>

**We** will pay only **Defense Expenses** on **Your** behalf arising out of a **Suit** made against **You** during the **Policy Period** and reported to **Us** in writing during the **Policy Period**, for **Your** acts, errors or omissions as a director or officer of a **Nonprofit Entity** provided that such activities as a director or officer of a **Nonprofit Entity** have been previously disclosed to **Us** in **Your** application or other written form accepted by **Us**.

The coverage provided under this Nonprofit Directors and Officers Expense shall be excess of all other valid and collectable Directors and Officers Liability Insurance whether provided on a primary, excess, contingent or any other basis which has been issued to such **Nonprofit Entity** or **You**.

The following additional requirements and limitations shall apply to coverage provided under A.1., A.2., A.3. and A.4. above:

a. The **Wrongful Act** and **Professional Service**s must have first occurred on or after the applicable **Retroactive Date(s)**;

b. None of **You** had knowledge of facts which could have reasonably caused **You** to foresee a **Claim** or **Supplemental Coverage Matter** or knowledge of any **Claim** or **Supplemental Coverage Matter**, prior to the inception date of this **Policy**; and

c. The **Claim** or **Supplemental Coverage Matter** must first be made and reported to **Us** in writing during the **Policy Period** or any **Extended Reporting Period** if applicable.

## B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)

**We** have the right and duty to defend any **Claim** made under this **Policy** until there is a **Final Adjudication** against **You**, even if the allegations are groundless, false or fraudulent. **We** will pay **Claim Expenses** in connection with a **Claim We** defend. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution , or any **Claim** for **Equitable Relief**, against **You**. If a **Claim** is not covered under this **Policy**, **We** will have no duty to defend it.

**Our** duty to defend any **Claim** or pay any amount as **Damages**, **Claim Expenses** or **Supplemental Coverage Matters** will cease when **Our** Limit of Liability has been exhausted. Upon exhaustion of the limits of liability, **We** will tender control of the defense to the **Named Insured**. The **Named Insured** agrees to accept this tender of defense.



# Miscellaneous Advantage
## Professional Liability Insurance

We will not settle a **Claim** without **Your** consent.  If **You** refuse to consent to a settlement **We** recommend and which a claimant would accept, then **Our** liability for the **Claim** will not exceed:

1. The amount **We** would have been liable for **Damages** if the **Claim** had been settled, including **Claim Expenses** incurred up to the time of **Your** refusal; and

2. Fifty (50%) percent of **Damages** incurred in excess of the amount for which the **Claim** could have been settled plus fifty (50%) percent of **Claim Expenses** incurred after the time of **Your** refusal.

After such refusal, **You** shall be responsible for the remaining percentage of **Damages** and **Claims Expenses**.  For the purpose of this section, settlement includes, but is not limited to, any resolution of a **Claim** that would have occurred as a result of any court-ordered process which **You** chose not to accept.

The **Named Insured** is responsible for any expenses, including fees or costs charged by a lawyer defending **You**, incurred without **Our** written consent.

## C.  LIMIT OF LIABILITY AND DEDUCTIBLE

1. <u>Limit of Liability</u>

   a. The Limit of Liability shown on Item 3.a. of the Declarations page per each **Claim** is the most **We** will pay for the sum of all **Damages** and **Claim Expenses** arising out of a single **Claim** or a series of related **Claims**, regardless of the number of persons or entities insured under this **Policy**, number of **Claims** made or the number of persons or entities making **Claims** during the **Policy Period** or during any **Extended Reporting Period**, if any.

   b. All **Claim Expenses** will first be subtracted from the Limit of Liability, with the remainder, if any, being the amount available to pay for **Damages**.

   c. The Aggregate limit shown on Item 3.b. of the Declarations page is the most **We** will pay for the sum of all **Damages** and **Claim Expenses** for all **Claims** under this **Policy**.

   d. The **Supplemental Coverage** Limits shown on Item 6. of the Declarations page, if applicable, are the most **We** will pay for all **Defense Expenses** arising out of a single **Supplemental Coverage Matter** or a series of related **Supplemental Coverage Matters** for each **Supplemental Coverage**.  The Aggregate **Supplemental Coverage** Limits shown on Item 6. of the Declarations page, if applicable, are the most **We** will pay for the sum of all **Defense Expenses** for all **Supplemental Coverage Matters** for each **Supplemental Coverage**.  The applicable **Supplemental Coverage** Limits are in addition to the Limits of Liability referenced in Item 3. of the Declarations page.

2. <u>Deductible</u>

   a. **You** will pay the deductible amounts shown on the Declarations page.  The deductibles apply as applicable to each **Claim** and **Supplemental Coverage Matter**.  **You** must pay the deductible immediately when invoiced or, in the event that offers of judgment or settlement demands are made which **You** and **We** agree should be accepted, prior to the expiration of the time period for responding to such offers or demands.

   b. If **We** ask, and **You** agree to use **Mediation** to resolve a **Claim** brought against **You**, and if the **Claim** is resolved by **Mediation**, **Your** deductible obligation for that **Claim** will be reduced by 50%, subject to a maximum reduction of $5,000.

3. <u>Aggregate Deductible</u>

   The Aggregate Deductible amount will be shown in the Declarations page, if applicable, and is the most **You** will pay for the sum of all Deductibles for all **Claims** first made and reported to **Us** during the **Policy Period**.

4. <u>Reimbursement</u>

   In the event that **We** voluntarily choose or are compelled by a court of law to make any payment of the deductible and request reimbursement from **You**, the reimbursement is payable immediately, but no later than thirty (30) days after **Our** written demand.

© 2019 The Hanover Insurance Company. All Rights Reserved.



**Miscellaneous Advantage**
Professional Liability Insurance

### D. DEFINITIONS

**Bodily Injury** means physical injury of a person, sickness, disease or death and, if arising out of the foregoing, mental anguish, emotional distress, mental injury, shock or humiliation.

**Breach Notice Law** means any federal, state, local or foreign privacy legislation, regulation and their functional equivalent that requires an entity to provide notice to affected natural persons of any actual or potential unauthorized access to their **Confidential Records**.

**Claim** means a:

1. Written demand received by an **Insured** for **Damages** or **Equitable Relief**;
2. **Suit**;
3. Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document;
4. Arbitration or mediation proceeding commenced by the receipt of a demand or mediation or similar document; or
5. Written request first received by an **Insured** to toll or waive a statute of limitations.

All **Claims** made against any **Insured** that include, in whole or in part, allegations of **Wrongful Acts**, facts or circumstances that have a causal or logical connection will be considered one **Claim**.  **Wrongful Acts**, facts or circumstances shall be deemed to have a causal connection if one or more of the **Wrongful Acts**, facts or circumstances alleged in one or more of such **Claims** give rise (directly or indirectly) to the **Wrongful Acts**, facts or circumstances alleged in the other of such **Claims**.  **Wrongful Acts**, facts or circumstances shall be deemed to have a logical connection if there is a goal, motive or methodology that is both common and central to the matters alleged in such **Claims**.  All such **Claims** will be considered first made at the time the earliest such **Claim** was made against any **Insured**.

**Claim Expenses** means all expenses **We** incur or authorize in writing for the investigation, adjustment, defense or appeal of a **Claim**.  These expenses include fees charged by a lawyer, mediator or arbitrator with **Our** consent for which **You** are obligated. **Claim Expenses** also mean:

1. The premium on appeal, attachment or similar bond; and
2. Up to $250 per day per **Insured** for supplemental payment for reasonable expenses incurred for attendance at hearings, trials, or depositions, at **Our** request or with **Our** consent, by such **Insured**.  Such payment shall not exceed $5,000 in the aggregate for all **Insureds** in each **Claim**.

**Claim Expenses** do not include salaries, wages, fees, overhead or benefit expenses associated with:

3. Any **Insured** except as specified in subparagraph 2. above; or
4. **Our** employees.

**Company** means the insurance company that issued this **Policy**, as shown on the Declarations page or referred to herein as **We**, **Us**, or **Our**.

**Computer** means a single hardware device or group of hardware devices, on which software, applications, script, code or computer programs, containing **Data** can be operated and viewed.

**Confidential Record** means a natural person's first name or first initial and last name, in combination with:

1. Non-public personally identifiable information, as defined in applicable federal, state, local or foreign legislation or regulations, including social security number, driver's license number or other personal identification number (including an employee identification number or student identification number);
2. Financial account number (including a bank account number, retirement account number or healthcare spending account number);
3. Credit, debit or payment card numbers;
4. Any Information related to employment by an **Insured**;
5. Individually identifiable information considered nonpublic personal information pursuant to Title V of the Gramm-Leach Bliley Act of 1999, as amended; or



6. Any individually identifiable information considered protected health information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended;

which is owned by an **Insured** or for which an **Insured** is legally liable and is intended by an **Insured** to be accessible only by natural persons or entities it has specifically authorized to have such access.

**Crisis Event** means:

1. **Your** death, departure or debilitating illness; or

2. Potential dissolution of the **Named Insured**;

that the **Named Insured** reasonably believes will have a material, adverse impact on the **Named Insured's** reputation.

**Crisis Management Firm** means any service provider hired by **You** and approved in writing by **Us**. **Our** consent will not be unreasonably withheld.

**Cyber Attack** means the transmission of fraudulent or unauthorized **Data** that is intended to, and successfully modifies, alters, damages, destroys, deletes, records, transmits, or consumes information within a **System** without authorization, including **Data** that is self-replicating or self-propagating, and which causes the disruption of the normal operation of a **System**.

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes pre-judgment interest; and post judgment interest that accrues after entry of judgment and before **We** have paid, offered to pay or deposited in court that part of judgment within the applicable Limit of Liability.

**Damages** also means punitive or exemplary **Damages** or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such **Damages**.

**Damages** do not include any costs or expenses in complying with any demand for or award of **Equitable Relief**, even if such compliance is compelled as a result of a judgment, award or settlement. **Damages** also do not include return, restitution or reduction of professional fees, or fines, statutory penalties, or sanctions against **You** (except as provided with respect to punitive or exemplary damages), whether imposed by law or otherwise.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are being processed or have been processed in a **Computer**.

**Defense Expenses** means all expenses **We** incur or authorize in writing for the investigation, adjustment, or defense of a **Supplemental Coverage Matter**. These expenses include fees charged by a lawyer, mediator or arbitrator with **Our** consent for which **You** are obligated. **Defense Expenses** do not include **Damages**, other relief or **Claim Expenses**.

**Disciplinary Proceeding** means any proceeding by a disciplinary official or agency to investigate or prosecute charges alleging professional misconduct in the performance of **Your Professional Services**.

**Domestic Partner** means any natural person granted legal status as a domestic partner under any applicable federal, state or local law or under the provisions of any formal program established by the **Named Insured**.

**Employment Practices** means any actual or alleged:

1. Wrongful termination of the employment of, demotion of, or failure or refusal to hire or promote any person in violation of law or in breach of any agreement to commence or continue employment;

2. Unlawful employment discrimination;

3. Sexual harassment of an employee or applicant for employment; or

4. Retaliatory treatment against an employee on account of that employee's exercise or attempted exercise of his or her rights under law.

**Equitable Relief** means a remedy other than the payment of monetary damages. **Equitable Relief** includes non-monetary relief and injunctive relief.

**Event Expenses** means the reasonable fees, costs, and expenses for consulting services performed by a **Crisis Management Firm**, as a result of a **Crisis Event** and/or **Reputation Event**.

**Extended Reporting Period** means an additional period of time for reporting **Claim(s)**. The **Extended Reporting Period** starts on the **Policy Termination Date** and ends at the **Extended Reporting Period** expiration date.



# Miscellaneous Advantage
## Professional Liability Insurance

**Final Adjudication** means a final judgment or settlement entered into terminating the litigation or administrative proceedings.

**Independent Contractor** means a natural person who performs **Professional Services** on behalf of the **Named Insured**, subject to a written contract with, and at the direction and control of the **Named Insured**.

