# Composite Exhibit A

**General Civil and Domestic Relations Case Filing Information Form**

☒ Superior or ☐ State Court of ___Coweta___ County

⊕ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

**SUV2022001394**

| For Clerk Use Only | | NOV 22, 2022 02:48 PM |
|---|---|---|
| Date Filed _11-22-2022_ <br> **MM-DD-YYYY** | Case Number _SUV2022001394_ | *Niki Sewell* <br> Niki Sewell, Clerk <br> Coweta Superior Court |

**Plaintiff(s)**

| Watkins, Kevin T Dr. | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

| CTCA Physicians Group of Georgia, LLC | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _Maestas, Holly_   **Bar Number** _153092_   **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☒ Contract
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
**Case Number**                 **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.20

## SUPERIOR COURT OF COWETA COUNTY
## STATE OF GEORGIA

🏛 **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

**SUV2022001394**

**NOV 22, 2022 02:48 PM**

*Niki Sewell*
Niki Sewell, Clerk
Coweta Superior Court

CIVIL ACTION NUMBER  <u>SUV2022001394</u>

Watkins, Kevin T Dr.

---
**PLAINTIFF**

**VS.**

CTCA Physicians Group of Georgia, LLC,
DBA f/k/a CTCA Physicians Group of
Georgia, Inc., f/k/a Cancer Treatment Centers
of America Professional Corporation of
Georgia, P.C.

---
**DEFENDANT**

### SUMMONS

TO: CTCA PHYSICIANS GROUP OF GEORGIA, LLC

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Holly Maestas**
> **Lawson & Beck, LLC**
> **1125 Commerce Drive, Suite 300**
> **Peachtree City, Georgia 30269**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 22nd day of November, 2022.**

Clerk of Superior Court

*Niki Sewell*

Niki Sewell, Clerk
Coweta Superior Court

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

**SUV2022001394**

NOV 22, 2022 02:48 PM

*Niki Sewell*
Niki Sewell, Clerk
Coweta Superior Court

## IN THE SUPERIOR COURT OF COWETA COUNTY
## STATE OF GEORGIA

KEVIN T. WATKINS, )
)
    Plaintiff, )
)
    v. )    CIVIL ACTION FILE
)
CTCA PHYSICIANS GROUP OF )    NO. _____
GEORGIA, LLC f/k/a CTCA PHYSICIANS )
GROUP OF GEORGIA, INC. f/k/a CANCER )
TREATMENT CENTERS OF AMERICA )
PROFESSIONAL CORPORATION OF )
GEORGIA, P.C., )
)
    Defendant. )

---

### COMPLAINT FOR BREACH OF CONTRACT

COMES NOW, KEVIN T WATKINS, Plaintiff in the above-styled civil action (hereinafter referred to as "Plaintiff"), and files this, his *Complaint for Breach of Contract* (hereinafter referred to as the "Complaint") against CTCA PHYSICIANS GROUP OF GEORGIA, LLC f/k/a CTCA PHYSICIAN GROUP OF GEORGIA, INC., f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C., Defendant in the above-styled civil action (hereinafter referred to as the "Defendant"), and respectfully shows this Honorable Court as follows.  The Plaintiff and Defendant will collectively be referred to as the "parties."

### STATEMENT OF JURISDICTION & VENUE

1.

Plaintiff is a resident of Georgia.

2.

Defendant is a Georgia limited liability company.  Defendant may be served through its registered agent Cogency Global Inc. at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

3.

Jurisdiction is appropriate in this Court.

4.

Venue is appropriate in this Court because Defendant is a resident of Coweta County, Georgia.

## STATEMENT OF FACTS & CLAIMS

5.

On or about April 11, 2014, the parties entered into a written contract entitled *Employment Agreement* in which both parties would be required to perform certain duties.  The *Employment Agreement* is attached as Plaintiff's Exhibit A.  This document will be referred to in this complaint as the "Original Contract."

6.

On or about August 18, 2017, the parties executed the first written amendment to the *Employment Agreement* which is entitled *First Amendment to Amended and Restated Employment Agreement,* and it is attached as Plaintiff's Exhibit B.  This document will be referred to in this complaint as "Contract Amendment One."

7.

On or about April 8, 2022 (with an effective date of January 1, 2022), the parties executed the second written amendment to the *Employment Agreement* which is entitled *Second Amendment to Employment Agreement*, and it is attached as Plaintiff's Exhibit C. This document will be referred to in this complaint as "Contract Amendment Two."

8.

The Original Contract, Contract Amendment One, and Contract Amendment Two will be collectively referred to in this Complaint as the "Contract."

9.

Defendant agreed, in the Original Contract, that when Plaintiff was on call, that this call would "be shared equally with other surgical oncology staff physicians." Original Contract, § 5.1. Defendant agreed in Contract Amendment Two, that when Plaintiff was on call, that these call days would "coincide[e] with surgical oncology days." Contract Amendment Two, § 9.9.

10.

Despite these limits to Plaintiff's call duties, Defendant breached these terms on the Contract and required Plaintiff to take call 24/7. When Plaintiff pointed this out to Defendant, Defendant retaliated against Plaintiff and abruptly terminated him, without cause, in violation of the terms of the Contract.

11.

If Defendant terminates Plaintiff without cause, the Contract requires "at least [ninety (90) days prior written notice] of intent to terminate," and requires Defendant "to pay [Plaintiff's] base salary . . . for . . . one hundred eighty (180) days from the date of the notice of termination."

Original Contract, § 4.1; Contract Amendment One, § 1.   Defendant may only "immediately terminate" Plaintiff "for cause."  Original Contract, § 4.2.

12.

Despite these limits on how Plaintiff may be terminated, Defendant orally terminated Plaintiff on or about August 19, 2022.

13.

This abrupt, verbal termination is a breach of Contract which caused Plaintiff damages which are accruing.

14.

Defendant gave written notice of Plaintiff's termination on August 30, 2022.

15.

Defendant failed to pay the proper contracted amount of Plaintiff's base salary, between August 19, 2022 and August 30, 2022, which is $11,301.37.

16.

Defendant failed to pay the proper contracted amount of Plaintiff's base salary for 180 days following written notice of termination, which is $184,931.51.

17.

Defendant failed to pay the proper contracted amount of Plaintiff's call salary ($1,444.00/month), between August 19, 2022 and August 30, 2022, which is $529.47.

18.

Defendant failed to pay the proper contracted amount of Plaintiff's call salary ($1,444.00/month) for the 90-day period following written termination, which is $4,332.00.

19.

As a further result of Defendant's breach of contract, Plaintiff is entitled to additional damages; including all other unpaid compensation, unreimbursed expenses, incentive compensation, call compensation, 401K and HSA benefits, and medical coverage; which are owed prior to Defendant's written termination of the Plaintiff on August 30, 2022; and which are owed during the 90-day notice period after the written termination August 30, 2022; in an amount to be proven at trial.

20.

Furthermore, the 90-day notice period was specifically drafted for Plaintiff to be able to complete tasks which are material and standard for surgeons in this industry.

21.

As a result of Defendant's breach of contract, Plaintiff was unable to complete necessary tasks required for minimum patient care and continuity of care.

22.

It is standard practice in this industry for doctor-patient transition letters to be delivered to Plaintiff's patients.

23.

Due to Defendant's breach, Plaintiff was unable to process emails and other correspondence needed to process administrative needs for Plaintiff's unreimbursed expenses.

24.

Plaintiff was unable to issue correspondence needed to ensure Plaintiff could limit his exposure to malpractice liability and complaints on his license to the Georgia Composite Medical Board.

25.

Plaintiff was unable to secure access to data related to his credentialing with future employers, hospitals, providers, and payers; his continuing medical education material; his personal education presentations; and other personal documents.

26.

In additional to the immediate monetary damages, Plaintiff suffered additional damages to his reputation, his malpractice insurability, his liability for future claims, his liability for complaints, and his ability to obtain a new position, in an amount to be proven at trial.

27.

Plaintiff has suffered monetary damages which include unpaid compensation and benefits, consequential and special damages to Plaintiff's reputation in his profession and in the community, emotional damages and pain and suffering from the stress following abrupt termination and being cut off from Plaintiff's personal and professional items, tasks, and necessities. This amount will be proven at trial.

28.

Plaintiff specifically pleads that Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expenses. Accordingly the Court or jury should order that Defendant pay, as part of Plaintiff's damages, expenses of litigation, including costs and attorney's fees. O.C.G.A. § 13-6-11.

29.

Plaintiff specifically pleads that Defendant should be liable for interest on Plaintiff's damages which accrue from the time of Defendant's breach. O.C.G.A. § 13-6-13.

30.

Plaintiff specifically pleads that Defendant has defended against Plaintiff's rightful demands, and that such defenses lacked substantial justification and were interposed for delay, and unnecessarily expanded the proceedings between the parties. O.C.G.A. § 9-15-14(b).

WHEREFORE, Plaintiff requests that the Court:

a) Enter a judgment against the Defendant, and in favor of the Plaintiff, for breach of contract;

b) Order Defendant injunctive and equitable relief, specifically to restore Plaintiff to access to his email, and his personal and professional items, so that Plaintiff can complete tasks and necessities which are material and standard for the medical industry, and which were contemplated in the 90-day notice period in the Contract;

c) Order Defendant to pay Plaintiff compensatory and monetary damages for his salary, unreimbursed expenses, on call pay, incentive compensation, benefits, and other compensation owed to Plaintiff under his Contract;

d) Order Defendant to pay Plaintiff consequential, nominal, compensatory, and special damages as against Defendant to compensate Plaintiff for his mental and emotional distress, anxiety, humiliation, loss of professional and personal reputation, opportunities, lack of access to his personal and professional items, increased liability for malpractice, trouble and expense of transferring over to a new employer, loss of enjoyment of life, in an amount to be determined by a jury;

e) That Plaintiff have a judgment entered his favor, and against Defendant for all damages allowed to him under law;

f)   That Plaintiff recover his attorney's fees, costs, and expenses of litigation as permissible under law.;

g)   That Plaintiff be granted a trial by jury on all issues so triable;

h)   That all costs of this action be case upon Defendant;

i)   That defendant be ordered to pay pre-judgment and post-judgment interest according to law; and

j)   Such other, further, and different relief as this Court deems just and proper.


Respectfully submitted this 22nd day of November, 2022.

LAWSON, BECK & SANDLIN, LLC

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:     (770) 486-8950
Email: holly@lawsonandbeck.com

# Plaintiff's Exhibit A

*(to Complaint for Breach of Contract)*

*FINAL DRAFT 04/11/14*

EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT ("Agreement") is between CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C., a Georgia professional corporation ("PCG"), and KEVIN WATKINS, M.D., a New York resident ("Doctor").

PCG is providing certain services to or for the benefit of patients treating for cancer at Southeastern Regional Medical Center ("CTCA-SE" or "Hospital") located in Newnan, Georgia and desires to employ the services of a qualified physician to serve as surgical oncologist at the Hospital. Doctor has the professional training and experience to provide such services and to serve in such capacity, and is licensed to practice medicine in Georgia. The parties wish to establish an employment relationship as hereinafter provided.

In consideration of the mutual promises and agreements hereinafter set forth herein and for other good and valuable consideration, receipt of which is acknowledged, the parties agree as follows:

1. <u>Incorporation of Recitals</u>.  The recitals set forth above are incorporated by reference and are made an integral part of this Agreement.

2. <u>Effective Date</u>.  This Agreement is entered into and is effective and binding as of August 18, 2014 the "Effective Date" of the Agreement.

3. <u>Term and Termination</u>.   This Agreement shall remain in full force and effect until August 17, 2017 unless terminated as provided in section 4 hereof.

4. <u>Termination.</u>

4.1 At any time either party may terminate this Agreement without cause by giving the other party at least one hundred and twenty (120) calendar days' prior written notice of intent to terminate.  In the event Doctor attempts to terminate this Agreement with less than one hundred twenty (120) days' notice or ceases performance or fails to provide the full amount of required notice, Doctor shall pay PCG as liquidated damages in an amount equal to all incentive and bonus compensation paid to Doctor in the twelve (12) months prior to termination. In the event that PCG terminates this Agreement pursuant to this Section 4.1, PCG shall continue to pay Doctor's base salary at the rate as described in Section 9.1 below for a period of one hundred eighty (180) days from the date of the notice of termination so long as Doctor continues to work fulltime for PCG hereunder for a period designated by PCG's Administrator (which period shall not exceed one hundred twenty (120) days from the date of termination notice); if Doctor does not continue to work fulltime for PCG during the time period requested by PCG's Administrator, PCG's obligation to make salary installment payments shall terminate on the last day on which Doctor works fulltime for PCG hereunder.

4.2 PCG shall have the right to immediately terminate this Agreement for cause including, without limitation, for any one of the following reasons:

4.2.1   Material Breach of a provision of this Agreement that is not cured after written notice;

4.2.2   Reasonable proof of Professional misconduct of Doctor as determined by PCG or by medical staff of Hospital that is not cured after written notice;

1

*FINAL DRAFT 04/11/14*

4.2.3   Finding of guilty for a felony or a crime involving moral turpitude committed by Doctor;

4.2.4   Repeated acts of professional negligence by Doctor determined by a prospective QA process that are not cured after adequate written notice of initial acts;

4.2.5   Failure of the Doctor to meet any of the standards imposed by the section entitled "Physician Requirements" that are not cured after adequate written notice; or

4.2.6   Doctor's repeated neglect of duty or violation of the Hospital's policies, bylaws or rules or regulations that is not cured after written notice of initial acts.

4.3 In addition, this Agreement shall automatically terminate if Doctor dies or loses Doctor's license to practice medicine in Georgia.

5. Employment Agreement.  PCG hereby agrees to employ Doctor and Doctor agrees to be employed by PCG as a surgical oncologist on the terms and subject to the conditions set forth in this Agreement.   Doctor agrees to serve PCG and to perform those duties related to PCG as may be assigned from time to time by PCG including the following  (collectively, the "Services").

5.1 Doctor hereby agrees to be on call to provide prompt medical care for surgical oncology issues.  This will be shared equally with other surgical oncology staff physicians.

5.2 Doctor shall provide quality surgical oncology services with respect to PCG programs as directed by PCG.

5.3 When requested by PCG, Doctor shall be responsible for the following as they relate to surgical oncology:

5.3.1. Provide specialty medical management for inpatients and outpatients;

5.3.2   On-going in-service training of clinical and technical staff when deemed necessary;

5.3.3   Participation in clinical research and clinical research design;

5.3.4   Preparation of treatment protocols;

5.3.5   Development of disease oriented treatment to include front-line as well as secondary treatment of either a standard or investigatory nature;

5.3.6   Participation in responding to insurance reimbursement issues;

5.3.7   Creation and maintenance of necessary department medical charts, records and billing forms; and

5.3.8   Preparation of reports for publication including peer review journals.

5.4  Doctor  shall  provide  such  other  services  as  reasonably  requested  by  PCG's Administrator.

2

*FINAL DRAFT 04/11/14*

6.  Scope.  Doctor shall work full time for PCG and shall devote as much time, skill, labor and attention to the affairs and activities of PCG as PCG shall reasonably require to serve the best interests of PCG and the Hospital's inpatients, outpatients and office-based patients, but in no event fewer than forty-five (45) hours per week at the Hospital.

7. Professional Accountability.   In order to maintain internal quality control and to reduce morbidity and mortality and to improve patient care, Doctor agrees to be subject to and to participate in peer review activities established by the rules, regulations and bylaws of the medical staff the Hospital.

8.  Quality Assessment and Improvement.   Doctor shall cooperate with the development and implementation of a quality assessment and improvement system and shall actively participate in QA&I programs including, but not limited to, periodic review of policies and procedures relating to patient care as well as any other quality assessment involvement deemed appropriate by PCG or by the officers of the Hospital.

9.  Compensation and Benefits.    So long as Doctor has not breached any provision of this Agreement and so long as this Agreement remains in effect, during the term of this Agreement:

9.1  PCG shall pay Doctor for services at a rate of Three Hundred Seventy-Five Thousand Dollars ($375,000) per year; payment to be made in twenty-six (26) equal installments per year (every other week), but only as Doctor actually provided services in accordance herewith (PCG shall deduct FICA, withholding taxes and other amounts as required by law);

9.2   PCG shall pay Doctor incentive compensation (from which PCG shall deduct FICA, withholding taxes and other amounts as required by law) at the end of each calendar month in the amount of thirty-seven percent (37%) of the CMS-allowable charges for Doctor's professional services rendered during such calendar month; provided, however, in the event that Doctor remains continuously employed by PCG through July 31, 2015, the amount of such incentive compensation shall not be less than Seventy-Five Thousand Dollars ($75,000); and further provided that Doctor must remain current with Medical Record documentation measured in terms of Medical Record delinquency as defined by the CTCA-SE Medical Staff Bylaws and Rules and Regulations.  Each episode of Medical Record Delinquency will result in a deduction of Five Hundred Dollars ($500) from the bonus each month that Doctor remains delinquent;

9.3 Upon receipt of original documentation, PCG shall reimburse Doctor for Doctor's actual expenditures an amount not to exceed Five Thousand Dollars ($5,000) per year for Doctor's attendance at professional meetings, for the purchase of professional texts and professional journals for Doctor's use, for Doctor's continuing medical education, professional dues, licensing fees, DEA certification, computer and resource materials for CME, and subscriptions previously approved by PCG;

9.4 PCG shall provide Doctor the health, dental, disability and life insurance programs provided by PCG to its similarly situated physician employees, and will provide the opportunity for Doctor to add Doctor's family to these benefits at Doctor's cost consistent with the plan then in existence;

9.5 Doctor shall be eligible to participate in such 401(k) and similar plan(s) as may then be provided by PCG to its similarly situated physician employees, in accordance with the terms thereof;

3

*FINAL DRAFT 04/11/14*

9.6 Upon receipt of appropriate documentation, PCG shall reimburse Doctor for Doctor's actual expenditures for reasonable expenses not to exceed Twenty Thousand Dollars ($20,000) incurred in relocating Doctor's household belongings to the Newnan area;

9.7 PCG shall provide Doctor with six months of housing allowance of $2,000 a month; and

9.8 Upon execution of this Agreement, PCG shall make a loan to Doctor (the "Loan") in the principal amount of Fifty Thousand Dollars ($50,000), which Loan shall bear interest at five percent (5%) on amounts outstanding from time to time. Doctor shall repay the Loan by permitting PCG to offset the incentive compensation described in Section 9.2 above from and after the time that Doctor has actually received Seventy-Five Thousand Dollars ($75,000); provided, however, all amounts owed on the loan shall be repayable immediately in the event that Doctor terminates this Agreement pursuant to Section 4.1 above; and provided further that, in the event that PCG terminates this Agreement pursuant to Section 4.1 above, any amount of the Loan remaining outstanding on the date of such termination shall be forgiven. In addition, Doctor shall have the right to prepay the Loan at any time.

10. Billing.    PCG shall have the exclusive right to bill, collect and retain in its own name the professional service fees for any and all professional services provided by Doctor at CTCA-SE or to PCG patients and other services assigned by PCG. Doctor agrees that Doctor shall not submit any invoices for any of Doctor's professional services to any patient or third-party payor.

11. Time Off.    Doctor, after consultation with and approved by PCG, may schedule thirty-one (31) weekdays off per year, of which six (6) are the Federal holidays, twenty (20) are for vacation, and five (5) are for continuing medical education ("CME"). Vacation and CME days do not roll over into the following year.

12. Personnel Policies.    Doctor shall be subject to the CTCA-SE's personnel policies except to the extent to which such policies are contrary to the provisions of this Agreement.

13. Regulation.

13.1 Doctor shall comply with all applicable provisions of law and other rules and regulations of any and all governmental authorities relating to licensure and regulation of physicians.

13.2 Doctor shall cooperate in conducting Services in accordance with the standards and recommendations of the Joint Commission ("TJC"), the American College of Surgeons ("ACS"), the Georgia Department of Public Health and the bylaws, policies, rules and regulations of the Hospital.

13.3 Doctor shall assist in attaining and maintaining all relevant licensures, TJC accreditation and ACS approval for programs operated at the Hospital.

14. Physician Requirements.

14.1 Doctor agrees that Doctor shall at all times relevant hereto be licensed to practice medicine in Georgia.

14.2 Doctor shall complete all medical charts within ten (10) working days from an inpatient's discharge date and within four (4) days of any significant diagnosis, treatment, test, observation, history or order for any patient of Doctor, whichever is earlier.

