UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALACIE WHIGHAM,<br><br>    Plaintiff,<br><br>v.<br><br>CENTENE CORPORATION,<br><br>    Defendant. | CIVIL ACTION FILE NO.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Alacie Whigham ("Plaintiff"), by and through her undersigned counsel, The Kirby G. Smith Law Firm, LLC, and hereby files this Complaint against Defendant Centene Corporation (hereinafter "Defendant" or "Centene"), showing the following:

### I. NATURE OF COMPLAINT

1.     Plaintiff brings this action for damages, reasonable attorney's fees, court costs, and expenses based on Defendant's violation of her rights pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA").

### II. PARTIES

2.     Plaintiff is a resident of the State of Georgia, a citizen of the United States of

America, and is subject to the jurisdiction of this Court.

3. Defendant is a Foreign Profit Corporation with a principal office located at 7700 Forsyth Blvd., St. Louis, Missouri 63105.

4. Defendant may be served by delivering a copy of the Complaint and Summons to its Registered Agent, CT Corporation System, 289 S. Culver St., Lawrenceville, Georgia 30046-4805.

5. Defendant is subject to the requirements of the laws enumerated in the Jurisdiction and Venue section of this Complaint.

### III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises out of the ADA.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises out of the FMLA.

8. The majority of the events plead herein occurred at the work site of 1100 Circle 75 Parkway, Suite 1100, Atlanta, Georgia 30339.

9. This Court has jurisdiction over the parties of this action because a substantial portion of the employment practices described herein took place within the Atlanta Division of the Northern District of Georgia.

10. Plaintiff exhausted all administrative remedies in this matter. *Dismissal and*

*Notice of Rights*, Ex. 1.

11. This action has been timely commenced.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## IV. FACTUAL ALLEGATIONS

13. Defendant is now, and at all times relevant hereto has been, an employer subject to the ADA.

14. Defendant is now, and at all times relevant hereto has been, an employer subject to the FMLA.

15. Defendant is a healthcare insurer that focuses on managed care for uninsured, underinsured, and low-income individuals.

16. In 2020, Centene finalized its acquisition of WellCare Health Plans, and began integrating two companies.

17. Plaintiff was employed by Defendant from July 30, 2017, until her termination on March 26, 2021.

18. Plaintiff originally began as a Sales Agent.

19. Plaintiff received several promotions through her career.

20. Most recently Plaintiff was promoted to Sales Market Manager, Medicare Strategies and Sales, in August 2019.

21. Prior to the events leading to her legal claims, Plaintiff had what can only be

described as a positive history with the company; at no point prior was Plaintiff given any written warning or other corrective action indicating an unsatisfactory performance.

22.  In or around July 2020, Plaintiff began to report to Ms. Esther Mitchell Rasul, Senior Director of Field Sales and Marketing.

23.  Ms. Rasul formerly worked for WellCare Health Plans.

24.  As part of her duties, Plaintiff and her team were tasked to sell Medicare products to senior citizens ("Senior(s)").

25.  Pursuant to applicable Rules and Regulations, Plaintiff and her team would analyze the needs of each customer in order to determine and offer a plan to meet the best interest of the Senior.

26.  After the acquisition and consolidation, Plaintiff was directed to only sell the WellCare product, even when it did not suit a Senior's needs.

27.  In July 2020, Plaintiff reported what she believed to be fraudulent behavior by the company to an internal ethics contact, which then led to a meeting with a WellCare Corporate Compliance Investigator, Ms. Letitia Ward.

28.  After Ms. Ward reviewed the rules of the Centers of Medicare and Medicaid Services ("CMS"), she maintained that the company's behavior was excusable as she felt that WellCare was the better product.

29. As no remedial action was taken, Plaintiff later reported Defendant's internal policies directly to CMS.

30. Shortly thereafter, a Defendant representative requested that Plaintiff retract her complaint, as the company wished to handle the matter "in-house."

31. After Plaintiff's supervisors, specifically Ms. Rasul, became aware of her claims of fraud against the company, they began to create a hostile work environment for Plaintiff.

32. In late 2020, due to the hostile work environment created by Ms Rasul, Plaintiff developed severe anxiety.

33. Plaintiff was then advised by her medical doctor to take leave pursuant to the FMLA.

34. Said FMLA leave was approved by Lincoln Financial, the company's third-party service provider, to run from September 17, 2020, until her return on or about November 30, 2020.

35. Defendant was aware of Plaintiff's medical condition and use of FMLA leave.

36. Following Plaintiff's return to work following leave, Ms. Rasul escalated her hostile treatment of Plaintiff.

37. Ms. Rasul commented that Plaintiff did not know how to do her job, which

was clearly false based on Plaintiff's previously positive work performance.

38. Ms. Rasul denied Plaintiff a bonus increase.

39. Ms. Rasul gave Plaintiff a lower raise than her peers.

40. Ms. Rasul shared the details of Plaintiff's leave and medical conditions with Plaintiff's colleagues.

41. Ms. Rasul verbally informed Plaintiff that she planned to discipline Plaintiff for her team's performance during the time period that Plaintiff was on FMLA leave.

