IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAS FORWARDING (USA), INC.,<br><br>    Plaintiff,<br><br>v.<br><br>KNAPE & VOGT MANUFACTURING COMPANY,<br><br>    Defendant. | Civil Action File<br>No. _____ |

## COMPLAINT

Plaintiff, JAS Forwarding (USA), Inc., files this Complaint against Defendant, Knape & Vogt Manufacturing Company, stating as follows:

## THE PARTIES

1.  Plaintiff JAS Forwarding (USA), Inc. ("JAS"), is a corporation organized and existing under the laws of the State of Georgia having a principal place of business at 6165 Barfield Road, Atlanta, Georgia 30328.

2.  The Defendant, Knape & Vogt Manufacturing Company ("Knape"), is a corporation organized and existing under the laws of the State of Michigan with a principal place of business at 2700 Oak Industrial Drive NE, Grand Rapids, Michigan 49505.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because JAS and Knape are citizens of different states and the amount in controversy exceeds $75,000.

4. Knape is subject to general and specific personal jurisdiction in Georgia. Knape regularly transacts business in Georgia and entered into a Block Space Agreement with JAS, a Georgia corporation with a principal place of business in Atlanta, Georgia.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and because, among other reasons, Knape consented to Georgia as the exclusive forum for resolution of any disputes under the Block Space Agreement, which states, in relevant part, "All disputes arising out of or in connection with this Agreement, including any question regarding its existence or validity, shall be resolved in a competent court with applicable jurisdiction located in the location of incorporation of the Carrier."

## FACTUAL BACKGROUND

6. JAS is a leading global freight forwarding and logistics company covering all modes of transportation – air, ocean, surface – and also provides contract logistics and other sophisticated and digital-driven supply chain solutions.

Today, JAS covers more than 100 countries and has over 7,000 employees globally.

7. Knape specializes in the design, manufacture and distribution of functional hardware, office and healthcare ergonomics and storage-related components for original equipment manufacturers, specialty distributors, hardware chains and major home centers.

### The Block Space Agreement

8. In December 2021, JAS and Knape entered a Block Space Agreement (the "Agreement"). Knape has a copy of the Agreement.

9. At the time of the Agreement, the ocean freight market was experiencing unprecedented demand creating incredible price volatility, driving rates to never before seen levels, and leaving capacity scarce. The Agreement offered relief in the form of fixed rates for the life of the contract that were well under then current market levels, while also offering guaranteed space allocation on a weekly basis.

10. Pursuant to the Agreement, during the term from May 1, 2022, through April 30, 2025, JAS is generally required to provide Knape seven forty-foot containers – or FEUs – per sailing from Shanghai, China to Chicago, Illinois, at a guaranteed price per container, plus certain incidental charges.

11. At the time the parties entered into the Agreement, the guaranteed price stated in the Agreement was substantially lower than the market price.

12. Pursuant to the Agreement, Knape is obligated to pay JAS the guaranteed price per container plus certain incidental charges per sailing from May 1, 2022, through the end of the term which expires April 30, 2025.

13. The Agreement requires Knape to pay JAS the guaranteed price per container per sailing regardless of whether Knape actually uses or loads the containers, colloquially referred to in the freight industry as "deadfreight."

14. Conversely, if JAS fails to make the guaranteed containers available to Knape as required by the Agreement, the Agreement requires JAS to pay or credit Knape the guaranteed price per container. The Agreement thus provides mutual risk allocations.

15. In entering the Agreement for a guaranteed price through April 30, 2025, the parties expressly acknowledged and accepted the risk that the market price for sea freight transportation could increase or decrease and that such changes – "commercial contingencies" – were not valid reasons to suspend or terminate the parties' mutual obligations under the Agreement.

16. Applying the guaranteed price through the term of the Agreement, the approximate value of the Agreement exceeds $7.5 million.

### The Market Turns and Knape Concocts a Plan to "Break" the Agreement

17. At the time the parties entered the Agreement and for a period of time thereafter, the guaranteed price stated in the Agreement was less than the market price. Thus, Knape realized substantial savings under the Agreement. Equally important, the Agreement also guaranteed Knape space for its cargo on a vessel which at that time was at even more of a premium than the rates. Knape was thereby able to maintain continuity in their supply chain with little to no disruption.

18. Eventually the market price for sea freight transportation began to decrease. In the fall of 2022, the market price for sea freight transportation dropped below the guaranteed price in the Agreement.

