IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SOPHIA HO-WERSANT Individually and as Parent and Guardian of AD

    Plaintiff

v.

TREEHOUSE ACADEMY, INC.,
PENNY HOLT;
TINA HORNSBY;

    Defendants

**Civil Action File No.**

## COMPLAINT

1. Plaintiff, Sophia Ho-Wersant is a citizen and resident of Georgia, the mother and guardian of her daughter, AD, the minor Plaintiff.

2. Defendant Treehouse is a daycare, at 740 Five Forks Trickum Rd, Lawrenceville GA, owned by Defendants Holt and Hornsby, its CEO, CFO and Secretary respectively, who adopted and ratified their actions as stated here.

## JURISDICTION

3. Under 28 U.S.C. § 1331 and 1343, jurisdiction exists based upon the federal claims at issue under Americans with Disabilities Act ("ADA") 42 U.S.C. §12102 and the Rehabilitation Act, 1973, 29 U.S.C. § 701, et seq and supplemental jurisdiction exists over the state law claims at issue under 28 U.S.C. § 1367.

1

4. Under 28 U.S.C. § 1391 (b) venue is proper where the events or omissions at issue occurred, where the Defendants are located.

## FACTS

5. Plaintiff is the parent of AD, who is a minor at all times relevant.

6. AD was born prematurely, who has medical issues requiring her to consume special foods and other nutrients for her health and well-being and cannot consume regular foods due to her eating disorder during the events in questions.

7. AD's eating disorder require special eating accommodations, including the assistance of staff and teachers at daycares at that time.

8. Treehouse was formed in January 2006 and its website states as follows around the time of the events in question, in August 2012:

> "Penny Holt and Tina Hornsby founded Treehouse Academy in January of 2006. We believe that families deserve to have quality childcare in a friendly family- oriented environment, continuously striving to develop a partnership with parents to help bring out the very best in your child. We also strive to deliver the highest level of performance with quality leadership and service. Our goal is to nurture your child's capability to think skillfully and to strengthen his or her commitment to values such as kindness, helpfulness and respect for others. We strongly believe in having an open-door policy and invite parents to discuss any and all concerns with us at all times either in person or over the phone, regardless of the matter."
>
> www.treehouseacademy.net/home/company-profile/executive-team.html

9. The above website also states as follows:

Meals are also provided free of charge. Treehouse Academy follows the USDA food guidelines. Ms. Paula has been our cook since we opened our doors in 2006. We serve a variety of nutritious meals and snacks throughout the year.

10. AD was enrolled at Defendant Treehouse from 2011-2012 under the care of Defendant Holt and Hornsby pursuant to an Enrollment Contract.

11. The Contract asked about the "Child's Allergies, special medical conditions (i.e) diabetic, asthmatic, drug allergies, special needs, special accommodations, special nutritional issues (Vegetarian or Religion based), or medications prescribed for long term continuous use and/or has the following pre-existing illness, or health concerns."

12. Defendants operate a daycare that is subject to the ADA which must make an *individualized assessment* about whether it can meet the particular needs of a child with a disability, including making reasonable modifications to its policies and practices to allow for children with disabilities to participate.

13. Defendants' website admits it "accepts childcare assistance from the Gwinnett County Department of Family and Children Services."

14. Defendants' website, www.treehouseacademy.net represents that:

"For children, play is the foundation for all learning and Treehouse Academy is dedicated to providing your child with a fun and positive learning experience. Consider us your child's family while away from

you.  <u>Your child is the center of your universe, and creating a safe, energetic environment is our focus.  Our founders are parents, so we understand that each child has specific needs and requirements when away from their parent.  We will work with you to make sure that we are aware of exactly what your child needs to succeed at Treehouse Academy</u>."

15. Defendants' website contends they "follow the USDA food guidelines. Ms. Paula has been our cook since we opened our doors in 2006. We serve a variety of nutritious meals and snacks throughout the year."

16. Defendants were fully advised by Plaintiff of the nature of AD's eating disorder and related accommodations at the time of her enrollment in 2011.

17. Defendants reassured Plaintiff that they could adequately care for and feed AD at their daycare, despite her eating disorders and accommodations.

18. Defendants then fed and cared for AD based upon her eating accommodations in accordance with Plaintiff's instructions without incident.

19. AD mainly worked with Ms. Maya, an educator of Defendants.

20. On 05/26/11, AR suffered serious injuries from an unexplained fall at their daycare while allegedly under the supervision of the Defendants.

