# Exhibit K

```
 1                  UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF GEORGIA
 2                        VALDOSTA DIVISION
                      CASE NO. 7:20-cv-00224
 3

 4   YANIRA YESENIA OLDAKER, et al.,        Albany, Georgia

 5                 Plaintiffs,              May 2, 2023

 6         vs.                             9:40 a.m. - 11:03 a.m.

 7   THOMAS P. GILES, et al.,

 8                 Defendants.
     _____
 9

10

11                       MOTIONS HEARING

12            BEFORE THE HONORABLE W. LOUIS SANDS

13              UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21   STENOGRAPHICALLY REPORTED BY:

22                       REBECCA MAXCY, RMR, CRR
                         Official Court Reporter
23                       United States District Court
                         C.B. King United States Courthouse
24                       201 W. Broad Avenue
                         Albany, Georgia 31701
25                       (229) 430-8431
```

```
 1   APPEARANCES:

 2


 3   FOR THE PLAINTIFFS:          MATTHEW VOGEL
                                  Attorney at Law
 4                                National Immigration Project
                                  2201 Wisconsin Avenue NW
 5                                Suite 200
                                  Washington, DC 20007
 6
                                  CLARE RIVKA NORINS
 7                                Assistant Clinical Professor
                                  UGA School of Law
 8                                225 Herty Drive
                                  Athens, GA 30602
 9
                                  DAVID DREYER
10                                Attorney at Law
                                  Dreyer Sterling
11                                437 Memorial Drive, Suite A-2
                                  Atlanta, GA 30312
12
     FOR DEFENDANT AMIN:          BRITTANY CAMBRE
13                                Attorney at Law
                                  Chilivis Grubman
14                                1834 Independence Square
                                  Atlanta, GA 30338
15
                                  E. WAYNE SATTERFIELD
16                                AUSTIN ATKINSON
                                  Attorneys at Law
17                                Hall Booth Smith
                                  191 Peachtree Street NE
18                                Suite 2900
                                  Atlanta, GA 30303
19
     FOR DEFENDANTS GILES, CIPRIAN, ADDY SCHMITT
20   RIVERA, and MUSANTE:        Attorney at Law
                                  Harris St. Laurent & Wechsler
21                                1775 Pennsylvania Avenue NW
                                  Suite 650
22                                Washington, DC 20006

23

24

25
```

```
 1    APPEARANCES:

 2

 3    FOR DEFENDANTS GILES,            MARIE MOYLE
      MAYORKAS, GARLAND, CUCCINELLI,  Assistant U.S. Attorney
 4    U.S.  IMMIGRATION AND CUSTOMS   U.S. Attorney's Office -
      ENFORCEMENT, U.S. DEPARTMENT    Northern District
 5    OF JUSTICE, U.S. DEPARTMENT     111 N. Adams Street, Suite 4
      OF HOMELAND SECURITY, AND       Tallahassee, FL 32301
 6    JOHNSON:

 7    FOR DEFENDANTS MAYORKAS,        JEFFREY ROBINS
      GARLAND, CUCCINELLI, U.S.       Deputy Director
 8    IMMIGRATION AND CUSTOMS         U.S. Department of Justice
      ENFORCEMENT, U.S. DEPARTMENT    450 5th Street NW
 9    OF JUSTICE, U.S. DEPARTMENT     Washington, DC 20001
      OF HOMELAND SECURITY, CIPRIAN,
10    MUSANTE, JOHNSON, RIVERA, and
      McMILLER:

11
      FOR DEFENDANTS MINES and        JEREMY BRUMBELOW
12    RABIOU:                         Assistant U.S. Attorney
                                      U.S. Department of Justice
13                                    1100 L Street NW
                                      Washington, DC 20530
14
      FOR DEFENDANTS LASALLE          JOHN ROUSE
15    SOUTHEAST, LLC; PAULK; GEORGE;  Attorney at Law
      and IRWIN COUNTY DETENTION      McGlinchey Stafford
16    CENTER:                         1020 Highland Colony Parkway
                                      Suite 406
17                                    Ridgeland, MS 39157

18    FOR DEFENDANT HOSPITAL          GREGORY TALLEY
      AUTHORITY OF IRWIN COUNTY:      Attorney at Law
19                                    Coleman Talley
                                      109 S Ashley Street
20                                    Valdosta, GA 31603

21    FOR MOVANT NBCUNIVERSAL         CYNTHIA COUNTS
      MEDIA LLC:                      Attorney at Law
22                                    FisherBroyles
                                      945 E Paces Ferry Road NE
23                                    Suite 2000
                                      Atlanta, GA 30326
24

25
```

```
 1    APPEARANCES:

 2

 3    FOR MAHENDRA AMIN IN          STACEY EVANS
      ASSOCIATED LITIGATION:        TIFFANY WATKINS
 4                                  Attorneys at Law
                                    Conley Griggs Partin
 5                                  4200 Northside Parkway NW
                                    Building One, Suite 300
 6                                  Atlanta, GA 30327

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S

 2            (Call to the Order of the Court.)

 3            THE COURT:  All right.  Good morning.  Welcome to

 4   everyone.  This case has been pending a little while, and I

 5   think this is the first time we've all got together actually in

 6   court, so it's good to see you.  And for the record, this is

 7   the matter of Case No. 7:20-cv-224-WLS.

 8            And is that pronounced Oldaker?

 9            MR. VOGEL:  Oldaker, Your Honor.

10            THE COURT:  Oldaker.  Okay.  I wanted to be sure I got

11   that right.  Oldaker vs. Giles, et al.

12            There are several matters.  The two main ones were

13   generated by the motion of the plaintiffs for a show cause

14   regarding Defendant Amin, and there was a motion to intervene

15   by NBCUniversal, which the Court granted pending an appearance

16   at this hearing.  And, also, the Court in reviewing the case

17   when these matters arose, I noted that there was a stay in

18   place, and this was a good time for us to re-evaluate that.

19   And it appears that there will no longer be a need because

20   there have been more recent motions have been filed, and there

21   may be some difference of viewing that.

22            So I think I have a seating chart.  Let me just ask

23   this:  Who will be speaking for the plaintiffs?

24            MR. VOGEL:  I will, Your Honor.  Matt Vogel from the

25   National Immigration Project.
```

```
 1              THE COURT:  All right.  And for the defendants?

 2              MS. CAMBRE:  Brittany Cambre, Your Honor.

 3              THE COURT:  All right.  And is there an appearance for

 4   NBC?

 5              MS. COUNTS:  Your Honor, Cynthia Counts.  Good to see

 6   you.

 7              THE COURT:  All right.  Good to see you.  Thank you.

 8              All right.  Is there anything else we need to discuss

 9   preliminarily before we get into the matters?  Not.  Okay.

10              I would like to hear from NBCUniversal as to what it is

11   that you believe you need from this -- from participation in

12   this particular aspect of the matter.  You might want to just

13   go to that podium where the microphone is.  It helps me to hear

14   and also helps the court reporter.  Thank you.

15              MS. COUNTS:  Thank you, Your Honor.  First of all, it

16   is nice to be here.  I'm from Americus, Georgia, so I get to go

17   swing by and see my parents afterwards, so I appreciate it.

18              But I wanted to just alert the Court, most of what we

19   need to discuss today -- or probably everything -- is in the

20   papers that we submitted, but the primary concern is we have

21   been sued in a libel claim in the southern district.  We moved

22   for a stay due to the pending investigations, and that was

23   denied to us at the time because we didn't have enough of a

24   basis, according to the Court, to show that we were --

25              THE COURT:  By the way, when was that case filed?  It
```

1     was filed sometime after this case; is that right?

2          MS. COUNTS:  Is that right?  Yes.  September 2021.  So

3     September of 2021.

4          And so the Court -- we've not gone back to request a

5     stay.  Discovery has proceeded.  The problem is that we've not

6     gotten discovery from any of the plaintiffs or defendants here,

7     and Dr. Amin has taken the position at certain times that he

8     has been asked by the Department of Justice not to provide

9     certain documents because the investigation was pending.  It's

10    going to strap us because the claims are very similar.  If you

11    look at even what Dr. Amin indicated, it's unnecessary and

12    invasive procedures, including hysterectomies, that we reported

13    upon.  There was certain things from the whistle-blower

14    complaint that I think you're familiar with that we quoted.

15          But in order to prove our case, we have to be able to

16    show both substantial truth to the allegations.  It doesn't

17    have to be literally, but the gist of it being the same.  And

18    we also have to be able to prove a fair report privilege or

19    other privileges.  And so this discovery is crucial to our

20    being able to do that.  We're just hamstrung.  We can't do

21    anything.

22          THE COURT:  This case involves only a defamation claim;

23    is that right?

24          MS. COURT:  That is correct, Your Honor.  And the

25    overlap is really this performing a large number of unnecessary

1   and/or unconsented-to gynecological procedures, like I stated.

