# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Ave
Atlanta, GA 30303-9913

Date: October 19, 2022

Katrina Elizabeth Hazelwood
P O Box 8808
Atlanta, GA 31106-0808

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:
   **Appeals Council**
   **5107 Leesburg Pike**
   **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  My decision could also be used to deny a new application for benefits if the facts and issues are the same.  If you disagree with my decision, you should file an appeal within 60 days.

Katrina Elizabeth Hazelwood (BNC#: 21XY464C34103)                Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (866) 931-9946.

Social Security
Ste 2860 Flr 28
401 W Peachtree St NW
Atlanta, GA 30308-9972

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

Melinda L. Dula
Administrative Law Judge

Enclosures:
Decision Rationale

cc:     Kathleen Flynn, Esq.
        315 W. Ponce De Leon
        Avenue, Suite 940
        Decatur, GA 30030

Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance |
| Katrina Elizabeth Hazelwood | Benefits, and Supplemental Security Income |
| (Claimant) | |
| | 21XY464C34103 |
| (Wage Earner) | (Beneficiary Notice Control Number) |
| | *Social Security Number removed for your protection* |

**JURISDICTION AND PROCEDURAL HISTORY**

This case is before the undersigned Administrative Law Judge on remand from the Appeals Council.  On August 23, 2022, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic.  All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing and confirmed such agreement at the start of the hearing.  The claimant is represented by Kathleen Flynn, an attorney; however, at her hearing the claimant was represented by attorney Erica Dempsey, an associate with Ms. Flynn's office.  Mary Skinner, an impartial vocational expert, also appeared at the hearing.

In its remand order, Appeals Council directed the undersigned to give further consideration to the claimant's maximum residual functional capacity, and in doing so evaluate the opinion of Dr. Ralph Allsopp, give the claimant the opportunity of a hearing and render and new decision.

The claimant is alleging disability since September 1, 2015.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a)).

**ISSUES**

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act.  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social

See Next Page

Security Act are met.  The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2019.  Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from September 1, 2015, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975).  If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments is of a

severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965).  If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, she is not disabled.  If the claimant is not able to do other work and meets the duration requirement, she is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512, 404.1560(c), 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1. **The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.**

2. **The claimant has not engaged in substantial gainful activity since September 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).**

3. **The claimant has the following severe impairments: fibromyalgia, gastroesophageal reflux disease (GERD), seizure disorder, degenerative joint disease of left knee, post-**

traumatic stress disorder (PTSD), anxiety, depression, panic disorder, polysubstance abuse **(20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The undersigned has considered the claimant's allegations of left knee pain per criteria found in listing 1.18 of the regulations. Although the claimant has been noted to have chronic left knee pain, the record does not show, nor has the claimant alleged the need for an assistive device to ambulate that would require the use of both hands, such as a walker, two canes, two crutches, or an inability to use her upper extremities. Therefore, the claimant's history of left knee pain does not meet or equals the criteria of the listed impairment in the regulations. Similarly, the undersigned considered the claimant's history of seizure disorder per criteria found in listing 11.02 of the regulations. However, the record does not show any seizure episodes until September of 2019, when she presented to Grady Hospital alleging two seizure episodes. Nonetheless, the description of her alleged seizures was not noted as tonic clonic and the claimant reported that she has never presented to any medical provider for seizures, nor have even been prescribed medications for seizures (Exhibit 10F).

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a mild limitation.  Dr. Allsopp opined during his consultative evaluation in June of 2019, that the claimant was able to understand information and instructions and was able to perform simple tasks in a timely manner (Exhibit 7F).  The undersigned also notes that despite her history of homelessness, the claimant has been able to independently manage her healthcare needs and attend her medical appointments. She has been noted to understand her doctor's instructions and follow treatment without significant problems despite her ongoing drug and alcohol use (Exhibit 16F, Pg. 4).

In interacting with others, the claimant has a moderate limitation.  Dr. Allsopp opined that the claimant would experience difficulty interacting with co-workers, supervisors and the public (Exhibit 7F). Additionally, her treatment records show ongoing anxiety, panic attacks, and during some of her medical appointments she has been noted to be nervous and with a stuttering voice, which the undersigned notes would cause some difficulty interacting with others.

