# EXHIBIT A

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
FULTON COUNTY, GEORGIA
2023CV378125
MAR 28, 2023 05:59 PM
Cathelene Robinson, Clerk
Fulton County Superior Court

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

PAUL HAARER,

*Plaintiff,*

v.

VINEYARD CAPITAL PARTNERS, L.L.C. and PINNACLE FUNERAL SERVICE, LLC,

*Defendants.*

Case No: _______________

**JURY TRIAL DEMANDED**

# COMPLAINT FOR DAMAGES

Plaintiff Paul Haarer ("Haarer" or "Plaintiff") files this Complaint against Defendants Pinnacle Funeral Service, LLC ("Pinnacle") and Vineyard Capital Partners, L.L.C. ("Vineyard"; Vineyard and Pinnacle each a "Defendant" and collectively, "Defendants"), alleging as follows:

## I. INTRODUCTION AND SUMMARY OF CLAIMS

This case involves the bad-faith failure of Defendants to live up to their contractual and legal obligations to Plaintiff, despite Plaintiff's successful tenure as Pinnacle's Chief Operating Officer ("CEO"). With Plaintiff at its helm for almost the past decade, Pinnacle grew dramatically in size and profitability, to Defendants' considerable benefit. To encourage Plaintiff's efforts to grow Pinnacle—and, consequently, to substantially enrich Vineyard, Pinnacle's parent company—Defendants granted Plaintiff a fifteen percent (15%) equity stake in Pinnacle in

approximately 2014. Between 2015 and 2022, Defendants continually represented to Plaintiff not only the existence of his equity in Pinnacle, but they also made payments to him in accordance with specific equity valuations Defendants repeatedly provided to him.

Notwithstanding Plaintiff's successful run as Pinnacle's CEO, Vineyard's management became increasingly hostile towards him. The relationship deteriorated to such a degree that, in approximately May 2022, Vineyard unilaterally reduced Plaintiff's compensation by roughly 70%.

Shortly thereafter, in approximately July 2022, Vineyard sent an email to its investors, including Plaintiff, offering to buy back Vineyard membership units ("Units") for a fixed price (the "Repurchase Offer"), so long as acceptance of the Repurchase Offer was made by September 30, 2022. In compliance with the Repurchase Offer and without reservation, Plaintiff accepted Vineyard's Repurchase Offer on or about September 28, 2022, with respect to all of his remaining Units (the "Repurchase Agreement").

However, rather than honor its contractual obligations triggered by Plaintiff's timely acceptance of the Repurchase Offer, Vineyard then reneged on its offer to purchase Plaintiff's Units. Adding insult to injury, Defendants fired Plaintiff on September 30, 2022, allegedly for accepting the Repurchase Offer. Following Plaintiff's termination, Defendants have refused to acknowledge his 15% equity

stake in Pinnacle, and Vineyard has continued to refuse to honor the terms of the Repurchase Agreement.

Plaintiff asserts claims for breaches of contract, unjust enrichment, promissory estoppel, *quantum meruit*, and fraudulent misrepresentations. Plaintiff seeks compensatory damages, punitive damages pursuant to O.C.G.A. § 51-12-5.1, interest, and attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

## II. THE PARTIES

1.

Plaintiff Paul Haarer is an individual resident of Fulton County, Georgia, and resides at 545 Williston Way, Alpharetta, Georgia 30005.

2.

Defendant Pinnacle Funeral Service, LLC is a Georgia limited liability company with its Principal Office Address at 7742 Spalding Drive #353, Norcross, Georgia 30092. Pinnacle may be served by service on its registered agent, C T Corporation System, at 289 South Culver Street, Lawrenceville, Georgia 30046.

3.

Defendant Vineyard Capital Partners, L.L.C. is a Florida limited liability company with its principal address listed as 3431 Cedar Lane, Tallahassee, Florida 32312. Vineyard may be served by service on its registered agent, Tamra Crews, at 190 Ryan Lane, Covington, Georgia 30014. Vineyard also employs individuals who

work for it from locations in Fulton County, Georgia. As non-exhaustive examples, and on information and belief:

- Vineyard's Human Resources Manager, Rebecca Sekowski, works for Vineyard out of her Fulton County home located at 5345 Hillgate Crossing, Alpharetta, Georgia 30005;
- Todd Reich, who works on business development for Vineyard, works for Vineyard out of his Fulton County home located at 1218 Defoor Court NW, Atlanta, Georgia 30318; and
- Jeff Boutwell, Vineyard's Founder and Managing Partner, regularly works for Vineyard out of his condo in Fulton County located at 1010 Peachtree Street NE, Atlanta, Georgia 30309.

## III. JURISDICTION AND VENUE

4.

Jurisdiction and venue are proper in this Court with respect to Pinnacle pursuant to O.C.G.A. §§ 14-11-1108(b) and 14-2-510(b) because its Principal Office Address is in Fulton County, Georgia.

5.

Jurisdiction and venue are proper in this Court with respect to Vineyard pursuant to O.C.G.A. §§ 9-10-91, 14-11-1108, and 14-2-510(b) because: (a) Vineyard has offices in Fulton County, where the contracts in dispute were made

or were to be performed, and where Vineyard transacts substantial business; and (b) Vineyard transacts substantial business in Fulton County, Georgia, where a substantial portion of the tortious conduct complained of herein occurred.

## IV. FACTUAL ALLEGATIONS

### A. Mr. Haarer Served as CEO for Pinnacle for Many Years, Creating Significant Shareholder Value.

6.

Vineyard is a private equity investment company that advertises itself as providing growth capital to businesses with which it partners.

7.

On information and belief and according to its website, Vineyard manages more than $230 million in assets.

8.

On the "News" section of its website, it repeatedly highlights its numerous awards as one of the top private equity firms in Atlanta, at least as far back as 2017. A highlighted copy of such section is attached hereto as **Exhibit A.**

9.

