# EXHIBIT D

Fulton County Superior Court
***EFILED***MH
Date: 5/8/2023 12:16 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

PAUL HAARER,                            )
                                       )
     Plaintiff,                       )
                                       )
v.                                     )        Civil Action File No.:
                                       )        2023-CV-378125
VINEYARD CAPITAL PARTNERS, L.L.C.      )
and PINNACLE FUNERAL SERVICE, LLC,     )
                                       )
     Defendants.                      )
                                       )
_____

## **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

This matter belongs in arbitration and Defendants have simultaneously filed a Motion to Compel Arbitration of this action.  Out of an abundance of caution and pursuant to O.C.G.A. § 9-11-12, however, Vineyard Capital Partners, L.L.C. ("Vineyard") and Pinnacle Funeral Service, LLC ("Pinnacle") hereby file this Answer to Plaintiff's Complaint for Damages. In doing so, Defendants do not waive any argument they have this matter belongs in arbitration and reserve all rights.  Defendants hereby answer the individually numbered paragraphs in the Complaint as follows:

## I.    **INTRODUCTION AND SUMMARY OF CLAIMS**

Answering the Introduction and Summary of Claims section of the Complaint, Defendants respond that this section of the Complaint is an argumentative summary of Plaintiff's purported claims and not individual factual allegations; thus, no response is required. To the extent a response is required, Defendants deny the allegations in this Section, deny any wrongdoing or liability, and deny that Plaintiff is entitled to any relief whatsoever. Responding further, Defendants state that all written documents referenced in this section speak for themselves.

## II.      THE PARTIES

1.

Upon information and belief, Defendants admit the allegations set forth in Paragraph 1 of the Complaint.

2.

Defendants admit the allegations set forth in Paragraph 2 of the Complaint.

3.

Answering Paragraph 3 of the Complaint, Defendants admit that Vineyard is a Florida limited liability company, which may be served on its registered agent, Tamra Crews, at 190 Ryan Lane, Covington, Georgia 30014.  Except as specifically admitted herein, Defendants deny all remaining allegations in Paragraph 3 of the Complaint.

## III.      JURISDICTION AND VENUE

4.

Defendants deny the allegations set forth in Paragraph 4 of the Complaint.

5.

Defendants deny the allegations set forth Paragraph 5 of the Complaint.

## IV.      FACTUAL ALLEGATIONS

**A.      "Mr. Haarer Served as CEO for Pinnacle for Many Years, Creating Significant Shareholder Value."[1]**

6.

Defendants admit the allegations set forth in Paragraph 6 of the Complaint.

---

[1] Defendants deny the allegations set forth in this Subheading "A."

7.

Defendants deny the allegations set forth in Paragraph 7 of the Complaint.

8.

Answering the allegations set forth in Paragraph 8 of the Complaint, Defendants admit that Attachment A of the Complaint appears to be a printed copy of the "News" section of Vineyard's website.  Except as specifically admitted herein, Defendants deny all remaining allegations set forth in Paragraph 8 of the Complaint.

9.

Defendants admit the allegations set forth in Paragraph 9 of the Complaint.

10.

Defendants deny the allegations set forth in Paragraph 10 of the Complaint.

11.

Defendants admit the allegations set forth in Paragraph 11 of the Complaint.

12.

Answering the allegations in Paragraph 12 of the Complaint, Defendants admit that Vineyard is the sole member of Pinnacle, acts on Pinnacle's behalf as its agent, and is involved in certain decisions related to Pinnacle's growth strategies, bank financing, certain employment decisions, and tax filings.  Except as specifically admitted herein, Defendants deny all remaining allegation set forth in Paragraph 12 of the Complaint.

13.

Answering the allegations in Paragraph 13 of the Complaint, Defendants admit that Plaintiff executed an employment agreement (the "2014 Employment Agreement") when he was retained by Vineyard to serve as the Managing Member of Pinnacle.  Except as specifically

admitted herein, Defendants deny all remaining allegations set forth in Paragraph 13 of the Complaint.

14.

Answering the allegations in Paragraph 14 of the Complaint, Defendants admit that Vineyard dictated the terms of the 2014 Employment Agreement, closely controls Pinnacle, and regularly dictated Plaintiff's goals as Pinnacle's Managing Member.   Except as specifically admitted herein, Defendants deny all remaining allegations set forth in Paragraph 14 of the Complaint.

15.

Defendants admit the allegations set forth in Paragraph 15 of the Complaint.

16.

Defendants deny the allegations set forth in Paragraph 16 of the Complaint.

17.

Defendants deny the allegations set forth in Paragraph 17 of the Complaint.

18.

Defendants deny the allegations set forth in Paragraph 18 of the Complaint.

19.

Defendants admit the allegations set forth in Paragraph 19 of the Complaint.

20.

