

**Patrick A Berkshire**
**Attorney at Law**
**(404) 842-9380 x477**
**pberkshire@eljlegal.com**

**Alysa Khan**
**Paralegal**
**(404) 842-9380 x 482**
**akhan@eljlegal.com**

May 19, 2023

**VIA CERTIFIED FIRST CLASS MAIL**
Liberty Mutual/Sedgwick
Attn: Diane Durel
PO Box 14436
Lexington, KY 40512

   RE:  Your Driver/Insured: Kinley Burton
       Claimant: Tyrone Allen
       Claim Number: C122572265-0002-01
       Date of Loss: June 8, 2021
       Policy Limits: 1,000,000.00

Dear Ms. Durel:

  As you are aware, this firm represents Tyrone Allen in his claim for personal injuries arising out of the automobile collision that occurred on June 8, 2021 with your insured, Kinley Burton.

  This demand and the enclosed CD containing exhibits are submitted solely for the purpose of compromise and settlement. They shall <u>not</u> be admissible as evidence in the event of a trial in this matter unless they are admissible for some other proper purpose. Therefore, please accept this demand as our good faith effort to amicably resolve this claim without further litigation.

## **LIABILITY**

  On June 8, 2021, at approximately 2:14 a.m./ p.m., Tyrone Allen, was traveling west on I-285 in the far right lane when suddenly and without warning Kinley Burton struck Tyrone Allen's truck in the left rear side. Kinley Burton failed to make proper observation. As a result, Ms. Clark sustained severe bodily injuries, requiring medical treatment and surgery.

  According to the accident report with the DeKalb Police Department, Kinley Burton was a fault. (See Georgia Private Property Accident Report on the attached disc as **Exhibit A**).

## INJURIES AND MEDICAL TREATMENT- TYRONE ALLEN

Following the collision, Mr. Allen was overwhelmed with pain in his neck and low-back. On June 11, 2021, Mr. Allen presented to Premier Health Chiropractic. He had complaints of frequent bilateral headache, bilateral cervical aching pain, stiffness, numbness/tingling and left-hand injury. Mr. Allen also had complaints of frequent bilateral thoracic aching pain, including stiffness. Frequent right elbow aching pain with weakness and stiffness, and frequent bilateral lumbar aching pain, with additional complaints of stiffness. All complaints are aggravated by lifting, bending, and prolonged standing. Musculoskeletal Palpation: Cervical paraspinal muscles tension, tenderness and spasm bilaterally. Thoracic paraspinal muscles tension, tenderness and spasm bilaterally. Lumbar quadratus lumborum tension, tenderness and spasm bilaterally. A number of exams were conducted by Dylan de Graaf, D.C. whom also referred Mr. Allen to get MRI's completed. Mr. Allen treated with Dr. Graaf a total of four times. (**See Premier Health Chiropractic records and bills Exhibit B**).

Due to continued pain and suffering June 29, 2021, Mr. Allen presented to Regional Medical Group with complaints of neck and low-back pain. Findings were cervical range of motion is limited with flexion, extension, left and right rotation. There is active spasm in bilateral paraspinal muscles and right trapezius muscle. There is tenderness to palpation in right trapezius muscle and midline. Thoracic spine was unremarkable, lumbar spine range of motion is limited with flexion, extension, left and right rotation, left and right lateral flexion. There is active spasm in bilateral paraspinal muscles. There is tenderness to palpation in bilateral paraspinal muscles and midline. Straight leg raise test negative. Mr. Allen treated a Regional Medical group several times. (**See Regional Medical Group records and bills Exhibit C**).

Mr. Allen also sought treatment at Barbour Orthopaedics with continuing complaints of neck and low-back pain. Physical exam found cervical spine, no gross abnormatilites noted. 1+ tenderness over midline cervical spine and bilateral paraspinal muscles C6-T1. Minimal tenderness over bilateral upper trapezii. Mildly limited active range of motion with pain worse during extension. Lumbar spine, no gross abnormalities noted. 1+ tenderness over midline lumbar spine, bilateral muscles L5-S1. Minimal tenderness over bilateral SI joints. Mildly limited active range of motion with pain worst during flexion and extension. Imaging was also performed with findings as follows:
Cervical XR 4V(AP/lat/flex/ext) 11/1/2021- No evidence of fractures, dislocations, or any other acute bony abnormalities.
Lumbar XR 4V (Ap/lat/flex/ext) 11/1/2021- No evidence of fractures, dislocations, or any other acute bony abnormalities.
Cervical MRI 7/7/2021 Onyx: C5-6 posterior disc bulge partially effacing the ventral thecal sac, C6-7 posterior disc bulge effacing ventral thecal sac without foraminal stenosis.
Lumbar MRI 7/7/2021 Onyx: L4-5 posterior disc herniation with bilateral foraminal stenosis distorting bilateral nerve roots. L3-4 posterior disc herniation with bilateral foraminal stenosis, L2-3 anterior disc bulge.

