## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| THE HOUSING AUTHORITY OF CLAYTON COUNTY FACILITIES HOLDING COMPANY, LLC d/b/a PREMIER GARDEN APARTMENTS, | CIVIL ACTION FILE NO. |
| Plaintiff, | |
| v. | |
| KINSALE INSURANCE COMPANY, | |
| Defendant. | |

## COMPLAINT

COMES NOW, Plaintiff The Housing Authority of Clayton County Facilities Holding Company, LLC d/b/a Premier Garden Apartments ("Premier") and submits this Complaint against Defendant Kinsale Insurance Company ("Kinsale"), respectfully showing this Court the following:

## NATURE OF THE CASE

1.

This is an action for breach of contract, declaratory judgment, bad faith and/or negligent refusal to settle claims, and bad faith refusal to defend brought by Premier

against Kinsale. This action arises out of Kinsale's continuing and unreasonable refusal to provide coverage pursuant to its insurance policy with Premier.

## PARTIES, VENUE AND JURISDICTION

2.

Premier is a Georgia limited liability company with its principal place of business at 732 Main St., Forest Park, Georgia 30297. All of the members of Premier are citizens of Georgia. Premier is also a political subdivision of the State of Georgia. Premier is therefore deemed a citizen of Georgia pursuant to 28 U.S.C. § 1332. *Terrebonne Par. Fire Dist. No. 7 v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CV 22-3880, 2023 WL 371634, at *3 (E.D. La. Jan. 24, 2023).

3.

Kinsale is an Arkansas corporation with a principal place of business at 2035 Maywill St., Richmond, Virginia 2320. Kinsale may be served through the Georgia Department of Insurance Commissioner pursuant to O.C.G.A. § 33-5-34(b). Pursuant to 28 U.S.C. § 1332(c)(1), Kinsale is deemed a citizen of Arkansas and Virginia.

4.

This action contains a claim for declaratory judgment pursuant to Rule 57 of the Federal Rule of Civil Procedure and 28 U.S.C. § 2201. Among other requested

relief, Premier seeks a declaration that Kinsale has a duty to defend it in a State Court action in Clayton County styled *Pamela Tubner v. The Housing Authority of Clayton County Facilities Holding Company, LLC (dba Premier Garden Apartments) and ABC Corporation (1-2)*, Civil Action File No. 2023CV00755 (the "Clayton Lawsuit").

5.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and this suit is between citizens of different states.

6.

Venue is appropriate in this action pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the Northern District of Georgia. The property that is the subject of the relevant insurance policy is also located in the Northern District of Georgia.

## FACTUAL ALLEGATIONS

### The Property and the Insurance Policy

7.

Premier is the owner of real property located at 639 Garden Walk Blvd., Atlanta, Georgia 30349 (the "Property"). The Property is the location of the Premier Garden Apartment complex.

8.

Premier obtained a general liability property insurance policy (the "Policy") for the Property through Kinsale with an effective date of June 15, 2022 and an expiration date of June 15, 2023. The Policy, with a policy number of 01001537390, provided commercial general liability coverage for the Property with insurance coverage up to $1,000,000.00 per occurrence, a $1,000,000.00 personal injury limit per person, and a general aggregate limit of $2,000,000.00. A true and correct copy of the policy is attached hereto as **Exhibit A**.

9.

The Policy further provided, in Section I.1.a., that Kinsale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies." The same section explained that Kinsale "will have the right and duty to defend the insured against any 'suit' seeking those damages."

10.

The Policy defines "bodily injury" to include "damages claimed by any person or organization for care, loss of services or death resulting at any time[.]"

11.

Pursuant to the Policy's Commercial General Liability Declarations, Premier was responsible for paying a premium in the amount of $40,000.00 for the Policy. Premier paid the premium. The Policy went into effect on June 15, 2022.

**The Injury Allegations and Claim Submission**

12.

On or about July 28, 2022, Pamela Tubner signed a certain lease agreement to rent premises located at the Property.

13.

