# KNIGHT | PALMER
## ATTORNEYS AT LAW

ONE MIDTOWN PLAZA
SUITE 1201
1360 PEACHTREE STREET, ATLANTA, GEORGIA 30309

P: 404.228.4822 | F: 404.228.4821
www.knightpalmerlaw.com

Jonathan Palmer                                                                  jpalmer@knightpalmerlaw.com

May 3, 2023

**VIA EMAIL**
Michele A. Mulligan
Claims Counsel
Kinsale Insurance Company
2035 Maywill Street, Suite 100
Richmond, VA 23230
Email: Michele.Mulligan@kinsaleins.com

| | | |
|---|---|---|
| RE: | Insured: | The Housing Authority of Clayton County Facilities Holding Company, LLC, dba Premier Garden Apartments (the "HACC FHC") |
| | Claimant: | Pamela Tubner |
| | Your File No.: | 00030302 |
| | Date of Loss: | July 29, 2022 |

Dear Ms. Mulligan:

    My firm and I have been engaged as coverage counsel for the HACC FHC. I am writing on its behalf to respond to Ashley McKnight's September 6, 2022 letter, to your April 14, 2023 email and to your May 2, 2023 letter that we received yesterday, and to demand that Kinsale Insurance Company ("Kinsale") reconsider its coverage position and agree immediately to defend the HACC FHC in the lawsuit brought against it by Pamela Tubner.

    My understanding of the facts is that Ms. Tubner fell through the floor of her apartment on July 29, 2022. The HACC FHC provided notice of this incident, along with an incident report, to Kinsale on or before August 8, 2022. Ms. McKnight acknowledged

Michele Mulligan                                                                                                    P a g e | 2
May 3, 2023

receipt of this claim a month later in her September 6 letter.  During the month after receiving notice of the claim and after Ms. McKnight finally responded, Ms. Tubner's attorney apparently made several attempts to contact Ms. McKnight to discuss Ms. Tubner's demand and to try to negotiate a settlement of her claim.  Neither Ms. McKnight nor anyone else at Kinsale responded to Ms. Tubner's attorney's communications.

In her September 6 letter, Ms. McKnight surmised somehow that the "Eviction and Failure to Maintain" exclusion may operate to bar coverage for the claim.  According to that exclusion, the Kinsale policy does not respond to claims based on the violation of any "law, local order or directive" involving the duty to maintain any room or dwelling in a "safe, sanitary, healthy, habitable or tenantable condition," or to claims for "breach of any lease or rental agreement" requirement that the premises be kept in the same condition.  It is unclear how Ms. McKnight reached the conclusion that the "Eviction and Failure to Maintain" exclusion applied without the benefit of knowing anything other than that Ms. Tubner had fallen through her floor, but Kinsale reserved the right to deny coverage on this basis anyway.

Then, on March 29, 2023, Ms. Tubner filed a lawsuit against the HACC FHC and others seeking to recover for the injuries she sustained in the accident.  The HACC FHC was served with Ms. Tubner's complaint on or about April 3, 2023, and immediately provided a copy of it to Kinsale by attaching it to an email to Ms. McKnight. When Kinsale still had not acknowledged receipt of the complaint ten days later, and given the approaching deadline for the HACC FHC's answer, the HACC FHC's broker emailed Ms. McKnight again on April 13.  You responded the next day by providing your opinion in an email that you "don't believe there will be coverage for the case."  Your basis for that opinion was the "water related injury" exclusion and the "failure to maintain" exclusion.  This was the first time the HACC FHC had heard about the water related injury exclusion as it might apply to Ms. Tubner's claim; Ms. McKnight had not included that exclusion as a basis for Kinsale to deny coverage in her September 6 Reservation of Rights letter.

You also said in your April 14 email that a "formal letter will be forthcoming" but that the HACC FHC should "consult with counsel at their own expense to protect their interests."  In fact, though, no "formal letter," or any other communication from Kinsale, came for another two and a half weeks.  During this time, the HACC FHC was left to guess whether Kinsale would deny its duty to defend and the specific bases for that denial.  More importantly, were it not for an extension granted by Ms. Tubner's counsel, the deadline for the HACC FHC to answer her complaint would have come and gone, and the HACC FHC would be subject to a default judgment against it.

Finally, two and a half weeks after you promised a "formal letter" would be forthcoming and a month after the HACC FHC was served with Ms. Tubner's complaint and provided a copy to Kinsale, we received yesterday your letter on behalf of Kinsale formally declining coverage and refusing to defend the HACC FHC against the lawsuit.

