

612 Moreland Ave., SE
Atlanta, GA 30316
(404) 627-2811 telephone
(404) 627-2311 facsimile

2550 Heritage Court, SE
Suite 100
Atlanta, GA 30339
ife@lspearsonpc.com

April 24, 2022

## FOR SETTLEMENT PURPOSES ONLY - NO PART OF THIS DOCUMENT OR ITS ATTACHMENTS/EXHIBITS ARE TO BE USED IN ANY LITIGATION

Via Fax: 877-213-7258

Progressive Insurance Company
P.O. Box 512926
Los Angeles, CA 90051

| Re: | Our Client: | Tyaunah Larkins |
|---|---|---|
| | Your Insured Owner: | Gill Logistics Inc. |
| | Your Insured Operator: | Harvinder Singh |
| | Date of Loss: | June 11, 2021 |
| | Claim No: | 21-6745785 |

Dear Claims Department:

Our firm represents Tyaunah Larkins for personal injuries she sustained in an automobile collision that occurred on June 11, 2021, involving your insured. We are providing you with a comprehensive settlement package in an attempt to commence meaningful settlement negotiations.

## INADMISSIBILITY OF OFFER OF COMPROMISE

Pursuant to O.C.G.A. § 24-4-408, statements made with a view toward compromise are inadmissible at trial. This Georgia law was enacted to encourage the settlement of controversies by permitting parties to discuss their cases candidly with the assurance that admissions and proposals for compromise made in the course of their good-faith settlement negotiations may not

be used against them in any subsequent lawsuit. *Nevitt v. CMD Realty Investment Fund IV, L.P.*, *282 Ga. App. 533, 639 S.E.2d 336 (2006).* This entire letter and all of the exhibits attached are submitted with a view toward compromise of this claim. If you do not agree that everything that follows is inadmissible during the litigation of this matter, please stop reading and immediately destroy this letter and its attachments and immediately notify us of your refusal to review our attempt to compromise this claim.

# I.   PERTINENT FACTS

## (a)   The Wreck

This case arises out of an automobile wreck that occurred on June 11, 2021, at approximately 12:20 p.m., on Jimmy Carter Boulevard, 50 feet west of Interstate 85, Gwinnett County, Georgia.

Our client, Tyaunah Larkins, was traveling east in the second lane from the center divider on Jimmy Carter Boulevard, moving with the traffic. At that time, your insured's operator, Harvinder Singh, was traveling in the first lane from the center divider at the same location. The subject collision occurred when your insured's operator failed to maintain his lane and struck the rear driver's side of our client's vehicle negligently. The impact of the collision caused our client to sustain severe injuries and substantial vehicular damage.



***Collision Diagram***

The collision was caused due to the negligent, careless, reckless acts and gross negligence of your insured's operator, Harvinder Singh. Georgia Police Department responded and upon investigation, Investigating Officer, William Marsh cited your insured's operator for as **"O.C.G.A. § 40-6-241 (b): Violation of Usage of Wireless Telecommunications Device"**[1].

## (b)   Personal Injuries

Upon impact, Ms. Larkins complained of injuries to her ***neck, mid and lower back*** as a direct result of your insured's negligence. A summary of her injuries and treatment are outlined below.

---

[1]See Exhibit 1 – Collision Report

## (c)    Personal Background

Ms. Larkins is a pleasant 20 year old woman. She is very personable and would come across favorably if we are not able to resolve this claim through settlement negotiations and are forced to proceed into litigation.

# II. INJURIES & MEDICAL TREATMENT

## A. Summary of Physical Injuries

- **Radiculopathy, cervical region.**
  *Diagnosis: M54.12*

- **Radiculopathy, cervicothoracic region.**
  *Diagnosis: M54.13*

- **Radiculopathy, thoracic region.**
  *Diagnosis: M54.14*

- **Lumbar Radiculopathy.**
  *Diagnosis: M54.16*

- **Left cervical segmental sprain with left shoulder girdle myofascial pain and occipital headaches.**

