**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ANTHONY OLIVER, REGINALD PRIDDY, Individually and on behalf of all others similarly situated. | Case No.: _____ |
| Plaintiffs , | JURY DEMAND |
| vs. | **CLASS ACTION COMPLAINT** |
| JPAY, L.L.C., a Florida limited liability company; | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Anthony Oliver, and Reginald Priddy, ("Plaintiffs"), by and through their counsel, bring this class action lawsuit pursuant to 42 U.S.C. § 1983, and respectfully request this Court issue an award granting Plaintiffs compensatory damages, declaratory, injunctive, pre-judgment interest, post-judgment interest, attorneys' fees and costs.

## NATURE OF THE ACTION

1. As detailed below, JPay, Inc. ("JPAY") has engaged in a scheme to intentionally deprive Plaintiffs and the members of the putative class, who are all inmates incarcerated by the Georgia Department of Corrections ("GDC"), and the Department of Corrections in other states, their JPAY inmate tablets that they purchased from JPAY during the annual sale whereas JPAY sold in excessive of five million tablets known as the JP5 tablet, ("JP5 tablets"), in which Plaintiffs paid JPAY for the new JP5 tablets then later, JPAY ordered Department of Correction personnel from several

PLAINTIFF'S CLASS ACTION COMPLAINT

states to take back the very JP5 tablet that Plaintiffs and the members of the putative class paid actual funds for.

## PARTIES

2. Plaintiff Anthony J. Oliver, ("Mr. Oliver"), is an adult individual and citizen of Georgia. Mr. Oliver is permanently domiciled in the State of Georgia.

3. Plaintiffs Reginald L. Priddy, ("Mr. Priddy"), is an adult individual and citizen of Georgia. Mr. Priddy is permanently domiciled in the State of Georgia.

4. Defendant, JPay, L.L.C., ("JPAY"), is incorporated in Delaware and maintains a corporate office in Miramar, Florida. Defendant JPAY maintains a registered agent is Georgia, and can be served with service of process through its regsitred agent C.T. Corporation located at 289 S. Culver Street, Lawrenceville Georgia, 30046.

5. JPay touts itself as "the most trusted name in corrections" and offers myriad services to the correctional industry in over 46 states.

## JURISDICTION AND VENUE

6. This federal Court has general diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity between Plaintiffs and Defendants. This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d).

7. CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of at least one Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

8. Venue is proper in the United States District Court in and for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

PLAINTIFF'S CLASS ACTION COMPLAINT

## COMMON FACTUAL ALLEGATIONS

9. Sometime in 2014, Defendant JPAY entered into contracts with over 31 Department of Corrections throughout the United States to provide incarcerated prisoners and inmates with inmate issue tablets that is similar to an Apple iPad that allows a inmate to send JPAY approved emails to family, friends, and lawyers from the palm of their hands. Over the years, JPAY expanded the scope of their contracts to ensure that every inmate in any Department of Corrections had an inmate issued tablet regardless if the inmate had funds on their inmate trust account, or were indigent. The JPAY tablet comes equipped with the tablet, a 12 volt charger, headphones, and an instruction sheet on how to operate the JPAY tablet.

10. Upon information and belief, on or about February of 2014, JPAY entered into a contract with the Georgia Department of Corrections, ("GDC"), to install a kiosk machine in each housing unit in every GDC prison facility. The kiosk machine requires each inmate with a inmate tablet to sync the tablet to the kiosk by using a USB cable from the central kiosk machine, to the tablet to purchase and  download music, and updates. Acting under the color of authority, [1] GDC allowed JPAY exclusive access to Plaintiffs, and members of the classes money through their inmate trust accounts.

11. In 2020 when the world was facing a pandemic, JPAY sought to put in place the biggest money making scheme to take advantage of the most vulnerable people, GDC inmates, and their families. Defendant JPAY advertised that it had new JPAY tablets in stock, and was offering the tablets for sale to GDC inmates, and incarcerated prisoners throughout the United States. JPAY further advertised that inmates could pay JPAY directly from their inmate trust account with GDC.

---

[1] One way to show that a private corporation is acting under the color of authority, is to attach a copy of the contract between GDC and JPAY to the complaint. However, Plaintiff Oliver sent a letter to JPAY requesting a copy of the contract, but JPAY refused to provide the contract to him.

