# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| **EUNICE PERRY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action File No.: _____ |
| v. ) | |
| ) | |
| **EMORY HEALTHCARE, INC.,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff **Eunice Perry** ("Plaintiff" or "Ms. Perry") brings this civil action for relief and damages against Defendant **Emory Healthcare, Inc.** ("Emory" or "Emory Healthcare" or "Defendant"), based on the following factual allegations and causes of action:

## NATURE OF THE ACTION

1. This action to correct unlawful employment discrimination arises under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2615(a)(1), and 42 U.S.C.A. § 1981. Plaintiff, a nursing professional for over 25 years, alleges that her employer Emory Healthcare, Inc., the largest medical institution in Georgia,

1

subjected her to several years of ongoing discriminatory and retaliatory treatment after she contracted a case of long COVID in 2020. Her responsibilities were substantially reduced after she took extended FMLA leave. And when she lodged a formal complaints about her demotion as well as about a history of bullying and racially offensive comments on the part of her supervisor, Ms. Perry was forced into an extended and unnecessary leave that ended with her involuntary retirement in early 2022.

2.      Ms. Perry, who has been unemployed for over a year and a half, seeks economic damages of back pay, front pay, and lost benefits; as well as liquidated damages under the FMLA and compensatory damages for emotional distress under § 1981. Ms. Perry also petitions the Court for her attorneys' fees and costs of litigation.

## THE PARTIES

3.      Ms. Perry is a resident of the state of Georgia, and during the time of the events alleged in this complaint, she was originally employed by Emory's Hillandale Hospital facility at 2801 Dekalb Medical Parkway in Lithonia, Georgia as the nursing director for the intensive care unit ("ICU").

4.      Ms. Perry contracted the COVID-19 virus in the summer of 2020 and for many months after, experienced prolonged symptoms of the virus, which is

characterized by the Centers for Disease Control and Prevention ("CDC") as "long COVID." www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html. Her condition, which included bouts of fatigue, chest pain, and respiratory problems, substantially limited major life activities, including breathing, concentrating, thinking, and working.

5.     Ms. Perry was capable of performing the essential functions of her job as nursing director for Hillandale's ICU with reasonable accommodations that initially included a medical leave of absence in the fall of 2020 and a modified, part-remote work schedule as of late 2020.

6.     Ms. Perry was covered by the FMLA in that she had been employed by Emory Healthcare for more than 12 months and worked more than 1,250 hours in the 12 months before her serious health conditions required her to take FMLA leave in 2020.

7.     Emory Healthcare is a domestic nonprofit corporation doing business in the state of Georgia. It is an entity subject to suit under the FMLA and § 1981.

8.     Defendant is principally engaged in the business of providing health care and receives federal financial assistance, and is therefore subject to suit under the Rehabilitation Act.

## PERSONAL JURISDICTION

9. Emory Healthcare may be served with proper process through its registered agent on record with the Georgia Secretary of State, Amy Adelman, at 201 Dowman Dr., 312 Administration Building, Atlanta, GA 30322.

## SUBJECT-MATTER JURISDICTION AND VENUE

10. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

11. Venue is proper in this Court under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and division, and the events or omissions giving rise to the claim occurred in the same venue.

## FACTUAL ALLEGATIONS

12. Ms. Perry was employed with Emory Healthcare for nearly 25 years and, in 2019, was promoted to the position of nursing director of the ICU at Emory Hillandale Hospital.

13. In May 2020, in the first months of the pandemic, Ms. Perry contracted COVID-19. From May 29, 2020, to on or about November 11, 2020, Ms. Perry was on an extended combination of FMLA and approved medical leave under Emory policies.

14. When Ms. Perry returned to work in mid-November 2020, under the instruction of her doctors, she was placed on a modified schedule of two days in the office and three days remotely for five hours a day. This accommodation was necessitated by the fact that Ms. Perry was experiencing what the CDC has labeled as long COVID symptoms, including fatigue, chest pain, and periodic shortness of breath after exertion.

15. Soon after returning to work in November 2020, Ms. Perry's immediate supervisor Mickey White ("White"), the specialty director of inpatient services, informed her that her physical office had been reassigned, that the bulk of her management duties would be reassigned to her clinical coordinator, and that going forward, Ms. Perry's assignments would be closely managed by White; he also imposed restrictions on Ms. Perry's authority to direct staff by requiring her to route operational instructions to her clinical coordinator through him.

16. Over the final months of 2020, while she retained her job title, Ms. Perry was, for all practical purposes, stripped of her core duties as ICU unit director while being subjected to constant criticism and negative scrutiny of her work performance by White.

17. White issued Ms. Perry a negative job evaluation, the first she had ever received at Emory, while sarcastically commenting, "I hope you don't quit."

18. On January 6, 2021, Ms. Perry submitted a resignation letter to the Human Resources ("HR") department and initiated the process of inquiring about Emory's early retirement options.

19. Within a week, on January 12, 2021, Associate Chief Nursing Officer Edna Brisco ("Brisco") contacted Ms. Perry to inquire why she had submitted her resignation. When Ms. Perry disclosed her continuing difficulties with White, Brisco advised Ms. Perry to pause the retirement process and to file a formal HR complaint regarding her concerns.

