IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GREGORY PRATT and JOHN PALMER, individually and on behalf of a class of similarly situated persons as defined herein | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO: _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| MCALISTER'S FRANCHISOR SPV LLC and FOCUS BRANDS LLC, | ) ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiffs Gregory Pratt and John Palmer (collectively "Plaintiffs"), individually and on behalf of all others similarly situated as defined herein, by and through their attorneys, and hereby file this Class Action Complaint against Defendants McAlister's Franchisor SPV LLC ("McAlister's") and Focus Brands LLC ("Focus Brands") (collectively "Defendants"). In support thereof, Plaintiffs state the following:

### NATURE OF THE ACTION

1.  This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant McAlister's and its parent company, Focus Brands, arising from their deceptive and untruthful pricing practices perpetrated on customers consummating telephone-based food orders ("call-in" orders).

2.  Throughout its stores, and like all restaurants, McAlister's provides prominent price displays for each of its menu items. Reasonable consumers like Plaintiffs understand those are the

1

true and complete prices for the menu items, exclusive of government-imposed taxes and discounts for which a customer may be eligible.

3. To appeal to consumers in a crowded food marketplace, McAlister's has promised its customers food items at appealing menu prices on its website, app, and in-store. Those prices are false for consumers who place call-in orders. As described more herein, all call-in orders incur an additional three percent (3%) "Service Fee" that is not disclosed to consumers until after the purchase is complete.

4. McAlister's menu price representations are false, as the listed prices are not the true cost of food at McAlister's. In fact, *after* consumers placing a call-in order select menu items based on listed prices and customize those menu items with specifications, and *after* the ordering process is complete, McAlister's surreptitiously imposes a "Service Fee" amounting to three percent (3%) of the subtotal. This late addition of a so-called "Service Fee" substantially changes the menu prices for food items ordered by telephone and disguises the true cost of those items.

5. Worse, the "Service Fee" is never disclosed to consumers until it shows up as a line item on their receipts *after* the purchase is complete.

6. The "Service Fee" is not disclosed to call-in customers during the telephone ordering process, nor is it disclosed to call-in customers prior to payment. McAlister's call-in order protocol and procedure is completely automated by telephone, and the customer placing a call-in order does not speak with an actual McAlister's employee or representative. At no time during this automated telephone procedure is the "Service Fee" disclosed to the customer in any fashion.

7. The "Service Fee" is not for any additional "service" related to the purchase of McAlister's food—it is part of the cost of food itself. Call-in orders require no additional service

or labor by McAlister's than an in-store order. In fact, as mentioned above, the call-in procedure is completely automated and does not involve an actual McAlister's employee or representative.

8.      During the <u>online</u> ordering process on McAlister's website, a clickable line-item charge of "Taxes and Fees" appears to the user. If the user clicks on this line item, the charge is broken down into two lines of charges: one for sales tax, and the other for a "Service Fee," described by McAlister's as follows: "This fee is used to help pay for the restaurant's app and website." Yet, by virtue of the practices described herein, McAlister's dupes call-in customers into needlessly paying the undisclosed and improper "Service Fee."

9.      For McAlister's to surreptitiously inflate food prices with a later-added "Service Fee" is improper, false, and deceptive. McAlister's is imposing a stealth price hike in the form of a late-added fee, rather than charging a list price that reflects the actual cost to consumers of the food it sells.

10.     McAlister's double-edged deception—first, touting menu prices that are false; second, surreptitiously adding the "Service Fee" on call-in customers—gives it an unfair advantage over honest sellers in the marketplace. The double-edged deception makes it impossible for consumers to comparison shop meaningfully and hinders the operation of a free and fair marketplace.

11.     Because the so-called "Service Fee" is added as a matter of course to *all* call-in orders, the "Service fee" is, by definition, part of the cost of the food offered. McAlister's obscures the true cost of its food by adding a so-called "Service Fee" that is simply part of the cost of its food.

12. By falsely marketing food at menu prices that are lower than the true cost of its food to consumers, without displaying its "Service Fee" prior to sale, McAlister's deceives call-in customers into making food purchases they otherwise would not make.

13. McAlister's misrepresents, omits, and conceals material facts about the true cost of McAlister's food, never once informing call-in customers in any disclosure, at any time prior to payment and purchase, about the so-called "Service Fee" that materially changes the menu prices of the offered food.

14. Thousands of McAlister's customers like Plaintiffs have been charged more for food than the prices listed on McAlister's menus—prices they did not bargain for.

