# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
10155 Eagle Drive
Covington, GA 30014-3804

Date: October 31, 2022

Cedric Taylor
1998 Capri Drive
Decatur, GA 30032

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Cedric Taylor (BNC#: 21WN820C95939)                    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Cedric Taylor (BNC#: 21WN820C95939)                                    Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 626-9909.

SOCIAL SECURITY
3554 COVINGTON HWY
DECATUR, GA 30032-9803

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

William L. Hogan
Administrative Law Judge

Enclosures:
Decision Rationale

cc:     Kathleen Marie Flynn
        KATHLEEN M FLYNN LLC
        315 W PONCE DE LEON AV
        SUITE 940
        DECATUR, GA 30030

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

<u>**IN THE CASE OF**</u>                          <u>**CLAIM FOR**</u>

                                              Period of Disability, Disability Insurance
Cedric Taylor                                 Benefits, and Supplemental Security Income
(Claimant)

                                              21WN820C95939
(Wage Earner)                                 (Beneficiary Notice Control Number)
                                              *Social Security Number removed for your protection*

<u>**JURISDICTION AND PROCEDURAL HISTORY**</u>

On June 4, 2020, the claimant protectively filed a Title II application for a period of disability
and disability insurance benefits. The claimant also filed a Title XVI application for
supplemental security income on April 21, 2022. In both applications, the claimant alleged
disability beginning May 24, 2020. These claims were denied initially on January 12, 2021, and
upon reconsideration on March 16, 2022. Thereafter, the claimant filed a written request for
hearing received on April 21, 2022 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). On
September 7, 2022, the undersigned held a telephone hearing due to the extraordinary
circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All
participants attended the hearing by telephone. The claimant agreed to appear by telephone
before the hearing, and confirmed such agreement at the start of the hearing. The claimant is
represented by Brynne Holt, an attorney. Heidi Caplan Feder, an impartial vocational expert, also
appeared at the hearing.

If the claimant wishes that written evidence be considered at the hearing, then the claimant must
submit or inform the Administrative Law Judge about the evidence no later than five business
days before the date of the scheduled hearing (20 CFR 404.935(a) and 416.1435(a)). Pursuant to
20 CFR 404. 935(b) and 416.1435(b), if the claimant misses this deadline but submits or informs
the Administrative Law Judge about written evidence before the hearing decision is issued, the
Administrative Law Judge will accept the evidence if: (1) an action of the Social Security
Administration misled the claimant; (2) the claimant had a physical, mental, educational, or
linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge
about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance
beyond the claimant's control prevented the claimant from submitting or informing the
Administrative Law Judge about the evidence earlier.

The claimant informed the Administrative Law Judge about additional written evidence less than
five business days before the scheduled hearing date. The undersigned Administrative Law
Judge left the record open for this additional evidence despite the lack of timely information;
however, no new evidence has been received as of the date of this decision.

See Next Page

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2022. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from May 24, 2020, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that

would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512, 404.1560(c), 416.912 and 416.960(c)).

See Next Page

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.**

**2.   The claimant has not engaged in substantial gainful activity since May 24, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

The claimant testified at the hearing that his self-employment earnings for 2021 (Exhibit 16D, p. 3) is attributable to unemployment income and COVID-19 stimulus checks. However, that testimony is inconsistent with the record. The undersigned obtained his tax returns for 2021 (Exhibit 19D; 20D), and while these show some unemployment income, they also show $35,000 gross income and $16,028 net profit from his business, which he failed to disclose at the hearing. Although this is arguably substantial gainful activity for 2021, the earnings query (Exhibit 16D, p. 3) shows only $14,801. While that figure is close to substantial gainful activity levels, the undersigned will proceed with the sequential evaluation.

**3.   The claimant has the following severe impairments: cardiomyopathy; hypertension; obesity; depressive disorder; post-traumatic stress disorder; congestive heart failure; status post myocardial infarction; left foot drop; and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The claimant's chronic heart failure is considered under listing 4.02. This listing requires A) medically documented presence of one of the following: 1. systolic failure, with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or 2. diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure); and B) resulting in one of the following: 1. persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or 2. three or more separate episodes of acute congestive heart failure within a consecutive 12-month period, with evidence of fluid retention from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as

hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization; or 3. inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to: a. dyspnea, fatigue, palpitations, or chest discomfort; or b. three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or c. decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise due to left ventricular dysfunction, despite an increase in workload; or d. signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion. Because these specific qualifications are not met, the claimant's heart condition does not meet the listing.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a moderate limitation. He wrote that he is "sometimes OK" at following both spoken and written instructions (Exhibit 10E). Dr. Stillman, who saw the claimant for a psychological evaluation, estimated that he was capable of understanding and carrying out simple instructions, though he may have trouble with complex instructions secondary to reported concentration problems (Exhibit 8F).

