**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| PAMELA FOUGHTY, individually | ) | |
| And as Executrix of the Estate of | ) | |
| WILLIAM FOUGHTY, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO.: |
| v. | ) | |
| | ) | |
| CLEAVER-BROOKS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

COMES NOW Plaintiff, Pamela Foughty ("Ms. Foughty"), and submits this

Complaint against Defendant Cleaver-Brooks, Inc. ("Cleaver-Brooks"), showing the

Court as follows:

**Background and parties:**

1.

This is an action under the Employee Retirement Income Security Act of 1974

as amended ("ERISA"), 29 U.S.C. § 1001 et seq. for breach of fiduciary duty in

relation to an employee welfare benefit plan.

2.

Jurisdiction is based on ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

3.

Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division pursuant to 29 U.S.C. § 1132(e)(2) because Cleaver-Brooks maintains its registered agent for service in this district.

4.

Cleaver-Brooks is a Delaware corporation with its principal place of business located at 221 Law Street, Thomasville, Georgia, 31792

5.

This Court has personal jurisdiction over Defendant Cleaver-Brooks.

6.

Defendant Cleaver-Brooks may be served through its registered agent for service, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

7.

Ms. Foughty is the surviving spouse of William Foughty ("Mr. Foughty"). Mr. Foughty was formerly the Senior Vice President of Operations for Cleaver-Brooks, Inc.

8.

As a full-time employee of Cleaver-Brooks, Inc., Mr. Foughty was enrolled

in the group life insurance plan sponsored by Cleaver-Brooks (Group Policy Number GL 157976, Effective Date January 1, 2018) and insured by Reliance Standard Life Insurance Company ("Reliance Standard" or "Reliance"). A copy of Group Policy GL 157976 (hereafter "the Plan") is attached as Exhibit A.

9.

The Plan is an "Employee Welfare Benefit Plan" as that term is defined by ERISA, 29 U.S.C. § 1002(1).

10.

Mr. Foughty was a "participant" in the Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

11.

Cleaver-Brooks was the "administrator" of the Plan as defined by ERISA, 29 U.S.C. § 1102(16).

12.

Cleaver-Brooks was a Plan "fiduciary" pursuant to 29 U.S.C. § 1102(21).

13.

Under the Plan, Mr. Foughty's life was insured by Defendant Reliance Standard in the amount of $500,000.

14.

Ms. Foughty is the legal executrix of Mr. Foughty's estate and is Mr. Foughty's sole "beneficiary" under the Plan, as defined by ERISA, 29 U.S.C. § 1002(8).

15.

Mr. Foughty was diagnosed with brain cancer in May 2020.

16.

After Mr. Foughty was diagnosed with brain cancer, Ms. Foughty worked diligently to ensure that his life insurance coverage under the Plan would remain in force through the time of his death.

17.

In attempting to ensure Mr. Foughty's coverage remained in force, Ms. Foughty reached out to Defendant Cleaver-Brooks seeking information and guidance.

18.

Cleaver-Brooks had actual knowledge of the circumstances surrounding Ms. Foughty's inquiry, namely that Mr. Foughty was going out of work with brain cancer and that Ms. Foughty was seeking to extend and preserve his life insurance coverage.

19.

Cleaver-Brooks had a fiduciary duty to provide Ms. Foughty with complete and accurate information germane to her situation.

20.

Cleaver-Brooks breached its fiduciary duty by providing false, misleading, inaccurate, and/or incomplete information to Ms. Foughty.

21.

Cleaver-Brooks' breaches of fiduciary duty caused Ms. Foughty's claim for life insurance benefits to be denied following Mr. Foughty's death, causing Ms. Foughty to incur monetary and other damages.

### **Cleaver-Brooks could have unilaterally extended Mr. Foughty's coverage through the date of his death.**

22.

Following his cancer diagnosis, Mr. Foughty began a period of intermittent leave from Cleaver-Brooks under the Family and Medical Leave Act (FMLA) on May 13, 2020.

23.

The Plan provides that an insured's coverage will terminate "on the first of" several possible events, one of which is when the insured ceases to be "Actively at

Work" on a "Full Time Basis."

24.

