# **EXHIBIT A**

# RELIANCE STANDARD
## LIFE INSURANCE COMPANY

Home Office: Schaumburg, Illinois • Administrative Office: Philadelphia, Pennsylvania

**POLICYHOLDER:** Cleaver-Brooks, Inc.                **POLICY NUMBER:**   GL 157976

**EFFECTIVE DATE:** January 1, 2018, as amended through April 1, 2020

**ANNIVERSARY DATES:** January 1, 2019 and each January 1st thereafter.

**PREMIUM DUE DATES:** The first premium is due on the Effective Date. Further premiums are due monthly, in advance, on the first day of each month.

The Policy is delivered in Georgia and is governed by its laws.

We agree to provide insurance to you in exchange for the payment of premium and a signed Application. The Policy provides benefits for loss of life from injury or sickness. It insures the eligible persons for the amount of insurance shown on the Schedule of Benefits. The insurance is subject to the terms and conditions of the Policy.

The effective date of the Policy is shown above. Insurance starts and ends at 12:01 A.M., Local Time, at your main address. It stays in effect as long as premium is paid when due. The "TERMINATION OF THE POLICY" section of the GENERAL PROVISIONS explains when the insurance can be ended.

The Policy is signed by the President and Secretary.

Secretary                                President

**GROUP LIFE INSURANCE
NON-PARTICIPATING**

The laws of the State of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family violence.

This Group Life Policy amends the Group Life Policy previously issued to you by us. It is issued on October 20, 2020.

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** GL 157976

**POLICY EFFECTIVE DATE:** January 1, 2018, as amended through April 1, 2020

**POLICY DELIVERED IN:** Georgia

**ANNIVERSARY DATE:** January 1st in each year

Application is made to us by: Cleaver-Brooks, Inc.

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____

Policyholder: _____

By: _____
                       (Signature)

_____
                       (Title)

Please sign and return.

`*BC1COAPGL`          `15797604/01/2020*`

*BC1COAPGL      15797604/01/2020*RSL
*BC2COAPCleaver-Brooks, Inc.

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** GL 157976

**POLICY EFFECTIVE DATE:** January 1, 2018, as amended through April 1, 2020

**POLICY DELIVERED IN**: Georgia

**ANNIVERSARY DATE:** January 1st in each year

Application is made to us by: Cleaver-Brooks, Inc.

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____

Policyholder: _____

By: _____
                (Signature)

_____
                (Title)

## TABLE OF CONTENTS

| | Page |
|---|---|
| SCHEDULE OF BENEFITS | 1.0 |
| DEFINITIONS | 2.0 |
| GENERAL PROVISIONS | 3.0 |
|     Entire Contract | |
|     Changes | |
|     Incontestability | |
|     Records Maintained | |
|     Clerical Error | |
|     Misstatement of Facts | |
|     Assignment | |
|     Conformity With State Laws | |
|     Certificate of Insurance | |
|     Policy Termination | |
| LIMITATIONS | 4.0 |
| INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION | 5.0 |
|     General Group | |
|     Eligibility Requirements | |
|     Effective Date of Individual Insurance | |
|     Termination of Individual Insurance | |
|     Continuation of Individual Insurance | |
|     Individual Reinstatement | |
| CONVERSION PRIVILEGE | 6.0 |
| PREMIUMS | 7.0 |
|     Premium Payment | |
|     Premium Rate | |
|     Grace Period | |
| BENEFICIARY AND FACILITY OF PAYMENT | 8.0 |
| SETTLEMENT OPTIONS | 9.0 |
| WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY | 10.0 |
| CLAIMS PROVISIONS | 11.0 |
| DEPENDENT LIFE INSURANCE | 12.0 |
| EXTENSION OF COVERAGE UNDER THE FAMILY AND MEDICAL LEAVE ACT AND UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT (USERRA) | 13.0 |
| PORTABILITY | 14.0 |
| GROUP TERM LIFE INSURANCE LIVING BENEFIT RIDER | 15.0 |

## SCHEDULE OF BENEFITS

**NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED:**  Nebraska Boiler, Industrial Combustion

"Affiliate" means any corporation, partnership, or sole proprietor under the common control of the Policyholder.

**ELIGIBLE CLASSES:**  Each active, Full-time employee, except any person employed on a temporary or seasonal basis, according to the following classifications:

CLASS 1:   non-union Employee, except an employee covered in any other class

CLASS 2:   Nebraska Boiler Union employee

CLASS 3:   Industrial Combustion Union employee

CLASS 4:   non-union employee whose annual Earnings were greater than $75,000 as of January 1, 2015, who was insured with the prior carrier on December 31, 2017, and who does not elect to change his/her Amount of Supplemental Life Insurance or Amounts of Dependent Life Insurance which was in effect with the prior carrier as of December 31, 2017

**INDIVIDUAL EFFECTIVE DATE:**  The first of the month coinciding with or next following the day the person becomes eligible.

**INDIVIDUAL REINSTATEMENT:**  6 months

**MINIMUM PARTICIPATION REQUIREMENTS:**

Number of Insureds:  10
Percentage:  Basic: 100%
Supplemental: 33%

**AMOUNT OF INSURANCE:**

**Basic Life:**

CLASS 1 & 4:   Two (2) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $500,000.

CLASS 2:  $7,000.

CLASS 3:  $30,000.

***Supplemental Life*** *(Applicable only to those Insureds who elect Supplemental coverage and are paying the applicable premium)*:

CLASS1:  $25,000 to $500,000 in increments of $25,000.

CLASS 4:  The benefit amounts on file with us.

CLASS 1:   Amounts of supplemental insurance over the guaranteed issue amount of $250,000 are subject to our approval of a person's proof of good health.  However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.

CLASS 1 & 4:  For Insureds age 70 and over, the Amount of Basic Life and Supplemental Life Insurance is subject to automatic reduction.  Upon the Insured's attainment of the specified age below, the Amount of Basic Life and Supplemental Life Insurance will be reduced to the applicable percentage.  This reduction also applies to Insureds who are age 70 or over on their Individual Effective Date.

| Age | Percentage of available or in force amount at age 69 |
|-----|------------------------------------------------------|
| 70-74 | 65% |
| 75-79 | 20% |
| 80-84 | 15% |
| 85+ | 10% |

**Dependent Life:**

CLASS 1:

Spouse Amount:  $10,000 to $250,000 in increments of $10,000
Child Amount:
     14 days to 6 months:   $1,000
     6 months and over:   $5,000 to $20,000 in increments of $5,000

The Spouse Amount of Insurance may not exceed 100% of the Insured's amount.

