**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| **DAVID HOLMES,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO:** |
| | : | |
| **v.** | : | _____ |
| | : | |
| **UNUM LIFE INSURANCE COMPANY** | : | |
| **OF AMERICA** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| _____ | : | |

## COMPLAINT

COMES NOW, DAVID HOLMES, the Plaintiff in the above-captioned action, and files this Complaint against the Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA ("Unum"), showing the Court as follows:

## INTRODUCTION

The Plaintiff brings this civil action seeking award of disability income benefits and other available remedies under group insurance policy no. 36133001 (the "Policy") that Unum issued to The Georgia Bankers Association Insurance Trust, Inc. ("GBA").

At this time, the Plaintiff lacks sufficient knowledge or information to determine whether this Policy relates to an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1) and whether the Plaintiff's claims under the Policy are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.

Therefore, in this Complaint, the Plaintiff pleads alternative claims for civil remedies allowed under ERISA, 29 U.S.C. § 1132(a) and breach of contract under state law.

## FACTS COMMON TO ALL CLAIMS

1.

The Policy at issue provides for payment of long-term disability income benefits to covered individuals who become "disabled" as defined in the Policy and satisfy certain other requirements set forth in the Policy.

2.

The Plaintiff was enrolled in coverage under the Policy at the time his benefit claim accrued.

3.

Unum drafted the written terms and conditions of the Policy.

4.

Benefits under the Policy are paid from Unum's assets.

5.

Unum also made the decisions regarding the Plaintiff's eligibility for benefits under the Policy.

6.

The Policy provides:

You are disabled when Unum determines that:
- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.…

7.

At the time his claims under the Policy initially accrued, the Plaintiff was employed by Holmes Shaw Agency, Inc. as a senior vice president.

8.

Holmes Shaw Agency, Inc. operates an insurance agency focused on corporate and business clientele.

9.

The Plaintiff was actively employed by Holmes Shaw Agency, Inc. engaged in the insurance sales business at the time his claims under the Policy accrued.

10.

The Plaintiff's regular occupation required, among other duties, extensive business-related travel, the ability to stand and walk frequently (1/3 to 2/3 of an 8-hour work day), the ability to lift and carry up to 20 lbs. occasionally (up to 1/3 of an 8-hour work day), the ability to frequently lift and carry up to 10 lbs., the ability to frequently sit and perform computer work, and sustained visual activities.

11.

The Plaintiff's regular occupation also required a high degree of mental focus and concentration and a high level of functioning across multiple cognitive domains, including working memory.

12.

On June 30, 2019, the Plaintiff suffered an ischemic stroke.

13.

The Plaintiff was hospitalized for more than two weeks after his stroke.

14.

The Plaintiff then underwent approximately six months of speech therapy, physical therapy, and occupational therapy to assist him in recovering basic functions such as the ability to safely eat and swallow on his own, speak clearly, and walk.

15.

The Plaintiff suffered long-term symptoms of his stroke that include, but are not limited to, left-sided ataxia, loss of fine motor coordination, impaired balance and disequilibrium, paresthesia, neuropathic pain, intermittent dizziness and lightheadedness, diplopia and blurry vision, excessive fatigue, and cognitive deficits that include decreased working memory, attention, and concentration.

16.

Since on or prior to June 30, 2019, the Plaintiff has been unable to perform the material and substantial duties of his regular occupation due to the symptoms and impairments caused by his stroke, and he has sustained a loss of more than 20% of his indexed monthly earnings due to those symptoms and impairments.

17.

Since on or prior to June 30, 2019, the Plaintiff has been continuously "disabled" as that term is defined by the Policy.

18.

Since on or prior to June 30, 2019, the Plaintiff has been under the regular and continuous care of physicians for his stroke-related illnesses.

19.

The Plaintiff made a timely claim for benefits under the Policy.

20.

Unum initially approved the Plaintiff's disability claim.  Unum began paying his monthly disability benefits under the Policy after he satisfied the Policy's 180-day contractual benefit elimination period.

21.

On October 22, 2019, one of Unum's in-house directors, Jeffrey Johnson, entered a notation in Unum's internal claim notes stating that based on the Plaintiff's advanced age, history of stroke, and ongoing symptoms: "It is unlikely EE will return to prior level of function."

22.

Unum considered and was influenced by its own financial interests in connection with its administration of the Plaintiff's benefit claim.

23.

According to Unum's internal claim notes, on February 15, 2021, Unum performed an internal "feasibility check" that looked at the total amount of the remaining benefits Unum was liable to pay the Plaintiff in the future under this Policy.

24.

