# EXHIBIT A

# 2604 CAMBLETON Road PARTNERS, LLC OPERATING and INVESTORS AGREEMENT

Dated:  February 2, 2016

# **Table of Contents**

Preliminary Statement

Article 1    Formation
      1.1    Agreement
      1.2    Name of Company
      1.3    Place of Business
      1.4    Business Purpose
      1.5    Property
      1.6    Agent for Service of Process

Article 2    Term of Company

Article 3    Definitions
      3.1    Additional Member
      3.2    Admission Agreement
      3.3    Agreement
      3.4    Certificate
      3.5    Assignee
      3.6    Code
      3.7    Company
      3.8    Incapacity
      3.9    Managing Member
      3.10   Member
      3.11   Substitute Member
      3.12   Net Profits

Article 4    Capital Contributions and Accounts
      4.1    Capital Contributions and Returns
      4.2    Capital Accounts
      4.3    Loans
      4.4    Interest
      4.5    Account Deficits
      4.6    Capital Additions and Distributions
      4.7    Account Adjustments

Article 5    Members
      5.1    Members
      5.2    Powers
      5.3    Limited Liability
      5.4    Indemnification
      5.5    Participation in Conflicting or Competing Businesses
      5.6    Ownership Interest & Voting Rights
      5.7    Sharing of Profits Amongst Members

Article 6     Managers
    6.1      Managers
    6.2      Powers and Limitations
    6.3      Restrictions
    6.3.1    Major Decisions
    6.4      Duties and Obligations
    6.5      Liability of Managing Member

Article 7     Company Accounting
    7.1      Accounting Method
    7.2      Records and Financial Statements
    7.3      Company Bank Account
    7.4      Allocations on Contributed Property
    7.5      Tax Matters Member
    7.6      Availability of Financial Records to Members

Article 8     Transfer and Disposition of Company Interests
    8.1      Voluntary Transfers
    8.2      Death, Incapacity, or Bankruptcy
    8.3      Substitution of a Member

Article 9     Amending or Terminating the Company
    9.1      Amending the Company
    9.2      Dissociation
    9.3      Dissolving or Terminating the Company

Article 10    Power of Attorney

Article 11    Miscellaneous
    11.1     Distributions
    11.2     Notices
    11.3     Governing Law
    11.4     Whole Agreement
    11.5     Waiver
    11.6     Counterparts
    11.7     Severability
    11.8     Gender and Number
    11.9     Binding Agreement
    11.10    Construction
    11.11    Cumulative Rights
    11.12    Schedules
    11.13    Meetings

### *2604 CAMBLETON Road Partners, LLC,*
### *OPERATING AGREEMENT*

This Operating Agreement (this "Agreement") is effective this 29th day of January, 2016 and is made by and between 2604 CAMBLETON Road Partners, LLC (the "Company"), a limited liability company formed in accordance with the laws of the State of Georgia whose corporate address is currently located at 6080 Foxberry Lane, Roswell, GA 30075, and **Joseph Harker as JSS Realty Holdings, Inc. Brian Peoples as Spring Terrace Partners, LLC, Panagiotis Tsaparas as Yuen-Tsaparas Holdings, Inc.,** (individually**)**, each a "Member and, collectively the "Members"). The Company and Members are sometimes referred to herein collectively as the "Parties.". The Parties have attached Schedule A, listing the "members" and indicating those members who are "managing members" of the organization. In consideration of the promises and covenants of each other, the members agree that a limited liability company has been formed and its operation is to be bound by this agreement. If the Investor has signed an Investor Agreement prior to our simultaneous to the execution of this document, it shall be included hereto as if restated in its entirety, a copy of which is attached to this agreement.

### ARTICLE 1: *FORMATION*

**Section 1.1     Formation of Company**

The Company has formed this limited liability company under the provisions of the **Georgia Limited Liability Company Act ("Act").**

**Section 1.2     Name of Company**

The initial name of the company is **2604 CAMBLETON Road PARTNERS, LLC,** (the "Company") as reflected in the certificate of formation ("Certificate") filed with the Secretary of State's office and attached hereto as Schedule C. The name of the company may be changed by Unanimous decision of the members, and such change shall be recorded with the Secretary of State's office on amended Certificate, as required. Such amended Certificate shall become part of this agreement as Schedule C.

**Section 1.3     Place of Business**

The company's initial place of business shall be: **6080 Foxberry Lane, Roswell, GA 30075. The Company's initial mailing address shall be: 6080 Foxberry Lane, Roswell, GA 30075**.

The Company's initial place of business has been reflected in the Certificate filed with the Secretary of State's office. The place of business may be changed by the Unanimous decision of the members, and any such change shall be recorded with the Secretary of State's office on an amended Certificate, as required. Such amended Certificate shall become part of this agreement as Schedule C.

**Section 1.4     Business Purpose**

The purposes for which this company has been organized are:

**(a)** To own and invest in real property which is offered for rent and/or sale, specifically and only otherwise known as **Cambleton Townhomes ( A Real Estate Investment)**

(b) To manage such property, which will include but not be limited to improve, develop, construct, alter, or repair buildings or structures on the property; to sell, exchange, lease, and make contracts concerning the property;

(c)  To possess and exercise all rights and powers conferred by law upon the members, both now and in the future.

