# EXHIBIT A

**E-FILED**
23EV002868
5/11/2023 6:51 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CAROLINE PATTON GRIFFIN, Individually and as Surviving Spouse and Executor of the Estate of LEE DIXON GRIFFIN, JR., | * * * * * | |
| Plaintiff, | * * | CIVIL ACTION FILE |
| vs. | * * * | NO. _____ |
| TOYOTA MOTOR CORPORATION; TOYOTA MOTOR NORTH AMERICA, INC.; TOYOTA MOTOR SALES U.S.A., INC.; TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.; TOYOTA MOTOR MANUFACTURING, TEXAS, INC.; and, JIM ELLIS AUTOMOTIVE HOLDINGS, INC., | * * * * * * * * * | **JURY TRIAL DEMANDED** |
| Defendants. | * * | |

## **COMPLAINT**

On July 5, 2022, Lee Griffin's 2017 Toyota Tacoma killed him. After failing to automatically shut off while parked in an attached garage, the idling Toyota Tacoma pumped deadly carbon monoxide gas into Mr. Griffin's home. The carbon monoxide gas—often called the "silent killer"—poisoned Mr. Griffin and his wife Caroline as they slept. Mr. Griffin died. Mrs. Griffin suffered significant injuries.

1

Mr. Griffin's death and Mrs. Griffin's injuries were caused by the defendants named in this lawsuit.

Despite Toyota's knowledge that more than a dozen American citizens *have been killed* (and many more injured) by carbon monoxide poisoning when one of the company's cars or trucks failed to automatically shut off in an attached garage, Toyota designed the 2017 Toyota Tacoma *without* an automatic engine shutoff, or a timed engine shutdown. An automatic engine shutoff, or a timed engine shutdown cuts the engine off after a prespecified period of time when the driver and "key fob" are not in the vehicle. Toyota could have easily included an automatic engine shutoff, or a timed engine shutdown, in the 2017 Toyota Tacoma. Consciously indifferent to the consequences, Toyota *chose* not to do so. This design defect creates foreseeable and unreasonably dangerous safety risks to consumers, including the risk of death or injury from carbon monoxide poisoning when the Tacoma's engine fails to shut off in an enclosed space.

Toyota has known about this defect and the grave dangers posed to the American public for a long, long time. On July 5, 2022, the day Lee Griffin died, Toyota knew of at least 16 other similar instances in which a Toyota car or truck *killed* a person when it failed to shutoff and filled an enclosed space with deadly carbon monoxide gas. Toyota gained this knowledge through customer complaints about this defect, news reports, lawsuits, and government investigation, among

2

other ways.  Toyota has known about this deadly danger since at least 2006—more than 15 years before Mr. Griffin's death.

Despite knowing that this defect was killing Americans, Toyota did nothing and warned no one.

Mr. Griffin's death and Mrs. Griffin's injuries were the foreseeable result of Toyota's failure to reasonably design, failure to warn or adequately warn, and negligence regarding the defects in the Tacoma.

The Jim Ellis dealer that sold the 2017 Toyota Tacoma to Mr. and Mrs. Griffin also failed to warn about the unreasonable dangers in the truck. The Jim Ellis dealer's negligence also caused Mr. Griffin to die and caused Mrs. Griffin to suffer injuries.

## PARTIES, JURISDICTION, VENUE & SERVICE OF PROCESS

1.

Plaintiff Caroline Patton Griffin is the surviving spouse and administrator of the estate of Mr. Lee Dixon Griffin, Jr.  Mrs. Griffin resides in Atlanta, Fulton County, Georgia.  Plaintiff is subject to the jurisdiction and venue of this Court.

2.

Defendant Toyota Motor Corporation ("TMC") is a foreign, for-profit corporation incorporated and existing under the laws of the nation of Japan.  TMC designs, manufactures, markets, and/or sells automobiles, including the 2017

Toyota Tacoma that is the subject of this action. TMC is subject to the jurisdiction of this Court because it transacts business in the State of Georgia or regularly does and solicits business in Georgia, or engages in a persistent course of conduct in Georgia, and/or derives substantial revenue from goods sold and services rendered in Georgia. TMC may be served either by accepting service of process or pursuant to the processes identified in The Convention on The Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention, at Toyota Motor Corporation, 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan.

