EXHIBIT "1"

**IN THE SUPERIOR/~~STATE~~ COURT OF** \_\_\_\_\_CHEROKEE\_\_\_\_\_ **COUNTY**

**STATE OF GEORGIA**

TOMMIE WALKER AND

CIVIL ACTION
NUMBER \_\_\_23CVE1056\_\_\_\_\_

PATRICIA WALKER

PLAINTIFF

Vs.

STATE FARM INSURANCE COMPANY

DEFENDANT

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT:   STATE FARM INSURANCE COMPANY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Nicholas P. Martin
7000 Peachtree Dunwoody Road
Bld. 1, Ste. 202
Atlanta, GA 30328
770-450-6155
nmartin@nickmartinlaw.com

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of \_\_\_\_6/2/2023_____, _____.

Clerk of Superior Court/State Court

By:_____

Deputy Clerk

SC-1 Rev. 85

**IN THE SUPERIOR/~~STATE~~ COURT OF** _____CHEROKEE_____ **COUNTY**

**STATE OF GEORGIA**

TOMMIE WALKER AND

_____

PATRICIA WALKER

_____

_____

PLAINTIFF

Vs.

STATE FARM INSURANCE COMPANY

_____

_____

_____

DEFENDANT

CIVIL ACTION
NUMBER ___23CVE1056_____

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT:   STATE FARM INSURANCE COMPANY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Nicholas P. Martin
7000 Peachtree Dunwoody Road
Bld. 1, Ste. 202
Atlanta, GA 30328
770-450-6155
nmartin@nickmartinlaw.com

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, _____.
                                    6/2/2023

Clerk of Superior Court/State Court

By: _____

Deputy Clerk

SC-1 Rev. 85

Superior Court of Cherokee County
**E-Filed**
23CVE1056
6/2/2023 1:57 PM  MB
Patty Baker, Clerk
Civil Division

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| TOMMIE WALKER AND PATRICIA WALKER, **Plaintiff,** vs. STATE FARM INSURANCE COMPANY, **Defendant.** | CIVIL ACTION FILE NO.: 23CVE1056 |

## COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH

Plaintiffs Tommie Walker and Patricia Walker (hereinafter " Walkers"), and through their undersigned counsel, and file this Complaint, Demand for Jury Trial and Complaint  for Breach of Contract and Bad Faith against the Defendant  State Farm Insurance Company (hereinafter "State Farm"), and as grounds therefore state as follows:

## INTRODUCTION

This is an action arising out of Defendant's failure to pay insurance proceeds, breach of contract, and bad faith in handling an insurance claim related to the loss incurred on June 2, 2021at the Walker's property located at 352 Hidden Creek Ln, Canton, GA 30114-1284.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs at all time are residents of Canton, Cherokee County, Georgia.

2. Defendant, State Farm Insurance Company  is a corporation organized under the laws of the State of Illinois, with its principal place of business in Illinois. State Farm transacts business in the State of Georgia.

3. This Court has jurisdiction over this matter pursuant to O.C.G.A. § 15-6-8.

4. Venue is proper in this court pursuant to O.C.G.A § 14-2-510 because Defendant transacts its business within this County.

5. At all times relevant hereto, Tommie and Patricia Walker were and are owners of the property located 352 Hidden Creek Ln, Canton, GA  30114-1284.

## FACTUAL BACKGROUND

6. On or about June 2, 2021, the Walkers suffered substantial property damage to their home and personal property due to a loss event.

7. At all relevant times, the Walkers were insured by State Farm under Policy11Q116079, which provides coverage for losses of the nature sustained by the Walkers. See Policy as Exhibit "1" attached.

8. The policy limits at the time of the loss were Coverage A: $284,200, Other Structures: 28,420.00 Coverage B: (Personal Property) $213,150.00 and Coverage C: (ALE) $85.260.00

9. On June 02, 2021, Plaintiff, Walker's neighbor's house caught fire, which was a total loss, and caught two other houses including the Walkers to be on fire.

10. On June 02, 2021, the Plaintiff, Walkers timely submitted and filed a claim with Defendant, State Farm for the fire claim.  Defendant, State Farm assigned the Claim #11-20L2-76K  to the Walkers.

11. On June 03, 2021, Dawn Martin an  Adjuster with Defendant, State Farm, contacted the Walkers to discuss temporary living arrangements. Serve Pro Services, a water restoration company, offered its services and was accepted.

12. On June 04, 2021, Defendant, State Farm representative David reached out to Plaintiff, Walkers and offered Additional Living Expenses (ALE) assistance. Plaintiff Walkers explained that both of them were in serious bad health and state of mind. Plaintiff Walker explained that she needed long-term assistance and better accommodation than what Defendant State Farm

was offering at the time. Plaintiff, Walkers lived in a 5-bedroom house. Plaintiff, Walkers explained they needed at least a three-bedroom house.

13. On  June 07, 2021, a representative from ServePro appeared at the residence of Plaintiff, Walkers unannounced and unscheduled visit. The representative did a walk-through and performed no work on the premises.  Plaintiff, Walkers were unhappy with the employee and did not want him to return to their residence.

14. On June 09, 2021, Plaintiff, Walkers, contracted with General Contractor BH Builder for restoration work.

15. On June 12, 2021, Contractor, BH Builder completed minor work at the residence and issued an invoice.

16. On June 15, 2021, Plaintiff, Walkers hired  ICE PA, a licensed Public Adjusting Firm, to represent them with their fire claim.

17. On July 13, 2021, Defendant, State Farm came to the residence of Plaintiff, Walkers and did an inspection. No inspection of the roof was conducted at this time.

18. On July 29, 2021, Defendant, State Farm came and inspected the roof of Plaintiff's Walkers residence.

19. On August 17, 2021, Plaintiff, Walker's public adjusters ICE PA sent Defendant, State Farm an estimate for $95,815.23 for coverage A Building and Dwelling damages.

20. On September 17, 2021, Defendant State Farm responded and rejected Plaintiff Walker's estimate for damages.

21. On September 17, 2021, Defendant State Farm issued Plaintiff, Walkers their first payment for damages in the amount of $18, 643.67.  This payment was *107 days* after the date of loss.

22. On November 22, 2021, Plaintiff, Walkers hired Zen Dry Restoration for cleanup and HEPA work.  Zen Dry submitted an invoice for the clean-up of $3,500.00.

23. On November 29, 2021, Plaintiff, Walkers hired Metro Contents to do a content estimate.

24. On December 1, 2021, the service provider Metro Contents completed its inspection and sent a detailed content estimate for $52,195.76 to Defendant State Farm (with pictures) on this date.

25. On December 6, 2021, Defendant, State Farm redid its scope of damages and issued updated payment. The scope was done on behalf of the Defendant by Wagner & Martin.

26. On or about December 7, 2021, Defendant, State Farm hired a company Southeast Restoration to perform an inspection of the property and produced a report. The report indicates additional payment should be issued.

27. On December 7, 2021, Defendant State Farm issued a new scope with an updated payment New SF Scope issued with updated payment.

28. On December 10, 2021, Plaintiff, Walkers, through their representative ICE PA sent a demand to Defendant, State Farm invoking appraisal.

29. On December 21, 2021, Defendant State Farm sent a letter dated December 21, 2021, stating they are denying appraisal. Although the letter was dated December 21, 2021, the postal meter mark showed it was mailed on January 6, 2022.

30. January 6, 2022, Plaintiff Walkers noticed moisture on their walls after a heavy rainstorm.

31. On January 6, 2022, Plaintiff, Walkers notified Defendant, State Farm agent Trey Gil who advised Plaintiff, Walkers to tarp the area so the damage does not become worse. Defendant, State Farm Agent advised Plaintiff, Walkers that failure to mitigate the damage could result in the claim being denied.

32. On January 6, 2022, Plaintiff, Walkers informed her public adjusters ICE PA of the damage and who immediately had the roof area tarped area.

33. On January 10, 2022, Plaintiff, Walkers received a letter from Defendant, State Farm issuing a Reservation of Rights (ROR) Reservation of Rights. The date of the ROR was the same date that Defendant denied the request for the appraisal.

34. On or about January 11, 2022, Defendant, State Farm retained the services of National Environmental Solutions to 1) Determine what was damaged by the fire and 2) prepare a restoration plan for the areas that need to be treated at Walker's residence.

35. On January 11, 2022, National Environmental Solutions arrived at the Plaintiff, Walker's residence and did an inspection and tests. Unannounced and never scheduled. Stated it was for an air test.

36. On November 19, 2022, National Environmental Solutions provided a report at the request of the Defendant, State Farm. Although the property was inspected seven (7) months after BH Builders did a minor clean up the report stated that they found Moderate Damage and Server Damage on both levels of the residence. From the 24 samples sent to the lab 6 of them failed the test and showed Soot in both levels of the residence. The report also stated "that many building surfaces contained above-background levels of soot-related particles, suggesting that these surfaces had, indeed, been impacted by smoke damage from the fire".

37. On January 20, 2022, Plaintiff, Walkers opened an Investigation with the Georgia Department of Insurance. File number: 555257447 was assigned.

38. On January 27, 2022, Plaintiff, Walkers filed an Addendum-1 with the Georgia Department of Insurance.

39. On January 28, 2022, Defendant, State Farm sent a letter to Plaintiff, Walkers stating that they don't accept BH Builders or ICE PA assignment of benefits. The letter referenced incorrect information, specifically, it stated that the contract was signed on 6-9-21 before the date of loss. This is clearly a mistake and untrue as the Date of Loss.

40. On January 28, 2022, Plaintiff, Walker, and Defendant, State Farm had a telephone conversation with Walker, Davis,  and State Farm Higgins suggested another restoration company they use known as  Southeast Restoration. Plaintiff, Walker agreed to use this specific company ONLY if Southeast Restoration would discuss the claim and provide their estimate to Plaintiff as they were being hired by Plaintiff,

41. On February 3, 2022, Defendant, State Farm, manager James Higgins sent an email at 11:43 a.m. to Davis in reference to Plaintiff, Walker's claim stating your claim will be addressed by your contractor Southeast Restoration.

42. On February 3, 2022, at 12:31 a.m. Plaintiff representative Davis responded to the email reiterating that Plaintiff would have accepted Southeast Restoration on one condition. Defendant, State Farm did not accept the one condition as such they were not hired by the Walkers.

43. On February 11, 2022, Defendant, State Farm conducted a new scope of damage and issued an updated payment. Defendant, State Farm Matin completed the scope. This was Defendant, State Farm's third scope.

44. On February 15, 2022, Plaintiff, Walker received an estimate from Infinity Roofing & Remolding and provided Defendant, State Farm with this estimate.

45. On February 21, 2022, Plaintiff, Walkers filed an Addendum (2) with the Georgia Department of Insurance.

46. On February 24, 2022, Plaintiff, Walkers terminated the services of the Public Adjusting Firm ICE PA, and a release was signed by the company releasing Plaintiff, Walkers, and no longer representing the Plaintiff.

47. On March 09, 2022, Defendant, State Farm appeared at the residence along with two of their contractors and did an inspection of Walker's property.

48. On April 25, 2022, Defendant, State Farm filed its rebuttal letter to the GA Dept of Insurance.

49. On June 30, 2022, Service Provider Zen Dry Restoration issued an invoice for work completed in the amount of $3500.00.

50. Defendant, State Farm retained Swift Curry Law Firm to handle the Walker file.

51. On July 8, 2022, Defendant, State Farm did a new fourth (4 scope of the damages with updated payment.

52. On July 08, 2022, Defendant, State Farm sent a letter from its legal counsel Swift Curry stating they received Zen Dry Resto invoice for pack out and it was too high.

53. On August 22, 2022, Plaintiff retained FISTEL LAW GROUP P.A. to represent them in the fire claims.

54. On September 15, 2022, FISTEL LAW GROUP retains the expert services of KBH Consulting on behalf of the Plaintiff, Walkers to provide a comprehensive estimate of the residence.

55. On October 26, 2022, Fistel Law Group sent a letter of representation out to the law office of Swift Curry, and Defendant, State Farm.

56. On November 28, 2022, the Law Office of Swift Curry acknowledged receipt of Fistel Law letter of representation.

57. On November 30, 2022, Fistel Law on behalf of the Plaintiff, Walker sent a copy of the expert report and made the demand for payment.

58. On December 20, 2022, a new scope was issued by Defendant, State Farm. Defendant, State Farm conducted its 5th Scope issued with updated payment. (completed by Martin) Dated 12-20-22 (5th Scope)

59. On January 17, 2023, Defendant, State Farm conducted the 6th scope and issued an updated payment.  On March 28, 2022, Defendant, State Farm sent a letter to Plaintiff's counsel with an updated payment from Swift Curry.

60. The Walkers have complied with all applicable provisions of the insurance contract and/or those provisions have been waived by the Defendant, or Defendant is estopped from asserting them.

