# EXHIBIT A

Case 1:23-mi-99999-UNA   Document 2236-2   Filed 07/14/23   Page 2 of 16

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

23-C-01138-S5
2/21/2023 8:53 AM
TIANA P. GARNER, CLERK

In The State Court of Gwinnett County
State of Georgia

~~IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION~~

CASE NO. 23-C-01138-S5 _____

| | |
|---|---|
| CARL WALKER | : |
| Plaintiff, Pro se | JUDGE: _____ |
| -vs- | : |
| | : TRIAL COURT CASE NO. 327626 |
| | JUDGE: JOSE A. VILLANUEVA |
| COUNTY OF CUYAHOGA, et al. | |
| Defendants | COMPLAINT PURSUANT TO |
| | : 42 U.S.C. §1983 |
| | **Constitutional & Civil Rights Violations** |

## PLAINTIFF'S PLEADINGS

Now comes Plaintiff, Carl Walker (hereinafter Plaintiff Walker) *under pro se status*, to bring this civil action against the defendants; The County of Cuyahoga County, Ohio; and Cuyahoga County Court of Common Pleas Judge Jose A. Villanueva: pursuant to 42 U.S.C. §1983 and under the authority of *Powers v. Hamilton County Pub. Defender Comm'n*.[1] and *Nonnette v. Small*.[2]

---

[1] 501 F.3d 592 (6th Cir. 2007)
[2] 316 F.3d 872 (9th Cir. 2002)

Plaintiff Walker claims that the named defendants – while acting under the color of law – intentionally violated his Fifth, Eighth and Fourteenth Amendments rights to Equal Protection and Due Process under the United States Constitution with callous indifference: where they' unlawfully deprived him of 151-days of earned jail-time credit. Thus, causing the delay of his release by said 151-days.[3]

Date_____

## NAME & ADDRESS OF: PLAINTIFF

Carl Walker
413 Harmony Grove Rd.
Lilburn, GA., 30047
(216) 408-8614

## NAME & ADDRESS OF DEFENDANTS

The County of Cuyahoga, Ohio
Legal Representative: Office of Cuyahoga Prosecutor
1200 Ontario St.
Cleveland, Ohio, 44113

Cuyahoga County Court of Common Pleas
Legal Representative: Office of Cuyahoga Prosecutor
1200 Ontario St.
Cleveland, Ohio, 44113

Cuyahoga County Common Pleas Court Judge

---

[3] The underlying rationale is not based on respondent superior, but rather on the fact that Judge Jose A. Villanueva unconstitutional policy became that of the county where Cuyahoga County delegates final decision-making authority to its' common pleas judges. See, e.g., *Monell v. Dep't of Soc. Servs,* 436 U.S. 658, 690 ("Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.")

Judge: Jose A. Villanueva
1200 Ontario St.
Cleveland, Ohio, 44113

## PARTY – JURISDICTION – VENUE

Plaintiff Walker was charged, confined, and convicted – of one count of aggravated murder – in Cuyahoga County, Ohio; prior to being transferred to Lorain Correctional Institutional – located in Grafton, Ohio – to begin his prison sentence. Thus, jurisdiction and venue is properly had in and before this Court in accordance with 28 USCS § 1331.

## COMPLAINT

1. Plaintiff Walker's 42 U.S.C. § 1983 is lodged against the County of Cuyahoga, Ohio; Cuyahoga County Court of Common Pleas; and Cuyahoga County Common Pleas Judge Jose A. Villanueva: for exercising his authority as a final decision maker. Judge Villanueva refusal to award Plaintiff Walker jail-time credit for pretrial confinement: in which Plaintiff Walker was *clearly* entitled to under the Fourteenth Amendment of the United States Constitution.[4]

2. To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the *United States. Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled on other grounds, *Daniels v.*

---

[4] Under a decision-making theory, a single decision constitutes a municipal policy "if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered,' which means that his decisions are 'final and unreviewable and are not constrained by the official policies of superior officials.'" *Flagg v. City of Detroit,* 715 F.3d 165, 175 (6th Cir. 2013) (internal citations omitted) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).

*Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

3. Plaintiff Walker, allege the violation of his constitutional rights, under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution by the named defendants while they at all times were acting under the color of state law: were motivated by callous indifference and unconstitutional policy where said actors *knowingly failed* to award him 151 days of jail-time credit: as mandated by the Equal Protection of Law Clause; thus causing him to remain in prison for an additional 151 days.

4. Plaintiff Walker was confined for a total of 159 days in the Cuyahoga County Justice Center – arising out of the offense for which he was convicted and sentenced; 151 days of pretrial confinement (because he could not afford to post the set amount of bail) and 8 days of post-trial confinement (while awaiting transfer to the Lorain Correctional Institution).

5. The defendants credited Plaintiff Walker with only the 8 days of post-trial confinement.

6. Plaintiff Walker asserts that state remedies are inadequate where *said* United States Constitutional violations involves a former state prisoner who was serving an *indefinite prison term*. To wit:

    (a) "Plaintiff's complaint asserts a common law claim of false imprisonment. 'Pursuant to R.C. 2743.02(A)(1), the state may be held liable for the false imprisonment of its prisoners.' *Bennett v. Ohio Dept. of Rehab. & Corr.*

Page 4 of 15

(1991), 60 Ohio St. 3d 107, 573 N.E.2d 633, paragraph two of the syllabus. 'False imprisonment occurs when a person confines another intentionally 'without lawful privilege and against his consent within a limited area for any appreciable time, however short.' Id. at 109, quoting *Feliciano v. Kreiger* (1977), 50 Ohio St.2d 69, 71, 362 N.E.2d 646. '[T]he elements for wrongful imprisonment of an inmate beyond a lawful term of incarceration would be: (1) expiration of the lawful term of confinement, (2) intentional confinement after the expiration, and (3) knowledge that the privilege initially justifying the confinement no longer exists.' *Corder v. Ohio Dept. of Rehab & Corr.* (1994), 94 Ohio App. 3d 315, 318, 640 N.E.2d 879. However, an action for false imprisonment cannot be maintained when the imprisonment is in accordance with the judgment or order of a court, unless it appears such judgment or order is void on its face. *Bradley v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 07AP-506, 2007 Ohio 7150, P10, citing *Bennett*. Thus, although the state may be liable for false imprisonment, it retains immunity under common law for claims of false imprisonment when the plaintiff was incarcerated pursuant to a facially valid judgment or order. Id. at P11." *Williams v. Ohio Dep't of Rehab. & Corr.* 2009 Ohio 3958,[*P12](10th Dist.).

7. The United States Supreme Court has held: "A broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of 'any rights, privileges, or immunities secured by the Constitution and laws.'(Emphasis added.) Accordingly, we have 'repeatedly held that the coverage of [§ 1983] must be broadly construed.' *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 105, 107 L. Ed. 2d 420, 110 S. Ct. 444 (1989). The legislative history of the section also stresses that as a remedial statute, it should be 'liberally and beneficently construed.' *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 684, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) (quoting *Rep. Shellabarger, Cong. Globe,* 42d Cong., 1st Sess., App. 68 (1871)).

As respondents argue, the 'prime focus' of § 1983 and related provisions was to ensure 'a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto,' *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 611, 60 L. Ed. 2d 508, 99 S. Ct. 1905 (1979), but the Court has never restricted the section's scope to the effectuation of that goal. Rather, we have given full effect to its broad language, recognizing that § 1983 'provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights.' *Monell*, supra, at 700-701. Thus, for example, we have refused to limit the phrase "and laws" in § 1983 to civil rights or equal protection laws. See *Maine v. Thiboutot*, 448 U.S. 1, 4, 6-8, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980)." *Dennis v. Higgins,* (1991) 498 U.S. 439, 443-445.

