# Exhibit A

**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations

4035 Sweeney Rd
Mt Pleasant, MI 48858-6631

Date: April 20, 2022

*1602CIPA100490?*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 000000000000000CP0570220415219190010434З

Sharon Ann Turner
1328 Peachtree St NE
Atlanta, GA 30309

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you or your representative may submit written exceptions to the Appeals Council. "Written exceptions" are your statements explaining why you disagree with my decision. Please write the Social Security number associated with this case on any written exceptions you send.

Please send your written exceptions to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Or Fax: (833) 763-0406**

If you need help, you may file in person at any Social Security or hearing office.

**Time Limit To File Written Exceptions (30 Days)**

You must file your written exceptions with the Appeals Council **within 30 days** of the date you get this notice. The Appeals Council assumes that you got this notice within 5 days after the date of the notice unless you show that you did not get it within the 5-day period.

If you need more time to file your written exceptions, you must file a written request with the Appeals Council. You must file the request for an extension within 30 days of the date you get



Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

this notice. If you request more than 30 days, you must explain why you need the extra time. The Appeals Council will decide whether to grant your request for more than a 30-day extension.

**How Written Exceptions Work**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. The Appeals Council's action may be more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Find that there is no reason to change my decision,
- Dismiss your case,
- Return your case to me or another administrative law judge for a new decision, or
- Issue its own decision.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council does not change my decision, my decision will become the final decision after remand. Any future claim you file will not change a final decision on this claim if the facts and issues are the same.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not file written exceptions. The Appeals Council will notify you within 60 days of the date of this notice if it decides to review your case.

**Filing An Action In Federal District Court**

If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final, you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action during the 60-day period starting with the day my decision becomes final. However, you can ask the Appeals Council to give you more time to file a civil action. The Appeals Council will grant your request for more time only if you can show a good reason for needing more time. We will not send you any more notices about your right to file in Federal district court.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as filing exceptions to my decision or filing a civil action in Federal court. If you disagree with my decision and you file a new application instead of filing written exceptions or appealing to Federal court, you might lose some benefits or not qualify for benefits at all. If you think my



decision is wrong, you should file your exceptions within 30 days or file a new civil action between the 61st and 121st days after the date of this notice.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866) 931-9946. Its address is:

Social Security
401 W Peachtree St NW
Suite 2860 Flr 28
Atlanta, GA 30308-9972

Adam Dale
Administrative Law Judge

Enclosures:
Decision Rationale

cc: Kathleen Flynn
315 W. Ponce De Leon
Avenue, Suite 940
Decatur, GA 30030

*1603CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP0570220415219190010434З





*1604CIPA100490*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP05702204152191900104343

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

# DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Sharon Ann Turner<br>(Claimant) | Supplemental Security Income |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

This case is before me on remand from the Appeals Council pursuant to a remand from the United States District Court for the NORTHERN DISTRICT GEORGIA. On May 4, 2021 and March 21, 2022, I held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearings by telephone. The claimant's representative agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing. The claimant testified at the first hearing held on May 4, 2021, but did not testify at the second hearing held on March 21, 2022. The claimant is represented by Kathleen Flynn, an attorney. Brynne Holt, an attorney appeared at the hearing. Also appearing and testifying at the March 21, 2022 hearing was Adolph Cwik, an impartial vocational expert.

Pursuant to the District Court remand order, Appeals Council has directed me to offer the claimant the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision (B6A/3).

The claimant is alleging disability since December 1, 2013.

The claimant submitted or informed me about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 416.1435(a)).

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.



Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912.

See Next Page

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act since November 17, 2014, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite



See Next Page

*1605CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP0570220415219190010434

limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1. The claimant has not engaged in substantial gainful activity since November 17, 2014, the application date (20 CFR 416.971 *et seq.*).**

The claimant worked after the application date, but this work activity did not rise to the level of substantial gainful activity. Earnings records revealed that the claimant had earnings of $2,264.35 in the fourth quarter of 2021 (B31D; B33D). These earnings average $754.67 which falls below the 2021 monthly substantial gainful activity earnings threshold of $1310.00 per month.

**2. The claimant has the following severe impairments: Degenerative disc disease of the lumbar spine with facet hypertrophy, coronary artery disease with NSTEMI status post-surgical intervention; hypertension; irregular heartbeat; asthma; microcytic anemia; vitamin D deficiency; hepatitis C; migraines; mood disorder; depression; post traumatic stress disorder; and anxiety (20 CFR 416.920(c)).**



See Next Page

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

I examined and considered all listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 with specific attention to the following listings: 1.15; 1.16; 3.03; 4.04; 4.05; 5.05; 7.05; 11.02; 12.04; 12.06; and 12.15. I note that the State of Michigan Disability Determination Service ("State DDS") disposed of this case after assessing the claimant's residual functional capacity, which meant no listing was met or equaled, in their opinion.

The claimant does not meet listing 1.15, Disorders of the skeletal spine resulting in a compromise of a nerve root, as documented by A, B, C, and D. The claimant did not exhibit (A.) a neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with the compromise of the affected nerve root with Pain, Paresthesia, or Muscle Fatigue, AND (B.) a radicular distribution of neurological signs present during a physical examination or a diagnostic test and evidenced by 1, 2, and either 3 or 4: (1) muscle weakness; and (2) sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root; and (3) sensory changes evidenced by decreased sensation, sensory nerve deficit on electro diagnostic testing, or decreased deep tendon reflexes, AND (C.) findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine, AND (D.) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 month, and medical documentation of at least one of the following: (1) a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

The claimant does not meet listing 1.16, Lumbar spinal stenosis resulting in a compromise of the cauda equine, documented by A, B, C, and D. (A) The claimant does not demonstrate symptoms of neurological compromise manifested as: (1) a nonradicular distribution of pain in one or both lower extremities; or (2) nonradicular distribution of sensory loss in one or both lower extremities; or (3) neurogenic claudication, AND (B) Nonradicular neurological signs present during physical examination or on a diagnostic test and evidenced by 1, and either 2 or 3: (1) muscle weakness; (2) sensory changes evidenced by decreased sensation, sensory nerve deficit on electro diagnostic testing, or areflexia, trophic ulceration, or bladder or bowel incontinence (3) Decreased deep tendon reflexes in one or both lower extremities, AND (C.) findings on imaging or in an operative report consistent with compromise of the cauda equine with lumbar spinal stenosis, AND (D.) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 month, and medical



See Next Page

*1606CIPA100490?*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP0570220415219190010434З

documentation of at least one of the following: (1) a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand.

