**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MINNIE GATLIN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| | ) | |
| V. | ) | Civil Action No.: |
| | ) | |
| CFSI LOAN MANAGEMENT | ) | JURY TRIAL DEMANDED |
| COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**COMPLAINT**

Plaintiff Minnie Gatlin ("Plaintiff") respectfully submits the following Complaint:

**INTRODUCTION**

1.      Plaintiff is a former employee of Defendant CFSI Loan Management Company ("Defendant").  Plaintiff asserts claims of gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII").

2.      Plaintiff seeks declaratory and injunctive relief, back pay and lost benefits, front pay, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

## JURISDICTION AND VENUE

3.      Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

4.      Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B)(3), venue is proper because the unlawful employment practices giving rise to the Plaintiff's claims occurred in this judicial district and division.

5.      This Court has personal jurisdiction over Defendant for the following reasons:

   a. Defendant, either directly or through agents, has transacted business within the State of Georgia, committed tortious acts within the State, or otherwise has sufficient minimum contacts with the State and has purposefully availed itself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws.

   b. Alternatively, the Defendant has consented to this Court's jurisdiction by its actions, behavior, or specific agreement.

   c. In the case of any corporate defendant, they are incorporated in, have principal place of business in, or are otherwise doing business in the State of Georgia.

    d. Further, the exercise of jurisdiction over the Defendant complies with the Due Process Clause of the United States Constitution as the Defendant has sufficient minimum contacts with the State of Georgia such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.

6.    Defendant has caused harm to the Plaintiff within the State of Georgia, and thus should reasonably anticipate being haled into court in Georgia.

7.    This Court's exercise of personal jurisdiction over the Defendant is also consistent with the Georgia long-arm statute, O.C.G.A. § 9-10-91.

## THE PARTIES

8.    At all times relevant to this matter, Plaintiff worked out of her home in Fairburn, Georgia. Plaintiff submits herself to the jurisdiction of this Court.

9.    Defendant is a corporation with its principal place of business located at 6565 S. Dayton Street, Suite 2100, Greenwood Village, Colorado 80111.

10.    Defendant may be served with process through its Registered Agent, Wolz Corporate USA, 36 South 18th Avenue, Suite D, Brighton, Colorado 80601, if formal service of process is not waived.

11.    Defendant is an employer as defined by Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.    Plaintiff has satisfied all administrative prerequisites to perfect her claims of gender discrimination and retaliation under Title VII.  Specifically, she timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

13.    Plaintiff has now received the Notice of Right to Sue for her claims under Title VII within the last ninety (90) days.

## FACTUAL ALLEGATIONS

14.    Defendant provides lenders with construction portfolio management solutions.  Its services include obtaining construction-to-permanent loans, business entity loans, conventional rehabilitation, Small Business Administration loans, and large commercial loans.

15.    Plaintiff is female.

16.    Plaintiff began her employment with Defendant as a Relationship Manager on or about January 10, 2022.

17.    Plaintiff's position was classified as non-exempt under the Fair Labor Standards Act.

18.    Plaintiff was paid an hourly rate of $21/hour and she was eligible for a quarterly bonus of up to $2,500.

19.     As a Relationship Manager, Plaintiff was responsible for, among other things, communication with external clients and internal colleagues; administration of CFSI forms and agreements; internal communication via newsletters; onboarding clients; bidding client projects; and cross selling CFSI products to existing clients.

20.     At the time of her hire, Plaintiff reported to Vice President, National Account Executive Thomas McAndrew (male).

21.     During the time period that Plaintiff reported to Thomas McAndrew, he was consistently condescending and disrespectful towards her.

22.     In October 2022, Thomas McAndrew even docked her bonus and gave her only 75% of her bonus despite her strong performance.

23.     In fact, prior to Thomas McAndrew docking her bonus, he was out of town for a month and Plaintiff was praised for her diligence on bidding projects on behalf of the sales team single handedly.

24.     In October 2022, Plaintiff began reporting to Vice President, National Account Executive Mike Elam (male).

25.     Mike Elam consistently praised Plaintiff's performance and told her that she was doing a good job.

26.     In November 2022, Plaintiff reported to Mike Elam that she felt that Thomas McAndrew was very condescending towards her.

27.     Mike Elam told Plaintiff that Thomas McAndrew hates to see women in positions of power.  Mike Elam further indicated that Thomas McAndrew's view of women is similar to how the Indian culture views women.

28.     Plaintiff then asked Mike Elam if her bonus was docked because Thomas McAndrew was a misogynist.

29.     Mike Elam told Plaintiff that it was "not right but to just let it be."

30.     Upon information and belief, Mike Elam and Thomas McAndrew are good friends.

31.     Immediately after Plaintiff raised her concerns to Mike Elam regarding gender discrimination, Plaintiff noticed a complete shift in how he began treating her.

32.     Whereas before she raised her concerns, Mike Elam was very supportive and praised her work, following her complaint, Mike Elam was hostile and consistently nitpicked her performance for issues that had no merit.

33.     Then, a week or two later, on November 22, 2022, Plaintiff was written up for alleged performance issues that were simply not true.

34.     The writeup was completely shocking to Plaintiff as she had been consistently praised for her work.

35.     On November 29, 2022, Plaintiff had a call with Mike Elam.  During that call, Mike Elam was very hostile Plaintiff and told Plaintiff that if she did not accept a severance package and resign, she would be going down a "long hard road."

36.     The next day, on November 30, 2022, a mere eight days after Plaintiff received her first write up, Plaintiff was written up again for alleged performance issues that were not true.

