## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KANITA BONDMAN**, | |
| *Plaintiff*, | CIVIL ACTION NO. _____ |
| v. | |
| **MILLENNIUM MAT COMPANY, LLC** and **STAFFING ADVANTAGE, INC.** | JURY TRIAL DEMANDED |
| *Defendants*. | |

## COMPLAINT

Plaintiff Kanita Bondman ("Ms. Bondman" or "Plaintiff") sets forth this Complaint for Damages against Millennium Mat Company, LLC ("Millennium") and Staffing Advantage, Inc. ("Staffing Advantage") (collectively "Joint Employers" or "Defendants") respectfully shows the Court as follows:

## <u>INTRODUCTION</u>

1.      This action is for illegal race-based discrimination and retaliation arising under 42 U.S.C. § 1981 ("Section 1981"). Plaintiff seeks declaratory and injunctive relief, back pay, front pay, liquidated damages, a permanent injunction against future violations, reinstatement or front pay in lieu of reinstatement,

compensatory damages, punitive damages, nominal damages, and all attorney's fees and costs.

## JURISDICTION AND VENUE

2.      Plaintiff's claims Section 1981 present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3.      Venue is proper pursuant to, *inter alia*, 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged below were committed within the geographic boundaries of the Northern District of the United States District Court, Atlanta Division, and within the state of Georgia.

4.      This Court has personal jurisdiction over Defendant as they are located within the geographic boundaries of this Court and/or conduct business within the geographic boundaries of this Court.

## PARTIES

5.      Plaintiff is a citizen of the United States and a resident of the State of Georgia. Plaintiff was an employee of Defendants at all times material to this Complaint, concluding with her unlawful termination.

6.      Plaintiff is an African American. She is a member of a protected class under Section 1981.

7.     Defendants are both companies registered to conduct business and transact business in the state of Georgia.

8.     Defendants may be served with process through their registered agents if formal service of process is not waived.

### The Millennium Mat Company, LLC:

Registered Agent Name: **CSC of Stephens County, Inc.**
Physical Address: **597 Big A Road, Tocco, GA, 30577, USA**
County: **Stephens**

### Staffing Advantage, Inc.

Registered Agent Name: **John M. Allan**
Physical Address: **7 Hepworth Ln, Cartersville, GA, 30120-5202, USA**
County: **Bartow**

9.     Defendants are subject to the anti-discrimination provisions of Section 1981.

### FACTS

### RACE ALLEGATIONS

10.     Millennium operates mat manufacturing operations and is headquartered in Suwanee, Georgia.

11.     Millennium engages a staffing agency, Staffing Advantage, Inc., to provide temporary workers.

12.     Plaintiff's race is African American.

3

13.    Elizabeth Coronado ("Ms. Coronado"), Samir Sabanovic ("Mr. Sabanovic"), and Carlos Bellamy ("Mr. Bellamy") -- all holding leadership positions at Millennium -- are Caucasian and/or Hispanic.

14.    Plaintiff was a temporary employee who applied for and accepted an assignment -- specifically for Millennium -- through Staffing Advantage.

15.    Plaintiff's assignment began on or about October 13, 2021, as a Picker in the Sports and Licensing Department/Quick Ship area.

16.    Plaintiff's job as a picker meant that she was given a piece of paper by Ms. Coronado that described a specific item, including stickers, decals, key chains, etc. that needed to be picked from the shelf.

17.    Plaintiff would pick the appropriate item and place it on a table for Ms. Coronado to review.

18.    Upon approval, Plaintiff would seal the item in an envelope, attach a shipping label, and place it into a mail bin.

19.    When Plaintiff began her assignment, she was explicitly told by Mr. Bellamy and Mr. Sabanovic that Ms. Coronado was her supervisor.

20.    Plaintiff reported only to Ms. Coronado, who assigned, reviewed, and approved Plaintiff's daily tasks as well as scheduling meetings and overtime.

21.    Neither Mr. Bellamy nor Mr. Sabanovic assigned Plaintiff work at any time.

22.    In fact, Mr. Bellamy and Mr. Sabanovic often did not even arrive until several hours into Plaintiff's shift.

23.    Other employees also understood Ms. Coronado to be a supervisor.

24.    Plaintiff never received any counseling or disciplinary actions for her performance.

25.    In fact, Millennium has a surveillance team called Guardian Angels where they monitor and record activity within all departments to ensure safety rules and company policies are being followed.

26.    At no point was Plaintiff ever reported by the Guardian Angels for breaking any policies or safety rules.

27.    During her short tenure at Millennium, Plaintiff was nominated at least four (4) times for raffles each week given to employees for being prompt, reliable, and efficient.

