

THE FOGLE
—— LAW FIRM, LLC ——

*"Effective Immigration Solutions"*

H. GLENN FOGLE, JR., ESQ. (ADMITTED IN GA)
DAVID LUNEL, ESQ. (ADMITTED IN GA & PARIS, FR)
JULIO VALENTIN ZACONET (ADMITTED IN NC)
OF COUNSEL: PRADEEK SUSHEELAN, ESQ. (ADMITTED IN NY)
OF COUNSEL: MARY M. SHIN, ESQ. (ADMITTED IN HI)

ATLANTA OFFICE        404.522.1852
CHARLESTON OFFICE   843.572.6822
CHARLOTTE OFFICE     704.405.9060
LOS ANGELES OFFICE   213.344.3780

March 3, 2022

United States Citizenship and Immigration Services
Atlanta Filed Office
2150 Parklake Drive NE
Atlanta, GA 30345

> **RE:**   **NOID – I-130, Petition for Alien Relative**
> **U.S. Petitioner Spouse: Dennis Ford II**
> **Beneficiary: Bassey Bassey Enun -A219-637-624**
> **Receipt Number: MSC2190188665**

Dear Officer:

This letter is in response to your Notice of Intent to Deny ("NOID"), dated **December 7, 2021**, in connection with Mr. Ford III's I-130 petition filed on behalf of his spouse, Bassey Bassey Enun. Properly executed Forms G-28 pertaining to our firm's representation are enclosed.

**This Response should be considered as timely filed.**  In response to the coronavirus (COVID-19) pandemic, USCIS extended the flexibilities announced on March 30, 2020, to assist applicants and petitioners who are responding to NOID's if the issuance date listed on the request is between March 1, 2020, and March 26, 2022, inclusive. Therefore, USCIS will consider a response to RFE's <u>received within 60 calendar days after the response due date set in the request or notice before taking any action</u>.

The original due date for this was 33 days from December 7, 2021 (the NOID was received by mail). The due date would become Sunday January 9, 2022. However, pursuant to 8 C.F.R. Section 1.2: when computing the period of time for taking any action [. . .] shall include Saturdays, Sundays, and legal holidays, except that when the last day of the period computed falls on a Saturday, Sunday, or a legal holiday, the period shall run until the end of the next day which is not a Saturday, Sunday, or a legal holiday. As such, the initial due date would be Monday January 10, 2022. Then, including the 60 additional days of flexibility due to COVID-19, the due date becomes Friday March 11, 2022.  **As such, this NOID is timely filed.**

Enclosed please find:

- The Service's notice (NOIT) dated December 7, 2021.
- Printout of USCIS Alert "*USCIS Extends Flexibility for Responding to Agency Requests*" dated 12/30/21.
- Executed Forms G-28 of the Petitioner and the Beneficiary.

To facilitate the Service's review of our response, pertinent portions of your NOID letter have been reproduced in **bold** below and the response follows:

### ISSUE

After reviewing the evidence and the testimony provided at the interview, USCIS records indicate that the beneficiary is not eligible for the requested benefit for the following reasons

1. Petitioner and beneficiary were interviewed separately concerning the bona fides of their marriage. Their testimonies were consistent with respect to their names, place, and dates of birth; when and where they met, first date, current address, details about their apartment, who does the grocery shopping, how they got to the interview, details about employments, tattoos, medications, and information about their parents. "*However, on issues that go to the heart of your marriage, the sworn testimony was inconsistent on many material points.*"

2. Due to the inconsistencies in their sworn testimonies and evidence, USCIS Immigration Officers conducted a site visit at the couple's claimed marital address of 3833 Peachtree Rd NE Apt. 606 Brookhaven, GA 30319. "*During the visit, Immigration Officers encountered Jefferey Orris, who claimed to be renting a room in the apartment. Orris stated that only he and the beneficiary, Bassey Enun lived in the apartment and that he had never heard the name Dennis Ford. Immigration Officers also spoke to the property manager who advised that the beneficiary signed a lease in July of 2021 and that she was the only occupant on the lease. The apartment lease that you provided to USCIS as evidence lists both you and the beneficiary as occupants and was dated April 21, 2021. The lease that you provided appears to be fraudulent as the information on the lease is contradictory to the information provided by the property manager.*"

Based on the above information, USCIS has concluded that the Petitioner and Beneficiary do not live together, and they entered into a marriage for the sole purpose of procuring an immigration benefit

### RESPONSE

The Petitioner and Beneficiary have addressed every issue raised within the NOID; and have enclosed supporting documents, and additional bona fide marriage evidence

1. **Regarding the material inconsistency on the Petitioner and Beneficiary's sworn testimony:**

   The Petitioner and the Beneficiary are submitting the following information and evidence:

A. **Notarized declaration of the Petitioner, Dennis Allen Ford II, written under penalty of perjury,** addressing each issue raised by the Service in the NOID, regarding his testimony during his and his spouse's interview on April 27, 2021.

   This declaration is supported by the following documents:

   - Copies of the Petitioner's Georgia Identification Card, showing his current marital address.
   - Documents attached at Exhibits **C** to **M**.

B. **Notarized declaration of the Beneficiary, Bassey Bassey Enun, written under penalty of perjury,** addressing each issue raised by the Service in the NOID, regarding her testimony during her and her spouse's interview on April 27, 2021.

   This declaration is supported by the following documents:

   - Copies of the Beneficiary's Georgia Identification Card showing her current marital address.
   - Documents attached at Exhibits **C** to **M**.

2. **Regarding the USCIS site visit at the couple's marital address of 3833 Peachtree Rd NE Apt. 606 Brookhaven, GA 30319:**

   First, please see Exhibits "**A**" and "**B** " as the Petitioner and the Beneficiary addressed this very issue raised by the Service in their declarations.

C. The Petitioner and Beneficiary's signed current lease agreement, listing both names as residents/tenants at 3833 Peachtree Road # 0606, Atlanta, GA 30319, along with their Resident Ledger, listing their monthly fees and payments. Note that this lease was electronically signed on April 9, 2021, by both the Petitioner and the Beneficiary.

D. Letter from Cristina Garcia, Property Manager of Atler at Brookhaven, dated December 14, 2021. Ms. Garcia certifies that the Petitioner and the Beneficiary are the occupants and lease holders of unit #606 located at 3833 Peachtree Road, Atlanta, GA 30319. She included a copy of the lease agreement's e-signature certificate and document audit,

showing that the lease renewal was sent to the Petitioner and Beneficiary's email addresses on April 6, 2021, and signed and executed by all parties on April 9, 2021. Please note that the Property Manager states that "*community management cannot confirm verbal statements of employees past or present. <u>Additionally, employee statements cannot confirm nor deny the physical occupancy of any tenant on the property, including the unit leased by the residents.</u> To the best of our knowledge this unit has been occupied by Dennis Ford and Bassey Enun as of their original move in dat*e."

As such, the Immigration Officers who spoke to "a property manager" at Atler at Brookhaven were probably misadvised that the beneficiary signed a lease in July of 2021 and that she was the only occupant on the lease. Also, note Ms. Garcia verified that employee's statements cannot confirm nor deny the physical occupancy of any tenant at Atler at Brookhaven, including the unit leased by the residents.

E. Letter from Antonio Ellis, Leasing Consultant at Atler at Brookhaven, dated December 27,2021, stating that the Petitioner and Beneficiary live at Atler at Brookhaven; and attached to his letter a copy of the e-signature pages from their lease agreement.

F. Printout of Riverside Military Academy tuition rates and calendar for period 2021-2022, confirming the financial necessity the Beneficiary and Petitioner had of renting their apartment via Airbnb to pay for their child's school. Please see details at the Petitioner and Beneficiary's declarations attached at Exhibits **A** and **B**.

G. Printout of Airbnb records, showing that a man named Jeffrey Orris was a guest at the Petitioner and Beneficiary's apartment during the months of July-August 2021.

H. Printout of Jailing Information and Charges of Jeffrey Orris evidencing this person is not a trustworthy person.

I. Notarized affidavit written by Mbong Amanta, Beneficiary's sister, confirming that the day of the site visit conducted by immigration officers and the entire month following, the Petitioner and Beneficiary were living with her at her residence, because they were renting their own apartment to raise the necessary funds to pay for their child's school tuition.

3. **Additional bona fide marriage documents:**

In interest of clarifying the observations presented in the NOID, the Petitioner and the Beneficiary would like to submit updated bona fide marriage documents confirming that they

live together, and they did not enter into a marriage for the sole purpose of procuring an immigration benefit:

**J.** Joint Esurance automobile policy insurance, listing the Petitioner and the Beneficiary as insured parties of a policy valid from 01/26/22 to 07/26/22.

**K.** Esurance Georgia Insurance policy information card, listing the Petitioner and the Beneficiary as insured parties and their marital residential address located at 3833 Peachtree Road # 0606, Atlanta, GA 30319. This policy is effective from January 26, 2022, to July 26, 2022.

**L.** Copy of Bill of Sale and Assignment of Title by Registered Owner AND Vehicle Title, for an automobile that the Petitioner and Beneficiary jointly purchased on January 25, 2021, listing their names and marital residential address located at 3833 Peachtree Road # 0606, Atlanta, GA 30319.

**M.** Letter from the Internal Revenue Service, dated February 26, 2022, sent to the Petitioner to his marital residential address located at 3833 Peachtree Road # 0606, Atlanta, GA 30319.

**STANDARD OF PROOF**

*Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010) states the standard of proof in administrative immigration proceedings is "Preponderance of the evidence" meaning the Petitioner must provide evidence that demonstrates his claim is **"probably true."** USCIS guidance Memos that are part of the record state **"preponderance of the evidence,"** means, **"That the matter asserted is more likely than not to be true**. Filings are **not** required to demonstrate eligibility beyond a reasonable doubt." Per 8 CFR § 103.2(b)(16) a **determination must be made based on only on information the Petitioner is aware of and only after** providing an **opportunity to rebut** the information. Hereby, utilizing inferences instead of the substantial and probative evidence standard can lead USCIS to erroneously substitute the adjudicator's own image of a marriage to determine that a marital union is a sham marriage. *Damon v. Ashcroft*, 360 F.2d 1084 (9th Cir. 2004). This personal inference is impermissible in adjudicating petitions, which should be adjudicated under the substantial and probative evidence standard.

Further, **USCIS is required to consider** and give due weight to **all** facts, evidence, and testimony on record. *See Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972). *"[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of§ 706." Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

Finally, the "[t]ruth is to be determined not by the quantity of evidence alone, but by its quality." *Matter of E-M-,* 20 I. & N. Dec. 77, 80 (BIA 1989). The Board of Immigration Appeals ("BIA") explained that **"preponderance of the evidence" is the "rock bottom [of] the fact-finding level of civil litigation,"** a lower standard than *"clear, convincing and unequivocal." Matter of E-M-, 20* I&N Dec. at 79, fn.1. Only a very low standard of proof is required to be established. **The Supreme Court has stated that if the Petitioner submits relevant, probative, and credible evidence that shows the claim is "more likely than not," true the Applicant or Petitioner has satisfied the standard of proof.** *See U.S. v. Cardozo- Fonseca*, 480 U.S. 421 (1987).

## CONCLUSION

We trust the enclosed evidence adequately responds to the Service's request and establishes the Applicant is more likely than not eligible for approval of this petition *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). The Petitioner and Beneficiary have addressed every concern raised by the NOID and provided the proper evidence requested by the service.

As such, we respectfully request the Service to exercise discretion favorably by providing a prompt adjudication of this petition. Thank you in advance for your kind assistance.

Very truly yours,
**THE FOGLE LAW FIRM, LLC**

By: David Lunel, Esq.

DL/es
Enclosures: As indicated.

December 7, 2021



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
2150 Parklake Drive
Atlanta, GA 30345

## U.S. Citizenship and Immigration Services



MSC2190188665



A219-637-624

DENNIS ALLEN FORD II
c/o NATALIE GRIGGS
THE FOGLE LAW FIRM LLC ATLANTA
55 IVAN ALLEN JR BLVD STE 830
ATLANTA, GA 30308

RE: BASSEY BASSEY ENUN
I-130, Petition for Alien Relative

## <u>NOTICE OF INTENT TO DENY</u>

Dear DENNIS FORD II:

On October 5, 2020, you filed a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services (USCIS) on behalf of BASSEY ENUN (the beneficiary). You sought to classify the beneficiary as the spouse of a U.S. citizen (USC) under section 201(b)(2)(A)(i) of the Immigration and Nationality Act (INA).

After a thorough review of your petition, the testimony provided during your interview, and the record of evidence, we must inform you that we intend to deny your petition.

To demonstrate that an individual is eligible for approval as the beneficiary of a petition filed under INA 201(b)(2)(A)(i), a petitioner must:

- Establish a bona fide spousal relationship with the beneficiary; and
- Establish that he or she is a U.S. citizen (USC) or lawful permanent resident (LPR).

In visa petition proceedings, it is the petitioner's burden to establish eligibility for the requested immigration benefit sought under the INA. See Matter of Brantigan, 11 I&N Dec. 493, 495 (BIA 1966); Title 8, Code of Federal Regulations (8 CFR), section 103.2(b). You must demonstrate that the beneficiary can be classified as your spouse. See 8 CFR 204.2(a).

### Statement of Facts and Analysis, Including Ground(s) for Denial

On April 27, 2021, you and the beneficiary appeared for an interview with an Immigration Services Officer in connection with your Form I-130 and the beneficiary's Form I-485, Application to Register Permanent Residence or Adjust Status. At the interview, you and the beneficiary provided testimony under oath.

The evidence in the record and testimony did not establish the claimed relationship.

The beneficiary must be eligible for the benefit sought at the time the petition was filed. See Matter of

Drigo, 18 I&N Dec. 223 (BIA 1982).  A petitioner must establish eligibility at the time of filing a petition; a petition cannot be approved at a future date after the petitioner becomes eligible under a new set of facts.  See Matter of Katigbak, 14 I&N Dec. 45 (Reg. Com. 1971).  A petitioner may not make material changes to a petition that has already been filed in an effort to make an apparently deficient petition conform to USCIS requirements.  See Matter of Izumii, 22 I&N Dec. 169 (BIA 1998).

After reviewing the evidence and the testimony provided at the interview, USCIS records indicate that the beneficiary is not eligible for the requested benefit sought for the following reason(s).

The petitioner must show, by a preponderance of the evidence, that the marriage was legally valid and bona fide at its inception, and "not entered into for the purpose of evading the immigration laws." Matter of Laureano, 19 I&N Dec. 1, 3 (BIA 1983).  Although evidence to establish intent at the time of marriage can take many forms, some of those forms include:  "proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences."  Id.

When there is reason to doubt the validity of a marital relationship, the petitioner must present evidence to show that the marriage was not entered into for the purpose of evading immigration law. See Matter of Phillis, 15 I&N Dec. 385, 386 (BIA 1975).  To demonstrate that the purpose of the marriage was not to evade the immigration laws, a petitioner may submit documentation showing, for instance, joint ownership of property, joint tenancy of a common residence, commingling of financial resources, birth certificates of children born to the union, and sworn or affirmed affidavits from third parties with personal knowledge of the marital relationship.  See 8 CFR 204.2(a)(1)(iii)(B).

You submitted the following evidence:

- Apartment Lease
- Bank Statements
- Georgia Power bills
- Xfinity bills
- Goodwill merchandise hold form
- Copies of envelopes addressed to Dennis Ford
- Receipts from Orie Peanuts Co., Bath and Body Works, and Aloft
- Renters Insurance
- Affidavits from Dr. Enun Bassey, Betty Bassey, Lavetta Martin-Frazier, and Devona Martin-Frazier
- Marriage Certificate
- Petition to amend marriage record

Both you and the beneficiary were interviewed separately concerning the bona fides of your marriage. Your testimony and the beneficiary's testimony were consistent with respect to your names, place and dates of birth; when and where you met, your first date, current address, details about your apartment, who does the grocery shopping, how you got to the interview, details about your employment, tattoos, medications, and information about your parents.

However, on issues that go to the heart of your marriage, the sworn testimony was inconsistent on many material points.  Specifically:

- You were both asked, "When and where did you marry?" You answered, "2018 September 24 or 21st something like that. It was in Douglas County at a probate court." The beneficiary

answered, "August 19, 2019, Douglas County Probate court."

- You were both asked, "Who all attended the ceremony?' You answered, "Her mom, me, and Barbara Johnson." The beneficiary answered, "me, him and my mom."
- You were both asked, "How much is the monthly rent? Who pays the rent in your house?" You answered, "$1601 base rent, parking is $60, another $400 for utilities. I do." The beneficiary answered, "base rent is $1601, parking is $60, and some common utilities that the building charges us, its not fixed, it's a big problem they keep changing it."
- You were both asked, "How many individual and joint bank accounts do you and your spouse have right now? Where are they at and what kind of accounts are these?" You answered, "We have two joints and that's savings and checking, and we just opened one with Chase. We have a credit card with Bank of America, I have numerous of individual accounts, I have Navy Federal, USAA, Service Credit Union, Self Lender, Credit Karma, She has just Bank of America." The beneficiary answered, individual two, joint two, he has one with Navy Federal. Checking account with Chase, Bank of America savings that was mine, but then I added him. Two individual accounts one with Bank of America and one with Wells Fargo."
- You were both asked, "How does your spouse get money?" You answered, "me." The beneficiary answered, "My parents send me money."
- You were both asked, "What cell phone provider does your spouse use? What cell phone provider do you use? What's your and your spouse's number?" You answered, "She has ATT 706-294-9856. It's called Metro by T-Mobile now, 706-622-8487, there's another number that I don't know, but I'm sure she knows it." The beneficiary answered, "Metro PCS, 770-896-9525, ATT 706-294-9856."
- You were both asked, "What is your religious beliefs? What is your spouse's?" You answered, "spiritual, spiritual." The beneficiary answered, "none, none."
- You were both asked, "Do you smoke or have any health conditions?" You answered, "no health conditions, I don't really smoke I'm trying to quit, so I don't smoke." The beneficiary answered, "no he does not."
- You were both asked, "How many children does your spouse have? Names?" You answered, "One, Dieusait 8." The beneficiary answered, "one, Dieusait, he's 10."
- You were both asked, "Have you ever been arrested?" You answered, "yes, traffic violations and failure to appears." The beneficiary answered, "no."
- You also submitted a Georgia issued Identification Card with the address, 1677 Spoonbill Rd Jonesboro, GA 30238 issued to you on February 3, 2021. However, you claimed to be living at 3833 Peachtree Rd NE Brookhaven, GA 30319 since October of 2018.

Due to the inconsistensies in your sworn testimony and evidence, USCIS conducted an administrative investigation. Immigration Officers conducted a site visit at your claimed marital address of 3833 Peachtree Rd NE Apt. 606 Brookhaven, GA 30319. During the visit, Immigration Officers encountered Jefferey Orris, who claimed to be renting a room in the apartment. Orris stated that only he and the beneficiary, Bassey Enun lived in the apartment and that he had never heard the name Dennis Ford. Immigration Officers also spoke to the property manager who advised that the beneficiary signed a lease in July of 2021 and that she was the only occupant on the lease. The apartment lease that you provided to USCIS as evidence lists both you and the beneficiary as occupants and was dated April 21, 2021. The lease that you provided appears to be fraudulent as the information on the lease is contradictory to the information provided by the property manager. Based on this information, USCIS has concluded that you and the beneficiary do not live together and you have entered into a marriage for the sole purpose of procuring an immigration benefit.

You have thirty (30) days (33 days if this notice was received by mail) from the date of this notice to submit additional information, evidence or arguments to support the petition, and an explanation for all discrepancies. Failure to respond to this request within the time allotted will result in the denial of

the petition.

You must either mail the requested information to the address shown below or scan and upload your response using your USCIS online account (if applicable). Please note, if the request is for original documents, you must submit that information by mail.

**Please include a copy of this letter with your response by mail to this address:**

**U.S. Citizenship and Immigration Services**
**Atlanta Field Office**
**2150 Parklake Drive**
**Atlanta, GA 30345**

Sincerely,

Shineka C. Miller
Field Office Director

cc: NATALIE GRIGGS

MSC2190188665

A219-637-624

USCIS Response to Coronavirus (COVID-19)


**U.S. Citizenship
and Immigration
Services**

Home > Newsroom > All News > Alerts > USCIS Extends Flexibility for Responding to Agency Requests

# USCIS Extends Flexibility for Responding to Agency Requests

Release Date : 12/30/2021

In response to the COVID-19 pandemic, U.S. Citizenship and Immigration Services is extending the flexibilities it announced on March 30, 2020, to assist applicants, petitioners, and requestors who are responding to certain:

- Requests for Evidence;
- Continuations to Request Evidence (N-14);
- Notices of Intent to Deny;
- Notices of Intent to Revoke;
- Notices of Intent to Rescind;
- Notices of Intent to Terminate regional centers; and
- Motions to Reopen an N-400 Pursuant to 8 CFR 335.5, Receipt of Derogatory Information After Grant.

**Response Due Date:**

This flexibility applies to the documents listed above if the issuance date listed on the request, notice or decision is between March 1, 2020, and March 26, 2022, inclusive. USCIS will consider a response to the above requests and notices received within 60 calendar days after the response due date set in the request or notice before taking any action.

In addition, USCIS will consider a Form I-290B, Notice of Appeal or Motion, or Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings (Under Section 336 of the INA), if:

- The form was filed up to 90 calendar days from the issuance of a decision we made; and
- We made that decision between Nov. 1, 2021, and March 26, 2022, inclusive.

Under previously announced flexibilities, USCIS considered a Form I-290B or a Form N-336 if the form was filed up to 60 calendar days from the issuance of a decision by USCIS, and if such decision was issued between March 1, 2020, and Oct. 31, 2021, inclusive.

Please visit uscis.gov/coronavirus for USCIS updates.

Last Reviewed/Updated: 12/30/2021



# Notice of Entry of Appearance
## as Attorney or Accredited Representative
### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 05/31/2021

---

## Part 1. Information About Attorney or Accredited Representative

1. USCIS Online Account Number (if any)

   ▶ N / A

### Name of Attorney or Accredited Representative

**2.a.** Family Name (Last Name)   Lunel

**2.b.** Given Name (First Name)   David

**2.c.** Middle Name   Louis

### Address of Attorney or Accredited Representative

**3.a.** Street Number and Name   55 Ivan Allen Jr. Blvd.

**3.b.** ☐ Apt.  ☒ Ste.  ☐ Flr.   830

**3.c.** City or Town   Atlanta

**3.d.** State  GA   **3.e.** ZIP Code  30308

**3.f.** Province   N/A

**3.g.** Postal Code   N/A

**3.h.** Country   United States

### Contact Information of Attorney or Accredited Representative

4. Daytime Telephone Number   4047475980

5. Mobile Telephone Number (if any)   4045221852

6. Email Address (if any)   david@foglelaw.com

7. Fax Number (if any)   4705926989

---

## Part 2. Eligibility Information for Attorney or Accredited Representative

Select **all applicable** items.

**1.a.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

Licensing Authority

Georgia

**1.b.** Bar Number (if applicable)

GA874002

**1.c.** I (select **only one** box) ☒ am not  ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law. If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

**1.d.** Name of Law Firm or Organization (if applicable)

The Fogle Law Firm LLC

**2.a.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

**2.b.** Name of Recognized Organization

N/A

**2.c.** Date of Accreditation (mm/dd/yyyy)   N/A

**3.** ☐ I am associated with

N/A

, the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

**4.a.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

**4.b.** Name of Law Student or Law Graduate

N/A

---

## Part 3.  Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

This appearance relates to immigration matters before (select **only one** box):

**1.a.** ☒ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

I-130

**2.a.** ☐ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

N/A

**3.a.** ☐ U.S. Customs and Border Protection (CBP)

**3.b.** List the specific matter in which appearance is entered.

N/A

**4.** Receipt Number (if any)

▶ | M | S | C | 2 | 1 | 9 | 0 | 1 | 8 | 8 | 6 | 6 | 5 |

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select **only one** box):
☐ Applicant   ☒ Petitioner   ☐ Requestor
☐ Beneficiary/Derivative   ☐ Respondent (ICE, CBP)

## Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name)

Ford II

**6.b.** Given Name (First Name)

Dennis

**6.c.** Middle Name

Allen

**7.a.** Name of Entity (if applicable)

N/A

**7.b.** Title of Authorized Signatory for Entity (if applicable)

N/A

**8.** Client's USCIS Online Account Number (if any)

▶ | N | / | A | | | | | | |

**9.** Client's Alien Registration Number (A-Number) (if any)

▶ A- | N | / | A | | | | |

## Client's Contact Information

**10.** Daytime Telephone Number

7062949856

**11.** Mobile Telephone Number (if any)

7062949856

**12.** Email Address (if any)

basseyenun@outlook.com

## Mailing Address of Client

**NOTE:** Provide the client's mailing address. **Do not** provide the business mailing address of the attorney or accredited representative **unless** it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**13.a.** Street Number and Name

3833 Peachtree Rd. NE

**13.b.** ☒ Apt.   ☐ Ste.   ☐ Flr.   606

**13.c.** City or Town   Brookhaven

**13.d.** State  GA    **13.e.** ZIP Code  30319

**13.f.** Province   N/A

**13.g.** Postal Code   N/A

**13.h.** Country

United States

## Part 4.  Client's Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form.  According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

## Part 4. Client's Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery. USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select **all applicable** items below. You may change these elections through written notice to USCIS.

**1.a.** ☐ I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** ☐ I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

**NOTE:** If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative. If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** ☐ I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

**2.a.** Signature of Client or Authorized Signatory for an Entity

➡️ [signature]

**2.b.** Date of Signature (mm/dd/yyyy)  `03/07/22`

## Part 5. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1.a.** Signature of Attorney or Accredited Representative

[signature]

**1.b.** Date of Signature (mm/dd/yyyy)  `03/07/22`

**2.a.** Signature of Law Student or Law Graduate

**2.b.** Date of Signature (mm/dd/yyyy)

## Part 6.  Additional Information

If you need extra space to provide any additional information within this form, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper.  Type or print your name at the top of each sheet; indicate the **Page Number, Part Number,** and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a**  Family Name (Last Name)  Enun

**1.b.**  Given Name (First Name)  Bassey

**1.c.**  Middle Name  Bassey

| **2.a.** Page Number | **2.b.** Part Number | **2.c.** Item Number |
|---|---|---|
| N/A | N/A | N/A |

**2.d.** N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

| **3.a.** Page Number | **3.b.** Part Number | **3.c.** Item Number |
|---|---|---|
| N/A | N/A | N/A |

**3.d.** N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

| **4.a.** Page Number | **4.b.** Part Number | **4.c.** Item Number |
|---|---|---|
| N/A | N/A | N/A |

**4.d.** N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

| **5.a.** Page Number | **5.b.** Part Number | **5.c.** Item Number |
|---|---|---|
| N/A | N/A | N/A |

**5.d.** N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

| **6.a.** Page Number | **6.b.** Part Number | **6.c.** Item Number |
|---|---|---|
| N/A | N/A | N/A |

**6.d.** N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A

N/A



## Notice of Entry of Appearance
## as Attorney or Accredited Representative
### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 05/31/2021

---

### Part 1. Information About Attorney or Accredited Representative

**1.** USCIS Online Account Number (if any)

▶ N / A

#### Name of Attorney or Accredited Representative

**2.a.** Family Name (Last Name)  Lunel

**2.b.** Given Name (First Name)  David

**2.c.** Middle Name  Louis

#### Address of Attorney or Accredited Representative

**3.a.** Street Number and Name  55 Ivan Allen Jr. Blvd.

**3.b.** ☐ Apt.  ☒ Ste.  ☐ Flr.  830

**3.c.** City or Town  Atlanta

**3.d.** State  GA  **3.e.** ZIP Code  30308

**3.f.** Province  N/A

**3.g.** Postal Code  N/A

**3.h.** Country  United States

#### Contact Information of Attorney or Accredited Representative

**4.** Daytime Telephone Number
4047475980

**5.** Mobile Telephone Number (if any)
4045221852

**6.** Email Address (if any)
david@foglelaw.com

**7.** Fax Number (if any)
4705926989

---

### Part 2. Eligibility Information for Attorney or Accredited Representative

Select **all applicable** items.

**1.a.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

Licensing Authority
Georgia

**1.b.** Bar Number (if applicable)
GA874002

**1.c.** I (select **only one** box) ☒ am not ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law. If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

**1.d.** Name of Law Firm or Organization (if applicable)
The Fogle Law Firm LLC

**2.a.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

**2.b.** Name of Recognized Organization
N/A

**2.c.** Date of Accreditation (mm/dd/yyyy)
N/A

**3.** ☐ I am associated with
N/A
, the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

**4.a.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

**4.b.** Name of Law Student or Law Graduate
N/A

---

## Part 3.  Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

This appearance relates to immigration matters before (select **only one** box):

**1.a.** ☒ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

I-130

**2.a.** ☐ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

N/A

**3.a.** ☐ U.S. Customs and Border Protection (CBP)

**3.b.** List the specific matter in which appearance is entered.

N/A

**4.** Receipt Number (if any)

▶ M S C 2 1 9 0 1 8 8 6 6 5

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select **only one** box):

☐ Applicant   ☐ Petitioner   ☐ Requestor
☒ Beneficiary/Derivative   ☐ Respondent (ICE, CBP)

## Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name)

Enun

**6.b.** Given Name (First Name)

Bassey

**6.c.** Middle Name

Bassey

**7.a.** Name of Entity (if applicable)

N/A

**7.b.** Title of Authorized Signatory for Entity (if applicable)

N/A

**8.** Client's USCIS Online Account Number (if any)

▶ N / A

**9.** Client's Alien Registration Number (A-Number) (if any)

▶ A- 2 1 9 6 3 7 6 2 4

## Client's Contact Information

**10.** Daytime Telephone Number

7062949856

**11.** Mobile Telephone Number (if any)

7062949856

**12.** Email Address (if any)

basseyenun@outlook.com

## Mailing Address of Client

**NOTE:** Provide the client's mailing address. **Do not** provide the business mailing address of the attorney or accredited representative **unless** it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**13.a.** Street Number and Name

3833 Peachtree Rd. NE

**13.b.** ☒ Apt.  ☐ Ste.  ☐ Flr.  606

**13.c.** City or Town   Brookhaven

**13.d.** State  GA   **13.e.** ZIP Code  30319

**13.f.** Province   N/A

**13.g.** Postal Code   N/A

**13.h.** Country

United States

## Part 4.  Client's Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form.  According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

## Part 4. Client's Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery. USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select all applicable items below. You may change these elections through written notice to USCIS.

**1.a.** ☐ I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** ☐ I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

**NOTE:** If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative. If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** ☐ I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

**2.a.** Signature of Client or Authorized Signatory for an Entity

➡ [signature]

**2.b.** Date of Signature (mm/dd/yyyy)   03/03/22

## Part 5. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1.a.** Signature of Attorney or Accredited Representative

[signature]

**1.b.** Date of Signature (mm/dd/yyyy)   03/07/22

**2.a.** Signature of Law Student or Law Graduate

**2.b.** Date of Signature (mm/dd/yyyy)

## Part 6.  Additional Information

If you need extra space to provide any additional information within this form, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper.  Type or print your name at the top of each sheet; indicate the **Page Number, Part Number,** and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a**  Family Name (Last Name)  | Enun

**1.b**  Given Name (First Name)  | Bassey

**1.c.**  Middle Name  | Bassey

**2.a.** Page Number | N/A   **2.b.** Part Number | N/A   **2.c.** Item Number | N/A

**2.d.**
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A

**3.a.** Page Number | N/A   **3.b.** Part Number | N/A   **3.c.** Item Number | N/A

**3.d.**
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A

**4.a.** Page Number | N/A   **4.b.** Part Number | N/A   **4.c.** Item Number | N/A

**4.d.**
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A

**5.a.** Page Number | N/A   **5.b.** Part Number | N/A   **5.c.** Item Number | N/A

**5.d.**
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A

**6.a.** Page Number | N/A   **6.b.** Part Number | N/A   **6.c.** Item Number | N/A

**6.d.**
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A
N/A



# Declaration of Dennis Allen Ford II

My name is Dennis Allen Ford II. I am a U.S. citizen.  I was born in Miami, FL on November 20, 1987.  I live at 3833 Peachtree Rd. Apt 606, Brookhaven, GA, 30319, with my wife, Bassey Enun.

On October 5, 2020, I filed Form I-130, Petition for Alien Relative, on behalf of my wife. During our last I-130 interview on April 27, 2021, we were asked details of our lives. On December 7, 2021, USCIS issued a Notice of Intent to Deny (NOID) my I-130.

I would like to provide clarifications to the discrepancies on the record.   USCIS states the following in the NOID letter:

1. **"You were both asked, "When and where did you marry?" You answered, "2018 September 24 or 21st something like that. It was in Douglas County at a probate court." The beneficiary answered, "August 19, 2019, Douglas County Probate court."**

   I am not good at remembering dates. Dates are my wife's thing. We complement each other that way. Besides, we were initially going to marry around that period, but my wife wanted her parents with us. For some reason those dates stuck in my head.

2. **"You were both asked, "Who all attended the ceremony?' You answered, "Her mom, me, and Barbara Johnson." The beneficiary answered, "me, him and my mom."**

   My mother in-law, my wife and I were in attendance. Ms.  Barbara Johnson officiated the ceremony. Bassey probably didn't count her in because she's not a member of our family. She was there, so I mentioned her.

3. **You were both asked, "How much is the monthly rent? Who pays the rent in your house?" You answered, "$1,601 base rent, parking is $60, another $400 for utilities. I do." The beneficiary answered, "base rent is $1,601, parking is $60, and some common utilities that the building charges us, it's not fixed, it's a big problem they keep changing it."**

In summary, it costs us anywhere from $2,000 - $2,200 to live at our place because the building can't seem to figure out the cost of running the common areas, and we are obligated to bear the cost of that. My wife and answered truthfully when we both said our based base rent is $1601 and parking is $60.

It seems like the USCIS officer assumed that the cost of our utilities equates a disparity in our answers, which is very unfair. When I was asked, I answered honestly. I provided the monthly rent and parking fee because it is a fixed fee.  My wife also answered truthfully.  For the other common building utilities, I made a calculation of $400. However, my wife was also correct in her answer because common building utilities fees are not fixed, the building management keeps changing them.

4. **You were both asked, "How many individual and joint bank accounts do you and your spouse have right now? Where are they at and what kind of accounts are these?" You answered, "We have two joints and that's savings and checking, and we just opened one with Chase. We have a credit card with Bank of America, I have numerous of individual accounts, I have Navy Federal, USAA, Service Credit Union, Self-Lender, Credit Karma, she has just Bank of America." The beneficiary answered,  individual two, joint two, he has one with Navy Federal. Checking account with Chase, Bank of America savings that was mine, but then I added him. Two individual accounts one with Bank of America and . one with Wells Fargo."**

We have had some of these accounts for years, others were setup the week of our interview.  We have since signed up for some and closed others.  Currently we have closed our joint accounts as FACTS (the payments processing company for Riverside Military Academy kept processing payments despite Dieusait not receiving a visa to attend school). Also, I closed my PEN Fed Credit union account and opened a new chase & Bank of America account. Lastly, Bassey closed her savings with Bank of America and now has just two personal accounts one with Bank of America and the other with Wells Fargo.

5. **You were both asked, "How does your spouse get money?" You answered, "me." The beneficiary answered, "My parents send me money."**

I provide for my family. I don't consider any assistance my in-laws provide as income.

6. **You were both asked, "What cell phone provider does your spouse use? What cell**

phone provider do you use? What's your and your spouse's number?" You answered, "She has ATT 706-294-9856. It's called Metro by T-Mobile now, 706-622-8487, there's another number that I don't know, but I'm sure she knows it." The beneficiary answered, "Metro PCS, 770-896-9525, ATT 706-294-9856.

My wife remembers things as dates and numbers better than I do.  I honestly don't know all the numbers I've used in my lifetime, but she might. That's her gift. I know enough to remember hers. Also, please keep in mind that I have saved the numbers in my phone, so I don't have to dial every time I need to call. That's why sometimes, I don't remember, or I can get confused. Also, note the companies we mentioned had merged to one another, so it is also difficult to keep track of the exact name of phone carries these days.

7. **You were both asked, "What is your religious beliefs? What is your spouse's?" You answered, "spiritual, spiritual." The beneficiary answered, "none, none."**

That's her opinion and I respect that. We live together, that's why I know we are both spiritual but not religious. While she and I may take different routes, the destination is the same. No one can hold another responsible or judge them for their religious belief.

8. **You were both asked, "Do you smoke or have any health conditions?" You answered, "no health conditions, I don't really smoke I'm trying to quit, so I don't smoke." The beneficiary answered, "no he does not.**

We did not contradict each other. We both answered truthfully. I do not smoke. I used to smoke but decided to quit, and my wife supports my decision. That's why she honestly answered that I do not smoke.

9. **You were both asked, "How many children does your spouse have? Names?" You answered "One, Dieusait 8." The beneficiary answered, "one, Dieusait, he's 10."**

Between my wife and I, there are 4 kids, 5 parent in-laws, aunts, uncles, and all our siblings. That represents a lot of birthdays, ages, and anniversaries to remember. It's impossible for me to remember all these dates and do a math calculation in a matter of split second to provide an answer regarding a loved ones' age.  Besides, I don't do well with dates. This is not a contradiction. This is just me not remembering things well. Now that I have the time to reflect on this, I can confirm my wife has one kid, Dieusait, and

he turned 11 in January.

10. **You were both asked, "Have you ever been arrested?" You answered, "yes, traffic violations and failure to appear.' The beneficiary answered, 'no."**

It happened so long ago, and I don't like to remember it. That's why didn't give it any thought or talk about it.  At least I did not, until the officer asked. My wife was aware of the charges but not the specifics (not the sentence).   In any case, she answered truthfully, as did I.

11. **You also submitted a Georgia issued Identification Card with the address, 1677 Spoonbill Rd Jonesboro, GA 30238 issued to you on February 3, 2021. However, you claimed to be living at 3833 Peachtree Rd NE Brookhaven, GA 30319 since October of 2018.**

We do not live at different places.  I have contacted  DDS so many times to take care of this, even during the Covid period where most of the offices were closed. I have also done the usps address change, and still  DDS sent  the new card in the mail with an old address.  I cannot tell you how frustrating that was for me,  because I have diligently done my part to change my address with DDS.  I have since taken care of that.

12. Lastly, note my wife and I have rented out apartment via Airbnb to get a supplemental income. We have used this money to pay for the school tuition of Dieusait at Riverside Military Academy.  In July-August 2021 we rented the apartment via Airbnb to various guests, one of them being a person named Jeffry Orris.   We do not know Jeffry Orris. During this time, my wife and I were staying at my wife's sister's (Mbong Amata).

 It appears that the date immigration went to our place to conduct the site visit, the Airbnb guest, Jeffry Orris, was there and made up a story about him living there with my wife and never heard of me.  Having also claimed to have been questioned for hours by the 'fed' during the site visit. After further investigation, we found out that person has a jail record and is not trustworthy.

 I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

The affiant further sayeth not.

This _____4th_____ of ___March___, 2022.


_____

Dennis Ford, Affiant


Sworn to and subscribed

before me this the _____4th_____ day

of _____March_____, 2022.

_____

NOTARY PUBLIC



**B**

**Declaration of  Basse Bassey Enun**

My name is Bassey Bassey Enun.   I am a Nigerian citizen under no physical or mental disabilities. I was born in Calabar, Nigeria on September 12, 1993. I live at 3833 Peachtree Rd. Apt 606, Brookhaven, GA, 30319, with my husband, Dennis Allen Ford II.

On April 27, 2021, my husband and I went to USCIS for an interview in connection with the Form I-130 my husband filed on my behalf. We were asked details of our lives. On  December 7, 2021, USCIS issued a  Notice of Intent to Deny (NOID) my I-130.  I would like to provide clarifications to the discrepancies on the record.

- During our interview, we were asked *When and where did you marry*?" My husband is not good at remembering dates. In addition,  were initially going to get married on a different date. However, I wanted my mom to be present. That's why we ended up getting married on August 19, 2019.  If you knew him personally, you would understand why he got the dates mixed up.  It was an honest mistake.  He can tell you he is not good remembering dates, even when they are important to him.

- When we got married, my mother, my husband and I were in attendance.  Note that Ms. Barbara Johnson officiated the ceremony. Therefore, I did not mention her when the officer asked us who was in attendance to our wedding. However, my husband did mention her. He was right. She was present. However, she is not a family member, I did not think I had to mention her.

- My husband and I pay $1,601 a month in rent at our current place. We also pay $60 a month for parking.  In addition, we must pay some building utilities fees for the common areas.   In total, it costs us anywhere from $2,000 - $2,200 to live at our place,  because the building can't seem to figure out the cost of running the common areas,  and we are obligated  to pay for these fees. My husband and I  answered truthfully when we said that our base rent is $1601 a month and parking  fee is $60 a month.  The only difference is that my husband was more precise when it came to our additional building utilities fees for the common areas. He rounded them at $400. Sometimes we pay $400, sometimes we pay more, sometimes we pay less.

- We have had some joint and individual bank accounts during the past three years. However, we have had to close some and opened others. As to date, we have closed our

joint account as we had it listed on Dieusait's school's FACTS accounts and they kept charging our accounts even though he wasn't attending Riverside Military Academy. I have two individual accounts: One with Wells Fargo and one with Bank of America. My husband has seven individual accounts: USAA, NAVY FED, SERVICE CREDIT UNION, SELF LENDER, CREDIT KARMA as previously mentioned. However, he has closed his PEN FED account and opened 2 new accounts with Bank of America and Chase Bank respectively.

- My husband provides for both of us. He is a hardworking man, and he is proud of it. My parents send me money because they love me. However, my husband does not consider the money my parents send as an income.

- I remember dates and numbers better than my husband does. He does not remember all the phone numbers he has used in his lifetime. He does remember my number from ATT 706-294-9856. Also, please keep in mind he saves the numbers on his phone. So, he is not used to dial the actual numbers. This may have caused confusion when the officer asked him for my phone numbers as I have two.

- One can say we are spiritual people. However, I can tell you we are not religious practitioners. We don't identify ourselves with any religious believe. That's why I said none. This is a matter of an opinion.

- My husband used to smoke, but he no longer smokes. I know it has been difficult for him, but he is doing a great job. I consider him a non-smoker, even when he used to. We did not contradict each other when the officer asked us this question. I honestly do not understand why this was brought up as a discrepancy.

- My husband knows I have a child, Dieusait, who recently turned 11 years of age in January. As I said before, my husband is not good at remembering dates or numbers. When he was asked, he just could not remember in that moment Dieusait's exact age. We are a big family, and he is not a person that keeps track of birthdates or dates in general.

- As I said before, my husband is a hardworking man and very proud of it. He does not like to talk about his past mistakes. I was aware he was charged in the past. I never bothered to ask how it ended. It happened a lifetime ago, and my husband doesn't like to remember this.

- My husband and I have been living at 3833 Peachtree Rd. Apt 606, Brookhaven, GA, 30319. We live together. We do not live at different places.  Attached you will find a copy of our lease and letter from management stating so.  My husband diligently to update his address with DDS, but  when he received his GA  ID card, it came with an old address. It was very frustrating because he  fixed it during Covid-19 when  all  the DDS offices in the country were closed. So, he had to do the address update online; and waited long of time to receive the new physical card.  When he got the card, it still had the old address. However, he has already fixed that.  See attached a copy of his updated GA ID card, listing our marital address

- I also want to take this opportunity to  set the record straight regarding our  joint marital residence. The lease agreement we provided to immigration is not fraudulent.  The issue is that  my husband I decided to rent out apartment via Airbnb to get a supplementary income. We needed this money to be able to afford the  extremely expensive tuition  of my son's school (Riverside Military Academy).  See attached Riverside Military Academy's tuition rates for 2021-2022.  In July-August 2021 we rent the apartment via Airbnb to person named Jeffry Orris.  We do not know Jeffry Orris. He is a stranger who rented our place.  See attached Airbnb records showing Jeffry Orris rented our place in July-August 2021. During this time, my husband and I were staying at my sister's (Mbong Amata). Coincidently, the date immigration went to our place to conduct the site visit, the Airbnb guest, Jeffry Orris was there.

- Later, we found that that this person, Jeffry Orris, is not a trustworthy person.  He was in jail due to some fraud or aggravate assault charges. He also claimed that he was held and questioned for hours during the site visit. See attached printout of the jail information of Jeffry Orris.  I believe when this person talked to the officers, he made everything up.  I have never lived with that person.  He knows my name because I am the one who holds the Airbnb account, and my name is on Airbnb records. His jail information should tell you he is not a credible person, and just tried to hurt us, as we suffered property damage during his stay at our residence.

- I have attached a letter from the property manager of Atler at Brookhaven, Cristina Garcia, as evidence that since the beginning of our agreement, my husband Dennis and I have been the joint occupants at 3833 Peachtree Rd. Apt 606, Brookhaven, GA, 30319.

I, Bassey Bassey Enun, declare under penalty of perjury that the above is true and correct to the best of my knowledge.

The affiant further sayeth not.

This ____4ᵗʰ____ of __March__, 2022.

Bassey Enun, Affiant

Sworn to and subscribed

before me this the ___4ᵗʰ___ day

of ___March___, 2022.

NOTARY PUBLIC

ALBA CRISTANCHO
NOTARY PUBLIC
FULTON COUNTY, GEORGIA
MY COMMISSION EXPIRES
OCTOBER 11, 2025



C


**GEORGIA**
APARTMENT ASSOCIATION

**Apartment Rental Contract**

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

This Apartment Rental Contract is a lease between the Owner of the Apartment Community and the Residents who are leasing the apartment. The General Provisions of the lease which follow the signatures at the bottom of this page and any separate addenda signed by the parties are incorporated into and become part of this lease. Paragraph numbers on this page correspond to paragraph numbers in the General Provisions.

Lease Date: __April 6, 2021__
Management: __Atler at Brookhaven Apartments Holdings LLC__
☒ Owner    ☐ Management Co. as agent for Owner
Apartment Community Name: __Atler at Brookhaven Apartments__
Apartment No: __0606__
Apartment Address: __3833 Peachtree Road # 0606, Atlanta, GA 30319__
Residents/Tenants: __Bassey Enun__          __Dennis Ford__

Other Occupants
of Apartment: _____          _____

**Par. 1.**  Lease Term:  __12__ Months and ____ Days
Beginning Date: __05/12/2021__          Ending Date: __05/11/2022__
**Par. 3.**  Rent Due Monthly:         $ __1601.00__
Pro Rated Rent Due at Lease Signing: $ __1032.90__
Dates of Prorated Rent: __05/12/2021__ to __05/31/2021__
Month to Month Fee:        $ __500.00__
Rent is Payable to: __Atler at Brookhaven__
**Par. 4.**  Late Fees and Insufficient Funds Fees:
Date on Which Rent is Late: __4__
Amount of Late Fee:      $ _____ or __10__ % of Rent
Returned or Insufficient Check Fee: ☒ Service Fee of $ __30.00__ or ☐ 5% of Amount of Check plus ☐ Bank Service Fee of $ _____ (amount charged by bank to management for charge back)
**Par. 5.**  Re-Key Lock Charge:     $ __75.00__
Non-refundable Lease Fee:  $ __249.00__
Security Deposit:          $ __0.00__
Bank Name: __Bank of America__          (Where Security Deposit Kept)
**Par. 6.**  How Much Notice Required To Non-Renew Lease Prior To End of Initial Lease Term: __60__ Days
Renewal Period:     ☒ Month to Month ( 1 month at a time) Renewal   ☐ Bi-Monthly (2 months at a time) Renewal
Notice Required to End Renewal Period:  ☒ 30 days to end Month to Month Renewal   ☐ 60 days to end Bi-Monthly Renewal
**Par. 7.**  Early Termination Option: Amount of Notice Required for Electing Early Termination: __60__ Days Written Notice
**Par. 9.**  Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy
Name of Managing Agent or Owner: __First Communities Management Inc__
Address of Agent Authorized to
Manage Apartment Community: __1200 Lake Hearn Dr Suite 200 Atlanta GA 30319__
Name of Owner or Registered Agent
Authorized to Receive Notices and Lawsuits: __Dana Miles__
Address of Owner or Registered Agent
Authorized to Receive Notices and Lawsuits: __202 Tribble Gap Rd Suite 200 Cumming GA 30040__
Corporate Name of GREC Licensee: __First Communities Management, INC.__
GREC Corporate License No.: __H-15679__
**Par. 17.**  Flood Disclosure: ☒ Not Applicable   ☐ Apartment has been flooded previously
**Par. 34.**  Special Stipulations (see Page 9)

Signatures of Parties:
Management:

__Atler at Brookhaven Apartments Holdings, LLC__

Name of Owner or Management Company

By: _Nicole McLaurin_
Signature of Owner or Management Company

As: __Community Manager__ _____ (Title)

Residents:

Resident: __Bassey Enun__
_Bassey Enun_
_____ (Resident Signature)
Resident: __Dennis Ford__
_Ford_
_____ (Resident Signature)
Resident: _____
_____ (Resident Signature)
Resident: _____
_____ (Resident Signature)
Resident: _____
_____ (Resident Signature)

Copyright © 2/2020 - Atlanta Apartment Association, Inc. - Form # 1401
All Rights Reserved

**General Lease Provisions.**

The Owner is the landlord of the property, and the Resident is the tenant. The apartment community is managed for the Owner by its Managing Agent.

The lease is legally effective on the date it is signed, regardless of whether it was signed before or after the Resident moves into the apartment. There is no conditional three day right to rescind or void the contract once it is signed, and the Resident is legally bound to pay all rent, fees, and other charges that come due, regardless of whether the Resident continues to occupy the apartment. The Lease Date is the day on which the lease was signed and became effective as a contract.

The lease is a legally binding contract that creates the relationship of landlord and tenant for the full duration of the lease term at the rental rate stated above. Any addenda signed by the Owner and Resident are also part of this Apartment Rental Contract.

The Owner provides the apartment to the Resident in exchange for payment of monthly rent. The Resident's obligation to pay rent is independent of any other obligation of Landlord in the lease.

Listed above are important terms, conditions, and payment amounts. They are listed at the beginning of the lease to provide the parties with an easy reference. Each of the first page terms correspond to important lease provisions that follow below. Paragraph references on the first page correspond to the paragraph number of the General lease provisions that follow.

**Important Information About Ending The Lease and Management's Right to Increase the Rent During Any Extension Period.** This lease does not end automatically at the end of the initial lease term. The Resident must give a proper non-renewal notice to end the lease as provided in Par. 6, or the lease will be extended or renewed for an additional period of time stated in Par. 6. The lease continues to renew until the proper non-renewal notice is given. If the lease is renewed or extended, the Resident will be responsible for paying an additional Month-to-Month Fee and may also pay a higher rent than the rent specified in Par. 3, if Management gives notice of the higher rent amount.

The apartment shall only be occupied by Residents and the occupants listed on page 1, and any other occupants not listed above are unauthorized to live-in the apartment.

1. **Term.** The initial lease term of the lease is for the number of months and days specified in Par. 1. The initial term of the lease begins and ends at noon on the days specified in Par. 1 but will be automatically renewed on either a month to month or bi-monthly basis as stated in Par. 6. RESIDENT MAY NOT TERMINATE THIS LEASE PRIOR TO THE END OF THE INITIAL TERM EXCEPT IN STRICT COMPLIANCE WITH PARAGRAPH 7 or as otherwise provided by law.

2. **Possession.** Rent shall abate until possession is granted to Resident. Resident may void or rescind this lease if possession is not granted within seven (7) days from the start of the lease term. Management is not liable for any delay in possession. Resident shall give Management written notice of his or her election to void or rescind the contract.

3. **Rent.** Resident shall pay rent in advance on the 1st day of each month at the management office as provided in Par. 3. The first month's prorated rent shall be due at the time this lease is signed as provided in Par. 3. If this lease is extended or renewed under Paragraph 6 without signing a new lease, Resident shall owe a month-to-month fee in addition to the monthly rent due during any extension or renewal period.

   CASH PAYMENTS WILL NOT BE ACCEPTED, AND NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO ACCEPT A CASH PAYMENT UNDER ANY CIRCUMSTANCES. RESIDENT MAY NOT RELY ON ANY STATEMENT MADE TO HIM BY A MANAGEMENT REPRESENTATIVE THAT CASH WILL BE ACCEPTED.

   All rent shall be paid by personal check, cashier's check, or money order. Management shall have the right to establish or provide for payment by credit card, debit card, electronic funds transfer, online payment portal, or designated online payment system and software, but Resident does not have the right to make payments by these means unless specifically authorized by Management. Management shall have the right to designate the specific manner or form of payment that will be accepted, and no other form of payment shall be acceptable than those specified by Management. Checks and money orders shall be made payable to the order of the business entity specified in Par. 3. Third party checks (those which are made payable to someone other than Management) and partial payments are not allowed. All other damages, utilities, fees, or charges owed by Resident and due under this lease are considered to be additional rent.

   The amount of rent specified in Par. 3 is the amount due each month unless Management has given the Resident a rental concession or discount from the rent, either in the Special Stipulations to this lease or in a separate addendum. If there are rental concessions granted, the Resident will or may lose them if in default or breach of this lease and will be obligated to pay the full amount of rent specified in Par. 3. If in default or breach of the lease, the Resident may have to repay the rental concessions under certain specified conditions.

4. **Late Payments and Checks with Insufficient Funds.** Time is of the essence. In Par. 4, late fees shall be due in the amount specified. After close of business on the last day of the grace period specified.

   Resident shall pay Management an insufficient funds check service for each returned or NSF check, plus an additional fee equal to the fee charged to Management by the bank. If no box is checked in Par. 4 that specifies the amount of the service fee, then the insufficient funds service fee is five per cent (5%) of the face amount of the check, plus the fee charged by the bank. At Management's option, all late rent, NSF checks, and future rents due after an NSF check must be paid by money order or certified funds from a bank. The parties agree that bank service, NSF, and late fees are reasonable compensation for delay, administrative costs, and time in collecting past due rent, are not penalties, and that such costs are difficult to estimate accurately.

5. **Lease Fees & Security Deposit.** Resident must pay the amounts specified in Par. 5 for re-keying locks, any non-refundable lease fees, or security deposits. A re-keying lock fee is due for each lock that must be re-keyed if all keys are not returned. The non-refundable lease fee is not a security deposit, is not refundable, and does not reduce Resident's liability for unpaid rent, damages exceeding normal wear and tear, or other charges that come due under the lease. Any security deposit will be refunded as provided by law but may be applied to any charges due under this lease. The deposit will either be protected by a surety bond on file with the Clerk of Superior Court or deposited in the bank specified in Par. 5. Interest earned on such deposits belongs to Management.

   Management shall have the right to apply any security deposit held to money or a debt owed by the Resident to Management. Management is not restricted to or limited in how the security deposit is applied if money is owed, and the deposit may applied to rent, damages exceeding normal wear and tear, unpaid utilities, or any other fee, charge, or debt owed by Resident. Management may apply a pet or animal deposit to unpaid rent or damages exceeding normal wear and tear that were not caused by a pet or animal.

   Resident shall have no right to use or designate a security deposit as payment of rent or other fees and charges which are due, as provided by O.C.G.A. 44-7-33(b). Resident agrees to cooperate with Management in scheduling and performing Move-In and Move-Out Inspections and noting any existing damages or objecting to Management's list of damages exceeding normal wear and tear.

Copyright © 2/2020 – Atlanta Apartment Association, Inc. – Form 4401
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

6. **Renewal Term and Notice of Non-Renewal to End the Lease.**   Either party may non-renew and terminate this lease at the end of the initial term by giving a written non-renewal notice prior to the end of the initial lease term. If such non-renewal notice is not given, then this lease will be extended as provided in Par. 6 on a either a Month-to-Month basis (one month at a time) until either party gives a proper 30 day notice; or on a Bi-Monthly basis (two months at a time) until either party gives a proper 60 day notice in writing that terminates the lease. Unless otherwise allowed by Landlord, the lease shall terminate at the end of a calendar month.

Management shall have the right to increase the rent due in any extension or renewal term by giving written notice at least 15 days prior to the date on which a non-renewal notice must be given in order to end the initial term or any subsequent renewal or extension period.

If not specified in Par. 6, then a 30 day written notice is required to end the initial term or any renewal or extension period as of the end of a calendar month.

Management employees are not authorized to accept a verbal notice of non-renewal or termination from the Resident, and the Resident has no right to rely on a Management employee's statement that a verbal notice is acceptable. Resident's non-renewal or termination notice must be in writing, dated, signed, and specify the move-out date. Resident should confirm Management's receipt of the notice with the authorized signature of a Management representative using Management's notice of intent to vacate form. Resident should keep a signed receipt of the non-renewal notice for his personal records in case of any dispute as to whether such notice was given and received. If Resident does not obtain a signed receipt of such notice from Management, or if Management does not have a signed original non-renewal notice from Resident, then it will be presumed that Resident failed to give a proper written notice.

7. **Resident's Early Termination Option.**   Resident can end all liability for rent under this lease (but not liability for damages exceeding normal wear and tear, or liability for unpaid utilities) and vacate before the end of the initial lease term stated in Par. 7 only by doing all of the following things required in this paragraph. If all of the following conditions are not performed, then the lease remains in effect for the full term, and Resident shall be liable for breach of the rental agreement as provided in Paragraph 26. If Resident skips, abandons, or is evicted from the apartment without complying with this paragraph, then Resident is in default and responsible for rent and liquidated damages (if applicable) as provided under Paragraph 26, any other fees or charges due, and all damages and cleaning fees in excess of normal wear and tear. Management employees are not authorized to make a verbal statement that waives the notice and termination fees, and the Resident has no right to rely on a Management employee's statement that Resident will not have to pay such fees or comply with this provision in order to terminate the lease early. Any waiver of the notice or fees required under this provision must be in writing, dated, and signed by all parties. Resident's election to use or not use this provision is purely voluntary.

To end the lease early, Resident MUST do EACH of the following: 1) pay all monies currently due; 2) give written notice in the amount specified in Par. 7 of intent to vacate prior to the first day of the month and to take effect as of the last day of a calendar month; 3) pay all rent due through the notice period preceding the early termination date; 4) pay an additional early termination or lease cancellation fee equal to one month's rent as liquidated damages; vacate the leased premises on or before the specified termination date, remove all occupants and possessions, and physically hand the keys to a Management representative; and 5) abandon, waive, and release a claim to the return of any security deposit, which shall become Management's.

If the length of the Early Termination notice is not specified in Par. 7 on the first page, then a 30 day written notice is required. Resident can move-out earlier than the termination date following the notice period in Par. 7, but Resident must turn in all keys, remove all occupants and personal property, pay all rent due through the required non-renewal notice period, pay the one-month termination or lease cancellation fee, and comply with all other requirements. Keys must be physically handed to a representative of Management and may not be left in the apartment or a night rent drop box.

If Resident elects to exercise his or her right to Early Termination, Resident is not entitled to a refund of any rent, notice or termination fees, or security deposit, even if the apartment is re-let to a new Resident prior to the end of the notice period. Resident's election to exercise this early termination option either by giving proper notice and paying all sums due or by giving proper notice and signing an agreement to terminate early and pay the sums due at a later date are binding and shall not be reduced or set-off by any money or rent Management receives from re-letting the apartment to a new or subsequent Resident.

**Military Transfers and Lease Terminations.** A Resident (including a Resident's spouse) who is a service member on active duty or is called to active duty in the regular or reserve component of the U.S. Armed Forces, U.S. Coast Guard, or National Guard, shall have the right to end this Apartment Rental Contract early by giving a 30 day written notice, paying all rent due through the notice date, and providing a copy of the official military orders or written verification signed by the service member's commanding officer or by providing base housing orders as provided in O.C.G.A. Section 44-7-22, if the service member is:

1. Ordered to federal duty for a period of 90 days or longer;
2. Receives a permanent change of station orders to move at least 35 miles away from the rental housing;
3. Is released from active duty after leasing housing and must move 35 miles or more away from the service member's home of record prior to entering active duty;
4. After entering into this rental agreement, the service member becomes eligible to live in government quarters or the failure to move to government quarters will result in a forfeiture of the service member's basic allowance for housing;
5. Receives temporary duty orders or temporary change of station orders or state active duty orders for a period exceeding 60 days that is at least 35 miles away from the location of the rental housing; or
6. Receives orders after signing the lease but before taking possession of the rental housing.

**Domestic Violence and Lease Terminations.** A resident who is a victim of family violence shall have the right to end this Apartment Rental Contract by giving a 30-day written notice, paying all rent due through the notice date to protect resident or his or her minor child.

To terminate this lease early due to domestic violence, resident must return possession to Management by returning the keys and produce the following required documents to Management: 1) if Resident obtains a Temporary Protective Order (TPO) *ex parte*, then resident must also produce a copy of a police report to accompany the order; 2) if the TPO is not *ex parte* or the order is a permanent protective order, then resident must produce the order granting protection from family violence;

If resident obtains a family violence protective order for either themselves and/or their child, who may not be a tenant or a named occupant on the lease, resident may provide a 30-day written notice and terminate the tenancy, provided the required documents are given to Management and their keys are returned.

If resident vacates the premises immediately after giving proper notice to terminate the lease due to domestic violence and providing the required documents to Management, the resident remains liable for all rent, utilities, and other charges due for an additional 30 days from the date resident gives notice, produces the required documents, vacates, and returns the keys to Management; however, resident shall not be required to pay any termination fee or liquidated damage fee.

If resident executes this lease, but has not yet taken possession of the premises, then resident may terminate the lease prior to taking possession, by providing at least 14 days written notice and providing a copy of the family violence order and a copy of the police report, if the order was obtained *ex parte*.

Copyright © 2/2020 - Atlanta Apartment Association, Inc. - Form # 1401
All Rights Reserved

Any Co-tenant and guarantor, who is the alleged aggressor or accused of family violence, shall remain liable to the terms of the lease even when the victim of family violence properly terminates the lease and vacates.

8. **No Assignment/Subletting.**   Resident may not sublet or assign the lease.

9. **Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy.**

The name and address of company or party authorized to manage the apartment community for the owner is specified in Par. 9. The name and address of the owner or owner's registered agent who is authorized to receive notices and lawsuits against the Landlord is specified in Par. 9. Lawsuits filed against the owner or Management shall be filed and served as provided by law or as contractually agreed to by Resident.

The Corporate Broker's Name of the Licensed Managing Agent and Broker's license number as required by the rules of the Georgia Real Estate Commission (Ga.R. & Reg. 520-1-.10) is specified in Par. 9.

**Equal Housing Opportunity Policy.** The apartment owner and Management provide equal housing opportunity for qualified applicants and do not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other legally recognized status in the State of Georgia. It is the owner's and Management's policy to provide reasonable accommodations in the apartment community's operational policies, and procedures and to permit the Resident to make reasonable modifications that are necessary for the Resident and related to the disability for persons with a demonstrated disability. The Resident must request and obtain permission from the owner or management for any accommodation or modification prior to implementing the same. In general, the cost or expense of physical modifications to the apartment or apartment community is the responsibility of the Resident, unless the applicable law requires the owner or Management to absorb or be responsible for the cost of such modifications. A Resident or occupant with a demonstrated disability is allowed to have an assistance animal to assist with the person's disability. A disabled Resident or occupant is allowed to have an assistance animal to assist with the person's disability. A disabled Resident or occupant is allowed to have an assistance animal which has not been trained as a service animal unless the animal has a history of dangerous, vicious, or unsafe behavior. If the nature of the disability is not obvious or apparent or the manner in which the animal will provide assistance is not clear, Management has the right to request additional information regarding how the animal will assist with the resident's disability. The Resident does not have an absolute right to the specific accommodation or modification requested, and Management has the right to offer an substitute or alternate accommodation or modification with conditions that will provide adequate assurance for the safety, health, and well being of other Residents, occupants, social guests, invitees, and Management employees. No Additional Rent, Non-refundable Fee, or Animal Security Deposit is required from Residents or occupants who are disabled and have an approved service or assistance animal; however, the Resident is responsible for any and all damages and cleaning fees exceeding normal wear and tear caused by such animal.

10. **Utilities Are Resident's Responsibility.**   Resident is responsible for payment of all natural gas, electricity, water and sewer, telephone, cable, satellite or other utilities and services to the apartment unless specified otherwise in Paragraph 34 or in a utility addendum which is made a part of this lease. Resident gives Management the right to select any utility provider and change the same without notice. Resident shall promptly establish all utility and service accounts to be paid by Resident in his name at the start of the lease and shall not allow water and sewer, electricity, or natural gas to be shut off or billed to Management. Resident shall promptly pay any billing for utilities or other services charged to Management upon notification. Resident's failure to pay all utility services or to establish an account with a utility provider is a material breach of the lease for which Management has the right to terminate the right of occupancy or lease.

**Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider).** Resident (the Tenant) authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer, to authorize the natural gas marketer to obtain credit information on the Resident, if required by the marketer, and to enroll the Resident on the marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is eligible. Resident acknowledges that Management may have a business relationship with the natural gas marketer that may provide for a financial or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

11. **Fire and Other Casualty.**   This lease will end if the apartment is uninhabitable due to fire as long as the fire was not caused by or the responsibility of Resident or Resident's occupants, family, or social guests. If Resident or his occupants, family, or social guests were responsible for the fire and the premises are uninhabitable, then Resident must vacate the apartment and will still remain liable for the rent and damages.

Management shall have the right to terminate the occupancy or lease of Resident if Resident or Resident's occupants, family, social guests, or invitees caused or were responsible for causing a fire to the apartment or any portion of the apartment community. Resident has no right to transfer to another apartment in the community or to remain in the apartment community if Resident or Resident's occupants, family, social guests, or invitees were responsible for or caused the fire. Resident may be eligible for transfer to another apartment in the apartment community if the Resident is qualified, there is a suitable apartment available, and Resident or Resident's occupants, family, social guests, and invitees did not cause the fire.

Resident is responsible for the cost of repair, replacement cost, and all expenses required to repair or replace the equipment, building, or property damaged by a fire which Resident or Resident's occupants, family, social guests, or invitees caused. Resident is liable to and shall indemnify, defend and hold harmless Management and the owner for any damages or repairs caused by a fire which was caused by Resident or Resident's occupants, family, social guests, and invitees.

This lease shall end if the premises are destroyed or otherwise rendered uninhabitable due to an Act of God or any other catastrophic event or casualty that was not the responsibility of Resident or Resident's occupants, family, social guests, or invitees.

The Resident shall not continue to occupy an apartment which is rendered uninhabitable due to fire, Act of God, or other catastrophic casualty and must remove all personal property and return possession to Management.

12. **Hold Over/Trespass.**   Resident must promptly vacate the apartment and deliver possession and all keys to Management upon any termination or non-renewal of this lease. Keys must be physically handed to a representative of Management and may not be left in the apartment or in the overnight rent drop box at the Management office. The apartment must be delivered to Management in clean condition and good repair.

If Resident does not vacate the premises and return possession to Management after termination, non-renewal, or expiration of the lease, then Resident shall pay to Management rent at two (2) times the current rental rate for each day held over past the termination date.

After termination, non-renewal, or expiration of the lease, Resident is a tenant at sufferance.

After vacating the premises based on non-renewal, termination, eviction, or upon receiving a criminal trespass notice under O.C.G.A. § 16-7-21 from Management, Resident shall not return to any portion of the apartment community. Resident shall not permit entry of any person as his social guest or invitee if notified that his guest's or visitor's presence in the apartment community is subject to criminal trespass under O.C.G.A. § 16-7-21. Management may terminate the lease or right of possession of any Resident who allows an unauthorized person access to his apartment or the community in violation of this provision or paragraph 14. Management's rights under this paragraph shall continue and survive independently beyond expiration or termination of the lease or Resident's right of occupancy of the apartment.

Copyright © 2/2020 - Atlanta Apartment Association, Inc. - Form # 1401
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

**13. Right of Access.** Management may enter the apartment without notice during reasonable hours to inspect, maintain, and repair the premises. Management may enter the apartment at any time without notice to prevent injury or damage to persons or property. Resident authorizes Management to show the apartment to prospective Residents once Resident has given or received a notice of non-renewal or termination.

**14. Resident's Use of the Apartment and Conduct.** Resident shall use the apartment and apartment community only for residential purposes and not for business or commercial purposes.

Resident, all occupants, and Resident's family, social guests, and invitees must comply with all laws. No portion of the apartment or apartment community shall be used by Resident or Resident's occupants, family, social guests, or invitees for any disorderly, disruptive, abusive, or unlawful purpose. Nor shall they be used so as to disrupt the quiet enjoyment of any other Resident or their occupants, family, and social guests. Resident and Resident's occupants, family, social guests, and invitees shall not commit any crime in the apartment community.

Resident is liable for the conduct of and for any damages exceeding normal wear and tear caused by his family, occupants, social guests, and invitees. Resident shall not allow his occupants, family, social guests, and invitees to commit a crime or violation of the lease and addenda and must take affirmative, corrective action and notify Management of any such violation or misconduct.

The sale, manufacture, distribution, or possession of any illegal drugs in the apartment community is prohibited.

Resident must maintain the apartment in a clean and sanitary condition and must not cause or allow any damages exceeding normal wear and tear or infestation of vermin, insects, rodents, or other pests. Noxious or offensive smells are not permitted, and Resident shall be liable for damages exceeding normal wear and tear for the repair or replacement of any carpet, flooring, ceiling, or walls that are permeated with noxious or offensive odors, water, or mold. Resident shall not leave or dispose of trash, garbage, or other materials in hallways, breezeways, patios, balconies, or common areas of any portion of the apartment building or community. Resident shall promptly take trash, garbage, or refuse to the proper dumpster, compactor, or trash collection area and properly dispose of organic and inorganic material as provided by law and as provided by the community rules.

Resident and Resident's occupants, family, social guests, and invitees shall abide by and follow all community rules and regulations. Management shall have the right to prohibit smoking of cigarettes, pipes, cigars, or tobacco inside the apartment or any portion of the apartment community property under its community rules and regulations. Smoking of tobacco products in the apartment is prohibited unless expressly authorized and allowed by the community rules and regulations.

Resident shall operate all motor vehicles in a safe and lawful manner in the apartment community. Resident shall not violate any parking rules and regulations and shall not exceed 15 mph in any parking lot, street, exit, or entrance of the apartment community. Resident must park only in authorized spaces and places and shall not park at any place that obstructs traffic, is unsafe, or is prohibited. Resident shall not operate, park, or store, any illegal, unauthorized, or uninsured motor vehicle or equipment on any portion of the apartment community. Resident shall not abandon a motor vehicle in the apartment community. Resident shall not store, keep, or dispose of any substance or material on any portion of the apartment community that is hazardous to the health, safety, or welfare of any person. Resident shall not dispose of any batteries, chemicals, environmentally hazardous, or unsafe material in any trash receptacle, dumpster, compactor, or any portion of the apartment community.

Resident, and Resident's occupants, family, social guests and invitees, shall act and communicate with the apartment owner, Management, Management employees, Residents, business social guests of Management, and all other persons in a lawful, courteous, and reasonable manner. Any form of verbally or physically abusive, intimidating, or aggressive behavior directed at the apartment owner, Management, Management employees, or any other person is prohibited. Resident, his social guests and occupants shall not interfere with the daily business operations of the apartment community or job duties of Management or its employees. When notified by Management, Resident shall be prohibited from entering or contacting any Management or corporate office or employee and must conduct all further communications in writing.

Resident shall not distribute petitions, flyers, or solicitation notices to other Residents in any manner other than through lawful use of the United States mail. Resident is prohibited from committing business libel or slander or making untruthful, unfair, or misleading statements to others about the apartment owner, Management, Management employees, or the apartment community. Resident shall not commit waste to the apartment or apartment community and shall not commit any act nor fail to take any action that would endanger the life, health, safety, welfare or property of any other person in the apartment community. Resident must allow Management and vendors access to the apartment for the purpose of making repairs, performing service or maintenance, inspecting, and taking all other action related to the ongoing business operation of the apartment community.

Resident shall not cause or allow an infestation of bed bugs in the apartment. Resident shall not bring abandoned or discarded furniture, clothing, bedding, or other personal property into the apartment as it could introduce an infestation of pests and bed bugs.

Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the apartment or apartment community. Resident and Resident's occupants, family, social guests, and invitees shall not touch, damage, or trigger any automatic sprinkler head.

Resident and occupants shall not use the internet or cyberspace in any manner to disparage, defame, or injure the business or business reputation of the apartment owner or Management. Resident and occupants shall not use, misuse, or appropriate the use of the owner's or Management's corporate names, logos, slogans, images, photos, internet domain names, service marks, trademarks, copyrights, or trade names. Resident and occupants shall not publish, misuse, or use any photos or video of Management employees or the apartment community or signage. Owner and Management shall be entitled to injunctive relief and damages for compensation to prevent any unauthorized publication, use or misuse, whether in part or in whole, of the corporate name, trade name, internet domain name, likeness or identity of owner or Management.

Resident and occupants shall not make, post, or publish misleading, deceptive, untruthful, groundless, false, or unfair statements or commentary about the apartment community, the Management employees, the owner, or Management on or to any internet website or domain, internet blog, internet social media, newspaper, magazine, television, radio, or other news or social media. Resident is prohibited from making, publishing, stating, or posting any statement or communication that, while partially true, lacks or fails to disclose other material facts in such a way such as to mislead the listener, viewer, or reader. Management shall be entitled to terminate the right of occupancy or lease of any Resident or occupant who violates any portion of this Use and Conduct provision.

Resident and Resident's occupants, family, social guests, and invitees shall not store, use, or discharge any fireworks or consumer fireworks in the apartment or apartment community. Fireworks are defined as any combustible or explosive composition or any substance or combination of substances or article prepared for the purpose of producing a visible or audible effect by combustion, explosion, deflagration or detonation, including but not limited to, blank cartridges, firecrackers, torpedoes, skyrockets, bombs, sparklers, roman candles and other combustibles and explosives of like construction.

Violation of this Resident's Use and Conduct provision is a material breach of this lease and constitutes a ground for terminating Resident's lease or right of possession, and Resident will be liable for any rent due through the remainder of the lease or liquidated damages (if applicable) as provided in Paragraph 26.

**15. Property Loss, Insurance, and Crime.** Management and the apartment owner shall not be liable for damage, theft, vandalism, or other loss of any kind to Resident's or his occupant's personal property, unless such is due to Management's negligence or intentional misconduct. Management and the apartment owner shall not be liable to Resident for crimes, injuries, loss, or damage due to criminal acts of other parties.

Copyright © 2/2020 - Atlanta Apartment Association, Inc. - Form # 1401
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

Resident must purchase a renter's insurance policy that provides liability insurance for negligent or accidental acts and omissions for which the Resident may be liable in causing injury or damage to the owner, Management, or others.

Resident should purchase property insurance for loss of or damage to Resident's own personal property. Management is not liable for any loss or damages to Resident's personal property due to theft, vandalism, bursting or leaking pipes, fire, windstorm, hail, flooding, rain, lightening, tornadoes, hurricanes, water leakage, snow, ice, running water, or overflow of water or sewage. Management shall not be liable for any injury or damage caused by such occurrences, and Resident agrees to look solely to his insurance carrier for reimbursement of his losses for such events.

Management does not market, advertise, represent, offer, or provide security or law enforcement services which will prevent crime or protect Resident or Resident's personal property. Management and the owner do not represent or guarantee that the Resident is safe from crime in the neighborhood or from crime in the apartment or apartment community. Resident agrees to look solely to public law enforcement, emergency services, or fire services for police, emergency, fire , security, or protection services.

Resident acknowledges that he or she has an obligation to exercise due care for his or her own safety and welfare at all times and that Management is not liable to Resident for the criminal acts of other persons. Resident agrees that he or she will not and cannot rely on the existence or absence of security equipment or personnel as a representation of safety from crime and understands that he or she must be vigilant and exercise caution for their personal safety at all times. Resident waives and releases the apartment owner and Management for any liability, injury, loss, or damages related to crimes committed by other persons against Resident or related to allegations that the owner or Management were negligent or failed to provide security or protection to prevent crime.

**16. Lead Based Paint Notification (LBPN).**   If this apartment community was built prior to 1978, the LBPN addendum is incorporated by reference.

**17. Flood Disclosure.**   Management states that the apartment has not been damaged in any manner by flooding as defined in O.C.G.A. § 44-7-20 in 3 of the last 5 years unless noted otherwise in Par. 17.

**18. Pets.**   No animals or pets of any kind are permitted without a Pet, Service, or Assistive Animal Addendum. Management may enter the apartment at any time and remove any pet or animal which Management believes to be neglected, distressed, or endangered. Resident shall be liable for all costs of retrieving, caring for, and boarding of any pet or animal that is abandoned by Resident or removed by Management. Resident releases Management from liability of any kind when Management acts to retrieve or protect Resident's pets and animals which appear to be neglected, distressed, or endangered. Please see Par. 9 with respect to Management's policy on service, assistive and convenience animals for persons with disabilities.

**19. Indemnification.**   Resident agrees to indemnify, defend, and hold harmless the apartment owner and Management for any loss the apartment owner or Management incur due to Resident's breach of this agreement or due to the acts and omissions of Resident and Resident's occupants, family, social guests, or invitees.

**20. Failure to Act.**   Management has the right to insist on strict compliance with the terms of this lease at any time, even if it has previously delayed acting on Resident's breach of this lease. Management shall have sole discretion in granting and withholding permission or consent for Resident to perform his or her obligations under this lease in any manner that varies from the contractual requirements. Management at its option may condition, modify, or revoke any such permission or consent upon reasonable written notice and insist upon strict compliance with the lease terms.

**21. Fees and Expenses of Litigation.**   In a civil action or dispossessory proceeding for breach of this lease, the prevailing party shall be entitled to attorney's fees in the amount of fifteen percent (15%) of the principal and interest owing and all expenses of litigation, including, but not limited to, court costs and administrative filing fees for evictions. All sums due from Resident to Management which are in default shall bear interest at the rate of twelve percent (12%) per annum.

**22. Notices.**   All notices must be written, dated, and signed. The notice must be given personally or by certified mail, return receipt requested. Notice shall be sent to Resident at the apartment and to Management at the apartment community business office. See Par. 9 with regard to the proper address for service of lawsuits.

Resident shall send notices for repairs, service, maintenance, non-renewal, military transfers, and lease termination to the Management/leasing office located at the apartment community.

Resident shall provide Management with Resident's updated contact and address information and forwarding address at anytime requested during the lease and at the time of vacating the apartment. Resident shall provide Management with: the address of his or her new residence (where they are living); the mailing address for returning any security deposit or forwarding any notices or move-out inspection and estimate of damages and cleaning fees that exceed normal wear and tear; the name, address, and phone number of their employer; the name, address, and phone number of a person or family member who can provide updated contact information and the Resident's cell phone and e-mails. If Resident fails to provide his or her contact information and address at the time of vacating; conceals or attempts to conceal his or her address and location; moves from the State of Georgia; or cannot be located by Management, then the statute of limitation for collecting any account or money owed by Resident shall be tolled until such time as Resident provides proper notification of his address and other contact information required.

RESIDENT'S NOTICE OF NON-RENEWAL UNDER PARAGRAPH 6 OR NOTICE OF INTENT TO VACATE AND TERMINATE THE LEASE EARLY UNDER PARAGRAPH 7 MUST BE IN WRITING AND MUST BE GIVEN SO THAT THE ENDING DATE IS ON THE LAST DAY OF A CALENDAR MONTH. VERBAL NOTICES ARE NOT EFFECTIVE AND MAY NOT BE RELIED UPON BY RESIDENT UNDER ANY CIRCUMSTANCES. MILITARY SERVICE MEMBERS MAY GIVE A NOTICE TO TERMINATE AS PROVIDED IN PAR. 7 AT ANY TIME OF THE MONTH. NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO VERBALLY OR UNILATERALLY WAIVE ANY NOTICE REQUIREMENT, AND RESIDENT MAY NOT RELY ON A VERBAL STATEMENT OF MANAGEMENT THAT PROPER WRITTEN NOTICE IS NOT NECESSARY. MANAGEMENT MAY, BUT IS NOT REQUIRED TO, WAIVE THE REQUIREMENT THAT NOTICES BE EFFECTIVE ONLY AS OF THE END OF A CALENDAR MONTH.

**23. Repairs.**   Resident accepts the apartment "as is" and in habitable condition suited for residential purposes. Resident accepts full control and responsibility of the apartment leased premises and agrees to maintain the apartment in a clean, safe, and sanitary condition. Management will make repairs to the apartment with reasonable promptness upon receipt of written notice from Resident. Management's repair obligations under Georgia landlord/tenant law only pertain to the apartment, and not to the common areas of the apartment community. Resident agrees and acknowledges that he or she only leased the apartment and that Resident's and Resident's occupants, family, and social guests access to amenities and common areas of the apartment community are only a permissive license to use such amenities and common areas.

Resident shall pay as additional rent for any cleaning or damages exceeding normal wear and tear to the premises caused by Resident or caused by Resident's occupants, family, social guests, invitees or licensees of the Resident and occupants that exceed normal wear and tear. Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the leased premises or apartment community, and Resident is responsible for the cost to repair, replacement cost, and all expenses required to repair or replace the equipment, building, or property damaged. Resident is liable to and shall indemnify, defend, and hold harmless Management and the apartment owner for any damages or repairs

Copyright © 2/2020 - Atlanta Apartment Association, Inc. - Form F-1401
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

Page 6 of 9

caused by Resident or Resident's occupants, family, social guests, and invitees. Resident shall promptly pay as additional rent with the next month's rent the costs of any repairs, replacement, or damages caused by Resident or Resident's occupants, family, social guests, or invitees upon issuance of an invoice from Management.

Resident may not alter the interior or exterior structure of the apartment or apartment community in any manner without the express written consent of Management. Please see Par. 9 with regard to Management's policy on disability modification requests.

Resident must promptly report the need for any repairs to Management in writing before Management is obligated to make any repairs. Resident must promptly report any dampness, water leaks, or mold in the apartment to Management. Resident shall properly use the heating, ventilation, and air conditioning (HVAC) system to maintain temperate conditions so as to prevent freezing of water pipes in cold weather and to prevent mold growth or excessive humidity during warm weather. Resident is required to use air conditioning during June, July, August, and September and shall not turn off the air conditioning and open windows for purposes of cooling the apartment. Resident must inspect any fire alarm and fire extinguisher at least once per month to determine whether they are in proper working condition and report to Management the need for any need for repair or replacement. Resident shall promptly notify Management of any damage to or malfunction of any door or window locks or intrusion alarm.

Resident must promptly report any evidence, knowledge, or suspected presence of bed bugs in the apartment and cooperate with Management to allow inspection and treatment of the same. Adjoining or neighboring Residents to an apartment infested with bed bugs must cooperate with Management in inspection and treatment to prevent a possible cross infestation or migration.

24. **Abandonment.**   Resident shall not abandon the apartment, Resident's personal property, or motor vehicles. Title to any abandoned property (including, but not limited to, pets or animals) shall vest in Management. Management may store, sell, or dispose of abandoned property without notice.

If Resident abandons the apartment or his or her personal property contained therein, Management shall have the right to re-key, re-enter, and re-let the apartment without filing a dispossessory warrant or obtaining a writ of possession. Management is not required to file a dispossessory proceeding in order to recover an abandoned apartment or to dispose of any abandoned property found in an abandoned apartment. Management shall have sole discretion in determining whether the Resident has abandoned the apartment. Circumstances indicative of an abandonment include, but are not limited to, Resident's unexplained absence or failure to occupy the apartment; the overall appearance and condition of the apartment; Resident's statement that he or she is moving or leaving the apartment community; failure to pay rent or utilities; discontinuance of utility service; failure to respond to Management's notices, communications, or eviction proceedings; or removal of a substantial amount of Resident's personal property.

25. **Attornment; Sale, Foreclosure, Renovation, and Former Employees.**   Resident's rights, or, if applicable, his employment with Management, are subordinate to any deed to secure debt, sale, or contract for sale of the property.

In the event the apartment community or any portion or building of the community is foreclosed, sold, placed under contract to be sold, or scheduled for substantial renovation, rehabilitation, or demolition, either Management or the new owner shall have the right to terminate the lease on 30 days' written notice. In the event that Management elects to terminate the occupancy or lease under this provision, then during the 30 day period immediately preceding either the termination date of Resident's occupancy or the termination of the lease, the Resident's rent shall be reduced by fifty percent (50%); however, if the Resident shall hold over beyond the termination date, then Resident shall owe the full rent due for said 30-day notice period plus hold over rent as provided in paragraph 12.

If Resident is an employee of Management and his or her employment is terminated, then this employee lease shall also terminate, any employee rental discounts shall end, and the employee agrees to vacate the premises if requested. If permitted to stay, the former employee shall pay the current market rate rent as specified by Management at the time employment is terminated.

26. **Default by Resident.**   Resident's violation of this lease or any addenda constitutes a default. Violations constituting a default include, but are not limited to: unauthorized occupants; non-payment of rent; improper non-renewal or termination of the lease as required by paragraphs 6 or 7; abandonment of the apartment as prohibited in paragraph 24; providing false or misleading information in the rental application; failure to pay or continue utility service as required in paragraph 10; allowing unauthorized persons access in violation of paragraph 12; any unauthorized occupants or improper use or conduct in violation of paragraph 14; or causing damages or cleaning in excess of normal wear and tear.

Upon default, Management may terminate Resident's lease or right of possession by giving written notice and re-entering the apartment as provided by law. Notice to cure a default is not required but, if given, shall not waive Management's right to terminate or insist on strict compliance. Resident shall surrender possession of the premises to Management promptly on the effective date of any termination notice, remove all possessions and persons occupying the apartment, return all keys to Management by personally handing them to a Management representative, and restore Management to quiet possession of the leased premises.

Notwithstanding Management's termination due to Resident's default, Resident shall remain liable for all rent, hold-over rent under paragraph 12, liquidated damages (if applicable) as provided below, unpaid utilities, rental concession, lost discounts or pay-backs, damages exceeding normal wear and tear, costs of eviction, attorney's fees and expenses of re-letting incurred by Management as a result of Resident's default.

Management, at its option, may obtain possession of the apartment through a dispossessory proceeding, either with or without first terminating the lease or right of possession. Management, at its option, may also recover possession of an abandoned apartment without filing a dispossessory proceeding by changing the locks and disposing of any abandoned property.

Notwithstanding termination of the lease, commencement of a dispossessory proceeding, issuance of a writ of possession, actual physical eviction, or recovery of the abandoned premises, Resident shall remain liable for all rent accrued through the date on which possession is obtained by Management; rent through the remainder of the lease term or liquidated damages (if applicable) as provided in this paragraph; damages exceeding normal wear and tear; unpaid utilities; rental concession, lost discounts or pay-backs; costs fees, and expenses. Neither issuance of a writ of possession, actual physical eviction, or retaking possession of the apartment shall relieve Resident of liability for rent through the end of the lease term or liquidated damages (if applicable) under this paragraph. All rent, fees, damages and liquidated damages (if applicable) shall be due immediately upon demand for payment.

In the event of a default by Resident, the Resident shall be liable to Management for rent through the remainder of the lease term as follows. Management may either allow the apartment to remain vacant and hold Resident liable for payment of rent through the remaining term of the lease; sue the Resident for breach of the lease and for each installment of rent as it comes due through expiration of the lease; or re-enter the premises as provided by law and re-let the apartment on Resident's behalf while holding the Resident liable for any deficiency between the contract rent and rent received through the remaining term of the lease until the re-letting. Management has the right, but not the obligation, to attempt to re-let the premises on Resident's behalf.

In the event that Resident has breached or defaulted the lease and failed to terminate the lease properly as provided by law or as provided for in Paragraphs 6 or 7 of this Apartment Rental Contract, then Resident shall be liable to Management for unpaid rent due through the remainder of the lease term under this paragraph (Par. 26), and not as provided in Paragraph 7, and Management is not entitled to collect any termination (cancellation) fee or notice fee.

Copyright © 2/2020 – Atlanta Apartment Association, Inc. – Form # 1401
All Rights Reserved

Blue Moon eSignature Services Document ID: 259386354

**Liquidated Damages In Lieu of Rent Through the Remainder of the Lease Term.** Management shall not be entitled to Liquidated damages unless the Liquidated Damages Addendum has been signed by Management and Resident to indicate that the parties desire to use liquidated damages in determining the amount of rent due through the remainder of the lease term in the event of Resident's default. In the event the parties have selected liquidated damages for determining Resident's liability due to Resident's breach, then the Liquidated Damages Addendum is incorporated herein by reference, and the parties shall execute the same as a separate addendum.

Management's re-entry to leased premises either under judicial process or by retaking possession after abandonment or surrender shall not relieve Resident of liability for payment of rent through the remainder of the lease term or liquidated damages (if applicable) that landlord is entitled to collect under the terms of this rental agreement.

Management shall have the right to terminate the lease or right of possession of any Resident or occupant of the apartment who is arrested, indicted, charged, or convicted of any felony, crime of violence, or threatened violence; robbery; theft; dishonesty; rape; child molestation; sexual offense; illegal sale, use, or possession of drugs; illegal use or possession of a weapon; stalking; arson; criminal damage to property; vandalism; issuance of bad checks; fraud; forgery; or any other crime which could adversely affect the health, safety, or welfare of other Residents or Management staff, regardless of whether the offense occurred on or off the apartment community premises and regardless of when the offense occurred. Management shall have the right to file a dispossessory action and obtain a writ of possession based on the Resident's or occupant's conduct which constitutes a criminal violation without waiting for a criminal adjudication, finding, or decision on the criminal charges.

Management shall have the right to terminate the lease of any Resident whose apartment is found to be infested with bed bugs; have a mold or water intrusion problem; be unfit for habitation; or constitute a hazard to health, safety, or welfare of any person, the apartment, the apartment community or management employees. Upon such termination, resident must promptly vacate, remove all personal property and possessions, and return possession of the apartment to Management.

27. **Privacy, Disclosure, and Consent.** Resident agrees that information about him or her that is known to Management or contained in his or her Resident file is not confidential, privileged or private. Resident authorizes Management to disclose any information known or contained in the Resident file to any law enforcement agencies who request such information either with or without a subpoena; to prospective landlords or lenders who request such information in connection with approval of any rental application or home purchase; or to persons or parties who make a request for such information using discovery procedures in a civil action or subpoena in a criminal proceeding.

Resident agrees that the apartment owner and Management shall have the right to provide information from its account and business records to any Consumer Reporting Agency to be included in the Resident's consumer file and credit history, including, but not limited to, rental history, rental payments, unpaid balances, and other information. If the Resident disputes the accuracy of the information provided, the Resident shall notify the Consumer Reporting Agency and send written notice of the dispute to Management at the address specified in Par. 9. When giving notice to Management of any dispute as to the accuracy of adverse rental information, rental payments, disputed account balance, or other disputed information, Resident agrees to provide his or her correct names on the lease, the apartment number, complete apartment address, dates of occupancy, and clear details as to the basis of such dispute that the Consumer Reporting Agency and Management will have sufficient information to investigate, evaluate and respond to the dispute.

Resident agrees that Management shall have the right to pursue collection of any sums alleged due from Resident through employment of independent contractors as collectors and that such sums may be reported to any consumer reporting agency (credit bureau) and shown on Resident's credit report. Resident agrees that variances or inaccuracies in the amounts submitted for collection or reported to any credit bureaus do not constitute a violation of any federal or state laws pertaining to reporting or collection of such debts and that the amount alleged due may be amended or corrected at any time. Resident agrees that Management or any such collector or collection agency is expressly authorized to contact Resident by phone or mail to notify Resident of the debt or attempt collection of the same and to communicate with third parties regarding the existence of the debt, the location of the Resident, or the Resident's ability to pay the debt. Resident agrees that Management or any such collector is expressly authorized to obtain a consumer report (credit report) on Resident and to obtain information on Resident's location and employment in connection with the collection of any amounts claimed due under this lease. Management's and collector's rights under this paragraph shall continue and survive independently beyond expiration or termination of the lease or Resident's occupancy of the apartment.

Resident(s), their occupants, family members, and social guests hereby authorize and grant Management, their contractor(s), employee(s), and or any third parties hired by Management, permission to take, use, and publish photographs and/or videos of Resident(s), their occupants and social guests, including but not limited to, their minor children, at events and/or activities in the common areas of the apartment community. Management is permitted to use such photographs or video for print, publication, copyright, online social media and video-based marketing materials, as well as any other form of publication or use at Management's sole discretion. Resident(s), their occupants and social guests, including their minor children, release and hold harmless Management from any reasonable expectation of privacy or confidentiality associated with the images and videos taken and used by Management. Resident(s) and their occupants, family members, and social guests acknowledge and agree they will not receive any type of financial compensation, ownership or royalties with the taking, use, marketing, or publication of any photographs or videos.

Resident(s) hereby expressly authorize Management, and its successors, assigns, agents, attorneys, insurers, representatives, employees, officers, shareholders, partners, parents, subsidiaries, affiliated entities, and all agents and representatives, including any collection agency or debt collector hired by any of the preceding persons or entities, and all corporations, persons, or entities in privity with any of them (hereinafter collectively referred to as the "Authorized Entities") to communicate with Resident(s) for any reason related to the services provided by them or services to be provided in the future by them, including collection of amounts owed for said services, using an automatic telephone dialing system or an artificial or prerecorded voice at the telephone number or numbers Resident(s) provide.

Resident(s) further expressly consent and authorize the Authorized Entities to communicate with Resident(s) at any phone number or email address or other unique electronic identifier or mode that Resident(s) provide to any Authorized Entity at any time, or to use any phone number or email address or other unique electronic identifier or mode that any Authorized Entity finds or obtains on its own which is not provided by Resident.

Any Authorized Entity may communicate with Resident(s) using any current or future means of communication, including, but not limited to, automated telephone dialing systems, artificial or pre-recorded voices, SMS text messages, other forms of electronic messages, electronic mail directed to any internet domain address, electronic mail directed at a mobile telephone service, cellular telephone services, internet or world wide web addresses including social and business networking internet sites, or electronic messages or mail otherwise directed to Resident(s) through any medium. Resident(s) authorize any and all of the communication methods described in this paragraph even if Resident(s) will incur a fee or a cost to receive such communications. Resident(s) further promise to immediately notify the Authorized Entities if any telephone number or email address or other unique electronic identifier or mode that Resident(s) provided to any Authorized Entity changes or is no longer used by Resident.

28. **Definitions.** The term "Resident" includes all tenants or other persons who signed or are obligated under the lease. "His" shall also mean "her" when applicable. "Resident" refers to the tenant. The term "Management" may refer to the owner of the apartment community or to the managing agent who is under a Management contract to operate the apartment community on behalf of the owner. The legal ownership entity is different from the Management entity. The owner's managing agent may or may not have any ownership interest in the apartment community and may be an entirely independent contractor which operates the apartment community for the owner for a fee. "Occupants" are persons who are living in the apartment rental with the Resident and disclosed in the lease but have not signed the lease.

Copyright © 2/2020 - Atlanta Apartment Association, Inc. - Form #1401
All Rights Reserved

The term "occupants" means persons who did not sign the lease but were disclosed and authorized to live in the apartment on a full time basis. Occupants could include family members of the Resident, but is not limited to family members, and includes roommates or other persons who are authorized to live in the apartment as disclosed in this lease. "NSF" means checks that are dishonored or returned by the bank unpaid, and is also referred to as "not sufficient funds." "Skip" means to vacate or abandon the leased premises in violation of this lease, either with or without turning in all keys and either with or without removing all personal property. "Notice period" refers to the length of time required in paragraph 6 or 7 or any other provision before a notice can take effect. The word "lease" means the Apartment Rental Contract which creates the relationship of landlord and tenant between the Resident and Management. "Leased premises" refers to the apartment Resident rented, and is also referred to as the "premises" or "lease premises," but does not include any of the common areas or other portions of the apartment community property. The term "leased premises" does not include any portions of the apartment community outside of the apartment rental unit as the Resident only has a permissive license to use the other areas and amenities of the apartment community in conjunction with the rental of the apartment. "Termination date" is the date following a notice period or the date on which Resident's lease or right of possession terminates as specified either in a non-renewal notice or a lease termination notice from Management based on Resident's default. A "social guest" is any person who is present in the Resident's apartment or on the apartment community property by express or implied invitation of the Resident or Resident's occupants, other social guests, or family members and includes anyone temporarily living or visiting Resident. The term "social guest" includes, but is not limited to, visitors and family members visiting or present in the apartment or apartment community. An "invitee" refers to a business guest or visitor who is present in the apartment or the apartment community with the express or implied invitation of the Resident for the purpose of conducting or soliciting business with or for the Resident, occupants, or social guests of the Resident. The "trade name" is the name of the apartment community and is the name or alias under which the legal owner of record does business and operates the apartment community. A "default" or "breach" of the lease and addenda means a violation of the lease provisions and gives Management the right to terminate the Resident's occupancy or lease. "GREC" means the Georgia Real Estate Commission.

29. **Usufruct.**   This lease only creates the relationship of landlord (Management) and tenant (Resident) and does not create any ownership or transferable rights in real estate. This lease is a "usufruct," and not an estate for years.

30. **Entire Agreement.**   This lease, any referenced addenda, and any addenda separately signed or referring to the lease or apartment shall constitute the entire agreement between the parties, and no prior negotiations, representations, or oral statements are binding. This lease may not be modified except with the express written consent of Management. The Resident is legally obligated under the terms and conditions of any addenda which he or she signed, and the same are part of and incorporated by reference into this lease.

31. **Joint and Several Liability.**   Each person, corporation, or roommate who signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party. Management and the owner or any collection agency or attorney representing the owner or Management shall have the right to settle in whole or part all or a portion of any debt owed by one Resident without releasing or waiving its claim for the balance of the debt against another Resident, co-signor, or guarantor. Settlement or release of one Resident or Guarantor shall not release the other Resident or Guarantor from liability for the debt owed.

32. **Agency Disclosure.**   Management is acting on behalf of the owner of the apartment community in exchange for compensation.

33. **Know Your Neighbors.**   Certain individuals convicted of certain sex-related crimes are required to register their name and current address on an index maintained by the state or county in which they reside. You may access that index in order to determine whether any such individuals live in proximity to a certain location. The public may access the Internet to view all sex offenders registered in Georgia. The Statewide Sex Offender Register can be obtained through the Internet at http://gbi.georgia.gov/georgia-sex-offender-registry. The public may also contact the local Sheriff to view a list of the sex offenders listed in their county.

34. **Special Stipulations.**   Any special stipulations specified in Par. 34 shall control and supersede and control over conflicting provisions in the text of this lease.

Money orders are not accepted.

**GEORGIA**
APARTMENT ASSOCIATION

| EXTENDED SPECIAL STIPULATIONS ADDENDUM |
| --- |

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__   __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of
☐ as Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Extended Special Stipulations Addendum to the Apartment Rental Contract ["the Lease"] with __Bassey Enun,__
__Dennis Ford__
["Resident"], pertaining to

Apt. No. ___0606___ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__
[Address]. This addendum is part of the Apartment Rental Contract dated ___April 6, 2021___ [Date of Lease].

The following are a continuation of the Special Stipulations of the Apartment Rental Contract and are incorporated by reference into said apartment lease.
These Special Stipulations have been added by Management or owner of the apartment community, and were not created by either the Georgia or Atlanta
Apartment Associations as part of their standard leases, forms, and addenda.

__Should the leaseholder(s) request a transfer-on-site before their lease expires, all__
__leaseholder(s) must: a) agree to the transfer; b) provide 30 days' advance notice; c) sign__
__and agree to the terms of the On-Site Transfer Agreement; and d) pay a transfer fee of $500.__
__00 prior to the date of transfer. No transfer will occur until a)-d) have been satisfied.__
__Also, all leaseholders must be in good standing and have an apartment inspection completed__
__by Management before the transfer will be authorized to occur. In Apartment Owner's and/or__
__Management's sole discretion, if Resident's renter's liability insurance policy does not__
__meet all the requirements outlined in the Renter's Insurance Addendum to this Apartment__
__Rental Contract for any reason (including a termination or lapse of such renter's insurance__
__policy), Resident will be added to the Management's master renter's insurance policy__
__immediately upon written notice to Resident, which Resident hereby accepts and consents to,__
__and a charge of $11.00 per month will be added to Resident's ledger and due as additional__
__rent for each month (or any portion of a month) that the master policy is in place for the__
__Resident, until satisfactory proof of insurance coverage is provided by Resident to__
__Landlord. NOTE: Resident's personal belongings are NOT covered or insured under this master__
__insurance policy. You must not allow any utilities (other than cable TV) to be cut off or__
__switched for any reason - including disconnection for non-payment - until the Lease Contract__
__term or renewal period ends. If a utility is individually metered, it must be connected in__
__your name and you must notify the utility provider of your move-out date so the meter can be__
__timely read. If you delay getting utility service turned on in your name by lease__
__commencement or cause it to be transferred back into our name before you surrender or__
__abandon the unit, you'll be liable for a $50 fee plus the actual or estimated cost of the__
__utilities used while the utility should have been connected in your name. Pets are defined__
__as dogs, cats, fish, birds and hamsters. Exotic pets or livestock are not permitted to live__
__in our communities. Fish tanks are to be limited in size and no more than 24 gallons. The__
__following dogs are not admitted to our communities unless they are certified service animal__
__(CSA) or an emotional support animal (ESA): Alaskan Malamute, Akita, American Bully, Bull__
__Mastiff (Presa Canario), Chow, Doberman Pinscher, German Shepard, Husky, American__
__Staffordshire Terrier, American Pit Bull Terrier and Staffordshire Bull Terriers also known__
__as "Pit Bull", Rottweiler, Wolf Hybrid or any mix of the above breed. Any dangerous dog. A__
__dog can be designated as "dangerous" if it makes an unprovoked attack on someone anywhere__
__outside its normal enclosure or an unprovoked act on someone leading that person to believe__
__the dog would attack and cause injury.__

Signature of Parties:
Management
__Atler at Brookhaven Apartments Holdings, LLC__

Name of Management
By: *Nicole McLawrin*
    Signature of Management Representative Name

As: __Community Manager__                     (Job Title)

Residents

*Bassey Enun*                                    (Resident Signature)
Printed Name of Resident: __Bassey Enun__

*Ford*                                           (Resident Signature)
Printed Name of Resident: __Dennis Ford__

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc.
All Rights Reserved

| ✓ Blue Moon eSignature Services Document ID: 259386354 |
| --- |



| | | |
|---|---|---|
| | **PET, SERVICE, OR ASSISTIVE ANIMAL ADDENDUM** | FORM VALID FOR<br>GEORGIA APARTMENT<br>ASSOCIATION<br>MEMBERS ONLY |

Addendum Date: **April 6, 2021** , **Atler at Brookhaven Apartments Holdings** , ["Management"] ☒ as Owner of ☐ as Agent for the Owner of **Atler at Brookhaven Apartments**.

["Community Name"] enters into this Pet, Service, or Assistive Animal Addendum to the Apartment Rental Contract ["the Lease"] with **Bassey Enun, Dennis Ford**

["Residents"], pertaining to Apt. No. **0606** located at **3833 Peachtree Road # 0606, Atlanta, GA 30319** [Address]. This addendum is part of the Apartment Rental Contract dated **April 6, 2021** ["Date of Lease"].

1. **Resident's Disclosure of Animal Occupancy.** Resident discloses, represents, and warrants that he or she ☐ HAS ☒ does NOT have any pets, service, or assistive animals ("Animals") at the time of taking occupancy of the apartment.

   If Resident has a pet, service, or assistive animal at the time of taking occupancy of the apartment, then information describing the animals is listed below.

   If Resident subsequently acquires, obtains, or brings an animal, a new animal not listed below, or a replacement animal to live or occupy the apartment after taking occupancy, then Resident agrees to sign, update, or modify this Addendum to provide additional information about the animal and obtain permission to have such animal in the apartment.

   Resident acknowledges and agrees that he or she has special obligations to the animal, other residents, and Management employees when allowed to have an animal in the apartment.

   No Resident is permitted to have an animal occupying the apartment or in the common areas of the apartment community without disclosing the animal and having the express written permission and approval of Management under a signed Addendum. The Resident is not allowed to add or substitute an animal without prior written consent of Management.

2. **Addendum is Part of Apartment Rental Contract.** This Addendum is part of the above Apartment Rental Contract ["the Lease"] and a violation of the Addendum is a serious lease violation, breach, or default of the Apartment Rental Contract. If the Addendum was signed after the Resident took occupancy or signed the lease, then this Addendum shall modify and be incorporated into the above described lease.

3. **Description of Large Animals, Dogs, and Cats.** The following animals will be living in or occupying Resident's apartment:

   A. Description of 1st Dog, Cat or Animal:
   Animal's Name: _____
   Kind of animal (ex. – Dog, Cat): _____
   Breed (ex. – Labrador Retreiver): _____
   Age of animal: _____
   Weight of animal: _____
   Color of animal: _____
   Veterinarian: _____

   B. Description of 2nd Dog, Cat or Animal:
   Animal's Name: _____
   Kind of animal (ex. – Dog, Cat): _____
   Breed (ex. – Labrador Retreiver): _____
   Age of animal: _____
   Weight of animal: _____
   Color of animal: _____
   Veterinarian: _____

   C. Description of Other Animals:
   Kind of animal (ex. – Fish, Bird): _____
   Breed (ex. – Goldfish, Parakeet): _____
   Number of Animals: _____

4. **Resident's Disclosures, Representations, and Warranty that the Animal is Safe and Poses No Threat, Risk, or Harm.** Resident represents and warrants that the animals described above: are suited for living in an apartment community and do not pose a danger or threat of any kind to any person, their property, or another animal; and have never before bitten, scratched, attacked, damaged or injured another person, personal property, or other animals. Resident represents and warrants that he or she has never had a claim or lawsuit made or filed against them or any other person or business for an injury or damage caused by or related to the animals Resident will have living in the apartment or present in the common areas of the apartment community. Resident represents that the animal has had all required immunizations and shots, including, but not limited to Rabies, Parvo, Distemper, and other animal diseases and that Resident will update such immunizations and shots on an annual or other regular basis. Resident agrees and understands that Management's approval of an animal to occupy the apartment or to be present in the common areas of the apartment community is conditional upon Resident's truthful and accurate disclosure and representations and compliance with all conditions in the lease, this addendum, and the community rules and regulations. Management would not have approved the animal for occupancy but for Resident's express warranty and representations.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #9404
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

5. **Equal Housing Opportunity Policy.** The apartment owner and Management provide equal housing opportunity for qualified applicants and do not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other legally recognized status in the State of Georgia. It is the owner's and Management's policy to provide reasonable accommodations in the apartment community's operational policies and procedures and to permit the Resident to make reasonable modifications that are necessary for the Resident and related to the disability for persons with a demonstrated disability. The Resident must request and obtain permission from the owner or management for any accommodation or modification prior to implementing the same. In general, the cost or expense of physical modifications to the apartment or apartment community is the responsibility of the Resident, unless the applicable law requires the owner or Management to absorb or be responsible for the cost of such modifications. A Resident or occupant with a demonstrated disability is allowed to have an assistance animal to assist with the person's disability. A disabled Resident or occupant is allowed to have an assistance animal which has not been trained as a service animal unless the animal has a history of dangerous, vicious, or unsafe behavior. If the nature of the disability is not obvious or apparent or the manner in which the animal will provide assistance is not clear, Management has the right to request additional information regarding how the animal will assist with the resident's disability. The Resident does not have an absolute right to the specific accommodation or modification requested, and Management has the right to offer an substitute or alternate accommodation or modification with conditions that will provide adequate assurance for the safety, health, and well being of other Residents, occupants, social guests, invitees, and Management employees. No Additional Rent, Non-refundable Fee, or Animal Security Deposit is required from Residents or occupants who are disabled and have an approved service or assistance animal; however, the Resident is responsible for any and all damages and cleaning fees exceeding normal wear and tear caused by such animal.

6. **Additional Rent, Non-Refundable Fees, or Security Deposits for Animals.** Resident shall pay the following rent, non-refundable fees, or security deposits in connection with having an animal occupying the apartment. All such rent, fees, and deposits are in addition to those specified in the Apartment Rental Contract or other addenda; however, a disabled Resident or occupant is not required to pay any such charges, fees, or deposits for service or assist animals. None of the following rent, fees, or security deposits are applicable to disabled persons with approved service or assistive animals.

Additional Rent: Resident shall pay $ __20.00__ per month on the first day of each month as additional rent for the animal.

Non-refundable Fee: Resident shall pay $__350.00__ as a one-time, non-refundable fee for occupancy of the animal in the apartment. Payment of such fee is not a security deposit, is not refundable, and does not constitute liquidated damages. Resident shall remain liable for all damages exceeding normal wear and tear to the apartment or apartment community.

Animal Security Deposit: Resident shall pay $_____ as a security deposit for fulfillment of all terms and conditions of the Apartment Rental Contract and this Addendum. Resident's Animal Security Deposit will either be protected by a Surety Bond on file with the Clerk of Superior Court in the county in which the apartment community is located or the deposit will be placed in a trust account in __Bank of America__ _____ [Name of Bank where deposit will be located]. The deposit shall be returned to Resident as provided by law; however, Management shall have the right to apply the Animal Security Deposit to any rent, fees, charges, or damages due under the Apartment Rental Contract. Management is not limited to applying the Animal Security Deposit only to rent, fees, or damages pertaining to or caused by the animal.

7. **Removal of Animals that Are Distressed, Sick, Abused, Neglected, or Abandoned.** Resident shall not abandon any animal and shall use due care to maintain the health, safety, and welfare of the animal at all times. Management shall have the right to take any and all steps to remove and obtain veterinarian treatment, place the animal in protective care or shelter, or place an animal for adoption if Resident should abuse, neglect, or abandon the animal. Management shall have the right to take any steps to remove any animal that appears to be abandoned, neglected, abused, unattended, unsupervised, or causing injury or damage to any person, the apartment, the apartment community, or any personal property. Any abandoned animal shall become the property of the owner or Management for placement with a new owner. Management shall have the right to remove from the apartment and board any animal that is causing excessive noise or other behavior that disturbs the quiet enjoyment of other Residents. Management is authorized to physically pick up and remove the animal without the necessity of filing or pursuing any legal proceeding or remedy in a court of law. The Resident shall be responsible to owner and Management for all costs of care, boarding, placement, and veterinarian treatment of any abused, neglected, or abandoned animal. Resident authorizes Management to enter Resident's apartment and remove any animal which is abused, neglected, or abandoned and deliver the animal to the county animal control department, Humane Society, a veterinarian, or temporary or permanent foster home, and the apartment owner and Management shall have no liability to the Resident for removal of the animal. Management may, but is not required to, give notice to Resident of removal of the animal.

8. **Insurance and Indemnification.** Resident shall purchase and maintain a renter's insurance policy which provides a minimum of $100,000 liability insurance for any injuries or damages caused by the animal or caused by Resident's or Resident's occupants, family members, social guests, or invitees failure to supervise, control, or maintain the health, or prevent disease in the animal through proper control, care, supervision, and immunization. Resident shall indemnify, defend, and hold harmless the apartment owner and Management from the claims of any person, business, or governmental agency for any injuries or damages caused by the animal or caused by Resident's or Resident's occupants, family members, social guests, or invitees failure to supervise, control, maintain the health, or prevent disease in the animal through proper care and immunization. The Resident shall be liable for any injuries or damages to third parties caused by the animal or caused by Resident's or Resident's occupants, family members, social guests, or invitees failure to supervise, control, or maintain the health, or prevent disease in the animal through proper care and immunization. Resident shall not allow the animal to damage any portion of the apartment or apartment community and is responsible for paying all such damages immediately upon receipt of an invoice.

9. **Animal Rules and Regulations.** The Resident shall not violate any federal, state, or local law related to ownership or possession of an animal. In addition, Resident shall follow and obey the following rules and regulations.

   A. Resident shall control and prevent the animal from excessive barking, mewing, howling, noise, or other behavior which disrupts the quiet enjoyment of other residents or disrupts Management in carrying out its day-to-day business of managing the apartment community. Resident shall not allow or permit the animal to frighten, assault, injure, bite, or attack any other person or animal.

   B. Resident shall properly feed, water, clean, care, supervise, and provide veterinarian care for their animal at all times.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #9404
All Rights Reserved

✓ Blue Moon eSignature Services Document ID: 259386354

C. Resident may only have and keep a pet or animal that is considered a common and domesticated household animal or pet that is suitable for living in an apartment and apartment community. Examples of such animals are dogs, cats, small aquarium size fish, and small birds. Animals that are considered to be "domesticated" (such as, but not limited to, horses) but are otherwise uncommon household animals or are otherwise unsuited for apartment living are prohibited. Wild, exotic, poisonous, endangered, or prohibited species of animals are not allowed. Snakes, spiders, lizards, reptiles, and rodents are prohibited. Resident is prohibited from owning or possessing any animal of which ownership or possession is illegal under any federal, state, or local law.

D. Resident shall not leave the animal, dog, or cat alone, unattended, or unsupervised for more than 12 hours without water, food, and outdoor access for defecating. Resident shall not leave any animal unattended for an unreasonable period of time if the animal's age, medical condition, or health requires attention and care more frequently than every 12 hours.

E. Resident shall not crate, cage, or keep an unattended animal, dog, or cat in a cage or crate for more than 8 hours at a time except for purposes of house training. Resident shall not crate any animal for more than 12 hours at a time without proper supervision and allowing a reasonable time out of the crate for purposes of defecation and exercise. All dogs shall be properly trained to defecate outside the apartment in approved areas of the apartment community. All cats must have a litter box that is regularly cleaned. Resident shall prevent the animal from defecating on floors, walls, doors, or the fixtures of the apartment and keep the premises in clean, sanitary, and hygienic condition.

F. Resident must maintain all dogs and cats on a leash and shall follow all leash laws when the animal is outside of the apartment or outside of an approved and enclosed animal park, if any, specifically designated for the animals. The Resident shall maintain control over his or her animal at all times to prevent any loss, damage, or injury to the animal, to other persons, to the apartment community, or to other property. The leash used to control the animal shall not be longer than 8 feet or such other length as specified by the applicable leash law.

G. All animals shall be properly licensed and identified with their animal's name and phone number on a collar or identification tags which are readily visible with the owner's name and phone number, regardless of whether the animal has an imbedded identification chip which can be digitally read. All dogs and cats shall have a collar or harness for attachment to a leash while outside of the apartment or while in the common areas of the apartment community.

H. Resident shall clean, remove, and properly dispose of all animal feces in a clean and sanitary manner. Resident shall not allow animal excrement or urine to damage the apartment, apartment community, landscaping, flowers, shrubs, grass, hallways, breezeways, elevators, stairs, balconies, or patios.

I. Resident shall use any designated areas for walking and defecating if the apartment community has specifically designated certain areas for that purpose. If no such areas are designated, then the Resident shall only use natural, un-landscaped, or wooded areas or buffers surrounding the apartment community for defecation.

J. Resident shall not tie or tether any animal to a patio, balcony, building, fence, stake, tree, stairway, shrub, or other portion of the apartment community.

K. Animals, other than disability service or assist animals, are not permitted in the Management, Leasing, or Business offices; laundry rooms; fitness, exercise, or spa centers; swimming pool; tennis courts; or any other recreational facilities or amenities of the apartment community.

L. Other: **All residents must complete petscreening profile. There is a $20 fee for the first profile, $15 for additional profiles, $10 renewal fee. No fee if you don't have a pet.**

**Signature of Parties:**

**Owner or Management**

Atler at Brookhaven Apartments Holdings, LLC

Name of Owner or Management Company

As Landlord

By: *Nicole McLaurin*
   Signature of Management Representative

As: Community Manager _____ (Title)

**Residents**

*Bassey Enun* _____ (Resident)

Printed Name of Resident: Bassey Enun

*Ford* _____ (Resident)

Printed Name of Resident: Dennis Ford

_____ (Resident)

Printed Name of Resident: _____

_____ (Resident)

Printed Name of Resident: _____

_____ (Resident)

Printed Name of Resident: _____

_____ (Resident)

Printed Name of Resident: _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9404
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354


**GEORGIA**
APARTMENT ASSOCIATION

BED BUG ADDENDUM

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__  __Atler at Brookhaven Apartments Holdings__  ["Management"] ☒ as Owner of
☐ as Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Bed Bug Addendum to the Apartment Rental Contract with __Bassey Enun, Dennis Ford__
_____ ["Resident"],
pertaining to Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__
[Address]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ [Date of Lease].

1.  This Addendum is part of the Apartment Rental Contract and deals with the difficulties and associated problems when bed bugs *(cimex loctularious)* are found in or infesting an apartment or personal property located in the apartment.

2.  Both Management and Resident agree they inspected the apartment prior to move-in and did not observe any evidence of bed bugs or a bed bug infestation.

3.  Management represents and agrees that it is not aware of an infestation or presence of bed bugs in the apartment or building in which the apartment is located; or, if there was a prior infestation or presence in the apartment or building, it has been professionally treated by a licensed pest control vendor and is believed to be free of further infestation.

4.  Resident represents and agrees that he or she has read the information about bed bugs provided by Management and is not aware of an infestation or presence of the pest in Resident's current or previous apartments, home, or occupancy. Resident represents and agrees that he or she is not aware of any bed bug infestation or presence in any of his or her furniture, clothing, or personal property and possessions and has fully disclosed any previous bed bug infestation which Resident may have experienced. Resident represents and agrees that if he or she has not been subjected to or living in an environment, apartment, or home in which there was a bed bug infestation or presence. Resident represents that if he or she was previously living in an apartment or home that had a bed bug infestation that he or she has had all furniture, clothing, and personal property or belongings professionally and properly cleaned and treated by a licensed professional pest control service and believes that such items are believed to be free of further infestation. In the event Resident discloses a previous experience of bed bug infestation, Management shall have the right to see documentation of the treatment and inspect Resident's personal property and possessions to confirm the absence of bed bugs.

5.  Resident acknowledges that used or discarded furniture, clothing, and personal property obtained from other owners or found abandoned and discarded can contain bed bugs which will infest the apartment, be extremely difficult to control, and the costs associated with treating bed bugs and lost revenues associated with it are expensive. Resident represents and agrees that he or she shall not create or allow a condition or personal property to enter the apartment that will cause or allow an infestation or presence of bed bugs in the apartment. Resident shall not engage in risky behavior of bringing furniture, clothing, or personal property found on the street, in a dump, or acquired second hand or used without confirming the absence of bed bugs or properly and professionally cleaning and treating the items by a licensed professional pest control service before bringing such items into the apartment.

6.  Resident shall allow Management and its pest control vendors to have access to the apartment at reasonable times and hours for inspection, pest control, and treatment of bed bugs. Resident and his family members, occupants, social guests, and invitees shall cooperate and shall not interfere with Management's inspections or treatments.

7.  Resident shall promptly notify Management of any conditions that may indicate the presence of bed bugs in the apartment or in any of Resident's clothing, furniture, and personal property. Resident shall promptly notify Management of any recurring or unexplained bites, stings, irritations, sores of the skin or body which Resident believes are occurring from bed bugs or from any condition or pest believed to be within the apartment. Resident shall promptly notify Management if he or she discovers any condition or evidence that might indicate the presence or infestation of bed bugs or of any confirmation of bed bug presence by a pest control service or other authoritative source.

8.  Upon confirmation of the presence or infestation of bed bugs, Resident must cooperate and coordinate with Management and its pest control service to treat and eliminate the bed bugs. Resident must follow all directions of Management or its vendor to clean and treat the apartment and building in which it is located. The Resident is required to remove or destroy personal property that cannot be treated or cleaned.

9.  In the event bed bugs are determined to be in the apartment, Management shall have the right to terminate the lease and require Resident to vacate the apartment and remove all furniture, clothing, and personal belongings in order to treat the apartment and building. Management shall have the right to terminate the lease and obtain possession of the apartment - regardless of who is responsible for causing the infestation or presence of bed bugs. Due to the difficulty of treating and repetitive treatments necessary to control the infestation, Resident must vacate the apartment and remove all personal property and possessions to provide full access and fully treat and clean the apartment. Resident must vacate the premises, removing all personal property and persons in order for Management to perform pest control services.

    A determination of the cause or source of the bed bug infestation or presence may occur at a later date after the lease has been terminated, all personal property has been removed, and possession has been returned to Management. Resident does not have the right to withhold possession of the apartment and refuse to move until Management has his or her personal property and possessions treated and cleaned. Resident must first move and treat his or her personal property in accordance with widely accepted treatment methods and procedures as established by a licensed professional pest control service provider. A Resident who fails to vacate after the lease has been terminated will be liable for double holdover rent as provided in the Apartment Rental Contract.

10. Management shall have the right to select the method of treating the apartment, building, and common areas of the apartment community for bed bugs. Resident is responsible for and must treat his or her own personal property and possessions.

Copyright © May, 2019 by Atlanta Apartment Association, Inc. - Form #9425
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

11. If Resident is allowed to transfer on-site to another apartment in the community, Resident must have his or her personal property and possessions professionally treated by a licensed pest control service prior to move-in and cooperate in preventing further infestation or spreading of bed bugs to another apartment or building by having all personal property and possessions treated or cleaned by a licensed professional pest control service. Resident shall cooperate in providing proof of such cleaning and treatment to Management's satisfaction. Resident will not be eligible for transfer on-site to another apartment in the community if Resident or Resident's family members, occupants, social guests, or invitees caused or are responsible for the infestation or presence of bed bugs in the apartment or building.

12. If Resident or Resident's family members, occupants, social guests, or invitees are responsible for causing or introducing bed bugs into the apartment, Resident shall be in default of the lease and shall be liable for all rent, damages, cleaning and pest control fees, and other charges as provided in the Apartment Rental Contract. Resident shall pay all reasonable costs of cleaning and pest control treatment Management incurs to remedy Resident's breach of the Apartment Rental Contract. If Management must move other residents out of their apartments in order to treat adjoining or neighboring apartments, then Resident shall be liable for payment of any lost rental income and other expenses incurred by Management to relocate the neighbors and perform pest control treatment to eradicate an infestation in other apartments.

13. If the Resident or Resident's family members, occupants, social guests, or invitees are not responsible for causing or introducing bed bugs into the apartment, Resident shall not be in default of the Apartment Rental Contract but still must vacate the apartment and return possession upon termination of the lease. The fact that a Resident was unaware that he or she was bringing bed bugs into the apartment will not relieve the Resident of liability if the Resident knew or should have known about the infestation or engaged in risky behavior that was likely to start an infestation within the apartment.

14. Under no circumstances shall Management or Resident be liable to each other for punitive damages for breach of contract related to bed bugs.

Under no circumstances shall Management or Resident be liable to each other for punitive damages for mere negligence related to bed bugs.

15. Resident shall promptly report to Management any known or suspected bed bug infestation or presence in the apartment. Resident shall not try to treat the apartment for a bed bug infestation on his own and acknowledges that Management has the full right to select a licensed and qualified professional pest control vendor to perform treatments and cleaning of the apartment and building. Management shall have the right to set all conditions necessary for inspection and treatment of the premises for the presence or infestation of bed bugs. Management shall have the same right of inspection and treatment of adjacent or neighboring apartments to the infestation even if those apartments are not the source or cause of the known infestation.

You must report any signs or suspicions of bed bugs to Management as soon as possible and cooperate in providing access for inspection and treatment.

It is important that you use good housekeeping practices. Clean and vacuum on a regular weekly basis.

16. If any portion or provision of this addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed and survive and remain enforceable. The court shall interpret and construe the remaining portion of this addendum so as to carry out the intent and effect of the parties.

**Atler at Brookhaven Apartments Holdings, LLC**
Name of Owner or Management Company

By: *Nicole McLaurin*
Signature of Owner or Management Company

As: Community Manager _____ (Title)

Resident *Bassey Enin* _____

Resident *Tobi* _____

Resident _____

Resident _____

Resident _____

Resident _____

Copyright © May, 2019 by Atlanta Apartment Association, Inc. - Form #9425
All Rights Reserved



**GEORGIA**
APARTMENT ASSOCIATION

**Information About Bed Bugs**

The scientific name for bed bugs is *cimex lectularius*. An adult bed bug is about one eighth to one quarter inch in length, somewhat oval shaped, and very flat. Adults are about the size of a small seed. They can be hard to spot and hide in cracks and holes when disturbed. Bed bugs are nocturnal, meaning that they come out at night. Adult bugs may be reddish-brown in color.

Bed bugs hatch from eggs between six and seventeen days. The bugs go through a repetitive molting process as they grow and mature. Female bugs lay eggs on a daily basis. The bugs are can survive in a vacant room or abandoned furniture for long periods of time without feeding. Bed bugs are extremely hardy and can live up to 18 months without eating. Bed bugs can be found in vacant as well as occupied apartments.

Bed bugs cannot fly, but move quickly and can go unnoticed because of their small size. They can enter a new space or environment by climbing onto a person's clothing or personal belongings when a person comes in contact with an infested area. Bed bugs can enter an apartment when someone brings in used furniture, clothing, or other personal property that has an infestation. Bed bugs can spread through cracks in walls and floors to migrate from one apartment to another.

False claims that associate bed bugs' presence with poor hygiene have caused some apartment residents, out of shame, to avoid notifying management of their presence. This serves only to enable the spread of bed bugs. While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness. Bottom line: bed bugs know no social and economic bounds; Claims to the contrary are false.

Bed bugs reach the peak of nighttime activity just before dawn. They are drawn to warm blooded animals and people by carbon dioxide and warmth. A bed bug bite may not be noticeable at the time of the bite and usually begins to feel irritated several hours later. The bite may produce a welt or bump that is like a flea or mosquito bite. Sometimes there appears to be three bites in a row, but there is not always a pattern. Bites usually are found on the face, neck, or arms. Bed bugs are not known to carry any transmittable diseases; however, some people might have an allergic reaction to the bites.

Residents should never buy or acquire used furniture and introduce it to the apartment if they are not sure it is free from infestation. Never bring home furniture, couches, chairs, mattresses, beds, pillows, or clothing found abandoned or discarded. Do not keep mattresses or box springs that are infested or have holes or tears which allow the bugs to climb inside and come out at night. Do not bring into the apartment discarded furniture, bedding, or clothes which are found on the roadside, a dump, a garbage collection site, or abandoned.

Infestations are commonly found in bedrooms and sleeping areas. Possible signs or indications of an infestation include unexplained bites that occur while sleeping and molted skins of adult bugs. You may also see bed bugs that have recently hatched and are similar in shape to adults but are whitish and almost translucent. Eggs are very small, white, and sticky. The excrement of adult bugs is black, dark red, brown, or rust colored spotting or staining and may be seen around the seams of mattresses or bedding. You may actually observe an adult bug. They are usually found around bedding.

There are many forms of treatment to rid an apartment of bed bugs, but the process may require multiple applications of pesticides, chemicals, or other substances over several weeks. It may be necessary to dispose of bedding or carpeting if it cannot be properly treated. Management will decide which form of treatment to use on the apartment but must have complete access to an empty apartment. This will require that a resident and his or her family move out and take all furniture, clothing, and personal possessions with them. The resident's personal property must be properly treated or may result in transmitting the pest to another home or apartment. Treatment will also involve cleaning and vacuuming.

Even if the infestation is in another apartment in your building, Management may need access to your apartment for inspection and treatment to prevent the spread of the pest. Whether you must move in order for the treatment to occur will depend on a number of factors. Management may need to inspect and observe your apartment in order to insure there is no cross infestation or migration from another apartment.

**You must report any signs or suspicions of bed bugs to Management as soon as possible and cooperate in providing access for inspection and treatment.**

**DO NOT ATTEMPT TO TREAT BED BUG INFESTATIONS ON YOUR OWN! Under no circumstance should you attempt to eradicate bed bugs without notifying management. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.**

**It is important that you use good housekeeping practices. Clean and vacuum on a regular weekly basis.**

**It is important that you notify Management as soon as possible if you suspect bed bugs are present in the apartment.**



GEORGIA
APARTMENT ASSOCIATION

| MOLD AND MILDEW ADDENDUM |
|---|

This Mold and Mildew Addendum (the "Addendum") dated ___April 6, 2021___ is attached to and made a part of the lease dated ___April 6, 2021___ (the "Lease") by and between __Atler at Brookhaven Apartments Holdings LLC__ as agent for owner of the apartments ("Lessor"), and __Bassey Enun, Dennis Ford__

("Resident")

for the unit number ___0606___ (the "Unit") in __Atler at Brookhaven Apartments__ apartments (the "Apartments").

Resident acknowledges that it is necessary for Resident to provide appropriate climate control, keep the Unit clean, and take other measures to retard and prevent mold and mildew from accumulating in the Unit. Resident agrees to clean and dust the Unit on a regular basis and to remove visible moisture accumulation on windows, walls, floors, ceilings and other surfaces as soon as reasonably possible. Resident agrees not to block or cover any of the heating, ventilation or air-conditioning ducts in the Unit. Resident also agrees to immediately report to the management office in writing: (i) any evidence of a water leak or excessive moisture in the Unit, as well as in any storage room, garage or other common area; (ii) any evidence of mold or mildew-like growth that cannot be removed by simply applying a common household cleaner and wiping the area; (iii) any failure or malfunction in the heating, ventilation or air conditioning system in the Unit; and (iv) any inoperable doors or windows. Resident further agrees that Resident shall be responsible for damage to the Unit and Resident's property as well as injury to Resident and Occupants resulting from Resident's failure to comply with the terms of this Addendum.

A default under the terms of this Addendum shall be deemed a material default under the terms of the Lease, and Lessor shall be entitled to exercise all rights and remedies at law or in equity. Except as specifically stated herein, all other terms and conditions of the lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control. Any term that is capitalized but not defined in this Addendum that is capitalized and defined in the Lease shall have the same meaning for purposes of this Addendum as it has for purposes of the Lease.

Resident or Residents:
(all Residents must sign here)

_Bassey Enun_
Resident's Signature

__Bassey Enun__
Resident's Name

__0606__
Resident's Unit No.

_Ford_
Resident's Signature

__Dennis Ford__
Resident's Name

__0606__
Resident's Unit No.

_____
Resident's Signature

_____
Resident's Name

__0606__
Resident's Unit No.

_____
Resident's Signature

_____
Resident's Name

__0606__
Resident's Unit No.

_____
Resident's Signature

_____
Resident's Name

__0606__
Resident's Unit No.

_____
Resident's Signature

_____
Resident's Name

__0606__
Resident's Unit No.

Lessor:

__Atler at Brookhaven Apartments Holdings, LLC__
Owner or Agent for Owner

By: _Nicole McLaurin_
Authorized Representative

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9490
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354



**GEORGIA**
APARTMENT ASSOCIATION

| Liquidated Damages Addendum |

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__ . __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of
☐ as Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Liquidated Damages Addendum to the Apartment Rental Contract with __Bassey Enun , Dennis Ford__
["Resident"], pertaining to
Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__
[Address]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ [Date of Lease] and amends Paragraph 26.

In lieu of liability for the remainder of the lease term for breach of the lease (as provided in Paragraph 26 of the Apartment Rental Contract), the parties agree that Management may re-enter the premises as provided by law, *thereby terminating the lease and terminating resident's liability for rent after the date Management obtains possession of the apartment through the end of the lease term,* and Management shall be entitled to recover liquidated damages from Resident in the amount of $__3202.00__ [not to exceed the amount of two month's rent] as the estimated rent that will come due after management obtains possession of the apartment through either the end of the lease term or the re-letting of the apartment to another resident. Said liquidated damages is based on the average number of days that apartments in the community are vacant and take to lease or re-let as of the date of entering into this apartment rental contract.

If the resident's breach of this lease is based on failure to give a proper non-renewal notice to end the lease and vacate the premises as provided in Paragraph 6 of the Apartment Rental Contract then said liquidated damages shall not exceed the amount of one (1) month's rent.

By selecting Liquidated Damages to determine the resident's liability for rent through the remainder of the lease term, the parties agree that they have evaluated the likelihood that the apartment may remain vacant for an unspecified or undeterminable period of time based on the average length of time that it takes to ready the apartment for re-rental, re-market the same, and obtain a new resident or occupant for the remainder of the lease term. The liquidated damages are intended as a reasonable estimate of the lost rent and other costs of re-letting due to resident's breach of the lease and liability for rent as it accrues over the remaining balance of the lease term. In this respect, the liquidated damages provision shall serve to limit resident's liability for future unaccrued rents. The amount of liquidated damages, if applicable, was estimated based on the apartment community's current market rents, estimated future rents, the current occupancy rate, the expected future occupancy rate, the estimated length of time it takes to re-let an apartment in this particular apartment community's market, current economic conditions, projected future economic conditions, and the relatively short length of the lease.

Based on the above factors, the parties have estimated that it will probably take longer than the estimated number of days the apartment will remain vacant before management is able to re-let the apartment after obtaining possession due to resident's breach. Both parties agree that there are many costs involved in readying the apartment for re-letting due to the expense of turn-keying the premises, advertising, marketing, and other sales and administrative costs. The election to use a liquidated damages provision in lieu of waiting for accrual of futures rents is a convenience and benefit for both management and resident as it allows management to render a prompt statement of resident's liability for unaccrued rent through the balance of the lease and it allows the resident the certainty of knowing how much he or she will owe while limiting liability for future rents. Resident acknowledges that he or she has the option of voluntarily terminating the lease as provided in Paragraph 7 in order to avoid liability for unaccrued future rents and thereby avoid liability for future rents through the remaining term of the lease.

Said liquidated damages, if elected, shall be due in addition to any rent or hold-over rent or other fees and charges which have accrued or come due during the time the resident remains in possession of the apartment or which accrues prior to the time management finally obtains possession of the apartment. Said liquidated damages are in addition to, and not in lieu of, any damages or cleaning fees exceeding normal wear and tear, unpaid utilities, and rental concession pay-backs which are due. The parties agree that the amount of lost rent and cost of re-letting are uncertain and difficult to ascertain, as the length of time it takes to re-let may vary greatly based on the above recited conditions.

By electing to use liquidated damages as the measure of resident's liability for the remainder of the lease term, management agrees to forego its right to allow the apartment to remain vacant and hold resident liable for payment of each month's rent through the remaining term of the lease or to sue the resident for each month's installment of rent as it comes due through expiration of the lease or to re-enter the premises as provided by law and re-let the same on resident's behalf while holding the resident liable for any deficiency between the contract rent and rent due through the remaining term of the lease until the re-letting. However, management reserves and retains all other remedies afforded at law or in equity, whether statutory or contractual, which are not inconsistent with the right to liquidated damages. In the event any court should determine that the liquidated damages provided for herein are unenforceable or illegal, then the court shall strike such portion of this addendum as is deemed unenforceable or illegal, and management shall be entitled to the remedy of re-entering the premises as provided by law and re-letting the apartment on resident's behalf while holding resident liable for any deficiency between the contract rent and rent received through the remaining term of the lease until re-letting of the apartment on resident's behalf.

The liquidated damages provided for herein, in the event that resident has breached the lease and failed to otherwise terminate the lease as provided by law or as provided in Paragraphs 6 and 7 of the Apartment Rental Contract, are in lieu of, not in addition to, any termination (cancellation) fee or notice fee provided for in Paragraph 7, and management is not entitled to collect any such termination (cancellation) fee or notice fee.

__Atler at Brookhaven Apartments Holdings, LLC__                         *Bassey Enun*
Name of Owner or Management Company                                      Resident's Signature

By: *Nicole McLaurin*                                                    *Todd*
Signature of Management Representative                                    Resident's Signature

As: __Community Manager__                         (Title)                Resident's Signature

                                                                         Resident's Signature

                                                                         Resident's Signature

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9401-LD
All Rights Reserved

| ☑ Blue Moon eSignature Services Document ID: 259386354 |


**GEORGIA**
APARTMENT ASSOCIATION

| COMMUNITY RULES ADDENDUM |
|---|

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__  __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of ☐ as Agent for the Owner of __Atler at Brookhaven Apartments__

["Community Name"] enters into this Community Rules Addendum to the Apartment Rental Contract ["the Lease"] with __Bassey Enun, Dennis Ford__

["Residents"]; pertaining to

Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__

["Address"]. This Addendum is part of the Apartment Rental Contract dated __April 6, 2021__ ["Date of Lease"].

(a)  **Signs:** Resident shall not place or display any signs, lights, decorations or markings on the outside of the apartment, common areas or buildings in the apartment community.

(b)  **Locks:** Resident is prohibited from adding locks to, changing or altering locks installed on the doors of apartment, without prior written permission of management.

(c)  **Entrances, Hallways, Walks, and Lawns:** Entrances, hallways, walks, lawns and other public areas shall not be obstructed, used for storage, or used for any purpose other than ingress and egress.

(d)  **Antennas:** Satellite dishes, antennae, and aerials shall not be placed or erected on the roof or exterior of buildings without prior written consent.

(e)  **Parking:** Resident agrees to abide by all parking regulations established by management. No motorcycles, trucks, vans, campers, recreational vehicles, boats, trailers, mobile homes, buses or mechanized equipment may be allowed on the property without management's prior approval. If management has designated spaces for resident to park or areas for boats, trailers, campers or other vehicles, resident agrees to park only in those spaces so designated. Non-operable, abandoned or unauthorized vehicles are not permitted on premises. Any such non-operable, abandoned or unauthorized vehicle may be removed by management at the expense of the resident or other person owning same, for storage or public or private sale, at management's option, and the resident or person owning same shall have no right of recourse against management therefore. The definition of non-operable, abandoned or unauthorized vehicles shall be liberally construed in favor of management. In addition, but not limited to, their generally accepted definitions, "unauthorized" and "non-operable" shall also mean vehicles which:

1.  Are noxious, offensive, unsightly, unpleasant, or unkept such as could reasonably affect the appearance or rental marketability of the property or such as could reasonably cause embarrassment, discomfort, annoyance, or nuisance to management, owners or other residents;

2.  Are causing damage to the apartment community or the parking lot, including but not limited to, oil or gas leaks, seepage or spills and motorcycle kickstands which sink into the pavement;

3.  Are not registered with management as required;

4.  Are not properly parked between parallel lines or other lines marking spaces for parking;

5.  Are blocking access to any prohibited areas, designated "no parking" areas, fire lanes, fire hydrants, ingress and egress travel lanes, entrances, exits, trash dumpsters or compactors or maintenance or service areas;

6.  Are left on blocks or jack stands;

7.  Appear to be in a state of disrepair;

8.  Appear to be incapable of self-propelled movement;

9.  Do not have a proper license tag, current license decal validation sticker, current state emissions inspection sticker or minimum applicable motor vehicle insurance.

Unauthorized, non-operable or abandoned vehicles shall not be kept, placed, stored, parked, maintained or operated in any area of the apartment community. The term "vehicle" includes, but is not limited to, both motorized and non-motorized vehicles such as automobiles, trucks, vans, motorcycles, boats, trailers, campers, mobile homes, motor homes, commercial trucks, buses and heavy motorized or mechanized equipment or vehicles. Further rules and regulations may be specified in a parking rules and regulations addendum. Said addendum is incorporated by reference herein and shall be effective regardless of whether it has been separately signed by parties hereto. An "abandoned motor vehicle" shall include, but is not limited to, any vehicle, motor vehicle or trailer which has been left unattended on the apartment community property for a period of not less than thirty days without anyone having made a claim thereto.

(f)  **Storage:** No goods or materials of any kind or description which are hazardous, combustible, or would increase fire risk shall be taken or placed in storage areas. Storage in such areas shall be at resident's risk and management shall not be responsible for any loss or damage.

(g)  **Balcony or Patio:** Balcony or Patio shall be neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balcony or patio. Use of cooking grills with a combustible fuel source is not permitted on balconies or patios within ten (10) feet of any building. (Section 501.7 of the Rules and Regulations for the State Minimum Fire Safety Standards adopted July 1, 1998).

(h)  **Recreation and Service Areas:** Resident shall abide by all rules and regulations pertaining to use of recreational and service facilities.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9403
All Rights Reserved

| ✓ | Blue Moon eSignature Services Document ID: 259386354 |
|---|---|

(i)   **Resident Liable for Actions of His Family, Occupants, Social Guests or Invitees:** Resident shall be responsible and liable for the conduct of his family, occupants, social guests or invitees. Acts or failure to act of resident's family, occupants or invitees in violation of this contract, any addenda, or management's rules and regulations may be deemed by management to be a breach by resident. Resident acknowledges and agrees to communicate and explain all addenda, rules and regulations, and the terms of this lease to his family, occupants, guests and invitees.

(j)   **Window Treatments:** All window treatments shall present a neutral, uniform exterior appearance and shall not detract from the marketability or appearance of the apartment community. Resident shall not damage or remove blinds or other window treatments installed by the apartment owner and part of the apartment.

(k)   **Water Beds:** Resident shall not have or keep any water beds in the apartment without prior written permission of management.

(l)   **Conduct:** Resident acknowledges that all notices required to be given shall be given in writing. Resident agrees to handle his or her communications and conduct with management, including, but not limited to, leasing agents, on-site staff, maintenance personnel, or independent contractors and vendors hired by management, and with all other residents, occupants, guests or invitees in a lawful, courteous and reasonable manner. Resident shall not engage in any abusive behavior, either verbal or physical, or any form of intimidation or aggression, directed at management, its agents, its employees or vendors or directed at any other residents, occupants, guests, invitees, or any other person on the property. If requested by management, resident agrees to promptly conduct all further business in writing. Any acts of abusive behavior whether verbal or physical by resident or resident's family, guests or invitees shall be grounds for termination of this lease. Resident agrees not to damage his apartment or any other portion of the apartment community, including, but not limited to, the physical facilities, buildings, trees or landscape. Resident shall be liable for all acts or failure to act of his family, occupants, guests or invitees which result in damages to the apartment or the apartment community property. Resident shall remain liable to management for any damages which exceed normal wear and tear and agrees to pay management promptly upon notice of such damages, notwithstanding whether the repairs have actually been made. Further, resident's acts or failure to act which results in damages to the apartment or apartment community property shall constitute a ground for termination of this lease. Any amounts due from resident because of damage exceeding normal wear and tear shall constitute additional rent which is due upon invoicing.

(m)  Management shall have the right to amend, add, change, delete or modify the Community Rules upon reasonable notice to Resident at a future date.

(n)   **Package Release Authorization:** As an accommodation to Resident, Management will accept packages, shipments, parcels, and other items on Resident's behalf that are delivered to the Management office. Acceptance of such items for Resident is a gratuitous bailment and not a bailment for hire. Resident authorizes Management to sign for and receive such items on Resident's behalf. Management has no obligation to deliver the items to Resident and may refuse to accept any item that appears to be damaged or improperly delivered. Resident is responsible for tracking delivery of all such items and agrees to pick them up promptly. Management will temporarily store such items in the management office. Resident releases Management of any liability for loss or damage of the item unless such loss or damage was solely due to or solely caused by Management's gross negligence.

**Signature of Parties:**

| Owner or Management | Residents |
|---|---|
| Atler at Brookhaven Apartments Holdings, LLC | *Bassey Enun* _____ (Resident Signature) |
| Name of Owner or Management Company | Printed Name of Resident **Bassey Enun** |
| As Landlord | *Ford* _____ (Resident Signature) |
| By: *Nicole McLaurin* | Printed Name of Resident **Dennis Ford** |
| Signature of Management Representative | _____ (Resident Signature) |
| As **Community Manager** _____ (Job Title) | Printed Name of Resident _____ |
| | _____ (Resident Signature) |
| | Printed Name of Resident _____ |
| | _____ (Resident Signature) |
| | Printed Name of Resident _____ |
| | _____ (Resident Signature) |
| | Printed Name of Resident _____ |

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9403
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354



**GEORGIA**
APARTMENT ASSOCIATION

RENTER'S INSURANCE ADDENDUM

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date:  __April 6, 2021__ , __Atler at Brookhaven Apartments Holdings__  ["Management"] ☒ as Owner of ☐ as Agent for the Owner of __Atler at Brookhaven Apartments__

["Community Name"] enters into this Renter's Insurance Addendum to the Apartment Rental Contract ["the Lease"] with __Bassey Enun, Dennis Ford__

["Residents"], pertaining to

Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__

["Address"]. This addendum is part of the Apartment Rental Contract dated  __April 6, 2021__  ["Date of Lease"].

This Addendum is incorporated by reference into said Apartment Rental Contract and shall become part of said apartment lease.

This Addendum is a continuation of Resident's contractual obligations under Par. 15 of the Apartment Rental Contract and shall supplement Resident's requirements under that Paragraph.

1.  Resident must purchase and maintain a renter's insurance liability policy that provides liability insurance for negligent acts and omissions of Resident, Resident's occupants and family members which cause damage, injury, or loss to the Apartment Owner, Management, other Residents, and other social guests, visitors, invitees, vendors, and all other persons whomsoever. Renter's liability insurance provides insurance in the event Resident is responsible for negligent damage, injury, or loss which he or she causes to another person or company.

2.  Resident understands and agrees that the Apartment Owner's and Management's insurance does not provide liability insurance coverage for Resident's negligent acts and omissions or damage and loss to Resident's personal property and belongings.

3.  Resident agrees to purchase liability insurance in the amount of at least $ __100000.00__  and maintain such coverage throughout Resident's lease and occupancy of an apartment in the apartment community. The name of Resident's insurance carrier is _____, Policy No. _____

4.  Resident is free to choose a liability insurance carrier but must provide proof of insurance to Management prior to taking occupancy of the apartment.

5.  Resident's failure to maintain liability insurance throughout the lease or occupancy of the apartment shall be a default of the Apartment Rental Contract, giving Management the right to terminate Resident's lease or right of occupancy.

6.  Resident may, but is not required to, purchase property damage insurance for his or her personal property and belongings.

7.  Resident shall obtain a policy endorsement which names the apartment Owner and Management as additional insured's on the renter's insurance liability policy and provide proof of the endorsement to Management at the time of signing the Apartment Rental Contract.

Signature of Parties:

Management
__Atler at Brookhaven Apartments Holdings, LLC__
Name of Management

By: *Nicole McLaurin*
Signature of Management Representative Name

As: __Community Manager__ (Title)

Residents
*Bassey Enun* (Resident)

Printed Name of Resident: __Bassey Enun__

*Ford* (Resident)

Printed Name of Resident: __Dennis Ford__

_____ (Resident)

Printed Name of Resident: _____

_____ (Resident)

Printed Name of Resident: _____

_____ (Resident)

Printed Name of Resident: _____

_____ (Resident)

Printed Name of Resident: _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #1308
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354





**GEORGIA**
APARTMENT ASSOCIATION

| CRIME DETERRENCE HOUSING ADDENDUM |

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__, __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of
☐ as Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Crime Deterrence Addendum to the Apartment Rental Contract with __Bassey Enun, Dennis Ford__

["Resident"], pertaining to

Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__
[Address]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ [Date of Lease] and amends Paragraph 10 of the
Apartment Rental Contract.

1. Resident, any members of the resident's household, or a guest, or other person under the resident's control shall not engage in criminal activity, on or off the premises. For the purpose of this addendum, "criminal activity" includes any Felony or Misdemeanor, as prescribed under the laws of the State of Georgia, or the United States (see O.C.G.A., Section 16-1-3), as outlined, but not limited to, the following: Stalking, Possession, Use, Sell of any amount of Marijuana; Possession, Use, Sell, or Manufacture of any illegal drug and/or Substance (as defined in Section 102 of the Controlled Substance Act [21 U.S.C., 302] or in O.C.G.A. Title 16, Chapter 13); any crime considered to be of a Sexual Nature (see O.C.G.A. Title 16, Chapter 6); Parties to a Crime (see O.C.G.A. 16-2-20); Criminal Attempt, Conspiracy, and/or Solicitation (see O.C.G.A. Title 16, Chapter 4); Crime(s) against a person (see O.C.G.A. Title 16, Chapter 5); Damage to and/or Intrusion upon Property (see O.C.G.A. Title 16, Chapter 7); Offenses Involving Theft (see O.C.G.A. Title 16, Chapter 8); Forgery and/or Fraudulent Practices (see O.C.G.A. Title 16, Chapter 9); Offenses Against Public Order and Safety (see O.C.G.A. Title 16, Chapter 11); Offenses Against Public Health and Morals (see O.C.G.A. Title 16, Chapter 12); Gang Activity (see O.C.G.A. Title 16, Chapter 15).

2. Resident, any member of the resident's household, or a guest, or other person under the resident's control, shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or off said premises.

3. Resident, or any member of resident's household will not permit the dwelling to be used for, or to facilitate, criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4. Resident, or any member of resident's household, will not engage in the manufacture, sale, or distribution of illegal drugs at any location, whether on or off said property.

5. Resident, any member of resident's household, a guest, or other person under the resident's control shall not engage in acts of violence, or threat of violence, including, but not limited to, the unlawful display or discharge of firearms, on or near the dwelling unit premises.

6. Resident, or any member of resident's household, a guest, or other person under the resident's control shall not engage in criminal gang activity, as defined in O.C.G.A. Section 16-15-1, ET. Seq.

7. **VIOLATION OF ANY OF THE ABOVE PROVISIONS IS A MATERIAL AND IRREPARABLE VIOLATION OF THE LEASE, AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF THE TENANCY.**

   A single violation of any of the provisions of this addendum shall be deemed a serious violation and is a material and irreparable breach of the lease. It is understood and agreed that a SINGLE violation shall be a good cause for immediate termination of the lease. Unless otherwise provided by law, proof of the violation **SHALL NOT REQUIRE CRIMINAL CONVICTION**, but shall be by a preponderance of the evidence.

8. In case of conflict between the provisions of this addendum and any other provisions of the lease, the provisions of the addendum shall govern.

9. This LEASE ADDENDUM is incorporated into the lease, or renewal thereof, executed or renewed at any time between Owner/Landlord/Lessor, and Resident/Lessee.

__Atler at Brookhaven Apartments Holdings, LLC__

Resident _Bassey Enun_
Name of Owner or Management Company

By: _Nicole McLaurin_
Resident _Ford_
Signature of Owner or Management Company

As: __Community Manager__ (Title)
Resident _____

Resident _____

Resident _____

Resident _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #2010-C
All Rights Reserved

| ☑ Blue Moon eSignature Services Document ID: 259386354 |




**GEORGIA**
APARTMENT ASSOCIATION

| CRIME WARNING AND LIMITATION OF LIABILITY ADDENDUM |
|---|

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__ __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of ☐ as Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Crime Warning and Limitation of Liability Animal Addendum to the Apartment Rental Contract with __Bassey__ __Enun, Dennis Ford__

["Resident"], pertaining to Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__
[Address]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ [Date of Lease].

1. **Important:** *Please read* this addendum before signing. This addendum pertains to crime that may be committed in or around the apartment community and personal injuries or property loss sustained by the Resident as the result of that crime. This addendum requires the Resident to take reasonable steps for protecting his or her safety and security, and it *limits the liability* of the apartment Owner and managing agent or company *under certain circumstances* for injuries, property loss, and damages. Your signature below means that you read and understand this addendum. Although all parts of this addendum are important, please see Paragraph 9 regarding your waiver and release of the Owner and Management of the apartment community related to certain claims.

2. **Definitions.** The term "Resident" includes all Residents who have signed this addendum and any child, minor, person, or occupant of which the Resident is the parent or legal guardian. The term "Owner" refers to the apartment ownership entity. If this addendum is signed by the Owner, then the Owner is also referred to as "Management." If this addendum is signed by the company or persons managing the apartment community on behalf of and as the agent for the Owner, then "Management" refers to the managing agent of the owner. The terms "Owner" and "Management" include their respective general and limited partners, officers, directors, agents, employees, and shareholders or members.

   The term "security" refers to any procedure, equipment, personal property, or personnel that have or may have some function related to deterring, limiting, or preventing crime or access in, to, or near the apartment community. "Security," includes, but is not limited to, access gates for pedestrians and vehicles, fences, alarm or intrusion systems, surveillance cameras, digital video recorders, lighting, door and window locks, audio communication boxes, gate clickers, access codes, courtesy officers, and security officers or personnel.

3. **Owner and Management Make No Representations, Guaranties, Covenants, or Warranties About the Safety of the Apartment Community from Crime or Providing Security that Will Prevent Crime.** Resident acknowledges and agrees that neither the Owner nor Management have made any verbal or written representations, guaranties, covenants or warranties, either express or implied, that:

   The apartment community or its entrances, exits, common areas, apartments, or any portion are safe or free from crime;

   The neighboring community or neighborhood outside of or around the apartment community are safe or free from crime; or

   Security is, has been, or will be provided to or for Resident that will protect Resident or his property from crimes or will prevent crime from occurring in or around the apartment community.

   Neither the Owner nor Management market, advertise, or make representations that the Resident or Resident's occupants, social guests, visitors, or invitees will be safe or free from crime while they are in, near, at, leaving, or entering any portion of the apartment community.

   Although the Owner and Management may provide certain forms of security in the apartment community, such security cannot deter or prevent all crimes. Crimes do occur from time to time at or near the apartment community, but neither the Owner nor Management know when or where a crime will occur.

4. **Existence or Absence of Security Procedures, Devices, or Personnel Does Not Create an Assurance of Safety or Crime Prevention.** Resident acknowledges and agrees that the existence, presence, or absence of security procedures, devices, or personnel in the apartment or common areas of the apartment community do not constitute any kind of implied warranty or representation from the Owner or Management that the Resident will be safe or protected from crime or that such security procedures, devices, or personnel will prevent or deter crime from occurring in the apartment or around or near the apartment community.

   Resident agrees that there is no law or contractual agreement of any kind that requires the Owner or Management to use or provide specific kinds of security procedures, devices, or personnel in the common areas of the apartment community or inside of the leased premises of the apartment itself. Resident agrees that Owner and Management are not contractually obligated to provide security to Resident under the wording of the lease or this addendum.

   The Owner and Management may provide certain basic security devices such as locks on apartment doors and windows or intrusion alarm systems in the apartment. The Resident is responsible for checking whether such locks and intrusion alarms that secure the apartment are functioning and must promptly report any need for repair, replacement, or maintenance. The Owner's duties to provide repairs *in the apartment* is controlled by Georgia landlord and tenant law. Having parted with possession of the apartment when it was leased and Resident took possession, Resident is responsible for giving proper notice to the Owner or Management of the need for any repairs to locks and intrusion alarm systems and properly using an intrusion alarms system and the locks on all doors and windows of the apartment. Resident assumes possession and control of the apartment by signing the lease and accepting the keys to the apartment.

   It is Resident's responsibility to exercise due care and caution for his or her own safety at all times when entering and exiting the apartment and when inside the apartment premises by properly inspecting and using all security and safety devices that may be in the apartment. Nothing contained in this addendum is intended to waive or change the Owner's duty of making repairs *to the apartment* or the liability of the Owner for failure to make repairs *to the apartment* as provided under Georgia landlord and tenant law; however, such repair provisions do not apply to the *common areas* of the apartment community which are governed by other law. Resident acknowledges and agrees that the Owner and Management have no statutory or contractual duty to make repairs or provide security to the *common areas* of the apartment community.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #1210
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

Any benefit derived by Resident or Resident's occupants, family, social guests, visitors, or invitees from security in the common areas of the apartment community is incidental to the Apartment Rental Contract, and Resident is not a third party beneficiary of such security.

Resident agrees that testimony or evidence by any person, security consultant, or law enforcement officer that the proper use and installation of security procedures, devices, or personnel could or would have prevented a crime from occurring would be speculative in nature and cannot be used to establish liability of the Owner or Management in any premises liability claim or case pertaining to a crime committed on or around the apartment community.

Resident agrees that he or she shall not form an assumption at any time that he or she is safe from crime or that security procedures, devices, or personnel at the apartment community will prevent crime. Resident must exercise reasonable care for his or her safety at all times to avoid crime. Even properly functioning security procedures, devices, or personnel can be avoided or by-passed by persons intending to commit a crime. Additionally, from time to time such security may malfunction or require repair.

5.  **Limitations in the Function of Access Gates and Perimeter Fencing.** Resident acknowledges and agrees that the function of controlled or limited access gates and perimeter fencing around or in portions of the apartment community is limited in its effectiveness as a form of security. If such access gates and fencing are present, their function is to control, limit, and deter access into the common areas of the apartment community. Resident understands and agrees that fencing, doors, and access gates will not prevent unauthorized entry and crime. Resident understands and acknowledges that other Residents could or may provide other authorized and unauthorized persons entry, access codes, or electronic opening devices that give such persons access to the common areas of the apartment community. The Owner and Management have no way of knowing when or how persons who are not a resident or occupant will be provided access or whether such persons intend to commit a crime. Resident understands that unauthorized persons can gain access to the inside of buildings and common areas of the apartment community even when security procedures, devices, or personnel are present and functioning.

6.  **Security Personnel and Owner or Management Employees Do Not Provide Emergency or Law Enforcement Services.** Resident acknowledges and agrees that:

    Security personnel and Management employees are not employed to provide emergency, medical, security, protection, fire, or police services to Resident or Resident's family, occupants, social guests, visitors, and invitees;

    The primary function of security personnel, if present, is to observe and report on incidents as directed by the Owner and Management;

    Owner and Management do not offer or provide any armed or unarmed security personnel that will keep the Resident safe and prevent crimes against Resident or his property; and

    It is the responsibility of appropriate federal, state, and local law enforcement agencies to protect Resident; respond to Resident's report of a crime; to prevent and deter crime; and to make arrests for violation of the law.

7.  **Owner and Management May Discontinue or Change Security Personnel, Devices, or Procedures Without Notice or Liability** Owner and Management shall have the right at any time, with or without notice, to install, modify or remove any security procedures, devices, or personnel without liability therefore. Any modification or removal of security devices, personnel, or procedures shall not serve as a basis for breach of contract or tort claim against the Owner or Management. Failure or malfunction of security devices, personnel, or procedures to operate properly or prevent crime shall not serve as grounds for abatement of rent or grounds for the Resident to terminate the lease based on an alleged breach of contract. The Resident's obligation to pay rent is independent of the Owner's or Management's duties under the law.

8.  **Resident Has a Duty to Exercise Due Care at All Times for His or Her Safety.** Resident acknowledges and agrees that he or she has a duty at all times to exercise due care to protect and provide for his or her own safety and property from the criminal acts of others. Resident understands and agrees that the Owner or Management cannot and do not provide police or law enforcement services.

    Resident acknowledges and agrees that in the event he or his family, occupants, guest or invitees are in need of emergency, medical, security, protection, fire, or police services, he or she shall have the duty to contact the appropriate governmental emergency, medical, fire, or law enforcement service or agency.

9.  **Limitation of Owner's and Management's Liability: Neither Owner Nor Management Shall Have Liability to Resident for Damage or Injury Sustained Due to the Criminal Acts of Others Based on Keeping** *Common Areas* **of the Apartment Community Safe from Crime.** Resident expressly waives and releases Owner or Management from any liability or any negligence claim based on alleged criminal acts of others pertaining to any condition, defect, action, or failure to act in the *common areas* of the apartment community to the fullest extent allowed by law, including, but not limited to, claims pertaining to alleged negligence in preventing or failing to prevent crime in the apartment with regard to the safety, maintenance, or conditions in the *common areas* of the apartment community. Resident acknowledges and agrees that it is impossible for the Owner or Management to know when or how a crime may be committed or to prevent a crime from happening. The Owner and Management are not responsible or liable for the criminal acts of others who violate the law and cause injury or property loss to Resident or Resident's occupants, family members, social guests, visitors, or invitees, except as may otherwise be provided by law.

    *This Addendum and this contractual provision limit the ability of Resident to sue for or to recover civil damages from the Owner or Management for crimes committed against the Resident or loss of Resident's property by others under certain conditions.*

    Resident agrees that the Owner and Management are not guarantor's of Resident's safety and agrees to waive, release, and forego any premises liability claim for personal injuries or property loss due to crime committed by others, including, but not limited to, those claims based on the Owner's duty to keep the *common areas* safe from crime. Resident knowingly waives and releases the Owner and Management from any claim for alleged negligence for failure to keep the *common areas* of the apartment community safe from crime.

    Resident agrees that he or she did not lease any portion of the *common areas* of the apartment community; accepted the common areas as is; and, only leased the apartment itself. Resident's use of the common areas of the apartment community is a permissive license incidental to leasing the apartment to use the common areas as provided in the lease and community rules and other addenda. The waiver and release of liability in this paragraph do not apply to the owner or occupier of land's duties and liability under Georgia landlord and tenant law that apply *in the apartment,* as opposed to the *common areas.*

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #1210
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

The commission of a crime against another resident, occupant, or person shall not serve as ground for abatement of rent or a ground for the Resident to terminate the lease based on an alleged breach of contract.

10. **Owner and Management Have No Liability for Crime Committed on Another's Property or on Public or Private Easements.** Neither Owner nor management shall have any liability for any crime committed on or originating on property of another owner or on property adjacent to apartment community that is not owned by Owner. Neither Owner nor Management shall have liability for any crime that occurs on a public right of way nor for a crime that occurs on a private right of way; easement; or license held, controlled, or maintained by a federal, state, city, or county government or by another owner, private person, or public utility or agency.

11. **Law Enforcement Officers Living and Working at Apartment Community Are Not Employees of Owner or Management.** Resident acknowledges and agrees that any law enforcement officer who lives at the apartment community or provides services of any kind or nature to the apartment community in exchange for discounted rent or compensation acts solely as an independent contractor and is not an employee of the Owner or Management. Law enforcement officers who may be described as "courtesy officers" or who provide any kind of services while not on regular duty hours for the law enforcement agency at which they are employed are *not* employees of the Owner or Management. Resident agrees that to the extent any such law enforcement officer exercises the use of police powers to perform an arrest, deter a crime, or to apprehend a criminal is performed in his or her capacity as an off-duty law enforcement officer in his or her governmental law enforcement capacity and not as an agent of the Owner or Management.

12. **Intrusion Alarms In Resident's Apartment Do Not Guaranty Resident's Safety from Crime.** An intrusion alarm system in the leased premises of the apartment, if any, is not a guarantee of Resident's safety from crime. Resident acknowledges and agrees that if such intrusion system was installed by Owner or Management in the apartment as part of the leased premises that it is Resident's responsibility to establish or set up his or her own monitoring contractor to provide monitoring of the alarm system. The intrusion alarm system is not monitored by the Owner, Management, or a security service provided by the Owner or Management, nor by any law enforcement agency.

The intrusion alarm is not connected to any central or monitored system as part of the lease. Neither Owner nor Management shall have any liability for responding or failing to respond to or monitoring any such intrusion alarm system.

Neither Owner nor Management shall have any duty to monitor or respond to an intrusion alarm system nor any liability for failure to monitor and respond to an intrusion alarm. Resident agrees that Owner and Management may at any time, either with or without notice to Resident, replace, discontinue, or disconnect any such alarm or intrusion system. Any such change, replacement, modification, discontinuance or suspension of an intrusion alarm system shall not relieve Resident of liability for payment of rent nor shall it excuse Resident from fulfilling the balance of the remaining term of the lease.

13. **Owner and Management Are Not Required to Provide Notices of Crime in the Apartment Community.** Resident acknowledges and agrees that: Owner and Management are not required by law to provide written or verbal notices of crimes committed in or around the apartment community to the Resident;

Owner's or Management's decision to provide crime notices does not create a legal or contractual duty on the part of the Owner and Management to investigate or provide information to Resident regarding crimes that occur on the property nor to continue giving such notices in the future;

The failure to give notice of crime that comes to Owner's or Management's attention does not breach a legal, tort, or contractual duty to provide such notices;

Resident has an affirmative obligation to perform his or her own due diligence of crime in or around the apartment community and determine what crimes have or have not occurred;

Owner's or Management's failure to give notice of prior crimes does not create liability or breach a duty to Resident;

It is purely speculative whether the giving or receipt of a crime notice would have prevented a crime against Resident or prevented an injury or loss of property; and

Resident's failure to conduct his or her own due diligence throughout the term of their lease and occupancy as to what crimes have occurred in or near the apartment community are a breach of Resident's contractual duty to exercise due care for his or her own safety and creates a defense or comparative negligence to any tort claim filed by Resident against Owner or Management.

Resident acknowledges that:

Owner and Management do not have knowledge of every crime that may be committed on or around the apartment community as many crimes go unreported to either the Owner or Management or to law enforcement agencies; and

Crimes which are reported only to the police may not be known to the Owner or Management.

Resident agrees that he or she shall not form any assumption or reliance on the giving or failure of giving any notices as to whether crimes have occurred in the apartment community. Regardless of what steps the Owner or Management take to provide notices of crime, security personnel, security devices, or security procedures, crimes do and will happen in the apartment community. Resident agrees that he or she will never assume they are safe from crime and will exercise due care for their safety at all times.

14. **Lighting Conditions in the Common Areas of the Apartment Community Cannot Form a Basis of Liability for Crime.** The Owner and Management shall not be liable to Resident in tort or contract for the failure of a light to function properly, low lighting, or lack of lighting in common areas of the apartment community. Resident agrees to avoid using dark or unlighted portions of the common areas in the apartment community until the lighting is repaired or placed in such area and to exercise reasonable steps for his or her safety when entering and exiting the apartment or building under low light or no light conditions. Resident waives and releases the Owner and Management from any claims of negligence based on failure to provide adequate or proper lighting in the *common areas*. Resident agrees that whether the presence of such lighting would have prevented a crime is speculative and cannot form the basis of liability for injury or loss due to crime.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #1210
All Rights Reserved

15. **Resident Agrees to Inform Family Members, Occupants, Social Guests, Visitors, and Invitees Regarding Crime and Safety at the Apartment Community.** Resident has a duty and agrees to advise and notify his family, occupants, social guests, visitors, or invitees of all provisions in this addendum and warn them to exercise due care for their safety at all times from crimes occurring on or near the apartment community, regardless of the presence or absence of any security. Resident agrees to indemnify and hold harmless Owner and Management from any and all claims, losses, personal injuries, property loss, or damages to Resident's family, occupants, social guests, visitors, or invitees due to Resident's failure to advise or notify said family, occupants, social guests, visitors, or invitees of the contents of this addendum.

16. **Any Portion of Addendum Found to Be Void or Unenforceable to Be Severed and Remainder Enforced.** If any phrase, sentence, portion, provision, or paragraph of this addendum shall be found or determined to be void or unenforceable under Georgia law, then such void or unenforceable phrase, sentence, portion, provision, or paragraph shall be severed, and the balance or remainder of this addendum shall be upheld as valid and enforceable so as to carry out the expressed intent of the parties to this contract. The provisions of this addendum are contractual in nature and not mere recitals. If any phrase, sentence, portion, provision, or paragraph of this addendum is held to be void or unenforceable, the addendum in its entirety shall still be admissible in evidence in any civil lawsuit or trial with appropriate instructions as to effectiveness of the void or unenforceable portion.

17. **Merger of All Prior Statements.** All prior statements, representations or agreements pertaining to security shall be void and unenforceable and are merged herein unless such representation is in writing and signed by all parties to this addendum and the Residential Lease Contract.

18. **Crime Warning and Limitation of Liability for Crime Is Incorporated by Reference Into the Apartment Rental Contract.** This addendum shall be incorporated into the Residential Rental Contact between the Resident and Owner and Management and is effective and enforceable regardless of whether this addendum has been separately signed by the parties to said lease agreement. The terms and provisions contained in this addendum shall remain in effect throughout Resident's occupancy in the apartment community, and this addendum shall not be revoked in the event Resident extends the original lease, signs a renewal contract, or signs an entirely new rental contract for continued occupancy or residence in the apartment community.

19. **Resident Has Inspected or Has Had the Opportunity to Inspect and Investigate the Apartment and Apartment Community for Security, Safety, and Crime.** Resident acknowledges and agrees that he or she has inspected or had the opportunity to inspect and investigate the apartment and apartment community for security, safety, and crime and determined to his or her satisfaction that the security is adequate, satisfactory, and in proper working order unless otherwise noted on the Move-In Inspection form or unless otherwise provided in written notice to the Owner or Management. Resident acknowledges and agrees that any comments noted on the Move-In inspection form are not a written request to repair and that any request to repair must be submitted separately in writing and make a clear request for repair or maintenance. Resident agrees that neither the Owner nor Management shall have any duty to inspect, test, repair, or service door locks or latches, window locks or latches, or intrusion alarm systems inside the lease premises of *the apartment* until the Resident has notified the Owner or Management in writing of the need for such repairs or replacement.

20. **Resident Responsible for Any Self Installation of an Alarm or Intrusion System or Locks.** Resident acknowledges and agrees that if he or she installs their own locks or intrusion alarm system, such installation shall be deemed an improvement made by Resident, and as such, Resident shall be responsible and obligated to repair and maintain any self installed intrusion alarm system or locks. Owner and Management shall not be responsible for or obligated to repair, replace, and/or maintain any locks or intrusion alarm system installed by Resident or Resident's contractor.

---

**Atler at Brookhaven Apartments Holdings, LLC**

_____
Name of Owner or Management Company

By: *Nicole McLaurin*
_____
Signature of Management Representative

As: **Community Manager**_____ (Title)

Resident *Bassey Enun*_____

Resident *Tobi*_____

Resident _____

Resident _____

Resident _____

Resident _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #1210
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354



## GEORGIA
### APARTMENT ASSOCIATION

| RESIDENT'S SELECTION OF PERSONAL REPRESENTATIVE DUE TO INCAPACITY, DEATH, OR ABANDONMENT ADDENDUM |
|---|

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__ __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of ☐ as Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment Addendum to the Apartment Rental Contract ["the Lease"] with __Bassey Enun, Dennis Ford__

["Resident"],
pertaining to Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__
["Address"]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ ["Date of Lease"].

Resident agrees that Management shall have the right to take action as provided in this Addendum without the necessity of a court order to obtain possession of the apartment by contacting Resident's Personal Representative to remove Resident's property in the event a Resident dies, is incapacitated, or abandoned the apartment or abandoned his personal property and belongings.

This provision shall apply if:

1. the Resident was the sole tenant occupying the apartment;
2. the Resident is deceased or incapacitated or the apartment is abandoned;
3. rent or other charges are due and unpaid; and
4. Management has not been provided notice of a court appointed legal representative or guardian for the estate or property of the Resident.

Management shall have the right to assume that no legal representative of the Resident's estate or no legal guardian exists if Management is not provided a certified copy of a legal document or court order regarding a petition for administration, no administration necessary, probate, or guardianship of the Resident's estate within 15 days of the Resident's death or incapacitation or abandonment of the apartment. Management is not required to contact or attempt to contact the legal heirs of the Resident and may rely on the Resident's authorization contained in this Addendum.

Management shall have the right to enter the apartment, remove and store Resident's personal property and possessions, or leave the personal property in the apartment.

Management may, but is not required to, contact Resident's Personal Representative specified below to take possession of Resident's personal property in the apartment, remove the property, and return possession of the apartment to Management.

Management reserves all rights at law and equity to obtain possession of the apartment by filing a dispossessory proceeding but may obtain possession as provided in this addendum. Management is not required to elect which remedy or procedure it will use to obtain possession of the apartment or dispose of Resident's personal property.

Resident authorizes Management to contact the following Personal Representative to take possession of Resident's personal property and possessions. Management may give the Personal Representative access to the apartment to remove all personal property and return possession to Management. Management shall have no liability for delivering access and possession of Resident's Personal Property to the Personal Representative upon confirmation of the Personal Representative's identity.

Neither Resident's death nor incapacity shall revoke this designation which constitutes a power of attorney coupled with an interest.

Resident hereby designates the following persons as his Personal Representative or Alternate Personal Representative to obtain possession of his personal property and possessions:

### Resident 1:

1. Resident's Personal Representative Name:_____
   Address:_____
   Phone:_____ E:mail:_____ Relationship to Resident:_____

2. Resident's Personal Representative Name:_____
   Address:_____
   Phone:_____ E:mail:_____ Relationship to Resident:_____

### Resident 2:

3. Resident's Personal Representative Name:_____
   Address:_____
   Phone:_____ E:mail:_____ Relationship to Resident:_____

4. Resident's Personal Representative Name:_____
   Address:_____
   Phone:_____ E:mail:_____ Relationship to Resident:_____

### Resident 3:

5. Resident's Personal Representative Name:_____
   Address:_____
   Phone:_____ E:mail:_____ Relationship to Resident:_____

6. Resident's Personal Representative Name:_____
   Address:_____
   Phone:_____ E:mail:_____ Relationship to Resident:_____

Copyright © 10/2019 by Atlanta Apartment Association, Inc. - Form # 1401
All Rights Reserved



☑ Blue Moon eSignature Services Document ID: 259386354

**Resident 4:**

7.  Resident's Personal Representative Name:_____
    Address:_____ Relationship to Resident:_____
    Phone: _____ E:mail: _____

8.  Resident's Personal Representative Name:_____
    Address:_____ Relationship to Resident:_____
    Phone: _____ E:mail: _____

**Resident 5:**

9.  Resident's Personal Representative Name:_____
    Address:_____ Relationship to Resident:_____
    Phone: _____ E:mail: _____

10. Resident's Personal Representative Name:_____
    Address:_____ Relationship to Resident:_____
    Phone: _____ E:mail: _____

**Resident 6:**

11. Resident's Personal Representative Name:_____
    Address:_____ Relationship to Resident:_____
    Phone: _____ E:mail: _____

12. Resident's Personal Representative Name:_____
    Address:_____ Relationship to Resident:_____
    Phone: _____ E:mail: _____

**Signatures of Parties:**
**Management**

**Atler at Brookhaven Apartments Holdings, LLC**

Name of Management

By: *Nicole McLaurin*
Signature of Management Representative Name

As: **Community Manager** _____ (Job Title)

**Residents**

*Bassey Enun* _____ (Resident Signature)
Printed Name of Resident: **Bassey Enun**

*Ford* _____ (Resident Signature)
Printed Name of Resident: **Dennis Ford**

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

Copyright © 10/2019 by Atlanta Apartment Association, Inc. - Form # 1401
All Rights Reserved
✓ Blue Moon eSignature Services Document ID: 259386354

**GEORGIA**
APARTMENT ASSOCIATION

| Utility Billing Addendum |
| --- |

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

[THIS FORM MAY BE USED FOR SUBMETERING, ALLOCATION (RUBS), OR A COMBINATION OF SUBMETERING AND ALLOCATION. IT MAY ALSO BE USED WHEN ONLY ONE OR MORE UTILITIES ARE SUBMETERED OR ALLOCATED AND, THE REST ARE BILLED DIRECTLY TO THE RESIDENT BY THE UTILITY OR SERVICE PROVIDER.]

Addendum Date: __April 6, 2021__ __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of ☐ As Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Utility Billing Addendum to the Apartment Rental Contract with __Bassey Enun, Dennis Ford__

Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__ ["Resident"], pertaining to [Address]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ [Date of Lease] and amends Paragraph 10 of the Apartment Rental Contract.

**Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider).** Resident (the Tenant) authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer; to authorize the natural gas marketer to obtain credit information on the Resident, if required by the marketer; and to enroll the Resident on the marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is eligible. Resident acknowledges that Management may have a business relationship with the natural gas marketer that may provide for a financial or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

1.   **Utilities Are Billed as Additional Charges.** The monthly rent due under the Apartment Rental Contract does NOT include charges for any utilities provided to the apartment unless specifically provided otherwise in the Apartment Rental Contract or this Addendum. Resident is solely responsible for paying the cost of all utilities and services as separate charges. Resident must pay for all utilities and services each month in addition to the amount of the base monthly rent. This addendum explains how the Resident will be billed for certain utilities by Management. Other utilities will be billed directly to the Resident from the utility provider. Payment for utilities is due as additional rent.

  A.   **Electricity.** Electricity will be billed ☒ to Management and then to Resident ☐ Directly to Resident by the Utility Provider.
The name of the Electricity Utility Provider is: __Georgia Power__

The name of the Billing Provider is: __RealPage Utility Management – Common Area Pro Rata Share__
  1.   **Method of Calculating Charges.** Resident's Pro-Rata Share will be based on: __b__
      a.   Metering; or
      b.   Estimated Usage Using an Allocation Formula; or
      c.   Combination of Metering and Estimated Usage Using an Allocation Formula; or
      d.   Actual cost.
  2.   **Amount of Charges and Due Date.** The amount of the monthly charge for electricity is a:
      ☐ a.   FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____
      ☒ b.   VARIABLE AMOUNT which WILL BE billed each month.
      The amount billed is due each month on the __1__ day of the month; and is payable at the office of ☒ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
  3.   **Common Area Usage.** The Resident's pro rata share of charges for electricity ☒ DOES ☐ DOES NOT include an allocable portion of common area usage.
  4.   **Other Charges.** Resident shall be responsible for paying the following fees in connection with this account:
      ☒ a.   Account Establishment Fee $__0.00__
      ☒ b.   Monthly Administrative Fee $__0.00__
      ☒ c.   Monthly Service Fee $__0.00__

  B.   **Natural Gas.** Natural Gas will be billed ☐ to Management and then to Resident ☐ Directly to Resident by the Utility Provider.
The name of the Utility Provider is: _____

The name of the Billing Provider is: _____
  1.   **Method of Calculating Charges.** Resident's Pro-Rata Share will be based on: _____
      a.   Metering; or
      b.   Estimated Usage Using an Allocation Formula; or
      c.   Combination of Metering and Estimated Usage Using an Allocation Formula; or
      d.   Actual cost.
  2.   **Amount of Charges and Due Date.** The amount of the monthly charge for natural gas is a:
      ☐ a.   FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____
      ☐ b.   VARIABLE AMOUNT which WILL BE billed each month.
      The amount billed is due each month on the _____ day of the month; and is payable at the office of ☐ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9500
All Rights Reserved

| ✓ Blue Moon eSignature Services Document ID: 259386354 |
| --- |

3. <u>Common Area Usage.</u> The Resident's pro rata share of charges for natural gas ☐ DOES ☒ DOES NOT include an allocable portion of common area usage.

4. <u>Other Charges.</u> Resident shall be responsible for paying the following fees in connection with this account:
   ☐ a.   Account Establishment Fee $_____
   ☐ b.   Monthly Administrative Fee $_____
   ☐ c.   Monthly Service Fee $_____

C. <u>Water/Waste Water.</u> Water and Waste water will be billed ☒ to Management and then to Resident ☐ Directly to Resident by the Utility Provider. The name of the Utility Provider is: <u>DeKalb County Utility</u>

The name of the Billing Provider is: <u>RealPage Utility Management</u>

1. <u>Method of Calculating Charges.</u> Resident's Pro-Rata Share will be based on: _____b_____
   a.   Metering; or
   b.   Estimated Usage Using an Allocation Formula; or
   c.   Combination of Metering and Estimated Usage Using an Allocation Formula; or
   d.   Actual cost.

2. <u>Amount of Charges and Due Date.</u> The amount of the monthly charge for water and waste water is a:
   ☐ a.   FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____
   ☒ b.   VARIABLE AMOUNT which WILL BE billed each month.
   The amount billed is due each month on the _____1st_____ day of the month; and is payable at the office of ☒ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.

3. <u>Common Area Usage.</u> The Resident's pro rata share of charges for water and waste water ☒ DOES ☐ DOES NOT include an allocable portion of common area usage.

4. <u>Other Charges.</u> Resident shall be responsible for paying the following fees in connection with this account:
   ☒ a.   Account Establishment Fee $15.00
   ☒ b.   Monthly Administrative Fee $0.00
   ☒ c.   Monthly Service Fee $9.75
   ☒ d.   Monthly Storm Water Fee $3.75
   ☒ e.   Final Account Billing Fee $0.00

2. <u>Explanation of the Method for Metering or Allocating Utilities.</u> Metering is based on reading of devices which actually measure the utility or service usage. Allocation is based on a formula that is tied to Resident's pro-rata estimated usage using such factors as the number of bedrooms and baths, number of persons occupying the apartment, and other factors. The Allocation formula is based on actual billing and usage by the entire apartment community or building. A combination of metering and allocation uses both methods. Allocation formulas are adjusted periodically to take into account changes in the charges by utilities to Management. Actual Cost is the amount charged for and billed for the service or utility. Resident acknowledges that management has disclosed the methodology for billing utilities and services prior to signing the Apartment Rental Contract and this Addendum.

3. <u>Late Fee.</u> A late fee shall be due on any payment which is not received by the _____3rd_____ day after the payment's due date. Resident shall pay a late fee in the amount of $_____ or _____10_____ percent of the amount billed for any utility or service payment which is received after its due date.

4. <u>Additional Charges.</u> Resident shall also pay account establishment and/or monthly service or maintenance billing fees as provided above.

5. <u>Change of Billing Methods or Utility Provider.</u> Management shall have the right to change the method of billing or calculating utility and service charges by giving Resident 30 day's written notice of the change. Management shall have the right to begin billing for services or utilities not previously billed. Unless provided for above, Resident is responsible for establishing and paying for any other service or utility. Management shall have the right to designate or change the Utility or Service Provider at any time.

6. <u>Adjustments of Bills.</u> Management shall have the right to adjust any billing by increasing or decreasing the amounts due in subsequent months.

7. <u>Default.</u> Resident's failure to pay any utility or service bill, late fee, account establishment charge, monthly administrative fee, or monthly service fee is a material breach of this addendum and the Apartment Rental Contract. Management has the right to refuse payment of any monthly basic rental amount unless also accompanied by a payment for any utility or service bill which is due or past due. Management shall have the same rights and remedies to enforce a default under this addendum as it has in the Apartment Rental Contract.

8. <u>Disclosure.</u> Billing and collection of fees and charges for some utilities may be performed on Management's behalf by an "Independent Billing Contractor" who is a third party vendor. Management will disclose the name, address, and phone number of any utility or service billing company upon written request of Resident.

9. <u>First Month's Pro-Rated Billing.</u> Resident shall pay a pro-rated amount of any monthly charge based on the date Resident moved into the apartment. If the amount due is a Fixed Amount, payment shall be due at the time of signing the lease. If the amount is based on a Variable Amount which is Billed each month, at Management's option the pro-rated amount shall be due either along with the next month's rent or as an estimated pro-rated amount at the time of signing the lease. If Resident abandons the apartment, Resident will be responsible for all charges due through the time it takes for Management to obtain possession of the apartment. Resident agrees that any unpaid charges which remain due after vacating the apartment or delivering possession to Management may be deducted from any security deposit. If there is no security deposit then the last month's billing shall be due when billed.

10. <u>Estimated Charges.</u> Resident agrees that no representation or warranty has been made regarding estimated usage or charges for Variable Billing. Resident may not rely on any verbal estimate of usage or charges for any Variable Billing.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9500
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

11.  Service Interruption.  Management is not liable for any loss or damages Resident may incur due to outages, interruptions, or fluctuations in utilities or services to the apartment unless such was directly and proximately caused by Management's negligence. Resident may not withhold rent or utility and service payments because of an interruption in any utilities or services.

12.  Access to Read Meter.  If billing involves reading a meter, Resident agrees to provide Management or its independent Billing Contractor access to the Resident's apartment, if necessary.

13.  Severability.  If any portion or provision of this addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed, survive, and remain enforceable. The court shall interpret and construe the remaining portion of this addendum so as to carry out the intent of the parties that Resident is responsible for payment of all utilities or services used.

14.  Incorporation by Reference.  The provisions of the Apartment Rental Contract are by reference incorporated herein.


**Atler at Brookhaven Apartments Holdings, LLC**
_____
Name of Owner or Management Company

By: *Nicole McLaurin*
_____
Signature of Owner or Management Company

As: Community Manager
_____ (Title)

Resident *Bassey Enun*

Resident *Tobi*

Resident _____

Resident _____

Resident _____

Resident _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #9500
All Rights Reserved

Blue Moon eSignature Services Document ID: 259386354

# GEORGIA
**APARTMENT ASSOCIATION**

| Service Billing Addendum |

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__  .__Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of ☐ as Agent for the Owner of __Atler at Brookhaven Apartments__
["Community Name"] enters into this Service Billing Addendum to the Apartment Rental Contract with __Bassey Enun, Dennis Ford__

["Resident"], pertaining to

Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__
[Address]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ [Date of Lease] and amends Paragraph 10 of the Apartment Rental Contract.

If the information for a Service is filled in, then that Service will be billed directly to Resident by the Service Provider. Resident is solely responsible for payment of all utilities and services provided to the Resident or Resident's apartment, and Resident gives Management a proxy or the right to select any Service Provider to the apartment. The term "Utility Provider" also includes a Service Provider. All "fees" or "charges" are non-refundable.

1. **Services Are Billed as Additional Charges.** The monthly rent due under the Apartment Rental Contract does NOT include charges for any services provided to the apartment unless specifically provided otherwise in the Apartment Rental Contract or this Addendum. Resident is solely responsible for paying the cost of all services and utilities as separate charges. Resident must pay for all services and utilities each month in addition to the amount of the base monthly rent. This addendum explains how the Resident will be billed for certain services by Management. Other services will be billed directly to the Resident from the service provider. Payment for services is due as additional rent.

A. **Pest Control.** Pest Control will be billed ☒ to Management and then to Resident ☐ ☐ Directly to Resident by the Service Provider.
The name of the Pest Control Provider is: __Master Pest Control__
The name of the Billing Provider is: __Real Page Utility Management__
1. **Method of Calculating Charges.** Resident's Pro-Rata Share will be based on:
   [Check Applicable Method of Calculating Usage]
   ☒ a. Actual cost; or
   ☐ b. Estimated Usage Using an Allocation Formula.
2. **Amount of Charges and Due Date.** The amount of the monthly charge for pest control is a:
   ☒ a. FIXED AMOUNT which ☒ WILL ☐ will NOT be billed in the Amount of $ __3.00__
   ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
   The amount billed is due each month on the __1st__ day of the month; and is payable at the office of ☒ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
3. **Other Charges.** Resident shall be responsible for paying the following fees in connection with this account:
   ☐ a. Account Establishment Fee $_____
   ☐ b. Monthly Administrative Fee $_____
   ☐ c. Monthly Service Fee $_____

B. **Trash Removal.** Trash Removal will be billed to ☒ Management and then to Resident ☐ Directly to Resident by the Service Provider.
The name of the Trash Removal Provider is: __Waste Management & Recycling__
The name of the Billing Provider is: __Real Page Utility Management__
1. **Method of Calculating Charges.** Resident's Pro-Rata Share will be based on:
   [Check Applicable Method of Calculating Usage]
   ☒ a. Actual cost; or
   ☐ b. Estimated Usage Using an Allocation Formula.
2. **Amount of Charges and Due Date.** The amount of the monthly charge for trash removal is a:
   ☒ a. FIXED AMOUNT which ☒ WILL ☐ will NOT be billed in the Amount of $ __47.88__
   ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
   The amount billed is due each month on the __1st__ day of the month; and is payable at the office of ☒ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
3. **Other Charges.** Resident shall be responsible for paying the following fees in connection with this account:
   ☒ a. Account Establishment Fee $ __0.00__
   ☒ b. Monthly Administrative Fee $ __0.00__
   ☒ c. Monthly Service Fee $ __0.00__

C. **Cable Television.** Cable Television will be billed to ☐ Management and then to Resident ☒ Directly to Resident by the Service Provider.
The name of the Cable Television Provider is: _____
The name of the Billing Provider is: _____
1. **Method of Calculating Charges.** Resident's Pro-Rata Share will be based on:
   [Check Applicable Method of Calculating Usage]
   ☐ a. Actual cost; or
   ☐ b. Estimated Usage Using an Allocation Formula.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9501
All Rights Reserved

| ✓ | Blue Moon eSignature Services Document ID: 259386354 |

    2.  <u>Amount of Charges and Due Date.</u> The amount of the monthly charge for Cable Television is a:
         ☐ a. FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____.
         ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
        The amount billed is due each month on the _____ day of the month; and is payable at the office of ☐ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
    3.  <u>Other Charges.</u> Resident shall be responsible for paying the following fees in connection with this account:
         ☐ a. Account Establishment Fee $_____
         ☐ b. Monthly Administrative Fee $_____
         ☐ c. Monthly Service Fee $_____

  D.  <u>Internet Access</u> Internet Access will be billed to ☐ Management and then to Resident ☒ Directly to Resident by the Service Provider.
  The name of the Internet Access Provider is: _____
  The name of the Billing Provider is: _____
    1.  <u>Method of Calculating Charges.</u> Resident's Pro-Rata Share will be based on:
        [Check Applicable Method of Calculating Usage]
         ☐ a. Actual cost; or
         ☐ b. Estimated Usage Using an Allocation Formula.
    2.  <u>Amount of Charges and Due Date.</u> The amount of the monthly charge for Internet Access is a:
         ☐ a. FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____.
         ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
        The amount billed is due each month on the _____ day of the month; and is payable at the office of ☐ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
    3.  <u>Other Charges.</u> Resident shall be responsible for paying the following fees in connection with this account:
         ☐ a. Account Establishment Fee $_____
         ☐ b. Monthly Administrative Fee $_____
         ☐ c. Monthly Service Fee $_____

2.  <u>Late Fee.</u> A late fee shall be due on any payment which is not received by the __3rd__ day after the payment's due date. Resident shall pay a late fee in the amount of $_____ or __10__ percent of the amount billed for any service payment which is received after its due date.

3.  <u>Additional Charges.</u> Resident shall also pay account establishment and/or monthly service or maintenance billing fees as provided above.

4.  <u>Change of Billing Methods or Service Provider.</u> Management shall have the right to change the method of billing or calculating service charges by giving Resident 30 day's written notice of the change. Management shall have the right to begin billing for services not previously billed. Unless provided for above, Resident is responsible for establishing and paying for any other service. Management shall have the right to designate or change the Service Provider at any time.

5.  <u>Adjustments of Bills.</u> Management shall have the right to adjust any billing by increasing or decreasing the amounts due in subsequent months.

6.  <u>Default.</u> Resident's failure to pay any service bill, late fee, account establishment charge, monthly administrative fee, or monthly service fee is a material breach of this addendum and the Apartment Rental Contract. Management has the right to refuse payment of any monthly basic rental amount unless also accompanied by a payment for any utility or service bill which is due or past due. Management shall have the same rights and remedies to enforce a default under this addendum as it has in the Apartment Rental Contract.

7.  <u>Disclosure.</u> Billing and collection of fees and charges for some services may be performed on Management's behalf by an "Independent Billing Contractor" who is a third party vendor. Management will disclose the name, address, and phone number of any service billing company upon written request of Resident.

8.  <u>First Month's Pro-Rated Billing.</u> Resident shall pay a pro-rated amount of any monthly charge based on the date Resident moved into the apartment. If the amount due is a Fixed Amount, payment shall be due at the time of signing the lease. If the amount is based on a Variable Amount Which is Billed each month, at Management's option the pro-rated amount shall be due either along with the next month's rent or as an estimated pro-rated amount at the time of signing the lease. If Resident abandons the apartment, Resident will be responsible for all charges due through the time it takes for Management to obtain possession of the apartment. Resident agrees that any unpaid charges which remain due after vacating the apartment or delivering possession to Management may be deducted from any security deposit. If there is no security deposit then the last month's billing shall be due when billed.

9.  <u>Estimated Charges.</u> Resident agrees that no representation or warranty has been made regarding estimated usage or charges for Variable Billing. Resident may not rely on any verbal estimate of usage or charges for any Variable Billing.

10.  <u>Service Interruption.</u> Management is not liable for any loss or damages Resident may incur due to outages, interruptions, or fluctuations in services to the apartment unless such was directly and proximately caused by Management's negligence, Resident may not withhold rent or service payments because of an interruption in any services.

11.  <u>Access to Read Meter.</u> If billing involves reading a meter, Resident agrees to provide Management or its Independent Billing Contractor access to the Resident's apartment, if necessary.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #9501
All Rights Reserved

12. Severability. If any portion or provision of this addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed, survive, and remain enforceable. The court shall interpret and construe the remaining portion of this addendum so as to carry out the intent of the parties that Resident is responsible for payment of all services used.

13. Incorporation by Reference. The provisions of the Apartment Rental Contract are by reference incorporated herein.

Atler at Brookhaven Apartments Holdings, LLC

_____
Name of Owner or Management Company

By: *Nicole McLaurin*
_____
    Signature of Management Representative

As: Community Manager
_____ (Title)

*Bassey Erun*
_____
Resident's Signature

*Toby*
_____
Resident's Signature

_____
Resident's Signature

_____
Resident's Signature

_____
Resident's Signature

_____
Resident's Signature

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #9501
All Rights Reserved

Blue Moon eSignature Services Document ID: 259386354



**GEORGIA**
APARTMENT ASSOCIATION

GAA Subletting, Short Term Rentals and Assignment Addendum

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: **April 6, 2021** **Atler at Brookhaven Apartments Holdings** ["Management"] ☒ as Owner of
☐ as Agent for the Owner of **Atler at Brookhaven Apartments**
["Community Name"] enters into this Subletting, Temporary Rentals and Assignment Addendum to the Apartment Rental Contract with **Bassey**
**Enun, Dennis Ford**
["Resident"], pertaining to
Apt. No. **0606** located at **3833 Peachtree Road # 0606, Atlanta, GA 30319**
[Address]. This addendum is part of the Apartment Rental Agreement dated **April 6, 2021** [Date of Lease]. If any terms of the Lease
and this Addendum conflict, then the terms of this addendum shall control. This addendum is incorporated by reference into the Apartment Rental Contract.

1. **Purpose and Acknowledgement.** Paragraph 8 of the lease prohibits the assignment and subletting of the lease. This Addendum is intended to further clarify that Paragraph 8 also prohibits using or leasing the apartment for short term or periodic rentals, hotel like or transitory accommodations, temporary or short term assignment, and temporary or short term subletting which is less than the full term of the lease to anyone who is not an authorized resident or occupant named in the lease or to anyone for commercial purposes, or to anyone in exchange for money or other valuable consideration. Paragraph 8 also prohibits a housing swap under which the resident exchanges his or her apartment with a non-resident in exchange for the non-resident's home or housing. The first page of the lease identifies the only authorized residents and occupants who may occupy the apartment. The General Provisions on the second page of the lease prohibit anyone other than the disclosed residents and occupants from occupying the apartment. Short term or periodic rentals on a transitory basis also violate legal uses of the apartment under Paragraph 14 of the lease.

   Resident acknowledges, agree(s), and understands that Resident, his or her occupants, social guests, and invitees are prohibited from assigning, subletting, renting, or exchanging the apartment as a temporary or short term rental or housing to an unauthorized resident or occupant without Management's prior written consent. Management may withhold approval of such temporary housing in its sole discretion. Any short term or temporary assignment, subletting, rental, or exchange of the Apartment may introduce persons into the Community who do not meet the community's rental qualifications or which arrangement is in violation of federal and state laws which prohibit transient use of apartments which are regulated under an affordable housing program, including but not limited to, Section 8 Housing Choice Voucher and Low Income Housing Tax Credit regulations and housing programs.

2. **Prohibitions Against Short Term Rentals, Assignments, Subleases, and Exchanges.** Resident acknowledges and agrees that he or she will not assign, sublease, lease, rent, or exchange the Apartment to another unauthorized resident or occupant for any portion of the lease or renewal term. Resident further agrees not to advertise the Apartment or any portion of it for short term or periodic rental in any manner including, but not limited to, any internet websites such as Airbnb.com, HomeAway.com, Couchsurfing.com VRBO.com, vacationrentals.com, flipkey.com, tripadvisor.com, Ebay, Craigslist, or any other listing or exchange service for housing. Any person who is not the authorized Resident or Occupant and occupies any portion of the apartment for any period of time in exchange for compensation or consideration is not a "Guest" and is prohibited by this agreement. Resident is allowed to have overnight guests, social guests, family members, or visitors who are visiting at the invitation of an authorized Resident or occupant for a short period of time on a non-commercial basis and who are not paying consideration or compensation to the Resident or occupant in exchange for the right to use and occupy the Apartment.

3. **Violation of this Addendum.** Assignment, subletting, rental, exchange, or use of the Apartment in violation of this Addendum is a material breach of the lease agreement, and Management at its sole discretion may immediately terminate the Apartment Rental Contract or Resident's right of possession and occupancy of the Apartment as provided in Paragraph 26 of the lease.

4. **Indemnification and Release.** Resident agrees to release, discharge, indemnify Owner or Management from any loss, damage, liability, or claim and to pay Management's attorney's fees and expenses incurred, arising from any violation of the Lease or this Addendum.

5. **Merger of All Prior Statements.** All prior statements, representations or agreements pertaining to the right to sublease, assign, or the authorization of short term leases shall be void and unenforceable and are merged herein unless such representation is in writing and signed by all parties to this addendum and the Residential Lease Contract. If any phrase, sentence, portion, provision, or paragraph of this addendum shall be found or determined to be void or unenforceable under Georgia law, then such void or unenforceable phrase, sentence, portion, or paragraph shall be severed, and the balance or remainder of this addendum shall be upheld as valid and enforceable so as to carry out the expressed intent of the parties to this contract. The provisions of this addendum are contractual in nature and not mere recitals.

   Any Portion of Addendum Found to Be Void or Unenforceable To Be Severed and Remainder Enforced. If any phrase, sentence, portion, provision, or paragraph of this addendum is held to be void or unenforceable, the addendum in its entirety shall be admissible in evidence in any civil lawsuit or trial with appropriate instructions as to effectiveness of the void or unenforceable portion.

**Atler at Brookhaven Apartments Holdings, LLC**

Name of Owner or Management Company

By: *Nicole McLaurin*

Signature of Owner or Management Company

As: **Community Manager** _____ (Title)

Resident *Bassey Enun*

Resident *Ford*

Resident _____

Resident _____

Resident _____

Resident _____

Copyright © May, 2019 by Atlanta Apartment Association, Inc. - Form #1604 All Rights Reserved



# FIRE SAFETY INFORMATION

**GEORGIA**
APARTMENT ASSOCIATION

## "SAFETY TIPS"

1. Never smoke in bed.
2. Locate fire exits on this floor. (Note: Do NOT consider elevators as exits.)
3. Count the number of doors to the nearest exit, and check for any possible obstructions.
4. (When applicable: Locate fire alarm pull stations on this floor.)
5. (When applicable: Locate fire extinguishers on this floor.)
6. Check any windows to see if they can be opened; if so determine how they open.
7. Keep your room key on a table next to your bed.
8. If you leave your room, keep door closed and take your key.
9. Write down the number for the local fire department and keep it next to the phone.
   THE LOCAL FIRE DEPARTMENT NUMBER IS _____ 404-637-0600 _____

## "IN CASE OF FIRE"

1. DON'T PANIC; remain calm.
2. Report fire to front desk or fire department as appropriate.
3. If room is smoky, get on hands and knees (or stomach) and crawl to door.
4. Feel door knob; if HOT, do NOT open door; if cool, open slowly.
5. If hallway is smoky, stay next to wall and count the doors as you crawl to exit.
6. Do NOT use any elevators.
7. Do NOT prop open doors to exit staircase.
8. Hang on to handrail and WALK DOWN exit staircase.
9. (When applicable: Pull fire alarm as you evacuate.)

## "IF YOU CANNOT LEAVE THIS ROOM"

10. Notify (or call) front desk (or manager, fire department, or other appropriate person) and let them know where you are.
11. Wet sheets, towels or clothing and stuff them in the cracks around doors and vents.
12. (When applicable: Turn on bathroom fan.)
13. Check to see if there is smoke OUTSIDE window; if NO smoke and if window can be opened, hang a sheet or light colored material outside.
14. (When applicable: Fill bathtub (or sink) with cold water for firefighting.)
15. Using ice bucket or other container, keep doors and walls wet.
16. If room is smoky, fold a wet towel in a triangle and tie over your nose and mouth; stay low.
17. Make yourself visible to rescue personnel through any window or balcony; DO NOT JUMP!
18. Keep fighting fire until help arrives; DON'T GIVE UP!

## FOR YOUR SAFETY, THIS BUILDING HAS THE FOLLOWING IF [X] APPEARS BESIDE THE FEATURE:

- ❑ Automatic sprinkler protection in every room.
- ❑ Automatic sprinkler protection in every hallway.
- ❑ Automatic smoke detectors in every room.
- ❑ Automatic smoke detectors in every hallway.
- ❑ Fire extinguishers on every floor.
- ❑ Fire alarm pull stations at every exit.
- ❑ Pressurized staircase with self-closing doors. (NOTE: In case of fire, do NOT prop doors open.)
- ❑ Fire safety staircase with self-closing doors. (NOTE: In case of fire, do NOT prop doors open.)
- ❑ Emergency lighting and exit lights.
- ❑ Fire resistant drapery.
- ❑ An alternative fire exit to the roof. (NOTE: To be used ONLY if heavy smoke is encountered when walking DOWN the exit staircase.)

The undersigned Resident(s) acknowledges receipt of this Fire Safety Information and agrees to make this information available to any occupants, guests, invitees or visitors of Resident(s).

Resident Unit/Address __#0606, 3833 Peachtree Road # 0606, Atlanta, GA 30319__

| | |
|---|---|
| _Bassey Erinn_ | 04/09/2021 |
| Resident | Date |
| _Tobi_ | 04/09/2021 |
| Resident | Date |
| | |
| Resident | Date |
| | |
| Resident | Date |
| | |
| Resident | Date |
| | |
| Resident | Date |
| _Nicole MacLaurin_ | 04/12/2021 |
| Owner/Agent | Date |

Note: Under state law Management is required to provide this information to Residents occupying buildings of three (3) or more stories.

Copyright © Atlanta Apartment Association, Inc. 10/98
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

FORM #9831





| | FIRE SAFETY EQUIPMENT ACKNOWLEDGMENT AND COMPLIANCE ADDENDUM | FORM VALID FOR GEORGIA APARTMENT ASSOCIATION MEMBERS ONLY |

**GEORGIA** APARTMENT ASSOCIATION

Addendum Date: __April 6, 2021__ __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of ☐ as Agent for the Owner of __Atler at Brookhaven Apartments__ ["Community Name"] enters into this Fire Safety Equipment Acknowledgment and Compliance Addendum to the Apartment Rental Contract ["the Lease"] with __Bassey Enun, Dennis Ford__ ["Residents"], pertaining to

Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__ ["Address"]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ ["Date of Lease"].

1. This Addendum is part of the above Apartment Rental Contract ["the Lease"] and a violation of the Addendum is a serious lease violation, breach, or default.

2. Resident acknowledges and agrees that his or her apartment has certain fire and smoke detection, suppression, or safety devices ["fire safety equipment"]. Resident was shown the location of such fire safety equipment and instructed on how to use and test them properly. Resident received and has read the written Fire Safety Information sheet. The following fire safety equipment is in the apartment:

   ☐ automatic water sprinkler system and heads
   ☒ fire extinguisher
   ☒ single station battery powered smoke detector
   ☐ powered smoke detector system hard wired to electrical power
   ☐ automatic door closers
   ☐ emergency exit signs
   ☐ emergency exit lighting

3. Resident agrees that he or she will not remove, modify, disconnect, tamper, or damage any of such equipment or devices. Resident shall immediately report to Management in writing any damages or needed repairs for such fire safety equipment. Resident agrees to make a visual inspection of all fire safety equipment in the apartment on a monthly basis for observation of any readily apparent damages, replacement, or need for repairs.

4. Resident agrees to examine all windows, doors, and exits and devise a personal safety exit plans for him or her and the Resident's occupants, family members, social guests, and invitees in the event of a fire or other emergency. Resident shall communicate the emergency escape plan and instructions on how to exit the apartment in case of a fire or emergency.

5. Resident shall examine the fire extinguisher in the apartment once per month to check the pressure gauge to determine whether it needs to be discharged or whether the retaining pin to the handle is still in place. If a pressure gauge indicates the extinguisher needs to be charged or replaced, Resident shall promptly notify Management in writing.

6. Resident shall test each single station stand alone battery powered smoke detector in the apartment once per month by manually pressing the test button on the station to see if it emits a proper warning sound. If no sound is emitted or if the station emits an improper sound, or if the station begins beeping to indicate low batteries, Resident shall immediately report the need for repair or replacement in writing to Management. Resident agrees to keep a log or written list of each date on which he or she tested the smoke detector. If Resident's apartment has smoke detectors that are part of a multiple station which is part of a hard wired electrically powered smoke alarm system, then Resident is not required to test such detectors.

7. Resident acknowledges and agrees that the fire safety equipment was present and working at the time he or she took occupancy of the apartment.

8. Resident may contact Management at any time to request assistance in performing any monthly visual inspection or testing of any fire safety equipment or to answer questions about fire safety in the apartment or apartment building.

__Atler at Brookhaven Apartments Holdings, LLC__                Resident _Bassey Enun_

Name of Owner or Management Company

By: _Nicole McLaurin_                                           Resident _Ford_
Signature of Management Representative

As: __Community Manager__                       (Title)          Resident _____

                                                                Resident _____

                                                                Resident _____

                                                                Resident _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #9430
All Rights Reserved
☑ Blue Moon eSignature Services Document ID: 259386354





**GEORGIA**
APARTMENT ASSOCIATION

**RENTAL CONCESSION ADDENDUM**

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Addendum Date: __April 6, 2021__ . __Atler at Brookhaven Apartments Holdings__ ["Management"] ☒ as Owner of ☐ as Agent for the Owner of __Atler at Brookhaven Apartments__

["Community Name"] enters into this Rental Concession Addendum to the Apartment Rental Contract ["the Lease"] with __Bassey Enun, Dennis Ford__

["Resident"], pertaining to Apt. No. __0606__ located at __3833 Peachtree Road # 0606, Atlanta, GA 30319__

_____ [Address]. This addendum is part of the Apartment Rental Contract dated __April 6, 2021__ [Date of Lease].

1. This Addendum is part of the above Apartment Rental Contract ["the Lease"] and provides an incentive to lease with specific conditions that require the Resident to stay in compliance with the terms and conditions of the lease as specified below.

   **IMPORTANT:** Resident can lose the rental concession for the month of a default or the remainder of the lease and may have to repay concessions taken prior to default as provided below. It is important that you read this addendum carefully.

2. The Resident is obligated to pay the contractual amount of rent stated in Par. 3 of the Lease.

   However, as an inducement to lease the apartment, Management will provide Resident with a Rental Concession under the following terms and conditions. The rental concession is a form of discounted rent that requires the Resident to pay rent timely and not default in his or her obligations in the Lease or this addendum.

3. In order to receive and be eligible for the Rental Concession, the Resident must be and remain in compliance and cannot be in default with the Lease or this addendum. Listed below are explanations of what can occur if the Resident defaults.

   a) **Temporary Breach of Rental Contract and Temporary Loss of Concession.** Resident shall lose the rental concession for any month in which the Resident fails to pay rent timely or otherwise defaults under any other terms and conditions of the lease.

   If Resident is not timely in payment of rent, utility, or other charges which come due, then the concession shall be lost for the month in which a default occurred.

   The concession can be reinstated for the remaining term of the lease at such time as Resident comes back into compliance with the lease, cures the default, and pays all rent, late fees, utilities, damages, or other charges that are due and delinquent.

   Upon Management's election to accept payment and reinstate the lease combined with Resident's payment in full of the past due rent and late fee, lost rental concession, or other applicable charges, the lease shall stand as reinstated, and Resident shall be eligible for the rental concession for the remainder of the lease, if applicable.

   b) **Permanent Breach of Rental Contract and Irrevocable Loss of Concession.** In the event the Resident abandons the apartment or vacates after the filing of a dispossessory proceeding (eviction) and fails to pay rent due; or in the event the Resident defaults and is physically evicted from the apartment and fails to pay rent due [check all that apply]:

   __X__ The remainder of the rental concession is irrevocably *lost going forward.*

   __X__ Resident must repay rental concessions previously taken in prior months, having a *retroactive effect of requiring repayment of concessions already received* as a credit against rent previously paid.

   If Resident abandons the apartment without properly terminating the Lease under the method provided for in Paragraph 7 (Early Termination) of the Apartment Rental Contract the concession shall be lost for the remainder of the rental payments due under the Lease.

4. The Resident's rental concession shall apply as a reduction in rent as provided below. The concession is a credit against the rental contract amount stated in Paragraph 3 of the Lease. It is a bookkeeping entry into the management software accounting system. A rental concession is not a security deposit and is non-refundable. It is not transferrable, nor is it assignable. The Resident is not entitled to receive cash or a cash equivalent in lieu of taking a credit against rent due. The rental concession is only applicable to the specific apartment and lease referred to above. The concession amount only applies if Management receives rent timely. The rental concession is only a credit against the full monthly rental amount stated in the Lease and cannot be used in any other manner.

   The total amount of the rental concession is $_____, to be taken as follows [check all that apply and fill in the appropriate blanks]:

   a) One month's rent for the month of _____

   b) $_____ each month beginning _____ through _____

   c) Other method of applying the rental concession:

   _____

   _____

   This Addendum only applies during the initial term of the Lease unless specifically extended by agreement under any renewal or extension of the Lease. The rental concession provided for above shall not be applicable except as expressly stated above unless otherwise modified in writing and signed by both parties.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #1208
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

5.  Resident's Election to Take Early Termination pursuant to Paragraph 7 of the Lease.

In the event the Resident elects to terminate the Lease prior to expiration of the Lease term stated in Par. 1 (Term) of the Lease (check the provision that is applicable):

_____ Resident is *NOT* required to repay the rental concessions taken prior to the effective date the lease will end;

OR

__X__ Resident must repay the rental concessions taken prior to the effective date the lease will end.

6.  In the event Resident's lease is terminated or Resident's right to occupancy of the apartment is terminated due to Resident's default, Resident shall lose the rental concession as provided in Paragraph 3 of this addendum. For purposes of compelling payment of rent into court during the pendency of any dispossessory or for collection of rent due in a breach of contract civil action, the Resident shall owe the full monthly rental amount specified in Paragraph 3 of the Lease without any credit for a concession. In the event Resident holds over beyond the term of the Lease and owes hold over rent, the amount of hold over rent shall be two times the amount of rent due under Paragraph 3 of the Lease without a credit for the concession.

7.  If any portion or provision of this addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed and survive and remain enforceable. The court shall interpret and construe the remaining portion of this addendum so as to carry out the intent and effect of the parties. In the event of a conflict between the provisions of this addendum and the Lease, the Addendum shall control. Except as modified by this addendum, the Lease shall remain in full force and effect.

**Atler at Brookhaven Apartments Holdings, LLC**

Name of Owner or Management Company

By: *Nicole McLaurin*

Signature of Management Representative

As: **Community Manager** _____ (Title)

Resident *Bossey Enin*

Resident *Tody*

Resident _____

Resident _____

Resident _____

Resident _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #1208
All Rights Reserved

Blue Moon eSignature Services Document ID: 259386354

 **GEORGIA** APARTMENT ASSOCIATION | **SATELLITE DISH AND ANTENNA ADDENDUM TO APARTMENT RENTAL CONTRACT**

Addendum Date: ___April 6, 2021___ _Atler at Brookhaven Apartments Holdings_ ["Management"] ☒ as Owner of ☐ as Agent for the Owner of _Atler at Brookhaven Apartments_
["Community Name"] enters into this Satellite Dish and Antenna Addendum to the Apartment Rental Contract pertaining to Apt. No. ____0606____
located at _3833 Peachtree Road # 0606, Atlanta, GA 30319_
["Address"] with _Bassey Enun, Dennis Ford_
_____ ["Resident"].

Provided that resident's apartment has the necessary exposure to receive line-of-sight satellite reception as determined by Management, resident has permission to install and maintain a satellite dish or antenna to serve the apartment subject to reasonable restrictions and contracts as imposed by Management relating to such installation and maintenance. Resident is required to comply with the following restrictions and contracts as a condition of installing and maintaining such equipment.

1. **Number and Size.** To receive or transmit signals, resident may install a satellite dish or stick-type antenna. A dish-type antenna may not exceed 3.3 feet in diameter.

2. **Location.** The location of the satellite dish or antenna is limited to either inside the apartment or to an area immediately outside the interior of the apartment, but which is connected to or part of the leased premises, such as a balcony, patio, or yard over which Resident has exclusive use and control under resident's lease. Installation is prohibited on any portion of the exterior of the building, including, but not limited to, any roof, gutter, column, beam, support, exterior wall, window, or window sill. Installation is prohibited in any portion of the common areas or limited common areas of the apartment community, including but not limited to, fences, trees, parking areas, hallways, breezeways, stairwells, or any other area that other Residents of the apartment community are allowed to use or access. If the antenna is installed outside the interior of the apartment, the height of the satellite dish or antenna shall not exceed eight feet (8') as measured from the floor of the balcony or the patio of the apartment. If the antenna is located inside the apartment, the height shall not exceed the interior ceiling. Devices that extend the satellite dish or antenna beyond the balcony railing or patio boundary may not be used. Resident is not permitted to string or connect cables from other apartments to the antenna that is located at the Resident's apartment, patio, or balcony.

3. **Installation and Maintenance.** Installation and maintenance must be done in accordance with all applicable building codes and ordinances. Resident will have the sole responsibility for having such a company install and maintain Resident's satellite dish, antenna and all related equipment at Resident's sole expense. The installation of the satellite dish or antenna may not (a) interfere with any cable, telephone or electrical systems used by Management or those of neighboring properties; (b) be connected to Management's telecommunication systems; nor (c) be connected to the existing electrical system except by plugging into an existing receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured. Management may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

4. **Hook up from exterior dish or antenna to interior of dwelling.** Resident may not damage or alter the apartment and may not drill holes through fire walls, interior walls, outside walls, roofs, balcony railings or glass. The "hook-up" to a receiving device inside the apartment can be made only by either (a) a flat cable under a door jam or window sill which does not interfere with the operation of the door or window or (b) by means of a device on a window that allows a signal to pass through the glass.

5. **Removal and damages.** Upon termination of Resident's lease, resident must remove the satellite dish or antenna and other related equipment. Resident must pay for any damages and for the cost of repairs or restoring the apartment to its condition prior to the installation of such equipment.

6. **Liability insurance and indemnity.** Resident must provide to Management a certificate evidencing liability insurance coverage under a renter's policy that shows Management and the owner of the apartment as insured against claims of personal injury or property damage to others relating to resident's satellite dish or antenna. Resident agrees to hold Management and the owner of the apartment harmless and indemnify Management and the owner of the apartment against any of the above claims by others.

7. **Additional security deposit.** An additional security deposit in the amount of $___100.00___ is payable by the Resident to cover any physical damage caused by the installation or removal of the satellite dish or antenna.

Resident may install Resident's satellite dish or antenna only after Resident has
- signed this addendum;
- provided a certificate of liability insurance;
- paid the additional security deposit; and
- received written approval by Management of the person or company who will do the installation.

RESIDENT ACKNOWLEDGES THAT SIGNING THIS ADDENDUM DOES NOT MEAN THAT HE OR SHE IN ENTITLED TO HAVE A SATELLITE DISH AS NOT ALL APARTMENTS WILL HAVE THE NECESSARY SOUTHERN EXPOSURE REQUIRED FOR LINE-OF-SIGHT SIGNAL RECEPTION. IN MANY INSTANCES THIS ADDENDUM WILL PRECLUDE THE INSTALLATION OR USE OF SATELLITE DISHES.

Atler at Brookhaven Apartments Holdings, LLC

Name of Owner or Management Company

By: _Nicole McLaurin_

Signature of Management Representative

As: _Community Manager_ (Title)

_Bassey Enun_
Resident

_Ford_
Resident

_____
Resident

_____
Resident

_____
Resident

_____
Resident

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - FORM #9980
All Rights Reserved



# Atlanta Community Food Bank Addendum

The 2001 US Census Bureau states that **32.9 million Americans live in poverty.** Founded in 1979, The Atlanta Community Food Bank provides food and other products, through over 750 hunger-relief programs, to over 51 Georgia counties. Hunger relief programs include food pantries, Head Start Programs, childcare centers, nursing homes, Meals on Wheels, treatment centers, shelters and community kitchens. **More than 50% of foods distributed in Atlanta go to children;** the rest to the homeless, seniors, working poor families, immigrants and refugees.

The Atlanta Community Food Bank believes **anything can be accomplished with strong community support.** The Food Bank's banner is to "Fight Hunger". Westwood is a committed supporter of the Atlanta Community Food Bank. **Through the generosity and bigheartedness of our residents, employees and vendors, we are able to substantially give to our Atlanta community.** Giving… is a great feeling!

**Your $1.00 provides $7.00 of goods and services!** The Food Bank is counting on you! Please take this time to make a monthly donation to the Atlanta Community Food Bank. Westwood will make your donation for you, directly to the Food Bank. If you choose not to make a monthly donation, please feel free to make a one-time donation or add a little extra to your rent during months you feel you can donate. Any overage in rent will be donated to the food bank. Please help support your community through these difficult and challenging economic times. **When more people give what they can, it does add up!**

I pledge the following monthly amount to directly go to the Atlanta Community Food Bank:

$5.00 ☐    $10.00 ☐    Other: $_____ ☐

Leaseholder Name: _Bassey Enun_____     Apartment # _0606_____

Signature: _Bassey Enun_____

Leaseholder Name: _Dennis Ford_____

Signature: _Todd_____

Leaseholder Name: _____

Signature: _____

Leaseholder Name: _____

Signature: _____

Leaseholder Name: _____

Signature: _____

Leaseholder Name: _____

Signature: _____



## GEORGIA
APARTMENT ASSOCIATION

### STORAGE AREA RENTAL CONTRACT

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Date of Contract:  __April 6, 2021__

This Storage Area Rental Contract is between __Atler at Brookhaven Apartments Holdings LLC__
("Management") and __Bassey Enun, Dennis Ford__

_____ ("Resident"). Management leases to Resident,
and Resident rents from Management, the Storage Area No. _____ located at __3833 Peachtree Road # 0606, Atlanta__
_____ [Address] Georgia. If the Resident has also entered into an
Apartment Rental Contract with Management, then this storage contract shall become an addendum to the Apartment Rental Contract.

1.  **TERM:**  The initial term of this lease shall be _____, beginning at 12 noon,
_____, _____ and ending at 12 noon, _____, _____.

2.  **POSSESSION:**  If there is a delay in delivery of possession by management, rent shall be abated on a daily basis until possession is granted. If possession is not granted within seven (7) days after the beginning day of initial terms, then resident may void or rescind this agreement and have full refund of any deposit. Management shall not be liable for damages for the delay in delivery of possession. Resident shall give Management written notice of the election to void or rescind this contract.

3.  **STORAGE AREA RENT:**  Rent is payable monthly to Management in the sum of __00/100__
_____ Dollars ($ _____ ) per month on the first day of each month during the initial or extended term of this lease at the office of management or such other place as management may designate. All rent shall be paid by personal check, cashier's check, certified funds, or money order. Management shall have the right to establish or provide for payment by credit card, debit card, or electronic funds transfer, but Resident does not have the right to make payments by these means unless specifically authorized by Management. Management shall have the right to refuse any tender of payment in cash. No third party checks will be accepted or considered a proper tender or payment of rent. Any additional sums or charges due from resident because of a breach or violation of this storage area rental contract shall be due as additional rent. Such additional sums or charges shall include, but are not limited to, damages exceeding normal wear and tear to the storage area when such damages are caused by resident or resident's family, occupants, guests, or invitees.

4.  **LATE PAYMENTS AND RETURNED CHECKS:**  Time is of the essence of this agreement. After the _____3_____ day of the month, rent shall be late, and a late charge of $ _____ shall be due as additional rent. If Management elects to accept late rent, Resident shall tender all late rents, dispossessory warrant costs, and administrative filing fees to Management only by cashier's check, certified check or money order. In the event Resident's storage area rent check is dishonored by the bank, resident shall pay Management $ ____30.00____ as an insufficient check service fee plus an additional fee equal to the fee charged to Management by the bank, in addition to rent and late charges.

5.  **RENEWAL or EXTENSION TERM:**  Either party may terminate this agreement at the end of the initial term by giving the other party ____30____ days written notice prior to the end of the term. If notice is not given, then this agreement will be extended on a (check on of the following boxes) ☒ Month-to-Month (one month at a time) ☐ Bi-Monthly (2 months at a time) basis with all terms remaining the same until terminated, as of the last day of a calendar month, by either party upon ____30____ days written notice. A 30 day written notice is required to end a Month-to-Month extension, and a 60 day written notice is required to end a Bi-Monthly Renewal. Resident agrees that at the end of the initial term of this residential agreement, (as specified in paragraph 1), or at any time thereafter, Management shall have the right to increase the rent due under paragraph 3 by giving the Resident a written notice at least 15 days prior to the notice required to non-renew the storage area rental contract, and such increase shall not terminate this storage area rental contract. Unless otherwise allowed by Management, the storage area contract shall terminate at the end of a calendar month

6.  **NO ASSIGNMENT OR SUBLETTING:**  Resident shall not sublet the storage area or assign this lease without prior written consent of management.

7.  **DISCLOSURE:** __First Communities Management Inc__
__1200 Lake Hearn Dr Suite 200 Atlanta GA 30319__ _____, whose address is
_____ , is authorized to manage the apartment community and the storage area leased. Owner or agent for service of legal notices and lawsuits is __Dana Miles__
__202 Tribble Gap Rd Suite 200 Cumming GA 30040__ _____, whose address is
The Managing Agent's Corporate Broker's name and license number as required to be disclosed by the rules of the Georgia Real Estate Commission (Ga.R. & Reg. 520-1-.10) is __First Communities Management, INC.__
[Name of Broker] and __H-15679__ _____ [GREC License No.].

**Equal Housing Opportunity Policy.**  The apartment owner and Management provide equal housing opportunity for qualified applicants and do not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other legally recognized status in the State of Georgia. It is the owner's and Management's policy to provide reasonable accommodations in the apartment community's operational policies and procedures and to permit the Resident to make reasonable modifications that are necessary for the Resident and related to the disability for persons with a demonstrated disability. The Resident must request and obtain permission from the owner or Management for any accommodation or modification prior to implementing the same. In general, the cost or expense of physical modifications to the apartment or apartment community is the responsibility of the Resident, unless the applicable law requires the owner or Management to absorb or be responsible for the cost of such modifications. A Resident or occupant with a demonstrated disability is allowed to have a service animal to assist with the person's disability. A disabled Resident or occupant may be allowed to have a commonly accepted domestic dog, cat, or other convenience animal which has not been trained as a service animal only under limited conditions, but such animals will not be allowed if they have a history of dangerous, vicious, or unsafe behavior or are considered to be unsafe, dangerous, or vicious in nature.

8.  **Fire and Other Casualty.**  This lease will end if the storage area is rendered unusable due to fire as long as the fire was not caused by or the responsibility of Resident or Resident's occupants, family, social guests, or invitees. If Resident or his occupants, family, social guests, or invitees were responsible for the fire and the premises are unfit or unsafe for use, then Resident must vacate the storage area and will still remain liable for the rent and damages Management shall have the right to terminate the occupancy, use, or lease of the storage area by Resident if Resident or Resident's occupants, family,

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #1310
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

social guests, or invitees caused or were responsible for causing a fire to the storage area or any other portion of the apartment community. Resident may be eligible for lease another storage area in the apartment community if the Resident is qualified, there is a suitable storage area available, and Resident or Resident's occupants, family, social guests, and invitees did not cause the fire.

Resident is responsible for the cost of repair, replacement cost, and all expenses required to repair or replace the storage area, equipment, building, or property damaged by a fire which Resident or Resident's occupants, family, social guests, or invitees caused. Resident is liable to and shall indemnify, defend, and hold harmless Management and the owner for any damages or repairs caused by a fire which was caused by Resident or Resident's occupants, family, social guests, and invitees.

This lease shall end if the storage area is destroyed or otherwise rendered unsafe or unusable due to an Act of God or any other catastrophic event or casualty that was not the responsibility of Resident or Resident's occupants, family, social guests, or invitees.

The Resident shall not continue to occupy or use a storage area which is rendered unsafe or unusable due to fire, Act of God, or other catastrophic casualty and must remove all personal property and return possession to Management.

9.   **HOLD OVER:**   Resident shall remove all resident's property and deliver possession of the storage area in a clean condition and good order and repair to Management upon termination or expiration of this agreement. In the event the Resident fails to vacate the premises after termination, non-renewal or expiration of this rental agreement, then Resident shall pay Management an amount equal to two times the existing rental rate, prorated by the day for each day held over and beyond the termination or expiration of this agreement in addition to the other damages provided for under this agreement. After the termination or expiration of this agreement, Resident shall be deemed to be a tenant at sufferance.

10.   **RIGHT OF ACCESS:**   Management shall have the right of access to said storage area, without notice, for inspection and maintenance during reasonable hours. In case of emergency, Management may enter at any time to protect life and prevent damage to the property.

11.   **USE PROVISION:**   The storage area shall be used by Resident for storage of personal property only and shall be occupied and used only by the undersigned Residents. The storage area shall be used only for storage of Resident's personal property in accordance with the provisions of the Apartment Rental Contract and Community Rules in effect or adopted or amended by Management hereafter. The storage area shall not be used for habitation, occupancy by pets or any animals, or storage of hazardous materials. Said storage area shall be used so as to comply with all federal, state, county, and municipal laws and ordinances. Resident shall not use the storage area nor permit it to be used in an unsafe manner nor in any disorderly, disruptive, abusive, or unlawful manner nor in any manner so as to interfere with any other Resident's or person's use and quiet enjoyment of the apartment community or the storage area. A violation of this paragraph shall be a material breach of this rental agreement and constitute a ground for terminating the Apartment Rental Contract and Resident's right of possession to said storage area. Resident shall be responsible and liable for the conduct of his occupants, family, social guests, and invitees with respect to use of said storage area.

12.   **Property Loss, Insurance, and Crime.**   Management and the apartment owner shall not be liable for damage, theft, vandalism, or other loss of any kind to Resident's or his occupant's personal property, unless such is due to Management's gross negligence or intentional misconduct. Management and the apartment owner shall not be liable to Resident for crimes, injuries, loss, or damage due to criminal acts of other parties.

Resident should purchase property insurance for loss of or damage to Resident's own personal property or motor vehicle. Management is not liable for any loss or damages to Resident's personal property due to theft, vandalism, bursting or leaking pipes, fire, windstorm, hail, flooding, rain, lightening, tornadoes, hurricanes, water leakage, snow, ice, running water, or overflow of water or sewage. Management shall not be liable for any injury or damage caused by such occurrences, and Resident agrees to look solely to his insurance carrier for reimbursement of his losses for such events.

Management does not market, advertise, represent, offer, or provide security or law enforcement services which will prevent crime or protect Resident or Resident's personal property. Management and the owner do not represent or guarantee that the Resident is safe from crime in the neighborhood or from crime in the apartment or apartment community. Resident agrees to look solely to public law enforcement, emergency services, or fire services for police, emergency, fire, security, or protection services.

Resident acknowledges that he or she has an obligation to exercise due care for his or her own safety and welfare at all times and that Management is not liable to Resident for the criminal acts of other persons. Resident agrees that he or she will not and cannot rely on the existence or absence of security equipment or personnel as a representation of safety from crime and understands that he or she must be vigilant and exercise caution for their personal safety at all times. Resident waives and releases the apartment owner and Management for any liability, injury, loss, or damages related to crimes committed by other persons against Resident or related to allegations that the owner or Management were negligent or failed to provide security or protection to prevent crime.

13.   **PETS, SERVICE, and ASSISTIVE ANIMALS:**   No pets, service, or assistive animals of any kind shall be permitted to occupy said storage area. The storage area cannot be used to house or keep an animal.

14.   **INDEMNIFICATION:**   Resident releases management from liability for and agrees to indemnify management against all losses incurred by management as a result of (a) resident's failure to fulfill any condition of this agreement; (b) any damage or injury happening in or about the storage area to resident's occupants, family, social guests, invitees or licensees or such person's property, except where such is due solely to landlord's gross negligence; (c) resident's failure to comply with any requirements imposed by any governmental authority; (d) any judgment, lien, fine or other encumbrance filed or assessed against management or the storage area as a result of resident's acts or omissions; and (e) any negligence of resident.

15.   **FAILURE OF MANAGEMENT TO ACT:**   Failure of management to insist upon strict compliance with the terms of this agreement shall not constitute a waiver of management's rights to act on any violation.

16.   **REMEDIES CUMULATIVE:**   All remedies under this agreement or by law or in equity shall be cumulative. In a civil suit or dispossessory warrant for any breach of this agreement, the prevailing party shall be entitled to attorney's fees in the amount of fifteen percent of principal and interest owing and all expenses of litigation, including, but not limited to, court costs, dispossessory warrant costs and administrative filing fees.

17.   **NOTICES:**   Any notice required by this agreement shall be in writing and shall be deemed to be given if delivered personally or mailed by first class mail or by registered or certified mail, (a) if to resident, to the apartment or to the last known address of resident; (b) if to management, to the office of management or such other place as management may designate.

18.   **REPAIRS:**   Resident accepts storage area in "as is" condition as suited for the use intended. Resident understands and agrees that the storage area will be under the exclusive custody and control of resident and agrees to keep the same in a clean, unsightly and sanitary condition. If any damage, beyond normal wear and tear, is caused by Resident or Residents occupants, family, social guests, or invitees, then Resident shall be liable for all such damages which shall be due as additional rent the cost to repair or replace such damage, and payment shall be due with the next month's rent.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #1310
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

19. **ABANDONMENT:** Resident(s) agree not to abandon said storage area. Management shall have the sole discretion to determine those circumstances under which it deems the storage area to be abandoned and shall have the right, without notice, to store or dispose of any personal property left in the storage area or community premises by Resident. Management shall also have the right to dispose of any personal property remaining on the premises after termination of this rental agreement or after termination of resident's right to possession of said garage or space. Resident agrees that Management shall have no liability for any action taken to secure said storage area, obtain possession, or dispose of any personal property which Management deems to have been abandoned on the community premises. Resident agrees that he has consented to this provision and that a determination of the circumstances under which property is deemed to have been abandoned is purely a contractual matter, and any alleged breach on the part of Management shall not give rise to a claim in tort or for punitive damages.

20. **MORTGAGEE'S RIGHTS:** Resident's rights under this contract shall at all times be automatically junior and subject to any deed to secure debt which is now or shall hereafter by placed on premises of which storage area or apartment is a part; if requested, resident shall execute promptly any certificate that management may request to specifically implement the subordination of this paragraph.

21. **DEFAULT:** A default in the terms of the Apartment Rental Agreement shall also constitute a default in the terms of this Storage Area Rental Contract, giving Management all rights and remedies afforded under this agreement or as provided at law and in equity. If Resident fails to pay any rent or other charges as and when due hereunder, or if Resident abandons the storage area or fails to perform any of his obligations hereunder, then, upon the happening of said events, Resident shall be in default hereunder and Management may, at its option, terminate this agreement or Resident's right of possession by written notice to Resident. Resident shall surrender possession of the storage area to Management upon the effective date of such termination notice and Resident shall be liable to Management for, and shall indemnify management against, all rent loss and other expenses (for reletting, refurbishing, cleaning or otherwise making the storage area suitable for reletting) suffered or incurred by Management as a result of Resident's default and the termination of this agreement. Notwithstanding the commencement of a dispossessory proceeding and the issuance of a writ of possession on account of any default by Resident, Resident shall remain liable for all rent and other charges accrued through the date on which possession is obtained by management and shall continue to be liable for any rental accruing thereafter until the earlier of (a) the expiration of the terms of this lease; or (b) the re-rental of the storage area.

22. **INCORPORATION BY REFERENCE OF OTHER AGREEMENTS OR ADDENDA:** Resident(s) acknowledge and agree that the terms and conditions of the Apartment Rental Contract and Community Rules are incorporated by reference herein, whether separately signed by the parties or not. Violation of any of said provisions shall give Management the right to terminate Resident's right to possession of said storage area, the right to remove at Resident(s)' expense any personal property in such storage space and any other rights and remedies afforded at law or in equity. A violation or breach of any terms and provisions of this Storage Area Rental Contract shall also constitute a default under the Apartment Rental Agreement.

23. **NO REPRESENTATION OF PROVIDING SECURITY:** Resident(s) acknowledge and agree that no representations, covenants, or warranties, either express or implied, exist or have been made by the owner or Management that security devices or security personnel are, have been, or will be provided to protect Resident(s) or their property from crime to their person or property either inside the storage area or on the apartment community premises. Management and owner are not insurers of Resident(s)' safety or the safety of Resident'(s) personal property. Resident(s) acknowledge and agree that the storage area is an amenity and convenience for protection from the weather and natural elements, and that the right to store personal property in the storage area does not provide any added protection against crimes to the Resident(s) or their personal property. Resident(s) agrees to lock his or her storage area at all times. Resident(s) acknowledge and agree that they have been advised to purchase property loss insurance on his or her personal property. Resident(s) acknowledges and understands that he or she has a duty to exercise care for his or her own safety at all times and that neither the owner or Management are liable for criminal acts of others persons.

24. **AUTHORITY FOR REMOVAL OF PERSONAL PROPERTY:** Resident(s) agree that they shall not store personal property in any other storage area than the one assigned and rented to them for their exclusive use. Resident(s) shall promptly report to Management any attempted unauthorized entry or damages to the storage area or Resident's personal property.

25. **RESIDENT LIABLE FOR OCCUPANTS, FAMILY, SOCIAL GUESTS, & INVITEES:** All terms and provisions of this agreement shall apply to both Resident(s) and Resident(s) family, occupants, social guests, and invitees. Resident(s) agree to communicate and explain all storage area rules and regulations and the terms of this Storage Area Rental Contract to their family, occupants, social guests, and invitees. Resident shall be liable for any damages or loss incurred by Management or owner due to the conduct, negligence, acts, or failure to act of Resident's family, occupants, social guests, and invitees.

26. **REMOVAL OF PERSONAL PROPERTY UPON VIOLATION:** Resident(s) acknowledges and agrees that the failure to pay storage rent for rental of the storage area when due, violation of this Storage Area Rental Agreement, violation of any of the Apartment Rental Agreement provisions or Addenda shall give Management the right to immediate removal of any personal property at the Resident's expense without the requirement of any written or oral notice or warning whatsoever. In addition to Management's right to remove said vehicle in the event of a default, Management shall also have the right to terminate this Storage Area Rental Contract or Resident(s)' right to use and possession of said storage area and to recover all rents and other charges which are or may come due. Neither of Resident's personal property nor termination of the right to use and possess the storage area shall relieve Resident(s) of liability for rent and other charges which have accrued nor for subsequent rent which may come due up until such time as the storage area is re-let. Management shall not be required to file any suit or legal proceeding to enforce its right of removal of Resident's personal property from the storage area, unless otherwise required by state law. Management and owner shall not be required to make an election of which remedies they will pursue, and all remedies for a breach shall be cumulative.

27. Resident agrees to abide by all storage rules established by Management. Resident shall not store anything that is unsafe, dangerous, hazardous, or noxious.

28. **MANAGEMENT'S PERMISSION OR CONSENT:** If any provision of this contract requires the written permission or consent of Management as a condition to any act of resident, such written permission or consent may be granted or withheld in the sole discretion of management, may contain conditions as management deems appropriate and shall be effective only so long as resident complies with such conditions. Moreover, any written permission or consent given by Management to Resident may be modified, revoked or withdrawn by Management at any time, at Management's sole discretion, upon reasonable written notice to Resident.

29. **GENDER:** In all references herein to Resident, the use of the singular number is intended to include the appropriate number as the text of this lease may require, and all gender references to male or female are intended to be gender neutral.

30. **NO ESTATE IN LAND:** This agreement creates only the relationship of a license between the Management and Resident. Resident has a usufruct only and not an estate for years; and no estate shall pass out of Management.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form #1310
All Rights Reserved

page 3 of 4

☑ Blue Moon eSignature Services Document ID: 259386354

31. **ENTIRE AGREEMENT:**   This agreement and any attached addenda constitute the entire agreement between the parties and no oral statements shall be binding.

32. **JOINT AND SEVERAL LIABILITY:**   Each person who signs this contract as a Resident understands and agrees that their liability hereunder is both joint and several.

33. **AGENCY DISCLOSURE:**   Management is acting on behalf of the owner of the apartment and in connection therewith receives compensation from the owner.

34. **SPECIAL STIPULATIONS:**   The following stipulations shall control in the event of conflict with any of the foregoing:

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person or by a person duly authorized the day and year above written.

Signatures of Parties:

Owner or Management

**Atler at Brookhaven Apartments Holdings, LLC**
_____
Name of Owner or Management Company

As Landlord

By: *Nicole McLawrin*
_____
Signature of Management Representative Name

As: **Community Manager** _____ (Job Title)

Residents

*Bassey Enun* _____ (Resident Signature)
Printed Name of Resident: **Bassey Enun** _____

*Ford* _____ (Resident Signature)
Printed Name of Resident: **Dennis Ford** _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #1310
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354


**GEORGIA**
APARTMENT ASSOCIATION

| PARKING GARAGE OR SPACE RENTAL CONTRACT |

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

Date of Contract: __April 6, 2021__

This Parking Garage or Space Rental Contract is between __Atler at Brookhaven Apartments Holdings LLC__
("Management") and __Bassey Enun, Dennis Ford__

Management leases to Resident, and Resident rents from Management, the Parking Garage or Parking Space No. _____ (Resident), located at __3833 Peachtree Road # 0606, Atlanta__ _____, [Address] Georgia.
If the Resident has also entered into an Apartment Rental Contract with Management, then this parking contract shall become an addendum to the Apartment Rental Contract.

1. **TERM:** The initial term of this lease shall be __fifteen months__ , beginning at 12 noon, __February 12th__ , __2020__ and ending at 12 noon, __May 11th__ , __2021__ .

2. **POSSESSION:** If there is a delay in delivery of possession by management, rent shall be abated on a daily basis until possession is granted. If possession is not granted within seven (7) days after the beginning day of initial terms, then resident may void or rescind this agreement and have full refund of any deposit. Management shall not be liable for damages for the delay in delivery of possession. Resident shall give Management written notice of the election to void or rescind this contract.

3. **PARKING RENT:** Rent is payable monthly to Management in the sum of __sixty and 00/100__ Dollars ($__60.00__ ) per month on the first day of each month during the initial or extended term of this lease at the office of management or such other place as management may designate. All rent shall be paid by personal check, cashier's check, certified funds, or money order. Management shall have the right to establish or provide for payment by credit card, debit card, or electronic funds transfer, but Resident does not have the right to make payments by these means unless specifically authorized by Management. Management shall have the right to refuse any tender of payment in cash. No third party checks will be accepted or considered a proper tender or payment of rent. Any additional sums or charges due from resident because of a breach or violation of this parking garage rental agreement shall be due as additional rent. Such additional sums or charges shall include, but are not limited to, damages exceeding normal wear and tear to the parking garage when such damages are caused by resident or resident's family, occupants, guests, or invitees.

4. **LATE PAYMENTS AND RETURNED CHECKS:** Time is of the essence of this agreement. After the __3__ day of the month, rent shall be late, and a late charge of $_____ shall be due as additional rent. If Management elects to accept late rent, Resident shall tender all late rents, dispossessory warrant costs, and administrative filing fees to Management only by cashier's check, certified check or money order. In the event Resident's parking rent check is dishonored by the bank, resident shall pay Management $__30.00__ as an insufficient check service fee plus an additional fee equal to the fee charged to Management by the bank, in addition to rent and late charges.

5. **RENEWAL or EXTENSION TERM:** Either party may terminate this agreement at the end of the initial term by giving the other party __60__ days written notice prior to the end of the term. If notice is not given, then this agreement will be extended on a (check on of the following boxes) ☒ Month-to-Month (one month at a time) ☐ Bi-Monthly (2 months at a time) basis with all terms remaining the same until terminated, as of the last day of a calendar month, by either party upon __30__ days written notice. A 30 day written notice is required to end a Month-to-Month extension, and a 60 day written notice is required to end a Bi-Monthly Renewal. Resident agrees that at the end of the initial term of this residential agreement, (as specified in paragraph 1), or at any time thereafter, Management shall have the right to increase the rent due under paragraph 3 by giving the Resident a written notice at least 15 days prior to the notice required to non-renew the parking rental contract, and such increase shall not terminate this parking rental contract. Unless otherwise allowed by Management, the parking contract shall terminate at the end of a calendar month.

6. **NO ASSIGNMENT OR SUBLETTING:** Resident shall not sublet the parking or garage space or assign this lease without prior written consent of management.

7. **DISCLOSURE:** __First Communities Management Inc__ , whose address is __1200 Lake Hearn Dr Suite 200 Atlanta GA 30319__ is authorized to manage the apartment community and the parking garage or space leased. Owner or agent for service of legal notices and lawsuits is __Dana Miles__ , Whose address is __202 Tribble Gap Rd Suite 200 Cumming GA 30040__ The Managing Agent's Corporate Broker's name and license number as required to be disclosed by the rules of the Georgia Real Estate Commission (Ga.R. & Reg. 520-1-.10) is __First Communities Management, INC.__ [Name of Broker] and __H-15679__ [GREC License No.].

**Equal Housing Opportunity Policy.** The apartment owner and Management provide equal housing opportunity for qualified applicants and do not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other legally recognized status in the State of Georgia. It is the owner's and Management's policy to provide reasonable accommodations in the apartment community's operational policies and procedures and to permit the Resident to make reasonable modifications that are necessary for the Resident and related to the disability for persons with a demonstrated disability. The Resident must request and obtain permission from the owner or Management for any accommodation or modification prior to implementing the same. In general, the cost or expense of physical modifications to the apartment or apartment community is the responsibility of the Resident, unless the applicable law requires the owner or Management to absorb or be responsible for the cost of such modifications. A Resident or occupant with a demonstrated disability is allowed to have a service animal to assist with the person's disability. A disabled Resident or occupant may be allowed to have a commonly accepted domestic dog, cat, or other convenience animal which has not been trained as a service animal only under limited conditions, but such animals will not be allowed if they have a history of dangerous, vicious, or unsafe behavior or are considered to be unsafe, dangerous, or vicious in nature.

8. **Fire and Other Casualty.** This lease will end if the parking garage or space is rendered unusable due to fire as long as the fire was not caused by or the responsibility of Resident or Resident's occupants, family, social guests, or invitees. If Resident or his occupants, family, social guests, or invitees were responsible for the fire and the premises are unfit or unsafe for use, then Resident must vacate the parking garage or space and will still remain liable for the rent and damages.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form # 9556
All Rights Reserved

| ✓ Blue Moon eSignature Services Document ID: 259386354 |

Management shall have the right to terminate the occupancy, use, or lease of the parking garage or space by Resident if Resident or Resident's occupants, family, social guests, or invitees caused or were responsible for causing a fire to the parking garage or space or any other portion of the apartment community. Resident *may* be eligible for lease another parking garage or space in the apartment community if the Resident is qualified, there is a suitable parking garage or space available, and Resident or Resident's occupants, family, social guests, and invitees did not cause the fire.

Resident is responsible for the cost of repair, replacement cost, and all expenses required to repair or replace the parking garage or space, equipment, building, or property damaged by a fire which Resident or Resident's occupants, family, social guests, or invitees caused. Resident is liable to and shall indemnify, defend, and hold harmless Management and the owner for any damages or repairs caused by a fire which was caused by Resident or Resident's occupants, family, social guests, and invitees.

This lease shall end if the parking garage or space is destroyed or otherwise rendered unsafe or unusable due to an Act of God or any other catastrophic event or casualty that was not the responsibility of Resident or Resident's occupants, family, social guests, or invitees. The Resident shall not continue to occupy or use a parking garage or space which is rendered unsafe or unusable due to fire, Act of God, or other catastrophic casualty and must remove all personal property and return possession to Management.

9. **HOLD OVER:**   Resident shall remove all resident's property and deliver possession of the parking or garage space in a clean condition and good order and repair to Management upon termination or expiration of this agreement. In the event the Resident fails to vacate the premises after termination, non-renewal or expiration of this rental agreement, then Resident shall pay Management an amount equal to two times the existing rental rate, prorated by the day for each day held over and beyond the termination or expiration of this agreement in addition to the other damages provided for under this agreement. After the termination or expiration of this agreement, Resident shall be deemed to be a tenant at sufference.

10. **RIGHT OF ACCESS:**   Management shall have the right of access to said parking or garage space, without notice, for inspection and maintenance during reasonable hours. In case of emergency, Management may enter at any time to protect life and prevent damage to the property.

11. **USE PROVISION:**   The parking garage or parking space shall be used by Resident for vehicle parking only and shall be occupied and used only by the undersigned Residents. The garage and parking space shall be used only for parking Resident's own motor vehicle in accordance with the provisions of the Apartment Rental Contract, Community Rules, and any Parking Rules and Regulations in effect or adopted or amended by Management hereafter. The parking garage or space shall not be used for habitation or storage of any items of personal property but solely for parking and garaging of approved motor vehicles. Said garage and parking space shall be used so as to comply with all federal, state, county, and municipal laws and ordinances. Resident shall not use the Garage or parking space nor permit it to be used in an unsafe manner nor in any disorderly, disruptive, abusive, or unlawful manner nor in any manner so as to interfere with any other Resident's or person's use and quiet enjoyment of the apartment community, the garage or their parking space. A violation of this paragraph shall be a material breach of this rental agreement and constitute a ground for terminating the Apartment Rental Contract and Resident's right of possession to said garage and parking space. Resident shall be responsible and liable for the conduct of his occupants, family, social guests, and invitees with respect to use of said garage or parking space.

12. **Property Loss, Insurance, and Crime.**   Management and the apartment owner shall not be liable for damage, theft, vandalism, or other loss of any kind to Resident's or his occupant's motor vehicle or personal property, unless such is due to Management's gross negligence or intentional misconduct. Management and the apartment owner shall not be liable to Resident for crimes, injuries, loss, or damage due to criminal acts of other parties.

Resident *must* purchase a motor vehicle insurance policy and renter's insurance policy that provides *liability insurance* for negligent or accidental acts and omissions for which the Resident may be liable in causing injury or damage to the owner, Management, or others.

Resident *should* purchase *property* insurance for loss of or damage to Resident's own personal property or motor vehicle. Management is not liable for any loss or damages to Resident's motor vehicle or personal property due to theft, vandalism, bursting or leaking pipes, fire, windstorm, hail, flooding, rain, lightening, tornadoes, hurricanes, water leakage, snow, ice, running water, or overflow of water or sewage. Management shall not be liable for any injury or damage caused by such occurrences, and Resident agrees to look solely to his insurance carrier for reimbursement of his losses for such events.

Management does not market, advertise, represent, offer, or provide security or law enforcement services which will prevent crime or protect Resident or Resident's personal property. Management and the owner do not represent or guarantee that the Resident is safe from crime in the neighborhood or from crime in the apartment or apartment community. Resident agrees to look solely to public law enforcement, emergency services, or fire services for police, emergency, fire , security, or protection services.

Resident acknowledges that he or she has an obligation to exercise due care for his or her own safety and welfare at all times and that Management is not liable to Resident for the criminal acts of other persons. Resident agrees that he or she will not and cannot rely on the existence or absence of security equipment or personnel as a representation of safety from crime and understands that he or she must be vigilant and exercise caution for their personal safety at all times. Resident waives and releases the apartment owner and Management for any liability, injury, loss, or damages related to crimes committed by other persons against Resident or related to allegations that the owner or Management were negligent or failed to provide security or protection to prevent crime.

13. **PETS, SERVICE, and ASSISTIVE ANIMALS:**   No pets, service, or assistive animals of any kind shall be permitted in said garage or parking space without prior written consent of management and a Pet, Service, and Assistive Animal Addendum. The garage or parking space cannot be used to house or keep an animal.

14. **INDEMNIFICATION:**   Resident releases management from liability for and agrees to indemnify management against all losses incurred by management as a result of (a) resident's failure to fulfill any condition of this agreement; (b) any damage or injury happening in or about garage or parking space to resident's invitees or licensees or such person's property, except where such is due solely to landlord's negligence; (c) resident's failure to comply with any requirements imposed by any governmental authority; (d) any judgment, lien, fine or other encumbrance filed or assessed against management or the apartment as a result of resident's acts or omissions; and (e) any negligence of resident.

15. **FAILURE OF MANAGEMENT TO ACT:**   Failure of management to insist upon strict compliance with the terms of this agreement shall not constitute a waiver of management's rights to act on any violation.

16. **REMEDIES CUMULATIVE:**   All remedies under this agreement or by law or in equity shall be cumulative. In a civil suit or dispossessory warrant for any breach of this agreement, the prevailing party shall be entitled to attorney's fees in the amount of fifteen percent of principal and interest owing and all expenses of litigation, including, but not limited to, court costs, dispossessory warrant costs and administrative filing fees.

17. **NOTICES:**   Any notice required by this agreement shall be in writing and shall be deemed to be given if delivered personally or mailed by first class mail or by registered or certified mail, (a) if to resident, to the apartment or to the last known address of resident; (b) if to management, to the office of management or such other place as management may designate.

18. **REPAIRS:**   Resident accepts garage or parking space in "as is" condition as suited for the use intended. Resident understands and agrees that the garage or parking space will be under the exclusive custody and control of resident and agrees to keep the same in a clean, sightly and sanitary condition. If any damage, beyond normal wear and tear, is caused by Resident or Residents occupants, family, social guests, or invitees, then Resident shall be liable for all such damages which shall be due as additional rent the cost to repair or replace such damage, and payment shall be due with the next month's rent.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. – Form # 9556
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

19. **ABANDONMENT:** Resident(s) agree not to abandon said garage or parking space. Management shall have the sole discretion to determine those circumstances under which it deems the garage or parking space to be abandoned and shall have the right, without notice, to store or dispose of any motor vehicle or personal property left in the garage or leased space or community premises by resident. Management shall also have the right to dispose of any motor vehicle or personal property remaining on the premises after termination of this rental agreement or after termination of resident's right to possession of said garage or space. Resident agrees that Management shall have no liability for any action taken to secure said garage or parking space, obtain possession, or dispose of any motor vehicle or personal property which Management deems to have been abandoned on the community premises. Resident agrees that he has consented to this provision and that a determination of the circumstances under which property is deemed to have been abandoned is purely a contractual matter, and any alleged breach on the part of Management shall not give rise to a claim in tort or for punitive damages.

20. **MORTGAGEE'S RIGHTS:** Resident's rights under this lease shall at all times be automatically junior and subject to any deed to secure debt which is now or shall hereafter by placed on premises of which garage, parking space, or apartment is a part; if requested, resident shall execute promptly any certificate that management may request to specifically implement the subordination of this paragraph.

21. **DEFAULT:** A default in the terms of the Apartment Rental Agreement shall also constitute a default in the terms of this Parking Garage or Space Rental Contract, giving Management all rights and remedies afforded under this agreement or as provided at law and in equity. If Resident fails to pay any rent or other charges as and when due hereunder, or if Resident abandons the garage or parking space or fails to perform any of his obligations hereunder, then, upon the happening of said events, Resident shall be in default hereunder and Management may, at its option, terminate this agreement or Resident's right of possession by written notice to Resident. Resident shall surrender possession of the garage or parking space to management upon the effective date of such termination notice and Resident shall be liable to Management for, and shall indemnify management against, all rent loss and other expenses (for reletting, refurbishing, cleaning or otherwise making the garage or parking space suitable for reletting) suffered or incurred by Management as a result of Resident's default and the termination of this agreement. Notwithstanding the commencement of a dispossessory proceeding and the issuance of a writ of possession on account of any default by Resident, resident shall remain liable for all rent and other charges accrued through the date on which possession is obtained by management and shall continue to be liable for any rental accruing thereafter until the earlier of (a) the expiration of the terms of this lease; or (b) the re-rental of the garage or parking space.

22. **INCORPORATION BY REFERENCE OF OTHER AGREEMENTS OR ADDENDA:** Resident(s) acknowledge and agree that the terms and conditions of the Apartment Rental Contract, Community Rules, and/or Parking Rules and pertaining to Vehicles and Parking, are incorporated by reference herein, whether separately signed by the parties or not. Violation of any of said provisions shall give Management the right to terminate Resident(s)'s right to possession of said parking space, the right to tow or remove at Resident(s)' expense any vehicles parked in said garage or parking space, and any other rights and remedies afforded at law or in equity. A violation or breach of any terms and provisions of this Parking Garage or Space Rental Contract shall also constitute a default under the Apartment Rental Agreement.

23. **NO REPRESENTATION OF PROVIDING SECURITY:** Resident(s) acknowledge and agree that no representations, covenants, or warranties, either express or implied, exist or have been made by the owner or Management that security devices or security personnel are, have been, or will be provided to protect Resident(s)'or their property from crime to their person or property either inside the garage or on the apartment complex premises. Management and owner are not insurers of Resident(s)' safety or the safety of Resident(s)' car and property. Resident(s) acknowledge and agree that garage parking is an amenity and convenience for protection from the weather and natural elements, and that the right to park inside the garage does not provide any added protection against crimes to the Resident(s) or their personal property. Resident(s) agrees to lock his or her car at all times it is left unattended in the garage and agrees not to leave valuables or other personal items inside the car. Resident(s) acknowledge and agree that they have been advised that they must have and maintain the minimum liability insurance required to be carried by state law on any vehicle parked or operated in said garage and shall look solely to Residents insurance carrier for payment of any damages sustained to Resident(s) automobile, vehicle, or personal property. Resident(s) acknowledges and understands that he or she has a duty to exercise care for his or her own safety at all times and that neither the owner or Management are liable for criminal acts of other persons.

24. **AUTHORITY FOR REMOVAL OF VEHICLES:** Resident(s) agree that they shall not park in any garage or space other than the one assigned and rented to them for their exclusive use. Resident(s) shall promptly report to Management any automobiles, vehicles or other property which are improperly parked or left in Resident(s)' assigned space. Resident(s) agree that they have no authority on their own initiative to call a towing service or cause another Resident's, occupant's, social guest's, or invitee's automobile, vehicle, or property to be removed from or towed from Resident(s)' assigned garage or space. Only Management shall be authorized to have a vehicle or other property removed which is in violation of the terms and provisions of this or any other Parking Garage Rental Contract.

25. **RESIDENT LIABLE FOR OCCUPANTS, FAMILY, SOCIAL GUESTS, & INVITEES:** All terms and provisions of this agreement shall apply to both Resident(s) and Resident(s) family, occupants, social guests, and invitees. Resident(s) agree to communicate and explain all parking rules and regulations and the terms of this Parking Garage or Space Rental Contract to their family, occupants, social guests, and invitees. Resident shall be liable for any damages or loss incurred by Management or owner due to the conduct, negligence, acts, or failure to act of Resident's family, occupants, social guests, and invitees.

26. **REMOVAL OF VEHICLE UPON VIOLATION:** Resident(s) acknowledges and agrees that the failure to pay parking rent for the garage or space when due, violation of this Parking Garage Rental Agreement, violation of any of the Apartment Rental Agreement provisions or Addenda pertaining to parking or operation, storage, and maintenance of any automobile, vehicle, or other property shall give Management the right to immediate towing, removal, and storage of any automobiles, vehicles or personal property at the owner's or operator's expense without the requirement of any written or oral notice or warning whatsoever. In addition to Management's right to remove said vehicle in the event of a default, Management shall also have the right to terminate this Parking Garage or Space Rental Contract or Resident(s)' right to use and possession of said garage or space and to recover all rents and other charges which are or may come due. Neither towing of an automobile, vehicle or property nor termination of the right to use and possess a garage or parking space shall relieve Resident(s) of liability for rent and other charges which have accrued nor for subsequent rent which may come due up until such time as the garage space is re-let. Management shall not be required to file any suit or legal proceeding to enforce its right of towing or removal of a vehicle or property, unless otherwise required by state law. Management and owner shall not be required to make an election of which remedies they will pursue, and all remedies for a breach shall be cumulative.

27. Resident agrees to abide by all parking rules established by Management. If Management has designated spaces for Resident to park or areas for boats, trailers, campers or other vehicles, Resident agrees to park only in those garage or space so designated. Non-operable, abandoned or unauthorized vehicles are not permitted on the apartment community premises. Any such non-operable, abandoned or unauthorized vehicle may be removed by Management at the expense of Resident or other person owning same, for storage or public or private sale, at Management's option, and the Resident or person owning same shall have no right of recourse against management therefore. The definition of non-operable, abandoned, or unauthorized vehicles shall be liberally construed in favor of Management. In addition, but not limited to, their generally accepted definitions, "unauthorized" and "non-operable" shall also mean vehicles which:

   a.   Are noxious, offensive, unsightly, unpleasant or unkempt such as could reasonably affect the appearance or rental marketability of the property or such as could reasonably cause embarrassment, discomfort, annoyance, or nuisance to Management, owners or other residents;

   b.   Are causing damage to the apartment community or the parking lot, including but not limited to, oil or gas leaks, seepage or spills and motorcycle kickstands which sink into the pavement;

Copyright © 6/2019 by Atlanta Apartment Association, Inc. – Form # 9556
All Rights Reserved

c. Are not registered with Management as required;
d. Are not properly parked between parallel lines or other lines marking spaces for parking;
e. Are blocking access to any prohibited areas, designated "no parking" areas, fire lanes, fire hydrants, ingress and egress travel lanes, entrances, exists, trash dumpsters or compactors or maintenance or service areas;
f. Are left on blocks or jack stands;
g. Appear to be in a state of disrepair;
h. Appear to be incapable of self-propelled movement;
i. Do not have a proper license tag, current license decal validation sticker, current state emissions inspection sticker or minimum applicable motor vehicle insurance; or
j. Are unsafe or dangerous.

Unauthorized, non-operable or abandoned vehicles shall not be kept, placed, stored, parked, maintained or operated in any area of the apartment community. The term "vehicle" includes, but is not limited to, both motorized and non-motorized vehicles such as automobiles, trucks, vans, motorcycles, boats, trailers, campers, mobile homes, motorhomes, commercial trucks, buses and heavy motorized or mechanized equipment or vehicles. Management shall have the right to adopt additional rules and regulations upon reasonable notice to Resident. An "abandoned motor vehicle" shall include, but is not limited to, any vehicle, motor vehicle or trailer which has been left unattended on the apartment community property for a period of not less than thirty days without anyone having made a claim thereto.

28. **MANAGEMENT'S PERMISSION OR CONSENT:**   If any provision of this contract requires the written permission or consent of Management as a condition to any act of resident, such written permission or consent may be granted or withhold in the sole discretion of management, may contain conditions as management deems appropriate and shall be effective only so long as resident complies with such conditions. Moreover, any written permission or consent given by Management to Resident may be modified, revoked or withdrawn by Management at any time, at Management's sole discretion, upon reasonable written notice to Resident.

29. **GENDER:**   In all references herein to resident, the use of the singular number is intended to include the appropriate number as the text of this lease may require, and all gender references to male or female are intended to be gender neutral.

30. **NO ESTATE IN LAND:**   This agreement creates only the relationship of a license between the management and resident; resident has a usufruct only and not an estate for years; and no estate shall pass out of management.

31. **ENTIRE AGREEMENT:**   This agreement and any attached addenda constitute the entire agreement between the parties and no oral statements shall be binding.

32. **JOINT AND SEVERAL LIABILITY:**   Each person who signs this contract as a Resident understands and agrees that their liability hereunder is both joint and several.

33. **AGENCY DISCLOSURE:**   Management is acting on behalf of the owner of the apartment and in connection therewith receives compensation from the owner.

34. **DISCLOSURE OF TOWING COMPANY:**   Resident(s) acknowledge that _____
(name of towing company) located at _____ (address) is authorized to tow and/or remove any improperly parked or stored automobiles, vehicles, or property, and Resident(s) agree to pay for all costs of towing and storage. Resident acknowledges that it is solely his or her responsibility to retrieve said property if removed and that Resident's failure to do so may result in the sale of said property to pay towing and storage expenses. Management shall have the right to change or substitute another towing company from that named above and may notify Resident of such change at any time hereafter, either before or after removal of any vehicle.

35. **SPECIAL STIPULATIONS:**   The following stipulations shall control in the event of conflict with any of the foregoing:

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person or by a person duly authorized the day and year above written.

**Signatures of Parties:**
Management

Atler at Brookhaven Apartments Holdings, LLC
_____
Name of Owner or Management Company
As Landlord
By: *Nicole McLaurin*
_____
Signature of Management Representative Name

As: Community Manager _____ (Job Title)

**Residents**

*Bassey Enun*
_____ (Resident Signature)
Printed Name of Resident: Bassey Enun
*Ford*
_____ (Resident Signature)
Printed Name of Resident: Dennis Ford

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

_____ (Resident Signature)
Printed Name of Resident: _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form # 9556
All Rights Reserved

☑ Blue Moon eSignature Services Document ID: 259386354

Page 4 of 4



**Package Delivery Addendum**
*(Note: this addendum should be duplicated for signing by each resident individually vs. jointly signing one document.)*

Addendum date: <u>04/06/2021</u>, <u>Atler at Brookhaven Apartments</u>

_____ ["Management"] as Owner of
<u>Nicole McLaurin</u> as Agent for the Owner of <u>Atler at</u>
<u>Brookhaven</u> ["Community"] enters into this Service Billing Addendum to the
Apartment Rental Contract with <u>Bassey Enun, Dennis Ford</u>

_____ ["Resident"], pertaining to Apartment Number <u>0606</u> located at
<u>3833 Peachtree Road # 0606, Atlanta, GA 30319</u> [Address].
This addendum is part of the Apartment Rental Contract dated <u>04/06/2021</u> [Date of Lease] and
amends Paragraph 10 of the Apartment Rental Contract.

Community has a designated controlled access room for the delivery of and resident retrieval of packages [the "Facility"]. Resident is solely responsible for payment of all fees and charges relating to Resident's use of the Facility, and Resident gives Management a proxy or the right to select the service provider for the Facility. All fees or charges are non-refundable and are billed as additional charges.

Billing:  Facility services will be billed to Management and then to Resident.

Name of the Service Provider is: <u>HelloPackage by Package Solutions, Inc.</u>

1.  Resident acknowledges that (i) Management will not receive resident packages in the Community's Leasing Office; and (ii) the Community does not permit deliveries door to door. All Resident packages will be delivered exclusively to the Facility.

2.  Any package delivery exceptions, such as problems due to name mismatches, packages addressed to anyone other than registered residents, etc., will be handled in accordance with Management policy. Without limiting the foregoing, Management reserves the right to return packages to sender if they are not addressed to a registered resident or have not been retrieved within 21 days of receipt.

3.  Resident agrees to register with the Service Provider and maintain his or her Facility profile with current contact information.  At time of move in and/or separate request, Resident will provide his or her Facility validation code verifying to Management that he or she has registered with the Service Provider and, if applicable, remitted access fee payment.

4.  Resident understands a one-time registration fee of $20.00 will be charged to Resident's ledger and is due upon move in.

5.  Resident understands and hereby accepts that a charge of $3.50 per month will be added to Resident's ledger and due as additional rent for each month (or any portion of a month).

6.  Resident acknowledges that "user fees" will be charged for late package pick-up or storage fees, and for additional services that may be offered such as return package and outbound package services. Resident further acknowledges and accepts that a user fee of $2.00 per day will be charged for packages not picked up within 2 days of delivery to the Facility.

7.  Resident acknowledges that the Facility is under audio and video surveillance 24/7/365.

8.  Resident agrees that the Facility is a controlled access area, and that the Resident is only authorized to enter the Facility following notification from the Service Provider of a package delivery or, registration of a package for pick-up or return, which notice, or registration may include a single-use access/package retrieval code.

9.  The Service Provider and/or Management reserve the right to change fees, charges, billing cycle, method of billing, or method of calculating service fees and charges at any time upon 30 day's written notice to Resident.

☑ Blue Moon eSignature Services Document ID: 259386354

# E-SIGNATURE CERTIFICATE

*This certificate details the actions recorded during the signing of this Document.*



## DOCUMENT INFORMATION

| | |
|---|---|
| Status | Signed |
| Document ID | 259386354 |
| Submitted | 04/12/21 |
| Total Pages | 52 |
| Forms Included | Rental Contract (Up to 6 Residents), Extended Special Stipulations, Pet, Service, or Assistive Animal Addendum, Bed Bug Addendum, Mold and Mildew Addendum, Liquidated Damages Addendum, Community Rules and Regulations, Renter's Insurance Addendum, Crime Deterrence Housing Addendum, Crime Warning and Limitation of Liability Addendum, Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment, Utility Billing Addendum, Service Billing Addendum, Subletting, Short Term Rentals and Assignment Addendum, Fire Safety Information, Fire Safety Equipment Acknowledgment and Compliance Addendum, Rent Concession Addendum, Satellite Dish and Antenna Addendum, Atlanta Community Food Bank Addendum, Storage Area Rental Contract, Parking Garage or Space Rental Contract, HelloPackage Addendum |

## PARTIES

### Bassey Enun
signer key: 48a3ef253fc2ce55ee90b665b8c5db20
IP address: 73.82.233.195
signing method: Blue Moon eSignature Services
authentication method: eSignature by email basseyenun@yahoo.com
browser: Mozilla/5.0 (Macintosh; Intel Mac OS X 11_2_3) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.114 Safari/537.36



### Dennis Ford
signer key: 0649ed5210e68e63b6a79b35cc95ace2
IP address: 24.30.82.9
signing method: Blue Moon eSignature Services
authentication method: eSignature by email dennisallenford@gmail.com
browser: Mozilla/5.0 (Linux; Android 10; moto g stylus) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.105 Mobile Safari/537.36



### Nicole McLaurin
signer key: 8d4b76d7fb4b7048867d91222cec5ab0
IP address: 10.100.20.45
signing method: Blue Moon eSignature Services
authentication method: eSignature by email nmclaurin@firstcommunities.com
browser: PHP 7.3.27/SOAP

*Nicole McLaurin*

10. Resident's failure to pay any service bill, late fee, account establishment charge, monthly administrative fee, or monthly service fee is a material breach of this Addendum and the Apartment Rental Contract. Management shall have the same rights and remedies to enforce a default under this addendum as it has in the Apartment Rental Contract.

11. Management and the Service Provider are not liable for any loss or damage Resident may incur due to outages, interruptions, or fluctuations in services or damage or theft of packages unless such loss or damage is directly and proximately caused by Management's or the Service Provider's gross negligence. Resident may not withhold rent or utility and service payments because of an interruption in services or damage or theft of packages.

12. If any portion or provision of this Addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed, survive, and remain enforceable. The court shall interpret and construe the remaining portion of this Addendum so as to carry out the intent of the parties that Resident is responsible for payment of all services.

13. The provisions of the Apartment Rental Contract are by reference incorporated herein.

_Bassey Brian_
Signature of Resident

_Bob_
Signature of Resident

_____
Signature of Resident

_____
Signature of Resident

_____
Signature of Resident

_____
Signature of Resident

_Nicole McLaurin_
Signature of Agent for Owner or Management Company

✓ Blue Moon eSignature Services Document ID: 259386354

View Document

Exit

This document was signed 4/12/2021 10:19:02 10:19 AM (CDT)

## Signing Parties

| Name | Delivery Type | Signing Method | Status |
|---|---|---|---|
| Bassey Enun | basseyenun@yahoo.com | eSignature | ⊘ Complete 04/09/2021 11:25:45 |
| Dennis Ford | dennisallenford@gmail.com | eSignature | ⊘ Complete 04/09/2021 14:07:54 |

## Resident Ledger

Date: 12/11/2021

| Code | t0527645 | | Property | atierbh | Lease From | 05/12/2021 |
|------|----------|---|----------|---------|------------|------------|
| Name | Bassey Enun | | Unit | 0606 | Lease To | 05/11/2022 |
| Address | 3833 Peachtree Road # 0606 | | Status | Current | Move In | 02/13/2020 |
| | | | Rent | 1601.00 | Move Out | |
| City | Atlanta, GA 30319 | | Phone (H) | | Phone (W) | (706) 294-9856 |

| Date | Chg Code | Post Month | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|------------|-------------|--------|---------|---------|---------|
| 02/12/2020 | app | 02/2020 | Application Fee | 100.00 | | 100.00 | 29323925 |
| 02/12/2020 | admin | 02/2020 | Administration Fee | 249.00 | | 349.00 | 29323926 |
| 02/13/2020 | rent | 02/2020 | Rent for 17 days | 938.52 | | 1,287.52 | 29328851 |
| 02/21/2020 | app | 02/2020 | Application Fee | (100.00) | | 1,187.52 | 29344341 |
| 02/21/2020 | admin | 02/2020 | Administration Fee | (249.00) | | 938.52 | 29344342 |
| 02/21/2020 | transfer | 02/2020 | Transfer Fee | 250.00 | | 1,188.52 | 29344349 |
| 02/22/2020 | parking | 02/2020 | Parking Fee 8 days | 12.41 | | 1,200.93 | 29345917 |
| 02/24/2020 | | 02/2020 | chk# 6686604188 | | 1,287.52 | (86.59) | 14174571 |
| 03/01/2020 | rent | 03/2020 | Rental Income (03/2020) | 1,601.00 | | 1,514.41 | 29528552 |
| 03/01/2020 | parking | 03/2020 | Parking Fee (03/2020) | 45.00 | | 1,559.41 | 29528749 |
| 03/01/2020 | parking | 03/2020 | Parking Fee (03/2020) | 60.00 | | 1,619.41 | 29528750 |
| 03/01/2020 | parking | 03/2020 | Parking Fee 31 days | 60.00 | | 1,679.41 | 29638829 |
| 03/02/2020 | parking | 03/2020 | dupl entry | 105.00 | | 1,784.41 | 29638830 |
| 03/02/2020 | parking | 03/2020 | dupl entry | (210.00) | | 1,574.41 | 29638831 |
| 03/02/2020 | | 03/2020 | chk# 60222058 Debit Card On-Line Payment ; Web - Resident Services | | 1,574.41 | 0.00 | 14222044 |
| 04/01/2020 | rent | 04/2020 | Rental Income (04/2020) | 1,601.00 | | 1,601.00 | 29869648 |
| 04/01/2020 | parking | 04/2020 | Parking Fee (04/2020) | 60.00 | | 1,661.00 | 29869937 |
| 04/01/2020 | trash | 04/2020 | Trash Usage From 01-01-2020 to 02-29-2020 | 22.60 | | 1,683.60 | 29893047 |
| 04/01/2020 | vcrmet | 04/2020 | Electric VCR Meter Usage From 01-01-2020 to 02-29-2020 | 20.50 | | 1,704.10 | 29893448 |
| 04/01/2020 | water | 04/2020 | Water Usage From 01-01-2020 to 02-29-2020 | 80.72 | | 1,784.82 | 29893449 |
| 04/01/2020 | wtradmin | 04/2020 | New Account Fee Usage From 01-01-2020 to 02-29-2020 | 15.00 | | 1,799.82 | 29893450 |
| 04/01/2020 | wtradmin | 04/2020 | Water Admin Fee Usage From 01-01-2020 to 02-29-2020 | 9.75 | | 1,809.57 | 29893451 |
| 04/03/2020 | | 04/2020 | chk# 62527006 Debit Card On-Line Payment ; Web - Resident Services | | 1,809.57 | 0.00 | 14379002 |
| 05/01/2020 | trash | 05/2020 | Trash Usage From 03-01-2020 to 03-31-2020 | 39.88 | | 39.88 | 30178225 |
| 05/01/2020 | water | 05/2020 | Water Usage From 03-01-2020 to 03-31-2020 | 189.09 | | 228.97 | 30178226 |
| 05/01/2020 | wtradmin | 05/2020 | Water Admin Fee Usage From 03-01-2020 to 03-31-2020 | 9.75 | | 238.72 | 30178227 |
| 05/01/2020 | rent | 05/2020 | Rental Income (05/2020) | 1,601.00 | | 1,839.72 | 30220088 |
| 05/01/2020 | parking | 05/2020 | Parking Fee (05/2020) | 60.00 | | 1,899.72 | 30220280 |
| 05/05/2020 | | 05/2020 | chk# 0136 ;CHECKscan Payment | | 1,661.00 | 238.72 | 14526884 |
| 06/01/2020 | trash | 06/2020 | Trash Usage From 04-01-2020 to 04-30-2020 | 39.88 | | 278.60 | 30495806 |
| 06/01/2020 | water | 06/2020 | Water Usage From 04-01-2020 to 04-30-2020 | 123.70 | | 402.30 | 30495807 |
| 06/01/2020 | wtradmin | 06/2020 | Water Admin Fee Usage From 04-01-2020 to 04-30-2020 | 9.75 | | 412.05 | 30495808 |
| 06/01/2020 | rent | 06/2020 | Rental Income (06/2020) | 1,601.00 | | 2,013.05 | 30580655 |
| 06/01/2020 | parking | 06/2020 | Parking Fee (06/2020) | 60.00 | | 2,073.05 | 30580839 |
| 06/09/2020 | | 06/2020 | chk# 0137 :CHECKscan Payment | | 2,073.05 | 0.00 | 14676159 |
| 06/20/2020 | | 06/2020 | chk# 68578673 Credit Card On-Line Payment ; Web - Resident Services | | 1,900.00 | (1,900.00) | 14698804 |
| 07/01/2020 | trash | 07/2020 | Trash Usage From 05-01-2020 to 05-31-2020 | 39.88 | | (1,860.12) | 30896714 |
| 07/01/2020 | water | 07/2020 | Water Usage From 05-01-2020 to 05-31-2020 | 131.80 | | (1,728.32) | 30896715 |
| 07/01/2020 | wtradmin | 07/2020 | Water Admin Fee Usage From 05-01-2020 to 05-31-2020 | 9.75 | | (1,718.57) | 30896716 |
| 07/01/2020 | rent | 07/2020 | Rental Income (07/2020) | 1,601.00 | | (117.57) | 30945450 |
| 07/01/2020 | parking | 07/2020 | Parking Fee (07/2020) | 60.00 | | (57.57) | 30945623 |
| 08/01/2020 | trash | 08/2020 | Trash Usage From 06-01-2020 to 06-30-2020 | 39.88 | | (17.69) | 31238803 |
| 08/01/2020 | water | 08/2020 | Water Usage From 06-01-2020 to 06-30-2020 | 130.96 | | 113.27 | 31238804 |
| 08/01/2020 | wtradmin | 08/2020 | Water Admin Fee Usage From 06-01-2020 to 06-30-2020 | 9.75 | | 123.02 | 31238805 |
| 08/01/2020 | rent | 08/2020 | Rental Income (08/2020) | 1,601.00 | | 1,724.02 | 31323149 |
| 08/01/2020 | parking | 08/2020 | Parking Fee (08/2020) | 60.00 | | 1,784.02 | 31323321 |

| Date | Type | Period | Description | | | | |
|---|---|---|---|---|---|---|---|
| 08/03/2020 | | 08/2020 | chk# 0139 :CHECKscan Payment | | 1,784.02 | 0.00 | 14923878 |
| 09/01/2020 | trash | 09/2020 | Trash Usage From 07-01-2020 to 07-31-2020 | 39.88 | | 39.88 | 31632046 |
| 09/01/2020 | water | 09/2020 | Water Usage From 07-01-2020 to 07-31-2020 | 134.51 | | 174.39 | 31632047 |
| 09/01/2020 | wtradmin | 09/2020 | Water Admin Fee Usage From 07-01-2020 to 07-31-2020 | 9.75 | | 184.14 | 31632048 |
| 09/01/2020 | rent | 09/2020 | Rental Income (09/2020) | 1,601.00 | | 1,785.14 | 31712117 |
| 09/01/2020 | parking | 09/2020 | Parking Fee (09/2020) | 60.00 | | 1,845.14 | 31712290 |
| 09/03/2020 | | 09/2020 | chk# 75344010 Debit Card On-Line Payment ; Web - Resident Services | | 1,845.14 | 0.00 | 15070566 |
| 10/01/2020 | trash | 10/2020 | Trash Usage From 08-01-2020 to 08-31-2020 | 39.88 | | 39.88 | 32061960 |
| 10/01/2020 | water | 10/2020 | Water Usage From 08-01-2020 to 08-31-2020 | 153.70 | | 193.58 | 32061961 |
| 10/01/2020 | wtradmin | 10/2020 | Water Admin Fee Usage From 08-01-2020 to 08-31-2020 | 9.75 | | 203.33 | 32061962 |
| 10/01/2020 | rent | 10/2020 | Rental Income (10/2020) | 1,601.00 | | 1,804.33 | 32108156 |
| 10/01/2020 | parking | 10/2020 | Parking Fee (10/2020) | 60.00 | | 1,864.33 | 32108335 |
| 10/06/2020 | | 10/2020 | chk# 0142 :CHECKscan Payment | | 1,864.33 | 0.00 | 15235098 |
| 11/01/2020 | trash | 11/2020 | Trash Usage From 09-01-2020 to 09-30-2020 | 39.88 | | 39.88 | 32438264 |
| 11/01/2020 | water | 11/2020 | Water Usage From 09-01-2020 to 09-30-2020 | 134.52 | | 174.40 | 32438265 |
| 11/01/2020 | wtradmin | 11/2020 | Water Admin Fee Usage From 09-01-2020 to 09-30-2020 | 9.75 | | 184.15 | 32438266 |
| 11/01/2020 | rent | 11/2020 | Rental Income (11/2020) | 1,601.00 | | 1,785.15 | 32491543 |
| 11/01/2020 | parking | 11/2020 | Parking Fee (11/2020) | 60.00 | | 1,845.15 | 32491718 |
| 11/03/2020 | | 11/2020 | chk# 0426 :CHECKscan Payment | | 700.00 | 1,145.15 | 15351897 |
| 11/03/2020 | | 11/2020 | chk# 0457 :CHECKscan Payment | | 1,300.00 | (154.85) | 15351898 |
| 12/01/2020 | rent | 12/2020 | Rental Income (12/2020) | 1,601.00 | | 1,446.15 | 32886145 |
| 12/01/2020 | parking | 12/2020 | Parking Fee (12/2020) | 60.00 | | 1,506.15 | 32886315 |
| 12/01/2020 | commer | 12/2020 | Electric Usage From 10-01-2020 to 10-31-2020 | 50.65 | | 1,556.80 | 33033509 |
| 12/01/2020 | trash | 12/2020 | Trash Usage From 10-01-2020 to 10-31-2020 | 47.88 | | 1,604.68 | 33033510 |
| 12/01/2020 | water | 12/2020 | Water Usage From 10-01-2020 to 10-31-2020 | 70.79 | | 1,675.47 | 33033511 |
| 12/01/2020 | wtradmin | 12/2020 | Admin Fee Usage From 10-01-2020 to 10-31-2020 | 9.75 | | 1,685.22 | 33033512 |
| 12/03/2020 | | 12/2020 | chk# 0432 :CHECKscan Payment | | 1,885.22 | (200.00) | 15485309 |
| 01/01/2021 | commer | 01/2021 | Electric Usage From 11-01-2020 to 11-30-2020 | 52.13 | | (147.87) | 33241449 |
| 01/01/2021 | trash | 01/2021 | Trash Usage From 11-01-2020 to 11-30-2020 | 47.88 | | (99.99) | 33241450 |
| 01/01/2021 | water | 01/2021 | Water Usage From 11-01-2020 to 11-30-2020 | 63.51 | | (36.48) | 33241451 |
| 01/01/2021 | wtradmin | 01/2021 | Admin Fee Usage From 11-01-2020 to 11-30-2020 | 9.75 | | (26.73) | 33241452 |
| 01/01/2021 | rent | 01/2021 | Rental Income (01/2021) | 1,601.00 | | 1,574.27 | 33246365 |
| 01/01/2021 | parking | 01/2021 | Parking Fee (01/2021) | 60.00 | | 1,634.27 | 33246534 |
| 01/05/2021 | | 01/2021 | chk# 0143 :CHECKscan Payment | | 1,455.20 | 179.07 | 15638126 |
| 02/01/2021 | commer | 02/2021 | Electric Usage From 12-01-2020 to 12-31-2020 | 66.99 | | 246.06 | 33519582 |
| 02/01/2021 | trash | 02/2021 | Trash Usage From 12-01-2020 to 12-31-2020 | 47.88 | | 293.94 | 33519583 |
| 02/01/2021 | water | 02/2021 | Water Usage From 12-01-2020 to 12-31-2020 | 64.17 | | 358.11 | 33519584 |
| 02/01/2021 | wtradmin | 02/2021 | Admin Fee Usage From 12-01-2020 to 12-31-2020 | 9.75 | | 367.86 | 33519585 |
| 02/01/2021 | rent | 02/2021 | Rental Income (02/2021) | 1,601.00 | | 1,968.86 | 33636365 |
| 02/01/2021 | parking | 02/2021 | Parking Fee (02/2021) | 60.00 | | 2,028.86 | 33636534 |
| 02/05/2021 | | 02/2021 | chk# 88324951 Credit Card On-Line Payment ; Web - Resident Services | | 2,528.86 | (500.00) | 15770290 |
| 02/26/2021 | insrent | 02/2021 | Policy fee for 3 days. | 1.18 | | (498.82) | 33975075 |
| 03/01/2021 | commer | 03/2021 | Electric Usage From 01-01-2021 to 01-31-2021 | 44.71 | | (454.11) | 33915824 |
| 03/01/2021 | trash | 03/2021 | Trash Usage From 01-01-2021 to 01-31-2021 | 47.88 | | (406.23) | 33915825 |
| 03/01/2021 | water | 03/2021 | Water Usage From 01-01-2021 to 01-31-2021 | 65.04 | | (341.19) | 33915826 |
| 03/01/2021 | wtradmin | 03/2021 | Admin Fee Usage From 01-01-2021 to 01-31-2021 | 9.75 | | (331.44) | 33915827 |
| 03/01/2021 | rent | 03/2021 | Rental Income (03/2021) | 1,601.00 | | 1,269.56 | 33981672 |
| 03/01/2021 | parking | 03/2021 | Parking Fee (03/2021) | 60.00 | | 1,329.56 | 33981851 |
| 03/08/2021 | | 03/2021 | chk# 0144 :CHECKscan Payment | | 1,329.56 | 0.00 | 15896777 |
| 04/01/2021 | commer | 04/2021 | Electric Usage From 02-01-2021 to 02-28-2021 | 53.54 | | 53.54 | 34230578 |
| 04/01/2021 | trash | 04/2021 | Trash Usage From 02-01-2021 to 02-28-2021 | 47.88 | | 101.42 | 34230579 |
| 04/01/2021 | water | 04/2021 | Water Usage From 02-01-2021 to 02-28-2021 | 66.15 | | 167.57 | 34230580 |
| 04/01/2021 | wtradmin | 04/2021 | Admin Fee Usage From 02-01-2021 to 02-28-2021 | 9.75 | | 177.32 | 34230581 |
| 04/01/2021 | parcel | 04/2021 | Parcel (04/2021) | 3.50 | | 180.82 | 34327794 |
| 04/01/2021 | parking | 04/2021 | Parking Fee (04/2021) | 60.00 | | 240.82 | 34327795 |
| 04/01/2021 | pestctrl | 04/2021 | Pest Control Fee (04/2021) | 2.00 | | 242.82 | 34327796 |
| 04/01/2021 | rent | 04/2021 | Rental Income (04/2021) | 1,601.00 | | 1,843.82 | 34327797 |
| 04/05/2021 | | 04/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,843.82 | 0.00 | 16010895 |
| 05/01/2021 | commer | 05/2021 | Electric Usage From 03-01-2021 to 03-31-2021 | 54.27 | | 54.27 | 34629589 |

| Date | Type | Period | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|---|
| 05/01/2021 | trash | 05/2021 | Trash Usage From 03-01-2021 to 03-31-2021 | 47.88 | | 102.15 | 34629590 |
| 05/01/2021 | water | 05/2021 | Water Usage From 03-01-2021 to 03-31-2021 | 53.56 | | 155.71 | 34629591 |
| 05/01/2021 | wtradmin | 05/2021 | Admin Fee Usage From 03-01-2021 to 03-31-2021 | 9.75 | | 165.46 | 34629592 |
| 05/01/2021 | parcel | 05/2021 | Parcel (05/2021) | 3.50 | | 168.96 | 34672334 |
| 05/01/2021 | parking | 05/2021 | Parking Fee (05/2021) | 60.00 | | 228.96 | 34672335 |
| 05/01/2021 | pestctrl | 05/2021 | Pest Control Fee (05/2021) | 2.00 | | 230.96 | 34672336 |
| 05/01/2021 | rent | 05/2021 | Rental Income (05/2021) 11 days | 568.10 | | 799.06 | 34672337 |
| 05/01/2021 | rent | 05/2021 | Rental Income (05/2021) 20 days | 1,032.90 | | 1,831.96 | 34672338 |
| 05/03/2021 | | 05/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,831.96 | 0.00 | 16121747 |
| 06/01/2021 | commer | 06/2021 | Electric Usage From 04-01-2021 to 04-30-2021 | 50.76 | | 50.76 | 35015458 |
| 06/01/2021 | trash | 06/2021 | Trash Usage From 04-01-2021 to 04-30-2021 | 47.88 | | 98.64 | 35015459 |
| 06/01/2021 | water | 06/2021 | Water Usage From 04-01-2021 to 04-30-2021 | 51.26 | | 149.90 | 35015460 |
| 06/01/2021 | wtradmin | 06/2021 | Admin Fee Usage From 04-01-2021 to 04-30-2021 | 9.75 | | 159.65 | 35015461 |
| 06/01/2021 | parcel | 06/2021 | Parcel (06/2021) | 3.50 | | 163.15 | 35033548 |
| 06/01/2021 | parking | 06/2021 | Parking Fee (06/2021) | 60.00 | | 223.15 | 35033549 |
| 06/01/2021 | pestctrl | 06/2021 | Pest Control Fee (06/2021) | 2.00 | | 225.15 | 35033550 |
| 06/01/2021 | rent | 06/2021 | Rental Income (06/2021) | 1,601.00 | | 1,826.15 | 35033551 |
| 06/03/2021 | | 06/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 1,826.15 | 0.00 | 16244652 |
| 07/01/2021 | commer | 07/2021 | Electric Usage From 05-01-2021 to 05-31-2021 | 49.04 | | 49.04 | 35300696 |
| 07/01/2021 | trash | 07/2021 | Trash Usage From 05-01-2021 to 05-31-2021 | 47.88 | | 96.92 | 35300697 |
| 07/01/2021 | water | 07/2021 | Water Usage From 05-01-2021 to 05-31-2021 | 61.21 | | 158.13 | 35300698 |
| 07/01/2021 | wtradmin | 07/2021 | Admin Fee Usage From 05-01-2021 to 05-31-2021 | 9.75 | | 167.88 | 35300699 |
| 07/01/2021 | parcel | 07/2021 | Parcel (07/2021) | 3.50 | | 171.38 | 35353615 |
| 07/01/2021 | parking | 07/2021 | Parking Fee (07/2021) | 60.00 | | 231.38 | 35353616 |
| 07/01/2021 | pestctrl | 07/2021 | Pest Control Fee (07/2021) | 2.00 | | 233.38 | 35353617 |
| 07/01/2021 | rent | 07/2021 | Rental Income (07/2021) | 1,601.00 | | 1,834.38 | 35353618 |
| 07/03/2021 | | 07/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 1,834.38 | 0.00 | 16370415 |
| 08/01/2021 | parcel | 08/2021 | Parcel (08/2021) | 3.50 | | 3.50 | 35732411 |
| 08/01/2021 | parking | 08/2021 | Parking Fee (08/2021) | 60.00 | | 63.50 | 35732412 |
| 08/01/2021 | pestctrl | 08/2021 | Pest Control Fee (08/2021) | 2.00 | | 65.50 | 35732413 |
| 08/01/2021 | rent | 08/2021 | Rental Income (08/2021) | 1,601.00 | | 1,666.50 | 35732414 |
| 08/01/2021 | utladmin | 08/2021 | Utility Administration Fee 06/01/21 to 06/30/21 | 9.75 | | 1,676.25 | 35750768 |
| 08/01/2021 | electric | 08/2021 | Electric Charge 06/01/21 to 06/30/21 | 46.96 | | 1,723.21 | 35750769 |
| 08/01/2021 | sewer | 08/2021 | Sewer Charge 06/01/21 to 06/30/21 | 13.64 | | 1,736.85 | 35750770 |
| 08/01/2021 | swrbase | 08/2021 | Sewer Base Charge 06/01/21 to 06/30/21 | 1.01 | | 1,737.86 | 35750771 |
| 08/01/2021 | stormwtr | 08/2021 | Stormwater Charge 06/01/21 to 06/30/21 | 3.75 | | 1,741.61 | 35750772 |
| 08/01/2021 | trash | 08/2021 | Trash Charge 06/01/21 to 06/30/21 | 47.88 | | 1,789.49 | 35750773 |
| 08/01/2021 | water | 08/2021 | Water Charge 06/01/21 to 06/30/21 | 3.71 | | 1,793.20 | 35750774 |
| 08/01/2021 | wtrbase | 08/2021 | Water Base Charge 06/01/21 to 06/30/21 | 0.42 | | 1,793.62 | 35750775 |
| 08/04/2021 | | 08/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,793.62 | 0.00 | 16505167 |
| 09/01/2021 | parcel | 09/2021 | Parcel (09/2021) | 3.50 | | 3.50 | 36124151 |
| 09/01/2021 | parking | 09/2021 | Parking Fee (09/2021) | 60.00 | | 63.50 | 36124152 |
| 09/01/2021 | pestctrl | 09/2021 | Pest Control Fee (09/2021) | 2.00 | | 65.50 | 36124153 |
| 09/01/2021 | rent | 09/2021 | Rental Income (09/2021) | 1,601.00 | | 1,666.50 | 36124154 |
| 09/01/2021 | utladmin | 09/2021 | Utility Administration Fee 07/01/21 to 07/31/21 | 9.75 | | 1,676.25 | 36154528 |
| 09/01/2021 | electric | 09/2021 | Electric Charge 07/01/21 to 07/31/21 | 53.00 | | 1,729.25 | 36154529 |
| 09/01/2021 | sewer | 09/2021 | Sewer Charge 07/01/21 to 07/31/21 | 13.33 | | 1,742.58 | 36154530 |
| 09/01/2021 | swrbase | 09/2021 | Sewer Base Charge 07/01/21 to 07/31/21 | 1.00 | | 1,743.58 | 36154531 |
| 09/01/2021 | stormwtr | 09/2021 | Stormwater Charge 07/01/21 to 07/31/21 | 3.75 | | 1,747.33 | 36154532 |
| 09/01/2021 | trash | 09/2021 | Trash Charge 07/01/21 to 07/31/21 | 47.88 | | 1,795.21 | 36154533 |
| 09/01/2021 | water | 09/2021 | Water Charge 07/01/21 to 07/31/21 | 3.62 | | 1,798.83 | 36154534 |
| 09/01/2021 | wtrbase | 09/2021 | Water Base Charge 07/01/21 to 07/31/21 | 0.41 | | 1,799.24 | 36154535 |
| 09/03/2021 | | 09/2021 | chk# 0145 :CHECKscan Payment | | 1,799.24 | 0.00 | 16631652 |
| 10/01/2021 | parcel | 10/2021 | Parcel (10/2021) | 3.50 | | 3.50 | 36522213 |
| 10/01/2021 | parking | 10/2021 | Parking Fee (10/2021) | 60.00 | | 63.50 | 36522214 |
| 10/01/2021 | pestctrl | 10/2021 | Pest Control Fee (10/2021) | 2.00 | | 65.50 | 36522215 |
| 10/01/2021 | rent | 10/2021 | Rental Income (10/2021) | 1,601.00 | | 1,666.50 | 36522216 |
| 10/01/2021 | utladmin | 10/2021 | Utility Administration Fee 08/01/21 to 08/31/21 | 9.75 | | 1,676.25 | 36760337 |

| Date | Code | Period | Description | Amount | Amount2 | Balance | Ref |
|---|---|---|---|---|---|---|---|
| 10/01/2021 | electric | 10/2021 | Electric Charge 08/01/21 to 08/31/21 | 43.37 | | 1,719.62 | 36760358 |
| 10/01/2021 | trash | 10/2021 | Trash Charge 08/01/21 to 08/31/21 | 47.88 | | 1,767.50 | 36760359 |
| 10/01/2021 | stormwtr | 10/2021 | Stormwater Charge 08/01/21 to 08/31/21 | 3.75 | | 1,771.25 | 36760540 |
| 10/01/2021 | sewer | 10/2021 | Sewer Charge 08/01/21 to 08/31/21 | 13.23 | | 1,784.48 | 36760541 |
| 10/01/2021 | swrbase | 10/2021 | Sewer Base Charge 08/01/21 to 08/31/21 | 1.00 | | 1,785.48 | 36760542 |
| 10/01/2021 | water | 10/2021 | Water Charge 08/01/21 to 08/31/21 | 3.59 | | 1,789.07 | 36760543 |
| 10/01/2021 | wtrbase | 10/2021 | Water Base Charge 08/01/21 to 08/31/21 | 0.41 | | 1,789.48 | 36760544 |
| 10/11/2021 | | 10/2021 | chk# 0146 :CHECKscan Payment | | 1,789.48 | 0.00 | 16782540 |
| 11/01/2021 | parcel | 11/2021 | Parcel (11/2021) | 3.50 | | 3.50 | 36986622 |
| 11/01/2021 | parking | 11/2021 | Parking Fee (11/2021) | 60.00 | | 63.50 | 36986623 |
| 11/01/2021 | pestctrl | 11/2021 | Pest Control Fee (11/2021) | 2.00 | | 65.50 | 36986624 |
| 11/01/2021 | rent | 11/2021 | Rental Income (11/2021) | 1,601.00 | | 1,666.50 | 36986625 |
| 11/01/2021 | water | 11/2021 | Water Charge 09/01/21 to 09/30/21 | 1.38 | | 1,667.88 | 37020297 |
| 11/01/2021 | wtrbase | 11/2021 | Water Base Charge 09/01/21 to 09/30/21 | 0.21 | | 1,668.09 | 37020298 |
| 11/01/2021 | sewer | 11/2021 | Sewer Charge 09/01/21 to 09/30/21 | 5.08 | | 1,673.17 | 37020299 |
| 11/01/2021 | swrbase | 11/2021 | Sewer Base Charge 09/01/21 to 09/30/21 | 0.50 | | 1,673.67 | 37020300 |
| 11/01/2021 | trash | 11/2021 | Trash Charge 09/01/21 to 09/30/21 | 47.88 | | 1,721.55 | 37020301 |
| 11/01/2021 | utladmin | 11/2021 | Utility Administration Fee 09/01/21 to 09/30/21 | 9.75 | | 1,731.30 | 37020302 |
| 11/01/2021 | electric | 11/2021 | Electric Charge 09/01/21 to 09/30/21 | 42.93 | | 1,774.23 | 37020303 |
| 11/01/2021 | stormwtr | 11/2021 | Stormwater Charge 09/01/21 to 09/30/21 | 3.75 | | 1,777.98 | 37020304 |
| 11/05/2021 | | 11/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 17026657 RETURN REASON CODE: R16 ACCT FRZN/RET PER OFAC 11/12/21 | | 1,777.98 | 0.00 | 16885420 |
| 11/12/2021 | | 11/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,776.40 | (1,776.40) | 16909048 |
| 11/18/2021 | parking | 11/2021 | Parking Fee 13 days | 19.50 | | (1,756.90) | 37177775 |
| 12/01/2021 | parcel | 12/2021 | Parcel (12/2021) | 3.50 | | (1,753.40) | 37398580 |
| 12/01/2021 | parking | 12/2021 | Parking Fee (12/2021) | 45.00 | | (1,708.40) | 37398581 |
| 12/01/2021 | parking | 12/2021 | Parking Fee (12/2021) | 60.00 | | (1,648.40) | 37398582 |
| 12/01/2021 | pestctrl | 12/2021 | Pest Control Fee (12/2021) | 2.00 | | (1,646.40) | 37398583 |
| 12/01/2021 | rent | 12/2021 | Rental Income (12/2021) | 1,601.00 | | (45.40) | 37398584 |
| 12/01/2021 | utladmin | 12/2021 | Utility Administration Fee 10/01/21 to 10/31/21 | 9.75 | | (35.65) | 37431210 |
| 12/01/2021 | electric | 12/2021 | Electric Charge 10/01/21 to 10/31/21 | 41.97 | | 6.32 | 37431211 |
| 12/01/2021 | stormwtr | 12/2021 | Stormwater Charge 10/01/21 to 10/31/21 | 3.75 | | 10.07 | 37431212 |
| 12/01/2021 | trash | 12/2021 | Trash Charge 10/01/21 to 10/31/21 | 47.88 | | 57.95 | 37431213 |
| 12/01/2021 | water | 12/2021 | Water Charge 10/01/21 to 10/31/21 | 1.25 | | 59.20 | 37431214 |
| 12/01/2021 | wtrbase | 12/2021 | Water Base Charge 10/01/21 to 10/31/21 | 0.21 | | 59.41 | 37431215 |
| 12/01/2021 | sewer | 12/2021 | Sewer Charge 10/01/21 to 10/31/21 | 4.59 | | 64.00 | 37431216 |
| 12/01/2021 | swrbase | 12/2021 | Sewer Base Charge 10/01/21 to 10/31/21 | 0.50 | | 64.50 | 37431217 |
| 12/10/2021 | | 12/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,886.85 | (1,822.35) | 17026831 |
| 12/10/2021 | | 12/2021 | chk# :ACH-WEB NSF receipt Ctrl# 16895420 RETURN REASON CODE: R16 ACCT FRZN/RET PER OFAC 11/12/21 | | (1,777.98) | (44.37) | 17026657 |

4 / 4

**D**



**ATLER**

AT BROOKHAVEN

December 14, 2021

2150 Parklake Dr NE
Atlanta, GA 30345

RE: U.S. Citizen and Immigration Services

To whom it may concern,

This letter is to certify that the occupants and lease holders of unit #606 located at 3833 Peachtree Rd NE, Brookhaven, GA 30319 are Dennis Ford and Bassey Enun. Leases are signed electronically and sent directly to associated emails. In the case of Dennis Ford and Bassey Enun, a lease renewal was sent to their emails on April 6th, 2021 and was signed by all parties and executed on April 9th, 2021. I have included the e-signature certificate for details. First communities Management cannot confirm verbal statements of employees past or present. Additionally, employee statements cannot confirm nor deny the physical occupancy of any tenant on the property, including the unit leased by the residents. To the best of our knowledge this unit has been occupied by Dennis Ford and Bassey Enun as of their original move in date. Should you have any further question or need additional assistance please do not hesitate to contact me via email or call.

Sincerely,

Cristina Garcia
Property Manager
Atler at Brookhaven
Aggallo@firstcommunities.com

3833 Peachtree Rd NE l Brookhaven, GA 30319                    404.301.4582 l atlerbrookhaven.com

# E-SIGNATURE CERTIFICATE

*This certificate details the actions recorded during the signing of this Document.*



## DOCUMENT INFORMATION

| | |
|---|---|
| Status | Signed |
| Document ID | 259386354 |
| Submitted | 04/12/21 |
| Total Pages | 52 |
| Forms Included | Rental Contract (Up to 6 Residents), Extended Special Stipulations, Pet, Service, or Assistive Animal Addendum, Bed Bug Addendum, Mold and Mildew Addendum, Liquidated Damages Addendum, Community Rules and Regulations, Renter's Insurance Addendum, Crime Deterrence Housing Addendum, Crime Warning and Limitation of Liability Addendum, Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment, Utility Billing Addendum, Service Billing Addendum, Subletting, Short Term Rentals and Assignment Addendum, Fire Safety Information, Fire Safety Equipment Acknowledgment and Compliance Addendum, Rent Concession Addendum, Satellite Dish and Antenna Addendum, Atlanta Community Food Bank Addendum, Storage Area Rental Contract, Parking Garage or Space Rental Contract, HelloPackage Addendum |

## PARTIES

**Bassey Enun**
signer key: 48a3ef253fc2ce55ee90b665b8c5db20
IP address: 73.82.233.195
signing method: Blue Moon eSignature Services
authentication method: eSignature by email basseyenun@yahoo.com
browser: Mozilla/5.0 (Macintosh; Intel Mac OS X 11_2_3) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.114 Safari/537.36



**Dennis Ford**
signer key: 0649ed5210e68e63b6a79b35cc95ace2
IP address: 24.30.82.9
signing method: Blue Moon eSignature Services
authentication method: eSignature by email dennisallenford@gmail.com
browser: Mozilla/5.0 (Linux; Android 10; moto g stylus) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.105 Mobile Safari/537.36



**Nicole McLaurin**
signer key: 8d4b76d7fb4b7048867d91222cec5ab0
IP address: 10.100.20.45
signing method: Blue Moon eSignature Services
authentication method: eSignature by email nmclaurin@firstcommunities.com
browser: PHP 7.3.27/SOAP

*Nicole McLaurin*

PARTIES INFO CONTINUED

# (Community Manager)

# DOCUMENT AUDIT

| | | |
|---|---|---|
| 1 | 04/09/21 11:04:09 AM CDT | Bassey Enun accepted Consumer Disclosure |
| 2 | 04/09/21 11:05:08 AM CDT | Bassey Enun signed Rental Contract (Up to 6 Residents) |
| 3 | 04/09/21 11:06:19 AM CDT | Bassey Enun signed Extended Special Stipulations |
| 4 | 04/09/21 11:06:39 AM CDT | Bassey Enun signed Pet, Service, or Assistive Animal Addendum |
| 5 | 04/09/21 11:06:54 AM CDT | Bassey Enun signed Bed Bug Addendum |
| 6 | 04/09/21 11:07:40 AM CDT | Bassey Enun signed Mold and Mildew Addendum |
| 7 | 04/09/21 11:08:06 AM CDT | Bassey Enun signed Liquidated Damages Addendum |
| 8 | 04/09/21 11:08:15 AM CDT | Bassey Enun signed Community Rules and Regulations |
| 9 | 04/09/21 11:08:22 AM CDT | Bassey Enun signed Renter's Insurance Addendum |
| 10 | 04/09/21 11:08:39 AM CDT | Bassey Enun signed Crime Deterrence Housing Addendum |
| 11 | 04/09/21 11:13:12 AM CDT | Bassey Enun signed Crime Warning and Limitation of Liability Addendum |
| 12 | 04/09/21 11:14:12 AM CDT | Bassey Enun signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 13 | 04/09/21 11:16:17 AM CDT | Bassey Enun signed Utility Billing Addendum |
| 14 | 04/09/21 11:16:35 AM CDT | Bassey Enun signed Service Billing Addendum |
| 15 | 04/09/21 11:18:13 AM CDT | Bassey Enun signed Subletting, Short Term Rentals and Assignment Addendum |
| 16 | 04/09/21 11:18:25 AM CDT | Bassey Enun signed Fire Safety Information |
| 17 | 04/09/21 11:18:27 AM CDT | Bassey Enun dated Fire Safety Information |
| 18 | 04/09/21 11:18:44 AM CDT | Bassey Enun signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 19 | 04/09/21 11:22:20 AM CDT | Bassey Enun signed Rent Concession Addendum |
| 20 | 04/09/21 11:22:29 AM CDT | Bassey Enun signed Satellite Dish and Antenna Addendum |
| 21 | 04/09/21 11:22:48 AM CDT | Bassey Enun signed Atlanta Community Food Bank Addendum |
| 22 | 04/09/21 11:23:27 AM CDT | Bassey Enun signed Storage Area Rental Contract |
| 23 | 04/09/21 11:24:30 AM CDT | Bassey Enun signed Parking Garage or Space Rental Contract |
| 24 | 04/09/21 11:25:25 AM CDT | Bassey Enun signed HelloPackage Addendum |
| 25 | 04/09/21 11:25:45 AM CDT | Bassey Enun submitted signed documents |
| 26 | 04/09/21 01:49:07 PM CDT | Dennis Ford accepted Consumer Disclosure |
| 27 | 04/09/21 01:51:54 PM CDT | Dennis Ford signed Rental Contract (Up to 6 Residents) |
| 28 | 04/09/21 01:53:29 PM CDT | Dennis Ford signed Extended Special Stipulations |
| 29 | 04/09/21 01:53:56 PM CDT | Dennis Ford signed Pet, Service, or Assistive Animal Addendum |
| 30 | 04/09/21 01:54:52 PM CDT | Dennis Ford signed Bed Bug Addendum |
| 31 | 04/09/21 01:55:25 PM CDT | Dennis Ford signed Mold and Mildew Addendum |



DOCUMENT AUDIT CONTINUED

| 32 | 04/09/21 01:55:50 PM CDT | Dennis Ford signed Liquidated Damages Addendum |
|----|--------------------------|-----------------------------------------------|
| 33 | 04/09/21 01:56:31 PM CDT | Dennis Ford signed Community Rules and Regulations |
| 34 | 04/09/21 01:57:00 PM CDT | Dennis Ford signed Renter's Insurance Addendum |
| 35 | 04/09/21 01:57:32 PM CDT | Dennis Ford signed Crime Deterrence Housing Addendum |
| 36 | 04/09/21 01:58:00 PM CDT | Dennis Ford signed Crime Warning and Limitation of Liability Addendum |
| 37 | 04/09/21 01:59:09 PM CDT | Dennis Ford signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 38 | 04/09/21 01:59:31 PM CDT | Dennis Ford signed Utility Billing Addendum |
| 39 | 04/09/21 02:00:51 PM CDT | Dennis Ford signed Service Billing Addendum |
| 40 | 04/09/21 02:01:14 PM CDT | Dennis Ford signed Subletting, Short Term Rentals and Assignment Addendum |
| 41 | 04/09/21 02:01:36 PM CDT | Dennis Ford signed Fire Safety Information |
| 42 | 04/09/21 02:01:46 PM CDT | Dennis Ford dated Fire Safety Information |
| 43 | 04/09/21 02:02:09 PM CDT | Dennis Ford signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 44 | 04/09/21 02:02:47 PM CDT | Dennis Ford signed Rent Concession Addendum |
| 45 | 04/09/21 02:03:05 PM CDT | Dennis Ford signed Satellite Dish and Antenna Addendum |
| 46 | 04/09/21 02:03:20 PM CDT | Dennis Ford signed Atlanta Community Food Bank Addendum |
| 47 | 04/09/21 02:03:55 PM CDT | Dennis Ford signed Storage Area Rental Contract |
| 48 | 04/09/21 02:05:59 PM CDT | Dennis Ford signed Parking Garage or Space Rental Contract |
| 49 | 04/09/21 02:07:15 PM CDT | Dennis Ford signed HelloPackage Addendum |
| 50 | 04/09/21 02:07:54 PM CDT | Dennis Ford submitted signed documents |
| 51 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rental Contract (Up to 6 Residents) |
| 52 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rental Contract (Up to 6 Residents) |
| 53 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Extended Special Stipulations |
| 54 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Extended Special Stipulations |
| 55 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Pet, Service, or Assistive Animal Addendum |
| 56 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Pet, Service, or Assistive Animal Addendum |
| 57 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Bed Bug Addendum |
| 58 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Bed Bug Addendum |
| 59 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Mold and Mildew Addendum |
| 60 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Liquidated Damages Addendum |
| 61 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Liquidated Damages Addendum |
| 62 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Community Rules and Regulations |
| 63 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Community Rules and Regulations |
| 64 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Renter's Insurance Addendum |
| 65 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Renter's Insurance Addendum |
| 66 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Deterrence Housing Addendum |
| 67 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Deterrence Housing Addendum |

**DOCUMENT AUDIT CONTINUED**

| | | |
|---|---|---|
| 68 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Warning and Limitation of Liability Addendum |
| 69 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Warning and Limitation of Liability Addendum |
| 70 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 71 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 72 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Utility Billing Addendum |
| 73 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Utility Billing Addendum |
| 74 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Service Billing Addendum |
| 75 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Service Billing Addendum |
| 76 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Subletting, Short Term Rentals and Assignment Addendum |
| 77 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Subletting, Short Term Rentals and Assignment Addendum |
| 78 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Fire Safety Information |
| 79 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin dated Fire Safety Information |
| 80 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 81 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 82 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rent Concession Addendum |
| 83 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rent Concession Addendum |
| 84 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Satellite Dish and Antenna Addendum |
| 85 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Satellite Dish and Antenna Addendum |
| 86 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Atlanta Community Food Bank Addendum |
| 87 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Storage Area Rental Contract |
| 88 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Storage Area Rental Contract |
| 89 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Parking Garage or Space Rental Contract |
| 90 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Parking Garage or Space Rental Contract |
| 91 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed HelloPackage Addendum |
| 92 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin submitted signed documents |

| 10/01/2021 | electric | 10/2021 | Electric Charge 08/01/21 to 08/31/21 | 43.37 | | 1,719.62 | 36760338 |
| 10/01/2021 | trash | 10/2021 | Trash Charge 08/01/21 to 08/31/21 | 47.88 | | 1,767.50 | 36760339 |
| 10/01/2021 | stormwtr | 10/2021 | Stormwater Charge 08/01/21 to 08/31/21 | 3.75 | | 1,771.25 | 36760340 |
| 10/01/2021 | sewer | 10/2021 | Sewer Charge 08/01/21 to 08/31/21 | 13.23 | | 1,784.48 | 36760341 |
| 10/01/2021 | swrbase | 10/2021 | Sewer Base Charge 08/01/21 to 08/31/21 | 1.00 | | 1,785.48 | 36760342 |
| 10/01/2021 | water | 10/2021 | Water Charge 08/01/21 to 08/31/21 | 3.59 | | 1,789.07 | 36760343 |
| 10/01/2021 | wtrbase | 10/2021 | Water Base Charge 08/01/21 to 08/31/21 | 0.41 | | 1,789.48 | 36760344 |
| 10/11/2021 | | 10/2021 | chk# 0146 :CHECKscan Payment | | 1,789.48 | 0.00 | 16782540 |
| 11/01/2021 | parcel | 11/2021 | Parcel (11/2021) | 3.50 | | 3.50 | 36986622 |
| 11/01/2021 | parking | 11/2021 | Parking Fee (11/2021) | 60.00 | | 63.50 | 36986623 |
| 11/01/2021 | pestctrl | 11/2021 | Pest Control Fee (11/2021) | 2.00 | | 65.50 | 36986624 |
| 11/01/2021 | rent | 11/2021 | Rental Income (11/2021) | 1,601.00 | | 1,666.50 | 36986625 |
| 11/01/2021 | water | 11/2021 | Water Charge 09/01/21 to 09/30/21 | 1.38 | | 1,667.88 | 37020297 |
| 11/01/2021 | wtrbase | 11/2021 | Water Base Charge 09/01/21 to 09/30/21 | 0.21 | | 1,668.09 | 37020298 |
| 11/01/2021 | sewer | 11/2021 | Sewer Charge 09/01/21 to 09/30/21 | 5.08 | | 1,673.17 | 37020299 |
| 11/01/2021 | swrbase | 11/2021 | Sewer Base Charge 09/01/21 to 09/30/21 | 0.50 | | 1,673.67 | 37020300 |
| 11/01/2021 | trash | 11/2021 | Trash Charge 09/01/21 to 09/30/21 | 47.88 | | 1,721.55 | 37020301 |
| 11/01/2021 | utladmin | 11/2021 | Utility Administration Fee 09/01/21 to 09/30/21 | 9.75 | | 1,731.30 | 37020302 |
| 11/01/2021 | electric | 11/2021 | Electric Charge 09/01/21 to 09/30/21 | 42.93 | | 1,774.23 | 37020303 |
| 11/01/2021 | stormwtr | 11/2021 | Stormwater Charge 09/01/21 to 09/30/21 | 3.75 | | 1,777.98 | 37020304 |
| 11/05/2021 | | 11/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,777.98 | 0.00 | 16885420 |
| 11/12/2021 | | 11/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 1,776.40 | (1,776.40) | 16909448 |
| 11/18/2021 | parking | 11/2021 | Parking Fee 13 days | 19.50 | | (1,756.90) | 37272775 |
| 12/01/2021 | parcel | 12/2021 | Parcel (12/2021) | 3.50 | | (1,753.40) | 37398580 |
| 12/01/2021 | parking | 12/2021 | Parking Fee (12/2021) | 45.00 | | (1,708.40) | 37398581 |
| 12/01/2021 | parking | 12/2021 | Parking Fee (12/2021) | 60.00 | | (1,648.40) | 37398582 |
| 12/01/2021 | pestctrl | 12/2021 | Pest Control Fee (12/2021) | 2.00 | | (1,646.40) | 37398583 |
| 12/01/2021 | rent | 12/2021 | Rental Income (12/2021) | 1,601.00 | | (45.40) | 37398584 |
| 12/01/2021 | utladmin | 12/2021 | Utility Administration Fee 10/01/21 to 10/31/21 | 9.75 | | (35.65) | 37431210 |
| 12/01/2021 | electric | 12/2021 | Electric Charge 10/01/21 to 10/31/21 | 41.97 | | 6.32 | 37431211 |
| 12/01/2021 | stormwtr | 12/2021 | Stormwater Charge 10/01/21 to 10/31/21 | 3.75 | | 10.07 | 37431212 |
| 12/01/2021 | trash | 12/2021 | Trash Charge 10/01/21 to 10/31/21 | 47.88 | | 57.95 | 37431213 |
| 12/01/2021 | water | 12/2021 | Water Charge 10/01/21 to 10/31/21 | 1.25 | | 59.20 | 37431214 |
| 12/01/2021 | wtrbase | 12/2021 | Water Base Charge 10/01/21 to 10/31/21 | 0.21 | | 59.41 | 37431215 |
| 12/01/2021 | sewer | 12/2021 | Sewer Charge 10/01/21 to 10/31/21 | 4.59 | | 64.00 | 37431216 |
| 12/01/2021 | swrbase | 12/2021 | Sewer Base Charge 10/01/21 to 10/31/21 | 0.50 | | 64.50 | 37431217 |

**E**



**ATLER**
AT BROOKHAVEN

To whom this may concern,                                    December 27, 2021

Hi,

My name is Antonio Ellis, I am the Leasing Consultant here at Atler at Brookhaven. I would like to confirm that Bassey Enun & Dennis Ford live on our property. I Have printed documents of their signed lease. I have also printed documents for their children for school. Please let me know if you need any other information.

Sincerely,

**Antonio Ellis**
Leasing Consultant | Atler at Brookhaven
aellis@firstcommunities.com

*A. Ellis*

3833 Peachtree Rd. | Brookhaven, GA, 30319          404-301-4582 | atlerbrookhaven.com

# E-SIGNATURE CERTIFICATE

*This certificate details the actions recorded during the signing of this Document.*



**DOCUMENT INFORMATION**

|  |  |
|---|---|
| Status | Signed |
| Document ID | 259386354 |
| Submitted | 04/12/21 |
| Total Pages | 52 |
| Forms Included | Rental Contract (Up to 6 Residents), Extended Special Stipulations, Pet, Service, or Assistive Animal Addendum, Bed Bug Addendum, Mold and Mildew Addendum, Liquidated Damages Addendum, Community Rules and Regulations, Renter's Insurance Addendum, Crime Deterrence Housing Addendum, Crime Warning and Limitation of Liability Addendum, Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment, Utility Billing Addendum, Service Billing Addendum, Subletting, Short Term Rentals and Assignment Addendum, Fire Safety Information, Fire Safety Equipment Acknowledgment and Compliance Addendum, Rent Concession Addendum, Satellite Dish and Antenna Addendum, Atlanta Community Food Bank Addendum, Storage Area Rental Contract, Parking Garage or Space Rental Contract, HelloPackage Addendum |

**PARTIES**

**Bassey Enun**
signer key: 48a3ef253fc2ce55ee90b665b8c5db20
IP address: 73.82.233.195
signing method: Blue Moon eSignature Services
authentication method: eSignature by email basseyenun@yahoo.com
browser: Mozilla/5.0 (Macintosh; Intel Mac OS X 11_2_3) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.114 Safari/537.36



**Dennis Ford**
signer key: 0649ed5210e68e63b6a79b35cc95ace2
IP address: 24.30.82.9
signing method: Blue Moon eSignature Services
authentication method: eSignature by email dennisallenford@gmail.com
browser: Mozilla/5.0 (Linux; Android 10; moto g stylus) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.105 Mobile Safari/537.36



**Nicole McLaurin**
signer key: 8d4b76d7fb4b7048867d91222cec5ab0
IP address: 10.100.20.45
signing method: Blue Moon eSignature Services
authentication method: eSignature by email nmclaurin@firstcommunities.com
browser: PHP 7.3.27/SOAP

*Nicole McLaurin*

PARTIES INFO CONTINUED

# (Community Manager)

# DOCUMENT AUDIT

| 1 | 04/09/21 11:04:09 AM CDT | Bassey Enun accepted Consumer Disclosure |
|---|---|---|
| 2 | 04/09/21 11:05:08 AM CDT | Bassey Enun signed Rental Contract (Up to 6 Residents) |
| 3 | 04/09/21 11:06:19 AM CDT | Bassey Enun signed Extended Special Stipulations |
| 4 | 04/09/21 11:06:39 AM CDT | Bassey Enun signed Pet, Service, or Assistive Animal Addendum |
| 5 | 04/09/21 11:06:54 AM CDT | Bassey Enun signed Bed Bug Addendum |
| 6 | 04/09/21 11:07:40 AM CDT | Bassey Enun signed Mold and Mildew Addendum |
| 7 | 04/09/21 11:08:06 AM CDT | Bassey Enun signed Liquidated Damages Addendum |
| 8 | 04/09/21 11:08:15 AM CDT | Bassey Enun signed Community Rules and Regulations |
| 9 | 04/09/21 11:08:22 AM CDT | Bassey Enun signed Renter's Insurance Addendum |
| 10 | 04/09/21 11:08:39 AM CDT | Bassey Enun signed Crime Deterrence Housing Addendum |
| 11 | 04/09/21 11:13:12 AM CDT | Bassey Enun signed Crime Warning and Limitation of Liability Addendum |
| 12 | 04/09/21 11:14:12 AM CDT | Bassey Enun signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 13 | 04/09/21 11:16:17 AM CDT | Bassey Enun signed Utility Billing Addendum |
| 14 | 04/09/21 11:16:35 AM CDT | Bassey Enun signed Service Billing Addendum |
| 15 | 04/09/21 11:18:13 AM CDT | Bassey Enun signed Subletting, Short Term Rentals and Assignment Addendum |
| 16 | 04/09/21 11:18:25 AM CDT | Bassey Enun signed Fire Safety Information |
| 17 | 04/09/21 11:18:27 AM CDT | Bassey Enun dated Fire Safety Information |
| 18 | 04/09/21 11:18:44 AM CDT | Bassey Enun signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 19 | 04/09/21 11:22:20 AM CDT | Bassey Enun signed Rent Concession Addendum |
| 20 | 04/09/21 11:22:29 AM CDT | Bassey Enun signed Satellite Dish and Antenna Addendum |
| 21 | 04/09/21 11:22:48 AM CDT | Bassey Enun signed Atlanta Community Food Bank Addendum |
| 22 | 04/09/21 11:23:27 AM CDT | Bassey Enun signed Storage Area Rental Contract |
| 23 | 04/09/21 11:24:30 AM CDT | Bassey Enun signed Parking Garage or Space Rental Contract |
| 24 | 04/09/21 11:25:25 AM CDT | Bassey Enun signed HelloPackage Addendum |
| 25 | 04/09/21 11:25:45 AM CDT | Bassey Enun submitted signed documents |
| 26 | 04/09/21 01:49:07 PM CDT | Dennis Ford accepted Consumer Disclosure |
| 27 | 04/09/21 01:51:54 PM CDT | Dennis Ford signed Rental Contract (Up to 6 Residents) |
| 28 | 04/09/21 01:53:29 PM CDT | Dennis Ford signed Extended Special Stipulations |
| 29 | 04/09/21 01:53:56 PM CDT | Dennis Ford signed Pet, Service, or Assistive Animal Addendum |
| 30 | 04/09/21 01:54:52 PM CDT | Dennis Ford signed Bed Bug Addendum |
| 31 | 04/09/21 01:55:25 PM CDT | Dennis Ford signed Mold and Mildew Addendum |

**DOCUMENT AUDIT CONTINUED**

| 32 | 04/09/21 01:55:50 PM CDT | Dennis Ford signed Liquidated Damages Addendum |
|---|---|---|
| 33 | 04/09/21 01:56:31 PM CDT | Dennis Ford signed Community Rules and Regulations |
| 34 | 04/09/21 01:57:00 PM CDT | Dennis Ford signed Renter's Insurance Addendum |
| 35 | 04/09/21 01:57:32 PM CDT | Dennis Ford signed Crime Deterrence Housing Addendum |
| 36 | 04/09/21 01:58:00 PM CDT | Dennis Ford signed Crime Warning and Limitation of Liability Addendum |
| 37 | 04/09/21 01:59:09 PM CDT | Dennis Ford signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 38 | 04/09/21 01:59:31 PM CDT | Dennis Ford signed Utility Billing Addendum |
| 39 | 04/09/21 02:00:51 PM CDT | Dennis Ford signed Service Billing Addendum |
| 40 | 04/09/21 02:01:14 PM CDT | Dennis Ford signed Subletting, Short Term Rentals and Assignment Addendum |
| 41 | 04/09/21 02:01:36 PM CDT | Dennis Ford signed Fire Safety Information |
| 42 | 04/09/21 02:01:46 PM CDT | Dennis Ford dated Fire Safety Information |
| 43 | 04/09/21 02:02:09 PM CDT | Dennis Ford signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 44 | 04/09/21 02:02:47 PM CDT | Dennis Ford signed Rent Concession Addendum |
| 45 | 04/09/21 02:03:05 PM CDT | Dennis Ford signed Satellite Dish and Antenna Addendum |
| 46 | 04/09/21 02:03:20 PM CDT | Dennis Ford signed Atlanta Community Food Bank Addendum |
| 47 | 04/09/21 02:03:55 PM CDT | Dennis Ford signed Storage Area Rental Contract |
| 48 | 04/09/21 02:05:59 PM CDT | Dennis Ford signed Parking Garage or Space Rental Contract |
| 49 | 04/09/21 02:07:15 PM CDT | Dennis Ford signed HelloPackage Addendum |
| 50 | 04/09/21 02:07:54 PM CDT | Dennis Ford submitted signed documents |
| 51 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rental Contract (Up to 6 Residents) |
| 52 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rental Contract (Up to 6 Residents) |
| 53 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Extended Special Stipulations |
| 54 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Extended Special Stipulations |
| 55 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Pet, Service, or Assistive Animal Addendum |
| 56 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Pet, Service, or Assistive Animal Addendum |
| 57 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Bed Bug Addendum |
| 58 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Bed Bug Addendum |
| 59 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Mold and Mildew Addendum |
| 60 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Liquidated Damages Addendum |
| 61 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Liquidated Damages Addendum |
| 62 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Community Rules and Regulations |
| 63 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Community Rules and Regulations |
| 64 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Renter's Insurance Addendum |
| 65 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Renter's Insurance Addendum |
| 66 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Deterrence Housing Addendum |
| 67 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Deterrence Housing Addendum |

DOCUMENT AUDIT CONTINUED

| 68 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Warning and Limitation of Liability Addendum |
| 69 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Crime Warning and Limitation of Liability Addendum |
| 70 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 71 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Resident's Selection of Personal Representative Due to Incapacity, Death, or Abandonment |
| 72 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Utility Billing Addendum |
| 73 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Utility Billing Addendum |
| 74 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Service Billing Addendum |
| 75 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Service Billing Addendum |
| 76 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Subletting, Short Term Rentals and Assignment Addendum |
| 77 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Subletting, Short Term Rentals and Assignment Addendum |
| 78 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Fire Safety Information |
| 79 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin dated Fire Safety Information |
| 80 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 81 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Fire Safety Equipment Acknowledgment and Compliance Addendum |
| 82 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rent Concession Addendum |
| 83 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Rent Concession Addendum |
| 84 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Satellite Dish and Antenna Addendum |
| 85 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Satellite Dish and Antenna Addendum |
| 86 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Atlanta Community Food Bank Addendum |
| 87 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Storage Area Rental Contract |
| 88 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Storage Area Rental Contract |
| 89 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Parking Garage or Space Rental Contract |
| 90 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed Parking Garage or Space Rental Contract |
| 91 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin signed HelloPackage Addendum |
| 92 | 04/12/21 10:19:02 AM CDT | Nicole McLaurin submitted signed documents |

**F**

# Riverside Military Academy
## Tuition Rates 2021-2022

| Due Dates | Boarding-Domestic | | | Day | | | International | | |
|---|---|---|---|---|---|---|---|---|---|
| | Single Pay | 2-Pay Plan | 8-Pay Plan | Single Pay | 2-Pay Plan | 8-Pay Plan | Single Pay | 2-Pay Plan | 8-Pay Plan |
| Deposit upon contract | $2,500.00 | 2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Due on or before enrollment | $42,184.00 | $21,092.00 | $5,273.00 | $22,977.00 | $11,489.00 | $2,872.25 | $49,004.00 | $24,502.00 | $6,125.50 |
| 09/20/21 | | | $5,273.00 | | | $2,872.25 | | | $6,125.50 |
| 10/20/21 | | | $5,273.00 | | | $2,872.25 | | | $6,125.50 |
| 11/20/21 | | $21,092.00 | $5,273.00 | | $11,489.00 | $2,872.25 | | $24,502.00 | $6,125.50 |
| 12/20/21 | | | $5,273.00 | | | $2,872.25 | | | $6,125.50 |
| 01/20/22 | | | $5,273.00 | | | $2,872.25 | | | $6,125.50 |
| 02/20/22 | | | $5,273.00 | | | $2,872.25 | | | $6,125.50 |
| 03/20/22 | | | $5,273.00 | | | $2,872.25 | | | $6,125.50 |
| Total Tuition | $44,684.00 | $44,684.00 | $44,684.00 | $25,477.00 | $25,478.00 | $25,478.00 | $51,504.00 | $51,504.00 | $51,504.00 |
| Payment Plan Finance Fees* | | + $250.00 | + $1,750.00 | | + $140.00 | + $980.00 | | + $250.00 | + $1,750.00 |

Note: Tuition rates are the same by category, those who chose a payment plan will incur additional fees.
These processing fees will charged according to the payment plan chosen beginning with payments due September and later.

Version: 18MAY21

# 2021-2022 Riverside Military Academy Calendar *

**RIVERSIDE**

**June 2021**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |  |  |  |

**July 2021**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**August 2021**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |  |  |  |  |

**September 2021**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |  |  |

**October 2021**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

**November 2021**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |  |  |  |  |

**December 2021**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  | 1 | 2 | 3 | 4 |  |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

**January 2022**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

**February 2022**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 |  |  |  |  |  |

**March 2022**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

**April 2022**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

**May 2022**

| Su | M | Tu | W | Th | F | Sa |
|----|----|----|----|----|----|----|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |  |  |  |  |

**June**

**July**
- 5 Summer Academy Registration
- 6 Summer Academy Classes Start
- 29 1500-1700 Raiders/Drill Team Report
- 31 1200 End of Summer Academy

**August: NOTE: No Visitation 07-27 August**
- 1 Select Cadet Cadre and New ROCs report
- 3 0800-1100 Emerging Leaders/Football Report
- 5 Band Reports
- 8 1300-1700 Returning Cadets and ROCs report
- 11 First Quarter Classes Start
- 14 Saturday Classes – No Visitation
- 21 Saturday Classes – No Visitation
- 28-29 Visitation Allowed
- 28 Saturday Classes

**September**
- 3 1/2 Day Classes – Release for Break at 1300
- 3-6 Open Weekend – Visitation Allowed
- 6 Labor Day – No Classes / Return at 1800
- 7 Classes Resume
- 11 Saturday Classes –Visitation Allowed
- 17-19 Open Weekend – Visitation Allowed
- 24-26 Open Weekend – Visitation Allowed

**October**
- 7 End of First Quarter
- 8-10 Open Weekend – Visitation Allowed
- 15-17 Open Weekend – Visitation Allowed
- 22 Homecoming–Visitation Allowed
- 23 Homecoming Dance – Departure allowed at 2200
- 29-31 Open Weekend – Visitation Allowed

**November**
- 5 No Classes – Parade Prep
- 6 GA Veterans' Day Parade–Open Weekend after Parade
- 12-14 Open Weekend – Visitation Allowed
- 19 1/2 Day Classes
- 19 Start Thanksgiving Furlough – Depart at 1300
- 29 Thanksgiving Furlough Ends at 1800
- 30 Classes resume

**December**
- 11 Final Exam Study Day
- 13-16 Semester Final Exams
- 16 Last Day of First Semester
- 17 Start Christmas Furlough
- 22 Campus Closed through 02JAN22

**January**
- 4 Select Cadet Cadre and New ROCs report
- 9 1000-1600 Returning Cadets Report
- 12 Third Quarter Classes Start
- 15 Saturday Classes - No Visitation Allowed
- 22 Academic Awards
- 29 Saturday Classes

**February**
- 4-6 Open Weekend – Visitation Allowed
- 12 Pre-Inspection Inventory
- 18 1/2 Day Classes – Release for Break at 1300
- 18-22 Winter Break
- 22 Break ends at 1800
- 23 Classes Resume

**March**
- 4-6 Open Weekend – Visitation Allowed
- 10 Third Quarter Ends
- 12 Presidents Inspection
- 19 Military Ball – Open Weekend Upon Completion
- 25-27 Open Weekend - Visitation Allowed

**April**
- 1 Parade
- 1 Parent-Teacher Conferences Sign out at 1400
- 10 Spring Break Ends at 1800
- 11 Classes Resume
- 15-17 Open Weekend – Visitation Allowed
- 28 Senior Dining In Event
- 29-1 Open Weekend - Visitation Allowed

**May**
- 8 Mother's Day
- 14 Commencement Activities
- 16 Last Day of Classes
- 17-19 Underclass exams
- 19 All Cadets Depart by 1800

**Legend:**
- Summer Academy
- Labor Day/Winter Break
- Holiday Furlough
- Closed Weekend
- Cadets Remain on Campus
- Spring Furlough
- 1 Home Football Game

**Subject To Change**

Note: Open Weekends Subject to Satisfactory Individual Academic and Military Performance

G

airbnb_08_2021-09_2021

| Date | Type | Confirmation Code | Start Date | Nights | Guest | Listing | Details | Reference | Currency | Amount | Paid Out | Host Fee | Cleaning Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/29/2021 | Payout | | | | | | Transfer to Bank Account ---7022 (USD) | | USD | | 48.48 | | |
| 08/29/2021 | Resolution Payout | H44EBP4JXQ | 07/30/2021 | 11 | Jeff Ortis | Serene stay in Buckhead/Brookhaven | Resolution payout for resolution 25503530 | | USD | 48.48 | | | |
| 08/27/2021 | Payout | | | | | | Transfer to Bank Account ---7022 (USD) | | USD | | 35.00 | | |
| 08/27/2021 | Resolution Payout | H44EBP4JXQ | 07/30/2021 | 11 | Jeff Ortis | Serene stay in Buckhead/Brookhaven | Resolution payout for resolution 25553360 | | USD | 35.00 | | | |
| 08/24/2021 | Payout | | | | | | Transfer to Bank Account ---7022 (USD) | | USD | | 602.74 | | |
| 08/24/2021 | Adjustment | H4CP0FJCC8 | 08/21/2021 | 1 | Joseph | Haven in Buckhead | | | USD | -144.63 | | 0.00 | 0.00 |
| 08/24/2021 | Reservation | H4JM8PC0A5 | 08/23/2021 | 3 | Nicolas Barzar | Haven in Buckhead | | | USD | 767.37 | | 23.73 | 60.00 |
| 08/22/2021 | Payout | | | | | | Transfer to Bank Account ---7022 (USD) | | USD | | 144.63 | | |
| 08/22/2021 | Reservation | H4CP0FJCC8 | 08/21/2021 | 1 | Joseph | Haven in Buckhead | | | USD | 144.63 | | 0.00 | 0.00 |
| 08/16/2021 | Payout | | | | | | Transfer to Bank Account ---7022 (USD) | | USD | | 340.47 | | |
| 08/16/2021 | Reservation | H43QTRRSKJ | 08/14/2021 | 3 | Milan Early | Haven in Buckhead | | | USD | 340.47 | | 10.62 | 60.00 |
| 08/14/2021 | Payout | | | | | | Transfer to Bank Account ---7022 (USD) | | USD | | 90.03 | | |
| 08/14/2021 | Reservation | H44EBP4JXQ | 07/30/2021 | 11 | Jeff Ortis | Serene stay in Buckhead/Brookhaven | | | USD | 90.03 | | 2.07 | 2.23 |
| 08/09/2021 | Payout | | | | | | Transfer to Bank Account ---7022 (USD) | | USD | | 570.00 | | |
| 08/09/2021 | Reservation | H44EBP4JXQ | 07/30/2021 | 11 | Jeff Ortis | Serene stay in Buckhead/Brookhaven | | | USD | 570.00 | | 17.61 | 13.47 |
| 08/06/2021 | Payout | | | | | | Transfer to Bank Account ---2640 (USD) | | USD | | 171.21 | | |
| 08/06/2021 | Reservation | H44EBP4JXQ | 07/30/2021 | 11 | Jeff Ortis | Serene stay in Buckhead/Brookhaven | | | USD | 171.21 | | 5.30 | 0.88 |
| 07/30/2021 | Payout | | | | | | Transfer to Bank Account ---2640 (USD) | | USD | | 70.52 | | |
| 07/30/2021 | Reservation | H44EBP4JXQ | 07/30/2021 | 11 | Jeff Ortis | Serene stay in Buckhead/Brookhaven | | | USD | 70.52 | | 2.17 | 1.84 |
| 07/30/2021 | Payout | | | | | | Transfer to Bank Account ---2640 (USD) | | USD | | 172.75 | | |
| 08/01/2021 | Reservation | H34PWF42DDF | 07/31/2021 | 1 | Vanessa Barreto | Haven in Buckhead | | | USD | 172.63 | | 6.07 | 60.00 |

## Airbnb: Airbnb Resolution Center CLA-5NSNCWJQ4W for reservation HM4EBP4JXQ

From:  Airbnb Community Support (reply@support-email.airbnb.com)

To:    basseyenun@yahoo.com

Date:  Thursday, August 26, 2021, 06:54 p.m. EDT

 airbnb                              Airbnb Community Support

**Alley, Thu, 26 Aug 2021 22:54:25 GMT**

Hi Steph,

First of all I wanted to thank you for putting your trust in using Airbnb.
My name is Alley one of the Support Ambassador from Claims Airbnb

I will be assisting your claim with reservation code of HM4EBP4JXQ and a guest named Jeff O

https://airbnb.com/request-reimbursement/request/CLA-5NSNCWJQ4W/summary

I know that you really want this case to be settled as quickly as possible, and I cannot agree more. I want to set your expectations that I'll need to review all the specifics of the case first, and that will take a bit of time, so I'll keep you posted for any updates on the matter as soon as possible.

Should you have any questions or any additional information vital to your case, please do not hesitate to respond to this email. Thank

you for your patience and stay safe!

Warmest regards,

Reply to: reply-p1qUETa3qUmb38lcLY53Xw@support-email.airbnb.com

# Airbnb Community support

Visit Help Center  ·  Contact Airbnb

Sent with ♥ from Airbnb

Airbnb, Inc., 888 Brannan St, San Francisco, CA 94103



 **Jail View**

**JAILING INFORMATION**

**CHARGES** 2

## Jailing Information

# Orris, Jeffrey

SO #
X2107972

Booking #
21013130

Facility
DKSO

Booking Date
10/10/2021

Booking Time
10:49 PM

Release Date
10/15/2021

Release Time
10:11 PM

Aliases

Address
Stone Mountain, GA
30083

Description
White Male 5' 11" 175 lbs

Hair
Brown

Eyes
Brown

## Charges

# AGGRAVATED ASSAULT

Warrant #
21-W-015790

Issuing Authority

Offense Date

10/10/2021

Arrest Date
10/10/2021

Arresting Agency
Brookhaven Police
Department

Bond/Type

Total Due of Fine & Costs
$0.00

Disposition
Bonded Out

# OBSTRUCTION OF LAW ENFORCEMENT OFFICERS

Warrant #
21-W-015791

Issuing Authority

Offense Date
10/10/2021

Arrest Date
10/10/2021

Arresting Agency
Brookhaven Police
Department

Bond/Type

Total Due of Fine & Costs
$0.00

Disposition
Bonded Out


EMPOWERED BY
TYLER TECHNOLOGIES   © 2021 Tyler Technologies, Inc. | All Rights Reserved

© 2021 Tyler Technologies, Inc. | All Rights Reserved


EMPOWERED BY
TYLER TECHNOLOGIES

I

U.S. Citizen and Immigration Services
2150 Parklake Dr NE,
Atlanta,
Georgia, 30345
United States of America.
01-07-2022

### AFFIDAVIT

 PERSONALLY appeared before the undersigned officer, duly authorized to administer oaths, the undersigned affiant who after being sworn, deposes and states the following:

 My name is Mbong Amata. I reside at 3896 Tela PL, Macon, GA 31206. Dennis and Bassey are family to me. I confirm that on the day in question of said 'home visit', and indeed the entire month following, Dennis and Bassey lived at my residence to enable them raise funds for Dieusait's schooling. Their efforts though admirable were thwarted through no fault of theirs and now this. Unintended consequences for parents who are only trying get and keep their family together. I would hope that the emotional, psychological, and financial impact their fight for their family motivated solely by their love for one another would not be used as a weapon to deny them a life together.

 If, in the future, you require further information, feel free to reach out to me at my address mentioned above. Thank you.

 By signing this, I certify that the information provided above is true and correct to the best of my knowledge.

This _07_ of _January_ _____ 2022.

Signature

Sworn to and subscribed
before me this the _7_____day
of _January_____, 2020.

NOTARY PUBLIC

J

# esurance™

01/28/2022

Dennis Ford
3833 Peachtree Rd NE Apt 606
Brookhaven, GA 30319

**RE: Letter of Experience**

| | |
|---|---|
| Policy Number: | PAGA9354161 |
| Named Insured: | Dennis Ford |
| Inception Date: | 01/26/2022 12:01:00 AM PST |
| Current Term Effective Date | 01/26/2022 |
| Current Term Expiration Date | 07/26/2022 |
| Liability Limits | Bodily Injury: $25,000/$50,000    Property Damage: $25,000 |
| | as of: 01/26/2022    as of: 01/26/2022 |

Please accept this letter as verification for the Esurance policy listed above.

This letter does not include any information regarding the loss history for the above account. To receive a claims experience letter, please contact us by phone at 1-800-378-7262.

This policy included coverage for the following drivers:

| Name | Dates of Coverage |
|---|---|
| Dennis Ford | 01/26/2022 - 07/26/2022 |
| Bassey Enun | 01/26/2022 - 07/26/2022 |

This policy included coverage for the following vehicles:

| Year | Make | Model | VIN | Dates of Coverage |
|---|---|---|---|---|
| 2013 | Honda | ACCORD EX | 1HGCR2F76DA092221 | 01/26/2022 - 07/26/2022 |
| • | Comprehensive | No coverage | as of: 01/26/2022 | |
| • | Collision | No coverage | as of: 01/26/2022 | |

If you have any further questions, please do not hesitate to contact us by phone at 1-800-378-7262, or by fax at 1-800-926-2869.

Thank you,

Allen Meil, Authorized Representative
Esurance Property and Casualty Insurance Company

**K**

## GEORGIA INSURANCE POLICY INFORMATION CARD

**KEEP THIS CARD IN YOUR MOTOR VEHICLE WHILE IN OPERATION**

**INSURANCE COMPANY**
Esurance Property and Casualty
Insurance Company
160 Pacific Ave, Suite 201
San Francisco, CA 94111
NAIC# 30210

**AGENCY/COMPANY ISSUING CARD**
Esurance Insurance Services, Inc.
P.O. Box 660637
Dallas, TX 75266-0637

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| PAGA-009354161 | January 26, 2022 | July 26, 2022 |

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2013 | Honda/ACCORD EX | 1HGCR2F76DA092221 |

**INSURED NAME AND ADDRESS**
DENNIS FORD
3833 PEACHTREE RD NE APT 606
BROOKHAVEN, GA 30319

**ADDITIONAL LISTED DRIVER(S)**
BASSEY ENUN

The current status of actual motor vehicle liability insurance coverage is
maintained by the Georgia Department of Motor Vehicle Safety and is accessible
to law enforcement agencies upon a check of the vehicle registration.

**Our Contact Information**
Customer service and claims center:
1-800-ESURANCE (1-800-378-7262)
Email: support@csr.esurance.com
Web site: www.esurance.com

If you get into an accident
  Seek medical assistance if necessary.
  Report the accident to the police.
  Do not discuss the accident with anyone except the police. Do not admit fault.
  Contact an Esurance Claims representative as soon as possible to report the accident
  1-800-ESURANCE (1-800-378-7262).
  Write down the names, addresses, license numbers, vehicle descriptions, number
  of passengers, and insurance information of everyone involved in the accident.
  Write down the names, addresses, and phone numbers of witnesses.
  Take photos of the accident area and vehicle damage if you happen to have a
  camera with you.
  Do not sign any documents except those provided by Esurance or law
  enforcement authorities.

**COPY**
**FOR YOUR RECORDS**

**L**



Form T-7 (Rev. 09/2008)

## BILL OF SALE

This bill of sale provides evidence that a transaction between the buyer and seller has taken place **and that the odometer reading has been declared by the vehicle's seller and acknowledged by the vehicle's purchaser. NOTE: If a COURT-ORDERED SALE, attach the court order and provide the case number under the Seller/Transferor Name Below.**

On 01 / 25 / 22 I/we. U & I AUTOMOTIVE LLC
<sub>Month, Day & Year of Sale/Transfer</sub>  <sub>Seller(s)/Transferor(s) Full Legal Name(s)</sub>

4147 VETERANS MEMORIAL HWY LITHIA SPRINGS GA 30122
<sub>Seller(s)/Transferor(s) Street Address, City, State & Zip</sub>

Court Order Case Number _____ Georgia Tax ID Number _____

Sold/transferred the following vehicle 2013 HONDA ACCORD   LHGCR2F76DA092221
<sub>Vehicle Year /Make/Identification Number</sub>

To DENNIS ALLEN FORD II  BASSEY BASSEY ENUN
<sub>Purchaser(s) /Transferee(s) Full Legal Name(s)</sub>

3533 PEACHTREE RD NE, APT 606, BROOKHAVEN, GA 30319
<sub>Purchaser(s) /Transferee(s) Street Address, City, State & Zip</sub>

Seller(s)/Transferor(s) further states that there are no liens, security interests, or encumbrances on this vehicle except as listed below:

_____
<sub>Lien, Security Interest or Encumbrance Holder(s) Name(s)</sub>

_____
<sub>Lien, Security Interest or Encumbrance Holder(s) Street Address, City, State & Zip</sub>

Federal regulations require the seller(s)/transferor(s) to disclose the odometer reading and the purchaser(s)/transferee(s) to acknowledge the odometer reading upon the transfer of ownership of a vehicle that is <u>not</u> exempt from odometer disclosure requirements. Ten-model (10) years old and older vehicles are exempt from odometer disclosure requirements. If a vehicle is ten-model (10) years old or older, the seller/transferor may enter the word "exempt" in the space provided below for the odometer reading

I/we hereby certify that to the best of my/our knowledge the odometer reading is _____ (no tenths) and reflects the total actual mileage of the vehicle unless <u>one</u> of the following statements is checked

☐ The mileage on the vehicle is in excess of the mechanical limits of the odometer
☐ The odometer reading is <u>not</u> the actual mileage – Warning Odometer Discrepancy

| The Information in this Section is Required for Vehicles Purchased Outside Georgia or Pursuant to a Court Order* | | |
|---|---|---|
| 1  Purchase Price (Cash price plus taxable fees & charges) | | $ |
| 2  Trade-in Allowance (Do not include down payment or any rebates ) | - | $ |
| 3  Taxable Amount (Subtract line 2 from line 1 and record total ) | | $ |
| 4  Purchaser(s) Georgia County of Residence | | |
| 5  Georgia Sales Tax Rate in Purchaser's County | % | |
| 6  Tax Due Amount (Amount on line 3 multiplied by sales tax rate on line 5) | | $ |
| 7  Credit (From sales tax paid to other state if applicable) | - | $ |
| 8  Georgia Sales Tax Due (Amount shown on line 6 minus amount shown on line 7) | | $ |

_____          _____
<sub>Purchaser(s) /Transferee(s) Signature(s)</sub>        <sub>Seller(s) /Transferor(s) Signature(s)</sub>

DENNIS ALLEN FORD  BASSEY BASSEY ENUN    U & I AUTOMOTIVE LLC
<sub>Purchaser(s) /Transferee(s) Printed Name(s)</sub>        <sub>Seller(s) /Transferor(s) Printed Name(s)</sub>

_____
<sub>STA Sales Tax Number (if applicable)</sub>

*Effective January 1, 2006, a Georgia title will <u>not</u> be issued (if title required) for a vehicle purchased out-of-state or purchased pursuant to a court order unless sales tax is not due, paid with the application for title, or proof of payment of Georgia sales tax is submitted, e.g. contract, dealer's invoice, bill of sale showing the amount of Georgia sales tax paid or the seller's valid Georgia sales tax number is recorded on the bill of sale.

**\*\*\*NOTICE: ANY ALTERATION OR ERASURE VOIDS THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW\*\*\***

Federal and State Law requires that you state the mileage in connection with the transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following named name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name **INSURANCE AUTO AUCTIONS** Address **101 Hwy 404 Grenada MS 38901**

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ
CAREFULLY BEFORE
YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

SELLER:
Signature(s) *Kelvin Tone*    Printed Name(s) **Kelvin Tone**    Date of Sale _____

"I am aware of the above odometer certification made by seller"

BUYER: **INSURANCE AUTO AUCTIONS**
Signature(s) *ASimmons*    Printed Name(s) **ASHLEY SIMMONS**

## FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following named name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name **U & I Automotive LLC** Address **4147 Veterans Memorial Hwy Lithia Springs GA 30122**

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths) **145016**

CAUTION: READ
CAREFULLY BEFORE
YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

DEALER OR AGENT:
Signature(s) **INSURANCE AUTO AUCTIONS** *ASimmons* Printed Firm Name **ASHLEY SIMMONS** Date of Sale _____

"I am aware of the above odometer certification made by seller"

BUYER:
Signature(s) *Field C* Printed Name(s) **U & I AUTOMOTIVE LLC**

## SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following named name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name **DENNIS FORD BASSEY ENUN** Address **3833 PEACHTREE RD NE, APT 6CC, BROOKHAVEN GA 30319**

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ
CAREFULLY BEFORE
YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

DEALER OR AGENT:
Signature(s) *B...* Printed Firm Name **U & I AUTOMOTIVE LLC** Date of Sale **01/25/22**

"I am aware of the above odometer certification made by seller"

BUYER:
Signature(s) *W (BS)* Printed Name(s) **DENNIS FORD BASSEY ENUN**

## THIRD RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following named name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ
CAREFULLY BEFORE
YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

DEALER OR AGENT:
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

BUYER:
Signature(s) _____ Printed Name(s) _____

## LIENHOLDER TO BE SHOWN ON NEW TITLE

Lien in favor of _____

whose address is _____

<IAAI SLD 174883546 SALEDOCN>

30546848 (092221) **OF TITLE**

Grenada

**.SSISSIPPI**

857

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 1HGCR2P76DA092221 | HOND | 2013 | ACCORD | 5D | MS0125459456 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 12/07/2019 | | 4 | USED | PC | 118960 |
| | | | | | ACTUAL |

**OWNER(S)**

JONES, KELVIN
223 COUNTY ROAD 178
OKOLONA MS 38860-9714

**BRANDS**

**1ST LIENHOLDER**

CREDIT ACCEPTANCE CORPORATION
25505 W 12 MILE RD
SOUTHFIELD MI 48034-1846

**DATE:** 11/01/2019

**2ND LIENHOLDER**

**DATE:**

<IAAI SLD 174883547 SALED0C0>
Stock#:30546848 2370045 Sale Document (Front)

**MAIL TO**

CREDIT ACCEPTANCE CORPORATION
25505 W 12 MILE RD
SOUTHFIELD MI 48034-1846

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

**1ST LIEN** _Credit Acceptance Corporation_       **BY** _____
(LIENHOLDER)                                (SIGNATURE AND TITLE)

**THIS** _27_ **DAY OF** _5_ **20** _21_

**2ND LIEN** _____       **BY** _____
(LIENHOLDER)                                (SIGNATURE AND TITLE)

**THIS** _____ **DAY OF** _____ **20** ___

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE _7TH_ DAY OF _DECEMBER_ 20 _19_

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. That certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1 Mississippi Code of 1972, and subject to the provisions thereof.

**CONTROL NUMBER**

O 018 29158

**MISSISSIPPI DEPARTMENT OF REVENUE**

_Herb Frierson_

**VOID IF ALTERED**





Department of the Treasury
**Internal Revenue Service**
Austin, TX 73301-0003

Notice Date: February 26, 202·
Notice Number: 1444-B

For assistance, you may call:
800-919-9835

F11R4G-0105938
DENNIS FORD
3833 PEACHTREE RD NE APT 606
BROOKHAVEN, GA 30319-3367

## Your Second Economic Impact Payment

**What you need to know**
The U.S. Department of the Treasury issued you a second economic impact payment (**EIP2**) as provided by the COVID-related Tax Relief Act of 2020.

An EIP2 payment in the amount of $    600.00    was issued by  check/debit card.

Your EIP2 is based on information from your 2019 federal income tax return or information you provided using the Non-filers tool. This information includes your filing status, the number of qualifying children, and your adjusted gross income you didn't provide information to the IRS but you are a federal benefit recipient, your EIP2 was sent to the bank account which you receive benefits from the Social Security Administration (SSA), Railroad Retirement Board, or U.S. Departme of Veterans Affairs (VA).

Your EIP2 isn't considered taxable income, and you shouldn't report it as income on your 2020 federal income tax returr If you receive federal benefits or federally financed benefits, those benefits generally won't be affected by any EIP2 you receive.

Your EIP2 hasn't been reduced for past due child support or any other federal or state debts.

**What you need to do**
If you haven't received your EIP2 within 7 days of receiving this letter, check the status by going to "Get My Payment" at *IRS.gov/eip* or by using the "Where's My Economic Impact Payment" application on your smart device, or call 800-919-9835 for more information.

If you received your EIP2, you don't need to call or take any action. If your circumstance has changed since filing your 2019 return or receiving the first economic impact payment, you may request increases to the amount of your EIP2, (for reasons such as having a child in 2020) by claiming a recovery rebate credit on line 30 of your 2020 federal income tax return.

You should keep this letter and the letter you received with your earlier economic impact payment, if any, so that you can refer to them when completing your 2020 federal income tax return. You can use the information in both letters to determine whether you should claim a recovery rebate credit on your 2020 return.

The IRS urges taxpayers to be on the lookout for scam artists trying to use the economic impact payments as cover for schemes to steal personal information and money. ***Remember, the IRS won't call or otherwise contact you asking f personal or bank account information*** – even related to the economic impact payments. Also, watch out for emails wi attachments or links claiming to have special information about economic impact payments or refunds.

For more information about how your payment was calculated, please visit *IRS.gov/coronavirus*.