### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**WORKOUT ANYTIME**
**FRANCHISE SYSTEMS, LLC,**

      **Plaintiff,**

        **v.**

**JOHN GREFF; WOA ATHENS TN**
**LLC; WOA DAYTON, LLC; WOA**
**ATHENS, AL, LLC; WOA EAST**
**RIDGE TN LLC; WOA**
**LAFAYETTE GA, LLC; WOA**
**NORTHSHORE LLC; and WOA**
**SUMTER FITNESS LLC.**

      **Defendants.**

**VERIFIED COMPLAINT**

**CIVIL ACTION FILE NO.:**

_____

### PLAINTIFF WORKOUT ANYTIME FRANCHISE SYSTEMS LLC'S[1]
### VERIFIED COMPLAINT

Plaintiff Workout Anytime Franchise Systems, LLC ("Plaintiff" or "WOA or "Franchisor") brings this Complaint against Defendants WOA Athens TN LLC; WOA Dayton, LLC; WOA Athens, AL, LLC; WOA East Ridge TN LLC; WOA Lafayette GA, LLC; WOA Northshore LLC; WOA Sumter Fitness LLC; and John

---

[1]     Pursuant to Paragraphs 19.8 and 19.9 of the Parties' franchise agreements, declaratory and equitable relief are not subject to arbitration. Plaintiff here seeks only declaratory and equitable relief. Plaintiff does not waive its right to demand arbitration regarding all other matters subject to arbitration by the Parties' agreements.

Greff, (collectively "Defendants" or "Franchisees") and states and alleges as follows:

## **INTRODUCTION**

This Complaint arises out of seven Franchise Agreements (collectively, the "Franchise Agreements") entered into between Workout Anytime Franchising Systems LLC ("Plaintiff" or "WOA" or "Franchisor") and WOA Athens TN LLC; WOA Dayton, LLC; WOA Athens, AL, LLC; WOA East Ridge TN LLC; WOA Lafayette GA, LLC; WOA Northshore LLC; WOA Sumter Fitness LLC ("Defendants" or "Franchisees"); and John Greff, as the personal guarantor of all seven Franchise Agreements and Franchisees' attempt to unilaterally and prematurely terminate all seven Franchise Agreements to avoid its non-competition and non-solicitation obligations based on pretextual, unsubstantiated, and false allegations that WOA has materially breached the Franchise Agreements in various ways. If performed, Defendants threatened actions would result in irreparable injury to Plaintiff. Accordingly, Plaintiff seeks temporary and preliminary injunctive relief to stop Defendants from executing the threatened actions and causing irreparable injury to Plaintiff.

## PARTIES, JURISDICTION, AND VENUE

### The Parties and Their Diverse Citizenship

1.     Plaintiff is a Georgia Limited Liability Company. Plaintiff is a manager-managed limited liability company with three members. These managers are domiciled in and citizens of Georgia and Florida. Therefore, Plaintiff is a citizen of Georgia and Florida for purposes of diversity jurisdiction.

2.     Defendant John Greff is a citizen and resident of Puerto Rico.

3.     Defendant WOA Athens TN LLC is a Texas Limited Liability Company. WOA Athens TN LLC is a manager-managed limited-liability company with only one member, Mr. Greff. Mr. Greff is domiciled in Puerto Rico, making WOA Athens TN LLC a citizen of Puerto Rico for purposes of diversity jurisdiction.

4.     Defendant WOA Dayton, LLC is a Texas Limited Liability Company. WOA Dayton, LLC is a manager-managed limited-liability company with only one member, Mr. Greff. Mr. Greff is domiciled in Puerto Rico, making WOA Dayton, LLC a citizen of Puerto Rico for purposes of diversity jurisdiction.

5.     Defendant WOA Athens, AL, LLC is a Texas Limited Liability Company. WOA Athens AL, LLC is a manager-managed limited-liability company with only one member, Mr. Greff. Mr. Greff is domiciled in Puerto Rico, making

WOA Athens, AL LLC a citizen of Puerto Rico for purposes of diversity jurisdiction.

