# EXHIBIT A

**EXHIBIT A**

*#197A*
*Athens TN*
*Greff*

**FRANCHISE AGREEMENT**



Date: 01/01/2020 _____ 20[●]

**(1) Workout Anytime Franchising Systems, LLC**

The Franchisor

**(2) [    ]**

The Franchisee

WOA Athens TN, LLC.

**Franchise Agreement for the Operation of a**

**Workout Anytime® Club Located at:**

921 Decatur Pike Athens, TN 37303

WOAT FDD 2019v5

## TABLE OF CONTENTS

SECTION 1 - GRANT OF LICENSE .................................................................................................2

SECTION 2 - FRANCHISE TERM AND RENEWAL .................................................................3

SECTION 3 - INITIAL FRANCHISE FEE .....................................................................................4

SECTION 4 - CONTINUING FEES ................................................................................................4

SECTION 5 - ADVERTISING AND PROMOTION ....................................................................7

SECTION 6 - RECORDS - LATE PAYMENT CHARGE ...........................................................8

SECTION 7 - SERVICES AND ASSISTANCE PROVIDED BY THE FRANCHISOR ..........9

SECTION 8 - LOCATION OF HEALTH CLUB FACILITY; CONSTRUCTION AND OPENING FOR BUSINESS; LEASE OR MORTGAGE.............................................................11

SECTION 9 - MAINTENANCE AND UPGRADING THE CLUB .........................................12

SECTION 10 - CONFIDENTIAL OPERATIONS MANUAL ..................................................13

SECTION 11 - FRANCHISEE'S DUTIES AND OBLIGATIONS............................................13

SECTION 12 - PURCHASE OF EQUIPMENT, INVENTORY AND SUPPLIES ..................18

SECTION 13 - INSURANCE AND INDEMNIFICATION.......................................................19

SECTION 14 - TRADEMARKS AND TRADE SECRETS ........................................................20

SECTION 15 – LOSS, CONDEMNATION AND CASUALTY ...............................................22

SECTION 16 - RESTRICTIONS ON COMPETITION ............................................................23

SECTION 17 - TERMINATION ...................................................................................................24

SECTION 18 – TRANSFER AND ASSIGNMENT....................................................................29

SECTION 19 - MISCELLANEOUS .............................................................................................33

EXHIBIT A - PERSONAL GUARANTEE ....................................................................................1

EXHIBIT B - NON-COMPETITION AND NON-SOLICITATION AGREEMENT ................1

**Workout Anytime Franchising Systems, LLC**

**FRANCHISE AGREEMENT**

This Franchise Agreement (this "Agreement") is entered into between Workout Anytime Franchising Systems, LLC, a Georgia Limited Liability Company ("Workout Anytime", "Franchisor", "us" or "we"), whose principal address is 2325 Lakeview Parkway, Suite 200, Alpharetta, Georgia, 30009, and WOA Athens TN, LLC.                       , a   limited liability company   ("Franchisee" or "you")

**LET ALL PARTIES KNOW**

Workout Anytime owns a unique system for opening and operating a twenty-four (24) hour health and fitness facility   for the general public through a uniform system which has high standards of service, uses quality equipment, and operates under the business format created and developed by Workout Anytime Franchising Systems, LLC known as the Workout Anytime Franchise System (the "System");

The distinguishing characteristics of the System include the name Workout Anytime, workable and functional interior and exterior designs, confidential operating procedures, standards and specifications for equipment, services, products, and both management and marketing programs. All distinguishing characteristics may be changed, improved, and further developed by Workout Anytime. They are known as "Trade Secrets" and are designated by and identified with the marks described in this Agreement;

Workout Anytime identifies itself by means of certain trade names, service marks, logos, emblems, and indicia of origin, including the Federal registered trademarks "Workout Anytime" and "24/7 Get Fit", and the common law rights associated with "Workout Anytime 24/7", along with other trade names and service marks which are now, or may be in the future, designated by Workout Anytime in writing for use with the System (the "Marks");

Workout Anytime continues to use, develop and control the use of the Marks to identify for the public the source of services and products marketed under the System, and which represent the System's high standards of quality, cleanliness, appearance and service;

You recognize the benefits to be derived from being identified with the System. You also recognize the value of the Marks and the continued uniformity of image to you, Workout Anytime, and other franchisees of Workout Anytime. You understand the importance to the System of Workout Anytime's high and uniform standards of quality, cleanliness, appearance and service, and further recognize the necessity of opening and operating your Workout Anytime health club facility in conformity within the System;

You recognize that to enhance the value of the System and goodwill associated with it, this Agreement places detailed obligations on you, including adherence to Workout Anytime's reasonable present and future requirements regarding the types of services offered, advertising, physical facilities, operational techniques, and related matters; and,

You wish to be assisted, trained, and franchised to operate a health club facility pursuant to the provisions, and at the location within the territory specified in, this Agreement (the "Territory"). You have also had an adequate opportunity to be thoroughly advised of the terms and conditions of this Agreement by counsel or an advisor of your own choosing.

- 1 -

**THEREFORE,** you and us, intending to be legally bound and in consideration of mutual agreements, covenants and promises contained in this Agreement, agree as follows:

## SECTION 1 - GRANT OF LICENSE

1.1    Subject to the limitations contained in this Agreement, Workout Anytime grants to you, during the Term (as defined below) the rights and license (the "License") to:

    A.   Operate a health club facility that uses the System (the "Club" or the "Franchised Business") upon the terms and conditions of this Agreement, in one (1) single territorial area and at one (1) location as described in Exhibit "L" (the "Territory");

    B.   Use the Marks at the Club and to utilize the System; and,

    C.   Offer and market at the Club related services and products (optional) that have been approved by Workout Anytime.

1.2    During the Term, Workout Anytime will not use or license any of the Marks licensed to you in connection with the operation of any other Club within your Territory described in Exhibit "L".

Except as expressly provided in this Agreement, Franchisee has no right to exclude, control or impose conditions on the location, operation, or otherwise of present or future Workout Anytime® (or any other brand) units or distribution channels of any type, franchised or company-owned, regardless of their location or proximity to the Club. Franchisee does not have any rights with respect to other and/or related businesses, services, and/or products, in which Franchisor or any Franchisor-related persons or entities may be involved, now or in the future.  Any rights not expressly granted to the Franchisee are reserved to the Franchisor.  Such rights reserved to the Franchisor include but are not limited to the following:

    A.   Grant other franchises or licenses and to operate company or affiliate owned fitness centers within private establishments located within the Territory, if access to those centers is limited to employees of the business, or transient guests of the business;

    B.   Establish, and license others to establish, Workout Anytime® businesses at any location outside the Territory, notwithstanding their proximity to the Territory or their actual or threatened impact on sales at Franchisee's Club;

    C.   Own and operate health and fitness businesses under different marks at any location(s) inside or outside of the Territory, or license to others the right to own and operate health and fitness businesses under different marks at any location(s) inside or outside of the Territory;

    D.   Sell and distribute, directly or indirectly, or license others to sell and distribute, directly or indirectly, any products, services or merchandise, from any location or to any purchaser, through any channel or method of distribution (including, but not limited to, sales made by or through mail order and/or on the Internet), so long as such sales are not conducted from a Workout Anytime® business operated from a location inside the Territory;

-2-

E.   In the event Franchisor or its affiliates acquire another chain or system, or Franchisor or its affiliates are acquired by another chain or system, that operates and/or franchises stores or retail outlets that are the same or similar to Workout Anytime® businesses in that they have a substantially similar concept and/or offer for sale similar products or services, Franchisor or its affiliates may establish, acquire or operate, or license others to establish and operate, stores and retail outlets under other systems or other marks, which stores or retail outlets may offer or sell products or services that are the same as, or similar to, the products and services offered from a Workout Anytime® business, and which stores or retail outlets may be located within or outside the Territory, despite these stores' proximity to Franchisee's Club or their actual or threatened impact on sales at Franchisee's Club;

F.    Own or operate Clubs offering the same or similar services under the Marks in "non-traditional venues" such as hotels, airports, schools, or hospitals in a Franchisee's Territory; and

G.  Engage in any other activities not expressly prohibited by this Agreement.

## SECTION 2 - FRANCHISE TERM AND RENEWAL

2.1   **Initial Term.**

The term of this Agreement (the "Initial Term")  shall commence on the date hereof, and shall expire either at midnight on the day preceding the fifteenth (15th) anniversary thereof unless terminated sooner in accordance with the provisions for termination of this Agreement

2.2   **Renewal and Renewal Conditions.**

Franchisee may, at its option, renew this franchise for additional periods of five (5) years each, provided that, at the time of renewal:

A.  the Franchisee gives the Franchisor written notice of such election to renew not less than six (6) months nor more than twelve (12) months prior to the end of the Term;

B.  the Franchisee executes the Franchisor's then current standard form of Franchise Agreement, which may include, without limitation, a higher royalty fee and a higher advertising contribution than that contained in this agreement;

C.  subject to any limitations imposed by applicable law, the Franchisee executes a general release in a form prescribed by the Franchisor of any and all claims against the Franchisor and its subsidiaries and affiliates, and their respective officers, directors, members, managers, agents and employees;

D.  the Franchisee is not in default of any provision of this agreement, or any amendment hereof or successor hereto, or any agreement between the Franchisee and the Franchisor, or any subsidiary or affiliate of the Franchisor, and the Franchisee has substantially performed all of Franchisee's obligations throughout the Term;

E.  Franchisee has paid or otherwise satisfied all monetary obligations owed by the Franchisee to the Franchisor and its subsidiaries and affiliates and the Franchisee has timely paid or otherwise satisfied these obligations throughout the term of the Agreement;

- 3 -

F.  the Franchisee agrees, at its sole cost and expense to reimage, renovate, refurbish and modernize the Club, within the time frame required by the Franchisor, including the building design, parking lot, landscaping, equipment, signs, interior and exterior décor items, fixtures, furnishings, trade dress, color scheme, presentation of trademarks and service marks, supplies and other products and materials to meet the Franchisor's then-current standards, specifications and design criteria for the Club, as contained in the then-current Franchise Agreement, Manual, or otherwise in writing, including, without limitation, such structural changes, remodeling and redecoration and such modifications to existing improvements as may be necessary to do so; and

G.  the Franchisee shall have paid to the Franchisor, a renewal fee of Two Thousand Five Hundred ($2,500.00) Dollars (the "Renewal Fee").

## SECTION 3 - INITIAL FRANCHISE FEE

3.1  In consideration of the Franchisee receiving the opportunity to establish the Workout Anytime franchised business, and to conduct it at the Club premises, the Franchisee shall pay toto Franchisor, upon the execution of this Agreement, an initial, non-recurring, non-refundable franchise fee in the amount of Thirty-Five Thousand ($35,000) Dollars (the "Initial Franchise Fee"). The Initial Franchise Fee shall be deemed to be fully earned by the Franchisor upon the execution of this Agreement by the Franchisor and in consideration of the grant by it to the Franchisee to establish the franchised Club as provided herein. The Franchisee shall not be entitled to a refund of any part thereof, regardless of the date of expiration or termination of this Agreement, except as specifically provided herein.

3.2  If we agree to sell you up to three (3) Clubs, the Initial Franchise Fees for the additional Clubs, if purchased at the time you enter into our Development Agreement and initial Franchise Agreement are as follows: (i) $35,000 for the first Club; (ii) a total of $55,000 for the right to develop two (2) Clubs; and (iii) $60,000 for the right to develop three (3) Clubs. The Clubs must be developed in accordance with the Development Schedule set forth in the Development Agreement.

If you do not enter into a Development Agreement, all future purchases of franchises will be at the then-current Initial Franchise Fee.

3.3  The amounts referred to above do not include any applicable Federal, State or Local Taxes which may be payable to the appropriate taxing authorities.

Athens, TN Transfer Fee $7500.00

## SECTION 4 - CONTINUING FEES

4.1  **Continuing Monthly Royalty Fee.** On or before the tenth (10th) day of each month, commencing when you begin the pre-sale of memberships and continuing for the full term of this Agreement, you will pay the following continuing monthly royalty fee (the "Royalty Fee"):

1.  During the first five (5) years of the Initial Term, you will pay a monthly Royalty Fee of Four Hundred Ninety-Nine ($499.00) Dollars. During the sixth (6th) through tenth

- 4 -

(10th) years of the Initial Term, you will pay a monthly Royalty Fee of Five Hundred Forty-Nine ($549.00) Dollars. During the eleventh (11th) through the fifteenth (15th) years of the Initial Term you will pay a monthly Royalty Fee of Five Hundred Ninety-Nine ($599.00) Dollars. During the first renewal term, if applicable, you will pay a monthly Royalty Fee of Six Hundred Forty-Nine ($649.00) Dollars; plus

2.      a monthly Royalty Fee equal to four (4%) percent of your Gross Revenues.

3.      "Gross Revenues" includes all revenue you generate from all business conducted at your Club, including but not limited to membership fees, "Rate Guaranty" or comparable fees; personal training fees, tanning bed fees, massages, and the sale and delivery of any other services, products, merchandise, and tangible property of any nature whatsoever, whether in cash or for credit, from sources paying at the club, outside the club or online and whether collected or uncollected. "Gross Revenue" does not include the amount of any applicable sales tax imposed by federal, state, municipal, or other governmental authority if such taxes are stated separately when the customer is charged, and you pay such amounts as and when due to the appropriate taxing authority. Also, excluded from Gross Revenues is the amount of any documented refunds, charge backs, credits, and allowances given to customers in good faith and only in accordance with our operating procedures. All barter and exchange transactions for which you furnish services or products in exchange for goods or services to be provided by the vendor, supplier, or customer will be valued at the full retail value of the memberships bartered in exchange for the goods or services provided to you. Gross Revenues also includes the proceeds of any business interruption insurance paid to you. Gross Revenue also includes any payments you receive from vendors.

4.2   **National Brand Development Fund Fee.** By the tenth (10th) day of each month you will pay a monthly National Brand Development Fee equal to one (1%) percent of your monthly Gross Revenues. Payment of the National Brand Development Fee will commence when you begin the pre-sale of memberships to your Club. We reserve the right to increase the monthly National Brand Development Fee to a maximum of two (2%) percent upon thirty (30) days' advance written notice. Such monies will be utilized for the design and development of advertising, both local and national advertising costs, public relations, trade shows and conventions, and those other costs associated with both developing and promoting the System and the Workout Anytime brand.

4.3   Notwithstanding any designation by you as to what your continuing Monthly Royalty Fee is comprised of or how it has been calculated, we have the sole discretion to apply such payment(s) made by you towards any of your indebtedness for Monthly Processing Fees, advertising and promotional contributions, purchases, interests, collection costs or any other indebtedness.

4.4   **Technology Fee and Software License Fee**. You will pay a monthly Technology Fee of Five Hundred Ninety-Five ($595.00) Dollars by the tenth (10th) day of each month to compensate us for our expenses of developing and managing the franchisor's website, the franchisee's specific web page which links from the franchisor's website, as well as your Club's email platform (including up to five [5] discrete email addresses) and other technology we determine important in the operation of your Club. Payment of the Technology Fee shall commence when you begin the pre-sale of memberships for your Club. You also must install certain software on your computer system as we determine from time to time from approved suppliers and pay any necessary software license fees.

– 5 –

4.5     **Payment Processing Vendor and Fees.** You hereby authorize the Franchisor's approved third-party vendor (presently being ABC Financial Services, Inc.) to deduct from any monies it collects on your behalf the amount of all fees you are obligated to pay us and/or our affiliates on the due date of such fee(s). All Gross Revenue derived from the sale of all products and services at your Franchised Club must be processed through Franchisor's approved third-party payment processor. You also authorize said vendor to supply us with any information it may have dealing with the operation of your Club and account. To effectuate the terms of this Section, and to ensure the proper and timely remittance of all fees due the Franchisor under this Agreement, you hereby irrevocably constitute and appoint Workout Anytime your true and lawful attorney-in-fact to permit our review and, as may become necessary, our amendment of your account with that third-party vendor employed to collect your monthly membership monies. This power of attorney is irrevocable and coupled with an interest and shall survive the termination of your franchise.

4.6     As security for all monetary and other obligations of Franchisee to Franchisor or its affiliates as set forth in this Agreement, Franchisee grants to Franchisor a first priority security interest in all assets of Franchisee in the Club, including entire club membership database for current and former members, Franchisee's monthly recurring draft, all furniture, fixtures, machinery, equipment, inventory and all other property (tangible or intangible), now owned or later acquired by Franchisee used in connection with the franchised health club business and wherever located as well as all contractual and related rights of Franchisee under this Franchise Agreement and all other agreements between the parties. Franchisee agrees to execute such financing statements, continuation statements, notices of lien, assignments or other documents as may be required to perfect and maintain Franchisor's security interest described in this paragraph and authorize us to file in the public records of the county in which your Club may be located one (1) or more financing statements (i.e., UCC-1 financing statement) to evidence this security interest. Franchisor may, in its discretion, enter a subordination agreement, in form and substance satisfactory to it, whereby it will subordinate its security interest to: (a) the security interest of a reputable institutional lender relating to a loan to Franchisee for reasonable working capital purposes; (b) the purchase money security interest of an approved equipment vendor for any equipment purchased or leased by Franchisee and used in the operation of the Franchised Business; and (c) the purchase money security interest of a supplier of approved products sold at the Club. Franchisee shall pay all filing fees and costs for perfecting Franchisor's security interest.

4.7     Each month, within ten (10) days of a written request by us, you will supply a financial statement to us of the previous month's membership activities, including the number of new members, renewing members, cancelled members and current active enrollment as well as the amount of sales generated from the Club as a consequence of any of your actions in any regard or aspect, including, but not limited to, membership sales revenue, personal training revenue, and revenue associated with the sale of merchandise and other products, including supplements, food and liquids/beverages. We may also contact you by telephone or e-mail to collect this information.

4.8     Subject to your receipt of business interruption insurance payments, if you are unable to operate the Club due to damage or loss to the Club caused or created by a casualty, act of God, condemnation, or other condition over which you have no control, then the Royalty Fee will be waived for a period no greater than six (6) months commencing with the month in which such damage or loss occurs.

4.9     **Alignment Deficiency Fee.**  In the event of default of its obligations under this Agreement by Franchisee, at Franchisor's sole discretion, and without waiver of any of Franchisor's rights under this Agreement, in lieu of the termination of this Agreement, Franchisor may impose a fee (the "Alignment Deficiency Fee") in an amount up to One Thousand Five Hundred ($1,500) Dollars per event of default.  Franchisee must pay the Alignment Deficiency Fee within three (3) days of Franchisor's demand.

4.10    **Computer System Corruption Fee.**  If Franchisee fails to maintain computer virus protection software in accordance with Franchisor's requirements and the Manual, on any computer it uses to access Franchisor's computer network, and any virus, malware or similar issues are transmitted to Franchisor's computer network as a result of Franchisee's failure, Franchisee shall pay a fee in the amount of the fees charged by outside vendors and verifiable internal expenses in relation to the issue per occurrence.

## SECTION 5 - ADVERTISING AND PROMOTION

5.1     Commencing on the date you open the Club for business and continuing throughout the term, you will spend a minimum of Two Thousand ($2,000.00) Dollars per month on advertising, marketing and otherwise promoting your Club (the "Local Advertising Expenditure"). Workout Anytime will offer recommendations as to the type, manner, and time frame to maximize the benefit of your advertising. Workout Anytime has the right to require you to pay the Local Advertising Expenditure directly to it and if so required, Workout Anytime will make such expenditures as it deems reasonably necessary to promote your Club within your territory. You are required to spend Four Thousand ($4,000) Dollars per month to advertise locally during the initial pre-sale, start-up and grand opening phase to help establish name recognition in your area. You must submit proof of your expenditures for Local Advertising to Workout Anytime upon request.

5.2     Franchisor will make available to you advertising and promotional materials for the Club which are used by us, our affiliates and other franchisees of the System. We will provide you with a sample of each type of advertising and promotion material at no charge via web download, or other means of transmission we deem appropriate. If you want additional copies you must pay duplication or printing costs. You may develop advertising materials for your own use, at your own cost, subject to Franchisor's written approval, which we will provide within ten (10) days of your submission of the proposed materials. If we have not approved the use of the materials within ten (10) days, they are deemed not approved. Franchisor reserves the right to reject or stop your advertising if it is deemed inappropriate or not in keeping with the standards and quality of the brand.

5.3     Franchisor has the right to approve the media in which you propose to advertise.  You must submit to us in advance, any proposal describing the media in which you propose to advertise, providing sufficient detail to permit us to evaluate it.  We will have ten (10) days to approve or disapprove the use of our materials in the media you propose.  If we have not approved the use of the materials within ten (10) days, they are deemed not approved.

5.4     You will install and, during the term of this Agreement maintain an outdoor sign in a prominent location in accordance with Franchisor's sign specifications, or as we otherwise approve in writing, unless you are prohibited from doing so by applicable laws and regulations. You will use your best efforts to obtain any permit or variance required to allow the installation and maintenance of an outdoor sign meeting Franchisor's specifications so long as it does not impose any undue economic

burden on you. You may be restricted by local building owner or city specifications requiring adherence to a pre-established style or format.  Franchisor will allow for these local and city variances.

5.5     **Internet Advertising.**

We maintain a website that provides information about the System, the products and services offered by franchisees and we will have sole discretion and control over it.  We also have the sole right to create interior pages on our website(s) that contain information about your business and other franchised and company owned locations.  All Franchisees are given access to post on the interior web pages for their location within the Franchisor's guidelines.

You may not establish a presence on, or market using, the Internet without our prior written consent.  If we disagree with the content of your Franchisee's Page, our determinations will control.  We retain the sole right to advertise or use the Marks on the Internet.  We retain ownership of your Facebook, Facebook groups and communities, Google, Yahoo, Bing, Yelp, and any other online business profile pages.  We will establish your internet presence and add the franchisee as administrator, however, franchisee must immediately provide all login and password credentials to franchisor if they are changed.  We may require you to provide content for our Internet marketing pages.  We may require you to provide content for our Internet marketing pages.  Should your internet presence become inactive or fails to comply with system standards, Franchisor may assume control of all internet activities for your club.  You must comply with our intranet and Internet usage rules, style guide, and requirements.  We retain the sole right to approve any linking to, or other use of, the Workout Anytime Internet site.   You must also establish or maintain a landing/splash page, online business profile or other presence on the Internet through any internet or social networking site in connection with the operation of your Club, including but not limited to Facebook, LinkedIn, MySpace, Plaxo, Twitter, Instagram, Snapchat, YouTube or any other social media platforms that may be required by Franchisor that uses any variation of the Marks or references the System.  We must also approve your use of linking and framing between web pages and all other websites.

5.6     **Social Media.**  You may not engage in advertising or the promotion of your Club using social media programs that offer deeply discounted membership fees, such as, but not limited to such programs as Groupon, Living Social, Scout Mob or other similar programs without the express written consent of Workout Anytime, which consent shall be at our sole discretion.


### SECTION 6 – RECORDS – LATE PAYMENT CHARGE

6.1     You must prepare on a current basis complete and accurate records concerning all financial, marketing and other aspects of the business conducted under this Agreement. You must maintain an accounting system which accurately reflects all operational aspects of the Club including uniform reports as may be required by Workout Anytime. Your records shall include tax returns, monthly reports, statements of Gross Revenue (to be prepared each month for the prior month) and profit and loss statements and balance sheets (to be prepared at least annually by a Certified Public Accountant). All financial data with respect to your business that is required will be for Franchisor's own use, will be kept confidential, and will not be made available to other franchisees, prospective franchisees, or other third parties except to the extent that Workout Anytime decides, or is required to make a "Financial Performance Representation" under the franchise disclosure laws. The records

- 8 –

required under this Sub-section pertain only to your operation of the Club. Workout Anytime has no right to inspect or copy the records of any unrelated business activity you may have.

6.2    To encourage prompt payment and to cover the costs and expenses involved in handling and processing payments, you will also pay, upon demand, a late payment fee equal to the greater of; (i) one and one-half percent (1 1/2%) per month on all payments due to Workout Anytime for the period said payments are due and unpaid; or (ii) the highest rate of interest permitted by law. Each failure to pay Royalty Fees, National Brand Development Fees, Technology Fees, and other fees or amounts payable to Workout Anytime when due is a material breach of this Agreement.

6.3    Upon our written request you will make available the following records and unlimited real-time access to your computer system:  An accurate set of books reflecting your Gross Revenues; all tapes and readout totals of cash registers or other point of sale devices; sales slips; order records of transactions with concessionaires and vendors; federal, state and city tax returns; banking records; accounts receivable; and such other records as may be needed for an effective audit of your gross sales. All such books and records shall be retained for a period of at least three (3) years after the end of each calendar year to which they relate, or if we have begun an audit, for such longer period as may be required to complete such audit.  All such books and records shall be subject to inspection and audit by us at all reasonable times.

6.4    We will have the right to have an auditor of our choice make a special audit of all your books and records, wherever located, pertaining to your Gross Revenue. If your actual Gross Revenues exceed the figures you have submitted to us previously by more than two percent (2%) in any calendar year, then you will pay for the cost of the audit, otherwise the cost of such audit shall be borne by us; and (ii) if such Gross Revenues shall be understated by four percent (4%) or more in any calendar year, or if the Gross Revenue is understated on three (3) or more occasions during the Initial Term, we will have the option to terminate this Franchise Agreement pursuant to the terms of Section 17.  You will promptly pay to us any deficiency in which is established by any audit including any applicable late fees or penalties.

6.5    You acknowledge and agree that the restrictions imposed above are reasonable and necessary to protect the goodwill associated with the System and the Marks, as well as our reputation and image, and are for the protection of us, you, and all other franchisees that own and operate a Workout Anytime Club.


## SECTION 7 - SERVICES AND ASSISTANCE PROVIDED BY THE FRANCHISOR

7.1    The Initial Franchise Fee and Royalty Fees are paid for the License which includes the use of the Marks and the System, owner's training, and for certain services rendered by Workout Anytime.

7.2    Workout Anytime will offer you initial and continuing services as we deem necessary or advisable in furthering the business of your Club, and the business of the System as a whole, in connection with protecting the Marks and goodwill of Workout Anytime. Failure of Franchisor to provide any service whether specifically described herein, either initially or continuing, will not excuse you from paying the Initial Franchise Fee or the fees set forth in Section 4 herein.

7.3    Initial and continuing services provided by Workout Anytime are:

– 9 –

A. Equipment orders will be placed through our affiliate, Commercial Fitness Products, Inc. with our assistance and guidance. We will help the franchisee determine the proper amount of time between equipment orders, equipment delivery, and their set-up to ensure the proper opening of your Club.

B. Designation of your Territory.

C. Furnishing you with specifications or guidelines for all initial and replacement equipment, inventory and supplies required for the operation of your Club.

D. Providing you or your designated manager (the "Manager") and up to one (1) other person with an initial training program. You and your Manager must attend and satisfactorily complete the initial training program prior to opening the Club. The initial training program will be conducted approximately nine (9) to twelve (12) weeks prior to the opening of your Club.

Franchisee must attend to conclusion, all required pre-opening training, which will not be waived under any circumstances. You will be responsible for travel and living expenses incurred by you or any of your employees who participate in the training program. The initial training and orientation program will be held at our headquarters or at another location that we designate and will include a minimum of thirty (30) hours of training time. Training will consist of a discussion of the System, equipment uses, administrative procedures, hiring/training employees, customer service, marketing, sales, accounting, support procedures and instructions on quality standards and practical experience in the operation of a Workout Anytime health club facility. You will likewise receive on-site training by a Workout Anytime trained individual.

E. Assistance with respect to pre-opening, opening activities and/or on-going operations or training will be available as requested by Franchise owner. On-site training assistance during opening week is optional, pending availability of Workout Anytime representatives, with you bearing the costs associated with our representative being on-site at your request.

F. Formulation of marketing plans, advertising and promotional programs and materials.

G. Providing a service number and the Workout Anytime email platform available for your on-going inquiries and consultations with Workout Anytime representatives.

H. The development of new products and service methods for the successful operation of the System as deemed beneficial at the sole discretion of Workout Anytime. You will be informed of any new product or service methods and adopt same within a reasonable specified period of such notification.

I. We will loan you or provide you with access to the electronic version of one (1) copy of the Manual containing mandatory and suggested specifications, standards, operating procedures and rules prescribed from time to time by Workout Anytime.

J. We will make commercially reasonable efforts to negotiate favorable prices and terms with major suppliers and allow you to utilize such centralized purchasing system.

- 10 -

K.   Workout Anytime may conduct visits by our field representatives from time to time. These visits, as determined necessary by Workout Anytime, will be within the sole discretion and at the sole expense of Workout Anytime.  Notwithstanding the forgoing, within six (6) months after you open your Club, we will send a representative to visit and inspect your Club and will thereafter provide to you a written report with respect to same.

L.   We may delegate certain of our obligations as set forth in this Section 7 to an Area Representative or contractor in certain geographic regions.

### SECTION 8 – LOCATION OF HEALTH CLUB FACILITY; CONSTRUCTION AND OPENING FOR BUSINESS; LEASE OR MORTGAGE

8.1     The Development Agreement will designate a site selection area in which you will locate the Club. If no location is specified in Exhibit "L" at the time you sign the Franchise Agreement, you, at your own cost and expense, will be solely responsible for locating and designating a location and for constructing and equipping the Club at the location in accordance with the System within six (6) months of the date of this Agreement. The location you choose to operate your Club must be approved by Workout Anytime. Because of our interest in the location, Workout Anytime may request, information regarding the cost of acquisition, development and construction. Any location inspection will be made solely at the option of Workout Anytime and will not be deemed to impose either any responsibility on Workout Anytime for the construction of the health club facility, or any warranty or representation of any kind, express or implied, as to its fitness or suitability. Upon its designation, the approved location will be the location specified in Exhibit "L".

8.2     You acknowledge that the location of the Club is a crucial factor in the Club's potential for success and Franchisor may reject any location, in its sole discretion. Franchisor makes no representations or warranties with respect to the availability of appropriate locations, or the suitability or potential of locations, which it may approve.

8.3     Workout Anytime will assist you in analyzing a proposed location for your Club. There are general methods used by Workout Anytime to assist you in your selection of a location for your Club. Workout Anytime assists in the location selection by ascertaining population density and proximity of the proposed location to any other Workout Anytime location(s). Workout Anytime does not hold itself out as a real estate expert and does not undertake to advise as to the suitability of any location. Our approval of a proposed location merely reflects that the proposed location generally meets our criteria for the development of a Club.

8.4     You must secure a location for your Club by purchase or lease which meets our approval within one hundred eighty (180) days of the execution of this Agreement. You agree to construct (or renovate), equip and open the Club at your expense in a good, workmanlike manner on or within twelve (12) months from this Agreement date, unless otherwise agreed between you and us in writing. The construction (or renovation) will conform to all applicable requirements of local authorities and will be in accordance with the standards and general specifications of the System. You must use an architect approved by Franchisor to prepare plans for the construction of the Club. You must submit your construction plans to us for our review.

8.5     You may not open your Club until  all construction has been satisfactorily completed, your Managers and all employees have been trained, the Club is ready for opening in all other respects

– 11 –

(including signage, inventory, fixtures and equipment), the Initial Franchise Fee has been paid in full, all State and local requirements to operate a health club facility have been satisfied, Certificates of Insurance have been furnished in accordance with Section 13, you are in compliance with all terms of this Agreement including those set forth in Section 11, all items contained in an opening checklist have been completed to Franchisor's satisfaction, and you have met your Pre-Sale Membership obligations. You acknowledge that your opening for business prior to completely satisfying all the above conditions will cause irreparable damage to Franchisor's goodwill and reputation.

8.6    If you lease the health club facility:

A.    You and your Landlord must enter into our Lease Addendum, attached hereto as Exhibit M.

B.    You will install the maximum sized signage allowed by either your lease or local government. All signs, advertising, logos or other forms or insignia pertaining to the System are to be removed from the premises demised under the lease in the event that neither you nor Workout Anytime, or its designee, is the tenant under the lease upon termination of the Agreement. Workout Anytime must approve the proposed sign, including color, font and dimensions prior to proceeding to construction of sign.

C.    You must utilize the services of our approved real estate broker to assist in your site search and to ensure the site meets Workout Anytime criteria. You will not be charged by our approved vendor for this service as such commissions are regularly absorbed by the Landlord. Should you not wish to utilize approved vendor you will be charged a fee of One Thousand Five Hundred ($1,500.00) Dollars for the costs associated with our site approval and lease review.

D.    You may not expand the Club or lease additional adjoining space to the club without the express written consent of Franchisor, which consent shall be at Franchisor's sole discretion.

### SECTION 9 - MAINTENANCE AND UPGRADING THE CLUB

9.1    Subject to the terms of this Section, and particularly Sub-section 9.2 below, you will at all times comply with all reasonable Workout Anytime standards, specifications, processes, procedures, requirements and instructions regarding your Club's physical facilities (the "Premises"), including the layout of furnishings, fixtures, and equipment, as are set forth in the Manual or in accordance with System Standards.

9.2    You will repaint the interior of the Premises a minimum of every three (3) years (or, as needed upon inspection by Workout Anytime in compliance with its reasonable standards), and remodel or upgrade the Club and all fitness equipment in the Club at your cost in accordance with our reasonable standards every five (5) years and at the time of renewal of this Agreement. You will also pay the cost of adding equipment or altering the Club for services and/or new equipment you choose to add, or that you are required to add, pursuant to Sub-section 11. **(YOU ACKNOWLEDGE THAT AN ADDITIONAL INVESTMENT WILL BE REQUIRED PURSUANT TO THIS SUB-SECTION.)**

9.3    You must modify, upgrade or update your computer system at any time that we require you to do so at your sole expense.

- 12 -

9.4    You will maintain your Club and any parking areas in good and safe condition   If you fail to maintain your Club in a condition that satisfied our reasonable requirements, we may, upon not less than three (3) days' written notice to you, order or accomplish the cleaning of the Premises, and you will be responsible for paying to us all costs we incur by doing so.

## SECTION 10 - CONFIDENTIAL OPERATIONS MANUAL

10.1   We will provide you with a copy or grant you access to the electronic version of the Workout Anytime Confidential Operations Manual (the "Manual"). The Manual will remain the sole property of Workout Anytime. You agree to immediately return the Manual to Workout Anytime at the expiration or termination of this Agreement.

10.2   You will treat the contents of the Manual as confidential and will not copy or otherwise reproduce, in whole or in part, or in any way make the contents of the Manual available to any person other than those persons employed by you to whom disclosure is necessary to enable you to operate the Club.

10.3   Workout Anytime may amend, revise and enhance the Manual and other instructional material (including its website) at any time in its sole discretion.

10.4   You agree to operate the Club in accordance with the Manual and Franchisor's website, and to be responsible for assuring compliance with the standards, specifications, requirements and instructions set forth in the Manual and Franchisor's website.

10.5   The contents of the Franchise resource section of the Workout Anytime website is deemed to be part of the Manual.

10.6   Franchisee acknowledges that because complete and detailed uniformity under many varying conditions may not be possible or practical, Franchisor specifically reserves the right and privilege, at its discretion and as it may deem in the best interests of the System, to vary standards for any franchisee based upon the peculiarities, particularities and circumstances of a specific site (i.e., landlord requirements, business potential, population of trade area, existing business practices, or any condition which Franchisor deems to be of importance to the successful operation of such franchisee's franchised business).  Franchisee shall not be entitled to require the Franchisor to grant to it a like or similar variation which Franchisor may offer or permit to another franchisee.

## SECTION 11 – FRANCHISEE'S DUTIES AND OBLIGATIONS

11.1   Consistent with the terms of this Agreement, you will diligently develop the business of your Club and use your best efforts to market and promote its core services and products.

11.2   Subject to the terms of this Agreement, including Sub-sections 9.2 and 10.4, during the Term you will comply with all present and future standards, specifications, processes, procedures, requirements and instructions regarding the operation of the Club as set forth in the Manual. In furtherance of such, you must comply with the following requirements:

– 13 –

A. A complete set of exercise equipment must be initially ordered only through Workout Anytime or another approved supplier, as may appear in the Manual, or as supplemented in the owner's section of Franchisor's website.

B. You must conduct pre-opening sales ("Pre-Sales") for your Club in accordance with our standards and Manual.

C. You or your Manager must devote its full time and best efforts to the management and operation of the Club.

D. You and your Manager must attend and satisfactorily complete the Workout Anytime initial training program. Attendance by you or your operating manager (if any) is compulsory and must be satisfactorily completed at least two (2) weeks prior to the opening of your Club.

E. Any additional service or product introduced into the System by Workout Anytime must be offered for sale on a continuing basis at your Club at the time and in the manner required by Workout Anytime.

F. You may only offer services and products for sale at your Club that have been approved by Workout Anytime in the Manual or otherwise in writing.   Workout Anytime reserves the right, in its sole discretion, to disallow any service or product that you have requested permission to offer.

G. Only signs, advertising and promotional material, services, equipment, supplies, uniforms, furnishings, color/design scheme and fixtures that meet Workout Anytime standards and specifications can be used at your Club or in the promotion or marketing of your Club.

H. All equipment, signs, products, supplies and other items necessary to add new services or products must be acquired, installed and utilized at Franchise Owner's expense within sixty (60) days of notice from us.

I. Your Club, and everything located at and within your Club, must be maintained in a safe and presentable condition and in compliance with the highest standards of cleanliness, including restrooms and showers, changing rooms and utility closets. The Club must be adequately lighted and operated in a clean and wholesome manner consistent with Workout Anytime requirements as such may be established and modified from time to time. The flooring must be new or in good condition. Appropriate window treatments must be installed to allow for the comfort and privacy of your members. All maintenance, repairs and replacements requested by Workout Anytime must be promptly made.  All consultants and employees of the Club must be clean and neat in appearance and must always wear Workout Anytime approved uniforms.

J. No alterations of the Club which materially affect the image of the Club may be made except at Franchisor's request or approval, and any alterations must conform to specifications and requirements established or approved by Franchisor in its sole discretion.

K. The Club and its business must comply with all applicable State and local laws, ordinances, rules, codes, regulations and other requirements.

- 14 -

L.  Advertising materials provided to you by Workout Anytime for your use may be used only in the manner intended to promote the business.  Any advertising materials which you create must first be submitted to us for approval prior to your use of same.

M.  The Club must be open for business twenty-four (24) hours every day during the License Term, except days the Club is closed for repairs pursuant to Section 15.

N.  The employees, the equipment and supplies, inventory and other items on hand at your Club must always be sufficient in quality and number to efficiently meet the current and anticipated volume of your business.

O.  All debts and taxes arising from the Club and its business, except those duly contested in a bona fide dispute, must be paid when due including debts payable to your landlord, lender/financer, third party vendors, and both Workout Anytime and our affiliates.

P.  All necessary and appropriate measures must be taken to avoid an unsatisfactory sanitation or health rating by or from any governmental agency or authority.  Conditions or practices disapproved by any such agency or authority must be promptly corrected.

Q.  All your dealings and transactions with Workout Anytime members, customers, suppliers and other franchisees are to be performed fairly and honestly.  You will not permit a non-member access to either your or another franchisee's Workout Anytime Club unless on an introductory or trial basis, and then only for a maximum of thirty (30) days.  You will not solicit or entice another franchisee's employee or members originating at their Club to terminate their employment or membership to have such employee or member become associated with your franchised location.

R.  You must allow Workout Anytime reasonable space at your point of sale counter or another reasonable location inside the Club for a franchise recruitment advertisement. You are also responsible for the restocking and upkeep of that display, should one be used. Workout Anytime will be responsible for the cost of producing the advertisements.

S.  You are solely responsible for recruiting new customers to the Club through advertising, marketing and business networking.

T.  You are responsible for keeping up to date on competitors. This includes an awareness of competitors' pricing, promotional offers, advertising and services. You are responsible for taking direct action, as appropriate, and as authorized by Franchisor, to respond to a competitors' activities.

U.  You must provide training to your employees in a fashion like that which you and your Manager received from Franchisor's representatives.

V.  In accordance with your State's Health Club Act requirements (if any such law or its equivalent exists for your geographic area or jurisdiction), you are responsible for arranging for obtaining all health club certifications and licensing prior to opening.

W.  If they indicate a desire to do so, you must permit members of any other Workout Anytime franchised location the use of your Club.  You understand and agree that all Workout Anytime

- 15 -

WOAT FDD 2019v5

members, regardless of their originating membership location, are an integral component of the Workout Anytime System.  As such, they are to be treated with the same courtesy and respect you regularly extend to a member originating from your Club. This membership reciprocity includes access to tanning, massages, etc., if the member has purchased a membership that includes premium services at their originating Workout Anytime club.  You must permit those members to utilize such premium features at your Club to promote a positive experience for both you and the member.  Your failure to comply with Franchisor's reciprocity policy as stated in this Section is a material breach of this Agreement.

X.   You must supply us with a copy of the lease governing your Club premises and ensure that Workout Anytime is included as a party to be notified in any instance, as well as our being able to exercise an option to take possession of the facility upon your default or termination should we, in our sole discretion, wish to do so.  Such option will be secured by your submission to your landlord of Exhibit "M" attached hereto.

Y.   You agree to never transfer members of your Club to any other Workout Anytime club without the express written permission of both the member and Workout Anytime.  During or after the termination or expiration of this Agreement, you will never transfer, or attempt to transfer, any individual's membership to any club that is not a part of the System.

Z.   You will immediately notify us of any legal action or proceeding by an individual or agency against you relating to your Club.

AA.   You acknowledge that when we may be required to perform any service for you, we may use third parties, including affiliates of ours, to perform those services.

BB.   Upon the reasonable request of the Franchisor, the Franchisee will present to its members such evaluation forms as are periodically prescribed by Franchisor and shall participate or request its members to participate in any marketing surveys performed by or on behalf of Franchisor.

CC.   If the Franchisee is an entity other than a single individual, then you must supply us with copies of the organizational documents including information concerning all members, shareholders or partners as we may require.

DD.   Once an individual joins your Club, and for so long as his/her membership remains in effect that person's membership fees are paid solely to you.  Accordingly, except for personal training fees which might be purchased at a non-originating franchised location, only you are to receive fees associated with such individual's Workout Anytime membership regardless of the degree such member uses another franchised location.

EE.   **Minimum Pre-Sale Membership Requirement**. If you have not sold at least Five Hundred (500) Charter Memberships by the date your Club is open for business, we have the right to send up to two (2) representatives of Franchisor to your Club for up to ten (10) days to provide sales and other training to you and your staff.  You must pay our then-current training fee, currently Five Hundred Dollars ($500) per day per trainer, plus the expenses of travel and room and board of the trainers.

- 16 –

FF.     **Minimum Monthly Gross Revenue Requirement.**  Beginning in the twelfth (12th) month after the opening of your Club, you must generate a minimum of monthly Gross Revenue of Thirty-Five Thousand Dollars ($35,000) (the "Minimum Monthly Gross Revenue Requirement").  In the event that you fail to attain the Minimum Monthly Gross Revenue Requirement for 2 consecutive months, we have the right to impose any one or all of the following requirements until your Monthly Gross Revenues equal or exceed the Minimum Monthly Gross Revenue Requirement: (i) we may increase your required local advertising requirement by up to 200%; and/or (ii) we may require you and/or your designated manager to attend additional training at Franchisor's headquarters or at another location that Franchisor designates, and you will be required to pay our then-current training fee.  The Minimum Monthly Gross Revenue Requirement is not intended, nor may it be construed to be a Financial Performance Representation.

GG.     **Personal Guarantee.**  All owners of ten (10%) equity in the Franchisee must sign a Personal Guarantee and Non-Competition Agreement in a form we require.

11.3   In prescribing standards, specifications, processes, procedures, requirements or instructions under Sub-section 11.2 or any other provision of this Agreement, Workout Anytime will assist in general market research and provide guidance in determining the prices charged by you for services or products of any kind. Workout Anytime will not have control over the day-to-day operations of the Club. Unless otherwise provided for herein, you are expected to establish your own prices as to all products or services other than both individual/family and corporate membership rates or costs and the Rate Guaranty Fee, which you understand and agree are to be established solely by Workout Anytime, from time to time, as it may determine in its sole discretion.

11.4   Workout Anytime and our representatives or designated contractors will have the right to enter, inspect and photograph your Club at any time (it being understood by the parties that the facility is a club operating twenty-four (24) hours a day, seven (7) days a week), and our representatives will have the right to discuss with you or other people you may designate all matters that may pertain to compliance with this Agreement and with Workout Anytime standards, specifications, requirements, instructions and procedures. You will in all respects cooperate with Franchisor's rights under this Sub-section provided that our exercise of these rights will not unreasonably interfere with the conduct of your business.

11.5   You agree during the Term and for three (3) years after the expiration and termination of this Agreement that you will supply to Workout Anytime your home address and telephone number(s) which Workout Anytime may include in its Disclosure Document.

11.6   If you are an individual, you or your Manager trained in the Workout Anytime system must directly supervise the franchised business. If you are a corporation or other entity, or if you have in Franchisor's sole judgment, insufficient experience in a business like a Workout Anytime franchise or experience in business management in general, then you must nominate an operating partner or Manager having the required experience who will have direct responsibility for all operations of the Club. Any change in the operating partner or Manager will be subject to the approval of Workout Anytime. The operating partner will be the correspondent referred to in Sub-section 20.9 below.

11.7   **Attendance at Annual Convention.**     Franchisor may hold an annual conference (the "Convention") at a location we select.  We will determine the topics and agenda for the Convention

- 17 -

to serve the purpose among other things, of updating franchisees on new developments affecting franchisees, exchanging information between franchisees and our personnel regarding business operations, and recognizing franchisees for their achievements.   Franchisee or Franchisee's representative must attend the Convention and to pay our then-current registration fee.  If we charge a registration fee for the Annual Convention, you must pay the fee regardless of whether you attend. All expenses, including Franchisee's and Franchisee's employees' transportation to and from the Annual Convention, and lodging, meals, and salaries during the Annual Convention, are the responsibility of Franchisee.

11.8    **Ownership of Member Information and Data.**   Franchisee acknowledges and agrees that Franchisor is the owner of all information concerning the members of the Club and that Franchisee may not disclose, sell or encumber such information or data to any person or entity during the Term or following the termination, expiration, or non-renewal of this Agreement.

11.9    **Employee Matters.**    You are solely responsible for the day-to-day operation of your Franchised Business and its employees.  You will be solely responsible for recruiting and hiring the persons you employ to operate the Franchised Business.  You are responsible for their training, wages, taxes, benefits, safety, schedules, work conditions, assignments, discipline and termination.  At no point will you or your employees be deemed to be employees of Workout Anytime Franchising Systems, LLC.

    A.   Franchisee shall obtain from each of its personnel an acknowledgement signed by such personnel that such individual understands, acknowledges, and agrees that he or she is an employee of Franchisee and not Franchisor and that such individual shall look solely to Franchisee for his or her compensation and for all other matters related to their relationship with Franchisee.

    B.   Franchisee shall post a notice on an employee bulletin board clearly visible to employees at the Franchised Business notifying all employees of their employer and clearly stating that neither Franchisor nor its affiliates are an employer of the employees.

    C.   Franchisee's employees are not Franchisor's agents or employees and Franchisor is not a joint employer of these individuals.   Franchisee is solely responsible for performing all administrative functions of the Franchised Business, including payroll and providing worker's compensation insurance.  Franchisee acknowledges that it is not economically dependent on Franchisor and that Franchisor does not provide facilities, equipment or house or transport Franchisee's employees or provide to Franchisee employees tools or materials required for Franchisee's employees to perform services for Franchisee.

## SECTION 12 - PURCHASE OF EQUIPMENT, INVENTORY AND SUPPLIES

12.1    You must purchase all exercise equipment through Workout Anytime or an approved supplier/vendor as shall be listed in the Manual which we provide to you, or through the franchise resource section of our website. Commercial Fitness Products, Inc. is currently the sole approved vendor of approved fitness equipment.   You must furnish all items, including apparel, which bear the marks, only from our approved supplier.

-- 18 --

**ALTHOUGH APPROVED BY US, WE AND OUR AFFILIATES MAKE NO WARRANTY AND EXPRESSLY DISCLAIM ALL WARRANTIES, INCLUDING WARRANTIES OR MERCHANTABILITY AND FITNESS FOR ANY PURPOSE, WITH RESPECT TO FIXTURES, FURNITURE, EQUIPMENT (INCLUDING, WITHOUT LIMITATION, ALL EXERCISE EQUIPMENT), SUPPLIES OR OTHER APPROVED ITEMS.**

12.2    The standards and specifications for other equipment, supplies and other products recommended by Workout Anytime may be found in the Manual or at the franchise resource section of the Workout Anytime website.

12.3    You may not purchase other items from any other non-approved supplier/source unless approved by Franchisor.

12.4    Workout Anytime may review at any time the quality of the equipment, products and other supplies anticipated to be purchased for your club to ensure that quality standards of the System are met. Any deficiencies as to either quality or quantity must be addressed and corrected within that reasonable period which Workout Anytime may designate.

## SECTION 13 - INSURANCE AND INDEMNIFICATION

13.1    **Insurance.**  Upon commencement of the License Term, you will purchase, and maintain in full force, at all times, during the Term of this agreement, an insurance policy with those limits equal to or greater than those outlined below. Franchisor shall have the discretion during the Term to change the required insurance coverages.  Copies of all insurance policies must be provided to Workout Anytime prior to the opening of your Club and within thirty (30) days of such policies' renewal date:

A.   General Liability - $2,000,000 per occurrence/$4,000,000 aggregate;

B.   Sexual Abuse and Molestation - $1,000,000 per occurrence/$1,000,000 aggregate;

C.   Employee Related Practices Insurance (EPLI) - $1,000,000 per occurrence/ $1,000,000 aggregate;

D.   Workers' Compensation – based on state requirements;

E.   Surety Bonds – based on state requirements

F.   Such additional insurance as may be required by the terms of any lease or mortgage for the Club.

13.2    All policies of insurance required under this Section will be with insurers qualified to do business and in good standing in the State where your Club is located and will be in a form reasonably satisfactory to Franchisor. Prior to opening for business, you will furnish to Franchisor certificates issued by each of your insurers indicating that all premiums due have been paid, that all required insurance is in full force and effect and that the insurance will not be terminated or changed without at least thirty (30) days' prior written notice from the insurer to both yourself and Franchisor. New

– 19 –

certificates evidencing renewal of insurance will be furnished at least thirty (30) days prior to the date of expiration of each policy. Within five (5) days of any request by Franchisor you will deliver to us a copy of all insurance policies for our examination and confirmation.

13.3 If you fail to obtain or maintain adequate insurance as set forth herein then Franchisor may, at its election and sole discretion, obtain insurance for and in your name and its name. Within five (5) days of any written request by Franchisor you will pay all costs and premiums incurred by Franchisor in obtaining such insurance, plus an administrative fee equal to ten (10%) percent of such insurance premium.

13.4 **Indemnification.** Franchisee hereby agrees, during and after the term of this Agreement, to indemnify and hold harmless Franchisor and its affiliates, and their respective owners, directors, officers, members, managers, employees, agents, successors and assigns (the "Indemnified Parties") against, and to reimburse any one or more of the Indemnified Parties for, any and all liabilities, losses, suits, claims, demands, costs, fines and actions (the "Claims") of any kind or nature whatsoever directly or indirectly arising out of Franchisee's breach of this Agreement or the operation of the Franchised Business, unless (and then only to the extent that) the Claims are determined to be caused solely by Franchisor's intentional misconduct in a final, unappealable ruling issued by a court with competent jurisdiction or arbitrator.   For the purposes of this indemnification, "claims" includes all obligations, damages (actual, consequential, or otherwise), and the cost that any Indemnified Party reasonably incurs in defending any claim against it, including, without limitation, reasonable accountants', arbitrators', attorneys' and expert witness' fees, costs of investigation and proof of facts, court costs, travel and living expenses, and other expenses of litigation, arbitration, or alternative dispute resolution, regardless of whether litigation, arbitration, or alternative dispute resolution is commenced.   Each Indemnified Party may defend any claim against it at Franchisee's expense and agree to settlements or take other remedial, corrective or other actions.   This indemnity will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.   Any Indemnified Party need not seek recovery from any insurer or other third party, or otherwise mitigate its losses and expenses, in order to maintain and recover fully a claim against Franchisee under this section. Franchisee agrees that a failure to pursue a recovery or mitigate a loss will not reduce or alter the amounts that an Indemnified Party may recover from Franchisee under this section.

13.5 Franchisor shall not be responsible or otherwise liable for any injury, loss, or damage suffered by any person or property directly or indirectly arising out of Franchisee's operation of the Franchised Business.   Franchisor will have no liability for Franchisee's obligations to pay third parties, including any landlords or product vendors.

## SECTION 14 - TRADEMARKS AND TRADE SECRETS

14.1 You recognize and acknowledge Franchisor's exclusive ownership and right to its current and future Marks and in all related practices, procedures, methods and devices. All goodwill now or in the future associated with or relating to the Marks will accrue directly and exclusively to the benefit and is the property solely of Workout Anytime. Nothing contained in this Agreement will be construed to entitle you any right, title or interest in the Marks, or the goodwill now or in the future associated with them, other than the rights and license expressly granted in this Agreement.

14.2 You represent, warrant and agree that you will not:

- 20 -

A. Directly or indirectly contest or aid in contesting, either during or following termination of this Agreement, the validity or ownership of the Marks;

B. Take any action in derogation of Franchisor's claimed rights whether now existing or later obtained;

C. Include the Marks in either your corporate, limited liability company, or partnership name, or in any internet domain name; or,

D. Utilize the Marks in any advertising or promotion that has not otherwise first been approved, in writing, by Workout Anytime.

14.3    You agree to use only Franchisor's existing or future Marks, and related practices, systems, procedures and methods for the promotion and operation of the Club, and only in accordance with the written procedures established by Workout Anytime.

14.4    You will cause the Workout Anytime Marks to be reproduced exactly and accurately.

14.5    Except for the registration of a "d/b/a" or a fictitious name certificate for the operation of the Club, YOU WILL NOT REGISTER OR ATTEMPT TO REGISTER THE MARKS IN YOUR OWN NAME.   You may not use the Marks as any part of your entity name.  The use or registration of the name "Workout Anytime" in any form or fashion other than what may otherwise be permitted herein will be deemed a material breach of this Agreement.

14.6    You will immediately inform Franchisor of any suspected, known or threatened infringement, piracy or challenge to the Marks, Trade Secrets, methods and procedures used in the System. You will assist and cooperate with Franchisor in acting, at Franchisor's sole expense, as Franchisor deems appropriate to protect the System. Franchisor will indemnify, hold you harmless, and will reimburse you for your liability and reasonable costs for defending the Marks.

14.7    Only the principals of the franchise entity, and that manager employed by the franchisee to operate the health club facility, may utilize the Workout Anytime email platform.

14.8    Immediately upon the expiration or sooner termination of this Agreement, you will:

A. Cease and forever abstain from using any of the Marks including, but not limited to, the de-imaging and de-branding of the Premises;

B. Take all actions necessary to cancel any d/b/a/ or fictitious name registration containing any of the Marks; and,

C. Furnish Workout Anytime with evidence reasonably satisfactory to Workout Anytime of compliance with the foregoing obligations within thirty (30) days after any expiration or sooner termination.

14.9    You acknowledge that you took no part in creating or developing, have no prior knowledge of, and have no rights or claims in, or to, any element of the System. You agree that all materials loaned

- 21 –

or licensed or made available to you will be kept confidential by you and will remain the property of Workout Anytime.

14.10   Except as specifically disclosed in the Disclosure Document, Workout Anytime represents and warrants to the best of its knowledge that the Marks do not violate or infringe upon any rights of others.

14.11   You agree that any use or variant of the Marks which you may develop or originate which, in turn, may be approved and adopted by Workout Anytime becomes the sole and exclusive property of Workout Anytime.  You affirmatively waive all rights of whatever form or nature, arising under either common law or both state or federal law(s), and assign to Workout Anytime all prospective rights and interests in any intellectual property which utilizes either the present Marks themselves or any subsequent Marks which Workout Anytime may use, regardless of their originating source.

## SECTION 15 – LOSS, CONDEMNATION AND CASUALTY

15.1   You will promptly advise Franchisor upon your receipt of a notice of default or termination of your Club's lease or mortgage, or equipment lease, or security agreement related to any purchase of equipment, and will promptly provide Franchisor a copy of the notice. You will also give Franchisor notice of any proposed taking of your Club, or any of your equipment, or any portion thereof through the exercise of the power of eminent domain, foreclosure, or any dispossessory action, at the earliest possible time. If the Club or a substantial part thereof is to be taken, the Club may be relocated within the area specified in Exhibit "L" or elsewhere with Franchisor's written approval in accordance with our relocation procedures. If you open a Club at another location in accordance with Franchisor's standards and general specifications within one (1) year of the closing of the old Club, the new Club will be deemed to be the Club licensed under the Agreement. If a condemnation, lease termination or mortgage default takes place and a new Club does not, for any reason, (other than those specified in Section 8) become the Club as provided in this Sub-section, then the License will terminate upon notice by Franchisor.

15.2   If the Club is damaged, you will expeditiously repair the damage.  If the damage requires closing the Club you will immediately notify Workout Anytime in writing, and will:

A.   Relocate the Club as provided in Sub-section 15.1; or,

B.   Repair or rebuild the Club in accordance with Franchisor's then existing standards and general specifications and reopen the Club for continuous business operations as soon as practicable (but, in any event, within twelve (12) months after closing the Club), giving Franchisor thirty (30) days' advance written notice of the date of reopening.

If the Club is not (or, in the opinion of Franchisor, cannot be) reopened in accordance with this Section, or relocated pursuant to Sub-section 15.1, the License will terminate upon written notice to you.

The Term will not be extended by any interruption in the Club's operations, except for an act of God that results in the Club being closed not less than sixty (60) days nor more than one hundred eighty (180) days. You must apply for any extension within thirty (30) days following the reopening

of the Club. Except as provided in Sub-section 4.3, no event during the Term will excuse you from paying Royalty Fees or other fees as provided for in this Agreement.

## SECTION 16 - RESTRICTIONS ON COMPETITION

16.1    During the term of this Agreement, or any extensions or renewals and for a period of two (2) years following the expiration, termination, assignment or transfer of this Agreement or the franchise, you will not directly or indirectly, through corporations, partnerships, limited liability companies, trusts, associations, joint ventures or other unincorporated businesses, perform any services for, engage to acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of, any business that engages in or offers franchises for businesses that engage in or operate gymnasiums, fitness, personal training, or workout facilities, except for other health club facilities franchised by Workout Anytime or its affiliates, at the premises of the Club, or within twenty-five (25) miles of any Workout Anytime health club facility.

16.2    Nothing in this Section will prevent any active officer of yours or member of your family, either individually or collectively, from owning not more than five percent (5%) of the stock of any company, which is subject to the reporting requirements of Section 10 or Sub-section 13 (D) of the Securities and Exchange Act of 1934.

16.3    You will not at any time, during the term of this Agreement or any extensions or renewals and for a period of two (2) years following their expiration, termination, assignment or transfer, divert or solicit any member or former member of your Club or another Workout Anytime club to another workout or fitness facility other than a to a Workout Anytime club.

16.4    If any court having jurisdiction to determine the validity or enforceability of this Section determines that, strictly applied, it would by invalid or unenforceable, the scope of prohibited activities or the time or geographical provisions of this Section will be deemed modified to the extent necessary (but only to that extent) so that such restrictions as modified will be valid and enforceable.

16.5    You acknowledge that as a Workout Anytime franchisee you will have access to Workout Anytime Trade Secrets and confidential information and practices and therefore be in a unique position to use the special knowledge you will have gained while a franchisee. You acknowledge that a breach of the covenants contained in this Section will be deemed to threaten immediate and substantial irreparable injury to Workout Anytime. Accordingly, you agree that Workout Anytime will have the right, without prior notice to you, to obtain immediate injunctive relief without limiting any other rights or remedies.

16.6    If you are a legal entity, all officers, directors, stockholders, partners, members, trustees, beneficiaries and/or principals of you, the franchisee, and any persons controlled by, controlling or under common control with you must execute the Non-Competition, Non-Solicitation and Confidentiality Agreement attached hereto as Exhibit "C".

16.7    You agree that the scope of the timetables and prohibitions set forth above are reasonable and necessary to protect us and the System (including other franchisees of the System). You agree that the above referenced prohibitions are permissively broad to prevent you from taking information, materials and training which Workout Anytime is providing to you on an ongoing basis and using them to either compete with us or preempt or otherwise restrict our ability to enter new markets.

- 23 –

16.8    Franchisee acknowledges and confirms that the scope of the activities prohibited in this Section 16, as well as length of the term and geographical restrictions contained in this Section 16, are necessary to protect Franchisor's legitimate business interests and are fair and reasonable and not the result of overreaching, duress or coercion of any kind.

16.9    If Franchisee is an individual, Franchisee further acknowledges and confirms that his or her full, uninhibited and faithful observance of each of the covenants contained in this Section 16 will not cause any undue hardship, financial or otherwise, and that enforcement of each of the covenants contained in this Section 16 will not impair his or her ability to obtain employment commensurate with his or her abilities and on terms fully acceptable to him or her or otherwise to obtain income required for the comfortable support of himself or herself and his or her family, and the satisfaction of the needs of his or her creditors.

16.10   Franchisee acknowledges and confirms that its special knowledge of the Franchisor's systems and business (and anyone acquiring such knowledge through Franchisee) is such as would cause Franchisor and its franchisees severe injury and loss if he or she (or anyone acquiring such knowledge through Franchisee) were to use such knowledge to the benefit of a competitor or were to compete with Franchisor or any of its franchisees.

16.11   If any court shall hold that the time or territory or any other provision stated in this Section 16 constitutes an unreasonable restriction upon Franchisee, Franchisee agrees that the provisions of this Franchise Agreement shall not be rendered void but shall apply as to time and territory or to such other extent as such court may judicially determine or indicate constitutes a reasonable restriction under the circumstances involved.

16.12   Franchisor, in its discretion, may reduce the scope of any covenants set forth in this Section 16. Any such reduction is effective immediately upon Franchisor's delivery of notice. Franchisee shall comply immediately with any covenant as so modified. Such modified covenant is fully enforceable to the extent permitted by applicable law.

## SECTION 17 - TERMINATION

17.1    **Termination by You.**

If you are in compliance with this Agreement and Franchisor materially breaches this Agreement and fails to cure the breach within sixty (60) days after a written notice of the breach is delivered to Franchisor by you, you may terminate this Agreement, effective ten (10) days after delivery to Franchisor of a notice of termination. There are no other provisions in this Agreement that grant you the right to terminate this Agreement, and such termination may only be accomplished as provided for herein, or by agreement of the parties.

Should you terminate this Agreement in compliance with this Sub-section, you are required to comply with the post-termination procedures as set forth in Sub-section 17.7.

- 24 -

17.2 **Termination by Franchisor Without Notice.**

The Agreement will immediately terminate without notice (or in the event notice is required by law, immediately upon the giving of such notice or at the earliest time thereafter permitted by applicable law) in the event that:

A. No site has been designated and accepted pursuant to Sub-Section 8.1;

B. A permanent or temporary receiver or trustee for the Club or all or substantially all of your property is appointed by any court, or any such appointment is consented to or not opposed through legal action by you, or you make a general assignment for the benefit of your creditors, or you make a written statement to the effect that you are unable to pay your debts as they become due, or a levy or execution is made on the License, or an attachment or lien remains on your health club facility;

C. You lose possession or the right of possession of all or a significant part of the Club through condemnation, casualty, lease termination, mortgage foreclosure, equipment lease, or purchase foreclosure, and the Club is not relocated or reopened as provided in Section 15;

D. You contest in any court or preceding the validity of, or Workout Anytime ownership of, any of the Marks;

E. A material breach of Section 11.2(W) or 18 (i.e. Transfer and Assignment) occurs; or,

F. You are a corporation or limited liability company and any action is taken which purports to merge, consolidate, dissolve or liquidate you without Franchisor's prior written consent.

17.3 **Termination With Notice and Without Opportunity to Cure.** Franchisor has the right to terminate this Agreement upon notice without providing Franchisee an opportunity to cure for any of the following breaches or defaults:

A. If Franchisee or Franchisee's principals are convicted of or plead guilty or no contest to a felony or take part in any criminal misconduct or other misconduct that negatively impacts the Licensed Marks or the operation of the Franchised Business;

B. If Franchisee or Franchisee's Principal Owners commit any fraud or misrepresentation in the operation of the Franchised Business;

C. If Franchisee or Franchisee's Principal Owners make any misrepresentation or omission in connection with Franchisee's franchise application, including but not limited to any financial misrepresentation;

D. If Franchisee fails to complete the Initial Training;

E. If Franchisee directly or indirectly files suit or makes any other formal legal claim against any of Franchisor's approved vendors;

– 25 –

F.   If Franchisor sends Franchisee more than 2 notices to cure pursuant to Sections 17.4, 17.5 or 17.6 hereof in any 12-month period, regardless of whether the breaches have been cured;

G.   If Franchisee or Franchisee's principals materially violate any provision hereof pertaining to the Licensed Marks or Confidential Information or misuse the Licensed Marks or Confidential Information;

H.   If Franchisee violates the in-term restrictive covenant contained in Section 15;

I.   If a levy of writ of attachment or execution or any other lien is placed against Franchisee or any of Franchisee's principals or any of their assets which is not released or bonded against within 30 days;

J.   If Franchisee or any of Franchisee's principals become insolvent;

K.   If Franchisee voluntarily or otherwise abandons the Franchised Business. The term "abandon" includes any conduct which indicates a desire or intent to discontinue the Franchised Business in accordance with the terms of this Agreement and will apply if Franchisee fails to operate the Franchised Business for a period of three (3) or more consecutive business days without Franchisor's prior written approval;

L.   Franchisee fails to maintain insurance or to repay Franchisor for insurance paid by it, or otherwise fail to adhere to the requirements of Section 13;

M.   Franchisee fails, within thirty (30) calendar days after notification of non-compliance by federal, state or local government authorities to comply with any law or regulation applicable to the Franchised Business;

N.   Any government action is taken against Franchisee that results in any obligation upon Franchisor which in Franchisor's sole judgment is uneconomical, not in the best interests of Franchisor, or would result in Franchisor having an unintended relationship or obligation; or

O.   If Franchisee commits any fraud, criminal acts or other misconduct or makes any misrepresentation or omission to Franchisor relating to any other agreement with Franchisor or Franchisor's affiliates; or

P.   If Franchisee fails to commence operations of the Franchised Business by the required opening date, as described in Section 8.4 of this Agreement.

17.4   **Termination Upon Notice and 5 Days' Opportunity to Cure.**  If Franchisee fails to pay as and when due any sums owed to Franchisor, any of Franchisor's affiliates, or any of Franchisor's major suppliers or vendors, Franchisor may terminate this Agreement upon after the expiration of five (5) days following notice to cure.

17.5   **Termination Upon Notice and 15 Days' Opportunity to Cure.** Franchisor has the right to terminate this Agreement if any of the following defaults remain uncured after expiration of the 15-day cure period:

A.  If any audit reveals that Franchisee has understated Franchisee's royalty or advertising payments by more than 2%, or if Franchisee has failed to submit timely reports and/or remittances for any two (2) reporting periods within any 12-month period;

B.  If Franchisee fails to personally, or through an approved manager, supervise the day-to-day operation of the Franchised Business or fails to employ enough qualified, competent personnel as Franchisor requires from time to time;

C.  If Franchisee fails to maintain the strict quality controls reasonably required by this Agreement and/or the Operations Manual; or

D.  Franchisee fails to procure or maintain any licenses, certifications, or permits necessary for the operation of the Franchised Business.

17.6  **Termination With Notice and 30 Day Opportunity to Cure.** Franchisor has the right to terminate this Agreement after notice and expiration of a 30-day cure period if Franchisee fails to perform or comply with any one or more of the terms or conditions of this Agreement which are not specifically enumerated in Sections 17.2, 17.3, 17.4, or 17.5 of this Agreement, or any ancillary agreements between Franchisee and Franchisor or any agreement between Franchisee and any of Franchisor's affiliates.

17.7  **Effect of Termination.**

Should this Agreement expire or be terminated by any party and for any reason, all rights and obligations between you and Franchisor under this Agreement will terminate, except for Sub-sections 10.1 and, 10.2, Section 14 and 16, and Sub-section 17.7. In an instance of expiration or termination, you will cease to be a licensed participant in the System, and you will:

A.  Promptly pay Franchisor all amounts owing by you based on operations of the Club through the date of termination plus interest at the rate of eighteen percent (18%) per annum;

B.  Immediately discontinue the use of all Marks, signs, structures, forms of advertising, telephone listings and service, the Manual, and all materials and products of any kind which are identified or associated with the System and return all materials and products to Franchisor and, at our request, assign your Club's telephone number to Franchisor;

C.  Make no representation nor state that you are in any way approved, endorsed or licensed by Workout Anytime, or associated or identified with Workout Anytime or the System in any manner;

D.  Immediately take all steps necessary to amend or terminate any registration or filing of any d/b/a or fictitious name or any other registration or filing containing the Marks to delete the Marks and all references to anything associated with the System;

E.  Provide Franchisor the option to purchase required by Section 18.8;

F.  Comply with the provisions of Sub-sections 15.7 and 16.1; and

– 27 –

      G.  Forfeit all rights to receive membership fees and other revenue through the monthly draft from the credit card processor as of the date of termination or expiration of this Agreement.

17.8    If, within thirty (30) days after termination of this Agreement by Workout Anytime, you fail to remove all displays of the Marks from the Premises which are identified or associated with the System, Workout Anytime may enter the Premises to effect removal. In this event, Workout Anytime will not be charged with trespass nor be accountable or required to pay for any displays or materials which it might remove from your facility.

17.9    If, within thirty (30) days after termination you have not taken all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Marks, you hereby irrevocably appoint Workout Anytime as your true and lawful attorney-in-fact for you, and permit Workout Anytime, in your name, place and stead and on your behalf, to take action as may be necessary to amend or terminate all registrations and filings, this appointment being coupled with an interest to enable Workout Anytime to protect the System.

17.10    Franchisor shall have the right to seek its lost future profits in the event of the termination of the Franchise Agreement by Franchisee in violation of this Agreement. Franchisee acknowledges that its failure to operate the Club for the full term of this Agreement will deprive Franchisor of the benefit of the bargain including loss of revenue and goodwill of the franchise system in Franchisee's market area.

17.11    **Franchisor's Right to Withhold Services or Products.** During any period of uncured default by Franchisee, Franchisor shall have the right to withhold or discontinue providing all services to Franchisee.

17.12    **Franchisor's Option to Purchase of Business and Inventory.** On the expiration or termination of this Agreement for any reason, we will have the right, but not the obligation, exercisable by written notice delivered to you at any time contemporaneously with or after delivery of a notice of termination under this Agreement, or within thirty (30) days after the date of expiration, to purchase all or part of your physical assets used in the Club except your personal assets. There will be no compensation for goodwill, and the purchase price for such assets will be equal to their fair market value less such goodwill. If you and we cannot agree on the purchase price for the assets that we desire to purchase within ten (10) days following our exercise of this option to purchase, an independent appraiser we designate will determine the fair market value, and you and we will share equally the cost of the appraiser. Such appraiser's decision will be final and binding with no appeal therefrom. The closing of the purchase will take place at a location, and on a date, we choose, and will be completed in accordance with all applicable bulk sales laws. At closing, you will deliver to us a bill of sale for the assets, in a form acceptable to us. We will be entitled to set off against the purchase price any amounts you then owe us or any affiliate of ours, and to pay out of the purchase price any of your unpaid creditors.

17.13    **Alignment Deficiency Fee.** In lieu of Franchisor's exercise of its right to declare the Franchisee in default or to terminate Franchisee for cause, without waiver of any rights afforded to Franchisor herein, Franchisee may impose the Alignment Deficiency Fee described in Section 4.9 herein.

- 28 -

## SECTION 18 – TRANSFER AND ASSIGNMENT

18.1    **General.**

Except with respect to your mortgage company or institutional lender (if any), none of your rights under this Agreement may be the subject of any pledge, lien, levy, attachment, or security agreement, or assigned or otherwise purportedly transferred through execution, foreclosure, or like action. None of your rights or obligations under this Agreement are assignable or transferable, without Franchisor's prior written consent, which will not be unreasonably withheld or delayed, and compliance in all other respects with the terms of this Section.

With and after each valid assignment of this Agreement pursuant to this Section, the assignee or assignees will have deemed to be you, the Franchisee, under this Agreement and will be bound and liable for all existing and future obligations of the Franchisee. No stockholder in any corporation, and no member of any limited liability corporation, which becomes a franchisee will have any rights as an individual under this Agreement because of his, her or its stock ownership or membership interest, and the name of such entity will not include any of the Marks.

18.2    This Agreement, and your rights and obligations arising under it, are personal to you only.  As used herein, the word "transfer" means the sale, lease, assignment, gift, mortgage, or transfer because of your death, bankruptcy, share exchange, or transfer by operation of law or otherwise, either directly or indirectly, voluntarily or involuntarily.  If you are a corporation or limited liability company, such includes a transfer, as defined above, of a fifty (50%) percent or more interest in your entity. A transfer cannot occur unless the following conditions are first satisfied, and you have paid a non-refundable Transfer Fee to Franchisor at the time you apply for consent to transfer the franchise:

A.    As of the date of Franchisee's request for consent and as of the effective date of the Transfer there shall be no default in the performance or observance of any of the Franchisee's obligations under this Agreement or any other agreement between the Franchisee and the Franchisor or any affiliate or supplier thereof, and if the Franchisee intends to transfer its right to possession of the premises, that the Franchisee has obtained the consent of all necessary parties to the assignment of any licenses, and the lease or sublease, to the proposed transferee;

B.    As of the date of the Franchisee's request for consent and as of the effective date of Transfer, the Franchisee shall have settled all outstanding accounts with Workout Anytime, its affiliates, all taxing authorities, and any third-party vendors;

C.    The proposed transferee is approved as a prospective franchisee, the sale price is appropriate, and Workout Anytime is paid a Transfer Fee in the amount of fifty (50%) percent of the then-current Initial Franchise Fee, unless the transferee is a corporation of which you are the majority stockholder, or said transfer is to either Workout Anytime itself or to an entity in which you own a fifty (50%) percent or more interest;

D.    The proposed transferee will execute our then current form of Franchise Agreement, and the proposed transferee will execute an Acknowledgement of Receipt of a then current copy of our Franchise Disclosure Document;

– 29 –

E.  The proposed transferee will pay for, attend and satisfactorily complete the training program for new franchisees unless;

    1.  The transferee is a current franchisee in good standing in the System; or,

    2.  The transferee is and has been a manager for a period of one (1) year or more of a Workout Anytime Club in good standing.

F.  The individual proposed transferee, or the stockholders, partners, members, trustees or beneficiaries of a proposed corporate, partnership, limited liability company, or trust transferee, will each execute a personal guarantee, jointly and severally guaranteeing the performance of the proposed transferee's obligation;

G.  The proposed transferee will have demonstrated to Franchisor that it has in all respects satisfied our standards applicable to new franchisees regarding experience, personal and financial reputation and stability, willingness and ability to devote his or her full time and best efforts to the operation of the franchised business, and any other conditions as Franchisor may reasonably apply in evaluating new franchisees. You must provide Franchisor all information about the proposed transferee as it may reasonably require. Because of the confidential information available to a franchisee, no assignment to a competitor or to any person or entity owning an interest in a competitive business of Workout Anytime will be permitted at any time;

H.  The parties to the proposed transaction will have entered into a binding agreement (a "Purchase Offer") subject only to the rights of Franchisor. You will furnish a copy of the binding agreement to us. You will advise each prospective transferee of this provision and other terms under this Agreement;

I.  You will sign a written agreement in a form satisfactory to us in which you agree to comply with and satisfy all post-term obligations set forth in this Agreement:

J.  The Franchisee shall have delivered to the Franchisor, in a form satisfactory to the Franchisor, a complete release of the Franchisor, its directors and officers, members and managers, and their affiliates and the directors and officers, members and managers thereof from all obligations of any such persons under this Agreement;

K.  The proposed transferee agrees in writing to perform such maintenance, remodeling or re-equipping of the Club as we determine necessary to correct any then deficiencies to such club as we, in our sole discretion, deem necessary; and

L.  You agree that we may release to the prospective transferee all information we have with respect to your operation of the subject Club.

M.  The proposed transferee must not be engaged in a competitive business.

N.  The purchase price and terms of the proposed transfer are not so burdensome to the prospective transferee as to impair or materially threaten the transferee's ability to perform under the Franchise Agreement.

The refusal of Franchisor to consent to the proposed Transfer based upon the noncompliance with any of the foregoing conditions shall not be deemed to be an unreasonable withholding of consent.

The Franchisor's consent to a Transfer shall not operate to release the Franchisee from any liability under this Franchise Agreement.

18.3   If you are an individual and you desire to transfer your rights under this Agreement to a corporation, partnership, limited liability company, or trust which you will newly form and of which you will be a majority shareholder, partner, member, trustee, beneficiary and/or an executive officer, you may do so only if:

A.   You execute a Personal Guarantee;

B.   You continue to devote your full time and best efforts to manage the day-to-day operations of the franchised business unless you have an operational partner or Manager approved by Franchisor;

C.   The corporation's, partnership's, limited liability company's or trust's activities be confined exclusively to the operation of the Franchised Business;

D.   The corporation, partnership, trust and all officers sign an agreement with Workout Anytime assuming jointly and severally all your obligations under this Agreement; and,

E.   It is expressly understood that the assumption of your obligation by any corporation, partnership, limited liability company, or trust does not limit your personal obligations under this Agreement, and that you and the corporation, partnership, limited liability company, or trust will be jointly and severally liable.

18.4   Any attempt by you to transfer any of your rights or interest under this Agreement or the License, without having received Franchisor's prior written consent will be void and will constitute a material breach of this Agreement.

18.5   You do not have the right to grant a sub-franchise.

18.6   **Death or Permanent Incapacity of Franchisee.**

Upon the death or permanent incapacity of the Franchisee or a controlling owner of the Franchisee, if such person has at the time of such death or permanent incapacity a spouse or any adult children surviving, the following shall apply:

A.   if the surviving spouse and/or adult child desire and are, in the reasonable opinion of the Franchisor, capable of carrying on the Franchised Business, the said spouse and/or adult child shall have the right to continue to operate the Franchised Business provided that they shall directly covenant and agree with the Franchisor to be bound by the terms and conditions of this Agreement and any other agreements made between the Franchisor and the Franchisee;

B.   if the surviving spouse and/or an adult child do not desire or are not, in the reasonable opinion of the Franchisor, capable of carrying on the Franchised Business, or cannot devote their full time and attention to the Franchised Business or if the Franchisee does not have a spouse or adult child surviving, the Franchisor shall have the right, such right to be exercised by the Franchisor giving written notice to the Franchisee or to Franchisee's estate within sixty (60) days of the date of Franchisee's death or death of the controlling owner of the Franchisee or

- 31 -

the date upon which the Franchisee's or controlling owner's permanent incapacity arises, to purchase all or any part of the assets of the Franchisee used in the operation of the Franchised Business for a purchase price equal to the "asset value" of the Franchisee's assets less all proper business liabilities assumed by the Franchisor as of the date said purchase is completed. To satisfy the aforesaid purchase price, the Franchisor shall pay the difference between the "asset value" and the amount of the liabilities assumed by it, on the date of the completion of the purchase by way of cash or certified check.

The Franchisee or any controlling owner shall be deemed to have a "permanent disability" if the usual participation of the Franchisee or any controlling owner in the Franchised Business is significantly curtailed for a cumulative period of ninety (90) days in any six (6) month period during the term of this Agreement, including renewals, due to physical and/or intellectual incapacity as determined by a medical provider or as evidenced by the appointment of a guardian, custodian, or trustee.

18.7   **Transfer or Assignment by Franchisor.** The Franchisor shall have the right to transfer this Agreement to any person or legal entity without prior notice to, or consent of the Franchisee. Specifically, and without limitation of the foregoing, the Franchisee agrees that the Franchisor may sell its assets, its interest in the Trademarks or the System to a third party; may offer its securities privately or publicly; may merge, acquire other entities or be acquired by another entity directly or indirectly; may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring; and with regard to any or all of the above sales, assignments and dispositions, the Franchisee expressly and specifically waives any claims, demands, or damages against the Franchisor arising from or related to the transfer and from any and all future liability under any of the terms, covenants, or conditions, express or implied, contained in this Agreement, which have been assigned. In the event of a transfer of this Agreement by the Franchisor, the Franchisor shall be freed and relieved of any and all liability under this Agreement. The Franchisee agrees to look solely to the assignee for performance of the Franchisor's obligations hereunder that have been assigned. Nothing contained in this Agreement shall require the Franchisor to continue any business operating under the System or to offer any services or products, whether or not bearing the Trademarks, to the Franchisee if the Franchisor assigns its rights in this Agreement in accordance with the provisions of this paragraph.

18.8   **Franchisor's Right of First Refusal.** Without in any way derogating from the Franchisor's right to reject a proposed Transfer in accordance with this Agreement, if at any time during the Initial Term or any renewal of this Agreement, the Franchisee obtains a bona fide offer (the "Offer") to acquire the whole or any part of its interest in the Franchised Business which the Franchisee wishes to accept, the Franchisee shall promptly give written notice thereof to the Franchisor together with a true copy of the Offer. Upon receipt of such notice and Offer, the Franchisor shall have the option of purchasing the property forming the subject matter thereof upon the same terms and conditions as those set out in the Offer except that:

A. there shall be deducted from the purchase price the amount of any commission, fee or transfer fee that would have otherwise been payable to the Franchisor, any broker or agent or other intermediary in connection with the Transfer;

B. the Franchisor shall have the right to substitute cash for any other form of consideration specified in the Offer and to pay in full the entire purchase price at the time of closing.

– 32 –

The Franchisor may exercise the option at any time within thirty (30) days after receipt of the said notice by giving written notice to the Franchisee. If the Franchisor declines to exercise such option and if such Transfer is approved by the Franchisor in accordance with this Agreement, the Franchisee shall be at liberty to complete the Transfer to such third party transferee in accordance with the Offer, provided that, notwithstanding the terms of the Offer, such transaction must be completed within thirty (30) days of the date on which Franchisor notifies the Franchisee of its approval of such transaction. If the transaction is not completed within thirty (30) days, the foregoing provisions of this right of first refusal shall apply again in respect of the proposed Transfer and so on from time to time.

## SECTION 19 - MISCELLANEOUS

19.1. **Relationship of Parties.**
You neither have nor will you exercise any authority, express, implied or apparent, to act on behalf of or as an agent of Franchisor or any of its affiliates or subsidiaries, for any purpose, and will take no action which is intended to create an apparent employer-employee or agency relationship between you and Franchisor. You are, and will remain, an independent contractor responsible for all obligations and liabilities of, and for all loss or damage to, the Club and its business and for all claims and demands based on damages or destruction of property or based on injury, illness or death of any person or persons, directly or indirectly arising from the operation of the Club. Franchisor will neither have, nor exercise the right to, the control of the day-to-day managerial operations of the Club.

19.2. **No Conflict with Other Agreements.**
You represent that you are not a party to or subject to any agreements that might conflict with the terms of this Agreement and agree not to enter any conflicting agreements during the Term.

19.3. **Cost of Enforcement.**

If either party institutes or prevails entirely or in part in any action at law or in equity against the other party based entirely or in part on the terms of this Agreement, the prevailing party will be entitled to recover from the losing party, in addition to any judgment, reasonable attorney's fees, court costs and all the prevailing party's expenses about any action at law.

19.4. **No Waiver.**

No waiver by Franchisor of any breach by Franchisee, nor any delay or failure by Franchisor to enforce any provision of this Agreement, may be deemed to be a waiver of any other or subsequent breach or to be deemed an estoppel to enforce Franchisor's rights with respect to that or any other subsequent breach. Franchisor will not waive or impair any right, or option this Agreement reserves (including Franchisor's right to demand exact compliance with every term, condition, and covenant or to declare any breach to be a default and to terminate this Agreement before its term expires) because of any custom or practice at variance with this Agreement's terms; Franchisor's alleged failure, refusal, or neglect to exercise any right under this Agreement or to insist on the other's compliance with this Agreement, including any System Standard; Franchisor's waiver of or failure to exercise any right, power, or option, whether of the same, similar, or different nature, with other Franchised Businesses; the existence of franchise agreements for other franchisees that contain

- 33 -

provisions different from those contained in this Agreement; or Franchisor's acceptance of any payments due from Franchisee after any breach of this Agreement.

19.5. **Entire Agreement; Amendments.**

This Agreement, with any related agreements and all Exhibits, constitutes the entire understanding and agreement between you and Franchisor and supersedes all prior understandings, whether oral or written, pertaining to either this Agreement, the System or your Club. You acknowledge and agree that no claims, representations or warranty of earnings, sales, profits or success of your Workout Anytime Club have been made to you other than those set out in Item 19 of the franchise disclosure document. No interpretation, change, termination or waiver of any provision of this Agreement, and no consent or approval under this Agreement, will be effective or binding upon you or Franchisor unless in writing signed by you and Franchisor, except that a waiver needs to be signed only by the party waiving. Nothing in this Agreement or in any related agreement, however, is intended to disclaim the representations we made in the franchise disclosure document that we furnished to you.

19.6. **Severability.**

If any term or provision of this Agreement or the application thereof to any person, property or circumstances will to any extent be invalid or unenforceable, the remainder of this Agreement will be unaffected and will remain in full force and effect and each term and provision will be valid and enforced as fully permitted by law.

19.7. **Governing Law.**

All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. Sections 1 et seq.). Except to the extent governed by the Federal Arbitration Act, the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. Sections 1051 et seq.) or other federal law, this Agreement, the franchise, and all claims arising from the relationship between Franchisor and Franchisee (and/or any of our affiliates) and Franchisee will be governed by the laws of the State of Georgia, without regard to its conflicts of laws rule. Should however, the restrictive Covenants set forth in Section 16 and Exhibit C attached hereto herein be deemed unenforceable under Georgia law, the law of the state in which the Franchised Business is located, shall be applied solely to the interpretation and enforcement of those covenants. This Agreement will become a valid and enforceable contract when we accept it and sign it in Atlanta, Georgia. Franchisee and Franchisor expressly agree that this Agreement has been made in the State of Georgia, that substantially all performance of the obligations hereunder has been and will be rendered in the State of Georgia, and that there is a regular stream of business activity between Franchisee and franchisor from and into the State of Georgia. The Covenant Not to Compete in Section 16 and Exhibit C attached hereto of this Agreement shall be interpreted in accordance with the laws of the state in which the Franchisee is located.

19.8. **Arbitration.**

Except as qualified below, any dispute between Franchisee and Franchisor or any of their respective affiliates, officers, directors, employees, agents (including area representatives) or owners arising out of, in connection with or in relation to this Agreement, the parties' relationship or Franchisee's Franchised Business must be submitted to binding arbitration under the authority of the Federal

– 34 –

Arbitration Act without reference to any state arbitration statutes and must be determined by arbitration administered by the American Arbitration Association pursuant to its then-current commercial arbitration rules and procedures. The arbitration shall take place in the city where Franchisor's headquarters are located at the time of the commencement of the arbitration action. The arbitration shall be heard by one (1) arbitrator who has at least ten (10) years of experience in franchise law. The arbitrator must follow the law and not disregard the terms of this Agreement.

Any arbitration must be on an individual basis and the parties and the arbitrator will have no authority or power to proceed with any claim as a class action or otherwise to join or consolidate any claim with any other claim or any other proceeding involving third parties. In the event a court determines that this limitation on joinder of or class certification of claims is unenforceable, then this entire commitment to arbitrate will become null and void and the parties must submit all claims to the jurisdiction of the courts.

A judgment may be entered upon the arbitration award by any state or federal court in the state where Franchisor maintains its headquarters or the state where Franchisee's Franchised Business is located. The decision of the arbitrator will be final and binding on all parties to the dispute; however, the arbitrator may not under any circumstances: (1) stay the effectiveness of any award pending termination of this Agreement; (2) assess punitive or exemplary damages; (3) make any award which extends, modifies, or suspends any lawful term of this Agreement or any reasonable standard of business performance set by Franchisor.

Notwithstanding the foregoing, the parties agree that the following claims will not be subject to arbitration: (1) any action for declaratory or equitable relief, specific performance, other relief in the nature of equity to enjoin any harm or threat of harm to such party's tangible or intangible property, brought at any time, including, without limitation, prior to or during the pendency of any arbitration proceedings initiated hereunder; (2) any action in ejectment or for possession of any interest in real or personal property; or (3) any action by Franchisor to collect any sums due to it.

19.9.  **Venue.**

Nothing contained in this Agreement will prevent Franchisor or Franchisee from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction and/or other emergency relief available to safeguard such party's interests. In the event of any litigation arising out of this Agreement or based upon the relationship between the parties, venue for any such litigation shall be any court of general jurisdiction in Fulton County, Georgia or the United States District Court for the Northern District of Georgia, Atlanta Division. Franchisee hereby accepts and submits to, generally and unconditionally, for itself and with respect to its property, the jurisdiction of any such courts in any such action or proceeding and hereby waives, to the greatest extent permitted by applicable law defenses based on jurisdiction, venue, or forum non conveniens. The provisions of this Section 19.9 shall be self-executing and shall remain in full force and effect after the termination or expiration of this Agreement. Franchisee acknowledges that this Agreement has been entered into in the State of Georgia, and that Franchisee is to receive valuable and continuing services emanating from Franchisor's headquarters in Atlanta, Georgia, including but not limited to assistance, support and the development of the System.

19.10. **Cross-Default.**

In the event that Franchisee (or its affiliate) directly or indirectly acquires the right and franchise to operate another or other Workout Anytime franchised Clubs, any default by Franchisee (or its affiliate) in the performance or observance of any of the terms and conditions under any one agreement governing the aforesaid right and franchise shall be deemed to be an event of default under all other agreements pursuant to which Franchisee (or its affiliate) directly or indirectly owns or operates such Workout Anytime franchised business or businesses.

19.11. **Notices.**

All notices and other communications provided for in this Agreement must be in writing and will be delivered in person or mailed by certified mail, or by Federal Express or U.S. Express Mail for overnight delivery if to you, at your address or, if to Workout Anytime at our address, Attention: Steven C. Strickland, with a copy to Joseph J. Gottlieb, Esq., 284 North Main Street, Alpharetta, Georgia 30009. Workout Anytime or you may change, by providing notice thereof in writing, the address to which future notices will be sent. Notices delivered in person will be deemed given when delivered and mailed notices will be deemed given three (3) days after mailing if by certified or other receipted mail, or one (1) day after mailing if by Federal Express or U.S. Express Mail. If you are a corporation, some other legal entity, or more than one (1) individual, then you will authorize one (1) natural person as correspondent with authority to bind you.

19.12. **No Set Off by Franchisee.**

Franchisee agrees that it will not, on grounds of the alleged nonperformance by Franchisor of its obligations hereunder, withhold payment of any royalty or other amounts due to Franchisor or its affiliates, whether on account of goods purchased by Franchisee or otherwise.

19.13. **Certain References.**

References to weeks and months mean calendar weeks and calendar months. References to persons mean legal entities as well as natural persons. Whenever the pronouns "he" or "his" are used herein, such refers to the masculine, feminine and neutral genders, and the singular and plural. Except as otherwise specifically set forth in this Agreement, this Agreement will inure to the benefit of and be binding on you and Workout Anytime, our respective heirs, executors, administrators, personal representatives, successors and assigns.

19.14. **Patriot Act.**

You represent and warrant to us that (i) You are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation, named by any Executive Order or the United States Treasury Department as a "terrorist", "Specially Designated National and Blocked Person", or other banned or blocked person, group, or nation (collectively, "Banned Persons") pursuant to any anti-terrorism law; (ii) You are not engaged in this Franchise Agreement, or instigating or facilitating the execution of this Agreement, directly or indirectly on behalf of any Banned Person; (iii) You currently do not appear, and throughout the Franchise Term neither you nor any officer, director, shareholder, partner, member or other owner shall appear on any list of Banned Persons; (iv) no anti-terrorism law prohibits you from doing business with the Franchisee; (v) the Franchisee, its

– 36 –

officers, directors, or principal shareholders, partner, member, or other owner of the Franchisee shall not, during the Franchise Term, violate any anti-terrorism laws; and (vi) Franchisee, its officers, directors, principal shareholders, partners or members shall not, during the Franchise Term do business with any party, individual, or entity that has violated or will violate any anti-terrorism laws. For purposes of this Agreement, "anti-terrorism laws" shall mean Executive Order 13224 and related regulations promulgated and enforced by the Office of Foreign Assets Control, the Money Laundering Control Act, the United States Patriot Act, or any similar law, order, rule or regulation enacted in the future. Franchisee hereby agrees to defend, indemnify, protect, and hold harmless Franchisor from and against all claims, damages, losses, risks, liabilities, fines, penalties, expenses (including attorneys' fees) and costs arising from or related to a breach of the foregoing representations and warranties. The foregoing indemnity obligations of Franchisee shall survive the termination or expiration of this Agreement.

### 19.15.  **Other Franchises.**

You acknowledge that other Workout Anytime franchisees have or will be granted franchises at various times and in different situations, and further acknowledge that the provisions of such franchises may vary substantially from those contained in this Agreement. You also acknowledge that because complete and detailed uniformity under varying circumstances may not be practical, there may be variations we grant to other of our Workout Anytime clubs (whether franchised or which our affiliates operate), and you will not be entitled to require us to grant similar variations or privileges to you.

### 19.16.  **Release of Prior Claims.**

By executing this Franchise Agreement, Franchisee, and each successor of Franchisee under this Franchise Agreement forever releases and discharges Franchisor and its affiliates, its designees, franchise sales brokers, if any, or other agents, and their respective officers, directors, representatives, employees and agents, from any and all claims of any kind, in law or in equity, which may exist as of the date of this Franchise Agreement relating to, in connection with, or arising under this Agreement or any other agreement between the parties, or relating in any other way to the conduct of Franchisor, its affiliates, its designees, franchise sales brokers, if any, or other agents, and their respective officers, directors, representatives, employees and agents prior to the date of this Agreement, including any and all claims, whether presently known or unknown, suspected or unsuspected, arising under the franchise, business opportunity, securities, antitrust or other laws of the United States, any state or locality.

### 19.17.  **Modification of the System.**

**FROM TIME TO TIME AFTER THE DATE OF THIS FRANCHISE AGREEMENT. FRANCHISOR MAY CHANGE OR MODIFY THE SYSTEM (INCLUDING THE TYPES OF GOODS AND SERVICES OFFERED BY THE FRANCHISED BUSINESS). FRANCHISEE SHALL ACCEPT, AND IS BOUND BY, ANY SUCH CHANGES IN THE SYSTEM AS IF THEY WERE PART OF THIS ORIGINAL FRANCHISE AGREEMENT AT THE TIME OF ITS EXECUTION. FRANCHISEE WILL MAKE SUCH EXPENDITURES AND SUCH CHANGES OR MODIFICATIONS TO COMPLY WITH THE CHANGES OR MODIFICATIONS OF THE SYSTEM AS FRANCHISOR MAY REASONABLY REQUIRE.**

– 37 –

19.18.  **Acknowledgement.**

YOU ACKNOWLEDGE THAT YOU HAVE CONDUCTED AN INDEPENDENT INVESTIGATION OF THE WORKOUT ANYTIME SYSTEM AND RECOGNIZE THAT THE BUSINESS VENTURE CONTEMPLATED BY THIS AGREEMENT INVOLVES BUSINESS RISK AND WILL BE LARGELY DEPENDENT UPON THE ABILITY OF YOU AS AN INDEPENDENT BUSINESS PERSON. WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC EXPRESSLY DISCLAIMS THE MAKING OF, AND YOU ACKNOWLEDGE THAT YOU HAVE NOT RECEIVED, ANY WARRANTY OR GUARANTEE, EXPRESS OR IMPLIED, AS TO THE POTENTIAL VOLUME, PROFITS OR SUCCESS OF THE BUSINESS VENTURE CONTEMPLATED BY THIS AGREEMENT;

YOU ACKNOWLEDGE YOU HAVE RECEIVED A COPY OF THE COMPLETE WORKOUT ANYTIME FRANCHISE AGREEMENT AT LEAST SEVEN (7) DAYS PRIOR TO THE DATE ON WHICH THIS AGREEMENT WAS EXECUTED. YOU FURTHER ACKNOWLEDGE THAT YOU RECEIVED THE DISCLOSURE DOCUMENT REQUIRED BY THE FEDERAL TRADE COMMISSION TITLED "FRANCHISE DISCLOSURE DOCUMENT" AT LEAST FOURTEEN (14) DAYS PRIOR TO THE DATE ON WHICH THIS AGREEMENT WAS EXECUTED;

YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS AGREEMENT, AND THAT WORKOUT ANYTIME HAS ACCORDED YOU AMPLE TIME AND OPPORTUNITY AND HAS ENCOURAGED YOU TO CONSULT WITH ADVISORS, COUNSELORS, AND BOTH LEGAL AND FINANCIAL PROFESSIONALS OF YOUR OWN CHOOSING ABOUT THE POTENTIAL BENEFITS AND RISKS OF ENTERING INTO THIS AGREEMENT;

YOU ACKNOWLEDGE THAT OTHER WORKOUT ANYTIME FRANCHISEES HAVE OR WILL BE GRANTED FRANCHISES AT VARIOUS TIMES AND IN DIFFERENT SITUATIONS, AND FURTHER ACKNOWLEDGE THAT THE PROVISIONS OF SUCH FRANCHISES MAY VARY SUBSTANTIALLY FROM THOSE CONTAINED IN THIS AGREEMENT.  YOU ALSO ACKNOWLEDGE THAT BECAUSE COMPLETE AND DETAILED UNIFORMITY UNDER VARYING CIRCUMSTANCES MAY NOT BE PRACTICAL, THERE MAY BE VARIATIONS WE GRANT TO OTHER OF OUR WORKOUT ANYTIME CLUBS (WHETHER FRANCHISED OR OPERATED BY OUR AFFILIATES), AND YOU WILL NOT BE ENTITLED TO REQUIRE US TO GRANT SIMILAR VARIATIONS OR PRIVILEGES TO YOU;

YOU ACKNOWLEDGE THAT THE SUCCESS OF FRANCHISEE IN OWNING AND OPERATING THE CLUB IS SPECULATIVE AND WILL DEPEND ON MANY FACTORS INCLUDING, TO A LARGE EXTENT, THE FRANCHISEE'S INDEPENDENT BUSINESS ABILITY. NO REPRESENTATIONS OR PROMISES, EXPRESS OR IMPLIED, HAVE BEEN MADE BY FRANCHISOR OR ANY EMPLOYEE, BROKER OR REPRESENTATIVE OF FRANCHISOR, TO INDUCE FRANCHISEE TO ENTER INTO THIS FRANCHISE AGREEMENT OR ANY RELATED AGREEMENT EXCEPT AS SPECIFICALLY INCLUDED IN THIS FRANCHISE AGREEMENT OR SUCH

RELATED AGREEMENTS. NO EMPLOYEE, OFFICER, DIRECTOR, BROKER OR REPRESENTATIVE IS AUTHORIZED TO DO OTHERWISE;

IN ALL OF ITS DEALINGS WITH FRANCHISOR, ITS EMPLOYEES, BROKERS (IF ANY), AND OTHER REPRESENTATIVES, EACH HAVE ACTED ONLY IN A REPRESENTATIVE CAPACITY AND NOT IN AN INDIVIDUAL CAPACITY. THIS FRANCHISE AGREEMENT, AND ALL BUSINESS DEALINGS BETWEEN FRANCHISEE AND SUCH INDIVIDUALS AS A RESULT OF THIS FRANCHISE AGREEMENT, ARE SOLELY BETWEEN FRANCHISEE AND FRANCHISOR;

FRANCHISOR MAKES NO WARRANTY AS TO FRANCHISEE'S ABILITY TO OPERATE THE FRANCHISED BUSINESS IN THE JURISDICTION IN WHICH THE FRANCHISED BUSINESS IS TO BE OPERATED. IT IS INCUMBENT UPON FRANCHISEE TO SEEK OR OBTAIN ADVICE OF COUNSEL SPECIFICALLY WITH RESPECT TO THIS ISSUE. IN THE EVENT THAT LEGISLATION ENACTED BY, OR REGULATION OF, ANY GOVERNMENTAL BODY PREVENTS FRANCHISEE FROM OPERATING THE FRANCHISED BUSINESS, FRANCHISOR SHALL NOT BE LIABLE FOR DAMAGES NOR BE REQUIRED TO INDEMNIFY FRANCHISEE IN ANY MANNER WHATSOEVER OR TO RETURN ANY MONIES RECEIVED FROM FRANCHISEE.

This entire Agreement, including corrections, changes and all attachments and addendums, will only be binding upon Workout Anytime when executed or initialed by a member, director or officer of Workout Anytime.

**You and Workout Anytime, intending to be legally bound, have duly executed, sealed and delivered this Agreement in duplicate.**

FRANCHISEE: (For an Entity)                    FRANCHISEE: (For an Individual)

WOA Athens TN, LLC/ John Greff
_____            _____
(Please print name and type of entity)         (Please print name)

_____            _____
By: (Signature of person signing for entity)    By: (Signature)

manager
_____            _____
Title: (Title of person signing)               Date:

01/03/2020
_____
Date:

**(SIGNATURES CONTINUED ON FOLLOWING PAGE)**

FRANCHISOR:  WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC

*Steven C Strickland*

By:  Steven C. Strickland, Its CEO

01/03/2020

Date:

WOAT FDD 2019v5

EXHIBIT B - **PERSONAL GUARANTEE**

## PERSONAL GUARANTEE

01/03/2020

THIS GUARANTEE is made this _____ of _____, 201____, by the undersigned ("Guarantor"), for the benefit of WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC ("Franchisor").

## RECITALS

A. <u>John Graff</u>_____ is the Franchisee ("Franchisee") of that certain Franchise Agreement (the "Franchise Agreement") with Franchisor dated <u>01/01/2020</u>_____, 201____; and,

B.      As a condition to entering into the Franchise Agreement, Franchisor requires that Guarantor guarantee the full performance of the obligations of Franchisee under the Franchise Agreement; and,

C.      Guarantor will receive substantial benefit from the Franchise Agreement and desires that Franchisee enter into the Franchise Agreement with the Franchisor;

NOW, THEREFORE, in consideration of the execution of the Franchise Agreement by Franchisee and its acceptance by Franchisor, and other valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor covenants and agrees as follows:

## AGREEMENT

1.      **Guarantee.** Guarantor hereby absolutely and unconditionally guarantees (a) the full and faithful performance of all of the covenants, conditions, agreements and undertakings of Franchisee to be kept and performed by Franchisee under the Franchise Agreement including, but not limited to, the monthly payment(s) when due, and other sums payable by Franchisee to Franchisor under the Franchise Agreement, and (b) the payment of all damages owing to Franchisor by Franchisee after the termination of the Franchise Agreement or the exercise by Franchisor of any other right or remedy of Franchisor following a default by Franchisee under the Franchise Agreement (collectively the "Obligations"). Guarantor understands and agrees that this Guarantee is unconditional and continuing and is a guarantee of payment and performance and not of collection.

2.      **Independent Obligation.** The liability of Guarantor hereunder is independent of the obligation of the Franchisee or any other person or entity a separate action or separate actions against Guarantor until after Franchisee has failed to comply with all cure periods allowed. The release of, or cancellation by, any signer of a similar instrument shall not act to release or otherwise affect the liability of Guarantor hereunder.

3.      **Modification to Franchise Agreement.** Guarantor's obligations under this Guarantee of Franchise Agreement shall not be extinguished, discharged, diminished or reduced in any way by any modification or amendment of the Franchise Agreement including, but not limited to, any modification of payment dates or amounts, or any subsequent assignment of the Franchise Agreement made with or without the consent of Franchisor. Guarantor hereby waives any right to approve any modification or amendment of the Franchise Agreement.

4.      **Obligations of Guarantor Upon Default by Franchisee.** Should Franchisee shall fail to pay when due any other monetary sum or charge, or any portion thereof, accrued or due pursuant to the

- 1 -

terms of the Franchise Agreement within any allotted cure period, then, upon written notice to Guarantor by Franchisor, Guarantor shall pay to Franchisor all such amounts as may be due and owing from Franchisee to Franchisor by reason of Franchisee's failure to perform.

5.      **Remedies.** If Guarantor fails to perform any obligation under this Guarantee, then in addition to all other remedies provided at law or in equity, from time to time and without first requiring performance on the part of Franchisee, and without being required to exhaust or proceed against any or all security held by Franchisor for the performance of Franchisee under the Franchise Agreement, Franchisor may enforce its rights to require performance by Guarantor of any or all of the obligations on the part of Guarantor to be performed under this Guarantee by action at law or in equity, or both.

6.      **No Waiver.** No failure on the part of Franchisor to pursue any remedy under this Guarantee or under the Franchise Agreement shall constitute a waiver on the part of Franchisor of its right to pursue such remedy based on a subsequent default.

7.      **Waiver of Exoneration.** Guarantor waives any right to require Franchisor to (a) proceed against Franchisee, (b) proceed against or exhaust any security held from Franchisee, or (c) pursue any other right or remedy available to Franchisor. Guarantor further waives any defense it may acquire because of Franchisor's election of any remedy against Guarantor or Franchisee, or both.

8.      **Waiver of Subrogation.** Until the obligations of Franchisee under the Franchise Agreement have been performed in full, Guarantor shall have no right of subrogation against Franchisee, and Guarantor hereby expressly waives any right to enforce any remedy which Franchisor now has or may hereafter acquire against Franchisee. Guarantor hereby waives the benefit of, and any right to participate in, any security now or hereafter held by Franchisor for the performance of the obligations of Franchisee under the Franchise Agreement.

9.      **Waiver of Presentments.** Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guarantee and waives all notices of the existence, creation, or incurring of new or additional obligations.

10.      **Other Guarantor Waivers.** Without limiting the generality of the preceding paragraphs, Guarantor hereby waives all rights and defenses to:

(a)      All rights it may have now or in the future to require or demand that Franchisor pursue any right or remedy Franchisor may have against Franchisee or any other third party;

(b)      Any defense arising as a result of Guarantor's election of the application of Section 1111(b)(2) of the Bankruptcy Code or based on any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code;

(c)      Any defense as a surety arising under applicable law;

(d)      Any duty or obligation of Franchisor to disclose to Guarantor any facts Franchisor may now or hereafter know about Franchisee, regardless of whether Franchisor has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume or has reason to believe that such facts are unknown to Guarantor or has a reasonable opportunity to communicate such facts to guarantor, it being understood and agreed that guarantor is fully

- 2 -

responsible for being and keeping informed of the financial condition of Franchisee and of any and all circumstances bearing on the risk of nonperformance of any Obligation; and,

(e)     Any defense based upon an election of remedies by Franchisor, including any election which destroys or impairs any right of subrogation, reimbursement of contribution which Guarantor may have, or any rights or benefits under any provisions of Georgia law in any way qualifying, conditioning or limiting the obligations of Guarantor based on any steps or procedures that Franchisor should take before proceeding against Guarantor.

11.     **Bankruptcy.** This Guarantee will continue unchanged by any bankruptcy, reorganization or insolvency of Franchisee, or any successor or assignee thereof, or by any disaffirmance or abandonment by a trustee of Franchisee. Notwithstanding any modification, discharge or extension of the indebtedness or any amendment, modification, stay or cure of Franchisor's rights which may occur in any bankruptcy or reorganization case or proceeding concerning Franchisee whether permanent or temporary, and whether assented to by Franchisor, Guarantor hereby agrees that it shall be obligated hereunder to pay and perform the Obligations in accordance with the terms of the Franchise Agreement and the terms of this Guarantee. Guarantor understands and acknowledges that by virtue of this Guarantee, Guarantor has specifically assumed all risks of a bankruptcy or reorganization case or proceeding with respect to Franchisee.

12.     **Assignment of Franchise Agreement.** As used herein, the term "Franchisor" shall include any successor, assignee or transferee of Franchisor. Guarantor agrees that Franchisor may, without notice to Guarantor, assign the Franchise Agreement and this Guarantee in whole or in part and that no such assignment or transfer of the Franchise Agreement and/or this Guarantee shall operate to extinguish or diminish the liability of Guarantor under this Guarantee.

13.     **Obligations of Guarantor Are Primary.** Guarantor agrees that the liability of Guarantor under this Guarantee shall be primary and that in any cause or right of action which shall accrue to Franchisor under this Guarantee, Franchisor may, at its sole option, proceed against Guarantor without having commenced any action, or having obtained any judgment, against Franchisee. If Franchisor has any enforceable right against Franchisee upon termination of the Franchise Agreement, Franchisor shall be entitled to enforce those rights against Guarantor without giving prior notice to Franchisee or Guarantor, and without making any demand on either of them.

14.     **Interest.** Any sum required to be paid by Guarantor to Franchisor pursuant to the terms of this Guarantee shall bear interest at the lower of seven percent (7%) or the highest rate then allowed by law, from the date due until paid in full.

15.     **Attorneys' Fees.** Guarantor agrees to pay Franchisor's reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempted collection, or in any negotiations relative to the obligations hereby guaranteed or incurred enforcing this Guarantee against the Guarantor. In addition, in the event of any dispute between the parties arising under this Guarantee, or the breach of any covenant or condition under this Guarantee, then the prevailing party shall be entitled to have and recover from the party not so prevailing the attorneys' fees and costs incurred by the prevailing party, whether such fees and costs are incurred in taking any action under this Guarantee, or in any judicial proceeding (including appellate proceeding). "Prevailing party" for the purposes of this Paragraph 15 shall include, without limitation, the party who receives from the other party the sums allegedly due, performance of the covenants allegedly breached, consideration substantially equal to that which was demanded, or substantially the relief or consideration sought in any judicial proceeding whether or not such proceeding is prosecuted to final

– 3 –

judgment, or a party who dismisses a judicial action in return for substantially the performance or relief sought or the payment of the sums allegedly due.

16.     **Time of the Essence.** Time is of the essence with respect to the performance of every provision of this Guarantee.

17.     **Governing Law.** This Guarantee shall be construed and interpreted in accordance with the laws of the State of Georgia.

18.     **Captions.** The captions and paragraph numbers appearing in this Guarantee are inserted only as a matter of convenience and are not to be used to interpret this Guarantee.

19.     **Examination of Franchise Agreement.** Guarantor acknowledges that he/she has (a) received a copy of the Franchise Agreement, (b) read and understood the terms and provisions of the Franchise Agreement including, but not limited to, the covenants, conditions, agreements and undertakings of Franchisee to be kept and performed by Franchisee under the Franchise Agreement, and (c) read and understood the obligation of Guarantor under this Guarantee, including the legal effect of such obligations and has been advised by legal counsel respecting such obligations.

20.     **Binding to Successors.** Guarantor shall not assign any of its obligations hereunder by operation of law or otherwise, and any attempted assignment shall, at Franchisor's sole option, be void. Subject to the foregoing, the obligations of Guarantor under this Guarantee shall be binding on Guarantor's successors.

**IN WITNESS WHEREOF,** Guarantor has executed this Guarantee as of the date first hereinabove set forth.

**GUARANTORS:**


_____     Date: ___01/03/2020_____

_____     Date: _____

_____     Date: _____

_____     Date: _____


– 4 –

WOAT FDD 2019v5

EXHIBIT C - **NON-COMPETITION AND NON-SOLICITATION AGREEMENT**

## NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Non-Competition and Non-Solicitation Agreement ("Agreement") is entered into by and between Workout Anytime Franchising Systems, LLC ("Franchisor") and John Greff ("Obligor"), and becomes effective on the Effective Date of the Franchise Agreement once counter-signed by Franchisor. THIS AGREEMENT IS MADE SUBJECT TO ANY PROVISIONS OF ANY EXHIBIT "G" ATTACHED TO THE DISCLOSURE DOCUMENT PURSUANT TO WHICH THIS NON-COMPETITION AND NON-SOLICITATION AGREEMENT WAS PRESENTED TO AND SIGNED BY OBLIGOR AND WHICH SPECIFICALLY AND EXPRESSLY RELATE TO THE STATE OF FRANCHISEE'S RESIDENCY.

### W I T N E S S E T H :

**WHEREAS,** Obligor is either (1) the "Franchisee" named in the Franchise Agreement ("Franchise Agreement") that is being executed in conjunction with this Agreement, and/or (2) an equity owner of the legal entity that is named as the Franchisee in the Franchise Agreement ("Obligor" shall for all purposes under this Agreement mean and refer to the entity (if Franchisee is an entity), all equity owners of such entity, and all managers and/or primary operators of Franchisee's Workout Anytime franchised health club facility (the "Club");

**WHEREAS,** Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchise and franchisees from unfair competition by an existing or former franchisee that has had special, intimate knowledge of Franchisor's methods and trade secrets and confidential information for the operation of a Workout Anytime Club;

**WHEREAS,** Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee that transfers (without Franchisor's permission) the goodwill associated with Franchisor's proprietary and protected marks and business practices to a business that competes with Workout Anytime franchisees;

**WHEREAS,** Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee that is able to take advantage of the knowledge and experience gained in running a Workout Anytime Club, and use such knowledge and experience in operating a new competing business without having to continue to pay royalties and other fees for such information, thereby placing other franchisees at a competitive disadvantage;

**WHEREAS,** Obligor acknowledges that Franchisor has a legitimate business interest in re-franchising the formerly protected territory of a former franchisee, and Franchisor would suffer irreparable damage absent this Agreement because it would be unable to attract new franchisees to the area served by its former franchisee;

**WHEREAS,** Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee who (1) diverts business and customers from a current or former Workout Anytime Club to a competitor of Franchisor, or (2) induces or attempts to induce an employee of any Workout Anytime Club to discontinue their employment with the Club;

– 1 –

**WHEREAS,** Obligor acknowledges that Franchisor requires the execution of this Agreement as an ancillary requirement to Franchisor's simultaneous grant of a franchise to Obligor or a legal entity of which Obligor is an equity owner.

**NOW, THEREFORE,** in express acknowledgement and recognition of the importance of the foregoing recitals, the parties agree as follows:

1. **Consideration in Exchange for Obligor's Covenants.** Obligor hereby expressly acknowledges and confirms that all of the valuable benefits, advantages and opportunities enjoyed by Obligor immediately upon (and solely as a result of) Obligor's (or as applicable, Obligor's legal entity) becoming a franchisee under the Franchise Agreement, and the additional protection provided by this Agreement being signed by all other new franchisees, serve as valuable and adequate consideration received in simultaneous exchange for all of Obligor's promises and covenants made in this Agreement.

2. **Obligor's In-Term Non-Competition and Non-Solicitation Covenants.** During the term of the Franchise Agreement, and without geographic limits, Obligor shall not directly or indirectly (such as through corporations or other entities controlled by the Obligor or by or through or in conjunction with any other individual person or persons including, but not limited to, Obligor's spouse (if any) and employees):

    a. divert or attempt to divert any business or customer of any Club to any competitor or do anything injurious or prejudicial to the goodwill associated with Franchisor's Marks, methods, the Workout Anytime Franchise System, or Franchisor's business practices; and,

    b. persuade, entice, or attempt to persuade or entice, any employee of any Workout Anytime Club to discontinue their employment with such Club; and,

    c. own, maintain, engage in, be associated with, be employed by, advise, assist, invest in, be landlord to, franchise, or have any interest in any health club, gymnasium, or fitness center business which is the same or substantially like or competitive with any Workout Anytime Club; and,

    d. use, communicate, disseminate, provide access, or divulge to anyone at any time any confidential information or trade secrets of Franchisor, or at any time copy, duplicate, record or otherwise reproduce any confidential information or trade secrets of Franchisor, including without limitation those materials contained within the secure password protected Franchise resource section of Franchisor's website, except as expressly permitted in the Franchise Agreement.

3. **Obligor's Post-Term Non-Competition and Non-Solicitation Covenants.**

    a. For purposes of this Section 3, the word "Conclusion" means the termination, assignment or transfer and/or expiration of the Franchise Agreement corresponding to this Agreement, regardless of whether such termination/expiration occurs prior to, or at the end of, such Franchise Agreement's term (the "Term").

    b. Upon the Conclusion of the Term and for the stated time thereafter and geographic restriction set forth below, Obligor shall not, directly or indirectly:

– 2 –

(i)      for a two (2) year period following the Conclusion of the Term and without geographic limitation, divert or attempt to divert any business or customer of any health club facility to any competitor, or do anything injurious or prejudicial to the goodwill associated with Franchisor's Marks, methods or the Workout Anytime Franchise System; and,

(ii)     for a two (2) year period following the Conclusion of the Term within twenty-five (25) miles of the location of the franchisee's former Club, own, maintain, engage in, be associated with, be employed by, advise, assist, invest in or have any interest in any business that engages in or offers franchises for businesses that engage in or operate gymnasiums, fitness, or workout facilities which is the same as, or substantially like or competitive with any Workout Anytime Club; and,

(iii)    for a two (2) year period following the Conclusion of the Term and without geographic limitation, persuade, entice or attempt to persuade or entice any employee of any Workout Anytime Club to discontinue their employment with such Club.

c.      Upon the Conclusion of the Term, Obligor shall not, at any time, directly or indirectly:

(i)      communicate, disseminate, provide access, reveal or divulge to anyone, in whole or in part, any of Franchisor's confidential information or trade secrets; and,

(ii)     use, copy, duplicate, record or otherwise reproduce at any time any of Franchisor's confidential information or trade secrets; and,

(iii)    use in any manner whatsoever any of the Marks, the methods, Franchisor's Operations Manuals, any of the materials contained within the secure password protected Franchise resource section of Franchisor's website, or any other proprietary or intellectual property rights of Franchisor and the Workout Anytime Franchise system.

d.      Upon the Conclusion of the Term, Obligor shall immediately return to Franchisor all Operations Manuals, all training materials, all of Franchisor's proprietary software and printed matters, all website materials, all other confidential information and trade secrets, and all of Franchisor's advertising and promotional signs and related items.

4.      **Severability.**  It is the parties desire and intention that the covenants contained in this Agreement shall be construed as agreements severable and independent from each other, except that any violation of Section 2 of this Agreement shall constitute a material breach and default of the Franchise Agreement and cause for immediate termination of the Franchise Agreement without opportunity to cure. It is also the intention of the parties that if any Section of this Agreement is deemed by a court of competent jurisdiction to be invalid or unenforceable, then the maximum legally allowable restriction permitted by applicable law shall control and bind Obligor.

5.      **Enforcement Costs.**  Obligor agrees to pay to Franchisor all the costs and expenses (including reasonable attorneys' fees) incurred by Franchisor in connection with its enforcement of this Agreement.

– 3 –

6.      **Counter-Parts, Entire Agreement, Amendments.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be one and the same instrument. The parties may execute such counterparts via fax, or electronically via PDF. This Agreement, together with the Franchise Agreement, contains the entire agreement of the parties pertaining to the subject matter hereof and no prior or contemporaneous representations, inducements, promises, or agreements, oral or otherwise, between the parties not set forth herein shall be of any force and effect. Any modifications to this Agreement must be accomplished by a written agreement signed by both parties.

7.      **Injunction.** Obligor recognizes and agrees that the injury that Franchisor and certain of its franchisees will suffer in the event of Obligor's breach of any covenant contained in this Agreement cannot be compensated by monetary damages alone, and Obligor therefore agrees that in the event of a breach or threatened breach by Obligor of this Agreement, Franchisor (and its affiliates, successors and assigns), in addition to and not in limitation of, any other rights, remedies, or damages available to Franchisor (and/or its affiliates, successors, and assigns) at law, in equity, under this Agreement or otherwise, shall be entitled to seek an injunction from any court of competent jurisdiction in order to prevent or restrain any such breach by Obligor or by Obligor's agents, representatives, employees, partners, co-owners, or any and all other persons directly or indirectly acting for or with him/her/it.

8.      **Choice of Law, Venue and Jurisdiction.**  This Agreement shall be construed and governed under and in accordance with the laws of the State in which the Franchised Business is located. Exclusive venue and jurisdiction of any suit arising under this Agreement shall lie within the federal or state courts within the State of Georgia, except to the extent that the laws of the State where the Club is located requires for the Franchise Agreement and this Agreement to be enforceable against the Obligor or Obligor's legal entity that venue and jurisdiction lie in such State.

**AGREED TO AND ACCEPTED BY OBLIGOR:**

Signature: _____

Print your name: John Greff
_____

Print Title (if applicable): manager
_____

Date of Signature: 01/03/2020
_____

*If the "Franchisee" named in the Franchise Agreement is an entity (e.g., corporation, limited liability company, partnership, trust, etc.), or if there is more than one (1) equity owner of "Franchisee", or if "Franchisee" consists of more than one (1) person, or if someone other than "Franchisee" or an equity owner of an entity "Franchisee" will serve said "Franchisee" as a manager or primary operator, complete and sign the additional OBLIGOR SIGNATURES below for the entity, for each equity owner of the entity, for each person included as part of "Franchisee", or for each manager or primary operator, or alternatively submit separate signed originals of this Agreement for the entity and for each of said persons.

**(ADDITIONAL SIGNATURE CONTINUED ON FOLLOWING PAGE)**

– 4 –

**ADDITIONAL OBLIGOR SIGNATURES:**

Signature: _____

Print your name: _____

Print Title (if applicable): _____

Date of Signature: _____


Signature: _____

Print your name: _____

Print Title (if applicable): _____

Date of Signature: _____


WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC:

Signature of Signing Officer: *Steven C Strickland*

Printed Name of Signing Officer: Steven C. Strickland, CEO

*Date of Counter Signature: _01/03/2020_ _____
(*Effective Date of Agreement)

– 5 –

EXHIBIT "F"

PERSONAL DATA DISCLOSURE AND FRANCHISEE OWNERSHIP INFORMATION FORM

## I. PERSONAL DATA DISCLOSURE

This information will be kept strictly confidential. Please provide all available information. Should certain information not be available at this time, such as your new health club facility telephone number, please provide it immediately upon its availability, but no later than your scheduled facility opening date.

Your Name __John Greff__

Home Address __130 Rainbow Dr #3042__

City/State/Zip Code __Livingston TX 77399__

SSN __402717192__ - _____ - _____

Home Phone __8037573097__          Work Phone _____

Cell Phone __8037573097__

E-mail Address __john.greff@workoutanytime.com__

Workout Anytime Phone __8037573097__

Workout Anytime Fax _____

Facility's Address __921 Dactur Pike suite 923__

City/State/Zip Code __Athens TN 37303__

Signed: _____          Date: __01/03/2020__

WOAT FDD 2019v5

## II. FRANCHISEE OWNERSHIP INFORMATION FORM

1.      FULL NAME(S) OF FRANCHISEE [If this franchise is owned by a legal entity, only insert the name of the legal entity; if this franchise is owned by one or more individuals, only insert the name(s) of such individual(s):

Entity Name: _____WOA Athen TN LLC_____

Individual Owner(s): _____WOA Tennessee Operating LLC_____

_____

_____

2.      THE FRANCHISE WILL BE OWNED BY (Check which one applies):

_____ SOLE PROPRIETOR                    Fed. Tax I.D. # _____

_____ PARTNERSHIP                        Fed. Tax I.D. # _____

_____ CORPORATION                        Fed. Tax I.D. # _____

x _____ LIMITED LIABILITY COMPANY        Fed. Tax I.D. # 84-3968843_____

_____ OTHER BUSINESS ENTITY              Fed. Tax I.D. # _____
(Please explain on a separate piece of paper)

3.      NAMES OF ALL OWNERS, PARTNERS, SHAREHOLDERS OR MEMBERS AND PERCENTAGE OF OWNERSHIP INTEREST: (Please use separate sheet if necessary)

NAME: ___WOA Tennessee Operating LLC_____        % OF OWNERSHIP: _100_____

SOCIAL SECURITY NUMBER:
84-2406076_____

                                                 % OF OWNERSHIP: _____

NAME: _____

SOCIAL SECURITY NUMBER:
_____

                                                 % OF OWNERSHIP: _____

NAME: _____

SOCIAL SECURITY NUMBER:
_____

WOAT FDD 2019v5

4.     LIST OF DIRECTORS, MANAGERS OR GENERAL PARTNERS: (Please use separate sheet if necessary)

NAME: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____

SOCIAL SECURITY NUMBER: _____

5.     LIST OF OFFICERS: (Please use separate sheet if necessary)

NAME: _____          TITLE: _____

SOCIAL SECURITY NUMBER:

_____

NAME: _____          TITLE: _____

SOCIAL SECURITY NUMBER:

_____

NAME: _____          TITLE: _____

SOCIAL SECURITY NUMBER:

_____

NAME: _____          TITLE: _____

SOCIAL SECURITY NUMBER:

_____

6.    DESIGNATED CONTACT PERSON:

NAME: ___john Greff_____     TITLE: _____

ADDRESS:    130 Rainbow Dr unit 3042 _____

Livingston TX 77399 _____

PHONE: ___8037573097_____     E-MAIL: ___john.greff@workoutanytime.com___

WOAT FDD 2019v5

**Bank of America** 🦅🦅                                      **Online Banking**

**WOAT Operating: Account Activity Transaction Details**

|  |  |
|---|---|
| **Post date:** | 01/03/2020 |
| **Amount:** | 7,500.00 |
| **Type:** | Credit |
| **Description:** | WIRE TYPE:WIRE IN DATE: 200103 TIME:1123 ET TRN:2020010300430743 SEQ: /000125 ORIG:TENNESSEE BAR FOUNDATION ID:131954042 SND BK: SIMMONS BANK ID:082900432 PMT DET:ATHENS TN TRANSF ER FEE |
| **Merchant name:** 🗵 | TENNESSEE BAR FOUNDATION |
| **Transaction category:** | Income: Deposits |

**EXHIBIT A**

**FRANCHISE AGREEMENT**

## Workout Anytime Franchising Systems, LLC

### FRANCHISE AGREEMENT

This Franchise Agreement (this "Agreement") is entered into between Workout Anytime Franchising Systems, LLC, a Georgia Limited Liability Company ("Workout Anytime", "Franchisor", "us" or "we"), whose principal address is 2325 Lakeview Parkway, Suite 200, Alpharetta, Georgia, 30009, and  _WOA Sumter Fitness, LLC_ , a _____ _lmited liability company_  ("Franchisee" or "you")

## LET ALL PARTIES KNOW

Workout Anytime owns a unique system for opening and operating a twenty-four (24) hour health and fitness facility  for the general public through a uniform system which has high standards of service, uses quality equipment, and operates under the business format created and developed by Workout Anytime Franchising Systems, LLC known as the Workout Anytime Franchise System (the "System");

The distinguishing characteristics of the System include the name Workout Anytime, workable and functional interior and exterior designs, confidential operating procedures, standards and specifications for equipment, services, products, and both management and marketing programs. All distinguishing characteristics may be changed, improved, and further developed by Workout Anytime. They are known as "Trade Secrets" and are designated by and identified with the marks described in this Agreement;

Workout Anytime identifies itself by means of certain trade names, service marks, logos, emblems, and indicia of origin, including the Federal registered trademarks "Workout Anytime" and "24/7 Get Fit", and the common law rights associated with "Workout Anytime 24/7", along with other trade names and service marks which are now, or may be in the future, designated by Workout Anytime in writing for use with the System (the "Marks");

Workout Anytime continues to use, develop and control the use of the Marks to identify for the public the source of services and products marketed under the System, and which represent the System's high standards of quality, cleanliness, appearance and service;

You recognize the benefits to be derived from being identified with the System. You also recognize the value of the Marks and the continued uniformity of image to you, Workout Anytime, and other franchisees of Workout Anytime. You understand the importance to the System of Workout Anytime's high and uniform standards of quality, cleanliness, appearance and service, and further recognize the necessity of opening and operating your Workout Anytime health club facility in conformity within the System;

You recognize that to enhance the value of the System and goodwill associated with it, the Agreement places detailed obligations on you, including adherence to Workout Anytime's reasonable present and future requirements regarding the types of services offered, advertising, physical facilities, operational techniques, and related matters; and,

You wish to be assisted, trained, and franchised to operate a health club facility pursuant to the provisions, and at the location within the territory specified in, this Agreement (the "Territory"). You have also had an adequate opportunity to be thoroughly advised of the terms and conditions of this Agreement by counsel or an advisor of your own choosing.

- 1 -

**THEREFORE**, you and us, intending to be legally bound and in consideration of mutual agreements, covenants and promises contained in this Agreement, agree as follows:

## SECTION 1 - GRANT OF LICENSE

1.1     Subject to the limitations contained in this Agreement, Workout Anytime grants to you, during the Term (as defined below) the rights and license (the "License") to:

        A.     Operate a health club facility that uses the System (the "Club") upon the terms and conditions of this Agreement, in one (1) single territorial area and at one (1) location as described in Exhibit "L" (the "Territory");

        B.     Use the Marks at the Club and to utilize the System; and,

        C.     Offer and market at the Club related services and products (optional) that have been approved by Workout Anytime.

1.2     During the Term, Workout Anytime will not use or license any of the Marks licensed to you in connection with the operation of any other health club facility within your Territory described in Exhibit "L".  We or our affiliates have the right to grant other franchises or licenses and to operate company or affiliate owned fitness centers within private establishments located within the Territory, if access to those centers is limited to employees of the business, or transient guests of the business.

## SECTION 2 - FRANCHISE TERM AND RENEWAL

This Agreement and the franchise granted will continue for a period of fifteen (15) years. This fifteen (15) year period will begin on the date this Agreement is executed by Workout Anytime and is subject to prior termination in accordance with the provisions of this Agreement (the "Initial Term"). Upon expiration of the Initial Term you will have the option to renew your Franchise License for a single successive period of five (5) years (the "Renewal Term" and collectively with the Initial Term, the "Term" or a "Term").

Workout Anytime may refuse to renew this Agreement if you have:

        A.     Failed to remedy any material breach of this Agreement as specified by Workout Anytime in a written notice to you and such failure to remedy remains outstanding thirty (30) days prior to the end of the Initial Term or any Renewal Term; or,

        B.     Committed two (2) or more material breaches of this Agreement of a substantial nature in the preceding twenty-four (24) months prior to the end of the then-current Term.

Workout Anytime may also refuse to renew this Agreement if you are not current in payment obligations to Workout Anytime and our subsidiaries and affiliates at the end of the then-current Term following receipt of written notice by Franchisor of such delinquency in payment.

You will execute a Renewal Franchise Agreement and all other agreements in the form then being used by Workout Anytime in granting new franchises and pay a renewal fee of Two Thousand Five Hundred ($2,500.00) Dollars (the "Renewal Fee"), these agreements may

- 2 -

include an increase in continuing monthly fees and other obligations. There will not be, however, another Initial Franchise Fee charged in the renewal of the Franchise Agreement. Failure by you to execute agreements within thirty (30) days after their delivery to you will be deemed an election by you to not to renew your franchise.

As additional conditions to renewal, you will:

> C.    Make capital expenditures as may be reasonably required to renovate and modernize your Club, including the replacement of equipment, to reflect the then-current image of the company; and

> D.    Complete any additional education or training programs that the Franchisor may then require for franchisees upon renewal.

> E.    You must provide Franchisor with not less than six (6) months prior written notice of your desire to renew.  Franchisee will notify you within thirty (30) days of its receipt of your notice, if you have met Franchisor's requirements to renew for an additional five (5) year term.

## SECTION 3 - INITIAL FRANCHISE FEE

3.1    Upon the execution of this Agreement, you will pay Workout Anytime an Initial Franchise Fee of Thirty-Five Thousand ($35,000) Dollars (the "Initial Franchise Fee").

Transfer Fee - $7500 - WOA Sumter

3.2    If we agree to sell you up to three (3) Clubs, the Initial Franchise Fees for the additional Clubs, if purchased at the time you enter into our Development Agreement and initial Franchise Agreement are as follows: (i) $35,000 for the first club; (ii) a total of $55,000 for the right to develop two (2) clubs; and (iii) $60,000 for the right to develop three (3) clubs. The Clubs must be developed in accordance with the Development Schedule set forth in the Development Agreement.   Fee =

If you do not enter into a Development Agreement, all future purchases of franchises will be at the then-current initial Franchise Fee.

3.3    The Initial Franchise Fee is not refundable under any circumstances.

3.4    The amounts referred to above do not include any applicable Federal, State or Local Taxes which may be payable to the appropriate taxing authorities. (A State and Local Use Tax is applicable in some States of the purchase price of your equipment).

## SECTION 4 - CONTINUING FEES

4.1    Continuing Monthly Royalty Fee. On or before the tenth (10th) day of each month, commencing when you begin the pre-sale of memberships, you will pay the following continuing monthly royalty fee (the "Royalty Fee"):

> 1.    During the first five (5) years of the Initial Term, you will pay a monthly Royalty Fee of Four Hundred Ninety-Nine ($499.00) Dollars.  During the sixth (6th) through tenth (10th) years of the Initial Term, you will pay a monthly Royalty Fee of Five Hundred Forty-Nine ($549.00) Dollars.  During the eleventh (11th) through the fifteenth (15th) years of the Initial Term you will pay a monthly Royalty Fee of Five Hundred Ninety-Nine ($599.00) Dollars.  During the first renewal term, if applicable, you will pay a

monthly Royalty Fee of Six Hundred Forty-Nine ($649.00) Dollars.

2.      In addition to the amounts required to be paid pursuant to Section 4.1 1, you will pay a monthly Royalty Fee equal to four (4%) percent of your Gross Revenues.

3.      "Gross Revenues" includes all revenue you generate from all business conducted at your Club, including but not limited to membership fees, personal training fees, tanning bed fees, massages, and the sale and delivery of any other services, products, merchandise, and tangible property of any nature whatsoever, whether in cash or for credit, from sources paying at the club, outside the club or online and whether collected or uncollected.   "Gross Revenue" does not include the amount of any applicable sales tax imposed by federal, state, municipal, or other governmental authority if such taxes are stated separately when the customer is charged and you pay such amounts as and when due to the appropriate taxing authority. Also, excluded from Gross Revenues is the amount of any documented refunds, charge backs, credits, and allowances given to customers in good faith and only in accordance with our operating procedures.   All barter and exchange transactions for which you furnish services or products in exchange for goods or services to be provided by the vendor, supplier, or customer will be valued at the full retail value of the memberships bartered in exchange for the goods or services provided to you. Gross Revenues also includes the proceeds of any business interruption insurance paid to you. Gross Revenue also includes any payments you receive from vendors.

4.2    By the tenth (10th) day of each month you will pay a monthly National Brand Development Fee equal to one (1%) percent of your monthly Gross Revenues. Payment of the National Brand Development Fee will commence when you begin the pre-sale of memberships to your Club.  We reserve the right to increase the monthly National Brand Development Fee to a maximum of two (2%) percent upon thirty (30) days advance written notice.   Such monies will be utilized for the design and development of advertising, both local and national advertising costs, public relations, trade shows and conventions, and those other costs associated with both developing and promoting the System and the Workout Anytime brand.

4.3    Notwithstanding any designation by you as to what your continuing Monthly Royalty Fee is comprised of or how it has been calculated, we have the sole discretion to apply such payment(s) made by you towards any of your indebtedness for Monthly Processing Fees, advertising and promotional contributions, purchases, interests, collection costs or any other indebtedness.

4.4    You will pay a monthly Technology Fee of Three Hundred Ninety-Five ($395.00) Dollars by the tenth (10th) day of each month to compensate us for our expenses of developing and managing the franchisor's website, the franchisee's specific web page which links from the franchisor's website, as well as your Club's email platform (including up to five [5] discrete email addresses) and other technology we determine important in the operation of your Club.  Payment of the Technology Fee shall commence when you begin the pre-sale of memberships for your Club.

4.5    You hereby authorize the Franchisor's approved third party vendor (presently being ABC Financial Services, Inc.) to deduct from any monies it collects on your behalf the amount of all fees you are obligated to pay us and/or our affiliates on the due date of such fee(s). All Gross Revenue derived from the sale of all products and services at your Franchised Club must be processed through Franchisor's approved third-party

payment processor. You also authorize said vendor to supply us with any information it may have dealing with the operation of your Club and account.  To effectuate the terms of this Section, and to ensure the proper and timely remittance of all fees due the Franchisor under this Agreement, you hereby irrevocably constitute and appoint Workout Anytime your true and lawful attorney-in-fact to permit our review and, as may become necessary, our amendment of your account with that third-party vendor employed to collect your monthly membership monies.  This power of attorney is irrevocable and coupled with an interest and shall survive the termination of your franchise.

4.6    As security for all monetary and other obligations of Franchisee to Franchisor or its affiliates as set forth in this Agreement, Franchisee grants to Franchisor a first priority security interest in all assets of Franchisee in the Club, including entire club membership database for current and former members, Franchisee's monthly recurring draft, all furniture, fixtures, machinery, equipment, inventory and all other property (tangible or intangible), now owned or later acquired by Franchisee used in connection with the franchised health club business and wherever located as well as all contractual and related rights of Franchisee under this Franchise Agreement and all other agreements between the parties. Franchisee agrees to execute such financing statements, continuation statements, notices of lien, assignments or other documents as may be required to perfect and maintain Franchisor's security interest described in this paragraph, and authorize us to file in the public records of the county in which your Club may be located one (1) or more financing statements (i.e., UCC-1 financing statement) to evidence this security interest. Franchisor may, in its discretion, enter a subordination agreement, in form and substance satisfactory to it, whereby it will subordinate its security interest to: (a) the security interest of a reputable institutional lender relating to a loan to Franchisee for reasonable working capital purposes; (b) the purchase money security interest of an approved equipment vendor for any equipment purchased or leased by Franchisee and used in the operation of the Franchised Business; and (c) the purchase money security interest of a supplier of approved products sold at the Club. Franchisee shall pay all filing fees and costs for perfecting Franchisor's security interest.

4.7    Each month, within ten (10) days of a written request by us, you will supply a financial statement to us of the previous month's membership activities, including the number of new members, renewing members, cancelled members and current active enrollment as well as the amount of sales generated from the Club as a consequence of any of your actions in any regard or aspect, including, but not limited to, membership sales revenue, personal training revenue, and revenue associated with the sale of merchandise and other products, including supplements, food and liquids/beverages. We may also contact you by telephone or e-mail to collect this information.

4.8    Subject to your receipt of business interruption insurance payments, if you are unable to operate the Club due to damage or loss to the Club caused or created by a casualty, act of God, condemnation, or other condition over which you have no control, then the Royalty Fee will be waived for a period no greater than six (6) months commencing with the month in which such damage or loss occurs.

## SECTION 5 - ADVERTISING AND PROMOTION

5.1    Commencing on the date you open the Club for business and continuing throughout the term, you will spend a minimum of Two Thousand ($2,000.00) Dollars per month on advertising, marketing and otherwise promoting your Club (the "Local Advertising Expenditure"). Workout Anytime will offer recommendations as to the type, manner, and

time frame to maximize the benefit of your advertising. Workout Anytime has the right to require you to pay the Local Advertising Expenditure directly to it and if so required, Workout Anytime will make such expenditures as it deems reasonably necessary to promote your Club within your territory. You must submit proof of your expenditures for Local Advertising to Workout Anytime upon request.

5.2     Workout Anytime will make available to you advertising and promotional materials for the Club which are used by Workout Anytime, its affiliates and other franchisees of the System. You will receive a sample of each type of advertising and promotion material the Franchisor may create at no charge via web download, or other means of transmission we deem appropriate. If you want additional copies you must pay duplication or printing costs. You may develop advertising materials for your own use, at your own cost, subject to Workout Anytime's written approval, which we will provide within ten (10) days of your submission of the proposed materials. If we have not approved the use of the materials within ten (10) days, they are deemed not approved. Workout Anytime reserves the right to reject or stop your advertising if it is deemed inappropriate or not in keeping with the standards and quality of the brand.

5.3     Workout Anytime has the right to approve the media in which you propose to advertise. You must submit to us in advance, any proposal describing the media in which you propose to advertise, providing sufficient detail to permit us to evaluate it. We will have ten (10) days to approve or disapprove the use of our materials in the media you propose. If we have not approved the use of the materials within ten (10) days, they are deemed not approved.

5.4     You will install and, during the term of this Agreement will maintain an outdoor sign in a prominent location in accordance with Workout Anytime sign specifications, or as approved in writing by Workout Anytime, unless prohibited from doing so by applicable laws and regulations. You will use your best efforts to obtain any permit or variance required to allow the installation and maintenance of an outdoor sign meeting Workout Anytime specifications so long as it does not impose any undue economic burden on you. You may be restricted by local building owner or city specifications requiring adherence to a pre-established style or format. Workout Anytime will allow for these local and city variances.

5.5     Internet Advertising.

We maintain a website that provides information about the System, the products and services offered by franchisees and we will have sole discretion and control over it. We also have the sole right to create interior pages on our website(s) that contain information about your business and other franchised and company owned locations. All Franchisees are given access to post on the interior web pages for their location within the Franchisor's guidelines.

You may not establish a presence on, or market using, the Internet without our prior written consent. If you disagree with the content of your Franchisee's Page, our determinations will control. We retain the sole right to advertise or use the Marks on the Internet. We retain ownership of your Facebook, Facebook groups and communities, Google, Yahoo, Bing, Yelp, and any other online business profile pages. We will establish your internet presence and add the franchisee as administrator, however, franchisee must immediately provide all login and password credentials to franchisor if they are changed. We may require you to provide content for our Internet marketing pages. We may require you to provide content for our Internet marketing pages. Should your internet presence become inactive or fails to comply with system standards, Franchisor may assume control of all internet activities for your club. You must

WOATFDD2018v1

comply with our intranet and Internet usage rules, style guide, and requirements. We retain the sole right to approve any linking to, or other use of, the Workout Anytime Internet site. (Franchise Agreement Section 5.5) You must also establish or maintain a landing/splash page, online business profile or other presence on the Internet through any internet or social networking site in connection with the operation of your Club, including but not limited to Facebook, LinkedIn, MySpace, Plaxo, Twitter, Instagram, Snapchat, YouTube or any other social media platforms that may be required by Franchisor that uses any variation of the Marks or references the System. We must also approve your use of linking and framing between web pages and all other websites.

5.6   <u>Social Media</u>.  You may not engage in advertising or the promotion of your Club using social media programs that offer deeply discounted membership fees, such as, but not limited to such programs as Groupon, Living Social, Scout Mob or other similar programs without the express written consent of Workout Anytime, which consent shall be at our sole discretion.

## SECTION 6 - RECORDS - LATE PAYMENT CHARGE

6.1   You must prepare on a current basis complete and accurate records concerning all financial, marketing and other aspects of the business conducted under this Agreement. You must maintain an accounting system which accurately reflects all operational aspects of the Club including uniform reports as may be required by Workout Anytime. Your records shall include tax returns, monthly reports, statements of Gross Revenue (to be prepared each month for the prior month) and profit and loss statements and balance sheets (to be prepared at least annually by a Certified Public Accountant). All financial data with respect to your business that is required will be for Workout Anytime's own use, will be kept confidential, and will not be made available to other franchisees, prospective franchisees, or other third parties except to the extent that Workout Anytime decides, or is required to make a "Financial Performance Representation" under the franchise disclosure laws. The records required under this Sub-section pertain only to your operation of the Club. Workout Anytime has no right to inspect or copy the records of any unrelated business activity you may have.

6.2   To encourage prompt payment and to cover the costs and expenses involved in handling and processing payments, you will also pay, upon demand, a late payment charge equal to the greater of; (i) one and one-half percent (1 1/2%) per month on all payments due to Workout Anytime for the period said payments are due and unpaid; or (ii) the highest rate of interest permitted by law. Each failure to pay Royalty Fees, National Brand Development Fees, Technology Fees, and other fees or amounts payable to Workout Anytime when due is a material breach of this Agreement.

6.3    Upon our written request you will make available the following records:  An accurate set of books reflecting your Gross Revenues; all tapes and readout totals of cash registers or other point of sale devices; sales slips; order records of transactions with concessionaires and vendors; federal, state and city tax returns; banking records; accounts receivable; and such other records as may be needed for an effective audit of your gross sales. All such books and records shall be retained for a period of at least three (3) years after the end of each calendar year to which they relate, or if we have begun an audit, for such longer period as may be required to complete such audit. All such books and records shall be subject to inspection and audit by us at all reasonable

times.

6.4     We will have the right to have an auditor of our choice make a special audit of all your books and records, wherever located, pertaining to your Gross Revenue. If your actual Gross Revenues exceed the figures you've submitted to us previously by more than two percent (2%) in any calendar year, then you will pay for the cost of such audit, otherwise the cost of such audit shall be borne by us; and (ii) if such Gross Revenues shall be understated by four percent (4%) or more in any calendar year, or if the Gross Revenue is understated on three (3) or more occasions during the Initial Term, we will have the option to terminate this Franchise Agreement pursuant to the terms of Section 17. You will promptly pay to us any deficiency in which is established by any audit including any applicable late fees or penalties.

6.5     You acknowledge and agree that the restrictions imposed above are reasonable and necessary to  protect the goodwill associated with the System and the Marks, as well as our reputation and image, and are for the protection of us, you, and all other franchisees that own and operate a Workout Anytime Club.


### SECTION 7 - SERVICES AND ASSISTANCE PROVIDED BY THE FRANCHISOR

7.1     The Initial Franchise Fee and Royalty Fees are paid for the License which includes the use of the Marks and the System, owner's training, and for certain services rendered by Workout Anytime.

7.2     Workout Anytime will offer you initial and continuing services as Workout Anytime deems necessary or advisable in furthering the business of your Club, and the business of the System as a whole, in connection with protecting the Marks and goodwill of Workout Anytime. Failure of Workout Anytime to provide any service whether specifically described herein, either initially or continuing, will not excuse you from paying the Initial Franchise Fee or the fees set forth in Section 4 herein.

7.3     Initial and continuing services provided by Workout Anytime are:

A.      Equipment orders will be placed through our affiliate, Commercial Fitness Products, Inc. with our assistance and guidance. We will help the franchisee determine the proper amount of time between equipment orders, equipment delivery, and their set-up to ensure the proper opening of your Club.

B.      Designation of your exclusive Territory.

C.      Furnishing you with specifications or guidelines for all initial and replacement equipment, inventory and supplies required for the operation of your Club.

D.      Providing you or your designated manager (the "Manager") and up to one (1) other person with an initial training program. You and your Manager must attend and satisfactorily complete the initial training program prior to opening the Club. The initial training program will be conducted approximately nine (9) to twelve (12) weeks prior to the opening of your Club.

Franchisee must attend to conclusion, all required pre-opening training, which will not be waived under any circumstances. You will be responsible for travel and

- 8 -

living expenses incurred by you or any of your employees who participate in the training program. The initial training and orientation program will be held at our headquarters or at another location that we designate and will include a minimum of thirty (30) hours of training time. Training will consist of a discussion of the System, equipment use, administrative procedures, hiring/training employees, customer service, marketing, sales, accounting, support procedures and instructions on quality standards and practical experience in the operation of a Workout Anytime health club facility. You will likewise receive on-site training by a Workout Anytime trained individual.

E.   Assistance with respect to pre-opening, opening activities and/or on-going operations or training will be available as requested by Franchise owner. On-site training assistance during opening week is optional, pending availability of Workout Anytime representatives, with you bearing the costs associated with our representative being on-site at your request.

F.   Formulation of marketing plans, advertising and promotional programs and materials.

G.   Providing a service number and the Workout Anytime email platform available for your on-going inquiries and consultations with Workout Anytime representatives.

H.   The development of new products and service methods for the successful operation of the System as deemed beneficial at the sole discretion of Workout Anytime.  You will be informed of any new product or service methods and adopt same within a reasonable specified period of such notification.

I.   We will loan you or provide you with access to the electronic version of one (1) copy of the Manual (defined below) containing mandatory and suggested specifications, standards, operating procedures and rules prescribed from time to time by Workout Anytime.

J.   We will make commercially reasonable efforts to negotiate favorable prices and terms with major suppliers and allow you to utilize such centralized purchasing system.

K.   Workout Anytime may conduct visits by our field representatives from time to time. These visits, as determined necessary by Workout Anytime, will be within the sole discretion and at the sole expense of Workout Anytime.  Notwithstanding the forgoing, within six (6) months after you open your Club, we will send a representative to visit and inspect your Club and will thereafter provide to you a written report with respect to same.

L.   We may delegate certain of our obligations as set forth in this Section 7 to an Area Representative or contractor in certain geographic regions.

## SECTION 8 - LOCATION OF HEALTH CLUB FACILITY; CONSTRUCTION AND OPENING FOR BUSINESS; LEASE OR MORTGAGE

8.1   The Development Agreement will designate a site selection area in which you will locate the Club.  If no location is specified in Exhibit "L" at the time you sign the Franchise

Agreement, you, at your own cost and expense, will be solely responsible for locating and designating a location and for constructing and equipping the Club at the location in accordance with the System within six (6) months of the date of this Agreement. The location you choose to operate your Club must be approved by Workout Anytime. Because of our interest in the location, Workout Anytime may request, information regarding the cost of acquisition, development and construction. Any location inspection will be made solely at the option of Workout Anytime and will not be deemed to impose either any responsibility on Workout Anytime for the construction of the health club facility, or any warranty or representation of any kind, express or implied, as to its fitness or suitability. Upon its designation, the approved location will be the location specified in Exhibit "L".

8.2     You and Workout Anytime acknowledge that the location of the Club is a crucial factor in the Club's potential for success and Workout Anytime may reject any location, in our sole discretion, but we will not unreasonably withhold our consent to any location. Workout Anytime makes no representations or warranties with respect to the availability of appropriate locations, or the suitability or potential of locations, which it may approve.

8.3     Workout Anytime will assist you in analyzing a location for your Club. There are general methods used by Workout Anytime to assist you in your selection of a location for your Club. Workout Anytime assists in the location selection by ascertaining population density and proximity of the proposed location to any other Workout Anytime location(s). Workout Anytime does not hold itself out as a real estate expert and does not undertake to advise as to the suitability of any location. Our approval of a proposed location merely reflects our belief that the proposed location appears to be suitable for the development of a Club.

8.4     You must secure a location for your Club by purchase or lease which meets our approval within one hundred eighty (180) days of the execution of this Agreement. You agree to construct (or renovate), equip and open the health club facility at your expense in a good, workmanlike manner on or within twelve (12) months from this Agreement date, unless otherwise agreed between you and us in writing. The construction (or renovation) will conform to all applicable requirements of local authorities and will be in accordance with the standards and general specifications of the System. You must use Franchisor's approved architect to prepare plans for the construction of the Club.   You must submit your construction plans to us for our review.

8.5     You may not open your Club until  all construction has been satisfactorily completed, your Managers and all employees have been trained, the Club is ready for opening in all other respects (including signage, inventory, fixtures and equipment), the Initial Franchise Fee has been paid in full, all State and local requirements to operate a health club facility have been satisfied, Certificates of Insurance have been furnished in accordance with Section 13, you are in compliance with all terms of this Agreement including those set forth in Section 11, all items contained in an opening checklist have been completed to Workout Anytime's satisfaction, and you have met your Pre-Sale Membership obligations. You acknowledge that your opening for business prior to completely satisfying all the above conditions will cause irreparable damage to Workout Anytime's goodwill and reputation.

8.6     If you lease the health club facility:

        A.      You and your Landlord must enter into our Lease Addendum, attached hereto as

- 10 -

Exhibit M.

B.     You will install the maximum sized signage allowed by either your lease or local government. All signs, advertising, logos or other forms or insignia pertaining to the System are to be removed from the premises demised under the lease in the event that neither you nor Workout Anytime, or its designee, is the tenant under the lease upon termination of the Agreement. Workout Anytime must approve the proposed sign, including color, font and dimensions prior to proceeding to construction of sign.

C.     You must utilize the services of our preferred vendor, Horizon Properties, to assist in your site search and lease negotiation and to ensure the site meets Workout Anytime criteria. You will not be charged by Horizon Properties for this service as such commissions are regularly absorbed by the Landlord. Should you not wish to utilize Horizon Properties, however, you will be charged a fee of One Thousand Five Hundred ($1,500.00) Dollars for the costs associated with our site approval and lease review.

D.     You may not expand the Club or lease additional adjoining space to the club without the express written consent of Franchisor, which consent shall be at Franchisor's sole discretion.

## SECTION 9 - MAINTENANCE AND UPGRADING THE CLUB

9.1     Subject to the terms of this Section, and particularly Sub-section 9.2 below, you will always comply with all reasonable Workout Anytime standards, specifications, processes, procedures, requirements and instructions regarding your Club's physical facilities (the "Premises"), including the layout of furnishings, fixtures, and equipment, as are set forth in the Manual or in accordance with System Standards.

9.2     You will repaint the interior of the Premises a minimum of every three (3) years (or, as needed upon inspection by Workout Anytime in compliance with its reasonable standards), and remodel or upgrade the Club and all fitness equipment in the Club at your cost in accordance with our reasonable standards every five (5) years and at the time of renewal of this Agreement. You will also pay the cost of adding equipment or altering the Club for services and/or new equipment you choose to add, or that you are required to add, pursuant to Sub-section 11. (**YOU AFFIRMATIVELY ACKNOWLEDGE THAT AN ADDITIONAL INVESTMENT WILL BE REQUIRED PURSUANT TO THIS SUB-SECTION.**)

9.3     At any time during the Term, Workout Anytime reserves the right to require that you include as an option in your contract with your members a provision calling for the collection of a yearly one (1) time "Club Enhancement Fee" of Twenty-Five ($25.00) Dollars. This fee may be charged and collected in a single instance from all your Club's members at any time or designated month you specify.  Within thirty (30) days of said monies' collection you will inform Workout Anytime of the total amount collected and specify in writing how you propose such monies be expended, be it on additional or upgraded equipment or improvements on the Premises of your facility. Workout Anytime will then either approve your proposal or make suggestions as to an alternative that such monies might best improve your facility for use by your members within ten (10) days of your submission of same.

- 11 -

9.4     You must include in your membership contract a provision requiring your members to pay an annual "rate guarantee fee" of Twenty-Nine ($29.00) Dollars. This fee may be collected from your Club's members at the time of the signing of their initial contract, or within sixty (60) days of signing, and then annually thereafter as the membership contract is renewed. Workout Anytime encourages you to utilize these monies in furthering the goals and objectives of your Club by improving your Club's equipment, signage, flooring, painting, etc.

9.5     You will maintain your Club and any parking areas in good and safe condition   If you fail to maintain your Club in a condition that satisfied our reasonable requirements, we may, upon not less than three (3) days' written notice to you, order or accomplish the cleaning of the Premises, and you will be responsible for paying to us all costs we incur by doing so.


## SECTION 10 - CONFIDENTIAL OPERATIONS MANUAL

10.1    We will provide you with a copy or grant you access to the electronic version of the Workout Anytime Confidential Operations Manual (the "Manual"). The Manual will remain the sole property of Workout Anytime. You agree to immediately return the Manual to Workout Anytime at the expiration or termination of this Agreement.

10.2    You will treat the contents of the Manual as confidential and will not copy or otherwise reproduce, in whole or in part, or in any way make the contents of the Manual available to any person other than those persons employed by you to whom disclosure is necessary to enable you to operate the Club.

10.3    Workout Anytime may amend, revise and enhance the Manual and other instructional material (including its website) at any time in its sole discretion.

10.4    You agree to operate the Club in accordance with the Manual and Franchisor's website, and to be responsible for assuring compliance with the standards, specifications, requirements and instructions set forth in the Manual and Franchisor's website.

10.5    The contents of the Franchise resource section of the Workout Anytime website is deemed to be part of the Manual.

10.6    Franchisee acknowledges that because complete and detailed uniformity under many varying conditions may not be possible or practical, Franchisor specifically reserves the right and privilege, at its discretion and as it may deem in the best interests of the System, to vary standards for any franchisee based upon the peculiarities, particularities and circumstances of a specific site (i.e., landlord requirements, business potential, population of trade area, existing business practices,  or any condition which Franchisor deems to be of importance to the successful operation of such franchisee's franchised business).  Franchisee shall not be entitled to require the Franchisor to grant to it a like or similar variation which Franchisor may offer or permit to another franchisee.

## SECTION 11 - FRANCHISEE'S DUTIES AND OBLIGATIONS

11.1    Consistent with the terms of this Agreement, you will diligently develop the business of your Club and use your best efforts to market and promote its core services and products.

11.2    Subject to the terms of this Agreement, including Sub-sections 9.2 and 10.4, during the Term you will comply with all present and future reasonable standards, specifications, processes, procedures, requirements and instructions regarding the operation of the Club as set forth in the Manual. In furtherance of such, you must comply with the following requirements:

A.      A complete set of exercise equipment must be initially ordered only through Workout Anytime or another approved supplier, as may appear in the Manual, or as supplemented in the owner's section of Workout Anytime's website.

B       You must conduct pre-opening sales ("Pre-Sales") for your Club in accordance with our standards and Manual.

C.      You or your Manager must devote its full time and best efforts to the management and operation of the Club.

D.      You and your Manager must attend and satisfactorily complete the Workout Anytime initial training program. Attendance by you or your operating manager (if any) is compulsory and must be satisfactorily completed at least two (2) weeks prior to the opening of your Club.

E.      Any additional service or product introduced into the System by Workout Anytime must be offered for sale on a continuing basis at your Club at the time and in the manner required by Workout Anytime.

F.      You may only offer services and products for sale at your Club that has been approved by Workout Anytime in the Manual or otherwise in writing.    Workout Anytime reserves the right, in its sole discretion, to disallow any service or product that you have requested permission to offer.

G.      Only signs, advertising and promotional material, services, equipment, supplies, uniforms, furnishings, color/design scheme and fixtures that meet Workout Anytime standards and specifications can be used at your Club or in the promotion or marketing of your Club.

H.      All equipment, signs, products, supplies and other items necessary to add new services or products must be acquired, installed and utilized at Franchise Owner's expense within sixty (60) days of notice from us.

I.      Your Club, and everything located at and within your Club, must be maintained in a safe and presentable condition and in compliance with the highest standards of cleanliness, including restrooms and showers, changing rooms and utility closets. The Club must be adequately lighted and operated in a clean and wholesome manner consistent with Workout Anytime requirements as such may be established and modified from time to time. The flooring must be new or in good

condition. Appropriate window treatments must be installed to allow for the comfort and privacy of your members. All maintenance, repairs and replacements requested by Workout Anytime must be promptly made. All consultants and employees of the Club must be clean and neat in appearance and must always wear Workout Anytime approved uniforms.

J.    No alterations of the Club which materially affect the image of the Club may be made except at Workout Anytime's request or approval, and any alterations must conform to specifications and requirements established or approved by Workout Anytime in its sole discretion.

K.    The Club and its business must comply with all applicable State and local laws, ordinances, rules, codes, regulations and other requirements.

L.    Advertising materials provided to you by Workout Anytime for your use may be used only in the manner intended to promote the business. Any advertising materials which you might create must first be submitted to us for approval prior to your use of same.

M.    The Club must be open for business twenty-four (24) hours every day during the License Term, except days the Club is closed for repairs pursuant to Section 15.

N.    The employees, the equipment and supplies, inventory and other items on hand at your Club must always be sufficient in quality and number to efficiently meet the current and anticipated volume of your business.

O.    All debts and taxes arising from the Club and its business, except those duly contested in a bona fide dispute, must be paid when due including debts payable to your landlord, lender/financer, third party vendors, and both Workout Anytime and our affiliates.

P.    All necessary and appropriate measures must be taken to avoid an unsatisfactory sanitation or health rating by or from any governmental agency or authority. Conditions or practices disapproved by any such agency or authority must be promptly corrected.

Q.    All your dealings and transactions with Workout Anytime members, customers, suppliers and other franchisees are to be performed fairly and honestly. You will not permit a non-member access to either your or another franchisee's Workout Anytime health club facility unless such is on an introductory or trial basis, and then only for a maximum of thirty (30) days. You will not persuade or entice another franchisee's employee or members originating at their Club to terminate their employment or membership to have such employee or member become associated with your franchised location.

R.    You are obligated to allow Workout Anytime reasonable space at your point of sale counter or another reasonable location inside the Club for a franchise recruitment advertisement. You are also responsible for the restocking and upkeep of that display, should one be used. Workout Anytime will be responsible for the cost of producing the advertisements.

S.    You are solely responsible for recruiting new customers to their Club through advertising, marketing and business networking.

- 14 -

T.  You are responsible for keeping up to date on competitors. This includes an awareness of competitors' pricing, promotional offers, advertising and services. You are responsible for taking direct action, as appropriate, and as authorized by Franchisor, to respond to a competitors' activities.

U.  You must provide training to your employees in a fashion like that which you and your Manager received from Workout Anytime's representatives.

V.  In accordance with your State's Health Club Act requirements (if any such law or its equivalent exists for your geographic area or jurisdiction), you are responsible for arranging for obtaining all health club certifications and licensing prior to opening.

W.  **If they indicate a desire to do so, you <u>must</u> permit members of any other Workout Anytime franchised location the use of your Club.** You understand and agree that all Workout Anytime members, regardless of their originating membership location, are an integral component of the Workout Anytime System. As such, they are to be treated with the same courtesy and respect you regularly extend to a member originating from your Club. This membership reciprocity includes access to tanning, personal training, massages, etc., if the member has purchased a membership that includes premium services at their originating Workout Anytime club. You must permit those members to utilize such premium features at your Club to promote a positive experience for both you and the member. **Your failure to comply with Franchisor's reciprocity policy as stated in this Section is a material breach of this Agreement.**

X.  You must supply us with a copy of the lease governing your Club premises and ensure that Workout Anytime is included as a party to be notified in any instance, as well as our being able to exercise an option to take possession of the facility upon your default or termination should we, in our sole discretion, wish to do so. **Such option will be secured by your submission to your landlord of Exhibit "M" attached hereto.**

Y.  You agree to never transfer members of your Club to any other Workout Anytime club without the express written permission of both the member and Workout Anytime. During or after the termination or expiration of this Agreement, you will never transfer, or attempt to transfer, any individual's membership to any club that is not a part of the System.

Z.  You will immediately notify us of any legal action or proceeding by an individual or agency against you relating to your Club.

AA.  You acknowledge that when we may be required to perform any service for you, we may use third parties, including affiliates of ours, to perform those services.

BB.  Upon the reasonable request of the Franchisor, the Franchisee will present to its members such evaluation forms as are periodically prescribed by Franchisor and shall participate or request its members to participate in any marketing surveys performed by or on behalf of Franchisor.

CC.  If the Franchisee is an entity other than a single individual, then you must supply us with copies of the corporate Articles of Incorporation and Certificate of

Existence, partnership or joint venture agreement, company Articles of Organization if the entity is a limited liability company, or any other document attesting to the legal form of the Franchisee.

DD. Once an individual joins your Club, and for so long as his/her membership remains in effect that person's membership fees are paid solely to you. Accordingly, except for personal training fees which might be purchased at a non-originating franchised location, only you are to receive fees associated with such individual's Workout Anytime membership regardless of the degree such member uses another franchised location.

11.3 In prescribing standards, specifications, processes, procedures, requirements or instructions under Sub-section 11.2 or any other provision of this Agreement, Workout Anytime will assist in general market research and provide guidance in determining the prices charged by you for services or products of any kind. Workout Anytime will not have control over the day-to-day operations of the Club. Unless otherwise provided for herein, you are expected to establish your own prices as to all products or services **other than** both individual/family and corporate membership rates or costs which you understand and agree are to be established solely by Workout Anytime, from time to time, as it may determine in its sole discretion.

11.4 Workout Anytime and our representatives or designated contractors will have the right to enter, inspect and photograph your Club at any time (it being understood by the parties that the facility is a club operating twenty-four (24) hours a day, seven (7) days a week), and our representatives will have the right to discuss with you or other people you may designate all matters that may pertain to compliance with this Agreement and with Workout Anytime standards, specifications, requirements, instructions and procedures. You will in all respects cooperate with Workout Anytime's rights under this Sub-section provided that our exercise of these rights will not unreasonably interfere with the conduct of your business.

11.5 You agree during the Term and for three (3) years after the expiration and termination of this Agreement that you will supply to Workout Anytime your home address and telephone number(s) which Workout Anytime may include in its Disclosure Document.

11.6 If you are an individual, you or your Manager trained in the Workout Anytime system must directly supervise the franchised business. If you are a corporation or other entity, or if you have in Workout Anytime's sole judgment, insufficient experience in a business like a Workout Anytime franchise or experience in business management in general, then you will nominate an operating partner or Manager having the required experience who will have direct responsibility for all operations of the Club. Any change in the operating partner or Manager will be subject to the approval of Workout Anytime. The operating partner will be the correspondent referred to in Sub-section 20.9 below.

11.7 **Attendance at Annual Convention.** Franchisor may hold an annual conference (the "Convention") at a location we select. We will determine the topics and agenda for the Convention to serve the purpose among other things, of updating franchisees on new developments affecting franchisees, exchanging information between franchisees and our personnel regarding business operations, and recognizing franchisees for their achievements. Franchisee or Franchisee's representative must attend the Convention and to pay our then-current registration fee. If we charge a registration fee for the Annual Convention, you must pay the fee regardless of whether you attend. All expenses, including Franchisee's and Franchisee's employees' transportation to and from the

- 16 -

Annual Convention, and lodging, meals, and salaries during the Annual Convention, are the responsibility of Franchisee.

11.8 **Ownership of Member Information and Data.** Franchisee acknowledges and agrees that Franchisor is the owner of all information concerning the members of the Club and that Franchisee may not disclose, sell or encumber such information or data to any person or entity during the Term or following the termination, expiration, or non-renewal of this Agreement.

11.9 **Employee Matters.** You are solely responsible for the day-to-day operation of your Franchised Business and its employees. You will be solely responsible for recruiting and hiring the persons you employ to operate the Franchised Business. You are responsible for their training, wages, taxes, benefits, safety, schedules, work conditions, assignments, discipline and termination. At no point will you or your employees be deemed to be employees of Workout Anytime Franchising Systems, LLC.

(a) Franchisee shall obtain from each of its personnel an acknowledgement signed by such personnel that such individual understands, acknowledges, and agrees that he or she is an employee of Franchisee and not Franchisor and that such individual shall look solely to Franchisee for his or her compensation and for all other matters related to their relationship with Franchisee.

(b) Franchisee shall post a notice on an employee bulletin board clearly visible to employees at the Franchised Business notifying all employees of their employer and clearly stating that neither Franchisor nor its affiliates are an employer of the employees.

(c) Franchisee's employees are not Franchisor's agents or employees and Franchisor is not a joint employer of these individuals. Franchisee is solely responsible for performing all administrative functions of the Franchised Business, including payroll and providing worker's compensation insurance. Franchisee acknowledges that it is not economically dependent on Franchisor and that Franchisor does not provide facilities, equipment or house or transport Franchisee's employees or provide to Franchisee employees tools or materials required for Franchisee's employees to perform services for Franchisee.

## SECTION 12 - PURCHASE OF EQUIPMENT, INVENTORY AND SUPPLIES

12.1   You must purchase all exercise equipment through Workout Anytime or an approved supplier/vendor as shall be listed in the Manual which we provide to you, or through the franchise resource section of our website. Commercial Fitness Products, Inc. is currently the sole approved vendor of approved fitness equipment. You must furnish all items, including apparel, which bear the marks, only from our approved supplier.

**ALTHOUGH APPROVED BY US, WE AND OUR AFFILIATES MAKE NO WARRANTY AND EXPRESSLY DISCLAIM ALL WARRANTIES, INCLUDING WARRANTIES OR MERCHANTABILITY AND FITNESS FOR ANY PURPOSE, WITH RESPECT TO FIXTURES, FURNITURE, EQUIPMENT (INCLUDING, WITHOUT LIMITATION, ALL EXERCISE EQUIPMENT), SUPPLIES OR OTHER APPROVED ITEMS.**

12.2   The standards and specifications for other equipment, supplies and other products

recommended by Workout Anytime may be found in the Manual or at the franchise resource section of the Workout Anytime website.

12.3    You may not purchase other items from any other non-approved supplier/source unless approved by Workout Anytime Franchising Systems, LLC.

12.4    Workout Anytime may review at any time the quality of the equipment, products and other supplies anticipated to be purchased for your club to ensure that quality standards of the System are met.    Any deficiencies as to either quality or quantity must be addressed and corrected within that reasonable period which Workout Anytime may designate.

## SECTION 13 - INSURANCE AND INDEMNIFICATION

13.1    Upon commencement of the License Term, you will purchase, and maintain in full force, at all times, during the Term of this agreement, an insurance policy with those limits equal to or greater than those outlined below. Copies of all insurance policies must be provided to Workout Anytime prior to the opening of your Club and within thirty (30) days of such policies' renewal date:

    A.    Workers' Compensation insurance in amounts prescribed by law;

    B.    Fire and lightning, extended coverage, theft, vandalism and malicious mischief, flood (if the health club facility is in a designated flood hazard area), and sprinkler leakage insurance on your health club facility;

    C.    Comprehensive general liability insurance with coverage for sexual abuse and molestation, and employment related practices insurance coverage in such amounts as Franchisor may determine, but not less than $2,000,000 per occurrence and $2,000,000 aggregate, insuring both you and Workout Anytime against all claims, suits, obligations, liabilities and damage, including attorney's fees, based upon or arising out of actual or alleged personal injuries or property damage relating to the use or condition of the health club facility; and, name Workout Anytime Franchising Systems, LLC as an additional insured.

    D.    Such additional insurance as may be required by the terms of any lease or mortgage for the Club.

13.2    All policies of insurance required under this Section will be with insurers qualified to do business and in good standing in the State where your Club is located, and will be in a form reasonably satisfactory to Workout Anytime. Prior to opening for business, you will furnish to Workout Anytime certificates issued by each of your insurers indicating that all premiums due have been paid, that all required insurance is in full force and effect and that the insurance will not be terminated or changed without at least thirty (30) days' prior written notice from the insurer to both yourself and Workout Anytime Franchising Systems, LLC. New certificates evidencing renewal of insurance will be furnished at least thirty (30) days prior to the date of expiration of each policy. Within five (5) days of any request by Workout Anytime you will deliver a copy of all insurance policies to Workout Anytime for its examination and confirmation.

13.3    If you fail to obtain or maintain adequate insurance as set forth herein then Workout Anytime may, at its election and sole discretion, obtain insurance for and in your name

and its name. Within five (5) days of any written request by Workout Anytime you will pay all costs and premiums incurred by Workout Anytime in obtaining such insurance, plus an administrative fee equal to ten (10%) percent of such insurance premium's cost to Workout Anytime.

13.4    You will indemnify, defend and hold Workout Anytime harmless against all claims, demands, losses, damages (including punitive damages), costs, suits, judgments, penalties, expenses (including reasonable attorneys' fees and amounts paid in settlement or compromise) and liabilities of any kind, whether or not ultimately determined to be meritorious, including damages suffered by you or any of your property or property interests (collectively, "Damages"), arising directly or indirectly out of, or in connection with, the construction, operation, maintenance or occupancy of your Club, except to the extent that such liabilities arise from the gross negligence or willful acts or purposeful omissions of Workout Anytime.

13.5    All fixtures, equipment, signs, merchandise, supplies and other property on or about your Club will be at your sole risk and hazard, and if they are destroyed or damaged in any way, no part of the loss or damage shall be paid by Workout Anytime except to the extent caused by Workout Anytime's gross negligence or willful acts.

## SECTION 14 - TRADEMARKS AND TRADE SECRETS

14.1    You recognize and acknowledge Workout Anytime's exclusive ownership and right to Workout Anytime's current and future Marks and in all related practices, procedures, methods and devices. All goodwill now or in the future associated with or relating to the Marks will accrue directly and exclusively to the benefit and is the property solely of Workout Anytime. Nothing contained in this Agreement will be construed to entitle you any right, title or interest in the Marks, or the goodwill now or in the future associated with them, other than the rights and license expressly granted in this Agreement.

14.2    You represent, warrant and agree that you will not:

A.    Directly or indirectly contest or aid in contesting, either during or following termination of this Agreement, the validity or ownership of the Marks;

B.    Take any action in derogation of Workout Anytime claimed rights whether now existing or later obtained;

C.    Include the Marks in either your corporate, limited liability company, or partnership name, or in any internet domain name; or,

D.    Utilize the Marks in any advertising or promotion that has not otherwise first been approved, in writing, by Workout Anytime.

14.3    You agree to use only Workout Anytime existing or future Marks, and related practices, systems, procedures and methods for the promotion and operation of the Club, and only in accordance with the written procedures established by Workout Anytime.

14.4    You will cause Workout Anytime Marks to be reproduced exactly and accurately.

14.5    Except for the registration of a "d/b/a" or a fictitious name certificate for the operation of

the Club, **YOU WILL <u>NOT</u> REGISTER OR ATTEMPT TO REGISTER THE MARKS IN YOUR OWN NAME**.  You may not use the Marks as any part of your entity name.  The use or registration of the name "Workout Anytime" in any form or fashion other than what may otherwise be permitted herein will be deemed a material breach of this Agreement.

14.6   You will immediately inform Workout Anytime of any suspected, known or threatened infringement, piracy or challenge to the Marks, Trade Secrets, methods and procedures used in the System. You will assist and cooperate with Workout Anytime in acting, at Workout Anytime's sole expense, as Workout Anytime deems appropriate to protect the System. Workout Anytime will indemnify, hold you harmless, and will reimburse you for your liability and reasonable costs for defending the Marks.

14.7   Only the principals of the franchise entity, and that manager employed by the franchisee to operate the health club facility, may utilize the Workout Anytime email platform.

14.8   Immediately upon the expiration or sooner termination of this Agreement, you will:

    A.    Cease and forever abstain from using any of the Marks including, but not limited to, the de-imaging and de-branding of the Premises;

    B.    Take all actions necessary to cancel any d/b/a/ or fictitious name registration containing any of the Marks; and,

    C.    Furnish Workout Anytime with evidence reasonably satisfactory to Workout Anytime of compliance with the foregoing obligations within thirty (30) days after any expiration or sooner termination.

14.9   You acknowledge that you took no part in creating or developing, have no prior knowledge of, and have no rights or claims in, or to, any element of the System. You agree that all materials loaned or licensed or made available to you will be kept confidential by you and will remain the property of Workout Anytime.

14.10   Except as specifically disclosed in the Disclosure Document, Workout Anytime represents and warrants to the best of Workout Anytime's knowledge that the Marks do not violate or infringe upon any rights of others.

14.11   You agree that any use or variant of the Marks which you may develop or originate which, in turn, may be approved and adopted by Workout Anytime becomes the sole and exclusive property of Workout Anytime.  You affirmatively waive all rights of whatever form or nature, arising under either common law or both state or federal law(s), and assign to Workout Anytime all prospective rights and interests in any intellectual property which utilizes either the present Marks themselves or any subsequent Marks which Workout Anytime may use, regardless of their originating source.

## SECTION 15 – LOSS, CONDEMNATION AND CASUALTY

15.1   You will promptly advise Workout Anytime upon your receipt of a notice of default or termination of your Club's lease or mortgage, or equipment lease or security agreement related to any purchase of equipment, and will promptly provide Workout Anytime a copy of the notice. You will also give Workout Anytime notice of any proposed taking of your Club, or any of your equipment, or any portion thereof through the exercise of the power

- 20 -

of eminent domain, foreclosure, or any dispossessory action, at the earliest possible time. If the Club or a substantial part thereof is to be taken, the Club may be relocated within the area specified in Exhibit "L" or elsewhere with Workout Anytime's written approval in accordance with our relocation procedures. If you open a Club at another location in accordance with Workout Anytime's standards and general specifications within one (1) year of the closing of the old Club, the new Club will be deemed to be the Club licensed under the Agreement. If a condemnation, lease termination or mortgage default takes place and a new Club does not, for any reason, (other than those specified in Section 8) become the Club as provided in this Sub-section, then the License will terminate upon notice by Workout Anytime.

15.2   If the Club is damaged, you will expeditiously repair the damage.  If the damage requires closing the Club you will immediately notify Workout Anytime in writing, and will:

    A.   Relocate the Club as provided in Sub-section 15.1; or,

    B.   Repair or rebuild the Club in accordance with Workout Anytime's then existing standards and general specifications, and reopen the Club for continuous business operations as soon as practicable (but, in any event, within twelve (12) months after closing the Club), giving Workout Anytime thirty (30) days' advance written notice of the date of reopening.

        If the Club is not (or, in the opinion of Workout Anytime, cannot be) reopened in accordance with this Section, or relocated pursuant to Sub-section 15.1, the License will terminate upon written notice to you.

15.3   The Term will not be extended by any interruption in the Club's operations, except for an act of God that results in the Club being closed not less than sixty (60) days nor more than one hundred eighty (180) days. You must apply for any extension within thirty (30) days following the reopening of the Club. Except as provided in Sub-section 4.3, no event during the Term will excuse you from paying Royalty Fees or other fees as provided for in this Agreement.

15.4   In the event you receive a bona fide offer for the purchase of your Club, or any of its equipment or other assets, then in such event you will give Workout Anytime written notice of this offer.  The notice must set forth the name of the proposed transferee, and all other terms and conditions of the proposed transfer.  On receipt of the notice, Workout Anytime shall have the exclusive right and option during a period of sixty (60) days from the date of said notice, to purchase from the franchisee the assets proposed to be sold under the same terms and conditions contained in such bona fide offer to purchase.

## SECTION 16 - RESTRICTIONS ON COMPETITION

16.1   During the term of this Agreement, or any extensions or renewals and for a period of two (2) years following their expiration, termination, assignment or transfer, you will not directly or indirectly, through corporations, partnerships, limited liability companies, trusts, associations, joint ventures or other unincorporated businesses, perform any services for, engage to acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of, any business that engages in or offers franchises for businesses that engage in or operate gymnasiums, fitness, personal training, or workout facilities, except for other health club facilities franchised by Workout Anytime or its affiliates, at the premises of the Club, or

within twenty-five (25) miles of any Workout Anytime health club facility.

16.2   Nothing in this Section will prevent any active officer of yours or member of your family, either individually or collectively, from owning not more than five percent (5%) of the stock of any company, which is subject to the reporting requirements of Section 10 or Sub-section 13 (D) of the Securities and Exchange Act of 1934.

16.3   You will not at any time, during the term of this Agreement or any extensions or renewals and for a period of two (2) years following their expiration, termination, assignment or transfer, divert or solicit any member or former member of your Club or another Workout Anytime club to another workout or fitness facility other than a to a Workout Anytime club.

16.4   You will not at any time solicit, employ, or otherwise attempt to employ or interfere with the employment relationship of any person who is either employed by Workout Anytime, or employed by any other Workout Anytime franchisee.

16.5   If any court having jurisdiction to determine the validity or enforceability of this Section determines that, strictly applied, it would by invalid or unenforceable, the scope of prohibited activities or the time or geographical provisions of this Section will be deemed modified to the extent necessary (but only to that extent) so that such restrictions as modified will be valid and enforceable.

16.6   You acknowledge that as a Workout Anytime franchisee you will have access to Workout Anytime Trade Secrets and confidential information and practices and therefore be in a unique position to use the special knowledge you will have gained while a franchisee. You acknowledge that a breach of the covenants contained in this Section will be deemed to threaten immediate and substantial irreparable injury to Workout Anytime. Accordingly, you agree that Workout Anytime will have the right, without prior notice to you, to obtain immediate injunctive relief without limiting any other rights or remedies.

16.7   If you are a legal entity, all officers, directors, stockholders, partners, members, trustees, beneficiaries and/or principals of you, the franchisee, and any persons controlled by, controlling or under common control with you must execute the Non-Competition, Non-Solicitation and Confidentiality Agreement attached hereto as Exhibit C.

16.8   You agree that the scope of the timetables and prohibitions set forth above are reasonable and necessary to protect us and the System (including other franchisees of the System). You agree that the above referenced prohibitions are permissively broad to prevent you from taking information, materials and training which Workout Anytime is providing to you on an ongoing basis and using them to either compete with us, or preempt or otherwise restrict our ability to enter new markets.

16.9   Franchisee acknowledges and confirms that the scope of the activities prohibited in this Section 16, as well as length of the term and geographical restrictions contained in this Section 16, are necessary to protect Franchisor's legitimate business interests and are fair and reasonable and not the result of overreaching, duress or coercion of any kind.

16.10  If Franchisee is an individual, Franchisee further acknowledges and confirms that his or her full, uninhibited and faithful observance of each of the covenants contained in this Section 16 will not cause any undue hardship, financial or otherwise, and that enforcement of each of the covenants contained in this Section 16  will not impair his or

- 22 -

her ability to obtain employment commensurate with his or her abilities and on terms fully acceptable to him or her or otherwise to obtain income required for the comfortable support of himself or herself and his or her family, and the satisfaction of the needs of his or her creditors.

16.11   Franchisee acknowledges and confirms that its special knowledge of the Franchisor's systems and business (and anyone acquiring such knowledge through Franchisee) is such as would cause Franchisor and its franchisees severe injury and loss if he or she (or anyone acquiring such knowledge through Franchisee) were to use such knowledge to the benefit of a competitor or were to compete with Franchisor or any of its franchisees.

16.12   If any court shall hold that the time or territory or any other provision stated in this Section 16 constitutes an unreasonable restriction upon Franchisee, Franchisee agrees that the provisions of this Franchise Agreement shall not be rendered void, but shall apply as to time and territory or to such other extent as such court may judicially determine or indicate constitutes a reasonable restriction under the circumstances involved.

16.13   Franchisor, in its discretion, may reduce the scope of any covenants set forth in this Section 16. Any such reduction is effective immediately upon Franchisor's delivery of notice. Franchisee shall comply immediately with any covenant as so modified. Such modified covenant is fully enforceable to the extent permitted by applicable law.

## SECTION 17 - TERMINATION

17.1   **Termination by You.**

If you are in compliance with this Agreement and Workout Anytime materially breaches this Agreement and fails to cure the breach within sixty (60) days after a written notice of the breach is delivered to Workout Anytime by you, you may terminate this Agreement, effective ten (10) days after delivery to Workout Anytime of a notice of termination. There are no other provisions in this Agreement that grant you the right to terminate this Agreement, and such termination may only be accomplished as provided for herein, or by agreement of the parties.

Should you terminate this Agreement in compliance with this Sub-section, you are required to comply with the post-termination procedures as set forth in Sub-section 17.7.

17.2   **Termination by Workout Anytime Without Notice.**

The Agreement will immediately terminate without notice (or in the event notice is required by law, immediately upon the giving of such notice or at the earliest time thereafter permitted by applicable law) in the event that:

A.   No site has been designated and accepted pursuant to Sub-Section 8.1;

B.   A permanent or temporary receiver or trustee for the Club or all or substantially all of your property is appointed by any court, or any such appointment is consented to or not opposed through legal action by you, or you make a general assignment for the benefit of your creditors, or you make a written statement to the effect that you are unable to pay your debts as they become due, or a levy or

execution is made on the License, or an attachment or lien remains on your health club facility;

C.   You lose possession or the right of possession of all or a significant part of the Club through condemnation, casualty, lease termination, mortgage foreclosure, equipment lease or purchase foreclosure, and the Club is not relocated or reopened as provided in Section 15;

D.   You contest in any court or preceding the validity of, or Workout Anytime ownership of, any of the Marks;

E.   A material breach of Section 11.2(W) or 18 (i.e. Transfer and Assignment) occurs; or,

F.   You are a corporation or limited liability company and any action is taken which purports to merge, consolidate, dissolve or liquidate you without Workout Anytime prior written consent.

17.3   **Termination With Notice and Without Opportunity to Cure.** Franchisor has the right to terminate this Agreement upon notice without providing Franchisee an opportunity to cure for any of the following breaches or defaults:

A.   If Franchisee or Franchisee's principals are convicted of or plead guilty or no contest to a felony or take part in any criminal misconduct or other misconduct that negatively impacts the Licensed Marks or the operation of the Franchised Business;

B.   If Franchisee or Franchisee's Principal Owners commit any fraud or misrepresentation in the operation of the Franchised Business;

C.   If Franchisee or Franchisee's Principal Owners make any misrepresentation or omission in connection with Franchisee's franchise application, including but not limited to any financial misrepresentation;

D.   If Franchisee fails to complete the Initial Training;

E.   If Franchisee directly or indirectly files suit or makes any other formal legal claim against any of Franchisor's approved vendors;

F.   If Franchisor sends Franchisee more than 2 notices to cure pursuant to Sections 17.4, 17.5 or 17.6 hereof in any 12-month period, regardless of whether the breaches have been cured;

G.   If Franchisee or Franchisee's principals materially violate any provision hereof pertaining to the Licensed Marks or Confidential Information or misuse the Licensed Marks or Confidential Information;

H.   If Franchisee violates the in-term restrictive covenant contained in Section 15;

I.   If a levy of writ of attachment or execution or any other lien is placed against Franchisee or any of Franchisee's principals or any of their assets which is not released or bonded against within 30 days;

J.   If Franchisee or any of Franchisee's principals become insolvent;

K.    If Franchisee voluntarily or otherwise abandons the Franchised Business. The term "abandon" includes any conduct which indicates a desire or intent to discontinue the Franchised Business in accordance with the terms of this Agreement and will apply if Franchisee fails to operate the Franchised Business for a period of three (3) or more consecutive business days without Franchisor's prior written approval;

L.    Franchisee fails to maintain insurance or to repay Franchisor for insurance paid by it, or otherwise fail to adhere to the requirements of Section 13;

M.    Franchisee fails, within thirty (30) calendar days after notification of non-compliance by federal, state or local government authorities to comply with any law or regulation applicable to the Franchised Business;

N.    Any government action is taken against Franchisee that results in any obligation upon Franchisor which in Franchisor's sole judgment is uneconomical, not in the best interests of Franchisor, or would result in Franchisor having an unintended relationship or obligation; or

O.    If Franchisee commits any fraud, criminal acts or other misconduct or makes any misrepresentation or omission to Franchisor relating to any other agreement with Franchisor or Franchisor's affiliates; or

P.    If Franchisee fails to commence operations of the Franchised Business by the required opening date, as described in Section 8.4 of this Agreement.

**17.4**    **Termination Upon Notice and 5 Days' Opportunity to Cure.**  If Franchisee fails to pay as and when due any sums owed to Franchisor, any of Franchisor's affiliates, or any of Franchisor's major suppliers or vendors, Franchisor may terminate this Agreement upon after the expiration of five (5) days following notice to cure.

**17.5**    **Termination Upon Notice and 15 Days' Opportunity to Cure.** Franchisor has the right to terminate this Agreement if any of the following defaults remain uncured after expiration of the 15-day cure period:

A.    If any audit reveals that Franchisee has understated Franchisee's royalty or advertising payments by more than 2%, or if Franchisee has failed to submit timely reports and/or remittances for any two (2) reporting periods within any 12-month period;

B.    If Franchisee fails to personally, or through an approved manager, supervise the day-to-day operation of the Franchised Business or fails to employ enough qualified, competent personnel as Franchisor requires from time to time;

C.    If Franchisee fails to maintain the strict quality controls reasonably required by this Agreement and/or the Operations Manual; or

D.    Franchisee fails to procure or maintain any licenses, certifications, or permits necessary for the operation of the Franchised Business.

**17.6**    **Termination With Notice and 30 Day Opportunity to Cure.** Franchisor has the right to terminate this Agreement after notice and expiration of a 30-day cure period if Franchisee fails to perform or comply with any one or more of the terms or conditions of

this Agreement which are not specifically enumerated in Sections 17.2, 17.3, 17.4, or 17.5 of this Agreement, or any ancillary agreements between Franchisee and Franchisor or any agreement between Franchisee and any of Franchisor's affiliates.

17.7 **Effect of Termination.**

Should this Agreement expire or be terminated by any party and for any reason, all rights and obligations between you and Workout Anytime under this Agreement will terminate, except for Sub-sections 10.1 and, 10.2, Section 14 and 16, and Sub-section 17.7. In an instance of expiration or termination, you will cease to be a licensed participant in the System, and you will:

A.    Promptly pay Workout Anytime all amounts owing by you based on operations of the Club through the date of termination plus interest at the rate of eighteen percent (18%) per annum;

B.    Immediately discontinue the use of all Marks, signs, structures, forms of advertising, telephone listings and service, the Manual, and all materials and products of any kind which are identified or associated with the System and return all materials and products to Workout Anytime and, at our request, assign your Club's telephone number to Workout Anytime;

C.    Make no representation nor state that you are in any way approved, endorsed or licensed by Workout Anytime, or associated or identified with Workout Anytime or the System in any manner;

D.    Immediately take all steps necessary to amend or terminate any registration or filing of any d/b/a or fictitious name or any other registration or filing containing the Marks to delete the Marks and all references to anything associated with the System;

E.    Provide Workout Anytime the option to purchase required by Section 18.8;

F.    Comply with the provisions of Sub-sections 15.7 and 16.1; and

G.    Forfeit all rights to receive membership fees and other revenue through the monthly draft from the credit card processor as of the date of termination or expiration of this Agreement.

17.8 If, within thirty (30) days after termination of this Agreement by Workout Anytime, you fail to remove all displays of the Marks from the Premises which are identified or associated with the System, Workout Anytime may enter the Premises to effect removal. In this event, Workout Anytime will not be charged with trespass nor be accountable or required to pay for any displays or materials which it might remove from your facility.

17.9 If, within thirty (30) days after termination you have not taken all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Marks, you hereby irrevocably appoint Workout Anytime as your true and lawful attorney-in-fact for you, and permit Workout Anytime, in your name, place and stead and on your behalf, to take action as may be necessary to amend or terminate all registrations and filings, this appointment being coupled with an interest to enable Workout Anytime to protect the System.

- 26 -

17.10 **Nonwaiver.** Franchisor's delay in exercising or failing to exercise any right or remedy under this Agreement or Franchisor's acceptance of any late or partial payment due hereunder will not constitute a waiver of Franchisor's rights against Franchisee.

17.11 **Franchisor's Right to Withhold Services or Products.** During any period of uncured default by Franchisee, Franchisor shall have the right to withhold or discontinue providing all services to Franchisee.

17.12 Franchisor's **Option to Purchase of Business and Inventory**. On the expiration or termination of this Agreement for any reason, we will have the right, but not the obligation, exercisable by written notice delivered to you at any time contemporaneously with or after delivery of a notice of termination under this Agreement, or within thirty (30) days after the date of expiration, to purchase all or part of your physical assets used in the Club except your personal assets. There will be no compensation for goodwill, and the purchase price for such assets will be equal to their fair market value less such goodwill. If you and we cannot agree on the purchase price for the assets that we desire to purchase within ten (10) days following our exercise of this option to purchase, an independent appraiser we designate will determine the fair market value, and you and we will share equally the cost of the appraiser. Such appraiser's decision will be final and binding with no appeal therefrom. The closing of the purchase will take place at a location, and on a date, we choose, and will be completed in accordance with all applicable bulk sales laws. At closing, you will deliver to us a bill of sale for the assets, in a form acceptable to us. We will be entitled to set off against the purchase price any amounts you then owe us or any affiliate of ours, and to pay out of the purchase price any of your unpaid creditors.

17.13 **Alignment Deficiency Fee.** In the event of default of its obligations under this Agreement by Franchisee, at Franchisor's sole discretion, and without waiver of any of Franchisor's rights under this Agreement, in lieu of the termination of this Agreement, Franchisor may impose a fee (the "Alignment Deficiency Fee") in an amount up to One Thousand Five Hundred ($1,500) Dollars per event of default. Franchisee must pay the Alignment Deficiency Fee within three (3) days of Franchisor's demand.

## SECTION 18 – TRANSFER AND ASSIGNMENT

18.1 **General.**

Except with respect to your mortgage company or institutional lender (if any), none of your rights under this Agreement may be the subject of any pledge, lien, levy, attachment, or security agreement, or assigned or otherwise purportedly transferred through execution, foreclosure, or like action. None of your rights or obligations under this Agreement are assignable or transferable, without Workout Anytime's prior written consent, which will not be unreasonably withheld or delayed, and compliance in all other respects with the terms of this Section.

With and after each valid assignment of this Agreement pursuant to this Section, the assignee or assignees will have deemed to be you, the Franchisee, under this Agreement and will be bound and liable for all existing and future obligations of the Franchisee. No stockholder in any corporation, and no member of any limited liability corporation, which becomes a franchisee will have any rights as an individual under this Agreement because of his, her or its stock ownership or membership interest, and the

name of such entity will not include any of the Marks.

18.2 This Agreement, and your rights and obligations arising under it, are personal to you only. As used herein, the word "transfer" means the sale, lease, assignment, gift, mortgage, or transfer because of your death, bankruptcy, share exchange, or transfer by operation of law or otherwise, either directly or indirectly, voluntarily or involuntarily. If you are a corporation or limited liability company, such includes a transfer, as defined above, of a fifty (50%) percent or more interest in your entity. A transfer cannot occur unless the following conditions are first satisfied:

A. There will be no material default in the performance or observance of any of your obligations under this Agreement or any other agreement with Workout Anytime, and you recognize that the provisions of Section 16.1 *et seq.* will apply after the transfer or assignment has been approved and transacted;

B. You have settled all outstanding accounts with Workout Anytime, its affiliates, all taxing authorities, and any third-party vendors;

C. The proposed transferee is approved as a prospective franchisee, the sale price is appropriate, and Workout Anytime is paid a Transfer Fee in the amount of fifty (50%) percent of the then-current Initial Franchise Fee, unless the transferee is a corporation of which you are the majority stockholder, or said transfer is to either Workout Anytime itself or to an entity in which you own a fifty (50%) percent or more interest;

D. The proposed transferee will execute our then current form of Franchise Agreement, and the proposed transferee will execute an Acknowledgement of Receipt of a then current copy of our Franchise Disclosure Document;

E. The proposed transferee will pay for, attend and satisfactorily complete the training program for new franchisees unless;

    1. The transferee is a current franchisee in good standing in the System; or,

    2. The transferee is and has been a manager for a period of one (1) year or more of a Workout Anytime health club facility in good standing.

F. The individual proposed transferee, or the stockholders, partners, members, trustees or beneficiaries of a proposed corporate, partnership, limited liability company, or trust transferee, will each execute a personal guarantee, jointly and severally guaranteeing the performance of the proposed transferee's obligation;

G. The proposed transferee will have demonstrated to Workout Anytime that it has in all respects satisfied our standards applicable to new franchisees regarding experience, personal and financial reputation and stability, willingness and ability to devote his or her full time and best efforts to the operation of the franchised business, and any other conditions as Workout Anytime may reasonably apply in evaluating new franchisees. Workout Anytime must be provided all information about the proposed transferee as we may reasonably require. Because of the confidential information available to a franchisee, no assignment to a competitor or to any person or entity owning an interest in a competitive business of Workout Anytime will be permitted at any time;

- 28 -

H.    The parties to the proposed transaction will have entered into a binding agreement (a "Purchase Offer") subject only to the rights of Workout Anytime. Workout Anytime will be furnished a copy of this binding agreement. You will advise each prospective transferee of this provision and other terms under this Agreement;

I.    You will sign a written agreement in a form satisfactory to us in which you agree to comply with and satisfy all post-term obligations set forth in this Agreement, and likewise agree to release both us and our affiliates from any claims which you may have against us, and from any further obligations which we may have to you;

J.    The proposed transferee agrees in writing to perform such maintenance, remodeling or re-equipping of the Club as we determine necessary to correct any then deficiencies to such club as we, in our sole discretion, deem necessary; and

K.    You agree that we may release to the prospective transferee all information we have with respect to your operation of the subject Club.

L.    The proposed transferee must not be engaged in a competitive business.

M.    The purchase price and terms of the proposed transfer are not so burdensome to the prospective transferee as to impair or materially threaten the transferee's ability to perform under the Franchise Agreement.

You acknowledge and agree that the above listed conditions are both reasonable and necessary to protect the goodwill associated with the Workout Anytime System and Marks, and are for the protection of us, you, and all existing and prospective franchisees that now own, or may own, a Workout Anytime Club.

18.3    If you are an individual and you desire to transfer your rights under this Agreement to a corporation, partnership, limited liability company, or trust which you will newly form and of which you will be a majority shareholder, partner, member, trustee, beneficiary and/or an executive officer, you may do so only if:

A.    Your name remains on the Personal Guaranty;

B.    You continue to devote your full time and best efforts to manage the day-to-day operations of the franchised business unless you have an operational partner or Manager approved by Workout Anytime;

C.    The corporation's, partnership's, limited liability company's or trust's activities be confined exclusively to operate the franchised business;

D.    The corporation, partnership, trust and all officers sign an agreement with Workout Anytime assuming jointly and severally all your obligations under this Agreement; and,

E.    It is expressly understood that the assumption of your obligation by any corporation, partnership, limited liability company, or trust does not limit your personal obligations under this Agreement, and that you and the corporation, partnership, limited liability company, or trust will be jointly and severally liable.

- 29 -

18.4    Upon the death of an individual Franchisee, the rights granted by this Agreement may pass (without payment of any Transfer Fee) to the next of kin or legatees of the Franchisee, provided that your legal representative(s) will, within sixty (60) calendar days of your death, apply in writing to Workout Anytime for the right to transfer to the next of kin or legatee your rights under this Agreement. Workout Anytime will not unreasonably withhold its permission so long as the proposed transferee(s) meets each of the requirements set forth in Sub-section 18.2 without regard to Sub-section 18.2(C). Should such proposed transferee(s) not meet said requirements, then the kin or legatee will be required to sell the respective interests of the Franchisee within one hundred twenty (120) days of being notified of their not complying with Workout Anytime's requirements, and the provisions of Section 18.8 *et seq.* will also apply.

18.5    Any attempt by you to transfer any of your rights or interest under this Agreement or the License, without having received Workout Anytime's prior written consent will be void and will constitute a material breach of this Agreement. However, if you die and your personal representative does not desire to sell the health club facility, and if under controlling local law your interest in the health club facility, and both the License and this Agreement are distributable to heirs or legatees who are members of his or her immediate family and who would otherwise qualify as assignees, then such attempted assignment by operation of law or will not be deemed a violation of the Agreement provided such heirs or legatees accept the conditions imposed on otherwise permitted assignees.

18.6    You do not have the right to grant a sub-franchise.

18.7    Workout Anytime may assign its rights under this Agreement as it sees fit at any time without notice to you.

18.8    If at any time from the date of this Franchise Agreement through the expiration of the Term or the earlier termination of this Franchise Agreement: (i) any person who owns at least a ten percent (10%) ownership or voting interest in Franchisee (or in any entity with an ownership interest in Franchisee) receives an at-arm's-length written offer from an independent third party to purchase any portion or all of such person's interest (the portion or all of such person's interest hereinafter referred to as the "Interest," and such offer later referred to as the "Interest Offer"); or (ii) if the Franchisee receives an at-arm's-length written offer from an independent third party to purchase any portion or all of Franchisee's interests under this Franchise Agreement or, outside the ordinary course of business, a material part or all of the assets used in the franchised business (such assets subject to the offer later referred to as the "Assets", and such type of offer later referred to as the "Asset Offer"), then Franchisee shall ensure that such person receiving the Interest Offer (the "Offeror") shall, if he or she desires to accept such offer, first offers to sell to the Franchisor the Interest or the Assets for the consideration and on the terms and conditions set forth in such third party's written offer. The Offeror's offer (the "Offer") shall be made by written notice to the Franchisor setting forth the name and address of the prospective purchaser, the price and terms of the Offer, a franchise application completed by the prospective purchaser, and any other information that Franchisor may reasonably request to evaluate the Offer, including any purchase and sale and related agreements proposed to be executed or executed by Franchisee or the third party. Franchisor shall then have the first option to purchase the Interest or the Assets by accepting the Offer within thirty (30) days after its receipt of the Offer and required information.

      A.    If the Franchisor gives notice of acceptance of the Offer, then the Offeror shall

- 30 -

sell the Interest or the Assets to the Franchisor, and the Franchisor shall purchase the Interest or the Assets from the Offeror, for the consideration and upon the terms and conditions set forth in the Offer, less any broker's commission not due if Franchisor exercises its right of first refusal but due and payable by the Offeror upon the sale to the prospective purchaser. Franchisor's creditworthiness shall be deemed at least equal to the creditworthiness of any proposed purchaser. If the Franchisor is a public company at such time having shares traded on a national securities exchange, the Offeror must accept the then-current value of Franchisor's registered shares in lieu of cash or other consideration.

B.     If an independent third party's written offer (and the Offeror's corresponding offer to the Franchisor) provides for the purchaser's payment of a unique consideration which is of such a nature that it cannot reasonably be duplicated by the Franchisor, then the Franchisor may, in its notice of exercise, substitute cash or stock in an amount determined by mutual agreement of the Offeror and Franchisor within forty-five (45) days after the Offer is made or, failing such agreement, by an independent appraiser selected by Franchisor in its sole discretion.

C.     If the proposed sale includes assets of the Offeror not related to the operation of the franchised business, then the Franchisor may, at its option, elect to purchase only the assets related to the operation of the franchised business and an equitable purchase price shall be determined in the reasonable discretion of the Franchisor and allocated to each asset included in the proposed sale.

D.     Unless otherwise agreed by the Offeror and Franchisor, the closing of the purchase of the Interest or the Assets shall be held at a location designated by Franchisor on no later than the sixtieth (60th) day after the Offer is delivered to the Franchisor, provided that the closing of any such purchase for which a cash or stock consideration is determined in accordance with Sub-section 18.8(B) or 18.8(C) above shall be held on the fifteenth (15th) day after such cash or stock consideration is finally determined. At any such closing, the Offeror shall deliver to the Franchisor an assignment and other documents reasonably requested by Franchisor representing a transfer of ownership of the Interest or the Assets free and clear of all liens, claims, pledges, options, restrictions, charges and encumbrances, in proper form for transfer and with evidence of payment of all applicable transfer taxes by the Offeror. Franchisor shall simultaneously therewith make payment of any cash consideration for the Interest or Assets by a cashier's check, or payment by the issuance of Franchisor's registered shares, after set off against the amount due to the Offeror for all amounts the Franchisee owes Franchisor, if any. The remaining terms and conditions of such purchase and sale shall be set forth in the Offer.

E.     If the Franchisor does not accept the Offer as provided above, the Offeror shall be free, for a period of sixty (60) days after Franchisor has elected not to exercise its option, to sell the Interest or the Assets to the independent third party for the consideration and upon the terms and conditions specified in such third party's written offer, subject to full compliance with all terms and conditions of transfer required under this Franchise Agreement. It shall be a condition precedent to any sale of the Assets or the Interest to an independent third party that there is delivered to such third party an acknowledgment that the Assets or the Interest purchased by such third party is and shall be subject to the terms and conditions

of this Franchise Agreement and that such third party agrees to be bound by the terms of this Franchise Agreement with respect to transferring the Assets or the Interest in the same manner as the Offeror. If the Offeror does not sell the Assets or the Interest or the Assets as provided above within the aforesaid sixty (60) day period, then any transfer by him or her of the Interest or the Assets shall again be subject to the restrictions set forth in this Franchise Agreement.

F.  In the event a proposed transferee is the spouse, son, or daughter of the Offeror, Franchisor shall not have any right of first refusal; provided, however, that all such transferees shall be subject to all the restrictions on transfer of ownership imposed on the Offeror under this Franchise Agreement.

## SECTION 19 - MISCELLANEOUS

19.1  **Relationship of Parties.**

You neither have nor will you exercise any authority, express, implied or apparent, to act on behalf of or as an agent of Workout Anytime or any of its affiliates or subsidiaries, for any purpose, and will take no action which is intended to create an apparent employer-employee or agency relationship between you and Workout Anytime. You are, and will remain, an independent contractor responsible for all obligations and liabilities of, and for all loss or damage to, the Club and its business and for all claims and demands based on damages or destruction of property or based on injury, illness or death of any person or persons, directly or indirectly arising from the operation of the Club. Workout Anytime will neither have, nor exercise the right to, the control of the day-to-day managerial operations of the Club.

19.2  **No Conflict with Other Agreements.**

You represent that you are not a party to or subject to any agreements that might conflict with the terms of this Agreement and agree not to enter any conflicting agreements during the Term.

19.3  **Cost of Enforcement**

If either party institutes or prevails entirely or in part in any action at law or in equity against the other party based entirely or in part on the terms of this Agreement, the prevailing party will be entitled to recover from the losing party, in addition to any judgment, reasonable attorney's fees, court costs and all the prevailing party's expenses about any action at law

19.4  **No Waiver.**

No failure, forbearance, neglect or delay of any kind on the part of Workout Anytime in connection with the enforcement or exercise of any rights under this Agreement will affect or diminish Workout Anytime right to strictly enforce and take full benefit of each provision of this Agreement at any time, whether at law for damages, in equity for injunctive relief or specific performance, or otherwise. No custom, usage or practice with regard to this Agreement by you or Workout Anytime other franchisees will preclude the strict enforcement of this Agreement in accordance with its literal terms. No waiver by Workout Anytime of performance of any provision of this Agreement will constitute or be implied as a waiver of Workout Anytime right to enforce that provision at any future time.

19.5   **Entire Agreement; Amendments.**

This Agreement, with any related agreements and all Exhibits, constitutes the entire understanding and agreement between you and Workout Anytime and supersedes all prior understandings, whether oral or written, pertaining to either this Agreement, the System or your Club. You acknowledge and agree that no claims, representations or warranty of earnings, sales, profits or success of your Workout Anytime health club franchise have been made to you other than those set out in Item 19 of the franchise disclosure document.  No interpretation, change, termination or waiver of any provision of this Agreement, and no consent or approval under this Agreement, will be effective or binding upon you or Workout Anytime unless in writing signed by you and Workout Anytime, except that a waiver needs to be signed only by the party waiving. Nothing in this Agreement or in any related agreement, however, is intended to disclaim the representations we made in the franchise disclosure document that we furnished to you.

19.6   **Severability.**

If any term or provision of this Agreement or the application thereof to any person, property or circumstances will to any extent be invalid or unenforceable, the remainder of this Agreement will be unaffected and will remain in full force and effect and each term and provision will be valid and enforced as fully permitted by law. Should this prove impractical in the sole discretion of Workout Anytime, then Workout Anytime will have the option of terminating this Agreement upon written notice to you.

19.7   **Governing Law.**

All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. Sections 1 et seq.).  Except to the extent governed by the Federal Arbitration Act, the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. Sections 1051 et seq.) or other federal law, the franchise, and all claims arising from the relationship between Franchisor and Franchisee (and/or any of our affiliates) and Franchisee will be governed by the laws of the State of Georgia, without regard to its conflicts of laws rule.  Should however, the restrictive Covenants set forth in Section 16 and Exhibit C attached hereto herein be deemed unenforceable under Georgia law, the law of the state in which the Franchised Business is located, shall be applied solely to the interpretation and enforcement of those covenants. This Agreement will become a valid and enforceable contract when we accept it and sign it in Atlanta, Georgia. Franchisee and Franchisor expressly agree that this Agreement has been made in the State of Georgia, that substantially all performance of the obligations hereunder has been and will be rendered in the State of Georgia, and that there is a regular stream of business activity between Franchisee and franchisor from and into the State of Georgia. The Covenant Not to Compete in Section 16 and Exhibit C attached hereto of this Agreement shall be interpreted in accordance with the laws of the state in which the Franchisee is located.

19.8   **Arbitration.**

Except as specifically otherwise provided in this Agreement, and in the event, that you or Workout Anytime seek injunctive relief under this Agreement, each of us agree that all disputes between us, and any claims by either of us that cannot be amicably settled, will be determined solely and exclusively by arbitration in accordance with the then existing rules of the American Arbitration Association in Atlanta, Georgia subject to the following:

- 33 -

A.  A single arbitrator will be selected by the American Arbitration Association upon application of either you or Workout Anytime. Arbitration proceedings will be conducted in accordance with the rules then prevailing of the American Arbitration Association at its Atlanta, Georgia office. Judgment upon an award of the majority of the arbitrators will be binding, and will be entered in a court of competent jurisdiction;

B.  Nothing herein contained will bar the right of you or Workout Anytime to obtain injunctive relief against threatened conduct that would violate this Agreement and cause loss or damages.

19.9  **Venue.**

Nothing contained in this Agreement will prevent Franchisor or Franchisee from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction and/or other emergency relief available to safeguard such party's interests. In the event of any litigation arising out of this Agreement or based upon the relationship between the parties, venue for any such litigation shall be any court of general jurisdiction in Fulton County, Georgia or the United States District Court for the Northern District of Georgia, Atlanta Division. Franchisee hereby accepts and submits to, generally and unconditionally, for itself and with respect to its property, the jurisdiction of any such courts in any such action or proceeding and hereby waives, to the greatest extent permitted by applicable law defenses based on jurisdiction, venue, or forum non conveniens.  The provisions of this Section 19.9 shall be self-executing and shall remain in full force and effect after the termination or expiration of this Agreement.  Franchisee acknowledges that this Agreement has been entered into in the State of Georgia, and that Franchisee is to receive valuable and continuing services emanating from Franchisor's headquarters in Atlanta, Georgia, including but not limited to assistance, support and the development of the System.

19.10  **Notices.**

All notices and other communications provided for in this Agreement must be in writing and will be delivered in person or mailed by certified mail, or by Federal Express or U.S. Express Mail for overnight delivery if to you, at your address or, if to Workout Anytime at our address, Attention: Steven C. Strickland, with a copy to Joseph J. Gottlieb, Esq., 1117 Perimeter Center West, Suite W400, Atlanta, Georgia 30338. Workout Anytime or you may change, by providing notice thereof in writing, the address to which future notices will be sent. Notices delivered in person will be deemed given when delivered and mailed notices will be deemed given three (3) days after mailing if by certified or other receipted mail, or one (1) day after mailing if by Federal Express or U.S. Express Mail. If you are a corporation, some other legal entity, or more than one (1) individual, then you will authorize one (1) natural person as correspondent with authority to bind you.

19.11  **Certain References.**

References to weeks and months mean calendar weeks and calendar months. References to persons mean legal entities as well as natural persons.  Whenever the pronouns "he" or "his" are used herein, such refers to the masculine, feminine and neutral genders, and the singular and plural. Except as otherwise specifically set forth in this Agreement, this Agreement will inure to the benefit of and be binding on you and

- 34 -

Workout Anytime, our respective heirs, executors, administrators, personal representatives, successors and assigns.

19.12 **Patriot Act.**

You represent and warrant to us that (i) You are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation, named by any Executive Order or the United States Treasury Department as a "terrorist", "Specially Designated National and Blocked Person", or other banned or blocked person, group, or nation (collectively, "Banned Persons") pursuant to any anti-terrorism law; (ii) You are not engaged in this Franchise Agreement, or instigating or facilitating the execution of this Agreement, directly or indirectly on behalf of any Banned Person; (iii) You currently do not appear, and throughout the Franchise Term neither you nor any officer, director, shareholder, partner, member or other owner shall appear on any list of Banned Persons; (iv) no anti-terrorism law prohibits you from doing business with the Franchisee; (v) the Franchisee, its officers, directors, or principal shareholders, partner, member, or other owner of the Franchisee shall not, during the Franchise Term, violate any anti-terrorism laws; and (vi) Franchisee, its officers, directors, principal shareholders, partners or members shall not, during the Franchise Term do business with any party, individual, or entity that has violated or will violate any anti-terrorism laws. For purposes of this Agreement, "anti-terrorism laws" shall mean Executive Order 13224 and related regulations promulgated and enforced by the Office of Foreign Assets Control, the Money Laundering Control Act, the United States Patriot Act, or any similar law, order, rule or regulation enacted in the future. Franchisee hereby agrees to defend, indemnify, protect, and hold harmless Franchisor from and against all claims, damages, losses, risks, liabilities, fines, penalties, expenses (including attorneys' fees) and costs arising from or related to a breach of the foregoing representations and warranties. The foregoing indemnity obligations of Franchisee shall survive the termination or expiration of this Agreement.

19.13 **Other Franchises.**

You acknowledge that other Workout Anytime franchisees have or will be granted franchises at various times and in different situations, and further acknowledge that the provisions of such franchises may vary substantially from those contained in this Agreement. You also acknowledge that because complete and detailed uniformity under varying circumstances may not be practical, there may be variations we grant to other of our Workout Anytime clubs (whether franchised or which our affiliates operate), and you will not be entitled to require us to grant similar variations or privileges to you.

19.14 **Release of Prior Claims.**

By executing this Franchise Agreement, Franchisee, and each successor of Franchisee under this Franchise Agreement forever releases and discharges Franchisor and its affiliates, its designees, franchise sales brokers, if any, or other agents, and their respective officers, directors, representatives, employees and agents, from any and all claims of any kind, in law or in equity, which may exist as of the date of this Franchise Agreement relating to, in connection with, or arising under this Agreement or any other agreement between the parties, or relating in any other way to the conduct of Franchisor, its affiliates, its designees, franchise sales brokers, if any, or other agents, and their respective officers, directors, representatives, employees and agents prior to the date of this Agreement, including any and all claims, whether presently known or unknown, suspected or unsuspected, arising under the franchise, business opportunity, securities, antitrust or other laws of the United States, any state or locality.

- 35 -

**19.15. Modification of the System**.

FROM TIME TO TIME AFTER THE DATE OF THIS FRANCHISE AGREEMENT. FRANCHISOR MAY CHANGE OR MODIFY THE SYSTEM (INCLUDING THE TYPES OF GOODS AND SERVICES OFFERED BY THE FRANCHISED BUSINESS). FRANCHISEE SHALL ACCEPT, AND IS BOUND BY, ANY SUCH CHANGES IN THE SYSTEM AS IF THEY WERE PART OF THIS ORIGINAL FRANCHISE AGREEMENT AT THE TIME OF ITS EXECUTION. FRANCHISEE WILL MAKE SUCH EXPENDITURES AND SUCH CHANGES OR MODIFICATIONS TO COMPLY WITH THE CHANGES OR MODIFICATIONS OF THE SYSTEM AS FRANCHISOR MAY REASONABLY REQUIRE.

**19.16   Acknowledgement.**

YOU ACKNOWLEDGE THAT YOU HAVE CONDUCTED AN INDEPENDENT INVESTIGATION OF THE WORKOUT ANYTIME SYSTEM AND RECOGNIZE THAT THE BUSINESS VENTURE CONTEMPLATED BY THIS AGREEMENT INVOLVES BUSINESS RISK AND WILL BE LARGELY DEPENDENT UPON THE ABILITY OF YOU AS AN INDEPENDENT BUSINESS PERSON. WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC EXPRESSLY DISCLAIMS THE MAKING OF, AND YOU ACKNOWLEDGE THAT YOU HAVE NOT RECEIVED, ANY WARRANTY OR GUARANTEE, EXPRESS OR IMPLIED, AS TO THE POTENTIAL VOLUME, PROFITS OR SUCCESS OF THE BUSINESS VENTURE CONTEMPLATED BY THIS AGREEMENT;

YOU ACKNOWLEDGE YOU HAVE RECEIVED A COPY OF THE COMPLETE WORKOUT ANYTIME FRANCHISE AGREEMENT AT LEAST SEVEN (7) DAYS PRIOR TO THE DATE ON WHICH THIS AGREEMENT WAS EXECUTED. YOU FURTHER ACKNOWLEDGE THAT YOU RECEIVED THE DISCLOSURE DOCUMENT REQUIRED BY THE FEDERAL TRADE COMMISSION TITLED "FRANCHISE DISCLOSURE DOCUMENT" AT LEAST FOURTEEN (14) DAYS PRIOR TO THE DATE ON WHICH THIS AGREEMENT WAS EXECUTED;

YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS AGREEMENT, AND THAT WORKOUT ANYTIME HAS ACCORDED YOU AMPLE TIME AND OPPORTUNITY AND HAS ENCOURAGED YOU TO CONSULT WITH ADVISORS, COUNSELORS, AND BOTH LEGAL AND FINANCIAL PROFESSIONALS OF YOUR OWN CHOOSING ABOUT THE POTENTIAL BENEFITS AND RISKS OF ENTERING INTO THIS AGREEMENT;

YOU ACKNOWLEDGE THAT OTHER WORKOUT ANYTIME FRANCHISEES HAVE OR WILL BE GRANTED FRANCHISES AT VARIOUS TIMES AND IN DIFFERENT SITUATIONS, AND FURTHER ACKNOWLEDGE THAT THE PROVISIONS OF SUCH FRANCHISES MAY VARY SUBSTANTIALLY FROM THOSE CONTAINED IN THIS AGREEMENT.   YOU ALSO ACKNOWLEDGE THAT BECAUSE COMPLETE AND DETAILED UNIFORMITY UNDER VARYING CIRCUMSTANCES MAY NOT BE PRACTICAL, THERE MAY BE VARIATIONS WE GRANT TO OTHER OF OUR WORKOUT ANYTIME CLUBS (WHETHER FRANCHISED OR OPERATED BY OUR AFFILIATES), AND YOU WILL NOT BE ENTITLED TO REQUIRE US TO GRANT SIMILAR VARIATIONS OR PRIVILEGES TO YOU;

YOU ACKNOWLEDGE THAT THE SUCCESS OF FRANCHISEE IN OWNING AND

- 36 -

**OPERATING THE CLUB IS SPECULATIVE AND WILL DEPEND ON MANY FACTORS INCLUDING, TO A LARGE EXTENT, THE FRANCHISEE'S INDEPENDENT BUSINESS ABILITY. NO REPRESENTATIONS OR PROMISES, EXPRESS OR IMPLIED, HAVE BEEN MADE BY FRANCHISOR OR ANY EMPLOYEE, BROKER OR REPRESENTATIVE OF FRANCHISOR, TO INDUCE FRANCHISEE TO ENTER INTO THIS FRANCHISE AGREEMENT OR ANY RELATED AGREEMENT EXCEPT AS SPECIFICALLY INCLUDED IN THIS FRANCHISE AGREEMENT OR SUCH RELATED AGREEMENTS. NO EMPLOYEE, OFFICER, DIRECTOR, BROKER OR REPRESENTATIVE IS AUTHORIZED TO DO OTHERWISE;**

**IN ALL OF ITS DEALINGS WITH FRANCHISOR, ITS EMPLOYEES, BROKERS (IF ANY), AND OTHER REPRESENTATIVES, EACH HAVE ACTED ONLY IN A REPRESENTATIVE CAPACITY AND NOT IN AN INDIVIDUAL CAPACITY. THIS FRANCHISE AGREEMENT, AND ALL BUSINESS DEALINGS BETWEEN FRANCHISEE AND SUCH INDIVIDUALS AS A RESULT OF THIS FRANCHISE AGREEMENT, ARE SOLELY BETWEEN FRANCHISEE AND FRANCHISOR;**

**FRANCHISOR MAKES NO WARRANTY AS TO FRANCHISEE'S ABILITY TO OPERATE THE FRANCHISED BUSINESS IN THE JURISDICTION IN WHICH THE FRANCHISED BUSINESS IS TO BE OPERATED. IT IS INCUMBENT UPON FRANCHISEE TO SEEK OR OBTAIN ADVICE OF COUNSEL SPECIFICALLY WITH RESPECT TO THIS ISSUE. IN THE EVENT THAT LEGISLATION ENACTED BY, OR REGULATION OF, ANY GOVERNMENTAL BODY PREVENTS FRANCHISEE FROM OPERATING THE FRANCHISED BUSINESS, FRANCHISOR SHALL NOT BE LIABLE FOR DAMAGES NOR BE REQUIRED TO INDEMNIFY FRANCHISEE IN ANY MANNER WHATSOEVER OR TO RETURN ANY MONIES RECEIVED FROM FRANCHISEE.**

This entire Agreement, including corrections, changes and all attachments and addendums, will only be binding upon Workout Anytime when executed or initialed by a member, director or officer of Workout Anytime.

**You and Workout Anytime, intending to be legally bound, have duly executed, sealed and delivered this Agreement in duplicate.**

FRANCHISEE: (For an Entity)                    FRANCHISEE: (For an Individual)

WOA Sumter Fitness, LLC./ John Greff

_____          _____
(Please print name and type of entity)        (Please print name)

_____          _____
By: (Signature of person signing for entity)   By: (Signature)

Agent/Manager
_____          _____
Title: (Title of person signing)               Date:

June 27, 2018
_____
Date:

WOATFDD2018v1

FRANCHISOR:  WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC

*Steven C Strickland*

By:  Steven C. Strickland, Its CEO

June 28, 2018

Date:

# EXHIBIT B


## PERSONAL GUARANTY

## PERSONAL GUARANTY

**THIS GUARANTY** is made this _____ of  Jun 27, 2018 _____, 201____, by the undersigned ("Guarantor"), for the benefit of WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC ("Franchisor").

### RECITALS

A.   WOA Sumter Fitness llc _____ is the Franchisee ("Franchisee") of that certain FRANCHISE AGREEMENT (the "FRANCHISE AGREEMENT") with Franchisor dated June 27, 2018 _____, 201____; and,

B.   As a condition to entering into the FRANCHISE AGREEMENT, Franchisor requires that Guarantor guarantee the full performance of the obligations of Franchisee under the FRANCHISE AGREEMENT; and,

C.   Guarantor will receive substantial benefit from the FRANCHISE AGREEMENT and desires that Franchisee enter into the FRANCHISE AGREEMENT with the Franchisor;

**NOW, THEREFORE**, in consideration of the execution of the FRANCHISE AGREEMENT by Franchisee and its acceptance by Franchisor, and other valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor covenants and agrees as follows:

### AGREEMENT

1.   **Guarantee.** Guarantor hereby absolutely and unconditionally guarantees (a) the full and faithful performance of all of the covenants, conditions, agreements and undertakings of Franchisee to be kept and performed by Franchisee under the FRANCHISE AGREEMENT including, but not limited to, the monthly payment(s) when due, and other sums payable by Franchisee to Franchisor under the FRANCHISE AGREEMENT, and (b) the payment of all damages owing to Franchisor by Franchisee after the termination of the FRANCHISE AGREEMENT or the exercise by Franchisor of any other right or remedy of Franchisor following a default by Franchisee under the FRANCHISE AGREEMENT (collectively the "Obligations"). Guarantor understands and agrees that this Guaranty is unconditional and continuing and is a guaranty of payment and performance and not of collection.

2.   **Independent Obligation.** The liability of Guarantor hereunder is independent of the obligation of the Franchisee or any other person or entity a separate action or separate actions against Guarantor until after Franchisee has failed to comply with all cure periods allowed. The release of, or cancellation by, any signer of a similar instrument shall not act to release or otherwise affect the liability of Guarantor hereunder.

3.   **Modification to FRANCHISE AGREEMENT.** Guarantor's obligations under this Guaranty of FRANCHISE AGREEMENT shall not be extinguished, discharged, diminished or reduced in any way by any modification or amendment of the FRANCHISE AGREEMENT including, but not limited to, any modification of payment dates or amounts, or any subsequent assignment of the FRANCHISE AGREEMENT made with or without the consent of Franchisor. Guarantor hereby waives any right to approve any modification or amendment of the FRANCHISE AGREEMENT.

4.   **Obligations of Guarantor Upon Default by Franchisee.** Should Franchisee shall fail to pay when due any other monetary sum or charge, or any portion thereof, accrued or

- 1 -

due pursuant to the terms of the FRANCHISE AGREEMENT within any allotted cure period, then, upon written notice to Guarantor by Franchisor, Guarantor shall pay to Franchisor all such amounts as may be due and owing from Franchisee to Franchisor by reason of Franchisee's failure to perform.

5.     **Remedies.** If Guarantor fails to perform any obligation under this Guaranty, then in addition to all other remedies provided at law or in equity, from time to time and without first requiring performance on the part of Franchisee, and without being required to exhaust or proceed against any or all security held by Franchisor for the performance of Franchisee under the FRANCHISE AGREEMENT, Franchisor may enforce its rights to require performance by Guarantor of any or all of the obligations on the part of Guarantor to be performed under this Guaranty by action at law or in equity, or both.

6.     **No Waiver.** No failure on the part of Franchisor to pursue any remedy under this Guaranty or under the FRANCHISE AGREEMENT shall constitute a waiver on the part of Franchisor of its right to pursue such remedy based on a subsequent default.

7.     **Waiver of Exoneration**. Guarantor waives any right to require Franchisor to (a) proceed against Franchisee, (b) proceed against or exhaust any security held from Franchisee, or (c) pursue any other right or remedy available to Franchisor. Guarantor further waives any defense it may acquire because of Franchisor's election of any remedy against Guarantor or Franchisee, or both.

8.     **Waiver of Subrogation**. Until the obligations of Franchisee under the FRANCHISE AGREEMENT have been performed in full, Guarantor shall have no right of subrogation against Franchisee, and Guarantor hereby expressly waives any right to enforce any remedy which Franchisor now has or may hereafter acquire against Franchisee. Guarantor hereby waives the benefit of, and any right to participate in, any security now or hereafter held by Franchisor for the performance of the obligations of Franchisee under the FRANCHISE AGREEMENT.

9.     **Waiver of Presentments**. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and waives all notices of the existence, creation, or incurring of new or additional obligations.

10.     **Other Guarantor Waivers**. Without limiting the generality of the preceding paragraphs, Guarantor hereby waives all rights and defenses to:

(a)     All rights it may have now or in the future to require or demand that Franchisor pursue any right or remedy Franchisor may have against Franchisee or any other third party;

(b)     Any defense arising as a result of Guarantor's election of the application of Section 1111(b)(2) of the Bankruptcy Code or based on any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code;

(c)     Any defense as a surety arising under applicable law;

(d)     Any duty or obligation of Franchisor to disclose to Guarantor any facts Franchisor may now or hereafter know about Franchisee, regardless or whether Franchisor has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume or has reason to believe that such facts are unknown to Guarantor or has a reasonable opportunity to communicate such facts to guarantor, it being understood and agreed that

- 2 -

guarantor is fully responsible for being and keeping informed of the financial condition of Franchisee and of any and all circumstances bearing on the risk of nonperformance of any Obligation; and,

(e)     Any defense based upon an election of remedies by Franchisor, including any election which destroys or impairs any right of subrogation, reimbursement of contribution which Guarantor may have, or any rights or benefits under any provisions of Georgia law in any way qualifying, conditioning or limiting the obligations of Guarantor based on any steps or procedures that Franchisor should take before proceeding against Guarantor.

11.     **Bankruptcy.** This Guaranty will continue unchanged by any bankruptcy, reorganization or insolvency of Franchisee, or any successor or assignee thereof, or by any disaffirmance or abandonment by a trustee of Franchisee. Notwithstanding any modification, discharge or extension of the indebtedness or any amendment, modification, stay or cure of Franchisor's rights which may occur in any bankruptcy or reorganization case or proceeding concerning Franchisee whether permanent or temporary, and whether assented to by Franchisor, Guarantor hereby agrees that it shall be obligated hereunder to pay and perform the Obligations in accordance with the terms of the FRANCHISE AGREEMENT and the terms of this Guaranty. Guarantor understands and acknowledges that by virtue of this Guaranty, Guarantor has specifically assumed all risks of a bankruptcy or reorganization case or proceeding with respect to Franchisee.

12.     **Assignment of FRANCHISE AGREEMENT**. As used herein, the term "Franchisor" shall include any successor, assignee or transferee of Franchisor. Guarantor agrees that Franchisor may, without notice to Guarantor, assign the FRANCHISE AGREEMENT and this Guaranty in whole or in part and that no such assignment or transfer of the FRANCHISE AGREEMENT and/or this Guaranty shall operate to extinguish or diminish the liability of Guarantor under this Guaranty.

13.     **Obligations of Guarantor Are Primary.** Guarantor agrees that the liability of Guarantor under this Guaranty shall be primary and that in any cause or right of action which shall accrue to Franchisor under this Guaranty, Franchisor may, at its sole option, proceed against Guarantor without having commenced any action, or having obtained any judgment, against Franchisee. If Franchisor has any enforceable right against Franchisee upon termination of the FRANCHISE AGREEMENT, Franchisor shall be entitled to enforce those rights against Guarantor without giving prior notice to Franchisee or Guarantor, and without making any demand on either of them.

14.     **Interest.** Any sum required to be paid by Guarantor to Franchisor pursuant to the terms of this Guaranty shall bear interest at the lower of seven percent (7%) or the highest rate then allowed by law, from the date due until paid in full.

15.     **Attorneys' Fees.** Guarantor agrees to pay Franchisor's reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempted collection, or in any negotiations relative to the obligations hereby guaranteed, or incurred enforcing this Guaranty against the Guarantor. In addition, in the event of any dispute between the parties arising under this Guaranty, or the breach of any covenant or condition under this Guaranty, then the prevailing party shall be entitled to have and recover from the party not so prevailing the attorneys' fees and costs incurred by the prevailing party, whether such fees and costs are incurred in taking any action under this Guaranty, or in any judicial proceeding (including appellate proceeding). "Prevailing party" for the purposes of this Paragraph 15 shall include, without limitation, the party who receives from the other party the sums allegedly due,

- 3 -

performance of the covenants allegedly breached, consideration substantially equal to that which was demanded, or substantially the relief or consideration sought in any judicial proceeding whether or not such proceeding is prosecuted to final judgment, or a party who dismisses a judicial action in return for substantially the performance or relief sought or the payment of the sums allegedly due.

16.      **Time of the Essence.** Time is of the essence with respect to the performance of every provision of this Guaranty.

17.      **Governing Law.** This Guaranty shall be construed and interpreted in accordance with the laws of the State of Georgia.

18.      **Captions.** The captions and paragraph numbers appearing in this Guaranty are inserted only as a matter of convenience and are not to be used to interpret this Guaranty.

19.      **Examination of FRANCHISE AGREEMENT.** Guarantor acknowledges that he/she has (a) received a copy of the FRANCHISE AGREEMENT, (b) read and understood the terms and provisions of the FRANCHISE AGREEMENT including, but not limited to, the covenants, conditions, agreements and undertakings of Franchisee to be kept and performed by Franchisee under the FRANCHISE AGREEMENT, and (c) read and understood the obligation of Guarantor under this Guaranty, including the legal effect of such obligations and has been advised by legal counsel respecting such obligations.

20.      **Binding to Successors**. Guarantor shall not assign any of its obligations hereunder by operation of law or otherwise, and any attempted assignment shall, at Franchisor's sole option, be void. Subject to the foregoing, the obligations of Guarantor under this Guaranty shall be binding on Guarantor's successors.

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date first hereinabove set forth.

**GUARANTORS:**

_____          Date: June 27, 2018
                                   _____

_____          Date: _____

_____          Date: _____

_____          Date: _____

- 4 -

EXHIBIT C

NON-COMPETITION AND

NON-SOLICITATION AGREEMENT

## NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Non-Competition and Non-Solicitation Agreement ("Agreement") is entered into by and between Workout Anytime Franchising Systems, LLC ("Franchisor") and WOA Sumter Fitness llc ("Obligor"), and becomes effective on the Effective Date of the Franchise Agreement once counter-signed by Franchisor. THIS AGREEMENT IS MADE SUBJECT TO ANY PROVISIONS OF ANY EXHIBIT "G" ATTACHED TO THE DISCLOSURE DOCUMENT PURSUANT TO WHICH THIS NON-COMPETITION AND NON-SOLICITATION AGREEMENT WAS PRESENTED TO AND SIGNED BY OBLIGOR AND WHICH SPECIFICALLY AND EXPRESSLY RELATE TO THE STATE OF FRANCHISEE'S RESIDENCY.

## W I T N E S S E T H:

**WHEREAS**, Obligor is either (1) the "Franchisee" named in the Franchise Agreement ("Franchise Agreement") that is being executed in conjunction with this Agreement, and/or (2) an equity owner of the legal entity that is named as the Franchisee in the Franchise Agreement ("Obligor" shall for all purposes under this Agreement mean and refer to the entity (if Franchisee is an entity), all equity owners of such entity, and all managers and/or primary operators of Franchisee's Workout Anytime franchised health club facility (the "Club");

**WHEREAS**, Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchise and franchisees from unfair competition by an existing or former franchisee that has had special, intimate knowledge of Franchisor's methods and trade secrets and confidential information for the operation of a Workout Anytime Club;

**WHEREAS**, Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee that transfers (without Franchisor's permission) the goodwill associated with Franchisor's proprietary and protected marks and business practices to a business that competes with Workout Anytime franchisees;

**WHEREAS**, Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee that is able to take advantage of the knowledge and experience gained in running a Workout Anytime Club, and use such knowledge and experience in operating a new competing business without having to continue to pay royalties and other fees for such information, thereby placing other franchisees at a competitive disadvantage;

**WHEREAS**, Obligor acknowledges that Franchisor has a legitimate business interest in re-franchising the formerly protected territory of a former franchisee, and Franchisor would suffer irreparable damage absent this Agreement because it would be unable to attract new franchisees to the area served by its former franchisee;

**WHEREAS**, Obligor acknowledges that Franchisor has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee who (1) diverts business and customers from a current or former Workout Anytime Club to a competitor of Franchisor, or (2) induces or attempts to induce an employee of any Workout Anytime Club to discontinue their employment with the Club;

**WHEREAS**, Obligor acknowledges that Franchisor requires the execution of this

- 1 -

Agreement as an ancillary requirement to Franchisor's simultaneous grant of a franchise to Obligor or a legal entity of which Obligor is an equity owner.

**NOW, THEREFORE**, in express acknowledgement and recognition of the importance of the foregoing recitals, the parties agree as follows:

1.      **Consideration in Exchange for Obligor's Covenants**.    Obligor hereby expressly acknowledges and confirms that all of the valuable benefits, advantages and opportunities enjoyed by Obligor immediately upon (and solely as a result of) Obligor's (or as applicable, Obligor's legal entity) becoming a franchisee under the Franchise Agreement, and the additional protection provided by this Agreement being signed by all other new franchisees, serve as valuable and adequate consideration received in simultaneous exchange for all of Obligor's promises and covenants made in this Agreement.

2.      **Obligor's In-Term Non-Competition and Non-Solicitation Covenants**.   During the term of the Franchise Agreement, and without geographic limits, Obligor shall not directly or indirectly (such as through corporations or other entities controlled by the Obligor or by or through or in conjunction with any other individual person or persons including, but not limited to, Obligor's spouse (if any) and employees):

a.      divert or attempt to divert any business or customer of any Club to any competitor or do anything injurious or prejudicial to the goodwill associated with Franchisor's Marks, methods, the Workout Anytime Franchise System, or Franchisor's business practices; and,

b.      persuade, entice, or attempt to persuade or entice, any employee of any Workout Anytime Club to discontinue their employment with such Club; and,

c.      own, maintain, engage in, be associated with, be employed by, advise, assist, invest in, be landlord to, franchise, or have any interest in any business which is the same or substantially like or competitive with any Workout Anytime Club; and,

d.      use, communicate, disseminate, provide access, or divulge to anyone at any time any confidential information or trade secrets of Franchisor, or at any time copy, duplicate, record or otherwise reproduce any confidential information or trade secrets of Franchisor, including without limitation those materials contained within the secure password protected Franchise resource section of Franchisor's website, except as expressly permitted in the Franchise Agreement.

3.      **Obligor's Post-Term Non-Competition and Non-Solicitation Covenants**.

a.      For purposes of this Section 3, the word "Conclusion" means the termination, assignment or transfer and/or expiration of the Franchise Agreement corresponding to this Agreement, regardless of whether such termination/expiration occurs prior to, or at the end of, such Franchise Agreement's term (the "Term").

b.      Upon the Conclusion of the Term and for the stated time thereafter and geographic restriction set forth below, Obligor shall not, directly or indirectly:

(i)      for a two (2) year period following the Conclusion of the Term and without geographic limitation, divert or attempt to divert any business or

- 2 -

customer of any health club facility to any competitor, or do anything injurious or prejudicial to the goodwill associated with Franchisor's Marks, methods or the Workout Anytime Franchise System; and,

(ii)    for a two (2) year period following the Conclusion of the Term within twenty-five (25) miles of the location of the franchisee's former Club, own, maintain, engage in, be associated with, be employed by, advise, assist, invest in or have any interest in any business that engages in or offers franchises for businesses that engage in or operate gymnasiums, fitness, or workout facilities which is the same as, or substantially like or competitive with any Workout Anytime Club; and,

(iii)    for a two (2) year period following the Conclusion of the Term and without geographic limitation, persuade, entice or attempt to persuade or entice any employee of any Workout Anytime Club to discontinue their employment with such Club.

c.    Upon the Conclusion of the Term, Obligor shall not, at any time, directly or indirectly:

(i)    communicate, disseminate, provide access, reveal or divulge to anyone, in whole or in part, any of Franchisor's confidential information or trade secrets; and,

(ii)    use, copy, duplicate, record or otherwise reproduce at any time any of Franchisor's confidential information or trade secrets; and,

(iii)    use in any manner whatsoever any of the Marks, the methods, Franchisor's Operations Manuals, any of the materials contained within the secure password protected Franchise resource section of Franchisor's website, or any other proprietary or intellectual property rights of Franchisor and the Workout Anytime Franchise system.

d.    Upon the Conclusion of the Term, Obligor shall immediately return to Franchisor all Operations Manuals, all training materials, all of Franchisor's proprietary software and printed matters, all website materials, all other confidential information and trade secrets, and all of Franchisor's advertising and promotional signs and related items.

4.    **Severability**. It is the parties desire and intention that the covenants contained in this Agreement shall be construed as agreements severable and independent from each other, except that any violation of Section 2 of this Agreement shall constitute a material breach and default of the Franchise Agreement and cause for immediate termination of the Franchise Agreement without opportunity to cure. It is also the intention of the parties that if any Section of this Agreement is deemed by a court of competent jurisdiction to be invalid or unenforceable, then the maximum legally allowable restriction permitted by applicable law shall control and bind Obligor.

5.    **Enforcement Costs**.  Obligor agrees to pay to Franchisor all the costs and expenses (including reasonable attorneys' fees) incurred by Franchisor in connection with its enforcement of this Agreement.

- 3 -

6.     **Counter-Parts, Entire Agreement, Amendments**.   This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be one and the same instrument. The parties may execute such counterparts via fax, or electronically via PDF. This Agreement, together with the Franchise Agreement, contains the entire agreement of the parties pertaining to the subject matter hereof and no prior or contemporaneous representations, inducements, promises, or agreements, oral or otherwise, between the parties not set forth herein shall be of any force and effect. Any modifications to this Agreement must be accomplished by a written agreement signed by both parties.

7.     **Injunction**. Obligor recognizes and agrees that the injury that Franchisor and certain of its franchisees will suffer in the event of Obligor's breach of any covenant contained in this Agreement cannot be compensated by monetary damages alone, and Obligor therefore agrees that in the event of a breach or threatened breach by Obligor of this Agreement, Franchisor (and its affiliates, successors and assigns), in addition to and not in limitation of, any other rights, remedies, or damages available to Franchisor (and/or its affiliates, successors, and assigns) at law, in equity, under this Agreement or otherwise, shall be entitled to seek an injunction from any court of competent jurisdiction in order to prevent or restrain any such breach by Obligor or by Obligor's agents, representatives, employees, partners, co-owners, or any and all other persons directly or indirectly acting for or with him/her/it.

8.     **Choice of Law, Venue and Jurisdiction**.   This Agreement shall be construed and governed under and in accordance with the laws of the State in which the Franchised Business is located.   Exclusive venue and jurisdiction of any suit arising under this Agreement shall lie within the federal or state courts within the State of Georgia, except to the extent that the laws of the State where the Club is located requires for the Franchise Agreement and this Agreement to be enforceable against the Obligor or Obligor's legal entity that venue and jurisdiction lie in such State.

**AGREED TO AND ACCEPTED BY OBLIGOR:**

Signature: _____

Print your name: _John Greff_____

Print Title (if applicable): _____

Date of Signature: _June 27, 2018_____

*If the "Franchisee" named in the Franchise Agreement is an entity (e.g., corporation, limited liability company, partnership, trust, etc.), or if there is more than one (1) equity owner of "Franchisee", or if "Franchisee" consists of more than one (1) person, or if someone other than "Franchisee" or an equity owner of an entity "Franchisee" will serve said "Franchisee" as a manager or primary operator, complete and sign the additional OBLIGOR SIGNATURES below for the entity, for each equity owner of the entity, for each person included as part of "Franchisee", or for each manager or primary operator, or alternatively submit separate signed originals of this Agreement for the entity and for each of said persons.

- 4 -

**ADDITIONAL OBLIGOR SIGNATURES:**

Signature: _____

Print your name:          _____

Print Title (if applicable): _____

Date of Signature: _____

Signature: _____

Print your name:          _____

Print Title (if applicable): _____

Date of Signature: _____

WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC:

Signature of Signing Officer: _____*Steven C Strickland*_____

Printed Name of Signing Officer: Steven C. Strickland, CEO

*Date of Counter Signature: ____June 28, 2018_____
(*Effective Date of Agreement)

- 5 -

WOATFDD2018v1

EXHIBIT "F"


PERSONAL DATA


WOATFDD2018v1

XXXXXXXXXX

## I. PERSONAL DATA DISCLOSURE

This information will be kept strictly confidential. Please provide all available information. Should certain information not be available at this time, such as your new health club facility telephone number, please provide it immediately upon its availability, but no later than your scheduled facility opening date.

Your Name   John Greff

Home Address   15402 Thompson ridge dr

City/State/Zip Code   Cypress TX 77429

SSN   402717192 - _____ - _____

Home Phone _____   Work Phone _____

Cell Phone   (346) 314-3524

E-mail Address   johngreff8@gmail.com

Workout Anytime Phone _____

Workout Anytime Fax _____

Facility's Address _____

City/State/Zip Code _____

Signed:   John Greff   Date: June 27, 2018

WOATFDD2018V1

XXXXXXXXXX

## II. FRANCHISEE OWNERSHIP INFORMATION FORM

1.      FULL NAME(S) OF FRANCHISEE [If this franchise is owned by a legal entity, only insert the name of the legal entity; if this franchise is owned by one or more individuals, only insert the name(s) of such individual(s):

Entity Name: _____

Individual Owner(s):    _____ _____

_____

_____

2.      THE FRANCHISE WILL BE OWNED BY (Check which one applies):

_____ SOLE PROPRIETOR                        Fed. Tax I.D. # _____

_____ PARTNERSHIP                              Fed. Tax I.D. # _____

_____ CORPORATION                             Fed. Tax I.D. # _____

_____ LIMITED LIABILITY COMPANY               Fed. Tax I.D. # _____

_____ OTHER BUSINESS ENTITY                   Fed. Tax I.D. # _____
(Please explain on a separate piece of paper)

3.      NAMES OF ALL OWNERS, PARTNERS, SHAREHOLDERS OR MEMBERS AND PERCENTAGE OF OWNERSHIP INTEREST: (Please use separate sheet if necessary)

NAME: _____        % OF OWNERSHIP:

SOCIAL SECURITY NUMBER:                      _____

_____


NAME: _____        % OF OWNERSHIP:

SOCIAL SECURITY NUMBER:                      _____

_____


NAME: _____        % OF OWNERSHIP:

SOCIAL SECURITY NUMBER:                      _____

_____


WOATFDD2018v1

XXXXXXXXXX

4.   LIST OF DIRECTORS, MANAGERS OR GENERAL PARTNERS: (Please use separate sheet if necessary)

NAME: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____

SOCIAL SECURITY NUMBER: _____

5.   LIST OF OFFICERS: (Please use separate sheet if necessary)

NAME: _____     TITLE: _____

SOCIAL SECURITY NUMBER:
_____

NAME: _____     TITLE: _____

SOCIAL SECURITY NUMBER:
_____

NAME: _____     TITLE: _____

SOCIAL SECURITY NUMBER:
_____

NAME: _____     TITLE: _____

SOCIAL SECURITY NUMBER:
_____

WOATFDD2018V1

XXXXXXXXXXX

6.    DESIGNATED CONTACT PERSON:

NAME: _____          TITLE: _____

ADDRESS: _____

_____

PHONE: _____   E-MAIL: _____

WOATFDD2018V1

XXXXXXXXXX



**Franchise Fee Wiring Instructions**

**Bank Name:**      Bank of America

**ABA:**            026009593

**Account Name:**   Workout Anytime Franchising Systems, LLC

**Acct Number:**    003286017142

**Reference:**      1) Franchisee Name – (as listed on your Franchise Agreement)
                    2) State or Territory

I, as the Franchisee, acknowledge receipt of these wiring instructions and further state that I will wire the full franchise fee due with this agreement within the next 2 business days.

_____
Signature

Sumter Transfer Fee - $7500

6/28/18
per SCS No transfer
fee due

02.02.2017



# EXHIBIT A

# FRANCHISE AGREEMENT

*North Shore Location*

*WOATChott 1, LLC*

# Workout Anytime Franchising Systems, LLC

## FRANCHISE AGREEMENT

This Franchise Agreement is entered into between Workout Anytime Franchising Systems, LLC, a Georgia Limited Liability Company ("Workout Anytime"), whose principal address is 4514 Chamblee Dunwoody Road, Suite 428, Dunwoody, Georgia, 30338, and you the Franchisee as designated below:

A. **If the Franchisee is an individual or partnership** with his/her principal place of business located at (individual or partnership address below):

and which the partnership agreement is attached, certified by a partner as being a true and complete copy of the partnership agreement; or,

B. **If the Franchisee is a corporation or limited liability company** organized under the laws of the State of _Tennessee_, and duly qualified to do business in the State of _Tennessee_, which corporation/LLC has its principal place of business located at (corporation/LLC address below):

_1430 Baugh Spring Road, McDonald, TN 37353_

and has attached its Certificate of Incorporation, Certificate of Good Standing, Certificate of Qualification to do business with the State of _Tennessee_, if applicable, and its Corporate Resolution authorizing the Corporation to enter into this Franchise Agreement.

## LET ALL PARTIES KNOW

Workout Anytime owns a unique system for opening and operating a twenty-four [24] hour health and fitness facility for the general public through a uniform system which has high standards of service, uses quality equipment, operates under the business format created and developed by Workout Anytime Franchising, LLC known as the Workout Anytime Franchise System (the "System");

The distinguishing characteristics of the System include the name Workout Anytime, workable and functional interior and exterior designs, confidential operating procedures, standards and specifications for equipment, services, products, and both management and marketing programs. All of the distinguishing characteristics may be changed, improved, and further developed by Workout Anytime. They are known as "Trade Secrets" and are designated by and identified with the marks described in this Agreement;

Workout Anytime identifies itself by means of certain trade names, service marks, logos, emblems, and indicia of origin, including the Federal registered trademarks "Workout Anytime" and "24/7 Get Fit", and the common law rights associated with "Workout Anytime 24/7", along with other trade names and service marks which are now, or may be in the future, designated by Workout Anytime in writing for use in connection with the System (the "Marks");

Workout Anytime continues to use, develop and control the use of the Marks in order to identify for the public the source of services and products marketed under the System, and which represent the System's high standards of quality, cleanliness, appearance and service;

You recognize the benefits to be derived from being identified with the System. You also recognize the value of the Marks and the continued uniformity of image to you, Workout Anytime, and other franchisees of Workout Anytime. You understand the importance to the System of Workout Anytime's high and uniform standards of quality, cleanliness, appearance and service, and further recognize the necessity of opening and operating your Workout Anytime health club facility (the "health club facility") in conformity within the System;

You recognize that in order to enhance the value of the System and goodwill associated with it, the Agreement places detailed obligations on you, including adherence to Workout Anytime's reasonable present and future requirements regarding the types of services offered (services outside of primary exercise concept are optional), advertising, physical facilities, operational techniques, and related matters; and,

You wish to be assisted, trained, and franchised to operate a health club facility pursuant to the provisions, and at the location within the territory specified in, this Agreement. You have also had an adequate opportunity to be thoroughly advised of the terms and conditions of this Agreement by counsel or an advisor of your own choosing.

**THEREFORE**, you and Workout Anytime Franchising Systems, LLC, intending to be legally bound and in consideration of mutual agreements, covenants and promises contained in this Agreement, agree as follows:

## SECTION 1 - GRANT OF LICENSE

1.1     Subject to the limitations contained in this Agreement, Workout Anytime grants to you, during the License Term and any extensions, the rights and license (the "License") to:

   A.     Operate a health club facility upon the terms and conditions of this Agreement, in one [1] single territorial area and at one [1] location described in Exhibit "L";

   B.     Use the Marks at the health club facility (the "Club"); and,

   C.     Offer and market at the health club facility related services and products (optional) that have been approved by Workout Anytime.

1.2     During the License Term and any extension, Workout Anytime will not use or license any of the Marks licensed to you in connection with the operation of any other health club facility within your Territory described in Exhibit "L".

## SECTION 2 - FRANCHISE TERM AND EXTENSION PERIODS

This Agreement and the franchise granted will continue for a period of fifteen [15] years. This fifteen [15] year period will begin on the date this Agreement is executed by Workout Anytime and is subject to prior termination in accordance with the provisions of this Agreement. When the original fifteen [15] year period expires you will have the option to renew your Franchise License for a single successive period of five [5] years.

Workout Anytime may refuse to renew this Agreement and License if you have:

   A.     Failed to remedy any material breach if this Agreement specified by Workout Anytime in a written notice to you; or,

   B.     Committed two [2] or more material breaches of this Agreement of a substantial nature in the preceding twenty-four [24] months prior to extension.

Workout Anytime may also refuse to renew this Agreement and License if you are not current in payment obligations to Workout Anytime and our subsidiaries and affiliates.

You will execute a Renewal Franchise Agreement and all other legal agreements in the form then being used by Workout Anytime in granting new franchises. After the fifteen [15] year term, and upon renewal and payment of a renewal fee, these agreements may include an increase in continuing monthly fees and other obligations. There will not be, however, another Initial Franchise Fee charged in the renewal of the Franchise Agreement. Failure by you to execute agreements within thirty [30] days after their delivery to you will be deemed an election by you to not to renew your Workout Anytime franchise.

As additional conditions to renewal, you will:

   C.     Make capital expenditures as may be reasonably required to renovate and modernize your Club, including the replacement of equipment, so as to reflect the then-current image of the company.

The renewal fee is $2,500 payable to Workout Anytime upon the signing of the renewal agreement which will contain all those terms of the Franchisor's then effective Franchise Agreement.

You and Workout Anytime agree to give each other not less than six [6] months prior written notice of an election not to renew this Agreement this License if any of the above conditions apply.

## SECTION 3 - INITIAL FRANCHISE FEE

3.1     Upon executing the Agreement, you will pay Workout Anytime an Initial Franchise Fee of $25,000 payable when you sign this Franchise Agreement and prior to your mandatory training session. *Waived* RA

3.2     The Franchise Fee for subsequent clubs is reduced to $20,000 for your second Health club, and 15,000 for the third, and any subsequent, Health club.

3.3     The Initial Franchise Fee is non-refundable under any conditions once you've paid any portion of your Franchise Fee.   If you do not open your franchised location within six [6] months of your executing this franchise agreement (unless otherwise extended as provided for below), the Initial Franchise Fee is forfeited.

3.4     The amounts referred to above do not include any applicable Federal, State or Local Taxes which may be payable to the appropriate taxing authorities. (A State and Local Use Tax is applicable in some States of the purchase price of your equipment.)

## SECTION 4 - CONTINUING FEES

4.1     By the tenth [10th] of each month during the first five [5] years of this Agreement you will be charged the Monthly Royalty Fee of $499. This fee will be automatically deducted from your account with that approved third party vendor (presently being ABC Financial Services, Inc.) through which your members have paid their monthly fees by check or credit card. The Fee is due immediately from the date your club is opened for business to the general public.  These same terms will apply during the second [2nd] five [5] year term, except the Monthly Royalty Fee will be $549.  These same terms will apply during the third [3rd] five [5] year term, except the Monthly Royalty Fee will be $599.  And, should you renew this Agreement for a fourth [4th] and final five [5] year term, the Monthly Royalty Fee will be $649.

4.2     By the tenth [10th] of each month you will be charged a monthly Processing Fee equal to four [4%] percent of the monthly amount collected by both you and that approved third party vendor (presently being ABC Financial Services, Inc.) employed or retained by you to collect any and all monies of whatever kind, source or nature for your benefit.  Such monies will include, but are not limited to, those collected for membership fees, personal training fees, tanning bed fees, massages, etc., from your patrons/members via cash, check, bank draft, or credit card.

4.3     Under the same terms and conditions seen in sub-section 4.2 above, by the tenth [10th] of each month you will be charged a monthly Advertising Fee equal to one [1%] percent of the monthly amount collected by both you and that approved third party vendor, as well as a monthly Promotion and Brand Maintenance Fee of one [1%] percent pursuant to the same terms.  Such monies will be utilized for the design and development of advertising, both local and national advertising costs, public relations, web-site design and maintenance, trade shows and conventions, and those other costs associated with both developing and promoting the System and brand.

4.4     Notwithstanding any designation by you as to what your Monthly Processing Fee is comprised of or how it has been calculated, we have the sole discretion to apply such payment(s) made by you towards any of your indebtedness for Monthly Processing Fees, advertising and promotional contributions, purchases, interests, collection costs or any other indebtedness.

4.5     You hereby authorize your approved third party vendor (presently being ABC Financial Services, Inc.) to deduct from any monies it collects on your behalf the amount of all fees you are obligated to pay us and/or our affiliates on the due date of such fee(s).   You also authorize said vendor to supply us with any information it may have dealing with the operation of your club and account.  To effectuate the terms of this Section, and to ensure the proper and timely remittance of all fees due the Franchisor under this Agreement, you hereby irrevocably constitute and appoint Workout Anytime your true and lawful attorney-in-fact to permit our review and, as may become necessary, our amendment of your account with that third party vendor employed to collect your monthly membership monies.  This power of attorney is irrevocable and coupled with an interest and shall survive the termination of your franchise.

4.6     As security for all monetary and other obligations of Franchisee to Franchisor or its Affiliates, Franchisee grants to Franchisor a first priority security interest in all assets of Franchisee in the Franchised Business, including all furniture, fixtures, machinery, equipment, inventory and all other property (tangible or intangible), now owned or later acquired by Franchisee used in connection with the franchised health club business and wherever located as well as all contractual and related rights of Franchisee under this Franchise Agreement and all other agreements between the parties. Franchisee agrees to execute such financing statements, continuation statements, notices of lien, assignments or other documents as may be required in order to perfect and maintain Franchisor's security interest, and authorize us to file in the public records of the county in which your franchised club may be located one [1] or more financing statements (i.e., UCC-1 financing statement) to evidence this security interest. Franchisor may, in its discretion, enter a

subordination agreement, in form and substance satisfactory to it, whereby it will subordinate its security interest to: (a) the security interest of a reputable institutional lender relating to a loan to Franchisee for reasonable working capital purposes; (b) the purchase money security interest of an approved equipment vendor for any equipment purchased or leased by Franchisee and used in the operation of the Franchised Business; or (c) the purchase money security interest of a supplier of approved products sold at the Franchised Business. Franchisee shall pay all filing fees and costs for perfecting Franchisor's security interest.

4.7     Each month, within ten [10] days if requested by us in writing, you will supply a financial statement to us of the previous month's membership activities, including the number of new members, renewing members, cancelled members and current active enrollment as well as the amount of sales generated from the health club facility as a consequence of any of your actions in any regard or aspect. We may also contact you by telephone or e-mail to collect this information.

4.8     If you are unable to operate from the health club facility due to damage or loss to the health club facility caused or created by a casualty, act of God, condemnation, or other condition over which you have no control, then the Royalty Fee will be waived for a period no greater than six [6] months commencing with the month in which the damage or loss occurs.

## SECTION 5 - ADVERTISING AND PROMOTION

5.1     You will advertise and promote the opening of your health club facility at your own expense within thirty [30] days of your opening your doors to the public.  Thereafter, you will spend, independently of what Workout Anytime might expend, a minimum of $500 per month on advertising, marketing and otherwise promoting your health club facility.  Workout Anytime will offer recommendations as to the type, manner, and time period to maximize the benefit of your advertising.

5.2     Workout Anytime will make available to you advertising and promotion materials for the health club facility which are used by Workout Anytime, its affiliates and other franchisees. You will receive a sample of each type of advertising and promotion material we may create at no charge via hardcopy, CD or Web-download. If you want additional copies you must pay duplication or printing costs. You may develop advertising materials for your own use, at your own cost, subject to Workout Anytime's written approval. Workout Anytime reserves the right to reject or stop your advertising if it is deemed inappropriate or not in keeping with the standards and quality of the brand.

5.3     As mentioned in sub-section 4.3 above, by the tenth [10th] of each month you will be charged a monthly Advertising Fee equal to one percent [1%] the fees you or your third party vendor collects from you members, as well as a monthly Promotion and Brand Maintenance Fee equal to one percent [1%] of the fees you or your third party vendor collects from you members.  These fees will be automatically paid to Workout Anytime by that approved third party vendor (presently being ABC Financial Services, Inc.) employed or otherwise designated to collect monthly membership fees, personal training fees, and any other fees of whatever nature or origin via credit card or bank draft. These Fees become due and owing immediately upon the date your club opens for business to the general public.

5.4     You will install and, during the term of this Agreement and License, will maintain an outdoor sign in a prominent location in accordance with Workout Anytime sign specifications, or as approved in writing by Workout Anytime, unless prohibited from doing so by applicable laws and regulations. You will use your best efforts to obtain any permit or variance required in order to allow the installation and maintenance of an outdoor sign meeting Workout Anytime specifications so long as it does not impose any undue economic burden on you. You may be restricted by local building owner or city specifications requiring adherence to a pre-established style or format.  Workout Anytime will permit for these local and city variances.

## SECTION 6 - RECORDS - LATE PAYMENT CHARGE

6.1     You should prepare on a current basis complete and accurate records concerning all financial, marketing and other aspects of the business conducted under this Agreement. You should maintain an accounting system which accurately reflects all operational aspects of the health club facility including uniform reports as may be required by Workout Anytime. Your records should include tax returns, monthly reports, statements of Gross Revenue (to be prepared each month for the prior month) and profit and loss statements and balance sheets (to be prepared at least annually by a Certified Public Accountant). All financial data with respect to your business that is required will be for Workout Anytime's own use, will be kept confidential, and will not be made available to other franchisees, prospective franchisees, or other third parties except to the extent that Workout Anytime decides, or is required to make an "earnings claim" under the franchise

disclosure laws. The records required under this Sub-section pertain only to your operation of the health club facility. Workout Anytime has no right to inspect or copy the records of any unrelated business activity you may have.

6.2    To encourage prompt payment and to cover the costs and expenses involved in handling and processing payments, you will also pay, upon demand, a late payment charge equal to the lesser of; (i) the prime rate of interest due on open accounts; or (ii) one percent [1%] per month on all payments due to Workout Anytime during the period of time said payments are due and unpaid, but not more than the highest rate of interest permitted by law. Each failure to pay Royalty Fees, Processing Fees, Advertising Fees, Promotional Maintenance Fees, and other fees or amounts payable to Workout Anytime when due is a material breach of this Agreement.

6.3    Upon our written request you will make available the following records:  An accurate set of books reflecting your gross sales; all tapes and readout totals of cash registers or other point of sale devices; sales slips; order records of transactions with concessionaires and vendors; federal, state and city tax returns; banking records; accounts receivable; and such other records as may be needed for an effective audit of your gross sales. All such books and records shall be retained for a period of at least three (3) years after the end of each calendar year to which they relate, or if we have begun an audit, for such longer period as may be required to complete such audit.  All such books and records shall be subject to inspection and audit by us at all reasonable times.

6.4    We will have the right to have an auditor of our choice make a special audit of all your books and records, wherever located, pertaining to your gross sales.  If your actual gross sales exceed the figures you've submitted to us previously by more than two percent [2%] in any calendar year, then you will pay for the cost of such audit, otherwise the cost of such audit shall be borne by us; and (ii) if such sales shall be understated by four percent [4%] or more in any calendar year, or by three [3%] or more twice during the your Franchise Agreement's term, we will have the option to terminate this Franchise Agreement pursuant to the terms of Section 17.  You will promptly pay to us any deficiency in which is established by any audit.

6.5    You acknowledge and agree that the restrictions imposed above are reasonable and necessary to protect the goodwill associated with the System and the Marks, as well as our reputation and image, and are for the protection of us, you, and all other franchisees that own and operate a Workout Anytime health club.

## SECTION 7 - SERVICES AND ASSISTANCE PROVIDED BY THE FRANCHISOR

7.1    The Initial Franchise Fee and Royalty Fees are paid for the License which includes the use of the Marks of Workout Anytime, owner's training, and for certain services rendered by Workout Anytime.

7.2    Workout Anytime will offer you initial and continuing services as Workout Anytime deems necessary or advisable in furthering your franchised business, and the business of the System as a whole, in connection with protecting the Marks and goodwill of Workout Anytime. Failure of Workout Anytime to provide any particular service, either initially or continuing, will not excuse you from paying the Initial Franchise Fee or the continuing Fees as better described above.

7.3    Initial and continuing services provided by Workout Anytime are:

   A.    Equipment orders will be placed through Commercial Fitness Products, Inc. with our assistance and guidance. We will help the franchisee determine the proper amount of time between equipment orders, equipment delivery, and their set-up to ensure the proper opening of your health club facility.

   B.    Designation of your exclusive Territory as stipulated in Section 1.

   C.    Furnishing you with specifications or guidelines for all initial and replacement equipment, inventory and supplies required for the operation of your health club facility as stipulated in Sub-section 8.1.

   D.    Providing you (or your designated manager) and up to one [1] other with an initial training program. You will attend and satisfactorily complete the initial training program prior to opening the franchised Club. The initial training program will be conducted approximately three [3] to six [6] weeks prior to the opening of your Club.

        You will be responsible for personal travel and living expenses incurred by you or any of your employees who participate in the training program. The initial training and orientation program will

be held at our corporate headquarters and will involve upwards of thirty [30] hours of training time. Training will consist of a discussion of the System, equipment use, administrative procedures, hiring/training employees, customer service, marketing, sales, accounting, support procedures and instructions on quality standards and practical experience in the operation of a Workout Anytime health club facility. You will likewise receive on-site training by a Workout Anytime trained individual.

E.      Assistance with respect to pre-opening, opening activities and/or on-going operations or training will be available as requested by Franchise owner. On-site training assistance during opening week is optional, with you bearing the costs associated with our representative being on-site at your request.

F.      Formulation of marketing plans, advertising and promotional programs and materials as further stipulated in Section 5.

G.      Service number and email address will be made available for franchisee's on-going inquiries and consultations with Workout Anytime representatives.

H.      Workout Anytime may engage in the development of new products and service methods for the successful operation of the System as deemed beneficial at the sole discretion of Workout Anytime. You will be informed of any new product or service methods and adopt same within a reasonable specified period of such notification.

I.      As such becomes available, you will be loaned one [1] copy of Workout Anytime's Confidential Operating manual containing mandatory and suggested specifications, standards, operating procedures and rules prescribed from time to time by Workout Anytime as further stipulated in Section 10.

J.      Workout Anytime may implement a centralized purchasing system that you will be able to benefit from. Workout Anytime will negotiate favorable prices and terms with major suppliers and allow you to utilize the centralized purchasing system.

K.      Workout Anytime may conduct visits by our field representatives from time to time. These visits, as determined necessary by Workout Anytime, will be within the sole discretion and at the sole expense of Workout Anytime. Notwithstanding the forgoing, within six [6] months after you open your Workout Anytime health club facility, we will send someone to visit and inspect your club, and will thereafter provide to you a written report with respect to same.

### SECTION 8 - LOCATION OF HEALTH CLUB FACILITY; CONSTRUCTION AND OPENING FOR BUSINESS; LEASE OR MORTGAGE

8.1     If no location is specified within your exclusive Territory for your health club facility in Exhibit "L", you, at your own cost and expense, will be solely responsible for locating and designating a location and for constructing and equipping the health club facility at the location in accordance with Workout Anytime standards and general specifications within six [6] months of your executing this franchise agreement. **The location you choose to operate your Workout Anytime health club facility must be discussed in advance with, and approved by, Workout Anytime.** Workout Anytime may request, in connection with our interest in the location, information regarding the cost of acquisition, development and construction. Any location inspection will be made solely at the option of Workout Anytime and will not be deemed to impose either any responsibility on Workout Anytime for the construction of the health club facility, or any warranty or representation of any kind, express or implied, as to its fitness or suitability. Upon its designation and acknowledgment, the location will be deemed to be the location specified in Exhibit "L" as if originally incorporated in Exhibit "L".

8.2     You and Workout Anytime acknowledge that the location of the health club facility is an important factor in the health club facility's potential for success and Workout Anytime may reject any location, in our sole discretion, but Workout Anytime will not unreasonably withhold its consent to any location. Workout Anytime makes no representations or warranties with respect to the availability of appropriate locations, or the suitability or potential of locations, which it may approve.

8.3     If requested to do so, Workout Anytime will assist you in analyzing a location for your health club facility. There are general methods used by Workout Anytime to assist you in your selection of a location for your business. Workout Anytime assists in the location selection by ascertaining population density and proximity of the proposed location to any other Workout Anytime location(s). Workout Anytime does not hold itself out

as a real estate expert and does not undertake to advise as to the suitability of any location. Workout Anytime's approval of a location merely reflects its belief that the proposed location appears to be suitable for the development of a health club facility.

8.4     You agree to construct (or renovate), equip and open the health club facility at your expense in a good, workmanlike manner on or before the earlier of (a) six [6] months from the date of execution of a lease for the health club facility; or (b) six [6] months from this Agreement date, unless otherwise agreed between you and Workout Anytime in writing. The construction (or renovation) will conform to all applicable requirements of local authorities and will be in accordance with the standards and general specifications of Workout Anytime.

8.5     No health club facility may be opened until such time as Workout Anytime reasonably agrees that all construction has been satisfactorily completed, your managers (if any) and all employees have been trained, the health club facility is ready for opening in all other respects (including signage, inventory, fixtures and equipment), the Initial Franchise Fee has been paid in full, all State and local requirements to operate a health club facility have been satisfied, Certificates of Insurance have been furnished in accordance with Section 13, you are in compliance with all terms of this Agreement including those set forth in Section 11, and all items contained in an opening checklist have been completed to Workout Anytime's satisfaction. You acknowledge that your opening for business prior to completely satisfying all of the above conditions will be seriously detrimental to the financial prospects of the health club facility and will cause irreparable damage to Workout Anytime's goodwill and reputation.

8.6     If you lease the health club facility:

    A.     **Copies of all notices under the lease, whether by or to the tenant or landlord, must also be sent to Workout Anytime;**

    B.     In the event of your default under the lease, Workout Anytime or its designees will have an opportunity to cure such default and assume your remaining obligations under the lease, but will not have any obligation to do so (See Exhibit M); and,

    C.     You will install the maximum sized signing allowed by either your real property lease or local government. All signs, advertising, logos or other forms or insignia pertaining to the System are to be removed from the premises demised under the lease in the event that neither you nor Workout Anytime, or its designee, is the tenant under the lease upon termination of the Agreement.

    D.     You are to utilize the services of our preferred vendor, Horizon Properties, to assist in your site search and lease negotiation and to ensure the site meets Workout Anytime criteria. Workout Anytime requires the opportunity, but not the obligation, to cure any defaults and assume the lease premises should a default by you occur. You will not be charged by Horizon Properties for this service as such commissions are regularly absorbed by the Landlord. Should you not wish to utilize Horizon Properties, however, you will be charged a $500 fee by Workout Anytime for the costs associated with site approval and lease review.

### SECTION 9 - MAINTENANCE AND UPGRADING THE HEALTH CLUB FACILITY

9.1     Subject to the terms of this Section, and particularly Sub-section 9.2 below, you will at all times comply with all reasonable Workout Anytime standards, specifications, processes, procedures, requirements and instructions regarding your health club facility's physical facilities, including the layout of furnishings, fixtures, and equipment .

9.2     You will repaint your health club facility a minimum of every three [3] years (or, as needed upon inspection by Workout Anytime in compliance with its reasonable standards, and remodel or upgrade the health club facility at your cost in accordance with its reasonable standards and at the time of renewal of this Agreement. You will also pay the cost of adding equipment or altering the health club facility for services and/or new equipment you choose to add, or are required to add, pursuant to Sub-section 11. **(YOU AFFIRMATIVELY ACKNOWLEDGE THAT AN ADDITIONAL INVESTMENT WILL BE REQUIRED PURSUANT TO THIS SUB-SECTION.)**

9.3     Workout Anytime agrees that it will not require remodeling or upgrading according to standards that exceed those applied to other health club facilities in the market nearest your health club facility. The health club facilities in the nearest market will be considered as a whole, and you may not avoid your obligations under this Section by comparing your health club facility to any single health club facility in the nearest market.

9.4     At anytime during the term of your franchise agreement, Workout Anytime reserves the right to require that you include as an option in your contract with your members a provision calling for the collection of a yearly one [1] time "club enhancement fee" of $25. This fee may be charged and collected in a single instance from all of your facility's members at any time or designated month you might specify.  Within thirty [30] days of said monies' collection you will inform Workout Anytime of the total amount collected and specify in writing how you propose such monies be expended, be it on additional or upgraded equipment or improvements on the physical space of your facility. Workout Anytime will then either approve your proposal, or make suggestions as to an alternative manner in which such monies might best improve your facility for use by your members within ten [10] days of your submission of same.

9.5     You must include in your membership contract a provision requiring your members to pay a once annual "rate guarantee fee" of $29. This fee may be collected from your facility's members at the time of the signing of their initial contract, or within sixty [60] days of signing, and then annually thereafter as the membership contract is renewed.  Workout Anytime encourages you to utilize these monies in furthering the goals and objectives of your franchised facility by improving your club's equipment, signage, flooring, painting, etc.

9.6     You will maintain your health club facility and any parking areas in good and safe condition    If you fail to maintain your health club facility in a condition that satisfied our reasonable requirements, we may, upon not less than three [3] days' written notice to you, order or accomplish the cleaning of the premises, and you will be responsible for paying to us all costs we incur by doing so.

## SECTION 10 - CONFIDENTIAL OPERATIONS MANUAL

10.1    When provided, you will acknowledge receipt of a copy of the Workout Anytime Confidential Operations Manual (the "Manual"). The Manual will at all times remain the sole property of Workout Anytime. You agree to immediately return the Manual to Workout Anytime at the expiration or sooner termination of this Agreement.

10.2    You will at all times treat the contents of the Manual as confidential and will not copy or otherwise reproduce, in whole or in part, or in any way make the contents of the Manual available to any person other than those persons employed by you to whom disclosure is necessary to enable you to operate the health club facility under the terms of this Agreement.

10.3    Workout Anytime may amend, revise and enhance the Manual and other instructional material (including its web-site) at anytime in its sole discretion. The revisions presently contemplated by Workout Anytime include changes with respect to:

Advertising and Marketing;
Sales and promotions;
Equipment, furniture, and supplies;
Internal and external design, colors and layout of the health club facility;
Accounting and Reporting Systems;
Insurance Requirements;
Operating Procedures;
New products and services;
Employee training; and,
Other updates as deemed necessary.

Franchisee agrees to comply with each new or changed provision beginning on the thirtieth (30th) day (or such longer time as specified by Franchisor) after notice from Franchisor. Providing Franchisee with an e-mail notification or posting the revision or change of the Operations Manual on Franchisor's website is considered delivery of notice for purposes of this Section 10.3. Revisions to the Operations Manual shall be based on what Franchisor, in its sole discretion, deems is in the best interests of the System, including to promote quality, enhance goodwill, increase efficiency, decrease administrative burdens, or improve profitability of Franchisor or its franchisees.

10.4    You agree to operate the health club facility in accordance with the Manual and Franchisor's website, and to be responsible for assuring reasonable compliance with the standards, specifications, requirements and instructions set forth in the Manual and website, and any subsequent amendments and supplements.

10.5    The contents of the Franchise resource section of the Workout Anytime web-site is to be considered the Manual until that time in which a separate and distinct product is provided to you and specifically designated and classified by us to be the Manual.

10.6    Franchisee acknowledges that because complete and detailed uniformity under many varying conditions may not be possible or practical, Franchisor specifically reserves the right and privilege, at its discretion and as it may deem in the best interests of all concerned in any specific instance, to vary standards for any franchisee based upon the peculiarities, particularities and circumstances of a specific site (i.e., landlord requirements, business potential, population of trade area, existing business practices, or any condition which Franchisor deems to be of importance to the successful operation of such franchisee's franchised business). Franchisee shall not be entitled to require the Franchisor to grant to it a like or similar variation which Franchisor may offer or permit to another franchisee.

### SECTION 11 - FRANCHISEE'S DUTIES AND OBLIGATIONS

11.1    Consistent with the terms of this Agreement, you will diligently develop the business of your health club facility and use your best efforts to market and promote its core services and products.

11.2    Subject to the terms of this Agreement, including Sub-sections 9.2 and 10.4, during the License Term you will comply with all present **and future** reasonable standards, specifications, processes, procedures, requirements and instructions of Workout Anytime regarding the operation of your Workout Anytime health club business. In furtherance of such, you **must** comply with the following requirements:

A.    A complete set of exercise equipment must be ordered only through Workout Anytime or another approved supplier which is either listed below, as may appear in any operation's manual, or as supplemented in the owner's section of Workout Anytime's web-site. Such equipment and approved suppliers are presently (although it is understood such are subject to change at any time) as follows:

1.    Matrix Fitness Systems
2.    SciFit Systems, Inc.
3.    Hampton Fitness
4.    Ideal Lockers
5.    ABC Financial Services, Inc.
6.    Club Ready, Inc.
7.    HydroMassage
8.    MYE Entertainment, Inc.
9.    Escape Fitness, Ltd.
10.    Horizon Properties, Inc.
11.    Fitness Anywhere, LLC a/k/a TRX Suspension Trainers
12.    Commercial Fitness Products, Inc.
13.    Ergoline Tanning Beds
14.    R2 Management Group (Personal Training Consultants)
15.    reACT Trainer International

B.    You or a fully trained and qualified operating manager must devote full time to the management and operation of the health club facility.

C.    You or your manager must attend and complete the Workout Anytime initial training program. Attendance by you or your operating manager (if any) is compulsory and must be satisfactorily completed at least two [2] weeks prior to the opening of your health club facility.

D.    Any additional service or product introduced into the System by Workout Anytime will be offered for sale on a continuing basis at your health club facility at the time and in the manner recommended by Workout Anytime.

E.    **Related services and products may be offered by the Franchisee only after you've requested such in writing from Workout Anytime, and then only after Workout Anytime has signaled to you, in writing, its acceptance of such service our product.** Workout Anytime reserves the right to disallow any suggested service or product in its sole discretion if such is not reasonably deemed either safe, suitable or appropriate for sale by a Workout Anytime health club facility.

F.    Only signs, advertising and promotional material, services, equipment, supplies, uniforms, furnishings, color/design scheme and fixtures that meet Workout Anytime standards and specifications can be used at your health club facility.

G.    All equipment, signs, products, supplies and other items necessary to add new services or

products must be acquired, installed and utilized at Franchise Owner's expense

H.  Equipment, signs, services, products, supplies and other items must be reasonably added, eliminated, substituted and modified at the health club facility as soon as practical in accordance with changes in Workout Anytime specifications and requirements.

I.  Your health club facility, and everything located at and within your health club facility, must be maintained in a first-class condition and must be kept clean and neat, including restrooms and showers, changing rooms and utility closets. The health club facility must be adequately lighted and operated in a clean and wholesome manner consistent with Workout Anytime requirements as such may be established. The flooring must be new or in good condition. Appropriate window treatments must be installed to allow for the comfort and privacy of your members. All maintenance, repairs and replacements reasonably requested by Workout Anytime or needed in connection with the health club facility must be promptly made.  All consultants and employees must be clean and neat in appearance.

J.  No alterations of the health club facility materially affecting the image of your health club facility may be made except at Workout Anytime's request or approval, and any alterations must conform to specifications and requirements established or approved by Workout Anytime in its sole discretion.

K.  The health club facility and its business must comply with all applicable State and local laws, ordinances, rules, codes, regulations and other requirements.

L.  Advertising materials provided to you by Workout Anytime for your use may be used only in the manner intended to promote the business.  Any advertising materials which you might create must first be submitted to us for approval prior to your use of same.

M.  The health club facility must be open for business twenty-four [24] hours every day during the License Term, except days the health club facility is closed for repairs pursuant to Section 15.

N.  The employees, the equipment and supplies, inventory and other items on hand at your health club facility must at all times be sufficient in quality and number to efficiently meet the anticipated volume of your business.

O.  All debts and taxes arising in connection with the health club facility and its business, except those duly contested in a bona fide dispute, must be paid when due including debts payable to your landlord, lender/financer, third party vendors, and both Workout Anytime and our affiliates.

P.  All necessary and appropriate measures must be taken to avoid an unsatisfactory sanitation or health rating by or from any governmental agency or authority.  Conditions or practices disapproved by any such agency or authority must be promptly corrected, except that, with Workout Anytime's prior written approval, you may contest the action or finding as being arbitrary, capricious, unfair or unwise.

Q.  All of your dealings and transactions with Workout Anytime members, customers, suppliers and other franchisees are to be performed fairly and honestly.  You will not permit a non-member access to either your or another franchisee's Workout Anytime health club facility unless such is on an introductory or trial basis, and then only for a maximum of thirty [30] days. You will not persuade or entice another franchisee's employee or members originating at their health club facility to terminate their employment or membership for the purpose of having such employee or member become associated with your franchised location.

R.  You are obligated to allow Workout Anytime reasonable space at your point of sale counter for a franchise recruitment advertisement. You are also responsible for the restocking and upkeep of that display. Workout Anytime will be responsible for the cost of the brochures.

S.  You are solely responsible for recruiting new customers to your Club through advertising, marketing and business networking.

T.  You are responsible for keeping up to date on competitors. This includes an awareness of competitors' pricing, promotional offers, advertising and services. You are responsible for taking direct action, as appropriate, to respond to a competitor's activities.

U.  You must provide training to your employees is a fashion similar to that which you received at your

training by Workout Anytime's representatives.

V.    In accordance with your State's Health Club Act requirements (if any such law or its equivalent exists for your geographic area or jurisdiction), you are responsible for arranging for obtaining all health club certifications and licensing prior to opening.

W.    **If they indicate a desire to do so, you must permit members of any other Workout Anytime franchised location the use of your particular health club facility.** You understand and agree that all Workout Anytime members, regardless of their originating membership location, are an integral component of the Workout Anytime health club System. As such, they are to be treated with the same courtesy and respect you regularly extend to a member originating from your club. This membership reciprocity may be limited to the basic elements of your health club facility, and **not** include access to tanning, personal training, massages, etc., which are understood to be features or components of a club membership level available at additional cost. Nonetheless, Workout Anytime strongly encourages you to permit members who've paid for such premium services at their originating club to also utilize such premium features at your facility in order to promote a positive experience for both you and the member. **Your failure to permit members originating from another Workout Anytime franchised location access to, and the use of, the basic components of your health club facility will be a material breach of this Agreement.**

X.    You must supply us with a copy of the lease governing your health club facility, and ensure that Workout Anytime is included as a party to be notified in any instance, as well as our being able to exercise an option to take possession of the facility upon your default or termination should we, in our sole discretion, wish to do so. **Such option will be secured by your submission to your landlord of Exhibit "M" attached hereto.**

Y.    You agree to never transfer members of your Workout Anytime health club facility to any other Workout Anytime health club without the express written permission of both the member and Workout Anytime. And, either during or after the termination or expiration of this Agreement, you will never transfer, or attempt to transfer, any individual's membership to any club that is not a part of the Workout Anytime health club System.

Z.    You will immediately notify us of any action or proceeding by an individual or agency regarding an alleged breach, default, claim, or lawsuit relating to your Workout Anytime health club facility.

AA.   You acknowledge that when we may be required to perform any service for you, we may use third parties, including affiliates of ours, to perform those services.

BB.   Upon the reasonable request of the Franchisor, the Franchisee will present to its customers/members such evaluation forms as are periodically prescribed by Franchisor and shall participate or request his or her customers/members to participate in any marketing surveys performed by or on behalf of Franchisor.

CC.   If the Franchisee is an entity other than a single individual, then you must supply us with copies of the corporate Articles of Incorporation and Certificate of Existence, partnership or joint venture agreement, company Articles of Organization if the entity is a limited liability company (a/k/a LLC), or any other document attesting to the legal form of the Franchisee.

DD.   Once an individual joins your specific Workout Anytime health club facility, then so long as his/her membership remains in affect that person's membership fees are paid solely to you. Accordingly, with the exception of personal training fees which might be purchased at a non-originating franchised location, only your franchise is to receive fees associated with such individual's Workout Anytime membership regardless of the degree such member uses another franchised location. Only in that situation in which an individual's membership has lapsed for a period of six [6] months or more can such member be added to another franchisee's membership roll.

11.3   In prescribing standards, specifications, processes, procedures, requirements or instructions under Sub-section 11.2 or any other provision of this Agreement, Workout Anytime will assist in general market research and provide guidance in determining the prices charged by you for services or products of any kind. Workout Anytime will not have control over the day-to-day operations of the health club facility. Unless otherwise provided for herein, you are expected to establish your own prices as to all products or services **other than** both individual/family and corporate membership rates or costs which you understand and agree are to be established solely by Workout Anytime, from time to time, as it may determine in its sole discretion.

11.4   Workout Anytime and our representatives will have the right to enter, inspect and photograph your health

club facility at any time (it being understood by the parties that the facility is a club operating twenty-four [24] hours a day, seven [7] days a week), and our representatives will have the right to discuss with you or other people you may designate all matters that may pertain to compliance with this Agreement and with Workout Anytime standards, specifications, requirements, instructions and procedures. You will in all respects cooperate with Workout Anytime's rights under this Sub-section provided that our exercise of these rights will not unreasonably interfere with the conduct of your business.

11.5   You agree during the License Term and for three [3] years after the expiration and termination of this Agreement that you will supply to Workout Anytime your home address and telephone number(s) which Workout Anytime may include in its Disclosure Document.

11.6   If you are an individual, you or a manager trained in the Workout Anytime system must directly supervise the franchised business. If you are a corporation or other entity, or if you have in Workout Anytime's sole judgment, insufficient experience in a business similar to a Workout Anytime franchise or experience in business management in general, then you will nominate an operating partner or manager having the required experience who will have direct responsibility for all operations of the health club facility. Any change in the operating partner or manager will be subject to the approval of Workout Anytime. The operating partner will be the correspondent referred to in Sub-section 20.9 below.

## SECTION 12 - PURCHASE OF EQUIPMENT, INVENTORY AND SUPPLIES

12.1   You must purchase all exercise equipment through Workout Anytime or an approved supplier/vendor as may be either listed below, in any owner's or operation's manual which we might provide to you, or through the franchise resource section of our web-site. Commercial Fitness Products, Inc., will provide you Workout Anytime approved equipment and services at a below-market price. The names and addresses of recommended suppliers, as may also be found in the Operations Manual, include the following:

1.   Matrix Fitness Systems
2.   SciFit Systems, Inc.
3.   Hampton Fitness
4.   Ideal Lockers
5.   ABC Financial Services, Inc.
6.   Club Ready, Inc.
7.   HydroMassage
8.   MYE Entertainment, Inc.
9.   Escape Fitness, Ltd.
10.   Horizon Properties, Inc.
11.   Fitness Anywhere, LLC a/k/a TRX Suspension Trainers
12.   Commercial Fitness Products, Inc.
13.   Ergoline Tanning Beds
14.   R2 Management Group (Personal Training Consultants)
15.   reACT Trainer International

**ALTHOUGH APPROVED BY US, WE AND OUR AFFILIATES MAKE NO WARRANTY AND EXPRESSLY DISCLAIM ALL WARRANTIES, INCLUDING WARRANTIES OR MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, WITH RESPECT TO FIXTURES, FURNITURE, EQUIPMENT (INCLUDING, WITHOUT LIMITATION, ANY AND ALL EXERCISE EQUIPMENT), SUPPLIES OR OTHER APPROVED ITEMS.**

12.2   The standards and specifications for other equipment, supplies and other products recommended by Workout Anytime may be found in either any operations' manual we may produce and provide, or at the franchise resource section of the Workout Anytime web-site.

12.3   You may purchase all other approved items from any source.

12.4   Workout Anytime may review at any time the quality of the equipment, products and other supplies anticipated to be purchased for your club to ensure that quality standards for Workout Anytime are met.   Any deficiencies as to either quality or quantity must be addressed and corrected within that reasonable period of time which Workout Anytime may designate.

## SECTION 13 - INSURANCE AND INDEMNIFICATION

13.1   Upon commencement of the License Term, you will purchase, and at all times maintain in full force and

affect, an insurance policy with those limits better outlined below. Copies of all insurance policies should be sent for filing at Workout Anytime headquarters within thirty [30] days of such policies' issuance:

A.   Workers' Compensation insurance in amounts prescribed by law;

B.   Fire and lightning, extended coverage, theft, vandalism and malicious mischief, flood (if the health club facility is in a designated flood hazard area), and sprinkler leakage insurance on your health club facility;

C.   Comprehensive general liability insurance and product liability insurance coverage in such amounts and upon such terms as may from time to time be customary for retail businesses located in your Territory, but not less than $1,000,000, insuring both you and Workout Anytime against all claims, suits, obligations, liabilities and damage, including attorney's fees, based upon or arising out of actual or alleged personal injuries or property damage relating to the use or condition of the health club facility; and,

D.   Such additional insurance as may be required by the terms of any lease or mortgage for the health club facility.

13.2   All policies of insurance required under this Section will be with responsible companies qualified to do business and in good standing in the State where your health club facility is located, and will be in a form reasonably satisfactory to Workout Anytime. Prior to opening for business you will furnish to Workout Anytime certificates issued by each of your insurers indicating that all premiums due have been paid, that all required insurance is in full force and effect and that the insurance will not be terminated or changed without at least thirty [30] day's prior written notice from the insurer to both yourself and Workout Anytime. New certificates evidencing renewal of insurance will be furnished at least thirty [30] days prior to the date of expiration of each policy. Within five [5] days of any request by Workout Anytime you will deliver a copy of all insurance policies to Workout Anytime for its examination and confirmation.

13.3   If you fail to obtain or maintain adequate insurance then Workout Anytime may, at its election and sole discretion, obtain insurance for and in your name and its name. Within five [5] days of any written request by Workout Anytime you will pay all costs and premiums incurred by Workout Anytime in obtaining such insurance, plus an administrative fee equal to ten percent [10%] of such insurance premium's cost to Workout Anytime.

13.4   You will indemnify, defend and hold Workout Anytime harmless against all claims, demands, losses, damages (including punitive damages), costs, suits, judgments, penalties, expenses (including reasonable attorneys' fees and amounts paid in settlement or compromise) and liabilities of any kind, whether or not ultimately determined to be meritorious, including damages suffered by you or any of your property or property interests (collectively, "Damages"), arising directly or indirectly out of, or in connection with, the construction, operation, maintenance or occupancy of your health club facility, except to the extent that such liabilities arise from the gross negligence or willful acts or purposeful omissions of Workout Anytime.

13.5   All fixtures, equipment, signs, merchandise, supplies and other property on or about your health club facility will be at your sole risk and hazard, and if they are destroyed or damaged in any way, no part of the loss or damage is to be paid by Workout Anytime except to the extent caused by Workout Anytime's gross negligence or willful acts.

## SECTION 14 - TRADEMARKS AND TRADE SECRETS

14.1   You recognize and acknowledge Workout Anytime's exclusive ownership and right to Workout Anytime's current and future Marks and in all related practices, procedures, methods and devices. All goodwill now or in the future associated with or relating to the Marks will accrue directly and exclusively to the benefit and is the property solely of Workout Anytime. Nothing contained in this Agreement will be construed to entitle you any right, title or interest in the Marks, or the goodwill now or in the future associated with them, other than the rights and license expressly granted in this Agreement.

14.2   You represent, warrant and agree that you will not:

A.   Directly or indirectly contest or aid in contesting, either during the term of this Agreement or following its termination, the validity or ownership of the Marks; ,

B.   Take any action in derogation of Workout Anytime claimed rights whether now existing or later

obtained; ,

C.     Include the Marks in either your corporate, limited liability company, or partnership name, or in any internet domain name; or,

D.     Utilize the Marks in any advertising or promotion that has not otherwise first been approved, in writing, by Workout Anytime.

14.3     You agree to use only Workout Anytime existing or future Marks, and related practices, systems, procedures and methods in connection with the promotion and operation of the health club facility, and only in accordance with the written procedures established by Workout Anytime.

14.4     You will cause Workout Anytime Marks to be reproduced exactly and accurately.

14.5     With the exception of the registration of a "d/b/a" or a fictitious name certificate in connection with the operation of the health club facility, **YOU WILL NOT REGISTER OR ATTEMPT TO REGISTER THE MARKS IN YOUR OWN NAME.** The use or registration of the name "Workout Anytime" in any form or fashion other than what may otherwise be permitted herein will be deemed a material breach of this Agreement.

14.6     You will immediately inform Workout Anytime of any suspected, known or threatened infringement, piracy or challenge to the Marks, Trade Secrets, methods and procedures used in the System. You will assist and cooperate with Workout Anytime in taking action, at Workout Anytime's sole expense, as Workout Anytime deems appropriate to protect the System. Workout Anytime will indemnify, hold you harmless and will reimburse you for your liability and reasonable costs in connection with defending the Marks.

14.7     Only the principals of the franchise entity, and that manager employed by the franchisee to operate the health club facility, may register and utilize the "workoutanytime.com" web-site for e-mail services.

14.8     Immediately upon the expiration or sooner termination of this Agreement, you will:

A.     Cease and forever abstain from using any of the Marks including, but not limited to, the de-Imaging and de-branding of your health club facility;

B.     Take all actions necessary to cancel any d/b/a/ or fictitious name registration containing any of the Marks; and,

C.     Furnish Workout Anytime with evidence reasonably satisfactory to Workout Anytime of compliance with the foregoing obligations within thirty [30] days after any expiration or sooner termination.

14.9     You acknowledge that you took no part in creating or developing, have no prior knowledge of, and have no rights or claims in, or to, any element of the System. You agree that all materials loaned or licensed or made available to you will be kept confidential by you and will remain the property of Workout Anytime.

14.10     Except as specifically disclosed in the Disclosure Document, Workout Anytime represents and warrants to the best of Workout Anytime's knowledge that the Marks do not violate or infringe upon any rights of others.

14.11     You agree that any use or variant of the Marks which you may develop or originate which, in turn, may be approved and adopted by Workout Anytime becomes the sole and exclusive property of Workout Anytime. You affirmatively waive any and all rights of whatever form or nature, arising under either common law or both state or federal law(s), and assign to Workout Anytime any and all prospective rights and interests in any intellectual property which utilizes either the present Marks themselves or any subsequent Marks which Workout Anytime may use, regardless of their originating source.

## SECTION 15 – LOSS, CONDEMNATION AND CASUALTY

15.1     You will promptly advise Workout Anytime upon you receipt of a notice of default or termination of your Club's lease or mortgage, or equipment lease or security agreement related to any purchase of equipment, and will promptly provide Workout Anytime a copy of the notice. You will also give Workout Anytime notice of any proposed taking of your health club facility, or any of your equipment, or any portion thereof through the exercise of the power of eminent domain, foreclosure, or any dispossessory action, at the earliest possible time. If the health club facility or a substantial part thereof is to be taken, the health club facility may be relocated within the area specified in Exhibit "L" or elsewhere with Workout Anytime's written approval in accordance with our relocation procedures. If you open a new health club facility at another location in

accordance with Workout Anytime's standards and general specifications within one [1] year of the closing of the old health club facility, the new health club facility will be deemed to be the health club facility licensed under the Agreement. If a condemnation, lease termination or mortgage default takes place and a new health club facility does not, for any reason, (other than those specified in Section 8) become the health club facility as provided in this Sub-section, then the License will terminate upon notice by Workout Anytime.

15.2    If the health club facility is damaged, you will expeditiously repair the damage.   If the damage requires closing the health club facility you will immediately notify Workout Anytime in writing, and will:

      A.    Relocate the health club facility as provided in Sub-section 15.1; or,

      B.    Repair or rebuild the health club facility in accordance with Workout Anytime's then existing standards and general specifications, and reopen the health club facility for continuous business operations as soon as practicable (but, in any event, within twelve [12] months after closing the health club facility), giving Workout Anytime thirty [30] days' advance written notice of the date of reopening.

          If the health club facility is not (or, in the opinion of Workout Anytime, cannot be) reopened in accordance with this Section, or relocated pursuant to Sub-section 15.1, the License will terminate upon written notice to you.

15.3    The License Term will not be extended by any interruption in the health club facility's operations, except for an act of God that results in the health club facility being closed not less than sixty [60] days nor more than one hundred eighty [180] days. You must apply for any extension within thirty [30] days following the reopening of the health club facility. Except as provided in Sub-section 4.3, no event during the License Term will excuse you from paying Royalty Fees or other fees as provided for in this Agreement.

15.4    In the event you receive a bona fide offer for the purchase of your franchised health club, or any of its equipment or other assets, then in such event you will give Workout Anytime written notice of this offer.  The notice must set forth the name of the proposed transferee, and all other terms and conditions of the proposed transfer.  On receipt of the notice, Workout Anytime shall have the exclusive right and option during a period of sixty (60) days from the date of said notice, to purchase from the franchisee the assets proposed to be sold under the same terms and conditions contained in such bona fide offer to purchase

### SECTION 16 - RESTRICTIONS ON COMPETITION

16.1    During the term of this License and Agreement, or any extensions or renewals and for a period of two [2] years following their expiration, termination, assignment or transfer, you will not directly or indirectly, through corporations, partnerships, limited liability companies, trusts, associations, joint ventures or other unincorporated businesses, perform any services for, engage to acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of, any business similar to the franchised business, except for other health club facilities franchised by Workout Anytime or its affiliates within ten [10] miles of any Workout Anytime health club facility. This provision might not be enforceable under California Law.

16.2    Nothing in this Section will prevent any active officer of yours or member of your family, either individually or collectively, from owning not more than five percent [5%] of the stock of any company, which is subject to the reporting requirements of Section 10 or Sub-section 13 (D) of the Securities and Exchange Act of 1934.

16.3    You will not at any time solicit, employ, or otherwise attempt to employ or interfere with the employment relationship of any person who is either employed by Workout Anytime, or employed by any other Workout Anytime franchisee.

16.4    If any court having jurisdiction to determine the validity or enforceability of this Section determines that, strictly applied, it would by invalid or unenforceable, the definition of "similar business" or the time or geographical provisions of this Section will be deemed modified to the extent necessary (but only to that extent) so that such restrictions as modified will be valid and enforceable.

16.5    You acknowledge that as a Workout Anytime franchisee you will have access to Workout Anytime Trade Secrets and confidential practices and therefore be in a unique position to use the special knowledge you will have gained while a franchisee. You acknowledge that a breach of the covenants contained in this Section will be deemed to threaten immediate and substantial irreparable injury to Workout Anytime. Accordingly, you agree that Workout Anytime will have the right, without prior notice to you, to obtain

immediate injunctive relief without limiting any other rights or remedies.

16.6   In the event that you are not an individual, this Section will also apply to the officers, directors, stockholders, partners, members, trustees, beneficiaries and/or principals of you, the franchisee, and any persons controlled by, controlling or under common control with you.

16.7   You agree that the scope of the timetables and prohibitions set forth above are reasonable and necessary to protect us and the System (including other franchisees of the System). You agree that the above referenced prohibitions are permissively broad in order to prevent you from taking information, materials and training which Workout Anytime is providing to you on an ongoing basis and using them to either compete with us, or preempt or otherwise restrict our ability to enter new markets.

16.8   Franchisee acknowledges and confirms that the scope of the activities prohibited in this Section 16, as well as length of the term and geographical restrictions contained in this Section 16, are necessary to protect Franchisor's legitimate business interests and are fair and reasonable and not the result of overreaching, duress or coercion of any kind.

16.9   If Franchisee is an individual, Franchisee further acknowledges and confirms that his or her full, uninhibited and faithful observance of each of the covenants contained in this Section 16 will not cause any undue hardship, financial or otherwise, and that enforcement of each of the covenants contained in this Section 16 will not impair his or her ability to obtain employment commensurate with his or her abilities and on terms fully acceptable to him or her or otherwise to obtain income required for the comfortable support of himself or herself and his or her family, and the satisfaction of the needs of his or her creditors.

16.10  Franchisee acknowledges and confirms that its special knowledge of the Franchisor's systems and business (and anyone acquiring such knowledge through Franchisee) is such as would cause Franchisor and its franchisees serious injury and loss if he or she (or anyone acquiring such knowledge through Franchisee) were to use such knowledge to the benefit of a competitor or were to compete with Franchisor or any of its franchisees.

16.11  In the event that any court shall finally hold that the time or territory or any other provision stated in this Section 16 constitutes an unreasonable restriction upon Franchisee, Franchisee agrees that the provisions of this Franchise Agreement shall not be rendered void, but shall apply as to time and territory or to such other extent as such court may judicially determine or indicate constitutes a reasonable restriction under the circumstances involved. In the event of a breach of the provisions of this Section 16, the term of the non-compete provisions shall be tolled during any period which Franchisee is in breach of such provisions.

16.12  Franchisor, in its discretion, may reduce the scope of any covenants set forth in this Section 16. Any such reduction is effective immediately upon Franchisor's delivery of notice. Franchisee shall comply immediately with any covenant as so modified. Such modified covenant is fully enforceable to the extent permitted by applicable law.

16.13  Pursuant to Sub-section (1)(f) of Florida Statute 542.335 ("Valid Restraints of Trade or Commerce"), Franchisor's assignees and successors are expressly authorized by Franchisee and Franchisor to enforce the restrictive covenants in this Section 16.

16.14  During the Term, Franchisee may not be engaged, directly or indirectly, in any other business whatsoever within the Protected Territory. This restriction is imposed to protect the integrity of and the goodwill attached to the Marks and the System, to associate Franchisee closely with the franchise, to avoid possible conflicts of interest, and to prevent the dilution or diminution of Franchisee's operation which would result if his efforts were to be divided between advancing the interests of this franchise and of any other franchise or of any products or other services, and which would also tend to reduce the Royalty Fees to be paid by Franchisee.

## SECTION 17 - TERMINATION OF LICENSE

17.1   **Termination by you.**

If you are in compliance with this Agreement and Workout Anytime materially breaches this Agreement and fails to cure the breach within thirty [30] days after a written notice of the breach is delivered to Workout Anytime by you, you may terminate the License and Agreement, effective ten [10] days after delivery to Workout Anytime of a notice of termination. There are no other provisions in this Agreement that grants to you the right to terminate the License and Agreement, and such termination may only be accomplished as provided for herein, or by mutual agreement of the parties.

Should you terminate the License and Agreement in compliance with this Sub-section, you are required to comply with the termination procedures as set forth in Sub-section 17.4.

17.2    **Termination by Workout Anytime without notice.**

Unless Workout Anytime promptly, after discovery of the relevant facts, notifies you to the contrary in writing, the License and Agreement will immediately terminate without notice (or in the event notice is required by law, immediately upon the giving of such notice or at the earliest time thereafter permitted by applicable law) in the event that:

A.    No site has been designated and accepted pursuant to Sub-section 8.1;

B.    A permanent or temporary receiver or trustee for the health club facility or all or substantially all of your property is appointed by any court, or any such appointment is consented to or not opposed through legal action by you, or you make a general assignment for the benefit of your creditors, or you make a written statement to the effect that you are unable to pay your debts as they become due, or a levy or execution is made on the License, or an attachment or lien remains on your health club facility.

C.    You lose possession or the right of possession of all or a significant part of the health club facility through condemnation, casualty, lease termination, mortgage foreclosure, equipment lease or purchase foreclosure, and the health club facility is not relocated or reopened as provided in Section 15.

D.    You contest in any court or preceding the validity of, or Workout Anytime ownership of, any of the Marks;

E.    A material breach of Section 11.2(W) or 18 (i.e. Transfer and Assignment) occurs; or,

F.    You are a corporation or limited liability company and any action is taken which purports to merge, consolidate, dissolve or liquidate you without Workout Anytime prior written consent

17.3    **Termination by Workout Anytime With Notice.**

The License and Agreement will terminate on notice under certain circumstances as provided in Sections 8, 11, 13 and 15. The License will terminate on the Termination Date specified in any notice by Workout Anytime to you (without any further notice of termination unless required by law), provided that:

A.    The notice is hand-delivered or mailed at least thirty [30] days (or any longer period as may be required by law) in advance of the termination date;

B.    The notice reasonably identifies one [1] or more material breaches or defaults in your obligations or performance under this Agreement (including, but not limited to, any Sub-section under Section 11 above), the specifications and guidelines as may appear in the franchise resource section of the WOAT web-site, and the published Manual;

C.    The notice specifies the manner in which the material breach(es) and default(s) may be remedied;.

D.    The material breach or default is not fully remedied as of, the termination date specified in the notice. The period given to remedy material breaches and defaults will, if permitted by law, be ten [10] days instead of thirty [30] days if you will have engaged in repeated breaches or defaults under this Agreement within the preceding twenty-four [24] months for which you have received notice of termination and termination failed to take effect because the breaches or defaults were remedied. The period will be extended if the material breach cannot reasonably be cured in such ten [10] or thirty [30] days, provided that:

1.    You have taken all steps to completion towards a cure that are possible within such ten [10] or thirty [30] day period;

2.    You diligently prosecute a cure to completion; and,

3.    Such period in no event be extended by more than sixty [60] days.

17.4    **Effect of Termination.**

Should this Agreement or the License expire or be terminated by any party and for any reason, all rights and obligations between you and Workout Anytime under this Agreement will terminate, except for Sub-sections 10.1 and, 10.2, Section 14 and 16, and Sub-section 17.7. In an instance of expiration or termination, you will cease to be a licensed participant in the System, and you will:

A.    Promptly pay Workout Anytime all amounts owing by you based on operations of the health club facility through the date of termination plus interest at the rate of twelve percent [12%] per annum;

B.    Immediately discontinue the use of all Marks, signs, structures, forms of advertising, telephone listings and service, the Manual, and all materials and products of any kind which are identified or associated with the System and subject to Sub-section 17.5, return all of these materials and products to Workout Anytime and, at our request, assign your telephone number to Workout Anytime;

C.    Make no representation nor state that you are in any way approved, endorsed or licensed by Workout Anytime, or associated or identified with Workout Anytime or the System in any manner;

D.    Immediately take all steps necessary to amend or terminate any registration or filing of any d/b/a or fictitious name or any other registration or filing containing the Marks so as to delete the Marks and all references to anything associated with the System;

E.    Provide Workout Anytime the option to purchase required by Section 18.8; and,

F.    Comply with the provisions of Sub-sections 15.7 and 16.1.

17.5    If, within thirty [30] days after termination of this Agreement by Workout Anytime, you fail to remove all displays of the Marks from the health club facility which are identified or associated with the System, Workout Anytime may enter the location to effect removal. In this event, Workout Anytime will not be charged with trespass nor be accountable or required to pay for any displays or materials which it might remove from your facility.

17.6    If, within thirty [30] days after termination you have not taken all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Marks, you hereby irrevocably appoint Workout Anytime as your true and lawful attorney-in-fact for you, and permit Workout Anytime, in your name, place and stead and on your behalf, to take action as may be necessary to amend or terminate all registrations and filings, this appointment being coupled with an interest to enable Workout Anytime to protect the System.

17.7    Termination of this Agreement will not affect, modify or discharge any claims, rights, causes of action or remedies which Workout Anytime may have against you, whether such claims or rights arise before or after termination.

## SECTION 18 – TRANSFER AND ASSIGNMENT

18.1    **General.**

Except with respect to your mortgage company or institutional lender (if any), none of your rights under this Agreement or the License granted may be the subject of any pledge, lien, levy, attachment, or security agreement, or assigned or otherwise purportedly transferred through execution, foreclosure, or like action. None of your rights or obligations under this Agreement or the License are assignable or transferable, except to immediate family (including by will, declaration of or transfer in trust or the laws of intestate succession) without Workout Anytime's prior written consent, which should not be unreasonably withheld or delayed, and compliance in all other respects with the terms of this Section.

With and after each valid assignment of this Agreement pursuant to this Section, the assignee or assignees will deemed to be you, the franchisee, under this Agreement and will be bound and liable for all of your existing and future obligations. No stockholder in any corporation, and no member of any limited liability corporation, which becomes a franchisee will have any rights as an individual under this Agreement by reason of his, her or its stock ownership or membership interest, and the name of such entity will not include any of the Marks.

18.2   This Agreement, and your rights and obligations arising under it, are personal to you only.  As used herein, the word "transfer" means the sale, lease, assignment, gift, mortgage, or transfer as a consequence of your death, bankruptcy, share exchange, or transfer by operation of law or otherwise, either directly or indirectly, voluntarily or involuntarily.  If you are a corporation or limited liability company, such includes a transfer, as defined above, of a fifty percent [50%] or more interest in your entity.  A transfer cannot occur unless the following conditions are first satisfied:

A.   There will be no material default in the performance or observance of any of your obligations under this Agreement or any other agreement with Workout Anytime, and you recognize that the provisions of Section 16.1 et seq. will apply after the transfer or assignment has been approved and transacted.

B.   You have settled all outstanding accounts with Workout Anytime, its affiliates, all taxing authorities, and any third party vendors.

C.   The proposed transferee is approved as a prospective franchisee, the sale price is appropriate, and Workout Anytime is paid a Transfer Fee in the amount of $12,500, unless the transferee is a corporation of which you are the majority stockholder, or said transfer is to either Workout Anytime itself or to an entity in which you own a fifty percent [50%] or more interest.

D.   The proposed transferee will execute a separate Franchise Agreement with Workout Anytime using our then current form of Franchise Agreement, and the proposed transferee will execute an Acknowledgement of Receipt of a then current copy of our Uniform Franchise Disclosure Document.

E.   The proposed transferee will pay for, attend and satisfactorily complete the training program for new franchisees unless,

   1.   The transferee is current franchisee in good standing in the System; or,

   2.   The transferee is and has been a manager for a period of one [1] year or more of a Workout Anytime health club facility in good standing.

F.   The individual proposed transferee, or the stockholders, partners, members, trustees or beneficiaries of a proposed corporate, partnership, limited liability company, or trust transferee, will each execute a personal guarantee, jointly and severally guaranteeing the performance of the proposed transferee's obligation.

G.   The proposed transferee will have demonstrated to Workout Anytime that he or she in all respects satisfied our standards applicable to new franchisees regarding experience, personal and financial reputation and stability, willingness and ability to devote his or her full time and best efforts to the operation of the franchised business, and any other conditions as Workout Anytime may reasonably apply in evaluating new franchisees. Workout Anytime must be provided all information about the proposed transferee as we may reasonably require. Because of the confidential information available to a franchisee, no assignment to a competitor of Workout Anytime will be permitted at any time.

H.   The parties to the proposed transaction will have entered into a binding agreement (a "Purchase Offer") subject only to the rights of Workout Anytime. Workout Anytime will be furnished a copy of this binding agreement.  You will advise each prospective transferee of this provision and other terms under this Agreement.

I.   You will sign a written agreement in a form satisfactory to us in which you agree to comply with and satisfy all post-term obligations in this Agreement, and likewise agree to release both us and our affiliates from any claims which you may have against us, and from any further obligations which we may have to you.

J.   The proposed transferee agrees in writing to perform such maintenance, remodeling or re-equipping of the subject Workout Anytime health club facility as we determine necessary to correct any then deficiencies to such club as we, in our sole discretion, deem necessary.

K.   You agree that we may release to the prospective transferee all information we have with respect to your operation of the subject health club facility.

**You acknowledge and agree that the above listed conditions are both reasonable and necessary to protect the goodwill associated with the Workout Anytime System and Marks, and are for the protection of us, you, and all existing and prospective franchisees that now own, or may own, a Workout Anytime health club facility.**

18.3    If you are an individual and you desire to transfer your rights under this Agreement to a corporation, partnership, limited liability company, or trust which you will newly form and of which you will be a majority shareholder, partner, member, trustee, beneficiary and/or an executive officer, you may do so only if:

    A.    Your name remains on the Personal Guaranty.

    B.    You continue to devote your full time and best efforts to manage the day-to-day operations of the franchised business unless you have a operational partner or manager approved by Workout Anytime;

    C.    The corporation's, partnership's, limited liability company's or trust's activities be confined exclusively to operate the particular franchised business;

    D.    The corporation, partnership, trust and all officers sign an agreement with Workout Anytime assuming jointly and severally all your obligations under this Agreement; and,

    E.    It is expressly understood that the assumption of your obligation by any corporation, partnership, limited liability company,  or trust does not limit your personal obligations under this Agreement, and that you and the corporation, partnership, limited liability company, or trust will be jointly and severally liable.

18.4    Upon the death of an individual Franchisee, the rights granted by this Agreement may pass (without payment of any Transfer Fee) to the next of kin or legatees of the Franchisee, provided that your legal representative(s) will, within sixty [60] calendar days of your death, apply in writing to Workout Anytime for the right to transfer to the next of kin or legatee your rights under this Agreement. Workout Anytime will not unreasonably withhold its permission so long as the proposed transferee(s) meets each of the requirements set forth in Sub-section 18.2 without regard to Sub-section 18.2(C).   Should such proposed transferee(s) not meet said requirements, then the kin or legatee will be required to sell the respective interests of the Franchisee within one hundred twenty (120) days of being notified of their not complying with Workout Anytime's requirements, and the provisions of Section 18.8 *et seq.* will also apply.

18.5    Any attempt by you to transfer any of your rights or interest under this Agreement or the License, without having received Workout Anytime's prior written consent, will constitute a material breach of this Agreement. However, if you die and your personal representative does not desire to sell the health club facility, and if under controlling local law your interest in the health club facility, and both the License and this Agreement are distributable to heirs or legatees who are members of his or her immediate family and who would otherwise qualify as assignees, then such attempted assignment by operation of law or will not be deemed a violation of the Agreement provided such heirs or legatees accept the conditions imposed on otherwise permitted assignees.

18.6    You will **not** have the right to grant a sub-franchise.

18.7    Workout Anytime may assign its rights under this Agreement as it sees fit at any time without notice to you.

18.8    If at any time from the date of this Franchise Agreement through the expiration of the Term or the earlier termination of this Franchise Agreement: (i) any person who owns at least a ten percent (10%) ownership or voting interest in Franchisee (or in any entity with an ownership interest in Franchisee) receives an at-arm's-length written offer from an independent third party to purchase any portion or all of such person's interest (the portion or all of such person's interest hereinafter referred to as the "Interest," and such type of offer later referred to as the "Interest Offer"); or (ii) if the Franchisee receives an at-arm's-length written offer from an independent third party to purchase any portion or all of Franchisee's interests under this Franchise Agreement or, outside the ordinary course of business, a material part or all of the assets used in the franchised business (such assets subject to the offer later referred to as the "Assets", and such type of offer later referred to as the "Asset Offer"), then Franchisee shall ensure that such person receiving the Interest Offer (the "Offeror") shall, if he or she desires to accept such offer, first offers to sell to the Franchisor the Interest or the Assets for the consideration and on the terms and conditions set forth in such third party's written offer. The Offeror's offer (the "Offer") shall be made by written notice to the Franchisor setting forth the name and address of the prospective purchaser, the price and terms of the Offer, a franchise application completed by the prospective purchaser, and any other information that Franchisor may reasonably request

in order to evaluate the Offer, including any purchase and sale and related agreements proposed to be executed or executed by Franchisee or the third party. Franchisor shall then have the first option to purchase the Interest or the Assets by accepting the Offer within thirty (30) days after its receipt of the Offer and required information.

A.    If the Franchisor gives notice of acceptance of the Offer, then the Offeror shall sell the Interest or the Assets to the Franchisor, and the Franchisor shall purchase the Interest or the Assets from the Offeror, for the consideration and upon the terms and conditions set forth in the Offer, less any broker's commission not due if Franchisor exercises its right of first refusal but due and payable by the Offeror upon the sale to the prospective purchaser. Franchisor's creditworthiness shall be deemed at least equal to the creditworthiness of any proposed purchaser. If the Franchisor is a public company at such time having shares traded on a national securities exchange, the Offeror must accept the then-current value of Franchisor's registered shares in lieu of cash or other consideration.

B.    If an independent third party's written offer (and the Offeror's corresponding offer to the Franchisor) provides for the purchaser's payment of a unique consideration which is of such a nature that it cannot reasonably be duplicated by the Franchisor, then the Franchisor may, in its notice of exercise, substitute cash or stock in an amount determined by mutual agreement of the Offeror and Franchisor within forty-five (45) days after the Offer is made or, failing such agreement, by an independent appraiser selected by Franchisor in its sole discretion.

C.    If the proposed sale includes assets of the Offeror not related to the operation of the franchised business, then the Franchisor may, at its option, elect to purchase only the assets related to the operation of the franchised business and an equitable purchase price shall be determined in the reasonable discretion of the Franchisor and allocated to each asset included in the proposed sale.

D.    Unless otherwise agreed by the Offeror and Franchisor, the closing of the purchase of the Interest or the Assets shall be held at a location designated by Franchisor on no later than the sixtieth (60th) day after the Offer is delivered to the Franchisor, provided that the closing of any such purchase for which a cash or stock consideration is determined in accordance with Sub-section 18.8(b) or 18.8(c) above shall be held on the fifteenth (15th) day after such cash or stock consideration is finally determined. At any such closing, the Offeror shall deliver to the Franchisor an assignment and other documents reasonably requested by Franchisor representing a transfer of ownership of the Interest or the Assets free and clear of all liens, claims, pledges, options, restrictions, charges and encumbrances, in proper form for transfer and with evidence of payment of all applicable transfer taxes by the Offeror. Franchisor shall simultaneously therewith make payment of any cash consideration for the Interest or Assets by a cashier's check, or payment by the issuance of Franchisor's registered shares, after set off against the amount due to the Offeror for all amounts the Franchisee owes Franchisor, if any. The remaining terms and conditions of such purchase and sale shall be set forth in the Offer.

E.    If the Franchisor does not accept the Offer as provided above, the Offeror shall be free, for a period of sixty (60) days after Franchisor has elected not to exercise its option, to sell the Interest or the Assets to the independent third party for the consideration and upon the terms and conditions specified in such third party's written offer, subject to full compliance with all terms and conditions of transfer required under this Franchise Agreement. It shall be a condition precedent to any sale of the Assets or the Interest to an independent third party that there is delivered to such third party an acknowledgment that the Assets or the Interest purchased by such third party is and shall be subject to the terms and conditions of this Franchise Agreement and that such third party agrees to be bound to the terms of this Franchise Agreement with respect to transferring the Assets or the Interest in the same manner as the Offeror. If the Offeror does not sell the Assets or the Interest or the Assets as provided above within the aforesaid sixty (60) day period, then any transfer by him or her of the Interest or the Assets shall again be subject to the restrictions set forth in this Franchise Agreement.

F.    In the event a proposed transferee is the spouse, son, or daughter of the Offeror, Franchisor shall not have any right of first refusal; provided, however, that all such transferees shall be subject to all of the restrictions on transfer of ownership imposed on the Offeror under this Franchise Agreement.

## SECTION 19 - BANKRUPTCY OR INSOLVENCY

You will be deemed in default under this Agreement and all rights granted herein will automatically terminate without notice in the event of the following:

A.      You become insolvent, or make a general assignment for the benefit of creditors;

B.      You file a petition of bankruptcy, or do not oppose a petition filed against you;

C.      You consent to the filing of a receivership or other custodianship for your business assets;

D.      You have instituted by or against you a proceeding for a composition with creditors under any state of federal law;

E.      You have a final judgment filed against you which remains unsatisfied or of record for thirty [30] days or longer (unless a supersedeas bond is filed);

F.      You are dissolved;

G.      An execution is levied against your franchise or property contained in the health club facility, or a suit to foreclose any lien against the health club facility or equipment is instituted against you and not dismissed within thirty [30] days, provided that this provision will not apply if a supersedeas bond is timely filed; or,

H.      Your health club facility's property is sold after levy by any sheriff, marshal or constable, or your health club facility's property is willingly assigned by you to another.

## SECTION 20 - MISCELLANEOUS

### 20.1    Relationship of Parties.

You neither have nor will you exercise any authority, express, implied or apparent, to act on behalf of or as an agent of Workout Anytime or any of its affiliates or subsidiaries, for any purpose, and will take no action which might tend to create an apparent employer-employee or agency relationship between you and Workout Anytime. You are, and will remain, an independent contractor responsible for all obligations and liabilities of, and for all loss or damage to, the health club facility and its business and for all claims and demands based on damages or destruction of property or based on injury, illness or death of any person or persons, directly or indirectly arising from or in connection with the operation of the health club facility. Workout Anytime will neither have, nor exercise the right to, the control of the day-to-day managerial operations of the health club facility.

### 20.2    No Conflict with Other Agreements.

You represent that you are not a party to or subject to agreements that might conflict with the terms of this Agreement and agree not to enter into any conflicting agreements during the License Term.

### 20.3    Cost of Enforcement

If either party institutes or prevails entirely or in part in any action at law or in equity against the other party based entirely or in part on the terms of this Agreement, the prevailing party will be entitled to recover from the losing party, in addition to any judgment, reasonable attorney's fees, court costs and all of the prevailing party's expenses in connection with any action at law

### 20.4    No Waiver.

No failure, forbearance, neglect or delay of any kind on the part of Workout Anytime in connection with the enforcement or exercise of any rights under this Agreement will affect or diminish Workout Anytime right to strictly enforce and take full benefit of each provision of this Agreement at any time, whether at law for damages, in equity for injunctive relief or specific performance, or otherwise. No custom, usage or practice with regard to this Agreement by you or Workout Anytime other franchisees will preclude the strict enforcement of this Agreement in accordance with its literal terms. No waiver by Workout Anytime of performance of any provision of this Agreement will constitute or be implied as a waiver of Workout Anytime right to enforce that provision at any future time.

20.5    **Entire Agreement; Amendments.**

This Agreement, with any related agreements and all Exhibits, constitutes the entire understanding and agreement between you and Workout Anytime and supersedes any and all prior understandings, whether oral or written, pertaining to either this Agreement, the System or your health club facility. You acknowledge and agree that no claims, representations or warranty of earnings, sales, profits or success of your Workout Anytime health club franchise have been made to you other than those set out in Item 19 of this FDD.   No interpretation, change, termination or waiver of any provision of this Agreement, and no consent or approval under this Agreement, will be effective or binding upon you or Workout Anytime unless in writing signed by you and Workout Anytime, except that a waiver needs to be signed only by the party waiving.

To the extent you have entered into any franchise agreement(s) with us prior to the date of this Agreement, such agreements are hereby amended by this paragraph and the following provisions will now apply to such prior agreement:

A.    The provisions found in this Franchise Agreement relating to monthly fees (Royalty, Processing, Advertising and Promotion and Brand Maintenance; to wit: Sub-sections 4.1, 4.3, 4.6, 5.1 and 5.3) will replace and/or amend those provisions contained in your previous agreement(s),

B.    The provisions found in this Franchise Agreement relating to Audits (Sub-sections 6.2, 6.3, and 6.4) will replace and/or amend those provisions contained in your previous agreement(s),

C.    The provision found in this Franchise Agreement relating to Maintenance (Sub-section 9.6) will replace and/or amend those provisions contained in your previous agreement(s),

D.    The provisions found in this Franchise Agreement relating to the Manual (Sub-sections 10.3 and 10.6) will replace and/or amend those provisions contained in your previous agreement(s),

E.    The provisions found in this Franchise Agreement relating to Franchisee Duties (Sub-sections 11.2 *et seq.*, with a specific emphasis on, and your specific acknowledgment of, Sub-sections 11.2(Q), 11.2(W), and 11.2(DD) will replace and/or amend those provisions contained in your previous agreement(s),

F.    The provision found in this Franchise Agreement relating to Insurance (Sub-section 13.3) will replace and/or amend that provision contained in your previous agreement(s),

G.    The provision found in this Franchise Agreement relating to Trademarks (Sub-section 14.5) will replace and/or amend that provision contained in your previous agreement(s),

H.    The provisions found in this Franchise Agreement relating to Non-Competition (Sub-sections 16.7 through 16.14) will replace and/or amend those provisions contained in your previous agreement(s),

I.    The provisions found in this Franchise Agreement relating to Transfer and Assignments (Sub-sections 18.4 and 18.8) will replace and/or amend those provisions contained in your previous agreement(s),

J.    The provision found in this Franchise Agreement relating to a Release (Sub-section 20.13) will replace and/or amend those provisions contained in your previous agreement(s).

K.    The provision found in this Franchise Agreement relating to Modification (Sub-section 20.14) will replace and/or amend those provisions contained in your previous agreement(s).

Should any of the provisions of Sub-sections 20.5(A) through 20.5(I) conflict with any term or condition found in this Franchise Agreement and that previous franchise agreement(s) which you may have entered into previously with the Franchisor, the terms and conditions of this Franchise Agreement will control.

The parties acknowledge and agree that this Section 20.5 constitutes a valid and properly written agreement signed by each of us, and that we both hereby ratify and reaffirm our respective obligations to one another under those agreements.

20.6    **Severability.**

If any term or provision of this Agreement or the application thereof to any person, property or circumstances will to any extent be invalid or unenforceable, the remainder of this Agreement will be unaffected and will remain in full force and effect and each term and provision will be valid and enforced to the fullest extent

permitted by law. Should this prove impractical in the sole discretion of Workout Anytime, then Workout Anytime will have the option of terminating this Agreement upon written notice to you.

20.7   **Governing Law.**

This Agreement has been made and accepted in the State of Georgia and it will be interpreted in accordance with and governed by the laws of the State of Georgia and any applicable federal and state franchise laws. You hereby consent to jurisdiction in Georgia.

20.8   **Arbitration.**

Except as specifically otherwise provided in this Agreement, and in the event that you or Workout Anytime seek injunctive relief under this Agreement, each of us agree that any and all disputes between us, and any claims by either of us that cannot be amicably settled, will be determined solely and exclusively by arbitration in accordance with the then existing rules of the American Arbitration Association in Atlanta, Georgia subject to the following:

A.      A single arbitrator will be selected by the American Arbitration Association upon application of either you or Workout Anytime. Arbitration proceedings will be conducted in accordance with the rules then prevailing of the American Arbitration Association at its Atlanta, Georgia office. Judgment upon an award of the majority of the arbitrators will be binding, and will be entered in a court of competent jurisdiction.

B.      Nothing herein contained will bar the right of you or Workout Anytime to obtain injunctive relief against threatened conduct that would violate this Agreement and cause loss or damages.

20.9   **Notices.**

All notices and other communications provided for in this Agreement must be in writing and will be delivered in person or mailed by certified mail, or by Federal Express or U.S. Express Mail for overnight delivery if to you, at your address or, if to Workout Anytime at our address, Attention: Steven C. Strickland, with a copy to Paul S. Suda, Esq., 1362 Salem Drive, Alpharetta, Georgia, 30009. Both Workout Anytime or yourself may change, by providing notice thereof in writing, the address to which future notices will be sent. Notices delivered in person will be deemed given when delivered and mailed notices will be deemed given three [3] days after mailing if by certified or other receipted mail, or one [1] day after mailing if by Federal Express or U.S. Express Mail. If you are a corporation, some other legal entity, or more than one [1] individual, then you will authorize one [1] natural person as correspondent with authority to bind you.

20.10   **Certain References.**

References to weeks and months mean calendar weeks and calendar months. References to persons mean legal entities as well as natural persons.  Whenever the pronouns "he" or "his" are used herein, such refers to the masculine, feminine and neutral genders, and the singular and plural. Except as otherwise specifically set forth in this Agreement, this Agreement will inure to the benefit of and be binding on you and Workout Anytime, our respective heirs, executors, administrators, personal representatives, successors and assigns.

20.11   **Patriot Act.**

You represent and warrant to us that (i) You are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation, named by any Executive Order or the United States Treasury Department as a "terrorist", "Specially Designated National and Blocked Person", or other banned or blocked person, group, or nation (collectively, "Banned Persons") pursuant to any anti-terrorism law; (ii) You are not engaged in this Franchise Agreement, or instigating or facilitating the execution of this Agreement, directly or indirectly on behalf of any Banned Person; (iii) You currently do not appear, and throughout the Franchise Term neither you nor any officer, director, shareholder, partner, member or other owner shall appear on any list of Banned Persons; (iv) no anti-terrorism law prohibits you from doing business with the Franchisee; (v) the Franchisee, its officers, directors, or principal shareholders, partner, member, or other owner of the Franchisee shall not, during the Franchise Term, violate any anti-terrorism laws; and (vi) Franchisee, its officers, directors, principal shareholders, partners or members shall not, during the Franchise Term do business with any party, individual, or entity that has violated or will violate any anti-terrorism laws.  For purposes of this Agreement, "anti-terrorism laws" shall mean Executive Order 13224 and related regulations promulgated and enforced by the Office of Foreign Assets Control, the Money Laundering Control Act, the United States Patriot Act, or any similar law, order, rule or regulation enacted in the future.  Franchisee hereby agrees to

defend, indemnify, protect, and hold harmless Franchisor from and against any and all claims, damages, losses, risks, liabilities, fines, penalties, expenses (including attorneys' fees) and costs arising from or related to a breach of the foregoing representations and warranties.  The foregoing indemnity obligations of Franchisee shall survive the termination or expiration of this Agreement.

20.12   **Other Franchises.**

You acknowledge that other Workout Anytime franchisees have or will be granted franchises at different times and in different situations, and further acknowledge that the provisions of such franchises may vary substantially from those contained in this Agreement. You also acknowledge that because complete and detailed uniformity under varying circumstances may not be practical, there may be variations we grant to other of our Workout Anytime clubs (whether franchised or which our affiliates operate), and you will not be entitled to require us to grant similar variations or privileges to you.

20.13   **Release of Prior Claims.**

By executing this Franchise Agreement, Franchisee, and each successor of Franchisee under this Franchise Agreement forever releases and discharges Franchisor and its Affiliates, its designees, franchise sales brokers, if any, or other agents, and their respective officers, directors, representatives, employees and agents, from any and all claims of any kind, in law or in equity, which may exist as of the date of this Franchise Agreement relating to, in connection with, or arising under this Franchise Agreement or any other agreement between the parties, or relating in any other way to the conduct of Franchisor, its Affiliates, its designees, franchise sales brokers, if any, or other agents, and their respective officers, directors, representatives, employees and agents prior to the date of this Franchise Agreement, including any and all claims, whether presently known or unknown, suspected or unsuspected, arising under the franchise, business opportunity, securities, antitrust or other laws of the United States, any state or locality.

20.14.   **Modification of the System**.

FROM TIME TO TIME AFTER THE DATE OF THIS FRANCHISE AGREEMENT FRANCHISOR MAY CHANGE OR MODIFY THE SYSTEM (INCLUDING THE TYPES OF GOODS AND SERVICES OFFERED BY THE FRANCHISED BUSINESS). FRANCHISEE SHALL ACCEPT, AND IS BOUND BY, ANY SUCH CHANGES IN THE SYSTEM AS IF THEY WERE PART OF THIS ORIGINAL FRANCHISE AGREEMENT AT THE TIME OF ITS EXECUTION. FRANCHISEE WILL MAKE SUCH EXPENDITURES AND SUCH CHANGES OR MODIFICATIONS TO COMPLY WITH THE CHANGES OR MODIFICATIONS OF THE SYSTEM AS FRANCHISOR MAY REASONABLY REQUIRE.

20.15   **Acknowledgement.**

**YOU ACKNOWLEDGE THAT YOU HAVE CONDUCTED AN INDEPENDENT INVESTIGATION OF THE WORKOUT ANYTIME SYSTEM AND RECOGNIZE THAT THE BUSINESS VENTURE CONTEMPLATED BY THIS AGREEMENT INVOLVES BUSINESS RISK AND WILL BE LARGELY DEPENDENT UPON THE ABILITY OF YOU AS AN INDEPENDENT BUSINESS PERSON. WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC EXPRESSLY DISCLAIMS THE MAKING OF, AND YOU ACKNOWLEDGE THAT YOU HAVE NOT RECEIVED, ANY WARRANTY OR GUARANTEE, EXPRESSED OR IMPLIED, AS TO THE POTENTIAL VOLUME, PROFITS OR SUCCESS OF THE BUSINESS VENTURE CONTEMPLATED BY THIS AGREEMENT.**

**YOU ACKNOWLEDGE YOU HAVE RECEIVED A COPY OF THE COMPLETE WORKOUT ANYTIME FRANCHISE AGREEMENT AT LEAST FIVE [5] BUSINESS DAYS PRIOR TO THE DATE ON WHICH THIS AGREEMENT WAS EXECUTED. YOU FURTHER ACKNOWLEDGE THAT YOU RECEIVED THE DISCLOSURE DOCUMENT REQUIRED BY THE FEDERAL TRADE COMMISSION TITLED "UNIFORM FRANCHISE DISCLOSURE DOCUMENT" AT LEAST TEN [10] BUSINESS DAYS PRIOR TO THE DATE ON WHICH THIS AGREEMENT WAS EXECUTED.**

**YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS AGREEMENT, AND THAT WORKOUT ANYTIME HAS ACCORDED YOU AMPLE TIME AND OPPORTUNITY AND HAS ENCOURAGED YOU TO CONSULT WITH ADVISORS, COUNSELORS, AND BOTH LEGAL AND FINANCIAL PROFESSIONALS OF YOUR OWN CHOOSING ABOUT THE POTENTIAL BENEFITS AND RISKS OF ENTERING INTO THIS AGREEMENT.**

**YOU ACKNOWLEDGE THAT OTHER WORKOUT ANYTIME FRANCHISEES HAVE OR WILL BE GRANTED FRANCHISES AT DIFFERENT TIMES AND IN DIFFERENT SITUATIONS, AND FURTHER ACKNOWLEDGE THAT THE PROVISIONS OF SUCH FRANCHISES MAY VERY SUBSTANTIALLY FROM**

THOSE CONTAINED IN THIS AGREEMENT.  YOU ALSO ACKNOWLEDGE THAT BECAUSE COMPLETE AND DETAILED UNIFORMITY UNDER VARYING CIRCUMSTANCES MAY NOT BE PRACTICAL, THERE MAY BE VARIATIONS WE GRANT TO OTHER OF OUR WORKOUT ANYTIME CLUBS (WHETHER FRANCHISED OR OPERATED BY OUR AFFILIATES0, AND YOU WILL NOT BE ENTITLED TO REQUIRE US TO GRANT SIMILAR VARIATIONS OR PRIVILEGES TO YOU.

YOU ACKNOWLEDGE THAT THE SUCCESS OF FRANCHISEE IN OWNING AND OPERATING THE FRANCHISED BUSINESS IS SPECULATIVE AND WILL DEPEND ON MANY FACTORS INCLUDING, TO A LARGE EXTENT, FRANCH ISEE'S INDEPENDENT BUSINESS ABILITY. NO REPRESENTATIONS OR PROMISES, EXPRESS OR IMPLIED, HAVE BEEN MADE BY FRANCHISOR OR ANY EMPLOYEE, BROKER OR REPRESENTATIVE OF FRANCHISOR, TO INDUCE FRANCHISEE TO ENTER INTO THIS FRANCHISE AGREEMENT OR ANY RELATED AGREEMENT EXCEPT AS SPECIFICALLY INCLUDED IN THIS FRANCHISE AGREEMENT OR SUCH RELATED AGREEMENTS. NO EMPLOYEE, OFFICER, DIRECTOR, BROKER OR REPRESENTATIVE IS AUTHORIZED TO DO OTHERWISE;

IN ALL OF ITS DEALINGS WITH FRANCHISOR, ITS EMPLOYEES, BROKERS (IF ANY), AND OTHER REPRESENTATIVES, EACH HAVE ACTED ONLY IN A REPRESENTATIVE CAPACITY AND NOT IN AN INDIVIDUAL CAPACITY. THIS FRANCHISE AGREEMENT, AND ALL BUSINESS DEALINGS BETWEEN FRANCHISEE AND SUCH INDIVIDUALS AS A RESULT OF THIS FRANCHISE AGREEMENT, ARE SOLELY BETWEEN FRANCHISEE AND FRANCHISOR;.

FRANCHISOR MAKES NO WARRANTY AS TO FRANCHISEE'S ABILITY TO OPERATE THE FRANCHISED BUSINESS IN THE JURISDICTION IN WHICH THE FRANCHISED BUSINESS IS TO BE OPERATED. IT IS INCUMBENT UPON FRANCHISEE TO SEEK OR OBTAIN ADVICE OF COUNSEL SPECIFICALLY WITH RESPECT TO THIS ISSUE. IN THE EVENT THAT LEGISLATION ENACTED BY, OR REGULATION OF, ANY GOVERNMENTAL BODY PREVENTS FRANCHISEE FROM OPERATING THE FRANCHISED BUSINESS, FRANCHISOR SHALL NOT BE LIABLE FOR DAMAGES NOR BE REQUIRED TO INDEMNIFY FRANCHISEE IN ANY MANNER WHATSOEVER OR TO RETURN ANY MONIES RECEIVED FROM FRANCHISEE.

[*Remainder of Page Intentionally Left Blank*]

This entire Agreement, including corrections, changes and all attachments and addendums, will only be binding upon Workout Anytime when executed or initialed by a member, director or officer of Workout Anytime.

**You and Workout Anytime, intending to be legally bound, have duly executed, sealed and delivered this Agreement in duplicate.**

FRANCHISEE:  (For an Entity)                                    FRANCHISEE:  (For an Individual)

WOATChatt1, LLC
(Please print name and type of entity)                          (Please print name)


By:  (Signature of person signing for entity)                   By:  (Signature)

President
Title:  (Title of person signing)                               Date:

8/16/2013
Date:


FRANCHISOR:  WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC


By:  Steven C. Strickland, Its Manager/Member

8/16/2013
Date:

# EXHIBIT B

# PERSONAL GUARANTY

# PERSONAL GUARANTY

**THIS GUARANTY** is made this __16ᵗʰ__ of __August__, 201_3_, by the undersigned ("Guarantor"), for the benefit of WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC ("Franchisor").

## RECITALS

A.   __WOATChitt1, LLC__ is the Franchisee ("Franchisee"), of that certain FRANCHISE AGREEMENT (the "FRANCHISE AGREEMENT") with Franchisor dated __August 16__, 201_3_; and,

B.   As a condition to entering into the FRANCHISE AGREEMENT, Franchisor requires that Guarantor guarantee the full performance of the obligations of Franchisee under the FRANCHISE AGREEMENT; and,

C.   Guarantor will receive substantial benefit from the FRANCHISE AGREEMENT and desires that Franchisee enter into the FRANCHISE AGREEMENT with the Franchisor;

**NOW, THEREFORE**, in consideration of the execution of the FRANCHISE AGREEMENT by Franchisee and its acceptance by Franchisor, and other valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor covenants and agrees as follows:

## AGREEMENT

1.   **Guarantee.** Guarantor hereby absolutely and unconditionally guarantees (a) the full and faithful performance of all of the covenants, conditions, agreements and undertakings of Franchisee to be kept and performed by Franchisee under the FRANCHISE AGREEMENT including, but not limited to, the monthly payment(s) when due, and other sums payable by Franchisee to Franchisor under the FRANCHISE AGREEMENT, and (b) the payment of all damages owing to Franchisor by Franchisee after the termination of the FRANCHISE AGREEMENT or the exercise by Franchisor of any other right or remedy of Franchisor following a default by Franchisee under the FRANCHISE AGREEMENT (collectively the "Obligations"). Guarantor understands and agrees that this Guaranty is unconditional and continuing and is a guaranty of payment and performance and not of collection.

2.   **Independent Obligation.** The liability of Guarantor hereunder is independent of the obligation of the Franchisee or any other person or entity a separate action or separate actions against Guarantor until after Franchisee has failed to comply with any and all cure periods allowed. The release of, or cancellation by, any signer of a similar instrument shall not act to release or otherwise affect the liability of Guarantor hereunder.

3.   **Modification to FRANCHISE AGREEMENT.** Guarantor's obligations under this Guaranty of FRANCHISE AGREEMENT shall not be extinguished, discharged, diminished or reduced in any way by any modification or amendment of the FRANCHISE AGREEMENT including, but not limited to, any modification of payment dates or amounts, or any subsequent assignment of the FRANCHISE AGREEMENT made with or without the consent of Franchisor. Guarantor hereby waives any right to approve any modification or amendment of the FRANCHISE AGREEMENT.

4.   **Obligations of Guarantor Upon Default by Franchisee.** In the event that Franchisee shall fail to pay when due any other monetary sum or charge, or any portion thereof, accrued or due pursuant to the terms of the FRANCHISE AGREEMENT within any allotted cure period, then, upon written notice to Guarantor by Franchisor, Guarantor shall pay to Franchisor any and all such amounts as may be due and owing from Franchisee to Franchisor by reason of Franchisee's failure to perform.

5.   **Remedies.** If Guarantor fails to perform any obligation under this Guaranty, then in addition to all other remedies provided at law or in equity, from time to time and without first requiring performance on the part of Franchisee, and without being required to exhaust or proceed against any or all security held by Franchisor for the performance of Franchisee under the FRANCHISE AGREEMENT, Franchisor may enforce its rights to require performance by Guarantor of any or all of the obligations on the part of Guarantor to be performed under this Guaranty by action at law or in equity, or both.

6.   **No Waiver.** No failure on the part of Franchisor to pursue any remedy under this Guaranty or under the FRANCHISE AGREEMENT shall constitute a waiver on the part of Franchisor of its right to pursue such remedy on the basis of a subsequent default.

7.   **Waiver of Exoneration.** Guarantor waives any right to require Franchisor to (a) proceed against Franchisee, (b) proceed against or exhaust any security held from Franchisee, or (c) pursue any other right or remedy available to Franchisor. Guarantor further waives any defense it may acquire by reason of Franchisor's election of any remedy against Guarantor or Franchisee, or both.

8.      **Waiver of Subrogation.** Until the obligations of Franchisee under the FRANCHISE AGREEMENT have been performed in full, Guarantor shall have no right of subrogation against Franchisee, and Guarantor hereby expressly waives any right to enforce any remedy which Franchisor now has or may hereafter acquire against Franchisee. Guarantor hereby waives the benefit of, and any right to participate in, any security now or hereafter held by Franchisor for the performance of the obligations of Franchisee under the FRANCHISE AGREEMENT.

9.      **Waiver of Presentments.** Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and waives all notices of the existence, creation, or incurring of new or additional obligations.

10.     **Other Guarantor Waivers.** Without limiting the generality of the preceding paragraphs, Guarantor hereby waives all rights and defenses to:

    (a)      All defenses by reason of any lack of authority of Franchisee, or based on any statute of limitations respecting obligations accruing under the FRANCHISE AGREEMENT or this Guaranty;
    (b)      Any and all rights it may have now or in the future to require or demand that Franchisor pursue any right or remedy Franchisor may have against Franchisee or any other third party;
    (c)      Any defense arising as a result of Guarantor's election of the application of Section 1111(b)(2) of the Bankruptcy Code or based on any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code;
    (d)      Any defense as a surety arising under applicable law;
    (e)      Any duty or obligation of Franchisor to disclose to Guarantor any facts Franchisor may now or hereafter know about Franchisee, regardless or whether Franchisor has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume or has reason to believe that such facts are unknown to Guarantor or has a reasonable opportunity to communicate such facts to guarantor, it being understood and agreed that guarantor is fully responsible for being and keeping informed of the financial condition of Franchisee and of any and all circumstances bearing on the risk of nonperformance of any Obligation; and,
    (f)      Any defense based upon an election of remedies by Franchisor, including any election which destroys or impairs any right of subrogation, reimbursement of contribution which Guarantor may have, or any rights or benefits under any provisions of Georgia law in any way qualifying, conditioning or limiting the obligations of Guarantor based on any steps or procedures that Franchisor should take before proceeding against Guarantor.

11.     **Bankruptcy.** This Guaranty will continue unchanged by any bankruptcy, reorganization or insolvency of Franchisee, or any successor or assignee thereof, or by any disaffirmance or abandonment by a trustee of Franchisee. Notwithstanding any modification, discharge or extension of the indebtedness or any amendment, modification, stay or cure of Franchisor's rights which may occur in any bankruptcy or reorganization case or proceeding concerning Franchisee whether permanent or temporary, and whether assented to by Franchisor, Guarantor hereby agrees that it shall be obligated hereunder to pay and perform the Obligations in accordance with the terms of the FRANCHISE AGREEMENT and the terms of this Guaranty. Guarantor understands and acknowledges that by virtue of this Guaranty, Guarantor has specifically assumed any and all risks of a bankruptcy or reorganization case or proceeding with respect to Franchisee.

12.     **Assignment of FRANCHISE AGREEMENT.** As used herein, the term "Franchisor" shall include any successor, assignee or transferee of Franchisor. Guarantor agrees that Franchisor may, without notice to Guarantor, assign the FRANCHISE AGREEMENT and this Guaranty in whole or in part and that no such assignment or transfer of the FRANCHISE AGREEMENT and/or this Guaranty shall operate to extinguish or diminish the liability of Guarantor under this Guaranty.

13.     **Obligations of Guarantor Are Primary.** Guarantor agrees that the liability of Guarantor under this Guaranty shall be primary and that in any cause or right of action which shall accrue to Franchisor under this Guaranty, Franchisor may, at its sole option, proceed against Guarantor without having commenced any action, or having obtained any judgment, against Franchisee. If Franchisor has any enforceable right against Franchisee upon termination of the FRANCHISE AGREEMENT, Franchisor shall be entitled to enforce those rights against Guarantor without giving prior notice to Franchisee or Guarantor, and without making any demand on either of them.

14.     **Interest.** Any sum required to be paid by Guarantor to Franchisor pursuant to the terms of this Guaranty shall bear interest at the lower of seven percent (7%) or the highest rate then allowed by law, from the date due until paid in full.

15.     **Attorneys' Fees.** Guarantor agrees to pay Franchisor's reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempted collection, or in any negotiations relative to the obligations hereby guaranteed, or incurred enforcing this Guaranty against the Guarantor. In addition, in the event of any dispute between the parties arising under this Guaranty, or the breach of any covenant or condition under this Guaranty, then the prevailing party shall be entitled to have and recover from the party not so prevailing the attorneys' fees and costs incurred by the prevailing party, whether such fees and costs are incurred in taking any action under this Guaranty, or in any judicial proceeding (including appellate proceeding). "Prevailing party" for the purposes of this Paragraph 15 shall include, without limitation, the party who receives from the other party the sums allegedly due, performance of the covenants allegedly breached, consideration substantially equal to that which was demanded, or substantially the relief or consideration sought in any judicial proceeding whether or not such proceeding is prosecuted to final

FDD 4/1/2013

judgment, or a party who dismisses a judicial action in return for substantially the performance or relief sought or the payment of the sums allegedly due.

16.     **Time of the Essence.** Time is of the essence with respect to the performance of each and every provision of this Guaranty.

17.     **Governing Law.** This Guaranty shall be construed and interpreted in accordance with the laws of the State of Georgia.

18.     **Captions.** The captions and paragraph numbers appearing in this Guaranty are inserted only as a matter of convenience and are not to be used to interpret this Guaranty.

19.     **Examination of FRANCHISE AGREEMENT.** Guarantor acknowledges that he/she has (a) received a copy of the FRANCHISE AGREEMENT, (b) read and understood the terms and provisions of the FRANCHISE AGREEMENT including, but not limited to, the covenants, conditions, agreements and undertakings of Franchisee to be kept and performed by Franchisee under the FRANCHISE AGREEMENT, and (c) read and understood the obligation of Guarantor under this Guaranty, including the legal effect of such obligations and has been advised by legal counsel respecting such obligations.

20.     **Binding to Successors.** Guarantor shall not assign any of its obligations hereunder by operation of law or otherwise, and any attempted assignment shall, at Franchisor's sole option, be void. Subject to the foregoing, the obligations of Guarantor under this Guaranty shall be binding on Guarantor's successors.

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the date first hereinabove set forth.

**GUARANTORS:**

_____       Date: ___8/16/2013_____

_____       Date: _____

_____       Date: _____

_____       Date: _____

judgment, or a party who dismisses a judicial action in return for substantially the performance or relief sought or the payment of the sums allegedly due.

16.     **Time of the Essence.** Time is of the essence with respect to the performance of each and every provision of this Guaranty.

17.     **Governing Law.** This Guaranty shall be construed and interpreted in accordance with the laws of the State of Georgia.

18.     **Captions.** The captions and paragraph numbers appearing in this Guaranty are inserted only as a matter of convenience and are not to be used to interpret this Guaranty.

19.     **Examination of FRANCHISE AGREEMENT.** Guarantor acknowledges that he/she has (a) received a copy of the FRANCHISE AGREEMENT, (b) read and understood the terms and provisions of the FRANCHISE AGREEMENT including, but not limited to, the covenants, conditions, agreements and undertakings of Franchisee to be kept and performed by Franchisee under the FRANCHISE AGREEMENT, and (c) read and understood the obligation of Guarantor under this Guaranty, including the legal effect of such obligations and has been advised by legal counsel respecting such obligations.

20.     **Binding to Successors.** Guarantor shall not assign any of its obligations hereunder by operation of law or otherwise, and any attempted assignment shall, at Franchisor's sole option, be void. Subject to the foregoing, the obligations of Guarantor under this Guaranty shall be binding on Guarantor's successors.

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date first hereinabove set forth.

**GUARANTORS:**

_____      Date: ___8/16/13_____

_____      Date: _____

_____      Date: _____

_____      Date: _____

# EXHIBIT C

# NON-COMPETITION AND
# NON-SOLICITATION AGREEMENT

## NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Non-Competition and Non-Solicitation Agreement ("Agreement") is entered into by and between Workout Anytime Franchising Systems, LLC ("WOAT") and *Jeffrey L. Landis and Troy B* < JC ("Obligor"), and becomes effective on the Effective Date of the Franchise Agreement once counter-signed by WOAT. THIS AGREEMENT IS MADE SUBJECT TO ANY PROVISIONS OF ANY EXHIBIT "G" ATTACHED TO THE DISCLOSURE DOCUMENT PURSUANT TO WHICH THIS NON-COMPETITION AND NON-SOLICITATION AGREEMENT WAS PRESENTED TO AND SIGNED BY OBLIGOR AND WHICH SPECIFICALLY AND EXPRESSLY RELATE TO THE STATE OF FRANCHISEE'S RESIDENCY.

### W I T N E S S E T H:

**WHEREAS**, Obligor is either (1) the "Franchisee" named in the Franchise Agreement ("Franchise Agreement") that is being executed in conjunction with this Agreement and from and as a result of which this Agreement is being signed, and/or (2) an equity owner of the legal entity that is named as the Franchisee in the Franchise Agreement ("Obligor" shall for all purposes under this Agreement mean and refer to the entity (if Franchisee is an entity), all equity owners of such entity, and all managers and/or primary operators of Franchisee's "health club facility");

**WHEREAS**, Obligor acknowledges that WOAT has a legitimate business interest in protecting its franchise and franchisees from unfair competition by an existing or former franchisee that has had special, intimate knowledge of WOAT'S methods and trade secrets and confidential information for the operation of a Workout Anytime health club facility;

**WHEREAS**, Obligor acknowledges that WOAT has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee that transfers (without WOAT'S permission) the goodwill associated with WOAT'S proprietary and protected marks and business practices to a business that competes with WOAT'S franchisees;

**WHEREAS**, Obligor acknowledges that WOAT has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee that is able to take advantage of the knowledge and experience gained in running a Workout Anytime health club facility, and use such knowledge and experience in operating a new competing business without having to continue to pay royalties and other fees for such information, thereby placing other franchisees at a competitive disadvantage;

**WHEREAS**, Obligor acknowledges that WOAT has a legitimate business interest in re-franchising the formerly protected territory of a former franchisee, and WOAT would suffer irreparable damage absent this Agreement because it would be unable to attract new franchisees to the area served by its former franchisee;

**WHEREAS**, Obligor acknowledges that WOAT has a legitimate business interest in protecting its franchises and franchisees from unfair competition by an existing or former franchisee who (1) diverts business and customers from a current or former Workout Anytime health club facility to a competitor of WOAT, or (2) induces or attempts to induce an employee of any Workout Anytime health club facility to discontinue their employment with the health club facility;

**WHEREAS**, Obligor acknowledges that WOAT requires the execution of this Agreement as an ancillary requirement to WOAT'S simultaneous grant of a franchise to Obligor or a legal entity of which Obligor is an equity owner.

**NOW, THEREFORE**, in express acknowledgement and recognition of the importance of the foregoing recitals, the parties agree as follows:

1.      **Consideration In Exchange for Obligor's Covenants**.  Obligor hereby expressly acknowledges and confirms that all of the valuable benefits, advantages and opportunities enjoyed by Obligor immediately upon (and solely as a result of) Obligor's (or as applicable, Obligor's legal entity) becoming a franchisee under the Franchise Agreement (which occurs simultaneously and corresponding with, the execution of this ancillary Agreement), and the additional protection provided by this Agreement being signed by all other new franchisees, serve as valuable and adequate consideration received in simultaneous exchange for all of Obligor's promises and covenants made in this Agreement below.

2.      **Obligor's In-Term Non-Competition and Non-Solicitation Covenants**.  During the term of the Franchise Agreement corresponding to this Agreement, and without geographic limits, Obligor shall not directly or indirectly (such as through corporations or other entities controlled by the Obligor or by or through or in conjunction with any other individual person or persons including, but not limited to, Obligor's spouse (if any) and employees):

a.       divert or attempt to divert any business or customer of any health club facility to any competitor or do anything injurious or prejudicial to the goodwill associated with WOAT'S Marks, Method, WOAT'S Workout Anytime Franchise Chain, or WOAT'S business practices; and,

b.       persuade, entice, or attempt to persuade or entice, any employee of any Workout Anytime health club facility to discontinue their employment with such health club facility; and,,

c.       own, maintain, engage in, be associated with, be employed by, advise, assist, invest in, be landlord to, franchise, or have any interest in any business which is the same or substantially similar to or competitive with any Workout Anytime shipping health club facility; and,

d.       use, communicate, disseminate, provide access, or divulge to anyone at any time any confidential information or trade secrets of WOAT, or at any time copy, duplicate, record or otherwise reproduce any confidential information or trade secrets of WOAT, including without limitation those       materials contained within the secure password protected Franchise resource section of WOAT'S web-site, except  as expressly permitted in the Franchise Agreement.

3.       **Obligor's Post-Term Non-Competition and Non-Solicitation Covenants.**

a.       For purposes of this Section 3, the word "Conclusion" means the termination and/or expiration of the Franchise Agreement corresponding to this Agreement, regardless of whether such termination/expiration occurs prior to, or at the end of, such Franchise Agreement's fifteen [15] year term.

b.       Upon the Conclusion of the Franchise Agreement corresponding to this Agreement, and for the stated time period thereafter and geographic restriction set forth below, Obligor shall not, directly or indirectly (i.e. see explanation of indirectly in Section 2 above):

(i)       for a two [2] year period following the Conclusion of the Franchise Agreement corresponding  to this Agreement and without geographic limitation, divert or attempt to divert any business or customer of any health club facility to any competitor, or do anything injurious or prejudicial to the goodwill associated with WOAT'S Marks, Method or WOAT'S Workout Anytime Franchise Chain; and,

(ii)      for a two [2] year period following the Conclusion of the Franchise Agreement corresponding to this Agreement and without geographic limitation, own, maintain, engage in, be associated with, be employed by, advise, assist, invest in or have any interest in any business which is the same as, or substantially similar to or competitive with any WOAT health club facility; and,

(iii)     for a two [2] year period following the Conclusion of the Franchise Agreement corresponding to this Agreement and without geographic limitation, persuade, entice or attempt to persuade or entice any employee of any Workout Anytime health club facility to discontinue their employment with such health club facility.

c.       Upon the Conclusion of the Franchise Agreement corresponding to this Agreement, Obligor shall not, at any time, directly or indirectly (see Section 2 above for explanation of indirectly):

(i)       communicate, disseminate, provide access, reveal or divulge to anyone, in whole or in part, any of the confidential information or trade secrets of WOAT; and,

(ii)      use, copy, duplicate, record or otherwise reproduce at any time any of the confidential information or trade secrets of WOAT; and,

(iii)     use in any manner whatsoever any of the Marks, the Method, WOAT'S Operations Manuals, any of the materials contained within the secure password protected Franchise resource section of WOAT'S web-site, or any other proprietary or intellectual property rights of WOAT and WOAT'S Workout Anytime Franchise Chain.

d.       Upon the Conclusion of the Franchise Agreement corresponding to this Agreement, Obligor shall immediately return to WOAT all Operations Manuals, all training materials, all WOAT proprietary software and printed matters, all web-site materials, all other confidential information and trade secrets, and all of WOAT'S advertising and promotional signs and similar items.

4.       **Severability.** It is the parties desire and intention that the covenants contained in this Agreement shall be construed as agreements severable and independent from each other, except that any violation of Section 2 of this Agreement shall constitute a material breach and default of the Franchise Agreement associated with this Agreement and "cause" for immediate termination of the Franchise Agreement without opportunity to cure. It is also the intention of the parties that if any Section of this Agreement is deemed by a court of competent jurisdiction to be invalid or unenforceable, then the maximum legally allowable restriction permitted by applicable law shall control and bind Obligor.

5.       **Enforcement Costs.** Obligor agrees to pay to WOAT all of the costs and expenses (including reasonable attorneys' fees) incurred by WOAT in connection with its enforcement of this Agreement.

6.   **Counter-Parts, Entire Agreement, Amendments.**   This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be one and the same instrument. The parties may execute such counterparts via fax, or electronically via PDF. This Agreement, together with the Franchise Agreement associated with this Agreement, contains the entire agreement of the parties pertaining to the subject matter hereof and no prior or contemporaneous representations, inducements, promises, or agreements, oral or otherwise, between the parties not set forth herein shall be of any force and effect. Any modifications to this Agreement must be accomplished by a written agreement signed by both parties.

7.   **Suspension of Non-Compete Time Periods During Dispute Resolution Proceedings.**   In the event that this Agreement or this Agreement's corresponding Franchise Agreement become the subject of any mediation, arbitration or litigation, then the applicable post-term time periods referenced above in Section 3 (or as may be determined by any mediator, arbitrator or judge) shall (a) be suspended during the entirety of any such dispute resolution proceedings and to the maximum extent found enforceable in such proceedings, (b) begin to run from the date following such proceedings upon which Obligor first complies with this Agreement.

8.   **Injunction.**   Obligor recognizes and agrees that the injury that WOAT and certain of its franchisees will suffer in the event of Obligor's breach of any covenant contained in this Agreement cannot be compensated by monetary damages alone, and Obligor therefore agrees that in the event of a breach or threatened breach by Obligor of this Agreement, WOAT (and its affiliates, successors and assigns), in addition to and not in limitation of, any other rights, remedies, or damages available to WOAT (and/or its affiliates, successors, and assigns) at law, in equity, under this Agreement or otherwise, shall be entitled to seek an injunction from any court of competent jurisdiction in order to prevent or restrain any such breach by Obligor or by Obligor's agents, representatives, employees, partners, co-owners, or any and all other persons directly or indirectly acting for or with him/her/it.

9.   **Choice of Law, Venue and Jurisdiction.**   This Agreement shall be (a) deemed made and entered into, and (b) construed and governed under and in accordance with the laws of the State of Georgia, except to the extent that the laws of the State where the health club facility associated with the Franchise Agreement (that is owned and operated by Obligor or, as applicable, Obligor's legal entity) is located requires in order for the Franchise Agreement and this Agreement to be enforceable against the Obligor or Obligor's legal entity that such State's laws apply. Exclusive venue and jurisdiction of any suit arising under this Agreement shall lie within the federal or state courts within the State of Georgia, except to the extent that the laws of the State where the health club facility (as previously described) is located requires in order for the Franchise Agreement and this Agreement to be enforceable against the Obligor or Obligor's legal entity that venue and jurisdiction lie in such State.

**AGREED TO AND ACCEPTED BY OBLIGOR:**

Signature: _Jeff Landis_

Print your name: _Jeffery L. Landis_

Print Title (if applicable): _President_

Date of Signature: _8/16/2013_

*If the "Franchisee" named in the Franchise Agreement is an entity (e.g., corporation, limited liability company, partnership, trust, etc.), or if there is more than one [1] equity owner of "Franchisee", or if "Franchisee" consists of more than one [1] person, or if someone other than "Franchisee" or an equity owner of an entity "Franchisee" will serve said "Franchisee" as a manager or primary operator, complete and sign the additional OBLIGOR SIGNATURES below for the entity, for each equity owner of the entity, for each person included as part of "Franchisee", or for each manager or primary operator, or alternatively submit separate signed originals of this Agreement for the entity and for each of said persons.

**ADDITIONAL OBLIGOR SIGNATURES:**

Signature: _____

Print your name: _____Troy D. Bage_____

Print Title (if applicable): _Vice President and Secretary_

Date of Signature: _____8/16/13_____

Signature: _____

Print your name: _____

Print Title (if applicable): _____

Date of Signature: _____

**WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC:**

Signature of Signing Officer: _____

Printed Name of Signing Officer: Steven C. Strickland

*Date of Counter Signature: _____8/16/2013_____
(*Effective Date of Agreement)

# EXHIBIT E

# PERSONAL DATA

# I. PERSONAL DATA DISCLOSURE

This information will be kept strictly confidential. Please provide all available information. Should certain information not be available at this time, such as your new health club facility telephone number, please provide it immediately upon its availability, but no later than your scheduled facility opening date.

Your Name _Jeffery L. Londis_

Home Address _1430 Baugh Spring Road_

City/State/Zip Code _McDonald TN 37353_

SSN _214_ - _86_ - _9257_

Home Phone _N/A_        Work Phone _423 238-7217_

Cell Phone _423-413-8350_

E-mail Address _JLondis@BenchMarkPT.com_

Workout Anytime Phone _____

Workout Anytime Fax _____

Facility's Address _25 Cherokee Boulevard, Suite A & B_

City/State/Zip Code _Chattanooga, Tennessee 37405_

Signed: _____        Date: _8/16/2013_

# I. PERSONAL DATA DISCLOSURE

This information will be kept strictly confidential. Please provide all available information. Should certain information not be available at this time, such as your new health club facility telephone number, please provide it immediately upon its availability, but no later than your scheduled facility opening date.

Your Name __Troy D. Bage__

Home Address __912 E MLK Blvd__

City/State/Zip Code __Chattanooga TN 37403__

SSN __220__ . __72__ . __2032__

Home Phone __423-266-2688__    Work Phone _____

Cell Phone __410 627 7533__

E-mail Address __Troy Bage@comcast.net__

Workout Anytime Phone __423-710-1164__

Workout Anytime Fax _____

Facility's Address __25 Cherokee Boulevard, Suite A+B__

City/State/Zip Code __Chattanooga, Tennessee 37405__

Signed: _____    Date: __8/16/13__

## II. FRANCHISEE OWNERSHIP INFORMATION FORM

1.     FULL NAME(S) OF FRANCHISEE [If this franchise is owned by a legal entity, only insert the name of the legal entity; if this franchise is owned by one or more individuals, only insert the name(s) of such individual(s):

Entity Name: _WOATChett I, LLC_

Individual Owner(s): _Jeffrey L. Condis_
_Troy D. Baye_

2.     THE FRANCHISE WILL BE OWNED BY (Check which one applies):

_____ SOLE PROPRIETOR                          Fed. Tax I.D. # _____

_____ PARTNERSHIP                              Fed. Tax I.D. # _____

_____ CORPORATION                              Fed. Tax I.D. # _____

_X_ LIMITED LIABILITY COMPANY                  Fed. Tax I.D. # _46-3054839_

_____ OTHER BUSINESS ENTITY                    Fed. Tax I.D. # _____
      (Please explain on a separate piece of paper)

3.     NAMES OF ALL OWNERS, PARTNERS, SHAREHOLDERS OR MEMBERS AND PERCENTAGE OF OWNERSHIP INTEREST: (Please use separate sheet if necessary)

NAME: _Jeffrey L. Condis_                      % OF OWNERSHIP: _50%_

SOCIAL SECURITY NUMBER: _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_

NAME: _Troy D. Baye_                           % OF OWNERSHIP: _50%_

SOCIAL SECURITY NUMBER: _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_

NAME: _____          % OF OWNERSHIP: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____          % OF OWNERSHIP: _____

SOCIAL SECURITY NUMBER: _____

4.     LIST OF DIRECTORS, MANAGERS OR GENERAL PARTNERS: (Please use separate sheet if necessary)

NAME: _Jeffrey L. Condis_                      TITLE: _Director_

SOCIAL SECURITY NUMBER: _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_

NAME: _Troy D. Baye_                           TITLE: _Director_

SOCIAL SECURITY NUMBER: _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_

NAME: _____          TITLE: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____          TITLE: _____

SOCIAL SECURITY NUMBER: _____

5.    LIST OF OFFICERS: (Please use separate sheet if necessary)

NAME: Jeffrey L. Londis                     TITLE: President

SOCIAL SECURITY NUMBER: 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

NAME: Troy D. Baje                          TITLE: VP & Secretary

SOCIAL SECURITY NUMBER: 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

NAME: _____               TITLE: _____

SOCIAL SECURITY NUMBER: _____

NAME: _____               TITLE: _____

SOCIAL SECURITY NUMBER: _____

6.    DESIGNATED CONTACT PERSON:

NAME: Jeff Londis                           TITLE: President

ADDRESS: 1430 Baugh Springs Road

          McDonald, TN 37353

PHONE: 423-413-8350   E-MAIL: JLondis@benchmarkPT.com

## RECEIPT OF WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC
## APRIL 1, 2013 FINANCIAL DISCLOSURE DOCUMENT

THIS DISCLOSURE DOCUMENT SUMMARIZES CERTAIN PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THE DISCLOSURE DOCUMENT AND ALL AGREEMENTS CAREFULLY.

If Workout Anytime Franchising Systems, LLC offers you a franchise, it must provide this Disclosure Document to you fourteen [14] calendar days before you sign a binding agreement with, or make a payment to, the franchisor or an affiliate in connection with the proposed franchise sale. See Exhibit "G" to this Disclosure Document to determine whether your State requires delivery of these materials sooner than the referenced fourteen [14] calendar day period.

If Workout Anytime Franchising Systems, LLC does not deliver this Disclosure Document on time, or if it contains a false or misleading statement, or a material omission, a violation of federal law and state law may have occurred and should be reported to the Federal Trade Commission, Washington, D.C. 20580 and, if applicable, to your State agency on Exhibit "D" to this Disclosure Document.

The name, principal business address, and telephone number of each "franchise seller" offering the franchise are as follows:

Randy Trotter
4514 Chamblee Dunwoody Road, Suite 428
Dunwoody, Georgia, 30338
(770) 403-7203

Steven C. Strickland,
4514 Chamblee Dunwoody Road, Suite 428
Dunwoody, Georgia, 30338
(404) 915-4762

The Issuance Date of this Disclosure Document is April 1, 2013.

Workout Anytime Franchising Systems, LLC, authorizes Paul S. Suda, Esq., 1362 Salem Drive, Alpharetta, Georgia 30009 to receive service of process (i.e. service of summons or litigation pleadings) for Workout Anytime Franchising Systems, LLC in the State of Georgia. Your State may require that we designate an agent in your State who is authorized to receive service of process in connection with actions arising under your State's laws. See Exhibit "D" attached to this Disclosure Document (if applicable) to determine if we have appointed an agent authorized to receive process in your State.

I received on the date appearing adjacent to my signature below a Franchise Disclosure Document of Workout Anytime Franchise Corporation dated April 1, 2013 which included the Exhibits (Exhibits "A" through "N") listed below:

A.   Franchise Agreement
B.   Personal Guaranty
C.   Non-Competition and Non-Solicitation Agreement
D.   State Administrators and Agents for Service of Process
E.   Personal Data Disclosure and Franchisee Ownership Information Form
F.   Instructions
G.   State Specific Addendum (as applicable)
H.   Financial Statements
I.   Operation's Manual
J.   List of Franchisees
K.   Terminated Franchises
L.   Territory Description
M.   Lease Amendment
N.   Receipts

Date FDD Received:

_April 24_, 201_3_
Date

_____
Prospective Franchisee

_Jeffery L. Londis_
Printed Name

# RECEIPT OF WORKOUT ANYTIME FRANCHISING SYSTEMS, LLC
# APRIL 1, 2013 FINANCIAL DISCLOSURE DOCUMENT

THIS DISCLOSURE DOCUMENT SUMMARIZES CERTAIN PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THE DISCLOSURE DOCUMENT AND ALL AGREEMENTS CAREFULLY.

If Workout Anytime Franchising Systems, LLC offers you a franchise, it must provide this Disclosure Document to you fourteen [14] calendar days before you sign a binding agreement with, or make a payment to, the franchisor or an affiliate in connection with the proposed franchise sale. See Exhibit "G" to this Disclosure Document to determine whether your State requires delivery of these materials sooner than the referenced fourteen [14] calendar day period.

If Workout Anytime Franchising Systems, LLC does not deliver this Disclosure Document on time, or if it contains a false or misleading statement, or a material omission, a violation of federal law and state law may have occurred and should be reported to the Federal Trade Commission, Washington, D.C. 20580 and, if applicable, to your State agency on Exhibit "D" to this Disclosure Document.

The name, principal business address, and telephone number of each "franchise seller" offering the franchise are as follows:

Randy Trotter                                    Steven C. Strickland,
4514 Chamblee Dunwoody Road, Suite 428           4514 Chamblee Dunwoody Road, Suite 428
Dunwoody, Georgia, 30338                         Dunwoody, Georgia, 30338
(770) 403-7203                                   (404) 915-4762

The Issuance Date of this Disclosure Document is April 1, 2013.

Workout Anytime Franchising Systems, LLC, authorizes Paul S. Suda, Esq., 1362 Salem Drive, Alpharetta, Georgia 30009 to receive service of process (i.e. service of summons or litigation pleadings) for Workout Anytime Franchising Systems, LLC in the State of Georgia. Your State may require that we designate an agent in your State who is authorized to receive service of process in connection with actions arising under your State's laws. See Exhibit "D" attached to this Disclosure Document (if applicable) to determine if we have appointed an agent authorized to receive process in your State.

I received on the date appearing adjacent to my signature below a Franchise Disclosure Document of Workout Anytime Franchise Corporation dated April 1, 2013 which included the Exhibits (Exhibits "A" through "N") listed below:

A.  Franchise Agreement
B.  Personal Guaranty
C.  Non-Competition and Non-Solicitation Agreement
D.  State Administrators and Agents for Service of Process
E.  Personal Data Disclosure and Franchisee Ownership Information Form
F.  Instructions
G.  State Specific Addendum (as applicable)
H.  Financial Statements
I.  Operation's Manual
J.  List of Franchisees
K.  Terminated Franchises
L.  Territory Description
M.  Lease Amendment
N.  Receipts

Date FDD Received:

_April 24_, 201 3
Date

_____
Prospective Franchisee

_Troy D. Bage_
Printed Name

**EXHIBIT A**

**FRANCHISE AGREEMENT**



Date: _11/27/2019_____ 20[●]

**(1) Workout Anytime Franchising Systems, LLC**

The Franchisor

**(2) [     ]**

The Franchisee
WOA Athens AL, LLC._____

**Franchise Agreement for the Operation of a**

**Workout Anytime® Club Located at:**

WOA Athens AL: 611 US 72 Athens, AL  35611
_____

TABLE OF CONTENTS

SECTION 1 - GRANT OF LICENSE ....................................................................................2

SECTION 2 - FRANCHISE TERM AND RENEWAL .........................................................3

SECTION 3 - INITIAL FRANCHISE FEE ...........................................................................4

SECTION 4 - CONTINUING FEES .....................................................................................4

SECTION 5 - ADVERTISING AND PROMOTION ............................................................7

SECTION 6 - RECORDS - LATE PAYMENT CHARGE ....................................................8

SECTION 7 - SERVICES AND ASSISTANCE PROVIDED BY THE FRANCHISOR .........9

SECTION 8 - LOCATION OF HEALTH CLUB FACILITY; CONSTRUCTION AND OPENING FOR BUSINESS; LEASE OR MORTGAGE ...................................................11

SECTION 9 - MAINTENANCE AND UPGRADING THE CLUB ...................................12

SECTION 10 - CONFIDENTIAL OPERATIONS MANUAL .............................................13

SECTION 11 - FRANCHISEE'S DUTIES AND OBLIGATIONS ......................................13

SECTION 12 - PURCHASE OF EQUIPMENT, INVENTORY AND SUPPLIES ...............18

SECTION 13 - INSURANCE AND INDEMNIFICATION ................................................19

SECTION 14 - TRADEMARKS AND TRADE SECRETS .................................................20

SECTION 15 – LOSS, CONDEMNATION AND CASUALTY .........................................22

SECTION 16 - RESTRICTIONS ON COMPETITION .....................................................23

SECTION 17 - TERMINATION .........................................................................................24

SECTION 18 – TRANSFER AND ASSIGNMENT ............................................................29

SECTION 19 - MISCELLANEOUS ...................................................................................33

EXHIBIT A - PERSONAL GUARANTEE ...........................................................................1

EXHIBIT B - NON-COMPETITION AND NON-SOLICITATION AGREEMENT ..............1

**Workout Anytime Franchising Systems, LLC**

**FRANCHISE AGREEMENT**

This Franchise Agreement (this "Agreement") is entered into between Workout Anytime Franchising Systems, LLC, a Georgia Limited Liability Company ("Workout Anytime", "Franchisor", "us" or "we"), whose principal address is 2325 Lakeview Parkway, Suite 200, Alpharetta, Georgia, 30009, and

WOA Athens AL, LLC.
_____, a _____ ("Franchisee" or "you")
                          franchisee

**LET ALL PARTIES KNOW**

Workout Anytime owns a unique system for opening and operating a twenty-four (24) hour health and fitness facility  for the general public through a uniform system which has high standards of service, uses quality equipment, and operates under the business format created and developed by Workout Anytime Franchising Systems, LLC known as the Workout Anytime Franchise System (the "System");

The distinguishing characteristics of the System include the name Workout Anytime, workable and functional interior and exterior designs, confidential operating procedures, standards and specifications for equipment, services, products, and both management and marketing programs. All distinguishing characteristics may be changed, improved, and further developed by Workout Anytime. They are known as "Trade Secrets" and are designated by and identified with the marks described in this Agreement;

Workout Anytime identifies itself by means of certain trade names, service marks, logos, emblems, and indicia of origin, including the Federal registered trademarks "Workout Anytime" and "24/7 Get Fit", and the common law rights associated with "Workout Anytime 24/7", along with other trade names and service marks which are now, or may be in the future, designated by Workout Anytime in writing for use with the System (the "Marks");

Workout Anytime continues to use, develop and control the use of the Marks to identify for the public the source of services and products marketed under the System, and which represent the System's high standards of quality, cleanliness, appearance and service;

You recognize the benefits to be derived from being identified with the System. You also recognize the value of the Marks and the continued uniformity of image to you, Workout Anytime, and other franchisees of Workout Anytime. You understand the importance to the System of Workout Anytime's high and uniform standards of quality, cleanliness, appearance and service, and further recognize the necessity of opening and operating your Workout Anytime health club facility in conformity within the System;

You recognize that to enhance the value of the System and goodwill associated with it, this Agreement places detailed obligations on you, including adherence to Workout Anytime's reasonable present and future requirements regarding the types of services offered, advertising, physical facilities, operational techniques, and related matters; and,

You wish to be assisted, trained, and franchised to operate a health club facility pursuant to the provisions, and at the location within the territory specified in, this Agreement (the "Territory"). You have also had an adequate opportunity to be thoroughly advised of the terms and conditions of this Agreement by counsel or an advisor of your own choosing.

- 1 –

**THEREFORE,** you and us, intending to be legally bound and in consideration of mutual agreements, covenants and promises contained in this Agreement, agree as follows:

## SECTION 1 - GRANT OF LICENSE

1.1     Subject to the limitations contained in this Agreement, Workout Anytime grants to you, during the Term (as defined below) the rights and license (the "License") to:

A.   Operate a health club facility that uses the System (the "Club" or the "Franchised Business") upon the terms and conditions of this Agreement, in one (1) single territorial area and at one (1) location as described in Exhibit "L" (the "Territory");

B.   Use the Marks at the Club and to utilize the System; and,

C.   Offer and market at the Club related services and products (optional) that have been approved by Workout Anytime.

1.2     During the Term, Workout Anytime will not use or license any of the Marks licensed to you in connection with the operation of any other Club within your Territory described in Exhibit "L".

Except as expressly provided in this Agreement, Franchisee has no right to exclude, control or impose conditions on the location, operation, or otherwise of present or future Workout Anytime® (or any other brand) units or distribution channels of any type, franchised or company-owned, regardless of their location or proximity to the Club. Franchisee does not have any rights with respect to other and/or related businesses, services, and/or products, in which Franchisor or any Franchisor-related persons or entities may be involved, now or in the future.  Any rights not expressly granted to the Franchisee are reserved to the Franchisor.  Such rights reserved to the Franchisor include but are not limited to the following:

A.   Grant other franchises or licenses and to operate company or affiliate owned fitness centers within private establishments located within the Territory, if access to those centers is limited to employees of the business, or transient guests of the business;

B.   Establish, and license others to establish, Workout Anytime® businesses at any location outside the Territory, notwithstanding their proximity to the Territory or their actual or threatened impact on sales at Franchisee's Club;

C.   Own and operate health and fitness businesses under different marks at any location(s) inside or outside of the Territory, or license to others the right to own and operate health and fitness businesses under different marks at any location(s) inside or outside of the Territory;

D.   Sell and distribute, directly or indirectly, or license others to sell and distribute, directly or indirectly, any products, services or merchandise, from any location or to any purchaser, through any channel or method of distribution (including, but not limited to, sales made by or through mail order and/or on the Internet), so long as such sales are not conducted from a Workout Anytime® business operated from a location inside the Territory;

- 2 –

E.  In the event Franchisor or its affiliates acquire another chain or system, or Franchisor or its affiliates are acquired by another chain or system, that operates and/or franchises stores or retail outlets that are the same or similar to Workout Anytime® businesses in that they have a substantially similar concept and/or offer for sale similar products or services, Franchisor or its affiliates may establish, acquire or operate, or license others to establish and operate, stores and retail outlets under other systems or other marks, which stores or retail outlets may offer or sell products or services that are the same as, or similar to, the products and services offered from a Workout Anytime® business, and which stores or retail outlets may be located within or outside the Territory, despite these stores' proximity to Franchisee's Club or their actual or threatened impact on sales at Franchisee's Club;

F.      Own or operate Clubs offering the same or similar services under the Marks in "non-traditional venues" such as hotels, airports, schools, or hospitals in a Franchisee's Territory; and

G.  Engage in any other activities not expressly prohibited by this Agreement.

### SECTION 2 - FRANCHISE TERM AND RENEWAL

2.1    **Initial Term.**

The term of this Agreement (the "Initial Term")  shall commence on the date hereof, and shall expire either at midnight on the day preceding the fifteenth (15th) anniversary thereof unless terminated sooner in accordance with the provisions for termination of this Agreement

2.2    **Renewal and Renewal Conditions.**

Franchisee may, at its option, renew this franchise for additional periods of five (5) years each, provided that, at the time of renewal:

A.  the Franchisee gives the Franchisor written notice of such election to renew not less than six (6) months nor more than twelve (12) months prior to the end of the Term;

B.  the Franchisee executes the Franchisor's then current standard form of Franchise Agreement, which may include, without limitation, a higher royalty fee and a higher advertising contribution than that contained in this agreement;

C.  subject to any limitations imposed by applicable law, the Franchisee executes a general release in a form prescribed by the Franchisor of any and all claims against the Franchisor and its subsidiaries and affiliates, and their respective officers, directors, members, managers, agents and employees;

D.  the Franchisee is not in default of any provision of this agreement, or any amendment hereof or successor hereto, or any agreement between the Franchisee and the Franchisor, or any subsidiary or affiliate of the Franchisor, and the Franchisee has substantially performed all of Franchisee's obligations throughout the Term;

E.  Franchisee has paid or otherwise satisfied all monetary obligations owed by the Franchisee to the Franchisor and its subsidiaries and affiliates and the Franchisee has timely paid or otherwise satisfied these obligations throughout the term of the Agreement;

- 3 -

F.  the Franchisee agrees, at its sole cost and expense to reimage, renovate, refurbish and modernize the Club, within the time frame required by the Franchisor, including the building design, parking lot, landscaping, equipment, signs, interior and exterior décor items, fixtures, furnishings, trade dress, color scheme, presentation of trademarks and service marks, supplies and other products and materials to meet the Franchisor's then-current standards, specifications and design criteria for the Club, as contained in the then-current Franchise Agreement, Manual, or otherwise in writing, including, without limitation, such structural changes, remodeling and redecoration and such modifications to existing improvements as may be necessary to do so; and

G.  the Franchisee shall have paid to the Franchisor, a renewal fee of Two Thousand Five Hundred ($2,500.00) Dollars (the "Renewal Fee").

## SECTION 3 - INITIAL FRANCHISE FEE

3.1   In consideration of the Franchisee receiving the opportunity to establish the Workout Anytime franchised business, and to conduct it at the Club premises, the Franchisee shall pay toto Franchisor, upon the execution of this Agreement, an initial, non-recurring, non-refundable franchise fee in the amount of Thirty-Five Thousand ($35,000) Dollars (the "Initial Franchise Fee").  The Initial Franchise Fee shall be deemed to be fully earned by the Franchisor upon the execution of this Agreement by the Franchisor and in consideration of the grant by it to the Franchisee to establish the franchised Club as provided herein.  The Franchisee shall not be entitled to a refund of any part thereof, regardless of the date of expiration or termination of this Agreement, except as specifically provided herein.

3.2   If we agree to sell you up to three (3) Clubs, the Initial Franchise Fees for the additional Clubs, if purchased at the time you enter into our Development Agreement and initial Franchise Agreement are as follows: (i) $35,000 for the first Club; (ii) a total of $55,000 for the right to develop two (2) Clubs; and (iii) $60,000 for the right to develop three (3) Clubs.  The Clubs must be developed in accordance with the Development Schedule set forth in the Development Agreement.

If you do not enter into a Development Agreement, all future purchases of franchises will be at the then-current Initial Franchise Fee.

3.3   The amounts referred to above do not include any applicable Federal, State or Local Taxes which may be payable to the appropriate taxing authorities.

Transfer Fee: $12,500 to be paid by Steven Elliott

## SECTION 4 - CONTINUING FEES

4.1   **Continuing Monthly Royalty Fee.** On or before the tenth (10th) day of each month, commencing when you begin the pre-sale of memberships and continuing for the full term of this Agreement, you will pay the following continuing monthly royalty fee (the "Royalty Fee"):

1.   During the first five (5) years of the Initial Term, you will pay a monthly Royalty Fee of Four Hundred Ninety-Nine ($499.00) Dollars.  During the sixth (6th) through tenth

- 4 –

(10th) years of the Initial Term, you will pay a monthly Royalty Fee of Five Hundred Forty-Nine ($549.00) Dollars.  During the eleventh (11th) through the fifteenth (15th) years of the Initial Term you will pay a monthly Royalty Fee of Five Hundred Ninety-Nine ($599.00) Dollars.  During the first renewal term, if applicable, you will pay a monthly Royalty Fee of Six Hundred Forty-Nine ($649.00) Dollars; plus

2.        a monthly Royalty Fee equal to four (4%) percent of your Gross Revenues.

3.        "Gross Revenues" includes all revenue you generate from all business conducted at your Club, including but not limited to membership fees, "Rate Guaranty" or comparable fees; personal training fees, tanning bed fees, massages, and the sale and delivery of any other services, products, merchandise, and tangible property of any nature whatsoever, whether in cash or for credit, from sources paying at the club, outside the club or online and whether collected or uncollected.  "Gross Revenue" does not include the amount of any applicable sales tax imposed by federal, state, municipal, or other governmental authority if such taxes are stated separately when the customer is charged, and you pay such amounts as and when due to the appropriate taxing authority.  Also, excluded from Gross Revenues is the amount of any documented refunds, charge backs, credits, and allowances given to customers in good faith and only in accordance with our operating procedures.  All barter and exchange transactions for which you furnish services or products in exchange for goods or services to be provided by the vendor, supplier, or customer will be valued at the full retail value of the memberships bartered in exchange for the goods or services provided to you.  Gross Revenues also includes the proceeds of any business interruption insurance paid to you. Gross Revenue also includes any payments you receive from vendors.

4.2     **National Brand Development Fund Fee.**  By the tenth (10th) day of each month you will pay a monthly National Brand Development Fee equal to one (1%) percent of your monthly Gross Revenues.  Payment of the National Brand Development Fee will commence when you begin the pre-sale of memberships to your Club.  We reserve the right to increase the monthly National Brand Development Fee to a maximum of two (2%) percent upon thirty (30) days' advance written notice.  Such monies will be utilized for the design and development of advertising, both local and national advertising costs, public relations, trade shows and conventions, and those other costs associated with both developing and promoting the System and the Workout Anytime brand.

4.3     Notwithstanding any designation by you as to what your continuing Monthly Royalty Fee is comprised of or how it has been calculated, we have the sole discretion to apply such payment(s) made by you towards any of your indebtedness for Monthly Processing Fees, advertising and promotional contributions, purchases, interests, collection costs or any other indebtedness.

4.4     **Technology Fee and Software License Fee**. You will pay a monthly Technology Fee of Five Hundred Ninety-Five ($595.00) Dollars by the tenth (10th) day of each month to compensate us for our expenses of developing and managing the franchisor's website, the franchisee's specific web page which links from the franchisor's website, as well as your Club's email platform (including up to five [5] discrete email addresses) and other technology we determine important in the operation of your Club.  Payment of the Technology Fee shall commence when you begin the pre-sale of memberships for your Club.  You also must install certain software on your computer system as we determine from time to time from approved suppliers and pay any necessary software license fees.

- 5 –

4.5     **Payment Processing Vendor and Fees.**   You hereby authorize the Franchisor's approved third-party vendor (presently being ABC Financial Services, Inc.) to deduct from any monies it collects on your behalf the amount of all fees you are obligated to pay us and/or our affiliates on the due date of such fee(s). All Gross Revenue derived from the sale of all products and services at your Franchised Club must be processed through Franchisor's approved third-party payment processor. You also authorize said vendor to supply us with any information it may have dealing with the operation of your Club and account. To effectuate the terms of this Section, and to ensure the proper and timely remittance of all fees due the Franchisor under this Agreement, you hereby irrevocably constitute and appoint Workout Anytime your true and lawful attorney-in-fact to permit our review and, as may become necessary, our amendment of your account with that third-party vendor employed to collect your monthly membership monies. This power of attorney is irrevocable and coupled with an interest and shall survive the termination of your franchise.

4.6     As security for all monetary and other obligations of Franchisee to Franchisor or its affiliates as set forth in this Agreement, Franchisee grants to Franchisor a first priority security interest in all assets of Franchisee in the Club, including entire club membership database for current and former members, Franchisee's monthly recurring draft, all furniture, fixtures, machinery, equipment, inventory and all other property (tangible or intangible), now owned or later acquired by Franchisee used in connection with the franchised health club business and wherever located as well as all contractual and related rights of Franchisee under this Franchise Agreement and all other agreements between the parties. Franchisee agrees to execute such financing statements, continuation statements, notices of lien, assignments or other documents as may be required to perfect and maintain Franchisor's security interest described in this paragraph and authorize us to file in the public records of the county in which your Club may be located one (1) or more financing statements (i.e., UCC-1 financing statement) to evidence this security interest. Franchisor may, in its discretion, enter a subordination agreement, in form and substance satisfactory to it, whereby it will subordinate its security interest to: (a) the security interest of a reputable institutional lender relating to a loan to Franchisee for reasonable working capital purposes; (b) the purchase money security interest of an approved equipment vendor for any equipment purchased or leased by Franchisee and used in the operation of the Franchised Business; and (c) the purchase money security interest of a supplier of approved products sold at the Club. Franchisee shall pay all filing fees and costs for perfecting Franchisor's security interest.

4.7     Each month, within ten (10) days of a written request by us, you will supply a financial statement to us of the previous month's membership activities, including the number of new members, renewing members, cancelled members and current active enrollment as well as the amount of sales generated from the Club as a consequence of any of your actions in any regard or aspect, including, but not limited to, membership sales revenue, personal training revenue, and revenue associated with the sale of merchandise and other products, including supplements, food and liquids/beverages. We may also contact you by telephone or e-mail to collect this information.

4.8     Subject to your receipt of business interruption insurance payments, if you are unable to operate the Club due to damage or loss to the Club caused or created by a casualty, act of God, condemnation, or other condition over which you have no control, then the Royalty Fee will be waived for a period no greater than six (6) months commencing with the month in which such damage or loss occurs.

4.9     **Alignment Deficiency Fee.**  In the event of default of its obligations under this Agreement by Franchisee, at Franchisor's sole discretion, and without waiver of any of Franchisor's rights under this Agreement, in lieu of the termination of this Agreement, Franchisor may impose a fee (the "Alignment Deficiency Fee") in an amount up to One Thousand Five Hundred ($1,500) Dollars per event of default.  Franchisee must pay the Alignment Deficiency Fee within three (3) days of Franchisor's demand.

4.10    **Computer System Corruption Fee.**  If Franchisee fails to maintain computer virus protection software in accordance with Franchisor's requirements and the Manual, on any computer it uses to access Franchisor's computer network, and any virus, malware or similar issues are transmitted to Franchisor's computer network as a result of Franchisee's failure, Franchisee shall pay a fee in the amount of the fees charged by outside vendors and verifiable internal expenses in relation to the issue per occurrence.

## SECTION 5 - ADVERTISING AND PROMOTION

5.1     Commencing on the date you open the Club for business and continuing throughout the term, you will spend a minimum of Two Thousand ($2,000.00) Dollars per month on advertising, marketing and otherwise promoting your Club (the "Local Advertising Expenditure"). Workout Anytime will offer recommendations as to the type, manner, and time frame to maximize the benefit of your advertising. Workout Anytime has the right to require you to pay the Local Advertising Expenditure directly to it and if so required, Workout Anytime will make such expenditures as it deems reasonably necessary to promote your Club within your territory. You are required to spend Four Thousand ($4,000) Dollars per month to advertise locally during the initial pre-sale, start-up and grand opening phase to help establish name recognition in your area. You must submit proof of your expenditures for Local Advertising to Workout Anytime upon request.

5.2     Franchisor will make available to you advertising and promotional materials for the Club which are used by us, our affiliates and other franchisees of the System. We will provide you with a sample of each type of advertising and promotion material at no charge via web download, or other means of transmission we deem appropriate. If you want additional copies you must pay duplication or printing costs. You may develop advertising materials for your own use, at your own cost, subject to Franchisor's written approval, which we will provide within ten (10) days of your submission of the proposed materials.  If we have not approved the use of the materials within ten (10) days, they are deemed not approved. Franchisor reserves the right to reject or stop your advertising if it is deemed inappropriate or not in keeping with the standards and quality of the brand.

5.3     Franchisor has the right to approve the media in which you propose to advertise.  You must submit to us in advance, any proposal describing the media in which you propose to advertise, providing sufficient detail to permit us to evaluate it.  We will have ten (10) days to approve or disapprove the use of our materials in the media you propose.  If we have not approved the use of the materials within ten (10) days, they are deemed not approved.

5.4     You will install and, during the term of this Agreement maintain an outdoor sign in a prominent location in accordance with Franchisor's sign specifications, or as we otherwise approve in writing, unless you are prohibited from doing so by applicable laws and regulations. You will use your best efforts to obtain any permit or variance required to allow the installation and maintenance of an outdoor sign meeting Franchisor's specifications so long as it does not impose any undue economic