# EXHIBIT D



**Lisa Wolgast**
404-504-7748
lwolgast@mmmlaw.com
www.mmmlaw.com

June 14, 2023

**VIA EMAIL** (Jonathan.Labukas@quarles.com)
Jonathan Labukas, Esq.
Quarles & Brady, LLP
2020 K Street, NE, Suite 400
Washington, DC 20006

RE:   Those certain Franchise Agreements by and between Workout Anytime Franchising Systems, LLC ("Franchisor") and WOA Athens AL, LLC, WOA Athens TN, LLC, WOA Dayton, LLC, WOA East Ridge TN, LLC, WOA Lafayette, GA, LLC, WOA Northshore, LLC and WOA Sumter Fitness, LLC (collectively, "Franchisees")

Jonathan:

I write in response to your June 2, 2023 email regarding the above-referenced Franchisees, which was sent in response to my May 19, 2023 letter.

Franchisees dispute your contention that my May 19 letter does not comply with Section 17.1 of the Franchise Agreements. Section 17.1 provides, in part, that "[i]f [franchisee is] in compliance with this Agreement and Franchisor materially breaches this Agreement and fails to cure the breach within sixty (60) days after a written notice of the breach is delivered to Franchisor by [franchisee], [franchisee] may terminate this Agreement[.]" (Franchise Agreements, § 17.1.) Nothing in the Franchise Agreements require Franchisees to provide instructions for Franchisor on how to cure any defaults. Further, not all defaults are curable and the fact that a default is not curable, does not mean that a breach did not occur or that Franchisees' notice is defective. The notice requirement serves many purposes, including to give Franchisor time to prepare for the eventual termination of the Franchise Agreements. *See All. Metals, Inc., of Atlanta v. Hinley Indus., Inc.*, 222 F.3d 895, 906 (11th Cir. 2000) (explaining that "even if the alleged breach proved to be incurable…[a]t a minimum, receiving notice would have given Alliance Atlanta thirty days to brace itself for Hinley's transition from compatriot to competition.").

Without waiving Franchisees' contention that my May 19 letter is effective and put Franchisor on notice of its breaches, Franchisees provide the following additional details regarding Franchisor's breaches. Pursuant to the Franchise Agreements, Franchisor agreed to "make commercially reasonably efforts to negotiate favorable prices and terms with major suppliers and allow you to utilize such centralized purchasing system." (*Id.*, § 7.3(J).) Rather than obtaining favorable prices for Franchisees, Franchisor required Franchisees to purchase all

equipment from its affiliate, CFP, at prices estimated 14% to 33% higher than the price paid by any other party to Matrix for the same equipment. This material breach of the Franchise Agreements applies equally to all Franchisees. Furthermore, the equipment that Franchisor and CFP required Franchisees to purchase is of sub-par quality. Each Franchisee experienced rust and other defects within a year of purchasing equipment from CFP, and each has incurred additional expense attempting to repair the equipment. Thus, Franchisor materially breached each of the Franchise Agreements by requiring Franchisees to buy sub-par equipment at above-market prices.

Furthermore, Franchisor requires Franchisees to use ABC as its payment processor, but failed to negotiate favorable prices and terms with that vendor. The fees charged by ABC to Franchisees, as part of the Workout Anytime system, are higher than what ABC charges to other similar business. Upon information and belief, Franchisor or its affiliates receive a fee, royalty or other kickback from ABC out of the fees paid by Franchisees to ABC. Therefore, Franchisor further materially breached the Franchise Agreements by failing to obtain favorable pricing from ABC.

The Franchise Agreements also provide that Franchisor will provide "a service number and the Workout Anytime email platform available for your ongoing inquiries and consultations with Workout Anytime representatives." (*Id*., § 7.3(G).) Franchisor failed to timely respond to Franchisees' requests submitted via that platform. For example, on March 10, 2023 Franchisee WOA Sumter Fitness, LLC ("Sumter") submitted a variance request via the Workout Anytime email platform in relation to expanding the Club to remain competitive in its market. On March 13, 2023, Franchisor's representative requested pictures from Sumter of the area in conjunction with the Club, which pictures were provided the same day. On April 11, 2023, having heard nothing from Franchisor, Sumter followed up, explaining that it had little time to get the construction done in order to compete with a nearby Planet Fitness. It was not until April 25, 2023, after John Greff emailed Steve Strickland directly about his concerns, that Franchisor finally approved Sumter's variance request.

Similarly, on November 24, 2021, Franchisee WOA East Ridge TN, LLC ("East Ridge") submitted a request for variance to purchase an Echelon Reflect Mirror. When East Ridge followed up about the request on December 10, 2021, Franchisor's representative claimed to have never received the request. Despite sending the variance request a second time, East Ridge never received a response from Franchisor as to whether the request was approved or denied. Thus, Franchisor materially breached the Franchise Agreements because it failed to respond to ongoing inquiries and consultations, particularly where Franchisees cannot undertake certain actions—for the benefit of both Franchisor and Franchisees—without Franchisor's consent.

Finally, in addition to the requirement that Franchisees purchase all equipment from CFP, the Franchise Agreements also require Franchisees to use certain other approved vendors. For

example, East Ridge was required to use a particular contractor because East Ridge was told by Franchisor that the contractor had built approximate 30 other Workout Anytime clubs and was the only approved vendor in Tennessee with experience building Workout Anytime clubs. This contractor's workmanship was shoddy and it did not properly construct the East Ridge club, including failing to install basins for the showers and failing to seal the tile work, and East Ridge was forced to incur additional expect to correct these defects. Only after using this Franchisor-required contractor and after the contractor completed its work did East Ridge learn that the contractor was not licensed in the state of Tennessee. Thus, Franchisor breached the Franchise Agreement and its duty of good faith and fair dealing by failing to provide an approved, licensed contractor for the construction of East Ridge's club.

As explained above and in my May 19, 2023 letter, Franchisor repeatedly, materially breached each of the Franchise Agreements. Thus, the sixty (60) day cure period began on May 19, 2023. Please be advised that, if Franchisor does not timely cure its breaches, to the extent such breaches are curable, Franchisees will exercise the rights and remedies available to them as provided in the Franchise Agreements and/or applicable law, including without limitation, terminating the Franchise Agreements.

We remain hopeful that this matter can be resolved without having to resort to formal legal action. Nothing in this letter shall be construed as an admission of liability of any kind by Franchisees. This letter is sent without prejudice to any rights or remedies that Franchisees have or may have against Franchisor, CFP or any other person or entity.

Please let me know if you would like to discuss this matter.

Sincerely,

Lisa Wolgast