| | |
|---|---|
| **Reliable Lloyds Insurance Company**<br>A Stock Insurance Company<br>11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244<br>**FLEET AUTO RENTAL INSURANCE**<br>**COMMERCIAL AUTO INSURANCE DECLARATIONS**<br>**GEORGIA**<br>**THIS DECLARATIONS IS ATTACHED TO AND FORMS PART OF THE**<br>**COMMERCIAL AUTO INSURANCE POLICY.** | POLICY NUMBER<br>FAR3381010<br><br>POLICY PERIOD<br><br>Effective From   05/15/2021   To   01/01/2023   at 12:01 AM Standard Time |
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | NAMED INSURED'S BUSINESS<br>Commercial Auto Rental<br><br>FORM OF NAMED INSURED'S BUSINESS<br>Corporation |

| SCHEDULE OF COVERAGES AND COVERED AUTOS |
|---|

This policy provides only those coverages listed below with a corresponding limit of insurance.  Each coverage will apply only to those autos shown as covered autos by the policy.  The stacking of coverage among multiple policies and stacking of coverage by vehicles within one policy are not permitted.

| LIABILITY INSURANCE | |
|---|---|
| COVERAGES | LIMIT OF INSURANCE<br>THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS |
| TOTAL LIABILITY | $25,000 per person; $50,000 per accident; $25,000 property damage, with a $15,000 Self-Insured Retention |
| AUTO MEDICAL PAYMENTS | N/A |
| UNINSURED/UNDERINSURED MOTORISTS | N/A |

| PHYSICAL DAMAGE INSURANCE | | |
|---|---|---|
| COMPREHENSIVE COVERAGE | Actual Cash Value or Cost of Repair or Replacement, whichever is less, minus the Deductible shown | Not Covered |
| COLLISION COVERAGE | | Not Covered |
| FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION<br>FARI0008P-0718, FARI0156E-0718, FARI0166E-0520, FARI0171E-0718,<br>FARI0356E-0420, FARI0169E-0718, FARI0170E-0718, NT0092-1015,<br>NIP1982-R0213 | PREMIUM | Based on reported monthly usage |
| | ADDITIONAL PREMIUM] | Based on reported monthly usage |
| | SURPLUS LINES TAX 4% | Based on reported monthly usage |
| | **TOTAL** | Based on reported monthly usage |
| MINIMUM EARNED PREMIUM AMOUNT | N/A | PREMIUM DEPOSIT AMOUNT | N/A |

**This contract is registered and delivered as a surplus lines coverage under the Surplus Lines Insurance Law, O.C.G.A. Chapter 33-5.**

*Laurie J. Harris*

08-06-21

Authorized Representative (if required)                                                  Date

*Surplus Lines Broker:*
**Laurie J. Harris**
**License # 668972**
**TrackSure Insurance Agency, Inc.**
**2677 N. Main St., Suite 600**
**Santa Ana, CA 92705**

FARI0039D-0520

# Reliable Lloyds Insurance Company

A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596  305.253.2244

## FLEET AUTO RENTAL INSURANCE

## COMMERCIAL AUTO INSURANCE POLICY

This Fleet Auto Rental Insurance Commercial Auto Insurance Policy (the policy) is not a standard insurance policy. This program has a unique rating structure based on the specific timeframes that covered **autos** are actively driven as reported through telematic devices. This policy also contains very strict eligibility requirements for persons to become **members** of the **named insured's auto** rental program.

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this policy, the words "you" and "your" refer to the **named insured**. The words "we", "us" and "our" refer to the company providing this insurance, Reliable Lloyds Insurance Company.

Other words and phrases which are bolded have specific meanings as outlined in **SECTION V – DEFINITIONS**.

### SECTION I – COVERED AUTOS

**A. Description of Covered Autos**
1. **Autos** you own (and for Liability Coverage any **trailers** you don't own while attached to power units you do own). This includes those **autos** you acquire ownership of after the policy begins.
2. **Autos** you do not own that are used in connection with your business. This includes:
   a. **Autos** owned by your **employees** in connection with your business;
   b. **Autos** borrowed or hired by you to be used in connection with your business;
   c. **Autos** used as substitutes for covered **autos** and used in connection with your business.

**B. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**
The following types of vehicles are also covered **autos** for Liability Coverage:
1. **Trailers** with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.
2. **Mobile equipment** while being carried or towed by a covered **auto**.

**C. Any auto you do not own while used with the permission of its owner as a temporary substitute for a covered auto you own that is out of service because of:**
1. Breakdown;
2. Repair;
3. Servicing;
4. **Loss**; or
5. Destruction.

### SECTION II – LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto** within the **term of coverage**. We will also pay all sums an **insured** legally must pay as a **covered pollution cost or expense** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of covered **autos**. However, we will only pay for the **covered pollution cost or expense** if there is either **bodily injury** or **property damage** to which this insurance applies that is caused by the same **accident**.

We have the right and duty to defend any **insured** against a **suit** asking for such damages or a **covered pollution cost or expense**. However, we have no duty to defend any **insured** against a **suit** seeking damages for **bodily injury** or **property damage** or a **covered pollution cost or expense** to which this insurance does not apply. We may investigate and settle any claim or **suit** as we consider appropriate. Our duty to defend and/or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments, settlements or the **litigation expenses**. Our duty to defend will immediately terminate when the Liability Coverage Limit of Insurance is exhausted by the payments set forth above.

1. **Who Is An Insured**
   The following are **insureds**:
   a. You for any covered **auto**;
   b. Any of your **employees** or agents;
   c. Any **member** operating a covered **auto** with your consent related to the **named insured's auto** rental program within the **term of coverage**; or
   d. Anyone else while using, with your permission, a covered **auto** you own, hire or borrow except:
      (1) The owner or anyone else from whom you hire or borrow a covered **auto**. This exception does not apply if the covered **auto** is a **trailer** connected to a covered **auto** you own.
      (2) Your **employee** if the covered **auto** is owned by that **employee** or a member of his or her household.
      (3) Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing, parking or storing **autos** unless that business is yours.

FARI0008P-0718

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1

24

**(4)** Anyone other than your **employees**, members (if you are a limited liability company) or a lessee or borrower or any of their **employees**, while moving property to or from a covered **auto**.

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered **auto** owned by him or her or a member of his or her household.

**e.** Anyone liable for the conduct of an **insured** described above but only to the extent of that liability.

**2. Coverage Extensions**

**a.** Supplementary Payments

We will pay for an **insured**:

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an **accident** we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any **suit** against an **insured** we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by an **insured** at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the **insured** in any **suit** against an **insured** we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against an **insured**.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any **suit** against an **insured** we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b.** Out-Of-State Coverage Extensions

While a covered **auto** is not located in the state where it is registered, we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered **auto** is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property;

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered **auto** is being used.

We will not pay anyone more than once for the same elements of **loss** because of these extensions.

**B. Exclusions**

This insurance coverage does not apply to any of the following:

**1. Expected Or Intended Injury**

**Bodily injury** or **property damage** expected or intended from the standpoint of an **insured**.

**2. Contractual**

Liability assumed under any contract or agreement. However, this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an **insured contract** provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement; or

**b.** That an **insured** would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the **named insured** or the **named insured's** insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

**Bodily injury** to:

**a.** An **employee** of the **named insured** arising out of and in the course of:

**(1)** Employment by the **named insured**; or

**(2)** Performing the duties related to the conduct of the **named insured's** business; or

**b.** The spouse, child, parent, brother or sister of that **employee** as a consequence of paragraph **a.** above.

This exclusion applies:

**(1)** Whether the **named insured** may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, this exclusion does not apply to **bodily injury** to domestic **employees** not entitled to workers' compensation benefits or to liability assumed by the **named insured** under an **insured contract**. For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Care, Custody Or Control**

**Property damage** to or **covered pollution cost or expense** involving property owned or transported by an **insured** or in an **insured's** care, custody or control. However, this exclusion does not apply to liability assumed under a sidetrack agreement.

