IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IDEMIA AMERICA CORP.,

        Plaintiff,

v.

TOSHIA ANDERSON,

        Defendant.

Civil Action No.

## PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AGAINST TOSHIA ANDERSON

Plaintiff IDEMIA America Corp. ("IDEMIA" or "Plaintiff"), by and through its undersigned counsel, respectfully files this Complaint for Damages Against Defendant Toshia Anderson ("Anderson" or "Defendant"). Plaintiff respectfully shows the Court the following:

## I.
## INTRODUCTION

1.    IDEMIA is a leader in providing identity security and authentication services to governments and private companies, operating in North America.

2.    IDEMIA employees 12 people in Georgia.  IDEMIA employs around 980 employees across the United States.

## II.
## PARTIES, JURISDICTION, AND VENUE

3.    Plaintiff's state of incorporation is Delaware.

4.     Plaintiff maintains its Principal Office (or principal place of business) at 4250 Pleasant Valley Road, Chantilly, VA 20151.

5.     Plaintiff is organized as a corporation. Plaintiff's state of incorporation is Delaware.  It is not organized under the laws of Georgia, does not maintain a principal place of business in Georgia, or otherwise reside in the state of Georgia.

6.     Upon information and belief, Defendant's last known residential address is 5155 Rockford Ln, Stockbridge, GA 30281-5239.

7.     Upon information and belief, this Court has jurisdiction over Defendant and venue is proper herein as to Defendant because her last known address is in Stone Mountain, Georgia, which is within this Court's jurisdiction, and she is believed to be a resident thereof.

8.     Plaintiff is a citizen of the state of Delaware.

9.     Therefore, this action is between citizens of different states, and there is complete diversity of citizenship between Plaintiff and Defendant in this suit.

10.    Plaintiff has suffered losses in excess of $75,000.00. This Verified Complaint seeks the recovery of no less than $244,868.42 in monetary damages, as well as other relief, meaning the amount in controversy exceeds $75,000.00.

11.     Since no Defendant shares a state of citizenship with Plaintiff, and since the amount in controversy exceeds $75,000.00 in this action, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**III.**
**FACTUAL ALLEGATIONS**

A.     **Plaintiff's Relationship with Defendant.**

12.     Plaintiff hired Defendant as an Executive Assistant on or around November 30, 2015.

13.     On or around February November 30, 2015, Plaintiff also entrusted Defendant with a cell phone (a black iPhone XR 64 GB) to be used for Plaintiff's business.

14.     Pursuant to Plaintiff's company policies, the cell phone was provided by the Company to employees that required one for company use to be used only for Plaintiff's business purpose.

15.     On or around February 6, 2019, Plaintiff entrusted Defendant with a laptop (HP EliteBook 840 G3) be used for Plaintiff's business.

16.     Plaintiff informed Defendant the laptop was property of Plaintiff to be used only for Plaintiff's business for employees to perform their jobs.

17.     On or around December 2, 2015, Plaintiff entrusted Defendant with an American Express business credit card ("Amex Company Card") to be used only for

legitimate business expenses. Plaintiff issued a replacement Amex Company Card to Defendant on November 1, 2020.

18.    Plaintiff informed Defendant that the Amex Company Card could only be used for authorized business expenses.

19.    Plaintiff also allowed Defendant to request reimbursement for certain business expenses, including the business expenses charged to the Amex Company Card pursuant to its North America Expense Reporting & Travel Policy.

> a)    Plaintiff's Travel and Expense Policy provided reimbursement to employees only for reasonable, necessary and actual business-related expenses to the extent required by law.

> b)    Defendant was made aware of Plaintiff's Travel and Expense Policy as it was available to Defendant on Plaintiff's ADP maintained human resources and employee benefit website.

20.    In addition, Plaintiff's Group Code of Conduct make clear that Defendant was prohibited from using Plaintiff's equipment or resources in an abusive manner for personal use.

> a)    Defendant was aware of this policy at the time she was hired, and she acknowledged this policy on October 19, 2020.

