IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CYNTHIA DAVIS, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| STATE OF GEORGIA, DEPARTMENT OF JUVENILE JUSTICE, | |
| Defendant. | |

**COMPLAINT**

COME NOW Plaintiff Cynthia Davis ("Plaintiff"), by and through her undersigned counsel, and hereby files her Complaint against the above-named Defendant on the following grounds:

**NATURE AND PURPOSE**

1.

This is an employment discrimination and retaliation case brought against the Georgia Department of Juvenile Justice, with regard to the discriminatory and retaliatory actions taken by Defendant against the Plaintiff, Cynthia Davis. Plaintiff alleges that she was the victim of discrimination on the basis of sex in the form of

1

sexual harassment and retaliation by her supervisor, Darryl Denson. Plaintiff seeks compensatory damages, backpay, costs of litigation, injunctive and declaratory relief and attorneys' fees.

## JURISDICTION AND VENUE

2.

This lawsuit is brought under 42 U.S.C. § 2000e, et seq., over which claims this Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. Defendant is an agency of the State of Georgia maintains employment records within this judicial district and division. Therefore, venue is proper under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## ADMINISTRATIVE PROCEDURES

3.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2021; the EEOC issued its Notice of Right to Sue on May 1, 2023.

4.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## PARTIES

5.

Plaintiff Cynthia Davis is a female citizen of the United States of America and the State of Georgia and is entitled to bring actions of this kind and nature.

6.

Defendant Georgia Department of Juvenile Justice [hereinafter "Defendant" or "DJJ"] was Plaintiff's employer and is subject to suit in actions of this kind and nature. Defendant is subject to suit for compensatory, declaratory and injunctive relief under Title VII. Defendant may be sued by service on the Commissioner of the Department of Juvenile Justice, Shawanda Reynolds Cobb, at her place of employment at the offices of the DJJ at 3408 Covington Highway Decatur, GA 30032.

## FACTS

7.

Plaintiff hired by the DJJ on February 16, 2018.

8.

Plaintiff worked at the Marietta Regional Youth Detention Center, at 1575 County Services Parkway, Marietta, Ga 30008.

9.

Plaintiff was initially assigned as paraprofessional in the Finance Department. Her supervisor was Selemen Calloway.

10.

Within a few months, she was promoted to the administrative operations manager, also under Mr. Calloway.

11.

In the fall of 2019, Darryl Denson was hired as Facility Director of the Marietta YDC and became Plaintiff's immediate supervisor.

12.

Within two or three months, Mr. Denson began making sporadic comments about Plaintiff's appearance, which gradually began to increase in frequency and severity.

13.

By March or April of 2020, Mr. Denson's conduct has escalated to the point that it was severe or pervasive sexual harassment.

14.

Mr. Denson's conduct included calling Plaintiff into his office on numerous occasions, sometimes multiple times per day, closing the door and, while sitting in

his chair and talking to the Plaintiff, pushing himself back while rubbing and groping his penis in the intended full view of Ms. Davis.  He made comments about Plaintiff's appearance, including asking what kind of undergarments she was wearing, despite Plaintiff's obvious discomfort and refusal to engage and answer his questions.  On other occasions, he came up to her while she was standing in front of the microwave and turn himself so that he could rub his groin against her buttocks, while speaking to Plaintiff, so that Plaintiff could feel his erect penis.   On another occasion, he began groping and rubbing his penis in the open office area.  Mr. Denson openly had sexual relationships with several female employees, including a Ms. Parker.

15.

Mr. Denson also frequently discussed his own sex life, that he was not dating anyone, and that he was free to "do what he wanted to do."  He turned innocuous conversations into a questioning of Ms. Davis' about her own intimate relationships, including whether she was dating anyone.  On one occasion, in front of other employees, he stated to Plaintiff that "you ain't got no man".  On another occasion, he called Plaintiff into the office with Antoine Simmons and Mr. Hunt, the Director of Security.  After she came into his office he began talking with Mr. Simmons and Mr. Hunt about going to strip clubs and made specific sexual comments about the

performers. Denson stated in front of other employees that they thought he was having a sexual relationship with Plaintiff.

16.

Mr. Denson's conduct occurred daily and sometimes multiple times a day.

17.

Mr. Denson's conduct was severe, including unsolicited sexual fondling of Ms. Davis and Mr. Denson visibly pleasuring himself while talking to Plaintiff about personal and sexual matters.

18.

Mr. Denson's conduct interfered with Plaintiff's ability to function at work as she would feel as if she were walking on eggshells, waiting for the next sexually harassing act. She felt that she was in a no-win situation, between refusing his directives, being fired for insubordination or being sexually harassed. She became depressed and anxious, which interfered in her interactions with employees.

19.

Plaintiff reported Mr. Denson's conduct to Human Resources at the Facility, in compliance with Defendant's policies on several occasions, including in April of 2020 to Kimberly Smith, the Regional Director. Ms. Smith was fired within the

week. Ms. Smith was replaced by Mr. Oglesby. Plaintiff complained again to Tamera Mays and Mr. Oglesby.

