IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

Case No. _____

STEVEN MARKOS,

    Plaintiff,

v.

COLLETON PLANTATION HOMEOWNERS ASSOCIATION, INC. and DOUGLAS PROPERTY MANAGEMENT, INC.,

    Defendants.

## COMPLAINT

Plaintiff Steven Markos ("Plaintiff") sues defendants Colleton Plantation Homeowners Association, Inc. ("Colleton") and Douglas Property Management, Inc. ("Douglas") (collectively, the "Defendants"), and alleges as follows:

## THE PARTIES

1. Plaintiff is an individual who is a citizen of the State of Georgia.

2. Colleton is a corporation organized and existing under the laws of the State of Georgia with its principal place of business located at 120 Arnold Mill Park, Suite 400, Woodstock, GA 30188. Colleton's agent for service of process is Douglas Property Management, Inc., 120 Arnold Mill Park, Suite 400, Woodstock, GA 30188.

3. Douglas is a corporation organized and existing under the laws of the State of Georgia with its principal place of business located at 120 Arnold Mill Park, Suite 400, Woodstock, GA 30188. Douglas' agent for service of process is Michael C. Douglas, 120 Arnold Mill Park, Suite 400, Woodstock, GA 30188.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendants because they maintained sufficient minimum contacts with Georgia such that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

6. Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendants or their agents reside or may be found in this district. "A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant." Palmer v. Braun, 376 F.3d 1254, 1259-60 (11th Cir. 2004). "In other words, 'if a court has personal jurisdiction over the defendants in a copyright infringement action, venue in that court's district is proper.'" McGregor v. In Tune Music Grp., No. 15-62044-CIV-ZLOCH, 2016 U.S. Dist. LEXIS 190302, at *11 (S.D. Fla. July 29, 2016) (quoting Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd., 767 F. Supp. 181, 185 (N.D. Ill. 1991)).

## FACTS

**I.     Plaintiff's Business**

7. Plaintiff is a well-known and highly regarded photographer and writer who operates the National Park Planner website (https://npplan.com/), which is perhaps the most comprehensive private source of reviews/information on America's national parks based on Plaintiff's actual visits thereto.

8. Plaintiff has invested more than 20,000 hours of his own time and more than $30,000.00 of his own money traveling to and cataloguing America's national parks.

9. Plaintiff began working as a photographer in high school and has honed his craft since that time. His photographs have been displayed in the Atlanta High Museum of Art and his photography/video clients include (amongst many others) Walmart, Lonely Planet, Blue Cross Blue Shield of North Carolina, Florida International University, University of Wisconsin, JW Marriott, Berkshire Hathaway Home Services, Peachtree Software, US Bankcard, USA Volleyball, the National Society of High School Scholars, and Working Mother Magazine.

10. Plaintiff's National Park Planner website gets over 50,000 readers each month during the summer and approximately 25,000 readers each month in the winter

## II. The Work at Issue in this Lawsuit

### A. *The First Photograph*

11. On May 6, 2014, Plaintiff created a professional photograph of the Sope Creek Trail in Chattahoochee River National Recreation Area titled "Chattahoochee-149" (the "<u>First Photograph</u>"). Consistent with Plaintiff's general practices, the First Photograph contains (in the bottom right corner) Plaintiff's copyright management information as follows: "© 2014 STEVEN L. MARKOS." A copy of the First Photograph is exhibited below:



3

12. The First Photograph was registered by Plaintiff with the Register of Copyrights on November 2, 2016 and was assigned Registration No. VA 2-022-996. A true and correct copy of the Certificate of Registration pertaining to the First Photograph is attached hereto as **Exhibit "A."**

13. Plaintiff is the owner of the First Photograph and has remained the owner at all times material hereto.

*B.    The Second Photograph*

14. In June 2019, Plaintiff created a professional photograph of The King Center in Atlanta, GA titled "MLK-033" (the "Second Photograph"). Consistent with Plaintiff's general practices, the Second Photograph contains (in the bottom right corner) Plaintiff's copyright management information as follows: "© 2019 STEVEN L. MARKOS."  A copy of the Second Photograph is exhibited below:



15. The Second Photograph was registered by Plaintiff with the Register of Copyrights on June 26, 2019 and was assigned Registration No. VA 2-159-978. A true and correct copy of

the Certificate of Registration pertaining to the Second Photograph is attached hereto as **<u>Exhibit "B."</u>**

16. Plaintiff is the owner of the Second Photograph and has remained the owner at all times material hereto.

17. The First Photograph and the Second Photograph are collectively referred to herein as the "Work."

### III. Defendant's Unlawful Activities

18. Colleton is a homeowners association for property owners in the Colleton Plantation community in Cobb County, GA.

19. Colleton advertises/markets its business primarily through its website (https://colletonplantation.com/) and other forms of advertising.

20. Douglas specializes in community management services for homeowner associations, condominium associations, and office park associations across the North Metro Atlanta area.

