# EXHIBIT 1

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-05250-5

6/15/2023 4:23 PM

TIANA P. GARNER, CLERK

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of  GWINNETT _____ County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed | | Case Number 23-A-05250-5 |
| MM-DD-YYYY | | |

**Plaintiff(s)**
Exquisite Delites Inc d/b/a Exquisite Delites Cat

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
Twin City Fire Insurance Company

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Michael D. Turner     **Bar Number** 216414     **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☒ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**          **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
_____
_____

SHERIFF'S ENTRY OF SERVICE

Civil Action No. 23-A-05250-5

| | |
|---|---|
| Superior Court | ☒ |
| Magistrate Court | ☐ |
| State Court | ☐ |
| Probate Court | ☐ |
| Juvenile Court | ☐ |

Date Filed 6/15/2023

Georgia, Gwinnett COUNTY

Exquisite Delites Inc d/b/a Exquisite Delites Cat

Attorney's Address

Huggins Law Firm, LLC

110 Norcross St.

Roswell, GA 30075

Plaintiff

VS.

Twin City Fire Insurance Company

Name and Address of Party to Served

Twin City Fire Insurance Company

Registered Agent: C T Corporation System

289 S. Culver St., Lawrenceville, GA 30046

Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place abode in this County.

☐ Delivered same into hands of _____ described as follows: age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**
Served the defendant _____ a corporation

☐ by leaving a copy of the within action and summons with _____
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
☐ envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
☐ not to be found in the jurisdiction of this Court.

This _____ day of _____, 20____.

DEPUTY

## CLERK'S | DEFENDANT'S | PLAINTIFF'S COPY

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-05250-5
6/15/2023 4:23 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Exquisite Delites Inc d/b/a Exquisite Delites Cat**
2261 Troutdale Drive, Decatur, GA 30032
4391 Glenwood Road, Decatur, GA 30032

23-A-05250-5

**PLAINTIFF**        CIVIL ACTION NUMBER: _____

**VS**

**Twin City Fire Insurance Company**
**RA: C T Corporation System**
289 S. Culver St.
Lawrenceville, GA 30046

**DEFENDANT**

---

### SUMMONS

---

**TO THE ABOVE-NAMED DEFENDANT**:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael D. Turner**
**Attorney For the Plaintiff**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
mdturner@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

16th day of June, 2023

This _____ day of _____, 2023.

Tiana P. Garner,
Clerk of Superior Court

*Krystal Castaneda*

BY: _____
Deputy Clerk

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-05250-5**
6/15/2023 4:23 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

EXQUISITE DELITES INC D/B/A    )
EXQUISITE DELITES CAT,     )
    **Plaintiff,**          )
                      )
  **v.**                 )     **CIVIL ACTION FILE NO.:** 23-A-05250-5
                      )     _____
**TWIN CITY FIRE INSURANCE**  )
**COMPANY,**            )
 **a foreign corporation,**      )
                      )
    **Defendant.**        )

### COMPLAINT

**COMES NOW** Plaintiff **Exquisite Delites Inc d/b/a Exquisite Delites Cat**, by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **Twin City Fire Insurance Company**, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an entity conducting business in DeKalb County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 289 S. Culver St., Lawrenceville, GA 30046, where it may be served with process through its registered agent, C T Corporation System, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

### 4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

### 5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

### 6.

Prior to April 29, 2022, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. 20SBAAM1439 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

### 7.

The Policy provides numerous coverages for the real and personal property located at 4391 Glenwood Road, Decatur, GA 30032 (the "Insured Property," "Property," or the "home"). The

2

Policy likewise insures against loss due to Fire, subject to a deductible of $1,000.00 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

On or about April 29, 2022, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from Fire (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Fire event. Defendant failed to properly indemnify the Plaintiff and estimated Plaintiff's total loss to be $64,890.16. Plaintiff's deductible is $1,000.00 per occurrence, and Defendant withheld $1,412.38 in recoverable depreciation; thus, after deductions for depreciation and Plaintiff's deductible, Defendant claims Plaintiff was due $63,477.78 as indemnification under the Policy. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional

payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

17.

Plaintiff made repeated requests for payment of the claim, including a written demand sent to Defendant on March 28, 2022. A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for $173,325.00 less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's March 28, 2022, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

5

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

35.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

8

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

9

40.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## **DEMAND FOR JURY TRIAL**

41.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## **PRAYER FOR RELIEF**

42.

**WHEREFORE,** Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its

intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d.  Plaintiff's attorneys' fees and costs of suit in this action;

e.  Plaintiff's consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 15th day of June, 2023.

RESPECTFULLY SUBMITTED,

The Huggins Law Firm, LLC
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

# EXHIBIT A

Prepare. Protect. Prevail.



**THE
HARTFORD**

Business Insurance
Employee Benefits
Auto

**APRIL 4, 2023**

**Insured: EXQUISITE DELITE INCDBA EXQUISITE DELITES CATERING
Policy Number: 20 SBA AM1439
Policy Period 2/11/2022-2/11/2023
Writing Company: TWIN CITY FIRE INSURANCE COMPANY**

This will verify that, to the best of the undersigned's knowledge, the attached is a complete and accurate representation of insurance policy referenced above. Documents and/or information produced herewith are kept and maintained in the ordinary course of business.

*Marjorie L. Ford*

**Marjorie L. Ford
SENIOR MLC GS BILLING/PREM AUDIT
Clinton Business Center
Hartford Office Location**



# THANK YOU FOR RENEWING YOUR POLICY WITH US

If you're receiving this renewal through the mail directly from The Hartford, please note that we've only attached new, changed or updated documents. These include your new declarations page, which outlines your coverage, as well as any notices and brochures with updated information. We leave out unchanged documents to help cut down on paperwork and mailing costs. You can keep the attached documents filed alongside those from your previous policy if you wish.

If you're receiving this renewal electronically, or it's been mailed by your agent, it may include all of your documents - even ones that haven't changed.

In either case, keep in mind that you can view, download or print any of these documents online. Just register or log into your account https://business.thehartford.com and click on "Documents". For added convenience, you can also pay your bill, request a Certificate of Insurance, check claims status, update preferences and more.

EXQUISITE DELITES INC

2261 TROUTDALE DR
DECATUR                 GA  30032



**THE**
**HARTFORD**

Policy Number: 20 SBA AM1439
Renewal Date: 02/11/22

Thank you for being a loyal customer of The Hartford.

# # 1: Your Hartford Policy
Enclosed are renewal documents for your policy, which is scheduled to renew on   02/11/22  . Along
with a new Declarations Page, which details the coverages provided by your policy, we are enclosing
important policy documents. Please be aware that you will receive an invoice separately for this new
policy term approximately 30 days prior to the renewal date; no action is required now.

To ensure the premium you paid for this past policy term was accurate, we may contact you by letter,
phone or email to conduct a premium audit. If contacted, we will advise what information is needed to
complete the audit.

# # 2: Your Business Insurance Coverage Checkup
Now is a great time to complete a business insurance coverage checkup with a Hartford insurance
Professional. Because you wear so many hats each day, you may not be thinking about how changes to
your business can impact the type and amount of insurance coverage needed to protect it.

Together we will evaluate how your needs may have changed over the past year. Examples include:
-   Has your mailing address and/or the physical location of your business changed?
-   Has there been any increase/decrease in the amount of business property/equipment you own?
-   Has there been any increase/decrease in your company's payroll or sales?
-   Have you added or eliminated any vehicles used in your business operations?
-   Are the bill plan and deductible on your policy right for your business?

**During the review we may make coverage recommendations, provide peace of mind solutions,
and possibly reduce your costs: Here is all you need to do:**
-   Call toll free  (866) 467-8730 , and select our renewal review service option any
    weekday from 7 A.M. to 7 P.M. CST and request your business insurance check-up.
-   To best serve you, please have your Policy Number or Account Number and a Copy of
    your current Renewal Policy in hand when you call.

# # 3: Servicing Your Needs
To login or register for our Online Business Service Center, go to www.thehartford.com/servicecenter
where any time, day or night you can:
-   Pay your bill, view payment history and enroll in Auto Pay
-   Request Auto ID Cards and Certificates of Insurance
-   View electronic copies of billing and policy documents and sign up for paperless delivery

# # 4: If You've Had A Loss or Accident... Report It Immediately
We want to help! Contact us as quickly as possible at 1-800-327-3636.
-   Representatives are available 24-7 to assist in helping you recover from your loss.

On behalf of  CRADDOCK LLC/PHS                              and The Hartford, we appreciate the
opportunity to have been of service to you this past year and look forward to serving your business
insurance needs for the upcoming year.

Sincerely,
Your Hartford Team

# Insurance Policy Billing Information

**Thank you for selecting The Hartford for your business insurance needs.**

**Shortly, you will receive your first bill from us. You are receiving this Notice so you know what to expect as a valued customer of The Hartford. Should you have any questions after reviewing this information, please contact us at 866-467-8730, and we will be happy to assist you.**

- Your total policy premium will appear on your policy's Declarations Page. You will be billed based on the payment plan you selected.

- You may pay the "minimum due" as it appears on your insurance bill or pay the policy balance in full.

- An installment service fee is added to each installment. A late fee will also be applied if the "minimum due" is not received by the due date shown on your bill. Service and late payment fees do not apply in all states.

- If you selected installment billing, any credit or additional premium due as the result of a change made to your policy, will be spread over the remaining billing installments. Additional premium due as a result of an audit will be billed in full on your next bill date following the completion of the audit.

- If you elected Electronic Funds Transfer (EFT), policy changes may result in changes to the amount automatically withdrawn from your bank account. The invoice you receive following a policy change will include future withdrawal amounts. If you need to adjust or stop your next scheduled EFT withdrawal, please contact us at least 3 days prior to the scheduled withdrawal date at the telephone number shown below.

- If you selected installment billing and pay the premiums for your first policy term on time, at renewal, your account may qualify for our "Equal Installment" feature. This means that the percentage due for each installment, including the initial renewal installment, will be the same throughout the policy term – helping you better manage cash flow. Equal Installments will continue as long as you pay your premiums on time and no cancellation notices are issued for any policy on your account. If you no longer qualify for Equal Installments, future renewals will be billed based on the payment plan you selected, which includes a higher initial installment amount.

- If your policy is eligible for renewal, your bill for the upcoming policy term will be sent to you approximately 30 days prior to your policy's renewal date. If your insurance needs change, please contact us at least 60 days prior to your renewal date so we can properly address any adjustments needed.

- One bill convenience – you have the option of combining all eligible Hartford policies on one single bill allowing you to make one payment for all policies on your account as payments are due.

## You're In Control

In addition to selecting a bill plan option that best meets your budget, you have the flexibility to decide how your payments are made ...

- **Repetitive EFT:** Sign up for Repetitive EFT payments and have payments automatically withdrawn from your bank account. This option saves you money by reducing the amount of the Installment service fee.
- **Pay Online:** Register at www.thehartford.com/servicecenter. Online Bill Pay is Quick, Easy and Secure!
- **Pay by Check:** Send a check with your remittance stub in the envelope provided with your bill.
- **Pay by Phone:** Call toll-free 1-866-467-8730.

**Should you have any questions about your bill, please call Customer Service toll-free number: 1-866-467-8730 - 7AM – 7PM CST. We look forward to being of service to you.**

Form 100722 11th Rev. Printed in U.S.A.



# IMPORTANT NOTICE TO POLICYHOLDERS
# THE HARTFORD CYBER CENTER WEBSITE ACCESS

Thank you for choosing The Hartford for your business insurance needs.

You are receiving this Notice because you purchased a business owner's policy from The Hartford, (your Policy was issued by The Hartford writing company identified on your policy Declarations page) which includes access to The Hartford Cyber Center. This portal was created because we recognize that businesses face a variety of cyber-related exposures and need help managing the related risks. These exposures include data breaches, computer virus attacks and cyber extortion threats.

Through The Hartford Cyber Center, you have access to:

- A panel of third party incident response service providers
- Third party cybersecurity pre-incident service providers and a list of approved services to help protect your business before a cyber-threat occurs
- Risk management tools, including self-assessments, best practice guides, templates, sample incident response plans, and data breach cost calculators
- White papers, blogs and webinars from leading privacy and security practitioners
- Up-to-date cyber-related news and events, including examples of privacy and security related events

Accessing The Hartford Cyber Center is easy

1. Visit www.thehartford.com/cybercenter
2. Enter policyholder information
3. Access code: 952689
4. Login to The Hartford Cyber Center

This Notice does not amend or otherwise affect the provisions of your business owner's policy.

**Coverage Options:**

The Hartford offers a variety of endorsements to your business owner's policy that can help protect your business from a broad range of cyber-related threats. Please review your coverage with your insurance agent or broker to determine the most appropriate cyber coverages and limits for your business.

**Claims Reporting:**

If you have a claim, you can report it by calling The Hartford's toll-free claims line at 1-800-327-3636.

Should you have any questions, please contact your insurance agent, broker or you may contact us directly.

We appreciate your business and look forward to being of continued service to you.

Please be aware that:

- The Hartford Cyber Center is a proprietary web portal exclusively provided to customers of The Hartford. Please do not share the access code with anyone outside your organization.
- Registration is required to access the Cyber Center. You may register as many users as necessary.
- Contacting a service provider about any issue does not constitute providing The Hartford notice of a claim as required under your insurance policy. Read your insurance policy and discuss any questions with your agent or broker.

The Hartford Cyber Center provides third party service provider references and materials for educational purposes only. The Hartford does not specifically endorse any such service provider within The Hartford Cyber Center and hereby disclaims all liability with respect to use of or reliance on such service providers. All service providers are independent contractors and not agents of The Hartford. The Hartford does not warrant the performance of the service providers, even if such services are covered under your Business Owners Policy. We strongly encourage you to conduct your own assessments of the service providers' services and the fitness or adequacy of such services for your particular needs.

© 2016, The Hartford

# Spectrum™

## Business Owner's Policy



**THE HARTFORD**



## PRODUCER COMPENSATION NOTICE

You can review and obtain information on The Hartford's producer compensation practices at www.TheHartford.com or at 1-800-592-5717.

Form G-3418-0

POLICY NUMBER: 20 SBA AM1439



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.**

# DISCLOSURE/CAP ON LOSSES - TERRORISM

# RISK INSURANCE ACT

| SCHEDULE | |
|---|---|
| Terrorism Premium:<br>$        $37.00 | |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for "certified acts of terrorism" under TRIA. The portion of your premium attributable to terrorism coverage is shown in the above Schedule of this endorsement.

**B.** The following definition is added with respect to the provisions of this endorsement.

1. A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of TRIA, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" include the following:

   a. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

   b. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the

United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C. Disclosure Of Federal Share Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for 80% of insured losses attributable to "certified acts of terrorism" under TRIA that exceeds the applicable insurer deductible.

However, if aggregate industry insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

**D. Cap On Insurer Liability for Terrorism Losses**

If aggregate industry insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible.

Form SS 83 76 12 20                                                                                   Page 1 of 2

© 2020, The Hartford

(Includes copyrighted material of Insurance Services Office, Inc., with its permission)

In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**E. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by any pollution, pathogenic, nuclear hazard or war exclusions which may be included on this Policy

**F.** All other terms and conditions remain the same



# IMPORTANT NOTICE TO POLICYHOLDERS

| ERISA - EMPLOYEE DISHONESTY |
|---|

You are receiving this notice because your renewal policy contains ERISA-EMPLOYEE DISHONESTY.

The Employee Retirement Income Security Act of 1974 (ERISA) is a federal law that sets rules and standards of conduct for private sector employee benefit plans and those that invest and manage their assets. One of ERISA's requirements is that people who handle plan funds and other property must be covered by a fidelity bond to protect the plan from losses due to fraud or dishonesty.

Please be advised that on or before the beginning of each plan year, the plan administrator or other plan fiduciary must ensure that the plan has the legally required bonding amount for the individuals who will handle the plan's funds and other property. If necessary, the plan administrator or other plan fiduciary may need to obtain appropriate adjustments or additional protection to ensure that the coverage will be in compliance for the new plan year.

If you wish to adjust the amount of your ERISA fidelity bond, please reach out to your agent or Hartford representative.

© 2018, The Hartford



# IMPORTANT NOTICE TO POLICYHOLDERS

To help your insurance keep pace with increasing costs, we have increased your amount of insurance , giving you better protection in case of either a partial, or total loss to your property.

If you feel the new amount is not the proper one, please contact your agent or broker.

Form PC-374-0   Printed in U.S.A.

35
14
AM
SBA

This Spectrum Policy consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This Insurance is provided by the stock insurance company of The Hartford Insurance Group shown below.

**INSURER:**     TWIN CITY FIRE INSURANCE COMPANY
          ONE HARTFORD PLAZA, HARTFORD, CT 06155
**COMPANY CODE:** 7

**Policy Number:** 20 SBA AM1439  DV

## SPECTRUM POLICY DECLARATIONS

**Named Insured and Mailing Address:**      EXQUISITE DELITES INC
(No., Street, Town, State, Zip Code)       DBA EXQUISITE DELITES CATERING
                                   2361 TROUTDALE DR
                                   DECATUR        GA   30032

**Policy Period:**          **From**   02/11/22      **To**    02/11/23    1     YEAR
12:01 a.m., Standard time at your mailing address shown above. Exception: 12 noon in New Hampshire.
**Name of Agent/Broker:** CRADDOCK LLC/PHS
**Code:** 266879

**Previous Policy Number:** 20 SBA AM1439.

**Named Insured is:** CORPORATION

**Audit Period:** ANNUAL

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

**TOTAL ANNUAL PREMIUM IS:**            $1,891
IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE HARTFORD, YOUR POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT.

Countersigned by         *Susan F. Castaneda*

                                  Authorized Representative           12/14/21
                                                                 Date

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 20 SBA AM1439

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 001       Building: 001

2261 TROUTDALE DR
DECATUR        GA 30032

Description of Business:
Restaurant - Caterers

Deductible: : $ 1,000 PER OCCURRENCE

### BUILDING AND BUSINESS PERSONAL PROPERTY   LIMITS OF INSURANCE

**BUILDING**

                                         NO COVERAGE

**BUSINESS PERSONAL PROPERTY**

   REPLACEMENT COST                    $     1,000

**PERSONAL PROPERTY OF OTHERS**

   REPLACEMENT COST                    NO COVERAGE

MONEY AND SECURITIES

INSIDE THE PREMISES                    $    10,000
OUTSIDE THE PREMISES                   $    10,000

**SPECTRUM POLICY DECLARATIONS (Continued)**
**POLICY NUMBER:** 20 SBA AN1439

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001      **Building:** 001

**PROPERTY OPTIONAL COVERAGES APPLICABLE**     **LIMITS OF INSURANCE**
         **TO THIS LOCATION**

RESTAURANT STRETCH
FORM: SS 04 11
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

## SPECTRUM POLICY DECLARATIONS  (Continued)
POLICY NUMBER: 20 SBA AN1439

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location:  002      Building:  001

1411 COVINGTON DR
DECATUR                GA 30032

**Description of Business:**
Restaurant  - Caterers

**Deductible:** $ 1,000 PER OCCURRENCE

## BUILDING AND BUSINESS PERSONAL PROPERTY   LIMITS OF INSURANCE

BUILDING

                                      NO COVERAGE

BUSINESS PERSONAL PROPERTY

   REPLACEMENT COST                   $    92,800

PERSONAL PROPERTY OF OTHERS

   REPLACEMENT COST                   NO COVERAGE

MONEY AND SECURITIES

   INSIDE THE PREMISES                $    10,000
   OUTSIDE THE PREMISES               $    10,000

**SPECTRUM POLICY DECLARATIONS (Continued)**
**POLICY NUMBER:** 20 GBA AN1439

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 002     **Building:** 001

**PROPERTY OPTIONAL COVERAGES APPLICABLE    LIMITS OF INSURANCE
TO THIS LOCATION**

RESTAURANT STRETCH
FORM: SS 04 11
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 20 SBA AM1439

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS | LIMITS OF INSURANCE |
|---|---|
| BUSINESS INCOME AND EXTRA EXPENSE COVERAGE | 12 MONTHS ACTUAL LOSS SUSTAINED |
| COVERAGE INCLUDES THE FOLLOWING COVERAGE EXTENSIONS: | |
| ACTION OF CIVIL AUTHORITY: | 30 DAYS |
| EXTENDED BUSINESS INCOME: | 30 CONSECUTIVE DAYS |

EQUIPMENT BREAKDOWN COVERAGE
  COVERAGE FOR DIRECT PHYSICAL LOSS
  DUE TO:
    MECHANICAL BREAKDOWN,
    ARTIFICIALLY GENERATED CURRENT
    AND STEAM EXPLOSION

| THIS ADDITIONAL COVERAGE INCLUDES THE FOLLOWING EXTENSIONS | | |
|---|---|---|
| HAZARDOUS SUBSTANCES | $ | 50,000 |
| EXPEDITING EXPENSES | $ | 50,000 |

MECHANICAL BREAKDOWN COVERAGE ONLY
APPLIES WHEN BUILDING OR BUSINESS
PERSONAL PROPERTY IS SELECTED ON
THE POLICY

| IDENTITY RECOVERY COVERAGE | $ | 15,000 |
|---|---|---|
| FORM SS 41 12 | | |

COMPUTERS AND MEDIA COVERAGE
FORM SS 04 41
  DEDUCTIBLE: $ 1,000

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 20 SBA AM1419

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| LIABILITY AND MEDICAL EXPENSES | $1,000,000 |
| MEDICAL EXPENSES - ANY ONE PERSON | $ 5,000 |
| PERSONAL AND ADVERTISING INJURY | $1,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU<br>ANY ONE PREMISES | $1,000,000 |
| AGGREGATE LIMITS<br>PRODUCTS-COMPLETED OPERATIONS | $2,000,000 |
| GENERAL AGGREGATE | $2,000,000 |
| EMPLOYMENT PRACTICES LIABILITY<br>COVERAGE: FORM SS 09 01 | |
| EACH CLAIM LIMIT | $ 10,000 |
| DEDUCTIBLE - EACH CLAIM LIMIT<br>NOT APPLICABLE | |
| AGGREGATE LIMIT | $ 10,000 |
| RETROACTIVE DATE: 02112019 | |

This Employment Practices Liability Coverage contains claims made coverage.  Except as may be otherwise provided herein, specified coverages of this insurance are limited generally to liability for injuries for which claims are first made against the insured while the insurance is in force.  Please read and review the insurance carefully and discuss the coverage with your Hartford Agent or Broker.

The Limits of Insurance stated in this Declarations will be reduced, and may be completely exhausted, by the payment of "defense expense" and, in such event,  The Company will not be obligated to pay any further "defense expense" or sums which the insured is or may become legally obligated to pay as "damages".

| BUSINESS LIABILITY OPTIONAL<br>COVERAGES | |
|---|---|
| HIRED/NON-OWNED AUTO LIABILITY | $1,000,000 |
| CYBERFLEX COVERAGE<br>FORM SS 40 16 | |

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 20 SBA AM1439

**BUSINESS LIABILITY OPTIONAL COVERAGES**        **LIMITS OF INSURANCE**
    **(Continued)**

UNMANNED AIRCRAFT LIABILITY
IS EXCLUDED
SEE FORM: SS 42 06

**SPECTRUM POLICY DECLARATIONS (Continued)**
**POLICY NUMBER:** 20 SBA AM1439

**Form Numbers of Forms and Endorsements that apply:**

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS | 00 | 01 | 03 | 14 | SS | 00 | 05 | 10 | 08 | SS | 00 | 07 | 07 | 05 | SS | 00 | 08 | 04 | 05 |

```
SS 00 01 03 14    SS 00 05 10 08    SS 00 07 07 05    SS 00 08 04 05
SS 00 38 04 04    SS 00 90 09 15    SS 00 62 07 19    SS 00 64 09 16
SS 04 04 10 15    SS 01 04 03 20    SS 42 06 03 17    SS 04 11 09 07
SS 04 19 04 09    SS 04 22 07 05    SS 04 30 07 05    SS 04 38 09 09
SS 04 39 07 05    SS 04 41 01 18    SS 04 42 03 17    SS 04 44 07 05
SS 04 45 07 05    SS 04 46 09 14    SS 04 47 04 09    SS 04 80 03 00
SS 04 86 03 00    SS 40 18 07 05    SS 40 26 03 17    SS 41 12 12 17
SS 41 32 09 06    SS 41 51 10 09    SS 41 63 06 11    IH 10 01 09 86
SS 05 10 05 00    SS 05 47 09 15    SS 51 11 03 17    SS 50 40 10 03
SS 09 01 12 14    SS 09 67 09 14    SS 09 70 12 14    SS 09 71 12 14
SS 09 76 12 14    IH 99 40 04 09    IH 99 41 04 09    SS 83 76 12 20
SS 89 93 07 16
```

**Form SS 00 02 12 06**
**Process Date:** 12/14/22

**Policy Expiration Date:** 02/11/23

# Spectrum Supplemental Schedule of Auditable Coverages



This schedule reflects only those locations that have classes and/or coverages that are subject to audit.

Policy Number: 20 SBA AM1439

Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy.

LOC/BLDG NO:           001/001                  TERR: 012
LOCATION:              2261 TROUTDALE DR
                       DECATUR          GA 30032

CLASSIFICATION CODE NUMBER  58161
DESCRIPTION:
   Restaurant - Caterers

COVERAGE DESCRIPTION:      PREMISES/OPERATIONS  COVERAGE

REFER TO:                  BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:              SALES PER 1000

EXPOSURE:                  65,563

FINAL RATE:                2.700

ADVANCE PREMIUM:           $177.00


COVERAGE DESCRIPTION:      PRODUCTS/COMPLETED  OPERATIONS  COVERAGE

REFER TO:                  BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:              SALES PER 1000

EXPOSURE:                  65,563

FINAL RATE:                0.747

ADVANCE PREMIUM:           $49.00


COVERAGE DESCRIPTION:      BUSINESS INCOME & EXTRA EXPENSE - ACTUAL LOSS
                           SUSTAINED

REFER TO:                  SPECIAL PROPERTY COVERAGE PART FORM SS 00 07

RATING BASIS:              SALES PER 1000

EXPOSURE:                  65,563

FINAL RATE:                0.030

ADVANCE PREMIUM:           $2.00


Form SS 00 38 04 04T                    Page  001   (CONTINUED ON NEXT PAGE)
Process Date: 12/14/21                  Policy Expiration Date: 02/11/23

Spectrum Supplemental Schedule of Auditable Coverages  (Continued)

Policy Number:  39  SBA  AM1439

---------------------------------------------------------------------------

| | |
|---|---|
| LOC/BLDG NO: | 002/001            TERR: 012 |
| LOCATION: | 3411 COVINGTON DR |
| | DECATUR            GA 30033 |

CLASSIFICATION CODE NUMBER  58161
DESCRIPTION:
  Restaurant - Caterers

| | |
|---|---|
| COVERAGE DESCRIPTION: | PREMISES/OPERATIONS COVERAGE |
| REFER TO: | BUSINESS LIABILITY COVERAGE PART FORM SS 00 08 |
| RATING BASIS: | SALES PER 1000 |
| EXPOSURE: | 1 |
| FINAL RATE: | 0.000 |
| ADVANCE PREMIUM: | $1.00 |

| | |
|---|---|
| COVERAGE DESCRIPTION: | PRODUCTS/COMPLETED OPERATIONS COVERAGE |
| REFER TO: | BUSINESS LIABILITY COVERAGE PART FORM SS 00 08 |
| RATING BASIS: | SALES PER 1000 |
| EXPOSURE: | 1 |
| FINAL RATE: | 0.000 |
| ADVANCE PREMIUM: | $1.00 |

| | |
|---|---|
| COVERAGE DESCRIPTION: | BUSINESS INCOME & EXTRA EXPENSE - ACTUAL LOSS SUSTAINED |
| REFER TO: | SPECIAL PROPERTY COVERAGE PART FORM SS 00 07 |
| RATING BASIS: | SALES PER 1000 |
| EXPOSURE: | 1 |
| FINAL RATE: | 0.000 |
| ADVANCE PREMIUM: | $369.00 |

---------------------------------------------------------------------------

| | |
|---|---|
| TOTAL ADVANCE PREMIUM FOR AUDITABLE COVERAGES | $995.00    DOES NOT INCLUDE TERRORISM OR ANY APPLICABLE STATE SURCHARGES OR FEES OR MINIMUM PREMIUMS |

---------------------------------------------------------------------------

Form SS 00 38 04 04T
Process Date: 12/14/21

Page:  002
Policy Expiration Date: 02/11/23



# RESTAURANT STRETCH SUMMARY

## SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Restaurant Stretch Coverage form SS 04 11 which is included in this policy. No coverage is provided by this summary. Refer to coverage form SS 04 11 to determine the scope of your insurance protection.

The Limit of Insurance for the following Additional Coverages are in addition to any other limit of Insurance provided under this policy:

| Coverage | Limit |
|---|---|
| Accounts Receivable – On/Off-Premises | $ 25,000 |
| Brands and Labels | Up to Business Personal Property Limit |
| Claims Expense | $ 10,000 |
| Computer Fraud | $ 5,000 |
| Computers and Media | $ 25,000 |
| Debris Removal | $ 25,000 |
| Employee Dishonesty (including ERISA) | $ 10,000 |
| Fine Arts | $ 10,000 |
| Forgery | $ 10,000 |
| Laptop Computers – Worldwide Coverage | $ 10,000 |
| Lost Keys | $ 2,500 |
| Off Premises Service – Direct Damage | $ 10,000 |
| Outdoor Signs | Full Value |
| Pairs and Sets | Up to Business Personal Property Limit |
| Personal Property of Others | $ 10,000 |
| Property at Other Premises | $ 10,000 |
| Salespersons' Samples | $ 1,000 |
| Sewer and Drain Back Up | Included up to Covered Property Limits |
| Sump Overflow or Sump Pump Failure | $ 15,000 |
| Temperature Change | $ 10,000 |
| Tenant Building and Business Personal Property Coverage– Required by Lease | $ 20,000 |
| Transit Property in the Care of Carriers for Hire | $ 10,000 |
| Unauthorized Business Card Use | $ 2,500 |
| Valuable Papers and Records – On/Off-Premises | $ 25,000 |

The Limits of Insurance for the following Coverage Extensions are a replacement of the Limit of Insurance provided under the Standard Property Coverage Form or the Special Property Coverage Form, whichever applies to the policy:

| Coverage | Limit |
|---|---|
| Newly Acquired or Constructed Property - 180 Days | |
|     Building | $1,000,000 |
|     Business Personal Property | $ 500,000 |
|     Business Income and Extra Expense | $ 500,000 |
| Outdoor Property | $ 20,000 aggregate/ $1,000 per item |
| Personal Effects | $ 25,000 |
| Property Off-Premises | $ 15,000 |

© 2015, The Hartford

The following changes apply only if Business Income and Extra Expense are covered under this policy. The Limits of Insurance for the following Business Income and Extra Expense Coverages are in addition to any other Limit of Insurance provided under this policy.

| Coverage | Limit |
|---|---|
| Business Income Extension for Off-Premises Utility Services | $ 25,000 |
| Business Income Extension for Web Sites | $ 10,000/7 days |
| Business Income from Dependent Properties | $ 50,000 |
| Food Contamination | $ 25,000 |

The following Limit of Insurance for the following Business Income Coverage is a replacement of the Limit of Insurance provided under the Standard Property Coverage Form or the Special Property Coverage Form, whichever applies to the policy:

| Coverage | Limit |
|---|---|
| Extended Business Income | 60 Days |

The following changes apply only if the Special Property Coverage Form applies to this policy. The Limits of Insurance for the following Additional Coverages are in addition to any other limit of Insurance provided under this policy:

| Coverage | Limit |
|---|---|
| Money and Securities | $ 10,000 inside the premises/ |
|  | $ 10,000 outside the premises |

The following changes apply to Loss Payment Conditions:

| Coverage | Limit |
|---|---|
| Valuation Changes |  |
| Commodity Stock | Included |
| "Finished Stock" | Included |
| Mercantile Stock – Sold | Included |

# COMMON POLICY CONDITIONS

© 2008, The Hartford

# QUICK REFERENCE - SPECTRUM POLICY

## DECLARATIONS
### and
### COMMON POLICY CONDITIONS

## I.  DECLARATIONS

Named Insured and Mailing Address
Policy Period
Description and Business Location
Coverages and Limits of Insurance

## II.  COMMON POLICY CONDITIONS

| | | Beginning on Page |
|---|---|---|
| A. | Cancellation | 1 |
| B. | Changes | 1 |
| C. | Concealment, Misrepresentation Or Fraud | 2 |
| D. | Examination Of Your Books And Records | 2 |
| E. | Inspections And Surveys | 2 |
| F. | Insurance Under Two Or More Coverages | 2 |
| G. | Liberalization | 2 |
| H. | Other Insurance - Property Coverage | 2 |
| I. | Premiums | 2 |
| J. | Transfer Of Rights Of Recovery Against Others To Us | 2 |
| K. | Transfer Of Your Rights And Duties Under This Policy | 3 |
| L. | Premium Audit | 3 |

Form SS 00 05 10 08



# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

      Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for,

      within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

© 2006, The Hartford

**COMMON POLICY CONDITIONS**

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

1. We have the right but are not obligated to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. Any inspections, surveys, reports or recommendations will relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of any person. We do not represent or warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to, or at any time during, the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance - Property Coverage**

If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount

due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**I. Premiums**

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. If applicable, on each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

   b. Determined in accordance with Paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Changes in exposures or changes in your business operation, acquisition or use of locations that are not shown in the Declarations may occur during the policy period. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Transfer Of Rights Of Recovery Against Others To Us**

Applicable to Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property; or

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

## COMMON POLICY CONDITIONS

a.  Someone insured by this insurance;

b.  A business firm:

   (1)  Owned or controlled by you; or

   (2)  That owns or controls you; or

c.  Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**K.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is

appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**L.  Premium Audit**

a.  We will compute all premiums for this policy in accordance with our rules and rates.

b.  The premium amount shown in the Declarations is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Any additional premium found to be due as a result of the audit are due and payable on notice to the first Named Insured. If the deposit premium paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must: maintain all records related to the coverage provided by this policy and necessary to finalize the premium audit, and send us copies of the same upon our request.

Our President and Secretary have signed this policy. Where required by law, the Declarations page has also been countersigned by our duly authorized representative.

Kevin Barnett, Secretary

Douglas Elliot, President

# SPECIAL PROPERTY COVERAGE FORM

© 2005, The Hartford

# QUICK REFERENCE

### SPECIAL PROPERTY COVERAGE FORM
### READ YOUR POLICY CAREFULLY

**SPECIAL PROPERTY COVERAGE FORM**                                    Beginning on Page

**A.   COVERAGES**                                                        1

       Covered Property                                                   1
       Property Not Covered                                              1
       Covered Causes of Loss                                             2
       Limitations                                                        2
       Additional Coverages                                               3
       Coverage Extensions                                               13

**B.   EXCLUSIONS**                                                      16

**C.   LIMITS OF INSURANCE**                                            18

**D.   DEDUCTIBLES**                                                    19

**E.   PROPERTY LOSS CONDITIONS**                                       19

       Abandonment                                                      20
       Appraisal                                                        20
       Duties in the Event of Loss or Damage                            20
       Legal Action Against Us                                          20
       Loss Payment                                                     20
       Recovered Property                                               22
       Resumption of Operations                                         22
       Vacancy                                                          22

**F.   PROPERTY GENERAL CONDITIONS**                                    23

       Control of Property                                              23
       Mortgage Holders                                                 23
       No Benefit to Bailee                                             24
       Policy Period, Coverage Territory                                24

**G.   PROPERTY DEFINITIONS**                                          24

Form SS 00 07 07 05



# SPECIAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the SECTION G - PROPERTY DEFINITIONS.

## A.  COVERAGE

We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

1.  **Covered Property**

Covered Property as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations:

a.  Buildings, meaning only building(s) and structure(s) described in the Declarations, including:

(1)  Completed additions;

(2)  Permanently installed:

(a)  Fixtures;

(b)  Machinery; and

(c)  Equipment,

(3)  Outdoor fixtures;

(4)  Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5)  Building Glass, meaning glass that is part of a building or structure;

(6)  Personal property owned by you that is used to maintain or service the buildings or structures on the premises, including:

(a)  Fire extinguishing equipment;

(b)  Outdoor furniture;

(c)  Floor coverings; and

(d)  Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering, and

(7)  If not covered by other insurance:

(a)  Additions under construction, alterations and repairs to the buildings or structures,

(b)  Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "scheduled premises", used for making additions, alterations or repairs to the buildings or structures

b.  Business Personal Property located in or on the building(s) described in the Declarations at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", including:

(1)  Property you own that is used in your business;

(2)  Tools and equipment owned by your employees, which are used in your business operations;

(3)  Property of others that is in your care, custody or control;

(4)  "Tenant Improvements and Betterments"; and

(5)  Leased personal property for which you have contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

2.  **Property Not Covered**

Covered Property does not include:

a.  Aircraft, automobiles, motor trucks and other vehicles subject to motor vehicle registration;

b.  Automobiles held for sale;

c.  "Money", bullion, numismatic and philatelic property and bank notes or "securities" except as provided in any Additional Coverages or Optional Coverages. Lottery tickets held for sale and postage stamps in current use and having face value are not "securities";

d.  Contraband, or property in the course of illegal transportation or trade;

SPECIAL PROPERTY COVERAGE FORM

e.  Land (including land on which the property is located), water, growing crops or lawns;

f.  Outdoor fences, radio or television antennas (including satellite dishes), including their lead in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other then those held for sale or sold but not delivered), except as any of these may be provided for in the:

   (1)  Outdoor Property Coverage Extension; or

   (2)  Outdoor Signs Optional Coverage;

g.  Watercraft (including motors, equipment and accessories) while afloat;

h.  The cost to research, replace or restore the information on "valuable papers and records", except as may be provided in any Coverage Extensions or Optional Coverages.

i.  "Data" and "software" which exists on electronic "media" including the cost to research, replace or restore them, except as may be provided for in any Additional Coverages or Optional Coverages.

j.  Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided for in this policy.

3.  **Covered Causes of Loss**

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a.  Excluded in Section B., EXCLUSIONS; or

b.  Limited in Paragraph A.4. Limitations; that follow.

4.  **Limitations**

a.  We will not pay for direct loss of or damage to:

   (1)  Property that is missing, where the only evidence of the direct physical loss or physical damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Additional Coverage for "Money" and "Securities".

   (2)  Property that has been transferred to a person or to a place outside the "scheduled premises" on the basis of unauthorized instructions.

   (3)  The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (a)  The building or structure first sustains physical damage by a

Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (b)  The direct physical loss or physical damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

b.  Pets and animals are covered only if:

   (1)  They are inside the building; and

   (2)  They are owned by others and boarded by you, or owned by you and held for sale or sold but not delivered.

And then we will pay only if they are killed, stolen, or their destruction is made necessary by a "specified cause of loss".

c.  For direct physical loss or physical damage by "theft", the following types of property are covered only up to the limits shown:

   (1)  $2,500 for furs, fur garments and garments trimmed with fur;

   (2)  $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $500 or less per item;

   (3)  $2,500 for patterns, dies, molds and forms; and

   (4)  $500 for stamps, lottery tickets held for sale and letters of credit.

d.  Unless specifically provided under a separate endorsement and with a specific Limit of Insurance indicated in the Declarations, we will not pay for direct physical loss of or physical damage to "perishable stock" caused by or resulting from:

   (1)  A change in temperature or humidity resulting from

      (a)  Mechanical breakdown or failure of:

         (i)  Stationary heating plants; or

         (ii)  Refrigerating, cooling, or humidity control apparatus or equipment;

      (b)  Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires; or

      (c)  Complete or partial failure of electric power on your "scheduled premises"

   (2)  Contamination by refrigerant.

Form SS 00 07 07 05

SPECIAL PROPERTY COVERAGE FORM

5.  Additional Coverages

a.  Collapse

(1) With respect to Buildings:

(a) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building cannot be occupied for its intended purpose;

(b) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

(c) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

(d) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

(2) We will pay for direct physical loss or physical damage caused by or resulting from risks of collapse of a building or any part of a building that is insured by this policy caused only by one or more of the following:

(a) "Specified cause of loss" or breakage of building glass, if such loss or breakage was covered by this policy;

(b) Decay that is hidden from view, unless the presence of such decay was known to an insured prior to collapse;

(c) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(d) Weight of people or personal property;

(e) Weight of rain that collects on a roof; and

(f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

The criteria set forth in Paragraphs (1)(a) through (1)(d) do not limit the coverage otherwise provided under this Additional Coverage for the Causes of Loss listed in Paragraph (2)(a), (2)(d), and (2)(e).

(3) If the collapse is caused by a Covered Cause of Loss listed in Paragraphs (2)(b) through (2)(f), we will pay for direct physical loss or of physical damage to the property listed below, but only if such physical loss or physical damage is a direct result of the collapse of a building insured under this policy, and the property is property covered under this policy:

(a) Awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

(4) If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if

(a) The collapse was caused by a cause of loss listed in Paragraphs (2)(a) through (2)(f) of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph (3) above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph (4) does not apply to personal property if marring or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(5) This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this policy.

SPECIAL PROPERTY COVERAGE FORM

b. **Debris Removal**

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or physical damage, or

(b) The end of the policy period.

(2) The most we will pay under this additional Coverage is 25% of the amount we pay for the direct loss of or physical damage to Covered Property plus the deductible in this policy applicable to that physical loss or physical damage.

But this limitation does not apply to any additional Debris Removal limit provided in the Limits of Insurance section.

(3) This Additional Coverage does not apply to costs to:

(a) Extract "pollutants and contaminants" from land; or

(b) Remove, restore or replace polluted or contaminated land or water.

c. **Equipment Breakdown**

(1) We will pay for direct physical loss or physical damage caused by or resulting from an Equipment Breakdown Accident to Equipment Breakdown Property.

Equipment Breakdown Accident means:

(a) Mechanical breakdown, including rupture or bursting caused by centrifugal force.

(b) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

(c) Explosion of steam boilers, steam piping, steam engines or steam turbines owned or leased by you, or operated under your control.

(d) Physical loss or physical damage to steam boilers, steam pipes, steam engines or steam turbines

caused by or resulting from any condition or event inside such boilers or equipment.

(e) Physical loss or physical damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

Equipment Breakdown Property means Covered Property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

The following is not Equipment Breakdown Property:

(a) Any structure, foundation, cabinet, compartment or air supported structure building.

(b) Any insulating or refractory material;

(c) Any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system, water piping other than boiler feed water piping, boiler condensate return piping, or water piping forming a part of a refrigerating or air conditioning system;

(d) Any vehicle or any equipment mounted on a vehicle. As used here, vehicle means any machine or apparatus that is used for transportation or moves under its own power. Vehicle includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a "scheduled premises" and that receives electrical power from an external power source will not be considered a vehicle.

(e) Any equipment manufactured by you for sale.

(2) **Coverage Extensions**

The following coverage extensions apply only to direct physical loss or physical damage caused by or resulting from an Equipment Breakdown Accident:

SPECIAL PROPERTY COVERAGE FORM

**(a) Hazardous Substances**

We will pay in any one occurrence for the additional cost, not to exceed $50,000, to repair or replace Covered Property because of contamination by a hazardous substance. This includes the expenses to clean up or dispose of such property. Hazardous substance means any substance that is hazardous to human health or that has been declared by a government agency to be hazardous to human health.

Additional cost in this extension means those beyond what would have been required had no hazardous substance been involved.

This limit is part of and not in addition to the Limits of Insurance for Covered Property.

**(b) Expediting Expenses**

With respect to your damaged Covered Property, we will pay in any one occurrence, up to $50,000, for the reasonable and necessary additional expenses you incur to:

(i) Make temporary repairs; or

(ii) Expedite permanent repairs or permanent replacement.

**(c) Defense**

If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control directly caused by Equipment Breakdown we will either

(i) Settle the claim or "suit"; or

(ii) Defend you against the claim or "suit," but keep for ourselves the right to settle it at any point.

**(d) Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend:

(i) All expenses we incur;

(ii) The cost of bonds to release attachments, but only for bond

amounts within the Limit of Insurance. We do not have to furnish these bonds;

(iii) All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $100 a day because of time off from work,

(iv) All costs taxed against you in any "suit" we defend;

(v) Prejudgment Interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

(vi) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations

These payments will not reduce the Limit of Insurance shown in the Declarations.

**(e) Business Income and Extra Expense Extension**

The Business Income and Extra Expense Additional Coverages are extended to provide coverage for a tenant who has a loss of income from the lack of heating, cooling or power as a result of equipment breakdown to mechanical, electrical or pressure equipment of the building owner.

**(f)** If Equipment Breakdown Property requires replacement due to an Equipment Breakdown Accident, we will pay your additional cost to replace it with equipment that is better for the environment, safer or more efficient than the equipment being replaced. However, we will not pay more than 125% of what the cost would have been to repair or replace with property of

## SPECIAL PROPERTY COVERAGE FORM

comparable material and quality. This coverage does not increase any of the applicable limits. This coverage does not apply to any property indicated as being valued on an Actual Cash Value basis.

If you wish to retrofit air-conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances to accept a non-CFC refrigerant or replace the system with a system using a non-CFC refrigerant, we will consider this better for the environment. Any associated Business Income or Extra Expense will be included in determining the additional cost, if Business Income and Extra Expense apply to this policy.

**(3) Additional Condition - Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve us of any obligation under this Additional Coverage.

**(4) Jurisdictional Inspections:**

If any boiler or pressure vessel requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**d. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 in any one occurrence for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

**e. Fire Extinguisher Recharge**

We will pay to cover your expenses for recharge of your hand fire extinguishers when they are emptied while fighting fire.

**f. Forgery**

(1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your

agent has issued, or that was issued by someone who impersonates you or your agent. This includes written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee" for business purposes.

(2) If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the "suit", we will pay for any reasonable expenses that you incur and pay in that defense.

(3) We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services.

(a) Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

(b) Counterfeit United States or Canadian paper currency.

(4) The most we will pay in any one occurrence, including legal expenses, under this Additional Coverage is $5,000, unless a higher Limit of Insurance is shown in the Declarations.

**g. Glass Expense**

We will pay for necessary expenses incurred to:

(1) Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

(2) Repair or replace encasing frames; and

(3) Remove or replace obstructions when repairing or replacing glass that is part of a building.

This does not include removing or replacing window displays.

**h. Lock and Key Replacement**

We will pay up to $1,000 in any one occurrence for the re-keying of locks or the repair or replacement of locks at "scheduled premises" following the theft or the attempted theft of keys by burglars.

**i. Money and Securities**

(1) We will pay for loss of "money" and "securities" used in your business while

at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

(a) "Theft";

(b) Disappearance; or

(c) Destruction.

(2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(a) Resulting from accounting or arithmetical errors or omissions;

(b) Due to the giving or surrendering of property in any exchange or purchase; or

(c) Of property contained in any "money"-operated device unless a continuous recording instrument in the device records the amount of "money" deposited in the "money"-operated device.

(3) The most we will pay for loss in any one occurrence is:

(a) The limit shown in the Declarations, for inside the Premises for "money" and "securities" while:

(i) In or on the "scheduled premises"; or

(ii) Within a bank or savings institution; and

(b) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

(4) All loss:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

j.  Ordinance or Law

(1) If a Covered Cause of Loss occurs to covered Building property, we will pay on a "scheduled premises" any of the following costs that are caused by enforcement of an ordinance or law:

## SPECIAL PROPERTY COVERAGE FORM

### Undamaged Part

(a) For loss to the undamaged portion of the Building that requires the demolition of parts of the same property not damaged by a Covered Cause of Loss provided that any such ordinance or law resulting in this type of loss:

(i) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the "scheduled premises"; and

(ii) Is in force at the time of the loss.

The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

### Demolition Cost

(b) The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of a building, zoning or land use ordinance or law.

The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

### Increased Cost of Construction

(c) The increased cost to repair, rebuild or reconstruct the covered property, caused by enforcement of a building, zoning or land use ordinance or law

The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

### "Tenants Improvements and Betterment"

(d) The increased cost to repair, rebuild or reconstruct "tenant's improvements and betterments" caused by enforcement of building, zoning or land use ordinance or law.

The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

(2) Additional Exclusions

We will not pay under this Additional Coverage for:

(a) The enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or

# SPECIAL PROPERTY COVERAGE FORM

remediation of property due to contamination by "pollutants and contaminants" or due to the presence, growth, proliferation, spread of any activity of "fungi", wet or dry rot, bacteria or virus; or

(b) The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants or contaminants", or "fungi", wet or dry rot, bacteria or virus.

(c) Loss caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

(d) Loss due to an ordinance or law that:

(i) You were required to comply with before the loss even if the building was undamaged; and

(ii) You failed to comply with.

(3) Additional Limitations – Loss to Undamaged Portion of Building

Subject to the limit stated in Paragraph A.5.f.(1)(a), the insurance provided under this Additional Coverage for loss in value to the undamaged portion of the building is limited as follows:

(a) If Replacement Cost applies and the property is repaired or replaced on the same or another premises, we will not pay more for physical loss of or physical damage to designated Building property, including loss caused by enforcement of an ordinance or law, than:

(i) The amount you actually spend to repair, rebuild or reconstruct the Building, but not for more than the amount it would cost to restore the Building on the same premises; and

(ii) The amount it would cost to restore the undamaged portion of the building to the same height, floor area, style and comparable quality of the original property insured.

(b) If the Building(s) Full Value Endorsement applies and the property is repaired or replaced on the same or another premises, we will not pay more for physical loss of or physical damage to designated Building property, including loss caused by enforcement of an ordinance or law, than the lesser of:

(i) The Actual Cash Value of the Building at the time of loss; or

(ii) The Limit of Insurance applicable to the covered Building property stated in Paragraph A.5.f.(1)(a).

(4) Additional Limitation – Demolition Cost

We will not pay more than the lesser of:

(a) The amount actually spent to demolish and clear the site of the "scheduled premises"; or

(b) The applicable Demolition Cost Limit of Insurance as stated in Paragraph A.5.f.(1)(b).

(5) Additional Limitation – Increased Cost of Construction

The insurance provided under this Additional Coverage for increased cost of construction is limited as follows:

(a) We will not pay:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacements are made as soon as reasonably possible after the physical loss or physical damage, not to exceed two years. We may extend this period in writing during the two years

(b) If the Building is repaired or replaced at the same premises; or if you elect to rebuild at another premises, the most we will pay is the lesser of:

(i) The increased cost of construction at the same premises; or

(ii) The applicable Increased Cost of Construction Limit of Insurance stated in Paragraph A.5.j.(1)(c)

(c) If the ordinance or law requires relocation to another premises, the most we will pay is the lesser of:

(i) The increased Cost of Construction at the new premises; or

(ii) The applicable Increased Cost of Construction Limit of Insurance stated in Paragraph A.5.j.(1)(c)

k. "Pollutants and Contaminants" Clean Up and Removal

We will pay your expense to extract "pollutants and contaminants" from land or water at the "scheduled premises" if the discharge, dispersal, seepage, migration, release or escape of the "pollutants and contaminants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(1) The date of direct physical loss or physical damage; or

(2) The end of the policy period

The most we will pay in any one occurrence for each location under this Additional Coverage is $15,000 for the sum of all such expenses arising out of Covered Causes of Loss.

## SPECIAL PROPERTY COVERAGE FORM

l. Preservation of Property

If it is necessary to move Covered Property from the "scheduled premises" to preserve it from direct physical loss or physical damage by a Covered Cause of Loss, we will pay for any direct physical loss of or physical damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the direct physical loss or physical damage occurs within 45 days after the property is first moved.

m. Theft Damage to Building

This Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for physical loss or physical damage to the building you lease, rent, or occupy that is caused by or results from "theft", burglary or robbery.

We will pay for direct physical loss or physical damage directly resulting from "theft", burglary or robbery (except loss by fire or explosion) to a building:

(1) You occupy, including personal property that is used to maintain or service the building; or

(2) Containing covered personal property if you are legally liable for such physical loss or physical damage.

But we will not pay for such physical loss of or physical damage to property that is away from the "scheduled premises".

n. Water Damage, Other Liquid, Powder or Molten Material Damage

If direct physical loss or physical damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the direct physical loss or physical damage except as provided in paragraph A.5.c., Equipment Breakdown of this coverage form. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

**SPECIAL PROPERTY COVERAGE FORM**

(2) Is directly caused by freezing.

o. **Business Income**

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises"

(3) We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or physical damage.

This Additional Coverage is not subject to the Limits of Insurance.

(4) Business Income means the:

(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

(b) Continuing normal operating expenses incurred, including payroll.

(5) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That part or all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy

p. **Extra Expense**

(1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises"

(3) Extra Expense means expense incurred

(a) To avoid or minimize the suspension of business and to continue "operations":

(i) At the "scheduled premises"; or

(ii) At replacement premises or at temporary locations, including:

(aa) Relocation expenses; and

(bb) Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

(b) To minimize the suspension of business if you cannot continue "operations"

(c) (i) To repair or replace any property; or

(iii) To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage o., Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or physical damage. This Additional Coverage is not subject to the Limits of Insurance.

(4) With respect to the coverage provided in this Additional Coverage, suspension means:

    (a) The partial slowdown or complete cessation of your business activities; or

    (b) That part or all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss if coverage for Extra Expense applies to the policy.

(5) Limitation

This Extra Expense Coverage does not apply to:

    (a) Any deficiencies in insuring building or business personal property; or

    (b) Any expense related to any recall of products you manufacture, handle or distribute.

q. **Civil Authority**

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises"

(2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:

    (a) When access is permitted to your "scheduled premises"; or

    (b) 30 consecutive days after the order of the civil authority.

r. **Extended Business Income**

(1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    (a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

    (b) Ends on the earlier of:

        (i) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

        (ii) 30 consecutive days after the date determined in (1)(a) above.

Loss of Business Income must be caused by direct physical loss or physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss.

(2) With respect to the coverage provided in this Additional Coverage, suspension means:

    (a) The partial slowdown or complete cessation of your business activities; and

    (b) That a part or all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss.

s. **Business Income from Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss.

The most we will pay under this Additional Coverage is $5,000 in any one occurrence unless a higher Limit of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

    (a) Source of materials; or

    (b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent Property means property owned, leased or operated by others whom you depend on to:

    (a) Deliver materials or services to you or to others for your account. But services do not include:

        (i) Water, communication, power services or any other utility services; or

        (ii) Any type of web site, or Internet service.

    (b) Accept your products or services;

    (c) Manufacture your products for delivery to your customers under contract for sale; or

    (d) Attract customers to your business premises.

The dependent property must be located in the coverage territory of this policy

(5) The coverage period for Business Income under this Additional Coverage:

    (a) Begins 72 hours after the time of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the premises of the dependent property; and

    (b) Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(6) The Business Income coverage period, as stated in Paragraph (5), does not include any increased period required due to the enforcement of any ordinance or law that:

    (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects "pollutants."

(7) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

t. Tenant Glass

This Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will cover loss to glass, which is in your care, custody or control and for which the lease holds you responsible. The glass must be part of a building described in the Declarations or at a location that would be included in Coverage Extension b. Newly Acquired or Constructed Property.

The most that we will pay in any one occurrence for each location under this Additional Coverage is $25,000.

u. Leasehold Improvements

If your lease is canceled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant, and you cannot legally remove "Tenant Improvements and Betterments", we will extend Business Personal Property coverage to apply to the unamortized value of "Tenants Improvement and Betterment" that remain and that you were forced to abandon.

The most we will pay in any one occurrence for loss under this Additional Coverage is $25,000.

v. Lease Assessment

Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical damage caused by or resulting from a Covered Cause of Loss to building property you occupy, as agreed to in your written lease agreement.

We will pay no more than $2,500 in any one occurrence for this Additional Coverage.

6.  **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises". All Coverage Extensions are subject to the terms, conditions and exclusions of this policy, except as otherwise provided.

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows:

a.  **Accounts Receivable**

(1) You may extend the insurance that applies to your Business Personal Property, to apply to your accounts receivable.

We will pay for:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the physical loss or physical damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss of or physical damage to your records of accounts receivable.

(2) Paragraph A.3., Covered Causes of Loss, and Section B., Exclusions, do not apply to this Additional Coverage except for:

(a) Paragraph B.1.b., Governmental Action;

(b) Paragraph B.1.c., Nuclear Hazard; and

(c) Paragraph B.1.e., War and Military Action.

(3) Additional Exclusions

(a) Dishonest acts by you, anyone else with an interest in the records of accounts receivable, or your or their employees or authorized representatives, or anyone entrusted with the records of accounts receivable, whether or not acting alone or in collusion with other persons or occurring during the hours of employment.

This exclusion does not apply to a carrier for hire.

(b) Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money," "securities," or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(c) Bookkeeping, accounting or billing errors or omissions.

(d) Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct physical loss or physical damage caused by Lightning.

(e) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(f) Unauthorized instructions to transfer property to any person or to any place.

(4) We will not pay for direct physical loss or physical damage that requires any audit of records or any inventory computation to prove its factual existence.

(5) The most we will pay in any one occurrence for direct physical loss of or physical damage to your accounts receivable at each "scheduled premises" is $25,000

(6) The most we will pay in any one occurrence for direct physical loss of or physical damage to accounts receivables away from the "scheduled premises", including while in transit, is $25,000.

b.  **Arson and "Theft" Reward**

(1) In the event that a covered fire loss was the result of an act of arson, we will reimburse you for rewards you pay for information leading to convictions for that act of arson.

SPECIAL PROPERTY COVERAGE FORM

(2) In the event of a covered "theft" loss, we will reimburse you for rewards you pay for information leading to convictions for the "theft" loss.

The most we will pay to reimburse you in any one occurrence for arson or "theft" rewards is $10,000.

This is additional insurance. The deductible does not apply to these reimbursements.

c. **Data and Software**

We will pay up to $10,000 in any one occurrence to cover your costs to research, replace or restore "data" or "software" which exists or existed on electronic or magnetic "media" that is lost or damaged as a result of direct physical loss or physical damage to "computer equipment" at the "scheduled premises".

d. **Garages, Storage Buildings and Other Appurtenant Structures**

(1) You may extend the insurance that applies to Building to apply to garages, storage buildings and other appurtenant structures, except outdoor fixtures, at the "scheduled premises".

The most we will pay in any one occurrence for direct physical loss or physical damage under this Extension is $50,000 at each "scheduled premises".

(2) You may extend the insurance that applies to Business Personal Property in garages, storage buildings and other appurtenant structures at the "scheduled premises".

The most we will pay in any one occurrence for direct physical loss or physical damage under this Extension is $5,000 at each "scheduled premises".

e. **Newly Acquired or Constructed Property**

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the "scheduled premises"; and

(b) Buildings you acquire at locations other than the "scheduled premises", intended for:

(i) Similar use as the Building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay in any one occurrence for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $500,000 at each premises.

(2) You may extend the insurance that applies to Business Personal Property to apply to:

(a) Property at any premises you acquire or construct;

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed building; or

(c) Business Personal Property that you newly acquire, located at the "scheduled premises"

This extension does not apply to:

(a) Personal Property that you temporarily acquire in the course of installing or performing work on such property;

(b) Personal property of others that you temporarily acquire in the course of your wholesaling activity;

(c) Merchandise held for sale, except as provided under Paragraph **C.6.** Business Personal Property Limit – Seasonal Increase

The most we will pay in any one occurrence for direct physical loss or physical damage under this Extension is $250,000 at each premises.

(3) You may extend the insurance that applies to Business Income and Extra Expense to apply to newly acquired or constructed locations.

The most we will pay in any one occurrence under this Extension is $50,000.

(4) If Covered Property is moved to a new premises endorsed onto this policy, from a "scheduled premises" being endorsed off this policy, the Limit of Insurance applicable to that vacated premises will apply proportionately to both premises as the property is moved. This coverage applies to up to 180 days after the move begins or upon completion of the move, whichever is sooner. This coverage does not apply to Business Personal Property while in transit.

(5) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

    (a) This policy expires;

    (b) 180 days after you acquire or begin to construct the property; or

    (c) You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

### f. Outdoor Property

You may extend the insurance provided by this policy to apply to your outdoor:

(1) Fences, signs (other than signs attached to buildings), trees, shrubs and plants caused by or resulting from any of the following causes of loss:

    (a) Fire;

    (b) Lightning;

    (c) Explosion;

    (d) Riot or Civil Commotion; and

    (e) Aircraft

The most we will pay in any one occurrence for direct physical loss or physical damage including debris removal expense, under this Extension is $10,000 but not more than $1,000 for any one tree, shrub or plant.

(2) Radio and television antennas (including satellite dishes) caused by or resulting from any of the following causes of loss:

    (a) Fire;

    (b) Lightning;

    (c) Windstorm;

    (d) Ice, Snow, Sleet or Hail;

    (e) Explosion;

    (f) Riot or Civil Commotion; and

    (g) Aircraft

The most we will pay in any one occurrence for direct physical loss or physical damage including debris removal expense, under this Extension is $2,000

### g. Personal Effects

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners, "managers", "members", or your employees.

### SPECIAL PROPERTY COVERAGE FORM

The most we will pay in any one occurrence for physical loss or physical damage under this Extension is $10,000 at each "scheduled premises".

### h. Property Off-Premises

(1) You may extend the insurance that applies to Building to apply to such property that is temporarily at a location you do not own, lease or operate. This Extension applies only if physical loss or physical damage is caused by or resulting from a Covered Cause of Loss. This Extension does not apply to property in course of transit.

The most we will pay in any one occurrence under this coverage extension is $5,000.

(2) You may extend the insurance that applies to Business Personal Property to apply to such property, other than Accounts Receivable, "money" and "securities" while:

    (a) In the course of transit and more than 1,000 feet from the "scheduled premises". Property must be in or on, but not permanently attached to or installed in, a motor vehicle you own, lease or operate while between points in the coverage territory; or

    (b) Temporarily at a premises you do not own, lease or operate.

    (c) At a premises owned, leased, operated or used by you and the Business Personal Property is a vending machine;

    (d) In or on, but not permanently attached to or installed in, motor vehicles operated by your employees in the course of your business operations

    (e) On temporary public display, or while being used at fairs, exhibitions, expositions, or trade shows or while in transit to and from these temporary sites.

The most we will pay in any one occurrence under this Extension is $2,500.

### i. Valuable Papers and Records - Cost of Research

You may extend the insurance that applies to Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged "valuable papers and records", for which duplicates do not exist

**SPECIAL PROPERTY COVERAGE FORM**

The most we will pay in any one occurrence under this Extension is $25,000 at each "scheduled premises". For "valuable papers and records" not at the "scheduled premises", including while in transit, the most we will pay in any one occurrence is $25,000.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **Earth Movement**

      (1) Earthquake, meaning a shaking or trembling of the earth's crust, caused by underground tectonic forces resulting in breaking, shifting, rising, settling, sinking or lateral movement;

      (2) Landslide, including any earth sinking, rising or shifting related to such event;

      (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

      (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface.

      But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay for the physical loss or physical damage caused by that fire or explosion.

      (5) Volcanic eruption, meaning the eruption, explosion or effusion of a volcano. But if physical loss or physical damage by fire or volcanic action results, we will pay for that resulting physical damage.

      Volcanic action means direct physical loss or physical damage resulting from the eruption of a volcano when the physical loss or physical damage is caused by:

         (a) Airborne volcanic blast or airborne shock waves;

         (b) Ash, dust, or particulate matter; or

         (c) Lava flow.

      (d) All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

      Volcanic action does not include the cost to remove ash, dust, or particulate matter. That does not cause direct physical loss or physical damage to Covered Property.

   b. **Governmental Action**

      Seizure or destruction of property by order of governmental authority

      But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

   c. **Nuclear Hazard**

      Nuclear reaction or radiation, or radioactive contamination however caused

      But if physical loss or physical damage by fire results, we will pay for that resulting physical loss or physical damage.

   d. **Power Failure**

      The failure of power or other utility service supplied to the "scheduled premises", however caused, if the failure occurs away from the "scheduled premises". Failure includes lack of sufficient capacity and reduction in supply necessary to maintain normal operations

      But if physical loss or physical damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage.

   e. **War and Military Action**

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

   f. **Water**

      (1) Flood, including the accumulation of surface water, waves, tides, tidal waves, overflow of streams or any other bodies of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mud flow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;

    (b) Basements whether paved or not; or

    (c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting physical loss or physical damage.

(5) Water damage caused by or resulting from earthquake or volcanic eruption:

    (a) Earthquake means a shaking or trembling of the earth's crust, caused by underground tectonic forces resulting in breaking, shifting, rising, settling, sinking or lateral movement or other movement.

    (b) Volcanic eruption means the eruption, explosion or effusion of a volcano.

g. **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss

2. We will not pay for physical loss or physical damage caused by or resulting from:

a. **Consequential Losses:** Delay, loss of use or loss of market.

b. **Smoke, Vapor, Gas:** Smoke, vapor or gas from agricultural smudging or industrial operations

c. **Miscellaneous Types of Loss:**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, mold, spore or other animals;

(6) The following causes of loss to personal property:

    (a) Dampness or dryness of atmosphere;

    (b) Changes in or extremes of temperature; or

    (c) Marring or scratching.

But if physical loss or physical damage by the "specified causes of loss", building glass breakage or Equipment Breakdown Accident results, we will pay for that resulting physical loss or physical damage.

d. **Frozen Plumbing:** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

e. **Dishonesty:** Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose;

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

f. **False Pretense:** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. **Exposed Property:** Rain, snow, ice or sleet to personal property in the open; except as provided in the Coverage Extension for Outdoor Property.

h. **Collapse:** Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the "scheduled premises", we will pay for that resulting loss or damage.

i. **Pollution:** We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and

SPECIAL PROPERTY COVERAGE FORM

contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if physical loss or physical damage by the "specified causes of loss" results, we will pay for the resulting physical loss or physical damage caused by the "specified cause of loss."

3. We will not pay for loss or damage caused by or resulting from any of the following. But if physical loss or physical damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage.

a. **Weather conditions:** Weather conditions. This exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the physical loss or physical damage.

b. **Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. **Negligent Work:** Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

   (4) Maintenance of part or all of any property on or off the "scheduled premises".

4. **Business Income and Extra Expense Exclusions.** We will not pay for:

a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

   (1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

b. Any other consequential loss.

5. **Equipment Breakdown Exclusion**

We will not pay for physical loss or physical damage caused by or resulting from any of the following tests:

(a) A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

(b) An insulation breakdown test of any type of electrical equipment.

C. **LIMITS OF INSURANCE**

1. The most we will pay for physical loss or physical damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for physical loss of or physical damage to outdoor signs attached to buildings is $5,000 per sign in any one occurrence.

3. The limits applicable to:

a. Coverage Extensions; and

b. The following Additional Coverages:

   (1) Accounts Receivable,

   (2) Fire Department Service Charges,

   (3) Fire Extinguisher Recharge, and

   (4) "Pollutants and Contaminants" Clean Up and Removal

   are in addition to the Limits of Insurance.

4. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

a. Preservation of Property; or

b. Debris Removal; but if:

   (1) The sum of direct physical loss or physical damage and Debris Removal expense exceeds the Limit of Insurance; or

   (2) The Debris Removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

   We will pay up to an additional $10,000 for each location stated in the Declarations in any one occurrence under the Debris Removal Additional Coverage.

5. **Building Limit - Automatic Increase**

a. The Limit of Insurance for Buildings will automatically increase annually by 8%.

b. The amount of increase will be:

   (1) The Limit of Insurance for Buildings that applied on the most recent of the policy

inception date, policy anniversary date, or the date of any other policy change amending the Buildings limit, times

(2) The percentage of annual increase shown above, expressed as a decimal (.08); times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Buildings, divided by 365.

Example: The applicable Limit of Insurance for Buildings is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .08 X 146 divided by 365 = $3,200

6. **Business Personal Property Limit - Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if all Limits of Insurance shown in the Declarations for Business Personal Property at the "scheduled premises" is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the physical loss or physical damage occurs; or

(2) The period of time you have been in business as of the date the physical loss or physical damage occurs.

**D. DEDUCTIBLES**

1. We will not pay for physical loss or physical damage in any one occurrence until the amount of physical loss or physical damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Except as otherwise listed, the deductible applicable to Additional Coverages and Coverage Extensions is the Special Property Coverage Form is $250.

3. A $250 deductible applies to the following Glass Coverages, unless Glass Coverage is provided under a separate coverage form:

## SPECIAL PROPERTY COVERAGE FORM

a. Building Glass

b. Glass Expense

c. Tenant Glass

4. Unless a separate deductible is shown in the Declarations, the deductible applicable to the following Additional Coverages or Coverage Extensions is $250, whether the coverage is provided under this coverage form, provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a Stretch endorsement:

a. Accounts Receivable;

b. Fine Arts

c. Outdoor Signs; and

d. "Valuable Papers and Records".

5. Unless a separate deductible is shown in the Declarations, the deductible applicable to the following Additional Coverages or Coverage Extensions is $100, whether the coverage is provided under this coverage form, provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a Stretch endorsement:

a. Employee Dishonesy; and

b. Temperature Change.

6. No deductible applies to the following Coverage Extensions and Additional Coverages:

a. Fire Extinguisher Recharge;

b. Preservation of Property;

c. Fire Department Service Charge;

d. Business Income, Extra Expense, Civil Authority and Extended Business Income;

e. Arson Reward; and

f. Lock and Key Replacement.

6. The Deductible applicable to the following Additional Coverages is the policy deductible or the deductible shown in the Declarations for the following coverage:

a. Equipment Breakdown;

b. Ordinance or Law Coverage; and

c. Leasehold Improvements.

7. Each deductible applicable to this policy shall be applied separately but only to the coverage specified, and the total deductible for all losses in any one occurrence shall be the highest deductible amount that applies to the occurrence.

**E. PROPERTY LOSS CONDITIONS**

1. **Abandonment**

There can be no abandonment of any property to us.

**SPECIAL PROPERTY COVERAGE FORM**

2. **Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In that event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

You must see that the following are done in the event of loss of or damage to Covered Property:

a. Notify the police if a law may have been broken.

b. Give us prompt notice of the physical loss or physical damage. Include a description of the property involved.

c. As soon as possible, give us description of how, when and where the physical loss or physical damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also, keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim.

This will not increase the Limits of Insurance.

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f. Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed;

h. Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

i. Cooperate with us in the investigation or settlement of the claim.

j. Resume part or all of your "operations" as quickly as possible.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 2 years after the date on which the direct physical loss or physical damage occurred.

5. **Loss Payment**

In the event of physical loss or physical damage covered by this policy:

a. At our option we will either:

(1) Pay the value of physically lost or physically damaged property, as described in paragraph d. below;

(2) Pay the cost of repairing or replacing the physically lost or physically damaged property, plus any reduction in value of repaired items;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

b. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. We will determine the value of Covered Property as follows:

(1) At replacement cost (without deduction for depreciation), except as provided in (2) through (7) below.

(a) You may make a claim for physical loss or physical damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have physical loss or physical damage settled on an actual cash value basis, you may still make a claim on a

replacement cost basis if you notify us of your intent to do so within 180 days after the physical loss or physical damage.

(b) We will not pay on a replacement cost basis for any physical loss or physical damage:

   (i) Until the physically lost or physically damaged property is actually repaired or replaced; and

   (ii) Unless the repairs or replacement are made as soon as reasonably possible after the physical loss or physical damage.

However, if the cost to repair or replace the damaged property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs d.(1)(a) and d.(1)(b) above whether or not the actual repair or replacement is complete.

(c) We will not pay more for physical loss or physical damage on a replacement cost basis than the least of:

   (i) The cost to replace, on the same premises, the physically lost or physically damaged property with other property of comparable material and quality and which is used for the same purpose; or

   (ii) The amount you actually spend that is necessary to repair or replace the physically lost or physically damaged property.

(2) If the Actual Cash Value - Buildings option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

  (a) Manuscripts;

  (b) Works of art, antiques or rare articles, including etchings, pictures, statuary, objects of marble, bronzes, porcelains and bric-a-brac.

  (c) Household contents, except personal property in apartments or rooms furnished by you as landlord.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) "Tenants' Improvements and Betterments" at:

  (a) Replacement cost if you make repairs promptly.

  (b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

    (i) Multiply the original cost by the number of days from the physical loss or physical damage to the expiration of the lease; and

    (ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

  (c) Nothing, if others pay for repairs or replacement.

(6) "Valuable Papers and Records", at the cost of:

  (a) Blank materials for reproducing the records; and

  (b) Labor to transcribe or copy the records.

(7) "Money" and "Securities":

  (a) "Money" at its face value; and

  (b) "Securities" at their value at the close of business on the day the loss is discovered.

(8) The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

  (a) Distilled spirits;

  (b) Wines;

**SPECIAL PROPERTY COVERAGE FORM**

(c) Rectified products; or

(d) Beer.

(9) Applicable to Accounts Receivable:

  (a) If you can not accurately establish the amount of the accounts receivable outstanding as of the time of physical loss or physical damage the following method will be used:

    (i) Determine the total of the average monthly value of accounts receivable for 12 months immediately preceding the month in which the direct physical loss or physical damage occurred; and

    (ii) Adjust the total determined in paragraph (i) above for any normal fluctuations in the value of accounts receivable for the month in which the direct physical loss or physical damage occurred for any demonstrated variance from the average of that month.

  (b) The following will be deducted from the total value of accounts receivable, however that value is established:

    (i) The value of the accounts for which there is no physical loss or physical damage;

    (ii) The value of the accounts that you are able to re-establish or collect;

    (iii) A value to allow for probable bad debts that you are normally unable to collect; and

    (iv) All unearned interest and services charged.

e. Our payment for physical loss of or physical damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of physically lost or physically damaged property if other than you. If we pay the owners, such payment will satisfy your claims against us for the owners' property.

We will not pay the owners more than their financial interest in the Covered Property

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered physical loss or physical damage within 30 days after we receive the sworn statement of loss, if:

  (1) You have complied with all of the terms of this policy; and

  (2) (a) We have reached agreement with you on the amount of loss, or

    (b) An appraisal award has been made.

h. The following condition applies to any loss payment for Extra Expense:

We will deduct from the total Extra Expense to be paid:

  (1) The salvage value that remains of any property bought for temporary use during the Period of Restoration, once business operations are resumed; and

  (2) Any Extra Expense that is paid for by other insurance.

6. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance

7. **Resumption of Operations**

In the event of physical loss or physical damage at the "scheduled premises" you must resume all or part of your "operations" as quickly as possible.

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "scheduled premises" or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

8. **Vacancy**

a. Description of Terms

  (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs

(a) and (b) below:

    (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations

    (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is

      (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

      (ii) Used by the building owner to conduct customary operations.

  (2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where physical loss or physical damage occurs has been vacant for more than 60 consecutive days before that physical loss or physical damage occurs

  (1) We will not pay for any physical loss or physical damage caused by any of the following even if they are Covered Causes of Loss:

    (a) Vandalism;

    (b) Sprinkler leakage, unless you had protected the system against freezing;

    (c) Building glass breakage,

    (d) Water damage,

    (e) Theft; or

    (f) Attempted theft.

  (2) With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the physical loss or physical damage by 15%.

**F. PROPERTY GENERAL CONDITIONS**

**1. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at one or more locations will not affect coverage at any location where, at the time of physical loss or physical damage, the breach of condition does not exist.

**2. Mortgage Holders**

  a. The term mortgage holder includes trustee.

  b. We will pay for covered physical loss of or physical damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

  c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

  d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

    (1) Pays any premium due under this policy at our request if you have failed to do so;

    (2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

    (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this policy will then apply directly to the mortgage holder.

  e. If we pay the mortgage holder for any physical loss or physical damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    (2) The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

SPECIAL PROPERTY COVERAGE FORM

    f.  If we cancel this policy, we will give written notice to the mortgage holder at least:

       (1)  10 days before the effective date of cancellation if we cancel for your non payment of premium; or

       (2)  30 days before the effective date of cancellation if we cancel for any other reason.

    g.  If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**3.  No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4.  Policy Period, Coverage Territory**

Under this form:

    a.  We cover physical loss or physical damage commencing:

       (1)  During the policy period shown in the Declarations; and

       (2)  Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

      But we do not cover physical loss or physical damage that is also covered by a preceding policy.

    b.  The coverage territory is:

       (1)  The United States of America (including its territories and possessions);

       (2)  Puerto Rico; and

       (3)  Canada.

**5.  Additional Conditions**

The following conditions apply to paragraph A.5.u., Forgery Additional Coverage:

    a.  We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

    b.  You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

    c.  The Coverage Territory is revised to cover loss you sustain anywhere in the world.

**G.  PROPERTY DEFINITIONS**

**1.**  "Computer" means a programmable electronic device that can store, retrieve and process "data".

**2.**  "Computer Equipment" means "computers", "peripheral devices", "media", and manuals that are purchased to be used in conjunction with hardware and "software".

**3.**  "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

**4.**  "Data" means information or facts stored in a "computer's" memory, on "software" or on "media".

**5.**  "Finished Stock" means stock you have manufactured.

"Finished Stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

**6.**  "Manager" means a person serving in a directorial capacity for a limited liability company.

**7.**  "Media" means the material used solely with the "computer" or "peripheral device" upon which "software" or "data" is stored, such as tapes, CD-ROMs or disks.

**8.**  "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**9.**  "Messenger" means you, any of your partners or any employee while having care and custody of the property outside your premises.

**10.**  "Money" means:

    a.  Currency, coins and bank notes whether or not in current use; and

    b.  Travelers checks, registered checks and money orders held for sale to the public.

**11.**  "Operations" means your business activities occurring at the "scheduled premises" and tenantability of the "scheduled premises".

**12.**  "Period of Restoration" means the period of time that:

    a.  Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and

    b.  Ends on the date when:

       (1)  The property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality,

       (2)  The date when your business is resumed at a new, permanent location,

                                         

## SPECIAL PROPERTY COVERAGE FORM

"Period of Restoration" does not include any increased period required due to enforcement of any law that:

a. Regulates the construction, use or repair, or required the tearing down of any property; or

b. Regulates the prevention, control, repair, clean up or restoration of environmental damage

The expiration date of this policy will not cut short the "period of restoration"

13. "Peripheral Device" means any physical unit used to operate the "computer" that cannot be used for purposes other than as part of the computer's system, such as tape or disk drives, printers, or modems.

14. "Perishable Stock" means personal property

a. Maintained under controlled conditions for its preservation; and

b. Susceptible to physical loss or physical damage if the controlled conditions change.

15. "Pollutants and Contaminants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, or any other material which causes or threatens to cause physical loss, physical damage, impurity to property, unwholesomeness, undesirability, loss of marketability, loss of use of property, or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Scheduled Premises" means any premises listed by location address in the Scheduled Premises section of the Declarations.

17. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets except Lottery Tickets, revenue and other non-postage stamps whether or not in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

but does not include "money"

18. "Software" means instructions or programs that are stored on "media" and which instruct the hardware as to how to process "data".

19. "Specified Cause of Loss" means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. It does not include the cost of filling sinkholes.

b. Falling objects does not include loss of or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

20. "Suit" means a civil proceeding and includes:

a. An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent

21. "Tenant Improvements and Betterments" means fixtures, alterations, installations or additions made a part of the Building you occupy but do not own and that you cannot legally remove; and

a. Which are made at your expense; or

b. That you acquired from the prior tenant at your expense.

22. "Theft" means the act of stealing.

23. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" and "securities", "data" and "software" or the materials on which the "data" and "software" is recorded.

# BUSINESS LIABILITY COVERAGE FORM

Form SS 00 08 04 05

© 2005, The Hartford

# QUICK REFERENCE
# BUSINESS LIABILITY COVERAGE FORM
# READ YOUR POLICY CAREFULLY

| BUSINESS LIABILITY COVERAGE FORM | Beginning on Page |
|---|---|
| **A.** **COVERAGES** | **1** |
| Business Liability | 1 |
| Medical Expenses | 2 |
| Coverage Extension - Supplementary Payments | 2 |
| **B.** **EXCLUSIONS** | **3** |
| **C.** **WHO IS AN INSURED** | **10** |
| **D.** **LIABILITY AND MEDICAL EXPENSES** **LIMITS OF INSURANCE** | **14** |
| **E.** **LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS** | **15** |
| 1.  Bankruptcy | 15 |
| 2.  Duties In The Event Of Occurrence; Offense, Claim Or Suit | 15 |
| 3.  Financial Responsibility Laws | 16 |
| 4.  Legal Action Against Us | 16 |
| 5.  Separation Of Insureds | 16 |
| 6.  Representations | 16 |
| 7.  Other Insurance | 16 |
| 8.  Transfer Of Rights Of Recovery Against Others To Us | 17 |
| **F.** **OPTIONAL ADDITIONAL INSURED COVERAGES** | **18** |
| Additional Insureds | 18 |
| **G.** **LIABILITY AND MEDICAL EXPENSES DEFINITIONS** | **20** |

Form SS 00 08 04 05



# BUSINESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

The word "insured" means any person or organization qualifying as such under Section C. - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section G. - Liability And Medical Expenses Definitions.

## A. COVERAGES

1. **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

   **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

   We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section D. - Liability And Medical Expenses Limits Of Insurance; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

   b. This insurance applies:

   (1) To "bodily injury" and "property damage" only if:

   (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (b) The "bodily injury" or "property damage" occurs during the policy period; and

   (c) Prior to the policy period, no insured listed under Paragraph 1. of Section C. – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

   c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section C. – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

© 2005, The Hartford

BUSINESS LIABILITY COVERAGE FORM

    (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

d. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

e. Incidental Medical Malpractice

    (1) "Bodily injury" arising out of the rendering of or failure to render professional health care services as a physician, dentist, nurse, emergency medical technician or paramedic shall be deemed to be caused by an "occurrence", but only if

        (a) The physician, dentist, nurse, emergency medical technician or paramedic is employed by you to provide such services; and

        (b) You are not engaged in the business or occupation of providing such services.

    (2) For the purpose of determining the limits of insurance for incidental medical malpractice, any act or omission together with all related acts or omissions in the furnishing of these services to any one person will be considered one "occurrence".

## 2. MEDICAL EXPENSES

Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

    (1) On premises you own or rent;

    (2) On ways next to premises you own or rent; or

    (3) Because of your operations;

provided that:

    (1) The accident takes place in the "coverage territory" and during the policy period;

    (2) The expenses are incurred and reported to us within three years of the date of the accident; and

    (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for

    (1) First aid administered at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

## 3. COVERAGE EXTENSION - SUPPLEMENTARY PAYMENTS

a. We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

    (1) All expenses we incur.

    (2) Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

    (3) The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    (4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

    (5) All costs taxed against the insured in the "suit".

    (6) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    (7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Any amounts paid under (1) through (7) above will not reduce the limits of insurance.

BUSINESS LIABILITY COVERAGE FORM

b. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

(1) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(2) This insurance applies to such liability assumed by the insured;

(3) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(4) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

(5) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(6) The indemnitee:

(a) Agrees in writing to:

(i) Cooperate with us in the investigation, settlement or defense of the "suit";

(ii) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(iii) Notify any other insurer whose coverage is available to the indemnitee; and

(iv) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(b) Provides us with written authorization to:

(i) Obtain records and other information related to the "suit"; and

(ii) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

Notwithstanding the provisions of Paragraph 1.b.(b) of Section B. – Exclusions, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(1) We have used up the applicable limit of insurance in the payment of judgments or settlements; or

(2) The conditions set forth above, or the terms of the agreement described in Paragraph (6) above, are no longer met.

## B. EXCLUSIONS

1. **Applicable To Business Liability Coverage**

This insurance does not apply to:

a. **Expected Or Intended Injury**

(1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

(2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

b. **Contractual Liability**

(1) "Bodily injury" or "property damage"; or

(2) "Personal and advertising injury"

for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages because of:

(a) "Bodily injury", "property damage" or "personal and advertising injury" that the insured would have in the absence of the contract or agreement; or

BUSINESS LIABILITY COVERAGE FORM

(b) "Bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

(ii) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or

released as part of the operations being performed by such insured, contractor or subcontractor.

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"

(2) Any loss, cost or expense arising out of any

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants"

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

BUSINESS LIABILITY COVERAGE FORM

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured. If the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment"; or

(6) An aircraft that is not owned by any insured and is hired, chartered or loaned with a paid crew. However, this exception does not apply if the insured has any other insurance for such "bodily injury" or "property damage", whether the other insurance is primary, excess, contingent or on any other basis.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured, or

(2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services.

(2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;

(3) Supervisory, inspection, architectural or engineering activities;

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Optometry or optometric services including but not limited to examination of the eyes and the prescribing, preparation, fitting,demonstration or distribution of ophthalmic lenses and similar products;

(9) Any:

  (a) Body piercing (not including ear piercing);

  (b) Tattooing, including but not limited to the insertion of pigments into or under the skin; and

  (c) Similar services;

(10) Services in the practice of pharmacy; and

(11) Computer consulting, design or programming services, including web site design.

Paragraphs (4) and (5) of this exclusion do not apply to the Incidental Medical Malpractice coverage afforded under Paragraph 1.e. in Section A. - Coverages.

k. Damage To Property

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Section D. - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3) and (4) of this exclusion do not apply to the use of elevators.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs (3) and (4) of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

l. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

m. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of

(1) "Your product",

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

(1) Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of a criminal act committed by or at the direction of the insured;

(4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

(5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(6) Arising out of the wrong description of the price of goods, products or services;

(7) Arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

(a) Copyright;

(b) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity, or

(c) Title of any literary or artistic work;

(8) Arising out of an offense committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs a., b. and c. under the definition of "personal and advertising injury" in Section G. – Liability And Medical Expenses Definitions.

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

(9) Arising out of an electronic chat room or bulletin board the insured hosts, owns, or over which the insured exercises control;

(10) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

(11) Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

(12) Arising out of

(a) An "advertisement" for others on your web site;

(b) Placing a link to a web site of others on your web site;

(c) Content from a web site of others displayed within a frame or border on your web site. Content includes information, code, sounds, text, graphics or images; or

(d) Computer code, software or programming used to enable:

(i) Your web site; or

(ii) The presentation or functionality of an "advertisement" or other content on your web site;

(13) Arising out of a violation of any anti-trust law;

(14) Arising out of the fluctuation in price or value of any stocks, bonds or other securities; or

(15) Arising out of discrimination or humiliation committed by or at the direction of any "executive officer", director, stockholder, partner or member of the insured

q. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

r. **Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to the person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

s. **Asbestos**

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of the "asbestos hazard",

(2) Any damages, judgments, settlements, loss, costs or expenses that

(a) May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(b) Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

t. **Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**Damage To Premises Rented To You – Exception For Damage By Fire, Lightning or Explosion**

Exclusions c. through h. and k. through o. do not apply to damage by fire, lightning or explosion to premises rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section D. - Liability And Medical Expenses Limits Of Insurance.

BUSINESS LIABILITY COVERAGE FORM

2. **Applicable To Medical Expenses Coverage**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included with the "products-completed operations hazard".

   g. **Business Liability Exclusions**

      Excluded under Business Liability Coverage.

## C. WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. **Employees And Volunteer Workers**

      Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

      However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or that "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      If you are not in the business of providing professional health care services, Paragraph (d) does not apply to any nurse, emergency medical technician or paramedic employed by you to provide such services;

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b. Real Estate Manager**

Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager

**c. Temporary Custodians Of Your Property**

Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d. Legal Representative If You Die**

Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

**e. Unnamed Subsidiary**

Any subsidiary and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this Coverage Part.

The insurance afforded herein for any subsidiary not shown in the Declarations as a named insured does not apply to injury or damage with respect to which an insured under this insurance is also an insured under another policy or would be an insured under such policy but for its termination or upon the exhaustion of its limits of insurance.

**3. Newly Acquired Or Formed Organization**

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain financial interest of more than 50% of the voting stock, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

b. Coverage under this provision does not apply to:

(1) "Bodily injury" or "property damage" that occurred; or

(2) "Personal and advertising injury" arising out of an offense committed

before you acquired or formed the organization.

**4. Operator Of Mobile Equipment**

With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**5. Operator of Nonowned Watercraft**

With respect to watercraft you do not own that is less than 51 feet long and is not being used to carry persons for a charge, any person is an insured while operating such watercraft with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the watercraft, and only if no other insurance of any kind is available to that person or organization for this liability.

However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person operating the watercraft; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**6. Additional Insureds When Required By Written Contract, Written Agreement Or Permit**

The person(s) or organization(s) identified in Paragraphs a. through f. below are additional insureds when you have agreed, in a written

**BUSINESS LIABILITY COVERAGE FORM**

contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement, or the issuance of the permit.

A person or organization is an additional insured under this provision only for that period of time required by the contract, agreement or permit.

However, no such person or organization is an additional insured under this provision if such person or organization is included as an additional insured by an endorsement issued by us and made a part of this Coverage Part, including all persons or organizations added as additional insureds under the specific additional insured coverage grants in Section F. – Optional Additional Insured Coverages.

a. **Vendors**

Any person(s) or organization(s) (referred to below as vendor), but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business and only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

(1) The insurance afforded to the vendor is subject to the following additional exclusions:

This insurance does not apply to:

(a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b) Any express warranty unauthorized by you;

(c) Any physical or chemical change in the product made intentionally by the vendor;

(d) Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container.

(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

(g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

(h) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(i) The exceptions contained in Subparagraphs (d) or (f); or

(ii) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(2) This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

b. **Lessors Of Equipment**

(1) Any person or organization from whom you lease equipment; but only with respect to their liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after you cease to lease that equipment.

c. **Lessors Of Land Or Premises**

(1) Any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you.

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

    (a) Any "occurrence" which takes place after you cease to lease that land, or be a tenant in that premises; or

    (b) Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

d. **Architects, Engineers Or Surveyors**

(1) Any architect, engineer, or surveyor, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

    (a) In connection with your premises; or

    (b) In the performance of your ongoing operations performed by you or on your behalf.

(2) With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

    (a) The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

    (b) Supervisory, inspection, architectural or engineering activities.

e. **Permits Issued By State Or Political Subdivisions**

(1) Any state or political subdivision, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

    (a) "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

    (b) "Bodily injury" or "property damage" included within the "products-completed operations hazard".

f. **Any Other Party**

(1) Any other person or organization who is not an insured under Paragraphs a. through e. above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

    (a) In the performance of your ongoing operations;

    (b) In connection with your premises owned by or rented to you; or

    (c) In connection with "your work" and included within the "products-completed operations hazard", but only if

        (i) The written contract or written agreement requires you to provide such coverage to such additional insured; and

        (ii) This Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

BUSINESS LIABILITY COVERAGE FORM

(a) The preparing, approving, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

(b) Supervisory, inspection, architectural or engineering activities

The limits of insurance that apply to additional insureds are described in Section D. – Limits Of Insurance.

How this insurance applies when other insurance is available to an additional insured is described in the Other Insurance Condition in Section E. – Liability And Medical Expenses General Conditions.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE

1. **The Most We Will Pay**

   The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits"

2. **Aggregate Limits**

   The most we will pay for:

   a. Damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" is the Products-Completed Operations Aggregate Limit shown in the Declarations.

   b. Damages because of all other "bodily injury", "property damage" or "personal and advertising injury", including medical expenses, is the General Aggregate Limit shown in the Declarations.

   This General Aggregate Limit applies separately to each of your "locations" owned by or rented to you

   "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway or right-of-way of a railroad

This General Aggregate limit does not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of fire, lightning or explosion.

3. **Each Occurrence Limit**

   Subject to 2.a. or 2.b. above, whichever applies, the most we will pay for the sum of all damages because of all "bodily injury", "property damage" and medical expenses arising out of any one "occurrence" is the Liability and Medical Expenses Limit shown in the Declarations.

   The most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

4. **Personal And Advertising Injury Limit**

   Subject to 2.b. above, the most we will pay for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization is the Personal and Advertising Injury Limit shown in the Declarations.

5. **Damage To Premises Rented To You Limit**

   The Damage To Premises Rented To You Limit is the most we will pay under Business Liability Coverage for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning or explosion, while rented to you or temporarily occupied by you with permission of the owner.

   In the case of damage by fire, lightning or explosion, the Damage to Premises Rented To You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of these.

6. **How Limits Apply To Additional Insureds**

   The most we will pay on behalf of a person or organization who is an additional insured under this Coverage Part is the lesser of:

   a. The limits of insurance specified in a written contract, written agreement or permit issued by a state or political subdivision; or

   b. The Limits of Insurance shown in the Declarations.

   Such amount shall be a part of and not in addition to the Limits of Insurance shown in the Declarations and described in this Section.

If more than one limit of insurance under this policy and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this policy and the endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit". However, this paragraph does not apply to the Medical Expenses limit set forth in Paragraph 3. above.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. **Notice Of Occurrence Or Offense**

      You or any additional insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. **Notice Of Claim**

      If a claim is made or "suit" is brought against any insured, you or any additional insured must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You or any additional insured must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

   c. **Assistance And Cooperation Of The Insured**

      You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. **Obligations At The Insured's Own Cost**

      No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

   e. **Additional Insured's Other Insurance**

      If we cover a claim or "suit" under this Coverage Part that may also be covered by other insurance available to an additional insured, such additional insured must submit such claim or "suit" to the other insurer for defense and indemnity.

      However, this provision does not apply to the extent that you have agreed in a written contract, written agreement or permit that this insurance is primary and non-contributory with the additional insured's own insurance.

   f. **Knowledge Of An Occurrence, Offense, Claim Or Suit**

      Paragraphs a. and b. apply to you or to any additional insured only when such "occurrence", offense, claim or "suit" is known to:

      (1) You or any additional insured that is an individual;

      (2) Any partner, if you or an additional insured is a partnership;

      (3) Any manager, if you or an additional insured is a limited liability company;

      (4) Any "executive officer" or insurance manager, if you or an additional insured is a corporation;

      (5) Any trustee, if you or an additional insured is a trust; or

      (6) Any elected or appointed official, if you or an additional insured is a political subdivision or public entity,

**BUSINESS LIABILITY COVERAGE FORM**

This Paragraph i. applies separately to you and any additional insured.

3. **Financial Responsibility Laws**

a. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

4. **Legal Action Against Us**

No person or organization has a right under this Coverage Form

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative

5. **Separation Of Insureds**

Except with respect to the Limits of Insurance; and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom a claim is made or "suit" is brought.

6. **Representations**

a. **When You Accept This Policy**

By accepting this policy, you agree:

(1) The statements in the Declarations are accurate and complete;

(2) Those statements are based upon representations you made to us; and

(3) We have issued this policy in reliance upon your representations.

b. **Unintentional Failure To Disclose Hazards**

If unintentionally you should fail to disclose all hazards relating to the conduct of your business at the inception date of this Coverage Part, we shall not deny any coverage under this Coverage Part because of such failure.

7. **Other Insurance**

If other valid and collectible insurance is available for a loss we cover under this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If other insurance is also primary, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) **Your Work**

That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) **Premises Rented To You**

That is fire, lightning or explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(3) **Tenant Liability**

That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

(4) **Aircraft, Auto Or Watercraft**

If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section A. – Coverages.

(5) **Property Damage To Borrowed Equipment Or Use Of Elevators**

If the loss arises out of "property damage" to borrowed equipment or the use of elevators to the extent not subject to Exclusion k. of Section A. – Coverages.

**(6) When You Are Added As An Additional Insured To Other Insurance**

That is other insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations, for which you have been added as an additional insured by that insurance; or

**(7) When You Add Others As An Additional Insured To This Insurance**

That is other insurance available to an additional insured.

However, the following provisions apply to other insurance available to any person or organization who is an additional insured under this Coverage Part:

**(a) Primary Insurance When Required By Contract**

This insurance is primary if you have agreed in a written contract, written agreement or permit that this insurance be primary. If other insurance is also primary, we will share with all that other insurance by the method described in c. below.

**(b) Primary And Non-Contributory To Other Insurance When Required By Contract**

If you have agreed in a written contract, written agreement or permit that this insurance is primary and non-contributory with the additional insured's own insurance, this insurance is primary and we will not seek contribution from that other insurance.

Paragraphs (a) and (b) do not apply to other insurance to which the additional insured has been added as an additional insured.

When this insurance is excess, we will have no duty under this Coverage Part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**B. Transfer Of Rights Of Recovery Against Others To Us**

**a. Transfer Of Rights Of Recovery**

If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**b. Waiver Of Rights Of Recovery (Waiver Of Subrogation)**

If the insured has waived any rights of recovery against any person or organization for all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, we also waive that right, provided the insured waived their rights of recovery against such person or organization in a contract, agreement or permit that was executed prior to the injury or damage.

BUSINESS LIABILITY COVERAGE FORM

## F. OPTIONAL ADDITIONAL INSURED COVERAGES

If listed or shown as applicable in the Declarations, one or more of the following Optional Additional Insured Coverages also apply. When any of these Optional Additional Insured Coverages apply, Paragraph 6. (Additional Insureds When Required by Written Contract, Written Agreement or Permit) of Section C., Who Is An Insured, does not apply to the person or organization shown in the Declarations. These coverages are subject to the terms and conditions applicable to Business Liability Coverage in this policy, except as provided below:

1. **Additional Insured - Designated Person Or Organization**

   WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

   a. In the performance of your ongoing operations; or

   b. In connection with your premises owned by or rented to you.

2. **Additional Insured - Managers Or Lessors Of Premises**

   a. WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured - Designated Person Or Organization, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Declarations.

   b. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to:

   (1) Any "occurrence" which takes place after you cease to be a tenant in that premises; or

   (2) Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

3. **Additional Insured - Grantor Of Franchise**

   WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured - Grantor Of Franchise, but only with respect to their liability as grantor of franchise to you.

4. **Additional Insured - Lessor Of Leased Equipment**

   a. WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Lessor of Leased Equipment, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

   b. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after you cease to lease that equipment.

5. **Additional Insured - Owners Or Other Interests From Whom Land Has Been Leased**

   a. WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Owners Or Other Interests From Whom Land Has Been Leased, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Declarations.

   b. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply.

   This insurance does not apply to:

   (1) Any "occurrence" that takes place after you cease to lease that land; or

   (2) Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

6. **Additional Insured - State Or Political Subdivision – Permits**

   a. WHO IS AN INSURED under Section C. is amended to include as an additional insured the state or political subdivision shown in the Declarations as an Additional

Insured — State Or Political Subdivision - Permits, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

b. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

(2) "Bodily injury" or "property damage" included in the "product-completed operations" hazard.

7. Additional Insured — Vendors

a. WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) (referred to below as vendor) shown in the Declarations as an Additional Insured - Vendor, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business and only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard"

b. The insurance afforded to the vendor is subject to the following additional exclusions:

(1) This insurance does not apply to:

(a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b) Any express warranty unauthorized by you;

(c) Any physical or chemical change in the product made intentionally by the vendor;

(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

(g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

(h) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(i) The exceptions contained in Subparagraphs (d) or (f); or

(ii) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(2) This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

8. Additional Insured — Controlling Interest

WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured — Controlling Interest, but only with respect to their liability arising out of:

a. Their financial control of you; or

b. Premises they own, maintain or control while you lease or occupy these premises.

BUSINESS LIABILITY COVERAGE FORM

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

9. **Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization**

   a. WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Owner, Lessees Or Contractors, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

      (1) In the performance of your ongoing operations for the additional insured(s); or

      (2) In connection with "your work" performed for that additional insured and included within the "products-completed operations hazard", but only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

   b. With respect to the insurance afforded to these additional insureds, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

      (1) The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

      (2) Supervisory, inspection, architectural or engineering activities.

10. **Additional Insured – Co-Owner Of Insured Premises**

    WHO IS AN INSURED under Section C. is amended to include as an additional insured the person(s) or Organization(s) shown in the Declarations as an Additional Insured – Co-Owner Of Insured Premises, but only with respect to their liability as co-owner of the premises shown in the Declarations.

The limits of insurance that apply to additional insureds are described in Section D. – Limits Of Insurance.

How this insurance applies when other insurance is available to an additional insured is described in the Other Insurance Condition in Section E. – Liability And Medical Expenses General Conditions.

G. **LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

   a. (1) Radio;
      (2) Television;
      (3) Billboard;
      (4) Magazine;
      (5) Newspaper;

   b. The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

   c. Any other publication that is given widespread public distribution.

   However, "advertisement" does not include:

   a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

   b. An interactive conversation between or among persons through a computer network.

2. "Advertising idea" means any idea for an "advertisement".

3. "Asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

4. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

5. "Bodily injury" means physical:

   a. Injury;

   b. Sickness; or

   c. Disease

   sustained by a person and, if arising out of the above, mental anguish or death at any time.

6. "Coverage territory" means:

# BUSINESS LIABILITY COVERAGE FORM

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above;

c. All other parts of the world if the injury or damage arises out of:

   (1) Goods or products made or sold by you in the territory described in a. above;

   (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a "suit" on the merits according to the substantive law in such territory, or in a settlement we agree to:

7. "Electronic data" means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from

   computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you, with permission of the owner is subject to the Damage To Premises Rented To You limit described in Section D. – Liability and Medical Expenses Limits of Insurance

    b. A sidetrack agreement;

    c. Any easement or license agreement, including an easement or license agreement in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement; or

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality) in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. includes that part of any contract or agreement that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

    However, Paragraph f. does not include that part of any contract or agreement:

**BUSINESS LIABILITY COVERAGE FORM**

(1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1) above and supervisory, inspection, architectural or engineering activities.

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

14. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

15. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment, of at least 1,000 pounds gross vehicle weight, designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution.

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral, written or electronic publication of material that violates a person's right of privacy;

f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

18. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

19. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed to be completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

As used in this definition, "electronic data" is not tangible property.

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Volunteer worker" means a person who:

a. Is not your "employee";

**BUSINESS LIABILITY COVERAGE FORM**

b. Donates his or her work;

c. Acts at the direction of and within the scope of duties determined by you; and

d. Is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

24. "Your product".

  a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You,

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

25. "Your work":

  a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

  b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    (2) The providing of or failure to provide warnings or instructions.

Form SS 00 08 04 05



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESS LIABILITY COVERAGE FORM
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

### BUSINESS LIABILITY COVERAGE FORM

A. Sub-subparagraphs 1.p. (7); (8), (15) of Paragraph 2., of Section B. Exclusions are deleted and replaced with the following:

p. Personal and Advertising Injury:

(7) (a) Arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

(b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

(1) Infringement, in your "advertisement", of:

(a) Copyright;

(b) Slogan; or

(c) Title of any literary or artistic work; or

(2) Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

(8) Arising out of an offense committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider

However, this exclusion does not apply to Paragraphs a., b. and c. of the definition of "personal and advertising injury" under the Definitions Section

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

(15) Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

B. Subparagraph 1.r. of Section B. Exclusions is deleted and replaced with the following:

r. Employment-Related Practices

"Personal and advertising injury" to:

(1) A person arising out of any "employment-related practices"; or

(2) The spouse, child, parent brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies

(a) Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;

(b) Whether the insured may be liable as an employer or in any other capacity; and

(c) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

C. Subparagraph 1.q. "Electronic Data" of Section B. Exclusions is deleted and replaced with the following:

q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

(1) Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) Damages arising out of the loss, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

D. Sub-subparagraph 7.b.(1) Other Insurance of Section E. Liability and Medical Expenses General Conditions is deleted and replaced with the following:

b. Excess Insurance

(1) Your Work

That is Fire, Extended Coverage, Builder's Risk, Installation Risk, Owner Controlled Insurance Program or OCIP, Wrap Up Insurance or similar coverage for "your work".

E. Subparagraph 17. c. "Personal and Advertising Injury" of Section G. Liability and Medical Expenses Definitions is deleted and replaced with the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;

F. Subparagraph 17.h. of Section G. Liability and Medical Expenses Definitions deleted.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROPERTY COVERAGE
# AMENDATORY ENDORSEMENT- GEORGIA

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

A. The following changes are made to Paragraph A.5., **Additional Coverages**:

1. Paragraph f., **Forgery** is deleted and replaced with the following.

   f. **Forgery**

   (1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent. This includes written instruments required in conjunction with any credit, debit, or charge card issued to you or any employee for business purposes

   (2) If you are sued for refusing to pay the check, draft, promissory note, or bill of exchange or similar written promise of payment in "money" on the basis that it has been forged or altered, and you have our written consent to defend against the " suit" , we will pay for any reasonable expenses that you incur and pay in that defense.

   (3) We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

       (a) Money orders, including counterfeit money orders, issued by any post office, express company or bank that are not paid upon presentation; and

       (b) Counterfeit United States or Canadian paper currency.

(4) For the purpose of this Coverage Extension, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original if replaced.

(5) We will treat mechanically reproduced facsimile signatures the same as handwritten signatures

(6) The most we will pay in any one occurrence, including legal expenses, under this Additional Coverage is $5,000, unless a higher Limit of Insurance is shown in the Declarations.

2. Paragraph i.(2)(c). of the **Money and Securities** Additional Coverage is deleted and replaced with the following:

   (c) Loss or damage to " money" and ' securities" following and directly related to the use of any " computer" to fraudulently cause a transfer of that property

B. The following changes are made to Section B., **EXCLUSIONS**:

1. The following is exclusion is added to Paragraph 1.:

   **Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment"**

   This exclusion does not apply to Electronic Vandalism, form SS 14 29 or Electronic Vandalism, form SS 40 08 if either form has been made part of this policy

   (1) Destruction or corruption of " electronic data" caused by a virus, malicious

© 2019. The Hartford

code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

(2) Unauthorized viewing, copying or use of electronic data (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as "theft";

(3) Errors or omissions in programming or processing "electronic data";

(4) Errors or deficiency in design, installation, maintenance, repair or modification of your computer system or any computer system or network to which your system is connected or on which your system depends (including "electronic data");

(5) Manipulation of your computer system, including "electronic data", by an employee, volunteer worker or contractor, for the purpose of diverting or destroying "electronic data" or causing fraudulent or illegal transfer of any property;

(6) Interruption in normal computer function or network service or function due to insufficient capacity to process transactions or to an overload of activity on the system or network;

(7) Unexplained or indeterminable failure, malfunction or slowdown of a computer system, including "electronic data" and the inability to access or properly manipulate the "electronic data";

(8) Complete or substantial failure, disablement or shutdown of the Internet, regardless of the cause;

(9) The inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

But if direct physical loss or direct physical damage occurs to Covered Property from a resulting Covered Cause of Loss, we will pay for that resulting direct physical loss or direct physical damage. Mere loss of use or loss of functionality of any property is not considered physical loss or physical damage.

2. Paragraph 2. is deleted and replaced with the following:

We will not pay for loss or damage caused by or resulting from:

a. Consequential Losses: Delay, loss of use or loss of market.

b. Smoke, Vapor, Gas: Smoke, vapor or gas from agricultural smudging or industrial operations.

c. Miscellaneous Types of Loss:

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, mold, spore or other animals;

(6) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if physical loss or physical damage by the "specified causes of loss", building glass breakage or Equipment Breakdown Accident results, we will pay for that resulting physical loss or physical damage.

d. Frozen Plumbing: Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

e. Dishonesty: Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

f. **False Pretense:** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. **Exposed Property:** Rain, snow, ice or sleet to personal property in the open, except as provided in the Coverage Extension for Outdoor Property.

h. **Collapse:** Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the "scheduled premises", we will pay for that resulting loss or damage.

i. **Pollution:** We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if physical loss or physical damage by the "specified causes of loss" results, we will pay for the resulting physical loss or physical damage caused by the "specified cause of loss."

C. Definition 4., "Data", of Section G., **PROPERTY DEFINITIONS** is deleted and replaced with the following.

4. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

"Electronic data" it is not considered physical property under this Coverage Part and is covered only as expressly provided for in this Coverage Part. Any such coverage does not indicate that "electronic data" is considered to be tangible property subject to physical loss or physical damage for purposes of any business interruption coverage or other coverage that requires physical loss or physical damage.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BUSINESS LIABILITY COVERAGE FORM AMENDATORY ENDORSEMENT- SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

A.   Sub-subparagraph 3.a.(5) of Paragraph 3., Section A. Coverages is deleted and replaced with the following:

   3.   **Coverage Extension - Supplementary Payments:**

      a.   **(5)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

© 2016, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

**COMMON POLICY CONDITIONS**
**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

I.  The following provisions modify   the **COMMON POLICY CONDITIONS:**

A.  Paragraph A.1. of the Cancellation Condition is replaced by the following:

1.  The first Named Insured shown in the Declarations may cancel this policy by:

a.  Returning this policy to us;

b.  Giving us or our authorized agent advanced notice of cancellation in one of the following ways:

(1) Orally;

(2) Electronically; or

(3) Mailing or delivering to us written notice;

stating a future date on which the policy is to be cancelled, subject to the following:

c.  If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date the policy is returned to us, we receive notice from the first Named Insured; or the date specified in the notice, whichever is later.

However, upon receiving a notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation by confirming the date and time of cancellation to the first Named Insured.

d.  If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and any such third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

(1) 10 days from the date of mailing or delivering our notice; or

(2) The effective date of cancellation stated in the first Named Insured's notice to us.

B.  Paragraph A.5. of the Cancellation Condition is replaced by the following:

5.  Premium Refund

a.  If this policy is cancelled, we will send the first Named Insured any premium refund due.

b.  If we cancel, the refund will be pro rata, except as provided in c. below.

c.  If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata.  Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

d.  If the first Named Insured cancels, the refund may be less than pro rata.

e.  The cancellation will be effective even if we have not made or offered a refund

C.  The following is added to the Cancellation Condition   and   supersedes   any   other provisions to the contrary:

If we decide to

1.  Cancel or nonrenew this policy; or

2.  Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

Form SS 01 04 03 20

© 2020, The Hartford

Page 1 of 3

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Expect as applicable as described in Paragraph D. below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

Such notice shall be delivered as provided in subsection (d) of Georgia Insurance Code section 33-24-14, in person, or by depositing the notice in the United States mail to be dispatched by at least first-class mail to the last address of record of the first Named Insured and receiving the receipt provided by the United States Postal Service

If we fail to comply to the notice requirements above, the first Named Insured is entitled to purchase, under the same premiums and policy terms and conditions, an additional thirty (30) day period of insurance coverage beyond the termination date of such policy provided, however, that the policyholder shall tender the premium amount, computed on a pro rata basis, to us on or before the termination date.

We shall provide a written notice of reduction in coverage to the First Named Insured no less then forty five (45) days prior to the effective date of the proposed reduction in coverage; provided that such notice shall be printed in all capital letters in a separate document entitled "NOTICE OF REDUCTION IN COVERAGE". Such notice shall be delivered as provided in subsection (d) of Georgia Insurance Code section 33-24-14, in person or by depositing the notice in the United States mail to be dispatched by at least first-class mail to the last address of record of the first Named Insured and receiving the receipt provided by the United States Postal Service.

Reduction in coverage means a change made by us which results in a removal of coverage, diminution in scope or less coverage, or the addition of an exclusion. Reduction in coverage shall not include any change, reduction, or elimination of coverage made at the request of

the first Named Insured. The correction of typographical or scrivener's errors or applications of mandated legislative changes shall not be considered a reduction in coverage.

D. The following provisions apply to insurance covering residential real property, if the named insured is a natural person.

With respect to such insurance, the following is added to the Cancellation Condition and supersedes any provisions to the contrary:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first named insured at least 10 days before the date of cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons, or as permitted under applicable Georgia law:

(a) Nonpayment of premium, whether payable to us or to our agent;

(b) Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy, or presenting a claim under this policy;

(c) Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

(d) Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

3. We may cancel by providing notice to the first named insured at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

the first Named Insured. The correction of typographical or scrivener's errors or applications of mandated legislative changes shall not be considered a reduction in coverage.

D. The following provisions apply to insurance covering residential real property, if the named insured is a natural person.

With respect to such insurance, the following is added to the Cancellation Condition and supersedes any provisions to the contrary:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first named insured at least 10 days before the date of cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons, or as permitted under applicable Georgia law:

   (a) Nonpayment of premium, whether payable to us or to our agent;

   (b) Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

   (c) Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

   (d) Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

3. We may cancel by providing notice to the first named insured at least:

   (a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (b) 45 days before the effective date of cancellation if we cancel for any of the reasons listed in 2.(b), (c) or (d) above.

III. The following provisions modify the **STANDARD PROPERTY and SPECIAL PROPERTY COVERAGE FORM:**

A. The following exclusion and related provisions are added to paragraph B.2 Exclusions:

   1. We will not pay for loss or damage arising out of any act committed

      a. By or at the direction of any insured; and

      b. With the intent to cause a loss.

   2. However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

      a. Is otherwise covered under this coverage part; and

      b. Arose out of an act of family violence by an insured, against whom a family violence complaint is brought for such act.

   3. If we pay a claim pursuant to Paragraph E.2. our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the applicable Limit of Insurance as stated in the Declarations.

B. With respect to Section E.5. Loss Payment, Subsection (d), this policy covers only the cost of repair, rebuilding or replacement. Such cost does not include recovery of, and therefore this policy does not pay any compensation for, an actual or perceived reduction of the market value of any property. But if the property that has sustained loss or damage is subject to an endorsement which explicitly addresses the market value, then that endorsement will apply to such property in accordance with its terms.

POLICY NUMBER: 20 SBA AN1439



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UNMANNED AIRCRAFT - LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS LIABILITY COVERAGE FORM

SCHEDULE

| |
|---|
| ☐ Option 1: If an "X" is shown in this box, Bodily Injury and Property Damage coverage for Unmanned Aircraft applies and the Unmanned Aircraft Exclusion in Paragraph A.1.g.(1) of this endorsement does not apply. |
| ☐ Option 2: If an "X" is shown in this box, Personal And Advertising Injury coverage for Unmanned Aircraft applies and the Unmanned Aircraft - Personal And Advertising Injury Exclusion in Paragraph A.2. of this endorsement does not apply |

Except as otherwise stated in this endorsement or the schedule above, the terms and conditions of the policy apply to the insurance stated below.

A. The following changes are made to Section B.1., EXCLUSIONS

1. Paragraph g., Aircraft, Auto or Watercraft, is deleted and replaced with the following:

   g. Aircraft, Auto or Watercraft

      (1) Unmanned Aircraft

         "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft" Use includes operation and "loading or unloading".

         This Paragraph g.(1) applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

      (2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft

         "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft), "auto" or watercraft

owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph g.(2) applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

Paragraph g. (2) does not apply to:

(a) A watercraft while ashore on premises you own or rent;

(b) A watercraft you do not own that is:

   (i) Less than 51 feet long; and

   (ii) Not being used to carry persons for a charge;

(c) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(d) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

(e) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Section G Liability and Medical Expenses Definitions, Paragraph 15.f. (2) or f. (3) of the definition of "mobile equipment"; or

(f) An aircraft (other than unmanned aircraft) that is not owned by any insured and is hired, chartered or loaned with a paid crew. However, this exception does not apply if the insured has any other insurance for such "bodily injury" or "property damage", whether the other insurance is primary, excess, contingent or on any other basis.

2. The following is added to Section B. EXCLUSIONS Paragraph p., Personal and Advertising Injury:

Unmanned Aircraft - Personal and Advertising Injury

Arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use, or entrustment to others of any aircraft that is an "unmanned aircraft".

However, this exclusion does not apply if the only allegation in the claim or "suit" involves an intellectual property right which is limited to:

(a) Infringement, in your "advertisement", of:

(i) Copyright;

(ii) Slogan; or

(iii) Title of any literary or artistic work; or

(b) Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

B. The following changes apply to Section G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS:

1. The following definition is added:

"Unmanned aircraft" means an aircraft that is not:

a. Designed;

b. Manufactured; or

c. Modified after manufacture

to be controlled directly by a person from within or on the aircraft.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RESTAURANT STRETCH

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

A. The following changes apply to the Standard Property Coverage Form, Additional Coverages, A.4., or to the Special Property Coverage Form, Additional Coverages, A.5.:

1. **Accounts Receivable**

   The following Additional Coverage is added:

   a. We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss of or physical damage to your records of accounts receivable. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

   b. We will pay up to $25,000 in any one occurrence as a Limit of Insurance to cover direct physical loss of or physical damage to your records of accounts receivable that are not located at the "scheduled premises" or in transit. This Limit of insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

   This Additional Coverage is subject to the provisions of the Accounts Receivable Coverage, Form SS 04 39, with the exception of the Limit of Insurance provision contained in that form. Accounts Receivable Coverage, Form SS 04 39 is made a part of this policy whether or not Accounts Receivable coverage is indicated in the Declarations.

2. **Brands and Labels**

   The following Additional Coverage is added:

   In the event of covered physical loss or physical damage to merchandise that is branded or

labeled, we will take all or part of the physically damaged property at an agreed or appraised value and we will pay for:

a. Expenses you incur to:

   (1) Stamp salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

   (2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise and its containers to comply with the law;

b. Any reduction in the salvage value of the physically damaged merchandise as the result of the removal of the brand or label.

This Additional Coverage is included within the Business Personal Property Limit of Insurance.

3. **Claim Expenses**

   The following Additional Coverage is added.

   In the event of covered loss or physical damage we will pay up to $10,000 in any one occurrence as an additional Limit of Insurance to cover reasonable expenses incurred by you at our specific request to assist us in:

   a. The investigation of a claim or suit; or

   b. The determination of the amount of loss, such as taking inventory, or auditing business records.

4. **Computer Fraud**

   The following Additional Coverage is added:

   We will pay up to $5,000 in any one occurrence for physical loss of or physical damage to "money", "securities", and other property having intrinsic value resulting directly from computer fraud. Computer fraud means any act of stealing property following and directly related to the use of any computer to fraudulently cause a

© 2007, The Hartford

transfer of that property from inside your premises or from a banking institution or similar safe depository, to a person (other than a "messenger") outside those premises or to a place outside those premises.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

5. **Computers and Media**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply anywhere in the Coverage Territory to cover direct physical loss of or physical damage to your computer systems. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Computers and Media, Form SS 04 41, with the exception of the Limit of Insurance provision contained in that form. Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

6. **Debris Removal**

The following Additional Coverage is added:

In Limits of Insurance, C.4.b., the additional limit of insurance for the Debris Removal Additional Coverage is increased to $25,000 in any one occurrence.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

7. **Employee Dishonesty (including ERISA)**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to cover loss from employee dishonesty. This includes ERISA coverage. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Employee Dishonesty Coverage, Form SS 04 42, with the exception of the Limit of Insurance provision contained in that form. Employee Dishonesty Coverage, Form SS 04 42 is made a part of this policy whether or not Employee Dishonesty Coverage is indicated in the Declarations.

8. **Fine Arts**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance at each "scheduled premises" to apply to Fine Arts. This Limit of

Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage..

This Additional Coverage is subject to the provisions of Fine Arts Coverage Form, Form SS 04 22, with the exception of the following:

a. The requirement contained under Paragraph A.1., Under A. Coverage, to list and describe Fine Arts in the Declarations or Shedule is deleted when Fine Arts are covered under this Stretch endorsement; and

b. The Limit of Insurance provision does not apply

c. Paragraph D.1. Valuation is deleted and replaced by the following:

The value of Fine Arts will be the market value at the time of physical loss or physical damage.

Fine Arts Coverage, Form SS 04 22 is made a part of this policy whether or not Fine Arts Coverage is indicated in the Declarations.

9. **Forgery**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to cover loss from forgery of covered instruments, money orders, credit cards, and counterfeit money.

This Additional Coverage is subject to the provisions of Forgery Coverage, Form SS 04 86, with the exception of the Limit of Insurance provision contained in that form. Forgery Coverage, Form SS 04 86 is made a part of this policy, whether or not Forgery Coverage is indicated in the Declarations.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

10. **Laptop Computers - Worldwide Coverage**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply to laptop, palmtop, personal digital assistants (PDAs), and similar portable computer equipment and accessories anywhere in the world, including while in transit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Limitation: We will not pay for direct physical loss or physical damage caused by, resulting from, or arising out of the theft of this property while in transit as checked baggage.

This Additional Coverage is subject to the provisions of Computers and Media, Form

SS 04 41, with the exception of the Limit of Insurance provision contained in that form Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

### 11. Lost Keys.

The following Additional Coverage is added:

We will pay up to $2,500 in any one occurrence as an additional amount of insurance to cover the loss of your keys used to secure the "scheduled premises" due to theft.

We will not pay more than the least of the following:

a.  Re-key the locks,

b.  Install new lock cylinders,

c.  Provide new master keys, or

d.  Replace existing locks with new locks of like kind and quality

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

### 12. Off-Premises Utility Services - Direct Damage

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss or physical damage to Covered Property caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Off-Premises Utility Services - Direct Damage, Form SS 40 18, with the exception of the Utility Services Limit of Insurance contained in that form, Off-Premises Utility Services – Direct Damage, Form SS 40 18 is made a part of this policy, whether or not Off-Premises Utility Services – Direct Damage coverage is indicated in the Declarations.

### 13. Outdoor Signs

The following Additional Coverage is added and supersedes any other coverage for signs in this policy

We will pay up to full value of outdoor signs at each "scheduled premises" to cover direct physical loss of or physical damage to outdoor signs.

This Additional Coverage is subject to the provisions of Outdoor Signs, Form SS 04 44, with the exception of the Limit of Insurance provision and paragraph E, of that form. Outdoor Signs, Form SS 04 44 is made a part of this policy whether or not Outdoor Signs coverage is indicated in the Declarations.

This Additional Coverage is in addition to any recoverable Limits of Insurance applicable to Building or Business Personal Property.

### 14. Pairs or Sets

The following Additional Coverage is added:

If pairs or sets of stock are damaged by a Covered Cause of Loss, we will pay any reduction in value of the undamaged parts of such damaged pairs or sets.

As used in this Additional Coverage, the term stock means merchandise held in storage or for sale, raw materials, and goods in-process or finished.

This coverage is included within the Business Personal Property Limit of Insurance.

### 15. Personal Property of Others

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance at each "scheduled premises" to apply to personal property of others that is in your care, custody or control. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage

This Additional Coverage is subject to the provisions of Personal Property of Others, Form SS 04 45, with the exception of the statement concerning Limit of Insurance applicable to Personal Property of Others shown in the Declarations, contained in that form. Personal Property of Others, Form SS 04 45 is made a part of this policy whether or not Personal Property of Others coverage is indicated in the Declarations.

### 16. Property at Other Premises.

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence to extend coverage for Business Personal Property at any premises not described in the Declarations.

This includes property that you have sold under an installation agreement and for which your responsibility continues until the property is accepted by the customer.

This Extension does not apply to:

a.  Property in the care, custody or control of your salespersons;

b.  Property at any fair or exhibition;

c.  Property in transit; or

d.  Property temporarily stored at any premises not described in the Declarations.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

## 17. Salespersons' Samples

The following Additional Coverage is added:

We will pay up to $1,000 in any one occurrence as an additional Limit of Insurance to extend Business Personal Property to cover:

a. Samples of your stock in trade (including containers); and

b. Similar property of others;

but only while such property is in:

a. Your custody while you are acting as a sales representative; or

b. The custody of your sales representative or agents

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

## 18. Sewer and Drain Back Up

The following Additional Coverage is added:

We will pay for direct physical loss or physical damage to Covered Property solely caused by water that backs up from a sewer or drain.

This coverage is included within the Covered Property Limits of Insurance.

### THIS IS NOT FLOOD INSURANCE

We will not pay for water or other materials that back up from any sewer or drain when it is caused by any flood. This applies regardless of the proximity of the flood to Covered Property. Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer or drain system.

## 19. Sump Overflow or Sump Pump Failure

The following Additional Coverage is added:

The maximum we will pay in any one occurrence is $15,000 for any loss, including Business Income or Extra Expense, resulting from physical loss or physical damage to Covered Property that is caused by or resulting from water that overflows due to the failure of a sump pump, sump pump well, or any other type of system designed to remove subsurface water from the foundation area if the failure is directly or indirectly the result of a Covered Cause of Loss. Failure means an abrupt cessation of normal functioning. This Limit of Insurance is the maximum we will pay regardless of any other coverage provided under this policy

This Additional Coverage is subject to the terms and conditions of this policy with the exception of:

a. Paragraph B.1.f., Power Failure, of the Standard Property Coverage Form and Paragraph B.1.d., Power Failure, of the Special Property Coverage Form; and

b. Paragraph B.1.h.(4), Water, of the Standard Property Coverage Form and Paragraph B.1.f.(4), Water, of the Special Property Coverage Form

### THIS IS NOT FLOOD INSURANCE

We will not pay for water or other materials that overflow from a sump when the overflow is caused by any flood. This applies regardless of the proximity of the flood to Covered Property. Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer or drain system.

## 20. Temperature Change

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss of or physical damage to perishable stock caused by or resulting from a change of temperature or contamination by a refrigerant.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Temperature Change Coverage, Form SS 04 46, with the exception of the Limit of Insurance provision contained in that form. Temperature Change, Form SS 04 46 is made a part of this policy whether or not Temperature Change coverage is indicated in the Declarations

## 21. Tenant Building and Business Personal Property Coverage - Required by Lease

The following Additional Coverage is added:

The maximum we will pay in any one occurrence is $20,000 as a Limit of Insurance to apply to direct physical loss of or physical damage to Building and Business Personal Property for which you have a contractual responsibility to insure. This includes building fixtures, machinery and equipment.

## 22. Transit Property in the Care of Carriers for Hire

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply to direct physical loss of or physical damage to property while in transit at your risk. This Limit of Insurance is in

addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Transit Property in the Care of Carriers for Hire, Form SS 04 30, with the exception of the Limit of Insurance provision contained in that form. Transit Property in the Care of Carriers for Hire, Form SS 04 30 is made a part of this policy whether or not Transit Property in the Care of Carriers for Hire is indicated in the Declarations.

23. **Unauthorized Business Card Use**

The following Additional Coverage is added:

The maximum we will pay in any one occurrence is $2,500 as a Limit of Insurance to cover loss resulting from the theft or unauthorized use of your Business Credit, Debit or Charge Cards, including the reasonable legal expenses you incur.

The Business Credit, Debit or Charge Cards must be issued to you or registered in your name or the business name and be used solely for business purposes.

**Limitation.** We will not pay for the theft or unauthorized use of Business Credit, Debit or Charge Cards entrusted to others or your employees.

24. **Valuable Papers and Records**

The following Additional Coverage is added:

a. We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss of or physical damage to your valuable papers and records. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

b. We will pay up to $25,000 in any one occurrence as a Limit of Insurance to cover direct physical loss of or physical damage to your valuable papers and records that are not located at the "scheduled premises" or in transit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Valuable Papers and Records Coverage, Form SS 04 47, with the exception of the Limit of Insurance provision contained in that form. Valuable Papers and Records Coverage, Form SS 04 47 is made a part of this policy whether or not Valuable Papers and Records coverage is indicated in the Declarations.

B. The following changes apply to the Standard Property Coverage Form, Coverage Extensions, A.5., or to the Special Property Coverage Form, Coverage Extensions, A.6. The Limits of Insurance stated in the paragraphs below replace the Limits of Insurance stated in the Standard Property Coverage Form or the Special Property Coverage Form for the coverages provided under this section. Except as otherwise stated, any other Limit of Insurance purchased under this policy as an option for the following coverages is in addition to the Limit of Insurance stated below:

1. **Newly Acquired or Constructed Property**

The following changes are made to Newly Acquired or Constructed Property:

a. **Building**

(1) The most we will pay in any one occurrence in subparagraph (1) is increased from $500,000 to $1,000,000 at each premises.

(2) The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

b. **Business Personal Property**

(1) The most we will pay in any one occurrence in subparagraph (2) is increased from $250,000 to $500,000 at each premises.

(2) The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

c. **Business Income and Extra Expense**

(1) If Business Income or Extra Expense are provided under this policy, the most we will pay in any one occurrence in subparagraph (3) is increased from $50,000 to $500,000 in any one occurrence at each premises.

(2) The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

2. **Outdoor Property**

In the Outdoor Property Coverage Extension, the most we will pay in any one occurrence is increased to $20,000, but not more than $1,000 for any one tree, shrub or plant.

3. **Personal Effects**

In the Personal Effects Coverage Extension, the most we will pay in any one occurrence is

increased from $10,000 to $25,000 at each "scheduled premises."

The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

4. **Property Off-Premises**

In the Personal Property Off-Premises Coverage Extension, the most we will pay in any one occurrence in subparagraph A.6.h.(2) is increased from $2,500 to $15,000.

C. The following changes apply only if Business Income and Extra Expenses are covered under this policy. These changes apply to the Standard Property Coverage Form, Additional Coverages, A.4., or to the Special Property Coverage Form, Additional Coverages, A.5.:

1. **Business Income Extension for Off-Premises Utility Services**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover loss of Business Income and Extra Expense caused by or resulting from the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Business Income Extension for Off-Premises Utility Services, Form SS 04 19, with the exception of the Limit of Insurance provision contained in that form. Business Income Extension for Off-Premises Utility Services, Form SS 04 19 is made a part of this policy whether or not Business Income Extension for Off-Premises Utility Services coverage is indicated in the Declarations.

2. **Business Income Extension for Web Sites**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to cover loss of Business Income you sustain due to the necessary interruption of business operations caused by direct physical loss of or physical damage to your Web Site operation at the premises of a vendor acting as your service provider This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage

Such interruption must be caused by or result from a Covered Cause of Loss.

a. **Coverage Time Period**

We will only pay for loss you sustain during the 7-day period immediately following the first 12 hours after the Covered Cause of Loss.

b. **Conditions**

This coverage applies only:

(1) If you have a back-up copy of your Web Page stored at a location other than the site of the Web Site vendor.

(2) To the extent that Business Income is permanently lost

3. **Business Income from Dependent Properties**

The following Additional Coverage is added:

We will pay for the loss of your Business Income and Extra Expense due to direct physical damage at the premises of any dependent property caused by or resulting from a Covered Cause of Loss The most we will pay under this endorsement for this coverage is $50,000 regardless of the number of dependent properties involved in any one occurrence. This Limit of Insurance is in addition to any other Limit shown in the Declarations for specific Dependent Properties

This additional coverage is subject to the provisions of Business Income from Dependent Properties, Form SS 04 78, with the exception of the Limit of Insurance provision contained in that form Business Income from Dependent Properties, Form SS 04 78 is made a part of this policy whether or not Business Income from Dependent Properties coverage is indicated in the Declarations.

There is no requirement for Dependent Properties to be scheduled for the coverages provided by this Stretch endorsement to apply.

4. **Extended Business Income**

In the Extended Business Income Additional Coverage, paragraph 4.j.(1)(b)(ii) of the Standard Property Coverage Form and paragraph 5.t.(1)(b)(ii) of the Special Property Coverage Form are amended to read as follows:

(b) 60 consecutive days after the date determined in (a) above.

5. **Food Contamination**

The following Additional Coverage is added:

We will pay the actual loss of Business Income and Extra Expense if your "operations" at any "scheduled premises" are ordered by a government authority to be suspended due to the discovery of or the suspicion of "food contamination".

This additional coverage is subject to the provisions of Food Contamination Coverage, Form SS 41 32, with the exception of Paragraph C., Limit of Insurance, which is deleted and replaced by the following

The most we will pay under this Additional Coverage, regardless of the number of occurrences or locations involved in any one order by a governmental authority is $25,000 This Limit of Insurance is in addition to any other Limit shown in the Declarations for Food Contamination Coverage.

Food Contamination Coverage, Form SS 41 32 is made a part of this policy whether or not Food Contamination Coverage is indicated in the Declarations.

**D.** The following Additional Coverage only applies if your policy is written with the Special Property Coverage Form

1. **Money and Securities**

   Paragraph A.5.l.(3) is deleted and replaced with the following:

   (3) The most we will pay for loss in any one occurrence is:

      (a) $10,000 for Inside the Premises for "money" and "securities" while:

         (i) In or on the "scheduled premises"; or

         (ii) Within a bank or financial institution; and

      (b) $10,000 for loss Outside the Premises for "money" and "securities" while anywhere else.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**E.** The following changes apply to Paragraph E.5.d., Loss Payment, of the Standard Property Coverage Form and the Special Property Coverage Form

1. **Valuation Changes**

   The following are added to the Loss Payment Property Loss Condition E.5.d.:

   (10)**Commodity Stock**

      We will determine the value of merchandise and raw materials that are bought and sold

      at an established market exchange. We will determine the value at:

      (a) The posted market price as of the time and place of loss;

      (b) Less discounts and expenses you otherwise would have had.

   (11)**"Finished Stock"**

      We will determine the value of goods that you have manufactured at the selling price less discounts and expenses you otherwise would have had.

   (12)**Mercantile Stock - Sold**

      We will determine the value of goods you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES

This endorsement modifies insurance provided under the following:

### SPECIAL PROPERTY COVERAGE FORM

This insurance applies only when Business Income and Extra Expense is shown in the Declarations as applicable.    Except  as   otherwise stated  in  this endorsement, the terms and conditions of the policy apply to the insurance stated below.

## A. BUSINESS  INCOME  EXTENSION  FOR  OFF-PREMISES UTILITY SERVICES

This Coverage Extension applies only when the Business Income Additional Coverage is included in this policy.

We will pay for loss of Business Income or Extra Expense at the "scheduled premises" caused by the interruption of service to the "scheduled premises". The interruption must result from direct physical loss or physical damage by a Covered Cause of Loss to the following property not on "scheduled premises":

1. "Water Supply Services";

2. "Communication Supply Services"; or

3. "Power Supply Services".

## B. WAITING PERIOD

We will only pay for loss you sustain after the first 12 consecutive hours following the direct physical loss of or physical damage to the property to which this endorsement applies. We will not pay for any reduction in business income or extra expense after electricity, steam or gas has been restored to the "scheduled premises".

## C. LIMIT OF INSURANCE

The most we will pay in any one occurrence for loss under this extension is the limit of insurance shown in the Declarations at each "scheduled premises".

## D. ADDITIONAL DEFINITIONS

1. "Water  Supply  Services",  meaning  the following types of property supplying water to the "scheduled premises":

   a. Pumping stations; and

   b. Water mains

2. "Communication Supply Services", meaning property, including overhead transmission lines supplying  communication  services,  including telephone,  radio,  microwave  or  television services, to the "scheduled premises", such as:

   a. Communication       transmission       lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

3. "Power  Supply  Services",  meaning  the following types of property supplying electricity, steam or gas, including overhead transmission lines to the "scheduled premises":

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission Lines.

Form SS 04 19 04 09                                                                                               Page 1 of 1

© 2009, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FINE ARTS

This endorsement modifies insurance provided under the following:

### SPECIAL PROPERTY COVERAGE FORM

This insurance applies only when the property is covered under the Special Property Coverage Form. Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

The following changes are made to the Special Property Coverage Form:

**A.** Under A. Coverage:

1: The following paragraph is added to 1. Covered Property:

Fine Arts listed and described in the Declarations or Schedule which are:

a. Owned by you; or

b. Owned by others, and in your care, custody and control; and

c. Located at the "scheduled premises", or in transit to and from the "scheduled premises", or at your residence.

2. The following is added to Paragraph 2. **Property Not Covered** with respect to coverage afforded by this endorsement:

Property on exhibition at fairgrounds or at any type of exposition, unless such locations are listed and described in the Declarations or Schedule.

3. The following special Limitation provision applies to property covered by this endorsement:

Art glass windows, glassware, statuary, marbles, bric-à-brac, porcelains and other articles of fragile or brittle nature are covered against loss by breakage only if loss or damage is caused by "specified causes of loss."

**4.** Section **B. EXCLUSIONS** do not apply to coverage afforded under this endorsement, except for:

(1) Governmental Action;

(2) Nuclear Hazard; and

(3) War and Military Action.

**5.** Additional Exclusions

We will not pay for physical loss or physical damage caused by or resulting from,

a. Delay, loss of use, loss of market, or any other causes of consequential loss;

b. Wear and tear, depreciation or obsolescence;

c. Rust, corrosion, fungus, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

d. Insects, birds, rodents or other animals.

e. Dishonest acts by:

(1) You or any of your partners;

(2) Your directors or trustees;

(3) Your authorized representatives or employees; or

(4) Anyone, other than a carrier for hire, to whom you entrusted the Covered Property, including their employees, for any purpose;

Whether acting alone or in collusion with others; and

Whether or not occurring during the hours of employment.

© 2005, The Hartford

f.  Voluntary parting with any property whether or not induced to do so by any fraudulent scheme, trick, device or false pretense.

g.  Unauthorized instructions to transfer property to any person or to any place.

h.  Theft from any unattended vehicle unless at the time of theft its windows, doors and compartments were closed and locked and there are visible signs that the theft was the result of forced entry.

But this exclusion does not apply to property in the custody of a carrier for hire.

i.  Processing or work performed upon the property.

**B.  Limits of Insurance**

Section C. LIMITS OF INSURANCE is replaced by the following:

The most we will pay for physical loss or physical damage in any one occurrence for property covered under this endorsement is the Limit of Insurance shown in the Declarations for "Fine Arts", but no more than $25,000 for any one item of "Fine Arts".

**C.  Deductible**

We will adjust loss in any one occurrence under this endorsement as a single loss. The only deductible amount that applies under this coverage is the larger of:

1.  $250; or

2.  The amount shown in the Declarations as a deductible applicable to this coverage.

**D.  Additional Conditions**

1.  **Valuation**

The following is added to Section E. PROPERTY LOSS CONDITIONS:

The value of Covered Property will be the amount shown in the Declarations or Schedule for each item of Covered Property, which is agreed to be the value of the item.

2.  **Pair or Set**

In case of total loss to an item of Covered Property which is part of a pair or set, we agree to pay you the full amount of the pair or set as shown in the Declarations or Schedule and you agree to surrender the remaining item(s) of the pair or set to us.

3.  **Packing**

You agree that Covered Property will be packed and unpacked by competent packers.

**E.  Additional Definition**

The following definition is added to Section H. DEFINITIONS:

"Fine Arts" meaning paintings, etchings, pictures, tapestries; art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property of rarity, historical value or artistic merit.

**F.  Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the Covered Property, subject to the Limit of Insurance.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRANSIT COVERAGE – PROPERTY IN THE CARE OF CARRIERS FOR HIRE

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement the terms and conditions of the policy and of the Special Property Coverage Form apply to the insurance stated below.

A.  With respect to this Transit Coverage – Property in the Care of Carriers for Hire only, the following changes are made to the Special Property Coverage Form:

1.  Under A.4. Limitations, subparagraph c.(3) which limits coverage for patterns, dies, molds and forms, is deleted.

2.  Under B. Exclusions

a.  Exclusions 1.a. (Earth Movement) and 1.f. (Water) do not apply to property in transit.

b.  Exclusions 2.e. (Dishonesty) and 2.g. (Exposed Property) do not apply to property in custody of a carrier for hire

c.  Exclusion 2.f. (False Pretense) does not apply to loss or damage caused by your good faith acceptance of false bills of lading or shipping receipts.

d.  The following Exclusion is added:

We will not pay for physical loss or physical damage caused by or resulting from poor or insufficient packaging or packing.

B.  Transit Coverage – Property in the Care of Carriers for Hire

1.  The insurance that applies to your Business Personal Property and Personal Property of Others is extended to apply to shipments of that property while in transit at your risk, by motor vehicle, railroad car or aircraft between points within the Coverage Territory. This includes property you have sold and for which your responsibility continues until it is delivered.

2.  The Transit Coverage – Property in the Care of Carriers for Hire also applies to:

a.  **Expenses to Inspect, Repackage and Reship Damaged Shipments**

The necessary additional expenses you incur to inspect, repackage and reship Covered Property which is physically damaged as a result of a Covered Cause of Loss.

b.  **Expenses to Protect Covered Property from Spoilage or Change in Temperature**

The necessary additional expense you incur to temporarily store Covered Property in a temperature controlled environment in order to avoid or minimize physical loss or physical damage to such property from spoilage or change in temperature. Such temporary storage must be made necessary by the sudden and accidental breakdown of heating or refrigeration unit(s) on transporting conveyances.

This additional expense will not include:

(1)  Expenses to repair or replace heating or refrigeration unit(s);

(2)  Costs or penalties due to detention or delay of any vehicles, trailers, conveyances or containers; or

(3)  Costs for additional wages, room, board or meals.

c.  **F.O.B. Shipments**

Outgoing shipments where the risk of physical loss or physical damage is transferred to the buyer when such property leaves your premises.

You must use all reasonable means to collect the amount due you from the buyer

© 2005, The Hartford

before making a claim under this Transit Coverage. We will not make payment until you grant us the right of recovery against the buyer.

d. **Loading and Unloading.**

Shipments during loading or unloading and within 500 feet of any transporting conveyance

e. **Return Shipments**

Outgoing shipments which have been rejected by the consignee or are not deliverable, while:

(1) In due course of transit, being returned to you; or

(2) Up to 10 days after delivery or attempted delivery awaiting return shipment to you.

Payment under paragraphs a., b., c., d. and e. above will not increase the Transit Coverage Limit of Insurance.

C. **Under this Transit Coverage – Property in the Care of Carriers for Hire, we will not pay for:**

1. Property in the care, custody or control of your salespersons.

2. Mail shipments in the custody of the U.S. Postal Service.

3. Property of Others for which you are responsible as a:

a. Carrier for hire; or

b. Carloader, consolidator, broker, freight forwarder, shipping association, or other arranger of transportation.

4. Property in or on a motor vehicle you own, lease or operate.

D. **Limit of Insurance**

The Limit of Insurance shown in the Declarations for Transit Coverage – Property in the Care of Carriers for Hire is the most we will pay for all physical loss or physical damage in any one occurrence to property insured under this endorsement.

E. **Deductible**

We will not pay for physical loss or physical damage in any one occurrence until the amount of physical loss or physical damage exceeds $250. We will then pay the amount of physical loss or physical damage in excess of $250 up to the applicable Limit of Insurance.

F. **Additional Conditions.**

1. **Valuation**

Property Loss Condition E.5. is deleted and replaced by the following:

a. Valuation

(1) Property You Own

The value of Covered Property will be the amount of invoice plus accrued charges, prepaid charges and charges since shipment; or

(2) In the absence of an invoice, the value of Covered Property will be its actual cash value, with proper deduction for depreciation, at the point of destination on the date of expected arrival.

b. Property of Others

The most we will pay for Covered Property owned by others is the lesser of:

(1) Your legal liability for direct physical loss or physical damage to such property; or

(2) What we would pay if you had owned the property

2. Impairment of Rights of Recovery

We will not pay for physical loss or physical damage, if you impair our rights to recover damages from any carrier for hire. But you may accept from carriers for hire bills of lading, receipts or contracts of transportation which contain a limitation of value.

   Form SS 04 30 07 05



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO

This endorsement modifies insurance provided under the following:

BUSINESS LIABILITY COVERAGE FORM

This coverage is subject to all provisions in the BUSINESS LIABILITY COVERAGE FORM not expressly modified herein.

**A. Amended Coverage:**

Coverage is extended to "bodily injury" and "property damage" arising out of the use of a "hired auto" and "non-owned auto".

**B. Paragraph B. EXCLUSIONS** is amended as follows:

1. Exclusion g. Aircraft, Auto or Watercraft does not apply to a "hired auto" or a "non-owned auto".

2. Exclusion e. Employers Liability does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract"

3. Exclusion f. Pollution is replaced by the following:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto".

b. Before the "pollutants" or any property in which the "pollutants" are contained are

moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive, or dispose of such "pollutants"; and

(2) The "bodily injury" and "property damage" does not arise out of the operation of any equipment listed in paragraphs 15.b. and 15.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

© 2009, The Hartford
(Includes copyrighted material of ISO Properties, Inc., with its permission)

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage as a result of the maintenance or use of a covered "auto".

4. With respect to this coverage, the following additional exclusions apply:

a. **Fellow employee**

Coverage does not apply to "bodily injury" to any fellow "employee" of the "insured" arising out of the operation of an "auto" owned by the "insured" in the course of the fellow "employee's" employment.

b. **Care, custody or control**

Coverage does not apply to "property damage" involving property owned or transported by the "insured" or in the "insured's" care, custody or control

C. With respect to "hired auto" and "non-owned auto" coverage, Paragraph C, WHO IS AN INSURED is deleted and replaced by the following:

The following are "insureds":

a. You.

b. Your "employee" while using with your permission:

(1) An "auto" you hire or borrow; or

(2) An "auto" you don't own, hire or borrow in your business or personal affairs; or

(3) An "auto" hired or rented by your "employee" on your behalf and at your direction.

c. Anyone else while using a "hired auto" or "non-owned auto" with your permission except:

(1) The owner or anyone else from whom you hire or borrow an "auto".

(2) Someone using an auto while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(3) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from an "auto".

(4) A partner (if you are a partnership), or a member (if you are a limited liability

company) for an "auto" owned by him or her or a member of his or her household;

d. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

D. With respect to the operation of a "hired auto" and "non-owned auto", the following additional conditions apply:

1. **OTHER INSURANCE**

a. Except for any liability assumed under an "insured contract" the insurance provided by this Coverage Form is excess over any other collectible insurance.

However, if your business is the selling, servicing, repairing, parking or storage of "autos", the insurance provided by this endorsement is primary when covered "bodily injury" or "property damage" arises out of the operation of a customer's "auto" by you or your "employee".

b. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis

2. **TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

If the Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

E. The following definitions are added:

G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS.

1. "Hired auto" means any "auto" you lease, hire, rent or borrow This does not include any auto you lease, hire, rent or borrow from any of your "employees", your partners (if you are a partnership), members (if you are a limited liability company),

Form SS 04 38 09 09

or your "executive officers" or members of their households

This does not include a long-term leased "auto" that you insure as an owned "auto" under any other auto liability insurance policy or a temporary substitute for an "auto" you own that is out of service because of its breakdown, repair, servicing or destruction

2. "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes:

   a. "Autos" owned by your "employees" your partners (if you are a partnership), members (if you are a limited liability company), or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

   b. Customer's "auto" that is in your care, custody or control for service.



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ACCOUNTS RECEIVABLE

This endorsement modifies insurance provided under the following:

### STANDARD PROPERTY COVERAGE FORM
### SPECIAL PROPERTY COVERAGE FORM

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

A. When shown in the Declarations as applicable, the Limit of Insurance stated in paragraph A.8.a.(1), Accounts Receivable, in the Standard Property Coverage Form and A.6.a.(1), Accounts Receivable, in the Special Property Coverage Form is replaced by the Limit of Insurance for Accounts Receivable shown in the Declarations. All other terms and conditions of the Accounts Receivable Coverage Extension apply to this Optional Coverage.

B. Limit of Insurance

The most we will pay under this coverage extension in any one occurrence is the Limit of Insurance shown in the Declarations for Accounts Receivable.

C. Deductible

We will not pay for loss in any one occurrence unless the amount of loss exceeds the policy deductible stated in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

D. Additional Conditions

(1) If you cannot accurately establish the value of accounts receivable outstanding as of the time of direct physical loss or physical damage the following method will be used:

(a) Determine the total of the average monthly value of accounts receivable for the 12 months immediately preceding the month in which the direct physical loss or physical damage occurred, and

(b) Adjust that total for any normal fluctuations in the value of accounts receivable for the month in which the direct physical loss or physical damage occurred or for any demonstrated variance from the average for that month.

(2) The following will be deducted from the total value of accounts receivable, however that value is established:

(a) The value of the accounts for which there is no loss or damage;

(b) The value of the accounts that you are able to reestablish or collect;

(c) A value to allow for probable bad debts that you are normally unable to collect; and

(d) All unearned interest and service charges.

© 2005, The Hartford



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMPUTERS AND MEDIA

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

A. **Computer Equipment, Electronic Data and Software**

1. **Coverage**

We will pay for direct physical loss of or physical damage to "computer equipment" and the cost to research, replace or restore physically lost or physically damaged "electronic data" and "software" subject to the Limit of Insurance shown in the Declarations for Computers and Media while anywhere within the coverage territory, and while in transit, but only if:

a. Owned by you; or

b. Owned by others but in your care, custody and control regardless of whether you use it for personal or business needs.

2. **Property Not Covered**

"Computer Equipment" as used in this optional coverage does not include

a. Source documents, other than manuals purchased with hardware or "software";

b. Worksheets and printouts;

c. Property held for sale or lease;

d. Property leased or rented to others; or

e. "Money", deeds, notes, "securities" or other financial instruments, including such instruments in electronic form.

3. **Extended Causes of Loss**

Direct physical loss or physical damage to your "computer equipment", "electronic data" or "software", or "computer equipment", "electronic data" or "software" of others in your care, custody or control is extended to include the following:

a. Electromagnetic injury caused by:

(1) Blackout or brownout;

(2) Power Failure;

(3) Airport security check, or radio or telephone line interference; or

(4) Electromagnetic disturbance outside the "computer system";

b. Head crash, meaning physical damage to disks, tapes or hardware caused by a contact of electromagnetic heads (which read or write information) with such disks or tapes;

c. Damage caused by a "computer virus"; and

d. Theft of "computer equipment" away from the "scheduled premises". Theft means an act of stealing or an attempt to steal. Theft includes loss of property from a known place when it is likely that the property has been stolen.

4. **Exclusion**

We will not pay to research, replace or restore physically lost or physically damaged "electronic data" or "software" which is licensed, leased or rented to others.

5. **Deductible**

We will not pay for loss or damage in any one occurrence to "computer equipment" until the amount of loss or damage exceeds $250, unless a separate deductible is stated in the Declarations for Computers and Media Coverage.

B. **Additional Coverage**

1. **Business Income and Extra Expense Coverage**

If Business Income and Extra Expense Coverage is included in this policy then the following applies.

a. **Coverage**

(1) Coverage under this endorsement applies to the following Additional

© 2018, The Hartford

Coverages and Coverage Extensions in the Standard or Special Property Coverage Form with respect to "computer equipment", "electronic data" and "software":

(a) Business Income;

(b) Extra Expense;

(c) Civil Authority;

(d) Extended Business Income; and

(e) Newly Acquired or Constructed Property Coverage.

(2) Coverage under this endorsement does not apply to any other Additional Coverage or Coverage Extension.

b. **Coverage Limitations**

The following limitations apply only if the physical loss or physical damage is a direct result of the Extended Causes of Loss for "computer equipment", "software" and "electronic data" as indicated below

(1) Limit of Insurance

This Additional Coverage is included in the Limit of Insurance for Computers and Media shown in the Declarations when the actual loss of business income and extra expense you incur due to the necessary suspension (slowdown or cessation) of your operations is a result of:

(a) A cause of loss included in A.3.a., b. or c., Extended Causes of Loss, of this endorsement; or

(b) Physical damage or physical loss to "computer equipment", "electronic data", and "software" that was away from the scheduled premises at the time of loss.

This is not an additional limit of insurance.

(2) Waiting Period

We will not pay for any covered Business Income loss you sustain under this provision due to physical loss or physical damage to "electronic data", or "software" caused by a "computer virus" which results in the necessary suspension (slowdown or cessation) of your business described in the Declarations during the first 12 hours that immediately follow the start of such suspension. This Waiting Period applies independent of the deductible applicable to "Computer Equipment".

2. **Equipment Breakdown Coverage**

The Additional Coverage for Equipment Breakdown applies to "computer equipment",

"electronic data", and "software" when this endorsement is attached to the Special Property Coverage Form and Equipment Breakdown Additional Coverage is included on the policy.

C. **Exclusion of Certain Computer Related Losses**

The provisions of this endorsement do not override or in any way affect the application of the Exclusion of Certain Computer Related Losses if such exclusion is endorsed to or otherwise made a part of this policy. That exclusion addresses the inability of a "computer system" to correctly recognize process, distinguish, interpret or accept one or more dates or times.

D. **Exclusions**

1. Section B. Exclusions, of the Standard or Special Property Coverage Form do not apply to coverage provided by this endorsement, except for the exclusions of.

a. Earth Movement.

b. Governmental Action;

c. Nuclear Hazard;

d. War and Military Action; and

e. Water.

2. **Additional Exclusions**

We will not pay for loss or damage caused by or resulting from:

a. Input, programming or processing errors;

b. Mechanical breakdown or failure, however head crash will not be considered as a mechanical breakdown or failure.

This exclusion does not apply to "computer equipment", "electronic data", and "software" when this endorsement is attached to the Special Property Coverage Form and Equipment Breakdown Additional Coverage is included on the policy;

c. Faulty construction, materials or workmanship;

d. Error, omission or deficiency in design;

e. Rust, corrosion deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

f. Dryness or dampness of atmosphere; changes in or extremes of temperature;

g. Wear and tear, marring or scratching;

h. Insects, birds, rodents, or other animals;

i. Obsolescence;

j. Dishonest or criminal acts by you, any of your partners, employees, trustees, authorized representatives or anyone to whom you entrust the property for any purpose, whether acting alone or in collusion with others;

k. Unexplained disappearance, however we will cover theft of "computer equipment" as provided in provision A.3.d.,

l. Unlawful trade, or seizure by orders of governmental authority;

m. Delay or loss of market, and

n. Theft of laptop, palmtop or similar portable property while in transit as checked baggage.

**E. Limit of Insurance**

The most we will pay for physical loss or physical damage in any one occurrence is the Limit of Insurance for Computers and Media shown in the Declarations.

**F. Loss Payment**

This Loss Payment condition is applicable to the "computer equipment", "electronic data", and "software" coverage provided by this endorsement. We will determine the value of Covered Property as follows:

1. "Computers," "peripheral devices", "media", and manuals at the full cost to repair or replace the property subject to the Limit of Insurance. However, we will not pay more for physical loss or physical damage on a replacement cost basis than the lesser of and the following:

   a. The amount necessary to replace the item with similar property possessing the minimum characteristics necessary to perform the same functions when replacement with identical property is not possible or practical.

   b. The amount necessary to repair or replace the item with one substantially identical to the physically lost or physically damaged item. In the event of a covered total loss to one or more items, we will allow up to 20% over the current replacement cost as described in this provision, as an Optional Upgrade Allowance for the purchase of new

property with upgraded processing or performance characteristics. This Optional Upgrade Allowance will, at our option, be payable after you have purchased the replacement property and have provided us with written proof of such purchases; or

   c. If the item is not repaired or replaced, we will not pay more than the actual cash value of the item at the time of physical loss or physical damage. If you elect this option, you have the right to make further claim within 180 days after loss for any additional payment on a replacement cost basis.

2. In the event of physical loss or physical damage to "electronic data" or "software", we will pay the reasonable amount you actually spend to reproduce, restore, or replace the physically lost or physically damaged "electronic data" or "software". This includes the cost of computer consultation services for restoration and the cost of research to reconstruct lost or damaged information. But we will not pay more than the Limit of Insurance for Computers and Media specified in the Declarations.

3. In the event of physical loss or physical damage to any part of "computer equipment", "electronic data" or "software", we will pay only what it would cost to replace, reproduce, or restore the physically lost or physically damaged part.

**G. Additional Definitions**

1. "Computer Virus" means a program, which is intentionally created to cause damage or disruption in the computer operations of a party using or coming in contact in any way with the program.

2. "Computer System" includes "computer", "peripheral devices", "software", and "electronic data" necessary for the "computer" to function for its intended purpose.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE DISHONESTY COVERAGE

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. COVERAGE**

1. The following is added to Paragraph A.5., Additional Coverages, of the Special Property Coverage Form:

   **Employee Dishonesty Coverage**

   (1) We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Causes of Loss.

   Covered Property, solely as used in this Additional Coverage, means "money", "securities", and other tangible property of intrinsic value and not otherwise excluded.

   Covered Causes of Loss means dishonest acts committed by an "employee", except you, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:

   (a) Cause you to sustain loss; and also

   (b) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions or other employee benefits earned in the normal course of employment) for:

   (i) That "employee"; or

   (ii) Any person or organization intended by the "employee" to receive that benefit.

   (2) Employee Dishonesty Additional Coverages:

   (a) We will pay for loss of Covered Property arising out of a Covered Cause of Loss caused by any "employee" while temporarily outside the Coverage Territory for a period of not more than 90 days.

   (b) We will pay for any loss of Covered Property arising out of a Covered Cause of Loss caused by your "employee" while at the premises of your client or customer.

   Any claim for loss sustained by any client or customer and covered by this policy may only be made by you in your Proof of Loss. No third party has a direct right against this insurance and no third party may make a direct claim against us as the writer of your insurance.

   (3) Coverage under the Employee Retirement Income Security Act of 1974, as amended ("ERISA")

   (a) We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Causes of Loss.

   Covered Property, solely as applicable to ERISA coverage, means the funds or other property of any employee pension benefit plan or employee welfare benefit plan that:

   (i) Is subject to (and not exempt from) the bond requirement set forth in Section 412 of ERISA, and

   (ii) You establish and maintain for your employees (a "Plan")

   and which is not otherwise excluded

   Covered Causes of Loss, solely as applicable to ERISA coverage,

means an act of fraud or dishonesty committed by an "employee", except you, whether identified or not, acting alone or in collusion with other persons, that results in a loss to a Plan of funds or other property which is used or may be used to pay benefits under the Plan. "Covered Causes of Loss" does not include investment losses or any other loss resulting from a breach of fiduciary duty under ERISA or a prohibited transaction as defined by ERISA and for which coverage is not required by Section 412 of ERISA.

**(b) Welfare and Pension Plan ERISA Compliance**

In compliance with certain provisions of the ERISA:

(i) For the purposes of this insurance, the Plans you establish and maintain for the benefit of your employees shall be Named Insureds under this Employee Dishonesty Coverage.

(ii) "Employee" includes any natural person you employ and any owner, officer, trustee or director of your company who "handles" the funds or other property of the Plan (as defined in 29 C.F.R. 2580.412-6) including, but not limited to, the Plan Administrator. "Employee" does not include any third party (including but not limited to a broker, independent contractor, record keeper, payroll provider, trustee or other fiduciary) who provides services to you or to a Plan.

(iii) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance under this Employee Dishonesty Coverage Form that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(iv) If the insured first named in the Declarations is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan must be

paid promptly into such plan for the use and benefit of the Plan(s) sustaining the loss.

(v) If two or more Plans are insured under this insurance, any payment we make for loss either sustained by two or more plans, or of commingled funds or other property of two or more Plans that arises out of one occurrence, is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required for each such Plan under ERISA provisions bears to the total of those amounts.

**(4) Theft Limitation Exception**

Limitation A.4.c., of the Special Property Coverage Form does not apply to coverage provided by this endorsement.

**(5) Additional Exclusions**

**(a) Employee Terminated Under Prior Insurance**

We will not pay for loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been terminated and not reinstated since the last such termination.

**(b) Insurance Operations**

We will not pay for direct or indirect loss resulting from contractual or extra-contractual liability sustained by you in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

**(c) Inventory Shortages**

We will not pay loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(i) An inventory computation; or

(ii) A profit and loss computation.

**(d) Partners**

We will pay only for loss caused by any partner or member of a limited liability corporation that is in excess of the sum of:

(i) Any amounts you owe that partner or member; and

(ii) The value of that partner's or member's ownership interest determined by the closing of

you-organization's books on the date of discovery of the loss by anyone in your organization not involved in the Employee Dishonesty; and

(iii) Any applicable deductible amount.

**(c) Trading Loss**

We will not pay for loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account if such loss does not result from dishonesty or fraud.

**(6) Additional Conditions**

**(a) Termination As To Any "Employee"**

This insurance is terminated as to any "employee":

(i) Immediately upon discovery by you, or any of your partners, officers or directors not in collusion with the "employee", of any dishonest or fraudulent act committed by that "employee" whether before or after becoming employed by you; or

(ii) On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing.

The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

**(7) Limit of Insurance**

The most we will pay for each occurrence of loss under this Additional Coverage is the Employee Dishonesty Limit of Insurance stated in the Declarations.

**(8) Deductible**

We will not pay for loss in any one occurrence unless the amount of loss exceeds the Deductible shown Paragraph D.5. the Special Property Coverage Form, unless a separate Deductible for Employee Dishonesty applies and is stated in the Declarations. We will then pay the amount of the loss in excess of the Deductible, up to the Limit of Insurance.

No deductible applies to the coverage granted in Paragraph A.1.(3) of this endorsement.

**(9) Occurrence Definition**

As used in this Additional Coverage, occurrence means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OUTDOOR SIGNS

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

This coverage applies only when it is indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

A.  We will pay for direct physical loss of or physical damage to all outdoor signs at the "scheduled premises":

(1)  Owned by you; or

(2)  Owned by others but in your care, custody and control.

B.  Paragraph A.3., Covered Causes of Loss, and Section B., Exclusions, do not apply, to this Optional Coverage, except for

(1)  Governmental Action;

(2)  Nuclear Hazard, and

(3)  War and Military Action.

C.  Additional Exclusion

We will not pay for physical loss or physical damage caused by or resulting from:

(1)  Wear and tear;

(2)  Hidden or latent defect;

(3)  Rust;

(4)  Corrosion; or

(5)  Mechanical breakdown.

D.  Limit of Insurance

The most we will pay for physical loss or physical damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations

E.  The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

© 2005, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY OF OTHERS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

We will pay, on replacement cost basis, for direct physical loss or physical damage by a Covered Cause of Loss to Personal Property of Others that is in your care, custody and control.

The most we will pay for direct physical loss or physical damage in any one occurrence is the Limit of Insurance applicable to Personal Property of Others shown in the Declarations.

© 2005, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEMPERATURE CHANGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or physical damage to "perishable stock" at the "scheduled premises" caused by or resulting from:

   **1.** A change in temperature or humidity resulting from:

     **(a)** Mechanical breakdown or failure of

       **(1)** Stationary heating plants; or

       **(2)** Refrigerating, cooling or humidity control apparatus or equipment;

       But only while such plants, equipment or apparatus are at the "scheduled premises".

     **(b)** Complete or partial failure of electric power, either on or away from your "scheduled premises". Such failure of power must be due to conditions beyond your control; or

   **2.** Contamination by a refrigerant.

**B. SELLING PRICE**

We will determine the value of finished "perishable stock" in the event of direct physical loss or physical damage at the selling price, as if no physical loss or physical damage had occurred less discounts and expenses you otherwise would have had.

**C.** We will not pay for direct physical loss of or physical damage to "perishable stock" located:

   **1.** On buildings;

   **2.** In the open; or

   **3.** In vehicles; other than trailers used for storage located within 1000 feet of the "scheduled premises".

**D. EXCLUSIONS**

   **1.** The following exclusions under SECTION B - EXCLUSIONS are deleted:

     **(a)** Ordinance or Law;

     **(b)** Power Failure; and

     **(c)** Mechanical Breakdown in the Standard Property Coverage Form.

   **2.** The following exclusions are added:

     We will not pay for direct physical loss or physical damage caused by or resulting from:

     **(a)** The disconnecting of any of the following systems from the source of power:

       **(1)** Refrigerating;

       **(2)** Cooling; or

       **(3)** Humidity control.

     **(b)** The loss of electrical power caused by the shutting off of any switch or other device used to control the flow of electric power or current.

     **(c)** The inability of an electrical utility company, your stationary heating plant or any other power source to provide sufficient heat or power due to:

       **(1)** Lack of fuel;

       **(2)** Lack of capacity to make enough heat or power; or

       **(3)** Order of the government.

     **(d)** Breaking of any glass that is a permanent part of a refrigerating, cooling or humidity control unit.

**E. DEDUCTIBLE**

We will not pay for loss in any one occurrence unless the amount of loss exceeds the deductible stated in paragraph D.5. of the Standard Property Coverage Form or D.5. of the Special Property Coverage Form, unless a different deductible is stated in the

---

© 2014, The Hartford

Declarations for Temperature Change. We will then pay the amount of loss in excess of the deductible, up to the Limit of Insurance.

### F.  LIMIT OF INSURANCE

The most we will pay for direct physical loss or physical damage in any one occurrence is the Limit of Insurance for Temperature Change shown in the Declarations.

### G.  ADDITIONAL CONDITIONS

1.  We will pay for direct physical loss or physical damage under this Optional Coverage only when:

    (a) Such physical loss or physical damage is not covered elsewhere in this policy or any other policy that insures the "perishable stock" at the "scheduled premises"; and

    (b) This Temperature Change coverage is shown as a specific item of insurance in the Declarations.

2.  In the event of physical loss or physical damage, none of the other coverages under this policy or any other policy will share in its payment unless the provisions of the policy are similar to the provisions of this Optional Coverage.

3.  We will not pay more than the Limit of Insurance shown in the Declarations for the Temperature Change.

### H.  ADDITIONAL DEFINITIONS

For the purpose of this insurance:

1.  "Mechanical breakdown" means:

    (a) Breaking or separation of any mechanical part(s) other than gas pipes or lines; or

    (b) Burning out of any electrical motor servicing such unit; and

    requiring replacement of the damaged parts to become functional.

    But "mechanical breakdown" does not mean faulty operation or failure of equipment which results in temperature change but does not require replacement of broken parts.

    We will not pay for direct physical loss or physical damage to "perishable stock" caused by such faulty operation or failure of equipment.

2.  "Perishable stock" means personal property:

    (a) Maintained under controlled conditions for its preservation; and

    (b) Susceptible to direct physical loss or physical damage if the controlled conditions change.

Form SS 04 46 09 14



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VALUABLE PAPERS AND RECORDS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or physical damage to the following types of property at the "scheduled premises" that is your property or property of others in your care, custody or control:

Valuable Papers and Records, meaning inscribed, printed or written:

(1) Documents;

(2) Manuscripts;

(3) Records including patient records; or

(4) X-Rays

including abstracts, books, deeds, drawings, films, maps or mortgages.

**But Valuable Papers and Records does not include:**

(1) Property that cannot be reproduced, replaced or restored;

(2) "Money" and "Securities";

(3) Converted data; or

(4) Programs or instructions used in your data processing operations, including the material on which the data is recorded

**B.** Limit of Insurance

The most we will pay for direct physical loss or physical damage in any one occurrence is the Limit of Insurance for Valuable Papers and Records shown in the Declarations.

**C.** Deductible

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the policy deductible stated in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance

**D.** Under this Optional Coverage we will not pay for property:

(1) Held as samples or for delivery after sale;

(2) In storage away from the premises shown in the Declarations; or

(3) If such property can not be replaced with other property of like kind and quality.

**E.** With respect to this Optional Coverage, Coverage Extension **A.5.h.**, Property Off-Premises in the Standard Property Coverage Form and Coverage Extension **A.6.h.**, Property Off-Premises in the Special Property Coverage Form are replaced by the following:

1. You may apply the insurance provided under this Optional Coverage to Valuable Papers and Records while such property is not at the "scheduled premises", including while in transit. The most we will pay for direct physical loss or physical damage under this Coverage Extension is 25% of the Limit of Insurance shown in the Declarations for Valuable Papers and Records but not more than $25,000.

2. However, if Valuable Papers and Records – Off-Premises is scheduled in the Declarations, then the limit in E.1. above is replaced by the limit of insurance shown in the Declarations for Valuable Papers and Records – Off-Premises.

**F.** The Valuable Papers and Records Coverage Extension, paragraph **A.5.i.** in the Standard Property Coverage Form and paragraph **A.6.i.** in the Special Property Coverage Form, do not apply to any premises where this Optional Coverage applies.

**G.** With respect to coverage provided by this endorsement, paragraph **E.6.d.(6)** in the Standard Property Coverage Form and in the Special Property Coverage Form are replaced by the following:

(6) We will determine the value of "Valuable Papers and Records" at the cost of:

a. Blank materials for reproducing the records; and

© 2009, The Hartford

b. The reasonable cost to research, replace or restore the lost information.

H. **Section B: Exclusions** does not apply to this Optional Coverage except for:

(1) Governmental Action;

(2) Nuclear Hazard; and

(3) War and Military Action.

I. **Additional Exclusions.**

We will not pay for direct physical loss or physical damage caused by or resulting from any of the following:

(1) Dishonest acts by:

(a) You, or your employees or authorized representatives;

(b) Anyone else with an interest in the property, or their employees or authorized representatives; or

(c) Anyone else to whom the property is entrusted.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

But this exclusion does not apply to a carrier for hire.

(2) Errors or omissions in processing or copying.

But we will pay for direct physical loss or physical damage caused by resulting fire or explosion.

(3) Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct physical loss or physical damage caused by lightning.

(4) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(5) Unauthorized instructions to transfer property to any person or to any place.

Form SS 04 47 04 09



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRIME COMMON CONDITIONS AND EXCLUSIONS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

The following conditions are added the Standard Property Coverage Form and the Special Property Coverage Form.

## A. CRIME COMMON CONDITIONS

**1. Consolidation - Merger**

If through consolidation or merger with, or purchase of assets of some other entity:

a. Any additional persons become "employees" or

b. You acquire the use and control of any additional premises;

any insurance afforded for "employees" or premises also applies to those additional "employees" and premises, but only if you:

    (1) Give us written notice within 60 days thereafter; and

    (2) Pay us an additional premium

**2. Discovery Period for Loss**

We will pay only for covered loss discovered no later than one year from the end of the policy period

Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been, or may be incurred even though the exact amount or the details of the loss may not then be known

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts, which if true, would be a covered loss under this policy.

**3. Joint Insured**

a. If more than one insured is named in the Declarations, the first named insured will act for itself and for every other insured for all purposes of this insurance. If the first named insured ceases to be covered, then the next named insured will become the first named insured

b. If any insured or partner or officer of that insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every insured,

c. An "employee" of any insured is considered to be an "employee" of every insured

d. If this insurance or any of its coverages is canceled or terminated as to any insured, loss sustained by that insured is covered only if discovered no later than one year from the date of that cancellation or termination

e. We will not pay more for loss sustained by more than one insured than the amount we would pay if all the loss had been sustained by one insured.

**4. Legal Action Against Us**

The following replaces the Legal Action Against Us in the Property Loss Conditions'

No one may bring a legal action against us under this Coverage Part unless:

a. There has been full compliance with all of the terms of this Coverage Part, and

b. The action is brought within 2 years after the date on which you discover the loss

© 2000, The Hartford

**5. Loss Sustained During Prior Insurance**

a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

(1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

(1) This insurance as of its effective date; or

(2) The prior insurance had it remained in effect.

**6. Non-Cumulation of Limit of Insurance**

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**7. Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate**

If any loss is covered under this policy and under any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest, we will not pay more than the highest single Limit of Insurance. We will settle such claim as follows:

a. We will first pay the Limit of Insurance applicable under this policy subject to this policy's applicable deductible; then

b. If the Limit of Insurance under that prior policy is equal to or less than the Limit of Insurance under this policy, we will make no further payment; or

c. If the Limit of Insurance under that prior policy is higher than the Limit of Insurance under this policy, we will then pay for any remaining part of the loss.

But in no event will our total payment for loss be more than would be payable under the policy with the highest Limit of Insurance.

We will also apply any deductible under that prior policy to the extent it exceeds the deductible under this policy.

**8. Ownership of Property, Interests Covered**

The property covered under this insurance is limited to property:

a. That you own or hold; or

b. For which you are legally liable

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

**9. Policy Period**

a. The Policy Period is stated in the Declarations;

b. Subject to the Loss Sustained During Prior Insurance condition, A.5. above, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**10. Recoveries**

The following replaces the Recovered Property in the Property Loss Conditions:

a. Any recoveries less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

(1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any

(2) Then to us, until we are reimbursed for the settlement made

(3) Then to you until you are reimbursed for that part of the loss equal to the Deductible Amount, if any

b. Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

**B. CRIME COMMON EXCLUSIONS**

The following are Exclusions replace the Exclusions in Section B:

**1. Governmental Action**

We will not pay for loss resulting from seizure or destruction of property by order of governmental authority

2. **Indirect Loss**

We will not pay for loss that is an indirect result of any act or occurrence covered by this insurance including, but not limited to, loss resulting from:

  a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

  b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

  c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. **Legal Expenses**

We will not pay for expenses related to any legal action.

4. **Nuclear Hazard**

We will not pay for loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

5. **War and Similar Actions**

We will not pay for loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

## C. CRIME COMMON DEFINITIONS

The following is added to Definitions:

"Employee" means:

1. Any natural person:

  a. While in your service (and for 60 days after termination of service); and

  b. Whom you compensate directly by salary, wages or commissions; and

  c. Whom you have the right to direct and control while performing services for you;

2. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises;

3. Any natural person who is your partner or member of a limited liability corporation

4. Any natural person, whether or not compensated, while performing services for you as the chairman or a member of any committee.

5. Any natural person who is a non-compensated officer.

6. Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees or while acting within the scope of the usual duties of an "employee";

7. Any natural person who is a non-compensated volunteer, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee";

8. Any natural person who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you.

9. Any natural person who is a student intern who is pursuing studies or acting within the scope of the usual duties of an "employee";

10. Any natural person who is a student enrolled in your facility, while handling or has possession of property or funds in connection with sanctioned student activities;

11. The spouses of and children over 18 years old who reside with any "employee" who is a building manager, superintendent or janitor.

Each family is deemed to be, collectively, one "employee" for the purposes of this insurance, except that any Termination Condition applies individually to the spouse and children.

"Employee" does not mean:

(1) An agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any manager, director, partner, member or trustee, except while acting within the scope of the usual duties of an "employee".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FORGERY COVERAGE
### (Including Credit Cards, Currency and Money Orders)

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

The following is added to Additional Coverages:

## A. FORGED OR ALTERED INSTRUMENTS

### COVERAGE

1. **Covered Property**

   Covered Property means the following instruments:

   a. Checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum certain in "money," that are:

   (1) Made or drawn by or drawn upon you;

   (2) Made or drawn by one acting as your agent;

   or that are purported to have been so made or drawn; and

   b. Written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee," for business purposes.

2. **Covered Causes of Loss**

   Covered Causes of Loss means forgery or alteration.

3. **Legal Expense Additional Coverage**

   If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. This payment is in addition to the applicable Limit of Insurance. The Deductible does not apply to this Coverage Extension.

4. **Additional Conditions**

   The following conditions apply in addition to the Common Policy Conditions and the Crime Common Conditions and Exclusions Form.

   a. We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

   b. You must include with your proof of loss any instrument involved in that loss, or, a that is not possible, an affidavit setting forth the amount and cause of loss.

   c. The Coverage Territory is revised to cover loss you sustain anywhere in the world.

5. **Exclusion**

   The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

   We will not pay for loss resulting from, any dishonest or criminal act committed by any of your "employee", directors, or trustees.

   a. Acting alone or in collusion with other persons, or

   b. While performing services for you or otherwise.



**B. COUNTERFEIT CURRENCY AND MONEY ORDERS COVERAGE**

1. **Covered Property**

   Covered Property means the following:

   We will pay for loss directly resulting from

   a. Money orders including counterfeit money orders of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

   b. Counterfeit United States or Canadian paper currency.

2. **Covered Causes of Loss**

   Covered Causes of Loss means the acceptance of Covered Property in good faith, in exchange for merchandise, money or services during the regular course of business.

3. **Exclusions**

   The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

   a. We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

      (1) Acting alone or in collusion with other persons; or

      (2) While performing services for you or otherwise.

   b. We will not pay for loss resulting from the giving or surrendering of property in any exchange or purchase.

   c. We will not pay for loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**C. DEDUCTIBLE**

   We will not pay for loss in any one Occurrence unless the amount of loss exceeds the Deductible stated in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**D. LIMIT OF INSURANCE**

   The most we will pay for each Occurrence of loss under this Endorsement is the Forgery Limit of Insurance stated in the Declarations.

   The Additional Coverages are included in this Limit of Insurance.

**E. OCCURRENCE DEFINITION**

1. For Forged or Altered Instruments Coverage, Occurrence means all loss caused by any person or in which that person is involved whether the loss involves one or more instruments of Covered Property.

2. For Counterfeit Currency and Money Order Coverage, Occurrence means an

   a. Act or series of related acts involving one or more persons; or

   b. Act or event, or series of related acts or events not involving any person.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OFF-PREMISES UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

## A.  DIRECT DAMAGE EXTENSION FOR OFF-PREMISES UTILITY SERVICES

This Coverage Extension applies only to the "scheduled premises" shown in the Declarations with a Utility Services Limit of Insurance. The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property

We will pay for direct physical loss of or physical damage to Covered Property described in the Declarations caused by the interruption of utility service to the "scheduled premises". The interruption must result from direct physical loss or physical damage by a Covered Cause of Loss to the following property, not on the "scheduled premises";

1.  "Water Supply Services";

2.  "Communication Supply Services"; or

3.  "Power Supply Services".

## B.  ADDITIONAL DEFINITIONS

1.  "Water Supply Services", meaning the following types of property supplying water to the "scheduled premises":

    a.  Pumping stations: and

    b.  Water mains.

2.  "Communication Supply Services", meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the "scheduled premises"; such as:

    a.  Communication transmission lines, including optic fiber transmission lines;

    b.  Coaxial cables; and

    c.  Microwave radio relays except satellites.

3.  "Power Supply Services", meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the "scheduled premises"

    a.  Utility generating plants;

    b.  Switching stations;

    c.  Substations;

    d.  Transformers; and

    e.  Transmission Lines.

© 2005, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBERFLEX COVERAGE

This endorsement modifies insurance provided under the following:

### BUSINESS LIABILITY COVERAGE FORM

This endorsement modifies coverage under the Business Liability Coverage Form for your web site or internet related activities

A.  Exclusion 1.p. "Personal and Advertising Injury" (Section B. - EXCLUSIONS) is modified as follows:

   1.  Paragraphs (4), (5) and (7) are deleted and replaced by the following:

      (4)  Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site";

      (5)  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

      (7)  (a)  Arising out of any actual or alleged infringement or violation of any intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

         (b)  Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made against you or any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

      However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

      (1)  Infringement in your "advertisement", of

        (a)  Copyright;

        (b)  Slogan, or

        (c)  Title of any literary or artistic work; or

      (2)  Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

   2.  Paragraph (9) does not apply.

   3.  Subparagraphs (a), (b) and (c) of Paragraph (12) do not apply.

B.  Section G. - LIABILITY AND MEDICAL EXPENSES DEFINITIONS is amended as follows:

   1.  Paragraph b. of definition 1. "advertisement" is deleted and replaced by:

     "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

     b.  The Internet;

   2.  Paragraphs f. and g. of the definition of "personal and advertising injury" are deleted and replaced by the following:

     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     f.  Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";

     g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site"; or

   3.  The following is added to the definition of "personal and advertising injury":

     As used in this definition, oral, written or electronic publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material.

   4.  The following definition is added:

     "Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, for the purposes of promoting your goods or services, that is accessible over a computer network.

© 2017 The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

# IDENTITY RECOVERY COVERAGE FOR BUSINESSOWNERS AND EMPLOYEES

## IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

A. The following is added to paragraph 5. Additional Coverages (Section A. - Coverage):

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1. There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

2. Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Recovery coverage is applicable; and

3. Such "identity theft" is reported to us as soon as practicable but in no event later than 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

1. Case Management Service

    Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2. Expense Reimbursement

    Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

B. The following additional exclusions are added to Section B. - Exclusions and apply to this coverage:

**EXCLUSIONS**

We do not cover loss or expense arising from any of the following:

1. Theft of a professional or business identity.

2. Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

3. Loss other than "identity recovery expenses".

4. An "identity theft" that is first discovered by the "identity recovery insured" prior to or after the policy period for which this coverage applies. This exclusion applies whether or not such "identity theft" began or continued during the period of coverage.

5. An "identity theft" that is not reported to us within 60 days after it is first discovered by the "identity recovery insured."

6. An "identity theft" that is not reported in writing to the police

© 2017, The Hartford

C. LIMITS OF INSURANCE

1. Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage

2. Expense Reimbursement coverage is subject to a limit of $15,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

   a. Legal costs as provided under paragraph d. of the definition of "identity recovery expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

   b. Lost Wages and Child and Elder Care Expenses as provided under paragraphs e. and f. of the definition of "identity recovery are jointly subject to a sublimit of $250 per day, not to exceed $5,000 in total. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to lost wages and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

   c. Mental Health Counseling as provided under paragraph g. of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured"

D. DEDUCTIBLE

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible of $250. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

E. The following additional conditions are added to Section F. – Property General Conditions and apply to this coverage:

CONDITIONS

1. Assistance and Claims

   For assistance, the "identity recovery insured" should call the Identity Recovery Help Line at 1-866-989-2905.

   The Identity Recovery Help Line can provide the "identity recovery insured" with:

   a. Information and advice for how to respond to a possible "identity theft", and

   b. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

   In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

   As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses."

2. Services

   The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:

   a. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

   b. All services may not be available or applicable to all individuals. For example, "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in United States and Puerto Rico in accordance with local conditions.

   c. We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

F. With respect to the provisions of this endorsement only, the following definitions are added to Section G. - Property Definitions:

**DEFINITIONS**

1. "Identity Recovery Case Manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2. "Identity Theft" means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

   "Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

3. "Identity Recovery Expenses" means the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an "identity theft":

   a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

   c. Costs for up to twelve (12) credit reports from established credit bureaus dated within 12 months after your knowledge or discovery of an "identity theft."

   d. Legal Costs

      Fees and expenses for an attorney approved by us for

      (1) Defending any civil suit brought against an "identity recovery insured" by a creditor or collection agency or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan as a result of an "identity theft"; and

      (2) Removing any civil judgment wrongfully entered against an "identity recovery insured" as a result of the "identity theft."

   e. Lost Wages

      Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   f. Child and Elder Care Expenses

      Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

   g. Mental Health Counseling

      Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured"

4. "Identity Recovery Insured" means the following:

   a. A full time employee of the entity insured under this policy; or

   b. The owner of the entity insured under this policy who meets any of the following criteria:

      (1) A sole proprietor of the insured entity;

      (2) A partner in the insured entity; or

      (3) An individual having an ownership position of 20% or more of the insured entity.

   An "identity recovery insured" must always be an individual person. The entity insured under this policy is not an "identity recovery insured."

All other provisions of this policy apply.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUILDING LIMIT- AUTOMATIC INCREASE REVISION

This endorsement modifies insurance provided under the following:

<div align="center">

SPECIAL PROPERTY COVERAGE FORM
STANDARD PROPERTY COVERAGE FORM

</div>

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

A. Paragraph C.5 Building Limit-Automatic Increase of the **SPECIAL PROPERTY COVERAGE FORM** or **STANDARD PROPERTY COVERAGE FORM** is deleted.

B. The following is added to **Additional Coverages**, paragraph A.5 of the **SPECIAL PROPERTY COVERAGE FORM** or paragraph A.4. of the **STANDARD PROPERTY COVERAGE FORM:**

**Building Limit - Automatic Increase**

a. If the covered loss or damage to Building property at a "scheduled premises" exceeds the Limit of Insurance stated in the Declarations, the Limit of Insurance available for the covered loss or damage in that occurrence will automatically increase by up to 8%.

b. The amount of increase will be:

(1) The Limit of Insurance for Buildings that applied on the most recent of the policy inception date, policy anniversary date, or the date of any other policy change amending the Building limit, multiplied by

(2) The 8% annualized percentage of Automatic Increase, expressed as a decimal

(.08), multiplied by

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Buildings, divided by 365.

Example:

The applicable Limit of Insurance for Buildings is $100,000. The automatic increase percentage is 8%. The number of days since the beginning of the policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .08 X 146 divided by 365 = $3,200

© 2009, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT - DEFINITION OF INSURED CONTRACT

This endorsement modifies insurance provided under the following:

BUSINESS LIABILITY COVERAGE FORM

Paragraph f. of the definition of "insured contract" in the Liability And Medical Expenses Definitions Section is replaced by the following:

f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. includes that part of any contract or agreement that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

However, Paragraph f. does not include that part of any contract or agreement:

(1)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports surveys, field orders, change orders, designs or drawings and specifications; or

(b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(2)  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1) above and supervisory, inspection, architectural or engineering activities.

© 2011, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FOOD CONTAMINATION COVERAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

This insurance applies only when Business Income and Extra Expense Additional Coverage is included in the policy.

### A. COVERAGE

We will pay the actual loss of Business Income and Extra Expense if your "operations" at any "scheduled premises" are ordered by a governmental authority to be suspended due to the discovery of or the suspicion of "food contamination".

"Food Contamination" means the incidence of food poisoning to one or more of your patrons that is caused by or results from tainted food you purchased, improperly stored, handled or prepared, or a communicable disease that was transmitted by you or one or more of your employees.

Extra Expense coverage is limited to the following:

1. The cost to clean and sanitize your equipment as required by the government authority;

2. The cost to replace food which is or is suspected of being contaminated; and

3. The cost of necessary medical tests or inoculations for your employees to prevent the spread of identified or suspected communicable diseases to your patrons through the ingestion of your food product.

Coverage begins at the time you were notified by the government authority to suspend your "operations" at a "scheduled premises" and ends with the notification to resume "operations" at that same "scheduled premises" from the same government authority.

### B. ADDITIONAL COVERAGE

We will pay up to $2,500 for the cost of advertising to regain customers following the notification to resume "operations" at that same "scheduled premises" by the same government authority.

This coverage ends 30 days after the government authority provides you with the notification to resume "operations" at that same "scheduled premises".

### C. LIMIT OF INSURANCE

The most we will pay under this Additional Coverage, regardless of the number of patrons or locations involved in any one order by a governmental authority, is the Limit of Insurance shown in the Declarations for Food Contamination Coverage.

### D. EXCLUSIONS

We will not pay any fines or penalties levied against you by the government authority as the result of the order of suspension due to the discovery of or the suspicion of "food contamination" at your "scheduled premises".

Form SS 41 32 09 06

Page 1 of 1

© 2006, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERILS SPECIFICALLY EXCEPTED

As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

**A. ACTS, ERRORS OR OMISSIONS** by you or others in:

1. Planning, zoning, developing, surveying, testing or siting property;

2. Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;

3. The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

   a. Land or buildings or other structures;

   b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or

   c. Other improvements or changes in or additions to land or other property

4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

5. The maintenance of any of such property or facilities.

This exception A. applies whether or not the property or facilities described above are:

1. Covered under this policy; or

2. On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement

1. If this policy is written to cover the risk of loss from specifically named causes. "Covered Peril" means any Peril specifically named as covered; or

2. If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

**B. COLLAPSE, "CRACKING" OR "SHIFTING"** of buildings, other structures or facilities or their parts, if the collapse, "cracking" or "shifting":

1. Occurs during "earth movement," "volcanic eruption" or "flood" conditions or within 72 hours after they cease; and

2. Would not have occurred but for "earth movement", "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities; or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

1. Earthquake;

2. Flood;

3. Volcanic action,

4. Volcanic eruption; or

5. Sinkhole collapse,

this exception B. will not reduce that coverage.

As used in this exception B.

Copyright, Hartford Fire Insurance Company, 1986

1. "Cracking" means cracking, separating, shrinking, bulging, or expanding;

2. "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;

3. "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;

4. "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes.   An "Earthquake" includes all related shocks and after-shocks;

5. "Volcanic eruption" means the eruption, explosion or effusion of a volcano.   It does not include volcanic action if loss by volcanic action is specifically covered in this policy.

6. "Flood" means:

   a. Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

   b. Release of water held by a dam, levy or dike or by a water or flood control device;

   c. Water that backs up from a sewer or drain; or

   d. Water under the ground surface pressing on, or flowing, leaking or seeping through:

      (1) Foundations, walls, floors or paved surfaces;

      (2) Basements, whether paved or not; or

      (3) Doors, windows or other openings.

Copyright, Hartford Fire Insurance Company, 1986



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - PLAYGROUND FACILITY

This endorsement modifies insurance provided under the following

**BUSINESS LIABILITY COVERAGE FORM**

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the

1. Ownership;

2. Maintenance;

3. Operation; or

4. Use,

of any "playground facility".

**B.** Additional Definition

"Playground facility" means an area designated for recreational activities specifically set aside for children. Such an area is usually equipped with recreational equipment including, but not limited to:

1. Swings;

2. Slides; and

3. Merry-go-rounds.

© 2000, The Hartford



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - NUCLEAR ENERGY LIABILITY

1.  This insurance does not apply:
    a.  To any injury or damage:
        (1)  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
        (2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which:
            (a)  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or
            (b)  The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
    b.  Under any Medical Payments or Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.
    c.  To any injury or damage resulting from the "hazardous properties" of "nuclear material"; if:
        (1)  The "nuclear material";
            (a)  Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or
            (b)  Has been discharged or dispersed therefrom;
        (2)  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (3)  The injury or damage arises out of the furnishing by any insured of any "technology services" in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; or
        (4)  The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (4) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this exclusion:
    a.  "Byproduct material", "source material" and "special nuclear material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.
    b.  "Computer system and network" means:
        (1)  Leased or owned computer hardware including mobile, networked, and data storage computing equipment;
        (2)  Owned or licensed software;
        (3)  Owned websites;
        (4)  Leased or owned wireless input and output devices; and
        (5)  Electronic backup facilities and data storage repositories employed in conjunction with items 1 through 4 above.
    c.  "Hazardous properties" include radioactive, toxic or explosive properties.
    d.  "Nuclear facility" means:
        (1)  Any "nuclear reactor";
        (2)  Any equipment or device designed or used for:
            (a)  Separating the isotopes of uranium or plutonium;
            (b)  Processing or utilizing "spent fuel"; or
            (c)  Handling, processing or packaging "waste".

© 2015, The Hartford

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

e. "Nuclear material" means "byproduct material", "source material" or "special nuclear material".

f. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

g. Injury or damage and "property damage" include all forms of radioactive contamination of property.

h. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor"

i. "Technology services" means:

   1. the following services performed for others:

      a. Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

      b. Integration of systems;

      c. Processing of, management of, mining or warehousing of data;

      d. Administration, management, operation or hosting of: another party's systems, technology or computer facilities;

      e. Website development; website hosting,

      f. Internet access services; intranet, extranet or electronic information connectivity services; software application connectivity services;

      g. Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

      h. Design and development of: code, software or programming;

      i. Providing software application services, rental or leasing.

      j. Screening, selection, recruitment or placement of candidates for temporary or permanent employment by others as information technology professionals;

      k. "Telecommunication services"; and

      l. "Telecommunication products".

   2. web-related software and connectivity services performed for others; and

   3. activities on the "named insured's" "computer system and network".



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - UNMANNED AIRCRAFT (PROPERTY)

This endorsement modifies insurance provided under the following:

### SPECIAL PROPERTY COVERAGE FORM

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. COVERAGE**

Paragraph **A.2., Property Not Covered;** Subparagraph a. is deleted and replaced with the following:

a. Aircraft (including "unmanned aircraft"), automobiles motor trucks and other vehicles subject to motor vehicle registration.

**C. DEFINITIONS**

The following changes are made to Section G., **PROPERTY DEFINITIONS:**

1. The following definition is added.

"Unmanned aircraft" means an aircraft that is not:

a. Designed;

b. Manufactured; or

c. Modified after manufacture

to be controlled directly by a person from within or on the aircraft and which is owned by you or owned by others but in your care, custody, or control.

"Unmanned aircraft" includes equipment designed for and used exclusively with the "unmanned aircraft", provided such equipment is essential for operation of the "unmanned aircraft" or for executing "unmanned aircraft operations".

2. The following definition is added:

"Unmanned aircraft operations" means your business activities in support of the specific operations listed in the Description of Business section of the Declarations.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED PROPERTY DAMAGE COVERAGE - FUNGI, BACTERIA AND VIRUSES (GEORGIA)

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

**SCHEDULE**

| Limits of Insurance: | $50,000 Per Occurrence |
| --- | --- |
| | $50,000 Aggregate |

**A.** The following exclusion is added to 1., Applicable to **Business Liability Coverage (SECTION B. - EXCLUSIONS)**:

This insurance does not apply to:

1. Injury or damage arising out of or related to the presence of, suspected presence of, or exposure to:

   a. Fungi, including but not limited to mold, mildew, and yeast;

   b. Bacteria;

   c. Viruses; or

   d. Dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in a., b., or c. above;

   from any source whatsoever.

2. Any loss, cost or expense arising out of the testing for, monitoring of, cleaning up of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of, or any other response to or assessment of, the effects of any of the items in 1.a., b., c. or d. above, from any source whatsoever.

   However;

1. Paragraph 1. of this exclusion does not apply to the "property damage" coverage provided by provision B. of this endorsement; and

2. This exclusion does not apply to "bodily injury" or "property damage" caused by the ingestion of food

**B.** Limited Property Damage Coverage - Fungi, Bacteria and Viruses Insuring Agreement

The following is added to the Insuring Agreement (1. **BUSINESS LIABILITY COVERAGE** of **SECTION A. - COVERAGES**):

1. We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "property damage" caused by:

   a. Fungi, including but not limited to mold, mildew, and yeast;

   b. Bacteria;

   c. Viruses; or

   d. Dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in a., b., or c. above.

   We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

© 2003, The Hartford

defend the insured against any "suit" seeking damages for "property damage" to which the insurance provided by this endorsement does not apply

We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   a. The amount we will pay for damages is limited as described in provision C. - Limits of Insurance; and

   b. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements to which the insurance provided by this endorsement applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments, of the Business Liability Coverage Form to which this endorsement is attached.

2. This insurance provided by this endorsement applies to "property damage" only if

   a. The "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   b. The "property damage" occurs during the policy period

C. Limits of Insurance

The limits provided by paragraphs 1. and 2. below apply only to the insurance afforded by this endorsement.

   1. The Aggregate Limit shown in the Schedule is the most we will pay for the sum of all damages to which this insurance applies.

   2. Subject to 1. above, the Per Occurrence Limit shown in the Schedule is the most we will pay for the sum of all damages to which this insurance applies because of all "property damage" arising out of any one "occurrence".

The Limits of Insurance provided by this endorsement are subject to paragraphs 2. and 3. of the **LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE (SECTION D.)**, as applicable, and are within, and not in addition to, those limits.

D. All terms and conditions of the policy to which this endorsement is attached apply to the coverage provided herein, including all exclusions applicable to "property damage".

Form SS 50 49 10 03



**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

# WAGE AND HOUR CLAIMS EXPENSES - EMPLOYMENT PRACTICES LIABILITY

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

Exclusion B. in SECTION III - EXCLUSIONS is deleted and replaced by the following:

B. We shall not pay "loss" in connection with any "claim" based upon, arising from, or in any way related to:

1. any claims for unpaid wages. (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or social security benefits;

2. any actual or alleged violation of the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, "ERISA", or any similar law; or

3. any "wage and hour violation".

Provided, however, that this Exclusion B. shall not apply to that portion of "loss" that represents:

    a. a specific amount the "insureds" become legally obligated to pay solely for a "wrongful act" of "retaliation"; or

    b. "Claims expenses" incurred to defend a "wage and hour violation" referenced in sub-paragraph 3. above subject to a Sub-Limit of Liability of $ 0010000 that is part of, and not in addition to, the Limits of Liability applicable to this Coverage Part (the Wage and Hour Defense Costs Sub-Limit). Moreover:

1. SECTION VIII.I.2. of this Coverage Part notwithstanding, 100% of the "insured's" "claims expenses" covered pursuant to this sub-paragraph b shall be allocated to covered "loss" until the Wage and Hour Defense Costs Sub-Limit is exhausted Once the Wage and Hour Defense Costs Sub-Limit is exhausted, allocation shall continue in accordance with SECTION VIII.I.2.;

2. the Wage and Hour Defense Costs Sub-Limit is available notwithstanding the fact that a "wage and hour violation" is not an "employment practices wrongful act"; and

3. the Wage and Hour Defense Costs Sub-Limit is only available for "claim expenses" incurred to defend a "wage and hour violation" that occurred on or after the "retroactive date" and before the end of the "policy period", regardless of whether any such "claim" for a "wage and hour violation" is made during the "policy period" or the Extended Reporting Period, if applicable.

All other terms and conditions of this Coverage Part remain unchanged.

© 2014, The Hartford

# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
# (CLAIMS MADE)

© 2014, The Hartford

# QUICK REFERENCE

## EMPLOYMENT PRACTICES LIABILITY
## COVERAGE FORM (CLAIMS MADE)

## READ YOUR POLICY CAREFULLY

|  | Beginning on Page |
|---|---|
| SECTION I:  INSURING AGREEMENT | 1 |
| SECTION II:  DEFINITIONS | 1 |
| SECTION III:  EXCLUSIONS | 5. |
| SECTION IV:  DISCOVERY CLAUSE | 6. |
| SECTION V:  EXTENDED REPORTING PERIOD | 6 |
| SECTION VI:  COVERAGE TERRITORY | 6. |
| SECTION VII:  LIMITS OF LIABILITY AND DEDUCTIBLE | 6 |
| SECTION VIII:  DUTIES IN THE EVENT OF CLAIM; DEFENSE AND SETTLEMENT | 7 |
| SECTION IX:  CONDITIONS | 9 |

Form SS 09 01 12 14

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM



# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM (CLAIMS MADE)

**NOTICE**: COVERAGE PROVIDED BY THIS COVERAGE PART IS CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN:  COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO US IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE DEDUCTIBLE. PAYMENTS OF CLAIM EXPENSES ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMITS OF LIABILITY. PLEASE READ THE COVERAGE PART CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. UPON TERMINATION OF THIS COVERAGE PART, EXTENDED REPORTING PERIOD COVERAGE IS AVAILABLE.

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout this Coverage Part the words you and your refer to the "Named Insured" in the Declarations.  The words we, us and our refer to the stock insurance company member of THE HARTFORD shown on the Declarations Page.

Words and phrases that appear in quotation marks are defined in **SECTION II - DEFINITIONS** of this Coverage Part.

In consideration of, and subject to, the payment of the premium by you and in reliance upon the accuracy and completeness of the "application", including but not limited to the statements, attachments and exhibits contained in and submitted with the "application", we agree with you, subject to all terms, exclusions and conditions of this Coverage Part, as follows:

## SECTION I - INSURING AGREEMENT

### Employment Practices Liability

We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the "insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".

## SECTION II - DEFINITIONS

A. "Application" means the application for this Coverage Part, including any materials or information submitted therewith or made available to us during the underwriting process, which application shall be on file with us. Such "application" shall be deemed a part of this Coverage Part and attached hereto. In addition, "application" includes any warranty, representation or other statement provided to us within the past three years in connection with any policy or coverage part of which this Coverage Part is a renewal or replacement.

B. "Benefits" means perquisites, fringe benefits, deferred compensation, severance pay and any other form of compensation (other than salaries, wages, or bonuses as a component of a front or back pay award).

C. "Claim" means any "employment practices claim".

D. "Claims expenses" means:

1. reasonable and necessary legal fees and expenses, including, but not limited to, e-discovery expenses, incurred in the defense or appeal of a "claim";

2. "Extradition costs"; or

3. the costs of appeal, attachment or similar bonds, provided that we shall have no obligation to furnish such bonds.

However, "claim expenses" shall not include:

a. salaries, wages, remuneration, overhead or benefit expenses associated with any "insureds";

b. any fees, expenses or costs which are incurred by or on behalf of a party which is not a covered "insured"; or

c. any fees, expenses or costs which were incurred prior to the date on

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

which we received written notice of the "claim" from the "insured".

E. "Controlled partnership" means a limited partnership in which and so long as the "named insured" owns or controls, directly or indirectly, more than 50% of the limited partnership interest and an "insured entity" is the sole general partner.

F. "Damages" means the amounts, other than "claim expenses", that the "insureds" are legally liable to pay solely as a result of a "claim" covered by this Coverage Part, including:

1. compensatory damages, including front pay and back pay;

2. settlement amounts;

3. pre- and post-judgment interest;

4. costs awarded pursuant to judgments;

5. punitive and exemplary damages;

6. the multiple portion of any multiplied damage award; or

7. liquidated damages under the Age Discrimination in Employment Act and the Family and Medical Leave Act.

However, "damages" shall not include:

a. taxes, fines or penalties imposed by law;

b. non-monetary relief;

c. "Benefits";

d. future compensation for any person hired, promoted, or reinstated pursuant to a judgment, settlement, order or other resolution of a "claim";

e. "Stock benefits";

f. costs associated with providing any accommodations required by the Americans with Disabilities Act of any similar law; or

g. any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive and exemplary damages, or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

G. "Debtor in possession" means a "debtor in possession" as such term is defined in Chapter 11 of the United States Bankruptcy Code as well as any equivalent status under any similar law.

H. "Domestic partner" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or any domestic partner relationship arrangement recognized outside of the United States and under the Human Resource policy of the "insured entity".

I. "Employee" means any natural person who was, is or shall become a(n):

1. employee of an "insured entity" including any part time, seasonal, temporary, leased, or loaned employee; or

2. volunteer or intern with an "insured entity".

J. "Employee data privacy wrongful act" means:

1. the failure to prevent any unauthorized access to or use of data containing "Private Employment Information" of any "Employee" or applicant for employment with the "Insured Entity" including any such failure that directly results in a violation with respect to the privacy of such "Employee's" or applicant's medical information under the Health Insurance Portability and Accountability Act (HIPAA) or credit information under the Fair Credit Reporting Act (FCRA); or

2. the failure to notify any "employee" or applicant for employment with the "insured entity" of any actual or potential unauthorized access to or use of "private employment information" of any "employee" or applicant for employment with the "insured entity", if such notice was required by state or federal regulation or statute.

K. "Employment practices claim" means any:

1. written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

2. civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

3. formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor"

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.

"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.

However, "employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

L.  "Employment practices wrongful act" means:

1. wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

2. sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;

3. employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

4. "Retaliation";

5. breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

6. violation of the Family and Medical Leave Act.

"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:

a. employment-related wrongful infliction of mental anguish or emotional distress;

b. failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

c. negligent retention, supervision, hiring or training;

d. employment-related invasion of privacy, defamation, or misrepresentation; or

e. an "employee data privacy wrongful act".

M.  "ERISA" means the Employee Retirement Income Security Act of 1974.

N.  "Extradition costs" means reasonable and necessary fees and expenses directly resulting from a "claim" in which an "insured person" lawfully opposes, challenges, resists or defends against any request for the extradition of such "insured person" from his or her current country of employ and domicile to any other country for trial or otherwise to answer any criminal accusation, including the appeal of any order or other grant of extradition of such "insured person".

O.  "Financial insolvency" means the status of an "insured entity" as a result of:

1. the appointment of any conservator, liquidator, receiver, rehabilitator, trustee, or similar official to control, supervise, manage or liquidate such "insured entity"; or

2. such "insured entity" becoming a "debtor in possession".

P.  "Independent contractor" means any natural person working in the capacity of an independent contractor pursuant to an "independent contractor agreement".

Q.  "Independent contractor agreement" means any express contract or agreement between an "independent contractor" and an "insured entity" specifying the terms of the "insured entity's" engagement of such "independent contractor".

R.  "Insured entity" means:

1. the "named insured"; or

2. any "subsidiary".

"Insured entity" shall include any such entity as a "debtor in possession".

"Insured entity" shall also include any such entity in its capacity as a general partner of a "controlled partnership".

S.  "Insured person" means any:

1. "Employee";

2. "Manager"; or

3. regarding the Employment Practices Liability Insuring Agreement, an "independent contractor" provided that within 30 days of an "employment practices claim" having been made against such "independent contractor" that the "insured entity" agrees in writing to indemnify such "independent contractor" for any "loss" arising out of such "claim".

T. "Insureds" means any:

1. "Insured entity"; or

2. "Insured person".

U. "Interrelated wrongful acts" means "wrongful acts" that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.

V. "Loss" means "claim expenses" and "damages".

W. "Manager" means any natural person who was, is or shall become a(n):

1. duly elected or appointed director, advisory director, board observer, advisory board member, officer, member of the board of managers or management committee member of an "insured entity";

2. "Employee" in his/her capacity as legal counsel to an "insured entity"; or

3. executive of an "insured entity" created outside the United States to the extent that such executive holds a position equivalent to those described in 1. or 2. above.

X. "Named Insured" means the individuals, partnerships or corporations designated in the Declarations.

Y. "Notice manager" means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel, risk manager, human resources manager or any equivalent position to the foregoing, of an "Insured Entity".

Z. "Policy period" means the period from the Effective Date to the Expiration Date set forth in the Declarations or any earlier cancellation date.

AA. "Private employment information" means any information regarding an "employee" or applicant for employment with the "insured entity", which is collected or stored by an "insured" for the purposes of establishing, maintaining or terminating an employment relationship.

BB. "Retaliation" means adverse treatment of an "employee" or "independent contractor" based upon such person

1. exercising any rights under law, including, without limitation, rights under any workers compensation laws, the Family and Medical Leave Act, "ERISA", or the Americans with Disabilities Act;

2. refusing to violate any law;

3. assisting, testifying, or cooperating with a proceeding or investigation regarding alleged violations of law by any "insured";

4. disclosing or threatening to disclose alleged violations of law to a superior or to any governmental agency; or

5. filing any whistle blower claim against any "insured" under the federal False Claims Act, the Sarbanes-Oxley Act of 2002, or any similar law.

CC. "Stock benefits" means any offering, plan or agreement between an "insured entity" and any "employee" that grants stock, stock options or stock appreciation rights in the "insured entity" to such person, including, without limitation, restricted stock or any other stock grant. "Stock benefits" shall not include employee stock ownership plans or employee stock purchase plans.

DD. "Subsidiary" means any:

1. corporation in which and so long as the "named insured" owns or controls, directly or indirectly, more than 50% of the outstanding securities representing the right to vote for the election of the board of directors of such corporation;

2. limited liability company in which and so long as the "named insured" owns or controls, directly or indirectly, the right to elect, appoint or designate more than 50% of such entity's managing members;

3. a "controlled partnership";

4. corporation operated as a joint venture in which and so long as the "named insured" owns or controls, directly or indirectly, exactly 50% of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the "named insured" solely controls the management and operation of such corporation; or

5. foundation, charitable trust or political action committee in which and so long as such entity or organization is controlled by the "named insured" or any "subsidiary" as defined in 1. through 4. above.

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

EE. "Wage and hour violation" means any actual or alleged violation of the duties and responsibilities that are imposed upon an "insured" by any federal, state or local law or regulation anywhere in the world, including but not limited to the Fair Labor Standards Act or any similar law (except the Equal Pay Act), which govern wage, hour and payroll practices Such practices include but are not limited to:

1. the calculation and payment of wages, overtime wages, minimum wages and prevailing wage rates;

2. the calculation and payments of benefits;

3. the classification of any person or organization for wage and hour purposes;

4. reimbursing business expenses;

5. the use of child labor; or

6. garnishments, withholdings and other deductions from wages.

FF. "Wrongful act" means any actual or alleged "employment practices wrongful act".

## SECTION III - EXCLUSIONS

A. We shall not pay "Loss":

1. for bodily injury, sickness, disease, death, false arrest or imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, or for injury to or destruction of any tangible property including loss of use or diminution of value thereof; provided, however, that this exclusion shall not apply to that portion of "loss" that directly results from mental anguish or emotional distress when alleged in connection with an otherwise covered "employment practices wrongful act";

2. for any actual or alleged "wrongful act" by "insured persons" of any "subsidiary" in their capacities as such, or by any "subsidiary", if such "wrongful act" actually or allegedly occurred when such entity was not a "subsidiary";

3. in connection with any "claim" based upon, arising from, or in any way related to any:

   a. prior or pending demand, suit, or proceeding against any "insured" as of, or

   b. audit initiated by the United States Office of Federal Contract Compliance Programs before,

   the effective date of the first Employment Practices Liability Coverage Part issued and continuously renewed by us, or the same or substantially similar fact, circumstance, or situation underlying or alleged in such demand, suit, proceeding, or audit;

4. In connection with any "claim" based upon, arising from, or in any way related to any fact, circumstance, or situation that, before the Effective Date in the Declarations, was the subject of any notice given under any other employment practices liability policy, management liability policy or other insurance policy which insures "wrongful acts" covered under this Coverage Part;

5. in connection with any "claim" based upon, arising from, or in any way related to the liability of others assumed by an "insured" under any contract or agreement; provided, however, this exclusion shall not apply to liability that would have been incurred in the absence of such contract or agreement;

6. for breach of any "independent contractor agreement"; or

7. for a lockout, strike, picket line, hiring of replacement workers or similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement.

B. We shall not pay "loss" in connection with any "claim" based upon, arising from, or in any way related to:

1. any claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or social security benefits;

2. any actual or alleged violation of the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, "ERISA", or any similar law; or

3. any "wage and hour Violation"

Provided, however, that this exclusion B. shall not apply to that portion of "loss" that represents a specific amount the "insureds" become legally obligated to pay solely for a "wrongful act" of "retaliation"

C. We shall not pay "loss" in connection with any "claim" based upon, arising from, or in any way related to liability incurred for breach of any oral, written, or implied employment contract; provided, however, that this exclusion shall not apply to liability that would have been incurred in the absence of such contract nor shall it apply to the portion of "loss" representing "claim expenses" incurred to defend against such liability.

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

## SECTION IV - DISCOVERY CLAUSE

If, during the "policy period", the "insureds" become aware of a "wrongful act" that may reasonably be expected to give rise to a "claim", and, if written notice of such "wrongful act" is given to us during the "policy period", including the reasons for anticipating such a "claim", the nature and date of the "wrongful act", the identity of the "insureds" allegedly involved, the alleged injuries or damages sustained, the names of potential claimants; and the manner in which the "insureds" first became aware of the "wrongful act", then any "claim" subsequently arising from such "wrongful act" shall be deemed to be a "claim" first made during the "policy period" on the date that we receive the above notice.

## SECTION V - EXTENDED REPORTING PERIOD

Subject to provisions A. through G. below, if this Coverage Part is canceled or non-renewed other than for non-payment of premium, you shall have the right to purchase an extended period to report "claims" under this Coverage Part for any "claim" first made during the period of time set forth in the Supplemental Extended Reporting Period Endorsement, and following the effective date of such cancellation or nonrenewal and reported in writing during such period or within sixty (60) days thereafter, but only with respect to any "wrongful act" which takes place prior to the effective date of such cancellation or nonrenewal.

A. The Extended Reporting Period shall be effective only upon the payment of an additional premium.  The additional premium will be 200% of the annual advance premium for this coverage.  At the commencement of the Extended Reporting Period, the entire premium thereof shall be deemed fully earned and non-refundable.

B. The quotation of a different premium or deductible or limit of liability for renewal is not a cancellation or refusal to renew for the purposes of this provision.

C. You shall have no right to purchase the Extended Reporting Period, unless you have satisfied all conditions of the Coverage Part and all premiums and deductibles outstanding have been paid.

D. Your right to purchase the Extended Reporting Period shall terminate unless written notice together with full payment of the premium for the Extended Reporting Period is given to us no later than sixty (60) days following the effective date of cancellation or nonrenewal.

E. The fact that the period of time to report "claims" is extended by virtue of the Extended Reporting Period shall not increase or reinstate the Limit of Liability stated in the Declarations.

F. Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided.  They apply only to "wrongful acts" that occur before the end of the "policy period".

"Claims" for such injury which are first received within sixty (60) days after the "policy period", or during the Extended Reporting Period if in effect, will be deemed to have been made on the last date of the "policy period".

G. Once in effect, Extended Reporting Periods may not be canceled by us.

## SECTION VI -COVERAGE TERRITORY

Coverage under this Coverage Part applies worldwide, provided that the "claim" is made and any legal action is pursued within the Unites States, its territories, possessions or commonwealths, or Canada

## SECTION VII - LIMITS OF LIABILITY AND DEDUCTIBLE

A. The maximum we will pay for each "claim" under this Coverage Part is the Each Claim Limit of Liability stated in the Declarations, subject to the Annual Aggregate Limit of Liability stated in the Declarations.

The maximum we will pay for all "claims" under this Coverage Part is the Annual Aggregate Limit of Liability stated in the Declarations, regardless of the number of "claims".

If the applicable Limit of Liability for this Coverage Part is exhausted, the premium for this Coverage Part shall be deemed fully earned. "Claim expenses" shall be part of, and not in addition to, the Limits of Liability. Payment of "claim expenses" by us shall reduce each Limit of Liability.

B. We shall pay "loss" in excess of the Deductible applicable to each "claim" as specified on the Declarations.

C. All Deductibles shall be borne by the "insureds" at their own risk; they shall not be insured.

D. The Deductible shall apply to "claim expenses" covered hereunder  If, any "claim expenses" are incurred by us prior to the "insured's" complete payment of the Deductible, then the "insureds" shall reimburse us therefor upon our request.

E. No Deductible shall apply to "loss" incurred by any "insured person" that an "insured entity" is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of "financial insolvency".

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

F.  If an "insured entity" is permitted or required by common or statutory law to indemnify an "insured person" for any "loss", or to advance "claim expenses" on their behalf, and does not do so other than because of "financial insolvency", then such "insured entity" and the "named insured" shall reimburse and hold us harmless for our payment or advancement of such "loss" up to the amount of the Deductible that would have applied if such indemnification had been made.

G.  If a "subsidiary" is unable to indemnify an "insured person" for any "loss", or to advance "claim expenses" on their behalf, because of "financial insolvency", then the "named insured" shall reimburse and hold us harmless for our payment or advancement of such "loss" up to the amount of the applicable Deductible that would have applied if such indemnification had been made.

The Limit of Liability for this Coverage Part applies separately to each consecutive annual period and to any remaining period of less than twelve (12) months starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Liability.

SECTION VIII - DUTIES IN THE EVENT OF CLAIM; DEFENSE AND SETTLEMENT

A.  We shall have the right and duty to defend "claims" covered under this Coverage Part, even if such "claim" is groundless, false or fraudulent, provided that

1.  the "insureds" give notice to us in accordance with the applicable notice provisions; and

2.  such "claim" does not involve allegations, in whole or in part, of a "wage and hour violation".

For any "claim" involving allegations, in whole or in part, of a "wage and hour violation", it shall be the duty of the "insureds", and not our duty, to defend such "claim".

B.  If we have the duty to defend a "claim", our duty to defend such "claim" shall cease upon exhaustion of any applicable Limit of Liability.

C.  The "insureds" shall not admit or assume any liability, make any settlement offer or enter into any settlement agreement, stipulate to any judgment, or incur any "claim expenses" regarding any "claim" without our prior written consent, such consent not to be unreasonably withheld.  We shall not be liable for any

admission, assumption, settlement offer or agreement, stipulation, or "claim expenses" to which we have not consented.

D.  We shall have the right to associate ourself in the defense and settlement of any "claim" that appears reasonably likely to involve this Coverage Part.   We may make any investigation we deem appropriate in connection with any "claim". We may, with the written consent of the "insureds", settle any "claim" for a monetary amount that we deem reasonable

E.  The "insureds" shall give to us all information and cooperation as we may reasonably request. However, if we are, in our sole discretion, able to determine coverage for cooperating "insureds", the failure of one "insured person" to cooperate with us shall not impact coverage provided to cooperating "insureds".

F.  With respect to a covered "claim" for which we do not have the duty to defend, we shall advance "claim expenses" in accordance with Section VIII I. that we believe to be covered under this Coverage Part until a different allocation is negotiated, arbitrated or judicially determined.

G.  Required Notice to Us

As a condition precedent to coverage under this Coverage Part, the "insureds" shall give us written notice of any "claim" as soon as practicable after a "notice manager" becomes aware of such "claim", but in no event later than:

1.  If this Coverage Part expires or is otherwise terminated without being renewed with us, ninety (90) days after the effective date of said expiration or termination; or

2.  subject to SECTION V, the expiration of the Extended Reporting Period, if applicable;

provided, however, that if the Coverage Part is cancelled for non-payment of premium, the "insured" will give us written notice of such "claim", prior to the effective date of cancellation.

However, with regard to any "employment practices claim" which is brought as a formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document, as a condition precedent to coverage under this Coverage Part the

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

"insureds" shall give us written notice of any "claim" as soon as practicable after a "notice manager" becomes aware of such "claim", but in no event later than:

3. If this Coverage Part is renewed, no more than 180 days after a "notice manager" becomes aware of such "claim"; or

4. if this Coverage Part expires or is otherwise terminated without being renewed with us, ninety (90) days after the effective date of said expiration or termination; or

5. subject to SECTION V, the expiration of the Extended Reporting Period, if applicable;

provided, if the Coverage Part is cancelled for non-payment of premium, the "insured" will give us written notice of such "claim", prior to the effective date of cancellation.

H. Subrogation

1. We shall be subrogated to all of the "insureds'" rights of recovery regarding any payment of "loss" by us under this Coverage Part. The "insureds" shall execute all papers required and do everything necessary to secure and preserve such rights, including the execution of any documents necessary to enable us to effectively bring suit in the name of the "insureds". The "insureds" shall do nothing to prejudice our position or any potential or actual rights of recovery.

2. We shall not exercise our rights of subrogation against an "insured person" under this Coverage Part unless such "insured person" has:

   a. obtained any personal profit, remuneration or advantage to which such "insured person" was not legally entitled, or

   b. committed a criminal or deliberately fraudulent act or omission or any wilful violation of law,

   if a judgment or other final adjudication establishes such personal profit, remuneration, advantage, act, omission, or violation.

I. Allocation

Where "insureds" who are afforded coverage for a "claim" incur an amount consisting of both "loss" that is covered by this Coverage Part and also loss that is not covered by this Coverage Part, because such "claim" includes both covered and uncovered matters, then coverage shall apply as follows:

1. with respect to a covered "claim" for which we have the duty to defend:

   a. 100% of the "insured's" "claim expenses" shall be allocated to covered "loss"; and

   b. All other "loss" shall be allocated between covered "loss" and non-covered loss based upon the relative legal exposure of all parties to such matters.

2. with respect to a covered "claim" for which we do not have the duty to defend, all "loss" shall be allocated between covered "loss" and non-covered loss based upon the relative legal exposure of all parties to such matters.

SECTION IX - CONDITIONS

A. Coverage Part Priority; Headings

If any provision in this Coverage Part is inconsistent or in conflict with the terms and conditions of any provisions in this Policy, the terms and conditions of this Coverage Part shall control only for purposes of determining coverage hereunder. The headings of the various sections of this Coverage Part are intended for reference only and shall not be part of the terms and conditions of coverage.

B. Notice Addresses

1. All notices to the "insureds" shall be sent to the first "named insured" at the address specified in the Declarations.

2. All notices to us shall be sent to the address specified in the Declarations. Any such notice shall be effective upon receipt by us at such address.

C. Spousal/Domestic Partner Liability Coverage

Coverage shall apply to the lawful spouse or "domestic partner" of an "insured person" for a "claim" made against such spouse or "domestic partner", provided that:

1. such "claim" arises solely out of:

   a. such person's status as the spouse or "domestic partner" of an "insured person", or

   b. such spouse or "domestic partner's" ownership of property sought as recovery for a "wrongful act";

2. the "insured person" is named in such "claim" together with the spouse or "domestic partner"; and

3. coverage of the spouse or "domestic partner" shall be on the same terms and conditions, including any applicable

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

Deductible , that applies to coverage of the "insured person" for such "claim".

No coverage shall apply to any "claim" for a "wrongful act" of such spouse or "domestic partner"

D.  **Estates and Legal Representatives**

In the event of the death, incapacity or bankruptcy of an "insured person", any "claim" made against the estate, heirs, legal representatives or assigns of such "insured person" for a "wrongful act" of such "insured person" shall be deemed to be a "claim" made against such "insured person". No coverage shall apply to any "claim" for a "wrongful act" of such estate, heirs, legal representatives or assigns.

E.  **Minimum Standards**

In the event that there is an inconsistency between:

1.  the terms and conditions that are required to meet minimum standards of a state's law (pursuant to a state amendatory endorsement attached to this Coverage Part ), and

2.  any other term or condition of this Coverage Part.

It is understood and agreed that, where permitted by law, we shall apply those terms and conditions of 1. or 2. above that are more favorable to the "insured".

F.  **Other Insurance**

1.  The coverage provided under this Coverage Part for any "employment practices claim" shall be primary.

2.  Notwithstanding the above, the coverage provided under this Coverage Part for any "employment practices claim" made against a temporary leased or loaned "employee" or an "independent contractor" shall be excess of the amount of any deductible, retention and limits of liability under any other policy or policies applicable to such "claim", whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

G.  **Interrelationship of Claims**

All "claims" based upon, arising from or in any way related to the same "wrongful act" or "interrelated wrongful acts" shall be deemed to be a single "claim" for all purposes under this Coverage Part first made on the earliest date that:

1.  any of such "claims" was first made, regardless of whether such date is before or during the "policy period";

2.  notice of any "wrongful act" described above was given to us under this Coverage Part pursuant to Sections IV or VIII; or

3.  notice of any "wrongful act" described above was given under any prior insurance policy.

H.  **Deductible Waiver**

Regarding a "claim" that is a class action civil proceeding, no Deductible shall apply to "claim expenses" incurred. In connection with such "claim", and we shall reimburse the "insureds" for any covered "claim expenses" paid by the "insureds" within the Deductible otherwise applicable to such "claim", if a:

1.  final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

2.  complete and final settlement with prejudice,

establishes that none of the "insureds" in such "claim" are liable for any "loss".

I.  **Application**

1.  The "insureds" represent that the Declarations and statements contained in the "application" are true, accurate and complete. This Coverage Part is issued in reliance upon the "application".

2.  If the "application" contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by us no coverage shall be afforded under this Coverage Part for any "insureds" who knew on the Effective Date of this Coverage Part of the facts that were so misrepresented, provided that:

   a.  knowledge possessed by any "insured person" shall not be imputed to any other "insured person"; and

   b.  knowledge possessed by any of your chief executive officer, general counsel, chief financial officer, human resources director or any position equivalent to the foregoing of the "named insured", or anyone signing the "application", shall be imputed to all "insured entities". No other person's knowledge shall be imputed to an "insured entity".

**J. Changes in Exposure**

1. **Acquisitions or Created Subsidiaries**

   If, before or during the "policy period", any "insured entity" acquires or creates a "subsidiary", then such acquired or created entity and its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, shall be "insureds" to the extent such entities and persons would otherwise qualify as "insureds" under this Coverage Part, but only for "wrongful acts" occurring after such acquisition or creation. No coverage shall be available for any "wrongful act" of such "insureds" occurring before such acquisition or creation, or for any "interrelated wrongful acts" thereto.

   However, if the fair value of the assets of any such acquired or created entity exceed 25% of the total assets of the "named insured" as reflected in its most recent consolidated financial statements prior to such acquisition or creation, then, as a condition precedent to coverage hereunder, the "insureds" shall give us written notice and full, written details of the acquisition or creation as soon as practicable (but, in all cases, within ninety (90) days of such acquisition or creation). There shall be no coverage under any renewal or replacement of this Coverage Part for any such new "subsidiary" and its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, unless the "insureds" comply with the terms of this provision.

2. **Mergers**

   If, before or during the "policy period", any "insured entity" merges with another entity such that the "insured entity" is the surviving entity, then such merged entity and its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, shall be "insureds" to the extent such entities and persons would otherwise qualify as "insureds" under this Coverage Part, but only for "wrongful acts" occurring after such merger. No coverage shall be available for any "wrongful act" of such "insureds" occurring before such merger or for any "interrelated wrongful acts" thereto.

   However, if the fair value of the assets of any newly merged entity exceed 25% of the total assets of the "named insured" as reflected in its most recent consolidated financial statements prior to such merger,

then, as a condition precedent to coverage hereunder, the "insureds" shall give us written notice and full, written details of the merger as soon as practicable (but, in all cases, within ninety (90) days of such merger). There shall be no coverage under any renewal or replacement of this Coverage Part for any newly merged entity or any of its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, unless the "insureds" comply with the terms of this provision.

3. **Takeover of Named Insured**

   If, before or during the "policy period":

   a. the "named insured" merges into or consolidates with another entity such that the "named insured" is not the surviving entity; or

   b. more than 50% of the securities representing the right to vote for the "named insured's" board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,

   then coverage shall continue under this Coverage Part, but only for "wrongful acts" occurring before any such transaction. No coverage shall be available for any "wrongful act" occurring after such transaction. Upon such transaction, this Coverage Part shall not be cancelled and the entire premium for this Coverage Part shall be deemed fully earned. The "insured" shall give us written notice and full, written details of such transaction as soon as practicable (but, in all cases, within ninety (90) days of such transaction). If any transaction described herein occurs, then we will not be obligated to offer any renewal or replacement of this Coverage Part.

4. **Loss of Subsidiary Status**

   If, before or during the "policy period", any entity ceases to be a "subsidiary", then coverage shall be available under this Coverage Part for such "subsidiary" and its "insured persons", but only for a "wrongful act" of such "insureds" occurring before such transaction. No coverage shall be available for any "wrongful act" of such "insureds" occurring after such transaction.

**K. References To Laws**

1. Wherever this Coverage Part mentions any law, including, without limitation, any statute, Act or Code of the United States,

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

such mention shall be deemed to include all amendments of, and all rules or regulations promulgated under, such law.

2. Wherever this Coverage Part mentions any law or laws, including, without limitation, any statute, Act or Code of the United States, and such mention is followed by the phrase "or any similar law", such phrase shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, statutes and any rules or regulations promulgated under such statutes as well as common law.

**L. Action Against Us**

1. No action shall be taken against us unless there shall have been full compliance with all the terms and conditions of this Coverage Part.

2. No person or organization shall have any right under this Coverage Part to join us as a party to any "claim" against the "insureds" nor shall we be impleaded by the "insureds" in any such "claim".

**M. Entire Agreement**

This Coverage Part, the "application" and any written endorsements attached hereto, along with the Declarations constitute the entire agreement between you and us relating to this Coverage Part's insurance.

**N. Bankruptcy or Insolvency**

Bankruptcy or insolvency of any "insureds" shall not relieve us of any of our obligations under this Coverage Part.

**O. Authorization of First Named Insured**

The first "named insured" shall act on behalf of all "insureds" with respect to all matters under this Coverage Part, including, without limitation, giving and receiving of notices regarding "claims", cancellation, election of the Extended Reporting Period, payment of premiums, receipt of any return premiums, and acceptance of any endorsements to this Coverage Part.

**P. When We Do Not Renew**

1. If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

2. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Any state amendatory endorsement changing Nonrenewal Conditions for any part of this policy shall also apply to this Coverage Part.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# THIRD PARTY LIABILITY ENDORSEMENT - EMPLOYMENT PRACTICES LIABILITY

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

I.  **SECTION 1 - INSURING AGREEMENT** of this Coverage Part is amended to include the following:

**Third Party Liability**

We shall pay "loss" on behalf of the "insureds" resulting from a "third party claim" first made against the "insureds" during the "policy period" or the Extended Reporting Period, if applicable, for a "third party wrongful act" by the "insureds."

II.  **SECTION II - DEFINITIONS** of this Coverage Part is amended in the following manner

A.  The definition of "claim" is amended to include the following:

"Claim" also means any "third party claim."

B.  The definition of "wrongful act" is amended to include the following:

"Wrongful act" also means any actual or alleged "third party wrongful act".

C.  The following definitions are added:

"Third party" means any natural person who is a customer, vendor, service provider or other business invitee of an "insured entity". "Third party" shall not include "employees".

"Third party claim" means any

1.  written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand;

2.  civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

3.  formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

by or on behalf of a "third party"

"Third party claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "third party claim" as described above. Such "claim" shall be commenced by the receipt of such request

"Third party wrongful act" means:

1.  discrimination against a "third party" based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state or local law; or

2.  sexual harassment or other harassment of a "third party", including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature

III.  The following exclusion is added to **SECTION III - EXCLUSIONS:**

We shall not pay "loss" in connection with any "third party claim" based upon, arising from or in any way related to any price discrimination or violation of any anti-trust law or any similar law designed to protect competition or prevent unfair trade practices.

All other terms and conditions of this Coverage Part remain unchanged

**Form SS 09 70 12 14**

© 2014, The Hartford

**Page 1 of 1**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RETROACTIVE DATE ENDORSEMENT - EMPLOYMENT PRACTICES LIABILITY

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

**I.** **SECTION I - INSURING AGREEMENT** of this Coverage Part is amended to include the following:

This Coverage Part applies only to "claims" for "wrongful acts" that occurred on or after the "retroactive date" set forth in the Declarations and before the end of the "policy period", regardless of whether such "claim" is made during the "policy period" or the Extended Reporting Period, if applicable.

**II.** The following definition is added to **SECTION II - DEFINITIONS** of this Coverage Part:

"Retroactive date" means the date specified in the Declarations. If no date is specified, the "retroactive date" will be the same as the Effective Date of this Coverage Part.

All other terms and conditions of this Coverage Part remain unchanged.

© 2014, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

I.   **Subparagraph A. SECTION II - DEFINITIONS** is deleted and replaced with the following:

"Application" means the application for this Coverage Part, including any materials or information submitted therewith or made available to us during the underwriting process, which application shall be on file with us. Such "application" shall be deemed a part of this Coverage Part and attached hereto. In addition, "application" includes any representation or other statement provided to us within the past three years in connection with any policy or coverage part of which this Coverage Part is a renewal or replacement.

II.  **Subparagraph A. of SECTION VII - LIMITS OF LIABILITY AND DEDUCTIBLE** is deleted and replaced with the following:

A.   The maximum we will pay for each "claim" under this Coverage Part is the Each Claim Limit of Liability stated in the Declarations, subject to the Annual Aggregate Limit of Liability stated in the Declarations.

The maximum we will pay for all "claims" under this Coverage Part is the Annual Aggregate Limit of Liability stated in the Declarations, regardless of the number of "claims"

If the applicable Limit of Liability for this Coverage Part is exhausted, this Coverage Part may not be cancelled. "Claim expenses" shall be part of, and not in addition to, the Limits of Liability.   Payment of "claim expenses" by us shall reduce each Limit of Liability.

III. **Subparagraph F. Other Insurance, SECTION IX, CONDITIONS**, is deleted and replaced with the following:

F.   Other Insurance

If "loss" arising from any "claim" is insured under any other valid and collectible policy or policies, then we shall not be liable under this Coverage Part for a greater proportion of such "claim" than the applicable Limits of Liability of this Coverage Part bear to the total applicable limits of liability of all valid and collectible coverage against such "claim", unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

IV.  **Subparagraph 3. Takeover of Named Insured, Paragraph J., Changes in Exposure, of SECTION IX CONDITIONS** is deleted and replaced by the following:

3.   Takeover of Named Insured

If, before or during the "policy period":

a.   the "named insured" merges into or consolidates with another entity such that the "named insured" is not the surviving entity; or

b.   more than 50% of the securities representing the right to vote for the "named insured's"     board   of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities     acting     in     concert,

then coverage shall continue under this Coverage Part, but only for "Wrongful acts" occurring before any such transaction. No coverage shall be available for any "wrongful act" occurring after such transaction. Upon such transaction, this Coverage Part shall not be canceled. The "Insured" shall give us written notice and full, written details of such transaction as soon as practicable (but, in all cases, within ninety (90) days of such transaction). If any transaction described herein occurs, then we will not be obligated to offer any renewal or replacement of this Coverage Part.

All other terms and conditions remain unchanged.

Form SS 09 76 12 14



THE HARTFORD

# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.   You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States.  Please read this Notice carefully.

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States.  OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.  OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries.  It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific.  Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs".  Their assets are blocked and U.S. persons are generally prohibited from dealing with them.  This list can be located on OFAC's web site at – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.



Named Insured:      EXQUISITE DELITES INC

Policy Number:      10 SBA XM1413

Effective Date:     02-11/22                    Expiration Date:   02/11/23

Company Name:       TWIN CITY FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions remain unchanged

Form IH 99 41 04 09                                              Page 1 of 1



Select Customer Insurance Center

6711 UNIVERSITY EAST DRIVE

CHARLOTTE                          NC 28213
Policyholder, please call us at  (866)  467-8730
Agent, please call us at: (866)  467-8730

## INSURANCE ENDORSEMENT
## ATTACHED

### *** PLEASE REVIEW THE CHANGE ***

Enclosed is an endorsement for your business insurance policy.  Please review it at your convenience.  If you have questions or need to make further changes:

Policyholder, please call us at:  (866)  467-8730

Agent, please call us at:  (866)  467-5730      between 7 A.M. and 7 P.M. CST .

The premium billing will be mailed to you separately.  You can expect to receive it soon,

Thank you for allowing us to service your business needs.

CRADDOCK  LLC/PHS

THE HARTFORD SELECT CUSTOMER INSURANCE CENTER

The Hartford
Hartford Fire Insurance Company and its Affiliates
One Hartford Plaza, Hartford, Connecticut 06155



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGE

This endorsement changes the policy effective on the Inception Date of the policy unless another date is indicated below:

Policy Number: 30 SBA AR1439   DV

Named Insured and Mailing Address:   EXQUISITE DELITES INC
DBA EXQUISITE DELITES CATERING
2261 TROUTDALE DR
DECATUR              GA 30032

Policy Change Effective Date:   05/23/22          Effective hour is the same as stated in the
Declarations Page of the Policy.

Policy Change Number: 002

Agent Name:  CRADDOCK LLC/PHS
Code:        266878

## POLICY CHANGES:
TWIN CITY FIRE INSURANCE COMPANY

ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR BANK
ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
THIS IS NOT A BILL.

ADDITIONAL PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE:          $378.00
*INCLUDES ADDITIONAL TERRORISM PREMIUM OF:                         $8.00


RATES AND PREMIUMS ARE CHANGED.


LOCATION 001 BUILDING 001 IS REVISED



PRO RATA FACTOR: 0.733

THIS ENDORSEMENT DOES NOT CHANGE THE POLICY EXCEPT AS SHOWN.


Form SS 12 11 04 05 T                    Page 001  (CONTINUED ON NEXT PAGE)
Process Date: 05/23/22                            Policy Effective Date: 02/11/22
                                                  Policy Expiration Date: 02/11/23

# POLICY CHANGE (Continued)

Policy Number: 2G SSA AM1439

Policy Change Number: 002

PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS ARE ADDED

      COMPUTERS AND MEDIA COVERAGE
      FORM SS 04 41
        DEDUCTIBLE: $ 1,000


BUSINESS LIABILITY OPTIONAL COVERAGES ARE REVISED


      LIQUOR LIABILITY INSURANCE IS ADDED: FORM SS 04 03
      EACH COMMON CAUSE: $1,000,000
      AGGREGATE:       $2,000,000

FORM NUMBERS OF ENDORSEMENTS REVISED AT ENDORSEMENT ISSUE:
SS 0C 36 04 04

FORM NUMBERS OF ENDORSEMENTS ADDED AT ENDORSEMENT ISSUE:
SS 04 03 10 05

# Spectrum Supplemental Schedule of Auditable Coverages



REVISED

This schedule reflects only those locations that have classes and/or coverages that are subject to audit.

Policy Number: 3C 5EA AM1439

Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy

```
LOC/BLDG NO:            001/001                TERR: 012
LOCATION:               2261 TROUTDALE DR
                        DECATUR               GA 30032

CLASSIFICATION CODE NUMBER  58161
DESCRIPTION:
   Restaurant - Caterers

COVERAGE DESCRIPTION:        PREMISES/OPERATIONS COVERAGE

REFER TO:                    BUSINESS LIABILITY COVERAGE PART FORM SS DO 08

RATING BASIS:                SALES PER 1000

EXPOSURE:                    65,563

FINAL RATE:                  2.337

ADDITIONAL PREMIUM:          $6.00


COVERAGE DESCRIPTION:        PRODUCTS/COMPLETED OPERATIONS COVERAGE

REFER TO:                    BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:                SALES PER 1000

EXPOSURE:                    65,563

FINAL RATE:                  0.778

ADDITIONAL PREMIUM:          $2.00


COVERAGE DESCRIPTION:        BUSINESS INCOME & EXTRA EXPENSE - ACTUAL LOSS
                             SUSTAINED

REFER TO:                    SPECIAL PROPERTY COVERAGE PART FORM SS DO 07

RATING BASIS:                SALES PER 1000

EXPOSURE:                    65,563

FINAL RATE:                  0.450

NO CHANGE IN PREMIUM:        $0.00
```

**Spectrum Supplemental Schedule of Auditable Coverages   (Continued)**

Policy Number:  20  SBA  RN1039

| | |
|---|---|
| COVERAGE  DESCRIPTION: | LIQUOR  LIABILITY |
| REFER TO: | LIQUOR  LIABILITY  COVERAGE  FORM  SS  04  03 |
| RATING BASIS: | LIQUOR  SALES  PER  1000 |
| EXPOSURE: | 5,000 |
| FINAL  RATE: | 5.400 |
| ADDITIONAL  PREMIUM: | $20.00 |

----------------------------------------------------------------

| | |
|---|---|
| LOC/BLDG  NO: | 002/001               TERR:  013 |
| LOCATION: | 3411 COVINGTON DR |
| | DECATUR           GA 30032 |
| CLASSIFICATION  CODE NUMBER | 58161 |
| DESCRIPTION: | |
|   Restaurant - Caterers | |
| COVERAGE  DESCRIPTION: | PREMISES/OPERATIONS  COVERAGE |
| REFER TO: | BUSINESS  LIABILITY  COVERAGE  PART  FORM  SS  00  08 |
| RATING BASIS: | SALES  PER  1000 |
| EXPOSURE: | 1 |
| FINAL  RATE: | 0.000 |
| NO CHANGE IN PREMIUM: | $0.00 |
| | |
| COVERAGE  DESCRIPTION: | PRODUCTS/COMPLETED  OPERATIONS  COVERAGE |
| REFER TO: | BUSINESS  LIABILITY  COVERAGE  PART  FORM  SS  00  08 |
| RATING BASIS: | SALES  PER  1000 |
| EXPOSURE: | 1 |
| FINAL  RATE: | 0.000 |
| NO CHANGE  IN PREMIUM: | $0.00 |
| | |
| COVERAGE  DESCRIPTION: | BUSINESS  INCOME  &  EXTRA  EXPENSE  -  ACTUAL  LOSS  SUSTAINED |
| REFER TO: | SPECIAL  PROPERTY  COVERAGE  PART  FORM  SS  00  07 |
| RATING BASIS: | SALES  PER  1000 |

Form SS 00 38 04 04T
Process Date:  05/25/22

Page  002   (CONTINUED ON NEXT PAGE)
Policy Expiration Date:  02/11/23

**Spectrum Supplemental Schedule of Auditable Coverages  (Continued)**

**Policy Number:** 20  FBA  AM1439

| | |
|---|---|
| EXPOSURE: | 1 |
| FINAL RATE: | 0.000 |
| NO CHANGE IN PREMIUM: | $0.00 |

----------------------------------------------------------------

LOC/BLDG NO:          003/001              TERR: 012
LOCATION:            4391 GLENWOOD ROAD
                    DECATUR            GA 30032

CLASSIFICATION CODE NUMBER  58161
DESCRIPTION:
  Restaurant - Caterers

COVERAGE DESCRIPTION:      PREMISES/OPERATIONS COVERAGE

REFER TO:                 BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:             SALES PER 1000

EXPOSURE:                 1

FINAL RATE:               0.000

NO CHANGE IN PREMIUM:     $0.00


COVERAGE DESCRIPTION:     PRODUCTS/COMPLETED  OPERATIONS COVERAGE

REFER TO:                 BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:             SALES PER 1000

EXPOSURE:                 1

FINAL RATE:               0.000

NO CHANGE IN PREMIUM:     $0.00


COVERAGE DESCRIPTION:     BUSINESS INCOME & EXTRA EXPENSE - ACTUAL LOSS
                         SUSTAINED

REFER TO:                 SPECIAL PROPERTY COVERAGE PART FORM SS 00 07

RATING BASIS:             SALES PER 1000

EXPOSURE:                 1

FINAL RATE:               0.000

NO CHANGE IN PREMIUM:     $0.00

**Spectrum Supplemental Schedule of Auditable Coverages  (Continued)**

**Policy Number:** 20  SBA  AN1439

```
--------------------------------------------------------------------
TOTAL ADDITIONAL PREMIUM      $28.00        DOES NOT INCLUDE TERRORISM OR
FOR AUDITABLE COVERAGES                     ANY APPLICABLE STATE SURCHARGES OR FEES OR
                                            MINIMUM PREMIUMS
--------------------------------------------------------------------
```



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIQUOR LIABILITY COVERAGE

If shown in the Declarations as applicable, the following coverage applies.

Various provisions in this coverage part restrict coverage. Read the entire coverage part carefully to determine rights, duties and what is and is not covered.

Throughout this coverage part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as Named Insured under this coverage part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section III - Who Is An Insured.

Other words and phrases that appear in quotation have special meaning. Refer to Section VI - Definitions.

## SECTION I - LIQUOR LIABILITY COVERAGE

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may at our discretion investigate any "injury" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in in Section IV - Limits of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under paragraph 2. Coverage Extension - Supplementary Payments.

   b. This insurance applies to an "injury" only if:

      (1) The "injury" occurs during the policy period in the "coverage territory"; and

      (2) Prior to the policy period, no insured identified in Paragraph 1. of Section III. - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such insured or authorized "employee" knew prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by an insured listed under Paragraph 1. of Section III - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

   d. "Injury" will be deemed to have been known to have occurred at the earliest time when any insured identified in Paragraph 1. of Section III - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim.

      (1) Reports all, or any part, of the "injury" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "injury"; or

Form SS 04 03 10 08

© 2008, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc. with its permission.)

(3) Becomes aware by any other means that "injury" has occurred or has begun to occur.

2. **Coverage Extension - Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against the insured in the "suit." However, these payments do not include attorney's fees or attorney's expenses taxed against the insured.

e. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance

g. Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

## SECTION II - EXCLUSIONS

This insurance does not apply to

1. **Expected or Intended Injury**

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property

2. **Workers' Compensation, Unemployment Compensation, And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

3. **Employer's Liability**

"Bodily injury" to:

a. An "employee" of the insured arising out of and in the course of:

(1) Employment by the insured; or
(2) Performing duties related to the conduct of the insured's business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of a. above.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the "injury."

4. **Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

5. **Your Product**

"Injury" arising out of "your product." This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

a. Causing or contributing to the intoxication of any person;

b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

6. **Other Insurance**

Any "injury" for which other insurance is available, or would be available but for the exhaustion of the limits of insurance. This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

Form SS 04 03 10 08

7. War

"Injury", however caused, arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by a government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

     (1) "Injury"

       (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

       (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph a.(1) above; or

       (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the "injury" described in Paragraphs a.(1) or (2) above.

     (2) "Property damage" to property

       (a) Owned or occupied by; or

       (b) Rented or loaned

      to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

   b. Any person or organization having proper temporary custody of your property if you die, but only:

     (1) With respect to liability arising out of the maintenance or use of that property; and

     (2) Until your legal representative has been appointed.

   c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Liquor Liability Insurance.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, which ever is earlier; and

   b. Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION IV - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations for Liquor Liability Optional Coverage and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Aggregate Limit is the most we will pay for all "injuries" as the result of the selling, serving or furnishing of alcoholic beverages.

3. Subject to the Aggregate Limit, the Each Common Cause limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The limits of this insurance apply separately to each consecutive annual policy period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION V - LIQUOR LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this coverage part.

2. Duties In The Event Of Injury, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "injury" took place; and

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any "injury".

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

   You must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

   No person or organization has a right under this insurance:

   a. To join us as a party or otherwise bring us into "suit" asking for damages from an insured; or

   b. To sue us under this coverage part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this coverage part or that are in excess of the applicable limit of insurance.   An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover under this coverage part, our obligations, if any, are limited as follows:

   a. Primary Insurance

      This insurance is primary.  Our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method describe in b. below.

b. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance of none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Representations

By accepting this coverage part, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this coverage part in reliance upon your representations.

6. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

7. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this coverage part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## SECTION VI - DEFINITIONS

1. "Bodily injury" means physical:

a. Injury;

b. Sickness; or

c. Disease

sustained by a person and, if arising out of the above, mental anguish or death, at any time.

2. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the "injury" occurs in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if the "injury" arises out of:

(1) Goods or products sold by you in the territory described in a. above; or

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

3. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

4. "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

5. "Injury" means damages because of "bodily injury" and "property damage," including damages for care, loss of service or loss of support.

6. "Leased Worker" means a person leased to you buy a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

7. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you must submit with our consent.

9. "Temporary Worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

10. "Your Product".

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.



Select Customer Insurance Center

8711  UNIVERSITY  EAST  DRIVE

CHARLOTTE                              NC  28213
Policyholder, please call us at:  (866)  467-8730
Agent, please call us at  (866)  467-8730

## INSURANCE ENDORSEMENT
## ATTACHED

### *** PLEASE REVIEW THE CHANGE ***

Enclosed is an endorsement for your business insurance policy.  Please review it at your convenience. If you have
questions or need to make further changes:

Policyholder, please call us at  (866)  467-8730

Agent, please call us at:  (866)  467-8730      between 7 A.M. and 7 P.M. CST ,

The premium billing will be mailed to you separately.  You can expect to receive it soon,

Thank you for allowing us to service your business needs.

CRADDOCK  LLC/PHS

THE HARTFORD SELECT CUSTOMER INSURANCE CENTER

The Hartford
Hartford Fire Insurance Company and its Affiliates
One Hartford Plaza, Hartford, Connecticut 06155.

# POLICY CHANGE (Continued)

Policy Number:   20 SBA AML439

Policy Change Number: 001


LOCATION 001 BUILDING 001 IS ADDED

  4391 GLENWOOD ROAD
  DECATUR, GA. 30032

  Restaurant · Caterers

  DEDUCTIBLE:   $1,000

  BUILDING
          LIMIT OF INSURANCE:      $780,000
          REPLACEMENT COST COVERAGE APPLIES


  BUSINESS PERSONAL PROPERTY
          LIMIT OF INSURANCE:      $75,000
          REPLACEMENT COST COVERAGE APPLIES

  MONEY AND SECURITIES
          LIMIT OF INSURANCE:      $10,000 INSIDE THE PREMISES
                                $10,000 OUTSIDE THE PREMISES

  PROPERTY OPTIONAL COVERAGES APPLICABLE TO THIS LOCATION:

      RESTAURANT STRETCH APPLIES: FORM SS 04 11

      THIS FORM INCLUDES MANY ADDITIONAL COVERAGES AND EXTENSIONS OF
      COVERAGES. A SUMMARY OF THE COVERAGE LIMITS IS ATTACHED.



PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS ARE ADDED

      CONPUTERS AND MEDIA COVERAGE
      FORM SS 64 41
        DEDUCTIBLE: $ 1,000


MORTGAGE HOLDER IS ADDED
      LOCATION 003 BUILDING 001
        LOYAL TRUST BANK
        11675 MEDLOCK BRIDGE ROAD
        JOHNSCREEK, GA. 30097
        LOAN NO 4004028


Form SS 12 11 04 05 T

Process Date: 01/05/22

# POLICY CHANGE (Continued)

**Policy Number:** 26 SEA AM1439

**Policy Change Number:** 001

LOSS PAYEE IS ADDED
          LOCATION 001 BUILDING 001
          LOYAL TRUST BANK
          11675 MEDLOCK BRIDGE ROAD
          JOHNSCREEK, GA. 30097
          LOAN NO 4004026

          PROPERTY:    BUSINESS PERSONA PROPERTY

FORM NUMBERS OF ENDORSEMENTS REVISED AT ENDORSEMENT ISSUE:
  SS 00 38 04 04

FORM NUMBERS OF ENDORSEMENTS ADDED AT ENDORSEMENT ISSUE:
  SS 13 12 03 99

# Spectrum Supplemental Schedule of Auditable Coverages



REVISED

This schedule reflects only those locations that have classes and/or coverages that are subject to audit.

Policy Number: 10 SBA AX1439

Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy.

LOC/BLDG NO:                001/001              TERR: 012
LOCATION:                   2261 TROUTDALE DR
                            DECATUR          GA 30032

CLASSIFICATION CODE NUMBER  58161
DESCRIPTION:
   Restaurant - Caterers

COVERAGE DESCRIPTION:       PREMISES/OPERATIONS COVERAGE

REFER TO:                   BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:               SALES PER 1000

EXPOSURE:                   65,563

FINAL RATE:                 2.700

NO CHANGE IN PREMIUM:       $0.00


COVERAGE DESCRIPTION:       PRODUCTS/COMPLETED OPERATIONS COVERAGE

REFER TO:                   BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:               SALES PER 1000

EXPOSURE:                   65,563

FINAL RATE:                 0.747

NO CHANGE IN PREMIUM:       $0.00


COVERAGE DESCRIPTION:       BUSINESS INCOME & EXTRA EXPENSE - ACTUAL LOSS
                            SUSTAINED

REFER TO:                   SPECIAL PROPERTY COVERAGE PART FORM SS DO 07

RATING BASIS:               SALES PER 1000

EXPOSURE:                   65,563

FINAL RATE:                 0.030

NO CHANGE IN PREMIUM:       $0.00

**Spectrum Supplemental Schedule of Auditable Coverages  (Continued)**

**Policy Number:**  24  SBA  AM1439

------------------------------------------------------------

```
LOC/BLDG NO:              002/001              TERR: 012
LOCATION:                 3411 COVINGTON DR
                          DECATUR          GA 30032

CLASSIFICATION CODE NUMBER  56161
DESCRIPTION:
   Restaurant   Caterers.

COVERAGE DESCRIPTION:     PREMISES/OPERATIONS COVERAGE

REFER TO:                 BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:             SALES PER 1000

EXPOSURE:                 1

FINAL RATE:               0.000

NO CHANGE IN PREMIUM:     $0.00


COVERAGE DESCRIPTION:     PRODUCTS/COMPLETED OPERATIONS COVERAGE

REFER TO:                 BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:             SALES PER 1000.

EXPOSURE:                 1

FINAL RATE:               0.000

NO CHANGE IN PREMIUM:     $0.00


COVERAGE DESCRIPTION:     BUSINESS INCOME & EXTRA EXPENSE - ACTUAL LOSS
                          SUSTAINED

REFER TO:                 SPECIAL PROPERTY COVERAGE PART FORM SS 00 07

RATING BASIS:             SALES PER 1000

EXPOSURE:                 1

FINAL RATE:               0.000

RETURN PREMIUM:           $15.00
```

------------------------------------------------------------

```
LOC/BLDG NO:              003/001              TERR: 012
LOCATION:                 4391 GLENWOOD ROAD
                          DECATUR          GA 30032
```

**Form SS 00 38 04 04T**
**Process Date:**  01/05/22

**Spectrum Supplemental Schedule of Auditable Coverages  (Continued)**

**Policy Number:** 20  SBA  AN1439

CLASSIFICATION CODE NUMBER   58161
DESCRIPTION:
  Restaurant - Caterers

COVERAGE DESCRIPTION:     PREMISES/OPERATIONS COVERAGE

REFER TO:     BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:     SALES PER 1000

EXPOSURE:     1

FINAL RATE:     0.000

ADDITIONAL PREMIUM:     $2.00

COVERAGE DESCRIPTION:     PRODUCTS/COMPLETED OPERATIONS COVERAGE

REFER TO:     BUSINESS LIABILITY COVERAGE PART FORM SS 00 08

RATING BASIS:     SALES PER 1000

EXPOSURE:     1

FINAL RATE:     0.000

ADDITIONAL PREMIUM:     $1.00

COVERAGE DESCRIPTION:     BUSINESS INCOME & EXTRA EXPENSE - ACTUAL LOSS
                     SUSTAINED

REFER TO:     SPECIAL PROPERTY COVERAGE PART FORM SS 00 07

RATING BASIS:     SALES PER 1000

EXPOSURE:     1

FINAL RATE:     0.000

ADDITIONAL PREMIUM:     $349.00

----------------------------------------------------------------

TOTAL ADDITIONAL PREMIUM    $336.00    DOES NOT INCLUDE TERRORISM OR
FOR AUDITABLE COVERAGES             ANY APPLICABLE STATE SURCHARGES OR FEES OR
                          MINIMUM PREMIUMS

----------------------------------------------------------------



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS
STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

The following is added to the Standard or Special Property Coverage Form PROPERTY LOSS CONDITION, as shown in the Declarations by description of location, property, name and address of loss payee and the following applicable Loss Payable Provision (A, B or C):

## A. LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown in the Declarations have an insurable interest, we will

1. Adjust losses with you, and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

## B. LENDER'S LOSS PAYABLE

1. The Loss Payee shown in the Declarations is a creditor (including a mortgageholder or trustee) with whom you have entered a contract for the sale of Covered Property whose interest in that Covered Property is established by such written contracts as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading; or

   d. Financing statements.

2. For Covered Property in which both you and a Loss Payee have insurable interest

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has

   started foreclosure for similar action on the Covered Property

c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   (1) Pays any premium due under this policy at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All the terms of the Property Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**Form SS 12 12 03 92   Printed In U.S.A.   (NS)**

**Page 1 of 2**

Copyright, Hartford Fire Insurance Company, 1992.

b. 30 days before the effective date of cancellation if we cancel for any other reason

4. If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. CONTRACT OF SALE

1. The Loss Payee shown in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE Common Policy Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

Form SS 12 12 03 92   Printed in U.S.A.   (NS)

Copyright, Hartford Fire Insurance Company, 1992

# EXHIBIT B



THE HARTFORD
COMMERCIAL PROPERTY CENTER
P.O. BOX 14268
LEXINGTON KY 40512

January 13, 2023

Sarah Burke
US

Re:  Insured:        EXQUISITE DELITES INC DBA EXQUISITE DELITES CAT
     Claimant:       EXQUISITE DELITES INC DBA EXQUISITE DELITES CAT _
     Date of Loss:   April 29, 2022
     Event Number:   CP0019400760
     Claim Number:   _

Dear Sarah Burke,

As you may be aware, we have issued payment(s) to you for the above referenced claim. In the attached damage estimate, you'll find a Summary Document(s) which includes an explanation of payment(s). The payment amounts issued will reflect as the "Net Claim" in the appropriate Summary document.

**What do you need to do?**

- If the attached "Summary" Document(s) indicate that recoverable depreciation was withheld, and you want to pursue recovery of the depreciated amount, then **you must notify us of your intent to repair, replace or rebuild the property within a reasonable period** (within 180 days after the date of loss, unless otherwise specified in your policy).

    o  If you have a signed, executed contract for the repairs, please send us a copy; or

    o  Send us itemized receipts or invoices of work completed or business personal property items replaced.

    o  If you are submitting business personal property replacement receipts please include the corresponding line item number from the priced contents inventory from on the actual receipt for faster service.

- Claim related correspondence should include your event number and be sent either by email, fax or mail to the mailing address, fax number or email address shown on this letter. Please make sure your claim number is on all correspondence.

**What happens next?**

Please review the attached "Property Claim Process – Next Steps" document for a step by step guide. Following these steps will help answer common questions as well as assist in the timely handling of your claim.

PT00073

If you have reviewed the document below and still have questions, please feel free to contact us at any time.


Thank You,
The Hartford

*Kimberley Baumann*

Kimberley Baumann
Outside Claim Rep
Toll Free Number: (860) 624 - 8334
kimberley.baumann@thehartford.com

Writing  Company Name: Twin City Fire Insurance Company

CC:  EXQUISITE DELITES INC DBA EXQUISITE DELITES CAT via U.S.Mail

Enclosures:    Estimate



**Step 1 – Hartford approved estimate**

You have completed the first step in the repair process!
Now that you have a Hartford approved estimate, here's what to expect next:



**Step 2 – Claim Payment**

Please be advised that most claims are paid using a multi-payment process comprising of an initial payment of Actual Cash Value and further payments of withheld depreciation or, the actual cost of repairs less the initial payment, deductible and salvage (if applicable) – whichever is less.

- Payment(s) issued via direct deposit are typically available within 2-3 business days.
- Payment(s) issued via check are typically received within 7-10 business days.

## Next Steps for the Customer:

### (Please skip to step 8 if your claim is for business personal property only)



**Step 3 – Give your preferred Contractor a copy of The Hartford approved estimate**

This will allow them to order materials and assess the scope of repairs.



**Step 4 - Schedule the repairs with the contractor**

Contact your preferred contractor to schedule a start date. Discuss the target completion date with your contractor prior to the work starting.



**Step 5 - If your contractor identifies additional damage**

Most repairs are completed as expected. However, if additional related damage(s) are identified or if you receive proposals that exceed the estimated Replacement Cost amount listed, please have the contractor submit photos, a list of additional related damaged item(s) and a supplemental estimate to your Claim Representative PRIOR to any repairs / replacement being made. If / once approved we will provide you with the updated approved estimate and issue all applicable payments owed.

If you choose to complete the repairs yourself, be sure to save all receipts and log all hours worked so that you can provide us with the information needed for reimbursement.



**Step 6 – Releasing the "recoverable depreciation" (if applicable)**

Upon receipt of the documentation as outlined in the above letter, we will pay you the initially withheld depreciation amount or the actual cost of repairs less the initial payment, deductible, and salvage -- whichever is less.



**Step 7 - Hartford Insured Premium or Policy Questions (if needed)**

Please contact Business Insurance Service Center at 866-467-8730 for any premium or policy questions.



**Step 8 – If you identify additional business personal property damage**

If additional damage(s) are identified, please submit photos and a list of the additional damaged item(s) for review. If / once approved we will provide you with the updated approved estimate and issue all applicable

PT00073

payments owed at that time.

Please be advised that most claims are paid using a multi-payment process. Skip step 9 if your claim has been paid in full with no "recoverable depreciation" withheld.



**Step 9 – Releasing the "recoverable depreciation" (if applicable)**

Begin replacing your items with like kind and quality replacements and retain your receipts. Provide the corresponding line number from your Contents Inventory that each receipt replaces and submit to your Claim Representative for review and release of any "recoverable depreciation" owed. You may mail, email or fax your receipts to your representative.

## Our Service Commitment:

We at The Hartford understand you have many choices when it comes to choosing insurance products and services. Our number one goal is to deliver a claim experience that will motivate you to refer your family, friends and business associates to The Hartford.

If at any time you feel we are not meeting your expectations, please contact your claim professional at the phone number or email listed in the attached letter. Thank you for allowing The Hartford to serve you.

PT00073



**Twin City Fire Insurance Company**

THE
HARTFORD

| | |
|---|---|
| Insured: | EXQUISITE DELITES INC DBA EXQUISITE DELITES CAT |
| Property: | 4391 GLENWOOD ROAD DECATUR, GA 30032-5001 |
| Home: | 2261 TROUTDALE DR DECATUR, GA 30032 |

| | | | |
|---|---|---|---|
| Claim Rep.: | Jillian Goodsell | Business: | (800) 236-0398 |
| Business: | PO Box 14261 | Home: | (860) 737-4308 |
| | Lexington, KY 40512 | E-mail: | jillian.goodsell@thehartford.com |

| | | | |
|---|---|---|---|
| Estimator: | Kimberley Baumann | Business: | (860) 624-8334 |
| Business: | P.O. Box 14268 | E-mail: | kimberley. |
| | Lexington, KY 40512 | | baumann@thehartford.com |

Reference:
Company:    Twin City Fire Insurance Company

**Claim Number:** CP0019400760        **Policy Number:** 20SBAAM1439        **Type of Loss:** FIRE

| Coverage | Deductible | Policy Limit |
|---|---|---|
| Building | $0.00 | $780,000.00 |
| Business Personal Property | $0.00 | $75,000.00 |

| | | | |
|---|---|---|---|
| Date Contacted: | 5/4/2022 1:51 PM | | |
| Date of Loss: | 4/29/2022 12:00 AM | Date Received: | 4/30/2022 12:00 AM |
| Date Inspected: | | Date Entered: | 5/4/2022 2:20 PM |
| Date Est. Completed: | 1/13/2023 8:38 AM | | |

| | | | | | |
|---|---|---|---|---|---|
| Price List: | GAAT8X_MAY22 | Depreciate Material: | Yes | Depreciate O&P: | Yes |
| | Restoration/Service/Remodel | Depreciate Non-material: | Yes | Depreciate Taxes: | Yes |
| Estimate: | EXQUISITE_DELITES_I1 | Depreciate Removal: | No | | |

"Important note: If you receive proposals for repairs/replacements that exceed the estimated Replacement Cost amount listed and/or include previously unreported damage contact your adjuster immediately PRIOR to any repairs/replacements being made in order to resolve any discrepancies.

We may not be in a position to accept or deny amounts in excess of our estimated totals until further discussions with the appropriate adjuster are held and additional damages or amounts are agreed upon."

 **Twin City Fire Insurance Company**

THE
HARTFORD

**EXQUISITE_DELITES_I1**

### Kitchen

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|----------------|-------|--------|---------|-----|-------|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 11. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA [*N] | | 0.00+ | 2,932.49 = | 0.00 | 2,932.49 |
| Bid line for cleaning lines in PA's estimate.  Lines 31,32,35,36,37,39 | | | | | | | |

| Totals: Kitchen | | 0.00 | 2,932.49 |
|-----------------|--|------|----------|

### Rm 1

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|----------------|-------|--------|---------|-----|-------|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 12. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA [*EN] | | 0.00+ | 317.57 = | 0.00 | 317.57 |
| Bid line for cleaning lines in PA's estimate.  Lines 44,45,47,48,49,50 | | | | | | | |

| Totals: Rm 1 | | 0.00 | 317.57 |
|--------------|--|------|--------|

### Rm 2

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|----------------|-------|--------|---------|-----|-------|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 13. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA [*EN] | | 0.00+ | 317.57 = | 0.00 | 317.57 |
| Bid line for cleaning lines in PA's estimate.  Lines 55,56,58,59,60,61 | | | | | | | |

| Totals: Rm 2 | | 0.00 | 317.57 |
|--------------|--|------|--------|

### Office 1

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|----------------|-------|--------|---------|-----|-------|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |



**Twin City Fire Insurance Company**

**CONTINUED - Office 1**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 14. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA  [*EN] | | 0.00+ | 345.74 = | 0.00 | 345.74 |
| Bid line for cleaning lines in PA's estimate.  Lines 66,67,69,70,71,72 | | | | | | | |

| Totals: Office 1 | | | | | | 0.00 | 345.74 |
|-----|-----|-----|-----|-----|-----|-----|-----|

**Office 2**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 15. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA  [*EN] | | 0.00+ | 335.39 = | 0.00 | 335.39 |
| Bid line for cleaning lines in PA's estimate.  Lines 77,78,80,81,82,83 | | | | | | | |

| Totals: Office 2 | | | | | | 0.00 | 335.39 |
|-----|-----|-----|-----|-----|-----|-----|-----|

**Office 3**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 16. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA  [*EN] | | 0.00+ | 358.74 = | 0.00 | 358.74 |
| Bid line for cleaning lines in PA's estimate.  Lines 88,89,91,92,93,94 | | | | | | | |

| Totals: Office 3 | | | | | | 0.00 | 358.74 |
|-----|-----|-----|-----|-----|-----|-----|-----|

**Reception**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |

 **Twin City Fire Insurance Company**

**CONTINUED - Reception**

| CAT | SEL CALC | ACT DESCRIPTION QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|---|---|
| 17. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA [*EN] | | 0.00+ | 577.02 = | 0.00 | 577.02 |
| Bid line for cleaning lines in PA's estimate. Lines 99100,102,103,104,105 | | | | | | | |

| **Totals: Reception** | | | | | | 0.00 | 577.02 |
|---|---|---|---|---|---|---|---|

**Conference Room**

| CAT | SEL CALC | ACT DESCRIPTION QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|---|---|
| 18. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA [*EN] | | 0.00+ | 722.19 = | 0.00 | 722.19 |
| Bid line for cleaning lines in PA's estimate. Lines 119, 121,127,128,129,130 | | | | | | | |

| **Totals: Conference Room** | | | | | | 0.00 | 722.19 |
|---|---|---|---|---|---|---|---|



**Laundry/rear foyer to back door / Orange Wall Room**                **Height: 8'**

| | |
|---|---|
| 401.33 SF Walls | 146.67 SF Ceiling |
| 548.00 SF Walls & Ceiling | 146.67 SF Floor |
| 16.30 SY Flooring | 49.67 LF Floor Perimeter |
| 52.67 LF Ceil. Perimeter | |

**Door**                     **3' X 6' 8"**                **Opens into Exterior**

| CAT | SEL CALC | ACT DESCRIPTION QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|---|---|
| 19. PNT | SP | + Seal/prime then paint part of the walls (2 coats) | | | | | |
| | W*.5 | 200.67 SF | | 0.00+ | 0.98 = | 3.21 | 199.87 |
| 20. CLN | BIDITM | + Cleaning (Bid Item) | | | | | |
| | 1 | 1.00 EA [*EN] | | 0.00+ | 199.87 = | 0.00 | 199.87 |
| Bid line for cleaning lines in PA's estimate. Lines 139, 141, 143, 144,145,146 | | | | | | | |

 **Twin City Fire Insurance Company**

THE HARTFORD

**CONTINUED - Laundry/rear foyer to back door / Orange Wall Room**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| Totals: Laundry/rear foyer to back door / Orange Wall Room | | | | | | 3.21 | 399.74 |

**Level 1**

**Elevations**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 21. CLN | PWASH | + Clean with pressure/chemical spray | | | | | |
| | 357*13 | 4641.00 SF | | 0.00+ | 0.34 = | 3.71 | 1,581.65 |
| Totals: Elevations | | | | | | 3.71 | 1,581.65 |

**Wood fence**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 22. CLN | PWASH | + Clean with pressure/chemical spray | | | | | |
| | 1616 | 1616.00 SF | | 0.00+ | 0.34 = | 1.29 | 550.73 |
| Power wash wood fence | | | | | | | |
| 23. PNT | FEN | + Seal & paint - wood fence/gate | | | | | |
| | 1616 | 1616.00 SF | | 0.00+ | 1.19 = | 46.54 | 1,969.58 |
| Totals: Wood fence | | | | | | 47.83 | 2,520.31 |

**Tarping / Temp patch repairs**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 24. TMP | TARP | & R&R Tarp - all-purpose poly - per sq ft (labor and material) | | | | | |
| | 5553 | 5553.00 SF  [N] | | 0.08+ | 0.98 = | 128.83 | 6,015.01 |



**Twin City Fire Insurance Company**

### CONTINUED - Tarping / Temp patch repairs

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 25. RFG | LAB | + Roofer - per hour | | | | | |
| | 2*8 | 16.00 HR | | 0.00+ | 121.50 = | 0.00 | 1,944.00 |
| SP confirmed approx 350 small patches were done to the roof.   2 men / 1 day for patching | | | | | | | |
| 26. RFG | BIDITM | + Roofing (Bid Item) | | | | | |
| | 1 | 1.00 EA  [*] | | 0.00+ | 200.00 = | 0.00 | 200.00 |
| Line item allowance is for the misc materials for the temp patches on the roof.   approx 20 LF of roofing material @ 3' wide for patches. | | | | | | | |

| | | | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| **Totals:  Tarping / Temp patch repairs** | | | | | | **128.83** | **8,159.01** |
| **Total: Level 1** | | | | | | **180.37** | **12,260.97** |



#### Roof1

| | | |
|-----|-----|-----|
| 2528.22  Surface Area | | 25.28  Number of Squares |
| 245.05  Total Perimeter Length | | |

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|-----|-----|-----|-----|-----|-----|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 27. RFG | SPLYF | - Remove Single ply membrane - Fully adhered system - 45 mil | | | | | |
| | 55.53 | 55.53 SQ | | 76.70+ | 0.00 = | 0.00 | 4,259.15 |
| 28. RFG | SPLYF | + Single ply membrane - Fully adhered system - 45 mil | | | | | |
| | 55.53 | 55.53 SQ | | 0.00+ | 408.46 = | 800.79 | 23,482.57 |
| 29. RFG | ISO2 | & R&R Insulation - ISO board, 2" | | | | | |
| | 55.53 | 55.53 SQ | | 53.86+ | 238.67 = | 499.55 | 16,743.75 |
| 30. RFG | FLTB | + Aluminum termination bar / flashing for membrane roofs | | | | | |
| | 373 | 373.00 LF | | 0.00+ | 2.34 = | 20.89 | 893.71 |
| 31. EQU | SLIFT | + Scissor lift - 20' platform height (per day) | | | | | |
| | 1 | 1.00 DA | | 0.00+ | 164.21 = | 0.00 | 164.21 |
| 32. EQU | LAB | + Equipment Operator - per hour | | | | | |
| | 8 | 8.00 HR | | 0.00+ | 60.13 = | 0.00 | 481.04 |
| 33. RFG | PAVCRS | + Power attic vent cover only - Detach & reset | | | | | |
| | 1 | 1.00 EA | | 0.00+ | 60.19 = | 0.00 | 60.19 |
| 34. RFG | FLPIPE | + Flashing - pipe jack | | | | | |
| | 2 | 2.00 EA | | 0.00+ | 43.88 = | 2.09 | 89.85 |

 **Twin City Fire Insurance Company**

**CONTINUED - Roof1**

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 35. RFG | VFGN | R Detach & Reset Flat roof exhaust vent / cap - gooseneck 8" | | | | | |
| | 1 | 1.00 EA | 78.68 | 0.00+ | 0.00 = | 0.06 | 78.74 |
| 36. RFG | PITCHT | - Remove Pitch pan / pocket - up to 6" x 6" x 4" - PVC/TPO | | | | | |
| | 1 | 1.00 EA | | 25.64+ | 0.00 = | 0.00 | 25.64 |
| 37. RFG | PITCHT | I Install Pitch pan / pocket - up to 6" x 6" x 4" - PVC/TPO | | | | | |
| | 1 | 1.00 EA | | 0.00+ | 43.89 = | 0.00 | 43.89 |

**Totals: Roof1**      1,323.38    46,322.74

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | CALC | QTY | RESET | REMOVE | REPLACE | TAX | TOTAL |
| 1 Level only | | | | | | | |

**Totals: Level 2**      0.00    0.00

**Line Item Totals: EXQUISITE_DELITES_I1**      1,506.96    64,890.16

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 802.67 | SF Walls | 293.33 | SF Ceiling | 1,096.00 | SF Walls and Ceiling |
| 293.33 | SF Floor | 32.59 | SY Flooring | 49.67 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 52.67 | LF Ceil. Perimeter |
| | | | | | |
| 146.67 | Floor Area | 164.67 | Total Area | 401.33 | Interior Wall Area |
| 836.90 | Exterior Wall Area | 55.33 | Exterior Perimeter of Walls | | |
| | | | | | |
| 2,528.22 | Surface Area | 25.28 | Number of Squares | 245.05 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

EXQUISITE_DELITES_I1                      1/13/2023      Page: 7



**Twin City Fire Insurance Company**

## Summary for Building

| | |
|---|---:|
| Line Item Total | 63,383.20 |
| Material Sales Tax | 1,506.96 |
| **Replacement Cost Value** | **$64,890.16** |
| Less Depreciation | (1,412.38) |
| **Actual Cash Value** | **$63,477.78** |
| Less Prior Payment(s) | (59,316.11) |
| **Net Claim Remaining** | **$4,161.67** |
| Total Recoverable Depreciation | 1,412.38 |
| **Net Claim Remaining if Depreciation is Recovered** | **$5,574.05** |

Kimberley Baumann



**HUGGINS** LAW FIRM

**Michael D. Turner, Esq.**
110 Norcross Street
Roswell, GA 30075
mdturner@lawhuggins.com
(770) 913-6229

March 28, 2023

Twin City Fire Insurance Company
The Hartford Commercial Property Center
PO Box 14261
Lexington, KY 40512

**Sent Via email:**
Jillian.goodsell@thehartford.com

Re:  Named Insured(s):  Exquisite Delites Inc d/b/a Exquisite Delites Cat
     Policy Number:   20SBAAM1439
     Claim Number:   Y2H F 91519
     Date of Loss:    April 29, 2022

To Whom it May Concern:

I have been retained by Exquisite Delites Inc d/b/a Exquisite Delites Cat ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why Twin City Fire Insurance Company ("Twin City") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that Twin City has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$173,325.00, less previous payments and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

 **Twin City Fire Insurance Company**

### Recap of Taxes

| | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|
| Line Items | 1,506.96 | 0.00 | 0.00 |
| **Total** | **1,506.96** | **0.00** | **0.00** |



**Twin City Fire Insurance Company**

## Recap by Room

**Estimate: EXQUISITE_DELITES_I1**

| | | |
|---|---:|---:|
| Kitchen | 2,932.49 | 4.63% |
| Rm 1 | 317.57 | 0.50% |
| Rm 2 | 317.57 | 0.50% |
| Office 1 | 345.74 | 0.55% |
| Office 2 | 335.39 | 0.53% |
| Office 3 | 358.74 | 0.57% |
| Reception | 577.02 | 0.91% |
| Conference Room | 722.19 | 1.14% |
| Laundry/rear foyer to back door / Orange Wall Room | 396.53 | 0.63% |

**Area: Level 1**

| | | |
|---|---:|---:|
| Elevations | 1,577.94 | 2.49% |
| Wood fence | 2,472.48 | 3.90% |
| Tarping / Temp patch repairs | 8,030.18 | 12.67% |
| **Area Subtotal:  Level 1** | **12,080.60** | **19.06%** |
| Roof1 | 44,999.36 | 71.00% |

| | | |
|---|---:|---:|
| **Subtotal of Areas** | **63,383.20** | **100.00%** |
| | | |
| **Total** | **63,383.20** | **100.00%** |

 **Twin City Fire Insurance Company**

## Recap by Category with Depreciation

| Items | RCV | Deprec. | ACV |
|---|---|---|---|
| CLEANING | 8,233.96 | | 8,233.96 |
| GENERAL DEMOLITION | 7,719.88 | | 7,719.88 |
| HEAVY EQUIPMENT | 645.25 | | 645.25 |
| PAINTING | 2,119.70 | 1,282.03 | 837.67 |
| ROOFING | 39,222.47 | 95.94 | 39,126.53 |
| TEMPORARY REPAIRS | 5,441.94 | | 5,441.94 |
| Subtotal | 63,383.20 | 1,377.97 | 62,005.23 |
| Material Sales Tax | 1,506.96 | 34.41 | 1,472.55 |
| Total | 64,890.16 | 1,412.38 | 63,477.78 |

# EXHIBIT C

To:  Twin City Fire Insurance Company
Client: Exquisite Delites Inc d/b/a Exquisite Delites Cat
March 28, 2023
Page **2** of **2**

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

The purpose of this correspondence is to encourage Twin City to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you.

Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at mdturner@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

Michael D. Turner, Esq.
Attorney at Law

MDT/aak
Encl.

 **Precision Public Adjusting**

| | | | |
|---|---|---|---|
| Insured: | Eric Centeno | Cellular: | (404) 246-7724 |
| Property: | 4391 Glenwood Road | | |
| | Decatur, GA 30032 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | PJ Kirschner | Business: | (314) 489-4424 |
| | | E-mail: | phillip@precisionpublicadjusting.com |

| | | | |
|---|---|---|---|
| Estimator: | PJ Kirschner | Business: | (314) 489-4424 |
| | | E-mail: | phillip@precisionpublicadjusting.com |

**Claim Number:** CP0019400760          **Policy Number:** UNKNOWN          **Type of Loss:** Fire

| | | | |
|---|---|---|---|
| Date Contacted: | 8/16/2022 12:00 AM | | |
| Date of Loss: | 4/29/2022 12:00 AM | Date Received: | 8/16/2022 12:00 AM |
| Date Inspected: | 9/7/2022 12:00 AM | Date Entered: | 9/7/2022 4:28 PM |
| Date Est. Completed: | 10/27/2022 1:09 AM | | |

| | |
|---|---|
| Price List: | GAAT8X_JAN23 |
| | Restoration/Service/Remodel |
| Estimate: | ERIC_CENTENO_ERIC_S1 |

 **Precision Public Adjusting**

**ERIC_CENTENO_ERIC_S1**

**Exterior**

**Roof**

**Source - Eagle View**



**TPO Roof**

5552.71  Surface Area                              55.53  Number of Squares
376.42  Total Perimeter Length

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| **158.  Roof Replacement (Per Local Contractors Pricing)*** | | | | | | | | | |
| 1.00 EA | 109,078.17 | 0.00 | 21,815.64 | 130,893.81 | 0/NA | Avg. | 0% | (0.00) | 130,893.81 |

*2 estimates were received from local contractors to correctly replaced the damaged roof. The average of the two estimates was used for pricing this item.*

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Totals:  TPO Roof** | | 0.00 | 21,815.64 | 130,893.81 | | | | 0.00 | 130,893.81 |
| **Total:  Source - Eagle View** | | 0.00 | 21,815.64 | 130,893.81 | | | | 0.00 | 130,893.81 |
| **Total:  Roof** | | 0.00 | 21,815.64 | 130,893.81 | | | | 0.00 | 130,893.81 |

**Elevations**



**Precision Public Adjusting**

| Exterior Elevations | | | | | | | | Height: 13' |

4631.50 SF Walls         5267.97 SF Ceiling
9899.47 SF Walls & Ceiling     5267.97 SF Floor
585.33 SY Flooring        350.33 LF Floor Perimeter
365.83 LF Ceil. Perimeter

| | | |
|---|---|---|
| Window | 3' X 1' | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |
| Door | 3' X 6' 8" | Opens into Exterior |
| Door | 3' 6" X 6' 8" | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |
| Door | 3' X 6' 8" | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |
| Door | 3' X 6' 8" | Opens into Exterior |
| Door | 3' X 6' 8" | Opens into Exterior |

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 17. Clean with pressure/chemical spray - Heavy | | | | | | | | | | |
| | 4,631.50 SF | 0.58 | 4.12 | 538.08 | 3,228.47 | 0/NA | Avg. | 0% | (0.00) | 3,228.47 |
| *Allowance to pressure wash exterior elevation wall surfaces.* | | | | | | | | | | |
| 18. Exterior - paint two coats | | | | | | | | | | |
| | 2,615.75 SF | 1.37 | 90.79 | 734.88 | 4,409.25 | 0/15 yrs | Avg. | 0% | (0.00) | 4,409.25 |
| *Allowance to re-paint the exterior elevations that were already painted at time of loss.* | | | | | | | | | | |
| 19. Clean crown molding - Heavy | | | | | | | | | | |
| | 402.00 LF | 0.72 | 0.36 | 57.96 | 347.76 | 0/NA | Avg. | 0% | (0.00) | 347.76 |
| *Allowance to clean exterior foam and stucco decomould crown molding around perimeter of exterior roof line.* | | | | | | | | | | |
| 20. Paint crown molding - two coats | | | | | | | | | | |
| | 402.00 LF | 1.79 | 6.08 | 145.14 | 870.80 | 0/15 yrs | Avg. | 0% | (0.00) | 870.80 |
| *Allowance to re-paint the crown molding that was already painted at time of loss.* | | | | | | | | | | |
| 21. Clean exterior light fixture - Heavy | | | | | | | | | | |
| | 4.00 EA | 22.08 | 0.03 | 17.66 | 106.01 | 0/NA | Avg. | 0% | (0.00) | 106.01 |
| *Allowance to clean exterior light fixtures.* | | | | | | | | | | |
| 22. Clean window unit (per side) 3 - 9 SF - Heavy | | | | | | | | | | |
| | 7.00 EA | 16.98 | 0.01 | 23.78 | 142.65 | 0/NA | Avg. | 0% | (0.00) | 142.65 |
| *Allowance to clean exterior windows.* | | | | | | | | | | |
| 23. Clean exterior door (per side) - Heavy | | | | | | | | | | |
| | 10.00 EA | 21.70 | 0.21 | 43.44 | 260.65 | 0/NA | Avg. | 0% | (0.00) | 260.65 |
| *Allowance to clean 5 exterior doors, both sides.* | | | | | | | | | | |

| **Totals: Exterior Elevations** | | | 101.60 | 1,560.94 | 9,365.59 | | | | 0.00 | 9,365.59 |

 **Precision Public Adjusting**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total: Elevations** | | 101.60 | 1,560.94 | 9,365.59 | | | | | 0.00 | 9,365.59 |

## Other Structures

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 24.  Clean with pressure/chemical spray | | | | | | | | | |
| 1,614.00 SF | 0.39 | 1.44 | 126.18 | 757.08 | 0/NA | Avg. | 0% | (0.00) | 757.08 |
| *Allowance to clean 6 FT wood fence, both sides.* | | | | | | | | | |
| 25.  Seal & paint - wood fence/gate | | | | | | | | | |
| 1,614.00 SF | 1.36 | 56.02 | 450.20 | 2,701.26 | 0/15 yrs | Avg. | 0% | (0.00) | 2,701.26 |
| *Allowance to re-paint 6 FT wood fence, both sides.* | | | | | | | | | |
| 26.  Clean with pressure/chemical spray | | | | | | | | | |
| 270.00 SF | 0.39 | 0.24 | 21.10 | 126.64 | 0/NA | Avg. | 0% | (0.00) | 126.64 |
| *Allowance to clean 3 FT wood fence, both sides.* | | | | | | | | | |
| 27.  Seal & paint - wood fence/gate | | | | | | | | | |
| 270.00 SF | 1.36 | 9.37 | 75.32 | 451.89 | 0/15 yrs | Avg. | 0% | (0.00) | 451.89 |
| *Allowance to re-paint 3 FT wood fence, both sides.* | | | | | | | | | |
| 28.  Clean with pressure/chemical spray | | | | | | | | | |
| 1,200.00 SF | 0.39 | 1.07 | 93.82 | 562.89 | 0/NA | Avg. | 0% | (0.00) | 562.89 |
| *Allowance to clean 6 FT chain link fence, both sides.* | | | | | | | | | |
| 29.  Clean with pressure/chemical spray | | | | | | | | | |
| 880.00 SF | 0.39 | 0.78 | 68.80 | 412.78 | 0/NA | Avg. | 0% | (0.00) | 412.78 |
| *Allowance to clean 4 FT chain link fence, both sides.* | | | | | | | | | |
| 30.  Clean with pressure/chemical spray | | | | | | | | | |
| 159.00 SF | 0.39 | 0.14 | 12.42 | 74.57 | 0/NA | Avg. | 0% | (0.00) | 74.57 |
| *Allowance to clean concrete retaining wall below section of fence on rear elevation.* | | | | | | | | | |
| 31.  Waterproof concrete & masonry paint | | | | | | | | | |
| 159.00 SF | 1.77 | 9.62 | 58.20 | 349.25 | 0/15 yrs | Avg. | 0% | (0.00) | 349.25 |
| *Allowance to re-paint concrete block retaining wall.* | | | | | | | | | |
| **Totals:  Other Structures** | | 78.68 | 906.04 | 5,436.36 | | | | 0.00 | 5,436.36 |
| **Total: Exterior** | | 180.28 | 24,282.62 | 145,695.76 | | | | 0.00 | 145,695.76 |

## Interior
## Main Level

**Main Level**

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 32.  Content Manipulation charge - per hour | | | | | | | | | |
| 6.00 HR | 43.04 | 0.00 | 51.64 | 309.88 | 0/NA | Avg. | 0% | (0.00) | 309.88 |



**Precision Public Adjusting**

## CONTINUED - Main Level

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|

*Labor allowance to manipulate business equipment, building materials and property being stored on interior for access to complete mitigation and repairs.*

| Total: Main Level | | 0.00 | 51.64 | 309.88 | | | | 0.00 | 309.88 |
|---|---|---|---|---|---|---|---|---|---|

**Kitchen**                                                            **Height: 8'**

2077.33 SF Walls               2759.71 SF Ceiling
4837.04 SF Walls & Ceiling       2759.71 SF Floor
306.63 SY Flooring           259.67 LF Floor Perimeter
259.67 LF Ceil. Perimeter

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 33. Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| 2,759.71 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 34. Air mover (per 24 hour period) - No monitoring | | | | | | | | | |
| 22.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 35. Dehumidifier (per 24 hour period) - No monitoring | | | | | | | | | |
| 8.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 36. Equipment setup, take down, and monitoring (hourly charge) | | | | | | | | | |
| 17.00 HR | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 37. Equipment decontamination charge - per piece of equipment | | | | | | | | | |
| 15.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 38. Cleaning Technician - per hour | | | | | | | | | |
| 16.00 HR | 47.07 | 0.00 | 150.62 | 903.74 | 0/NA | Avg. | 0% | (0.00) | 903.74 |
| *Allowance to clean steel stud wall framing* | | | | | | | | | |
| 39. Clean concrete the surface area | | | | | | | | | |
| 478.50 SF | 0.35 | 0.43 | 33.58 | 201.49 | 0/NA | Avg. | 0% | (0.00) | 201.49 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | |
| 40. Apply anti-microbial agent to the surface area | | | | | | | | | |
| 478.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 41. Furnace - heavy clean, replace filters and service - w/ AC | | | | | | | | | |
| 1.00 EA | 493.00 | 1.31 | 98.86 | 593.17 | 0/NA | Avg. | 0% | (0.00) | 593.17 |
| 42. Clean ductwork - Exterior (per LF) | | | | | | | | | |
| 90.77 LF | 4.85 | 0.08 | 88.06 | 528.37 | 0/NA | Avg. | 0% | (0.00) | 528.37 |
| 43. Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | |
| 7.00 EA | 45.01 | 0.06 | 63.04 | 378.17 | 0/NA | Avg. | 0% | (0.00) | 378.17 |

 **Precision Public Adjusting**

**CONTINUED - Kitchen**

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 44. Clean register - heat / AC | | | | | | | | | |
| 7.00 EA | 6.46 | 0.01 | 9.04 | 54.27 | 0/NA | Avg. | 0% | (0.00) | 54.27 |
| 45. R&R Insulated duct - 20" diameter, 24 gauge | | | | | | | | | |
| 43.00 LF | 31.63 | 27.75 | 277.58 | 1,665.42 | 0/30 yrs | Avg. | 0% | (0.00) | 1,665.42 |
| 46. Clean concrete the floor | | | | | | | | | |
| 2,759.71 SF | 0.35 | 2.46 | 193.68 | 1,162.04 | 0/NA | Avg. | 0% | (0.00) | 1,162.04 |
| 47. Apply anti-microbial agent to the floor | | | | | | | | | |
| 2,759.71 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| **Totals: Kitchen** | | **32.10** | **914.46** | **5,486.67** | | | | **0.00** | **5,486.67** |



**Bdrm 1**                                                                    **Height: 8'**

|  | |
|---|---|
| 226.00 SF Walls | 55.50 SF Ceiling |
| 281.50 SF Walls & Ceiling | 55.50 SF Floor |
| 6.17 SY Flooring | 27.83 LF Floor Perimeter |
| 30.33 LF Ceil. Perimeter | |

**Door**                                    2' 6" X 6' 8"                    **Opens into Exterior**

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 48. Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| 55.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 49. Cleaning Technician - per hour | | | | | | | | | |
| 4.00 HR | 47.07 | 0.00 | 37.66 | 225.94 | 0/NA | Avg. | 0% | (0.00) | 225.94 |
| *Allowance to clean steel stud wall framing* | | | | | | | | | |
| 50. Clean concrete the surface area | | | | | | | | | |
| 12.33 SF | 0.35 | 0.01 | 0.86 | 5.19 | 0/NA | Avg. | 0% | (0.00) | 5.19 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | |
| 51. Apply anti-microbial agent to the surface area | | | | | | | | | |
| 12.33 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 52. Clean ductwork - Exterior (per LF) | | | | | | | | | |
| 6.14 LF | 4.85 | 0.01 | 5.96 | 35.75 | 0/NA | Avg. | 0% | (0.00) | 35.75 |
| 53. Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | |
| 1.00 EA | 45.01 | 0.01 | 9.00 | 54.02 | 0/NA | Avg. | 0% | (0.00) | 54.02 |
| 54. Clean register - heat / AC | | | | | | | | | |
| 1.00 EA | 6.46 | 0.00 | 1.30 | 7.76 | 0/NA | Avg. | 0% | (0.00) | 7.76 |

 **Precision Public Adjusting**

CONTINUED - Bdrm 1

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 55. Clean concrete the floor | | | | | | | | | |
| 55.50 SF | 0.35 | 0.05 | 3.90 | 23.38 | 0/NA | Avg. | 0% | (0.00) | 23.38 |
| 56. Apply anti-microbial agent to the floor | | | | | | | | | |
| 55.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| **Totals: Bdrm 1** | | 0.08 | 58.68 | 352.04 | | | | 0.00 | 352.04 |



**Bdrm 2**          **Height: 8'**

226.00 SF Walls      55.50 SF Ceiling
281.50 SF Walls & Ceiling      55.50 SF Floor
6.17 SY Flooring      27.83 LF Floor Perimeter
30.33 LF Ceil. Perimeter

**Door**          2' 6" X 6' 8"          Opens into Exterior

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 57. Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| 55.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 58. Cleaning Technician - per hour | | | | | | | | | |
| 4.00 HR | 47.07 | 0.00 | 37.66 | 225.94 | 0/NA | Avg. | 0% | (0.00) | 225.94 |
| *Allowance to clean steel stud wall framing* | | | | | | | | | |
| 59. Clean concrete the surface area | | | | | | | | | |
| 12.33 SF | 0.35 | 0.01 | 0.86 | 5.19 | 0/NA | Avg. | 0% | (0.00) | 5.19 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | |
| 60. Apply anti-microbial agent to the surface area | | | | | | | | | |
| 12.33 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 61. Clean ductwork - Exterior (per LF) | | | | | | | | | |
| 6.14 LF | 4.85 | 0.01 | 5.96 | 35.75 | 0/NA | Avg. | 0% | (0.00) | 35.75 |
| 62. Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | |
| 1.00 EA | 45.01 | 0.01 | 9.00 | 54.02 | 0/NA | Avg. | 0% | (0.00) | 54.02 |
| 63. Clean register - heat / AC | | | | | | | | | |
| 1.00 EA | 6.46 | 0.00 | 1.30 | 7.76 | 0/NA | Avg. | 0% | (0.00) | 7.76 |
| 64. Clean concrete the floor | | | | | | | | | |
| 55.50 SF | 0.35 | 0.05 | 3.90 | 23.38 | 0/NA | Avg. | 0% | (0.00) | 23.38 |
| 65. Apply anti-microbial agent to the floor | | | | | | | | | |
| 55.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |



**Precision Public Adjusting**

### CONTINUED - Bdrm 2

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| Totals: Bdrm 2 | | 0.08 | 58.68 | 352.04 | | | | 0.00 | 352.04 |



**Office 1**                                                                              **Height: 8'**

| | |
|---|---|
| 274.00 SF Walls | 82.50 SF Ceiling |
| 356.50 SF Walls & Ceiling | 82.50 SF Floor |
| 9.17 SY Flooring | 33.83 LF Floor Perimeter |
| 36.33 LF Ceil. Perimeter | |

**Door**                                          **2' 6" X 6' 8"**                    **Opens into Exterior**

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 66.  Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| 82.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 67.  Cleaning Technician - per hour | | | | | | | | | |
| 4.00 HR | 47.07 | 0.00 | 37.66 | 225.94 | 0/NA | Avg. | 0% | (0.00) | 225.94 |
| *Allowance to clean steel stud wall framing* | | | | | | | | | |
| 68.  Clean concrete the surface area | | | | | | | | | |
| 18.33 SF | 0.35 | 0.02 | 1.28 | 7.72 | 0/NA | Avg. | 0% | (0.00) | 7.72 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | |
| 69.  Apply anti-microbial agent to the surface area | | | | | | | | | |
| 18.33 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 70.  Clean ductwork - Exterior (per LF) | | | | | | | | | |
| 9.14 LF | 4.85 | 0.01 | 8.86 | 53.20 | 0/NA | Avg. | 0% | (0.00) | 53.20 |
| 71.  Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | |
| 1.00 EA | 45.01 | 0.01 | 9.00 | 54.02 | 0/NA | Avg. | 0% | (0.00) | 54.02 |
| 72.  Clean register - heat / AC | | | | | | | | | |
| 1.00 EA | 6.46 | 0.00 | 1.30 | 7.76 | 0/NA | Avg. | 0% | (0.00) | 7.76 |
| 73.  Clean concrete the floor | | | | | | | | | |
| 82.50 SF | 0.35 | 0.07 | 5.80 | 34.75 | 0/NA | Avg. | 0% | (0.00) | 34.75 |
| 74.  Apply anti-microbial agent to the floor | | | | | | | | | |
| 82.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| Totals: Office 1 | | 0.11 | 63.90 | 383.39 | | | | 0.00 | 383.39 |



**Precision Public Adjusting**



| | | Office 2 | | | | | | Height: 8' |

| | |
|---|---|
| 256.67 SF Walls | 72.75 SF Ceiling |
| 329.42 SF Walls & Ceiling | 72.75 SF Floor |
| 8.08 SY Flooring | 31.67 LF Floor Perimeter |
| 34.17 LF Ceil. Perimeter | |

**Door**                    2' 6" X 6' 8"               Opens into Exterior

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 75. Water extraction from hard surface floor - Cat 2 water | | | | | | | | | | |
| | 72.75 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 76. Cleaning Technician - per hour | | | | | | | | | | |
| | 4.00 HR | 47.07 | 0.00 | 37.66 | 225.94 | 0/NA | Avg. | 0% | (0.00) | 225.94 |
| *Allowance to clean steel stud wall framing* | | | | | | | | | | |
| 77. Clean concrete the surface area | | | | | | | | | | |
| | 16.17 SF | 0.35 | 0.01 | 1.14 | 6.81 | 0/NA | Avg. | 0% | (0.00) | 6.81 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | | |
| 78. Apply anti-microbial agent to the surface area | | | | | | | | | | |
| | 16.17 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 79. Clean ductwork - Exterior (per LF) | | | | | | | | | | |
| | 8.02 LF | 4.85 | 0.01 | 7.78 | 46.69 | 0/NA | Avg. | 0% | (0.00) | 46.69 |
| 80. Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | | |
| | 1.00 EA | 45.01 | 0.01 | 9.00 | 54.02 | 0/NA | Avg. | 0% | (0.00) | 54.02 |
| 81. Clean register - heat / AC | | | | | | | | | | |
| | 1.00 EA | 6.46 | 0.00 | 1.30 | 7.76 | 0/NA | Avg. | 0% | (0.00) | 7.76 |
| 82. Clean concrete the floor | | | | | | | | | | |
| | 72.75 SF | 0.35 | 0.06 | 5.12 | 30.64 | 0/NA | Avg. | 0% | (0.00) | 30.64 |
| 83. Apply anti-microbial agent to the floor | | | | | | | | | | |
| | 72.75 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| **Totals: Office 2** | | | 0.09 | 62.00 | 371.86 | | | | 0.00 | 371.86 |



| | | Office 3 | | | | | | Height: 8' |

| | |
|---|---|
| 338.00 SF Walls | 118.50 SF Ceiling |
| 456.50 SF Walls & Ceiling | 118.50 SF Floor |
| 13.17 SY Flooring | 41.83 LF Floor Perimeter |
| 44.33 LF Ceil. Perimeter | |

**Door**                    2' 6" X 6' 8"               Opens into Exterior

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|



**Precision Public Adjusting**

## CONTINUED - Office 3

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 84. Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| 118.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 85. Cleaning Technician - per hour | | | | | | | | | |
| 4.00 HR | 47.07 | 0.00 | 37.66 | 225.94 | 0/NA | Avg. | 0% | (0.00) | 225.94 |
| *Allowance to clean steel stud wall framing* | | | | | | | | | |
| 86. Clean concrete the surface area | | | | | | | | | |
| 18.00 SF | 0.35 | 0.02 | 1.26 | 7.58 | 0/NA | Avg. | 0% | (0.00) | 7.58 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | |
| 87. Apply anti-microbial agent to the surface area | | | | | | | | | |
| 18.00 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 88. Clean ductwork - Exterior (per LF) | | | | | | | | | |
| 9.00 LF | 4.85 | 0.01 | 8.74 | 52.40 | 0/NA | Avg. | 0% | (0.00) | 52.40 |
| 89. Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | |
| 1.00 EA | 45.01 | 0.01 | 9.00 | 54.02 | 0/NA | Avg. | 0% | (0.00) | 54.02 |
| 90. Clean register - heat / AC | | | | | | | | | |
| 1.00 EA | 6.46 | 0.00 | 1.30 | 7.76 | 0/NA | Avg. | 0% | (0.00) | 7.76 |
| 91. Clean concrete the floor | | | | | | | | | |
| 118.50 SF | 0.35 | 0.11 | 8.32 | 49.91 | 0/NA | Avg. | 0% | (0.00) | 49.91 |
| 92. Apply anti-microbial agent to the floor | | | | | | | | | |
| 118.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| **Totals: Office 3** | | **0.15** | **66.28** | **397.61** | | | | **0.00** | **397.61** |

### Reception Area — Height: 8'

| | |
|---|---|
| 474.00 SF Walls | 242.01 SF Ceiling |
| 716.01 SF Walls & Ceiling | 242.01 SF Floor |
| 26.89 SY Flooring | 59.50 LF Floor Perimeter |
| 62.50 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Door | 3' X 6' 8" | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |
| Window | 3' X 1' | Opens into Exterior |

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 93. Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| 242.01 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |



**Precision Public Adjusting**

**CONTINUED - Reception Area**

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 94.  Cleaning Technician - per hour | | | | | | | | | |
| 5.00 HR | 47.07 | 0.00 | 47.08 | 282.43 | 0/NA | Avg. | 0% | (0.00) | 282.43 |
| *Allowance to clean steel stud wall framing* | | | | | | | | | |
| 95.  Clean concrete the surface area | | | | | | | | | |
| 69.50 SF | 0.35 | 0.06 | 4.88 | 29.27 | 0/NA | Avg. | 0% | (0.00) | 29.27 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | |
| 96.  Apply anti-microbial agent to the surface area | | | | | | | | | |
| 69.50 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 97.  Clean ductwork - Exterior (per LF) | | | | | | | | | |
| 17.00 LF | 4.85 | 0.02 | 16.50 | 98.97 | 0/NA | Avg. | 0% | (0.00) | 98.97 |
| 98.  Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | |
| 2.00 EA | 45.01 | 0.02 | 18.00 | 108.04 | 0/NA | Avg. | 0% | (0.00) | 108.04 |
| 99.  Clean register - heat / AC | | | | | | | | | |
| 2.00 EA | 6.46 | 0.00 | 2.58 | 15.50 | 0/NA | Avg. | 0% | (0.00) | 15.50 |
| 100.  Clean concrete the floor | | | | | | | | | |
| 242.01 SF | 0.35 | 0.22 | 16.98 | 101.90 | 0/NA | Avg. | 0% | (0.00) | 101.90 |
| 101.  Apply anti-microbial agent to the floor | | | | | | | | | |
| 242.01 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| **Totals:  Reception Area** | | **0.32** | **106.02** | **636.11** | | | | **0.00** | **636.11** |

**Conference Room**                                           **Height: 8'**

| | |
|---|---|
| 973.33  SF Walls | 1116.56  SF Ceiling |
| 2089.90  SF Walls & Ceiling | 1116.56  SF Floor |
| 124.06  SY Flooring | 118.50  LF Floor Perimeter |
| 137.50  LF Ceil. Perimeter | |

| | | |
|---|---|---|
| **Missing Wall - Goes to Floor** | 12' X 6' 8" | Opens into Exterior |
| **Door** | 4' X 6' 8" | Opens into Exterior |
| **Door** | 3' X 6' 8" | Opens into Exterior |

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 102.  Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| 1,116.56 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 103.  Air mover (per 24 hour period) - No monitoring | | | | | | | | | |
| 4.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |

 **Precision Public Adjusting**

PRECISION
PUBLIC
ADJUSTING

CONTINUED - Conference Room

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 104. | Dehumidifier (per 24 hour period) - No monitoring | | | | | | | | | |
| | 2.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 105. | Equipment setup, take down, and monitoring (hourly charge) | | | | | | | | | |
| | 5.00 HR | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 106. | Equipment decontamination charge - per piece of equipment | | | | | | | | | |
| | 3.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 107. | Tear out and bag wet insulation | | | | | | | | | |
| | 1,116.56 SF | | | | | 0/NA | Avg. | NA | | OPEN ITEM |
| 108. | Tear out wet drywall, cleanup, bag for disposal | | | | | | | | | |
| | 1,116.56 SF | | | | | 0/NA | Avg. | NA | | OPEN ITEM |
| 109. | Seal the ceiling w/PVA primer - one coat | | | | | | | | | |
| | 1,116.56 SF | 0.70 | 5.96 | 157.52 | 945.07 | 0/15 yrs | Avg. | 0% | (0.00) | 945.07 |
| 110. | Paint the ceiling - one coat | | | | | | | | | |
| | 1,116.56 SF | 0.79 | 14.91 | 179.40 | 1,076.39 | 0/15 yrs | Avg. | 0% | (0.00) | 1,076.39 |
| 111. | Tear out wet drywall, cleanup, bag for disposal | | | | | | | | | |
| | 486.67 SF | | | | | 0/NA | Avg. | NA | | OPEN ITEM |
| 112. | Clean concrete the surface area | | | | | | | | | |
| | 67.00 SF | 0.35 | 0.06 | 4.72 | 28.23 | 0/NA | Avg. | 0% | (0.00) | 28.23 |
| *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | | |
| 113. | Apply anti-microbial agent to the surface area | | | | | | | | | |
| | 67.00 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 114. | Clean stud wall | | | | | | | | | |
| | 973.33 SF | 0.88 | 1.73 | 171.64 | 1,029.90 | 0/NA | Avg. | 0% | (0.00) | 1,029.90 |
| *Allowance to clean stud wall framing* | | | | | | | | | | |
| 115. | Seal part of the walls w/PVA primer - one coat | | | | | | | | | |
| | 486.67 SF | 0.70 | 2.60 | 68.66 | 411.93 | 0/15 yrs | Avg. | 0% | (0.00) | 411.93 |
| 116. | Paint part of the walls - one coat | | | | | | | | | |
| | 486.67 SF | 0.79 | 6.50 | 78.20 | 469.17 | 0/15 yrs | Avg. | 0% | (0.00) | 469.17 |
| 117. | Exterior door - Detach & reset | | | | | | | | | |
| | 1.00 EA | 178.55 | 0.46 | 35.82 | 214.83 | 0/NA | Avg. | 0% | (0.00) | 214.83 |
| 118. | Clean door (per side) | | | | | | | | | |
| | 2.00 EA | 8.23 | 0.03 | 3.30 | 19.79 | 0/NA | Avg. | 0% | (0.00) | 19.79 |
| 119. | Seal & paint door slab only (per side) | | | | | | | | | |
| | 2.00 EA | 45.06 | 1.59 | 18.34 | 110.05 | 0/15 yrs | Avg. | 0% | (0.00) | 110.05 |
| 120. | Seal & paint door/window trim & jamb - (per side) | | | | | | | | | |
| | 2.00 EA | 37.24 | 0.94 | 15.08 | 90.50 | 0/15 yrs | Avg. | 0% | (0.00) | 90.50 |
| 121. | Clean ductwork - Exterior (per LF) | | | | | | | | | |
| | 22.00 LF | 4.85 | 0.02 | 21.34 | 128.06 | 0/NA | Avg. | 0% | (0.00) | 128.06 |

 **Precision Public Adjusting**

**CONTINUED - Conference Room**

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 122. | Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | |
| | 3.00 EA | 45.01 | 0.02 | 27.00 | 162.05 | 0/NA | Avg. | 0% | (0.00) | 162.05 |
| 123. | Clean register - heat / AC | | | | | | | | | |
| | 3.00 EA | 6.46 | 0.01 | 3.88 | 23.27 | 0/NA | Avg. | 0% | (0.00) | 23.27 |
| 124. | Clean concrete the floor | | | | | | | | | |
| | 1,116.56 SF | 0.35 | 0.99 | 78.36 | 470.15 | 0/NA | Avg. | 0% | (0.00) | 470.15 |
| 125. | Apply anti-microbial agent to the floor | | | | | | | | | |
| | 1,116.56 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| | **Totals: Conference Room** | | **35.82** | **863.26** | **5,179.39** | | | | **0.00** | **5,179.39** |



**Laundry Room**      **Height: 8'**

| | |
|---|---|
| 380.00 SF Walls | 129.56 SF Ceiling |
| 509.56 SF Walls & Ceiling | 129.56 SF Floor |
| 14.40 SY Flooring | 47.00 LF Floor Perimeter |
| 50.00 LF Ceil. Perimeter | |

**Door**      **3' X 6' 8"**      **Opens into Exterior**

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 126. | Water extraction from hard surface floor - Cat 2 water | | | | | | | | | |
| | 129.56 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 127. | Air mover (per 24 hour period) - No monitoring | | | | | | | | | |
| | 2.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 128. | Dehumidifier (per 24 hour period) - No monitoring | | | | | | | | | |
| | 2.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 129. | Equipment setup, take down, and monitoring (hourly charge) | | | | | | | | | |
| | 3.00 HR | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 130. | Equipment decontamination charge - per piece of equipment | | | | | | | | | |
| | 2.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| 131. | Clean concrete the surface area | | | | | | | | | |
| | 50.00 SF | 0.35 | 0.04 | 3.50 | 21.04 | 0/NA | Avg. | 0% | (0.00) | 21.04 |
| | *Allowance to clean concrete block exterior elevation wall on interior.* | | | | | | | | | |
| 132. | Apply anti-microbial agent to the surface area | | | | | | | | | |
| | 50.00 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |

 **Precision Public Adjusting**

### CONTINUED - Laundry Room

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 133. Clean water heater - Heavy | | | | | | | | | | |
| | 1.00 EA | 32.32 | 0.01 | 6.46 | 38.79 | 0/NA | Avg. | 0% | (0.00) | 38.79 |
| 134. R&R Foam pipe insulation - 1" wall for 1/8" to 3/4" pipe | | | | | | | | | | |
| | 12.00 LF | 6.02 | 2.17 | 14.90 | 89.31 | 0/150 yrs | Avg. | 0% | (0.00) | 89.31 |
| 135. Clean ductwork - Exterior (per LF) | | | | | | | | | | |
| | 7.12 LF | 4.85 | 0.01 | 6.90 | 41.44 | 0/NA | Avg. | 0% | (0.00) | 41.44 |
| 136. Clean ductwork - Interior - Heavy clean (PER REGISTER) | | | | | | | | | | |
| | 1.00 EA | 45.01 | 0.01 | 9.00 | 54.02 | 0/NA | Avg. | 0% | (0.00) | 54.02 |
| 137. Clean register - heat / AC | | | | | | | | | | |
| | 1.00 EA | 6.46 | 0.00 | 1.30 | 7.76 | 0/NA | Avg. | 0% | (0.00) | 7.76 |
| 138. Clean concrete the floor | | | | | | | | | | |
| | 129.56 SF | 0.35 | 0.12 | 9.10 | 54.57 | 0/NA | Avg. | 0% | (0.00) | 54.57 |
| 139. Apply anti-microbial agent to the floor | | | | | | | | | | |
| | 129.56 SF | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| **Totals: Laundry Room** | | | 2.36 | 51.16 | 306.93 | | | | 0.00 | 306.93 |
| **Total: Main Level** | | | 71.11 | 2,296.08 | 13,775.92 | | | | 0.00 | 13,775.92 |
| **Total: Interior** | | | 71.11 | 2,296.08 | 13,775.92 | | | | 0.00 | 13,775.92 |

### Debris Removal

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 140. Dumpster load - Approx. 12 yards, 1-3 tons of debris | | | | | | | | | | |
| | 1.00 EA | 490.00 | 0.00 | 98.00 | 588.00 | 0/NA | Avg. | NA | (0.00) | 588.00 |
| **Totals: Debris Removal** | | | 0.00 | 98.00 | 588.00 | | | | 0.00 | 588.00 |

### Temporary Repairs

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 141. Water Extraction & Remediation Technician - per hour | | | | | | | | | | |
| | 12.00 HR | 59.14 | 0.00 | 0.00 | 709.68 | 0/NA | Avg. | 0% | (0.00) | 709.68 |

*Allowance for water removal and clean up completed by insured.*

ERIC_CENTENO_ERIC_S1

 **Precision Public Adjusting**

### CONTINUED - Temporary Repairs

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 142. Roof Tarp Per Contractor Invoice* | | | | | | | | | |
| 1.00 EA | 12,151.78 | 0.00 | 0.00 | 12,151.78 | 0/NA | Avg. | 0% | (0.00) | 12,151.78 |

*Roof tarp per HammerHead Roofing (706) 346-2413 invoice dated 6/12/2022. Invoice includes labor and material to tarp 5,600 SF TPO roof to prevent further damage: 50.4 labor hours & 6,988.80 SF of tarp.*

| Totals: Temporary Repairs | | 0.00 | 0.00 | 12,861.46 | | | | 0.00 | 12,861.46 |
|---|---|---|---|---|---|---|---|---|---|

### Labor Minimums Applied

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 151. Door labor minimum | | | | | | | | | |
| 1.00 EA | 62.39 | 0.00 | 12.48 | 74.87 | 0/NA | Avg. | 0% | (0.00) | 74.87 |
| 153. Plumbing labor minimum | | | | | | | | | |
| 1.00 EA | 274.15 | 0.00 | 54.84 | 328.99 | 0/NA | Avg. | 0% | (0.00) | 328.99 |

| Totals: Labor Minimums Applied | | 0.00 | 67.32 | 403.86 | | | | 0.00 | 403.86 |
|---|---|---|---|---|---|---|---|---|---|

| Line Item Totals: ERIC_CENTENO_ERIC_S1 | 251.39 | 26,744.02 | 173,325.00 | | | | | 0.00 | 173,325.00 |
|---|---|---|---|---|---|---|---|---|---|

[%] - Indicates that depreciate by percent was used for this item
[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

## Grand Total Areas:

| | | |
|---|---|---|
| 9,856.83  SF Walls | 9,900.55  SF Ceiling | 19,757.39  SF Walls and Ceiling |
| 9,900.55  SF Floor | 1,100.06  SY Flooring | 998.00  LF Floor Perimeter |
| 0.00  SF Long Wall | 0.00  SF Short Wall | 1,051.00  LF Ceil. Perimeter |
| | | |
| 9,900.55  Floor Area | 10,245.66  Total Area | 9,856.83  Interior Wall Area |
| 9,603.50  Exterior Wall Area | 1,017.67  Exterior Perimeter of Walls | |
| | | |
| 5,552.71  Surface Area | 55.53  Number of Squares | 376.42  Total Perimeter Length |
| 0.00  Total Ridge Length | 0.00  Total Hip Length | |

 **Precision Public Adjusting**

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Insured Premises Location | 155,027.18 | 89.44% | 155,027.18 | 89.44% |
| Insured Premises Location - Code Upgrade | 0.00 | 0.00% | 0.00 | 0.00% |
| Other Structures | 5,436.36 | 3.14% | 5,436.36 | 3.14% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Water Mitigation | 709.68 | 0.41% | 709.68 | 0.41% |
| Temporary Repairs | 12,151.78 | 7.01% | 12,151.78 | 7.01% |
| Total | 173,325.00 | 100.00% | 173,325.00 | 100.00% |

 **Precision Public Adjusting**

## Summary for Insured Premises Location

| | |
|---|---:|
| Line Item Total | 129,016.49 |
| Material Sales Tax | 172.71 |
| Subtotal | 129,189.20 |
| Overhead | 12,918.99 |
| Profit | 12,918.99 |
| **Replacement Cost Value** | **$155,027.18** |
| **Net Claim** | **$155,027.18** |

PJ Kirschner

 **Precision Public Adjusting**

### Summary for Other Structures

| | |
|---|---:|
| Line Item Total | 4,451.64 |
| Material Sales Tax | 78.68 |
| Subtotal | 4,530.32 |
| Overhead | 453.02 |
| Profit | 453.02 |
| **Replacement Cost Value** | **$5,436.36** |
| **Net Claim** | **$5,436.36** |

PJ Kirschner

 **Precision Public Adjusting**

## Summary for Water Mitigation

| | |
|---|---:|
| Line Item Total | 709.68 |
| **Replacement Cost Value** | **$709.68** |
| **Net Claim** | **$709.68** |

PJ Kirschner

 **Precision Public Adjusting**

## Summary for Temporary Repairs

| | |
|---|---:|
| Line Item Total | 12,151.78 |
| **Replacement Cost Value** | **$12,151.78** |
| **Net Claim** | **$12,151.78** |

_____
PJ Kirschner

 **Precision Public Adjusting**

## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (8.9%) | Storage Rental Tax (8.9%) | Local Food Tax (4.9%) |
|---|---|---|---|---|---|
| Line Items | 13,372.01 | 13,372.01 | 251.39 | 0.00 | 0.00 |
| **Total** | **13,372.01** | **13,372.01** | **251.39** | **0.00** | **0.00** |

 **Precision Public Adjusting**

## Recap by Room

**Estimate: ERIC_CENTENO_ERIC_S1**

**Area: Exterior**

**Area: Roof**

| | | | |
|---|---|---|---|
| **Area: Source - Eagle View** | | | |
| **TPO Roof** | | **109,078.17** | **74.54%** |
| Coverage: Insured Premises Location | 100.00% = | 109,078.17 | |
| **Area Subtotal:  Source - Eagle View** | | **109,078.17** | **74.54%** |
| Coverage: Insured Premises Location | 100.00% = | 109,078.17 | |
| **Area Subtotal:  Roof** | | **109,078.17** | **74.54%** |
| Coverage: Insured Premises Location | 100.00% = | 109,078.17 | |
| **Area: Elevations** | | | |
| **Exterior Elevations** | | **7,703.05** | **5.26%** |
| Coverage: Insured Premises Location | 100.00% = | 7,703.05 | |
| **Area Subtotal:  Elevations** | | **7,703.05** | **5.26%** |
| Coverage: Insured Premises Location | 100.00% = | 7,703.05 | |
| **Other Structures** | | **4,451.64** | **3.04%** |
| Coverage: Other Structures | 100.00% = | 4,451.64 | |
| **Area Subtotal:  Exterior** | | **121,232.86** | **82.85%** |
| Coverage: Insured Premises Location | 96.33% = | 116,781.22 | |
| Coverage: Other Structures | 3.67% = | 4,451.64 | |

**Area: Interior**

| | | | |
|---|---|---|---|
| **Area: Main Level** | | **258.24** | **0.18%** |
| Coverage: Insured Premises Location | 100.00% = | 258.24 | |
| **Kitchen** | | **4,540.11** | **3.10%** |
| Coverage: Insured Premises Location | 100.00% = | 4,540.11 | |
| **Bdrm 1** | | **293.28** | **0.20%** |
| Coverage: Insured Premises Location | 100.00% = | 293.28 | |
| **Bdrm 2** | | **293.28** | **0.20%** |
| Coverage: Insured Premises Location | 100.00% = | 293.28 | |
| **Office 1** | | **319.38** | **0.22%** |
| Coverage: Insured Premises Location | 100.00% = | 319.38 | |
| **Office 2** | | **309.77** | **0.21%** |
| Coverage: Insured Premises Location | 100.00% = | 309.77 | |

 **Precision Public Adjusting**

| | | | |
|---|---|---|---|
| **Office 3** | | **331.18** | **0.23%** |
| Coverage: Insured Premises Location | 100.00% = | 331.18 | |
| **Reception Area** | | **529.77** | **0.36%** |
| Coverage: Insured Premises Location | 100.00% = | 529.77 | |
| **Conference Room** | | **4,280.31** | **2.93%** |
| Coverage: Insured Premises Location | 100.00% = | 4,280.31 | |
| **Laundry Room** | | **253.41** | **0.17%** |
| Coverage: Insured Premises Location | 100.00% = | 253.41 | |
| | | | |
| **Area Subtotal:  Main Level** | | **11,408.73** | **7.80%** |
| Coverage: Insured Premises Location | 100.00% = | 11,408.73 | |
| | | | |
| **Area Subtotal:  Interior** | | **11,408.73** | **7.80%** |
| Coverage: Insured Premises Location | 100.00% = | 11,408.73 | |
| **Debris Removal** | | **490.00** | **0.33%** |
| Coverage: Insured Premises Location | 100.00% = | 490.00 | |
| **Temporary Repairs** | | **12,861.46** | **8.79%** |
| Coverage: Water Mitigation | 5.52% = | 709.68 | |
| Coverage: Temporary Repairs | 94.48% = | 12,151.78 | |
| **Labor Minimums Applied** | | **336.54** | **0.23%** |
| Coverage: Insured Premises Location | 100.00% = | 336.54 | |
| | | | |
| **Subtotal of Areas** | | **146,329.59** | **100.00%** |
| Coverage: Insured Premises Location | 88.17% = | 129,016.49 | |
| Coverage: Other Structures | 3.04% = | 4,451.64 | |
| Coverage: Water Mitigation | 0.48% = | 709.68 | |
| Coverage: Temporary Repairs | 8.30% = | 12,151.78 | |
| | | | |
| **Total** | | **146,329.59** | **100.00%** |



**Precision Public Adjusting**

## Recap by Category

| O&P Items | | | Total | % |
|---|---|---|---|---|
| **CLEANING** | | | **11,501.06** | **6.64%** |
| Coverage: Insured Premises Location | @ | 86.02% = | 9,893.09 | |
| Coverage: Other Structures | @ | 13.98% = | 1,607.97 | |
| **CONTENT MANIPULATION** | | | **258.24** | **0.15%** |
| Coverage: Insured Premises Location | @ | 100.00% = | 258.24 | |
| **GENERAL DEMOLITION** | | | **550.36** | **0.32%** |
| Coverage: Insured Premises Location | @ | 100.00% = | 550.36 | |
| **DOORS** | | | **240.94** | **0.14%** |
| Coverage: Insured Premises Location | @ | 100.00% = | 240.94 | |
| **HEAT, VENT & AIR CONDITIONING** | | | **1,801.49** | **1.04%** |
| Coverage: Insured Premises Location | @ | 100.00% = | 1,801.49 | |
| **PLUMBING** | | | **337.63** | **0.19%** |
| Coverage: Insured Premises Location | @ | 100.00% = | 337.63 | |
| **PAINTING** | | | **9,700.24** | **5.60%** |
| Coverage: Insured Premises Location | @ | 70.68% = | 6,856.57 | |
| Coverage: Other Structures | @ | 29.32% = | 2,843.67 | |
| **USER DEFINED ITEMS** | | | **109,078.17** | **62.93%** |
| Coverage: Insured Premises Location | @ | 100.00% = | 109,078.17 | |
| **O&P Items Subtotal** | | | **133,468.13** | **77.00%** |

| Non-O&P Items | | | Total | % |
|---|---|---|---|---|
| **TEMPORARY REPAIRS** | | | **12,151.78** | **7.01%** |
| Coverage: Temporary Repairs | @ | 100.00% = | 12,151.78 | |
| **WATER EXTRACTION & REMEDIATION** | | | **709.68** | **0.41%** |
| Coverage: Water Mitigation | @ | 100.00% = | 709.68 | |
| **Non-O&P Items Subtotal** | | | **12,861.46** | **7.42%** |
| **O&P Items Subtotal** | | | **133,468.13** | **77.00%** |
| **Material Sales Tax** | | | **251.39** | **0.15%** |
| Coverage: Insured Premises Location | @ | 68.70% = | 172.71 | |
| Coverage: Other Structures | @ | 31.30% = | 78.68 | |
| **Overhead** | | | **13,372.01** | **7.71%** |
| Coverage: Insured Premises Location | @ | 96.61% = | 12,918.99 | |
| Coverage: Other Structures | @ | 3.39% = | 453.02 | |
| **Profit** | | | **13,372.01** | **7.71%** |
| Coverage: Insured Premises Location | @ | 96.61% = | 12,918.99 | |
| Coverage: Other Structures | @ | 3.39% = | 453.02 | |
| **Total** | | | **173,325.00** | **100.00%** |

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

EXQUISITE     DELITES     INC     D/B/A     )
EXQUISITE DELITES CAT,                       )
        Plaintiff,                                    )
                                                      )
        v.                                          )      **CIVIL ACTION FILE NO.:**
                                                      )      <u>23-A-05250-5</u>
TWIN     CITY     FIRE     INSURANCE     )
COMPANY,                                         )
                                                      )
        Defendant.                                  )
                                                      )

## <u>PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT</u>

COMES NOW, Plaintiff, **Exquisite Delites Inc d/b/a Exquisite Delites Cat**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **Twin City Fire Insurance Company**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

## <u>GENERAL INSTRUCTIONS</u>

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4.  Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiff to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5.  You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6.  The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7.  Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8.  If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9.  Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a.   The date the document was prepared or created;

    b.   The name and title of the author or authors of the document;

    a.   A summary of the subject matter of the document;

    b.   The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c.   The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d.   A statement of the basis on which privilege is claimed; and

    e.   The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholder's Claim" shall refer to Claim No. Y2H F 91519, which was drafted by the Insurance Company and issued to the Policyholder for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a.   when used to refer to a document, means to state the following:

          1. The subject of the document;

          2. The title of the document;

          3. The type of document (e.g., letter, memorandum, telegram, chart);

4.The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5.The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6.The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff" and "Policyholder" mean the above-captioned Plaintiff or the Policyholder listed on 20SBAAM1439 and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10. "Property" or "Insured Property" means the property located at 4391 Glenwood Road, Decatur, GA 30032.

11. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

12. "Policy" means Policy No. 20SBAAM1439 issued by Twin City Fire Insurance Company.

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around April 29, 2022, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the Loss on or about April 29, 2022, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from April 29, 2022 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiff's Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiff all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiff; the date and manner in which You notified the Plaintiff in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiff.

7.

Have You extended coverage for any part of Plaintiff's Claim for insurance benefits, or have You denied or rejected Plaintiff's Claim? If You extended coverage for any part of Plaintiff's Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiff's Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiff's Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiff's Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiff's deductible.

8.

Do You contend the damage to the Property can be repaired? If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Fire losses that were in effect on April 29, 2022 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiff's cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Fire claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding April 29, 2022 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiff failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiff failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiff's Complaint.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

All documents responsive to Plaintiff's Interrogatories identified in Your responses to Plaintiff's Interrogatories or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Fire claims in the state of Georgia for the year preceding April 29, 2022 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding April 29, 2022 to present.

7.

The Operation Guides which relate to the handling of Fire claims in the state of Georgia in effect for the year preceding April 29, 2022 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel,

contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

9.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

10.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Fire claims in the state of Georgia that were issued one year preceding April 29, 2022 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

12.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in

Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same);

all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

<div align="center">17.</div>

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

<div align="center">18.</div>

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

<div align="center">19.</div>

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this 20th day of June, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414

*Attorneys for the Plaintiff*

FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-05250-5**
**6/15/2023 4:23 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **EXQUISITE DELITES INC D/B/A** | ) | |
| **EXQUISITE DELITES CAT,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** 23-A-05250-5 |
| | ) | |
| **TWIN CITY FIRE INSURANCE** | ) | _____ |
| **COMPANY,** | ) | |
|   a foreign corporation, | ) | |
| | ) | |
|     **Defendant.** | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant Twin City Fire Insurance Company by serving them with the *Summons, Complaint and Exhibits*, and *Plaintiff's First Set of Interrogatories and Request for Production of Documents* in accordance with the Court's rules to Defendant Twin City Fire Insurance Company at the address listed below:

**C T Corporation System**
**Registered Agent for Defendant Twin City Fire Insurance Company**
**289 S. Culver St.**
**Lawrenceville, GA 30046**

Respectfully submitted, this 15th day of June, 2023.

For: The Huggins Law Firm, LLC,

_____

**The Huggins Law Firm, LLC**              J. Remington Huggins, Esq.
110 Norcross Street                        Georgia Bar No.: 348736
Roswell, GA 30075                          Michael D. Turner, Esq.
(o) (770) 913-6229                         Georgia Bar No.: 216414
(e) remington@lawhuggins.com               *Attorneys for the Plaintiff*
(e) mdturner@lawhuggins.com

SHERIFF'S ENTRY OF SERVICE

Civil Action No. ___23-A-05250-5_____

| | Superior Court ☒ | Magistrate Court ☐ |
|---|---|---|
| | State Court ☐ | Probate Court ☐ |
| | Juvenile Court ☐ | |

Date Filed ___6/15/2023_____

Georgia, ___Gwinnett_____ COUNTY

Exquisite Delites Inc d/b/a Exquisite Delites Cat

Attorney's Address

Huggins Law Firm, LLC

110 Norcross St.

Roswell, GA 30075

_____ Plaintiff

VS.

Twin City Fire Insurance Company

Name and Address of Party to Served

Twin City Fire Insurance Company

Registered Agent: C T Corporation System

289 S. Culver St., Lawrenceville, GA 30046

_____ Defendant

_____ Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
I have this day served the defendant _____ personally with a copy
☐ of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____
copy of the action and summons at his most notorious place abode in this County.

☐ Delivered same into hands of _____
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
Served the defendant _Twin City Fire Insurance Company_ a corporation
☒ by leaving a copy of the within action and summons with _Jane Richardson_
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
☐ envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
☐ not to be found in the jurisdiction of this Court.

This _24_ day of _June_ , 20_23_.

DEPUTY

W. Coberly  S01332

Printed: 6/20/2023  1:43:18PM
By: alewis

Servee Count 1 of 1

# Gwinnett County Sheriff's Office
## Cover Sheet



**Sheriff #:**     23019515

**Person Served:**   TWIN CITY FIRE INSURANCE COMPANY
289 SOUTH CULVER STREET
LAWRENCEVILLE GA 30046
PHONE:

**Process Information:**

Date Received:     06/20/2023

Assigned Zone:     289 S. Culver          Court Case #:     23-A-05250-5

Expiration Date:                          Hearing Date:

Paper Types:       COMPLAINT

Notes/Alerts:

**Notes:**