# "<u>COMPOSITE EXHIBIT A</u>"

## *State Court Filings*



# PROCESS SERVER DELIVERY DETAILS

**Date:**                              Tue, Jun 20, 2023
**Server Name:**                       Drop Service

| Entity Served | CITIMORGAGE INC |
|---------------|-----------------|
| Case Number | 23-A-05230-11 |
| Jurisdiction | GA |

| Inserts | | |
|---------|---------|---------|
| | | |



SHERIFF'S ENTRY OF SERVICE

Civil Action No. 23-A-05230-11

Superior Court ☒    Magistrate Court ☐
State Court ☐    Probate Court ☐
Juvenile Court ☐

Date Filed _____ June 15, 2023 _____

Georgia, ____GWINNETT____ COUNTY

Nationstar Mortgage, LLC

Attorney's Address

Matthew F. Totten, The Totten Firm, LLC

_____
Plaintiff

2090 Dunwoody Club Dr. Ste 106-33

Atlanta, Georgia 30350

VS.

Name and Address of Party to Served

CitiMortgage, Inc.

CitiMortgage, Inc.

c/o CT Corp., registered agent
289 S. Culver Street

_____
Defendant

Lawrenceville, GA 30046

_____
Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____ by leaving a
☐ copy of the action and summons at his most notorious place abode in this County.

Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION** *Citimortge, inl.*
Served the defendant _____ a corporation
☒ by leaving a copy of the within action and summons with *Jene Richordson*
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
☐ envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
☐ not to be found in the jurisdiction of this Court.

This _29_ day of _June_, 20_23_.

*Lt. H.Ggin, SO 541*

DEPUTY

E-FILED IN OFFICE - KB
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-05230-11
6/15/2023 11:34 AM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**NATIONSTAR MORTGAGE, LLC**

_____

_____

_____

CIVIL ACTION
NUMBER: 23-A-05230-11 _____

PLAINTIFF

VS.

**CITIMORTGAGE, INC.**

_____

_____

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Matthew F. Totten
2090 Dunwoody Club Dr., Ste 106-33
Atlanta, GA 30350

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **15th** _____ day of **June** _____, 20**23** .

Tiana P. Garner
Clerk of Superior Court

By_____
Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

E-FILED IN OFFICE - KB
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-05230-11
6/15/2023 11:34 AM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

NATIONSTAR MORTGAGE, LLC,

      Plaintiff(s),

v.

CITIMORTGAGE, INC.,

      Defendant(s).

CIVIL ACTION FILE NO.  23-A-05230-11

### COMPLAINT

**COMES NOW**, NATIONSTAR MORTGAGE, LLC ("Nationstar" or "Plaintiff"), by and through its undersigned counsel, and files this Complaint against the above-named Defendant(s), respectfully showing this Court as follows:

1.

Defendant CITIMORTGAGE, INC. (hereinafter, "Citi") is a domesticated foreign corporation and can be served via its registered agent CT Corporation System, 289 S Culver Street, Lawrenceville, Gwinnett County, Georgia 30046. Citi is subject to the jurisdiction of this Court and venue is proper herein.

### STATEMENT OF FACTS

2.

On September 28, 1972, Corenthus J. Street Jr. ("Street") took title to the property commonly known as 2808 Elkhorn Drive, Decatur, Dekalb County, Georgia 30084 (the "Property") by virtue of that certain Warranty Deed recorded in Deed Book 2892, Page 483, Dekalb County, Georgia real property records. A true and accurate copy of said deed is attached hereto as **Exhibit A** and incorporated herein by reference.

3.

On October 25, 2006, in exchange for a loan in the principal amount of $82,000.00, Street conveyed as security an interest in the Property to Mortgage Electronic Registration Systems, Inc., as nominee for American Equity Mortgage, Inc., by virtue of that certain Security Deed recorded at Deed Book 19350, Page 541, Dekalb County, Georgia records (the "AEM Security Deed"). A true and correct copy of the AEM Security Deed is attached hereto as **Exhibit B** and incorporated herein by reference.

4.

Upon information and belief, the AEM Security Deed thereafter was serviced by CitiMortgage, Inc.

5.

Subsequently, on October 25, 2006, Street – in exchange for a loan in the principal amount of $64,000.00 – conveyed as security an interest in the Property to Mortgage Electronic Registration Systems, Inc., as nominee for American Equity Mortgage, Inc. by virtue of that certain Security Deed recorded at Deed Book 19350, Page 557, Dekalb County, Georgia records (the "Citi Security Deed"). A true and correct copy of the Citi Security Deed is attached hereto as **Exhibit C** and incorporated herein by reference.

6.

Upon information and belief, the Citi Security Deed thereafter was serviced by CitiMortgage, Inc.

7.

The Citi Security Deed was originated as a subordinate and junior security interest in the Property. *See, e.g.*, Exhibit C, p. 1, footer ("GEORGIA – SECOND MORTGAGE").

8.

The Citi Security Deed was subsequently assigned to Defendant by virtue of that certain assignment recorded at Deed Book 28793, Page 375, Dekalb County Georgia, records. True and correct copies of the referenced assignment is attached hereto as **Exhibit D** and incorporated by reference.

9.

On January 11, 2013, Street obtained a first-priority loan from Citibank, N.A. in the principal amount of $74,976.00 (the "Nationstar Loan").

10.

Upon information and belief, CitiMortgage, Inc. is a subsidiary or affiliated entity of Citibank, N.A. *See also* Exhibit G, attached hereto.

11.

As evidence of the Nationstar Loan, Street conveyed a first-priority interest in the Property to Mortgage Electronic Services, Inc., as nominee for Citibank, N.A. by virtue of that security deed dated January 11, 2013, and recorded in Deed Book 23596, Page 505, Dekalb County, Georgia real property records ("Nationstar Security Deed"). A true and correct copy of the Nationstar Security Deed is attached hereto as **Exhibit E** and incorporated by reference.

12.

The Nationstar Security Deed was ultimately assigned to Plaintiff by virtue of that certain assignment recorded at Deed Book 30749, Page 689, Dekalb County, Georgia real property records. A true and correct copy of the referenced assignment is attached hereto as **Exhibit F** and incorporated by reference.

13.

Contemporaneous to the origination and closing of the Nationstar Loan and Nationstar Security Deed, Defendant authorized and directed Mortgage Electronic Registration Systems, Inc. to execute a subordination of the Citi Security Deed to induce the funding and closing of the Nationstar Loan and Nationstar Security Deed. A copy of said subordination is attached hereto as **Exhibit G**.

14.

It was the intent of Defendant, and Plaintiff's predecessor in interest, that the Nationstar Security Deed be senior and first priority as to the Property, ahead of any interest of the Citi Security Deed. *See* Exhibit G.

15.

Said subordination, as executed by Mortgage Electronic Registration Systems, Inc. as agent and upon the authorization and direction of Defendant, omitted the requisite witnesses to permit said subordination to be recorded in the real property records of Dekalb County, Georgia and provide notice to the world.

16.

A properly executed subordination agreement was requested several times from Defendant, including contemporaneous to the closing of the Nationstar Security Deed, who nonetheless failed to provide a duly executed subordination to permit recording in the Dekalb County, Georgia real property records.

17.

At the time of closing of the Nationstar Security Deed, and as evidenced by the HUD-1 Settlement Statement (hereinafter, the "HUD-1"), $74,880.93 of the proceeds of the Nationstar

Loan were applied to satisfy and payoff the AEM Security Deed, as serviced by Defendant. A true and correct copy of the HUD-1 is attached hereto as **Exhibit H** and incorporated herein by reference.

18.

As further evidence of the payoff of the AEM Security Deed, the AEM Security Deed was subsequently cancelled of-record on February 11, 2013, at Deed Book 23570, Page 643, Dekalb County records. True and correct copies of the referenced cancellation is attached hereto as **Exhibit I** and incorporated by reference.

19.

The Nationstar Security Deed was intended to be a first-priority lien against the Property, superior to that interest of the Citi Security Deed.

20.

Upon information and belief, Defendant knew (or had constructive knowledge) of the Citi Security Deed being subordinate and junior to the Nationstar Security Deed.

21.

Notwithstanding the above, on September 6, 2022, Defendant foreclosed upon the Citi Security Deed, which sold to a third-party purchaser. *See* that certain Deed Under Power recorded at Deed Book 30595, Page 508, Dekalb County, Georgia records, as amended at Deed Book 30652, Page 736, Dekalb County, Georgia records, all attached hereto as **Exhibit J**.

22.

Despite the foregoing, Defendant failed to advertise, notice, conduct its foreclosure or record its Deed Under Power as being subject to the Nationstar Security Deed. *See* Exhibit J.

23.

Moreover, Defendant failed to notify Plaintiff of the asserted foreclosure sale prior to its occurrence.

## COUNT I
## WRONGFUL FORECLOSURE

24.

Plaintiff realleges and incorporates by reference the within and foregoing paragraphs of its Complaint as if fully restated herein.

25.

By virtue of the facts detailed above, Defendant owed a duty to Plaintiff, as successor to the Nationstar Security Deed, to conduct any foreclosure sale of the Citi Security Deed in a manner consistent with the subordination agreement executed by Mortgage Electronic Registration Systems, Inc. as agent and upon the authorization and direction of Defendant.

26.

By virtue of Defendant's actions, including its failure to advertise, notice, conduct its foreclosure or record its Deed Under Power as being subject to the Nationstar Security Deed, Defendant breached said duty.

27.

By virtue of Defendant's actions in conducting said foreclosure sale, as well as Defendant's failure to remit a duly executed subordination agreement to memorialize the same in the real property records of Dekalb County, Georgia, Plaintiff lost its senior, first priority interest in the Property.

28.

Due to the aforementioned, Plaintiff suffered damages in an amount represented by the liquidated sum pursuant to the payoff, in the amount of $78,770.32 through June 9, 2023,

attached hereto as **Exhibit K,** upon which interest accrued (and continues to accrue) at a rate of

4.0% APR in accordance with the terms of the Nationstar Note and Nationstar Security Deed.

*See also* Ex. H.

29.

Plaintiff is entitled to recover prejudgment interest at a rate of 4.0% APR, pursuant to

OCGA 7-4-15, in accordance with the terms of the Nationstar Security Deed and Nationstar

Loan.

**COUNT II**
**BREACH OF CONTRACT**

30.

Plaintiff realleges and incorporates by reference the within and foregoing paragraphs of

its Complaint as if fully restated herein.

31.

A contract exists between Defendant and Plaintiff, as successor to the Nationstar Security

Deed. *See* Exhibit G.

32.

Good and valuable consideration was extended in paying off the AEM Security Deed in

return for a subordination of the Citi Security Deed to the Nationstar Loan and first priority

Nationstar Security Deed.

33.

Defendant breached said contract in the manner it conducted the foreclosure of the Citi

Security Deed, including by failing to advertise, notice, or record its Deed Under Power as being

subject to the Nationstar Security Deed.

34.

Due to the aforementioned, Plaintiff suffered damages in an amount represented by its payoff, upon which interest continues to accrue in accordance with the terms of the Nationstar Note and Nationstar Security Deed. *See* Exhibit K.

35.

Plaintiff is entitled to recover prejudgment interest at a rate of 4.0%, pursuant to OCGA 7-4-15, in accordance with the terms of the Nationstar Security Deed and Nationstar Loan.

## COUNT III
## PUNITIVE DAMAGES

36.

Plaintiff realleges and incorporates by reference the within and foregoing paragraphs of its Complaint as if fully restated herein.

37.

As stated above, Defendant's actions evidenced willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

38.

Defendant acted, or failed to act, with the specific intent to cause harm to Plaintiff.

39.

Plaintiff resultingly is entitled to punitive damages in accordance with OCGA 51-12-5.1.

WHEREFORE, Plaintiff NATIONSTAR MORTGAGE, LLC prays for relief as follows:

(a) That the Court award damages to Plaintiff due to Defendant's wrongful foreclosure in the amount of $78,770.32 as of June 9, 2023, as consistent with the payoff attached hereto as an Exhibit;

(b) That the Court award damages to Plaintiff due to Defendant's breach of contract in

the amount of $78,770.32 through June 9, 2023, as consistent with the payoff

attached hereto as an Exhibit;

(c) That Plaintiff is entitled to prejudgment interest on said liquidated sum;

(d) That this Court award Plaintiff punitive damages; and

(e) For such other and further relief as the Court deems just and proper.

Respectfully submitted this 15th day of June, 2023.

**THE TOTTEN FIRM, LLC**

2090 Dunwoody Club Dr., Suite 106-33
Atlanta, Georgia 30350
Telephone: (404) 692-4342
Email: mft@tottenfirm.com

/s Matthew F. Totten
Matthew F. Totten
Georgia Bar No. 798589
*Attorney for Plaintiff*

# EXHIBIT A



# Lawyers Title Insurance Corporation

### ATLANTA BRANCH OFFICE

## WARRANTY DEED

GEORGIA STATE OFFICE
TITLE BUILDING
ATLANTA 3, GEORGIA

### STATE OF GEORGIA          COUNTY OF FULTON

THIS INDENTURE, Made the   28th   day of   September   in the year one thousand nine hundred seventy-two   between

### HARLEY L. GILES

of the County of  DeKalb                and State of Georgia, as party or parties of the first part, hereinafter called Grantor, and

### COPENTHUS J. STREET, JR.

as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of
TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION   ($10.00   )DOLLARS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

All that tract or parcel of land lying and being in Land Lot 105 of the 15th District of DeKalb County, Georgia, being Lot 1 in Block "C" of Unit IV of Ashton Manor, as per plat recorded in Plat Book 45, page 123, DeKalb County Records and being known as No. 2808 Elkhorn Drive according to the present system of naming streets and numbering houses in DeKalb County, Georgia, as more fully shown on a plat of individual survey prepared by Samuel G. Evans, Jr., Registered Land Surveyor and dated September 28, 1972.

