State Court of Fulton County
**E-FILED**
23EV003346
6/6/2023 9:46 AM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

DEBORAH KOSTELNIK, KYLE KOSTELNIK, )
BRYANA RUEGE, and DOUGLAS McCABE, )
                                    )
      Plaintiffs, )
                                      )
v.                                     )    CIVIL ACTION FILE
                                    )    NO. _____
GFM MAINTENANCE, LLC, DBI SERVICES, )
LLC, and DANIELA POBLETE, )
                                      )
      Defendants. )
                                      )
                                      )

## COMPLAINT

Plaintiffs Deborah Kostelnik, Kyle Kostelnik, Bryana Ruege, and Douglas McCabe file this Complaint against Defendants GFM Maintenance, LLC, DBI Services, LLC, and Daniela Poblete, and respectfully show the following:

## PARTIES, JURISDICTION AND VENUE

1.

Plaintiff Deborah Kostelnik ("Plaintiff D. Kostelnik") is a citizen and resident of the State of Florida.  Plaintiff D. Kostelnik suffered serious personal injuries when Defendant Daniela Poblete negligently operated a motor vehicle and caused a motor vehicle collision on June 24, 2021, on Interstate 95 ("I-95") in Camden County, Georgia.  This is a personal injury tort action arising from that collision.

2.

Plaintiff Kyle Kostelnik ("Plaintiff K. Kostelnik") is a citizen and resident of the State of Florida.  Plaintiff K. Kostelnik suffered serious personal injuries when Defendant Daniela Poblete

negligently operated a motor vehicle and caused a motor vehicle collision on I-95 in Camden County, Georgia.  This is a personal injury tort action arising from that collision.

3.

Plaintiff Bryana Ruege ("Plaintiff Ruege") is a citizen and resident of the State of Florida. Plaintiff Ruege suffered serious personal injuries when Defendant Daniela Poblete negligently operated a motor vehicle and caused a motor vehicle collision on June 24, 2021, on I-95 in Camden County, Georgia.  This is a personal injury tort action arising from that collision.

4.

Plaintiff Douglas McCabe ("Plaintiff McCabe") is a citizen and resident of the State of Florida.  Plaintiff McCabe suffered serious personal injuries when Defendant Daniela Poblete negligently operated a motor vehicle and caused a motor vehicle collision on June 24, 2021, on I-95 in Camden County, Georgia.  This is a personal injury tort action arising from that collision.

5.

Defendant DBI Services, LLC ("DBI Services") is a foreign limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material to this action, DBI Services was a foreign limited liability company authorized to transact business in the State of Georgia. DBI Services is subject to the jurisdiction of this Court.

6.

DBI Services' registered office is in Gwinnett County, Georgia. DBI Services may be served with a summons and copy of the Complaint upon its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

7.

DBI Services has been properly served with process in this action.

8.

Defendant GFM Maintenance, LLC ("GFM Maintenance") is a foreign limited liability company organized and existing under the laws of the State of Virginia with its principal place of business in Illinois. At all times material to this action, GFM Maintenance was a foreign limited liability company authorized to transact business in the State of Georgia. GFM Maintenance is subject to the jurisdiction of this Court.

9.

GFM Maintenance maintains its registered office in Fulton County, Georgia. GFM Maintenance may be served with a summons and a copy of the Complaint upon its registered agent, Gabriel Poblete, 1456 Stokes Avenue, Fulton County, Atlanta, Georgia 30310.

10.

GFM Maintenance has been properly served with process in this action.

11.

Defendant Daniela Poblete ("Poblete") is an individual who, at the time of the motor vehicle collision at issue in this lawsuit on June 24, 2021, was residing or domiciled in the State of Illinois. Poblete is a resident of the State of Illinois but is subject to the jurisdiction of this Court under the authority of O.C.G.A. § 9-10-91 in that Poblete did commit a tortious act within Georgia, as more fully shown by facts set forth below.

