# EXHIBIT A

IN THE SUPERIOR/STATE COURT OF __CHEROKEE__ COUNTY

STATE OF GEORGIA

__ABRAM   GLADNEY__

CIVIL ACTION NUMBER
23SCE0514

_____

_____

PLAINTIFF

Vs.

__CONSUMERS  CREDIT  UNION__

_____

_____

DEFENDANT

SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Gladney; Abram: A / Agent
5000 View Drive Unit 5409
Woodstock, GA 30189

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This __5th__ day of __May__, __2023__.

Clerk of Superior Court/State Court

By:___/s/ Bett Webb_____

Deputy Clerk

SC-1 Rev 85

State Court of Cherokee County
23SCE0514
**E-Filed**
5/8/2023 8:41 AM BW
Patty Baker, Clerk
Civil Division

IN THE STATE COURT OF CHEROKEE COUNTY
STATE OF GEORGIA

ABRAM GLADNEY

VS

CONSUMERS CREDIT UNION

23SCE0514

## COMPLAINT

I Gladney; Abram-Al/Agent on behalf of ABRAM GLADNEY/Principal hereby accept all Titles, rights, interest and Equity owed to the Principal Principal ABRAM GLADNEY. I instructed the CFO of CONSUMERS CREDIT UNION, Sean Bowers to perform his fiduciary duty of applying my Principal's balance to Principal account number 809341 6800 for Set Off. I instructed him 3 times with notices labeled; Letter of Instructions (1st Notice), Opportunity to Cure (2nd Notice), and Default Judgement (3rd Notice). With those notices, I sent in a power of Attorney Form to put on file and I also sent in my negotiable instrument for payment. The amount that is supposed to be Set Off is $25,407.61., As the agent I have done my complete contractual performance to satisfy my End of the Contract. But CFO Sean Bowers has not performed his Titles, Fiduciary duties, which means he has Breached our Contract and committed Security Fraud by violating my right to access my securities, I gave gave him 5 Business days to perform these duties with each notice and instructed him to respond in writing to let me know my instructions were completed, and he never responded to any of the notices.

[signature]

Gladney, Abram-Al/Agent
5000 View Drive Unit 5404, Woodstock GA 30189
404-436-4973

State Court of Cherokee County
**E-Filed**
23SCE0514
6/1/2023 8:37 AM  BW
Patty Baker, Clerk
Civil Division

**Motion for a Preliminary Injunction**

IN THE STATE COURT OF CHEROKEE COUNTY STATE OF GEORGIA

ABRAM GLADNEY

                PLAINTIFF,


Vs.                                 Civil Action Number  23SCE0514


CONSUMERS CREDIT UNION

                DEFENDANT.


### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff hereby moves pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction prohibiting Defendant from engaging in the repossession of Plaintiff's automobile, which is their personal property, until this Court has an opportunity to issue a final judgment on the merits.

Plaintiffs make this motion for a preliminary injunction on the grounds that (1) Plaintiff has demonstrated a likelihood of succeeding on the merits of their claim that Defendant has Breached the Contract and committed Security Fraud by their CFO Sean Bowers not performing his fiduciary duty of applying the Plaintiff's Principal Balance to Plaintiff's Principal account for Set Off and violated the Plaintiff's right to access their securities; (2) Plaintiffs are likely to suffer irreparable harm in the absence of the relief requested; (3) the harm Plaintiffs are likely to suffer if the preliminary injunction is denied outweighs the harm that Defendants are likely to suffer as a result of the preliminary injunction; and (4) the public interest favors issuing the preliminary injunction.

### PRELIMINARY STATEMENT

The Defendant's CFO Sean Bowers has ignored 3 notices, giving him 5 business days each to time to perform his fiduciary duty and to send back in writing that he has received and applied the instructions. He never once responded to my, Gladney; Abram-A/ Agent, letters of instructions in writing about this matter. This is proof and gives reason to believe the Defendant is operating in unsound and unethical business practices, which also puts them in violation 18 U.S.C. 1951 and 18 U.S.C. 1341. Furthermore, with this and the findings Congress disclosed in 15 U.S.C 1692 in mind, if this injunction is not granted the Plaintiff will be at risk of further being extorted by having his right to pursue life, liberty and the pursuit of happiness with their personal property violated.

### FACTUAL BACKGROUND

I, Gladney; Abram-A/ Agent, also sent in excerpts of the Federal Reserve Act Section 16 Parts 1 and 2, and Section 29 parts A-D, along with my instructions, to explain the situation and help him perform

properly. I sent in a Power of Attorney to put on file, as well. With these on file and in the Defendant's possession, the Defendant never once responded to me in writing to rebut or dispute any of my claims, which supports a default judgment in favor of the Plaintiff. And due to that, I filed a claim in this court for this Breach of Contract, subject to my right to remedy for nonperformance. With this claim filed into the State Court here in Cherokee County, with all of the exhibits sent to the Defendant labeled: Letter of Instructions (1st Notice), Opportunity to Cure (2nd Notice), and Default Judgment (3rd Notice), Power of Attorney, Federal Reserve Excerpts, and the proof of mailing receipts to show that it was in fact delivered. All of these exhibits clearly lay out and prove that I have done my complete contractual performance to satisfy my end of the agreement, but the Defendant has not.

## ARGUMENT

### I.   The Plaintiffs Have Made The Required Showing for a Preliminary Injunction

A. Plaintiff Has Demonstrated A Likelihood of Success on the Merits

As the agent on behalf of the Plaintiff I have made my case and shown substantial evidence on the nonperformance of the Defendant, lack of rebuttal or proper response to multiple Affidavits, and the criminal business practices the Defendant is engaged in. Due to these factors, I have a strong case for default judgement in favor of the Plaintiff, due to the administrative process already completed by myself which has placed the Defendant in Default already.

