# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| THOMAS D. CLOWER, : | |
| : | CIVIL ACTION FILE |
| Plaintiff, : | NO. _____ |
| : | |
| v. : | JURY TRIAL DEMANDED |
| : | |
| PROTO LABS, INC. and : | |
| RAPID, A PROTO LABS COMPANY, : | |
| : | |
| Defendants. : | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW THOMAS D. CLOWER and files this Complaint for Damages and Equitable Relief against Defendants PROTO LABS, INC. and RAPID, A PROTO LABS COMPANY showing this Honorable Court as follows:

## JURISDICTION AND VENUE

1. This civil action is brought pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.* (the "ADA") and Title I of the Civil Rights Act of 1991 to remedy unlawful employment practices based on a disability and for unlawful retaliation.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 and 1345.

3.  Venue is proper in this Court because the Defendants have conducted business in this judicial district and the employment practices involved in this dispute occurred in this judicial district.

## PARTIES

4.  Plaintiff THOMAS D. CLOWER ("Mr. Clower") is an individual currently residing in Atlanta, Dekalb County, Georgia. At all relevant times, Mr. Clower was an "employee" of Defendants within the meaning of the ADA.

5.  At all relevant times Mr. Clower was a "qualified employee" as defined by 42 U.S.C. §12111(8) of the ADA because he was employed by Defendants and at all relevant times was able to perform the essential functions of the position he held, with or without reasonable accommodation.

6.  Defendant PROTO LABS, INC. is a foreign corporation based in Maple Plain, Minnesota. It is not registered to do business in the State of Georgia and is the parent company of Defendant RAPID, a PROTO LABS COMPANY. It may be served with process by and through its President and Chief Executive Officer, Robert Bodor or its Chief Financial Officer, Daniel Schumacher at 5540 Pioneer Creek Drive, Maple Plain, Minnesota 55359.

7. Defendant RAPID, A PROTO LABS COMPANY is a foreign corporation doing business in but not registered to do business in the State of Georgia. It is, on information and belief, a wholly-owned subdivision or subsidiary of Defendant PROTO LABS, INC. RAPID is a quick-turn manufacturer of sheet metal and computer numerical control ("CNC") machined parts. RAPID may be served with civil process by its Chairman and Chief Executive Officer, Robert Bodor or its Chief Financial Officer, Daniel Schumacher at 5540 Pioneer Creek Drive, Maple Plain, Minnesota 55359.

8. At all times pertinent to this action, Defendants, jointly or individually, were Mr. Clower's "employer" as that term is defined by the ADA, 42 U.S.C. § 12111(5)(A).

9. At all relevant times, Defendants were engaged in the business of manufacturing services, including sheet metal fabrication, injection molding, CNC machining and 3D printing and had at least 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10. Defendants order raw materials and supplies from throughout the United States and sells and distributes their finished products throughout the United States and beyond.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Mr. Clower exhausted his administrative remedies under the ADA by timely filing a Charge of Discrimination with the EEOC on December 17, 2018, within 180 days of his termination. The EEOC assigned Mr. Clower's Charge of Discrimination number 410-2019-01850.

12. During the EEOC's lengthy investigation, Clower raised the issue that he had also been the victim of unlawful retaliation by having been terminated by Defendants less than 30 days after having engaged in protected activity.

13. On May 4, 2023, nearly four and one-half (4.5) years after he filed his Charge of Discrimination, the EEOC issued Mr. Clower a Determination and Notice of Rights.

14. This civil action is brought within 90 days of Mr. Clower's receipt of the EEOC's Determination and Notice of Rights.

## STATEMENT OF FACTS

15. Mr. Clower began his employment with Defendants on March 5, 2018 as a Sales Consultant. As a Sales Consultant for Defendants, Mr. Clower's sales territory included the State of Texas.

16. At all relevant times, Mr. Clower was a qualified individual or employee because he was able to perform the essential functions of the position he held, with or without reasonable accommodation from Defendant.

17. On August 3, 2018, Mr. Clower informed his Regional Sales Manager, Ryan Glenn ("Mr. Glenn") that he was a person with a disability and simultaneously submitted to Mr. Glenn a letter from Mr. Clower's physician requesting an accommodation (e.g., a modification to his work schedule) due to his disability.

