**EXHIBIT "A"**

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE



*Inspiration at your feet, flooring for your life* <sup>SM</sup>







# FRANCHISE AGREEMENT



## FLOOR COVERINGS
*international*

© 2020 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

# FLOORCOVERINGS INTERNATIONAL, LTD.
## SINGLE UNIT FRANCHISE AGREEMENT

# DATA SHEET

Anthony Imperato

1. Name of Franchisee: Crystal Imperato

2. Franchisee's Address: 9902 Indian Rill Court
Tomball, TX 77375

3. Franchisee's DMA

| 77014 | 77032 | 77037 | 77038 | 77039 | 77050 |
|---|---|---|---|---|---|
| 77060 | 77064 | 77065 | 77066 | 77067 | |
| 77068 | 77069 | 77070 | 77073 | 77086 | 77088 |
| 77090 | 77373 | 77388 | | | |

4. Franchisee's Telephone Number    603-801-7402

5. Franchisee's E-Mail Address    evoeater99@yahoo.com
csawyer26@yahoo.com

6. Initial Franchise and Territory Fee    $65,000.00

7. Effective Date    3/2/2022 | 6:54 PM PST

The information contained in this Data Sheet is incorporated by reference into the Floorcoverings International, Ltd. Franchise Agreement.

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**TABLE OF CONTENTS**

ARTICLE I:  GRANT OF RIGHT ................................................................................................ 2

ARTICLE II: TERM AND RENEWAL .......................................................................................... 5

ARTICLE III: INITIAL AND CONTINUING FEES ...................................................................... 5

ARTICLE IV:  OBLIGATIONS OF FCI ........................................................................................ 8

ARTICLE V: FRANCHISEE'S OBLIGATIONS ............................................................................ 8

ARTICLE VI:  NONCOMPETE OBLIGATIONS ......................................................................... 13

ARTICLE VII:  ACCOUNTING AND RECORDS ....................................................................... 14

ARTICLE VIII:  TRANSFERABILITY OF INTEREST .............................................................. 15

ARTICLE IX:  VIOLATION AND TERMINATION.................................................................... 18

ARTICLE X:  RIGHTS AND DUTIES OF PARTIES UPON EXPIRATION, TERMINATION OR NON-RENEWAL.............................................................................................................................. 20

ARTICLE XI:  INDEMNIFICATION ........................................................................................... 21

ARTICLE XII:  DISPUTE RESOLUTION ................................................................................... 21

ARTICLE XIII.  RELATIONSHIP OF PARTIES ......................................................................... 22

ARTICLE XIV:  MISCELLANEOUS ........................................................................................... 22

**EXHIBITS**

EXHIBIT A-1          DESCRIPTION OF DESIGNATED MARKETING AREA
EXHIBIT A-2          CORPORATE GUARANTEE RIDER
EXHIBIT A-3          EMPLOYEE NONDISCLOSURE AND NONCOMPETITION AGREEMENT
EXHIBIT A-4          SAMPLE TERMINATION AND RELEASE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

## FLOOR COVERINGS INTERNATIONAL®
## FRANCHISE AGREEMENT

THIS FRANCHISE AGREEMENT (the "Agreement") is entered into by and between Floorcoverings International, Ltd., a Georgia corporation ("FCI"), whose address is 5390 Triangle Parkway, Suite 125, Norcross, Georgia 30092 and the Franchisee identified in the Data Sheet ("You"). The information contained in the Data Sheet is incorporated into this Agreement.

## BACKGROUND

A.        Through the expenditure of money, time and effort, FCI has developed a distinct and proprietary business format for the operation of a professional business for the marketing of carpeting, window treatments and all other hard and soft floor covering products and any other products and services that FCI may designate in the future (the "System"), the distinguishing characteristics of which include proprietary operating procedures and standards and specifications for products and services, as amended from time to time in FCI's sole discretion.

B.        The System is identified by proprietary trademarks, service marks, trade dress, logos and other indicia of origin including, without limitation, the trade name and service marks: "Floor Coverings International"; "Floor Coverings International/The Flooring Store at Your Door"; and "FCI" (collectively the "Proprietary Marks").

C.        FCI offers franchises to qualified individuals for the right to use the System and Proprietary Marks within designated territories (the "Business").

D.        You have applied to FCI for the right to operate a Business pursuant to the terms of this Agreement, and FCI has approved your application in reliance upon all of the representations made in your application, including those concerning your financial resources, your business experience and interests, and the manner in which the franchise will be owned and operated.

E.        You acknowledge that you have read this Agreement and FCI's Franchise Disclosure Document, and that you have been given an opportunity to obtain clarification of any provision that you did not understand. You also understand and agree that the terms and conditions in this Agreement are necessary to maintain FCI's high standards of quality and service, and the uniformity of those standards at all FCI Businesses.

## AGREEMENT

NOW THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, mutually agree as follows:

## ARTICLE I:  GRANT OF RIGHT

A.        <u>Grant</u>.  FCI grants to you, and you hereby accept, a non-exclusive franchise to establish and operate one Business pursuant to the terms of this Agreement. Except as otherwise provided in this Agreement, you may only offer, sell and/or perform the following: carpeting, window treatments, painting and ancillary repair work, hard and soft floor covering products (the "Authorized Services") in (i) residential dwellings that contain less than five (5) units/apartments or condominiums, (ii) individual residential apartments or condominiums, (iii) single family homes, (iv) townhomes, or (v) light commercial services defined as commercial office space of less than 5,000 square feet (collectively, "Residential Services"); provided, however, such Residential Services shall not be performed for (a) any National Account customers, as defined in Article I.D, and (b) any contracts that exceed $50,000 in the aggregate for any one particular job.  This Agreement does not grant you the right to establish additional Businesses.

B.        <u>Designated Marketing Area</u>.  You shall operate your Business only within the designated marketing

2

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

area ("DMA") identified in, or (if the parties have not agreed upon a DMA at the time this Agreement is signed) to be identified, in the Data Sheet and DMA Addendum attached as Exhibit A-1 (the "Designated Territory"). You may not advertise or solicit clients or leads, except through National Account lead referral sources, within another franchisee's DMA unless such solicitation or marketing activity is in accordance with FCI's then current standards and procedures. Subject to the policies and procedures set forth in the Operations Manual, you may be permitted to provide services to customers located in an open DMA. Commercial Services Qualified Franchisees may advertise and market Commercial Services through the development of personal contacts and calls to prospective customers but FCI, through the Brand Fund or otherwise, has the sole and exclusive right to advertise and/or market Commercial Services through broadcast media, national publications or trade shows. During the term of this Agreement, so long as you are in substantial compliance with the terms and conditions of this Agreement, FCI will not establish or locate, or grant any third party the right to establish or locate, another FCI Business offering or performing Residential Services using the System and Proprietary Marks within the DMA, except as set forth in Article I.D. and I.E. below. You acknowledge and agree that other franchisees may provide Residential or Commercial Services within your DMA, subject to such franchisee's compliance with FCI's policies restricting advertisements and solicitations. This Agreement does not grant you any other territorial rights.

      C.    <u>Reservation of Rights and Alternative Channels of Distribution</u>. FCI retains the right to establish itself, or to grant others the right to establish, FCI Businesses outside the DMA. You acknowledge and agree that certain of FCI's or its affiliates' products, whether now existing or developed in the future, may be distributed in the DMA by FCI, its affiliates, its franchisees, licensees or designees, in such manner and through such channels of distribution as FCI, in its sole discretion, shall determine. Such alternative channels of distribution shall include, but are not limited to, sales of any products offered hereunder using the Proprietary Marks through the Internet or mail order. FCI reserves the right, among others, as to any distribution arrangements relating thereto. You understand that this Agreement grants you no rights: (i) to distribute such products as described in this section; or (ii) to share in any of the proceeds received by any such party therefrom.

      D.    <u>National Accounts</u>. The term National Account means any entity, customer, contract, or business which on its own behalf or through agents, franchisees or other third parties owns, manages, controls or otherwise has responsibility for 10 or more businesses whose presence is not confined within any one particular designated DMA.

      1.    FCI shall have the exclusive right, unless otherwise specifically delegated in writing, on behalf of itself, you, and/or other franchisees utilizing the Proprietary Marks, to negotiate and enter into agreements or approve forms of agreement to provide services to National Account customers, licensees or franchisees including locations within the DMA. Franchisee may not solicit or service any entity, customer, contract or site that is a National Account, as defined in the Franchise Agreement, whether within or outside the DMA, without FCI's prior written approval, which may be conditioned on such terms and conditions as FCI deems fit in its sole discretion, including FCI's right to exclusively negotiate the terms of any National Account, set additional training requirements and set the fees due FCI for services rendered in connection with any National Account contract.

      2.    Following the execution of a contract with or the acceptance of a bid by a National Account customer which contemplates the provision of services to one or more National Account customer location within the DMA, FCI may, at its option, provide you the option to perform such services pursuant to the terms and conditions of the National Account contract or on such terms and conditions as FCI in its discretion determines. In order to service any National Account customers, you must enter into FCI's then-current form of National Account participation agreement, the terms of which will govern all National Account work.

      3.    If FCI so chooses, or if you elect not to provide services to a National Account customer in conformity with the terms and conditions of the National Account bid or contract, FCI shall have the right, exercisable in its sole discretion, to:

      i.    provide, directly or through any other licensee or franchisee utilizing the

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

Proprietary Marks, services to the National Account customer location(s) within the DMA on the terms and conditions contained in the National Account bid or contract; and/or

ii.       contract with another party to provide such services to the National Account customer location(s) within the DMA on the terms and conditions contained in the National Account bid or contract between FCI and the National Account customer, utilizing the Proprietary Marks or any other trademarks, service marks or trade names.

4.       Neither the direct provision by FCI (or a franchisee, licensee, or agent of FCI) of services to National Account customers as authorized in Article I.D(3)(i) above, nor FCI's contracting with another party to provide such services as authorized Article I.D(3)(ii) above, shall constitute a violation of Article I.B of this Agreement relating to the DMA. You disclaim any compensation or consideration for work performed by others in the DMA pursuant to this section.

E.       Commercial Services.  The term Commercial Services means any particular residential job in which the total aggregate contract amount exceeds $50,000, whether or not it also constitutes a National Account as defined above, and any other flooring services not specifically identified as Residential Services above, including but not limited to any business or other commercial building, hotel or academic institution. In addition, Commercial Services include those jobs in which the total aggregate contract amount is less than $50,000, when the franchisee is performing the Authorized Services (i) in a nonresidential structure or nonresidential leasehold except for commercial office space of less than 5,000 square feet which is defined above as Residential Services; (ii) in a residential dwelling that contains more than five (5) units/apartments; (iii) as an extension of a job that originated in Franchisee's DMA; and (iv) for a Commercial Account. For purposes of this Agreement, a "Commercial Account" means any entity, customer or contract or business which on its own behalf or through agents, franchisees or other third parties owns, manages, controls or otherwise has responsibility for between 2 and 9 businesses whose presence is not confined within any one DMA.

1.       Franchisee, upon payment to FCI of the then current one time non-refundable Commercial Services Licensing Fee, execution of FCI's Commercial Services Addendum and completion of FCI's Commercial Services Training Program and such other requirements as FCI from time to time may require, will be authorized to offer, sell and perform Commercial Services ("Commercial Services Qualified") for any entity, customer, contract or business, exclusive of a National Account anywhere within the United States, including Franchisee's DMA and the DMA or other franchisees, including the DMA of other Commercial Services Qualified franchisees.   Accordingly, Franchisee acknowledges that other Commercial Services Qualified franchisees  may perform Commercial Services within Franchisee's DMA using FCI's Proprietary Marks.

2.       Franchisee acknowledges and expressly understands and agrees that until such time as Franchisee becomes Commercial Services Qualified, Franchisee shall have no right to Commercial Services contracts, or any other product or service not specifically defined as Residential Services, within the DMA and FCI or FCI Commercial Services Qualified franchisees may perform Commercial Services contracts within the DMA using FCI's Proprietary Marks. Except for Residential Services, Franchisee acknowledges that FCI may offer and perform, or license other franchisees the right to offer and perform, any approved products and/or services at any location within or outside the DMA under the Proprietary Marks, including but not limited to National Accounts, Commercial Services and any other non-Residential Services. You disclaim any compensation or consideration for work performed by others in the DMA pursuant to this section.

3.       In cases where the Commercial Services are to be performed outside of Franchisee's DMA, Franchisee must, prior to accepting such work, notify FCI in writing and submit a written proposal describing the work Franchisee wishes to perform and the location of the job site, if applicable, and then obtain FCI's written consent to perform such work, which consent will not be unreasonably withheld. Franchisee acknowledges that certain FCI system franchisees have DMAs which provide for exclusive

4

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

territories that would prohibit Franchisee from performing Commercial Services within their DMA and that FCI may withhold its consent for Franchisee to perform such work as a result.

F.      Program Services.  From time to time, FCI may establish certain programs for the benefit of its franchisees and the FCI System whereby FCI franchisees will be permitted to offer, sell and perform certain flooring services in accordance with the specifications described in any particular program established by FCI from time to time.  Franchisee's participation in any particular program will be subject to the terms and conditions of such program.

## ARTICLE II: TERM AND RENEWAL

A.      Initial Term.  Except as otherwise provided in this Agreement, the term of this Agreement shall be for a period of ten (10) years from the effective date hereof, as indicated on the Data Sheet.

B.      Renewal.  You will have the right to renew its License for the Business for two additional five (5) year terms, provided you meets the following conditions:

       1.      You shall have delivered to FCI written notice, at least ninety (90) days, but not more than one hundred eighty (180) days, before the expiration of the term of this Agreement, of your election to renew;

       2.      You shall execute FCI's then current form of Franchise Agreement.  The then current form of Franchise Agreement shall supersede this Agreement in all respects and terms, and may contain commitments and obligations that differ from the terms of this Agreement, including, without limitation, an increased Continuing Royalty or Brand Fund contribution;

       3.      You shall execute a general release in a format designated by FCI;

       4.      You must not be in default of any of your obligations to FCI;

       5.      As of the date of renewal, you must be in possession of all required vehicles, equipment, floorcovering samples, window treatment samples and other items required for operation of the Business, and all such items must conform to or comply with FCI's then current standards, specifications and requirements;

       6.      You and your employees must successfully complete any additional or refresher training then required by FCI; and

       7.      You must pay FCI a renewal fee in the amount of $2,500.

## ARTICLE III: INITIAL AND CONTINUING FEES

A.      Initial Franchise Fee.   If this Agreement is fully executed prior to July 31, 2021, in consideration of the rights granted to you under this Agreement, you agree to pay to FCI an Initial Franchise Fee equal to Fifty Seven Thousand Nine Hundred Dollars ($57,900) for a DMA ranging from 50,000 to 80,000 single family dwellings. If this Agreement is fully executed on August 1, 2021 or later, in consideration of the rights granted to you under this Agreement (regardless of whether you are an existing franchisee or buying multiple territories), you agree to pay to FCI an Initial Franchise Fee equal to Thirty Thousand Dollars ($30,000) and a Territory Fee of Thirty-Five Thousand Dollars ($35,00) for a DMA ranging from 50,000 to 80,000 single family dwellings.

