**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| PEER VENTURES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO. _____ |
| EDGE DATA SOLUTIONS, INC., | : | |
| and LIGHTSPEED HOSTING, LLC. | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE OF REMOVAL</u>

Defendant LightSpeed Hosting, LLC hereby gives notice of its removal of a civil action captioned *Peer Ventures, Inc. v. Edge Data Solutions, Inc. and LightSpeed Hosting, LLC* ("LightSpeed"), Civil Action File No. 2022CV374304, in the Superior Court of Fulton County, Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division.  This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1441(b) and 1446.  As grounds for removal, Defendant LightSpeed states as follows:

1.

Plaintiff commenced this action by filing a complaint on December 27, 2022 in the Superior Court of Fulton County.  Pursuant to 28 U.S.C. § 1446(a), copies of

all process, pleadings, and orders served on Defendant LightSpeed are attached hereto as Exhibit "A."

2.

Defendant was served with a copy of the Summons and Complaint on June 27, 2023.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b), which provides that the notice of removal of a civil action shall be filed within 30 days after receipt by the defendant, through service or otherwise, with a copy of the initial pleading.

3.

This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332 because the amount in controversy, as shown by the Complaint, exceeds $75,000.00 and the action is between citizens of different states.  The state court action may therefore be removed to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446.

4.

Defendant LightSpeed reserves the right to amend or supplement this Notice of Removal.

5.

Defendant LightSpeed reserves all defenses.

6.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff's counsel and filed with the Clerk of the Superior Court of Fulton County, Georgia.

7.

Defendant LightSpeed did not file an answer before removal.  Defendant shall therefore answer 7 days after the filing of this Notice of Removal pursuant to F.R.C.P. 81(c).

WHEREFORE, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and removal pursuant to 28 U.S.C. §§ 1441(b) and 1446 is appropriate.

This 27th day of July, 2023.

OLDENBURG & STINER, P.C.

BY: */s/ Gary V. Stiner, Jr.*
            Mark D. Oldenburg
              Georgia Bar No.        551390
            Gary V. Stiner, Jr.
              Georgia Bar No.        682559

            *Attorneys for Defendant LightSpeed Hosting, LLC*

3

ADDRESS ALL
COMMUNICATIONS TO:

Gary V. Stiner, Jr.
2004 Commerce Drive
Suite 200
Peachtree City, GA 30269
(770) 632-9500
(770) 632-00123 (fax)
gstiner@oldenburgstiner.com

EXHIBIT "A"

Fulton County Superior Court
***EFILED***TV
Date: 12/27/2022 3:08 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

Peer Ventures, Inc.
_____

) Case
) No.: _____
)
_____ )
**Plaintiff,** )
)
vs. )
Edge Data Solutions, Inc. and )
_____ )
LightSpeed Hosting, LLC )
**Defendant** )
)
)
)
)

**Case No.:** 2022CV374304

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at
https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon
plaintiff's attorney, whose name and address is:

> **Mark Battleson**
> **Battleson Law, LLC**
> **1100 Peachtree St NE, Suite 200**
> **Atlanta, GA 30309**

An answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed
within five (5) business days of such service. Then time to answer shall not commence until such proof of
service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN
AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This_____12/27/2022_____day of_____, 20 _____

> Honorable Cathelene "Tina" Robinson
> Clerk of Superior Court
> By_____
> Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you   _____, 20_____

> Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**

Fulton County Superior Court
***EFILED***TV
Date: 12/27/2022 3:08 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

PEER VENTURES, INC.,

Plaintiff

v.

EDGE DATA SOLUTIONS, INC. and
LIGHTSPEED HOSTING, LLC

Defendants.

| |
| |
| |
| CIVIL ACTION No. _____2022CV374304_____ |
| |
| |
| |
| |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Peer Ventures, Inc. ("Peer Ventures"), by and through its undersigned counsel, with its Complaint and Demand For Jury Trial (the "Complaint") against Edge Data Solutions, Inc. ("Edge Data") and LightSpeed Hosting, LLC ("LightSpeed"), and shows this Court as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Peer Ventures, Inc. is a Massachusetts corporation with a principal place of business located at 65 Lewis St. Apt 506, Boston, MA 02128.

