**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ANTHONY OLIVER,<br><br>    Plaintiff.<br><br>vs.<br><br><br><br>TERRY BARNARD, MARGARET HEAP,<br>TIMOTHY WARD, DAVID HERRING,<br>JACQUELINE BUNN, TYRONE OLIVER,<br>in their official capacities;<br><br><br>    Defendants. | Case No.: _____ |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND**
**PERMANENT RELIEF PURSUANT TO 42 U.S.C. § 1983**

*"My job as District Attorney is to put people in jail and prison, and then*
*make sure that they stay in there."*

Meg Heap, Former Chatham County District Attorney
Now Georgia Parole Board Member
Savannah Morning Newspaper
April 11, 2021

**AND NOW**, Plaintiff Anthony Oliver, ("Plaintiff"), hereby brings this Complaint for declaratory, injunctive, and permanent relief against the Defendants Terry Barnard, Margaret Heap, Timothy Ward, David Herring, and Jacqueline Bunn, ("collectively Parole Defendants"), and Tyrone Oliver, ("hereafter Commissioner OLIVER"), to seek this Courts immediate help to curb a serious manifest of injustice orchestrated by Defendants who engineered a scheme to keep Plaintiff in prison by denying his opportunity to be heard, and receive a parole hearing absent a fair and impartial hearing office in clear violation of Plaintiff's Fourteenth Amendment to the United States Constitution.

## I. PARTIES

Plaintiff Anthony Oliver, ("Plaintiff"), is an adult individual and a citizen of the State of Georgia. Plaintiff is currently incarcerated in the Georgia Department of Corrections, over the age of eighteen years old, and is due for immediate release after receiving proper parole consideration. Plaintiff has been incarcerated for the past four and a half years, and is serving a sentence for giving false information to a public officer, and attempted stalking.

Defendant Terry Barnard, ("BARNARD or Parole Board Defendants"), who is the current Chairman of the Georgia Pardons and Parole, ("PAP"). Defendant BARNARD is sued in his official capacity for declaratory and injunctive relief. Neither absolute, or qualified immunity is a bar to Plaintiffs claims for both forms of relief.

Defendant Margaret Heap, ("HEAP or Parole Board Defendants"), is a current member of the Georgia Pardons and Parole, ("PAP"). She is the former District Attorney of Chatham County who personally prosecuted Plaintiff for his underlying convictions. Defendant HEAP is sued in her official capacity for declaratory and injunctive relief. Neither absolute, or qualified immunity is a bar to Plaintiffs claims for both forms of relief.

Defendant Timothy Ward, ("WARD or Parole Board Defendants"), is a current member of the Georgia Pardons and Parole, ("PAP"). He is the former Commissioner of the Georgia Department of Corrections, ("GDC"). Defendant WARD is sued in his official capacity for declaratory and injunctive relief. Neither absolute, or qualified immunity is a bar to Plaintiffs claims for both forms of relief.

Defendant David Herring, ("HERRING or Parole Board Defendants"), is a current member of the Georgia Pardons and Parole, ("PAP"). He is also a former member of law enforcement and public safety. Defendant HERRING is sued in his official capacity for declaratory and injunctive relief. Neither absolute, or qualified immunity is a bar to Plaintiffs claims for both forms of relief.

Defendant Jacqueline Bunn, ("BUNN or Parole Board Defendants"), is a current member of the Georgia Pardons and Parole, ("PAP"). Defendant BUNN is sued in her official capacity for declaratory and injunctive relief. Neither absolute, or qualified immunity is a bar to Plaintiffs claims for both forms of relief.

Defendant Tyrone Oliver, ("COMMISSIONER OLIVER"), is the current Commisisioner of the Georgia Department of Corrections. He is sued for injunctive relief.

## II. JURISDICTION

This federal Court has federal jurisdiction over this action, and the parties pursuant to 42 U.S.C. §§ 1983, 1985, and 28 U.S.C. §§ 2201-2202, Tthe Civil Rights Act of 1964, and under the 8th and 14th Amendments to the United States Constitution.

## III. VENUE

Venue is proper in the United States District Court in and for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district. Further, all of the Defendants are residing in Fulton County, who lies within this Judicial District.

