# EXHIBIT "A"

 PEACHCOURT

| | 23CV00694 | CHAPEL HILLS COMMUNITY ASSOCIATION, INC. V EVANS | DOUGLAS SUPERIOR | CONTRACT |

## Case Docket

| Case Initiation Date | Assigned Judge |
|---|---|
| 05/01/2023 | CYNTHIA C. ADAMS |

Why subscribe to PeachCourt+? Well, for one thing... you could get an automagic email alert when anyone files anything into this case. You don't have to come back here day after day after day just to check the docket. We'll take care of that for you. All you have to do is subscribe!

## Party Information

Plaintiff:                                   Defendant:

**CHAPEL HILLS COMMUNITY ASSOCIATION, INC.,**        **EVANS, TERRY**

## Attorney/Filer Information

**HARRISON, VICTOR**                          **HAMRAIE, PAYUM JAMES**

| Docket # | Document Type | Description | Filer | Filing Date | Source |
|---|---|---|---|---|---|
| 1 | Petition | COMPLAINT/PETITION | Harrison, Victor J. | 05/01/2023 | EFile: PeachCourt |
| 2 | Summons | SUMMONS FOR EVANS, TERRY. | Harrison, Victor J. | 05/01/2023 | EFile: PeachCourt |
| 3 | Case Information Form | FORM CIVIL CASE FILING | Harrison, Victor J. | 05/01/2023 | EFile: PeachCourt |
| 4 | Entry Of Appearance | ENTRY OF APPEARANCE | | 06/30/2023 | Manual |
| 5 | Answer And Counterclaim | ANSWER AND COUNTERCLAIM | | 06/30/2023 | Manual |

The clerk's office maintains the official record for this case. The information we provide is our best attempt at reflecting the official record. Despite our best efforts, you may find discrepancies between the information on this page and the clerk's official record. The clerk's official record is always official and is always THE record.

Printed from www.peachcourt.com on Jul 31, 2023 10:35 AM

⊕ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
DOUGLAS COUNTY, GEORGIA

**23CV00694**
CYNTHIA C. ADAMS
MAY 01, 2023 09:57 AM

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

### IN THE SUPERIOR COURT OF DOUGLAS COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| **CHAPEL HILLS** | * | |
| **COMMUNITY ASSOCIATION, INC.,** | * | |
|     **Plaintiff** | * | **CIVIL ACTION** |
| | * | |
| **v.** | * | **FILE NO.:** _____ |
| | * | |
| **TERRY EVANS,** | * | |
|     **Defendant** | * | |

_____

## COMPLAINT

COME NOW the Plaintiff, Chapel Hills Community Association, Inc., by and through their undersigned attorney and brings this Complaint against the Defendant, Terry Evans, and shows the Court as follows:

1.

The Plaintiff is an incorporated homeowner's association responsible for the management and maintenance of the common areas of the Chapel Hills Community Association, Inc., in accordance with the duly recorded Declaration of Covenants, Conditions and Restrictions for Chapel Hills as amended (hereinafter the "Declaration"). A copy of the Declaration is attached hereto as Exhibit "A".

2.

Defendant may be served with Summons and a copy of this Complaint at 5163 Chapel Crossing, Douglasville, Georgia 30135.

3.

Defendant is the owner of real property being commonly known as 5163 Chapel

Crossing, Douglasville, Georgia (hereinafter the "Property") which is subject to the Declaration.

A copy of the vesting deeds of the Property into the name of the Defendant is attached hereto as

Exhibit "B".

4.

This Court has jurisdiction over the parties of this case.

5.

Venue for this action is proper in Douglas County, Georgia.

6.

As the owner of the Property, Defendant is subject to all terms, conditions, and

requirements of the Declaration.

7.

The Declaration "Article IV.  Assessments.  Section 2.  Creation of the Lien and Personal

Obligation for Assessments." provides in relevant part:

> Each Owner of any Lot, by acceptance of a deed therefor, whether or not it shall
> be so expressed in such deed, covenants and agrees to pay to the Association:  (a)
> General Assessments; (b) Parcel Assessments, if any; (c) special assessments,
> such assessments to be established and collected as hereinafter provided; and (d)
> specific assessments against any particular Lot which are established pursuant to
> the terms of this Declaration, including, but not limited to, reasonable fines as
> may be imposed in accordance with the terms of this Declaration. General
> Assessments shall be levied for Association Expenses determined by the Board to
> benefit all Owners and Occupants. General Assessments shall be allocated among
> all Lots in the Community. Parcel Assessments shall be levied against Lots in a
> particular Parcel where the Board has determined that certain Association
> Expenses benefit only that Parcel.
>
> All such assessments, together with late charges, interest, not to exceed the
> maximum rate permitted by law (but not to exceed eighteen (18%) percent per
> annum), costs, including, without limitation, reasonable attorney's fees actually

incurred, shall be a charge on the land and shall be a continuing lien upon the Lot against which each assessment is made. Each such assessment, together with late charges, interest, costs, including, without limitation, reasonable attorney's fees actually incurred, shall also be the personal obligation of the Person who was the Owner of such Lot at the time the assessment fell due. Each Owner shall be personally liable for the portion of each assessment coming due while the Owner of a Lot, and each grantee of an Owner shall be jointly and severally liable for such portion thereof  as may be due and payable at the time of conveyance; provided, however, the liability of a grantee for the unpaid assessments of its grantor shall not apply to any first Mortgagee taking title through foreclosure proceedings or deed in lieu of foreclosure.

8.

Pursuant to Article IV Section 2 of the Declaration, Defendant is required to pay to Plaintiff annual assessments as their share of the common expenses for the maintenance of the development.

9.

Pursuant to Article IV Section 2 of the Declaration, Defendant is required to pay to Plaintiff fines.

10.

Pursuant to Article IV Section 2 of the Declaration, Defendant is required to pay late charges.

11.

Pursuant to Article IV Section 2 of the Declaration, Defendant is required to pay interest at the rate of eighteen percent (18%) per annum from the date the same was first due and payable.

12.

Defendant has failed and refused to timely pay the assessments, fines, late charges and interest incurred pursuant to the Declaration.  Through April 26, 2023, the Defendant is indebted

to Plaintiff in the principal amount of $3,039.79.  A copy of the Transaction History reflecting the balance owed is attached hereto as Exhibit "C".

13.

Pursuant to Article IV Section 2 of the Declaration, Plaintiff is authorized to institute suit against Defendant to collect all past due amounts along with the costs of collection including reasonable attorney's fees actually incurred.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

(a)     Judgment against Defendant in the amount of $3,039.79 plus any additional assessments and charges accruing from the date of this Complaint through the date of judgment;

(b)     Interest at the rate of eighteen percent (18%) per annum from the date the assessment was first due and payable through the date of judgment;

(c)     For all costs of this litigation;

(d)     For all reasonable attorney's fees actually incurred by Plaintiff in connection with this litigation;

(e)     Post-Judgment interest to accrue at the rate of eighteen percent (18%) per annum from the date of Judgment; and

(f)     Such other and further relief as this Court may deem just and proper.

This 1st day of May, 2023.

HARRISON LAW, LLC


Victor J. Harrison
Attorney for Plaintiff
Georgia Bar Number 331799

P.O. Box 1495
Douglasville, Georgia 30133
(770)942-4758
victorharrison@westgalaw.com

# EXHIBIT "A"

Page 1 of 60

19CV01235

For Supplematery Dec see Bk 1200 Pgs 646 + 649
For Supplementay Dec. see BK 1306 pg. 977
For amere consent of dec. of protective covenents see BK 1362 pg 634    FILED
For Consent to Declar. g Prot. Cov., see BK 1535 Pg. 0876
For Corrective Declar. g Prot. Cov, see Bk 1662 Pg. 0357    FEB 19   3 11 PM '91
For Owner Consent to Declar of Prot Cov. see Bk 1749 pg DOUGLAS    COURTS S
For Owner Consent to Decl. of Prot Cov. see Bk 2161 pg 253    JANE C.    CLK

2-19-51

DECLARATION OF PROTECTIVE COVENANTS

FOR

CHAPEL HILLS

For Consent to the
Declaration of Protective
Covenants, see Blc 1571
Pg 841

For Supplematry Dec see BK 1277 pg 385
Dec BK 1288 pg 1006
9th Dep D. dire. see BK 1288 pg 1006
For Consent to Decl. g Prot. Cov., see BK 1563 Pg. 0670

For Supplematry Dec see BK 1378 Pg 795
see BK 1375 Pg 331
For Amendment to Dec. of Protective Covenants see BK 1492 Pg 0213
For declaration of protective Covenants See BK 1375 Pg 331
For Supplementary declaration of protective covenants see BK 1375 Pg 331
For supplematry declaration of protective covenants see BK 1375 Pg 331
For SUPPLEMENTARY see BK 982 Pg 645 + Pg 646
For Supplementary see Bk 985 Pg 329 9th Dep D. dire.
For Supplematry see BK 1022 Pg 662
For Supplematry Dec see BK 1131 Pg 753
For Supplematry Dec see BK 1166 Pg 404
For Supplematry Dec see BK 1188 Pg 327

HYATT & RHOADS, P.C.

Attorneys
2400 Marquis One Tower
Atlanta, Georgia  30303
(404) 659-6600

For Owner's Consent to the
Dec. of Prot. Cov., See
BK 1607 Pg 1030

BOOK 709 PAGE 703

Book: 709  Page: 703  Seq: 1

19CV01235

- TABLE OF CONTENTS -

| Article | Section | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | PROPERTY SUBJECT TO THIS DECLARATION | 2 |
| | 1. Property Hereby Subjected To This Declaration | 2 |
| | 2. Other Property | 2 |
| III. | ASSOCIATION MEMBERSHIP AND VOTING RIGHTS | 2 |
| | 1. Membership | 2 |
| | 2. Voting | 2 |
| | 3. Parcels | 2 |
| IV. | ASSESSMENTS | 3 |
| | 1. Purpose of Assessment | 3 |
| | 2. Creation of the Lien and Personal Obligation for Assessments | 3 |
| | 3. Computation | 4 |
| | 4. Special Assessments | 4 |
| | 5. Lien for Assessments | 4 |
| | 6. Effect of Nonpayment of Assessments: Remedies of the Association | 5 |
| | 7. Date of Commencement of Assessments | 5 |
| | 8. Specific Assessments | 6 |
| | 9. Budget Deficits During Declarant Control | 6 |
| V. | MAINTENANCE; CONVEYANCE OF COMMON PROPERTY TO ASSOCIATION | 6 |
| | 1. Association's Responsibility | 6 |
| | 2. Owner's Responsibility | 7 |
| | 3. Party Walls and Party Fences | 8 |
| | 4. Conveyance of Common Property by Declarant to Association | 8 |
| VI. | USE RESTRICTIONS AND RULES | 9 |
| | 1. General | 9 |
| | 2. Residential Use | 9 |
| | 3. Architectural Standards | 9 |
| | 4. Signs | 10 |
| | 5. Vehicles | 11 |
| | 6. Parking | 11 |
| | 7. Leasing | 11 |
| | 8. Occupants Bound | 12 |
| | 9. Animals and Pets | 12 |

| Article | Section | Page |
|---|---|---|
| | 10. Nuisance | 12 |
| | 11. Unsightly or Unkempt Conditions | 12 |
| | 12. Antennas | 12 |
| | 13. Tree Removal | 13 |
| | 14. Drainage | 13 |
| | 15. Sight Distance at Intersections | 13 |
| | 16. Garbage Cans, Woodpiles, Etc. | 13 |
| | 17. Subdivision of Lot | 13 |
| | 18. Guns | 13 |
| | 19. Fences | 14 |
| | 20. Utility Lines | 14 |
| | 21. Air Conditioning Units | 14 |
| | 22. Lighting | 14 |
| | 23. Artificial Vegetation, Exterior Sculpture, and Similar Items | 14 |
| | 24. Energy Conservation Equipment | 14 |
| | 25. Swimming Pools | 14 |
| | 26. Gardens, Play Equipment and Pools | 14 |
| | 27. Mailboxes | 14 |
| | 28. Exteriors | 14 |
| | 29. Clotheslines | 15 |
| | 30. Exterior Security Devices | 15 |
| | 31. Entry Features | 15 |
| | 32. Lakes | 15 |
| | 33. Natural Greenbelt Area | 15 |
| | 34. Wetlands | 16 |
| VII. | INSURANCE AND CASUALTY LOSSES | 17 |
| | 1. Insurance on Common Property | 17 |
| | 2. Individual Insurance | 19 |
| | 3. Damage and Destruction -- Insured by Association | 20 |
| | 4. Damage and Destruction -- Insured by Owners | 20 |
| | 5. Insurance Deductible | 21 |
| VIII. | CONDEMNATION | 21 |
| IX. | ANNEXATION OF ADDITIONAL PROPERTY | 22 |
| | 1. Unilateral Annexation By Declarant | 21 |
| | 2. Other Annexation | 22 |
| X. | MORTGAGEE PROVISIONS | 22 |
| | 1. Notices of Action | 22 |
| | 2. Special FHLMC Provision | 23 |
| | 3. No Priority | 24 |
| | 4. Notice to Association | 24 |
| | 5. Amendments by Board | 24 |

BOOK 709 PAGE 705

Book: 709  Page: 703  Seq: 3

| Article | Section | Page |
|---|---|---|
| | 6. VA/HUD Approval | 24 |
| | 7. Applicability of Article X | 24 |
| | 8. Failure of Mortgagee to Respond | 24 |
| XI. | EASEMENTS | 24 |
| | 1. Easements for Encroachment and Overhang | 24 |
| | 2. Easements for Use and Enjoyment | 25 |
| | 3. Easements for Utilities | 26 |
| | 4. Easement for Entry | 26 |
| | 5. Easement for Maintenance | 26 |
| | 6. Easement for Entry Features | 27 |
| | 7. Construction and Sale Period Easement | 27 |
| | 8. Irrigation and Effluent Easements | 27 |
| | 9. Easement for Golf Course | 28 |
| | 10. High Water Easement | 28 |
| XII | CERTAIN RECREATIONAL FACILITIES WHICH ARE NOT COMMON PROPERTY | 29 |
| | 1. General | 29 |
| | 2. Operation of Club Facilities | 29 |
| | 3. Rights of Access and Parking | 29 |
| | 4. Amendments to this Article | 29 |
| | 5. Jurisdiction and Cooperation | 30 |
| XIII. | GENERAL PROVISIONS | 30 |
| | 1. Enforcement | 30 |
| | 2. Self-Help | 30 |
| | 3. Duration | 30 |
| | 4. Amendment | 31 |
| | 5. Partition | 31 |
| | 6. Gender and Grammar | 32 |
| | 7. Severability | 32 |
| | 8. Captions | 32 |
| | 9. Preparer | 32 |
| | 10. Perpetuities | 32 |
| | 11. Indemnification | 32 |
| | 12. Books and Records | 33 |
| | 13. Financial Review | 33 |
| | 14. Notice of Sale or Lease | 33 |
| | 15. Agreements | 34 |
| | 16. Implied Rights | 34 |
| | 17. Variances | 34 |
| | 18. Use of Recreational Facilities by Nonmembers | 34 |
| | 19. Litigation | 35 |

19CV01235

-TABLE OF EXHIBITS-

| Exhibit | Name |
|---------|------|
| A | Definitions |
| B | Property Submitted |
| C | Additional Property Which May Unilaterally Be Submitted By Declarant |
| D | Protected Wetlands and Natural Greenbelt Areas |
| E | Bylaws of Chapel Hills Community Association, Inc. |

BOOK 709 PAGE 707

Book: 709  Page: 703  Seq: 5

19CV01235

DECLARATION OF PROTECTIVE COVENANTS

FOR

CHAPEL HILLS


THIS DECLARATION is made on the date hereinafter set forth by S & B Douglas Venture, Inc., a Georgia corporation (hereinafter sometimes called "Declarant");


W I T N E S S E T H


WHEREAS, Declarant is the owner of the real property described in Article II, Section 1 of this Declaration; or, if not the owner, Declarant has the written consent of the owner to subject such property to the provisions of this Declaration; and

WHEREAS, Declarant desires to subject the real property described in Article II, Section 1 hereof to the provisions of this Declaration to create a residential community and to provide for the subjecting of other real property to the provisions of this Declaration;

NOW, THEREFORE, Declarant hereby declares that the real property described in Article II, Section 1 of this Declaration, including the improvements constructed or to be constructed thereon, is hereby subjected to the provisions of this Declaration and shall be held, sold, transferred, conveyed, used, occupied, and mortgaged or otherwise encumbered subject to the covenants, conditions, restrictions, easements, assessments, and liens, hereinafter set forth, which are for the purpose of protecting the value and desirability of, and which shall run with the title to, the real property hereby or hereafter made subject hereto, and shall be binding on all persons having any right, title, or interest in all or any portion of the real property now or hereafter made subject hereto, their respective heirs, legal representatives, successors, successors-in-title, and assigns and shall inure to the benefit of each and every owner of all or any portion thereof.


Article I
Definitions


Unless the context shall prohibit, certain words used in this Declaration shall be defined as set forth in Exhibit "A", attached hereto and by reference made a part hereof.


BOOK 709 PAGE 708
Book: 709 Page: 703 Seq: 6

## Article II
### Property Subject To This Declaration

Section 1. <u>Property Hereby Subjected To This Declaration</u>. The real property which is, by the recording of this Declaration, subject to the covenants and restrictions hereafter set forth and which, by virtue of the recording of this Declaration, shall be held, transferred, sold, conveyed, used, occupied, and mortgaged or otherwise encumbered subject to this Declaration is the real property described in Exhibit "B", attached hereto and by reference made a part hereof.

Section 2. <u>Other Property</u>. Only the real property described in Section 1 of this Article II is hereby made subject to this Declaration; provided, however, by one (1) or more Supplementary Declarations, Declarant and the Association have the right, but not the obligation, to subject other real property to this Declaration, as hereinafter provided.

## Article III
### Association Membership and Voting Rights

Section 1. <u>Membership</u>. Every Person who is the record owner of a fee or undivided fee interest in any Lot that is subject to this Declaration shall be deemed to have a membership in the Association. The foregoing is not intended to include Persons who hold an interest merely as security for the performance of an obligation, and the giving of a security interest shall not terminate the Owner's membership. No Owner, whether one or more Persons, shall have more than one (1) membership per Lot. In the event of multiple Owners of a Lot, votes and rights of use and enjoyment shall be as provided in this Declaration and in the Bylaws. Membership shall be appurtenant to and may not be separated from ownership of any Lot. The rights and privileges of membership, including the right to vote and to hold office, may be exercised by a member or the member's spouse, but in no event shall more than one (1) vote be cast nor office held for each Lot owned.

Section 2. <u>Voting</u>. Members shall be entitled to one (1) vote for each Lot owned. When more than one (1) Person holds an ownership interest in any Lot, the vote for such Lot shall be exercised as those Owners themselves determine and advise the Secretary prior to any meeting. In the absence of such advice, the Lot's vote shall be suspended in the event more than one (1) Person seeks to exercise it.

Section 3. <u>Parcels</u>. The Lots within a particular Parcel may be subject to additional covenants and/or the Lot Owners may all be members of another owners association in addition to the Association, but no such additional association shall be required except in the case of a condominium. Each Parcel, upon the affirmative vote, written consent, or a combination thereof, of Owners of at least a majority of the Lots within the Parcel, and the consent of the Declarant (so long as the Declarant owns any property for development and/or sale in the Community or has the right to unilaterally annex additional property to the Community) may request that the Association provide a higher level of service or special services for the benefit of Lots

-2-

19CV01235

in such parcel. The Association shall provide such services and the cost of such services shall be assessed against the benefitted Lots as a Parcel Assessment pursuant to Article IV hereof.

Article IV
Assessments

Section 1. Purpose of Assessment. The assessments provided for herein shall be used for the general purposes of promoting the recreation, health, safety, welfare, common benefit, and enjoyment of the Owners and occupants of Lots, including the maintenance of real and personal property, all as may be more specifically authorized from time to time by the Board of Directors.

Section 2. Creation of the Lien and Personal Obligation for Assessments. Each Owner of any Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, covenants and agrees to pay to the Association: (a) General Assessments; (b) Parcel Assessments, if any; (c) special assessments, such assessments to be established and collected as hereinafter provided; and (d) specific assessments against any particular Lot which are established pursuant to the terms of this Declaration, including, but not limited to, reasonable fines as may be imposed in accordance with the terms of this Declaration. General Assessments shall be levied for Association Expenses determined by the Board to benefit all Owners and Occupants. General Assessments shall be allocated among all Lots in the Community. Parcel Assessments shall be levied against Lots in a particular Parcel where the Board has determined that certain Association Expenses benefit only that Parcel.

All such assessments, together with late charges, interest, not to exceed the maximum rate permitted by law (but not to exceed eighteen (18%) percent per annum), costs, including, without limitation, reasonable attorney's fees actually incurred, shall be a charge on the land and shall be a continuing lien upon the Lot against which each assessment is made. Each such assessment, together with late charges, interest, costs, including, without limitation, reasonable attorney's fees actually incurred, shall also be the personal obligation of the Person who was the Owner of such Lot at the time the assessment fell due. Each Owner shall be personally liable for the portion of each assessment coming due while the Owner of a Lot, and each grantee of an Owner shall be jointly and severally liable for such portion thereof as may be due and payable at the time of conveyance; provided, however, the liability of a grantee for the unpaid assessments of its grantor shall not apply to any first Mortgagee taking title through foreclosure proceedings or deed in lieu of foreclosure.

The Association shall, within five (5) days after receiving a written request therefor and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Lot have been paid. A properly executed certificate of the Association as to the status of assessments on a Lot shall be binding upon the Association as of the date of issuance.

BOOK 709 PAGE 710

–3–

Book: 709 Page: 703 Seq: 8

19CV01235

General Assessments, Parcel Assessments and other assessments as determined by the Board shall be annual assessments, even if they are to be paid in installments due more frequently than annually. Assessments shall be paid in such manner and on such dates as may be fixed by the Board of Directors, which may include, without limitation, acceleration, upon ten (10) days' written notice, of the annual assessment for delinquents. Unless otherwise provided by the Board, the assessment shall be paid in annual installments.

