

# Master Agreement for Treasury Management Services

The Service Documentation contains the terms under which Wells Fargo Bank, N.A. and the banks, branches or subsidiaries listed in Appendix X (each, "Bank") provide you treasury management services ("Services"). "You," "your" or "yours" refer to the Bank customer identified on the Acceptance of Services that is signed when you enroll in Services ("Acceptance"). The terms "we," "us," or "our" refer to the Bank. The Bank customer to which the Services will be provided is identified in the Acceptance. Other capitalized terms used in this Master Agreement for Treasury Management Services ("Agreement") are defined in this document.

You and we agree:

1. **Service Description.** The Service Documentation contains the terms governing each Service and includes:
    a. The Service Description (which contains terms and conditions applicable to the specific Service),
    b. The Acceptance (which indicates your acceptance of the Service Documentation),
    c. This Agreement (which contains terms and conditions applicable to all Services),
    d. The account agreement governing the account(s) (each, an "Account") you use in connection with the Service,
    e. The Product Enrollment Form (which contains set-up information for each Service in which you are enrolling), and
    f. User Guides (which include Terms of Use, software, software licenses, price schedules, specifications, instructions, and notices).

The documents and individual provisions of the Service Documentation are intended to be read together as one agreement between you and us. This Agreement and the Service Descriptions for Services you enroll in are posted at our *Commercial Electronic Office® (CEO®)* portal. If there is a conflict among the documents that are part of the Service Documentation, they will govern in the order listed above. Your use of a Service confirms your receipt of, and agreement to be bound by, this Agreement and all Service Documentation.

2. **Services.** You and we will agree upon the Services to be provided. Each Service is subject to the approval by our applicable branch or subsidiary. You may not begin using a Service until we have received all required and properly executed forms and you have successfully completed any testing or training requirements.

3. **Changes to services.** We may change (or add to) the terms and fees in the Service Documentation at any time. If an enhancement to a Service or other change requires a change to a Service Description, we will post an updated Service Description on the *CEO* portal. When required by Applicable Law, we will notify you of the change. If you continue to use a Service after the change takes effect, you will be bound by the change. As used in this Agreement, the term "Applicable Law" means all applicable laws (including common or customary laws), statutes, constitutions, policies, decrees, judgments, treaties, regulations, directives, by-laws, rulings, orders or operating circulars governing our activities and/or any transaction effected under this Agreement, including, but not limited to, the funds transfer system and clearing and settlement house rules.

4. **Term and termination.** Unless a Service is terminated in accordance with the Service Documentation, this Agreement and each Service will continue in effect until terminated by either party upon 30 days' prior written notice to the other party.

We may suspend or terminate any Service:
   a. After we notify you of a breach of any provision of the Service Documentation or any other agreement with us, and you fail to cure the breach (if it can be cured) within 15 days of the date of the notice; or
   b. Without prior notice to you if:
      i. We reasonably suspect that an Account associated with a Service has been compromised or otherwise subject to irregular, unauthorized, fraudulent, or illegal activity,
      ii. You become subject to any insolvency or bankruptcy proceeding, or any receivership, liquidation, reorganization, or other similar proceeding, or you enter into any agreement or proceeding for voluntary liquidation, dissolution, composition with or assignment for the benefit of creditors or other winding up,
      iii. We determine in our sole discretion that continuing to provide a Service may place us at risk of financial loss or result in an unacceptable credit exposure,
      iv. Any guaranty of your obligations to us ("Guaranty") is terminated, revoked, or its validity contested by the guarantor ("Guarantor"),
      v. We determine in our sole discretion that a material adverse change has occurred in your ability to perform your obligations under the Service Documentation, or in the ability of a Guarantor to perform its obligations under a Guaranty, or
      vi. The Account necessary to provide a Service is closed.

The termination of a Service will not affect your or our respective rights with respect to transactions occurring before the termination. We will not be liable to you for any losses or damages you may incur as a result of any termination of any Service or termination or restriction of any *CEO* portal access rights under section 9(d) below.

5. **Service fees.**  You will pay us the fees described in the Service Documentation and any taxes applicable to each Service, however designated, but excluding taxes based on our net income. We may debit your Account for any fees not covered by earnings credits and any taxes that are due, or we may send you an invoice for these amounts, which you will promptly pay. Our charges and fees are in the applicable fee schedule for Services used in connection with your Account.

