**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **FRANK RECRUITMENT GROUP, INC.,** ) | |
| ) | |
| Plaintiff,   ) | |
| ) | CIVIL ACTION NO. |
| v.   ) | _____ |
| ) | |
| **mCLOUD TECHNOLOGIES (USA) INC.,** ) | |
| ) | |
| Defendant,   ) | |
| ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff Frank Recruitment Group, Inc.'s ("FRG") files this Complaint against Defendant mCloud Technologies (USA) Inc. ("mCloud") asserting claims of breach of contract and unjust enrichment against mCloud based on its failure and refusal to remit $121,835.54 mCloud owes FRG for FRG's recruitment of information technology ("IT") contractors to provide IT work and services to mCloud, and in support of its claims against mCloud, FRG states the following:

## PARTIES

1.     Plaintiff, Frank Recruitment Group, Inc. ("FRG"), is a Delaware corporation with its principal place of business at 501 E. Kennedy Blvd., Suite 1900, Tampa, Florida 33602.

1

2.      Defendant, mCloud Technologies (USA) Inc. ("mCloud") is, upon information and belief, a Georgia corporation with its principal place of business located at 2110 Powers Ferry Road SE, Suite 202, Atlanta, Georgia 30339.

## VENUE AND JURISDICTION

3.      Jurisdiction and venue are properly situated in Fulton County, Georgia the United States District Court for Northern District of Georgia inasmuch as Section 4 of the contract, attached as Exhibit A below at Part 4, provides that the "*Parties shall file or bring all disputes, proceedings, claims and actions arising out of, or related in any way to, this Agreement in the federal or state courts located in (a) Hillsborough County, Florida or (b) the county of the Client's principal place of business or legally registered address. Each Party hereby waives any and all right it has to a trial by jury.*" In this instance, Defendant mCloud Technologies (USA) Inc. has and maintains its principal place of business at 2110 Powers Ferry Road SE, Suite 202, Atlanta, Georgia 30339, which location is within the jurisdictional limit and territories of this Court.

## STATEMENT OF FACTS

4.      FRG is a recruitment agency that provides information technology ("IT") recruitment, placement, and referral services to clients seeking third party IT suppliers and their IT specialists to provide IT work and services as needed.

2

5.     mCloud is a software company that provides asset management solutions to government agencies and companies in the aerospace, defense, and healthcare industries, including offering artificial intelligence-based prescriptive maintenance, smart energy savings, and performance optimized solutions for wind turbines, transformers, oil and gas equipment, and HVAC products.

6.     FRG and mCloud entered into a Permanent and Contract Candidate Contingent Recruitment Services Agreement dated June 16, 2022 (the "Contract"). (A true and correct copy of the Contract is attached hereto as Exhibit "A").

7.     Under the Contract, FRG provided third party suppliers of IT services ("IT Contractors") to mCloud in exchange for an hourly rate (the "Contract Fee") paid to FRG for each of these IT Contractors' work as set forth in their respective "Supplier Assignment Schedules" outlined in Section 6 and Exhibit A of the Contract. *See* Section 6 and Exhibit A of the Contract attached hereto as Exhibit "A".

8.     Specifically, FRG recruited and presented the following IT Contractors to mCloud: (1) Leprechaun Consulting LLC via Carter McEvoy; (2) Balancing on Clouds Inc. via Nila Siva; and (3) Kinza IT Solutions Inc. via Alex Hadimulya (collectively the "IT Contractors").

9.     mCloud subsequently retained the IT Contractors to perform IT work

on a contractual basis.

10.    Under the Contract, mCloud was obligated to remit the Contract Fee to FRG for the IT Contractors' work as set forth in their respective "Supplier Assignment Schedules" outlined in Section 6 and Exhibit A of the Contract. *See* Section 6 and Exhibit A of the Contract attached hereto as Exhibit "A".

11.    FRG performed all of its contractual obligations under the Contract and promptly submitted invoices to mCloud from September 20, 2022 through December 13, 2022 ("FRG'S Invoices") totaling $121,835.54 as set forth on FRG's Statement of Account ("FRG's Statement of Account") dated May 1, 2023. (A true and correct copy of FRG's Statement of Account is attached hereto as Exhibit "B").

12.    Section 3 of the Contract required mCloud to remit payment of one-half of FRG's Invoices for the Contract Fee within 30 days with the remainder to be paid within 90 days of FRG's Invoices. *See* Section 3 of the Contract attached hereto as Exhibit "A".

13.    To date, mCloud has failed to pay any monies to FRG despite FRG's repeated requests that it do so, and the outstanding balance of $121,835.54 remains due and owing to FRG under the Contract.

14.    By letter dated April 21, 2023, to mCloud from FRG's counsel

("FRG's Final Demand Letter"), FRG made a final demand for the outstanding $121,835.54 payment, but to date, mCloud continues to fail and refuse to remit the funds. (A true and correct copy of FRG's Final Demand Letter is attached hereto as Exhibit "C").

## <u>COUNT I – BREACH OF CONTRACT</u>

15.    Plaintiff, FRG adopts and incorporates by reference paragraphs 1 through 15 above as though the same were set forth at length herein.

16.    Under the Contract between FRG and mCloud, FRG located and provided the IT Contractors to mCloud in exchange for the Contract Fee, which mCloud agreed to pay to FRG for the IT Contractors' work as set forth in their respective "Supplier Assignment Schedules" outlined in Section 6 and Exhibit A of the Contract.  *See* Section 6 and Exhibit A of the Contract attached hereto as Exhibit "A".

17.    Specifically, FRG recruited and presented the following IT Contractors to mCloud: (1) Leprechaun Consulting LLC via Carter McEvoy; (2) Balancing on Clouds Inc. via Nila Siva; and (3) Kinza IT Solutions Inc. via Alex Hadimulya (collectively the "IT Contractors"). And mCloud subsequently retained all of the IT Contractors to perform IT work for mCloud on a contractual basis.

18.    Under the Contract, mCloud was obligated to remit the Contract Fee

to FRG for the IT Contractors' work as set forth in their respective "Supplier Assignment Schedules" outlined in Section 6 and Exhibit A of the Contract. *See* Section 6 and Exhibit A of the Contract attached hereto as Exhibit "A".

19.   FRG performed all of its contractual obligations under the Contract and promptly submitted FRG's Invoices to mCloud from September 20, 2022 through December 13, 2022 totaling $121,835.54 as set forth on FRG's Statement of Account dated May 1, 2023. (A true and correct copy of FRG's Statement of Account is attached hereto as Exhibit "B").

20.   Section 3 of the Contract required mCloud to remit payment of one-half of FRG's Invoices for the Contract Fee within 30 days with the remainder to be paid within 90 days of FRG's Invoices. *See* Section 3 of the Contract attached hereto as Exhibit "A".

21.   mCloud has breached and continues to be in breach of the Contract by failing and refusing to pay any monies to FRG despite FRG's repeated requests that it do so, and the outstanding balance of $121,835.54 remains due and owing to FRG under the Contract.

22.   By letter dated April 21, 2023, to mCloud from FRG's counsel ("FRG's Final Demand Letter"), FRG made a final demand for the outstanding $121,835.54 payment. (A true and correct copy of FRG's Final Demand Letter is

attached hereto as Exhibit "C").

23.     Despite FRG's Final Demand Letter, mCloud still failed and refused to remit the funds, and to date, mCloud continues to fail and refuse to remit the funds.

24.     FRG has been damaged by mCloud's failure and refusal to timely remit  the $121,835.54 balance mCloud currently owes FRG.

