# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DANAE M. DEFELICE,

                              Plaintiff,

vs.

EQUIFAX INFORMATION
SERVICES LLC, and EXPERIAN
INFORMATION SOLUTIONS, INC.,

                    Defendants.

CASE NO.:

**JURY TRIAL
DEMANDED**

## COMPLAINT

Danae M. DeFelice ("Plaintiff") brings this Complaint against Equifax
Information Services LLC ("Equifax") and Experian Information Solutions, Inc.
("Experian") (collectively "Defendants") for actual, statutory, and punitive
damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act
("FCRA"), 15 U.S.C. § 1681 *et seq.*, arising out of the credit bureau defendants'
mixing of Plaintiff's credit files with another consumer's credit file, despite the fact
that the other consumer has an entirely different name and Social Security number
than Plaintiff.

1

## PRELIMINARY STATEMENT

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.     Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     Theses CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning

individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.     "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.     Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other

information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities'". *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.     Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.     "Mixed files" create a false description and representation of a consumer's credit history.

9.     A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10.     The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to

4

Persons other than the Person who is the subject of that Consumer Report." *F.T.C.*
*v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11.     Mixed files are not a new phenomenon. Equifax, Experian, and Trans
Union have been on notice of the existence of mixed files, and the fact that their
procedures for creating credit files, including their matching algorithms, are prone
to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San
Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.     More recently, Equifax, Experian, and Trans Union have been the
subject of numerous state attorney general actions relating to its mixed file problem.

13.     For example, in 2015, the New York Attorney General filed charges
and settled claims with Equifax, Experian, and Trans Union over mixed files.[1] *See
In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v.
Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans
Union LLC.*

14.     Notwithstanding Equifax, Experian, and Trans Union's notice and
being subject to repeated enforcement actions, mixed files continue to occur dispute

---

[1] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-groundbreaking-consumer-
protection-settlement-three Last visited January 24, 2021; *see also*
https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited
January 24, 2021.

consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

15. Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

16. Equifax, Experian, and Trans Union have each been sued thousands of times wherein an allegation was made that Equifax, Experian, and Trans Union violated the FCRA. Moreover, Equifax, Experian, and Trans Union are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

17. Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

18. For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them dispute Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

6

19.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms.  Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4 million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

21.     Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part,*

*rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

22.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

23.    No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

24.    Finally, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, Experian, and Trans Union, to review their procedures when a mixed file case occurs.

25.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## **THE PARTIES**

26.     Plaintiff Danae M. DeFelice ("Plaintiff") is a natural person who resides in the State of New Jersey, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

27.     Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company and resides in the State of Georgia, including in this District.

28.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

29.     Defendant Experian Information Solutions, Inc. ("Experian") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

30.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating,

and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

33.     Plaintiff mailed multiple written disputes regarding inaccurate information in Plaintiff's Equifax credit report to Equifax located in Fulton County; Atlanta, Georgia.

34.     Defendant Equifax received Plaintiff's multiple written disputes in Fulton County; Atlanta, Georgia.

35.     Upon receipt of Plaintiff's disputes, Defendant Equifax forwarded such disputes to furnishers via Automated Consumer Dispute Verification electronic forms. Upon completion of its investigations pursuant to 15 U.S.C. § 1681s-2(b), the furnishers responded to Defendant Equifax's electronic communications, which

originated from Atlanta, Georgia, by sending its results electronically to Defendant

Equifax in Fulton County; Atlanta, Georgia

36.     Defendant Equifax then processed the dispute results at its National

Consumer Assistance Center in Atlanta, Georgia, and mailed Plaintiff its final

dispute results from Atlanta, Georgia.

## FACTS

### Summary of the Fair Credit Reporting Act

37.     The FCRA governs the conduct of consumer reporting agencies in an

effort to preserve the integrity of the consumer banking system and to protect the

rights of consumers to fairness and accuracy in the reporting of their credit

information.

38.     The purpose of the FCRA is to require consumer reporting agencies to

"adopt reasonable procedures for meeting the needs of commerce for consumer

credit, personal, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy,

and proper utilization of such information…." 15 U.S.C. § 1681(b).

