

## GENERAL AGREEMENT OF INDEMNITY

This General Agreement of Indemnity ("Agreement") is executed by the undersigned entities and/or individuals ("Indemnitors") in favor of Great Midwest Insurance Company, Boston Indemnity Company, Inc., and any other company that is part of or added to Skyward Specialty Insurance Group, Inc. for which surety business is underwritten by the Skyward Specialty surety division ("Surety") with respect to any surety bond, or other express or implied obligation of suretyship ("Bonds") requested from and/or issued by Surety before, on, or after the date of this Agreement, for: (i) any of the Indemnitors; (ii) any of the Indemnitors' present or future subsidiaries or affiliates; and/or (iii) any other entity or person in response to a request from any party described in items (i) or (ii) (including requests from their agents, brokers or producers); and as to all of the foregoing, whether they act alone or in joint venture with others ("Principals").

NOW, THEREFORE, as inducement to the Surety and in consideration of the Surety's execution of one or more Bonds, delivery of one or more Bonds, refraining from canceling one or more Bonds, and/or assumption of obligations by the Surety of one or more Bonds, and for other good and valuable consideration, the undersigned, jointly and severally, agree as follows:

1. DEFINITIONS: For purposes of this Agreement:

   1.1 "Indemnitors" as referenced above shall include any and all corporations, limited liability companies, partnerships, sole proprietorships, trusts, and/or any other entity, as well as any and all individuals, that sign this Agreement, and any and all of its or their parents, affiliates, divisions, subsidiaries, successors, assigns, heirs, executors, administrators, partners and/or joint venturers, whether in existence now or formed or acquired hereafter.

   1.2 "Principals" as referenced above shall include any and all individuals or entities that are identified as the principal in any Bonds issued by the Surety in reliance upon this Agreement (including any of the undersigned that are named as a principal in a Bond), and any and all of its or their parents, affiliates, divisions, subsidiaries, successors, assigns, heirs, executors, administrators, partners and/or joint venturers, whether in existence now or formed or acquired hereafter.

   1.3 "Surety" as referenced above shall include any surety company or companies issuing Bond(s) for any Principal or on behalf of any Indemnitor (including but not limited to bonds issued by or through the efforts of any representative and/or agent), and any company or companies acting as co-sureties, fronting partners, and/or reinsurers, including the successors and assigns of all of the foregoing. The terms and conditions of this Agreement shall apply to and operate for the benefit of any co-sureties, fronting partners, and/or reinsurers, regardless of whether the Surety itself executes or retains any portion of the obligations of such Bonds. Indemnitors understand and agree that no one has the right to pursue Surety's reinsurers directly, other than Surety or its representative.

   1.4 "Bonds" as referenced above shall include any contractual obligation, undertaking, contract of suretyship, guaranty or indemnity, undertaken by the Surety, issued on behalf of, or procured for a Principal by the Surety, before, on, or after the date of this Agreement, and any renewal, modification, extension or substitution thereof. The Indemnitors acknowledge and agree that any Bonds issued before Indemnitors executed this Agreement were issued pursuant to Indemnitors' request and in reliance upon the Indemnitors' promise to execute this Agreement.

   1.5 "Bonded Contract" shall mean any Contract in connection with which a Bond shall have been issued or procured.

   1.6 "Contract" shall mean any agreement between or among a Principal and any one or more parties other than the Surety, together with all associated documents, including, but not limited to, general and special conditions, specifications, drawings, schedules and/or CPMs, whether or not the Surety has executed or procured the execution of any Bond in connection therewith.

   1.7 "Good Faith" with respect to an act, omission or exercise of discretion by the Surety shall mean the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed to the absence of good faith.

2. PREMIUMS: For each and every Bond issued by the Surety to or on behalf of any of the Indemnitors, the Indemnitors shall, at or before the time of execution, or, in the case of a Bond renewal, extension, modification or substitution, at the time of such renewal, extension, modification or substitution, or in the case of a term premium, at or before the commencement of the term and/or any renewal thereof, pay or cause to be paid to Surety or its designated or appointed Agent, all premiums or other charges of the Surety, in accordance with its rates prevailing at the time, and shall continue to pay same until the Surety has been furnished with evidence, satisfactory to the Surety, of its release or discharge from suretyship of all liability on the Bond(s) and in connection with all matters related thereto. Should the initial premium be computed on a rate per $1,000 contract price and should the final contact price be more or less than the price upon which such premium charge was based, the Indemnitors will pay the Surety an additional premium, or be entitled to receive from the Surety a return of premium, as the case may be, computed upon such difference in the contract price. Failure of the Surety or its designated or appointed Agent to collect any premium(s) when due shall not operate as a waiver of the Surety's right to such premium(s) or discharge the obligations of the Indemnitors hereunder to the Surety.

3. INDEMNIFICATION. The Indemnitors hereby, jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the rate set forth in Section 3.7 hereof, which Surety may sustain or incur or for which the Surety becomes liable or has reason to believe it may be, or may become liable by reason of or in consequence of the execution and/or delivery by Surety of any Bond(s) on behalf of any Indemnitor, whether or not such Bond(s) has been issued prior to execution hereof and whether or not Surety shall have paid any amount on account thereof, including, without limitation, the following:

   3.1   Liability incurred, amount(s) paid and/or amount(s) reserved as to satisfaction or settlement of any and/or all claims, demands,

Initials _[signature]_ _____ _____ _____ _____ _____ _____ _____ _____   1

CN0008142

Butch Thompson Enterprises, Inc.

