

## Miscellaneous Medical Facilities

## Professional and General Liability

## Insurance Policy Declarations

**Allied World Surplus Lines Insurance Company**          **Policy Number:**          0308-2107

**THIS POLICY PROVIDES CLAIMS MADE AND REPORTED AND OCCURRENCE COVERAGE BASED ON THE APPLICABLE INSURING AGREEMENT, AND CONTAINS MULTIPLE INSURING AGREEMENTS WHICH MAY BE SUBJECT TO SEPARATE LIMITS OF LIABILITY.**

**THE PAYMENT OF DEFENSE EXPENSES WILL NOT REDUCE OR EXHAUST THE LIMITS OF LIABILITY UNDER THIS POLICY, WITH THE EXCEPTION OF THE COVERAGE AVAILABLE UNDER SECTION I.D. OF THIS POLICY, PURSUANT TO WHICH DEFENSE EXPENSES SHALL REDUCE AND EXHAUST THE APPLICABLE LIMITS OF LIABILITY.**

**DEFENSE EXPENSES WILL REDUCE AND EXHAUST THE MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL CLAIMS UNDER ALL INSURING AGREEMENTS.**

**DEFENSE EXPENSES ARE APPLIED AGAINST THE DEDUCTIBLE.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

---

**Item 1.  Name and Mailing Address of Named Insured:**

Georgia Cryoservices, Inc.
1100 Emmett Street
Augusta, GA 30904

**Item 2.  Policy Period:**
(a)  Inception Date:     March 9, 2020
(b)  Expiration Date:    March 9, 2021
        **At 12:01AM Standard Time at the Mailing Address shown above**

---

**Item 3.  Limits of Liability:**

| INSURING AGREEMENTS | LIMITS OF LIABILITY |
|---|---|
| (a)  I.A. PROFESSIONAL LIABILITY | $1,000,000 each Claim;<br>$3,000,000 in the Aggregate for all Claims. |
| (b)  I.B. GENERAL LIABILITY | |
|     Bodily Injury and Property Damage | N/A each Claim; |
|     Personal and Advertising Injury | N/A each Claim; |
|     Products Completed Operations Hazard | - N/A - each Claim; |
|     Fire Damage | - N/A - each Claim;<br>- N/A - in the Aggregate for all Claims. |
| (c)  I.C. EMPLOYEE BENEFITS LIABILITY | - N/A - each Claim;<br>- N/A - in the Aggregate for all Claims. |
| (d)  I.D. SEXUAL MISCONDUCT | $1,000,000 each Claim;<br>$1,000,000 in the Aggregate for all Claims. |
| (e)  MAXIMUM AGGREGATE LIMIT OF LIABILITY | $4,000,000 all Claims, all Insuring Agreements. |

**Item 4.  Deductibles:**

| INSURING AGREEMENT | DEDUCTIBLE |
|---|---|
| (a)  I.A. PROFESSIONAL LIABILITY | $250,000 each and every Claim; |
| (b)  I.B. GENERAL LIABILITY | - N/A - each and every Claim; |
| (c)  I.C. EMPLOYEE BENEFITS LIABILITY | - N/A - each and every Claim; |
| (d)  I.D. SEXUAL MISCONDUCT | $250,000 each and every Claim; |

**Item 5.  Retroactive Dates**

| (a)  I. A., PROFESSIONAL LIABILITY: | March 9, 1995 |
|---|---|
| (b)  I. C., EMPLOYEE BENEFITS LIABILITY: | N/A |
| (c)  I. D., SEXUAL MISCONDUCT: | March 9, 1995 |

**Item 6.  Address of Insurer For Notices Under This Policy:**

Claims-related Notices:
Noticeofloss@awac.com

All Other Notices:
1690 New Britain Avenue, Suite 101
Farmington, CT 06032

**Item 7.  Premium:**



**Item 8.  Minimum Earned Premium:**

25% of the Policy Premium set forth above.

**Item 9.  Extended Reporting Period:**

To be determined at the time of election.

**Item 10.  Endorsements Attached at Issuance:**

1. SVC 00010 00 AWSLIC (07/2015) Service Of Suit

2. MMFO 00007 00 (04/2019) Defense Expenses Paid Within The Limit of Liability

3. MMFB 00012 00 (04/19) (04/2019) Delete Insuring Agreement(s)

4. MMFB 00013 00 (04/19) (04/2019) Schedule A - Insured Entity/Entities

5. MMFB 00035 00 (04/19) (04/2019) Limited Coverage for HIPAA/Confidentiality Claims Subject to Sublimit

6. MMFB 00053 00 (04/19) (04/2019) Additional Coverages: Disciplinary Proceedings Lost Earnings and Medical Payments Coverage

7. MMFB 00056 00 (04/19) (04/2019) Specific Additional Insureds - Waiver of Subrog - All Coverages

8. GC Manu- A Coverage Territory

THESE DECLARATIONS, THE POLICY FORM, ANY ENDORSEMENTS AND THE APPLICATION CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE INSURED RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed and attested by its authorized officers.  This Policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.**

SECRETARY

PRESIDENT

AUTHORIZED SIGNATURE

**ENDORSEMENT NO. 1**

**SERVICE OF SUIT**

This Endorsement, effective at 12:01AM on March 9, 2020, forms parts of

    Policy No.      0308-2107
    Issued to       Georgia Cryoservices, Inc.
    Issued by       Allied World Surplus Lines Insurance Company

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon Legal Counsel at 1690 New Britain Avenue, Suite 101, Farmington, CT 06032 and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

NOTHING HEREIN SHALL VARY, ALTER, WAIVE, OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.

_Karen Colom_
_____
                Authorized Representative

**ENDORSEMENT NO. 2**

**DEFENSE EXPENSES PAID WITHIN THE LIMIT OF LIABILITY**

This Endorsement, effective at 12:01 a.m. on March 9, 2020, forms part of

| | |
|---|---|
| Policy No. | 0308-2107 |
| Issued to | Georgia Cryoservices, Inc. |
| Issued by | Allied World Surplus Lines Insurance Company |

In consideration of the premium charged, it is hereby agreed:

1.    The caption shown at the top of the Policy and Declarations is amended to read as follows:

**THIS POLICY PROVIDES BOTH CLAIMS MADE AND REPORTED AND OCCURRENCE COVERAGE BASED ON THE APPLICABLE INSURING AGREEMENT, AND CONTAINS MULTIPLE INSURING AGREEMENTS WHICH MAY BE SUBJECT TO SEPARATE LIMITS OF LIABILITY.**

**THE PAYMENT OF DEFENSE EXPENSES WILL REDUCE AND EXHAUST THE APPLICABLE LIMITS OF LIABILITY UNDER THIS POLICY. DEFENSE EXPENSES ARE APPLIED AGAINST THE DEDUCTIBLE.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

2.    Section I. Insuring Agreements A, B and C are amended as follows:

**A.    CLAIMS MADE PROFESSIONAL LIABILITY**

The **Insurer** will pay on behalf of the **Insured**, **Loss** and **Defense Expenses** in excess of the Deductible stated in Item 4(a) of the Declarations and subject to the Limits of Liability set forth in Item 3(a) of the Declarations, which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging a **Medical Incident**, provided always that:

1.    such **Medical Incident** takes place on or after the **Retroactive Date** stated in Item 5(a) of the Declarations and before the end of the **Policy Period**;

2.    such **Claim** is first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period;

3.    notice of such **Claim** is given to the **Insurer** in accordance with Section IV.B. of this Policy; and

4.    such **Medical Incident** takes place in the **Coverage Territory**.

In addition to the Limits of Liability, the **Insurer** will have the right and duty to defend any such **Claim** brought against the **Insured**, and will do so even if any of the allegations of the **Claim** are groundless or false.

**B.    OCCURRENCE-BASED GENERAL LIABILITY**

The **Insurer** will pay on behalf of the **Insured**, **Loss** and **Defense Expenses** in excess of

"Ex. A - p.5"

the Deductible stated in Item 4(b) of the Declarations and subject to the Limits of Liability set forth in Item 3(b) of the Declarations, which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging:

1.   **Bodily Injury** or **Property Damage**, **Products Completed Operations Hazard** or **Fire Damage** caused by an **Occurrence** that takes in the **Coverage Territory** and place during the **Policy Period**; or

2.   **Personal or Advertising Injury** caused by an act that takes place in the **Coverage Territory** and during the **Policy Period**

provided always that notice of such **Claim** is given to the **Insurer** in accordance with Section IV.B. of this Policy.

In addition to the Limits of Liability, the **Insurer** will have the right and duty to defend any such **Claim** brought against the **Insured**, and will do so even if any of the allegations of the **Claim** are groundless or false.

C.   **CLAIMS MADE EMPLOYEE BENEFITS LIABILITY**

The **Insurer** will pay on behalf of the **Insured**, **Loss** and **Defense Expenses**, in excess of the Deductible stated in Item 4(c) of the Declarations and subject to the Limits of Liability set forth in Item 3(c) of the Declarations, which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging injury to an **Employee**, or any other individual entitled to a benefit under an **Employee Benefit Program**, because of an act, error or omission in the **Insured's Administration** of its **Employee Benefit Program**; provided always that:

1.   such act, error or omission takes place on or after the **Retroactive Date** stated in Item 5(c) of the Declarations and before the end of the **Policy Period**;

2.   such **Claim** is brought by an **Employee** or other individual as described above, and first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period;

3.   notice of such **Claim** is given to the **Insurer** in accordance with Section IV.B. of this Policy; and

4.   such Claim takes place in the **Coverage Territory**.

In addition to the Limits of Liability, the **Insurer** will have the right and duty to defend any such **Claim** brought against the **Insured**, and will do so even if any allegations of the **Claim** are groundless or false.

3.   Section IV. Conditions A. 2. is amended as follows:

2.   The payment of **Defense Expenses** by the **Insurer**, shall reduce and exhaust the applicable Limits of Liability.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT NO. 3**

**DELETE INSURING AGREEMENT(S)**

This Endorsement, effective at 12:01 a.m. on March 9, 2020, forms part of

      Policy No.     0308-2107
      Issued to      Georgia Cryoservices, Inc.
      Issued by     Allied World Surplus Lines Insurance Company

In consideration of the premium charged, it is hereby agreed:

The following Insuring Agreement(s) are deleted in their entirety from the Policy, and no coverage will be provided thereunder:

I.B. General Liability
I.C. Employee Benefits Liability

All references to the Insuring Agreement(s) listed above and the terms and conditions applicable thereto are deleted from the Policy, with the exception of any terms and conditions which are also applicable to any Insuring Agreements which remains in force and effective.

