Fulton County Superior Court
***EFILED***QW
Date: 2/3/2021 2:11 PM
Cathelene Robinson, Clerk



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

|  |  |
|---|---|
| _____ | ) Case **2021CV345360** |
|  | ) No.:_____ |
|  | ) |
| _____ | ) |
| **Plaintiff,** | ) |
|  | ) |
| **vs.** | ) |
|  | ) |
| _____ | ) |
|  | ) |
| _____ | ) |
| **Defendant** | ) |
|  | ) |
|  | ) |
|  | ) |

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb and serve upon plaintiff's attorney, whose name and address is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____**3rd**_____ day of **February**, 20 **21**___

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By _____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**

"Ex. B - p.1"

Fulton County Superior Court
***EFILED***TB
Date: 2/3/2021 3:48 PM
Cathelene Robinson, Clerk

**General Civil and Domestic Relations Case Filing Information Form**

☒ **Superior** or ☐ **State Court of** <u>Fulton</u>   **County**

| For Clerk Use Only | | |
|---|---|---|
| Date Filed <u>02/02/2021</u>  **MM-DD-YYYY** | Case Number <u>202CV345360</u> | |

**Plaintiff(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| A. | A. | D. | | |
| G. | G. | | | |
| D. | S. | | | |
| See Addendum | A attached | | | |

**Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Xytex Corporation | | | | |
| Xytex Cyro International, Ltd. | | | | |
| Hartley | Mary | | | |
| See Addendum | A attached | | | |

**Plaintiff's Attorney** <u>James F. McDonough, III.</u>   **State Bar Number** <u>117088</u>   **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☒ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
**Case Number**              **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

"Ex. B - p.2"

# ADDENDUM "A"

**Additional Plaintiff's:**

E.K.
J.M.R.
J.R.R.
L.S.F.
K.L.K.
M.J.S.
M.J.P.
M.M.H.
R.D.
P.J.H.

**Additional Defendant's:**

Mary Hartley, an individual
Doe 1
Doe 2
Doe 3
Doe 4
Doe 5
Doe 6
Doe 7
Doe 8
Doe 9
Doe 10
Doe 11
Doe 12
Doe 13
Doe 14
Doe 15
Doe 16
Doe 17
Doe 18
Doe 19
Doe 20
Doe 21
Doe 22
Doe 23
Doe 24
Doe 25

Fulton County Superior Court
***EFILED***QW
Date: 2/3/2021 2:11 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

2021CV345360

| | |
|---|---|
| A.D.A., G.G., S.K., E.K., J.M.R., J.R.R., L.S.F., K.L.K., M.J.S., M.J.P., M.M.H., R.D., and P.J.H., individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> XYTEX CORPORATION, a Georgia Corporation; XYTEX CRYO INTERNATIONAL LTD., a Georgia Corporation; J. TODD SPRADLIN, M.D., an individual; MARY HARTLEY, an individual; and DOES 1-25, inclusive, <br><br> Defendants.. | **COMPLAINT FOR DAMAGES** <br><br> (1) FRAUD <br><br> (2) NEGLIGENT MISREPRESENTATION <br><br> (3) PRODUCTS LIABILITY – STRICT LIABILITY <br><br> (4) PRODUCTS LIABILITY – NEGLIGENCE <br><br> (5) BREACH OF EXPRESS WARRANTY <br><br> (6) BREACH OF IMPLIED WARRANTY <br><br> (7) BREACH OF CONTRACT <br><br> (8) NEGLIGENCE <br><br> (9) GEORGIA FAIR BUSINESS PRACTICES ACT <br><br> (10) SPECIFIC PERFORMANCE <br><br> (11) FALSE ADVERTISING <br><br> (12) PROMISSORY ESTOPPEL <br><br> (13) UNJUST ENRICHMENT |

## **COMPLAINT**

Come now Plaintiffs A.D.A., G.G., S.K., E.K., J.M.R., J.R.R., L.S.F., K.L.K., M.J.S.,

M.J.P., M.M.H., R.D., and P.J.H. and demand a jury trial and plead as follows:

## **PARTIES**

1

1.      Plaintiffs, A.D.A. and G.G., reside in Gatineau, Quebec and have one child, A.A.G., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

