IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JENNIFER ONUSCHAK, | : | |
| Plaintiff, | : | Civil Action File No. |
| vs. | : | |
| KEY AUTISM SERVICES GA LLC, | : | |
| Defendant. | : | |

**COMPLAINT**

Plaintiff Jennifer Onuschak ("Onuschak") brings this Complaint against Defendant Key Autism Services GA LLC ("Key Autism"), and show the Court as follows:

**INTRODUCTION**

1.

This is an Equal Pay Act case.

2.

Key Autism employed Plaintiff as Registered Behavior Technician from June 8, 2022 through June 11, 2023 (hereinafter the "Relevant Time Period"). During her employment Key Autism paid her at a lower hourly

rate than it paid to male Registered Behavior Technicians in violation of the Equal Pay Act, 29 U.S.C. § 206(d).

## JURISDICTION AND VENUE

3.

This Court has original jurisdiction over the present action under Article III, §2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U.S.C §§ 1331 and 1337, because this case arises under the EPA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Key Autism conducts business within this judicial district and because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

5.

Onuschak is a natural person who resides in Douglas County, Georgia.

6.

Key Autism is a domestic limited liability company organized under

the laws of the State of Georgia.

7.

Key Autism is subject to the personal jurisdiction of this Court.

8.

At all times material hereto, Onuschak was an "employee" of Key Autism within the meaning of the 42 U.S.C. § 2000e(f)

9.

At all times material hereto, Key Autism was an "employer" of Onuschak within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

10.

Key Autism is subject to the personal jurisdiction of this Court.

11.

Key Autism may be served with process through its registered agent Registered Agents Inc at 300 Colonial Center Parkway, Suite 100N, Roswell, Georgia.

**FACTUAL ALLEGATIONS**

12.

Throughout 2022, Key Autism had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

13.

Throughout 2023, Key Autism had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

14.

Throughout the Relevant Time Period, Onuschak and other employees of Key Autism handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Key Autism including, but not limited to, office furniture, phones, computers, and office supplies.

15.

Throughout 2022, Key Autism had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

16.

Throughout 2023, Key Autism had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

17.

In 2022, Key Autism realized an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

18.

In 2023, Key Autism realized or is expected to realize an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

19.

Throughout the Relevant Time Period, Key Autism has been an “enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

20.

Key Autism employed Onuschak as a Registered Behavior Technician from June 8, 2022 through June 11, 2023.

21.

Onuschak is a female.

22.

Throughout the Relevant Time Period, Key Autism has engaged in a practice and pattern of discrimination on the basis of sex.

23.

Throughout the Relevant Time Period, Key Autism employed multiple Registered Behavior Technicians who were assigned to work at the same facility as the one that Onuschak worked at.

24.

Throughout the Relevant Time Period, Key Autism's compensation practice for Registered Behavior Technicians provided for payment of an hourly wage.

25.

Throughout the Relevant Time Period, Key Autism paid Onuschak at an hourly rate of $22.00 per hour.

26.

Throughout the Relevant Time Period, Key Autism paid Onuschak an hourly rate that was lower than the hourly rate of male Registered Behavior Technicians.

27.

Throughout the Relevant Time Period, Key Autism paid male Registered Behavior Technicians $3.00-$5.00 more per hour than it paid Onuschak.

28.

Throughout the Relevant Time Period, Key Autism paid at least three male Registered Behavior Technicians at higher hourly rates than it paid Onuschak.

29.

Throughout the Relevant Time Period, the higher hourly rates that Key Autism paid to male Registered Behavior Technicians was not due to a reasonable accommodation to an injured or disabled employee.

30.

Throughout the Relevant Time Period, the male Registered Behavior Technicians that Key Autism paid at a higher hourly rate than Onuschak did not have seniority over Onuschak.

31.

Throughout the Relevant Time Period, the male Registered Behavior Technicians that Key Autism paid at a higher hourly rate than Onuschak did

not have more experience than Onuschak.

