E-FILED IN OFFICE - SP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-05645-5**
6/29/2023 2:35 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Glenn Braunstein** and **Jessica Braunstein**
Mailing Address: 1723 Inverness Ave, Atlanta, GA
30306

|  |  |
|---|---|
| **PLAINTIFFS** | **CIVIL ACTION NUMBER**: 23-A-05645-5 |

**VS**

**State Farm Fire and Casualty Company**
**RA: Corporation Service Company**
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

**DEFENDANT**

---

## SUMMONS

---

**TO THE ABOVE-NAMED DEFENDANT**:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiffs' attorney, whose name and address is:

**D. Bruce Janzen**
**Attorney For the Plaintiffs**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
bruce@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 2023.
        29th day of June, 2023

Tiana P. Garner,
Clerk of Superior Court

BY: _____ *Sarah Payne* _____
Deputy Clerk

E-FILED IN OFFICE - SP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-05645-5

6/29/2023 2:35 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **GLENN BRAUNSTEIN and**<br>**JESSICA BRAUNSTEIN,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | _____ |
| **STATE FARM FIRE AND CASUALTY** | ) | 23-A-05645-5 |
| **COMPANY,** | ) | |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT

**COME NOW** Plaintiffs **Glenn Braunstein and Jessica Braunstein**, by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **State Farm Fire and Casualty Company**, and in support hereof, states as follows:

### PARTIES

1.

Plaintiff is an adult resident citizen of Fulton County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to January 19, 2023, and in consideration of the premiums paid to Defendant by the Plaintiffs, Defendant issued a policy with Policy No. 11-BA-D011-1 (the "Policy"). Despite requests for same, Plaintiffs have not yet received a copy of the full Policy from Defendant. A true and accurate copy of the Policy's endorsements and declaration pages is attached hereto as Exhibit "A."

2

7.

The Policy provides numerous coverages for the real and personal property located at 1723 Inverness Ave, Atlanta, GA 30306 (the "Insured Property," "Property," or the "home"). The Policy likewise insures against loss due to Water, subject to a deductible of $5,000 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

**SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY**

10.

On or about January 19, 2023, the above-referenced property suffered damage from a sudden and accidental direct physical Loss resulting from Water (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiffs promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiffs' claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

3

12.

At all times, Plaintiffs made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Adjuster, performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Adjuster, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiffs' claim when Adjuster undertook the handling of the claim.

15.

Defendant, through its authorized representative and agent, Adjuster, grossly underestimated the scope of loss suffered by the Plaintiffs as a result of the Water event. Defendant failed to properly indemnify the Plaintiffs and denied Plaintiffs' claim. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiffs requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiffs' requests and continued to frivolously and baselessly deny any additional payment on Plaintiffs' claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiffs' knowledgeable and experienced professionals as to the extent of damage and the amount it will cost the Plaintiffs to be properly indemnified for the Loss.

4

17.

Plaintiffs made repeated requests for payment of the claim, including a written demand sent to Defendant on April 25, 2023. A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for Pending less previous payments and the applicable deductible, Defendant continued to frivolously deny Plaintiffs' claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiffs' April 25, 2023, correspondence (Ex. C) to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiffs' claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiffs, or with due regard to the Plaintiffs' claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiffs for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiffs have fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiffs and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiffs as a result

of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiffs were constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiffs have suffered loss under the Policy in an amount to be determined at trial.

### COUNT I: BREACH OF CONTRACT

23.

Plaintiffs hereby adopt, re-allege, and incorporate their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiffs have performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiffs for the damages sustained from the Loss.

26.

Despite Plaintiffs' timely written demand, Defendant failed to provide full indemnification to the Plaintiffs under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiffs according to the terms of the Policy.

28.

As a result of the Defendant's denying and delaying payment in Plaintiffs' claim, Plaintiffs sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiffs suffered damages as a direct result of Defendant's failure to indemnify the Plaintiffs for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiffs.

31.

**WHEREFORE,** Plaintiffs pray for this Court to enter an award in Plaintiffs' favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiffs hereby adopt, re-allege, and incorporate their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiffs' claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

34.

Defendant did not attempt in good faith to settle the Plaintiffs' claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiffs and with due regard for the Plaintiffs' interests.

35.

Defendant's failures to adjust Plaintiffs' claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

8

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

36.

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiffs' covered loss within sixty (60) days after Plaintiffs' timely written demand (Ex. C) for payment without a reasonable basis for doing so.

37.

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiffs for their covered loss.

38.

Defendant's refusal to indemnify the Plaintiffs was done frivolously, without a reasonable basis, and in bad faith.

39.

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

40.

**WHEREFORE,** Plaintiffs pray for this Court to enter an award, in Plaintiffs' favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded

or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiffs' loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## DEMAND FOR JURY TRIAL

41.

Plaintiffs request a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

42.

**WHEREFORE**, Plaintiffs request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiffs receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiffs and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiffs by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiffs' claim without a reasonable basis;

d. Plaintiffs' attorneys' fees and costs of suit in this action;

e. Plaintiffs' consultant and expert fees;

10

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Dated, this 29th day of June, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) bruce@lawhuggins.com
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

D. Bruce Janzen, Jr., Esq.
Georgia Bar No.: 245474
J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*

11

# EXHIBIT A

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

Po Box 2356
Bloomington IL 61702-2356

**StateFarm**

AT3   H-27-2807-FA97 F H W
001700 3201
BRAUNSTEIN, GLENN B &
JESSICA P
1723 INVERNESS AVE NE
ATLANTA GA  30306-3137

# DECLARATIONS

COVERAGE SUMMARY   JAN 25 2023

| AMOUNT DUE: | None |
|---|---|

Payment is due by **TO BE PAID BY MORTGAGEE**

**Policy Number:**   11-BA-D011-1

**Policy Period:**  12 Months
**Effective Dates:** SEP 11 2022 to SEP 11 2023
The policy period begins and ends at 12:01 am standard time at the residence premises.

## HOMEOWNERS POLICY

**Location of Residence Premises**
1723 INVERNESS AVE NE
ATLANTA GA  30306-3137

**Your State Farm Agent**
DREW FINCHER
1123 ZONOLITE RD NE STE 9
ATLANTA GA  30306-2015

**Phone:** (404) 228-2716

| **Construction:** | Masonry Veneer | **Roof Material:** Composition Shingle |
|---|---|---|
| **Year Built:** | 1935 | **Roof Installation Year:**  Default to Year Built |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

## PREMIUM

| | |
|---|---|
| Annual Premium | $  3,049.00 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert | |
| Home/Auto | |
| Claim Record | |
| Loyal Customer | |

| **Total Premium** | $  3,049.00 |
|---|---|

Prepared  JAN 25 2023
HO-2000
010210  260  I
N

1018-1000B)  04 01 2018

**StateFarm**

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|

BRAUNSTEIN, GLENN B &
JESSICA P

**Mortgagee**
TRUST BANK
ISAOA/ATIMA
PO BOX 7952
SPRINGFIELD OH  45501-7952

Loan Number:
6621947034

**2nd Mortgagee**
GEORGIA UNITED CREDIT UNION
ISAOA/ATIMA
PO BOX 961292
FORT WORTH TX  76161-0292

Loan Number:
2108035317

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 1,159,000 |
| Other Structures | $ 115,900 |
| B Personal Property | $ 869,250 |
| C Loss of Use | $ 347,700 |
| Fungus (including Mold) Limited Coverage | $ 10,000 |

**Additional Coverages**

| Coverage | Limit of Liability |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 100,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

## INFLATION

Inflation Coverage Index: 355.2

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses | $ 5,000 |

## LOSS SETTLEMENT PROVISIONS

A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

11-BA-D011-1 

**FORMS, OPTIONS, AND ENDORSEMENTS**

| | |
|---|---|
| HW-2111 | Homeowners Policy |
| HO-2231.2 | Amendatory Endorsement |
| HO-2584 | Fungus (Incl Mold) Limited Cov |
| HO-2465 | Fungus (Incl Mold) Liability |
| HO-2444.2 | Back-Up Of Sewer Or Drain -<br>5% of Coverage A/$ 57,950 |
| Option JF | Jewelry and Furs $1,500 Each<br> Article/$2,500 Aggregate |
| Option ID | Increase Dwlg Up to $ 231,800 |
| Option OL | Ordinance/Law  10%/$ 115,900 |

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

Prepared   JAN 25 2023
HO-2000
010211   260
N

11-BA-D011-1   010212

HO-2231 2
Page 1 of 3

## HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)

This endorsement modifies insurance provided under the HOMEOWNERS POLICY

### DEFINITIONS

Under the definition of "*business*", item d. is replaced by the following:

*Business* does not include:

d.   the ownership, maintenance, or use of systems and equipment used to generate electrical power, if:

(1)   the power generated is intended primarily for consumption on the *residence premises*; and

(2)   any resulting income is incidental, including but not limited to:

(a)   utility bill credits; or

(b)   incidental income;

derived from sending excess power back to the electricity grid; or

The definition of "*occurrence*" is replaced by the following:

"*occurrence*", when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.   *bodily injury*, or

b.   *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

### SECTION I – PROPERTY COVERAGES

#### COVERAGE A – DWELLING

Item 3.c. is replaced by the following:

c.   systems and equipment used to generate electrical power, unless:

(1)   the power generated is intended primarily for consumption on the *residence premises*; and

(2)   any resulting income is incidental, including but not limited to:

(a)   utility bill credits; or

(b)   incidental income;

derived from sending excess power back to the electricity grid.

### SECTION I – ADDITIONAL COVERAGES

The following is added to **Volcanic Action**:

When applicable, the following coverages apply to a loss covered by **Volcanic Action**:

a.   **COVERAGE C – LOSS OF USE**;

b.   **SECTION I – ADDITIONAL COVERAGES**; and

c.   **Option OL – Building Ordinance or Law**, only if this option is shown in the *Declarations*.

The following is added to **Collapse**:

When applicable, the following coverages apply to a loss covered by **Collapse**:

a.   **COVERAGE C – LOSS OF USE**;

b.   **SECTION I – ADDITIONAL COVERAGES**; and

c.   **Option OL – Building Ordinance or Law**, only if this option is shown in the *Declarations*.

The following is added to **Fuel Oil Release**:

When applicable, the following coverages apply to a loss covered by **Fuel Oil Release**:

a.   **COVERAGE C – LOSS OF USE**;

b.   **SECTION I – ADDITIONAL COVERAGES**; and

c.   **Option OL – Building Ordinance or Law**, only if this option is shown in the *Declarations*.

Any payments made for these coverages are included in, and not in addition to, the $10,000 limit of insurance for **Fuel Oil Release**.