**Insured**, also referred to herein as **You** or **Your**, means the **Named Insured** and:

1. If the **Named Insured** is a sole proprietorship, any past or present employee, but only while acting on behalf of the **Named Insured** in their capacity as an employee;
2. If the **Named Insured** is a partnership, any past or present general or managing partner, principal or employee, but only while acting on behalf of the **Named Insured** in such capacity;
3. If the **Named Insured** is a limited liability company, any past or present managing member, principal or employee, but only while acting on behalf of the **Named Insured** in such capacity;
4. If the **Named Insured** is a corporation, any past or present officer, director, trustee, or employee, but only while acting on behalf of the **Named Insured** in such capacity;
5. The **Named Insured's** temporary or leased employees, but only while acting on behalf of the **Named Insured**;
6. A past or present **Subsidiary** of the **Named Insured**, but only for **Professional Services** rendered while a **Subsidiary** of the **Named Insured**;
7. **Your** lawful spouse or **Domestic Partner**, solely for liability arising from any **Wrongful Act** of an **Insured** committed without the participation of such spouse or **Domestic Partner**;
8. **Your** heirs, assigns and legal representatives in the event of **Your** death, incapacity or bankruptcy to the extent that **You** would have been covered; or
9. An **Independent Contractor**, but only while acting in such capacity on behalf of the **Named Insured**.

**Loss** means **Claim Expenses**, **Damages** and **Defense Expense**s and does not include **Equitable Relief**.

**Mediation** means the non-binding intervention of a qualified neutral third party chosen by **You** and the other party to a **Claim** with agreement by **Us**.

**Named Insured** means the sole proprietor, entity, partnership, or corporation designated in the Declarations page.

**Non-Profit Entity** means a tax-exempt organization described in section 501(c)3 of the Internal Revenue Code of 1986, as amended.

**Personal Injury** means:

1. False arrest, detention or imprisonment;
2. Wrongful entry, eviction or other invasion of private occupancy;
3. Malicious prosecution;
4. Abuse of process;
5. The publication or utterance of libel, slander or other defamatory or disparaging material; or
6. A publication in violation of a person's right of privacy.

**Policy** means this **Policy** form, the Declarations page, and any endorsements to the **Policy** issued by **Us**, and **Your** application.

**Policy Period** means the period from the inception date of this **Policy** to the **Policy Termination Date**.

**Policy Termination Date** means the expiration date of this **Policy** as shown on the Declarations page, or the cancellation date of this **Policy**, whichever is earlier.

**Pollutants** include, but are not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, soot, fumes, asbestos or asbestos-containing products, acids, alkalis, chemicals, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.



**Potential Claim** means a **Wrongful Act** or any facts or other circumstances which may subsequently give rise to a **Claim**.

**Privacy Breach** means:

1. **Your** failure to protect a **Confidential Record**, including a **Cyber Attack** on **Your System**, or the actions of a **Rogue Employee**, which directly results in the unauthorized disclosure of one or more **Confidential Records**;

2. The theft or negligent loss of hardware, **Storage Media**, **System Output**, **Data** or other documents owned or controlled by, or on behalf of, **You** on which **Confidential Records** are stored or recorded;

3. **Your** negligent failure to disclose an event referenced in 1. or 2. above in violation of any **Breach Notice Law**; or

4. **Your** negligent violation of any applicable federal, state, foreign or local privacy legislation or regulation in connection with any **Claim**.

**Professional Services** means those services described in Item 7. of the Declarations page which **You** perform for others for a fee.

**Property Damage** means physical injury to, loss, or destruction of tangible property, including the resulting loss of use thereof; or loss of use of tangible property which has not been physically injured or destroyed.  **Data** is not tangible property.

**Reputation Event** means a **Wrongful Act(s)** that the **Named Insured** reasonably believes will have material, adverse impact on the **Named Insured's** reputation resulting in a loss of revenues because of diminished customer confidence based on unfavorable information made available by or appearing on:

1. Social media;

2. Television or radio broadcasts; or

3. Newspapers;

provided such written media was in general circulation and such electronic media was available to the public on a fully open network that was neither password protected nor restricted from access by any method.

**Retroactive Date(s)** refer to the dates shown in Item 8. of the Declarations page. If no **Retroactive Date** is shown on the Declarations page, the **Retroactive Date** will be inception date of the **Policy**.

**Rogue Employee** means a permanent employee of the **Named Insured** who has gained unauthorized access, or has exceeded authorized access, to a **System** or **Confidential Records** owned or controlled by **You** or an entity that is authorized by **You** to hold, process or store **Confidential Records** for **Your** exclusive benefit.

**Security Breach** means:

1. The failure or violation of the security of **Your System**, including the impairment or denial of access to **Your System**, a **Cyber Attack**, or unauthorized acts or omissions by a **Rogue Employee** which damages or harms **Your System** or the **System** of a third party with whom **You** provide services for a fee;

2. The theft or loss of hardware or **Storage Media** controlled by, or on behalf of, **You** on which **Data** is stored; or

3. The failure to disclose an event in 1. or 2. above which violates any **Breach Notice Law**.

**Storage Media** means objects on which **Data** is stored so that it can be read, retrieved or processed by a **Computer**. **Storage Media** does not mean paper.  **Storage Media** also does not mean money, financial instruments, or documents.

**Subpoena** means a subpoena received by **You** for documents or testimony arising out of **Your** rendering of **Professional Services** provided that:

1. The subpoena arises out of a lawsuit to which **You** are not a party; and

2. **You** have not been engaged to provide advice or testimony in connection with the lawsuit or have not provided such advice or testimony in the past.



**Miscellaneous Advantage**
Professional Liability Insurance

**Subsidiary** means any entity of which the **Named Insured** owns more than fifty percent (50%) either directly or indirectly; and

1. Is identified by **You** in **Your** last application provided to **Us** for this **Policy**, or to **Us** for a **Policy** of which this **Policy** is a renewal or replacement; or

2. Which becomes a subsidiary during the **Policy Period** provided that such entity does not represent more than a ten percent (10%) increase in the total assets or gross revenue of the **Named Insured**. Where such entity represents an increase in the total assets or gross revenue of the **Named Insured** of more than ten percent (10%), such entity shall be deemed a **Subsidiary** under the **Policy**, but only upon the condition that within ninety (90) days of its becoming a subsidiary, **You** shall have provided **Us** with full particulars of the new subsidiary and agree to any additional premium and/or amendment of the provisions of this **Policy** required by **Us** relating to such new subsidiary, subject to the review and acceptance by **Us** of full and complete underwriting information. Further, coverage as shall be afforded to the new subsidiary is conditioned upon the **Named Insured** paying when due any additional premium required by **Us** relating to such new subsidiary.

**Suit** means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding in which **Damages** are alleged, and to which **You** must submit or do submit with **Our** consent.

**Supplemental Coverage** means coverages under Section A.4. Supplemental Coverage.

**Supplemental Coverage Matter** means facts or other circumstances which are covered under Section A.4. Supplemental Coverage.

**System** means a **Computer**, **Storage Media** and all input, output, processing storage and communication devices controlled, supervised or accessed by the operation systems that are proprietary to, or licensed to, the owner of the **Computer**.

**System Output** means a tangible substance on which one or more **Confidential Records** are printed from a **System**.

**Totally and Permanently Disabled** means a disability that wholly prevents rendering **Professional Services** provided that such disability:

1. Has existed continuously for not less than six (6) months; and

2. Is reasonably expected to be continuous and permanent.

**Unauthorized Access** means the use of or access to **Systems** by a person not authorized to do so by the **Named Insured**; or the use or access to **Systems** in a manner not authorized by the **Named Insured**.

**Wrongful Act** and **Wrongful Acts** means any actual or alleged negligent act, error, omission, misstatement or **Personal Injury**, in the rendering or failure to render **Your Professional Services**.

## E. EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s)**:

1. Conduct

   Based upon, arising out of, or in any way relating, directly or indirectly, to any **Insured** committing any intentional, dishonest or fraudulent act or omission, however, **We** will defend **Claims** alleging any of the foregoing conduct until there is a judgment, **Final Adjudication**, adverse admission or finding of fact against **You** as to such conduct at which time **You** shall reimburse **Us** for **Claim Expenses**. **We** shall not cover any **Claim** if **You** plead nolo contendere or no contest to a criminal proceeding against **You** arising out of the same, or essentially the same, material facts as such **Claim**;

2. Unearned Personal Profit

   Based upon, arising out of, or in any way relating directly or indirectly to any **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

3. Criminal Acts

Based upon, arising out of, or in any way related to, directly or indirectly, any willful or criminal violation of any statute, rule or law;

4. Non-Monetary Relief

Based upon, arising out of, or in any way related to, directly or indirectly, any demand for **Equitable Relief**;

5. Pollution

Based upon, arising out of, or in any way related to, directly or indirectly:

a. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

b. Any directive, request or voluntary decision that any **Insured** monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

c. Any governmental or regulatory directive or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

d. The failure to discover, disclose, report or advise of the existence or amount of **Pollutants**.

6. Fungi

Based upon, arising out of, or in any way related to, directly or indirectly:

a. The presence of, suspected presence of or exposure to:

1) Fungi, including but not limited to mold, mildew and yeast; or

2) Bacteria or viruses; or

3) Dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in 1) or 2) above, from any source whatsoever; or

b. The failure to discover or disclose the existence of any of the organisms listed in a. above, from any source whatsoever; or

c. Any loss, cost or expense arising out of the testing for, monitoring of, cleaning up of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of or any other response to or assessment of the effects of any of the items in a. above, from any source whatsoever.

7. Bodily Injury or Property Damage

Based upon, arising out of, or in any way related to, directly or indirectly, **Bodily Injury** or **Property Damage**, however that this exclusion does not apply to **Claims** of mental injury, mental anguish, mental tension, or emotional distress caused by **Personal Injury**;

8. Securities Laws

Based upon, arising out of, or in any way related to, directly or indirectly:

a. Any purchase, sale, or offer, or solicitation of an offer to purchase or sell securities;

b. Any violation of any securities law, including the Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

c. Any violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO") as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

9. ERISA

Based upon, arising out of, or in any way related to, directly or indirectly, any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of



1974 ("ERISA") as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

10. Employment Practices

Based upon, arising out of, or in any way related to, directly or indirectly:

a.  Any **Employment Practices** liability; or

b.  Any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

11. Intellectual Property

Based upon, arising out of, or in any way related to, directly or indirectly, any misappropriation or misuse of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

12. Deceptive Business Practices

Based upon, arising out of, or in any way related to, directly or indirectly, false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

13. Spamming

Based upon, arising out of, or in any way related to, directly or indirectly, any alleged unsolicited fax, electronic mail or any other means, where prohibited by law, including any actual or alleged violation of the Telephone Consumer Protection Act ("TCPA") of 1991, any amendments thereto, any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local, statutory law or common law, anywhere in the world;

14. Government Body

Against **You**, that is brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; however, this exclusion shall not apply where the **Claim** alleges a **Wrongful Act** in **Your** rendering **Professional Services** to such entity, or for a **Disciplinary Proceeding**;

15**.** Contract

Based upon, arising out of, or in any way related to, directly or indirectly, liability **You** assume under any contract or agreement; however this exclusion does not apply to liability **You** would have in the absence of such contract or agreement;

16. Insured vs Insured

Arising out of a **Claim** by any **Insured** under this **Policy** against any other insured under this **Policy**, or against **You** that is brought by or on behalf of:

a.  Any business entity that is owned, managed or operated, directly or indirectly, in whole or in part, by **You**;

b.  Any parent company, **Subsidiary**, successor or assignee of **Yours**, or anyone affiliated with **You** or such business entity through common majority ownership or control; or

c.  Any independent contractor supplying material or services to **You**;

17. Insurance Placement

Based upon, arising out of, or in any way related to, directly or indirectly, **Your** advising, requiring, obtaining, or failing to advise, require, or obtain, any bond, suretyship or other form of insurance;

18. Misappropriation

Based upon, arising out of, or in any way related to, directly or indirectly, any actual or alleged commingling, misappropriation or improper use of funds or monies, by anyone;

19. False Pretenses

Based upon, arising out of, or in any way related to, directly or indirectly, any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the misrepresentation of a fact including, but not limited to, funds transfer fraud, social engineering, computer fraud, pretexting, phishing, spear phishing or any other confidence trick;



# Miscellaneous Advantage
## Professional Liability Insurance

20. Websites

Based upon, arising out of or in any way related to, directly or indirectly:

a. Controlling, creating, designing, or developing any third party's Website;

b. Controlling, creating, designing, developing, determining, or providing the content or material of any third party's website; or

c. Controlling, facilitating, providing, or failing to control, facilitate, or provide, access to the internet;

21. Software & Computer Code

Based upon, arising out of or in any way related to, directly or indirectly, any infringement of, violation of, or assertion of, any right to or interest in any:

a. Software or its source content or material;

b. **Computer** code or its source content or material or expression method; or

c. Process designed to control or facilitate any operation or other use of a **Computer** or automated system; or

22. Warranty

Based upon, arising out of or in any way related to, directly or indirectly, the failure of goods, products, or services to conform with any electronic, oral, written, or other representation or warranty with respect to durability, fitness, performance, quality or use.