4

*FINAL DRAFT 04/11/14*

14.3 Continuation of this Agreement shall be contingent upon Doctor's continuing satisfaction of the requirements of this section entitled "Physician Requirements".

14.4 Doctor shall strictly abide by the Principles of Medical Ethics of the American Medical Association.

15. <u>Non-exclusivity</u>.  Patients treated under this Agreement are and shall remain patients of PCG.  PCG may determine which patients or clients shall or shall not be treated or served by Doctor and may arrange for other physicians or entities to provide medical services to patients already treated by Doctor when so requested by the patient or when believed by PCG to be in the best interest of the patient.

16.  <u>Professional Liability Insurance</u>.  Except as otherwise provided herein, PCG shall provide and maintain professional liability insurance through CTCA's self-insured program covering Doctor for services rendered to PCG's patients at CTCA-SE in the amount required by the medical staff regulations of CTCA-SE.  Such coverage is currently accounted on an "occurrence" basis; in the event that coverage becomes "claims made", PCG shall provide "tail" insurance for Doctor for acts committed in the scope of employment hereunder.  Such insurance shall expressly NOT include any prior acts coverage and will NOT include any coverage for acts or omissions relating to patients other than PCG's patients. As a condition precedent to PCG's obligations under this Section 16, Doctor shall provide PCG's Administrator with evidence of "tail" insurance covering Doctor's prior acts.

17.  <u>Confidentiality and Access to Medical Information</u>.

17.1 Doctor acknowledges that PCG has certain non-public confidential business information, including but not limited to non-public information and information designated by PCG to be kept confidential; treatment information; including procedures, processes and protocols relating to complementary medicine, and other things that differentiate PCG's business and treatment styles; business strategies and other strategies and plans regarding sales, advertising, and marketing; financial data such as revenues and earnings figures, pricing information, schedules of charges and rates; scientific data, research results and information about research projects; as well as personnel files and other non-public personnel information ("Confidential Information") which Doctor has acquired and will continue to receive access to in the course of Doctor's employment with PCG. Doctor recognizes and agrees that this information is proprietary, highly sensitive and valuable. During Doctor's employment with PCG and thereafter, Doctor will maintain all Confidential Information that comes into Doctor's possession as confidential and as the property of PCG, and such Confidential Information shall not be disclosed by Doctor nor used by Doctor in any way, except (during Doctor's employment with PCG) as required by Doctor's duties to, and for the benefit of, PCG.  Confidential Information does not include information that is generally available to the public through no violation of confidentiality obligations by Doctor or anyone else.

17.2 Doctor shall not disclose any patient information in the possession of PCG or the Hospital (no matter what form or format it is in) including that concerning test results, diagnosis or treatment of any patient to anyone other than appropriate members of the medical staff or appropriate medical audit committees of the relevant Hospital without prior written consent from the patient or his/her authorized representative except as part of the treatment of patient by a health care provider.

17.3 Doctor will not remove any Confidential Information from PCG's premises except as Doctor's duties shall require and as authorized by PCG, and upon any termination of

*FINAL DRAFT 04/11/14*

Doctor's employment, Doctor will immediately turn over all Confidential Information to Doctor's supervisor or other designee of PCG, and Doctor shall retain no copies (either paper, digital, or electronic) thereof.

17.4 Any patient information as well as the medical records of patients provided service hereunder shall at all times remain the property of PCG or the Hospital and shall be treated as confidential. Access to and release of such medical records or any information contained therein (no matter what form or format it is in) shall be in accordance with the Hospital's policies. Doctor shall not disclose any information relating to operations of PCG or the Hospital to persons other than appropriate PCG members without prior written consent of PCG or of the Hospital.

17.5 During and after this Agreement, Doctor agrees to assist PCG to obtain access to any and all medical records relating to patients treated by Doctor during the term of this Agreement.

## 18. Intellectual Property Ownership.

18.1     Purpose.  PCG recognizes that the value of PCG and Hospital to patients goes beyond the physical surroundings of Hospital and the comfort and care that can be offered as individuals. PCG stakes its business on collaborating with the best minds in medicine and providing innovative, progressive therapies, many of which are developed by its physicians. As such, PCG realizes Doctor might conceive some ideas or create new treatments or protocols in Doctor's practice. To look after Doctor, Hospital's patients and the investments of PCG and its affiliates, PCG asks that Doctor assign those innovations to PCG so that it can explore the best possible means of protecting them.

18.2     Description. In furtherance of the joint mission of PCG, Hospital and their respective employees to provide innovative, advanced and effective therapies and overall compassionate and excellent integrative patient care, PCG invites and encourages Doctor to create inventions, improvements, ideas, concepts, know-how, designs, models, research, clinical innovations, protocols and other clinical-related intellectual property, proposals, procedures, strategies, methodologies and techniques, and other intellectual property, materials, information and data and related documentation.    All such items created, conceived or developed by Doctor, alone or together with other PCG or Hospital employees or contractors, during the term of Doctor's employment or other relationship with PCG (whether prior to, on or after the Effective Date) are considered "Work." "Work" does not include, however, and this Agreement does not apply to, any invention developed by Doctor (i) entirely on Doctor's own time and (ii) without the use of any equipment, supplies, facilities or trade secret information of PCG or Hospital or any of their affiliates, unless such invention (a) relates to the business of PCG, Hospital or any of their affiliates or their respective actual or demonstrably anticipated research or development or (b) results from any work performed by Doctor for PCG.

18.3     Ownership of Work.  To permit PCG, Hospital and their affiliates to consolidate, enhance and protect the Work of their various employees in the interest of supporting the collective mission, vision and values thereof, (i) Doctor understands and agrees that, to the extent permitted by law, the Work shall be deemed a "work made for hire" of PCG, (ii) Doctor hereby irrevocably assigns and transfers to PCG, effective with respect to each item of Work as of the date of its creation, any and all rights, title and interest Doctor may have or may acquire in and to the Work (including any Work not deemed, for whatever reason, to have been created as a work made for hire), in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised, including any and all

*FINAL DRAFT 04/11/14*

intellectual property rights in the Work, and the right to prosecute and recover damages for all past, present and future infringements and other violations of the Work, and (iii) Doctor hereby irrevocably waives and assigns to PCG any and all so-called moral rights or "droit moral" Doctor may have in or with respect to any Work (e.g., rights of attribution and preventing others from modifying the Work). Nothing contained in this Agreement will, however, require PCG to exercise or exploit any of its rights in or to the Work.

18.4    Notifying PCG of Work.  To enable PCG to identify and utilize Work created by its employees, during the term of Doctor's relationship with PCG, Doctor agrees to maintain current and accurate records of all Work.  Upon the termination of Doctor's relationship with PCG for any reason, and/or at any time upon PCG's reasonable request, Doctor agrees to promptly (i) disclose to PCG all Work, (ii) deliver to PCG all documentation and other tangible materials that in any way embody, comprise, incorporate, or reflect the Work, and (iii) confirm in writing to PCG that Doctor has fully complied with these requirements.

18.5    Further Documentation.  Doctor also agrees that, upon PCG's request, Doctor will promptly execute and deliver to PCG any and all further assignments, patent applications, and/or such other documents as PCG may deem necessary to vest in PCG any of its rights in the Work and/or protect any Work.

18.6    IP Warranties.  Doctor hereby represents and warrants that: (i) except as expressly authorized by PCG in each instance, the Work (excluding any materials provided by PCG to Doctor) does not and will not use or disclose any trade secrets, confidential information or other proprietary information of any individual or entity, including without limitation any works developed by Doctor for any individual or entity other than PCG; (ii) Doctor will not challenge PCG's or any of its affiliates' rights in any Work or infringe or otherwise violate any such rights; and (iii) neither the Work, nor the exploitation and/or use by PCG and/or any of its affiliates of any Work (excluding any materials provided by PCG to Doctor), in any manner or media throughout the world, will, to Doctor's knowledge, in any way infringe or otherwise violate any intellectual property, privacy or other rights of any individual or entity.

18.7    IP Indemnification.  Doctor agrees to reimburse and indemnify PCG, its affiliates (including without limitation Hospital and CTCA) and their respective licensors, and the officers, directors, members, managers, employees, agents, and representatives of PCG and its affiliates and their respective licensors (collectively, the "PCG Indemnitees"), and hold such PCG Indemnitees harmless against, any and all actions, damages, losses, expenses, claims, demands, costs and liabilities of any nature whatsoever (including reasonable attorneys' fees and court costs), incurred by any such PCG Indemnitees in connection with or arising out of any claim by a third party that any Work, or the use thereof, infringes or otherwise violates any intellectual property, privacy, or other rights of any individual or entity.

19.  Equitable Remedies.  Doctor recognizes that any breach by Doctor of the terms and conditions of the section above entitled "Confidentiality and Access to Medical Information" will cause PCG or the Hospital losses, which are not fully compensable by monetary damages.  Therefore, PCG and the Hospital shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction to enjoin any such breach, or threatened breach, and, in addition thereto, to obtain damages or enforce strict performance by Doctor of the provisions of such sections or to obtain any combination of such remedies as PCG or the Hospital shall elect.  The prevailing party in any such action shall be entitled to reasonable attorneys' fees incurred in connection with any proceedings to enforce this Agreement.

*FINAL DRAFT 04/11/14*

20. Representation of Doctor. DOCTOR HEREBY REPRESENTS AND WARRANTS THAT (i) DOCTOR WILL NOT USE OR NEED TO USE ANY CONFIDENTIAL, PROPRIETARY OR TRADE SECRET INFORMATION FROM ANY FORMER EMPLOYER IN PERFORMING DOCTOR'S DUTIES FOR PCG OR CTCA, AND (ii) DOCTOR IS NOT CURRENTLY SUBJECT TO ANY AGREEMENT OR ARRANGEMENT THAT WOULD PROHIBIT OR RESTRICT DOCTOR FROM ENTERING INTO THIS AGREEMENT OR PERFORMING SERVICES HEREUNDER. DOCTOR ACKNOWLEDGES THAT PCG IS RELYING ON THE ACCURACY OF SUCH REPRESENTATION AS A CONDITION PRECEDENT TO ENTERING INTO THIS AGREEMENT.

21. Applicable Law. This Agreement shall be governed by and construed under the laws of Georgia.

22. Severability. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

23. Notice. Any notice, election, request, demand, designation, consent, agreement or communication given or required to be given under this Agreement shall be in writing and signed by or on behalf of the party giving it, shall be personally delivered to the Doctor or the Administrator of PCG, as applicable, or sent by U.S. certified mail, or by Express Mail or similar private overnight delivery service addressed to the party at their last known address.

24. Assignment. PCG may assign this agreement to an affiliate on written notice to Doctor, so long as such affiliate is a physician practice that provides medical services in Georgia.

25. Integration. This Agreement constitutes the entire Agreement between the parties and contains all agreements between the parties with respect to the subject matter hereof. This Agreement supersedes all other agreements, either in writing or oral between the parties hereto with respect to the same or similar subject matter.

The parties execute this Agreement as of the Effective Date.

CANCER TREATMENT CENTERS
OF AMERICA PROFESSIONAL
CORPORATION OF GEORGIA, P.C.

By: _____
Its: Administrator

_____
KEVIN WATKINS, M.D.

8

# Plaintiff's Exhibit B

*(to Complaint for Breach of Contract)*

FIRST AMENDMENT TO AMENDED AND RESTATED EMPLOYMENT AGREEMENT

This FIRST AMENDMENT TO EMPLOYMENT AGREEMENT ("First Amendment"), between Cancer Treatment Centers of America Professional Corporation of Georgia, P.C., a Georgia professional corporation ("PCG") and **Kevin Watkins, M.D.**, a resident of Georgia ("Doctor"), is effective as of the 18th day of August, 2017 (the "Effective Date").

BACKGROUND:

a.   PCG and Doctor entered into an Employment Agreement effective August 18, 2014 (the "Agreement").

b.   PCG and Doctor wish to amend the terms of the Agreement as set forth below.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the PCG and Doctor agree as follows:

1.   Incorporation of Background.   The Background set forth above is incorporated by reference and made an integral part of this First Amendment.

2.   Extension of Term and Change in Notice of Termination.   The Term of the Agreement is hereby extended to expire August 17, 2018 unless earlier terminated pursuant to the Agreement, as amended hereby.  Unless either party shall give at least 90 days prior notice, the Agreement shall automatically extend for successive one (1) year terms unless terminated in accordance with Section 4 of the Agreement; provided however, for each one year term beginning on or after August 17, 2018, either party may terminate the Agreement upon ninety (90) days prior written notice.  The procedures and effect of any such termination shall remain unchanged; only the notice period shall change for terms beginning on or after August 17, 2018.

3.   Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect and the Agreement, as amended hereby, is ratified and confirmed.

IN WITNESS WHEREOF, the parties have caused this First Amendment to be executed by their duly authorized representatives, as of the date set forth above.

**Cancer Treatment Centers of America**
**Professional Corporation of Georgia, P.C.**

By: _____

Name: ANNE MEISNER

Title: CEO

By: _____

Name:   Kevin Watkins, M.D.

# Plaintiff's Exhibit C

*(to Complaint for Breach of Contract)*

**SECOND AMENDMENT TO**

**EMPLOYMENT AGREEMENT**

This SECOND AMENDMENT TO THE EMPLOYMENT AGREEMENT (**"Second Amendment"**), between CTCA Physicians Group of Georgia, Inc., a Georgia corporation f/k/a Cancer Treatment Centers of America Professional Corporation of Georgia, P.C., a Georgia professional corporation (**"PG"**) and Kevin Watkins, M.D., a resident of Georgia (**"Doctor"**), is effective as of January 1, 2022 (**"Effective Date"**).

**BACKGROUND:**

a.  PG and Doctor entered into an Employment Agreement effective August 18, 2014 and amended August 18, 2017 (collectively, the **"Agreement"**) whereby Doctor provides services to PG as a surgical oncologist.

b.  PG and Doctor agreed to a monthly payment of one thousand four hundred forty-four dollars ($1,444) to cover additional emergency general surgery call.

c.  PG and Doctor now wish to memorialize and amend the Agreement as set forth below in order to compensate Doctor for the call coverage provided.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the PG and Doctor agree as follows:

1    Incorporation of Background.  The Background set forth above is incorporated by reference and made an integral part of this Second Amendment.

2    Section 9 – Compensation and Benefits.  A new Section 9.9 shall be added as follows:

*"In addition to providing surgical oncology call coverage as previously stipulated, Doctor shall provide emergency general surgery call coverage coinciding with surgical oncology call days. Doctor shall be paid One Thousand Four Hundred Forty-Four Dollars ($1,444) per month ($666.45 per pay period) for call coverage"*

3    Ratified and Confirmed.  Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect and the Agreement, as amended hereby, is ratified and confirmed.

(SIGNATURE PAGE FOLLOWS)

**IN WITNESS WHEREOF**, the parties have caused this Second Amendment to be executed by their duly authorized representatives, as of the date set forth above.

CTCA PHYSICIANS GROUP OF GEORGIA, INC.,
F/K/A CANCER TREATMENT CENTERS OF
AMERICA PROFESSIONAL CORPORATION OF
GEORGIA, P.C.

DOCTOR:

By: _____
Electronically
signed by: Jonathan
E. Watkins
Date: Apr 8, 2022
02:41 CDT

Name: _____

Title: _____

_____
Electronically signed
by: Kevin T Watkins
Date: Apr 8, 2022
11:19 EDT

KEVIN WATKINS, M.D.

## IN THE SUPERIOR COURT OF COWETA COUNTY
## STATE OF GEORGIA

KEVIN T. WATKINS,                          )
                                           )
    Plaintiff,                         )
                                           )
    v.                                 )          CIVIL ACTION FILE
                                           )
CTCA    PHYSICIANS    GROUP    OF          )          NO. _____
GEORGIA, LLC f/k/a CTCA PHYSICIANS         )
GROUP OF GEORGIA, INC. f/k/a CANCER        )
TREATMENT  CENTERS  OF  AMERICA            )
PROFESSIONAL    CORPORATION    OF          )
GEORGIA, P.C.,                             )
                                           )
    Defendant.                         )

## <u>VERIFICATION</u>

Personally appeared KEVIN T. WATKINS who, after being duly sworn, states that the

facts alleged in the foregoing *Complaint for Breach of Contract* are true and correct to the best of

his knowledge, belief and information.

                                                KEVIN T. WATKINS, Plaintiff

Sworn to and subscribed before me this
**22nd** day of **November** , 2022

_Tammy Rochelle_
Notary Public

My commission expires:

**July 6, 2025**

📧 EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

**SUV2022001394**

DEC 06, 2022 11:19 AM

*Niki Sewell*
Niki Sewell, Clerk
Coweta Superior Court

# AFFIDAVIT OF SERVICE

| State of Georgia | County of Coweta | Superior Court |
|---|---|---|

Case Number: SUV2022001394

Plaintiff:
**KEVIN T. WATKINS,**

vs.

Defendant:
**CTCA PHYSICIANS GROUP OF GEORGIA, LLC F/K/A CTCA
PHYSICIANS GROUP OF GEORGIA, INC. F/K/A CANCER TREATMENT
CENTERS OF AMERICA PROFESSIONAL CORPORATION OF
GEORGIA, P.C.,**

Received by Bulldog Process Servers, LLC on the 25th day of November, 2022 at 12:38 pm to be served on
**CTCA PHYSICIANS GROUP OF GEORGIA, LLC F/K/A CTCA PHYSICIANS GROUP OF GEORGIA, INC.
F/K/A CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA,
P.C., Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076**.

I, **EDMOND J. BYER**, being duly sworn, depose and say that on the **29th day of November, 2022** at **3:17
pm, I:**

Served a **LIMITED LIABILITY COMPANY** by delivering a true and correct copy of the **General Civil and
Domestic Relations Case Filing Information Form, Summons, Complaint for Breach of Contract;
Exhibits A-C; Verification** to Christy Drabeck as **Process Specialist for Cogency Global Inc., R/A** for
**CTCA PHYSICIANS GROUP OF GEORGIA, LLC F/K/A CTCA PHYSICIANS GROUP OF GEORGIA,
INC. F/K/A CANCER**, at the address of: **900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA
30076**, and informed said person of the contents therein.

**Description** of Person Served: Age: 30s, Sex: F, Race/Skin Color: White, Height: 5'7", Weight: 145, Hair:
Blonde, Glasses: N

I certify that I am a United States citizen residing in the State of Georgia, am over the age of 18, have no
interest in the above action and all statements above are true.

Subscribed and Sworn to before me on the 1st day
of December, 2022

NOTARY PUBLIC

(✓) Personally known
( ) Produced _____
identification

*[Notary seal: S GRAHAM NOTARY EXPIRES GEORGIA DEC. 3 2022 PUBLIC COWETA COUNTY]*

**EDMOND J. BYER**
CPS373

**Bulldog Process Servers, LLC
1029 Peachtree Pkwy North
#161
Peachtree City, GA 30269
(770) 703-7575**

Our Job Serial Number: EJB-2022000854

Copyright © 1992-2022 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2k



**LAWSON BECK & SANDLIN**
ATTORNEYS AT LAW
1125 Commerce Drive, Suite 300
Peachtree City, GA 30269
770-486-8949

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

**SUV2022001394**

DEC 15, 2022 02:48 PM

Niki Sewell, Clerk
Coweta Superior Court

TO:            All Judges, Clerks of Court, Opposing Counsel and all *Pro Se* parties.

FROM:       Holly Hance Maestas, Esq.

RE:            Notice of Leave of Absence

DATE:       December 15, 2022

COMES NOW, Holly Hance Maestas, Esq. and respectfully notifies all Judges before whom she has cases pending, all affected clerks of court, and all opposing counsel and pro se parties, that she will be on leave pursuant to Georgia Uniform Court Rule 16.

1.  The periods of leave during which time applicant will be away from the practice of law are as follows:

    a.   **February 20 – February 24, 2023**
         Purpose of Leave:     Family Vacation;

2.  All affected parties shall have ten (10) days from the date of this notice to object to it.  If no objections are filed, the leave shall be granted.