42. As such, Plaintiff requested to be transferred to a Supervisor other than Ms. Rasul.

43. Plaintiff's request for a transfer was denied by Defendant.

44. As the hostile work environment continued, Plaintiff's anxiety and medical issues were exacerbated.

45. Plaintiff sought assistance from Human Resources yet again, reporting Ms. Rasul's retaliatory and discriminatory write-up.

46. In response, Plaintiff was advised that perhaps she "needed to find another job within the company."

47. Human Resources also advised Plaintiff that they would not retract the poor, not to mention false, review entered by her manager.

48. After speaking with Human Resources, Plaintiff applied to other positions within Centene.

49. Plaintiff was not selected for another position within the company.

50. After Plaintiff informed Ms. Rasul that she applied to other positions and had an upcoming interview, Ms. Rasul accelerated Plaintiff's disciplinary action so that she was disqualified from other positions within the company.

51. On or about March 8, 2021, Plaintiff messaged the company on Facebook, stating that she was being harassed and that the message was her final attempt to resolve the matter before taking it public.

52. A Centene representative reached out thereafter, indicating that the company would assist Plaintiff in finding a new position.

53. Again, Plaintiff was not selected for another position within the company.

54. After allowing Plaintiff to take approximately two weeks of leave, Defendant terminated Plaintiff's employment.

55. Following her termination, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 410-2021-04776.

56. Plaintiff received her Dismissal and Notice Rights from the EEOC, dated April 3, 2023.

## V. CLAIMS FOR RELIEF

## COUNT I: ADA DISCRIMINATION

57. Plaintiff incorporates by reference all Paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

58. Plaintiff was qualified for her position.

59. Plaintiff was a disabled individual, of which Defendant was aware.

60. Plaintiff suffered the adverse action of a hostile work environment following her use of medical leave and notice to the company of her medical condition.

61. Plaintiff suffered the adverse actions of a lowered bonus and raise following her use of medical leave and notice to the company of her medical condition.

62. Plaintiff requested the accommodations of a transfer or new position within the company, all of which were rejected by Defendant.

63. Plaintiff suffered the adverse action of non-selection for a new position following her use of medical leave and notice to the company of her medical condition.

64. Plaintiff suffered the adverse action of termination.

65. The timing of Plaintiff's use of medical leave and notice to the company of her medical condition, to the chain of adverse actions against her, shows causation.

66. Defendant has no legitimate business reasons for the adverse action against

Plaintiff.

67. Plaintiff suffered damages as a result of Defendant's discrimination, for which she is entitled to recovery.

## COUNT II: FMLA RETALIATION

68. Plaintiff incorporates by reference all Paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

69. Plaintiff engaged in protected activity under the FMLA when she took medical leave.

70. After Plaintiff's return from leave, Defendant took a series of several adverse actions against Plaintiff.

71. Plaintiff suffered the adverse action of a hostile work environment following her use of FMLA leave and notice to the company of her medical condition.

72. Plaintiff suffered the adverse actions of a lowered bonus and raise following her use of FMLA leave and notice to the company of her medical condition.

73. Plaintiff suffered the adverse action of non-selection for a new position following her use of FMLA leave and notice to the company of her medical condition.

74. Plaintiff suffered the adverse action of termination.

75. The circumstances of these adverse actions raise an inference of retaliation.

76. Defendant has no legitimate business reasons for the adverse actions against Plaintiff.

77. Defendant's actions against Plaintiff were willful.

78. Plaintiff has suffered damages as a result of Defendant's actions, for which she is entitled to recovery.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

a. Trial by jury;

b. That judgment be entered against Defendant on all claims;

c. Actual and compensatory damages in an amount to be determined by the enlightened conscience of a jury;

d. Punitive damages;

e. Attorney's fees, costs of litigation and any other relief the Court deems just and proper;

f. Declaratory relief to the effect that Defendant violated Plaintiff's statutory rights;

g. Injunctive relief prohibiting Defendant from further unlawful conduct of the type described herein; and

h. Any other relief this Court deems proper and just.

12.

Respectfully submitted this 30th day of June, 2023.

                                        THE KIRBY G. SMITH LAW FIRM, LLC

                                        <u>s/Amanda M. Brookhuis</u>
                                        Amanda Brookhuis
                                        Georgia Bar No. 601396
                                        Kirby G. Smith
                                        Georgia Bar No. 250119
                                        *Attorney for Plaintiff*

4488 North Shallowford Road
Suite 105
Atlanta, Georgia 30338
T: (844) 454-7529
F: (877) 352-6253
amb@kirbygsmith.com

13.

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 30th day of June, 2023.

THE KIRBY G. SMITH LAW FIRM, LLC

s/Amanda M. Brookhuis
Amanda Brookhuis
Georgia Bar No. 601396
*Attorney for Plaintiff*