19. As a result, Knape devised a scheme to intentionally and willfully avoid its obligations under the Agreement.

20. By email dated October 13, 2022, Knape stated in an email that the top management at Knape intended to breach the Agreement: "Apparently [my boss] received his marching orders from up top yesterday and <u>they intend to break all contracts</u> and go with ASCENT [Global Logistics] after all. Not sure what that will look like, but just a heads up. Decisions are being made that are outside his or my control." (Emphasis added). A true and correct copy of this email is attached as **<u>Exhibit A</u>**.

21. Ascent Global Logistics is another freight forwarder offering services which are competitive with those offered by JAS.

22. As part of its calculated scheme to escape its obligations under the Agreement and to move its business elsewhere, Knape manufactured a pretext or "cover."

23. On or about October 31, 2022, Knape questioned three JAS invoices issued pursuant to the Agreement.

24. As a result, JAS immediately undertook a comprehensive review of the Knape billings and issued credit notes to Knape of approximately $109,000.

25. On or about November 1, 2022, JAS informed Knape of the results of its billing review and the credit notes. Satisfied with the resolution, Knape accepted the credit.

26. Thereafter, Knape did not raise any billing issues or convey any other complaints to JAS.

**Knape Willfully Breaches the Agreement and Seeks to Intimidate JAS**

27. Knape generally stopped communicating with JAS and stopped placing freight orders with JAS in the fall of 2022. And Knape refused to pay JAS's invoices issued pursuant to the Agreement as they became due.

28. In an effort to intimidate and threaten JAS, on December 21, 2022, Knape filed a baseless suit against JAS in a Michigan state court.

29. In the Michigan lawsuit, Knape sought, among other claims, a declaratory judgment that it should be excused from performing the Agreement through the remainder of the term which expires on April 30, 2025.

30. In the Michigan lawsuit, Knape alleged that it and JAS are parties to the Agreement. Knape has thus ratified the validity of the Agreement.

31. On or about January 6, 2023, Knape sent JAS a copy of the Michigan lawsuit and demanded that JAS allow Knape to walk away from the Agreement.

32. Knape thus filed suit (in an improper forum) as part of its scheme to "break" the Agreement and to strongarm JAS into allowing Knape to walk away from its obligations under the Agreement.

33. Knape engaged in a scheme to "break" the Agreement because, after entering the Agreement and agreeing to a guaranteed price to ensure the delivery of its cargo from Shanghai to the United States, the market price for sea freight transportation decreased and freight capacity restraints eased, making containers and vessel space much more readily available.

34. At the insistence of JAS, Knape eventually dismissed its meritless lawsuit in Michigan.

35. JAS remains ready, willing, and able to perform the Agreement.

36. As described above, Knape has acted in bad faith and has been stubbornly litigious. Among other misconduct, Knape intentionally and willfully schemed to "break" the Agreement to serve its commercial interests to the detriment of JAS.

## COUNT I – BREACH OF CONTRACT

37. JAS hereby realleges and incorporates by reference the allegations of paragraphs 1 through 36 of this Complaint.

38. The Agreement and JAS's invoices constitute a valid and binding contract between JAS and Knape.

39. Knape partially breached the Agreement and the invoices by failing to pay JAS for freight services and deadfreight.

40. As a direct and proximate result of Knape's partial breaches, JAS has suffered damages in an amount to be determined at trial.

41. Knape currently owes JAS more than $1 million pursuant to the Agreement and the invoices, exclusive of interest, attorneys' fees, and litigation expenses. These amounts will continue to increase in the future as Knape continues to incur deadfreight liability under the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JAS Forwarding (USA), Inc. respectfully prays that judgment be entered against Defendant Knape & Vogt Manufacturing Company for:

(1) All compensatory damages suffered by JAS as a result of Knape's breaches of the Agreement and the invoices;

(2) Litigation expenses and reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11 and JAS's invoices and terms and conditions of service;

(3) Costs, pre-judgment interest, and post-judgment interest; and

(4) Such other, further, or different relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed.R.Civ.P. 38, Plaintiff JAS Forwarding (USA), Inc. hereby demands trial by jury as to all issues so triable in this action.

This 30th day of June, 2023.

        Respectfully submitted,

        **MILLER & MARTIN PLLC**

        By: */s/ Ryan A. Kurtz*
            Ryan A. Kurtz
            Georgia Bar No. 430484
            Peter J. Critikos, III
            Georgia Bar No. 347689

        1180 West Peachtree Street, N.W.
        Suite 2100
        Atlanta, Georgia 30309-3407
        Telephone (404) 962-6100
        Facsimile (404) 962-6300
        Email:  ryan.kurtz@millermartin.com
        Email:  peter.critikos@millermartin.com

        *Attorneys for Plaintiff JAS Forwarding (USA), Inc.*