21. On or about 05/26/11, Defendants informed Plaintiff that AD sustained injuries as a result of the fall at their facility via a telephone call.

22. Defendants never notified Plaintiff during the call of the seriousness of the injuries sustained by AD.

23. On 05/26/11, Plaintiff met with the Defendants at their office regarding the fall involving AD at their daycare facility at a result of the call.

24. Defendants claimed to Plaintiff that AR allegedly fell off an outside swing or other plaything at the playground when they met.

25. Ms. Ashely kept saying AR fell, with no other explanation, who appeared upset while Defendants Ashely and Hornsby were non-committal.

26. To the best of Plaintiff's knowledge, at no time since AD sustained her injuries did the Defendants report this incident to the Georgia Department of Early Care and Learning, the state agency for monitoring day care accidents.

27. Defendant expelled AR from Treehouse on or about 5/31/11 after she suffered these serious, unexplained injuries after Plaintiff and Anna's father raised their concerns at that time about AD's injury on 05/26/11.

28. Defendants had no explanation for the fall or expelling AD during the meeting, refusing to consider any other arrangements, which they ratified.

29. AD's expulsion conflicted with the prior representations of Defendants that they were responsible for AD's safety and well-being at their daycare, who offered no justification for their inexplicable actions, who were investigated for similar such matters by Bright from the Start, CCLC 16542.

30. On 02/21/23, Anna's father sent email correspondence to Treehouse requesting the personal email addresses of Holt and Hornsby and stated as follows:

> Good morning. I would like the personal email addresses for Ms. Tina and Ms. Penny. Our daughter Anna Wersant attended this day care back in 2012 - from which she was expelled by these owners after being injured on the playground while under your care. I believe we have unfinished business at this time. I look forward to hearing from you.

31. Defendants never responded to the above letter which they admitted under O.C.G.A. 24-14-23 including its allegations of their above misconduct.

32. On 03/21/23, Plaintiff's counsel wrote a detailed letter, setting forth the circumstances of the fall, documenting AR's injuries and medical treatment with photographic evidence, her wrongful expulsion by Defendants, numerous complaints of similar incidents against the Defendants and making a demand for damages and attorney's fees in the sum of $485,000.00 on behalf of AR and Plaintiff.

33. Defendants never responded to the above 03/21/23 letter which they also admitted under O.C.G.A. 24-14-23.

34. Plaintiff's counsel was contacted by counsel for Defendants on 04/13/23 during which defense counsel admitted AR was expelled by Defendants due to their refusal to provide accommodations for her eating disorder in addition to her injury.

35. Plaintiff's counsel noted Defendants' expulsion of AR based upon her eating conditions was a violation of the ADA and the Rehabilitation Act after which defense counsel fell silent and the call then ended.

36. Plaintiff's counsel memorialized the 04/13/23 discussion in his email dated 04/13/23 to defense counsel, stating as follows:

> "Bill - thank you for your call today.
>
> I did want to confirm that you mentioned during our call that Treehouse removed AD as a student due to her eating condition. AD's condition is classified as a disability under the ADA as well as under the Rehabilitation Act - assuming Treehouse received federal funds. The school raised no accommodations issue and instead expelled her after the unexplained fall. I presume you are handling that issue as well which I will raise in a supplement to my prior letter.
>
> There is also the issue of Ms. Tina's undisclosed criminal background- an issue unmentioned during our call but raised in my letter. I look forward to working with you."

37. Plaintiff's counsel also noted the failure of the Defendants to respond to the above letters who admitted their contents which defense counsel never disputed.

38. Defense counsel responded that day who did not dispute the prior communications and admitted the allegations of the violations of the ADA and Rehabilitation Act by the Defendants who stated that they expelled AD as she:

> "[H]ad some sort of special diet and due to seasonal staffing/student ratio changes they [Defendants] did not have the staffing as related to [AR]."

39. Defendants never previously disclosed any issues with accommodating AR's eating disorder, whose expulsion of AR on that basis was illegal as shown here.

40. Plaintiff's counsel confirmed AR's illegal expulsion by the Defendants in additional correspondence dated 05/04/23 which states as follows:

> "First, everything in that demand letter is treated as admitted under O.C.G.A. 24-4-23 which your client failed to address - including removing Anna as a student in retaliation for our reporting of the incident in which she was injured. We also understand that Anna was expelled due to her eating disorder, a violation of the ADA - about which you were quite silent during our last call. I also note that the letter details that Treehouse is operated by a convicted criminal namely Tina Holt which is clearly undisputed and which you did not address at any time.
>
> I also note that your client failed to provide its alleged 'records' of this incident - to which we are entitled by law as Anna's parents - and which I suspect were manufactured by your client long after the fact. If your client does not offer to resolve this matter without further delay by 5:00pm this Monday then we will address this matter with Bright From the Star for appropriate action including the closure of your client's company and revocation of its daycare license. That is in addition to the public litigation to which they will be subject."