2   And it's also -- you know, we need documents from these

3   proceedings, such as the number of proceedings (sic) Dr. Amin,

4   you know, has done as opposed to, you know, other members that

5   give treatment for ICE.  The senate report gave those

6   statistics, but we need that information in our own case to be

7   able to defend ourselves --

8          THE COURT:  As I understand it, the Court in the

9   southern district stayed discovery for a period of time, but it

10  was based on the investigation, not because of a concern about

11  this case.  Is that correct?

12         MS. COUNTS:  The southern district stayed the case only

13  while we were doing our motion for judgment on pleadings or

14  motion to dismiss.  And then after that we had asked for a

15  continued stay because of the investigations, and the Court

16  just said we had more of a generalized concern.  It wasn't

17  specific.

18         I think this now highlights clearly the complete issue

19  we have here.  And this Court really had two requests.  First,

20  that you would hold that the stay in this action does not

21  prevent the parties from taking discovery in our case.  And if

22  you do believe that the discovery stay permits such discovery,

23  then we'd ask you to lift the stay as to all parties so that we

24  could have discovery proceed in the NBCU case.

25         THE COURT:  I think the plaintiffs were concerned

1  about, I guess, multiple depositions and other issues.

2          MS. COUNTS:  Right, Your Honor.  And we're willing to

3  work around --

4          THE COURT:  It would create somewhat of a burden --

5          MS. COUNTS:  Right.

6          THE COURT:  -- upon them.  What are your thoughts about

7  that?

8          MS. COUNTS:  Your Honor, we're willing to work with

9  them.  We've said that as much.  I think Dr. Amin has some

10  objections to it.  But, Your Honor, certainly if discovery is

11  lifted, then we could probably coordinate the depositions and

12  have them even at the same time.  But I think there has been

13  some talk about written questions as well.  I mean, there are

14  certainly ways that we can try to accommodate everybody.

15          But we need it not just from the plaintiffs, but more

16  importantly, from the defendants, because that's going to go

17  directly to the issues in our case, if that makes sense.

18          THE COURT:  I understand.

19          MS. COUNTS:  So, Your Honor, I think that most

20  everything is pretty much laid out in our brief.  I was saying

21  the Court granted in part and denied our motion for summary

22  judgment eliminating many of the statements but still the

23  ones that are at issue here are still there.  And it does

24  say -- I think what Dr. Amin said, to show how it's clear,

25  nonconsensual -- wait.  Was it there?  Hold on one second.

1   Well, I think that he does, you know, give a similar listing of

2   the issues, saying that the issue can be about the invasive,

3   unnecessary gynecological barrier and also the repeated failure

4   to secure informed consent for off-site.  So those issues would

5   overlap.  And I think that you previously have held that

6   plaintiffs -- you couldn't stay this case entirely in the

7   interest of justice and that plaintiffs would be prejudiced in

8   their pursuit of speedy trial litigation if the case is unable

9   to proceed whatsoever while the criminal investigation

10  continues.  I would say that would apply to us as well.

11       So if the Court could give us some guidance.  You know,

12  whatever you decide you decide, but at least we then could go

13  back to our court if we need further relief too.  Thank you,

14  Your Honor.

15       THE COURT:  Thank you.  Does either the plaintiffs or

16  the other defendants have any response to the issues of the

17  concerns raised by universal -- NBC?

18       MR. VOGEL:  The plaintiffs do.  Just a quick response,

19  if it's okay, Your Honor.

20       THE COURT:  All right.

21       MR. VOGEL:  I don't generally take a position on NBC's

22  motion to intervene.  I did want to take --

23       THE COURT:  Because if I were to let them in for the

24  limited purpose of them being able to assert their concerns,

25  because obviously these cases have been delayed in terms of the

1    people in it, but nothing more.

2          MR. VOGEL:  Yes, Your Honor.  The one thing that I did

3    want to note that we -- I think our papers made clear -- do

4    have some opposition to is the idea that the stay in this case

5    does not -- or that the stay in this case did not prohibit

6    discovery in their case.  It has been our position -- I think

7    this is clear in the papers -- that if discovery were to

8    proceed in their case and Defendant Amin were able to take live

9    depositions of our plaintiffs, of our clients, that that would

10   give Defendant Amin a head start on discovery in this case,

11   because, as both of the parties noted, there are some

12   overlapping issues.

13         THE COURT:  But that's a subsequent position based on

14   the change of circumstances because, correct me if I'm wrong, I

15   believe the Court granted a stay because of the investigations.

16         MR. VOGEL:  Yes, Your Honor.

17         THE COURT:  And it was a stay in this case.  So to say

18   that that stay means more, you're saying that in light of what

19   you think the developments are now, not that you read the

20   Court's initial stay order as being that broad.

21         MR. VOGEL:  Oh, I see what you're saying, Your Honor.

22   No.  What we are saying is that the order Your Honor entered

23   maintaining the discovery stay, if Defendant Amin was to be

24   allowed to continue with discovery in that case and depose our

25   clients, as he has indicated he would like to do and as he has

1    tried to do, that that would give Defendant Amin a head start

2    in discovery in this case by allowing Defendant Amin to explore

3    some of the issues at the very heart of this case.  And --

4         THE COURT:  Would it make any sense if the Court

5    permitted the defendant Amin and the plaintiffs to be deposed?

6    I'm just wondering -- I've not thought that through.  But if

7    the case has to move -- from what you're telling me, he's

8    advantaged by being covered by the stay if he's protected, but

9    if he can go to another case and reach the plaintiffs, in a way

10   he gets around it.  But if he doesn't get around it, what would

11   be the --

12        MR. VOGEL:  Our second concern, Your Honor -- our

13   second concern is that Defendant Amin would get two bites at

14   the apple; would get an opportunity to depose our clients in

15   that case and in this case.

16        THE COURT:  I thought about that too.  I don't mean to

17   interrupt your argument, but I want to get to what I'm

18   concerned about and some thoughts I have about it.  These cases

19   are separate cases, two different courts, and each court has

20   the primary responsibility to move its cases.  But they clearly

21   are related because some of the parties are common to each, and

22   the general subject matter about it, the alleged events relate

23   to both cases.  And I know in some cases it makes sense if

24   they're closely related enough in some reason to establish a

25   discovery that would prevent repetitive, you know, depositions

1   or they could be combined in some way so that there could be

2   one and all of the parties would be able to take advantage of

3   that.

4          Have you all talked about or discussed that sort of

5   situation?

6          MR. VOGEL:  We haven't discussed that in any depth,

7   Your Honor.  I do think that if Your Honor were to go forward

8   with discovery in this case, as we indicated in our submission,

9   that there needs to be guide rails.  There needs to be

10  protections in place like what you're speaking of to prevent

11  undue burden, to prevent prejudice, to prevent unfairness in

12  these proceedings to our clients.  And so, you know, some of

13  those things -- if, for example, there were to be a combined

14  deposition, like one deposition -- it sounds like you're

15  talking about one deposition for both cases.

16         THE COURT:  That can be used in either case.

17         MR. VOGEL:  And that would allow all parties involved

18  to participate.

19         THE COURT:  Yes.

20         MR. VOGEL:  Yeah.  So --

21         THE COURT:  You all could do a single deposition, you

22  know, unless there's some extraordinary reason there would have

23  to be a second one, but that would take care of it.  That would

24  not allow someone an unfair advantage of a second, you know,

25  routine sort of a deposition just by the fact that there's a

1    separate case.

2          MR. VOGEL:  Certainly, Your Honor.  Well, you know, we

3    would want some strong protections in place, like I mentioned,

4    like we briefed in our briefings.  And some of those would

5    include -- I mean, we would certainly need time to prepare our

6    plaintiffs.  But even before we get to that situation, there

7    has been no written discovery in this case, Your Honor.

8          THE COURT:  Yeah.  That's came to mind.

9          MR. VOGEL:  And so it makes it very difficult to do --

10         THE COURT:  I realize that we're at the absolute

11   beginning, and that's not good.

12         MR. VOGEL:  Exactly, Your Honor.  It makes it very

13   difficult to conduct a deposition without any written discovery

14   having been done at all.  And so we would, I think, want to see

15   in such a situation like that depositions only coming after

16   written discovery is done or nearly so with respect to a

17   particular plaintiff.  We would argue for and we have argued

18   for written questions --

19         THE COURT:  Okay.

20         MR. VOGEL:  -- so that if there are any problems or

21   objections to the questions, that we can bring them to the

22   Court beforehand so as to minimize the burden on the clients.

23   These are very traumatic events that we're talking about.

24         And, again, I also -- you know, Judge, it seems to us

25   that, with respect to the defamation case, that perhaps

1  additional discovery there might help to change or to narrow

2  the perceived need for testimony from our clients and the

3  topics over which our clients might testify in that kind of --

4  in that case.

5        THE COURT:  I don't quite follow you.  Do you mean

6  additional --

7        MR. VOGEL:  Well, Your Honor, our clients, of course,

8  are nonparties to that case.

9        THE COURT:  Sure.

10        MR. VOGEL:  And additional discovery between the

11  parties in that case might change or narrow the ground that the

12  parties feel that they need to cover with our clients.  So, for

13  example, I believe that NBC was just discussing that and in its

14  papers it has indicated that it has not received a lot of the

15  documents and the filings and other papers from these

16  proceedings.