See Next Page

However, it is also significant to note that in January of 2021, the claimant reported that she was engaging in consensual prostitution as a means to earn money (Exhibit 16F, Pg. 4). The undersigned notes that this activity requires the claimant to interact with strangers; therefore, despite her limitations the record does not support more than moderate limitations.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. Dr. Allsopp also noted that her ability to carry out assigned tasks requiring attention and concentration was variable and dependent on the task (Exhibit 7F). However, the undersigned finds that her ability to sustain attention and concentration could also be impacted by her ongoing substance abuse including alcohol, marijuana, methamphetamines and cocaine; if the claimant were to abstain from using drugs and alcohol her ability in this area could improve. Dr. Allsopp opined that the claimant's prognosis was fair if she continues with mental health treatment and abstains from using substances (Exhibit 7F). Nonetheless, as evidenced by her treatment records in January of 2021, she has continued to abuse alcohol and drugs (Exhibit 16F, Pg. 4).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant's living status has varied throughout the relevant period and she has been homeless at times; however, she has been able to independently secure assistance such as food stamps, and manage her personal affairs. She manage her medical appointments independently and is able to present for follow up appointments and request refill of her medications as needed without significant remainders.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not reveal that the claimant would require a very structured living arrangement without which she would decompensate. She has been living independently and managing her medical needs without significant exacerbation of symptoms. Additionally all DDS non-examining medical consultants agreed that the requirements of the paragraph C criteria are not satisfied (Exhibits 1A, 2A, 3A, 4A, 7A, and 8A).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk 6 hours and sit up to 6 hours in an 8-hour workday with normal breaks. She can push/pull with the right upper extremity occasionally. She can operate foot controls with the lower extremities bilaterally**

**and occasionally. She can never climb ladders/ropes/scaffolds. She can occasionally climb ramps/stairs. She can occasionally stoop, kneel, crouch, crawl, or balance. She can handle and finger bilaterally frequently. She should avoid concentrated exposure to extreme vibrations, such as working on a vibrating surface. She should also avoid concentrated exposure to large bodies of water, unprotected heights and hazardous machinery. The claimant is limited to simple, routine jobs; not involving fast-paced production, and make simple work-related decisions and few if any workplace changes. She can occasionally interact with co-workers or supervisors and have no interaction with the public.  She would require 2 reminders daily from the supervisor and would be off task no more than 5% daily in addition to standard breaks and lunch (at or away from the workstation).**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant testified at her most recent hearing and stated that she is unable to work since 2015, due to symptoms of depression, anxiety and post-traumatic stress disorder (PTSD). She alleged limited ability to concentrate and maintain focus. She stated that she is homeless and has been living in the streets since her alleged onset date. She is currently in a hotel, which was arranged by her fiancée in order to have a place to do her hearing. She also testified that she worked as a veterinary assistant part-time in 2015. At her previous hearing, the claimant stated she performed this work at a full-time basis. She also alleged that she stopped this work due to personal and family issues.  At her hearing the claimant affirmed that she uses alcohol and cocaine to self-medicate, and she last used substances the day prior to the hearing. She denied using marijuana since 2015. She also affirmed that she is not participating in any substance abuse program. The claimant also stated that she has not presented for mental health treatment for two years.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The record reveals that the claimant was involved in an abusive relationship while living in Tennessee, and Hamilton County Adult Services, assisted her in leaving that relationship. The claimant was brought to Atlanta and lived at the City of Refuge until the fall of 2018 (Exhibit 2F). At her hearing she testified that she was homeless and sleeping in the street, but the day of the hearing she stated that her fiancée had found a hotel to have a place where to appear at the hearing by telephone. The record is also relevant for a long history of drug and alcohol abuse. The claimant testified at her hearing that she had not presented for mental health treatment in about two years and that she self-medicates with alcohol and cocaine; she affirmed that she last used alcohol and cocaine the day prior to the hearing. The claimant denied using marijuana; however, treatment records from Memorial healthcare in Tennessee in 2015 shows that she tested positive for cannabis, and more recently in January of 2021, she reported to her treating physician at Grady Hospital that she smokes cigarettes and uses marijuana and cocaine (Exhibit 16f, Pg. 4). She also reported that she was participating in consensual prostitution in order to obtain some money and put food on the table (Id.). However, the undersigned finds important to note that at her hearing the claimant testified that she has not presented for treatment due to lack of financial means to pay for services; yet it appears that she obtains money for other purpose. In 2016, while being treated for a dog bite, she was noted to be clearly intoxicated (Exhibit 1F).