Jeff Boutwell is Vineyard's Founder and Managing Partner. His father, Ken Boutwell, is Vineyard's Managing Partner of Investor Relations.

10.

On or about June 1, 2014, Vineyard hired Plaintiff to be the CEO of Pinnacle, one of Vineyard's portfolio companies.

11.

Pinnacle is a funeral home acquisition and management firm.

12.

Vineyard was and remains the parent company of Pinnacle. It also acts as its agent and alter ego, steering everything from growth strategies, bank financing, certain hiring and firing decisions, and tax filings.

13.

When he was hired by Pinnacle, Plaintiff executed an employment agreement with Pinnacle (the "2014 Employment Agreement").

14.

Although Plaintiff was ostensibly an employee of Pinnacle, Vineyard dictated the terms of the 2014 Employment Agreement. Further, Vineyard closely controlled Pinnacle and regularly dictated Plaintiff's goals as Pinnacle's CEO.

15.

In fact, Pinnacle did not have a Board of Directors throughout Plaintiff's employment. Instead, Vineyard effectively functioned as Pinnacle's Board, providing direction and oversight of Pinnacle.

16.

In negotiating the 2014 Employment Agreement, Vineyard tied Plaintiff's compensation to Pinnacle's equity value.

17.

Plaintiff's base salary was relatively small given his position as CEO because a substantial portion of his compensation was tied to a 15% equity stake in Pinnacle that Vineyard offered him (the "Equity Agreement").

18.

More specifically, Paragraph 3 of the 2014 Employment Agreement between Plaintiff and Pinnacle noted that Vineyard's equity value in Pinnacle was "$[redacted],"[1] which amount was to serve as the baseline above which Plaintiff would receive 15% as a result of his work for Pinnacle. A redacted version of the relevant portion of the 2014 Employment Agreement is attached hereto as **Exhibit B.**

19.

Between 2014 and May 2022, the Employment Agreement was consistently renewed by Plaintiff and Defendants after its initial expiration.

[1] Out of an abundance of caution, Plaintiff is redacting certain potentially confidential business information for Defendants' benefit and intends to file and move to seal the unredacted version of this Complaint.

20.

At the time that Plaintiff began running Pinnacle, it was a break-even business. However, Plaintiff soon began closing and selling underperforming Pinnacle locations and replacing them by purchasing and building lucrative locations in Georgia and other states across the country. It is believed that Pinnacle represented Vineyard's largest equity investment, and during Plaintiff's tenure as CEO, the value of the units increased from $[redacted] to $[redacted].

21.

Between 2014 and 2022, Pinnacle achieved unprecedented success. Its revenues increased by tens of millions of dollars, and it was named one of Georgia's Fast 40 by ACG Atlanta, meaning it was one of the top 40 fastest growing companies in 2022. By 2022, it had become a well-recognized, leading company in the funeral industry.

**B. Vineyard Reneges on the Equity Agreement.**

22.

Although the Equity Agreement was not expressly detailed in the 2014 Employment Agreement, it was documented repeatedly in conversations and emails from Vineyard managers.

23.

Further, Plaintiff received payments equivalent to his 15% stake in Pinnacle when Vineyard realized Pinnacle's equity through payouts to Plaintiff and others.

24.

Plaintiff reasonably relied on the Equity Agreement through the remainder of his employment with Defendants.

25.

As an example of Defendants documenting the Equity Agreement, on July 12, 2015, Vineyard's Managing Partner, Jeff Boutwell, sent Plaintiff a projected 5-year cashflow chart for Pinnacle, which detailed the "total equity" that he had in Pinnacle. A redacted and highlighted version of this communication is attached hereto as **Exhibit C.**

26.

Likewise, on September 1, 2015, Jeff Boutwell emailed Plaintiff, stating "[f]rom our conversation earlier I thought I'd run these numbers on your total compensation since you took over Pinnacle." Below that, he listed $[redacted] of "value of 15% equity in Pinnacle." A redacted and highlighted version of this communication is attached hereto as **Exhibit D.**

27.

This understanding continued into 2016, when Jeff Boutwell again emailed Plaintiff, detailing the "15% accretion," "15% in value," and "equity value we believe you have in Pinnacle." A redacted and highlighted version of this communication is attached hereto as **Exhibit E.**

28.

Likewise, on March 13, 2017, Jeff Boutwell emailed, stating: "I talked to my father . . . there was $[redacted] of total accretive equity in Pinnacle. So I thought us recognizing $[redacted] of it now wasn't a big risk." A redacted and highlighted version of this communication is attached hereto as **Exhibit F.**

29.

Subsequently, one-third ($[redacted]) of the Pinnacle equity would be paid out on March 27, 2017, 15% of which was paid to Plaintiff and eighty-five (85) percent of which was paid to Vineyard.

30.

These payments were accounted for in the following month, as reflected in Vineyard's capital account excel spreadsheet, with a note in the April 2017 column by Vineyard's prior employee, Andrew Butler, stating, "Andrew Butler: Realization of Equity Value Increase (85% Vineyard/15% Paul) -per Jeff [Boutwell] & Paul

[Haarer].” A redacted and highlighted version of the relevant portion of this communication is attached hereto as **Exhibit G.**

31.

Years later, in 2021, the mutual understanding that Plaintiff held 15% equity in Pinnacle endured.

32.

As an example, Vineyard’s Chief Operating Officer, Veronica Case, emailed Plaintiff on June 4, 2021, sending him a Pinnacle Valuation and Debt chart that showed “15% to Paul.” A redacted and highlighted version of this communication is attached hereto as **Exhibit H.**

33.

These many writings evidence the formation and continued existence of the Equity Agreement through Plaintiff’s employment, as well as Defendants’ continued acknowledgment of the same.

34.