Defendants deny the allegations set forth in Paragraph 20 of the Complaint.

21.

Answering the allegations set forth in Paragraph 21 of the Complaint, Defendants admit that Pinnacle was named one of Georgia's "Fast 40" by ACG Atlanta.   Except as specifically

admitted herein, and to the extent Paragraph 21 alleges or implies that Pinnacle's success is a result of Plaintiff's efforts, Defendants deny all remaining allegations set forth in Paragraph 21 of the Complaint.

**B.**      **"Vineyard Reneges on the Equity Agreement."[2]**

22.

Defendants deny the allegations set forth in Paragraph 22 of the Complaint.

23.

Defendants deny the allegations set forth in Paragraph 23 of the Complaint.

24.

Defendants deny the allegations set forth in Paragraph 24 of the Complaint.

25.

Defendants deny the allegations set forth in Paragraph 25 of the Complaint.

26.

Defendants deny the allegations set forth in Paragraph 26 of the Complaint.

27.

Answering the allegations set forth in Paragraph 27 of the Complaint, Defendants admit only that Jeff Boutwell communicated with Plaintiff regarding "15% accretion."   Except as specifically admitted herein, Defendants deny all remaining allegations in Paragraph 27 of the Complaint.

28.

Answering the allegations set forth in Paragraph 28 of the Complaint, Defendants admit only that Jeff Boutwell communicated with Plaintiff regarding "total accretive equity."  Except as

---

[2] Defendants deny the allegations set forth in this Subheading "B."

specifically admitted herein, Defendants deny all remaining allegations in Paragraph 28 of the Complaint.

29.

Defendants deny the allegations set forth in Paragraph 29 of the Complaint.

30.

Defendants deny the allegations set forth in Paragraphs 30 of the Complaint.

31.

Defendants deny the allegations set forth in Paragraph 31 of the Complaint.

32.

Defendants deny the allegations set forth in Paragraph 32 of the Complaint.

33.

Defendants deny the allegations set forth in Paragraph 33 of the Complaint.

34.

Defendants deny the allegations set forth in Paragraph 34 of the Complaint.

35.

Defendants deny the allegations set forth in Paragraph 35 of the Complaint.

36.

Answering the allegations set forth in Paragraph 36 of the Complaint, Defendants admit only that Vineyard did not renew the 2014 Employment Agreement as written in 2022, and that Vineyard never granted an ownership or equity interest in Pinnacle to Plaintiff via contract or otherwise.   Except as specifically admitted herein, Defendants deny all remaining allegations set forth in Paragraph 36 of the Complaint.

37.

Defendants deny the allegations set forth in Paragraph 37 of the Complaint in the form and manner alleged.

**C.    "Vineyard Made a Formal Offer to Repurchase Units from Investors, including Mr. Haarer, which Mr. Haarer Timely Accepted without Reservations."[3]**

38.

Answering the allegations set forth in Paragraph 38 of the Complaint, Defendants admit that Plaintiff joined Vineyard as a Member on or about January 16, 2015, via a Joinder Agreement. Pursuant to the Joinder Agreement, Plaintiff was given an option to purchase a certain number of Units in Vineyard at a specified price.  Except as specifically admitted herein, Defendants deny all remaining allegations set forth in Paragraph 38 of the Complaint.

39.

Defendants admit the allegations set forth in Paragraph 39 of the Complaint.

40.

Defendants admit the allegations set forth in Paragraph 40 of the Complaint.

41.

Defendants deny the allegations set forth in Paragraph 41 of the Complaint.

42.

Answering the allegations set forth in Paragraph 42 of the Complaint, Defendants admit that Exhibit I to the Complaint appears to be a July 27, 2022 Investor Report.  Except as specifically admitted herein, Defendants deny all remaining allegations in Paragraph 42 of the Complaint.

---

[3] Defendants deny the allegations set forth in Subheading "C."

43.

Defendants admit the allegations set forth in Paragraph 43 of the Complaint.

44.

Answering the allegations set forth in Paragraph 44 of the Complaint, Defendants admit that Plaintiff attempted to accept Vineyard's offer to repurchase units.   Except as specifically admitted herein, Defendants deny all remaining allegations in Paragraph 44 of the Complaint.

45.

Answering the allegations set forth in Paragraph 45 of the Complaint, Defendants admit that Plaintiff attempted to accept Vineyard's offer to repurchase units.   Except as specifically admitted herein, Defendants deny all remaining allegations in Paragraph 45 of the Complaint.

46.

Defendants admit the allegations set forth in Paragraph 46 of the Complaint.

47.

Defendants admit the allegations set forth in Paragraph 47 of the Complaint.

48.

Defendants deny the allegations set forth in Paragraph 48 of the Complaint.

49.