Assessment: Tyrone Allen is a 44-year-old male with neck and low back pain from injury sustained in a motor vehicle accident that occurred on 6/6/2021. The patient has evidence of cervical disc herniations C5-6 and C6-7 with right upper extremity radiculopathy. He also has evidence of lumbar disc herniation L3-4 and L4-5 with right lower extremity radicular symptoms. (**See Barbour Orthopaedics records and bills and Onyx Imaging records and bills Exhibit D**).

Mr. Allen also had an MRI of the brain performed at American Health Imaging with findings of very mild motion artifact is present on the FLAIR sequence. No mass or territorial zone of infarction is seen. No hydrocephalus, shift of the midline structures or extra-axial fluid collection is seen. The major intracranial arteries maintain flow voids. The corpus callosum is normal in appearance. The cerebellar tonsils are within normal limits in position. The hippocampal formation appear symmetric. The pituitary and surrounding structures are unremarkable. The optic chiasm and orbits are unremarkable. The paranasal sinus are within normal limits in appearance.

The brainstem and cerebellum are unremarkable. The CP angle cisterns and internal auditory canals are symmetric. No fluid or significant inflammatory process is seen within the middle ear cavities or mastoid air cells. The soft tissues at the skull base are unremarkable. The calvarium appears intact. The clivus and skull base are unremarkable. No abnormalities are seen within the brain on diffusion-weighted images or on the SWI sequence. No evidence for significant parenchymal trauma or intracranial hemorrhage is seen. (**See American Health Imaging records and bills Exhibit E).**

Mr. Allen presented to HOPE Neurological & Medical Services where he was treated by Dr. Mohammed Ali-Eltom, M.D., with diagnosis of Cervicalgia (m54.2), low back pain, post-traumatic headache, radiculopathy cervical region, and radiculopathy lumbar region. (**See HOPE Neurological & Medical Services and Hope Surgical Medical Group records and bills Exhibit F**).

Mr. Allen also presented to Ortho Sports & Medicine with complaints of resolved neck and low back pain. Patient underwent bilateral C4-7 intra-articular facet injection on December 22, 2022. He has had 90% improvement of his neck and back pain since last being seen. Although Mr. Allen reported 90% resolved pain, he was still advised to receive chiropractic care. (**see Ortho Sports & Medicine records Exhibit G**).

## SPECIAL DAMAGES

As a result of this incident, Mr. Allen has incurred the following special damages:

| Barbour Orthopaedics | $ | 1,675.00 |
|---|---|---|
| Hope Neurological | $ | 3,412.50 |
| Hope Surgical Medical Group | $ | 3,307.50 |

| | | |
|---|---|---:|
| Onyx Imaging | $ | 4,202.00 |
| Ortho Sport & Medicine | $ | 33,656.02 |
| Premier Health Chiropractic | $ | 1180.00 |
| Lost wages | $TBD | |
| | | |
| **TOTAL SPECIALS** | $ | **47,433.02** |

### LOSS OF ENJOYMENT OF LIFE/PAIN AND SUFFERING

As you know, special damages are only a portion of a bodily injury claim. As a result of Kinley Burton's negligence and carelessly operating his vehicle, and in doing so, causing Mr. Allen painfully and permanent injuries. He experienced stiffness, radiating pain difficulty lifting, bending, grasping, carrying, standing, twisting, walking, pushing, pulling, sitting and restless sleeping.

The injuries sustained by Mr. Allen had a huge impact on his daily activities and lifestyle. Prior to this accident, Mr. Allen had a very active life, l exercising, playing sports, taking long walks, standing for long periods of a time, bending, lifting, suffers from migraines, and sleeping with no limitations, as well as now suffering from forgetfulness. Also, as a result of this accident, he has been unable to obtain employment as a truck driver because this accident is pending with the DOT to confirm fault. He has also been unable to obtain other employment due to the limitations he now has as a result of this accident. As a result, he no longer can do any of these activities due to pain and weakness.

### DAMAGES DEMAND PURSUANT TO O.C.G.A. § 9-11-67.1

My clients demand Liberty Mutual Insurance's policy to pay of $200,000 for a limited liability settlement of Tyrone Allen's claim against Kinley Burton, leaving open the possibility for Mr. Allen to recover against any applicable UM policy that was in place on the date of loss. The offer is for a lump sum, present value, single payment, and not a structured or installment settlement. Liability is clear; the seriousness of the injuries and the exposure created by Mr. Allen ongoing conditions and treatment are also known.