Ms. Tubner alleges that, on July 29, 2022, she was in her apartment at the Property. Ms. Tubner contends that she exited the bedroom of the apartment and, while walking into the hallway, the floor below her caved in and she fell into the hole. Ms. Tubner claims that she suffered injuries as a result of the fall.

14.

On August 8, 2022, Premier submitted a General Liability Notice of Occurrence/Claim to Kinsale for the alleged injuries. A true and correct copy of that

General Liability Notice of Occurrence/Claim is attached hereto as **Exhibit B**. Premier also provided an incident report to Kinsale.

15.

Premier and Kinsale had a follow-up conversation on August 9, 2022 in which Premier provided Kinsale with more details and information regarding the incident.

16.

On September 6, 2022, Kinsale acknowledged and responded to the General Liability Notice of Occurrence/Claim in writing (the "Response Letter"). A true and correct copy of the Response Letter is attached hereto as **Exhibit C**. The Response Letter further confirmed the August 9, 2022 conversation.

17.

The Response Letter indicated that Kinsale was undertaking an investigation into the incident "pursuant to a full and complete reservation of rights under the Policy." Knowing nothing more than that Ms. Tubner had allegedly fallen through the floor at the Property, the Response Letter reserved the right to disclaim coverage "to the extent [Ms. Tubner] alleges [Premier] violated any law, local order or directive involving any duty to maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition[.]" With regard to the duty to defend, the Response Letter indicated that Kinsale "will have no duty to defend the

insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which [the] insurance does not apply."

18.

Following the Response Letter, Ms. Tubner's attorneys reached out to Kinsale to negotiate a settlement of Ms. Tubner's claim. No one at Kinsale responded to Ms. Tubner's attorney's communications.

19.

After sending the Response Letter, Kinsale acted in a manner that strongly suggested that Kinsale would be defending under a reservation of rights. For example, Kinsale's representative, Ashley McKnight, corresponded fairly frequently with Ms. Tubner's attorney regarding the claim and requested information from Premier even after she had completed her claim evaluation.

**Ms. Tubner Sues Premier and Kinsale Denies Coverage**

A.   Ms. Tubner's Demand Letter

20.

On January 25, 2023, Kinsale received a time limited demand letter from the law firm of Kuveikis Law, P.C. on behalf of Ms. Tubner (the "Tubner Demand"). A true and correct copy of the Tubner Demand is attached hereto as **Exhibit D**.

21.

The Tubner Demand alleged monetary damages for personal injuries to Ms. Tubner in the amount of $206,566.83 with categories for future medical treatment, pain and suffering, and other categories of damage to be determined. The Tubner Demand stated that the damages described therein arose from injuries Ms. Tubner received on the Property. The Tubner Demand offered to settle all claims by Ms. Tubner against Premier for the Policy limits.

22.

By its terms, the Tubner Demand expired and stood withdrawn as of February 27, 2023. On information and belief, Kinsale never responded to the Tubner Demand. The Tubner Demand has now expired and is incapable of acceptance by Premier.

B.     Ms. Tubner Files a Lawsuit in Clayton County.

23.

Ms. Tubner filed suit against Premier in the State Court of Clayton County, Georgia on March 29, 2023 (previously referred to as the "Clayton Lawsuit"). A true and correct copy of the Clayton Lawsuit is attached hereto as **Exhibit E**.

24.

Ms. Tubner alleged that Premier was negligent in failing to maintain, inspect, repair and manage the Property. Nothing in the Clayton Lawsuit alleges that Premier violated any "law, local order or directive" involving the duty to maintain any room or dwelling in a "safe, sanitary, healthy, habitable or tenantable condition[.]"

25.

The Clayton Lawsuit claimed damages for the alleged personal injuries arising out of the July 29, 2022 incident at the Property. Ms. Tubner seeks compensatory, special, economic, consequential, general, and punitive damages against Premier.

26.

Ms. Tubner served Premier with the Clayton Lawsuit on March 31, 2023. Under Georgia law, Premier's Answer to the Complaint was due on May 1, 2023.