Michele Mulligan  P a g e | 3
May 3, 2023

According to your letter, Kinsale is declining coverage on two separate bases. The first is the aforementioned "Water Related Bodily Injury and Property Damage" exclusion. The second is the "Eviction and Failure to Maintain" exclusion mentioned in Ms. McKnight's September 6 letter. In your letter, you also purport to "reserve the right to review and/or consider any additional facts, claims, lawsuits or amendments to this claim and to make a separate determination with regard to indemnification and defense."

For the reasons that follow, Kinsale may not both decline to defend the HACC FHC and also reserve its rights to conduct an additional investigation, to reconsider its indemnification or defense position, or to assert different coverage defenses later. And, most importantly, neither of the bases upon which Kinsale currently relies is an appropriate reason for the insurer to deny its duty to defend.

    A.    <u>Kinsale's Purported Reservation of Rights is Invalid.</u>

Under Georgia law, where an insurer is faced with a decision regarding how to handle a claim of coverage at the same time a lawsuit is pending against its insured, the insurer has three options. First, the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage. *Gant v. State Farm Mut. Auto. Ins. Co.*, 109 Ga. App. 41, 43–44 (1964). Second, the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation. *Southern Guar. Ins. Co. v. Dowse*, 278 Ga. 674(1). Or, third, the insurer can defend under a reservation of rights. *Id.* at 676, (insurer "had a choice when timely notified of the claim pending against its insured—either defend under a reservation of rights or decline to defend"). The "proper and safe course of action ... is to enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor." *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 217(1). Importantly, an insurer cannot both deny a claim outright and attempt to reserve the right to assert a different defense in the future. *See Browder v. Aetna Life Ins. Co.*, 126 Ga. App. 140, 144(2) ("ultimate denial of liability on another ground constitutes a waiver of forfeiture based on the lack of timely notice").

Contrary to Ms. McKnight's initial "reservation of rights," Kinsale is now denying its defense obligations entirely. Therefore, the insurer is no longer permitted to reserve its rights to conduct an additional investigation or to assert different coverage defenses later. If Kinsale would like to maintain the opportunity to do so, it must defend the HACC FHC under an appropriate reservation of rights. Moreover, since Ms. McKnight's reservation of rights letter was issued long before Ms. Tubner filed her complaint, it is at best ambiguous and therefore is invalid. *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 406 ("A reservation of rights is not valid if it does not fairly inform the insured of the insurer's position.").

Michele Mulligan                                                                                                          P a g e | 4
May 3, 2023

        B.        <u>Kinsale May Not Rely on its Exclusions to Avoid its Defense Obligations.</u>

As I am sure you are aware, in Georgia, an insurer's duty to defend is broader than its duty to indemnify. *Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315 (2007). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *BBL–McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497(1) (2007). The duty to defend is excused only when a complaint "unambiguously exclude[s] coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy." *Penn-Am Ins.*, 224 Ga. App. at 565-565 (emphasis added). "Where the claim is one of potential coverage, doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured." *Id.* "This principle is especially true with respect to exclusions from coverage sought to be invoked by the insurer." *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F.Supp.2d 1367, 1376 (N.D. Ga. 2009).

Moreover, "[e]ven if some of the allegations ultimately are not found to be covered by the policy, the insurer still has a duty to defend the entire action if **any** of the claims might be." *Travelers Property Cas. Co. of America v. Kansas City Landsmen, L.L.C.*, 592 Fed. Appx. 876, 882 (11th Cir. 2015) (emphasis added). Therefore, "where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012).

        1.        The "Water Related Bodily Injury and Property Damage" Exclusion Does Not Apply.

According to Ms. Tubner's complaint, the floor of her apartment "caved in and Plaintiff fell into a hole caused by the rotten plywood beneath her feet," and was injured thereby. Kinsale seeks to invoke the "Water Related Bodily Injury and Property Damage" exclusion to shirk its defense obligation. Kinsale's sole basis for doing so is a lone allegation in Ms. Tubner's complaint that the HACC FHC "had actual and constructive knowledge of the defective air conditioner and wet floor in Plaintiff's apartment and negligently failed to repair the problems."

There is no allegation that the air conditioner leaking is what caused the wet floor, something that would be necessary before this exclusion could even potentially apply. The water could have leaked from somewhere else. If so, even if the allegedly defective air conditioning was what caused the leak, the exclusion would not apply because the leak did not come from the air conditioning unit itself. Indeed, there is not even an allegation that the wet floor is what caused the rotten plywood.