- **Lumbar sprain.**

- **Thoracolumbar segmental sprain.**

- **Cervicalgia.**
  *Diagnosis: M54.2*

- **Bilateral shoulder girdle myofascial pain.**

- **Cervicothoracic pain.**

- **Low back pain.**
  *Diagnosis: M54.5*

- **Left distal thigh pain with hemosiderin stain and soft tissue attrition.**

- **Pain in the right leg.**
  *Diagnosis: M79.604*

- **Myalgia of auxiliary muscles, head and neck.**
  *Diagnosis: M79.12*

- **Myalgia.**
  *Diagnosis: M79.1*

- **Paresthesia of the skin.**
  *Diagnosis: R20.2*

### B. Summary of Medical Treatment

### 1. Optimum Health[2]

On June 28, 2021, Ms. Tyaunah Larkins visited Dr. Amit Shah for consultation and evaluation at Optimum Health for the injuries sustained following a motor vehicle collision on June 11, 2021. She complained of having persistent pain in her neck, mid-back, and low back on both the right and left sides since the time of the collision. She mentioned that she did not have any pain in the affected areas prior to the collision. She described the pain as constant, severe, aching, throbbing, and shooting with tightness in the associated muscles, which was rated at 8/10 on the pain scale. She also complained that the pain radiated from the neck to the posterior head and bilateral trapezius muscles. The pain was exacerbated on performing physical activities of daily living. Ms. Larkins complained that the lower back radiated to the bilateral buttocks. Physical examination revealed decreased range of motion in the cervical and lumbar regions. Active tender and trigger points were elicited along with the cervical paraspinal and trapezius muscles bilaterally, also along with the bilateral thoracic paraspinal muscles. Tenderness on palpation was noted at the cervical and lumbopelvic regions bilaterally. Orthopedic tests revealed positive findings. Muscle tightness was also noted in the affected areas.

Ms. Larkins was diagnosed as follows:
- **Radiculopathy, cervical region (M54.12).**
- **Radiculopathy, cervicothoracic region (M54.13).**
- **Radiculopathy, thoracic region. (M54.14).**
- **Lumbar Radiculopathy (M54.16).**
- **Myalgia of auxiliary muscles, head and neck (M79.12).**

---

[2]See Exhibit 2 - Medical Records of Optimum Health

- **Paresthesia of skin (R20.2).**
- **Low back pain (M54.5).**
- **Myalgia (M79.1).**
- **Cervicalgia (M54.2).**
- **Pain in the right leg (M79.604).**



### Cervical Radiculopathy

Based on the clinical evaluation and symptoms, Ms. Larkins was recommended structured and skilled physical therapy sessions, the use of a TENS therapy unit for the persistent pain in the affected areas, nerve conduction velocity studies of the cervical and lumbar regions to ascertain the cause of the persistent pain and radicular symptoms in the neck and lower back. She was also advised to do the MRIs of the neck and lower back. Ms. Larkins was recommended the administration of trigger point injections due to the myofascial pain in the neck, mid and lower back to resolve the problem of pain and muscle spasms. She was advised to continue with the recommended chiropractic manipulative therapy sessions and treatment modalities. Trigger point injections were advised two times a week for six weeks in the cervical, thoracic and lumbar regions.

On June 30, 2021, Ms. Larkins visited Dr. Amit Shah. She complained of having persistent pain in her neck and mid and lower back, which was aggravated on performing physical activities. She described the pain as nagging, achy, and throbbing, which was located in the bilateral suboccipital areas and radiated to the right shoulder and mid-thoracic area. Ms. Larkins mentioned that she was applying moist hot/cold packs externally for the pain. She rated the pain at 8/10 on the pain scale. The physical examination revealed trigger points in the cervical, thoracic and lumbar regions. Subluxations were noted in the cervical, thoracic and lumbopelvic regions. A cervical x-ray was performed on June 30, 2021, which revealed the following:

- **A reversal of cervical lordosis at C5-C6 cervical vertebrae due to whiplash injury.**
- **Hyperlordotic curve and foraminal narrowing were noted at the L5 lumbar vertebrae and sacrum. Pelvic unleveling was noted in the lumbar region.**
- **Ligament instability was noted with decreased intervertebral disc height at C5-C7 cervical vertebrae.**

Thus, Ms. Larkins was administered a mixture of 3ml of 0.9% NaCl, 1ml of 1% lidocaine, and 1ml of 0.5% Marcaine at six trigger points in the bilateral trapezius muscles, right levator scapulae, and right splenius capitis muscles. Post-procedure, moist hot/cold packs were applied at the site of the injection and pain. Following the procedure, Ms. Larkins was taken to the recovery room, and her physical condition was stabilized. Thereafter she was explained about pain management. She was advised to continue with the ongoing physical/chiropractic manipulative therapy sessions. Ms. Larkins was prescribed Naproxen 550mg, Flexeril 7.5mg, and diclofenac sodium 1% gel for local application to the affected areas. Physical therapy was planned three times a week. Ms. Larkins was advised to complete the recommended course of physical/chiropractic manipulative therapy sessions. She was also advised to come for regular follow-up consultations for a re-evaluation of her physical condition. Ms. Larkins was also prescribed the use of a TENS therapy unit.