PLAINTIFF'S CLASS ACTION COMPLAINT

12. Once the Plaintiffs Anthony Oliver and Reginald Priddy decided to purchase a new tablet known as the JP5 tablet, ("JP5 tablet"), from JPAY, it would then tap into their inmate trust account to withdraw the funds. Acting under the color of authority, GDC then allows JPAY to withdraw the funds for the new JP5 tablet, and then JPAY would then mail the new tablets to inmates, including the Plaintiffs and the members of the class throughout the United States to their respective prisons and institutions.

13. Unbeknownst to Plaintiffs and the members of the class, JPAY had already put in place their money making scheme.

**A.    Plaintiff Anthony Oliver**

14. On or about March 14, 2021, Plaintiff Anthony Oliver purchased a new JP5 tablet from JPAY after it advertised that that it was selling new tablets with accessories that included tablet charger, headphones, and instructions.

15. Over four months later, Plaintiff Oliver received his new JP5 tablet, but was unsuccessful in syncing the tablet to the inmate kiosk at his prison facility despite numerous attempts. Plaintiff Oliver was only able to use the tablet to listen to the guilty AM/FM radio station.

16. On or about September 5, 2023, the GDC staff at all GDC prison facilities issued a memorandum and order to all GDC inmates statewide that JPAY, acting under the color of authority, wanted back all of their JPAY inmate tablets that inmates, including Plaintiffs and the members of the class paid money to JPAY for. At the direction of JPAY, GDC staff informed inmates, including Plaintiff Oliver that if he did not return and/or surrender the JP5 tablet that he purchased to GDC staff, then GDC would be issuing GDC inmates like the Plaintiffs, a Disciplinary Report, ("DR").

17. In the purported memorandum, JPAY stated to GDC and its inmates that JPAY was allegedly installing new JPAY kiosk machines, and would be issuing all GDC inmates with a new JPAY tablet. However it may be, this was false as JPAY never had any intention of installing new kiosk machines, or issuing GDC inmates like the Plaintiffs, a new JPAY tablet. Rather, JPAY engineered this scheme to ensure it would get back all of its sold merchandise to resell to other inmates throughout the United States.

PLAINTIFF'S CLASS ACTION COMPLAINT

18. In GDC, if an inmate receives a DR, and is found guilty, the guilty adjudication causes an inmate's security level to rise, the loss of privileges, and family visits. Fearing that Plaintiff Oliver would receive a DR, he surrendered his JP5 tablet that he paid JPAY for to his unit manager.

19. Plaintiff Oliver sent a demand letter to JPAY at its corporate office in Florida requesting a refund. Instead of receiving his money back, JPAY paid a Florida lawyer to mail him a boilerplate letter offering his $ 30.00 in media credits to resolve his grievances, and complaints. Hence, because Plaintiff Priddy did not have his JPAY tablet, there was no way to enjoy or accept the $ 30.00 because he has no JP5 tablet.

**B.    Plaintiff Reginald Priddy**

20. On or about September 8, 2021, Plaintiff Reginald Priddy purchased a new JP5 tablet from JPAY that was supposed to be equipped with the tablet, headphones, 12-volt charger, and instructions.

21. After Plaintiff Priddy paid money for the new JP5 tablet, he received the new JP5 tablet he paid for, and was mailed to his current prison. The JP5 tablet came equipped with headphones, charger, and instructions.

22. On or about September 14, 2022, Plaintiff Priddy, Plaintiff Oliver, and inmates across Georgia, were again ordered to surrender their new JP5 tablets to the GDC staff to only have GDC return their purchased tablets back to JPAY.

23. Fearing that Plaintiff Priddy would also receive an inmate DR, Plaintiff Priddy surrendered his purchased JP5 tablet, and all of its accessories. And Plaintiff Priddy never had the opportunity to sync his inmate tablet to the new JPAY kisok. Plaintiff Priddy sent a demand letter to JPAY at its corporate office in Florida requesting a refund. Instead of receiving his money back, JPAY paid a Florida lawyer to mail him a boilerplate letter offering his $ 30.00 in media credits to resolve his grievances, and complaints. Hence, because Plaintiff Priddy did not have his JPAY tablet, there was no way to enjoy or accept the $ 30.00 because he has no JP5 tablet.