20. That same day, January 12, 2021, Ms. Perry sent an extended letter by email to the HR Department discussing at length White's substantial reduction of her responsibilities after she returned from FMLA leave, and a pattern of bullying, unfavorable treatment of her during her tenure as unit director.

21. Ms. Perry, who is African American, also related in her letter to HR two earlier incidents in 2019 near the beginning of her tenure as unit director; one, when White, who is Caucasian, had engaged in extended and inappropriate banter during a staff meeting about whether he and a black female colleague had ancestors who lived "on the same plantation"; another, when White asked Ms. Perry if she viewed him as "white trash."

22.     The next day, on January 13, 2021, Ms. Perry met with HR Business Manager Alicia Pierre-Williams ("Pierre-Williams") via Zoom to further elaborate on her concerns. She also communicated that she wished to rescind her resignation.

23.     Pierre-Williams assured Ms. Perry that she would be conducting a formal investigation of her complaint but that she was uncertain that the resignation could be retracted.

24.     On January 20, 2021, Chief Nursing Officer Bob Dent ("Dent"), a white male, met with Ms. Perry and informed her that "it would be best for Hillandale" if she were no longer employed there and that Emory intended to proceed with her early retirement.

25.     Ms. Perry protested to Dent during the meeting that she knew of another white employee who had been permitted to revoke a resignation and that she believed the refusal to permit her to do so was punishment for her elevating her complaint of mistreatment to HR.

26.     Within a day of the meeting with Dent, Ms. Perry turned to Vice President of Human Resources Cathy Harden ("Harden"). It became clear from their conversation that Harden had not been informed of Ms. Perry's complaint despite the commitment from another HR staffer that a formal investigation would be conducted.

27. On January 27, Ms. Perry learned that White had been terminated. On January 29, Harden told Ms. Perry that her resignation would be withdrawn, but that Harden had heard from upper management level officials at Emory that "they no longer want you at Hillandale," and that Ms. Perry needed to remain at home until another position could be found for her within the Emory system.

28. On February 1, with her role in limbo, Ms. Perry spoke with White's successor as specialty director, who told her that he questioned whether it was viable for Ms. Perry to continue as a unit director on a part-remote basis, although her modified schedule had already been approved as an accommodation for her long COVID condition.

29. Ms. Perry was well aware that as of early 2021, Emory was permitting multiple director-level nursing personnel to work full- or part-time remotely. For example, Robyn Robertson, who was doubling as the nursing director of the surgical unit and the inpatient COVID-19 unit at Hillandale, had been on extended telework accommodation because of preexisting health conditions that made her susceptible to contracting COVID-19. In addition, the Midtown Emory facility had permitted several ICU nursing directors to shift to part-remote work.

30. On February 4, Ms. Perry was formally replaced as ICU nursing director. Ms. Perry was informed by Cynthia Hall ("Hall"), the vice president of

Leave and Accommodations, that she would be placed on temporary leave and that an active effort would be made to reassign her to another role.

31. Over the next month, Ms. Perry, despite a 25-plus-year career that ascended to a senior level role as a nursing director, was apprised of a total of two options: one, a part-time hourly nurse role; the other, a quality control job. Neither of these roles, which would have been significant demotions, ended up materializing into offers.

32. Ms. Perry filed a charge of disability-related discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on April 12, 2021. The EEOC's regulatory guidelines require that entities charged with discrimination receive notice within ten days of a charge being processed. 29 C.F.R. § 1601.14(a).

33. In early May 2021, Hall communicated with Ms. Perry again to inform her that Emory had concluded that it was not able to accommodate Ms. Perry with a reassignment and that short-term disability was her most viable option. It would be the last time Hall spoke with Ms. Perry.

34. Ms. Perry proceeded to enroll in short-term disability with a planned end date of April 2022.

35. On February 2, 2022, Ms. Perry was informed by the Leave and Benefits office that Emory Healthcare was removing her from medical leave and processing her original resignation letter from January 2021. Ms. Perry made it clear that she had no desire to resign and wished to continue to pursue internal placement at Emory.

36. Ms. Perry's objections were to no avail. On February 24, 2022, she was given official notice of her separation effective March 1, 2022.

37. Ms. Perry was physically capable of working with part-time remote accommodations throughout 2021 and would have been medically cleared to return to full-time work in the second half of 2022; furthermore, Emory Healthcare made no attempt to obtain a reevaluation from Ms. Perry of her condition and whether it was feasible to reassess her need for modified scheduling accommodations as her leave progressed during 2021.

38. Ms. Perry was terminated from her role as ICU nursing director only after she lodged a formal internal complaint of FMLA retaliation and racially offensive remarks by her supervisor; the stated grounds for her termination within three weeks of her complaints were, strikingly, not performance-related, and instead based on the fact that senior officials no longer wanted her working at Hillandale.