15. Consumers like Plaintiffs reasonably understand McAlister's' express menu price representations to represent the true cost of ordered food, regardless of whether the customer orders at the restaurant or by telephone. It is not.

16. By unfairly obscuring its true food costs, McAlister's deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true food costs on menus.

17. Plaintiffs seek damages and, among other remedies, injunctive relief that allows consumers to fairly decide whether they will pay McAlister's' call-in order food prices.

## PARTIES

18. Plaintiff Gregory Pratt is a citizen of the State of Texas who resides in New Braunfels, Texas and resided there at all times relevant to this Complaint.

19. Plaintiff John Palmer is a citizen of the State of Georgia who resides in Atlanta, Georgia and resided there at all times relevant to this Complaint.

20. Defendant McAlister's is a limited liability company organized under the state of Delaware with its principal place of business in Atlanta, Georgia. McAlister's regularly conducts business in the State of Georgia, including in Fulton County.

21. Defendant Focus Brands is a limited liability company organized under the state of Delaware with its principal place of business in Atlanta, Georgia. Focus Brands is the parent company of McAlister's. Upon information and belief, Focus Brands sets or approves all material policies and practices of McAlister's, including the policies relating to the "Service Fee" challenged herein. Focus Brands is jointly and severally liable for all acts and omissions by McAlister's alleged in this Complaint.

## **JURISDICTION & VENUE**

22. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because of the following: (1) the proposed class is comprised of at least 100 members; (2) one named Plaintiff is a citizen of Texas, making at least one member of the proposed class a citizen of a different state than Defendants; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

23. Venue is proper in the district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here, maintain their corporate headquarters here, and regularly conduct business in this District. Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

A. **McAlister's Prominently and Plainly Represents Menu Prices Without Disclosing the "Service Fee."**

24. McAlister's prominently features food menu prices in-store, on its website, and on its app.

25. Such price representations are made via large signs and menus in stores and on the home page and all subsequent pages of the McAlister's website and app.

B. **McAlister's Omits and Conceals Material Facts About the Total Cost of Purchases by Deceptively Tacking on Its "Service Fee" to All Items.**

26. McAlister's menu price disclosures are false and misleading, and the listed menu prices are inaccurate.

27. That is because McAlister's applies a three percent (3%) "Service Fee" to all call-in orders and misrepresents what the "Service Fee" is actually for: the cost of the food.

28. Upon information and belief, all McAlister's restaurants use a uniform telephone system that recognizes the customer's phone number and saves each customer's order history associated with the phone number. McAlister's call-in order protocol and procedure is completely automated by telephone and the customer placing a call-in order does not speak with an actual McAlister's employee or representative.

29. After the customer selects menu items based on listed prices and customizes those menu items, and after the ordering process is complete, McAlister's surreptitiously imposes a so-called "Service Fee" amounting to 3% of the order subtotal. This late addition of a so-called "Service Fee" for call-in customers substantially changes the menu prices for food items. It is *never* disclosed to the call-in customer until the final receipt is provided and the purchase is complete.

30. In short, the disclosed menu prices are not actually those listed on in-store signs nor the ones listed on the website or app. The *actual* food price is the listed menu price *plus* the hidden "Service Fee" markup applied to all McAlister's telephone orders after the fact.

31. It is improper, false, and deceptive for McAlister's to surreptitiously inflate menu prices with a later-added "Service Fee" on call-in orders that is never disclosed until *after* a purchase is complete (and only then on a small line item on a final receipt). McAlister's is imposing a stealth price hike in the form of an added fee rather than charging a list price that reflects actual business costs.

32. McAlister's does not fairly inform consumers of the true costs of its food, and it misrepresents its food prices on menus. At no time during the automated telephone procedure for call-in orders is the "Service Fee" disclosed to the customer in any fashion. It is only ever disclosed once the final receipt is provided, *after* payment has been made and the purchase is complete.

33. By furtively adding a hidden "Service Fee" onto each call-in order, McAlister's unfairly obscured the true price of such orders.

34. Reasonable customers like Plaintiffs understand that the advertised prices are the <u>true and complete prices for the products</u>, exclusive of government-imposed taxes and discounts that a customer may be eligible for.

35. As the *Los Angeles Times* reported, "Hidden surcharges undermine consumers' ability to shop around for the best value for their money,' said Jenn Engstrom, state director for the California Public Interest Research Group." McAlister's scheme prevented consumers from effectively comparison shopping.