In interacting with others, the claimant has a moderate limitation. On his most recent function report, he said that he has no problems getting along with others, and his social activities have only changed because of COVID-19 (Exhibit 10E). Dr. Stillman, who saw the claimant for a psychological evaluation, wrote that he does not socialize much and his ability to get along with others would likely be hampered by symptoms of PTSD (Exhibit 8F).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. He wrote that he does not know how long he can pay attention, but does not finish what he starts (Exhibit 10E). Dr. Stillman, who saw the claimant for a psychological evaluation, estimated he may have trouble with complex instructions secondary to reported concentration problems. He also stated that the claimant may struggle with pace due to pain and fatigue (Exhibit 8F).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. On his most recent function report, he said he does not handle stress or changes in routine well (Exhibit 10E). Dr. Stillman, who saw the claimant for a psychological evaluation, estimated that he would likely decompensate under highly stressful conditions (Exhibit 8F). As is discussed below, this opinion has limited persuasive value as Dr. Stillman's exam report contains no support for the estimate and other mental health providers give no findings consistent with this conclusion.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. To meet this criteria, a mental disorder must be "serious and persistent;" that is, displaying a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and 2) marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. Because the claimant's diagnosed mental conditions do not meet these criteria, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; must avoid even moderate exposure to hazards such as dangerous machinery and unprotected heights; can do no driving; can understand, remember, and carry out simple instructions; can interact appropriately with supervisors and coworkers; can have no interaction with the general public; can respond appropriately to changes in a routine work setting; and can make judgments on simple work-related decisions.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever

statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant alleged that he is unable to work due to cardiac arrest, cardiomyopathy, ejection fraction of 15-20%, essential hypertension, and chronic systolic heart failure. He alleged problems that include a need for a defibrillator. He said he cannot sleep at night and struggles to focus. He wrote that he fatigues quickly, gets short of breath, and cannot lift over five pounds. He endorsed limitations in his ability to squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, understand, follow instructions, and use his hands (Exhibit 10E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant was admitted to Piedmont Healthcare from May 24 to June 9, 2020 after arriving at the emergency department in cardiac arrest. He was defibrillated and intubated. Imaging confirmed cardiomegaly. He was transferred out of the ICU on June 1. While inpatient, he was hypertensive and hypoxic. On discharge, he was in stable condition. He was diagnosed with chronic systolic heart failure, alcohol abuse, pneumonia, SIRS, cardiomyopathy, and cardiac arrest with ventricular fibrillation (Exhibit 3F, pp. 4-18).

Dr. Gupta saw the claimant for cardiology follow-up on October 14, 2020. The claimant was taking Coreg and losartan. He stated that he was feeling well and had no cardiac complaints. Routine ICD interrogations showed normal functioning. A repeat echocardiogram showed a markedly improved ejection fraction of 50%. He stated that he was now abstaining completely from alcohol (Exhibit 6F).

On November 3, 2020, the claimant presented to DeKalb Medical Center with elevated blood pressure. He reported no symptoms, but had been sent to the ED from a routine appointment with a blood pressure reading of 220/144. He said he had been without his nifedipine and spironolactone for approximately two weeks, and had missed his carvedilol, losartan, and hydrochlorothiazide for the last two days. He denied exertional dyspnea or orthopnea. Physical examination was within normal limits. Images were positive for cardiomegaly but otherwise negative. He was treated for hypertensive urgency and discharged in stable condition (Exhibit 5F).

The claimant had psychological and psychiatric treatment through Odyssey Family Counseling. At an April 29, 2021 appointment, he stated he was unemployed but actively seeking; this is inconsistent with self-employment earnings seen in the record (Exhibit 16D; 19D). He estimated that he had alcoholic drinks once or twice per week. A mental status exam (MSE) report was fully negative, with normal memory, attention, and thought (Exhibit 7F).

See Next Page

Cedric Taylor (BNC#: 21WN820C95939)                    Page 8 of 11

An updated Doppler echo report dated June 23, 2021 showed a normal LV ejection fraction of 60-65%, mild concentric LV hypertrophy, normal diastolic function, normal right ventricular size and function, no hemodynamically significant valvular disease, and no pericardial effusion (Exhibit 9F, pp. 21-23).