The Plan defines "Actively at Work" and "Full-Time" as follows:

*"Actively at Work" and 'Active Work" means the person actually performing on a Full-time basis each and every duty pertaining to his/her job In the place where and the manner in which the job is normally performed. This Includes approved time off such as vacation, Jury duty and funeral leave, but does not include time off as a result of injury or Illness.*

*"Full-time" means working for you for a minimum of 30 hours during a person's regularly scheduled work week.*

25.

Under the above provisions, Mr. Foughty's life insurance coverage would have terminated when he began intermittent FMLA leave. However, other provisions of the Plan existed allowing Cleaver-Brooks to extend Mr. Foughty's coverage beyond that date.

26.

First, the Plan states:

***EXTENSION OF COVERAGE UNDER THE FAMILY AND MEDICAL LEAVE ACT AND UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT***

*(USERRA)*

*Family and Medical Leave of Absence:*

*We will continue the Insured's coverage and that of any Insured Dependent, if applicable, in accordance with your policies regarding leave under the Family and Medical Leave Act of 1993, as amended, or any similar state law, as amended, if:*

*(1) the premium for such Insured and his/her Insured Dependents, if applicable, continues to be paid during the leave; and*

*(2) you have approved the Insured's leave in writing and provide a copy of such approval within thirty-one (31) days of our request.*

*As long as the above requirements are satisfied, we will continue coverage until the later of:*

*(1) the end of the leave period required by the Family and Medical Leave Act of 1993, as amended; or*

*(2) the end of the leave period required by any similar state law, as amended.*

27.

Under this provision, Reliance Standard would be required to continue to insure Mr. Foughty for at least 12 weeks after his FMLA leave started, if not longer because Mr. Foughty took his FMLA leave intermittently.

28.

All Cleaver-Brooks had to do to secure this coverage for Mr. Foughty was continue to pay premiums and provide Reliance Standard with confirmation of

FMLA approval. Thus, under the FMLA extension provision, Cleaver-Brooks could have unliterally extended Mr. Foughty's coverage through at least August 5, 2020.

29.

The Plan also provided that Cleaver-Brooks could further extend Mr. Foughty's coverage for another 12 months beyond the FMLA period simply by continuing to pay premiums under the "Continuation of Individual Insurance" provision.

That provision states:

***CONTINUATION OF INDIVIDUAL INSURANCE****: The Insurance of an Insured may be continued, by payment of premium, beyond the date the insured ceases to be eligible for this insurance, but not longer than:*

*(1) twelve (12) months, if due to illness or injury; or*

*(2) one (1) month, if due to temporary lay-off or approved leave of absence.*

30.

Cleaver-Brooks should have extended Mr. Foughty's coverage through at least August 5, 2021, using the Continuation of Individual Insurance and FMLA extension provisions, but it failed to do so.

31.

Mr. Foughty passed away due to his illness on July 3, 2021.

32.

If Cleaver-Brooks had understood the terms of the Plan and acted according to Ms. Foughty's and its own goals of preserving Mr. Foughty's coverage to the maximum extent possible, it could have unilaterally extended Mr. Foughty's coverage through and past the date of his death.

**Cleaver-Brooks' breaches of fiduciary duty: misinformation and confusion leading to the denial of Ms. Foughty's claim for benefits.**

33.

Ms. Foughty first contacted Cleaver-Brooks regarding her husband's employee benefits in June 2020 and continued to communicate with Cleaver-Brooks regarding benefits through and past the date of Mr. Foughty's death.

34.

While communicating with Ms. Foughty regarding her husband's benefits, Cleaver-Brooks was acting as an ERISA fiduciary, with a clear duty to provide Ms. Foughty with accurate information and to competently assist her in extending Mr. Foughty's life insurance coverage as allowed by the Plan.

35.

Dennis Hettinger, Corporate Director of Human Resources for Cleaver-Brooks, was Ms. Foughty's primary point of contact.

36.

Mr. Hettinger advised Ms. Foughty regarding her husband's various employee benefits, including his life insurance coverage.

37.

On December 2, 2020, Ms. Foughty spoke with Mr. Hettinger on the phone and asked Mr. Hettinger how to convert her husband's life insurance from group coverage to an individual policy so that his coverage could continue beyond the end of his employment.

38.

Mr. Hettinger and Cleaver-Brooks should have told Mrs. Foughty that, because Mr. Foughty was on leave for medical reasons, Cleaver-Brooks could unilaterally extend his life insurance coverage by approximately 15 months under the FMLA and Continuation of Individual Coverage provisions.