Amounts of Insurance for spouses over the guaranteed issue amount of $50,000 are subject to our approval of a person's proof of good health.  However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF DEPENDENT INSURANCE) will be at no expense to us.

The Spouse Amount of Insurance will reduce in the same manner as the Insured's Amount of Insurance upon the Spouse's attainment of reducing ages.

CLASS 4:

Spouse Amount:   The benefit amounts on file with us.
Child Amount:   The benefit amounts on file with us.

The Spouse Amount of Insurance may not exceed 100% of the Insured's amount.

The Spouse Amount of Insurance will reduce in the same manner as the Insured's Amount of Insurance upon the Spouse's attainment of reducing ages.

The Life amount will be reduced by any benefit paid under the Living Benefit Rider.

**CHANGES IN AMOUNT OF INSURANCE:**

CLASS 1 & 4:  Increases and decreases in the Amount of Insurance because of changes in age are effective on the January 1st coinciding with or next following the date of the change.  Increases and decreases in the Amount of Insurance because of changes in class or earnings (if applicable) are effective on the date of the change.

With respect to increases in the Amount of Insurance, the Insured must be Actively At Work on the date of the change.  If an Insured is not Actively At Work when the change should take effect, the change will take effect on the day after the Insured has been Actively At Work in an Eligible Class for one full day.  However, if an Insured has the right to choose his/her amount of Supplemental insurance, proof of good health will be required when the Insured changes his/her selection to increase the amount of his/her Supplemental insurance.  Any such increase will take effect only if we approve such proof.

*Premium changes due to an Insured's age will occur on the January 1st coinciding with or next following the birthday that causes the Insured to enter the next age bracket.*

If an increase in, or initial application for, the Amount of Insurance is due to a life event change (such as marriage, birth or specific changes in employment status), proof of good health will not be required for amounts up to the guaranteed issue amount, provided the Eligible Person: (a) applies within thirty-one (31) days of such life event; and (b) was not previously declined for group life insurance coverage with us; and (c) did not have a prior application withdrawn or marked incomplete for any reason.

CLASS 2 & 3:  Increases and decreases in the Amount of Insurance because of changes in age, class or earnings (if applicable) are effective on the date of the change.

With respect to increases in the Amount of Insurance, the Insured must be Actively At Work on the date of the change.  If an Insured is not Actively At Work when the change should take effect, the change will take effect on the day after the Insured has been Actively At Work in an Eligible Class for one full day.

**APPROVED ENROLLMENT PERIODS:**

CLASS 1:  It is your responsibility to provide us with written notice at least thirty-one (31) days prior to conducting an Annual Enrollment Period of the beginning and end dates of such enrollment period.   The terms of the Approved Enrollment Period will be as follows:

During an Approved Enrollment Period, as shown on file with us, applications for employees who were previously eligible and are now applying for initial insurance coverage or are insured and are applying for additional coverage will not require proof of good health for an incremental increase up to $25,000 in insurance coverage, provided:

    (1)  the application is complete, signed, and received by you during the "Enrollment Period";
    (2)  the employee was not previously declined for group life insurance with us; and
    (3)  the employee did not have an application withdrawn or marked as incomplete for any reason.

Insurance coverage applied for during this "Enrollment Period" will be effective on the January 1st following the Approved Enrollment Period, provided the employee is Actively at Work and applicable premium is paid.

Employees who exceed an incremental increase of more than $25,000 in insurance coverage, and all amounts in excess of the guarantee issue limits stated in this Policy, are subject to our approval of proof of good health and such amounts of insurance will not be effective until approved by us.

**CONTRIBUTIONS:**

| | | |
|---|---|---|
| CLASS 1 & 4: | Persons: | Basic Insurance: 0% |
| | | Supplemental Insurance (Applicable only to those Insureds who elect Supplemental coverage and are paying the applicable premium):  100% |
| | | Dependents:  100% |
| | | |
| CLASS 2 & 3: | Persons: | Basic Insurance: 0% |

## DEFINITIONS

"We," "us" and "our" means Reliance Standard Life Insurance Company.

"You," "your" and "yours" means the employer, union or other entity to which the Policy is issued and which is deemed the *Policyholder.*

"Eligible Person" means a person who meets the eligibility requirements of the Policy.

"Insured" means a person who meets the eligibility requirements of the Policy and is enrolled for this insurance.

"Actively at Work" and "Active Work" means the person actually performing on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed.  This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.

"Full-time" means working for you for a minimum of 30 hours during a person's regularly scheduled work week.

"The date he/she retires" or "retirement" means the effective date of an Insured's:

  (1)  retirement pension benefits under any plan of a federal, state, county or municipal retirement system, if such pension benefits include any credit for employment with you;
  (2)  retirement pension benefits under any plan which you sponsor, or make or have made contributions; or
  (3)  retirement benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act.

CLASS 1 & 4:   "Earnings", as used in the SCHEDULE OF BENEFITS section, means the Insured's annual salary received from you on the day just before the date of loss.  Earnings does not include commissions, overtime pay, bonuses, incentive pay or any other special compensation not received as basic salary.

If hourly employees are insured, the number of hours worked during a regularly scheduled work week, not to exceed 40 hours per week, times 52 weeks, will be used to determine annual earnings.

"Total Disability", as used in the WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY section, means an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience.

CLASS 1 & 4:  "Dependents" as used in the DEPENDENT LIFE INSURANCE section, means:

  (1)  the Insured's legal spouse who is not legally separated or divorced from the Insured; and

  (2)  the Insured's child(ren), age 14 days to 26 years, including natural children, legally adopted children, children who are dependent on the Insured during the waiting period before adoption, stepchildren, and foster children.  Foster children must be in the Insured's custody to be considered a Dependent; and

  (3)  the Insured's child(ren), beyond the limiting age who is incapable of self-sustaining employment by reason of intellectual disability or physical handicap and who is chiefly dependent upon the Insured for support and maintenance.

## GENERAL PROVISIONS

**ENTIRE CONTRACT**

The entire contract between you and us is this Policy, your application (a copy of which is attached at issue), and any endorsements and amendments.

**CHANGES**

No agent has authority to change or waive any part of this Policy.  To be valid, any change or waiver must be in writing.  It must also be signed by one of our executive officers and attached to this Policy.

**INCONTESTABILITY**

Any statement made in your application will be deemed a representation, not a warranty.  We cannot contest the validity of this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.  All other Policy terms will remain applicable.