On February 15, 2021, one of Unum's in-house directors, Michael Leding, wrote that "based on the fact that there have been no significant changes in the EE's conditions and R&Ls, it appears our liability will not change either medically or financially, or contractually moving forward. It appears appropriate to proceed with a Proposed Offer contingent upon FSU TPC."

25.

On February 16, 2021, Unum sent Mr. Holmes a letter offering him a discounted lump sum to buy out the remainder of his future benefits under the Policy.

26.

On March 18, 2021, Mr. Holmes declined Unum's offer, instead electing to continue to receive his monthly benefits under the Policy.

27.

On April 26, 2022, Unum terminated the Plaintiff's benefits under the Policy.

28.

The Plaintiff's medical records, including records of neurological examinations before and after April 26, 2022, demonstrate that the Plaintiff

experienced no significant improvement in his stroke-related symptoms and impairments that would explain or support Unum's decision to terminate his benefits.

29.

On May 3, 2023, Unum conducted a conference call discussing its earnings for the first quarter of 2023 that was accessible to the public via a link on Unum's website. During that call, Unum's chief financial officer discussed recent improvements in its long term disability (LTD) "recoveries," the fact that Unum anticipated continued improvements in its return on investment (ROI) based in part on that fact that its experienced "benefits specialists, the clinicians, the vocational specialists, our analytics teams are working together in concert", and the role of the "benefits team" who "know how to get people back to work." The reference to "getting people back to work" in this context is synonymous with terminating benefits.

30.

The audio recording of Unum's May 3, 2023 Q1 earnings call is available via link on Unum's website. [1] A written transcript of that call is also available on

---

[1] https://www.unumgroup.com/news-events/news/news-details/2023/Unum-Group-to-release-first-quarter-2023-results-and-host-conference-call/default.aspx

several well-known financial websites.[2]   An accurate transcript of that call is attached as Exhibit 1.

31.

The Plaintiff, through his attorney, appealed Unum's decision in accordance with the procedures set forth in the Policy.

32.

The Plaintiff sent Unum written notice of his appeal on April 4, 2023, which was delivered to Unum on April 6, 2023.   Attached as Exhibit 2 is an accurate copy of the United States Postal Service delivery notification (USPS Tracking) indicating delivery to Unum's post office box on Thursday, April 6, 2023, at 8:40 a.m.

33.

The Plaintiff submitted additional information to Unum for its consideration with his notice of appeal.

34.

In addition to updated medical records, the Plaintiff sent Unum the report of standardized neurocognitive testing administered and interpreted by a neuropsychologist, Damond Logsdon, Ph.D. on August 15, 2022.

_____

[2] https://seekingalpha.com/article/4599422-unum-group-unm-q1-2023-earnings-call-transcript

35.

The report of that neurocognitive testing showed the Plaintiff's scores on tests of working memory fell into the bottom 18th percentile of men his age.  Dr. Logsdon found these results to be "consistent with the residual cognitive effects of a brain stem stroke."

36.

Based on the cognitive test scores, Dr. Logsdon determined that the Plaintiff is unable to perform the duties of his previous position of employment in the insurance industry.

37.

The Plaintiff also sent Unum reports of ocular motor testing and vestibular testing that revealed abnormal eye movements known as nystagmus, impaired balance, impaired coordination, and impaired proprioception.

38.

The Plaintiff's new evidence sent to Unum on appeal also included the report of a functional capacity evaluation that concluded the Plaintiff is unable to meet the physical demands of his regular occupation.

39.

The Plaintiff's treating neurologist diagnosed the Plaintiff as suffering vascular major cognitive disorder, vestibular migraine, and "damage to left-sided nucleus in the brainstem" among other stroke-related conditions.

40.

The Plaintiff's treating neurologist opined in her medical records that the Plaintiff is unable to perform his insurance sales occupation due to his stroke-related conditions.

41.

Unum's Benefits Claim Manual provides that:

Significant weight should be given to the opinion of an AP/HCP [attending physician/health care provider] who is properly licensed, and the claimant's medical condition falls within the AP's customary area of practice …A medical conclusion founded on specific facts or observations is more persuasive than a medical conclusion without such a foundation.

42.

The opinions from the Plaintiff's treating neurologist were founded on his personal observations, neurological examination findings, and interpretation of objective test results.

43.

The Plaintiff's new evidence on appeal also included the report of a vocational specialist, Dian Haller, M.A., CRC, who concluded that the Plaintiff was unable to meet the physical or cognitive requirements of his regular occupation.

44.