The foregoing statement of purposes shall in no way be construed to limit or restrict in any manner the powers conferred upon this company by the State of Georgia. Each clause or paragraph in this Agreement shall be regarded as statements of cumulative and independent objectives, purposes, and powers and shall in no way be regarded as limiting or restricting other clauses or paragraphs herein.

## Section 1.5        Property

All property owned by the company, which is set forth on **Schedule "E",** attached hereto and made a part hereof, shall be owned in the name of the company.

## Section 1.6        Agent for Service of Process

The name and address of the company's initial registered agent for service of process shall be **BRIAN PEOPLES c/o 2604 CAMBLETON Road PARTNERS, LLC, 6080 Foxberry Lane, Roswell, GA 30075,** as may be reflected in the Certificate as filed with the Secretary of State's office.  The name of the company's registered agent may be changed by Unanimous decision of the managing members, and such change shall be recorded with the Secretary of State's office on amended Certificate, as required.  Such amended Certificate shall become part of this agreement as Schedule B.


## ARTICLE 2:  *TERM OF COMPANY*

The term of this company shall be 99 years beginning on the effective date of this Agreement. Unless it has been previously dissolved in accordance with the Georgia Limited Liability Company Act, the company shall dissolve upon the occurrence of certain specific events as follows:

a)  the termination of the company under any specific provision contained herein;

b)  a written agreement to dissolve the company signed by Unanimous members whose combined interests equal One Hundred Percent (100%)  of all limited liability company interests; or

c)  ©the voluntary bankruptcy of the company, as consented to by a Unanimous of members.

d)  The sale of the assets of the company.


## ARTICLE 3:  *DEFINITIONS*

## Section 3.1        Additional Member

"Additional Member" means a member other than an initial member or substitute member who has acquired a membership interest in the company by means of an admission agreement.

## Section 3.2        Admission Agreement

"Admission Agreement" means the agreement between the company and a person other than an initial member or substitute member admitting that person as an additional member.

**Section 3.3        Agreement**

"Agreement" means the **2604 CAMBLETON Road Partners, LLC** Operating Agreement.

**Section 3.4        Certificate**

"Certificate" means the Certificate of formation of the company which is filed with the Secretary of State.  A copy of this Certificate, as may be amended from time to time, is attached hereto as **Schedule B**.

**Section 3.5        Assignee**

"Assignee" means a person to whom a member or managing member has assigned part or all of his or her interest in the company but has not been accepted as a substitute member.

**Section 3.6        Code**

"Code" refers to the Internal Revenue Code of 1986, as amended from time to time.

**Section 3.7        Company**

"Company" means **2604 CAMBLETON Road Partners, LLC**.

**Section 3.8        Incapacity**

"Incapacity" or "incapacitated" means that a member is unable to vote or to otherwise perform his or her duties as a member.

**Section  3.9        Managing Member**

"Managing member" means the member or members who are indicated on **Schedule A** attached hereto as managing member(s).  These members shall manage all of the affairs of the company.  May be referred to herein, from time to time, as a manager.

**Section 3.10        Member**

"Member" means the member or members who are listed in **Schedule A** herein as members.

**Section 3.11        Substitute Member**

"Substitute Member" means an assignee who, according to the terms of the agreement, has been accepted as a member, with all membership rights.

**Section 3.12        Net Profits**

"Net profits" means all monies retained by the company, measured on a monthly basis, after payment of all office expenses, all salaries, benefits costs or any other operational expenses agreed to by the parties.

## ARTICLE 4:  *CAPITAL CONTRIBUTIONS AND ACCOUNTS*

**Section 4.1        Capital Contributions and Returns**

Certain member(s) have made or shall make a contribution of capital to the company as contained next to his

name in **Schedule "A"** attached to this agreement.  This capital may be in the form of cash, property, services, or obligations.  Unless otherwise expressly authorized herein or by law including the filing of a certificate of dissolution, cancellation, or termination with the Secretary of State.  Such termination does not include a dissolution that merely results in a change in the relationship of the members, but the company still continues.  Unless otherwise prohibited by law or other provisions within this agreement, no member shall be personally liable for the return of capital contributions or additions to the capital account of a member.  All such returns or distributions shall be satisfied solely from the assets of the company.  When returns, distributions, or exchanges are permitted by this agreement, the designated managing members shall have sole authority to decide which assets shall be used to make the payments, distributions, or exchanges.

## Section 4.2        Capital Accounts

The company shall establish a capital account in the name of each member reflecting each member's ownership interest in the company.  Each capital account shall be maintained in accordance with state and federal law, as well as generally accepted accounting principles.  This includes crediting or increasing a member's capital account in an amount equal to his capital contribution to the company, crediting (increasing) or debiting (reducing) a member's capital account in accordance with his allocated share of profit or loss, and charging (debiting or decreasing) his capital account for distributions made from his capital account under the terms of this agreement.