3.

Defendant Toyota Motor North America, Inc. ("TMN") is a for-profit corporation incorporated and existing under California law. Defendant TMN's principal office is located at 6565 Headquarters Drive, Plano, TX 75024. TMN is subject to the jurisdiction of this Court because it is authorized to and transacts business in the State of Georgia. Defendant TMN maintains a registered agent for service of process in Georgia and may be served with legal process by serving its registered agent for service, CT Corporation System, 106 Colony Park Drive, Suite 800-B, Cumming, Georgia 30040.

4

4.

Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a for-profit corporation incorporated and existing under California law. TMS's principal office is located at 6565 Headquarters Drive, Plano, TX 75024. TMS is subject to the jurisdiction of this Court because it is authorized to and transacts business in the State of Georgia. TMS maintains a registered agent for service of process in Georgia and may be served with legal process by serving its registered agent for service, CT Corporation System, 106 Colony Park Drive, Suite 800-B, Cumming, Georgia 30040.

5.

Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TME") is a for-profit corporation incorporated and existing under Kentucky law. TME's principal office is located at 6565 Headquarters Drive, Plano, Texas 75024. TME is subject to the jurisdiction of this Court because it transacts business in the State of Georgia or regularly does and solicits business in Georgia, or engages in a persistent course of conduct in Georgia, and/or derives substantial revenue from goods sold and services rendered in Georgia.  TME may be served with process through its registered agent for service in Kentucky, CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.

6.

Defendant Toyota Motor Manufacturing Texas, Inc. ("TMT") is a for-profit corporation incorporated and existing under Texas law. TMT's principal office is located at 6565 Headquarters Drive, Plano, Texas 75024. TMT is subject to the jurisdiction of this Court because it transacts business in the State of Georgia or regularly does and solicits business in Georgia, or engages in a persistent course of conduct in Georgia, and/or derives substantial revenue from goods sold and services rendered in Georgia.  TMT may be served with process through its registered agent for service in Texas, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

7.

TMN, TMS, TME, and TMT are wholly-owned subsidiaries directed and controlled by TMC. The Toyota corporate entities listed in paragraphs 2-6 are hereafter referred to collectively as "Toyota."

8.

Jim Ellis Automotive Holdings, Inc. is a domestic, for-profit corporation organized and existing under the laws of Georgia with its principal place of business located at 5901 Peachtree Boulevard, Atlanta, GA 30341. Jim Ellis Automotive Holdings, Inc. may be served with process through its registered agent for service R. Parker McFarland, Jr. at 309 Pirkle Ferry Road, Building F,

Cumming, GA 30040. Jim Ellis Automotive Holdings, Inc. was previously known as Jim Ellis South Atlanta, Inc.

<div align="center">9.</div>

This Court has jurisdiction over Jim Ellis Automotive Holdings, Inc. (hereafter referred to as "Jim Ellis") because it is a domestic corporation that is authorized to and does transact business in the State of Georgia.

<div align="center">10.</div>

Venue is proper in Fulton County pursuant to O.C.G.A. § 14-2-510(b)(3) because the cause of action originated in Fulton County and Toyota has an office and transacts business in Fulton County. Venue is proper as to all other defendants because this is an action against joint tortfeasors and may be brought against all defendants in the county where any one of such defendants is deemed to reside. Ga. Const. art. VI, § II, ¶ IV; O.C.G.A. § 9-10-31.

<div align="center">11.</div>

This Court has subject matter jurisdiction over all claims in this case.

<div align="center">12.</div>

This Court has personal jurisdiction over all parties.

<div align="center">13.</div>

Venue is proper in this Court as to all parties.

## OPERATIVE FACTS

14.

On July 4, 2022, Lee Griffin backed his 2017 Toyota Tacoma out of the garage on the basement level of the Griffins' home in Atlanta. Mr. Griffin parked the Tacoma in his driveway so that he could get out his lawnmower to cut his grass.

15.

After Mr. Griffin mowed his lawn, he drove the Tacoma back into the garage.

16.