61. Despite the Walkers' compliance with the insurance contract, the Defendant has refused to adequately compensate the Walkers for their losses, breaching the contract.

62. Notwithstanding the foregoing, Defendant State Farm has failed and/or refused to provide coverage under the Policy for the damages to the insured property, and State Farm has failed to pay the amounts due and has thereby breached its contract of insurance.

63. Defendant State Farm failed and refused to adequately adjust Plaintiff's claimed damages related to the June 2, 2021, date of loss.

64. A dispute arose between Plaintiffs and State Farm as to the amount of the loss.

65. documents and information needed for State Farm to tender insurance benefits.

66. Plaintiff provided State Farm with access to the insured property and it has inspected all claimed damages.

## COUNT 1
## BREACH OF CONTRACT

67. Plaintiff re-assert and re-alleges paragraphs numbered 1through 66 as if fully set forth herein.

68. This is an action for damages for  breach of The Policy that was in effect at the time of the loss.

69. In response to Plaintiff's submission of its insurance claim State Farm sent and assigned multiple insurance adjusters and representatives, to act as its representatives in inspecting, evaluating and estimating the damages.

70. The fire loss and ensuing damages substantially damaged the insured property , which has adversely affected it causing it substantial hardship.

71. Defendant, State Farm has failed and refused to tender all owed insurance benefits due and owing Plaintiffs with regard to the claim arising out of the June 2, 2021, occurrence.  This was a breach of The Policy(Contract).

72. Plaintiff s have suffered a substantial loss regarding the insured property and continues to suffer the loss.

73. Plaintiffs have repeatedly requested that State Farm pay its damages; State Farm has failed and refused  and continues to refuse to pay the full damages despite knowing it is required  to do so.  This was a breach of the Policy.

74. Plaintiffs have done and performed all those matter and things properly required of them under The Policy , or alternatively, have been excused from performance as a result of the acts, representations, omissions, and conduct of State Farm.  Plaintiffs have complied with all condition's precedent to the filing of this action.

75. Notwithstanding the foregoing , State Farm  has failed and refused to provide full coverage under The Policy for the damages to Plaintiff's insured property and State Farm has failed to promptly pay all the amounts due and has thereby breached its contract of insurance.

76. As a direct result of State Farm Insurance Company breach of its insurance contract, Plaintiffs were required to become obligated for attorney fees and costs in connection with the prosecution of this action and Plaintiff is entitled to payment of attorney fees and costs under these circumstances.

**WHEREFORE,** the Plaintiffs, Walkers request this Court enter an award against Defendant, State Farm Insurance, of compensatory damages, pre-judgment interest, costs of this action, attorney fees and such other and further relief as this Court may deem just and proper.

Further, Plaintiffs request a trial by jury on all issues so triable.

## COUNT II:
## BAD FAITH

77. Plaintiff re-asserts and re-alleges paragraphs numbered 1 through 66 as if fully set forth herein.

78. Defendant, State Farm has acted in bad faith by failing to adequately investigate the claim, unjustifiably delaying payment, denying reasonable estimates for repairs and replacement, and failing to communicate effectively and honestly with the Plaintiffs.

79. Defendant has failed to comply with Ga. Code Ann. 33-6-30 of the Unfair Claims Settlement Practices Act and regulations that set forth the guidelines they must file. As a result of its failure, Defendant has acted in bad faith in violation of OCGA 33-4-6 and is entitled to damages.

80. OCGA 33-4-6 provides in relevant part:

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00 whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

81. Defendant's denial of Plaintiff's claim, or refusal to pay the claim, constitutes bad faith under O.C.G.A. § 33-4-6.

82. As a direct result of State Farm Insurance Company's acting in bad faith under its insurance contract, Plaintiffs were required to become obligated for attorney fees and costs in connection with the prosecution of this action and Plaintiff is entitled to payment of attorney fees and costs under OCGA 13-6-11 under these circumstances.

83. Defendant's conduct was unreasonable, and it had no reasonable grounds for denying Plaintiff's claim, or for refusing to pay the claim.

84. As a direct and proximate result of Defendant's bad faith conduct, Plaintiff has suffered damages, including but not limited to, attorney's fees, and litigation costs.

**WHEREFORE,** the Plaintiffs, Walkers request this Court enter an award against Defendant, State Farm Insurance, for compensatory damages, damages for bad faith, pre-judgment interest, costs of this action, attorney fees and such other and further relief as this Court may deem just and proper.

/s/Nicholas P. Martin
NICHOLAS P. MARTIN
GA BAR No.: 168722
Attorney for Plaintiffs

7000 Peachtree Dunwoody Road
Bld. 1, Ste. 202
Atlanta, GA 30328
(770)450-6155 – voice & fax
nmartin@nickmartinlaw.com

EXHIBIT - A



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

State Farm®
**Homeowners
Policy**

Georgia
HW-2111

DEFINITIONS .................................................................1

DEDUCTIBLE ..................................................................5

SECTION I – PROPERTY COVERAGES ....................5

   COVERAGE A – DWELLING ................................5

      Dwelling ...............................................................5

      Other Structures ................................................5

      Property Not Covered ......................................5

   COVERAGE B – PERSONAL PROPERTY ...........5

      Property Covered ..............................................5

      Special Limits of Liability ...............................6

      Property Not Covered ......................................6

   COVERAGE C – LOSS OF USE ...........................8

      Additional Living Expense .............................8

      Fair Rental Value ..............................................8

      Prohibited Use ...................................................8

   SECTION I – ADDITIONAL COVERAGES ...........8

      Debris Removal .................................................8

      Temporary Repairs ..........................................9

      Trees, Shrubs, and Landscaping .................9

      Fire Department Service Charge .................9

      Property Removed ...........................................9

      Credit Card, Bank Fund Transfer Card,
      Forgery, and Counterfeit Money ..................9

      Power Interruption .........................................10

      Refrigerated Products ...................................10

      Arson Reward ...................................................10

      Volcanic Action ...............................................10

      Collapse .............................................................10

      Locks and Remote Devices ..........................11

      Fuel Oil Release ..............................................11

      Tear Out .............................................................11

      Home Certification .........................................11

SECTION I – LOSSES INSURED ...........................12

   COVERAGE A – DWELLING ..............................12

   COVERAGE B – PERSONAL PROPERTY .........12

SECTION I – LOSSES NOT INSURED ...................14

SECTION I – LOSS SETTLEMENT .........................18

   COVERAGE A – DWELLING ..............................16

      A1 – Replacement Cost Loss Settlement –
      Similar Construction .....................................18

      A2 – Replacement Cost Loss Settlement –
      Common Construction ..................................19

   COVERAGE B – PERSONAL PROPERTY .........19

      B1 – Limited Replacement Cost Loss
      Settlement .......................................................19

      B2 – Depreciated Loss Settlement ............20

SECTION I – CONDITIONS ......................................20

      Insurable Interest and Limit of Liability ....20

      Your Duties After Loss ...................................20

      Loss to a Pair or Set ......................................21

      Appraisal ...........................................................21

      Other Insurance ..............................................22

      Suit Against Us .................................................22

      Our Option ........................................................22

      Loss Payment ..................................................22

      Abandonment of Property ............................22

      Mortgagee Clause ..........................................22

      No Benefit to Bailee ......................................23

      Recovered Property ........................................23

      Assignment of Claim .....................................23

SECTION II – LIABILITY COVERAGES ..................23

   COVERAGE L – PERSONAL LIABILITY .............23

   COVERAGE M – MEDICAL PAYMENTS TO
   OTHERS .................................................................23

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

SECTION II – ADDITIONAL COVERAGES............24
    Claim Expenses ..........................................24
    First Aid Expenses .....................................24
    Damage to Property of Others ...................24
SECTION II – EXCLUSIONS ............................25
SECTION II – CONDITIONS ............................28
    Limit of Liability..........................................28
    Severability of Insurance ...........................28
    Duties After Loss .......................................28
    Coverage M Requirements .........................29
    Payment of Claim – Coverage M or Damage
    to Property of Others ..................................29
    Suit Against Us...........................................29
    Bankruptcy of an Insured ...........................29
    Other Insurance – Coverage L ...................29
SECTION I AND SECTION II – CONDITIONS.......29
    Policy Period..............................................29
    Concealment or Fraud................................29
    Liberalization Clause .................................30
    Waiver or Change of Policy Provisions ......30
    Cancellation...............................................30
    Nonrenewal................................................30
    Assignment of Policy..................................31

Subrogation and Reimbursement.................31
Death ..........................................................31
Conformity to State Law .............................31
Premium .....................................................31
Right to Inspect...........................................32
Joint and Individual Interests .....................32
Change of Policy Address ..........................32
Electronic Delivery......................................32
Our Rights Regarding Claim Information......32
Duties Regarding Claim Information............33
OPTIONAL POLICY PROVISIONS ...................33
    Option AI – Additional Insured ...................33
    Option BP – Business Property ...................33
    Option BU – Business Pursuits ...................33
    Option FA – Firearms .................................34
    Option ID – Increased Dwelling Limit .........34
    Option IO – Incidental Business .................35
    Option JF – Jewelry and Furs.....................35
    Option OL – Building Ordinance or Law.......36
    Option SG – Silverware and Goldware?
    Theft ..........................................................37

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

# HOMEOWNERS POLICY

## AGREEMENT

We agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



A *building structure* includes:

a. the foundation supporting the structure, including:

   (1) slabs;

   (2) basement walls;

   (3) crawl space walls;

   (4) footings; and

   (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

4. **"business"** means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

e. ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

5. **"Declarations"** means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

6. **"diminution in value"** means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7. **"dwelling"** means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

8. **"fungus"** means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9. **"insured"** means:

a. *you*;

b. *your relatives*; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, *insured* also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by *you* or a person included in 9.b. or 9.c. above. A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 9.b. or 9.c. above.

10. **"insured location"** means:

a. the *residence premises*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c. any premises used by *you* in connection with the premises included in 10.a. or 10.b. above;

d. any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e. land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f. individual or family cemetery plots or burial vaults owned by an *insured*;

g. any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h. vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

   (1) farm land;

   (2) land containing a residence; or

   (3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. **"loss insured"** means a loss as described under **SECTION I – LOSSES INSURED, COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

12. **"motor vehicle"**, when used in Section II of this policy, means:

   a. a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

   c. a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

   d. a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

   e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, tele-handler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

   f. any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not *motor vehicles*:

   a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.e. through 12.e. above;

   b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

   c. a motorized golf cart while used for golfing purposes;

   d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or



e.   a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13.   *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.   *bodily injury*; or

b.   *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one *occurrence*.

14.   *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

15.   *"relative"* means any person related to *you* by:

a.   blood;

b.   adoption;

c.   marriage; or

d.   civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

16.   *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

17.   *"residence premises"* means:

a.   the one, two, three, or four family dwelling, other structures and grounds; or

b.   that part of any other *building structure*;

where *you* reside and which is shown in the *Declarations*.

18.   *"State Farm Companies"* means one or more of the following:

a.   State Farm Mutual Automobile Insurance Company;

b.   State Farm Fire and Casualty Company; and

c.   subsidiaries or affiliates of either 18.a. or 18.b. above.

19.   *"vacant dwelling"* means:

a.   a dwelling:

(1)   that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2)   where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b.   A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1)   being built as a new structure;

(2)   being repaired due to damage otherwise covered by this policy; or

(3)   undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20.   *"we"*, *"us"*, and *"our"* mean the Company shown in the *Declarations*.

21.   *"you"* and *"your"* mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a.   a spouse of a "Named Insured";

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

4   HW-2111



b.   a party to a civil union with a "Named Insured";

c.   a domestic partner of a "Named Insured"; or

d.   a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, we will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1.   **Dwelling.** *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2.   **Other Structures.** *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

     *We* do not cover other structures:

     a.   not permanently attached to or otherwise forming a part of the realty;

     b.   used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

          (1)   duties of the *insured's* employment by another; and

          (2)   performed solely by the *insured*; or

     c.   rented or held for rental unless:

          (1)   rented to a person who is a tenant of the *dwelling*;

          (2)   rented for use solely as a private garage; or

          (3)   rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3.   **Property Not Covered.** *We* do not cover:

     a.   land, including the land necessary to support any Coverage A property. *We* also do not cover:

          (1)   any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

          (2)   the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

     b.   trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES**, Trees, Shrubs, and Landscaping; or

     c.   systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1.   **Property Covered.**

     a.   *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, we will cover personal property:

          (1)   owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

          (2)   owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

© Copyright State Farm Mutual Automobile Insurance Company, 2017

HW-2111



(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to **you**.

b. **We** cover personal property usually located at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after **you** start moving the property there. If the **residence premises is** a newly acquired principal residence, personal property in **your** immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an **insured** while located at a residence away from the **residence premises**.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b. $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a **business**, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound,

and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashier's checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered. We** do not cover:

a. articles separately described and specifically insured in this or any other insurance;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017



b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item K. However, we do cover those vehicles or machines:

   (1) that are:

      (a) not designed for travel on public roads; and

      (b) not subject to motor vehicle registration;

   (2) and that are:

      (a) used primarily to service the *insured location*; or

      (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to *you*;

g. property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

   (1) in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

   (2) on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the *residence premises*;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017



**COVERAGE C – LOSS OF USE**

The most we will pay for the sum of all losses combined under Additional Living Expense, Fair Rental Value, and Prohibited Use is the limit of liability shown in the *Declarations* for Coverage C – Loss of Use.