8. "Justice Souter argued that applying Heck's favorable-termination requirement to § 1983 claimants in these circumstances would have the effect of altogether denying them a federal forum for the alleged deprivation of their federal rights. He reasoned that such an outcome was impermissible for two reasons. First, applying the favorable-termination requirement to claimants prohibited from seeking habeas relief is inconsistent with broad construction of § 1983 and the statute's purpose of 'interpos[ing] the federal courts between the States and the people, as guardians of the people's federal rights.' Id. at 501 (quoting *Mitchum v. Foster,* 407 U.S. 225, 242, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972)); accord *Dennis v. Higgins*, 498 U.S. 439, 443, 111 S. Ct. 865, 112 L. Ed. 2d 969 (1991) (stating that § 1983 'provides a remedy, to be broadly construed, against all forms of official violation of federally protected rights'). Second, Justice Souter argued that absent 'unambiguous Congressional direction,' the Supreme Court 'lacks the authority' to deny a § 1983 cause of action to those who could not pursue habeas relief. Id." *Powers v. Hamilton County Pub. Defender Comm'n.*, 501 F.3d at 600-601.

## NATURE OF COMPENSATION

**Compensatory and Punitive Damages**

9. Plaintiff Walker is suing the following defendants in their official capacity for compensatory and punitive damages:

   a) The County of Cuyahoga, Ohio: Compensatory amount $50,000.00; Punitive amount $ 50,000.00

   b) Cuyahoga County Common Pleas Court: Compensatory amount $50,000.00; Punitive amount $50,000.00

10. Plaintiff Walker is suing the following defendant in his official, and individual, capacity for compensatory and punitive damages:

a) Judge, Jose A. Villanueva: Compensatory amount $50,000.00; Punitive amount $50,000.00

## SPECIFIC CLAIIMS

11. The County of Cuyahoga County, Ohio; and Cuyahoga County Court of Common Pleas: is liable to Plaintiff Walker for monetary damages where the acts of its employees and/or agents caused constitutional deprivation to Plaintiff Walker, under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, as well as rights secured

under Ohio Constitutional Article I, § 14: while acting pursuant to written and/or unwritten policy and/or customs.[5]

12. "R.C. 2967.191 requires the department of rehabilitation and correction to reduce the prison term of a prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which he or she was convicted and sentenced. It is the duty of the trial judge to determine the amount of jail-time credit to which a prisoner is entitled. *State ex rel. Rankin v. Ohio Adult Parole Auth.*, 98 Ohio St.3d 476, 2003-Ohio-2061, 786 N.E.2d 1286, ¶ 7. This information must be included in appellant's sentencing entry. See R.C. 2949.12; Ohio Adm.Code 5120-2-04(B). Accordingly, the trial court's failure to properly calculate jail-time credit and include it in the body of the sentencing order is plain error. *State v. Miller*, 8th Dist. Cuyahoga Nos. 84540 and 84916, 2005-Ohio-1300, ¶ 10." *State v. Harper,* 2022 Ohio 3329, [*P10](8th App. Dist.)

13. "'The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions.' *State v. Fugate*, 117 Ohio St.3d 261, 2009-Ohio-856, 883 N.E.2d 440, ¶ 7. Its purpose is to 'equalize the treatment of those who could afford bail with those who could not.' *Smiley* at ¶ 7, citing *State v. Hargrove*, 1st Dist. Hamilton No. C120321, 2013-Ohio-1860,

---

[5] For purposes of municipal liability under Section 1983, a plaintiff may establish the existence of a municipal policy or custom through evidence of (1) an official policy or enactment; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision or (4) a custom of tolerance of or acquiescence in federal rights violations. *Sutton*, 183 Ohio App. 3d 616, 2009-Ohio-4033, 918 N.E.2d 181, at ¶ 21, citing *Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292, 89 L.Ed.2d 452, and *Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005).

¶ 5. '[T]he Equal Protection Clause does not tolerate disparate treatment of defendants based solely on their economic status.' *Fugate* at ¶ 7.