The claimant's impairments failed to meet the listing for 3.03 (Asthma), since the credible medical evidence, as discussed below, fails to demonstrate the claimant suffers from asthma with a Forced Expiratory Volume in one second (FEV1) equal to or less than the values specified in the tables of the listing or exacerbations or complications requiring three hospitalizations of at least 48 hours within a 12-month period and at least 30 days apart.

Listing 4.04 is not met because there was not a sign or symptom limited exercise tolerance test demonstrating the required manifestations at a workload equivalent to 5 METS. In addition, there were not three separate ischemic episodes that required revascularization or that were not amenable to revascularization. Finally, there was no evidence that the claimant has coronary artery disease with the required angiographic evidence and daily activity limitations.

The severity of the claimant's tachycardia fails to meet the requirements of listing 4.05. The evidence does not establish that the claimant has recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

Listing 5.05 is not met because the claimant has no hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy; no ascites or hydrothorax; no spontaneous bacterial peritonitis; no hepatorenal syndrome; no hepatopulmonary syndrome; no hepatic encephalopathy; and no end stage liver disease.

The severity of the claimant's impairment fails to meet the requirements of listing 7.05 because the record, as discussed below fails to demonstrate that the claimant has hemolytic anemias, including sickle cell disease, thalassemia, and their variants (see 7.00C), with: documented painful (vaso-occlusive) crises requiring parenteral (intravenous or intramuscular) narcotic medication, occurring at least six times within a 12-month period with at least 30 days between crises; or complications of hemolytic anemia requiring at least three hospitalizations within a 12-month period and occurring at least 30 days apart. Each hospitalization must last at least 48 hours, which can include hours in a hospital emergency department or comprehensive sickle cell disease center immediately before the hospitalization (see 7.00C2); or hemoglobin measurements of 7.0 grams per deciliter (g/dL) or less, occurring at least three times within a 12-month period with at least 30 days between measurements; or beta thalassemia major requiring life-long RBC transfusions at least once every 6 weeks to maintain life (see 7.00C4).



See Next Page

The claimant's epilepsy fails to meet the requirements of listing 11.02 (epilepsy). The medical evidence, as discussed below, fails to demonstrate, a. generalized tonic-clonic seizures occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment; or b. dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or c. generalized tonic-clonic seizures, occurring at least once every two months for at least four consecutive months despite adherence to prescribed treatment and a marked limitation in one of the following: 1. physical functioning or 2. understanding, remembering, or applying information or 3.Interacting with others or 4. concentrating, persisting, or maintaining pace or 5. adapting or managing oneself; or d. dyscognitive seizures, occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following: 1. physical functioning or 2. understanding, remembering, or applying information or 3. interacting with others or 4. concentrating, persisting, or maintaining pace or 5 adapting or managing oneself.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant did not allege that her impairments limit her ability to understand, remember or follow instructions, in fact, the claimant reported that she follows written instructions very well (B2E/6). The claimant reported memory issues on examination, however, she exhibited normal memory on multiple occasionally (B11F/11; B33F/16; B39F/64). The claimant also reported engaging in activities that require the ability to understand, remember and apply information. These activities include preparing meals, spending time on a computer, visiting the library, using public transportation, shopping in stores and handling finances (B29E).

In interacting with others, the claimant has a moderate limitation. The claimant did not allege that her impairments limit her ability to get along with others (B2E/6). In addition, she reported that she gets along "good" with authority figures (B2E/7). Later records noted that the claimant was living in an apartment with housemates (B29E). She also reported engaging in some social activities including visiting the library, maintaining her personal care, using public transportation and shopping in stores (B29E).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In managing concentration, persistence and pace, the State DDS consultants found that the claimant had a moderate limitation (B3A/10). The evidence establishes that the claimant has no more than a moderate limitation in this criterion. The claimant alleged that her impairments limit her ability to concentrate. However, she did not allege that they limit her ability to complete tasks (B2E/6). The claimant later noted that her impairments limited her ability to complete tasks and concentrate, however at that time she was engaging in some



See Next Page

*1607CIPA1004907*NOTAPP.X3.CIPAPP.ODARS.R220415.PS1K 0000000000000000CP05702204152191900104343

activities that require these abilities, such as preparing meals, watching television, using a computer, cleaning and reading (B29E).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. On examination, the claimant had normal judgement and attitude (B11F/11). She also reported engaging in several of daily activities including reading, talking with others, going to church, living with housemates in an apartment, preparing meals, spending time on a computer, watching television, visiting the library, maintaining her personal care, cleaning, doing laundry, using public transportation, shopping in stores and handling finances (B2E/6; B29E).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

**4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. She can occasionally work around concentrated exposure to atmospheric conditions such as fumes, noxious odors, dusts, or gases. She cannot work in extremes of hot or cold, at unprotected heights, or around moving mechanical parts. She can work in "moderate" levels of noise as defined by The Selected Characteristics of Occupations. She can perform simple tasks, as well as make simple work-related decisions. She cannot work at a production rate pace (e.g. assembly line work). She can adapt to occasional changes in her work routine or job tasks. She can occasionally interact with supervisors and coworkers, but not the public.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. I also considered opinion evidence in accordance with the requirements of 20 CFR 416.927.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.