37.     During the phone call to discuss the write up, Plaintiff expressed her concerns that the write ups were retaliation for her raising concerns of gender discrimination.

38.     Specifically, on that phone call, Plaintiff told Mike Elam that immediately after she reported Thomas McAndrew for gender discrimination, things had changed substantially, and she was all of a sudden being told she was a problem employee.

39.     That same day, also on November 30, 2022, Plaintiff called Insperity (Human Resources) and made a complaint of gender discrimination and retaliation.

40.     Defendant contracted with Insperity to provide certain payroll and administrative services.

41.     Insperity is a professional employer organization ("PEO") that provides human resources and administrative services such as payroll, tax remittance and related government filings to businesses.

42.      Following Plaintiff's November 30, 2022, complaint to Insperity, she was bombarded with "required" tasks that were required of her and no one else and was treated with further hostility.  These tasks were impossible to complete with Plaintiff's already very heavy workload.

43.     Plaintiff experienced a hostile work environment in retaliation for her protected activity, namely, her reporting of gender discrimination and retaliation.

44.     Plaintiff was also told that she must go to Denver "immediately" even though she lived in Georgia and has a 16-month-old child.

45.     On December 5, 2022, Plaintiff sent an email to Cherie Ross, Controller, regarding the unlawful retaliation and further told her that she felt that she had no other option than to resign based on the Company's conduct.

46.     That same day, Cherie Ross responded stating that the Company would accept her resignation effective December 5, 2022.

47.     On December 6, 2022, Plaintiff responded that she did not resign, that she had merely expressed that she felt she had no other option than to resign and that she certainly never expressed that she wished to resign on December 5, 2022.

48.     Cherie Ross responded in an email at 5:20PM Eastern Time, to Plaintiff's personal email address, and said, "Minnie, I just left you a voicemail message to discuss this matter further by phone.  Please call us back before the end of the business day, 5pm MST.  If you do not call us back before the end of the business day to discuss over the phone we will proceed with treating this as resignation of your position."

49.     Plaintiff who was driving with her child in the car, responded seven minutes past the arbitrary deadline, at 7:07PM Eastern Time, and said, "Cherie, I just received your voice message.  It is evening, and I am pulled over to respond.  I did not receive it in time to call, but I did not resign."

50.     Cherie Ross never responded to Plaintiff's email.

51.     Instead, Plaintiff was terminated.

## COUNT I
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*.**

52.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

53.     Plaintiff is a member of a protected class in that she is female.

54.     At all relevant times, Plaintiff was an "employee" of Defendant as that term is defined by Title VII, 42 U.S.C. §2000e *et seq*.

55.    At all relevant times, Defendant was an "employer" as that term is defined by Title VII, 42 U.S.C. §2000e *et seq.*

56.    Defendant discriminated against Plaintiff based on her gender in violation of Title VII by taking adverse actions against her, including but not limited to: (a) giving her a reduced bonus; (b) issuing her disciplinary actions based on false information; and (c) terminating her employment.

57.    Defendant marginalized Plaintiff while treated similarly situated male employees more favorably including a male Relationship Manager, Kyle Mingham.

58.    Defendant lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or such purported justifications are mere pretext for gender discrimination.

59.    The above-pled actions of Defendant constitute gender discrimination in violation of Title VII.

60.    The actions of Defendant in subjecting Plaintiff to the above-pled adverse actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of her federally protected rights.

61.    Plaintiff's gender was a motivating factor in the decisions by Defendant to subject her to discrimination on the basis of her gender as pled above, even if

gender was not the sole factor that motivated the decision of Defendant to subject

Plaintiff to gender discrimination.

62.     As a direct and proximate cause of Defendant's unlawful employment

actions, Plaintiff has suffered damages including emotional distress, inconvenience,

loss of income and benefits, humiliation, and other indignities.

63.     Plaintiff is entitled to recover her lost wages and economic benefits of

her employment, compensatory damages for emotional distress, front pay, and all

other legal and equitable remedies provided for by Title VII.

### COUNT II
**Retaliation and Retaliatory Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.***

64.     Plaintiff incorporates by reference all preceding paragraphs of the

Complaint.

65.     Plaintiff complained of statutorily protected activity by objecting to and

complaining about gender discrimination and retaliation.

66.     Defendant subjected Plaintiff to retaliation because she opposed,

objected to, and complained about illegal gender discrimination and retaliation by

subjecting her to a retaliatory hostile work environment, issuing her disciplinary

actions based on false information, bombarded her with "required" tasks that were

impossible to complete given her already heavy workload and were not required of anyone else, and terminating her employment.

67.    The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of Title VII.

68.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

69.    Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff.

70.    Defendant's actions were reckless and were taken in willful disregard of the probable consequences of its actions.

71.    Plaintiff is entitled to an award of back pay and benefits, front pay, injunctive relief, compensatory damages, attorneys' fees, and all other appropriate damages, remedies, and other relief available under Title VII.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendant has violated Plaintiff's rights under the federal statutes listed above;

(b) permanently enjoin Defendant from violating, in the future, Plaintiff's rights under the federal statutes listed above;

(c) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d) award Plaintiff prejudgment interest as required by law;

(e) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(f) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(g) award Plaintiff punitive damages, against Defendant sufficient to punish it for its unlawful conduct and deter it from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(h) award Plaintiff reasonable attorneys' fees and expenses; and

(i) grant such additional relief as may be just.

Respectfully submitted, this 15th day of July, 2023.

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
LEE LAW FIRM, LLC

13

695 Pylant Street NE, Suite 105
Atlanta, Georgia 30306
Telephone: (404) 301-8973
jackie@leelawga.com

**COUNSEL FOR PLAINTIFF**