28.    Throughout her employment, it became increasingly clear that Millennium and its leadership were prejudiced against African American employees.

29.     Further, Plaintiff witnessed disparate treatment between the treatment of similarly situated African American employees and their Caucasian or Hispanic colleagues.

30.     For example, Plaintiff and other African American pickers were routinely given less work by Ms. Coronado than similarly situated Hispanic pickers.

31.     Plaintiff and other African American pickers would ask Ms. Coronado for assignments, only to be denied and told that there was no work available. Instead, they were told they would be sent home, or they were relegated to work like dusting shelves, etc., while Hispanic workers were consistently busy picking orders.

32.     Plaintiff often received picking lists with only one item where her Hispanic coworkers received pages of items.

33.     Other employees also noticed that Ms. Coronado distributed work unevenly, giving Hispanic employees more work than Plaintiff and other African American employees.

34.     Plaintiff was also often required to do hard manual labor such as using pallet jacks, fetching pallets, or lifting heavy boxes while her Hispanic colleagues were not.

35.    Further, Ms. Coronado bullied Plaintiff and made fun of her appearance, specifically her hair, particularly when she would wear an afro.

36.    Ms. Coronado openly discussed that she was raised to dislike people of darker complexions and that she only accepted people with "white" skin color.

37.    Plaintiff reported Ms. Coronado's mistreatment to Mr. Bellamy and Mr. Sabanovic.

38.    Ms. Coronado was never disciplined.

39.    In fact, Plaintiff was reassigned to the glue line after at least two other employees had already complained about an irritant on the glue line.

40.    Plaintiff found herself also affected by the glue, causing her eyes to get irritated and a rash to develop on her skin.

41.    Plaintiff was returned to the picking area after she complained about the glue, but there was no change in Ms. Coronado's behavior.

42.    Other employees also complained about Ms. Coronado's behavior, resulting in a meeting between the African American employees, Mr. Bellamy, and Mr. Sabanovic, but again, Ms. Coronado was not disciplined.

43.    On November 19, 2021, Plaintiff again complained about the treatment of herself and other African American workers.

44.     Plaintiff was asked by Mr. Bellamy and Mr. Sabanovic to give them time to investigate and then, if they found something to substantiate her claims, she could move forward in the process.

45.     Plaintiff agreed.

46.     Despite this, later that same day, Plaintiff was contacted by Nancy Jones ("Ms. Jones") of Staffing Advantage, who informed her that someone from Millennium had called and stated that Plaintiff's assignment was being ended despite Millennium still being in their busy season (August - January).

47.     Ms. Jones stated that she was not given a reason for her assignment being ended and there had been no mention of Plaintiff's alleged performance or conduct issues.

48.     Plaintiff's employment with Millennium was terminated on November 19, 2021.

49.     Plaintiff was fired in retaliation for her complaints about Ms. Coronado's discriminatory behavior.

## COUNT I

## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

50.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     Plaintiff is a member of a protected class (African American).

52.     Plaintiff was employed by Defendants at all times material to this Complaint.

53.     Plaintiff was qualified for the position she held.

54.     Plaintiff was subjected to race discrimination and disparate treatment by Defendants in the terms and conditions of her employment as described above.

55.     This disparate treatment was because of Plaintiff's race and in violation of Section 1981.

56.     Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination against Plaintiff was undertaken in bad faith.

57.     Defendant failed to take prompt and proper remedial measures to stop or cure the aforementioned discrimination.

58.     As a direct and proximate result of Defendant's unlawful discriminatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation.

## **COUNT II**

## **RETALIATION IN VIOLATION OF SECTION 1981**

59.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

60.     Plaintiff engaged in activities protected under Section 1981 by making multiple complaints of race-based discrimination as detailed above.

61.     After Plaintiff's complaints of Defendants' prohibited behavior, Plaintiff suffered adverse employment actions including, but not limited to, termination.

62.     As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation.

**WHEREFORE**, Plaintiff demands a trial by jury and for the following relief:

(a) That Summons issue;

(b) That Defendant be served with the Summons and Complaint;

(c) Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for the unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) Reinstatement to Plaintiff's former position with Millennium, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and/or pensions;

(e) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(f) Punitive damages in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant for their conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(g) Reasonable attorney's fees and costs;

(h) Judgment against Defendant for damages incurred by Plaintiff;

(i) Judgment against Defendant in such an amount as will fully and adequately compensate Plaintiff; and

(j) Other and further relief as the Court deems just and proper.

Respectfully submitted, this 17th day of July, 2023.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
Attorney for Plaintiff

THE MIXON LAW FIRM
3344 Peachtree Rd. Suite 800
Atlanta, GA 30326
Telephone: (770) 955-0100
steve@mixon-law.com