6.       Defendant WOA East Ridge TN LLC is a Texas Limited Liability Company. WOA East Ridge TN LLC is a member-managed limited-liability company with only one member, Mr. Greff. Mr. Greff is domiciled in Puerto Rico, making WOA East Ridge TN LLC a citizen of Puerto Rico for purposes of diversity jurisdiction.

7.       Defendant WOA Lafayette GA, LLC is a Texas Limited Liability Company. WOA Lafayette GA, LLC is a member-managed limited-liability company with only one member, Mr. Greff. Mr. Greff is domiciled in Puerto Rico, making WOA Lafayette GA, LLC a citizen of Puerto Rico for purposes of diversity jurisdiction.

8.       Defendant WOA Northshore LLC is a Texas Limited Liability Company.  WOA Northshore LLC is a member-managed limited-liability company with only one member, Mr. Greff. Mr. Greff is domiciled in Puerto Rico, making WOA Northshore LLC a citizen of Puerto Rico for purposes of diversity jurisdiction.

9.       Defendant WOA Sumter Fitness LLC is who upon information and belief resides in Puerto Rico.  WOA Sumter Fitness LLC is a manager-managed

limited-liability company with only one member, Mr. Greff. Mr. Greff is domiciled in Puerto Rico, making WOA Sumter Fitness LLC a citizen of Puerto Rico for purposes of diversity jurisdiction.

10.     There is complete diversity of the parties, for purposes of jurisdiction pursuant to 28 U.S.C. § 1332, because no Defendant holds citizenship in any state where Plaintiff holds citizenship.

### The Amount in Controversy

11.     The injunctive and declaratory relief that Plaintiff seeks in this matter has a value in excess of $75,000.00, exclusive of interest and costs.

12.     This action seeks declaratory and injunctive relief to preserve the status quo pending resolution of the Parties' dispute.

13.     Pursuant to the parties' Franchise Agreements, Defendants agreed not to solicit any customers or to otherwise compete with Plaintiff during the term of the Franchise Agreements and for two years following the termination of the Franchise Agreements. Defendants also acknowledged that the goodwill associated with the Workout Anytime® Health Clubs operated by Defendants under the Workout Anytime® Marks belongs to Plaintiff.

14.     The value of Plaintiff's goodwill and reputation substantially exceeds $75,000.

15.    Plaintiff seeks an injunction to preserve the status quo in order to prevent irreparable harm arising from its loss of customers and goodwill in the event Defendants are not enjoined and are permitted to unilaterally abandon the Workout Anytime® system while continuing to operate a new gym from the same location where they operated as Workout Anytime® franchisees for the past five years and appropriating Plaintiff's customers.

16.    While the harm to Plaintiff absent the grant of an injunction to preserve the status quo would be irreparable and, therefore, not easily susceptible of precise calculation, the value of the harm that Plaintiff seeks to avoid through an injunction preserving the status quo substantially exceeds the value of $75,000.00, exclusive of interest and costs, based upon the sales of Defendants' Workout Anytime® Health Clubs Memberships and the value of Plaintiff's goodwill.

17.    Prior to joining the Workout Anytime® franchised system, Defendants, including Mr. Greff, had little to no understanding of how to operate and run a franchised gym concept.

18.    Since joining the Workout Anytime® franchised system, Defendants have flourished and prospered.  Indeed, just last year, Defendants collectively grossed over $4,600,000 in revenue.

19.     During 2018 to 2023, the total royalties and fees owed to Plaintiff collectively by Defendants, excluding any interest, was $892,323, averaging $171,032 per year, based upon the sales reported by Defendants to Plaintiff for that period.

20.     WOA has offered Workout Anytime® Health Club franchises since 2002 and has a well-developed, proprietary franchise system. Currently there are almost 200 franchised Workout Anytime® Health Clubs in the United States, including in Alabama, Arkansas, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Maine, Maryland, New Hampshire, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia.

21.     Defendants have between approximately seven to twelve years remaining on the terms of the respective Franchise Agreements.

22.     Plaintiff's marginal expenses associated with a single franchised location are not substantial because it would continue to incur the same overall expenses in supporting the Workout Anytime® system of almost 200 franchisees. Consistent with this, Plaintiff does not adjust its expense budget based upon the addition or departure of one franchised location.