**6. Handling Of Property**

**Bodily injury** or **property damage** resulting from the handling of property:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a.** Before it is moved from the place where it is accepted by an **insured** for movement into or onto the covered **auto**; or

**b.** After it is moved from the covered **auto** to the place where it is finally delivered by an **insured**.

**7.** **Movement Of Property By Mechanical Device**
**Bodily injury** or **property damage** resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered **auto**.

**8.** **Operations**
**Bodily injury** or **property damage** arising out of the operation of:

**a.** Any equipment listed in paragraphs **5.b.** and **5.c.** of the definition of **mobile equipment** in **SECTION V – DEFINITIONS**; or

**b.** Machinery or equipment that is on, attached to, or part of a land **vehicle** that would qualify under the definition of **mobile equipment** in **SECTION V – DEFINITIONS** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**9.** **Pollution**
**Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered **auto**;

**(2)** Otherwise in the course of transit by or on behalf of an **insured**; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered **auto**;

**b.** Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by an **insured** for movement into or onto the covered **auto**; or

**c.** After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by an **insured**.

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered **auto** or its parts, if:

**(1)** The **pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and

**(2)** The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in paragraphs **5.b.** and **5.c.** of the definition of **mobile equipment** in **SECTION V – DEFINITIONS**. Paragraphs **b.** and **c.** above of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon a covered **auto** if:

**(a)** The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

**10.** **War**
**Bodily injury** or property **damage** arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**11.** **Racing**
Any covered **auto** while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered **auto** is being prepared for such a contest or activity.

**12.** **Public Or Livery Conveyance**
**Bodily injury** or **property damage** arising out of the operation of any covered **auto** as a **public or livery conveyance**.

**13.** **Additional Exclusion**
Any **insured**:

**a.** While operating a covered **auto** while that **insured** is under the influence of:

**(1)** Alcohol; or

**(2)** A controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include, but are not limited to, cocaine, LSD, marijuana and all narcotic drugs.

This exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** Who causes **bodily injury** or **property damage** while committing a felony.

**c.** Who causes **bodily injury** or **property damage** while seeking to avoid lawful apprehension or arrest by a law enforcement official.

**d.** While operating a vehicle without a valid driver's license or permit.

## C. Limits Of Insurance

Our liability for any **accident** will not exceed the limits shown in the Declarations.

All **bodily injury**, **property damage** and **covered pollution cost or expense** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **accident**.

No person or entity will be entitled to receive duplicate payments for the same elements of **loss** under this policy and any attached endorsements, including Auto Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement.

All claim settlement costs and **litigation expenses** are included within the limits of liability shown on the Declarations and are not in addition to such limits of liability. The limits of liability apply to the total sum which the **insured** or the company becomes legally obligated to pay by reason of any **bodily injury** or **property damage** for which coverage is provided by the policy, including any supplementary payment either through adjudication or compromise, any hospital, medical or funeral charge, and any sums paid or payable as salaries, wages, compensation, fee charges, interest or expenses of doctors, nurses, investigators, attorneys and other persons relating to any settlement, adjustment, investigation or defense of any claim.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

**1.** We will pay for **loss** to a covered **auto** or its equipment under:

**a.** **Comprehensive Coverage**
From any cause except:
**(1)** The covered **auto's** collision with another object; or
**(2)** The covered **auto's** overturn.

**b.** **Collision Coverage**
Caused by:
**(1)** The covered **auto's** collision with another object; or
**(2)** The covered **auto's** overturn.

**c.** **Conversion, Embezzlement or Secretion**
For covered **autos**, we will pay under the Comprehensive Coverage, section **a.** above, for **loss** to the covered **autos** due to theft, conversion, embezzlement or secretion by any **member**, subject to the following provisions:

**(1)** The most we will pay for **loss** to any one covered **auto** is 75% of the actual cash value of such covered **auto** at the time of the **loss**, reduced by the amount of any deposit secured by you from the **member**.

**(2)** If there is a **loss** or if you learn of any act which may result in a **loss**, you must do the following:

**(a)** Promptly notify the police and us or our agent.

**(b)** Cooperate with any public prosecutor if requested by him or her, in prosecuting any person whose acts result in the **loss**.

**(c)** Submit a proof of **loss** if required by us.

**(d)** Make every reasonable effort to locate the covered **auto**. If you locate the covered **auto**, take possession of it, using legal proceedings if required by us. We will reimburse you for reasonable expenses incurred at our request or with our consent, in locating and recovering the covered **auto**.

**2.** **Towing**
We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered **auto** is disabled. However, the labor must be performed at the place of disablement.

**3.** **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**
For the damaged covered **auto**, we will pay for the following under Comprehensive Coverage:
**a.** Glass breakage;
**b.** **Loss** caused by hitting a bird or animal; and
**c.** **Loss** caused by falling objects or missiles.
However, you have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

**4.** **Coverage Extensions**
**a.** **Transportation Expenses**
We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered **auto**. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered **auto** is returned for use or we pay for its **loss**.

**b.** **Loss Of Use Expenses**
We will pay expenses for which an **insured** becomes legally responsible to pay for **loss** of use of an **auto** rented or hired without a driver under a written rental contract or agreement. We will pay for **loss** of use expenses if caused by:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered **auto**;

**(2)** Specified Causes Of **Loss** only if the Declarations indicate that Specified Causes Of **Loss** Coverage is provided for any covered **auto**; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered **auto**.

However, the most we will pay for any expenses for **loss** of use is $20 per day, to a maximum of $600.

**B.   Exclusions**

**1.** We will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

   **a.   Nuclear Hazard**

     **(1)** The explosion of any weapon employing atomic fission or fusion; or

     **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b.   War Or Military Action**

     **(1)** War, including undeclared or civil war;

     **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

     **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for **loss** to any covered **auto** while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for **loss** to any covered **auto** while that covered **auto** is being prepared for such a contest or activity.

**3.** We will not pay for **loss** due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such loss resulting from the total theft of a covered auto.

**4.** We will not pay for **loss** to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the **auto's** electrical system that, at the time of **loss** is:

   **a.** Permanently installed in or upon the covered **auto**;

   **b.** Removable from a housing unit which is permanently installed in or upon the covered **auto**;

   **c.** An integral part of the same unit housing any electronic equipment described in paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered **auto** or the monitoring of the covered **auto's** operating system.

**6.** We will not pay for **loss** to a covered **auto** due to **diminution in value**.

**7.** We will not pay for **loss** to a covered **auto** that is used by an **insured** or a **member** of the **named insured's auto** rental program as a **public or livery conveyance**.

**C.   Limit Of Insurance**

**1.** The most we will pay for **loss** in any one **accident** is the lesser of:

   **a.** The actual cash value of the damaged or stolen property as of the time of the **loss**; or

   **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

The maximum amount we will pay for **loss** to any one **auto** under Physical Damage Coverage in any one **accident** is $150,000.

**2.** $1,000 is the most we will pay for **loss** in any one **accident** to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of **loss** is:

   **a.** Permanently installed in or upon the covered **auto** in a housing, opening or other location that is not normally used by the **auto** manufacturer for the installation of such equipment;

   **b.** Removable from a permanently installed housing unit as described in paragraph **2.a.** above or is an integral part of that equipment; or

   **c.** An integral part of such equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total **loss**

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D. Deductible**

The deductible for Physical Damage Coverage is the amount shown on the declarations page. For each covered **auto**, our obligation to pay for, repair, return or replace the damaged or stolen **auto** and its equipment will be reduced by this amount. The deductible does not apply to any Comprehensive loss caused by fire or lightning.

**E   Appraisal For Physical Damage Loss**

If you and we disagree on the amount of **loss**, either may demand an appraisal of the **loss**. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**F.   Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property, including the covered **auto** and its equipment;

**b.** At our expense, return the stolen property, including the covered **auto** and its equipment. We will pay for any damage that results to the **auto** from theft; or

**c.** Take all or any part of the damaged or stolen property, including the covered **auto** and its equipment, at an agreed or appraised value.