21.    From on or around November 30, 2015, to March 8, 2022, Defendant worked as an Executive Assistant for Plaintiff.

22.    At various times during her employment for Plaintiff, she worked for as Executive Assistant for the following individuals: Plaintiff's Chief Executive Officer for the Secure Enterprise Transaction Division ("CEO"), Senior Vice President of MO & CO NORAM, and President of FI Institutions NORAM ("President of FI Institutions"), and the Senior Vice President of MO & CO NORAM, President of FI Institutions NORAM, and Vice President Biometric Devices NORAM.

23.    Defendant was an Executive Assistant during the entire time she was employed with Plaintiff.

24.    Plaintiff terminated Defendant on March 8, 2022, for misconduct.

**B.    Defendant Schemed to Steal from Plaintiff.**

25.    Defendant designed and implemented a scheme to misappropriate funds from Plaintiff.  Through this scheme, Defendant caused Plaintiff to pay at least $244,868.42 for the exclusive benefit of Defendant over the course of three years between 2019 and 2021.

26.    The scheme involved Defendant charging Plaintiff's Amex Company Card for personal, non-business expenses and creating false expense requests, false

invoices, and false statements purportedly from American Express for the Amex Company Card to hide Defendant's personal, non-business expenditures, which Defendant then submitted to Plaintiff, causing Plaintiff to pay for said personal, non-business-related expenses.

27.    In 2022, Plaintiff discovered Defendant's scheme and an analysis and review of Defendant's expense report documentation, including email correspondence, expense requests, purported invoices, and purported statements from American Express submitted by Defendant, was undertaken related to twelve (12) reimbursement requests.  The analysis and review determined the following:

   a)    Defendant charged $16,111.01 to Plaintiff's Amex Company Card during the statement period of November 2019 and submitted a false expense report, including an incomplete invoice purportedly from the Venetian, to Plaintiff stating the $16,111.01 expense was for lodging at the Venetian in Las Vegas on behalf of the CEO.    Defendant also submitted a statement purportedly from American Express with two transactions, the $16,111.01 charge for the Venetian in Las Vegas and a payment from the previous month.  The November 2019 statement from American Express contains sixteen

(16) transactions, none of which were for the Venetian or in the amount of $16,111.01.

b) Defendant charged $16,058.27 to Plaintiff's Amex Company Card during the statement period of January 2020 and submitted a false expense report, including an incomplete invoice purportedly from the Venetian, to Plaintiff stating the $16,058.27 expense was for lodging at the Venetian in Las Vegas on behalf of the CEO and a payment from the previous month. Defendant also submitted a statement purportedly from American Express with two transactions, the $16,058.27 charge for the Venetian in Las Vegas and a payment from the previous month. The January 2020 statement from American Express contains sixty (60) transactions, none of which were for the Venetian or in the amount of $16,058.27.

c) Defendant charged $13,930.21 to Plaintiff's Amex Company Card during the statement period of February 2020 and submitted a false expense report to Plaintiff stating the $13,930.21 expense was for Comcast Fiber Service-Atlanta (phone and internet expense) for and on behalf of the CEO and a payment from the previous month. Defendant also submitted a statement purportedly from

American Express with two transactions, the $13,930.21 charge for Comcast Cable and a payment from the previous month.  The February 2020 statement from American Express contains seventy-eight (78) transactions, and only one charge was for Comcast in the amount of $227.21.

      d)    Defendant charged $30,028.77 to Plaintiff's Amex Company Card during the statement periods of February and March 2020 and submitted false expense reports to Plaintiff stating the $30,028.77 expense was for the Sheraton Lisboa Resort in Portugal in the amount of $16,098.56 and for the Marriott Madrid in the amount of $13,930.21.  Defendant also submitted two statements purportedly from American Express, (1) in the amount of $13,930.21 for the period closing on February 19, 2020, and (2) in the amount of $16,098.56 for the period closing on March 20, 2020. The February 2020 statement from American Express contains seventy-eight (78) transactions, none of which were for the Marriott Madrid or in the amount of $13,930.21. The March 2020 statement from American Express contains eighty-five (85) transactions, none of which were for the Sheraton Lisboa Resort or in the amount of $16,098.56.