20.

Although Defendant claimed to have investigated Denson's conduct and actually obtained written statements confirming at least some of Plaintiff's allegations, Defendant failed and refused to promptly correct Mr. Denson's conduct, which continued after Plaintiff's complaints.

21.

After receiving notice of Plaintiff's complaint, Mr. Denson engaged in continued harassment of Plaintiff that was both sexual and retaliatory in nature.

22.

Mr. Denson's conduct occurred daily and sometimes more than daily.

23.

Specific instances of Mr. Denson's conduct included continually calling Plaintiff at home, after work hours, and monitoring her while she was in the workplace. He repeatedly told her that he had the power to have her terminated, that he knew people in upper management of DJJ, and that he would "get her next time".

24.

Mr. Denson's conduct caused the Plaintiff to have severe anxiety, thereby interfering with her ability and desire to come to work and complete her tasks.

25.

Mr. Denson's conduct had the effect of deterring Plaintiff from continuing or making complaints about his conduct.  This conduct included writing her up and, on occasion when his write ups were overturned, telling her that he would "get her next time".

26.

It was also common knowledge that Mr. Denson was related to someone at the DJJ main office, which was further reason for Plaintiff's fear of his actions and why he would not be subjected to discipline.

27.

As a result of Mr. Denson's conduct and Defendant's failure and refusal to take prompt effective remedial action, Plaintiff had no choice but to resign her employment and, on December 7, 2020, was thus constructively discharged. When she notified Defendant of her intent to resign and provide two weeks notice, she was told to leave immediately and to return all of her files and DJJ property.

28.

After her constructive discharge, Plaintiff learned that Mr. Denson had also filed a false, malicious and retaliatory complaint accusing Plaintiff of destroying documents belonging to the Defendant.  Another employee sent Plaintiff photographs showing that the files in question had not been destroyed and confirmed in an email to Denson where the files were being maintained.  Despite this fact, the investigation continued until February of 2021 and Defendant continued to accuse Plaintiff of misconduct.

29.

Several months after the Plaintiff's termination, Denson was ultimately fired for sexually assaulting another employee.

### COUNT ONE: SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

30.

Plaintiff re-alleges paragraphs 1 to 29, as if set forth fully herein.

31.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission following her constructive discharge, alleging sex

discrimination (in the form of sexual harassment) and retaliation because of the actions complained of herein.

32.

On or about May 01, 2023, the EEOC issued a Notice of Right to Sue with regard to Plaintiff's claims under Title VII.  This Complaint is filed within 90 days of receipt of such notice.

33.

Defendant's actions in permitting a supervisory employee to sexually harass Plaintiff constitutes unlawful discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq. and 42 U.S.C. Section 1981a.

34.

Defendant's violation of Plaintiff's rights under Title VII was intentional and undertaken notwithstanding actual knowledge of its obligations under federal law to prevent and remedy sexual harassment by supervisory employees.

35.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect her status as an employee because of her sex, female.

36.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her employment status and psychological and physical well-being.

37.

Plaintiff has suffered personal physical injuries and physical sickness as a result of the Defendant's actions, including the sexual battery by Mr. Denson, for which Defendant DJJ is liable under Title VII.

38.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT TWO: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

39.

Plaintiff re-alleges paragraphs 1 to 38 as if set forth fully herein.

40.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission following her termination, alleging sex discrimination (in

the form of sexual harassment) and retaliation because of the actions complained of herein, including her termination.

41.

On May 01, 2023, Plaintiff was issued a Notice of Right to Sue with regard to her claims under Title VII. This Complaint is filed within 90 days of receipt of such notice.

42.

Defendant's lack of action which led to the constructive termination of Plaintiff's employment constitute unlawful retaliatory discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq. and 42 U.S.C. Section 1981a, for which Plaintiff is entitled to relief.

43.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its retaliatory discrimination against Plaintiff was intentional.

44.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her employment status and psychological and physical well-being.

45.

Plaintiff has suffered personal physical injuries and physical sickness as a result of the Defendant's actions, for which Defendant DJJ is liable under Title VII.

46.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a)  General damages for personal physical injury or physical sickness caused by Defendant's misconduct;

(b)  General damages for mental and emotional suffering caused by Defendant's misconduct;

(c)  Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(d)  Special damages for lost wages and benefits and prejudgment interest thereon;

(e)  Reasonable attorney's fees and expenses of litigation;

(f)     Trial by jury as to all issues;

(g)     Prejudgment interest at the rate allowed by law;

(h)     Injunctive relief of front pay and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)     All other relief to which she may be entitled.

Respectfully submitted this 20th day of July, 2023.

                                   **BARRETT & FARAHANY**

                                   s/ *Matthew C. Billips*
                                   Matthew C. Billips
                                   Georgia Bar No. 057110

                                   *Counsel for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353 0092
(470) 284-7265
(404) 214-0125 (*facsimile*)
matt@justiceatwork.com