21. Douglas advertises/markets its business primarily through its website (https://dpm-re.com/), social media (e.g., https://www.facebook.com/douglaspropertymgmt), and other forms of advertising.

22. On April 2, 2021 (after the above-referenced copyright registration of the Work), Defendants published the Work on Colleton's website (at https://colletonplantation.com/?page_id=681):



23. In publishing the Work online, Defendants cropped the Work so as to remove Plaintiff's copyright management information. The remaining details of the photographs, however, unequivocally show the photographs to be the same.

24. A true and correct copy of a screenshot of the website, displaying the copyrighted Work, is attached hereto as **Exhibit "C."**

25. Defendants are not and have never been licensed to use or display the Work. Defendants never contacted Plaintiff to seek permission to use the Work in connection with Colleton's website, social media, or for any other purpose.

26. Defendants utilized the Work for commercial use.

27. Upon information and belief, Defendants located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for Defendants' own

commercial use.

28. Through his ongoing diligent efforts to identify unauthorized use of his photographs, Plaintiff discovered Defendants' unauthorized use/display of the Work in July 2022. Following Plaintiff's discovery, Plaintiff (through its agents) notified Defendants in writing of such unauthorized use. To date, Plaintiff has been unable to negotiate a reasonable license for the past/existing infringement of his Work.

## COUNT I – COPYRIGHT INFRINGEMENT
### (Douglas)

29. Plaintiff re-alleges and incorporates paragraphs 1 through 28 as set forth above.

30. Each photograph comprising the Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

31. Plaintiff owns a valid copyright in each photograph comprising the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

32. As a result of Plaintiff's reproduction, distribution, and public display of the Work, Douglas had access to the Work prior to its own reproduction, distribution, and public display of the Work on Colleton's website.

33. Douglas reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

34. By its actions, Douglas infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes and for the commercial purposes of

Colleton.

35. Alternatively, to the extent Douglas did not directly infringe Plaintiff's rights in the Work, Douglas is liable for contributory infringement.

36. "Even though the Copyright Act does not specifically provide for secondary liability, vicarious and contributory copyright infringement are well established principles derived from common law." BUC Int'l Corp. v. Int'l Yacht Council Ltd., 489 F.3d 1129, n. 19 (11th Cir. 2007) (citing Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930-31, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005)). "For [a defendant] to be secondarily liable, the [plaintiff] must establish that there has been direct infringement by a third party." Venus Fashions, Inc. v. ContextLogic, Inc., No. 3:16-cv-907-J-39MCR, 2017 U.S. Dist. LEXIS 155748, at * 32 (M.D. Fla. Jan. 17, 2017); Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1245 (11th Cir. 2007) ("contributory infringement claim requires, at a minimum, both an allegation of a direct infringement by a third party, and an allegation of an intentional or knowing contribution to that infringement by the defendant.").

37. "A claim of contributory copyright infringement arises against one who intentionally induces or encourages the direct infringement of another." Cambridge Univ. Press v. Patton, 769 F.3d 1232, 1242 n.6 (11th Cir. 2014); BUC Int'l Corp., 489 F.3d at 1138 n.19 ("Contributory copyright infringement refers to the intentional inducement, causation or material contribution to another's infringing conduct.").

38. As Douglas guides and implements the marketing plans for its clients, Douglas has the ability to influence and control the infringing acts of its clients.

39. Thus, assuming Douglas did not directly infringe, Douglas caused or materially contributed to Colleton's infringing activity. Douglas encouraged Colleton to utilize copyrighted

imagery on Colleton's website, all while knowing the material was copyright material.

40. Douglas obtained a direct financial benefit from its own and/or Colleton's infringing activities.

41. Douglas' infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Douglas itself utilizes a copyright disclaimer on its website ("Copyright © 2023 Douglas Property Management, Serving HOA, Condominium, and Office Park Associations in North Metro Atlanta (including Woodstock, Marietta, Kennesaw, Canton, Holly Springs, Acworth, Ball Ground, Roswell, Alpharetta, Sandy Springs, Buckhead, Milton, Johns Creek, Cartersville, Powder Springs, Smyrna, Cumming, Dallas, Dunwoody, Buford, Fulton, Cobb, Cherokee, Forsyth, Paulding, Gwinnett, Dekalb, Pickens and Bartow Counties). All Rights Reserved."), indicating that Douglas understands the importance of copyright protection/intellectual property rights and is actually representing that it owns each of the photographs published on its website. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff

has sufficiently pled a willful violation…."). Douglas clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

42. Plaintiff has been damaged as a direct and proximate result of Douglas' infringement.

43. Plaintiff is entitled to recover his actual damages resulting from Douglas' unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover damages based on a disgorgement of Douglas' profits from infringement of the Work, which amounts shall be proven at trial.

44. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

45. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover his costs and attorneys' fees as a result of Douglas' conduct.