Ga. Real Property Tax
$ 32.00
Paid 10-4-72
_Doris Wells_
Dep. Clerk DeKalb Sup. Ct.

FILED & RECORDED
DEKALB CO., GA.
OCT 4   3 49 PM '72
_Eugene Fincher_   Clerk

BOOK 2892 PAGE 483

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered in presence of :

_____    _____ (Seal)
                                  HARLEY L. GILES

_____    _____ (Seal)

                                  _____ (Seal)

Notary Public, Georgia, State at Large
My Commission Expires Aug. 23, 1975

BOOK 2892 PAGE 484

# EXHIBIT B

Return To:
American Equity Mortgage, Inc.
11933 Westline Industrial Drive, St. Louis, MO 63146

After Recording, Return to:
Professional Escrow Services, LLC
900 Circle 75 Pkwy., Ste. 1430
Atlanta, GA 30339
(770) 690-8569  (770) 690-9554

37134 GAP-G9

Prepared By:
American Equity Mortgage, Inc.

Deed Book 19350 Pg 541
Filed and Recorded Nov-09-2006 12:07pm
2006-0208806
Georgia Intangible Tax Paid $246.00
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

——————————[Space Above This Line For Recording Data]——————————

# SECURITY DEED

MIN 100267400005694425

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 25, 2006 , together with all Riders to this document.
(B) "Borrower" is
CORENTHUS J. STREET, JR., Sole Owner

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2006-07-24009

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011  1/01

VMP-6A(GA) (0005).02
Page 1 of 14          Initials: _____

VMP Mortgage Solutions, Inc.

Deed Book 19350 Pg 542

(D) "Lender" is American Equity Mortgage, Inc.

Lender is a Corporation
organized and existing under the laws of The State of Missouri
Lender's address is
11933 Westline Industrial Drive, St. Louis, MO 63146
(E) "Note" means the promissory note signed by Borrower and dated October 25, 2006
The Note states that Borrower owes Lender
Eighty Two Thousand  and 00/100ths                                         Dollars
(U.S. $82,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 01, 2036.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower (check box as applicable):

[ ] Adjustable Rate Rider    [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] V.A. Rider               [ ] Biweekly Payment Rider     [X] Other(s) (specify)
                                                            SEE EXHIBIT "A"

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

2006.07.24009#

Deed Book 19350 Pg 543

in this Security Instrument. "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY.

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the

County,                                             of DeKalb
        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE EXHIBIT A

Parcel ID Number: 15-105-01-064                    which currently has the address of
2808 ELKHORN DR                                                         [Street]
Decatur                                    [City], Georgia 30034-0000 [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

2006-07-24009

-6A(GA) (0005).02                      Page 3 of 16                      Form 3011  1/01

Deed Book 19350 Pg 544

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

2006.07.24009

Deed Book 43350 Pg 545

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

2006-07-24009

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

2006-07-24009

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

2006-07-24009

Deed Book 19350 Pg 548

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

2006-07-24009

GA(GA) (0008) 02          Page 8 of 14          Initials          Form 3011 1/01

(b) Any such agreements will not affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Deed Book 19350 Pg 550

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

2006-07-24009

VMP®-6A(GA) (0005.01)                    Page 10 of 14                    Form 3011  1/01

Deed Book 19350 Pg 551

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

2006-07-24009

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by, reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law; (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

2006-07-24009

GA(GA) (0003) 02          (Page 12 of 14)          Form 3011, 1/01

Deed Book 19350 Pg  553

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

2006-07-24009

Initials: _____

Page 13 of 14

Form 3011  1/01

Deed Book 19350 Pg 554

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)      _____ (Seal)
CORENTHUS J. STREET, JR.  -Borrower      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

**STATE OF GEORGIA,**          County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____ Fulton
Notary Public,        County
State of Georgia

I, NICOLE KING
Notary Public, State of Georgia
Fulton County
My Commission Expires
September 13, 2010

2006-07-24009

-6A(GA) (0005).01      Page 14 of 14      Form 3011 1/01

Deed Book 19350 Pg 555

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 105 OF THE 15TH DISTRICT OF DEKALB COUNTY, GEORGIA, BEING LOT 1 IN BLOCK "C" OF UNIT IV OF ASHTON MANOR, AS PER PLAT RECORDED IN PLAT BOOK 45, PAGE 123, DEKALB COUNTY RECORDS AND BEING KNOWN AS NO. 2808 ELKHORN DRIVE ACCORDING TO THE PRESENT SYSTEM OF NAMING STREETS AND NUMBERING HOUSES IN DEKALB COUNTY, GEORGIA, AS MORE FULLY SHOWN ON A PLAT OF INDIVIDUAL SURVEY PREPARED BY SAMUEL G. EVANS, JR., REGISTERED LAND SURVEYOR AND DATED SEPTEMBER 28, 1972.

Deed Book 19350 Pg 556
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

Grantor: CORENTHUS J. STREET, JR.
Lender: American Equity Mortgage, Inc.

Date of Security: October 25, 2006

Loan Number: 2008-07-24009

## WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) Acknowledges the right to accelerate the debt and the Power of Attorney given herein to Lender to sell the premises by Nonjudicial Foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof; (2) Waives any and all rights which the Grantor may have under this Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several states or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notices as is specifically required to be provided hereof; (3) acknowledges that Grantor has read this Security Deed and specifically this paragraph and any and all questions regarding the legal effect of said Security Deed and its Provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this Security Deed; (4) acknowledges that all waiver of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor, as part of a bargained for loan transaction; and (5) agrees that the provisions hereof are incorporated into and made a part of this Security Deed.

Read and agree by Grantor: CORENTHUS J. STREET, JR.

Signed, Sealed and delivered
in the presence of:

_____            _____ (Seal)
Unofficial Witness

_____                                                     (Seal)
Notary Public                              J. NICOLE KING
                                           Notary Public, State of Georgia
County of   Fulton                         Fulton County
                                           My Commission Expires
My Commission Expires:   9/13/2010         September 13, 2010

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and, particularly the provision thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower(s) rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights." Based on said review with an explanation of the Borrower(s) it is my opinion that the Borrower(s) knowingly, intentionally, and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

_____            _____   10/25/06
Notary Public                              Closing Attorney                  Date

                                           J. KEVIN KING
                                           Notary Public, State of Georgia
                                           County of Cobb
                                           My Commission Expires June 1, 2010

# EXHIBIT C

Deed Book **19350** Ps **557**
Filed and Recorded Nov-09-2006 12:07pm
**2006-0208807**
Georgia Intangible Tax Paid $192.00
**Linda Carter**
Clerk of Superior Court
DeKalb County, Georgia

After Recordation Return to:
American Equity Mortgage, Inc.

11933 Westline Industrial Drive
St. Louis, MO 63146

(314) 878-9999

After Recording, Return to:
Professional Escrow Services, LLC
900 Circle 75 Pkwy., Ste. 1430
Atlanta, GA 30339
(770) 690-8559   (770) 690-9654

37142GAP-G9

---

| SECURITY DEED | MIN 100267400005718182 |

THIS DEED is made this 25th                day of October, 2006                           , between the Grantor,
**CORENTHUS J. STREET, JR., Sole Owner**

(herein "Borrower"), and the Grantee,
Mortgage Electronic Registration Systems, Inc., ("MERS"), solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
American Equity Mortgage, Inc.

("Lender") is organized and existing under the laws of The State of Missouri
and has an address of 11933 Westline Industrial Drive
St. Louis, MO 63146                                                                                     ,

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $64,000.00                          ,
which indebtedness is evidenced by Borrower's note dated October 25, 2006
and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on November 01, 2036                          ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all
other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed to Secure Debt; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to MERS,
(solely as nominee for Lender and Lender's successors and assigns), and the successors and assigns of MERS, with power of
sale, the following described property located in the County of DeKalb
                                                                                        , State of Georgia:

**SEE EXHIBIT A**

which has the address of 2808 ELKHORN DR                                                          [Street]
Decatur                                      [City,] Georgia 30034-0000      [ZIP Code] (herein "Property Address");

2006-07-24105

| GEORGIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS |

**-76N(GA)** (0307).02     Form 3811
Page 1 of 4                Amended 7/02
           VMP Mortgage Solutions, Inc.      Initials: ___

Deed Book 19350 Pg 558

TO HAVE AND TO HOLD such property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Deed, and all of the foregoing, together with said property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal of and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender, on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior security deed, mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Deeds of Secure Debt; Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

2006-07-24105

76NIGAI (03375.02)                    Page 2 of 4                    Form 3811

Deed Book 19350 Pg 559

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Deed granted by Lender to any successor in interest of Borrower shall not operate to release in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note, (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed, (b) is not personally liable on the Note or under this Deed, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Deed at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Deed. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Deed.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Deed. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Deed without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted (and Borrower hereby appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto. The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

2006-07-24105



Deed Book 19350 Pg 560

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed or (ii) entry of a judgment enforcing this Deed if: (a) Borrower pays Lender all sums which would be then due under this Deed and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Deed, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed shall continue unimpaired. Upon such payment and cure by Borrower, this Deed and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignments of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. Lender and the receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Deed, Lender shall cancel this Deed without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Waiver of Homestead. Borrower hereby waives all right of homestead exemption in the Property.

22. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

23. Deed to Secure Debt. This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

REQUEST FOR NOTICE OF DEFAULT AND<br>
FORECLOSURE UNDER SUPERIOR SECURITY<br>
DEEDS, MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Deed to give Notice to Lender, at Lender's address set forth on page one of this Security Deed, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, BORROWER has executed and sealed this Deed.

_____ (Seal)                    _____ (Seal)
CORENTHIUS J. STREET, JR.        -Borrower                                    -Borrower


_____ (Seal)                    _____ (Seal)
                                 -Borrower                                    -Borrower


_____ (Seal)                    _____ (Seal)
                                 -Borrower                                    -Borrower


_____ (Seal)
                                 -Borrower


                                                              [Sign Original Only]


STATE OF GEORGIA,
    Signed, sealed and delivered in the presence of:          County, ss:


                                                    _____
                                                        Unofficial Witness


I. NICOLE KING
Notary Public, State of Georgia
Fulton County
My Commission Expires
September 13, 2010                                  _____      Fulton
                                                        Notary Public            County
                                                        State of Georgia


                              2006-07-24105
76N(GA) (0001) 02                Page 4 of 4                              Form 3811

Deed Book 19350 Pg 561

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 105 OF THE 15TH DISTRICT OF DEKALB COUNTY, GEORGIA, BEING LOT 1 IN BLOCK "C" OF UNIT IV OF ASHTON MANOR, AS PER PLAT RECORDED IN PLAT BOOK 45, PAGE 123, DEKALB COUNTY RECORDS AND BEING KNOWN AS NO. 2808 ELKHORN DRIVE ACCORDING TO THE PRESENT SYSTEM OF NAMING STREETS AND NUMBERING HOUSES IN DEKALB COUNTY, GEORGIA, AS MORE FULLY SHOWN ON A PLAT OF INDIVIDUAL SURVEY PREPARED BY SAMUEL G. EVANS, JR., REGISTERED LAND SURVEYOR AND DATED SEPTEMBER 28, 1972.

THE DERIVATION OF SAME BEING:

The same being property conveyed by Deed executed by HARLEY L. GILES, on 9-28-1972, as recorded on 10-4-1972 at Book/Liber 2892, Page/Folio 403, in the land records of DEKALB COUNTY.

Parcel Identification Number: 15-105-01-064

Deed Book 19350 Pg 562
Linda Carter
Clerk of Superior Court
DeKalb County Georgia

Grantor: CORENTHUS J. STREET, JR.
Lender: American Equity Mortgage, Inc.

Date of Security: October 25, 2006          Loan Number: 2006-07-24105

## WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) Acknowledges the right to accelerate the debt and the Power of Attorney given herein to Lender to sell the premises by Nonjudicial Foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof (2) Waives any and all rights which the Grantor may have under the Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several states or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notices as is specifically required to be provided hereof; (3) acknowledges that Grantor has read this Security Deed and specifically this paragraph and any and all questions regarding the legal effect of said Security Deed and its Provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this Security Deed; (4) acknowledges that all waiver of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargained for loan transaction; and (5) agrees that the provisions hereof are incorporated into and made a part of this Security Deed.

Read and agree by Grantor: CORENTHUS J. STREET, JR.