12.

Poblete may be served with process at her residence, 8 N 200 Naperville Road, Bartlett, Illinois 60103.

13.

Poblete has been properly served with process in this action.

14.

Plaintiffs suffered serious personal injuries because of an automobile collision caused by Poblete on June 24, 2021, on I-95 in Camden County, Georgia.  GFM Maintenance was, at all times relevant to Plaintiffs' claims was the employer of Daniela Poblete. Moreover, Poblete was in the course and scope of her employment with GFM Maintenance at the time of the subject collision.

15.

This Court has jurisdiction over this action.

16.

At all relevant times, DBI Services was acting as a general contractor pursuant to a contract with the Georgia Department of Transportation ("GDOT") relating to "District 5 Comprehensive Maintenance Services, Contract No. 48400-410-48400-DOT0001333-001." ("the GDOT Contract"). The GDOT Contract contained a forum selection clause specifying that any judicial proceeding shall be in a court in Fulton County, Georgia. Specifically, DBI Services agreed that "in the event any proceeding of a quasi-judicial or judicial nature is commenced in connection with this Contract, such proceeding shall solely be brought in a court or other forum of competent jurisdiction within Fulton County, Georgia."  Venue is proper as to DBI Services in this Fulton County Court.

17.

Venue is proper in this Court as to all Defendants pursuant to O.C.G.A. § 14-2-510, § 14-11-1108, as this is the county where GFM Maintenance is deemed to reside, and under § 9-10-93

Poblete may be joined as a defendant in the county where a resident defendant is suable. Venue is also proper as to DBI Services pursuant to the terms of the GDOT Contract. Venue is also proper as to all Defendants in this Court and county because this is an action brought against joint tortfeasors and may be brought against all Defendants in the county where any one of such Defendants is deemed to reside.

## FACTUAL BACKGROUND

### 18.

At all times relevant to Plaintiffs' claims, DBI Services was in the business of roadway maintenance services, and served as a general contractor on numerous large, public interstate highway projects nationwide and in Georgia.

### 19.

At all relevant times, DBI Services was acting as a general contractor pursuant to the GDOT Contract relating to "District 5 Comprehensive Maintenance Services."

### 20.

At all relevant times, DBI Services maintained an office located at 4078 Whitlock Street, Brunswick, Glynn County, Georgia.

### 21.

The GDOT Contract specified that the Comprehensive Maintenance scope of work included mowing and roadside litter removal on the section of I-95 in Camden County, Georgia, where the subject collision occurred.

### 22.

Under the GDOT Contract for maintenance services on I-95, DBI agreed to specific "Traffic Control" requirements, including that DBI Services "**shall** provide, install, maintain such

temporary barrier, pavement markings, lights, signs and other devices and **take such other protective measures as are necessary to prevent accidents, damage or injury to the public**, and as required by the [Traffic Control Plan] and the Manuals, Standards, Guidelines and Procedures." (Emphasis added.) The GDOT Contract required that DBI Services comply with all current versions of standards, guidelines, and specifications throughout the life of the contract.

23.

The GDOT Contract also specified a "Prescribed Maintenance Highway Mowing Scope of Work" that included "Traffic Control Requirements for Litter Removal," which specified, in part, the following requirements:

- Use a shadow vehicle when removing litter on paved shoulders. The shadow vehicle may be the litter disposal vehicle.

- Follow all guidelines as per Exhibit A.2. Section III.D – Traffic Control Requirements. Use "Litter Pickup Ahead" warning signs during the mowing season when the litter operation does not fall within a ten (10) mile mowing work zone.

- A shadow vehicle and litter disposal vehicles must be equipped with a strobe light and slow-moving vehicle signs during removal of trash bags and larger material.

- All vehicles, including transport or service vehicles, must not obstruct traffic lanes.

24.