B. Plaintiffs Are Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

The irreparable harm the Plaintiff is likely to suffer is the loss and theft of their personal property, which would violate their right to life, liberty, and the pursuit of happiness, until the case is resolved, if relief is not granted. Also, if relief is not granted then the Plaintiff's right to withhold the disputed amount, subject to 12 CFR 1026.13 (d)(1), would be violated as well.

C. The Balance of Equities Favors the Plaintiffs

With the severity of harm imminent to the Plaintiff, the Plaintiff is far more at risk of suffering than the Defendant. This is because, the Defendant is already engaging in illegal and unfair business practices, which has already caused harm to the Plaintiff. So, putting a stop to those practices to protect the Plaintiff and their rights would be more equitable.

D. The Issuance of a Preliminary Injunction is in the Public Interest

This issuance of a Preliminary Injunction is in the Public Interest due to it protecting the rights of the consumer, as stated and aforementioned, and the 14th Amendment citizen.

## II. The Bond Amount Is Reasonable

The amount of security proposed is more than sufficient to compensate the Defendant if wrongfully enjoined, because it would satisfy the balance due on the account in dispute and cover additional fees incurred by the Defendant for court.

**CONCLUSION**

For the foregoing reasons, this Court should grant the injunctive relief Plaintiffs request, approve security in the amount of Twenty Five Thousand Four Hundred Seven dollar and 61/100 ($25,407.61), provide Plaintiffs with an opportunity to conduct expedited discovery, and order such further relief as this Court deems appropriate. Dated: 06/01/2023

Respectfully submitted,

*Gladney Abram A*

_____
[Gladney; Abram-A ]
[5000 View Drive Unit 5409, Woodstock, Georgia, 30189]
[404-436-4973]
[abramgladney@yahoo.com]

Attorney for Plaintiff ABRAM GLADNEY

State Court of Cherokee County
**E-Filed**
23SCE0514
6/23/2023 3:47 PM  MP
Patty Baker, Clerk
Civil Division

## IN THE STATE COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

ABRAM GLADNEY,          )
            )
       Plaintiff,      )
            )     Civil Action File No.:
v.               )     23SCE0514
            )
CONSUMERS CREDIT UNION,   )
            )
       Defendant.    )

### ANSWER OF DEFENDANT CONSUMERS CREDIT UNION

COMES NOW, Defendant, Consumers Credit Union ("Consumers') by and through the undersigned attorneys, and files this Answer to Plaintiff's Complaint as follows:

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim against the Defendant upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's failure to plead special damages in this action bars his recovery pursuant to O.C.G.A. § 9-11-9(g).

### THIRD DEFENSE

Plaintiff has failed to plead facts the essential elements of the alleged contract at issue or its alleged breach.

### FOURTH DEFENSE

Plaintiff has failed to plead essential elements of a claim for securities fraud or facts or the alleged securities at issue.

### FIFTH DEFENSE

Plaintiff has failed to allege facts establishing venue or jurisdiction.

1

## SIXTH DEFENSE

Consumers asserts the affirmative defense of accord and satisfaction.

## SEVENTH DEFENSE

Consumers pleads the affirmative defense of failure of consideration.

## EIGHTH DEFENSE

Consumers pleads the affirmative defense of the statute of frauds.

## NINTH DEFENSE

Consumers pleads the affirmative defense of waiver and estoppel.

## TENTH DEFENSE

Consumers pleads the affirmative defense of release.

## ELEVENTH DEFENSE

Consumers pleads the affirmative defense of failure of consideration.

## TWELFTH DEFENSE

Plaintiff's claims are barred in whole or in part by Plaintiff's own acts or omissions.

## THIRTEENTH DEFENSE

If Plaintiff has suffered any damage, they were proximately caused, in whole or in part, by Plaintiff's own acts or negligence.

## FOURTEENTH DEFENSE

The damages claimed by Plaintiff were caused by a person or persons for whose conduct Consumers was not legally responsible.

## FIFTEENTH DEFENSE

Plaintiff has failed to mitigate damages.

## SIXTEENTH DEFENSE

Some or all of Plaintiff's claims are barred by the doctrine of res judicata and/or collateral estoppel.

2

**SEVENTEENTH DEFENSE**

Plaintiff lacks standing and/or capacity to assert some or all of the claims alleged in the Complaint.

**EIGHTEENTH DEFENSE**

Consumers intends to rely upon any other affirmative defenses that are not apparent from the fact of the Complaint or about which it may become aware during the course of discovery, and accordingly, reserves the right to seek to amend its Answer to assert such defense.

**NINETEENTH DEFENSE**

Responding specifically to the allegations contained in the Plaintiff's Complaint, Consumers states as follows:

**1**.

Consumers states that the first sentence of the Complaint does not assert any allegations against it and contains legal conclusions to which no response is required; however, to the extent a response is required, Consumers is without knowledge to either admit or deny the allegations of the first sentence of Plaintiff's Complaint and on that basis denies it.

**2.**

Consumers admits that Sean Bowers is an employee of Consumers. The remaining allegations contained in the second sentence are nonsensical and incomprehensible, and are denied on that basis.

**3**.

Consumers admits that it received the referenced correspondence from Plaintiff, but denies that Plaintiff had any right to make these demands and denies that said correspondence has any contractual or legal significance whatsoever.

**4.**

Consumers admits that Plaintiff sent Consumers a power of attorney form in which Plaintiff purported to appoint himself as agent of himself. Consumers denies the remaining allegations contained in the fourth sentence of Plaintiff's Complaint.