18. On August 6, 2018, Mr. Glenn e-mailed Mr. Clower's written accommodation request to Joelle Stone (Defendants' Human Resources) and to David Paull (Mr. Glenn's manager).  In doing so, Mr. Glenn criticizes Mr. Clower's requested accommodation by indicating that: (a) it is inconsistent with the 9:00 a.m. – 5:00 p.m. work schedule Mr. Clower had previously agreed to five months earlier; (b) the requested accommodation would result in Mr. Clower "missing crucial morning hours during each day where other [sales representatives] usually are prospecting, closing business, supporting customer needs, attending daily and weekly team meetings, etc."; and (c) the requested accommodation would "make[] it hard for [Mr. Clower] to be 100% efficient in his role."

19. On August 9, 2018, Mr. Clower informed Mr. Glenn that he had become ill during a business trip to Texas, resulting in his cancellation of some scheduled, but non-critical business meetings with customers in Texas on August 8-9, 2018.

20. Mr. Clower was Defendants' only Sales Consultant covering the State of Texas.

21. On August 13, 2018, Mr. Clower's physical impairment worsened, and he informed Mr. Glenn by telephone that he was running a fever and that he would likely miss work the following day to go to the doctor.

22. Between August 14 and August 17, 2018, Mr. Clower was very ill and bedridden with a high fever, missing work.

23. Despite his illness, Mr. Clower continued to check his work e-mails and calls, forwarding them, as needed, to Mr. Glenn.

24. On August 16, 2018, ten (10) days after Mr. Clower had requested a reasonable accommodation from Defendants, Mr. Glenn sent an e-mail to Joelle Stone and David Paull with the subject line "Daniel Clower Activity Concerns" in which Mr. Glenn advocates for Mr. Clower's termination, or at least removal from his assigned sales territory.

25. On August 31, 2018, Defendants terminated Mr. Clower's employment for alleged poor performance.

## COUNT I

### VIOLATION OF THE ADA: FAILURE TO REASONABLY ACCOMMODATE AN INDIVIDUAL WITH A DISABILITY

26. The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to … discharge of employees." 42 U.S.C. § 12112(a).

27. The ADA's implementing regulations require employers to provide reasonable accommodation to qualified individuals with disabilities who are employees (or applicants for employment), unless doing so would cause undue hardship. The regulations set forth various categories of "reasonable accommodations," one of which is "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. §1630.2(o)(1)(ii) (1997).

28. On August 3, 2018, Mr. Clower informed Defendants of his need for a reasonable accommodation in his employment due to a disability.

29. Specifically, Mr. Clower requested a reasonable accommodation in the form of a modest adjustment to his working hours (e.g., to work between 11:00 a.m. and 8:00 p.m. instead of working 9:00 a.m. until 6:00 p.m.) due to his sleep

disorder.

30. Despite his requested reasonable accommodation, Defendants refused to reasonably accommodate his disability.

31. Had Defendants engaged in a good-faith, interactive process to reasonably accommodate Plaintiff's disability, and had the reasonable accommodation he requested not been feasible to permit him to perform the essential functions of his Sales Consultant position, Mr. Clower would have requested Defendants provide him with alternative reasonable accommodations.

32. Defendants discriminated against Mr. Clower by failing to provide him with a reasonable accommodation or to engage in the interactive process required under the ADA, as amended.

33. Defendants discriminated against Mr. Clower on the basis of his disability by using qualification standards that tend to screen-out an individual with a disability without showing that this was job-related for Mr. Clower's position and consistent with business necessity.

34. Defendants' stated reason for terminating Mr. Clower is pretextual.

35. Defendants' actions have caused, and will continue to cause, Mr. Clower to suffer damages for lost wages and benefits, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

36. Defendants' actions were done with malice and/or a reckless disregard for Mr. Clower's federally protected civil rights, entitling him to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## COUNT II

## VIOLATION OF THE ADA: DISCRIMINATION ON THE BASIS OF A DISABILITY

37. The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to … discharge of employees." 42 U.S.C. § 12112(a).

38. Mr. Clower suffers from a physical impairment which significantly impairs his major life activity of sleeping.

39. Notwithstanding this physical impairment, Mr. Clower was, at all relevant times, able to perform the essential functions of his Sales Consultant duties for Defendants.

40. Mr. Clower is a qualified individual with a disability.

41. On August 31, 2018, Defendants terminated Mr. Clower because of his disability in violation of his rights under the ADA.