If you wish to purchase a DMA with over 80,000 single family dwellings, in addition to the Initial Franchise Fee (or Territory Fee if applicable), you must pay a fee of either: (i) Twenty Five Cents ($0.25) for each single family dwelling over 80,000 in your DMA at the time you sign this Agreement, or (ii) Nine Hundred Dollars ($900) per One Million Dollar ($1,000,000) Flooring Opportunity. A "Flooring Opportunity" is calculated, in our sole judgment and

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

discretion, based on the annual average income opportunity (expressed as a dollar amount) represented by each household in the additional area, multiplied by the total number of target households therein. Currently, we assign an average income opportunity value of $785.71 to each targeted household, but we reserve the right to revise this value at any time. We shall determine, in our sole discretion, which valuation method to employ when calculating the additional cost of the requested DMA area in excess of 80,000 family dwellings.

The Initial Franchise Fee, Territory Fee and any additional payments for an extended DMA are payable at the time of the execution of this Agreement and are fully earned and nonrefundable upon payment, regardless of whether this Agreement is subsequently terminated, and is not contingent or conditioned on our performance of any pre-opening obligations. If you are a veteran that qualifies for the VetFran Program, your Initial Franchise Fee will be discounted by ten percent (10%).

B.    Continuing Royalty Fees.

1.    In addition to the Initial Franchise Fee and Territory Fee (if applicable), you shall pay FCI a monthly continuing royalty fee in an amount equal to: (a) five percent (5%) of Gross Sales or (b) a minimum of $1,250 per month in your first twelve (12) months of operations (whole or partial), $2,083 per month for months thirteen (13) through twenty four (24) of operations, or $2,917 per month thereafter ("Continuing Royalty Fee").

2.    "Gross Sales," as used in this Agreement, shall be defined as the total of your sales invoices or other items or services billed to the customer for all "Completed Sales" during a given month, less any discounts, cancellations or returns allowed by FCI. In the event that Franchisee participates in any discount promotion, including but not limited to Groupon or similar sales promotions, Gross Sales will include the full retail value of the goods or services rendered to the customer before any discounts or commissions. Sales of products and services shall be deemed to be "Completed Sales" for purposes of reporting and payment to FCI when you complete the final installation of all products and/or services sold to the customer. Continuing Royalty Fees shall be payable on a monthly basis on all Completed Sales made by the you during the preceding calendar month, and shall be submitted to FCI with all sales reports and documentation required by FCI. Continuing Royalty Fees and all required sales reports and other documentation FCI prescribes must be received by FCI no later than ninth (9th) day of the each month for all Completed Sales during the preceding calendar month.

3.    Your failure to pay monthly Continuing Royalty Fees to FCI within five (5) business days of the due date for such payment shall be a material breach of this Agreement.

4.    Except as prohibited by applicable local, state, or federal laws, FCI reserves the right to apply any amount FCI receives from or on behalf of you first to Continuing Royalty Fees, and then to B.F. Contributions (as defined below), then due and owing. FCI also reserves the right to require you to sign a security agreement or other documents that allow FCI to hold a security interest in the payment obligations you owes to FCI.

5.    The monthly period for determining Continuing Royalty Fee calculations and payments shall be defined as the calendar month.

C.    Brand Fund Contribution.

1.    In addition to the other fees and charges provided for herein, you shall pay to FCI a Brand Fund Contribution (the "B.F. Contribution") in an amount equal to three percent (3%) of Gross Sales.

2.    The terms and conditions applicable to your payment of B.F. Contributions shall be as set forth in Article III.B.

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

3.     FCI shall have the right to spend Brand Fund monies, as it deems appropriate on any activities intended to build the strength of the FCI brand, including national, regional, or local media or other market techniques or programs designed to communicate the services of Floor Coverings International franchisees to the public, as well as on technology or other programs that improve the quality of the services provided to FCI customers. In addition, FCI may spend Brand Fund monies for market research and development, public relations programs, test or target marketing, the conducting of surveys, brand development and promotion, consulting and other related services to train franchisees on marketing or other brand-building techniques, creative and production costs, merchandising and merchandising program development, development and implementation of new technology, reimbursement to FCI for reasonable accounting, administrative (including the actual cost of salaries and benefits paid to FCI employees engaged in administration of the Brand Fund), and legal expenses associated with the Brand Fund, or for other purposes deemed appropriate by FCI to enhance and promote the general recognition of the Floor Coverings International System and Floor Coverings International Proprietary Marks.

4.     FCI has the sole right to determine and budget the specific use of the Brand Fund for the purposes set forth herein. You acknowledge that Brand Fund monies may be expended by FCI in any territory (national, regional, or local) without any requirement that any amount be expended for advertising in your DMA or that any expenditures from the Brand Fund be apportioned based on the amount of your B.F. Contributions, or by other formula or system. FCI shall in no event be deemed a fiduciary of you for or with respect to the Brand Fund or any other aspects of the System.

5.     Franchisee agrees that any inquiries that FCI receives from potential customers for Commercial Services as a result of such promotion and marketing efforts (the "Leads") may be distributed by FCI to any Commercial Services Qualified franchisees in accordance with the FCI's policy regarding the distribution of Leads, as such policy may be amended from time to time. FCI does not represent or warrant that it will distribute any minimum number of Leads to you and you disclaim any right to receive compensation or consideration for any Lead or work performed by other Commercial Services Qualified franchisees pursuant to the FCI's Lead policy and Franchisee waives any claims in connection with the distribution of Leads and any compensation or consideration arising out of those Leads.

D.     Dishonored Check Fee. FCI may charge you a fee of $25.00 for each check issued to FCI by you for monthly Continuing Royalty Fees, B.F. Contributions or other fees or payments due to FCI pursuant to this Agreement ("Payments"), which is dishonored by the financial institution on which the check is drawn.

E.     Late Fee; Interest Charges. FCI may charge you a fee of $25.00 for each Monthly Report you are required to submit to FCI that is not postmarked by the ninth (9th) day of the month in which it is due. In addition to any late fee, you shall pay FCI interest at the rate of one and one-half percent (1½%) per month or the maximum rate allowed under applicable law, whichever is less, on all past due Payments from the date due until the date payment in full is received by FCI.

F.     Opening Package. You shall, no later than thirty (30) days prior to attending FCI Academy, pay FCI the then-current sum for the "Opening Package" of goods and services described in FCI's Franchise Disclosure Document.

G.     Payments by Direct Bank Transfer. FCI shall have the right to require that you make all Payments by direct electronic bank transfer of funds ("Direct Transfer"). You will, from time to time during the term of this Agreement, execute such documents as may reasonably be required by FCI, FCI's bank or your bank to provide your authority and direction to its bank authorizing Direct Transfers. Such authorizations will permit FCI to designate the amount to be drafted or transferred from your account and to adjust such amount from time to time to the amount of the Payments due from you. If you fail at any time to provide required sales reports to FCI, FCI may debit your bank account for the same amount as the most recent debit to your bank account that was based on actual Gross Sales provided by you. You will, at all times during the term of this Agreement, maintain a balance in your bank account

7

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

sufficient to allow the appropriate amount to be debited from your account for the Payments due to FCI.

## ARTICLE IV:  OBLIGATIONS OF FCI

      A.    <u>Designated Marketing Area (DMA)</u>.  FCI shall designate the marketing area which will serve as your DMA.

      B.    <u>FCI Academy Training</u>.  FCI shall provide an "FCI Academy" training program relating to the Products and Services and the System.  FCI Academy training shall consist of a home study course and a training program at FCI Headquarters in suburban Atlanta or other locations, including virtually, as designated by FCI.  FCI shall provide initial FCI Academy training for you (or your principal shareholder or owner) and one other individual who is one of your principals or employees.  FCI reserves the right to charge its then-current training fee for each additional individual requiring training on your behalf.  The cost of FCI Academy training is included in the Initial Franchise Fee.  You will be responsible, however, for all travel, lodging and related expenses incurred by your personnel in connection with attending the FCI Academy training.

      C.    <u>Operations Manuals</u>.  FCI shall lend you or give you access to a copy of each of FCI's training and operations manuals (the "Operations Manuals") for use during the term hereof.

      D.    <u>Opening Package</u>.  FCI shall provide you with an Opening Package of goods and services, the contents of which are described in FCI's Franchise Disclosure Document.  The fee for the Opening Package is payable at least thirty (30) days prior to attending training.

      E.    <u>On-going Training</u>.  In addition to the FCI Academy training, FCI shall make available to you additional training in marketing, sales, advertising, product selection, operational procedures and financial administration.  The ultimate form, content and extent of the training, programs, and assistance shall be determined by FCI.

      F.    <u>Operations and Marketing Updates</u>.  FCI shall, from time to time, update information and revise operations and marketing materials as new and improved products, methods, systems, and procedures are adopted for use in the FCI System.

      G.    <u>Approved Suppliers</u>.  FCI shall provide approved suppliers and vendors of products, equipment, supplies and services for use and resale in connection with the operation of the Business.

      H.    <u>Advertising Approval</u>.  FCI shall review all advertising materials submitted by you and shall approve or deny use of such advertising materials at FCI's sole discretion.

## ARTICLE V:  FRANCHISEE'S OBLIGATIONS

      A.    <u>Promotion</u>.  You shall use your best efforts throughout the entire term of this Agreement to actively promote the Products and Services within the DMA, and to maintain and enhance whenever possible Floor Coverings International business relations, goodwill, and reputation with customers, suppliers, and others.

      B.    <u>Use, Display and Ownership of Proprietary Marks.</u>

      1.    You shall use and display the Proprietary Marks on all signage and printed materials used in connection with the Business.  You shall use and display the Proprietary Marks only in the form and manner specified by FCI in or on any advertising, telephone listings, publicity, sales promotions, signs, the FCI Vehicle, letterhead, stationery, image apparel, or other materials used in connection with the Business. You shall only use the Proprietary Marks in connection with operating the Business and shall not use any Proprietary Marks in whole or in part for any purpose or in conjunction with any product, service or business

8

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

not designated by FCI as part of the System.

2.     You acknowledge and agree that the Proprietary Marks and the System licensed hereunder are owned exclusively by FCI and except for the limited rights of use expressly provided in this Agreement, you acquire no right, title, or interest therein.

3.     You acknowledge that any and all goodwill associated with the Proprietary Marks and the System inures exclusively to the benefit of FCI. Upon termination of this Agreement, no monetary amount shall be attributable to you for any goodwill associated with your use of the System or the Proprietary Marks.

4.     You shall not attempt to file or register any of the Proprietary Marks, in whole or in part, in your own name or the name of any other person, firm, association, or corporation, nor shall you use any of the Proprietary Marks, in whole or in part, as a part of a corporate or partnership name. You will not use or register any of the Proprietary Marks, in whole or in part, as an e-mail address or Internet domain name.

5.     You shall not, during the term of this Agreement and after termination or expiration of this Agreement, contest or dispute the validity, enforceability or ownership of the Proprietary Marks or the System, or take any actions that might dilute the goodwill associated therewith.

6.     You shall immediately notify FCI upon becoming aware of any unauthorized use of or legal action involving the Proprietary Marks or the System and shall cooperate in FCI's prosecution or defense of any such action. FCI shall defend you in any infringement action in which you are named as a defendant solely because the plaintiff or claimant alleges that you does not have the right to use the Proprietary Marks or the System, provided that you has at all times used the Proprietary Marks and System in accordance with FCI's requirements and the terms and conditions of this Agreement, and provided further that you has tendered defense of the action to FCI within seven (7) days of your receipt of a summons and complaint in the action.

C.     <u>Initial Advertising Obligation</u>. You shall spend at least Forty Thousand Dollars ($40,000), but may be required by us to spend up to Sixty Thousand Dollars ($60,000), in FCI-approved local advertising within a four month period following your completion of the FCI Academy training program. You will use FCI's designated vendor and FCI's approved local advertising plan in conducting such local advertising for your Business.

D.     <u>Required Local Expenditures; Approved Advertising</u>. You must use your best efforts to advertise the Business in the DMA and participate in any local marketing and promotional programs FCI establishes from time to time. In addition to the B.F. Contribution and the $40,000 to $60,000 initial advertising obligation, you are required to spend a minimum amount equal to six percent (6%) of Gross Sales on approved local marketing and promotion in the DMA. On or before January 31 of each year, you must provide FCI with itemization and proof of advertising and an accounting of the monies that you have spent for approved local advertising for the preceding calendar year (January through December). If you do not spend the minimum 6% amount, you shall pay to FCI any balance between the 6% required amount and what you actually spent during the year. This payment is due on or before January 31, and FCI may spend the monies in any way it desires. You shall use only FCI approved advertising in any media placement, promotion or solicitation materials employed by the Business. If you desire to publish any sales, advertising or promotional materials other than as described in Article V.C. (for which you must use FCI's approved local advertising vendor and plan), you shall obtain FCI's written consent at least thirty (30) days prior to the date of each such publication. FCI's consent shall not be unreasonably withheld. Additionally, FCI shall have the right to designate any geographical area for purposes of establishing a regional advertising and promotional cooperative ("Cooperative"), and to determine whether a Cooperative is applicable to your Business. If a Cooperative has been established applicable to your Business at the time you begin operating under this Agreement, you must immediately become a member of such Cooperative and make the required contribution to the Cooperative's fund. If a Cooperative applicable to your Business is established at any later time during the term of this Agreement, you must become a member of such Cooperative no

9

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

later than thirty (30) days after the date on which the Cooperative begins operation. You must comply with all guidelines and requirements applicable to the Cooperative, as set forth by FCI or by the Cooperative itself.