2. Defendant Edge Data Solutions, Inc., is a Delaware corporation doing business in Georgia with its principal place of business located at 3550 Lenox Road NE, 21st Floor, Atlanta, Fulton County, Georgia 30326. Service of process may be perfected by delivery of a copy of this Complaint and summons to Defendant Edge Data's registered agent, Delray Wannemacher, at 3550 Lenox Road NE, 21st Floor, Atlanta, Fulton County, Georgia 30326.

3. Defendant LightSpeed Hosting, LLC is an Ohio limited liability company with a principal place of business located at 387 Medina Rd., Suite 200, Medina, OH 44256.

[1]

Service of process may be perfected on Defendant LightSpeed by delivery of a copy of this Complaint and summons to LightSpeed's registered agent, Joshua B. Holmes, at 387 Medina Rd., Suite 200, Medina, OH 44256.

4. Jurisdiction and venue are proper in this Court because Defendant Edge Data's principal office and registered agent are both located in Fulton County, Georgia.

5. This Court has personal jurisdiction over Defendant LightSpeed, because Defendant LightSpeed marketed, sold, and managed the sale of the goods and services that are the subject of this civil action in a partnership with Defendant Edge Data; and therefore Defendant LightSpeed transacts business in Georgia as that term is used in the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91.

## FACTUAL BACKGROUND

6. A "Crypt-Keeper GPU Miner" is a GPU (graphics processing unit) computer server (the "Servers"). Servers generate heat when operating.

7. An "Arctic Tank 12U" is an immersion tank cooling system designed to immerse and cool the Servers (the "Tanks").

8. "Patented VHP 1200 Fluid" is fluid used in the Tanks for cooling the Servers, and is represented by Defendants to be a proprietary, patented formula developed by Defendant Edge Data (the "Fluid").

9. Defendant Edge Data sources certain components constituting the Servers and Tanks, and provides its proprietary Fluid. The Servers, Tanks, and Fluid together (the "System") are marketed and sold by a partnership between Defendants Edge Data and LightSpeed.

10. Defendants advertised and marketed the System to cryptocurrency miners as a superior means of mining cryptocurrencies due to the enhanced attributes of the System's

[2]

"proprietary optimization" over other methods of cryptocurrency mining, including branding the System the "Crypt-Keeper GPU Miner."

11. The Defendants advertising and sales information represented that the System enhanced longevity and performance of the processing rate of the Servers.

12. On February 24, 2021, Plaintiff received a marketing email from Defendant LightSpeed advertising the System, and Plaintiff contacted Defendant LightSpeed to inquire further.

13. Over the course of the next several weeks, Plaintiff and both Defendants engaged in a series of calls and emails where both Defendants made specific technical representations as to the System's performance capabilities.

14. The System's purported superior capabilities were presented by Defendants to Plaintiff, and the sales literature provided specifications and performance expectations, as well as compared the System to alternative air-cooled GPU server systems in the Defendant's sales materials (the "Specifications", attached hereto as Exhibit "A").

15. The stability, longevity, and speed of the System ("speed" as measured by "Hashrate") was represented by Defendants to provide a superior return on investment for Ethereum cryptocurrency miners (see Exhibit "A") and this was repeated in emails and calls involving both Defendants.

16. As part of the purchase and deployment of the System, Defendant LightSpeed was to receive physical control of the System, set the system up, and then "host" the System at its facility for a fee (the "Hosting").

17. Defendants specifically marketed and sold the System as a more efficient and higher return on investment, specifically for Ethereum cryptocurrency miners.

[3]

18. Plaintiff's purpose in considering the System was to efficiently mine Ethereum cryptocurrency for profit. This was expressed to Defendants by Plaintiff and was known to Defendants throughout the sales process.

19. After multiple rounds of communication, Plaintiff contracted to purchase the System over a series of purchases in March 2021, and was invoiced as follows:

| | | | |
|---|---|---|---|
| March 04, 2021 | Invoice 14098 | $135,199.00 | EDGE System batch 1 |
| March 24, 2021 | Invoice 14212 | $176,000.00 | EDGE System batch 2 (payment separated) |
| March 26, 2021 | Invoice 14272 | $128,000.00 | EDGE System batch 2 (payment separated) |

The invoices for the incremental purchase of the System are attached hereto as Exhibit "B".

20. Plaintiff's entire purchase consisted of 18 System Servers with a total of 144 GPUs (graphics processing units), which were to be cooled using the Tanks and Edge's proprietary Fluid (the "Plaintiff's Purchased System").