IV.   COMMON FACTUAL ALLEGATIONS

This is a classic example to show how the Georgia Pardons and Parole, ("PAP"), system is a complete failure. The Georgia parole system is a sham that is ran by some of the most corrupt government officials in modern day history. The parole system is systematically setup to ensure thing, that all Georgia Department of Corrections, ("GDC"), offenders, like Plaintiff, are kept in prison to serve a lengthy prison system for some of the most nonviolent criminal offenses.

The current Georgia PAP board is made up of former law enforcement, public safety, and prosecutors. Most notably, one of the newest PAP members is none other then the former elected District Attorney of Chatham County, Defendant Margaret Heap, ("Defendant HEAP"), who has spent that last decade or more, of her career as both a police officer, and later District Attorney of Chatham County pursuing crime, but also abusing her authority. Anyone who dares to cross paths with her, that person (like the Plaintiff), will suffer substantially.

In the year 2017, Plaintiff began investigating one of Georgia's most corrupt government officials, Defendant Margaret Heap, ("Defendant HEAP"), arising from her time as the elected District Attorney of Chatham County where Defendant HEAP was prosecuting people based race, and those who dare cross paths with her. Specifically, Plaintiff was investigating Defendant HEAP for her ongoing pattern of prosecuting innocent black people that she knew, and had reason to know, was innocent. Plaintiff sought to become an investigative reporter for a local news outlet, and focused in on Defendant HEAP after discovering same.

On or about October 3, 2017, Plaintiff received information from an employee employed with the Memorial Health Radiology and Cardiology center located in Savannah that Defendant HEAP was at a doctor's appointment around 3:30 while intoxicated. Plaintiff was further informed she was at the doctors appointment while on Chatham County time driving a blue for contour vehicle.

4

Once the Plaintiff was tipped off, he rounded up two private investigators, and rushed to the Memorial Health center, and quickly setup surveillance outside to catch Defendant HEAP in action drinking and driving. Defendant HEAP made her way to the visiting area where she began waiving a black handgun, and berating black people. Defendant HEAP also was telling employees how she prosecutes innocent black people, and works with three Superior Court judge's to deny black people bonds. During her escapade, Plaintiff was behind her filming her with his surveillance equipment. Defendant HEAP was captured on a recording saying: "Let a N_____ come to my house, and I will F_____ shoot them. **[Emphasis in Original].**

Plaintiff and private investigator Jamie Trecatti, ("TRESCATTI"), a former law enforcement officer of the Tennessee Bureau of Investigation followed Defendant HEAP outside as she got into her car, and proceeded to drink more alcohol, and drive home. Plaintiff and TRESCATTI followed her as called police to make a citizens arrest. Police never showed up after being informed who the drunk driver was.

However, Plaintiff and TRESCATTI followed her to her home arriving at 51 Herons Nest, Savannah, Georgia, 31412, a private community in Savannah.

About a year and a half later, Plaintyiff discovered that Defendant HEAP was seeking reelection, and to help prevent that, Plaintiff contacted all of the news media outlets in the Savannah region to give reporters, and news anchors copies of the recordings. One reporter, Andrew Davis of WSAV news station informed Defendant HEAP of Plaintiffs intent. Defendant HEAP knew she had to act quick to get the recordings from Plaintiff before her career and reelection was in jeopardy. Defendant HEAP also knew she would have to use stop at nothing do so.

**Plaintiff Declares His Intent to Run for Mayor of Savannah**

On or about January 13, 2019, Plaintiff official announced on national television of his intent to run for Mayor of Savannah. [1]

Once confirmed, Plaintiff received a notice to appear at the Mayor's State of the Union City address. Plaintiff appeared as did Defendant HEAP. After arriving, Plaintiff began showing the news media the recordings of Defendant HEAP drunk, berating black people, and driving. Defendant HEAP was alerted by a news reporter, and she demanded that Savannah Police officer David Bland take Plaintiffs IPhone from him, and have Plaintiff removed from the event. When police officers refused to obey Defendant HEAP's unlawful commands, she became angry and upset. During the event, Defendant HEAP also tried to have Plaintiff removed from the event after she discovered Plaintiff telling news reporters that Plaintiff would be providing copies of Defendant HEAP drinking and driving, as Plaintiff asked the media to run the footage on national television. Several news reporters attending the event agreed to do so, and Defendant HEAP became even more enraged. Weeks later, Plaintiff was invited to a "meet and great" event put on Governor Brian Kemp, ("Governor KEMP"), where all of the candidates for Mayor were required to meet with him, take pictures, and discuss ideas on the St. Patrick's day parade. Plaintiff appeared, and refused to take any pictures with any republicans. Defendant HEAP introduced Plaintiff to Governor KEMP by saying "this guy is one one going to jail soon." **[Emphasis in Original].**

When Governor KEMP asked whether Plaintiff wanted to take a picture with him, Plaintiff declined, and said; "I would never take a picture with you and your clothes that ypou bought at the thrift store." **[Emphasis in Original].**

Plaintiff made these statements in front of distinguished guests, and Governor KEMP, and Defendant HEAP became angry and upset at Plaintiff for embarrassing the Governor.