Section 3.   Computation.   It shall be the duty of the Board to prepare a budget covering the estimated costs of operating the Association during the coming year, which may include a capital contribution or reserve in accordance with a capital budget separately prepared and separate line items for Parcel expenses for each Parcel. The amount of all estimated expenses to be incurred for the sole benefit of a particular Parcel shall be determined for each Parcel and that portion of the total estimated Association Expenses attributable to a particular Parcel shall be allocated equally among the Lots in the Parcel and shall be levied as Parcel Assessments. The remaining Association Expenses shall be levied as General Assessments. The General Assessment to be levied against each Lot shall be in an equal amount for all Lots.

The Board shall cause the budget and the assessments to be levied against each Lot for the following year to be delivered to each member at least thirty (30) days prior to the end of the current fiscal year. The budget and the assessment shall become effective unless disapproved at a meeting by a Majority of the Total Association Vote. Notwithstanding the foregoing, however, in the event the membership disapproves the proposed budget or the Board fails for any reason so to determine the budget for the succeeding year, then and until such time as a budget shall have been determined, as provided herein, the budget in effect for the then current year shall continue for the succeeding year.

Section 4.   Special Assessments.   In addition to the other assessments authorized herein, the Association may levy special assessments from time to time if approved at a meeting by two-thirds (2/3) of the Total Association Vote.  Special assessments shall be paid as determined by the Board, and the Board may permit special assessments to be paid in installments extending beyond the fiscal year in which the special assessment is imposed. Special assessments shall be allocated among Lots in the same manner as General Assessments.

Section 5.   Lien for Assessments.   All sums assessed against any Lot pursuant to this Declaration, together with late charges, interest, costs, including, without limitation, reasonable attorney's fees actually incurred, as provided herein, shall be secured by a lien on such Lot in favor of the Association.  Such lien shall be superior to all other liens and encumbrances on such Lot, except for (a) liens for all ad valorem taxes; or (b) liens for all sums unpaid on a first Mortgage or on any Mortgage to Declarant duly recorded in the land records of the county where the Community is located and all amounts advanced pursuant to such Mortgage and secured thereby in accordance with the terms of such instrument.

-4-

19CV01235

All other Persons acquiring liens or encumbrances on any Lot after this Declaration shall have been recorded in such records shall be deemed to consent that such liens or encumbrances shall be inferior to future liens for assessments, as provided herein, whether or not prior consent is specifically set forth in the instruments creating such liens or encumbrances.

Section 6.   Effect of Nonpayment of Assessments: Remedies of the Association. Any assessments or installments thereof which are not paid when due shall be delinquent. Any assessment or installment thereof delinquent for a period of more than ten (10) days shall incur a late charge in an amount as the Board may from time to time determine. The Association shall cause a notice of delinquency to be given to any member who has not paid within ten (10) days following the due date. If the assessment is not paid within thirty (30) days, a lien, as herein provided, shall attach and, in addition, the lien shall include interest, not to exceed the maximum rate permitted by law (but not to exceed eighteen (18%) percent per annum) on the principal amount due, all late charges from the date first due and payable, all costs of collection, including, without limitation, reasonable attorney's fees actually incurred, and any other amounts provided or permitted by law. In the event that the assessment remains unpaid after sixty (60) days, the Association may, as the Board shall determine, institute suit to collect such amounts and/or to foreclose its lien. Each Owner, by acceptance of a deed or as a party to any other type of a conveyance, vests in the Association or its agents the right and power to bring all actions against such Owner personally, for the collection of such charges as a debt or to foreclose the aforesaid lien in the same manner as other liens for the improvement of real property. The lien provided for in this Article shall be in favor of the Association and shall be for the benefit of all other Owners. The Association, acting on behalf of the Owners, shall have the power to bid on the Lot at any foreclosure sale or to acquire, hold, lease, mortgage, or otherwise convey the same.

No Owner may waive or otherwise exempt himself from liability for the assessments provided for herein, including, by way of illustration, but not limitation, abandonment of the Lot. No diminution or abatement of any assessment shall be claimed or allowed by reason of any alleged failure of the Association to take some action or perform some function required to be taken or performed by the Association under this Declaration or the Bylaws, or for inconvenience or discomfort arising from the making of repairs or improvements which are the responsibility of the Association, or from any action taken by the Association to comply with any law, ordinance, or with any order or directive of any municipal or other governmental authority, the obligation to pay assessments being a separate and independent covenant on the part of each Owner.

All payments shall be applied first to costs, then to late charges, then to interest and then to delinquent assessments.

Section 7.   Date of Commencement of Assessments. The assessments provided for herein shall commence as to a Lot subject to this Declaration on the first day of the month following the conveyance of such Lot to a Person who has not purchased such Lot for the purpose of construction of a residence and resale of such Lot and residence. Assessments shall be due and payable in

BOOK 709 PAGE 712

a manner and on a schedule as the Board of Directors may provide. Lots which have not been so conveyed shall not be subject to assessment. The first annual assessment shall be adjusted according to the number of months then remaining in that fiscal year.

Section 8.  Specific Assessments.  The Board shall have the power to specifically assess pursuant to this Section as, in its discretion, it shall deem appropriate.  Failure of the Board to exercise its authority under this Section shall not be grounds for any action against the Association or the Board of Directors and shall not constitute a waiver of the Board's right to exercise its authority under this Section in the future with respect to any expenses, including an expense for which the Board has not previously exercised its authority under this Section.  Fines levied pursuant to Article XIII, Section 1 of this Declaration and the costs of maintenance performed by the Association which the Owner is responsible for under Article V, Sections 1 and 2 of this Declaration shall be specific assessments.  The Board may also specifically assess Owners for the following Association expenses (except for expenses incurred for maintenance and repair of items which are the maintenance responsibility of the Association as provided herein):

(a)  Expenses of the Association which benefit less than all of the Lots may be specifically assessed equitably among all of the Lots which are benefitted according to the benefit received.

(b)  Expenses of the Association which benefit all Lots, but which do not provide an equal benefit to all Lots, may be assessed equitably among all Lots according to the benefit received.

Section 9.  Budget Deficits During Declarant Control.  For so long as the Declarant has the authority to appoint the directors and officers of the Association, Declarant may:  (i) advance funds to the Association sufficient to satisfy the deficit, if any, between the actual operating expenses of the Association (but specifically not including an allocation for capital reserves), and the sum of the annual, special and specific assessments collected by the Association in any fiscal year, and such advances shall be evidenced by promissory notes from the Association in favor of the Declarant; or (ii) cause the Association to borrow such amount from a commercial lending institution at the then prevailing rates for such a loan in the local area of the Community.  The Declarant in its sole discretion may guarantee repayment of such loan, if required by the lending institution, but no Mortgage secured by the Common Property or any of the improvements maintained by the Association shall be given in connection with such loan.

Article V
Maintenance; Conveyance of Common Property to Association

Section 1.  Association's Responsibility.  The Association shall maintain and keep in good repair the Common Property.  This maintenance shall include, without limitation, maintenance, repair, and replacement, subject to any insurance then in effect, of all landscaping and improvements situated on the Common Property.  The Association shall also maintain:  (a) all entry

-6-

BOOK 709 PAGE 13

Book: 709  Page: 703  Seq: 11

features for the Community including the expenses for water and electricity, if any, provided to all such entry features; (b) any Natural Greenbelt Area; (c) streetscapes and greenbelt originally installed by the Declarant within the Community; (d) landscaping originally installed by the Declarant whether or not such landscaping is on a Lot; (e) private streets, if any; (f) all street signs originally installed by the Declarant, if any; (g) all pedestrian/cart paths located on Common Property; (h) lakes which may exist within the Community or which are made available for the use and enjoyment of Owners and Occupants within the Community; (i) all storm water detention facilities serving the Community; and (j) all property outside of Lots located within the Community which was originally maintained by Declarant.

In addition, the Association shall have the right, but not the obligation, to maintain and provide services for other property not owned by the Association, whether located within or without 'the boundaries of the Community, and to enter into easements and covenants to share costs agreements regarding such property where the Board has determined that this would benefit Owners. Such maintenance and provision of services shall, without limitation, include maintenance of pedestrian/cart paths located in public rights-of-way and maintenance of property within a particular Parcel or area of the Community if so required pursuant to an amendment to the Declaration executed by Declarant or pursuant to a contract entered into by the Association.

In the event that the Association determines that the need for maintenance, repair, or replacement, which is the ·responsibility of the Association hereunder, is caused through the willful ·or negligent act of an Owner, or the family, guests, lessees, or invitees of any Owner, and is not covered or paid for by insurance, in whole or in part, then the Association may perform such maintenance, repair or replacement at such Owner's sole cost and expense, and all costs thereof shall be added to and become a part of the assessment to which such Owner is subject and shall become a lien against the Lot of such Owner.

The foregoing maintenance costs shall be assessed as a part of the General Assessment, Parcel Assessments or specific assessments, as determined by the Board in accordance with the Declaration. The foregoing maintenance shall be performed consistent with the Community-Wide Standard.

Section 2. Owner's Responsibility. Except as provided in Section 1 above, all maintenance of the Lot and all structures, parking areas, landscaping, and other improvements thereon shall be the sole responsibility of the Owner thereof, who shall maintain such Lot in a manner consistent with the Community-Wide Standard and this Declaration. In the event that the Board of Directors of the Association determines that any Owner has failed or refused to discharge properly any of such Owner's obligations with regard to the maintenance, repair, or replacement of items for which such Owner is responsible hereunder, the Association shall, except in an 'emergency situation, give the Owner written notice of the Association's intent to provide such necessary maintenance, repair, or replacement at the Owner's sole cost and expense. The notice shall set forth with reasonable particularity the maintenance, repairs, or replacement deemed necessary. The Owner shall have ten (10) days after receipt of such notice within which to complete such

-7-

maintenance, repair, or replacement, or, in the event that such maintenance, repair, or replacement is not capable of completion within a ten (10) day period, to commence such work which shall be completed within a reasonable time.  If any Owner does not comply with the provisions hereof, the Association may provide any such maintenance, repair, or replacement at such Owner's sole cost and expense, and all costs shall be added to and become a part of the assessment to which such Owner is subject and shall become a lien against the Lot.

Section 3.  <u>Party Walls and Party Fences</u>.

(a)  <u>General Rules of Law to Apply</u>.  Each wall or fence built as a part of the original construction on the Lots which shall serve and separate any two (2) adjoining Lots shall constitute a party wall or fence and, to the extent not inconsistent with the provisions of this Section, the general rules of law regarding party walls and liability for property damage due to negligence or willful acts or omissions shall apply thereto.

(b)  <u>Sharing of Repair and Maintenance</u>.  The cost of reasonable repair and maintenance of a party wall or fence shall be shared by the Owners who make use of the wall or fence in equal proportions.

(c)  <u>Damage and Destruction</u>.  If a party wall or fence is destroyed or damaged by fire or other casualty, then to the extent that such damage is not covered by insurance and repaired out of the proceeds of insurance, any Owner who has used the wall may restore it, and if the other Owner or Owners thereafter make use of the wall, they shall contribute to the cost of restoration thereof in equal proportions without prejudice, however, to the right of any such Owners to call for a larger contribution from the others under any rule of law regarding liability for negligent or willful acts or omissions.

(d)  <u>Right to Contribution Runs With Land</u>.  The right of any Owner to contribution from any other Owner under this Section shall be appurtenant to the land and shall pass to such Owner's successors-in-title.

(e)  <u>Arbitration</u>.  In the event of any dispute arising concerning a party wall or fence, or under the provisions of this Section, each party shall appoint one (1) arbitrator.  Should any party refuse to appoint an arbitrator within ten (10) days after written request therefor by the Board of Directors, the Board shall appoint an arbitrator for the refusing party.  The arbitrators thus appointed shall appoint one (1) additional arbitrator and the decision by a majority of all three (3) arbitrators shall be binding upon the parties and shall be a condition precedent to any right of legal action that either party may have against the other.

Section 4.  <u>Conveyance of Common Property by Declarant to Association</u>.  The Declarant may transfer or convey to the Association any personal property and any improved or unimproved real property, leasehold, easement, or other property interest, including, without limitation, lakes and dams.  Such conveyance shall be accepted by the Association, and the property shall thereafter be Common Property to be maintained by the Association for

-8-

BOOK 709 PAGE 713

the benefit of all or a part of its members. Declarant shall not be required to make any improvements whatsoever to property to be conveyed and accepted pursuant to this Section.

## Article VI
## Use Restrictions and Rules

Section 1. General. This Article, beginning at Section 2, sets out certain use restrictions which must be complied with by all Owners and Occupants. These use restrictions may only be amended in the manner provided in Article XIII, Section 4, hereof regarding amendment of this Declaration. In addition, the Board may, from time to time, without consent of the members, promulgate, modify, or delete other use restrictions and rules and regulations applicable to the Community. Such use restrictions and rules shall be distributed to all Owners and Occupants prior to the date that they are to become effective and shall thereafter be binding upon all Owners and Occupants until and unless overruled, cancelled, or modified in a regular or special meeting by a Majority of the Total Association Vote.

Section 2. Residential Use. All Lots shall be used for residential purposes exclusively. No business or business activity shall be carried on, in or upon any Lot at any time except with the written approval of the Board. Leasing of a Lot shall not be considered a business or business activity. However, the Board may permit a Lot to be used for business purposes so long as such business, in the sole discretion of the Board, does not otherwise violate the provisions of the Declaration or Bylaws, does not create a disturbance and does not unduly increase traffic flow or parking congestion. The Board may issue rules regarding permitted business activities.

Section 3. Architectural Standards. No exterior construction, alteration, addition, or erection of any nature whatsoever shall be commenced or placed upon any part of the Community, except such as is installed by the Declarant, or as is approved in accordance with this Section, or as is otherwise expressly permitted herein. No exterior construction, addition, erection, or alteration shall be made unless and until plans and specifications showing at least the nature, kind, shape, height, materials, and location shall have been submitted in writing to and approved by an Architectural Review Committee ("ARC"). The ARC may be established such that it is divided into two (2) subcommittees, with one (1) subcommittee having jurisdiction over modifications and the other having jurisdiction over new construction. The Board may employ architects, engineers, or other Persons as it deems necessary to enable the ARC to perform its review. The ARC may, from time to time, delegate any of its rights or responsibilities hereunder to one (1) or more duly licensed architects or other qualified Persons, which shall have full authority to act on behalf of the committee for all matters delegated. Written design guidelines and procedures shall be promulgated for the exercise of this review, which guidelines may provide for a review fee. So long as the Declarant owns any property for development and/or sale in the Community or has the right to unilaterally annex additional property to the

-9-

Community, the Declarant shall have the right to appoint all members of the ARC. Upon the expiration or earlier surrender in writing of such right, the Board shall appoint the members of the ARC.

If the ARC fails to approve or to disapprove submitted plans and specifications within thirty (30) days after the plans and specifications have been submitted to it, approval will not be required, and this Section will be deemed to have been fully complied with. As a condition of approval under this Section, each Owner, on behalf of such Owner and such Owner's successors-in-interest, shall assume all responsibilities for maintenance, repair, replacement, and insurance to and on any change, modification, addition, or alteration. In the discretion of the ARC, an Owner may be made to verify such condition of approval by a recordable written instrument acknowledged by such Owner on behalf of such Owner and such Owner's successors-in-interest. The ARC shall be the sole arbiter of such plans and may withhold approval for any reason, including purely aesthetic considerations, and it shall be entitled to stop any construction in violation of these restrictions. Any member of the Board or its representatives shall have the right, during reasonable hours and after reasonable notice, to enter upon any property to inspect for the purpose of ascertaining whether or not these restrictive covenants have been or are being complied with. Such Person or Persons shall not be deemed guilty of trespass by reason of such entry. In addition to any other remedies available to the Association, in the event of noncompliance with this Section, the Board may, as provided in Article XIII, Section 1, hereof, record in the appropriate land records a notice of violation naming the violating Owner.

PLANS AND SPECIFICATIONS ARE NOT APPROVED FOR ENGINEERING OR STRUCTURAL DESIGN OR QUALITY OF MATERIALS, AND BY APPROVING SUCH PLANS AND SPECIFICATIONS NEITHER THE ARC, THE MEMBERS THEREOF, NOR THE ASSOCIATION ASSUMES LIABILITY OR RESPONSIBILITY THEREFOR, NOR FOR ANY DEFECT IN ANY STRUCTURE CONSTRUCTED FROM SUCH PLANS AND SPECIFICATIONS. NEITHER DECLARANT, THE ASSOCIATION, THE ARC, THE BOARD, NOR THE OFFICERS, DIRECTORS, MEMBERS, EMPLOYEES, AND AGENTS OF ANY OF THEM SHALL BE LIABLE IN DAMAGES TO ANYONE SUBMITTING PLANS AND SPECIFICATIONS TO ANY OF THEM FOR APPROVAL, OR TO ANY OWNER OF PROPERTY AFFECTED BY THESE RESTRICTIONS BY REASON OF MISTAKE IN JUDGMENT, NEGLIGENCE, OR NONFEASANCE ARISING OUT OF OR IN CONNECTION WITH THE APPROVAL OR DISAPPROVAL OR FAILURE TO APPROVE OR DISAPPROVE ANY SUCH PLANS OR SPECIFICATIONS. EVERY PERSON WHO SUBMITS PLANS OR SPECIFICATIONS AND EVERY OWNER AGREES THAT SUCH PERSON OR OWNER WILL NOT BRING ANY ACTION OR SUIT AGAINST DECLARANT, THE ASSOCIATION, THE ARC, THE BOARD, OR THE OFFICERS, DIRECTORS, MEMBERS, EMPLOYEES, AND AGENTS OF ANY OF THEM TO RECOVER ANY DAMAGES AND HEREBY RELEASES, REMISES, QUITCLAIMS, AND COVENANTS NOT TO SUE FOR ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION ARISING OUT OF OR IN CONNECTION WITH ANY JUDGMENT, NEGLIGENCE, OR NONFEASANCE AND HEREBY WAIVES THE PROVISIONS OF ANY LAW WHICH PROVIDES THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS, DEMANDS, AND CAUSES OF ACTION NOT KNOWN AT THE TIME THE RELEASE IS GIVEN.

Section 4. Signs. No sign of any kind shall be erected by an Owner or Occupant within the Community without the prior written consent of the ARC. Notwithstanding the foregoing, the Board and the Declarant shall have the right to erect reasonable and appropriate signs. "For Sale" and "For

-10-

Rent" signs and security signs consistent with the Community-Wide Standard and any signs required by legal proceedings may be erected upon any Lot. The provisions of this Section shall not apply to any Person holding a Mortgage who becomes the Owner of any Lot as purchaser at a judicial or foreclosure sale conducted with respect to a first Mortgage or as transferee pursuant to any proceeding in lieu thereof.

Section 5. <u>Vehicles</u>. The term "vehicles," as used herein, shall include, without limitation, motor homes, boats, trailers, motorcycles, minibikes, scooters, go-carts, golf carts, trucks, campers, buses, vans, and automobiles. Unless and except to the extent that the Occupants of a Lot shall have more vehicles than the number of parking areas serving their Lot, all vehicles shall be parked within such parking areas. Where the Lot contains a garage, "parking areas" shall refer to the number of garage parking spaces. Garage doors shall be kept closed at all times, except during times of ingress and egress from the garage.

No vehicle may be left upon any portion of the Community, except in a garage or other area designated by the Board, for a period longer than five (5) days if it is unlicensed or if it is in a condition such that it is incapable of being operated upon the public highways. After such five (5) day period, such vehicle shall be considered a nuisance and may be removed from the Community. Any towed vehicle, boat, recreational vehicle, motor home, or mobile home regularly stored in the Community or temporarily kept in the Community, except if kept in a garage or other area designated by the Board, for periods longer than twenty-four (24) hours each shall be considered a nuisance and may be removed from the Community. Trucks with mounted campers which are an Owner's or Occupant's primary means of transportation shall not be considered recreational vehicles, provided they are used on a regular basis for transportation and the camper is stored out of public view upon removal.

No motorized vehicles shall be permitted on pathways or unpaved Common Property except for public safety vehicles, golf carts, and vehicles authorized by the Board.

All golf carts to be operated within the Community must be operated on designated golf cart paths or within pathways marked on streets and roads within the Community. Privately owned golf carts must be parked in the garages serving the Lots or in spaces or areas designated by the Board or its designee.

Section 6. <u>Parking</u>. Vehicles shall be parked only in appropriate parking spaces or designated areas. All parking shall be subject to such rules and regulations as the Board may adopt.

Section 7. <u>Leasing</u>. Lots may be leased for residential purposes. All leases shall have a minimum term of at least six (6) months. All leases shall require, without limitation, that the tenant acknowledge receipt of a copy of the Declaration, Bylaws, use restrictions, and rules and regulations of the Association. The lease shall also obligate the tenant to comply with the foregoing and shall provide that in the event of noncompliance, the Board,

in addition to any other remedies available to it, may evict the tenant on behalf of the Owner and specifically assess all costs associated therewith against the Owner and the Owner's property.

Section 8.  <u>Occupants Bound</u>.  All provisions of the Declaration, Bylaws, and of any rules and regulations, use restrictions or design guidelines promulgated pursuant thereto which govern the conduct of Owners and which provide for sanctions against Owners shall also apply to all Occupants even though Occupants are not specifically mentioned.  Fines may be levied against Owners or Occupants.  If a fine is first levied against an Occupant and is not paid timely, the fine may then be levied against the Owner.

Section 9.  <u>Animals and Pets</u>.  No animals, livestock, or poultry of any kind may be raised, bred, kept, or permitted on any Lot, with the exception of dogs, cats, or other usual and common household pets in reasonable number, as determined by the Board.  No pets shall be kept, bred or maintained for any commercial purpose.

Section 10.  <u>Nuisance</u>.  It shall be the responsibility of each Owner and Occupant to prevent the development of any unclean, unhealthy, unsightly, or unkempt condition on his or her property.  No property within the Community shall be used, in whole or in part, for the storage of any property or thing that will cause such Lot to appear to be in an unclean or untidy condition or that will be obnoxious to the eye; nor shall any substance, thing, or material be kept that will emit foul or obnoxious odors or that will cause any noise or other condition that will or might disturb the peace, quiet, safety, comfort, or serenity of the occupants of surrounding property.  No noxious or offensive activity shall be carried on within the Community, nor shall anything be done tending to cause embarrassment, discomfort, annoyance, or nuisance to any Person using any property within the Community.  There shall not be maintained any plants or animals or device or thing of any sort whose activities or existence in any way is noxious, dangerous, unsightly, unpleasant, or of a nature as may diminish or destroy the enjoyment of the Community.  Without limiting the generality of the foregoing, no speaker, horn, whistle, siren, bell, amplifier or other sound device, except such devices as may be used exclusively for security purposes, shall be located, installed or maintained upon the exterior of any Lot unless required by law.