6. **Security procedures.**
   a. Unless otherwise agreed, you agree that "Security Procedure" is the applicable security procedure described in the Service Documentation for your Initiation Method for the Service, which we will use to verify the authenticity of a Transaction. The term "Initiation Method" refers to the method we offer in the product enrollment form ("Set-up Form") or other Service Documentation for delivering your Transaction instructions to us with respect to the applicable Service and includes any applicable transmission protocols. The term "Transaction" means (i) any funds transfer or payment instruction (including any communication cancelling or amending an instruction), and (ii) any instruction, data or other information which we receive in your name with respect to a funds transfer. The purpose of the Security Procedure is to verify the authenticity of the Transaction. We will not use the Security Procedure to detect an erroneous or duplicate transaction. You will be responsible for any erroneous or duplicate transaction we receive in your name. You agree to be bound by each Transaction, whether or not authorized by you, issued in your name and accepted by us in compliance with the Security Procedure for the Service.
   b. You agree that each Security Procedure for the Initiation Method in the Set-up Form or other Service Documentation for each of the Services (a) best meets your requirements with regard to the size, type and frequency of your Transactions, and (b) is commercially reasonable. If you have refused to use any standard Security Procedure and elect a non-standard Security Procedure, then you must sign the Non-Standard Security Procedure Elections form.

7. **Confidential information.**  Unless otherwise stated in the Service Documentation, "Confidential Information" means all (a) User Guides and Terms and Use, and (b) Security Procedures, passwords, codes, security devices and related instructions. You will not acquire any ownership interest in or rights to Confidential Information as a result of your use of any Service.

You will:
  a. Maintain the confidentiality of the Confidential Information,
  b. Not disclose (or permit your employees or agents to disclose), copy, transfer, sublicense, or otherwise make any of it available to any person or entity, other than your employees who have a need to use the Confidential Information in connection with the applicable Service, and
  c. Not decompile, reverse engineer, disassemble, modify, or create derivative works of any Confidential Information.

You will notify us immediately if you know of or suspect any unauthorized disclosure, possession, use, or knowledge (each, an "Unauthorized Use") of any Confidential Information. If you (or your employees or agents) are responsible for the Unauthorized Use, you will, at your expense, promptly take all actions, including initiating court proceedings to recover possession and prevent further Unauthorized Use of the Confidential Information. You will also compensate us for any injury caused to us as a result of the Unauthorized Use.

8. **Currency conversion.** When your instructions require us to convert the amount of a payment order from the currency in which the Account is denominated ("Account Currency") to another currency ("Foreign Currency"), we will do so using the Applicable Exchange Rate in effect at the time we execute your payment order. "Applicable Exchange Rate" means the exchange rate we set and use for you when we convert one currency to another currency and includes a markup over our cost of sourcing the relevant currency. The markup factors include costs incurred, market risks and our desired return. The exchange rate we provide to you may be different from the exchange rates you see elsewhere. Foreign exchange rates are dynamic, and rates fluctuate over time based on market conditions, liquidity, and risks.

If a financial institution designated to receive the funds does not pay the beneficiary specified in the payment order, and the funds are returned to us, we will not be liable to you for a sum greater than the amount of the payment order after we have converted it from the Foreign Currency to the Account Currency using the Applicable Exchange Rate in effect at the time the funds are returned to us. You accept the risks of any change in the Applicable Exchange Rate between the time you request a payment order and the time the payment order is either completed or is unwound due to a cancellation, an amendment, a rejection, or a return.