25.     FRG is entitled to recover the full amount of the $121,835.54 mCloud currently owes under the Contract, including interest, reasonable attorney's fees and costs of litigation that FRG has incurred to date pursuing this matter, and any other equitable relief deemed appropriate by this Court.

## <u>COUNT II – IN THE ALTERNATIVE, UNJUST ENRICHMENT</u>

26.     FRG adopts and incorporates by reference paragraphs 1 through 26 above as though the same were set forth at length herein.

27.     Under the Contract, mCloud requested that FRG provide candidates to provide IT contract work at mCloud as delineated in Count I above.

28.     FRG performed all of the work and services requested by mCloud under the Contract as delineated in Count I above.

29.     mCloud has received the benefit of the work and services completed by FRG under the Contract as delineated in Count I above.

30.    mCloud was aware of the benefit conferred upon it by and as a result of FRG's work and services under the Contract as delineated in Count I above by, among other things, retaining the Contractors FRG located and presented to mCloud: Leprechaun Consulting LLC via Carter McEvoy, Balancing on Clouds Inc. via Nila Siva, and Kinza IT Solutions Inc. via Alex Hadimulya.

31.    FRG submitted its Invoices to mCloud for the IT recruitment services FRG provided, but to date, mCloud has failed and refused to pay the amount due of $121,835.54, which amount remains outstanding and due, despite repeated requests by FRG. *See* Exhibit 2.

32.    Under the Contract, FRG is entitled to be paid in full for the IT recruitment services it provided to mCloud as delineated in Count I above.

33.    mCloud has wrongfully secured and/or passively accepted the benefits of the work and services performed by FRG, and it is unconscionable for mCloud to retain the benefit without paying for the value of FRG's work and services.

34.    mCloud has been unjustly enriched by and from the work and services performed by FRG.

35.    FRG has been damaged, and continues to be damaged, by mCloud's failure and refusal to timely remit the payment for the IT recruitment work and

services performed under the Contract as delineated in Count I above and as set forth in Exhibit "B".

36.     As a result of mCloud's failure and refusal to remit payment for the recruitment work and services FRG completed under the Contract, FRG is entitled to and herein seeks to recover the full amount of the $121,835.54 it is owed as well as interest on that amount, reasonable attorney's fees and costs of litigation that FRG has incurred to date pursuing this matter, and any other equitable relief deemed appropriate by this Court.

**WHEREFORE**, Plaintiff Frank Recruitment Group, Inc. requests that judgment be entered in its favor in the amount of $121,835.54 including interest on that amount, reasonable attorney's fees, and costs of litigation that FRG has incurred to date pursuing this matter, and any other equitable relief deemed appropriate by this Court.

Respectfully submitted on this 31st day of July, 2023.

*/s/ Reginald L. Snyder*
Reginald L. Snyder
Georgia Bar No.: 557060
Joseph M. English
Georgia Bar No.: 248890
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30338
(Office) (678) 732-0146
(Fax) (404) 393-3872
*rsnyder@taylorenglish.com*
*jenglish@taylorenglish.com*

# EXHIBIT A

DocuSign Envelope ID: 1067358F-96B3-498D-8EF~ ^ACC2A14B5D0

# Permanent and Contract Recruitment Agreement

This Permanent and Contract Recruitment Agreement (together with all signed Assignment Schedules and Exhibits, hereinafter the **"Agreement"**) is entered into by and between Frank Recruitment Group Inc., a Delaware corporation (**"FRG"**) and mCloud Technologies (USA) Inc., with a principal place of business at 550-510 Burrard St. Vancouver, British Columbia V6C 3A8 (**"Client"**) (each a **"Party"** and collectively the **"Parties"**).

WHEREAS, FRG is engaged in the business of recruitment and referral services as set forth specifically hereunder (**"Recruitment Services"**);

WHEREAS, Client desires to engage FRG to provide Recruitment Services; and

WHEREAS, FRG shall provide Recruitment Services and Client shall purchase Recruitment Services in accordance with all of the provisions, terms and conditions of this Agreement.

NOW, THEREFORE, the Parties hereby agree as follows:

## PART 1. RECITALS & DEFINITIONS

**1.** The recitals stated above are true and correct and are hereby incorporated herein by reference.

**2.** In this Agreement, the following definitions apply:

**"Assignment"** refers to a specific project to which a Contractor (defined below) is selected by Client to perform Time and Materials Services (defined below).

**"Assignment Schedule"** means the statement of work naming the selected Contractor and specifying other Assignment-specific information as may be required by either Party.

**"Candidate"** means a Permanent Candidate (defined below) or a Contractor (defined below).

**"Client's Customer"** refers to a person or entity (other than Client) who is in contact with Contractor during the Assignment for purposes of receiving or otherwise benefitting from the Time and Materials Services performed by such Contractor. For the avoidance of doubt, "Client's Customer" shall not refer to any and/or all customers or clients of Client, rather only those in communication with Contractor during and for the purpose the Assignment as described above.

**"Contract Fees"** are comprised of the "Bill Rate", "Overtime Rate" or "Travel Rate" (all being inclusive of FRG's margin) as set forth on the Assignment Schedule and Conversion Fees (if any).

**"Contractor"** is (a) a Supplier (defined in Part 3, Section 2.a) or an employee, owner or contractor of a Supplier or (b) FRGS or an FRGS Employee (defined in Part 3, Section 3.a).

**"Conversion," "Converted"** or **"Converts"** means, during the Restriction Period (defined below), the full-time or part-time employment, contracting, consulting or other similar arrangement with a Contractor (without FRG written consent).

**"Conversion Fee"** is a one-time, non-refundable fee calculated as set forth in Section 8.

**"Expenses"** are out of pocket costs, if any, incurred by FRG in performing the Recruitment Services and Contractor in performing the Time and Materials Services, including, without limitation, travel, lodging, meals and Background Reports.

**"Permanent Candidate"** is an individual Referred by FRG who is seeking full-time employment.

**"Refer," "Referral"** or **"Referred"** is FRG's provision of any written or oral information to Client about a Candidate.

1

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

**"Restriction Period"** means either a period of 12 months from any termination or completion of the Assignment Schedule under which Contractor was last supplied, or within 12 months of the most recent Referral of Contractor by FRG to Client, whichever is longer.

**"Time and Materials Services"** are all information technology or other services rendered by Contractor whether under an Assignment Schedule or otherwise.

**"Total Compensation"** is the remuneration offered to a Candidate, including without limitation, hourly rates, salary, commission, bonus, allowances, guarantees, incentives, fringe benefits or draw earnings, if any, or the full-time hourly equivalent (40 hours per week for 52 weeks).

# PART 2. PERMANENT RECRUITMENT SERVICES

## 1. THE PARTIES' RESPONSIBILITIES

a.    FRG will Refer Permanent Candidates to Client based on Client's search request. Client shall provide FRG with all vacancy information reasonably necessary to ensure FRG makes suitable Referrals.

b.    Client is ultimately responsible for ensuring the suitability and capability of a Permanent Candidate for Placement (defined below), including without limitation taking action (including requesting FRG's assistance) to verify skills, references, qualifications, certifications and any work permits. It is at Client's sole discretion to hire or retain a Permanent Candidate and Client is fully liable for its hiring decisions. Client acknowledges that FRG is not under any circumstances liable for the acts or omissions of a Candidate.