39.     The FCRA further requires that when preparing consumer reports a

consumer reporting agency must follow "reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

### The Credit Bureau's Processing of Credit Information

40.     Defendants Equifax, Experian, and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

41.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

42.     Defendants collect information from thousands of furnishers.

43.     The process by which Defendants receive, sort, and store information is largely electronic.

44.     Furnishers report credit information to Defendants through the use of coded tapes that are transmitted on a monthly basis through software known as Metro 2.

45.     Defendants take the credit information reported by furnishers and create consumer credit files.

46.     Defendants maintain credit files on more than 200 million consumers.

47.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

## Equifax, Experian, and Trans Union's Mixed File Problem

48.     Defendants know that different consumers can have similar names.

49.     Defendants know that different consumers can have similar Social Security numbers.

50.     Defendants know that different consumers with similar names can also have similar Social Security numbers.

51.     Defendants know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

52.     Defendants match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

53.     Defendants accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

54.     Sometimes Defendants' matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

55.     Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the three major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

56.     Despite Defendants' long-standing and specific knowledge of the mixed file problem, Plaintiff's credit report was still generated by Defendants containing information belonging to another consumer.

57.     A mixed or merged credit file is the result of Defendants inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

58.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Defendants to match personal identifying information and credit information, including public record information, to a particular consumer's credit file.

59.   The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Defendants.

60.   A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendants.

61.   These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

62.   Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

### The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

63.   The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

64.   Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows

data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

65.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

66.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

67.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

68.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

69.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

70.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

71.    The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

72.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

### Defendants Equifax and Experian Fail to Provide Credit Disclosures on or about November 8, 2021

73.    On or about November 8, 2021, Plaintiff requested credit disclosures from Defendants Equifax and Experian.

74.    Defendants Equifax and Experian failed to provide the requested credit disclosures in violation of 15 U.S.C. § 1681g.

17

**Plaintiff's Mixed Experian Credit File as of May 4, 2022**

75.    On or about May 4, 2022, Plaintiff sees that Experian is reporting the

following accounts that do not belong to Plaintiff in Plaintiff's credit report:

> Tradeline: Ally Financial
> Partial Account Number: 22793888XXXX
>
> Tradeline: Capital One
> Partial Account Number: 517805922909XXXX
>
> Tradeline: Synchrony/Card Credit
> Partial Account Number: 601918386308XXXX
>
> Tradeline: Synchrony/Lowes
> Partial Account Number: 798192611480XXXX
>
> Tradeline: BB&T
> Partial Account Number: 46160811XXXX

76.    Plaintiff sees that Experian is reporting the following inquiries that do

not belong to Plaintiff in Plaintiff's credit report:

> CredCo/First American on behalf of Citizens Bank of America April
>     26, 2022
> Synchrony/Lowes November 29, 2021

77.    Plaintiff sees that Experian is reporting an inaccurate name that does

not belong to Plaintiff in Plaintiff's credit report.

78.    Plaintiff sees that Experian is reporting a social security number that

does not belong to Plaintiff in Plaintiff's credit report.

79.     Plaintiff sees that Experian is reporting addresses that do not belong to Plaintiff in Plaintiff's credit report.

80.     Plaintiff sees that Experian is reporting a phone number that does not belong to Plaintiff in Plaintiff's credit report.

81.     Plaintiff sees that Experian is reporting an employer that does not belong to Plaintiff in Plaintiff's credit report.

82.     Defendant Experian mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

> a) Plaintiff's legal name is Danae M. DeFelice and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to another consumer; and
>
> b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff Disputes Experian on May 26, 2022**

83.   On or about May 26, 2022, extremely shocked, surprised, and embarrassed at Defendant Experian's inaccurate reporting, Plaintiff mailed a written dispute to Experian, via certified mail, disputing the inaccurate information that Experian was reporting in Plaintiff's credit report. Plaintiff requested they reinvestigate the disputed information, correct the reporting, and send corrected copies of the credit report.

### Experian's Response to Plaintiff's May 26, 2022 Dispute

84.   Defendant Experian did not respond to Plaintiff's dispute.

85.   Defendant Experian did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

86.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

87.   Defendant Experian failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

### On or about January 8, 2023, Discover Denies Plaintiff Credit Due to Inaccurate Credit Reporting

88.     On or about January 8, 2023, Plaintiff sought to obtain a secured credit card and submitted a credit application to Discover.