damages, costs, losses, suits, proceedings and/or judgments relating to Principal's nonperformance, incomplete performance and/or alleged nonperformance or incomplete performance of an Obligation (referred to herein as any agreement, undertaking and/or other duty, the performance of which is guaranteed by Surety pursuant to and/or is the subject of a Bond) or any other matter covered by a Bond, or which, in the Surety's sole determination, may be covered by a Bond; plus

3.2   Liability incurred and/or expenses paid and/or incurred in connection with claims, suits or judgments relating to an Obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses, expert fees, and all fees and costs for investigation, accounting and engineering services, whether on salary, retainer or otherwise; plus

3.3   Liability incurred and/or expenses paid in procuring or attempting to procure a release of liability under and/or exoneration of a Bond; plus

3.4   Liability incurred and/or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an Obligation and/or a Bond; plus

3.5   Liability incurred or demands, claims, damages or expenses resulting from the failure of a Principal or Indemnitor to perform or comply with any or all of the covenants and conditions of this Agreement, including, without limitation, the costs and/or expenses of Surety in connection with the enforcement of any of Principal's or Indemnitor's covenants and conditions contained herein or in connection with the exercise of any remedy of Surety hereunder, including but not limited to Surety's attorneys' fees (including, in-house counsel), all legal expenses, expert fees, consultant fees and all of Surety's costs whether for employees on salary or otherwise; plus

3.6   The obligations of Principal and Indemnitor hereunder shall also include, at Surety's election, exercisable by Surety by the delivery of written notice to any Principal and/or Indemnitor, the obligation to defend at Principal's and/or Indemnitor's sole cost and expense, and with counsel acceptable to Surety, any suit, action or other proceeding initiated with respect to an Obligation or a Bond. However, Indemnitors agree that Surety has the sole discretion to decide to retain its own attorneys and/or consultants and Indemnitors will be liable to Surety for all such fees and expense.

3.7   The rate of interest shall be the maximum rate permitted by law.

4. EXERCISE OF RIGHTS BY SURETY. In connection with the exercise of any of Surety's rights under this Agreement:

4.1   Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond and/or in connection with a bonded project shall be paid, compromised, defended, prosecuted or appealed. Surety's decision shall be final and binding upon the Indemnitors; and

4.2   Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to, expenses for investigative, accounting, engineering and legal services; and

4.3   Surety shall have the foregoing rights and the right to be fully indemnified therefore, irrespective of the fact that any Principal and/or Indemnitor may have assumed, or offered to assume, the defense of Surety upon any such claim; and

4.4   As to any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and/or expenses paid or incurred, declared to be true and correct by an employee or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitors; and

4.5   Surety shall have the right to reimbursement of its expenses and attorneys' fees, whether provided by in-house or outside counsel, incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and reasonable attorneys' fees incurred in such suit; and

4.6   Surety shall have at all times the right but not the obligation to retain counsel of its choice to defend itself from any claim, lien, levy, liability, suit or judgment on any Bond or against any collateral security, contract funds, trust funds or liens held by Surety or an Obligee on any bonded project, including retainages, or to prosecute an action to preserve the Surety's rights with respect to collateral security, contract funds, trust funds or liens held by the Surety or an Obligee on any bonded project, including retainages. The cost of retaining such counsel shall be included within the Indemnitors' obligation to indemnify, exonerate and hold Surety harmless.

5. COLLATERAL DEMAND. Immediately upon demand, Indemnitors agree to deposit with Surety, as collateral security, (the "Collateral Demand") funds or other collateral of such kind and amount satisfactory to the Surety, equal to (1) the liability of the Surety, if established: (2) any indebtedness, liability, claim asserted, expense, suit or judgment under any Bond (3) the reserve established by the Surety, and any increases thereof; or (4) the amount established by the Surety, in its sole discretion, that represents the exposure for or from any claim asserted against any Bond, whether or not a reserve has been established, for which the Indemnitors may be obligated to indemnify the Surety under the terms of this Agreement. Such collateral can be required in addition to any collateral security previously provided or if previously provided collateral has diminished in value or is at risk or is insufficient as collateral security on such Bond, as determined in Surety's sole discretion. Such sum and other money and property which shall have been or shall thereafter be pledged as collateral security on any such Bond shall be available, at the discretion of Surety, as collateral security on all Bonds coming within the scope of this Agreement and/or for any other indebtedness of Indemnitors or Principal to Surety. If Indemnitors shall fail, neglect or refuse to deposit with Surety the collateral demanded by Surety, the Indemnitors agree that their failure to provide collateral as demanded by Surety shall constitute irreparable harm to Surety for which it has no adequate remedy at law, and Surety may seek a mandatory injunction to compel the deposit of such collateral, a pretrial writ of attachment and/or any other remedy at law or in equity that Surety may have. Surety shall have the right to retain such collateral and/or to perfect a lien thereon until Surety has received

Initials _____ _____ _____ _____ _____ _____ _____ _____ _____   2
CN0081420

Butch Thompson Enterprises, Inc.

evidence satisfactory to Surety of Surety's complete discharge and exoneration from any claim or potential claim under all Bonds and until Surety has been fully reimbursed for any and all liability incurred and/or for claims, demands, damages, costs, loss, expense and attorneys' fees at such time, and for the duration that the Surety may require, whether or not the Surety shall have made any payment therefore and whether or not the collateral demand may be in addition to other collateral security previously provided.