The Policy is deemed amended to effectuate this change.

All other terms, conditions and limitations of this Policy shall remain unchanged.

 

 

_____

Authorized Representative

"Ex. A - p.8"

**ENDORSEMENT NO. 4**

**SCHEDULE A – INSURED ENTITY/ENTITIES**

This Endorsement, effective at 12:01 a.m. on March 9, 2020, forms part of

      Policy No.     0308-2107
      Issued to      Georgia Cryoservices, Inc.
      Issued by     Allied World Surplus Lines Insurance Company


In consideration of the premium charged, it is hereby agreed that the term **Insured Entity** as defined in Section II. Definitions, Paragraph S. of the Policy shall include the entities shown on, and in accordance with the terms of, the attached Schedule A.

Coverage will only be provided for **Medical Incidents, Occurrences**, offenses, acts, errors or omissions or **Sexual Misconduct**, identified in Item 3. of the Declarations, and otherwise covered and which occur on or after the respective Retroactive Date(s), and before the respective Termination Date(s), for each **Insured Entity**, as set forth in the attached Schedule A.


All other terms, conditions and limitations of this Policy shall remain unchanged.


                                 Authorized Representative

| Account Name: Georgia Cryoservices, Inc. | | **Effective Date:** | 3/9/2020 |
|---|---|---|---|
| **Insured Entity** | **Retroactive Date** | **Effective Date** | **Termination Date** |
| Outreach Health Group | 1/24/17 | 3/9/20 | |
| Outreach Health Services, Inc. | 1/24/17 | 3/9/20 | |
| Outreach Holding Group | 1/24/17 | 3/9/20 | |
| Xytex Canada, Inc. | 3/9/95 | 3/9/20 | 9/30/08 |
| Xytex Corporation | 3/9/95 | 3/9/20 | |
| Xytex Cryo International | 3/9/95 | 3/9/20 | |
| Xytex International LTD | 3/9/95 | 3/9/20 | 12/21/09 |
| Xytex Laboratories, Inc. fka Xytex Research | 3/9/95 | 3/9/20 | |
| Xytex Ovations, Ltd. | 3/9/95 | 3/9/20 | 9/30/09 |
| Xytex Properties, LLC | 10/7/16 | 3/9/20 | |
| Xytex Tissue Services, LLC | 1/10/17 | 3/9/20 | |
| Xytex Tissue Storage d/b/a Xytex Cord Blood Storage | 3/9/95 | 3/9/20 | |
| Xytex Tissue Storage, Inc. | 3/9/95 | 3/9/20 | |
| Xytex Ventures, LLC | 10/7/16 | 3/9/20 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Schedule A

"Ex. A - p.10"

**ENDORSEMENT NO. 5**

**LIMITED COVERAGE FOR HIPAA/CONFIDENTIALITY CLAIMS**
**SUBJECT TO SUBLIMIT**

This Endorsement, effective at 12:01 a.m. on  March 9, 2020, forms part of

    Policy No.        0308-2107
    Issued to         Georgia Cryoservices, Inc.
    Issued by         Allied World Surplus Lines Insurance Company

In consideration of the premium charged, it is hereby agreed that:

1.    Notwithstanding Section III. Exclusion E.12. of the Policy, the following additional Exclusion is hereby added to the Policy:

      No coverage will be available under the Policy for **Loss** or **Defense Expenses** from any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Health Insurance Portability and Accountability Act ("HIPAA"), and any amendments or regulations promulgated thereto, or any similar provisions of federal, state or local law.

2.    The above exclusion, and Exclusion III.E.12., will not apply to any **Loss** or **Defense Expenses**, from any otherwise covered **Claim** brought by an individual **Patient**, based upon or arising out of any actual or alleged violation of a **Patient's** right to the confidentiality of his or her medical information by any physician or other medical staff member.  Provided however, that the most the **Insurer** shall pay under this Policy in connection with all such **Claims**, in excess of the Deductible set forth in Item 4(a) of the Declarations as applicable, shall be:

      $25,000,

      which amount shall be part of and not in addition to the Limits of Liability set forth in Item 3(a) of the Declarations as applicable.

3.    In no event shall coverage be available under this Policy for any such **Claim** brought in the form or a class action or seeking certification of a class action or brought by more than one individual **Patient**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
                    Authorized Representative

**ENDORSEMENT NO. 6**

**ADDITIONAL COVERAGES:**
**DISCIPLINARY PROCEEDINGS, LOST EARNINGS AND**
**MEDICAL PAYMENTS COVERAGE**

This Endorsement, effective at 12:01 a.m. on  March 9, 2020, forms part of

Policy No.        0308-2107
Issued to          Georgia Cryoservices, Inc.
Issued by         Allied World Surplus Lines Insurance Company

In consideration of the premium charged, it is understood and agreed as follows:

1.      The following additional coverages shall be added to the Policy:

A.      **DISCIPLINARY PROCEEDINGS COVERAGE**

The **Insurer** will reimburse the **Insured**, **Defense Expenses**, in excess of the Deductible, and subject to the Limit of Liability set forth in Paragraph 4. below, which are incurred in connection with the investigation and defense of a **Disciplinary Proceeding** brought against the **Insured** during the **Policy Period** arising out of a **Medical Incident** which takes place on or after the **Retroactive Date** stated in Item 5(a) of the Declarations and before the end of the **Policy Period**.

The **Insurer** shall have no liability for any amount due as a result of an administrative decision, judgment, settlement, or any fine, penalty, assessment of costs, or any other monetary awards or non-monetary remedies or relief, in connection with any **Disciplinary Proceeding**.

The **Insured** must report any **Disciplinary Proceeding** to the **Insurer** as soon as practicable and no later than the thirty (30) days after the Expiration Date forth in Item 2(b) of the Declarations, and shall provide the **Insurer** with any supporting documentation that the **Insurer** may require.

The Limit of Liability set forth below for **Disciplinary Proceedings** shall be part of, and not in addition to, the Maximum Aggregate Limit of Liability, as set forth in Item 3(e) of the Declarations.

B.      **REIMBURSEMENT FOR LOST EARNINGS AND REASONABLE EXPENSES**

The **Insurer** shall reimburse each **Insured**, for actual loss of earnings and reasonable and necessary expenses incurred for each day the **Insured**, at the **Insurer's** express request, attends a deposition, trial, hearing or arbitration arising from a **Claim** for which coverage is provided under this Policy.  Unless indicated otherwise in Paragraph 4.B. of this Endorsement, each **Insured** physician shall be reimbursed up to $2,500 per day, and all other **Insureds** shall be reimbursed up to $500 per day, subject to a maximum amount payable of $5,000 per **Claim** for all **Insureds**.

The maximum aggregate amount payable under this provision, regardless of the number of **Claims**, the number of **Insureds**, or the number of days attended, shall be $10,000.

Any payment made by the **Insurer** under this provision shall be in addition to the applicable Limit of Liability for such **Claim**, and shall not be subject to the Deductible. The **Insured** must promptly provide the **Insurer** with a written request for reimbursement and any supporting documentation that the **Insurer** may require.

This coverage shall not apply in the event of a **Disciplinary Proceeding**.

C.    **MEDICAL PAYMENTS COVERAGE**

The **Insurer** will pay on the **Insured's** behalf, subject to the Limit of Liability set forth in Paragraph 4.C. below, **Medical Payments** arising from any **Bodily Injury** suffered by a **Business Invitee**, where such **Bodily Injury** was caused by an **Occurrence** that took place on the **Insured's** business premises and in the conduct of the **Insured's** profession as identified in the **Application**; provided always that:

1.    such **Occurrence** took place during the **Policy Period**;
2.    the treatment or other services eligible for **Medical Payments** are rendered within one (1) year of the **Occurrence**, and the **Medical Payments** expenses are reported to the **Insurer** within ninety (90) days from the date such treatment or service was rendered; and
3.    the injured person submits to examination, as often as required by the **Insurer**, by physicians of the **Insurer's** choice and at the **Insurer's** expense.

The Limit of Liability set forth in Paragraph 4.C. below shall be part of, and not in addition to, the aggregate Limit of Liability for all General Liability Claims, as set forth in Item 3(b) of the Declarations.

2.    Solely with respect to this Endorsement the term "**Disciplinary Proceeding**" means a hearing or disciplinary action before a state or other licensing board or governmental body which is specifically charged with regulating or overseeing the **Insured's** profession as identified in the **Application**, involving allegations of misconduct by the **Insured** in the conduct of the **Insured's** profession. A **Disciplinary Proceeding** shall not include any criminal investigation, proceeding or indictment.

3.    The additional coverages set forth in Paragraph 1. of this Endorsement shall be subject to all the exclusions set forth in Section III. Exclusions of the Policy and any endorsements attached to the Policy.

4.    The following Limits of Liability shall apply to the above additional coverages:

| | | |
|---|---|---|
| A.  Disciplinary Proceedings | - N/A - | per Disciplinary Proceeding; and |
| | - N/A - | in the Aggregate for all Disciplinary Proceedings. |
| B.  Lost Earnings | - N/A - | per Claim; and |
| | - N/A - | in the Aggregate for all Lost Earnings and Expenses. |

C. Medical Payments          $5,000                    in the Aggregate for all payments, which shall be part of the Aggregate Limit of Liability for Insuring Agreement I.B.

5.      The following Deductible shall apply to the above additional coverages:

A.  Disciplinary Proceedings    - N/A -          each and every Disciplinary Proceeding;
B.  Lost Earnings               $0               No Deductible shall apply;
C.  Medical Payments            $0               No Deductible shall apply.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ENDORSEMENT NO. 7

**SPECIFIC ADDITIONAL INSUREDS**
**WAIVER OF SUBROGATION**
**COVERAGE UNDER ALL INSURING AGREEMENTS**

This Endorsement, effective at 12:01 a.m. on March 9, 2020, forms part of

| | |
|---|---|
| Policy No. | 0308-2107 |
| Issued to | Georgia Cryoservices, Inc. |
| Issued by | Allied World Surplus Lines Insurance Company |

In consideration of the premium charged, it is hereby agreed that:

The term **Insured** as defined in Section II. of the Policy, is amended to include the persons or entities below with whom the **Named Insured** has agreed under written contract or agreement to provide insurance (hereinafter referred to as ("Additional Insureds"):

Genecord

The coverage provided shall not exceed the scope of coverage and/or Limits of Liability of this Policy; nor shall the coverage provided exceed the scope of coverage and/or limits required by said contract or agreement.