2.      Plaintiffs, S.K. and E.K., reside in Edmonton, Alberta and have one child, L.K., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

3.      Plaintiffs, J.M.R. and J.R.R., reside in Tecumseh, Ontario and have one child, Z.J.R., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

4.      Plaintiffs, L.S.F. and K.L.K., reside in Hamilton, Ontario and have one child, O.K., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

5.      Plaintiffs, M.J.S. and M.J.P., reside in Newfoundland and have one child, H.M.S.P., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

6.      Plaintiffs, M.M.H. and R.D., reside in Kelowna, British Colombia, and have one child, J.D., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

7.      Plaintiff, P.J.H., resides in Keswick, Ontario and has one child, S.A.H., who was conceived as a result of her purchase of semen from Defendant Xytex Corporation.

8.      Defendant Xytex Corporation ("Xytex" or "Xytex Corporation") is a corporation with its principal place of business in Atlanta, Georgia. Xytex Corporation is a for-profit seller of human semen. Plaintiffs acquired human semen for artificial insemination, and at all times relevant herein, all Plaintiffs were sold human semen by Defendant Xytex Corporation.

9.      Defendant Xytex Cryo International LTD ("Xytex International") is a corporation organized and existing under the laws of the state of Georgia.  Xytex International is a business that, at all times relevant, sold human semen to Plaintiffs through its subsidiary, Defendant, Xytex

2

Corporation. The selling and promotion of such human semen included, but was not necessarily limited to, the testing, collection, promotion, advertising, marketing, sales, and distribution of donor semen. Additionally, Xytex International, through Defendant Xytex Corporation, supervised and coordinated the evaluation and selection of semen donors, the collection of which was advertised, marketed, sold, and promoted as a carefully curated group of extraordinarily smart, educated, and healthy persons.

10.     Defendant, J. Todd Spradlin, M.D. and Does 1 through 10, are, and were at all times relevant herein, employees, agents, owners, directors, and/or doctors, physicians, medical professionals, examiners, and assistants who were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International.

11.     Defendant, Mary Hartley, and Does 11 through 15, are, and were at all times relevant herein, employees, agents, owners, and/or directors who worked at, or were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International. Defendant Mary Hartley, and Does 1 through 10, also recruited Donor #3116, and promoted Donor #3116 to all Plaintiffs through various mediums, on various dates, in various ways.

12.     Defendants, Does 16 through 20, are, and were at all times relevant herein, distributors of donor semen, and/or companies, entities, or corporations that assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to all Plaintiffs for purposes of artificial insemination.

13.     Defendants, Does 21 through 25, are, and were at all times relevant herein, persons who assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to all Plaintiffs for purposes of artificial insemination.

3

14.     Plaintiffs do not know the true names of the defendants sued herein as Does 1 through 25, inclusive.   Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused injuries and damages to all Plaintiffs as set forth herein.

15.     All Defendants herein acted as the agent, servant, and employee and/or in concert with each of the other said Defendants in doing the acts herein alleged. Defendants named herein and Does 1 through 25 are referred to hereinafter collectively as "Defendants".

## FACTUAL ALLEGATIONS

16.     Xytex International, through its subsidiary, the Xytex Corporation, sells human semen for the purposes of artificial insemination. The Xytex Corporation's website declared at all relevant times that it is "an industry leader in reproductive services with a commitment to unsurpassed quality controls," and that the donors' personal health and family history are carefully screened through a comprehensive medical process developed by the U.S. Centers for Disease Control and Prevention. Additionally, the website proclaimed that the Corporation's "FDA-mandated screening and testing also ensures our donors' continued good health."

17.     In addition, at all relevant times, the website for the Xytex Corporation made the following claims and representations regarding the examination, screening, and qualification of sperm donors:

(a)     Fewer than 5% of applicants actually became Xytex sperm donors.

(b)     All applicants went through the same rigorous qualification procedure.

(c)     Applicants were subjected to a thorough initial evaluation, and they were subsequently required to submit to "periodic updates throughout the year."

4

(d)     Trained counselors subjected all applicants to extensive interviews that were focused on the applicants' personality, behavior, and health.