32.

Throughout the Relevant Time Period, the male Registered Behavior Technicians that Key Autism paid at a higher hourly rate than Onuschak, were not more qualified than Onuschak.

33.

Throughout the Relevant Time Period, the male Registered Behavior Technicians that Key Autism paid at a higher hourly rate than Onuschak, did not have a higher level of education than Onuschak.

34.

Throughout the Relevant Time Period, Key Autism paid male Registered Behavior Technicians at a higher hourly rate than it had paid Onuschak for the same job.

35.

Throughout the Relevant Time Period, Key Autism did not pay the male Registered Behavior Technicians at a higher hourly rate than Onuschak due to a shift differential.

36.

Throughout the Relevant Time Period, Key Autism did not pay the

male Registered Behavior Technicians at a higher hourly rate than Onuschak due to a seniority system.

37.

Throughout the Relevant Time Period, Key Autism did not pay the male Registered Behavior Technicians at a higher hourly rate than Onuschak due to a merit system.

38.

Throughout the Relevant Time Period, Key Autism did not pay the male Registered Behavior Technicians at a higher hourly rate than Onuschak due to a system which measures earnings by quantity of production.

39.

Throughout the Relevant Time Period, Key Autism did not pay the male Registered Behavior Technicians at a higher hourly rate than Onuschak due to a system which measures earnings by quality of production.

40.

Throughout the Relevant Time Period, Key Autism did not pay the male Registered Behavior Technicians at a higher hourly rate than Onuschak due to a differential based on any other factor other than sex.

41.

Throughout the Relevant Time Period, Key Autism's payment to Onuschak of an hourly rate that was lower than the hourly rate of male Registered Behavior Technicians was part of its practice and pattern of discrimination on the basis of sex.

42.

Throughout the Relevant Time Period, Key Autism treated Onuschak differently than similarly situated male comparators by paying her at an hourly rate that was lower than the hourly rate of male Registered Behavior Technicians.

43.

Throughout the Relevant Time Period, Key Autism paid different wages to employees of opposite sexes' for equal work on jobs the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

**CLAIM FOR RELIEF**

**Equal Pay Act Violation**

44.

The allegations contained in paragraphs 1-43 above are incorporated

herein by reference as if set forth verbatim herein.

45.

Defendant paid Onuschak at an hourly rate less than the hourly rate it paid to similarly situated male employees.

46.

Defendant willfully paid Onuschak at an hourly rate less than the hourly rate it paid to similarly situated male employees.

47.

Onuschak is entitled to payment of the difference between the hourly rate paid to her and the hourly rate paid to similarly situated male employees in an amount to be determined at trial in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

48.

As a result of the underpayment of compensation as alleged above, Onuschak is entitled to liquidated damages in accordance with the FLSA § 16(b), 29 U.S.C. § 216(b).

49.

As a result of the underpayment of overtime compensation as alleged above, Onuschak is entitled to her litigation costs, including her reasonable

attorneys' fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully pray:

a) That she be awarded compensatory damages to cover all lost income which she would have received but for the discriminatory actions taken against her;

b) That she be awarded an additional like amount as liquidated damages;

c) That she be afforded trial by jury;

d) That she be awarded reasonable attorneys' fees and expenses of litigation; and

e) That she be awarded such further relief as is just, equitable and proper.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS & FITZPATRICK, LLC**

*/S/CHARLES R. BRIDGERS*
CHARLES R. BRIDGERS
GA. BAR NO. 080791

*/S/ KEVIN D. FITZPATRICK, JR.*
KEVIN D. FITZPATRICK, JR.
GA. BAR NO. 262375
COUNSEL FOR PLAINTIFF

101 MARIETTA STREET
SUITE 2650
ATLANTA, GEORGIA 30303
(404) 979-3171
(404) 979-3170 (f)
Kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com