### SECTION I – LOSSES NOT INSURED

Intentional Losses is replaced by the following:

**Intentional Losses**. If any *insured* intentionally causes or procures a loss to property covered under this policy, **we** will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

This does not apply to:

a.   an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss; or

b.   a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

(1)   arises out of family violence or sexual assault against an innocent *insured*; and

(2)   is caused by an intentional act of an *insured* against whom a family violence or sexual assault complaint is brought.

### SECTION I – CONDITIONS

Under **Mortgagee Clause**, paragraph 10.c. is replaced by the following:

c.   If we cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

© Copyright, State Farm Mutual Automobile Insurance Company, 2021

HO-2231.2
Page 2 of 3

## SECTION II – LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

The following is added to **Damage to Property of Others**:

   d.  Under SECTION II – EXCLUSIONS, exclusion 2.c. does not apply to the coverage provided by **Damage to Property of Others**.

## SECTION II – EXCLUSIONS

Under **SECTION II – EXCLUSIONS**, 1.o. is replaced by the following:

1.  Coverage L and Coverage M do not apply to:

   o.  *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power, unless:

     (1)  the power generated is intended primarily for consumption on the *residence premises*; and

     (2)  any resulting income is incidental, including but not limited to:

       (a)  utility bill credits; or

       (b)  incidental income;

      derived from sending excess power back to the electricity grid.

Under **SECTION II – EXCLUSIONS**, 2.a. and 2.c. are replaced by the following:

2.  Coverage L does not apply to:

   a.  liability:

     (1)  for *your* share of any loss assessment charged against all members of any type of association of property owners; or

     (2)  imposed on or assumed by any *insured* through any unwritten or written contract or agreement.  This exclusion does not apply to:

       (a)  liability for damages that the *insured* would have in absence of the contract or agreement; or

       (b)  written contracts:

         (i)  that directly relate to the ownership, maintenance, or use of any *insured location*; or

         (ii)  when the liability of others is assumed by *you* prior to the *occurrence*;

       unless excluded elsewhere in the policy;

   c.  *property damage* to property rented to, used or occupied by, or in the care, custody, or control of

any *insured* at the time of the *occurrence*.  This exclusion does not apply to *property damage* caused by:

     (1)  fire;

     (2)  smoke;

     (3)  explosion;

     (4)  abrupt and accidental damage from water; or

     (5)  household pets, up to $500 in excess of *your* security deposit;

## SECTION I AND SECTION II – CONDITIONS

**Concealment or Fraud** is replaced by the following:

  **Concealment or Fraud.**

   a.  *We* do not provide any coverages under this policy for *you* or any other *insured* if *you* or any other *insured* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

     However, this condition applies only to facts or circumstances:

     (1)  on which *we* rely and are either:

       (a)  material; or

       (b)  made with intent to deceive; or

     (2)  that contribute to the loss.

   b.  No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

     (1)  increases the risk at the time of loss; or

     (2)  contributes to the loss.

     This item, b., does not apply to failure to tender payment of premium.

   c.  Violation of this condition by an *insured* does not apply to a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

     (1)  arises out of family violence or sexual assault against an innocent *insured*; and

     (2)  is caused by an intentional act of an *insured* against whom a family violence or sexual assault complaint is brought.

Under **Cancellation**, paragraphs 5.a. and 5.b. are replaced by the following:

   a.  *You* may cancel this policy at any time by giving *us* advance notice of the date cancellation is to take effect.  *We* may require written, electronic, or other recorded verification of the request for cancellation prior to such cancellation taking effect.

© Copyright, State Farm Mutual Automobile Insurance Company, 2021

11-BA-D011-1   010213

If only *your* interest is affected, the effective date of cancellation will be the later of:

(1) the date *we* received *your* notice of cancellation; or

(2) the date specified in the notice.

If notice must be given to a governmental agency, mortgagee, or other third party, the effective date of cancellation may be extended in order for *us* to provide notice of cancellation to *you* and the other party at least 10 days before the date cancellation takes effect.

b. *We* may cancel this policy by providing notice to a named insured shown on the *Declarations*. The notice will provide the date cancellation is effective.

(1) When *you* have not paid the premium, *we* may cancel at any time by providing notice at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by providing notice at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

(a) if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

(b) if the risk has changed substantially since this policy was issued.

*We* may cancel this policy by providing notice at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

**Nonrenewal** is replaced by the following:

**Nonrenewal.** If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will provide a nonrenewal notice to a named insured shown on the *Declarations*.

If *we* decide not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

**Joint and Individual Interests** is replaced by the following:

**Joint and Individual Interests.** If *you* consists of more than one person or entity, then each acts for all to change or cancel this policy.

**Electronic Delivery** is deleted.

**OPTIONAL POLICY PROVISIONS**

**Option ID** is replaced by the following:

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under COVERAGE A – DWELLING according to the Loss Settlement Provision shown in the *Declarations*.

1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under COVERAGE A – DWELLING, Other Structures exceeds the limit of liability shown in the *Declarations* for Other Structures, *we* will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations*.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

All other policy provisions apply.

HO-2231.2

©, Copyright, State Farm Mutual Automobile Insurance Company, 2021.

(CONTINUED)

# HO-2584 FUNGUS (INCLUDING MOLD) LIMITED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

SECTION I – LOSSES NOT INSURED 2.g., Fungus (SECTION I – LOSSES NOT INSURED 1.g. if *you* have a RENTERS POLICY), does not apply to the extent coverage is provided by this endorsement.

SECTION I – ADDITIONAL COVERAGES

The following is added:

Remediation of Fungus.

a. If *fungus* is the result of a *loss insured* other than fire or lightning, *we* will pay for:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus*;

(2) any remediation of *fungus*, including the cost or expense to:

(a) remove the *fungus* from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(c) contain, treat, detoxify, neutralize, or dispose of or in any way respond to or assess the effects of the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

b. *We* do not cover *fungus* that is the result of:

(1) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(a) and is:

i. continuous;

ii. repeating;

iii. gradual;

iv. intermittent;

v. slow, or

vi. trickling; and

(b) from a:

i. heating, air conditioning, or automatic fire protective sprinkler system;

ii. household appliance; or

iii. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item b. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *insured*.

(2) defect, weakness, inadequacy, fault, or unsoundness in:

(a) planning, zoning, development, surveying, or siting;

(b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(c) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(d) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*.

c. This coverage applies only if:

(1) *we* receive immediate notice of the occurrence of the *loss insured* that is alleged to have resulted in *fungus*, and remediation begins as soon as possible; and

(2) all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence of the *loss insured*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED

11-BA-D011-1   010214

d. The most *we* will pay for this coverage, in any one policy period, is the limit of insurance shown on the *Declarations* for this endorsement. This limit applies only to *fungus* resulting from a *loss insured* other than fire or lightning regardless of:

(1) the number of *losses insured* that combine or contribute to the presence of resulting *fungus*; or

(2) the number of claims made during the policy period.

This limit includes any payments for **SECTION I – ADDITIONAL COVERAGES** and **COVERAGE C – LOSS OF USE**. Any payments made for this coverage are part of and not in addition to the limit of insurance that applies to covered property.

All other policy provisions apply.

HO-2584

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

ST-2
0768-2004

## HO-2465 FUNGUS (INCLUDING MOLD) LIMITATION OF LIABILITY COVERAGE ENDORSEMENT ($50,000)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

Except for the coverage provided by this endorsement, the policy to which this endorsement is attached does not apply to any claim or suit for damages because of *bodily injury* or *property damage* arising out of *fungus*.

**SECTION II – LIABILITY COVERAGES**

**COVERAGE L – PERSONAL LIABILITY** is amended to include the following:

*We* will pay up to *our* limit of liability all sums that the *insured* is legally obligated to pay as damages because of *bodily injury* or *property damage* arising out of or resulting from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

However, *we* do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*.

**LIMIT OF LIABILITY**

Regardless of the number of *insureds* under this coverage or number of claims made or suits brought, the most *we* will pay under this coverage for all claims for damages in any one *occurrence* is $50,000. This limit is also the most *we* will pay for the sum of all claims arising from all *occurrences* during each policy period.

All other policy provisions apply.

HO-2465

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(CONTINUED)

**BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)**

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to SECTION I – ADDITIONAL COVERAGES:

Back-up of Sewer or Drain. *We* will pay for accidental direct physical loss to the *dwelling* and covered personal property located within the *dwelling*, caused by back-up of water or sewage, subject to the following:

a. The back-up must be directly and immediately caused solely by water or sewage:

(1) from outside the *residence premises* plumbing system that enters through a sewer or drain located inside the interior of the *dwelling*; or

(2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the *dwelling* designed to remove subsurface water drained from the foundation area.

b. Coverage does not apply to:

(1) losses resulting from *your* failure to:

(a) keep a sump pump or its related equipment in proper working condition; or

(b) perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

(2) losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

(a) this endorsement is attached to a newly issued policy; or

(b) this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits.

c. If *you* request an increase to the coverage limit for this endorsement, the increased coverage limit does not apply to losses that occur or are in progress within the first 5 days of *your* request.

d. The total limit of insurance provided by this endorsement will not exceed the amount determined by applying the Back-Up Of Sewer Or Drain percentage (%) shown in the *Declarations* to the COVERAGE A – DWELLING limit shown in the *Declarations*, as adjusted by the inflation coverage provisions of this policy. This is an additional amount of insurance.

e. The deductible for each loss under this coverage is the amount shown in the *Declarations* under Section I Deductible for "Other Losses" or "All Losses", whichever applies.

f. When applicable, the following coverages apply to a loss covered by this endorsement:

(1) COVERAGE C – LOSS OF USE;

(2) SECTION I – ADDITIONAL COVERAGES; and

(3) Option OL – Building Ordinance or Law, only if this option is shown in the *Declarations*.

Any payments made for these coverages are included in, and not in addition to, the limit of insurance described in item d. above.