## F. EXTENDED REPORTING PERIODS

1. Automatic Extended Reporting Period

**You** will be entitled to an automatic **Extended Reporting Period** for no additional premium.  This extension is applicable to any **Claim** made against **You** during the **Policy Period** and reported to **Us** in writing, during the sixty (60) days immediately following the **Policy Termination Date**.

2. Optional Extended Reporting Period

**We** will provide an optional **Extended Reporting Period** as described below:

If this **Policy** is canceled, terminated or non-renewed, **You** shall have the right, upon payment of an additional premium, to an extension of the reporting period for any **Claim** against you first made and reported after the **Policy Termination Date**, but only with respect to **Wrongful Acts** committed wholly prior to the **Policy Termination Date** and otherwise covered by this **Policy**.

If purchased, this optional **Extended Reporting Period** shall be in place of, not in addition to, the automatic **Extended Reporting Period**.

a. The available optional **extended reporting period** options and additional premium are determined in accordance with the rules, rates and rating plans **We** then have in effect in **Your** state.

b. **You** must request the optional **Extended Reporting Period** in writing and must pay **Us** the additional premium within thirty (30) days following the date of such cancellation, termination or non-renewal.  If **We** do not receive **Your** request and premium payment within thirty (30) days following the date of such cancellation, termination or non-renewal, **Your** right to purchase the optional **Extended Reporting Period** shall cease.

c. If **We** cancel for non-payment of premium, the **Named Insured** may purchase an optional **Extended Reporting Period** only after any earned premium due **Us** is paid within ten (10) days after the date of cancellation or **Policy** expiration, whichever comes first.

d. All premiums paid for an optional **Extended Reporting Period** shall be deemed fully earned as of the first day of the optional **Extended Reporting Period**.  Once the premium for the optional **Extended Reporting Period** is paid, it may not be cancelled.

The optional **Extended Reporting Period** does not extend the **Policy Period** or change the scope of coverage provided.  There are no separate, additional or reinstated limits of liability for the **Extended Reporting Period**.



# Miscellaneous Advantage
## Professional Liability Insurance

3. Death or Disability Extended Reporting Period

If, during the **Policy Period**, the **Named Insured** who is a sole proprietor, dies or becomes **Totally and Permanently Disabled**, having been continuously insured by **Us** under a Professional Liability Insurance policy for the immediately preceding three (3) full years, does not have any other available insurance coverage, and meets **Our** eligibility requirements, **We** will issue a death or disability **Extended Reporting Period** endorsement without additional charge. The death or disability **Extended Reporting Period** expires when the executor or administrator of **Your** estate is discharged or **Your** disability ends. **You** or **Your** estate must, within sixty (60) days after the **Policy Termination Date**, notify **Us** in writing if this coverage is desired. This death or disability **Extended Reporting Period** does not apply to **Claims** that are covered under any subsequent insurance available to **You**, or that would be covered but for exhaustion of the amount of insurance applicable to such **Claims**.

**We** also require:

a. Written proof of **Your** permanent and total disability, including the date it happened, certified by **Your** attending physician. **You** agree to submit to medical examination(s) by any physician(s) **We** designate if requested; or

b. Written proof of the date of **Your** death.

The death or disability **Extended Reporting Period** is not available if death or disability resulted from an intentionally self-inflicted injury, suicide, or alcohol or drug abuse.

4. Retirement Extended Reporting Period

If, during the **Policy Period**, the **Named Insured** who is a sole proprietor, retires completely from rendering **Professional Services** specifically covered by this **Policy**, has been continuously insured by **Us** under a Professional Liability Insurance policy for the immediately preceding three (3) full years, does not have any other available insurance coverage, and meets **Our** eligibility requirements, **We** will issue a retirement **Extended Reporting Period** endorsement without additional charge. **You** must, within sixty (60) days after the **Policy Termination Date**, notify **Us** in writing if this coverage is desired. This retirement **Extended Reporting Period** does not apply to **Claims** that are covered under any subsequent insurance available to **You**, or that would be covered but for exhaustion of the amount of insurance applicable to such **Claims**.

**We** also require:

a. **You** are fifty-five (55) years of age or older;

b. **Your** license or right to provide **Professional Services** has not been revoked, suspended, or **You** have not relinquished **Your** license or right to provide **Professional Services** in lieu of suspension or revocation, in any state or jurisdiction where **You** have a license or a right to provide professional services; and

**c.** Y**our Policy** was not cancelled for failure to pay premium when due.

The retirement **Extended Reporting Period** expires when **You** resume rendering **Professional Services**.

## G. DUTIES IN THE EVENT OF CLAIM(S), POTENTIAL CLAIM(S), OR SUPPLEMENTAL COVERAGE MATTER(S)

1. If **You** receive a **Claim**, **You** must provide **Us** written notice of the **Claim**, with full details including the date received, as soon as practicable, but in no event later than sixty (60) days after the **Policy Termination Date** or during the optional **Extended Reporting Period**, if purchased.

2. No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation, agree to a settlement or incur any expense related to a **Claim** without **Our** consent.

3. If **You** become aware of a **Potential Claim**, **You** must provide **Us** written notice as soon as practicable, but in no event later than the **Policy Termination Date**. To the extent possible notice should include:

a. Where the **Wrongful Act** took place and any facts or circumstance concerning the **Wrongful Act**; and

b. The names and addresses of any persons and entities involved; and

c. The reasons why the **Potential Claim** may reasonably be expected to give rise to a **Claim**.

**Miscellaneous Advantage**
Professional Liability Insurance

4. Any **Claim** arising out of the **Wrongful Act**, facts or circumstance which is subsequently made against **You** shall be deemed to have been first made at the time **We** received such written notice from **You**, if **We** receive proper notice of the **Potential Claim** according to paragraph 3. above.

5. If **You** receive a **Supplemental Coverage Matter**, **You** must provide **Us** with written notice of the **Supplemental Coverage Matter**, with full details, including the date received, as soon as practicable, but in no event later than the **Policy Termination Date**.

6. **You** and any other involved **Insured** must:

   a. Immediately send **Us** copies of any demands, notices, summonses or legal papers received in connection with the **Claim**, **Potential Claim** or **Supplemental Coverage Matter**;

   b. Authorize **Us** to obtain records and other information;

   c. Cooperate with **Us** in the investigation, defense or settlement of the **Claim**, **Potential Claim** or **Supplemental Coverage Matter**; and

   d. Assist **Us**, upon **Our** request, in the enforcement of any right against any person or entity which may be liable to **You** because of **Damages** to which this insurance may apply.

The date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

## H. CONDITIONS

1. <u>Cancellation and Non-Renewal</u>

   a. **We** may cancel this **Policy** by written notice to the **Named Insured**. **We** will provide written notice at least sixty (60) days before cancellation is to be effective, however if **We** cancel for failure to pay premium when due, **We** will give ten (10) days written notice to the **Named Insured** before such cancellation is effective. Regardless of the reason for cancellation, return of unearned premium shall be calculated on a prorata basis.

   b. The **Named Insured** may cancel this **Policy** by written notice to **Us** stating when thereafter the cancellation shall be effective. If this **Policy** is cancelled, return of unearned premium shall be calculated on a pro rata basis.

   c. **We** are not required to renew this **Policy**. However, written notice of **Our** intent to non-renew this **Policy** shall be sent to the **Named Insured** at least sixty (60) days prior to expiration of the **Policy Period**.

2. <u>Representations and Application</u>

   By accepting this **Policy**, **You** agree that:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based on representations **You** made to **Us** in **Your** application for this insurance **Policy**, or to **Us** for a **Policy** of which this **Policy** is a renewal or replacement;

   c. The representations made in **Your** application are the basis of this **Policy** are to be considered as incorporated into and constitute a part of this **Policy**;

   d. Those representations are material to the acceptance of the risk **We** assumed under this **Policy**;

   e. **We** have issued this **Policy** in reliance upon the truth, accuracy and completeness of such representations.

3. <u>Legal Action Against Us</u>

   No person or entity has a right under this **Policy** to:

   a. Join **Us** as a party or otherwise bring **Us** into a **Suit** asking for **Damages** from an **Insured**; or

   b. Sue **Us** on this **Policy** unless all of its terms have been fully complied with.

   A person or entity may sue **Us** to recover on an agreed settlement or on a final judgment against an **Insured**; but **We** will not be liable for **Damages** that are not payable under the terms of this **Policy** or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by **Us**, the **Insured** and the claimant or the claimant's legal representative.



**Miscellaneous Advantage**
Professional Liability Insurance

4. Change in Ownership, Control or Exposure

If during the **Policy Period**:

a. Another person, entity, or group of persons or entities acquires more than fifty (50) percent of the assets of the **Named Insured**; or

b. Another person, entity, or group of persons or entities, acquires an amount of the outstanding securities representing more than fifty (50) percent of the voting power for the election of the **Named Insured's** directors or trustees; or

c. The **Named Insured** consolidates with or merges with another entity;

**You** shall notify **Us** of the change described in a., b., or c. above ("transaction"), as soon as practicable, but not later than sixty (60) days after the effective date of such transaction. **You** shall provide such additional information, pay any additional premium and agree to any amendment of the provisions of this **Policy**, as **We** require.

If **you** fail to meet the conditions described above, coverage under this **Policy** shall continue until termination of the **Policy Period**, but only with respect to **Claims** made for **Wrongful Acts** which took place prior to the transaction.

5. Transfer of Rights of Recovery Against Others to Us

If **You** have any rights to recover all or part of any payment **We** have made under this **Policy**, these rights are transferred to **Us**. **You** must do nothing after a **Loss** to impair **Our** rights to seek or obtain recovery from others. At **Our** request, **You** will sue those responsible or transfer those rights to **Us** and help **Us** enforce them. In the event of any payment under this **Policy**, **We** shall be subrogated to the extent of such payment to all of **Your** rights of recovery. **You** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights and shall do nothing to prejudice or compromise such rights without **Our** express written consent.

6. Assignment

No change in, modification of or assignment of interest in this **Policy** shall be effective except when made by a written endorsement to the **Policy**.

7. Sole Agent for the Insured

By accepting this **Policy**, **You** agree that only the **Named Insured** is authorized to act on behalf of all **Insureds** with respect to the following: consenting to settlement or releasing rights under this **Policy**, payment for premiums and deductibles, receiving return premiums, giving or receiving notice of cancellation or non-renewal, requesting any **Extended Reporting Period** and agreeing to any changes in this insurance **Policy**. Each **Insured** agrees that the **Named Insured** shall act on its or their behalf with respect to such matters.

8. Coverage Territory and Valuation

This **Policy** applies to a **Wrongful Act** committed anywhere in the world provided that the **Claim** or **Supplemental Coverage Matter** is made and **Suit** is brought against **You** within the United States, its territories or possessions or Canada. All premiums, limits, deductibles, **Loss** and other amounts are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or another element of **Loss** under this **Policy** is stated in a currency other than the United States of America dollars, payment under this **Policy** shall be made in United States of America dollar equivalent determined by the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of **Loss** is due, respectively.

9. Other Insurance

a. If other valid and collectible insurance is available to **You** for **Loss** covered under this **Policy**, the insurance provided by this **Policy** shall be excess over such other insurance, regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise.

b. When this insurance is excess, **We** have no duty to defend **You** against any **Claim** if any other insurer has a duty to defend **You** against the **Claim**. If no other insurer defends **We** will undertake to do so but **We** will be entitled to **Your** rights against those other insurers.



# Miscellaneous Advantage
## Professional Liability Insurance

c.  When this insurance is excess over other insurance, **We** will pay only **Our** share of the amount of **Loss**, if any, that exceeds the sum of:

   1)  The total amount that all such other insurance would pay for the **Loss** in the absence of this insurance; and

   2)  The total of all deductibles, self-insurance and retentions under all that other insurance.