3.  The list of protected actions affected by this leave are as follows:

    - *Felicia Alingu v. Legacy Homes Investment, LLC et al.*, Superior Court of Fulton County, Georgia, Civil Action File No. 2022CV373305

    - *Mark Allen v. Global Solar Energy LLC*, Superior Court of Fulton County, Georgia, Civil Action File No. 2022CV373175

    - *Jack J. Ephran, Jr. et al. v. Denia Foster*, Superior Court of Clayton County, Georgia, Civil Action File No. 2022CV03351-10

- *Martin Jimenez v. Anel Carbajal*, Superior Court of Fayette County, Georgia, Civil Action File No. 2021V-1062

- *Learnatric, Inc. et al. v. Brian Schaaf*, Superior Court of Fulton County, Georgia, Civil Action File No. 2022CV363841

- *Kevin T. Watkins v. CTCA Physicians Group of Georgia, LLC*, Superior Court of Coweta County, Georgia, Civil Action File No. SUV2022001394

- *Peach State Maintenance, LLC v. Richard T. Weeks et al.*, Superior Court of Fayette County, Georgia, Civil Action File No. 2020V-0299

4. Included within this protected list is any case hereafter filed by applicant as well as any case in which she hereafter enters an appearance of counsel for any party.

5. Applicant hereby certifies that the parties or counsel of record will be served through Peachcourt efiling or via email statutory electronic service.

Respectfully submitted this 15th day of December, 2022.

LAWSON, BECK & SANDLIN, LLC

*/s/ Holly H. Maestas*

_____

Holly H. Maestas
Attorney at Law
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:    (770) 486-8949
Facsimile:    (770) 486-8950
Email: holly@lawsonandbeck.com

E-filed in Office
Clerk of Superior Court
12/27/2022 11:03 AM
Coweta County, GA
Niki Sewell, Clerk
Case Number: SUV2022001394

IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| WATKINS, KEVIN T. DR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No.: |
| | ) | |
| CTCA PHYSICIANS GROUP OF | ) | SUV2022001394 |
| GEORGIA, LLC d/b/a f/k/a CTCA | ) | |
| PHYSICIANS GROUP OF GEORGIA, | ) | |
| INC., f/k/a CANCER TREATMENT | ) | |
| CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| GEORGIA, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## **VERIFIED ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT**

COMES NOW Defendant CTCA PHYSICIANS GROUP OF GEORGIA LLC f/k/a

CTCA PHYSICIANS GROUP OF GEORGIA, INC., f/k/a CANCER TREATMENT CENTERS

OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C., ("CTCA") in the

above-captioned matter and files its responses and objections to Plaintiff's Complaint for Breach

of Contract, and in support thereof states as follows:

## **STATEMENT OF JURISDICTION AND VENUE**

1.      Defendant is without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations set forth in this paragraph and, therefore, denies the same.

2.      Admitted.

3.      Allegations determining jurisdiction are legal conclusions that do not require a

response. To the extent a response is required, Defendant denies the allegations contained in this

paragraph.

4.      Allegations determining venue are legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

## STATEMENT OF FACTS AND CLAIMS

5.      The Defendant admits that it entered into a written contract with Plaintiff entitled *Employment Agreement* effective August 18, 2014. This contract is a document that speaks for itself, and Defendant denies any allegations inconsistent therewith. Any remaining allegations contained in this paragraph are denied.

6.      The Defendants admit that it executed an amendment to the *Employment Agreement* effective August 18, 2017. This contract is a document that speaks for itself, and Defendant denies any allegations inconsistent therewith. Any remaining allegations contained in this paragraph are denied.

7.      The Defendant admits that it executed an amendment to the *Employment Agreement* entitled *Second Amendment to Employment Agreement* on or about April 8, 2022. This contract is a document that speaks for itself, and Defendant denies any allegations inconsistent therewith. Any remaining allegations contained in this paragraph are denied.

8.      This paragraph of the Complaint merely characterizes Plaintiff's claims, and therefore no response is required. To the extent a response is required, Defendant denies the allegations contained in this paragraph.

9.      These contracts are documents that speaks for themselves, and Defendant denies any allegations inconsistent therewith. Any remaining allegations contained in this paragraph are denied.

10.      Denied.

2

11.     This contract is a document that speaks for itself, and Defendant denies any allegations inconsistent therewith. Any remaining allegations contained in this paragraph are denied.

12.     The Defendant admits that Plaintiff's employment ended August 19, 2022. Any remaining allegations contained in this paragraph are denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

#182255412_v2

Defendants further deny the allegations contained in the paragraph beginning with "WHEREFORE" on Page 7 of the Complaint, and specifically deny each of paragraphs (a) through (j) thereunder, further and specifically denying that Plaintiff is entitled to any relief under any theory whatsoever.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

The following additional and affirmative defenses are alleged on information and belief by Defendant. Unless expressly stated otherwise, each defense applies to the entire Complaint and to each purported cause of action or claim for relief therein and to each other person on whose behalf this action is being prosecuted. Defendant reserves the right to amend or withdraw any or all defenses or to raise additional defenses as or after they may become known during or after the course of investigations, discovery, or trial.

No assertion of any affirmative defense shall constitute either: (a) an admission that Plaintiff does not bear the burden of proof or the burden of producing evidence on any element of any cause of action or claim for relief or on any issue as to which Plaintiff bears the burden of proof or the burden of producing evidence as a matter of law; or (b) a waiver of any of Defendant's rights to require that Plaintiff satisfy any burden of proof or burden of producing evidence.

### FIRST DEFENSE

Plaintiff fails to state a claim for relief.

### SECOND DEFENSE

Plaintiff's claims are barred by the doctrine of waiver.

### THIRD DEFENSE

Plaintiff's claims are barred by the doctrine estoppel.

## FOURTH DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

## FIFTH DEFENSE

Plaintiff's claims are barred by laches.

## SIXTH DEFENSE

Plaintiff's claims are barred because of Plaintiff's own material breaches of the

Employment Agreement.

## SEVENTH DEFENSE

Plaintiff's claims are barred by failure to mitigate Plaintiff's alleged damages, if any.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any losses suffered or damages

incurred were caused by Plaintiff's own acts or omissions.

## NINTH DEFENSE

Plaintiff's claims are barred by the doctrines of accord and satisfaction, settlement, set-off,

and/or ratification.

This 27th day of December, 2022.

**HOLLAND & KNIGHT LLP**

*/s/ Victor Moldovan*
Victor Moldovan
Georgia Bar No. 515468
Peter N. Hall
Georgia Bar No. 141376
Laura E. Flint
Georgia Bar No. 635203
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
(404) 817-8500
Email: victor.moldovan@hklaw.com

5

Email: peter.hall@hklaw.com
Email: laura.flint@hklaw.com

*Attorneys for Defendant*

IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA

WATKINS, KEVIN T. DR.,                          )
                                                )
        Plaintiff,                              )
                                                )
v.                                              )      Civil Action File No.:
                                                )
CTCA PHYSICIANS GROUP OF                        )      SUV2022001394
GEORGIA, LLC d/b/a f/k/a CTCA                   )
PHYSICIANS GROUP OF GEORGIA,                    )
INC., f/k/a CANCER TREATMENT                    )
CENTERS OF AMERICA                              )
PROFESSIONAL CORPORATION OF                     )
GEORGIA, P.C.,                                  )
                                                )
        Defendant.                              )

## VERIFICATION

Personally appeared before the undersigned, an officer duly authorized by law to administer oaths, Jonathan Watkins, President and CEO of Cancer Treatment Centers of America for the Georgia Market, who being duly sworn, deposes and states under oath that he is over 21 years of age, has personal knowledge of the information contained in the *Verified Answer and Affirmative Defenses of Defendant* in the above-captioned action, is authorized to make this verification, and the statements of fact contained in Defendant's *Verified Answer and Affirmative Defenses of Defendant* are true and correct, to the best of his knowledge, information, and belief, upon his personal knowledge and review of records and information available to him.

**CTCA PHYSICIANS GROUP OF GEORGIA LLC**

By:

Jonathan Watkins, MPA, FACHE
President and CEO for the Georgia Market

Sworn to and subscribed before me,
this 22ⁿᵈ day of December, 2022.

_Debora L. Nash_
Notary Public
My Commission expires:  06/03/2024



2

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of December, 2022 I filed and served a true and correct copy of the foregoing ***Answer and Affirmative Defenses of Defendant*** upon counsel of record via the Court's Odyssey e-file system.

*/s/ Victor Moldovan*
Victor Moldovan
Georgia Bar No. 515468

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,                          )
                                           )
    Plaintiff,                         )
                                           )
    v.                                 )          CIVIL ACTION FILE
                                           )
CTCA   PHYSICIANS   GROUP   OF             )          NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS         )
GROUP OF GEORGIA, INC. f/k/a CANCER        )
TREATMENT  CENTERS  OF  AMERICA            )
PROFESSIONAL    CORPORATION    OF          )
GEORGIA, P.C.,                             )
                                           
    Defendant.

## RULE 5.2 CERTIFICATE

Pursuant to Uniform State Court Rule 5.2(2), as amended, the undersigned counsel of record for the Defendant herein, hereby certifies that on the 14th day of February, 2023, a true and correct copy of **Plaintiff's First Request for Admissions to Defendant, Plaintiff's First Continuing Interrogatories to Defendant,** and **Plaintiff's First Requests for Production of Documents and Things and Notice to Produce to Defendant,** were served upon the following person(s) at the following address via email and first class mail:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC
*//s// Holly H. Maestas*

_____

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| KEVIN T. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| CTCA PHYSICIANS GROUP OF | ) | NO. SUV2022001394 |
| GEORGIA, LLC f/k/a CTCA PHYSICIANS | ) | |
| GROUP OF GEORGIA, INC. f/k/a CANCER | ) | |
| TREATMENT CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| GEORGIA, P.C., | ) | |
| | | |
| Defendant. | | |

**CERTIFICATE OF SERVICE**

This is to certify that I have, this 14th day of February, 2023, served a true and correct

copy of the within and foregoing **RULE 5.2 CERTIFICATE OF SERVICE** upon all parties

and/or counsel of record by e-mailing a copy of the same to:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC

*//s// Holly H. Maestas*
_____

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:     (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,                          )
                                           )
    Plaintiff,                         )
                                           )
    v.                                 )          CIVIL ACTION FILE
                                           )
CTCA   PHYSICIANS   GROUP   OF             )          NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS         )
GROUP OF GEORGIA, INC. f/k/a CANCER        )
TREATMENT  CENTERS  OF  AMERICA            )
PROFESSIONAL   CORPORATION   OF            )
GEORGIA, P.C.,                             )

    Defendant.

<u>**RULE 5.2 CERTIFICATE**</u>

Pursuant to Uniform State Court Rule 5.2(2), as amended, the undersigned counsel of record herein, hereby certifies that on the 14th day of February, 2023, a true and correct copy of **Non-spoliation of evidence warning letter,** were served upon the following person(s) at the following via email statutory electronic service:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC
*//s// Holly H. Maestas*

_____
Holly Hance Maestas

Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:     (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| KEVIN T. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| CTCA PHYSICIANS GROUP OF | ) | NO. SUV2022001394 |
| GEORGIA, LLC f/k/a CTCA PHYSICIANS | ) | |
| GROUP OF GEORGIA, INC. f/k/a CANCER | ) | |
| TREATMENT CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| GEORGIA, P.C., | ) | |
| | | |
| Defendant. | | |

**CERTIFICATE OF SERVICE**

This is to certify that I have, this 14th day of February, 2023, served a true and correct

copy of the within and foregoing **RULE 5.2 CERTIFICATE OF SERVICE** upon all parties

and/or counsel of record by e-mailing a copy of the same to:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC

*//s// Holly H. Maestas*
_____

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:     (770) 486-8950
Email: holly@lawsonandbeck.com

E-filed in Office
Clerk of Superior Court
3/6/2023 12:14 PM
Coweta County, GA
Niki Sewell, Clerk
Case Number: SUV2022001394

IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA

WATKINS, KEVIN T. DR.,       )
                         )
     Plaintiff,           )
                         )
v.                         )     Civil Action File No.:
                         )
CTCA PHYSICIANS GROUP OF    )     SUV2022001394
GEORGIA, LLC d/b/a f/k/a CTCA   )
PHYSICIANS GROUP OF GEORGIA,  )
INC., f/k/a CANCER TREATMENT   )
CENTERS OF AMERICA          )
PROFESSIONAL CORPORATION OF  )
GEORGIA, P.C.,             )
                         )
     Defendant.         )

---

## 5.2 CERTIFICATE OF SERVICE OF DISCOVERY

I hereby certify that I have this day served a copy of **Defendant's First Requests for the Production of Documents and Things to Plaintiff**; and **Defendant's First Continuing Interrogatories to Plaintiff** upon counsel for all parties by delivering a copy of same via electronic mail to:

Holly H. Maestas, Esq.
Lawson, Beck & Sandlin, LLC
1125 Commerce Drive, Suite 300
Peachtree City, GA  30269
holly@lawsonandbeck.com

This 6th day of March, 2023.

**HOLLAND & KNIGHT LLP**

*/s/ Victor Moldovan*
Victor Moldovan
Georgia Bar No. 515468
Peter N. Hall
Georgia Bar No. 141376
Laura E. Flint

Georgia Bar No. 635203
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
(404) 817-8500
Email: victor.moldovan@hklaw.com
Email: peter.hall@hklaw.com
Email: laura.flint@hklaw.com

*Attorneys for Defendant*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of March, 2023 I filed and served a true and correct copy of the foregoing **5.2 Certificate of Service of Discovery** upon counsel of record via the Court's Odyssey e-file system.

Holly H. Maestas, Esq.
Lawson, Beck & Sandlin, LLC
1125 Commerce Drive, Suite 300
Peachtree City, GA  30269
holly@lawsonandbeck.com


*/s/ Victor Moldovan*
Victor Moldovan
Georgia Bar No. 515468

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| KEVIN T. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| CTCA   PHYSICIANS   GROUP   OF | ) | NO. SUV2022001394 |
| GEORGIA, LLC f/k/a CTCA PHYSICIANS | ) | |
| GROUP OF GEORGIA, INC. f/k/a CANCER | ) | |
| TREATMENT  CENTERS  OF  AMERICA | ) | |
| PROFESSIONAL   CORPORATION   OF | ) | |
| GEORGIA, P.C., | ) | |
| | | |
| Defendant. | | |

---

## UNIFORM SUPERIOR COURT RULE 5.2 CERTIFICATE OF SERVICE

---

Pursuant to Uniform State Court Rule 5.2(2), as amended, the undersigned counsel of record for the Plaintiff herein, hereby certifies that on the 5th day of April, 2023, a true and correct copy of *Plaintiff's Responses and Objections to Defendant's First Continuing Interrogatories to Plaintiff,* and *Plaintiff's Responses and Objections to Defendant's First Requests for the Productions of Documents and Things to Plaintiff* were served upon the following person(s) via email STATUTORY ELECTRONIC SERVICE:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

This 5th day of April, 2023.

LAWSON, BECK & SANDLIN, LLC

*/s/ Holly H. Maestas*_____
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| KEVIN T. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| CTCA PHYSICIANS GROUP OF | ) | NO. SUV2022001394 |
| GEORGIA, LLC f/k/a CTCA PHYSICIANS | ) | |
| GROUP OF GEORGIA, INC. f/k/a CANCER | ) | |
| TREATMENT CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| GEORGIA, P.C., | ) | |
| | | |
| Defendant. | | |

**<u>CERTIFICATE OF SERVICE</u>**

This certifies that, on this the 5th day of April, 2023, I have served a copy of the foregoing

Rule 5.2 Certificate of Service upon the counsel of record for the Defendant by e-filing the same

via PeachCourt which will automatically serve a copy on counsel or parties of record as listed

below:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

This 5th day of April, 2023.

LAWSON, BECK & SANDLIN, LLC

*/s/ Holly H. Maestas*
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

E-filed in Office
Clerk of Superior Court
4/18/2023 9:31 AM
Coweta County, GA
Niki Sewell, Clerk
Case Number: SUV2022001394

IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| WATKINS, KEVIN T. DR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No.: |
| | ) | |
| CTCA PHYSICIANS GROUP OF | ) | SUV2022001394 |
| GEORGIA, LLC d/b/a f/k/a CTCA | ) | |
| PHYSICIANS GROUP OF GEORGIA, | ) | |
| INC., f/k/a CANCER TREATMENT | ) | |
| CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| GEORGIA, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## 5.2 CERTIFICATE OF SERVICE OF DISCOVERY

I hereby certify that on April 17, 2023 I served a copy of **Deposition Notice of Plaintiff Kevin T. Watkins** upon counsel for all parties by delivering a copy of same via electronic mail to:

Holly H. Maestas, Esq.
Lawson, Beck & Sandlin, LLC
1125 Commerce Drive, Suite 300
Peachtree City, GA  30269
holly@lawsonandbeck.com

This 18th day of April, 2023.

HOLLAND & KNIGHT LLP

*/s/ Victor Moldovan*

Victor Moldovan
Georgia Bar No. 515468
Peter N. Hall
Georgia Bar No. 141376
Laura E. Flint
Georgia Bar No. 635203
1180 West Peachtree Street, NW

Suite 1800, Regions Plaza
Atlanta, Georgia 30309
(404) 817-8500
Email: victor.moldovan@hklaw.com
Email: peter.hall@hklaw.com
Email: laura.flint@hklaw.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of April, 2023 I filed and served a true and correct copy of the foregoing **5.2 Certificate of Service of Discovery** upon counsel of record via the Court's Odyssey e-file system.

Holly H. Maestas, Esq.
Lawson, Beck & Sandlin, LLC
1125 Commerce Drive, Suite 300
Peachtree City, GA  30269
holly@lawsonandbeck.com


*/s/ Victor Moldovan*
Victor Moldovan
Georgia Bar No. 515468

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| KEVIN T. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| CTCA PHYSICIANS GROUP OF | ) | NO. SUV2022001394 |
| GEORGIA, LLC f/k/a CTCA PHYSICIANS | ) | |
| GROUP OF GEORGIA, INC. f/k/a CANCER | ) | |
| TREATMENT CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| GEORGIA, P.C., | ) | |
| | | |
| Defendant. | | |

## RULE 5.2 CERTIFICATE

Pursuant to Uniform State Court Rule 5.2(2), as amended, the undersigned counsel of record for the Defendant herein, hereby certifies that on the 20th day of April, 2023, a true and correct copy of **Plaintiff's Second Requests for Production of Documents and Things and Notice to Produce to Defendant,** were served upon the following person(s) at the following address via email (statutory electronic service):

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC
*//s// Holly H. Maestas*

_____

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| KEVIN T. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| CTCA PHYSICIANS GROUP OF | ) | NO. SUV2022001394 |
| GEORGIA, LLC f/k/a CTCA PHYSICIANS | ) | |
| GROUP OF GEORGIA, INC. f/k/a CANCER | ) | |
| TREATMENT CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| GEORGIA, P.C., | ) | |
| | | |
| Defendant. | | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have, this 20th day of April, 2023, served a true and correct copy

of the within and foregoing **RULE 5.2 CERTIFICATE OF SERVICE** upon all parties and/or

counsel of record by e-mailing a copy of the same to:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC

*//s// Holly H. Maestas*
_____

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,                              )
                                              )
    Plaintiff,                         )
                                              )
    v.                                 )          CIVIL ACTION FILE
                                              )
CTCA PHYSICIANS GROUP OF    )          NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS   )
GROUP OF GEORGIA, INC. f/k/a CANCER   )
TREATMENT CENTERS OF AMERICA   )
PROFESSIONAL CORPORATION OF   )
GEORGIA, P.C.,                               )
                                              )
    Defendant.                         )

---

## UNIFORM SUPERIOR COURT RULE 5.2 CERTIFICATE OF SERVICE

---

Pursuant to Uniform State Court Rule 5.2(2), as amended, the undersigned counsel of record for the Plaintiff herein, hereby certifies that on the 20th day of April, 2023, a true and correct copy of *Plaintiff's First Supplemental Responses and Objections to Defendant's First Continuing Interrogatories to Plaintiff* were served upon the following person(s) via email STATUTORY ELECTRONIC SERVICE:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

This 20th day of April, 2023.

LAWSON, BECK & SANDLIN, LLC

*/s/ Holly H. Maestas*_____
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,                           )
                                            )
    Plaintiff,                       )
                                            )
    v.                               )          CIVIL ACTION FILE
                                            )
CTCA PHYSICIANS GROUP OF                     )          NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS           )
GROUP OF GEORGIA, INC. f/k/a CANCER          )
TREATMENT CENTERS OF AMERICA                 )
PROFESSIONAL CORPORATION OF                  )
GEORGIA, P.C.,                               )

    Defendant.