41. On 05/08/23, defense counsel again responded who did not dispute the prior communications and who now contended for the first time that:

> "Further, there was not sufficient staff at Treehouse as it transitioned to the summer to continue care for [AR] into the summer."

42. No further communications followed.

43. All conditions precent were met, fulfilled or waived or futile and unnecessary in this action which evidences the illegal conduct of the Defendants for which they should be held fully accountable.

### Count I: Violations of the ADA against Treehouse

44. ¶¶ 1-43 are incorporated.

45. The Americans with Disabilities Act ("ADA") defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 USC §12102.

46. The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

47. Treehouse receives federal education funds which is subject to the ADA as a place of "public accommodation." See 42 U.S.C. §12182(a)

48. Treehouse is again subject to these requirements as also outlined at www.ada.gov/resources/child-care-centers.

49. AD requires special feeding accommodations due to her medical

condition, including her consumption of Pediasure, a nutritional product designed for children who are behind on growth and must gain weight, such as AD.

50. Treehouse received notice of AD's feeding accommodation upon her enrollment as a result of the discussions and records received from Plaintiffs.

51. Treehouse illegally discharged AD, the minor Plaintiff solely and exclusively as she suffered from an eating disorder despite receiving full tuition.

52. Treehouse discriminated against AD in violation of the ADA as they refused to allow her to be fed on their premises by its staff and expelled her due to her feeding impairment, discriminatory acts violating the ADA, on the pretext they could not accommodate them, contrary to their prior representations to Plaintiff.

53. Treehouse cited none of the applicable factors under the ADA to justify AD's discharge and expulsion, who offered no reasonable modifications of their policies and practices to AD and Plaintiff so AD could remain enrolled.

54. Treehouse negligently maliciously, willfully and wantonly engaged in the ADA violations and other misconduct to harm AD, who was injured as a result by being emotionally distressed and injured due to her discharge and expulsion by them, for which Plaintiff had to find immediate, alternative enrollment which was extremely difficult due to the Memorial Day holiday.

55. Plaintiff are entitled to fees and costs per O.C.G.A. § 13-6-11 for their unnecessary trouble and expense to prosecute this action against Defendants, who acted in bad faith and were stubbornly litigious regarding their misconduct.

56. Treehouse is liable to Plaintiffs for compensatory, consequential, special, nominal, punitive and exemplary damages, fees and costs for its violation of the ADA for which Plaintiffs demand judgment with other just relief.

### Count II: Violations of the Rehabilitation Act against Treehouse

57. ¶¶ 1-43 are incorporated.

58. Section 504 of the Rehabilitation Act states (in part): "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. 39.

59. Treehouse receives federal education funding and discharged AD solely and exclusively due to her eating disorder despite receiving full tuition.

60. Treehouse discriminated against Plaintiff in violation of the RA which expelled AD, refused allow her to attend classes and remain on campus due to her disability and impairment or regarded her as suffering such an impairment.

61. Treehouse negligently maliciously, willfully and wantonly engaged in these violations of the Act and other misconduct to harm AD, who was injured including being emotionally distressed per her discharge and expulsion.

62. Plaintiffs are entitled to fees and costs per O.C.G.A. § 13-6-11 for their unnecessary trouble and expense to prosecute this action against Treehouse which acted in bad faith and was stubbornly litigious regarding its misconduct.

63. Treehouse is liable to Plaintiffs for compensatory, consequential, special, nominal, punitive and exemplary damages, fees and costs for its violation of the RA for which the Plaintiffs demand judgment with other just relief.

## Count III: Breach of Contract against Defendants

64. ¶¶ 1-43 are incorporated.

65. Plaintiff informed Defendants of AD's eating disorder before AD commenced her studies with them, who promised they could fully accommodate her eating disorders as part of their daycare enrollment contract.

66. Plaintiff fully complied with the enrollment contract who paid all fees and costs to the Defendants for AD's care and safety in consideration for their above promises which the Defendants adopted and ratified.

67. Defendant discharged and expelled AD in retaliation for reporting her injury and also refused to provide her accommodations as required despite being fully paid under the enrollment contract.