17        THE COURT:  But as I understand, though, the period of

18  discovery is closing in that case.  Not closing immediately,

19  but it's --

20        MS. COUNTS:  No, Your Honor.  We just have started with

21  depositions.  We have gotten through our written discovery.

22  And I'm so glad -- I don't mean to interrupt, but I'm glad you

23  brought up we also need to have access to see the pleadings.

24  We need access to the federal defendants, not just Dr. Amin.

25        The only other thing I'd say, Judge, is I do wonder,

1    sitting here thinking about it, if that would be unfair to

2    NBCU, since he is a main party and a plaintiff in our case, if

3    we would be limited to only a couple of hours of testimony

4    instead of the full eight hours that you would typically get.

5         THE COURT:  I understand.  And let's try to get some

6    preliminary feel for where we are, common ground.

7         MR. VOGEL:  So, Your Honor, I think -- and on top of

8    this, of course, there was, of course, some voices opposed to

9    lifting the discovery stay in the filings before you, for a

10   number of different reasons --

11        THE COURT:  I think someone mentioned that no one had

12   asked.  Where no one asked the Court asked, because I wanted

13   you all to be aware that I had a concern about it so you would

14   be prepared to discuss it today.

15        MR. VOGEL:  Some of the things that some of the parties

16   cited were the dispositive motions, which raise a number of

17   issues, including qualified immunity, as well as apparently

18   there is still an ongoing and active investigation.  You know,

19   I don't know anything about the investigation --

20        THE COURT:  Who is aware of what that is?  I mean, I

21   understand there was a Congressional -- there was two

22   investigations.  There was a Congressional investigation, which

23   I think has been concluded, and there was one of a criminal

24   kind.  Is that the Department of Justice department or who?  Do

25   you know?

1        MR. VOGEL:  Your Honor, I don't know anything about the

2   currently ongoing investigation.

3        THE COURT:  Okay.  We're counting back now almost three

4   years this year.  Without some strong showing of some actual

5   investigation that is actually impeded by this in some fashion,

6   the Court is not going to let this ride much longer.  I just

7   don't see that the Court has to provide an indeterminate

8   timeline for an investigation that may go somewhere and may not

9   go anywhere.  It may be shortly.  It may be a long time.  This

10  case is almost three years old.

11       MR. VOGEL:  Yes, Your Honor.  I'm merely saying that I

12  think that it may be beneficial for -- to -- if the Court is

13  considering moving forward with discovery, to schedule it in

14  such a way that the depositions of our clients occur after some

15  time, after written discovery, after potentially maybe some of

16  these dispositive issues are resolved, the qualified immunity

17  issue is resolved and after discovery in the defamation case

18  has continued so that we can, when it comes to depositions

19  for -- the nonparty depositions, not the depositions of -- not

20  any depositions of clients in this case, but the nonparty

21  depositions in the defamation case, that we can ensure that

22  those are as narrow and as limited as possible.

23       THE COURT:  But, also, we have a defendant in this case

24  who is a party to that -- to the defamation case; right?

25       MR. VOGEL:  That's correct, Your Honor.

1      THE COURT:  And his deposition is wanted.  Mr. Amin, if

2   I'm correct in the name.

3      All right.  Let's see.  Let me hear from the

4   defendant -- or from the defense, rather.  Your response to the

5   conversation and presentations that have been made.

6      MS. CAMBRE:  Good morning, Your Honor.  Brittany Cambre

7   on behalf of Dr. Amin.

8      If the Court would like, I'll start with plaintiffs'

9   sort of position on discovery in this case.  And I think it was

10  telling that counsel said that if there is -- a stay in this

11  case does not prohibit discovery in the Southern District of

12  Georgia case.  If that's true, then there's no basis for a

13  contempt action or to hold Dr. Amin in contempt because he is

14  not violating a discovery stay in this case.  He is pursuing

15  legitimately court-ordered discovery -- or not court ordered,

16  but the Court denied a stay of discovery in that case.  And as

17  the plaintiff it is his burden to prove his case and diligently

18  pursue discovery in another case.  So I don't think there's any

19  basis for holding Dr. Amin in contempt.

20     There's no evidence that the defamation action was

21  conceived or designed as a mechanism to get around the

22  discovery stay in this order -- or in this case.  It's simply

23  the reality of parallel and overlapping proceedings.  There

24  will be duplicative discovery.  And I understand plaintiffs'

25  concerns about, you know, two bites at the apple or a head

1    start, but although the subject matter of the two cases may

2    overlap, they are distinct in the sense that they're different

3    parties and they're different causes of action.

4          So while some of the discovery may overlap, some of the

5    discovery may be entirely distinct.  What did the plaintiffs

6    tell NBCUniversal versus what treatment did Dr. Amin give them?

7    Or what other statements did they make that would undermine the

8    truth of the statements that they made to NBCUniversal and

9    whether NBC knew that.  Those would all be issues that would be

10   teased out in the southern district case that would not

11   necessarily --

12         THE COURT:  So Dr. Amin is not taking a position that

13   he is not subject to a deposition by NBC.

14         MS. CAMBRE:  His deposition is scheduled, Your Honor.

15   I'm sorry.  I have counsel for Dr. Amin, Stacey Evans, who is

16   taking lead in the defamation case, so she may jump in if you

17   have specific questions about proceedings --

18         THE COURT:  What I'm trying to get a feel for, is there

19   any common ground that the Court -- I see that there are two

20   separate cases.  I agree with you.  Each stand on their base,

21   their own foundation.  Each court, in my opinion, is capable of

22   resolving issues related to the discovery process.  But there

23   are some practical matters here where there is some overlap in

24   terms of the parties, and perhaps something can be done that

25   benefits everyone to get these matters concluded.  The case in

1    the southern district is moving along, as I see it, and the

2    question is of whether this case stays stuck where it is or do

3    we see some time when it can be about to move.

4           So I guess Dr. Amin -- I guess you scheduled a

5    deposition, so there's no issue that he's raised with regard to

6    discovery there.

7           MS. CAMBRE:  Yes, Your Honor.  And just to address a

8    point raised by NBC, Dr. Amin has never refused to produce

9    documents in that case because of an investigation.  They

10   produced Congressional investigation records and medical board

11   investigation records.  The only documents that were not

12   produced was documents that were given to the DOJ because the

13   DOJ specifically asked Dr. Amin not to produce those in the

14   southern district case.  But that I don't think -- lifting

15   discovery in this case wouldn't address that concern --

16          THE COURT:  Right.

17          MS. CAMBRE:  -- in the southern district case.

18          THE COURT:  I think the Court in the southern district

19   can address that situation.

20          MS. CAMBRE:  And it seems as if NBC is -- you know,

21   they haven't availed themselves of any discovery procedures in

22   the southern district case.  They haven't moved to compel

23   discovery down there.  And I don't believe that lifting the

24   stay of discovery in this case would address any of NBC's

25   concerns.

1          As for the duplicative discovery issue or the practical

2    realities of it, I think it's at this point somewhat premature

3    to try and ordain what a solution might be, because the scope

4    of this case is completely up in the air pending motions to

5    dismiss.  Dr. Amin and multiple other defendants have filed

6    dispositive motions to dismiss, which may be granted in whole

7    or in part, eliminating the need for discovery at all or

8    altering what the scope of discoverable information might be.

9    And I think at this point it's too early to determine what the

10   overlap between this case and the Southern District of Georgia

11   case might be.

12          THE COURT:  Well, I think -- you know, I think you're

13   right, that the dispositive motions might dispose of all or

14   part of the case, but there are several allegations to this

15   case about the same thing.

16          MS. CAMBRE:  You're right, Your Honor.

17          THE COURT:  In the defamation case, I don't think

18   there's going to be a big change of what the alleged subject

19   facts of the case --

20          MS. CAMBRE:  You're right, Your Honor.  And I think

21   what -- if I may propose what would be Dr. Amin's position is

22   that we wait and see if discovery is needed in this case and at

23   that time determine what prejudice the plaintiffs may face from

24   a second deposition, if there's ways to limit the scope of

25   questioning to things that were not addressed in the Southern

1    District of Georgia case or if there's a way to stipulate that

2    we can use the prior deposition without having to redepose the

3    plaintiffs here.  But this hypothetical prejudice that

4    plaintiffs talk about may never come to fruition, so I don't

5    know that it makes sense from Dr. Amin's perspective to lift

6    the stay of discovery in this case given it may be a moot point

7    pending the Court's ruling on a motion to dismiss.

8             THE COURT:  What other grounds do you think the Court

9    should continue the stay on since one investigation is gone,

10   the other one there's a lack of specificity as to what it is

11   and what its longevity might be?  Is yours based primarily on

12   the pending dispositive motions?