Treatment records from Mercy Care at City of Refuge in August of 2018 shows diagnosis of fibromyalgia, with complaints of numbness and tingling; however, the behavior was noted as normal, oriented and her mood and affect were normal. She was prescribed Gabapentin for Fibromyalgia. The record also shows major depression, post-traumatic stress disorder (PTSD), and generalized anxiety disorder; the record continues to show alcohol use. The claimant also reported using crack cocaine, methamphetamines, and heroin, but had been about 11 days sober. She attended several group therapy sessions to address her anxiety and addiction issues (Exhibit 3F).

Furthermore, in October of 2018, treatment notes from Mercy Care continue to show complaints of numbness in her hands, and diagnoses of fibromyalgia, anxiety, depression and gastroesophageal reflux disease (GERD). The claimant was noted to be using marijuana and cocaine. In March of 2019, the record shows ongoing substance use, but she denied recent use for several months (Exhibits 5F, and 6F). However, in August of 2019, the records shows ongoing alcohol, cocaine and cannabis use. She continues to experience symptoms of anxiety, PTSD, panic disorder; however, she reported feeling better while taking her medications (Exhibit 8F). She testified at her hearing that when she was taking medications, these were not helpful in controlling her symptoms.

At her previous hearing she alleged difficulty gripping and that she dropped things; however, during the consultative evaluation with Dr. Jessie Al-Amin, M.D., in August of 2019, she was noted to have normal grip and strength in her upper extremities. Additionally, the undersigned finds important to note that she did not allege any difficulty with her hands; she did allege experiencing right ankle and knee swelling (Exhibit 9F). The record shows a history of right 3rd

finger fracture in January of 2019; nonetheless, the record does not show any additional treatment, limitations or complaints due to this incident (Exhibit 4F).  It is important to note that during this evaluation the claimant, for the first time, alleged a history of seizures; however, she was not taking any medications for seizures. She alleged being followed by a neurologist for seizures (Id.). Nonetheless, the record is silent regarding any complaints of seizures until September of 2019, when she presented to Grady Hospital alleging that she had experience a seizure episode that was witnessed by her boyfriend. She reported that for a while she had experienced seizures since childhood, she has never been evaluated, or followed by a neurologist, nor has she been prescribed any seizure medications. On this occasion she also reported using cocaine the day prior to the seizure, which may have been a contributing factor; the claimant was not prescribed any seizure medication, and poor effort was noted during the neurological exam (Exhibit 10F, and 13F).

During the consultative evaluation with Dr. Al-Amin in September of 2019, she reported right knee and ankle swelling; she noted that her left knee pain had been ongoing since her high school years (Exhibit 11F).  Subsequently, the record shows follow up appointments at St. Joseph's Mercy Care for medications refill in May of 2020. The record continue to show anxiety, depression, PTSD, GERD, allergies and chronic left knee pain (Exhibit 14F).

In June of 2019, Ralph Allsopp, Ph.D. evaluated the claimant and noted diagnoses of PTSD, and alcohol use disorder. Dr. Allsopp opined that the claimant was able to understand information and instructions, but her ability to carry out instructions would vary and was dependent on the type of task. He noted ability to perform simple tasks in a timely manner but following consistent work schedule was impaired. She would have difficulty managing stress and interacting with others (Exhibit 7F).

The most recent treatment records show that she presented to St. Joseph's Mercy care in October of 2020, with complaints of depression and anxiety. The record also shows history of fibromyalgia and GERD; these records show that she was prescribed medications for anxiety, fibromyalgia, depression, allergies, reflux and pain (Exhibit 15F).  The record shows she next presented to Grady Hospital in January of 2021 alleging complaints of cough and congestion. The record shows history of anxiety and seizures in the past; she was treated and discharged in stable condition with no need for follow up appointment. During the evaluation the claimant reported ongoing alcohol, marijuana and cocaine use and participating in consensual prostitution as means to obtain money and put food on the table (Exhibit 16F).