Plaintiff, relying on Defendants’ repeated and consistent representations concerning the Equity Agreement, worked tirelessly to grow Pinnacle. For instance, as non-exhaustive examples, Plaintiff: made himself available 24/7 to staff in Georgia, South Carolina, and multiple locations across the Midwest; met with city officials on behalf of Pinnacle; performed menial tasks such as replacing light bulbs

at the various locations, building a fence, performing landscaping duties, and decorating; and even assisted with putting bodies in caskets to assist the funeral directors if nobody else could assist.

35.

Despite Vineyard's consistent acknowledgment of the Equity Agreement and Plaintiff's requests over the years, Vineyard refused to reduce the Equity Agreement to a formal written agreement.

36.

In fact, on May 27, 2022, Vineyard stated that it would not renew the 2014 Employment Agreement, which had previously been renewed after its initial expiration.  Vineyard also indicated that it would not sign an interim agreement that incorporated the material terms of the Equity Agreement.

37.

Eventually, Vineyard tried to back out of the Equity Agreement altogether. For example, in 2022, Vineyard unilaterally decided that it would no longer pay Plaintiff any further equity realization payments, in violation of the Equity Agreement.

**C. Vineyard Made a Formal Offer to Repurchase Units from Investors, including Mr. Haarer, which Mr. Haarer Timely Accepted without Reservation.**

38.

While Plaintiff continued to build Pinnacle as its CEO, he also joined Vineyard as a Member on or about January 16, 2015, via a Joinder Agreement. Pursuant to the Joinder Agreement, Plaintiff was given an option to purchase a certain number of Units in Vineyard at a specified price.

39.

Between 2015 and 2019, Plaintiff acquired a total of 2,000 Units.

40.

When Vineyard offered to re-purchase Plaintiff's units in the past, Vineyard honored its offer when Plaintiff decided to accept and sell some of his units. For example, on March 30, 2020, Plaintiff was able to sell 400 of his Units, without restriction, after Vineyard had sent to investors, including Plaintiff, an offer to re-purchase Units.

41.

However, on July 27, 2022, Vineyard sent its investors, including Plaintiff, an Investor Report that included an offer from Vineyard to re-purchase Units from investors, as well as a notice that Vineyard would accept $[redacted] in new investment funds from investors.

42.

Specifically, the July 27, 2022 Investor Report included the Repurchase Offer, stating:

> To provide investors with liquidity, we are offering to repurchase up to 10,000 equity units at the current value of $[REDACTED] per unit. This offer expires September 30, 2022, so please contact us before then if you wish to sell any of your units.

A redacted version of the relevant portion of the Repurchase Offer is attached hereto as **Exhibit I.**

43.

The Investor Report directed interested investors to contact Tamra Crews, Vineyard's Director of Treasury and Investor Relations, concerning the Repurchase Offer.

44.

On September 28, 2022, two (2) days before the Repurchase Offer expired, Plaintiff formally accepted that offer via an email to Director Crews, in accordance with the directions provided by the Investor Report.

45.

In his September 28, 2022 email to Director Crews, Plaintiff specifically stated that he accepted the offer to sell his remaining 1,600 Vineyard Units at the proposed rate of $[REDACTED] per Unit.

46.

On September 30, 2022, Plaintiff emailed Director Crews and Jeff Boutwell, providing them with the certificate numbers for his 1,600 Units. Plaintiff further asked for clarification about when he could expect payment for the redeemed Units.

47.

Later that day, Jeff Boutwell responded to Plaintiff's September 30, 2022 email, stating that, "We received your request prior to Sept 30, as requested in the investor report. I'll get back to first [sic] of next week on the redemption." Redacted and highlighted versions of these communications are attached hereto as **Exhibit J.**

48.

However, instead of honoring Plaintiff's tender of his Units, Vineyard reneged on the Repurchase Offer by subsequently refusing to pay Plaintiff for any of his Units.

49.

More specifically, on September 30, 2022, Vineyard fired Plaintiff on behalf of Pinnacle. Plaintiff learned from Jeff Boutwell that Vineyard purportedly had decided to fire him because he had accepted the Repurchase Offer, which would unsettle other investors.

50.

Later that day, Jeff Boutwell sent correspondence to Plaintiff memorializing that "Vineyard Capital Partners, LLC has made the decision to terminate your employment with Pinnacle Funeral Service, LLC effective today. . . ."  A redacted copy of this letter is attached hereto as **Exhibit K.**

51.

Later, on information and belief, Vineyard filed paperwork with the Georgia Department of Labor, which listed "insubordination" as the reason for Plaintiff's termination.

52.

In other words, Vineyard, as owner of Pinnacle and as its *de facto* Board, terminated Plaintiff on the pretextual ground that his acceptance of Vineyard's own offer would not look good to other investors given his role as Pinnacle's CEO and/or his actions constituted insubordination.

53.

This is despite the fact that Vineyard made the Repurchase Offer unprovoked and voluntarily.

54.

To date, Vineyard has refused to repurchase Plaintiff's Units, nor has it paid Plaintiff all he is owed in accordance with the Equity Agreement.

55.

In refusing to comply with its obligations under the Equity and Repurchase Agreements, Vineyard has breached its duty of good faith and fair dealing.

56.

By refusing to honor their contractual obligations under the Equity and Repurchase Agreements, Defendants have acted in bad faith, been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

57.

Defendants' false representations to Plaintiff concerning the Equity and Repurchase Agreements were made knowingly to induce him to act to his substantial detriment.[2]

**COUNT I**
**Breach of Contract—Breach of the Equity Agreement**
**(against Defendants)**

58.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

[2] Plaintiff intends to add allegations and a corresponding age-discrimination claim against Defendants at the time permitted by law.

59.

Under the Equity Agreement between Plaintiff and Defendants, Defendants promised to provide Plaintiff a 15% equity stake in Pinnacle in exchange for his work for Defendants as Pinnacle's CEO, including his work that was above-and-beyond the duties of a CEO, such as, but not limited to, performing menial tasks and making himself available to staff 24/7.