Answering the allegations set forth in Paragraph 49 of the Complaint, Defendants admit only that Plaintiff was terminated by Vineyard on September 30, 2022. Except as specifically admitted herein, Defendants deny all remaining allegations set forth in Paragraph 49 of the Complaint.

50.

Defendants admit the allegations set forth in Paragraph 50 of the Complaint.

51.

Defendants deny the allegations set forth in Paragraph 51 of the Complaint.

52.

Defendants deny the allegations set forth in Paragraph 52 of the Complaint.

53.

Defendants deny the allegations set forth in Paragraph 53 of the Complaint.

54.

Defendants deny the allegations set forth in Paragraph 54 of the Complaint.

55.

Defendants deny the allegations set forth in Paragraph 55 of the Complaint.

56.

Defendants deny the allegations set forth in Paragraph 56 of the Complaint.

57.

Defendants deny the allegations set forth in Paragraph 57 of the Complaint.[4]

### COUNT I
### Breach of Contract—Breach of the Equity Agreement
### (against Defendants)

58.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth fully herein.

59.

Defendants deny the allegations set forth in Paragraph 59 of the Complaint.

---

[4] To the extent a response is required to footnote 2 of the Complaint, Defendants deny that they discriminated against Plaintiff in any way, deny any wrongdoing or liability, and deny that Plaintiff is entitled to any relief whatsoever.

60.

Defendants deny the allegations set forth in Paragraph 60 of the Complaint.

61.

Defendants deny the allegations set forth in Paragraph 61 of the Complaint.

62.

Defendants deny the allegations set forth in Paragraph 62 of the Complaint.

63.

Defendants deny the allegations set forth in Paragraph 63 of the Complaint.

64.

Defendants deny the allegations set forth in Paragraph 64 of the Complaint.

65.

Defendants deny the allegations set forth in Paragraph 65 of the Complaint.

66.

Defendants deny the allegations set forth in Paragraph 66 of the Complaint.

**COUNT II**
**(PLED IN THE ALTERNATIVE)**
**Unjust Enrichment—Equity Agreement**
**(against Defendants)**

67.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth

fully herein.

68.

Defendants deny the allegations set forth in Paragraph 68 of the Complaint.

69.

Defendants deny the allegations set forth in Paragraph 69 of the Complaint.

70.

Defendants deny the allegations set forth in Paragraph 70 of the Complaint.

71.

Defendants deny the allegations set forth in Paragraph 71 of the Complaint.

72.

Defendants deny the allegations set forth in Paragraph 72 of the Complaint.

73.

Defendants deny the allegations set forth in Paragraph 73 of the Complaint.

**COUNT III**
**(PLED IN THE ALTERNATIVE)**
**Promissory Estoppel—Equity Agreement**
**(against Defendants)**

74.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth

fully herein.

75.

Defendants deny the allegations set forth in Paragraph 75 of the Complaint.

76.

Defendants deny the allegations set forth in Paragraph 76 of the Complaint.

77.

Defendants deny the allegations set forth in Paragraph 77 of the Complaint.

78.

Defendants deny the allegations set forth in Paragraph 78 of the Complaint.

79.

Defendants deny the allegations set forth in Paragraph 79 of the Complaint.

80.

Defendants deny the allegations set forth in Paragraph 80 of the Complaint.

81.

Defendants deny the allegations set forth in Paragraph 81 of the Complaint.

## COUNT IV
## (PLED IN THE ALTERNATIVE)
## Quantum Meruit—Equity Agreement
## (against Defendants)

82.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth

fully herein.

83.

Defendants deny the allegations set forth in Paragraph 83 of the Complaint.

84.

Defendants deny the allegations set forth in Paragraph 84 of the Complaint.

85.

Defendants deny the allegations set forth in Paragraph 85 of the Complaint.

86.

Defendants deny the allegations set forth in Paragraph 86 of the Complaint.

87.

Defendants deny the allegations set forth in Paragraph 87 of the Complaint.

88.

Defendants deny the allegations set forth in Paragraph 88 of the Complaint.

89.

Defendants deny the allegations set forth in Paragraph 89 of the Complaint.

## COUNT V
## Fraudulent Misrepresentation—Equity Agreement
## <u>(against Defendants)</u>

90.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth fully herein.

91.

Defendants deny the allegations set forth in Paragraph 91 of the Complaint.

92.

Defendants deny the allegations set forth in Paragraph 92 of the Complaint.

93.

Defendants deny the allegations set forth in Paragraph 93 of the Complaint.

94.

Defendants deny the allegations set forth in Paragraph 94 of the Complaint.

95.

Defendants deny the allegations set forth in Paragraph 95 of the Complaint.

96.

Defendants deny the allegations set forth in Paragraph 96 of the Complaint.

## COUNT VI
## Breach of Contract—Breach to the Repurchase Agreement
## <u>(against Vineyard)</u>

97.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth fully herein.

98.

Defendants deny the allegations set forth in Paragraph 98 of the Complaint.