Our offer to accept State Farm Insurance's $200,00 policy limit for Mr. Allen shall remain open for a period of thirty (30) days from your receipt of this letter. This will provide Liberty Mutual Insurance with ample time to assess this claim and share this letter and what it means with Kinley Burton. Upon payment of the demanded amount and compliance with the terms set forth herein, Mr. Allen will release Kinley Burton from any and all claims he has or may have arising from the incident at issue subject to the terms of a limited liability release. Timely acceptance may be made in writing and/or by delivery of the specified sum in good and available U.S. funds to my office with on or before the thirtieth day from your receipt of this letter. However, per O.C.G.A. § 9-11-67.1(g) should State Farm choose to accept this offer in

writing, then it's time to deliver payment as specified above will be ten (10) days after the written acceptance will constitute a rejection of my client's settlement offer.

for Mr. Allen shall remain open for a period of thirty (30) days from your receipt of this letter. This will provide Liberty Mutual Insurance with ample time to assess this claim and share this letter and what it means with Kinley Burton. Upon payment of the demanded amount and compliance with the terms set forth herein, Tyrone Allen will release Kinley Burton from any and all claims he has or may have arising from the incident at issue subject to the terms of a limited liability release. Timely acceptance may be made in writing and/or by delivery of the specified sum in good and available U.S. funds to my office with on or before the thirtieth day from your receipt of this letter. However, per O.C.G.A. § 9-11-67.1(g) should Liberty Mutual choose to accept this offer in writing, then it's time to deliver payment as specified above will be ten (10) days after the written acceptance will constitute a rejection of my client's settlement offer.

It is my hope that Liberty Mutual will assist Kinley Burton when he most needs its help. Kinley Burton has paid premiums to Liberty Mutual, so that it would protect his financial welfare in situations like this, a motor vehicle collision involving serious injury.  I am certain that Kinley Burton is counting on Liberty Mutual to do the right thing for him and give his economic well-being equal consideration to that of Liberty Mutual's.  While Liberty Mutual is aware of its obligations under Georgia law, Kinley Burton may not be.  With this in mind I request that you take the necessary steps to transmit a copy of this letter to him as I will include some of the relevant law below.  Failing to transmit this letter to Kinley Burton would evidence Liberty Mutual Insurance's unwillingness to fulfill and faithfully carry out its duties to Kinley Burton as his insurer.

Where the policy limits are less than the total amount of damages likely to be recovered in a suit against Kinley Burton, it is Liberty Mutual's duty to offer its policy limit to avoid endangering their financial well-being.  This is especially true where Liberty Mutual has an opportunity to settle the case within the policy limit.  The Georgia Court of Appeals has stated that:

> "As a professional in the defense of suit, [the insurer] must use a degree of skill commensurate with such professional standards.  As the champion of the insured, [the insurer] must consider as paramount his interests, rather than its own, and may not gamble with his funds."

<u>United States Fidelity & Guaranty Co. v. Evans</u>, 116 Ga. App. 93 (1967).

> "…where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limits of liability."

<u>McCall v. State Farm Ins. Co.</u>, 251 Ga. 869 (1984).

"The insurer is negligent in failing to settle if…choosing to try the case (rather than settle on the terms by which the claim could be settled) would be taking an unreasonable risk – that is, trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results."

<u>United States Fidelity & Guaranty Co. v. Evans</u>, 116 Ga. App. 93 (1967).

It should be clear to you in this case that the chances of unfavorable results for Kinley Burton are out of reasonable proportion to the chances of favorable results. The refusal to take the opportunity to resolve this matter within the policy limits would be taking an unreasonable risk with the funds of your insured. It is clear that Liberty Mutual's refusal to pay its policy limits in light of the facts and law would constitute a breach of its duty to protect the interests of Kinley Burton.

The only reason for Liberty Mutual to refuse to tender its limit in this case would be that it has decided to consider its own financial interests above those of Kinley Burton, a position which is contrary to Georgia law and the decisions of the Georgia Supreme Court. You know that Liberty Mutual is required by Georgia law to give at least equal consideration to the interests of its insured. I encourage Liberty Mutual not to gamble with Kinley Burton's financial well-being for the sake of trying to get lucky at trial.

This letter is made with a view to compromise and is afforded the evidentiary protection of O.C.G.A. § 24-3-37. Of course, if Kinley Burton or their assignee, institute an action against Liberty Mutual for bad faith, breach of fiduciary duty, breach of contract, or other claims, then this letter may be introduced as evidence.

Kindly review the enclosed documents and contact me within 30 days of receipt of this demand to discuss possible resolution of this claim.

    Yours truly,

    ***/s/ Patrick A. Berkshire***
    Patrick A. Berkshire

PAB/ak
Enclosure