27.

On April 3, 2023, Premier emailed Kinsale a copy of the Clayton Lawsuit. That email explained that "The Housing Authority of Clayton County Facilities Holding Company, LLC was served with the attached papers."

28.

Having not received a response from Kinsale, another email was sent to Kinsale on April 13, 2023. That email sought to confirm that Kinsale had received the copies of the Clayton Lawsuit.

C.    Kinsale Reinterprets the Clayton Lawsuit to Deny Coverage.

29.

On April 14, 2023, Kinsale's claims counsel, Michele Mulligan, responded to the emails. She stated,

> Upon review of the Complaint, I don't believe there will be coverage for the case. Unfortunately I believe the water related injury and the failure to maintain exclusions will come into play to preclude coverage. A formal letter will be forthcoming but in the meantime I suggest the Housing Authority consult with counsel at their own expense to protect their interests.

A true and correct copy of this email chain is attached hereto as **Exhibit F**.

30.

No formal letter was forthcoming until May 2, 2023, the day after the due date for Premier to file its Answer to the Complaint. Ms. Mulligan sent a May 2, 2023 letter (the "Denial Letter") to Premier explicitly disclaiming coverage under the Policy. A true and correct copy of the Denial Letter is attached hereto as **Exhibit G**.

31.

The Denial Letter provides two bases for denying coverage: (1) the "Exclusion – Water Related Bodily Injury and Property Damage" provision of the Policy; and (2) the "Eviction and Failure to Maintain" exclusion of the Policy.

i.   *The "Water Related Bodily Injury and Property Damage" Exclusion is Inapplicable.*

32.

As to Kinsale's first basis for denying coverage under the Policy, the Denial Letter stated that Kinsale was not responsible for any bodily injury "arising directly or indirectly out of, or in any way involving any discharge or leakage, backup, or overflow from any sewer, drain, water system, sump pump, plumbing system, heating or air conditioning unit or system, appliance or automatic sprinkler system."

33.

The sole basis for invoking this exclusion is that the Clayton Lawsuit alleges that Premier "had actual and constructive knowledge of the defective air conditioner and wet floor in Plaintiff's apartment and negligently failed to repair the problems." In a separate paragraph and without referencing the air conditioner or wet floor, the Clayton Lawsuit also alleged that the floor of Ms. Tubner's apartment "caved in and [Ms. Tubner] fell into a hole caused by the rotten plywood beneath her feet[.]"

34.

The Clayton Lawsuit does not allege that the air conditioner leak caused the wet floor. Nor does it allege that the wet floor caused the plywood to rot. Kinsale is attempting to rewrite Ms. Tubner's Complaint based on its own subjective inferences for the purpose of ginning up a reason to deny coverage.

ii.     *The "Eviction and Failure to Maintain" Exclusion is Inapplicable.*

35.

As to Kinsale's second basis for denying coverage under the Policy, the Denial Letter points to its "Eviction and Failure to Maintain" exclusion. Under the Policy, the "Eviction and Failure to Maintain" exclusion applies when a tenant alleges a breach of the lease agreement or a violation of a "law, local order or directive[.]"

36.

The Clayton Lawsuit does not break out its request for relief into formal counts or causes of action. However, the relief requested clearly implies that Ms. Tubner is proceeding under a claim for negligence against Premier. Ms. Tubner argues that, "Defendants' negligence was a cause in fact and proximate cause [of] Plaintiff Pamela Tubner's injuries."

37.

Another allegation by Ms. Tubner contends that "[a]s a proximate and foreseeable result of the negligence of Defendants, Plaintiff Pamela Tubner received serious injuries, endured pain and suffering, mental anguish, loss of the enjoyment of life, lost wages, and suffered other damages as will be proven at trial and permitted under Georgia law."

38.

Both allegations presume a negligence cause of action. There is no mention of a breach of the lease.

39.