Kinsale is essentially attempting to rewrite Ms. Tubner's complaint so that she expressly alleges that the air conditioning unit leaked, causing the floor to become wet,

Michele Mulligan                                                                                                    P a g e | 5
May 3, 2023

which in turn caused the plywood to rot, leading to the hole through which she fell. But that is not what Ms. Tubner actually alleged. And while Kinsale may infer that is what really happened, an insurance company's inference is not the same as an allegation. Because Ms. Tubner's actual allegations do not "unambiguously exclude coverage" under the "Water Related Bodily Injury and Property Damage" exclusion, Kinsale may not rely on this exclusion to avoid its duty to defend.

        2.        The "Eviction and Failure to Maintain" Exclusion Does Not Apply.

Next, Kinsale again attempts to recast Ms. Tubner's complaint to avoid its defense obligations, this time by characterizing her claim as one for breach of the lease agreement or a violation of some "law, local order or directive." If those actually were Ms. Tubner's claims, the "Eviction and Failure to Maintain" exclusion may apply, but they are not.

There is no specific cause of action or count included in the complaint, but the allegations and relief requested clearly imply that Ms. Tubner is proceeding under a negligence theory. For example, Ms. Tubner alleges in her complaint that "Defendants' negligence was a cause in fact and proximate cause [of] Plaintiff Pamela Tubner's injuries." According to another allegation, "[a]s a proximate and foreseeable result of the negligence of Defendants, Plaintiff Pamela Tubner received serious injuries, endured pain and suffering, mental anguish, loss of the enjoyment of life, lost wages, and suffered other damages as will be proven at trial and permitted under Georgia law."

At no point in Ms. Tubner's complaint is there any express allegation that the HACC FHC breached its lease with Ms. Tubner. Indeed, the lease isn't even mentioned in the complaint. Nor is there any allegation that the HACC FHC violated any "law, local order or directive," other than O.C.G.A. § 51-3-1, which simply requires the owner of land to exercise ordinary care in keeping the premises safe when it invites others to come upon its land. Indeed, Ms. Tubner cited to that statute only as one of many bases for her negligence claim. Other bases, having nothing to do with that statute, include that the HACC FHC failed to warn of the latent dangers on the premises; failed to properly train and supervise its employees in regard to maintenance and safety of the premises; failed to properly retain, entrust, hire, train and supervise its employees; and failed to ensure business policies, systems and security were being adequately followed, among others.[1] Any of those allegations, if proven, could expose the HACC FHC to liability for Ms. Tubner's injuries, regardless of whether the HACC FHC also violated O.C.G.A. § 51-3-1. Said another way, while the HACC FHC obviously denies that it is liable to Ms. Tubner, it is certainly feasible

---

[1] These same allegations also could expose the HACC FHC to liability without regard to whether the air conditioning unit actually leaked and caused the hole through which Ms. Tubner fell. If so, and even if coverage for the air conditioning leak otherwise would be excluded, Kinsale still would have to defend against the lawsuit because these other allegations are not unambiguously excluded under the policy.

Michele Mulligan  P a g e | 6
May 3, 2023

that Ms. Tubner could establish the HACC FHC's liability without relying on any "law, local order or directive."

Therefore, at least some of the allegations are covered under the Kinsale policy, even if those related to O.C.G.A. 51-3-1 or another statute may not be. Even if Kinsale disagrees, there can be no serious doubt that coverage for those claims is at least potentially or arguably available. Kinsale therefore owes the HACC FHC a duty to defend it against Ms. Tubner's complaint.

If Kinsale continues to decline to defend the HACC FHC, it may not reserve its rights to assert other coverage defenses in the future. Instead, Kinsale will be exposed to considerable contractual and extracontractual damages for its bad faith refusal to defend. Those damages include, among others, any judgment rendered against the HACC FHC, regardless of whether that judgment is in excess of the policy limits, plus an additional 50% of that judgment under O.C.G.A. § 33-4-6, and all attorneys' fees incurred in both the HACC FHC's defense against Ms. Tubner's lawsuit and any action to enforce the insurance policy or to recover for Kinsale's bad faith. Clearly, then, it is in Kinsale's best interests to immediately agree to defend the HACC FHC.

The HACC FHC's answer is now due on May 15. Kinsale's refusal to assume the HACC FHC's defense and to assign defense counsel in time to meet that deadline will leave the HACC FHC with no choice but to hire its own counsel and to immediately file suit against Kinsale for breach of contract and bad faith. <u>Accordingly, please let me know by close of business on Friday, May 5 whether Kinsale will agree to defend the HACC FHC.</u>

We continue to hope that this matter can be resolved amicably but we stand willing to exercise all legal means to enforce the terms of the Kinsale policy.

With best regards.

Sincerely,

Jonathan M. Palmer