From June 30, 2021, through September 1, 2021, Ms. Larkins sought chiropractic consultations and evaluations at Optimum Health for the injuries. She was attended by chiropractor Dr. Laurie Felten. She reported persistent pain in her neck and mid and lower back on both sides since the time of the collision. She also complained of having numbness and tingling sensation in her right hand as well as her left leg. She described the pain as constant, frequent, severe, achy, dull, throbbing, and tight, which was rated at 8/10 on the pain scale. She complained of neck pain radiating to the posterior head as well as the left and right trapezius muscles. Also, the lower back pain radiated to the bilateral buttocks. She complained that the pain was aggravated on performing physical activities. Immediately her vitals were assessed, systems were reviewed, and medical history was obtained. Physical examination revealed a reduced and painful range of motion as well as tenderness on palpation along with the cervical, thoracic and lumbar paraspinal muscles. Pain and muscle tightness was noted in the cervical, thoracic and lumbopelvic regions. The pain was associated with stiffness and frequent muscle spasms in the affected areas. Active tender trigger points were noted in the muscles of the cervical, thoracic and lumbopelvic regions. Orthopedic tests revealed positive findings.

Ms. Larkins was diagnosed as follows:
- **Radiculopathy, cervical region (M54.12).**
- **Radiculopathy, cervicothoracic region (M54.13).**
- **Low back pain (M54.5).**
- **Myalgia (M79.1).**

Based on the clinical evaluation and symptoms, Ms. Larkins was recommended a treatment protocol that consisted of chiropractic manipulative therapy sessions, active rehabilitation, active and passive range of motion therapeutic muscle strengthening exercises, and a comprehensive home exercise program. She was also recommended chiropractic manipulative therapy sessions to address the persistent pain and restricted mobility. In the subsequent visits, Ms. Larkins was also prescribed the use of a TENS therapy unit and a posture pump. Ms. Larkins was advised to do a nerve conduction study of the lower extremities and MRIs of the cervical and lumbar spine to ascertain the cause of the persistent pain in the neck and lower back. Also, to rule out disc pathology and abnormalities, tests were advised. She was also recommended the administration of trigger point injections to address the myofascial pain in the muscles of the cervical and lumbar regions. Treatment modalities advised included chiropractic manual therapy, therapeutic exercises, therapeutic activities, TENS therapy, and bilateral trigger point injections in the muscles of the cervical, thoracic and lumbar spine two times per week for six weeks. On September 1, 2021, she was discharged from the facility.

On September 24, 2021, Ms. Larkins visited Dr. Amit Shah for evaluation and treatment of injuries. Her symptoms were persistent. Her physical examination revealed tightness, tenderness, trigger points were noted over the trapezius muscles and thoracic paraspinal muscles. Orthopedic tests were performed.

Ms. Larkins was diagnosed as follows:
- **Radiculopathy, cervical region (M54.12).**
- **Lumbar Radiculopathy (M54.16).**
- **Low back pain (M54.5).**
- **Cervicalgia (M54.2).**
- **Pain in thoracic spine (M54.6).**

Based on clinical evaluation, Ms. Larkins was prescribed specific home strengthening protocol. On the same day, she was discharged from the facility.

On July 5, 2021, Ms. Larkins complained of having persistent pain in her lower back. The pain was associated with numbness and a tingling sensation in her right hand and left leg. Post-procedure, moist hot/cold packs were applied at the site of the injection. Ms. Larkins was taken to the recovery room. Her condition was stabilized. She was explained pain management. She was advised to continue the pain medications. She was also instructed to continue with the physical/chiropractic therapy sessions. Ms. Larkins was administered trigger point injections using a mixture of 3ml of 0.9%NaCl, 1ml of 1% lidocaine, and 1ml of 0.5% Marcaine. The complete procedure was performed by Dr. Amit Shah. The injection was administered at the cervical spine muscle groups, bilateral trapezius, left levator scapulae, and left splenius capitis muscles. The indication for the administration of the trigger point injection was persistent pain in the neck which

radiated to the upper extremities. Ms. Larkins was informed that she would receive repeat trigger point injections in case her symptoms persisted or worsened. She was referred to Elite Radiology of Georgia for an MRI of the lumbar spine to ascertain the cause of the persistent pain in her lower back. She was also advised to continue with the application of ice packs at the site of pain.

On July 7, 2021, Ms. Larkins underwent a repeat administration of the recommended trigger point injections for the indication of persistent pain, stiffness, and frequent muscle spasms in her neck, which radiated to her left shoulder and mid-back. She informed that in spite of taking the prescribed pain medications and therapeutic medical management, the pain was persistent in the affected areas. She rated the overall pain at 7/10 on the pain scale. On the same day, Ms. Larkins was administered trigger point injection at four trigger points (mixture of 3ml of 0.9%NaCl, 1ml of 1% lidocaine, and 1ml of 0.5% Marcaine) at the bilateral trapezius, left levator scapulae, and left splenius capitis muscles. The complete procedure was performed by Dr. Amit Shah. Post-procedure she was taken to the recovery room, and her physical condition was monitored. Thereafter she was informed that she would be administered a repeat trigger point injection in the affected areas if required. She was instructed to continue with physical/chiropractic therapy sessions and medications. She was also advised to apply ice at the site of pain.