PLAINTIFF'S CLASS ACTION COMPLAINT

24. Acting under the color of authority, JPAY, upon information and belief, paid a percentage of the funds Plaintiffs and members of the class, paid form their tablets, to GDC and other Department of Corrections throughout the United States for collecting the JPAY for the JP5 tablets and sending them back to JPAY for it to keep their scheme going by reselling the JP5 tablets to inmates in other states.

25. Plaintiff Oliver or Plaintiff Priddy never consented to having their property illegally taken away, or their money taken for merchandise that JPAY never intended to allow inmates to keep till the day they are released from their incarceration. This is nothing more then a pyramid scheme that continues to this date throughout the United States.

26. Additionally, JPAY's website includes a page that purports to represent "JPay Terms of Service." Plaintiff Oliver and Plaintiff Priddy were not affirmatively presented with, and therefore did not review, the "JPay Terms of Service" prior to purchasing a new JP5 tablet. Even assuming arguendo, that JPAY's Terms of Service ever became part of a contract between Plaintiffs and JPAY, JPAY breached the terms of that contract because JPAY illegally seized Plaintiffs property, and failed to provide Plaintiffs and members of the class with a refund. Likewise, Plaintiffs Oliver and Priddy never consented to any Arbitration.

### The Scheme to Defraud and Deprive Plaintiffs And The Class of Their Lawful Property

27. JPAY worked in concert with the GDC to unlawfully deprive Plaintiffs and other putative class members of their property, by ensuring that they would have to surrender and dispose of their purchased JP5 tablets.

28. To that end, JPAY with intent, and reckless disregard for Plaintiffs' and the members of the putative class's rights knowingly deprived them of their property for JPAY's pecuniary gain. JPAY expressly drafted the memorandum that was sent to all inmates and GDC support staff statewide, and sent to the Department of Corrections in other States. Moreover, as part of the its contract with the GDC, JPAY specifically received a list of all GDC inmates who purchased JPAY JP5 tablets. JPAY was directly aware that the

_____
PLAINTIFF'S CLASS ACTION COMPLAINT

GDC was actively denying inmates access to their legally purchased merchandise, and did nothing to respond.

29. Despite previous assurances from JPAY that inmates would "always own" their purchased inmate JP5 tablets they had purchased under the previous program, the GDC with JPAY's direct knowledge and assistance, did not permit inmates to keep their tablets, or mail them home to family, friends, or loved ones as JPAY announced during their sale of the JP5 tablets..

30. Well over a year later, JPAY still has not installed new kiosk machines, or issued Plaintiffs and members of the class with new tablets much less refunded their money.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs Anthony Oliver and Reginald Priddy bring this action as a class action, pursuant to Rule 23(a) and 23(b)(3), Federal Rules of Civil Procedure on behalf of themselves and a class of all persons similarly situated.

32. **Description of the Class**: Plaintiffs Anthony Oliver and Reginald Priddy brings this class action pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and are member of, and seeks to represent, a class of persons and entities defined as:

> **All inamtes after January 1, 2019, until the present, throughout the United States who purchased new jpay tablet and was taken, or will be taken by Jpay.**

33. Excluded from the putative class are the Defendants, Defendants' directors and officers, immediate families of Defendants' directors and officers, and any entity in which the Defendants maintained a controlling interest, or that is related to or affiliated with the Defendants, or the legal representatives, agents, affiliates, heirs, successors-in-interests or assignees of any such excluded person. Also expressly excluded from the class are any persons and entities who have filed claims against any of the Defendants which are currently pending.

PLAINTIFF'S CLASS ACTION COMPLAINT

34. **Numerosity (Fed. R. Civ. P. 23(a)(1)** - The members of the putative class are so numerous that joinder of all members is impracticable. Plaintiffs estimate that the number of putative class members to be tens of thousands or millions.