39. Prior to her demotion in February 2021, Ms. Perry was told by the new specialty director of intake services that it was untenable to continue performing her duties remotely: but a jury could reasonably infer this claim is pretext for retaliation for her claims of FMLA retaliation and a history of racial bias by her direct supervisor, given Emory's pattern of extended remote work accommodation for one of Ms. Perry's peer nursing directors at Hillandale as well as its provision of remote accommodations to her peers at Emory's Midtown location.

40. Once Ms. Perry exercised her statutory right to file a charge of disability discrimination with the EEOC in 2021,[1] Emory's efforts to find a reassignment for her came to a complete halt.

## CAUSES OF ACTION

## COUNT I
**(Retaliation in violation of the Rehabilitation Act)**

41. Plaintiff incorporates by reference the preceding paragraphs of this complaint as though set forth fully and separately herein.

---

[1] Ms. Perry, who was uncounseled at the time, eventually allowed her Right to Sue to lapse, which extinguished her claim under the Americans with Disabilities Act.

42. Plaintiff was an individual who suffered from an ADA qualifying impairment, long COVID, who was qualified to work with or without reasonable accommodations at all times relevant to the filing of this complaint.

43. Emory Healthcare is an entity subject to suit under the Rehabilitation Act as it is principally engaged in the business of providing health care and receives federal financial assistance. 29 U.S.C.A. § 794(a) and (b)(3)(A)(ii).

44. Ms. Perry engaged in protected activity under the Rehabilitation Act, 29 U.S.C.A. § 794(a)(d), in that she asserted her rights under the Act by lodging a charge of disability discrimination and retaliation with a federal agency, relying on the Americans with Disabilities Act that is governed by the same substantive standards for liability as the Rehabilitation Act. Ms. Perry was therefore acting to oppose conduct made unlawful by both Acts.

45. Ms. Perry's protected activity under the Rehabilitation Act was the basis for unlawful retaliatory conduct by Emory Healthcare, including the failure to reassign her to a position within the Emory system for which she was qualified and her subsequent forced resignation in February 2022.

46. As a result of Defendant's retaliatory conduct, Plaintiff Perry has suffered and continues to suffer monetary damages, including but not limited to back pay, front pay, and loss of future benefits.

## COUNT II

## (Retaliation in violation of the FMLA)

47. Plaintiff incorporates by reference the preceding paragraphs of this complaint as though set forth fully and separately herein.

48. Ms. Perry was an eligible employee under the FMLA in that at the time she asserted her rights to apply for and receive medical leave, she had been employed by Emory Healthcare for more than 12 months and worked more than 1,250 hours during the previous 12-month period. 29 U.S.C.A. § 2611(2)(A).

49. Emory Healthcare was an employer covered by the FMLA. 29 U.S.C.A. § 2611(4)(A)(i).

50. Ms. Perry asserted her rights under the FMLA by making an internal complaint to Emory Healthcare in January 2021 that she was effectively demoted and her scope of responsibilities substantially reduced after she took an extended leave under the FMLA related to her long-COVID symptoms.

51. Ms. Perry's exercise of her FMLA-protected rights was a basis for unlawful retaliatory conduct by Emory Healthcare, including her formal demotion in February 2021.

52. Emory Healthcare willfully and recklessly disregarded Ms. Perry's statutory rights to be free from discrimination and retaliation under the FMLA by demoting her for opposing practices that violated the FMLA.[2]

53. As a result of Defendant's retaliatory, as well as willful and reckless, conduct under the FMLA, Ms. Perry is entitled to recover suffered monetary damages, including lost back pay, front pay, the value of lost benefits, and liquidated damages.

## COUNT III
### (retaliation in violation 42 U.S.C.A. § 1981)

54. Plaintiff incorporates by reference the preceding paragraphs of this complaint as though set forth fully and separately herein.

55. Ms. Perry engaged in protected activity under 42 U.S.C.A. § 1981 by making an internal complaint to Emory Healthcare in January 2021 that included allegations that her supervisor, the specialty director of inpatient services, made racially inappropriate comments.

56. Higher-ranking management personnel at Emory Healthcare concluded that Ms. Perry should be terminated from her employment at Hillandale

---

[2] The FMLA creates a three-year statute of limitations for "willful violations" of an employee's FMLA rights. 29 U.S.C.A. § 2617(c)(2).

Hospital within three weeks of her reporting to Emory's HR Department that her direct supervisor made racially motivated remarks.

57. As a result of Emory Hospital's retaliatory conduct, Plaintiff Perry has suffered and continues to suffer monetary damages, including but not limited to back pay, front pay, and loss of future benefits, as well as compensatory damages for mental anguish, pain, and suffering.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory and punitive damages to the extent allowed by law.

C. Attorneys' fees and costs of litigation.

D. Prejudgment and post-judgment interest at the highest lawful rate.

E. Such other equitable and monetary relief as the Court deems just and proper.

Submitted on the 10th day of July 2023.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[3]
ASB-3672-D56A
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

*s/Kendra Livingston*
Kendra Livingston
GA Bar No. 791806
3344 Peachtree Road NE, Suite 800
Office # 835
Atlanta, GA 30326
Direct: 678-446-3016
klivingston@hkm.com

---

[3]Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.

16