36. In March 2013, the Federal Trade Commission ("FTC") noted that the failure to disclose fees early on in the purchase process, such as McAlister's' "Service Fee," is likely to

mislead the public: The FTC recognizes that additional fees should be disclosed before the customer "add[s] to shopping cart" and provides credit card information. The FTC also recognizes that where "a product's basic cost (e.g. the cost of the item before taxes, shipping and handling, and any other fees are added on) is advertised on one page," but the seller also intends to add "significant additional fees" on top of the basic cost, the public is likely to be misled. "[T]he existence and nature of those additional fees [should be] disclosed on the same page [as the advertised price] and immediately adjacent to the cost claim, and with appropriate prominence." *.com Disclosures, How to Make Effective Disclosures in Digital Advertising*, Federal Trade Commission (March 2013) https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf (last accessed June 17, 2022).

37. The "Service Fee" is never disclosed to call-in customers until it shows up as a line item on their receipts—*after* payment has been made and the purchase is complete. This process fails to provide an adequate advance warning to customers that an additional surcharge will be imposed on their call-in orders.

C. **Plaintiff Pratt was charged this "Service Fee"**

38. On March 28, 2023, Plaintiff Gregory Pratt, relying on listed menu prices, ordered food by telephone from a McAlister's located in Dallas, Texas for the total amount of $37.83.

39. As part of that purchase, and without his knowledge, Plaintiff Pratt was assessed a $1.13 "Service Fee" constituting 3% of the amount of his order.

40. At no time prior to his purchase was Plaintiff Pratt made aware that the 3% "Service Fee" would be added to his purchase.

41. Accordingly, at no time prior to his purchase did Plaintiff Pratt realize that McAlister's would furtively affix a price increase on his transaction.

42. If he had known that the "Service Fee" would be assessed on his purchase, Plaintiff Pratt would not have purchased a call-in order from McAlister's.

43. If he had known that the Service Fee would be assessed on his call-in order, Plaintiff Pratt would have chosen another method for receiving food from McAlister's or ordered food from another provider.

**D.    Plaintiff Palmer was charged this "Service Fee"**

44. On April 20, 2023, Plaintiff James Palmer, relying on listed menu prices, ordered food by telephone from a McAlister's located in Atlanta for the total amount of $35.68.

45. As part of that purchase, and without his knowledge, Plaintiff Palmer was assessed a $0.92 "Service Fee" constituting 3% of the amount of his order.

46. At no time prior to his purchase was Plaintiff Palmer made aware that the 3% "Service Fee" would be added to his purchase.

47. Accordingly, at no time prior to his purchase did Plaintiff Palmer realize that McAlister's would furtively affix a price increase on his transaction.

48. If he had known that the "Service Fee" would be assessed on his purchase, Plaintiff Palmer would not have purchased a call-in order from McAlister's.

49. If he had known that the Service Fee would be assessed on his call-in order, Plaintiff Palmer would have chosen another method for receiving food from McAlister's or ordered food from another provider.

9

## **CLASS ACTION ALLEGATIONS**

50. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and Classes of similarly situated persons defined as follows:

**Georgia Class:**

> All persons in Georgia who, within the applicable statute of limitations preceding the filing of this action, made an order by telephone to a McAlister's restaurant and were charged a "Service Fee."

**Nationwide Class:**

> All persons who, within the applicable statute of limitations, made an order by telephone to a McAlister's restaurant and were charged a "Service Fee."

51. Excluded from the Classes are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

52. **Numerosity**: At this time, Plaintiffs do not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impracticable. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendants.

53. **Commonality**: There are questions of law or fact common to the Classes, which include, but are not limited to, the following:

a. Whether, during the class period, Defendants deceptively represented menu prices on call-in orders by failing to disclose its "Service Fee;"

b. Whether Defendants misconduct misled or had the tendency to mislead consumers;

c. Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under the claims asserted;

d. Whether Defendants' conduct constitutes violations of the laws asserted;

e. Whether Plaintiffs and members of the Class were harmed by Defendants' misrepresentations;

f. Whether Plaintiffs and the Class have been damaged, and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent Defendants from continuing to deceptively represent the amount of the menu price on food and from omitting any disclosure of its "Service Fee" prior to payment and purchase.

54. **Typicality**: Like Plaintiffs, many other consumers ordered food from McAlister's by telephone, believing menu prices to be accurate based on Defendants' representations. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and each Class member were injured by Defendants' false representations about the true nature of the menu price. Plaintiffs and the Class have suffered the same or similar injury as a result of Defendants' false, deceptive and misleading representations. Plaintiffs' claims and the claims of members of the Class emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

55. **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained counsel competent and experienced in prosecuting and resolving consumer class

11

actions. Plaintiffs will fairly and adequately represent the interests of the Classes and do not have any interests adverse to those of the Classes.