On June 25, 2021, the claimant had a physical therapy assessment for left foot drop status post gunshot wound. He reported worsening weakness in the left lower extremity with two instances of tripping in the previous six months. The injury had been sustained in 1998. He demonstrated reduced strength and range of motion, muscle atrophy, and gait abnormality (Exhibit 16F, p. 163). No other follow-up is seen for this condition during the adjudicated period as the claimant did not continue with PT treatment.

Dr. Stillman saw the claimant for a psychological evaluation on December 22, 2021. The claimant reported no work since May 2020, when he left his job as a freight courier due to PTSD symptoms. He again reported no attempt to return to work since this time. He denied taking any prescribed medication for mental conditions. Behavioral observations and mental status exam of the claimant was generally within normal limits except that he was unable to spell the word "world" backwards. He denied hallucinations and homicidal or suicidal ideation. Dr. Stillman diagnosed post-traumatic stress disorder and "problem related to social environment" (Exhibit 8F).

At a primary care visit to Physicians Care Clinic on February 16, 2022, the claimant reported no complaints and said he was stable on meds (Exhibit 9F, p. 2).

The claimant was seen for mental health care at DeKalb Community Service Board in March and April 2022. He presented as calm, alert, and fully oriented. He was taking all prescribed medications but complained of impaired sleep. He was diagnosed with generalized anxiety disorder (Exhibit 10F). On July 14, he complained that he wanted his "panic attacks, fear, and distorted thoughts under control." At his appointment the next month, he was diagnosed with major depressive disorder. His assessment was normal. He reported anxiety and depression symptoms related to recent legal problems. The provider noted that he had not completed assigned homework, "which seem[s] that he lacks total focus on addressing his emotional struggles at times" (Exhibit 14F, pp. 1-17).

The claimant's the physician at Exhibit 8F p. 2-3 that he had made no attempt to return to work since his heart attack is inconsistent with his self-employment earnings at Exhibits 16D and 19D. At Exhibit 8F p. 4 the claimant denied taking any mental health medication, and he had an essentially normal mental status exam at p. 4-5.  At Exhibit 6F p. 2 the claimant reported feeling well with no cardiac complaints and he denied chest pain, shortness of breath and syncope, and his echocardiogram showed his ejection fraction had markedly improved to 50%.  At Exhibit 9F the claimant said he had no complaints at p. 2, 4 and 8, a Doppler echo showed an improved LVEF of 65% at p. 21-23, and his hypertension and cardio symptoms were stable.

At Exhibit 7F p. 7 the claimant said he was actively seeking employment, and at p. 17-19 there are normal mental status exams including grossly intact memory and normal ttention/concentration.  Exhibit 14F p. 35 showed the claimant was still not taking any mental

See Next Page

health medication, and at p. 48-49 there is another normal mental status exam showing no impairment in memory/attention and concentration. Exhibit 16F includes at p. 143 a chest x-ray showing no evidence of acute cardiopulmonary disease, and p. 162-164 and 187-198 show the claimant started physical therapy for left foot drop but was discharged at p. 184 because he did not follow up with the treatment sessions.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

The reports of the nonexamining State Agency consultants, finding the claimant capable of a reduced range of light exertional activity with mild to moderate mental limitations (Exhibit 1A; 3A), are generally persuasive. They are generally consistent with the medical evidence of record and supported by clinical findings. However, the record supports additional nonexertional limitations as described in the residual functional capacity.

Dr. Stillman's opinion (Exhibit 8F) is partially persuasive. While generally internally supported by exam findings and descriptions of mild to moderate limitations, the part regarding likelihood of decompensation is not consistent with other mental health records. Regardless, the residual functional capacity provided allows for work that would eliminate these kinds of highly stressful situations.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by significantly improved cardiac function within months of cardiac arrest, mostly normal MSE reports, and some evidence of noncompliance.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a driver, inspector, truck driver, and house repairer. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. Per the testimony of the vocational expert at the hearing, this work would be unavailable to an individual with the above-described residual functional capacity. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

**7.   The claimant was born on July 21, 1977 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

**9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is**

**"not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

- Marker, DOT # 209.587-034, light SVP 2 (136,000 jobs nationally)
- Routing clerk, DOT # 222.687-022, light SVP 2 (118,000 jobs nationally)
- Router, DOT # 222.587-038, light SVP 2 (25,000 jobs nationally).