39.

Instead, Cleaver-Brooks provided consistently confusing and often wrong and misleading information to Ms. Foughty and to Reliance Standard, ultimately causing

Reliance Standard to deny Ms. Foughty's claim for life insurance benefits.

40.

Also on December 2, 2020, Beth Buchholz of Cleaver-Brooks sent an email to Reliance Standard asking about the process of "converting" the Plan.

41.

Cleaver-Brooks failed to provide Reliance Standard with any information regarding Mr. Foughty's relevant circumstances. For instance, it failed to tell Reliance Standard that Mr. Foughty was no longer "actively employed," that he had taken a period of approved FMLA leave, that he was now on disability due to his terminal illness, and that he had Basic but not Supplemental life insurance coverage – all of which were relevant to the continuation of Mr. Foughty's coverage.

42.

Unaware of the circumstances at play, a Reliance Standard employee, Ms. Nicole Ford, responded with information about how an employee could "port their Supplemental Life coverage."

43.

Cleaver-Brooks failed to recognize that this advice would not apply to Mr. Foughty and failed to inform Reliance Standard that Mr. Foughty maintained only

Basic life insurance coverage, which is ineligible to be "ported."

44.

Under the Plan, an employee may "convert" (not port) Basic life insurance coverage into an individual policy, but only within 31 days after the employee's insurance coverage terminates - circumstances that did not apply as of December 2020.

45.

Cleaver-Brooks failed to recognize the distinction between porting and conversion and thus passed along irrelevant and confusing information to Ms. Foughty and to Reliance.

46.

On December 3, 2020, Cleaver-Brooks, acting through Mr. Hettinger, provided an inapplicable porting application form from Reliance Standard to Ms. Foughty and told her it was "the form to convert life insurance."

47.

Mr. Hettinger's email also incorrectly told Ms. Foughty that she would have to convert Mr. Foughty's coverage within "31 days from 'termination' so you still have until the 14th of December."

48.

Mr. Hettinger apparently failed to recognize that the conversion privilege in the Plan is triggered when an employee's *insurance coverage* terminates, not when their employment ends. Thus, he provided Ms. Foughty inaccurate information about her deadline to convert.

49.

At the same time, Mr. Hettinger and Cleaver-Brooks failed to recognize that the Plan provided easy avenues to avoid termination of Mr. Foughty's coverage for at least several more months, discussed above.

50.

On December 4, 2020, Ms. Foughty emailed Mr. Hettinger asking whether her husband had participated in the Supplemental Life insurance plan, and Mr. Hettinger responded that he only participated in Basic Life. Mr. Hettinger still did not realize he had provided Ms. Foughty with inaccurate information.

51.

Ms. Fought only learned of the distinction between porting and conversion when her daughter contacted a sales representative at Reliance Standard.

52.

On December 10, 2020, a Reliance Standard representative first told Ms. Foughty about the "Continuation of Individual Coverage" provision that would allow Cleaver-Brooks to extend her husband's coverage by 12 months.

53.

Ms. Foughty then had to inform Cleaver-Brooks about the available 12-month extension, something Cleaver-Brooks, acting as an ERISA fiduciary, already had a duty to know and to act on. She emailed Mr. Hettinger, writing, "After reviewing and talking to Reliance, there is a 12-month continuation of benefit provision in the life insurance policy that would pertain to being out of work because of an illness. So I wanted to look into this before I would request the porting of the policy. Can you confirm if this could be a possibility, or if the company will be terminating the policy, and if so is that the date of November 13?"

54.

Mr. Hettinger demonstrated his ongoing confusion by forwarding Ms. Foughty's email to Ms. Buccholz, asking "if this question makes sense, and what is the answer?"

55.

Ms. Buccholz from Cleaver-Brooks also demonstrated that she lacked

understanding of the Plan when she emailed Nicole Ford at Reliance Standard, writing: "I'm not sure if this question from Pam makes sense to you, I think she was asking about how long the policy is active for from termination date. I believe it was two years. In our life certificates it mentions supplemental life as the portable policy, but is basic life portable as well?"

56.

Cleaver-Brooks' own writings conclusively demonstrate that its human resources department did not understand several important features of the Plan, nor were they able to competently assist an employee going out on leave due to terminal illness.

57.