Any statements made by you, any Insured or any Insured Dependent, or on behalf of any Insured or any Insured Dependent to persuade us to provide coverage, will be deemed a representation, not a warranty.  This provision limits our use of these statements in contesting the amount of insurance for which an Insured or any Insured Dependent is covered.  The following rules apply to each statement:

    (1)  No statement will be used in a contest unless:

        (a)  it is in a written form signed by the Insured or any Insured Dependent, or on behalf of the Insured or any Insured Dependent; and

        (b)  a copy of such written instrument is or has been furnished to the Insured or any Insured Dependent, the Insured's or any Insured Dependents beneficiary or legal representative.

    (2)  If the statement relates to an Insured's or any Insured Dependent's insurability, it will not be used to contest the validity of insurance which has been in force, before the contest, for at least two years during the lifetime of the Insured or any Insured Dependent.

**RECORDS MAINTAINED**

You must maintain records of all Insureds.  Such records must show the essential data of the insurance, including new persons, terminations, changes, etc.  This information must be reported to us regularly.  We reserve the right to examine the insurance records maintained at the place where they are kept.  This review will only take place during normal business hours.

**CLERICAL ERROR**

Clerical errors in connection with this Policy or delays in keeping records for this Policy, whether by you, us, or the Plan Administrator:

    (1)  will not terminate insurance that would otherwise have been effective; and

    (2)  will not continue insurance that would otherwise have ceased or should not have been in effect.

Clerical errors include (but are not limited to) the payment of premium for coverage not provided by this Policy.  If appropriate, a fair adjustment of premium will be made to correct a clerical error.  Such adjustments will be limited to the twelve (12) month period preceding the date we receive proof from you that an adjustment due to overpayment of premium should be made or the date we discover that premium has been underpaid.

**MISSTATEMENT OF FACTS**

If relevant facts about any person were misstated:

    (1)  an adjustment of the premium will be made; and
    (2)  the true facts will decide what amount of insurance is valid under this Policy.

If any misstated fact impacts the amount of premium that should have been paid, any benefit payable shall be in the amount the paid premium would have purchased based on the correct fact(s).

**ASSIGNMENT**

Ownership of any benefit provided under this Policy may be transferred by assignment.  An irrevocable beneficiary must give written consent to assign this insurance.  Written request for assignment must be made in duplicate at our Administrative Offices.  Once recorded by us, an assignment will take effect on the date it was signed.  We are not liable for any action we take before the assignment is recorded.

**CONFORMITY WITH STATE LAWS**

Any section of this Policy, which on its effective date, conflicts with the laws of the state in which this Policy is issued, that is not otherwise pre-empted, is amended by this provision.  This Policy is amended to meet the minimum requirements of those laws.

**CERTIFICATE OF INSURANCE**

We will send to you a certificate for distribution to each Insured and you agree to distribute a certificate to each Insured. The certificate will outline the insurance coverage and to whom benefits are payable.

**POLICY TERMINATION**

You may cancel this Policy at any time by providing us with written notice.  This Policy will be cancelled on the date we receive your letter or, if later, the date requested in your letter.

We may cancel this Policy if:

    (1)  the premium is not paid at the end of the grace period; or

    (2)  the number of Insureds is less than the Minimum Participation Number on the Schedule of Benefits; or

    (3)  the percentage of eligible persons insured is less than the Minimum Participation Percentage on the Schedule of Benefits.

If we cancel because of (1) above, the Policy will be cancelled at the end of the grace period.  If we cancel because of (2) or (3) above, we will give you sixty (60) days written notice prior to the date of cancellation.

You will still owe us any premium that is not paid up to the date the Policy is cancelled.  We will return, pro-rata, any part of the premium paid beyond the date the Policy is cancelled.

**LIMITATIONS**

**Applicable to Class 1 & 4:**

CLASS 1 & 4:  If the Insured dies by suicide, while sane or insane, within two (2) years of his/her effective date for Supplemental Life insurance coverage, our payment will be limited to a refund of all life insurance premiums paid prior to the date of death.

CLASS 1 & 4:  If an insured Dependent dies by suicide, while sane or insane, within two (2) years of his/her effective date for Dependent Life insurance coverage, our payment will be limited to a refund of all life insurance premiums paid prior to the date of death.

**INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION**

**GENERAL GROUP:**  The general group will be your employees and employees of any subsidiaries, divisions or affiliates named on the Schedule of Benefits.

**ELIGIBILITY REQUIREMENTS:**  A person is eligible for insurance under this Policy if he/she is a member of an Eligible Class, as shown on the Schedule of Benefits page.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:**  If you pay the entire premium, the insurance up to the guaranteed issue Amount of Insurance, if applicable, for an Eligible Person will go into effect on the date stated on the Schedule of Benefits.

Amounts of Insurance over the guaranteed issue Amount of Insurance shown on the Schedule of Benefits must be applied for in writing and are subject to proof of good health.

Insurance will be effective on the first of the month coinciding with or next following the date we approve such proof of good health.

If an Eligible Person pays a part of the premium, he/she must apply in writing for the insurance to go into effect.  He/she will become insured on the later of:

    (1)  the Individual Effective Date stated on the Schedule of Benefits, if he/she applies on or before that date; or

    (2)  the first of the month coinciding with or next following the date he/she applies, if he/she applies within thirty-one (31) days from the date he/she first met the eligibility requirements; or

    (3)  the first of the month coinciding with or next following the date we approve any required proof of good health. We require proof of good health if a person applies:

        (a)  after thirty-one (31) days from the date he/she first becomes eligible; or
        (b)  after he/she terminated this insurance but he/she remained in a class eligible for this insurance; or
        (c)  for an Amount of Insurance greater than the guaranteed issue Amount of Insurance shown on the Schedule of Benefits, if applicable; or
        (d)  for an Amount of Insurance greater than he/she was insured for under the prior group life insurance plan carrier, if applicable; or
        (e)  after being eligible for coverage under a prior group life insurance plan for more than thirty-one (31) days but did not elect to be covered under that prior plan; or

    (4)  the date premium is remitted.

Proof of good health forms are available from us upon request.  It is your responsibility to provide proof of good health forms to your employees when required.

If an Eligible Person has been previously declined for coverage by us, had an application withdrawn or marked incomplete for any reason, or voluntarily terminated his/her insurance coverage with us, all future requests for coverage are subject to submission and our approval of proof of good health.  However, proof of good health will not be required if an Eligible Person who voluntarily terminated his/her insurance coverage with us makes a future request due to a life event change or during any approved enrollment period.