Among other things, Ms. Haller concluded that the Plaintiff's occupation required that he be able to stand and walk frequently (1/3 to 2/3 of an 8-hour workday), which he is unable to do, and that his "Deficits in working memory, which tests at the 18th percentile, will significantly impair his ability to perform essential job duties."

45.

On appeal, Unum conducted a review of the Plaintiff's cognitive testing by its in-house neuropsychologist, Malcolm Spica, Ph.D.

46.

On April 20, 2023, Unum sent the Plaintiff a letter requesting that he provide Unum with the raw data pertaining to one of the cognitive tests, the Conners Continuous Performance Test, that Dr. Logsdon had previously administered as part of the neurocognitive testing.

47.

Unum received the requested raw test scores on April 25, 2023.

48.

On April 30, 2023, after considering those test scores, Dr. Spica prepared a report for Unum in which he expressed his conclusions that the cognitive testing was "valid and interpretively useful," the test results "are consistent with a clinically significant neurocognitive disorder," and "Dr. Logsdon's opinions appeared supported by the examination data cited with the neuropsychological examination report."    Among other things, Dr. Spica specifically cited to the Plaintiff's scores that fell in the bottom 4th percentile in the Conners Continuous Performance Test of attention.

49.

Dr. Spica also asserted, however, that "[w]hile I do not foreclose the possibility that the claimant's low performances noted above are due to his history of cerebral vascular accident, I am unable to rule out behavioral health causes, such as anxiety or depression."

50.

The Plaintiff has never been diagnosed with or treated for any behavioral health problems.

51.

Unum held Dr. Spica's report for 15 days on appeal and did not send it to the Plaintiff until May 15, 2023.

52.

Unum also obtained a report from a physician, Anthony Geraci, M.D., who performed a record review for Unum but did not examine the Plaintiff or attempt to speak with his treating physician.

53.

Dr. Geraci provided a report for Unum dated May 15, 2023, in which he cherry-picked the medical records, disagreed with the opinions of Plaintiff's treating physicians, and even offered his own vocational analysis to support Unum's decision.

54.

Dr. Geraci advertises his services on the internet as "an experienced witness" in legal claims through his website: https://neuromedconsulting.com/

55.

According to Unum, Dr. Geraci's review and report was arranged by its vendor, Dane Street.

56.

Dane Street arranges a high volume of medical peer reviews and derives a substantial amount of revenue from Unum for arranging its medical peer reviews and reports.

57.

Unum communicates with Dane Street via a private internet portal.

58.

Unum failed to include screenshots of its portal communications with Dane Street or documentation regarding compensation for the peer reviews in the claim records it provided to the Plaintiff during the appeal process.  Upon information and belief, this is Unum's regular practice.

59.

In a May 15, 2023 letter, Unum indicated that it intended to deny the Plaintiff's appeal, and advised the Plaintiff that if he wanted to respond to the new reports Unum provided on appeal, the Plaintiff's "response must be received by us no later than May 30, 2023."

60.

In a May 30, 2023 letter to Unum, the Plaintiff's attorney advised Unum that he considered Unum's delay in providing Dr. Spica's report, and Unum's

purported May 30, 2023 deadline for rebuttal responses, violations of its obligations under the ERISA regulations.

61.

The ERISA regulations require that an ERISA administrator must provide the claimant with any new evidence "considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination … *as soon as possible* and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required …to give the claimant a reasonable opportunity to respond prior to that date…" 29 C.F.R. §2560.503-1(h)(4) (italics added)

62.

In his May 30, 2023 letter to Unum, the Plaintiff's attorney also asserted that Unum had failed to provide him with copies of the "communications and exchanges with Dr. Geraci", and the Plaintiff was therefore unable to determine "what information Unum provided to Dr. Geraci prior to his report."

63.

With his May 30, 2023 letter to Unum, the Plaintiff's attorney attached a May 29, 2022 report from Dr. Logsdon that explained why he believed there was "no need" to perform any psychological testing as part of the August 15, 2022

neurocognitive testing, explaining that there was no evidence of depression or anxiety in the Plaintiff's medical records and the Plaintiff "did not exhibit signs of distress such as tearfulness, anger, psychomotor agitation or retardation" during his neurocognitive testing.

64.

With his May 30, 2023 letter, the Plaintiff also enclosed a copy of a published study linking brain stem strokes and cognitive dysfunction.

65.

In a letter dated June 1, 2023, Unum responded to the Plaintiff, stating, among other things, that Unum "consistently affords insured's 15 days" to respond to any new appeal reports.  The letter also stated that "[t]he communication between Unum Life and Dr. Geraci is considered administrative and … Unum Life is not required to provide your client with administrative documentation."