## Section 4.3        Loans

The company may make loans to or borrow from any member or person.  Unless otherwise agreed to, no part of any loan made by a member to the company shall be considered a contribution to the member's capital account, nor shall any loan made to a member by the company be considered a distribution from or decrease in that member's capital account.  Unless agreed to, loans made to or received by the company shall not affect the company's profit and loss ratios. Members may, but shall not be obligated to, make loans to the company to enable the company to satisfy its obligations on a timely basis.  Such obligations shall include claims against company property for which the member has no personal obligation.

## Section 4.4        Interest

## Section 4.5        Account Deficits

Any deficit (negative balance) in a member's capital account, such as those that occur due to company losses or permitted withdrawals, shall not become an obligation of that member to the company.  If such negative balance continues until termination and winding up of the company, the member shall not be responsible for paying an amount equal to such negative balance to the company.

## Section 4.6        Capital Additions and Distributions

From time to time as the members shall deem necessary, as evidenced by the Unanimous approval of the members, additional capital contributions may be made (but are not required to be made) to the company by one or more members.  A description of such additional capital contributions shall be noted and initialed by all members on **Schedule A**, attached hereto and made a part of this agreement, or by a separate amendment signed by all members.  Changes in company interests with respect to the respective interests of the members to each other and to the company that occur due to the making of additional capital contributions can be approved only upon the **Unanimous vote** of all the members. Any distribution from the capital account of any member, including distributions of profits, may be made only upon the approval of the managing members.  In making such distributions, the managing members may consider any special circumstances of the members or the company and may make disproportionate or no capital distributions among the members.

**Section 4.7        Account Adjustments**

If it is later determined that an asset contributed by a member to the company as a capital contribution was not properly valued in making allocations to his capital account as reflected on any Schedule attached hereto, the capital account of such member shall be adjusted to reflect the appropriate fair market value.  Such adjusted value shall also be reflected on Schedule A, attached hereto, or by an amendment signed by all members.

## ARTICLE 5:  *MEMBERS*

**Section 5.1        Members**

The name, address, capital contribution, and company interest of each initial member is set forth on **Schedule A**, which is attached hereto and made a part of this agreement.  Each initial member's interest in the company is reflected by the percentage in the column labeled **"Company Interest" on Schedule A**, which interest is subject to being changed in accordance with other provisions of this agreement.  Those members who are managing members hereunder are so indicated on Schedule A.  The aggregate or sum of the interests of all members is known throughout this agreement as the aggregate limited liability company interest.

Any changes in the identity or company interests of one or more members or managing members shall be duly recorded upon Schedule A, or by a separate written amendment, and signed by all managing members and the members whose interests have changed or been added.  Additional members may be admitted at any time upon approval of all the members.  The conditions of admittance shall be set forth in an admission agreement executed by the person being admitted as a member and all members or their authorized agent.

**Section 5.2        Powers**

All members, who are not assignees or disassociated, shall have the right to vote on any matter submitted to a vote of the members.  Members shall have the number of votes proportionate to their respective percentage of ownership.  However, the following must be approved by a Unanimous vote of all members:

    a)   amendments to the agreement;

    b)   admission of assignees as members or substitute members

    c)    continuation of the company after any event that results in dissolution.

    d)   Sale of the property and all assets.

**Section 5.3        Limited Liability**

Except as otherwise provided by law, **no member shall be personally liable** for any debts or obligations of the company.  In the absence of a written agreement or commitment to the contrary voluntarily executed by a member, no member can be required to make additional cash or other capital contributions to the company.  If a member who has made loans to the company has a deficit in his capital account balance at the time of termination and winding up, such loan amounts may be used to restore all or part of the deficit in the member's capital account.

**Section 5.4        Indemnification**

When acting within the scope of his duties and obligations as imposed by this agreement, a member, managing member, or manager shall be entitled to all indemnification authorized by the Act or by this agreement.

**Section 5.5        Participation in Conflicting or Competing Businesses**

Nothing in this agreement shall be construed to limit any member's right to hold interests or participate in other businesses or business entities that either compete or do not compete with or are not similar to the business conducted by the company established by this agreement.

**Section 5.6        Ownership & Voting Rights**

Ownership interest of each member shall be set forth in **Schedule "A"** as follows:

Each member shall be entitled to one (1) vote per one percentage of ownership interest for any matters that require voting as detailed herein.

**Section 5.7        Sharing of Profits and Losses Amongst Members**

Net Profits as defined herein shall be shared on a **percentage basis relative to the member's percentage of ownership** as set forth on **Schedule "A"**. This percentage shall only be changed upon express written agreement of Unanimous of members.

**ARTICLE 6: *MANAGERS***

**Section 6.1        Managers**

The following members shall be authorized to be and act as Managing Members:

Panagiotis Tsaparas (55 %)          5220 East Boulevard, Vancouver, BC V6M3V1

Brian Peoples (30 %)              6080 Foxberry Lane, Roswell, GA 30075

Joe Harker (15%)              4450 Wykesire Ct., Cumming, GA  30041

 Said appointed manager(s) are authorized to conduct the business affairs of the company, having power to make the ordinary and usual decisions relating to the company's business.  Each manager shall be noted on the list of initial members contained on Schedule A, which is attached hereto and made a part of this agreement.