Mr. Griffin got out of the Tacoma with the truck's "Smart Key System" keyless ignition "key fob" and went inside the Griffin's house.

17.

Mr. Griffin did not know the Tacoma's engine was still running.

18.

The engine of Mr. Griffin's Toyota Tacoma did not shut off, despite the fact that Mr. Griffin and the key fob were no longer inside or near the truck.

8

19.

The Tacoma's engine continued running in the garage attached to the Griffin's home, producing deadly carbon monoxide gas.

20.

Mr. Griffin went upstairs to his bedroom on the second floor of the Griffin's home (two levels above the basement), where Mrs. Griffin already was.

21.

The Griffins went to sleep.

22.

Without the Griffins knowing it, the Tacoma's engine pumped deadly carbon monoxide gas into the Griffin's home throughout the night.

23.

During the night, Mr. Griffin got up to go to the bathroom.

24.

Mrs. Griffin helped her husband, Mr. Griffin, to the toilet before beginning to feel dizzy and like she was going to faint.

25.

Mrs. Griffin fell asleep.

26.

Mrs. Griffin awoke and discovered Mr. Griffin's body cold and slumped

over the toilet.

27.

Mr. Griffin died of carbon monoxide poisoning.

28.

Mrs. Griffin called 911.

29.

When emergency responders arrived, they found Mr. Griffin deceased and

Mrs. Griffin suffering from the effects of carbon monoxide poisoning.

30.

Emergency responders used a monitor to check for carbon monoxide gas and

found extraordinarily high levels of carbon monoxide throughout the Griffin's

home.

31.

The highest levels of carbon monoxide were found in the garage, where Mr.

Griffin's Toyota Tacoma was parked.

32.

The deadly carbon monoxide gas the Toyota Tacoma pumped into the

Griffin's home caused Mr. Griffin's death.

33.

The deadly carbon monoxide gas the Toyota Tacoma pumped into the Griffin's home poisoned Mrs. Griffin, resulting in her hospitalization and injuries.

34.

Mr. Griffin purchased his 2017 Toyota Tacoma, VIN 5TFAZ5CN4HX050255 from Jim Ellis Automotive Holdings, Inc. in December 2020.

35.

The 2017 Toyota Tacoma, designed and manufactured by Toyota, does not use a traditional key to start and stop the engine.

36.

Instead, the 2017 Toyota Tacoma uses an electronic keyless ignition system to start and stop the engine.

37.

The Toyota Tacoma's keyless ignition system uses a key fob, a device that sends an electronic code to transmitters inside the vehicle.

38.

The electronic code, not the physical key fob or a piece of metal, is what functions as the vehicle's so-called "key" and permits drivers to start and stop the Toyota Tacoma by pushing a button inside the vehicle.

39.

Once the electronic code is sent to the Toyota Tacoma and the engine starts, the electronic code remains in the Toyota Tacoma's electronic system even if the driver or the key fob are no longer physically present in the vehicle.

40.

The Toyota Tacoma is *not* equipped with an automatic engine shut off, or timed engine shutdown, that turns off the truck's engine if the driver and key fob are not present in the vehicle or detected in the truck for a certain period of time.

41.

The Toyota Tacoma's engine continues to run indefinitely even when the driver and key fob are no longer present in the truck.

42.

Toyota began selling cars and trucks with keyless ignition systems in the United States as early as 2004.

43.

Toyota cars and trucks with keyless ignition technology have caused carbon monoxide poisoning deaths and serious injuries since at least 2006.

44.

Toyota knew about at least 16 such deaths and serious injuries when Mr. Griffin was killed on July 5, 2022.

45.

Toyota cars and trucks with keyless ignition technology caused at least 16 carbon monoxide poisoning deaths prior to Mr. Griffin's death.

46.

Toyota knows that carbon monoxide poisoning is dangerous and deadly.

47.

Toyota knows of the grave risks of carbon monoxide poisoning when a car or truck engine remains running in an enclosed space, such as a garage attached to a house.

48.

Toyota knows of the grave risks of carbon monoxide poisoning when a car or truck remains running in an enclosed space and the driver and key fob are no longer present in the car or truck.

49.