1. Additional Living Expense. When a *loss insured* causes the *residence premises* to become uninhabitable, we will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

    a. the time required to repair or replace the premises;

    b. the time required for *your* household to settle elsewhere; or

    c. 24 months.

    This period of time is not limited by the expiration of this policy.

    We will not pay more than the limit of liability shown in the *Declarations* for Coverage C – Loss of Use. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. Fair Rental Value. When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. Prohibited Use. We will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

    a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy

if the damage had occurred to property on the *residence premises*;

    b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

    c. the action of the civil authority is taken in response to:

        (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

        (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

        (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

    We will not pay for loss or expense due to cancellation of a lease or agreement.

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. Debris Removal. *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

    a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping.

    b. We will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

        (1) the tree has caused a *loss insured* to Coverage A property; or



(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

   (a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

   (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, we will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the *residence premises*), Vandalism or malicious mischief, or Theft.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for COVERAGE A – DWELLING. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property

for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

   a. *We* will pay up to $1,000 for:

     (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

     (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

     (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage

*We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

   c. Defense:

     (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

     (2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

     (3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-7111



against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines of the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. airborne volcanic shock waves;

    b. ash, dust, or particulate matter; or

    c. lava flow.

    *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

    a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

       (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

       (2) substantial structural impairment;

       (3) imminent or threatened collapse;

       (4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

       (5) a part of a *building structure* that is standing even if:

           (a) it has separated from another part of the *building structure*; or

           (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

    b. The collapse must be directly and immediately caused by one or more of the following:

       (1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

       (2) decay or deterioration of, or damage from animals, birds, or insects to:

           (a) a connector; or

           (b) a structural member of a *building structure*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW010



The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above, unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** We will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** We will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. We will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, we will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. We will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, we will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

We will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2013

HW-2111



To find the limits on a given date:

1. divide the index on that date by the index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT IN-SURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

### COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a. This includes:

      (1) the impact of a vehicle;

      (2) an object propelled from the tire or body of a vehicle;

      (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

      (4) a vehicle door or trunk lid being closed on personal property.

   b. This peril does not include loss:

      (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

      (2) caused by shifting of the load being carried in or on a vehicle; or

      (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke,** meaning abrupt and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:



(1). committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2). in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3). from the part of a *residence premises* rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

    (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1). property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2). watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3). trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy;

10. Falling objects. This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. Weight of ice, snow, or sleet that causes damage to property contained in a structure.

12. Abrupt and accidental discharge or overflow of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

    (1) freezing;

    (2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

    (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

    (1) condensation or the presence of humidity, moisture, or vapor; or

    (2) seepage or leakage of water, steam, or sewage that is:

© Copyright, State Farm Mutual Automobile Insurance Company, 2011



(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. Abrupt and accidental tearing asunder, cracking, burning, or bulging of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. Freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless you have used reasonable care to prevent freezing; or

b. loss on the *residence premises* unless *you* have used reasonable care to:

(1) maintain heat in the *building structure* at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the *building structure* is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the *building structure* at 55 degrees Fahrenheit or higher for coverage to apply.

15. Abrupt and accidental damage to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $3,000 under this peril for each damaged item described above.

16. Breakage of glass, meaning damage to personal property caused by breakage of glass that is a part of a structure on the *residence premises*. *We* will not pay for loss or damage to the glass.

17. Wild bears or deer, meaning damage caused by wild bears or deer to property located in a *building structure*.

## SECTION I — LOSSES NOT INSURED

1. We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Collapse;

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or

of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if *you* have used reasonable care to:

(1) maintain heat in the *building structure* at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the *building structure* is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the



*building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

   (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

   (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

   (1) and is:

     (a) continuous;

     (b) repeating;

     (c) gradual;

     (d) intermittent;

     (e) slow; or

     (f) trickling; and

   (2) from a:

     (a) heating, air conditioning, or automatic fire protective sprinkler system;

     (b) household appliance; or

     (c) plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *Insured*;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES IN-SURED, COVERAGE B – PERSONAL PROPERTY.**

   (1) Contaminants and pollutants include but are not limited to any:

     (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

     (b) contaminants or pollutants resulting from any natural resource extraction activities; or

     (c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release.**

   (2) *We* also will not pay for:

     (a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

     (b) the cost to extract contaminants or pollutants from land, water, or air; or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

15

3, Copyright, State Farm Mutual automobile Insurance Company, 2017

HW-2111





(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

j. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

k. all animals, birds, or insects.

(1) This includes:

(a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

(b) costs to remove animals, birds, or insects from the covered property; and

(c) costs to prevent the animals, birds, or insects from returning to the property;

(2) However, we will pay for:

(a) losses caused by wild bears or deer; and

(b) the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. Earth Movement, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

(1) earthquake;

(2) landslide, mudslide, or mudflow;

(3) sinkhole or subsidence;

(4) movement resulting from:

(a) improper compaction,

(b) site selection;

(c) natural resource extraction activities; or

(d) excavation;

(5) erosion;

(6) pressure by surface or subsurface earth or fill; or

(7) any volcanic activity, except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Volcanic Action.

However, *we* will pay for any accidental direct physical loss by fire; explosion other than explosion of a volcano; or theft resulting from earth movement, provided the resulting loss is itself a loss insured.

c. Water, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-3111



of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be

considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g. **Fungus**, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus*;

(2) any remediation of *fungus*, including the cost or expense to:

   (a) remove the *fungus* from covered property or to repair, restore, or replace that property;

   (b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

   (c) contain, treat, detoxify, neutralize or dispose of in any way respond to or assess the effects of the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, item g. does not apply if *fungus* results from an accidental direct physical loss caused by fire or lightning.

h. **Intentional Losses**. If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017



This does not apply to:

1) an *insured* who did not participate in, co-operate in, or contribute to causing or pro-curing the loss; or

2) a claim of an innocent *insured*, to the ex-tent of the innocent *insured's* interest in the covered property, if the loss:

   (a) arises out of family violence against an innocent *insured*; and

   (b) is caused by an intentional act of an *insured* against whom a family vio-lence complaint is brought.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization, or governmental

body, whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault, or un-soundness in:

     (1) planning, zoning, development, surveying, or siting;

     (2) design, specifications, workmanship, re-pair, construction, renovation, remodeling, grading, or compaction;

     (3) materials used in repair, construction, renovation, remodeling, grading, or com-paction; or

     (4) maintenance;

   of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

   c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Sec-tion.

## SECTION I – LOSS SETTLEMENT

Only the Loss Settlement Provisions shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

### COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Sim-ilar Construction.**

   a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

     (1) until actual repair or replacement is com-pleted, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown

in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

     (2) when the repair or replacement is actually completed, *we* will pay the covered addi-tional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

     (3) to receive any additional payments on a replacement cost basis, *you* must com-plete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

     (4) *we* will not pay for increased costs result-ing from enforcement of any ordinance or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



law regulating the construction, repair, or demolition of a *building structure* or other structure; except as provided under OP-TIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

b.   Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for COVERAGE A – Other Structures.

2.   A2 – Replacement Cost Loss Settlement – Common Construction.

a.   *We* will pay the cost to repair or replace with common construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

(1)   *we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. *We* will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2)   until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3)   when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4)   to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within

two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5)   *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure; except as provided under OP-TIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

b.   Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for COVERAGE A – Other Structures.

## COVERAGE B – PERSONAL PROPERTY

1.   B1 – Limited Replacement Cost Loss Settlement.

a.   *We* will pay the cost to repair or replace property covered under SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY, except for property listed in item b. below, subject to the following:

(1)   until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2)   after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3)   if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

b.   *We* will pay market value at the time of loss for:

(1)   antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2)   articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3)   property not useful for its intended purpose.

®. Copyright, State Farm Mutual Automobile Insurance Company, 2017



However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

   a. *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY,** except for property listed in item b. below.

   b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

   a. to the *insured* for an amount greater than the *insured's* interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

   a. give immediate notice to *us* or *our* agent and also notify:

(1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss and also:

(1) make reasonable and necessary temporary repairs required to protect the property; and

(2) keep an accurate record of repair expenses;

   c. prepare an inventory of damaged or stolen personal property:

(1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide *us* with any requested records and documents and allow *us* to make copies;

(3) while not in the presence of any other *insured*:

    (a) give statements; and

    (b) submit to examinations under oath; and

(4) produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

   e. submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2411



(1) the time and cause of loss;

(2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may choose to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of

the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

(2) the party requesting the selection described in item c.(1) must provide the other party:

(a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b) a copy of the written application; and

(3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

(3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute;

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1) has performed services for either party with respect to the claim at issue in the appraisal; or

(2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by *you* and *us*.

g. *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1) any other questions of fact;

(2) questions of law;

(3) questions of coverage;

(4) other contractual issues; or

(5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only *our* share of the loss. *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against us unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

7. **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes *our* property.

8. **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive *your* proof of loss and:

a. reach agreement with *you*;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with *us*;

9. **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111



h. If we deny *your* claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If we cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.   Proof of mailing will be proof of notice.

d. If *we* pay the mortgagee for any loss and deny payment to *you*:

(1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage

plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice.  At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property.  If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable.  *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice.  *We* may make any investigation and settle any claim or suit that *we* decide is appropriate.  *Our* obligation to defend any claim or suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability.  *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*.  Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional, nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

a. arises out of a condition on the *insured location* or the ways immediately adjoining;

21

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017



b. is caused by the activities of an *insured*;

c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

## SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages we pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury*

covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for Damage to Property of Others for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

      (4) arising out of:

         (a) *business* pursuits;

         (b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

         (c) a condition on the *insured location* or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

© Copyright, State Farm Mutual Automobile Insurance Company 2017



## SECTION II – EXCLUSIONS

1.  Coverage L and Coverage M do not apply to:

    a.  *bodily injury* or *property damage* that:

        (1)  was a result of a:

             (a)  willful and malicious; or

             (b)  criminal;

             act or omission of the *insured*;

        (2)  was intended by the *insured*; or

        (3)  would have been expected by the *insured* based on a reasonable person standard.

        However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

        Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

        (1)  *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

        (2)  *bodily injury* or *property damage* was of a different kind, quality, or degree than was expected or intended;

        (3)  *insured* lacked the mental capacity to control his or her conduct;

        (4)  *insured* was not charged with or convicted of a criminal act or omission; or

        (5)  *insured* was impaired by drugs or alcohol;

    b.  *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits;

    c.  *bodily injury* or *property damage* arising out of the rental of any part of any premises by any *insured*. This exclusion does not apply:

        (1)  to the rental of the *residence premises*:

             (a)  either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

             (b)  in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

             (c)  in part, as an office, school, studio, or private garage;

        (2)  when the *dwelling* on the *residence premises* is a two, three, or four family *dwelling* and *you* occupy one part, and rent the other part to others;

        (3)  to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

        (4)  to activities that are ordinarily incident to non-*business* pursuits;

    d.  *bodily injury* or *property damage* arising out of the rendering or failing to render professional services;

    e.  *bodily injury* or *property damage* arising out of any premises currently owned or rented to any *insured* which is not an *insured location*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*;

    f.  *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading, or unloading of:

        (1)  an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

             (a)  solely for recreational or hobby purposes;

             (b)  designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) *property damage* to any aircraft; or

(b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion;

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017



(b)   any employee of any *insured*; or

(c)   any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k.   *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l.   *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to:

(1)   the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional; or

(2)   an *insured* who did not knowingly participate or cooperate in the acts described in paragraph l. above;

m.   *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1)   sexual harassment, sexual molestation, or sexual misconduct;

(2)   physical or mental abuse; or

(3)   corporal punishment;

by the *insured*;

n.   *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

We also do not cover any loss, cost, or expense arising out of any:

(1)   request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2)   claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

o.   *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2.   Coverage L does not apply to:

a.   liability:

(1)   for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2)   imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b.   *property damage* to property owned by any *insured* at the time of the *occurrence*;

c.   *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d.   *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers'

37

© Copyright, State Farm Mutual Automobile Insurance Company, 2017



compensation, non-occupational disability, or occupational disease law;

e. *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred. This includes but is not limited to *bodily injury* or *property damage* arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*. This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured. No additional limits of coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.** In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties

that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017



(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *Insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES**, *Damage to Property of Others*, exhibit the damaged property if within the *Insured's* control; and

e. the *Insured* must not, except at the *Insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *Insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *Insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *Insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *Insured* will not relieve *us* of *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.**

a. This policy is void as to *you* and any other *Insured* if *you* or any other *Insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

(1) on which *we* rely and are either:

(a) material; or

(b) made with intent to deceive; or

(2) that contribute to the loss.

b. No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

(1) increases the risk at the time of loss; or

(2) contributes to the loss.