"Thus, it is apparent that **trial courts have the duty** to calculate the amount of jail-time credit to which a defendant is entitled. R.C. 2949.08(B); R.C. 2929.19(B)(2)(g)(i); *State ex rel. Rankin v. Ohio Adult Parole Auth.*, 98 Ohio St.3d 476, 2003-Ohio-2061, 786 N.E.2d 1286, ¶ 7. Further, the trial court *must* state that amount in its journal entry. Ohio Adm.Code 5120-2-04(B)." *Bratenahl v. Eldridge,* 2021 Ohio 1083, [*10-11](8th App. Dist.) [Bold and Italic print added.]

14. "Recognizing that the Equal Protection Clause does not tolerate disparate treatment of defendants based solely on their economic status, the United States Supreme Court has repeatedly struck down rules and practices that discriminate against defendants based solely on their inability to pay fines and fees. See *Griffin v. Illinois* (1956), 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (a state cannot deny appellate review to defendants unable to afford a transcript); *Williams v. Illinois* (1970),399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (a state may not imprison a defendant beyond the statutory maximum based solely on his inability to pay a fine); *Tate v. Short* (1971), 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (a state may not impose a fine as a sentence and then automatically convert it to jail time based upon the defendant's inability to immediately pay the fine). Relying on the principle set forth in such cases, courts have held that defendants who are unable to afford bail must be credited for the time they are confined while awaiting trial. 'The Equal Protection Clause requires that all time spent in any jail prior to trial and commitment by [a prisoner who is] unable to make bail because of indigency must be

credited to his sentence.' (Emphasis sic.) *Workman v. Cardwell* (N.D.Ohio, 1972), 338 F.Supp. 893, 901, vacated in part on other grounds (C.A.6, 1972), 471 F.2d 909. See also *White v. Gilligan* (S.D. Ohio, 1972), 351 F. Supp. 1012." *State v. Fugate,* 117 Ohio St. 3d 261, 264-65 (2008).

15. "Crim.R. 32.2(D) provides: '***If the defendant is committed to a penal or reformatory institution, the court shall forward a statement of the number of days confinement which the defendant is entitled by law to have credited to his minimum and maximum sentence." R.C. 2967.191 provides: 'The adult parole authority shall reduce the minimum and maximum sentence or the definite sentence of a prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which he was convicted and sentenced, including confinement in lieu of bail which awaiting trial ***
"The Adult Parole Authority has a mandatory duty to reduce the minimum and maximum sentence with pretrial confinement time. *State ex rel. Corder v. Walker* (1991), 68 Ohio App.3d 567, 570, 589 N.E.2d 113. (emphasis sic)" *State ex rel. Dalton v. Ghee,* 1995 Ohio App. LEXIS 3055,[*3-4](9th App. DIst.)

16. "The Adult Parole Authority (hereinafter APA) has the duty to 'grant credit', but the trial court has the duty to properly calculate the number of days for which the APA grants credit. *State v. Gregory* (1995), 108 Ohio App. 3d 264, 267, 670 N.E.2d 547. The trial court must calculate the correct time to be credited, and that number must be included in the sentencing entry. Id. The court is required, pursuant to Crim.R. 32.3(D), to

forward to the institution or custodian, a statement of the number of days of confinement to which the defendant is entitled by law to have credited to the minimum and maximum sentence." *State v. Jones,* 1997 Ohio App. LEXIS 2674, [*8](8th App. Dist.)

17. "[It is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* (1986) 475 U.S. 469, 480.

18. Plaintiff Walker was booked in the Justice Center 08/21/1995 on a single charge of Aggravated Murder; booking no.# 19950821049. Where a bail bond in the amount of $ 1,000,000.00 was set.

19. Plaintiff Walker was unable to post bond; so he remained confined in the Cuyahoga Justice Center during the entire criminal process.

20. Plaintiff Walker was sentenced on: 01/17/1996

21. Plaintiff Walker was transferred from Cuyahoga County Justice Center to Lorain Correctional Institution on: 01/25/1996.