See Next Page

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant is alleging disability based on impairments including back pain, head injury, leg pain, depression, anxiety, memory loss, asthma, coronary artery disease, anemia and a heart attack (B1E/2; B4E/2; B27E). She further asserts that these impairments limit her ability to lift, squat, bend, stand, walk, talk and concentrate (B2E/6). At the hearing the claimant's testified that her impairments limit her ability to stand for greater than two hours, sit for three to four hours, lift and carry five pounds, walk and climb stairs (hearing testimony).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant's ability to perform work related activity is limited due to degenerative disc disease of the lumbar spine with facet hypertrophy. On examination, the claimant reported experiencing back pain (B7F/119). However, she did not exhibit any tenderness to palpation of the paraspinous muscles, no midline tenderness to palpation, normal back flexion and extension and normal gait (B8F/383). The record continued to indicate that the claimant had chronic low back pain (B18F/45). On examination, she had mild diffuse tenderness in the lumbar area but no bony tenderness, no lumbar spine point tenderness, no contusions or abrasions, negative straight leg raising test, full flexion, toe and heel walk, steady tandem gait, muscle strength 5/5 and intact deep tendon reflexes (B20F/72). Imaging of the claimant's lumbar spine showed degenerative changes in the lower lumbar spine with facet hypertrophy (B66F/76).

The claimant's ability to perform work related activity is also limited due to cardiac impairments including coronary artery disease with NSTEMI status post-surgical intervention, hypertension and irregular heartbeat. Initial records noted that the claimant had regular heart rate and rhythm (B6F/3). Records noted that the claimant had a suspected arrythmia, but her EKG was normal (B6F/15). In October 2013, the claimant had a non-ST elevated myocardial infarction (NSTEMI) (B7F/119). The claimant underwent a heart catheterization which showed 60-70% stenosis (B7F/97, 107). However, an echocardiogram revealed that the claimant had a normal ejection fraction (B7F/109). Records noted that the claimant's coronary artery disease was clinically stable and there was no need for further cardiac workup (B18F/27). The claimant has also been treated for hypertension (B7F/115). However, on examination, the claimant had normal blood pressure of 121/61 mmHg (B18F/1). Later records showed that the claimant's blood pressure was at goal (B18F/44-45). She was also assessed with an irregular heartbeat (B52F/56).



See Next Page

*160CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS.K 000000000000000CP0570220415219190010434

The claimant also has a history of asthma (B7F/119). Records noted that the claimant was treated with an inhaler (B6F/15). A chest x-ray did not show an acute cardiopulmonary abnormality (B7F/118). The claimant presented to the emergency department for shortness of breath, cough and wheezing. She was assessed with an acute asthma exacerbation (B24F/26-28). On examination, the claimant also exhibited wheezing and chest pain likely related to asthma (B31F/28). Despite the wheezing, the claimant had a normal effort and no respiratory distress (B43F/35). Her asthma was reported to be mild persistent asthma (B46F/15)

The claimant has the additional severe impairments of microcytic anemia, vitamin D deficiency, hepatitis C and migraines (B6F/1). The claimant was specifically assessed with microcytic anemia likely iron deficiency anemia (B7F/101). On examination, the claimant had low iron and ferritin (B18F/44). As for hepatitis C, laboratory records noted that the claimant had a positive RNA, PCR and mild AST elevation (B18F/45). On examination, the claimant reported a headache (B20F/8). The claimant also has a history of Vitamin D deficiency (B32F/7). She was treated with vitamin D (B32F/5).

The claimant's ability to perform work related activity is also limited due to several mental impairments including mood disorder, depression, post-traumatic stress disorder and anxiety (B40F/11, 1). At times, the claimant exhibited positive mental health symptoms such as a flat affect. However, she was well oriented to time, place, person and situation (B6F/3). The claimant also had an appropriate mood and affect, well oriented, had normal behavior, had normal judgement and normal thought content (B6F/11; B7F/6). She was assessed with depressive disorder rule out bipolar disorder and a mood disorder (B9F/3). The claimant suffered some positive symptoms including a dysthymic mood and flat affect (B11F/43). However, her mental impairments improved, and the claimant had mostly normal psychological findings at a follow up evaluation (B11F/11). The claimant was well groomed and clean, had cooperative behavior, normal speech, well oriented, average intelligence, euthymic mood, pleasant affect and intact insight and judgement (B16F/2, 9). The record noted that the claimant's condition was better with medication (B45F/323). She denied experiencing depression (B51F/62). On examination, the claimant complained of forgetfulness. She was referred for evaluation of memory loss. Neuropsychological testing indicated that the claimant had slow processing speed, set shifting difficulty and poor learning but intact retention and recognition (B51F/59). However, she also had excellent recognition memory and ability to retain information initially learned (B51F/59).

I note that the objective medical evidence and clinical examination findings do not corroborate the claimant's alleged symptoms and limitations. The claimant also alleged that her impairments limit her ability to walk (B2E0). However, on examination the claimant had a normal gait and station (B51F2/42). The claimant frequently complained of forgetfulness on examination. However, on examination, the claimant had excellent recognition memory and ability to retain information initially learned (B51F/59). The claimant has described daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms. These activities include reading, talking with others, going to church, living with housemates in an apartment, preparing meals, spending time on a computer, watching television, visiting the library, maintaining her personal care, cleaning, doing laundry, using public transportation, shopping in stores and handling finances (B2E/6; B29E). Because of these inconsistencies, I find



See Next Page

that the claimant's statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not substantiated.

As for the opinion evidence, In April 2015, Fran Shahar, Ph.D., opined that the claimant retained the ability to do at least simple work routines with adequate concentration, attention, pace and persistence (B3A/15). On reconsideration, Douglas Robbins, Ph.D., affirmed the opinion of Dr. Shahar (B4A/13-14). The opinion of the State DDS psychological consultants is given little weight. The record reveals that the claimant has a long history of psychological treatment which would support findings greater limitations relating to her mental ability to perform work related activity.