23.     Accordingly, the lost profits and goodwill as well as the reputational harm that Plaintiff would endure from Defendants' unilateral departure from the

Workout Anytime® franchise system, absent the grant of an injunction preserving the status quo, during the remaining term of their Franchise Agreement would substantially exceed $75,000.00, exclusive of interest and costs.

## Subject Matter Jurisdiction

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 in that: (a) there is complete diversity of citizenship because Plaintiff is a citizen of Georgia and Florida, while Defendants are citizens of Puerto Rico; and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs, because the value of the injunctive relief sought by Plaintiff substantially exceeds that amount by: (i) the likely damage to Plaintiff from loss of customers and goodwill, absent an injunction preserving the status quo; (ii) Plaintiff's loss of profits during the remaining term of the parties' Franchise Agreements; or (iv) the amount of fees that Defendants would owe to Plaintiff during the remaining term of the Franchise Agreements.

## Personal Jurisdiction and Venue

25.     Plaintiff and Defendants have consented to venue and jurisdiction in the Northern District of Georgia in the respective Franchise Agreements.

26.     Venue is also appropriate in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to the valid forum

selection clauses contained in the Franchise Agreements and pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred within the Northern District of Georgia.

27.    This Court also has personal jurisdiction over Defendants in that Defendants have transacted business with Plaintiff in the Northern District of Georgia and/or have caused events to occur in the Northern District of Georgia giving rise to the claims herein. Thus, the Court also has personal jurisdiction over Defendants because minimum contacts have been established within the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## FACTUAL ALLEGATIONS

### The Franchise Agreements and Guarantees

28.    Plaintiff is a national franchisor and has developed a marketing system and method of operation of gyms known as the "Workout Anytime®️ Franchise System."  Plaintiff is the exclusive licensee of certain registered trademarks, tradenames, and service marks (the "Marks").  Pursuant to individual franchise agreements, Plaintiff allows others to use the Workout Anytime®️ Franchise System, as well as its Marks, in their operation of Workout Anytime®️ clubs at locations specified in the franchise agreements.

29.    Plaintiff and Defendants entered into seven Franchise Agreements (the "Franchise Agreements") for the operation of Workout Anytime® clubs in Tennessee, South Carolina, Alabama, and Georgia. **Ex. A.**

30.    In executing the Franchise Agreements, Defendants also executed Consent to Transfer Agreements, transferring the Franchise Agreements to their respective limited-liability companies. In conjunction with executing each Consent to Transfer Agreement, Mr. Greff executed personal guarantees (the "Guarantees"), under which he personally and unconditionally: (1) guaranteed that Franchisees would perform each and every undertaking, obligation, and covenant set forth in the Franchise Agreements; and (2) agreed to be personally bound by, and personally liable for, the breach of each and every provision in the Franchise Agreements.

31.    For and in consideration of the rights, privileges, and benefits set out in the Franchise Agreements, Defendants agreed, *inter alia*, to maintain and operate each purchased franchise for the required term, to use their best efforts to market and promote the clubs, to devote their full time and best efforts to the management and operation of the club, and to pay fees, including but not limited to monthly technology, software licensing, and royalty fees for the term of the respective Franchise Agreement.

32.    Defendants also agreed to non-competition and non-solicitation provisions both during the course of the parties' relationship and post-termination. In conjunction with these provisions, Defendants agreed that violating these non-competition or non-solicitation provisions would cause Plaintiff irreparable harm. Defendants also expressly acknowledged that the post-termination restrictions on competition and solicitation are reasonable and necessary to protect Plaintiff's franchised system.

33.    Additionally, Defendants acknowledged that the Franchisor has exclusive ownership and right to its current and future Marks and in all related practices, procedures, methods, and devices. Plaintiff's name and Mark, Workout Anytime®, is prominently displayed on signage and equipment appearing in almost 200 Workout Anytime® Health Clubs nationwide. Since its inception, Plaintiff has invested a tremendous amount of time, energy, and money to promote the Marks.  The Marks identify and symbolize Plaintiff's goodwill.