If we pay for the **loss**, our payment will be made to the **named insured** shown in the Declarations and will include the applicable sales tax for the damaged or stolen property.

## SECTION IV – CONDITIONS

**A.   Action Against Us**

No one may bring action against us under this policy until:

**a.** There has been full compliance with all the terms and conditions of this policy; and

**b.** We agree in writing that an **insured** has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine an **insured's** liability.

**B.   Agreement**

We will provide the insurance coverage described in this policy and any attached endorsements in return for the premium and your compliance with all applicable provisions and conditions.

As a condition of coverage, the **named insured** agrees to fully perform due diligence related to the eligibility requirements and guidelines represented as part of the **named insured's** business operations described on the Declarations. We will not provide coverage for any **loss** related to the **named insured's** failure to fully perform the represented due diligence, whether or not the **loss** would

have been covered if due diligence had been fully performed.

**C.   Bankruptcy**

Bankruptcy or insolvency of the **named insured** or the **named insured's** estate will not relieve us of any obligations under this policy.

**D.   Cancellation**

**1.** The **named insured** may cancel this policy by mailing or delivering to us written notice of cancellation not less than 30 days prior to the effective date of cancellation.

**2.** We may cancel this policy by mailing or delivering to the **named insured** written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the **named insured's** last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date at 12:01 a.m. unless another time is stated on the cancellation notice.

**5.** If this policy is cancelled, we will send the **named insured** any premium refund due. If we cancel, the refund will be pro rata. If the **named insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**E.   Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. Any changes to the terms of the policy may only be made by the **named insured** shown on the Declarations with our written consent. The policy's terms can be amended or waived only be endorsement issued by us and made a part of this policy.

**F.   Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other **insured**, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This policy;

**2.** The covered **auto**;

**3.** Your interest in the covered **auto**; or

**4.** A claim under this policy.

**G.   Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**1.** In the event of any **accident**, claim, **suit** or **loss**, you must give us or our authorized representative prompt notice of the **accident** or **loss** by calling 877-900-0345 or by sending an email to myautoclaim@assurant.com. Include:

**a.** How, when and where the **accident** or **loss** occurred;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 6

b.   The **insured's** name and address; and
c.   To the extent possible, the names and addresses of any injured persons and witnesses.

2.   Additionally, you and any other involved **insured** must:

a.   Assume no obligation, make no payment or incur expense without our consent, except at the **insured's** own cost.
b.   Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or **suit.**
c.   Cooperate with us in the investigation or settlement of the claim or defense against the **suit.**
d.   Authorize us to obtain medical records or other pertinent information.
e.   Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

3.   If there is **loss** to a covered **auto** or its equipment you must also do the following:

a.   Promptly notify the police if the covered **auto** or any of its equipment is stolen.
b.   Take all reasonable steps to protect the covered **auto** from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.
c.   Permit us to inspect the covered **auto** and records proving the **loss** before its repair or disposition.
d.   Agree to examinations under oath at our request and give us a signed statement of your answers.

**H.   Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**I.   Inspections And Surveys**

We have the right but are not obligated to:

1.   Make inspections and surveys at any time;
2.   Give you reports on the condition we find; and
3.   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.   Are safe or healthful; or
2.   Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**J.   Liberalization**

If we revise this policy to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**K.   No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**L.   Other Insurance**

1.   For any covered **auto** you own, this policy provides primary insurance. For any covered **auto** you don't own, the insurance provided by this policy is excess over any other collectible insurance. However, while a covered **auto** which is a **trailer** is connected to another vehicle, the Liability Coverage this policy provides for the **trailer** is:

a.   Excess while it is connected to an **auto** you do not own.
b.   Primary while it is connected to a covered **auto** you own.

2.   Any covered **auto** you lease, hire, rent or borrow is deemed to be a covered **auto** you own. However, any **auto** that is leased, hired, rented or borrowed with a driver is not a covered **auto.**

3.   Regardless of the provisions of paragraph **a.** above, the Liability Coverage provided by this policy is primary for any liability assumed under an **insured contract.**

4.   When this policy and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of this policy bears to the total of the limits of all the coverage forms and policies covering on the same basis.

**M.   Policy Period, Coverage Territory**

Under this policy, we cover **accidents** and **losses** occurring during the **term of coverage** and within the coverage territory. The coverage territory is the United States of America, its territories and possessions and Canada.

**N.   Premium Audit**

1.   The estimated premium for this policy is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the **named insured** will be billed for the balance, if any. The due date for the final premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the **named insured** will receive a refund.

2.   If this policy is issued for more than one year, the premium for this will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**O.   Premiums**

The **named insured** shown on the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

FARI0008P-0718

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Page 7

**P.   Transfer Of Rights Of Recovery Against Others To Us**
If any person or organization to, or for, whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after the **accident** or **loss** to impair them.

**Q.   Transfer Of Your Rights And Duties Under This Policy**
Your rights and duties under this policy may not be transferred without our written consent.

## SECTION V – DEFINITIONS

**Accident** includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage**.

**Auto** means:
1.   A land motor vehicle, **trailer** or semitrailer designed for travel on public roads; or
2.   Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
However, **auto** does not include **mobile equipment**.

**Bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from any of these.

**Covered pollution cost or expense** means any cost or expense arising out of:
1.   Any request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or
2.   Any claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **pollutants**.

**Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:
1.   That are, or that are contained in any property that is:
   **a.**   Being transported or towed by, handled or handled for movement into, onto or from the covered **auto**;
   **b.**   Otherwise in the course of transit by or on behalf of an **insured**; or
   **c.**   Being stored, disposed of, treated or processed in or upon the covered **auto**;
2.   Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by an **insured** for movement into or onto the covered **auto**; or
3.   After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by an **insured**.
   Paragraph **1.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered **auto** or its parts, if:

   **a.**   The **pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and
   **b.**   The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in paragraph **5.b.** or **5.c.** of the definition of **mobile equipment**.
   Paragraphs **2.** and **3.** above do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon a covered **auto** if:
   **a.**   The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and
   **b.**   The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

**Diminution in value** means the actual or perceived loss in market value or resale value which results from a direct and accidental **loss**.

**Employee** includes:
1.   A leased worker, who is a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but is not a temporary worker.
2.   A temporary worker, who is a person furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

**Insured** means any person or organization qualifying as an **insured** in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each **insured** who is seeking coverage or against whom a claim or **suit** is brought. However, the coverage afforded shall not apply separately to those entities identified as **named insureds** when a claim or **suit** is brought against one or more of the **named insureds**.

**Insured contract** means:
1.   That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay for **bodily injury** or **property damage** to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;
2.   That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your **employees**, of any **auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates you or any of your **employees** to pay for **property damage** to any **auto** rented or leased by you or any of your **employees**.

An **insured contract** does not include that part of any contract or agreement:
   **a.**   That pertains to the loan, lease or rental of an **auto** to you or any of your **employees**, if the **auto** is loaned, leased or rented with a driver; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Page 8

FARI0008P-0718

**b.** That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for your use of a covered **auto** over a route or territory that person or organization is authorized to serve by public authority.

**Litigation expenses** mean:

**1.** All fees, costs and expenses charged by an attorney or law firm or a service provider designated by the company to represent an **insured** in any dispute arising from the policy or provide services in connection with representation of an **insured** in any litigation; and

**2.** All other fees, costs and expenses, including the company's own fees, costs and expenses or those of an affiliate, resulting from the investigation, adjustment, defense or appeal of a claim, as authorized by the company, including any coverage issues that may arise.

The determination of the company as to the reasonableness of **litigation expenses** shall be conclusive as to an **insured**. All litigation expenses reduce the available policy limits.

**Loss** means direct and accidental **loss** or damage.

**Member** means a person who has an active Membership Agreement with the **named insured** and participates in the **named insured's auto** rental program.