e)      Defendant charged $29,324.79 to Plaintiff's Amex Company Card during the statement period of October 2020 and submitted false expense reports to Plaintiff stating the $29,324.79 expense was for Propack International in the amount of $24,119.65 and for Comcast Fiber in the amount of $5,205.14, both on behalf of the CEO. Defendant also submitted two statements purportedly from American Express for the period of October 2020 in the amount of $29,324.49, including a $24,119.69[1] charge for Propack International, a $5,205.14 charge for Comcast Fiber, and a delinquency charge.  The October 2020 statement from American Express contains the delinquency fee but it does not include the charges for Propack international or Comcast Fiber.

f)      Defendant charged $15,246.72 to Plaintiff's Amex Company Card during the statement period of January 2021 and submitted false expense reports for alleged Harry & David gift purchases made on behalf of the President of FI Institutions.  Defendant present false documentation including a purported email from President

---

[1] Please note, the amount submitted via the purported American Express statement was different than the amount Defendant provided her expense report through a purported invoice.

of FI Institutions to the FI team congratulating them on their 2020 performance and informing them of their thank you presents along with a list of individuals with addresses and the amounts for the Harry & David gift charges.  The false documentation also included an undated confirmation email from Harry & David with a charge in the amount of $15,246.72.  Defendant also submitted to Plaintiff a statement purportedly from American Express containing two Harry & David transactions, one in the amount of $8,575.27, and one in the amount of $6,671.45, as well as a payment made. The January 2021 statement from American Express contains twenty-seven (27) transactions, none of which were for Harry & David or in the amount of $15,246.72, $8,575.27, or $6,671.45.

g)      In addition, Defendant's employee expense report which was paid by Plaintiff, also appeared to account for gifts from Harry & David to the FI Team.

h)      Defendant charged $12,696.23 to Plaintiff's Amex Company Card during the statement period of February 2021 and submitted a false expense report to Plaintiff stating the $12,696.23 expense was for the Propack International on behalf of the CEO.

Defendant also submitted a statement purportedly from American Express for the period of February 2021 with this expense and a payment from the previous month. The February 2021 statement from American Express contains over 35 transactions, none of which were for Propack International or in the amount of $12,696.23.

i)      Defendant charged $12,237.40 to Plaintiff's Amex Company Card during the statement period of March 2021 and submitted a false expense report to Plaintiff stating the $12,237.40 expense was for Propack International on behalf of the CEO. Defendant also submitted a statement purportedly from American Express for the period of March 2021 with only this expense included. The March 2021 statement from American Express contains thirty-five (35) transactions, none of which were for Propack International or in the amount of $12,237.40.

j)      Defendant charged $16,628.43 to Plaintiff's Amex Company Card during the statement period of May 2021 and submitted a false expense report to Plaintiff stating the $16,628.43 expense was for Propack International on behalf of the CEO. Defendant also submitted a statement purportedly from American Express for the

period of May 2021 with only this expense included. The May 2021 statement from contains thirty-six (36) transactions, none of which were for Propack International or in the amount of $16,628.43.

k)   Defendant charged $14,156.01 to Plaintiff's Amex Company Card during the statement period of July 2021 and submitted a false expense report to Plaintiff stating the $14,156.01 expense was for Propack International on behalf of the CEO. Defendant also submitted an invoice in the amount of $14,156.01 containing two itemized charges for $7,078.05. (The total should have been $14,156.10.) Defendant submitted a statement purportedly from American Express for the period of July 2021 with only this expense included. The July 2021 statement from American Express contains thirty-six (36) transactions, none of which were for Propack International or in the amount of $14,156.01.