46. Defendant's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Douglas as follows:

a. A declaration that Douglas has infringed Plaintiff's copyrights in the Work;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each photograph comprising the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Douglas, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Douglas, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

## COUNT II – COPYRIGHT INFRINGEMENT
(Colleton)

47. Plaintiffs re-allege and incorporate paragraphs 1 through 28 as set forth above.

48. Each photograph comprising the Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

49. Plaintiff owns a valid copyright in each photograph comprising the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

50. As a result of Plaintiff's reproduction, distribution, and public display of the Work, Colleton had access to the Work prior to its own reproduction, distribution, and public display of the Work on its website.

51. Colleton reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

52. By its actions, Colleton infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly

displaying the Work for its own commercial purposes.

53. Alternatively, to the extent Colleton did not directly infringe Plaintiff's rights in the Work, Colleton is liable for vicarious infringement.

54. "Even though the Copyright Act does not specifically provide for secondary liability, vicarious and contributory copyright infringement are well established principles derived from common law." BUC Int'l Corp., 489 F.3d at n. 19 (internal citation omitted). "For [a defendant] to be secondarily liable, the [plaintiff] must establish that there has been direct infringement by a third party." Venus Fashions, Inc., No. 3:16-cv-907-J-39MCR, 2017 U.S. Dist. LEXIS 155748, at * 32;

55. "Vicarious liability occurs when one has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Faulkner Press, L.L.C. v. Class Notes, L.L.C., No. 1:08cv49-SPM/AK, 2009 U.S. Dist. LEXIS 61022, at *3 (N.D. Fla. Mar. 31, 2009); Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930-31 (2005) ("Liability for vicarious copyright infringement arises … even if the defendant initially lacks knowledge of the infringement."); Coach Inc. v. Kim's Mgmt., Inc., No. 1:10-CV-02746-JJOF, 2012 U.S. Dist. LEXIS 179557, at *11 (N.D. Ga. Feb. 28, 2012) ("Vicarious copyright infringement liability is an outgrowth of respondeat superior.") ; UMG Recordings, Inc. v. Bright House Networks, LLC, No. 8:19-cv-710-MSS-TGW, 2020 U.S. Dist. LEXIS 122774 (M.D. Fla. July 8, 2020) ("The doctrine subsequently expanded to cover independent-contractor relationships as well.)

56. As the owner of the website in question and the entity which retained Douglas to design/publish content thereon, Colleton has the right and ability to control the infringing acts of Douglas yet declined or failed to stop Douglas from engaging in its infringing activity.

57. Colleton's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Colleton itself utilizes a copyright disclaimer on its website ("Copyright 2021 – Colleton Plantation"), indicating that Defendant understands the importance of copyright protection/intellectual property rights and is actually representing that it owns each of the photographs published on its website. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Colleton clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

58. Plaintiff has been damaged as a direct and proximate result of Colleton's infringement.

59. Plaintiff is entitled to recover his actual damages resulting from Colleton's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover damages based on a disgorgement of Colleton's profits from infringement

of the Work, which amounts shall be proven at trial.

60. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

61. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover his costs and attorneys' fees as a result of Colleton's conduct.

62. Colleton's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Colleton as follows:

h. A declaration that Colleton has infringed Plaintiff's copyrights in the Work;

i. A declaration that such infringement is willful;

j. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $150,000.00 for each photograph comprising the Work;

k. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

l. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

m. Permanently enjoining Colleton, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Colleton, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

n. For such other relief as the Court deems just and proper.

## **COUNT III – REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION**

63. Plaintiff re-alleges and incorporates paragraphs 1 through 28 as set forth above.

64. As evidenced above, the Work contains copyright management information identifying Plaintiff as the owner/creator of the Work.

65. Defendants knowingly and with the intent to enable or facilitate copyright infringement, removed the copyright management information from the Work in violation of 17 U.S.C. § 1202(b). Defendants did not simply recklessly copy the Work in a pre-altered state – but deliberately caused the copyright management information to be removed.

66. Defendants committed these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

67. If Defendants did not remove the copyright management information themselves, Defendants caused, directed, and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

68. As a direct and proximate result of Defendants' conduct in removing the foregoing copyright management information, Plaintiff has been damaged.

69. Defendants' conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b), Plaintiff is entitled to a permanent injunction prohibiting any further violation of 17 U.S.C. § 1202 by Defendants.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A declaration that Defendants have violated Plaintiff's copyrights in the Work by removing or causing to be removed Plaintiff's copyright management information displayed thereon;

b. A declaration that such violation is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for willful infringement up to $25,000.00 for each infringement of the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5);

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the Work with its copyright management information removed; and

g. For such other relief as the Court deems just and proper.

**Demand For Jury Trial**

Plaintiff demands a trial by jury on all issued so triable.


Dated: July 20, 2023.


COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone:  (877) 437-6228
james@copycatlegal.com


By: /s/ James D'Loughy_____
        James D'Loughy, Esq.