Signed, Sealed and delivered
in the presence of:

_____           _____ (Seal)
Unofficial Witness

_____ (Seal)
Notary Public

County of _____

My Commission Expires _9/13/2010_

    I, NICOLE KING,
    Notary Public, State of Georgia
    Fulton County
    My Commission Expires
    September 13, 2010

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provision thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure, under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower(s) rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights." Based on said review with an explanation of the Borrower(s) it is my opinion that the Borrower(s) knowingly, intentionally, and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

_____          _____  10/25/06
Notary Public                     Closing Attorney          Date

    NOTARY
    PUBLIC
    COBB COUNTY
    KEVIN KING

J. KEVIN KING,
Notary Public, State of Georgia
County of Cobb
My Commission Expires June 17, 2010

# EXHIBIT D

**2020161854 DEED BOOK 28793 Pg 375**
**Filed and Recorded: 11/6/2020 9:29:00 PM**
**Recording Fee: $25.00**
**Prepared By:**
**5224125492**
**7067927936**
**Debra DeBerry**
**Clerk of Superior Court**
**DeKalb County, Georgia**

When Recorded Return To:
Cenlar FSB C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

PIN#: 15 105 01 064

## ASSIGNMENT OF SECURITY DEED

Regarding this instrument, contact Cenlar FSB. 425 Phillips Blvd, Ewing, NJ 08618, telephone # 1-800-223-6527, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS GRANTEE, AS NOMINEE FOR AMERICAN EQUITY MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DR, O'FALLON, MO 63368 (855)839-6253, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Security Deed is executed by CORENTHUS J. STREET, JR. SOLE OWNER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR AMERICAN EQUITY MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS and recorded in Deed Book 19350, Page 557 and Instrument # 2006-0208807 in the office of the Clerk of the Superior Court of DEKALB County, Georgia.

IN WITNESS WHEREOF, the undersigned has hereunto set its hand this 06th day of November in the year 2020.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS GRANTEE, AS NOMINEE FOR AMERICAN EQUITY MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS

By: _____
LINDSIE GRACE
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and delivered on the date above and in the presence of:

_____
MARISSA LOPEZ
WITNESS

STATE OF FLORIDA    COUNTY OF PINELLAS
Sworn to (or affirmed) and subscribed before me by means of [X] physical presence or [ ] online notarization on this 06th day of November in the year 2020, by Lindsie Grace as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS GRANTEE, AS NOMINEE FOR AMERICAN EQUITY MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS. He/she is personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument.



VALERA KRISTOF
COMM EXPIRES: 09/19/23

VALERA KRISTOF
NOTARY PUBLIC
STATE OF FLORIDA
COMM GG 914976
EXPIRES: 09/19/2023

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CENAV 417962603  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)  DEFAULT
MIN 100267400005718182 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T062011-08:09:33 [C-1]  EFRMGA1



*D0062905795*

# EXHIBIT E

Recording Requested By & Return To:
Chicago Title ServiceLink Division
4000 Industrial Blvd.
Aliquippa, PA 15001  2441480-1

Prepared By:  AARON WILLIAMS
Citibank, N.A.
1000 Technology Drive
MS 945
O' Fallon, MO  63368-2240

2013041056     DEED BOOK 23596 Pg 505
Georgia Intangible Tax Paid $226.00
Filed and Recorded
2/24/2013 10:46:30 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

——————————————— [Space Above This Line For Recording Data] ———————————————

## SECURITY DEED

MIN   100011511232815754

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   January 11, 2013
together with all Riders to this document.
(B) "Borrower" is CORENTHUS J. STREET JR.

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

001123281575                                                    Citibank 3.2.65.07 V4
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3011 1/01
-6A(GA) (0005).02
Page 1 of 14                        Initials: CJS
VMP Mortgage Solutions, Inc.



DEED BOOK 23596 P 506

(D) "Lender" is Citibank, N.A.

Lender is a Corporation
organized and existing under the laws of the United States
Lender's address is 1000 Technology Drive O'Fallon, MO 63368-2240

(E) "Note" means the promissory note signed by Borrower and dated January 11, 2013.
The Note states that Borrower owes Lender Seventy Four Thousand Nine Hundred Seventy Six

Dollars
(U.S. $ 74,976.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  February 1, 2043
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Schedule "A"
EXHIBIT

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

001123381573                                                     Citibank 3.2.65.07 V4
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
☐ -6A(GA) (0810)                          (Page 2 of 14)            Initials: CPL            Form 3011 1/01

DEED BOOK 23596 Ps 507

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the
County                                    of  Dekalb
[Type of Recording Jurisdiction]               [Name of Recording Jurisdiction]
See Attached Legal

Parcel ID Number:                                    which currently has the address of
2808 ELKHORN DR.                                                     [Street]
DECATUR                              [City], Georgia  30034-2824   [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
001123281575                                          Citibank 3.2.65.07 V4
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(GA) (0810)                     Page 3 of 16                          Form 3011  1/01

DEED BOOK 25595 P 508

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

DEED BOOK 23598 PG 510

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

00112328157S                                        Citibank 3.2.65.07 V4
GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
–6A(GA) (0810)                          Page 6 of 14                          Form 3011 1/01

DEED DOOK 23594 P 511

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

001123281575
GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
6A(GA) (0810)                Page 7 of 14                Form 3011 1/01
Citibank 3.1.65.07 V4

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

001123281575

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Citibank 3.2.63.07 V4
-6A(GA) (0810)                                                    Page 9 of 16          Initials: ___          Form 3011 1/01

DEED BOOK 23596 P: 513

(b) Any such agreements will not affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

00112328157S
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(GA) (0810)                     Page 9 of 14                     Initials                     Form 3011  1/01

Citibank 3.2.65.07 V4

DEED BOOK 23596 Pg 514

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

001125281575                                                                    Citibank 3.2.65.07 V4
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(GA) (0810)                              Page 10 of 14                              Form 3011 1/01

DEED BOOK 23596 PG 515

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

001123281575

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Citibank 3.2.65.07 V4

-6A(GA) (0810)          Page 11 of 14          Form 3011 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

001123281575

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(GA) (0810)                Page 17 of 14                Form 3011  1/01

Citibank 3.2.63.07 V4

DEED BOOK 22596 Pg 517

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

001123281575
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
GA10-6A(GA) (0810)                                      Page 13 of 14                    Initials _____          Form 3011 1/01

Citibank 3.2.65.07 V4

DEED BOOK 23593 Pg 518

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
-Borrower

**CORENTHUS J. STREET Jr.**
(Sign Original Only)

STATE OF GEORGIA,
Signed, sealed and delivered in the presence of:

DEKALB County ss:

_____
Unofficial Witness
Deloris O. Street

_____
Notary Public,
State of Georgia

CCBB County

JILL E. POPE
NOTARY PUBLIC
Cobb County
State of Georgia
My Comm. Expires March 6, 2015

001123281575
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
G3225-6A(GA) (0810)                Page 14 of 14

Citibank 3.2.65.07 V4
Form 3011 1/01

DEED BOOK 23596 Pg 519
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia
Commitment No. 20998431

## LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF DEKALB, STATE OF GEORGIA AND IS DESCRIBED AS FOLLOWS:

ALL THAT PARCEL OF LAND IN LAND LOT 105, OF THE 15TH DISTRICT OF DEKALB COUNTY, STATE OF GEORGIA, AS DESCRIBED IN DEED BOOK 2891, PAGE 483, ID# 15-105-01-064, BEING KNOWN AND DESIGNATED AS:

LOT 1 IN BLOCK C OF UNIT IV OF ASHTON MANOR, AS PER PLAT RECORDED IN PLAT BOOK 45 PAGE 123 DEKALB COUNTY RECORDS AND BEING KNOWN AS NO. 2888 ELKHORN DRIVE ACCORDING TO THE PRESENT SYSTEM OF NAMING STREETS AND NUMBERING HOUSES IN DEKALB COUNTY GEORGIA AS SHOWN ON A PLAT OF INDIVIDUAL SURVEY PREPARED BY SAMUEL G EVANS, JR. REGISTERED LAND SURVEYOR AND DATED 9/28/1971.

MORE COMMONLY KNOWN AS: 2808 ELKHORN DR, DECATUR, GA 30034.

# EXHIBIT F

2023008543 DEED BOOK 30749 Pg 689
Filed and Recorded: 1/30/2023 12:58:00 PM
Recording Fee: $25.00
Prepared By:
0727387522
7067927936

Recording Requested By: NATIONSTAR MORTGAGE DBA MR. COOPER
When Recorded Return To: Douglas Keaton, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS
WATERS BLVD, COPPELL, TX 75019

### CORPORATE ASSIGNMENT OF SECURITY DEED

DeKalb, Georgia
SELLER'S SERVICING #:******8898 "STREET"

MIN #: 100011511232815754 SIS #: 1-888-679-6377

Date of Assignment: January 25th, 2023
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR
CITIBANK N.A., ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019.

Executed By: CORENTHUS J. STREET JR. To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
GRANTEE, AS NOMINEE FOR CITIBANK, N.A., ITS SUCCESSORS AND ASSIGNS
Date of Security Deed: 01/11/2013 Recorded: 02/25/2013 In Book/Reel/Liber: 23596 Page/Folio: 505 as
Instrument No.: 2013041056 In the County of DeKalb, State of Georgia.

Parcel ID No.: 15-105-01-084

Property Address: 2808 ELKHORN DR, DECATUR, GA 30034-2824

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Security Deed having an original principal sum of $74,976.00 with interest, secured thereby, and the full benefit of all
the powers and all all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject
to the terms contained in said Security Deed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CITIBANK N.A.,
ITS SUCCESSORS AND ASSIGNS
On January 25th, 2023

By: _____
TEREFE TEKLE, Vice-President

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS
_____
   Elisha Thompson

*BM1*BM1NATT*01/25/2023 09:16:29 AM* NATT01NATTA0000000000000004722232* GADEKAL* *****8898 GASTATE_MORT_ASSIGN_ASSN **DK8NATT*

2023008543  DEED BOOK 30749 Pg 690
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

NOTARY WITNESS

STATE OF Texas
COUNTY OF Denton

Subscribed and sworn to (or affirmed) before me on January 25th, 2023, by TEREFE TEKLE, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal.

VALENCIA METCALF
Notary Expires: 02/28/2023

VALENCIA METCALF
Notary Public, State of Texas
Comm. Expires 02-28-2023
Notary ID 128635414

VALENCIA METCALF
Notary Public, State of Texas
Comm. Expires 02-28-2023
Notary ID 128635414

(This area for notarial seal)

# EXHIBIT G

*Street*
*cc1123281575*
*service Link*

_____Space Above This Line for Recorder's Use Only_____

Recording Request By:

And When Recorded Mail To:
Prepared by: Pamela Shefferd
Citibank, N.A.
1000 Technology Dr. MS 321
O'Fallon, MO 63368
866-795-4978

MERS MIN #    100267400005718182
MERS, Inc S.I.S. #    1-888-679-6377

Account #  2003921055

A.P.N: _____.        Order No:_____.        Escrow No:_____.

### SUBORDINATION OF LIEN

WHEREAS, **Mortgage Electronic Registration Systems, Inc.,** which is acting solely as a nominee for: MERS INC, nominee for Citibank N.A.
whose address is 1901 E. Voorhees Street, Suite C, Danville, IL 61834 P.O. Box, 2026, Flint, Michigan 48501-2026 and holder of a mortgage dated  October   25th    2006 recorded November   9th    2006   book   19350
page    557    , As Instrument _____, And herein referred to as "Existing Mortgage" in the amount of $    64,000.00    ;

WHEREAS,    Corenthus J. Street, JR.    and _____, as owners of said property desire to refinance the first lien of said property;

WHEREAS, it is necessary that the new lien to _____ Citibank N.A. _____, its successor and/or assigns which secures a note in the amount not to exceed $   78,941.00    hereinafter referred to as "New Mortgage", be a first lien on the premises in question;

WHEREAS, **Mortgage Electronic Registration Systems, Inc** (the "Mortgagee") of "Existing Mortgage" and (the "Lender") of "Existing Mortgage" is willing to subordinate the lien of the "Existing Mortgage" to the lien of the "New Mortgage";

**ACKNOWLEDGMENT – GENERAL**

STATE OF  Missouri                          )
County of  Saint Charles               ) ss.

On    December 27, 2012    before me,    Lisa G. Evans                    , Notary Public,

personally appeared    Becky L. Staton                                      , who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledgement to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/she/they signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                Lisa G. Evans                        - Notary

```
LISA G. EVANS
Notary Public - Notary Seal
State of Missouri
Commissioned for Lincoln County
My Commission Expires: December 08, 2014
Commission Number: 10430650
```

**ATTENTION NOTARY:** Although the information requested below is OPTIONAL, it could
prevent fraudulent attachment of this certificate to another document.

THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED BELOW.

Title of Document Type _____    Subordination Mers BAU _____

Number of Pages ___3___  Date of Document _____ December 27, 2012 _____

Signer(s) Other Than Names Above _____

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc. hereby subordinates the lien of its "Existing Mortgage" to the lien of the "New Mortgage", so that the "New Mortgage" will be prior in all respects and with regard to all funds advanced hereunder to the lien of the "Existing Mortgage".

IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc has executed this subordination of lien this __27th__ day of ___December___, __2012__.

**Mortgage Electronic Registration Systems, Inc.**

BY: _Becky L Staton_
    Becky L. Staton,    Assistant Secretary

BY: _____      BY: _____
                   , Witness                      , Witness

STATE OF                        )
County of                     ) Ss.

On this _____ day of _____, _____ before me, a Notary Public in the state of _____, personally appeared _____, to me personally known, who being by me duly sworn or affirmed did say that person is _____, and that said instrument was signed on behalf of the said corporation by the said _____, who acknowledged the execution of the said instrument to be the voluntary act and deed of said corporation by it voluntary executed.

_____
– Notary Public

STATE OF Missouri                   )
County of    Saint Charles.           ) Ss.

On the __27th__ day of ___December___, __2012__ before me, the undersigned, a Notary Public in and for said County and State, personally appear ___Becky L. Staton___, ___Assistant Secretary___ of **Mortgage Electronic Registration Systems, Inc.**, known to me to be the person who executed the within Subordination of the Lien in behalf of said corporation and acknowledged to me that she executed the same for the purposes therein stated.