The GDOT Contract also specified in Exhibit A.2 Section III.D – "Traffic Control Requirements for Center Line Mowing" the following requirements:

- At a minimum, abide by the Manual of Uniform Traffic Control Devices (MUTCD), current edition, for traffic control guidance.

- Do not cross the median on Interstates or other divided highways. Enter and exit at the existing Interchanges.

- Signs: Place "Watch for Mowers" signs with flags attached at each end of the work zone in the direction of traffic on both the median and outside shoulder.

25.

The GDOT Contract also specified in Exhibit A.2 Section III.D – "Traffic Control Requirements for Center Line Mowing" the following requirement:

> Move equipment or materials on or across the traveled way in a safe manner which will not interfere with traffic. There shall be no reduction in the total number of available traveled ways. **Schedule and arrange the work to ensure the least inconvenience and the utmost safety to the traveling public** and to the Contractor's and Department's forces. (Emphasis added.)

26.

At all times material, the section of I-95 where the collision occurred was open to and heavily traveled by the public.

27.

With respect to DBI Services's use of subcontractors to perform the agreed upon maintenance services, the GDOT Contract specified, in part:

> Upon approval from the Department to use a subcontractor, the Contractor specifically agrees to be fully responsible for the performance of any subcontractor or other designee, for any and all provisions of this contract. The Contractor will ensure that the subcontractor both understands and abides by all applicable provisions of the contract and regulations. **No subcontract which Contractor enters into with respect to performance of obligations or work assigned under the Contract shall in any way relieve Contractor of any responsibility, obligation, or liability under this Contract and for the acts and omissions of all subcontractors, agents, and/or it's employees**. All restrictions, obligations and responsibilities of the Contractor under the Contract shall also apply to the subcontractors. (Emphasis added.)

28.

At all times material, GFM Maintenance was a landscaping and mowing services business with offices in Virginia and Georgia.

29.

In 2019, DBI Services contracted with GFM Maintenance to perform a portion of the

maintenance services that DBI Services had contracted with GDOT to provide ("Subcontractor Agreement").  Specifically, DBI Services contracted with GFM Maintenance to provide mowing and litter removal work described in the GOT contract, including the portion of I-95 where the collision occurred.

30.

Under the Subcontractor Agreement, GFM Maintenance agreed that work would be performed in strict compliance with the Subcontractor Agreement and the GDOT Contract, including the GDOT "Prescribed Maintenance Highway Mowing Scope of Work."

31.

The Subcontractor Agreement allowed DBI Services control over the time, manner and method in which GFM Maintenance executed the mowing and litter removal work on I-95, and, through DBI Services' procedures and conduct, it imposed numerous requirements on GFM Maintenance, including but not limited to:

    a.  DBI Services monitored, directed, and supervised the I-95 mowing and litter removal work of GFM Maintenance on a daily basis;

    b.  Each day, GFM Maintenance had to report to a DBI Services project manager, who was on site multiple times during the day, if not the entire day;

    c.  Each day, GFM Maintenance was not permitted to perform work without approval of DBI Services of a daily work plan concerning the precise location on I-95 where the work would be conducted and what work was to be done.

    d.  DBI Services controlled the time of work by conducting multiple daily inspections to ensure that GFM Maintenance was performing the approved work without stopping work;

8

e.  DBI Services was in charge of ensuring that safety procedures were in place and followed by GFM Maintenance and monitored safety practices of GFM Maintenance on a daily basis;

f.  DBI Services directed the manner of mowing and litter removal by GFM Maintenance, and required GFM Maintenance to redo its work if not done in the manner required by DBI Services;

g.  DBI Services had the right to inspect GFM Maintenance's equipment and require GFM Maintenance to replace or alter its equipment if not acceptable to DBI Services;

h.  Every day, DBI Services would inspect equipment, safety lights on GFM Maintenance's equipment; and

i.  If DBI Services determined that GFM Maintenance not in compliance with equipment required by DBI Services, then DBI Services would stop work of GFM Maintenance.

32.