**5.**

Consumers denies the allegations contained in the fifth sentence of Plaintiff's Complaint.

**6.**

Consumers shows that the sixth sentence of Plaintiff's Complaint contains legal conclusions to which no response is required; however, to the extent that a response is required, Consumers denies the allegations of the sixth sentence of Plaintiff's Complaint.

**7.**

Consumers admits that Sean Bowers is an employee of Consumers. Consumers shows that the remaining allegations contained in the seventh sentence contain legal conclusions to which no response is required; however, to the extent that a response is deemed required, Consumers denies the allegations of paragraph 7 of Plaintiff's Complaint.

**8.**

Consumers denies the allegations contained in the eighth sentence of Plaintiff's Complaint.

**9.**

Any allegations in the Complaint not heretofore answered, qualified or denied are here and now denied as though set forth specially and denied.

WHEREFORE, Defendant Consumers Credit Union prays:

a)        That this matter be dismissed with prejudice;

b)        Award Consumers its reasonable attorney's fees, costs, and expenses pursuant to applicable law; and

c)        For such other and further relief that the Court deems just and proper.


/s/ Brenton Bean
BRENTON BEAN
GA Bar No. 044351
Attorneys for Defendant Consumers Credit Union

LITCHFIELD CAVO LLP
2100 Riveredge Parkway
Suite 1200
Atlanta, Georgia  30328
(770) 628-7111
bean@litchfieldcavo.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served counsel of record in the foregoing matter with the attached document by electronic filing and/or depositing a copy of the same in the United States Mail in an envelope with sufficient postage thereon addressed as follows:

Abram Gladney
5000 View Drive, Unit 5409
Woodstock, GA 30189

This 23rd day of June, 2023.

/s/ Brenton S. Bean
BRENTON S. BEAN
GA Bar No. 044351
Attorney for Defendant Consumers Credit Union

LITCHFIELD CAVO LLP
2100 Riveredge Parkway
Suite 1200
Atlanta, Georgia  30328
(770) 628-7111
bean@litchfieldcavo.com

State Court of Cherokee County
**E-Filed**
23SCE0514
6/23/2023 4:10 PM  BW
Patty Baker, Clerk
Civil Division

## IN THE STATE COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

ABRAM GLADNEY,         )
         )
      Plaintiff,    )
         )    Civil Action File No.:
v.         )    23SCE0514
         )
CONSUMERS CREDIT UNION,   )
         )
      Defendant.   )

## <u>MOTION TO DISMISS</u>

COMES NOW, Consumers Credit Union, Defendant in the above-styled action, by and through its undersigned counsel, and hereby moves the Court to dismiss with prejudice the claims asserted in Plaintiff's complaint on the grounds that the Plaintiff fails to state a claim upon which relief may be granted pursuant to O.C.G.A. §9-11-12(b)(6). Defendant incorporates its Brief in Support of Motion to Dismiss filed herewith for the arguments in support of this motion.

Wherefore, Defendant Consumers Credit Union respectfully requests that the Court dismiss Plaintiff's claims against it with prejudice.

Respectfully submitted, this 23rd day of June, 2023.

*/s/ Brenton S. Bean*
BRENTON S. BEAN
GA Bar No. 044351
*Attorney for Defendant Consumers Credit Union*

**LITCHFIELD CAVO LLP**
2100 Riveredge Parkway
Suite 1200
Atlanta, Georgia  30328
(770) 628-7111
(678) 628-7101 (Fax)
bean@litchfieldcavo.com

State Court of Cherokee County
\*\*\*EFILED\*\*\*
23SCE0514
6/23/2023 4:10 PM BW
Patty Baker, Clerk
Civil Division

## IN THE STATE COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

ABRAM GLADNEY,                )
                             )
     Plaintiff,              )
                             )    Civil Action File No.:
v.                           )    23SCE0514
                             )
CONSUMERS CREDIT UNION,       )
                             )
     Defendant.              )

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the foregoing **MOTION TO DISMISS** upon all parties to this matter by electronically filing via Odyssey e-File GA, which will automatically send notification of filing to counsel of record.

Abram Gladney
5000 View Drive, Unit 5409
Woodstock, GA 30189

Dated June 23, 2023.

/s/ Brenton S. Bean
BRENTON S. BEAN
GA Bar No. 044351
*Attorney for Defendant Consumers Credit Union*

**LITCHFIELD CAVO LLP**
2100 Riveredge Parkway
Suite 1200
Atlanta, Georgia  30328
(770) 628-7111
(678) 628-7101 (Fax)
bean@litchfieldcavo.com

State Court of Cherokee County
**E-Filed**
23SCE0514
6/23/2023 4:10 PM  BW
Patty Baker, Clerk
Civil Division

IN THE STATE COURT OF CHEROKEE COUNTY
STATE OF GEORGIA

ABRAM GLADNEY,                          )
                                        )
      Plaintiff,                        )          Civil Action File No.:
                                        )          23SCE0514
v.                                      )
                                        )
CONSUMERS CREDIT UNION,                 )
                                        )
      Defendant.                        )
_____         )

### DEFENDANT CONSUMERS CREDIT UNION'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE

Defendant, CONSUMERS CREDIT UNION, through its undersigned counsel and pursuant to OCGA § 9-11-12(b)(6), hereby files this Brief in Support of its Motion to Dismiss Plaintiff's Complaint (the "Complaint") and as grounds state.

## I.  FACTUAL BACKGROUND

The Plaintiff filed his initial and only Complaint on May 5, 2023, alleging the CFO, Sean Bowers, of the Defendant breached his contract and committed securities fraud.