42. Defendants' stated reason for terminating Mr. Clower's employment is pretextual.

43. In terminating his employment, Defendants have treated Mr. Clower less favorably than other similarly-situated employees who are outside Mr. Clower's protected class.

44. Defendants' violation of Mr. Clower's ADA rights was willful or done with malice or reckless indifference to the consequences of Mr. Clower's federally protected rights under the ADA, as amended.

45. As a direct and proximate cause of Defendants' unlawful actions, Mr. Clower has suffered both economic and non-economic losses in an amount to be specifically proven at trial.

## COUNT III

### VIOLATION OF THE ADA: DISCRIMINATION BASED ON BEING PERCEIVED OR "REGARDED AS" AN INDIVIDUAL WITH A DISABILITY

46. Defendant regarded Mr. Clower as having one or more physical impairments which substantially limited one or more major life activities.

47. Irrespective of whether Mr. Clower has a "disability" as defined by 42 U.S.C. § 12102(2)(C), Defendant perceived him as an individual having a disability.

48. Defendant unlawfully discriminated against Mr. Clower in violation of the ADA, as amended, when it perceived or regarded him as having a disability and terminated him as a result.

49. As a direct and proximate cause of Defendant's unlawful actions, Mr. Clower has suffered both economic and non-economic losses in an amount to be specifically proven at trial.

50. At all relevant times, Mr. Clower had the requisite skill and other job-related requirements needed to satisfactorily perform his position.

51. Defendant's actions have caused, and will continue to cause, Mr. Clower to suffer damages for lost wages and benefits, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

52. Defendant's actions were done with malice and/or reckless disregard for Mr. Clower's federally protected rights under the ADA, as amended, entitling him to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## COUNT IV

### VIOLATION OF THE ADA: UNLAWFUL RETALIATION

53. The ADA's retaliation clause prohibits an employer from discriminating against an individual because the individual has opposed something unlawful under the ADA or has been involved in some type of complaint activity. 42 U.S.C. § 12203.

54. On August 3, 2018, Mr. Clower engaged in protected activity when he informed his employer that he was a person with a disability who required a reasonable accommodation from Defendant. On August 6, 2018, Mr. Glenn criticized Mr. Clower's requested reasonable accommodations to his manager and to Defendant's Human Resources agent.

55. On August 16, 2018, Mr. Glenn sent an e-mail to Joelle Stone and David Paull with the subject line "Daniel Clower Activity Concerns" in which Mr. Glenn advocates for the termination of Mr. Clower's employment or removal from his assigned sales territory.

56. On August 31, 2018, Defendant terminated Mr. Clower's employment.

57. Defendants' termination of Mr. Clower was in retaliation for him engaging in protected activity, specifically, requesting a reasonable accommodation for a disability.

58. As a direct result of Defendants' actions, Mr. Clower has suffered damages in an amount to be proven at trial.

59. Defendant's actions were done with malice and/or reckless disregard for Mr. Clower's federally protected rights under the ADA, as amended, entitling him to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Grant a permanent injunction enjoining Defendant and its agents from engaging in any employment practice which discriminates against the Plaintiff and other similarly situated individuals because of their status of being disabled as defined by the Americans with Disabilities Act, as amended;

2. Grant Plaintiff judgment in his favor and against Defendant on all Counts of his Complaint;

3. Order Defendant to make Plaintiff whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

4. Order Defendant to compensate Plaintiff for mental and/or emotional damages and other compensatory damages suffered as a result of Defendant's unlawful discriminatory and retaliatory acts;

5. Award Plaintiff punitive damages for Defendant's willful and intentional violations of the ADA as provided by 42 U.S.C. §§12117(a), 12203(c) and Title VII, as provided by 42 U.S.C. §1981a(b);

6.  Order Defendant to grant Plaintiff front pay and benefits in the amount he would have earned or until such time as he obtains or could reasonably obtain such pay and benefits;

7.  Grant Plaintiff a jury trial on all issues so triable;

8.  Grant to Plaintiff his reasonable attorney's fee and reasonable expert witness fees together with any and all other costs associated with this action as provided by law; and

9.  Grant such additional relief as the Court deems proper and just.

Respectfully submitted,

*/s/ Dean R. Fuchs*
DEAN R. FUCHS
Georgia Bar No. 279170

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
(404) 688-6800 telephone
d.fuchs@swtwlaw.com

Attorney for Plaintiff