E.    FCI Vehicle.  You shall acquire and maintain a FCI vehicle meeting FCI's specifications ("FCI Vehicle"), that may change from time to time, suitable for carrying samples to the customer's home or business; shall maintain the FCI Vehicle according to the standards established by FCI from time to time. You shall, from time to time, upon request of FCI, submit documentation to FCI concerning the exterior condition of your FCI Vehicle. Such documentation shall consist of four photographs taken within two (2) weeks of submission, one of each view (front, rear, and sides) of the FCI Vehicle. If FCI deems that the FCI Vehicle is not in good physical appearance and condition, FCI shall promptly notify you of the requirement to purchase a FCI Vehicle that meets FCI standards and specifications. FCI shall not unreasonably deny consent to the use of a vehicle.

F.    Customer Relations and Refund Policies; Customer Information.  You shall comply with all customer relations, guarantee and refund policies, which may be established from time to time by FCI in writing. You shall not issue any product or service guarantees except for manufacturers' guarantees and any guarantees prescribed by FCI.  You must provide FCI with an up-to-date customer list, copies of customer sales invoices, and work order information in the form FCI prescribes, including, but not limited to, FCI's intranet or required software, as further described in Article V.T.  FCI has the right to contact the customers to ascertain your quality of work and the level of customer satisfaction. FCI owns the customer lists and accounts and licenses you to use them during the term of this Agreement.  You may not use the customer lists or account information for any purpose whatsoever other than in the normal conduct of the Business.

G.    Publicity.  You agree to allow FCI to use your name and photographic likeness of any type, including film, video tape, or photograph, in publicity of the System, without compensation to you.

H.    Location.

1.    You must, at your expense, provide the premises where the Business will be located. You must operate the Business out of an office space, and FCI must consent to your office location.  Your office must be located in the DMA.  The office (including any showroom that you establish) must be maintained and operated in accordance with the specifications and standards that FCI establishes periodically pertaining to signage, fixtures, accessory features and design and layout.  You are solely responsible for obtaining all necessary permits and/or licenses for the location.  You must not use the office and showroom premises for any purpose other than the operation of the Business without FCI's prior written approval.

2.    Within 60 days of the execution of this Agreement, and we suggest prior to attending training, you shall obtain a site from which to maintain your office within your DMA by (i) entering into a lease or sublease with the owner of a site or the prime tenant having possession of a site which is mutually acceptable to you and FCI; or (ii) purchasing real estate which is mutually acceptable to you and FCI. Upon location of a proposed site, you must provide FCI such site information as FCI may reasonably request to evaluate the proposed site for compliance with FCI's then-current site selection criteria. FCI will notify you of its acceptance or rejection of the proposed site within 30 days after receiving all requested information. FCI's acceptance of a site does not constitute any representation or guarantee concerning the site's viability or success.  You are solely responsible for selecting a site for the operation of your Business. You must deliver to us an executed copy of the lease within 15 calendar days of execution of the lease.

3.    FCI will permit you to relocate your office to a new approved location within the DMA, at your expense, if you lose the right to possess the premises through no fault of your own, or if the office is destroyed by vandalism, fire or act of God.  FCI will approve the new site if it meets FCI's site selection criteria. You have no right to relocate the office without FCI's prior written consent.

I.    Confidentiality.  You shall not directly or indirectly reveal the contents of any portion of the

10

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

System, trade secrets, manual, home study program, training manual, bulletin, Business, promotional plan, newsletter, report or publication except to your employees who require such information to fulfill their duties and have signed a Nondisclosure and Noncompetition Agreement in the form attached to this Agreement before receiving any such information.

J.    Training and Certification.

1.    You shall successfully complete the FCI Academy training program and receive from FCI competency certification prior to providing any Products and Services or otherwise operating the Business. You and your employees, partners or agents who provide Products and Services shall participate in such further training as FCI may require from time to time to maintain FCI's standards in connection with the operation of the Business.

2.    You must participate annually in (i) any training or consultation with an FCI Franchise Support Manager as FCI may determine; (ii) at least one (1) regional training session that FCI holds for franchisees; and (iii) FCI's annual franchise convention. FCI may charge a reasonable fee for the regional training and convention.

K.    Authorized Products and Services and Approved Suppliers.  You must offer all authorized products and services and only those products and services that FCI specifies. FCI has the right to require you to purchase or lease any products including, without limitation, supplies, inventory items and equipment from designated or approved suppliers as well as to enter into service agreements with approved vendors (the "Authorized Products and Services"). FCI has the right to add, eliminate, modify and substitute any of the Authorized Products and Services or the designated suppliers in its sole discretion. If you wish to offer any product or service that FCI has not authorized or to acquire items or services from an unapproved supplier, you must request FCI's approval in writing and provide FCI all information it may reasonably need to evaluate the proposed product, service or supplier. FCI will make a good faith effort to notify you of its approval within 15 days of receiving such information. FCI's failure to approve a product, service or supplier within this 15-day period will constitute disapproval of the proposed product, service or supplier. If FCI approves your request to offer a new product or service or to acquire items from a new supplier, such approval will be only for the specific product, service or supplier for which approval was granted.

L.    Compliance with Standards and Specifications.  The Business shall at all times emulate the image intended for the System including, without limitation, its high standards of quality, cleanliness, convenience and courteous services. You shall comply with all of FCI's standards and specifications for, among other things, inventory, supplies, equipment and Business appearance, as they are disclosed to you in the Operations Manual or otherwise in writing. You shall purchase and place or erect, at your expense, all signs and interior and exterior graphics and only such signs and interior and exterior graphics, as well as vehicle signage, as FCI may from time to time prescribe for use by System franchisees.

M.    Minimum Performance Standards.  You shall use your full time best efforts in promoting the Floor Coverings International Products and Services within the DMA. You make this commitment with the understanding that the application of your best efforts is required for the benefit of you as well as the entire Floor Coverings International franchise network. You must achieve minimum Gross Sales of: $300,000 during the first twelve (12) full or partial months of operation; $500,000 during months thirteen (13) through twenty four (24) of operations; $700,000 in months twenty five (25) through thirty six (36) of operations; and as agreed between you and FCI in each year thereafter, but which is expected to be at least a 10% growth on each prior year. Upon any renewal of the franchise, your minimum performance standard will based on your previous obligations and not reset to $300,000.

N.    Insurance.  You shall obtain and maintain at your sole cost and expense, and keep in full force and effect during the term of this Agreement, commercial vehicle, and comprehensive general liability insurance in the amount of $1,000,000 each with respect to your Business operations, with FCI as additional named insured. The

11

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

insurance carrier must be licensed in the State or Province in which the Business is located and must carry a rating of A+ or better by A.M. Best Co.  FCI shall have the opportunity to approve the insurance carrier.  You shall provide FCI with certificates of insurance within thirty (30) days of the opening of your Business, or at any other time thereafter as FCI may request.  Further, you shall procure and maintain workers' compensation insurance coverage for all employees in accordance with applicable state law requirements.

O.   Telephone Line Requirements; Central Telephone Service.  You shall use two (2) telephone lines dedicated exclusively to the operation of the Business and answered "Floor Coverings International." You shall maintain a receptionist or answering service at all times during normal business hours (9-5).  You shall have a telephone voice mail system for non-business hours.  You shall participate in, and share with other Floor Coverings International franchisees the proportionate costs (including, but not limited to, telephone line charges, answering services, Yellow Pages advertising and listings, general advertising and clerical costs associated with the collection and distribution of all telephone messages), of a central telephone service.  Applicability and timing of the initial installation of the central telephone service shall be at the sole discretion of FCI.

P.   Personnel Management.  You shall be solely responsible for properly training your employees (which shall include the obligation to send employees to FCI mandated training programs), providing your employees with FCI approved image apparel, and complying with all applicable federal, state, and local laws regulating your work force.  You shall pay all contributions, taxes, and assessments on payrolls or other charges under all applicable federal, state, and local laws, including withholding from wages from your employees where required.  You shall comply with all federal, state, local laws and regulations regarding compensation, hours of work or other conditions of employment including, but not limited to, all laws and regulations regarding minimum compensation, overtime pay, Title VII, equal employment opportunities or any other similar requirements.

Q.   Product Sample Updates.  You shall, at your expense, update your product samples and carpet sample boards as and when directed by FCI and shall at all times maintain a set of all product samples, as designated by FCI, which represents the complete then current FCI line of floor covering and window treatment products.

R.   Post Office Changes to DMA.  You shall notify FCI within one (1) week of any adjustment by the United States Postal Service to the Postal Codes that comprise the DMA.  FCI reserves the right to amend or modify this Agreement as may be necessary to modify the boundaries of the DMA as a result of any such changes, FCI's determination of the modified DMA shall be final and conclusive.

S.   Computer Hardware and Software.  You shall, at your expense, obtain and maintain such computer hardware, peripherals and software, including financial reporting software and any proprietary FCI software programs, as may be designated by FCI from time to time as being required for the operation of the Business.  You must lease any proprietary FCI software programs from FCI or its designated third party supplier, which software will remain the confidential property of FCI or the third party supplier.  You and FCI will enter into Franchisor's standard form computer software license agreement in connection with your use of any proprietary FCI software programs.  FCI will have the right, upon sixty (60) days' notice, to charge you a reasonable monthly fee for computer software maintenance and support that FCI or its designee may provide to you respecting such proprietary software.  You will be required to use, and at FCI's discretion, pay for all future updates, supplements and modifications to the computer hardware peripherals and software designated by FCI.  You shall, at your expense, maintain high-speed (DSL or equivalent) Internet access and an e-mail address throughout the term of this Agreement, in accordance with FCI requirements, for purposes of communication with FCI and other franchisees and to obtain access to FCI's intranet resources and information.  You will not establish a website or home page on the Internet ("Home Page") or otherwise advertise on the Internet or any other public computer network in connection with the Business, including any profile on Facebook, MySpace, Twitter, LinkedIn, Plaxo, YouTube or any other social media and/or networking site, without the prior written consent of FCI.  All features of any proposed Home page, including its domain name, content, format, and links to other websites, must be approved by FCI prior to activation of the home page.  Your home page must advertise only your Business, and all content and information that you maintains on the Home page will at all times be subject to the provisions of this Agreement, including provisions of this Agreement relating to trademark usage, conditions on the business to be conducted by you pursuant to this Agreement, advertising

12

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

approval, confidentiality, and product and service limitations. You will not link your Home page to any Internet site other than FCI Internet home page without FCI prior written approval.

      T.    <u>Annual Convention.</u> You must attend FCI's annual convention each year. FCI may charge a fee and you will be responsible for paying your own lodging, meals and transportation to and from the convention.

## ARTICLE VI: NONCOMPETE OBLIGATIONS

      A.    <u>During the Term of this Agreement</u>. During the term of this Agreement, neither you nor any of your principals shall, directly or indirectly, through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, or other unincorporated businesses, perform any services for, engage in or acquire, participate or have any financial or other interest in any other business offering carpeting, window treatments, hard and soft floor covering products or other services or products offered by FCI Businesses; provided, however, that this provision shall not apply to the operation of any other FCI franchised business pursuant to a valid franchise agreement with FCI.

      B.    <u>After the Term of this Agreement</u>. For a period of 2 years following termination or expiration of this Agreement, or the termination of any principal's interest in the Business, neither you nor any of your principals shall, directly or indirectly, through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, or other unincorporated businesses, perform any services for, engage in or acquire, participate or have any financial or other interest in any other business offering carpeting, window treatments, hard and soft floor covering products or other services or products offered by FCI Businesses: (1) within the DMA; (2) within a 25 mile area surrounding the perimeter of the DMA; (3) within a 10 mile radius of any FCI Business in existence on the date of expiration or termination of this Agreement; or (4) within a 10 mile radius of the location of any National Account or Commercial Services job that Franchisee performed during the term of this Agreement. However, that this provision shall not apply to the operation of any other FCI Business franchised business pursuant to a valid franchise agreement with FCI. The aforesaid 2-year period shall be tolled during any period of noncompliance.

      For a period of two (2) years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither you, nor your partners or shareholders or any member of your immediate family members or your partners or shareholders shall, directly or indirectly, for yourself or through, on behalf of, or in conjunction with any other person, partnership or corporation solicit business from then existing or prospective FCI National Accounts or customers with whom your former FCI franchise did business in the preceding 5 years for any related or competitive business purpose nor solicit any employee of FCI or any other FCI System franchisee to discontinue his employment.

      For a period of two (2) years after the expiration and nonrenewal, transfer or termination of this Agreement, regardless of the cause, neither you, nor your partners or shareholders or any member of your immediate family or your partners or shareholders shall, directly or indirectly, for yourself or through, on behalf of, or in conjunction with any other person, partnership or corporation own, maintain, engage in, be employed by, or have any interest in any company which engages in any business competing in whole or in part with FCI franchisees, solicits work for FCI franchisees which otherwise would fall under the National Account Program, or which grants franchises or licenses for any business competing in whole or in part with Franchisor.

      C.    <u>Publicly-Owned Entity.</u> This section shall not apply to your or any other person subject to this section's ownership of a beneficial interest of less than five percent (5%) in the outstanding securities or partnership interests in any publicly-held entity.

      D.    <u>Spouses and Immediate Family Members</u>. It shall be deemed a breach of this Agreement if your spouse or children engage in any of the prohibited conduct.

13

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

E.     Reformation.  It is the intention of the parties that this section be enforced to the fullest extent possible.  If a court shall determine that it is not enforceable as drawn, then it shall be reformed and enforced to the fullest extent lawful in the jurisdiction.

## ARTICLE VII: ACCOUNTING AND RECORDS

A.     Records and Books of Account.

1.     You shall, using the forms designated by FCI, keep and preserve complete business and financial records for the Business, including without limitation records of advertising copy and expenses, customer appointments, retail sales, supplier orders, installation orders, completed customer orders, cash receipts and disbursements, and such other information as may be necessary for the orderly operation of the Business.

2.     You shall submit to FCI standard reports as may be required by FCI including, but not limited to:

a.     Copies of individual customer sales invoices and all other customer information FCI prescribes, which shall be submitted to FCI with the your monthly Sales and Royalty Reports the month following the month in which the sales invoice is issued to the customer;

b.     A monthly Sales Report listing of all sales that have been completed during that month, which shall be submitted to FCI no later than the ninth (9th) day of each month for Completed Sales during the preceding month;

c.     Annual income statements and balance sheets, in a format designated by FCI, which shall be submitted by FCI no later than two (2) months after the end of your fiscal year;

d.     Full copies of all federal and state income and sales tax returns and reports filed by you, including all schedules thereto; and

e.     Any additional records, accounts or statements as FCI may require from time to time.