21. The Plaintiff's Purchased System total cost was $439,199.00 (the "Purchase Price"), before accounting for setup, Hosting, and other expenses, and Plaintiff made timely payment in full.

22. Defendants' advertised Specifications and other Exhibit "A" representations related to delivery, pricing, and Hashrate performance (see Exhibit "A"), as well as sales representations, timing of delivery, setup, System performance, and invoices for the Purchase Price constitute the terms of the Plaintiff's Purchased System between Defendants and Plaintiff (the "System Contract").

23. Plaintiff's Purchased System was delayed in delivery, in spite of Plaintiff bringing its purchase of all batches of the Plaintiff's Purchased System into one month, March 2021.

[4]

24. Plaintiff's Purchased System Batch #1 (which consisted of Servers 1-6 and Tank 1) was purchased with a promised delivery and online operation of a maximum of 4 weeks. Batch #1 was not operating online until 12 weeks after payment.

25. Plaintiff's Purchased System Batch #2 (which consisted of Servers 7-18 and Tanks 2 and 3) was to be operating online within a maximum of 12 weeks. However, the first Servers of Batch #2 Tank 2 were not operating online until 27 weeks after purchase, and not all Servers in Tank 2 were operational at 27 weeks. The balance of the Tank 2 and Tank 3 Servers constituting the entire Plaintiff's Purchased System, ultimately, briefly came online as of December 10, 2021 (nearly 9 months from the Plaintiff's payment).

26. The Defendant's delays proved very costly, in that the lost revenue from mining valuable Ethereum is directly proportional to the delays.

27. With respect to actual online performance of Plaintiff's Purchased System, from the initial Servers going online, there were numerous issues with Plaintiff's Purchased System being offline, and chronic, systemic Hashrate underperformance even when the Servers were online.

28. Plaintiff's Purchased System last ran successfully on or about June 1, 2022, with ETH block height 14886000 being the last block for which the Servers' GPUs produced any Hashrate work.

29. By June 13, 2022, Defendant LightSpeed acknowledged that none of the Servers in Plaintiff's Purchased System were working.

30. The System was marketed at a Hashrate of 1098Mh/sec, which equates to 137.25Mh/sec per GPU. Additionally, the performance and longevity of the System was also advertised

and assured to be improved due to Defendant Edge's "proprietary optimization" of 20% -

50% miner performance, and "extend(ed) equipment life". (see Exhibit "A").

31. Equipment life was not only not extended, it was far below industry standards and

reasonable expectations of a minimum of 36 months.  Plaintiff's Purchased System's

actual longevity was a drastically reduced Server lifetime (ranging from 4.75 to 12.5

months actual operation).  This is in addition to the underperformance of Plaintiff's

Purchased System, in that it never met the Defendants' advertised Hashrate levels that

were stated by Defendants as "proprietary" advantages.

32. The Defendants' representations of the System attributes were sold by Defendants as the

primary reason for buying Defendants' System and LightSpeed's Hosting services.

33. With the advertised advantages of the "proprietary" System and LightSpeed Hosting,

Plaintiff was told by Defendants to expect an average of approximately 137.25Mh/sec per

GPU Hashrate,

34. With respect to performance when Plaintiff's Purchased System was actually online, after

determining that the System was not performing as advertised even when fully online,

Plaintiff conducted independent research to try to understand the problem that

Defendants were not able to (or knew they could not) solve. Plaintiff determined that the

base Hashrate for the purchased equipment was expected to be an average of

approximately 97.2Mh/sec per GPU.

35. Defendants' advertised Hashrate was never achieved.  The best performance ever

achieved at any point, was materially below the advertised System Hashrate, and was

even below the base Hashrate of 97.2Mh/sec expected of comparable equipment that was

not in the Defendants' Server, Tank, and Fluid System.  Additionally, prior to ceasing to

work at all, Plaintiff's Purchased System was chronically underperforming and was never consistently operating for any extended period of time.

36. Upon information and belief, Defendants knew or should have known that Plaintiffs' Purchased System could not be delivered and operational in the timeframes promised under the System Contract, and that Plaintiff's Purchased System would not perform to the Specifications, Hashrate performance, nor the extended longevity that was communicated to Plaintiff to induce Plaintiff to purchase Plaintiff's Purchased System.