---

[1] www.savannahnow.com/law-student-announces-run-for-savannah-mayor (Savannah Morning Newspaper Jan. 13, 2019)

At the same time, Plaintiff declared his intent to run for Mayor of Savannah Georgia, and entered the race to become the next Mayor. When Defendant HEAP discovered this, she put things into high gear to prevent Plaintiff from becoming the next Mayor. Coincidentally, Plaintiffs ex-girl friend, Crystal Field, ("FIELD"), and the mother of his two kids in Georgia was a civilian employee in the Chatham County District Attorney's office where Defendant HEAP was the District Attorney.

Acting together, Defendant HEAP met with FIELD to find out where Plaintiff lived, and where he keeps his surveillance equipment. After receiving Plaintiffs home address, Defendant HEAP then enlisted the help of two corrupt law enforcement officers and two of her District Attorney Investigators, Adina C. Ripley, ("Inv. RIPLEY"), and Jonathan M. Puhala, ("Inv. PUHALA"). Prior to becoming Disrict Attorney Investigators, and District Attorney, Defendant HEAP, Inv. RIPLEY and Inv. PUHALA all served together at the Savannah Police Department as police officers together. Defendant HEAP recruited both investigators for their outstanding, and high levels of corruption.

As the Mayor campaign got under way, Defendant HEAP and the two investigators engineered a dubious scheme to put together four search warrant affidavits to search Plaintiffs home. Defendant HEAP and her cronies came up with a story that Plaintiff embezzled $ 600.00 dollars in campaign contributions.

As the story unraveled, Defendant HEAP and her two corrupt investigators used the story that Plaintiff embezzled the money that was given to Plaintiff by two ladies who reside in the State of Illinois, repeat, Illinois, not Georgia. It was the best they could come up with. Defendant HEAP stated they receid this information from a mother and daughter in Chicago.

With their stories in place, Defendant HEAP had her investigators prepare four search warrant affidavits where they sought to search Plaintiffs home. The kicker was however, Defendant HEAP sought to search Plaintiffs home for "surveillance equipment," and not any financial documents. Meanwhile, Defendant HEAP had Plaintiffs ex-girl friend take out a Magistrate warrant for

7

Aggravated Stalking. Using the same punch line, Defendant HEAP instructed FIELD to use the same punch line concerning a mother and daughter. The allegation was simple, and similar to the embezzlement story. At the time, FIELD had a protective order against Plaintiff. This time, it was that Plaintiff was at a resteraunt in Pooler Georgia, and there, another mother and daughter allegedly saw Plaintiff and the daughter was attending high school with Plaintiff's daughter in Effingham County. They alleged that Plaintiff waked over to the mother and daughter duo and said: "where's my daughter at, tell her I have over $ 6,000 dollars in Christmas presents, and tell her to call me." [Emphasis in Original].

With this story in hand, FIELD was allegedly relayed the message, and not Plaintiffs daughter. This somehow triggered a violation for Aggravated Stalking, and FIELD, (with the help of Defendant HEAP), obtained an arrest warrant for Plaintiff. After receiving a tip from a confidential source concerning the warrant, Plaintiff turned himself in. Defendant HEAP later obtained the four search warrants that gave Defendant HEAP permission to search Plaintiffs home for the "surveillance equipment."

Defendant HEAP personally, and her team of corrupt investigators searched Plaintiffs home to seize Plaintiffs and found what they needed. Plaintiffs computers, police issued body camera, a lapel pin with a hidden camera, a GoPro camera, a pair of sunglasses with a hidden camera, and Plaintiffs Apple IPhone.

Notwithstanding that the allegations where that Plaintiff embezzled campaign money, Defendant HEAP and her team never seized bank account records, ATM receipts, campaign contributions ledgers, or even copies of well over 200 checks that campaign donors provided to Plaintiff. All of these financial documents and instruments would help investigators prove their case for embezzlement of campaign funds, but of course that story was false. All of the financial documents and ledgers remained untouched, and left inside Plaintiffs home.