Section 11.  <u>Unsightly or Unkempt Conditions</u>.  The pursuit of hobbies or other activities, including specifically, without limiting the generality of the foregoing, the assembly and disassembly of motor vehicles and other mechanical devices, which might tend to cause disorderly, unsightly, or unkempt conditions, shall not be pursued or undertaken in any part of the Community.

Section 12.  <u>Antennas</u>.  No exterior antennas of any kind shall be placed, allowed, or maintained upon any portion of the Community, including any Lot, without the prior written consent of the ARC.  No free standing antennas whatsoever shall be placed on any Lot including, without limitation, satellite dishes.  However, the Board shall have the right (but shall not be obligated), to erect a master antenna, satellite dish or other similar master system for the benefit of one (1) or more Parcels or for the benefit of the

-12-

entire Community. Each Owner and Occupant acknowledges that this provision benefits all Owners and Occupants and each Owner and Occupant agrees to comply with this provision despite the fact that the erection of an outdoor antenna or similar device would be the most cost-effective way to transmit or receive the signals sought to be transmitted or received.

Section 13.   Tree Removal.   No trees that are more than six (6) inches in diameter at a point two (2) feet above the ground shall be removed without the prior written consent of the ARC. However, no flowering trees, including, without limitation, dogwood trees, regardless of their diameter, shall be removed without the prior written consent of the ARC.

Section 14.   Drainage.   Catch basins and drainage areas are for the purpose of natural flow of water only. No obstructions or debris shall be placed in these areas. No Owner or Occupant may obstruct or rechannel the drainage flows after location and installation of drainage swales, storm sewers, or storm drains. Declarant hereby reserves the benefit of Declarant and the Association and their respective successors and assigns a perpetual easement across all Community property for the purpose of altering drainage and water flow. Rights exercised pursuant to such reserved easement shall be exercised with a minimum of interference to the quiet enjoyment of affected property, reasonable steps shall be taken to protect such property, and damage shall be repaired by the Person causing the damage at its sole expense.

Section 15.   Sight Distance at Intersections.   All property located at street intersections shall be landscaped so as to permit safe sight across the street corners. No fence, wall, hedge, or shrub planting shall be placed or permitted to remain where it would create a traffic or sight problem.

Section 16.   Garbage Cans, Woodpiles, Etc.   All garbage cans, woodpiles, swimming pool pumps, filters and related equipment, air conditioning compressors and other similar items shall be located or screened so as to be concealed from view of neighboring streets and property. All rubbish, trash, and garbage shall be regularly removed and shall not be allowed to accumulate. Declarant, however, hereby expressly reserves the right to dump and bury rocks and trees on property within the Community as needed for efficient construction and to allow developers and builders within the Community to bury rocks and trees removed from a building site on such building site. Trash, garbage, debris, or other waste matter of any kind may not be burned within the Community.

Section 17.   Subdivision of Lot.   No Lot shall be subdivided or its boundary lines changed except with the prior written approval of the ARC. Declarant, however, hereby expressly reserves the right to replat any Lot or Lots owned by Declarant. Any such division, boundary line change, or replatting shall not be in violation of the applicable subdivision and zoning regulations.

Section 18.   Guns.   The use of firearms in the Community is prohibited. The term "firearms" includes without limitation "B-B" guns, pellet guns, and firearms of all types.

-13-

Section 19. <u>Fences</u>. No fence or fencing type barrier of any kind shall be placed, erected, allowed, or maintained upon any portion of the Community, including any Lot, without the prior written consent of the ARC. The ARC may issue guidelines detailing acceptable fence styles or specifications, but in no event may a chain link or barbed wire fence be approved.

Section 20. <u>Utility Lines</u>. No overhead utility lines, including lines for cable television, shall be permitted within the Community, except for temporary lines as required during construction and lines installed by or at the request of Declarant.

Section 21. <u>Air-Conditioning Units</u>. Except as may be permitted by the ARC, no window air conditioning units may be installed.

Section 22. <u>Lighting</u>. Except as may be permitted by the ARC, exterior lighting visible from the street shall not be permitted except for (a) approved lighting as originally installed on a Lot; (b) one (1) decorative post light, (c) street lights in conformity with an established street lighting program for the Community; (d) seasonal decorative lights at Christmas; or (e) front house illumination of model homes.

Section 23. <u>Artificial Vegetation, Exterior Sculpture, and Similar Items</u>. No artificial vegetation shall be permitted on the exterior of any property. Exterior sculpture, fountains, flags, and similar items must be approved by the ARC.

Section 24. <u>Energy Conservation Equipment</u>. No solar energy collector panels or attendant hardware or other energy conservation equipment shall be constructed or installed unless they are an integral and harmonious part of the architectural design of a structure, as determined in the sole discretion of the ARC.

Section 25. <u>Swimming Pools</u>. No swimming pool shall be constructed, erected or maintained upon any Lot without the prior written consent of the ARC and in no event shall any above-ground swimming pool be permitted.

Section 26. <u>Gardens, Play Equipment and Pools</u>. No vegetable garden, hammock, statuary, play equipment (including, without limitation, basketball goals), or pool which has received the approval of the ARC, if required by this Declaration, and is to be erected on any Lot may be located other than between the rear dwelling line and the rear lot line, without the prior written consent of the ARC.

Section 27. <u>Mailboxes</u>. All mailboxes located on Lots shall be of a similar style approved by the ARC and shall be installed initially by the original home builder. Replacement mailboxes may be installed after the type has been approved in writing by the ARC.

Section 28. <u>Exteriors</u>. Any change to the exterior color of any improvement located on a Lot, including, without limitation, the dwelling, must be approved by the ARC.

-14-

BOOK 709 PAGE 721

Section 29.  Clotheslines.  No exterior clotheslines of any type shall be permitted upon any Lot.

Section 30.  Exterior Security Devices.  No exterior security devices, including, without limitation, window bars, shall be permitted on any residence or Lot.  Signs placed on the Lot or the exterior of the residence stating that such residence is protected by a security system shall not be deemed to constitute an exterior security device.

Section 31.  Entry Features.  Owners shall not alter, remove or add improvements to any entry features constructed by the Declarant on any Lot, or any part of any easement area associated therewith without the prior written consent of the ARC.

Section 32.  Lakes.  This Section and rules, use restrictions and design guidelines issued by the Board or its designee shall govern the use of such lakes as may exist in the Community or such lakes as are made available for the use of all Owners and Occupants in the Community.  Fishing shall be permitted so long as a license is obtained from the appropriate governmental authority.  Ice skating, water skiing and swimming shall not be permitted. Except as may be permitted by the Board or its designee, no boats, other than canoes, paddle boats and fishing boats powered by electric trolling motors, shall be permitted on any lake.  No Owner may construct a dock.  Retaining walls and similar structures shall not be installed without the prior written approval of the ARC.

Owners shall have no riparian rights with respect to the waters in any lake or stream within the Community and shall not be permitted to withdraw water from any lake or stream as may exist in the Community or as are made available for the use of all Owners and Occupants within the Community without the prior written consent of the Board or its designee.  As long as the Declarant has the right unilaterally to subject property to this Declaration or owns any property in the Community for development and/or sale, Declarant may authorize the owner of the Club, and may grant such owner an easement, as necessary, to withdraw water from such lakes or streams without the consent of the Association.

Notwithstanding anything contained in this Declaration to the contrary, no vegetable gardens, hammocks, statuary, swing sets or similar play equipment, basketball goals or similar athletic equipment, boats or boating equipment, pools, fences, clothes drying equipment, dog houses, dog runs or other pet enclosures, signs, retaining walls or any other structure or thing which, in the sole discretion of the Board or its designee, tends to detract from the appearance of the Community, and especially the lake or the golf course, shall be permitted on any Lot which abuts or is appurtenant to the golf course or any lake within the Community or any lake made available for the use of all Owners and Occupants within the Community, without the prior written consent of the Board or its designee.

The Board may authorize special use groups, including, without limitation, a boating club to use any lake on a limited basis.  The Board may except such groups from use restrictions promulgated by the Board under this Article which would otherwise be applicable to such groups.

-15-

BOOK **709** PAGE **722**

Book: 709  Page: 703  Seq: 20

19CV01235

Section 33.  Natural Greenbelt Area.  Each Natural Greenbelt Area shall be preserved in its natural state, except as shall be reasonably necessary in the development and maintenance of cart paths, utility lines and drainage structures.  Except for the foregoing, no trees or other naturally occurring vegetation shall be removed from a Natural Greenbelt Area without the consent of EPA.

Section 34.  Wetlands.

(a)  The Protected Wetlands identified on Exhibit "D", attached hereto and by reference made a part hereof shall be perpetually protected as jurisdictional wetlands under the authority of the the U.S. Environmental Protection Agency ("EPA") and the U.S. Department of the Army, Corps of Engineers ("Corps").  Accordingly, no Person, including, without limitation, the Declarant, the Association, any Owner, or any successor, assign, agent, employee, or servant, of any of them, shall in any way alter the vegetation, soils, or hydrology of the Protected Wetlands by action or actions taken, whether within or without the boundaries of the Protected Wetlands except as hereinafter provided.  The intent of the Declarant in placing these restrictions upon the use of the Protected Wetlands is that the Protected Wetlands shall remain a wetland in perpetuity, and shall not be altered from that state by human intervention.  The actions encompassed as prohibited by this restriction shall include, but shall not be limited to, the following: removal of beavers or beaver dams or otherwise interfering with beavers, clearing, grading, foresting, earthmoving, diking, ditching, burning, filling, and all similar actions; provided however, the Declarant, so long as the Declarant owns any property for development and/or sale in the Community or has the right to unilaterally annex additional property to the Community, and/or the Association, with the written consent of the Declarant (so long as the Declarant owns any property for development and/or sale in the Community) may undertake the following activities in the Protected Wetlands:

(i)  Construction and maintenance for use by the public of such nature trails, observation decks and interpretive nature displays throughout the Protected Wetlands as may be permitted from time to time by EPA and the Corps;

(ii)  Construction and maintenance of such utility lines or other improvements as may now exist within the Protected Wetlands or as may hereafter be permitted by EPA and the Corps through any nationwide permit for utility lines or sewer crossings or otherwise;

(iii)  Removal of any beaver dam that is blocking any road or nature trail underpass or that causes flooding on roads, nature trails or properties outside the Protected Wetlands described on Exhibit "D" hereof; and

(iv)  Any other construction, improvement, maintenance, use or activity to enhance the mitigation area that may be permitted in or affecting the Protected Wetlands from time to time by written consent of EPA and the Corps.

(b)  Declarant shall retain all other customary rights of ownership, including, but not limited to, the exclusive possession of the Protected

-16-

Wetlands, the right to use the Protected Wetlands in any manner not prohibited by this Declaration and which would not defeat or diminish the conservation purpose of the restriction, and the right to transfer or assign its interest in the Protected Wetlands to the Association as provided in Article V, Section 4 hereof. Upon taking title to the Protected Wetlands, the Association shall be bound by this Section to the same extent as the Declarant or any other Owner of the Protected Wetlands.

(c)   EPA and/or the Corps, as an express third party beneficiaries hereof, are hereby specifically granted authority to enforce the provisions of this Section 34. Appropriate remedy for violation of this Section 34 is contemplated by the Declarant to include, without limitation, injunctive relief to restrain such violation and restoration of the Protected Wetlands to wetland conditions. The authority to enforce this Section 34 hereby granted to EPA and the Corps shall not preclude or diminish the rights of any other Persons, whether at law or in equity, to enforce any provision hereof.

(d)   The Declarant, and any successor-in-title to the Declarant by accepting a deed to all or any portion of the Protected Wetlands, agrees that, in the event the restrictions contained in this Section 34 are terminated by operation of law, the then Owner of the Protected Wetlands, shall renew this restriction and, if necessary, will execute and record an appropriate, effective and enforceable substitute instrument, and shall provide a copy thereof to EPA and the Corps at the Regional Offices of such entities, serving the area where the property is located.

## Article VII
### Insurance and Casualty Losses

Section 1.   Insurance on Common Property.   The Board of Directors or the duly authorized agent of the Association shall have the authority to and shall obtain or cause to be obtained insurance for all insurable improvements whether or not located on the Common Property which the Association is obligated to maintain. This insurance shall provide, at a minimum, fire and extended coverage, including vandalism and malicious mischief, and shall be in an amount sufficient to cover the full replacement cost of any repair or reconstruction in the event of damage or destruction from any such hazard. Alternatively, the Board may purchase "all-risk" coverage in like amounts.

The Board shall obtain a public liability policy applicable to the Common Property covering the Association and its members for all damage or injury caused by the negligence of the Association or any of its members or agents, and, if reasonably available, directors' and officers' liability insurance. The public liability policy shall have a combined single limit of at least One Million ($1,000,000.00) Dollars.

The Board is hereby authorized to contract with or otherwise arrange to obtain the insurance coverage required hereunder through the Declarant and to reimburse Declarant for the cost thereof, and Declarant shall be authorized, but not obligated, to purchase such insurance coverage for the benefit of the Association and the Owners upon Declarant and the Association

-17-

agreeing upon the terms and conditions applicable to reimbursement by the Association for costs incurred by Declarant in obtaining such coverage. Notwithstanding anything contained in this Declaration to the contrary, the Board shall not be required to comply with the provisions of this Article if the Board has contracted for or otherwise arranged to obtain the required insurance coverage through the Declarant.

Premiums for all insurance shall be Association Expenses. The policies may contain a reasonable deductible, and the amount thereof shall not be subtracted from the face amount of the policy in determining whether the insurance at least equals the full replacement cost.

. All such insurance coverage obtained by the Board of Directors shall be written in the name of the Association, as trustee for the respective benefitted parties, as further identified in subparagraph (b), below. Such insurance shall be governed by the provisions hereinafter set forth:

(a) All policies shall be written with a company authorized to do business in Georgia.

.(b) Exclusive authority to adjust losses under policies obtained by the Association shall be vested in the Association's Board of Directors; provided, however, no Mortgagee having an interest in such losses may be prohibited from participating in the settlement negotiations, if any, related thereto.

(c) In no event shall the insurance coverage obtained and maintained by the Association's Board of Directors hereunder be brought into contribution with insurance purchased by individual Owners, Occupants, or their Mortgagees, and the insurance carried by the Association shall be primary.

(d) All casualty insurance policies shall have an inflation guard endorsement and an agreed amount endorsement if these are reasonably available and all insurance policies shall be reviewed annually by one (1) or more qualified persons, at least one (1) of whom must be in the real estate industry and familiar with construction in the county where the Community is located.

(e) The Association's Board of Directors shall be required to make every reasonable effort to secure insurance policies that will provide for the following:

(i) a waiver of subrogation by the insurer as to any claims against the Association's Board of Directors, its manager, the Owners and their respective tenants, servants, agents, and guests;

(ii) a waiver by the insurer of its rights to repair and reconstruct instead of paying cash;

(iii) that no policy may be cancelled, invalidated, or suspended on account of any one or more individual Owners;

(iv) that no policy may be cancelled, subjected to nonrenewal, invalidated, or suspended on account of any defect or the conduct of any director, officer, or employee of the Association or its duly authorized manager without prior demand in writing delivered to the Association to cure the defect or to cease the conduct and the allowance of a reasonable time thereafter within which a cure may be effected by the Association, its manager, any Owner or Mortgagee;

(v) that any "other insurance" clause in any policy exclude individual Owners' policies from consideration; and

(vi) that no policy may be cancelled, subjected to nonrenewal or substantially modified without at least thirty (30) days' prior written notice to the Association.

In addition to the other insurance required by this Section, the Board shall obtain worker's compensation insurance, if and to the extent necessary to satisfy the requirements of applicable laws, and a fidelity bond or bonds on directors, officers, employees, and other persons handling or responsible for the Association's funds, if reasonably available. If obtained, the amount of fidelity coverage shall be determined in the directors' best business judgment, and, if available, shall at least equal three (3) months' assessments plus reserves on hand. Bonds shall contain a waiver of all defenses based upon the exclusion of persons serving without compensation and may not be cancelled, subjected to nonrenewal or substantially modified without at least thirty (30) days' prior written notice to the Association. The Association shall also obtain construction code endorsements, steam boiler coverage, and flood insurance, if and to the extent necessary to satisfy the requirements of the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association, the Veterans Administration, or the U.S. Department of Housing and Urban Development.

Section 2. Individual Insurance. By virtue of taking title to a Lot subject to the terms of this Declaration, each Owner acknowledges that the Association has no obligation to provide any insurance for any portion of individual Lots, and each Owner covenants and agrees with all other Owners and with the Association that each Owner shall carry blanket all-risk casualty insurance on the Lot and all structures constructed thereon and a liability policy covering damage or injury occurring on a Lot. The casualty insurance shall cover loss or damage by fire and other hazards commonly insured under an "all-risk" policy, if reasonably available, including vandalism and malicious mischief, and shall be in an amount sufficient to cover the full replacement cost of any repair or reconstruction in the event of damage or destruction from any such hazard. If all-risk coverage is not reasonably available, Owners shall obtain, at a minimum, fire and extended coverage. The policies required hereunder shall be in effect at all times. Authority to adjust losses under policies obtained by an Owner shall be vested in the Owner. The Association shall have the right, but not the obligation, at the expense of the Owner, to acquire the insurance required to be maintained by the Owner if the Owner fails to provide a valid policy to the Association with a prepaid receipt within ten (10) days after receipt by the Owner of a written request

19CV01235

from the Association. If the Association does acquire insurance on behalf of any Owner, the cost thereof shall be assessed against the Owner and the Lot as a specific assessment.

Section 3. Damage and Destruction -- Insured by Association.

(a) In General. Immediately after damage or destruction by fire or other casualty to all or any portion of any improvement covered by insurance written in the name of the Association, the Board of Directors or its duly authorized agent shall proceed with the filing and adjustment of all claims arising under such insurance and obtain reliable and detailed estimates of the cost of repair or reconstruction of the damaged or destroyed property. Repair or reconstruction, as used in this Section, means repairing or restoring the property to substantially the same condition and location that existed prior to the fire or other casualty, allowing for any changes or improvements necessitated by changes in applicable building codes. The Board of Directors shall have the enforcement powers specified in Article XIII, Section 1 of this Declaration necessary to enforce this provision.

(b) Repair and Reconstruction. Any damage or destruction to property covered by insurance written in the name of the Association shall be repaired or reconstructed unless, within sixty (60) days after the casualty, at least seventy-five (75%) percent of the Total Association Vote otherwise agree. If for any reason either the amount of the insurance proceeds to be paid as a result of such damage or destruction, or reliable and detailed estimates of the cost of repair or reconstruction, or both, are not made available to the Association within such period, then the period shall be extended until such information shall be made available; provided, however, such extension shall not exceed sixty (60) days. No Mortgagee shall have the right to participate in the determination of whether damage or destruction shall be repaired or reconstructed.

If the damage or destruction for which the insurance proceeds are paid is to be repaired or reconstructed and such proceeds are not sufficient to defray the cost thereof, the Board of Directors shall, without the necessity of a vote of the Association's members, levy a special assessment against all Owners in proportion to the number of Lots owned by such Owners. Additional assessments may be made in like manner at any time during or following the completion of any repair or reconstruction. If the funds available from insurance exceed the costs of repair or reconstruction or if the improvements are not repaired or reconstructed, such excess shall be deposited to the benefit of the Association.

In the event that it should be determined by the Association in the manner described above that the damage or destruction shall not be repaired or reconstructed and no alternative improvements are authorized, then and in that event the property shall be restored to its natural state and maintained as an undeveloped portion of the Community by the Association in a neat and attractive condition.

Section 4. Damage and Destruction -- Insured by Owners. The damage or destruction by fire or other casualty to all or any portion of any

-20-

BOOK 709 PAGE 727

improvement on a Lot shall be repaired by the Owner thereof within
seventy-five (75) days after such damage or destruction or, where repairs
cannot be completed within seventy-five (75) days, they shall be commenced
within such period and shall be completed within a reasonable time
thereafter. Alternatively, the Owner may elect to demolish all improvements
on the Lot and remove all debris therefrom within seventy-five (75) days after
such damage or destruction. In the event of noncompliance with this
provision, the Board of Directors shall have all enforcement powers specified
in Article XIII, Section 1, of this Declaration.

     Section 5.   Insurance Deductible.   The deductible for any casualty
insurance policy carried by the Association shall, in the event of damage or
destruction, be allocated among the Persons who are responsible hereunder, or
under any declaration or contract requiring the Association to obtain such
insurance, for maintenance of the damaged or destroyed property.

<h3 style="text-align:center">Article VIII<br>Condemnation</h3>

     In the event of a taking by eminent domain of any portion of the
Common Property on which improvements have been constructed, then, unless
within sixty (60) days after such taking, at least seventy-five (75%) percent
of the Total Association Vote shall otherwise agree, the Association shall
restore or replace such improvements so taken on the remaining land included
in the Common Property to the extent lands are available therefor.   The
provisions of Article VII, Section 3, above, applicable to Common Property
improvements damage, shall govern replacement or restoration and the actions
to be taken in the event that the improvements are not restored or replaced.

<h3 style="text-align:center">Article IX<br>Annexation of Additional Property</h3>

Section 1.   Unilateral Annexation By Declarant.

     (a)   As the owner thereof or, if not the owner, with the consent of
the owner thereof, Declarant shall have the unilateral right, privilege, and
option from time to time at any time until ten (10) years after the recording
of this Declaration to subject all or any portion of the real property
described in Exhibit "C", attached hereto and by reference made a part hereof
to the provisions of this Declaration and the jurisdiction of the Association
by filing for record in the county in which the property to be annexed is
located a Supplementary Declaration describing the property being subjected.
Any such annexation shall be effective upon the filing for record of such
Supplementary Declaration unless otherwise provided therein.   As long as
covenants applicable to the real property previously subjected to this
Declaration are not changed and as long as rights of existing Owners are not
adversely affected, the Declarant may unilaterally amend this Declaration to
reflect the different character of any such annexed real property.