9. **CEO portal.**
   a. **Description of the CEO portal.** The *CEO* portal is our electronic banking portal that is accessed via the Internet. Your Authorized Agents (defined below) may use the *CEO* portal to access (i) Services in which you have separately enrolled (each, an "Accessed Service") and (ii) third-party sites we may make available through the *CEO* portal. We offer different channels through which you may access the *CEO* portal, including personal computers and mobile devices. We may add or eliminate channels at any time. A Service or third party site accessible through one channel may not be accessible through another channel.
   b. **Access to the CEO portal.** When you enroll in the *CEO* portal, and as we may determine is necessary after enrollment, we will provide Log-On Credentials (defined below) to the persons who are authorized to access the *CEO* portal on your behalf (each, an "Authorized Agent"). Log-On Credentials mean one or more secure methods we provide to access the Services and may include user IDs, passwords, token IDs, and other methods that we adopt from time to time. We have no obligation to separately verify or authenticate any communication we receive in your name through the *CEO* portal, whether or not it was actually from an Authorized Agent. You assume the entire risk of (i) unauthorized use of your Log-On Credentials and (ii) unencrypted electronic transmissions.
   c. **Administration of the CEO portal.** We offer two options for administering the *CEO* portal: (i) Administration and (ii) Bank administration.
       i. **Administration.** If you enroll in the Administration option, there are three categories of Authorized Agents: Company Administrator, Administrator, or User. Unless you and we separately agree, we will provide Log-On Credentials only to your initial Company

    Administrator(s) who will (a) assign Log-On Credentials to other individuals and (b) designate those individuals as one of the following:

     (1) A Company Administrator, who may perform all functions of your initial Company Administrator,

     (2) An Administrator, who may perform all functions of an Administrator including designating other Administrator(s) and User(s), or

     (3) A User, who may access the Services designated by a Company Administrator or an Administrator, as well as those Services in which we permit a User to self-enroll.

    Each Company Administrator and Administrator has the authority to enroll you in additional Services. In addition to your use of Administration as described in this subsection, you may request that we assign Log-On Credentials to Users that you designate in writing to us. Your designation to us will specify the Services which the User is authorized to access in addition to those Services in which we permit a User to self-enroll.

   ii. **Bank administration.** For the Bank administration option, there is one category of Authorized Agent: Users. We will assign Log-On Credentials to each User you designate.

  You will promptly revoke the Log-On Credentials of any Authorized Agent or User when that individual is no longer authorized to access the *CEO* portal. If you notify us in writing to revoke the Log-On Credentials of an Authorized Agent or User, we will have a reasonable time after receiving your written notification to revoke the individual's access.

 d. **Terminating access.** We may terminate or restrict any Authorized Agent's access to any Service through the *CEO* portal if we determine such use:

  i. Does not comply with any term applicable to the *CEO* portal,

  ii. Is not permitted by Applicable Law,

  iii. Is not authorized by you or any third party whose authorization we believe is necessary, or

  iv. Should be denied for your or our protection (without us agreeing to or being required to make this determination in any circumstance).

 e. **Financial information.** Financial market data, quotes, news, research, and other financial information developed by third parties and transmitted to us ("Financial Information") may be available to you at the *CEO* portal. The posting of any Financial Information or any other information or data at the *CEO* portal is not a recommendation by us of any particular Service or transaction. We do not guarantee the accuracy or completeness of any Financial Information, nor are we responsible for (i) the actions or omissions of the third parties developing or transmitting Financial Information or (ii) any decision you make or action you take by relying on any Financial Information.

10. **Alerts.**

 a. Non-subscribed alerts. When you enroll in the *CEO* portal or other channels or Services, you consent to receiving by email or other delivery channels, servicing messages that we determine are important or urgent. You do not need to subscribe to receive such alerts and you do not pay additional service fees.

 b. Subscribed alerts.  You may also enroll in fee-based alerts for applicable Services so that you can receive messages you subscribe to at the intervals and through delivery channels that you choose.

11. **Liability and indemnification.**

 a. We are not obligated to honor, in whole or in part, any payment order or other instruction that:

  i. Exceeds the available balance in the Account, unless otherwise provided in the Service Documentation,

  ii. Does not comply with the Service Documentation or our applicable policies, procedures, or practices made available to you,

      iii. We have reason to believe may not have been duly authorized, should not be honored for our or your protection, or involves funds subject to a hold, dispute, restriction, or legal process, or

      iv. Would possibly result in us not complying with Applicable Law.

b. Neither we nor our software vendors make any express or implied representations or warranties with respect to the Services or any software used in connection with the Services, including any warranty as to the merchantability or fitness for a particular purpose, other than those expressly set forth in the Service Documentation.

c. Any claim, action, or proceeding against us for losses or damages arising from a Service, must be brought within one year from the date of the act or omission, except as otherwise stated in the account agreement governing the Account.