## 2. REPRESENTATION

a.    If Client or a Client affiliate hires or retains a Permanent Candidate within twelve (12) months of the Referral of such Permanent Candidate (**"Placement"**), this Agreement is deemed accepted by Client and Client shall pay a Placement Fee (defined below) to FRG for such Placement.

b.    A Placement Fee may not be considered earned if, within five (5) days of the Referral, Client provides documentation demonstrating, to FRG's satisfaction, that (i) another source introduced Permanent Candidate to Client; or (ii) Permanent Candidate applied directly to Client, and in either case Client was in reciprocal communication with such Permanent Candidate within the fourteen (14) day period immediately preceding the Referral.

## 3. PLACEMENT FEES AND GUARANTEE PERIOD

a. Prior to the Placement, Client shall provide to FRG a copy of the Permanent Candidate's signed offer letter  that includes a full statement of the Total Compensation. The fee is calculated by the Total Compensation and is based on one (1) of two (2) options at Client's election as follows (the "Placement Fee"):

I.    The Placement Fee in connection with a contingency-based search is 30%; or

II.    Client may elect to participate in FRG's **"Client Partnership"** searches as described hereunder, by providing written notice to FRG of its election and information regarding one or more vacancies (the **"Notice"**). Upon receipt of the Notice, FRG will issue an invoice to Client for a non-refundable deposit in the amount of $1,000 (the **"Deposit"**) for each vacancy identified under the Notice (each a **"Partnership Role"**). Client shall pay each Deposit within seven (7) days of FRG's invoice. In exchange for each Deposit, the Fee for any number of Placements into such Partnership Role from the initial search shall be 25%. FRG will only apply the Deposit to the invoice for the first Placement made into a Partnership Role.

b. If a Placement is terminated within the first eight weeks (**"Guarantee Period"**), FRG will refund Client at the rate of 12.5% of the Placement Fee for each full week remaining in the Guarantee

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

Period. The Guarantee Period is inapplicable if: (i) the cause of termination is a layoff or otherwise unrelated to the Permanent Candidate's qualifications, capability, or conduct; (ii) Client fails to notify FRG in writing within 7 days of termination; or (iii) Client fails to pay the Placement Fee in accordance with the Agreement.

## 4.  INVOICING

FRG will issue an invoice to Client on the first day of the Placement and Client will pay each invoice within fourteen (14) days. Client shall pay FRG any sales or similar taxes, if applicable. Overdue amounts will be subject to interest charges at the highest rate allowable by law. If FRG retains a third party for the  purpose of collecting amounts owed hereunder or otherwise enforcing its rights hereunder, Client shall  reimburse FRG for all  such costs and expenses including without limitation attorneys' fees and costs.

# PART 3. CONTRACT RECRUITMENT SERVICES

## 1.  SCOPE

a.      FRG shall review Client's search requirements in detail with Client, actively search its database and the relevant market for potential Contractors, keep Client regularly advised as to the search progress, and Refer potential Contractors who reasonably meet the requirements communicated by Client to FRG. Upon request, FRG will assist in the arrangement of interviews, exchange interview feedback, perform reference checks, and work with Client to construct and close an offer to a Contractor. Client acknowledges that the availability of potential Contractors is subject to market conditions, Client's budget for the Assignment, location of the Assignment, and the uniqueness of the Assignment requirements. Upon Client's written request, and at Client's sole expense, FRG shall contract with a third-party vendor to obtain, and provide to Client, various background check reports and information on Contractors, to the extent legally permissible (each a **"Background Report"**). If Client selects a Contractor for an Assignment, FRG shall facilitate the applicable on-boarding process as described further in Sections 3 or 4 below.

b.      Client is responsible for: determining the requirements of the Assignment; interviewing and testing Contractor to identify Contractor's qualifications, capability, technical ability and proficiency in light of Client's needs; confirming the accuracy of Contractor's resume (with the assistance of FRG); selecting Contractor for an Assignment; establishing and communicating the goals and preferred outcome of each Assignment to the Contractor; closely monitoring and overseeing the Contractor to maintain cost and quality control; limiting Contractor's access to Client's or Client's Customers' data, network and systems (**"Systems"**) such that Contractor only has access to Systems that are required for the Assignment; restricting Contractor from using unauthorized devices, methods or tools to access Systems; implementing reasonable administrative, technical and procedural safeguards to protect the security of Systems; ensuring the condition and safety of the Client's or Client's Customer's worksite (if any); and complying, and causing Client's Customer (if any) to comply, with all laws and regulations applicable to the Contractor and/or Assignment, including without limitation, wage, workplace harassment and workplace discrimination laws.

c.      Nothing herein shall be construed to create an employer-employee relationship between either Party and any Contractor. The Parties agree that Contractor shall control the methods and means of perform Time and Materials Services and shall have the right to perform similar services for other parties.

## 2. "CORP TO CORP" SUPPLIER OPTION

a.      FRG may Refer Contractors that are independent contractor third-party business entities (each a **"Supplier"**) or their employees, contractors or owners to Client to consider for selection as a Contractor for a particular Assignment.   If Client selects a Supplier, for an Assignment, the Parties shall execute a **"Supplier Assignment Schedule,"** attached hereto as <u>Exhibit A and incorporated hereby by reference</u>.

3

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

b.      After Client selects a Supplier, Supplier shall undergo an on-boarding process wherein FRG shall: (a) verify Supplier carries commercial and professional liability insurance; (b) obtain a copy of Supplier's formation document (i.e. articles of incorporation, certification of formation etc.) to ensure Supplier is a U.S. business entity in good standing; (c) enter into a written contract with Supplier (a "corp to corp" agreement), which shall expressly name Client as third-party beneficiary to the terms and conditions thereunder, including without limitation (i) Supplier's obligations of confidentiality and indemnification; (ii) an employer liability disclaimer in favour of Client; and (iii) an assignment by Supplier to Client of all intellectual property created or produced by Contractor in connection with the Assignment; and (d) upon request, provide a copy of Supplier's certificate of insurance naming Client as additional insured.

c.      Unless otherwise stated on the Supplier Assignment Schedule or if the Parties mutually agree otherwise, Client shall directly reimburse Supplier for Expenses, if any, provided Client is solely responsible for reconciling and paying such Expenses. If Client desires that its expense policy apply to the Expenses incurred by a Supplier, Client shall have Supplier execute such policy, provide a copy of such policy to FRG and any provisions of such policy that place any liability for Expenses with FRG are null and void.

## 3. W-2 OPTION

a.      FRG may Refer Contractors who are, or if selected by Client for an Assignment, may become W-2 employees of FRG's wholly owned subsidiary, Frank Recruitment Group Service Inc. ("**FRGS**") strictly for employment and payrolling purposes (the "**FRGS Employee**"). If Client selects an FRGS Employee for an Assignment, the Parties shall execute an "**FRGS Employee Assignment Schedule,**" attached hereto as <u>Exhibit B and incorporated herein by reference</u>.

b.      FRGS will enter into written employment agreements with each FRGS Employee; confirm FRGS Employee's ability to work in the United States; offer each eligible FRGS Employee medical and other benefits, including without limitation, paid and unpaid sick leave and paid and unpaid parental leave, as required by applicable law; pay each FRGS Employee in compliance with applicable law; withhold and transmit payroll taxes to the appropriate government authorities; provide workers' compensation and other employment related insurance as required by applicable law; make unemployment contributions on behalf of each FRGS Employee; and handle unemployment and workers' compensation claims involving an FRGS Employee.

c.      Expenses shall be reimbursed by Client to FRG pursuant to the FRGS Employee Expense Policy attached hereto as <u>Exhibit C and incorporated herein by reference</u>.