89.     Shortly thereafter, Discover denied Plaintiff's credit application based upon the contents of Plaintiff's credit reports.

90.     Plaintiff takes great pride in Plaintiff's good name and established credit rating and works hard to ensure that the bills are paid in full and on time each month. Plaintiff believes and understands that their credit record with creditors is good, so Plaintiff could not imagine how the application had been denied.

**Equifax Reports Inaccurate Information on or about January 27, 2023**

91.     On or about January 27, 2023, Plaintiff sees that Equifax is reporting the following accounts which do not belong to Plaintiff in Plaintiff's credit report:

Tradeline: Synchrony/Care Credit
Account Number: Partial Acct# xxxxxxxxxxxxxxxxxx

Tradeline: Ally Financial
Account Number: Partial Acct# xxxxxxxxxxxxxxxxxx

Tradeline: BB&T
Account Number: Partial Acct xxxxxxxxxxxxxxxxxx

Tradeline: Capital One
Account Number: Partial Acct xxxxxxxxxxxxxxxxxx

Tradeline: Synchrony/Lowes
Account Number: Partial Acct xxxxxxxxxxxxxxxxxx

92.     Plaintiff sees that Experian is reporting the following inquiries that do not belong to Plaintiff in Plaintiff's credit report:

> CredCo/First American on behalf of Citizens Bank of America April 26, 2022

93.     Plaintiff sees that Equifax is reporting a name that does not belong to Plaintiff in Plaintiff's credit report.

94.     Plaintiff sees that Equifax is reporting a social security number that does not belong to Plaintiff in Plaintiff's credit report.

95.     Plaintiff sees that Experian is reporting addresses that do not belong to Plaintiff in Plaintiff's credit report.

96.     Defendant mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

> a) Plaintiff's legal name is Danae M. DeFelice and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to another consumer; and

b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff Sees Experian Reporting Inaccurate Information on or about January 27, 2023**

97.    On or about January 27, 2023, Plaintiff sees that Experian is reporting the following inaccurate information in Plaintiff's credit report:

Tradeline: Ally Financial
Partial Account Number: 22793888XXXX

Tradeline: Capital One
Partial Account Number: 517805922909XXXX

Tradeline: Synchrony/Card Credit
Partial Account Number: 601918386308XXXX

Tradeline: Synchrony/Lowes
Partial Account Number: 798192611480XXXX

Tradeline: BB&T
Partial Account Number: 46160811XXXX

98.    Plaintiff sees that Experian is reporting inquiries that do not belong to Plaintiff in Plaintiff's credit report.

99.    Plaintiff sees that Experian is reporting a name that does not belong to Plaintiff in Plaintiff's credit report.

100. Plaintiff sees that Experian is reporting a social security number that does not belong to Plaintiff in Plaintiff's credit report.

101. Plaintiff sees that Experian is reporting addresses that do not belong to Plaintiff in Plaintiff's credit report.

102. Plaintiff sees that Experian is reporting a phone number that does not belong to Plaintiff in Plaintiff's credit report.

103. Plaintiff sees that Experian is reporting an employer that does not belong to Plaintiff in Plaintiff's credit report.

104. Defendant Experian mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendants to realize Plaintiff is not the same person as this other consumer include the following:

   a) Plaintiff's legal name is Danae M. DeFelice and the personal and account information Defendants mixed into Plaintiff's credit reports belongs to another consumer; and

   b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

24

**Plaintiff Disputes Experian and Equifax on March 10, 2023**

105.   On or about March 10, 2023, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff mailed a written dispute to Experian and Equifax, via certified mail, disputing the inaccurate information that Experian and Equifax were reporting in Plaintiff's credit report. Plaintiff requested they reinvestigate the disputed information, correct the reporting, and send corrected copies of the credit report.

**Equifax's Response to Plaintiff's March 10, 2023 Dispute**

106.   Defendant Equifax did not respond to Plaintiff's dispute.

107.   Defendant Equifax did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

108.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

109.   Defendant Equifax failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Experian's Response to Plaintiff's March 10, 2023 Dispute**

110.   Upon receiving Plaintiff's dispute, Experian removed the disputed accounts from Plaintiff's credit file.

111.   Experian failed to remove the remaining inaccurate information from Plaintiff's credit report.

112.   Sometime after the March 10, 2023 dispute, Experian completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Experian failed to properly reinvestigate and delete the disputed information which does not belong to Plaintiff, and continued to appear on Plaintiff's Experian credit report.