6. FUNDS IN TRUST FOR SURETY. Indemnitors and their respective successors, assigns, executors and administrators represent and agree that, in connection with the performance of a contract or agreement, the entire contract price or consideration to be received by the Principal shall be dedicated to the satisfaction of the conditions of the contract in question. All funds paid, due or to become due, under any contract with which the Surety shall have issued a Bond, shall be impressed with a trust in favor of laborers, materialmen, suppliers, subcontractors and Surety. Indemnitors shall use such money and other proceeds for the purposes of performing the Bonded Obligations and for discharging the obligations under the Bond and under this Agreement, and for no other purpose until the liability of the Surety under the Bond is completely exonerated. Any breach of this provision shall constitute a breach of the fiduciary obligations of Principal and/or Indemnitors as well as a misrepresentation of a material fact upon which Surety is relying when issuing any Bond(s) on behalf of any Indemnitor or Principal.

7. DEFAULT. Indemnitors shall be in default hereunder upon the occurrence of any of the following:

7.1     Any default and/or breach in the performance of an Obligation by any Principal or any declaration by any obligee of an Obligation that any Principal is in default and/or in breach (or the equivalent) thereunder;

7.2     Any breach of this Agreement by any Principal or Indemnitor;

7.3     Any failure by any Principal to notify the Surety, in writing, within five (5) calendar days of such Principal's receipt of a claim, cure, show cause other notice from any obligee that any Principal has defaulted or has failed or refused to perform any Contract obligation or must cure its performance or in any manner show cause as to why any Principal should not be terminated by the obligee for default;

7.4     Any failure by any Principal to notify the Surety, in writing, within ten (10) calendar days, of any increase or increases in the dollar amount or value of any Bonded Contract, by modification, change order, directive, or series of modifications, change orders or directives, or otherwise, which increase the dollar amount, value or contract price of such Bonded Contract by more than twenty-five percent (25%);

7.5     The failure of any Principal to pay for labor, materials ordered for or used in connection with any Bonded contract, bills or other indebtedness in connection with the performance of any contract with respect to which a Bond has been executed by Surety and/or the failure of any Principal and/or Indemnitor to pay or compromise any claim that a person or entity was not paid for such labor, materials, bills or other indebtedness;

7.6     The diversion or non-use by any Principal of loan funds, equity funds or materials intended by the lender, equity contributor or supplier of such funds or materials to be used and which could be used to perform or discharge a specific Obligation in connection with the performance of any contract with respect to which a Bond has been executed by Surety;

7.7     The voluntary or involuntary cessation or suspension of work, abandonment, forfeiture, refusal or inability to perform the terms or any provision of any contract required to be performed by any Principal in connection with the performance of any contract with respect to which a Bond has been executed by Surety, or to meet or maintain any schedule approved by any obligee;

7.8     Insolvency, assignment for the benefit of creditors and/or voluntary or involuntary filing of any insolvency or bankruptcy proceedings by or against any Principal, any Indemnitor and/or any Guarantor;

7.9     If Principal, Indemnitor or any Guarantor is an individual, the death, adjudication of mental incompetence, felony conviction, imprisonment or disappearance of any Principal, any Indemnitor and/or any Guarantor;

7.10    The failure of any Principal, any Indemnitor and/or any Guarantor to promptly furnish accurate, complete and up-to-date financial statements and/or financial information upon request of Surety or the furnishing of a financial statement by any Principal, any Indemnitor and/or any Guarantor which contains any misstatement or misrepresentation;

7.11    The submission to the Surety or the Surety's agent by any Principal or Indemnitor of any information used by the Surety in the process of underwriting any Bond which is determined by the Surety, at any time, to be or to have been, materially false, incomplete or misleading;

7.12    Any pledge or assignment by the Principal of any contract balance or contract receivable from a Bonded Contract to a third party, including a lender or factor, without the prior express written authority of the Surety;

7.13    Any material adverse change in the financial condition of any Principal, any Indemnitor and/or any Guarantor or the failure to comply with the underwriting requirements and/or contractor conditions of the Surety;

7.14    The filing of any suit or the commencement of any action or proceeding by a creditor or obligee against any Principal, any Indemnitor and/or any Guarantor in which Surety has been joined as a party or involves circumstances which are the basis of any claim made against Surety or any Bond;

7.15    Any suspension, revocation or other material adverse change in the status of any license of any Principal with any applicable licensing board or agency;

Initials _____ _____ _____ _____ _____ _____ _____ _____     3
CN0081420

Butch Thompson Enterprises, Inc.

7.16   Any material change in the character, identity, control, composition, beneficial ownership or legal status or existence of any entity which shall be a Principal or Indemnitor, without Surety's consent, it being understood that a change in ten percent (10%) or more of the ownership or controlling interests in any such entity shall be deemed a material change;

7.17   Any proceeding which deprives any Principal of the use or interferes with any Principal's use of any supplies, tools, plant, equipment, machinery or materials required for the performance of any contract with respect to which a Bond has been executed by Surety; and/or

7.18   The failure to pay any premium and/or renewal premium on any Bond.

8. REMEDIES UPON DEFAULT. In the event of any default as described in Section 7 above, in addition to any other remedies Surety may have, Principals and Indemnitors hereby authorize and empower Surety to, in its sole and absolute discretion and to the extent it deems appropriate, proceed with any and/or all of the following:

8.1   To assert, pursue, prosecute, compromise or settle in whole or in part at the Indemnitors' expense any all of the rights, actions, causes of action, claims and demands assigned herein in Section 9;

8.2   To make or to guarantee advances or loans without any obligation or responsibility as to the application thereof, it being expressly understood and agreed that the amount of all such advances and/or loans shall be conclusively presumed to be a loss hereunder for which Principals and/or Indemnitors are liable irrespective of the prospects for repayment thereof or the security therefor;