Coverage for the Additional Insureds shall only be provided pursuant to this endorsement for **Claims** arising out of the otherwise covered negligent acts, errors or omissions of the **Insureds**, other than the Additional Insureds. There shall be no coverage under this Policy for any **Claim** based upon or arising out of the acts, errors or omissions of the Additional Insureds, whether negligent or intentional.

The coverage provided by this Endorsement is primary to, and shall not contribute with, any other applicable insurance plan, policy or program of self-insurance carried by or applicable to any Additional Insured.

With respect to the coverage provided by this Endorsement, it is hereby agreed that the **Insurer's** rights of subrogation pursuant to Section IV. Conditions H. of the Policy are waived, solely with respect to the Additional Insureds named above.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT NO. 8**

**COVERAGE TERRITORY**

This Endorsement, effective at 12:01 a.m. on March 9, 2020, forms part of

        Policy No.       0308-2107
        Issued to       Georgia Cryoservices, Inc.
        Issued by      Allied World Surplus Lines Insurance Company

In consideration of the premium charged, it is hereby agreed that the following is added to Section V. CONDITIONS:

**Territory**

1. For INSURING AGREEMENT A. CLAIMS MADE PROFESSIONAL LIABILITY, **Territory** means anywhere in the world. This Policy applies to **Medical Professional Incidents** taking place anywhere in the world; and **Claims** brought and maintained against an **Insured** anywhere in the world.

2. For INSURING AGREEMENT B. OCCURRENCE-BASED GENERAL LIABILITY, and all other Insuring Agreement, **Territory** means the United States of America, its territories or possessions. This Policy applies to **Occurrences** taking place the United States of America, its territories or possessions; provided however, that any **Claim** for which coverage is sought under this Policy must be brought and maintained against an **Insured** in the United States of America, its territories or possessions, Puerto Rico or Canada.

3. Notwithstanding the terms applicable to INSURING AGREEMENT A and Section V. CONDITIONS, Subsection E. "Defense and Settlement of Claims", when a **Claim** is reported to the **Insurer** involving a suit brought outside the United States of America, its territories or possessions, Puerto Rico or Canada:

   a. In lieu of paying on behalf of the **Insured**, the **Insurer** will indemnify the **Insured** for those sums that the **Insured** becomes legally obligated to pay because of an injury resulting from a **Medical Incident**. Subject to the retention and all other policy provisions, the **Insurer** shall reimburse the **Insured** for **Defense Expenses** and pay damages determined in a **Claim** based on the merits.

   b. If the **Insurer** does not exercise the right to defend a **Claim**, the **Insured** shall, under the **Insurer's** supervision, make such defense as is reasonably necessary.  Subject to the **Insurer's** prior written authorization, the **Insured** may also effect settlement.

5. This Policy shall not cover any **Loss** in connection with any **Claim** in the event that such coverage would not be in compliance with any United States of America economic or trade sanctions, laws or regulations, including but not limited to the U.S. Treasury Department's Office of Foreign Assets Control, or any similar foreign, federal, state or statutory law or common law.

All other terms, conditions and limitations of this Policy shall remain unchanged.

 

_____
                 Authorized Representative



| | **Miscellaneous Medical Facilities** |
| --- | --- |
| | **Professional and General Liability** |
| | **Insurance Policy** |

**THIS POLICY PROVIDES BOTH CLAIMS MADE AND REPORTED AND OCCURRENCE COVERAGE BASED ON THE APPLICABLE INSURING AGREEMENT, AND CONTAINS MULTIPLE INSURING AGREEMENTS WHICH MAY BE SUBJECT TO SEPARATE LIMITS OF LIABILITY.**

**THE PAYMENT OF DEFENSE EXPENSES WILL NOT REDUCE OR EXHAUST THE LIMITS OF LIABILITY UNDER THIS POLICY, WITH THE EXCEPTION OF THE COVERAGE AVAILABLE UNDER SECTION I.D. OF THIS POLICY, PURSUANT TO WHICH DEFENSE EXPENSES SHALL REDUCE AND EXHAUST THE APPLICABLE LIMITS OF LIABILITY.**

**DEFENSE EXPENSES WILL REDUCE AND EXHAUST THE MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL CLAIMS UNDER ALL INSURING AGREEMENTS.**

**DEFENSE EXPENSES ARE APPLIED AGAINST THE DEDUCTIBLE.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Insurer**, including the statements made in the **Application**, the **Insurer** and the **Insured**, subject to all of the terms, conditions and limitations of this Policy and any endorsements thereto, agree as follows:

I.   **INSURING AGREEMENTS**

A.   **CLAIMS MADE PROFESSIONAL LIABILITY**

The **Insurer** will pay on behalf of the **Insured**, **Loss** in excess of the Deductible stated in Item 4(a) of the Declarations and subject to the Limits of Liability set forth in Item 3(a) of the Declarations, which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging a **Medical Incident**, provided always that:

1.   such **Medical Incident** takes place on or after the **Retroactive Date** stated in Item 5(a) of the Declarations and before the end of the **Policy Period**;

2.   such **Claim** is first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period;

3.   notice of such **Claim** is given to the **Insurer** in accordance with Section IV.B. of this Policy; and

4.   such **Medical Incident** takes place in the **Coverage Territory**.

In addition to the Limits of Liability, the **Insurer** will have the right and duty to defend any such **Claim** brought against the **Insured**, and will do so even if any of the allegations of the **Claim** are groundless or false.

B.   **OCCURRENCE-BASED GENERAL LIABILITY**

The **Insurer** will pay on behalf of the **Insured**, **Loss** in excess of the Deductible stated in Item 4(b) of the Declarations and subject to the Limits of Liability set forth in Item 3(b) of the Declarations, which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging:

1.  **Bodily Injury** or **Property Damage**, **Products Completed Operations Hazard** or **Fire Damage** caused by an **Occurrence** that takes in the **Coverage Territory** and place during the **Policy Period**; or

2.  **Personal or Advertising Injury** caused by an act that takes place in the **Coverage Territory** and during the **Policy Period**

provided always that notice of such **Claim** is given to the **Insurer** in accordance with Section IV.B. of this Policy.

In addition to the Limits of Liability, the **Insurer** will have the right and duty to defend any such **Claim** brought against the **Insured**, and will do so even if any of the allegations of the **Claim** are groundless or false.

**C.  CLAIMS MADE EMPLOYEE BENEFITS LIABILITY**

The **Insurer** will pay on behalf of the **Insured**, **Loss**, in excess of the Deductible stated in Item 4(c) of the Declarations and subject to the Limits of Liability set forth in Item 3(c) of the Declarations, which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging injury to an **Employee**, or any other individual entitled to a benefit under an **Employee Benefit Program**, because of an act, error or omission in the **Insured's Administration** of its **Employee Benefit Program**; provided always that:

1.  such act, error or omission takes place on or after the **Retroactive Date** stated in Item 5(b) of the Declarations and before the end of the **Policy Period**;

2.  such **Claim** is brought by an **Employee** or other individual as described above, and first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period;

3.  notice of such **Claim** is given to the **Insurer** in accordance with Section IV.B. of this Policy; and

4.  such Claim takes place in the **Coverage Territory**.

In addition to the Limits of Liability, the **Insurer** will have the right and duty to defend any such **Claim** brought against the **Insured**, and will do so even if any allegations of the **Claim** are groundless or false.

**D.  CLAIMS MADE SEXUAL MISCONDUCT**

The **Insurer** will pay on behalf of the **Insured**, **Defense Expenses** only, in excess of the Deductible stated in Item 4(d) of the Declarations and subject to the Limits of Liability set forth in Item 3(d) of the Declarations, which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging **Sexual Misconduct** by an **Insured** and directed towards a **Patient**, provided always that:

1.  such act of **Sexual Misconduct** takes place on or after the **Retroactive Date** stated in Item 5(c) of the Declarations and before the end of the **Policy Period**;

2.  such **Claim** is brought by a **Patient** and first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period;

3.  notice of such **Claim** is given to the **Insurer** in accordance with Section IV.B. of this Policy; and

4.  such **Sexual Misconduct** takes place in the **Coverage Territory**.

As part of, and not in addition to the Limits of Liability, the **Insurer** will have the right and duty to defend any such **Claim** brought against the **Insured**, and will do so even if any allegations of the **Claim** are groundless or false.

If any **Sexual Misconduct** is alleged at any stage during a **Claim** against any **Insured** or **Insureds**, all allegations in that **Claim** which arise out of the same or related professional treatment or relationship will be subject to the Limit of Liability set forth in Item 3(d) of the Declarations. If the **Insurer** has paid this Limit of Liability, it will no longer have any duty to pay or reimburse **Defense Expenses** for any **Claim** involving any **Sexual Misconduct**.

In no event shall the **Insurer** be obligated to pay **Loss** in connection with any **Claim** alleging **Sexual Misconduct**.

## II.   DEFINITIONS

A.   "**Administration**" means:

1.   giving advice or counsel to **Employees** or their beneficiaries concerning their rights or interest with regard to an **Employee Benefit Program**;

2.   determining the eligibility of **Employees** to participate in such **Employee Benefit Program**;

3.   interpreting the provisions of such **Employee Benefit Program**;

4.   effecting enrollment and termination of **Employees** in such **Employee Benefit Program**; or

5.   handling and keeping records pertaining to such **Employee Benefit Program**.

B.   "**Advertisement**" means a notice that is broadcast or published to the general public or specific market segments about the **Insured's** goods, products or services, for the purpose of attracting customers or supporters.  For purposes of this Definition:

1.   notice that is broadcast or published includes material placed on the Internet or similar means of electronic communication; and

2.   with regard to websites, only that part of a website that is about the **Insured's** goods, products or services, for the purpose of attracting customers or supporters, will be considered an **Advertisement**.