(e)     Applicants underwent a comprehensive physical exam for physical abnormalities and evidence of infectious diseases, and samples of applicants' semen, urine, and blood were collected for laboratory analysis.

(f)     The Xytex medical director reviewed all of the medical information in a process that took about two months to complete.

(g)     Xytex's procedure for qualifying a donor was very intense and arduous, and generated voluminous medical, psychological, genetic and social information about donors and their families.

(h)     Xytex exceeded its professional and ethical responsibilities, as the quality of its clinical services were validated by state and national government agencies.

(i)     All Xytex donors "are enrolled in or have graduated from some of the country's premier universities and medical schools."

(j)     When a donor participated in the semen donation program, Xytex required him to undergo repeated lab testing for infectious diseases.

(k)     Every six months, donors were subjected to additional physical examinations, and they were required to update their medical history.

(l)     If there were any change in a donor's status, Xytex would update the donor's profile with the new information.

(m)     When Xytex "learns new information about a donor (either from the donor or from a recipient of his semen) that is deemed medically significant by the Medical Director, a

5

notice is sent to the inseminating doctor and to any patient who used semen from the donor."

18.     These statements from Xytex, included as part of the paragraph above, constitute some of, but not all, of the representations made by Defendants.

19.     Plaintiffs understood that Xytex Corporation intended to promise and represent to plaintiffs and the public that it would exercise the utmost care to screen, investigate, and vet the medical, psychological, educational, and family history of its donors. As Xytex stated, it wanted its "clients to make the most informed decision possible when selecting a donor." Xytex declared that it was "about people and creating families," and that purchasers would "receive the best possible match to a Xytex donor."

20.     Defendants published a profile for Donor #3116 stating that they had carefully screened the Donor through a comprehensive medical process, which was false. In this case, Defendants failed to exercise reasonable care to screen, investigate, and vet the medical, psychological, educational, and family history of Donor #3116, and further failed to, and continue to fail to, share with parents, families, and purchasers and users of the sperm of Donor #3116 that many of his offspring have genetic abnormalities.

21.     Defendants stated via their websites and materials, and in the statements that they made directly to the Plaintiffs, that Donor #3116 had the following characteristics:

•     He had an advanced educational degree.

•     He was a cytogeneticist.

•     He had an impressive health history.

•     He did not have any genetic abnormalities.

6

22.     Plaintiffs relied on each of the claims, promises, and representations above in deciding to purchase the semen of Donor #3116 and to conceive children using this sperm.

23.     These statements were false. The truth about Donor #3116 is, and was, the following:

(a)     He does not possess any advanced degrees.

(b)     He is not a cytogeneticist, which would require advanced degrees and education.

(c)     He worked as a lab technician.

(d)     He had and has genetic abnormalities, including but not limited to, Charcot Marie Tooth Disease ("CMT1").

24.     Donor #3116 had and has hallmark visual presentations for CMT1. Unbeknownst to Plaintiffs, photographs of Donor #3116 available to Defendants before they sold Donor #3116's semen to Plaintiffs and others showed that he had the hallmark visual traits which would show that he likely suffered from CMT1.

25.     Defendants stated that the childhood and adult photographs of Donor #3116 were accurate and authentic. These photographs possessed by Defendants – as well as the ability to observe him during the process of qualifying him as a donor – made his genetic medical condition apparent to someone conducting a reasonably careful procedure for qualifying a sperm donor.

26.     Donor #3116 was approved and promoted by Defendants to be a suitable and highly desirable sperm donor, despite having heritable genetic abnormalities, including CMT1.

27.     Defendants promoted Donor #3116 as a highly educated person, with advanced degrees, despite the fact that this was false. They had no basis to make these claims and performed no investigation to confirm them.

28.   Defendants promoted Donor #3116 as a cytogeneticist, when in fact he was a lab technician. They had no basis to make these claims and performed no investigation to confirm them.

29.   Furthermore, Defendants promoted, marketed, and sold sperm of Donor #3116 without performing genetic testing to rule out CMT1, despite Donor #3116 having obvious hallmark presentations for CMT1. Despite substantial evidence to the contrary, Defendants promoted Donor #3116 as having no genetic abnormalities, and no family history of genetic abnormalities. If Defendants had conducted a thorough examination, review, and investigation as they promised, they would have learned that the claims they made about his medical, educational, and family history were false.