For purposes of this endorsement only:

a. SECTION I – LOSSES INSURED, item 12.b.(2) is deleted from the policy.

b. SECTION I – LOSSES NOT INSURED, Water is replaced by:

Water, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-Up of Sewer or Drain.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

**11-BA-D011-1**    **010215**

HO-2444 2
Page 2 of 2

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure**, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a **loss insured**.

c.  **SECTION I – CONDITIONS, Other Insurance** is replaced by:

**Other Insurance.**  This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

HO-2444.2

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

# EXHIBIT B

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



February 3, 2023

GLENN & JESSICA BRAUNSTEIN
1723 INVERNESS AVE NE
ATLANTA GA 30306

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:   Claim Number:   11-44T3-49M
      Date of Loss:     January 19, 2023  Date Reported January 25, 2023
      Policy Number:   11-BA-D011-1

Dear Mr. & Mrs. Braunstein,

This letter is in follow-up to our conversation.  The policy does not extend coverage for damage caused by continued and repeated seepage or leakage that occurs over a period of time and rust and rot are excluded by the policy.  The hidden damage exception to the exclusion for seepage or leakage of water does not apply as the ice-machine is not hidden within a wall or floor.  It is a policy condition and your duty to protect property following a loss and report the damage to us immediately following the loss.  Unfortunately, we are unable to issue payment to you for this type of damage.  Please refer to the following in the Homeowners Policy, HW-2111, which states in part:

**SECTION I – LOSSES INSURED**

**COVERAGE A – DWELLING**

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

**SECTION I – LOSSES NOT INSURED**

1.  *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    f.  seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

        (1) and is:

            (a) continuous;

11-44T3-49M
Page 2
February 3, 2023

      (b) repeating;

      (c) gradual;

      (d) intermittent;

      (e) slow; or

      (f) trickling; and

   (2) from a:

      (a) heating, air conditioning, or automatic fire protective sprinkler system;

      (b) household appliance; or

      (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the ***insured***;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

However, *we* will not pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from any natural or external forces, or occurs as a result of any combination of these:

d. **Neglect**, meaning neglect of the ***insured*** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

g. ***Fungus***, including:

   (1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the ***residence premises*** or location of the rebuilding, repair, or replacement of that property, by ***fungus***;

   (2) any remediation of ***fungus***, including the cost or expense to:

      (a) remove the ***fungus*** from covered property or to repair, restore, or replace that property;

      (b) tear out and replace any part of the ***building structure*** or other property as needed to gain access to the ***fungus***; or

11-44T3-49M
Page 3
February 3, 2023

    (c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the *fungus*; or

  (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, item g. does not apply if *fungus* results from an accidental direct physical loss caused by fire or lightning.

## HO-2584 FUNGUS (INCLUDING MOLD) LIMITED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

**SECTION I – LOSSES NOT INSURED** 2.g., **Fungus** (**SECTION I – LOSSES NOT INSURED** 1.g. if *you* have a RENTERS POLICY), does not apply to the extent coverage is provided by this endorsement.

**SECTION I – ADDITIONAL COVERAGES**

The following is added:

**Remediation of Fungus.**

  a. If *fungus* is the result of a *loss insured* other than fire or lightning, *we* will pay for:

    (1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus*;

    (2) any remediation of *fungus*, including the cost or expense to:

      (a) remove the *fungus* from covered property or to repair, restore, or replace that property;

      (b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

      (c) contain, treat, detoxify, neutralize, or dispose of or in any way respond to or assess the effects of the *fungus*; or

    (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

  b. *We* do not cover *fungus* that is the result of:

    (1) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

      (a) and is:

        i.  continuous;

        ii.  repeating;

        iii.  gradual;

        iv.  intermittent;

11-44T3-49M
Page 4
February 3, 2023

           v.  slow; or

          vi.  trickling; and

      (b) from a:

           i.  heating, air conditioning, or automatic fire protective sprinkler system;

          ii.  household appliance; or

         iii.  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

**We** also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item b. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the **insured**.

    (2) defect, weakness, inadequacy, fault, or unsoundness in:

      (a) planning, zoning, development, surveying, or siting;

      (b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

      (c) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

      (d)  maintenance;

    of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**.

c.  This coverage applies only if:

    (1) **we** receive immediate notice of the occurrence of the **loss insured** that is alleged to have resulted in **fungus**, and remediation begins as soon as possible; and

    (2) all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence of the **loss insured**.d. The most **we** will pay for this coverage, in any one policy period, is the limit of insurance shown on the **Declarations** for this endorsement. This limit applies only to **fungus** resulting from a **loss insured** other than fire or lightning regardless of:

    (1) the number of **losses insured** that combine or contribute to the presence of resulting **fungus**; or

    (2) the number of claims made during the policy period.

This limit includes any payments for **SECTION I – ADDITIONAL COVERAGES** and **COVERAGE C – LOSS OF USE**.  Any payments made for this coverage are part of and not in addition to the limit of insurance that applies to covered property.

All other policy provisions apply.

3.  **We** will not pay for, under any part of this policy, any loss consisting of one or more of the items below.  Further, **we** will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

11-44T3-49M
Page 5
February 3, 2023

    b.  defect, weakness, inadequacy, fault, or unsoundness in:

        (1)  planning, zoning, development, surveying, or siting;

        (2)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

        (3)  materials used in repair, construction, renovation, remodeling, grading, or compaction; or

        (4)  maintenance;

        of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

However, **we** will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – CONDITIONS

2.  **Your Duties After Loss.** After a loss to which this insurance may apply, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:

    a.  give immediate notice to **us** or **our** agent and also notify:

        (1)  the police if the loss is caused by theft, vandalism, or any other criminal act; and

        (2)  the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b.  protect the property from further damage or loss and also:

        (1)  make reasonable and necessary temporary repairs required to protect the property; and

        (2)  keep an accurate record of repair expenses;

6.  **Suit Against Us.** No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

    However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

This Company does not intend by this letter to waive any policy defenses in addition to those stated above, and reserves its right to assert such additional policy defenses at any time.

Because we value you as a policyholder and appreciate your business, we want to ensure that you understand this coverage decision.  If you have any questions, please contact us.

Sincerely,


Bryan Van Camp
Claim Specialist

11-44T3-49M
Page 6
February 3, 2023

844-458-4300 ext 3099940631
Fax: 1-844-236-3646
statefarmfireclaims@statefarm.com
*For your protection, when emailing State Farm, please do not include sensitive personal information such as Social Security Number, credit/debit card number (financial account number), driver's license number, or health/medical information in an email. Please contact us at 844-458-4300 ext 3099940631 to discuss sensitive information.*

State Farm Fire and Casualty Company

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, update communication and claim payment preferences, and many other insurance services.

# EXHIBIT C



**D. Bruce Janzen, Esq.**
110 Norcross Street
Roswell, GA 30075
bruce@lawhuggins.com
(770) 913-6229

April 25, 2023

State Farm Fire and Casualty Company
P.O. Box 88049
Atlanta, GA 30356

**Sent Via email:**
statefarmfireclaims@statefarm.com

Re:     Named Insured(s):    Glenn Braunstein and Jessica Braunstein
        Policy Number:       11-BA-D011-1
        Claim Number:        11-44T3-49M
        Date of Loss:        January 19, 2023

To Whom it May Concern:

I have been retained by Glenn Braunstein and Jessica Braunstein ("Your Insured") to represent them regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, and any endorsements.** We also request a copy of any and all repair estimates drafted to date, **as well as a payment sheet or payment log detailing all insurance proceeds issued to date for this claim.**

My client has complied with all conditions contained in the insurance policy. My client is at a loss as to why State Farm Fire and Casualty Company ("State Farm") has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle their claim. It is our belief that State Farm has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, per the enclosed spreadsheets of damages to Your Insured's property, we are hereby making formal demand that you settle the above claim for the sum of **$92,862.53, less previous payments and the applicable deductible.** The invoice & estimate of damages is attached for your review. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and a penalty of fifty percent (50%) of the loss amount.

To: State Farm Fire and Casualty Company
Client: Glenn Braunstein and Jessica Braunstein
April 25, 2023
Page **2** of **2**

  This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed you agree this letter constitutes a proper demand.

  The purpose of this correspondence is to encourage State Farm to resolve Your Insured's claim in a fair and equitable manner in hopes of avoiding litigation. If you fail to respond to this letter with an offer of settlement that is acceptable to Your Insured, we will have no alternative other than recommending to Your Insured that a lawsuit be filed against you. **If you would like to re-inspect the property, please be advised that the Your Insured intend to begin repairs in 30 days.**

  Payment must be received in my office within sixty (60) days of your receipt of this letter in order to avoid a suit for bad faith penalties and attorney's fees. Any check issued should list Huggins Law Firm, LLC as sole payee. Any objection to these payment terms shall be submitted in writing to Huggins Law Firm, LLC within 10 days of receipt of this letter.

  I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions regarding this formal 60-day demand. Should you have any questions or concerns, please reach out to me at bruce@lawhuggins.com or by phone at (770) 913-6229.

Sincerely,

D. Bruce Janzen, Esq.<br>Attorney at Law

DBJ/
Encl.

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

| | | | |
|---|---|---|---|
| Insured: | Glenn Braunstein | E-mail: | Braunstein |
| Property: | 1723 Inverness Ave NE | | |
| | Atlanta, GA 30306-3137 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Mike Sheehan | Business: | (404) 474-1395 |
| Company: | CLAIMS DETECTIVES | E-mail: | cyamike.pa@gmail.com |
| Business: | 2615 George Busbee Pkwy. Suite 11-403 | | |
| | Kennesaw, GA 30144 | | |

| | | | |
|---|---|---|---|
| Estimator: | Mike Sheehan | Business: | (404) 474-1395 |
| Company: | CLAIMS DETECTIVES | E-mail: | cyamike.pa@gmail.com |
| Business: | 2615 George Busbee Pkwy. Suite 11-403 | | |
| | Kennesaw, GA 30144 | | |

**Claim Number:** 1144T349M          **Policy Number:** 11BAD0111          **Type of Loss:**

| | | | |
|---|---|---|---|
| Date of Loss: | 1/19/2023 12:00 AM | Date Received: | |
| Date Inspected: | 3/25/2023 9:21 AM | Date Entered: | 2/22/2023 10:23 AM |

| | |
|---|---|
| Price List: | GAAT8X_APR23 |
| | Restoration/Service/Remodel |
| Estimate: | BRAUNSTEIN_WATER |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

The following estimate is only an approximation of the damages suffered, or expenses incurred, by the insured. No warranty or representation with regard to the accuracy of the estimate is expressed or implied and none should be inferred. The actual damages suffered, or expenses incurred, could be higher or lower than the estimate, even significantly, depending on variances in a number of factors affecting the estimate and the accuracy of the information and assumptions upon which the estimate is based. **Claims Detectives USA, Inc reserves the right to update the estimate as additional information regarding damages are known.**
The estimate is based upon, among other things: information provided to us by the insured; our own
observations; measurements taken by our own representatives, the insured and others engaged by the insured; as well as certain assumptions made by us. Many factors may affect the amount of the estimate where compensation has already been received by the insured for the damage, and with regard to which payment we were not informed; the cost of one contractor varying from another contractor as a result of a number of factors, including, without limitation, the quality of the work, the quality of the materials, or warranties provided by such contractors; damages that were not observed at the time the estimate was rendered because of a lack of accessibility or weather; and all other factors beyond our reasonable control. This estimate has been calculated for informational purposes only, and is based upon our good faith belief as the damages suffered or expenses incurred as a result of the particular loss, and only represents one opinion as to the method of repair, restoration, or replacement.