**We** will share the remaining **Loss**, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limit of Liability shown in the Declarations page of this **Policy**.

d.  <u>Method of Sharing</u>

If all the other insurance permits contribution by equal shares, **We** will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Liability or none of the **Loss** remains, whichever comes first.

If any other insurance does not permit contribution by equal shares, **We** will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable Limit of Liability to the total applicable limits of liability of all insurers.

10.  <u>Two or More Policies, Coverage Parts, or Endorsements Issued by Us</u>

It is **Our** stated intention that this **Policy** and any other policy, coverage part or endorsement issued by **Us**, or by any company of The Hanover Insurance Group, shall not provide duplicate or overlapping coverage for the same **Claim** or **Supplemental Coverage Matter**.  If this **Policy** and any other policy issued by **Us**, or by any company of The Hanover Insurance Group, to **You**, apply to the same **Claim** or **Supplemental Coverage Matter** then, Condition 9. Other Insurance notwithstanding:

a.  **We** shall not be liable under this **Policy** for a greater proportion of the **Loss** than the applicable Limit of Liability of this **Policy** bears to the sum of the total limits of liability of all such policies; and

b.  The maximum amount payable under all such policies combined shall not exceed the highest applicable Limit of Liability under any one policy.

11.  <u>Conformance to Law and Trade Sanctions</u>

Coverage under this **Policy** does not apply to the extent trade, economic sanction, insurance or other laws or regulations prohibit **Us** from providing insurance.  The terms of this **Policy** which are in conflict with the statutes of the state in which this **Policy** is issued are amended to conform to those statutes.

12.  <u>Section Titles</u>

The titling of sections and paragraphs within this **Policy** is for convenience only and shall not be interpreted as a term or condition of this **Policy**.

13.  <u>Bankruptcy</u>

**You** or **Your** estate's bankruptcy or insolvency does not relieve **Us** of **Our** obligations under this **Policy**.

14.  <u>Liberalization</u>

If **We** adopt any revisions to the terms and conditions of this **Policy** form to provide more coverage without an additional premium charge during the **Policy** term, the broadened coverage will immediately apply.  However, the broadened terms and conditions will not apply to any **Claims** or **Supplemental Coverage Matters** that were first made against **You** prior to the effective date of the revision.



POLICYHOLDER NOTICE

## U.S. Treasury Department's
## Office of Foreign Assets Control ("OFAC")
## Advisory Notice To Policyholders

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this notice carefully.**

The Office of Foreign Assets Control ("OFAC") administers and enforces sanctions policy, based on Presidential Declarations of National Emergency.

OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site:  http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Other limitations on the premiums and payments also apply.



POLICYHOLDER NOTICE

# CUSTOMER NOTICE OF PRIVACY POLICY AND PRODUCER COMPENSATION PRACTICES DISCLOSURES—PRIVACY POLICY DISCLOSURE

### *Collection of Information*

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com.

### *Disclosure of Information*

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

### *Safeguards to Protect Your Personal Information*

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

### *Internal Access to Information*

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

### *Consumer Reports*

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.



POLICYHOLDER NOTICE

### *Access to Information*

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

### *Correction of Information*

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

### *Our Commitment to Privacy*

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com.

### *Further Information*

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

### Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com.



POLICYHOLDER NOTICE

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.



POLICYHOLDER NOTICE

# INFORMATION REGARDING
# EXTENDED REPORTING PERIOD ENDORSEMENT
# ("ERP COVERAGE")

The enclosed policy provides coverage for claims reported during the policy period.  Subject to the policy's terms and conditions, you may purchase an Extended Reporting Period Endorsement, also known as "ERP coverage", that will extend the time for reporting claims arising out of professional services rendered while the policy was still in effect although the policy may have been cancelled or non-renewed or terminated.  Please refer to Section F. of your policy for the terms and conditions for eligibility, purchasing or obtaining an Extended Reporting Period endorsement.  *There is a limited time for requesting such an endorsement.*

The premium charged for the endorsement is expressed as a percentage of your policy's annual premium.

| Length of "ERP Coverage" Offered | "ERP Coverage" Premium |
|---|---|
| 12 months | 100 % of expiring annual premium |
| 24 months | 150 % of expiring annual premium |
| 36 months | 200 % of expiring annual premium |
| 48 months | 225 % of expiring annual premium |
| 60 months | 250 % of expiring annual premium |
| Unlimited | 300 % of expiring annual premium |

*Extended Reporting Period Endorsements may be subject to state regulatory requirements.*

Please contact your agent or customer service representative for pricing specific to your situation and location.

**The Hanover**
Insurance Group™

POLICYHOLDER NOTICE

## IMPORTANT NOTICE TO POLICYHOLDERS

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORMS
AND ENDORSEMENTS REVISIONS
Summary of Form Changes**

**THIS NOTICE CONTAINS A SUMMARY OF IMPORTANT INFORMATION REGARDING CHANGES IN COVERAGE. PLEASE READ IT CAREFULLY.**

**THIS NOTICE DOES NOT PROVIDE ANY COVERAGE AND DOES NOT REPLACE ANY PROVISIONS IN YOUR POLICY. READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

The Hanover Insurance Group, in an effort to further address your needs, has updated the Miscellaneous Professional Liability Coverage Insurance Policy and many of its endorsements. New policy forms and endorsements are designed to provide an enhanced and streamlined product.

Your expiring Miscellaneous Professional Liability policy has been **replaced** in its entirety with the new **Miscellaneous Advantage Professional Liability Insurance Policy**. In addition, many of the endorsements which modify the new Miscellaneous Advantage Professional Liability Coverage Part have been updated and new endorsements have been added. The following is a summary of major changes which will apply to your policy at renewal.  This notice does **not** reference every editorial change made in your policy. If you have any questions or concerns, please contact your agent.

Please note: Not all coverages, coverage forms or endorsements are included on a particular policy. Please read your policy language carefully.

**910-1001  05/19 MISCELLANEOUS ADVANTAGE PROFESSIONAL LIABILITY POLICY**

**Changes That Clarify Coverage**

- We have added language to the preamble of the policy to affirm the coverages are being provided in exchange for the premium charged and in reliance upon statements contained in the insured's application for coverage.

- Under the section titled **COVERAGE – WHAT THIS POLICY INSURES**, the requirements and limitations language has been moved from the individual insuring agreements to the end of the section to signify that the same requirements and limitations apply to all insuring agreements and the Supplemental Coverage section without the necessity of repetitive language.

- The insuring agreement titled Technology Professional Coverage has been replaced by an insuring agreement titled Privacy and Security Liability Coverage.

- Certain new or enhanced expense coverages are now contained under the section titled Supplemental Coverage.

- The following definitions have been added:
  - Breach Notice Law
  - Crisis Event
  - Crisis Management Firm
  - Cyber Attack
  - Data
  - Event Expenses
  - Final Adjudication



- o Non-Profit Entity
  - o Privacy Breach
  - o Rogue Employee
  - o Security Breach
  - o Storage Media
  - o Subpoena
  - o Supplemental Coverage Matter
  - o System
  - o System Output
  - o Totally and Permanently Disabled
- The following definitions have been modified:
  - o Claim
  - o Damages
  - o Equitable relief
  - o Insured
  - o Personal Injury
  - o Pollutants
  - o Property Damage
  - o Subsidiary
- The exclusion for Fungi was removed from the Pollutants exclusion and has been added back as a separate exclusion.
- The exclusion for Bodily Injury has been modified to provide coverage for claims alleging mental injury, mental anguish, mental tension, or emotional distress caused by Personal Injury.
- The exclusions for Insured v. Insured and Claims by Entities Owned or Affiliated have been combined into a single exclusion titled Insured v. Insured.
- Language was added to the optional Extended Reporting Section to clarify that an insured is not able to stack Extended Reporting Periods.
- The section titled **DUTIES IN THE EVENT OF A CLAIM(S), POTENTIAL CLAIM(S), OR SUPPLEMENTAL COVERAGE MATTER(S)** has been modified to specify the nature of the information requested when an insured reports a Claim, Potential Claim or Supplemental Coverage Matter.
- Under the section titled **CONDITIONS**, the Allocation provision has been removed.

**Changes That May Broaden Coverage**:

- The insuring agreement titled Privacy and Security Liability Coverage provides additional and enhanced coverages to those previously provided under the Technology Professional Coverage insuring agreement and includes adding the following definitions.
  - o Privacy Breach means an insured who fails to protect a customer's confidential records, the theft or negligent loss of hardware, Storage Media, System Output, Data or other documents owned or controlled by, or on behalf of, the insured on which Confidential Records are stored or recorded and the negligent failure to disclose either of these events in violation of any Breach Notice Law. Privacy Breach also means an insured's negligent violation of federal, state, foreign or local privacy legislation or regulation in connection with a Claim.
  - o Security Breach means the failure or violation of the security of the insured's computer system, including denial of access, cyber attacks, or acts of a rogue employee which damage or harm the insured's system or the system of a third party for whom the insured provides services for a fee. Security Breach also includes theft or loss of hardware on which data is stored and the insured's violation of a Breach Notice Law.



<span style="color:green">DISCLOSURE NOTICE</span>
<span style="color:green">Miscellaneous Advantage</span>

- The section titled Supplemental Coverage has numerous new coverages, including:
  - Pre-Claim Assistance
  - Crisis Event
  - Reputation Protection
  - Withheld Client Fee Assistance
  - Nonprofit Directors and Officers Expense
- The section titled Supplemental Coverage has numerous enhancements to existing coverages, including:
  - Disciplinary Proceedings
  - Subpoena Assistance
- An automatic extended reporting period for Death or Disability of a sole proprietor has been added. There is no charge for this extended reporting period.
- An automatic extended reporting period has been added for Retirement of a sole proprietor. There is no charge for this extended reporting period.
- The section titled **DUTIES IN THE EVENT OF A CLAIM(S), POTENTIAL CLAIM(S), OR SUPPLEMENTAL COVERAGE MATTER(S)** has been modified to state the claim must be reported as soon as practicable rather than providing a 90-day reporting window.
- Under the section titled **CONDITIONS**, the Representations and Application provision has been modified to remove the language imputing statements made by the individual signing the applications to the named insured.
- Under the section titled **CONDITIONS**, the Change in Ownership, Control or Exposure provision has been modified to increase the time to notify us of a change from 30 days to 60 days.  In addition, the language pertaining to immediate termination of coverage and the ability to purchase a run-off period has been removed.

**Changes That May Reduce Coverage**:

- The exclusion for Unearned Personal Profit no longer contains a provision for defense until a final adjudication.
- The exclusion for Pollution has been expanded to exclude coverage for directives, requests, voluntary decisions to monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants and for the failure to discover, disclose, report or advise of the existence or amount of Pollutants.
- An exclusion for Spamming has been added.
- The exclusion for Misappropriation has been modified to apply to anyone.
- An exclusion for False Pretenses has been added.
- An exclusion for Websites has been added.
- An exclusion for Software & Computer Code has been added.
- An exclusion for Warranty has been added.
- Under the section titled **CONDITIONS**, the Cancellation and Non-Renewal provision has been modified to include cancellation for any reason, not just non-payment of premium.
- Under the section titled **CONDITIONS**, the Representations and Application provision has been modified to remove the language that interpreted the application as separate applications by each insured.
- Under the section titled **CONDITIONS**, the Separation of Insureds provision has been removed.



POLICYHOLDER NOTICE

# IMPORTANT POLICYHOLDER INFORMATION
# CYBER PRIVACY AND SECURITY RISK MANAGEMENT RESOURCES

We are pleased to provide our policyholders with access to the eRisk Hub®, powered by NetDiligence®. The eRisk Hub is a private web-based portal containing information and technical resources that can assist you in the prevention of network, cyber and privacy breaches and support you in the timely reporting and recovery of losses if an incident occurs.

The eRisk Hub features news, content and services from leading practitioners in risk management, computer forensics, forensic accounting, crisis communications, legal counsel, and other highly-specialized segments of cyber risk.

Please note the following:

1. The eRisk Hub portal is a private site for policyholders of The Hanover Group only.  Please do not share portal access instructions with anyone outside your organization. You are responsible for maintaining the confidentiality of the **Access Code** provided to you.

2. Up to three individuals from your organization may register and use the portal. Ideal candidates include your company's Risk Manager, Compliance Manager, Privacy Officer, IT Operations Manager or Legal Counsel.