## CERTIFICATE OF SERVICE

This certifies that, on this the 20th day of April, 2023, I have served a copy of the foregoing Rule 5.2 Certificate of Service upon the counsel of record for the Defendant by e-filing the same via PeachCourt which will automatically serve a copy on counsel or parties of record as listed below:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

This 20th day of April, 2023.

LAWSON, BECK & SANDLIN, LLC

*/s/ Holly H. Maestas*
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:     (770) 486-8950
Email: holly@lawsonandbeck.com

IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA

⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

**SUV2022001394**

JUN 02, 2023 04:42 PM

Niki Sewell

Niki Sewell, Clerk
Coweta Superior Court

|  |  |
|---|---|
| KEVIN T. WATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CTCA PHYSICIANS GROUP OF | ) |
| GEORGIA, LLC f/k/a CTCA PHYSICIANS | ) |
| GROUP OF GEORGIA, INC. f/k/a CANCER | ) |
| TREATMENT CENTERS OF AMERICA | ) |
| PROFESSIONAL CORPORATION OF | ) |
| GEORGIA, P.C., | ) |
| | ) |
| Defendant. | ) |

CIVIL ACTION FILE

NO. SUV2022001394

## AMENDED COMPLAINT

COMES NOW, KEVIN T. WATKINS, Plaintiff in the above-styled civil action (hereinafter referred to as "Plaintiff"), and files this, his *Amended Complaint* against CTCA PHYSICIANS GROUP OF GEORGIA, LLC f/k/a CTCA PHYSICIAN GROUP OF GEORGIA, INC., f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C., Defendant in the above-styled civil action (hereinafter referred to as the "Defendant"), and respectfully shows this Honorable Court as follows. The Plaintiff and Defendant will collectively be referred to as the "parties."

## STATEMENT OF JURISDICTION & VENUE

1.

Plaintiff is a resident of Georgia.

2.

Defendant is a Georgia limited liability company. Defendant may be served through its counsel of record.

3.

Jurisdiction is appropriate in this Court.

4.

Venue is appropriate in this Court because Defendant is a resident of Coweta County, Georgia.

## STATEMENT OF FACTS & CLAIMS

5.

Plaintiff is a white male.

6.

Plaintiff is a highly skilled and experienced surgical oncologist.

7.

Plaintiff began working with Defendant as a surgical oncologist in or around August 2014.

8.

In or around October 2015, Plaintiff was appointed the surgery lead on designing and implementing the Enhanced Recovery Pathway at Defendant's Southeastern Regional Medical Center.

9.

In or around November 2015, Plaintiff was appointed Vice Chief of Surgery at Defendant's Southeastern Regional Medical Center.

10.

In or around January 2016, the Enhanced Recovery Pathway program Plaintiff created was implemented throughout Defendant's organization nationwide.

11.

In or around November 2016, Plaintiff was appointed Chief of Surgery at Defendant' Southeastern Regional Medical Center.

12.

In or around June 2016, Plaintiff was named Atlanta Magazine's Top Doctor.

13.

In or around November 2017, Gary Bernstein became Defendant's new Chief of Surgery.

14.

In late 2019, Jonathan Watkins was appointed the president and CEO of Defendant's Southeastern Regional Medical Center.

15.

In or around April 2020, Jonathan Watkins pressured Bernstein to step down as Chief of Surgery.

16.

In or around April 2020, Bernstein was replaced by Anita Johnson as Chief of Surgery by Jonathan Watkins.

17.

In or around March 2022, Jonathan Watkins interviewed Dr. Chukwuemeka Obiora (a black male) for an additional surgical oncology position.

18.

Plaintiff and surgical oncologist Katherine Poruk (a white female) were sufficiently handling the existing surgical oncology patients without the need of an additional surgical oncologist.

19.

In or around April 2022, Defendant hired Chukwuemeka Obiora (a black male) as a surgical oncologist.

20.

The surgical oncologists typically work as a team to handle patients within the same employer.

21.

Plaintiff was not involved in the hiring of Obiora, nor was Plaintiff given any notice that Obiora would be joining the surgical oncology team at Defendant, prior to Obiora's first day.

22.

Plaintiff is more qualified than Obiora as a surgical oncologist.

23.

Jonathan Watkins sent out an email to one of Defendant's internal listservs which stated that Obiora was an expert in multiple areas of surgical oncology.

24.

Jonathan Watkins' email is false because Obiora did not have adequate experience to claim surgical oncology expertise in all these areas.

25.

Jonathan Watkins' email had the effect of having multiple patients, which would be assigned to Plaintiff, to now be assigned to Obiora.

26.

Defendant replaced various other white surgeons with black, or non-white, surgeons since Jonathan Watkins' arrival at Southeastern Regional Medical Center.

27.

Obiora's surgeries were excessively long and had poor outcomes.

28.

Plaintiff raised Obiora's surgical judgment and poor outcomes as a concern to Defendant.

29.

Anita Johnson made an unofficial list of operating room staff, circulating nurses, and scrub techs that were permitted, and not permitted, to work in Obiora's operating room.

30.

Anita Johnson's unofficial list of staff that were not permitted to work in Obiora's operating room were all white.

31.

This was done to protect Obiora.

32.

In or around July 2022, Defendant hired Dr. Hixon (a black male) general surgeon to assist Obiora on his cases.

33.

Hixon was not permitted to assist Plaintiff or Poruk.

34.

Anita Johnson repeatedly praised Obiora's surgical skills in front of staff and other surgeons.

35.

Anita Johnson interfered with Plaintiff's ability to schedule his patient's surgery in the usual manner, delaying his patient's care in favor of non-white physicians.

36.

On August 19, 2022, Anita Johnson made a change to Plaintiff's call schedule responsibilities which forced Plaintiff to be on call all the time.

37.

Defendant abruptly terminated Plaintiff on August 19, 2022.

38.

Following his termination, Plaintiff applied for several different positions.

39.

Defendant published false and defamatory statements about the Plaintiff to his potential new employers.

40.

These false and defamatory statements were made about Plaintiff's trade, office, and profession, and in reference to his reputation in general.

41.

As a direct and proximate cause of these false and defamatory statements, these potential employers have either delayed hiring Plaintiff, or not hired Plaintiff at all.

### Count 1:  Breach of Contract

42.

On or about April 11, 2014, the parties entered into a written contract entitled *Employment Agreement* in which both parties would be required to perform certain duties.  The *Employment Agreement* is attached as Plaintiff's Exhibit A.  This document will be referred to in this complaint as the "Original Contract."

43.

On or about August 18, 2017, the parties executed the first written amendment to the *Employment Agreement* which is entitled *First Amendment to Amended and Restated Employment Agreement*, and it is attached as Plaintiff's Exhibit B.  This document will be referred to in this complaint as "Contract Amendment One."

44.

On or about April 8, 2022 (with an effective date of January 1, 2022), the parties executed the second written amendment to the *Employment Agreement* which is entitled *Second Amendment to Employment Agreement*, and it is attached as Plaintiff's Exhibit C. This document will be referred to in this complaint as "Contract Amendment Two."

45.

The Original Contract, Contract Amendment One, and Contract Amendment Two will be collectively referred to in this Complaint as the "Contract."

46.

Defendant agreed, in the Original Contract, that when Plaintiff was on call, that this call would "be shared equally with other surgical oncology staff physicians." Original Contract, § 5.1. Defendant agreed in Contract Amendment Two, that when Plaintiff was on general surgery call,

that these call days would "coincide[e] with surgical oncology days." Contract Amendment Two, § 9.9.

47.

Despite these limits to Plaintiff's call duties, Defendant breached these terms on the Contract and required Plaintiff to take call almost 24/7. When Plaintiff pointed this out to Defendant, Defendant retaliated against Plaintiff and abruptly terminated him, without cause, in violation of the terms of the Contract.

48.

If Defendant terminates Plaintiff without cause, the Contract requires "at least [ninety (90) days prior written notice] of intent to terminate," and requires Defendant "to pay [Plaintiff's] base salary . . . for . . . one hundred eighty (180) days from the date of the notice of termination." Original Contract, § 4.1; Contract Amendment One, § 1. Defendant may only "immediately terminate" Plaintiff "for cause." Original Contract, § 4.2.

49.

Despite these limits on how Plaintiff may be terminated, Defendant orally terminated Plaintiff on or about August 19, 2022.

50.

This abrupt, verbal termination is a breach of Contract which caused Plaintiff damages which are accruing.

51.

Defendant gave written notice of Plaintiff's termination on August 30, 2022.

52.

Defendant failed to pay the proper contracted amount of Plaintiff's base salary, between August 19, 2022 and August 30, 2022, which is $11,301.37.

53.

Defendant failed to pay the proper contracted amount of Plaintiff's base salary for 180 days following written notice of termination, which is $184,931.51.

54.

Defendant failed to pay the proper contracted amount of Plaintiff's call salary ($1,444.00/month) for the 90-day period following written termination, which is $4,332.00.

55.

Defendant made a payment to Plaintiff on August 30, 2022 in the net amount of $80,490.78, and on October 14, 2022, in the net amount of $1,009.67, which set off Plaintiff's damages.

56.

As a further result of Defendant's breach of contract, Plaintiff is entitled to additional damages; including all other unpaid compensation, unreimbursed expenses, incentive compensation, call compensation, 401K and HSA benefits, and medical coverage; which are owed prior to Defendant's written termination of the Plaintiff on August 30, 2022; and which are owed during the 90-day notice period after the written termination August 30, 2022; in an amount to be proven at trial.

57.

Furthermore, the 90-day notice period was specifically drafted for Plaintiff to be able to complete tasks which are material and standard for surgeons in this industry.

58.

As a result of Defendant's breach of contract, Plaintiff was unable to complete necessary tasks required for minimum patient care and continuity of care.

59.

It is standard practice in this industry for a transition period to occur, i.e. a notice period, where a surgeon continues to work, patient care can be addressed, notice can be given to a surgeon's patients, and surgeons can transition to a new position elsewhere.

60.

Due to Defendant's abrupt breach, and failure to follow a notice period, Plaintiff was unable to process a transition period for his patients and himself.

61.

Due to Defendant's abrupt breach, and failure to follow a notice period, Plaintiff was unable to process emails and other correspondence needed to process administrative needs for Plaintiff's unreimbursed expenses.

62.

Plaintiff was unable to issue correspondence needed to ensure Plaintiff could limit his exposure to malpractice liability and complaints on his license to the Georgia Composite Medical Board.

63.

Plaintiff was unable to secure access to data related to his credentialing with future employers, hospitals, providers, and payers; his continuing medical education material; his personal education presentations; and other personal documents.

64.

Because Defendant failed to abide by the notice period, Plaintiff suffered additional damages to his reputation, his malpractice insurability, his liability for future claims, his liability for complaints, and his ability to obtain a new position, in an amount to be proven at trial.

65.

Because Defendant failed to abide by the notice period, Plaintiff's reputation became subject to additional scrutiny by potential new employers.

66.

Plaintiff has suffered monetary damages which include unpaid compensation and benefits, consequential and special damages to Plaintiff's reputation in his profession and in the community, emotional damages and pain and suffering from the stress following abrupt termination and being cut off from Plaintiff's personal and professional items, tasks, and necessities. This amount will be proven at trial.

67.

Plaintiff specifically pleads that Defendant should be liable for interest on Plaintiff's damages which accrue from the time of Defendant's breach. O.C.G.A. § 13-6-13.

Count 2: Slander

68.

Plaintiff sought reemployment with other employers.

69.

Defendant made false and defamatory statements or charges against Plaintiff to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, calculating to injure him therein.

70.

Defendant made false and defamatory statements or charges against Plaintiff to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, with negligent or reckless disregard of the damages Plaintiff would suffer to his reputation and ability to gain reemployment.

71.

These false and defamatory statements or charges were made without privilege.

72.

Defendant uttered disparaging words to Plaintiff's potential new employers which produced special damages which flowed naturally therefrom.

73.

Defendant committed slander or oral defamation of the Plaintiff causing him damages, including special damages.

74.

As a direct and proximate cause of Defendant's slander and oral defamation, Plaintiff's employment applications have been rejected or delayed.

75.

As a direct and proximate cause of Defendant's slander and oral defamation, Plaintiff has not yet been able to secure re-employment, and has suffered immense damages, including financial losses, and emotional pain and suffering.

Count 3: Libel

76.

Plaintiff sought reemployment with other employers.

77.

Defendant made published in writing, statements or charges against Plaintiff, to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, calculating to injure him therein.

78.

Defendant made published in writing, statements or charges against Plaintiff, to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, with negligent or reckless disregard of the damages Plaintiff would suffer to his reputation and ability to gain reemployment.

79.

These false and defamatory statements or charges were made without privilege.

80.

Defendant's charges against Plaintiff, to Plaintiff's potential new employers produced special damages which flowed naturally therefrom.

81.

Defendant committed libel of the Plaintiff causing him damages, including special damages.

82.

As a direct and proximate cause of Defendant's libel, Plaintiff's employment applications have been rejected or delayed.

83.

As a direct and proximate cause of Defendant's libel, Plaintiff has been unable to secure re-employment, and has suffered immense damages, including financial losses, and emotional pain and suffering.

Count 4:  Race Discrimination - 42 U.S.C. § 1981

84.

42 U.S.C. §1981 prohibits race discrimination in the make and enforcing of contracts.

85.

42 U.S.C. § 1981 prohibits racial discrimination against whites as well as nonwhites.

86.

Defendant took adverse action against Plaintiff because of Plaintiff's race (white).

87.

Plaintiff's race (white) was a motivating factor in Defendant's taking adverse action against the Plaintiff.

88.

Defendant preferred nonwhites over whites in employment, including work environment, support, scheduling, treatment, promotion, work assignments, benefits, decisions to terminate, and in statements or references to former employee's new potential employers.

89.

Defendant subjected Plaintiff to unwelcome conduct and conditions because of Defendant's preference for nonwhites.

90.

Such conduct and conditions created a hostile work environment and resulted in tangible employment action against the Plaintiff.

91.

Specifically, surgery, call, patient care conditions, schedule, and support were altered to prefer nonwhite surgeons.

92.

Eventually, Defendant terminated Plaintiff and made negative references to his future employers.

93.

As a direct and proximate cause, Plaintiff was terminated, forced out of his contractual notice period, and has been unable to secure re-employment, thereby suffering immense damages, including financial losses, reputation loss, and emotional pain and suffering.

94.

Accordingly, Defendant is liable to the Plaintiff for compensatory damages, including back pay, front pay, lost benefits, interest, and emotional pain and suffering.

95.

Defendant should be held liable for the Plaintiff's attorney's fees and costs of litigation, including expert fees, under 42 U.S.C. § 1988.

96.

Defendant's actions were done with malice or reckless indifference to Plaintiff's federally protected rights, and therefore Defendant is liable to the Plaintiff for punitive damages in an amount to punish Defendant, or deter Defendant and others like Defendant from committing such conduct in the future. 42 U.S.C. § 1981.

## PUNITIVE DAMAGES

## ADDITIONAL DAMAGES, INTEREST, ATTORNEY'S FEES & COSTS

97.

Plaintiff specifically pleads that Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expenses. Accordingly, the Court or jury should order that Defendant pay, as part of Plaintiff's damages, expenses of litigation, including costs and attorney's fees. O.C.G.A. § 13-6-11.

98.

Plaintiff specifically pleads that Defendant has defended against Plaintiff's rightful demands, and that such defenses lacked substantial justification and were interposed for delay, and unnecessarily expanded the proceedings between the parties. O.C.G.A. § 9-15-14(b).

99.

The actions of Defendant show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences.

100.

Punitive damages should be awarded against Defendant in an amount sufficient to deter, penalize, and punish Defendant in light of the circumstances of this case, as provided in O.C.G.A. § 51-12-5.1.

WHEREFORE, Plaintiff requests that the Court:

a) Enter a judgment against the Defendant, and in favor of the Plaintiff, for each Count;

b) Order Plaintiff injunctive and equitable relief, specifically to restore Plaintiff to access to his email, and his personal and professional items, so that Plaintiff can complete tasks and necessities which are material and standard for the medical industry, and which were contemplated in the 90-day notice period in the Contract;

c) Order Defendant to pay Plaintiff compensatory and monetary damages for his salary, unreimbursed expenses, on call pay, incentive compensation, benefits, and other compensation owed to Plaintiff under his Contract;

d) Order that Defendant pay punitive damages in amount to deter, penalize, and punish.

e) Order Defendant to pay Plaintiff consequential, nominal, compensatory, and special damages as against Defendant to compensate Plaintiff for his mental and emotional distress, anxiety, humiliation, loss of professional and personal reputation, opportunities, lack of access to his personal and professional items, increased liability for malpractice, trouble and expense of transferring over to a new employer, loss of enjoyment of life, in an amount to be determined by a jury;

f) that Defendant be ordered to pay Plaintiff compensation, compensatory damages, front pay, back pay, lost benefits, lost retirement benefits, reasonable attorney fees, court costs, and expenses;

g) That Plaintiff have a judgment entered his favor, and against Defendant for all damages allowed to him under law;

h) That Plaintiff recover his attorney's fees, costs, and expenses of litigation as permissible under law.;

i) That Plaintiff be granted a trial by jury on all issues so triable;

j) That all costs of this action be case upon Defendant;

k) That defendant be ordered to pay pre-judgment and post-judgment interest according to law; and

l) Such other, further, and different relief as this Court deems just and proper.

Respectfully submitted this 31st day of May, 2023.

LAWSON, BECK & SANDLIN, LLC

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

# Plaintiff's Exhibit A

*(to Amended Complaint)*

*FINAL DRAFT 04/11/14*

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT ("Agreement") is between CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C., a Georgia professional corporation ("PCG"), and KEVIN WATKINS, M.D., a New York resident ("Doctor").

PCG is providing certain services to or for the benefit of patients treating for cancer at Southeastern Regional Medical Center ("CTCA-SE" or "Hospital") located in Newnan, Georgia and desires to employ the services of a qualified physician to serve as surgical oncologist at the Hospital. Doctor has the professional training and experience to provide such services and to serve in such capacity, and is licensed to practice medicine in Georgia. The parties wish to establish an employment relationship as hereinafter provided.

In consideration of the mutual promises and agreements hereinafter set forth herein and for other good and valuable consideration, receipt of which is acknowledged, the parties agree as follows:

1. <u>Incorporation of Recitals</u>. The recitals set forth above are incorporated by reference and are made an integral part of this Agreement.

2. <u>Effective Date</u>. This Agreement is entered into and is effective and binding as of August 18, 2014 the "Effective Date" of the Agreement.

3. <u>Term and Termination</u>. This Agreement shall remain in full force and effect until August 17, 2017 unless terminated as provided in section 4 hereof.

4. <u>Termination.</u>

4.1 At any time either party may terminate this Agreement without cause by giving the other party at least one hundred and twenty (120) calendar days' prior written notice of intent to terminate. In the event Doctor attempts to terminate this Agreement with less than one hundred twenty (120) days' notice or ceases performance or fails to provide the full amount of required notice, Doctor shall pay PCG as liquidated damages in an amount equal to all incentive and bonus compensation paid to Doctor in the twelve (12) months prior to termination. In the event that PCG terminates this Agreement pursuant to this Section 4.1, PCG shall continue to pay Doctor's base salary at the rate as described in Section 9.1 below for a period of one hundred eighty (180) days from the date of the notice of termination so long as Doctor continues to work fulltime for PCG hereunder for a period designated by PCG's Administrator (which period shall not exceed one hundred twenty (120) days from the date of termination notice); if Doctor does not continue to work fulltime for PCG during the time period requested by PCG's Administrator, PCG's obligation to make salary installment payments shall terminate on the last day on which Doctor works fulltime for PCG hereunder.

4.2 PCG shall have the right to immediately terminate this Agreement for cause including, without limitation, for any one of the following reasons:

4.2.1 Material Breach of a provision of this Agreement that is not cured after written notice;

4.2.2 Reasonable proof of Professional misconduct of Doctor as determined by PCG or by medical staff of Hospital that is not cured after written notice;

## FINAL DRAFT 04/11/14

4.2.3   Finding of guilty for a felony or a crime involving moral turpitude committed by Doctor;

4.2.4   Repeated acts of professional negligence by Doctor determined by a prospective QA process that are not cured after adequate written notice of initial acts;

4.2.5   Failure of the Doctor to meet any of the standards imposed by the section entitled "Physician Requirements" that are not cured after adequate written notice; or

4.2.6   Doctor's repeated neglect of duty or violation of the Hospital's policies, bylaws or rules or regulations that is not cured after written notice of initial acts.