68. Defendants breached their contract with Plaintiffs who discharged and expelled AD from their daycare facility due to her eating disorder and injury.

69. Defendants refused to refund any monies paid by Plaintiff for their care of AD which was utterly lacking under the enrollment contract.

70. Plaintiffs are entitled to fees and costs under O.C.G.A. § 13-6-11 for their unnecessary trouble and expense to prosecute this action against Defendants, who acted in bad faith and were stubbornly litigious as to their misconduct.

71. Plaintiffs were damaged emotionally and financially as a result of Defendants' breach of contract, who are entitled to and demand general, special, consequential, compensatory and nominal damages, fees and costs and all other just relief against the Defendants.

## Count IV: Breach of Duty as to Defendants

72. ¶ 1-43 are incorporated by reference.

73. Defendants had a legal duty of reasonable care to make their daycare safe and secure for invitees such as the Plaintiffs.

74. Defendants admitted their duty on their website as follows:

"Treehouse Academy is an independent, energetic, childcare provider who is dedicated to the growth and development of children ages of 6 weeks to 13 years of age. We provide a positive learning environment in a family-like atmosphere. Our facility has a very friendly, fun, and clean feel to it from the minute you walk in the door. You will feel a great sense of commitment and partnership from the owners; director and staff members, *the feeling of being in a secure environment.*

75. Defendants confirmed their duty of a safe and secure environment at Treehouse by which they induced Plaintiffs to enroll at their daycare without disclosing any issues with fulfilling this duty to them.

76. Defendants breached their duties to provide a safe and secure daycare environment to Plaintiffs, in a malicious, willful and wanton matter, violating their duties, intended to protect persons such as Plaintiffs from such injury.

77. AD was invited into Treehouse by Defendants, to whom they had and promised a duty of ordinary care, which they willfully and wantonly breached, causing harm to AD, to which they were indifferent and legally admitted.

78. Plaintiff are entitled to fees and costs per O.C.G.A. § 13-6-11 for their unnecessary trouble and expense to prosecute the Defendants, who acted in bad faith and were stubbornly litigious regarding their actions.

79. Plaintiffs sustained physical and mental pain and suffering as a proximate or direct result of the breach of duty of Defendants against whom Plaintiffs demand general and special damages, past, present, and future medical expenses, present and future pain, and suffering, punitive damages for this gross and willful misconduct, attorney's fees and costs and just relief.

### Count V: Conspiracy as to Defendants

80. ¶¶ 1-43 are incorporated.

81. Defendants had a conspiracy, a common design to harm AD and conceal this matter involving AD's injury and unlawful discharge and expulsion from the authorities, each sharing their intent and knowledge to accomplish this goal by concerted action by unlawful purposes or lawful purposes by unlawful means: their daycare "services."

82. Defendants committed overt acts to further their conspiracy, such as soliciting Plaintiff to enroll AD in their daycare and meet with them per their "open door" policy but then discharged and expelled AD to illegally conceal the

incident involving AD from the authorities as required and to effect the other misconduct alleged here, to again harm AD, for which they are liable.

83. Defendants made their agreements to perform aspects of their illegal conspiracy in concert, just to avoid the legal consequences of their

84. The misconduct of Defendants was intentional, willful, wanton, malicious and oppressive, reckless and wanting in care, grossly negligent and consciously indifferent to its results, which they ratified for this unlawful purpose.

85. Plaintiff are entitled to fees and costs per O.C.G.A. § 13-6-11 for their unnecessary trouble and expense to prosecute the Defendants, who acted in bad faith and were stubbornly litigious regarding their actions.

86. Plaintiffs sustained physical and mental pain and suffering as a proximate or direct result of the conspiracy of Defendants against whom Plaintiffs demand general and special damages, past, present, and future medical expenses, present and future pain, and suffering, punitive damages for this gross and willful misconduct, attorney's fees and costs and just relief.

87. The individual Defendants are not minor(s), or adjudged incompetent, or in the military for the last 30 days or subject to protection per 50 U.S.C. § 3901.

## **CERTIFICATE OF COMPLIANCE**

Per L.R. 5.1(C), I certify this document was prepared per L.R. 5.1(B) in Times Roman 14-point typeface.

Respectfully submitted this 1st day of July 2023.

By: */s/Paul G. Wersant*
Paul G. Wersant
Georgia Bar No. 748341
3245 Peachtree Parkway, Suite D-245
Suwanee, Georgia 30024
Telephone: (678) 894-5876
Email: pwersant@gmail.com
Attorney for Plaintiffs