13            MS. CAMBRE:  Dr. Amin's position is that discovery

14   should remain stayed not because of an investigation that may

15   be interfered with, but for the simple fact that there is a

16   dispositive motion pending, and per Eleventh Circuit precedent

17   district courts are encouraged to extend or stay discovery if a

18   motion may eliminate the need for such discovery in the first

19   instance.

20            THE COURT:  All right.  Thank you.  Any other comments

21   from the defense?

22            MS. EVANS:  Your Honor, if I might with the Court's

23   indulgence.  I'm Stacey Evans.  I'm not counsel of record in

24   this case.  I am lead counsel in the defamation case in the

25   Southern District of Georgia.  And I would appreciate if the

1    Court would at some point like to talk about the merits of the

2    contempt motion, which is primarily directed toward our

3    discovery strategy in our defamation case.  And I'm prepared to

4    address those --

5         THE COURT:  I'm going to get to that.  I was trying to

6    find out where we were and deal with this situation first.

7    And, of course, the plaintiffs have filed a show cause and, of

8    course, they have the burden to proceed with that.

9         MS. EVANS:  Thank you, Your Honor.

10        THE COURT:  I was trying to get your viewpoints first

11   and try to get a handle on where things were.

12        MS. EVANS:  Absolutely.  And to the point of working

13   through things, I just wanted to bring to Your Honor's

14   attention this defamation case has been pending for a while.

15   Dr. Amin has defeated a dispositive motion.  He is in a place

16   where he is able to move forward with discovery and prove his

17   case.  And there has been a lot of talk about potential

18   prejudice to the plaintiffs, but we also need to keep in mind

19   the potential prejudice to Dr. Amin.  And we've heard about the

20   potential prejudice to NBCU in their defense.  Dr. Amin is a

21   plaintiff in a defamation case.  He has the burden of proof.

22   He survived the dispositive motion.  The plaintiffs here have

23   not.

24        And while they are plaintiffs here, to us they are

25   Ms. Navarro, Ms. Walker, Ms. Oldaker.  They are witnesses.

1    There are other detainees who have relevant information to

2    falsity that we also are seeking to obtain, other detainees who

3    alleged allegations against Dr. Amin, not in court but out to

4    the public in different ways.  Why should those two sets of

5    detainees be treated differently?  Those detainees that are not

6    plaintiffs in this case are not going to have the ability to

7    come in and try to stop discovery.

8            Dr. Amin is prejudiced by having to wait.  I mean,

9    let's play this out.  Let's say the plaintiffs lose their

10   motions to dismiss and Dr. Amin is successful.  Does he have to

11   wait through an appeal to potentially get the discovery that

12   he's entitled to in the southern district?  His case is moving,

13   and I'm sorry that it's moving faster, but it is.

14           And we have always known that we would need this

15   detainee discovery.  NBC knew it too at our very first

16   scheduling conference in the southern district.  And over a

17   year ago I reached out to plaintiffs' counsel in this case

18   because I knew they represented the detainees and started

19   trying to work with them on how could we get these depositions.

20   Not once did they mention prejudice or a potential violation of

21   a discovery stay in this case.  Nineteen e-mails, multiple

22   phone calls over a whole year.  All the issues that Your Honor

23   is trying to reach today about how could we work something out,

24   nothing.  No statements from them whatsoever that this was a

25   problem.

1          I have always bent over backwards to say how can we

2    make sure that we do this in the most efficient way possible.

3    My door has always been open.  And we're finally getting to the

4    heart of this matter, not because counsel, who know each other

5    and could easily talk to each other, not because we started

6    talking to each other about the issues, but because we are

7    faced with a contempt motion.

8          So we really appreciate Your Honor's time today because

9    it is bringing us to the table, but I just submit, Your Honor,

10   it didn't have to get here.  And we have tried very hard to

11   work with these plaintiffs' counsel to no avail.  And, again,

12   Dr. Amin, there is prejudice to him, and I just don't want that

13   to get lost in everything that we're talking about today.

14         Thank you, Your Honor.

15         THE COURT:  All right.  Thank you.  Anyone that has

16   anything to add?  I don't want to prevent anyone from speaking,

17   but I think the parties are pretty much in line on either side.

18         MR. VOGEL:  I would like to respond to that, if I

19   could, just briefly, Your Honor.

20         THE COURT:  You may.

21         MR. VOGEL:  Thank you.  I would note that we have been

22   in communication with Ms. Evans over the course of several

23   months, but it is simply not true that we never raised the

24   questions of prejudice and relevance.  We did, and it's

25   attached.  Document 277-3, Exhibit B, to our motion is an

1    e-mail from my cocounsel, Mr. Dreyer, wherein we both highlight

2    what we think is the limited relevance of our clients'

3    testimony, as well as a proposal to start looking at other ways

4    that we might do this.  At that time it was written

5    declarations.

6             THE COURT:  But that's one of the questions that came

7    to my mind.  If there's very little or no relevance -- I think

8    someone made a motion to quash in the southern district in a

9    case.  The first thing that came to my mind is if there's some

10   improper reason to do a deposition or it was something else

11   that made it procedurally inappropriate, then that could go

12   directly to the Court having jurisdiction of the case.  Isn't

13   that right?

14            MR. VOGEL:  Well, Your Honor, under rule 45 a motion to

15   quash is to be filed in the district --

16            THE COURT:  Yeah.  Looking at it from the eyes of that

17   case.

18            MR. VOGEL:  And the plaintiffs who have been subpoenaed

19   for depositions, our clients have, the three of them have filed

20   motions to quash in the various districts in which they are.

21            THE COURT:  Are those matters pending or do you know

22   what the result of them are?

23            MR. VOGEL:  They are still pending, Your Honor.  In two

24   of them there have been -- there are stays in place.  They're

25   different dates, but it's roughly until the end of May.  The

1   third there has been a stay again until the end of May proposed

2   by the parties, by counsel for the plaintiffs, as well as

3   counsel for Dr. Amin and counsel for NBC, but the Court has not

4   acted on that yet.

5           THE COURT:  Okay.

6           MR. VOGEL:  And I think in the cases where there are

7   stays, my understanding is the judges are interested in updates

8   as to what Your Honor will be doing with this case going

9   forward.  So that's part of what is in play with those motions.

10          THE COURT:  Okay.  All right.  Yes, sir.  State your

11  name and which party, please.

12          MR. ROBINS:  Good morning, Your Honor.  Jeffrey Robins

13  for the official capacity of the federal defendants.  Your

14  Honor, I wanted to briefly answer one of your questions as to

15  who has information as to the status of the investigations, and

16  the official capacity federal defendants do.  I'm limited in

17  what I can convey today, Your Honor, but I do believe --

18          THE COURT:  I understand you can't tell me everything,

19  but you can give me some broad ideas.

20          MR. ROBINS:  I mean, yes, Your Honor.  I understand

21  that there is an ongoing criminal investigation.  There are

22  internal investigations ongoing as well.  And I believe that we

23  can provide Your Honor information.  Determining how we can

24  share that information with the Court is part of it, but that

25  can address the nature of those investigations and the timing

 1    of them.  I believe we can provide Your Honor that information.

 2            THE COURT:  That's really the point I'm getting at.

 3    The Court is not interested in interfering with any

 4    investigation, but you're saying to me here in court that there

 5    are actual open investigations, both internally and criminally.

 6    Is that right?

 7            MR. ROBINS:  Yes.

 8            THE COURT:  Okay.  And do you have any idea of how long

 9    those things may still be going on before they come to a

10    conclusion one way or the other?

11            MR. ROBINS:  I do not, Your Honor.  But what we can do

12    is we can go back and determine what additional information we

13    can provide the Court.

14            THE COURT:  Yeah.  That's something that benefits both

15    the parties and the government when there's an investigation

16    ongoing because of the implications about people being a

17    possible subject of something, and that puts them in a

18    different situation than just being a party to a civil action.

19    And, of course, those in the civil action need to be able to

20    proceed too.

21            So the Court is interested in knowing how long -- a

22    good idea of how long you may be expecting that to be.  Do you

23    see it as something that would affect either of these cases,

24    primarily this case, the Oldaker case?

25            MR. ROBINS:  I mean, yes, Your Honor, we still do.  In

 1   our papers we also advocate for the continued stay in this

 2   case, Your Honor, based on the pending dispositive motions and

 3   point out that in terms of if there is a lowest common

 4   denominator in the issues, that once we have the Court's

 5   determination on those motions, the parties involved and the

 6   complexity of these issues could take on a different picture as

 7   well.

 8         The investigations may be further along as well.  But I

 9   will go back, and we will assess and provide the Court with the

10   additional information we can about the investigations, but the

11   government maintains that the stay should continue both for

12   that reason and because of the dispositive motions.

13         THE COURT:  All right.  I appreciate you saying that

14   you will provide information to the Court.  I did not know who

15   all was here, but I'm glad you're here and you're able to speak

16   to that.

17         MR. ROBINS:  Yes, Your Honor.  Thank you.

18         THE COURT:  All right.  Thank you.  All right.  Yes,

19   ma'am.

20         MS. COUNTS:  Your Honor, just two things.  I do want to

21   make sure that our request that we have access to the docket be

22   considered as well.  I mean, I think that's been granted due to

23   the motion to intervene.