In May of 2021, she presented to Piedmont Hospital with complaints of dizziness, and jaundice; she was admitted for hepatitis evaluation and discharged after eight days, but no diagnosis of hepatitis was noted. After several days her liver function test was improved. The record also shows her history of drug and alcohol abuse, as well as PTSD, panic attacks, and anxiety (Exhibit 17F).  In January of 2022, she presented to Grady Hospital with complaints of having been pistol whipped by a stranger; the record shows some nasal bone fracture and lacerations; however, her laboratory findings were normal. She was offered transport to a woman's shelter, but she denied stating that she had to meet her husband; thus, was discharged (Exhibit 18F).

In reaching the claimant's maximum residual functional capacity the undersigned has considered the opinions of the non-examining medical consultants for the State disability determination services (DDS) at the initial level and found them less persuasive as they did not opine regarding the claimant's mental limitations due to alleged insufficient evidence, and the record shows more limitations that noted (Exhibits 1A, 2A, 3A, and 4A).  The opinions of the medical consultants at the reconsideration levels are found more persuasive and the undersigned has considered them in reaching the established residual functional capacity as they are consistent with the medical evidence, and their rationale is well supported by the objective findings in the medical records (Exhibits 7A, and 8A).

The opinion of Dr. Al-Amin is found to be persuasive regarding the claimant's physical limitations. Dr. Al-Amin findings during the exam as to the claimant's normal grip and upper extremity strength is consistent with the evidence of record, which shows only minimal complaints of upper extremity numbness and tingling in her hands and 2018 (Exhibits 9F, and 5F). The undersigned finds important to note that at her last hearing the claimant did not allege limitations in gripping and dropping items as she did at her previous hearing. She did not allege these limitations during the consultative evaluation with Dr. Al-Amin.

The opinion of Dr. Allsopp was also considered and found to be partially persuasive. Although the claimant's noted history of mental health and substance abuse is consistent with the medical evidence, which supports limitations for performing only simple tasks, and occasional interactions with co-workers, supervisors and the public.  His opinion as to the claimant's ability to understand information and instructions is consistent with the medical records that show her presenting to medical appointments independently and able to understand her doctor's instructions, and also finding that she retains ability to complete simple tasks in a timely manner. Nonetheless, his opinion that the claimant's ability to follow a consistent schedule is impaired is found less persuasive as the examiner did not elaborate on these findings. The claimant has noted ability to take public transportation and present to her doctor's appointments without assistance, which contradicts the examiner's findings (Exhibit 7F).

Consequently, the undersigned finds that the evidence supports the limitations noted in the established residual functional capacity. It is important to note that the claimant has not presented for mental health treatment in about two years without any significant exacerbation of symptoms and continues to use drugs and alcohol. If she abstains from substance use, she would be less limited than noted in the established residual functional capacity.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The vocational expert noted that the claimant has past work experience as an animal caretaker (DOT 410.674-0100) (medium/semiskilled SVP 4) As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period; therefore, the undersigned finds that it meets the regulations requirements for past relevant work. The vocational expert opined that an individual with the same vocational profile as the claimant and the same limitations noted in the established residual functional capacity would not be able to perform the claimant's past relevant

work.   Accordingly, the undersigned finds the claimant is unable to perform past relevant work as actually or generally performed.