60.

The Equity Agreement imposed upon Defendants a duty of good faith and fair dealing.

61.

Plaintiff fully performed his contractual obligations under the Equity Agreement.

62.

Defendants promised Plaintiff the 15% equity stake in Pinnacle, in exchange for which he accepted his role as Pinnacle's CEO and performed valuable services for Defendants.

63.

Plaintiff and Defendants each mutually assented to the material terms of the Equity Agreement.

64.

Plaintiff relied upon Defendants' compensation promises in accepting his position as Pinnacle's CEO and performing valuable services for Defendants.

65.

In breach of the Equity Agreement, Defendants have refused to acknowledge Plaintiff's 15% equity stake in Pinnacle since 2022, despite Plaintiff's entitlement to the same.

66.

As a result of Defendants' breach of the Equity Agreement, they are liable to Plaintiff for breach of contract in an amount equivalent to his 15% equity stake in Pinnacle, plus interest and attorneys' fees and costs.

**COUNT II**
**(PLED IN THE ALTERNATIVE)**
**Unjust Enrichment—Equity Agreement**
**(against Defendants)**

67.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

68.

In the alternative, Defendants are liable to Plaintiff for unjust enrichment in the full amount owed to him, equivalent to the value of the 15% equity stake in Pinnacle that Defendants promised him, plus interest and attorneys' fees and costs.

69.

Defendants promised Plaintiff that he would be compensated for the valuable services that he provided as Pinnacle's CEO by, in addition to paying him a relatively low base salary, granting him a 15% equity stake in Pinnacle.

70.

Defendants requested that Plaintiff perform valuable services for their benefit, and knowingly accepted such services, with the full knowledge that Plaintiff performed such services because of Defendants' promise to grant him a 15% equity stake in Pinnacle.

71.

In reliance on Defendants' representations that he was to receive, and had received, a 15% equity stake in Pinnacle, Plaintiff performed valuable services for Defendants and thereby conferred a benefit upon Defendants.

72.

Injustice can only be avoided by enforcing Defendants' promise to pay Plaintiff the full compensation owed to him.

73.

Defendants are liable to Plaintiff for unjust enrichment in the full amount owed to him, equivalent to the 15% equity stake in Pinnacle promised to him, plus interest and attorneys' fees and costs.

**COUNT III**
**(PLED IN THE ALTERNATIVE)**
**Promissory Estoppel—Equity Agreement**
**(against Defendants)**

74.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

75.

In the alternative, Defendants are liable to Plaintiff for promissory estoppel pursuant O.C.G.A. § 13-3-44 in the full amount owed to him equivalent to the value of the 15% equity stake in Pinnacle that Defendants promised him, plus interest and attorneys' fees and costs.

76.

Defendants promised Plaintiff that he would be compensated for the valuable services that he provided as Pinnacle's CEO by, in addition to paying him a relatively low base salary, granting him a 15% equity stake in Pinnacle.

77.

Defendants should have reasonably expected Plaintiff to rely on their promise to grant him the 15% equity stake in Pinnacle that was owed and promised.

78.

In reliance on the representation by Defendants that he would be granted the 15% equity stake in Pinnacle owed and promised, Plaintiff accepted his position as Pinnacle's CEO and performed valuable services for Defendants.

79.

Plaintiff relied on Defendants' promise to his detriment by performing valuable services for Defendants instead of pursuing other opportunities.

80.

Injustice can only be avoided by enforcing Defendants' promise to pay Plaintiff the full compensation owed to him.

81.

Defendants are liable to Plaintiff for promissory estoppel pursuant to O.C.G.A. § 13-3-44 in the full amount owed to him, equivalent to the 15% equity stake in Pinnacle promised to him, plus interest and attorneys' fees and costs.

**COUNT IV**
**(PLED IN THE ALTERNATIVE)**
**Quantum Meruit—Equity Agreement**
**(against Defendants)**

82.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

83.

In the alternative, Defendants are liable to Plaintiff for *quantum meruit* in the full amount owed to him equivalent to the value of the 15% equity stake in Pinnacle that Defendants promised him, plus interest and attorneys' fees and costs.

84.

In reliance on the representation by Defendants that he would be granted the 15% equity stake in Pinnacle owed and promised, Plaintiff accepted his position as Pinnacle's CEO and performed valuable services for Defendants.

85.

The services Plaintiff performed for Defendants were done at the request of Defendants, which knowingly accepted such services.

86.

Defendants' acceptance of Plaintiff's services without payment to him of the value of the 15% equity stake in Pinnacle that he was promised would be unjust.

87.

At the time that Plaintiff performed services for Defendants, he expected to receive all compensation owed and promised.

88.

At the time that Plaintiff performed services for Defendants, Defendants knew he expected them to pay all compensation owed and promised.

89.

Defendants are liable to Plaintiff for *quantum meruit* in the full amount owed to him, equivalent to the 15% equity stake in Pinnacle promised to him, plus interest and attorneys' fees and costs.

**COUNT V**
**Fraudulent Misrepresentation—Equity Agreement**
**(against Defendants)**

90.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

91.

Defendants falsely, as detailed above, represented to Plaintiff that he would receive 15% equity in Pinnacle.

92.

Defendants' representations to Plaintiff, as detailed above, concerning his 15% equity in Pinnacle were knowingly false.

93.

Defendants made the false representations to Plaintiff concerning the 15% equity in Pinnacle to induce him to continue to provide valuable services to Defendants as Pinnacle's CEO.

94.

Plaintiff reasonably relied on Defendants' false representations concerning the 15% equity in Pinnacle in continuing his work for Defendants and repeatedly renewing the 2014 Employment Agreement, as Defendants repeatedly represented in both actions and words that Plaintiff had such equity.