99.

Defendants deny the allegations set forth in Paragraph 99 of the Complaint.

100.

Defendants deny the allegations set forth in Paragraph 100 of the Complaint.

101.

Defendants deny the allegations set forth in Paragraph 101 of the Complaint.

102.

Defendants deny the allegations set forth in Paragraph 102 of the Complaint.

103.

Defendants deny the allegations set forth in Paragraph 103 of the Complaint.

104.

Defendants deny the allegations set forth in Paragraph 104 of the Complaint.

**COUNT VII**
**Fraudulent Misrepresentation—Repurchase Agreement**
**<u>(against Defendant)</u>**

105.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth

fully herein.

106.

Defendants deny the allegations set forth in Paragraph 106 of the Complaint.

107.

Defendants deny the allegations set forth in Paragraph 107 of the Complaint.

108.

Defendants deny the allegations set forth in Paragraph 108 of the Complaint.

109.

Defendants deny the allegations set forth in Paragraph 109 of the Complaint.

110.

Defendants deny the allegations set forth in Paragraph 110 of the Complaint.

111.

Defendants deny the allegations set forth in Paragraph 111 of the Complaint.

## COUNT VIII
## Punitive Damages
## <u>(against Defendants)</u>

112.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth

fully herein.

113.

Defendants deny the allegations set forth in Paragraph 113 of the Complaint.

114.

Defendants deny the allegations set forth in Paragraph 114 of the Complaint.

115.

Defendants deny the allegations set forth in Paragraph 115 of the Complaint.

116.

Defendants deny the allegations set forth in Paragraph 116 of the Complaint.

**COUNT IX**
**Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11**
**(against Defendants)**

117.

Defendants reallege and reincorporate the preceding answers and defenses as if set forth fully herein.

118.

Defendants deny the allegations set forth in Paragraph 118 of the Complaint.

119.

Defendants deny the allegations set forth in Paragraph 119 of the Complaint.

120.

Defendants deny the allegations set forth in Paragraph 120 of the Complaint.

**PRAYER FOR RELIEF**

Responding to the unnumbered Paragraph immediately following Paragraph 120 of the Complaint, beginning "WHEREFORE" and constituting Plaintiff's Prayer for Relief, Defendants deny that Plaintiff is entitled to any relief requested under any theory at law or in equity, whether sought by Plaintiff in subparts (a) through (e) of the same Paragraph or otherwise.

Unless expressly admitted herein, Defendants deny any remaining allegations set forth in the Complaint.

## AFFIRMATIVE DEFENSES

In addition to the foregoing admissions and denials, Defendants assert the following defenses:

## FIRST DEFENSE

Plaintiff's claims are subject to binding arbitration and should not proceed in this forum or venue.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, because he fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's own misconduct, bad faith, dishonesty, and fraud.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, estoppel, ratification, accord and satisfaction, payment, and/or unclean hands.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to satisfy all conditions precedent to Defendants' obligations to perform under any contract.

## SIXTH DEFENSE

Plaintiff's claims are barred and his remedies limited, in whole or in part, because he breached his fiduciary and contractual duties and his duty of good faith and fair dealing owed to Defendants.

## SEVENTH DEFENSE

Plaintiff's claims are barred and/or his remedies limited, in whole or in part, by the doctrine of after-acquired evidence to the extent Plaintiff engaged in misconduct, dishonesty, violation of company policies, and other conduct that would have resulted in the termination of his employment contract had Defendant discovered such conduct during his employment.

## EIGHTH DEFENSE

Plaintiff's claims are barred because Defendants fulfilled all contractual obligations owed to Plaintiff and because Plaintiff has received all compensation due to him by Defendants.

## NINTH DEFENSE

Pursuant to O.C.G.A. § 13-7-1, Defendants are entitled to a setoff for overpayments of compensation made to Plaintiff. Pursuant to O.C.G.A. § 13-7-2, Defendants are entitled to a recoupment for overpayments made to Plaintiff.

## TENTH DEFENSE

Plaintiff is not entitled to attorneys' fees and expenses under O.C.G.A. § 13-6-11 because Defendants did not act in bad faith, were not stubbornly litigious, and did not cause Plaintiff unnecessary trouble and expense.  To the contrary, Defendants are entitled to recover all costs and attorneys' fees incurred in this action because the claims alleged in Plaintiff's Complaint are frivolous, unreasonable, lack substantial justification, are made in bad faith, and are interposed for the purposes of delay and harassment.

## ELEVENTH DEFENSE

To the extent that Plaintiff suffered any damages, they were caused by his own acts or omissions.

## TWELFTH DEFENSE

 Plaintiff's claims for damages are barred, in whole or in part, to the extent Plaintiff seeks to recover damages in excess of the types or amounts allowed by law.