Although Ms. Tubner alleges a violation by Premier of O.C.G.A. § 51-3-1 in the Clayton Lawsuit, that statutory provision requires only that the owner of land exercise ordinary care in keeping the premises safe when inviting others to come upon its land. The context of the Complaint makes clear that Ms. Tubner invokes that statute only to serve as the basis for her negligence claim.

40.

The Clayton Lawsuit makes numerous other allegations against Premier that have no basis in a violation of O.C.G.A. § 51-3-1 (or any other statute).[1] For

---

[1] It is worth noting that the Response Letter (sent on September 8, 2022) invoked the "Eviction and Failure to Maintain" exclusion and suggested that Ms. Tubner's

example, Ms. Tubner alleges, among other items: (1) that Premier failed to warn of latent dangers on the premises; (2) that Premier failed to properly train and supervise its employees regarding maintenance and safety of the premises; (3) that Premier failed to properly retain, entrust, hire, train, and supervise its employees; and (4) that Premier failed to ensure business policies, systems and security were being adequately followed. Any of those allegations, if proven, could subject Premier to liability for Ms. Tubner's injuries regardless of whether Premier violated O.C.G.A. § 51-3-1.

   *iii.* *The Denial Letter Purports to Reserve Kinsale's Rights.*

41.

   Finally, the Denial Letter stated that Kinsale "reserve[s] the right to review and/or consider any additional facts, claims, lawsuits or amendment to this claim to make a separate determination with regard to indemnification and defense."

**D.** <u>Kinsale Fails to Defend Premier in the Clayton Lawsuit.</u>

42.

   Premier's Answer was due in the Clayton Lawsuit on May 1, 2023. Kinsale did not send the formal Denial Letter until a day later, May 2, 2023. The Denial

---

alleged injuries were the result of a violation of law, local order or directive even *before* Ms. Tubner had filed her Complaint.

Letter concluded that, because there was no Policy coverage for underlying liability for the reasons set forth above, Kinsale also had no obligation to defend Premier in the Clayton Lawsuit.

43.

Because Kinsale had undertaken no effort to draft an Answer on behalf of Premier prior to the Answer deadline, Premier hired independent counsel to preserve its rights. Independent counsel for Premier obtained an extension for the filing of the Answer until May 15, 2023.

44.

Premier, through its insurance counsel, Jonathan Palmer, sent a Coverage Demand Letter to Kinsale on May 3, 2023. A true and correct copy of that Coverage Demand Letter is attached hereto as **Exhibit H**. The Coverage Demand Letter explained why the exclusions claimed by Kinsale did not apply and demanded that Kinsale defend Premier in the Clayton Lawsuit. Mr. Palmer also informed Kinsale that the Answer was due on May 15, 2023. Mr. Palmer notified Kinsale, pursuant to O.C.G.A. § 33-4-6, that its refusal to provide coverage would subject it to liability for defense costs incurred by Premier and for any judgment obtained by Ms. Tubner, plus 50% of any insurance recovery and all attorneys' fees incurred in obtaining that recovery.

45.

The Coverage Demand Letter addressed Kinsale's attempt to reserve its rights in the Denial Letter. The Coverage Demand Letter explained that because Kinsale had denied all coverage and was refusing to defend the Clayton Lawsuit, Kinsale could not also reserve its rights.  Accordingly, the reservation of rights was invalid.

46.

Finally, the Coverage Demand Letter requested that Kinsale inform Premier by May 5, 2023 whether it intended to defend the Clayton Lawsuit. Kinsale failed to respond.

47.

Kinsale did not timely respond to the Coverage Demand Letter.  Accordingly, Mr. Palmer made numerous attempts on behalf of Premier to reach Kinsale and its coverage attorney, Sergio Bueno.

48.

Finally, Mr. Palmer and Mr. Bueno had a telephone conversation on May 9, 2023.  During that conversation, Mr. Bueno seemed surprised that Kinsale had taken the position, based on the complaint in the Clayton Lawsuit, that no coverage was available and that Kinsale had refused to defend Premier in that Lawsuit.  He acknowledged that the Clayton Lawsuit complaint did not explicitly say that Ms.