On July 9, 2021, Ms. Larkins underwent a repeat administration of the recommended trigger point injections for the indication of cervical radiculopathy. The injections were administered at the bilateral trapezius, left levator scapulae, and left splenius capitus muscles. Following the procedure, she was advised to continue with the ongoing physical/chiropractic manipulative therapy sessions. She was also advised to continue with the pain medications. She was informed that she would be considered for a repeat administration of the trigger point injection in case her symptoms and pain remained persistent in the cervical region. She was also advised of ice application at the site of pain and the use of a TENS therapy unit.

On July 12, 2021, Ms. Larkins underwent a repeat administration of the recommended trigger point injection at the thoracic region. Multiple trigger points were noted in the thoracic paraspinal muscles. Thus, Ms. Larkins was administered the recommended trigger point injections in the bilateral trapezius, left longissimus thoracic, and major rhomboid muscles. Post-procedure, Ms. Larkins was advised to ice application at the site of pain and continue the use of the TENS therapy unit. Her physical condition was stabilized. She was advised to continue with the pain medications and physical/chiropractic therapy. She was also advised to do Nerve Conduction Velocity studies of the lower extremities to ascertain the cause of the consistent pain in her lower back.

On July 14, 2021, Ms. Larkins underwent a repeat administration of the recommended trigger point injection for the indication of cervical radiculopathy. The complete procedure was performed by Dr. Amit Shah. The trigger point injection was administered at the bilateral trapezius, thoracic

spine muscle groups, bilateral rhomboid, and bilateral longissimus thoracic muscle. The pain was persistent in the mid and lower back.

Ms. Larkins was informed that she would be considered for a repeat trigger point injection in case the pain was persistent along her neck and mid-back. She was also advised to continue with the ice application, physical/chiropractic therapy, and pain medications.

On July 16, 2021, Ms. Larkins underwent a repeat administration of the recommended trigger point injections for the indication of persistent pain along the neck, mid-back, and upper low back region. The trigger point injection was administered at the thoracic spine muscle groups, bilateral trapezius, bilateral rhomboid major, and bilateral longissimus thoracic muscles. Following the procedure, Ms. Larkins was taken to the recovery room, and her physical condition was stabilized. Ms. Larkins was advised to continue the ice application, physical/chiropractic therapy, and pain medications.

On July 23, 2021, Ms. Larkins underwent a repeat administration of the recommended trigger point injections for the indication of persistent pain along the neck and mid-back. The trigger point injections were administered at the thoracic muscle groups, bilateral trapezius, right rhomboid minor, and right longissimus thoracic muscle. Following the procedure, Ms. Larkins was taken to the recovery room, and her physical condition was stabilized. Thereafter she was advised to ice application, physical/chiropractic therapy sessions, and pain medications.

On July 26, 2021, Ms. Larkins underwent the repeat administration of the recommended trigger point injections for the indication of persistent pain in her neck and lower back. The trigger point injection was administered in the thoracic spine muscle groups, bilateral trapezius, right rhomboid minor, and right longissimus muscles. Following the procedure, Ms. Larkins was taken to the recovery room, and her physical condition was stabilized. She was advised to continue with the prescribed pain medications, physical/chiropractic therapy, and ice application at the site of pain.

On July 28, 2021, Ms. Larkins underwent a repeat administration of the recommended trigger point injections for the indication of persistent pain in her neck, mid, and upper low back. The procedure was performed by Dr. Amit Shah. The trigger point injection was administered at the cervical spine muscle groups, trapezius, levator scapulae, and the splenius capitis muscles bilaterally. Following the procedure, Ms. Larkins was taken to the recovery room, and her vitals were monitored. She was advised to continue with the moist hot/ cold packs application, pain medications, and physical /chiropractic therapy.

On July 30, Ms. Larkins underwent a repeat administration of the recommended trigger point injection for the indication of persistent pain in her neck, mid, and upper low back. The trigger point injection was administered at the thoracic spine muscle groups, trapezius, right rhomboid

minor, and right longissimus thoracic muscles bilaterally. The complete procedure was performed by Dr. Amit Shah. Following the procedure, Ms. Larkins was taken to the recovery room, and her vitals were monitored. She was advised to continue the application of ice at the site of pain, as well as continued use of the prescribed medications and physical/chiropractic therapy sessions.

Ms. Larkins was informed that she would be considered for a repeat administration of the trigger point injections in case her pain persisted or worsened. On August 18, 2021, Ms. Larkins was referred to Alliance for pain management consultation for the further medical management of the persistent pain in the affected areas.