35. The precise number of putative class members can easily be ascertained by the records of Defendant JPay.

36. Notice may be provided to class members using first-class mail and other means by Defendant JPAY.

37. **Commonality (Fed. R. Civ. P. 23(a)(2))** - Common questions of law and fact exist as to all putative class members and predominate over questions affecting individual putative class members. Among the questions of law and fact common to the putative class are:

a. Whether JPay breached its contracts with Plaintiffs and the putative Class;

b. Whether Jpay is liable to Plaintiffs and the putative class for breach of contract;

c. Whether Jpay defrauded Plaintiffs and the Class through its misstatements and omissions conveyed to them;

d. Whether JPay breached the implied covenant of good faith and fair dealing with Plaintiffs and the Class;

e. Whether JPay conspired with the GDC and various Department of Corrections to defraud Plaintiffs and the putative class;

f. Whether, and to what extent Plaintiffs and the putative Class were damaged by Jpay's conduct;

g. Whether JPay was unjustly enriched through its dealings with Plaintiffs and the Class;

h. Whether JPay acted unconscionably through its dealings with Plaintiffs and the Class;

i. Whether JPay should be ordered to pay actual damages to Plaintiffs and the other members of the Class;

j. Whether JPay should be ordered to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

PLAINTIFF'S CLASS ACTION COMPLAINT

k.  Whether Plaintiffs and the putative Class have sustained monetary loss and the proper measure of that loss.

l.  Whether Jpay was acting under the color of authority pursuant to 42 U.S.C. § 1983;

m.  Whether JPay should be ordered to pay attorneys' fees and costs.

38. **Typicality (Fed. R. Civ. P. 23(a)(3))** - Plaintiffs' claims are typical of the claims of all the putative class members. Plaintiffs have been damaged by the same wrongful conduct by JPay and suffered injuries similar in kind and degree to the injuries suffered by all putative class members. Plaintiffs make the same claims and seek the same relief for themselves and for all putative class members.

39. **Adequate Representation (Fed. R. Civ. P. 23(a)(4))** - Plaintiffs will fairly and adequately protect the interests of the putative class. Plaintiffs have retained counsel that are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the putative class. Furthermore, Plaintiffs have no interests that are antagonistic to those of the putative class.

40. **Superiority (Fed. R. Civ. P. 23(b)(3))** - Proceeding on a classwide basis is a superior method for the fair and efficient adjudication of the controversy because class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expenses that individual actions would entail. Class treatment will allow injured persons to seek redress for injuries that would not be practical to pursue individually because the damages suffered by the individual members of the putative class is relatively small compared to the burden and expense of individual litigation of their claims against JPay. These benefits substantially outweigh any difficulties that could arise out of class treatment. Furthermore, Plaintiffs know of no difficulty that will arise in the management of this litigation that would preclude its maintenance as a class action.

PLAINTIFF'S CLASS ACTION COMPLAINT

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1893 - Fifth Amendment Unlawful Takings Clause
### (Plaintiffs and the Class v. Jpay, L.L.C.)

41. Plaintiffs  re-allege and incorporates the above allegations as  if fully set forth herein.

42. As more specifically set forth above, Defendant Jpay, acting under the color of authority and state law, sold Plaintiffs and the putative Class JP5 inmate tablets that JPAY used prison staff and personnel to take back from Plaintiffs and the putativ class that Jpay knew it did not have a right to do so.

43. Defendant Jpay has tho date, not provided a refund, or compensation to the Plaintiffs and the putative class any form of compensation in violation of the Fifth Amendment to the United States Constitution.

44. Defendant Jpay had no intention of allowing Plaintiffs and members of the putative class to keep their JP5 inmate tablets as advertised by Jpay.

45. Plaintiffs and the inmates who are members of the putative class relied upon the false and fraudulent representations made by Jpay when they purchased the new JP5 inmate tablets.

46. As a result, Plaintiffs and the inmates who are part of the putative class have suffered substantial monetary damages and loss of their property rights.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (Plaintiffs and the Class v. Jpay, L.L.C.)

47. Plaintiffs  re-allege and incorporates the above allegations as  if fully set forth herein.

48. Plaintiff  and  JPay  have  contracted for Plaintiffs and the putative class to purchase new JP5 tablets from Jpay.

49. JPay  violated,  and  continues  to violate,  the  contract  it  has  with Plaintiffs and the putative class when  illegally took back the JP5 tablets and did not provide any refund or compensation.