56. **Predominance:** The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

### COUNT I
### VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
(O.C.G.A. 10-1-390, et. seq.)

57. Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

58. Each Plaintiff is a "consumer" within the meaning of O.C.G.A. 10-1-390, et seq.

59. Each Plaintiff is a "person" within the meaning of O.C.G.A. 10-1-390, et seq.

60. The food products and related services are "goods" or "services" within the meaning of O.C.G.A. 10-1-390, et seq.

61. Defendants engaged in "trade or commerce" within the meaning of O.C.G.A. 10-1-390, et. seq.

62. The Georgia Fair Business Practices Act ("Georgia FBPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," "(9) Advertising goods or

services with intent not to sell them as advertised," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."

63. By failing to disclose its "Service Fee" and engaging in the uniform conduct described herein, Defendants engaged in deceptive business practices prohibited by the Georgia FBPA, including representing that products or services have characteristics, uses, benefits, and qualities which they do not have; representing that products or services are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

64. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of their products and services.

65. By failing to disclose its "Service Fee" and engaging in the conduct described herein, Defendants engaged in unfair and deceptive business practices in violation of the Georgia FBPA.

66. In the course of Defendants' business, it willfully failed to disclose and actively concealed its "Service Fee" as alleged herein. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

67. Defendants intentionally and knowingly misrepresented material facts regarding the products.

68. Defendants knew or should have known that their conduct violated the Georgia FBPA.

69. Defendants owed a duty to disclose the true pricing of its products and services.

70. Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and its concealment.

71. As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendants' misconduct, Plaintiffs and the Classes incurred damages.

72. Pursuant to O.C.G.A. 10-1-390, et. seq. Plaintiffs seek monetary relief against Defendants.

73. Plaintiffs also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under O.C.G.A. 10-1-390, et. seq.

## COUNT II
## BREACH OF CONTRACT

74. Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

75. Plaintiffs and McAlister's have contracted for food, as embodied in the representations made on McAlister's menus and menu prices.

76. McAlister's breached the terms of its contract with consumers by charging undisclosed "Service Fees" that improperly increased the cost of the food purchased over and above the price listed on menu items.

77. Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

78. Plaintiffs and members of the Classes have sustained damages as a result of McAlister's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## COUNT III
## UNJUST ENRICHMENT

79. Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

80. This Count is pled in the alternative to Count II/Plaintiffs' Breach of Contract Claim.

81. Defendants' retention of monies that have been paid by the customer in the manner described in this Class Action Complaint constitutes an unlawful and unjust enrichment that is unconscionable under Georgia law and contrary to the public policy of this State. Defendants' retention of funds in this manner was improperly intended to enrich themselves.

82. Plaintiffs and the members of the Georgia subclass are entitled to restitution of any unauthorized amounts paid to or otherwise retained by Defendants, as Defendants are not entitled to keep these ill-gotten gains. In equity and in good conscious, Defendants are obligated to provide Plaintiffs and the Georgia subclass with restitution of any unlawful penalties collected and/or retained by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Classes respectfully request that this Court provide Plaintiffs the following relief:

    A.    For an order enjoining Defendants from continuing the unlawful practices set forth above;

    B.    For declaratory and injunctive relief as set forth above;

C. For an order requiring Defendants to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

D. For compensatory damages according to proof;

E. For punitive damages according to proof;

F. For reasonable attorneys' fees and costs of suit;

G. For pre-judgment interest; and

H. Awarding such other and further relief as this Court deems just, proper and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiffs on their own behalf and on behalf of all others similarly situated, demand a jury trial on all claims so triable.

Dated this 11th day of July, 2023.

*/s/Brent Irby*
R. Brent Irby
Georgia Bar No. 224232
**IRBY LAW, LLC**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 936-8281
Email: brent@irbylaw.net


*/s/Trey J. Malbrough (pro hac vice forthcoming)*
Trey J. Malbrough
**THE MALBROUGH FIRM LLC**
Age Herald Building
2107 Fifth Avenue North, Suite 301
Birmingham, Alabama 35203
Telephone: (205) 701-0707
Email:  trey@tmbfirm.com

*Attorneys for Plaintiffs and the Proposed Class*

**DEFENDANTS TO BE SERVED VIA THEIR REGISTERED AGENT:**

Corporate Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092