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

Cedric Taylor (BNC#: 21WN820C95939)                    Page 11 of 11

## <u>DECISION</u>

Based on the application for a period of disability and disability insurance benefits protectively filed on June 4, 2020, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on April 21, 2022, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *William L. Hogan*
_____
William L. Hogan
Administrative Law Judge

October 31, 2022
_____
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1A | INITIAL.DIB.RFC1/ ABRAHAM OYEWO MD | | 2020-12-29 | 14 |
| T1I | 2A | INITIAL.DIB/ ABRAHAM OYEWO MD | | 2021-01-07 | 1 |
| T1I | 3A | RECON.DIB.RFC1.MRF C1/ KIM MORRIS PSYD | | 2022-02-03 | 26 |
| T1I | 4A | RECON.DIB/ KIM MORRIS PSYD | | 2022-03-16 | 1 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1B | Fee Agreement for Representation before SSA | | 2020-06-04 | 1 |
| T1I | 2B | SSA-1696 - Claimant's Appointment of a Representative | | 2020-06-04 | 1 |
| T1I | 3B | T16 Notice of Disapproved Claim | | 2020-07-07 | 8 |
| T1I | 4B | T2 Notice of Disapproved Claim | | 2021-01-12 | 9 |
| T1I | 5B | Request for Reconsideration | | 2021-02-03 | 1 |
| T1I | 6B | T2 Disability Reconsideration Notice | | 2022-03-31 | 6 |
| T1I | 7B | SSA-1696 - Claimant's Appointment of a Representative | | 2022-04-21 | 4 |
| T1I | 8B | Fee Agreement for Representation before SSA | | 2022-04-21 | 1 |
| T1I | 9B | Request for Hearing by ALJ | | 2022-04-22 | 2 |

| T1I | 10B | Request for Reconsideration | | 2021-02-03 | 1 |
| T1I | 11B | Request for Hearing by ALJ | | 2022-04-22 | 2 |
| T1I | 12B | Hearing Notice | | 2022-06-22 | 14 |
| T1I | 13B | Acknowledge Notice of Hearing | | 2022-06-26 | 1 |
| T1I | 14B | Notice Of Hearing Reminder | | 2022-08-15 | 4 |
| T1I | 15B | Report of Contact | | 2022-08-23 | 1 |
| T1I | 16B | Report of Contact | | 2022-08-23 | 1 |
| T1I | 17B | Fee Agreement for Representation before SSA | | 2022-08-30 | 1 |
| T1I | 18B | SSA-1696 - Claimant's Appointment of a Representative | | 2022-09-01 | 4 |

**Non-Disability Development**

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1D | SSA Consent for Release of Information | | 2020-06-04 | 1 |
| T1I | 2D | Application for Supplemental Security Income Benefits | | 2020-06-04 | 21 |
| T1I | 3D | Application for Disability Insurance Benefits | | 2020-06-04 | 5 |
| T1I | 4D | Lead Protective Filing Worksheet | | 2020-06-04 | 3 |
| T1I | 5D | Lead Protective Filing Worksheet | | 2020-06-04 | 3 |
| T1I | 6D | Internet: Third-Party Filers Wet Signature Page | | 2020-06-15 | 2 |
| T1I | 7D | Authorization for SSA to Obtain Wage and Employment Data | | 2020-06-15 | 4 |
| T1I | 8D | Application for Supplemental Security Income Benefits | | 2020-06-30 | 6 |
| T1I | 9D | Application for Disability Insurance Benefits | | 2020-06-30 | 5 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | 10D | Application for Supplemental Security Income Benefits (Abbreviated) | | 2022-05-17 | 11 |
| T1I | 11D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-06-14 | 1 |
| T1I | 12D | Summary Earnings Query | | 2022-06-14 | 1 |
| T1I | 13D | Detailed Earnings Query | | 2022-06-14 | 4 |
| T1I | 14D | Certified Earnings Records | | 2022-06-14 | 3 |
| T1I | 15D | Summary Earnings Query | | 2022-08-23 | 1 |
| T1I | 16D | Detailed Earnings Query | | 2022-08-23 | 4 |
| T1I | 17D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-08-23 | 1 |
| T1I | 18D | Certified Earnings Records | | 2022-08-23 | 3 |
| T1I | 19D | Income Tax Return | Subsequent to hearing | 2022-10-17 | 39 |
| T1I | 20D | Wage Information | Subsequent to hearing | 2022-10-17 | 1 |

### Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | 1E | Work History Report | | FO - Decatur Ga | to 2020-06-30 | 8 |
| T1I | 2E | Disability Report - Field Office | | FO - Decatur Ga | to 2020-06-30 | 2 |
| T1I | 3E | Disability Report - Adult | | FO - Decatur Ga | to 2020-06-30 | 7 |
| T1I | 4E | Work Activity Report SE | | FO - Decatur Ga | to 2020-06-30 | 8 |
| T1I | 5E | Function Report - Adult | | Cedric Taylor | to 2020-07-17 | 12 |
| T1I | 6E | Disability Report - Appeals | | | to 2021-02-03 | 6 |
| T1I | 7E | Disability Report - Field Office | | | to 2021-02-03 | 2 |
| T1I | 8E | 3rd Party Function Report - Adult | | Monique Taylor | to 2021-03-31 | 12 |

| | | | | | | |
|---|---|---|---|---|---|---|
| T1I | 9E | Work History Report | | Cedric Taylor | to 2021-03-31 | 15 |
| T1I | 10E | Function Report - Adult | | Cedric Taylor | to 2021-03-31 | 12 |
| T1I | 11E | CE Appointment Notice | | Mark A Stillman PhD | to 2021-11-09 | 34 |
| T1I | 12E | CE Acknowledgement | | Cedric Taylor | to 2021-11-09 | 1 |
| T1I | 13E | CE Appointment Reminder | | Cedric Taylor | to 2021-12-12 | 3 |
| T1I | 14E | CE Appointment Reminder | | Kimberly Dawn Hurt | to 2021-12-12 | 3 |
| T1I | 15E | Disability Report - Field Office | | | to 2022-05-17 | 2 |
| T1I | 16E | Disability Report - Appeals | | | to 2022-05-17 | 8 |
| T1I | 17E | Exhibit List to Rep PH2E | | Covington Oho | to 2022-06-14 | 5 |
| T1I | 18E | Resume of Vocational Expert | | Heidi Caplan Feder | to 2022-08-09 | 2 |
| T1I | 19E | Correspondence regarding efforts to obtain evidence | | | to 2022-08-19 | 2 |
| T1I | 20E | Correspondence regarding efforts to obtain evidence | | | to 2022-08-19 | 2 |
| T1I | 21E | Correspondence regarding efforts to obtain evidence | | | to 2022-09-06 | 2 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | 1F | Office Treatment Records | | Atlanta Heart Associates | 2020-06-03 to 2020-06-04 | 19 |
| T1I | 2F | Hospital Records | | Piedmont Healthcare | 2020-05-24 to 2020-06-09 | 757 |
| T1I | 3F | Hospital Records | | Piedmont Henry Hospital | 2020-05-04 to 2020-06-09 | 826 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | 4F | Office Treatment Records | | Atlanta Heart Associates | 2020-05-25 to 2020-09-23 | 13 |
| T1I | 5F | Office Treatment Records | | Physicians Care Clinic | 2020-11-03 to 2020-11-17 | 8 |
| T1I | 6F | Office Treatment Records | | Atlanta Heart Associates | 2020-10-14 to 2020-12-07 | 5 |
| T1I | 7F | Office Treatment Records | | Odyssey Family Counseling | 2021-04-29 to 2021-04-29 | 21 |
| T1I | 8F | Consultative Examination Report | | Mark A Stillman PhD | to 2021-12-22 | 6 |
| T1I | 9F | Office Treatment Records | | Physicians Care Clinic | 2016-06-16 to 2022-02-16 | 30 |
| T1I | 10F | Progress Notes | | Dekalb Community Service Board | 2022-03-17 to 2022-04-22 | 29 |
| T1I | 11F | Hospital Records | | Piedmont Healthcare | 2022-05-24 to 2022-06-09 | 703 |
| T1I | 12F | Hospital Records | | Piedmont Healthcare | 2022-05-24 to 2022-06-09 | 762 |
| T1I | 13F | Outpatient Hospital Records | | Odyssey Family Counseling Ctr | 2021-09-15 to 2022-03-29 | 10 |
| T1I | 14F | Outpatient Hospital Records | | Dekalb Comm Svc Board | 2022-05-05 to 2022-08-12 | 54 |
| T1I | 15F | Medical Source - No MER Available | | Physicians Care Clinic | to 2022-08-24 | 1 |
| T1I | 16F | Emergency Department Records | Subsequent to hearing | Emory Decatur Hospital | 2007-05-21 to 2021-08-28 | 201 |