Cleaver-Brooks eventually recognized it could extend Mr. Foughty's life insurance coverage for 12 months simply by continuing to pay premiums to Reliance Standard, but only after being told once by Ms. Foughty and then twice by Reliance Standard.

58.

Cleaver-Brooks then committed another serious error, mistakenly assuming that the 12-month extension of coverage would begin as of the date Mr. Foughty's employment was terminated with Cleaver-Brooks (November 2020). Cleaver-

Brooks failed to investigate or to understand that the Plan specifies the 12-month
Continuation of Coverage begins when *coverage*, not employment, is terminated.

59.

Taking Reliance Standard's statement at face value that Mr. Foughty's
coverage could be extended by 12 months, Ms. Buccholz responded to Reliance that
Cleaver-Brooks would "be continuing [his] coverage for the next year." This was
impossible under the circumstances and terms of the Plan, but the assurance from
Cleaver-Brooks lulled Ms. Foughty into a false sense of security that her husband's
coverage was now secure through at least November 2021.

60.

After Mr. Foughty died in July 2021, Ms. Foughty filed a claim for life
insurance benefits with Reliance Standard.

61.

As part of the claim filing process, Cleaver-Brooks had to complete a form to
verify Mr. Foughty's employment and provide some basic information.

62.

Among other things, the form asked Cleaver-Brooks for Mr. Foughty's "Date
last physically worked."

63.

Despite Mr. Foughty having worked on and off through November 2020, Cleaver-Brooks answered that he had last worked on "5/13/20," the date he began his intermittent FMLA leave.

64.

By letter dated August 17, 2021, Reliance Standard denied Ms. Foughty's claim.

65.

Relying on the date last worked provided by Cleaver-Brooks, Reliance Standard found that the "continuation of individual insurance of twelve months would have extended William H Foughty's eligibility until May 13, 2021. At this time coverage terminated."

66.

Reliance Standard concluded that because Mr. Foughty "was not a member of the Eligible Class for this insurance on the date of his death, July 3, 2021, no life insurance coverage was in force on William H Foughty's behalf under policy GL157976 prior to the date of loss."

67.

Reliance Standard further stated that Mr. Foughty could have converted his group life insurance coverage to an individual policy but noted that it had "no record of a request for conversion."

68.

Cleaver-Brooks' failure to provide complete and accurate information about the Plan to Ms. Foughty and its false and misleading statements regarding the operation of the Plan and Mr. Foughty's last date worked created significant confusion and misunderstanding that ultimately resulted in the denial of Ms. Foughty's claim for benefits.

**The benefits dispute and Ms. Foughty's settlement with Reliance Standard:**

69.

With the assistance of counsel arranged and paid for by Cleaver-Brooks, Ms. Foughty submitted an ERISA administrative appeal of Reliance Standard's decision to deny benefits.

70.

Cleaver-Brooks' counsel argued for coverage under yet another provision of the Plan, titled "Individual Reinstatement," which would automatically see an employee's life insurance coverage reinstated if they returned to "Active Work"

within 6 months of going out on medical leave.

71.

Cleaver-Brooks' counsel argued that Mr. Foughty satisfied the requirements of reinstatement in July 2020 when he worked a week of more than 40 hours and performed his normal job duties.

72.

From the date of reinstatement, Cleaver-Brooks' counsel argued that Mr. Foughty's coverage was then extended under the Continuation of Individual Insurance provision by Cleaver-Brooks' continued payment of premiums.

73.

Pursuant to the Plan, Cleaver-Brooks' counsel's argument relied on proving to Reliance Standard that in July 2020 Mr. Foughty was "actually performing on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed" for at least 30-hours during a "regularly scheduled work week."

74.

On February 7, 2022, Reliance Standard upheld its decision to deny benefits.

75.

Reliance Standard's final decision letter stated that "Mr. Foughty was not considered a Full-time, Active Employment after May 13, 2020, the date his coverage terminated under the policy. Therefore, there are no benefits connected to Cleaver-Brook Inc.'s Group Life Insurance policy."

76.

Reliance Standard found there was insufficient proof that Mr. Foughty had performed all his normal job duties in July 2020 to qualify for reinstatement of coverage at that time.

77.

Reliance Standard's factual determination was a discretionary decision under ERISA and would not be judicially overturned absent a finding the decision was "arbitrary and capricious" or an "abuse of discretion."