Insurance applied for during a Reliance Standard approved enrollment that takes place beyond the Eligible Person's initial enrollment period or beyond the Eligible Person's initial eligibility period will become effective according to the specific rules for such enrollment.  (See Approved Enrollment Period on the Schedule of Benefits section, if applicable.)

Changes in an Insured's Amount of Insurance are effective as shown on the Schedule of Benefits.

If the Eligible Person is not Actively at Work on the day his/her insurance is to go into effect, the insurance will go into effect on the day he/she returns to Active Work in an Eligible Class for one full day.

**TERMINATION OF INDIVIDUAL INSURANCE:**  The insurance of an Insured will terminate on the first of the following to occur:

    (1)  the date this Policy terminates; or

    (2)  the date the Insured ceases to be in a class eligible for this insurance; or

    (3)  the end of the period for which premium has been paid for the Insured; or

    (4)  the date the Insured enters military service on active duty (not including Reserve or National Guard).

**CONTINUATION OF INDIVIDUAL INSURANCE:**  The insurance of an Insured may be continued, by payment of premium, beyond the date the Insured ceases to be eligible for this insurance, but not longer than:

    (1)  twelve (12) months, if due to illness or injury; or
    (2)  one (1) month, if due to temporary lay-off or approved leave of absence.

**INDIVIDUAL REINSTATEMENT:**  Insurance may be reinstated if a former Insured is:

    (1)  on an approved leave of absence; or

    (2)  on temporary lay-off.

The former Insured must return to Active Work with you within the period of time shown on the Schedule of Benefits. He/she must also be a member of a class eligible for this insurance.

The insurance will go into effect on the day he/she returns to Active Work for one full day.  If a former Insured returns after having resigned or having been discharged, he/she will be required to fulfill the Eligibility Requirements of this Policy again.

If an Eligible Person requests insurance after previously terminating insurance at his/her request or for failure to pay premium when due, proof of good health must be approved by us before his/her insurance coverage may be reinstated.

## CONVERSION PRIVILEGE

An Insured can use this privilege when his/her insurance is no longer in force.  It has several parts.  They are:

A.   If the insurance ceases due to termination of employment or membership in any of this Policy's classes, an individual Life Insurance Policy may be issued.  The Insured is entitled to a policy without disability or supplemental benefits.  A written application for the policy must be made by the Insured within thirty-one (31) days after he/she terminates.  The first premium must also be paid within that time.  The issuance of the policy is subject to the following conditions:

    (1)   The policy will, at the option of the Insured, be on any one of our forms, except for term life insurance.  It will be the standard type issued by us for the age and amount applied for;

    (2)   The policy issued will be for an amount not over what the Insured had before he/she terminated;

    (3)   The premium due for the policy will be at our usual rate.  This rate will be based on the amount of insurance, class of risk and the Insured's age at date of policy issue; and

    (4)   Proof of good health is not required.

B.   If the insurance ceases due to the termination or amendment of this Policy, an individual Life Insurance Policy can be issued.  An Insured must have been insured for at least five (5) years under this Policy and/or the prior carrier.  The same rules as in A above will be used, except that the face amount will be the lesser of:

    (1)   The amount of the Insured's Group Life benefit under this Policy.  This amount will be less any amount he/she is entitled to under any group life policy issued by us or another insurance company; or

    (2)   $5,000.

C.   If the insurance reduces, as may be provided in this Policy, an individual Life Insurance Policy can be issued.  The same rules as in A above will be used, except that the face amount will not be greater than the amount which ceased due to the reduction.

D.   If an Insured dies during the time provided in A above in which he/she is entitled to apply for an individual policy, we will pay the benefit under the Group Policy that he/she was entitled to convert.  This will be done whether or not the Insured applied for the individual policy or the first premium was paid.

E.   Any policy issued with respect to A, B or C above will be put in force at the end of the thirty-one (31) day period in which application must be made.

F.   If an Insured is entitled to have an individual policy issued to him/her without proof of health, then he/she must be *given notice of this right at least fifteen (15) days before the end of the period specified above.  Such notice must be:* (1) in writing; and (2) presented or mailed to the Insured by you.  If not, the Insured will have an additional period in order to do so.  This additional period will end fifteen (15) days after the Insured is given notice.  This period will not extend beyond sixty (60) days after the expiration date of the period provided above.  This insurance will not be continued beyond the period provided in A above.

## PREMIUMS

**PREMIUM PAYMENT:**  All premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The premium due dates are stated on the Policy face page.

**PREMIUM RATE:**  The premium due will be the rate per $1,000 of benefit multiplied by the entire amount of benefit volume then in force.  We will furnish to you the premium rate on the Policy effective date and when it is changed.   We have the right to change the premium rate:

    (1)  on any premium due date after the Policy is in force for 36 months;

    (2)  when the extent of coverage is changed by amendment; or

    (3)  on any premium due date on or after the Policy is in force for 12 months if the entire amount of the benefit volume changes by 15% or more from the entire amount of benefit volume on the Policy effective date.

We will not change the premium rate due to (1) or (3) above more than once in any twelve (12) month period.  We will tell you in writing at least sixty (60) days before the date of a change due to (1) or (3) above.

**GRACE PERIOD:**  You may pay the premium up to 60 days after the date it is due.  The Policy stays in force during this time.  If the premium is not paid during the grace period, the Policy will be cancelled at the end of the grace period.   You will still owe us the premium up to the date the Policy is cancelled.

## BENEFICIARY AND FACILITY OF PAYMENT

**BENEFICIARY:**  The beneficiary will be as named in writing by the Insured to receive benefits at the Insured's death. This beneficiary designation must be on file with us or the Plan Administrator and will be effective on the date the Insured signs it.  Any payment made by us before receiving the designation shall fully discharge us to the extent of that payment.

If the Insured names more than one beneficiary to share the benefit, he/she must state the percentage of the benefit that is to be paid to each beneficiary.  Otherwise, they will share the benefit equally.

The beneficiary's consent is not needed if the Insured wishes to change the designation.  His/her consent is also not needed to make any changes in this Policy.

If the beneficiary dies at the same time as the Insured, or within fifteen (15) days after his/her death but before we receive written proof of the Insured's death, payment will be made as if the Insured survived the beneficiary, unless noted otherwise.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, any benefits due shall be paid to the first of the following classes to survive the Insured:

    (1) the Insured's legal spouse;
    (2) the Insured's surviving child(ren) (including legally adopted child(ren)), in equal shares;
    (3) the Insured's surviving parents, in equal shares;
    (4) the Insured's surviving siblings, in equal shares; or, if none of the above,
    (5) the Insured's estate.