66.

On June 4, 2023, Unum's in-house neuropsychologist, Dr. Spica, prepared another report in which he reiterated his opinion that he could not "rule out" behavioral health causes, such as anxiety and depression, as the causes of the Plaintiff's cognitive problems in the absence of psychiatric testing.

67.

This time, Unum held Dr. Spica's report for 24 days and did not send it to the Plaintiff's attorney until June 28, 2023.

68.

Because Dr. Geraci was unavailable, Dane Street arranged another reviewing physician, Julian Thomas, M.D., to review the Plaintiff's rebuttal report. Dr. Thomas specializes in child neurology.  Dr. Thomas performed a selective review of records resulting in a report dated June 12, 2023, that, among other things, suggested "Pseudodementia, a constellation of depressive symptoms, can mimic structural/organic dementia from neurodegeneration or stroke."

69.

Unum held Dr. Thomas' report for 16 days and did not send it to the Plaintiff's attorney until June 28, 2023.

70.

July 5, 2023 was the 90th day after the date Unum initially received the Plaintiff's appeal.

71.

Unum failed to provide the Plaintiff with copies of the aforementioned reports from Drs. Spica and Thomas as soon as possible.

72.

Unum did not provide the Plaintiff with copies of the aforementioned reports from Drs. Spica and Thomas with sufficient time to give the Plaintiff a reasonable opportunity to respond to them prior to Unum's appeal decision deadline.

73.

Unum provided the Plaintiff with copies of the aforementioned reports from Drs. Spica and Thomas with only 7 days left before Unum's July 5, 2023 deadline to decide the Plaintiff's appeal.

74.

On July 3, 2023, the Plaintiff underwent standardized psychological testing, including the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) and Beck Anxiety Inventory ("BAI").  These tests were performed by Dr. Logsdon to screen for any evidence of behavioral disorders such as depression and anxiety.

75.

The results of the MMPI-2 and BAI testing showed that the Plaintiff "is not currently experiencing any clinically significant levels of emotional distress." His MMPI-2 results were "completely within normal limits suggesting the absence of psychopathology."

76.

The Plaintiff received Dr. Logsdon's July 3, 2023 report on July 6, 2023. The Plaintiff sent Unum a copy of that report the same day – July 6, 2023.

77.

In his July 6, 2023 letter to Unum, the Plaintiff's attorney advised Unum that he was not agreeing to waive or extend the deadlines under ERISA for deciding the Plaintiff's claim, and asked Unum to decide the claim by July 7, 2023.

78.

As of the date of filing of this Complaint, Unum has still not notified the Plaintiff of a decision on his appeal.

## COUNT ONE

## CLAIM FOR BENEFITS UNDER PLAN / POLICY PURSUANT TO ERISA, 29 U.S.C. § 1132(a)(1)(B)

79.

The Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs of this Complaint as if set forth verbatim herein.

80.

The Plaintiff asserts this Count One of the Complaint in the event it is determined that the Policy in question funds benefits or otherwise relates to an employee welfare benefit plan governed by ERISA.

81.

This Court has original subject matter jurisdiction over these claims pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

82.

The Plaintiff has standing to bring this action against Unum pursuant to 29 U.S.C. § 1132(a).

83.

The Plaintiff resides in Georgia.

84.

This Court has personal jurisdiction over Unum and venue is proper in this Court, pursuant to 29 U.S.C. § 1132(e)(2).

85.

Unum may be served with process through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

86.

The evidence that the Plaintiff submitted to Unum during the claim and appeal process demonstrates that he has met the Policy's definition of "disabled" on a continuous basis since on or before the date he stopped working and has satisfied all conditions set forth in the Policy for continuing to receive benefits.

87.

Unum's decision to terminate the Plaintiff's benefits under the Policy was wrong, unreasonable, arbitrary and capricious.

88.

Unum denied the Plaintiff a full and fair review of its adverse benefit determination on appeal.

89.

Unum failed to establish and follow reasonable claims practices in connection with its review of the Plaintiff's claim.

90.

Unum operated under a conflict of interest in simultaneously deciding eligibility to receive benefits and also funding benefit payments under the same Policy.

91.

Unum failed to "ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of persons involved in making the decision" in violation of the applicable ERISA regulations, 29 C.F.R. § 2560.503-1(b) (7).

92.

Under the ERISA regulations, 29 C.F.R. § 2560.503-1(h)(4), Unum was required to provide the Plaintiff with "any new or additional evidence considered, relied upon or generated" in connection with its appeal review "as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided … to give the claimant a reasonable opportunity to respond prior to that date…."   Unum failed to comply this these regulatory obligations in connection with the Plaintiff's appeal review process.