**Section 6.2        Powers and Limitations**

Except for major decisions, the manager(s) set forth in Section 6.1 or as otherwise authorized by the members from time to time shall be responsible for managing, controlling, and operating all the affairs of the company, with each managing member empowered to act as manager of the company.  The members hereby agree that only managers and authorized agents of the company shall have power and authority to bind the company this includes obtaining loans, mortgages and/or refinancing any such loans or mortgages.    Where there are no managers, power to manage the company rests in all members, jointly and severally.  The managers, or the members if there is no manager, may appoint a non-member manager to manage all or a part of the affairs of the company.  Even if a non-member manager is employed, the members shall remain responsible for the proper

management of the company and the execution of the terms of this agreement.  Any changes in the identity or company interests of one or more managers shall be duly recorded upon **Schedule A**, or by a separate written amendment, and signed by all members.

Only as authorized by a managing member or by the terms of this agreement, the non-member manager may represent the company by employing, engaging, or otherwise dealing with any person, including persons directly or indirectly related to the manager or a managing member, to provide products, services, or information to the company at any time and in any form deemed by the non-member manager to be in the best interests of the company or to give effect to the terms of this agreement.

Any delegation of powers or authority shall be evidenced by an addendum signed by all managing members and attached hereto.  Such addendums shall be included in this agreement as if restated herein in its entirety.

**Section 6.3         Restrictions**

Despite the provisions of Section 6.2 above and except as provided by law or elsewhere within this agreement, no Member shall do any of the following actions described below in Section 6.3.1 (each action being a "Major Decision") in the absence of **Unanimous approval** from the members who represent the aggregate limited liability company interests:

>    a.   Any act, duty or obligation which, by the terms of this agreement or by provisions of the Act, must be consented to by the members.
>
>    b.   Add members to the company without Unanimous approval.
>
>    c.   Cause the company to engage in any business that is not consistent with the purpose of the company as expressed in Section 1.4 of this agreement.
>
>    d.   Add to or take away from the terms of this agreement or otherwise change the respective interests of the members.
>
>    •

Except for loans from the company to a member, no manager may enter into a contract, lease, loan, or other agreement that would result in personal liability to a member.  A manager shall be removed, in accordance with the conditions contained herein, when the manager has been guilty of fraud or malfeasance with regard to company interests or is in material breach of his material obligations under the terms of this agreement and does not cure, or earnestly and diligently begin to cure, such breach within three months of the notice given to him by the members.  A manager may also be removed by the **Unanimous** agreement of both The Company and Investor(s). A change in a member's status to or from that of managing member shall be duly recorded on **Schedule A**, attached hereto, or by a separate written amendment, and signed by all members.

**Section 6.3.1     Major Decisions – Unanimous agreement**

**Major Decision are any act, duty, or obligation which, by the terms of this agreement or by provisions of the Act.**

**The following Major Decisions must be consented to in writing by the <u>Unanimous agreement</u> of the members:**

**(a) Issue any Membership Interests or other equity securities or equity-like interests in the Company or its**

revenues or profits
**(b) Cause the company to engage in any business that is not consistent with the purposes of the company as expressed in Section 1.4 of this agreement**
**(c) Add to or take away from the terms of this agreement or otherwise change the respective interests of the members**
**(d) Any financing or refinancing of any indebtedness, including borrowing any money or incurring any indebtedness (other than trade accounts payables or other indebtedness incurred in the ordinary course of business) in excess of $10,000 in any twelve month period**
**(e) Call for additional capital contributions**
**(f) Any redevelopment or any other material construction affecting the real estate investment, including the cost of any such construction**
**(g) Any distributions or allocations to members**
**(h) Any change in the management agents of any Real Estate Investment**
**(i) Enter into any agreement with an affiliate of the managers, managing members or any members**
**(j) Take any action which would make it impossible to carry on the business of the Company**
**(k) Appoint, add, or remove a manager of the LLC**

**The following Major Decisions must be consented to in writing by <u>Unanimous</u> decision of the members:**

**(a) Acquire, sell, exchange, or other dispose of a Real Estate Investment**
**(b) Sell, transfer, convey or otherwise dispose of, or grant options, warrants, or other rights with respect to, any material assets of the Company must require Unanimous consent of the members.**
**(c) Guarantee, endorse, or otherwise become contingently liable to provide funds for payment of (or supply funds to or for the benefit of) any debtor**
**(d) Take any action that would subject any member to liability for the obligations of the Company in any jurisdiction**
**(e) Confess a judgment against the Company**
**(f) Take any action in contravention of this Agreement or the Act**
**(g) File a voluntary petition of bankruptcy, make an assignment for the benefit of creditors, admit in writing the inability to pay debts as they mature, or otherwise invoke general laws for the protection for debtors.**
**(h) Dissolve and wind-up the affairs of the company except as otherwise provided in this Agreement or as required by the Act.**

## Section 6.4     Duties and Obligations

The members shall have no duty to be actively involved in the management of the company, but shall diligently and faithfully execute all duties imposed upon them by this agreement and by law.  Anytime there is more than one managing member, their duties and obligations imposed by this agreement shall be joint and several. Although the managing members shall have power and authority to draw checks and bank drafts upon company bank accounts, they shall not be required to spend or invest company assets except as they deem in the best interests of the company.