Toyota has knowledge of incidents where drivers of keyless ignition Toyota cars or trucks exited their vehicle with the engine running in a garage or enclosed space and suffered injury or death from carbon monoxide poisoning. Toyota knew about these incidents prior to the design, manufacture, and sale of the subject truck. Toyota also knew about these incidents prior to Mr. Griffin's death and Mrs. Griffin's injuries on July 5, 2022.

50.

The National Highway Traffic Safety Administration (or "NHTSA") has received complaints from consumers about Toyota cars and trucks with keyless ignition systems that continued to run in enclosed spaces and created risks of or caused carbon monoxide poisoning.

51.

In 2011, the National Highway Traffic Safety Administration recognized that safety issues arising from keyless ignition systems were increasing, including the risk of carbon monoxide poisoning in an enclosed space such as an attached garage. NHTSA recognized that drivers of keyless ignition system cars and trucks were inadvertently exiting their vehicles without turning off the engines. NHTSA cited to an example involving a Lexus LS460, a vehicle *Toyota* designed and manufactured.

52.

News articles printed in newspapers and media outlets across the United States (and available online) have reported on carbon monoxide poisoning injuries and deaths caused by cars and trucks designed and manufactured by Toyota.[1]

53.

In 2018, the New York Times published an article recounting numerous carbon monoxide poisoning deaths and injuries linked to Toyota cars and trucks with keyless ignition systems.[2]

54.

Toyota had the knowledge and technological capability to implement a reasonable alternative design, such as an automatic engine shut off or timed engine shutdown, as a safety feature when a driver and key fob are no longer present in a vehicle or not present for a certain period of time.

---

[1] *See, e.g.,* Jerome Burdi, *Probe into carbon monoxide deaths near Boca Raton focuses on keyless Lexus*, The Palm Beach Post (April 1, 2012); Carrie Seidman, *A tragedy born of 'convenience,'* Sarasota Herald Tribune (May 28, 2019) (Toyota Avalon); Kevin Cole, *Carbon monoxide from car left running in garage linked to deaths of three Omahans*, Omaha World-Herald (Sept. 7, 2022) (Toyota Camry).

[2] David Jeans and Majlie De Puy Kamp, *Deadly Convenience: Keyless Cars and Their Carbon Monoxide Toll*, New York Times (May 13, 2018).

55.

An automatic engine shut off or timed engine shutdown safety feature was technologically and economically feasible when the 2017 Toyota Tacoma was designed and manufactured.

56.

An automatic engine shut off or timed engine shutdown safety feature would have provided a significantly greater level of safety in the Toyota Tacoma.

57.

Toyota has implemented automatic engine shut off or timed engine shutdown features in certain cars since as early as 2005.

58.

Other auto manufacturers have been implementing automatic engine shut off or timed engine shutdown features in vehicles for at least a decade.

59.

Toyota has admitted that an automatic engine shut off feature was technologically feasible when designing vehicles as early as 2008—more than a decade before Mr. Griffin died.

60.

Recognizing the danger created when an engine fails to automatically shut off after a predetermined period of time when the key fob is removed from a car or

truck, in 2019 Toyota announced that it was "deploying" the automatic engine shut off feature to most of Toyota's model year 2020 cars and trucks, including the 2020 Toyota Tacoma.

<div align="center">61.</div>

Despite adding the automatic engine shut off feature to Toyota cars and trucks starting in Model Year 2020, Toyota failed to warn Lee and Caroline Griffin (or anyone else for that matter) about the deadly dangers their 2017 Toyota Tacoma posed.

<div align="center">62.</div>

The risks inherent in the design of the 2017 Toyota Tacoma significantly outweigh any utility of Toyota's chosen design.

<div align="center">63.</div>

Auto manufacturers other than Toyota have implemented recalls for cars and trucks that lack an engine shutoff feature.  In March 2015, GM recalled over 50,000 2011-2013 Chevy Volts in recognition of the safety risk posed when a driver inadvertently leaves his or her unoccupied car running in an enclosed space, such as an attached garage.  As GM confessed, this can cause "carbon monoxide [to] build up in the enclosed space and cause injury."

64.