Item 2.b. does not apply to failure to tender payment of premium.

c. Violation of this condition by an *Insured* does not apply to a claim of an innocent *Insured*, to



the extent of the innocent *insured's* interest in the covered property, if the loss:

(1) arises out of family violence against an innocent *insured*; and

(2) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. **Liberalization Clause.** If we adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. If only *your* interest is affected, the effective date of cancellation will be the later of:

(1) the date we receive *your* notice of cancellation; or

(2) the date specified in the notice.

However, upon receipt of *your* notice of cancellation, we may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

b. *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. Proof of mailing will be sufficient proof of notice.

(1) When *you* have not paid the premium, *we* may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or

*our* agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

(a) if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

(b) if the risk has changed substantially since this policy was issued.

*We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

e. If *we* cancel this policy, we will notify any mortgages shown in this policy in accordance with Georgia state insurance law.

6. **Nonrenewal.** *We* may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017.

HW-2111





If we elect not to renew this policy, we will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

7. **Assignment of Policy.** Assignment of this policy will be void and we will not recognize any such assignment, unless we give our written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

     (1) Applicable to SECTION I:

      If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

     (2) Applicable to SECTION II:

      If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

     Subrogation does not apply under Section II to **Medical Payments to Others or Damage to Property of Others.**

   b. **Reimbursement.**

     If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

     (1) hold in trust for *us* the proceeds of any recovery; and

     (2) reimburse *us* to the extent of *our* payment

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. *Insured* includes:

     (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

     (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

   a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations.*

   b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

   c. The premium for this policy may vary based upon:

     (1) the purchase of other products or services from the *State Farm Companies;*

     (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies.* The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

     (3) an agreement concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



of which *you* are a member, employee, subscriber, licensee, or franchisee.

h. *Your* purchase of this policy may allow:

(1) *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

(2) the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

**12 Right to Inspect.**

a. *We* have the right but are not obligated to perform the following:

(1) make inspections and surveys of the *insured location* at any time;

(2) provide *you* with reports on conditions *we* find; or

(3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b. *We* do not:

(1) make safety inspections;

(2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

(3) warrant that conditions are safe or healthful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

13. **Joint and Individual Interests.** When there are two or more Named Insureds, each acts for all to cancel or change this policy.

14. **Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the **Declarations** and in *our* records to the most recent address provided to *us* by:

a. *you*; or

b. the United States Postal Service.

15. **Electronic Delivery.** With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

16. **Our Rights Regarding Claim Information.**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to 16.a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111



c. *We* may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of *our* business functions;

(2) to meet *our* reporting obligations to insurance regulators;

(3) to meet *our* reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. *Our* rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

17. **Duties Regarding Claim Information.** An *insured* or a legal representative acting on an *insured's* behalf must provide *us* with any requested authorizations related to the claim. *Our* rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the *Declarations* and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of *insured* is extended to include the person or organization shown in the *Declarations* as an Additional Insured or whose name is on file with *us*. Coverage is with respect to:

1. SECTION I – Coverage A, Coverage B, or Coverage C; or

2. SECTION II – Coverage L and Coverage M but only with respect to the *residence premises*. This coverage does not apply to *bodily injury* to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the *Declarations*.

**Option BP – Business Property.** The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, Item b., for property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the *Declarations* for this option.

**Option BU – Business Pursuits.** SECTION II – EXCLUSIONS, Item 1.b. is modified as follows:

1. Section II coverage applies to the *business* pursuits of an *insured* who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for *bodily injury* or *property damage* arising out of a *business* owned or financially controlled by the *insured* or by a partnership of which the *insured* is a partner or member;

b. for *bodily injury* or *property damage* arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering, or industrial design services;

(2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

33

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

HW-2111



c.    for *bodily injury* to a fellow employee of the *insured* injured in the course of employment; or

d.    when the *insured* is a member of the faculty or teaching staff of a school or college:

(1)    for *bodily injury* or *property damage* arising out of the maintenance, use, loading, or unloading of:

(a)    draft or saddle animals, including vehicles for use with them; or

(b)    aircraft, *motor vehicles*, recreational *motor vehicles* or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned, operated, or hired by or for the *insured* or employer of the *insured* or used by the *insured* for the purpose of instruction in the use thereof; or

(2)    under Coverage B for *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1.    We will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a.    mechanical breakdown, wear and tear, or gradual deterioration;

b.    all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, we will pay for losses caused by wild bears or deer;

c.    any process of refinishing, renovating, or repairing;

d.    dampness of atmosphere or extremes of temperatures;

e.    inherent defect or faulty manufacture;

f.    rust, fouling, or explosion of firearms;

g.    breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

h.    infidelity of an *insured's* employees or persons to whom the insured property may be entrusted or rented;

2.    *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3.    *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4.    *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option ID – Increased Dwelling Limit.** We will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the Loss Settlement Provision shown in the *Declarations*.

If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* exceeds the applicable limit of liability shown in the *Declarations*, we will pay the additional amounts not to exceed:

1.    the Option ID limit of liability shown in the *Declarations* to repair or replace the *dwelling*; or

2.    10% of the Option ID limit of liability to repair or replace *building structures* covered under **COVERAGE A – DWELLING**, Other Structures.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more, or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the *Declarations* if *your* fail to notify *us* of the increased value within 90 days.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1. **COVERAGE A – DWELLING**; Other Structures, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property while off the *residence premises*. These limits are in addition to the COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability on property used or intended for use in a *business*.

3. Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

5. This insurance does not apply to:

   a. *bodily injury* to an employee of an *insured* arising out of the *residence premises* as an incidental *business* other than to a *residence employee* while engaged in the employee's employment by an *insured*;

   b. *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*;

---

c. liability arising out of any acts, errors, or omissions of an *insured*, or any other person for whose acts an *insured* is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an *insured's* incidental *business* involving data processing, computer consulting, or computer programming; or

d. any claim made or suit brought against any *insured* by:

   (1) any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a) any *insured*;

      (b) any employee of any *insured*; or

      (c) any other person actually or apparently acting on behalf of any *insured*; or

   (2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a) any *insured*;

      (b) any employee of any *insured*; or

      (c) any other person actually or apparently acting on behalf of any *insured*.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of SECTION I – LOSSES

---

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017




INSURED, COVERAGE B – PERSONAL PROPERTY, Theft apply to Option JF.

The following additional provisions apply:

1. We will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, we will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

Option OL – Building Ordinance or Law.

1. *Coverage Provided.* The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the *Declarations* of this Coverage A limit shown in the *Declarations* at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to *building* structures on the *residence premises*.

2. *Damaged Portions of Building Structure.* When a *building* structure covered under COVERAGE A – DWELLING is damaged by a *loss insured*, we will pay for the increased cost to repair or rebuild the physically damaged portion of the *building* structure caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the

requirement is in effect at the time the *loss insured* occurs.

3. *Undamaged Portions of Damaged Building Structure.* When a *building* structure covered under COVERAGE A – DWELLING is damaged by a *loss insured*, we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the *building* structure caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs; and

   b. loss to the undamaged portion of the *building* structure caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the enforcement requires the demolition of portions of the same *building* structure not damaged by the same *loss insured*;

      (3) the ordinance or law regulates the construction or repair of the *building* structure, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

   c. legally required changes to the undamaged portion of the *building* structure caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the requirement is in effect at the time the *loss insured* occurs; and

      (3) the legally required changes are made to the undamaged portions of specific *building* structure features, systems, or components that have been physically damaged by the *loss insured*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111



36

*We will not pay for legally required changes to specific building structure features, systems, or components that have not been physically damaged by the loss insured.*

4. **Building Ordinance or Law Coverage Limitations.**

   a. *We will not pay for any increased cost of construction:*

      (1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

      (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

   b. *We will not pay more under this coverage than the amount you actually spend:*

      (1) for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

   *We will not pay for more than a building structure of the same height, floor area, and style on the same or similar premises as the building structure, subject to the limit provided in paragraph 1. Coverage Provided of this option.*

   **Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY**, Special Limits of Liability, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Blank Page of Pamphlet

State Farm Fire and Casualty Company
*A Stock Company With Home Offices in Bloomington, Illinois*

Po Box 88049
Atlanta GA 30356-9901

≈ StateFarm

ATB        004197 3201    'U-27-2160-FC03  F  H  W
WALKER, PATRICIA & TOMMIE
352 HIDDEN CREEK LN
CANTON GA  30114-1284



# DECLARATIONS

COVERAGE SUMMARY   FEB 10 2022

**AMOUNT DUE:**                                    None
Payment is due by  TO BE PAID BY MORTGAGEE

**Policy Number:**   11-Q1-1607-8

**Policy Period:**   12 Months
**Effective Dates:** JUN 20 2021 to JUN 20 2022
The policy period begins and ends at 12:01 am standard
time at the residence premises.

**Your State Farm Agent**
TREY GIL
500 SUN VALLEY DR STE B3
ROSWELL GA  30076-5634

Phone: (770) 393-0350

## HOMEOWNERS POLICY

**Location of Residence Premises**
352 HIDDEN CREEK LN
CANTON GA  30114-1284

**Construction:**     Frame
**Year Built:**       2007

**Roof Material:** Composition Shingle
**Roof Installation Year:**  Default to Year Built

**Automatic Renewal**
If the POLICY PERIOD is shown as 12 MONTHS, this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

## PREMIUM

Annual Premium                                                          $  1,605.00
*Your premium has already been adjusted by the following:*
Home/Auto
Utility Rating Cr
Claim Record
Loyal Customer

**Total Premium**                                                       $  1,605.00

StateFarm

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
| --- | --- |
| WALKER, PATRICIA & TOMMIE | |

**Mortgagee**
RUSHMORE LOAN MANAGEMENT
SERVICES LLC  ISAOA ATIMA
PO BOX 692409
SAN ANTONIO TX 78269-2409

Loan Number:
7602414112

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | | Limit of Liability |
| --- | --- | --- |
| A Dwelling | $ | 264,200 |
| Other Structures | $ | 26,420 |
| B Personal Property | $ | 213,150 |
| C Loss of Use | $ | 85,260 |
| Fungus (including Mold) Limited Coverage | $ | 10,000 |

**Additional Coverages**

| | |
| --- | --- |
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | | Limit of Liability |
| --- | --- | --- |
| L Personal Liability (Each Occurrence) | $ | 300,000 |
| Damage to the Property of Others | $ | 1,000 |
| M Medical Payments to Others (Each Person) | $ | 5,000 |

## INFLATION

Inflation Coverage Index: 281.3

## DEDUCTIBLES

| Section I Deductible | | Deductible Amount |
| --- | --- | --- |
| All Losses  1/2% | $ | 1,421 |

## LOSS SETTLEMENT PROVISIONS

A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B



11-O1-1607-9                                                                           StateFarm

NAME, OPTIONS, AND ENDORSEMENTS

| HW-2111 | Homeowners Policy |
| HO-2584 | Fungus (Incl Mold) Limited Cov |
| HO-2356 | Amendatory End - Liability |
| HO-2444 | Back-Up Of Sewer Or Drain - |
|         | 5% of Coverage A/$ 14,210 |
| HO-2465 | Fungus (Incl Mold) Liability |
| HO-2231.1 | Amendatory Endorsement |
| Option JF | Jewelry and Furs $1,500 Each |
|         | Article/$2,500 Aggregate |
| Option ID | Increase Dwlg Up to $  56,840 |
| Option OL | Ordinance/Law  10%/$  28,420 |
| Option BP | Business Property  $ 5,000 |

Other limits and exclusions may apply - refer to your policy

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

Participating Policy

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yowell*                                    *Michael L. Tipsord*
Secretary                                              President

③

## HO-2594 FUNGUS (INCLUDING MOLD) LIMITED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY.

SECTION I — LOSSES NOT INSURED 2.g. Fungus (SECTION I — LOSSES NOT INSURED 1.g. If you have a RENTERS POLICY), does not apply to the extent coverage is provided by this endorsement.