22. Plaintiff Walker was approved for parole on July 13, 2022.

23. Plaintiff Walker was released on parole on Feb 15, 2023.

24. Plaintiff Walker's last prison program—Intensive Outpatient Program— was completed 03/19/2020 (the program start date was 12/10/2019). Thus, it cannot be alleged, by the defendants, that Plaintiff's Walker was not adversely affected by their' failure to award him the 151 days of pre-conviction jail-time credit.

**Conclusion**

Plaintiffs' so respectfully submits.

Sincerely submitted,

*Carl J. Weeks*
Carl J. Walker

## AFFIDAVIT OF VERITY

I, Carl Walker, either affirm, attest or swear, under the penalty of perjury, that the following information and statements are complete and true:

1. Plaintiff Walker's 42 U.S.C. § 1983 is lodged against the County of Cuyahoga, Ohio; Cuyahoga County Court of Common Pleas; and Cuyahoga County Common Pleas Judge Jose A. Villanueva: for exercising his authority as a final decision maker. Judge Villanueva refusal to award Plaintiff Walker jail-time credit for pretrial confinement: in which Plaintiff Walker was *clearly* entitled to under the Fourteenth Amendment of the United States Constitution.

2. The County of Cuyahoga County, Ohio; Cuyahoga County Court of Common Pleas; and Cuyahoga County Common Pleas Judge Jose A. Villanueva: are each liable to Plaintiff Walker for monetary damages, in the amount of $50,000.00 for compensatory damages and $50,000.00 in punitive damages: where the acts of its employees and/or agents caused constitutional deprivation to Plaintiff Walker, under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, as well as rights secured under Ohio Constitutional Article I, § 14: while acting pursuant to written and/or unwritten policy and/or customs.

3. Plaintiff Walker, allege the violation of his constitutional rights, under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution by the named defendants while they at all times were acting under the color of state law: were motivated by callous indifference and unconstitutional policy where said actors *knowingly failed* to

award him 151 days of jail-time credit: as mandated by the Due Process of Law Clause; thus causing him to remain in prison for an additional 151 days.

4. Plaintiff Walker was confined for a total of 159 days in the Cuyahoga County Justice Center— arising out of the only offense for which he was convicted and sentenced; 151 days of pretrial confinement (because he could not afford to post the set amount of bail) and 8 days of post-trial and sentence confinement (while awaiting transfer to the Lorain Correctional Institution).

5. However, the defendants only credited Plaintiff Walker with the 8 days of post-sentence confinement.

6. Plaintiff Walker was booked in the Cuyahoga Justice Center 08/21/1995 on a single charge of Aggravated Murder; booking no. 19950821049. Where a bail-bond, in the amount of $1,000,000.00, was set.

7. Plaintiff Walker was unable to post bond, so he remained confined in the Cuyahoga County Justice Center during the entire criminal process.

8. Plaintiff Walker was sentenced on 01/17/1996

9. Plaintiff Walker was transferred from Cuyahoga County Justice Center to Lorain Correctional Institution on 01/25/1996.

10. Plaintiff Walker was approved for parole on 07/13/2022.

11. Plaintiff Walker was released on parole on 02/15/2023.

12. Plaintiff Walker would have been granted, and released on, parole 151-days sooner: had the defendants credited him with the pre-trial days he spent in jail.

13. Plaintiff Walker asserts that state remedies are inadequate – i.e., *non-existent* – to address said United States Constitutional violations which involves a former state prisoner who was serving an *indefinite state prison term.*

**AFFIANT FURTHER SAYS NAUGHT!**

IN THE WITNESS WHEREOF, I have hereunder set my hand this 21 day of February, 2023.

*Carl Walker*
Carl Walker

**THIS AFFIDAVIT WAS SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE THIS 21 DAY OF FEBRUARY, 2023.**

*Natasha Roberts*
**NOTARY PUBLIC**