In March 2015, Maxwell, Eidex, M.D., opined that the claimant could lift and or carry twenty pounds occasionally and ten pounds frequently. Dr. Eidex opined that the claimant could stand and or walk for about six hours and sit for about six hours in an eight-hour workday. Dr. Eidex also opined that the claimant could occasionally climb ladders, ropes and scaffolds and frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Dr. Eidex opined that the claimant must avoid concentrated exposure to extreme heat, extreme cold, atmospheric conditions and hazards (B3A/12-14). On reconsideration, William Harrison, M.D., affirmed the opinion of Dr. Eidex (B4A/11-13). The opinion of the State DDS medical consultants that the claimant is limited to performing work at the less than light exertional level is persuasive. It is supproted by the medical evidence and the record as a whole.

In a subsequent application for benefits, State DDS medical consultant, Ronald Rosen, M.D., opined that the claimant could lift and or carry fifty pounds occasionally and twenty-five pounds frequently. Dr. Rosen opined that the claimant could stand and or walk for about six hours and sit for about six hours in an eight hour workday. Dr. Rosen also opined that the claimant could occasionally climb ladders, ropes and scaffolds, frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Dr. Rosen added that the claimant must avoid concentrated exposure to extreme cold, extreme heat, atmospheric conditions and hazards (B11A/12-13). The opinion of Dr. Rosen is given little weight. The medical evidence of record supports a finding that the claimant is limited to the less than light exertional level. These include her history of coronary artery disease status post myocardial infarction and degenerative disc disease of the lumbar spine, as discussed above.

In May 2020, Model Neway, M.D., opined that the claimant could lift and or carry twenty pounds occasionally and ten pounds frequently. Dr. Neway opined that the claimant could stand and or walk two hours and sit for about six hours in an eight-hour workday. Dr. Neway opined that the claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and never climb ladders, ropes and scaffolds. Dr. Neway added that the claimant must avoid concentrated exposure to extreme cold, extreme heat, humidity, atmospheric conditions and hazards (B13A/14-17). The opinion of Dr. Neway that the claimant is limited to performing work at the less than light exertional level is persuasive. It is supproted by the medical evidence and the record as a whole including the claimant's severe impairments such as coronary artery disease status post myocardial infarction and degenerative disc disease of the lumbar spine. Following a psychological consultative examination, Stephen Hamby, Ph.D., opined that the claimant would be able to understand, remember and carry out simple instructions. He added that



See Next Page

*1609CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP0570220415219190010434З

the claimant would be able to sustain her attention to complete simple tasks. Dr. Hamby also opined that the claimant would be able to relate adequately to supervisors and coworkers and would be at low risk for psychiatric decompensation under stressful work conditions (B55F/6). The opinion of Dr. Hamby that the claimant is limited to simple instructions is given great weight as it is supproted by the medical evidence of record, including the paragraph B criteria discussed above and his own findings on examination. However, the remainder of Dr. Hamby's opinion is given little weight as it is vague and not stated in functional terms.

In sum, the claimant is limited to performing work at the less than light exertional level. Specifically, the claimant cannot climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. She can occasionally work around concentrated exposure to atmospheric conditions such as fumes, noxious odors, dusts, or gases. She cannot work in extremes of hot or cold, at unprotected heights, or around moving mechanical parts. She can work in "moderate" levels of noise as defined by The Selected Characteristics of Occupations. She can perform simple tasks, as well as make simple work-related decisions. She cannot work at a production rate pace (e.g. assembly line work). She can adapt to occasional changes in her work routine or job tasks. She can occasionally interact with supervisors and coworkers, but not the public.

**5. The claimant has no past relevant work (20 CFR 416.965).**

**6. The claimant was born on April 12, 1973 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7. The claimant has a limited education (20 CFR 416.964).**

**8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).



See Next Page

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: electrical accessories assembler (DOT code 729.687-010), with 34,200 jobs in the national economy; housekeeper (DOT code 323.687-014), with 80,000 jobs in the national economy; and labeler (DOT code 920.687-126), with 23,600 jobs in the national economy.

The vocational expert's testimony is based on a thorough study of the issues in this case. In addition, the vocational expert's statements are consistent with the information contained in the DOT, pursuant to SSR 00-4p. Because the DOT does not address all limitation in the above residual functional capacity, the vocational expert adjusted the estimates of available jobs based on their work experience and knowledge of the labor market. Accordingly, I accept the vocational expert's testimony.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10. The claimant has not been under a disability, as defined in the Social Security Act, since November 17, 2014, the date the application was filed (20 CFR 416.920(g)).**

## DECISION

Based on the application for supplemental security income filed on November 17, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Adam Dale*

Adam Dale
Administrative Law Judge

April 20, 2022
Date



*1610CIPA100490*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP0570220415219190010434 3