34.    Further, the Franchise Agreements state in substantially similar form the following regarding early termination by the Franchisee (exact language extracted from the Athens, Tennessee Franchise Agreement):

**17.1 Termination by [Franchisee].**

If [Franchisee is] in compliance with this Agreement and Franchisor materially breaches this Agreement and fails to cure the breach within sixty

(60) days after a written notice of the breach is delivered to Franchisor by [Franchisee], [Franchisee] may terminate this Agreement, effective ten (10) days after delivery to Franchisor of a notice of termination. There are no other provisions in [the Franchise Agreement] that grant [Franchisee] the right to terminate this Agreement, and such termination may only be accomplished as provided for herein, or by agreement of the parties. Should [Franchisee] terminate th[e] Agreement in compliance with this Sub-section, [Franchisee is] required to comply with the post-termination procedures as set forth in Sub-section 17.7.

## 17. 7 Effect of Termination.

Should this Agreement expire or be terminated by any party and for any reason, all rights and obligations between you and Franchisor under this Agreement will terminate, except for Subsections 10.1 and, 10.2, Section 14 and 16, and Sub-section 17. 7. In an instance of expiration or termination, you will cease to be a licensed participant in the System, and you will:

A. Promptly pay Franchisor all amounts owing by you based on operations of the Club through the date of termination plus interest at the rate of eighteen percent (18%) per annum;

B. Immediately discontinue the use of all Marks, signs, structures, forms of advertising, telephone listings and service, the Manual, and all materials and products of any kind which are identified or associated with the System and return all materials and products to Franchisor and, at our request, assign your Club's telephone number to Franchisor;

C. Make no representation nor state that you are in any way approved, endorsed or licensed by Workout Anytime, or associated or identified with Workout Anytime or the System in any manner;

D. Immediately take all steps necessary to amend or terminate any registration or filing of any d/b/a or fictitious name or any other registration or filing containing the Marks to delete the Marks and all references to anything associated with the System;

E.  Provide Franchisor the option to purchase required by Section 18.8;

F.  Comply with the provisions of Sub-sections 15.7 and 16.1; and

G.  Forfeit all rights to receive membership fees and other revenue through the monthly draft from the credit card processor as of the date of termination or expiration of this Agreement.

35.  Pursuant to Section 19.3 of the Franchise Agreements, "[i]f either party institutes or prevails entirely or in part in any action at law or in equity against the other party based entirely or in part on the terms of this Agreement, the prevailing party will be entitled to recover from the losing party, in addition to any judgment, reasonable attorneys' fees, court costs and all the prevailing party's expenses about any action at law."

### Defendants' Breach Letters and Threats to Terminate the Franchise Agreements

36.  WOA has performed all of its obligations under the Franchise Agreements.

37.  Notwithstanding this fact, on May 19, 2023, Defendants' counsel sent WOA a Notice of Material Breach under the Franchise Agreements, alleging various breaches of the Franchise Agreements. Defendants' counsel requested that Franchisor cure these alleged breaches within sixty (60) days and threatened to "exercise the rights and remedies available to them as provided in the Franchise

Agreement and/or applicable law, including without limitation, terminating the Franchise Agreements and filing suit against Franchisor." **Ex. B.**

38.     On June 2, 2023, Plaintiff's counsel informed Defendants that the May 19, 2023 letter did not comply with Section 17.1 of the Franchise Agreements and did not constitute a notice of breach triggering a cure period. Further, Plaintiff's counsel pointed out that many of the allegations in the May 19, 2023 letter are patently false. **Ex. C.**

39.     On June 14, 2023, Defendants' counsel sent a letter to Plaintiff's counsel responding that Defendants disputed the contention that Defendants' previous Notice of Material Breach did not comply with the Franchise Agreements and purported to elaborate on their perceived material breaches. **Ex. D**

40.     On June 23, 2023, WOA's counsel responded, reiterating that they had evaluated the matters alleged and confirmed that WOA is not in breach of any obligation to Defendants under the Franchise Agreements. WOA's counsel further requested that Defendants retract the Notice of Material Breach. **Ex. E.**

41.     On July 3, 2023, Defendants' counsel responded, refusing to retract the breach letters, failing to propose an amicable resolution to the issues complained of, and failing to provide any additional information regarding the alleged breaches. **Ex. F.**

42.     Indeed, these alleged "breaches" portrayed in Defendants' counsel's letters are not breaches at all, let alone material breaches. Instead, as disclosed by Defendant's counsel during a recent phone call, Defendants are using these alleged breaches as an excuse to unilaterally terminate all of the Franchise Agreements without proper justification and to ultimately void the non-competition and non-solicitation provisions within those agreements so that Defendants can open up competitive workout facilities in the same locations where their Workout Anytime® Health Clubs are currently located.