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **a.** Power cranes, shovels, loaders, diggers or drills; or

    **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**4.** Vehicles not described in paragraph **1., 2. or 3.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment;

    **b.** Cherry pickers and similar devices used to raise or lower workers; or

**5.** Vehicles not described in paragraph **1., 2. or 3.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment,** but will be considered **autos:**

    **a.** Equipment designed primarily for:

      **(1)** Snow removal;

      **(2)** Road maintenance, but not construction or resurfacing; or

      **(3)** Street cleaning;

    **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos**.

**Named insured** means the entity shown in the Declarations.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Property damage** means damage to or **loss** of use of tangible property.

**Public or livery conveyance** means the transporting of people and/or goods for hire, such as by a taxi service, motor carrier, transportation network company or delivery service.

**Suit** means a civil proceeding in which:

**1.** Damages because of **bodily injury** or **property damage**; or

**2.** A **covered pollution cost or expense**; to which this insurance applies, are alleged.

**Suit** includes:

**1.** An arbitration proceeding in which such damages or **covered pollution costs or expenses** are claimed and to which an **insured** must submit or does submit with our consent; or

**2.** Any other alternative dispute resolution proceeding in which such damages or **covered pollution costs or expenses** are claimed and to which an **insured** submits with our consent.

**Term of coverage** means the time period during which overage under this policy is effective. For the **named insured**, the **term of coverage** begins on the effective date and ends on the expiration date shown on the Declarations. For any **member**, the **term of coverage** begins at the time the **member** takes possession of or is issued the keys to a **covered auto** and ends when the member relinquishes or returns the keys to the **covered auto** to the **named insured** and no longer has the care, custody or control of the covered auto.

**Trailer** includes semitrailer.

IN WITNESS WHEREOF, we have caused this policy to be executed by our President and Secretary, respectively.

SECRETARY
American Bankers General Agency, Inc.
Attorney-in-Fact of
Reliable Lloyds Insurance Company

PRESIDENT
American Bankers General Agency, Inc.
Attorney-in-Fact of
Reliable Lloyds Insurance Company

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Reliable Lloyds Insurance Company

A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305.253.2244

## FLEET AUTO RENTAL INSURANCE

## MANDATORY AMENDATORY ENDORSEMENT
## GEORGIA

**THIS ENDORSEMENT CHANGES THE COMMERCIAL AUTO INSURANCE POLICY.   PLEASE READ IT CAREFULLY.**

Under **SECTION II – LIABILITY COVERAGE**, **A. Coverage**, the following is added:

Covered Autos Liability Coverage is primary for an **auto** you don't own if operated by the **insured** and owned by a retail seller of **autos**.

If you are a retail seller of **autos**, Covered Autos Liability Coverage is excess for an **auto** you own if operated by an **insured** other than you or your **employee**.

**SECTION II – LIABILITY COVERAGE**, **B. Exclusions, 1. Expected Or Intended Injury** is deleted and replaced by the following:

1. **Expected Or Intended Injury**
   This insurance does not apply to **bodily injury** or **property damage** expected or intended from the standpoint of the **insured**.  However, this exclusion does not apply for coverage up to the minimum limit specified by the Georgia Motor Vehicle Safety Responsibility Act.

Under **SECTION III – PHYSICAL DAMAGE COVERAGE**, **A. Coverage**, the following is added:

If Collision Coverage is provided, Collision Coverage is primary for an **auto** you don't own if operated by the **insured** and owned by a retail seller of **autos**.

If you are a retail seller of **autos**, Collision Coverage is excess for an **auto** you own if operated by an **insured** other than you or your **employee**.

**SECTION III – PHYSICAL DAMAGE COVERAGE**, **B. Exclusions**, exclusion **6.** is deleted in its entirety.

Under **SECTION III – PHYSICAL DAMAGE COVERAGE, E. Appraisal For Physical Damage Loss**, the last paragraph is deleted and replaced by the following:

We do not waive any of our rights under this policy by agreeing to an appraisal.

**SECTION IV – CONDITIONS**, **D. Cancellation, 1., 5.** and **6.** are deleted and replaced by the following:

1. The **named insured** shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:
   a. If only the interest of the **named insured** is affected, the effective date of cancellation will be either the date we receive notice from the **named insured** or the date specified in the notice, whichever is later.  However, upon receiving a written notice of cancellation from the **named insured**, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the **named insured**.
   b. If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the **named insured** and the third party as soon as practicable after receiving the **named insured's** request for cancellation.

   Our notice will state the effective date of cancellation, which will be the later of the following:
   (1) 10 days from the date of mailing or delivering our notice; or
   (2) The effective date of cancellation stated in the **named insured's** notice to us.

5. **Premium Refund**
   a. If this policy is cancelled, we will send the **named insured** any premium refund due.
   b. If we cancel, the refund will be pro rata, except as provided in **c.** below.
   c. If the cancellation results from failure of the **named insured** to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata.  Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.
   d. If the **named insured** cancels, the refund may be less than pro rata.
   e. The cancellation will be effective even if we have not made or offered a refund.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

33

**6.**   If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

Under **SECTION IV – CONDITIONS, D. Cancellation**, the following is added and supersedes any other provision to the contrary:

If we decide to:
**1.**   Cancel or nonrenew this policy; or
**2.**   Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or
**3.**   Change any policy provision which would limit or restrict coverage;

then we will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the **named insured** and lienholder, if any, at the last mailing address known to us.  Except as applicable as described in the paragraph below regarding a policy written to permit an audit, we will mail or deliver notice at least:
**1.**   10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or
**2.**   45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or
**3.**   45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

With respect to a policy that is written to permit an audit, we may cancel this policy subject to the following if you fail to submit to or allow an audit for the current or most recently expired term:

**1.**   We will make two documented efforts to send you and your agent notification of potential cancellation.  After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the **named insured** at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.
**2.**   If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the **named insured** at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

**SECTION IV – CONDITIONS**, F. Concealment, **Misrepresentation Or Fraud** is deleted and replaced by the following:

**F.**   **Concealment, Misrepresentation Or Fraud**
We will not pay for any **loss** or damage in any case of:
**1.**   Concealment or misrepresentation of a material fact; or
**2.**   Fraud;
committed by you or any other **insured**, at any time, and relating to coverage under this policy.

**SECTION IV – CONDITIONS**, G. Duties In The Event Of Accident, Claim, Suit Or Loss, 1., the following is added:

The requirement for giving notice of a claim, if not satisfied by the **insured** within 30 days of the date of the **accident**, may be satisfied by an injured third party who, as the result of such **accident**, has a claim against the **insured**.  However, in this event, notice of a claim given by an injured third party must be mailed to us.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

# Reliable Lloyds Insurance Company

### A Stock Insurance Company
11222 Quail Roost Drive, Miami, FL 33157-6596 • 305.253.2244

## FLEET AUTO RENTAL INSURANCE

## ADDITIONAL INSURED ENDORSEMENT
## GEORGIA

**THIS ENDORSEMENT CHANGES THE COMMERCIAL AUTO INSURANCE POLICY. PLEASE READ IT CAREFULLY.**

**This contract is registered and delivered as a surplus lines coverage under the Surplus Lines Insurance Law, O.C.G.A. Chapter 33-5.**

### SCHEDULE

| POLICY NUMBER<br>FAR3381010 | EFFECTIVE DATE<br>05 / 15 / 2021   at 12:01 AM Standard Time | | EXPIRATION DATE<br>01 / 01 / 2023   at 12:01 AM Standard Time |
|---|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | ADDITIONAL INSURED NAME & ADDRESS<br><br>AS REQUIRED BY WRITTEN CONTRACT | |
| LOSS PAYEE<br><br> | | | |

| LIMIT OF LIABILITY | |
|---|---|
| Coverage | Limit Of Insurance |
| Liability | $25,000 per person; $50,000 per accident; $25,000 property damage |

With respect to the coverage provided by this endorsement:

Under **SECTION II – LIABILITY COVERAGE**, **A. Coverage, 1. Who Is An Insured**, the following is added:

Any person or entity listed as an additional **insured** in the Schedule above; provided, however that the insurance provided by this endorsement:
1. Applies only to the ownership, maintenance or use of a covered **auto**;
2. Applies only to acts or omissions by you, your agents or your **employee**s while such covered **auto** is being used in your business; and
3. Does not apply to acts or omissions of the additional **insured** or any of the additional **insured's** agents or **employees** other than you.