l)   Defendant charged $22,749.39 to Plaintiff's Amex Company Card during the statement period of September 2021 and submitted a false expense report to Plaintiff stating the $14,156.01 expense was for Propack International on behalf of the CEO. Defendant also submitted an invoice in the amount of $22,749.39

containing three itemized charges for $7,583.00. However, the total should have been $22,749.00. Defendant submitted a statement purportedly from American Express for the period of September 2021 with only this expense included. The September 2021 statement from American Express contains forty (40) transactions, none of which were for Propack International or in the amount of $22,749.39.

m)     Defendant charged $45,701.19 to Plaintiff's Amex Company Card during the statement period of January 2022 and submitted a false expense report to Plaintiff stating the $45,701.19 expense was for Propack International on behalf of the CEO. Defendant also submitted an invoice in the amount of $45,701.19 containing four itemized charges for $11,425.32. However, the total should have been $45,701.28. Defendant submitted a statement purportedly from American Express for the period of January 2022, but the listed charge for Propack International is from November 2021. The January 2022 statement from American Express contains two (2) transactions for late charges. There are no transactions for Propack International or in the amount of $45,701.19.

n)    The statements from American Express further showed that Defendant also used the Amex Company Card to make payments to unknown users for unknown reasons via CashApp totaling over $30,000 in 2021. By submitting false statements, Defendant concealed the CashApp payments that were made using the Amex Company Card.

28.    In total, Defendant caused Plaintiff to pay at least $244,868.42 for unauthorized, personal, non-business expenses.

29.    Defendant caused Plaintiff to pay the aforementioned sums by making the above-listed charges to the Amex Company Card maintained and paid for by Plaintiff.

30.    Further, while Plaintiff is aware of the aforementioned sums Defendant caused Plaintiff to pay, Defendant was in possession of the Amex credit card since on or around November 1, 2020, until approximately January 2022.

31.    Additionally, the analysis and review of Defendant's reimbursement requests undertaken was related to only twelve (12) reimbursement requests.

32.    Therefore, Defendant's scheme may have been implemented during her entire employment and included reimbursement reports which have not yet been analyzed and reviewed, causing Plaintiff additional monetary loss and injury which has not yet been discovered.

33.     To date, Defendant has failed to repay Plaintiff.

34.     When Defendant's employment was terminated, Plaintiff demanded return of Plaintiff's laptop and phone it issued to Defendant for business purposes.

35.     Defendant did not respond.

36.     Plaintiff subsequently followed up with Defendant to demand return of the laptop and phone it issued to Defendant for business purposes, to which Defendant never responded.

37.     To date, Defendant has refused and continues to refuse to return Plaintiff's laptop and cell phone.

## COUNT I: CONVERSION

38.     Plaintiff hereby incorporates and re-alleges the allegations set forth in Paragraphs 12-37, as if set forth in full herein.

39.     Plaintiff was legally and rightfully entitled to the funds that Defendant caused to be paid for her personal, unauthorized, non-business expenses.

40.     Defendant caused $244,868.42 of funds from Plaintiff's possession that Plaintiff was lawfully entitled to be paid for personal, unauthorized, non-business charges she incurred herself.

41.    Defendant caused said funds to be paid for her personal expenses and for her personal gain, thereby converting funds that belong to Plaintiff to her own possession.

42.    Defendant converted Plaintiff's money by causing funds to be paid to entities that performed no services and provided no goods to Plaintiff.

43.    Defendant therefore engaged in willful misappropriation of Plaintiff's funds.

44.    Defendant therefore also engaged in willful theft of Plaintiff's funds.

45.    Upon information and belief, Defendant willfully took actions to make the personal, unauthorized, non-business-related expenses appear to be for legitimate business-related purposes to ensure that the funds would actually be paid for by Plaintiff.

46.    Upon information and belief, Defendant willfully took actions to minimize the likelihood of Plaintiff, American Express, or others detecting the wrongful payments Defendant was willfully causing Plaintiff to make for personal, unauthorized, non-business expenses.

47.    Plaintiff is legally and rightfully entitled to the laptop and cell phone issued to Defendant for Plaintiff's business.