_Lisa G. Evans_
    Lisa G. Evans      – Notary Public

> LISA G. EVANS
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for Lincoln County
> My Commission Expires: December 08, 2014
> Commission Number: 10430650

# EXHIBIT H



**A. Settlement Statement (HUD -1)**

9450

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1. ☐ FHA  2. ☐ RHS  3. ☑ Conv. Unins.  4. ☐ VA  5. ☐ Conv. Ins. | 6. File Number: ████507 | 7. Loan Number: ████0 575 | 8. Mortgage Insurance Case Number: | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name & Address of Borrower: CORENTHIUS J. STREET JR. 2808 ELKHORN DR, DECATUR, GA. 30034 | E. Name & Address of Seller: | F. Name & Address of Lender: CITIBANK, N.A. 1000 TECHNOLOGY DRIVE, O FALLON, MO, 83368 |
|---|---|---|
| G. Property Location: 2808 ELKHORN DR, DECATUR, GA, 30034 | H. Settlement Agent: MCDONNELL & ASSOCIATES, PA 2442 Devine Street, Columbia, SC 29205 Phone # 800-439-5451 | I. Settlement Date: 01/11/2013 Disbursement Date: 01/18/2013 |
| | Place of Settlement: 2541 GLENVALLEY, DECATUR, GA. 30034 | |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. CONTRACT SALES PRICE | | 401. CONTRACT SALES PRICE | |
| 102. PERSONAL PROPERTY | | 402. PERSONAL PROPERTY | |
| 103. SETTLEMENT CHARGES TO BORROWER (LINE 1400) | $761.65 | 403. | |
| 104. PAYOFF TO CITIMORTGAGE, INC. | $74,880.93 | 404. | |
| 105. | | 405. | |
| ADJUSTMENT FOR ITEMS PAID BY SELLER IN ADVANCE | | ADJUSTMENT FOR ITEMS PAID BY SELLER IN ADVANCE | |
| 106. | | 406. | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | $75,642.58 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. DEPOSIT OR EARNEST MONEY | | 501. EXCESS DEPOSIT (SEE INSTRUCTIONS) | |
| 202. PRINCIPAL AMOUNT OF NEW LOAN(S) | $74,976.00 | 502. SETTLEMENT CHARGES TO SELLER (LINE 1400) | |
| 203. EXISTING LOAN(S) TAKEN SUBJECT TO | | 503. EXISTING LOAN(S) TAKEN SUBJECT TO | |
| 204. LENDER TOLERANCE | $19.96 | 504. | |
| 205. | | 505. | |
| 206. OLD ESCROW ACCOUNT BALANCE | $646.62 | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| ADJUSTMENT FOR ITEMS UNPAID BY SELLER | | ADJUSTMENT FOR ITEMS UNPAID BY SELLER | |
| 210. | | 510. | |
| 211. | | 511. | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | $75,642.58 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM / TO BORROWER | | 600. CASH AT SETTLEMENT TO / FROM SELLER | |
| 301. GROSS AMOUNT DUE FROM BORROWER (LINE 120) | $75,642.58 | 601. GROSS AMOUNT DUE TO SELLER (LINE 420) | |
| 302. LESS AMOUNTS PAID BY/FOR BORROWER (LINE 220) | $75,642.58 | 602. LESS REDUCTION AMOUNT DUE SELLER (LINE 520) | |
| 303. CASH  ☐ FROM  ☑ TO BORROWER | | 603. CASH  ☐ FROM  ☐ TO SELLER | |

FILE NUMBER: ___5507

**L. SETTLEMENT CHARGES**

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700.** TOTAL REAL ESTATE BROKER FEES | | | |
| DIVISION OF COMMISSION (LINE 700) AS FOLLOWS: | | | |
| 701. $            TO | | | |
| 702. $            TO | | | |
| 703. COMMISSION PAID AT SETTLEMENT | | | |
| 704. | | | |
| **800.** ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. OUR ORIGINATION CHARGE  $75.00 | (FROM GFE #1) | | |
| 802. YOUR CREDIT OR CHARGE (POINTS) FOR THE SPECIFIC INTEREST RATE CHOSEN ($1,118.54) | (FROM GFE #2) | | |
| 803. YOUR ADJUSTED ORIGINATION CHARGES  TO  CITIBANK, N.A. | (FROM GFE A) | ($1,043.54) | |
| 804. APPRAISAL FEE | (FROM GFE #3) | | |
| 805. CREDIT REPORT  TO  EQUIFAX (CMI CREDIT REPORT) | (FROM GFE #3) | $2.25 | |
| 806. TAX SERVICE  TO  CORELOGIC | (FROM GFE #3) | $29.00 | |
| 807. FLOOD CERTIFICATION  TO  CORELOGIC | (FROM GFE #3) | $3.25 | |
| 808. GEORIGA PER LOAN FEE  TO  CITIBANK, N.A. | | $10.00 | |
| **900.** ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. DAILY INTEREST CHARGES  FROM 01/18/2013 TO 02/01/2013 @ $8.22 /day | (FROM GFE #10) | $131.52 | |
| 902. MORTGAGE INSURANCE PREMIUM @ $0.00 FOR 0 MONTHS | (FROM GFE #3) | | |
| 903. HOMEOWNER'S INSURANCE @ $0.00 FOR       YEARS | (FROM GFE #11) | | |
| 904. | | | |
| **1000.** RESERVES DEPOSITED WITH LENDER | | | |
| 1001. INITIAL DEPOSIT FOR YOUR ESCROW ACCOUNT  TO  CITIBANK, N.A. | (FROM GFE #9) | $510.17 | |
| 1002. HOMEOWNER'S INSURANCE 7 MONTHS  @ $68.75 PER MONTH $488.25 | | | |
| 1003. MORTGAGE INSURANCE | | | |
| 1004. PROPERTY TAXES 6 MONTHS  @ $31.94 PER MONTH $191.65 | | | |
| 1005. | | | |
| 1006. | | | |
| 1007. AGGREGATE ADJUSTMENT ($69.73) | | | |
| **1100.** TITLE CHARGES | | | |
| 1101. TITLE SERVICES AND LENDER'S TITLE INSURANCE | (FROM GFE #4) | $740.00 | |
| 1102. SETTLEMENT OR CLOSINGS FEE TO  MCDONNELL& ASSOCIATES  $65.00 | | | |
| 1103. OWNER'S TITLE INSURANCE | (FROM GFE #5) | | |
| 1104. LENDER'S TITLE INSURANCE  TO  SERVICELINK  $320.00 | | | |
| 1105. LENDER'S TITLE POLICY LIMIT  $74,976.00 | | | |
| 1106. OWNER'S TITLE POLICY LIMIT | | | |
| 1107. AGENT'S PORTION OF THE TOTAL TITLE INSURANCE PREMIUM  $281.60 | | | |
| 1108. UNDERWRITER'S PORTION OF THE TOTAL TITLE INSURANCE PREMIUM  $38.40 | | | |
| 1109. CLOSING COORDINATION FEE TO SERVICELINK  $355.00 | | | |
| **1200.** GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. GOVERNMENT RECORDING CHARGES | (FROM GFE #7) | $54.00 | |
| 1202. DEED $0.00 MORTGAGE $38.00 RELEASE $0.00 OTHER $0.00 | | | |
| 1202. TRANSFER TAXES | (FROM GFE #8) | $225.00 | |
| 1204. CITY/COUNTY TAX/STAMPS  DEED $0.00 MORTGAGE $0.00 | | | |
| 1205. STATE TAX/STAMPS  DEED $0.00 MORTGAGE $225.00 | | | |
| 1206. SUBORDINATION  $16.00 | | | |
| **1300.** ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. REQUIRED SERVICES THAT YOU CAN SHOP FOR | (FROM GFE #6) | | |
| 1302. | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (ENTER ON LINES 103, SECTION J AND 502, SECTION K) | | $761.65 | |

FILE NUMBER: ____5507

| COMPARISON OF GOOD FAITH ESTIMATE (GFE) AND HUD-1 CHARGES | | GOOD FAITH ESTIMATE | HUD-1 |
|---|---|---|---|
| CHARGES THAT CANNOT INCREASE | HUD-1 LINE NUMBER | | |
| OUR ORIGINATION CHARGE | # 801 | $75.00 | $75.00 |
| YOUR CREDIT OR CHARGE (POINTS) FOR THE SPECIFIC INTEREST RATE CHOSEN | # 802 | ($1,084.54) | ($1,118.54) |
| YOUR ADJUSTED ORIGINATION CHARGES | # 803 | ($1,009.54) | ($1,043.54) |
| TRANSFER TAXES | # 1203 | $205.04 | $225.00 |

| CHARGES THAT IN TOTAL CANNOT INCREASE MORE THAN 10% | | GOOD FAITH ESTIMATE | HUD-1 |
|---|---|---|---|
| CREDIT REPORT | # 805 | $2.25 | $2.25 |
| TAX SERVICE | # 806 | $29.00 | $29.00 |
| FLOOD CERTIFICATION | # 807 | $3.25 | $3.25 |
| GEORGIA PER LOAN FEE | # 808 | $10.00 | $10.00 |
| TITLE SERVICES AND LENDER'S TITLE INSURANCE | # 1101 | $810.00 | $740.00 |
| OWNER'S TITLE INSURANCE | # 1103 | $ 0.00 | $ 0.00 |
| GOVERNMENT RECORDING CHARGES | # 1201 | $27.00 | $54.00 |
| **TOTAL** | | $881.50 | $838.50 |
| **INCREASE BETWEEN GFE AND HUD-1 CHARGES** | ($43.00) | or | -4.878% |

| CHARGES THAT CAN CHANGE | | GOOD FAITH ESTIMATE | HUD-1 |
|---|---|---|---|
| DAILY INTEREST CHARGES | # 901  $8.22/day | $131.52 | $131.52 |
| HOMEOWNER'S INSURANCE | # 903 | $ 0.00 | $ 0.00 |
| INITIAL DEPOSIT FOR YOUR ESCROW ACCOUNT | # 1001 | $610.17 | $610.17 |

| LOAN TERMS | |
|---|---|
| YOUR INITIAL LOAN AMOUNT IS | $74,976.00 |
| YOUR LOAN TERM IS | 30 years |
| YOUR INITIAL INTEREST RATE IS | 4.00% |
| YOUR INITIAL MONTHLY AMOUNT OWED FOR PRINCIPAL, INTEREST, AND ANY MORTGAGE INSURANCE IS | $357.05 includes<br>☑ Principal<br>☑ Interest<br>☐ Mortgage Insurance |
| CAN YOUR INTEREST RATE RISE? | ☑ No.   ☐ Yes, it can rise to a maximum of ___%. The first change will be on _/_/___ and can change again every _____ after _/_/___.<br>Every change date, your interest rate can increase or decrease by ___%. Over the life of the loan, your interest rate is guaranteed to never be lower than ___% or higher than ___%. |
| EVEN IF YOU MAKE PAYMENTS ON TIME, CAN YOUR LOAN BALANCE RISE? | ☑ No.   ☐ Yes, it can rise to a maximum of $_____. |
| EVEN IF YOU MAKE PAYMENTS ON TIME, CAN YOUR MONTHLY AMOUNT OWED FOR PRINCIPAL, INTEREST, AND MORTGAGE INSURANCE RISE? | ☑ No.   ☐ Yes, the first increase can be on _/_/ and the monthly amount owed can rise to $_____. The maximum it can ever rise to is $_____. |
| DOES YOUR LOAN HAVE A PREPAYMENT PENALTY? | ☑ No.   ☐ Yes, your maximum prepayment penalty is $_____. |
| DOES YOUR LOAN HAVE A BALLOON PAYMENT? | ☑ No.   ☐ Yes, you have a balloon payment of $_____ due in _____ years on _/_/___. |
| TOTAL MONTHLY AMOUNT OWED INCLUDING ESCROW ACCOUNT PAYMENTS | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br>☑ You have an additional monthly escrow payment of $101.69 that results in a total initial monthly amount owed of $458.64. This includes principal, interest, any mortgage insurance and any items checked below.<br>☑ PROPERTY TAXES   ☑ HOMEOWNER'S INSURANCE<br>☐ FLOOD INSURANCE |

NOTE: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

575

## BORROWER'S AGREEMENTS, ACKNOWLEDGEMENTS AND CERTIFICATIONS

The undersigned hereby make the following agreements, acknowledgments and certifications to
**Citibank, N.A.**                                                          (the "Lender"):

1. <u>Acknowledgement of Receipt of Disclosures</u>. I acknowledge that I have received, read, and reviewed the following disclosures:
   - o Initial and Final Truth in Lending Disclosure Statement
   - o Good Faith Estimate of Closing Costs, including Required Provider Disclosures
   - o Affiliated Business Arrangement Disclosure
   - o HUD's Special Information Booklet (Purchase transactions only)
   - o Your Citibank Privacy Promise
   - o Important Disclosures About Your Loan brochure, including the Loan Servicing Disclosure, Notice of Right to Receive a Copy of an Appraisal, and Important Information About Procedures for Opening a New Loan Account at Citigroup.
   - o HUD-1 Uniform Settlement Statement
   - o Fair and Accurate Credit Transaction (FACT) Act Notice.

2. <u>ARM Disclosures</u>. ☐ If checked, I acknowledge that I have received, read, and reviewed the Consumer Handbook on Adjustable Rate Mortgages and Lender's ARM Program Disclosure for _____.