In April 2021, GFM Maintenance hired Defendant Daniela Poblete to do the job of litter pickup. Poblete's job was to drive a litter disposal truck on the highway, repeatedly crossing lanes of interstate traffic, and make frequent, short, stops to pick up bags of trash left by the litter pickup crew on the side of the highway.

33.

GFM Maintenance knew that Poblete did not have any previous experience operating a litter pickup vehicle on interstate highways before being hired by GFM Maintenance.  GFM Maintenance did not provide any training or instruction to Poblete on operating a vehicle for litter

pickup on an interstate highway worksite.

34.

On June 24, 2021, at approximately 1:07 p.m., Plaintiff Douglas McCabe was operating a 2017 Honda HR-V southbound on I-95 near mile marker 5 in Camden County, Georgia.  Plaintiffs Deborah Kostelnik, Bryana Ruege, and Kyle Kostelnik were passengers in the Honda automobile. Charlotte Brass, mother of Deborah Kostelnik and grandmother of Bryana Ruege and Kyle Kostelnik, was also a passenger in the Honda automobile.

35.

On June 24, 2021, shortly before 1:07 p.m., Poblete operated a 2011 Ford F-250 truck owned and controlled by GFM Maintenance on the outside shoulder and southbound lanes of I-95 in the vicinity of mile marker 5 in Camden County, Georgia.

36.

On the above-mentioned date and time, the Ford F-250 truck driven by Poblete was leased and controlled by GFM Maintenance.

37.

On the above-mentioned date and time, the Ford F-250 truck that Poblete was driving was provided to Poblete by GFM Maintenance.

38.

On the above-mentioned date and time, Poblete was operating the Ford F-250 truck with the permission of GFM Maintenance.

39.

At all times relevant hereto, Poblete was operating the truck leased by GFM Maintenance as an employee or agent of GFM Maintenance. The truck was operated within the course and scope

of Poblete's employment or agency with GFM Maintenance at the time of the collision.

40.

The Ford F-250 truck operated by Poblete at the time of the collision did not have the safety equipment required by the GDOT Contract for a litter disposal vehicle.

41.

On the above-mentioned date and time, Poblete drove the truck from the outside shoulder of the lanes southbound I-95 across multiple southbound travel lanes of I-95.

42.

On June 24, 2021, at approximately 1:07 p.m., Poblete drove the truck from the outside shoulder and across southbound travel lanes of I-95 for the purpose of picking up trash bags on the left (inside) shoulder of the southbound travel lanes of I-95.

43.

On June 24, 2021, at approximately 1:07 p.m., Poblete drove the 2011 Ford F-250 across the southbound lanes of travel and into the path of the 2017 Honda automobile, causing a collision.

44.

On June 24, 2021, the 2011 Ford F-250 operated by Poblete and the 2017 Honda automobile occupied by Plaintiffs collided in the southbound lanes of travel on I-95.

45.

The impact of the collision between the truck operated by Poblete and the Honda automobile caused Plaintiffs to sustain serious, permanent injuries.

46.

The collision between the truck operated by Poblete and the Honda automobile caused Ms. Charlotte Brass to sustain serious, permanent injuries.  Ms. Brass died from injuries caused by the

June 24, 2021, collision on June 25, 2021. Plaintiffs observed the shock, fright, physical and mental pain, suffering and injuries of Ms. Brass.

47.

Plaintiff Deborah Kostelnik's medical expenses for treatment of complex fractures to bilateral lower extremities, fractures of her left hand and wrist, multiple fractured ribs, sternal fracture, compression fracture of the lumbar spine at L1, fracture of the lumbar traverse process at L2-3, fracture of thoracic transverse process at T1, amongst other injuries caused by the crash are in excess of $640,000 to date and she will incur additional medical, and rehabilitative expenses in the future.  As a direct and proximate result of the crash Plaintiff Deborah Kostelnik endured, continues to endure, and will endure in the future, physical and emotional pain and suffering.