The Plaintiff's Complaint is limited and poorly fabricated.  The Plaintiff claims to have instructed the CFO of the Defendant to perform the fiduciary duty of applying the Plaintiff's principal balance to the Plaintiff's account 8093416820 in satisfaction of a debt. (Lines 4-5).  The Plaintiff claims to have instructed the Defendant three times to perform: 1st letter of instructions, 2nd opportunity to cure, and 3rd default judgment. (Lines 5-6).  The Plaintiff further alleges to have submitted a negotiable instrument with partial payment of an undisclosed amount to satisfy, in full, a debt of $25,407.61. (Line 8-9).  Finally, the Plaintiff states that five business days were given to perform the duties alleged by the Plaintiff and no response was ever given. (Line 12-13).

## II.   <u>LEGAL STANDARD FOR EVALUATING A MOTION TO DISMISS</u>

Pursuant to OCGA § 9-11-12(b)(6), a party may assert, by motion, the defense of failure to state a claim upon which relief can be granted.   Under Georgia law, "a trial court may grant a motion to dismiss for failure to state a claim upon which relief may be granted when '(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In reviewing such a motion, any doubts regarding the complaint must be construed in favor of the plaintiff." *Steffey v. Ameris Bank*, 366 Ga. App. 699, 699 (2023) (*quoting Norman v. Xytex Corp.*, 310 Ga. 127, 130-131 (2020)).

When presented with a motion to dismiss for failure to state a claim, a court must examine the sufficiency of the pleadings. *Williams v. DeKalb County*, 308 Ga. 265, 268-69 (2020); *see also* O.C.G.A. § 9-11-12(b)(6). In considering the pleadings, all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. *Id.* A motion to dismiss should be granted where a petition lacks a legal basis for recovery. *Villa Sonoma at Perimeter Summit Condominium Association, Inc. v. Commercial Industrial Building Owners Alliance, Inc.*, 349 Ga. App. 666, 666 (2019); *Pugh v. Frank Jackson Lincoln-Mercury, Inc.*, 151 Ga. App. 320, 322 (1979) ("Where a complaint reveals a state of facts which affirmatively shows that there is no liability on the defendant, it is subject to dismissal.").

The issue is whether "[the complaint] sufficiently gave [the defendant] fair notice of the claim and a general indication of the type of litigation involved." *Lathem v. Hestley*, 270 Ga. 849, 850 (1999).

## ARGUMENT

**A.  Plaintiff has Failed to State a Cause of Action for Breach of Contract.**

To state a claim for breach of contract, the complaint must allege the existence of a contract, the failure of the defendant to perform an obligation under the contract, and resulting damage. *Steffey v. Ameris* Bank, 366 Ga. App. 699 (2023) (*quoting Douglas v. McNabb Realty Co.*, 78 Ga. App. 845, 850 (1949)).

The Plaintiff's claim should be dismissed because he fails to allege facts that would support a claim for breach of contract and fails to set forth the elements for such a cause of action.  There are simply no allegations of exactly what the Plaintiff claims to be the "breach of contract".

The Complaint consists of only one rambling narrative paragraph of 14 lines in length that is clearly insufficient. The Complaint is missing crucial details of contract terms and breach thereof such as (1) what the amount is that is to be used to satisfy the $25,407.61 debt, (2) what the debt is for, (3) a basis for a fiduciary duty owed by Sean Bowers or what his "fiduciary duties" are, and/or (4) what the contractual performance is that the Plaintiff claims that he completed, etc. Even more so, the Plaintiff claims the signing of the payment coupon had the legally binding effect of discharging his debt and created a new obligation, yet (1) the terms were only decided by him, (2) those terms are unstated, (3) unknown security interest, payment schedule, or interest rate, and (4) were never agreed to by the Defendant.  The Plaintiff does not even allege damages purportedly flowing from this alleged breach of contract.

**B.  Plaintiff has Failed to State a Breach of "Fiduciary Duties"**

In order to establish a breach of fiduciary claim under Georgia law, a plaintiff must show: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by the breach. *Ewing v. Scott*, 366 Ga. App. 466, 472 (2023) (citing *Schinazi v. Eden*, 338 Ga. App. 793, 798 (2016)).

Georgia law holds "[c]reditors deal with debtors at arm's length, and do not stand in a fiduciary capacity in relationship to the debtor." *Straus v. Renasant Bank*, 326 Ga. App. 271, 276 (2014)(citing *Phillips v. Atlantic Bank & Trust Co*., 168 Ga. App. 590, 591–592 (1983)). In other words, a creditor and debtor relationship generally does not give rise to a fiduciary duty.

The Plaintiff fails to establish the existence of a fiduciary duty between himself and the Defendant. Here, the Plaintiff is a borrower (debtor) and the Defendant is a lender (creditor), which, alone, does not give rise to a fiduciary relationship. The Complaint does not establish any other basis for the existence of a fiduciary relationship. Furthermore, the tenuous relationship between the Plaintiff and the Defendant's CFO, Sean Bowers, is even more remote, exacerbating the absence of any fiduciary duties. Therefore, the Plaintiff clearly fails the first element (identifying the existence of a fiduciary duty) to show a breach of a fiduciary duty. In addition, Plaintiff fails to allege acts that would constitute a breach of fiduciary duty or any damages caused thereby.

### C.  Plaintiff has Failed to State a Cause of Action for Security Fraud.

There is no security fraud violation because the Plaintiff's claim does not mention a security. "An investment contract is a "security" if the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Golden Atlanta Site Development, Inc. v. Nahai*, 299 Ga. App. 646 (2009). Here, the Complaint does not address an investment contract, investment of money, a common enterprise, or the expectation to make a profit. The Plaintiff is confused on what "Security Fraud" is because while the Complaint does mention a negotiable instrument, a negotiable interest is not necessarily a security.