B.     Right To Audit your Records.

1.     You shall allow FCI or our designated representatives from time to time at reasonable hours to inspect, examine and/or audit your systems and controls, advertising materials and supplies, customer orders and other customer information, methods of production and sales, books of account, tax returns (both business and personal), and other business and financial records (collectively, "your Business and Financial Records") to insure compliance with the terms and conditions of this Agreement.  Your failure to allow FCI to inspect, examine and/or audit your Business and Financial Records shall be a material breach of this Agreement.

2.     Any inspection, examination or audit by FCI of your Business and Financial Records shall be the expense of FCI unless the inspection, examination or audit is deemed necessary by FCI due to your failure to prepare or forward required reports, or if an inspection, examination or audit discloses an understatement in any payment of three percent (3%) or more.  In either such event, you shall, in addition to

14

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

repaying any unreported or understated amount with all interest accrued thereon, reimburse FCI for any and all costs and expenses connected with the inspection, examination or audit, including, without limitation, travel, lodging, and wage expenses and reasonable accounting and legal costs. The foregoing remedies shall be in addition to any other remedies FCI may have.

### ARTICLE VIII:  TRANSFERABILITY OF INTEREST

A.    <u>Your Right To Transfer</u>.

      1.     You understand and acknowledge that the rights and duties created by this Agreement are personal to you (or, in the case of a corporate or partnership you, to your partners, officers or shareholders), and that FCI has entered into this Agreement with you in reliance upon individual or collective character, skill, aptitude, attitude, business ability, and financial capacity of you. Accordingly, neither this Agreement nor any part of the Business (or any interest therein granted pursuant to this Agreement) may be transferred without the prior written approval of FCI. Any attempted or purported transfer without prior written approval from FCI shall constitute a material breach of this Agreement and shall convey no rights to or interests in this Agreement or in the Business to the purported transferee.

      2.     As used in this Agreement, the term "transfer" shall mean and include the voluntary or involuntary, direct or indirect, assignment, sale or other transfer by you of:

        a.     Any interest in this Agreement;

        b.     Any part or all of the ownership of you;

        c.     The Business or any interest therein;

        d.     The transfer of ownership of capital stock, membership interest or partnership interest in you or the Business;

        e.     The merger or consolidation, or issuance of additional securities representing an ownership interest in the Business;

        f.     The sale of common stock or other ownership interest in you pursuant to a private placement or registered public offering;

        g.     The transfer of an interest in you or the Business pursuant to a divorce proceeding or otherwise by operation of law;

        h.     The transfer of an interest in you or the Business by will, declaration of transfer in trust, or under the laws of intestate succession in the event of the death of you or an individual owner of you; or

        i.     The transfer, not in the ordinary course of business, of significant assets of the Business including specifically, but not exclusively, customer lists, telephone listings, telephone numbers, samples, the FCI Vehicle, and/or Business and Financial Records.

B.    <u>FCI Right of First Refusal</u>. You may not sell, transfer, assign, or otherwise convey any interest in you, this Agreement or substantially all or all of the assets of the Business without first offering such interest to FCI in

15

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

writing at the same price and terms, exclusive of broker fees, as offered by a third party in a bona fide purchase offer. FCI may accept the offer in writing at any time within sixty (60) days from the receipt of the written offer by you. If FCI accepts the offer, FCI and you shall close the transfer transaction, on the terms and conditions stated in the offer, within sixty (60) days of acceptance by FCI. If FCI declines or does not accept the offer within that time period, you may, subject to the conditions set forth in this Article VIII, transfer such interest to the third party, at the price and on the terms offered to FCI. If the transfer of such interest is not closed by you within six (6) months from the date of the offer to FCI, then you must re-communicate the offer to sell to FCI before closing any transfer to any third party.

C.    <u>Approval Procedure.</u>

1.    FCI shall not unreasonably withhold approval of a proposed transfer that meets all the applicable requirements of this Article VIII.C. You acknowledge that FCI entered into this Agreement in reliance upon and in consideration of the personal qualifications and representations of you if you are an individual, or of those individuals who will actively and substantially participate in the operations of the Business if you are a corporation, partnership or limited liability company, and therefor acknowledge that the restrictions on transfer set forth in this Article VIII are reasonable and necessary to protect FCI, the System, the Proprietary Marks and other Floor Coverings International franchisees.

2.    If the transfer is of a controlling interest in the License, or is one of a series of transfers, which, in the aggregate, constitute the transfer of a controlling interest in the License, all of the following conditions must be met:

a.    The transferee must meet then applicable standards of FCI for franchisees, must have, in the opinion of FCI, sufficient business experience, aptitude, and financial resources to properly operate the Business, must have passed FCI's interview qualification process, and must not be involved in any business which is competitive with or similar to a Floor Coverings International Business;

b.    You must pay all Continuing Royalty Fees, B.F. Contributions, accounts payable, and other amounts owed to FCI, and must otherwise be in full compliance with this Agreement as of the proposed transfer date;

c.    The transferee or managerial employee(s) of transferee acceptable to FCI must have successfully completed the FCI Academy training program;

d.    The transferee must have acquired an FCI Vehicle which complies with FCI's requirements as described in Article V.F of this Agreement, and must have updated all product samples, sales materials and other items used in connection with the Business to comply with the then current standards and specifications of FCI;

e.    The transferee and its shareholders, partners or members must sign a new franchise agreement in the standard form then being offered by FCI, together with a personal guaranty of the transferee's obligations under the franchise agreement;

f.    You or the transferee must pay FCI a transfer fee of Seven Thousand Five Hundred Dollars ($7,500) for the training, legal, accounting and other expenses incurred by FCI in connection with the transfer;

g.    You and your shareholders, partners or members must execute a general release in a form satisfactory to FCI of any and all claims, known or unknown, against FCI and its officers, directors, employees, and agents (A sample form is attached as Exhibit "A-4");

16

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

        h.      FCI must have waived its right of first refusal to purchase and must approve the material terms and conditions of the transfer, including, without limitation, that the price and terms of payment are not so burdensome as to have a material adverse effect on the continuation of the Business;

        i.      You and your shareholders, partners or members must execute such agreements as FCI may reasonably require to evidence their continuing obligations under the noncompetition and nondisclosure provisions of this Agreement; and

        j.      You and your shareholders, partners or members must execute an agreement with FCI providing that all obligations of the transferee to make installment payments of the purchase price or interest thereon to you shall be subordinate to the transferee's obligations to pay Continuing Royalty Fees, B.F. Contributions, and other amounts to FCI and to suppliers of Products and Services to be sold by the Business.

D.      <u>Transfer to a Spouse or Child</u>.  In the event of a transfer of a controlling interest in the Business to the spouse or a child of you, the transfer fee set forth in Article VIII.C.2.f shall not be assessed.

E.      <u>Transfer Upon Death or Disability</u>.  Upon your death or permanent disability as defined under the Social Security Act, the executor, administrator, conservator, or other personal representative of you shall transfer your interest in this Agreement to a third party only upon approval of FCI.  Such transfer shall be completed within a reasonable time, and shall be subject to all the terms and conditions applicable to assignments contained in Article VIII.C of this Agreement.  If your interest is not transferred within a reasonable time, FCI may terminate this Agreement.

F.      <u>Transfer to your Corporation</u>.  If you are an individual and desire to assign your rights under this Agreement to a corporation, partnership or limited liability company, and if all of the following conditions are met, FCI will consent to the transfer without assessing the transfer fee set forth in Article VIII.C.2.f:

        a.      The individual or individuals who executed this Agreement must remain the owner(s) of not less that fifty-one percent (51%) of the total voting capital shares, partnership interests or membership interests of the entity;

        b.      The corporation, partnership or limited liability company will conduct only the Business;

        c.      Each officer, director, and holder of ten (10) or more percent of the entity's issued and outstanding shares, partnership interests or membership interests shall execute a personal guarantee of the entity's contractual and financial obligations, together with a nondisclosure and noncompetition agreement, both in the standard form that FCI requires,  All such personal guarantors agree to be bound by the restrictions upon Franchisee's activities upon transfer, termination or expiration and nonrenewal of this Agreement as if each were an individual party to this Agreement in his or her individual capacity;

        d.      Each certificate representing shares, partnership interests, or membership interests clearly indicates that the ownership interest represented by the certificate is subject to the terms of this Agreement; and

        e.      The entity's internal governing documents reflect that the shares or ownership interest are so restricted.

G.      <u>FCI Right To Transfer</u>.  This Agreement and all rights hereunder may be unilaterally assigned and transferred by FCI without the approval of you.  FCI will provide you with written notice of assignment after the assignment has been completed, and the assignee will be required to fully perform all obligations of FCI under this

17

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

Agreement.

## ARTICLE IX:  VIOLATION AND TERMINATION

A.      Automatic Termination.  You shall be deemed to be in default under this Agreement and all rights granted to you hereunder shall terminate automatically without notice to you upon the occurrence of any of the following:

1.      You or a Guarantor becomes insolvent, makes a general assignment for the benefit of creditors, or is adjudicated a bankrupt, unless otherwise restricted by the relevant bankruptcy laws; or

2.      A petition in bankruptcy for liquidation, reorganization, or other proceeding is filed by or against you; or a receiver is appointed or a bill in equity or other proceeding for the appointment of a receiver of you or other custodian for your Business or assets is allowed; or the real or personal property of you are attached or levied upon by any sheriff, marshal, or constable.

B.      Termination for Incurable Defaults.  You shall be deemed to be in default under this Agreement and FCI may, at its option, terminate this Agreement and all rights granted hereunder, without affording you any opportunity to cure the default, effective immediately upon receipt of notice by you, upon the occurrence of any of the following:

1.      Unless prior approval is obtained in writing from FCI, you voluntarily abandon or cease to actively operate the Business, which is defined as any of the following:

a.      two (2) consecutive calendar months without Completed Sales; or

b.      disconnecting the telephone line for the Business; or

c.      not having an FCI Vehicle which complies with FCI standards and requirements.

2.      You or any of your officers or directors is convicted or pleads no contest to a felony or other crime or offense related to the operation of the Business or that FCI reasonably believes is likely to have an adverse effect on the Proprietary Marks, the goodwill associated therewith, or any interest of FCI therein;

3.      You make a material misrepresentation or omission relating to the acquisition of the Business, knowingly maintain false Business and Financial Records, submit any materially false reports to FCI, or fail to submit standard reports as provided under Article VI;

4.      You fail on three (3) or more occasions within any twelve (12) month period to comply with any material provisions of this Agreement, whether or not such failures to comply are cured after notice of default to you;

5.      You (including your shareholders, guarantors or agents) engage in activities or conduct which materially impair the goodwill associated with the System or the Proprietary Marks and fail to correct such activities or conduct within twenty-four (24) hours of receipt of written notice of breach from FCI;

6.      You (including your shareholders, guarantors or agents) engage in any repeated solicitation of sales outside the DMA, except as specifically authorized pursuant to Article I;

18

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

7.      You or any other person(s) required to complete training fail to complete any required training in a manner satisfactory to FCI;

8.      You disclose FCI trade secrets or other confidential information to persons unauthorized by this Agreement to receive such information or misuses FCI trade secrets or other confidential information;

9.      You attempt or complete an unauthorized relocation, transfer, assignment, sale or encumbrance of the License, your right, title or interest under this Agreement or the Business;

10.     You misuse or make any unauthorized use of the Proprietary Marks or any other identifying characteristic of the System;

11.     You fail to submit required monthly reports as set forth in Article VII.A.2 for two (2) consecutive calendar months;

12.     You fail to meet the Performance Criteria set forth in Article V.M.; or

13.     You fail to attend FCI's annual franchise convention or any other required meeting.

C.      <u>Curable Defaults</u>.  Except as otherwise provided in this Article VIII, you shall have a period of time fifteen (15) days for default in making Payments to FCI, thirty (30) days for other defaults, or such longer period as may be imposed under applicable law, the "Cure Period"), after receipt from FCI of a written notice of breach within which to remedy any default specified below and to provide evidence of cure to FCI.  If any such default is not cured within the Cure Period, this Agreement shall terminate without further notice to you effective immediately upon expiration of the Cure Period.  Such defaults shall include, without limitation, the occurrence of any of the following events:

1.      You fail, refuse, or neglect to make any Payments due to FCI;

2.      You fail to submit or accurately report your Gross Sales to FCI or fail to accurately submit any other report required under this Agreement;

3.      You fail to obtain or maintain all business licenses required for the operation of the Business;

4.      You fail to abide by, perform or comply with any material provision, standard, specification, operating procedure or requirement set forth in this Agreement, as it may reasonably be supplemented by the Operations Manuals and other rules and regulations of the System applicable to the operation of the Business;

5.      You default in the observance of performance of any requirement or obligation contained in any Promissory Note payable to FCI or in any other contract between you and FCI;

6.      You refuse to allow FCI to audit your Business and Financial Records;

7.      You fail to attend and successfully complete the FCI Academy training program described in Article IV within one hundred eighty (180) days following the effective date of this Agreement;

8.      You fail to meet your Initial Advertising Obligations pursuant to Article V.C.;

9.      You fail to make the Required Local Expenditures pursuant to Article V.D.;

19

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

10.     You fail to timely submit to us annual income statements and balance sheets as set forth in Article VII.A.2; or

11.     Any of the events set forth in Article VIII.B, to the extent that applicable law requires that you be afforded an opportunity to cure such default prior to termination of this Agreement.

## ARTICLE X:  RIGHTS AND DUTIES OF PARTIES UPON EXPIRATION, TERMINATION OR NON-RENEWAL

A.     <u>Your Obligations</u>.  Upon expiration or termination of this Agreement for any reason, and regardless of any dispute which may exist between the parties, you shall:

1.     Immediately:  (a) cease using and thereafter abstain from using all aspects of the System and Proprietary Marks in all respects, as well as all signs, structures, vehicles, and forms of advertising indicative of FCI or the Business or the Products and Services offered by the Businesses, and you will not thereafter conduct or promote any business under any name or in any manner that might tend to give the general public the impression that you are continuing to operate as a franchisee of FCI; (b) make or cause to be made such changes in your signs, buildings, vehicles and structures as FCI shall reasonably direct to effectively distinguish them in appearance from those used in the Businesses; (c) assign to FCI all telephone numbers used in directory listings and advertising in which any of the Proprietary Marks are used; (d) terminate any assumed name registration which you may have maintained authorizing use of the Proprietary Marks; and (e) terminate or cease using all domain names or e-mail addresses maintained by you which contain any aspects of the System or the Proprietary Marks, and delete all content containing the Proprietary Marks or any references to FCI or the Floor Coverings International Businesses from any Home page maintained by you;

2.     Within ten (10) days, ship all customer lists, contracts and other customer information FCI requests, all product samples, printed forms, advertising pieces and manuals bearing the Proprietary Marks, (all of which are acknowledged by you to be the property of FCI) and photographic proof of FCI Vehicle de-striping, freight prepaid, in good condition, to an address designated by FCI; and

3.     Pay to FCI, as directed, within fifteen (15) days after the effective date of termination or expiration such Initial Franchise Fee, Territory Fee, Continuing Royalty Fees, B.F. Contribution, amounts owed for purchases by you, interest due on any of the foregoing, and all other amounts which are then due and unpaid.