## COUNT I:   BREACH OF CONTRACT

37. Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1-36 above, as if set forth verbatim herein.

38. Plaintiff entered a Contract with the Defendants for the delivery, setup, and operation of Plaintiff's Purchased System, which included representations on performance of the product as marketed and sold by Defendants.

39. The Contract was actually three separate deliveries of product, setup, and operation of the Plaintiff's Purchased System, reflected by the three invoices in Exhibit "A".

40. Plaintiff paid $439,199.00 in the aggregate for the three invoices for Plaintiff's Purchased System.

41. Defendants breached the terms of the Contract, which included timely delivery, timely setup, and product performance representations.

42. The Defendants breached the Contract, and as a direct and proximate cause of the breach, Plaintiff sustained and will continue to sustain general and special damages, including but not limited to, past and future expenses for the Plaintiff's Purchased System, for hosting

[7]

of Plaintiff's Purchased System, lost economic opportunity from cryptocurrency mining or other computing uses, and other economic damages.

### COUNT II:   IMPLIED WARRANTY OF MERCHANTABILITY

43. Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1-42 above, as if set forth verbatim herein.

44. Defendants are merchants involved in the sale and servicing of products such as the Plaintiff's Purchased System, and Defendants were aware of Plaintiff's reliance on the Defendants' knowledge and experience.

45. Implied in the Defendants' sale of the Plaintiff's Purchased System was a warranty that it would be merchantable and meet the performance and specifications represented by Defendants.

46. Plaintiff's Purchased System was defective because it was not reasonably fit for both the uses intended and the uses reasonably foreseeable by Defendants.

47. Plaintiff's Purchased System is not fit for the use intended by the Plaintiff and advertised by Defendants, namely, to efficiently mine Ethereum cryptocurrency.

48. Plaintiff's Purchased System was defective for its intended and reasonably foreseeable uses.

49. Privity of contract exists between Plaintiff and Defendants.

50. Plaintiff justifiably relied on the Defendants' representations about the product when agreeing to use Plaintiff's Purchased System to mine Ethereum cryptocurrency.

51. The Defendants received notice of the breach of warranty throughout the entire under-performance and non-performance of Plaintiff's Purchased System after it was setup by

[8]

Defendants and attempted to become operational at Defendant LightSpeed's hosting location.

52. The Defendants breached the implied warranty of merchantability as contained in O.C.G.A. § 11-2-314, and as a direct and proximate cause of the breach of warranty alleged, Plaintiff sustained and will continue to sustain general and special damages, including but not limited to, past and future expenses for Plaintiff's Purchased System, for Hosting of the Plaintiff's Purchased System, lost economic opportunity from Ethereum cryptocurrency mining or other computing uses, and other economic damages.

**COUNT III:   IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

53. Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1-51 above, as if set forth verbatim herein.

54. Defendants are merchants involved in the sale and servicing of products such as the Plaintiff's Purchased System, and Defendants were aware of Plaintiff's reliance on the Defendants' knowledge and experience.

55. Implied in the Defendants' sale of the Plaintiff's Purchased System was a warranty that it would be fit for the Plaintiff's purpose and meet the performance and specifications represented by Defendants.

56. Plaintiff's Purchased System was defective because it was not reasonably fit for the specific purpose for which Defendants knowingly sold the Plaintiff's Purchased System and for which, in reliance on the judgment of Defendants, the Plaintiff bought the Plaintiff's Purchased System.

57. The Defendant knowingly manufactured and sold the Plaintiff's Purchased System for the specific purpose of mining Ethereum cryptocurrency at a specific, advertised Hashrate performance, longevity enhancement, and rapid deployment.

58. Privity of contract exists between Plaintiff and Defendants.

59. The Plaintiff's Purchased System did not ever perform as represented by Defendants and ultimately became nonfunctioning at a rapid rate.

60. The Defendants received notice of the breach of warranty when Defendants attempted to cause the Plaintiff's Purchased System to perform as represented, and after months of attempts the Plaintiff's Purchased System was rendered unusable.

61. The Defendants breached the implied warranty of fitness for a particular purpose as contained in O.C.G.A. § 11-2-315, and as a direct and proximate cause of the breach of warranty alleged, Plaintiff sustained and will continue to sustain general and special damages, including but not limited to, past and future expenses for the Plaintiff's Purchased System, for hosting of the Plaintiff's Purchased System, lost economic opportunity from Ethereum cryptocurrency mining or other computing uses, and other economic damages.