Defendant HEAP and her team later found the recordings on Plaintiffs Apple IPhone after they transferred the seized items to a high sophisticated federal agent at the United States Secret Service. Agent Stuart Glasby foh d the recordings, and together they destroyed the recordings, and Plaintiffs Apple IPhone to help Defendant HEAP secure reelection as District Attorney.

Plaintiff was indicted and charged by Defendant HEAP, and several District Attorneys. Plaintiff was held without bail in the Chatham jail, and while in jail, Plaintiff sued Defendant HEAP and her corrupt investigators for judicial deception in federal Court.

### Plaintiff is Convicted At Trial And Sentenced To Prison

On October 16, 2019, after a three day jury trial, Plaintiff was found guilty at trial for charges of Aggravated Stalking, Criminal Attempt to Commit a felony of attempted Stalking, and giving false information to a peace officer. Prior to being transferred to prison, Defendant HEAP and her cronies stated to Plaintiff that they would make his life miserable while he was in prison. Defendant HEAP would go on to ensure that she and others kept their words. Defendant HEAP was angry that Plaintiff had in his possession Defendant HEAP's home address, and was afraid that he would disperse that information to offenders incarcerated in the GDC and elsewhere.

Several months later as Defendant HEAP was seeking reelection as Chatham County District Attorney, the media and citizens of Chatham County began to ask Defendant HEAP about the secret recordings of her drinking and driving while berating black people. Word was out about the recordings, and Defendant HEAP was unable to admit to what she did. Ultimately, the voters of Chatham County decided enough was enough, and the voters decided to vote for a better candidate for District Attorney. Defendant HEAP lost reelection, and she lost bad to a black woman. Because of Plaintiff, Defendant HEAP lost reelection, and she then vowed to get Plaintiff back.

After Defendant HEAP lost reelection and had no job, it was Governor KEMP who personally appointed her to the Georgia Parole Board to serve as a new member of the parole board. As such, Defendant HEAP now had her chance to retaliate against the Plaintiff for causing her to lose reelection. Defendant HEAP would go on to use her official powers to ensure that Plaintiff would never be eligible for parole, or benefit from the privileges that other GDC offenders benefit from.

While incarcerated in the GDC, Plaintiff was keeping to himself, and worked on his criminal appeal pro se. Also while incarcerated at the Wilcox State Prison, officials from the GDC and the Parole Board Members began to suspect that Plaintiff was acting as an informant for the Federal Bureau of Investigation, ("FBI"), and the United States Department of Justice, ("USDOJ"), after prison staff intercepted a letter from Assistant United States Attorney Kirsten Clark, ("AUSA CLARK"), that stated she was sending an FBI agent to interview Plaintiff due to GDC being placed under federal investigation. Prison officials unlawfully opened a letter from AUSA CLARK addressed to Plaintiff.

The prison officials at Wilcox Prison harassed Plaintiff daily inquiring as to whether Plaintiff was or was not an FBI and USDOJ informant. With no answers, prison officials later setup Plaintiff to be raped in prison by removing him from his cell, and then placed him in a cell with a known rapist. Plaintiff was pulled off the top bunk in the middle of his sleep, and raped by another offender at knife point. As a result of being pulled from the top bunk, and slammened on the ground, Plaintiff sustained two fractures in his back requiring surgery. Plaintiff later retained counsel, and filed suit in the United States District Court styled as Anthony Oliver v. Warden Lawrence Whittington, et al., Civil Action No. 5:21-cv-183-TES-CHW. Plaintiff was represented by Attorney McNeill Stokes.

After Plaintiff sued the Wilcox Prison staff, it was then that three officers who set Plaintiff up was later arrested, and charged by the Georgia Bureau of Investigation, ("GBI"), for violations of the oath of office. After that, the Parole Board Members became aware that Plaintiff filed suit against prison officials,

10

who then put things in high gear to retaliate against Plaintiff.