BOOK 709 PAGE 728

The

(c)   any lapse, cancellation, or material modification of any insurance policy maintained by the Association; or

(d)   any proposed action which would require the consent of a specified percentage of Mortgage holders.

Section 2.   Special FHLMC Provision.   So long as required by the Federal Home Loan Mortgage Corporation and so long as the U.S. Department of Housing and Urban Development ("HUD") is insuring or the Veterans Administration ("VA") is guaranteeing any Mortgage in the Community, the following provisions apply in addition to and not in lieu of the foregoing. Unless two-thirds (2/3) of the first Mortgagees or Owners other than the Declarant, give their consent, the Association shall not:

(a)   by act or omission seek to abandon, partition, subdivide, encumber, sell, or transfer the Common Property which the Association owns, directly or indirectly (the granting of easements for public utilities or other purposes as provided herein or as is consistent with the intended use of the Common Property shall not be deemed a transfer within the meaning of this subsection) other than personal property of the Association;

(b)   change the method of determining the obligations, assessments, dues, or other charges which may be levied against an Owner (A decision, including contracts, by the Board or provisions of any amendment to the Declaration regarding assessments for Parcels or other similar areas shall not be subject to this provision where such decision or amendment to the Declaration is otherwise authorized by this Declaration.);

(c)   by act or omission change, waive, or abandon any scheme of regulations or enforcement thereof pertaining to the architectural design or the exterior appearance and maintenance of Lots and of the Common Property (The issuance and amendment of architectural standards, procedures, rules, and regulations or use restrictions shall not constitute a change, waiver, or abandonment within the meaning of this subsection.);

(d)   fail to maintain insurance, as required by this Declaration; or

(e)   use hazard insurance proceeds for any Common Property losses for other than the repair, replacement, or reconstruction of such property.

Nothing contained in this Section 2 shall be construed to reduce the percentage vote that must otherwise be obtained under the Declaration for any of the acts set out in this Section 2.

First Mortgagees may, jointly or singly, pay taxes or other charges which are in default and which may or have become a charge against the Common Property and may pay overdue premiums on casualty insurance policies or secure new casualty insurance coverage upon the lapse of an Association policy, and first Mortgagees making such payments shall be entitled to immediate reimbursement from the Association.

BOOK 709 PAGE 730

-23-

19CV01235

Section 3. No Priority. No provision of this Declaration or the Bylaws gives or shall be construed as giving any Owner or other party priority over any rights of the first Mortgagee of any Lot in the case of distribution to such Owner of insurance proceeds or condemnation awards for losses to or a taking of the Common Property.

Section 4. Notice to Association. Upon request, each Lot Owner shall be obligated to furnish to the Association the name and address of the holder of any Mortgage encumbering such Owner's Lot.

Section 5. Amendments by Board. Should the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation subsequently delete any of their respective requirements which necessitate the provisions of this Article or make any such requirements less stringent, the Board, without approval of the Owners, may cause an amendment to this Article to be recorded to reflect such changes.

Section 6. VA/HUD Approval. As long as the Declarant has the right to appoint and remove the directors of the Association, the following actions shall require the prior approval of the VA, so long as the VA is guaranteeing any Mortgage in the Community, and HUD, so long as HUD is insuring any Mortgage in the Community: annexation of additional property to the Community, except for annexation by Declarant in accordance with Article IX, Section 1 hereof pursuant to a plan of annexation previously approved by the VA and/or HUD as applicable; dedication of Common Property to any public entity; mergers and consolidations; dissolution of the Association; and material amendment of the Declaration, Bylaws or Articles of Incorporation.

Section 7. Applicability of Article X. Nothing contained in this Article shall be construed to reduce the percentage vote that must otherwise be obtained under the Declaration, Bylaws, or Georgia law for any of the acts set out in this Article.

Section 8. Failure of Mortgagee to Respond. Any Mortgagee who receives a written request from the Board to respond to or consent to any action shall be deemed to have approved such action if the Association does not receive a written response from the Mortgagee within thirty (30) days of the date of the Association's request.

Article XI
Easements

Section 1. Easements for Encroachment and Overhang. There shall be reciprocal appurtenant easements for encroachment and overhang as between (a) each Lot and such portion or portions of the Common Property adjacent thereto, (b) as between adjacent Lots, (c) as between a Lot and the Club, or (d) as between the Common Property and the Club due to the unintentional placement or settling or shifting of the improvements constructed, reconstructed, or altered thereon (in accordance with the terms of this Declaration) to a distance of not more than five (5) feet, as measured from any point on the common boundary between each Lot and the adjacent portion of the Common

-24-

BOOK 709 PAGE 731

Property, or as between adjacent Lots, or as between each Lot and the Club, or as between the Common Property and the Club, as the case may be, along a line perpendicular to such boundary at such point; provided, however, in no event shall an easement for encroachment exist if such encroachment occurred due to willful conduct on the part of an Owner, Occupant, or the Association.

Section 2.  Easements for Use and Enjoyment.

(a)  Every Owner of a Lot shall have a right and easement of ingress and egress, use and enjoyment in and to the Common Property which shall be appurtenant to and shall pass with the title to each Lot, subject to the following provisions:

(i)  the right of the Association to charge reasonable admission and other fees for the use of any portion of the Common Property, to limit the number of guests of Lot Owners and tenants who may use the Common Property, and to provide for the exclusive use and enjoyment of specific portions thereof at certain designated times by an Owner, his family, tenants, guests, and invitees;

(ii)  the right of the Association to suspend the voting rights of a Lot Owner and the right of an Owner to use the recreational facilities available for use by the Community, if any, for any period during which any assessment against such Owner's Lot which is hereby provided for remains unpaid; and, for a reasonable period of time for an infraction of the Declaration, Bylaws, or rules and regulations;

(iii)  the right of the Association to borrow money for the purpose of improving the Common Property, or any portion thereof, or for construction, repairing or improving any facilities located or to be located thereon, and to give as security for the payment of any such loan a Mortgage conveying all or any portion of the Common Property; provided, however, the lien and encumbrance of any such Mortgage given by the Association shall be subject and subordinate to any rights, interests, options, easements and privileges herein reserved or established for the benefit of Declarant, or any Lot or Lot Owner, or the holder of any Mortgage, irrespective of when executed, given by Declarant or any Lot Owner encumbering any Lot or other property located within the Community (Any provision in this Declaration or in any such Mortgage given by the Association to the contrary notwithstanding, the exercise of any rights therein by the holder thereof in the event of a default thereunder shall not cancel or terminate any rights, easements or privileges herein reserved or established for the benefit of Declarant, or any Lot or Lot Owner, or the holder of any Mortgage, irrespective of when executed, given by Declarant or any Lot Owner encumbering any Lot or other property located within the Community.); and

(iv)  the right of the Association to dedicate or transfer all or any portion of the Common Property subject to such conditions as may be agreed to by the members of the Association.  No such dedication or transfer shall be effective unless an instrument agreeing to such dedication or transfer has been approved by the affirmative vote of at least two-thirds (2/3) of the Total Association Vote.

19CV01235

(b)   Any Lot Owner may delegate such Owner's right of use and enjoyment in and to the Common Property and facilities located thereon to the members of such Owner's family and to such Owner's tenants and guests and shall be deemed to have made a delegation of all such rights to the Occupants of such Owner's Lot, if leased.

Section 3.   Easements for Utilities.   There is hereby reserved to the Declarant and the Association blanket easements upon, across, above and under all property within the Community for access, ingress, egress, installation, repairing, replacing, and maintaining all utilities serving the Community or any portion thereof, including, but not limited to, gas, water, sanitary sewer, telephone and electricity, as well as storm drainage and any other service such as, but not limited to, a master television antenna system, cable television system, or security system which the Declarant or the Association might decide to have installed to serve the Community.   It shall be expressly permissible for the Declarant, the Association, or the designee of either, as the case may be, to install, repair, replace, and maintain or to authorize the installation, repairing, replacing, and maintaining of such wires, conduits, cables and other equipment related to the providing of any such utility or service.   Should any party furnishing any such utility or service request a specific license or easement by separate recordable document, the Board shall have the right to grant such easement.

Section 4.   Easement for Entry.   In addition to the right of the Board to exercise self-help as provided in Article XIII, Section 2, hereof, the Board shall have the right, but shall not be obligated, to enter upon any property within the Community for emergency, security, and safety reasons, which right may be exercised by the manager, and all policemen, firemen, ambulance personnel, and similar emergency personnel in the performance of their respective duties.   Except in an emergency situation, entry shall only be during reasonable hours and after notice to the Owner, and the entering party shall be responsible for any damage caused.   This right of entry shall include the right of the Board to enter to cure any condition which may increase the possibility of a fire, slope erosion, or other hazard in the event an Owner or Occupant fails or refuses to cure the condition upon request by the Board.

Section 5.   Easement for Maintenance.   Declarant hereby expressly reserves a perpetual easement for the benefit of the Association across such portions of the Community, determined in the sole discretion of the Association, as are necessary to allow for the maintenance required under Article V, including, without limitation, the maintenance of a lake(s), lakebed(s) and shoreline(s) which are within the Community or which are made available for the use and enjoyment of Owners and Occupants within the Community.   Such maintenance shall be performed with a minimum of interference to the quiet enjoyment to Owners' property, reasonable steps shall be taken to protect such property, and damage shall be repaired by the Person causing the damage at its sole expense.   In order to allow the exercise of the rights created pursuant to this easement concerning the maintenance of lakes, no tree or structure may be placed within ten (10) feet of the line formed by the highest normal pool elevation of any lake without the prior written approval

BOOK 709 PAGE 733

Book: 709  Page: 703  Seq: 31

19CV01235

of the Board or its designee. Nothing in this Declaration or any recorded plat for any portion of the Community shall be construed to create any pedestrian path or walkway around any lake.

Section 6. Easement for Entry Features. There is hereby reserved to the Declarant and the Association an easement for ingress, egress, installation, construction landscaping and maintenance of entry features and similar streetscapes for the Community, over and upon each lot as more fully described on the recorded subdivision plats for the community. The easement and right herein reserved shall include the right to cut, remove and plant trees, shrubbery, flowers and other vegetation around such entry features and the right to grade the land under and around such entry features.

Section 7. Construction and Sale Period Easement. Notwithstanding any provisions contained in this Declaration, the Bylaws, Articles of Incorporation, use restrictions, rules and regulations, design guidelines, and any amendments thereto, until Declarant's right unilaterally to subject property to this Declaration as provided in Article IX terminates and thereafter so long as Declarant owns any property in the Community for development and/or sale, Declarant reserves an easement across all Community property for Declarant and any builder or developer approved by Declarant to maintain and carry on, upon such portion of the Community as Declarant may reasonably deem necessary, such facilities and activities as in the sole opinion of Declarant may be required, convenient, or incidental to Declarant's and such builder's or developer's development, construction, and sales activities related to property described on Exhibit "B" and Exhibit "C" to this Declaration, including, but without limitation: the right of access, ingress and egress for vehicular and pedestrian traffic and construction activities over, under, on or in the Community, including, without limitation, any Lot; the right to tie into any portion of the Community with driveways, parking areas and walkways; the right to tie into and/or otherwise connect and use (without a tap-on or any other fee for so doing), replace, relocate, maintain and repair any device which provides utility or similar services including, without limitation, electrical, telephone, natural gas, water, sewer and drainage lines and facilities constructed or installed in, on, under and/or over the Community; the right to carry on sales and promotional activities in the Community; and the right to construct and operate business offices, signs, construction trailers, model residences, and sales offices. Declarant and any such builder or developer may use residences, offices, or other buildings owned or leased by Declarant or such builder or developer as model residences and sales offices and may also use recreational facilities available for use by the Community as a sales office without charge. Rights exercised pursuant to such reserved easement shall be exercised with a minimum of interference to the quiet enjoyment of affected property, reasonable steps shall be taken to protect such property, and damage shall be repaired by the Person causing the damage at its sole expense. This Section shall not be amended without the Declarant's express written consent until the Declarant's rights hereunder have terminated as hereinabove provided.

Section 8. Irrigation and Effluent Easements. There is hereby reserved to the Declarant a transferable blanket easement: (a) to pump water from ponds, lakes and other bodies of water located within the Community

-27-

BOOK 709 PAGE 734

excluding any lake or pond located totally within the Club, if any, for irrigation purposes; (b) to drill, install, locate, maintain and use wells, pumping stations, water towers, siltation basins and tanks and related water and sewer treatment facilities and systems within the Common Property, including within any portion of the recreational amenities, if any; and (c) to spray or locate any treated sewage effluent within the Common Property, including any portion of the recreational amenities, if any, or upon any Lot with the written permission of the Owner.

Section 9.  Easement for Golf Course.  As to any Lot or Common Property which abuts any portion of the golf course, if any, which is part of the Club, there is hereby reserved for the benefit of the owner of the Club an easement over that portion of the Lot or Common Property extending a distance of thirty-five (35) feet from the boundaries of the golf course; provided, however, (a) for Lots where the land constituting the Lot is less than eleven thousand two hundred fifty (11,250) square feet the easement shall be thirty (30) feet from the boundaries of the golf course, and (b) in the case of all Lots, the easement shall not extend further than the distance between the boundaries of the golf course and that wall of any residential dwelling located on the Lot nearest the golf course boundaries. This easement shall be for the purpose of allowing users of such golf course to retrieve errant golf balls at reasonable times and in a reasonable manner.   There is hereby reserved for the benefit of the owner of the Club the right, but not the obligation, to maintain such easement area in an attractive condition and to landscape such area.  Nothing contained in this Section shall in any way reduce the obligations imposed on the Owner of such Lot or the Association by any other provision hereof.  No building, fence, wall, or other structure or improvement of any kind shall be erected or placed upon the easement without the written consent of the ARC. All Owners, by acceptance of a deed therefor, assume all risks associated with errant golf balls and covenant not to make any claim or institute any action whatsoever (including claims or actions which could be brought through the Association) against any Person, including, without limitation, the owner of the Club, the Declarant, or the Association as a result of errant golf balls or any damage which may be caused thereby.

Section 10.  High Water Easement.  As to any Lot or Common Property which abuts or is appurtenant to any portion of any lake or stream which is located within the Community or is made available for the use of all Owners and Occupants in the Community, there is hereby reserved for the benefit of the Declarant and the Association an easement over that portion of the Lot or Common Property on which water from such lake or stream lies during times of high water, regardless of how such high water is caused.  All Owners, by acceptance of a deed therefor, assume all risks associated with such high water and covenant not to make any claim or institute any action whatsoever (including claims or actions which could be brought through the Association) against any Person, including, without limitation, the owner of the Club, the Declarant, or the Association as a result of such high water or any damage which may be caused thereby.

19CV01235

Article XII
Certain Recreational Facilities Which Are Not Common Property

Section 1. General. Certain recreational facilities may be, but are not required to be, constructed by Declarant or another Person in the Community as the Club for the use of the members of the Association and others. Unless conveyed to the Association, the Club shall not constitute Common Property. The members of the Association shall have no ownership interest, proprietary interest, beneficial interest, or other vested interest in the Club and shall have no right to enter or to use the Club by virtue of being a member of the Association.

Section 2. Operation of Club Facilities. No representations or warranties have been or are made by the Declarant or any other Person regarding the continuing ownership or operation of the Club, and no purported representation or warranty in such regard shall ever be effective without an amendment hereto executed or joined into by the Declarant, the owner of the Club and any Mortgagees of the Club. Further, the ownership or management and administration of the Club may change at any time and from time to time by virtue of, but without limitation, (a) the sale or assumption of operations of the Club by/to a third party or entity, (b) the conversion of the Club membership structure to an "equity" club or similar arrangement whereby the members of the Club or an entity owned or controlled thereby become the owner(s) and/or operator(s) of the Club, (c) the conveyance, pursuant to contract, option, or otherwise, of the Club to one (1) or more affiliates, shareholders, employees, or independent contractors of Declarant, or (d) the conveyance of the Club to the Association, with or without consideration and subject or not subject to a Mortgage(s) or other encumbrance. No consent of the Association, any Parcel, the Board, or any Owner shall be required to effectuate a transfer to a Person other than the Association and none of the foregoing shall have any right of first refusal regarding such transfer.

Section 3. Rights of Access and Parking. The owner of the Club and its members (regardless of whether such members are members of the Association), and their invitees, employees, agents, contractors, and designees shall at all times have a right and nonexclusive easement of access and use over all cart parts and roadways located within the Community reasonably necessary to travel from/to the entrance within the Community to/from the Club and, further, over those portions of the Community (whether Common Property or otherwise) reasonably necessary to the operation, maintenance, repair, and replacement of the Club facilities and such easements are hereby reserved. Without limiting the generality of the foregoing, members of the Club and members of the public attending Club functions shall have the right to park their vehicles on the roadways located within the Community at reasonable times before, during, and after Club functions; provided, however, parking shall not be permitted on private streets or Lots without the consent of the owner of such street or Lot.

Section 4. Amendments to this Article. This Article may be amended from time to time by Declarant without the necessity of obtaining the consent of any other Person for the purpose of designating the precise Club facilities

-29-

19CV01235

described in this Article; provided, however, no amendment to this Article shall be effective without the prior written consent of the owner of the Club and any Mortgagee of the Club.

Section 5. <u>Jurisdiction and Cooperation</u>. It is Declarant's intention that the Association and the Club shall cooperate to the maximum extent possible in the operation of the Community and the Club. Each shall reasonably assist the other in upholding the Community-Wide Standard as it pertains to maintenance and the design guidelines promulgated by the ARC. Except as specifically provided herein or in the Bylaws, the Association shall have no power to promulgate rules and regulations affecting activities on or use of the Club.

## Article XIII
### General Provisions

Section 1. <u>Enforcement</u>. Each Owner and Occupant shall comply strictly with the Bylaws, the rules and regulations, the use restrictions, as they may be lawfully amended or modified from time to time, and with the covenants, conditions, and restrictions set forth in this Declaration and in the deed to such Owner's Lot, if any. The Board of Directors may impose fines or other sanctions, which shall be collected as provided herein for the collection of assessments. Failure to comply with this Declaration, the Bylaws or the rules and regulations shall be grounds for an action to recover sums due for damages or injunctive relief, or both, maintainable by the Board of Directors, on behalf of the Association, or, in a proper case, by an aggrieved Owner. Failure by the Association or any Owner to enforce any of the foregoing shall in no event be deemed a waiver of the right to do so thereafter. The Board shall have the right to record in the appropriate land records a notice of violation of the Declaration, Bylaws, rules and regulations, use restrictions, or design guidelines and to assess the cost of recording and removing such notice against the Owner who is responsible (or whose Occupants are responsible) for violating the foregoing.

Section 2. <u>Self-Help</u>. In addition to any other remedies provided for herein, the Association or its duly authorized agent shall have the power to enter upon any Lot or any other portion of the Community to abate or remove, using such force as may be reasonably necessary, any structure, thing or condition which violates this Declaration, the Bylaws, the rules and regulations, or the use restrictions. Unless an emergency situation exists, the Board shall give the violating Lot Owner ten (10) days' written notice of its intent to exercise self-help. Notwithstanding the foregoing, vehicles may be towed after reasonable notice. All costs of self-help, including, without limitation, reasonable attorney's fees actually incurred, shall be assessed against the violating Lot Owner and shall be collected as provided for herein for the collection of assessments.

Section 3. <u>Duration</u>. The covenants and restrictions of this Declaration shall run with and bind the Community, and shall inure to the benefit of and shall be enforceable by the Association or any Owner, their

BOOK 709 PAGE 737

respective legal representatives, heirs, successors, and assigns, perpetually
to the extent provided by law; provided, however, so long as Georgia law
limits the period during which covenants restricting land to certain uses may
run, any provisions of this Declaration affected thereby shall run with and
bind the land so long as permitted by such law, after which time, any such
provision shall be (a) automatically extended (to the extent allowed by
applicable law) for successive periods of ten (10) years, unless a written
instrument reflecting disapproval signed by a Majority of the then Owners has
been recorded within the year immediately preceding the beginning of a ten
(10) year renewal period agreeing to change such provisions, in whole or in
part, or to terminate the same, in which case this Declaration shall be
modified or terminated to the extent specified therein; or (b) extended as
otherwise provided by law. Every purchaser or grantee of any interest
(including, without limitation, a security interest) in any real property
subject to this Declaration, by acceptance of a deed or other conveyance
therefor, thereby agrees that such provisions of this Declaration may be
extended and renewed as provided in this Section.

Section 4.  _Amendment_.  This Declaration may be amended unilaterally
at any time and from time to time by Declarant (a) if such amendment is
necessary to bring any provision hereof into compliance with any applicable
governmental statute, rule, or regulation or judicial determination which
shall be in conflict therewith; (b) if such amendment is necessary to enable
any reputable title insurance company to issue title insurance coverage with
respect to the Lots subject to this Declaration; (c) if such amendment is
required by an institutional or governmental lender or purchaser of mortgage
loans, including, for example, the Federal National Mortgage Association or
Federal Home Loan Mortgage Corporation, to enable such lender or purchaser to
make or purchase Mortgage loans on the Lots subject to this Declaration; (d)
if such amendment is necessary to enable any governmental agency or reputable
private insurance company to insure or guarantee Mortgage loans on the Lots
subject to this Declaration; or (e) if such amendment is required by EPA or
the Corps to enable such entity to issue any permit in connection with the
development or maintenance of the Community or the Club; provided, however,
any such amendment shall not adversely affect the title to any Owner's Lot
unless any such Lot Owner shall consent thereto in writing.

In addition to the above, this Declaration may be amended upon the
affirmative vote or written consent, or any combination thereof, of the Owners
of at least two-thirds (2/3) of the Lots and the consent of Declarant (so long
as the Declarant owns any property for development and/or sale in the
Community or has the right to unilaterally annex additional property to the
Community). Amendments to this Declaration shall become effective upon
recordation, unless a later effective date is specified therein. No provision
of this Declaration which reserves or grants special rights to the Declarant
shall be amended without the Declarant's prior written approval so long as the
Declarant owns any property for development and/or sale in the Community, or
subject to annexation to the Community. Article VI, Sections 33 and 34 hereof
shall not be amended without the written consent of EPA and the Corps.