d. We will have no liability for our failure to perform or delay in performing a Service if the failure or delay is due to circumstances beyond our reasonable control. If we determine that any funds transfer or communications network, Internet service provider, or other system used to provide a Service is unavailable, inaccessible, or otherwise unsuitable for use by you or us, we may, upon notice to you, suspend or discontinue the affected Service.

e. We will only be liable to you for actual damages incurred as a direct result of our failure to exercise reasonable care in providing the Services. Reasonable care requires only that we follow standards that do not vary unreasonably from the general standards followed by similarly situated banks. Our policies and procedures are general internal guidelines for our use and do not establish a higher standard of care for us than otherwise established under Applicable Law. A mere clerical error or an honest mistake will not be considered a failure by us to perform any of our obligations. Our liability to you will be limited to an amount not greater than 10 times our fees incurred in the calendar month immediately before the calendar month in which the loss or damages were incurred (or, if no fees were incurred in that month, our fees incurred in the month in which the losses or damages were incurred).

f. Except in the case of our negligence or intentional misconduct, you will indemnify and hold us, our directors, officers, employees and agents ("Representatives") harmless from all losses or damages that arise out of:

      i. The performance of a Service in compliance with the Service Documentation, including any warranty we are required to make to a third party in connection with a Service,

      ii. An act or omission of any of your agents, couriers, or Authorized Agents, and

      iii. If the Service includes a license or sublicense of any software, any use or distribution of the software by you or any person gaining access to the software through you that is inconsistent with the license or sublicense.

You will promptly provide us with written proof of loss, and notify us if you become aware of any third party claim related to a Service. You will cooperate fully (and at your own expense) with us in recovering a loss. If we reimburse you, we or our designee will be subrogated to all of your rights (i.e., we will be entitled to assert any legal rights you had relating to the claim).

g. Except as expressly provided otherwise in the Service Documentation, neither party nor its Representatives will be liable to the other party for:

      i. Any special, consequential, incidental (including court costs and attorneys' fees), indirect, or punitive losses or damages, or

      ii. Business interruption, loss of profits, loss of business, loss of revenue, loss of goodwill, loss of opportunity, loss or injury to reputation, or loss of anticipated savings, whether any claim is based on contract or tort, or whether the likelihood of these losses or damages was known to the other party and regardless of the form of the claim or action.

h. When you send payments on behalf of your third party customers, you agree you are solely liable to your customers for any and all losses those customers may suffer. We exclude all and any liability of whatever nature (including those losses detailed in subsection g above) arising out of your relationship with your customer.

**12. Governing law.** The Service Documentation will be governed by: (a) U.S. federal law and (b) the law of

(i) the U.S. state in which the office of Bank that maintains the Account is located or, if there is no such state or no account associated with such Service, (ii) the State of New York, without reference to its principles of conflicts of laws ("Governing Law").

13. **Arbitration agreement.** Upon demand by you or us, any dispute or claim arising out of or relating to this Agreement, or the breach thereof, must be submitted to arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules, and must be heard before three arbitrators if the amount in dispute is US $5,000,000 or more or its equivalent in any other currency, and before one arbitrator for amounts in dispute of less than US $5,000,000 or its equivalent in any other currency. Arbitration will proceed in a location selected by AAA in the state of the applicable Governing Law, and if there is no such state, the place of arbitration must be New York, NY. The language of the arbitration must be English. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This arbitration requirement does not limit the right of you or us to: (a) exercise self-help remedies including setoff or (b) obtain provisional or ancillary remedies such as injunctive relief or attachment, before, during or after the pendency of any arbitration proceeding. This exclusion does not constitute a waiver of the right or obligation of you or us to submit any dispute to arbitration hereunder, including those arising from the exercise of the actions detailed in (a) and (b) of this section.

14. **Jurisdiction.** For any proceedings regarding this Agreement (not subject to arbitration as provided in this Agreement), you hereby irrevocably submit to the jurisdiction of the courts of the Borough of Manhattan, New York City, in the State of New York or the federal courts located there and irrevocably agree that all claims in relating to the proceeding may be heard or determined in those courts.