## 4. CONFIDENTIALITY, DATA PROTECTION, INTELLECTUAL PROPERTY

a.      FRG recognizes that in the context of rendering Recruitment Services, Client may provide FRG with confidential data about Client's business. Neither FRG, FRGS nor Contractor shall disclose or divulge Client's confidential information except that confidential information may be disclosed (a) to its respective officers, employees and agents; (b) to the extent required by law or regulation; or (c) on a need to know basis to perform its respective obligations hereunder. Client shall hold in strict confidence any information relating to a Contractor or Supplier, and such information shall only be used solely for the purpose of conducting business with FRG in the manner contemplated by this Agreement.

b.      If Client requires Contractor to execute a confidentiality, data protection or intellectual property agreement specific to Client's needs (or Client's Customer's, if any), Client shall provide such agreement(s) directly to FRG for review prior to the commencement of the Assignment. FRG shall not have any liabilities or obligations (legal or contractual) under any agreement entered into directly between Client and Contractor and nothing in such agreements shall modify, delete, replace or supersede any term or condition in this Agreement. Client agrees that no FRGS Employee has the power to bind or obligate FRGS or FRG by signing any document described in this subsection.

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

## 5. TIME and MATERIALS

a.      FRG will provide Client and Contractor access to its online timesheet portal where Contractor will submit weekly timesheets. Within five (5) business days of the submission of a timesheet, Client shall either approve or Dispute (defined below) each timesheet. Client represents and warrants that any employee, agent or representative of Client or Client's Customer who approves all or part of the hours on a timesheet is authorized and qualified to do so and that such approval is binding on Client for all purposes.

b.      Client shall approve or Dispute a timesheet based solely on the accuracy of the total number of hours listed on the timesheet and not the quality, timeliness, completeness or any other aspect of the Time and Materials Services or Contractor's actions.  Client may only reject a timesheet if Client, within five (5) business days of the submission of a timesheet,  provides objective proof to FRG that the number of hours listed on the timesheet is a clerical error or were not, in fact, worked by the Contractor (in either case, a **"Dispute"**). Client shall approve all hours reflected on a timesheet that are not the subject of a Dispute.

c.      Client hereby consents to, and agrees that, FRG shall auto-approve all timesheets submitted by a FRGS Employee if Client fails to notify FRG of a Dispute within five (5) business days of the submission of such timesheet and such auto-approval is binding on Client for all purposes.

d.      Client will notify FRG in writing or email prior to adding, removing, or changing the scope, services, and/or responsibilities set forth on an Assignment Schedule. Except where Client has paid FRG the applicable Conversion Fee in full, all Time and Materials Services or other services rendered by Contractor outside the scope of the Assignment Schedule for the benefit of Client, Client's Customers or their respective affiliates, will be payable by Client pursuant to this Agreement.

e.      Client acknowledges and agrees that FRG shall charge, and Client shall pay, for a minimum number of hours per week for each Assignment (**"Minimum Weekly Hours"**) as set forth under the applicable Assignment Schedule. FRG shall invoice Client the Minimum Weekly Hours, if any, at the Bill Rate set forth under the applicable Assignment Schedule, and Client shall pay the same pursuant to Section 6.

## 6. INVOICING & PAYMENT

a.      FRG shall invoice Client on a bi-weekly basis for all Contract Fees. Unless otherwise specified on the Assignment Schedule, all rates exclude sales and any other applicable taxes. Where applicable, FRG's invoices may include taxes, interest and Expenses. Client shall pay each invoice in full without set off or counterclaim within fourteen (14) days of the date of FRG's invoice. Client shall pay all Contract Fees and other amounts owed via electronic funds.

b.      FRG reserves the right to charge interest on any overdue amounts at the highest rate permitted by applicable law. If FRG retains a third party for the purpose of collecting amounts owed hereunder or otherwise enforcing its rights hereunder, Client shall pay or reimburse FRG for all  such costs and expenses including without limitation attorneys' fees and costs.

## 7. CONVERSION

a.      If Client Converts a Contractor to full time employment (scheduled to work 40 hours or more per week), Client shall pay to FRG a Conversion Fee calculated as a percentage of the Total Compensation, as follows:

| TOTAL COMPENSATION | CONVERSION FEE |
|---|---|
| $49,999 or less | Minimum fee of $12,500 |
| $50,000 - $74,999 | 25% |
| $75,000 - $99,999 | 30% |
| $100,000 - $149,999 | 35% |
| $150,000+ | 37.5% |

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

b.      If Client Converts a Contractor to part time employment (scheduled to work less than 40 hours per week) or as a contractor, consultant or other similar arrangement, the Conversion Fee shall be (a) the bill rate set forth in the Assignment Schedule applicable to the Contractor multiplied by 500 (i.e. appro. 3 months of work) or (b) if Client and FRG have not executed an Assignment Schedule applicable to the Contractor, the actual hourly amount or rate Client will pay or has paid Contractor for services, multiplied by 500.

c.      Client shall owe FRG the Conversion Fee if (a) Client's affiliate, (b) Client's Customer (if any) or (c) other third party to whom Client (1) referred Contractor or (2) disclosed Contractor's information to, Converts the Contractor as if Client itself had Converted the Contractor. If Client identifies a risk of Conversion as described in this subsection, FRG recommends that Client include the terms and conditions of this Section 7  in its contract(s) with such third-party/parties to mitigate, recoup or offset the cost of a possible Conversion Fee from such third party.

d.      For the purposes of this Section 7 "Contractor" and "Conversion" expressly include any business entity in which Contractor, directly or indirectly, owns a financial interest, that has engaged Contractor under a contracting, consulting or other similar arrangement, or that employs Contractor.

e.      Client's payment of a Conversion Fee to FRG on account of a particular Contractor shall not limit, eliminate or affect Client's obligation to pay all Contract Fees and amounts due to FRG hereunder, including hours worked by Contractor before and up to the date FRG receives the full amount of such Conversion Fee.

## 8. TERMINATION

a.      Client shall promptly notify FRG if it receives or otherwise obtains information which gives it reasonable grounds to believe that a Contractor is unsuitable for an Assignment. Client may terminate an Assignment Schedule by written notice to FRG and Contractor. FRG may terminate an Assignment Schedule and/or this Agreement by written notice at any time if Client is in breach of its obligations under this Agreement. Client shall pay FRG for all hours worked by Contractor through the effective date of termination of the Assignment Schedule regardless of the reason for such termination, unless subject to a Dispute.

b.      Notwithstanding anything to the contrary herein and without prejudice to any other right or remedy hereunder or at law or in equity, FRG may suspend or halt the performance of the Recruitment Services or the Time and Materials Services until all outstanding invoices are paid in full or until any breach of this Agreement by Client is cured to FRG's reasonable satisfaction.

# PART 4. GENERAL TERMS AND CONDITIONS

## 1. CONFIDENTIALITY

Client shall be given access to and/or acquire certain confidential information about FRG and Candidates including Candidate personally identifiable information, Candidate references, and resumes ("Confidential Information"). Confidential Information shall only be used by Client for the sole purpose of conducting business with FRG and may not be furnished to third-parties without FRG's advanced written consent. Client will implement all reasonable safeguards to protect Confidential Information from unauthorized disclosure, access, alteration, or deletion. If any of the aforementioned events occur, Client shall immediately notify FRG in writing.