**Plaintiff Sees Experian Reporting Inaccurate Information on or about April 7, 2023**

113.   On or about April 7, 2023, Plaintiff sees that Experian is reporting inquiries that do not belong to Plaintiff in Plaintiff's credit report.

114.   Plaintiff sees that Experian is reporting addresses that do not belong to Plaintiff in Plaintiff's credit report.

115.   Plaintiff sees that Experian is reporting an employer that does not belong to Plaintiff in Plaintiff's credit report.

116.   Sometime after the dispute, Experian completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Experian failed to properly reinvestigate and delete the personal information which do not belong to Plaintiff, and continued to appear on Plaintiff's Experian credit report.

117.   As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit files.

118.   Equifax and Experian maintain/maintained multiple credit files for Plaintiff.

119.   At least one of Plaintiff's Equifax and Experian credit files contain or have contained personal information and credit account information, including derogatory collection accounts and charge offs, which do not belong or pertain to her.

120.   Equifax and Experian's merging and matching algorithms have caused Plaintiff's credit files to become mixed with personal and credit account information belonging to a different consumer.

121.   Within the two (2) years previous to the filing of this Complaint, Equifax and Experian prepared and distributed one or more consumer reports, as that term is defined by 15 U.S.C. § 1681a(d), pertaining to Plaintiff that contained misleading and inaccurate information which belongs to another consumer, including without limitation, personal information and credit accounts, which actually belong to a different consumer.

122.   Equifax and Experian failed to maintain and follow reasonable procedures to assure the maximum possible accuracy of the personal and credit account information contained within at least one of the credit files they maintain for Plaintiff.

123.   Equifax and Experian know that their matching algorithms are flawed and frequently result in mixed information and credit files belonging to two different consumers.

124.   Equifax and Experian have been sued thousands of times by consumers and suffered judgments as a result of mixing consumer credit information and credit files.

125.   When Equifax and Experian assemble consumer reports for their subscribers, they allow such subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases, like the instant matter, belong to another consumer.

126.   Equifax and Experian also fail to require an exact match of all digits of a consumer's Social Security number, which may in some cases result in the inclusion of credit information which belongs to another consumer.

127.   However, when consumers like Plaintiff request copies of their credit files, Equifax and Experian require a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

128.   Consequently, Equifax and Experian's own procedures for disclosing information to consumers, as they are required to do by the FCRA, tend to mask or conceal the problem of mixed files.

129.   By concealing this information, Equifax and Experian impair the ability of consumers, like Plaintiff, to identify and dispute errors resulting from mixed credit information or credit files.

130.   Equifax and Experian have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports, in violation of 15 U.S.C. § 1681e(b).

131.   Equifax and Experian's failure to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports was negligent and/or willful.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants)

132.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-131 as if fully stated herein.

133.   Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit file they published and maintain concerning Plaintiff.

134.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and

money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit file.

135.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

136.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendants Equifax and Experian)

137.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-131 as if fully stated herein.

138.   Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after they received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of both disputed credit accounts and hard inquiries; and by failing to maintain

reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

139.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit file.

140.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

141.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681g**
**Failure to Provide Disclosures to Plaintiff**

142.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-131 as if fully stated herein.

143.   Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiff's credit disclosure after each request.

144.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment.

145.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

146.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)    Determining that each Defendant negligently and/or willfully violated the FCRA;

b)    Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiff reasonable attorney's fees and costs from each Defendant as provided by the FCRA; and

d)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **<u>DEMAND FOR JURY TRIAL</u>**

147.   Plaintiff demands a trial by jury.

Dated:        August 1, 2023

*/s/ Joseph P. McClelland*
Joseph P. McClelland
LAW FIRM OF JOSEPH P. MCCLELLAND, LLC
Georgia Bar No: 483407
235 East Ponce de Leon Avenue, Suite 215
Decatur, GA 30030
Telephone: (770) 775-0938
Fax: (470) 468-0070
Email: joseph@jacksonlaws.com

*ATTORNEY FOR PLAINTIFF*