8.3   To take possession of all or any part of the work to be performed pursuant to any or all Obligations and/or Bonds and, at the expense of Principals and Indemnitors, to complete the performance required by the Obligee or to cause the same to be completed or to consent to the completion thereof, and to take any other action which Surety may deem appropriate in connection therewith;

8.4   To take possession of all Principals' and/or all Indemnitors' equipment, materials, supplies, books and records at the site of the work or elsewhere, and to utilize the same for completion of any Obligation or for any purpose which Surety deems appropriate or necessary;

8.5   To have disbursed to Surety, in the name and stead of and as irrevocable attorney-in-fact of Principal and/or Indemnitors any and all construction loan proceeds allocated toward the payment of the costs of construction of any Obligation. If the subject work is being performed on real property owned or leased by Principal or any Indemnitor, then Surety shall also have the right to take possession of said real property. Surety's rights hereunder may be exercised either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court;

8.6   In the event the Obligation, or any portion thereof, relates to the performance of a subdivision improvement agreement between Principal and a public entity under which one or more Bonds have been executed and/or delivered as improvement security, Surety shall receive as collateral security and be authorized to act as attorney-in-fact with respect to the sale, lease or transfer of any and all real property which is the subject of the subdivision improvement agreement then owned by any Principal and/or Indemnitor;

8.7   To file suit to enforce the provisions of this Agreement;

8.8   To apply, as a matter of right and without notice to any Principal or Indemnitor, to any court having jurisdiction to appoint a receiver or receivers of the subject work and/or real property, as applicable, and Principals and Indemnitors hereby irrevocably consent to such appointment and waive notice of any application therefor;

8.9   To exercise any and all rights and remedies of a secured party under the Uniform Commercial Code, including the right to require the Indemnitors to assemble collateral and make it available to Surety at a place reasonably convenient to Surety;

8.10   To instruct any obligee to pay any and/or all job funds directly to the Surety even if with respect to a Bond with respect to which no Principal has been terminated or defaulted;

8.11   To enforce the obligation of an account debtor or other person obligated on collateral, and exercise the rights of any Indemnitor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to such Indemnitor, and to notify the account debtors or other person(s) obligated on collateral that payments are to be made directly to Surety. The Indemnitors shall not compromise, discharge, extend time for payment or otherwise grant any indulgence or allowance with respect to any account without the prior written consent of Surety;

8.12   To, upon ten (10) calendar day's prior written notice to the Indemnitors, which the Indemnitors hereby acknowledge to be sufficient, commercially reasonable and proper, sell, lease, or otherwise dispose of any or all of the collateral at any time and from time to time at public or private sale, with or without advertisement thereof, and apply the proceeds of any such sale first to Surety's expenses in preparing the collateral for sale (including reasonable attorney's fees); second to the complete satisfaction of all Obligations and/or liabilities of Principals to any Obligee or claimant and/or the liabilities of the Indemnitors to Surety, including the right to hold reserves; and third, as permitted by the Uniform Commercial Code. The Indemnitors grant a royalty-free license to Surety and any person or entity to which Surety sells, leases or otherwise disposes of said asset(s), for all patents, service marks, trademarks, tradenames, copyrights, computer programs and other intellectual property and proprietary rights, sufficient to permit Surety to exercise all rights granted to Surety under this Section;

8.13   The Indemnitors waive the benefit of any marshalling doctrine with respect to Surety's exercise of rights hereunder; and

Initials _____ _____ _____ _____ _____ _____ _____ _____ _____ _____   4
CN0081420

Butch Thompson Enterprises, Inc.

8.14    The remedies specified above shall be in addition to any other remedies conferred upon Surety by this Agreement, by law or otherwise. Surety shall have the right to enforce one or more remedies conferred upon Surety, successively or concurrently, and the exercise of any one remedy shall not preclude the exercise of any other.

9. ASSIGNMENT. To secure the obligations of Principal and Indemnitor hereunder and any other indebtedness and liabilities of any Principal and/or any Indemnitor to Surety, all Principals and Indemnitors hereby assign, transfer, pledge and convey to Surety, effective immediately upon execution of this Agreement but only to be acted upon by Surety in the event that there shall be an event of default hereunder, all rights in any Bonded contract, Obligation, and/or performance, including, without limitation, all right, title and interest in and to:

9.1    Any and all contracts or subcontracts let in connection therewith and any contractors' or subcontractors' surety bonds;

9.2    Any and all machinery, plant, equipment, tools and/or materials which shall be upon the site or sites of the work or project(s) in connection with the performance of any contract with respect to which a Bond has been executed by Surety or elsewhere for the purposes of the performance of the contract, including all material ordered therefor;

9.3    Any and all sums due or which may become due upon partial or full performance of the contract with respect to which a Bond has been executed by Surety, and all sums due or to become due on all other contracts, covenants and agreements, whether bonded or unbonded, in which any Principal and/or any Indemnitor has any interest, together with any notes, accounts receivable or chose in action related thereto;

9.4    Those rights and interests in any insurance policies applicable in connection with the performance of any contract with respect to which a Bond has been executed by Surety;

9.5    All right, title and interest, or use of any license, patent, trademark or copyright held by Principal or Indemnitors in connection with or relating to the work required in the performance of any Bonded Contract;

9.6    Any and all tax refunds and claims for tax refunds; and/or

9.7    Any and all undisbursed loan funds, deposits or interest reserve accounts to which any Principal and/or any Indemnitor may be entitled and any and all collateral for any undertakings given by any Principal, any Indemnitor or Guarantor in connection with the performance of any contract with respect to which a Bond has been executed by Surety.