C.   "**Application**" means:

1.   the application and any supplemental applications, or information submitted to the **Insurer**; or

2.   any application submitted to any competitor of the **Insurer**, which is provided to the **Insurer** for the purposes of procuring coverage hereunder, and which shall be treated as if it were submitted directly to the **Insurer**;

any and all materials and information submitted to the **Insurer** in connection with any such application, and all publicly available material promulgated by the **Insured** about the **Insured** that the **Insurer** obtained prior to the Inception Date of the Policy, all of which are deemed to be on file with the **Insurer** and are deemed to be attached to, and form a part of, this Policy, as if physically attached.

D.   "**Bodily Injury**" means physical injury, sickness or disease sustained by a person other than a **Patient**, including mental anguish, emotional distress or death resulting there from.

E.   "**Business Invitee**" means a natural person, other than a **Patient** of the **Insured**, solely in their capacity as one who is invited by the **Insured** to enter into and remain on the business premises for a purpose directly or indirectly connected with the **Healthcare**

**Professional Services** performed therein.   A **Business Invitee** shall not include a trespasser or any other person who enters the business premises without the **Insured's** knowledge or permission, or any **Insured**.

F.  **"Claim"** means a judicial proceeding or other written demand seeking monetary damages otherwise covered by this Policy.

A **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**.

A **Claim** shall not include a criminal proceeding or criminal investigation of any kind.

G.  **"Coverage Territory"** means anywhere in the world, provided a **Claim** or suit is brought within the United States of America, its territories or possessions, or Canada.

H.  **"Cyberterrorism"** means any premeditated attack against computer systems, computer programs, and data which results in financial loss.

I.  **"Defense Expenses"** means reasonable fees, costs and expenses incurred by or on behalf of the **Insured** in connection with the defense of a **Claim**; however, **Defense Expenses** shall not include:

1.  salaries, remuneration, overhead, fees, loss of earning reimbursement or benefit expenses of the **Insured**;

2.  fines, penalties, or taxes levied against the **Insured**;

3.  fees, costs or expenses incurred without the prior consent of the **Insurer**; or

4.  **Loss**.

J.  **"Digital Assets"** means software and electronic data including, but not limited to, cryptocurrency that is stored on or within an **Insured's Network**.  **Digital Assets** shall include the capacity of an **Insured's Network** to store and process data and information and electronically disseminate data and information over the Internet.

K.  **"Employee"** means a W-2 wage earning person who has been hired by an **Insured Entity** to perform services for such **Insured Entity**, including an Employed Physician but only if listed in Schedule B.  **Employee** does not include independent contractors, or any other individuals as described in Definition T., subparagraphs 3. through 10.  An **Employee's** status as an **Insured** shall be determined as of the date of the **Occurrence** or **Medical Incident** upon which a **Claim** involving the **Employee** is based.

L.  **"Employee Benefit Program"** means any group life insurance, group accident and health insurance, profit sharing plan, pension plan, employee stock subscription plan, workers' compensation, unemployment insurance, social security, disability benefits insurance, or any other similar plan administered by or on behalf of the **Insured Entity** for the benefit of its **Employees**.

M.  **"Employment Practices Wrongful Act"** means any of the following, when alleged by any past or present **Employee** of an **Insured Entity** or any applicant for employment with an **Insured Entity**, in connection with that person's actual or proposed employment relationship with the **Insured Entity**:

1.  wrongful dismissal, discharge or termination of employment, whether actual or constructive;

2.  harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

3. discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability or any basis prohibited by federal, state or local laws;

4. breach of any manual of employment policies or procedures issued by the **Insured Entity;**

5. retaliatory action in response to that **Employee's:**

   a. disclosure or threat of disclosure of any act by an **Insured** alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

   b. actual or attempted exercise of any right that **Employee** has under law;

   c. filing of any **Claim** under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law;

   d. misrepresentation, libel, slander, humiliation, defamation or invasion of privacy, wrongful failure to employ or promote, wrongful deprivation of career opportunity, including tenure, wrongful demotion or evaluation or wrongful discipline; or

   e. any of the foregoing that are alleged to result from **Peer Review.**

N. **"Fire Damage"** means **Property Damage** to the tangible property of a third party other than an **Insured** caused by a fire to premises the **Insured Entity** rents or leases from others or to premises temporarily occupied by any **Insured Entity** with the permission of the owner, solely for the purpose of rendering **Healthcare Professional Services**. Such premises shall not include any **Insured's** residence. Water damage from such fire is also included. The fire must not be caused intentionally; and must take place during the **Policy Period**.

With respect to **Fire Damage**, **Property Damage** shall not include damage to any personal property owned by any **Insured**, or any other personal property of any person that is within any **Insured's** care, custody or control.

O. **"Good Samaritan Acts"** means acts or services provided by or failed to be provided by the **Insured** in rendering emergency treatment, without remuneration, at the scene of an accident, medical crisis or disaster.

P. **"Healthcare Professional Services"** means services performed by an **Insured** in the treatment or care of any person, including:

1. medical, dental, nursing, psychiatric, osteopathic, chiropractic, dental, x-ray or other professional care or services;

2. the furnishing or dispensing of medications, drugs, blood, blood products, or medical or surgical supplies, equipment or appliances in connection with such services described in Paragraph 1. above;

3. the furnishing of food or beverages in connection with such services described in Paragraph 1. above;

4. the providing of counseling or social services in connection with such services described in Paragraph 1. above;

5. the handling or treatment of dead bodies, including autopsies, organ donation or harvesting, or other procedures.

Q. **"Hostile Fire"** means a fire which becomes uncontrollable or breaks out from where it was intended to be contained; provided that **Hostile Fire** shall not include any fire that originated at any site operating as a waste disposal facility or waste storage facility.

R. **"Insured"** means any of the following:

1. any **Insured Entity**; and

2. any **Insured Person**.

S. **"Insured Entity"** means the **Named Insured** and any **Subsidiaries**, and the organization(s) listed in Schedule A.

T. **"Insured Person"** means:

1. any **Employee** of an **Insured Entity**, but only while acting within the scope of his/her duties as such;

2. any Employed Physician of an **Insured Entity**, if listed in Schedule B, but only while acting within the scope of his/her duties as such;

3. as respects Insuring Agreement I.A., any natural persons who are independent contractors retained by the **Insured** to provide **Healthcare Professional Services**, but only while providing services pursuant to a written contract or agreement with **Insured**, provided that independent contractors shall not include physicians.

4. any **Volunteer** or person enrolled as a student in a formal training program offered by the **Insured** of any **Insured Entity**, but only while acting within the scope of his/her duties as such;

5. any member of a duly authorized board or committee of an **Insured Entity**, any person communicating information to such board or committee, or any person charged with the duty of acting as a hearing officer or agent of such committee or executing directives of any such board or committee; provided, however, that any such person shall only be an **Insured Person** while acting within the scope of his/her duties as such;

6. any of the **Insured Entities'** medical directors, administrators, department heads or chiefs of staff, who are not **Employees**, while acting within the scope of their duties as such; provided, however, that such person shall not be an **Insured Person** for **Claims** arising out of direct **Patient** care rendered or allegedly failed to be rendered by him/her;

7. any member or partner of a joint venture or partnership, which joint venture or partnership is specifically designated as such in Schedule A, but only with respect to such member or partner's liability arising out of such designated joint venture or partnership;

8. any person or entity with whom / which the **Insured Entity** has a written agreement, effective during the **Policy Period**, to provide such person or entity insured status under this Policy (each , an "Additional Insured"), but solely with respect to liability imposed or sought to be imposed on such Additional Insured as a result of the acts, errors or omissions of an original **Insured** committed or allegedly committed subsequent to the execution of such agreement and for which this Policy provides coverage; provided, that: (a) no coverage will be available under this Policy for that portion of any **Loss** or **Defense Expenses** for

any **Claim** against an Additional Insured based upon or arising out of any actual or alleged independent act or direct liability of such Additional Insured; and (b) an Additional Insured's status as an **Insured** under this Policy shall immediately terminate when the **Insured's** agreement to provide such status terminates;

9.    any person leased to the **Insured** by a labor leasing firm under an agreement between the **Insured** and the labor leasing firm (each, a "leased worker"), but only while providing services pursuant to a written agreement with the **Insured** and while each leased worker is acting within the scope of his/her duties; or

10.    any temporary worker who is furnished to the **Insured** to substitute for a permanent **Employee** on leave or to meet seasonal or short-term workload conditions.

Solely with respect to Insuring Agreement I.A., **Insured Person** shall also mean, in the event of the death, incapacity, or bankruptcy of an **Insured Person**, the estates, heirs, legal representatives and/or assigns of such **Insured Person**.

U.    **"Insured's Products"** means:

1.    goods or products manufactured, sold, handled or distributed by:

    a.    an **Insured Entity**;

    b.    others trading under the name of an **Insured Entity**; or

    c.    a person or organization whose assets an **Insured Entity** has acquired in accordance with Section IV. J.; and

2.    containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Insured's Products** does not mean vending machines, or other property rented to or located for the use of others but not sold.

V.    **"Insured's Work"** means:

1.    work or operations performed by any **Insured** or on an **Insured Entity's** behalf; and

2.    materials, parts or equipment furnished in connection with such work or operations;

but only in connection with the provision of **Healthcare Professional Services** by the **Insureds**.

W.    **"Insurer"** means the Company identified in the Declarations.

X.    **"Loss"** means any monetary amount paid on account of an award, judgment or settlement, including punitive and exemplary damages where insurable by law, in excess of the applicable Deductible or self-insured retention, if any, stated in Item 4. of the Declarations which the **Insured** is legally obligated to pay as a result of a **Claim**.

However, **Loss** shall not include:

1.    the multiplied portion of multiplied damages;

2.    salaries, remuneration, overhead, fees or benefit expenses of any **Insured**;

3.    fines, penalties, sanctions, fees, government payments or taxes, or amounts imposed by statute, rule, regulation or other laws or taxes levied against the **Insured**;

4.    non-monetary relief or redress in any form other than monetary compensation or damages, including, but not limited to, injunctive, declaratory and administrative relief;

5.    the return, restitution, refund or disgorgement of fees, profits charges for products or services rendered, capitation payments, premium, other funds or amounts allegedly wrongfully held, obtained and/or retained by an **Insured**;

6.    amounts owed to any provider of **Healthcare Professional Services** under any contract;

7.    benefits under an **Employee Benefit Program**;

8.    that part of any post-judgment interest that accrues after the **Insurer** pays or offers to pay our share of the judgment;

9.    matters which are uninsurable under applicable law;

10.   the payment, satisfaction or writing off of any medical bills or charges by an **Insured**; or

11.   **Defense Expenses**.