30.   As a result of Defendants' failures, and based upon Defendants misrepresentations, Plaintiffs purchased vials of Donor #3116's sperm.

31.   Plaintiffs, and each of them, had children, herein above named, from the sperm of Donor #3116.

32.   On February 8, 2019, J. Todd Spradlin, M.D., the Chief Medical and Laboratory Director at Xytex sent a letter to Plaintiffs via email stating, in part:

> "Recently, we have learned that Donor 3116 is likely a carrier of a chromosome abnormality, which we feel would have increased risk to the offspring of this donor."

> "[W]e feel it is *highly likely* that donor 3116 does carry this microduplication and could pass it on to other offspring."

33.   On February 11, 2019, J. Todd Spradlin, M.D., the Chief Medical and Laboratory Director at Xytex sent an additional letter to Plaintiffs via email stating, in part:

> "[W]e have learned that Donor 3116 is a carrier of a chromosome duplication which does have risk implications to other offspring. More specifically, the donor was

8

confirmed to have 1.33 Mb microduplication within the short arm of chromosome 17 at band p12."

"The donor's specific duplication includes 4 known genes (HS3ST3B1, TEKT2, PMP22, and COX10). Of these genes, the only one known to be clinically relevant is PMP22. Duplications of the PMP22 gene, located in this region, have been associated with Charcot-Marie-Tooth disease type 1a (CMT1a), a neurological condition characterized by distal muscle weakness and atrophy, sensory loss, and slow nerve conduction velocity."

34.     Plaintiffs' children have since been diagnosed with genetic abnormalities, including those associated with Charcot-Marie-Tooth disease, as follows:

(a)     A.A.G., the child of Plaintiffs A.D.A. and G.G., has undergone genetic testing and is positive for CMT1 requiring extensive treatment.

(b)     L.K., the child of Plaintiffs S.K. and E.K., has undergone genetic testing and is positive for CMT1 requiring extensive treatment.

(c)     Z.J.R., the child of Plaintiffs J.M.R. and J.R.R., has undergone genetic testing and has the genetic mutation for CMT1.

(d)     O.K., the child of Plaintiffs L.S.F. and K.L.K., has undergone genetic testing and is positive for CMT1 requiring extensive treatment.

(e)     It is unknown at this time if H.M.S.P., the child of M.J.S. and M.J.P., has any genetic abnormalities and/or disorders and/or diseases. Should any genetic abnormalities and/or disorders and/or diseases develop, Plaintiffs will be required to expend funds to evaluate and care for H.M.S.P.

(f)     It is unknown at this time if J.D., the child of M.M.H. and R.D., has any genetic abnormalities and/or disorders and/or diseases. Should any genetic abnormalities and/or disorders and/or diseases develop, Plaintiffs will be required to expend funds to evaluate and care for J.D.

(g)     It is unknown at this time if S.A.H, the child of P.J.M., has any genetic abnormalities and/or disorders and/or diseases. Should any genetic abnormalities and/or disorders and/or diseases develop, Plaintiff will be required to expend funds to evaluate and care for S.A.H.

35.     Although Defendants' represented, promised, and agreed that they would inform sperm purchasers when Xytex and Defendants learned or discovered significant information about their sperm donor, Defendants did not disclose all information in a timely manner. Xytex has and continues to withhold from Plaintiffs and other purchasers of Donor #3116's semen that offspring of Donor #3116 have been diagnosed with genetic abnormalities, including CMT1. Despite all that Xytex knew or should have known, Defendants have not provided Plaintiffs information about genetic abnormalities in the offspring of Donor #3116, and how these abnormalities could affect the health of Plaintiffs' children. Defendants have a pattern and practice of withholding and hiding information from families and purchasers of sperm when important information comes to light concerning a Donor, including in this case and other cases involving other Sperm Donors, including Donor #9623 and Donor #4834. Defendants have failed to honor their promise and agreement to inform sperm purchasers of significant health and medical information that it discovers at any time about a donor, and have thereby mislead, misrepresented, and harmed Plaintiffs and other purchasers of sperm.