**All checks should be mailed to Claims Detectives USA, Inc., and Claims Detectives USA, Inc. should be listed as a co-payee to:**
  **Claims Detectives USA, Inc**
  **2615 George Busbee Parkway**
  **Suite 11-403**
  **Kennesaw GA 30339-4981**
Any reliance on the estimate is at your own risk and you agree to hold Claims Detectives, Inc., its representatives, employees, agents, officers, and principals harmless in the event of such reliance.
Copyright 2020 Claims Detectives USA, Inc.

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

**BRAUNSTEIN_WATER**

**SKETCH1**

**Main Level**

| Kitchen | | | | Height: 9' | | |
|---|---|---|---|---|---|---|
| | 450.77 SF Walls | | | 334.53 SF Ceiling | | |
| | 785.31 SF Walls & Ceiling | | | 334.53 SF Floor | | |
| | 37.17 SY Flooring | | | 42.41 LF Floor Perimeter | | |
| | 73.50 LF Ceil. Perimeter | | | | | |

| Missing Wall - Goes to Floor | 2' 6 9/16" X 6' 8" | Opens into MUD_ROOM |
|---|---|---|
| Missing Wall - Goes to Floor | 6' 3/16" X 6' 8" | Opens into MUD_ROOM |
| Missing Wall - Goes to Floor | 14' 11 1/4" X 6' 8" | Opens into FAMILY_ROOM |
| Missing Wall | 2' 7" X 9' | Opens into HALLWAY |
| Missing Wall - Goes to Floor | 5' 1/8" X 6' 8" | Opens into DINING_ROOM |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 1. R&R 2" x 10" lumber (1.67 BF per LF) | 80.00 LF | 1.02 | 4.11 | 9.68 | 84.02 | 504.10 |
| Allow to replace water damaged floor joist and band beam at load bearing wall. | | | | | | |
| 2. 2" x 6" x 16' #2 treated pine (material only) | 1.00 EA | 0.00 | 15.49 | 1.38 | 3.38 | 20.25 |
| Bearing plate for new framing | | | | | | |
| 3. R&R Sheathing - spaced 1" x 6" | 75.00 SF | 0.65 | 4.90 | 19.22 | 87.10 | 522.57 |
| Allow to replace damaged sub floor and wall sheathing | | | | | | |
| 4. Oak flooring - select grade - no finish | 55.20 SF | 0.00 | 10.11 | 35.62 | 118.74 | 712.43 |
| **Original flooring shows no knots or irregularities consistent with SELECT grading.** | | | | | | |
| 5. Wood Floor Covering Installer - per hour | 2.00 HR | 0.00 | 55.17 | 0.00 | 22.06 | 132.40 |
| **Allow additional labor for toothing into existing flooring** | | | | | | |
| 6. Vapor barrier - 15# felt | 45.00 SF | 0.00 | 0.25 | 0.24 | 2.30 | 13.79 |
| 7. Sand, stain, and finish wood floor | 334.53 SF | 0.00 | 4.06 | 31.26 | 277.90 | 1,667.35 |
| 8. Add for dustless floor sanding | 334.53 SF | 0.00 | 1.01 | 0.00 | 67.58 | 405.46 |
| 9. Additional coats of finish (per coat) | 334.53 SF | 0.00 | 0.92 | 7.15 | 63.00 | 377.92 |
| WALLS | | | | | | |
| 10. Material Only 110 volt copper wiring run, box and GFI outlet | 2.00 EA | 0.00 | 35.89 | 6.39 | 15.64 | 93.81 |
| 11. Electrician - per hour | 4.00 HR | 0.00 | 126.01 | 0.00 | 100.80 | 604.84 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

**CONTINUED - Kitchen**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **Allow to R&R electrical wiring at damaged framing 2 trips required.** | | | | | | |
| 12. Add-on for tile backsplash installation | 9.00 SF | 0.00 | 17.04 | 0.00 | 30.68 | 184.04 |
| 13. Baseboard - 7 1/4" w/shoe | 14.00 LF | 0.00 | 8.84 | 5.91 | 25.94 | 155.61 |
| 14. R&R Quarter round - 3/4" | 42.41 LF | 0.19 | 2.10 | 3.70 | 20.18 | 121.00 |
| 15. Crown molding - Detach & reset | 25.00 LF | 0.00 | 4.78 | 0.04 | 23.90 | 143.44 |
| 16. Paint crown molding, oversized - two coats | 73.50 LF | 0.00 | 1.90 | 1.24 | 28.18 | 169.07 |
| 17. R&R 1/2" drywall - hung, taped, floated, ready for paint | 50.00 SF | 0.45 | 3.07 | 3.20 | 35.84 | 215.04 |
| 18. 1/2" drywall - hung, taped, floated, ready for paint | 24.00 SF | 0.00 | 3.07 | 1.54 | 15.04 | 90.26 |
| **Allow to replace drywall removed at remediaton.** | | | | | | |
| 19. R&R 1/2" Cement board | 42.00 SF | 1.02 | 6.03 | 6.77 | 60.58 | 363.45 |
| **Allow to install tile back splash.** | | | | | | |
| 20. R&R Ceramic/porcelain tile - High grade | 42.00 SF | 2.15 | 17.61 | 27.96 | 171.58 | 1,029.46 |
| 21. Drywall tape joint / repair - per LF | 8.00 LF | 0.00 | 10.04 | 0.28 | 16.12 | 96.72 |
| 22. Drywall Installer / Finisher - per hour | 2.00 HR | 0.00 | 109.60 | 0.00 | 43.84 | 263.04 |
| **Allow for added labor working in confined space.** | | | | | | |
| 23. Paint part of the walls - two coats | 225.39 SF | 0.00 | 1.16 | 5.42 | 53.38 | 320.25 |
| 24. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 42.41 LF | 0.00 | 2.28 | 1.47 | 19.64 | 117.80 |
| 25. Paint door or window opening - Large - 2 coats (per side) | 1.00 EA | 0.00 | 44.17 | 0.56 | 8.96 | 53.69 |
| 26. Paint door or window opening - 2 coats (per side) | 1.00 EA | 0.00 | 37.54 | 0.48 | 7.60 | 45.62 |
| CABINETS | | | | | | |
| 27. Sink - double basin - Detach & reset | 1.00 EA | 0.00 | 187.03 | 0.06 | 37.42 | 224.51 |
| 28. Sink - single - Reset | 1.00 EA | 0.00 | 105.05 | 0.04 | 21.02 | 126.11 |
| 29. Garbage disposer - Detach & reset | 1.00 EA | 0.00 | 186.88 | 0.00 | 37.38 | 224.26 |
| 30. Reverse osmosis water treatment system - Detach & reset | 1.00 EA | 0.00 | 330.63 | 0.00 | 66.12 | 396.75 |
| 31. R&R P-trap assembly - ABS (plastic) | 2.00 EA | 8.08 | 71.40 | 1.43 | 32.08 | 192.47 |
| 32. R&R Angle stop valve | 6.00 EA | 5.38 | 38.88 | 3.84 | 53.88 | 323.28 |
| Allow for 2 sinks, water purifier and ice maker | | | | | | |
| 33. Countertop - Granite or Marble | 62.00 SF | 0.00 | 73.50 | 152.46 | 941.90 | 5,651.36 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

**CONTINUED - Kitchen**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 34. R&R Custom cabinets - wall units - 42" tall - High grade | 9.00 LF | 8.08 | 321.17 | 212.31 | 635.10 | 3,810.66 |
| 35. R&R Custom cabinets - full height units - High grade | 6.00 LF | 9.70 | 595.95 | 280.30 | 782.84 | 4,697.04 |
| 36. R&R Custom cabinets - base units - High grade | 24.00 LF | 8.08 | 413.13 | 762.57 | 2,174.32 | 13,045.93 |
| 37. Add for prefinished crown molding per LF | 30.00 LF | 0.00 | 11.41 | 19.62 | 72.38 | 434.30 |
| 38. R&R Custom cabinet panels - side, end, or back - High grade | 30.00 SF | 2.09 | 28.87 | 48.89 | 195.54 | 1,173.23 |
| **Allow for finish at breakfast bar counter** | | | | | | |
| APPLIANCES | | | | | | |
| 39. Microwave oven - over range or drawer type- Detach & reset | 1.00 EA | 0.00 | 157.66 | 0.00 | 31.54 | 189.20 |
| 40. Dishwasher - Detach & reset | 1.00 EA | 0.00 | 272.62 | 0.00 | 54.52 | 327.14 |
| 41. Refrigerator - Remove & reset | 2.00 EA | 0.00 | 47.57 | 0.00 | 19.02 | 114.16 |
| 42. Range hood - Detach & reset | 2.00 EA | 0.00 | 116.88 | 0.00 | 46.76 | 280.52 |
| **Allow for oversize hood D&R** | | | | | | |
| 43. Range - gas - Large - Remove & reset | 1.00 EA | 0.00 | 227.30 | 0.00 | 45.46 | 272.76 |
| 44. R&R Ice maker appliance, 15" wide - built-in | 1.00 EA | 28.85 | 1,418.13 | 114.65 | 312.34 | 1,873.97 |
| Allow to replace damaged unit. | | | | | | |
| CEILING | | | | | | |
| 45. Recessed light fixture - Detach & reset trim only | 18.00 EA | 0.00 | 3.43 | 0.00 | 12.34 | 74.08 |
| 46. In-wall / In-ceiling speaker - Detach & reset | 2.00 EA | 0.00 | 24.45 | 0.00 | 9.78 | 58.68 |
| 47. Paint the ceiling - two coats | 334.53 SF | 0.00 | 1.16 | 8.04 | 79.22 | 475.31 |
| 48. R&R Cabinet panels - side, end, or back - High grade | 9.25 SF | 2.09 | 20.86 | 8.48 | 44.16 | 264.93 |
| Totals: Kitchen | | | | 1,782.20 | 7,109.10 | 42,654.06 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247



| Mud Room | | | | | Height: 8' |
|---|---|---|---|---|---|
| 162.85 SF Walls | | | 43.06 SF Ceiling | | |
| 205.91 SF Walls & Ceiling | | | 43.06 SF Floor | | |
| 4.78 SY Flooring | | | 18.93 LF Floor Perimeter | | |
| 27.49 LF Ceil. Perimeter | | | | | |