3. This portal contains a directory of experienced providers of cyber risk management and breach recovery services. Hanover does not endorse these companies or their respective services. Before you engage any of these companies, we urge you to conduct your own due diligence to ensure the companies and their services meet your needs. Unless otherwise indicated or approved, payment for services provided by these companies is your responsibility.

4. Should you experience a data breach event, you may choose to call the Breach Coach® listed in the portal for immediate triage assistance. Your initial consultation is free of charge. Please be aware that the Breach Coach service is provided by a third-party law firm. Therefore, contacting the Breach Coach does NOT satisfy the claim notification requirements of your policy.

To register for the Hanover eRisk Hub:
1. Go to https://www.eriskhub.com/hanover.php.
2. Complete the **New User Registration** form in the center of the webpage. Create your own User ID and password. Enter **14014** in the **Access Code** field.
3. Once you've completed registration, you can login immediately by entering the User ID and password you just created in the **Member Login** box in the top right corner of the screen.

*Please note that the independent risk management services offered by eRisk Hub powered by NetDilgence are accessible to you as a Policyholder of The Hanover Insurance Company or one of its subsidiaries and affiliates.   The Hanover is independent from NetDilgence and depending on the terms, conditions, and exclusions of your Hanover policy, may not be responsible for any fees or charges you may incur for services or products which may be offered to you by NetDiligence, eRisk Hub, or for which you may contract with any provider listed in eRisk Hub.  Under no circumstances should the recommendations, services or products of eRisk Hub be construed as recommendations, services or products of The Hanover Insurance Group, Inc.  By making this service accessible to you, The Hanover does not assume (and specifically disclaims) any duty, undertaking or responsibility to you regarding the kidnap response and risk management services of eRisk Hub and Net Diligence.*



**IMPORTANT POLICYHOLDER INFORMATION**

**RISK MANAGEMENT RESOURCES**

We are pleased to direct you to the following Risk Management Resources, which are available to you free of charge.

As a first line of defense in helping to manage your risk exposure, we recommend that you visit the Hanover Risk Management Portal. The Portal has an excellent compendium of materials designed to help you manage your practice, avoid risk and better understand professional liability insurance coverage. The Portal is updated regularly to ensure policyholders are receiving the most relevant articles and the appropriate tools needed to be prepared against risk in this ever-changing environment.

- Go to www.HanoverProRisk.com
- Register as a Hanover Policyholder for access to all materials

You can also call our **Risk Management Hotline: 1-866-512-9953**

> **Press #3 for 'Miscellaneous Professionals'**
> **(**including **Real Estate Agents/Brokers, Home Inspectors, Mortgage Field Services Vendors, Property Managers,** etc.**)**

Our Professional Liability Risk Management Hotline is staffed by professionals with years of experience working with Real Estate Agents/Brokers, Home Inspectors, Mortgage Field Services Vendors and other Miscellaneous Professionals and are familiar with the day-to-day business and risk management issues for our policyholders. The Hotline is a resource for discussing problems and questions that can arise about best practices and potential claims.

Calls placed during business hours are returned within one business day.

If you have other questions, you can also call our **Director of Risk Management**:

J. Michael Reese, JD/LL.M
Hanover Insurance Group
Director of Risk Management
Professional Liability
630-760-3026
MReese@Hanover.com

As a reminder, whenever you become aware of a claim or suit, or circumstances that may result in a claim, you should immediately give notice to Hanover via our online reporting site, call 1-800-628-0250, or email at ProClaim@Hanover.com.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 1 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

# SCHEDULE OF FORMS

To be attached to and form part of the Policy Number listed above.

| | |
|---|---|
| 910-1002 05/19 | Miscellaneous Advantage Professional Liability Declarations |
| 910-1001 05/19 | MPL Adv Base Policy Form |
| 910-1800 PHN 05/19 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| 910-1801 PHN 05/19 | Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures Privacy Policy Disclosure |
| 910-1805 PHN 05/19 | Information Regarding Extended Reporting Period Endorsement ("ERP Coverage") |
| 910-1820 PHN 05/19 | Summary of Form Changes |
| 910-1825 PHN 11/19 | Cyber Risk Management Resources Policyholder Notice |
| 910-1826 PHN 01/20 | HPP Risk Management Resources |
| 910-1003 05/19 | Schedule of Forms |
| 910-1106 05/19 | Cyber First Party Coverages |
| 910-1129 05/19 | Real Estate Scheduled Coverages |
| 910-1140 05/19 | Professional Liability Enhancements |
| 910-1201 05/19 | Claim Expenses in Addition to Limit of Liability |
| 910-1205 05/19 | Split Limits - Two Tiers |
| 910-1216 05/19 | Bodily Injury and Property Damage Carveback with CGL (Sublimit) |
| 910-1304 05/19 | Limited Additional Insured |
| 910-1434 05/19 | Specific Entity Exclusion |
| 910-1445 05/19 | Landlord Tenant Statute Exclusion |
| 910-1506 05/19 | Modify Consent to Settle |
| 910-1608 05/19 | Georgia State Amendatory Endorsement |

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 1 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

# CYBER FIRST PARTY COVERAGES

In consideration of the premium charged it is agreed that:

| SCHEDULE | | | |
|---|---|---|---|
| **Cyber First Party Coverages** | **Limit of Liability** | **Deductible** | **Retroactive Date** |
| Cyber Expense | $100,000 | $2,500 | Refer to Item 8 of Declarations |

A.   Section A. Coverage is amended to include:

Cyber First Party Coverages

a.   Breach Event Expenses

**We** will pay **Breach Event Expenses** directly resulting from a **Privacy Breach** or **Security Breach** first discovered by **You** during the **Policy Period**.

b.   Breach Restoration Expenses

**We** will pay **Breach Restoration Expenses** directly resulting from a **Security Breach** first discovered by **You** during the **Policy Period** and which results in the damage, deletion or destruction of **Data** owned by **You** or for which **You** are legally liable.

c.   Cyber Investigation Expenses

**We** will pay **Cyber Investigation Expenses** directly resulting from a **Regulatory Investigation** regarding a **Privacy Breach** or **Security Breach** first discovered by **You** during the **Policy Period**.

d.   Cyber Business Interruption and Extra Expense

**We** will pay loss of **Business Income** and additional **Extra Expense,** incurred by **You** during the **Period of Restoration**, directly resulting from a **Security Breach** which first occurs during the **Policy Period** and which results in an actual impairment or denial of service of **Business Operations** during the **Policy Period**.

e.   Cyber Extortion

**We** will pay **Cyber Extortion Expenses** directly resulting from a **Threat** first against **You** during the **Policy Period** and which results in **You** surrendering any funds or property to a natural person who makes such **Threat**.

f.   Cyber Theft

**We** will pay **Cyber Theft Loss** first discovered by **You** during the **Policy Period**.



Endorsement

| | |
|---|---|
| Coverage:  MPL | Endorsement Number: 1 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

B.  For the purposes of coverage  provided  by this endorsement, Section C.1 Limit of Liability is amended  to include:

The most **We** will pay for all **Cyber Expenses** resulting from a **Privacy Breach**, **Security Breach**, **Threat** or **Cyber Theft Loss** first discovered by **You** during the **Policy Period** shall be the Limit of Liability stated in the Schedule above.

The Limit of Liability stated in the Schedule above  shall be part of, and not in addition to, the Aggregate Limit shown in Item 3. of the Declarations  page.

C.  For the purposes of coverage  provided  by this endorsement, Section C.2 Deductible, paragraph a., is amended  to include:

**You** will pay the deductible amounts shown in the Schedule above.  The deductibles apply as applicable to each **Cyber Expense**.  **You** must pay the deductible immediately when invoiced.  If different parts of a **Claim** or related **Cyber Expenses** are subject to different deductibles in different Insuring Agreements, the applicable deductibles will be applied  separately to each part of such **Claim** or **Cyber Expense** but the sum of such deductibles shall not exceed the largest applicable deductible for a single **Claim** and related **Cyber Expenses**.  **Cyber Expenses** are subject to the deductible applicable to the **Policy Period** during which such **Cyber Expense** was deemed to have been discovered or incurred.

D.  Section D. Defintions, the definition of **Loss**, is amended to include:

**Loss** also includes **Cyber Expense**.

E.  Section D. Definitions  is amended to include:

**Breach Event Expenses** means the reasonable and necessary expenses incurred for a stipulated period of time with **Our** prior approval,  from the date a **Security Breach** or **Privacy Breach** is first discovered by any of **You**:

1.  To conduct an investigation and forensic analysis to determine the cause of a covered **Security Breach** or **Privacy Breach**;

2.  To determine and notify the individuals whose **Confidential Records** were accessed or acquired including, but not limited to the cost of mailing, printing, advertising and other communications;

3.  To establish a call center to be used by individuals whose **Confidential Records** were accessed or acquired;

4.  For credit or identity  monitoring or identity theft education assistance including fees, costs or expenses associated with the purchase of an identity fraud insurance policy to benefit individuals whose **Confidential Records** were accessed or acquired;

5.  To retain a public relations crisis management or law firm as consultants to minimize harm directly arising from a covered **Security Breach** or **Privacy Breach**; or

6.  For any other expenses or services pre-approved  in writing by **Us** at **Our** sole and absolute discretion.

**Breach Restoration Expenses** means the reasonable cost of the blank **Storage Media**, and the reasonable cost of labor, with **Our** prior approval,  for the actual transcription or copying of **Data** or **Storage Media**, furnished by **You**, in order to reproduce such **Data** or replace such **Storage Media**, from data and/or **Storage Media** of comparable kind or quality, respectively.



Endorsement

| | |
|---|---|
| Coverage:  MPL | Endorsement Number: 1 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

**Business Income** means **Your**:

1. Net profit or loss that would have been earned or incurred before income taxes; and

2. Continuing normal operating and payroll expenses.

   **Business Income** does not include interest or investment income.

**Business Operations** means **Your** usual and regular business activities.

**Cyber Expense** means **Breach Event Expenses**, **Breach Restoration Expenses**, **Cyber Investigation Expenses**, **Business Income**, **Extra Expense**, **Cyber Extortion Expenses**, and **Cyber Theft Loss**. All **Cyber Expenses** based upon, arising out of or in any way related to any **Claim**, **Potential Claim**, Pre-Claim Assistance, investigation, proceeding, fact, circumstance, situation, **Privacy Breach**, **Security Breach**, **Threat**, or **Cyber Theft Loss**, or logically or causally connected **Privacy Breach**, **Security Breach**, **Threat**, or **Cyber Theft Loss**, will be considered one **Cyber Expense.** Such **Cyber Expense** will be considered first discovered at the time the earliest such **Cyber Expense** is discovered by any of **You**.

**Cyber Extortion Expenses** means:

1. Funds or property **You** surrender or pay, with the prior written authority of law enforcement and **us**, and any of the following expenses set forth below, incurred by **You** with **Our** prior written approval:

2. Reasonable fees and expenses paid by **You** to an independent negotiator or consultant;

3. Reasonable travel and accommodation expenses; or

4. Any other reasonable expense; and

5. Loss resulting directly from the actual destruction, disappearance, confiscation or wrongful abstraction of funds or property, intended as an extortion payment, while being held or conveyed by any natural person or entity, duly authorized by **You** to have custody of such funds or property.

**Cyber Investigation Expenses** means all expenses **We** incur or authorize in writing for the investigation, adjustment, defense or appeal of a **Regulatory Investigation**.

**Cyber Theft Loss** means loss resulting directly from the unauthorized transfer, payment or delivery of funds by a natural person (other than any of **You**) who has gained unauthorized access to **Your System** or through a **Network** into **Your System**.

**Extra Expense** means the reasonable and necessary expenses **You** incur, with **Our** prior approval, in an attempt to continue **Business Operations** that are over and above the expenses **You** would have normally incurred. **Extra Expense** does not include any costs of updating, upgrading or remediation of **Your System**.

**Liquidated Damages** means a sum of money stipulated by the parties to a contract as the amount of damages to be recovered for a breach of such contract.

**Network** means any services provided by or through the facilities of any electronic or **Computer** communication system, including any shared networks, Internet access facilities, or other similar facilities for such systems, in which **You** participate, allowing the input, output, examination, visualization or transfer of **Data** or programs, from one **Computer** to **Your Computer**.