4.3 In addition, this Agreement shall automatically terminate if Doctor dies or loses Doctor's license to practice medicine in Georgia.

5. Employment Agreement. PCG hereby agrees to employ Doctor and Doctor agrees to be employed by PCG as a surgical oncologist on the terms and subject to the conditions set forth in this Agreement.   Doctor agrees to serve PCG and to perform those duties related to PCG as may be assigned from time to time by PCG including the following  (collectively, the "Services").

5.1 Doctor hereby agrees to be on call to provide prompt medical care for surgical oncology issues. This will be shared equally with other surgical oncology staff physicians.

5.2 Doctor shall provide quality surgical oncology services with respect to PCG programs as directed by PCG.

5.3 When requested by PCG, Doctor shall be responsible for the following as they relate to surgical oncology:

5.3.1. Provide specialty medical management for inpatients and outpatients;

5.3.2   On-going in-service training of clinical and technical staff when deemed necessary;

5.3.3   Participation in clinical research and clinical research design;

5.3.4   Preparation of treatment protocols;

5.3.5   Development of disease orientated treatment to include front-line as well as secondary treatment of either a standard or investigatory nature;

5.3.6   Participation in responding to insurance reimbursement issues;

5.3.7   Creation and maintenance of necessary department medical charts, records and billing forms; and

5.3.8   Preparation of reports for publication including peer review journals.

5.4 Doctor shall provide such other services as reasonably requested by PCG's Administrator.

2

*FINAL DRAFT 04/11/14*

6. Scope. Doctor shall work full time for PCG and shall devote as much time, skill, labor and attention to the affairs and activities of PCG as PCG shall reasonably require to serve the best interests of PCG and the Hospital's inpatients, outpatients and office-based patients, but in no event fewer than forty-five (45) hours per week at the Hospital.

7. Professional Accountability.   In order to maintain internal quality control and to reduce morbidity and mortality and to improve patient care, Doctor agrees to be subject to and to participate in peer review activities established by the rules, regulations and bylaws of the medical staff the Hospital.

8. Quality Assessment and Improvement.   Doctor shall cooperate with the development and implementation of a quality assessment and improvement system and shall actively participate in QA&I programs including, but not limited to, periodic review of policies and procedures relating to patient care as well as any other quality assessment involvement deemed appropriate by PCG or by the officers of the Hospital.

9. Compensation and Benefits.   So long as Doctor has not breached any provision of this Agreement and so long as this Agreement remains in effect, during the term of this Agreement:

9.1 PCG shall pay Doctor for services at a rate of Three Hundred Seventy-Five Thousand Dollars ($375,000) per year; payment to be made in twenty-six (26) equal installments per year (every other week), but only as Doctor actually provided services in accordance herewith (PCG shall deduct FICA, withholding taxes and other amounts as required by law);

9.2 PCG shall pay Doctor incentive compensation (from which PCG shall deduct FICA, withholding taxes and other amounts as required by law) at the end of each calendar month in the amount of thirty-seven percent (37%) of the CMS-allowable charges for Doctor's professional services rendered during such calendar month; provided, however, in the event that Doctor remains continuously employed by PCG through July 31, 2015, the amount of such incentive compensation shall not be less than Seventy-Five Thousand Dollars ($75,000); and further provided that Doctor must remain current with Medical Record documentation measured in terms of Medical Record delinquency as defined by the CTCA-SE Medical Staff Bylaws and Rules and Regulations.   Each episode of Medical Record Delinquency will result in a deduction of Five Hundred Dollars ($500) from the bonus each month that Doctor remains delinquent;

9.3 Upon receipt of original documentation, PCG shall reimburse Doctor for Doctor's actual expenditures an amount not to exceed Five Thousand Dollars ($5,000) per year for Doctor's attendance at professional meetings, for the purchase of professional texts and professional journals for Doctor's use, for Doctor's continuing medical education, professional dues, licensing fees, DEA certification, computer and resource materials for CME, and subscriptions previously approved by PCG;

9.4 PCG shall provide Doctor the health, dental, disability and life insurance programs provided by PCG to its similarly situated physician employees, and will provide the opportunity for Doctor to add Doctor's family to these benefits at Doctor's cost consistent with the plan then in existence;

9.5 Doctor shall be eligible to participate in such 401(k) and similar plan(s) as may then be provided by PCG to its similarly situated physician employees, in accordance with the terms thereof;

3

## FINAL DRAFT 04/11/14

9.6 Upon receipt of appropriate documentation, PCG shall reimburse Doctor for Doctor's actual expenditures for reasonable expenses not to exceed Twenty Thousand Dollars ($20,000) incurred in relocating Doctor's household belongings to the Newnan area;

9.7 PCG shall provide Doctor with six months of housing allowance of $2,000 a month; and

9.8 Upon execution of this Agreement, PCG shall make a loan to Doctor (the "Loan") in the principal amount of Fifty Thousand Dollars ($50,000), which Loan shall bear interest at five percent (5%) on amounts outstanding from time to time. Doctor shall repay the Loan by permitting PCG to offset the incentive compensation described in Section 9.2 above from and after the time that Doctor has actually received Seventy-Five Thousand Dollars ($75,000); provided, however, all amounts owed on the loan shall be repayable immediately in the event that Doctor terminates this Agreement pursuant to Section 4.1 above; and provided further that, in the event that PCG terminates this Agreement pursuant to Section 4.1 above, any amount of the Loan remaining outstanding on the date of such termination shall be forgiven. In addition, Doctor shall have the right to prepay the Loan at any time.

10. <u>Billing</u>.   PCG shall have the exclusive right to bill, collect and retain in its own name the professional service fees for any and all professional services provided by Doctor at CTCA-SE or to PCG patients and other services assigned by PCG. Doctor agrees that Doctor shall not submit any invoices for any of Doctor's professional services to any patient or third-party payor.

11. <u>Time Off</u>.  Doctor, after consultation with and approved by PCG, may schedule thirty-one (31) weekdays off per year, of which six (6) are the Federal holidays, twenty (20) are for vacation, and five (5) are for continuing medical education ("CME"). Vacation and CME days do not roll over into the following year.

12. <u>Personnel Policies</u>.  Doctor shall be subject to the CTCA-SE's personnel policies except to the extent to which such policies are contrary to the provisions of this Agreement.

13. <u>Regulation.</u>

13.1 Doctor shall comply with all applicable provisions of law and other rules and regulations of any and all governmental authorities relating to licensure and regulation of physicians.

13.2 Doctor shall cooperate in conducting Services in accordance with the standards and recommendations of the Joint Commission ("TJC"), the American College of Surgeons ("ACS"), the Georgia Department of Public Health and the bylaws, policies, rules and regulations of the Hospital.

13.3 Doctor shall assist in attaining and maintaining all relevant licensures, TJC accreditation and ACS approval for programs operated at the Hospital.

14. <u>Physician Requirements</u>.

14.1 Doctor agrees that Doctor shall at all times relevant hereto be licensed to practice medicine in Georgia.

14.2 Doctor shall complete all medical charts within ten (10) working days from an inpatient's discharge date and within four (4) days of any significant diagnosis, treatment, test, observation, history or order for any patient of Doctor, whichever is earlier.

4

*FINAL DRAFT 04/11/14*

14.3 Continuation of this Agreement shall be contingent upon Doctor's continuing satisfaction of the requirements of this section entitled "Physician Requirements".

14.4 Doctor shall strictly abide by the Principles of Medical Ethics of the American Medical Association.

15. <u>Non-exclusivity</u>.   Patients treated under this Agreement are and shall remain patients of PCG.  PCG may determine which patients or clients shall or shall not be treated or served by Doctor and may arrange for other physicians or entities to provide medical services to patients already treated by Doctor when so requested by the patient or when believed by PCG to be in the best interest of the patient.

16. <u>Professional Liability Insurance</u>.  Except as otherwise provided herein, PCG shall provide and maintain professional liability insurance through CTCA's self-insured program covering Doctor for services rendered to PCG's patients at CTCA-SE in the amount required by the medical staff regulations of CTCA-SE.  Such coverage is currently accounted on an "occurrence" basis; in the event that coverage becomes "claims made", PCG shall provide "tail" insurance for Doctor for acts committed in the scope of employment hereunder.  Such insurance shall expressly NOT include any prior acts coverage and will NOT include any coverage for acts or omissions relating to patients other than PCG's patients. As a condition precedent to PCG's obligations under this Section 16, Doctor shall provide PCG's Administrator with evidence of "tail" insurance covering Doctor's prior acts.

17. <u>Confidentiality and Access to Medical Information</u>.

17.1 Doctor acknowledges that PCG has certain non-public confidential business information, including but not limited to non-public information and information designated by PCG to be kept confidential; treatment information; including procedures, processes and protocols relating to complementary medicine, and other things that differentiate PCG's business and treatment styles; business strategies and other strategies and plans regarding sales, advertising, and marketing; financial data such as revenues and earnings figures, pricing information, schedules of charges and rates; scientific data, research results and information about research projects; as well as personnel files and other non-public personnel information ("Confidential Information") which Doctor has acquired and will continue to receive access to in the course of Doctor's employment with PCG. Doctor recognizes and agrees that this information is proprietary, highly sensitive and valuable. During Doctor's employment with PCG and thereafter, Doctor will maintain all Confidential Information that comes into Doctor's possession as confidential and as the property of PCG, and such Confidential Information shall not be disclosed by Doctor nor used by Doctor in any way, except (during Doctor's employment with PCG) as required by Doctor's duties to, and for the benefit of, PCG.  Confidential Information does not include information that is generally available to the public through no violation of confidentiality obligations by Doctor or anyone else.

17.2 Doctor shall not disclose any patient information in the possession of PCG or the Hospital (no matter what form or format it is in) including that concerning test results, diagnosis or treatment of any patient to anyone other than appropriate members of the medical staff or appropriate medical audit committees of the relevant Hospital without prior written consent from the patient or his/her authorized representative except as part of the treatment of patient by a health care provider.

17.3 Doctor will not remove any Confidential Information from PCG's premises except as Doctor's duties shall require and as authorized by PCG, and upon any termination of

5

Doctor's employment, Doctor will immediately turn over all Confidential Information to Doctor's supervisor or other designee of PCG, and Doctor shall retain no copies (either paper, digital, or electronic) thereof.

17.4 Any patient information as well as the medical records of patients provided service hereunder shall at all times remain the property of PCG or the Hospital and shall be treated as confidential. Access to and release of such medical records or any information contained therein (no matter what form or format it is in) shall be in accordance with the Hospital's policies. Doctor shall not disclose any information relating to operations of PCG or the Hospital to persons other than appropriate PCG members without prior written consent of PCG or of the Hospital.

17.5 During and after this Agreement, Doctor agrees to assist PCG to obtain access to any and all medical records relating to patients treated by Doctor during the term of this Agreement.

## 18. Intellectual Property Ownership.

18.1 **Purpose.** PCG recognizes that the value of PCG and Hospital to patients goes beyond the physical surroundings of Hospital and the comfort and care that can be offered as individuals. PCG stakes its business on collaborating with the best minds in medicine and providing innovative, progressive therapies, many of which are developed by its physicians. As such, PCG realizes Doctor might conceive some ideas or create new treatments or protocols in Doctor's practice. To look after Doctor, Hospital's patients and the investments of PCG and its affiliates, PCG asks that Doctor assign those innovations to PCG so that it can explore the best possible means of protecting them.

18.2 **Description.** In furtherance of the joint mission of PCG, Hospital and their respective employees to provide innovative, advanced and effective therapies and overall compassionate and excellent integrative patient care, PCG invites and encourages Doctor to create inventions, improvements, ideas, concepts, know-how, designs, models, research, clinical innovations, protocols and other clinical-related intellectual property, proposals, procedures, strategies, methodologies and techniques, and other intellectual property, materials, information and data and related documentation. All such items created, conceived or developed by Doctor, alone or together with other PCG or Hospital employees or contractors, during the term of Doctor's employment or other relationship with PCG (whether prior to, on or after the Effective Date) are considered "Work." "Work" does not include, however, and this Agreement does not apply to, any invention developed by Doctor (i) entirely on Doctor's own time and (ii) without the use of any equipment, supplies, facilities or trade secret information of PCG or Hospital or any of their affiliates, unless such invention (a) relates to the business of PCG, Hospital or any of their affiliates or their respective actual or demonstrably anticipated research or development or (b) results from any work performed by Doctor for PCG.

18.3 **Ownership of Work.** To permit PCG, Hospital and their affiliates to consolidate, enhance and protect the Work of their various employees in the interest of supporting the collective mission, vision and values thereof, (i) Doctor understands and agrees that, to the extent permitted by law, the Work shall be deemed a "work made for hire" of PCG, (ii) Doctor hereby irrevocably assigns and transfers to PCG, effective with respect to each item of Work as of the date of its creation, any and all rights, title and interest Doctor may have or may acquire in and to the Work (including any Work not deemed, for whatever reason, to have been created as a work made for hire), in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised, including any and all

6

*FINAL DRAFT 04/11/14*

intellectual property rights in the Work, and the right to prosecute and recover damages for all past, present and future infringements and other violations of the Work, and (iii) Doctor hereby irrevocably waives and assigns to PCG any and all so-called moral rights or "droit moral" Doctor may have in or with respect to any Work (e.g., rights of attribution and preventing others from modifying the Work). Nothing contained in this Agreement will, however, require PCG to exercise or exploit any of its rights in or to the Work.

18.4   Notifying PCG of Work. To enable PCG to identify and utilize Work created by its employees, during the term of Doctor's relationship with PCG, Doctor agrees to maintain current and accurate records of all Work. Upon the termination of Doctor's relationship with PCG for any reason, and/or at any time upon PCG's reasonable request, Doctor agrees to promptly (i) disclose to PCG all Work, (ii) deliver to PCG all documentation and other tangible materials that in any way embody, comprise, incorporate, or reflect the Work, and (iii) confirm in writing to PCG that Doctor has fully complied with these requirements.

18.5   Further Documentation. Doctor also agrees that, upon PCG's request, Doctor will promptly execute and deliver to PCG any and all further assignments, patent applications, and/or such other documents as PCG may deem necessary to vest in PCG any of its rights in the Work and/or protect any Work.

18.6   IP Warranties. Doctor hereby represents and warrants that: (i) except as expressly authorized by PCG in each instance, the Work (excluding any materials provided by PCG to Doctor) does not and will not use or disclose any trade secrets, confidential information or other proprietary information of any individual or entity, including without limitation any works developed by Doctor for any individual or entity other than PCG; (ii) Doctor will not challenge PCG's or any of its affiliates' rights in any Work or infringe or otherwise violate any such rights; and (iii) neither the Work, nor the exploitation and/or use by PCG and/or any of its affiliates of any Work (excluding any materials provided by PCG to Doctor), in any manner or media throughout the world, will, to Doctor's knowledge, in any way infringe or otherwise violate any intellectual property, privacy or other rights of any individual or entity.

18.7   IP Indemnification. Doctor agrees to reimburse and indemnify PCG, its affiliates (including without limitation Hospital and CTCA) and their respective licensors, and the officers, directors, members, managers, employees, agents, and representatives of PCG and its affiliates and their respective licensors (collectively, the "PCG Indemnitees"), and hold such PCG Indemnitees harmless against, any and all actions, damages, losses, expenses, claims, demands, costs and liabilities of any nature whatsoever (including reasonable attorneys' fees and court costs), incurred by any such PCG Indemnitees in connection with or arising out of any claim by a third party that any Work, or the use thereof, infringes or otherwise violates any intellectual property, privacy, or other rights of any individual or entity.

19. Equitable Remedies.   Doctor recognizes that any breach by Doctor of the terms and conditions of the section above entitled "Confidentiality and Access to Medical Information" will cause PCG or the Hospital losses, which are not fully compensable by monetary damages. Therefore, PCG and the Hospital shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction to enjoin any such breach, or threatened breach, and, in addition thereto, to obtain damages or enforce strict performance by Doctor of the provisions of such sections or to obtain any combination of such remedies as PCG or the Hospital shall elect. The prevailing party in any such action shall be entitled to reasonable attorneys' fees incurred in connection with any proceedings to enforce this Agreement.

7

*FINAL DRAFT 04/11/14*

20. Representation of Doctor.  DOCTOR HEREBY REPRESENTS AND WARRANTS THAT (i) DOCTOR WILL NOT USE OR NEED TO USE ANY CONFIDENTIAL, PROPRIETARY OR TRADE SECRET INFORMATION FROM ANY FORMER EMPLOYER IN PERFORMING DOCTOR'S DUTIES FOR PCG OR CTCA, AND (ii) DOCTOR IS NOT CURRENTLY SUBJECT TO ANY AGREEMENT OR ARRANGEMENT THAT WOULD PROHIBIT OR RESTRICT DOCTOR FROM ENTERING INTO THIS AGREEMENT OR PERFORMING SERVICES HEREUNDER.  DOCTOR ACKNOWLEDGES THAT PCG IS RELYING ON THE ACCURACY OF SUCH REPRESENTATION AS A CONDITION PRECEDENT TO ENTERING INTO THIS AGREEMENT.

21. Applicable Law.  This Agreement shall be governed by and construed under the laws of Georgia.

22. Severability.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

23. Notice.  Any notice, election, request, demand, designation, consent, agreement or communication given or required to be given under this Agreement shall be in writing and signed by or on behalf of the party giving it, shall be personally delivered to the Doctor or the Administrator of PCG, as applicable, or sent by U.S. certified mail, or by Express Mail or similar private overnight delivery service addressed to the party at their last known address.

24. Assignment.  PCG may assign this agreement to an affiliate on written notice to Doctor, so long as such affiliate is a physician practice that provides medical services in Georgia.

25. Integration.  This Agreement constitutes the entire Agreement between the parties and contains all agreements between the parties with respect to the subject matter hereof. This Agreement supersedes all other agreements, either in writing or oral between the parties hereto with respect to the same or similar subject matter.

The parties execute this Agreement as of the Effective Date.

CANCER TREATMENT CENTERS
OF AMERICA PROFESSIONAL
CORPORATION OF GEORGIA, P.C.

By: _____
Its: Administrator

KEVIN WATKINS, M.D.

8

# Plaintiff's Exhibit B

*(to Amended Complaint)*

## FIRST AMENDMENT TO AMENDED AND RESTATED EMPLOYMENT AGREEMENT

This FIRST AMENDMENT TO EMPLOYMENT AGREEMENT ("First Amendment"), between Cancer Treatment Centers of America Professional Corporation of Georgia, P.C., a Georgia professional corporation ("PCG") and **Kevin Watkins, M.D.,** a resident of Georgia ("Doctor"), is effective as of the 18th day of August, 2017 (the "Effective Date").

BACKGROUND:

a. PCG and Doctor entered into an Employment Agreement effective August 18, 2014 (the "Agreement").

b. PCG and Doctor wish to amend the terms of the Agreement as set forth below.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the PCG and Doctor agree as follows:

1. Incorporation of Background. The Background set forth above is incorporated by reference and made an integral part of this First Amendment.

2. Extension of Term and Change in Notice of Termination. The Term of the Agreement is hereby extended to expire August 17, 2018 unless earlier terminated pursuant to the Agreement, as amended hereby. Unless either party shall give at least 90 days prior notice, the Agreement shall automatically extend for successive one (1) year terms unless terminated in accordance with Section 4 of the Agreement; provided however, for each one year term beginning on or after August 17, 2018, either party may terminate the Agreement upon ninety (90) days prior written notice. The procedures and effect of any such termination shall remain unchanged; only the notice period shall change for terms beginning on or after August 17, 2018.

3. Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect and the Agreement, as amended hereby, is ratified and confirmed.

IN WITNESS WHEREOF, the parties have caused this First Amendment to be executed by their duly authorized representatives, as of the date set forth above.

**Cancer Treatment Centers of America
Professional Corporation of Georgia, P.C.**

By: _____

Name: ANNE MEISNER

Title: CEO

By: _____

Name: Kevin Watkins, M.D.