24         THE COURT:  The motion to intervene was to be able to

25   speak and bring your issues before the Court about this matter.

1      MS. COUNTS:  Right.  So that's one of our issues, Your

2   Honor, that I did mention at the very first, but it is in our

3   papers that we do want to have access to the docket.  I think

4   there has not been objections either.

5      THE COURT:  I hadn't thought about that.  Is there a

6   response from plaintiffs?  What NBC is asking for is access to

7   the docket for their purposes.  They're not parties to the case

8   outside of this particular proceeding.

9      MR. VOGEL:  Your Honor, in general we don't have any

10   objection to that.  There is sensitive material that is under

11   seal, and so we would seek some sort of arrangement to maintain

12   that confidentiality.  I don't think that that would be a

13   problem for NBC.  They've indicated in the past that they would

14   be amenable to that.  But as long as that is maintained, we

15   have no objections.

16      THE COURT:  Either defendant?

17      MS. CAMBRE:  Your Honor, I'm not entirely sure what NBC

18   is requesting, but I think the issue in this case is that the

19   docket is public, but because it involves detainees or

20   immigration issues, it is only available for live viewing at

21   the courthouse.  There is not electronic access to the docket

22   that's widely available.  I believe that would address NBC's

23   concern, but I don't want to presume to know what the issue is,

24   but I believe that's what the issue is.

25      MS. COUNTS:  That's my understanding as well, Your

1    Honor.  I believe that's it.

2           And I would also just state that just if the Court is

3    interested in ongoing investigations, you could imagine,

4    because of the similarity of the issues, that we also really

5    need some insight into these other investigations as well.

6           THE COURT:  I think she's having a little trouble

7    hearing you.

8           MS. COUNTS:  I just said we need insight into those

9    other ongoing investigations for the issues in our libel case.

10          THE COURT:  All right.  Anyone else that I didn't hear

11   from?

12          All right.  On the matter of access, since there's no

13   objection, NBC will be allowed access to the docket in this

14   case.  But respecting matters that are under seal, it will

15   require a specific request and permission by the Court before

16   those matters are made available.  It helps make sure that we

17   keep up with those things that are sensitive and not easy to

18   access.  All right?  And I'll issue a written order to that

19   effect so it will be clear what the Court is saying.

20          MS. COUNTS:  Thank you, Your Honor.

21          THE COURT:  Now, since there was a motion to show cause

22   brought by the plaintiffs, the Court set it for hearing today,

23   and now I'll give the plaintiffs an opportunity to present any

24   evidence it can or wishes in that regard.

25          MR. VOGEL:  Thank you, Your Honor.  We don't have any

1    additional evidence to present, and I'll only make a few

2    comments.  Judge, we are here today because of the tremendously

3    broad and aggressive course of discovery Defendant Amin is

4    pursuing in his defamation lawsuit.  He is seeking to take live

5    depositions of the plaintiffs in this case, our clients, and

6    has subpoenaed or is seeking to subpoena over 20 legal services

7    providers, medical experts and others who have worked with our

8    clients, including some of my cocounsel in this case.

9          Now, if left unchecked Defendant Amin's actions would

10   lead to him obtaining discovery over the very events that are

11   at the heart of this case, even though Your Honor has stayed

12   discovery in this case.  Not only would it allow him a head

13   start -- we've discussed this -- but it would also give him an

14   opportunity to depose the plaintiffs twice, and we believe

15   that's unfair and burdensome and prejudicial, as we laid out.

16         Judge, we do not believe that Amin should be allowed

17   to circumvent the discovery stay.  And I would clarify, I think

18   I heard counsel -- I'm sorry if I wasn't clear, but we do take

19   issue with the suggestion that the stay in this case does not

20   prohibit discovery in their case.  We believe that it does

21   insofar as that discovery would go to the very matters that are

22   at the heart of discovery in this case.  And so we maintain

23   that Defendant Amin should not be allowed to take the

24   depositions of these plaintiffs, of our clients --

25         THE COURT:  Help me out, though.  What's the heart of

1    the matter in the defamation case, as you understand it, and

2    the heart of the matter here?  It's about the alleged

3    procedures that took place and statements about those,

4    allegations about those.

5         MR. VOGEL:  Yes.  That's correct, Judge, of course.

6    But following the dispositive motions in that case, there are

7    27 statements, all right, that are remaining.  Twenty-three of

8    those have to do with hysterectomies.  None of our clients have

9    ever claimed to have had a hysterectomy performed by Dr. Amin.

10   And of the remaining -- the remaining statements, none of our

11   clients were identified as the sources of those statements or

12   as having spoken to the sources of those statements.

13        And this is what I mean, Judge, when I said earlier

14   that if discovery in the defamation case were to proceed, as

15   the facts in that case get more developed, it may become clear

16   who were the sources for those statements.  And at this point,

17   because of the prejudice to our clients, because of the stay in

18   this case, it is unfair and burdensome to allow Defendant Amin

19   to just -- to burst in simply because our clients happened to

20   be treated by Defendant Amin.

21        Over at least a hundred people were treated by

22   Defendant Amin and were named in the rule 26 disclosures and

23   the discovery responses in the defamation case.  And Defendant

24   Amin is seeking to depose the clients -- the plaintiffs in this

25   case out of all of those people.  It's unclear -- and Defendant

1    Amin has not -- in any of these filings has nowhere said why

2    these particular plaintiffs need to be deposed right now.

3    There has just been mention of the group of the plaintiffs in

4    general, and it's not clear what that group of plaintiffs --

5    what relevance their particular testimony has in that case.  It

6    is on those statements.  It is about those statements or about

7    what NBC knew when it published those statements.

8            And so, Your Honor, we think at the very least that the

9    deposition of our clients is premature and that, as I said, it

10   is -- there is little, if any, relevance.  We maintain that

11   live depositions, in any event, are unnecessary.  Defendant

12   Amin and NBC have already pages and pages and pages of very

13   detailed sworn declarations from our clients that in

14   extraordinary detail explain what happened to them.

15           And so, again, in light of all of that, the need for

16   extensive, burdensome and traumatic live depositions, to us

17   it's unnecessary.  And so, Judge --

18           THE COURT:  I assume what they would be asked about,

19   since they're sworn declarations, about what they state

20   happened to them.  I guess on the defamation side the question

21   would be whether they made statements to anybody about what

22   happened to them.  That would seem to me to be a little bit

23   different than what has been described as the heart of the case

24   that's here.

25           MR. VOGEL:  Yes, Judge.

```
1            THE COURT:  Do you follow?

2            MR. VOGEL:  Right.  And that is something that --

3    again, like this is precisely what I'm talking about, right,

4    Judge.  I don't know that a live deposition is the way -- if

5    we're talking about a limited set of questions like that, then

6    we can, I think, arrange some sort of limited procedure by

7    which we can address those questions.  But just having a

8    full-fledged, seven-hour live deposition in which Dr. Amin is

9    able to delve into all sorts of matters that are at the heart

10   of discovery in this case, while there is a discovery stay

11   pending in this case, we feel is excessive.

12           Again, like I said, if there are -- and this is part of

13   the suggestion to wait and see how things develop in that case,

14   because if there are more narrowed questions or issues, then it

15   may be easier to develop a procedure that both maintains the

16   fairness and integrity of discovery in this case and is able to

17   address the concern that both Defendant Amin and NBC have in

18   that case.

19           THE COURT:  Well, of course, NBC's inquiry is not --

20   maybe not quite so narrow if they're trying to prove the

21   truthfulness of what has been alleged as a basis for their

22   reporting.

23           MR. VOGEL:  Right.  And that presumably would go -- in

24   large part would go to the substance of, for example, the

25   declarations describing what happened to our clients.
```

1          THE COURT:  All right.

2          MR. VOGEL:  Thank you, Your Honor.

3          THE COURT:  All right.

4          MS. CAMBRE:  Your Honor, I will let Ms. Evans speak to

5    the specifics of the discovery issues in the southern district

6    case, but I want to address a couple of issues.  One is that

7    we're here on plaintiffs' motion for contempt.  They have

8    alleged that Dr. Amin and his counsel have violated the

9    discovery order in this stay and should be held in contempt.

10   There is absolutely no evidence that -- or even argument that

11   the discovery stay in this case barred Dr. Amin from pursuing

12   his legitimate discovery obligation in his defamation case.  He

13   is a plaintiff.  He has the burden of proof in that case.

14          The parties in the southern district sought a stay of

15   discovery, and the Court denied it.  So to hold him in contempt

16   for complying with his obligations as a plaintiff in another

17   proceeding is without basis.  There is no evidence that

18   Dr. Amin or his counsel intended to circumvent discovery in

19   this case by pursuing discovery in the southern district case.