**7.    The claimant was born on March 29, 1984, and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

**9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as Housekeeper cleaner (DOT 323.687-014) (light/unskilled SVP 2) (147,000 jobs nationally), Marker (DOT 209.587-034) (light/unskilled SVP 2)  (270,000 jobs nationally),and  Linen grader (DOT 361.687-022) (light/unskilled SVP 2) (235,000 jobs nationally)

See Next Page

Katrina Elizabeth Hazelwood (BNC#: 21XY464C34103)          Page 11 of 11

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, the SCO or experience, education and training.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

<u>**DECISION**</u>

Based on the application for a period of disability and disability insurance benefits filed on October 11, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on October 11, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Melinda L. Dula*

Melinda L. Dula
Administrative Law Judge

October 19, 2022
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | 1A | Disability Determination Explanation | | 2018-12-10 | 6 |
| Y13 | 2A | Disability Determination Explanation | | 2018-12-10 | 6 |
| Y13 | 3A | Disability Determination Explanation | | 2019-01-31 | 10 |
| Y13 | 4A | Disability Determination Explanation | | 2019-01-31 | 10 |
| Y13 | 5A | Initial Disability Determination by State Agency, Title II | | 2019-02-01 | 1 |
| Y13 | 6A | Initial Disability Determination by State Agency, Title XVI | | 2019-02-01 | 1 |
| Y13 | 7A | Disability Determination Explanation | | 2019-08-29 | 14 |
| Y13 | 8A | Disability Determination Explanation | | 2019-08-29 | 20 |
| Y13 | 9A | Reconsideration Disability Determination by State Agency, Title II | | 2019-08-30 | 1 |
| Y13 | 10A | Disability Determination Transmittal | | 2019-08-30 | 1 |
| Y13 | 11A | ALJ Hearing Decision | | 2020-10-27 | 19 |
| Y13 | 12A | AC Order | | 2021-04-13 | 6 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | 1B | Critical/Dire Need Request | | 2018-10-11 | 1 |
| Y13 | 2B | 2001 - Post Office Address Information | | 2019-01-16 | 2 |
| Y13 | 3B | T2 Notice of Disapproved Claim | | 2019-02-01 | 4 |

| | | | | |
|---|---|---|---|---|
| Y13 | 4B | T16 Notice of Disapproved Claim | 2019-02-01 | 5 |
| Y13 | 5B | Critical/Dire Need Request | 2019-03-10 | 3 |
| Y13 | 6B | Appointment of Representative | 2019-03-25 | 1 |
| Y13 | 7B | Representative Fee Agreement | 2019-03-29 | 1 |
| Y13 | 8B | Request for Reconsideration | 2019-03-29 | 2 |
| Y13 | 9B | T2 Disability Reconsideration Notice | 2019-08-30 | 9 |
| Y13 | 10B | T16 Disability Reconsideration Notice | 2019-08-30 | 9 |
| Y13 | 11B | Request for Hearing by ALJ | 2019-09-12 | 2 |
| Y13 | 12B | Request for Hearing Acknowledgement Letter | 2019-10-07 | 15 |
| Y13 | 13B | Objection to Video Hearing | 2019-10-09 | 1 |
| Y13 | 14B | Hearing Notice | 2020-05-28 | 25 |
| Y13 | 15B | Representative Correspondence | 2020-08-11 | 1 |
| Y13 | 16B | Request for Review of Hearing Decision/Order | 2020-12-23 | 3 |
| Y13 | 17B | AC Correspondence | 2021-01-08 | 5 |
| Y13 | 18B | COVID Hearing Agreement Form | 2021-06-07 | 14 |
| Y13 | 19B | Request for Hearing Acknowledgement Letter | 2021-06-09 | 15 |
| Y13 | 20B | Outgoing ODAR Correspondence | 2021-06-10 | 4 |
| Y13 | 21B | Hearing Notice | 2021-08-19 | 25 |
| Y13 | 22B | Notice Of Hearing Reminder | 2021-10-13 | 6 |
| Y13 | 23B | Hearing Notice | 2022-01-13 | 25 |
| Y13 | 24B | Notice Of Hearing Reminder | 2022-03-08 | 6 |
| Y13 | 25B | SSA-1696-SUP2 - Representative's Withdrawal of Acceptance of Appointment | 2022-03-31 | 1 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | 26B | SSA-1696 - Claimant's Appointment of a Representative | | 2022-04-01 | 1 |
| Y13 | 27B | Fee Agreement for Representation before SSA | | 2022-04-01 | 1 |
| Y13 | 28B | Notice to Show Cause for Failure to Appear | | 2022-04-11 | 3 |
| Y13 | 29B | Response to Show Cause Notice | | 2022-04-20 | 2 |
| Y13 | 30B | SSA-1696 - Claimant's Appointment of a Representative | | 2022-04-01 | 1 |
| Y13 | 31B | Hearing Notice | | 2022-06-03 | 27 |
| Y13 | 32B | Notice Of Hearing Reminder | | 2022-07-26 | 6 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| Y13 | 1D | Application for Disability Insurance Benefits | | 2018-10-11 | 2 |
| Y13 | 2D | Application for Supplemental Security Income Benefits | | 2018-10-11 | 6 |
| Y13 | 3D | Certified Earnings Records | | 2020-02-06 | 1 |
| Y13 | 4D | Detailed Earnings Query | | 2020-02-14 | 7 |
| Y13 | 5D | Summary Earnings Query | | 2020-02-14 | 1 |
| Y13 | 6D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2020-02-14 | 1 |
| Y13 | 7D | WHAT - Work History Assistant Tool | | 2020-08-11 | 14 |
| Y13 | 8D | Certified Earnings Records | | 2020-08-11 | 2 |
| Y13 | 9D | Detailed Earnings Query | | 2020-08-13 | 6 |
| Y13 | 10D | Summary Earnings Query | | 2020-08-13 | 1 |
| Y13 | 11D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2020-08-13 | 1 |