95.

As a direct and proximate result of Defendants' false misrepresentations to Plaintiff concerning his 15% equity in Pinnacle, Plaintiff has been substantially harmed.

96.

Plaintiff is entitled to recover from Defendants damages equal to the harm caused by their fraudulent misrepresentations, punitive damages, interest, and attorneys' fees and costs.

**COUNT VI**
**Breach of Contract—Breach of the Repurchase Agreement**
**<u>(against Vineyard)</u>**

97.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

98.

Under the Repurchase Offer extended to Plaintiff by Vineyard, Vineyard offered to repurchase from Plaintiff 1,600 Units at a price of $[redacted] per Unit.

99.

Plaintiff timely accepted the Repurchase Offer without reservation, thereby creating the Repurchase Agreement between him and Vineyard.

100.

The Repurchase Agreement imposed upon Vineyard a duty of good faith and fair dealing.

101.

Vineyard, as the master of the Repurchase Offer, assented to its terms.

102.

Plaintiff assented to the terms of the Repurchase Offer by timely accepting the same without reservation.

103.

In breach of the Repurchase Agreement, Vineyard has refused to repurchase Plaintiff's 1,600 Units at the agreed-upon price of $[redacted] per Unit.

104.

As a result of Vineyard's breach of the Repurchase Agreement, it is liable to Plaintiff for breach of contract in the amount of at least $564,800, plus interest and attorneys' fees and costs.

**COUNT VII**
**Fraudulent Misrepresentation—Repurchase Agreement**
**(against Defendants)**

105.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

106.

Defendants falsely represented to Plaintiff that they would repurchase his Units at a fixed price of $[redacted] per Unit.

107.

Defendants' representations to Plaintiff concerning the Repurchase Offer were knowingly false.

108.

Defendants made the false representations to Plaintiff concerning the Repurchase Offer to induce him to accept that Offer, which Defendants then used as pretext for terminating him.

109.

Plaintiff reasonably relied on Defendants' false representations concerning the Repurchase Agreement in deciding to accept that Offer.

110.

As a direct and proximate result of Defendants' false misrepresentations to Plaintiff concerning the Repurchase Offer, Plaintiff has been substantially harmed.

111.

Plaintiff is entitled to recover from Defendants damages equal to the harm caused by their fraudulent misrepresentations, punitive damages, interest, and attorneys' fees and costs.

**COUNT VIII**
**Punitive Damages**
**(against Defendants)**

112.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

113.

Defendants have acted in bad faith and with a callous disregard for Plaintiff's rights.

114.

Defendants' actions constitute willful misconduct, malice, oppression, and that entire want of care which shows a conscious indifference to the consequences.

115.

By performing the foregoing acts, Defendants acted with the intent to injure Plaintiff, and with malice, oppression, and/or fraud.

116.

Thus, Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined by the enlightened conscience of a jury at trial.

**COUNT IX**
**Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11**
**(against Defendants)**

117.

Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

118.

Defendants have acted in bad faith, including, but not limited to, their breaches of the Equity and Repurchase Agreements, by never intending to honor them at the outset, and by later refusing to provide Plaintiff compensation and payments to which he is entitled.

119.

By at least refusing to pay Plaintiff the compensation and payments that he is owed, Defendants have acted in bad faith, have been stubbornly litigious, and have caused him unnecessary trouble and expense. Defendants forced the litigation by failing to negotiate or even provide a written response to Plaintiff's demand letter after promising to do so.

120.

Pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to his expenses of litigation, including attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and prays for judgment in his favor and the following relief against Defendants, jointly and severally:

a. Compensatory damages in an amount to be proven at trial;

i. With respect to the Repurchase Agreement, such compensatory damages shall be determined by a jury but are not less than $564,800;

ii. With respect to the Equity Agreement, such compensatory damages shall be determined by a jury but are not less than $6,000,000;

b.      Punitive damages in an amount to be determined at trial but not

less than **TWO MILLION DOLLARS** ($2,000,000);

c.      Pre-judgment and post-judgment interest at the applicable rates;

d.      Plaintiff's attorneys' fees and expenses of litigation; and

e.      All such other relief as this Court may deem just and proper.

Respectfully submitted this 28th day of March 2023.

*/s/ Richard L. Robbins*
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Catherine C. Sullivan
Georgia Bar No. 957620
csullivan@robbinsfirm.com
Michael D. Forrest
Georgia Bar No. 974300
mforrest@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

*Counsel for Plaintiff*

# EXHIBIT A



### 2022 Top 20 Private Equity Ranking

March 22, 2022

Vineyard Capital Partners is pleased to announce that Atlanta Business Chronicle has once again named us one of the top 20 private equity firms in Atlanta—for the sixth year. Vineyard manages $230 million in assets which are invested with proven businesses and talented management teams. Assets have doubled in size over the past few years, as its partners […]

READ MORE ›

---

### Investment in Funeral Home Operator

January 5, 2022

Vineyard made a significant investment this week in a multi-location funeral home operator based in the New England. The company currently owns six locations and has plans to acquire other funeral businesses in the region to meet the need of retiring funeral home owners selling their businesses. Vineyard is one of the nation's […]

READ MORE ›

---

### Vineyard invests in new Dental Services Organization

December 21, 2021

Vineyard Capital initiated investment in a new Dental Service Organization this week with the name Infinite Dental, LLC. The company's founding coincided with the acquisition of two dental practices in north Georgia. Sam Kim, Vineyard's dental operating partner, will lead operational and growth strategy for the businesses. Infinite Dental plans to continue its […]

READ MORE ›

---

### Top 20 Private Equity Ranking

May 9, 2021

Atlanta Business Chronicle recognized Vineyard Capital Partners recently on its list of top Atlanta private equity firms. With $155 million in assets under management, Vineyard was founded in 2003 with a focus on supporting the growth of proven entrepreneurs and management teams. "It's an honor for our team to be recognized", commented Jeff Boutwell, […]