Defendants reserve the right to assert such other affirmative defenses and/or counterclaims as may become evidence through the discovery process and as the case progresses.

## COUNTERCLAIMS[5]

1.      As alleged in the Complaint, the parties entered into an Employment Agreement dated June 1, 2014 ("Employment Agreement").

2.      Pursuant to the Employment Agreement, Plaintiff promised to serve as the Managing Member of Pinnacle.

3.      Plaintiff was obligated to comply with the terms of the Employment Agreement.

4.      This obligation included, but was not limited to, an obligation to "set goals, targets and objectives" of Pinnacle.  (*See* Employment Agreement at 2.)

5.      This obligation included, but was not limited to, an obligation to "manage [Pinnacle] to achieve these objections." (*See* Employment Agreement at 2.)

6.      This obligation included, but was not limited to, an obligation to "build and manage a corporate staff for [Pinnacle] to [Plaintiff] in achieving these objections."  (*See* Employment Agreement at 2.)

---

[5] Simultaneous with this Answer, Defendants have filed a Motion to Dismiss and Compel Arbitration because this matter was improperly filed in this Court and should have been brought in arbitration.  Out of an abundance of caution, however, Defendants have included their counterclaims in this pleading.  In doing so, Defendants do not waive any argument that this matter and all claims and counterclaims herein belong in arbitration.

7.      This obligation included, but was not limited to, an obligation to "operate core business locations [of Pinnacle] . . . to an EBITDA profit margin of 35% or better."  (*See* Employment Agreement at 2.)

8.      This obligation included, but was not limited to, an obligation to "operate non-core business locations [of Pinnacle] to as efficient an EBITDA profit margin as possible.  (*See* Employment Agreement at 2.)

9.      This obligation included, but was not limited to, an obligation to "well and faithfully serve the interests" of Pinnacle.  (*See* Employment Agreement at 2.)

10.     This obligation included, but was not limited to, an obligation to "obey all instructions given to him by Vineyard."  (*Id.*)

11.     This obligation included, but was not limited to, an obligation to "use his best efforts to promote the success of [Pinnacle] and Vineyard."  (*Id.*)

12.     This obligation included, but was not limited to, an obligation to "perform all services in a competent, thorough and professional manner, and conduct his deadlines, transactions, and communications with others on behalf of [Pinnacle] in accordance with the highest ethical and professional standards."  (*Id.*)

13.     This obligation included, but was not limited to, an obligation to "accurately keep and maintain all books of account as shall be reasonably required by [Pinnacle] and Vineyard, and make all returns or reports as and when reasonably required by [Pinnacle] and Vineyard."  (*Id.*)

14.     This obligation included, but not was not limited to, an obligation to "periodically report to [Pinnacle] and Vineyard concerning status of [Pinnacle] goals."  (*Id.*)

15.     As the Managing Member of Pinnacle, Plaintiff had authority to act as the agent of Pinnacle and bind it to third parties.

16.     As the Managing Member of Pinnacle, Plaintiff owed fiduciary duties to Pinnacle and Vineyard.

17.     As the Managing Member of Pinnacle, Plaintiff acted inconsistently with, breached, and violated the Employment Agreement.

18.     As the Managing Member of Pinnacle, Plaintiff knowingly and willfully breached his fiduciary duties with the specific intent to cause harm to Pinnacle and Vineyard.

A.      **Plaintiff Authorized Excessive Distributions from Pinnacle to Vineyard to Collect a Personal Bonus for Himself**

19.     Pursuant to the Employment Agreement, Plaintiff was permitted to authorize distributions to Vineyard on Pinnacle's behalf based on Pinnacle's "profitable operations or the sale of owned business locations."  (*See* Employment Agreement ¶ 3.)

20.     To incentivize Plaintiff to grow Pinnacle's profitability, Vineyard agreed to pay Plaintiff a bonus equal to 15% of such distributions.  So, for example, if Plaintiff authorized a $100,000 distribution from Pinnacle's profits, Vineyard would receive $85,000 and Plaintiff would receive $15,000.  (*Id.*)

21.     Over time, Vineyard realized that this bonus was not sufficiently motivating Plaintiff to excel at managing Pinnacle, and the parties began discussing the terms of the Employment Agreement.

22.     During these negotiations, Vineyard expressed reservations about renewing the Employment Agreement and suggested the parties explore alternative compensation arrangements.

23.     Upon learning that his contractual authority to issue distributions and collect a 15% bonus for himself was coming to an end, Plaintiff began paying excessive distributions from Pinnacle to Vineyard so he could collect his 15% bonus.

24.     Indeed, from the inception of the Employment Agreement through November 2021, Plaintiff's average 15% distribution bonus was $58,000/month.