Tubner's injuries were caused by an air conditioner leak or resulted from Premier's violation of any statute.  Mr. Bueno promised to talk with his adjuster and respond to the Coverage Demand Letter within a few days and before Premier's Answer was due in the Clayton Lawsuit on May 15.   Despite repeated efforts to follow up with Mr. Bueno and others at Kinsale, no one affiliated with Kinsale contacted any Premier representative prior to the May 15 answer deadline.

49.

On May 15, 2023, Premier filed an Answer in the Clayton Lawsuit and paid the costs and expenses associated with that Answer out of its own pocket.

**<u>COUNT ONE</u>**
**(Declaratory Judgment – Duty to Defend)**

50.

Premier hereby reasserts and incorporates the foregoing enumerated paragraphs as if each were set forth herein.

51.

In reference to damages from bodily injury, the Policy provides, in Section I.1.a., that Kinsale "will have the right and duty to defend the insured against any 'suit' seeking those damages." The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

52.

Under Georgia law, the question of whether an insurer is required to defend the insured in an underlying lawsuit is "separate and independent from the issue of whether [the insurer] would be required to indemnify the [i]nsured from any damages recovered against them in that action[.]" *Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315 (2007). An insurer's duty to defend is broader than its duty to indemnify. *Id.* "An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207 (1998).

53.

"If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497 (2007). The duty to defend is excused only when a complaint "unambiguously exclude[s] coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy." *Penn-Am Ins.*, *Co. v. Disabled American Veterans, Inc.*, 268 Ga. 564, 565 (1997). "Where the claim is one of potential coverage, doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured." *Id.* "This principle is especially true with respect to exclusions from coverage sought to be

invoked by the insurer." *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F.Supp.2d 1367, 1376 (N.D. Ga. 2009).

54.

Ms. Tubner's claims in the Clayton Lawsuit trigger Kinsale's duty to defend. The Clayton Lawsuit alleges bodily injury to Ms. Tubner from a fall on the Property during the coverage period.

55.

To make the allegations of the Clayton Lawsuit fall within a coverage exclusion, Kinsale must reinterpret the allegations in Ms. Kinsale's Complaint. However, "any exclusion from coverage sought to be invoked by the insurer is [ ] strictly construed." *Landmark Am. Ins., Co. v. Khan*, 307 Ga. App. 609, 612 (2011). On their face, the allegations contained in the Complaint are insufficient to trigger either exclusion invoked by Kinsale.

56.

Kinsale argues, without having sent any expert to inspect the Property, that Ms. Tubner's purported fall through the floor occurred as a result of a water leak from the air conditioning system. Without asking Premier its position on the cause of the alleged fall, Kinsale sent a Response Letter on September 8, 2022 suggesting that coverage may be excluded under the "Eviction and Failure to Maintain"

exclusion. The Response Letter's conclusions were based only on its review of the Premier incident report, a loss notice, and photographs and a letter of representation received by Ms. Tubner's attorney.

57.

On May 2, 2023, Kinsale expanded its bases for denying coverage to include the exclusion for "Water Related Bodily Injury and Property Damage." This new basis for denying coverage is premised on nothing more than an allegation in Ms. Tubner's Complaint that Premier had "actual and constructive knowledge of the defective air conditioner and wet floor in [Ms. Tubner's] apartment and negligently failed to repair the problems." Nothing in the Complaint states that the hole Ms. Tubner purportedly fell into was caused by the air conditioner or wet floor.

58.

The exclusions do not apply on their face. Even if they arguably applied, Kinsale would still be required to defend Premier in the Clayton Lawsuit given the breadth of the duty to defend.

59.

Premier has fulfilled all conditions precedent required for entitlement to a defense by Kinsale.

60.

Premier respectfully requests a declaration from this Court that Kinsale has a duty to defend it in the Clayton Lawsuit pursuant to the terms of the Policy.

## COUNT TWO
**(Declaratory Judgment – Duty to Indemnify)**

61.