The administration of the trigger point injections was performed by Dr. Amit Shah. The medications used were a mixture of 3ml of 0.9% NaCl, 1ml of 1% lidocaine, and 1ml of 0.5% Marcaine at all times.



Muscle     Trigger point

### Trigger Point Injection

*A trigger point is a tender spot within your muscle. Trigger points are typically caused by mechanical factors—that is, factors that put strain or stress on your muscles. A spinal trauma, like whiplash from a car accident or a sports-related injury, can cause trigger points to form. **A trigger point injection** (TPI) is an injection that is given directly into the trigger point for pain management. The injection may be an anaesthetic such as lidocaine (Xylocaine) or bupivacaine (Marcaine), a mixture of aesthetics, or a corticosteroid (cortisone medication) alone or mixed with lidocaine. Sometimes, a needle alone is inserted into the trigger point, and no medication is injected. This may be helpful and is referred to as "dry needling." With the injection, the trigger point is made inactive and the pain is relieved. TPI is used to treat many muscle groups, especially those in the arms, legs, lower back, and neck. In addition, TPI can be used to treat fibromyalgia and tension headaches. The technique is also used to alleviate myofascial pain syndrome (chronic pain involving tissue that surrounds muscle) that does not respond to other treatments. There are*

*two broad types of TPIs, namely injection by manual palpation and needle EMG-guided injection. Diagnostic ultrasound helps provide visible, high-resolution images of injured areas without using radiation or causing patients further discomfort. Ultrasound imaging is safe and non-invasive. Musculoskeletal ultrasound is always comfortable for patients and can be used as many times as necessary. Musculoskeletal ultrasound improves the accuracy of treatments, helping to differentiate muscles, tendons, ligaments, joints, and nerves. It is extremely useful to locate the precise injured area.*

## 2.  Integrated Health Care[3]

On July 14, 2021, Ms. Larkins was subjected to the EMG and Nerve Conduction Velocity study of the bilateral lower extremities for the indication of persistent pain in her lower back. The test was advised by Dr. Amit Shah and revealed the following:

- **The evaluation of the left peroneal motor nerve revealed decreased conduction velocity.**
- **The right peroneal nerve revealed a decreased conduction velocity.**
- **The left tibial motor nerve revealed reduced amplitude (2.9mV) and decreased conduction velocity.**
- **The right tibial motor nerve revealed reduced amplitude (1.5mV).**
- **There was evidence of acute L5 and S1 lumbosacral radiculopathy.**

## 3.  Elite Radiology of Georgia[4]

On July 22, 2021, Ms. Larkins underwent an MRI of the lumbar spine, which was advised to her by chiropractor Dr. Laurie Felten to ascertain the cause of the persistent pain in her lower back. The test was evaluated by Dr. Chintan Desai and revealed the following:

- **At L4-L5 lumbar vertebrae, an intervertebral disc bulge was noted compressing the thecal sac and causing some left neuroforaminal narrowing.**
- **At L5-S1 lumbar vertebrae, an intervertebral disc bulge was noted compressing the thecal sac on the ventral epidural fat.**

---

[3] See Exhibit 3 - Medical Records of Integrated Health Care
[4] See Exhibit 4 - Medical Records of Elite Radiology of Georgia



**Disc Bulge**

*As per the research, A herniated disc (also called **a bulged disc**, slipped or ruptured) is a fragment of the **disc** nucleus that is pushed out of the annulus, into the spinal canal through a tear or rupture in the annulus. Most herniated disks occur in the lower back, although they can also occur in the neck. Signs and symptoms depend on where the disk is situated and whether the disk is pressing on a nerve. They usually affect one side of the body. A herniated disk, which can occur in any part of the spine, can irritate a nearby nerve. Disc protrusions are a type of disc herniation characterized by protrusion of disc content beyond the normal confines of the intervertebral disc, over a segment less than 25% of the circumference of the disc. The width of the base is wider than the largest diameter of the disc material which projects beyond the normal disc margins. Medical management includes medical intervention in the form of pain medications or in severe cases it may include surgical management. Therapeutic management is also essential in the form of physical / chiropractic therapy / therapeutic massage.*

## 4.  Georgia RegenRX[5]

From September 21, 2021, through December 9, 2021, Ms. Larkins sought chiropractic consultations and evaluations at Georgia RegenRX. She was attended by chiropractor Dr. Robert Lee. She reported having persistent pain in her neck, left shoulder girdle, mid-back, left lateral and distal thigh since the time of the collision. Her vitals were assessed, systems were reviewed, and medical history was obtained.