50. Under  the  laws  of  the  states  where  JPay  does  business, good faith  is  an element  of  every  contract.  Whether  by  common  law  or  statute,  all

_____

such  contracts  impose upon each party  a  duty  of  good faith and fair dealing. Good  faith  and  fair   dealing, in connection with    executive contracts  and  discharging performance  and other  duties according  to their  terms,  means  preserving  the  spirit – not merely the  letter – of the  bargain. Put  differently, the  parties  to a  contract  are  mutually obligated  to comply  with the  substance of  their  contract  in addition to its form. Evading  the  spirit  of  the  bargain  and abusing  the power  to specify  terms  constitute  examples  of  bad faith in  the performance of contracts.

51. JPay willingly  engaged in the  foregoing  conduct  in bad faith, for  the purpose of  (1)  gaining  unwarranted contractual  and legal  advantages; and (2) unfairly and unconscionably  maximizing revenue  from  Plaintiff and other  members  of  the  Class. These practices  were  not  authorized by the  contract, were  not  within  JPay's discretion under  the contract,  and were  outside  the  reasonable  expectations  of  Plaintiff  and  the  Class members.

52. Plaintiff  and members  of  the  putative  Class  have  performed  all, or subsequently  all, of  the  obligations  imposed on them.

53. Plaintiff  and  members  of  the putative Class  have sustained  damages  as a  result  of JPay's  breach  of  the  covenant  of  good faith and fair  dealing.

**54.** Plaintiff  and  members  of  the Class  have no  adequate remedy  at  law.

**INJUNCTIVE RELIEF**

55. Plaintiff  re-alleges  and  incorporates  by  reference  the  allegations contained  in the  paragraphs  above  as  if  fully  set  forth herein and, to the extent  necessary, plead  this cause of  action  in  the alternative.

56. Permanent  and  irreparable  injury  will result unless  JPay is  permanently stopped  from  selling  inmate  tablets  and  then  illegally  taking  the merchandise  back  from  inmates  in  the  GDC  and  throughout the  United States  of America. Accordingly,  Plaintiffs  and the  Class  seek a  permanent injunction prohibiting  this  practice.

**PRAYER FOR RELIEF:**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against JPay, as follows:

a.  Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

b.  Ordering JPay to pay actual damages to Plaintiff and the other members of the Class;

c.  Ordering JPay to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

d.  Ordering this case referred to the United States Attorney's office for criminal investigation and/or civil penalty;

e.  Ordering this case referred to the Georgia Attorney Generals office for criminal investigation and/or civil penalty;

f.  For an order of this Court that Jpay violated the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983;

g.  For an order of this Court that Jpay violated the terms of their written contract with the Plaintiffs and the putative class;

h.  For an order of this Court enjoining Defendant Jpay from its illegal misconduct, and civil rights violations;

i.  For an order of this Court ordering Jpay to return Plaintiffs' and the putative class members purchased tablets;

j.  For judgment against Jpay for the value of the benefits conferred upon Jpay by virtue of Plaintiffs' and putative class' purchasing inmate JP5 tablets, according to proof at trial, which value is believed to exceed Twenty-One Million Dollars ($21,000,000.00);

k.  For an order of this Court ordering Defendant Jpay to pay restitution to the Plaintiffs and the members of the putative class;

l.  For an order of this Court ordering Defendant Jpay to notify the putative class of the pendency of this lawsuit and order Jpay to bare the costs of the notice of pendency of this class action lawsuit;

_____

m. Awarding Plaintiffs punitive damages, as permitted by law, for Defendants' willful and wonton acts;

n. An award of all costs of attorney fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988; and

o. Such other and further relief as this court may deem just and proper.

Respectfully submitted,

Dated: July 8th, 2023                 */S/ McNeill Stokes*
                                       McNeill Stokes
                                       Georgia Bar Number 683600

5372 Whitehall Place SE
Mableton, GA 30126
Telephone: 404-352-2144
Email: mcstokes@bell south.net

### JURY TRIAL DEMANDED

Plaintiffs Anthony Oliver and Reginald Priddy pursuant to the Seventh Amendment to the United States Constitution, respectfully requests a trial by jury on all claims so triable.

Respectfully submitted,

Dated: July 8th, 2023                 */S/ McNeill Stokes*
                                       McNeill Stokes
                                       Georgia Bar Number 683600

5372 Whitehall Place SE
Mableton, GA 30126
Telephone: 404-352-2144
Email: mcstokes@bell south.net

PLAINTIFF'S CLASS ACTION COMPLAINT