78.

After Reliance Standard's final decision, Ms. Foughty retained counsel to file a lawsuit against Reliance Standard in state court.

79.

When Reliance Standard removed the matter to federal court, Ms. Foughty retained the undersigned and this law firm to assert her ERISA causes of action.

80.

On September 30, 2022, more than a year after the death of her husband, Reliance Standard agreed to pay Mrs. Foughty the full benefit amount of $500,000 plus 100% of the interest due under the law.

81.

In exchange for the settlement, Ms. Foughty signed a release that specifically preserved Ms. Foughty's claims against Cleaver-Brooks for breach of fiduciary duty.

82.

Ms. Foughty was not "made whole" by the settlement with Reliance Standard.

83.

Due to Cleaver-Brooks breaches of fiduciary duty, Ms. Foughty incurred significant attorneys' fees in fighting Reliance Standard's denial of benefits, ultimately recovering less than the total benefit amount payable to her under the Plan.

84.

Ms. Foughty also suffered emotionally as a result of the adversarial process she was forced to go through, the stress and financial uncertainty only exacerbating the anguish she was experiencing due to the loss of husband and interfering with her ability to properly grieve.

## COUNT I: BREACH OF FIDUCIARY DUTY UNDER ERISA, 29 U.S.C. § 1132(a)(3)

85.

Plaintiff hereby repeats and realleges the averments of Paragraphs 1 through 84 above, as if set forth herein verbatim.

86.

At all relevant times, Cleaver-Brooks was a fiduciary under ERISA with respect to the Plan and its participants and beneficiaries.

87.

As a Plan fiduciary, Cleaver-Brooks was required by ERISA 29 U.S.C. § 1104(a) to discharge its fiduciary duties "solely in the interest of the participants and beneficiaries" of the Plan and to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

88.

When Ms. Foughty approached Cleaver-Brooks with the goal of preserving her husband's life insurance coverage after the end of his employment, Cleaver-Brooks had actual knowledge that Mr. Foughty was going out of work due to brain cancer with a poor prognosis.

89.

Cleaver-Brooks breached its fiduciary duties to Ms. Foughty by:

- Failing to provide Ms. Foughty with complete and accurate information about the Plan material to her circumstances;

- Failing to understand and/or learn the Plan's provisions regarding the means of extending coverage to employees going out of work due to illness;

- Failing to understand and/or learn the Plan's provisions regarding conversion or porting;

- Failing to realize that Mr. Foughty's coverage could be extended while he was on an approved FMLA leave;

- Failing to realize that Mr. Foughty's coverage was being extended by continued payment of premium to Reliance Standard;

- Failing to provide sufficient information to Reliance Standard to allow

Reliance Standard to provide adequate and helpful information;

- Failing to accurately calculate when Mr. Foughty's life insurance coverage would lapse under the Plan;

- Providing inaccurate information to Ms. Foughty regarding her deadline to convert to individual coverage;

- Providing an inaccurate "date last worked" to Reliance Standard during the claim process; and

- In such other particulars as may be proved in litigation.

90.

As a direct and proximate result of Cleaver-Brooks' breaches of fiduciary duty, Ms. Foughty has suffered financial and emotional damage.

91.

Ms. Foughty has retained counsel to represent her in this matter, and is entitled to an award of costs, including her reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1).

92.

WHEREFORE, Ms. Foughty prays for relief in the following forms:

a) An order finding Defendant Cleaver-Brooks breached its fiduciary duties to Ms. Foughty, damaging her;

b) An award of "made whole" monetary damages under the equitable remedy of "surcharge";

c) An award of Ms. Foughty's reasonable costs and expenses of litigation, including attorneys' fees; and

d) Such other and further relief as the Court may deem just and proper.

Respectfully submitted, this 11th day of July, 2023.

**EVANS WARNCKE ROBINSON, LLC**

By: */s Jeffrey S. Warncke*
      Jeffrey S. Warncke
      Georgia Bar No. 737850
      */s Steven J. Mitchell*
      Steven J. Mitchell
      Georgia Bar No. 669018

Attorneys for Plaintiff
191 Peachtree Street NE
Suite 3980
Atlanta, Georgia 30303
P: 404.841.9400
F: 888.738.5949
E: j.warncke@ewrlawfirm.com
E: s.mitchell@ewrlawfirm.com