We will not be liable for any payment we have made in good faith.

**FACILITY OF PAYMENT:**  If a beneficiary, in our opinion, cannot give a valid release (and no guardian has been appointed), we may pay the benefit to the person who has custody or is the main support of the beneficiary.  Payment to a minor shall not exceed $1,000.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, we may pay up to $500 of the benefit to the person(s) who, in our opinion, have incurred expenses in connection with the Insured's last illness, death or burial.

The balance of the benefit, if any, will be held by us, until an individual or representative:

    (1)  is validly named; or

    (2)  is appointed to receive the proceeds; and

    (3)  can give valid release to us.

The benefit will be held with interest at a rate set by us.

We will not be liable for any payment we have made in good faith.

## SETTLEMENT OPTIONS

The Insured may elect a different way in which payment of the Amount of Insurance can be made.  He/she must provide a written request to us, for our approval, at our Administrative Office.  If the option covers less than the full amount due, we must be advised of what part is to be under an option.  Amounts under $2,000 or option payments of less than $20.00 each are not eligible.

If no instructions for a settlement option are in effect at the death of the Insured, the beneficiary may make the election, with our consent.

## OPTION A – FIXED TIME PAYMENT OPTION

Equal monthly payments will be made for any period chosen, up to thirty (30) years.  The amount of each payment depends on the amount applied, the period selected and the payment rates we are using when the first payment is due. The rate of any monthly payment will not be less than shown in the table below.  We reserve the right to change it.  This change will apply only to requests for settlement elected after this change.

### Option A Table
### Minimum Monthly Payment Rates for each $1,000 Applied

| Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $83.71 | 7 | $12.32 | 13 | $6.83 | 19 | $4.81 | 25 | $3.76 |
| 2 | 42.07 | 8 | 10.83 | 14 | 6.37 | 20 | 4.59 | 26 | 3.64 |
| 3 | 28.18 | 9 | 9.68 | 15 | 5.98 | 21 | 4.40 | 27 | 3.52 |
| 4 | 21.24 | 10 | 8.75 | 16 | 5.63 | 22 | 4.22 | 28 | 3.41 |
| 5 | 17.08 | 11 | 7.99 | 17 | 5.33 | 23 | 4.05 | 29 | 3.31 |
| 6 | 14.30 | 12 | 7.36 | 18 | 5.05 | 24 | 3.90 | 30 | 3.21 |

## OPTION B – FIXED AMOUNT PAYMENT OPTION

Each payment will be for an agreed fixed amount.  The amount of each payment may not be less than $10.00 for each $1,000 applied.  Interest will be credited each month on the unpaid balance and added to it.  This interest will be at a rate set by us, but not less than the equivalent of 1% per year.  Payments continue until the amount we hold runs out.  The last payment will be for the balance only.

## OPTION C – INTEREST PAYMENT OPTION

We will hold any amount applied under this section.  Interest on the unpaid balance will be paid each month at a rate set by us.  This rate will not be less than the equivalent of 1% per year.

If a beneficiary dies while receiving payments under one of these options and there is no contingent beneficiary, the balance will be paid in one sum to the proper representative of the beneficiary's estate, unless otherwise agreed to in the instructions for settlement.

Requests for settlement options other than the three (3) set out above may be made.  A mutual agreement must be reached between the individual entitled to elect and us.

## WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY

We will extend the Amount of Insurance during a period of Total Disability for one (1) year if:

    (1)  the Insured becomes totally disabled prior to age 60;
    (2)  the Total Disability begins while he/she is insured;
    (3)  the Total Disability begins while this Policy is in force;
    (4)  the Total Disability lasts for at least 6 months;
    (5)  the premium continues to be paid; and
    (6)  we receive proof of Total Disability within one (1) year from the date it began.

After proof of Total Disability is approved by us, neither you or the Insured is required to pay premiums. Also, any premiums paid from the start of the Total Disability will be returned.

We will ask the Insured to submit annual proof of continued Total Disability. The Amount of Insurance may then be extended for additional one (1) year periods. The Insured may be required to be examined by a Physician approved by us as part of the proof. We will not require the Insured to be examined more than once a year after the insurance has been extended two (2) full years.

The Amount of Insurance extended will be limited to the amount of basic group life coverage and any applicable supplemental group life coverage, with respect to Class 1 & 4 on the life of the Insured that was in force at the time that Total Disability began excluding any additional benefits. This amount will not increase. This amount will reduce or cease at any time it would reduce or cease if the Insured had not been totally disabled. If the Insured dies, we will be liable under this extension only if written proof of death is received by us.

The Amount of Insurance extended for an Insured will cease on the earliest of:

    (1)  the date he/she no longer meets the definition of Total Disability; or
    (2)  the date he/she refuses to be examined; or
    (3)  the date he/she fails to furnish the required proof of Total Disability; or
    (4)  the date he/she becomes age 70; or
    (5)  the date he/she retires.

The Insured may use the conversion privilege when this extension ceases. Please refer to the Conversion Privilege section for rules. An Insured is not entitled to conversion if he/she returns to work and is again eligible for the insurance under this Policy. If the Insured uses the conversion privilege, benefits will not be payable under the Waiver of Premium in Event of Total Disability provision unless the converted policy is surrendered to us.

If the Insured qualifies for benefits in accordance with the Waiver of Premium in Event of Total Disability provision because he/she has been diagnosed by a Physician as totally disabled due to the following Condition(s) or Procedure(s), as later defined;

    (1)  Life Threatening Cancer; or
    (2)  Heart Attack (Myocardial Infarction); or
    (3)  Kidney (Renal) Failure; or
    (4)  Receipt of Major Organ Transplant; or
    (5)  Stroke,

we will pay to the Insured an additional, one time, lump sum benefit in an amount equal to 10% of the death benefit under the basic life portion of this Policy up to a maximum of $100,000.

This lump sum benefit applies only to the first Condition or Procedure to occur among those hereinafter defined which qualifies the Insured for waiver of premium benefits. No further lump sum benefits will be payable under this provision during the same or any subsequent periods of Total Disability, or as a result of the occurrence of any other Condition or Procedure.