93.

Unum's conduct in this appeal process shows a pattern of ERISA regulatory violations.

94.

The ERISA regulations, 29 C.F.R. § 2560.503-1(i)(1)(i) & (i)(3), required Unum to notify the Plaintiff of its final decision on his appeal by no later than July 5, 2023, which was 90 days from the date it received the Plaintiff's request to commence the appeal review.

95.

Unum failed to notify the Plaintiff of its final decision on his appeal within the deadline established by the ERISA regulations.

96.

The Plaintiff never waived Unum's strict compliance with the ERISA regulations nor did he agree to extend Unum's deadline to decide the Plaintiff's claim.

97.

As a result of Unum's failure to provide timely notice of a final decision on the Plaintiff's long-term disability appeal and violations of the ERISA regulations, the Plaintiff is deemed to have exhausted his administrative remedies under the Policy. 29 C.F.R. § 2560.503-1(l)(1).

98.

As a result of Unum's failure to timely provide notice of a final decision on the Plaintiff's appeal and its violation of the ERISA claim regulations, the Plaintiff's long-term disability appeal is "deemed denied on review without the exercise of discretion by an appropriate fiduciary" in accordance with the ERISA regulations, 29 C.F.R. § 2560.503-1(l)(2).

99.

The Court's standard of review in this action is *de novo* with no deference to Unum's prior decisions, irrespective of whether the plan language purports to delegate any discretionary authority to Unum.

100.

Pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), the Plaintiff is entitled to recover benefits under the Policy for the period beginning April 26, 2023 through the date of judgment and will be entitled to continue receiving such benefits into the future.

101.

The Plaintiff is entitled to recover interest accruing on the aforesaid benefits.

## COUNT TWO

## AWARD OF ATTORNEYS' FEES AGAINST UNUM UNDER ERISA

### 102.

The Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs of this complaint as if set forth verbatim herein.

### 103.

The Plaintiff asserts this Count Two of the Complaint in the event it is determined that the Policy in question funds benefits or otherwise relates to an employee welfare benefit plan governed by ERISA.

### 104.

The Plaintiff has retained counsel to represent him in this matter and is entitled to an award of costs, including reasonable attorneys' fees against Unum pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

## COUNT THREE

## BREACH OF CONTRACT

### 105.

The Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs of this Complaint as if set forth verbatim herein.

106.

The Plaintiff asserts this Count Three of the Complaint in the event it is determined that the Policy in question does not fund benefits or relate to an employee welfare benefit plan governed by ERISA.

107.

The benefits in question exceed $75,000.

108.

The Plaintiff is a resident of Georgia.  Upon information and belief, Unum is not domiciled in Georgia.

109.

The Court has diversity jurisdiction over these claims under 28 U.S.C § 1332(a).

110.

Unum is subject to personal jurisdiction and venue of this Court.

111.

Unum has breached the terms of the Policy by refusing to pay the Plaintiff benefits to which he is entitled.

112.

Unum has acted in bad faith in refusing to pay the Plaintiff's benefits under

the Policy, entitling the Plaintiff to an award of penalties under O.C.G.A. §33-4-6.

113.

Unum has acted in bad faith and been stubbornly litigious, causing the Plaintiff unnecessary trouble and expense and entitling the Plaintiff to an award of reasonable attorneys' fees.

WHEREFORE, the Plaintiff, prays for relief in the following forms:

(a)    Under Count One, judgment against UNUM LIFE INSURANCE COMPANY OF AMERICA, for benefits under the Policy, plus pre-judgment interest accruing on all principal sums to which he is entitled;

(b)    Under Count Two, judgment against UNUM LIFE INSURANCE COMPANY OF AMERICA, awarding the Plaintiff his attorneys' fees, litigation expenses and costs;

(c)    Under Count Three, in the alternative, judgment against UNUM LIFE INSURANCE COMPANY OF AMERICA, for damages for breach of contract, pre-judgment interest, statutory bad faith penalties, and attorneys' fees; and

(d)     That the Plaintiff be awarded such additional and further legal

and equitable relief as the Court deems just and proper.

Respectfully submitted this 11th day of July, 2023.


EVANS WARNCKE ROBINSON, LLC

By:     /s/ Douglas M. Robinson
        Douglas M. Robinson
        Georgia Bar No. 610100
        Attorney for Plaintiff
        191 Peachtree Street, NE
        Suite 3980
        Atlanta, Georgia 30303
        Telephone: (404) 841-9400
        Facsimile: (478) 202-7453
        d.robinson@ewrlawfirm.com