## Section 6.5     Liability of a Managing Member and Members

In the absence of fraud, bad faith, negligence, or other malfeasance, no member or managing member is personally liable for more than his company interests as evidenced by his capital contributions.  A managing member who has been guilty of fraud, negligence, bad faith, or other malfeasance shall save and hold harmless the company and the members from any loss, damage, claim, or liability incurred, arising out of the managing member's breach, including reasonable attorney's fees.  Insurance may be purchased by the company to provide indemnity against any such damages.

## ARTICLE 7:  *COMPANY ACCOUNTING*

**Section 7.1      Accounting Method**

Accounting and income tax records for the company shall be kept on a cash basis.  Otherwise, all records shall be kept according to generally accepted accounting principles.

**Section 7.2      Records and Financial Statements**

Financial statements of the company shall be prepared at least annually.  Such statements or the company's annual income tax return shall be mailed to each member. The company shall maintain the following records at its principal place of business:

    (a)  The name, current business address, and phone number of each member;

    (b)  An executed copy of the Certificate of formation as amended from time to time and any powers of attorney that have been executed by members in accordance with the terms of this agreement;

    (c)  Copies of all tax returns and supporting documents that have been filed with federal, state, and local taxing authorities for at least the past four years;

    (d)  Executed copies of this agreement as amended from time to time;

    (e)  Company financial statements for at least the past four years; and

    (f)  Any other writings or data bases from which the following information can be extracted or compiled:

        (1)  A complete accounting of all cash and a description and agreed upon value of other property or services contributed by any member;

        (2)  The times at or events which alter or otherwise affect commitments made by or to be made by any member;

        (3)  Any right of the company to make or a member to receive distributions that represent a complete or partial return of a member's capital contribution; and

        (4)  Any events which would cause the dissolution and winding up of the company.

**Section 7.3      Company Bank Account**

The company may establish a bank account **( WELLS FARGO)** , at the discretion of the managing members, and maintain so as to require at least the signatures of a minimum of two managing members at all times per Unanimous vote of members.
Furthermore, said account shall require at least two signatures for withdrawing funds from said account.
In the case of one member no longer being signatory on the account, another member shall be appointed by Unanimous vote at all times in order to maintain two members on the account.

**Section 7.4      Allocations on Contributed Property**

In accordance with Code section 704(c), income, gains, losses, and deductions as to property contributed to the company may be shared among the members so as to take account of the variation between the basis of the property to the company and its fair market value at the time of contribution.

**Section 7.5        Tax Matters Member**

The managing member, **Brian Peoples** shall be the tax matters member as provided in Code section 6231(a) (7) and, as such, shall be solely responsible for representing the company in all dealings with the Internal Revenue Service, as well as any state, local, and foreign tax authorities.  However, the tax matters member shall keep the other members reasonably informed.  The managing members may appoint a new tax matters member.

**Section 7.6        Availability of Financial Records to Members**

At least once a year and as soon after preparation of the financial statements as possible, all members shall be entitled to review and discuss the financial statements and report upon the company's financial condition.  If so requested in writing with five (5) business day notice, a member shall be entitled to review of such financial records and to receive a copy of any interim financial statement that has been prepared for the company.

**ARTICLE 8:  *TRANSFER AND DISPOSITION OF COMPANY INTERESTS***

**Section 8.1        Voluntary Transfers**

No member may sell, pledge, transfer, exchange, hypothecate, encumber, give, devise, assign or otherwise dispose of any company interest without the written consent of all members.  An appointed non-member manager shall not have the power to approve such a transfer or disposition. Before approving any such transfer, the managers must ensure that the transfer will not create a substantial hardship to the company, thereby threatening its capital structure or causing undesirable tax results.  The managers must further ensure that any such transfer will not harm the relationships among the members or the financial integrity or business operations of the company.  The managers must also ensure that any transferee must represent that he is receiving the transferred company interest for his own investment and not with the intention of reselling or distributing it and that the transferee agrees in writing to be bound by the terms of this agreement.

Despite anything in this agreement to the contrary, no person, including any real or attempted assignee, may become a substitute member without the prior consent of the managing members according to the provisions herein.  Nor may any attempted assignee, except as required by law, become a transferee or assignee of any company interest or right without the Unanimous consent of all the members.

An assignee not accepted as a substitute member shall possess no voting rights of a member, except to receive the share of the assigned interest of the company to the income, gain, loss, deduction, credit, and distributions to which assignor would have been entitled.  Any such assignee who attempts to further assign his interest, as it may be, in the company shall be subject to the same restrictions upon transfer as if he were the original assignor.

No assignee shall be entitled to receive distributions from the company unless agreed upon in writing by all the managing members.

**Section 8.2        Death, Incapacity, or Bankruptcy**

The personal representative of a deceased member's estate, or the deceased member's designated beneficiary, may exercise all of the decedent's rights and powers as a member, and the decedent's ownership interest in the company will continue and pass to those entitled thereto upon the member's death.  A member is authorized to prepare in advance a notarized document in which he or she may designate one or more beneficiaries of his ownership interest.  The member's written designation will be binding upon the company if it is delivered to a managing members within 60 days after the death of the member.  Such personal representative shall not, under any circumstances, be considered a manager.