The federal government has recognized the risks associated with Toyota's design of the Tacoma. The Infrastructure and Investment Jobs Act, which was signed into law in November 2021, requires NHTSA to promulgate a rule requiring automatic engine shutoffs in keyless vehicles with internal-combustion engines.

65.

Toyota failed to warn and failed to send any warning alerting Mr. and Mrs. Griffin of the dangers and defects in the Toyota Tacoma at the time of purchase or after they purchased their vehicle, including the danger that the vehicle's engine will not shut off and continue running after the driver exits the vehicle with the key fob, which can cause carbon monoxide poisoning.

66.

Toyota failed to adequately warn Mr. and Mrs. Griffin of the dangers and defects in the Toyota Tacoma, including the danger that the vehicle's engine will not shut off and continue running after the driver exits the vehicle with the key fob, which can cause carbon monoxide poisoning.

67.

Toyota negligently designed, tested, manufactured, marketed, distributed, sold, and placed into the stream of commerce the Griffin's defective Toyota Tacoma.

68.

Toyota was required to exercise reasonable care to either lessen the risks to or protect consumers, including Mr. and Mrs. Griffin.

69.

Toyota failed to exercise reasonable care to either lessen the risks to or protect consumers, including Mr. and Mrs. Griffin.

70.

Toyota is liable for the death of Mr. Griffin and the damages caused by the defects in the Toyota Tacoma.

71.

Toyota is liable for the injuries to Mrs. Griffin and the damages caused by the defects in the Toyota Tacoma.

72.

Jim Ellis failed to warn and/or failed to adequately warn Mr. and Mrs. Griffin of the dangers and defects in the Toyota Tacoma at the time Mr. and Mrs. Griffin purchased their vehicle or after they purchased their vehicle, including the danger that the vehicle's engine will not shut off after the driver exits the vehicle with the key fob which can cause of carbon monoxide poisoning.

73.

Jim Ellis knew or should have known on November 6, 2017, the date of sale, that the defects in the Toyota Tacoma were unreasonably dangerous.

74.

Jim Ellis knew or should have known on November 6, 2017, the date of sale, that the defects in the Toyota Tacoma were causing carbon monoxide poisoning deaths and injuries.

75.

Jim Ellis has or had copies of the 2017 Toyota Tacoma owner's manual, brochures, marketing materials, and other information supplied by Toyota in its possession at the time of the subject truck's sale.

76.

Jim Ellis knew or should have known that Toyota had not communicated or warned consumers about the dangers and defect in the Toyota Tacoma, including the danger that the vehicle's engine will not shut off after the driver exits the vehicle with the key fob which can cause of carbon monoxide poisoning.

## COUNT ONE

### Strict Liability of Toyota

77.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

78.

Toyota is strictly liable to Plaintiff under O.C.G.A. § 51-1-11 and other applicable law for the death of Mr. Griffin and the injuries to Mrs. Griffin because the risks inherent in the design of the subject 2017 Toyota Tacoma outweigh any utility of the chosen design, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to the use for which it was intended. The defects in the Toyota Tacoma's design include the following:

1) The Toyota Tacoma and its keyless ignition system were designed and manufactured in a manner such that the Tacoma's engine fails to shut off and will continue running indefinitely without the presence of a driver or key fob inside the vehicle, thereby failing to prevent foreseeable users and truck owners, like Mr. and Mrs. Griffin, from dangers such as carbon monoxide poisoning;

2) Toyota failed to adequately test the Tacoma or failed to adequately test or analyze how users would perceive and interact with the Tacoma's keyless ignition system and determine whether users and owners, such as Mr. and

21

Mrs. Griffin, would be exposed to unreasonable risks of physical harm in foreseeable scenarios;

3) Toyota knew, or should have known, including from tests or from other similar incidents involving Toyota vehicles with a common design and common defect resulting in injuries and deaths, that the design of the Toyota Tacoma and its keyless ignition system would result in scenarios where foreseeable users and owners, like Mr. and Mrs. Griffin, would suffer injuries and deaths from carbon monoxide poisoning;

4) Toyota failed to warn and/or failed to adequately warn foreseeable users and owners, such as Mr. and Mrs. Griffin, about the risks associated with the design and manufacture of the Toyota Tacoma and its keyless ignition system, including the risks of carbon monoxide poisoning.