**SECTION I — ADDITIONAL COVERAGES**

The following is added:

a. If fungus is the result of a loss insured other than fire or lightning, we will pay for:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair, or replacement of that property, by fungus;

(2) any remediation of fungus, including the cost or expense to:

(a) remove the fungus from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the building structure or other property as needed to gain access to the fungus; or

(c) contain, treat, detoxify, neutralize, or dispose of in any way respond to or assess the effects of the fungus; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of fungus, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

h. We do not cover fungus that is the result of:

(1) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(a) and is:

i. continuous;

ii. repeating;

iii. gradual;

iv. intermittent;

v. slow; or

vi. trickling; and

(b) from a:

i. heating, air conditioning, or automatic fire protective sprinkler system;

ii. household appliance; or

iii. plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

We also will not pay for losses from condensation on the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item b. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the insured.

(2) defect, weakness, inadequacy, fault, or unsoundness in:

(a) planning, zoning, development, surveying, or siting;

(b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(c) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(d) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

c. This coverage applies only if:

(1) we receive immediate notice of the occurrence of the loss insured that is alleged to have resulted in fungus, and remediation begins as soon as possible; and

(2) all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence of the loss insured.



CONTINUED

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HO-2594
Page 1 of 2

d. The most *we* will pay for this coverage, in any one policy period, is the limit of insurance shown on the *Declarations for this endorsement. This limit* applies only to *fungus* resulting from a *loss insured* other than fire or lightning regardless of:

(1) the number of *losses insured* that combine or contribute to the presence of resulting *fungus*; or

(2) the number of claims made during the policy period.

*This limit includes any payments for SECTION I – ADDITIONAL COVERAGES and COVERAGE C – LOSS OF USE. Any payments made for this coverage are part of and not in addition to the limit of insurance that applies to covered property.*

All other policy provisions apply.

HO-2584

© Copyright, State Farm Mutual Automobile Insurance Company, 2015

## AMENDATORY ENDORSEMENT – SECTION II – LIABILITY COVERAGES

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

### SECTION II – EXCLUSIONS

Under SECTION II – EXCLUSIONS, 2.e. and 2.c. are replaced by the following:

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to:

(a) liability for damages that the *insured* would have in absence of the contract or agreement; or

(b) written contracts:

(i) that directly relate to the ownership, maintenance, or use of any *insured location*; or

(ii) when the liability of others is assumed by *you* prior to the occurrence;

unless excluded elsewhere in the policy;

c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by:

(1) fire;

(2) smoke;

(3) explosion;

(4) abrupt and accidental damage from water; or

(5) household pets, up to $500 in excess of *your* security deposit;

All other policy provisions apply.

HO-2356

© Copyright, State Farm Mutual Automobile Insurance Company, 2015



(CONTINUED)

11-01-1607-9      007010

## HO-2444 BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – ADDITIONAL COVERAGES:**

Back-up of Sewer or Drain. We will pay for accidental direct physical loss to the *dwelling* and covered personal property located within the *dwelling*, caused by back-up of water or sewage, subject to the following:

a.  The back-up must be directly and immediately caused solely by water or sewage:

   (1)  from outside the *residence premises* plumbing system that enters through a *sewer or drain* located inside the interior of the *dwelling*; or

   (2)  that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the *dwelling* designed to remove subsurface water drained from the foundation area.

b.  Coverage does not apply to:

   (1)  losses resulting from *your* failure to:

     (a)  keep a sump pump or its related equipment in proper working condition; or

     (b)  perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

   (2)  losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

     (a)  this endorsement is attached to a newly issued policy; or

     (b)  this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits.

c.  If *you* request an increase to the coverage limit for this endorsement, the increased coverage limit does not apply to losses that occur or are in progress within the first 5 days of *your* request.

d.  The total limit of insurance provided by this endorsement will not exceed the amount determined by applying the Back-Up Of Sewer Or Drain percentage (%) shown in the *Declarations* to the COVERAGE A – DWELLING limit shown in the *Declarations*, as adjusted by the inflation coverage

provisions of this policy. This is an additional amount of insurance.

e.  The deductible for each loss under this coverage is the amount shown in the *Declarations* under Section I Deductible for "Other Losses" or "All Losses", whichever applies.

For purposes of this endorsement only:

a.  SECTION I – LOSSES INSURED, item 12.b.(2) is deleted from the policy.

b.  SECTION I – LOSSES NOT INSURED, Water is replaced by:

Water, meaning:

   (1)  flood;

   (2)  surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3)  waves (including tidal wave, tsunami, and seiche);

   (4)  tides or tidal water;

   (5)  overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6)  spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

   (7)  water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-Up of Sewer or Drain.

   (8)  water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

CONTINUED



(8)  material carried or otherwise moved by any of the water or sewage, as described in Items c.(1) through c.(8) above.

However, we will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

c.  SECTION I – CONDITIONS, Other Insurance is replaced by:

Other Insurance.  This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

HO-2444

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

## HO-2465 FUNGUS (INCLUDING MOLD) LIMITATION OF LIABILITY COVERAGE ENDORSEMENT ($50,000)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY; CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

Except for the coverage provided by this endorsement, the policy to which this endorsement is attached does not apply to any claim or suit for damages because of *bodily injury* or *property damage* arising out of or resulting from *fungus*.

### SECTION II – LIABILITY COVERAGES

**COVERAGE L – PERSONAL LIABILITY** is amended to include the following:

We will pay up to our limit of liability all sums that the insured is legally obligated to pay as damages because of *bodily injury* or *property damage* arising out of or resulting from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

However, we do not cover any loss, cost, or expense arising out of any:

(1)  request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, *neutralize*, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2)  claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*.

### LIMIT OF LIABILITY

Regardless of the number of *insureds* under this coverage or number of claims made or suits brought, the most we will pay under this coverage for all claims for damages in any one *occurrence* is $50,000. This limit is also the most we will pay for the sum of all claims arising from all *occurrences* during each policy period.

All other policy provisions apply.

HO-2465

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016



(CONTINUED)



11-Q1-1607-9      007011

HO-2231.1
Page 1 of 2

# HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)

This endorsement modifies insurance provided under the HOMEOWNERS POLICY

## DEFINITIONS



The definition of "occurrence" is replaced by the following:

"*occurrence*", when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.  *bodily injury;* or

b.  *property damage;*

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence.*

## SECTION I – LOSSES NOT INSURED

**Intentional Losses** is replaced by the following:

**Intentional Losses.** If any *insured* intentionally causes or procures a loss to property covered under this policy, we will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

This does not apply to:

a.  an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss; or

b.  a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

(1)  arises out of family violence or sexual assault against an innocent *insured*; and

(2)  is caused by an intentional act of an *insured* against whom a family violence or sexual assault complaint is brought.

## SECTION I – CONDITIONS

Under **Mortgagee Clause**, paragraph 10.c. is replaced by the following:

c.  If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

## SECTION I AND SECTION II – CONDITIONS

**Concealment or Fraud** is replaced by the following:

**Concealment or Fraud.**

a.  *We* do not provide any coverages under this policy for *you* or any other *insured* if *you* or any other *insured* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

(1)  on which *we* rely and are either:

(a)  material; or

(b)  made with intent to deceive; or

(2)  that contribute to the loss.

b.  No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

(1)  increases the risk at the time of loss; or

(2)  contributes to the loss.

This item, b., does not apply to failure to tender payment of premium.

c.  Violation of this condition by an *insured* does not apply to a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

(1)  arises out of family violence or sexual assault against an innocent *insured*; and

(2)  is caused by an intentional act of an *insured* against whom a family violence or sexual assault complaint is brought.

Under **Cancellation**, paragraphs 5.a. and 5.b. are replaced by the following:

a.  *You* may cancel this policy at any time by giving *us* advance notice of the date cancellation is to take effect. *We* may require written, electronic, or other recorded verification of the request for cancellation prior to such cancellation taking effect.

If only *your* interest is affected, the effective date of cancellation will be the later of:

(1)  the date *we* received *your* notice of cancellation; or

(2)  the date specified in the notice.

If notice must be given to a governmental agency, mortgagee, or other third party, the effective date of cancellation may be extended in order for *us* to provide notice of cancellation to *you* and the other party at least 10 days before the date cancellation takes effect.

b.  *We* may cancel this policy by providing notice to a named insured shown on the *Declarations*. The notice will provide the date cancellation is effective.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019



HO-2231.1
Page 2 of 2

(1) When you have not paid the premium, we may cancel at any time by providing notice at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by providing notice at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

    (a) if there has been a material misrepresentation of fact that, if known to us, would have caused us not to issue this policy; or

    (b) if the risk has changed substantially since this policy was issued.

    We may cancel this policy by providing notice at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

**Nonrenewal** is replaced by the following:

**Nonrenewal.** If we decide not to renew this policy, then, at least 30 days before the end of the current policy period, we will provide a nonrenewal notice to a named insured shown on the *Declarations*.

HO-2231.1

If we decide not to renew this policy, we will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

**Electronic Delivery** is deleted.

**OPTIONAL POLICY PROVISIONS**

**Option ID** is replaced by the following:

**Option ID – Increased Dwelling Limit.** We will settle losses to damaged *building structures* covered under COVERAGE A – DWELLING according to the Loss Settlement Provision shown in the *Declarations*.

1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, we will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under COVERAGE A – DWELLING, Other Structures exceeds the limit of liability shown in the *Declarations* for Other Structures, we will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations*.

**Report Increased Values.** You must notify us within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the *Declarations* if you fail to notify us of the increased value within 90 days.

All other policy provisions apply.

© Copyright, State Farm Mutual Automobile Insurance Company, 2010



Superior Court of Cherokee County
**E-Filed**
23CVE1056
6/14/2023 8:01 AM PG
Patty Baker, Clerk
Civil Division

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

TOMMIE WALKER AND
PATRICIA WALKER,
**Plaintiff,**

**vs.**

STATE FARM INSURANCE
COMPANY,
**Defendant.**

CIVIL ACTION FILE NO.:
23CVE1056

---

### ORDER APPOINTING SPECIAL PROCESS SERVER

Upon Plaintiff showing that Craig Brazeman, private investigator and civil process serve, is a citizen of the United States and over the age of twenty-one (21) years; that Craig Brazeman is not a party or representative of any party in this action; that the appointment of Craig Brazeman as a special process server will expedite the service of process on the Defendant STATE FARM INSURANCE COMPANY, named above, the commencement of this lawsuit, and the administration of justice; and the appointment of him as special process server will serve the interest of justice, the court, pursuant to O.C.G.A. § 9-11-4 hereby appoints him to serve the ***Summons and Complaint,*** in this case.

SO ORDERED this _____ day of _____, 2023.
              12th             June

_Shannon Wallace_
JUDGE, SUPERIOR COURT OF CHEROKEE COUNTY

Superior Court of Cherokee County
**E-Filed**
23CVE1056
6/2/2023 1:57 PM  MB
Patty Baker, Clerk
Civil Division

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of ___CHEROKEE___ County

| For Clerk Use Only | |
|---|---|
| Date Filed __6/2/2023__ | Case Number __23CVE1056__ |
| **MM-DD-YYYY** | |

**Plaintiff(s)**

| WALKER | TOMMIE | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| WALKER | PATRICIA | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

| STATE FARM INSURANCE COMPANY | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** __NICHOLAS MARTIN__     **State Bar Number** __168722__     **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☒ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
         **Case Number**                      **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

Superior Court of Cherokee County
**E-Filed**
23CVE1056
6/15/2023 1:56 PM  PG
Patty Baker, Clerk
Civil Division

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY
### STATE OF GEORGIA

Tommie Walker and                        )
Patricia Walker,                         )          CIVIL ACTION FILE
                                         )
     Plaintiffs,                        )          NO.: 23CVE1056
                                         )
vs.                                      )
                                         )
State Farm Insurance Company,            )
                                         )
     Defendant.                         )

### AFFIDAVIT OF SERVICE
(Re: State Farm Insurance Company)

    Came and appeared before me, a Notary Public authorized to take oaths, Craig Brazeman, who, having been duly sworn stated and deposed to me as follows:

1.

    That I have the intellectual capacity to make an oath and have knowledge of the facts that make this affidavit.

2.

    That I am sui juris, over the age of twenty one (21), and have a residence in the State of Georgia.

3.

    That I am employed as a Licensed Private Detective and Certified Process Server (Georgia).

4.

    That I am in no way a party to the above-styled action.

5.

    That I am authorized by Order of this Court to serve process of related documents/pleadings upon the above-named Defendant.

6.

    That I was hired to serve process of the following documents/pleadings:

a) Summons;
b) Complaint for Breach of Contract and Bad Faith;
c) Order Appointing Special Process Server; and
d) General Civil and Domestic Relations Case Filing Information Form.

7.

That on June 14th , 2023 at 12:50 p.m., I served State Farm Insurance Company, the above-named Defendant, with the above documents/pleadings by placing said documents/pleadings in the hands of Alisha M. Smith, an authorized agent with the Corporation Service Company, while located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

This 15th day of June, 2023.