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T23 | B1A | Order of Dismissal (Prior File) | | 2011-10-20 | 5 |
| T23 | B2A | Initial Disability Determination Transmittal // Eidex, Maxwell, MD | | 2015-04-15 | 1 |
| T23 | B3A | Initial Disability Determination Explanation // PRT & MRFC-Shahar, Fran, PhD / RFC-Eidex, Maxwell, MD | | 2015-05-04 | 17 |
| T23 | B4A | Reconsideration Disability Determination Explanation // PRT & MRFC-Robbins, Douglas, PhD / RFC-Harrison, William, MD | | 2015-11-18 | 16 |
| T23 | B5A | Reconsideration Disability Determination Transmittal // Harrison, William, MD | | 2015-11-18 | 1 |
| T1N | B6A | AC Order | | 2021-03-19 | 5 |
| T1N | B7A | Decision of U.S. District Court | | 2021-02-22 | 1 |
| T1N | B8A | Disability Determination Transmittal | | 2020-06-03 | 1 |
| T1N | B9A | Disability Determination Explanation | | 2019-08-05 | 8 |
| T1N | B10A | Complaint | | | 40 |
| T1N | B11A | Disability Determination Explanation | | 2020-03-13 | 15 |
| T1N | B12A | Disability Determination Transmittal | | 2020-03-13 | 1 |
| T1N | B13A | Disability Determination Explanation | | 2020-06-03 | 18 |



| | | | | | |
|---|---|---|---|---|---|
| T1N | B14A | Decision of U.S. District Court | | 2021-02-22 | 24 |
| T1N | B15A | EAJA Award | | 2021-06-07 | 2 |
| T1N | B16A | ALJ Decision - Prior | | 2018-06-26 | 25 |

**Jurisdictional Documents/Notices**

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T23 | B1B | Representative Fee Agreement // Kathleen Flynn | | 2014-11-14 | 1 |
| T23 | B2B | Appointment of Representative // Kathleen Flynn | | 2014-11-14 | 1 |
| T23 | B3B | T16 Notice of Disapproved Claim | | 2015-05-08 | 4 |
| T23 | B4B | Request for Reconsideration | | 2015-05-21 | 3 |
| T23 | B5B | T16 Disability Reconsideration Notice | | 2015-12-07 | 6 |
| T23 | B6B | Request for Hearing by ALJ | | 2015-12-18 | 3 |
| X83 | B7B | Objection to Video Hearing | | | 1 |
| X83 | B8B | Hearing Notice | | 2017-05-19 | 29 |
| X83 | B9B | Post Office Returned Mail | | 2017-06-13 | 4 |
| X83 | B10B | Post Office Returned Mail | | 2017-06-13 | 5 |
| X83 | B11B | Acknowledge Notice of Hearing | | 2017-07-10 | 1 |
| X83 | B12B | Amended Notice of Hearing | | 2017-07-13 | 23 |
| X83 | B13B | Hearing Notice | | 2017-07-28 | 18 |
| X83 | B14B | Notice Of Hearing Reminder | | 2017-08-04 | 6 |
| X83 | B15B | Post Office Returned Mail | | 2017-08-12 | 7 |
| X83 | B16B | Post Office Returned Mail | | 2017-08-23 | 4 |
| X83 | B17B | Post Office Returned Mail | | 2017-08-28 | 3 |
| X83 | B18B | Hearing Notice | | 2017-09-28 | 29 |



| | | | | |
|---|---|---|---|---|
| X83 | B19B | Notice Of Hearing Reminder | 2018-01-05 | 6 |
| X83 | B20B | Hearing Notice | 2018-02-28 | 29 |
| X83 | B21B | Notice Of Hearing Reminder | 2018-05-17 | 6 |
| LEY | B22B | Request for Review of Hearing Decision/Order | 2018-08-02 | 10 |
| T1N | B23B | Representative Correspondence | 2021-04-15 | 1 |
| T1N | B24B | Hearing Notice | 2021-04-19 | 18 |
| T1N | B25B | COVID Hearing Agreement Form | 2021-03-12 | 14 |
| T1N | B26B | Notice Of Hearing Reminder | 2021-03-30 | 10 |
| T1N | B27B | Hearing Notice | 2021-02-09 | 18 |
| T1N | B28B | Notice Of Hearing Reminder | 2021-03-12 | 10 |
| T1N | B29B | Hearing Notice | 2020-10-08 | 25 |
| T1N | B30B | Notice Of Hearing Reminder | 2020-12-29 | 10 |
| T1N | B31B | SSA-1696 - Claimant's Appointment of a Representative | 2019-05-30 | 1 |
| T1N | B32B | Hearing Notice | 2020-09-30 | 25 |
| T1N | B33B | Request for Hearing by ALJ | 2020-06-20 | 3 |
| T1N | B34B | Objection to Video Hearing | 2020-06-24 | 1 |
| T1N | B35B | T16 Notice of Disapproved Claim | 2020-04-15 | 3 |
| T1N | B36B | Request for Hearing Acknowledgement Letter | 2020-06-19 | 15 |
| T1N | B37B | T16 Notice of Disapproved Claim | 2020-03-13 | 11 |
| T1N | B38B | Request for Reconsideration | 2020-03-26 | 1 |
| T1N | B39B | T16 Disability Reconsideration Notice | 2020-06-03 | 9 |
| T1N | B40B | Fee Agreement for Representation before SSA | 2019-05-30 | 2 |
| T1N | B41B | AC Correspondence | | 5 |



*161CIPA100490?*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 000000000000000CP05702204152191900104343

| | | | | |
|---|---|---|---|---|
| T1N | B42B | Authorized Representative Cover Letter | | 2 |
| T1N | B43B | Notice Of Hearing Reminder | 2021-04-21 | 10 |
| T1N | B44B | Attorney/Representative-Supplied Evidence | 2021-05-03 | 2 |
| T1N | B45B | Attorney/Representative-Supplied Evidence | 2021-05-03 | 2 |
| T1N | B46B | Attorney/Representative-Supplied Evidence | 2021-05-03 | 1 |
| T1N | B47B | Outgoing ODAR Correspondence | 2021-05-28 | 1 |
| T1N | B48B | Hearing Notice | 2021-08-23 | 25 |
| T1N | B49B | Outgoing ODAR Correspondence | 2021-09-16 | 16 |
| T1N | B50B | Notice Of Hearing Reminder | 2021-11-08 | 6 |
| T1N | B51B | Representative Correspondence--Ph hrg: R:404-307-4063, C:678-571-6006 | 2021-11-10 | 1 |
| Y28 | B52B | Hearing Notice | 2021-11-16 | 25 |
| Y28 | B53B | SSA-1696-SUP2 - Representative's Withdrawal of Acceptance of Appointment | 2021-11-24 | 2 |
| T1N | B54B | Hearing Notice | 2021-12-09 | 19 |
| T1N | B55B | Notice Of Hearing Reminder | 2021-12-20 | 10 |
| T1N | B56B | Notice Of Hearing Reminder | 2022-02-22 | 6 |