43.     Defendants should not be permitted to unilaterally terminate all seven Franchise Agreements prematurely based on alleged "material breaches" that never actually occurred. Allowing Defendants to do so would cause irreparable harm to Plaintiff as one of its key franchisees leaving the system abruptly would severely hinder Plaintiff's goodwill and cause severe reputational injury to Plaintiff that would be difficult if not impossible to compensate through monetary damages.

44.     Finally, and most importantly, Defendants should not be permitted to avoid the contractual non-competition and non-solicitation covenants that they explicitly agreed to within the Franchise Agreements. Such actions will only serve to further devalue the Workout Anytime® Franchise System.

45.     Plaintiff will be irreparably damaged by the actions of Defendants because, if Defendants are not enjoined from altering the status quo ante pending resolution of the parties' dispute in the current action, Defendants' actions will cause a loss of customers, employees, goodwill, and harm to Plaintiff's reputation.

46.     The threat of Defendants prematurely terminating all seven Franchise Agreements is real and imminent as Defendants' counsel has sent letters to Plaintiff threatening to terminate all seven Franchise Agreements if the alleged breaches are not cured. Further, Defendants' counsel has advised Plaintiff's counsel that Defendants intend to open competing workout facilities in the same locations as the current Workout Anytime® Health Clubs. Defendants have represented to other WOA franchisees that they intend to deidentify from the Workout Anytime system.

47.     Defendants' purported termination based on unsubstantiated claims of breach upsets the orderly dispute resolution process. Defendants should not be permitted to unilaterally terminate all of Defendants Franchise Agreements, avoid the non-competition and non-solicitation covenants contained within, and upset the status quo.

## RELIEF REQUESTED BY PLAINTIFF

## COUNT I - ANTICIPATORY BREACH OF CONTRACT
## (INJUNCTIVE RELIEF)

48.     Plaintiff incorporates paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.     Defendants executed and agreed to be bound by the terms of the Franchise Agreements.

50.     In conjunction with executing the Franchise Agreements, Defendants also executed Consent to Transfer Agreements, transferring the Agreements to their respective limited-liability companies. In conjunction with executing each Consent to Transfer Agreement, Mr. Greff executed personal guarantees, under which he personally and unconditionally: (1) guaranteed that Franchisees would perform each and every undertaking, agreement and covenant set forth in the Franchise Agreements; and (2) agreed to be personally bound by, and personally liable for, the breach of each and every provision in the Franchise Agreements.

51.     Plaintiff has performed all of its obligations under the Franchise Agreements.

52.     Defendants are in anticipatory breach of the Franchise Agreements because they are threatening to unilaterally and prematurely terminate all seven

Franchise Agreements and to engage in competitive activity in violation of the Franchise Agreements' non-solicitation and non-competition covenants.

53.     Defendants explicitly threatened to "exercise the rights and remedies available to them as provided in the Franchise Agreement and/or applicable law, including without limitation, terminating the Franchise Agreements and filing suit against Franchisor." These statements, paired with Defendants' representations to Plaintiff's counsel that Defendants intend to open up competing workout facilities in their previous Workout Anytime® Health Clubs, constitutes an unqualified refusal of Defendants to fulfill any future obligations under the Franchise Agreements. Defendants unqualified refusal applies to all seven Franchise Agreements in their entirety.

54.     If Defendants are not required to maintain the status quo and are not restrained from terminating all seven Franchise Agreements pending resolution of this dispute, Plaintiff will suffer irreparable harm.

55.     Specifically, Plaintiff will be unable to protect itself from Defendants purported competitive activity and solicitation that it agreed not to participate in during the relationship and post termination.