Inclusion of an additional **insured** will not increase our limit of insurance under the policy. The limit of insurance per **accident** remains $1,000,000 regardless of the number of covered **autos**, **insureds**, premiums paid, claims made or vehicles involved in the **accident**.

The additional **insured** shown in the Schedule above is the loss payee for coverage under this policy when applicable. Stacking of coverage among multiple policies and stacking of coverage by vehicles within one policy are not permitted. The maximum recovery under all policies or coverage forms combined may equal, but not exceed the highest applicable limit for any one **auto** under any policy or coverage form providing coverage on either a primary or excess basis.

Under **SECTION IV CONDITIONS**, **D. Cancellation**, the following is added:

The additional **insured** shown in the Schedule above may cancel coverage by notifying us in the following ways:
**a.**   Written notice by mail, fax or e-mail;
**b.**   Verbal notice.

Upon receipt of such notice, we will cancel any coverage for the additional **insured**, effective on the later of the following:
**a.**   The date on which notice is received or the coverage is surrendered; or
**b.**   The date of cancellation requested by the additional **insured**.

We may cancel coverage for the additional **insured** by mailing or delivering to the additional **insured** written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least 45 days before the effective date of cancellation.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN THE SAME.**

FARI0166E-0520

# Reliable Lloyds Insurance Company
### A Stock Insurance Company
11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:

| POLICY NUMBER<br>FAR3381010 | ORIGINAL EFFECTIVE DATE OF POLICY<br>05/15/2021 | EFFECTIVE DATE OF CHANGE<br>05/15/2021 |
|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | |

## POLICY CHANGES

### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
| | | |
| | | |

**Add/Change Name of:**  ☐ Named Insured

**Change Address of:**  ☐ Named Insured

**Other Change:**

Self-Insured Retention – See Attached

**Endorsements Added to the Policy:**

**Premium Adjustment**

| Current Premium | New Premium | Premium Difference |
|---|---|---|
| | | |
| | Balance Due (if any) | |

_Annie J. Davis_

08-06-21

————————————————————————————  ————————
Authorized Representative                                     Date

## SELF-INSURED RETENTION ENDORSEMENT

**THIS ENDORSEMENT MODIFIES YOUR POLICY PLEASE READ IT CAREFULLY**.

| SCHEDULE | |
|---|---|
| Self-Insured Retention | $15,000 |
| Authorized Claim Administrator | Sedgwick |

This policy is subject to a Self-Insured Retention applicable to both damages and defense cost as set forth in the Schedule above. The provision of this endorsement will take precedence and control over any policy provision with which it may conflict.

I.   **Self-Insured Retention**

1.   Insurance provided by the policy to which this endorsement applies will be excess of the amount of your Self-Insured Retention shown in the Schedule of this endorsement. The amount of your Self-Insured Retention shown in the Schedule of this endorsement will erode the limit of insurance provided by the policy to which this endorsement applies.

2.   You are obligated to make payments for damages and defense cost up to the amount of your Self-Insured Retention before we have any obligation to pay damages or participate in any defense cost. For the purposes of this endorsement, defense cost means: All cost of investigation and defense incurred by you, your authorized claims service provider or by us in your defense. It does not include salaries or any other form of compensation to your employees, including but not limited to the in-house counsel who are employed or otherwise retained, or to your general business administrative expenses, or to the authorized claim service provider's handling fees. Similarly, defense cost shall not include our employees' salaries or our in-house counsel expenses.

3.   The Self-Insured Retention is primary and underlying to the insurance provided by this policy and can only be satisfied by those amounts paid by you for covered claims and suits. In the event there is any other valid and collectible insurance applicable to an occurrence, claim or suit within your Self-Insured Retention amount, you will continue to be responsible for the full Self-Insured Retention amount before the limit of Insurance of this policy apply, however, such valid and collectible insurance will be allowed to erode your Self-Insured Retention obligations. Your bankruptcy, insolvency, or inability to pay your Self-Insured Retention amount shall not increase our obligation under this policy.

4.   Your Self-Insured Retention is per occurrence and applies to all damages and defense cost covered by this policy as a result of any one occurrence, regardless of the number of persons or organizations who sustain damages because of that occurrence.

II.   **Settlement of Claims**

1.   You shall be responsible for the investigation, defense and settlement of any claim, occurrence or suit for damages and defense cost within your Self-Insured Retention.  You shall exercise utmost good faith and diligence to settle claims within your Self-Insured Retention.

2.   You may not settle any claim or suit which exceeds your Self-Insured Retention without our written consent.  We will not be responsible for the portion of any settlement made without our consent exceeding your Self-Insured Retention.

3.   You shall employ a claim service provider acceptable to us for the purpose of providing claim services for settlement of losses and reporting their status to us as described in Section III, Reporting.

4.   Our obligation for the investigation, defense and settlement of any claim begins when your payments equal your Self-Insured Retention.

III.   **Reporting**

1.   Bodily Injury Claims

a.   Claims Administrator to pass along all loss information collected regarding Bodily Injury losses below the Self-Insured Retention amount.

b.   Ongoing Review

i.   For claims under the Self-Insured Retention the claims Administrator will provide updates every 30 days until the claim or suit is closed.

ii.   For losses that exceed 50% of the Self-Insured Retention amount the Claims Administrator will work with us to establish communication protocol, based on the nature of the claim. Claims Administrator will provide updates to us every 30 days, or more frequently if agreed to with the Claims Administrator.

iii.   For litigation the Claims Administrator will work with us to ensure agreement on outside counsel selected.

2.   Property Damage Claims

a.   Claim Administrator to pass along all claim information at time of loss only if the claim is estimated by the Claims Administrator to exceed the Self-Insured Retention amount.

b.   Ongoing Review

i.   Each month the Claims Administrator will provide us with a file outlining number of claims paid, along with loss amount.

# Reliable Lloyds Insurance Company
### A Stock Insurance Company
11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:

| POLICY NUMBER<br>FAR3381010 | ORIGINAL EFFECTIVE DATE OF POLICY<br>05/15/2021 | EFFECTIVE DATE OF CHANGE<br>05/15/2021 |
|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | |

### POLICY CHANGES

#### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
| | | |
| | | |

**Add/Change Name of:**     ☐ Named Insured

**Change Address of:**     ☐ Named Insured

---

**Other Change:**

#### Wavier of Subrogation

**SCHEDULE**

| Name(s) Of Person(s) Or Organization(s): |
|---|
| Any person or organization for whom you are required, by written contract or agreement, to obtain this waiver from us |

Under **SECTION IV – Conditions, P. Transfer of Rights of Recovery against Others to Us**, the following is added:

This condition does not apply to the person(s) or organization(s) shown in the Schedule, but only to the extent that subrogation is waived prior to the **accident** or the **loss** under a contract with that person or organization.

#### Endorsements Added to the Policy:

#### Premium Adjustment

| Current Premium | New Premium | Premium Difference |
|---|---|---|
| | | |
| | Balance Due (if any) | |

*Karen J. Nieves*                                                     06/10/2021

Authorized Representative                                         Date

FARI0171E-0718

38

# Reliable Lloyds Insurance Company

### A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:

| POLICY NUMBER<br>FAR3381010 | ORIGINAL EFFECTIVE DATE OF POLICY<br>05/15/2021 | EFFECTIVE DATE OF CHANGE<br>05/15/2021 |
|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | |

## POLICY CHANGES

### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**Add/Change Name of:**  ☐ Named Insured

**Change Address of:**  ☐ Named Insured

---

**Other Change:**

### Defense Costs Outside of Limits

Under **SECTION II – Liability Coverage, A. Coverage** – Paragraph two, beginning with "We have the right and duty to defend" is deleted and replaced with the following:

> We have the right and duty to defend any **insured** against a suit asking for such damages or a **covered pollution cost or expense**. However, we have no duty to defend any **insured** against a **suit** seeking damages for **bodily injury** or **property damage** or a **covered pollution cost or expense** to which this insurance does not apply. We may investigate and settle any claim or **suit** as we consider appropriate. Our duty to defend and/or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements. Our duty to defend will immediately terminate when the Liability Coverage Limit of Insurance is exhausted by the payments set forth above.