48.     Defendant, however, has failed to return the laptop and cellphone to which Plaintiff was lawfully entitled to Plaintiff's possession.

49.     Defendant retains the laptop and cellphone belonging to Plaintiff and has refused to return Plaintiff's property, thereby converting the laptop and cellphone that belong to Plaintiff to her own possession.

50.     Defendant therefore engaged in willful theft of Plaintiff's laptop and cellphone.

51.     Plaintiff has attempted to notify Defendant of the impropriety of her actions.

52.     Plaintiff has not entered into any agreement with Defendant regarding repayment of the funds owed to Plaintiff.

53.     Plaintiff has not entered into any agreement with Defendant regarding the return of Plaintiff's property of the laptop and cellphone.

54.     Defendant's actions were unauthorized and inconsistent with Plaintiff's rights to the funds in question.

55.     Defendant's actions were unauthorized and inconsistent with Plaintiff's rights to the laptop and cellphone in question.

56.    Plaintiff has lost money it was rightfully entitled to and thereby suffered economic damages as a direct and proximate result of Defendant's actions in the amount of at least $244,868.42.

57.    Defendant's wrongful retention of Plaintiff's laptop and cellphone has also caused economic damages as a direct and proximate result of Defendant's actions in the amount of approximately $1,660, as the value of Plaintiff's laptop is approximately $1,110, and the value of Plaintiff's iPhone is approximately $350.

58.    Defendant's wrongful retention of Plaintiff's laptop and cellphone has also caused irreparable harm in light of the intellectual property and sensitive and confidential business information contained in the information systems of the laptop and cell phone.

59.    Upon information and belief, Plaintiff has also suffered reputational damage as a result of Defendant's actions.

60.    Defendant's actions create an unfair and inaccurate depiction of Plaintiff's security and accounting protocols.  This is particularly harmful in light of Plaintiff's business.

61.    Defendant is therefore liable for wrongfully and willfully converting Plaintiff's property and money to herself.

62.    Plaintiff is therefore authorized to raise this claim against Defendant.

63.     Plaintiff is therefore entitled to recover the $244,868.42 Defendant has caused to be paid to herself by diverting same for personal use.

64.     Plaintiff is also entitled to recover reasonable interest.

65.     Plaintiff is additionally entitled to recover the cost of maintaining the civil action, including attorneys' fees, against Defendant to recover the funds lost by Plaintiff as a result of Defendant's theft.

## COUNT II:  BREACH OF FIDUCIARY DUTY

66.     Plaintiff hereby incorporates and re-alleges the allegations set forth in Paragraphs 12-37, as if set forth in full herein.

67.     As referenced above, Plaintiff employed Defendant.

68.     Plaintiff entrusted Defendant with access to and use of a corporate credit card ("Amex Company Card").

69.     Plaintiff allowed Defendant to make charges to the Amex Company Card in Plaintiff's name. Plaintiff, in turn, would pay for charges incurred by Defendant.

70.     Plaintiff entrusted Defendant with a degree of autonomy to make financial decisions and make charges to the aforementioned Amex Company Card, provided that the charges were appropriate business-related charges.

71.     Plaintiff also entrusted Defendant with the autonomy to submit reimbursement reports that Plaintiff would repay.

72.     Plaintiff therefore allowed Defendant the autonomy to act as a representative of Plaintiff, to make decisions over the expenditure of Plaintiff's funds, and to make decisions with binding economic consequences upon Plaintiff.

73.     Plaintiff placed a great deal of faith and confidence in Defendant to allow her to make such charges and financial representations on Plaintiff's behalf.

74.     By giving Defendant such autonomy, Plaintiff positioned Defendant in a relationship of mutual confidence and allowed her a controlling influence over Plaintiff's business and financial will, conduct, and interests.

75.     Defendant was therefore a fiduciary of Plaintiff.

76.     Defendant owed Plaintiff a fiduciary duty and was therefore obligated to act with the utmost good faith with respect to autonomy entrusted to her by Plaintiff.