3. <u>Acknowledgement of Receipt of Right to Cancel</u>. If this loan is a refinance transaction on my primary residence, I acknowledge that each of us has received two (2) completed copies of the Notice of Right to Cancel. The Notice of Right to Cancel describes my right to cancel the new refinance transaction without cost and explains how any of us may cancel the transaction by notifying Lender in writing at the address and by the date specified in the Notice of Right to Cancel.

4. <u>Acknowledgement of Receipt of Flood Notice/Insurance</u>. ☐ If checked, I acknowledge that (1) I received the Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance a reasonable period of time prior to the closing date, and (2) I read and reviewed such Notice and understand that the property is located in an area designated by the Director to the Federal Emergency Management Agency as a flood hazard area and flood insurance is required.

5. <u>Agreement to Correct Errors and Omissions on Loan Documentation/Limited Power of Attorney</u>. I agree to cooperate with Lender in correcting clerical errors made on any loan closing or other loan documentation, including any errors or omissions I may have made in signing and completing the documentation. Corrections may be deemed necessary to enable Lender to sell, convey, seek guaranty, or market this loan to secondary investors.

   In consideration of Lender making this loan to me, I hereby grant Lender a limited power of attorney to correct any errors and omissions that Lender discovers upon the review of the loan closing or other loan documentation, by signing or initialing the correction on my/our behalf. Lender will provide me with copies of the corrected documents, and Lender will not use the limited power of attorney to change the principal amount of the loan, term, interest rate, payments or other terms of the loan.

████ 1575

6. **Credit Reports.** I acknowledge that the Lender, its agents, successors and assigns, may report my/our name(s), account information and other information regarding their credit experiences with me to other proper persons, such as credit reporting agencies and other lenders. The Lender will normally obtain credit reports for all loan applications and for updates, renewals or extensions of any credit granted. Upon request, Lender will inform me if a report has been obtained and will give me the name and address of the agency furnishing the report. Lender may obtain credit reports for any other purposes including to review and collect the account and to audit or validate our systems, policies and procedures or those of our affiliates or vendors.

7. **Authorization to Transfer Insurance, Documents, and/or Escrow Balance to New Loan.** ☒ If checked, the Lender *services the loan being refinanced. I authorize the Lender to transfer hazard and flood insurance policies and loan documents (for example, original stock certificate, stock power, and proprietary lease for coop loans) to the new loan. If the lender holds an escrow account balance on the loan being refinanced, I authorize the transfer of this balance to the new loan. I recognize that this transferred escrow balance may be higher or lower than the escrow balance required on the new loan. If it is lower, the Lender may require me to make an additional escrow deposit at closing. If it is higher, the excess will be refunded to me at closing.*

8. **Acknowledgement of Receipt of Prepayment Penalty Disclosure.** ☐ If checked, I have selected a prepayment penalty pricing option for my loan and I acknowledge that I have received, read, and reviewed the Prepayment Penalty Disclosure.

---

█████ 575

Citibank Fixed Rate Home Equity Loan or Home Equity Line of Credit.
☐ If checked, the following disclosures apply because you are obtaining an accompanying Citibank Fixed Rate Home Equity Loan or Home Equity Line of Credit in conjunction with the above loan. The following disclosure is being provided on behalf of Citibank, N.A.

The undersigned hereby make the following agreements, acknowledgements and certifications to Citibank N.A. (the "Lender"):

1.  Acknowledgement of Receipt of Disclosures. I acknowledge that I have received, read, and reviewed the following disclosures:

    Fixed Rate Home Equity Loan or Home Equity Line of Credit:
    o Good Faith Estimate of Closing Costs
    o Affiliated Business Arrangement Disclosure
    o Fair and Accurate Credit Transaction (FACT) Act Notice

    Fixed Rate Home Equity Loan only:
    o Truth in Lending Disclosure Statement
    o HUD-1 Settlement Statement

2.  Acknowledgement of Receipt of Right to Cancel. If this loan is a refinance transaction on my primary residence, I acknowledge that each of us has received two (2) completed copies of the Notice of Right to Cancel. The Notice of Right to Cancel describes my right to cancel the new refinance transaction without cost and explains how any of us may cancel the transaction by notifying Lender in writing at the address and by the date specified in the Notice of Right to Cancel.

_____ (Seal)
CORENTHUS J. STREET Jr.                    -Borrower

---

MB4075                    Page 3 of 3                    Citibank 3.2.65.07 V4                    Rev. 08/2010

## NOTICE OF RIGHT TO CANCEL
(General)

Borrower: CORENTHUS J. STREET Jr.       Loan Number: ████ 1575

Property Address: 2808 ELKHORN DR       Lender: Citibank, N.A.
            DECATUR GA 30034-2824

Tax I.D. No.:

---

**1. YOUR RIGHT TO CANCEL**

You are entering into a new transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of this new transaction which is    January 11, 2013         ; or
(2) the date you received your Truth-in-Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**2. HOW TO CANCEL**

If you decide to cancel this new transaction, you may do so by notifying us in writing, at
Citibank, N.A.
1000 Technology Drive, MS 795
O'Fallon, MO 63368 or Fax# 1-866-247-7216
Email: right.to.cancel@citi.com


You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of  **January 15, 2013**

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
                                            Date

---

ON THE DATE LISTED ABOVE I/WE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF THE RIGHT TO CANCEL. IN THE FORM PRESCRIBED BY LAW ADVISING ME/US OF MY/OUR RIGHT TO CANCEL THIS TRANSACTION.

X _____  1-11-13
   Name— CORENTHUS J. STREET Jr.      Date

# NOTICE OF RIGHT TO CANCEL
(General)

Borrower: CORENTHUS J. STREET Jr.                    Loan Number: ████ 575

Property Address: 2808 ELKHORN DR                    Lender: Citibank
             DECATUR GA  30034-2824

Tax I.D. No.:

### 1. YOUR RIGHT TO CANCEL

You are entering into a new transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of this new transaction which is   January 11, 2013          ; or
(2) the date you received your Truth-in-Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel this transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

### 2. HOW TO CANCEL

If you decide to cancel this new transaction, you may do so by notifying us in writing, at
Citibank, N.A.
1000 Technology Drive, MS 795
O'Fallon, MO 63368 or Fax# 1-866-247-7216
Email:  right.to.cancel@citi.com

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of  January 15, 2013

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
                                               Date

ON THE DATE LISTED ABOVE I/WE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF THE RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME/US OF MY/OUR RIGHT TO CANCEL THIS TRANSACTION.

X _Corenthus J. Street Jr._          _1-11-13_
   Name   CORENTHUS J. STREET Jr.                    Date

CORRECTION AGREEMENT

Each of the undersigned (individually and collectively "Borrower") authorize ServiceLink ("Settlement Agent") to make the corrections authorized by this Correction Agreement in Borrower's loan documents that Borrower signed in connection with the Borrower's mortgage loans with Citibank, NA ("Lender") on  1-11-13  ("Signing Date").

Settlement Agent is authorized, on Borrower's behalf, to place Borrower's initials on any page delivered to Borrower at closing but that Borrower failed to initial and to place Borrower's initials on Borrower's behalf on the documents where Borrower made changes but failed to initial.  In addition, Settlement Agent is authorized on Borrower's behalf to correct and initial typographical or clerical errors in the documents as directed by Lender.  Examples of typographical or clerical errors that Settlement Agent can correct on Borrower's behalf include:
1. Errors in the spelling of Borrower's name, mailing or property address, or in the legal description of Borrower's property.
2. Adding in the legal description of Borrower's property if it was inadvertently omitted from mortgage or deed of trust.
3. If applicable, adding the name of Borrower's condominium or planned urban development (PUD) project if it was inadvertently omitted.
4.  Change the date of document if it is after the date of acknowledgement if required for the recording of the document. Some states and individual counties have recording requirements that require that the date of the document must be the same as or prior to the date of the acknowledgement.  Therefore, if they are not the same or prior to and it is required in order for the document to be recorded, Settlement Agent will cross out the document date (NOT NOTE DATE), and change it to the acknowledgement date.
5. Marital status (if required):  Settlement Agent will add the marital status of the Borrower to the document and the acknowledgement if missing.
6. Any other change Borrower and Lender authorize in advance.

**In no event shall this Correction Agreement be used to change in any way the terms of Borrower's loan including (but not limited to) the interest rate, loan amount, monthly payment or closing fees.**

If Settlement Agent exercises the authorization granted by this Correction Agreement, Borrower will be notified in advance and be provided a copy of the corrected document.

This authority granted under this Correction Agreement shall automatically terminate sixty (60) calendar days from the Signing Date.

_____ 1-11-13    _____

Borrower                      Date            Borrower                      Date

# TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicant: CORENTHUS J. STREET Jr.
2808 ELKHORN DR
DECATUR, GA  30034-2824

Lender: Citibank, N.A.

Loan No: ████ 575

Property: 2808 ELKHORN DR
DECATUR, GA  30034-2824

Type of Loan: Conventional
Date: January 11, 2013
Disclosure Type: Final

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 4.000 % | $  54,015.36 | $  74,844.48 | $  128,859.84 |

## INTEREST RATE AND PAYMENT SUMMARY

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 4.000  % |
| Principal + Interest Payment | $  357.95 |
| Est. Taxes + Insurance (Escrow) | $  101.69 |
| Total Est. Monthly Payment | $  459.64 |

There is no guarantee that you will be able to refinance to lower your rate and payments.

DEMAND FEATURE: [X] This loan does not have a Demand Feature.   [ ] This loan has a Demand Feature as follows:

REQUIRED DEPOSIT: [ ]  The annual percentage rate does not take into account your required deposit.

VARIABLE RATE FEATURE: [ ] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at:     2808 ELKHORN DR
DECATUR, GA  30034-2824

ASSUMPTION: Someone buying this property [X] cannot assume the remainder of the mortgage on the original terms
[ ] may assume, subject to conditions, the remainder of the mortgage on the original terms.

### NON-FILING INSURANCE: $ N/A

PROPERTY INSURANCE: [X] Homeowner's insurance, or fire and extended coverage, is a required condition of this loan. Also, if the property securing this loan is located in a flood hazard area, you will be required to obtain flood insurance. Borrower may purchase this insurance from any insurance company acceptable to lender.

LATE CHARGES: If a payment is more than 15  days late, you will be charged a late charge of   5.000 % of the payment.

PREPAYMENT: If you pay off your loan early, you
[ ] may   [X] will not    have to pay a prepayment penalty.
[ ] may   [X] will not    have to pay a minimum finance charge.
[ ] may   [X] will not    be entitled to a refund of part of the finance charge.
You are not required to complete this agreement merely because you have received these disclosures or signed a loan application.
See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
BORROWER/DATE

_____
CORENTHUS J. STREET Jr.   BORROWER/DATE   1-11-13

_____
BORROWER/DATE

_____
BORROWER/DATE

TIL_HXFA - 01/15/2011  Citibank 3.2.65.07 V4
Citibank 3.2.65.07 V4

## TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicant: CORENTHUS J. STREET Jr.
2808 ELKHORN DR
DECATUR, GA 30034-2824

Lender: Citibank, N.A.

Loan No: ▆▆▆▆1575

Property: 2808 ELKHORN DR
DECATUR, GA 30034-2824

Type of Loan: Conventional
Date: January 11, 2013
Disclosure Type: Final

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 4.000 % | $ 54,015.36 | $ 74,844.48 | $ 128,859.84 |

### INTEREST RATE AND PAYMENT SUMMARY

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 4.000 % |
| Principal + Interest Payment | $ 357.95 |
| Est. Taxes + Insurance (Escrow) | $ 101.69 |
| Total Est. Monthly Payment | $ 459.64 |

There is no guarantee that you will be able to refinance to lower your rate and payments.

DEMAND FEATURE: [X] This loan does not have a Demand Feature.  [ ] This loan has a Demand Feature as follows:

REQUIRED DEPOSIT: [ ] The annual percentage rate does not take into account your required deposit.

VARIABLE RATE FEATURE: [ ] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 2808 ELKHORN DR
DECATUR, GA 30034-2824

ASSUMPTION: Someone buying this property [X] cannot assume the remainder of the mortgage on the original terms [ ] may assume, subject to conditions, the remainder of the mortgage on the original terms.

### NON-FILING INSURANCE: $ N/A

PROPERTY INSURANCE: [X] Homeowner's insurance, or fire and extended coverage, is a required condition of this loan. Also, if the property securing this loan is located in a flood hazard area, you will be required to obtain flood insurance. Borrower may purchase this insurance from any insurance company acceptable to lender.

LATE CHARGES: If a payment is more than 15 days late, you will be charged a late charge of 5.000 % of the payment.

PREPAYMENT: If you pay off your loan early, you
[ ] may [X] will not  have to pay a prepayment penalty.
[ ] may [X] will not  have to pay a minimum finance charge.
[ ] may [X] will not  be entitled to a refund of part of the finance charge.