48.

Plaintiff Kyle Kostelnik's medical expenses for treatment of his right foot pain, right ankle pain, and lumbar spine pain amongst other injuries caused by the crash are in excess of $46,000 to date and he will incur additional medical, and rehabilitative expenses in the future.  As a direct and proximate result of the crash Plaintiff Kyle Kostelnik endured, continues to endure, and will endure in the future, physical and emotional pain and suffering.

49.

Plaintiff Ruege's medical expenses for treatment of right open displaced comminuted femur fracture, left superior and inferior rami fractures of the pubis, closed sacral fracture, bilateral displaced nasal fractures amongst other injuries caused by the crash are in excess of $503,000 to date and she will incur additional medical, and rehabilitative expenses in the future.  As a direct and proximate result of the crash Plaintiff Ruege endured, continues to endure, and will endure in the future, physical and emotional pain and suffering.

50.

Plaintiff McCabe's medical expenses for treatment of his left knee pain, chest pain, and right hip and flank pain amongst other injuries caused by the crash are in excess of $59,000 to date and he will incur additional medical, and rehabilitative expenses in the future.  As a direct and proximate result of the crash Plaintiff McCabe endured, continues to endure, and will endure in the future, physical and emotional pain and suffering.

51.

Plaintiffs' injuries and damages were proximately caused by the tortious acts and omissions of Defendants GFM Maintenance, DBI Services, and Daniela Poblete jointly and severally.  The tortious acts and omissions of Defendants, which in concert caused the personal injuries to Plaintiffs, are described more fully and specifically in the paragraphs below.

## COUNT I: NEGLIGENCE OF DANIELA POBLETE

52.

Plaintiffs hereby incorporate and reallege paragraphs 1 through 51 above as though fully set forth herein.

53.

As the operator of a motor vehicle on a public highway, Poblete owed other drivers and vehicle occupants on the road, including Plaintiffs, a duty to exercise ordinary and reasonable care and caution to avoid causing injury and damage.

54.

As a motorist, Poblete was required to operate the motor vehicle in a reasonably safe manner.

13

55.

Poblete failed to operate the Ford F-250 truck with the due care exercised by individuals in like or similar circumstances and operated the vehicle in a manner showing a disregard for the safety of others, including Plaintiffs.

56.

Poblete breached a duty she owed to Plaintiffs through her failure to exercise ordinary and reasonable care. Poblete's actions constituted negligence in operating her vehicle contrary to the reasonable and safe conditions and circumstances then existing.

57.

Poblete's negligence includes, but is not limited to, one or more of the following: failing to exercise due care under the circumstances; failing to yield to approaching traffic; crossing a roadway without yielding the right-of-way to vehicles approaching on the roadway to be crossed; moving the truck from a lane of travel before ascertaining that such movement can be made with safety; improper turn; distracted driving; inattentiveness; failing to maintain the vehicle under proper control; failing to keep a proper lookout for other vehicles on the interstate; operating the truck with reckless disregard for the safety of persons and property; and other acts of negligence that may be proven at trial. These actions by Poblete caused the Ford truck to collide with the Honda automobile. These actions were a breach of Poblete's duty to Plaintiffs, constituting negligence.

58.

Poblete was guilty of violating the laws of the State of Georgia, which include the following: O.C.G.A. §§ 40-6-73 (Entering or crossing roadway); 40-6-48 (Driving on roadways laned for traffic); 40-6-123 (Turning movements; signals required on turning, changing lanes,

slowing or stopping); 40-6-241 (Driver to use due care), and 40-6-390 (Reckless driving).

59.

At all times relevant hereto, Poblete was operating GFM Maintenance's truck in a reckless and negligent fashion, which resulted in the above-described collision and proximately caused serious and permanent injuries to Plaintiffs.

60.

At all relevant times, Plaintiff Douglas McCabe acted with reasonable care under the conditions and circumstances then existing.