### D.  Plaintiff is Attempting to Employ a Debt Elimination Scheme.

The Plaintiff is trying to employ a "debt elimination scam," specifically the "lender owes the borrower scam."  Specifically, Plaintiff is attempting to use a ploy by protesting the debt by

claiming that "…. the lender's failure to respond, or to take any affirmative action to reject or dispute the protest, results in a liability owed by the lender to borrower. Thereafter, the borrower declares a "default" by the lender and attempts to record a lien, judgment, or arbitration award, and sometimes files a UCC-1 financing statement with the Secretary of State, listing the lender and its principals/officers as debtors." Stuart B. Wolfe, Debt Elimination Schemes, 59 *Consumer Fin. L.Q. Rep*. 357, 359 (2005).

Here, the Plaintiff is claiming that because the Defendant failed to respond, or take any affirmative actions with the Plaintiff's dispute, the Defendant is now in default. However, the Plaintiff's claim not only lacks logical coherence but also demonstrates a fundamental lack of legal merit, as stated by the aforementioned reasons. The existing loan agreement established the rights and obligations of the parties, and Plaintiff is without right to unilaterally replace it with a contract of his choosing that contains no specific terms. Plaintiff is likewise without any right to impose deadlines for Defendant to response to his scam or the legal consequences of failing to do so.

### III.   <u>CONCLUSION</u>

The Complaint is incomplete with tons of grammatical errors making it difficult to comprehend, and is void of sufficient allegations to prepare a proper response.

For the reasons set forth herein, the Plaintiff fails to state a claim for breach of contract and security fraud.  Accordingly, Defendant, CONSUMERS CREDIT UNION, respectfully requests that this Court dismiss the Plaintiff's Complaint in full and with prejudice.

Respectfully submitted, this 23rd day of June, 2023.

*/s/ Brenton S. Bean*
BRENTON S. BEAN
GA Bar No. 044351
*Attorney for Defendant Consumers Credit Union*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served counsel of record in the foregoing matter with the attached document by electronic filing and/or depositing a copy of the same in the United States Mail in an envelope with sufficient postage thereon addressed as follows:

Abram Gladney
5000 View Drive, Unit 5409
Woodstock, GA 30189

This 23rd day of June, 2023.

_/s/ Brenton S. Bean_
BRENTON S. BEAN
GA Bar No. 044351
Attorney for Defendant Consumers Credit Union

LITCHFIELD CAVO LLP
2100 Riveredge Parkway
Suite 1200
Atlanta, Georgia  30328
(770) 628-7111
bean@litchfieldcavo.com

State Court of Cherokee County
**E-Filed**
23SCE0514
6/26/2023 3:02 PM  MP
Patty Baker, Clerk
Civil Division

## IN THE STATE COURT OF CHEROKEE COUNTY

### STATE OF GEORGIA

|  |  |  |
|---|---|---|
| ABRAM GLADNEY by and through his Attorney in Fact, Gladney; Abram-A | ) ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE** |
| | ) | **NO. 23SCE0514** |
| | ) | |
| **CONSUMERS CREDIT UNION** | ) | |
| | ) | |
| Defendant | ) | |

### AMENDED COMPLAINT

COMES NOW, Plaintiff, ABRAM GLADNEY ("GLADNEY') by and through

his Attorney in Fact, Abram Gladney, appears before this court seeking damages in

excess of $15,000,000 from Defendant CONSUMERS CREDIT UNION

("CONSUMERS") and the reimbursement of unearned interest given to the Defendant, in

the amount of $2,637.90. Such damages arise out of CONSUMER'S: (1) security fraud

against GLADNEY; (2) breach of fiduciary duty owed to GLADNEY; (3) breach of

contract and covenant of good faith and fair dealing in their interactions with

GLADNEY; (4) racketeering activity against GLADNEY.

### PARTIES

1.  GLADNEY is a legal person who resides in Cherokee County in the State of

Georgia at 5000 View Drive Unit 5409, Woodstock, Georgia 30189.

2.   Pursuant to the power vested in GLADNEY, Gladney; Abram- A ("Abram") was granted powers of attorney in fact over their estate.

3.   Defendant CONSUMERS is a non-profit organization with it's headquarters located at the address of 1075 Tri-State Parkway Suite 850, Gurnee, IL 60031 and conducts business in Cherokee County in the State of Georgia.

## JURISDICTION AND VENUE

4.   The court has personal jurisdiction over plaintiff GLADNEY.

5.   The court has general jurisdiction over Defendant CONSUMERS.

6.   This court has jurisdiction over subject matter.

7.   The events, transactions, and occurrences forming the factual nexus and subject matter of Plaintiff's complaint took place within Cherokee County in the State of Georgia.

## FACTS

8.   On or around September 19, 2022 GLADNEY submitted an application, which is a security pursuant to 15 U.S. Code § 77b to the Defendant CONSUMERS.

9.   With the Plaintiff being the party that submitted the security, thus investing in and giving value thereto the transaction, that gave GLADNEY the equitable title and rights thereof.

10. This application was submitted to refinance the collateral, 2021 Nissan Altima

with VIN 1N4BL4CV6MN326737 ("Altima"), previously provided to the Plaintiff.

2

11. The CFO of the Defendant, Sean Bowers ("Bowers"), then accepted the

application to refinance the Altima and thus created a contract and an account with

GLADNEY with the account number being 8093416820.

12. With the creation of this account and the newly formed contract between

GLADNEY AND CONSUMERS, that subsequently meant that Bowers owed the

Plaintiff, who is the equitable owner, a fiduciary duty to properly manage and handle

GLADNEY'S account.