B.     <u>FCI Rights</u>.  FCI shall have the right to audit the your Business and Financial Records in accordance with Article VII.B following expiration or termination of this Agreement.  FCI also has the right to enforce its rights under any form of security agreement.  If you shall fail or omit to take or cause to be taken any of the actions required pursuant to this Article, then FCI shall have the right but not the obligation to enter upon the Business premises without being deemed guilty of trespass or any other tort, and shall have the right to make such changes or cause them to be made at the expense of you, which expense you shall pay to FCI on demand.  This right includes authority to communicate directly with the companies which furnish telephone line service or directory publishing (printed and electronic) to enforce your agreement to transfer all telephone numbers and directory listings to FCI.  You agree to reimburse FCI for all costs, expenses and legal fees incurred by FCI in enforcing your obligations under this Article.

C.     <u>Post Term Competition</u>.  Following expiration or termination of this Agreement for any reason, you and your partners or members, if you are a partnership or limited liability company, your officers, directors, and shareholders if you are a corporation, shall comply in all respects with the nondisclosure and noncompetition

20

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

provisions of Article V.I and Article VI of this Agreement.

## ARTICLE XI:  INDEMNIFICATION

You will indemnify and hold FCI harmless against, and will reimburse FCI for, all damages for which FCI is held liable and for all costs incurred by FCI in the defense of any claim or action brought against FCI arising from, in connection with, arising out of, or as a result of your negligence, your wrongdoing or the operation of the Business including, without limitation, attorneys' fees, investigation expenses, court costs, deposition expenses, and travel and living expenses.  You will indemnify FCI, without limitation, for all claims and damages arising from, out of,  in connection with, or as a result of:    (a) any personal injury, property damage, commercial loss or environmental contamination resulting from any act or omission of you or your employees, agents or representatives; (b) any failure on the part of you to comply with any requirement of any laws or any governmental authority; and, (c) any failure of you to pay any of your obligations to any person or entity; (d) any failure of you to comply with any requirement or condition of this Agreement or any other agreement with FCI; (e) any misfeasance or malfeasance by you; and (f) any tort.  FCI will have the right to defend any claim made against it arising from, as a result of, in connection with or out of your negligence or the operation of the Business.  You will pay all attorneys' fees, costs and expenses incurred by FCI in enforcing any term, condition or provision of this Agreement or in enjoining any violation of this Agreement by you.  The indemnification and other obligations contained herein will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

## ARTICLE XII:  DISPUTE RESOLUTION

A.    Mediation.

1.    At FCI's option, all claims or disputes between you and FCI or its affiliates arising out of, or in any way relating to, this Agreement, or any of the parties' respective rights and obligations arising out of this agreement, shall be submitted first to mediation, in Norcross, Georgia under the auspices of the American Arbitration Association ("AAA"), in accordance with the AAA's Commercial Mediation Rules then in effect.  Before commencing any legal action against FCI or its affiliates with respect to any such claim or dispute, you must submit a notice to FCI, which specifies, in detail, the precise nature and grounds of such claim or dispute.  FCI will have a period of 30 days following receipt of such notice within which to notify you as to whether FCI or its affiliates elects to exercise its option to submit such claim or dispute to mediation.  You may not commence any action against FCI or its affiliates with respect to any such claim or dispute in any court unless FCI fails to exercise its option to submit such claim or dispute to mediation, or such mediation proceedings have been terminated either: (i) as the result of a written declaration of the mediator(s) that further mediation efforts are not worthwhile; or (ii) as a result of a written declaration by FCI.  The parties shall each bear their own costs of mediation and shall share equally the filing fee imposed by AAA and the mediator's fees.  FCI's rights to mediation, as set forth herein, may be specifically enforced by FCI.

2.    FCI shall not be required to first attempt to mediate a controversy, dispute or claim against you through mediation as set forth in Article XII.A(1) if such controversy, dispute or claim concerns an allegation by FCI that you have violated (or threatens to violate, or poses an imminent risk of violating):

i.    any of FCI's federally protected intellectual property rights in the FCI Proprietary Marks, the FCI System or in any of FCI's Confidential Information;

ii.    Any claims pertaining to or arising out of or pertaining to any warranty issued; or

iii.    any of the restrictive covenants contained in this Agreement.

21

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

B.      <u>Third Party Beneficiaries</u>.  FCI's officers, directors, shareholders, agents and/or employees are express third party beneficiaries of this Agreement and the mediation provisions contained herein, each having authority to specifically enforce the right to mediate claims asserted against such person(s) by you.

C.      <u>Injunctive Relief</u>.  Nothing contained in this Agreement herein shall prevent FCI from applying to or obtaining from any court having jurisdiction, without bond, a writ of attachment, temporary injunction, preliminary injunction and/or other emergency relief available to safeguard and protect FCI's interest prior to the filing of any proceeding or pending the trial or handing down of a decision or award pursuant to any proceeding conducted hereunder.

D.      <u>Jurisdiction and Venue</u>.  With respect to any proceeding not subject to, or unresolved by, mediation, the parties agree that any action at law or in equity instituted against either party to this Agreement shall be commenced only in the Georgia State Court having jurisdiction over Norcross, Georgia or the United States District Court for the Northern District of Georgia.

E.      <u>Jury Trial and Class Action Waiver</u>.  The parties hereby agree to waive trial by jury in any action, proceeding or counterclaim, whether at law or equity, regardless of which party brings suit.  This waiver shall apply to any matter whatsoever between the parties hereto which arises out of or is related in any way to this Agreement, the performance of either party, and/or your purchase from FCI of the franchise and/or any goods or services. The parties agree that all proceedings will be conducted on an individual, not a class-wide basis, and that any proceeding between you, your guarantors, and FCI or its affiliates or employees may not be consolidated with any other proceeding between FCI and any other person or entity.

F.      <u>Waiver of Punitive Damages</u>.  You waive to the fullest extent permitted by law, any right to or claim for any punitive, exemplary, incidental, indirect, special or consequential damages (including, without limitation, lost profits) which you may have against us arising out of any cause whatsoever (whether such cause be based in contract, negligence, strict liability, other tort or otherwise) and agree that in the event of a dispute, your recovery shall be limited to actual damages.  If any other term of this Agreement is found or determined to be unconscionable or unenforceable for any reason, the foregoing provisions shall continue in full force and effect, including, without limitation, the waiver of any right to claim any consequential damages.

G.      <u>Attorneys' Fees</u>. If either party institutes any judicial proceeding to enforce any monetary or nonmonetary obligations or to interpret the terms of this Agreement, the prevailing party shall, upon final judgment, be entitled to recover all costs, including reasonable attorneys' fees, incurred with such proceeding.

## ARTICLE XIII: RELATIONSHIP OF PARTIES

You are and shall be considered an independent contractor with entire control and direction of your Business and operations, subject only to the conditions and obligations established by this Agreement.  No agency, employment, joint venture, or partnership is created by this Agreement nor is it intended that any third party beneficiary or fiduciary relationship is hereby established.  Your Business is separate and apart from any that may be operated by FCI.   No party to this Agreement shall make representations tending to create apparent agency, employment, or partnership. Except as expressly set forth in this Agreement, no party shall have authority to act for another in any manner to create obligations or debts binding on the other, and no party will be responsible for any obligations or expenses whatsoever of another.  Neither you nor any person performing any duties or engaged in any work at the request of you shall be deemed an employee or agent of FCI.  You shall decide what price to charge for your Products and Services.  Such prices should be reasonably competitive in your local market area.  Even though this Agreement contains provisions requiring you to operate your Business in compliance with the System: (i) FCI and FCI's affiliates do not have actual or apparent authority to control the day-to-day conduct and operation of your Business or employment decisions; and (ii) you and FCI do not intend for FCI or FCI's affiliates to incur any liability in connection with or arising from your use of the System or the operation of the Business, whether or not in accordance with the Operations Manuals.

## ARTICLE XIV: MISCELLANEOUS

22

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

A.     <u>Construction</u>. All references herein to the singular or plural shall be construed to include the other where applicable, and the masculine or feminine to include the other and neuter genders; and all covenants, agreements and obligations herein assumed by you shall be deemed to be joint and several covenants, agreements and obligations of the several persons named herein as you; or, if you are a corporation, partnership or limited liability company, then all covenants, agreements and obligations herein assumed by you shall be deemed to be joint and several covenants, agreements and obligations of you and the individual or individuals signing on behalf of you.

B.     <u>Severability</u>. All provisions of this Agreement are severable and this Agreement will be interpreted and enforced as if all completely invalid or unenforceable provisions were not contained herein and partially valid and enforceable provisions will be enforced to the extent valid and enforceable. The provisions of any valid, applicable law or rule requiring a greater prior notice of the termination of or refusal to renew this Agreement than is required hereunder or the taking of some action not required hereunder, or if under any applicable and binding law of any jurisdiction, any provision of this Agreement is invalid or unenforceable, the prior notice or other action required by such law or rule will be substituted for the notice requirements hereof, or such invalid or unenforceable provision will be modified to the extent required to be valid and enforceable.

C.     <u>Effect of Waivers</u>. No waiver by FCI of any default in performance on the part of you, time being of the essence hereof and of the performance hereunder, or like waiver by FCI of any breach or series of breaches, or any of the terms, covenants or conditions of this Agreement, and no practice of the parties at variance with the terms hereof shall constitute a waiver of any subsequent breach or a waiver of the same or different terms, covenants, or conditions.

D.     <u>Remedies</u>. If FCI commences any action in law or in equity against you to secure or protect the rights or remedies of FCI under this Agreement, FCI shall be entitled to recover as part of any judgment entered therein in its favor reasonable costs of collection or litigation, as the case may be, including but not limited to legal fees and reasonable legal expenses of outside counsel, court costs, investigative fees, mediation fees, in-house counsel and legal assistant costs and damages. Neither this remedy nor any other remedy exercised by FCI shall be deemed exclusive, but FCI shall be entitled to exercise cumulatively any and all remedies available in law or in equity, including injunctive relief and its exercise of any one right or remedy shall not preclude it from exercising any other right or remedy. This Article XIV.D shall apply to causes of action arising before, during and after the term of this Agreement.

E.     <u>Notices</u>. Any notice required or permitted to be given hereunder shall be in writing and may be given by personal service or by forwarding a copy thereof by facsimile, certified mail (return receipt requested) or Federal Express or similar overnight delivery service, postage or shipping costs fully prepaid, in a sealed envelope, addressed to FCI or you, as the case may be, at the address that appears on the Data Sheet for you or Page 2 of this Agreement for FCI. The addresses hereby given for the service of notice may be changed at any time by any party through written notice given to the other as herein provided. Notices will be deemed to have been received on the date of actual delivery or receipt where a signed receipt or affidavit of service is obtained, on the business day following the day of transmission in the case of facsimile delivery, or on the fourth (4th) business day after deposit in the United States mail.

F.     <u>Successors</u>. This Agreement shall bind and inure to the benefit of the successors and assignees of FCI, and to the heirs, administrators and executors and permitted successors and assignees of you.

G.     <u>Independent Covenants</u>. All covenants in this Agreement are independent and absolute. You shall not withhold payment of any charges, B.F. Contributions, Continuing Royalty Fees, or other amounts due FCI on grounds of alleged non-performance by FCI.

H.     <u>Time Limitations</u>. You agree that any claim arising out of this Agreement, whether for rescission, damages or any other type of remedy at law or in equity, shall be brought to FCI's attention by written notice within one (1) year from the date the act or failure to act by any person occurred. If written notice of a claim is not given

23

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

within the one (1) year period, then the alleged breach or violation will not be deemed to be a breach or violation of this Agreement and cannot be asserted as a claim or defense in any mediation or other action between the parties.

     I.    <u>Modifications</u>.  You recognize and agree that from time to time FCI may reasonably change the System presently identified with the Proprietary Marks under any conditions and to any extent which FCI in its sole and absolute discretion may deem advisable to meet the demands of the industry, to protect its Proprietary Marks, to improve the quality of the System, or for other valid business purpose.  Accordingly, FCI may adopt and use new or modified Proprietary Marks, copyrighted materials, products, equipment or techniques, without liability to you and you agree to comply with such modifications.

     J.    <u>Entire Agreement</u>.  This Agreement, the exhibits attached hereto and the documents referred to herein presented to you, shall be construed together and constitute the entire, full and complete Agreement between FCI and you concerning the subject matter hereof, and it shall supersede any and all prior and existing agreements, either oral or in writing, between the parties hereto with respect to the subject matter hereof; there are no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein that are of any force or effect with reference to this Agreement or otherwise.  Nothing in this Agreement or in any related agreement is intended to disclaim the representations made by FCI in the Franchise Disclosure Document.  No amendment, change or variance from this Agreement shall be binding on any party unless set forth in writing and executed by all parties.

     K.    <u>Financing</u>.  FCI does not represent that you will qualify for FCI Vehicle leasing or financing.  FCI does not warrant that you or your customers will qualify under standards set by credit granting financial institutions or leasing companies.  Franchisor does not represent that carpet manufacturers will grant a line of credit to you or your customers.  Any failure of you or your customers to secure such leasing, financing or financing arrangements shall not subject this Agreement to rescission or subject FCI to any costs, refunds, or penalties.  You acknowledge that decisions of credit granting firms are beyond the control of the parties to this Agreement and holds FCI harmless for the results of such decisions.

     L.    <u>Governing Law</u>.  This Agreement shall be deemed to have been made in the State of Georgia and shall be construed according to the laws of Georgia.