## COUNT IV:  FRAUD

62. Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1-58 above, as if set forth verbatim herein.

63. In marketing the System and contracting with Plaintiff for the Plaintiff's Purchased System, the Defendants made false representations of material facts concerning timing of delivery, product performance, and product longevity.

[10]

64. The Defendants did so knowing the representations were false or without knowing whether the representations were true or false.

65. The Defendants intended to induce the Plaintiff to act in reliance of the false or misrepresented material facts.

66. The Plaintiff relied on the Defendants' material misrepresentations or false statements in contracting with Defendants for the Plaintiff's Purchased System.

67. As a direct and proximate result of Plaintiff's reliance on Defendants' false statements and material misrepresentations, Plaintiff sustained and will continue to sustain general and special damages, including but not limited to, past and future expenses for the Plaintiff's Purchased System, for hosting of the Plaintiff's Purchased System, lost economic opportunity from cryptocurrency mining or other computing uses, and other economic damages.

68. Additionally, Plaintiff seeks punitive damages for Defendants' fraudulent misrepresentations as to the performance capabilities of the Plaintiff's Purchased System, as well as fraudulently represented special proprietary attributes of the Plaintiff's Purchased System.

## COUNT V:   ATTORNEYS' FEES

69. As alleged in Paragraphs 1-65 of the Complaint, Defendants have acted in bad faith, have been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

70. Plaintiff is therefore also entitled to recover all reasonable attorneys' fees and expenses incurred in connection with this matter under O.C.G.A. §§ 13-6-11 and 9-15-14.

WHEREFORE, Plaintiff seeks the following relief against the Defendants:

    (a) That process and summons issue, and service be had upon Defendants as provided by law;

    (b) That this matter be tried before a jury for each appropriate issue;

    (c) That judgment be entered in favor of Plaintiff against Defendants for: (1) breach of contract; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; and (4) fraud, in an amount to be proven at trial;

    (d) Punitive damages for Defendant's fraud in an amount to be proven at trial;

    (e) All Plaintiff's costs and expenses of this litigation, including court costs and reasonable attorneys' fees pursuant to O.C.G.A. §§ 13-6-11 and 9-15-14; and,

    (f) Such other and further relief as the Court or the enlightened conscience of the jury deems just and proper.

Respectfully submitted this 22nd day of December, 2022.

Respectfully submitted,

*/s/ Mark D. Battleson*
Mark D. Battleson
Attorney for Plaintiff
Georgia Bar No. 042415

Battleson Law, LLC
1100 Peachtree St. NE
Suite 200
Atlanta, GA 30309
Ph: 404-368-7809
Fax: 678-974-0098
mbattleson@battlesonlaw.com

**EXHIBIT "A"**

**PRODUCT SPECIFICATIONS AND ADVERTISEMENT**



**LIGHT ⚡ SPEED**

*In Partnership with Edge Data Solutions*

**Crypt-Keeper GPU MINER**

## AIR COOLED

| Availability | 4-8 Weeks | 4-8 Weeks | Pre-Order | Pre-Order | Pre-Order | Pre-Order |
|---|---|---|---|---|---|---|
| Quantity and Type of GPU's | 4 - (3080) | 10 - (3070) | 10 - (30HX) | 10 - (40HX) | 10 - (50X) | 10 - (90HX) |
| Total Server Hash Rate | 366 | 581 | 260 | 360 | 450 | 860 |
| ETH Revenue Monthly | $1,365.18 | $2,167.13 | $969.80 | $1,342.80 | $1,678.50 | $3,207.80 |
| Server Price | $ 13,674 | $ 19,768 | $ 15,450 | $ 17,610 | $ 19,554 | $ 28,410 |
| ROI - Months | 10.02 | 9.12 | 15.93 | 13.11 | 11.65 | 8.86 |

## IMMERSION COOLED (Up to 3x the Hashrate)

| Availability | 4-8 Weeks | 4-8 Weeks | Pre-Order | Pre-Order | Pre-Order | Pre-Order |
|---|---|---|---|---|---|---|
| Quantity and Type of GPU's | 8 - (3080) | 8 - (3070) | 8 - (30HX) | 8 - (40HX) | 8 - (50HX) | 8 - (90HX) |
| Total Server Hash Rate | 1098 | 697.2 | 312 | 432 | 540 | 1032 |
| ETH Revenue Monthly | $4,095.54 | $2,600.56 | $1,163.76 | $1,611.36 | $2,014.20 | $3,849.36 |
| Server Price | $ 20,100 | $ 18,957 | $ 15,521 | $ 17,393 | $ 19,078 | $ 26,753 |
| ROI - Months | 4.91 | 6.73 | 12.31 | 9.96 | 8.74 | 6.42 |