On or about September 15, 2022, Plaintiff was incarcerated at the Augusta State Medical Prison, ("ASMP"), for surgery on his back and spine when then GDC Commissioner WARD, now on the Georgia Parole Board, was attending a retirement party for Warden Edward Philbin. Defendant WARD, and others spoke to Plaintiff at the ASMP, and stated that he felt Plaintiff was an active FBI/USDOJ informant causing the GDC to be placed under investigation. After denying any involvement, Defendant WARD informed Plaintiff that he was going to be appointed to the Georgia Parole Board, and that he already spoke to the Parole Board Members including Defendant HEAP, and that the Georgia PAP decided that Plaintiff would serve his entire sentence. Defendant WARD also informed Plaintiff that if he brought another lawsuit against him, or the Parole Board Members, that he would put Plaintiffs name on an offender transfer list, and see to it that his officers drop Plaintiff off at a "level five" prison by "accident," and have other offenders kill Plaintiff by offering to release these offenders on parole.

Coincidentally, Defendant WARD was in fact appointed to the Georgia PAP, and became good friends with Defendant HEAP.

On June 28, 2022, Plaintiffs criminal convictions was reversed in part by the Georgia Court of Appeals in case number A22A0254. Specifically, the Court of Appeals reversed Plaintiff's primary conviction for Aggravated Stalking in which Plaintiff was sentenced to ten years on. The Georgia Court of Appeals ruled that Chatham County, or the State of Georgia did not have jurisdiction over the Plaintiff because Plaintiffs ex-girl friend (who was a civilian in the Chatham County District Attorneys office), was a resident of South Carolina. And that when a person in a victim of a crime by telephone, text message, email, or facsimile, that person must file a police report in their County.

On or about July 19, 2022, while proceeding pro se, Plaintiff filed a Writ of Certiorari to the Georgia Supreme Court.

On April 18, 2023, the Georgia Supreme Court issued an order denying review of his Writ of Certiorari.

On May 12, 2023, Plaintiff and his newly retained criminal defense attorney was ordered to appear back in Chatham County Superior Court where Plaintiff was to be resentenced to a total of ten years confinement. Plaintiff was sentenced to five years for giving false information, and five years for criminal attempt to commit a felony to entered and served consecutively. Once Plaintiff was resentenced, the Parole Board Members knew that Plaintiff would be eligible for parole immediately because Plaintiff has served already four years and five months of the ten years.

On May 20, 2023, by and through counsel, Plaintiff applied to the Georgia PAP to be released on supervised parole. Plaintiff informed the Georgia PAP in his application that he was transferring supervision to Las Vegas, Nevada, and would never return to Georgia, and have any contact with anyone in Georgia. Plaintiff also proved in his application for suitable parole that he had a job waiting for him with a law firm in Las Vegas, provided references, and  provided more evidence that Plaintiff has a vehicle, residence, employment, and money waiting for him upon release. Plaintiff also took the initiative to fill out his application for Interstate Compact Unit parole transfer, and paid the $ 100.00 application fee.

Further, Plaintiff also informed the Georgia Parole Board Members that while in prison, Plaintiff serves as a model offender. Plaintiff teaches social studies to young offenders, he has never received any disciplinary charges, write ups, never engaged in any misconduct. Plaintiff also obtained his general education degree, ("GED"), while incarcerated in though he did not need it, but to show the Georgia PAP that he was serious about excelling, he obtained it anyways. Furthermore, while incarcerated, Plaintiff excelled himself by completing eight classes that range from motivation for change, to culinary arts to show the Georgia Parole Board Members that he was fit to be released on suitable parole. As a result of completing the eight classes, Plaintiff received what is called PIC points. For every class Plaintiff completed, he received one point towards his sentence reduction. Put another way, Plaintiff now has eight months off his sentence that he does not have to serve.

After applying for suitable parole, Defendant HEAP struck again. She secretly met with Parole Board Defendants WARD, BUNN, HERRING, BARNARD, and GDC Commissioner OLIVER to inform them that Plaintiff, through his attorney, filed an application for parole to the Georgia PAP, and that Defendant HEAP did not want Plaintiff released on parole. Acting in an arbitrary, and capricious manner, Defendant HEAP convinced the other members of the Parole Board, and Commissioner OLIVER to retaliate against the Plaintiff due to her losing reelection, and having her home address in prison. After Plaintiffs parole application was received, the Parole Board Defendants agreed amongst themselves, and with Commissioner OLIVER that Plaintiff would be denied suitable parole without providing him with a proper hearing, opportunity to be heard, and take away his PIC points to ensure Plaintiff would not get out of prison any time soon. The Parole Board Defendants also conspired with Commissioner OLIVER that Plaintiff would be denied a transfer to a GDC apprived transitional center, ("GDC TC"), which is a halfway house where Plaintiff would be released and be able to obtain employment, and earn money.