Section 5.  _Partition_.  The Common Property shall remain undivided,
and no Lot Owner nor any other Person shall bring any action for partition or

-31-

Case 1:23-mi-99999-UNA   Document 2429-1   Filed 07/31/23   Page 46 of 106

division of the whole or any part thereof without the written consent of all Owners of all portions of the property located within the Community and without the written consent of all holders of all Mortgages encumbering any portion of the property, including, but not necessarily limited to, the Lots located within the Community.

Section 6.  Gender and Grammar.  The singular, wherever used herein, shall be construed to mean the plural, when applicable, and the use of the masculine pronoun shall include the neuter and feminine.

Section 7.  Severability.  Whenever possible, each provision of this Declaration shall be interpreted in such manner as to be effective and valid, but if the application of any provision of this Declaration to any person or to any property shall be prohibited or held invalid, such prohibition or invalidity shall not affect any other provision or the application of any provision which can be given effect without the invalid provision or application, and, to this end, the provisions of this Declaration are declared to be severable.

Section 8.  Captions.  The captions of each Article and Section hereof, as to the contents of each Article and Section, are inserted only for convenience and are in no way to be construed as defining, limiting, extending; or otherwise modifying or adding to the particular Article or Section to which they refer.

Section 9.  Preparer.  This Declaration was prepared by: David N. Dorough, Hyatt & Rhoads, P.C., 2400 Marquis One Tower, 245 Peachtree. Street, N.E., Atlanta, Georgia 30303.

Section 10.  Perpetuities.  If any of the covenants, conditions, restrictions, or other provisions of this Declaration shall be unlawful, void, or voidable for violation of the rule against perpetuities, then such provisions shall continue only until twenty-one (21) years after the death of the last survivor of the now living descendants of Elizabeth II, Queen of England.

Section 11.  Indemnification.  To the fullest extent allowed by applicable Georgia law, the Association shall indemnify every officer and director against any and all expenses, including, without limitation, attorney's fees, imposed upon or reasonably incurred by any officer or director in connection with any action, suit, or other proceeding (including settlement of any suit or proceeding, if approved by the then Board of Directors) to which such officer or director may be a party by reason of being or having been an officer or director.  The officers and directors shall not be liable for any mistake of judgment, negligent or otherwise, except for their own individual willful misfeasance, malfeasance, misconduct, or bad faith.  The officers and directors shall have no personal liability with respect to any contract or other commitment made by them, in good faith, on behalf of the Association (except to the extent that such officers or directors may also be members of the Association), and the Association shall indemnify and forever hold each such officer and director free and harmless against any and all liability to others on account of any such contract or

commitment. Any right to indemnification provided for herein shall not be exclusive of any other rights to which any officer or director, or former officer or director, may be entitled. The Association shall maintain adequate general liability and officers' and directors' liability insurance to fund this obligation, if such coverage is reasonably available.

Section 12. <u>Books and Records</u>.

(a) <u>Inspection by Members and Mortgagees</u>. This Declaration, the Bylaws, copies of rules and use restrictions, membership register, books of account, and minutes of meetings of the members of the Board and of committees shall be made available for inspection and copying by any member of the Association or by the duly appointed representative of any member and by holders, insurers, or guarantors of any first Mortgage at any reasonable time and for a purpose reasonably related to such Person's interest as a member or holder, insurer, or guarantor of a first Mortgage at the office of the Association or at such other reasonable place as the Board shall prescribe.

(b) <u>Rules for Inspection</u>. The Board shall establish reasonable rules with respect to:

(i) notice to be given to the custodian of the records;

(ii) hours and days of the week when such an inspection may be made; and

(iii) payment of the cost of reproducing copies of documents.

(c) <u>Inspection by Directors</u>. Every director shall have the absolute right at any reasonable time to inspect all books, records, and documents of the Association and the physical properties owned or controlled by the Association. The right of inspection by a director includes the right to make extra copies of documents at the reasonable expense of the Association.

Section 13. <u>Financial Review</u>. A review of the books and records of the Association shall be made annually in the manner as the Board of Directors may decide; provided, however, after having received the Board's financial statements at the annual meeting, by a Majority of the Total Association Vote, the Owners may require that the accounts of the Association be audited as an Association Expense by a certified public accountant. Upon written request of any institutional holder of a first Mortgage and upon payment of all necessary costs, such holder shall be entitled to receive a copy of audited financial statements within ninety (90) days of the date of the request.

Section 14. <u>Notice of Sale, Lease or Acquisition</u>. In the event an Owner sells or leases such Owner's Lot, the Owner shall give to the Association, in writing, prior to the effective date of such sale or lease, the name of the purchaser or lessee of the Lot and such other information as the Board may reasonably require. Upon acquisition of a Lot each new Owner shall give the Association, in writing the name and mailing address of the Owner and such other information as the Board may reasonably require.

19CV01235

Section 15.  _Agreements_.  Subject to the prior approval of Declarant (so long as Declarant owns any property for development and/or sale in the Community or has the right to unilaterally annex additional property to the Community) all agreements and determinations, including settlement agreements regarding litigation involving the Association, lawfully authorized by the Board of Directors shall be binding upon all Owners, their heirs, legal representatives, successors, assigns, and others having an interest in the Community or the privilege of possession and enjoyment of any part of the Community.

Section 16.  _Implied Rights_.  The Association may exercise any right or privilege given to it expressly by this Declaration, the Bylaws, the Articles of Incorporation, any use restriction or rule, and every other right or privilege reasonably to be implied from the existence of any right or privilege given to it therein or reasonably necessary to effectuate any such right or privilege.

Section 17.  _Variances_.  Notwithstanding anything to the contrary contained herein, the Board of Directors or its designee shall be authorized to grant individual variances from any of the provisions of this Declaration, the Bylaws and any rule, regulation or use restriction promulgated pursuant thereto if it determines that waiver of application or enforcement of the provision in a particular case would not be inconsistent with the overall scheme of development for the Community; provided, however, the Board of Directors or its designee shall not be authorized and shall have no power to grant any variance in connection with Article VI, Sections 33 or 34.

Section 18.  _Use of Recreational Facilities By Nonmembers_.  For so long as Declarant has an option to unilaterally subject additional property to this Declaration as provided in Article IX above, Declarant shall have the right to grant to Persons who are not members of the Association the right to use the Community recreational facilities constructed by Declarant.  The extent and duration of nonmember use and the fee to be charged therefor shall be determined solely by Declarant.  The Declarant may grant nonmember use rights to individuals on a nonrenewable annual basis or as an easement appurtenant to such individuals' residential real property so that such use rights shall automatically inure to the benefit of both the original grantees and their respective successors-in-title to such real property.  For so long as Declarant owns such recreational facilities, nonmember user fees shall be paid to Declarant.  If such recreational facilities are conveyed to the Association, nonmember user fees due and payable after the date of such conveyance shall be paid to the Association.  Such fees shall be paid in annual installments to the Association.  The amount of such installment payments may be increased each year by the Board so long as the annual fee does not exceed the annual assessment levied against members of the Association.

Any use right granted to nonmembers which extends beyond the termination of Declarant's option to unilaterally subject additional property to this Declaration shall be valid and may not be terminated by the Association so long as the terms and conditions imposed upon nonmember use by Declarant are complied with by the nonmember user.  After the Declarant's

Book: 709  Page: 703  Seq: 39

19CV01235

option to unilaterally subject additional property to this Declaration has terminated, the Association shall be entitled to exercise the same rights granted to the Declarant in this Section.

Declarant hereby expressly reserves unto itself, its successors and assigns a non-exclusive, perpetual right, privilege and easement with respect to the Community for the benefit of Declarant, its successors, assigns and the above discussed nonmember users, over, under, in and/or on the Community (including, without limitation, the above described recreational facilities), without obligation and without charge to the foregoing, for the purposes of taking all actions related to or connected with the granting of nonmember use and the use by such nonmembers as described above. Such right, privilege and easement shall include, without limitation, the right of access, ingress, use and egress of and to the above described recreational facilities and the right of access, ingress, use and egress for vehicular and pedestrian traffic over, under, on or in the Community roads, parking areas and walkways.

Declarant shall not be liable for and is hereby held harmless from any failure of any nonmember to pay a nonmember user fee to the Association where required to do so by this Section. In such case, the Association's sole remedy shall be to suspend the use right of the nonmember who has not timely paid until all amounts owed are paid. Declarant shall also not be liable for and is hereby held harmless from any personal injury or property damage caused by a nonmember entitled to use the Community recreational facilities constructed by Declarant. The provisions of this Section shall apply notwithstanding any contrary provisions in this Declaration, the ByLaws, Articles of Incorporation, rules and regulations, use restrictions and any amendments to any of the foregoing.

Section 19.  Litigation.  No judicial or administrative proceeding shall be commenced or prosecuted by the Association unless approved by at least seventy-five (75%) percent of the Total Association Vote. This Section shall not apply, however, to (a) actions brought by the Association to enforce the provisions of this Declaration (including, without limitation, the foreclosure of liens), (b) the imposition and collection of assessments as provided in Article IV hereof, (c) proceedings involving challenges to ad valorem taxation, or (d) counterclaims brought by the Association in proceedings instituted against it. This Section shall not be amended unless such amendment is made by the Declarant pursuant to Article XIII, Section 4, hereof, or is approved by the percentage votes, and pursuant to the same procedures, necessary to institute proceedings as provided above.

(SIGNATURES CONTINUED ON NEXT PAGE)

BOOK 709 PAGE 742

Book: 709  Page: 703  Seq: 40

19CV01235

IN WITNESS WHEREOF, the Declarant herein, hereby executes this instrument under it seal by and through its, duly authorized officers this _19th_ day of _February_ , 1991.

DECLARANT:   S & B DOUGLAS VENTURE, INC., a Georgia corporation

By: _Will J. Still_

President

Attest: _Dan Olson_

(Assistant) Secretary

[Affix Corporate Seal]

Signed, sealed, and delivered this _19th_ day of _February_ , 1991, in the presence of:

_Sally N. Fair_

WITNESS

_David N. Dorough_

NOTARY PUBLIC

Notary Public, Gwinnett County, Georgia

My Commission Expires: _My Commission Expires Aug. 11, 1992_

[Notarial Seal]

2657g --2/18/91

-36-

EXHIBIT "A"

Definitions

The following words, when used in this Declaration or in any Supplementary Declaration (unless the context shall prohibit), shall have the following meanings:

(a)   "Association" shall mean Chapel Hills Community Association Inc., a nonprofit Georgia corporation, its successors and assigns.

(b)   "Association Expenses" shall mean and include the actual and estimated expenses of operating the Association, both for general and Parcel purposes, including any reasonable reserve, all as may be found to be necessary and appropriate by the Board pursuant to the Declaration, the Bylaws, and the Articles of Incorporation.

(c)   "Board of Directors" or "Board" of the Association shall be the appointed or elected body, as applicable, having its normal meaning under Georgia law.

(d)   "Bylaws" shall refer to the Bylaws of Chapel Hills Community Association Inc., attached to this Declaration as Exhibit "E" and incorporated herein by this reference.

(e)   "Club" shall mean a portion of the Community or real property adjacent to the Community which is privately owned and operated as a club for recreational purposes and which may include a golf course, a club house, pool(s), tennis court(s) and all related and supporting facilities and improvements.

(f)   "Common Property" shall mean any and all real and personal property and easements and other interests therein, together with the facilities and improvements located thereon, now or hereafter owned by the Association for the common use and enjoyment of the Owners. As is more fully provided in Article XII of the Declaration, certain property and recreational facilities that may be constructed within or in the vicinity of the Community and which may be made available for use by members of the Association and others for a fee may not ever be owned by the Association. Unless conveyed to the Association, such property and facilities (and any other property not conveyed to the Association) shall not constitute Common Property.

(g)   "Community" shall mean and refer to that certain real property and interests therein described in Exhibit "B", attached hereto, and (i) such additions thereto as may be made by Declarant by Supplementary Declaration of all or any portion of the real property described in Exhibit "C" attached hereto; and (ii) such additions thereto as may be made by the Association by Supplementary Declaration.

(h)   "Community-Wide Standard" shall mean the standard of conduct, maintenance, or other activity generally prevailing in the Community. Such standard may be more specifically determined by the Board of Directors of the Association. Such determination, however, must be consistent with the Community-Wide Standard originally established by the Declarant.

(i)  "Declarant" shall mean and refer to S & B Douglas Venture, Inc., a Georgia corporation and its successors-in-title and assigns, provided any such successor-in-title or assign shall acquire for the purpose of development or sale all or any portion of the remaining undeveloped or unsold portions of the real property described in Exhibit "B", attached hereto, or in Exhibit "C", attached hereto, and provided further, in the instrument of conveyance to any such successor-in-title or assign, such successor-in-title or assign is designated as the "Declarant" hereunder by the grantor of such conveyance, which grantor shall be the "Declarant" hereunder at the time of such conveyance; provided, further, upon such designation of such successor Declarant, all rights of the former Declarant in and to such status as "Declarant" hereunder shall cease, it being understood that as to all of the property described in Exhibit "B", attached hereto, and in Exhibit "C", attached hereto, which is now or hereafter subjected to this Declaration, there shall be only one (1) "Declarant" hereunder at any one point in time.

(j)  "General Assessments" shall mean assessments levied for Association Expenses determined by the Board to benefit all Owners and Occupants.

(h)  "Lot" shall mean a portion of the the Community, whether developed or undeveloped, intended for development, use and occupancy as an attached or detached dwelling for a single-family.  By way of illustration, but not limitation, each unit in a condominium, each residence in a townhouse development, each cluster home and each single-family, detached house on a separately platted lot, shall constitute a separate Lot.  The ownership of each Lot shall include, and there shall pass with each Lot as an appurtenance thereto, whether or not separately described, all of the right, title, and interest of an Owner in the Common Property, which shall include, without limitation, membership in the Association.

(1)  "Majority" means those eligible votes, Owners, or other group as the context may indicate totalling more than fifty (50%) percent of the total eligible number.

(m)  "Mortgage" means any mortgage, deed to secure debt, deed of trust, and any and all other similar instruments used for the purpose of encumbering real property in the Community as security for the payment or satisfaction of an obligation.

(n)  "Mortgagee" shall mean the holder of a Mortgage.

(o)  "Natural Greenbelt Area" shall mean any area identified as "Protected Greenbelts" on Exhibit "D" hereof.  Each such area shall be identified and the boundaries thereof shall be more specifically defined on each subdivision plat of any portion of the Community containing any Natural Greenbelt Area filed of record in the county where the property is located. In the event of any conflict between the boundaries of any Natural Greenbelt Area as shown on Exhibit "D" hereof and any filed subdivision plat, the filed subdivision plat shall be determinative and controlling for all purposes.

(p)  "Occupant" shall mean any Person occupying all or any portion of a residence or other property located within the Community for any period of

-2-

BOOK 709 PAGE 745

Book: 709 Page: 703 Seq: 43

19CV01235

time, regardless of whether such Person is a tenant of the Owner of such property.

(q)  "Owner" shall mean and refer to the record owner, whether one or more Persons, of the fee simple title to any Lot located within the Community, excluding, however, any Person holding such interest merely as security for the performance or satisfaction of any obligation.

(r)  "Parcel" shall mean and refer to each separately designated residential area comprised of various types of housing initially or by amendment made subject to this Declaration. For example, and by way of illustration and not limitation, a condominium development, a townhouse development, and single-family detached housing subdivision may all be designated as separate Parcels. If separate Parcel status is desired, the Declarant shall designate in the amendment of the Declaration subjecting the property to the terms and conditions of this Declaration that such property shall constitute a separate Parcel or Parcels. In the absence of specific designation of separate Parcel status, all property made subject to this Declaration shall be considered a part of the same Parcel. The Board may also grant Parcel status to any area if so requested In writing by Owners of at least seventy-five (75%) percent of the Lots in such area.

(s)  "Parcel Assessments" shall mean assessments for Association Expenses provided for herein or by any amendment of the Declaration which are incurred for the purposes of promoting the recreation, health, safety, welfare, common benefit, and enjoyment of only the Owners and Occupants of the Parcel against which the specific Parcel Association is levied and of maintaining the properties within a given Parcel, all as may be specifically authorized from time to time by the Board of Directors.

(t)  "Person" means any natural person, as well as a corporation, joint venture, partnership (general or limited), association, trust, or other legal entity.

(u)  "Protected Wetlands" shall mean any area identified as "Wetland Preservation Parks" on Exhibit "D" hereof. Each such area shall be identified and the boundaries thereof shall be more specifically defined on each subdivision plat of any portion of the Community containing any Protected Wetlands filed of record in the county where the property is located. In the event of any conflict between the boundaries of any Protected Wetlands as shown on Exhibit "D" hereof and any filed subdivision plat, the filed subdivision plat shall be determinative and controlling for all purposes.

(v)  "Supplementary Declaration" means an amendment or supplement to this Declaration which subjects additional property to this Declaration or imposes, expressly or by reference, additional restrictions and obligations on the land described therein, or both.

(w)  "Total Association Vote" means all of the votes attributable to members of the Association (other than votes of Declarant, so long as Declarant has the right to appoint and remove the directors of the Association) and the consent of Declarant (so long as Declarant has the right to appoint and remove the directors of the Association).

19CV01235

EXHIBIT "B"

Property Submitted To This Declaration of Protective
Covenants Upon filing in The Public Records

ALL THAT TRACT OR PARCEL Of LAND, lying and being in Land Lot 45 and
58 of the 1st District, 5th Section of Douglas County, Georgia and being more
particularly described on that certain Final Plat of Chapel Hills, Unit One,
Phase One by Vansant Turner Hughes & Associates, dated January 18, 1991,
bearing the seal of John S. Turner, G.R.L.S. No. 2078, and recorded
on __Feb. 19__, 1991 in Plat Book __18__, page __229__, Douglas County,
Georgia land records.

BOOK 709 PAGE 747

19CV01235

EXHIBIT "C"

Additional Property Which May Unilaterally
Be Submitted To This Declaration of Protective
Covenants by Declarant

ALL THAT TRACT OR PARCEL OF LAND, lying and being in Land Lots 24, 25, 26, 44, 45, 46, 47, 56, 57, 58, 59, 75, 76, 86 and 87 of the 1st District, 5th Section, Douglas County, Georgia.

BOOK 709 PAGE 748



Exhibit "D"

19CV01235

no scale

CHAPEL HILLS :
WETLAND PRESERVATION PARKS
AND
GREENBELT PROTECTION PROGRAM

WETLAND OBSERVATION POINTS

WETLAND PRESERVATION PARKS

PROTECTED GREENBELTS

NEIGHBORHOOD PARK SITES

BOOK 709 PAGE 749

Exhibit "D"
Book: 709  Page: 703  Seq: 47

19CV01235

EXHIBIT "E"


BYLAWS

OF

CHAPEL HILLS COMMUNITY ASSOCIATION, INC.


HYATT & RHOADS, P.C.

Attorneys

2400 Marquis One Tower
Atlanta, Georgia   30303
(404) 659-6600

19CV01235

## - TABLE OF CONTENTS -

Page

I.   NAME, MEMBERSHIP, APPLICABILITY, AND DEFINITIONS

    1.  Name ............................................... 1
    2.  Membership ......................................... 1
    3.  Definitions ........................................ 1

II.  ASSOCIATION:  MEETINGS, QUORUM, VOTING, PROXIES

    1.  Place of Meetings .................................. 1
    2.  First Meeting and Annual Meetings .................. 1
    3.  Special Meetings ................................... 1
    4.  Notice of Meetings ................................. 2
    5.  Waiver of Notice ................................... 2
    6.  Adjournment of Meetings ............................ 2
    7.  Voting ............................................. 2
    8.  Proxies ............................................ 2
    9.  Quorum ............................................. 3

III. BOARD OF DIRECTORS:  NUMBER, POWERS, MEETINGS

    A.  Composition and Selection.

    1.  Governing Body; Composition ........................ 3
    2.  Directors Appointed by Declarant ................... 3
    3.  Number of Directors ................................ 3
    4.  Election and Term of Office ........................ 3
    5.  Removal of Directors ............................... 4
    6.  Vacancies .......................................... 4

    B.  Meetings.

    7.  Organization Meetings .............................. 4
    8.  Regular Meetings ................................... 4
    9.  Special Meetings ................................... 4
   10.  Waiver of Notice ................................... 5
   11.  Quorum of Board of Directors ....................... 5
   12.  Compensation ....................................... 5
   13.  Open Meetings ...................................... 5
   14.  Executive Session .................................. 5
   15.  Action Without A Formal Meeting .................... 5
   16.  Telephonic Participation ........................... 6

19CV01235

Page

C.  Powers and Duties.

17. Powers                                          6
18. Management Agent                                7
19. Borrowing                                       7
20. Fining Procedure                                7

IV.  OFFICERS

1. Officers                                      8
2. Election, Term of Office, and Vacancies       8
3. Removal                                       8
4. President                                     8
5. Vice President                                8
6. Secretary                                     8
7. Treasurer                                     8
8. Resignation                                   9

V.  COMMITTEES                                        9

VI.  MISCELLANEOUS                                     9

1. Fiscal Year                                   9
2. Parliamentary Rules                           9
3. Conflicts                                     9
4. Amendment                                     9

2658g — 2/18/91

BYLAWS

OF

CHAPEL HILLS COMMUNITY ASSOCIATION, INC.

### Article I
### Name, Membership, Applicability, and Definitions

Section 1. <u>Name</u>. The name of the Association shall be Chapel Hills Community Association, Inc. (hereinafter sometimes referred to as the "Association").

Section 2. <u>Membership</u>. The Association shall have one (1) class of membership, as is more fully set forth in that Declaration of Protective Covenants for Chapel Hills (such Declaration, as amended, renewed, or extended from time to time, is hereinafter sometimes referred to as the "Declaration"), the terms of which pertaining to membership are specifically incorporated by reference herein.

Section 3. <u>Definitions</u>. The words used in these Bylaws shall have the same meaning as set forth in the Declaration, unless the context shall prohibit.

### Article II
### Association: Meetings, Quorum, Voting, Proxies

Section 1. <u>Place of Meetings</u>. Meetings of the Association shall be held at the principal office of the Association or at such other suitable place convenient to the members as may be designated by the Board of Directors, either in the Community or as convenient thereto as possible and practical.

Section 2. <u>First Meeting and Annual Meetings</u>. An annual or special meeting shall be held within one (1) year from the date the Declaration is recorded. Annual meetings shall be set by the Board so as to occur no later than sixty (60) days after the close of the Association's fiscal year. If the day for the annual meeting of the members is a legal holiday, the meeting will be held at the same hour on the first day following which is not a legal holiday (excluding Saturday and Sunday).