15. **Miscellaneous**

    a. **Severability.** Any portion of the Service Documentation which is inconsistent with Applicable Law or Governing Law will be deemed modified and applied in a manner consistent therewith, and we will incur no liability to you as a result of the inconsistency or modification and application to any dispute regarding the Service Documentation. If any portion or provision of the Service Documentation is deemed unenforceable, it will not affect the enforceability or validity of the remaining Service Documentation nor the enforceability or validity of that portion or provision under the law of any other jurisdiction.

    b. **Entire agreement.** The Service Documentation (and any documents referred to therein):

        i. Constitutes the entire agreement between you and us regarding the Services we provide for all Accounts opened with us, and

        ii. Supersedes and extinguishes all prior agreements, understandings, representations and warranties of any nature (including requests for proposals and other sales material), whether oral or written, between you and us relating to any of our Services (including any other Master Agreement for Treasury Management Services, but excluding the current Commercial Account Agreement or Global Commercial Account Agreement, as applicable).

    c. **Electronic agreement.** To facilitate execution, the Service Documentation may be executed by a party in the form of an "Electronic Record" (as defined in the Electronic Signatures in Global and National Commerce Act at 15 U.S.C. §7001 et seq. ["ESIGN Act"]). The Service Documentation may be executed in as many counterparts as may be required to reflect all parties' approval, and all counterparts will collectively constitute a single agreement. An "Electronic Signature" (as defined in the ESIGN Act) that can be authenticated will constitute an original and binding signature of a party. The fact that a document is in the form of an Electronic Record or is signed using an Electronic Signature will not, in and of itself, be grounds for invalidating such document.

    d. **No waiver.** Neither our failure nor any delay by us in exercising any right or remedy will be deemed to be a waiver of the right or remedy. No course of dealing or waiver of any right on one occasion will constitute a modification of the Service Documentation or be a waiver of that right on a subsequent occasion.

    e. **Third party beneficiaries.** Except as otherwise provided in the Service Documentation, no person or entity other than the parties to this Agreement will be deemed to be a third party beneficiary under the Service Documentation.

- f. **Financial condition.** You will provide us promptly upon our request any existing financial statements or other information pertaining to your financial condition or any previously unprepared financial statements which we may require you to prepare and/or to be audited or reviewed by independent certified public accountants acceptable to us.
- g. **Your representations and warranties.** You represent and warrant that: (i) you will not use any Service in a manner that would violate any Applicable Law by you or us; (ii) if you employ an agent in connection with its use of any Service, you represent and warrant to us that: (1) your governing body has duly authorized the agent; (2) you will exercise appropriate controls to ensure each authorized agent does not exceed the authority granted to it; and (3) you will preserve the confidentiality of the Log-On Credentials and immediately notify us if you become aware or suspect that any Log-On Credential may have been compromised.
- h. **Use of names.** You and we will not use each other's name or refer to our relationship in any solicitation, marketing material, advertisement, news release, or other written, online or oral communication without specific prior written consent for each such use or release, except that we may use your name as a reference in service proposals if we obtain your prior written approval for such use.
- i. **Notices and communications.** Either party may provide notice to the other party by mail, personal delivery, or electronic transmission.
    - i. You will notify us promptly in writing of any change in your name, Address, legal status, or any other changes relevant to the conduct of the Account or affecting your business relationship with us.
    - ii. The term "Address" as used in this Agreement refers to a mailing or electronic address.
    - iii. You will use the Address where your relationship manager or other manager is located and will address any notice to the attention of the manager.
    - iv. Each party will have a reasonable time after receipt of any notice to act on it.
    - v. Any communication or notice to us from your agent about your use of a Service will be deemed to be a communication from you, and you authorize us to communicate with your agent about any such communication or Service.
    - vi. We are entitled to rely on any communication or notice from you that we believe in good faith was authorized by your authorized representative or Authorized Agent and, we will have no obligation to verify or authenticate an identity of a sender or signature on any notice or communication, except as expressly provided in the Service Documentation.

**16. Survival.** Sections 7, 11 - 15 will survive termination of the Services and this Agreement.

## Appendix X
Applicable Branches or Subsidiaries of Bank

1. Wells Fargo Bank, N.A. – London Branch
2. Wells Fargo Bank, N.A. – Cayman Islands Branch

Customer Name: _____

| Signature |
|---|
|  |