## 2. MUTUAL INDEMNIFICATION

**Each Party shall indemnify, defend and hold harmless the other Party from liability to third parties directly related to any claims, demands, investigations, judgments, damages, fines, costs and expenses (collectively, a "Claim") arising from the gross negligence, willful misconduct, fraud or violation of applicable law by the indemnifying Party, except to the extent that the Claim arises from any act or omission of the other Party or its customers, or their respective employees, agents,**

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

contractors or subcontractors. Client's obligation to indemnify hereunder shall apply equally to FRGS, if applicable, except to the extent that the Claim arises from any act or omission of FRGS.

## 3. DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY; LIMITATION OF DAMAGES

a.      Notwithstanding anything to the contrary herein, and to the fullest extent permitted by law, FRG and FRGS hereby disclaim all warranties and representations with respect to the Recruitment Services and the Time and Materials Services including, without limitation, any warranty of merchantability, fitness for a particular purpose, timeliness, completeness or the achievement of any particular deliverable, result, functionality or capability.

b.      Except to the extent directly attributable to FRG's or FRGS's gross negligence, wilful misconduct or fraud, neither FRG nor FRGS accepts or has any liability for any loss, expense, damage, judgment, cost or delay arising from a Background Report or the acts, omissions, negligence, dishonesty, misconduct or incapability of a Contractor or if a Contractor fails, for any reason, to provide Time and Materials Services for the entire duration of the Assignment Schedule.

c.      Notwithstanding anything to the contrary herein, and to the fullest extent permitted by law, (a) FRG's and FRGS's total liability, in the aggregate, shall be limited to the amounts actually paid by Client to FRG hereunder during the six (6) month period immediately prior to the occurrence of the set of facts and circumstances first giving rise to the claim(s) on which such liability is based and (b) under no circumstances shall FRG or FRGS be liable to Client or Client's Customer for any indirect, punitive, special, exemplary or consequential damages, even if FRG or FRGS knew or should have known, or has been advised of the possibility of such damages or if such damages were foreseeable.

## 4. GOVERNING LAW AND WAIVER OF JURY TRIAL

This Agreement is subject to and governed by the laws of state of Florida without regard to its conflicts of law principles. The Parties shall file or bring all disputes, proceedings, claims and actions arising out of, or related in any way to, this Agreement in the federal or state courts located in (a) Hillsborough County, Florida or (b) the county of the Client's principal place of business or legally registered address. **Each Party hereby waives any and all right it has to a trial by jury.**

## 5. MISCELLANEOUS

**Acceptance.** This Agreement is deemed to be accepted and agreed by Client upon the first to occur of the following events (a) Client's execution of this Agreement, (b) Contractor commencing an Assignment; (c) Conversion of a Contractor; or (d) Placement of a Permanent Candidate. **Counterparts.** This Agreement may be signed in counterparts, and facsimile and PDF signatures shall be treated as originals of the respective Party's signature. **Third Party Beneficiary.** FRGS is expressly named as a third-party beneficiary where FRGS is referenced hereunder. **Binding Effect.** This Agreement is binding on both Parties and their successors and permitted assignees. **Survival.** Each Party's rights and obligations hereunder that by their nature survive the termination or expiration of this Agreement, so shall survive. **Assignment.** No Party may assign this Agreement, or any portion thereof, to any other person or entity without the prior written consent of the other Party and any attempted assignment of this Agreement or any portion thereof that violates this Section shall be null and void, provided however that a Party may assign this Agreement without the consent of the other Party to any purchaser of all or substantially all of its assets (in one transaction or a series of related transactions), to the surviving entity in any corporate reorganization, merger, divestiture or similar transaction or to any purchaser of at least 51% of its voting equity. **Waiver.** No waiver by FRG of any breach of this Agreement will be considered a waiver of any other condition or provision or of the same condition or provision at another time. **Amendment.** No amending, variation or alteration to this Agreement shall be valid unless approved and executed by an authorized representative of both Parties in writing. **Compliance.** Client represents that neither it nor its employees, officers or other representatives are on the Specially Designated Nationals and Blocked

7

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

Persons list regularly updated by the Office of Foreign Assets Control ("OFAC") of the Department of Treasury, or otherwise restricted from doing business hereunder by any other governmental sanction or action. Client shall notify FRG in writing if the representation above becomes untrue for any reason.  The Parties shall comply with equal opportunity and government procurement laws and regulations, including 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a), if applicable. Neither Party, nor its employees, shall give, offer, or receive any bribe or gift to the other Party above a de minimis value considering the circumstances. **Drafting.** The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties. **Entire Agreement.** This Agreement and any signed Assignment Schedule(s) and Exhibits, together constitute the entire agreement and understanding among the Parties and supersedes all previous, contracts, agreements, pre-existing negotiations, representations, promises, and discussions as well as any oral or written communication among the Parties, relating to the subject matter hereof. **Control.** In the event of any conflict between the terms and conditions of this Agreement and the terms and conditions of an Exhibit, the terms and conditions of the Exhibit shall control.

**Signed by FRG:**

Adam VanDelinder

10 June 2022

**Date:** _____

Adam VanDelinder

**Name:** _____

Associate VP II

**Title:** _____

**Signed by Client:**

Chantal Schutz

16 June 2022

**Date:** _____

Chantal Schutz

**Name:** _____

CFO

**Title:** _____

8

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

## Exhibit A- Supplier Assignment Schedule

| | | |
|---|---|---|
| 1. | Client[1] Name | |
| 2. | Client Contact Name | |
| 3. | Client Principal Place of Business | |
| 4. | Supplier Name | |
| 5. | Supplier Worker Name | |
| 6. | Start Date of the Assignment | |
| 7. | Expected End Date of Assignment | |
| 8. | Address where Time and Materials Services will be performed | |
| 9. | Description of Time and Materials Services | |
| 10. | Expected Hours Per Week | |
| 11. | Bill Rate $ (USD) | $/hour USD |
| 12. | Travel Rate $ (USD) | $/hour USD |
| 13. | Minimum Weekly Hours | |
| 14. | Does Client require a Purchase Order for invoices? (please select Yes or No) | |
| 15. | Does Client require invoices to be uploaded to a client portal/website? | |
| 16. | Client Accounts Payable Contact (Accounts Payable name, address, phone numbers, and invoices) | |
| 17. | Special Terms | |

## Expenses Information (to be filled out by Client)

| | | |
|---|---|---|
| 1. | Did Supplier agree to Client's expense policy? (yes/no) | |
| 2. | Are expenses incident to travel  (gas, lodging, tolls, food etc.) covered by Client's expense policy? (yes/no) | |
| 3. | Indicate (yes/no) here if FRG will invoice Client for Expenses | |

**Signed by FRG:**

_____

**Date:**  _____

**Name:** _____

**Title:** _____

**Signed by Client:**

_____

**Date:**  _____

**Name:** _____

**Title:** _____

9

DocuSign Envelope ID: 1067358F-96B3-498D-8EF0-4ACC2A14B5D0

[1]    Unless otherwise defined in this Exhibit A, all capitalized terms used herein shall have the meanings ascribed to them in the fully executed Permanent and Contract Recruitment Agreement.