10. WAIVERS. All Principals and/or Indemnitors hereby waive and/or agree not to assert:

10.1    Any defense that this Agreement was executed subsequent to the date of any Bond, it being expressly understood and agreed that the Indemnitors hereby admit and covenant that all Bonds were executed by Surety pursuant to the request of the Indemnitors and in reliance on the promise of the Indemnitors to execute and to perform this Agreement;

10.2    Any right to claim that any property, including homesteads, is exempt from levy, execution, sale or other legal process under the laws of any country, state, territory or possession in any action brought by Surety under this Agreement;

10.3    Any right to require Surety to proceed against any Principal, Indemnitor and/or any other person, firm or entity, or to proceed against or exhaust any security held by Surety at any time, or to pursue any other remedy in Surety's power. Without in any way limiting the generality of the foregoing, if property of any Indemnitor is hypothecated with property of any Principal or of any other party, Indemnitors hereby waive any right to have the property of any Principal or of such other party first applied towards the discharge of the obligations hereunder;

10.4    The defense of the Statute of Limitations in any action hereunder or for the collection of any claim or the performance of any obligation indemnified hereby;

10.5    Any defense based upon an election of remedies by Surety, irrespective of whether any Principal or Indemnitor alleges that Surety's decision otherwise impairs the subrogation rights of any Principal or Indemnitor or the right of any Indemnitor to proceed against any Principal or to realize upon any security (whether such destruction or impairment of subrogation results from the operation of anti-deficiency statutes or otherwise);

10.6    Any defense based upon any legal disability or other defense of any Principal, any other Indemnitor or other person, or by reason of the cessation or limitation of the liability of any Principal from any cause other than full payment of all sums payable under this Agreement;

10.7    Any defense based upon any lack of authority of the officers, directors, partners or agents acting or purporting to act on behalf of any Principal, Indemnitor and/or any principal of any Principal and/or any Indemnitor, or any defect in the formation of any Principal, Indemnitor and/or any principal of any Principal and/or Indemnitors;

10.8    Any defense based upon Surety's failure to disclose to any Indemnitor any information concerning any Principal's financial condition or any other circumstances bearing on any Principal's or Indemnitor's ability to pay any sums payable under this Agreement;

10.9    Any defense based upon any statute or rule of law which provides that the obligations of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal;

10.10    Any defense based upon Surety's election, in any proceeding instituted under the Federal Bankruptcy Code, of the application of

Initials _____ _____ _____ _____ _____ _____ _____ _____ _____    5
CN008142

Butch Thompson Enterprises, Inc.

Section 1111 (b)(2) of the Federal Bankruptcy Code or any successor statute;

10.11   Any right of subrogation and/or any right to enforce any remedy which Surety may have against any Principal and/or Indemnitor and/or any right to participate in, or benefit from, any security for the obligations hereunder held by Surety;

10.12   Any claim that actions taken in Good Faith by the Surety that it was liable or potentially liable for any payment made, whether or not such liability in fact exits or existed;

10.13   Any claim for diminution in value, loss, damage or destruction to collateral held by Surety;

10.14   Any defense based upon the Entire Controversy Doctrine or mandatory joinder rule; and/or

10.15   THE RIGHT TO A JURY TRIAL.

11. AUTHORIZATION TO SURETY. All Principals and/or Indemnitors hereby authorize and expressly empower Surety, in the sole and absolute discretion of Surety, to do the following:

11.1   From time to time to make or to consent to any change in or to issue any substitute for or renewal of, any Bond or any Obligation referred to in any Bond, and this Agreement shall apply to such substitute or changed Bond, Obligation or renewals thereof. Any such changes, substitutions or renewals may be made without giving notice to Indemnitors or obtaining Indemnitors' consent and without affecting the liability of any Indemnitor hereunder;

11.2   If any Bond is given in any action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of execution of the Bond as the authorized representative of such party until Surety shall have been fully discharged from liability under the Bond;

11.3   To take such steps as Surety may deem necessary or proper to obtain release from liability under any Bond; and/or

11.4   To enter any Principal's and/or any Indemnitor's place of business or the place of performance of any Bonded obligation during customary business hours or, in case of emergency, at any time for the purpose of inspecting, reviewing and/or making copies of the books, records, accounts, job records, contracts and/or other documents deemed by Surety, in its sole discretion, to relate to performance of any Obligation or to performance of any duty of Principal or Indemnitor hereunder.

11.5   To execute a mortgage or mortgages, in the names of the property owners, on any/all real estate owned by them and to record same.

12. LIABILITY UNAFFECTED. The liability of Indemnitors hereunder shall not be affected by the failure of any party to sign any Bond or by any claims that other indemnity or security was to have been obtained nor by the release of any indemnity or Indemnitor, nor by the release, substitution or subordination of any collateral that may have been obtained. If any party signing this Agreement is not bound for any reason, all other signatories hereto shall be bound for the full amount of liability hereunder.

13. POWER OF ATTORNEY. All Principals and/or Indemnitors each hereby irrevocably nominate, constitute, appoint and designate Surety, or the designee of Surety, as their attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by any Principal or Indemnitor under this Agreement, and to make, execute and deliver in the name of any Principal and/or any Indemnitor any and all additional contracts, instruments, assignments, mortgages, releases, checks, drafts, notes, certificate of deposits, letters of credit, deeds, bills of sale, authorizations, documents or papers (including, but not limited to, those related to the disbursement of loan proceeds, the commencement of proceedings and/or the execution of instruments referred to above; the endorsement of checks or other instruments payable to any Principal or any Indemnitor representing payment of Obligation monies and/or execution of any insurance claims, requisitions and/or warranties) deemed necessary and/or proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein and/or the full protection intended to be given to Surety under all other provisions of this Agreement. It is expressly understood and agreed that the foregoing power of attorney is coupled with the interest of Surety in receiving the indemnification/exoneration of/from Indemnitors hereunder. Indemnitors hereby ratify and affirm all acts and actions which shall be taken and done by Surety or its designee as such attorney-in-fact and agree to protect, indemnify and hold harmless Surety for all such acts and actions.