The insurability of any **Loss** shall be determined under the laws of the jurisdiction most favorable to the insurability of such **Loss**, provided that such jurisdiction is where either the **Insurer** or the **Insured Entity** is incorporated or has its principal place of business, where the act giving rise to such **Loss** occurred, the location of the court which awarded such **Loss** or the jurisdiction in which the **Loss** is awarded.

Y.    **"Medical Payments"** means reasonable payments for:

1.    first aid administered at the time of an accident;

2.    necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

3.    necessary ambulance, hospital, professional medical and nursing and funeral services.

Z.    **"Medical Incident"** means:

1.    an actual or alleged act, error or omission in the **Insured's** rendering of or failure to render **Healthcare Professional Services** to the **Insured's Patients** that results in **Medical Professional Injury**. A series of related acts or omissions in the providing of or failure to provide **Healthcare Professional Services** will be deemed to be one **Medical Incident**;

2.    an actual or alleged act, error or omission in connection with the **Insured's** activities as a member of a duly authorized board or committee of an **Insured Entity**, or as a member of any committee of the medical or professional staff of an **Insured Entity** when engaged in **Peer Review** or **Utilization Review**;

3.      an actual or alleged act, error or omission in connection with the **Insured's** activities as a member of an accreditation, standards review or similar board or committee;

4.      an actual or alleged act, error or omission in connection with the **Insured's** performance of quality assurance activities; or

5.      an actual or alleged act, error or omission in connection with **Good Samaritan Acts**.

AA.    "**Medical Professional Injury**" means injury, including death, to others that results from acts or omissions in the providing of or failure to provide **Healthcare Professional Services** by or for an **Insured**.

BB.    "**Named Insured**" means the entity identified in Item 1. of the Declarations.

CC.    "**Network**" means computer hardware, servers, software, firmware, telephone systems, mobile devices, blockchain technology, and components thereof, including software and electronic data stored on or within an **Insured's Network**, whether leased or owned, or provided by a third party, or cloud based.

DD.    "**Network Extortion**" means a credible threat or connected series of credible threats made by a natural person to:

1.      Commit or to continue an attack on an **Insured's Network**;

2.      Disclose information described in Section III. Exclusions, Subsection E., Paragraph 12.a. obtained as a result of unauthorized access to or unauthorized use of an **Insured's Network**;

3.      Commit **Cyberterrorism**; or

4.      Refuse to return or unencrypt **Digital Assets**.

EE.    "**Occurrence**" means:

1.      With respect to **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in injury neither expected nor intended by the **Insured;**

2.      With respect to **Personal or Advertising Injury**, a covered offense as set forth in Definition HH.

FF.    "**Patient**" means any person or human body seeking, registered or admitted to receive **Healthcare Professional Services** from an **Insured**, before, during or after registration for such services, and whether on an inpatient, outpatient or emergency basis.

GG.    "**Peer Review**" means the process of evaluating any individual or entity for purposes of selecting, employing, contracting with or credentialing current or prospective providers of **Healthcare Professional Services**; provided, however, that such evaluation must be performed by members of a duly authorized professional review board or committee of an **Insured Entity**.

HH.    "**Personal or Advertising Injury**" means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

1.      False arrest, detention or imprisonment;

2.      Malicious prosecution;

3.      The wrongful eviction from, wrongful entry into or invasion of the right of private occupation of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, product or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The **Insured's** use of another's advertising idea in its **Advertisement**;

7. The **Insured's** use of another's copyright, trade dress or slogan in its **Advertisement**; or

8. The **Insured's** infringement upon another's copyright, trade dress or slogan in its **Advertisement**.

II. **"Policy Period"** means the period from the Inception Date stated in Item 2(a) of the Declarations to the earlier of the Expiration Date stated in Item 2(b) of the Declarations or the cancellation date.

JJ. **"Pollutant"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

KK. **"Products-Completed Operations Hazard"** means **Bodily Injury** and **Property Damage** which occurs away from premises an **Insured Entity** owns or rents and arising out of the **Insured's Products** or the **Insured's Work**, except:

1. products that are still in the **Insured Entity's** physical possession; or

2. work that has not yet been completed or abandoned; however, the **Insured's Work** will be deemed completed at the earliest of the following times:

   a. when all of the worked called for in the **Insured's** contract has been completed;

   b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project;

provided that **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

   a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by an **Insured**, and that condition was created by the Loading or Unloading of that vehicle by any **Insured**;

   b. the existence of tools, uninstalled equipment or abandoned or unused materials; or

   c. products or operations for which the classification, as listed in an Endorsement to this Policy or a Policy Schedule, states that the products-completed operations are subject to the Maximum Aggregate Limit of Liability.

LL. **"Property Damage"** means:

1. physical injury to or destruction of tangible property, including all loss of use thereof as a result of such physical injury or destruction; or

2.    loss of use of tangible property that is not physically injured.

MM.    **"Related Claims"** means all **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, events or involved individuals or the same or related series of facts, circumstances, situations, transactions, events or involved individuals, whether related logically, causally or in any other way.

NN.    **"Retroactive Date"** means the applicable date set forth in Item 5. of the Declarations.

OO.    **"Sexual Misconduct"** means actual or alleged physical, mental or moral harassment, assault, abuse, molestation, mistreatment or maltreatment of a sexual nature against any person, including but not limited to, any sexual involvement, sexual conduct, with or without consent by an **Insured** providing **Healthcare Professional Services**, and negligent hiring, supervision, training, negligent retention and/or investigation of or failure to report to proper authorities any **Insured** providing **Healthcare Professional Services** who committed or is alleged to have committed any act of sexual abuse or molestation.

PP.    **"Subsidiary"** means any entity during any time in which an **Insured Entity** owns or controls, directly or indirectly, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors or members of the board of managers.

QQ.    **"Utilization Review"** means the process of evaluating the appropriateness or necessity of **Healthcare Professional Services** provided or to be provided by an **Insured**. **Utilization Review** includes prospective, concurrent and retrospective review of such **Healthcare Professional Services**; however, **Utilization Review** does not include services or activities performed in administering benefits or managing health care plans for others.

RR.    **"Volunteer"** means a person providing services and/or labor to an **Insured**, without being paid by the **Insured** for providing such services and/or labor and under the supervision or direction of an **Insured**. **Volunteer** shall not include any **Employee** or independent contractor.

## III.   <u>EXCLUSIONS</u>

A.    **Exclusions Applicable To Insuring Agreement I.A., CLAIMS MADE PROFESSIONAL LIABILITY**

As respects Insuring Agreement I.A., CLAIMS MADE PROFESSIONAL LIABILITY, this Policy shall not apply to any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1.    **Bodily Injury**, **Property Damage, or Personal or Advertising Injury**, unless such **Claim** arises out of an **Insured's** alleged rendering of or failure to render **Healthcare Professional Services**;

2.    any actual or alleged misstatement, misleading statement, act, error or omission by any of the **Insured's** Directors or Officers in the discharge of their duties as such;

3.    the rendering of or failure to render **Healthcare Professional Services** by any person other than an **Insured**; provided that this Exclusion shall not apply to an **Insured's** vicarious liability with regard to such **Healthcare Professional Services**;

4.   any **Medical Incident** arising out of the ownership, maintenance, use, operation, or entrustment to others of any aircraft, auto, watercraft, motor vehicle or semi-trailer, or the loading or unloading thereof; provided, however, that this Exclusion A.4 will not apply to any **Claim** arising out of a **Medical Incident** in connection with the loading or unloading of **Patients**;

5.   any **Healthcare Professional Services** provided by any **Insured Person**, or by any person for whom an **Insured** is responsible, if such **Healthcare Professional Services** are provided outside of their employment for an **Insured Entity**; provided that this Exclusion shall not apply to **Claims** against an **Insured** for **Good Samaritan Acts**; or

6.   **Sexual Misconduct**.

**B.   Exclusions Applicable to Insuring Agreements I.B., OCCURRENCE-BASED GENERAL LIABILITY**

As respects Insuring Agreement I.B., OCCURRENCE-BASED GENERAL LIABILITY, this Policy shall not apply to any **Claim**:

1.   based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

   a.   injury to a **Patient** related to a **Medical Incident**; provided, however, that this Exclusion shall not apply to any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving: fire or lightning; windstorm or hail; explosion; riot, including riot attending a strike or civil commotion; aircraft or vehicles; smoke; vandalism or malicious mischief; sprinkler leakage; elevator malfunction; earthquake or flood; or structural collapse of a building;

   b.   infringement of right of patent, trademark, service mark, trade name, copyright, title or slogan;

   c.   injury or damage arising in whole or in part, directly or indirectly, out of fungi, including mold or mildew, any mycotoxins, toxins, allergens, spores, scents, vapors, gases or by-products released by fungi, regardless of whether such fungi is:

      i.   airborne;

      ii.   contained in a product; or

      iii.   contained in or a part of any building, structure, building material, or any component part of any of the foregoing; and

   d.   **Sexual Misconduct**; or

   e.   **Bodily Injury**, **Property Damage**, **Products Completed Operations Hazard** or **Fire Damage** arising out of an **Occurrence** taking place before the Inception Date; or **Personal or Advertising Injury** caused by an offense taking place before the Inception Date;

2.   for **Bodily Injury**, **Property Damage**, **Products Completed Operations Hazard**, **Fire Damage** or **Personal or Advertising Injury** expected or intended from the standpoint of the **Insured**; provided, however, that this exclusion shall not apply to **Bodily Injury** resulting from the use of reasonable force to protect any person or property from injury or damage;