36.     Defendants, in the interest of business, including profit, image, and reputation, made false statements to Plaintiffs and other purchasers of semen, withheld crucial information that was important medical information for Plaintiffs and their children, and misrepresented to the public and other purchasers of sperm about Donor #3116 and Defendants' business practices. Defendants, and Xytex, recklessly pursued commercial motives without any consideration for the

10

lives they were destroying. Defendants acted with malice, fraud and oppression and conscious and reckless disregard for the safety of the public, and the persons who purchased sperm from Donor #3116, including Plaintiffs herein.

## DAMAGES

37.     As a direct and proximate result of Defendants' conduct as set out above, each Plaintiff has suffered compensable injury as follows:

(a)     The purchase cost of semen paid to Xytex;

(b)     The cost of medical care incurred for diagnosis and treatment of their children's developmental disorders and conditions;

(c)     The cost of future medical care reasonably necessary and likely to be incurred for treatment of their children's developmental disorders and conditions;

(d)     The parents' discomfort, inconvenience, annoyance, pain, suffering, anxiety, depression, trauma, and emotional distress that naturally resulted from Defendants' wrongful acts as set out above, and the physical and emotional difficulty of raising children with genetic disorders.

(e)     Except to the extent as may be allowed under Georgia law in the future, plaintiffs do not seek damages measured by the difference between their children's impaired lives and the theoretical "non-existence" of their children.

## FIRST CAUSE OF ACTION
### (Intentional Misrepresentation - Fraud)
### (Against ALL Defendants)

38.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

11

39.     In making the representations set forth herein and withholding and concealing material information, Defendants knew the statements to be false and/or incomplete or were reckless in asserting the representations as true or concealing material information.

40.     Defendants made these false statements and concealed material facts with the intent of inducing Plaintiffs to rely upon said representations and to purchase the sperm of Donor #3116.

41.     Plaintiffs reasonably relied on Defendants' representations in deciding to purchase sperm from Xytex, and Defendants, and, in particular, in deciding to purchase sperm of Donor #3116.

42.     Had Plaintiffs known the true facts, Plaintiffs would not have purchased the sperm of Donor #3116 from Defendants, and Plaintiffs have been harmed as a result of Defendants' deceit and fraud.

43.     All Defendants, and each of them, acted with fraud, malice and oppression and all Plaintiffs are thereby entitled to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against all DEFENDANTS as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
### (Against ALL Defendants)

44.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

45.     Defendants represented to Plaintiffs that the representations set forth herein were true and complete when they were not true and complete. Defendants had no reasonable grounds for believing them to be true and complete when they made the representations in that Defendants had not made reasonable inquiry to ascertain their truth.

12

46.    Defendants intended that Plaintiffs rely on said representations and Plaintiffs reasonably relied on said representations and said reliance was a substantial factor in causing all Plaintiffs' harm.

47.    Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that raises the presumption of conscious indifference to consequences. Plaintiffs are thereby entitled to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (Products Liability/Strict Liability)
### Against ALL Defendants

48.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

49.    The semen sold and supplied by Defendants, and each of them, was defective and unsafe at the time it was distributed and used by Plaintiffs in that it was defective as it contained abnormal genetic material about which no warnings were given. These defects caused serious injuries to the user when used as intended and in a foreseeable manner and defendants knew it would be used without inspection.

50.    The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or scientifically knowable at the time of distribution. Defendants and each of them failed to warn of potential injury and the statistical likelihood that offspring produced by the semen would have genetic abnormalities, including CMT1, or other medical conditions.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

13

## FOURTH CAUSE OF ACTION
### (Products Liability/Negligence)
### Against ALL Defendants

51.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

52.     At all times herein mentioned, Defendants, and each of them, had a duty to properly test, analyze, inspect, research, distribute, evaluate, review, recommend and provide proper warnings and sell the aforesaid product for its intended and approved use.

53.     At all times relevant herein mentioned, Defendants, and each of them, knew that the product was of such a nature that if it were not properly tested, inspected, labeled, distributed, reviewed, evaluated, marketed, promoted, and recommended, it was likely to injure users.