| Missing Wall - Goes to Floor | 2' 6 9/16" X 6' 8" | Opens into KITCHEN |
|---|---|---|
| Missing Wall - Goes to Floor | 6' 3/16" X 6' 8" | Opens into KITCHEN |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 49. Sand, stain, and finish wood floor | 43.06 SF | 0.00 | 4.06 | 4.02 | 35.76 | 214.60 |
| 50. Add for dustless floor sanding | 43.06 SF | 0.00 | 1.01 | 0.00 | 8.70 | 52.19 |
| 51. Additional coats of finish (per coat) | 43.06 SF | 0.00 | 0.92 | 0.92 | 8.10 | 48.64 |
| WALLS | | | | | | |
| 52. Paint door or window opening - Large - 2 coats (per side) | 1.00 EA | 0.00 | 44.17 | 0.56 | 8.96 | 53.69 |
| 53. Paint door or window opening - 2 coats (per side) | 5.00 EA | 0.00 | 37.54 | 2.40 | 38.02 | 228.12 |
| 54. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 18.93 LF | 0.00 | 2.28 | 0.66 | 8.78 | 52.60 |
| Totals: Mud Room | | | | 8.56 | 108.32 | 649.84 |



| Family Room | | | | | Height: 9' |
|---|---|---|---|---|---|
| 577.43 SF Walls | | | 355.58 SF Ceiling | | |
| 933.01 SF Walls & Ceiling | | | 355.58 SF Floor | | |
| 39.51 SY Flooring | | | 60.23 LF Floor Perimeter | | |
| 75.67 LF Ceil. Perimeter | | | | | |

| Missing Wall - Goes to Floor | 14' 11 1/4" X 6' 8" | Opens into KITCHEN |
|---|---|---|
| Missing Wall | 6" X 9' | Opens into HALLWAY |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 55. Heat/AC register - Floor register - Detach & reset | 2.00 EA | 0.00 | 5.17 | 0.00 | 2.06 | 12.40 |
| 56. Oak flooring - #1 common - no finish | 12.00 SF | 0.00 | 9.34 | 6.92 | 23.80 | 142.80 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

### CONTINUED - Family Room

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 57. Vapor barrier - 15# felt | 12.00 SF | 0.00 | 0.25 | 0.06 | 0.62 | 3.68 |
| 58. Sand, stain, and finish wood floor | 355.58 SF | 0.00 | 4.06 | 33.23 | 295.38 | 1,772.26 |
| 59. Add for dustless floor sanding | 355.58 SF | 0.00 | 1.01 | 0.00 | 71.82 | 430.96 |
| 60. Additional coats of finish (per coat) | 355.58 SF | 0.00 | 0.92 | 7.60 | 66.94 | 401.67 |
| WALLS | | | | | | |
| 61. Occupancy sensor - ceiling/wall mounted - Detach & reset | 1.00 EA | 0.00 | 67.43 | 0.00 | 13.48 | 80.91 |
| 62. R&R Quarter round - 3/4" | 60.23 LF | 0.19 | 2.10 | 5.25 | 28.64 | 171.81 |
| 63. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 60.23 LF | 0.00 | 2.28 | 2.09 | 27.88 | 167.29 |
| 64. Interior door - Detach & reset - slab only | 3.00 EA | 0.00 | 28.33 | 0.00 | 17.00 | 101.99 |
| 65. Paint the walls - two coats | 577.43 SF | 0.00 | 1.16 | 13.88 | 136.74 | 820.44 |
| 66. Paint door or window opening - Large - 2 coats (per side) | 1.00 EA | 0.00 | 44.17 | 0.56 | 8.96 | 53.69 |
| 67. Paint door or window opening - 2 coats (per side) | 5.00 EA | 0.00 | 37.54 | 2.40 | 38.02 | 228.12 |
| 68. Seal & paint fireplace mantel | 5.00 LF | 0.00 | 6.23 | 0.10 | 6.26 | 37.51 |
| 69. Paint bookcase - one coat | 40.00 SF | 0.00 | 2.02 | 1.50 | 16.46 | 98.76 |
| 70. Finish bookcase - 1 coat urethane | 40.00 SF | 0.00 | 2.06 | 1.64 | 16.80 | 100.84 |
| Totals: Family Room | | | | 75.23 | 770.86 | 4,625.13 |

| Dining Room | | | Height: 9' |
|---|---|---|---|
| | 389.19 SF Walls | 200.67 SF Ceiling | |
| | 589.86 SF Walls & Ceiling | 200.67 SF Floor | |
| | 22.30 SY Flooring | 38.55 LF Floor Perimeter | |
| | 56.67 LF Ceil. Perimeter | | |

| Missing Wall - Goes to Floor | 5' 1/8" X 6' 8" | Opens into KITCHEN |
|---|---|---|
| Missing Wall - Goes to Floor | 5' 1/8" X 6' 8" | Opens into SITTING_ROO2 |
| Missing Wall - Goes to Floor | 8' 1 1/4" X 6' 8" | Opens into HALLWAY |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 71. Heat/AC register - Floor register - Detach & reset | 1.00 EA | 0.00 | 5.17 | 0.00 | 1.04 | 6.21 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

**CONTINUED - Dining Room**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 72. Sand, stain, and finish wood floor | 200.67 SF | 0.00 | 4.06 | 18.75 | 166.70 | 1,000.17 |
| 73. Add for dustless floor sanding | 200.67 SF | 0.00 | 1.01 | 0.00 | 40.54 | 243.22 |
| 74. Additional coats of finish (per coat) | 200.67 SF | 0.00 | 0.92 | 4.29 | 37.78 | 226.69 |
| WALLS | | | | | | |
| 75. Remove and rehang drapery - per hour | 1.00 HR | 0.00 | 58.18 | 0.00 | 11.64 | 69.82 |
| 76. Paint door or window opening - Large - 2 coats (per side) | 4.00 EA | 0.00 | 44.17 | 2.26 | 35.80 | 214.74 |
| 77. R&R Quarter round - 3/4" | 38.55 LF | 0.19 | 2.10 | 3.36 | 18.34 | 109.98 |
| 78. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 38.55 LF | 0.00 | 2.28 | 1.34 | 17.84 | 107.07 |
| 79. Paint - judges paneling - two coats | 115.64 SF | 0.00 | 5.38 | 3.50 | 125.12 | 750.76 |
| Totals: Dining Room | | | | 33.50 | 454.80 | 2,728.66 |



**Cable Closet**           **Height: 8'**

| | |
|---|---|
| 146.35 SF Walls | 14.19 SF Ceiling |
| 160.54 SF Walls & Ceiling | 14.19 SF Floor |
| 1.58 SY Flooring | 18.29 LF Floor Perimeter |
| 18.29 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 80. Sand, stain, and finish wood floor | 14.19 SF | 0.00 | 4.06 | 1.33 | 11.78 | 70.72 |
| 81. Add for dustless floor sanding | 14.19 SF | 0.00 | 1.01 | 0.00 | 2.86 | 17.19 |
| 82. Additional coats of finish (per coat) | 14.19 SF | 0.00 | 0.92 | 0.30 | 2.68 | 16.03 |
| WALLS | | | | | | |
| 83. Paint door or window opening - 2 coats (per side) | 1.00 EA | 0.00 | 37.54 | 0.48 | 7.60 | 45.62 |
| 84. R&R Quarter round - 3/4" | 18.29 LF | 0.19 | 2.10 | 1.59 | 8.70 | 52.18 |
| 85. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 18.29 LF | 0.00 | 2.28 | 0.63 | 8.46 | 50.79 |
| Totals: Cable Closet | | | | 4.33 | 42.08 | 252.53 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247



**Powder**                                                                                          Height: 8'

| 208.00 SF Walls | 42.00 SF Ceiling |
| 250.00 SF Walls & Ceiling | 42.00 SF Floor |
| 4.67 SY Flooring | 26.00 LF Floor Perimeter |
| 26.00 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 86. Sand, stain, and finish wood floor | 42.00 SF | 0.00 | 4.06 | 3.92 | 34.88 | 209.32 |
| 87. Add for dustless floor sanding | 42.00 SF | 0.00 | 1.01 | 0.00 | 8.48 | 50.90 |
| 88. Additional coats of finish (per coat) | 42.00 SF | 0.00 | 0.92 | 0.90 | 7.90 | 47.44 |
| WALLS | | | | | | |
| 89. Paint door or window opening - 2 coats (per side) | 1.00 EA | 0.00 | 37.54 | 0.48 | 7.60 | 45.62 |
| 90. R&R Quarter round - 3/4" | 26.00 LF | 0.19 | 2.10 | 2.27 | 12.36 | 74.17 |
| 91. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 26.00 LF | 0.00 | 2.28 | 0.90 | 12.04 | 72.22 |
| Totals:  Powder | | | | 8.47 | 83.26 | 499.67 |

**Sitting Room**                                                                                   Height: 8'

| 501.31 SF Walls | 292.11 SF Ceiling |
| 793.42 SF Walls & Ceiling | 292.11 SF Floor |
| 32.46 SY Flooring | 61.83 LF Floor Perimeter |
| 66.84 LF Ceil. Perimeter | |

| **Missing Wall - Goes to Floor** | 5' 1/8" X 6' 8" | Opens into DINING_ROOM |
| **Missing Wall** | 3' 4" X 8' | Opens into STAIR_UP |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

### CONTINUED - Sitting Room

| Subroom: Hallway (1) | | Height: 8' |
|---|---|---|

| | | |
|---|---|---|
| 184.65 SF Walls | 50.11 SF Ceiling | |
| 234.76 SF Walls & Ceiling | 50.11 SF Floor | |
| 5.57 SY Flooring | 21.73 LF Floor Perimeter | |
| 29.83 LF Ceil. Perimeter | | |

| Missing Wall | 2' 7" X 8' | Opens into KITCHEN |
|---|---|---|
| Missing Wall - Goes to Floor | 8' 1 1/4" X 6' 8" | Opens into DINING_ROOM |
| Missing Wall | 3' 5" X 8' | Opens into SITTING_ROO2 |
| Missing Wall | 6" X 8' | Opens into FAMILY_ROOM |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **FLOOR** | | | | | | |
| 92. Heat/AC register - Floor register - Detach & reset | 1.00 EA | 0.00 | 5.17 | 0.00 | 1.04 | 6.21 |
| 93. Sand, stain, and finish wood floor | 342.22 SF | 0.00 | 4.06 | 31.98 | 284.28 | 1,705.67 |
| 94. Add for dustless floor sanding | 342.22 SF | 0.00 | 1.01 | 0.00 | 69.12 | 414.76 |
| 95. Additional coats of finish (per coat) | 342.22 SF | 0.00 | 0.92 | 7.31 | 64.42 | 386.57 |
| **WALLS** | | | | | | |
| 96. Occupancy sensor - ceiling/wall mounted - Detach & reset | 1.00 EA | 0.00 | 67.43 | 0.00 | 13.48 | 80.91 |
| 97. Smoke detector - Detach & reset | 1.00 EA | 0.00 | 65.30 | 0.00 | 13.06 | 78.36 |
| 98. Thermostat - Detach & reset | 1.00 EA | 0.00 | 55.77 | 0.00 | 11.16 | 66.93 |
| 99. Door bell/chime - Detach & reset | 1.00 EA | 0.00 | 63.76 | 0.00 | 12.76 | 76.52 |
| 100. Interior door - Detach & reset - slab only | 1.00 EA | 0.00 | 28.33 | 0.00 | 5.66 | 33.99 |
| 101. Paint door or window opening - Large - 2 coats (per side) | 1.00 EA | 0.00 | 44.17 | 0.56 | 8.96 | 53.69 |
| 102. Paint door or window opening - 2 coats (per side) | 5.00 EA | 0.00 | 37.54 | 2.40 | 38.02 | 228.12 |
| Allow for painting both faces of framed portal into office. | | | | | | |
| 103. R&R Quarter round - 3/4" | 83.56 LF | 0.19 | 2.10 | 7.29 | 39.74 | 238.39 |
| 104. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 83.56 LF | 0.00 | 2.28 | 2.90 | 38.68 | 232.10 |
| **CEILING** | | | | | | |
| 105. Recessed light fixture - Detach & reset trim only | 10.00 EA | 0.00 | 3.43 | 0.00 | 6.86 | 41.16 |
| 106. In-wall / In-ceiling speaker - Detach & reset | 2.00 EA | 0.00 | 24.45 | 0.00 | 9.78 | 58.68 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