**Period of Restoration** means that period which begins:



Endorsement

| | |
|---|---|
| Coverage:  MPL | Endorsement Number: 1 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

1. For **Extra Expenses**, immediately after the actual or potential impairment or denial of **Business Operations** occurs; and

2. For the loss of **Business Income**, twenty-four (24) business hours after the actual impairment or denial of **Business Operations** occurs; and

    continues until the earlier of the following:

    a. The date **Business Operations** are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial; or

    b. Sixty (60) days after the date **Your Services** are fully restored, with due diligence and dispatch, to the level that would have existed had there been no impairment or denial of such operations;

    provided that the expiration date of this **Policy** shall not cut short the **Period of Restoration**.

**Regulatory Investigation** means a formal request for information, civil investigative demand or civil proceeding, including requests for information related thereto, brought by or on behalf of a state Attorney General, the Federal Trade Commission, the Federal Communications Commission or any other federal, state, local or foreign governmental agency.

**Services** means **Computer** time, data processing, storage functions or other uses of **Your System**.

**Threat** means a declaration made by a natural person that he or she will or has gained access to **Your System** and intends to:

1. Cause **You** to transfer, pay or deliver any funds or property using **Your System**;

2. Sell or disclose a **Confidential Record** to another natural person or to an entity;

3. Alter, damage or destroy **Your Data** while stored within **Your System**;

4. Alter, damage, or destroy **Your Data** through a **Security Breach**; or

5. Impair or deny **Your Services**,

where there exists a demand for an extortion payment or a series of such payments as condition for the mitigation or removal of such **Threat**.

F. Section E. Exclusions is amended to include:

A. This insurance does not apply to any **Claim**, **Supplemental Coverage Matter**, or **Cyber Expense**:

1. Prior Notice

    Based upon, arising out of, or in any way related to, directly or indirectly, any **Security Breach**, **Privacy Breach**, or **Cyber Expense**, investigation, proceeding, act, event, transaction, decision, fact, circumstance or situation which has been the subject of any notice given to any other insurer, under any similar policy prior of which this **Policy** is a direct or indirect renewal or replacement; or



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 1 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

2. Past Events

Based upon, arising out of, or in any way related to, directly or indirectly, any **Security Breach**, **Privacy Breach**, or **Cyber Expense**, investigation, proceeding, act, event, result, damage, transaction, decision, fact, circumstance or situation which occurred, in whole or in part, prior:

a. To the applicable **Retroactive Dates** set forth in the Schedule above; or

b. To the date an entity became a **Subsidiary**, if later.

B. This insurance does not apply to any **Cyber Expense** for:

1. Assumed Obligations

Any costs or expenses incurred to perform any obligation assumed by, on behalf of, or with the consent of any **Insured**; however, this Exclusion shall not apply to **Breach Event Expenses**;

2. Return of Payments

Any return of fees, charges, commissions or other compensation paid to an **Insured**;

3. Investigations

Any costs, fees or expenses incurred or paid by any **Insured** in establishing the existence of, or amount of loss. However, this Exclusion shall not apply to **Breach Event Expenses** for the retention of an information security forensic investigator or forensic accountant;

4. System Changes

Any costs or expenses incurred to replace, upgrade, update, improve, or maintain a **System**;

5. Non-monetary Relief

Any costs of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief; however, this Exclusion shall not apply to **Breach Event Expenses**;

6. Taxes, Fines and Penalties

Any fines or penalties imposed by law, taxes or **Liquidated Damages**;

7. Potential Income

Any potential income not realized by any **Insured**; however, this Exclusion shall not apply to loss of **Business Income** as provided under the Cyber Business Interruption and Extra Expense Insuring Agreement;

8. Uniform Commercial Code

Any loss, costs or expenses any **Insured** agrees to incur or incurs on behalf of another natural person or entity when such **Insured** is not obligated to incur such loss, costs or expenses under the Uniform Commercial Code or any other law, statute, rule or code anywhere in the world, including the rules or codes of any clearing or similar entity, provided that this Exclusion does not apply to the Breach Event Expenses or Cyber Business Interruption and Extra Expense Insuring Agreements;



Endorsement

| | |
|---|---|
| Coverage:  MPL | Endorsement Number: 1 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

9. <u>Consequential Loss</u>

Any loss, costs or expenses based upon, arising from or in consequence of an indirect or consequential loss of any nature; however, this Exclusion shall not apply to Cyber Business Interruption Coverage and Extra Expense Insuring Agreements; or

10. <u>Malfunction or Error</u>

Any loss, costs or expenses resulting from mechanical failure, faulty construction, error in design, latent defect, wear or tear, gradual deterioration, electrical disturbance, **Storage Media** failure or breakdown or any malfunction or error in programming, or error or omission in processing.

G. Section G. Duties in the Event of Claim(s), Potential Claims(s) or Supplemental Coverage Matter(s) is amended to include:

With respect to the Breach Event Expenses, Breach Restoration Expenses, Cyber Investigation Expenses, Cyber Business Interruption and Extra Expense, Cyber Extortion, and Cyber Theft Insuring Agreements:

1. Discovery of a **Cyber Expense** is deemed to occur when any of **You** become aware of circumstances, acts or actual or potential liability to a third party regardless of when the act or acts causing or contributing to such **Cyber Expense** occurred, even if the amount of such **Cyber Expense** does not exceed the deductible stated in the Schedule above or the exact amount or details of such **Cyber Expense** may not be known.

2. **You** shall provide **Us** with written notice of any **Cyber Expense** or potential **Cyber Expense** as soon as practicable, but in no event later than sixty (60) days after any of **You** discover such **Cyber Expense** or potential **Cyber Expense**. The notice must include the nature of the alleged **Security Breach**, **Privacy Breach**, or **Threat**, and the manner in which **You** first became aware of it.

3. **You** shall provide **Us** assistance, information and cooperation, as **We** may require.

4. **You** shall provide **Us** proof of loss, duly sworn to, with full particulars, within six (6) months after discovery.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

# REAL ESTATE SCHEDULED COVERAGES

In consideration of the premium charged it is agreed that:

For the purpose of this endorsement, the following Schedule applies:

| REAL ESTATE COVERAGES | SUB-LIMIT OF LIABILITY (for each **Claim**; not to exceed/ for all **Claims** in the aggregate) | DEDUCTIBLE (each **Claim**) |
|---|---|---|
| Business Broker | $0 / $0 | |
| Construction Manager | $0 / $0 | |
| Fair Housing | $0 / $0 | |
| Insurance Placement | $1,000,000 / $2,000,000 | $7,500 |
| Mold | $0 / $0 | |
| Mortgage Broker | $0 / $0 | |
| Pollution | $0 / $0 | |
| Property Manager for Owned Properties | $1,000,000 / $2,000,000 | $7,500 |
| Real Estate Agent for Constructed or Developed Properties | $0 / $0 | |
| Real Estate Agent for Owned Properties | $0 / $0 | |
| Real Estate Appraiser | $0 / $0 | |
| RESPA Violations | $0 / $0 | |
| Unmanned Aircraft Inspection and Photography | $0 / $0 | |

A separate each **Claim** and aggregate sublimit of liability, and deductible shall apply to each Real Estate Coverage shown on the Real Estate Coverage Schedule ("Schedule") above as applicable.

A.   Section C.1. Limit of Liability is amended to include:

The each **Claim** sublimit of liability shown on the Schedule above is the most **We** will pay for the sum of all **Loss** arising out of a single **Claim**, **Supplemental Coverage Matter** or a series of related **Claims** and **Supplemental Coverage Matters** in any way involving the corresponding coverage on the Schedule, regardless of the number of persons or entities insured under this **Policy**, number of **Claims** made or the number of persons or entities making **Claims** during the **Policy Period** or during



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

any **Extended Reporting Period**, if any. The each **Claim** sublimit of liability shown on the Schedule above will be included within, and not in addition to, the aggregate limit of liability as shown in Item 3.. of the Declarations Page.

If no each **Claim** sublimit of liability for the corresponding coverage is indicated on this endorsement Schedule, the corresponding sublimit is zero ($0).

The aggregate sublimit shown on the Schedule above is the most **We** will pay for the sum of all **Loss** for all **Claims** and **Supplemental Coverage Matters** in any way relating to the corresponding coverage on the Schedule which amount will be included within, and not in addition to, the aggregate Limit of Liability as shown in Item 3. of the Declarations page. If no aggregate **Claim** sublimit of liability for the corresponding coverage is indicated on this endorsement Schedule, the corresponding sub-limit is zero ($0).

B.   Section C.2. Deductible, paragraph b., is deleted and replaced by:

   b.   If **We** request, and **You** agree, to use **Mediation** to resolve any **Claim** brought against **You**, and if the **Claim** is resolved by **Mediation** prior to commencement of litigation and within 180 days of the date such **Claim** being made, **Your** deductible obligation for that **Claim** will be reduced by 50%, subject to a maximum reduction of $5,000.

C.   Section C.2. Deductible is amended to include:

The deductibles shown on this endorsement Schedule apply to each **Claim** and **Supplemental Coverage Matter** relating to the corresponding Real Estate Coverages. If no deductible is indicated on this endorsement Schedule for the service, the deductible for **Claims** and **Supplemental Coverage Matters** relating to the service will be the deductible shown on the Declarations page.

If different parts of a **claim** are subject to different deductibles**,** the applicable deductible will be applied separately to each part of such **claim** but the sum of such deductibles shall not exceed the largest applicable deductible

**Your** deductible obligation for a **Claim** will be reduced by 50%, subject to a maximum reduction of $2,500, if the following conditions are met and such documentation is provided to us with the initial notice of **Claim**:

1)   A seller disclosure form was signed by the seller and acknowledged by the buyer prior to closing;

2)   A home warranty was received by the buyer prior to or at closing;

3)   A written home inspection report was issued by a licensed or certified home inspector and provided to the buyer prior to closing; and

4)   A state or local board approved standard sales contract was utilized.

The deductible reductions provided above may not be combined. Only one reduction in **Your** deductible obligation may be applied to a single **Claim**. A deductible reduction will not be applied:

5)   To any subsequent **Claims** in the **Policy Period**.

6)   If the **Policy** is cancelled, terminated, non-renewed or subject to an **Extended Reporting Period**.

D.   Section D. Definitions is amended to include:

**Constructed or Developed Property** means real property developed or constructed by:

   1.   Any **Insured**;



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

    2.   Any entity in which the **Insured** had a financial or a contemplated financial interest;

    3.   Any entity with a financial interest or contemplated financial interest in the **Named Insured**; or

    4.   Any entity under the same financial control as the **Named Insured**.

**Construction Manager** means a person or entity providing the following services in connection with the construction, reconstruction or renovation of real property:

    1.   Management of facility construction, reconstruction or renovation plans;

    2.   Development or management of construction, reconstruction and renovation contracts or subcontracts; or

    3.   Development of loss control and risk management plans in connection with the construction, reconstruction or renovation.

**Guaranteed Sale Listing Contract** means a written agreement between the **Named Insured** and the seller of real property, in which the **Named Insured** agrees to purchase such property if it is not sold under the listing agreement in the time frame specified by the agreement.

**Immediate Family** means a spouse, ex-spouse, sibling(s), children, parent(s) or **Domestic Partner**.

**Insurance Placement** means placement of property and casualty insurance for a property to which the **Named Insured** provides **Professional Services** as a **Property Manager,** through an insurance agent or broker.

**Licensed Remote Pilot** means an individual that has satisfied required, federal, state and local licensing and certification requirements to operate an **Unmanned Aircraft**, and all licensing and certification requirements are valid and inforce during the time **You** are operating an **Unmanned Aircraft** as part of **Professional Services**.

**Owned Property** means real property owned by:

    1.   Any **Insured**;

    2.   Any entity in which the **Insured** had a financial or a contemplated financial interest;

    3.   Any entity with a financial interest or contemplated financial interest in the **Named Insured**; or

    4.   Any entity under the same financial control as the **Named Insured**.

**Professional Real Estate Services** means those services which **You** perform for others for a fee, including advice given, as a **Real Estate Agent** or **Property Manager**.