# Plaintiff's Exhibit C

*(to Amended Complaint)*

**SECOND AMENDMENT TO**

**EMPLOYMENT AGREEMENT**

This SECOND AMENDMENT TO THE EMPLOYMENT AGREEMENT (**"Second Amendment"**), between CTCA Physicians Group of Georgia, Inc., a Georgia corporation f/k/a Cancer Treatment Centers of America Professional Corporation of Georgia, P.C., a Georgia professional corporation (**"PG"**) and Kevin Watkins, M.D., a resident of Georgia (**"Doctor"**), is effective as of January 1, 2022 ("**Effective Date**").

**BACKGROUND:**

a. PG and Doctor entered into an Employment Agreement effective August 18, 2014 and amended August 18, 2017 (collectively, the **"Agreement"**) whereby Doctor provides services to PG as a surgical oncologist.

b. PG and Doctor agreed to a monthly payment of one thousand four hundred forty-four dollars ($1,444) to cover additional emergency general surgery call.

c. PG and Doctor now wish to memorialize and amend the Agreement as set forth below in order to compensate Doctor for the call coverage provided.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the PG and Doctor agree as follows:

1    Incorporation of Background.  The Background set forth above is incorporated by reference and made an integral part of this Second Amendment.

2    Section 9 – Compensation and Benefits.  A new Section 9.9 shall be added as follows:

*"In addition to providing surgical oncology call coverage as previously stipulated, Doctor shall provide emergency general surgery call coverage coinciding with surgical oncology call days. Doctor shall be paid One Thousand Four Hundred Forty-Four Dollars ($1,444) per month ($666.45 per pay period) for call coverage"*

3    Ratified and Confirmed.  Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect and the Agreement, as amended hereby, is ratified and confirmed.

(SIGNATURE PAGE FOLLOWS)

**IN WITNESS WHEREOF,** the parties have caused this Second Amendment to be executed by their duly authorized representatives, as of the date set forth above.

**CTCA PHYSICIANS GROUP OF GEORGIA, INC.,**
**F/K/A CANCER TREATMENT CENTERS OF**
**AMERICA PROFESSIONAL CORPORATION OF**
**GEORGIA, P.C.**

**DOCTOR:**

By: _____

*Electronically*
*signed by: Jonathan*
*E. Weldon*
*Date: Apr 8, 2022*
*08:41 CDT*

*Electronically signed*
*by: Kevin T Watkins*
*Date: Apr 8, 2022*
*11:10 EDT*

Name: _____

**KEVIN WATKINS, M.D.**

Title: _____

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,                                      )
                                                      )
     Plaintiff,                                    )
                                                      )
     v.                                            )          CIVIL ACTION FILE
                                                      )
CTCA    PHYSICIANS    GROUP    OF                     )          NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS                    )
GROUP OF GEORGIA, INC. f/k/a CANCER                   )
TREATMENT  CENTERS  OF  AMERICA                       )
PROFESSIONAL    CORPORATION    OF                     )
GEORGIA, P.C.,                                        )

     Defendant.

## VERIFICATION

Personally appeared KEVIN T. WATKINS who, after being duly sworn, states that the

facts alleged in the foregoing *Amended Complaint* are true and correct to the best of his knowledge,

belief and information.

_____
KEVIN T. WATKINS, Plaintiff

Sworn to and subscribed before me this
31ˢᵗ day of ___May___, 2023

_____
Notary Public

My commission expires:

___July 6, 2025___

# IN THE SUPERIOR COURT OF COWETA COUNTY
## STATE OF GEORGIA

KEVIN T. WATKINS,                          )
                                           )
    Plaintiff,                         )
                                           )
    v.                                 )        CIVIL ACTION FILE
                                           )
CTCA   PHYSICIANS   GROUP   OF             )        NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS         )
GROUP OF GEORGIA, INC. f/k/a CANCER        )
TREATMENT  CENTERS  OF  AMERICA            )
PROFESSIONAL   CORPORATION   OF            )
GEORGIA, P.C.,                             )

    Defendant.

## CERTIFICATE OF SERVICE

This is to certify that I have, this 2nd day of June , 2023, served a true and correct

copy of the within and foregoing **AMENDED COMPLAINT** upon all parties and/or counsel of

record by electronically filing the same via PeachCourt, which will automatically serve a copy of

the same to counsel of records as follows:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,         )
                              )
      Plaintiff,        )
                              )
      v.                    )     CIVIL ACTION FILE
                              )
CTCA PHYSICIANS GROUP OF  )     NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS )
GROUP OF GEORGIA, INC. f/k/a CANCER )
TREATMENT CENTERS OF AMERICA )
PROFESSIONAL CORPORATION OF )
GEORGIA, P.C.,                     )

      Defendant.

---

**<u>MOTION TO EXTEND DISCOVERY</u>**

---

COMES NOW, Plaintiff KEVIN T. WATKINS, by and through his undersigned counsel of record, and respectfully moves this Honorable Court to extend the discovery period through and including December 1, 2023.  In support thereof, the parties state as follows:

On November 22, 2022, Plaintiff filed his original *Complaint for Breach of Contract* against original Defendant CTCA PHYSICIANS GROUP OF GEORGIA, LLC f/k/a CTCA PHYSICIAN GROUP OF GEORGIA, INC., f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.  (hereafter "CTCA").

On December 27, 2022, Defendant filed its *Verified Answer and Affirmative Defenses of Defendant*.

The compulsory discovery period is set to expire on June 27, 2023.  Uniform Superior Court Rule 5.1.

The parties exchanged written discovery requests and responses starting in February 2023. Plaintiff has continued to supplement his written responses after uncovering several new witnesses and evidence. Defendant took Plaintiff's deposition on May 5, 2023.

During discovery, Plaintiff discovered additional evidence and testimony related to new claims for defamation and race discrimination committed by CTCA, by CTCA's employees JONATHAN WATKINS and ANITA JOHNSON, and by CTCA's newly formed entity, CITY OF HOPE (INC.).

Plaintiff filed his *Amended Complaint* against CTCA on June 2, 2023, adding claims for Libel, Slander, Race Discrimination under 42 U.S.C. § 1981, and punitive damages.

Plaintiff filed suit against JONATHAN WATKINS, ANITA JOHNSON, and OF HOPE (INC.) in Civil Action File No. SUV2023000658, Superior Court of Coweta County, Georgia, on June 2, 2023, alleging Libel, Slander, Race Discrimination under 42 U.S.C. § 1981, and punitive damages, among other things.

Plaintiff filed a *Motion for Joinder* on June 2, 2023, requesting to join the parties and claims of Civil Action File No. SUV2023000658 to this action.

The form, scope, and parties have expanded. The parties have diligently pursued a discovery, however Plaintiff is in need of additional time to conduct discovery and to utilize the Court's compulsory power to continue his discovery in this action; and to combine those efforts with the discovery efforts of Civil Action File No. SUV2023000658.

WHEREFORE, the parties respectfully request that this Court enter and Order extending the period for completion of discovery through and including December 1, 2023.

Respectfully submitted this 2nd day of June, 2023.

LAWSON, BECK & SANDLIN, LLC

*/s/ Holly H. Maestas*
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,                          )
                                           )
        Plaintiff,                         )
                                           )
        v.                                 )          CIVIL ACTION FILE
                                           )
CTCA   PHYSICIANS   GROUP   OF             )          NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS         )
GROUP OF GEORGIA, INC. f/k/a CANCER        )
TREATMENT  CENTERS  OF  AMERICA            )
PROFESSIONAL    CORPORATION    OF          )
GEORGIA, P.C.,                             )
                                           )
        Defendant.

## CERTIFICATE OF SERVICE

This is to certify that I have, this 2nd day of June, 2023, served a true and correct copy of

the within and foregoing **MOTION TO EXTEND DISCOVERY** upon all parties and/or

counsel of record by electronically filing the same via PeachCourt, which will automatically

serve a copy of the same to counsel of records as follows:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC

*//s// Holly H. Maestas*

_____
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

**IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA**

KEVIN T. WATKINS,              )
                              )
    Plaintiff,                )
                              )
    v.                        )          CIVIL ACTION FILE
                              )
CTCA    PHYSICIANS    GROUP    OF    )          NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS    )
GROUP OF GEORGIA, INC. f/k/a CANCER    )
TREATMENT CENTERS OF AMERICA    )
PROFESSIONAL    CORPORATION    OF    )
GEORGIA, P.C.,                )
                              )
    Defendant.                )

---

## MOTION FOR JOINDER

---

COMES NOW, KEVIN T. WATKINS, Plaintiff and files this *Motion for Joinder*, pursuant to O.C.G.A. §§ 9-11-15, 9-11-18, 9-11-19, and 9-11-21, to add claims against CTCA PHYSICIANS GROUP OF GEORGIA, LLC f/k/a CTCA PHYSICIAN GROUP OF GEORGIA, INC., f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C., Defendant; and to add new party defendants to this action, namely: CITY OF HOPE (INC.), JONATHAN WATKINS, and ANITA JOHNSON; and respectfully shows this Honorable Court as follows.

On November 22, 2022, Plaintiff filed his original *Complaint for Breach of Contract* against original Defendant CTCA PHYSICIANS GROUP OF GEORGIA, LLC f/k/a CTCA PHYSICIAN GROUP OF GEORGIA, INC., f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C. (hereafter "CTCA").

During discovery, Plaintiff discovered additional evidence and testimony related to new claims for defamation and race discrimination by CTCA, by CTCA employees JONATHAN WATKINS and ANITA JOHNSON, and by CTCA's newly formed entity, CITY OF HOPE (INC.).

Plaintiff filed his *Amended Complaint* against CTCA on June 2, 2023, adding claims for Libel, Slander, Race Discrimination under 42 U.S.C. § 1981, and punitive damages.

Plaintiff filed suit against JONATHAN WATKINS, ANITA JOHNSON, and OF HOPE (INC.) in Civil Action File No. SUV2023000658, Superior Court of Coweta County, Georgia, on June 2, 2023, alleging Libel, Slander, Race Discrimination under 42 U.S.C. § 1981, and punitive damages, among other things. A copy of this Complaint is attached to this Motion as Plaintiff's Exhibit D.

Defendant City of Hope (Inc.) is also known as "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

Defendant City of Hope (Inc.) is responsible for the contractual obligations of "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

Defendant City of Hope (Inc.) is responsible for the torts of "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

Defendant City of Hope (Inc.), "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C. may be collectively referred to as "CTCA."

Defendant Jonathan Watkins is the President and CEO of City of Hope (Inc.), CTCA, and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

Defendant Anita Johnson is the Chief of Surgery of City of Hope (Inc.), CTCA, and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

"A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." O.C.G.A. § 9-11-15(a).   "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party..." O.C.G.A. § 9-11-18(a).

A person who is subject to service of process shall be joined as a party in the action if: (2) He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest; or (B) Leave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

O.C.G.A. § 9-11-19.

Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

O.C.G.A. § 9-11-21.

Here, the claims and defenses of, and against, CTCA may overlap with those of, and against, WATKINS, JOHNSON, and CITY OF HOPE (INC.). Moreover, the facts of the new claims may overlap with those of the original claims. All claims and parties sought to be joined together here arise from the same transaction or occurrence.

WHEREFORE, Plaintiff requests that the Court enter an order joining Civil Action Number SUV2023000658 to this action, along with its Defendants and claims.

Respectfully submitted this 2nd day of June, 2023.

LAWSON, BECK & SANDLIN, LLC

/s/ Holly H. Maestas

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

# Plaintiff's Exhibit D

*(to Motion for Joinder)*

⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

SUV2023000658

JUN 02, 2023 04:19 PM

*Niki Sewell*
Niki Sewell, Clerk
Coweta Superior Court

## IN THE SUPERIOR COURT OF COWETA COUNTY
## STATE OF GEORGIA

KEVIN T. WATKINS,                                    )
                                                     )
    Plaintiff,                               )
                                                     )
v.                                                   )     CIVIL ACTION FILE
                                                     )
CITY OF HOPE (INC.), JONATHAN                        )     NO. _____
WATKINS, and ANITA JOHNSON,                          )
                                                     )
    Defendants.                              )
                                                     )

---

## COMPLAINT

---

COMES NOW, KEVIN T. WATKINS, Plaintiff in the above-styled civil action (hereinafter referred to as "Plaintiff"), and files this, his *Complaint* (hereinafter referred to as the "Complaint") against CITY OF HOPE (INC.), JONATHAN WATKINS, and ANITA JOHNSON, Defendants in the above-styled civil action (hereinafter collectively referred to as the "Defendants"), and respectfully shows this Honorable Court as follows. The Plaintiff and Defendants will collectively be referred to as the "parties."

### STATEMENT OF JURISDICTION & VENUE

1.

Plaintiff is a resident of Georgia.

2.

Defendant City of Hope (Inc.) is a California corporation which may be served through its Georgia registered agent C T Corporation, 289 S Culver St, Lawrenceville, GA 30046-4805.

3.

Defendant City of Hope (Inc.) is also known as "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

4.

Defendant City of Hope (Inc.) is responsible for the contractual obligations of "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

5.

Defendant City of Hope (Inc.) is responsible for the torts of "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

6.

Defendant City of Hope (Inc.), "Cancer Treatment Centers of America," "CTCA," and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C. may be collectively referred to as "CTCA."

7.

Defendant City of Hope (Inc.) with be referred to in this Complaint as "City of Hope."

8.

Defendant Jonathan Watkins is the President and CEO of City of Hope (Inc.), CTCA, and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

9.

Defendant Jonathan Watkins is a black male, and an individual resident of Georgia, who may be served by personal service in Georgia.

10.

Defendant Anita Johnson is the Chief of Surgery of City of Hope (Inc.), CTCA, and CTCA PHYSICIANS GROUP OF GEORGIA, LLC, f/k/a CTCA PHYSICIANS GROUP OF GEORGIA, INC. f/k/a CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C.

11.

Defendant Anita Johnson is a black female, and an individual resident of Georgia, who may be served by personal service in Georgia.

12.

Jurisdiction is appropriate in this Court.

13.

Venue is appropriate in this Court because Defendants are residents of Coweta County, Georgia.

## STATEMENT OF FACTS & CLAIMS

14.

Plaintiff is a white male.

15.

Plaintiff is a highly skilled and experienced surgical oncologist.

16.

Plaintiff began working with CTCA as a surgical oncologist in or around August 2014.

17.

In or around October 2015, Plaintiff was appointed the surgery lead on designing and implementing the Enhanced Recovery Pathway at CTCA's Southeastern Regional Medical Center.

18.

In or around November 2015, Plaintiff was appointed Vice Chief of Surgery at CTCA's Southeastern Regional Medical Center.

19.

In or around January 2016, the Enhanced Recovery Pathway program Plaintiff created was implemented throughout CTCA nationwide.

20.

In or around November 2016, Plaintiff was appointed Chief of Surgery at CTCA's Southeastern Regional Medical Center.

21.

In or around June 2016, Plaintiff was named Atlanta Magazine's Top Doctor.

22.

In or around November 2017, Gary Bernstein became CTCA's new Chief of Surgery.

23.

In late 2019, Jonathan Watkins was appointed the president and CEO of CTCA's Southeastern Regional Medical Center.

24.

In or around April 2020, Jonathan Watkins pressured Bernstein to step down as Chief of Surgery.

25.

In or around April 2020, Bernstein was replaced by Anita Johnson as Chief of Surgery by Jonathan Watkins.

26.

In or around March 2022, Jonathan Watkins interviewed Dr. Chukwuemeka Obiora (a black male) for an additional surgical oncology position.

27.

Plaintiff and surgical oncologist Katherine Poruk (a white female) were sufficiently handling the existing surgical oncology patients without the need of an additional surgical oncologist.

28.

In or around April 2022, Defendants hired Chukwuemeka Obiora (a black male) as a surgical oncologist.

29.

The surgical oncologists typically work as a team to handle patients within the same employer.

30.

Plaintiff was not involved in the hiring of Obiora, nor was Plaintiff given any notice that Obiora would be joining the surgical oncology team at CTCA, prior to Obiora's first day.

31.

Plaintiff is more qualified than Obiora as a surgical oncologist.

32.

Jonathan Watkins sent out an email to one of CTCA's internal listservs which stated that Obiora was an expert in multiple areas of surgical oncology.

33.

Jonathan Watkins' email is false because Obiora did not have adequate experience to claim surgical oncology expertise in all these areas.

34.

Jonathan Watkins' email had the effect of having multiple patients, which would be assigned to Plaintiff, to now be assigned to Obiora.

35.

Defendants replaced various other white surgeons with black, or non-white, surgeons since Jonathan Watkins' arrival at Southeastern Regional Medical Center.

36.

Obiora's surgeries were excessively long and had poor outcomes.

37.

Plaintiff raised Obiora's surgical judgment and poor outcomes as a concern to Defendants.

38.

Anita Johnson made an unofficial list of operating room staff, circulating nurses, and scrub techs that were permitted, and not permitted, to work in Obiora's operating room.

39.

Anita Johnson's unofficial list of staff that were not permitted to work in Obiora's operating room were all white.

40.

This was done to protect Obiora.

41.

In or around July 2022, Defendants hired Dr. Hixon (a black male) general surgeon to assist Obiora on his cases.

42.

Hixon was not permitted to assist Plaintiff or Poruk.

43.

Anita Johnson repeatedly praised Obiora's surgical skills in front of staff and other surgeons.

44.

Anita Johnson interfered with Plaintiff's ability to schedule his patient's surgery in the usual manner, delaying his patient's care in favor of non-white physicians.

45.

On August 19, 2022, Anita Johnson made a change to Plaintiff's call schedule responsibilities which forced Plaintiff to be on call all the time.

46.

CTCA abruptly terminated Plaintiff on August 19, 2022.

47.

Following his termination, Plaintiff applied for several different positions.

48.

Defendants published false and defamatory statements about the Plaintiff to his potential new employers.

49.

These false and defamatory statements were made about Plaintiff's trade, office, and profession, and in reference to his reputation in general.

50.

As a direct and proximate cause of these false and defamatory statements, these potential employers have either delayed hiring Plaintiff, or not hired Plaintiff at all.

Count 1:  Breach of Contract (against Defendant City of Hope)

51.

On or about April 11, 2014, Plaintiff and CTCA entered into a written contract entitled *Employment Agreement* in which they would be required to perform certain duties.   The *Employment Agreement* is attached as Plaintiff's Exhibit A.  This document will be referred to in this Complaint as the "Original Contract."

52.

On or about August 18, 2017, Plaintiff and CTCA executed the first written amendment to the *Employment Agreement* which is entitled *First Amendment to Amended and Restated Employment Agreement*, and it is attached as Plaintiff's Exhibit B. This document will be referred to in this Complaint as "Contract Amendment One."

53.

On or about April 8, 2022 (with an effective date of January 1, 2022), Plaintiff and CTCA executed the second written amendment to the *Employment Agreement* which is entitled *Second Amendment to Employment Agreement*, and it is attached as Plaintiff's Exhibit C. This document will be referred to in this complaint as "Contract Amendment Two."

54.

The Original Contract, Contract Amendment One, and Contract Amendment Two will be collectively referred to in this Complaint as the "Contract."

55.

CTCA agreed, in the Original Contract, that when Plaintiff was on call, that this call would "be shared equally with other surgical oncology staff physicians." Original Contract, § 5.1. CTCA agreed in Contract Amendment Two, that when Plaintiff was on general surgery call, that these call days would "coincide[e] with surgical oncology days." Contract Amendment Two, § 9.9.

56.

Despite these limits to Plaintiff's call duties, CTCA breached these terms on the Contract and required Plaintiff to take call almost 24/7. When Plaintiff pointed this out, CTCA retaliated against Plaintiff and abruptly terminated him, without cause, in violation of the terms of the Contract.

57.

If CTCA terminates Plaintiff without cause, the Contract requires "at least [ninety (90) days prior written notice] of intent to terminate," and requires CTCA "to pay [Plaintiff's] base salary . . . for . . . one hundred eighty (180) days from the date of the notice of termination." Original Contract, § 4.1; Contract Amendment One, § 1.  CTCA may only "immediately terminate" Plaintiff "for cause."  Original Contract, § 4.2.

58.

Despite these limits on how Plaintiff may be terminated, CTCA orally terminated Plaintiff on or about August 19, 2022.

59.

This abrupt, verbal termination is a breach of Contract which caused Plaintiff damages which are accruing.

60.

CTCA gave written notice of Plaintiff's termination on August 30, 2022.

61.

CTCA failed to pay the proper contracted amount of Plaintiff's base salary, between August 19, 2022 and August 30, 2022, which is $11,301.37.