20          What plaintiffs appear to be asking for is some sort of

21   preemptive relief from having to submit to duplicative and

22   onerous discovery.  That's correct.  Discovery will be

23   duplicative and it will be onerous, but the flip side of that

24   coin is that Dr. Amin is subject to the same duplicative and

25   invasive interrogations.  He has to -- because of the

1    plaintiffs' allegations and statements to the media and the

2    reporting, he has been subjected to multiple federal

3    investigations, Congressional, criminal, medical board.  He has

4    suffered reputational damage because of the allegations that

5    the plaintiffs have made and that were subsequently reported on

6    by the media.

7           To say that only the plaintiffs should be protected

8    from prejudicial discovery ignores the reality that there is

9    multiple parties to this lawsuit.  And there's no reason why

10   plaintiffs should be protected at Dr. Amin's expense,

11   particularly given because we don't know the true extent of

12   the overlap between the cases.

13          As Your Honor was alluding to earlier, what actually

14   happened, the treatment that was provided in this case, that is

15   the heart of this case; what treatment was provided and was it

16   medically appropriate.  What plaintiffs told other people about

17   Dr. Amin's treatment procedures and how that got reported in

18   the media, that is the heart of the case, in addition to what

19   actually happened.  That may not be relevant here.  What

20   plaintiffs told other people Dr. Amin did, whether it did or

21   did not happen, may not be relevant to whether he performed

22   unconsented-to gynecological procedures.  If plaintiffs in this

23   case told NBC or other media outlets that Dr. Amin performed

24   unwarranted hysterectomies or unconsented-to hysterectomies,

25   that may not be relevant to this case, but it certainly would

1      be relevant to the defamation case.

2            I think it's too early at this point to determine what

3      the prejudice to plaintiffs may be.  And if there is prejudice

4      at some point down the road when the issues in this case, the

5      parties in this case are more clear and the discovery in the

6      other case has been taken, at that time the parties may be able

7      to mutually agree on what the appropriate guard rails on

8      discovery is and to minimize the potential prejudice.  But I

9      think at this point it's too early to preordain what that

10     prejudice may be and craft a prospective resolution to

11     something that just hasn't materialized yet.

12            THE COURT:  All right.  Thank you.

13            MS. EVANS:  Thank you, Your Honor.  I'm going to move

14     over here if that's okay only so I can see my notes a little

15     better.  My eyes are not what they used to be.  Thank you again

16     for all the time, Your Honor.  We really do appreciate it.

17            Counsel for plaintiffs started out by saying there's

18     really no new evidence to talk about on this contempt motion.

19     I would argue there's no evidence at all.  And I think counsel

20     has laid out very well that we're not seeking discovery in the

21     southern district case to get around some order here.  We're

22     simply doing what we need to do in that case to protect

23     Dr. Amin's interest.  There's no evidence that we have acted

24     inappropriately.  And the fact that they're even willing to

25     talk about guard rails or declarations or anything admits the

1    relevance that their clients' testimony have in our defamation

2    case.

3            But I want to talk a little bit more specifically about

4    why it's so relevant.  NBCU has talked about how they need this

5    testimony, and I believe that they do, but Dr. Amin is a

6    plaintiff in the defamation case.  That is a very high bar.

7    The elements are not only that NBCUniversal knew or acted with

8    reckless disregard to the truth when they blasted over

9    international news that my client performed mass hysterectomies

10   and was on a sterilization campaign, was a uterus collector.

11   Let's keep in mind, Your Honor, so far there has been evidence

12   of two hysterectomies performed by Dr. Amin over several years.

13   I think that's important to keep in mind.

14           So we do have the burden of showing actual malice,

15   meaning reckless disregard for truth or knowledge of falsity,

16   but we also have a very high burden of the element to prove

17   falsity.  We have to prove that it didn't happen, that he

18   didn't perform mass hysterectomies, that he wasn't a uterus

19   collector, that he didn't perform unnecessary procedures, that

20   he wasn't overly harsh, that he didn't perform procedures

21   without consent, that he didn't bruise these plaintiffs, that

22   he didn't act inappropriately in providing his medical

23   treatment.  There are statements that go to all those issues.

24           The plaintiffs in this case -- which, again, to us

25   are Ms. Walker, Ms. Navarro and so on -- they are plaintiffs

1    here, but they are witnesses.  They have made either specific

2    allegations about those statements that I just shared with Your

3    Honor or they said they talked to people who told them these

4    things happened.  We have to prove these things didn't happen,

5    and so we have to be able to cross-examine the plaintiffs.

6    Declarations are simply not enough.

7         If we're not allowed to depose the plaintiffs in this

8    case, Your Honor, here is what's going to happen.  Drum roll

9    while I find what's going to happen.  NBCUniversal will take

10   the declarations that those plaintiffs provided in this case

11   explaining what they say happened to them, what they say

12   happened to them long after it actually happened to them, those

13   declarations, and they'll attach them to a motion for summary

14   judgment, and they'll say truth.  And if I have never deposed

15   those clients, how will I rebut that?  How will I probe and

16   find out whether there are holes in those stories?  Which we've

17   been able to do, Your Honor.

18        One of the plaintiffs in this case, Ms. Navarro, gave a

19   statement to Congress and said she was brought in in shackles,

20   which is true because that's how detainees are taken to medical

21   treatments.  That's how they're transported.  That's not

22   something that Dr. Amin said.  Said that she was brought into

23   the hospital and she fell and she cried and she screamed and

24   she was not given paperwork and she was not provided the

25   opportunity to indicate her consent for the procedure that she

1    was having that day.

2          But guess what, Your Honor?  Every now and then you get

3    lucky.  We found another patient who was there, not a detainee

4    patient, but a private patient of Dr. Amin's who was there for

5    a procedure as well.  She remembers a detainee coming in.  They

6    didn't fall, according to her.  They didn't cry.  They didn't

7    scream.  And she saw this patient sign the same kind of consent

8    forms that she did.

9          We were able to go through medical records and billing

10   records and hospital records and confirm that detainee, so

11   we're able to rebut her story.  And we'll put that in front of

12   our judge in the Southern District of Georgia and eventually in

13   front of a jury, and somebody will decide what's the truth.

14         But we won't be so lucky with every detainee patient

15   who claims after the fact that Dr. Amin acted inappropriately.

16   I have to be able to cross-examine those plaintiffs.  Otherwise

17   what kind of lawyer would I be?  We get to trial and somebody

18   puts someone up on the stand and I have no information to

19   cross-examine them with.  Declarations are just simply not

20   enough.

21         On the issue of why these detainees, it's a puzzle,

22   Your Honor, trying to figure out where the information came

23   from and who told who what.  We're piecing it together.  We

24   know that these allegations were made.  We know other detainees

25   who made allegations, not in court but in other venues, and we

1   are seeking to depose them as well, as I mentioned.

2        Now, we heard we're being aggressive.  I've been called

3   a lot worse.  I will never apologize for being aggressive when

4   my client's reputation was destroyed.  A man who came to this

5   country, was for many years the only OB/GYN in a very

6   underserved community, an immigrant himself who is living the

7   American dream.  At every single turn when this man is able to

8   cross-examine and evidence is actually examined, he shines.

9   The Georgia Composite Medical Board investigation, over,

10  closed.  No action taken against Dr. Amin.  Congressional

11  investigation, over.  Evidence of two hysterectomies by

12  Dr. Amin.  Maybe six total for detainees at ICDC total for

13  unknown doctors.  Does that sound like a uterus collector?  We

14  have to be able to question the plaintiffs.

15       On the issue of being aggressive, yes, I did serve

16  subpoenas on attorneys, for good reason.  Including -- they

17  object here, Your Honor, to several subpoenas that I served to

18  attorneys who admitted that they talked to NBCUniversal,

19  admitted.  Why in the world would I not be able to subpoena

20  them?  Just because they're attorneys?  We don't live in an

21  ivory tower, Your Honor.  We're not immune.

22       And these attorneys were not acting as attorneys when

23  they were talking to NBCUniversal and they were making claims

24  against my clients.  We're entitled to discovery from them.

25  We're entitled to discovery from the detainees.  And in many

1   instances, Your Honor, we're trying to figure out who were the

2   clients of these attorneys that were making allegations that

3   NBCUniversal just accepted without asking who, without looking

4   at a single medical record.

5          We have to probe -- this goes deep, Your Honor, and

6   we are just scratching the surface.  And so far at every turn

7   Dr. Amin is the one who is the victim, and he's the one that is

8   telling the truth.

9          I don't think that I need to belabor the point on the

10  contempt because there has been zero evidence that I've done

11  anything, that Dr. Amin has done anything except pursue his

12  defamation case.  But we repeatedly hear from plaintiffs'

13  counsel about -- in the papers about justice -- Judge Anand in

14  the Northern District of Georgia, who heard the first motion to

15  quash.  He said there's no question that we're entitled to a

16  deposition of the detainee in that action, Ms. Ndonga, and

17  that's why he refused to quash the subpoena.  He stated --

18  because he wanted to know what Your Honor thought, and we do

19  too.  And we really appreciate the opportunity to be here and

20  find out how we can move this forward.