| Y13 | 12D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2021-06-26 | 1 |
| Y13 | 13D | Summary Earnings Query | 2021-06-26 | 1 |
| Y13 | 14D | Detailed Earnings Query | 2021-06-26 | 6 |
| Y13 | 15D | Certified Earnings Records | 2021-06-26 | 3 |
| Y13 | 16D | Certified Earnings Records | 2021-11-02 | 3 |
| Y13 | 17D | WHAT - Work History Assistant Tool | 2021-11-02 | 9 |
| Y13 | 18D | Detailed Earnings Query | 2021-11-02 | 7 |
| Y13 | 19D | Summary Earnings Query | 2021-11-02 | 1 |
| Y13 | 20D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2021-11-02 | 1 |
| Y13 | 21D | Certified Earnings Records | 2022-03-23 | 3 |
| Y13 | 22D | WHAT - Work History Assistant Tool | 2022-03-23 | 9 |
| Y13 | 23D | Detailed Earnings Query | 2022-03-23 | 7 |
| Y13 | 24D | Summary Earnings Query | 2022-03-23 | 1 |
| Y13 | 25D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2022-03-23 | 1 |
| Y13 | 26D | Certified Earnings Records | 2022-08-02 | 3 |
| Y13 | 27D | WHAT - Work History Assistant Tool | 2022-08-02 | 6 |
| Y13 | 28D | Detailed Earnings Query | 2022-08-02 | 7 |
| Y13 | 29D | Summary Earnings Query | 2022-08-02 | 1 |
| Y13 | 30D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2022-08-02 | 1 |

## **Disability Related Development**

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Y13 | 1E | Disability Report - Adult | Claimant | 2018-10-23 to 2018-10-23 | 10 |
| Y13 | 2E | Disability Report - Field Office | Claimant | 2018-10-23 to 2018-10-23 | 4 |
| Y13 | 3E | Work Activity Report EE | Claimant | 2018-10-23 to 2018-10-23 | 12 |
| Y13 | 4E | Work History Report | Claimant | 2018-10-29 to 2018-10-29 | 12 |
| Y13 | 5E | Post Office Returned Mail | Hazelwood, Katrina Elizabeth | 2019-01-06 to 2019-01-06 | 1 |
| Y13 | 6E | Report of Contact | DDS Stone Mountain Ga | 2019-01-16 to 2019-01-16 | 2 |
| Y13 | 7E | Disability Report - Appeals | Claimant | 2019-03-29 to 2019-03-29 | 7 |
| Y13 | 8E | Disability Report - Field Office | Claimant | 2019-03-29 to 2019-03-29 | 2 |
| Y13 | 9E | Post Office Returned Mail | Hazelwood, Katrina Elizabeth | 2019-04-29 to 2019-04-29 | 3 |
| Y13 | 10E | Report of Contact | Do 600 | 2019-05-16 to 2019-05-16 | 1 |
| Y13 | 11E | Function Report - Adult | Hazelwood, Katrina Elizabeth | 2019-06-19 to 2019-06-19 | 8 |
| Y13 | 12E | Seizure Questionnaire | Hazelwood, Katrina Elizabeth | 2019-06-24 to 2019-06-24 | 2 |
| Y13 | 13E | Disability Report - Field Office | Claimant | 2019-09-25 to 2019-09-25 | 3 |
| Y13 | 14E | Disability Report - Appeals | Claimant | 2019-09-25 to 2019-09-25 | 8 |