READ MORE ›

### 2020 – Another busy year for Vineyard's partners

March 31, 2021

Vineyard's invested operating partners acquired a combined 15 businesses in 2020, for a combined $40 million in value. While we had a couple operating partners that experienced significant challenges during the pandemic and related isolation requirements, the overwhelming majority of our invested businesses performed well and even found opportunities to improve their service and […]

READ MORE ›

### Record year of Investments

January 15, 2020

Vineyard Capital and its operating partners had a record year in 2019, with each of its four major partners expanding through acquisitions and achieving individual records for revenues and profits earned. Combined, Vineyard's partners acquired 18 new business locations, bringing the combined total to 85 separate businesses invested in through Vineyard's platform. Earlier in 2019, […]

READ MORE ›

### Completion of Equity Issuance

June 24, 2019

Vineyard Capital Partners completed an equity issuance this month which will expand its limited partner investors to just over 100 members. Management projects that total assets under management should exceed $200M in the next year as the funds are invested with operating partners. Jeff Boutwell, managing partner commented, "We're grateful to have such a […]

READ MORE ›

### Expansion of Acquisition Funding Program

June 22, 2019

Vineyard Capital recently expanded its commitment to its Operating Partners by issuing new equity units and bringing in significant additional investments funds. The company welcomed approximately 15 new investors and also received additional funds from approximately 40 of its current investors. With these available funds, Vineyard has committed approximately $75M in new acquisition funding to its […]

READ MORE ›

### Completion of Residential Development in north Atlanta

May 31, 2019

Vineyard Capital is pleased to announce the completion of its partnership with Georgia Land Development Partners. The $3M+ project created 40 home sites on approximately 20 acres of land near the Windermere Country Club. Andrew Butler, portfolio manager at Vineyard, commented "The project was a little more challenging than expected, however, I think everyone is […]

READ MORE ›

### Partnership to Redevelop North Atlanta Office Property

February 27, 2019

Vineyard Capital Partners, LLC has completed a transaction to become the majority equity partner in a 200,000 square foot commercial real estate redevelopment project. The partnership and project will be managed by and co-owned with Cone Commercial Real Estate, an experienced Atlanta based firm. The approximate $25 million project will include renovating the properties, […]

READ MORE ›

---

### Atlanta Business Chronicle recognizes Vineyard Capital as a top 20 Private Equity Group

January 12, 2019

Vineyard Capital Partners, LLC was notified this week that it had been recognized again as one of the Top 20 Private Equity Groups in Atlanta for 2018/2019. Vineyard's assets have increased to $140 million in the last several years and investors have realized a 10 year average return of approximately 16% annually. "Vineyard's […]

READ MORE ›

---

### Partnership to Develop 40 Home Sites in North Georgia.

January 4, 2018

Vineyard Capital Partners, LLC partnered this month with Georgia Land Development Partners, LLC to develop 20 acres of land in to 40 home sites. The development is located adjacent to the Windermere Country Club and is expected to be completed in late 2018.

READ MORE ›

---

### Partnership with Regional Dental Group

November 15, 2017

Vineyard Capital Partners, LLC is happy to announce its recent partnership with Bela Dentistry, LLC. Vineyard will provide expansion capital to fund acquisitions and start-ups of dental practice locations throughout the Southeastern United States. With approximately 8 current locations, the funding partnership is designed to fund Bela's expansion to as many as 50 locations […]

READ MORE ›

---

### Atlanta Business Chronicle Awards Vineyard Capital Partners, LLC as Top 100 Fastest Growing Privately Held Companies in Atlanta

April 28, 2017

Vineyard Capital Partners, LLC was recognized recently as one of the top 100 private companies in Atlanta. The Pacesetter recognition is awarded to Atlanta based companies with minimum 50% revenue growth over the prior three years. With 90% revenue growth from 2014 – 2016, Vineyard ranked #69 overall.

READ MORE ›

## Partnership with Residential Mortgage Servicing

April 1, 2017

Vineyard Capital Partners, LLC is pleased to announce a partnership with an experienced management team that specializes in residential mortgage servicing. The partnership will acquire a large portfolio of delinquent mortgages or foreclosed properties and then work with each property to find reasonable solutions. In some cases the mortgage and payment amounts may be reduced to encourage the owners […]

READ MORE ›

---

## Top 20 Private Equity Group – Atlanta Business Chronicle

March 24, 2017

Vineyard Capital Partners, LLC was notified this week that it had been recognized as one of the Top 20 Private Equity Groups in Atlanta. The fund has doubled in size in the last few years to now include more than $100 million in assets under management. Jeff Boutwell, Managing Partner, commented "Vineyard's growth is a direct result […]

READ MORE ›

---

## Second Recognition by Inc 5000 Magazine

September 6, 2016

In 2016, for the second year in a row, Vineyard Capital Partners, LLC was listed in Inc. Magazine on their annual list of fastest growing companies in the US. Vineyard ranked as #863 on the list of 5,000 top businesses with a 3-year revenue growth of 461%. Vineyard's unique model of investing with talented and experienced […]

READ MORE ›

---

## Expansion into Hospitality Industry

March 6, 2016

Vineyard Capital Partners, LLC invested recently with an operating partner to be majority owner of two hotels located in Indiana and Illinois. The hotels will both undergo relatively significant renovations to improve guest experience and to more modernize the facilities. Jeff Boutwell, Managing Partner, added "We're very excited about teaming up with our operating partner […]

READ MORE ›

---

## Vineyard Capital Partners, LLC Recognized in Inc. 5000 with Three-Year Sales Growth of 320%

August 20, 2015

Vineyard Capital Partners, a leading financier to the funeral industry, recognized as one of the fastest growing private companies in America.