25.     In the months after Plaintiff learned that his 15% distribution bonus was ending, Plaintiff issued distributions from Pinnacle to Vineyard that resulted in the following bonuses for himself:

|                   |           |
|-------------------|-----------|
| December 2021:    | $180,000  |
| January 2022:     | $75,000   |
| February 2022:    | $150,000  |
| March 2022:       | $232,500  |
| April 2022:       | $45,000   |
| May 2022:         | $75,000   |

26.     In May 2022, Vineyard informed Plaintiff that it would not renew the Employment Agreement.  Thus, Plaintiff's ability to authorize distributions from Pinnacle to Vineyard and collect a 15% bonus for himself ended.

27.     In June 2022, Vineyard discovered that Plaintiff paid these distributions out of Pinnacle's savings and not its profitable operations or the sale of a business location as required by the Employment Agreement.

**B.     No Longer Able to Pay Himself a Bonus, Plaintiff Recklessly Spent Pinnacle's Money**

28.     After Plaintiff lost the ability to authorize distributions from Pinnacle to Vineyard and collect bonuses based on these distributions, Plaintiff began recklessly spending Pinnacle's money to harm Defendants.

29.     For example, in June 2022, Plaintiff began committing Pinnacle to certain capital expenditure costs.

- 22 -

30.     Capital expenditures are funds used by a company to acquire, upgrade, and/or maintain physical assets such as property, technology, or equipment.

31.     As such, such capital expenditures can commit a company to considerable expense over time.  For example, Plaintiff authorized and contractually obligated Pinnacle to certain long-term construction projects, which Pinnacle was bound to even after his departure.   Some of these projects were in direct violation of lease agreements with Vineyard.

32.     Many of the capital expenditures to which Plaintiff committed Pinnacle were excessive and unnecessary.  In addition, Defendants have learned that several capital expenditures projects were deferred at the decision of Plaintiff as many as three years in order for him to maximize cash flow and pay increased bonuses to himself.

33.     Indeed, during the entire year of 2021, Plaintiff committed Pinnacle to approximately $450,000 in capital expenditure costs.

34.     Between March 2022 and March 2023, Pinnacle incurred $1.3 million in capital expenditure costs because of Plaintiff's actions.

35.     Additionally, in August 2022, Plaintiff authorized $88,000 in bonus payments to certain Pinnacle employees.

36.     These bonuses were off cycle and not part of any typical Pinnacle compensation evaluation and/or bonus program.

37.     When questioned regarding these bonuses, Plaintiff described them as "retention bonuses" designed to convince certain employees to remain employed by Pinnacle.

38.     This was false.  In fact, at least one employee has admitted that she had already resigned when Plaintiff authorized her bonus and never agreed to stay in exchange for same.

**C.**     **Plaintiff's Reckless Spending Has Damaged Vineyard and Pinnacle**

39.     Plaintiff's reckless spending has damaged Vineyard and Pinnacle.

40.     In March 2021, Pinnacle executed a line of credit agreement with Cadence Bank (the "Credit Agreement").   The purpose of this line of credit was to finance acquisitions by Pinnacle of other funeral homes.

41.     In December 2021, Pinnacle and Cadence Bank amended the Credit Agreement to increase the line of credit to approximately $30 million.  As part of this process, Vineyard became a party to the Credit Agreement and Pinnacle and Vineyard agreed to certain covenants.

42.     Plaintiff was aware of the covenants imposed on Pinnacle and Vineyard by Cadence Bank in the Credit Agreement as he was involved in discussions with the Cadence Bank and executed the loan documents on Pinnacle's behalf.

43.     By authorizing excessive distribution payments from Pinnacle's savings to Vineyard in order to collect a 15% bonus for himself, Plaintiff negatively impacted Pinnacle's earnings.

44.     By negatively impacting Pinnacle's earnings, Plaintiff damaged Pinnacle's EBITDA valuation, which is earnings before interest, taxes, depreciation, and amortization.

45.     One of the covenants of the Credit Agreement required Pinnacle and Vineyard to maintain a certain "Fixed Charge Coverage Ratio."  Specifically, the Fixed Charge Coverage Ratio covenant required Defendants to maintain a 1.5 ratio of EBITDA to debt service.

46.     Plaintiff's authorization of excessive distributions and resulting excessive bonuses paid to himself from Pinnacle's savings caused this ratio to drop to 1.43, thereby violating this covenant.

47.     When Cadence Bank discovered Pinnacle and Vineyard were in violation of this covenant in June 2022, the parties were in the process of negotiating a second amendment to the Credit Agreement.

48.     After Plaintiff's termination, Defendants discovered that Plaintiff's spending had triggered the violation of another covenant in the Credit Agreement.

49.     In addition to the Fixed Charge Coverage Ratio covenant, the Credit Agreement has a "Senior Leverage Ratio" covenant.   Specifically, the Senior Leverage Ratio covenant requires Defendants to maintain a 4.5 or less ratio of senior debt on the line of credit to EBITDA.