Premier hereby reasserts and incorporates the foregoing enumerated paragraphs as if each were set forth herein.

62.

Premier asserts this declaratory judgment count as to Kinsale's duty to indemnify as a contingent claim in the event that Ms. Tubner obtains a judgment against Premier or there is a settlement of Ms. Tubner's claims against Premier. Premier states that, unless and until Ms. Tubner obtains such a judgment or a settlement is reached in the Clayton Lawsuit, this Count Two is not yet ripe for adjudication, and only those Counts premised on Kinsale's duty to defend may be adjudicated now. *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019).

63.

The Policy provides that Kinsale has a duty to indemnify Premier for "bodily injury" incurred on the Property.

64.

The allegations in the Clayton Lawsuit allege that Ms. Tubner suffered bodily injury from a fall on the Property within the applicable Policy period.

65.

Kinsale has denied coverage based on a hunch. Premised on a single reference to a leaky air conditioner and wet floor, Kinsale concludes that Ms. Tubner's fall must have been the result of a water leak rotting a plywood floor. This assumption is unwarranted and amounts to little more than a pretext for denying coverage.

66.

Kinsale also denies coverage because Ms. Tubner's Complaint references O.C.G.A. § 51-3-1 as a general basis for alleging her negligence claim. Kinsale argues that the reference is sufficient to show that the Clayton Lawsuit is based on the violation of a "law, local order or directive involving any duty to maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition[.]"

67.

As set forth previously, O.C.G.A. § 51-3-1 is the statute establishing basic premises liability. Premier has not "violated" the statute merely because someone was injured on the Property. Kinsale's interpretation of its Policy would exclude

insurance coverage for all premises liability cases and render illusory the coverage that Premier paid $40,000 for.

68.

Ms. Tubner also alleges bases for the Clayton Lawsuit separate and distinct from O.C.G.A. § 51-3-1.  These include: (1) that Premier failed to warn of latent dangers on the premises; (2) that Premier failed to properly train and supervise its employees in regard to maintenance and safety of the premises; (3) that Premier failed to properly retain, entrust, hire, train, and supervise its employees; and (4) that Premier failed to ensure business policies, systems and security were being adequately followed. If she prevails on any one of those separate bases, Kinsale would unquestionably have a duty to indemnify Premier.

69.

Kinsale has not alleged that Premier failed to timely notify it of the claim. Premier has fulfilled all conditions precedent to claiming coverage from Kinsale.

70.

Premier respectfully requests a declaration from this Court that Kinsale has a duty to indemnify it in the Clayton Lawsuit pursuant to the terms of the Policy.

<strong><u>COUNT THREE</u></strong><br>(<strong>Breach of Contract – Duty to Defend</strong>)

71.

Premier hereby reasserts and incorporates the foregoing enumerated paragraphs as if each were set forth herein.

72.

As set forth above, Kinsale has breached the Policy by failing to defend Premier in the Clayton Lawsuit.

73.

As a result of Kinsale's failure to defend Premier in the Clayton Lawsuit, Premier has incurred and will continue to incur attorneys' fees and costs associated with its defense.

74.

Kinsale is indebted to Premier for the attorneys' fees and costs of litigation in the Clayton Lawsuit as a result of its breach of the Policy's duty to defend.

75.

Premier is entitled to a judgment against Kinsale in an amount to be determined by the enlightened conscience of a jury, but not less than the full amount it incurs to defend itself in the Clayton Lawsuit.

## COUNT FOUR
**(Breach of Contract – Duty to Indemnify)**

76.

Premier hereby reasserts and incorporates the foregoing enumerated paragraphs as if each were set forth herein.

77.

Premier asserts this breach of contract count regarding the duty to indemnify as a contingent claim in the event that Ms. Tubner obtains a judgment against Premier or the parties reach a settlement of Ms. Tubner's claims. Premier states that, unless and until Ms. Tubner obtains such a judgment or  a settlement is reached in the Clayton Lawsuit, this Count Two is not yet ripe for adjudication, and only the counts premised on Kinsale's duty to defend may be adjudicated now. *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019).