Physical examination revealed pain in the lumbar region. Pain on palpation was noted in the left C4-C5 cervical facet joints. The pain was also noted in the left upper head of the trapezius muscle. Pain on palpation was noted in the GON groove bilaterally at the nuchal ridge. A painful range of

---

[5]See Exhibit 5 - Medical Records of Georgia RegenRX

motion was noted in the cervical and thoracic spine. The pain was noted with PA mobilization in the midline at T12-L1 vertebrae. The pain was elicited with rolling of the thoracic paraspinal muscles at the lower thoracic region (more on the left side). The pain was elicited on palpation of the left thigh. The restricted osseous joint motion was noted at C5-C6 cervical vertebrae with pain on palpation on the left side. The restricted movement was also noted at the left knee joint. Tenderness was noted at the popliteal fossa. MRI of the lumbar spine dated July 22, 2021, was reviewed, which revealed abnormalities.

Ms. Larkins was diagnosed as follows:

- **Left cervical segmental sprain with left shoulder girdle myofascial pain and occipital headaches.**
- **Neck sprain.**
- **Thoracolumbar segmental sprain.**
- **Lumbar sprain.**
- **Cervicothoracic pain.**
- **Bilateral shoulder girdle myofascial pain.**
- **Left distal thigh pain with hemosiderin stain and soft tissue attrition.**

Based on the clinical evaluation and symptoms, Ms. Larkins was advised to continue with the recommended chiropractic manipulative therapy sessions. She was recommended a Softwave TRT, laser, and decompression table therapy. She was also prescribed Tab Celebrex 200 mg and Tab Zanaflex 4 mg for persistent pain and muscle spasms. She was prescribed the use of a fit orthotic for her feet. Ms. Larkins was advised to do an MRI of the cervical spine to ascertain the cause of the persistent pain in her neck, which radiated to the bilateral upper extremities. Ms. Larkins was recommended a treatment protocol that consisted of chiropractic manipulative therapy sessions, active rehabilitation, active and passive range of motion muscle strengthening exercises, and a comprehensive home exercise program. Treatment modalities included spinal adjustment, vertebral axial decompression, extracorporeal shockwave procedures, low-level laser therapy, and chiropractic manipulative therapy. Ms. Larkins was instructed to complete the recommended chiropractic manipulative therapy sessions. She was also advised to come for regular follow-up consultations for a re-evaluation of her physical condition. She attended the complete course of the recommended chiropractic therapy sessions at the facility.

On September 29, 2021, Ms. Larkins visited Dr. Robert Windsor for evaluation and treatment of injuries. She complained of pain in the neck, left shoulder girdle, mid-back, left lateral and distal thigh. Physical examination revealed pain in the lumbar region. Pain on palpation was noted in the left C4-C5 cervical facet joints. The pain was also noted in the left upper head of the trapezius muscle. Pain on palpation was noted in the GON groove bilaterally at the nuchal ridge. A painful range of motion was noted in the cervical and thoracic spine. The pain was noted with PA mobilization in the midline at T12-L1 vertebrae. The pain was elicited with rolling of the thoracic

paraspinal muscles at the lower thoracic region (more on the left side). The pain was elicited on palpation of the left thigh. The restricted osseous joint motion was noted at C5-C6 cervical vertebrae with pain on palpation on the left side. The restricted movement was also noted at the left knee joint. Tenderness was noted at the popliteal fossa. MRI of the lumbar spine dated July 22, 2021, was reviewed, which revealed abnormalities.

Ms. Larkins was diagnosed as follows:

- **Left cervical segmental sprain with left shoulder girdle myofascial pain and occipital headaches.**
- **Thoracolumbar segmental sprain.**
- **Soft tissue injury with probable left lateral thigh permanent hyperpigmentation.**

Based on clinical evaluation, Ms. Larkins was advised to continue chiropractic care. She was given a softwave TRT, Laser, and Decompression table six times. She was prescribed Tab Celebrex 200 mg and Tab Zanaflex 4 mg. She was advised to fit orthotics for her feet. She was recommended an MRI of the cervical spine.

## III. SPECIAL DAMAGES

Special damages which actually flow from a tortious act and must be proved in a specific amount 51-12-2(b).

Special damages in an auto wreck are medical expenses, hospital bills, ambulance bills, doctor's bills, physical therapist bills, and lost earnings or income and any other item of money damages that are quantifiable.

These are damages sustained as a result of the injuries directly caused by the negligence of another. There are two main areas of special damages in this particular personal injury case:

**(a)     Medical Expenses**

Medical expenses are the costs of diagnosis, cure, mitigation, treatment, or prevention of disease, and the costs for treatments affecting any part or function of the body. If the plaintiff must undergo testing or treatment, or if the plaintiff must receive medical care of any type, such as hospital stays, nursing home stays, or physical therapy, the defendant must pay for the costs of the medical bills. The medical portion of damages should include every expense that the plaintiff has had to pay out over the course of receiving treatment at the time when the case is settled or when the jury awards damages and should also factor what the future costs will be to the plaintiff.