Definition(s):

"Condition(s) or Procedure(s)" mean only the following:

"Life Threatening Cancer" means a malignant neoplasm (including hematologic malignancy), as diagnosed by a Physician who is a board certified oncologist, and which is characterized by the uncontrolled growth and spread of malignant cells and the invasion of tissue, and which is not specifically excluded. The following types of cancer are not considered a Life Threatening Cancer: (1) early prostate cancer diagnosed as T2c or less according to the TNM scale; (2) colorectal cancer diagnosed as T2, N1, M0 or less according to the TNM scale; (3) breast cancer diagnosed as T3, N2, M0 or less according to the TNM scale; (4) First Carcinoma in Situ; (5) pre-malignant lesions (such as intraepithelial neoplasia); (6) brain glioma; (7) benign tumors or polyps; (8) tumors in the presence of the Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS); or (9) any skin cancer other than invasive malignant melanoma in the dermis or deeper, or skin malignancies that have become Life Threatening Cancers.

"First Carcinoma in Situ" means the first diagnosis of cancer in which the tumor cells still lie within the tissue of the site of origin without having invaded neighboring tissue. First Carcinoma in Situ must be diagnosed pursuant to a pathological diagnosis or clinical diagnosis.

"Heart Attack (Myocardial Infarction)" means the death of a segment of the heart muscle as a result of a blockage of one or more coronary arteries. In order to be covered under this provision, the diagnosis by a Physician of Heart Attack (Myocardial Infarction) must be based on:

(1) new electrocardiographic changes consistent with and supporting a diagnosis of Heart Attack (Myocardial Infarction); and
(2) a concurrent diagnostic elevation of cardiac enzymes; and
(3) therapeutic and functional classifications, 3 or above and C or above respectively, according to the New York Heart Association.

"Kidney (Renal) Failure" means the chronic irreversible failure of both of the kidneys (end stage renal disease), which requires treatment with dialysis on a regular basis. Kidney Failure is covered under this provision only if the diagnosis has been made by a Physician who is a board certified nephrologist.

"Physician" means a duly licensed practitioner who is recognized by the law of the jurisdiction in which treatment is received as qualified to treat the type of condition for which claim is made. The Physician may not be the Insured or a member of his/her immediate family and must be approved by us.

"Receipt of Major Organ Transplant" means that the Insured has been the recipient of a major organ transplant and that there is clinical evidence of an Insured's major organ(s) failure which, according to the diagnosis of a Physician, required the failing organ(s) or tissue of the Insured to be replaced with organ(s) or tissue from a suitable donor under generally accepted medical procedures. Organs or tissues covered by this definition are limited to liver, kidney, lung, entire heart, pancreas, or pancreas-kidney.

"Stroke" means a cerebrovascular accident or infarction (death) of brain tissue, as diagnosed by a Physician, which is caused by hemorrhage, embolism, or thrombosis producing measurable, neurological deficit persisting for at least one hundred eighty (180) days following the occurrence of the Stroke. Stroke does not include Transient Ischemic Attack (TIA) or other cerebral vascular events.

Receipt of this additional lump sum payment may be taxable. The Insured should seek assistance from his/her own personal tax advisor.

## CLAIMS PROVISIONS

**NOTICE OF CLAIM:**  Written notice must be given to us within thirty-one (31) days after the Loss occurs, or as soon as reasonably possible.  The notice should be sent to us at our Administrative Offices or to our authorized agent.  The notice should include the Insured's name, the Policy Number and your name.

**CLAIM FORMS:**  When we receive written notice of a claim, we will send claim forms to the claimant within fifteen (15) days.  If we do not, the claimant will satisfy the requirements of written proof of loss by sending us written proof as shown below.  The proof must describe the occurrence, extent and nature of the loss.

**PROOF OF LOSS:**  For any covered Loss, written proof must be sent to us within ninety (90) days.  If it is not reasonably possible to give proof within ninety (90) days, the claim is not affected if the proof is sent as soon as reasonably possible. In any event, proof must be given within 1 year, unless the claimant is legally incapable of doing so.

**PAYMENT OF CLAIMS:**  Payment will be made as soon as proper proof is received.  All benefits will be paid to the Insured if living.  Any benefits unpaid at the time of death, or due to death, will be paid to the beneficiary.

*Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan.  The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.  Decisions by the claims review fiduciary shall be complete, final and binding on all parties.*

**PHYSICAL EXAMINATION:**  At our own expense, we will have the right to have an Insured examined as reasonably necessary when a claim is pending.  We can have an autopsy made unless prohibited by law.

**LEGAL ACTION:**  No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this Policy.  No action may be brought after three (3) years (Kansas, five (5) years; South Carolina and Michigan, six (6) years) from the time written proof of loss is required to be submitted.

## DEPENDENT LIFE INSURANCE

### Applicable to Class 1 & 4:

Nothing in this section will change or affect any of the terms of this Policy other than as specifically set out in this section. All the Policy provisions not in conflict with these provisions shall apply to this section.

When an insured Dependent dies, we will pay the applicable benefit shown on the Schedule of Benefits to the Insured. If the Insured is deceased, then the benefit will be paid to the Insured's beneficiary. Only dependents who meet the definition of Dependents can be insured for this benefit.

A person may not have coverage both as an Insured and as an insured Dependent. Only one eligible spouse may cover the eligible children as Insured Dependents. The spouse may be covered as a dependent if not covered as an Insured.

## EFFECTIVE DATE OF DEPENDENT INSURANCE

If you pay the entire premium, the insurance up to the guaranteed issue Amount of Insurance for Dependents will become effective on the later of:

(1) the first of the month coinciding with or next following the date the Insured becomes eligible for Dependent Life Insurance; or

(2) the first of the month coinciding with or next following the date the dependent meets the definition of Dependent.

Amounts of Insurance over the guaranteed issue Amount of Insurance shown on the Schedule of Benefits for the Dependent spouse must be applied for in writing and are subject to proof of good health. Insurance will be effective the first of the month coinciding with or next following the date we approve such proof of good health.

If you require an Insured to pay a portion of the dependent premium, he/she may insure his/her Dependents by making written application. In this case, the insurance for Dependents will take effect on the later of:

(1) the first of the month coinciding with or next following the date the Insured becomes eligible for Dependent Life Insurance; or

(2) the first of the month coinciding with or next following the date the dependent meets the definition of Dependent, if application is made on or before that date; or

(3) the first of the month coinciding with or next following the date of application, if application is made within thirty-one (31) days from the date the Dependent first becomes eligible for this insurance; or

(4) the first of the month coinciding with or next following the date we approve any required proof of good health. Proof of good health forms are available from us upon request. It is your responsibility to provide proof of good health forms to your employees when required. We require proof of good health if an Insured makes application for dependent insurance on his/her spouse:

   (a) after thirty-one (31) days from the date the Dependent first becomes eligible for this insurance; or

   (b) after a prior termination of insurance as long as the Insured remained in a class eligible for dependent insurance; or

   (c) for an Amount of Insurance greater than the guaranteed issue Amount of Insurance shown on the Schedule of Benefits, if applicable; or

(5) the date premium is remitted.