If a member has executed a durable power of attorney that authorizes his attorney in fact to act in his stead or if

letters of guardianship have been issued on behalf of the member, the legal representative or guardian so appointed may exercise any or all of a member's rights and powers and will be entitled to receive distributions of any sort from the company. In no instance, may a managing member execute a durable power of attorney authorizing his attorney in fact to act in the member's capacity as manager.

There is no duty on the part of the managing members to inquire as to the application or use of funds delivered to a legal representative or guardian. In the case of the death, incapacity, legal incompetence, or bankruptcy of a managing member, such member, or their personal representative or beneficiary, shall cease acting as manager. A new manager shall be appointed in accordance with Article 6, herein.

In the case of the death, incapacity, legal incompetence, or bankruptcy of a member and if there are two or more other members, including the designated beneficiary, legal representative, guardian, or attorney in fact of a member, the company shall, upon approval of all managing members and those remaining members who represent a Unanimous of the aggregate limited liability company interests, continue uninterrupted as provided under the Act.

The company, and all of the remaining members, shall have the right, in case of death, incapacity, legal incompetence or bankruptcy of a member, to purchase such member's interest in the company at a price which most closely approximates the fair market value of the underlying assets and under terms that are reasonable under the circumstances. That value shall be determined by the fair market value of the asset minus the current debt owed on the property.

### Section 8.3        Substitution of Member

No assignee or transferee of a limited liability company interest shall have the right to become a substitute member, thereby taking the place of the assignor member, unless each of the following conditions are met:

(a) a Unanimous of the members have given their written consent to the assignee becoming a substitute member;

(b) a notarized, written assignment setting forth the clear intention of the assignor that the assignee become a substitute member;

(c) unless otherwise waived in writing by the members, the interest being acquired must be 100% of the assignor's company interest;

(d) the execution by the assignee or assignor of any document required by the managing members, including but not limited to a power of attorney in a form prescribed by the managing members;

(e) payment of any transfer or other fees incurred as a result of the transfer;

(f) where the assignee has not been duly accepted as a substitute member and when the vote or consent of the members is required in any matter, the assignor shall be deemed to have retained the transferred interests for the sole purpose of determining the share held by him in weighing his vote;

(g) the managing member need not amend this agreement more often than quarterly to reflect the proper substitution of members, and, until the amendment is made, the assignee shall not become a substitute member;

(h) subject to other terms and approval requirements in this agreement, a member may transfer at death or by gift all or part of his company interests to a person related by blood or by law;

(i) upon the withdrawal, death, bankruptcy, or legal incompetence of a member (or the dissolution of a member which is a legal entity), the company shall not dissolve but, upon approval of the members who represent a Unanimous of the aggregate limited liability company interests, shall

continue uninterrupted.  When a member dies or becomes legally incompetent, his legal representative shall possess all the rights and powers conferred upon him by the Act; and

(j)   all other conditions pertaining to transfer or assignment provided herein have been met.

## ARTICLE 9:  *AMENDING OR TERMINATING THE COMPANY*

### Section 9.1      Amending the Company

The managing members must communicate any amendments to each member on a timely basis in writing. Unless otherwise prohibited herein or by law, any part of this agreement may be amended by the affirmative vote of the managing member and those remaining members who represent a Unanimous of the aggregate limited liability company interests.  However, no vote of the members may take away any interest or right that has become vested in any member.  A copy of any such vote showing all the members who voted and how they voted shall be promptly sent to each member at his last known address. In addition, a **Unanimous** vote of all members is required to amend this agreement in such a way so as to:

(a)   enlarge the rights or powers or diminish the duties or obligations of the managing members;

(b)   diminish the rights or powers or enlarge the duties or obligations of the managing members;

(c)   appoint, add, or remove a managing member unless otherwise so authorized herein;

(d)   alter the term of the company as provided in Article 2 or change this Section 9.1; or

modify or otherwise affect the rights and restrictions pertaining to the assignability of company interests.

### Section 9.2      Dissociation

A member shall become disassociated from and cease to be a member of the company upon the happening of any of the following events:

(a)   the withdrawal of the member;

(b)   the bankruptcy of the member;

(c)   the death, incapacity, or legal incompetence of the member;

(d)   the termination of a trust who is the member;

(e)   the dissolution and commencement of winding up or the filing of a certificate of dissolution of a corporation or other organization who is the member; or

(f)   the distribution by the deceased member's personal representative of the estate's entire interest in the company.

If, under the terms of this agreement, a member's dissociation causes the company to terminate and wind up its affairs, the dissociated member shall be entitled to distributions as a pro rata share of his company interest, less any damages sustained by the company as a result of the dissolution and winding up. If, under the terms of this agreement, a member's dissociation does not cause the company to terminate and wind up its affairs, the dissociated member, or his legal representative or successor in interest, shall have all the rights of an assignee who has not been accepted as a substitute member.