79.

The defects in the Toyota Tacoma proximately caused Mr. Griffin's death and Mrs. Griffin's injuries, for which Plaintiff is entitled to damages.

## COUNT TWO

### Negligence of Toyota

80.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

81.

Toyota, as a product designer and manufacturer, owed a duty to the consuming public in general, and Mr. and Mrs. Griffin in particular, to exercise reasonable care to design, test, manufacture, inspect, market, distribute, and sell a product so as to make it free of unreasonable risk of harm to owners, users, and occupants in foreseeable situations.

82.

At the time Toyota designed, tested, manufactured, inspected, marketed, distributed, and sold the 2017 Toyota Tacoma, Toyota could reasonably have foreseen and did, in fact, foresee the occurrence of carbon monoxide poisoning from keyless ignition vehicles, such as the ones described in this Complaint.

83.

Toyota breached its duty to exercise reasonable care to design, test, manufacture, inspect, market, distribute, and sell the Toyota Tacoma so as to make it free of unreasonable risk of harm to owners, users, and occupants in foreseeable situations.

84.

Toyota's negligence proximately caused Mr. Griffin's death and Mrs. Griffin's injuries, for which Plaintiff is entitled to damages.

85.

Alternatively, Toyota's negligence combined with the acts and omissions of the other defendants to proximately cause Mr. Griffin's death and Mrs. Griffin's injuries, for which Plaintiff is entitled to damages.

## COUNT THREE

### Toyota's Failure to Warn

86.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

87.

As a designer and manufacturer of cars and trucks distributed and sold to the public, Toyota has a duty to warn and a duty to adequately warn users and consumers about unreasonably dangerous conditions in its cars and trucks and to remedy such dangerous conditions.

88.

Toyota's failure to warn and/or failure to adequately warn foreseeable users and owners, including Mr. and Mrs. Griffin, of the dangerous conditions in the Toyota Tacoma rendered it defective and unreasonably dangerous to consumers.

89.

Toyota breached its duty when it failed to warn and/or failed to adequately warn users and owners, including Mr. and Mrs. Griffin, of the dangers and defects of the Toyota Tacoma and did not remedy the dangers and defects in the Toyota Tacoma.

90.

Toyota's failure to warn foreseeable users and owners, including Mr. and Mrs. Griffin, of the dangers and defects in the Toyota Tacoma proximately caused Mr. Griffin's death and Mrs. Griffin's injuries, for which Plaintiff is entitled to damages.

## COUNT FOUR

### Punitive Damages Against Toyota

91.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

92.

Toyota acted with conscious indifference to the safety and well-being of the consuming public, including Mr. and Mrs. Griffin, as defined under O.C.G.A. § 51-12-5.1, by designing, testing, manufacturing, inspecting, marketing,

89.

Toyota breached its duty when it failed to warn and/or failed to adequately warn users and owners, including Mr. and Mrs. Griffin, of the dangers and defects of the Toyota Tacoma and did not remedy the dangers and defects in the Toyota Tacoma.

90.

Toyota's failure to warn foreseeable users and owners, including Mr. and Mrs. Griffin, of the dangers and defects in the Toyota Tacoma proximately caused Mr. Griffin's death and Mrs. Griffin's injuries, for which Plaintiff is entitled to damages.

## COUNT FOUR

**Punitive Damages Against Toyota**

91.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

92.

Toyota acted with conscious indifference to the safety and well-being of the consuming public, including Mr. and Mrs. Griffin, as defined under O.C.G.A. § 51-12-5.1, by designing, testing, manufacturing, inspecting, marketing,

distributing, and/or selling the Toyota Tacoma with actual knowledge of the safety risks to life and limb described above.

93.

Toyota continued to design, manufacture, market, distribute, and/or sell the Toyota Tacoma despite knowledge of numerous similar incidents resulting in carbon monoxide poisoning and did not warn consumers of the danger.

94.

Toyota's misconduct was so egregious that it rises to the level of conscious indifference to the safety and well-being of the consuming public as defined under O.C.G.A. § 51-12-5.1.

95.

Toyota's misconduct warrants the imposition of punitive damages.