Craig Brazeman

Sworn to and subscribed before me
this 15th day of June, 2023.

NOTARY PUBLIC
My commission expires: 1/10/2027

Superior Court of Cherokee County
**E-Filed**
23CVE1056
7/14/2023 10:13 AM  VM
Patty Baker, Clerk
Civil Division

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| TOMMIE WALKER AND<br>PATRICIA WALKER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO.: 23CVE1056 |
| vs. | ) | |
| | ) | |
| STATE FARM INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>SPECIAL APPEARANCE ANSWER AND AFFIRMATIVE DEFENSES OF STATE FARM FIRE AND CASUALTY COMPANY TO PLAINTIFFS' COMPLAINT AGAINST STATE FARM INSURANCE COMPANY</u>

COMES NOW, State Farm Fire and Casualty Company, and specially appears to file an Answer and Affirmative Defenses to Plaintiff's Complaint against State Farm Insurance Company and states as follows:

As an initial matter, the policy issued to Plaintiffs was issued by State Farm Fire and Casualty Company ("State Farm"), not "State Farm Insurance Company." As such, State Farm Insurance Company is not a proper party to this lawsuit, and State Farm Fire and Casualty Company has not been properly served or named as a party to this lawsuit. Thus, out of an abundance of caution, all defenses available to State Farm Fire and Casualty Company as to service, venue, personal jurisdiction, and applicable statutes of limitation are hereby reserved.

## <u>FIRST AFFIRMATIVE DEFENSE</u>

State Farm Insurance Company is improperly named in the above-styled action. Plaintiffs' insurer, State Farm Fire and Casualty Company, has not been named or served in the above-styled action. As a result, Plaintiffs' Complaint should be dismissed pursuant to O.C.G.A. § 9-11-

12(b)(5) and 12(b)(6).

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is barred by the statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is barred by laches.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim against State Farm Fire and Casualty Company upon which relief may be granted and should be dismissed pursuant to O.C.G.A. § 9-11-12(b)(6).

### FIFTH AFFIRMATIVE DEFENSE

Defendant is not liable to Plaintiffs for any cause of action, including for breach of contract, because Defendant at no time breached or otherwise violated any of the terms or conditions of the insurance policy between Defendant and Plaintiffs.

### SIXTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek to assert a bad faith claim against Defendant, Plaintiffs may not recover because their claim is legally and factually insufficient. Defendant has, at all times, acted in good faith with respect to Plaintiffs' claim.

### SEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek to assert a bad faith claim or seek other extra-contractual damages against Defendant pursuant to any other statute or law aside from O.C.G.A.§ 33-4-6, Plaintiffs may not recover because her claim is legally and factually insufficient. Moreover, O.C.G.A. § 33-4-6 is the exclusive remedy for bad faith penalties and extra-contractual damages recoverable by an insured against her insurer based on a failure to pay policy benefits.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovering any additional damages related to this action because State Farm Fire and Casualty Company has already paid all amounts due under Policy number 11Q116079 (the "Policy") for damages from a covered cause of loss.

## NINTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs attempt to impose duties upon Defendant aside from those set forth in the Policy, Plaintiffs fail in both fact and law. Georgia law does not impose extra-contractual duties on insurers or their adjusters when adjusting claims asserted by insureds. Moreover, at all times relevant hereto, Defendant acted in good faith and in accordance with the terms and conditions of the Policy.

## TENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek to recover from Defendant in tort, Plaintiffs are barred from recovery as the relationship between Plaintiffs and Defendant is strictly contractual in nature and does not support an action in tort.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs may not maintain this action against Defendant because Plaintiffs failed to satisfy the conditions precedent to bringing suit set forth in the Policy.  Specifically, the Policy provides:

### SECTION I - CONDITIONS

6. **Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover any recoverable depreciation or replacement cost benefits for the structural repairs to the Property because Plaintiffs have failed to comply with the provisions of the Policy regarding how to recover these benefits.  Specifically, the Policy provides:

### SECTION I – LOSS SETTLEMENT

*We* will settle covered property losses according to the following.  However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

### COVERAGE A - DWELLING

**1. A1 – Replacement Cost Loss Settlement – Similar Construction**

a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the ***Declarations***, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1)  until actual repair or replacement is completed, *we* will pay only the ***actual cash value*** at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property;

(2)  when the repair or replacement is actually completed, *we* will pay the covered additional amount ***you*** actually and necessarily spend to repair or replace the damaged part of the property, or an

amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(4) *we* will not pay for increased costs resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL – Building Ordinance or Law Coverage.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover any recoverable depreciation or replacement cost benefits for personal property because Plaintiffs have failed to comply with the provisions of the Policy regarding how to recover these benefits.  Specifically, the Policy provides:

### SECTION I – LOSS SETTLEMENT

*We* will settle covered property losses according to the following.  However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

**COVERAGE B - PERSONAL PROPERTY**

**1. B1 – Limited Replacement Cost Loss Settlement**

a. *We* will pay the cost to repair or replace property covered under

**SECTION I – PROPERTY COVERAGES, COVERAGE B –**

**PERSONAL PROEPRTY**, except for property listed in item b. below, subject to the following:

(1)   until repair or replacement is completed, *we* will pay the difference between the ***actual cash value*** of the damaged property;

(2)   after repair or replacement is actually completed, *we* will pay the difference between the ***actual cash value*** and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3)   if property is not repaired or replaced within two years after the date of loss, *we* will pay only the ***actual cash value***.

## <u>FOURTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiffs are not entitled to recover additional Loss of Use or Additional Living Expense benefits under the Policy because the conditions to recovery for benefits under these coverages have not been satisfied.  The Policy provides:

**COVERAGE C – LOSS OF USE**

The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the ***Declarations*** for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a ***loss insured*** causes the ***residence premises*** to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an ***insured*** to maintain their normal standard of living for up to 24 months. ***Our*** payment is limited to incurred costs for the shortest of:

a. the time required to repair or replace the premises;

b. the time required for *your* household to settle elsewhere; or

c. 24 months.

This period of time is not limited by the expiration of this policy. *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use. *We*** will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of

loss that would be a ***loss insured*** under this policy if the damage had occurred to property on the ***residence premises***;

b. the ***residence premises*** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c. the action of the civil authority is taken in response to:

> (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;
>
> (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or
>
> (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

***We*** will not pay for loss or expense due to cancellation of a lease or agreement.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to recover for all of the damages set forth in their complaint because not all of these damages are related to an accidental direct physical loss as required for coverage under the Policy. Specifically, the Policy provides:

**COVERAGE A – DWELLING**

***We*** will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and ***we*** will not pay for, any ***diminution in value***.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek additional policy benefits related to fungus (including mold), this cause of loss is limited under the Policy by the terms set forth in **HO-2584 FUNGUS (INCLUDING MOLD) LIMITED COVERAGE ENDORSEMENT**.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek additional policy benefits related to defects in the initial construction of the Property or maintenance related issues, these causes of loss are excluded under the Policy.  Specifically, the Policy provides:

. . .

**LOSSES NOT INSURED**

(3) *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . .

b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction,

renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or

improvements of any kind) whether on or off the

*residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c.

unless the resulting loss is itself a Loss Not Insured as described in this

Section.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to recover for the damages set forth in their complaint that are the

result of neglect.  Specifically, the Policy provides:

. . .

**LOSSES NOT INSURED**

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred

in the absence of one or more of the following excluded events.  *We* will not pay for such

loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c)

whether other causes acted concurrently or in any sequence with the excluded event to

produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated

or widespread damage, occurs on or off the *residence premises*, arises from any natural or

external forces, or occurs as a result of any combination of these:

. . .

d. **Neglect**, meaning neglect of the ***insured*** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs are unable to recover under the Policy because Plaintiffs failed to satisfy their duties under the Policy.  Specifically, the Policy provides:

**SECTION I – CONDITIONS**

2. **Your Duties After Loss.** After a loss to which this insurance may apply, ***you*** must cooperate with ***us*** in the investigation of the claim and also see that the following duties are performed:

    a. give immediate notice to ***us*** or ***our*** agent and also notify:

        (1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

        (2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b. protect the property from further damage or loss and also:

        (1) make reasonable and necessary temporary repairs required to protect the property; and

        (2) keep an accurate record of repair expenses;

    c. prepare an inventory of damaged or stolen personal property:

        (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

        (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d. as often as ***we*** reasonably require:

        (1) exhibit the damaged property;

        (2) provide ***us*** with any requested records and documents and allow ***us*** to make copies;

        (3) while not in the presence of any other ***insured***:

(a) give statements; and

(b) submit to examinations under oath; and

(4) produce employees, members of the **insured's** household, or others for examination under oath to the extent it is within the **insured's** power to do so…

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs are estopped from pursuing claims against Defendant pursuant to the terms of Georgia's Unfair Claims Settlement Practices Act because the Act does not create or imply a private cause of action. O.C.G.A. § 33-6-37).

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Defendant is not liable to Plaintiffs because if they sustained any damages as a result of the occurrences set forth in the Complaint, such damages were proximately caused by Plaintiffs or others acting on Plaintiffs' behalf.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs are estopped from recovering from Defendant benefits related to any exaggerated or exacerbated damages to the property due to Plaintiffs' failure to mitigate their damages or protect the property as required by the Policy.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs cannot recover to the extent Plaintiffs failed to mitigate their damages.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovering damages asserted in their Complaint because these damages are speculative and Plaintiffs did not actually incur, and/or are not likely to incur these damages.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is barred in whole or in part based upon the doctrine of accord and satisfaction.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is barred in whole or in part by accord and satisfaction and payment.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Defendant is entitled to a set off against any judgment entered against it for those amounts already paid by Defendant to or on behalf of Plaintiffs for the claims asserted in Plaintiffs' Complaint.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Defendant did not owe a legal duty to Plaintiffs independent of its obligations as specified in the Policy that forms the subject of Plaintiffs' Complaint, and therefore Plaintiffs' Complaint for damages fails to state a claim against Defendant for any cause of action independent of its alleged breach of policy of insurance, which Defendant specifically denies was breached.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' prayer for attorney's fees and costs of litigation pursuant to O.C.G.A. § 13-6-11 against Defendant is insufficient in fact and in law.  Defendant has, at all times, acted in good faith and with reasonable and probable cause with respect to the actions it has taken.  Plaintiffs fail to state a claim for any bad faith which would entitle Plaintiffs to a recovery of attorney's fees and expenses.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs cannot recover additional benefits under the Policy because Defendant has provided coverage for all items related to an "accidental direct physical loss" in accordance with the terms and provisions of the Policy.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Defendant State Farm expressly reserves the right to assert all affirmative defense(s) and matter(s) in avoidance as may be disclosed during the course of additional investigation and discovery.  Subject to and without waiving any of its other respective rights, jurisdictional or legal defenses, or objections, Defendant State Farm responds to the specific averments contained in the individual and enumerated paragraphs of the Complaint as follows:

## FACTUAL ALLEGATIONS

## INTRODUCTION

Defendant denies the allegations set forth in this unnumbered, introductory paragraph of Plaintiffs' Complaint.

## PARTIES, JURISDICTION, AND VENUE

1.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of Plaintiffs' Complaint.  However, upon information and belief, Defendant admits these allegations.

2.

Defendant admits the allegations set forth in Paragraph 2 of Plaintiffs' Complaint.

3.

Defendant admits the allegations set forth in Paragraph 3 of Plaintiffs' Complaint.

4.

Defendant admits only that Cherokee County is a proper venue for this matter but denies

that it is the only proper venue for this litigation and denies that Defendant was served properly.

5.

Defendant is without knowledge or information sufficient to form a belief as to the truth of

the allegations set forth in Paragraph 5 of Plaintiffs' Complaint.  However, upon information and

belief, Defendant admits these allegations.

**FACTUAL BACKGROUND**

Defendant re-alleges and incorporates by reference the responses in Paragraphs 1 through

5 of its Answer, as if fully restated herein.

6.

Defendant denies the allegations set forth in Paragraph 6 of Plaintiffs' Complaint.

7.

In response to Paragraph 7 of Plaintiffs' Complaint, Defendant admits only that it issued a

Policy of insurance to the Plaintiffs, identified as Policy Number 11Q116079, which provided

coverage to accidental direct physical loss subject to the Policy's terms and provisions and

appliable Georgia law.  Except as otherwise herein admitted, Defendant denies the remaining

allegations set forth in Paragraph 7 of Plaintiffs' Complaint, including but not limited to any

allegations that the Policy provides unrestricted and/or unfettered insurance coverage and any

allegations that Plaintiffs are entitled to additional benefits under the Policy related to the Claim.

8.