**Non-Disability Development**

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T23 | B1D | Application for Supplemental Security Income Benefits | | 2014-11-17 | 8 |
| T23 | B2D | Certified Earnings Records | | 2017-04-21 | 2 |
| T23 | B3D | Detailed Earnings Query | | 2017-04-21 | 2 |



| | | | | |
|---|---|---|---|---|
| T23 | B4D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2017-04-21 | 2 |
| T23 | B5D | Summary Earnings Query | 2017-04-21 | 1 |
| X83 | B6D | Lead Protective Filing Worksheet | 2017-04-21 | 1 |
| X83 | B7D | Detailed Earnings Query | 2017-08-16 | 3 |
| X83 | B8D | Summary Earnings Query | 2017-08-16 | 1 |
| X83 | B9D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2017-08-16 | 1 |
| X83 | B10D | Detailed Earnings Query | 2018-04-27 | 2 |
| X83 | B11D | Summary Earnings Query | 2018-04-27 | 1 |
| X83 | B12D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2018-04-27 | 1 |
| X83 | B13D | Certified Earnings Records | 2018-05-15 | 1 |
| T1N | B14D | Application for Supplemental Security Income Benefits | 2019-07-10 | 7 |
| T1N | B15D | Detailed Earnings Query | 2020-08-03 | 2 |
| T1N | B16D | Summary Earnings Query | 2020-08-03 | 1 |
| T1N | B17D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2020-08-03 | 1 |
| T1N | B18D | Certified Earnings Records | 2020-08-03 | 2 |
| T1N | B19D | Detailed Earnings Query | 2021-01-11 | 2 |
| T1N | B20D | Summary Earnings Query | 2021-01-11 | 1 |
| T1N | B21D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2021-01-11 | 1 |
| T1N | B22D | Certified Earnings Records | 2021-01-11 | 2 |
| T1N | B23D | Summary Earnings Query | 2021-04-02 | 1 |



*1612CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 00000000000000CP0570220415219190010434З

| | | | | | | |
|---|---|---|---|---|---|---|
| T1N | B24D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2021-04-02 | 1 |
| T1N | B25D | Application for Supplemental Security Income Benefits | | | 2014-12-06 | 22 |
| T1N | B26D | Detailed Earnings Query | | | 2021-04-21 | 2 |
| T1N | B27D | DISCO DIB Insured Status Report | | | 2021-04-21 | 2 |
| T1N | B28D | Summary Earnings Query | | | 2021-10-28 | 1 |
| T1N | B29D | Detailed Earnings Query | | | 2021-10-28 | 2 |
| T1N | B30D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2021-10-28 | 1 |
| T1N | B31D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 2022-03-08 | 1 |
| T1N | B32D | Detailed Earnings Query | | | 2022-03-08 | 2 |
| T1N | B33D | Summary Earnings Query | | | 2022-03-08 | 1 |

## Disability Related Development

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T23 | B1E | Disability Report - Adult | | | to 2014-11-14 | 12 |
| T23 | B2E | Function Report - Adult | | | to 2014-11-14 | 8 |
| T23 | B3E | Disability Report - Field Office | | | to 2014-12-09 | 3 |
| T23 | B4E | Disability Report - Adult | | | to 2014-12-09 | 8 |
| T23 | B5E | Function Report - Adult | | | to 2015-01-05 | 10 |
| T23 | B6E | Cardiac/Chest Pain Questionnaire | | | to 2015-01-05 | 3 |
| T23 | B7E | Disability Report - Field Office | | | to 2015-05-22 | 2 |
| T23 | B8E | Disability Report - Appeals | | | to 2015-05-22 | 7 |
| T23 | B9E | Disability Report - Field Office | | | to 2015-12-29 | 2 |



| | | | | | |
|---|---|---|---|---|---|
| T23 | B10E | Disability Report - Appeals | | to 2015-12-29 | 7 |
| T23 | B11E | Exhibit List to Rep PH2E | | to 2017-04-25 | 11 |
| X83 | B12E | Report of Contact | | to 2017-07-10 | 1 |
| X83 | B13E | Resume of Vocational Expert | J. Newton | to 2017-08-16 | 9 |
| X83 | B14E | Request for Postponement | Kathleen Flynn, Atty. | to 2017-08-16 | 1 |
| X83 | B15E | Post Office Returned Mail | | to 2017-12-08 | 2 |
| X83 | B16E | Resume of Vocational Expert | D. Bunn Duhram | to 2018-01-23 | 3 |
| X83 | B17E | Post Office Returned Mail | US States Postal Service | to 2018-01-30 | 3 |
| X83 | B18E | Representative Correspondence | Atty. | to 2018-04-23 | 1 |
| X83 | B19E | Resume of Vocational Expert | D. Bunn-Durham | | 4 |
| X83 | B20E | Representative Correspondence | K. Flynn, Atty. | to 2018-05-22 | 1 |
| T1N | B21E | Representative Correspondence | Flynn, Kathleen | to 2020-12-03 | 2 |
| T1N | B22E | Resume of Vocational Expert | Cosgrove, Steve | to 2021-01-04 | 3 |
| T1N | B23E | Misc Disability Development and Documentation | | 2021-03-29 to | 3 |
| T1N | B24E | Misc Disability Development and Documentation | | 2021-04-13 to | 3 |
| T1N | B25E | Resume of Vocational Expert | | 2021-04-05 to | 2 |
| T1N | B26E | Vocational Consultant Case Analysis | | 2021-04-05 to | 1 |
| T1N | B27E | Disability Report - Field Office | | to 2019-07-10 | 3 |
| T1N | B28E | Disability Report - Adult | | to 2019-07-10 | 7 |
| T1N | B29E | Function Report - Adult | | to 2019-08-29 | 9 |