56.     If Defendants are permitted to cease using the marks and to de-identify from the Workout Anytime® franchised system, the parties will not in the

future, for all practical purposes, be able to be put back in the position they otherwise would have been absent Defendants' improper efforts to de-identify and pursue an indirect termination of the Franchise Agreements.   This constitutes irreparable injury to Plaintiff.

57.   Further, Plaintiff will be unable to regain the goodwill it loses to its marks and otherwise or reputational harm it incurs by reason of Defendants' activities.

58.   Additionally, if Defendants are allowed to prematurely terminate all seven Franchise Agreements and avoid their non-solicitation and non-competition covenants despite Plaintiff's performance under the Franchise Agreements, then a precedent will be set, whereby other Workout Anytime® franchisees may be encouraged to terminate their franchise agreements and avoid the obligations contained within. This will in turn harm the integrity of Plaintiff's franchise system. Further, if a preliminary injunction does issue, then all of Plaintiff's franchisees will find comfort in knowing that the integrity of Plaintiff's franchise system is being maintained.

59.   Defendants will not be harmed if injunctive relief is granted, as Plaintiff merely seeks to enforce compliance with the Franchise Agreements and to prevent Defendants from terminating all of the Franchise Agreements and

engaging in competitive activity pending resolution of the parties' dispute. Indeed, the injunction will not require Defendants to do anything differently than they have been doing for over five years.

60.     The relief requested in this Complaint will protect the public's interest because the public has an interest in protecting the integrity of Plaintiff's System and its Marks, its collective gym members and in the enforcement of contracts.

61.     There is no adequate remedy at law because, among other things, there is a difficulty of ascertaining damages from the premature termination of all of Defendants' Franchise Agreements and violation of the non-solicitation and non-competition covenants contained within. Further, the damage to Plaintiff would likely continue in the absence of injunctive relief.

WHEREFORE, Plaintiff prays that the Court grant the following relief:

a.     an injunction preserving the status quo *ante* pending resolution of the parties' dispute;

b.     a preliminary and permanent injunction enjoining Defendants from: (1) operating their Workout Anytime® Health Clubs as anything other than Workout Anytime® Health Clubs within the Territory set forth under the Franchise Agreements, pending resolution of the parties' dispute; (2) engaging in the operation of a workout facility within the

non-compete territory defined in the Franchise Agreement, either directly or indirectly, in any relation or capacity whatsoever, except as an Workout Anytime licensee under the terms set forth in the Franchise Agreement; (3) soliciting any of the customers or employees from the respective Workout Anytime® Health Clubs (4) transferring or attempting to transfer any interest in the facilities without the prior written approval of Plaintiff; (5) changing the name of the workout facilities from "Workout Anytime" to any other entity; (6) removing any signs, decals, or placards bearing the name "Workout Anytime" from the Health Club without the consent of Plaintiff; (7) terminating all of the Franchise Agreements between Plaintiff and Defendants without proper justification; (8) ceasing operation of the Franchises that Defendants currently owns and operations; and (9) otherwise breaching the Franchise Agreements;

c.   an Order granting Plaintiff its attorneys' fees and costs associated with prosecuting this action in accordance with Section 19.3 of the Franchise Agreements; and

d.   such other and further relief as the Court deems just and proper.

## COUNT II – DECLARATORY RELIEF

62.     Plaintiff incorporates paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     The Franchise Agreements provide that either party may obtain injunctive and declaratory relief from a court of competent jurisdiction in the event of a breach or threatened breach of the Franchise Agreements.

64.     Defendants are threatening to terminate and breach all seven Franchise Agreements under false allegations that Plaintiff materially breached the same.

65.     In reality, Defendants' underlying motivation for terminating the Franchise Agreements is actually to breach the non-competition and non-solicitation provisions contained within the Franchise Agreements without repercussion.

66.     Plaintiff files this Complaint seeking to resolve the dispute among the parties, including a declaration that Plaintiff has not breached the Franchise Agreements, that Defendants' default letters and purported termination of the Franchise Agreements are ineffective, and that the Franchise Agreements remain in effect.