Under **SECTION II – Liability Coverage, C. Limit of Insurance** – Paragraph four, beginning with "All claim settlement costs" is deleted and replaced with the following:

> All **litigation expenses** are in addition to such limits of liability shown on the Declarations.

Under **SECTION V – DEFINITIONS**, **Litigation expenses** is deleted and replaced with the following:

> 1. All fees, costs and expenses charged by an attorney or law firm or a service provider designated by the company to represent an insured in any dispute arising from the policy or provide services in connection with representation of an insured in any litigation; and

FARI0171E-0718

2. All other fees, costs and expenses, including the company's own fees, costs and expenses or those of an affiliate, resulting from the investigation, adjustment, defense or appeal of a claim, as authorized by the company, including any coverage issues that may arise.

The determination of the company as to the reasonableness of **litigation expenses** shall be conclusive as to an **insured**.

**Endorsements Added to the Policy:**

**Premium Adjustment**

| Current Premium | New Premium | Premium Difference |
|---|---|---|
|  |  |  |
|  | Balance Due (if any) |  |

| | |
|---|---|
| _(signature)_ | 06/10/2021 |
| Authorized Representative | [Date] |

# Reliable Lloyds Insurance Company
### A Stock Insurance Company
11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:

| POLICY NUMBER | ORIGINAL EFFECTIVE DATE OF POLICY | EFFECTIVE DATE OF CHANGE |
|---|---|---|
| FAR3381010 | 05/15/2021 | 05/15/2021 |

| NAMED INSURED & ADDRESS |
|---|
| HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 |

### POLICY CHANGES

#### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
|  |  |  |
|  |  |  |

**Add/Change Name of:** ☐ Named Insured

**Change Address of:** ☐ Named Insured

---

#### Other Change:

Adding Primary and Noncontributory language as it pertains to Additional Insured:

The **Commercial Auto Insurance Policy, FARI0001P-0918**, is changed as follows:

      **Section IV – Conditions, L. Other Insurance,** the following is added:

5. This Coverage Form's Covered Autos Liability Coverage is primary to and will not seek contribution from any other insurance available to an **insured** under your policy provided that:
   a. Such **insured** is a Named Insured under such other insurance; and
   b. You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to such **insured**.

#### Endorsements Added to the Policy:

#### Premium Adjustment

| Current Premium | New Premium | Premium Difference |
|---|---|---|
|  |  |  |
|  | Balance Due (if any) |  |

_Karen J. Narine_        06/10/2021

Authorized Representative        Date

FARI0171E-0718

# Reliable Lloyds Insurance Company

A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

**THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:**

| POLICY NUMBER<br>FAR3381010 | ORIGINAL EFFECTIVE DATE OF POLICY<br>05/15/2021 | EFFECTIVE DATE OF CHANGE<br>05/15/2021 |
|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | |

## POLICY CHANGES

### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
|  |  |  |
|  |  |  |

**Add/Change Name of:**     ☐ Named Insured

**Change Address of:**     ☐ Named Insured

**Other Change:**

**Broad Form Named Insured**

The following is added to Paragraph A.1. **Who Is An Insured**, of **Section II – Liability Coverage**

    **f.**  Any of your subsidiaries, other than a partnership or joint venture, that is not shown as a **Named Insured** in the Declaration is an **Insured** if:

        (1) You are the sole owner or in which you maintain 50% or more ownership interest in such subsidiary on the first day of the policy term; and

        (2) Such subsidiary is not separately insured.

    **g.**  Any organization you newly acquired or form during the policy term, other than a partnership or joint venture, is an **Insured** until the end of the policy term if:

        (1) You are the sole owner or in which you maintain 50% or more ownership interest; and

        (2) Such organization you newly acquired or form is not separately insured.

**Endorsements Added to the Policy:**

**Premium Adjustment**

| Current Premium | New Premium | Premium Difference |
|---|---|---|
|  |  |  |
|  | Balance Due (if any) |  |

_Karen J. Harris_                            06/10/2021

Authorized Representative                        Date

FARI0171E-0718

# Reliable Lloyds Insurance Company

A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

**THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:**

| POLICY NUMBER<br>FAR3381010 | ORIGINAL EFFECTIVE DATE OF POLICY<br>05/15/2021 | EFFECTIVE DATE OF CHANGE<br>05/15/2021 |
|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | |

### POLICY CHANGES

#### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
| | | |
| | | |

**Add/Change Name of:**  ☐ Named Insured

**Change Address of:**  ☐ Named Insured

#### Other Change:

Under **SECTION IV – CONDITIONS, B. Agreement,** paragraph two, beginning with "As a condition of coverage," is deleted and replaced with the following:

As a condition of coverage, the **named insured** agrees to fully perform due diligence related to the eligibility requirements and guidelines represented as part of the **named insured's** business operations described on the Declarations. We will not provide coverage for any loss related to the **named insured's** intentional failure to fully perform the due diligence or enforce its eligibility requirements and guidelines.

#### Endorsements Added to the Policy:

#### Premium Adjustment

| Current Premium | New Premium | Premium Difference |
|---|---|---|
| | | |
| | Balance Due (if any) | |

_Karen J. Harris_                                      06/10/2021

Authorized Representative                              Date

FARI0171E-0718

# Reliable Lloyds Insurance Company
### A Stock Insurance Company
11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

**THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:**

| POLICY NUMBER<br>FAR3381010 | ORIGINAL EFFECTIVE DATE OF POLICY<br>05/15/2021 | EFFECTIVE DATE OF CHANGE<br>05/15/2021 |
|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | |

## POLICY CHANGES

### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
| | | |
| | | |

**Add/Change Name of:**  ☐ Named Insured

**Change Address of:**  ☐ Named Insured

---

### Other Change:

The **Commercial Auto policy, FARI0001P-0918,** is changed as follows:

Under **SECTION II – Liability Coverage, B. Exclusions**, the following exclusions are amended as follows:

**11. Racing**, the following is added:
This exclusion does not apply to any innocent **insured.**

**13. Additional Exclusion**, the following is added:
This exclusion does not apply to any innocent **insured.**

Under **SECTION IV – Conditions, F. Concealment, Misrepresentation or Fraud**, the following is added::
This condition does not apply to any innocent **insured.**

### Endorsements Added to the Policy:

### Premium Adjustment

| Current Premium | New Premium | Premium Difference |
|---|---|---|
| | | |
| | Balance Due (if any) | |

| | |
|---|---|
| *Renee J. Nauve* | 06/10/2021 |
| Authorized Representative | Date |

FARI0171E-0718

44

# Reliable Lloyds Insurance Company

### A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:

| POLICY NUMBER<br>FAR3381010 | ORIGINAL EFFECTIVE DATE OF POLICY<br>05/15/2021 | EFFECTIVE DATE OF CHANGE<br>07/06/2021 |
|---|---|---|
| NAMED INSURED & ADDRESS<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | | |

### POLICY CHANGES

### Add/Remove Coverage or Change Limits

| Coverage | Current Limit | New Limit |
|---|---|---|
|  |  |  |
|  |  |  |

**Add/Change Name of:** ☐ Named Insured

**Change Address of:** ☐ Named Insured

---

### Other Change:

Under **SECTION I – COVERED AUTOS**, **A. Description of Covered Autos**, the following is added:

Any **auto** while being used by a **HyreCar Driver** during the **term of coverage**.