77.     Defendant did not act consistently with her fiduciary duties and did not show Plaintiff the utmost good faith with respect to charges and payments she caused to be made for personal, non-business expenses.

78.     Defendant knew that the personal, non-business expenses paid on behalf of Plaintiff were for personal services and goods of value to Defendant which Plaintiff never received.

79.     Upon information and belief, Plaintiff asserts that Defendant caused Plaintiff to pay funds for Defendant's personal use, and as such for her own personal enrichment.

80.     Defendant was not entitled to such enrichment.

81.     Upon information and belief, Defendant caused the funds to be paid to enrich herself at Plaintiff's unjustified expense.

82.     Defendant's  actions were calculated, took place over an extended period, and were carried out in a manner that evidences a strategy to avoid detection.

83.     Defendant therefore deprived Plaintiff of its property in a knowing and willful manner.

84.     Defendant therefore converted Plaintiff's property in a knowing and willful manner.

85.     By knowingly and willfully taking actions that enriched herself at Plaintiff's unjustified expense, Defendant breached the fiduciary duty owed to Plaintiff.

86.     By knowingly and willfully causing Plaintiff to make payments for expenses related to goods and services Plaintiff never received, Defendant breached the fiduciary duty she owed to Plaintiff.

87.     Defendant's actions have directly and proximately caused damage to Plaintiff.

88.     Defendant's actions have caused Plaintiff to lose a significant amount of funds, which has caused financial damage to Plaintiff.

89.      Specifically, Defendant's payments for personal expenses has resulted in Plaintiff paying  at least $244,868.42 for which it has received no valuable goods or services in return.

90.     Upon information and belief, Defendant's actions have also caused reputational damage to Plaintiff.

91.     Plaintiff would not have made payments or authorized charges in this amount had Defendant not abused the trust Plaintiff placed in her when it empowered her to make charges on Plaintiff's behalf.

92.     Defendant breached the duty to treat Plaintiff with the utmost care of a fiduciary when she knowingly authorized charges for her personal, non-business-related expenses.

93.     Defendant breached the duty to treat Plaintiff with the utmost care of a fiduciary when she knowingly authorized charges for personal expenses as part of a scheme that would benefit herself at Plaintiff's unjustified expense.

94.     Defendant therefore owed a fiduciary duty to Plaintiff.

95.     Defendant therefore breached the fiduciary duty owed to Plaintiff by acting maliciously and recklessly towards Plaintiff. Defendant also breached said fiduciary duty by engaging in self-dealing and unjustly enriching herself at the expense of an individual to which she owed a fiduciary duty.

96.     Defendant also breached said fiduciary duty by converting Plaintiff's property by causing Plaintiff to pay for her personal, non-business expenses, thereby misappropriating funds at the expense of an individual to which she owed a fiduciary duty.

97.     Defendant's breach actually and proximately caused harm to Plaintiff.

98.     Defendant is therefore liable to Plaintiff for breach of fiduciary duty.

## COUNT III:  COMPUTER THEFT IN VIOLATION OF THE GEORGIA COMPUTER SYSTEMS PROTECTION ACT

99.     Plaintiff hereby incorporates and re-alleges the allegations set forth in Paragraphs 12-37, as if set forth in full herein.

100.    During her employment with Plaintiff, Defendant had the use of computer systems and devices, which were at all times the property of Plaintiff.

101.   Defendant violated O.C.G.A. § 16-9-93(a) of the Georgia Computer Systems Protection Act by using Plaintiff's computer, computer systems, and/or devices – beyond the scope of her authority and knowing that she had exceeded her given authority – with the intention of:

      a)   Taking or appropriating Plaintiff's monetary assets by causing Plaintiff to pay at least $244,868.42 for her personal, non-business expenses even though she knew said vendor had provided no valuable goods or services to Plaintiff and concealing said unauthorized, improper, and unlawful payments;

      b)   Obtaining Plaintiff's monetary assets by deceitful means and by using deceit to conceal her unlawful and unjustified payments; and

      c)   Converting Plaintiff's monetary assets for her own benefit and use in violation of her known obligations to only use Plaintiff's computers and networks to process and justify payments of Plaintiff's funds that were made for legitimate, business-related expenses by causing Plaintiff to pay funds to her unauthorized, personal, non-business expenses.