You are not required to complete this agreement merely because you have received these disclosures or signed a loan application.
See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ BORROWER/DATE     _Corenthus J. Street Jr._ CORENTHUS J. STREET Jr. BORROWER/DATE     _1-11-13_ BORROWER/DATE

_____ BORROWER/DATE     _____ BORROWER/DATE

TIL_FIXFA - 07/15/2011  [00112328I575]
Citibank 3.2.65.07 V4

# EXHIBIT I

2013034285          DEED BOOK 23570 Pg 643
Filed and Recorded
2/14/2013 8:57:13 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Recording Requested By: VERDUGO TRUSTEE SERVICE CORPORATION
When Recorded Return To: CORENTHUS J. STREET JR., 2808 ELKHORN DR, DECATUR, GA 30034-2824

## DISCHARGE OF DEED TO SECURE DEBT

CITIMORTGAGE, INC.#:2003921024 "STREET JR" Lender ID:0562D/1702475682 /DeKalb, Georgia
MERS #: 100287400005994425 SIS #: 1-888-679-6377

The indebtedness referred to in that certain Deed to Secure Debt from CORENTHUS J. STREET JR, SOLE OWNER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., Dated : 10/25/2006, and filed of record on 11/09/2006, in Book/Reel/Liber: 19350, Page/Folio: 641, of the office of the Clerk of the Superior Court of DeKalb County, Georgia as Instrument No.: N/A having been paid in full and cancelled by the undersigned on the date shown below and the undersigned being the present record holder and owner of such deed; or the undersigned being the present owner of such secured interest by virtue of being the original grantee or the heir, devisee, executor, administrator, successor, transferee or assignee, or the servicing agent to whom indebtedness was paid on behalf of or, by grantor, the Clerk of such Superior Court is authorized and directed to cancel that deed of record, as provided in Code Section 44-14-4 of the O. C. G. A. for other mortgage cancellations.

Property Address: 2808 ELKHORN DR, DECATUR GA 30034

In witness whereof, the undersigned has set hand and seal.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On February 4th, 2013

By:
WALTER H EICHELBERGER,
Assistant Secretary

WITNESS                                    WITNESS

KRISTA L WEAVER                            JESSICA SCHROYER

STATE OF Maryland
COUNTY OF Washington

On this 4th day of February 2013, before me, the undersigned officer personally appeared WALTER H EICHELBERGER, who made acknowledgment on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., who acknowledges himself/herself to be the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a corporation, and that he/she as such Assistant Secretary, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself/herself as Assistant Secretary.

WITNESS my hand and official seal.

CATHERINE M MULLENDORE
Notary Expires: 08/03/2016

Catherine M. Mullendore
Notary Public
Washington Co., MD

(This area for notarial seal)

TSW/TSW3CITIMP01/23/2013 02:21:00 AM CITIMD1CITIMD2000000000000000730897; GADEKAL: 2003921024 GASTATE_MORT_REL "AR"ARCITIM"

# EXHIBIT J

2022147127 DEED BOOK 30595 Pg 508
Filed and Recorded: 10/4/2022 12:35:00 PM
Recording Fee: $25.00
Prepared By:
3606641085
7067927936

Please Cross Reference to:
Corenthus J. Street Jr
Security Deed @ Deed Book 19350, Page 557

Parcel Number: 15 105 01 064

Return after recording to:
Padgett Law Group
6267 Old Water Oak Road, Suite 203
Tallahassee FL 32312

## DEED UNDER POWER
## STATE OF GEORGIA, COUNTY OF DEKALB

THIS INDENTURE, made this 6th day of September, 2022 by Corenthus J. Street Jr, acting through his/her appointed agent and attorney-in-fact, CitiMortgage, Inc., as party of the first part (hereinafter referred to as "Grantor"), and Victor Warren Properties LLC, as party of the second part (hereinafter referred to as "Grantee");

### WITNESSETH:

WHEREAS, on October 25, 2006, Corenthus J. Street Jr executed a certain Deed to Secure Debt to Mortgage Electronic Registration Systems, Inc., solely as nominee for American Equity Mortgage, Inc., its successors and assigns, which was recorded on November 9, 2006 in Book 19350, Page 557, in the Office of the Clerk of Superior Court of Dekalb County, Georgia;

WHEREAS, default in the payment of the monthly installments under said Note occurred, and whereas by reason of said default, Grantor elected, pursuant to the terms of said Security Deed and Note, to declare the entire principal and interest immediately due and payable; and

WHEREAS, said entire indebtedness still being in default, Grantor, on behalf of said GRANTOR, and according to the terms of said Security Deed, did advertise said property for sale for four (4) consecutive weeks in the legal newspaper of said county wherein the Sheriff carries advertisements, namely Champion Newspaper, said dates of publication being 08/11/22, 08/18/22, 08/25/22, 09/01/22; and

WHEREAS, pursuant to said advertisements, on the first Tuesday in September, 2022, (09/06/2022), within the legal hours of sale at the usual place for conducting Sheriff's sales before the door of the Superior Court of Dekalb County, Georgia, GRANTEE made the highest

TUP File No: 22-005697

2022147127  DEED BOOK 30595 Pg 509

and best bid and said land was therefore knocked off to GRANTEE for a bid of One Hundred Twenty-Two Thousand and 00/100 ($122,000.00); and

WHEREAS, notice of foreclosure sale as required by Georgia law in the form of a copy of the Notice of Sale Under Power submitted to the legal newspaper was provided to the debtor by certified mail, return receipt requested, at least 30 days prior to the foreclosure sale date; and

NOW, THEREFORE, in consideration of the premises and said sum of money, and by virtue of and in the exercise of the power of sale contained in the aforesaid Security Deed, the GRANTOR has bargained, sold, granted, conveyed, and by these presents does hereby bargain, sell, grant, and convey to GRANTEE, its successors, and assigns, the following:

*ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 105 OF THE 15TH DISTRICT OF DEKALB COUNTY, GEORGIA, BEING LOT 1 IN BLOCK "C" OF UNIT IV OF ASHTON MANOR, AS PER PLAT RECORDED IN PLAT BOOK 45, PAGE 123, DEKALB COUNTY RECORDS AND BEING KNOWN AS NO. 2808 ELKHORN DRIVE ACCORDING TO THE PRESENT SYSTEM OF NAMING STREETS AND NUMBERING HOUSES IN DEKALB COUNTY, GEORGIA, AS MORE FULLY SHOWN ON A PLAT OF INDIVIDUAL SURVEY PREPARED BY SAMUEL G. EVANS, JR., REGISTERED LAND SURVEYOR AND DATED SEPTEMBER 28, 1972.*

Together with all and singular the rights, members, easements and appurtenances thereto appertaining; also, all of the estate, right, title, interest, claim or demand of the said GRANTOR, all successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

This property is conveyed subject to: 1) any outstanding ad valorem taxes, assessments, and any unpaid utility bills which may constitute a lien against the property; 2) any security deeds, liens, and encumbrances existing when the above-described Security Deed was filed for record; 3) zoning ordinances; 4) matters which would be disclosed by an accurate survey or by an inspection of the property; and 5) all restrictive covenants, easements, rights-of-way and any other matters of record superior to said Security Deed.

TO HAVE AND TO HOLD the said premises and every part thereof unto GRANTEE to its own proper use, benefit and behoove in FEE SIMPLE, in and full and ample a manner as the said GRANTOR, all heirs, successors, and assigns, did hold and enjoy the same.

TDP File No. 22-003697

-2-

2022147127 DEED BOOK 30595 Pg 510

IN WITNESS WHEREOF, CitiMortgage, Inc., as Agent and Attorney-in-Fact for GRANTOR, has hereunto affixed its hand and seal this 28 day of    September    , 20 22    .

Corenthus J. Street Jr, by and through Attorney-in-Fact CitiMortgage, Inc.

By: _____ (Seal)
Printed Name:    Andrea WBey
Title:    Vice President

By: _____ (Seal)
Printed Name:    Eclice Jones
Title:    Vice President

Signed, sealed and delivered
in the presence of:
_____
Unofficial Witness Quru Willifu

_____
Notary Public    Myisha Sims-Sorathiya
County of: _____ Mercer
My Commission Expires:  08/28/2025

MYISHA SIMS-SORATHIYA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires August 28, 2025
ID# 50135254

TDP File No. 22-005697
3

## CITIMORTGAGE, INC.

### Action by the President

The undersigned President of Citimortgage, Inc. pursuant to the authority granted by the resolution adopted on November 20, 2018, by Unanimous Written Consent of the Board, hereby appoints each of the individuals listed on Exhibit A hereto as a Vice President and Assistant Secretary of Citimortgage, Inc.:

IN WITNESS WHEREOF, the undersigned has set his hand on June 29, 2022.

Bradley Wayman, President

## EXHIBIT A

### Vice President/Assistant Secretary Appointments

| | |
|---|---|
| Christopher Amann | Randy Lake |
| Michael Ambrosius | Ellen K. Leese |
| Richardson Anderson | Sheryl Lehman |
| Lorraine Austin | Henry Lieb |
| Sara L. Avery | Anne Marie Long |
| Elizabeth Azcona | Robert J. Lux |
| Jeanne Bader | Ronald J. Lyles |
| Teresa Baker | Michael Mancino |
| Kellie Beasley | Elise Masselle |
| Neil Bender | Nicole Mastropiero |
| Stephen Benetz | Maria Materia |
| Lauren Benning | Judith Matias |
| Linda Blackburn | Kimberly A. Matthew |
| Carl Blum | Keith Matyas |
| Roy Bondoc | Juan Mayorga |
| Elliot S. Boyce | Carolyn McCauley |
| Patricia Bracey | Diane McCormick |
| Nicholas C. Brett | Joseph McGann |
| James Bruome Jr. | Shannon McGann |
| Francine Bryant | Gaylyn McKie |
| David Burnette | Wendy McLaughlin |
| Lela Casey | James McNicholas |
| Bobbie Cole | James A. Mcquaide |
| Cecilia Collins | Nancie Merrick |
| Cuwana Collins-Muhammad | John Mezzasalma |
| Diane Constantino | David J. Miller Jr. |
| Bieu Corl | Gina Miner |
| Ray Crawford | Ambera Minks |
| Lauren Cronier | Ashley Minus |
| Alex D. Crossman | William Moffett |
| Joseph Cyrus | Claudia Moore-Wallace |
| Kathleen D'Amore | Tyree Morris |
| Kathleen Davidson | David Morrison |
| Jo Ann Davis | Michael Mularkey |
| Darin Decker | Walter P. Mullen |
| Carmen Dehaney | Francis Murphy |
| Matthew J. Detwiler | Prakash Nair |

2022160850  DEED BOOK 30652 Pg 741

| | |
|---|---|
| Dominic Digiorgio | Rosemary Norwood |
| Shane Donton | Sheila Owens |
| Marianne Doroba | Vanessa Paramita |
| James Dunmeyer | Timothy Paul |
| Kamilah Durham | Spencer Person |
| David A. Durkac | Lori Pinto |
| Keith R. Dyer | Clifford Priest |
| Courtney Eldred | Woodrow W. Priester |
| Christine Emig | Angela Pulli |
| Matthew Fernagame | Michael Rainer |
| Luz Fontanez | Yvette Randolph |
| Christina Ford | Josh Reicher |
| Martin Foster | Dimple Reid |
| Rory Fric | Lindsy Richardson |
| Meredith Gillespie | Orleatha Riley |
| Cristina Giraldo | Scott D. Rodeman |
| Scott Goldman | Christina Romer |
| Josh Goldstien | Jennifer Rowen |
| Reno Gonzales | Athena Santos |
| Seth Gross | Erik Seckinger |
| Kim Hagen | Jason Shackey |
| Monique Hayins | Louis C. Sigilto |
| Marcus Handley | Jeffrey Stanley |
| Amy Hardiman | Mary Ann Sullivan |
| Heather Hearn | Barry Sulzbarg |
| Lisa Hildreth | Zahira Sweet |
| Jeffrey Hillman | Lynn Tarantino |
| Norma House | Cynthia Thomas |
| Warren Hu | Stephanie Thompson |
| Thomas W. Hutchison, Jr. | Shannon Tomasso |
| Nancy Irwin | Thomas Ullmer |
| Girish K. Jain | Denise C. Vaccaro |
| Andrea Jenkins | Pei-i Vemitsky |
| Christopher Johnson | Melissa Visinski |
| Felice Jones | Jason Webb |
| Elena Kaganovich | Sharyn Weisenberger |
| Amanda Keizor | Tiffany White |
| Mark Kelbaugh | Pam Widmann |
| Molly Kelly | Kisha Wiggins |
| Sharon Kelso | Andrea Wiley |
| Sharon Kent | Jennifer Wilkinson |

2022160850 DEED BOOK 30652 Pg 742

Leon W. Kerr                     Kyra Williams
Timothy King                    Steven D. Williamson
Marlene Klein                   Jacob Wilson
Ken Knudsen                     Nellie Witherspoon
Marino S. Konidaris             Loriann Wolbert
Kurt B. Kremstein               Russell Wood
Volodmyr Kutsaba                Todd Wright
                                Cheryl Young

2022160850 DEED BOOK 30652 Pg 743

## CITIMORTGAGE, INC.

### Action by the President

The undersigned President of Citimortgage, Inc. pursuant to the authority granted by the resolution adopted on November 20, 2018, by Unanimous Written Consent of the Board, hereby appoints each of the individuals listed on Exhibit A hereto as a Vice President and Assistant Secretary of Citimortgage, Inc.

IN WITNESS WHEREOF, the undersigned has set his hand on June 29, 2022.