61.

At all times relevant hereto, Plaintiffs were exercising reasonable care for their own safety.

## **COUNT II: VICARIOUS LIABILITY OF GFM MAINTENANCE, LLC**

62.

Plaintiffs hereby incorporate and reallege paragraphs 1 through 61 above as though fully set forth herein.

63.

At all relevant times, Poblete was acting at the direction and under the control of GFM Maintenance and was an agent and employee of GFM Maintenance.  Poblete was operating the vehicle in the course and scope of her employment or agency with GFM Maintenance.

64.

GFM Maintenance is vicariously liable for the acts and omissions of its employee or agent Poblete, which resulted in the Plaintiffs injuries as set forth herein, pursuant to the doctrine of *respondeat superior* and agency principles.

## COUNT III: NEGLIGENCE OF GFM MAINTENANCE, LLC

65.

Plaintiffs hereby incorporate and reallege paragraphs 1 through 64 above as though fully set forth herein.

66.

GFM Maintenance negligently hired, supervised, trained, and retained Poblete, and its employee with supervisory responsibility over Poblete, and negligently assigned and entrusted driving responsibilities to Poblete.  GFM Maintenance negligently failed to implement and utilize proper procedures to evaluate Poblete's skills, expertise, and/or fitness for the operation of motor vehicles. GFM Maintenance is directly liable for such negligence.

67.

GFM Maintenance was negligent for failing to properly instruct Poblete on the potential dangers of crossing multiple lanes of interstate traffic to perform litter removal and failed to instruct Poblete on proper procedures for safely crossing lanes of traffic and other litter removal duties so as not to create a hazard for vehicle approaching at highway speeds.

68.

GFM Maintenance knew or should have known that conducting litter removal on I-95 roadway while its driver was not properly suited to operate it would result in harm to the members of the traveling public, including Plaintiffs, who would be affected by operation of said litter removal truck.

69.

GFM Maintenance knew or should have known that their failure to properly hire, train, retain, and supervise their employee(s) so that they would not cause harm to such persons such as

Plaintiffs would result in harm to the individuals who would be affected by said employee(s), yet GFM Maintenance still failed to properly hire, train, retain and supervise its employee(s).

70.

GFM Maintenance negligently entrusted the Ford F-250 truck that it controlled to Poblete when Poblete was not properly suited to drive the vehicle.

71.

GFM Maintenance was negligent in failing to promulgate and enforce company policies, procedures, and rules for the protection of the public, including but not limited to Plaintiffs.

72.

GFM Maintenance knew or should have known that the Ford F-250 truck controlled by GFM Maintenance and operated by Poblete at the time of the collision did not have the safety equipment required by the GDOT Contract.

73.

GFM Maintenance failed to exercise ordinary care to prevent injury to the traveling public and Plaintiffs while engaged in mowing and litter removal work on I-95.

74.

GFM Maintenance negligently failed to perform work in accordance with the GDOT Contract specifications.

75.

GFM Maintenance undertook to perform mowing and litter removal in a manner to ensure the utmost safety to the traveling public, but negligently performed that undertaking.

76.

GFM Maintenance failed to warn the traveling public of the danger presented by the

presence of litter removal vehicles despite policies, guidelines, standards, and GDOT Contract requirements requiring such a warning.

### 77.

GFM Maintenance is liable for all other acts of negligence as may be shown at trial and supported by the evidence following discovery.

### 78.

As a result of the negligent and reckless conduct of GFM Maintenance, Plaintiffs suffered severe permanent injuries, physical pain, mental suffering, and damage.

## COUNT IV: NEGLIGENCE OF DBI SERVICES, LLC

### 79.

Plaintiffs hereby incorporate and reallege paragraphs 1 through 78 above as though fully set forth herein.

### 80.

Pursuant to the GDOT Contract, DBI Services undertook to provide for the public's safety during the performance of Comprehensive Maintenance Services, including mowing and litter removal along I-95 in Camden County, Georgia.