13. The initial fiduciary duty Bowers owed the Plaintiff was to submit the application

to the Federal Reserve Bank as collateral, pursuant to the Federal Reserve Act Section 16

Part 2, for the Federal Reserve Notes to fund GLADNEY'S account.

14. The initial duty, along with others to be later mentioned, affirms the power of

Banks given, pursuant to 12 U.S. Code § 1431, to borrow securities.

15. The Plaintiff, unknowingly and misinformed at the time, then proceeds to give

unearned interest on normal occurrences every month thereafter to CONSUMERS until

3

December 27, 2022, which at that point totaled to be $1,985.98.

16. On December 27, 2022, the Plaintiff made the informed decision to sign an ACH

Origination Agreement for CONSUMERS to stop automatically withdrawing the

unearned interest from his Checking account.

17. Also on December 27, 2022, the Plaintiff requested that he stop receiving

electronic communications and statements every month and instead receive paper

paper statements communications via mail.

18. As the Plaintiff understood and assumed, he would start receiving paper

Statements in the mail as he requested, starting for the February 2023 period since

January 2023 was already issued at that time.

19. The time for February's statement passes and the Plaintiff then proceeded to call

the Contact Center of CONSUMERS, in or around the first week of February.

20. Over the course of the phone conversation, GLADNEY was informed that his

amendment to the account for receiving paper statements had still not yet been updated

for some unknown reason.

21. By the end of the call, however, GLADNEY was assured that the account

preference was updated and that he would be receiving his statement in the mail within

within the next week and was instructed to call back if he did not receive anything by

then.

22. The week went by, and GLADNEY still did not receive his statement in the mail.

23. With that, GLADNEY then followed instructions and called the Contact Center

of the Defendant again.

24. This time, GLADNEY was also informed that the previous error of not updating

his preference to receive paper statements had still not been updated.

25. But the current representative stated to GLADNEY that they could see the

notation from the call with the previous representative earlier that month to update the

account preferences.

26. So, the current representative again assured GLADNEY that he should be

5

receiving his statement by the end of the month since the due date was approaching on

February 21, 2023.

27. GLADNEY then waited until the end of the month to find no statement mailed to

him as he was previously assured.

28. In an act of good faith, GLADNEY waited another two weeks to see if he would

receive his statement he was promised and entitled to back from his request made on

December 27, 2022.

29. As of March 15, 2023, GLADNEY had still not received his statement he was

owed and promised and had begun to receive phone calls from the Defendant's

collections department stating that a balance was due on the account.

30. Also, on or around this date, GLADNEY had received a notice from the

collections department stating that if the balance of $651.92 was not paid by the end of

day on or around March 21, they would potentially take action to repossess the collateral

they used for borrowing GLADNEY'S security.

6

31. So, on March 16, 2023, GLADNEY called in again to the Contact Center

of the CONSUMERS to see where his statement with the alleged balance

was.

32. On the March 16, 2023 GLADNEY spoke with Contact Center Representative

Dejah Tate ("Tate").

33. As GLADNEY spoke with Tate and informed her of the issue that had been going

on with the error and negligence by the Defendant on March 16, 2023, she emailed

GLADNEY copy of February's statement.

34. This email or notice to the Plaintiff, immediately after the phone call ended,

effectively served as notice to Abram also.

35. Abram, now in possession of the statement views it and notices the date the bill is

due is on March 21, 2023.

36. After deliberation and careful consideration in regard to the safety and best

interest of the Plaintiff, Abram made the well-informed decision, knowing that pursuant

7

to 15 U.S. Code § 1615 he would be owed that money back once he fully completed his

contractual obligation and  performance, to send in the payment of the $651.92 to

temporarily perform his contractual obligation.

37. Abram did this, with the intent to complete his full contractual obligation and

performance once he received his next statement and the account was current.

38. On or around April 12, 2023, Abram finally receives the first paper statement in

the mail from the Defendant, and notices it has the due date of January 21, 2023.

39. Abram also, upon looking at the bill, noticed that it had a positive balance on it.

40. Abram knew, pursuant to 12 U.S. Code § 1431, that banks have the power to pay

interest on the security they borrowed thereon.

41. Abram also knew that in the Constitution Article 1 Section 8, Congress was

granted the power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts

and provide for the common Defense and general Welfare of the United States.

42. With this in mind, Abram remembered the definition of Debts or obligations of

the United States pursuant to 18 U.S. Code § 8.

43. In this definition, provided by Congress, it mentions bills.

44. As Abram thought about the mentioning of bills in that definition given by Congress, he also remembered one of the other powers that Congress has, which is to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.

45. In remembering this, Abram then also remembered that in an attempt to regulate commerce among the several States, Congress passed two acts being the Bill of Exchange Act and the Federal Reserve Act.

46. In the Bill of Exchange, it not only explains the requirements to properly accept, indorse, and further negotiate bills, but it also defines the term "bill" in the proper context.

47. It also mentions in the Bill of Exchange Act that the sum payable by a bill is a sum certain, within the meaning of the Act and that it was required to be paid with interest.

48. With this information, Abram was able to deduce that the positive balance on the

bill was the interest the Defendant owed the Plaintiff, pursuant to 12 U.S. Code § 1431,

who is the equitable owner of the account or payee printed on the bill.

49. Abram then negotiated the bill, with the full knowledge that was a security,

pursuant to 18 U.S. Code § 8, on behalf of the Plaintiff back to Bowers, with instructions

on how to properly perform his fiduciary duty of distributing the interest the Plaintiff was

owed, back to the Plaintiff's account number 8093416820 ("account") for Set Off, on

April 12, 2023.