     M.    <u>Acknowledgments</u>.  You acknowledge that:

     1.    You have received, read and understand this Agreement and the attachments hereto; FCI has fully and adequately explained the provisions hereof to your satisfaction; and you has been accorded sufficient time and opportunity (as may be required by state and federal law) to consider this Agreement and to consult with advisors of your own choosing concerning the potential benefits and risks of entering into this Agreement.

     2.    FCI expressly disclaims making, and you acknowledge that it has not received any warranty, promise, or guarantee, express or implied, as to the potential Gross Sales, volume, profits, or success of the business venture contemplated by this Agreement.

     3.    You expressly acknowledge that it is solely responsible for the operation of the Business, and that the success of the Business contemplated to be undertaken by you depends to a large extent upon the ability of you or your partners, officers or shareholders as independent business person(s) and upon your efforts, skill, business background and sales.

[SIGNATURES ON FOLLOWING PAGE]

24

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

IN WITNESS WHEREOF, the parties, intending to be legally bound hereby, have caused this Agreement to be executed as of the effective date indicated on page 1 of this Agreement.

FRANCHISOR

*Thomas W. Wood*

Floorcoverings International, Ltd.
By: Thomas W. Wood
Title: President and CEO


FRANCHISEE

By: Anthony Imperato
Title:

By: Crystal Imperato
Title:


CORPORATE OR PARTNERSHIP NAME, IF APPLICABLE

Each of the undersigned Shareholders/Partners/Members of you agrees to be personally bound, jointly and severally, by the terms and conditions of this Agreement.

| Printed Name: | Signature: | Percentage of Ownership |
|---|---|---|
| | | _____ % |
| | | _____ % |
| | | _____ % |
| | | _____ % |

25

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

FLOORCOVERINGS INTERNATIONAL, LTD.

EXHIBIT "A-1"

DESCRIPTION OF DESIGNATED MARKETING AREA

| | | | | | | |
|---|---|---|---|---|---|---|
| 77014 | 77032 | 77037 | 77038 | 77039 | 77050 | 77060 |
| 77064 | 77065 | 77066 | 77067 | 77068 | 77069 | 77070 |
| 77073 | 77086 | 77088 | 77090 | 77373 | 77388 | |

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

FLOORCOVERINGS INTERNATIONAL, LTD.

EXHIBIT "A-2"

GUARANTEE OF CORPORATE FRANCHISEE'S OBLIGATIONS

RIDER TO FRANCHISE AGREEMENT

GUARANTEE OF CORPORATE OBLIGATIONS

"Corporation" _____     Registered Agent_____
_____
_____
_____


"Franchisor"     Floorcoverings International, Ltd.
                 5390 Triangle Parkway, Suite 125
                 Norcross, Georgia 30092


"Guarantor"     _____
                _____
                _____
                _____


(1)     To induce Franchisor to enter into a Franchise Agreement, Telephone Listing Authorization Agreement, and Promissory Note (collectively, "Agreements") with the Corporation or to otherwise extend financial accommodations to the Corporation, the undersigned, whether one or more persons, hereby makes the following commitments to the Franchisor:

(a)     To unconditionally guarantee the prompt payment in full of any indebtedness or obligation arising from the Corporation to the Franchisor; this guarantee of the payment shall also extend to any obligations which the Corporation may hereafter incur.

(b)     To unconditionally guarantee the prompt, full, and faithful performance by the Corporation of every term, condition, agreement, representation, and provision on the part of the Corporation contained in any of the Agreements or in any modification or substitution thereof.

(c)     To reimburse the Franchisor, upon demand, for all expenses, collection charges, court costs, and attorney's fees incurred in the enforcement of any of the Franchisor's rights and remedies against the Corporation or the undersigned, in an amount equal to the highest rate permitted by law of the total obligations due by the Corporation to the Franchisor.

(d)     To be bound by the restrictions upon Franchisee's activities upon transfer, termination or expiration and nonrenewal of this Agreement as if Guarantor were an individual party to the Agreement in his or her individual capacity

(2)     The undersigned Guarantor waives notice of acceptance hereof and of all notices and demands of any kind to which it may be entitled including, without limitation, all demands of payment and notice of non- payment, protest and dishonor to it or the Corporation, or to the makers of any Promissory Note or other instrument for what it is or may be liable hereunder. The Guarantor further waives notice of and hereby consents to any agreement, extension

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

or accord, or for compromise of any sums due in any way, and such agreement, accord, or extension, or compromise shall in no way impair the Guarantor's liability hereunder.

(3)      This is a continuing Guarantee and shall not be discharged or affected by death of the Guarantor(s), shall bind the heirs, successors and representatives of the Guarantor, and may be enforced by or for the benefit of any assignee or successor of the Franchisor.

(4)      The Guarantor waives any right to require the Franchisor to proceed against the Corporation, proceed against any security, or pursue any other remedy which the Franchisor may have, including against any other Guarantor of the Corporation's obligations to the Franchisor.

(5)      The Guarantor waives right to a trial by jury in any action based on this Guarantee. The Guarantor also waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement thereof.  This Guarantee may be amended only by a written instrument. The parties agree that any action at law or in equity instituted against either party to this Agreement shall be commenced only in the Georgia State Court having jurisdiction over Norcross, Georgia or the United States District Court for the Northern District of Georgia.

(6)      This Guarantee shall inure to the benefit of the Franchisor and its successors and assigns and shall be binding on the undersigned and on any successors or assigns of the undersigned.

(7)      References to "Guarantor" shall be deemed to be singular or plural, as to the context indicates. When there is more than one person as Guarantor, it is understood that each such person shall be jointly and severally responsible to the same extent as if each had signed this Guarantee individually.

IN WITNESS WHEREOF, we have caused this Guarantee to be executed as of this date: _____ .

FRANCHISOR
Floocoverings International, Ltd.

By:_____
Name:_____
Title:_____

GUARANTORS

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

FLOORCOVERINGS INTERNATIONAL, LTD.

EXHIBIT "A-3"

EMPLOYEE

NONDISCLOSURE AND NONCOMPETITION AGREEMENT

Effective this _____ day of _____, 20____, in consideration of his or her employment with _____ (the "Employer"), a franchisee of Floorcoverings International, Ltd. ("FCI"), the undersigned (the "Employee") will, at all times during the term of his or her employment and thereafter, comply with the terms and conditions of this Agreement.

1.      During such time as the Employee is an employee of or associated with the Employer, and for a period of one (1) year after the termination of the Employee's employment or association with the Employer (whether voluntary or involuntary, and for any reason), or the retirement of the Employee from employment or association with the Employer, the Employee:

        a.      will not, on his or her own account or as an employee, agent, consultant, partner, officer, Director, or shareholder of any other person, firm, entity, partnership or corporation, own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in, or assist any person or entity engaged in any business that sells competitive products, provides competitive services, or is in any way competitive with or similar to the Floor Coverings International® businesses that are conducted by the Employer, by FCI, and by the franchisees of FCI; provided, however, that the foregoing will not prohibit the Employee from engaging in any such carpet or floor coverings business which is located outside of an area extending one (1) mile from the outer perimeter of:   an area to include the county containing the DMA in which the Employer's Business is conducted and each county or parish which adjoins or borders upon the county(ies) containing the DMA (the "Restricted Area").

        b.      will treat the FCI Operations Manuals and any other FCI confidential materials (including, but not limited to, videotapes, films, drawings, diagrams and computer programs) created for or approved for use in the operation of the Floor Coverings International® business, and the information, knowledge, methods or techniques contained or described therein (collectively, the "Confidential Materials"), as secret and confidential and as the sole and absolute property of FCI, and will use all reasonable means to keep them secret and confidential, including, without limitation, the following:

                i.      the Employee will not communicate, divulge or use for the benefit of himself/herself personally or any other person or entity, any information contained in the Manuals or Confidential Materials;

                ii.     the Employee will not copy, duplicate, videotape, photograph, record or otherwise reproduce the Manuals or Confidential Materials, in whole or in part;

                iii.    the Employee will not borrow or remove the Manuals or any Confidential Materials from the Floor Coverings International® business without the express written approval of the Employer;

                iv.     the Employee will not make the Manuals or any Confidential Materials available to any unauthorized person or entity, or allow any unauthorized person or entity access to the Manuals or any Confidential Materials; and

© 2021 FLOORCOVERINGS INTERNATIONAL, LTD.
FRANCHISE AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

v.       the Employee will not use the Manuals or any Confidential Materials for any purpose other than the performance of his or her duties as an employee of the Employer's Floor Coverings International business.

2.       The Employee expressly agrees that the one (1) year period and the Restricted Area described in this Agreement are the reasonable and necessary time and geographic area needed to protect the Employer, FCI, and FCI's affiliates and franchisees if the Employee terminates or retires from employment or association with the Employer.

3.       The Employee further agrees that the one (1) year period described in this Agreement will be extended for a number of months equal to the number of months, if any, for which the Employer pays the Employee his or her monthly base compensation or other severance pay after the termination of the Employee's association with the Employer, and will also be extended beyond such one (1) year period for a period of time equal to the duration of any breach of this Agreement by the Employee.

4.       The Employee and the Employer further acknowledge and agree:

a.       that FCI is a third-party beneficiary of the rights and obligations set forth in this Agreement;

b.       that FCI will suffer irreparable harm in the event of any breach or violation of this Agreement;

c.       that FCI will have the right to enforce the provisions of this Agreement in its own name in the event of any breach or violation, or threatened breach or violation, of this Agreement; and

d.       that FCI will have the right to obtain specific performance, temporary restraining orders, preliminary injunctions, injunctions and other equitable relief to the extent reasonably necessary to protect its interests in prohibiting competitive activities from any court of competent jurisdiction.

The undersigned Employer and Employee understand and accept the obligations set forth herein and agree to be bound by them.

EMPLOYER:                                      EMPLOYEE:

By_____        By_____

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

FLOORCOVERINGS INTERNATIONAL, LTD.
EXHIBIT "A-4"
SAMPLE TERMINATION OF FRANCHISE AGREEMENT AND RELEASE

This Termination of Franchise Agreement and Release (the "Agreement") is made this ____ day of 20____, by and between Floorcoverings International, Ltd. ("FCI"), a Georgia corporation, with a place of business at 5390 Triangle Parkway, Suite 125, Norcross, Georgia 30092, and _____ ("Franchisee"), a _____ with an address at _____.

## BACKGROUND

A.      On _____, 20____, the Franchisee entered into a franchise agreement (the "Franchise Agreement") with FCI for the right to operate a FCI Franchised Business at _____ (the "Franchised Business").

B.      The Franchisee now desires to sell the Franchised Business to a qualified buyer ("Buyer").

C.      In order to complete their sale of the Franchised Business, the Franchisee now desires to terminate the Franchise Agreement and all rights and obligations between the parties relating to the Franchise Agreement, pursuant to the terms of this Agreement.

## AGREEMENT

In consideration of the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and intending to be legally bound, the parties agree as follows:

1.      Subject to the terms and conditions contained in this Agreement, the Franchise Agreement and all rights and obligations between FCI and the Franchisee arising from or related to the Franchise Agreement are terminated, effective as of the date of this Agreement.

2.      This Agreement is contingent on: (i) receipt of the transfer fee; (ii) the execution and closing on the Asset Purchase Agreement by and between the Franchisee and Buyer dated as of _____; and (iii) Buyer's execution of FCI's current form of Franchise Agreement.

3.      Notwithstanding anything in this Agreement to the contrary, the parties agree and acknowledge that the Franchisee shall remain bound by all of the post-term covenants and obligations contained in the Franchise Agreement including, without limitation, those relating to: non-competition (Article VI); Indemnification (Article XI); and post-termination obligations (Article X).

4.      The Franchisee represents and warrants that all of its monetary obligations to FCI and its subsidiaries and affiliates have been satisfied in full as of the date of this Agreement.

5.      The Franchisee, for itself and all persons and entities claiming by, through or under it, releases, acquits and forever discharges FCI and its present and former officers, employees, shareholders, directors, agents, servants, representatives, affiliates, successors and assigns (the "FCI Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorney's fees, actions or causes of action whatsoever, whether known or unknown, which they, by themselves, on behalf of, or in conjunction with any other person, persons, partnership or corporation, have, had or claim to have against the FCI Releasees arising out of or related to the offer, sale and operation of the Franchised Business, and the parties' rights or obligations under the Franchise Agreement.

6.      This Agreement constitutes the entire integrated agreement of the parties with respect to the subject matter contained in this Agreement, and may not be subject to any modification without the written consent of the parties.

7.      This Agreement shall be for the benefit of and binding upon the parties and their respective representatives, successors and assigns.

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

8.      Each party acknowledges that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by each party, after having a reasonable opportunity to retain and confer with counsel. This Agreement is entered into after a full investigation by the parties, and the parties are not relying upon any statements or representations not embodied in this Agreement.

9.      In the event that FCI retains the services of legal counsel to enforce the terms of this Agreement, it shall be entitled to recover all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the terms of this Agreement.

10.     This Agreement may be executed in multiple counterparts by the various parties and the failure to have the signatures of all parties on a single Agreement shall not affect the validity or enforceability of any part of this Agreement against any party who executes any counterpart of the Agreement. Executed facsimile copies of this Agreement shall be deemed to be effective as original signatures.

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS. I WOULD NOT SIGN THIS AGREEMENT IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

FLOORCOVERINGS INTERNATIONAL, LTD.

Attest: _____      By: _____

Franchisee

Witness: _____      _____
Witness: _____      _____

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

# EXHIBIT B

# PROMISSORY NOTE

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

## INTEREST BEARING PROMISSORY NOTE

FOR VALUE RECEIVED, _____ (the "Undersigned") promises to pay the order of Floorcovering International, Ltd. (the "Holder") the sum of _____ DOLLARS ($_____) along with 10% interest in _____ monthly payments of $_____. The first payment is due on _____, 20_____, and subsequent payments are due on the first day of each month thereafter through _____, 20_____.

All unpaid amounts owing on this Promissory Note (the "Note") shall immediately become due and payable at the option of Holder without notice or demand upon the occurrence of any of the following events of default: (i) the default of any provision of the Note; (ii) the termination of any other agreement between the Undersigned and Holder; or (iii) the death, dissolution, insolvency (however expressed or indicated) or the filing of a petition in bankruptcy, reorganization or for the adjustment of debts for, by or against the Undersigned.

There is no prepayment penalty under this Note.

Holder's failure to enforce any rights granted to it under this Note shall not constitute a waiver of such rights.