- 30% additional with overclocking with immersion vs air

- All servers come with 2x AMD EPYC 7302 Processors (16 Cores, 32 Threads) and 32GB of ECC RAM

*All Pricing, Ship Times and Estimates are subject to change. Pricing does not include shipping or tax*





**Arctic Tank 50U**

### Data Center Benefits:

- Designed for enterprise or ASIC and GPU crypto-mining

- Up to 200kW of power, equal to 16 air-cooled data center racks

- EDSI proprietary optimization of 20%-50% performance, and extended equipment life

- Can hold 96 S9 miners, 57 Bitmain S17 or 34 S19s

- Highest density that gives large computing power at a fraction of the size of traditional data centers



### Total Solution:

- Total Immersion ETH Hashing Power Up to **27,450 MH/s**

- Total Revenue Monthly **$102,388.50**

- 25x (CKI-8-3080) Servers
- Arctic Tank 50U
- VHP 1200 Fluid (480 Gallons)
- Total Cost **$459,950**
- *Estimated ROI 4 Months*
- Delivery time:
  4-8 weeks while supplies last
  8-12 weeks for backorders

## Specifications

- Dimensions (with cooling tank): 94L" x 48W" x 60H"

- Liquid Volume: 440 Gallons

- Weight 3800 lbs

- Connection 10/100 Ethernet



**Arctic Tank 12U**
**Self-Contained Unit**

### *Immersion Data Center Benefits:*

- Enterprise or GPU Miner Compatible

- Runs 12-25kW of power, equivalent to 1-2 server racks of an air-cooled data center

- EDSI proprietary optimization 20%-50% performance, and extended equipment life

- Small, easy to place in any facility, or data closet with minimal or no renovation

### *Total Solution:*

- Total Immersion ETH Hashing Power Up to **6,588 MH/s**

- Total Revenue Per Month **$24,573**

- 6 – CKI-8-3080 Servers

- VHP 1200 Fluid (100 Gallons)

- Arctic Tank 12U

- Total Cost **$139,600.00**

- **Estimated ROI 5 Months**

- Delivery time:
  2-4 weeks while supplies last
  8-12 weeks for backorders



### *Specifications:*

- Dimensions (with cooling tank): 25L" x 41W" x 60H"

- Liquid Volume: 100 Gallons

- Weight 1000 lbs

- Connection 10/100 Ethernet



# LIGHT ⚡ SPEED

## Crypto Arctic Tank (Chainable)

### Data Center Benefits:

- Specifically designed for ASIC mining only

- Runs from 50-152kW of power per tank system

- Each Section can hold 18 S9 Miners,12 Bitmain S17, 18 Bitmain S19, 14 M20/30S (Can mix and match different miners into the same system)

- EDSI proprietary optimization of 20- 40% miner performance, and extended equipment life

- Modularized design allows for rapid deployment of 8-12 weeks and simple maintenance



### Edge Data Solutions, Inc. In Partnership with LightSpeed Hosting

## CONTACT US TO ORDER

E: sales@lightspeedhosting.com

W: https://www.lightspeedhosting.com/contact-us/

P: 888-929-9639 - Option 3

## EXHIBIT "B"

## INVOICES



**Invoice** 14098
**Date of Invoice** 03/02/2021
**Due Date** 03/09/2021

## Invoice 14098

**To:**
Peer Ventures Inc.
Chris Rock
65 Lewis St. Apt 506

Boston, Massachusetts02128
United States

**From:**
Lightspeed Hosting
387 Medina Road
Suite 200
Medina, OH 44256

**Status: Paid**
**Balance: $0.00 USD**

| Description | Taxed | Unit cost | Qty | Price |
|---|---|---|---|---|
| Crypt Keeper GPU Miner - CKI-8-3080 | No | $20,090.00 USD | 6.00 | $120,540.00 USD |
| Arctic Tank 12U & Patented VHP 1200 Fluid (110 Gallons) | No | $14,659.00 USD | 1.00 | $14,659.00 USD |

| | |
|---|---|
| **Subtotal:** | $135,199.00 USD |
| **Credit** | $0.00 USD |
| **Tax (1.00%)** | $0.00 USD |
| **Total** | **$135,199.00 USD** |