In a dubious scheme to deny Plaintiff his opportunity to be heard for suitable parole, the Parole Board Defendants engineered another scheme that would be used to deny Plaintiff parole, or transfer to a GDC TC.

In order to be eligible for parole, the Parole Board Defendants would use a formula based on Plaintiffs incarceration record, current offense, and arrest record to determine parole. But the Parole Board Defendants never used this formula, and instead used false, and deceptive means to deny Plaintiff suitable parole.

On July 22, 2023, with what came as no surprise to anyone, the Parole Board Defendants issued Plaintiff a notice denying him parole until April 2, 2028, whereas Plaintiff will have served % 99.9999999 percent of a ten year sentence for a non violent offense with no recidivist sentencing.

13

The Parole Board Defendants came up with false allegations that Plaintiff was arrested for twenty four (24) felonies, and twenty-two (22) misdemeanors since his age of eighteen (18) years old. And that Plaintiff posed a threat to society. But none of this was true, or could be substantiates in any way because Plaintiffs criminal record printout for the GBI only shows that Plaintiff was only arrested for four (4) felonies and eight (8) misdemeanors in his life.

The Parole Board Defendants never actually provided Plaintiff with any hearing whatsoever, or gave him the opportunity to be heard guaranteed by the 14th Amendment to the United States Constitution. Rather, it was just a group of corrupt State officials using their official power on steroids to deny Plaintiff suitable parole for retaliatory reasons. Finally, in the letter denying parole, the denial letter was signed, and authored by none other, Defendant HEAP, the same person Plaintiff had been investigating for years. The same person he and a private investigator filmed drinking, waiving a gun, and boasting about how Defendant HEAP as former Chatham County District Attorney puts innocent black people in jail. And of course, the same person who lost reelection because of the Plaintiff in this case.

On July 24, 2023, Plaintiff, by and through his counsel, submitted a notice/motion for reconsideration to the Georgia PAP, and that reconsideration asked that the Parole Board Defendants disqualify Defendant HEAP from further dealings with Plaintiff and the decision whether to grant parole. That same day, which is unheard of, the Plaintiffs notice/motion for reconsideration was denied thereby keeping Plaintiffs only parole date of April 2, 2028 when Plaintiff will be forty-eight years old.

That same week, Plaintiff applied to Commissioner OLIVER for a transfer to a GDC TC, but he denied Plaintiff's request stating that he was agreeing with former GDC Commissioner WARD, now Parole Board Member Defendant WARD that he would not transfer Plaintiff anywhere because he suspects Plaintiff is in fact a cooperating FBI and USDOJ informant that resulted in 198 plus GDC Officer's and staff members being arrested by the FBI and USDOJ to date.

At all relevant times herein, the Parole Board Defendants, acting under the color of authority, and in their official capacities, denied Plaintiff his due process by denying him a fair and impartial hearing for parole, and an opportunity to be be heard prior to making a decision to grant or deny parole. Further, Plaintiff also has a right to be heard for parole based on false, and fabricated evidence such as false criminal arrests. The Parole Board Defendants knew, and had reason to knew they were violating Plaintiffs right, but did so anyways.

As a direct result of the actions of the Parole Board Defendants, and Commissioner OLIVER, Plaintiff is now being ordered to serve nine years of a ten year sentence as the Parole Board Defendants never conducted a hearing. And Plaintiff will not be transferred to a GDC TC due to their influence on the GDC Commissioner OLIVER.

Plaintiff seeks declaratory and injunctive relief against Commissioner OLIVER in his official capacity. Plaintiff seeks to enjoin Commissioner OLIVER, his agents, officers, employees, and prison officials in general from retaliating against the Plaintiff and to prevent Commissioner OLIVER from transferring Plaintiff to any other prison facility without the consent or approval of this Court due to his ability to do so to cause injury upon Plaintiff.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 - 14th Amendment Right to Be Heard and Receive a Hearing Before a Fair And Impartial Hearing Officer
### (Plaintiff Anthony Oliver v. Terry Barnard, Margaret Heap, Timothy Ward, David Herring, and Jacqueline Bunn)

Plaintiff reincorpates and realleges each of the paragraphs as set forth in this Complaint.

Plaintiff is an offender of the GDC, and eligible for suitable parole at this time.