Section 3. <u>Special Meetings</u>. The President may call special meetings. In addition, it shall be the duty of the President to call a special meeting of the Association if so directed by resolution of a Majority of the Board of Directors or upon a petition signed by at least twenty-five (25%) percent of the Total Association Vote (the consent of the Declarant shall not be required). The notice of any special meeting shall state the date, time, and place of such meeting and the purpose thereof. No business shall be transacted at a special meeting, except as stated in the notice.

BOOK 709 PAGE 753

19CV01235

Section 4.  Notice of Meetings.  It shall be the duty of the Secretary to mail or to cause to be delivered to the Owner of record of each Lot a notice of each annual or special meeting of the Association stating the purpose of the special meeting, as well as the time and place where it is to be held.  If an Owner wishes notice to be given at an address other than his or her Lot, he or she shall have designated by notice in writing to the Secretary such other address.  The mailing or delivery of a notice of meeting in the manner provided in this Section shall be considered service of notice.  Notices shall be served not less than ten (10) nor more than thirty (30) days before a meeting.

Section 5.  Waiver of Notice.  Waiver of notice of a meeting of the members shall be deemed the equivalent of proper notice.  Any member may, in writing, waive notice of any meeting of the members, either before or after such meeting.  Attendance at a meeting by a member, whether in person or by proxy, shall be deemed waiver by such member of notice of the time, date, and place thereof, unless such member specifically objects to lack of proper notice at the time the meeting is called to order.

Section 6.  Adjournment of Meetings.  If any meetings of the Association cannot be held because a quorum is not present, a Majority of the members who are present at such meeting, either in person or by proxy, may adjourn the meeting to a time not less than five (5) nor more than thirty (30) days from the time the original meeting was called.  At such adjourned meeting at which a quorum is present, any business which might have been transacted at the meeting originally called may be transacted without further notice.

Section 7.  Voting.  The voting rights of the members shall be as set forth in the Declaration, and such voting rights are specifically incorporated herein.  Due to the size of the Community, it is anticipated that few substantive votes will be conducted at meetings of the Association members and that most votes will be by referendum with no further voting to be conducted at a meeting.  Unless a vote on any question is required by law or is required by the Declaration or Bylaws to be taken at a meeting (in which case a meeting shall be called and proxies shall be sent to all members entitled to vote on the issue(s) to be decided at the meeting), elections and other matters requiring a membership vote shall be submitted on a ballot or ballots to the members in referendum by mail or at polling places in the Community.  Ballots shall be returned to the Secretary by the date specified on the ballot.  The Board shall determine the method of voting, the form of all ballots, the wording of questions thereon and the deadline for return of ballots.  It shall designate the number and location of polling places, if any.  The Board may include on any ballot questions on which it seeks an advisory vote.  Members may suggest questions for any advisory vote which shall be evaluated by the Board for consistency with exercise of its duties and responsibilities.  In any advisory vote, each such question on a ballot shall indicate that the vote is for advisory purposes only.  Notice of referenda shall be given in the same manner as notice of meetings.

Section 8.  Proxies.  At all meetings of members, each member may vote in person or by proxy.  All proxies shall be in writing, dated, and filed with the Secretary before the appointed time of each meeting.  Every proxy

-2-

shall be revocable and shall automatically cease upon conveyance by the member of his or her Lot, or upon receipt of notice by the Secretary of the death or judicially declared incompetence of a member, or of written revocation, or upon the expiration of eleven (11) months from the date of the proxy.

Section 9.   <u>Quorum</u>.   The presence, in person or by proxy, of one-third (1/3) of the total eligible Association vote shall constitute a quorum at all meetings of the Association. The members present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the withdrawal of enough members to leave less than a quorum. The quorum for a referendum shall be one-third (1/3) of the votes of members entitled to vote thereon, except that there shall be no quorum requirement for advisory votes.

## Article III
### Board of Directors:  Number, Powers, Meetings

A.  <u>Composition and Selection</u>.

Section 1.   <u>Governing Body; Composition</u>.   The affairs of the Association shall be governed by a Board of Directors. Except as provided in Section 2 of this Article, the directors must reside in the Community and shall be members or spouses of such members; provided, however, no Person and his or her spouse may serve on the Board at the same time.

Section 2.   <u>Directors Appointed by Declarant</u>.   Declarant shall have the right to appoint or remove any member or members of the Board of Directors. or any officer or officers of the Association until such time as the first of the following events shall occur:  (a) the expiration of ten (10) years after the date of the recording of the Declaration; (b) the date on which seven hundred eighty-eight (788) Lots shall have been conveyed to Persons who have not purchased such Lots for the purpose of construction of a residence and resale of such Lot and residence; or (c) the surrender by Declarant in writing of the authority to appoint and remove directors and officers of the Association. Each Owner, by acceptance of a deed to or other conveyance of a Lot, vests in Declarant such authority to appoint and remove directors and officers of the Association. The directors selected by the Declarant need not be Owners or residents in the Community.

Section 3.   <u>Number of Directors</u>.   The Board shall consist of five (5) members.

Section 4.   <u>Election and Term of Office</u>.   Owner-elected directors shall be elected and hold office as follows:

(a)  After the Declarant's right to appoint directors and officers terminates, the Association shall call a special meeting to be held at which Owners shall elect five (5) directors.

(b)  At annual meetings of the membership thereafter, directors shall be elected.  Elected directors shall be nominated from the floor and may also

-3-

be nominated by a nominating committee, if such a committee is established by the Board. All candidates shall have a reasonable opportunity to communicate their qualifications to the members and to solicit votes. All eligible members of the Association shall vote on all directors to be elected, and the candidate(s) receiving the most votes shall be elected

Initially the term of two (2) directors shall be fixed at one (1) year and the term of three (3) directors shall be fixed at two (2) years. At the expiration of the initial term of office of each respective Owner-elected member of the Board of Directors, a successor shall be elected to serve for a term of two (2) years. The members of the Board of Directors shall hold office until their respective successors shall have been elected by the Association.

Section 5. <u>Removal of Directors</u>. At any regular or special meeting of the Association duly called, any one (1) or more of the members of the Board of Directors may be removed, with or without cause, by a Majority of the Total Association Vote and a successor may then and there be elected to fill the vacancy thus created. A director whose removal has been proposed by the Owners shall be given at least ten (10) days' notice of the calling of the meeting and the purpose thereof and shall be given an opportunity to be heard at the meeting. Additionally, any director who has three (3) consecutive unexcused absences from Board meetings or who is delinquent in the payment of an assessment for more than twenty (20) days may be removed by a Majority vote of the directors at a meeting, a quorum being present. This Section shall not apply to directors appointed by Declarant.

Section 6. <u>Vacancies</u>. Vacancies in the Board of Directors caused by any reason, excluding the removal of a director by vote of the Association, shall be filled by a vote of the Majority of the remaining directors, even though less than a quorum, at any meeting of the Board of Directors. Each Person so selected shall serve the unexpired portion of the term.

B. <u>Meetings</u>.

Section 7. <u>Organization Meetings</u>. The first meeting of the members of the Board of Directors following each annual meeting of the membership shall be held within ten (10) days thereafter at such time and place as shall be fixed by the Board.

Section 8. <u>Regular Meetings</u>. Regular meetings of the Board of Directors may be held at such time and place as shall be determined from time to time by a Majority of the directors, but at least four (4) such meetings shall be held during each fiscal year with at least one (1) per quarter. Notice of the regular schedule shall constitute sufficient notice of such meetings.

Section 9. <u>Special Meetings</u>. Special meetings of the Board of Directors shall be held when requested by the President, Vice President or by any three (3) directors. The notice shall specify the time and place of the meeting and the nature of any special business to be considered. The notice shall be given to each director by one of the following methods: (a) by

19CV01235

personal delivery; (b) written notice by first class mail, postage prepaid; (c) by telephone communication, either directly to the director or to a Person at the director's home or office who would reasonably be expected to communicate such notice promptly to the director; (d) by telegram, charges prepaid; or (e) by commercial delivery service to such director's home or office. All such notices shall be given or sent to the director's address or telephone number as shown on the records of the Association. Notices sent by first class mail shall be deposited into a United States mailbox at least four (4) days before the time set for the meeting. Notices given by personal delivery, telephone, or telegraph company shall be given at least forty-eight (48) hours before the time set for the meeting.

Section 10. <u>Waiver of Notice</u>. The transactions of any meeting of the Board of Directors, however called and noticed or wherever held, shall be as valid as though taken at a meeting duly held after regular call and notice, if (a) a quorum is present, and (b) either before or after the meeting, each of the directors not present signs a written waiver of notice, a consent to holding the meeting, or an approval of the minutes. The waiver of notice or consent need not specify the purpose of the meeting. Notice of a meeting shall also be deemed given to any director who attends the meeting without protesting before or at its commencement about the lack of adequate notice.

Section 11. <u>Quorum of Board of Directors</u>. At all meetings of the Board of Directors, a Majority of the directors shall constitute a quorum for the transaction of business, and the votes of a Majority of the directors present at a meeting at which a quorum is present shall constitute the decision of the Board of Directors. A meeting at which a quorum is initially present may continue to transact business, notwithstanding the withdrawal of directors, if any action taken is approved by at least a Majority of the required quorum for that meeting. If any meeting cannot be held because a quorum is not present, a Majority of the directors who are present at such meeting may adjourn the meeting to a time not less than five (5) nor more than thirty (30) days from the time that the original meeting was called. At such adjourned meeting at which a quorum is present, any business which might have been transacted at the meeting originally called may be transacted without further notice.

Section 12. <u>Compensation</u>. No director shall receive any compensation from the Association for acting as such.

Section 13. <u>Open Meetings</u>. All meetings of the Board shall be open to all members, but members other than directors may not participate in any discussion or deliberation unless expressly so authorized by the Board.

Section 14. <u>Executive Session</u>. The Board may adjourn a meeting and reconvene in executive session to discuss and vote upon personnel matters, litigation in which the Association is or may become involved, and orders of business of a similar nature. The nature of any and all business to be considered in executive session shall first be announced in open session.

Section 15. <u>Action Without A Formal Meeting</u>. Any action to be taken at a meeting of the directors or any action that may be taken at a meeting of

-5-

19CV01235

the directors may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the directors.

Section 16.  Telephonic Participation.  One (1) or more directors may participate in and vote during any regular or special meeting of the Board by telephone conference call or similar communication equipment by means of which all persons participating in the meeting can hear each other at the same time, and those directors so participating shall be present at such meeting.  Any such meeting at which a quorum participates shall constitute a meeting of the Board.

C.  Powers and Duties.

Section 17.  Powers.  The Board of Directors shall be responsible for the affairs of the Association and shall have all of the powers and duties necessary for the administration of the Association's affairs and, as provided by law, may do all acts and things as are not by the Declaration, Articles, or these Bylaws directed to be done and exercised exclusively by the members.  In addition to the duties imposed by these Bylaws or by any resolution of the Association that may hereafter be adopted, the Board of Directors shall have the power to and be responsible for the following, in way of explanation, but not limitation:

(a)  preparation and adoption of an annual budget in which there shall be established the contribution of each Owner to the Association Expenses;

(b)  making assessments to defray the Association Expenses, establishing the means and methods of collecting such assessments, and establishing the period of the installment payments of the annual assessment;

(c)  providing for the operation, care, upkeep, and maintenance of all areas which are the maintenance responsibility of the Association;

(d)  designating, hiring, and dismissing the personnel necessary for the operation of the Association and, where appropriate, providing for the compensation of such personnel and for the purchase of equipment, supplies, and material to be used by such personnel in the performance of their duties;

(e)  collecting the assessments, depositing the proceeds thereof in a bank depository which it shall approve, and using the proceeds to administer the Association;

(f)  making and amending use restrictions and rules and regulations;

(g)  opening of bank accounts on behalf of the Association and designating the signatories required;

(h)  enforcing by legal means the provisions of the Declaration, these Bylaws, and the rules and regulations adopted by it, and bring any proceedings which may be instituted on behalf of or against the Owners concerning the Association;

-6-



19CV01235

(i)   obtaining and carrying insurance against casualties and liabilities, as provided in the Declaration, and paying the premium cost thereof;

(j)   paying the cost of all services rendered to the Association or its members which are not directly chargeable to Owners;

(k)   keeping books with detailed accounts of the receipts and expenditures affecting the Association and its administration, and specifying the maintenance and repair expenses and any other expenses incurred; and

(l)   contracting with any Person for the performance of various duties and functions. The Board shall have the power to enter into common management agreements with trusts, condominiums, or other associations. Any and all functions of the Association shall be fully transferable by the Board, in whole or in part, to any other entity.

Section 18.  Management Agent.  The Board of Directors may employ for the Association a professional management agent or agents at a compensation established by the Board of Directors to perform such duties and services as the Board of Directors shall authorize. The Declarant or an affiliate of the Declarant may be employed as managing agent or Manager. The term of any management agreement shall not exceed one (1) year and shall be subject to termination by either party, without cause and without penalty, upon ninety (90) days' written notice.

Section 19.  Borrowing.  The Board of Directors shall have the power to borrow money for the purpose of repair or restoration of the Common Property and facilities without the approval of the members of the Association; provided, however, except with respect to borrowing contemplated by Article IV, Section 9 of the Declaration, the Board shall obtain membership approval in the same manner as for special assessments, in the event that the proposed borrowing is for the purpose of modifying, improving, or adding amenities, or the total amount of such borrowing exceeds or would exceed Ten Thousand ($10,000.00) Dollars outstanding debt at any one time.

Section 20.  Fining Procedure.  The Board shall not impose a fine (a late charge shall not constitute a fine) unless and until the following procedure is followed:

(a)  Notice.  Written notice shall be served upon the violator specifying:

(i)  the nature of the violation and the fine imposed;

(ii)  that the violator may, within ten (10) days from the date of the notice, request a hearing regarding the fine imposed;

(iii)  the name, address and telephone numbers of a person to contact to challenge the fine;

–7–

(iv)  that any statements, evidence, and witnesses may be produced by the violator at the hearing; and

(v)  that all rights to have the fine reconsidered are waived if a hearing is not requested within ten (10) days of the date of the notice.

(c)  Hearing.  If a hearing is requested, it shall be held before the Board in executive session, and the violator shall be given a reasonable opportunity to be heard.  The minutes of the meeting shall contain a written statement of the results of the hearing.

## Article IV
## Officers

Section 1.  Officers.  The officers of the Association shall be a President, Vice President, Secretary, and Treasurer.  Any two (2) or more offices may be held by the same person, excepting the offices of President and Secretary.  The President and Treasurer shall be elected from among the members of the Board of Directors.

Section 2.  Election, Term of Office, and Vacancies.  Except during the period in which the Declarant has the right to appoint the officers of the Association under Article III, Section 2 of these Bylaws, the officers of the Association shall be elected annually by the Board of Directors at the first meeting of the Board of Directors following each annual meeting of the members.  A vacancy in any office arising because of death, resignation, removal, or otherwise may be filled by the Board of Directors for the unexpired portion of the term.

Section 3.  Removal.  Any officer may be removed by the Board of Directors whenever, in its judgment, the best interests of the Association will be served thereby.

Section 4.  President.  The President shall be the chief executive officer of the Association and shall preside at all meetings of the Association and of the Board of Directors.  The President shall have all the general powers and duties which are incident to the office of the president of a corporation organized under the Georgia Nonprofit Corporation Code.

Section 5.  Vice President.  The Vice President shall act in the President's absence and shall have all powers, duties, and responsibilities provided for the President when so acting.

Section 6.  Secretary.  The Secretary shall keep the minutes of all meetings of the Association and of the Board of Directors and shall have charge of such books and papers as the Board of Directors may direct and shall, in general, perform all duties incident to the office of the secretary of a corporation organized in accordance with Georgia law.

Section 7.  Treasurer.  The Treasurer shall have the responsibility for the Association's funds and securities and shall be responsible for

-8-

keeping full and accurate financial records and books of account showing all receipts and disbursements, for preparing all required financial statements and tax returns, and for the deposit of all monies and other valuable effects in the name of the Association or the managing agent in such depositories as may from time to time be designated by the Board of Directors.

Section 8. Resignation. Any officer may resign at any time by giving written notice to the Board of Directors, the President, or the Secretary. Such resignation shall take effect on the date of the receipt of such notice or at any later time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

## Article V
## Committees

Committees to perform such tasks and to serve for such periods as may be designated by the Board are hereby authorized. Each committee shall be composed and shall operate in accordance with the terms of the resolution of the Board of Directors designating the committee or with rules adopted by the Board of Directors.

## Article VI
## Miscellaneous

Section 1. Fiscal Year. The fiscal year of the Association shall be the calendar year unless otherwise determined by resolution of the Board.

Section 2. Parliamentary Rules. Roberts Rules of Order (current edition) shall govern the conduct of all Association proceedings, when not in conflict with Georgia law, the Articles of Incorporation, the Declaration, these Bylaws, or a ruling made by the Person presiding over the proceeding.

Section 3. Conflicts. If there are conflicts or inconsistencies between the provisions of Georgia law, the Articles of Incorporation, the Declaration, and these Bylaws, the provisions of Georgia law, the Declaration, the Articles of Incorporation, and the Bylaws (in that order) shall prevail.

Section 4. Amendment. These Bylaws may be amended by the Board of Directors (a) if such amendment is necessary to bring any provision hereof into compliance with any applicable governmental statute, rule, or regulation or judicial determination which shall be in conflict therewith; (b) if such amendment is necessary to enable any reputable title insurance company to issue title insurance coverage with respect to the Lots subject to the Declaration; (c) if such amendment is required by an institutional or governmental lender or purchaser of mortgage loans, including, for example, the Federal National Mortgage Association or Federal Home Loan Mortgage Corporation, to enable such lender or purchaser to make or purchase Mortgage loans on the Lots subject to the Declaration; or (d) if such amendment is necessary to enable any governmental agency or reputable private insurance company to insure or guarantee Mortgage loans on the Lots subject to the Declaration. In addition, these Bylaws may be amended upon the affirmative

–9–

vote or written consent, or any combination thereof, of at least two-thirds (2/3) of the Total Association Vote; provided, however, that the Veterans Administration ("VA") (if it is then guaranteeing any Mortgage in the Community) and/or the U.S. Department of Housing and Urban Development ("HUD") (if it is then insuring any Mortgage in the Community) shall have the right to veto amendments to these Bylaws for as long as the Declarant has the right to appoint and remove the directors and officers of the Association.

2658g -- 02/18/90

RECORDED __2-21__ 19_91_
JANE C. WILLIAMS, CLERK
SUPERIOR COURT, DOUGLAS CO

-10-

BOOK **709** PAGE **762**

Book: 709  Page: 703  Seq: 60

# EXHIBIT
## "B"

**Prepared By:**
Mrs. Jacqueline Youngblood
5163 Chapel Crossing, Douglasville, GA. 301
Douglasville, 30135

Doc ID: 010926520004 Type: QCD
Recorded: 03/20/2018 at 04:11:00 PM
Fee Amt: $16.00 Page 1 of 4
Transfer Tax: $0.00
Douglas County Georgia
TAMMY M HOWARD Clerk Superior Court
BK **3575** PG **968-971**

# FILED

2018 MAR 20 PM 4: 11

SUPERIOR/STATE COURT
DOUGLAS COUNTY, GA
TAMMY M. HOWARD, CLERK

**After Recording Return To:**
Mr. Terry Evans
5163 Chapel Crossing, Douglasville, GA. 30135
Douglasville, 30135

)
)
)
)
) **TAX PARCEL ID #:** <u>HSE/LOT #200,</u>
<u>BAGBY PARK S/D</u>

---

# QUIT CLAIM DEED

*BE IT KNOWN BY ALL*, that Mrs. Jacqueline Youngblood, *("Grantor")*, a married female whose address is 5163 Chapel Xing, Douglasville, Georgia 30135, hereby *REMISES, RELEASES AND FOREVER QUITCLAIMS TO* Mr. Terry Evans *("Grantee")*, whose address is 5163 Chapel Crossing, Douglasville, GA. 30135, Douglasville, 30135, all right, title, interest and claim to the following real estate property located at 5163 Chapel Crossing, Douglasville, GA. 30135 in the City/Township of Douglasville, located in the County of Douglasville and State of and ZIP code of 30135, to-wit:

Property having Lot No. # 200, with the Section No. 00580150113, and property beginning at Lot 200, Bagby Park S/D, 5163 Chapel Crossing, Douglasville, GA. 30135.
SEE EXHIBIT A.

*FOR A VALUABLE CONSIDERATION,* in the amount of $1.00 dollars, given in hand and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged as of 03/09/2018.

*TO HAVE AND TO HOLD* all of Grantor's right, title and interest in and to the above described property unto the said Grantee, Grantee's heirs, administrators, executors, successors and/or assigns forever; so that neither Grantor nor Grantor's heirs, administrators, executors, successors and/or assigns shall have, claim or demand any right or title to the aforesaid property, premises or appurtenances or any party thereof.

_____
(Grantor's Signature)

_____
Mrs. Jacqueline Youngblood
(Grantor's Printed Name)

BK 3575 P0969

_(Grantee's Signature)_

Mr. Terry Evans
_(Grantee's Printed Name)_

Signed in our presence:

_(Witness #1 Signature)_

REV DAN LAADALE MONROE
_(FIRST WITNESS NAME TYPED)_

_(Witness #2 Signature)_

TERRY EVANS II
_(SECOND WITNESS NAME TYPED)_

### Grantee's Address:

Mr. Terry Evans
5163 Chapel Crossing, Douglasville, GA. 30135
Douglasville, 30135

### Grantor's Address:

Mrs. Jacqueline Youngblood
5163 Chapel Xing
Douglasville, Georgia 30135

### Mail Subsequent Tax Bills To:

Terry Evans
5163 Chapel Xing
Douglasville, Georgia 30135

BK3575100970

**STATE OF GEORGIA**                                              )
                                                                 )
**COUNTY OF FULTON**                                             )

The foregoing Quit Claim Deed was acknowledged before me on ___3/14/2018___ by Mrs. Jacqueline Youngblood, who is personally known to me or who has produced a valid driver's license and/or passport as identification, and such individual(s) having executed aforementioned instrument of his/her/their free and voluntary act and deed.