## Exhibit B- FRGS Employee Assignment Schedule

| 1.  | Client[2] Name | |
|-----|----------------|---|
| 2.  | Client Contact Name | |
| 3.  | Client Principal Place of Business | |
| 4.  | Contractor | FRGS |
| 5.  | FRGS Employee Name | |
| 6.  | Start Date of the Assignment | |
| 7.  | Expected End Date of Assignment | |
| 8.  | Address where Time and Materials Services will be performed | |
| 9.  | Description of Time and Materials Services | |
| 10. | Expected Hours Per Week | |
| 11. | Timesheets | Weekly; auto-approved unless disputed in writing by Client within five (5) days of submission. |
| 12. | Bill Rate $ (USD) | $/hour |
| 13. | Travel Rate $ (USD) | |
| 14. | Minimum Weekly Hours | |
| 15. | Overtime Rate $ (USD) (Non-Exempt FRGS Employee Only) *If FRGS classifies the FRGS Employee as non-exempt, FRG shall bill the Client, and Client shall pay, overtime and other required expenses and costs per the laws of the jurisdiction in which the FRGS Employee works.* | |
| 16. | Expense Policy | FRGS Employee Expense Policy- Exhibit C; *Client shall be invoiced for any and all expenses incurred by FRG in performing the Recruitment Services and by FRGS Employee in performing the Time and Materials Services, plus a 3% administration fee.* |
| 17. | Client Accounts Payable Contact | |
| 18. | Special Terms | |

**Signed by FRG:**

Date: _____

Name: _____

Title: _____

**Signed by Client:**

Date: _____

Name: _____

Title: _____

10

DocuSign Envelope ID: 16B7864E3G6B54B6B5AEFC4ACC2A14B5D0

## EXHIBIT C- FRGS Employee EXPENSE POLICY

**Introduction and Purpose.** This FRGS Employee Expense Policy (the **"Policy"**) applies to Expenses incurred by FRGS[1] or its employees in connection with the performance of Time and Materials Services whether rendered to Client or Client's Customer , if applicable. The purpose of the Policy is to ensure that Client understands its obligations to FRG and FRGS with respect to out of pocket Expenses incurred by FRGS Employees. Client shall be responsible for ensuring that all of its employees or Client's Customer employees, if applicable, who work with or engage an FRGS Employee receive a copy of, and understand, the Policy. Expenses to be reimbursed by Client hereunder include, without limitation, airfare, train fare, lodging, meals, parking, rental car fees, gas and mileage (at the then current rate set by the IRS), and other out of pocket costs and incidentals.

**Expense Approval Process.** FRGS Employees shall submit all Expenses into FRG's or FRGS' timekeeping system along with supporting documentation. Once submitted, the Expense request and supporting documentation shall be electronically sent to a Client representative for approval. Within five (5) business days of Client's receipt of an Expense request (the **"Expense Review Period"**), Client shall either approve or dispute the expense request. If Client fails to inform FRG or FRGS of its dispute of any item on an expense request during the Expense Review Period, Client shall be deemed to approve all aspects of the expense request. If Client disputes any item on an expense request, Client shall immediately notify FRG or FRGS of the dispute in writing and the reason(s) therefor. Client shall pay each approved expense request within seven (7) days of the date of the invoice. Client cannot refuse to pay, reject or dispute any expense item based, in whole or in part, because Client is disputing any other FRG or FRGS invoice, Expenses or timesheet or if it is dissatisfied with the Recruitment Services or the Time and Materials Services.

**Legitimate Business Expense and Authority.** Regardless of whether the expense was incurred at the request of, or for the benefit of, Client or Client's Customer, it shall be Client's, not Client's Customer's, obligation to pay or reimburse FRG or FRGS for such expense. Client or Client's Customer's approval of an expense item on an expense request shall be deemed conclusive proof that such expense is a legitimate business expense. Client represents and warrants to FRG and FRGS that any employee, agent or representative of Client or Client's Customer who pre-approves any expense or approves an item on an expense request is authorized and qualified to do so, and that such approval is binding on Client for all purposes.

**General**. FRG and FRGS will construe and interpret this Policy in accordance with all applicable law. Client acknowledges and agrees that there may be unusual or unplanned circumstances that result in an FRGS Employee incurring business expenses that differ from what was anticipated or agreed. Therefore, Client shall approve and pay any expense item that is different or higher than previously agreed so long as the unusual or unplanned circumstances, and resulting charge, was not the sole fault of the FRGS Employee. FRG and FRGS reserve the right to change the Policy at any time. This Policy supersedes all other prior and contemporaneous agreements and statements, whether written or oral, express or implied, pertaining in any manner to expense reimbursement of FRGS Employees. To the extent that the practices of Client or Client's Customer, now or in the future, apply to FRGS Employees but  are inconsistent with the terms of this Policy, the provisions of this Policy shall control.

**Signed by FRG:**

*Adam VanDelinder*
10 June 2022

**Date:** _____

**Name:** Adam VanDelinder

**Title:** Associate VP II

_____

**Signed by Client:**

*Chantal Schutz*
16 June 2022

**Date:** _____

**Name:** Chantal Schutz

**Title:** CFO

DocuSign Envelope ID: EECB0EC6-47F6-4E17-BCP?^7BC612DE8A9C



**FRANK**
RECRUITMENT GROUP

**Exhibit A- Supplier Assignment Schedule**

| 1. | Client[1] Name | mCloud Technologies (USA) Inc. |
|---|---|---|
| 2. | Client Contact Name | Don Kirouac |
| 3. | **Client Principal Place of Business:** | |
| | Street Address | 550-510 Burrard St. |
| | City | Vancouver |
| | State / Province | British Columbia |
| | ZIP / Postal Code | V6C 3A8 |
| | Country | Canada |
| 4. | Supplier Name | Agency Employment USD Services |
| 5. | Supplier Worker Name | Nila Siva |
| 6. | Start Date of the Assignment | 17 August 2022 |
| 7. | Expected End Date of Assignment | 13 November 2022 |
| 8. | **Address where Time and Materials Services will be performed:** | |
| | Street Address | 216 Conlins Road |
| | City | Toronto |
| | State/Province | Toronto |
| | ZIP / Postal Code | M1C 1C5 |
| | Country | Canada |
| 9. | Description of Time and Materials Services | NetSuite Consulting |
| 10. | Expected Hours Per Week | 20 |
| 11. | Bill Rate | USD 152.85 Hourly |
| 12. | **Client Accounts Payable Contact:** | |
| | Name | Accounts Payable |
| | Email Address | suresh.ramachandran@mcloudcorp.com |
| | Phone number | 778-237-5408 |
| | Street Address | 550-510 Burrard Street |
| | City | Vancouver |
| | State / Province | British Columbia |
| | ZIP / Postal Code | V6C 3A8 |
| | Country | Canada |
| 13. | Weekly Minimum Hours | 20.00 |
| 14. | Do you require a Purchase Order for invoices? (please select Yes or No) | No |
| 15. | Do you require invoices to be uploaded to a client portal / website? | No |

---

[1] Unless otherwise defined in this <u>Exhibit A</u>, all capitalized terms used herein shall have the meanings ascribed to them in the Contract Recruitment Agreement.

Rev. 7/2021 [1] Unless otherwise defined in this <u>Exhibit A</u>, all capitalized terms used herein shall have the meanings ascribed to them in the fully executed Contract Recruitment Agreement.