14. TERMINATION OF INDEMNITOR LIABILITY. Except with respect to any Bond(s) which is/are specifically within the scope of another indemnity agreement, this Agreement is a continuing obligation of Indemnitors unless terminated as to future Bonds by written notice to Surety as hereinafter provided; and such termination by any Indemnitor shall in no way affect the obligation or liability of any other Indemnitor who has not given such notice, which shall continue until Surety is exonerated from liability under all Bonds and Surety has recovered all amounts owing from Indemnitors hereunder. The liability of Indemnitors hereunder as to future Bonds shall not terminate by reason of the failure of the Surety to disclose facts known about any Principal, even though such facts materially increase the risk beyond that which any Indemnitor might intend to assume. The Indemnitors hereby waive notice of any such facts, whether or not the Surety may have reason to believe that such facts are unknown to the Indemnitor or whether the Surety may have had a reasonable opportunity to communicate such facts to the Indemnitor. In order to terminate liability as to any future Bond, an Indemnitor must:

14.1   Give to Surety written notice of such termination by certified mail, return receipt requested, addressed to Surety at the Surety's Address;

14.2   State in such notice the effective date, which date shall be not less than 30 days following receipt of such notice by the Surety, of

Initials _____ _____ _____ _____ _____ _____ _____ _____   6
CN0081420

Butch Thompson Enterprises, Inc.

the termination of the liability of such Indemnitor for any future Bond; and

14.3 Following the effective date of such termination, such Indemnitor shall continue to be liable hereunder for: (i) any Bond executed or authorized and/or any Obligation entered into prior to such effective date of termination, and all renewals, substitutions, extensions and/or modifications thereof; (ii) any Bond executed pursuant to a bid, proposal Bond or surety consent executed or authorized prior to such effective date of termination, and any renewals, substitutions, extensions and modifications thereof; and (iii) any maintenance or guarantee Bond executed incidental to any other Bond executed prior to such date of termination, and any renewals, substitutions and extensions thereof.

## 15. INDEMNITOR REPRESENTATIONS AND ADDITIONAL CONSIDERATIONS

The Indemnitor represents, warrants and guarantees, unconditionally and with the intention that the Surety shall detrimentally rely upon such representations without investigation or verification, as follows:

15.1 The Indemnitor has read this Agreement carefully, has had an opportunity to consult with an attorney regarding this Agreement, and the Indemnitor understands this Agreement and that the Indemnitor is bound to the terms of this Agreement;

15.2 If a natural person, the Indemnitor is in all ways competent and qualified to enter into this Agreement and does so willingly and without duress, and if the Indemnitor is a legal entity other than a natural person, the person acting on behalf of such Indemnitor is in all ways authorized, qualified and competent to bind the Indemnitor to the terms of this Agreement, and there is no document, or form or formality of expression other than what has been given or provided to the Surety in connection with the execution of this Agreement that is required in order for the Indemnitor to be bound to this Agreement.

15.3 This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement, and is made or entered into as a result of negotiations, in a free and active market in which the Indemnitor has and has had alternatives.

15.4 The Indemnitor intends that the Surety shall rely upon the Indemnitor's representations and undertakings as expressed in this Agreement and upon the Indemnitor's credit, including all of the Indemnitor's assets, and that the Surety shall undertake legal or financial risk or forego rights or remedies that might otherwise be available to the Surety based upon such reliance and such reliance is reasonable; and

15.5 The Indemnitor has a substantial, material and beneficial interest in obtaining one or more Bonds on behalf of the Principal, or in the Surety's forbearance from cancelling one or more Bonds, or in the performance and fulfillment of the obligations secured or to be secured by one or more Bonds issued or to be issued, on behalf of the Principal.

## 16. GENERAL PROVISIONS.

16.1 The obligations of the Indemnitors hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the undersigned as causes of action may accrue hereunder. Indemnitors hereby expressly waive the benefit of any statute or rule of law which gives any Indemnitor the right to require Surety to first proceed against Principal or other Indemnitors or which exonerates any Indemnitor from any liability if Surety fails to first proceed against any Principal or any Indemnitor.

16.2 All Principals and/or Indemnitors shall, upon request of Surety, procure the discharge and exoneration of Surety under any Bond and from and against any and all liability by reason thereof.

16.3 Indemnitors hereby waive notice of any default, the making of a claim against Surety or the loaning of funds to any Principal by Surety.

16.4 Principals and/or Indemnitors hereby agree to give Surety prompt notice of any facts which might give rise to any claims or suits against Surety upon any Bond and to cooperate fully with surety in the investigation of and defense concerning any such claims or suits.

16.5 Surety shall have the right, in its full and absolute discretion, to decline the execution of any Bond, including a final Bond when it has furnished a Bid Bond and/or consent to issuance of a Bond. Indemnitors waive any and all rights against Surety, if any, pertaining thereto.

16.6 Surety may consent to any changes or alterations in any Obligation, without affecting the liability hereunder of any Indemnitor.

16.7 Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration.