3.    for **Personal or Advertising Injury**:

    a.    caused by or at the direction of an **Insured** with the knowledge that the act would violate the rights of another or would inflict **Personal or Advertising Injury**;

    b.    arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

    c.    arising out of oral or written publication of material first published prior to the Inception Date stated in Item 2(a) of the Declarations. For purposes of this subsection, if such material was first published prior to the Inception Date of this Policy, it shall be immaterial whether such material was re-published or allegedly caused injury during the **Policy Period**;

    d.    arising out of a breach of contract, except an express written contract to use another's advertising idea in the **Insured's Advertisement**;

    e.    arising out of the failure of goods, products or services to conform with any statement of quality or performance made in the **Insured's Advertisement**; or

    f.    arising out of the wrong description of the price of goods, products or services stated in the **Insured's Advertisement**;

4.    for **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, operation, or entrustment to others of any aircraft, auto, watercraft, motor vehicle or semi-trailer, or the loading or unloading thereof;

5.    for **Property Damage** to:

    a.    any property the **Insured** owns or rents;

    b.    any premises sold, given away, or abandoned by the **Insured**;

    c.    any property loaned to the **Insured**;

    d.    any personal property in the care, custody or control of the **Insured**; or

    e.    the **Insured's Products**, arising out of such products or any part thereof;

6.    for **Property Damage** to property that has not been physically injured, arising out of:

    a.    a delay or failure by or on behalf of the **Insured** in performing any contract or agreement; or

    b.    the failure of the **Insured's Products** to meet the level of performance, quality, fitness or durability promised or warranted by the **Insured**; provided, however, that this exclusion shall not apply to loss of use of other tangible property resulting from the sudden or accidental physical damage to or destruction of the **Insured's Products** or work performed by or on behalf of the **Insured** after such products or work have been put to use by any person or organization other than the **Insured**;

7.    for **Bodily Injury** to:

    a.    an **Employee** arising out of and in the course of employment by the **Insured Entity** or performing duties related to the conduct of an **Insured Entity's** business; or

    b.    the spouse, child, parent, brother or sister of that **Employee** as a consequence of Paragraph a. above;

    whether or not the **Insured Entity** is liable as an employer or in any other capacity and whether or not the **Insured Entity** has any obligation to share damages with or repay someone else who must pay damages because of the injury.

8.    based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    a.    causing or contributing to the intoxication of any person;

    b.    the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    c.    the violation of any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

**C.    Exclusions Applicable to Insuring Agreement I.C., CLAIMS MADE EMPLOYEE BENEFITS LIABILITY**

As respects Insuring Agreement I.C., CLAIMS MADE EMPLOYEE BENEFITS LIABILITY, this Policy will not apply to any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1.    **Bodily Injury**, **Property Damage**, or **Personal or Advertising Injury**;

2.    a **Medical Incident**, or injury to a **Patient**;

3.    failure of performance by any insurer, including, but not limited to, the failure of such insurer to pay or provide benefits allegedly due under any contract relating to the **Insured Entity's Employee Benefit Program;**

4.    the insufficiency of funds to meet any obligations of the **Insured Entity's Employee Benefit Program**; or

5.    failure of stock or any compensation, investment or savings program to produce financial gain.

**D.    Exclusions Applicable to Insuring Agreement I.D., CLAIMS MADE SEXUAL MISCONDUCT**

As respects Insuring Agreement I.D., CLAIMS MADE SEXUAL MISCONDUCT, this Policy will not apply to any **Claim**:

1.    based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

      a.     **Sexual Misconduct**, if actually or allegedly committed by anyone other than an **Insured**, or actually or allegedly directed towards anyone other than a **Patient**;

2.     against an **Insured Person** which alleges **Sexual Misconduct**, if it is determined by admission, finding or final adjudication in any legal proceeding, that such **Insured Person** has committed, participated in, directed or knowingly allowed such act of **Sexual Misconduct**;

provided, however, the applicability of this Exclusion D.2. may only be determined by a testimonial and uncontradicted admission, final adjudication or a finding either in the **Claim**, or in a proceeding separate from or collateral to the **Claim** so long as such proceeding was not filed by the **Insurer** or **Insured** to determine coverage for the **Claim**.

For purposes of this Exclusion D.2., no act, error or omission of any **Insured Person** shall be imputed to any other **Insured Person**.

If any **Insured Person** is determined to have engaged in the conduct specified in this Exclusion D.2., such **Insured Person** will reimburse the **Insurer** for any **Defense Expenses** advanced to or on behalf of such **Insured**.

Notwithstanding anything herein to the contrary, if: (a) **Sexual Misconduct** by an **Insured Person** is determined to have taken place as set forth in Exclusion D.2. above; or (b) an officer, director, supervisor, manager, member of the Board of Directors, partner, principal, owner, sole-practitioner, or the equivalent thereof of the **Insured Entity**, has actual knowledge of **Sexual Misconduct** by an **Insured Person**; then, there shall be no coverage for any **Insured** for any **Claim** based upon or arising out of any acts of **Sexual Misconduct** by the same **Insured Person** which take place after the earlier of such determination or such actual knowledge.

**E.**     **Exclusions Applicable to All Insuring Agreements**

As respects all Insuring Agreements, this Policy shall not apply to any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

1.     any of the following:

      a.     willful misconduct or dishonest, fraudulent, or malicious act, error or omission by any **Insured**; any willful violation by any **Insured** of any law, statute, ordinance, rule or regulation;

      b.     any **Insured** gaining any profit, remuneration or advantage to which such Insured was not legally entitled; or

      c.     any alleged criminal conduct by an **Insured** (other than alleged **Sexual Misconduct**, as may be provided under Section I.D. of this Policy);

provided, however, the applicability of this Exclusion E.1. may only be determined by a testimonial and uncontradicted admission, final adjudication or a finding either in the **Claim**, or in a proceeding separate from or collateral to the **Claim** so long as such proceeding was not filed by the **Insurer** or **Insured** to determine coverage for the **Claim**.

For purposes of this Exclusion E.1., no act, error or omission of any **Insured Person** shall be imputed to any other **Insured Person**;

2.     any acts, errors, omissions, **Medical Incidents**, **Occurrences**, facts, matters, events, suits or demands notified or reported to, or in accordance with, any policy

of insurance or policy or program of self-insurance in effect prior to the Inception Date of this Policy;

3.  any acts, errors, omissions or **Occurrences** taking place prior to the earlier of:

    a.  the Inception Date; or

    b.  the Inception Date of the first policy issued by the **Insurer** to the **Insured,** of which this Policy is a renewal;

    if any **Insured** on or before such date knew or reasonably could have foreseen that such act, error, omission or **Occurrence** might result in a **Claim;**

4.  any actual or alleged price fixing; restraint of trade; monopolization; unfair trade practices; or violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any other federal statute involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute, rule or regulation or common law, except to the extent such **Claim** arises out of any **Insured's** alleged rendering of or failure to render **Healthcare Professional Services**;

5.  any actual or alleged liability of an **Insured** under any express contract or agreement, unless such liability would have attached in the absence of such contract or agreement.  For purposes of this Exclusion E.5, an "express contract or agreement" is an actual agreement by contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making;

6   any actual or alleged liability of an **Insured** under any workers' compensation, unemployment compensation, disability benefits or similar law or regulation;

7.  any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), or any similar federal, state or local law or regulation, except to the extent such **Claim** arises out of any **Insured's** alleged rendering of or failure to render **Healthcare Professional Services**;

8.  injury or damage arising in whole or in part, directly or indirectly, out of asbestos or silica, regardless of whether such asbestos or silica is:

    a.  airborne, as a fiber or particle;

    b.  contained in a product;

    c.  carried or transmitted by clothing or any other means; or

    d.  contained in or a part of any building, structure, building material, insulation product, or any component part of any of the foregoing;

9.  any direct or indirect consequence of war, invasion, act of foreign enemy, hostilities (whether or not war is declared), civil war, rebellion, revolution, civil insurrection, strike, or riot; provided, however, that this Exclusion E.9. shall not apply to "terrorism" as that term is defined in the Terrorism Risk Insurance Act of 2002;

10. any **Insured's** failure to maintain licensure, certification or accreditation status;

11. managed care activities, including any of the following activities performed for any person or entity other than an **Insured**: advertising, marketing, selling, or enrollment for health care or workers' compensation plans; administering claims

for health benefits; establishing health care provider networks; reviewing the quality of **Healthcare Professional Services** or providing quality assurance; design and/or implementation of financial incentive plans; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or protocols; triage for payment of medical services; and services or activities performed in the administration or management of health care or workers' compensation plans or other employee benefit plans or programs;

12.   any liability or obligation alleging, arising out of, based upon, or attributable to any:

    a.   misuse, or unauthorized access, use, collection or disclosure, of confidential, private, proprietary or personally identifiable information, including payment card data, medical or financial information, patents, trade secrets, processing methods, customer lists or any other type of information not publicly available, or the actual or alleged failure to inform customers of any security breach that has impacted or may impact their personal information described above, or any actual or alleged act, error or omission in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and any regulations promulgated in connection therewith, including but not limited to the Privacy Rule and the Security Rule and any state or local privacy or cyber security law or regulation; or

    b.   notification expenses, credit monitoring expenses, forensic expenses, public relations expenses, any expenses related to the issuance or re-issuance of any credit, debit or other type of payment card, or any other similar expenses incurred by the **Insured** or others arising out of any access to, collection of, or disclosure or release of the information described in paragraph (a) above; or

    c.   **Network Extortion**;

13.   any **Claim** asserted by or on behalf of an **Insured** against another **Insured**;

provided, however, that this Exclusion will not apply to preclude or limit coverage for an otherwise covered **Claim** based on or arising out of:

    a.   **Peer Review**;

    b.   the **Insured's Administration** of its **Employee Benefit Program**; or

    c.   an **Insured's** care or treatment, solely in the capacity of a **Patient**, by another **Insured**;

14.   any liability or obligation:

    a.   arising out of the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; provided, however, that this Exclusion shall not apply to **Bodily Injury** to a **Patient**, visitor or invitee, or to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**; or

    b.   to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, whether or not any of the foregoing are to be performed by or on behalf of the **Insured**.

15.     any **Employment Practices Wrongful Act**;

This Exclusion applies whether the **Insured** may be liable as an employer or in any other capacity;

## IV.   CONDITIONS

### A.     Limits of Liability and Deductible

1.     The amount stated in Item 3(e) of the Declarations as the Maximum Aggregate Limit of Liability, shall be the most the **Insurer** shall pay under this Policy for all:

a.  **Loss**; and

b.  **Defense Expenses**

resulting from all **Claims** for which this Policy provides coverage, regardless of the number of **Claims**, the number of persons or entities included within the definition of **Insured**, or the number of claimants.