54.     Defendants and each of them breached their duty by negligently and carelessly recommending, promoting, failing to test, failing to review, failing to evaluate, failing to inspect, and failing to research and acting negligently as set forth above and thereby caused all Plaintiffs' injuries and damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (Breach of Express Warranty)
### Against ALL Defendants

55.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

56.     Defendants, and each of them, made representations about the quality of the semen being sold to Plaintiffs, and presented themselves as experts in the determination of quality and

14

reliability of the said semen, and thereby created a warranty through their oral and written representations.

57.     Said Defendants breached their warranty and said breach caused all Plaintiffs' losses.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranty)
### Against ALL Defendants

58.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

59.     Defendants, and each of them, were the sellers of the semen and had reason to know the purpose to which it would be put by Plaintiffs and that Plaintiffs were relying upon said Defendants' expertise, and Plaintiffs so relied to their detriment and sustained the losses set forth herein.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract)
### Against ALL Defendants

60.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

61.     Plaintiffs and Defendants entered into a contract. Defendants promised and represented that they would exercise the utmost care to scrutinize the medical history of its donors, and further represented that Donor #3116 did not possess any genetic abnormalities, including

15

CMT1. Defendants further promised to provide in a timely manner all information relevant to the health of Donor #3116 and his offspring, regardless of when Defendants learned such information.

62.     Plaintiffs did all, or substantially all of the significant things that the contract required them to do, including paying Defendants in consideration for their promised performance. Plaintiffs, and each of them, tendered their performances by purchasing human sperm of Donor #3116 from the Xytex Corporation. All conditions required by the contract for Defendants' performance occurred.

63.     Defendants breached the contract by (i) failing to conduct a thorough screening and qualification process for Donor #3116; (ii) selling the sperm of a person, Donor #3116, who did not have the qualities and characteristics that Defendants said he had, and in fact, had genetic abnormalities, including CMT1; and (iii) failing to provide information to Plaintiffs in a timely manner about Donor #3116's health and the health of his offspring.

64.     Plaintiffs were harmed as a result of Defendants' breaches.

65.     Defendants' breach of the contract was a substantial factor in causing Plaintiffs' harm.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### EIGHT CAUSE OF ACTION
#### (Negligence)
#### Against ALL Defendants

66.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

67.     In doing the acts herein alleged, Defendants and each of them, acted carelessly and negligently and recklessly and caused Plaintiffs' injuries and damages thereby. In doing so, Defendants, and each of them, acted intentionally and with malice and with conscious disregard

16

for the health and safety of Plaintiffs, and the general public, thereby entitling the Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### NINTH CAUSE OF ACTION
### (Violation of Georgia Fair Business Practices Act)
### Against ALL Defendants

68.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

69.     Defendants engaged in unfair and deceptive acts or practices in consumer transactions involving the sale of goods and/or services mainly for personal, family or household purposes as prohibited by the Fair Business Practices Act (O.C.G.A. Sections 10-1-390 et seq.).

70.     In particular, Defendants:

(a) claimed falsely that goods or services were of a particular quality or grade by misrepresenting that Donor # 3116 was a suitable and healthy sperm donor who had been thoroughly screened vetted; and

(b) Advertising Donor # 3116 as a suitable and healthy sperm donor with the intent not to sell semen of Donor # 3116 as advertised.

71.     Plaintiffs were harmed as a result of the above-stated unfair and deceptive acts or practices.

### TENTH CAUSE OF ACTION
### (Specific Performance)
### Against ALL Defendants

72.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

17

73.     Plaintiffs are entitled to specific performance because there was (1) a legally enforceable agreement between all Plaintiffs and Defendants, which was sufficiently certain in its terms; there was (2) adequate consideration for the agreement, and it was a just and reasonable agreement; the (3) Plaintiffs, and each of them, tendered their performances by purchasing human sperm from the Xytex Corporation; the (4) Defendants breached the agreement because they have failed to honor their obligation to disseminate, to sperm purchasers, significant information that is discovered about a donor; and the (5) Plaintiffs have no adequate remedy at law because, in order to effectively treat and care for their children, they need to know as much as possible about Donor #3116. However, Plaintiffs cannot effectively treat their children while Defendants refuse to disseminate what they actually know, or could have known, to be true about Donor #3116.