**CONTINUED - Sitting Room**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 107. Paint the ceiling - two coats | 342.22 SF | 0.00 | 1.16 | 8.22 | 81.04 | 486.24 |
| 108. Paint crown molding, oversized - two coats | 96.67 LF | 0.00 | 1.90 | 1.63 | 37.06 | 222.36 |
| 109. Mask and prep for paint - plastic, paper, tape (per LF) | 96.67 LF | 0.00 | 1.63 | 2.32 | 31.98 | 191.87 |
| Totals: Sitting Room | | | | 64.61 | 767.10 | 4,602.53 |



| **Office** | | | | | **Height: 8' 11"** | |
|---|---|---|---|---|---|---|

434.63 SF Walls       146.13 SF Ceiling
580.76 SF Walls & Ceiling    146.13 SF Floor
16.24 SY Flooring      48.53 LF Floor Perimeter
48.53 LF Ceil. Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 110. Heat/AC register - Floor register - Detach & reset | 1.00 EA | 0.00 | 5.17 | 0.00 | 1.04 | 6.21 |
| 111. Sand, stain, and finish wood floor | 146.13 SF | 0.00 | 4.06 | 13.66 | 121.40 | 728.35 |
| 112. Add for dustless floor sanding | 146.13 SF | 0.00 | 1.01 | 0.00 | 29.52 | 177.11 |
| 113. Additional coats of finish (per coat) | 146.13 SF | 0.00 | 0.92 | 3.12 | 27.50 | 165.06 |
| WALLS | | | | | | |
| 114. Interior door - Detach & reset - slab only | 3.00 EA | 0.00 | 28.33 | 0.00 | 17.00 | 101.99 |
| 115. Paint door or window opening - Large - 2 coats (per side) | 1.00 EA | 0.00 | 44.17 | 0.56 | 8.96 | 53.69 |
| 116. Paint door or window opening - 2 coats (per side) | 5.00 EA | 0.00 | 37.54 | 2.40 | 38.02 | 228.12 |
| 117. R&R Quarter round - 3/4" | 48.53 LF | 0.19 | 2.10 | 4.23 | 23.06 | 138.42 |
| 118. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 48.53 LF | 0.00 | 2.28 | 1.68 | 22.48 | 134.81 |
| Totals: Office | | | | 25.65 | 288.98 | 1,733.76 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247



| **Coat Closet** | | | | | **Height: 8'** |

| 99.47 SF Walls | 8.34 SF Ceiling |
| 107.81 SF Walls & Ceiling | 8.34 SF Floor |
| 0.93 SY Flooring | 12.43 LF Floor Perimeter |
| 12.43 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **WALLS** | | | | | | |
| 119. Paint door or window opening - 2 coats (per side) | 1.00 EA | 0.00 | 37.54 | 0.48 | 7.60 | 45.62 |
| 120. R&R Quarter round - 3/4" | 12.43 LF | 0.19 | 2.10 | 1.08 | 5.92 | 35.46 |
| 121. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 12.43 LF | 0.00 | 2.28 | 0.43 | 5.74 | 34.51 |
| **FLOOR** | | | | | | |
| 122. Sand, stain, and finish wood floor | 8.34 SF | 0.00 | 4.06 | 0.78 | 6.94 | 41.58 |
| 123. Add for dustless floor sanding | 8.34 SF | 0.00 | 1.01 | 0.00 | 1.68 | 10.10 |
| 124. Additional coats of finish (per coat) | 8.34 SF | 0.00 | 0.92 | 0.18 | 1.58 | 9.43 |
| Totals: Coat Closet | | | | 2.95 | 29.46 | 176.70 |



| **Office Closet** | | | | | **Height: 8'** |

| 100.89 SF Walls | 8.52 SF Ceiling |
| 109.41 SF Walls & Ceiling | 8.52 SF Floor |
| 0.95 SY Flooring | 12.61 LF Floor Perimeter |
| 12.61 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **FLOOR** | | | | | | |
| 125. Sand, stain, and finish wood floor | 8.52 SF | 0.00 | 4.06 | 0.80 | 7.08 | 42.47 |
| 126. Add for dustless floor sanding | 8.52 SF | 0.00 | 1.01 | 0.00 | 1.72 | 10.33 |
| 127. Additional coats of finish (per coat) | 8.52 SF | 0.00 | 0.92 | 0.18 | 1.60 | 9.62 |
| **WALLS** | | | | | | |
| 128. Paint door or window opening - 2 coats (per side) | 1.00 EA | 0.00 | 37.54 | 0.48 | 7.60 | 45.62 |
| 129. R&R Quarter round - 3/4" | 12.61 LF | 0.19 | 2.10 | 1.10 | 6.00 | 35.98 |

BRAUNSTEIN_WATER



**CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

### CONTINUED - Office Closet

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 130. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 12.61 LF | 0.00 | 2.28 | 0.44 | 5.84 | 35.03 |
| Totals: Office Closet | | | | 3.00 | 29.84 | 179.05 |



**Storage Area/Room**                                    **Height: 8'**

| | |
|---|---|
| 208.00 SF Walls | 42.00 SF Ceiling |
| 250.00 SF Walls & Ceiling | 42.00 SF Floor |
| 4.67 SY Flooring | 26.00 LF Floor Perimeter |
| 26.00 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR | | | | | | |
| 131. Sand, stain, and finish wood floor | 42.00 SF | 0.00 | 4.06 | 3.92 | 34.88 | 209.32 |
| 132. Add for dustless floor sanding | 42.00 SF | 0.00 | 1.01 | 0.00 | 8.48 | 50.90 |
| 133. Additional coats of finish (per coat) | 42.00 SF | 0.00 | 0.92 | 0.90 | 7.90 | 47.44 |
| WALLS | | | | | | |
| 134. Paint door or window opening - 2 coats (per side) | 1.00 EA | 0.00 | 37.54 | 0.48 | 7.60 | 45.62 |
| 135. R&R Quarter round - 3/4" | 26.00 LF | 0.19 | 2.10 | 2.27 | 12.36 | 74.17 |
| 136. Paint baseboard w/cap &/or shoe, oversized - 2 coats | 26.00 LF | 0.00 | 2.28 | 0.90 | 12.04 | 72.22 |
| Totals: Storage Area/Room | | | | 8.47 | 83.26 | 499.67 |



**Screened Lanai**                                    **Height: 8'**

| | |
|---|---|
| 372.17 SF Walls | 218.88 SF Ceiling |
| 591.06 SF Walls & Ceiling | 218.88 SF Floor |
| 24.32 SY Flooring | 46.52 LF Floor Perimeter |
| 46.52 LF Ceil. Perimeter | |

BRAUNSTEIN_WATER                              4/25/2023      Page: 13

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

**CONTINUED - Screened Lanai**

**Subroom:  Room2 (1)**                                                    Height: 8'



| 112.16 SF Walls | 113.62 SF Ceiling |
| 225.79 SF Walls & Ceiling | 113.62 SF Floor |
| 12.62 SY Flooring | 14.02 LF Floor Perimeter |
| 14.02 LF Ceil. Perimeter | |

| **Missing Wall** | **15' 10 5/16" X 8'** | **Opens into ROOM7** |
| **Missing Wall** | **20' 10 13/16" X 8'** | **Opens into SCREENED_LA2** |

**Subroom:  Room3 (2)**                                                    Height: 8'



| 171.94 SF Walls | 52.73 SF Ceiling |
| 224.67 SF Walls & Ceiling | 52.73 SF Floor |
| 5.86 SY Flooring | 21.49 LF Floor Perimeter |
| 21.49 LF Ceil. Perimeter | |

| **Missing Wall** | **15' 10 5/16" X 8'** | **Opens into ROOM2** |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| FLOOR - No Damage | | | | | | |
| 137. R&R Deck planking - 5/4" treated lumber, #2 (per SF) | 56.00 SF | 2.15 | 7.97 | 12.76 | 115.90 | 695.38 |
| 138. Stain/finish deck | 385.24 SF | 0.00 | 1.14 | 10.29 | 89.90 | 539.36 |
| 139. Mask the floor per square foot - plastic and tape - 4 mil | 385.24 SF | 0.00 | 0.29 | 2.06 | 22.76 | 136.54 |
| **Allow to protect cardboard from weather in outside room.** | | | | | | |
| 140. Floor protection - cardboard and tape | 385.24 SF | 0.55 | 0.00 | 9.60 | 44.30 | 265.78 |
| WALLS | | | | | | |
| 141. Brick veneer - Detach & reset | 65.00 SF | 0.00 | 58.36 | 1.79 | 759.04 | 4,554.23 |
| D&R brick to access structural framing repair. | | | | | | |
| 142. Re-point masonry | 65.00 SF | 0.00 | 6.88 | 0.52 | 89.54 | 537.26 |
| Allow for custom mortar | | | | | | |
| 143. TV Brackets - Wall or ceiling mounted - Detach & reset | 1.00 EA | 0.00 | 59.36 | 0.00 | 11.88 | 71.24 |
| 144. In-wall / In-ceiling speaker - Detach & reset | 2.00 EA | 0.00 | 24.45 | 0.00 | 9.78 | 58.68 |
| 145. Trim board - 1"x 8" to 1"x 12" - Detach & reset | 82.03 LF | 0.00 | 4.82 | 0.22 | 79.12 | 474.72 |