**Property Manager** means a person or entity providing the following services regarding a commercial or residential property, including a Real Estate Owned (REO) property, foreclosure, or short sale, provided that all necessary licenses or certifications are held by the a person or entity at the time of the **Wrongful Act**:

    1.   Development and implementation of management plans and budget;

    2.   Oversight of physical maintenance of property;

    3.   Solicitation, evaluation, selecting and securing of tenants, management of tenant relations, collection of rent and processing evictions;



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

4. Development, implementation and management of loss control and risk management plans for real property;

5. Development, implementation and management of contracts and subcontracts necessary for the daily functioning of the property; or

6. Personnel administration and record keeping in connection with a managed property;

**Property Manager** does not include **Construction Manager**.

**Real Estate Agent** means a person or entity providing the following services regarding a commercial or residential real property, provided that all necessary licenses or certifications are held by the **Insured** at the time of the **Wrongful Act**: agent, auctioneer, broker, referral agent, consultant or counselor in the sale or leasing of commercial or residential real estate, relocation agent, photographer, real estate stager, notary public, and **Short Term Escrow Agent**.

**Short Term Escrow Agent** means an **Insured** who, in connection with the sale or purchase of real property, receives or holds funds in, or distributes funds from, an escrow or trust account where all such funds are to be fully distributed within twelve (12) months from the date received.

**Unmanned Aircraft** means an aircraft operated under remote control and without a human pilot on board.

**Unmanned Aircraft Inspection and Photography** means inspection or photography utilizing an **Unmanned Aircraft** by an individual who is a **Licensed Remote Pilot** and complies with Federal Aviation Administration (FAA) operating limitations for small unmanned aircraft systems.

E. Section E. Exclusions, Paragraphs 5., 6., 10., 14., and 17. are deleted and replaced by:

5. Pollution

Based upon, arising out of, or in any way related to, directly or indirectly:

a. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

b. Any directive, request or voluntary decision that any **Insured** monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

c. Any governmental or regulatory directive to request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

d. The failure to discover, disclose, or report of the existence or amount of **Pollutants**;

However subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving failure to disclose, report, or advise of the existence of **Pollutants** (hereafter "failure to disclose **Pollutants**"), this exclusion shall not apply to failure to disclose **Pollutants**.

6. Fungi

Based upon, arising out of, or in any way related to, directly or indirectly:

a. The presence of, suspected presence of or exposure to:

1) Fungi, including but not limited to mold, mildew and yeast; or

2) Bacteria or viruses; or



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

      3)  Dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in 1) or 2) above, from any source whatsoever; or

    b.  The failure to discover or disclose the existence of any of the organisms listed in a. above, from any source whatsoever (hereafter "failure to disclose mold"); or

    c.  Any loss, cost or expense arising out of the testing for, monitoring of, cleaning up of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of or any other response to or assessment of the effects of any of the items in a. above, from any source whatsoever

However subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving failure to disclose mold, this exclusion shall not apply to failure to disclose mold.

10.  <u>Employment Practices</u>

Based upon, arising out of, or in any way related to, directly or indirectly,

    a.  Any **Employment Practices** liability; or

    b.  Any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy.

However subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving discrimination, exclusion 10.b. shall not apply to violations of the Fair Housing Act of 1968, 42 USCS § 3601, et seq. (as amended).

14.  <u>Government Body</u>

Against **You**, that is brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; however, this exclusion shall not apply

    a.  Where the **Claim** alleges a **Wrongful Act** in **Your** rendering **Professional Services** to such entity;

    b.  For a **Disciplinary Proceeding**; or

    c.  For violations of the Real Estate Settlement and Procedures Act (hereafter RESPA) provided such RESPA allegations are subsequently disproved by a final adjudication favorable to the **Insured** then **We** shall reimburse **Claim Expenses** subject to the corresponding sublimit and deductible in the Schedule above;

17.  <u>Insurance Placement</u>

Based upon, arising out of, or in any way related to, directly or indirectly, **Your** advising, requiring, obtaining, or failing to advise, require, or obtain, any bond, suretyship or other form of insurance. However subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving **Insurance Placement**, this exclusion shall not apply to **Insurance Placement** if the following conditions are met:

    a.  The **Insured** follows the recommendations of, and places the insurance through, a properly licensed and insured Insurance agent or broker;

    b.  The insurance agent or broker is not an **Insured** or affiliated with any **Insured**; and



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

    c.  It is further agreed that this **Policy** shall not apply to intentional failure to effect or renew any insurance.

F.  Section E. Exclusions is amended to include:

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s)**:

Based upon, arising out of, or in any way relating to, directly or indirectly:

a.  Any **Insured's** inability or refusal to pay or collect premium, or tax monies;

b.  Any promises, warranties, or guarantees made by any **Insured** as to:

    1)  The current and/or future value of any property;

    2)  Potential sales, earnings, profitability, or economic value; or

    3)  The suitability of a property for a specific use;

c.  Any services as a property developer, builder, loss control inspector, risk manager, safety inspector, insurance agent, insurance broker, mortgage banker, title abstractor, and/or title agent;

d.  Any services as a **Construction Manager**, however subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving services as a **Construction Manager**, this exclusion shall not apply to services as a **Construction Manager** for maintenance or minor, non-structural renovations that do not require the stamp of an architect or engineer;

e.  Advice on financing for any portion of any construction, reconstruction or renovation, or any estimate of construction, reconstruction or renovation costs;

f.  Any faulty workmanship by contractors or subcontractors of an **Insured**, including materials, parts or equipment supplied by an **Insured**;

g.  Any construction means, methods, techniques, sequences or procedures used in any construction, reconstruction or renovation;

h.  Any implementation or management of any loss control or risk management plans;

i.  Any services as a real estate appraiser, however subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving services as a real estate appraiser, this exclusion i. shall not apply to services as a real estate appraiser;

j.  The appraising of any property developed, constructed or owned by:

    1)  Any **Insured** at the time of the **Wrongful Act** giving rise to the **Claim**;

    2)  Any entity in which the **Insured** had, at the time of the **Wrongful Act** giving rise to the **Claim**, a financial interest;

    3)  Any entity which had, at the time of the **Wrongful Act** giving rise to the **Claim**, a financial interest in the **Named Insured**; or

    4)  Any entity which at the time of the **Wrongful Act** giving rise to the **Claim**, was under the same financial control as the **Named Insured**;

k.  Any services as a business broker, however subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving services as a business broker, this exclusion k. shall not apply to services as a business broker;



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

l.  Any services as a mortgage broker, however subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving services as a mortgage broker, this exclusion l.shall not apply to services as a mortgage broker;

m.  **Unmanned Aircraft Inspection and Photography**, however subject to the corresponding sublimit and deductible in the Schedule above, this exclusion shall not apply to **Unmanned Aircraft Inspection and Photography**;

n.  The formation, syndication, operations or administration of any property syndication, or real estate investment trust or any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, selling or maintaining real property including those syndications, trusts, corporations, partnerships or joint ventures in which the **Insured** has, had or intended to have a participating interest directly or indirectly in the profits or losses thereof;

o.  Any actual or attempted sale, purchase, leasing, appraisal, or property management of **Owned Property**. However, in regard to:

  1)  Services as **Property Manager** that in any way involve **Owned Property**, however subject to the corresponding sublimit and deductible in the Schedule above, this exclusion o.1) shall not apply if:

    (a)  The **Claim** is not brought or maintained by, on behalf of, in the right of, or at the direction of any other owner, or any business entity that is owned, managed or operated, directly or indirectly by any other owner, in any capacity; or

    (b)  If the **Claim** is brought or maintained by, on behalf of, in the right of, or at the direction of any other owner, or any business entity that is owned, managed or operated, directly or indirectly by any other owner, in any capacity, the amounts payable as **Loss** by **Us** will be reduced by that percent of the ownership/equity owned by all **Insureds** and all **Insureds**' **Immediate Family**.

  2)  The actual or attempted sale or leasing of real property in which the combined ownership interest of all **Insureds** was less than 20% at the time of the sale or lease, this exclusion o.2) shall not apply;

  3)  The actual or attempted sale of residential real property, consisting of a 1-4 family dwelling, owned by any **Insured**, subject to the corresponding sub-limit and deductible in the Schedule above this exclusion o.3) shall not apply when all of the following conditions are met in connection with such sale:

    (a)  A seller disclosure form was signed by the seller and acknowledged in writing by the buyer prior to closing, and such seller disclosure also included a full disclosure of the relationship between the **Insured** and the seller;

    (b)  A home warranty was received by the buyer prior to or at closing;

    (c)  A written home inspection report was issued by a licensed or certified home inspector and provided to the buyer prior to closing; and

    (d)  A state or local board approved standard sales contract was utilized;

  4)  The actual or attempted sale of real property owned by the **Named Insured** if the property was acquired by the **Named Insured** under a **Guaranteed Sale Listing Contract**, and from acquisition to resale the title is held by the **Named Insured** for twelve (12) months or less, and



# Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 2 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

continually offered for sale by the **Named Insured**, this exclusion o.4) shall not apply;

5) The actual or attempted sale, leasing, or property management of any **Insured's** residential real property by another **Insured**, who does not have an ownership interest in the property, and provided no **Insured** with an ownership interest in the property provides any **Professional Services**, including supervision, with regard to the property, this exclusion o.5) shall not apply;

p. Any actual or attempted sale of **Constructed or Developed Property**, however subject to the corresponding sublimit and deductible in the Schedule above, which shall apply to all **Loss** in any way involving **Constructed or Developed Property**, this exclusion p. shall not apply when all of the following conditions are met:

1) A seller disclosure form was signed by the seller and acknowledged in writing by the buyer prior to closing, and such seller disclosure also included a full disclosure of the relationship between the **Insured** and the developer/builder;

2) A home warranty was received by the buyer prior to or at closing; and

3) The developer/builder maintains a contractor's professional liability policy and complies with the terms of that policy.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 3 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

## PROFESSIONAL LIABILITY ENHANCEMENTS

In consideration of the premium charged it is agreed that:

A.   Item 6. of the Declarations page is amended to include:

| SUPPLEMENTAL COVERAGE | LIMIT |
|---|---|
| Cancelled Conferences | $25,000 for each Policy Period |
| Counseling Support | $5,000 for each Claim; not to exceed $5,000 for all Claims in the aggregate |
| Emergency Web Hosting | $500 for each Policy Period |
| Pet Boarding | $500 for each Claim; not to exceed $500 for all Claims in the aggregate |
| Real Estate Emergency Consulting | $50,000 for each Policy Period |
| Replacement of Key Officers | $50,000 or ten (10) times the annual premium paid for this Policy, whichever is lesser, for each Policy Period |
| Temporary Meeting Space | $25,000 for each Policy Period |
| Travel Disruption Due to Terrorism | $50,000 for each Policy Period |
| Workplace Violence Counseling | $50,000 for each Policy Period |

B.   Section A.4. Supplemental Coverage is amended to include:

Cancelled Conferences

**We** will reimburse **You** for any business-related conference expenses, paid by the **Named Insured** and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a **Natural Catastrophe** or a **Communicable Disease** outbreak that forces the cancellation of the conference.

It is further agreed as follows:

1.   The employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

2.   The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.



# Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 3 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

Counseling Support

**We** will reimburse **You** for emotional counseling expenses incurred by an **Insured** directly as a result of a **Claim** made against you during the **Policy Period**. The emotional counseling expenses incurred must have been for **Insureds** directly involved in the **Claim**.

Emergency Web Hosting

**We** will reimburse **You** for emergency web hosting fees necessitated by the **Named Insured's** need to relocate web hosting due to the **Unforeseeable Destruction** of the **Principal Location** during the **Policy Period**. Coverage will exist only for web hosting required for a web site.

Pet Boarding

**We** will reimburse **You** up to $50 per day for an individual **Insured** for reasonable pet boarding expenses incurred for attendance at hearings, trials, mediations, arbitrations or depositions, at **Our** request or with **Our** consent, by such **Insured**.

Real Estate Emergency Consulting

**We** will reimburse **You** for a real estate agent's fee or real estate consultant's fee necessitated by the **Named Insured's** need to relocate due to the **Unforeseeable Destruction** of the **Principal Location** during the **Policy Period**.

Replacement of Key Officers

**We** will reimburse **You** for **Expenses for Replacement of Key Officers** if the chief executive officer, president, managing partner or managing member suffers an **Injury** during the **Policy Period** which results in the loss of life during the **Policy Period**.