62.

CTCA failed to pay the proper contracted amount of Plaintiff's base salary for 180 days following written notice of termination, which is $184,931.51.

63.

CTCA failed to pay the proper contracted amount of Plaintiff's call salary ($1,444.00/month) for the 90-day period following written termination, which is $4,332.00.

64.

CTCA made a payment to Plaintiff on August 30, 2022 in the net amount of $80,490.78, and on October 14, 2022, in the net amount of $1,009.67, which set off Plaintiff's damages.

65.

As a further result of CTCA's breach of contract, Plaintiff is entitled to additional damages; including all other unpaid compensation, unreimbursed expenses, incentive compensation, call compensation, 401K and HSA benefits, and medical coverage; which are owed prior to CTCA's written termination of the Plaintiff on August 30, 2022; and which are owed during the 90-day notice period after the written termination August 30, 2022; in an amount to be proven at trial.

66.

Furthermore, the 90-day notice period was specifically drafted for Plaintiff to be able to complete tasks which are material and standard for surgeons in this industry.

67.

As a result of CTCA's breach of contract, Plaintiff was unable to complete necessary tasks required for minimum patient care and continuity of care.

68.

It is standard practice in this industry for a transition period to occur, i.e. a notice period, where a surgeon continues to work, patient care can be addressed, notice can be given to a surgeon's patients, and surgeons can transition to a new position elsewhere.

69.

Due to CTCA's abrupt breach, and failure to follow a notice period, Plaintiff was unable to process a transition period for his patients and himself.

70.

Due to CTCA's abrupt breach, and failure to follow a notice period, Plaintiff was unable to process emails and other correspondence needed to process administrative needs for Plaintiff's unreimbursed expenses.

71.

Plaintiff was unable to issue correspondence needed to ensure Plaintiff could limit his exposure to malpractice liability and complaints on his license to the Georgia Composite Medical Board.

72.

Plaintiff was unable to secure access to data related to his credentialing with future employers, hospitals, providers, and payers; his continuing medical education material; his personal education presentations; and other personal documents.

73.

Because CTCA failed to abide by the notice period, Plaintiff suffered additional damages to his reputation, his malpractice insurability, his liability for future claims, his liability for complaints, and his ability to obtain a new position, in an amount to be proven at trial.

74.

Because CTCA failed to abide by the notice period, Plaintiff's reputation became subject to additional scrutiny by potential new employers.

75.

Plaintiff has suffered monetary damages which include unpaid compensation and benefits, consequential and special damages to Plaintiff's reputation in his profession and in the community, emotional damages and pain and suffering from the stress following abrupt termination and being

cut off from Plaintiff's personal and professional items, tasks, and necessities. This amount will be proven at trial.

76.

Plaintiff specifically pleads that CTCA should be liable for interest on Plaintiff's damages which accrue from the time of CTCA's breach. O.C.G.A. § 13-6-13.

Count 2:  Slander (against all Defendants)

77.

Plaintiff sought reemployment with other employers.

78.

Defendants made false and defamatory statements or charges against Plaintiff to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, calculating to injure him therein.

79.

Defendants made false and defamatory statements or charges against Plaintiff to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, with negligent or reckless disregard of the damages Plaintiff would suffer to his reputation and ability to gain reemployment.

80.

These false and defamatory statements or charges were made without privilege.

81.

Defendants uttered disparaging words to Plaintiff's potential new employers which produced special damages which flowed naturally therefrom.

82.

Defendants committed slander or oral defamation of the Plaintiff causing him damages, including special damages.

83.

As a direct and proximate cause of Defendants' slander and oral defamation, Plaintiff's employment applications have been rejected or delayed.

84.

As a direct and proximate cause of Defendants' slander and oral defamation, Plaintiff has not yet been able to secure re-employment, and has suffered immense damages, including financial losses, and emotional pain and suffering.

## Count 3: Libel (against all Defendants)

85.

Plaintiff sought reemployment with other employers following his termination by Defendants.

86.

Defendants made published in writing, statements or charges against Plaintiff, to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, calculating to injure him therein.

87.

Defendants made published in writing, statements or charges against Plaintiff, to Plaintiff's potential new employers in reference to Plaintiff's trade, office, and profession, with negligent or

reckless disregard of the damages Plaintiff would suffer to his reputation and ability to gain reemployment.

88.

These false and defamatory statements or charges were made without privilege.

89.

Defendants' charges against Plaintiff, to Plaintiff's potential new employers produced special damages which flowed naturally therefrom.

90.

Defendants committed libel of the Plaintiff causing him damages, including special damages.

91.

As a direct and proximate cause of Defendants' libel, Plaintiff's employment applications have been rejected or delayed.

92.

As a direct and proximate cause of Defendants' libel, Plaintiff has been unable to secure re-employment, and has suffered immense damages, including financial losses, and emotional pain and suffering.

## Count 4: Race Discrimination - 42 U.S.C. § 1981 (against all Defendants)

93.

42 U.S.C. §1981 prohibits race discrimination in the make and enforcing of contracts.

94.

42 U.S.C. § 1981 prohibits racial discrimination against whites as well as nonwhites.

95.

Defendants took adverse action against Plaintiff because of Plaintiff's race (white).

96.

Plaintiff's race (white) was a motivating factor in Defendants' taking adverse action against the Plaintiff.

97.

Defendants preferred nonwhites over whites in employment, including work environment, support, scheduling, treatment, promotion, work assignments, benefits, decisions to terminate, and in statements or references to former employee's new potential employers.

98.

Defendants subjected Plaintiff to unwelcome conduct and conditions because of Defendants' preference for nonwhites.

99.

Such conduct and conditions created a hostile work environment and resulted in tangible employment action against the Plaintiff.

100.

Specifically, surgery, call, patient care conditions, schedule, and support were altered to prefer nonwhite surgeons.

101.

Eventually, Defendants terminated Plaintiff, or contributed to Plaintiff's termination, and made negative references to his future employers.

102.

As a direct and proximate cause, Plaintiff was terminated, forced out of his contractual notice period, and has been unable to secure re-employment, thereby suffering immense damages, including financial losses, reputation loss, and emotional pain and suffering.

103.

Accordingly, Defendants are liable to the Plaintiff for compensatory damages, including back pay, front pay, lost benefits, interest, and emotional pain and suffering.

104.

Defendants should be held liable for the Plaintiff's attorney's fees and costs of litigation, including expert fees, under 42 U.S.C. § 1988.

105.

Defendants' actions were done with malice or reckless indifference to Plaintiff's federally protected rights, and therefore Defendants are liable to the Plaintiff for punitive damages in an amount to punish Defendants, or deter Defendants and others like Defendants from committing such conduct in the future. 42 U.S.C. § 1981.

## PUNITIVE DAMAGES

## ADDITIONAL DAMAGES, INTEREST, ATTORNEY'S FEES & COSTS

106.

Plaintiff specifically pleads that Defendants have acted in bad faith, has been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expenses. Accordingly, the Court or jury should order that Defendants pay, as part of Plaintiff's damages, expenses of litigation, including costs and attorney's fees. O.C.G.A. § 13-6-11.

107.

Plaintiff specifically pleads that Defendants have defended against Plaintiff's rightful demands, and that such defenses lacked substantial justification and were interposed for delay, and unnecessarily expanded the proceedings between the parties.  O.C.G.A. § 9-15-14(b).

108.

The actions of Defendants show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences.

109.

Punitive damages should be awarded against Defendants in an amount sufficient to deter, penalize, and punish Defendants in light of the circumstances of this case, as provided in O.C.G.A. § 51-12-5.1.

WHEREFORE, Plaintiff requests that the Court:

a) Enter a judgment against the Defendants, and in favor of the Plaintiff, for each Count;

b) Order Plaintiff injunctive and equitable relief, specifically to restore Plaintiff to access to his email, and his personal and professional items, so that Plaintiff can complete tasks and necessities which are material and standard for the medical industry, and which were contemplated in the 90-day notice period in the Contract;

c) Order Defendants to pay Plaintiff compensatory and monetary damages for his salary, unreimbursed expenses, on call pay, incentive compensation, benefits, and other compensation owed to Plaintiff under his Contract;

d) Order that Defendants pay punitive damages in amount to deter, penalize, and punish.

e) Order Defendants to pay Plaintiff consequential, nominal, compensatory, and special damages as against Defendants to compensate Plaintiff for his mental and emotional distress, anxiety, humiliation, loss of professional and personal reputation, opportunities, lack of access to his personal and professional items, increased liability for malpractice, trouble and expense of transferring over to a new employer, loss of enjoyment of life, in an amount to be determined by a jury;

f) that Defendants be ordered to pay Plaintiff compensation, compensatory damages, front pay, back pay, lost benefits, lost retirement benefits, reasonable attorney fees, court costs, and expenses;

g) That Plaintiff have a judgment entered his favor, and against Defendants for all damages allowed to him under law;

h) That Plaintiff recover his attorney's fees, costs, and expenses of litigation as permissible under law.;

i) That Plaintiff be granted a trial by jury on all issues so triable;

j) That all costs of this action be case upon Defendants;

k) That defendant be ordered to pay pre-judgment and post-judgment interest according to law; and

l) Such other, further, and different relief as this Court deems just and proper.

Respectfully submitted this 31st day of May, 2023.

LAWSON, BECK & SANDLIN, LLC

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:      (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

# Plaintiff's Exhibit A

*(to Complaint)*

*FINAL DRAFT 04/11/14*

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT ("Agreement") is between CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA, P.C., a Georgia professional corporation ("PCG"), and KEVIN WATKINS, M.D., a New York resident ("Doctor").

PCG is providing certain services to or for the benefit of patients treating for cancer at Southeastern Regional Medical Center ("CTCA-SE" or "Hospital") located in Newnan, Georgia and desires to employ the services of a qualified physician to serve as surgical oncologist at the Hospital. Doctor has the professional training and experience to provide such services and to serve in such capacity, and is licensed to practice medicine in Georgia. The parties wish to establish an employment relationship as hereinafter provided.

In consideration of the mutual promises and agreements hereinafter set forth herein and for other good and valuable consideration, receipt of which is acknowledged, the parties agree as follows:

1. Incorporation of Recitals. The recitals set forth above are incorporated by reference and are made an integral part of this Agreement.

2. Effective Date. This Agreement is entered into and is effective and binding as of August 18, 2014 the "Effective Date" of the Agreement.

3. Term and Termination. This Agreement shall remain in full force and effect until August 17, 2017 unless terminated as provided in section 4 hereof.

4. Termination.

4.1 At any time either party may terminate this Agreement without cause by giving the other party at least one hundred and twenty (120) calendar days' prior written notice of intent to terminate. In the event Doctor attempts to terminate this Agreement with less than one hundred twenty (120) days' notice or ceases performance or fails to provide the full amount of required notice, Doctor shall pay PCG as liquidated damages in an amount equal to all incentive and bonus compensation paid to Doctor in the twelve (12) months prior to termination. In the event that PCG terminates this Agreement pursuant to this Section 4.1, PCG shall continue to pay Doctor's base salary at the rate as described in Section 9.1 below for a period of one hundred eighty (180) days from the date of the notice of termination so long as Doctor continues to work fulltime for PCG hereunder for a period designated by PCG's Administrator (which period shall not exceed one hundred twenty (120) days from the date of termination notice); if Doctor does not continue to work fulltime for PCG during the time period requested by PCG's Administrator, PCG's obligation to make salary installment payments shall terminate on the last day on which Doctor works fulltime for PCG hereunder.

4.2 PCG shall have the right to immediately terminate this Agreement for cause including, without limitation, for any one of the following reasons:

4.2.1 Material Breach of a provision of this Agreement that is not cured after written notice;

4.2.2 Reasonable proof of Professional misconduct of Doctor as determined by PCG or by medical staff of Hospital that is not cured after written notice;

**FINAL DRAFT 04/11/14**

4.2.3   Finding of guilty for a felony or a crime involving moral turpitude committed by Doctor;

4.2.4   Repeated acts of professional negligence by Doctor determined by a prospective QA process that are not cured after adequate written notice of initial acts;

4.2.5   Failure of the Doctor to meet any of the standards imposed by the section entitled "Physician Requirements" that are not cured after adequate written notice; or

4.2.6   Doctor's repeated neglect of duty or violation of the Hospital's policies, bylaws or rules or regulations that is not cured after written notice of initial acts.

4.3 In addition, this Agreement shall automatically terminate if Doctor dies or loses Doctor's license to practice medicine in Georgia.

5. Employment Agreement.   PCG hereby agrees to employ Doctor and Doctor agrees to be employed by PCG as a surgical oncologist on the terms and subject to the conditions set forth in this Agreement.   Doctor agrees to serve PCG and to perform those duties related to PCG as may be assigned from time to time by PCG including the following   (collectively, the "Services").

5.1 Doctor hereby agrees to be on call to provide prompt medical care for surgical oncology issues.  This will be shared equally with other surgical oncology staff physicians.

5.2 Doctor shall provide quality surgical oncology services with respect to PCG programs as directed by PCG.

5.3 When requested by PCG, Doctor shall be responsible for the following as they relate to surgical oncology:

5.3.1. Provide specialty medical management for inpatients and outpatients;

5.3.2   On-going in-service training of clinical and technical staff when deemed necessary;

5.3.3   Participation in clinical research and clinical research design;

5.3.4   Preparation of treatment protocols;

5.3.5   Development of disease orientated treatment to include front-line as well as secondary treatment of either a standard or investigatory nature;

5.3.6   Participation in responding to insurance reimbursement issues;

5.3.7   Creation and maintenance of necessary department medical charts, records and billing forms; and

5.3.8   Preparation of reports for publication including peer review journals.

5.4 Doctor shall provide such other services as reasonably requested by PCG's Administrator.

2

*FINAL DRAFT 04/11/14*

6.  Scope.  Doctor shall work full time for PCG and shall devote as much time, skill, labor and attention to the affairs and activities of PCG as PCG as PCG shall reasonably require to serve the best interests of PCG and the Hospital's inpatients, outpatients and office-based patients, but in no event fewer than forty-five (45) hours per week at the Hospital.

7.  Professional Accountability.   In order to maintain internal quality control and to reduce morbidity and mortality and to improve patient care, Doctor agrees to be subject to and to participate in peer review activities established by the rules, regulations and bylaws of the medical staff the Hospital.

8.  Quality Assessment and Improvement.   Doctor shall cooperate with the development and implementation of a quality assessment and improvement system and shall actively participate in QA&I programs including, but not limited to, periodic review of policies and procedures relating to patient care as well as any other quality assessment involvement deemed appropriate by PCG or by the officers of the Hospital.

9.  Compensation and Benefits.    So long as Doctor has not breached any provision of this Agreement and so long as this Agreement remains in effect, during the term of this Agreement:

9.1  PCG shall pay Doctor for services at a rate of Three Hundred Seventy-Five Thousand Dollars ($375,000) per year; payment to be made in twenty-six (26) equal installments per year (every other week), but only as Doctor actually provided services in accordance herewith (PCG shall deduct FICA, withholding taxes and other amounts as required by law);

9.2  PCG shall pay Doctor incentive compensation (from which PCG shall deduct FICA, withholding taxes and other amounts as required by law) at the end of each calendar month in the amount of thirty-seven percent (37%) of the CMS-allowable charges for Doctor's professional services rendered during such calendar month; provided, however, in the event that Doctor remains continuously employed by PCG through July 31, 2015, the amount of such incentive compensation shall not be less than Seventy-Five Thousand Dollars ($75,000); and further provided that Doctor must remain current with Medical Record documentation measured in terms of Medical Record delinquency as defined by the CTCA-SE Medical Staff Bylaws and Rules and Regulations.  Each episode of Medical Record Delinquency will result in a deduction of Five Hundred Dollars ($500) from the bonus each month that Doctor remains delinquent;

9.3 Upon receipt of original documentation, PCG shall reimburse Doctor for Doctor's actual expenditures an amount not to exceed Five Thousand Dollars ($5,000) per year for Doctor's attendance at professional meetings, for the purchase of professional texts and professional journals for Doctor's use, for Doctor's continuing medical education, professional dues, licensing fees, DEA certification, computer and resource materials for CME, and subscriptions previously approved by PCG;

9.4 PCG shall provide Doctor the health, dental, disability and life insurance programs provided by PCG to its similarly situated physician employees, and will provide the opportunity for Doctor to add Doctor's family to these benefits at Doctor's cost consistent with the plan then in existence;

9.5 Doctor shall be eligible to participate in such 401(k) and similar plan(s) as may then be provided by PCG to its similarly situated physician employees, in accordance with the terms thereof;

3

*FINAL DRAFT 04/11/14*

9.6 Upon receipt of appropriate documentation, PCG shall reimburse Doctor for Doctor's actual expenditures for reasonable expenses not to exceed Twenty Thousand Dollars ($20,000) incurred in relocating Doctor's household belongings to the Newnan area;

9.7 PCG shall provide Doctor with six months of housing allowance of $2,000 a month; and

9.8 Upon execution of this Agreement, PCG shall make a loan to Doctor (the "Loan") in the principal amount of Fifty Thousand Dollars ($50,000), which Loan shall bear interest at five percent (5%) on amounts outstanding from time to time. Doctor shall repay the Loan by permitting PCG to offset the incentive compensation described in Section 9.2 above from and after the time that Doctor has actually received Seventy-Five Thousand Dollars ($75,000); provided, however, all amounts owed on the loan shall be repayable immediately in the event that Doctor terminates this Agreement pursuant to Section 4.1 above; and provided further that, in the event that PCG terminates this Agreement pursuant to Section 4.1 above, any amount of the Loan remaining outstanding on the date of such termination shall be forgiven. In addition, Doctor shall have the right to prepay the Loan at any time.

10. **Billing.** PCG shall have the exclusive right to bill, collect and retain in its own name the professional service fees for any and all professional services provided by Doctor at CTCA-SE or to PCG patients and other services assigned by PCG. Doctor agrees that Doctor shall not submit any invoices for any of Doctor's professional services to any patient or third-party payor.

11. **Time Off.** Doctor, after consultation with and approved by PCG, may schedule thirty-one (31) weekdays off per year, of which six (6) are the Federal holidays, twenty (20) are for vacation, and five (5) are for continuing medical education ("CME"). Vacation and CME days do not roll over into the following year.

12. **Personnel Policies.** Doctor shall be subject to the CTCA-SE's personnel policies except to the extent to which such policies are contrary to the provisions of this Agreement.

13. **Regulation.**

13.1 Doctor shall comply with all applicable provisions of law and other rules and regulations of any and all governmental authorities relating to licensure and regulation of physicians.

13.2 Doctor shall cooperate in conducting Services in accordance with the standards and recommendations of the Joint Commission ("TJC"), the American College of Surgeons ("ACS"), the Georgia Department of Public Health and the bylaws, policies, rules and regulations of the Hospital.

13.3 Doctor shall assist in attaining and maintaining all relevant licensures, TJC accreditation and ACS approval for programs operated at the Hospital.

14. **Physician Requirements.**

14.1 Doctor agrees that Doctor shall at all times relevant hereto be licensed to practice medicine in Georgia.

14.2 Doctor shall complete all medical charts within ten (10) working days from an inpatient's discharge date and within four (4) days of any significant diagnosis, treatment, test, observation, history or order for any patient of Doctor, whichever is earlier.

4

## FINAL DRAFT 04/11/14

14.3 Continuation of this Agreement shall be contingent upon Doctor's continuing satisfaction of the requirements of this section entitled "Physician Requirements".

14.4 Doctor shall strictly abide by the Principles of Medical Ethics of the American Medical Association.

15. **Non-exclusivity.** Patients treated under this Agreement are and shall remain patients of PCG. PCG may determine which patients or clients shall or shall not be treated or served by Doctor and may arrange for other physicians or entities to provide medical services to patients already treated by Doctor when so requested by the patient or when believed by PCG to be in the best interest of the patient.

16. **Professional Liability Insurance.** Except as otherwise provided herein, PCG shall provide and maintain professional liability insurance through CTCA's self-insured program covering Doctor for services rendered to PCG's patients at CTCA-SE in the amount required by the medical staff regulations of CTCA-SE. Such coverage is currently accounted on an "occurrence" basis; in the event that coverage becomes "claims made", PCG shall provide "tail" insurance for Doctor for acts committed in the scope of employment hereunder. Such insurance shall expressly NOT include any prior acts coverage and will NOT include any coverage for acts or omissions relating to patients other than PCG's patients. As a condition precedent to PCG's obligations under this Section 16, Doctor shall provide PCG's Administrator with evidence of "tail" insurance covering Doctor's prior acts.