21         I am willing to work with the plaintiffs' counsel.

22  I've said it once, I'll say it again.  I have never ever tried

23  to say to them that I want a seven-hour deposition with their

24  clients.  I wouldn't do that.  They are third-party witnesses.

25  I will be as efficient as I know how to be.  I've even said

1    we'll schedule multiple on one day.  That way counsel doesn't

2    have to travel and that way you know that I won't be able to

3    take seven hours with these individual plaintiffs.  I know that

4    in my case they're third parties.  I'm very aware of my

5    obligation as counsel to make it as little invasive as

6    possible.  But I'm entitled to the testimony.  Dr. Amin needs

7    it.

8              They have said this will be traumatic for these

9    detainees.  Your Honor, that's an issue in our case.  Whether

10   it was or wasn't, whether they were hurt, whether they were

11   mistreated, that's not a finding.  So I'm sorry that they're

12   going to have to share their story, and I'm sorry that they're

13   going to be subject to cross-examination, but that's how

14   litigation works.

15             I'm going to leave you with this, because I think it's

16   always good to go back to scripture.  Proverbs 18:17.  He that

17   is first in his own cause seemeth just, but his neighbor cometh

18   and searcheth him.  Translation:  In a lawsuit the first to

19   speak seems right, especially when they speak with a megaphone

20   across international news.  So they seem right until someone

21   comes forward to cross-examine.  That's what our defamation

22   case is about.  That's what we're entitled to.

23             And we really appreciate Your Honor bringing clarity to

24   these issues and allowing Dr. Amin to move forward to avenge

25   his reputation.  Thank you, Your Honor.

1          THE COURT:  All right.  Thank you.

2          MS. COUNTS:  Your Honor, I applaud Ms. Evans', you

3    know, passion.  It equally applies to NBCU.  But what we're

4    missing here is our right to get discovery as to the falsity

5    and the evidence from the criminal investigations and the

6    internal investigations.  It's like we are being completely

7    hamstrung.  They are going ahead and getting discovery that's

8    favorable to them, asking for anything that was given to the

9    DOJ by sources, but then saying we can't get that information

10   from them because of a request.  I do think that there is some

11   gamesmanship in that regard.

12          And, Your Honor, I just would like to kind of point out

13   that even in some of the stuff that's sealed, since we're all

14   here -- you know, we've been trying to get -- and I don't know

15   what the status is, but like a protective order so that we

16   could share in getting some of this information that's already

17   been exchanged.  And to the extent that there are things under

18   seal that would relate to the issues -- and they're in our

19   brief from page 10 on where we talk about what we need from the

20   various defendants and how the stay shouldn't preclude anything

21   because they've already given testimony to the Congressional

22   investigation.  They've given, you know, 500,000 or so

23   documents, and we have none of that.  Dr. Amin does.

24          So, Your Honor, we would ask for your help, if at all,

25   to make sure that we don't duplicate unnecessarily and that we

 1    also not get -- I mean, rule one of any case, right, justice is

 2    speedy for everybody.  We need some help from you, Your Honor.

 3    So we're very appreciative.  We appreciate that you let us be

 4    here, but also that we work together so that we're not just

 5    blind over in our case.

 6              THE COURT:  As I understood, there was no objection to

 7    the -- to your having access to the docket.

 8              MS. COUNTS:  Right, Your Honor.

 9              THE COURT:  I already said that we need just to handle

10    the sealed information carefully.

11              MS. COUNTS:  Okay.

12              THE COURT:  You need to make a specific request, and

13    the Court would authorize so we have some record of making sure

14    that things stay --

15              MS. COUNTS:  And I just don't know, since we have

16    everyone here today, if there would be a way to include us on

17    the protective order so that we could kind of resolve some of

18    these issues of what's under seal.  Again, I don't know what

19    the details are, but we can probably agree to what the issues

20    are in our case.  Thank you.

21              THE COURT:  That's fine.  I'll let you all discuss it,

22    if you think you can work something out.  As far as what's on

23    the docket now, that's available to you.  If something is

24    sealed, that's upon request.

25              MS. COUNTS:  Thank you, Your Honor.

1          THE COURT:  You're welcome.

2          MR. VOGEL:  Your Honor, if I may just respond briefly

3     to what Defendant Amin's counsel was saying.

4          THE COURT:  Yes.

5          MR. VOGEL:  Defendant Amin's counsel -- I just have a

6     few points, and I'll go directly to them.  Defendant Amin's

7     counsel mentioned that Defendant Amin is also open to

8     duplicative and burdensome discovery, but then again, Defendant

9     Amin did file the defamation case after this case was already

10    filed.  He made himself a plaintiff in that case.

11         I would note, Judge, that there is no -- none of our

12    clients have gone with a megaphone to proclaim anything over

13    the international news.  There's no evidence that any of the

14    plaintiffs ever told anything to NBC.  And so to conflate the

15    two, I think, is mistaken or at least premature.

16         Again, you know, counsel also mentioned Judge Anand.

17    Judge Anand also -- while -- part of the reason that Judge

18    Anand issued the stay is that Judge Anand did recognize, in his

19    view, that -- the relevance of our clients' testimony, but also

20    recognized the prejudicial nature of live depositions of our

21    clients, particularly the possibility of two live depositions.

22    He described, you know, what every lawyers dream is, right, is

23    to have two depositions months apart to figure out what went

24    wrong or how you might do something different.  And he wasn't

25    attributing any kind of particular motive, but simply that that

1    is the fact -- that is the fact of that kind of a situation.

2          And I think that counsel's example -- I cannot speak

3    to what counsel was saying about their interview with another

4    person who happened to be a patient and what they saw or didn't

5    see.  I didn't see any of that.  I don't know anything about

6    it.  But I can say that it points exactly to the problem that

7    we are concerned about, is that discovery in that case would be

8    used to attack the credibility of our clients in this case.

9          And, you know, counsel talked about how they have

10   subpoenaed lawyers because they went on the news or they told

11   things to NBC.  They made certain statements.  Well, counsel

12   has extraordinarily broad requests, Your Honor, which we have

13   in -- which we quote from in our papers.  Counsel is

14   requesting, quote, all documents and electronic information

15   involving Dr. Mahendra Amin and/or allegations of mistreatment

16   of ICE detainees at the ICDC over which we have possession,

17   custody or control, including any communications.  It goes way

18   beyond communications.  It asks for any documents and

19   communications stemming from federal investigations, the

20   Department of Justice, the senate.

21          These -- we cannot be confident, Your Honor, without

22   appropriate guard rails that if there were any discovery to

23   proceed in this case that it would not prejudice the fairness

24   of discovery -- if there were any discovery to proceed, I'm

25   sorry, against the plaintiffs in this case in the defamation

1    case, we cannot be confident -- without guard rails put in

2    place by Your Honor protecting our clients, we cannot be

3    confident that Defendant Amin wouldn't pursue the same kind of

4    broad, extraordinarily vast kind of questioning getting

5    directly to -- not limited issues in the defamation case, but

6    issues that are at the very heart of this case.

7         You know, Judge, there are -- one thing that Judge

8    Anand pointed out in issuing the stay is that there's no need

9    to rush this.  There's no magic time when this has to happen

10   right now.  Any kind of depositions of our clients is what he

11   was talking about.  That there are lots of other sources.

12   There are other witnesses.  There is other discovery that could

13   happen, as we've been saying, that can perhaps narrow the

14   perceived relevance of our clients' testimony or change what

15   that looks like.

16        And so, Your Honor, we believe that allowing the

17   depositions, the live depositions of our clients to go forward

18   in the defamation case, if -- without any kind of guard rails,

19   without any kind of protections, does violate the stay in this

20   case.  We said that in our papers, and I've said it this

21   morning.  Because it goes -- it would pull out the same kinds

22   of materials that are discoverable in this case.  We feel that

23   it's unfair, it's prejudicial, and it's burdensome.

24        And so, Your Honor, we again ask for -- we ask for Your

25   Honor to protect our clients and to ensure the integrity and

1    the fairness of the discovery proceedings in this case.

2         THE COURT:  All right.  That's it.  Okay.  Well, one of

3    the reasons I set this down as early as I did was I thought

4    that there needed to be some direction in it.  I think some of

5    the other courts, as well as all of you, of course, are

6    wondering where the Court stood on this.

7         First of all, as I remember -- I went back and looked,

8    as I said earlier -- the stay that was put in place was based

9    on Congressional investigation and criminal investigations, and

10   everybody agreed that that was a reason to stay.  And it was

11   not in anticipation of other litigation that might be filed or

12   other occurrences that occurred subsequently.

13        Now, the only thing that -- this order came to my

14   attention when the motion was filed by plaintiffs, and there

15   was some discussion that was in violation of the Court's order.

16   The Court does not find on the record before it that there was

17   any intentional act on the part of Defendant Amin to violate

18   the Court's order, because the order was simply that there was

19   a stay in this case as between the parties, but for the reasons

20   stated earlier.

21        I do see how there could be some expectation that there

22   may be some things that would be prejudicial to one side or the

23   other, depending on how that would go about if it occurred in

24   another case.  But I think it would have to be something that

25   was specifically intended to violate the Court's order as

1    issued for that to sustain a contempt finding or citation, and

2    for that reason the Court denies it.