| Component | No. | Description | | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | 15E | Exhibit List to Rep PH2E | | Oho - Y13 | 2020-02-14 to 2020-02-14 | 5 |
| T2L | 16E | Five Day Rule Letter | | Kathleen M. Flynn | to 2020-07-16 | 2 |
| T2L | 17E | Resume of Vocational Expert | | Stephen E. Cosgrove, Edd | to 2020-07-26 | 3 |
| Y13 | 18E | Representative Brief | | Kathleen Flynn | to 2021-01-04 | 9 |
| Y13 | 19E | Misc Disability Development and Documentation | | | to 2021-10-13 | 2 |
| Y13 | 20E | Resume of Vocational Expert | | | | 2 |
| Y13 | 21E | Representative Correspondence | | | to 2022-03-02 | 2 |
| Y13 | 22E | Resume of Vocational Expert | | | | 4 |
| Y13 | 23E | Correspondence regarding efforts to obtain evidence | | | to 2022-07-13 | 2 |
| Y13 | 24E | Resume of Vocational Expert | | | | 2 |

## **Medical Records**

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| Y13 | 1F | Progress Notes | | Memorial Healthcare System | 2015-08-04 to 2016-05-10 | 35 |
| Y13 | 2F | Progress Notes | | Helen Ross Mcnabb Center | 2017-02-01 to 2018-04-11 | 87 |
| Y13 | 3F | Progress Notes | | Mercy Care At City Of Refuge | 2018-08-27 to 2018-10-31 | 51 |
| Y13 | 4F | Emergency Department Records | | Grady Hospital | 2019-01-16 to 2019-01-17 | 8 |
| Y13 | 5F | Progress Notes | | St Josephs Mercy Care Services | 2018-10-03 to 2019-03-11 | 50 |

| | | | | | |
|---|---|---|---|---|---|
| Y13 | 6F | Medical Evidence of Record | St. Joseph's Mercy Care | 2018-08-27 to 2019-03-27 | 83 |
| Y13 | 7F | Consultative Examination Report | Comprehensive Evaluations Services Inc | 2019-06-15 to 2019-06-15 | 5 |
| Y13 | 8F | Progress Notes | St. Josephs Mercy Care | 2018-08-27 to 2019-08-08 | 138 |
| Y13 | 9F | Consultative Examination Report | Jessie Louise Muse Al Amin Md | 2019-08-21 to 2019-08-21 | 10 |
| Y13 | 10F | Hospital Records | Grady Memorial Hospital | 2019-09-07 to 2019-09-07 | 16 |
| Y13 | 11F | Progress Notes | St Josephs Mercy Care | 2019-09-16 to 2019-09-16 | 14 |
| T2L | 12F | Medical Source - No MER Available | St. Josephs Mercy Care | to 2020-04-19 | 5 |
| T2L | 13F | Emergency Department Records | Grady Memorial Hospital | to 2019-09-07 | 9 |
| T2L | 14F | Progress Notes | St Josephs Mercy Care | 2020-05-02 to 2020-05-12 | 17 |
| Y13 | 15F | Progress Notes | St Josephs Mercy Care | 2020-10-02 to 2021-01-27 | 15 |
| Y13 | 16F | Hospital Records | Grady Memorial Hospital | 2021-01-04 to 2021-01-06 | 11 |
| Y13 | 17F | Hospital Records | Piedmont Hospital | 2021-05-05 to 2021-05-13 | 166 |
| Y13 | 18F | Hospital Records | Grady Memorial Hospital | 2022-01-15 to 2022-01-16 | 34 |