READ MORE ›

## Vineyard Expands Funeral Industry Partnerships

July 30, 2014

July, 2013,  In the past year, Vineyard added three new funeral home operating partners that is assisting with funding for acquisitions.     Jeff Boutwell, Managing Partner, commented "We're excited to continue to expand our relationships in the funeral industry as we work with company's and individuals that are growing through acquisitions.   We truly believe we have partnered with some the most experienced and […]

READ MORE ›

# EXHIBIT B

**EMPLOYMENT AGREEMENT**
**MANAGING MEMBER – PINNACLE FUNERAL SERVICE, LLC**
**Paul Haarer**

This Agreement, dated effective as of June 1, 2014 between Pinnacle Funeral Service, LLC., a Georgia corporation ("Company") which is a subsidiary of Vineyard Financing, LLC, a Florida corporation ("Vineyard"), and Paul Haarer, a resident of Georgia ( "Haarer" or "Employee").

3. **Compensation.**

The Company will pay Haarer annual compensation calculated as:

- **Base Salary:** [redacted] annually, paid in equal bi-monthly installments.
- **Bonuses:** Distributions from the Company will be made to Vineyard as excess funds accumulate – whether from profitable operations or the sale of owned business locations. As those distributions are made to Vineyard, Haarer shall receive a 15% bonus for all distributions made to Vineyard. So that if $100,000 is distributed from the Company, Haarer shall receive $15,000 and Vineyard shall receive $85,000. This distribution shall be after the [redacted] preferred payment is made to any equity that Vineyard has invested in Company. Vineyard's equity in Pinnacle as of this date is $[redacted] this is calculated as Vineyard's initial equity $[redacted] less $[redacted] allocated to [redacted]

# EXHIBIT C

**phaarer@live.com**

| | |
|---|---|
| **From:** | Jeff Boutwell <jeff@newbridgegroup.com> |
| **Sent:** | Sunday, July 12, 2015 2:31 PM |
| **To:** | Paul Haarer |
| **Subject:** | Pinnacle - 5 year summary proforma |
| **Attachments:** | Pinnacle - Summary - 5 years - 2015.xls |

See what you think about this.   We can meet about it tomorrow.

**Jeff Boutwell**
NewBridge Group
1175 Peachtree Street, NE
Suite 1425
Atlanta, GA 30361
404-249-9582 office
888-317-2654 fax
Keep up with who's buying, who's selling, succession planning, and financing strategies.
Click here to subscribe to our eNewsletter.



**Confidentiality Notice:** The information contained in this message may be privileged, confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or any employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

**PINNACLE FUNERAL SERVICE**
**Projected 5 year Summary Cash Flow**



PAUL
Paul's Annual Cash Flow
Paul's Equity
Total Equity - 15% of margin

# EXHIBIT D

**phaarer@live.com**

| | |
|---|---|
| **From:** | Jeff Boutwell <jeff@newbridgegroup.com> |
| **Sent:** | Tuesday, September 1, 2015 12:12 PM |
| **To:** | Paul Haarer |
| **Subject:** | compensation summary |

From our conversation earlier I thought I'd run these numbers on your total compensation since you took over Pinnacle. Let me know if you think I missed something.

value of 15% equity in Pinnacle appreciation since purchase

total equity

**Jeff Boutwell**
NewBridge Group
1175 Peachtree Street, NE
Suite 1425
Atlanta, GA 30361
404-249-9582 office
888-317-2654 fax
Keep up with who's buying, who's selling, succession planning, and financing strategies.
Click here to subscribe to our eNewsletter.

**Confidentiality Notice:** The information contained in this message may be privileged, confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or any employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

# EXHIBIT E

8/27/16

**RE: Renewal of Pinnacle Management Agreement**

Paul,

Sorry for the delay in getting responses back to you. We can talk in person about these, but thought it'd be easier to give you a written response first.

Before responding directly to your specific requests, I want to thank you again for your strong leadership of Pinnacle. I really appreciate the way that you've taken charge and are leading Pinnacle to keep everything running smoothly and to continue to find ways to grow and improve.

Our hope for Pinnacle – which is what we've communicated to Vineyard's investors - is to continue aggressive growth for at least the next five years. Accordingly, as Pinnacle's CEO, we want your compensation formula to provide significant compensation to you for achieving that growth in revenues and profits. Because you took the CEO position at a time when Pinnacle was not yet very profitable, we understood you needed a base compensation. Beyond that base, however, we want your compensation to be directly aligned with our investor's goals of growth in revenues and profits, meaning the more you make for the investors, the more you make personally.

So it's with that spirit of that full alignment in mind that I respond to each of your requests:

- It looks like you're annualized to make about $[redacted] compensation in 2016.
    - This doesn't include the approximate $[redacted] equity value we believe you have in Pinnacle.



3. Termination fee:

We could add that Pinnacle would pay you for 2/3 of the 15% accretion created if you leave or 100% of equity created if you stay until we find a replacement or merge or sell the company

9. Added bonuses for start-ups.

We feel the incentives already in place for start-ups should be enough:

- 15% of value created and cash flow to you

From the annualized 6 months P&L ending [redacted] it appears the equity created in Pinnacle is about [redacted] so you have about [redacted] in equity built up.

Jeff

# EXHIBIT F

**phaarer@live.com**

**From:** Jeff Boutwell <jeff@newbridgegroup.com>
**Sent:** Monday, March 13, 2017 2:30 PM
**To:** Paul Haarer
**Subject:** draw on accretion

The draw you described below sounds good. I talked to my father over the weekend to explain it to him and said I thought there was about [redacted] of total accretive equity in Pinnacle. So I thought us recognizing [redacted] of it now wasn't a big risk. [redacted]

*As previously discussed, towards the end of this month (let's target Monday the 27th) I plan to draw on the main capital account [redacted] an amount of [redacted] to get some equity out. This will increase Pinnacle debt by [redacted] and I will then make a distribution of [redacted] back to Vineyard and [redacted] (15%) to myself.*

**Jeff Boutwell**
NewBridge Group
1175 Peachtree Street, NE
Suite 1425
Atlanta, GA 30361
404-249-9582 office
888-317-2654 fax
Keep up with who's buying, who's selling, succession planning, and financing strategies.
Click here to subscribe to our eNewsletter.