50.     Plaintiff's authorization of excessive distributions from Pinnacle's savings and payment of excessive/unnecessary employee bonuses caused this ratio to increase to 4.59, thereby violating a second covenant in the Credit Agreement.

51.     Cadence Bank agreed to waive this violation and all penalties permitted under the Credit Agreement if Defendants paid down the line of credit to sufficiently bring the Senior Leverage Ratio down to 4.5.

52.     Thus, to avoid defaulting on the Credit Agreement as a result of Plaintiff's conduct, Defendants had to pay down the line of credit by $3 million in October 2022.

53.     As a direct result of this violation, Plaintiff irreparably damaged Defendants' credibility with Cadence Bank.

**D.     Defendants Discover Plaintiff Underreported Pinnacle's Bad Debt in Prior Years**

54.     In December 2022, Vineyard completed a 2022 financial examination of Pinnacle.

55.     During this examination, Vineyard discovered that Plaintiff had failed to properly manage Pinnacle's accounts receivable.

56.     Specifically, Vineyard discovered that over 50% of Pinnacle's accounts receivable balance was over 120 days old, with a significant portion in excess of 1 year old (*i.e.,* not collectable).  As a result, Pinnacle was forced to write off approximately $476,000 in bad debt.

57.     This negatively impacted Pinnacle's EBIDTA and, had Vineyard not identified this bad debt during the examination, would have caused Defendants to violate the Senior Leverage Ratio a second time.

58.     Thus, to avoid defaulting on the Credit Agreement as a result of Plaintiff's failure to properly manage and report Pinnacle's bad debt, Defendants had to pay down the line of credit by $2 million in December 2022.

59.     As a direct result of this violation, Plaintiff irreparably damaged Defendants' credibility with Cadence Bank.

60.     All of Plaintiff's conduct as described herein has damaged Defendants by, *inter alia,* impacting its credibility with lenders and business partners, causing Cadence Bank to place limitations on Defendants' ability to expand and draw on its line of credit, and reducing Defendants' savings and/or cash on hand needed to fund profitable acquisitions.

**E.     Defendants Discover Plaintiff Allowed Defendants' Assets to Go into a State of Disrepair to Fund His Distribution Bonuses**

61.     One of Plaintiff's duties included adequately maintaining the condition of various funeral homes owned by Pinnacle.

62.     Indeed, lease agreements between Pinnacle and these funeral homes required Pinnacle to adequately maintain the condition of the funeral homes.

63.     Since Plaintiff's termination, however, Defendants have received multiple maintenance requests from the operators of various funeral homes Plaintiff was responsible for maintaining.

- 26 -

64.     Many of these funeral homes are in a state of disrepair because, for years, Plaintiff refused to fund the necessary maintenance to address, *inter alia,* rot, water leaks, flooding, and mold.

65.     Indeed, while Plaintiff was employed, he only authorized approximately $500,000 in maintenance projects per year.

66.     Since Plaintiff's termination, Defendants have had to spend approximately $1.3 million per year to remediate the disrepair Plaintiff caused at these funeral homes.  Over the next year, Defendants expect to spend an additional $1.2 million to complete this remediation.

67.     Plaintiff intentionally ignored such maintenance requests so he could inflate Pinnacle's profits.

68.     In doing so, Plaintiff was able to authorize a larger distribution to Vineyard and collect a similarly inflated bonus for himself.

69.     As a direct result of Plaintiff's action, Defendants have had to spend additional funds to repair these funeral homes given the damage and state of disrepair.

### COUNT I – BREACH OF CONTRACT AND
### IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

70.     Defendants restate the allegations in the above paragraphs as if fully set forth herein.

71.     Plaintiff's authorization of distributions out of Pinnacle's savings, as opposed to its profitable operations or the sale of owned business locations, constitutes a breach of the Employment Agreement and the implied covenant of good faith and fair dealing.

72.     Plaintiff's authorization of excessive distributions from Pinnacle to Vineyard for his own personal gain constitutes a breach of the Employment Agreement and the implied covenant of good faith and fair dealing.

73.     Plaintiff's authorization of excessive employee bonuses constitutes a breach of the Employment Agreement and the implied covenant of good faith and fair dealing.

74.     Plaintiff's commitment of Pinnacle to excessive capital expenditures constitutes a breach of the Employment Agreement and the implied covenant of good faith and fair dealing.

75.     Plaintiff's underreporting of Pinnacle's bad debt constitutes a breach of the Employment Agreement and the implied covenant of good faith and fair dealing.

76.     Plaintiff's refusal to ensure the maintenance of various funeral homes to inflate Pinnacle's profits and pay himself a similarly inflated bonus constitutes a breach of the Employment Agreement and the implied covenant of good faith and fair dealing.