78.

Pursuant to its Denial Letter, Kinsale has repudiated its duty to indemnify under the Policy. "[T]he 'anticipatory repudiation' of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the contract." *CCE Federal Credit Union v. Chesser*, 150 Ga. App. 328, 330 (1979). When an anticipatory repudiation occurs, the other party may elect to treat the repudiation as a breach. *Id.*

79.

Kinsale's repudiation of its contractual obligations threatens to expose Premier to liability in the amount of hundreds of thousands of dollars.

80.

Premier is entitled to a judgment against Kinsale in an amount to be determined by the enlightened conscience of a jury, but not less than the full amount of any judgment or settlement in the Clayton Lawsuit.

**COUNT FIVE**
**(Bad Faith and/or Negligent Refusal to Settle Within Policy Limits)**

81.

Premier hereby reasserts and incorporates the foregoing enumerated paragraphs as if each were set forth herein.

82.

Premier's Policy with Kinsale has a coverage limit up to $1,000,000.00 per occurrence, a $1,000,000.00 personal injury limit per person, and a general aggregate limit of $2,000,000.00.

83.

After the receipt of the Response Letter, counsel for Ms. Tubner tried to contact Kinsale to discuss a settlement of her claims. Upon information and belief, the purpose of those conversations would have been to discuss a settlement within the limits of the Policy.

84.

Despite these efforts by Ms. Tubner, Kinsale failed to respond even to the request for settlement negotiations.

85.

Ms. Tubner made a time-limited demand for her alleged injuries on January 25, 2023. Pursuant to the Tubner Demand, all claims related to this case could have been settled for $1,000,000.00, the Policy limits of the Kinsale Policy. This opportunity to settle for Policy limits expired on February 27, 2023, according to the terms of the Tubner Demand.  Upon information and belief, Kinsale never responded to the Tubner Demand by accepting the Policy limits settlement offer or trying to negotiate a settlement with Tubner for less than Policy limits.  In not responding, Kinsale put its interests ahead of its insureds and caused Premier to lose out on the opportunity to accept a Policy limits settlement offer.

86.

Premier sent Kinsale the Coverage Demand Letter on May 3, 2023 reiterating its coverage demands and accusing Kinsale of bad faith. More than sixty (60) days have elapsed since the delivery of that letter and Kinsale has not changed its coverage position.

87.

"An insurance company may be liable for damages to its insured for failing to settle the claim of an injured person where the insurer is guilty of negligence, fraud, or bad faith in failing to compromise the claim." *Southern General Ins. Co. v. Holt*, 262 Ga. 267, 268 (1992); *see also GEICO Indem. Co. v. Whiteside*, 311 Ga. 346 , fn.4 (2021) ("In Georgia, an insurance company that acts negligently or in bad faith in rejecting a time-limited demand to settle a covered claim within the limits of the insurance policy may be liable for a subsequent judgment against its insured in excess of the policy limits").

88.

Kinsale's failure to even entertain settlement negotiations evidences negligence or bad faith. If Ms. Tubner receives any award against Premier in excess of the Policy limits, Premier is entitled to a judgment against Kinsale in the full amount of that award, plus any other contractual, extracontractual or bad faith damages that may be available to Premier.

**<u>COUNT SIX</u>**
**(Statutory Bad Faith in Violation of O.C.G.A. § 33-4-6)**

89.

Premier hereby reasserts and incorporates the foregoing enumerated paragraphs as if each were set forth herein.

90.

Kinsale is an "insurer" as that term is defined in O.C.G.A. § 33-1-2.

91.

On May 3, 2023, Premier sent the Coverage Demand Letter to Kinsale. The Coverage Demand Letter, in addition to refuting Kinsale's reasons for its coverage denial, invoked O.C.G.A. § 33-4-6. Premier demanded that Kinsale undertake its defense in the Clayton Lawsuit and perform pursuant to its obligations under the Policy.