## 1. Past Medical Expenses

Plaintiff has the right to be compensated for the full amount of her past medical expenses that are related to the treatments for the injuries she sustained in the incident in question.

Past medical expenses include doctor's bills, emergency room bills, hospital bills, nursing home bills, and other measures of damages that can be calculated. Georgia Courts will allow plaintiffs, plaintiff's family member, or the person responsible for the care of the plaintiff to identify the medical bills and to prove that the charges were reasonable and necessary. *Hart v. Shergold, 295 Ga. App. 94, 96, 670 S.E.2d 895, 898 (2008); Ga. Code Ann., § 27-7-9.* The plaintiff need not produce an expert witness to prove the reasonableness and necessity of the charges.

A summary of Ms. Larkins's wreck-related medical bills are as follows[6]:

| Provider | Dates of Treatment | Amount Owed |
|---|---|---|
| Optimum Health | 06/28/21 - 09/24/21 | $14,605.00 |
| Elite Radiology of Georgia | 07/22/21 - 07/22/21 | $1,950.00 |
| Georgia RegenRX | 09/21/21 - 12/09/21 | $15,920.00 |
| **Total** | | **$32,475.00** |

## 2. Future Medical Expenses[7]

The Georgia Code reads that "necessary expenses consequent upon an injury are a legitimate item in the estimate of damages." Ga. Code Ann., § 51-12-7. To warrant future medical expenses, there must be evidence that the injury will require that future medical attention. *Massie v. Ross, 211 Ga. App. 354 (1993).* The plaintiff must provide competent evidence to guide the jury in arriving at a reasonable value for such expenses. *Hart v. Shergold, 295 Ga. App. 94 (2008).* While courts require competent evidence, they will allow some degree of speculation as to the reasonable value. *White v. Jensen, 257 Ga. App. 560 (2002)* (the testimony of a physician, wherein she "guessed" as to the cost of a future surgical repair but listed some specific costs in the estimated figure given, was sufficient to authorize an award for future medical expenses). Future medical expenses should be reduced to present cash value. *Hughes v. Brown, 109 Ga. App. 578 (1964).*

*It was evaluated at Optimum Health that based on the type of injuries sustained; there were chances of frequent tearing and stretching of the affected tissue structures as well as damage produced from local micro-hemorrhage. Ms. Larkins was informed that in case her pain and symptoms persisted or worsened, then she would be considered for further additional sessions of chiropractic manipulative therapy, which would cost $240.00 per visit of treatment.*

---

[6] See Exhibit 6 – Medical Billing Records
[7] See Exhibit 7 – Future Medical Estimate

**(b)    Medical Necessary Travel and Treatment Time**

Plaintiff has the right to be compensated for any time missed from work because of her injuries. This includes hours missed to go to the doctor and the use of sick time or vacation time to recover. Ms. Larkins is entitled to compensation for the time she spent traveling to and treating with her medical providers. But for the wreck Ms. Larkins could have spent this time as she chose.

Loss of time is a more expansive concept than lost wages. Loss of time may be sought even by a plaintiff who was unemployed at the time of the injury.

Ms. Larkins attended Thirty Nine (39) medical appointments; each appointment lasting approximately 20-60 minutes. When combined, treatment and travel time lasted an average of 1 hour each visit, therefore she spent approximately Thirty Nine (39) hours traveling to and receiving medical treatment; which should be considered when evaluating her claim.

As a direct result of her injuries and required treatment, Ms. Larkins incurred transportation expenses from traveling to and from medical appointments, we have calculated those expenses as follows:

| Provider | # of trips | Roundtrip mileage | Total Mileage | Total Expense |
|---|---|---|---|---|
| Optimum Health | 21 | 32.4 | 680.4 | $108.86 |
| Elite Radiology of Georgia | 1 | 15.8 | 15.8 | $2.53 |
| Georgia RegenRX | 17 | 23.2 | 394.4 | $63.10 |
| **Total** | **39** | **71.4** | | **$174.50** |

### IV. GENERAL DAMAGES

General damages are those which Georgia law presumes flow from a tortious act and may be recovered without proof of a specific amount. The exact types of general damages will vary widely from case to case. General damages in an auto wreck may include physical pain and suffering, mental pain and suffering, emotional distress and a diminished capacity to work, labor or earn money. These are damages that cannot be proven to an exact amount, and usually consist of:

**(a)    _Pain and Suffering_**

Pain and suffering damages are the central type of general damages. Pain and Suffering is a host of injuries that a plaintiff may suffer as a result of a wreck. It encompasses not just physical pain, but also emotional and mental injuries such as fear, insomnia, grief, worry, inconvenience and even the loss of the enjoyment of life.