If the Dependent spouse has been previously declined for coverage by us, had an application withdrawn or marked incomplete for any reason or voluntarily terminated his/her insurance coverage with us, all future requests for coverage, are subject to submission and our approval of proof of good health.  However, proof of good health will not be required if the Dependent who voluntarily terminated his/her insurance coverage with us makes a future request for insurance coverage due to a life event change or during any approved enrollment period.

After this insurance is in force for one Dependent child, application is not required for added Dependent children.

For Dependents who are confined in a hospital or at home on the date on which they would otherwise become insured, insurance will be effective as of the date the confinement ends.

**TERMINATION OF DEPENDENT LIFE INSURANCE**

The insurance for an insured Dependent will terminate on the first of the following dates:

    (1)  the date this Section terminates; or

    (2)  the date the dependent is no longer a Dependent as defined; or

    (3)  the end of the period for which premium has been paid by you or the Insured; or

    (4)  the date the Insured's insurance terminates; or

    (5)  the date the Insured retires from employment with you.

**CONVERSION OF DEPENDENT LIFE INSURANCE**

If the insurance of an insured Dependent terminates because:

    (1)  the Insured terminates employment or membership in the classes eligible for this insurance; or

    (2)  the Insured dies; or

    (3)  the Dependent ceases to be eligible for this insurance;

then the Insured may convert the Dependent's insurance to an individual policy.  The conversion is subject to the following rules:

    (1)  a written application for the conversion policy must be received by us within thirty-one (31) days after the Dependent's insurance terminates.  The first premium must be sent in with the application; and

    (2)  the premium due for the policy will be at our usual rates.  This rate will be based on the Amount of Insurance, class of risk and the age of the Dependent on the date the policy is issued; and

    (3)  the policy may be any life plan we currently issue, except term insurance; and

    (4)  proof of good health is not required; and

    (5)  the policy issued will be for an amount not over what the Dependent had before termination under this Policy; and

    (6)  the policy issued will not have disability or supplemental benefits.

If the Dependent's insurance ceases due to termination or amendment of this Policy, an individual policy can be issued. The Dependent must have been insured for at least five (5) years under this Policy and/or the prior carrier.  The same rules as shown in the previous paragraph will be used, except that the face amount will be the lesser of:

(1)  the amount of Dependent life insurance under this Policy.  This amount will be less any amount of group life insurance the Dependent receives or becomes eligible for within thirty-one (31) days after this Policy terminates; or

(2)  $5,000.

If an insured Dependent should die within thirty-one (31) days of the date his/her insurance ceased, we will pay the benefit he/she had under this Policy.  This will be done whether or not the Insured applied for the individual policy on behalf of the insured Dependent.

Any individual policy issued with respect to this section will be effective at the end of the thirty-one (31) day period in which application must be made.

If an insured Dependent is entitled to have an individual policy issued to him/her without proof of health, then the Insured must be given notice of this right at least fifteen (15) days before the end of the period specified above.  Such notice must be:  (1) in writing; and (2) presented or mailed to the Insured by you.  If not, the Insured will have an additional period in order to do so.  This additional period will end fifteen (15) days after the Insured is given notice.  This period will not extend beyond sixty (60) days after the expiration date of the period provided above.  This insurance will not be continued beyond the period provided in (1) above.

**EXTENSION OF COVERAGE UNDER THE FAMILY AND MEDICAL LEAVE ACT AND UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT (USERRA)**

**Family and Medical Leave of Absence:**

We will continue the Insured's coverage and that of any Insured Dependent, if applicable, in accordance with your policies regarding leave under the Family and Medical Leave Act of 1993, as amended, or any similar state law, as amended, if:

    (1) the premium for such Insured and his/her Insured Dependents, if applicable, continues to be paid during the leave; and

    (2) you have approved the Insured's leave in writing and provide a copy of such approval within thirty-one (31) days of our request.

As long as the above requirements are satisfied, we will continue coverage until the later of:

    (1) the end of the leave period required by the Family and Medical Leave Act of 1993, as amended; or

    (2) the end of the leave period required by any similar state law, as amended.

**Military Services Leave of Absence:**

We will continue the Insured's coverage and that of any Insured Dependents, if applicable, in accordance with your policies regarding Military Services Leave of Absence under USERRA if the premium for such Insured and his or her Insured Dependents, if applicable, continues to be paid during the leave.

As long as the above requirement is satisfied, we will continue coverage until the end of the period required by USERRA.

This Policy, while coverage is being continued under this Military Services Leave of Absence extension, does not cover any loss which occurs while on active duty in the military if such loss is caused by or arises out of such military service, including but not limited to war or any act of war, whether declared or undeclared.

While the Insured is on a Family and Medical Leave of Absence for any reason other than his or her own illness, injury or disability or Military Services Leave of Absence he or she will be considered Actively at Work.  Any changes such as revisions to coverage due to age, class or salary changes, as applicable, will apply during the leave except that increases in the amount of insurance, whether automatic or subject to election, will not be effective for an Insured who is not considered Actively at Work until the Insured has returned to Active Work for one (1) full day.

A leave of absence taken in accordance with the Family and Medical Leave Act of 1993 or USERRA will run concurrently with any other applicable continuation of insurance provision in this Policy.

The Insured's coverage and that of any Insured Dependents, if applicable, will cease under this extension on the earliest of:

    (1) the date this Policy terminates; or

    (2) the end of the period for which premium has been paid for the Insured; or

    (3) the date such leave should end in accordance with your policies regarding Family and Medical Leave of Absence and Military Services Leave of Absence in compliance with the Family and Medical Leave Act of 1993, as amended and USERRA.

Should you choose not to continue the Insured's coverage during a Family and Medical Leave of Absence and/or Military Services Leave of Absence, the Insured's coverage as well as any dependent coverage, if applicable, will be reinstated.