**Section 9.3       Dissolving or Terminating the Company**

The company may continue to operate with as few as one member.  However, in the case of the death, incapacity, legal incompetence, or bankruptcy of the last member, the company may continue uninterrupted under management of the personal representative, guardian, or attorney in fact of the deceased, incapacitated, incompetent, or bankrupt member until the member's interest can be transferred to the member's designated successor beneficiary or beneficiaries.  If there are no designated successor beneficiaries, the company shall terminate and wind up its affairs.

In the absence of the right and power to do so as conferred by this agreement, no member shall have the right or power to compel dissolution of the company, even if such power is otherwise conferred by law.  As long as the company shall exist, the members agree to waive any right to compel dissolution or partition of the company or any property owned by the company.

No member shall possess an ownership interest in the property of the company.  As long as all managing members and those remaining members who represent a **Unanimous** of the aggregate limited liability company interests approve, the company shall not terminate or dissolve by reason of any of the following, which are descriptive but not exclusive:

      (a)  the death, disability, transfer, or substitution of a member;

      (b)  the death, disability, removal, addition, resignation, or refusal to act of a managing member;

      (c)  the insolvency or bankruptcy of a member;

      (d)  the withdrawal of a member;

Any act or omission that may be otherwise construed to be a termination or dissolution of the company shall, to the greatest extent permitted by law, be construed to be an intended reconstitution and continuation of the company, not requiring liquidation and winding-up.

## ARTICLE 10:  *MISCELLANEOUS*

**Section 10.1       Distributions**

Distributions of company profits, whether in cash or in kind, shall be divided on a percentage basis relating to each member's percentage of ownership in the company.  The managing member may not distribute profits in any other manner without a written agreement signed by a **unanimous vote** by all members hereto.

Distributions of company profits, whether in cash or in kind to cover tax obligations shall be decided by **unanimous vote** by all members.

Any distributions of cash or property made in accordance with this agreement shall be made to the persons so entitled at their respective addresses as contained in Schedule A or at another address as contained in a notice executed and delivered to the company in accordance with Section 2.

**Section 10.2       Notices**

Unless expressly provided otherwise in this agreement, all waivers, requests, notices, consents, approvals, offers, acceptances, elections, certifications, objections or other official communications permitted or required by this agreement shall be in writing, duly signed by the person making the official act or request, and delivered

personally, by U.S. mail, or by confirmed facsimile to the member or company receiving the writing at the most current address or phone number contained in the agreement or on Schedule A or B. Correspondence sent by regular mail shall be deemed to have been delivered on the third day after depositing the correspondence in the mail. Overnight mail shall be deemed to have been delivered on the date of receipt. Correspondence sent by confirmed facsimile shall be deemed to have been delivered on the next business day. Receipt shall be obtained by the sender for all deliveries and faxes.

### Section 10.3    Governing Law

This agreement shall be governed by and subject to the laws of the **State of Georgia**, with particular reference to the Georgia Limited Liability Company Act and without giving effect to conflicts of law principles.

### Section 10.4    Whole Agreement

This agreement, including **Schedules A through E-1,** shall constitute the entire agreement by and among the parties and supersedes all prior understandings of the Parties with respect to the matters provided for herein. Any other agreements or addendums executed by the Parties in relation to this agreement are attached hereto and included as if restated in their entirety herein. This agreement may be altered or amended only in accordance with the terms expressed herein.

### Section 10.5    Waiver

Any party who fails to seek redress for any violation of or to insist upon the strict performance of any provision of this agreement does not thereby waive his or her right to assert that a later act of a similar nature is a violation of the terms of this agreement. Unless otherwise provided by the terms of this agreement, no waiver, modification, or termination of this agreement shall be effective, unless it is made in writing, duly executed by the one making the writing, and delivered personally or by U.S. mail or confirmed facsimile to the party receiving the writing at the most current address or phone number contained in the agreement or on Schedule A or B. Correspondence sent by regular mail shall be deemed to have been delivered on the third day after depositing the correspondence in the mail. Overnight mail shall be deemed to have been delivered on the date of receipt. Correspondence sent by confirmed facsimile shall be deemed to have been delivered on the next business day. Receipt shall be obtained by the sender for all deliveries and faxes. In the absence of such a writing, no act shall be deemed to be a waiver of any right or obligation required by this agreement.

### Section 10.6    Counterparts

This agreement may be executed in one or more counterparts or signature pages and, even though all parties do not execute the same counterpart or signature page, each of the counterparts and signature pages shall be deemed to be an original as if it had been executed by all parties who sign at least one of the counterparts or signature pages. All such counterparts shall constitute a whole instrument binding on and reflecting the agreement of all the parties. Members shall be permitted to become parties to this agreement by signing a "signature page" in a form approved and signed by the managing members.

### Section 10.7    Severability

All provisions of this agreement shall be severable. Any provision that, for any reason, is determined to be invalid shall not affect the validity of any other provision of the agreement.

### Section 10.8    Gender and Number

Unless otherwise required by the context of the agreement, a masculine pronoun shall include the feminine and neuter, and vice versa, and the singular shall include the plural, and vice versa.