## COUNT FIVE

**Joint Venture, Alter Ego, Agency, and Piercing the Corporate Veil of Toyota**

96.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

97.

Subsidiaries TMN, TMS, TME, and TMT acted in furtherance and in the scope of their parent corporation TMC's business and joint venture.

98.

There was a unity of interest between TMC and its subsidiaries TMN, TMS, TME, and TMT, such that the separate personalities of the respective entities ceased to exist.

99.

Adherence to the doctrine of separate corporate entities as between TMC and its subsidiaries TMN, TMS, TME, and TMT would promote injustice and/or fraud.

100.

With respect to the negligent acts and omissions causing the death and injuries of Mr. and Mrs. Griffin, TMC and its subsidiaries TMN, TMS, TME, and TMT operated as a single economic entity.

101.

TMC and its subsidiaries TMN, TMS, TME, and TMT disregarded their separateness by commingling the companies' affairs on an interchangeable and/or joint basis and by confusing the otherwise separate properties, records, and/or control of the companies.

102.

TMC and its subsidiaries TMN, TMS, TME, and TMT combined their respective property, supplies, and/or labor in a joint undertaking for profit so as to

render all members of the venture liable for negligence and/or negligence per se of the other members.

<div align="center">103.</div>

Under the doctrine of joint venture, TMC and its subsidiaries TMN, TMS, TME, and/or TMT are jointly and severally liable for the conduct of the other parties to the joint venture, as well as their employees, servants, and agents.

<div align="center">104.</div>

TMC and its subsidiaries TMN, TMS, TME, and TMT operated as a joint venture in their designing, testing, manufacturing, inspecting, marketing, distributing, and selling operations, including all of those operations with respect to the 2017 Toyota Tacoma.

<div align="center">105.</div>

At all times and instances relevant to this Complaint, TMC was responsible for and exercised control over the manner and method of TMN, TMS, TME, and TMT's operations, including all operations with respect to the 2017 Toyota Tacoma.

<div align="center">106.</div>

Under the doctrine of alter ego, TMC is liable for the activities of any business entities so organized and controlled, and their business conducted in such a manner, as to make those entities merely an agency, instrumentality, or alter ego

<div align="center">28</div>

of TMC. TMC's subsidiaries TMN, TMS, TME, and TMT were so organized and controlled, and their business conducted in such a manner, so as to make them merely agents, instrumentalities, or alter egos of TMC.

<div align="center">107.</div>

TMC disregarded the corporate identities of TMN, TMS, TME, and TMT to such a degree that TMC made TMN, TMS, TME, and TMT its alter egos and mere instrumentalities for TMC's transactions and affairs such that the separate identities of the companies no longer existed. TMC and its subsidiaries TMN, TMS, TME, and TMT disregarded the separateness of those legal entities for the purpose of perpetrating a sham to defeat justice as well as tort, statutory, and contractual responsibility.

<div align="center">

## COUNT SIX

### Negligent Sale of Jim Ellis

108.

</div>

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

<div align="center">109.</div>

Jim Ellis has a duty to disclose a defect in a vehicle to consumers if it has actual or constructive knowledge that the vehicle is unreasonably dangerous at the time of sale.

<div align="center">29</div>

110.

Jim Ellis breached its duty when it sold the subject Toyota Tacoma to Mr. and Mrs. Griffin even though it had actual or constructive knowledge that the Toyota Tacoma was unreasonably dangerous and could kill or injure Mr. and Mrs. Griffin by carbon monoxide poisoning because the engine fails to shut off despite the absence of the driver or key fob inside the vehicle.

111.

Jim Ellis's breach of its duty was a proximate cause of Mr. Griffin's death and Mrs. Griffin's injuries, for which Plaintiff is entitled to damages.

## COUNT SEVEN

### Negligent Failure to Warn of Jim Ellis

112.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

113.

Jim Ellis had a duty to warn Mr. and Mrs. Griffin of the dangers of the Toyota Tacoma because at the time of the sale of the Toyota Tacoma, Jim Ellis had actual or constructive knowledge that the product created a danger for them.

114.