In response to Paragraph 8 of Plaintiffs' Complaint, Defendant admits only that it issued a

Policy of insurance to the Plaintiffs, identified as Policy Number 11Q116079, which provided

coverage to accidental direct physical loss subject to the Policy's terms and provisions and appliable Georgia law.  Except as otherwise herein admitted, Defendant denies any allegations set forth in Paragraph 8 of Plaintiffs' Complaint in direct contradiction to the terms of the Policy, including the Policy limits.

9.

In response to Paragraph 9 of Plaintiffs' Complaint, Defendant admits that, upon information and belief, Plaintiffs' neighbor's house caught on fire on or around June 2, 2021. Defendant denies the remaining allegations set forth in Paragraph 9 of Plaintiffs' Complaint.

10.

In response to Paragraph 10 of Plaintiff's Complaint, Defendant admits only that it issued Claim number 1120L276K to the claim initiated by Plaintiffs.  Except as otherwise herein admitted, Defendant denies the remaining allegations of Paragraph 10 of Plaintiffs' Complaint including any allegations that Plaintiffs are entitled to additional benefits under the Policy related to the Claim.

11.

In response to Paragraph 11 of Plaintiffs' Complaint, Defendant admits that State Farm offered coverage for additional living expenses pursuant to and within the limitations set forth in the terms of Plaintiffs' Policy.  Defendant also admits that ServPro inspected Plaintiffs' property for the purposes of determining the proper scope for mitigation of the Property.  Defendant is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in Paragraph 11 of Plaintiffs' Complaint and, therefore, denies same.  All remaining allegations set forth in Paragraph 11 of Plaintiffs' Complaint are denied.

12.

In response to Paragraph 12 of Plaintiffs' Complaint, Defendant admits that it offered Additional Living Expenses to Plaintiffs pursuant to the terms of the Policy but that Plaintiffs' rejected this offer.  All remaining allegations set forth in Paragraph 12 of Plaintiffs' Complaint are denied.

13.

In response to Paragraph 13 of Plaintiffs' Complaint, Defendant admits only that ServPro was retained to evaluate Plaintiffs' property.  All remaining allegations set forth in Paragraph 13 of Plaintiffs' Complaint are denied.

14.

Upon information and belief, Defendant admits the allegations set forth in Paragraph 14 of Plaintiffs' Complaint.

15.

Upon information and belief, Defendant admits the allegations set forth in Paragraph 15 of Plaintiffs' Complaint.

16.

Defendant admits Plaintiffs hired ICE PA as their public adjusters. Defendant is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in Paragraph 16 of Plaintiffs' Complaint and, therefore, denies same.

17.

Defendant admits that State Farm inspected the residence. Defendant denies all remaining allegations set forth in Paragraph 17 of Plaintiffs' Complaint.

18.

Defendant admits that State Farm inspected the residence, including the roof of the residence. Defendant denies all remaining allegations set forth in Paragraph 18 of Plaintiffs' Complaint.

19.

Defendant admits that Plaintiffs' public adjusters submitted an estimate for $95,815.23 for what it considered repairs to the Property. Defendant denies all remaining allegations set forth in Paragraph 19 of Plaintiffs' Complaint including any allegations that the estimate reflected the necessary and reasonable scope of work to repair the damages to the property or the costs to complete this work.

20.

In response to the allegations set forth in Paragraph 20 of Plaintiffs' Complaint, Defendant admits only that it determined that the costs and scope set forth in the estimate from Plaintiffs' Public Adjuster did not reflect the necessary and reasonable scope of work to repair the damages to the property or the costs to complete this work. Defendant denies all remaining allegations set forth in Paragraph 20 of Plaintiffs' Complaint.

21.

In response to the allegations set forth in Paragraph 21 of Plaintiffs' Complaint, Defendant admits only that it issued a payment to the Walkers totaling $18,643.67. Defendant denies all remaining allegations set forth in Paragraph 21 of Plaintiffs' Complaint.

22.

In response to the allegations set forth in Paragraph 22 of Plaintiffs' Complaint, Defendant admits only, upon information and belief, that Plaintiffs retained Zen Dry Restoration.  Defendant denies all remaining allegations set forth in Paragraph 22 of Plaintiffs' Complaint.

23.

In response to Paragraph 23 of Plaintiffs' Complaint, Defendant admits that Plaintiffs hired Metro Contents.  Defendant is without sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 23 of Plaintiffs' Complaint and, therefore, denies same.

24.

In response to Paragraph 24 of Plaintiffs' Complaint, Defendant admits that Metro Contents supplied an estimate totaling $52,195.76.  Defendant denies the remaining allegations of Plaintiffs' Complaint including any allegations that this estimate memorialized the damage and/or costs to repair the damage to the personal property of Plaintiffs due to a covered cause of loss under the Policy.

25.

In response to Paragraph 25 of Plaintiffs' Complaint, Defendant admits that it issued a supplemental payment to Plaintiffs on December 7, 2021.   Defendant denies the remaining allegations set forth in Paragraph 25 of Plaintiffs' Complaint, as pled.

26.

In response to Paragraph 26 of Plaintiffs' Complaint, Defendant admits that it retained Southeast Restoration and issued a supplemental payment to Plaintiffs on December 7, 2021. Defendant denies the remaining allegations set forth in Paragraph 26 of Plaintiffs' Complaint.

27.

In response to Paragraph 27 of Plaintiffs' Complaint, Defendant admits that it retained Southeast Restoration and issued a supplemental payment to Plaintiffs on December 7, 2021. Defendant denies the remaining allegations set forth in Paragraph 27 of Plaintiffs' Complaint.

28.

Defendant admits the allegations set forth in Paragraph 28 of Plaintiffs' Complaint. Defendant denies that appraisal was an appropriate manner in which to resolve any disputes relate to this claim pursuant to the terms of the Policy or applicable Georgia law.

29.

In response to Paragraph 29 of Plaintiffs' Complaint, Defendant admits that it responded to Plaintiffs' demand for appraisal on December 21, 2021 and declined to participate in appraisal as it was contractually and legally inappropriate.  Defendant denies the remaining allegations set forth in Paragraph 28of Plaintiffs' Complaint.

30.

Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in Paragraph 30 of Plaintiffs' Complaint and, therefore, denies same.

31.

Defendant denies the allegations set forth in Paragraph 31 of Plaintiffs' Complaint.

32.

Defendant is without sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 32 of Plaintiffs' Complaint and, therefore, denies same.

33.

In response to Paragraph 33 of Plaintiffs' Complaint, Defendant admits that it sent a reservation of rights letter to Plaintiffs on or around December 21, 2021.   Defendant denies the remaining allegations contained in Paragraph 33 of Plaintiffs' Complaint.

34.

In response to Paragraph 34 of Plaintiffs' Complaint, Defendant admits that it retained National Environmental Solutions regarding this Claim.  Except as otherwise admitted herein, Defendant denies the remaining allegations set forth in Paragraph 34 of Plaintiffs' Complaint.

35.

In response to Paragraph 35 of Plaintiffs' Complaint, Defendant admits that National Environmental Solutions went to Plaintiffs' residence to perform an inspection.  Defendant denies the remaining allegations set forth in Paragraph 35 Plaintiffs' Complaint.

36.

In response to Paragraph 36 of Plaintiffs' Complaint, Defendant admits that National Environmental Solutions created a report regarding this claim on January 19, 2022.  Defendant denies the remaining allegations contained in Paragraph 36 of Plaintiffs' Complaint including but not limited to any allegations in direct contradiction to the plain and express language of the report.

37.

Upon information and belief, Defendant admits only that the Plaintiffs filed a complaint with the Georgia Department of Insurance.  Defendant denies the remaining allegations set forth in Paragraph 37 of Plaintiffs' Complaint.

38.

Upon information and belief, Defendant admits only that the Plaintiffs filed a complaint with the Georgia Department of Insurance.  Defendant denies the remaining allegations set forth in Paragraph 38 of Plaintiffs' Complaint.

39.

Defendant denies the allegations set forth in Paragraph 39 of Plaintiffs' Complaint.

40.

In response to the allegations set forth in Paragraph 40 of Plaintiff's Complaint, Defendant admits only that representatives of Defendant spoke with Plaintiffs regarding their claim. Defendant denies all remaining allegations contained in Paragraph 40 of Plaintiffs' Complaint.

41.

In response to the allegations set forth in Paragraph 41 of Plaintiff's Complaint, Defendant admits only that representatives of Defendant emailed Plaintiffs regarding their claim.  Defendant denies all remaining allegations contained in Paragraph 40 of Plaintiffs' Complaint, including those that are in direct contradiction to the express language of the email.

42.

In response to the allegations set forth in Paragraph 42 of Plaintiff's Complaint, Defendant admits only that representatives of Plaintiffs emailed Defendant regarding their claim.  Defendant denies all remaining allegations contained in Paragraph 42 of Plaintiffs' Complaint, including those that are in direct contradiction to the express language of any emails.

43.

In response to Paragraph 43 of Plaintiffs' Complaint, Defendant admits that Dawn Martin issued a supplemental payment to Plaintiffs on or around February 11, 2022.  Defendant denies the remaining allegations set forth in Paragraph 43 of Plaintiffs' Complaint.

44.

Defendant denies the allegations set forth in Paragraph 44 of Plaintiffs' Complaint.

45.

Upon information and belief, Defendant admits only that the Plaintiffs filed a complaint with the Georgia Department of Insurance.  Defendant denies the remaining allegations set forth in Paragraph 45 of Plaintiffs' Complaint.

46.

Upon information and belief, Defendant admits the allegations set forth in Paragraph 46 of Plaintiffs' Complaint.

47.

In response to Paragraph 47 of Plaintiffs' Complaint, Defendant admits that State Farm conducted an additional inspection of the Plaintiffs property on or around March 9, 2022. Defendant denies the remaining allegations set forth in Paragraph 47 of Plaintiffs' Complaint.

48.

Defendant admits the allegations set forth in Paragraph 48 of Plaintiffs' Complaint.

49.

In response to Paragraph 49 of Plaintiffs' Complaint, Defendant admits that Zen Dry Restoration issued an estimate for alleged repairs to Plaintiffs' Property.  Defendant denies all remaining allegations contained in Paragraph 49 of Plaintiffs' Complaint.

50.

In response to Paragraph 50 of Plaintiffs' Complaint, Defendant admits that it retained attorneys Swift, Currie, McGhee & Hiers as its legal representatives and to represent its interests in the Claim submitted by the Walkers.

51.

In response to the allegations set forth in Paragraph 51 of Plaintiffs' Complaint, Defendant admits that it issued additional payments to Plaintiffs in conjunction with newly submitted information.  Defendant denies the remaining allegations set forth in Paragraph 51 of Plaintiffs' Complaint.

52.

In response to Paragraph 52 of Plaintiffs' Complaint, Defendant admits that the undersigned counsel sent a letter to Plaintiffs on July 8, 2022 informing Plaintiffs of Defendants' revised pack out estimate.  Defendant denies the remaining allegations set forth in Paragraph 52 of Plaintiffs' Complaint, including any allegations that contradict the expressly language of the letter.

53.

Defendant is without sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 53 of Plaintiffs' Complaint and, therefore, denies same.

54.

Defendant is without sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 54 of Plaintiffs' Complaint and, therefore, denies same.

55.

In response to Paragraph 55 of Plaintiffs' Complaint, Defendant admits that Fistel Law Group sent a letter to Swift, Currie, McGhee & Hiers on October 26, 2022.  Defendant denies the remaining allegations set forth in Paragraph 55 of Plaintiffs' Complaint.

56.

In response to Paragraph 56 of Plaintiffs' Complaint, Defendant admits that Swift, Currie, McGhee & Hiers sent a letter on November 28, 2022.  Defendant denies the remaining allegations set forth in Paragraph 56 of Plaintiffs' Complaint

57.

In response to Paragraph 57 of Plaintiffs' Complaint, Defendant admits Fistel sent an estimate to counsel for State Farm along with a letter.  Defendant denies the remaining allegations set forth in Paragraph 56 of Plaintiffs' Complaint including that the letter sent by Fistel constituted a valid, timely demand.

58.

Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 58 of Plaintiffs' Complaint and, therefore, denies same.

59.

In response to Paragraph 59 of Plaintiffs' Complaint, Defendant admits that it issued a supplemental payment to Plaintiffs on or around March 28, 2022.  Defendant denies the remaining allegations contained in Paragraph 59 of Plaintiffs' Complaint.

60.

Defendant denies the allegations set forth in Paragraph 60 of Plaintiffs' Complaint.

61.

Defendant denies the allegations set forth in Paragraph 61 of Plaintiffs' Complaint.

62.

Defendant denies the allegations set forth in Paragraph 62 of Plaintiffs' Complaint.

63.

Defendant denies the allegations set forth in Paragraph 63 of Plaintiffs' Complaint.