*1613CIPA100490?*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 00000000000000CP057022041521910010434З

| | | | | | | |
|---|---|---|---|---|---|---|
| T1N | B30E | Disability Report - Appeals | | | to 2020-04-15 | 8 |
| T1N | B31E | Disability Report - Appeals | | | to 2020-04-27 | 7 |
| T1N | B32E | Disability Report - Field Office | | | to 2020-04-27 | 2 |
| T1N | B33E | Disability Report - Appeals | | | to 2020-06-10 | 7 |
| T1N | B34E | Disability Report - Field Office | | | to 2020-06-10 | 2 |
| T1N | B35E | Exhibit List to Rep PH2E | | | to 2020-08-04 | 11 |
| T1N | B36E | Representative Brief | | Holt, Brynne | to 2021-06-25 | 10 |
| T1N | B37E | Report of Contact | | Oho | to 2021-10-21 | 1 |
| T1N | B38E | Report of Contact | | Oho | to 2021-11-10 | 1 |
| T1N | B39E | Representative Correspondence--Five Day letter | | Flynn, Kathleen M | to 2021-11-10 | 2 |
| T1N | B40E | Resume of Vocational Expert | | Ross, Michelle A | to 2021-11-10 | 1 |
| T1N | B41E | Representative Correspondence | | | 2022-02-15 to | 2 |
| T1N | B42E | Resume of Vocational Expert | | | 2022-03-11 to | 3 |
| T1N | B43E | Response to Vocational Interrogatory | | | 2022-03-11 to | 1 |
| T1N | B44E | Misc Disability Development and Documentation | | | 2022-03-18 to | 1 |

**Medical Records**

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T23 | B1F | Education Records - Medical | | Louisiana Depart Of Education // Ase | 1992-01-06 to 1992-01-17 | 5 |



| | | | | | |
|---|---|---|---|---|---|
| T23 | B2F | Office Treatment Records | Northside Mental Health Center/Grady Health System // Ase | 2009-08-20 to 2010-01-29 | 60 |
| T23 | B3F | Emergency Department and Outpatient Hospital Records | Grady Hospital | 2010-03-02 to 2010-12-28 | 104 |
| T23 | B4F | Emergency Departmentand Outpatient Hospital Records | Grady Hospital | 2011-01-19 to 2011-12-27 | 132 |
| T23 | B5F | Emergency Department and Outpatient Hospital Records | Grady Hospital | 2012-01-09 to 2012-11-17 | 539 |
| T23 | B6F | Office Treatment Records | Saint Joseph's Mercy Care Services // Ase | 2009-04-22 to 2013-10-15 | 41 |
| T23 | B7F | Inpatient Hospital Records | Grady Hospital | 2013-10-23 to 2013-10-25 | 126 |
| T23 | B8F | Emergency Department and Outpatient Hospital Records | Grady Hospital | 2013-02-01 to 2013-12-23 | 465 |
| T23 | B9F | Outpatient Hospital Records // Mental Health | Northside Hospital | to 2014-10-28 | 25 |
| T23 | B10F | Outpatient Hospital and Emergency Room Records | Grady Health System // Ase | 2007-10-28 to 2014-11-08 | 307 |
| T23 | B11F | Office Treatment Records | Community Advanced Practice Nurses // Ase | 2008-07-30 to 2014-11-11 | 64 |
| T23 | B12F | Emergency Department Records | Grady Hospital | 2014-01-02 to 2014-12-08 | 474 |
| T23 | B13F | Office Treatment Records | Community Advanced Practice Nurses | 2013-07-17 to 2015-02-20 | 45 |
| T23 | B14F | Medical Source - No MER Available | Rapides Regional Medical Center | to 2015-03-03 | 5 |



*1614CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP05702204152191900104343

| | | | | | |
|---|---|---|---|---|---|
| T23 | B15F | Office Treatment Records // Complete Eval/Biopsychosocial Assessment | Newport Integrated Behavioral Healthcare | to 2015-03-24 | 6 |
| T23 | B16F | Office Treatment Records | Community Advanced Practice Nurses | 2015-03-02 to 2015-03-31 | 14 |
| T23 | B17F | Office Treatment Records | Community Advanced Practice Nurses // Ase | 2015-01-07 to 2015-05-21 | 35 |
| T23 | B18F | Outpatient Hospital Records | Grady Hospital | 2015-01-10 to 2015-05-28 | 73 |
| T23 | B19F | Inpatient Hospital Records | Grady Hospital | 2015-11-30 to 2015-12-02 | 53 |
| T23 | B20F | Emergency Department Records | Grady Hospital | 2015-05-22 to 2015-12-20 | 77 |
| T23 | B21F | Office Treatment Records | Saint Joseph Mercy Care Services // Ase | 2016-04-27 to 2016-05-11 | 11 |
| T23 | B22F | Office Treatment Records | Community Advanced Practice Nurses // Ase | 2015-03-20 to 2016-05-20 | 47 |
| T23 | B23F | Outpatient Hospital Records | Grady Hospital | 2016-01-17 to 2016-05-25 | 30 |
| T23 | B24F | Outpatient Hospital and Emergency Room Records | Grady Hospital // Ase | 2016-06-24 to 2016-11-22 | 37 |
| X83 | B25F | Office Treatment Records | Georgia Community Advanced Practice Nurses | 2015-01-30 to 2016-05-20 | 40 |
| X83 | B26F | Emergency Department Records | Grady Memorial Hospital | 2017-03-31 to 2017-06-28 | 23 |
| X83 | B27F | Medical Source - No MER Available | Newport Integrated Behavioral Health | to 2017-07-13 | 3 |