67.     Resolution of the dispute in the current action will resolve the issue of whether Plaintiff is in breach of the Franchise Agreements and whether Defendants may terminate the Franchise Agreements and avoid their non-solicitation and non-competition obligations contained within.

68.     If Defendants are not required to maintain the status quo and are not restrained from terminating all seven Franchise Agreements and avoiding the covenants contained within pending resolution of this dispute, Plaintiff will suffer irreparable harm.

69.     Specifically, Plaintiff will be unable to protect itself from Defendants purported competitive activity and solicitation that it agreed not to participate in during the relationship and post termination. This will cause irreparable harm by way of causing Plaintiff to lose valuable customers and employees.

70.     Further, Plaintiff will be unable to regain the goodwill it loses or reputational harm it incurs by reason of Defendants' activities. Furthermore, if Defendants are allowed to prematurely terminate the Franchise Agreements despite there being no material breach, then a precedent will be set, whereby other franchisees may be encouraged to terminate their franchise agreements and avoid the obligations set forth within. This will in turn harm the integrity of Plaintiff's franchise system. On the other hand, if a preliminary injunction does issue, then all

of Plaintiff's franchisees will find comfort in knowing that the integrity of the Plaintiff franchise system is being maintained.

WHEREFORE, Plaintiff, prays that the Court enter the following orders and relief:

a.      A declaration that Plaintiff is entitled, pursuant to the Franchise Agreements, to an injunction preserving the status quo *ante* pending resolution of the parties' dispute;

b.      a preliminary and permanent injunction enjoining Defendants from: (1) operating their Workout Anytime® Health Clubs as anything other than Workout Anytime® Health Clubs within the Territory set forth under the Franchise Agreements, pending resolution of the parties' dispute; (2) engaging in the operation of a workout facility within the non-compete territory defined in the Franchise Agreement, either directly or indirectly, in any relation or capacity whatsoever, except as an Workout Anytime licensee under the terms set forth in the Franchise Agreement; (3) soliciting any of the customers or employees from the respective Workout Anytime® Health Clubs (4) transferring or attempting to transfer any interest in the facilities without the prior written approval of Plaintiff; (5) changing the name

of the workout facilities from "Workout Anytime" to any other entity; (6) removing any signs, decals, or placards bearing the name "Workout Anytime" from the Health Club without the consent of Plaintiff; (7) terminating all of the Franchise Agreements between Plaintiff and Defendants without proper justification; (8) ceasing operation of the Franchises that Defendants currently owns and operations; and (9) otherwise breaching the Franchise Agreements;

c.      an Order granting Plaintiff its attorneys' fees and costs associated with prosecuting this action in accordance with Section 19.3 of the Franchise Agreements;

d.      such other and further relief as the Court deems just and proper.

Dated: July 18, 2023                    Respectfully submitted,

                                        **BRADLEY ARANT BOULT CUMMINGS LLP**

                                        */s/ Christopher Anulewicz*_____
                                          Christopher Anulewicz
                                          Georgia Bar No. 020914
                                          1230 Peachtree Street NE
                                          Atlanta, GA 30309
                                          T (404) 868-2030
                                          canulewicz@bradley.com

Jonathan Labukas (*pro hac vice*
forthcoming)
QUARLES & BRADY LLP
2020 K. Street, NE, Suite 400
Washington, DC 20006
T  (202) 372-9514
F  (202) 372-9599
Jon.Labukas@quarles.com

Daniel Janssen (*pro hac vice* forthcoming)
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Suite 2350
Milwaukee, WI 53202
T (414) 277-5733
F (414) 271-3552
Daniel.Janssen@quarles.com

*Attorneys for the Plaintiff,*
*Workout Anytime Franchising Systems, LLC*

## <u>VERIFICATION OF COMPLAINT</u>

I, Michael Anderson, a citizen of the United States and resident of the State of Georgia, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed on July 18, 2023

By: _/s/ Michael Anderson_

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on July 18, 2023, the foregoing was filed, via the Court's electronic filing system, and sent to the following counsel for Defendants:

Lisa Wolgast
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
T (404) 233-7000
F (800) 849-0970
lwolgast@mmmlaw.com

By: *  /s/ Christopher Anulewicz*
Christopher Anulewicz