Under **SECTION II – LIABILITY COVERAGE**, A. Coverage, 1. **Who Is An Insured**, the following is added:

    **f.**    **HyreCar Drivers**.

    **g.**    The registered owner of an **auto** used by a **HyreCar Driver** only while such **auto** is being used by a **HyreCar Driver** and only for **bodily injury** or **property damage** resulting from acts or omissions by:

        (1) The **named insured**;

        (2) The **named insured's employees** or agents;

        (3) Any person, except the registered owner, while operating as a **HyreCar Driver** with the **named insured's** consent and abiding by the safety obligations outlined in the requirements provided by and agreed to with **HyreCar.**

**SECTION II – LIABILITY COVERAGE**, B. Exclusions, 12. **Public or Livery Conveyance**, is deleted and replaced with the following:

    **12.**    **Public Or Livery Conveyance**
        **Bodily injury** or **property damage** arising out of the operation of any covered **auto** as a **public or livery conveyance**. This exclusion does not apply to a covered **auto** that is being operated by a **HyreCar Driver** through the **HyreCar application**.

FARI0171E-0718

Under **SECTION II – LIABILITY COVERAGE**, **C. Limits of Insurance,** paragraph one, beginning with "Our liability for any **accident**," is deleted and replaced with the following:

Regardless of the number of **insureds**, our limit of insurance for any **accident** will not exceed the limits shown in the Declarations. The Liability limit of insurance shown in the Declarations is the limit for all **insureds** under this policy.

However, when more than one covered **auto** is involved in the same **accident**, each **insured** operating or using a covered **auto** shall have a separate limit of insurance for Liability Coverage shown in the Declarations for such covered **auto**.

Under **SECTION IV – CONDITIONS**, **I. Other Insurance, 1.** is deleted and replaced by the following:

1. For any covered **auto** you own, this policy provides primary insurance. For any covered **auto** you don't own the insurance provided by this policy is excess over any other collectible insurance unless the non-owned covered **auto** is used during the **term of coverage** by a **HyreCar Driver**, in which case this policy provides primary insurance. However, while a covered **auto** which is a trailer is connected to another vehicle, the Liability Coverage this policy provides for the trailer is:
   a. Excess while it is connected to an **auto** you do not own.
   b. Primary while it is connected to a covered **auto** you own.

Under **SECTION V – DEFINITIONS**, **term of coverage** is deleted and replaced with the following:

**Term of coverage** means the period of time during which a **HyreCar Driver** has recorded acceptance and taken possession of a covered **auto** and:
   a. Is not operating the covered **auto** during **Period 1, Period 2** or **Period 3**; or
   b. Is not operating the covered **auto** during the **Delivery Period**.

Under **SECTION V – DEFINITIONS**, the following definitions are added:

**Period 1** means: the period of time during which a **HyreCar Driver** is logged into a Transportation Network Company application for the purpose of providing transportation services, but is not matched with a passenger.

**Period 2** means: the period of time beginning when a **HyreCar Driver** has accepted a request for a ride and is en route to the pick-up location of the requested transportation services including, but not limited to, the picking-up of passengers.

**Period 3** means: the period of time during which a **HyreCar Driver**, having picked up the passenger(s), is traveling to the final destination of the requested transportation services including, but not limited to, the dropping-off of passengers

**Delivery Period** means: the period of time beginning when a **HyreCar Driver** has accepted a request for a delivery and is en route to the pick-up location or the period of time during which a **HyreCar Driver**, having picked up the delivery order(s), is traveling to the final destination of the requested delivery services including, but not limited to, the dropping-off of delivery orders.

**On-Demand Delivery Company** means: an entity which uses a proprietary digital network to connect delivery orders to drivers for the purposes of providing delivery services.

**HyreCar application** means: a mobile application used by **HyreCar Drivers** for the purposes of facilitating the rental of a covered **auto.**

**HyreCar Drivers** means: an individual that at the time of any **accident** is authorized by you to operate the covered **auto.**

**HyreCar** refers to the legal entity qualified to do business in the state, engaged in the business of facilitating the rental of **autos** to **HyreCar Drivers**.

**Endorsements Added to the Policy:**

**Premium Adjustment**

| Current Premium | New Premium | Premium Difference |
|---|---|---|
| | | |
| | Balance Due (if any) | |

| | |
|---|---|
| _(signature)_ | 07/14/2021 |
| Authorized Representative | Date |

# Reliable Lloyds Insurance Company

A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## PREMIUM ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE COMMERCIAL AUTO INSURANCE POLICY. PLEASE READ IT CAREFULLY.**

SCHEDULE

| POLICY NUMBER<br>FAR3381010 | POLICY EFFECTIVE DATE<br>05/15 /2021 at 12:01 AM Standard Time | POLICY EXPIRATION DATE<br>01/01 /2023  at 12:01 AM Standard Time |
|---|---|---|
| NAMED INSURED<br>HyreCar, Inc.<br>355 S Grand Ave.<br>Los Angeles, CA 90071 | MINIMUM EARNED PREMIUM AMOUNT:        N/A | |
| | PREMIUM DEPOSIT AMOUNT:        N/A | |
| | ESCROW ACCOUNT AMOUNT:        N/A | |
| | ESCROW ACCOUNT DUE DATE:        N/A | |

Under **SECTION IV – CONDITIONS,** the following is added:

**Pricing**
The premium for this policy shall be calculated in the manner shown below.

Premium Calculation:

# Days Rented x $4.69 (Age 26+) = Monthly Premium
# Days Rented x $6.93 (Age 18-25) = Monthly Premium

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN THE SAME.**

FARI0356E-0420

48

# Reliable Lloyds Insurance Company

### A Stock Insurance Company
11222 Quail Roost Drive, Miami, FL 33157-6596 • 305. 253.2244

## FLEET AUTO RENTAL INSURANCE

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The insurance provided by this policy does not apply to the following:

Under **SECTION II – LIABILITY COVERAGE**, to **bodily injury** or **property damage**.

1. With respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
2. Resulting from the **hazardous properties** of **nuclear material** and with respect to which
   a. Any person or organization is  required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or
   b. The **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

Under any Auto Medical Payments Coverage provided by the policy and/or any attached endorsements, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

Under **SECTION II – LIABILITY COVERAGE**, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if:

1. The **nuclear material**
   a. Is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or
   b. Has been discharged or dispersed therefrom.
2. The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or
3. The **bodily injury** or **property damage** arises out of the furnishings by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **3.** applies only to **property damage** to such **nuclear facility** and any property thereat.

Under **SECTION IV – DEFINITIONS** of the Commercial Auto Liability Excess Insurance Policy and **SECTION V –**

**DEFINITIONS** of the Commercial Auto Insurance Policy, the following definitions are added:

**Hazardous properties** include radioactive, toxic or explosive properties.

**Nuclear facility** means:
1. Any **nuclear reactor**;
2. Any equipment or device designed or used for
   a. Separating the isotopes of uranium or plutonium,
   b. Processing or utilizing **spent fuel**, or
   c. Handling, processing or packaging **waste**;
3. Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
4. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**;
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**Nuclear material** means **source material**, **special nuclear material** or **by-product material**.

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**Property damage** includes all forms of radioactive contamination of property.

**Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

**Waste** means any waste material:
1. Containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and
2. Resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Reliable Lloyds Insurance Company

## SERVICE OF PROCESS

It is agreed that in the event of the failure of the Reliable Lloyds Insurance Company hereon to pay an amount claimed to be due hereunder, the Reliable Lloyds Insurance Company, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States. However, nothing in this endorsement constitutes or should be understood to constitute a waiver of Reliable Lloyds Insurance Company's rights to commence an action in any other court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

It is further agreed that Service of Suit may be made upon Richard Fortwengler, agent for service of process for Reliable Lloyds Insurance Company, 260 Interstate North Circle, Atlanta, GA 30339 and that in any suit instituted against it upon this contract, Reliable Lloyds Insurance Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.  Richard Fortwengler, as agent for service of process, is authorized and directed to accept Service of Suit on behalf of the Reliable Lloyds Insurance Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Reliable Lloyds Insurance Company hereby designates the Superintendent, Commissioner, or Director of Insurance or any other officer specified for the purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named person to whom said officer is authorized to mail such process or true copy thereof.

All other terms, conditions, and agreements shall remain the same.