102.   Defendant's actions were committed over a period of over years and were carefully calculated to maximize the misappropriation of funds while minimizing the likelihood of detection. This demonstrates that Defendant's tortious actions were willful and malicious, thus entitling Plaintiff to an award of punitive or exemplary damages.

103.   As a result of Defendant's actions in violation of O.C.G.A. § 16-9-93(a), Plaintiff has been injured in an amount to be determined at trial.

104.   Pursuant to O.C.G.A. § 16-9-93(g), Defendant should be ordered to pay all damages caused by their actions as well as Plaintiff's attorneys' fees and costs associated with bringing this suit.

## IV. <u>COUNT V: BREACH OF LEGAL DUTY</u>

105.   Plaintiff hereby incorporates and re-alleges the allegations set forth in Paragraphs 12-37, as if set forth in full herein.

106.   Plaintiff entrusted Defendant with a position of confidence.

107.   Plaintiff's confidence in Defendant included providing Defendant with discretion to make charges to a corporate credit card maintained and paid for by Plaintiff ("Amex Company Card").

108.   Defendant also had the power to request reimbursement for charges she incurred on in the course of Plaintiff's business.

109.   Defendant was entrusted the power to make charges to the Amex Company Card on Plaintiff's behalf, meaning she had the power to obligate Plaintiff financially. With that authority came the responsibility to ensure that all charges were appropriate.

110.   Plaintiff trusted Defendant to authorize prudent, business-related charges that benefited Plaintiff or advanced Plaintiff's business objectives.

111.   Defendant therefore had a duty to only authorize charges reasonably consistent with Plaintiff's expectations.

112.   Plaintiff trusted Defendant not to make charges that would benefit Defendant at Plaintiff's unjustified expense or otherwise engage in self-dealing.

113.   Plaintiff trusted Defendant not to make charges for her own personal, non-business expenses and cause Plaintiff to pay for such expenses, thereby converting Plaintiff's property.

114.   Defendant, by nature of the discretion entrusted to her by Plaintiff, owed Plaintiff a duty of care.

115.   Defendant specifically owed Plaintiff a duty to exercise prudence in the charges she authorized for the Amex Company Card. This duty included a duty to avoid making charges that enriched herself at Plaintiff's unjustified expense.

116.   Defendant breached the aforementioned duties owed to Plaintiff when she authorized at least $244,868.42 in personal, non-business charges that Defendant knew had provided no goods or services of value to Plaintiff.

117.   Defendant breached the aforementioned duties owed to Plaintiff when she authorized almost $244,868.42 in personal, non-business charges which were therefore made for the purpose of enriching Defendant at Plaintiff's unjustified expense and without regard to the duty owed to Plaintiff, and then sought Defendant's payment/reimbursement for same.

118.   Defendant's actions were unreasonable, malicious, and unlawful.

119.   Defendant's actions caused Plaintiff financial and reputational damages.

120.   Under O.C.G.A. § 51-1-6, Defendant is liable to Plaintiff for these breaches and the resulting harm in an amount to be proven at trial.

## V. COUNT VI: UNJUST ENRICHMENT

121.   Plaintiff hereby incorporates and re-alleges the allegations set forth Paragraphs 12 through 37 above, as if set forth in full herein.

122.   Defendant caused Plaintiff to pay at least $244,868.42 for personal, non-business expenses which provided no valuable goods or services to Plaintiff.

123.   Plaintiff owed no funds for the goods and services provided in connection with Defendant's personal expenses.

124.   Defendant did not have any right, claim, or title to the $244,868.42 she caused Plaintiff to pay for her personal expenses.

125.   Plaintiff, however, had the right to continue possession of the $244,868.42 paid for Plaintiff's personal expenses and would have maintained possession of the funds if not for Defendant's wrongful actions.