Bradley Wayman, President

EXHIBIT A

Vice President/Assistant Secretary Appointments

| | |
|---|---|
| Christopher Amann | Randy Lake |
| Michael Ambrosius | Ellen K. Leese |
| Richardson Anderson | Sheryl Lehman |
| Lorraine Austin | Henry Lieb |
| Sara L. Avery | Anne Marie Long |
| Elizabeth Azcona | Robert J. Lux |
| Jeanne Bader | Ronald J. Lyles |
| Teresa Baker | Michael Mancino |
| Kellie Beasley | Elise Masselle |
| Neil Bender | Nicole Mastropiero |
| Stephen Benctz | Maria Materia |
| Lauren Berning | Judith Matias |
| Linda Blackburn | Kimberly A. Matthew |
| Carl Blum | Keith Matyas |
| Roy Bondoc | Juan Mayorga |
| Elliot S. Boyce | Carolyn McCauley |
| Patricia Bracey | Diane McConnick |
| Nicholas C. Brett | Joseph McGann |
| James Broome Jr. | Shannon McGann |
| Francine Bryant | Gaylyn McKie |
| David Burnette | Wendy McLaughlin |
| Leia Casey | James McNicholas |
| Bobbie Cole | James A. Mcquaide |
| Cecilia Collins | Nancie Merrick |
| Cawana Collins-Muhammad | John Mezzasalma |
| Diane Constantine | David J. Miller Jr. |
| Bieu Cori | Gina Miner |
| Ray Crawford | Ambera Minks |
| Lauren Cromer | Ashley Minus |
| Alex D. Crossman | William Moffett |
| Joseph Cyrus | Claudia Moore-Wallace |
| Kathleen D'Amore | Tyree Morris |
| Kathleen Davidson | David Morrison |
| Jo Ann Davis | Michael Mularkey |
| Darin Decker | Walter P. Mullen |
| Carmen Dehaney | Francis Murphy |
| Matthew J. Detwiler | Prakash Nair |

| | |
|---|---|
| Dominic Digiorgio | Rosemary Norwood |
| Shane Donton | Sheila Owens |
| Marianne Doroba | Vanessa Paramita |
| James Dunmeyer | Timothy Paul |
| Kamilah Durham | Spencer Person |
| David A. Durkac | Lori Pinto |
| Keith R. Dyer | Clifford Priest |
| Courtney Eldred | Woodrow W. Priesler |
| Christine Emig | Angela Pulli |
| Matthew Ferragame | Michael Rainer |
| Luz Fontanez | Yvette Randolph |
| Christina Ford | Josh Reicher |
| Martin Foster | Dimple Reid |
| Rory Frie | Lindsy Richardson |
| Meredith Gillespie | Orleatha Riley |
| Cristina Giraldo | Scott D. Rodeman |
| Scott Goldman | Christina Romer |
| Josh Goldstien | Jennifer Rowen |
| Rene Gonzales | Athena Santos |
| Seth Gross | Erik Seckinger |
| Kim Hagen | Jason Shockey |
| Monique Hogins | Louis C. Sigillo |
| Marcus Handley | Jeffrey Stanley |
| Amy Hardiman | Mary Ann Sullivan |
| Heather Hearn | Barry Sulzberg |
| Lisa Hildreth | Zahira Sweet |
| Jeffrey Hillman | Lynn Tarantino |
| Norma House | Cynthia Thomas |
| Warren Hu | Stephanie Thompson |
| Thomas W. Hutchison, Jr. | Shannon Tomasso |
| Nancy Irwin | Thomas Ullmer |
| Girish K. Jain | Denise C. Vaccaro |
| Andrea Jenkins | Pei-i Vernitsky |
| Christopher Johnson | Melissa Visinski |
| Felice Jones | Jason Webb |
| Elena Kagunovich | Sharyn Weisenberger |
| Amanda Keizor | Tiffany White |
| Mark Kelbaugh | Pam Widmann |
| Molly Kelly | Kisha Wiggins |
| Sharon Kelso | Andrea Wiley |
| Sharon Kent | Jennifer Wilkinson |

2022160850 DEED BOOK 30652 Pg 746
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Leon W. Kerr
Timothy King
Marlene Klein
Ken Knudsen
Marino S. Konidaris
Kurt B. Kremstein
Volodmyr Kutsaba

Kyra Williams
Steven D. Williamson
Jacob Wilson
Nellie Witherspoon
Lorlann Wolbert
Russell Wood
Todd Wright
Cheryl Young

2022160850  DEED BOOK 30652 Pg 736
Filed and Recorded: 11/9/2022 4:26:00 PM
Recording Fee: $25.00
Prepared By:
3606641085
7087927936

Please Cross Reference to:
Corenthus J Street Jr
Security Deed G Deed Book 19350, Page 557

Parcel Number: 15 105 01 064

Return after recording to:
Padgett Law Group
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312

DEED UNDER POWER
STATE OF GEORGIA, COUNTY OF DEKALB

THIS INDENTURE, made this 6th day of September, 2022 by Corenthus J. Street Jr, acting through his/her appointed agent and attorney-in-fact, CitiMortgage, Inc., as party of the first part (hereinafter referred to as "Grantor"), and Victor Warren Properties, Inc, as party of the second part (hereinafter referred to as "Grantee");

WITNESSETH:

WHEREAS, on October 25, 2006, Corenthus J. Street Jr executed a certain Deed to Secure Debt to Mortgage Electronic Registration Systems, Inc., solely as nominee for American Equity Mortgage. Inc., its successors and assigns, which was recorded on November 9, 2006 in Book 19350, Page 557, in the Office of the Clerk of Superior Court of Dekalb County, Georgia;

WHEREAS, default in the payment of the monthly installments under said Note occurred, and whereas by reason of said default, Grantor elected, pursuant to the terms of said Security Deed and Note, to declare the entire principal and interest immediately due and payable; and

WHEREAS, said entire indebtedness still being in default, Grantor, on behalf of said GRANTOR, and according to the terms of said Security Deed, did advertise said property for sale for four (4) consecutive weeks in the legal newspaper of said county wherein the Sheriff carries advertisements, namely Champion Newspaper, said dates of publication being 08/11/22; 08/18/22; 08/25/22; 09/01/22; and

WHEREAS, pursuant to said advertisements, on the first Tuesday in September, 2022, (09/06/2022), within the legal hours of sale at the usual place for conducting Sheriff's sales before the door of the Superior Court of Dekalb County, Georgia, GRANTEE made the highest

and best bid and said land was therefore knocked off to GRANTEE for a bid of One Hundred Twenty-Two Thousand and 00/100 ($122,000.00); and

WHEREAS, notice of foreclosure sale as required by Georgia law in the form of a copy of the Notice of Sale Under Power submitted to the legal newspaper was provided to the debtor by certified mail, return receipt requested, at least 30 days prior to the foreclosure sale date; and;

NOW, THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the aforesaid Security Deed, the GRANTOR has bargained, sold, granted, conveyed, and by these presents does hereby bargain, sell, grant, and convey to GRANTEE, its successors, and assigns, the following:

*ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 105 OF THE 15TH DISTRICT OF DEKALB COUNTY, GEORGIA, BEING LOT 1 IN BLOCK "C" OF UNIT IV OF ASHTON MANOR, AS PER PLAT RECORDED IN PLAT BOOK 45, PAGE 123, DEKALB COUNTY RECORDS AND BEING KNOWN AS NO. 2808 ELKHORN DRIVE ACCORDING TO THE PRESENT SYSTEM OF NAMING STREETS AND NUMBERING HOUSES IN DEKALB COUNTY, GEORGIA, AS MORE FULLY SHOWN ON A PLAT OF INDIVIDUAL SURVEY PREPARED BY SAMUEL G. EVANS, JR., REGISTERED LAND SURVEYOR AND DATED SEPTEMBER 28, 1972.*

Together with all and singular the rights, members, easements and appurtenances thereto appertaining; also, all of the estate, right, title, interest, claim or demand of the said GRANTOR, all successors and assigns, legal, equitable, or otherwise whatsoever, in and to the same;

This property is conveyed subject to: 1) any outstanding ad valorem taxes, assessments, and any unpaid utility bills which may constitute a lien against the property; 2) any security deeds, liens, and encumbrances existing when the above-described Security Deed was filed for record; 3) zoning ordinances; 4) matters which would be disclosed by an accurate survey or by an inspection of the property; and 5) all restrictive covenants, easements, rights-of-way and any other matters of record superior to said Security Deed.

TO HAVE AND TO HOLD the said premises and every part thereof unto GRANTEE to its own proper use, benefit and behoove in FEE SIMPLE, in and full and ample a manner as the said GRANTOR, all heirs, successors, and assigns, did hold and enjoy the same.

TDPT# No. 22-053092.
2

2022160850 DEED BOOK 30852 Pg 738

IN WITNESS WHEREOF, CitiMortgage, Inc. as Agent and Attorney-in-Fact for GRANTOR, has hereunto affixed its hand and seal this 2 day of November , 20 22 .

Corenthius J. Street Jr. by and through Attorney-in-Fact CitiMortgage, Inc.

By: _____ (Seal)
Printed Name:      Andrea Wiley
Title:      Vice President

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness   Tanvikza Springs

By: _____ (Seal)
Printed Name: Felice Jones
Title:      Vice President

_____
Notary Public   Myisha Sims-Sorathiya
County of:      Mercer
My Commission Expires: 08/28/2025

MYISHA SIMS-SORATHIYA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires August 28, 2025
ID# 50135254

## CITIMORTGAGE, INC.

### Action by the President

The undersigned President of Citimortgage, Inc. pursuant to the authority granted by the resolution adopted on November 20, 2018, by Unanimous Written Consent of the Board, hereby appoints each of the individuals listed on Exhibit A hereto as a Vice President and Assistant Secretary of Chimortgage, Inc.

IN WITNESS WHEREOF, the undersigned has set his hand on June 29, 2022.

_____
Bradley Wayman, President

## EXHIBIT A

### Vice President/Assistant Secretary Appointments

| | |
|---|---|
| Christopher Amann | Randy Lake |
| Michael Ambrosius | Ellen K. Leese |
| Richardson Anderson | Sheryl Lehman |
| Lorraine Austin | Henry Lieb |
| Sara L. Avery | Anne Marie Long |
| Elizabeth Azconn | Robert J. Lux |
| Jeanne Bader | Ronald J. Lykes |
| Teresa Baker | Michael Mancino |
| Kellie Beasley | Elise Masselle |
| Neil Bender | Nicole Mastropiero |
| Stephen Benetz | Maria Materin |
| Lauren Benning | Judith Matias |
| Linda Blackburn | Kimberly A. Matthew |
| Carl Blum | Keith Matyas |
| Roy Bondoc | Juan Mayorga |
| Elliot S. Boyce | Carolyn McCauley |
| Patricia Bracey | Diane McCormick |
| Nicholas C. Brett | Joseph McGann |
| James Broome Jr. | Shannon McGann |
| Francine Bryant | Gaylyn McKie |
| David Burnette | Wendy McLaughlin |
| Leia Casey | James McNicholas |
| Bobbie Cole | James A. Mcquaide |
| Cecilia Collins | Nancie Merrick |
| Cawana Collins-Muhammad | John Mezzasalma |
| Diane Constantine | David J. Miller Jr. |
| Bleu Corl | Gina Miner |
| Ray Crawford | Ambera Minks |
| Lauren Cromer | Ashley Minus |
| Alex D. Crossman | William Moffett |
| Joseph Cyrus | Claudia Moore-Wallace |
| Kathleen D'Amore | Tyree Morris |
| Kathleen Davidson | David Morrison |
| Jo Ann Davis | Michael Mularkey |
| Dorin Decker | Walter P. Mullen |
| Carmen Dehaney | Francis Murphy |
| Matthew J. Detwiler | Prakash Nair |

| | |
|---|---|
| Dominic Digiorgio | Rosemary Norwood |
| Shane Donton | Sheila Owens |
| Marianne Doroba | Vanessa Parumita |
| James Dunmeyer | Timothy Paul |
| Kamilah Durham | Spencer Person |
| David A. Durkac | Lori Pinto |
| Keith R. Dyer | Clifford Priest |
| Courtney Eldred | Woodrow W. Priester |
| Christine Emig | Angela Pulli |
| Matthew Ferrageme | Michael Rainer |
| Luz Fontanez | Yvette Randolph |
| Christina Ford | Josh Reicher |
| Martin Foster | Dimple Reid |
| Rory Frie | Lindsy Richardson |
| Meredith Gillespie | Orleatha Riley |
| Cristina Giraldo | Scott D. Rudeman |
| Scott Goldman | Christina Romer |
| Josh Goldstien | Jennifer Rowen |
| Rene Gonzales | Athena Santos |
| Seth Gross | Erik Seckinger |
| Kim Hagen | Jason Shockey |
| Monique Hagins | Louis C. Sigillo |
| Marcus Handley | Jeffrey Stanley |
| Amy Hardiman | Mary Ann Sullivan |
| Heather Hearn | Barry Sutzberg |
| Lisa Hildreth | Zahira Sweet |
| Jeffrey Hillman | Lynn Tarantino |
| Norma House | Cynthia Thomas |
| Warren Hu | Stephanie Thompson |
| Thomas W. Hutchison, Jr. | Shannon Tomasso |
| Nancy Irwin | Thomas Ullmer |
| Girish K. Jain | Denise C. Vaccaro |
| Andrea Jenkins | Pei-i Vernitsky |
| Christopher Johnson | Melissa Visinski |
| Felice Jones | Jason Webb |
| Elena Kaganovich | Sharyn Weisenberger |
| Amanda Keizor | Tiffany White |
| Mark Kelbaugh | Pam Widmann |
| Molly Kelly | Kisha Wiggins |
| Sharon Kelso | Andrea Wiley |
| Sharon Kent | Jennifer Wilkinson |

2022160850  DEED BOOK 30652 Pg 742

Leon W. Kerr

Timothy King

Marlene Klein

Ken Knudsen

Marino S. Konidaris

Kurt B. Kremstein

Volodmyr Kutsaha

Kyra Williams

Steven D. Williamson

Jacob Wilson

Nellie Witherspoon

Loriann Wolbert

Russell Wood

Todd Wright

Cheryl Young

2022160650  DEED BOOK 30852 Pg 743

## CITIMORTGAGE, INC.

### Action by the President

The undersigned President of Citimortgage, Inc. pursuant to the authority granted by the resolution adopted on November 20, 2018, by Unanimous Written Consent of the Board, hereby appoints each of the individuals listed on Exhibit A hereto as a Vice President and Assistant Secretary of Citimortgage, Inc.:

IN WITNESS WHEREOF, the undersigned has set his hand on June 29, 2022.