### 81.

DBI Services had a duty to protect the public, including Plaintiffs, from injuries arising by reason of the maintenance services work, including mowing and litter removal.

### 82.

DBI Services had a duty to perform its obligations under the GDOT Contract in a skillful, careful, non-negligent and workmanlike manner.

83.

DBI Services had a duty to ensure that GFM Maintenance performed the mowing and litter removal work safely.

84.

DBI Services undertook to provide for the public's safety during mowing and litter removal on I-95, but negligently performed that undertaking.

85.

DBI Services is liable to Plaintiffs, who are members of the public injured by the negligent performance of DBI Services' duties.

86.

DBI Services' negligence also includes, but is not limited to:

a. Failing to exercise ordinary care to prevent injury to the traveling public and Plaintiffs from the mowing and litter removal work on I-95;

b. Failing to ensure that the mowing and litter removal work was performed in accordance with the GDOT Contract's specifications;

c. Failing to exercise reasonable care in inspecting and supervising the work of its employees and subcontractors to ensure that GFM Maintenance was performing mowing and litter removal activities along I-95 with due care and in compliance with the applicable safety guidelines, standard and policies;

d. Failing to ensure that GFM Maintenance and its employees were familiar with and knowledgeable of safety procedures applicable to the mowing and litter removal work along I-95, including but not limited to, ensuring a safe way for litter removal trucks to repeatedly cross the lanes of travel without creating a hazard to the

traveling public;

e.  In knowingly permitting the Ford F-250 truck operated by Poblete at the time of

the collision without the required safety equipment; and

f.  Failing to warn the traveling public of the danger presented by the presence of litter

removal vehicles on the highway despite policies, guidelines, standards, and GDOT

Contract requirements requiring such a warning.

87.

DBI Services is liable for all other acts of negligence as may be shown at trial and supported

by the evidence following discovery.

88.

As a result of the negligent and reckless conduct of DBI Services, Plaintiffs suffered severe

permanent injuries, physical pain, mental suffering, and damage.

## COUNT V: VICARIOUS LIABILITY OF DBI SERVICES, LLC

89.

Plaintiffs hereby incorporate and reallege paragraphs 1 through 88 above as though fully

set forth herein.

90.

DBI Services controlled the time, manner, and method in which GFM Maintenance

executed the mowing and litter removal work, through the Subcontractor Agreement, DBI

Services' procedures, and DBI Services' conduct.

91.

DBI Services is liable for the negligence of GFM Maintenance because it retained the right

to direct or control the time and manner of executing the work of GFM Maintenance or assumed

control so as to create the relation of master and servant with GFM Maintenance.

92.

DBI Services employed GFM Maintenance to do work involving frequent crossing of multiple lanes of interstate highway traffic by work vehicles, which DBI Services knew or should have known as likely to create a peculiar risk of physical harm to the traveling public.  DBI Services is liable for the harm caused to Plaintiffs by the failure of GFM Maintenance to exercise reasonable care to take special precautions.

93.

DBI Services is liable for the negligence of GFM Maintenance and its agents because their acts and omissions were in violation of duties imposed by the GDOT Contract on DBI Services.

94.

DBI Services agreed in the GDOT Contract to be fully responsible for the performance of GFM Maintenance and its acts and omissions.

95.

DBI Services is vicariously liable for the acts and omissions of GFM Maintenance, including its employee or agent Poblete, which resulted in the Plaintiffs' injuries as set forth herein.

## **DAMAGES**

96.

Plaintiffs hereby incorporate and reallege paragraphs 1 through 95 above as though fully set forth herein.

97.

Each of the foregoing acts and omissions by Defendants constitutes an independent act of negligence.  The injuries sustained by Plaintiffs were directly and proximately caused by one or

more of the negligent acts and omissions stated above, for which Defendants are directly and/or vicariously liable. Therefore, Defendants are liable for Plaintiffs' injuries sustained, pain and suffering, cost of treatment, and all other elements of damages allowed under the laws of the State of Georgia and supported by the evidence at trial.