50. The instructing of Bowers and negotiation of the bill on behalf of the Plaintiff was

a part of Abram's fiduciary duty owed to the Plaintiff as his Agent and was also required

of Abram to complete the contractual obligation and performance owed to the Defendant,

as the beneficial owner of the account.

51. The instructions were to apply the Plaintiff's balance, which is the equity and

interest he is entitled to, back to GLADNEY'S account for Set Off each and every

10

billing cycle.

52. The instructions also stated that Bowers was to respond in writing within five

business days to Plaintiff's aforementioned address giving notice that the instructions

were received and applied.

53. Lastly, the instructions clearly stated that if no response was received in five

business days, that Abram could assume the instructions were completed.

54. This package with the negotiable instrument and letter of instructions included a

Power of Attorney to put on file, letting Bowers know that the Plaintiff has granted

Abram the power to act on his behalf and a copy of the Federal Reserve Act Section 16

Part 1 and Part 2.

55. This initial package was sent out via Express 1-Day Mail by the United States

Postal Service on April 12, 2023, with the tracking number EI244127062US.

56. Abram was able to see that the package had, in fact, been delivered to the

Defendant's headquarters address aforementioned, on April 13, 2023, at 12:16 pm.

11

57. Abram then waited the five business days to receive the notice back in writing

from Bowers, letting him know that the instructions were received and applied.

58. At the end of the fifth business day, which fell on April 19, 2023, Abram did

not receive a notice in writing back from Bowers letting him know that his instructions

have been received and applied.

59. Abram was well within his rights to assume the instructions had been completed

at this point but, in an act of good faith and good business practice, Abram typed out a

second notice to Bowers.

60. In this second notice titled Opportunity to Cure (the Breach of Fiduciary Duty),

Abram again instructed Bowers to perform his fiduciary duty, aforementioned, owed to

the Plaintiff.

61. This duty owed to the Plaintiff, was to apply the Plaintiff's balance, which is the

interest and equity owed to the Plaintiff, back the Plaintiff's account for Set Off each and

every billing cycle.

62. These instructions also stated that Bowers was to respond in writing within five

business days to Plaintiff's aforementioned address giving notice that the instructions

were received and applied.

63. Most importantly, the instructions stated very clearly again, that if no response

was received in five business days, that Abram could assume the instructions were

completed.

64. The only new addition to the letter of instructions aside from the title, was the

provision of the tracking number for the first package, just in case it was mishandled or

misplaced somehow and Bowers would then be able to locate it.

65. These instructions along with a copy of the indorsed negotiable instrument,

which is a security pursuant to 18 U.S. Code § 8, and copy of the Federal Reserve Act

Section 16 Part 1 and Part 2 formed package number two.

66. This second package was sent out via Express 1-Day Mail by the United States

Postal Service on April 20, 2023, with the tracking number EJ395480719US.

13

67. Abram was able to see that the second package had, in fact, been delivered to the

Defendant's headquarters address aforementioned on April 21, 2023, at 3:06 pm.

68. Abram then waited another five business days to receive the notice back in

writing from Bowers, letting him know that the instructions were received and applied.

69. At the end of the fifth business day, which fell on April 28, 2023, Abram had still

not yet received anything in writing back from Bowers letting him know that his

instructions were received and applied.

70. At this point again, Abram was well within his rights to assume his instructions

had been completed, as he previously stated in his instructions.

71. But again, in an act of good faith and good business practice, Abram typed out the

final notice to Bowers, to give Bowers one more opportunity to perform his Fiduciary

duty, aforementioned, owed to the Plaintiff.

72. In this final notice titled Default Judgement (two previous unrebutted affidavits),

Abram again instructed Bowers to perform his fiduciary duty owed to the Plaintiff.

14

73. This duty owed to the Plaintiff, was to apply the Plaintiff's balance, which is the

interest and equity owed to the Plaintiff, back the Plaintiff's account for Set Off each and

every billing cycle.

74. These instructions again stated that Bowers was to respond in writing within five

business days to Plaintiff's aforementioned address giving notice that the instructions

were received and applied.

75. These instructions along with one more copy of the indorsed negotiable

instrument, which is yet another security pursuant to 18 U.S, Code § 8, a copy of the

Federal Reserve Act Section 16 Part 1 and Part 2 and now a copy of the Federal Reserve

Act Section 29 Parts (a) through (d), worked to form the third and final package.

76. This final package was sent out via Express 1-Day Mail by the United States

Postal Service on April 28, 2023, with the tracking number EI249128728US.

77. Abram was then able to see that the third and final package had been delivered to

the Defendants aforementioned address on April 29, 2023, at 11:44 am.

78. From then, Abram waited his final five business days to receive a written notice

from Bowers in the mail, stating that his instructions had been received and completed.

79. At or around the fifth business day, Abram received a notice in the mail, not from

Bowers but, from the collections department of the Defendant.

80. In this notice, it claimed that the Plaintiff was allegedly in default under the

contract aforementioned due to the Plaintiff supposedly being late on making payments.

81. Abram, after reading this notice, could only conclude four things.

82. The first is, due to the negotiable instruments, which is a security pursuant to

18 U.S. Code § 8,  being delivered therefore accepted, and never returned which would

have served as a valid notice of dishonor, and not performed this was in fact an act of

security fraud and interference with commerce.

83. The second is, the CFO of the Defendant still had not performed his fiduciary

duty owed to the Plaintiff, which served as his third time not performing.

84. This breach of fiduciary duty for the third time, pursuant to the Federal Reserve

16

Act Section 29 Part (d) placed the Defendant in the Third Tier of Civil Money Penalty

Violations.

85. The first Two Tiers of Civil Money Penalties had already been reached and

surpassed after the first and second occurrences of the breach transpired.