The validity, enforceability, construction and interpretation of this Note shall be governed by the laws of the State of Georgia, which laws shall control in the event of any conflict of law. If any provision of this Note is deemed illegal under any state of federal law, then such provision shall not be considered a part of this Note and the remainder of this Note shall not be affected.

The Undersigned agrees that it will have a substantial relationship with the Holder at its offices in Georgia and that any action by it arising out of or relating to this Note shall be litigated to conclusion only in any state or federal court of general jurisdiction located within Georgia and waives any objection they may have to either the jurisdiction or venue of such court, and further waive any argument that such venue is inconvenient.

This Note shall be binding upon and shall inure to the benefit of the parties and their successors, heirs and assigns.

In the event that it becomes necessary for Holder to retain the services of legal counsel to enforce terms of this Note, Holder shall be entitled to recover all costs and expenses, including reasonable attorney's fees, incurred in enforcing the terms of this Note.

The persons executing this Note on behalf of corporations acknowledge their authority to do so.

**I HAVE READ THE ABOVE NOTE AND UNDERSTAND ITS TERMS. I WOULD NOT SIGN THIS NOTE IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

By: _____

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

# EXHIBIT C

## SYSTEM ACCESS AGREEMENT

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**Floor Coverings International**

**SYSTEM ACCESS AGREEMENT**

This System Access Agreement is between Floor Coverings International (FCI), Inc., a Georgia corporation, having an address at 5390 Triangle Parkway, Suite 125, Norcross, Georgia 30092, referred to as "FCI," and

NAME:  Anthony Imperato        Crystal Imperato      ("Franchisee").

ADDRESS:  9902 Indian Rill Court
Tomball, TX 77375

WHEREAS, FCI has developed a computer system for the promotion and assistance of independently owned and operated floor design and consulting franchisees, including policies, procedures and techniques designed to enable such franchisees to effectively compete in the floor design services industry (which system, including all content, data, databases, software, and/or materials contained therein and accompanying documentation and/or manuals, and all derivatives thereof, is hereinafter called the "FCI System"). The FCI System includes, design tools, customer lists, sales materials, and other functionality that assists the franchisee in operating the franchise; and

WHEREAS, Franchisee desires to access and interact with the FCI System.

NOW, THEREFORE, in consideration of the foregoing premises, and for other good and valuable consideration, the delivery, receipt and sufficiency of which are hereby acknowledged; and further, in accordance with and pursuant to all terms, conditions, covenants, agreements, representations and warranties contained herein, the parties hereby mutually agree as follows:

**1. License**. Franchisee is hereby granted a non-exclusive, non-transferable, and limited license to access, use, interact with and store data on the FCI System. This license shall be effective during the term of Franchisee's subscription to the FCI System as set forth on the Order Form. Franchisee is solely responsible for selecting, purchasing, installing and maintaining the hardware, equipment, and other software necessary to use the FCI System, and for access and similar charges incurred under third party information provider subscription agreements. This Agreement sets forth the terms and conditions applicable to Franchisee's access to, and use of, the FCI System.

**2. Franchisee and Authorized Users**. The terms and conditions of this Agreement shall apply to Franchisee and each Authorized User (as defined below) of the Franchisee. Franchisee will

F

1

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

provide a list to FCI of all Authorized Users of the Franchisee, as well as a copy of the Acknowledgement (as defined below) executed by each Authorized User. Franchisee will inform all Authorized Users of the terms and conditions of this Agreement, including, in particular, any limitations on access or use of the FCI System and User Data (as defined in Section 4) as set forth in this Agreement, and will have each Authorized User sign the Acknowledgement, which is attached hereto as Exhibit B, before such Authorized User is allowed access to or use of the FCI System. Franchisee will cooperate with any investigation into possible breach of this Agreement. The term "Authorized Users" shall include all full-time and part time employees and staff who are permitted by Franchisee to access or use the FCI System.

**3. FCI Full Ownership of FCI System**. The FCI System is proprietary to FCI, and is protected by copyright and other laws respecting intellectual property and proprietary rights. The FCI System also may contain similarly protected licensed proprietary material of third parties. FCI retains all rights in and to the FCI System, including (without limitation) all copyright and other intellectual property and proprietary rights worldwide. Franchisee and all Authorized Users shall not access or use the FCI System, in whole or in part, except as expressly permitted under this Agreement.

**4. Permitted Use of FCI System**.  The FCI System may be used by the Franchisee and Franchisee's Authorized Users for the sole purposes of operating the Franchise as follows:

*Access:* Franchisee and Authorized Users may access the FCI System for their individual use solely in connection with Franchisee's business. Access to the FCI System is at the sole discretion of FCI and can be terminated at any time.

*User Data:* Franchisee and Authorized Users can input, upload, store and create files, records, reports and other data and content to and in the FCI System, including, without limitation, customer related information and records ("User Data"). Franchisee acknowledges and agrees that all User Data shall be the sole and exclusive property of FCI, and Franchisee hereby waives any interest or right in or to any User Data. User Data will be accessible to the Franchisee as permitted in the sole discretion of FCI.

*Limited Rights of Use and Reproduction:*  Franchisees and Authorized Users may view the FCI System on screen, and may print paper copies for individual or customer use only. Franchisee and Authorized Users shall not otherwise, and shall not permit others to: (i) reproduce, publish, distribute, sell, or otherwise access or use any material retrieved from or contained in the FCI System, including, without limitation, User Data, in any manner whatsoever; (ii) distribute the information contained in the FCI System, including, without limitation, User Data, to other users not duly authorized to receive the FCI System; (iii) distribute, rent, sublicense, lease, transfer, assign or otherwise make commercial use of the FCI System or User Data; and (iv) decompile, disassemble, or otherwise reverse-engineer the FCI System, or alter, translate, modify, or adapt it to create derivative works.

F

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

*No Local Storage:* Franchisee and Authorized Users are expressly prohibited from placing or installing any portion of the FCI System on any electronic media, including, but not limited to, individual desktop computers, local or wide area networks, timesharing services, multiple processing units, multiple site arrangements, service or software rental bureaus, list servers, online services, electronic bulletin boards or forums, World Wide Web sites or any other server that is Internet enabled except as permitted by FCI.

*Unauthorized Use:* Franchisee shall not knowingly permit anyone other than Authorized Users to access or use the FCI System or the User Data.

*No Modification of FCI System:* Franchisee shall not modify or create any derivative work of the FCI System.

*Removal of FCI Marks and Copyright Notice:* Franchisee may not remove, obscure or modify any copyright or other notices included in any content from the FCI System.

**5. Payment Terms**. In consideration of Franchisee's use of the FCI System, Franchisee shall pay FCI as set forth in Exhibit A, which is attached hereto. The fees set forth in Exhibit A are subject to change upon notice from FCI.

**6. Non-Disclosure**. Franchisee acknowledges and agrees that the FCI System and User Data are proprietary and confidential to FCI, and that Franchisee shall not disclose the foregoing, in whole or in part, to any third party, except as expressly permitted herein. Franchisee shall take commercially reasonable measures to protect the FCI System and User Data against disclosures and use in violation of this Agreement. This obligation shall survive the termination of this Agreement.

**7. Franchisee Obligations to Control Authorized Users**. In the event of any unauthorized use of the FCI System or any User Data by an Authorized User, Franchisee shall immediately notify FCI, and Franchisee shall no longer provide such Authorized User with access to the FCI System and/or User Data.

**8. Limited Warranty**. FCI warrants that it has the right to license the rights granted under this Agreement and that it has obtained any and all necessary permissions from third parties for materials used on the FCI System. Except for the express warranties stated herein, access to the and functionality of the FCI System are provided on an "as is" basis, and FCI disclaims any and all other warranties, conditions, or representations (express, implied, oral or written), relating to use of the FCI System or any part thereof, including, without limitation, any and all implied warranties of quality, accuracy, completeness, currency, performance, merchantability, non- infringement or fitness for a particular purpose. FCI DOES NOT WARRANT THAT THE FCI SYSTEM IS ERROR-FREE IN CONTENT. FCI makes no warranties respecting any harm that may be caused by the transmission of a computer virus, worm, time bomb, logic bomb or other such computer program. Licensor further expressly disclaims any warranty or representation to Authorized Users, or to any third party.

F

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**9.  Enforcement of Terms**.  Franchisee acknowledges that the FCI System and User Data are highly proprietary in nature and that unauthorized copying, transfer, use or disclosure may cause FCI or its licensors irreparable injury that cannot be adequately compensated for by means of monetary damages. Franchisee agrees that any actual or threatened breach of this Agreement by Franchisee, or any subscriber or Authorized User, may be enforced by FCI by means of equitable relief (including, but not limited to, injunctive relief) in addition to any other available rights and remedies.

**10.  Indemnification**. The Franchisee agrees to indemnify, defend and hold FCI harmless from and against any loss, damage, costs, liability and expenses (including reasonable legal and professional fees) arising out of any claim or legal action taken against FCI related to or in any way connected with any use of the FCI System by the Franchisee or any failure by the Franchisee to perform its obligations in relation to this Agreement.

**11.  Term of Agreement**. This Agreement may be terminated by FCI at any time. Otherwise, this Agreement will remain in-force as long at the Franchise Agreement between Franchisee and FCI remains in-force. Upon the termination of this Agreement, Franchisee shall immediately cease all use of the FCI System and User Data, and shall return all copies thereof in its possession or control to FCI.

**12.  Choice of Law; Integration.** This Agreement, and the rights of the parties hereto, shall be governed by, construed and enforced in accordance with the laws of the State of Georgia as such laws apply to agreements among Georgia residents made and to be performed entirely within the State of Georgia. Any action in respect of, or concerning, this agreement shall be litigated solely in Cobb County, Georgia, and both parties consent to jurisdiction of the person and venue solely in Cobb County, Georgia.  If any provision of this Agreement is held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

**Floor Coverings International, Ltd. ("FCI")**      **Franchisee**

By:_____      By:_____
        Thomas W. Wood

Title:_____      Print Name:_____
        President and CEO                   Anthony Imperato      Crystal Imperato

Date:_____      Date:_____
        3/2/2022 | 6:54 PM PST                     3/2/2022 | 8:21 PM EST    3/2/2022 | 5:24 PM PST

F                                    4

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**Exhibit A**
**Payment Terms**

Franchisee shall pay FCI the following amounts:

License Fee equal to $ __7,500.00__ , due and payable to FCI on or before ___TSA Training___ .

Monthly Access Fee equal to $ __$200-$300__ /monthly, due and payable to FCI on or before the

__15th__ day of each month via ACH/electronic transfer to FCI during the term of the Agreement.

Annual Upgrade and Maintenance Fee equal to $ ___$500.00___ and payable to FCI via

ACH/electronic transfer on or before ___October 1st___ each year.

F                                                                 5

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**Exhibit B**
**Employee Acknowledgement**

I,_____in    consideration    of    my    employment    with
_____    ("Employer"), hereby acknowledge and agree that  I have
read the System Access Agreement entered into by and between Floorcoverings International,  Ltd.
and Employer (the "Agreement"), and hereby agree to abide by the terms and conditions set  forth
therein, including, without limitation, Sections 3, 4, 6 and 9, in connection with my access to  and
use of the FCI System and User Data (as such terms are defined in the Agreement) during my
employment.

My signature constitutes my agreement to the foregoing.


_____
Employee's Signature


_____
Printed Name


_____
Date

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

## Floor Coverings International

## SYSTEM ACCESS AGREEMENT

This System Access Agreement is between Floor Coverings International (FCI), Inc., a Georgia corporation, having an address at 5390 Triangle Parkway, Suite 125, Norcross, Georgia 30092, referred to as "FCI," and

NAME:     Anthony Imperato          Crystal Imperato          ("Franchisee").

ADDRESS:     9902 Indian Rill Court
Tomball, TX 77375

WHEREAS, FCI has developed a computer system for the promotion and assistance of independently owned and operated floor design and consulting franchisees, including policies, procedures and techniques designed to enable such franchisees to effectively compete in the floor design services industry (which system, including all content, data, databases, software, and/or materials contained therein and accompanying documentation and/or manuals, and all derivatives thereof, is hereinafter called the "InspireNet Mobile"). The InspireNet Mobile includes, design tools, customer lists, sales materials, and other functionality that assists the franchisee in operating the franchise; and

WHEREAS, Franchisee desires to access and interact with the InspireNet Mobile.

NOW, THEREFORE, in consideration of the foregoing premises, and for other good and valuable consideration, the delivery, receipt and sufficiency of which are hereby acknowledged; and further, in accordance with and pursuant to all terms, conditions, covenants, agreements, representations and warranties contained herein, the parties hereby mutually agree as follows:

**1. License.** Franchisee is hereby granted a non-exclusive, non-transferable, and limited license to access, use, interact with and store data on the InspireNet Mobile. This license shall be effective during the term of Franchisee's subscription to the InspireNet Mobile as set forth on the Order Form. Franchisee is solely responsible for selecting, purchasing, installing and maintaining the hardware, equipment, and other software necessary to use the InspireNet Mobile, and for access and similar charges incurred under third party information provider subscription agreements. This Agreement sets forth the terms and conditions applicable to Franchisee's access to, and use of, the InspireNet Mobile.

**2. Franchisee and Authorized Users.** The terms and conditions of this Agreement shall apply to Franchisee and each Authorized User (as defined below) of the Franchisee.  Franchisee will

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

provide a list to FCI of all Authorized Users of the Franchisee, as well as a copy of the Acknowledgement (as defined below) executed by each Authorized User. Franchisee will inform all Authorized Users of the terms and conditions of this Agreement, including, in particular, any limitations on access or use of the InspireNet Mobile and User Data (as defined in Section 4) as set forth in this Agreement, and will have each Authorized User sign the Acknowledgement, which is attached hereto as Exhibit B, before such Authorized User is allowed access to or use of the InspireNet Mobile. Franchisee will cooperate with any investigation into possible breach of this Agreement. The term "Authorized Users" shall include all full-time and part time employees and staff who are permitted by Franchisee to access or use the InspireNet Mobile.

**3. FCI Full Ownership of InspireNet Mobile**. The InspireNet Mobile is proprietary to FCI, and is protected by copyright and other laws respecting intellectual property and proprietary rights. The InspireNet Mobile also may contain similarly protected licensed proprietary material of third parties. FCI retains all rights in and to the InspireNet Mobile, including (without limitation) all copyright and other intellectual property and proprietary rights worldwide. Franchisee and all Authorized Users shall not access or use the InspireNet Mobile, in whole or in part, except as expressly permitted under this Agreement.