**Related transactions:**

| Transaction Date | Gateway | Transaction ID | Amount |
|---|---|---|---|
| 03/04/2021 | Crypto Pay | CPFC1H74HEXVTZSGO0LXDXWSAQ | $135,199.00 USD |
| | | **Balance** | **$0.00 USD** |

Please remit all check payments to:
LightSpeed Hosting
Accounts Receivable
3867 W. Market St.
PMB# 262
Akron, OH 44333



**Invoice** 14212
**Date of Invoice** 03/20/2021
**Due Date** 03/27/2021

## Invoice 14212

**To:**
Peer Ventures Inc.
Chris Rock
65 Lewis St. Apt 506

Boston, Massachusetts02128
United States

**From:**
Lightspeed Hosting
387 Medina Road
Suite 200
Medina, OH 44256

**Status: Paid**
**Balance: $0.00 USD**

| Description | Taxed | Unit cost | Qty | Price |
|---|---|---|---|---|
| Crypt Keeper CKI-1-8-3080 | No | $22,000.00 USD | 8.00 | $176,000.00 USD |
| | | Subtotal: | | $176,000.00 USD |
| | | Credit | | $0.00 USD |
| | | Tax (1.00%) | | $0.00 USD |
| | | **Total** | | **$176,000.00 USD** |

**Related transactions:**

| Transaction Date | Gateway | Transaction ID | Amount |
|---|---|---|---|
| 03/24/2021 | Crypto Pay | A7IWRIMPI3JQIC | $176,000.00 USD |
| | | **Balance** | **$0.00 USD** |

Please remit all check payments to:
LightSpeed Hosting
Accounts Receivable
3867 W. Market St.
PMB# 262
Akron, OH 44333



**Invoice** 14272
**Date of Invoice** 03/26/2021
**Due Date** 04/02/2021

**Invoice 14272**

**To:**
Peer Ventures Inc.
Chris Rock
65 Lewis St. Apt 506

Boston, Massachusetts 02128
United States

**From:**
Lightspeed Hosting
387 Medina Road
Suite 200
Medina, OH 44256

**Status: Paid**
**Balance: $0.00 USD**

| Description | Taxed | Unit cost | Qty | Price |
|---|---|---|---|---|
| Arctic Tank 12U | No | $17,000.00 USD | 2.00 | $34,000.00 USD |
| CKI-1-8-3080 | No | $22,000.00 USD | 4.00 | $88,000.00 USD |
| 110 Gallon of Fluid | No | $3,000.00 USD | 2.00 | $6,000.00 USD |

| | |
|---|---|
| **Subtotal:** | $128,000.00 USD |
| **Credit** | $0.00 USD |
| **Tax (1.00%)** | $0.00 USD |
| **Total** | **$128,000.00 USD** |

*Wire Instructions:*
*LightSpeed Hosting, LLC*
*Huntington Bank*
*ABA Routing Number: 044000024*
*Acct: 01591873460*

**Related transactions:**

| Transaction Date | Gateway | Transaction ID | Amount |
|---|---|---|---|
| 03/26/2021 | USD/Cash | Wire | $128,000.00 USD |
| | | **Balance** | **$0.00 USD** |

Please remit all check payments to:
LightSpeed Hosting
Accounts Receivable
3867 W. Market St.
PMB# 262
Akron, OH 44333

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| PEER VENTURES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO. 2022CV-374304 |
| EDGE DATA SOLUTIONS, INC., | : | |
| and LIGHTSPEED HOSTING, LLC. | : | |
| | : | |
| Defendants | : | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Mark Battleson
Battleson Law, LLC
1100 Peachtree St. NE, Suite 200
Atlanta, Georgia 30309

-and-

Edge Data Solutions, Inc.
c/o Delray Wannemacher, R.A. and Secretary
3550 Lenox Road NE, 21st Floor
Atlanta, Georgia 30326

via regular U.S. Mail.

5

This 27th day of January, 2023.

/s/ Gary V. Stiner, Jr.
Gary V. Stiner, Jr.