Defendants Terry Barnard, Margaret Heap, Timothy Ward, David Herring, and Jacqueline Bunn are State actors, acting under the color of authority, are sued in their official capacities for declaratory and injunctive relief pursuant to 42

U.S.C. § 1983. at all relevant times, the Defendants Terry Barnard, Margaret Heap, Timothy Ward, David Herring, and Jacqueline Bunn denied Plaintiff his opportunity to be heard for suitable parole, an denied Plaintiff that right so guaranteed by the 14th Amendment.

Further, Plaintiff also had a right to receive a hearing, or parole decision by a fair and impartial parole board. The Defendants retaliated against the Plaintiff in several ways. At all relevant times, Plaintiff was denied his rights by the Defendants for unofficial reasons.

As a direct result of not being provided an opportunity to be heard, and a hearing before a fair and impartial parole board, Plaintiff has been subjected to a denial of parole based on personal animosity, fabricated evidence, and arrests,

## SECOND CAUSE OF ACTION
## 28 U.S.C. §§ 2201-2202
### (Plaintiff Anthony Oliver v. Defendant Tyrone Oliver)

Plaintiff reincorpates and realleges each of the paragraphs as set forth in this Complaint.

Plaintiff seeks declaratory, and injunctive relief against GDC Commissioner Tyrone Oliver is his official capacity as Commissioner.

Plaintiff seeks an order of this Court enjoining Defendant GDC Commissioner Tyrone Oliver from retaliating against the Plaintiff during his incarceration.

Plaintiff seeks an order of this Court enjoining Defendant GDC Commissioner Tyrone Oliver from transferring Plaintiff to any other prison facility without the approval, and/or consent of this Court during Plaintiff's incarceration.

Plaintiff seeks an order of this Court to issue an order transferring Plaintiff to federal custody during the pendency of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Anthony Oliver and the Class of similarly situated individuals pray for judgment as follows:

a. For a declaration that Defendants the Defendants Terry Barnard, Margaret Heap, Timothy Ward, David Herring, and Jacqueline Bunn violated Plaintiff rights guaranteed under the 14th Amendment to the United States Constitution right to be heard, and a fair and impartial hearing;

b. For an order of this Court directing the Defendants or a declaration that Defendants the Defendants Terry Barnard, Margaret Heap, Timothy Ward, David Herring, and Jacqueline Bunn to provide Plaintiff with a hearing at a date set by this Court, to produce to the Court a copy of their findings;

c. For an order of this Court ordering Defendants Defendants Terry Barnard, Margaret Heap, Timothy Ward, David Herring, Jacqueline Bunn, their agents, investigators, attorneys, paralegals, and clemency employees to provide Plaintiff with a new and/or parole hearing, an opportunity to be heard, and present evidence in his favor;

d. For an order of this Court enjoining Defendant GDC Commissioner Tyrone Oliver from retaliating against the Plaintiff during his incarceration;

e. For an order of this Court enjoining Defendant GDC Commissioner Tyrone Oliver from transferring Plaintiff to any other prison facility without the approval, and/or consent of this Court during Plaintiff's incarceration;

f. For an order of this Court to issue an order transferring Plaintiff into federal custody during the pendency of this action;

g. For an order of this Court permanently enjoining the Defendants Terry Barnard, Margaret Heap, Timothy Ward, David Herring, Jacqueline Bunn, their agents, investigators, attorneys, paralegals, and clemency employees from enforcing Plaintiffs parole date of April 2, 2028;

h. For an award of attorneys' fees and costs, and any other expense, including expert witness fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920; and

i.  Such other and further relief as this court may deem just and proper.

               Respectfully submitted,

Dated:  July 31st 2023      */S/ McNeill Stokes*
                McNeill Stokes
                Georgia Bar Number 683600

5372 Whitehall Place SE
Mableton, GA 30126
Telephone: 404-352-2144
Email:  mcstokes@bellsouth.net

## JURY TRIAL DEMANDED

Pursuant to the Seventh Amendment to the United States Constitution, Plaintiff Anthony Oliver does hereby demands a trial by jury on all claims so triable.

               Respectfully submitted,

Dated:  July 31st 2023      */S/ McNeill Stokes*
                McNeill Stokes
                Georgia Bar Number 683600

5372 Whitehall Place SE
Mableton, GA 30126
Telephone: 404-352-2144
Email:  mcstokes@bellsouth.net