**IN WITNESS THEREOF**, to this Quit Claim Deed, I set my hand and seal.

Signed, sealed and delivered in the presence of:

_____
(Signature of Notary)

RAYMOND NELSON
(Printed Notary Name) **Fulton County, Georgia**

My Commission expires: ___2-11-2020___

Exhibit A

BK3575i60971

Doc ID: 000582070001 Type: GLR
Filed: 03/07/2005 at 10:22:00 AM
Fee Amt: $455.00 Page 1 of 1
Douglas County Georgia
Cindy Chaffin Clerk Superior Court
BK 2118 PG 548

RETURN TO:

KING AND ASSOCIATES, P.C.
3193 EVELYN STREET
TUCKER, GA 30084

DOUGLAS COUNTY, GEORGIA
REAL ESTATE TRANSFER TAX
$ 450.00 DATE 3-29-05

Cindy Chaffin
CLERK SUPERIOR COURT

**Return Recorded Document to:**
King & Associates
2200 Northlake Parkway, Suite 320
Tucker, Georgia 30084

## WARRANTY DEED

**STATE OF GEORGIA**

**COUNTY OF DEKALB**

File #: KK05-32

   **This Indenture** made this 9th day of **February, 2005** between **EVELYN HESTER** , of the County of , State of Georgia, as party or parties of the first part, hereinunder called Grantor, and **JACQUELINE YOUNGBLOOD** , as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits),

   **W I T N E S S E T H that:** Grantor, for and in consideration of the sum of **TEN AND 00/100'S ($10.00) Dollars** and other good and valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

   **ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 58 OF THE 1ST DISTRICT AND 5TH SECTION OF DOUGLAS COUNTY, GEORGIA, AND BEING LOT NO. 200 OF BAGBY PARK SUBDIVISION (AT CHAPEL HILLS) AS SHOWN BY PLAT OF SAID SUBDIVISION RECORDED IN THE REAL PROPERTY RECORDS OF DOUGLAS COUNTY, GEORGIA, IN PLAT BOOK 21, PAGE 69, SAID PLAT BEING MADE A PART HEREOF BY THIS REFERENCE THERETO FOR A MORE COMPLETE DESCRIPTION OF THE METES AND BOUNDS, COURSES AND DISTANCES OF SAID PROPERTY.**

   **TO HAVE AND TO HOLD** the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in **FEE SIMPLE.**

   **AND THE SAID** Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

   **IN WITNESS WHEREOF,** Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Notary Public

Evelyn Hester by _____ (Seal)
**EVELYN HESTER**

_____ _____ (Seal)

SCANNED

MAR 2 3 2018

Tammy M. Howard, Clerk
Superior & State Court
Douglas County, GA

Book: 2118 Page: 548 Seq: 1

# EXHIBIT
# "C"



| | | Statement Date: | 4/26/2023 |
|---|---|---|---|
| | | Page Number | 1 |

**Chapel Hills Community Association, Inc.**
PO Box 1892
Douglasville, GA 30133
(770) 949-6536
board@chapelhillsca.com

**Statement**

Terry Evans
5163 Chapel Crossing
Douglasville, GA 30135

| Account Number | CH5163CXG |
|---|---|
| Amount Due | $3,039.79 |

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| | *Previous Balance* | | | *$0.00* |
| 01/01/2017 | Assessment 2017 2017 | $525.00 | | $525.00 |
| 02/07/2017 | Late Fee 2017 (Delinquent Fee) 2017 | $52.50 | | $577.50 |
| 02/07/2017 | Interest (Delinquent Interest) 2017 | $9.58 | | $587.08 |
| 03/01/2017 | Payment Received Credit Card | | ($288.75) | $298.33 |
| 03/01/2017 | Interest - Delinquent Interest 2017 | $7.88 | | $306.21 |
| 04/01/2017 | Interest - Delinquent Interest 2017 | $4.33 | | $310.54 |
| 05/01/2017 | ARC Check #4959 | | ($248.92) | $61.62 |
| 05/01/2017 | Interest - Delinquent Interest 2017 | $4.33 | | $65.95 |
| 05/01/2017 | ARC Check #4959 | | ($52.50) | $13.45 |
| 05/01/2017 | ARC Check #4959 | | ($9.58) | $3.87 |
| 06/09/2017 | Interest Write Off - MP Charge Adjustment | | ($3.87) | $0.00 |
| 01/01/2018 | Annual Assessment 2018 | $525.00 | | $525.00 |
| 02/12/2018 | Late Fees - 2018 (Delinquent Fee) 2018 | $52.50 | | $577.50 |
| 03/01/2018 | Interest - Delinquent Interest 2018 | $7.88 | | $585.38 |
| 03/06/2018 | CK#5021 | | ($525.00) | $60.38 |
| 03/06/2018 | CK#5021 | | ($52.50) | $7.88 |
| 03/15/2018 | Interest Charge Adjustment | | ($7.88) | $0.00 |
| 01/01/2019 | Assessment - Homeowner 2019 | $525.00 | | $525.00 |
| 02/01/2019 | Interest - Delinquent Interest 2019 | $7.88 | | $532.88 |
| 02/01/2019 | Assessment - Homeowner (Delinquent Fee) 2019 | $52.50 | | $585.38 |
| 02/11/2019 | CK#4322 | | ($300.00) | $285.38 |
| 03/01/2019 | Interest - Delinquent Interest 2019 | $4.16 | | $289.54 |
| 03/04/2019 | CK#4332 | | ($232.88) | $56.66 |
| 03/04/2019 | CK#4332 | | ($52.50) | $4.16 |
| 03/07/2019 | Interest - Delinquent Interest Charge Adjustment | | ($4.16) | $0.00 |
| 01/01/2020 | Annual Assessment 2020 | $525.00 | | $525.00 |
| 01/08/2020 | Landscaping -Other 2020 | $50.00 | | $575.00 |
| 01/31/2020 | eCheck | | ($525.00) | $50.00 |
| 03/01/2020 | Interest - Delinquent Interest 2020 | $0.75 | | $50.75 |
| 04/01/2020 | Interest - Delinquent Interest 2020 | $0.75 | | $51.50 |
| 05/01/2020 | Interest - Delinquent Interest 2020 | $0.75 | | $52.25 |
| 06/01/2020 | Interest - Delinquent Interest 2020 | $0.75 | | $53.00 |
| 06/26/2020 | Landscaping -Other 2020 | $50.00 | | $103.00 |
| 07/01/2020 | Interest - Delinquent Interest 2020 | $0.75 | | $103.75 |
| 08/01/2020 | Interest - Delinquent Interest 2020 | $1.50 | | $105.25 |
| 09/01/2020 | Interest - Delinquent Interest 2020 | $1.50 | | $106.75 |
| 10/01/2020 | Interest - Delinquent Interest 2020 | $1.50 | | $108.25 |
| 11/01/2020 | Interest - Delinquent Interest 2020 | $1.50 | | $109.75 |
| 12/01/2020 | Interest - Delinquent Interest 2020 | $1.50 | | $111.25 |
| 01/01/2021 | Assessment - Homeowner 2021 | $525.00 | | $636.25 |
| 01/01/2021 | Interest - Delinquent Interest 2021 | $1.50 | | $637.75 |
| 02/01/2021 | Interest - Delinquent Interest 2021 | $9.38 | | $647.13 |



**Chapel Hills Community Association, Inc.**
PO Box 1892
Douglasville, GA 30133
(770) 949-6536
board@chapelhillsca.com

| | Statement Date: | 4/26/2023 |
|---|---|---|
| | Page Number | 2 |

## Statement

**Terry Evans**
**5163 Chapel Crossing**
**Douglasville, GA 30135**

| Account Number | CH5163CXG |
|---|---|
| Amount Due | $3,039.79 |

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 02/02/2021 | ARC Check #125788835 | | ($525.00) | $122.13 |
| 02/10/2021 | Late Fee - 2021 (Delinquent Fee) 2021 | $52.50 | | $174.63 |
| 03/01/2021 | Interest - Delinquent Interest 2021 | $1.67 | | $176.30 |
| 04/01/2021 | Interest - Delinquent Interest 2021 | $2.46 | | $178.76 |
| 04/16/2021 | Landscaping -Other 2021 | $240.00 | | $418.76 |
| 05/01/2021 | Interest - Delinquent Interest 2021 | $2.46 | | $421.22 |
| 05/06/2021 | Lien Notification 2021 | $20.00 | | $441.22 |
| 05/16/2021 | Lien Filing 2021 | $150.00 | | $591.22 |
| 06/01/2021 | Interest - Delinquent Interest 2021 | $6.06 | | $597.28 |
| 07/01/2021 | Interest - Delinquent Interest 2021 | $8.61 | | $605.89 |
| 08/01/2021 | Interest - Delinquent Interest 2021 | $8.61 | | $614.50 |
| 09/01/2021 | Interest - Delinquent Interest 2021 | $8.61 | | $623.11 |
| 10/01/2021 | Interest - Delinquent Interest 2021 | $8.61 | | $631.72 |
| 11/01/2021 | Interest - Delinquent Interest 2021 | $8.61 | | $640.33 |
| 12/01/2021 | Interest - Delinquent Interest 2021 | $8.61 | | $648.94 |
| 01/01/2022 | Annual Assessment - 2022 2022 | $550.00 | | $1,198.94 |
| 01/01/2022 | Interest - Delinquent Interest 2022 | $8.61 | | $1,207.55 |
| 01/28/2022 | eCheck | | ($497.50) | $710.05 |
| 01/28/2022 | eCheck | | ($52.50) | $657.55 |
| 02/01/2022 | Interest - Delinquent Interest 2022 | $8.87 | | $666.42 |
| 02/03/2022 | Return - ISF Payment Adjustment | $497.50 | | $1,163.92 |
| 02/03/2022 | Returned payment - Insufficient Funds 2022 | $50.00 | | $1,213.92 |
| 02/03/2022 | Return - ISF Payment Adjustment | $52.50 | | $1,266.42 |
| 02/07/2022 | eCheck | | ($547.50) | $718.92 |
| 02/07/2022 | eCheck | | ($52.50) | $666.42 |
| 02/09/2022 | Late Fee - 2022 (Delinquent Fee) 2022 | $55.00 | | $721.42 |
| 03/01/2022 | Interest - Delinquent Interest 2022 | $8.25 | | $729.67 |
| 03/21/2022 | Landscape - other 2022 | $140.00 | | $869.67 |
| 04/01/2022 | Interest - Delinquent Interest 2022 | $9.83 | | $879.50 |
| 04/01/2022 | Maintenance-Home Needs Repair 2022 | $50.00 | | $929.50 |
| 04/01/2022 | Maintenance-Paint Home 2022 | $50.00 | | $979.50 |
| 04/11/2022 | Interest - Delinquent Interest (Delinquent Interest) 2022 | $9.83 | | $989.33 |
| 05/11/2022 | Interest - Delinquent Interest (Delinquent Interest) 2022 | $13.43 | | $1,002.76 |
| 06/11/2022 | Interest - Delinquent Interest (Delinquent Interest) 2022 | $13.43 | | $1,016.19 |
| 06/13/2022 | Maintenance-Home Needs Repair 2022 | $50.00 | | $1,066.19 |
| 06/13/2022 | Maintenance-Paint Home 2022 | $50.00 | | $1,116.19 |
| 07/11/2022 | Interest - Delinquent Interest (Delinquent Interest) 2022 | $14.93 | | $1,131.12 |
| 08/11/2022 | Interest - Delinquent Interest (Delinquent Interest) 2022 | $14.93 | | $1,146.05 |
| 09/07/2022 | Attorney Fees 2022 | $150.60 | | $1,296.65 |
| 09/11/2022 | Interest - Delinquent Interest (Delinquent Interest) 2022 | $14.93 | | $1,311.58 |
| 09/16/2022 | Maintenance-Home Needs Repair 2022 | $230.00 | | $1,541.58 |



| | Statement Date: | 4/26/2023 |
|---|---|---|
| | Page Number | 3 |

**Chapel Hills Community Association, Inc.**
PO Box 1892
Douglasville, GA 30133
(770) 949-6536
board@chapelhillsca.com

## Statement

**Terry Evans**
**5163 Chapel Crossing**
**Douglasville, GA 30135**

| Account Number | CH5163CXG |
|---|---|
| Amount Due | $3,039.79 |

| | | | | |
|---|---|---|---|---|
| 09/16/2022 | Maintenance-Paint Home 2022 | $230.00 | | $1,771.58 |
| 10/01/2022 | Interest - Delinquent Interest 2022 | $14.93 | | $1,786.51 |
| 10/14/2022 | Maintenance-Home Needs Repair 2022 | $100.00 | | $1,886.51 |
| 10/14/2022 | Maintenance-Paint Home 2022 | $100.00 | | $1,986.51 |
| 11/01/2022 | Interest - Delinquent Interest 2022 | $24.08 | | $2,010.59 |
| 11/03/2022 | Attorney Fees 2022 | $150.60 | | $2,161.19 |
| 12/01/2022 | Interest - Delinquent Interest 2022 | $29.34 | | $2,190.53 |
| 12/09/2022 | Maintenance-Home Needs Repair 2022 | $100.00 | | $2,290.53 |
| 12/09/2022 | Maintenance-Paint Home 2022 | $100.00 | | $2,390.53 |
| 01/01/2023 | Annual Assessment - 2023 2023 | $600.00 | | $2,990.53 |
| 01/01/2023 | Interest - Delinquent Interest 2023 | $29.34 | | $3,019.87 |
| 01/06/2023 | Maintenance-Home Needs Repair 2023 | $100.00 | | $3,119.87 |
| 01/06/2023 | Maintenance-Paint Home 2023 | $100.00 | | $3,219.87 |
| 01/30/2023 | ARC Check #4607 | | ($600.00) | $2,619.87 |
| 02/01/2023 | Interest - Delinquent Interest 2023 | $33.09 | | $2,652.96 |
| 02/03/2023 | Maintenance-Home Needs Repair 2023 | $100.00 | | $2,752.96 |
| 02/03/2023 | Maintenance-Paint Home 2023 | $100.00 | | $2,852.96 |
| 02/03/2023 | Landscaping -Beds 2023 | $50.00 | | $2,902.96 |
| 02/13/2023 | Late Fee - 2023 (Delinquent Fee) 2023 | $60.00 | | $2,962.96 |
| 03/01/2023 | Interest - Delinquent Interest 2023 | $36.09 | | $2,999.05 |
| 04/01/2023 | Interest - Delinquent Interest 2023 | $40.74 | | $3,039.79 |
| | | | *Balance* | *$3,039.79* |

Please detach and return this portion with payment. Do not staple or fold.

**Chapel Hills Community Association, Inc.**
PO Box 1892
Douglasville, GA 30133
(770) 949-6536
board@chapelhillsca.com

| Account Number | CH5163CXG |
|---|---|
| Amount Due | $3,039.79 |

Re: 5163 Chapel Crossing

To:   Chapel Hills Community Association, Inc.
      PO Box 419
      Commerce, GA 30529

**Make Checks Payable To:**
**Chapel Hills Community Association, Inc.**

0103 000000CH 0000000CH5163CXG 9 00303979 00303979 0

# SUPERIOR COURT OF DOUGLAS COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>23CV00694</u>

Chapel Hills Community Association, Inc.

_____

**PLAINTIFF**

                                              **VS.**

Evans, Terry

_____

**DEFENDANT**

                              **SUMMONS**

TO: EVANS, TERRY

You are hereby summoned and required to file with the Clerk of said court and serve upon the
Plaintiff's attorney, whose name and address is:

        **Victor J. Harrison**
        **Harrison Law, LLC**
        **P.O. Box 1495**
        **Douglasville, Georgia 30133**

an answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will
be taken against you for the relief demanded in the complaint.

**This 1st day of May, 2023.**

        Clerk of Superior Court

_____
        Annetta D. Stembridge, Clerk
        Douglas County, Georgia

**General Civil and Domestic Relations Case Filing Information Form**

☑ **Superior or** ☐ **State Court of** Douglas _____ **County**

| For Clerk Use Only |
|---|
| **Date Filed** 05-01-2023          **Case Number** 23CV00694 |
| **MM-DD-YYYY** |

**Plaintiff(s)**                                        **Defendant(s)**

Chapel Hills Community Association, Inc.                 Evans, Terry

| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Harrison, Victor J. _____   **Bar Number** 331799 _____   **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☑ Contract
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
**Case Number**                      **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.20

**IN THE SUPERIOR COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY ASSOCIATION, INC. | ) ) ) | CIVIL ACTION |
| Plaintiff, | ) | |
| v. | ) ) | FILE NO. 23CV00694 |
| TERRY EVANS | ) ) | June 30, 2023 |
| Defendant. | ) ) | |

**ENTRY OF APPEARANCE**

Notice is provided pursuant to the Uniform Rules for the Superior Court, Section 4.2 of the entry in the above referenced action representing: Terry Evans who is a defendant in the above styled action.

This 30 day of June 2023

Respectfully submitted,
The Wilson Firm, LLC

 /s/ David Wilson
David A. Wilson
Georgia Bar No. 233195
Attorney for Defendant
Terry Evans
12461 Veterans Memorial Hwy, #580
Tel. (470) 223-8271
Fax: (470) 298-3791
da@wilsonfirmatlanta.com

 /s/ James Hamraie
Payum James Hamraie
Georgia Bar No. 831768
Attorney for Defendant
Terry Evans
12461 Veterans Memorial Hwy, #580
Tel. 470-232-0169
Fax: (470) 298-3791
james@wilsonfirmatlanta.com

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY ASSOCIATION, INC. | ) ) ) | CIVIL ACTION |
| Plaintiff, | ) ) | |
| v. | ) ) | FILE NO. 23CV00694 |
| TERRY EVANS | ) ) | |
| Defendant. | ) ) | June 30, 2023 |

<u>ANSWER OF TERRY EVANS TO CHAPEL HILLS COMMUNITY ASSOCIATION, INC's ANSWER AND COUNTERCLAIM</u>

**COMES NOW,** Terry Evans (hereinafter "Defendant"), in the above-styled action and files his Answer to Chapel Hills Community Association, Inc.'s "Complaint" and Counterclaim against Plaintiff Chapel Hills Community Association, Inc., showing the Court as follows:

**FIRST DEFENSE**

The complaint fails to state a claim upon which relief may be granted. O.C.G.A. § 9-11-12(b)(6).

**SECOND DEFENSE**

All or some of the claims in the Complaint are barred by the doctrine of laches or unjustifiable delay. O.C.G.A. § 23-1-25.

**THIRD DEFENSE**

That Chapel Hills Community Association, Inc.'s claim accrued more than four (4) years prior to the commencement of this action. This action is, therefore, barred by the applicable four-year statute of limitations for open accounts. O.C.G.A. § 9-3-25.

**FOURTH DEFENSE**

Insufficiency of process and failure to verify the Plaintiff's claims. O.C.G.A. § 9-11-12(h).

## FIFTH DEFENSE

The court lacks subject matter jurisdiction over Terry Evans. O.C.G.A. § 9-11-12(h)(3).

## SIXTH DEFENSE

The court lacks personal jurisdiction over Terry Evans. O.C.G.A. § 9-11-12(h)(1).

## SEVENTH DEFENSE

That Chapel Hills Community Association, Inc.'s claims are barred, in whole or in part, by the doctrine of estoppel, including but not limited to deception and gross negligence by the Plaintiff.

## EIGHTH DEFENSE

That some or all of the alleged violations are improperly attributed to the Defendant, pertaining to property that does not belong to the Defendant or to objects existing on Defendant's property.

## NINTH DEFENSE

That an accord and satisfaction was reached regarding the account dues.

## TENTH DEFENSE

That Plaintiff intentionally ignored Defendant's facts and explanation for the alleged violations.

## ELEVENTH DEFENSE

That interest and penalties are not appropriate forms of recovery since the Defendant has made reasonable efforts to resolve the perceived errors in the balance and provide additional information at every step in the process.

## TWELVETH DEFENSE

That, insofar the Court makes a determination that Defendant failed in performance of its obligations, that such failure was due to a sincere perception of fraud, inequity, and impropriety experienced by the Defendant.

## **THIRTEENTH DEFENSE**

That, insofar as the Court makes a determination that Defendant has not paid some or all of the outstanding amounts, that Defendant did pay the amounts that Defendant determined not to be in dispute, while it continued to make good faith efforts to investigate the facts surrounding the alleged violations and work with the Plaintiff to resolve conflicting discrepancies.

## **FOURTEENTH DEFENSE**

For his Eleventh Defense, Terry Evans responds to the individually numbered paragraphs of Chapel Hills Community Association, Inc.'s Complaint as follows:

1. Terry Evans admits the allegations contained in paragraph 1, 2, of the Complaint.

2. Terry Evans denies the allegations contained in paragraph 4, 5, and 13. of the Complaint

3. Terry Evans denies the allegations contained in paragraph 3 and 6. of the Complaint insofar as such a requirement to be bound by the Declaration is conditional, and not ubiquitous, and because the Owner of the property is only subject to all terms, conditions, and requirements of the Declaration provided that there is no prior misconduct or error on the part of the Plaintiff which relates to an term, condition, or requirement. In further response to the allegations contained in paragraph 3. of the Complaint, Terry Evans admits that it is the owner of the real property at 5163 Chapel Crossing, Douglasville Georgia, but denies the boundaries of the property as they have been interpreted under the alleged violations assessed by the Plaintiff against the Defendant. Additionally, in further response to the allegations contained in paragraph 3. of the Complaint, Terry Evans admits that it is the owner of the real property, but denies that it was subject to all terms, conditions, and requirements of the Declaration due to errors and misconduct on the part of the Plaintiff.

4. Terry Evans denies the allegations contained in paragraph 7. of the Complaint insofar as the requirements set forth relating to Lots and Parcels, only apply to the specific Lot or Parcel, based on the official property boundaries, and an owner's responsibility under Section 2 of the Declaration only extends to "specific assessments" that pertain only to a "particular lot." Since Defendant alleges that many of plaintiff's alleged violations and supporting evidence concern property, fixtures, and objects that belong to neighboring property and not the Defendant's property. In further response to the allegations contained in paragraph 3. of the Complaint, Terry Evans admits the included text originates from Section 2 of the Declaration and that Owners only only liable for assessments pertaining to their specific lot, as stated: "each Owner shall personally responsible liable for the portion of each assessment coming due while Owner of a Lot."