DocuSign Envelope ID: EECB0EC6-47F6-4E17-B___-7BC612DE8A9C

# FRANK
### RECRUITMENT GROUP

| 16. | Rate Description | | Rate Type | Rate |
|---|---|---|---|---|
| | Standard Rate | | Hourly | USD 152.85 |
| 17. | Special Terms / Additional comments | | Client acknowledges and agrees that Agency shall charge, and Client shall pay, for a minimum of 20 hours per week for this Job Order at the above Bill Rate. | |

## Expenses Information (to be filled out by Client)

| 1. | Did Supplier agree to Client's expense policy? (yes/no) | Yes |
|---|---|---|
| 2. | Are expenses incident to travel (gas, lodging, tolls, food etc.) covered by Client's expense policy? (yes/no) | Yes |
| 3. | Indicate (yes/no) here if FRG will invoice Client for Expenses | Yes |

Signed by FRG:

Date:  16 August 2022

Name:  Henry Hutton

Title:  Contract Adminstrator

Signed by Client:

Date:  16 August 2022

Name:  Chantal Schutz

Title:  CFO

Rev. 7/2021 ¹ Unless otherwise defined in this Exhibit A, all capitalized terms used herein shall have the meanings ascribed to them in the fully executed Contract Recruitment Agreement.

DocuSign Envelope ID: BB9F914C-4CFB-4FA9-8?^^138A605D56DE



**FRANK**
RECRUITMENT GROUP

## Exhibit A- Supplier Assignment Schedule

| 1. | Client[1] Name | mCloud Technologies (USA) Inc. |
|---|---|---|
| 2. | Client Contact Name | Don Kirouac |
| 3. | **Client Principal Place of Business:** | |
| | Street Address | 550-510 Burrard St. |
| | City | Vancouver |
| | State / Province | British Columbia |
| | ZIP / Postal Code | V6C 3A8 |
| | Country | Canada |
| 4. | Supplier Name | Agency Employment Services CAD |
| 5. | Supplier Worker Name | Nila Siva |
| 6. | Start Date of the Assignment | 14 November 2022 |
| 7. | Expected End Date of Assignment | 14 January 2023 |
| 8. | **Address where Time and Materials Services will be performed:** | |
| | Street Address | 550-510 Burrard St |
| | City | Vancouver |
| | State/Province | British Columbia |
| | ZIP / Postal Code | V6C 3A8 |
| | Country | Canada |
| 9. | Description of Time and Materials Services | NetSuite Consulting |
| 10. | Expected Hours Per Week | 20 |
| 11. | Bill Rate | USD 152.85 Hourly |
| 12. | **Client Accounts Payable Contact:** | |
| | Name | Accounts Payable |
| | Email Address | suresh.ramachandran@mcloudcorp.com |
| | Phone number | 778-237-5408 |
| | Street Address | 550-510 Burrard Street |
| | City | Vancouver |
| | State / Province | British Columbia |
| | ZIP / Postal Code | V6C 3A8 |
| | Country | Canada |
| 13. | Weekly Minimum Hours | 20.00 |
| 14. | Do you require a Purchase Order for invoices? (please select Yes or No) | No |
| 15. | Do you require invoices to be uploaded to a client portal / website? | No |

---

[1] Unless otherwise defined in this Exhibit A, all capitalized terms used herein shall have the meanings ascribed to them in the Contract Recruitment Agreement.

Rev. 7/2021 [1] Unless otherwise defined in this Exhibit A, all capitalized terms used herein shall have the meanings ascribed to them in the fully executed Contract Recruitment Agreement.

DocuSign Envelope ID: BB9F914C-4CFB-4FA9-8B7    '38A605D56DE

# FRANK
### RECRUITMENT GROUP

| 16. | **Rate Description** | | **Rate Type** | **Rate** |
|---|---|---|---|---|
| | Standard Rate | | Hourly | USD 152.85 |
| 17. | Special Terms / Additional comments | | Client acknowledges and agrees that Agency shall charge, and Client shall pay, for a minimum of 20 hours per week for this Job Order at the above Bill Rate. | |

## Expenses Information (to be filled out by Client)

| 1. | Did Supplier agree to Client's expense policy? (yes/no) | Yes |
|---|---|---|
| 2. | Are expenses incident to travel  (gas, lodging, tolls, food etc.) covered by Client's expense policy? (yes/no) | Yes |
| 3. | Indicate (yes/no) here if FRG will invoice Client for Expenses | Yes |

Signed by FRG:

*Kevin Cregan*
DEEC903F9835425

Date:    08 November 2022

Name:    Kevin Cregan

Title:    Vice President

Signed by Client:

*Chantal Schutz*
7771C830BAE545C

Date:    17 November 2022

Name:    Chantal Schutz

Title:    CFO

# EXHIBIT B

FRANK

# Statement of Account : mCloud Technologies (USA) Inc. in date of 05/01/2023

**Total Amount:** 121,943.72 USD
**Total Remainder:** 121,835.54 USD

| Item # | Business Name from related Buyer | Issue date | Due Date | Amount of Transaction | | Transaction Remainder | |
|---|---|---|---|---|---|---|---|
| U1000131200 | mCloud Technologies (USA) Inc | 20/09/2022 | 04/10/2022 | 780.31 | USD | 780.31 | USD |
| U1000131112 | mCloud Technologies (USA) Inc | 20/09/2022 | 04/10/2022 | 1,688.82 | USD | 1,580.64 | USD |
| U1000130978 | mCloud Technologies (USA) Inc | 20/09/2022 | 04/10/2022 | 234.10 | USD | 234.10 | USD |
| U1000130979 | mCloud Technologies (USA) Inc | 20/09/2022 | 04/10/2022 | 4,814.78 | USD | 4,814.78 | USD |
| U1000131440 | mCloud Technologies (USA) Inc | 22/09/2022 | 06/10/2022 | 4,814.78 | USD | 4,814.78 | USD |
| U1000131505 | mCloud Technologies (USA) Inc | 23/09/2022 | 07/10/2022 | 1,092.43 | USD | 1,092.43 | USD |
| U1000131713 | mCloud Technologies (USA) Inc | 26/09/2022 | 10/10/2022 | 6,419.70 | USD | 6,419.70 | USD |
| U1000131556 | mCloud Technologies (USA) Inc | 26/09/2022 | 10/10/2022 | 1,688.82 | USD | 1,688.82 | USD |
| U1000132174 | mCloud Technologies (USA) Inc | 29/09/2022 | 13/10/2022 | 1,248.49 | USD | 1,248.49 | USD |
| U1000132291 | mCloud Technologies (USA) Inc | 03/10/2022 | 17/10/2022 | 1,688.82 | USD | 1,688.82 | USD |
| U1000132956 | mCloud Technologies (USA) Inc | 06/10/2022 | 20/10/2022 | 780.31 | USD | 780.31 | USD |