16.8 The Principal and Indemnitor shall furnish to the Surety such information as the Surety may request from time to time concerning the financial condition of the Principal or Indemnitor, the status of work under any Contract, the condition or status of the performance of any Contract, the payment of any obligations incurred in connection with any Contract, the status of claims or entitlements of the Principal in connection with any Contract, or in connection with any subcontract, supply or service accounts the Principal may have with third parties in connection with any Contract. Until Surety shall have been furnished with conclusive evidence of the discharge and exoneration of Surety without loss from all Bonds, and until Surety shall have been otherwise fully indemnified as hereunder provided, Surety shall have the right of free access to the books, records, credit reports and accounts of all Principals and/or Indemnitors for the purpose of examining and copying them. Principals and Indemnitors each hereby authorize third parties, including but not limited to, depositories of funds of any Principal and any Indemnitor, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information which it now or hereafter may acquire concerning the Principal and/or Indemnitor to any other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms or entities as Surety may deem appropriate.

Initials _____ _____ _____ _____ _____ _____ _____ _____ _____ _____   7
CN0081420

Butch Thompson Enterprises, Inc.

16.9     If the execution of this Agreement by any Indemnitor is found to be defective or invalid for any reason, such defect or invalidity shall not affect the validity of this Agreement with respect to any other party. The invalidity of any provision of this Agreement by reason of the laws of any state or by any reason shall not affect the validity of any other provision of this Agreement.

16.10    Indemnitors hereby grant to Surety a security interest in the properties, assets and rights of Indemnitors as described in Paragraph 9 hereof, wherever the same shall be located, and whether now owned or hereafter acquired, and all products and proceeds thereof (the "Collateral). This Agreement shall for all purposes constitute a security agreement for the benefit of the Surety in accordance with the Uniform Commercial Code and all similar statutes. Surety shall file or record this Agreement, financing statements, continuation statements and amendments and/or any other document executed by any Principal or Indemnitor individually or jointly, in connection with the application, issuance or execution of any Bond coming within the scope of this Agreement, including, without limitation, any notice of the prior interest in assignment of the same under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction or agency and describe the Collateral in particular or as all assets of any Indemnitor, or words of similar effect and which contain any other information required by the Uniform Commercial Code for the sufficiency or filing office acceptance. The filing or recording of any such document shall be solely at the option of Surety. The failure of such filing shall not release or discharge any of the obligations of any Indemnitor under this Agreement. Indemnitors shall execute and deliver such additional documents as Surety may deem necessary or desirable to accomplish any such filing or recording. It is expressly agreed that the provisions of Section 13 hereof apply to this Subsection.

16.11    This Agreement may not be changed or modified orally, but only by an instrument in writing, signed by all Indemnitors and consented to by Surety, in writing. Notwithstanding the foregoing: (a) the addition to this Agreement of any Indemnitor (at any time), on the same or different terms, may be accomplished by written amendment executed by such additional Indemnitor only; and (b) the Surety's agreement to exclude any specified property on behalf of any of the Indemnitor(s) (at any time) may be executed by a written amendment to that effect signed by only the Indemnitor(s) whose specified property is excluded and consented to by the Surety in writing.

16.12    Surety may maintain repeated actions to enforce the terms of this Agreement as causes of action accrue or as breaches of the same occur without any former action operating as a bar to any subsequent action.

16.13    Wherever used in this Agreement, the plural shall include the singular, the singular shall include the plural and the neuter shall include both genders as the circumstances require.

16.14    It is understood and affirmed that Bonds are a credit relationship, and Principals and/or Indemnitors authorize and empower Surety, or any of Surety's authorized agents, to gather such credit information as Surety considers necessary and appropriate for purposes of evaluating whether such credit should be granted or continued. Indemnitors waive their rights in connection therewith.

16.15    Indemnitors have established adequate means of obtaining from sources other than Surety, on a continuing basis, financial and other information pertaining to Principal's financial condition and the status of the Principal's performance of the Obligations with respect to each Bond covered hereby, and Indemnitors agree to keep adequately informed from such means of any facts, events or circumstances which might in any way affect any Indemnitor's risks hereunder and Surety has made no representations with respect to such matters.

16.16    By exercising or failing to exercise any of its rights, options or elections hereunder, Surety shall not be deemed to have waived any breach or default on the part of any Indemnitor or to have released any Indemnitor from any of their obligations hereunder, unless such waiver or release is in writing and is signed by an authorized representative of Surety. In addition, the waiver by Surety of any breach or default hereunder shall not be deemed to constitute a waiver of any succeeding or preexisting breach or default.

16.17    The obligations of Principals and/or Indemnitors hereunder shall be in addition to and shall not limit or in any way affect the obligations of Principal and/or Indemnitor under any other existing or future indemnities or guarantees unless said other indemnities or guarantees are expressly modified or revoked in writing. In the event any other indemnification agreement is executed in favor of Surety by any Indemnitor, Surety still reserves any and all rights hereunder. Such subsequent execution shall not operate as an accord and satisfaction or otherwise change or alter the obligations of any Indemnitor hereunder.

16.18    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original hereof and all of which, taken together, shall constitute but one and the same instrument.

16.19    Any indebtedness of any Indemnitor now or hereafter held by any other Indemnitor is hereby subordinated to the indebtedness of Indemnitors to Surety, and such indebtedness of any Indemnitor to any other Indemnitor shall, if Surety so requests, be collected, enforced and received by the Indemnitor as trustee for Surety and be paid over to Surety on account of the indebtedness of any Indemnitor to Surety, but without reducing or limiting in any manner the liability of Indemnitors under the provisions of this Agreement.

16.20    The Principals and Indemnitors hereby consent to enforcement of this Agreement and submit themselves to personal jurisdiction in any and all jurisdictions in which (a) the Surety may sustain or pay any loss for which any Principal or Indemnitor may be liable hereunder; (b) the Surety may be sued or subject to suit or arbitration as a consequence of having issued any Bond on behalf of the Principal; (c) any construction project may be located which is the subject of any Bonded Contract; and/or (d) any assets of any Principal or Indemnitor may be located.