2.     Other than the payment of **Defense Expenses** under Insuring Agreement I.D. **Defense Expenses** are paid in addition to the applicable Limit of Liability, and payment of **Defense Expenses** by the **Insurer** shall not reduce or exhaust the applicable Limit of Liability.  The payment of **Defense Expenses** under Insuring Agreement I.D. by the **Insurer**, shall reduce and exhaust the applicable Limits of Liability.

The payment of **Defense Expenses** under Insuring Agreements I.A., I.B. and I.C. by the **Insurer**, shall reduce and exhaust the Maximum Aggregate Limit of Liability stated in Item 3(e) of the Declarations.

3.     It is the obligation of the **Insured** to pay all **Loss** and **Defense Expenses** up to the amount of the applicable Deductible set forth in Item 4. of the Declarations. The obligation of the **Insurer** to pay **Loss** or **Defense Expenses** will only be in excess of the applicable Deductible.   The **Insurer** will have no obligation whatsoever, either to the **Insureds** or to any other person or entity, to pay all or any portion of such Deductible on behalf of any **Insured**, although the **Insurer** will, at its sole discretion, have the right and option to do so, in which event the **Insureds** agree to repay the **Insurer** any amounts so paid within thirty (30) days of demand for payment by the **Insurer**.  The Deductible shall be included in, and shall not be in addition to, the applicable Limit of Liability, and payment of the Deductible shall reduce such Limit of Liability.

4.     In the event a **Claim** is first made against the **Insured** during the **Policy Period** that involves more than one (1) Insuring Agreement hereunder, it is understood and agreed that only one (1) Deductible and one (1) Limit of Liability will apply to such **Claim,** which shall be the highest applicable per **Claim** Limit of Liability set forth in Item 3. of the Declarations and the Deductible corresponding to such Limit of Liability.  This provision shall not apply in the event that the **Claim** involves **Sexual Misconduct** at any stage of the **Claim**, in which event the sole coverage available under this Policy is pursuant to Insuring Agreement D. and Item 3(d) of the Declarations Page.

5.     All **Insureds** under this Policy share in the applicable Limit of Liability.  In no event will the number of **Insureds** involved in a **Claim** increase the Limit of Liability.

6.  If a **Claim** involves this Policy and any other policy issued by the **Insurer**, its predecessor, or any of the **Insurer's** affiliated companies or their predecessors, the Limits of Liability which will apply to such **Claim** will be a single Limit of Liability, which shall be the highest applicable per **Claim** limit available under all such policies. In no event will more than one policy issued by the **Insurer** respond to a **Claim,** and the single policy responding to such **Claim** shall be the Policy in force at the time the earliest act, error, omission or **Occurrence** giving rise to such **Claim** took place, consistent with Section IV.D. below, "Related Acts Deemed Single Act."

**B.    Reporting of Claims and Circumstances**

1.  With respect to Insuring Agreements I.A., I.C., and I.D., the following shall apply:

   a.  If, during the **Policy Period** or any applicable Extended Reporting Period, any **Claim** is first made against any **Insured**, the **Insureds** must, as a condition precedent to any right to coverage under this Policy, give the **Insurer** written notice of such **Claim** as soon as practicable thereafter, and in no event later than:

      i.   with respect to a **Claim** first made during the **Policy Period**, thirty (30) days after the Expiration Date; or

      ii.  with respect to a **Claim** first made during an Extended Reporting Period, thirty (30) days after such **Claim** is first made.

   Timely and sufficient notice by one **Insured** of a **Claim** or **Related Claims** shall be deemed timely and sufficient notice for all **Insureds** involved in the **Claim** or **Related Claims**.  Such notice shall give full particulars of the **Claim** or **Related Claims**, including, without limitation, a description of the acts, errors or omissions, the identities of the potential claimants and involved **Insureds**, the injury or damages which have resulted and/or may result from such acts, errors or omissions, and the manner in which the **Insured** first became aware of such acts, errors or omissions.

   b.  If, during the **Policy Period**, an **Insured** first becomes aware of any acts, errors or omissions which may subsequently give rise to a **Claim**, and:

      i.   gives the **Insurer** written notice of such acts, errors or omissions with full particulars as soon as practicable thereafter, but in any event before the end of the **Policy Period**; and

      ii.  requests coverage under this Policy for any **Claim** subsequently arising from such reported acts, errors or omissions as soon as practicable after such **Claim** is made;

   then any **Claim** subsequently made against the **Insured** arising out of such acts, errors or omissions shall, subject to Condition C. below, be treated as if it had been first made during the **Policy Period**. The full particulars required in any notice given under this Condition B.1.b. above must include, without limitation, a description of the acts, errors or omissions, the identities of the potential claimants and involved **Insureds**, the injury or damages which have resulted and/or may result from such acts, errors or omissions, the manner in which the **Insured** first became aware of such acts, errors or omissions, and the reasons why the **Insured** believes a **Claim** is likely to be made.  The **Insured's**

conducting of internal loss control activities will not constitute reporting under this Condition B.1.b.

2.    With respect to Insuring Agreement I.B., OCCURRENCE-BASED GENERAL LIABILITY, the following shall apply:

a.    The **Insured** must see to it that the **Insurer** is immediately notified in writing of any **Claim,** and must see to it that the **Insurer** is notified as soon as practicable in writing of an **Occurrence** that may result in a **Claim**.  To the extent possible, such notice should include, without limitation: a description of the nature, time and place of the **Occurrence;** the identities of the potential claimants, any witnesses and involved **Insureds**; and the injury or damages which have resulted and/or may result from such **Occurrence**.

b.    The **Insureds** also must:

i.     immediately send the **Insurer** copies of any demands, notices, summonses or legal papers received in connection with the **Claim**;

ii.    authorize the **Insurer** to obtain records and other information;

iii.   cooperate with the **Insurer** in the investigation, defense or settlement of the **Claim**; and

iv.    assist the **Insurer**, upon the **Insurer's** request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this Policy may also apply.

**C.    Related Claims Deemed Single Claim; Date Claim Made**

All **Related Claims**, whenever made, shall be deemed to be a single **Claim** and shall be deemed to have been first made on the earliest of the following dates:

1.    the date on which the earliest **Claim** within such **Related Claims** was received by an **Insured**; or

2.    the date on which written notice was first given to the **Insurer** of an act, error, omission or **Occurrence** which subsequently gave rise to any of the **Related Claims**, regardless of the number and identity of claimants, the number and identity of **Insureds** involved, or the number and timing of the **Related Claims**, and even if the **Related Claims** comprising such single **Claim** were made in more than one **Policy Period**.

**D.    Related Acts Deemed Single Act**

1.    With regard to Insuring Agreement 1.A., CLAIMS MADE PROFESSIONAL LIABILITY, all damages arising from the same or related acts, errors or omissions, or involved individuals are considered to arise out of a single **Medical Incident**.  Such **Medical Incident** will be deemed to have first taken place at the time the first **Claim** seeking such damages is made and reported in accordance with Condition B.1.

2.    With regard to Insuring Agreement I.B., OCCURRENCE-BASED GENERAL LIABILITY, all damages arising from the same or related accidents, acts, offenses, publications or general conditions are considered to arise out of a single **Occurrence**, regardless of the frequency or repetition thereof, the type of damage at issue, or the number of claimants.  Such **Occurrence** will be deemed

to have first taken place at the time the first such accident, act, publication or general condition occurs.

3.  With regard to Insuring Agreement I.C., CLAIMS MADE EMPLOYEE BENEFITS LIABILITY, all damages arising from the same or related acts, errors or omissions in the **Insured's Administration** of its **Employee Benefit Program** are considered to arise out of a single act, error or omission.  Such act, error or omission will be deemed to have first taken place at the time the first **Claim** seeking such damages is made and reported in accordance with Condition B.1.

4.  With regard to Insuring Agreement I.D., CLAIMS MADE SEXUAL MISCONDUCT, all damages arising from the same or related acts, errors or omissions are considered to arise out of a single act of **Sexual Misconduct**. Such **Sexual Misconduct** will be deemed to have first taken place at the time the first **Claim** seeking such damages is made and reported in accordance with Condition B.1.

**E.   Defense and Settlement of Claims**

1.  No **Insured** may incur any **Defense Expenses** or admit liability for or settle any **Claim** without the **Insurer's** written consent.  The **Insurer** will have the right to make investigations and conduct negotiations in the defense of any **Claim**, and to enter into such settlement of any **Claim**, as the **Insurer** deems appropriate.

2.  The **Insurer** will have no obligation to pay **Loss** or **Defense Expenses**, or to defend or continue to defend any **Claim** after the **Insurer's** Maximum Aggregate Limit of Liability, as set forth in Item 3(e) of the Declarations, has been exhausted by the payment of:

    a.  **Loss**, and

    b.  **Defense Expenses**

    If the **Insurer's** Maximum Aggregate Limit of Liability, as set forth in Item 3(e) of the Declarations, is exhausted by the payment of **Loss**, or by **Defense Expenses**, the premium will be fully earned.

**F.   Assistance and Cooperation**

In the event of a **Claim**, the **Insureds** shall provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests.  At the **Insurer's** request, the **Insureds** shall assist in:

1.  investigating, defending and settling **Claims**;

2.  enforcing any right of contribution or indemnity against a third party who may be liable to any **Insured**, and

3.  the conduct of actions, suits, appeals or other proceedings, including but not limited to, attending trials, hearings and depositions, securing and giving evidence, and obtaining the attendance of witnesses.

**G.   Inspection and Audit**

The **Insurer** will be permitted, but not obligated, to inspect the **Insured's** property and operations at any time, upon reasonable notice.  Neither the **Insurer's** right to make inspections nor the making of any such inspections shall constitute an undertaking, on behalf of or for the benefit of the **Insured** or others, to determine or warrant that such property and operations are safe.  The **Insurer** may examine and audit the **Insured's**

books and records at any time, upon reasonable notice, as far as such books and records relate to the subject matter of this Policy.

**H.     Subrogation**

In the event of any payment hereunder, the **Insurer** shall be subrogated to the extent of any payment to all of the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the **Insurer** effectively to bring suit in the **Insureds'** name. The **Insureds** shall do nothing that may prejudice the **Insurer's** position or potential or actual rights of recovery. The obligations of the **Insureds** under this Condition H. shall survive the cancellation or other termination of this Policy.