74.     Before Plaintiffs purchased sperm from the Xytex Corporation, the Xytex Corporation and Defendants, said Defendants agreed to disseminate significant new information that they learned or discovered about a donor. Notwithstanding this promise, and the facts that have come to light regarding the offspring of Donor #3116, Defendants have repeatedly refused to disseminate to Plaintiffs important information. Further, Defendants have repeatedly refused in other instances, and other cases, to disseminate vital information received concerning a Donor.

75.     Thus, Defendants have breached the agreement, and because Plaintiffs have no adequate remedy at law, Defendants should be required to perform their obligations under the legally enforceable agreement and disseminate what they know about Donor #3116 to any and all purchasers of sperm that came from Xytex Donor #3116.

76.     Further, Defendants represent that the conduct complete or comprehensive medical histories, but they fail to obtain family history or conduct an independent review of medical history via records or other sources. Defendants should be required to verify medical histories and family

18

medical histories by methods including, but not limited to, *for example*, obtaining consents for medical records from its Donors and order and review all medical records to make sure the histories provided comport with the records and to make sure all relevant and important information is included in the Donor profile.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### (False Advertising)
### Against ALL Defendants

77.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

78.     Defendants, and each of them, presented false or misleading information about Donor #3116 and failed to obtain a complete medical history, family history from Donor #3116, thereby presenting false or misleading information that Donors are carefully screened through a comprehensive medical process, which was likely to cause confusion, mistake, or deception, and they misrepresented the nature, characteristics, and qualities of the product they provided and sold to the Plaintiffs, namely, sperm from Xytex Donor #3116.

79.     Plaintiffs were injured by these deceptive advertising practices, and now seek relief for their injuries.

80.     Defendants continue to make false and misleading statements about Donor #3116 to promote the sale of his semen, and such false advertising should be enjoined.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

19

## TWELFTH CAUSE OF ACTION
### (Promissory Estoppel)
### Against ALL Defendants

81.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

82.     As set forth herein, Defendants made certain promises to Plaintiffs regarding (a) Defendants' procedures for vetting, testing, investigating, analyzing, and approving sperm donors and offering sperm for sale; (b) the characteristics and qualities of Donor #3116 and his sperm; and (c) Defendants' ongoing procedures for updating sperm donor medical history and informing Plaintiffs of newly acquired information that would be relevant to the health of their children.

83.     The Defendants should have reasonably expected Plaintiffs to rely on such promises in purchasing and using for insemination the sperm of Donor #3116.

84.     Plaintiffs did, in fact, rely on such promises to their detriment.

85.     An injustice can be avoided only by the enforcement of the promises and/or compensation for the harm caused by Plaintiffs' detrimental reliance.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## THIRTEENTH CAUSE OF ACTION
### (Unjust Enrichment)
### Against ALL Defendants

86.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

87.     Defendants induced Plaintiffs to pay for the sperm of Donor #3116, which did not have the desirable qualities and characteristics as stated by Defendants and was unsuitable for insemination.

20

88.     Defendants have retained the financial benefit conferred by Plaintiffs. Defendants will be unjustly enriched and justice requires that they be compelled to disgorge the benefit conferred by Plaintiffs.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS SEEK RELIEF AS FOLLOWS:

1.     Pain and suffering according to proof;

2.     Financial losses according to proof;

3.     Attorneys' fees;

4.     Costs of suit;

5.     Medical Monitoring Fund;

6.     Injunctive Relief; and

7.     Punitive Damages.

## JURY DEMAND

Plaintiffs also hereby each demand a jury trial in this action.


DATED:  February 3, 2021


/s/ James F. McDonough, III
JAMES F. MCDONOUGH, III.
GA Bar No.:  117088
jmcdonough@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332

W. Lewis Garrison, Jr.
lewis@hgdlawfirm.com
Taylor C. Bartlett*
taylor@hgdlawfirm.com
HENINGER GARRISON DAVIS
2224 First Avenue North
Birmingham, AL 35203
Tel: 205-326-3336
Fax: 205-326-3332

NANCY HERSH*
MONTANA BAKER*
KATE HERSH-BOYLE*
HERSH & HERSH, P.C.
601 Van Ness Avenue
San Francisco, CA 94102
Tel: 415-441-5544
(* Admitted Pro Hac Vice)

Attorney for Plaintiffs

"Ex. B - p.25"