BRAUNSTEIN_WATER                                          4/25/2023          Page: 14



## CLAIMS DETECTIVES USA, INC.

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

**CONTINUED - Screened Lanai**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 146. Paint door or window opening - Large - 2 coats (per side) | 1.00 EA | 0.00 | 44.17 | 0.56 | 8.96 | 53.69 |
| 147. Seal & paint trim - two coats | 82.03 LF | 0.00 | 1.71 | 0.95 | 28.26 | 169.48 |
| CEILING | | | | | | |
| 148. Paint the ceiling - two coats | 385.24 SF | 0.00 | 1.16 | 9.26 | 91.24 | 547.38 |
| Totals: Screened Lanai | | | | 48.01 | 1,350.68 | 8,103.74 |



**Stair Up**                                                                 Height: 8'

| | |
|---|---|
| 86.40 SF Walls | 12.44 SF Ceiling |
| 98.84 SF Walls & Ceiling | 12.44 SF Floor |
| 1.38 SY Flooring | 10.80 LF Floor Perimeter |
| 10.80 LF Ceil. Perimeter | |

**Missing Wall**          **3' 4" X 8'**          **Opens into SITTING_ROO2**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| NO DAMAGE THIS AREA | | | | | | |
| Totals: Stair Up | | | | 0.00 | 0.00 | 0.00 |

**Stair Down**                                                               Height: 8'

| | |
|---|---|
| 220.27 SF Walls | 34.78 SF Ceiling |
| 255.05 SF Walls & Ceiling | 34.78 SF Floor |
| 3.86 SY Flooring | 27.53 LF Floor Perimeter |
| 27.53 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| NO DAMAGE THIS AREA | | | | | | |
| Totals: Stair Down | | | | 0.00 | 0.00 | 0.00 |
| Total: Main Level | | | | 2,064.98 | 11,117.74 | 66,705.34 |

**CRAWL**

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247



| Stairs | | | | | Height: 17' |
|---|---|---|---|---|---|
| | 296.29 SF Walls | | 35.25 SF Ceiling | | |
| | 331.54 SF Walls & Ceiling | | 64.75 SF Floor | | |
| | 7.19 SY Flooring | | 28.52 LF Floor Perimeter | | |
| | 23.50 LF Ceil. Perimeter | | | | |

| Missing Wall | 3' X 17' | | Opens into CRAWLSPACE | | |
|---|---|---|---|---|---|
| **DESCRIPTION** | **QTY** | **REMOVE** | **REPLACE** | **TAX** | **O&P** | **TOTAL** |
| 149. Clean stair tread - per side - per LF | 42.00 LF | 0.00 | 0.79 | 0.04 | 6.64 | 39.86 |
| 150. Clean stair riser - per side - per LF | 42.00 LF | 0.00 | 0.66 | 0.04 | 5.54 | 33.30 |
| 151. Clean the walls and ceiling | 331.54 SF | 0.00 | 0.43 | 0.30 | 28.58 | 171.44 |
| 152. Clean handrail - wall mounted | 12.00 LF | 0.00 | 0.63 | 0.00 | 1.52 | 9.08 |
| Totals: Stairs | | | | 0.38 | 42.28 | 253.68 |



| Crawlspace | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 1,475.71 SF Walls | | 1,550.20 SF Ceiling | | |
| | 3,025.91 SF Walls & Ceiling | | 1,550.20 SF Floor | | |
| | 172.24 SY Flooring | | 184.46 LF Floor Perimeter | | |
| | 184.46 LF Ceil. Perimeter | | | | |

| Missing Wall | 3' X 8' | Opens into STAIRS |
|---|---|---|



| Subroom: Acess Walk (1) | | | | | Height: 8' |
|---|---|---|---|---|---|
| | 80.11 SF Walls | | 91.09 SF Ceiling | | |
| | 171.09 SF Walls & Ceiling | | 91.09 SF Floor | | |
| | 10.12 SY Flooring | | 9.56 LF Floor Perimeter | | |
| | 9.56 LF Ceil. Perimeter | | | | |

| Missing Wall | 21' 4 1/2" X 8' | | Opens into CRAWLSPACE | | |
|---|---|---|---|---|---|
| Missing Wall | 22' 5 3/8" X 8' | | Opens into CRAWLSPACE | | |
| **DESCRIPTION** | **QTY** | **REMOVE** | **REPLACE** | **TAX** | **O&P** | **TOTAL** |
| 153. R&R Moisture protection for crawl space - visqueen - 6 mil | 1,641.29 SF | 0.09 | 0.43 | 8.76 | 172.46 | 1,034.69 |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

### CONTINUED - Crawlspace

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 154. Apply plant-based anti-microbial agent to the floor | 1,641.29 SF | 0.00 | 0.29 | 7.30 | 96.66 | 579.93 |
| Totals: Crawlspace | | | | 16.06 | 269.12 | 1,614.62 |
| Total: CRAWL | | | | 16.44 | 311.40 | 1,868.30 |
| Total: SKETCH1 | | | | 2,081.42 | 11,429.14 | 68,573.64 |

### General Conditions

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 155. Dumpster load - Approx. 12 yards, 1-3 tons of debris | 1.00 EA | 490.00 | 0.00 | 0.00 | 98.00 | 588.00 |
| 156. AdvantaClaen pack out, store offsite, pack in. | 1.00 EA | 0.00 | 11,760.00 | 0.00 | 0.00 | 11,760.00 |
| 157. Structural framings Bluestone LLC | 1.00 EA | 0.00 | 8,210.00 | 0.00 | 0.00 | 8,210.00 |
| Labor to remove and replace floor sill plate, floor joists, wall studs and subfloor | | | | | | |
| 158. Permits & Fees (Agreed Price) | 1.00 EA | 0.00 | 2,500.00 | 0.00 | 500.00 | 3,000.00 |
| Allow to cover required permits City of Atlanta | | | | | | |
| 159. Temporary toilet (per month) | 3.00 MO | 0.00 | 174.00 | 0.00 | 104.40 | 626.40 |
| Totals: General Conditions | | | | 0.00 | 702.40 | 24,184.40 |

### Labor Minimums Applied

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 160. Drywall labor minimum | 1.00 EA | 0.00 | 0.97 | 0.00 | 0.20 | 1.17 |
| 161. Finish hardware labor minimum | 1.00 EA | 0.00 | 86.10 | 0.00 | 17.22 | 103.32 |
| Totals: Labor Minimums Applied | | | | 0.00 | 17.42 | 104.49 |
| **Line Item Totals: BRAUNSTEIN_WATER** | | | | **2,081.42** | **12,148.96** | **92,862.53** |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

## Grand Total Areas:

| | | |
|---|---|---|
| 6,278.59 SF Walls | 3,646.25 SF Ceiling | 9,924.84 SF Walls and Ceiling |
| 3,675.75 SF Floor | 408.42 SY Flooring | 730.45 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 811.75 LF Ceil. Perimeter |
| | | |
| 3,675.75 Floor Area | 3,846.64 Total Area | 5,755.97 Interior Wall Area |
| 3,535.90 Exterior Wall Area | 383.30 Exterior Perimeter of Walls | |
| | | |
| 0.00 Surface Area | 0.00 Number of Squares | 0.00 Total Perimeter Length |
| 0.00 Total Ridge Length | 0.00 Total Hip Length | |

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 78,632.15 |
| Material Sales Tax | 2,081.42 |
| Subtotal | 80,713.57 |
| Overhead | 6,074.48 |
| Profit | 6,074.48 |
| **Replacement Cost Value** | **$92,862.53** |
| **Net Claim** | **$92,862.53** |

Mike Sheehan

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| APPLIANCES | 2,591.49 | 2.79% |
| CABINETRY | 22,339.71 | 24.06% |
| CONT: GARMENT & SOFT GOODS CLN | 58.18 | 0.06% |
| CLEANING | 211.02 | 0.23% |
| GENERAL DEMOLITION | 1,810.19 | 1.95% |
| DOORS | 198.31 | 0.21% |
| DRYWALL | 527.67 | 0.57% |
| ELECTRICAL | 839.74 | 0.90% |
| FLOOR COVERING - WOOD | 10,002.80 | 10.77% |
| PERMITS AND FEES | 2,500.00 | 2.69% |
| FINISH CARPENTRY / TRIMWORK | 1,412.72 | 1.52% |
| FINISH HARDWARE | 145.46 | 0.16% |
| FRAMING & ROUGH CARPENTRY | 1,158.11 | 1.25% |
| HEAT, VENT & AIR CONDITIONING | 81.62 | 0.09% |
| LIGHT FIXTURES | 96.04 | 0.10% |
| MASONRY | 4,240.60 | 4.57% |
| MOISTURE PROTECTION | 705.75 | 0.76% |
| PLUMBING | 998.79 | 1.08% |
| PAINTING | 6,453.04 | 6.95% |
| SPECIALTY ITEMS | 146.70 | 0.16% |
| TILE | 1,146.24 | 1.23% |
| TEMPORARY REPAIRS | 522.00 | 0.56% |
| WATER EXTRACTION & REMEDIATION | 475.97 | 0.51% |
| **O&P Items Subtotal** | **58,662.15** | **63.17%** |

| Non-O&P Items | Total | % |
|---|---:|---:|
| CONTENT MANIPULATION | 11,760.00 | 12.66% |
| FRAMING & ROUGH CARPENTRY | 8,210.00 | 8.84% |
| **Non-O&P Items Subtotal** | **19,970.00** | **21.50%** |
| O&P Items Subtotal | 58,662.15 | 63.17% |
| Material Sales Tax | 2,081.42 | 2.24% |
| Overhead | 6,074.48 | 6.54% |
| Profit | 6,074.48 | 6.54% |
| **Total** | **92,862.53** | **100.00%** |

**Minimum Charges vs. Service Charges**

 **CLAIMS DETECTIVES USA, INC.**

2615 GEORGE BUSBEE PARKWAY
SUITE 11-403
KENNESAW, GA 30144-4981
TAX ID# 85-3130247

The key distinction between a labor minimum and a service charge is that the minimum charge includes time (labor)needed to actually perform the work while the service charges does not. Service charges, as defined, include only the drive-time and mobilization fees which are applied in many cases regardless of the amount of work being done.

**General Contractor and Subcontractor Overhead and Profit**

When Xactware surveys prices from contractors in the field, the unit prices the contractors provide are intended to be inclusive of costs and fees associated with performing the task, but exclude any general overhead and profit percentage.
While most often what is referred to as overhead and profit (O&P) is general overhead and profit paid to the general contractor, there is an additional category of O&P that is often not mentioned: this is the O&P required by the subcontractor who performs the work.
The unit prices published by Xactware should include the general contractors cost to either perform the work with in-house employees or to hire a subcontractor.
Because subcontractors incur their own overhead and also desire a profit, it can be reasonably assumed that the unit prices published by Xactware include the subcontractors O&P, but do not include the general contractors O&P.