Temporary Meeting Space

**We** will reimburse **You** for rental of meeting space which is required by the temporary unavailability of the **Principal Location** due to the failure of a climate control system, or leakage of a hot water heater during the **Policy Period**. Reimbursement is only provided for the renting of temporary meeting space required for meeting with parties who are not insured under this policy.

Travel Disruption Due to Terrorism

**We** will reimburse an individual **Named Insured**, or current principal, partner, director or officer of the **Named Insured**, for **Emergency Travel Expenses** required due to a **Certified Act of Terrorism** during the **Policy Period**..

Workplace Violence Counseling

**We** will reimburse **You** for emotional counseling expenses incurred directly as a result of **Workplace Violence** during the **Policy Period**. The emotional counseling expenses incurred must have been for:

1. **Insureds** who were victims of, or witnesses to, **Workplace Violence**;

2. The spouse or **Domestic Partner** of **Insureds** who were victims of, or witnesses to, **Workplace Violence**; and

3. Any client who directly witnessed **Workplace Violence**.



# Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 3 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

C.   Section D. Definitions is amended to include:

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Federal Terrorism Risk Insurance Act. The Federal Terrorism Risk Insurance Act sets forth the following criteria for a **Certified Act of Terrorism**:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Federal Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Communicable Disease** means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent.

**Emergency Travel Expenses** mean:

1.   Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of, a **Certified Act of Terrorism**; and

2.   The net additional expense incurred resulting from re-scheduling comparable transport, to replace a similar scheduled transport canceled by a commercial transportation carrier in direct response to a **Certified Act of Terrorism**;

provided that these expenses are on behalf of the **Named Insured** and not otherwise reimbursable.

**Expenses for Replacement of Key Officers** means the following reasonable expenses:

1.   Costs of advertising the employment position opening;

2.   Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

3.   Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, costs to verify background and references of applicants, and legal expenses incurred to draw up an employment contract.

**Injury** means physical damage to the body caused by violence or an accident.

**Natural Catastrophe** means hurricane, tornado, earthquake, tusunami, meteor impact, volcanic eruption, or flood.

**Principal Location** means the first address of the **Named Insured** listed on the Declarations page.

**Unforeseeable Destruction** means damage resulting from a **Certified Act of Terrorism**, fire, collision or collapse which renders the **Principal Location** completely unusable.

**Workplace Violence** means any actual or alleged intentional and unlawful use of deadly force with intent to cause harm, occurring at the **Principal Location** and resulting in **Injury**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 4 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

## CLAIM EXPENSES IN ADDITION TO LIMIT OF LIABILITY

In consideration of the premium charged it is agreed that:

Section C.1. Limit of Liability, paragraphs a., b., and c., are deleted and replaced by:

a.   The Limit of Liability shown on Item 3.a. of the Declarations page per each **Claim** is the most **We** will pay for the sum of all **Damages** arising out of a single **Claim** or a series of related **Claims**, regardless of the number of persons or entities insured under this **Policy**, number of **Claims** made or the number of persons or entities making **Claims** during the **Policy Period** or during any **Extended Reporting Period**, if any.

b.   The amount of $1,000,000 is the Limit of Liability for **Claim Expenses** arising out of all **Claims** first made against an **Insured** during the **Policy Period** and any **Extended Reporting Period**, if any. The Limit of Liability for **Claim Expenses** is in addition to any applicable limit of liability stated in Item 3. of the Declarations page. For any sublimit, **Claim Expenses** are included within and not in addition to, the applicable sublimit.  In the event the Limit of Liability for **Claim Expenses** is exhausted, then **Claim Expenses** will be subtracted from the Limit of Liability stated in Item 3. of the Declarations page, with the remainder, if any, being the amount available to pay for **Damages**.

c.   The Aggregate limit shown on Item 3.b. of the Declarations page is the most **We** will pay for the sum of all **Damages** for all **Claims** under this **Policy**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 5 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

# SPLIT LIMITS – TWO TIERS

In consideration of the premium charged it is agreed that:

Section C:1. Limit of Liability, paragraphs a. and c., are deleted and replaced by:

a.  With respect to the Limit of Liability per **Claim** limit shown on Item 3.a. of the Declarations page, the most **We** will pay for the sum of all **Damages** and **Claims Expenses** arising out of a single **Claim** or a series of related **Claims**, regardless of the number of persons or entities insured under this **Policy**, number of **Claims** made or the number of persons or entities making **Claims** during the **Policy Period** or during any **Extended Reporting Period**, if any:

    1)  If the **Wrongful Act** or **Personal Injury** which forms the basis of a **Claim**, took place in whole or in part on or after the **Retroactive Date** but prior to 10/01/2020, the limit shall not exceed:

        ☒ Damages  $1,000,000

        ☒ Claims Expenses $1,000,000

        ☐ **Damages** and **Claims Expenses** combined

    2)  If the **Wrongful Act** or **Personal Injury** which forms the basis of a **Claim** took place in whole or in part on or after , the limit shall not exceed:

        ☒ **Damages** $2,000,000

        ☒ Claims Expenses $1,000,000

        ☐ **Damages** and **Claims Expenses** combined

c.  With respect to Aggregate limit shown on Item 3.b. of the Declarations page, the most **We** will pay for the sum of all **Damages** and **Claims Expenses** for all **Claims** under this **Policy**:

    1)  If the **Wrongful Act** or **Personal Injury** which forms the basis of a **Claim** took place in whole or in part on or after the **Retroactive Date** but prior to 10/01/2020, the limit shall not exceed:

        ☒ **Damages** $2,000,000

        ☒ **Claims Expenses** $1,000,000

        ☐ **Damages** and **Claims Expenses** combined

    2)  If the **Wrongful Act** or **Personal Injury** which forms the basis of a **Claim** took place in whole or in part on or after , the limit shall not exceed:

        ☒ **Damages** $2,000,000

        ☒ **Claims Expenses** $1,000,000

        ☐ **Damages** and **Claims Expenses** combined

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for



Endorsement

Coverage: MPL

Endorsement Number: 5

Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC

Policy Number: LH6-H024735-02

Issued By: The Hanover Insurance Company

Effective Date: 10/01/2021

convenience and form no part of the terms and conditions of coverage.



# Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 6 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

## BODILY INJURY AND PROPERTY DAMAGE CARVEBACK
## WITH COMMERCIAL GENERAL LIABILITY INSURANCE (SUBLIMIT)

In consideration of the premium charged it is agreed that:

Section E.7. of Exclusions is deleted and replaced by:

7.  Bodily Injury or Property Damage

Based upon, arising out of, or in any way related to, directly or indirectly, **Bodily Injury** or **Property Damage**; however, subject to the aggregate limit stated below, this exclusion shall not apply to **Bodily Injury** or **Property Damage** directly arising from **Professional Services**, provided as a condition precedent to coverage, **You** obtain and maintain during the **Policy Period** commercial general liability insurance with a minimum limit of liability of $1,000,000.

**Our** aggregate Limit of Liability for **Damages** and **Claim Expenses** from all **Claims** for **Bodily Injury** or **Property Damage** is $250,000 which amount will be included within, and not in addition to, the Limit of Liability set forth in Item 3. of the Declarations page.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 7 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

## LIMITED ADDITIONAL INSURED

In consideration of the premium charged it is agreed that:

Section D. Definitions is amended to include:

**Limited Additional Insured** means a person or entity to which this **Policy** applies only with respect to a **Claim** solely alleging vicarious liability imposed due to a **Wrongful Act** in the rendering or failure to render **Professional Services** by an **Insured**. No coverage is afforded to the **Limited Additional Insured** for any **Claim** alleging, or in any way involving, any independent act, error or omission of the **Limited Additional Insured**.

It is hereby understood and agreed that Related entities established for ownership of real estate properties being managed by the named insured, is a **Limited Additional Insured**.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

 Endorsement

| | |
|---|---|
| Coverage:  MPL | Endorsement Number:  8 |
| Issued To:  Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number:  LH6-H024735-02 |
| Issued By:  The Hanover Insurance Company | Effective Date: 10/01/2021 |

# SPECIFIC ENTITY EXCLUSION

In consideration of the premium charged it is agreed that:

Section E. Exclusions is amended to include:

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s)**:

Based upon, arising out of, or in any way relating, directly or indirectly, to:

Ryan Whelan

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 9 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

## LANDLORD TENANT STATUTE EXCLUSION

In consideration of the premium charged it is agreed that:

Section E. Exclusions is amended to include:

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s)**:

<u>Landlord Tenant Statute</u>

Based upon, arising out of, or in any way relating to, directly or indirectly, any statutory penalties, fines, assessments, attorney fees or any interest, for any actual or alleged violation of any federal, state or local statute, ordinance or regulation regarding the rights and obligations of landlords and tenants of dwelling units; however, this exclusion does not apply to liability **You** would have in the absence of such statute, ordinace or regulation regarding the rights and obligations of landlords and tenants of dwelling units;

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



# Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 10 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

## MODIFY CONSENT TO SETTLE

In consideration of the premium charged it is agreed that:

Section B. Defense and Settlement, third paragraph, subparagraph 2., is deleted and replaced by:

2.  70 percent of **Damages** in excess of the amount for which the **Claim** could have been settled plus 70 percent of **Claim Expenses** incurred after the time of **Your** refusal.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.



Endorsement

| | |
|---|---|
| Coverage:  MPL | Endorsement Number: 11 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

# GEORGIA STATE AMENDATORY ENDORSEMENT

In consideration of the premium charged it is agreed that:

A.  Section H.1. of Conditions is deleted and replaced by:

    1.  <u>Cancellation and Non-Renewal</u>

        a.  **We** may cancel this **Policy** by mailing written notice of cancellation to the **Named Insured**:

            1)  Ten (10) days before  such cancellation is effective,  for any reason if this **Policy** has been in effect for less than sixty (60) days and is not a renewal policy **We** issued;

            2)  When this **Policy** has been in effect for more than sixty (60) days, or is a renewal of a policy **We** issued, notice shall be provided  as follows:

                a)  Ten (10) days before  such cancellation is effective  for nonpayment of premium, unless such premium is paid within such ten (10) day period; or

                b)  Forty-five (45) days before  such cancellation is effective  for any other reason.

            Regardless of the reason for cancellation, return of unearned  premium shall be calculated on a pro rata basis.

        b.  The **Named Insured** may cancel this **Policy** for itself and all other **Insureds** by written notice to **Us** stating when thereafter the cancellation shall be effective.

        c.  **We** are not required to renew this **Policy**. However,  written notice of **Our** intent to non-renew this **Policy** shall be sent to the **Named Insured** not less than forty-five  (45) days prior to expiration of the **Policy Period**.

        d.  Notices of cancellation or nonrenewal  will be mailed with a statement of the specific reason for cancellation or nonrenewal  and shall be sent by first class mail to the **Named Insured's** last known address.

        e.  If we offer to renew this **Policy** with of an increase of 15% or more in the renewal  premium (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable  coverages),  or a change in **Policy** provisions  that would limit or restrict coverage,  **We** will mail notice to **You** in writing at least forty-five  (45) days prior to the end of the **Policy Period**.

B.  Section H.9. Other Insurance is deleted and replaced by:

    9.  <u>Other Insurance</u>

        If **You** have other insurance which applies to a **Claim** covered by this **Policy**, this **Policy** will contribute on a pro rata basis with any other valid and collectible insurance, whether the other insurance is primary, pro rata, contributory, excess, contingent or on any other basis. In such instance, pro rata means that **We** will not be liable for a greater proportion of such **Damages** and **Claim Expenses** than the applicable Limit of Liability stated in this **Policy** bears to the total applicable Limit of Liability of all valid and collectible insurance of the **Insured** against such **Damages** and **Claim Expenses**. However,  if the other insurance is written to apply as specific excess insurance over  this **Policy's** Limit of Liability, or the other insurance is an



# Endorsement

| | |
|---|---|
| Coverage: MPL | Endorsement Number: 11 |
| Issued To: Wesley Apartment Homes, LLC; Avila Real Estate LLC | Policy Number: LH6-H024735-02 |
| Issued By: The Hanover Insurance Company | Effective Date: 10/01/2021 |

**Extended Reporting Period** endorsement attached to another policy that **We** issued, this **Policy** will be primary.

If two or more policies **We** issued apply to the same **Claim** or **Claims**, **We** will not pay more than the highest applicable Limit of Liability.

All other terms and conditions remain unchanged. The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.