17. **Confidentiality and Access to Medical Information.**

17.1 Doctor acknowledges that PCG has certain non-public confidential business information, including but not limited to non-public information and information designated by PCG to be kept confidential; treatment information; including procedures, processes and protocols relating to complementary medicine, and other things that differentiate PCG's business and treatment styles; business strategies and other strategies and plans regarding sales, advertising, and marketing; financial data such as revenues and earnings figures, pricing information, schedules of charges and rates; scientific data, research results and information about research projects; as well as personnel files and other non-public personnel information ("Confidential Information") which Doctor has acquired and will continue to receive access to in the course of Doctor's employment with PCG. Doctor recognizes and agrees that this information is proprietary, highly sensitive and valuable. During Doctor's employment with PCG and thereafter, Doctor will maintain all Confidential Information that comes into Doctor's possession as confidential and as the property of PCG, and such Confidential Information shall not be disclosed by Doctor nor used by Doctor in any way, except (during Doctor's employment with PCG) as required by Doctor's duties to, and for the benefit of, PCG. Confidential Information does not include information that is generally available to the public through no violation of confidentiality obligations by Doctor or anyone else.

17.2 Doctor shall not disclose any patient information in the possession of PCG or the Hospital (no matter what form or format it is in) including that concerning test results, diagnosis or treatment of any patient to anyone other than appropriate members of the medical staff or appropriate medical audit committees of the relevant Hospital without prior written consent from the patient or his/her authorized representative except as part of the treatment of patient by a health care provider.

17.3 Doctor will not remove any Confidential Information from PCG's premises except as Doctor's duties shall require and as authorized by PCG, and upon any termination of

5

*FINAL DRAFT 04/11/14*

Doctor's employment; Doctor will immediately turn over all Confidential Information to Doctor's supervisor or other designee of PCG, and Doctor shall retain no copies (either paper, digital, or electronic) thereof.

17.4 Any patient information as well as the medical records of patients provided service hereunder shall at all times remain the property of PCG or the Hospital and shall be treated as confidential. Access to and release of such medical records or any information contained therein (no matter what form or format it is in) shall be in accordance with the Hospital's policies. Doctor shall not disclose any information relating to operations of PCG or the Hospital to persons other than appropriate PCG members without prior written consent of PCG or the Hospital.

17.5 During and after this Agreement, Doctor agrees to assist PCG to obtain access to any and all medical records relating to patients treated by Doctor during the term of this Agreement.

## 18. Intellectual Property Ownership.

18.1    Purpose.   PCG recognizes that the value of PCG and Hospital to patients goes beyond the physical surroundings of Hospital and the comfort and care that can be offered as individuals. PCG stakes its business on collaborating with the best minds in medicine and providing innovative, progressive therapies, many of which are developed by its physicians. As such, PCG realizes Doctor might conceive some ideas or create new treatments or protocols in Doctor's practice. To look after Doctor, Hospital's patients and the investments of PCG and its affiliates, PCG asks that Doctor assign those innovations to PCG so that it can explore the best possible means of protecting them.

18.2    Description. In furtherance of the joint mission of PCG, Hospital and their respective employees to provide innovative, advanced and effective therapies and overall compassionate and excellent integrative patient care, PCG invites and encourages Doctor to create inventions, improvements, ideas, concepts, know-how, designs, models, research, clinical innovations, protocols and other clinical-related intellectual property, proposals, procedures, strategies, methodologies and techniques, and other intellectual property, materials, information and data and related documentation. All such items created, conceived or developed by Doctor, alone or together with other PCG or Hospital employees or contractors, during the term of Doctor's employment or other relationship with PCG (whether prior to, on or after the Effective Date) are considered "Work." "Work" does not include, however, and this Agreement does not apply to, any invention developed by Doctor (i) entirely on Doctor's own time and (ii) without the use of any equipment, supplies, facilities or trade secret information of PCG or Hospital or any of their affiliates, unless such invention (a) relates to the business of PCG, Hospital or any of their affiliates or their respective actual or demonstrably anticipated research or development or (b) results from any work performed by Doctor for PCG.

18.3    Ownership of Work.  To permit PCG, Hospital and their affiliates to consolidate, enhance and protect the Work of their various employees in the interest of supporting the collective mission, vision and values thereof, (i) Doctor understands and agrees that, to the extent permitted by law, the Work shall be deemed a "work made for hire" of PCG, (ii) Doctor hereby irrevocably assigns and transfers to PCG, effective with respect to each item of Work as of the date of its creation, any and all rights, title and interest Doctor may have or may acquire in and to the Work (including any Work not deemed, for whatever reason, to have been created as a work made for hire), in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised, including any and all

*FINAL DRAFT 04/11/14*

intellectual property rights in the Work, and the right to prosecute and recover damages for all past, present and future infringements and other violations of the Work, and (iii) Doctor hereby irrevocably waives and assigns to PCG any and all so-called "moral rights or "droit moral" Doctor may have in or with respect to any Work (e.g., rights of attribution and preventing others from modifying the Work). Nothing contained in this Agreement will, however, require PCG to exercise or exploit any of its rights in or to the Work.

18.4    Notifying PCG of Work.   To enable PCG to identify and utilize Work created by its employees, during the term of Doctor's relationship with PCG, Doctor agrees to maintain current and accurate records of all Work.  Upon the termination of Doctor's relationship with PCG for any reason, and/or at any time upon PCG's reasonable request, Doctor agrees to promptly (i) disclose to PCG all Work, (ii) deliver to PCG all documentation and other tangible materials that in any way embody, comprise, incorporate, or reflect the Work, and (iii) confirm in writing to PCG that Doctor has fully complied with these requirements.

18.5    Further Documentation.   Doctor also agrees that, upon PCG's request, Doctor will promptly execute and deliver to PCG any and all further assignments, patent applications, and/or such other documents as PCG may deem necessary to vest in PCG any of its rights in the Work and/or protect any Work.

18.6    IP Warranties.  Doctor hereby represents and warrants that: (i) except as expressly authorized by PCG in each instance, the Work (excluding any materials provided by PCG to Doctor) does not and will not use or disclose any trade secrets, confidential information or other proprietary information of any individual or entity, including without limitation any works developed by Doctor for any individual or entity other than PCG; (ii) Doctor will not challenge PCG's or any of its affiliates' rights in any Work or infringe or otherwise violate any such rights; and (iii) neither the Work, nor the exploitation and/or use by PCG and/or any of its affiliates of any Work (excluding any materials provided by PCG to Doctor), in any manner or media throughout the world, will, to Doctor's knowledge, in any way infringe or otherwise violate any intellectual property, privacy or other rights of any individual or entity.

18.7    IP Indemnification.  Doctor agrees to reimburse and indemnify PCG, its affiliates (including without limitation Hospital and CTCA) and their respective licensors, and the officers, directors, members, managers, employees, agents, and representatives of PCG and its affiliates and their respective licensors (collectively, the "PCG Indemnitees"), and hold such PCG Indemnitees harmless against, any and all actions, damages, losses, expenses, claims, demands, costs and liabilities of any nature whatsoever (including reasonable attorneys' fees and court costs), incurred by any such PCG Indemnitees in connection with or arising out of any claim by a third party that any Work, or the use thereof, infringes or otherwise violates any intellectual property, privacy, or other rights of any individual or entity.

19. Equitable Remedies.   Doctor recognizes that any breach by Doctor of the terms and conditions of the section above entitled "Confidentiality and Access to Medical Information" will cause PCG or the Hospital losses, which are not fully compensable by monetary damages.  Therefore, PCG and the Hospital shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction to enjoin any such breach, or threatened breach, and, in addition thereto, to obtain damages or enforce strict performance by Doctor of the provisions of such sections or to obtain any combination of such remedies as PCG or the Hospital shall elect.   The prevailing party in any such action shall be entitled to reasonable attorneys' fees incurred in connection with any proceedings to enforce this Agreement.

*FINAL DRAFT 04/11/14*

20. Representation of Doctor.  DOCTOR HEREBY REPRESENTS AND WARRANTS THAT (i) DOCTOR WILL NOT USE OR NEED TO USE ANY CONFIDENTIAL, PROPRIETARY OR TRADE SECRET INFORMATION FROM ANY FORMER EMPLOYER IN PERFORMING DOCTOR'S DUTIES FOR PCG OR CTCA, AND (ii) DOCTOR IS NOT CURRENTLY SUBJECT TO ANY AGREEMENT OR ARRANGEMENT THAT WOULD PROHIBIT OR RESTRICT DOCTOR FROM ENTERING INTO THIS AGREEMENT OR PERFORMING SERVICES HEREUNDER.  DOCTOR ACKNOWLEDGES THAT PCG IS RELYING ON THE ACCURACY OF SUCH REPRESENTATION AS A CONDITION PRECEDENT TO ENTERING INTO THIS AGREEMENT.

21. Applicable Law.  This Agreement shall be governed by and construed under the laws of Georgia.

22. Severability.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

23. Notice.  Any notice, election, request, demand, designation, consent, agreement or communication given or required to be given under this Agreement shall be in writing and signed by or on behalf of the party giving it, shall be personally delivered to the Doctor or the Administrator of PCG, as applicable, or sent by U.S. certified mail, or by Express Mail or similar private overnight delivery service addressed to the party at their last known address.

24. Assignment.  PCG may assign this agreement to an affiliate on written notice to Doctor, so long as such affiliate is a physician practice that provides medical services in Georgia.

25. Integration.  This Agreement constitutes the entire Agreement between the parties and contains all agreements between the parties with respect to the subject matter hereof. This Agreement supersedes all other agreements, either in writing or oral between the parties hereto with respect to the same or similar subject matter.

The parties execute this Agreement as of the Effective Date.

CANCER TREATMENT CENTERS
OF AMERICA PROFESSIONAL
CORPORATION OF GEORGIA, P.C.

By: _____
Its: Administrator

_____ 4/14/14
KEVIN WATKINS, M.D.

8

# Plaintiff's Exhibit B

*(to Complaint)*

FIRST AMENDMENT TO AMENDED AND RESTATED EMPLOYMENT AGREEMENT

This FIRST AMENDMENT TO EMPLOYMENT AGREEMENT ("First Amendment"), between Cancer Treatment Centers of America Professional Corporation of Georgia, P.C., a Georgia professional corporation ("PCG") and **Kevin Watkins, M.D.**, a resident of Georgia ("Doctor"), is effective as of the 18th day of August, 2017 (the "Effective Date").

BACKGROUND:

   a.  PCG and Doctor entered into an Employment Agreement effective August 18, 2014 (the "Agreement").

   b.  PCG and Doctor wish to amend the terms of the Agreement as set forth below.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the PCG and Doctor agree as follows:

1.  Incorporation of Background.  The Background set forth above is incorporated by reference and made an integral part of this First Amendment.

2.  Extension of Term and Change in Notice of Termination.  The Term of the Agreement is hereby extended to expire August 17, 2018 unless earlier terminated pursuant to the Agreement, as amended hereby.  Unless either party shall give at least 90 days prior notice, the Agreement shall automatically extend for successive one (1) year terms unless terminated in accordance with Section 4 of the Agreement; provided however, for each one year term beginning on or after August 17, 2018, either party may terminate the Agreement upon ninety (90) days prior written notice.  The procedures and effect of any such termination shall remain unchanged; only the notice period shall change for terms beginning on or after August 17, 2018.

3.  Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect and the Agreement, as amended hereby, is ratified and confirmed.

IN WITNESS WHEREOF, the parties have caused this First Amendment to be executed by their duly authorized representatives, as of the date set forth above.

**Cancer Treatment Centers of America**
**Professional Corporation of Georgia, P.C.**

By: _____

Name: _____ANNE MEISNER_____

Title: _____CEO_____

By: _____

Name:   Kevin Watkins, M.D.

# Plaintiff's Exhibit C

*(to Complaint)*

## SECOND AMENDMENT TO

## EMPLOYMENT AGREEMENT

This SECOND AMENDMENT TO THE EMPLOYMENT AGREEMENT ("**Second Amendment**"), between CTCA Physicians Group of Georgia, Inc., a Georgia corporation f/k/a Cancer Treatment Centers of America Professional Corporation of Georgia, P.C., a Georgia professional corporation ("**PG**") and Kevin Watkins, M.D., a resident of Georgia ("**Doctor**"), is effective as of January 1, 2022 ("**Effective Date**").

**BACKGROUND:**

a. PG and Doctor entered into an Employment Agreement effective August 18, 2014 and amended August 18, 2017 (collectively, the "**Agreement**") whereby Doctor provides services to PG as a surgical oncologist.

b. PG and Doctor agreed to a monthly payment of one thousand four hundred forty-four dollars ($1,444) to cover additional emergency general surgery call.

c. PG and Doctor now wish to memorialize and amend the Agreement as set forth below in order to compensate Doctor for the call coverage provided.

In consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the PG and Doctor agree as follows:

1 Incorporation of Background. The Background set forth above is incorporated by reference and made an integral part of this Second Amendment.

2 Section 9 – Compensation and Benefits. A new Section 9.9 shall be added as follows:

"*In addition to providing surgical oncology call coverage as previously stipulated, Doctor shall provide emergency general surgery call coverage coinciding with surgical oncology call days. Doctor shall be paid One Thousand Four Hundred Forty-Four Dollars ($1,444) per month ($666.45 per pay period) for call coverage*"

3 Ratified and Confirmed. Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect and the Agreement, as amended hereby, is ratified and confirmed.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the parties have caused this Second Amendment to be executed by their duly authorized representatives, as of the date set forth above.

**CTCA PHYSICIANS GROUP OF GEORGIA, INC.,**
**F/K/A CANCER TREATMENT CENTERS OF**
**AMERICA PROFESSIONAL CORPORATION OF**
**GEORGIA, P.C.**

**DOCTOR:**

By: _____

*Electronically signed by: Jonathan E. Watkins Date: Apr 6, 2022 08:41 CDT*

_____

*Electronically signed by: Kevin T Watkins Date: Apr 6, 2022 11:10 EDT*

Name: _____

**KEVIN WATKINS, M.D.**

Title: _____

IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA

KEVIN T. WATKINS,                          )
                                           )
        Plaintiff,                         )
                                           )
    v.                                     )        CIVIL ACTION FILE
                                           )
CITY  OF  HOPE  (INC.),  JONATHAN          )        NO. _____
WATKINS, and ANITA JOHNSON,                )
                                           )
        Defendants.                        )
                                           )

## **VERIFICATION**

Personally appeared KEVIN T. WATKINS who, after being duly sworn, states that the

facts alleged in the foregoing *Complaint* are true and correct to the best of his knowledge, belief

and information.


_____
KEVIN T. WATKINS, Plaintiff


Sworn to and subscribed before me this
31ˢᵗ day of May_____, 2023

_____
Notary Public

My commission expires:

July 6, 2025

**IN THE SUPERIOR COURT OF COWETA COUNTY**
**STATE OF GEORGIA**

KEVIN T. WATKINS,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　　)　　　CIVIL ACTION FILE
　　　　　　　　　　　　　　　　　　　　)
CTCA　PHYSICIANS　GROUP　OF　)　　　NO. SUV2022001394
GEORGIA, LLC f/k/a CTCA PHYSICIANS　)
GROUP OF GEORGIA, INC. f/k/a CANCER　)
TREATMENT CENTERS OF AMERICA　)
PROFESSIONAL　CORPORATION　OF　)
GEORGIA, P.C.,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　
　　　　Defendant.

**CERTIFICATE OF SERVICE**

This is to certify that I have, this 2nd day of June, 2023, served a true and correct copy of

the within and foregoing **MOTION FOR JOINDER** upon all parties and/or counsel of record by

electronically filing the same via PeachCourt, which will automatically serve a copy of the same

to counsel of records as follows:

Victor Moldovan
Peter N. Hall
Laura E. Flint
HOLLAND KNIGHT
1180 West Peachtree Street, NW
Suite 1800, Regions Plaza
Atlanta, Georgia 30309
victor.moldovan @hklaw.com
peter.hall @hklaw.com
laura.flint@hklaw.com

LAWSON, BECK & SANDLIN, LLC
*//s// Holly H. Maestas*

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:      (770) 486-8950
Email: holly@lawsonandbeck.com

# Case Docket

**Case Initiation Date**
11/22/2022

**Assigned Judge**
ET

---

Why subscribe to PeachCourt+? Well, for one thing... you could get an automagic email alert when anyone files anything into this case. You don't have to come back here day after day after day just to check the docket. We'll take care of that for you. All you have to do is subscribe!

---

## Party Information

---

**Plaintiff:**

    WATKINS, KEVIN DR T

**Defendants:**

    CTCA PHYSICIANS GROUP OF GEORGIA LLC

    CTCA PHYSICIANS GROUP OF GEORGIA INC, FKA

    CANCER TREATMENT CENTERS OF AMERICA PROFESSIONAL CORPORATION OF GEORGIA PC, FKA

## Attorney/Filer Information

---

| | |
|---|---|
| **MAESTAS, HOLLY** | **CTCA PHYSICIANS GROUP OF GEORGIA, LLC** |
| **MOLDOVAN, VICTOR** | **HALL, PETER N** |
| **FLINT, LAURA** | |

| Docket # | Document Type | Description | Filer | Filing Date | Source |
|---|---|---|---|---|---|
| 1 | Complaint | COMPLAINT FOR BREACH OF CONTRACT | Maestas, Holly | 11/22/2022 | EFile: PeachCourt |
| 2 | Summons | Summons For CTCA Physicians Group Of Georgia, LLC. | Maestas, Holly | 11/22/2022 | EFile: PeachCourt |
| 3 | Case Information Form | Case Information Form | Maestas, Holly | 11/22/2022 | EFile: PeachCourt |
| 4 | Service | Affidavit Of Service - CTCA | Beck, John S | 12/06/2022 | EFile: PeachCourt |
| 5 | Leave Of Absence | NOTICE OF LEAVE OF ABSENCE 2023 - MAESTAS SEE NOTICE FOR DATES | Beck, John S | 12/15/2022 | EFile: PeachCourt |
| 6 | Answer | VERIFIED ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT//CERT OF SVC | | 12/27/2022 | Manual |
| 7 | Rule 5.2 Certificate | RULE 5.2 CERTIFICATE OF SERVICE / CERT OF SERVICE | Maestas, Holly | 02/14/2023 | EFile: PeachCourt |
| 8 | Rule 5.2 Certificate | RULE 5.2 CERTIFICATE OF SERVICE / CERT OF SERVICE | Maestas, Holly | 02/14/2023 | EFile: PeachCourt |
| 9 | Rule 5.2 Certificate | 5.2 CERTIFICATE OF SERVICE OF DISCOVERY / CERT OF SERVICE | | 03/06/2023 | Manual |
| 10 | Rule 5.2 Certificate | Rule 5.2 Certificate Of Service - Plaintiff's Responses To ROGs, RPDs | Maestas, Holly | 04/05/2023 | EFile: PeachCourt |

| 11 | Rule 5.2 Certificate | RULE 5.2 CERTIFICATE OF SERVICE OF DISCOVERY//CERT OF SVC | | 04/18/2023 | Manual |
| 12 | Rule 5.2 Certificate | RULE 5.2 CERTIFICATE OF SERVICE / CER OF SERVICE | Maestas, Holly | 04/20/2023 | EFile: PeachCourt |
| 13 | Rule 5.2 Certificate | RULE 5.2 CERTIFICATE OF SERVICE - PLAINTIFFS 1ST SUPP RESP TO INTERROGATORIES / CERT OF SERVICE | Maestas, Holly | 04/20/2023 | EFile: PeachCourt |
| 14 | Amended Complaint | Amended Complaint | Maestas, Holly | 06/02/2023 | EFile: PeachCourt |
| 15 | Motion | MOTION TO EXTEND DISCOVERY / CERT OF SERVICE | Maestas, Holly | 06/02/2023 | EFile: PeachCourt |
| 16 | Motion | MOTION FOR JOINDER / CERT OF SERVICE | Maestas, Holly | 06/05/2023 | EFile: PeachCourt |

The clerk's office maintains the official record for this case. The information we provide is our best attempt at reflecting the official record. Despite our best efforts, you may find discrepancies between the information on this page and the clerk's official record. The clerk's official record is always official and is always THE record.