3         Now, I think it's clear that the plaintiffs have some

4    concerns that have validity.  Of course, each party has some

5    validity.  That's what makes it hard, because everyone has got

6    a point that needs to be taken into account.  But I have every

7    confidence that this court can deal with any issue raised by

8    either party with regard to the parameters of discovery, and

9    I'm likewise satisfied that the courts in the northern district

10   and the southern district likewise are capable of resolving the

11   actual issue between the parties with respect to discovery, and

12   particularly depositions, in the cases that pend there.  And I

13   think the more crystallized those circumstances are, it's

14   easier for that court to do something.

15        At least for the record, the Court won't be concerned

16   that it was this Court's intention to prevent any discovery in

17   any type of case that might involve these same parties.  And

18   that was not the Court's ruling, and that was not the intent of

19   its order.

20        As I mentioned earlier, it is clear these cases are

21   related in terms of factual circumstances.  The legal claims

22   are different, and they are in different courts.  So there's

23   going to be a certain amount of overlap for sure.  There can be

24   a burden in cases involving multiple depositions and other

25   things of that nature, but I think the federal rules make it

1    clear that those things can be avoided or should be avoided

2    when they can be.  So the Court thinks that there's still room

3    for you all to discuss an appropriate way to carry out any

4    discovery, as well as the timing of it that may be

5    advantageous.

6           The Court is going to leave the stay in place of

7    discovery in this case pending the dispositive motions that

8    have been filed.  I think most of them will be ripening within

9    the next few days.  And the Court expects to get those resolved

10   as soon as it can.  And that gives some further time for the

11   government to look at how that might affect their situation.  I

12   think, because of the nature of those motions, it would be

13   better to not lift the stay at that point.  If claims remain,

14   then the Court will again look at where things stand as to

15   whether there's another reason related to investigations that

16   the case should be stayed.

17          So that's the Court's ruling.  The Court denies the

18   motion for contempt as not being supported by the evidence in

19   the case, and the Court thinks a reasonable reading of its stay

20   would not show an intent on the part of Dr. Amin by subpoenaing

21   these plaintiffs to be in violation of that order.

22          I strongly encourage you all to meet and work out a way

23   to take those depositions or whatever form.  I think there has

24   been some discussion about questions written first and then

25   follow-up.  I think the point is for each side to be able to

1    obtain that information that they're due to obtain under the

2    discovery rules.

3         I remember when the discovery rules changed way back

4    must be 25 years ago, and what I noticed about it -- I think I

5    did a couple of CLEs on it -- is that we went from a place

6    where if I could draw a cartoon about discovery, I would have

7    had lawyers sitting on two separate trunks in front of the

8    judge's bench with their backs to each other and their arms

9    folded.  That's what discovery was like.  What can you squeeze

10   out of somebody.  Can you ask them 50 different ways to force

11   them to answer the question.  And the rules changed to more

12   show and tell.  Pretty much means that you pretty much get what

13   you ask for if it has some relevance, even if not admissible.

14        So the idea of making information available is an

15   important endeavor, but at the same time, of course, that does

16   not mean people should be abused or that the process should be

17   abusive.  What the Court anticipate and expects is professional

18   conduct.  And I think while that's true -- now, I heard it said

19   many places but different wording.  That suggests to me there's

20   a way to get this resolved in a meaningful way that gives some

21   reasonable protection to the plaintiffs in this case while

22   allowing the parties seeking discovery to receive that

23   discovery that they should receive.  And, of course, there are

24   third-party witnesses, as has been acknowledged, so that in

25   itself carries some guidance.

1        So I would -- rather than my giving you my solution as

2   to how you should go about doing it, I think that's something

3   that I should encourage you all to do, because I think you've

4   probably started that way at some point, but it's never gotten

5   off the ground.

6        So the Court does not think it's appropriate for it to

7   prevent discovery from the plaintiffs as a general matter,

8   although there may be particulars that may be presented in the

9   case to the Court having jurisdiction of the case that would

10  require some further treatment.  So unless there's something

11  that directly violates something that the Court has prevented,

12  then I think it's for that other Court, although this Court

13  encourages you all to work this out, because you're going to

14  keep bumping into each other -- that's the nature of these

15  cases -- because the central facts are so close.

16       So someone is going to be advantaged a little bit here

17  and there or disadvantaged here and there, but there can be no

18  high faults because there is such a core set of facts.  And

19  those facts are relevant to both these cases to some degree,

20  and in discovery it's hard to draw a bright line.  I don't

21  think that serves everyone's purpose, and that's certainly not

22  the intention of the rules, as I understand it.  I think

23  there's a broader access to it.

24       So I'll issue a written order confirming what I've

25  said, but I think I want you all to know where the Court stood

1   on this so that gives you some place to start from as you go

2   forward from here.

3           So is there any question?  Anyone has a question about

4   further clarification I need to make?

5           MR. VOGEL:  Your Honor, if I could have just two quick

6   clarifying questions.

7           THE COURT:  Sure.

8           MR. VOGEL:  I just wanted to clarify, first, when you

9   were talking about how the order staying discovery in this case

10  doesn't prevent discovery in the defamation case with respect

11  to the plaintiffs in this case --

12          THE COURT:  Yes.

13          MR. VOGEL:  -- I think that NBC had in its papers and

14  today also described how it was trying to obtain discovery from

15  the defendants.  Does that ruling also apply to obtaining

16  discovery from other defendants in this case in that case?

17          THE COURT:  Sure.

18          MR. VOGEL:  Okay.

19          THE COURT:  The Court's stayed discovery as between the

20  parties in this case on the claims in this court in this

21  matter.

22          MR. VOGEL:  And my second question --

23          THE COURT:  Not in any other case.

24          MR. VOGEL:  I appreciate that clarification, Judge.

25  When you are talking about the parties working on figuring out

1    discovery cooperatively, particularly with respect to our

2    clients and with respect to the deposition, is that -- do you

3    mean multiple depositions across the different cases or a

4    single deposition?

5        THE COURT:  I don't mean -- I don't know, because you

6    all know the cases better than I know them.  In other words,

7    there could be a single deposition that serves everybody's

8    purpose.  That makes sense because it's less cost.  It's less

9    intrusive and burdensome on the parties.  But those are things

10   I think you all can work out.  That's what I'm saying.  I'm not

11   suggesting any particular solution.  But that's the most

12   obvious one because a lot of the questions that might be asked

13   of any plaintiff in this case are going to be similar, and in

14   some places it's going to meet and cross and overlap a bit just

15   by the nature of the cases.  So if that could be done jointly,

16   everybody gets their opportunity at a single event, I think

17   that saves everybody a lot of time and money, particularly if

18   the nature of what's being asked for is as has been suggested

19   to the Court today.

20       MR. VOGEL:  Thanks, Your Honor.

21       THE COURT:  Yep.  That's all I'm getting at.  I think

22   you all -- you know what your needs are.  You know what you're

23   concerned about about being violated.  The other side knows

24   what it is that's key to what they need to get.  And I think

25   you all can discuss ways of doing that.  I don't think -- I

```
 1    think one of you said that multiple depositions, that's just

 2    the nature of litigation.  It is sometimes, but it doesn't have

 3    to be.  There's just no need of taking one person's deposition

 4    three or four times about something that's a fairly narrow set

 5    of facts, you know.  I expect there may be others interested in

 6    not just wasting time and money.  That's all I'm saying, that

 7    there are things that can be worked out.

 8              I've done a number of cases -- I've had cases where the

 9    parties agree up front the depositions are admissible in both

10    cases if they're close enough, and the party selects what part

11    they want to use is what I'm saying.  So I would suggest

12    strongly that if there are ways to accommodate each other and

13    to reduce your costs and expense and duplicity -- not

14    duplicity, but duplicating, rather, I think you should.

15              MR. VOGEL:  Thank you, Your Honor.

16              THE COURT:  I encourage it is what I'm saying.  Okay.

17    So denying the motion for the show cause and for the contempt

18    is not to say the Court is not aware that there are some

19    practical things here that deserve some consideration, and I

20    think you all are capable of helping each other on that in that

21    way.

22              All right.  Any other clarification anyone needs?

23              All right.  As I said, I'll issue a written order

24    confirming what I've said here in summary.  Thank you all so

25    much.  We're adjourned.
```

1          (Proceedings concluded at 11:03 a.m.)

2                    C E R T I F I C A T E

3

4

5          I hereby certify that the foregoing is an

6    accurate transcription of the proceedings in the

7    above-entitled matter.

8

9

     DATE:  May 5, 2023        /s/Rebecca Maxcy
10                             REBECCA MAXCY, RMR, CRR
                               Official Court Reporter
11                             United States District Court
                               Middle District of Georgia
12                             C.B. King United States Courthouse
                               201 W. Broad Avenue
13                             Albany, Georgia 31701
                               (229) 430-8431

14

15

16

17

18

19

20

21

22

23

24

25