NEWBRIDGE GROUP

**Confidentiality Notice:** The information contained in this message may be privileged, confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or any employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

# EXHIBIT G



2017
4
April
Account Balances
Main Capital Account
Adjustments
Andrew Butler:
Realization of Equity Value Increase (85% Vineyard/15% Paul) - per Jeff & Paul

# EXHIBIT H

**From:** Veronica Case <veronica@vineyardcp.com>
**Sent:** Friday, June 4, 2021 9:00 AM
**To:** Paul Haarer <paul@pinnaclefunerals.com>
**Cc:** Jeff Boutwell <jeff@newbridgegroup.com>
**Subject:** Pinnacle Q1 21 Valuation

Good morning, Paul!

Attached is the Pinnacle valuation as of 3/31/21.

Please let us know if you have any comments.

Veronica Case, CPA
**Chief Operating Officer**
**Vineyard Capital Partners, LLC**
**P. O. Box 79201**
**Atlanta, GA 30357**

Office: 404.720.0804
Mobile: 404.512.5272

Pinnacle Funeral Service
Summary Valuation & Debt
3/31/2021
Pinnacle Equity
Equity post lease
Accretion
15% to Paul
85% to Vineyard
Accretion

# EXHIBIT I

**Paul Haarer**

**From:** Vineyard Capital Partners <jeff@newbridgegroup.com>
**Sent:** Wednesday, July 27, 2022 9:53 AM
**To:** Paul Haarer
**Subject:** Vineyard Capital - June 30, 2022 Investor Report

VINEYARD
CAPITAL PARTNERS, L.L.C.

July 27, 2022

Dear Vineyard Investor,

Please follow this link to the **June 30, 2022 Report.**

We cover the following topics:

- Offer to re-purchase units from Investors

Please let us know if you have any questions.

| ***Jeff Boutwell*** | ***Ken Boutwell*** | ***Veronica Case*** |
|---|---|---|
| Managing Member | Managing Member | Chief Operating Officer |
| jeff@vineyardcp.com | ken@vineyardcp.com | veronica@vineyardcp.com |

NEWS ABOUT OPERATING
PARTNERS INVESTORS LEADERSHIP CONTACT

Vineyard Capital Partners, LLC | 3320 Thomasville Rd, Suite 200, Tallahassee, FL 32308 |
www.newbridgegroup.com | info@newbridgegroup.com | Unsubscribe | Privacy Policy

# INVESTOR INFORMATION
## JUNE 2022

**Opportunity to Redeem**

To provide investors with liquidity, we are offering to repurchase up to [redacted] equity units at the current value of $[redacted] per unit. This offer expires September 30, 2022, so please contact us before then if you wish to sell any of your units.

Please contact Tamra Crews at tamra@vineyardcp.com for documents necessary to facilitate either a sale of current units or purchase of new units under the offering.

# EXHIBIT J

**From:** Jeff Boutwell <jeff@newbridgegroup.com>
**Sent:** Friday, September 30, 2022 10:11 AM
**To:** Paul Haarer <paul@pinnaclefunerals.com>; Tamra Crews <tamra@vineyardcp.com>
**Subject:** RE: sale of VY units

Thanks Paul. We received your request prior to Sept 30, as requested in the investor report. I'll get back to first of next week on the redemption.

Jeff Boutwell
Managing Partner

4830 W. Kennedy Blvd.
Suite 600
Tampa, FL 33609
Cell: 404-316-3316
Web: www.newbridgegroup.com

**From:** Paul Haarer <paul@pinnaclefunerals.com>
**Sent:** Friday, September 30, 2022 10:05 AM
**To:** Tamra Crews <tamra@vineyardcp.com>; Jeff Boutwell <jeff@newbridgegroup.com>
**Subject:** RE: sale of VY units

Good morning Tamra and Jeff,

Below are my certificate numbers for my [REDACTED] equity units:

[REDACTED]

Please confirm whether I will receive payment today or Monday Oct 3rd, based on the June 30 2022 Investor Report allowing all investors liquidity to redeem units.

Please use the same bank account as my standard monthly distributions for the payment. Thanks and have a great weekend.

Sincerely,
Paul Haarer
Cell 770-335-6420

7742 Spalding Dr., #353
Norcross, GA 30092
770-674-5908 Direct
888-758-0746 Fax
www.PinnacleFunerals.com

---

**From:** Paul Haarer
**Sent:** Wednesday, September 28, 2022 3:00 PM
**To:** tamra@vineyardcp.com
**Subject:** sale of VY units

Hi Tamra,

Per our discussion, I will sell my remaining [REDACTED] Vineyard units at the redemption price of $[REDACTED] for a total of $[REDACTED]. Please also add the [REDACTED] [REDACTED]. Please transfer the funds into the same account where I currently receive distributions.

Once I get the required form you discussed, I can provide the certificate numbers.

I know from the July report that the deadline is Friday so I wanted to let you know before that time. Thanks in advance.

Sincerely,
Paul Haarer
Cell 770-335-6420

7742 Spalding Dr., #353
Norcross, GA 30092
770-674-5908 Direct
888-758-0746 Fax
www.PinnacleFunerals.com

# EXHIBIT K



September 30, 2022

Mr. Paul Haarer

Re:  Termination of Employment

Paul,

Per our discussion earlier today, Vineyard Capital Partners, LLC has made the decision to terminate your employment with Pinnacle Funeral Service, LLC effective today, September 30, 2022.



Jeff Boutwell
Managing Member