77.     Plaintiff's breaches of his Employment Agreement and the implied covenant of good faith and fair dealing were intentional, in bad faith, and without any justification, defense, excuse, or privilege.

78.     As a result of Plaintiff's breaches, Plaintiff caused Defendants damage in an amount to be proven, but in no case less than $5 million.

**COUNT II – MONEY HAD AND RECEIVED**

79.     Defendants restate the allegations in the above paragraphs as if fully set forth herein.

80.     Plaintiff unjustly enriched himself at the expense of Defendants when he authorized excessive distributions from Pinnacle to Vineyard so he could collect a 15% bonus for himself.

81.     As a matter of equity, Plaintiff should not be permitted to keep this money.

82.     By virtue of filing this counterclaim, Defendants hereby make a demand for repayment of these excessive bonuses.

83.     Defendants were damaged by Plaintiff in an amount to be proven.

## COUNT III – BREACH OF FIDUCIARY DUTY

84.     Defendants restate the allegations in the above paragraphs as if fully set forth herein.

85.     As Pinnacle's Managing Member, Plaintiff owed Defendants a fiduciary duty to perform his duties, and otherwise to act, in good faith and with the degree of care which an ordinarily prudent person in a like position would use under similar circumstances. Defendants relied on Plaintiff in complying with his fiduciary duties when Defendants appointed him Pinnacle's Managing Member.

86.     Plaintiff's conduct as described herein constitutes a breach of Plaintiff's fiduciary duties.

87.     As a result of Plaintiff's breach of his fiduciary duties, Defendants were harmed in an amount to be proven, but in no case less than $5 million.

## COUNT IV – ATTORNEYS' FEES AND EXPENSES UNDER O.C.G.A. § 13-6-11

88.     Defendants restate the allegations in the above paragraphs as if fully set forth herein.

89.     Plaintiff's underlying conduct and actions as set forth in this Counterclaim were in bad faith, have caused unnecessary expense, and are stubbornly litigious.

90.     As a result, Plaintiff has caused and will continue to cause Defendants to incur attorneys' fees and expenses of litigation that it would not otherwise have incurred. As such, Defendants are entitled to an award of their attorneys' fees, costs and expenses to be reimbursed by Plaintiff pursuant to O.C.G.A. § 13-6-11.

## COUNT V—PUNITIVE DAMAGES

91.     Defendants restate the allegations in the above paragraphs as if fully set forth herein.

92.     Plaintiff has acted in bad faith and with a callous disregard for Defendants' rights.

93.     Plaintiff's actions constitute willful misconduct, malice, oppression, and that entire want of care which shows a conscious indifference to the consequences.

94.     By engaging in the previously described conduct, Plaintiff acted with the intent to injure Defendants, and with malice, oppression, and/or fraud.

95.     Defendants are entitled to recover punitive damages from Plaintiff in any amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully request:

(a)     A judgment in favor of Pinnacle and Vineyard and against Plaintiff on each of Plaintiff's claims and Defendants' counterclaims;

(b)     A dismissal of the Complaint with prejudice;

(c)     All damages available to Defendants, including but not limited to, actual, direct, compensatory, and punitive damages, attorneys' fees and expenses of litigation, and all applicable interest thereon; and

(d)     An award to Pinnacle and Vineyard of any other such relief to which they are entitled.

Respectfully submitted, this 8th day of May, 2023.

**JACKSON LEWIS P.C.**

*/s/ Adriana R. Midence*
Adriana R. Midence
Georgia Bar No.: 142298
Robert W. Capobianco
Georgia Bar No.: 106102
Kathryn M. White
Georgia Bar No.: 528556
171 17th Street NW, Suite 1200
Atlanta, Georgia 30363
T: (404) 525-8200
F: (404) 525-1173
adriana.midence@jacksonlewis.com
robert.capobianco@jacksonlewis.com
kathryn.white@jacksonlewis.com

**ATTORNEYS FOR DEFENDANTS**

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

PAUL HAARER,                                    )
                                               )
        Plaintiff,                             )
                                               )
v.                                             )        Civil Action File No.:
                                               )        2023-CV-378125
VINEYARD CAPITAL PARTNERS, L.L.C.              )
and PINNACLE FUNERAL SERVICE, L.L.C.,          )
                                               )
        Defendants.                            )
                                               )
_____

## CERTIFICATE OF SERVICE

I certify that, on May 8, 2023, I filed and served the foregoing **DEFENDANTS' ANSWER**

**TO PLAINTIFF'S COMPLAINT FOR DAMAGES** by filing the pleading with the Court's e-

filing system which will generate electronic service to all counsel of record, properly addressed as

follows:

Richard L. Robbins
Catherine C. Sullivan
Michael D. Forrest
ROBBINS ALLOY BELINFANTE LITTLEFIELD LLC

*Attorneys for Plaintiff*


        /s/ Adriana R. Midence
        Adriana R. Midence