92.

The Coverage Demand Letter informed Kinsale that its failure to perform its Policy obligations would subject it to liability for any judgment Ms. Tubner may obtain against Premier, liability under O.C.G.A. § 33-4-6 for an additional 50% of that judgment for Kinsale's bad faith refusal to defend and indemnify, liability for Premier's attorneys' fees in defending the Clayton Lawsuit, and liability for all of Premier's attorneys' fees for bringing this action to enforce the terms of the Policy.

93.

In bad faith, Kinsale has failed and refused to fulfill its obligation under the Policy.

94.

While Ms. Tubner has not yet obtained any judgment against Premier in the Clayton Lawsuit, Premier has incurred attorneys' fees and court costs due to Kinsale's failure and refusal to defend. Premier's duty to indemnify Kinsale is not yet ripe for adjudication. However, its bad faith refusal to defend is ripe and justiciable pursuant to O.C.G.A. § 33-4-6 because Premier has incurred damages associated with defending itself in the Clayton Lawsuit.

95.

Kinsale took a single reference to a leaky air conditioner and wet floor in Ms. Tubner's Complaint and jumped to the conclusion that a water leak must be the sole cause of rotten plywood that allegedly led to Ms. Tubner's fall. Kinsale then invoked the "Water Related Bodily Injury and Property Damage" exclusion.

96.

Kinsale's Denial Letter invokes the "Eviction and Failure to Maintain" exclusion because Ms. Tubner's "Complaint asserts an alleged violation of a duty to maintain or restore any premises in or to a safe condition[.]" However, Kinsale was already planning to rely on this exclusion months before Ms. Tubner filed her Complaint initiating the Clayton Lawsuit.

97.

The refusal to defend the Clayton Lawsuit and the conclusion of no coverage under the Policy for the underlying claim were made in bad faith.

98.

Premier is therefore entitled to recover its damages, including the amount that it has incurred thus far, and continues to incur, in defending itself in the Clayton Lawsuit, together with an amount equal to fifty percent (50%) of those damages and all reasonable attorneys' fees incurred in the prosecution of this action to recover those damages.

WHEREFORE, Premier respectfully requests a trial by jury and that this Court:

(1) Declare that Kinsale has a duty to defend Premier in the Clayton Lawsuit;

(2) Declare that Kinsale has a duty to indemnify Premier from any judgment or settlement that may be obtained in the future by Ms. Tubner in the Clayton Lawsuit;

(3) Enter Judgment in Premier's favor in the amount of the attorneys' fees and costs incurred to defend itself in the Clayton Lawsuit;

(4) Enter Judgment in Premier's favor in the amount of any judgment or settlement that may be obtained in the future by Ms. Tubner in the Clayton Lawsuit;

(5) Enter Judgment in Premier's favor in the amount of any judgment or settlement that may be obtained in the future by Ms. Tubner in the Clayton Lawsuit in excess of the Policy limits of Premier's Policy with Kinsale;

(6) Award Premier its attorneys' fees and all additional amounts to which it is entitled pursuant to O.C.G.A. § 33-4-6 as a result of Kinsale's bad faith; and

(7) Award all such further relief as this Court deems just and proper.

Respectfully submitted on July 5, 2023.


*/s/ Jonathan Palmer*
Jonathan M. Palmer
Georgia Bar No. 453452
Nicholas T. Sears
Georgia Bar No. 491480

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, N.E. Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES AND SERVICE

In accordance with L.R. 7.1(D), I hereby certify that the foregoing was prepared in Time New Roman, 14-point font, one of the fonts specified in L.R. 5.1(C). I also hereby certify that I have served the foregoing on opposing counsel by filing through to the Court's CM/ECF system, which will send electronic notice to all counsel of record.

Submitted on July 5, 2023.

*/s/ Jonathan Palmer*
Jonathan M. Palmer
Georgia Bar No. 453452
Nicholas T. Sears
Georgia Bar No. 491480

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, N.E. Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com