Generally a fair pain and suffering award will depend on many factors including medical bills, the conduct of the defendant, and the venue where the case is to be tried. Georgia courts have also identified several factors that are to be considered by a jury in arriving at a fair value for a pain and suffering award.

These factors were outlined in *Food Lion v. Williams, 219 Ga. App. 352 (1995)*. The Food Lion decision is the leading case on pain and suffering damages in Georgia. The factors are as follows:

- Interference with normal living;
- Interference with enjoyment of life;
- Loss of capacity to labor and earn money;
- Impairment of bodily health and vigor;
- The fear of extent of injury; Shock of impact;
- Actual pain and suffering; Past and future;
- Mental anguish; and
- Must limit activities for rest of life.

The law recognizes two kinds of "pain and suffering" claims: mental and physical.
[1] Mental pain and suffering involves things like fear, embarrassment, humiliation, anger, depression, and other emotions that hinder the enjoyment of living which result from the wreck and its aftermath. Post-Traumatic Stress Disorder (PTSD) can also be a type of mental pain and suffering.

[2] Physical pain and suffering includes not only the pain and trauma experienced by the wreck victim at the time of the injury, but the pain and discomfort experienced during the recovery process and into the future. This would include compensation for one's inability to perform physical activities, as well or as often as one used to perform prior to the incident.

Ms. Larkins suffered physical strain and emotional distress. She experienced fright and pain from the initial collision, as well as continuing pain from her injuries. The pain had a significant impact on Ms. Larkins's life, as it negatively affected all aspects: recreation, and daily living activities.

Since this collision, our client has suffered frequent nagging and persistent pain throughout her neck, shoulder, back, forearm, and knee. Her injuries resulted in permanent restrictions and chronic discomfort.

Due to the amount of pain and suffering caused by your insured's negligence, we believe the jury would award **$32,000.00** which is a reasonable determination of Ms. Larkins's pain and suffering.

**(b)**  *Mental Anguish*

In order to recover mental pain and anguish damages in Georgia, the injured person must be involved in an incident by hearing, seeing or showing up to the scene at the time of the traumatic event, and the injured person must suffer mental distress and accompanying physical impairment within a short while after the incident.

Our Client suffered mental suffering which includes loss of enjoyment of life, fear, anger, humiliation, anxiety, shock and/or psychosomatic physical symptoms.

We believe a minimal sum that would compensate Ms. Larkins for her mental anguish would be **$32,000.00**.

**(c)**  *Inconvenience for the injury*

It is clear that many things have been radically altered in our client's life since this incident occurred. She has lost the full use and mobility of her neck, shoulder, back, forearm, and knee and has permanent impairments there. It is painfully apparent that our client's injuries have taken what was already an unfortunate and difficult situation and have made it dramatically worse. Life has become a chore just to do normal things.

Our client is currently frustrated in her efforts to provide assistance to her friends and family which, as a devoted family woman and friend, she was accustomed to doing. Now, she has been forced to focus more on herself. Where she once enjoyed a normal, independent lifestyle, she now relies and depends on family and friends to provide assistance when needed. she  has been prevented from going out with her family and friends, and in fact, spends a large part of her time now confined to her home with little to do.

We believe a jury would award **$32,000.00** for her inconvenience for the injury.


## V. LIABILITY

We view this case as one of 100% liability against your insured Gill Logistics Inc., as Harvinder Singh failed to pay attention to traffic, obey the rules of the road, and otherwise exercise ordinary and reasonable care while operating a vehicle which makes your insured vicariously liable. Accordingly, Ms. Larkins is entitled to 100% recovery for her injuries.

## VI. DAMAGES SUMMARY

| Past Medical Expenses | $32,475.00 |
|---|---|
| Future Medical Expenses | $240.00 |
| Travel/Treatment Time | To be supplemented |
| Mileage Expense | $174.50 |
| Pain and Suffering | $32,000.00 |
| Mental Anguish | $32,000.00 |
| Inconvenience for the injury | $32,000.00 |
| **Total Damages** | **$128,889.50** |

## VII. CONCLUSION

We believe that the above-evaluation is a fair and reasonable estimate of Tyaunah Larkins's damages. As you will note, Ms. Larkins's special and general damages total *at least* **$128,889.50.** However, in the interest of compromise, we will recommend that our client accepts $ 400,000.00 **as full settlement of this claim in exchange for a full release of Progressive Insurance Company and their insured.**

## OFFER OF COMPROMISE PURSUANT TO O.C.G.A. § 9-11-67.1

Please be aware that this offer of compromise is governed by the terms of O.C.G.A. § 9-11-67.1, and any and all terms here of are to be construed as having the meaning and interpretation consistent with the language and intent of O.C.G.A. § 9-11-67.1.

Attorney for Plaintiff

Laquetta Pearson

Enclosures
cc: Tyaunah Larkins