## PORTABILITY

### Applicable to Class 1 & 4:

An Insured may continue Supplemental Insurance coverage under this Policy and that of his/her insured Dependents, if any, if coverage would otherwise terminate because he/she ceases to be an Eligible Person, for reasons other than the termination of this Policy, the Insured's retirement, or the insured Dependent having reached the maximum age for benefits, provided he/she:

    (1) notifies us in writing within thirty-one (31) days from the date he/she ceases to be eligible; and
    (2) remits the necessary premiums when due; and
    (3) is not approved for extension of coverage under the Waiver of Premium in Event of Total Disability provision, if applicable; and
    (4) has not been terminated under the Waiver of Premium in Event of Total Disability provision, if applicable, and
    (5) has been covered for twelve (12) months under this Policy and/or the prior group life insurance policy.

Such coverage may be continued for a period of two (2) years beginning on the date he/she is no longer an Eligible Person.

The amount of Supplemental Insurance coverage available under the Portability provision will be the current amount of coverage the Insured and that of his/her insured Dependents, if any, is insured for under this Policy on the last day he/she was Actively at Work.  However, the amount of coverage will never be more than:

    (1) the highest amount of life insurance available to Eligible Persons; or
    (2) a total of $500,000 from all RSL group life and accidental death and dismemberment insurance combined,
whichever is less.

The premium charged to continue Supplemental Insurance coverage will be based on the prevailing rate charged to Insureds who choose to continue coverage under the Portability provision.  Such premium will be billed directly to the Insured on a quarterly, semi-annual or annual basis.

If an Insured's Supplemental Insurance coverage under this Policy includes Accidental Death and Dismemberment, then such benefits may be continued under this Policy.

Supplemental Insurance coverage continued under this provision for an Insured and/or his/her insured Dependents, if any, will terminate on the first of the following to occur:

    (1) the date this Policy terminates; or
    (2) the end of the period for which premium has been paid; or
    (3) the date the Insured is covered under another group term life insurance policy; or
    (4) at the end of the two (2) year period; or
    (5) at any time Supplemental Insurance coverage would normally terminate according to the terms of this Policy had the Insured continued to be an Eligible Person.

In addition, Supplemental Insurance coverage will reduce at any time it would normally reduce according to the terms of this Policy had the Insured and that of the insured Dependents, if any, continued to be an Eligible Person.

If Supplemental Insurance coverage terminates due to (1) or (4) above, it may be converted to an individual life insurance policy.  The conversion will be subject to the terms and conditions set forth under the Conversion Privilege.

**GROUP TERM LIFE INSURANCE LIVING BENEFIT RIDER**

**THIS RIDER ADDS AN ACCELERATED BENEFIT PROVISION.  RECEIPT OF THIS ACCELERATED BENEFIT WILL REDUCE THE DEATH BENEFIT AND MAY BE TAXABLE.  INSUREDS SHOULD SEEK ASSISTANCE FROM THEIR PERSONAL TAX ADVISOR.**

Attached to Group Policy Number: GL 157976
Issued to Group Policyholder: Cleaver-Brooks, Inc.

This Rider is attached to and made a part of the Policy indicated above. The Policy is hereby amended, in consideration of the application for this coverage, by the addition of the following benefit. In this Rider, Reliance Standard Life Insurance Company will be referred to as "we", "us", "our".

**DEFINITIONS:**  This section gives the meaning of terms used in this Rider. The Definitions of the Policy and Certificate also apply unless they conflict with Definitions given here.

"Certified" or "Certification" refers to a written statement, made by a Physician on a form provided by us, as to the Insured's Terminal Illness.

"Certificate" means the document, issued to each Insured, which explains the terms of his coverage under the Group Life Insurance Policy.

"Death Benefit" means the insurance amount payable under the Policy at the death of the Insured, subject to all Policy provisions dealing with changes in the amount of insurance and reductions or termination for age or retirement.  It does not include any amount that is only payable in the event of Accidental Death.

"Insured" means the primary Insured and his/her insured Dependents, if any.

"Physician" means a duly licensed practitioner, acting within the scope of his license, who is recognized by the law of the state in which diagnosis is received. The Physician may not be the Insured or a member of his immediate family.

"Policy" means the Group Life Insurance Policy issued to the Group Policyholder under which the Insured is covered.

"Terminally Ill" or "Terminal Illness" refers to an Insured's illness or physical condition that is Certified by a Physician to reasonably be expected to result in death in less than 12 months.

"Written Request" means a request made, in writing, by the Insured to us.

All pronouns include either gender unless the context indicates otherwise.

**DESCRIPTION OF COVERAGE:**  *This benefit is payable to the Insured if, after having been covered under this Rider for at least 60 days, an Insured is Certified as Terminally Ill.  In order for this benefit to be paid:*

    (1)  the Insured must make a Written Request; and

    (2)  we must receive from any assignee or irrevocable beneficiary their signed acknowledgment and agreement to payment of this benefit.

We may, at our option, confirm the terminal diagnosis with a second medical exam performed at our own expense.

**AMOUNT OF THE LIVING BENEFIT:**  The Living Benefit will be an amount equal to 75% of the Death Benefit applicable to the Insured under the Policy on the date of the Certification of Terminal Illness, subject to a maximum benefit of $500,000.  This benefit may be paid as a single lump sum or in installment payments mutually agreed to by us and the Insured.  The Living Benefit is payable one time only for any Insured under this Rider.

**EFFECT OF BENEFIT:**  If an Insured becomes eligible for, and elects to receive this benefit, it will have the following effects:

(1)  The Death Benefit payable for such Insured will be reduced by the amount equal to the Living Benefit paid to such Insured.  The amount of the Living Benefit plus the corresponding Death Benefit will not exceed the amount that would have been paid as the Death Benefit in the absence of this Rider.

(2)  Any amount of insurance that would otherwise be continued under a Waiver of Premium provision will be reduced proportionately, as will the maximum Face Amount available under the Conversion Privilege.

**MISSTATEMENT OF AGE OR SEX:**  The Living Benefit will be adjusted to reflect the amount of benefit that would have been purchased by the actual premium paid at the correct age and sex.

**TERMINATION OF AN INDIVIDUAL'S COVERAGE UNDER THIS RIDER:**  The coverage of any Insured under this Rider will terminate on the first of the following:

(1)  the date his coverage under the Policy terminates;

(2)  the date of payment of the Living Benefit for his Terminal Illness; or

(3)  the date he attains age 75.

**ADDITIONAL PROVISIONS:**  This Rider takes effect on the Effective Date shown.  It will terminate on the date the Group Policy terminates.  It is subject to all the terms of the Group Policy not inconsistent herein.

In witness whereof, we have caused this Rider to be signed by our Secretary.

Secretary