**Section 10.9      Binding Agreement**

This agreement is binding upon all the parties, their heirs, devisees, successors, legal representatives, and permitted assignees but shall not be deemed to be for the benefit of creditors.

**Section 10.10      Construction**

All article and section headings set forth in the agreement are intended for convenience only and shall not control or affect the meaning, construction or intent of this agreement or any provision thereof.  Words such as "herein," "hereinafter," "hereunder," "hereto," or "hereof" refer to this agreement as a whole and do not refer to a subdivision of the agreement unless the context clearly so requires.

**Section 10.11      Cumulative Rights**

Rights and remedies provided by this agreement are cumulative and are not lost by a party's failure to exercise such rights and remedies.

**Section 10.12      Schedules**

Schedules A and B, as amended from time to time, are incorporated herein by reference and constitute a part of this agreement.

**Section 10.13      Meetings**

The company may hold meetings from time to time as the members agree.  Meetings will be held at the then corporate headquarters or at a location agreed to by the parties.

Managing members or members owning at least 10 percent of outstanding aggregate limited liability company shares may call special meetings of the members to address any matter upon which the members are permitted by this agreement to vote.  Members calling such a meeting shall give a written request to a managing member who shall notify all members of the meeting within 5 business days of receiving the request.  The managing member shall designate a time and place in the notice and shall schedule the meeting within 45 days of receiving the request.  The notice of the meeting shall set forth the nature of the request, including the specific topics to be discussed and voted upon at the meeting.

Members may vote in person or by proxy.  At least a Unanimous of the aggregate limited liability company interests must be present in order to constitute a quorum for doing business.

The managing members must maintain a list of the names and addresses of all the members at the principal office of the company.  Such list shall be made available at reasonable times for review and inspection of any member or his representative.  The managing members shall also furnish a copy of such list to any member who requests a copy and may require the member requesting the copy to pay the reasonable costs of copying and mailing the list.

## *CONCLUSION*

        **IN WITNESS WHEREOF,** the undersigned have executed this Agreement, in duplicate and under seal, on the date written above:


_____
Panagiotis Tsaparas, Managing Member for Yuen-Tsaparas Holdings, Inc.
5220 East Boulevard, Vancouver, BC V6M3V1

_____
Brian Peoples, Member for Spring Terrace Partners, LLC
6080 Foxberry Lane, Roswell, GA 30075


_____
Joe Harker, Member for JSS Realty Holdings, Inc.
4450 Wykesire Ct., Cumming, GA  30041

# SCHEDULE "A"

## List of Initial Members and their Interests

## In

## 2604 CAMBLETON Road Partners, LLC.

| Name and Signature | Current Mailing Address | Value of Capital Contribution | Company Interest (By percentage) |
|---|---|---|---|
| **Member:**<br><br> By: _____<br> *Panagiotis Tsaparas, for Yuen-Tsaparas Holdings, Inc.* | 5220 East Boulevard Vancouver, BC V6M3V1 | $10.00 | 55% |
| **Member:**<br><br>By: _____<br>*Joseph Harker for JSS Realty Holdings, Inc.* | 4450 Wykeshire Ct Cumming, GA 30041 | $2.00 | 15% |
| **Member:**<br>By: *Brian Peoples* _____<br>*Brian Peoples  for Spring Terrace Partners, LLC* | 6080 Foxberry Lane, Roswell, GA 30075 | $2.00 | 30% |
| **Member:**<br><br>By: _____ | | | |
| **Member:**<br><br>By: _____ | | | |

| Member: | | | |
|---|---|---|---|
| **Member:**<br><br>By: _____<br>, | | | |
| **Member:**<br><br>By: _____ | | | |

## SCHEDULE "B"

**February 2, 2016**

Each Member's shares, interest and economic distribution will be based on their percentage of their interest in the current LLC Entity that own(s) the specific property.

> PanagiotisTsaparas as Yuen-Tsaparas Holdings Inc (55 %)
> 5220 East Boulevard, Vancouver, BC V6M3V1
>
> Brian Peoples as Spring Terrace Partners, LLC (30 %)
> 6080 Foxberry Lane, Roswell GA 30075
>
> Joe Harker as JSS Realty Holdings, Inc. (15%)
> 4450 Wykesire Ct., Cumming, GA  30041

Schedule "C"

Intentionally Left Blank

# SCHEDULE "D"

[Insert executed Note & UCCs]

1-29-2016:

Loan from Panagiotis Tsaparas, and/or Yuen-Tsaparas Holdings, Inc
for the purchase money of $650,000.00

Note to follow:

Note to carry an interest rate of 1% per month (12% Annually)
The first two months the interest payment will be added to the note balance.
Any balance outstanding thereafter shall be paid interest only of one point
(1%) per month until principal and all interest accrued is paid in full
This will carry a personal guarantee by Members Peoples and Harker

# SCHEDULE "E"

## Real Property Owned by the LLC

| | | | | | |
|---|---|---|---|---|---|
| 27 Units | Cambleton townhomes<br>2604 Cambleton Rd, SW | Atlanta | GA | 30311 | |

## SCHEDULE "E-1"


## LEGAL DESCRIPTION FOR CAMBLETON TOWNHOMES PROPERTY

## Intentionally left blank