Jim Ellis breached its duty when it failed to warn Mr. and Mrs. Griffin of the dangers of the Toyota Tacoma, including that the Tacoma's engine fails to shut off when the driver and key fob are not inside the vehicle, despite Jim Ellis's actual or constructive knowledge of this danger.

115.

Jim Ellis's breach of its duty was a proximate cause of Mr. Griffin's death and Mrs. Griffin's injuries, for which Plaintiff is entitled to damages.

## **COUNT EIGHT**

### **Joint and Several Liability of Defendants**

116.

Plaintiff reincorporates herein paragraphs 1-76 of this Complaint as if re-alleged in full.

117.

Defendants jointly and concurrently committed tortious acts and omissions. Accordingly, all defendants are jointly and severally liable to Plaintiff for the claims described herein.

## DAMAGES SOUGHT

### 118.

Plaintiff reincorporates herein paragraphs 1 – 76 of this Complaint as if re-alleged in full.

### 119.

The damages Plaintiffs seek were proximately caused by the tortious acts and omissions of the defendants, for which defendants are liable.

### 120.

Plaintiff Caroline Griffin, as the surviving spouse of Lee Dixon Griffin, Jr., seeks the following damages:

a. Compensatory damages for the wrongful death of Lee Dixon Griffin, Jr., the measure of which under Georgia law is the full value of the life of Lee Dixon Griffin, Jr., both economic and intangible.

### 121.

Plaintiff Caroline Griffin, as the administrator of the Estate of Lee Dixon Griffin, Jr., deceased, seeks the following damages suffered by Lee Dixon Griffin, Jr.:

a. Shock, fright, and terror Lee Dixon Griffin, Jr. experienced from the time the Toyota Tacoma began emitting carbon monoxide gas inside his home up until his death;

b.  All components of mental and physical pain and suffering endured by Lee
    Dixon Griffin, Jr., from the time the Toyota Tacoma began emitting carbon
    monoxide gas inside his home up until his death;

c.  Funeral and burial expenses; and,

d.  Punitive damages to punish and deter defendants pursuant to O.C.G.A. § 51-
    12-5.1.

<div align="center">122.</div>

Plaintiff Caroline Griffin, individually, seeks the following damages:

a.  All components of mental, emotional, and physical pain and suffering
    endured by Mrs. Griffin from the time the Toyota Tacoma began emitting
    carbon monoxide gas inside her home to the present;

b.  All components of mental, emotional, and physical pain and suffering Mrs.
    Griffin will endure in the future;

c.  Past and future lost enjoyment of life;

d.  Compensatory damages for all past and future economic damages, including
    medical bills, medical expenses, and other necessary future expenses;

e.  Compensatory damages for all past and future economic damages, including
    lost wages and income, as well as diminished capacity to earn;

f.  Shock, fright, and terror, experienced during and after the time the Toyota
    Tacoma began emitting carbon monoxide;

g. The reasonable value of damaged real and personal property;

h. Punitive damages to punish and deter the defendants pursuant to O.C.G.A. § 51-12-5.1; and,

i. All other damages recoverable under Georgia law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following:

A. That process and summonses issue as provided by law, requiring Defendants to appear and answer Plaintiff's Complaint;

B. That service be had upon Defendants as provided by law;

C. That Plaintiff has a **trial by jury** of all issues so triable;

D. That Plaintiff have and recover all damages for losses compensable under Georgia law;

E. That punitive damages be imposed against Toyota;

F. That all expenses of litigation, including attorney's fees, be cast against Defendants; and,

G. For such other and further relief to which Plaintiffs may be entitled at law or equity, as the Court shall deem just and appropriate.

Respectfully submitted, this 11th day of May, 2023.

BUTLER PRATHER LLP

/s/ *Ramsey B. Prather*
JAMES E. BUTLER, JR.
Georgia Bar No. 099625
jim@butlerprather.com
RAMSEY B. PRATHER
Georgia Bar. No. 658395
ramsey@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 87765
dan@butlerprather.com
SARAH R. DALEY
sdaley@butlerprather.com
Georgia Bar No. 644153
P.O. Box 2766
Columbus, GA 31902
Phone: 706-322-1990
Fax: 706-323-2962

**ATTORNEYS FOR PLAINTIFF**