64.

In response to Paragraph 64 of Plaintiffs' Complaint, Defendant admits that Plaintiffs may dispute Defendant's adjustment of the Claim and payments for the claim.  Except as otherwise admitted herein, Defendant denies the remaining allegations set forth in Paragraph 64 of Plaintiffs' Complaint.

65.

Paragraph 65 of Plaintiffs' Complaint appears to be an incomplete statement.  To the extent a response is required, Defendant denies Paragraph 65 of Plaintiffs' Complaint, as pled.

66.

In response to Paragraph 66 of Plaintiff's Complaint, Defendant admits that it inspected Plaintiffs' property regarding Plaintiffs' Claim.  Except as otherwise admitted herein, Defendant denies all remaining allegations contained in Paragraph 66 of Plaintiffs' Complaint.

## COUNT 1
## BREACH OF CONTRACT

67.

Defendant re-alleges and incorporates by reference the responses in Paragraphs 1 through 66 of its Answer, as if fully restated herein.

68.

In response to Paragraph 68 of Plaintiffs' Complaint, Defendant admits only that it issued a Policy of insurance to the Plaintiffs, identified as Policy Number 11-Q1-1607-9, which provided coverage to accidental direct physical loss subject to the Policy's terms and provisions and appliable Georgia law.  Except as otherwise herein admitted, Defendant denies the remaining allegations set forth in Paragraph 68 of Plaintiffs' Complaint, including but not limited to any allegations that the Policy provides unrestricted and/or unfettered insurance coverage and any allegations that Plaintiffs are entitled to additional benefits under the Policy related to the Claim.

69.

In response to Paragraph 69 of Plaintiffs' Complaint, Defendant admits only that it inspected, evaluated and estimated damages for Plaintiffs' Claim.  Except as otherwise admitted herein, Defendant denies the remaining allegations set forth in Paragraph 69 of Plaintiffs' Complaint.

70.

Defendant denies the allegations set forth in Paragraph 70 of Plaintiffs' Complaint.

71.

Defendant denies the allegations set forth Paragraph 71 of Plaintiffs' Complaint.

72.

Defendant denies the allegations set forth Paragraph 72 of Plaintiffs' Complaint.

73.

Defendant denies the allegations set forth Paragraph 73 of Plaintiffs' Complaint.

74.

Defendant denies the allegations set forth Paragraph 74 of Plaintiffs' Complaint.

75.

Defendant denies the allegations set forth Paragraph 75 of Plaintiffs' Complaint.

76.

Defendant denies the allegations set forth Paragraph 76 of Plaintiffs' Complaint.

[sic]

Defendant denies all allegations of the WHEREFORE clause of Plaintiffs' Complaint, including Plaintiffs' request for a trial by jury.

## COUNT II:
## BAD FAITH

77.

Defendant re-alleges and incorporates by reference the responses in Paragraphs 1 through 76 of its Answer, as if fully restated herein.

78.

Defendant denies the allegations set forth Paragraph 78 of Plaintiffs' Complaint.

79.

Defendant denies the allegations set forth Paragraph 79 of Plaintiffs' Complaint.

80.

Paragraph 80 of Plaintiffs' Complaint appears to be a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth in Paragraph 80 of Plaintiffs' Complaint.

81.

Defendant denies the allegations set forth Paragraph 81 of Plaintiffs' Complaint.

82.

Defendant denies the allegations set forth Paragraph 82 of Plaintiffs' Complaint.

83.

Defendant denies the allegations set forth Paragraph 83 of Plaintiffs' Complaint.

84.

Defendant denies the allegations set forth Paragraph 84 of Plaintiffs' Complaint.

85.

Defendant denies any allegations in Plaintiffs' Complaint which have not been expressly admitted herein, including all allegations of the WHEREFORE clause of Plaintiffs' Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, State Farm Fire and Casualty Company requests that the following relief be granted:

a)  That Plaintiffs' Complaint be dismissed with prejudice;

b) That Defendant be granted a jury of twelve;

c) That Defendant be awarded reasonable attorney's fees and costs incurred in asserting its rights through this action; and

d) That Defendant be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted this 14th day of July, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

/s/ Jessica M. Phillips
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
OFF:   (404) 874-8800
FAX:   (404) 888-6199
jessica.phillips@swiftcurrie.com
taylor.gore@swiftcurrie.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I have electronically filed the foregoing **SPECIAL APPEARANCE ANSWER AND AFFIRMATIVE DEFENSES OF STATE FARM FIRE AND CASUALTY COMPANY TO PLAINTIFFS' COMPLAINT AGAINST STATE FARM INSURANCE COMPANY** with the Clerk of Court using the Odyssey e-filing system, which will automatically send e-mail notification and service of such filing to counsel of record follows:

Nicholas P. Martin
7000 Peachtree Dunwoody Road
Bld. 1, Ste. 202
Atlanta, GA 30328
nmartin@nickmartinlaw.com
*Attorney for Plaintiffs*

This 14th day of July, 2023.

Respectfully Submitted,

**SWIFT, CURRIE, MCGHEE & HIERS, LLP**

*/s/ Jessica M. Phillips*
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
OFF:   (404) 874-8800
FAX:   (404) 888-6199
jessica.phillips@swiftcurrie.com
taylor.gore@swiftcurrie.com

4871-8418-7758, v. 1

Superior Court of Cherokee County
**E-Filed**
23CVE1056
7/14/2023 10:13 AM  VM
Patty Baker, Clerk
Civil Division

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| TOMMIE WALKER AND PATRICIA WALKER, | ) ) ) | |
| Plaintiffs, | ) ) ) | CIVIL ACTION FILE NO.: 23CVE1056 |
| vs. | ) ) | |
| STATE FARM INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

## NOTICE OF FILING REMOVAL

TO:   Nicholas P. Martin
      7000 Peachtree Dunwoody Road
      Bld. 1, Ste. 202
      Atlanta, GA 30328
      nmartin@nickmartinlaw.com

Please take notice that STATE FARM FIRE AND CASUALTY COMPANY, by special

appearance and on behalf of State Farm Insurance Company in the above-styled action, has on this

date filed its Notice of Removal, a copy of which is attached hereto, in the Office of the Clerk of

the United States District Court for the Northern District of Georgia, Atlanta Division.

This 14th day of July, 2023.

SWIFT, CURRIE, McGHEE & HEIRS, LLP

*/s/ Jessica M. Phillips*
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for State Farm Fire and Casualty*
*Company*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, G 30309
404-874-8000
Jessica.Phillips@swiftcurrie.com
Taylor.gore@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically file **NOTICE OF FILING REMOVAL** the Clerk of Court using the Odyssey e-filing system, which will automatically send e-mail notification and service of such filing to counsel of record follows:

Nicholas P. Martin
7000 Peachtree Dunwoody Road
Bld. 1, Ste. 202
Atlanta, GA 30328
nmartin@nickmartinlaw.com
*Attorney for Plaintiffs*

This 14th day of July, 2023.

SWIFT, CURRIE, McGHEE & HEIRS, LLP

*/s/ Jessica M. Phillips*

Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for State Farm Fire and Casualty Company*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, G 30309
404-874-8000
Jessica.Phillips@swiftcurrie.com
Taylor.gore@swiftcurrie.com
4868-8287-1407, v. 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TOMMIE WALKER and,　　　　　 )
PATRICIA WALKER,　　　　　　　)
　　　　　　　　　　　　　　　　 )
　　　　　Plaintiffs,　　　　　　　 )
　　　　　　　　　　　　　　　　 )　CIVIL ACTION
v.　　　　　　　　　　　　　　　 )　FILE NO.:
　　　　　　　　　　　　　　　　 )
STATE FARM INSURANCE　　　　 )　[On removal from the Superior Court
COMPANY,　　　　　　　　　　　)　of Cherokee County, Georgia;
　　　　　　　　　　　　　　　　 )　Civil Action File No. 23CVE1056]
　　　　　Defendant.　　　　　　　 )

## NOTICE OF REMOVAL

COMES NOW, State Farm Fire and Casualty Company, by special appearance and on behalf of "State Farm Insurance Company," and hereby files this Notice of Removal, respectfully showing this Honorable Court as follows:

1.

On June 2, 2023, Plaintiffs Tommie and Patricia Walker (the "Plaintiffs"), by and through counsel, filed a Complaint against "State Farm Insurance Company" in the Superior Court of Cherokee County, Georgia, styled as *TOMMIE WALKER AND PATRICIA WALKER, v. STATE FARM INSURANCE COMPANY*, assigned Case No. 23CVE1056 (the "Superior Court Action").   True and correct copies of all

process, pleadings, and orders to date in the Superior Court Action are collectively attached hereto as Exhibit "1."

2.

The Complaint and Summons in this action were served on June 14, 2023. Thus, removal is timely under 28 U.S.C. § 1446(b).

3.

The United States District Court for the Northern District of Georgia, Atlanta Division, embraces Cherokee County, Georgia. Removal to this Court is therefore proper under 28 U.S.C. § 1441(a).

4.

Pursuant to 28 U.S.C. § 1446(d), at the time of the filing of this Notice of Removal, State Farm Fire and Casualty Company has given written notice to the Plaintiffs by notifying their attorney of record, Nicholas Martin, and has filed a copy of this Notice of Removal with the Clerk of Superior Court of Cherokee County, which shall effect the removal.

## DIVERSITY JURISDICTION

### 5.

The United States District Court for the Northern District of Georgia, Atlanta Division, possesses diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### 6.

Plaintiffs Tommie Walker and Patricia Walker are residents of Cherokee County, Georgia.  See, Complaint, ¶ 1.

### 7.

State Farm Fire and Casualty Company is a corporation organized under the laws of the State of Illinois, with its principal place of business in the State of Illinois. Thus, State Farm Fire and Casualty Company is a citizen of the State of Illinois.

### 8.

Because Plaintiffs and State Farm Fire and Casualty Company are citizens of different States, complete diversity exists between Plaintiffs and State Farm Fire and Casualty Company in accordance with 28 U.S.C. § 1332(a)(1).

9.

In the Complaint, Plaintiffs seek recovery for unspecified amounts of damage related to the purported fire and smoke damage to their property.

10.

Plaintiffs' prior counsel, F. Scott Fistel, sent a letter on November 30, 2022 defining the scope of Plaintiffs' damages now estimated to be no less than $217,181.21. (See, Exhibit 2, Affidavit of Dawn Martin).

11.

State Farm previously issued payments to Plaintiffs in the amount of $98,064.46. (See, Exhibit 2, Affidavit of Dawn Martin).

12.

 Based on Plaintiffs' updated estimate less State Farm's prior payments, Plaintiffs' Claim for damages is at least $119,116.75.  Plaintiffs have also alleged statutory bad faith penalties pursuant to O.C.G.A. 33-4-6, which afford penalties of 50% of the amount recovered.  This brings the amount of damages claimed by Plaintiff to $178,675.12.

13.

Accordingly, the amount in controversy, which totals $178,675.12 exceeds the jurisdictional requirement of $75,000.00, exclusive of interest and costs, as set forth in 28 U.S.C. § 1332(a).

14.

Venue is proper in this Court for purposes of removal under 28 U.S.C. § 1441(a). By filing this Notice of Removal, State Farm Fire and Casualty Company does not waive any of its affirmative defenses.

WHEREFORE, State Farm Fire and Casualty Company prays that this action proceeds in this Court as an action properly removed pursuant to 28 U.S.C. § 1446, and that no further proceedings be had in said case in the Superior Court of Cherokee County, Georgia.

This 14th day of July, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Jessica M. Phillips*
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA  30309
Tel:   (404) 874-8800
Fax:   (404) 888-6199
jessica.phillips@swiftcurrie.com
taylor.gore@swiftcurrie.com

## <u>LOCAL RULE 5.1(C) CERTIFICATION</u>

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1(C).

Respectfully submitted this 14th day of July, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

<u>/s Jessica M. Phillips</u>
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
Tel:   (404) 874-8800
Fax:   (404) 888-6199
jessica.phillips@swiftcurrie.com
taylor.gore@swiftcurrie.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed the foregoing **State Farm Fire and Casualty Company's Notice of Removal** with the Clerk of Court via the CM/ECF system, through which the Court will send notification to the following attorney:

Nicholas P. Martin
7000 Peachtree Dunwoody Road
Bld. 1, Ste. 202
Atlanta, GA 30328
nmartin@nickmartinlaw.com
*Attorney for Plaintiffs*

This 14ᵗʰ day of July, 2023.

Respectfully Submitted,

**SWIFT, CURRIE, MCGHEE & HIERS, LLP**

*/s/ Jessica M. Phillips*
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for State Farm Fire and Casualty Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
Tel:   (404) 874-8800
Fax:   (404) 888-6199
jessica.phillips@swiftcurrie.com
taylor.gore@swiftcurrie.com