| | | | | | |
|---|---|---|---|---|---|
| X83 | B28F | Office Treatment Records | Community Advanced Practice Nurses | 2015-03-20 to 2016-05-20 | 42 |
| X83 | B29F | Hospital Records | Grady Hospital | 2017-07-22 to 2017-08-31 | 20 |
| X83 | B30F | Hospital Records | Grady Memorial Hospital | to 2017-12-07 | 12 |
| X83 | B31F | Office Treatment Records | Good Samaritan Health Center | 2017-08-11 to 2018-02-02 | 35 |
| X83 | B32F | Office Treatment Records | Good Samaritan Health Center | 2018-02-02 to 2018-04-16 | 17 |
| X83 | B33F | Hospital Records | Grady Hospital | 2017-12-07 to 2018-05-02 | 25 |
| X83 | B34F | Hospital Records | Emory Midtown Hospital | 2007-09-21 to 2017-09-02 | 431 |
| T1N | B35F | Medical Source - No MER Available | Grady Memorial Hospital | 2020-04-03 to 2020-09-17 | 3 |
| T1N | B36F | Office Treatment Records | Good Samaritan Health Center | 2020-09-22 to 2020-11-06 | 17 |
| T1N | B37F | Medical Source - No MER Available | Grady Hospital | 2020-09-18 to 2020-11-18 | 3 |
| T1N | B38F | Medical Source - No MER Available | Good Samaritan Health Center | 2020-11-07 to 2021-03-10 | 5 |
| T1N | B39F | Office Treatment Records | Community Advanced Practice Nurses | 2008-07-30 to 2014-11-14 | 64 |
| T1N | B40F | Hospital Records | Northside Hospital | 2009-09-17 to 2014-11-30 | 58 |
| T1N | B41F | Office Treatment Records | Community Advanced Practice Nurses | 2014-11-26 to 2015-03-23 | 44 |

*1615CIPA100490?*NOTAPP.X3.CIPAFP.ODARS.R220415.PS1K 000000000000000CP05702204152191900104343



| | | | | | |
|---|---|---|---|---|---|
| T1N | B42F | Office Treatment Records | Community Advanced Practice Nurses | 2015-03-23 to 2016-02-25 | 48 |
| T1N | B43F | Office Treatment Records | Saint Joseph's Mercy Care | 2009-04-22 to 2016-05-11 | 38 |
| T1N | B44F | Office Treatment Records | Community Advanced Practice Nurses | 2016-05-20 to 2017-07-05 | 40 |
| T1N | B45F | Hospital Records | Emory Midtown Hospital | 2017-09-02 to 2017-09-21 | 431 |
| T1N | B46F | Office Treatment Records | Good Samaritan Health Center | 2017-08-11 to 2018-02-02 | 35 |
| T1N | B47F | Office Treatment Records | Good Samaritan Health Center | 2018-02-02 to 2018-04-16 | 16 |
| T1N | B48F | Office Treatment Records | Good Samaritan Health Center | 2017-08-11 to 2019-05-24 | 75 |
| T1N | B49F | Office Treatment Records | Good Samaritan Health Center | 2018-08-24 to 2019-05-24 | 20 |
| T1N | B50F | Hospital Records | Grady Memorial Hospital | 2010-11-16 to 2019-05-31 | 402 |
| T1N | B51F | Hospital Records | Grady Health Systems | 2018-08-09 to 2019-07-16 | 205 |
| T1N | B52F | Office Treatment Records | Good Samaritan Health Center | 2017-11-03 to 2019-08-30 | 88 |
| T1N | B53F | Office Treatment Records | Grady Memorial Hospital | 2017-03-31 to 2019-09-17 | 425 |
| T1N | B54F | Office Treatment Records | Good Samaritan Health Center | 2019-10-11 to 2020-01-17 | 34 |
| T1N | B55F | CE Psychology | Charles Stephen Hamby PhD | to 2020-01-31 | 6 |



| | | | | | |
|---|---|---|---|---|---|
| T1N | B56F | Hospital Records | Grady Memorial Hospital | 2020-03-31 to 2020-04-01 | 4 |
| T1N | B57F | Hospital Records | Grady Memorial Hospital | 2019-06-14 to 2020-04-02 | 6 |
| T1N | B58F | Office Treatment Records | Good Samaritan Health Center | 2019-08-12 to 2020-05-08 | 57 |
| T1N | B59F | Office Treatment Records | Good Samaritan Health Center | to 2020-06-05 | 12 |
| T1N | B60F | Office Treatment Records | Good Samaritan Health Center | 2017-08-11 to 2020-09-18 | 180 |
| T1N | B61F | Progress Notes | Grady Memorial Hospital | to 2018-07-18 | 5 |
| T1N | B62F | Office Treatment Records | Good Samaritan Health Center | to 2018-05-18 | 10 |
| T1N | B63F | Hospital Records | Emory | 2018-07-15 to 2020-12-23 | 294 |
| T1N | B64F | Hospital Records | Emory Midtown Hospital | 2018-07-15 to 2021-03-19 | 149 |
| T1N | B65F | Hospital Records | Grady Memorial Hospital | 2020-12-16 to 2021-09-15 | 346 |
| T1N | B66F | Hospital Records | Emory Midtown Hospital | 2021-04-26 to 2021-10-18 | 478 |

*1616CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 0000000000000000CP05702204152191900104343





SSA ODAR
4035 Sweeney Rd
Mt Pleasant, MI 48858

*1601CIPA1004907*NOTAFP.X3.CIPAFP.ODARS.R220415.PS1K 000000000000000CP05702204152191900104343

96 4 SP 1.760 P0 T1 148655 2 10 1 CIPA R220415 0000



Kathleen Flynn
315 W. Ponce De Leon
Avenue, Suite 940
Decatur, GA 30030