### NOTICE OF INSURANCE INFORMATION PRACTICES
### CONSUMER RIGHTS

**Is personal information collected from persons other than individuals proposed for coverage?**
- We get most of our information directly from you.
- In most cases, the application you complete gives us all the information we need to evaluate you or your property for insurance.
- In some insurance transactions, we may not be able to get all of the information we need directly from you. In that case, we may obtain information from outside sources at our own expense.

**Types of information we may collect and how we gather it:**
- From you (or provided to us on your behalf) on applications and other forms you submit to us; for example: your name, address, social security number, telephone number, employer, and income.
- For your transactions with our companies or other nonaffiliated parties; for example: your name, address, telephone number, age, credit card use, insurance coverage, transaction history, claims history, and premiums.
- From consumer reporting agencies, public records and data collection agencies; for example: your obligations with others and your creditworthiness.
- From health care providers, such as doctors and hospitals; for example: your past or present health condition. Health data will be collected only if we need to find out if you are eligible for coverage, to process claims, or prevent fraud, as authorized by you or as the law may permit or require. NOTE: We collect health data only to manage a health-related product or service; for example: life or disability insurance for which you applied.
- From you when you enroll, request a service, or file a claim on one of our websites; for example: your name, address, contract number, credit card issuer and account number, personal identification number, email address, service contract and claim information.
- In some cases, from your visits to our Internet websites; for example: session number and user ID. By reviewing the legal notice, terms of use, site agreement or similar named link appearing on any of our websites that you visit, you may learn of any "cookies" utilized by us and of any additional information that may be collected from you on that site.

**Access to recorded personal information**
Upon your written request and submission of proper identification:
- Within 30 business days of the receipt of your request to access to your recorded personal information, Assurant will inform you of the nature and substance of the recorded personal information.
- You have the right to see and copy personal information in person or obtain a copy by mail. The information must be reasonably described by you and reasonably locatable and retrievable by us. Any information we provide you will be in plain language.
- If recorded, we will disclose the identity of those persons or institutional sources who gave us information within two (2) years prior to your request. If not recorded, we will disclose the names of those to whom such information is normally disclosed.
- You may request correction, amendment, or deletion of recorded personal information by submitting written request to Assurant, 11222 Quail Roost Drive, Miami, FL 33157.
- Assurant shall provide medical record information supplied by a medical care institution or medical professional, along with the identity of the medical professional or medical institution which provided the information, either directly to you or to a medical professional designated by you, which is licensed to provide medical care with respect to the condition to which the information relates. Assurant will notify you if it elects to disclose the information to a medical professional designated by you. For CA and MA residents mental health record information shall be supplied directly to the individual only with the approval of the qualified professional person with treatment responsibility for the condition to which the information relates.
- We may charge a reasonable fee to cover the costs incurred in providing you a copy of recorded information;

**Request to correct, amend, or delete recorded personal information**
Within 30 business days from the date of receipt of your written request to correct, amend, or delete any recorded personal information, we must:
1. Correct, amend or delete the portion of the recorded personal information in dispute; or
2. Notify you of our refusal to make the correction, amendment or deletion, and the reason(s) for the refusal, and your right to file a statement if you disagree.

If we refuse to make a correction, amendment or deletion:
1. You have the right to file a concise statement with us. Your statement: (a) must set forth what you believe to be the correct, relevant, or fair information, and (b) explain why you disagree with our refusal.
2. We will file your statement with any disputed personal information and make it accessible so that anyone reviewing the information will be cognizant of your statement.
3. Furthermore, your statement will be with any subsequent disclosure.

If the information is corrected, the correction will be in writing and provided to you, any person who may have received the incorrect information within the preceding two years, any insurance-support organization that received the information within the preceding seven years, and any insurance support organization that furnished the personal information that has been corrected, amended or deleted.

**Disclosure of personal or privileged information**

We will not disclose any personal or privileged information about you in connection with this insurance transaction without your written authorization unless we provide you with a form or statement that:

1. is written in plain language;
2. is dated;
3. specifies the types of persons authorized to disclose information about you;
4. specifies the nature of the information authorized to be disclosed;
5. names the insurance company or agent to whom you are authorizing the information to be disclosed;
6. specifies the purpose(s) for which the information is collected;
7. specifies the length of time your authorization remains valid [not to exceed thirty (30) months (24 months in MT; 24 months in VA if the application or request involves property and casualty insurance)  from the date of authorization]; and
8. states that you or any person authorized to act on your behalf is entitled to receive a copy of any authorization form or statement.

**We will not disclose any personal or privileged information in connection with this insurance transaction, unless the disclosure is reasonably necessary and meets one of the following descriptions:**

1. To enable an insurance company to perform a business, professional or insurance related function and such insurance company agrees not to disclose the information further without your written authorization unless the further disclosure (a) would be otherwise permitted by the Insurance Information and Privacy Protection Act; or (b) would be necessary for the insurance company to perform its function.
2. To enable the insurance company to (a) determine your eligibility for an insurance benefit or payment; or (b) detect or prevent criminal activity, fraud, material misrepresentation, or material nondisclosure in connection with an insurance transaction.
3. To an insurance institution, agent, insurance-support organization, or self-insurer, provided the information disclosed is reasonably necessary and limited to (a) detect or prevent criminal activity, fraud, material misrepresentation, or material nondisclosure in connection with insurance transactions; or (b) for either the disclosing or receiving insurance institution, agent or insurance-support organization to perform its function in connection with an insurance transaction involving you.
4. To enable a medical-care institution or medical professional for the purpose of (a) verifying insurance coverage or benefits; (b) informing an individual of a medical problem of which the individual may not be aware; or (c) conducting an operations or services audit provided that the information is disclosed as is reasonably necessary.
5. To an insurance regulatory authority.
6. To a law enforcement or other governmental authority (a) to protect the interests of the insurance institution, agent or insurance-support organization in preventing or prosecuting the perpetration of fraud; or (b) if the insurance institution, agent or insurance-support organization reasonably believes that illegal activities have been conducted by the individual.
7. To an actuarial or research study, provided that (a) no individual may be identified in any actuarial or research report; (b) materials allowing the individual to be identified are returned or destroyed as soon as they are no longer needed; and (c) the actuarial or research organization agrees not to disclose the information unless the disclosure would be permitted by the Insurance Information and Privacy Protection Act if made by an insurance institution, agent, or insurance-support organization.
8. To a person whose only use of such information will be in connection with the marketing of a product or service, provided that (a) no medical-record information, privileged information, or personal information relating to an individual's character, personal habits, mode of living, or general reputation is disclosed, and no classification derived from such information is disclosed; (b) you have been given an opportunity to indicate that you do not want personal information disclosed for marketing purposes and have given no indication that you do not want the information disclosed; and (c) the person receiving such information agrees not to use it except in connection with the marketing of a product or service.
9. To an affiliate whose only use of the information will be in connection with an audit of the insurance institution or agent or the marketing of an insurance product or service, provided the affiliate agrees not to disclose the information for any other purpose or to unaffiliated persons.
10. To a group policyholder for the purpose of reporting claims experience or conducting an audit of the insurance institution's or agent's operations or services, provided the information disclosed is reasonably necessary for the group policyholder to conduct the review or audit.
11. To a professional peer review organization for the purpose of reviewing the service or conduct of a medical-care institution or medical professional.
12. To a certificate holder or policyholder for the purpose of providing information regarding the status of an insurance transaction.
13. To a lien holder, mortgagee, assignee, lessor, or other person shown on the records of an insurance institution or agent as having legal or beneficial interest in a policy of insurance. Medical-record information will not be disclosed unless the disclosure would otherwise be permitted by the Information and Privacy Protection Act. The information disclosed will also be limited to only reasonably necessary information to permit you to protect your interest in the policy. (Not applicable to Kansas, Montana, and Oregon residents).
14. To authorized personnel of the Division of Motor Vehicle; and to the Department of Environment, Health, and Natural Resources and the information disclosed is immunization information described in G.S. 130A-154. (Applicable to North Carolina residents only).