126.   By taking possession of funds Plaintiff was lawfully entitled to, Defendant has unjustly enriched herself at Plaintiff's expense.

## VI. COUNT VIII: ATTORNEYS' FEES AND EXPENSES

127.   Plaintiff hereby incorporates and re-alleges the allegations set forth in Paragraphs 12-37, as if set forth in full herein.

128.   Defendant has acted in bad faith towards Plaintiff as alleged in this Complaint. Her bad faith includes plotting to charge Plaintiff's Amex Company Card for her personal, non-business expenses and submit falsified expense reports, invoices, and statements for which she would cause Plaintiff to pay to intentionally deprive Plaintiff of a large sum of money.  Defendant also took actions to make the transactions to for personal expenses appear to be legitimate, business-related

expenses, and continued her course of fraudulent conduct over a sustained period of time.  Her actions were calculated, not impulsive.

129.   Defendant has intentionally evaded Plaintiff's attempts to contact her. This has caused Plaintiff a delay in recovering funds it is rightfully entitled to, and to incur unnecessary expenses in attempting to establish contact with Defendant.

130.   Defendant has been stubbornly litigious and has caused Plaintiff unnecessary trouble, expense, and delay. Despite Plaintiff's best efforts to resolve this matter outside a court of law, Defendant has refused to engage in any meaningful dialogue with Plaintiff.

131.   Worse still, Defendant has taken intentional actions to frustrate Plaintiff's aforementioned efforts.

132.   Defendant's bad faith, stubborn litigiousness, and conduct causing Plaintiff unnecessary trouble and expense entitles Plaintiff to recover its attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a)      A bench trial all issues for which a bench trial is permitted by law;

b)      A judgment against Defendant for each and every cause of action stated in this Complaint;

c)      Damages awarded against Defendant to compensate Plaintiff for the injuries suffered as a consequence of Defendant's actions, in an amount to be determined pursuant to a bench trial;

d)      Punitive and exemplary damages against Defendant to punish her for her conduct against Plaintiff, to discourage similar misconduct in the future, or for any other purpose allowed by law;

e)      Appropriate equitable relief in Plaintiff's favor;

f)      Attorneys' fees and costs of litigation awarded to Plaintiff;

g)      Appropriate pre- and post-judgment interest at the maximum rates allowable by law; and

h)      Other relief as the Court may deem just and proper.

Dated:      July 20, 2023                    */s/ Bradley E. Strawn*
                                            Bradley E. Strawn, Bar No. 004419
                                            bstrawn@littler.com
                                            Nichole C. Novosel, Bar No. 784108
                                            nnovosel@littler.com

                                            LITTLER MENDELSON, P.C.
                                            3424 Peachtree Road N.E.
                                            Suite 1200
                                            Atlanta, GA  30326.1127
                                            Telephone:      404.233.0330
                                            Facsimile:      404.233.2361

                                            Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IDEMIA AMERICA CORP.,

        Plaintiff,

v.

TOSHIA ANDERSON,

        Defendant.

Civil Action No.

## PLAINTIFF IDEMIA AMERICA CORP.'S VERFICIATION OF COMPLAINT FOR DAMAGES AGAINST TOSHIA ANDERSON

I, Krista L. Crawley, hereby verify that I am Vice President, Human Resources for IDEMIA AMERICA CORP. ("IDEMIA"). I have read the foregoing Verified Complaint and know the contents thereof; to the extent the factual statements therein are based on my personal knowledge, I know that they are true and accurate to the best of my knowledge; to the extent that the factual statements therein are based on statements that have been told to me by others or what I have read, I believe them to be true and accurate; and to the extent that the factual statements therein are based on the personal knowledge of other employees or agents of IDEMIA, I believe them to be true and accurate.

Krista L. Crawley

Sworn to and subscribed before me this the ⎯11⎯ day of ⎯July⎯, 2023.



⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Notary Public

⎯Vevica Lynette KEASLEY-Spencer⎯
Printed Name

My commission expires: ⎯January 31, 2026⎯