Bradley Wayman, President

## EXHIBIT A

### Vice President/Assistant Secretary Appointments

| | |
|---|---|
| Christopher Amann | Randy Lake |
| Michael Ambrosius | Ellen K. Leese |
| Richardson Anderson | Sheryl Lehman |
| Lorraine Austin | Henry Lieb |
| Sara L. Avery | Anne Marie Long |
| Elizabeth Azcona | Robert J. Lux |
| Jeanne Bader | Ronald J. Lyles |
| Teresa Baker | Michael Mancino |
| Kellie Beasley | Elise Masselle |
| Neil Bendes | Nicole Mastropiero |
| Stephen Benctz | Maria Materia |
| Lauren Benning | Judith Matias |
| Linda Blackburn | Kimberly A. Matthew |
| Carl Blum | Keith Matyas |
| Roy Bondoc | Juan Mayorga |
| Elliot S. Boyce | Carolyn McCauley |
| Patricia Brisoey | Diane McCormick |
| Nicholas C. Brett | Joseph McGann |
| James Broome Jr. | Shannon McGann |
| Francine Bryant | Goylyn McKie |
| David Burnette | Wendy McLaughlin |
| Leia Casey | James McNicholas |
| Bobbie Cole | James A. Mcquaide |
| Cecilia Collins | Naucie Merrick |
| Cawana Collins-Muhammad | John Mezzasalma |
| Diane Constantine | David J. Miller Jr. |
| Bieu Corl | Gina Miner |
| Ray Crawford | Ambera Minks |
| Lauren Crother | Ashley Minus |
| Alex D. Crossman | William Moffett |
| Joseph Cyrus | Claudia Moore-Wallace |
| Kathleen D'Amore | Tyree Morris |
| Kathleen Davidson | David Morrison |
| Jo Ann Davis | Michael Mularkey |
| Darin Decker | Walter P. Mullen |
| Carmen Dehaney | Francis Murphy |
| Matthew J. Detwiler | Prakash Nair |

| | |
|---|---|
| Dominic Digiorgio | Rosemary Norwood |
| Shane Donton | Sheila Owens |
| Marianne Doroba | Vanessa Paramita |
| James Dunmeyer | Timothy Paul |
| Kamilah Durham | Spencer Person |
| David A. Durkac | Lori Pinto |
| Keith R. Dyer | Clifford Priest |
| Courtney Eldred | Woodrow W. Priester |
| Christine Emig | Angela Pulli |
| Matthew Ferragame | Michael Rainer |
| Luz Fontanez | Yvette Randolph |
| Christina Ford | Josh Reicher |
| Martin Foster | Dimple Reid |
| Rory Frie | Linday Richardson |
| Meredith Gillespie | Orkatha Riley |
| Cristina Giraldo | Scott D. Rodeman |
| Scott Goldman | Christina Romer |
| Josh Goldman | Jennifer Rowen |
| Rene Gonzales | Athena Santos |
| Seth Gross | Erik Seekinger |
| Kim Hagen | Jason Shockey |
| Monique Hagins | Louis C. Sigilio |
| Marcus Handley | Jeffrey Stanley |
| Amy Hardiman | Mary Ann Sullivan |
| Heather Hearn | Barry Sulzberg |
| Lisa Hildreth | Zahira Sweet |
| Jeffrey Hillman | Lynn Tarantino |
| Norma House | Cynthia Thomas |
| Warren Hu | Stephanie Thompson |
| Thomas W. Hutchison, Jr. | Shannon Tomasso |
| Nancy Irwin | Thomas Ullmer |
| Girish K. Jain | Denise C. Vaccaro |
| Andrea Jenkins | Pel-i Vernitsky |
| Christopher Johnson | Melissa Visinski |
| Felice Jones | Jason Webb |
| Elena Kaganovich | Sharyn Weisenberger |
| Amanda Keizor | Tiffany White |
| Mark Kelbaugh | Pam Widmann |
| Molly Kelly | Kisha Wiggins |
| Sharon Kelso | Andrea Wiley |
| Sharon Kent | Jennifer Wilkinson |

2022160850  DEED BOOK 30852 Pg 746
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Leon W. Kerr
Timothy King
Marlene Klein
Ken Knudsen
Marino S. Konidaris
Kurt B. Kremstein
Volodmyr Kutsaba

Kyra Williams
Steven D. Williamson
Jacob Wilson
Nellie Witherspoon
Loriann Wolbert
Russell Wood
Todd Wright
Cheryl Young

# EXHIBIT K



Rushmore Loan Management Services
P.O. Box 55004
Irvine, CA 92619
888-504-6700 | www.rushmorelm.com

May 24, 2023

Corenthus J Street Jr
2808 Elkhorn Dr
Decatur, GA 30034 2824

Loan No: ██████7663
Loan Type: CONV W/O PMI

Property Address:
2808 Elkhorn Dr
Decatur GA 30034

Default Support
Internal Use

## PAYOFF STATEMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE PAYOFF SHOWN BELOW.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
These figures are good to June 09, 2023. (the "Good-Through Date")
This loan is due for the September 01, 2022 payment.

| | | |
|---|---|---|
| The current total unpaid Principal Balance is: | $ | 73,391.98 |
| Unpaid Interest Due at Payoff | $ | 2,510.74 |
| Escrow/Impound Overdraft | $ | 1,783.51 |
| Unpaid Late Charges | $ | 61.68 |
| Recoverable Corporate Advances | $ | 977.41 |
| Amort/Hist/Doc Fee | $ | .00 |
| Prop Insp & Preserv | $ | 20.00 |
| Recon/Recording Fee | $ | 25.00 |
| Deferred Interest | $ | .00 |
| Short Interest | $ | .00 |
| * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $ | | 78,770.32 |
| | | |
| 2nd Principal Balance | $ | .00 |
| 2nd Interest Balance | $ | .00 |

The total unpaid Principal Balance includes the 2nd Principal Balance,
2nd Interest Balance, Principal Reduction Amount (HAMP incentive)
and/or a Forbearance Amount that is serviced by Rushmore.

NMLS #185729



```
Loan No:    ███████7663
Property Address:
2808 Elkhorn Dr
Decatur GA 30034
```

If the loan is less than 30 days past due the Principal Reduction Amount
is deducted from the total amount due.

Funds received on or after June 09, 2023 will require an additional
$ 8.04 interest per Day.

Payoff funds being sent by mail must be directed to:

        Rushmore Loan Management Services LLC
            Attn: Payoff Department
            15480 Laguna Canyon Road Suite 100
            Irvine, CA 92618

These figures are subject to final verification by the Noteholder.
Figures may be adjusted if any check/money order previously received is
rejected by the institution upon which it was drawn.

Any amounts included in the Estimated Fees and Costs section of this
letter anticipate certain actions we must take before the Good-Through
Date pursuant to our rights and duties under the Loan Documents. These
Estimated Fees and Costs are expenses related to the servicing of your
loan we have already incurred but not yet received an invoice for or
for which we anticipate incurring on or before the Good-Through Date.
There may be additional fees incurred for which you are responsible
that are unknown as of the date of this letter and which are not
in luded above. Estimated Fees and Costs may include, but are not
limited to, expenses for items such as escrow advances for property
taxes, insurance, legal fees and costs, or other advances necessary and
permissible under the Loan Documents. You do not have to pay for any
fees or costs not incurred by the time your full payment is received.
In the event you submit a payment for more than the total amount owed
at the time the payment is received, we will refund you the difference.



Rushmore Loan Management Services
P.O. Box 55004,
Irvine, CA 92619
p 888-504-6700 | www.rushmorelm.com

Loan No:   ███████7663
Property Address:
2808 Elkhorn Dr
Decatur GA 30034

Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due. A late charge of $ 15.42 will be
assessed 16 days after a current payment is due and should be added
to the payoff total if received after that time. All past due amounts
are included in the above figures.

If this property is sold, please provide the seller's forwarding address.

If you have any questions, please contact our Customer Care Department
at Toll Free 1-888-504-6700 Monday through Friday, 8:00 a.m. to 6:00 p.m.,
CT.

Sincerely,

PAYOFF DEPARTMENT
RUSHMORE LOAN MANAGEMENT SERVICES

XP011-088/0SH

NMLS #185729

### RUSHMORE LOAN MANAGEMENT SERVICES LLC

### WIRING INSTRUCTIONS

Please wire funds to:

Institution:          Wells Fargo

ABA Routing Number:   Bank ████0248
Account Number:       ████9028
Reference:            Loan Number
                     Borrower Name


Attn:                Cashiering Department
Beneficiary:         Rushmore Loan Management LLC
                     15480 Laguna Canyon Road
                     Suite 100
                     Irvine, CA 92618


Customer Care:       888-504-6700



## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector attempting to collect a debt.

**Bankruptcy Notice.** If you are in bankruptcy or if your obligation to repay this loan was discharged in bankruptcy, this informational notice is sent to you in order to comply with statutory requirements. It is not an attempt to collect a debt. You may disregard information relating to payment remittance. You are not obligated to make payments and any amount(s) you do pay Rushmore is at your discretion. Please note, however, Rushmore reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

### Notice of Error Resolution & Information Request Procedures
The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

***If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:***

**Rushmore Loan Management Services LLC**
P.O. Box 52262
Irvine, California 92619-2262

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

### HUD STATEMENT
Pursuant to section 169 of the Housing and Community Development Act of 1987, you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD approved housing counseling agencies by calling the HUD nationwide toll free telephone at 1-800-569-4287.

### Equal Credit Opportunity Act Disclosure
NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552 or Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

Rev 06/22

**The following notice is in reference to the Homeowner Assistance Fund:**

The Homeowner Assistance Fund is a federal program to help homeowners impacted by COVID-19 resolve mortgage payments and other housing expenses.  To learn more about the availability of Homeowner Assistance Funds in your state, please visit Rushmore's State Homeowner Assistance Resources page at https://www.rushmorelm.com/state-assistance/

## STATE SPECIFIC NOTICES

**The following notice applies to Arkansas residents only:**

Please note that Rushmore Loan Management Services LLC is licensed in Arkansas and that complaints about Rushmore Loan Management Services LLC may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free 1-800-981-4429.

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car.
Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:
Irvin Borenstein
7200 S. Alton Way, #B180
Centennial, CO 80112
303-309-3839

**The following notice applies to Hawaii residents only:**

Rushmore is licensed by the Division of Financial Institutions for the State of Hawaii. A borrower may file a complaint about Rushmore Loan Management Services with the Commissioner:

**Division of Financial Institutions**
Department of Commerce and Consumer Affairs
King Kalakaua Building
335 Merchant Street, Rm. 221
Honolulu, HI 96813

If you believe your loss mitigation option request has been wrongly denied, you may file a complaint with the state division of financial institutions at 808-586-2820 or dfi@dcca.hawaii.gov.

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to North Carolina residents only:**

**If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the North Carolina Office of the Commissioner of Banks website, www.nccob.gov.**

**RUSHMORE LOAN MANAGEMENT SERVICES LLC Branch Addresses:**

California Branch: 15480 Laguna Canyon Road, Suite 100, Irvine CA 92618
Texas Branch: 8616 Freeport Pkwy, Suite 100 Irving, TX 75063
Oklahoma Branch: 2000 North Classen Blvd, Suite N3400, Oklahoma City, OK 73106

**Collection Agency**
CA Office License Number: **103651**
TX Office License Number: **112248**
OK Office License Number: **113559**

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE BANKING REGULATION 419
Rushmore is registered with the Superintendent of Banks for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

**If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 1-800-342-3736 or www.dfs.ny.gov.**

NMLS Unique ID Number 185729

Please be advised that calls regarding your property insurance requirements may be answered by Southwest Business Corporation, a third party insurance producer and tracking services provider.

You may request to receive communications from Rushmore in alternative format, which may include large print, Braille, or audio. To make this request, please contact Rushmore at (888) 504-6700.

New York City Consumers:

Rushmore Loan Management Services may provide language access services to consumers who seek to communicate in a language other than English when contacting our customer service center and speaking to a live agent.

A translation and description of commonly-used debt collection terms is available in multiple languages on the New York City Department of Consumer Affairs' website, **www.nyc.gov/dca.**

**The following notice applies to Texas residents only:**

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**The following notice applies to Oregon residents only:**

Pursuant to Oregon Revised Statutes 86A.324, the Director of the Department of Consumer and Business Services prescribed by law and pursuant to FSR 25-2020: Borrowers:  The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 888-504-6700. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**The following notice applies to Pennsylvania residents only:**

The lender shall retain a security interest in the residential real estate unless and until the debt is fully satisfied and the security interest is released.

**The following notice applies to Wisconsin residents only:**

This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.