98.

As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered serious and permanent injuries, continue to receive medical treatment, and will incur future medical bills for further treatment.

99.

As a result of Defendants' negligence, Plaintiffs have lost wages and diminished capacity to labor, in an amount to be proven at trial.

100.

As a proximate result of this collision and Defendants' negligence, Plaintiffs have suffered, and continue to suffer from, injuries to body and mind.

101.

Plaintiffs are entitled to recover damages for their injuries and for all elements of their past, present and future pain and suffering, both mental and physical.

102.

Also occupying the 2017 Honda was Ms. Charlotte Brass, who was the mother of Plaintiff Deborah Kostelnik and grandmother of Plaintiffs Bryana Ruege, and Kyle Kostelnik.  Mrs. Brass sustained fatal injuries from this incident. Plaintiffs Deborah Kostelnik, Bryana Ruege, and Kyle Kostelnik are entitled to recover damages for their emotional distress from witnessing their family member's suffering and death.

103.

Defendants acted with willful misconduct, malice fraud, oppression, wantonness and an entire want of care raising the presumption of a conscience indifference to the consequences. Accordingly, Plaintiffs are entitled to recover punitive damages from the Defendants, in accordance with the enlightened conscience of an impartial jury, pursuant to O.C.G.A. § 51-12-5.1.

104.

Defendants' actions evidence bad faith, were and are stubbornly litigious, and have caused Plaintiffs undue and expense. Thus, Plaintiffs are entitled to recover his necessary expenses of litigation, including an award of reasonable attorney's fees and expenses required by this action, pursuant to O.C.G.A. § 13-6-11, as well as any other statutory or common law basis.

105.

As a result of Defendants' negligence, Plaintiffs state their intention to seek all special, compensatory, general, incidental, consequential, economic, punitive, and other damages permissible under the laws of the State of Georgia, including but not limited to:

a) Personal injuries;

b) Past, present and future pain and suffering;

c) Past and future mental anguish;

d) Fright, shock, and terror;

e) Loss of enjoyment of life;

f) Emotional distress;

g) Past, present, and future medical expenses;

h) Past and future loss of earnings;

i)  Lost opportunity, and earning capacity;

j)  Diminished capacity to labor;

k)  Permanent injuries;

l)  Attorney's fees and expenses of litigation;

m)  Consequential damages to be proven at trial; and

n)  Punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs pray that:

a)  Defendants be served with summons and process;

b)  That judgment be entered in favor of Plaintiffs and against Defendants;

c)  Plaintiffs be awarded general damages for all elements of pain and suffering, both physical and mental, including past, present, and future damages, in an amount to be determined by the enlightened conscience of an impartial jury;

d)  Plaintiffs be awarded special damages including medical and necessary costs for the past, present, and future;

e)  Plaintiffs be awarded damages for lost wages, loss of earning capacity, and lost capacity to labor in an amount for the past, present and future which will be proven at the time of trial through the evidence;

f)  Plaintiffs be awarded attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11, in an amount that will be proven through the evidence at trial;

g)  There be a trial by jury of all issues so triable; and

h)  This Court grant such other and further relief as is fair and just under the circumstances.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

This 6th day of June, 2023.

Respectfully submitted,

**SHIVER HAMILTON CAMPBELL, LLC**

/s/ Alan J. Hamilton
Alan J. Hamilton
Georgia Bar No. 320698
Darrell W. Hinson
Georgia Bar No. 356879
***Attorneys for Plaintiffs***

70 Gruber Lane, Suite 253
St. Simons Island, Georgia 31522

3490 Piedmont Road, Suite 640
Atlanta, Georgia 30305
(404) 593-0020
alan@shiverhamilton.com
darrell@shiverhamilton.com