86. In this section, it clearly states: "any member bank which, and any institution-

affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act)

with respect to such member bank who—

    1.  knowingly—
        A.  commits any violation described in subsection (a);
        B.  engages im any unsafe or unsound practice in conducting the affairs of
           such credit union; or

        C.  breaches any fiduciary duty; and


    2.  knowingly and recklessly causes a substantial loss to such credit union or a
        substantial pecuniary gain or other benefit to such party by reason of such
        violation, practice, or breach,

    shall forfeit and pay a civil penalty in an amount of not to exceed the applicable
    maximum amount determined under subsection (d) for each day during which
    such violation, practice or breach continues."


87. The third thing Abram concluded was that this letter served as an act of extortion,

due to him tendering payment three times before the composition of this notice.

17

88. The fourth and final thing Abram could then conclude was, due to the continued

unsafe, unsound, harmful, abusive, and negligent practices displayed by the Defendant,

the contract between the Plaintiff and the Defendant was breached due to non

performance.

## COUNT I: SECURITY FRAUD

89. Plaintiff re-alleges the allegations set forth in Paragraphs 1-88 above and

incorporates same herein by reference.

90. At all times relevant to this litigation, Defendant CONSUMERS owed a fiduciary

duty to GLADNEY.

91. Defendant CONSUMERS received multiple securities from GLADNEY over the

course of the eight months since the contract was first conceived on September 19, 2022.

92. The most recent of which were the three securities provided to the Defendant's

CFO Bowers, in the month of April 2023.

93. In possession of these securities, the Defendant did not perform the negotiable

18

instrument to Set Off the account, which violated the right of the Plaintiff to access his

own securities and thus committing security fraud.

## COUNT II: INTENTIONAL BREACH OF FIDUCIARY DUTY

94. Plaintiff re-alleges the allegations set forth in Paragraphs 1-88 above and

incorporates same herein by reference.

95. At all times relevant to this litigation, Defendant CONSUMERS owed a fiduciary

duty to GLADNEY.

96. Defendant's CFO Bowers intentionally breached that duty on more than one

occasion and such breaches were the actual and proximate cause of harm to GLADNEY.

97. Accordingly, Defendant CONSUMERS is liable in damages to GLADNEY in

excess of $15,000,000, the exact amount to be proven at trial, arising out of

CONSUMER'S intentional breach of fiduciary duty to GLADNEY.

## COUNT III:  BREACH OF CONTRACT AND COVENANT OF GOOD

## FAITH AND FAIR DEALING

98. Plaintiff re-alleges the allegations set forth in Paragraphs 1-88 above and

incorporates same herein by reference.

19

99. At all times relevant to this litigation, Defendant CONSUMER'S was in a contractual relationship with GLADNEY and owes a duty to GLADNEY to act in good faith and deal with him fairly.

100.     Defendant breached that duty on more than one occasion and such breaches were the actual and proximate cause of harm to GLADNEY.

101.     Accordingly, Defendant CONSUMER'S is liable in damages to GLADNEY in excess of $15,000,000, the exact amount to be proven at trial.

## COUNT IV: RACKETEERING ACTIVITY INTERFERING WITH

## CONDUCTION OF COMMERCE

102.     Plaintiff re-alleges the allegations set forth in Paragraphs 1-88 above and incorporates same herein by reference.

103.     At all times relevant to this litigation, Defendant engaged in commerce with GLADNEY and owed a fiduciary duty to GLADNEY to conduct commerce fairly.

104.     Defendant interfered with the conduction of commerce on more than one occasion and such interferences were the actual and proximate cause of harm to GLADNEY and were not in his best interests.

20

105.      Accordingly, Defendant CONSUMER'S is liable in damages to

GLADNEY in excess of $15,000,000, the exact amount to be proven at trial.

### COUNT V: PUNITVE DAMAGES

106.      Plaintiff re-alleges the allegations set forth in Paragraphs 1-88 above and

incorporates same herein by reference.

107.      At all relevant time, Defendant CONSUMER'S owed GLADNEY a duty

to act with due care and regard for GLADNEY'S rights, safety and interests, including

GLADNEY'S property and financial interests.

108.      Defendant breached that duty of due care on more than one occasion and

such breaches constitute outrageous and reckless conduct and utter disregard of the

rights, safety and interests, including property and financial interests, of ABRAM

GLADNEY.

109.      Defendant's outrageous conduct towards GLADNEY was done with malice

or bad motives or reckless indifference to GLADNEY'S interests.

2|

110.    Accordingly, Defendant is liable for punitive damages to GLADNEY in

excess of $15,000,000, the exact amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

(a) Judgement entered in favor of Plaintiff and against Defendant on Counts

I-IV of plaintiff's complaint and an award of compensatory damages of not less than

$15,002,637.90;

(b) Judgement entered in favor of Plaintiff and against Defendant on Count V

(Punitive Damages) of this Complaint and award punitive damages of not less than

$15,000,000;

(c) Judgement entered in favor of Plaintiff and against Defendant granting the

injunction against any repossession attempts present or future.

(d) An award of pre-judgement interest, costs and post-judgement interest in

favor of GLADNEY and against Defendant; and

22

(e) Such further and other legal and equitable relief as the Court may deem

appropriate under the circumstances.

Dated this 26th day of June at Woodstock, Georgia.

By: _____

Gladney; Abram- A

Attorney in Fact

Agent for Plaintiff ABRAM GLADNEY

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by means of

e-mail on the 26th day of June, 2023 upon:

LITCHFIELD CAVO LLP

2100 Riveredge Parkway

Suite 1200

Atlanta, Georgia 30328

By: _____

23