**4. Permitted Use of InspireNet Mobile**. The InspireNet Mobile may be used by the Franchisee and Franchisee's Authorized Users for the sole purposes of operating the Franchise as follows:

*Access:* Franchisee and Authorized Users may access the InspireNet Mobile for their individual use solely in connection with Franchisee's business. Access to the InspireNet Mobile is at the sole discretion of FCI and can be terminated at any time.

*User Data:* Franchisee and Authorized Users can input, upload, store and create files, records, reports and other data and content to and in the InspireNet Mobile, including, without limitation, customer related information and records ("User Data"). Franchisee acknowledges and agrees that all User Data shall be the sole and exclusive property of FCI, and Franchisee hereby waives any interest or right in or to any User Data. User Data will be accessible to the Franchisee as permitted in the sole discretion of FCI.

*Limited Rights of Use and Reproduction:* Franchisees and Authorized Users may view the InspireNet Mobile on screen, and may print paper copies for individual or customer use only. Franchisee and Authorized Users shall not otherwise, and shall not permit others to: (i) reproduce, publish, distribute, sell, or otherwise access or use any material retrieved from or contained in the InspireNet Mobile, including, without limitation, User Data, in any manner whatsoever; (ii) distribute the information contained in the InspireNet Mobile, including, without limitation, User Data, to other users not duly authorized to receive the InspireNet Mobile; (iii) distribute, rent, sublicense, lease, transfer, assign or otherwise make commercial use of the InspireNet Mobile or User Data; and (iv) decompile, disassemble, or otherwise reverse-engineer the InspireNet Mobile, or alter, translate, modify, or adapt it to create derivative works.

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

*No Local Storage:* Franchisee and Authorized Users are expressly prohibited from placing or installing any portion of the InspireNet Mobile on any electronic media, including, but not limited to, individual desktop computers, local or wide area networks, timesharing services, multiple processing units, multiple site arrangements, service or software rental bureaus, list servers, online services, electronic bulletin boards or forums, World Wide Web sites or any other server that is Internet enabled except as permitted by FCI.

*Unauthorized Use:* Franchisee shall not knowingly permit anyone other than Authorized Users to access or use the InspireNet Mobile or the User Data.

*No Modification of InspireNet Mobile:* Franchisee shall not modify or create any derivative work of the InspireNet Mobile.

*Removal of FCI Marks and Copyright Notice:* Franchisee may not remove, obscure or modify any copyright or other notices included in any content from the InspireNet Mobile.

**5. Payment Terms**. In consideration of Franchisee's use of the InspireNet Mobile, Franchisee shall pay FCI as set forth in Exhibit A, which is attached hereto. The fees set forth in Exhibit A are subject to change upon notice from FCI.

**6. Non-Disclosure**. Franchisee acknowledges and agrees that the InspireNet Mobile and User Data are proprietary and confidential to FCI, and that Franchisee shall not disclose the foregoing, in whole or in part, to any third party, except as expressly permitted herein. Franchisee shall take commercially reasonable measures to protect the InspireNet Mobile and User Data against disclosures and use in violation of this Agreement. This obligation shall survive the termination of this Agreement.

**7. Franchisee Obligations to Control Authorized Users**. In the event of any unauthorized use of the InspireNet Mobile or any User Data by an Authorized User, Franchisee shall immediately notify FCI, and Franchisee shall no longer provide such Authorized User with access to the InspireNet Mobile and/or User Data.

**8. Limited Warranty**. FCI warrants that it has the right to license the rights granted under this Agreement and that it has obtained any and all necessary permissions from third parties for materials used on the InspireNet Mobile. Except for the express warranties stated herein, access to the and functionality of the InspireNet Mobile are provided on an "as is" basis, and FCI disclaims any and all other warranties, conditions, or representations (express, implied, oral or written), relating to use of the InspireNet Mobile or any part thereof, including, without limitation, any and all implied warranties of quality, accuracy, completeness, currency, performance, merchantability, non- infringement or fitness for a particular purpose. FCI DOES NOT WARRANT THAT THE INSPIRENET MOBILE IS ERROR-FREE IN CONTENT. FCI makes no warranties respecting any harm that may be caused by the transmission of a computer virus, worm, time bomb, logic bomb or other such computer program. Licensor further expressly disclaims any warranty or representation to Authorized Users, or to any third party.

3

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**9. Enforcement of Terms**. Franchisee acknowledges that the InspireNet Mobile and User Data are highly proprietary in nature and that unauthorized copying, transfer, use or disclosure may cause FCI or its licensors irreparable injury that cannot be adequately compensated for by means of monetary damages. Franchisee agrees that any actual or threatened breach of this Agreement by Franchisee, or any subscriber or Authorized User, may be enforced by FCI by means of equitable relief (including, but not limited to, injunctive relief) in addition to any other available rights and remedies.

**10. Indemnification**. The Franchisee agrees to indemnify, defend and hold FCI harmless from and against any loss, damage, costs, liability and expenses (including reasonable legal and professional fees) arising out of any claim or legal action taken against FCI related to or in any way connected with any use of the InspireNet Mobile by the Franchisee or any failure by the Franchisee to perform its obligations in relation to this Agreement.

**11. Term of Agreement**. This Agreement may be terminated by FCI at any time. Otherwise, this Agreement will remain in-force as long at the Franchise Agreement between Franchisee and FCI remains in-force. Upon the termination of this Agreement, Franchisee shall immediately cease all use of the InspireNet Mobile and User Data, and shall return all copies thereof in its possession or control to FCI.

**12. Choice of Law; Integration.** This Agreement, and the rights of the parties hereto, shall be governed by, construed and enforced in accordance with the laws of the State of Georgia as such laws apply to agreements among Georgia residents made and to be performed entirely within the State of Georgia. Any action in respect of, or concerning, this agreement shall be litigated solely in Cobb County, Georgia, and both parties consent to jurisdiction of the person and venue solely in Cobb County, Georgia. If any provision of this Agreement is held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

**Floor Coverings International, Ltd. ("FCI")**

By: _Thomas W. Wood_
4C2E1T478EA74F6...

Title: President and CEO

Date: 3/2/2022 | 6:54 PM PST

**Franchisee**

By: _____   _____
857D55467EGD4D4...                691A943BC3C2442...

Print Name: Anthony Imperato   Crystal Imperato

Date: 3/2/2022 | 8:21 PM EST/2/2022 | 5:24 PM PST

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**Exhibit A**
**Payment Terms**

Franchisee shall pay FCI the following amounts:


License Fee equal to $ <u>Waived</u>, due and payable to FCI on or before_____.

Monthly Access Fee equal to $_____ per month per user, payable via monthly invoice.

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**Exhibit B**
**Employee Acknowledgement**

I, _____in    consideration    of    my    employment
with _____    ("Employer"), hereby acknowledge and agree
that  I have read the System Access Agreement entered into by and between Floorcoverings
International,  Ltd. and Employer (the "Agreement"), and hereby agree to abide by the
terms and conditions set  forth therein, including, without limitation, Sections 3, 4, 6 and 9,
in connection with my access to  and use of the InspireNet Mobile and User Data (as such
terms are defined in the Agreement) during my  employment.

My signature constitutes my agreement to the foregoing.


_____
Employee's Signature


_____
Printed Name


_____
Date

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

**EXHIBIT D**

**TELEPHONE  LISTING  AUTHORIZATION  AGREEMENT**

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

FLOORCOVERINGS INTERNATIONAL, LTD.
TELEPHONE LISTING AUTHORIZATION AGREEMENT

## TELEPHONE LISTING AUTHORIZATION AGREEMENT

THIS AGREEMENT, entered into between Floorcoverings International, Ltd. of Norcross, Georgia (hereinafter referred to as "FCI"), and _____ (hereinafter referred to as "Franchisee").

Anthony Imperato

Crystal Imperato

## WITNESSETH

WHEREAS, FCI is the franchisor of the Floor Coverings International System and the owner of the "Floor Coverings International" trademark; and

WHEREAS, FCI and Franchisee have entered into a Franchise Agreement (the "Franchise Agreement") pursuant to which Franchisee is granted the limited right to use the trademark and related commercial symbols in Franchisee's business telephone and Internet directory listings; and

WHEREAS, Franchisee is authorized to continue using the FCI commercial symbols until such time as the Franchise Agreement is terminated or expires.

NOW, THEREFORE, the parties hereby agree as follows:

1.    Franchisee is authorized to obtain separate telephone service, and/or participate in a central telephone service for franchisee's FCI franchised business.  Such service shall not be used in conjunction with any other business or residential telephone service.

2.    Franchisee is authorized and agrees to secure any telephone and Internet listings authorized by FCI only in the name of "Floor Coverings International."  No other names may be used in conjunction with the FCI trademark and no additional listings may be used with the telephone number assigned unless approved in writing in advance by FCI.

3.    All telephone and Internet listings, layout, and copy shall be approved in advance in writing by FCI, and Franchisee agrees that the telephone company shall not accept placements of any such copy unless written approval by FCI is attached.  However, placement of display advertising by FCI or its advertising agency for Franchisee through a national service will constitute automatic approval.

4.    Franchisee shall be responsible for the payment of all monthly service charges, directory listings and advertising, and a reasonable share of central numbers and associated listings and advertising.

5.    Franchisee agrees such telephone number(s) and telephone and Internet listings and advertisements shall be considered to be the sole property of FCI.  Upon termination of the Franchise Agreement for whatever reason, Franchisee agrees that Franchisee shall immediately cease all use of such number(s), listings and advertisements and that all such number(s), listings and advertisements shall become the sole property of FCI, at its option, subject to FCI's obligation to pay all fees due therefor becoming due and payable after the date of cessation of use.

6.    Franchisee, by this Agreement, hereby releases and forever discharges FCI and its successors or assigns and the telephone company from liability of any kind or character which results or may result directly or indirectly from FCI's exercise of its rights hereunder or from the telephone company's cooperation with FCI in effecting the terms of this Agreement.

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed this _____ day of _____, 20_____.

3/2/2022 | 6:54 PM PST

FLOORCOVERINGS INTERNATIONAL, LTD.          FRANCHISEE

By:_____

DocuSigned by:
Thomas W. Wood
4C2E11478EA74F6...

By:_____
Title:_____
Anthony Imperato          Crystal Imperato

By:_____
Title:_____
         Corporate or Partnership Name, if Applicable

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

## Statement of Prospective Franchisee

The date of my first face-to-face meeting with a Franchise Marketing Representative, Franchise Broker or any other person to discuss the possible purchase of a Franchise was _01/26_____, 20_22_. Franchisee's Initials _____

The date on which I received a Disclosure Document was _2/08_____, 20_22_. Franchisee's Initials _____

The date when I received a fully completed copy (other than signatures) of the Franchise Agreement I later signed was _03/02_____, 20_22_ Franchisee's Initials _____

The earliest date on which I signed the Franchise Agreement or any other binding document (not including the Receipt page) was _03/02_____, 20_22_. Franchisee's Initials _____

The earliest date on which I delivered cash, check or other consideration to the Franchise Marketing Representative, broker, Floorcoverings International, Ltd. ("Franchisor") or any other person or company was _03/02_____, 20_22_. Franchisee's Initials _____

Representations:

No promises, agreements, contracts, commitments, understandings, "side-deals", options, rights-of-first-refusal or otherwise have been made to or with me with respect to any matter (including but not limited to any representations or promises regarding advertising (television or otherwise), marketing, site location, operational assistance or otherwise) nor have I relied in any way on any such except as expressly set forth in the Franchise Agreement or written addendum signed by me and the President of Franchisor except as follows: _____None_____

_____. (If none, the prospective franchisee shall write NONE in his/her own handwriting and initial same.) Franchisee's Initials _____

No oral, written or visual claim or representation, promise, agreement, contract, commitment, understanding or otherwise which contradicted, expanded upon or was inconsistent with the Disclosure Document or the Franchise Agreement was made to me by any person or entity, _____None_____ except _____ as follows:_____

_____. (If none, the prospective franchisee shall write NONE in his/her own handwriting and initial same.) Franchisee's Initials _____

Except for information contained within the Disclosure Document, no oral, written or visual claim or representation (including but not limited to charts, tables, spreadsheets or

DocuSign Envelope ID: 6BB433F7-B32C-447C-949C-A6C0846877EE

mathematical calculations) which stated or suggested any specific level or range of actual or potential sales, costs, income, expenses, profits, cash flow, tax effects or otherwise (or from which such items might be ascertained) was made to me by any person or entity, except as follows:_____ None _____

_____. (If none, the prospective franchisee shall write NONE in his/her own handwriting and initial same.) Franchisee's Initials_____

No contingency, condition, prerequisite, prior requirement, proviso, reservation, impediment, stipulation, provision or otherwise exists with respect to any matter (including but not limited to obtaining financing, selection, purchase, lease or otherwise of a site, operational matters or otherwise) and/or with respect to my fully performing all of my obligations under the Franchise Agreement and/or any other documents to be executed by me nor have I relied in any way on any such, except as expressly set forth in a writing signed by me and the President of Franchisor, except as follows:_____ None _____

_____. (If none, the prospective franchisee shall write NONE in his/her own handwriting and initial same.) Franchisee's Initials_____

I hereby understand that there will be no refunds. Franchisee's Initials_____

Franchisor does not make or endorse nor does it allow any marketing representative, broker or other individual to make or endorse any oral, written, visual or other claim or representation (including but not limited to charts, tables, spreadsheets or mathematical calculations), except as set forth in the Disclosure Document, which states or suggests any specific level or range of actual or potential sales, costs, income, expenses, profits, cash flow, tax effects or otherwise (or from which such items might be ascertained) with respect to this or any other Franchise, whether made on behalf or for Franchisor, any Franchisee or other individual and expressly disclaims any such information, data or results.

In addition, Franchisor does not permit any promises, agreements, contracts, commitments, understandings, "side-deals", options, rights-of-first-refusal or otherwise or variations of, changes in or supplements to the Franchise Agreement or the existence of any contingencies or conditions to Franchisee's obligations except by means of a written Addendum signed by Franchisee and Franchisor.

If any such representations, "side-deals", contingencies or otherwise have been made by you by any person or otherwise exist, immediately inform the President of Franchisor.

The prospective franchisee understands and agrees to all of the foregoing and certifies that all of the above statements are true, correct and complete.

FRANCHISEE

Dated:

3/2/2022 | 8:21 PM EST    3/2/2022 | 5:24 PM PST