5. Terry Evans denies the allegations contained in paragraph 8. of the Complaint, specifically, as the annual assessments were based on erroneous write-ups, with incorrect conclusions and facts, which Defendant attempted to dispute, and because the assessments did not, some or all, relate to the Defendant's property and therefore did not become "owing" pursuant to Section 2. In further response to the allegations contained in paragraph 3. of the Complaint, Terry Evans admits Section 2 of the Declaration creates responsibility for owner's to pay assessments when it has been properly assessed against owner's specific lot, conditions which Defendant believes were never satisfied.

6. Terry Evans denies the allegations contained in paragraphs 8, 9, 10, and 11. of the Complaint since the Defendant's obligation to pay the annual assessments only triggers if the amount assessed and the facts underlying the alleged violations are accurate. Additionally, with regards to the allegations contained in Paragraph 9 and 10, the Defendant has acted in good faith and sincere belief of the failure of the Plaintiff to carefully consider the Defendant's evidence and explanation for the alleged violations. In further response to the allegations contained in paragraph 3. of the Complaint, Terry Evans admits Section 2 of the Declaration creates a responsibility for owners only when there is not a legitimate explanation or excuse and after all parties have complied with their obligations under the Agreement.

6. Terry Evans denies the allegations contained in paragraphs 9, 10, and 11. of the Complaint since fines, late charges, and/or interest should not be assessed during the period during which the Defendant was attempting in good faith to resolve the disputed facts. Additionally, with regards to the allegations contained in Paragraph 9, 10, and 11 the Defendant has acted in good faith and a sincere belief that the Plaintiff failed to carefully consider the Defendant's evidence and explanation for the alleged violations.

7. Terry Evans denies the allegations contained in paragraphs 12. alleging that Defendant refused to timely pay the assessments, fines, late charges, and interest, because such alleged monies were actively in dispute and our client maintained a good faith belief that Plaintiff's assessment was erroneous. In further response to the allegations contained in paragraph 12. of the Complaint, Terry Evans admits that the Transaction History in Exhibit "C" reflects the number $3,039.79, but denies that this number is true or accurate.

as the annual assessments were based on erroneous write-ups, with incorrect conclusions and facts, which Defendant attempted to dispute, and because the assessments did not, some or all, relate to the Defendant's property and therefore did not become "owing" pursuant to Section 2. In further response to the allegations contained in paragraph 3. of the Complaint, Terry Evans admits Section 2 of the Declaration creates responsibility for owner's to pay assessments when it has been properly assessed against owner's specific lot, conditions which Defendant believes were never satisfied.

**WHEREFORE**, Terry Evans, having made his Answer, hereby demands a trial by a jury of twelve, and prays for judgment dismissing Complaint with prejudice and requests judgment in its favor and that it be granted such other relief as this Court deems justice to demand.

**COUNTERCLAIM AGAINST PLAINTIFF** CHAPEL HILLS COMMUNITY ASSOCIATION, INC.

For his Counterclaim against Plaintiff Chapel Hills Community Association, Inc., Terry Evans alleges as follows:

That Plaintiff Chapel Hills Community Association, Inc.'s engaged in breach of contract.

That the pattern and practice of Plaintiff Chapel Hills Community Association, Inc.'s conducted violated the Fair Housing Act pertaining to racial discrimination.

That the pattern and practice of Plaintiff Chapel Hills Community Association, Inc.'s conducted violated the Fair Housing Act pertaining to age discrimination.

**THE PARTIES**

1. Defendant h is an individual residing at 5163 Chapel Crossing, Douglasville, GA 30135.

2. Plaintiff Chapel Hills Community Association, Inc. is an individual who, upon information and belief, resides at 8601 Baldwin Parkway, Ste 200, Douglasville, GA, 30134.

**JURISDICTION AND VENUE**

3. Plaintiff Chapel Hills Community Association, Inc. is subject to the jurisdiction and venue of this court.

**COUNT ONE**

**Breach of Contract**

4. Defendant Terry Evans repeats and restates the allegations contained in the prior paragraphs of this Counterclaim as if set forth more fully herein.

5. That the Plaintiff is liable for breach of contract, including the valid Declaration of Covenants, Conditions and Restrictions, and other related documents, due to selective enforcement of HOA fines against the Defendant and not against other neighbors.

6. That the Plaintiff is liable for breach of contract due to failure to perform its obligations under the contract, including grossly negligent enforcement of HOA fines in an improper manner, despite reasonable notice by the Defendant of possible errors.

7. That the Plaintiff had a duty under the contract and relevant law to exercise reasonable care or commercially diligent efforts to investigate the facts after errors were brought to the Plaintiff's attention by the Defendant.

8. That the Defendant is entitled to recover all or part of his previously paid annual HOA dues from the period of 2019 to 2023, due to breach of agreement and failure to receive the value of the dues paid.

9. That the related dues were comprised five-hundred and twenty-five dollar ($525.00) annual payments, and a six-hundred dollar ($600.00) annual payment in 2023, for a subtotal of $2,700.00, along with any other related damages arising from this matter.

10. As a direct and proximate result of Plaintiff Chapel Hills Community Association, Inc.'s actions, Defendant has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT TWO

### Racial Discrimination

11. Defendant Terry Evans repeats and restates the allegations contained in the prior paragraphs of this Counterclaim as if set forth more fully herein.

12. That Plaintiff's selective enforcement of HOA fines against the Defendant and ongoing pattern of behavior constitutes a pattern and practice of discrimination in violation of the Fair Housing Act

13. That the Plaintiff did not similarly enforce the same policies that have been enforced upon the Defend upon all other properties that are similarly subject to the HOA rules.

14. That the Plaintiff has granted accommodations to other similarly situated neighbors that do not belong to the protected class, but did not make any such offers or compromises with the Defendant.

14. That the Plaintiff has discriminated against other similarly situated neighbors belonging to the same protected class as the Defendant.

15. That Plaintiff, was repeatedly placed on notice by Defendant of Plaintiff's selective enforcement, erroneous conclusions, and faulty charges.

16. That Plaintiff refused to take prompt action to correct or end the discriminatory practice in violation of 24 CFR § 100.50(b)(7) and/or 42 USC 3617.

17. As a direct and proximate result of Plaintiff Chapel Hills Community Association, Inc.'s actions, Defendant has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT THREE

### Age-based Discrimination

18. Defendant Terry Evans repeats and restates the allegations contained in the prior paragraphs of this Counterclaim as if set forth more fully herein.

19. That Plaintiff's refused to grant the Defendant reasonable accommodations with regards to HOA rules and requirements pertaining to the upkeep of his property given his official disability status.

20. That Plaintiff's selective enforcement of HOA fines against the Defendant and ongoing pattern of behavior constitutes a pattern and practice of discrimination in violation of the Fair Housing Act

21. That the Plaintiff did not similarly enforce the same policies that have been enforced upon the Defend upon all other properties and tenants that are similarly subject to the HOA rules.

22. That Plaintiff, was repeatedly placed on notice by Defendant of Plaintiff's selective enforcement, erroneous conclusions, and faulty charges.

23. That Plaintiff refused to take prompt action to correct or end the discriminatory practice in violation of 42 USC §3604(f)(3)(A) and (B) and 42 USC 3617.

24. As a direct and proximate result of Plaintiff Chapel Hills Community Association, Inc.'s actions, Defendant has suffered and will continue to suffer damages in an amount to be proven at trial.

**WHEREFORE**, by reason of the foregoing, Defendant Terry Evans hereby respectfully requests the following relief:

(A) Compensatory damages in an amount to be proven at trial, and which may exceed the amount of recovery sought in the pleadings of the opposing party.  O.C.G.A. § 9-11-13(c).

(B) Court costs and attorney's fees, due Plaintiff's bad faith misconduct and behavior that caused the Defendant unnecessary trouble and expense, despite the Defendant's best efforts to resolve this issue directly and informally with the HOA outside of a court action. O.C.G.A. § 13-6-11; and

(C) Such other and further relief as the court deems just and proper.


This 30 day of June, 2023.

Respectfully submitted,
The Wilson Firm, LLC


 /s/ David Wilson
David A. Wilson
Georgia Bar No. 233195
Attorney for Defendant
Terry Evans
12461 Veterans Memorial Hwy, #580
Tel. (470) 223-8271
Fax: (470) 298-3791
da@wilsonfirmatlanta.com

/s/ James Hamraie
Payum James Hamraie
Georgia Bar No. 831768
Attorney for Defendant
Terry Evans
12461 Veterans Memorial Hwy, #580
Tel. 470-232-0169
Fax: (470) 298-3791
james@wilsonfirmatlanta.com

**IN THE SUPERIOR COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY ASSOCIATION, INC. | ) ) ) | CIVIL ACTION |
| Plaintiff, | ) | |
| v. | ) ) | FILE NO. 23CV00694 |
| TERRY EVANS | ) ) | June 30, 2023 |
| Defendant. | ) | |

## <u>VERIFICATION</u>

**PERSONALLY APPEARED** before the undersigned attesting officer duly authorized by law to administer oaths, Terry Evans, who, after first being sworn, deposes and states that the facts set forth in the within and foregoing Answer and Counterclaim are true and correct to the best of his or her knowledge and belief.

This 30 day of June, 2023.

Respectfully submitted,
The Wilson Firm, LLC

 /s/ David Wilson
David A. Wilson
Georgia Bar No. 233195
Attorney for Defendant
Terry Evans
12461 Veterans Memorial Hwy, #580
Tel. (470) 223-8271
Fax: (470) 298-3791
da@wilsonfirmatlanta.com

 /s/ James Hamraie
Payum James Hamraie
Georgia Bar No. 831768
Attorney for Defendant
Terry Evans
12461 Veterans Memorial Hwy, #580
Tel. 470-232-0169
Fax: (470) 298-3791
james@wilsonfirmatlanta.com

## IN THE SUPERIOR COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY ASSOCIATION, INC. | ) ) ) | CIVIL ACTION |
| Plaintiff, | ) | |
| v. | ) | FILE NO. 23CV00694 |
| | ) | |
| TERRY EVANS | ) ) | June 30, 2023 |
| Defendant. | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Entry of Appearance and the Defendant's Answer and Counterclaim upon counsel for the Plaintiff by causing to be delivered by hand a copy of same as follows:

> Victor J Harrison, Esq.
> Harrison Law, LLC
> P.O. Box 1495
> Douglasville, Georgia  30133

This 30 day of June, 2023.

Respectfully submitted,
The Wilson Firm, LLC


 /s/ James Hamraie
Payum James Hamraie
Georgia Bar No. 831768
Attorney for Defendant
Terry Evans
12461 Veterans Memorial Hwy, #580
Tel. 470-232-0169
Fax: (470) 298-3791
james@wilsonfirmatlanta.com

**IN THE SUPERIOR COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY ASSOCIATION, INC. | ) ) ) | CIVIL ACTION |
| Plaintiff, | ) | |
| v. | ) | FILE NO. 23CV00694 |
| | ) | |
| TERRY EVANS | ) | |
| | ) | June 30, 2023 |
| Defendant. | ) | |

**ENTRY OF APPEARANCE**

Notice is provided pursuant to the Uniform Rules for the Superior Court, Section 4.2 of the entry in the above referenced action representing: Terry Evans who is a defendant in the above styled action.

        This 30 day of June  2023

                                     Respectfully submitted,
                                     The Wilson Firm, LLC

                                     /s/ David Wilson
                                     David A. Wilson
                                     Georgia Bar No. 233195
                                     Attorney for Defendant
                                     Terry Evans
                                     12461 Veterans Memorial Hwy, #580
                                     Tel. (470) 223-8271
                                     Fax: (470) 298-3791
                                     da@wilsonfirmatlanta.com

                                     /s/ James Hamraie
                                     Payum James Hamraie
                                     Georgia Bar No. 831768
                                     Attorney for Defendant
                                     Terry Evans
                                     12461 Veterans Memorial Hwy, #580
                                     Tel. 470-232-0169
                                     Fax: (470) 298-3791
                                     james@wilsonfirmatlanta.com

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY | ) | |
| ASSOCIATION, INC. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| Plaintiff, | ) | 23CV00694 |
| vs. | ) | |
| | ) | |
| TERRY EVANS, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF ENTRY OF APPEARANCE OF
SUNSHINE R. NASWORTHY AND SEAN KEENAN**

COME NOW, SUNSHINE R. NASWORTHY and SEAN KEENAN of the law firm of

Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP, and file this Notice of Entry of

Appearance as counsel of record on behalf of CHAPEL HILLS COMMUNITY ASSOCIATION,

INC. on the counterclaim.  Counsel respectfully requests they be copied on all court filings,

notices, orders, etc. regarding the above-captioned case.  All pleadings, notices, orders, and other

documents required to be served upon CHAPEL HILLS COMMUNITY ASSOCIATION, INC.

shall be directed to:

Sunshine R. Nasworthy
Sean Keenan
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Norcross, GA 30092
snasworthy@cmlawfirm.com
skeenan@cmlawfirm.com

Respectfully submitted this 31st day of July, 2023.

*[signatures on next page]*

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Sunshine R. Nasworthy*
Sunshine R. Nasworthy
Georgia Bar No. 564888
Email:  snasworthy@cmlawfirm.com
Direct Dial:  678-684-2136

*/s/ Sean Keenan*
Sean Keenan
Georgia Bar No. 523871
Email:  skeenan@cmlawfirm.com
Direct Dial:  678-684-2154

*(Attorneys for Chapel Hills Community Association, Inc. on the counterclaims)*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day electronically filed **NOTICE OF ENTRY OF APPEARANCE OF SUNSHINE R. NASWORTHY AND SEAN KEENAN** with the Clerk of Court using the PeachCourt file and serve system which will automatically serve a copy of same upon all counsel of record as follows:

David A. Wilson
Payum James Hamraie
THE WILSON FIRM, LLC
12461 Veterans Memorial Hwy, #580
Douglasville, GA 30134
da@wilsonfirmatlanta.com
james@wilsonfirmatlanta.com
*(Attorneys for Defendant)*

Victor J. Harrison
HARRISON LAW, LLC
P.O. Box 1495
Douglasville, GA 30133
victorharrison@westgalaw.com
*(Attorney for Plaintiff)*

This 31st day of July, 2023.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Sunshine R. Nasworthy*
Sunshine R. Nasworthy
Georgia Bar No. 564888

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY | ) | |
| ASSOCIATION, INC. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| Plaintiff, | ) | 23CV00694 |
| vs. | ) | |
| | ) | |
| TERRY EVANS, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING NOTICE OF REMOVAL TO
## THE UNITED STATES DISTRICT COURT

TO:   CLERK, SUPERIOR COURT OF DOUGLAS COUNTY

COMES NOW CHAPEL HILLS COMMUNITY ASSOCIATION, INC., plaintiff in the

above-styled civil action, and pursuant to 28 U.S.C. § 1446(d), hereby notifies the Clerk of the

Superior Court of Douglas County of the filing of a Notice of Removal in this action in the United

States District Court for the Northern District of Georgia, Atlanta Division, a copy of which is

attached hereto.

Respectfully submitted, this 31st day of July , 2023.

**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP**

/s/ *Sunshine R. Nasworthy*
Sunshine R. Nasworthy
Georgia Bar No. 564888
Email: snasworthy@cmlawfirm.com
Direct Dial: 678-684-2136

*/s/ Sean Keenan*
Sean Keenan
Georgia Bar No. 523871
Email:  skeenan@cmlawfirm.com
Direct Dial:  678-684-2154
*(Attorneys for Plaintiff on the counterclaim)*

275 Scientific Drive
Suite 2000
Peachtree Corners, GA 30092

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day filed the within and foregoing **NOTICE OF FILING OF REMOVAL TO THE UNITED STATES DISTRICT COURT** with the Clerk of Court using the PeachCourt file and serve system.

I FURTHER CERTIFY that I have this day served a copy of the above-referenced pleading, via U.S. Mail, upon the following:

David A. Wilson
Payum James Hamraie
THE WILSON FIRM, LLC
12461 Veterans Memorial Hwy, #580
Douglasville, GA 30134
da@wilsonfirmatlanta.com
james@wilsonfirmatlanta.com
*(Attorneys for Defendant)*

Victor J. Harrison
HARRISON LAW, LLC
P.O. Box 1495
Douglasville, GA 30133
victorharrison@westgalaw.com
*(Attorney for Plaintiff)*

Respectfully submitted, this 31st day of July, 2023.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Sunshine R. Nasworthy*
Sunshine R. Nasworthy
Georgia Bar No. 564888

# EXHIBIT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHAPEL HILLS COMMUNITY ASSOCIATION, INC. | ) ) ) | CIVIL ACTION FILE NO.: |
| Plaintiff/Counterclaim Defendant, | ) ) ) | _____ |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| TERRY EVANS, | ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

## <u>NOTICE OF REMOVAL TO</u><br><u>THE UNITED STATES DISTRICT COURT</u>

COMES NOW, CHAPEL HILLS COMMUNITY ASSOCIATION, INC., plaintiff and counterclaim defendant in the above-styled civil action, and hereby files this Notice of Removal pursuant to Fed. R. Civ. P. 81(c) and 28 U.S.C. §§ 1331, 1441 and 1446, respectfully showing as follows:

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### 1.

On May 1, 2023, Plaintiff Chapel Hills Community Association, Inc. filed a civil action against defendant Terry Evans in the Superior Court of Douglas County, Georgia, Case No. 23CV00694 for the recovery of past due homeowners association assessments and other amounts owed by Evans. The Superior Court of Douglas

County, Georgia is located within the Atlanta Division of the United States District Court for the Northern District of Georgia.

2.

The Association has not yet perfected service of the Complaint on Evans, but Evans filed his Answer and Counterclaim on or about June 30, 2023.

3.

In his Counterclaim, Evans brings a claim under state law for breach of contract alleging that the Association did not evenly enforce the terms of the Declaration or impose fines for violations of same.  (Answer, p. 5).  Evans also brings claims under the federal Fair Housing Act for race and age discrimination alleging that the Association did not evenly enforce the terms of the Declaration or impose fines for violations of same.  (Id., pp. 5-7).

4.

The Association's Notice of Removal is timely filed within thirty (30) days of receipt of Evans' Counterclaim, as required by 28 U.S.C. § 1446(b).

5.

Venue is proper for removal to this district pursuant to 28 U.S.C. § 1441(a) because this district and division embrace the place in which the removed action was pending.

6.

Further, as required by 28 U.S.C. § 1446(a), the entire record in the Superior Court action, including copies of all process, pleadings and orders filed as of this date, as well as a copy of the court's docket sheet, are attached to and filed contemporaneously herewith as Exhibit "A."

## BASIS FOR REMOVAL

7.

The Association incorporates by reference as if fully set forth herein the preceding paragraphs 1 through 6 of this Notice of Removal.

8.

This Court has original jurisdiction in any action involving a federal question of law under the laws of the United States.  See 28 U.S.C. § 1331.

9.

This is a civil action over which this Court has original jurisdiction over Evans' counterclaims for race and age discrimination under the provisions of 28 U.S.C. § 1331 because such claims arise out of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*. as cited by Evans in his counterclaims.

10.

Because Evans has asserted claims involving a federal question of law, this action may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. §1441.

11.

The Association's claims and Evans' breach of contract claim may also be removed to this Court by the Association pursuant to the provisions of 28 U.S.C. §1441.

## **CONCLUSION**

12.

The Association incorporates by reference as if fully set forth herein the preceding paragraphs 1 through 11 of this Notice of Removal.

13.

As required by 28 U.S.C. § 1446(d), defendant has given prompt written notice of this Notice of Removal to Evans, through his counsel, by mailing a copy of this Notice **via Certified Mail, Return Receipt Requested, Receipt No.  9171 9690 0935 0270 4098 69**.

14.

The Association will also promptly file this Notice of Removal with the Clerk of the Superior Court of Douglas County, Georgia as required by 28 U.S.C. § 1446(d), a copy of which is attached hereto as Exhibit "B."

15.

The Association reserves the right to amend or supplement this Notice of Removal in accordance with the Federal Rules of Civil Procedure and other applicable law.

16.

The Association reserves all defenses to the underlying action.

17.

The undersigned has read this Notice of Removal, and to the best of the undersigned's knowledge, information and belief, formed after reasonable inquiry, it is well-grounded in fact and is warranted by existing law, and it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

**WHEREFORE**, The Association respectfully requests that this action now pending in the Superior Court of Douglas County, Georgia be removed to the United States District Court for the Northern District of Georgia, Atlanta Division.

**DEFENDANT DEMANDS A TRIAL BY JURY.**

Respectfully submitted, this 31st day of July, 2023.

**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP**

/s/ *Sunshine R. Nasworthy*
Sunshine R. Nasworthy
Georgia Bar No. 564888
Email: snasworthy@cmlawfirm.com
Direct Dial: 678-684-2136

/s/ *Sean Keenan*
Sean Keenan
Georgia Bar No. 523871
Email:  skeenan@cmlawfirm.com
Direct Dial:  678-684-2154
*(Attorneys for Plaintiff on the counterclaim)*

275 Scientific Drive
Suite 2000
Peachtree Corners, GA 30092

6

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1</u>

The undersigned attests that this document was prepared in Times New Roman, 14-point font that complies with this Court's Rules.

This 31st day of July, 2023.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Sunshine R. Nasworthy*
Sunshine R. Nasworthy
Georgia Bar No. 564888

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day filed the within and foregoing **NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT** with the Clerk of Court using the CM/ECF system.

I FURTHER CERTIFY that I have this day served a copy of the above-referenced pleading, via Certified U.S. Mail # **9171 9690 0935 0270 4098 69**, upon the following:

David A. Wilson
Payum James Hamraie
THE WILSON FIRM, LLC
12461 Veterans Memorial Hwy, #580
Douglasville, GA 30134
da@wilsonfirmatlanta.com
james@wilsonfirmatlanta.com
*(Attorneys for Defendant)*

Victor J. Harrison
HARRISON LAW, LLC
P.O. Box 1495
Douglasville, GA 30133
victorharrison@westgalaw.com
*(Attorney for Plaintiff)*

Respectfully submitted, this 31st day of July, 2023.

**Cruser, Mitchell, Novitz, Sanchez,
Gaston & Zimet, LLP**
*/s/ Sunshine R. Nasworthy*
Sunshine R. Nasworthy
Georgia Bar No. 564888

8