| ID | Company | Date | Date | Amount | Currency | Amount | Currency |
|---|---|---|---|---|---|---|---|
| U1000132957 | mCloud Technologies (USA) Inc | 06/10/2022 | 20/10/2022 | 6,419.70 | USD | 6,419.70 | USD |
| U1000133065 | mCloud Technologies (USA) Inc | 10/10/2022 | 24/10/2022 | 1,688.82 | USD | 1,688.82 | USD |
| U1000133360 | mCloud Technologies (USA) Inc | 11/10/2022 | 25/10/2022 | 6,740.69 | USD | 6,740.69 | USD |
| U1000133786 | mCloud Technologies (USA) Inc | 18/10/2022 | 01/11/2022 | 936.37 | USD | 936.37 | USD |
| U1000133814 | mCloud Technologies (USA) Inc | 18/10/2022 | 01/11/2022 | 1,688.82 | USD | 1,688.82 | USD |
| U1000134096 | mCloud Technologies (USA) Inc | 19/10/2022 | 02/11/2022 | 6,901.18 | USD | 6,901.18 | USD |
| U1000134761 | mCloud Technologies (USA) Inc | 25/10/2022 | 08/11/2022 | 1,688.82 | USD | 1,688.82 | USD |
| U1000134821 | mCloud Technologies (USA) Inc | 25/10/2022 | 08/11/2022 | 780.31 | USD | 780.31 | USD |
| U1000135076 | mCloud Technologies (USA) Inc | 26/10/2022 | 09/11/2022 | 1,521.60 | USD | 1,521.60 | USD |
| U1000135511 | mCloud Technologies (USA) Inc | 31/10/2022 | 14/11/2022 | 2,955.44 | USD | 2,955.44 | USD |
| U1000135457 | mCloud Technologies (USA) Inc | 31/10/2022 | 14/11/2022 | 14,283.83 | USD | 14,283.83 | USD |
| U1000136077 | mCloud Technologies (USA) Inc | 03/11/2022 | 17/11/2022 | 858.34 | USD | 858.34 | USD |
| U1000136881 | mCloud Technologies (USA) Inc | 10/11/2022 | 24/11/2022 | 6,740.69 | USD | 6,740.69 | USD |
| U1000136906 | mCloud Technologies (USA) Inc | 11/11/2022 | 25/11/2022 | 2,068.80 | USD | 2,068.80 | USD |
| U1000137082 | mCloud Technologies (USA) Inc | 14/11/2022 | 28/11/2022 | 1,984.36 | USD | 1,984.36 | USD |
| U1000137127 | mCloud Technologies (USA) Inc | 14/11/2022 | 28/11/2022 | 1,365.54 | USD | 1,365.54 | USD |
| U1000137466 | mCloud Technologies (USA) Inc | 16/11/2022 | 30/11/2022 | 6,740.69 | USD | 6,740.69 | USD |

| U1000138181 | mCloud Technologies (USA) Inc | 23/11/2022 | 07/12/2022 | 3,335.42 | USD | 3,335.42 | USD |
| U1000138243 | mCloud Technologies (USA) Inc | 23/11/2022 | 07/12/2022 | 1,716.68 | USD | 1,716.68 | USD |
| U1000138665 | mCloud Technologies (USA) Inc | 29/11/2022 | 13/12/2022 | 1,688.82 | USD | 1,688.82 | USD |
| U1000138806 | mCloud Technologies (USA) Inc | 29/11/2022 | 13/12/2022 | 13,481.37 | USD | 13,481.37 | USD |
| U1000139144 | mCloud Technologies (USA) Inc | 05/12/2022 | 19/12/2022 | 780.31 | USD | 780.31 | USD |
| U1000139528 | mCloud Technologies (USA) Inc | 07/12/2022 | 21/12/2022 | 3,124.32 | USD | 3,124.32 | USD |
| U1000139805 | mCloud Technologies (USA) Inc | 08/12/2022 | 22/12/2022 | 1,688.82 | USD | 1,688.82 | USD |
| U1000139681 | mCloud Technologies (USA) Inc | 08/12/2022 | 22/12/2022 | 858.34 | USD | 858.34 | USD |
| U1000140174 | mCloud Technologies (USA) Inc | 13/12/2022 | 27/12/2022 | 4,654.28 | USD | 4,654.28 | USD |

# EXHIBIT C

LAW OFFICES

# BOWEN & BURNS

A PROFESSIONAL CORPORATION
530 STREET ROAD
P.O. BOX 572
SOUTHAMPTON, PA 18966-0572

GERALD L. BOWEN, JR.
MICHAEL J. BURNS
MJBURNS@BOWENBURNSLAW.COM
RYAN FITZGERALD

215.322.9030 PHONE
215.322.9308 FAX

NORTHEAST PHILADELPHIA OFFICE
9547 BUSTLETON AVENUE
PHILADELPHIA, PA  19115
215.704.4512 PHONE
ALL MAIL GOES TO SOUTHAMPTON OFFICE

April 21, 2023

**VIA CERTIFIED MAIL RRR, U.S. Mail Postage Prepaid, and E-Mail**
**russ.mcmeekin@mcloudcorp.com**

mCloud Technologies (USA) Inc.
c/o Russ McMeekin
2110 Powers Ferry Road SE
Suite 202
Atlanta, Georgia  30339

> **RE:** ***Breach of Contract with Frank Recruitment Group, Inc.***
> ***with respect to Leprechaun Consulting LLC via Carter McEvoy,***
> ***Balancing on Clouds Inc. via Nila Siva and Kinza IT Solutions Inc,***
> ***via Alex Hadimulya***
> ***Balance Due: $121,835.54***

Dear Mr. McMeekin:

We have been retained to represent Frank Recruitment Group Inc. ("FRG") in the above referenced matter and to secure the full balance due and owing prior to the commencement of a legal proceeding against mCloud Technologies (USA) Inc.

As documented in FRG's Permanent and Contract Candidate Contingent Recruitment Services Agreement dated June 16, 2022 (the "Agreement"), attached at Tab 1, mCloud Technologies (USA) Inc, ("mCloud") commercially contracted with FRG to provide candidates to fill employment positions at mCloud.  As you are aware, FRG recruited and presented Leprechaun Consulting LLC via Carter McEvoy, Balancing on Clouds Inc. via Nila Siva and Kinza IT Solutions Inc. via Alex Hadimulya (collectively the "Contractors").  The Contractors were retained by mCloud and, pursuant to the Agreement, mCloud was obligated to remit an hourly rate as set forth in the respective Exhibit A Supplier Assignment Schedules.  *See* Exhibit A.  The total fee incurred and invoiced by FRG was $121,835.54, which is the balance due.  *See* Statement of Account at Tab 2.

FRG timely submitted its invoices to mCloud and, per the Agreement, payment was due within fourteen (14) days.  *See* Agreement at Part 3, Section 6.  In an effort to act in good faith and to attempt to accommodate mCloud, FRG has contacted mCloud to discuss securing and resolving the outstanding balance due on the invoice amicably. mCloud has continuously failed to furnish payment in disregard of its contractual obligations.  To date, the $121,835.54 remains

outstanding despite the clear terms of the Agreement and the repeated requests and demand for payment, including an e-mail by FRG's General Counsel on March 31, 2023.

FRG has expended considerable time and resources to fulfill all of its contractual obligations under the Agreement. As its last and final effort to amicably resolve this matter, FRG hereby requires and demands that mCloud pay the outstanding $121,835.54 balance in full within ten (10) days of the date of this letter via wire transfer as follows:

Frank Recruitment Group Inc.
HSBC Bank
452 Fifth Avenue
New York, NY 10018
Routing Number: 021001088
Account Number: 629759774

If mCloud fully remits and pays the outstanding balance due within ten (10) days, FRG is willing to consider waiving its contractual right to the interest accrued and late payment penalty as provided in the Agreement at Part 3, Section 6b.

Should mCloud fail to pay the full amount owed or contact me to make arrangements to satisfy the outstanding balance within ten (10) days, FRG will escalate its collection efforts, which may include filing a formal legal action in accordance with the Agreement to remedy mCloud's material contractual breach, and seek the amount owed, plus accrued interest, late payment penalties and past and future costs, including legal fees.

Please feel free to contact me at 215-322-9030, or directly on my cell 215-380-2776, or via e-mail, mjburns@BowenBurnslaw.com should you have any questions or wish to discuss further.

Thank you for your prompt attention to this important matter.

Very truly yours,

BOWEN & BURNS

MICHAEL J. BURNS, ESQUIRE

Enclosures – Tabs 1-2
cc: Frank Recruitment Group, Inc. (w/o enclosures) (via e-mail ONLY)
MJB/dg