16.21    If any proceeding is brought against the Surety in which the Surety desires to join any one or more of the Principals and Indemnitors by reason of their undertakings in this Agreement, each and all of the Principals and Indemnitors agree that he, she, it or they will, upon written notice of the Surety to do so, voluntarily appear in such proceeding and accept service of process and other papers, either personally or by an attorney of such Principal or Indemnitor's choice.

16.22    This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

Initials _____ _____ _____ _____ _____ _____ _____ _____ _____ _____     8
CN0081420

Butch Thompson Enterprises, Inc.

IN WITNESS WHEREOF, each Indemnitor, intending to be legally bound hereby, has executed this Agreement this __4th__ day of _____May_____, 20_21_.

<u>**BUSINESS ENTITY INDEMNITORS**</u>
**(Includes: Corporations, LLCs, Partnerships, Trusts, Etc.)**

---

Company Legal Name _____Butch Thompson Enterprises, Inc._____ (Seal)
*(Exactly as Filed with the Secretary of State)*

Full Street Address _____2933 Cherokee Street, Suite 200, Kennesaw, GA 30144_____ ____4945____
Federal Tax ID Number

By _____[Signature]_____
*(Signature)*

Name of signer _____Judson C. Thompson_____ Title of signer _____President_____
*(Print or Type)*                                                        *(Print or Type)*

State Of ____Georgia____, ____Cobb____ County

On this __4TH__ day of __MAY__, __2021__, before me, a Notary Public duly commissioned and sworn, personally appeared ____Judson C. Thompson____, who was proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this General Agreement of Indemnity, and who acknowledged to me that he/she signed same in his/her authorized capacity on behalf of the business entity, and that by his/her signature, the business entity upon whose behalf he/she acted, executed the General Agreement of Indemnity.

In Witness whereof, I hereunto set my hand and official seal.

My commission expires _____ (Seal)    _____[Signature]_____
Notary Public Signature

---

Company Legal Name _____Conrad Corporation, Inc._____ (Seal)
*(Exactly as Filed with the Secretary of State)*

Full Street Address _____553 East New Salem Common, Marietta, GA 30064_____ ____2107____
Federal Tax ID Number

By _____[Signature]_____
*(Signature)*

Name of signer _____Judson C. Thompson_____ Title of signer _____President_____
*(Print or Type)*                                                        *(Print or Type)*

State Of ____Georgia____, ____Cobb____ County

On this __4TH__ day of __MAY__, __2021__, before me, a Notary Public duly commissioned and sworn, personally appeared ____Judson C. Thompson____, who was proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this General Agreement of Indemnity, and who acknowledged to me that he/she signed same in his/her authorized capacity on behalf of the business entity, and that by his/her signature, the business entity upon whose behalf he/she acted, executed the General Agreement of Indemnity.

In Witness whereof, I hereunto set my hand and official seal.

My commission expires _____ (Seal)    _____[Signature]_____
Notary Public Signature

9

## INDIVIDUAL INDEMNITORS

Name: Judson C. Thompson         Signature: [signed]
Full Street Address: 553 East New Salem Common, Marietta, GA 30064
Social Security Number: XXX-XX-5104
State Of: Georgia, Cobb County

On this 4TH day of MAY, 2021, before me, a Notary Public duly commissioned and sworn, personally appeared Judson C. Thompson, who was proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this General Agreement of Indemnity, and who acknowledged to me that he/she executed same on his/her own behalf as an individual.

In Witness whereof, I hereunto set my hand and official seal.

My commission expires: [notary seal: HANNAH T. THOMPSON, MY COMMISSION EXPIRES JUNE 10, 2024, NOTARY PUBLIC, COBB COUNTY, GEORGIA] (Seal)   [signed] HT

---

Name: Carolyn S. Thompson         Signature: [signed] Carolyn S. Th[ompson]
Full Street Address: 553 East New Salem Common, Marietta, GA 30064
Social Security Number: XXX-XX-5397
State Of: Georgia, Cobb County

On this 4TH day of MAY, 2021, before me, a Notary Public duly commissioned and sworn, personally appeared Carolyn S. Thompson, who was proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this General Agreement of Indemnity, and who acknowledged to me that he/she executed same on his/her own behalf as an individual.

In Witness whereof, I hereunto set my hand and official seal.

My commission expires: [notary seal: HANNAH T. THOMPSON, MY COMMISSION EXPIRES JUNE 10, 2024, NOTARY PUBLIC, COBB COUNTY, GEORGIA] (Seal)   [signed] HT

---

Name: _____         Signature: _____
Full Street Address: _____
Social Security Number: _____
State Of: _____, _____ County

On this ___ day of _____, ____, before me, a Notary Public duly commissioned and sworn, personally appeared _____, who was proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this General Agreement of Indemnity, and who acknowledged to me that he/she executed same on his/her own behalf as an individual.

In Witness whereof, I hereunto set my hand and official seal.

My commission expires _____ (Seal)   _____

---

Name: _____         Signature: _____
Full Street Address: _____
Social Security Number: _____
State Of: _____, _____ County

On this ___ day of _____, ____, before me, a Notary Public duly commissioned and sworn, personally appeared _____, who was proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this General Agreement of Indemnity, and who acknowledged to me that he/she executed same on his/her own behalf as an individual.

In Witness whereof, I hereunto set my hand and official seal.

My commission expires _____ (Seal)   _____