**I.     Other Insurance/Other Indemnification**

1.     This Policy shall be excess of and shall not contribute with:

    a.     any other insurance or plan or program of self-insurance (whether collectible or not), unless such other insurance or self-insurance is specifically stated to be in excess of this Policy; and

    b.     any contribution or indemnification to which an **Insured** is entitled from any entity other than another **Insured**.

This Policy shall not be subject to the terms of any other policy of insurance or plan or program of self-insurance.

2.     If any other policy or policies issued by the **Insurer** or any of its affiliated companies, or by any predecessors or successors of the **Insurer** or its affiliated companies, shall apply to any **Claim**, then the aggregate limit of liability with respect to all **Loss** covered under this Policy and all covered loss under such other policies shall not exceed the highest applicable limit of liability, subject to its applicable deductible or retention, that shall be available under any one of such policies, including this Policy. This Condition I.2. shall not apply with respect to any other policy which is specifically written as excess insurance over this Policy.

**J.     Mergers, Acquisitions, or Newly Created Entities**

If, during the **Policy Period**, any of the following events occurs:

1.     any **Insured Entity** acquires any assets or revenues, acquires a **Subsidiary**, or acquires any entity by merger and, at the time of such transaction, the assets or revenues so acquired or the assets or revenues of the entity so acquired exceed fifteen (15%) of the total assets or revenues of the **Insured Entity** as reflected in the **Insured Entity's** most recent consolidated financial statements; or

2.     any **Insured Entity** assumes any liabilities and, at the time of such assumption, the liabilities so assumed exceed fifteen percent (15%) of the total liabilities of the **Insured Entity** as reflected in the **Insured Entity's** most recent consolidated financial statements;

then for a period of sixty (60) days after the effective date of such event, the coverage granted by this Policy shall extend to any **Claims** arising out of covered acts, errors, omissions or **Occurrences** that take place after the effective date of such event and arise out of or relate to the entity, assets, revenues or liabilities acquired, assumed or merged with. After the expiration of such sixty (60) day period, there shall be no coverage under this Policy for such **Claims** unless:  (a) within such sixty (60) day period, the **Insurer**

receives from the **Named Insured** such information regarding details of the transaction as the **Insurer** requests and;  (b) the **Insurer** specifically agrees by written endorsement to this Policy to provide such coverage upon such terms, conditions and limitations, including payment of additional premium, as the **Insurer**, at its sole discretion, may require.

**K.** **Sales or Dissolution of Insured Entities; Cessation of Business**

1. If, during the **Policy Period**:

   a. the **Named Insured** is dissolved, sold, acquired by, merged into or consolidated with another entity such that the **Named Insured** is not the surviving entity, or such that any person, entity or affiliated group of persons or entities obtains:

      i. the right to elect or appoint more than fifty percent (50%) of the **Named Insured's** directors, trustees or member managers, as applicable; or

      ii. more than fifty percent (50%) of the **Named Insured's** equity or assets;

   b. the **Named Insured** ceases to do business for any reason; or

   c. a receiver, liquidator, conservator, trustee, rehabilitator or similar administrator is appointed for the **Named Insured**;

   then in any such event (any of which events is referred to in this Condition K. as a "Material Event"), coverage under this Policy for all **Insureds** shall continue in full force and effect until the Expiration Date or any earlier cancellation date, but this Policy shall apply only to covered acts, errors or omissions committed or allegedly committed before such Material Event.  There will be no coverage under this Policy with respect to any **Claim** against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any covered acts, errors or omissions committed or allegedly committed on or after the date of such Material Event.

2. If, during the **Policy Period**, any **Insured Entity** other than the **Named Insured** is involved in a Material Event, coverage under this Policy for covered acts, errors or omissions committed or allegedly committed before such Material Event by such **Insured Entity** or the **Insured Persons** associated with such **Insured Entity** shall continue in full force and effect until the Expiration Date or any earlier cancellation date. There will be no coverage under this Policy with respect to any **Claim** against such **Insured Entity** or the **Insured Persons** associated with such **Insured Entity** based upon, arising out of, directly or indirectly resulting from, in consequence of or involving any way involving any covered acts, errors or omissions of such **Insured Entity** or the **Insured Persons** associated with such **Insured Entity** which are committed or allegedly committed on or after the date of such Material Event.  Coverage under this Policy shall continue in full force and effect for all other **Insureds**.

**L.** **Cancellation or Non-Renewal**

1. The **Insurer** may cancel this Policy by mailing written notice to the **Named Insured** at the last known address stated in Item 1. of the Declarations stating when, no less than sixty (60) days thereafter or such longer period as may be required by law, such cancellation shall be effective.  However, in the event the **Insured** fails to pay a premium when due, the **Insurer** may cancel this Policy

effective upon ten (10) days' written notice, or such longer period as may be required by law, by providing notice to the **Named Insured** in the manner set forth in the preceding sentence.

2.      The **Named Insured** may cancel this Policy prospectively only by mailing the **Insurer** written notice stating when thereafter such cancellation shall be effective.   In such event, the earned premium will be the greater of: (a) the amount calculated in accordance with the customary short rate table and procedure; or (b) the amount calculated in accordance with the Minimum Earned Premium percentage stated in Item 8. of the Declarations.

3.      Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4.      The **Insurer** will not be required to renew this Policy upon its expiration.

**M.      Extended Reporting Periods**

If this Policy is canceled for any reason other than non-payment of premium or is not renewed by the **Insurer**, an Extended Reporting Period shall be made available to the **Named Insured** as described in this Condition M.; however, any such Extended Reporting Period shall apply only to **Claims** which arise out of **Medical Incidents**, acts, errors, omissions, **Occurrences** or offenses taking place before the effective date of such cancellation or non-renewal ("Termination Date").

No Extended Reporting Period shall in any way increase the Limits of Liability stated in Item 3. of the Declarations, and the **Insurer's** Maximum Aggregate Limit of Liability for all **Loss** and **Defense Expenses** from all **Claims** first made during the **Policy Period** or any Extended Reporting Period shall not exceed the Maximum Aggregate Limit of Liability stated in Item 3(e) of the Declarations.   The offer of renewal terms, conditions, limits of liability, retentions or premium different from those in effect prior to renewal shall not constitute cancellation or refusal to renew for purposes of this Condition M. The Extended Reporting Period will apply as follows:

1.      The **Named Insured** shall be entitled to an automatic Extended Reporting Period of sixty (60) days, beginning as of the Termination Date and requiring no additional premium; provided, however, that such automatic Extended Reporting Period will remain in effect only as long as no other policy of insurance is in effect that would apply to any **Claim** made during such Extended Reporting Period.

2.      The **Named Insured** may purchase an additional Extended Reporting Period for the period of time stated in Item 9. of the Declarations by notifying the **Insurer** in writing of its intention to do so no later than thirty (30) days after the Termination Date.   The additional premium for this additional Extended Reporting Period shall be equal to the amount stated in Item 9. of the Declarations and must be paid no later than thirty (30) days after the Termination Date.

If the **Named Insured** does not elect to purchase an additional Extended Reporting Period as described in Condition M.2. above or fails to pay the additional premium therefore within thirty (30) days after the Termination Date, the **Named Insured** will not have any right to purchase an additional Extended Reporting Period at a later time. Failure to elect to purchase an additional Extended Reporting Period or to pay the additional premium therefore will not affect the application of the automatic Extended Reporting Period described in Condition M.1 above.

**N.**     **Representations and Warranties; Incorporation of Application**

The **Insureds** represent and warrant that the particulars and statements contained in the **Application** attached to this Policy are true, accurate and complete, and agree that:

1.       this Policy is issued and continued in force by the **Insurer** in reliance upon the truth of such representation;

2.       those particulars and statements are the basis of this Policy; and

3.       the **Application** and those particulars and statements are incorporated in and form a part of this Policy.

No knowledge or information possessed by any **Insured** shall be imputed to any other **Insured** for purposes of this Condition N., except for material facts or information known to the person or persons who signed the **Application**.  In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the **Application**, this Policy shall be void with respect to any **Insured** who knew of such untruth, misrepresentation or omission, or to whom such knowledge is imputed.

**O.**     **Action against Insurer**

1.       No action shall lie against the **Insurer** unless, as conditions precedent thereto, the **Insureds** have fully complied with all of the terms of this Policy and the amount of the **Insureds'** obligation to pay has been finally determined either by judgment against the **Insureds** after adjudicatory proceedings, or by written agreement of the **Insureds**, the claimant and the **Insurer**.

2.       No individual or entity shall have any right under this Policy to join the **Insurer** as a party to any **Claim** to determine the liability of any **Insured**; nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in connection with any such **Claim**.

**P.**     **Insolvency of Insured**

The **Insurer** shall not be relieved of any of its obligations under this Policy by the bankruptcy or insolvency of any of the **Insureds** or any of their estates.

**Q.**     **Notice**

1.       Notice to any **Insured** shall be sent to **Named Insured** at the address designated in Item 1. of the Declarations.  The **Insureds** agree that the **Named Insured** shall act on their behalf with respect to receiving any notices and any return premiums from the **Insurer**.

2.       Notice to the **Insurer** shall be sent to the address designated in Item 6. of the Declarations.

**R.**     **Sanctions**

The **Insurer** shall not be deemed to provide cover nor be liable to pay any claim or provide any benefit under this Policy to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the **Insurer** to any sanction, prohibition or restitution, including under United Nations resolutions, or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

**S.**     **Changes**

Notice to or knowledge possessed by any agent or other person acting on behalf of the **Insurer** shall not affect a waiver or change in any part of this Policy or estop the **Insurer**

from asserting any right under this Policy. This Policy can be altered, waived or changed only by written endorsement issued to form a part of this Policy.

**T.      Assignment**

No assignment of interest under this Policy shall bind the **Insurer** without its written consent issued as an endorsement to form a part of this Policy.

**U.      Entire Agreement**

The **Insureds** agree that this Policy, including the **Application**, Declarations and any endorsements, constitutes the entire agreement between them and the **Insurer** or any of the **Insurer's** agents relating to this insurance.

**V.      Headings**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be executed on the Declarations Page.**