**Summary:**
When used, general overhead and profit is most commonly added to the end of the estimate bid as a percentage of the total job; therefore, the general overhead and profit percentage is not included within the unit prices published by Xactware.
Subcontractor's O&P is intended to be included within the unit prices



CRAWL

Page: 22

4/25/2023

N ⇑

Crawlspace

Acess Walk (1)

## AdvantaClean of Norcross and Buford

3050 Business Park Dr. Suite D
Norcross, GA 30071

| | |
|---|---|
| Insured: | John Barriet |
| Property: | 1723 Inverness Ave |
| | Atlanta, GA 30306 |

| | | | |
|---|---|---|---|
| Estimator: | Sari Papazian | Business: | (404) 946-4043 |
| Company: | AdvantaClean of Norcross and Buford | E-mail: | sari.papazian@advantaclean.com |

**Claim Number:** 11-44T3-49M          **Policy Number:**          **Type of Loss:** Water Damage

| | | | |
|---|---|---|---|
| Date of Loss: | 1/19/2023 6:48 PM | Date Received: | |
| Date Inspected: | | Date Entered: | 2/17/2023 11:43 AM |

| | |
|---|---|
| Price List: | GAAT8X_JAN23 |
| | Restoration/Service/Remodel |
| Estimate: | BARRIET_JOHN |

## AdvantaClean of Norcross and Buford

3050 Business Park Dr. Suite D
Norcross, GA 30071

### BARRIET_JOHN

#### Pack out

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 1. Moving van (21'-27') and equipment (per day) | 1.00 EA | 0.00 | 259.64 | 0.00 | 259.64 |
| 2. Cargo van and equipment (per day) | 1.00 EA | 0.00 | 101.10 | 0.00 | 101.10 |
| 3. Inventory, Packing, Boxing, and Moving charge - per hour | 96.00 HR | 0.00 | 43.04 | 0.00 | 4,131.84 |
| 4. Contents Evaluation and/or Supervisor/Admin - per hour | 3.00 HR | 0.00 | 62.59 | 0.00 | 187.77 |
| Contents tracker expedites packing and insures accurate chain of custody and inventory of contents | | | | | |
| 5. Provide stretch film/wrap | 3.00 RL | 0.00 | 28.36 | 5.96 | 91.04 |
| 6. Bubble Wrap 24" wide - Add-on cost for fragile items | 300.00 LF | 0.00 | 0.17 | 3.57 | 54.57 |
| 7. Provide furniture lightweight blanket/pad | 68.00 EA | 0.00 | 9.07 | 43.17 | 659.93 |
| 8. Provide box, packing paper & tape - small size | 30.00 EA | 0.00 | 2.83 | 5.94 | 90.84 |
| 9. Provide box, packing paper & tape - medium size | 35.00 EA | 0.00 | 3.78 | 9.26 | 141.56 |
| 10. Provide box, packing paper & tape - large size | 12.00 EA | 0.00 | 5.06 | 4.25 | 64.97 |
| 11. Provide wardrobe box & tape - large size | 2.00 EA | 0.00 | 26.64 | 3.73 | 57.01 |

Totals:  Pack out | | | | 75.88 | 5,840.27

#### Pack Back

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 12. Moving van (21'-27') and equipment (per day) | 1.00 EA | 0.00 | 259.64 | 0.00 | 259.64 |
| 13. Cargo van and equipment (per day) | 1.00 EA | 0.00 | 101.10 | 0.00 | 101.10 |
| 14. Inventory, Packing, Boxing, and Moving charge - per hour | 88.00 HR | 0.00 | 43.04 | 0.00 | 3,787.52 |
| 15. Contents Evaluation and/or Supervisor/Admin - per hour | 3.00 HR | 0.00 | 62.59 | 0.00 | 187.77 |
| 16. Haul debris - per pickup truck load - including dump fees | 2.00 EA | 164.12 | 0.00 | 0.00 | 328.24 |

Totals:  Pack Back | | | | 0.00 | 4,664.27

#### Storage

## AdvantaClean of Norcross and Buford

3050 Business Park Dr. Suite D
Norcross, GA 30071

### CONTINUED - Storage

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 17. Off-site storage & insur. - climate control. (per month) | 900.00 SF | 0.00 | 1.76 | 0.00 | 1,584.00 |
| 3 months | | | | | |
| Totals: Storage | | | | 0.00 | 1,584.00 |
| **Line Item Totals: BARRIET_JOHN** | | | | **75.88** | **12,088.54** |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 328.24 | 2.72% | 328.24 | 2.72% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 11,760.30 | 97.28% | 11,760.30 | 97.28% |
| Total | 12,088.54 | 100.00% | 12,088.54 | 100.00% |

**AdvantaClean of Norcross and Buford**

3050 Business Park Dr. Suite D
Norcross, GA 30071

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 328.24 |
| **Replacement Cost Value** | **$328.24** |
| **Net Claim** | **$328.24** |

Sari Papazian

**AdvantaClean of Norcross and Buford**

3050 Business Park Dr. Suite D
Norcross, GA 30071

## Summary for Contents

| | |
|---|---:|
| Line Item Total | 11,684.42 |
| Material Sales Tax | 75.88 |
| **Replacement Cost Value** | **$11,760.30** |
| **Net Claim** | **$11,760.30** |

Sari Papazian

## AdvantaClean of Norcross and Buford

3050 Business Park Dr. Suite D
Norcross, GA 30071

### Recap of Taxes

|  | Material Sales Tax (7%) | Storage Rental Tax (7%) | Local Food Tax (3%) |
|---|---|---|---|
| Line Items | 75.88 | 0.00 | 0.00 |
| **Total** | **75.88** | **0.00** | **0.00** |

## AdvantaClean of Norcross and Buford

3050 Business Park Dr. Suite D
Norcross, GA 30071

This is only an Initial estimate and is subject to change due to the scope of work performed. A Final estimate will be sent with actual time and materials used.

# BLUESTONE, LLC

**CONSTRUCTION SERVICES**
1308 Bexley Place
Kennesaw, GA 30144
bluestonellc@hotmail.com

**Proposed Location**
Glenn Braunstein
1723 Inverness Ave.
Atlanta, GA 30306

## Scope of Work

**Structural**
Remove and replace floor sill plate, floor joists, wall studs and subfloor on 4' x 7' area
Detach and reinstall electrical wiring
Detach and reinstall copper water supply lines
Detach and reinstall PVC drain lines

**Total   $8,210.00**

All materials and labor are included in this price
Upon agreement a contract will be signed by both parties
This estimate is valid for 30 days

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **GLENN BRAUNSTEIN AND** | ) | |
| **JESSICA BRAUNSTEIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | 23-A-05645-5 |
| **COMPANY,** | ) | |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | | |

### PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiffs, **Glenn Braunstein and Jessica Braunstein**, by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **State Farm Fire and Casualty Company**, to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

### GENERAL INSTRUCTIONS

1. You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other Persons

directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4. Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiffs to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiffs during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a. The date the document was prepared or created;

    b. The name and title of the author or authors of the document;

    a. A summary of the subject matter of the document;

    b. The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c. The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d. A statement of the basis on which privilege is claimed; and

    e. The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholders' Claim" shall refer to Claim No. 11-44T3-49M, which was drafted by the Insurance Company and issued to the Policyholders for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a.  when used to refer to a document, means to state the following:

        1.The subject of the document;

        2.The title of the document;

        3.The type of document (e.g., letter, memorandum, telegram, chart);

4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6. The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff(s)" and "Policyholder(s)" mean the above-captioned Plaintiffs or the Policyholders listed on 11-BA-D011-1 and his/her/its/their employees, representative, agents, employees, servants, officers, and directors.

10. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

11. "Policy" means Policy No. 11-BA-D011-1 issued by State Farm Fire and Casualty Company.

12. "Property" or "Insured Property" means the property located at 1723 Inverness Ave, Atlanta, GA 30306.

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around January 19, 2023, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

### 1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiffs' claim for insurance benefits arising from the Loss on or about January 19, 2023, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from January 19, 2023 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiffs' Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiffs all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiffs; the date and manner in which You notified the Plaintiffs in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiffs.

7.

Have You extended coverage for any part of Plaintiffs' Claim for insurance benefits, or have You denied or rejected Plaintiffs' Claim? If You extended coverage for any part of Plaintiffs' Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiffs' Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiffs' Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiffs' Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiffs' deductible.

8.

Do You contend the damage to the Property can be repaired? If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This

request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Water losses that were in effect on January 19, 2023 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiffs' cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Water claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding January 19, 2023 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiffs failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiffs failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative

Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiffs' Complaint.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

All documents responsive to Plaintiffs' Interrogatories identified in Your responses to Plaintiffs' Interrogatories or otherwise reviewed or relied upon in responding to Plaintiffs' Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Water claims in the state of Georgia for the year preceding January 19, 2023 to present.

6.

The Operation Guides which relate to the handling of Water claims in the state of Georgia in effect for the year preceding January 19, 2023 to present.

7.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel, contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

8.

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

9.

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Water claims in the state of Georgia that were issued one year preceding January 19, 2023 through the present, including, but not limited to, memoranda issued to claims adjusters.

10.

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event

published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

11.

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiffs' agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

12.

The documents reflecting reserves applied to the Claim.

13.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

14.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which

the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

15.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

17.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

18.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

19.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

20.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this this 29th day of June, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) bruce@lawhuggins.com
(c) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

D. Bruce Janzen, Jr., Esq.
Georgia Bar No.: 245474
J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*

E-FILED IN OFFICE - SP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**23-A-05645-5**

6/29/2023 2:35 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **GLENN BRAUNSTEIN AND** | ) |
| **JESSICA BRAUNSTEIN,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| **STATE FARM FIRE AND** | ) |
| **CASUALTY COMPANY** | ) |
| | ) |
| **a foreign corporation,** | ) |
| | ) |
| **Defendant.** | ) |

**CIVIL ACTION FILE NO.:**
23-A-05645-5

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant State Farm Fire and Casualty Company by serving them with the *Summons, Complaint and Exhibits*, and *Plaintiffs' First Set of Interrogatories and Request for Production of Documents* in accordance with the Court's rules to Defendant State Farm Fire and Casualty Company at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant State Farm Fire and Casualty Company**
**2 Sun Court, Suite 400**
**Peachtree Corners, GA 30092**

Respectfully submitted, this 29th day of June, 2023.

RESPECTFULLY SUBMITTED,

**The Huggins Law Firm, LLC**
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) bruce@lawhuggins.com
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

D. Bruce Janzen, Jr., Esq.
Georgia Bar No.: 245474
J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
*Attorneys for the Plaintiff*