ID CARDS INCLUDED

Coverage Provided By:
DIRECT GENERAL INS CO
1281 MURFREESBORO RD
NASHVILLE TN 37217

www.directgeneral.com
English: 800-627-8006
Espanol: 888-611-5301

Policy Number: 09GABD590003426
Prior Policy Number: GAQU-180073045
Account Number: 000008053809

From: 04:52 PM CT    April 27, 2018
To: 12:01 AM CT    January 30, 2019

Date Processed:    April 27, 2018



OO2158   01 MB 0.421   **AUT0   T1 0 1102 30120-587229

Mr. Roger L Hartsfield

Cartersville GA 30120-5872

AGENT:
Phone: (770) 606-8400
DIRECT GENERAL INS AGENCY
863 JF Harris Pkwy SE
Suite 810
Cartersville, GA 301202462

## Amended Policy Declarations - Personal Auto
Your policy consists of this Declarations Page, your Personal Auto Policy, your Application for Insurance and any
endorsements th t app y, in luding tho e issued t  you at any sub equ nt re ewa by u .

### Description of insured property:

| Unit | Year | Make/Model | Description | Identification | Use | Ter | Cls |
|------|------|------------|-------------|----------------|-----|-----|-----|
| 1 | 1996 | TYTA AVLNXL/XLS | 4 DOOR, 6-FI | 4T1BF12B7TU100858 | PL | C77 | FS18 |
| 2 | 1990 | CHEV 10/1500 PU | PICKUP, 8-35 | 1GCDC14K1LZ177683 | PL | C77 | FM41 |
| 3 | 2008 | DODG CALIBER SX | STATION WAGO | 1B3HB48B38D655401 | PL | C77 | MM53 |

The insured property is principally garaged at the above address or:
29 Duncan Dr Sw    Cartersville    GA  30120

Coverage is provided only where a premium, limit or deductible are shown:

| Coverage Description | Coverage Limit | Unit 1 Premium | Ded | Unit 2 Premium | Ded | Unit 3 Premium | Ded |
|----------------------|----------------|----------------|-----|----------------|-----|----------------|-----|
| Bodily Injury | 25,000/person 50,000/accdnt | ▆ | | ▆ | | ▆ | |
| Property Damage | 25,000/accdnt | ▆ | | ▆ | | ▆ | |
| Comprehensive | | | 500 | | | | |
| Collision | | | 500 | | | | |
| Accidental Death | 5,000/person | | | | | | |
| Full Term Premium | | ▆ | | | | ▆ | |

Total Changes To Premium

| Driver | Name | Type Of Driver |
|--------|------|----------------|
| 001 | Roger L Hartsfield | Principal |
| 002 | Shannon Hartsfield | Principal |
| 003 | Hannah Simeon | Principal |

0002158,0006432,Page 01 of 04 -01-1102

A

Coverage Provided By:
## DIRECT GENERAL INS. CO.
1281 MURFREESBORO RD,
NASHVILLE TN 37217

NAMED INSURED:
Mr. Roger L Hartsfield

Cartersville, GA  30120

Policy Number:09GABD590003426
Prior Policy Number:GAQU-180073045
Account Number:0008053809

From: 04:52 PM (CT)    April 27,2018
To: 12:01 AM CT   January 30,2019
Date Processed:    April 27,2018

## Amended Policy Declarations - Personal Auto - continued

### Endorsements made part of this policy at time of issue:

| | |
|---|---|
| GA09AU01010116 | APPLICATION |
| GA09AU02010116 | POLICY AND ENDORSEMENTS |

### NOTICE

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment.   The fee amount will be shown on your billing information and is subject to change.

What is this? A QR code provides information and links for  your mobile device. Download a QR code reader app from your app store and snap a picture.



Manage Your Account with Your Mobile Phone. Click this QR code to link to useful tools on our website.

Authorized Representative

Domicile Address:
9636 N. Highgate Circle
Indianapolis, IN  46250

0002158,0006432,Page 02 of 04 -01-1102



**GEORGIA
PERSONAL AUTO POLICY**

**This Policy and the Declarations Page and Application, which are incorporated into and made part of this Policy, and any Endorsements issued by us, form the contract between you and us.**

DIRECT GENERAL INSURANCE COMPANY
Administrative Office:
1281 Murfreesboro Road
Nashville, TN 37217

If you have questions, need information about your policy, or if you need assistance in resolving a complaint, please call us at 1-800-627-8006.



Scan the above QR code with your phone to access our Mobile Claims Website.

## TABLE OF CONTENTS.

|                                                    | **Beginning on Page** |
|----------------------------------------------------|:---------------------:|
| **AGREEMENT**                                      | 3                     |
| **DEFINITIONS**                                    | 3                     |
| **DUTIES AFTER AN ACCIDENT OR LOSS**               | 13                    |
| **PART A—LIABILITY COVERAGE**                      | 16                    |
| Insuring Agreement                                 | 16                    |
| Additional Definitions for Part A                  | 16                    |
| Supplementary Payments                             | 16                    |
| Exclusions                                         | 18                    |
| Limit of Liability                                 | 18                    |
| Out of State                                       | 22                    |
| Financial Responsibility                           | 23                    |
| Other Insurance                                    | 24                    |
| **PART B—MEDICAL PAYMENTS COVERAGE**               | 25                    |
| Insuring Agreement                                 | 25                    |
| Additional Definitions for Part B                  | 26                    |
| Exclusions                                         | 27                    |
| Limit of Liability                                 | 29                    |
| Assignment of Benefits                             | 30                    |
| Other Insurance                                    | 30                    |
| **PART C—UNINSURED MOTORIST COVERAGE**             | 31                    |
| Insuring Agreement                                 | 31                    |
| Additional Definitions for Part C                  | 31                    |
| Additional Duties for Part C                       | 34                    |
| Exclusions                                         | 34                    |
| Limit of Liability                                 | 37                    |
| Other Insurance                                    | 39                    |
| **PART D—COVERAGE FOR DAMAGE TO YOUR AUTO**        | 40                    |
| Insuring Agreement                                 | 40                    |
| Child Restraints                                   | 41                    |
| Transportation Expenses Coverage                   | 41                    |
| Optional Rental Reimbursement                      | 42                    |
| Optional Towing and Labor Costs                    | 43                    |

| | |
|---|---|
| Optional Custom Parts & Equipment Coverage | 44 |
| Additional Definitions for Part D | 45 |
| Exclusions | 46 |
| Limit of Liability | 51 |
| Payment of Loss | 54 |
| No Benefit to Bailee | 54 |
| Other Insurance | 54 |
| Appraisal | 55 |
| Loss Payable Clause | 55 |
| | |
| **PART E—GENERAL PROVISIONS** | 56 |
| Bankruptcy | 56 |
| Changes | 56 |
| Fraud or Misrepresentation | 57 |
| Settlement of Claims | 58 |
| Legal Action Against Us | 58 |
| Our Right to Recover Payment | 59 |
| Policy Term and Territory | 60 |
| Proof of Notice | 60 |
| Payment of Premium | 61 |
| Termination | 62 |
| Transfer of Your Interest in this Policy | 66 |
| Two or More Auto Policies | 66 |
| Conformity to Statutes | 66 |
| Joint and Individual Interests | 67 |
| Electronic Signatures | 67 |
| Policy Signature Page | 69 |
| | |
| **ENDORSEMENTS TO PERSONAL AUTO POLICY** | 70 |
| Excluded Driver Endorsement | 70 |
| Accidental Death Benefit Endorsement | 71 |
| Named Operator Endorsement | 73 |

## PERSONAL AUTO POLICY.

## AGREEMENT.

**We** agree to provide this insurance, subject to the terms, conditions, and limitations set forth in this policy, if **you** have paid, when due, all of the premiums for the Coverages **you** have chosen. **We** will only insure **you** for the Coverages and the Limits of Liability for which a premium is shown on the **Declarations Page** of this Policy. The Coverages under this policy are provided in consideration of the premium charged. If for any reason **we** become obligated to provide any coverage that is not shown on the **Declarations Page**, **you** agree to pay the required premium before coverage is afforded. **You** agree that if policy proceeds are owed directly to **you**, **we** are entitled to set off the premium **you** owe to **us** against those proceeds.

**You** represent that the information in **your** applications, any endorsement, or request for reinstatement for this insurance are **your** statements and are true. **We** rely on **your** statements when **we** agree to issue, continue, or renew this policy for the premium shown on **your Declarations Page**.

**You** and **we** agree that this contract for insurance is made up of:
A. **Your** Application (as if attached to this Policy);
B. The **Declarations Page**, which may be revised;
C. This Policy; and
D. Any Endorsements issued by **us** to form a part of this Policy.

If the initial payment to **us** is in any non-cash method, this insurance is conditioned on that initial payment being honored by **your** financial institution.

## DEFINITIONS.

Terms appearing in **bold** type will have the following meaning throughout the Policy, whether singular, plural or possessive.

"**Accident**" means a sudden, unexpected, and unintended occurrence.

GA 09AU02010116X                                            4

"**Additional auto**" means an **auto** that **you** acquire in addition to the **auto(s)** shown on the **Declarations Page**, if:

1. No other insurance applies to the **auto**;
2. Within seven calendar days after **you** become the **owner** of the **auto you** ask **us** to add the **auto** to **your** policy; and
3. **We** insure all operable **autos owned** by **you** on the date **you** take possession of the newly acquired **auto**.

If **you** ask **us** to insure the **auto** within the seven calendar days after **you** acquire the **auto** and **we** agree to insure it, any coverage **we** provide for the **additional auto** is subject to the following conditions:

1. Notwithstanding the other provisions in this Definition, no coverage will apply to any auto at any time if the auto or its use is not an acceptable risk under our Rules in effect at the time the auto is acquired.
2. On the date **you** become the owner, an **additional auto** will have the broadest coverage **we** provide on any auto shown on the **Declarations Page**.
3. Any coverage **you** ask **us** to add to the auto and any increase of limits of liability shall not begin until after **you** ask **us** to add that coverage or increase the limit, and:
   a. **We** agree to add the coverage or increase the limit; and
   b. **You** pay any additional premium when due.
4. The deductible for the **additional auto** will be the greater of either:
   a. $500; or
   b. The amount of any higher deductible shown on the **Declarations Page** for a **covered auto**;
   for any covered **loss** under Comprehensive Coverage or Collision Coverage that occurs before **you** have asked **us** and **we** agree to insure the **additional auto**.

If **you** do not ask **us** to insure the **auto** within the seven (7) calendar days after **you** acquire it, there is no coverage for the **auto** under this policy.

"**Auto**" means a four wheel private passenger vehicle or a dual rear wheel six-wheeled pick-up truck designed for operation mainly on public roads, with a gross vehicle weight (as determined by the manufacturer's specifications) of 12,000 pounds or less. **Auto** does not include:

1. Step vans;
2. Parcel delivery vans;

3. Cargo cutaway vans;
4. Sprinter vans;
5. Other vans with cabs separate from the cargo area;
6. A box truck with a separate, box-like cargo area;
7. Vans with an occupant capacity of 12 or more persons;
8. Any type of all-terrain or quad vehicle, dune buggy, go-cart or golf cart; or
9. A vehicle with a fair market value $75,000 or more.

"**Bodily injury**" means bodily harm and sickness, disease and death resulting from the bodily harm.

"**Business**" means any full-time or part-time job, profession, occupation, employment, trade, or commercial enterprise. Any **business** use that **we** allow for a **covered auto** is limited to within 500 miles **your** garaging address as shown on the **Declarations Page**.

"**Carry persons or property for compensation or a fee**" means to deliver, transport or carry persons, products, goods, materials, property, animals or livestock for any form of money, salary, income, property, consideration or any other thing of value, whether or not:
1. Going to a pick-up or returning from a drop-off;
2. The money or other item of value is paid or given:
   a. By any passenger, recipient or other party on a per-trip basis; or
   b. In the course of or as related to any **business** activities of a person insured under this policy; or
3. Any of the **persons**, products, goods, materials property, animals, or livestock intended to be delivered or transported are actually in the vehicle or trailer at the time of the **accident** or **loss**.
"**Carry persons or property for compensation or a fee**" includes, but is not limited, to the delivery of goods, either on a wholesale or retail basis, such as food, magazines, newspapers, or flowers.

"**Covered auto**" means:
1. Any **auto** shown on **your Declarations Page**, unless **you** have asked **us** to delete that **auto** from the Policy; or
2. A **newly acquired auto**.

    3.   Any **auto** or **trailer you** do not **own**, while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its: breakdown, repair, servicing, loss or destruction.

**"Crime"** means any act or omission that is:
1. A state or federal felony in the U.S.A.;
2. An attempt to flee or elude law enforcement or a crime scene; or
3. An illegal activity, trade, or transportation;

whether or not there is an arrest, charge, or conviction.

**Crime** does not include:
1. Misdemeanor violations of the motor vehicle or traffic laws other than an attempt to flee or elude law enforcement or a crime scene;
2. Vehicular homicide; or
3. Driving under the influence of alcohol or any illegal substance.

"**Declarations Page**" means the most recent document **we** have issued to **you** for this policy that lists:
1. The types of coverage **you** have selected;
2. The limit for each coverage;
3. The premium **you** must pay for each coverage;
4. The **autos we** have agreed to insure under this policy;
5. The policy term; and
6. Other policy information.

"**Family member**" means a person who:
1. **Resides** with **you** and is related to **you** by blood, marriage, or adoption; or
2. Is **your** ward or foster child who **resides** in **your** household at the time of the **accident** or **loss**;

if not a named excluded driver. "**Family member**" includes **your** unmarried, dependent children living temporarily away from home who intend to **reside** in **your** household, if that child is not a named excluded driver. This definition does not apply under Part C.

"**Hazardous materials**" means:
1. Explosive, flammable, nuclear, or radioactive liquid or material;

2. Irritants, pollutants, or other contaminants; and
3. Pathogenic, poisonous, biological, toxic, or other types of similar dangerous materials;

but not to include fuel, fluids or chemicals that are ordinarily used for the operation of an **auto** or are ordinary household cleaning products.

"**Loss**" means sudden, direct, and accidental damage.

"**Minimum limits**" means the minimum amount of liability insurance required to apply to an **auto** by the motor vehicle compulsory insurance or financial responsibility laws of the state in which in which **you reside**, as shown in **our** records as the garaging address for **your covered auto**.

"**Motor vehicle business**" means the **business** or occupation of:
1. Selling;
2. Leasing or renting;
3. Repairing;
4. Servicing;
5. Delivering;
6. Loading or unloading;
7. Testing, including but not limited to road testing;
8. Storing; or
9. Parking;
10. Towing; or
11. Washing;

any motor vehicle.

"**Newly acquired auto**" means an **additional auto** or a **replacement auto** that **you** become the **owner** of during the policy period if the vehicle is an **auto** of the type that is an insurable acceptable risk under **our** Private Passenger Auto program Rules.

"**Non-owned auto**" means any **auto** that is not: **owned** by; registered to; or furnished: or available for the regular use of **you**, a **family member**, or a **resident**, while in the legal custody of, or while being operated with the **owner's** permission by, **you**, a **family member** or a **resident**.

"**Occupying**" means in; upon; getting in; on; out; or off. A person cannot be **occupying** more than one motor vehicle at one time.

GA 09AU02010116X                                                    8

"**Original equipment manufactured**" and "**OEM**" mean parts or items produced and/or installed by the manufacturer of the **auto**, or produced by a vendor of the manufacturer of the **auto** that the manufacturer intends as part of the **auto** or manufacturer's option when new.

"**Own**", "**owned**", and "**ownership**" mean:
1. To hold legal title to the **auto** or **trailer**;
2. To have legal possession of an **auto** or **trailer** subject to a lien or security agreement; or
3. To have legal possession of an **auto** that is leased or rented to that person under a written contract for a continuous period of six (6) months or more.

"**Owner**" means the person who:
1. Holds legal title to the **auto** or **trailer**;
2. Has legal possession of an **auto** or **trailer** subject to a lien or security agreement; or
3. Has legal possession of an **auto** that is leased or rented to that person under a written contract for a continuous period of six (6) months or more.

"**Punitive or exemplary damages**" means all damages that may be awarded, other than compensatory damages, to:
1. Punish or deter conduct; and/or
2. Fine, penalize or impose a statutory penalty due to conduct; because the conduct is: malicious; grossly negligent; wanton; willful; fraudulent; or unlawful. This includes but is not limited to any damages that have been defined by law as punitive damages or exemplary damages, and any additional costs; attorney fees; other fees; or interest awarded because of such damages.

"**Racing**" means:
1. Participating in, competing in, practicing for or preparing for any prearranged or organized racing; speed; demolition; or stunting contest or activity;
2. Participating in or competing in an unarranged or spontaneous street or off-road race or stunt;
3. Operating an **auto** on an indoor or outdoor track, course or trail designed or used for:
   a. A racing or speed contest or adventure;

b. Demonstration driving;
c. Driver or skills training;
d. High performance driving; or
e. Driving competition.

"**Regular operator**" is someone who drives a **covered auto** more than 30 times per year or on a frequent and regular basis.

"**Regular Use**" or "**Regularly Uses**" means when an individual has access to or uses a motor vehicle according to some established rule or principal or habitually or in steady or uniform course, practice or occurrence as contrasted with having access or using only on isolated, casual, random, unpredictable or chance occasions.

"**Replacement auto**" means an **auto** that **you** acquire to replace an **auto** shown on the **Declarations Page** if no other insurance applies to the acquired **auto** and **we** insure all **autos** that **you own** that are operable. Any coverage **we** provide for a **replacement auto** is subject to the following terms:

1. On the date **you** become the **owner** of a **replacement auto**, if coverage applies under this policy that **replacement auto** will have the same coverage as the **auto** shown on **your Declarations Page** that is being replaced.
2. The deductible that applies to a **replacement auto** shall be the same as the **auto** it replaced.
3. All coverage **we** provide for the **replacement auto** ends 30 calendar days after **you** become the **owner** if **you** do not ask **us** to insure it within those 30 calendar days;
4. Any coverage **you** ask **us** to add to the **auto** and any increase of limits of liability shall not begin until after **you** ask **us** to add that coverage or increase the limit, and:
   a. **We** agree to add the coverage or increase the limit; and
   b. **You** pay any additional premium when due.
5. Notwithstanding the other provisions in this Definition, no coverage will apply to any **auto** at any time if the **auto** or its use is not an acceptable risk under **our** Rules in effect at the time the **auto** is acquired.

"**Resident**" means a person, other than a **family member**, who:
1. **Resides** in **your** household;
2. Is listed on the **Declarations Page** as a driver;

3. Has a valid driver's license, or learner's permit, that has not been suspended or revoked; and

4. Is not an excluded driver as shown on **your Declarations Page**.

"**Reside**", "**resides**" and "**residing**" mean to dwell within the household as the person's primary and legal domicile. Minor, dependent children whose parents are separated or divorced shall be deemed to **reside** in both parent's households.

"**Trailer**" means a non-motorized device, including a farm wagon or farm implement, designed to be towed on public roads by an **auto**, if the **trailer** is:

1. **Owned** by **you**;
2. Being towed by a **covered auto**; or
3. Shown on the **Declarations Page**;

and the **trailer** is not used:

1. For commercial or **business** purposes;
2. As a primary residence;
3. As an office, store, or for commercial display purposes; or
4. To transport passengers.

"**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses a digital network or other means to connect customers to transportation network company drivers for the purposes of providing transportation for compensation including, but not limited to, payment, donation, or other item of value. The term shall not include emergency or nonemergency medical transports.

"**Transportation network company services**" means:

1. The period of time a driver is logged on to the transportation network company's digital network and available to accept a ride request until the driver is logged off; and
2. The period of time a driver accepts a ride request on the transportation network company's digital network until the driver completes the transaction or the ride is complete, whichever is later.

"**Undisclosed driver**" means a person age 14 years or older who resides in your household, or a **regular operator** who is not listed

as a driver or excluded driver on **your** Policy.

"**Unlicensed driver"** means a person who is using or operating a motor vehicle and who either: does not have a driver's license or whose driver's license has been suspended or revoked. For purposes of this Policy "**unlicensed driver**" does not include **you,** a **family member,** or a **resident**; provided that **you** have paid **us** the applicable surcharged premium for unverifiable or suspended driver's license(s) in accordance with our Rating Rules.

"**War**" means and includes:
1. War, declared or undeclared;
2. Civil war;
3. Insurrection;
4. Rebellion, rioting or revolution; or
5. Any consequence of any of these.

**We**", "**us**", and "**our**" refer to the insurance company shown on the **Declarations Page**.

"**You**" and "**your**" refer to:
1. The named insured shown as the policyholder on the **Declarations Page**; and
2. The spouse of the named insured if **residing** in the same household.
3. The domestic partner of the named insured if the domestic partnership is established pursuant to a domestic partnership, civil union or similar law in any state.
   Upon the termination of the marital relationship of a named insured shown on the **Declarations Page** and his or her spouse, the spouse of that named insured will continue to have any applicable coverage under this Policy, but only for the shorter of 90 days after the end of the marriage or until the expiration or termination of the Policy, provided:
   a. **We** are given notice of the end of the marriage; and
   b. The former spouse was **residing** in the same household as that named insured immediately prior to the end of the marriage

---

## DUTIES AFTER AN ACCIDENT OR LOSS.

---

**We** do not provide coverage under this Policy unless **you** have paid

the required premium when due. Coverage will not apply unless there is full compliance with the duties, which are conditions of coverage listed in this Policy.

A. After an **accident** or **loss**, any person who is an **insured** under any coverage part of this Policy for an **accident** or **loss**, must give **us** notice of the following as soon as practicable:
   1. The time it occurred;
   2. The location where it occurred;
   3. All known facts and circumstances, including the driving conditions, who was involved, and all injury and witness information. This notice to **us** should include all known names, addresses and telephone numbers of any injured persons and witnesses;
   4. All known license plate information of vehicles involved or vehicle descriptions; and
   5. All known driver's license information of persons involved. With regard to liability coverage only, this duty to give **us** notice may be satisfied by an injured third party if the following conditions are met:
      a. **You**, or any other person who is defined as an **insured** under Part A of this Policy has not given notice to **us** within thirty (30) days of the **accident** or **loss**; and
      b. The injured third party:
         1. Has a claim against such **insured** as a result of the **accident** or **loss**; and
         2. Gives notice to **us** by U.S. postal mail.
B. Any **insured** or other person, organization, or entity seeking coverage under this Policy must:
   1. Cooperate with **us** in the investigation, settlement, and defense of any claim, action (even if only threatened) or lawsuit, and assist **us** in:
      a. Making settlements;
      b. Obtaining or authorizing **us** to obtain or secure evidence;
      c. Giving evidence;
      d. Obtaining the attendance of witnesses at hearings and depositions; and
      e. The conduct of lawsuits.
   2. Promptly send **us** copies of any notices or legal papers received in connection with the **accident** or **loss**. including, but not limited to, giving **us** a copy of every

summons or other process that pertains to, or may come within, any coverage under this Policy, as soon as practicable after its receipt. The duty to send a copy of a summons or other process can be met by a third party who sends those papers to **us**, or **our** agent, by certified mail or statutory overnight delivery within:

a. 10 days of the filing of those papers with the clerk of the court; or

b. 30 days from the date **our** name, or **our** authorized agent's name, becomes known if the name was not known;

but in no event later than 30 days prior to the entry of any judgment against an insured. **We** will not pay for any attorney fees or costs incurred by any **insured** or other person without **our** prior written consent.

If there is a breach of paragraph B.1 or B.2. above, and that breach is prejudicial to **us** as related to a claim under Part A - Liability Coverage, that breach shall relieve **us** of **our** obligation to defend an insured, as defined under Part A, and pay any judgment or other sum on behalf of that insured.

3. Give **us** current and prior **accident**, **loss,** and **bodily injury** information as often as **we** reasonably request, and give **us** written authorization to obtain any such information that **we** reasonably determine is relevant or may lead to relevant information.

4. Agree to give **us** information and consent necessary for **us** to comply with any statutes or government regulations that apply, including but not limited to, the person's social security number.

5. Submit to mental and physical exams, at **our** expense, by licensed health care providers **we** select, as often as **we** may reasonably require.

6. Give **us** written authorization to get or copy:

a. Medical records and reports, including current reports, notes and tests results, records of prior medical history and treatment, therapy records, and counseling records;

b. Credit and financial records;

c. Photographs;

d. Telephone, including cellular, text messaging and all other telephonic communication records, including

billing records;
- e. Social media or similar network sites; and
- f. Other records **we** deem relevant in the investigation or settlement of a claim.
7. Give **us** proof of **loss** under oath if required by **us**.
8. Submit to examinations under oath by **us** or **our** representative as often as **we** reasonably require, at a reasonable location of **our** choice, outside of the presence of any witness, person, or entity making a claim due to the same **accident** or **loss**, or any other person except for that person's legal counsel. **We** may:
   - a. Also require an examination under oath from any "**family member**" or "**resident**" who may be able to assist **us** in obtaining relevant information, even if that person is not claiming benefits under this Policy; and
   - b. Make a video and/or audio recording of any recording of any examination under oath.
9. Give **us** written and recorded statements as often as **we** reasonably required.
10. Allow **us** to get written and recorded statements about the circumstances of the claim and any damages claimed as often as **we** reasonably request.
11. Authorize **us** to get any information on or from any telematics, data, maintenance, or event recorder device installed in a **covered auto** as **we** deem relevant to the facts of the **accident** or **loss**.
C. Any person seeking coverage under Part C – Uninsured Motorist Coverage or Part D – Coverage for Damage to Your Auto, must also:
   1. Take reasonable steps after an **accident** or **loss** to protect all property insured from further **loss**. **We** will pay reasonable expenses incurred to protect that property;
   2. Promptly and within 24 hours after the **loss** report theft of any **auto** or other property insured under this Policy, or its equipment or parts, to the police or other local law enforcement;
   3. Promptly report any **accident** or **loss** to the police or other local law enforcement if the person cannot identify the **owner** or operator of an at-fault vehicle involved in the **accident**;
   4. Allow **us** to inspect and appraise all damage or **loss** before repair or disposal; and

5. Authorize **us** to move the damaged **auto** or **trailer** to a storage facility of **our** choice at **our** expense.
Notice given to one of **our** agents shall be considered notice to **us**.

## PART A – LIABILITY COVERAGE.

## INSURING AGREEMENT.

Subject to the limit of liability shown on the **Declarations Page**, if **you** pay **us** the premium for Liability Coverage, **we** will pay damages for which an **insured** is legally liable due to **bodily injury** or **property damage** caused by an **accident** that arises out of the **ownership**, maintenance or use of an **auto** covered under this Part.

Subject to the limit of liability, the amount **we** pay will include prejudgment interest awarded in a judgment against the **insured**.

**We** will settle or defend with a lawyer of **our** choice, as **we** consider appropriate, any claim, or suit asking for these damages. In addition to **our** limit of liability, **we** will pay all defense costs **we** incur. **Our** duty to settle or defend ends when **our** limit of liability for this coverage has been exhausted by payment of judgments or by settlement. **We** have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this Policy.

## ADDITIONAL DEFINITIONS FOR PART A – LIABILITY COVERAGE.

Terms appearing in **bold** type will have the following meaning throughout Part A – Liability Coverage, whether in the singular, plural or possessive. As used in this Part A:

A. "**Insured**" means:
   1. **You** and any **family member** for:
      a. Operation or use of any **auto** with express or implied permission from its **owner**; or
      b. The ownership, maintenance, or use of a **covered auto**;
   2. A **resident** of **your** household for:

GA 09AU02010116X                                                    16

       a.  Operation or use of any **auto** with express or implied permission from its **owner**; or

       b.  The ownership, maintenance, or use of a **covered auto**;

3. Any person using, with express or implied permission from **you** or a **family member**:
   a. A **covered auto**; or
   b. A **trailer you own** while attached to a **covered auto** shown on **your Declarations Page**;

4. For the use of a **covered auto**, any person or organization, but only with respect to legal liability for acts or omissions of a person for whom coverage is afforded under this Part;

5. With respect to the use of an **auto** other than a **covered auto** by **you**, a **family member** or a **resident**, any person or organization to the extent of legal liability within the limit of liability imputed due to the negligence of **you**, a **family member** or a **resident** for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the **auto** or **trailer**; and

6. For the **use** of a **covered auto** any person or organization shown as an "Additional Interest" on the **Declarations Page**, but only to the extent of liability of the person who is an "insured" as provided above under this Part A for **use** of the **covered auto** in which the an "Additional Interest" insured has an interest.
   **Our** limit of liability shall not be increased by the protection provided for an Additional Interest insured.
   Coverage for the Additional Interest insured is:
   a. Excess over any other valid insurance; and
   b. Limited to the **covered auto** for which the Additional Interest insured has been shown on the **Declarations Page**.

B. "**Property damage**" means injury to or destruction of tangible property, and its loss of use, if caused solely by an **accident** insured under this Policy.

---

### SUPPLEMENTARY PAYMENTS.

---

In addition to **our** limit of liability, **we** will pay on behalf of an **insured**:

A. Up to $250 for the cost of bail bonds required because of:

1. An **accident** that results in **bodily injury** or **property damage**; or
2. A traffic law violation related to the **accident** covered under this Part A. **We** have no duty to apply for, furnish, or secure any bonds.

B. Premiums on appeal bonds and bonds to release attachments in any lawsuit **we** defend. **We** have no duty to:
   1. Apply for or furnish any bond; or
   2. Pay premiums on any bond in an amount exceeding **our** limit of liability.

C. Interest accruing after a judgment in any suit **we** defend, on that portion of the judgment that is within **our** limit of liability. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment which does not exceed **our** limit of liability for this coverage. **We** have no duty to make any payment if **we** have not been given notice of suit and the opportunity to defend an **insured**.

D. Upon request in writing by an **insured**, up to $200 per day for loss of earnings incurred by an **insured** and supported by written proof, due to attendance at any deposition, hearing, or trial at **our** request.

E. Other reasonable expenses incurred at **our** request.

---

### EXCLUSIONS.

---

A. **We** do not provide Liability Coverage for, nor have a duty to defend, any **insured** for:
   1. **Bodily injury** or **property damage**:
      a. Caused by an intentional act of an **insured** or at the direction of an **insured**; or
      b. That is or should be reasonably expected to result from an intentional act of an **insured**;

      even if the **bodily injury** or **property damage** that results is not of the same exact kind that was intended. This Exclusion does not apply to the amount of the **bodily injury** or **property damage** damages that is less than or equal to **minimum limits** if the innocent injured third party person who sustains such damages is not able to otherwise recover those damages from any other source.
   2. **Bodily injury** to **you**.
   3. **Bodily injury** to a **family member**, a **resident** or any **insured** not subject to Exclusion #2 directly above. This

GA 09AU02010116X                                                    18

Exclusion does not apply to the amount of the **bodily injury** or **property damage** damages that is less than or equal to **minimum limits**, but only if the innocent injured third party person who sustains such damages is not able to otherwise recover those damages from any other source.

4. **Property damage** to any property:
   a. Owned by;
   b. Rented to;
   c. Used by;
   d. Transported by; or
   e. In the charge or care of;

   **you**, any **family member**, an **insured**, or a person **residing** in **your** household.

   This Exclusion does not apply to damage to a residence or private garage rented to **you**, any **family member**, an **insured** or a person **residing** in **your** household.

5. **Bodily injury** to any employee or co-worker of an **insured** arising out of and in the course of employment. This Exclusion does not apply to **bodily injury** to **your** domestic employee unless workers' compensation benefits are paid or required by law to be provided for that domestic employee.

6. An **insured's** liability arising out of the **ownership**, maintenance or use of a vehicle while it is being used to **carry persons or property for compensation or a fee**, or as a public or livery conveyance. This Exclusion does not apply to a share-the-expense car pool.

7. **Bodily injury** or **property damage** that occurs while the **insured** is employed or otherwise engaged in a **motor vehicle business**. However, this Exclusion does not apply to: the ownership, maintenance, or use of a **covered auto** by:
   a. **You**;
   b. Any **family member**; or
   c. A **resident**.

8. **Bodily injury** or **property damage** that occurs while maintaining or using any vehicle while an **insured** is employed or otherwise engaged in any **business** or occupation (other than farming or ranching). However, this exclusion shall not apply:
   a. With respect to a **business** use that is disclosed by **you** and allowed by **us**, and for which **you** have paid **our**

added charge for **business** use, but only as to that disclosed **business** use; or

b. To the amount of the **bodily injury** or **property damage** damages that is less than or equal to **minimum limits** for a person who is an innocent injured third party who sustains such damages and is not able to otherwise recover those damages from any other source.

9. **Bodily injury** or **property damage** that occurs while using an **auto** without the express or implied permission to do so from the **owner** of the **auto**. Permission cannot be implied by or for an **unlicensed driver**. This does not apply to **you**, a **family member,** or a **resident** when any such person is using or **occupying** a **covered auto.**

10. **Bodily injury** or **property damage** resulting from the use of any **auto** while **racing**. This Exclusion does not apply to spontaneous or impromptu racing on a public road, but only as to the amount of the **bodily injury** or **property damage** damages that is less than or equal to **minimum limits**, and only if the innocent injured third party person who sustains such damages is not able to otherwise recover those damages from any other source.

11. **Bodily injury** or **property damage** that results from an **accident** or **loss** that occurs while the **insured** is committing a **crime**. This Exclusion does not apply to the amount of the **bodily injury** or **property damage** damages that is less than or equal to **minimum limits**, but only if the innocent injured third party person who sustains such damages is not able to otherwise recover those damages from any other source.

12. **Bodily injury** or **property damage** resulting from the use of any **auto** by:
    a. A named excluded driver; or
    b. An **undisclosed driver**; or
    c. An **unlicensed driver.** This Exclusion 12.c. does not apply to the amount of the **bodily injury** or **property damage** damages that is less than or equal to **minimum limits**, but only if the innocent injured third party person who sustains such damages is not able to otherwise recover those damages from any other source.

13. Liability assumed under a contract or agreement. This Exclusion does not apply if insurance liability is shifted to this policy by Georgia law when **you** or a **family member** operate an **auto** that is **owned** by a person, firm, or corporation engaged in the **business** of retail sales of motor vehicles.

14. **Bodily injury** or **property damage** arising out of the release, spill, or escape of any **hazardous material**.

15. **Bodily injury** or **property damage** insured under a nuclear energy liability policy, or which would be insured under such a policy but for payment of its limit of liability.

16. **Bodily injury** or **property damage** that results from nuclear exposure, radiation, or contamination.

17. For **bodily injury** or **property damage** caused by, resulting from, or a consequence of **war**.

18. **Bodily injury** or **property damage** for which the United States government may be found liable under the Federal Tort Claims Act.

19. **Bodily injury** or **property damage** that occurs while maintaining, using, or occupying any vehicle for any **transportation network company services.**

B. **We** do not provide Liability Coverage, nor have a duty to defend any **insured** for **bodily injury** or **property damage** arising from the ownership, maintenance, or use of:

1. Any vehicle which has less than four wheels or which is designed for use mainly off public roads. This Exclusion does not apply to a **trailer** while attached to a **covered auto**.

2. Any vehicle, other than a **covered auto**, that is:
   a. Owned by **you**; or
   b. Furnished or available for **your** regular use.

3. Any vehicle, other than a **covered auto**, that is:
   a. **Owned** by any **family member**, a **resident** or a named excluded driver; or
   b. Furnished or available for the regular use of any **family member**, a **resident**, or a named excluded driver.

4. A **covered auto** that:
   a. Has been sold;
   b. Has been entrusted to anyone other than **you** or a **family member** for consignment, sale, promoting sale, subleasing, leasing, renting or selling, and is no

GA 09AU02010116X                                                        21

longer in **your** possession;

c. Is no longer in **your** possession in connection with a sale of the **auto**, including, but not limited to, conditional sale, or an exchange for goods or services; or

d. Has been rented, leased, subleased, loaned, or given by **you** or a **family member** to another party in exchange for money, value, goods, services, compensation, or reimbursement.

C. If any exclusion is found to be invalid or unenforceable by a court with proper jurisdiction due to a financial responsibility law or compulsory insurance law, that exclusion shall apply to all damages in excess of the **minimum limits** but shall not apply to damages that are less than or equal to **minimum limits** when so required by law and if the innocent injured person who sustains **bodily injury** and/or **property damage** is not able to otherwise recover those damages from any other source.

## LIMIT OF LIABILITY.

A. The Bodily Injury limit of liability shown on the **Declarations Page** for each person under Liability Coverage is the most **we** will pay for damages due to a **bodily injury** sustained by any one person in any one **accident**. This limit for each person includes all claims and lawsuits of others derived from the **bodily injury** of the injured person. This includes, but is not limited to, claims and lawsuits for emotional distress or mental anguish as a result of observing another person sustain **bodily injury**. It also includes all claims, when recognized by law, for:

1. Loss of society;
2. Loss of companionship;
3. Loss of services;
4. Loss of consortium; and
5. Wrongful death.

B. Subject to the limit of liability for each person, the Bodily Injury limit of liability shown on the **Declarations Page** for each **accident** for **bodily injury** under Liability Coverage is the most **we** will pay for all damages due to **bodily injury** resulting from an **accident**.

C. The limit of liability shown on the **Declarations Page** for property damage under Liability Coverage is the most **we** will

GA 09AU02010116X                                                                 22

pay for all damages due to **property damage** sustained in an **accident**.

D.  There will be no adding, stacking, or combining of coverage. The limits of liability for Bodily Injury Liability Coverage and Property Damage Liability Coverage shown on the **Declarations Page** are the most **we** will pay due to any one **accident**, without regard to the number of:
    1.  **Insureds**, heirs or survivors;
    2.  Claimants;
    3.  Claims made;
    4.  Lawsuits filed;
    5.  **Autos** and **trailers** shown on the **Declarations Page**;
    6.  Premiums shown on **your Declarations Page**;
    7.  Vehicles and trailers involved in the **accident**; or
    8.  Premiums paid.

E.  No one will be entitled to duplicate payments for the same elements of loss or damages under this coverage for which payment has been made:
    1.  Under any other coverage provided by this policy;
    2.  By or on behalf of the person or organization that may be legally responsible; or
    3.  Under any other insurance or source of recovery.

---

## OUT OF STATE COVERAGE.

---

If an **auto accident** covered under this policy occurs in any state or province other than the one in which a **covered auto** is principally garaged, as shown in **our** records, and that other state or province has:

A.  A financial responsibility or similar law requiring a nonresident driver to maintain insurance with limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **Declarations Page**, the Liability Coverage limit of liability under this policy that applies to that **accident** will be the higher minimum liability coverage limits required by the law in that state or province. However, **we** will not provide any Liability Coverage for an **accident** if the **Declarations Page** does not show **you** have purchased that Liability Coverage unless that state has a financial responsibility or similar law that requires **us** to do so; or

B.  A mandatory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses an **auto** in

GA 09AU02010116X                                                     23

the state or province, this policy will provide the greater of:
1.  The **minimum limits** and types of coverage; or
2.  The applicable limits of liability provided for that **insured** under this Policy.

## FINANCIAL RESPONSIBILITY.

If **we** certify this policy as future proof of financial responsibility, this Policy shall comply with the law to the extent of the **minimum limits**. **You** must reimburse **us** if **we** make a payment **we** would not have made if this Policy had not been certified as proof of financial responsibility.

## OTHER INSURANCE.

A.  If there is other liability insurance, self-insurance or bond that applies to an **accident**, **we** will not pay more than **our** share of the **loss**. **Our** share of the **loss** is the proportion that **our** Liability Coverage limit of liability bears to the total of all applicable limits with the same priority.
B.  Any insurance **we** provide for an **auto** that is not a **covered auto** shall be excess over all other collectible insurance, self-insurance and bonds.  However, if **you** or a **family member** are:
    1.  Operating an **auto owned** by a person, firm or corporation engaged in the **business** of retail sales of new and/or used motor vehicles; and
    2.  Not the **auto's owner** nor employed by the **auto's owner** or that **business**;
    then the excess clause above does not apply with respect to that **auto**, and **we** will provide primary coverage for **you** or a **family member**, but only as compared to a policy of liability insurance that applies to and is issued for that **auto owned** by a person, firm or corporation in the **business** of retail sales of new and/or used motor vehicles.
C.  If there is other applicable liability insurance, **our** duty to defend ends when **we** offer **our** limit of liability. If the other insurer refuses to defend, **we** will continue to defend where required by law and shall be subrogated to the **insured's** rights against the other insurer, reserve **our** rights against such insurer, and do not waive any of **our** rights against the other

insurer by continuing to defend.

## PART B – MEDICAL PAYMENTS COVERAGE.

## INSURING AGREEMENT.

A. Subject to the limit of liability shown on the **Declarations Page**, if **you** pay the premium for Medical Payments coverage, **we** will pay the **usual and customary** reasonable and necessary **medical expenses** and funeral service expense arising out of **bodily injury**:
   1. Sustained by an **insured**;
   2. Caused by **accident**; and
   3. Arising out of the ownership, maintenance, or use of a motor vehicle or **trailer**.

   **We** will pay only those expenses incurred for services rendered within 36 months from the date of the **accident**.
B. **We** have the right to review the **medical expenses** to determine if they are reasonable and necessary for diagnosis and treatment of the **bodily injury**. **We** may use independent sources of information selected by **us** to assist **us** in determining if any **medical expense** is reasonable and necessary. These sources may include, but are not limited to:
   1. Physical exams paid for by **us** and performed by physicians **we** select;
   2. Review of medical files;
   3. Computer databases; or
   4. Published sources of medical expense information.
C. **We** may refuse to pay for:
   1. Any portion of a **medical expense** that is unreasonable because the fee for the service is greater than the fee which is **usual and customary** for the geographic location in which the service is rendered;
   2. Any **medical expense** because the service rendered is unnecessary for the treatment of the **bodily injury** sustained.

   If **we** refuse to pay for any portion of a **medical expense** because the fee is unreasonable or for any service because the service is unnecessary and the **insured** is sued for payment of this **medical expense**, **we** will defend the **insured** with an attorney of **our** choice. **We** will pay defense costs and any

judgment against the **insured** up to **our** limit of liability for this coverage. The **insured** must cooperate with **us** in the defense of the lawsuit and attend depositions, hearings, or trials at **our** request. **We** will pay the **insured**, upon written request from the **insured**, up to $250 per day for actual wage lost incurred due to attendance at a hearing or trial if supported by written proof. **We** will also pay, upon written request from the **insured**, other reasonable expenses the **insured** incurs at **our** request as a result of a lawsuit by a health care provider to recover **medical expense we** refuse to pay because the fee is unreasonable or unnecessary.

D. **We** may refuse to pay for any medical services that are not provided and prescribed by a medical provider licensed by the state and acting within the scope of that license.

E. **We** will not pay for any portion of a **medical expense** that exceeds the amount that the medical provider charges to patients who do not have insurance.

## ADDITIONAL DEFINITIONS FOR PART B – MEDICAL PAYMENTS COVERAGE.

Terms appearing in **bold** type will have the following meaning throughout Part B – Medical Payments Coverage, whether in the singular, plural or possessive. As used in this Part B:

A. "**Insured**" means:
   1. **You**, any **family member,** or a **resident**:
      a. While legally **occupying**; or
      b. As a pedestrian when struck by;
      a motor vehicle designed for use mainly on public roads or a **trailer** of any type; or
   2. Any other person who, with express or implied permission from **you** or a **family member**, is legally **occupying** a **covered auto** or a **trailer**.

B. "**Medical expense**" and "**medical expenses**" mean the fees, costs, or charges to be paid for reasonable and necessary:
   1. Services, treatment, procedures and products provided by a state licensed health care provider;
   2. Medications, eyeglasses, hearing aids, orthopedic and prosthetic devices, and other medical supplies when prescribed by a state licensed health care provider; and
   3. Services, treatment, procedures and products provided by a state licensed health care provider for physical therapy,

GA 09AU02010116X                                                    26

vocational rehabilitation, occupational therapy, and speech pathology and audiology.

This does not include any fees, costs, or charges for:
1. Massage therapy not prescribed by a state licensed doctor or chiropractor;
2. Services, treatment, procedures and products that are:
   a. Experimental or for research; or
   b. Not commonly recognized in the medical profession in the United States as a customary treatment for the **bodily injury**.
C. "**Usual and customary charge**" means the amount **we** find represents a common and typical charge for services in the geographic area in which the service is rendered. **We** may determine the **usual and customary charge** for **medical expenses** by using independent sources of **our** choice.

---

## EXCLUSIONS.

---

**We** do not provide Medical Payments Coverage for any **insured** for **bodily injury**:
A. Sustained while **occupying** any vehicle which has less than four wheels or which is designed for use mainly off public roads. However, this Exclusion does not apply to the lawful use of a **trailer** while attached to a **covered auto** shown on **your Declarations Page**.
B. Sustained while **occupying** a **covered auto**, or while operating any vehicle, while it is being used to **carry persons or property for compensation or a fee**. This Exclusion does not apply to a share-the-expense car pool.
C. Sustained while **occupying** a vehicle while the **insured** is employed or otherwise engaged in an **auto business**. However, this Exclusion does not apply to the ownership, maintenance, or use of a **covered auto** by:
   1. **You**;
   2. Any **family member**; or
   3. A **resident**.
D. Sustained while **occupying** any vehicle being used as a residence or premises.
E. Sustained while in the course of the **insured's** employment. This Exclusion does not apply to **bodily injury** to **your** domestic employee unless workers' compensation benefits are required or available for that domestic employee.

GA 09AU02010116X                                                    27

F. Sustained while **occupying** or when struck by any vehicle, other than a **covered auto**, which is:
   1. **Owned** by **you,** any **family member**, a **resident** or a named excluded driver; or
   2. Furnished or available for the regular use of **you**, any **family member** or a **resident**.
G. Sustained while **occupying** or using a vehicle without express or implied permission to do so from the **owner** of the vehicle. Permission cannot be implied by or for an **unlicensed driver**. This does not apply to **you**, a **family member,** or a **resident** when any such person is using or **occupying** a **covered auto**.
H. Sustained while the vehicle is being **operated** by an **unlicensed driver**.
I. Sustained while **occupying** a vehicle when it is being maintained or used while the **insured** is engaged in the course of employment or otherwise engaged in any **business** or occupation (other than farming or ranching). However, with respect to a **business** use that is disclosed by **you** and allowed by **us**, and for which **you** have paid **our** added charge for **business** use, this exclusion shall not apply to that disclosed **business** use.
J. Sustained while occupying any vehicle while **racing**.
K. Resulting from an **accident** or **loss** that occurs while the **insured** is committing a **crime**.
L. Sustained by a
   1. A person specifically excluded; or
   2. An **undisclosed driver**.
M. Sustained by **your** co-worker while on the job that arises out of the maintenance or use of a vehicle by **you** or another employee in the employer's **business**.
N. Arising out of dispersal, release, spill, or escape of any **hazardous material** due to collision or upset of a **covered auto**.
O. Which is insured under a nuclear energy liability policy, or would be insured under such a policy but for payment of its limit of liability.
P. That results from nuclear exposure, radiation, or contamination.
Q. Caused by, resulting from, or a consequence of **war**.
R. For which the United States government may be found liable under the Federal Tort Claims Act.

S. To any **insured**, other than **you**, a **family member,** or a
   **resident**, that arises out of the **use** of a **covered auto** while it
   is:
   1. Rented, leased, loaned, or given to anyone in exchange for
      any form of money, value, goods, services, compensation, or
      reimbursement;
   2. Entrusted to anyone other than **you** or a **family member**
      for consignment, sale, promoting sale, subleasing, leasing,
      renting or selling, and is no longer in **your** possession; or
   3. Is no longer in **your** possession in connection with a sale of
      the **auto**, including, but not limited to, conditional sale, or
      an exchange for goods or services.
T. That is caused intentionally by, or at the direction of, or that is
   or should be reasonably expected to result from the willful acts
   by the injured **insured**, even if the **bodily injury** that results
   is not what was intended.
U. Sustained while maintaining, using, or occupying any vehicle for
   any **transportation network company services**.

## LIMIT OF LIABILITY.

A. There will be no adding, stacking, or combining of coverage. The
   limit of liability shown on the **Declarations Page** for this
   coverage for each person injured in any one **accident** is the
   most **we** will pay, without regard to the number of:
   1. **Insureds**;
   2. Claims made;
   3. Vehicles or premiums shown on **your Declarations Page**;
   4. Lawsuits brought;
   5. Vehicles involved in the **accident**; or
   6. Contacts with or collisions with any other vehicles; or
   7. Premiums paid.
B. No one will be entitled to receive duplicate payments for the
   same elements of **medical expense**, damages, or other
   covered **loss:**
   1. Under this Policy, including damages paid under Part A—
      Liability Coverage or Part C—Uninsured/Underinsured
      Motorists Bodily Injury Coverage; or
   2. From any other source.

## ASSIGNMENT OF BENEFITS.

**We** will pay for **medical expenses** directly to a licensed heath care provider if the **insured** gives **us** a signed written assignment of benefits payable under Part B. If **we** pay benefits directly to a health care provider, **we** have no further duty or liability to pay those same benefits to an **insured** or to any other person or entity.

---

### OTHER INSURANCE.

---

A. If there is other applicable insurance that provides coverage for funeral expenses and/or **medical expenses**, including, but not limited to other motor vehicle medical payments coverage, health or medical insurance, and workers compensation or similar insurance, any insurance **we** provide shall be excess to all other collectible insurance and bonds.
B. If there is any other insurance for **medical expenses** with the same priority as this Medical Payments Coverage, **we** will not pay more than **our** share of the unpaid covered **medical expenses**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits with the same priority.
C. Notwithstanding the other terms in this "Other Insurance" clause, if **you** or a **family member** are:
   a. Operating an **auto owned** by a person, firm or corporation engaged in the **business** of retail sales of new and/or used motor vehicles; and
   b. Not the **auto's owner** nor employed by the **auto's owner** or that **business**;

   then the excess clause above does not apply with respect to that **auto**, and **we** will provide primary coverage for **you** or a **family member**, but only as compared to a policy of liability insurance that provides similar medical payments coverage that applies to and is issued for that **auto owned** by a person, firm or corporation in the **business** of retail sales of new and/or used motor vehicles.

---

### PART C – UNINSURED MOTORIST COVERAGE ("UM").

---

### INSURING AGREEMENT.

---

If **you** pay the premium for Uninsured Motorist ("UM") Coverage:

A. Subject to the Limits of Liability shown on the **Declarations Page**, **we** will pay compensatory damages that an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** because of **bodily injury** or **property damage**, that is:
   1. Sustained by that **insured**;
   2. Caused by an **accident**; and
   3. Arises out of the ownership, maintenance, or use of an **uninsured motor vehicle**.
B. **We** will not make any payment under this coverage until after the limits of liability under all applicable liability insurance, self-insurance and bonds have been exhausted by payment of judgments or settlements
C. **We** are not bound by any settlement entered into without **our** consent.
D. **We** are not bound by any judgment for damages that arises out of a lawsuit brought without **our** prior written consent.

## ADDITIONAL DEFINITIONS FOR PART C – UM COVERAGE.

Terms appearing in **bold** type will have the following meaning throughout UM Coverage, whether in the singular, plural or possessive. As used in this Part C:
A. "**Family member**" means a person who is:
   1. A resident of the same household as the named insured, and is the spouse or domestic partner (if the domestic partnership is established pursuant to a domestic partnership, civil union or similar law in any state) of the named insured, and persons related by blood, marriage or adoption to either.
   2. A foster child or ward residing in the household of the named insured pursuant to a court order, guardianship, or placement by the Department of Family and Children Services or other department or agency of the state.
B. "**Insured**" means:
   1. **You** or any **family member**;
   2. A **resident** of **your** household;
   3. Any other person while:
      a. **Occupying** a **covered auto** with permission from **you** or a **family member**; or

GA 09AU02010116X                                                31

    b.  Using, with the expressed or implied consent of the named insured, a **covered auto**; or

4.  Any other person for damages that person is entitled to recover because of **bodily injury** sustained by a person described in B.1., B.2. or B.3. above. This shall not increase **our** limit of liability to an amount that exceeds the limit of liability applicable to that person referred to in B.1., B.2. or B.3. above.

C.  "**Property damage**" means physical injury to or destruction of:
1.  A **covered auto**; and
2.  Any other personal property in that **covered auto** if owned by an **insured**;

if that **covered auto** is shown on **the Declarations Page** with **a** premium paid for such coverage. "**Property damage**" also **includes** reasonable **and** necessary loss of use of that **covered auto** due to covered physical damage.

D.  "**Uninsured motor vehicle**" means a land motor vehicle or **trailer** of any type:
1.  To which no :
    a.  Liability bond or policy; or
    b.  Deposit of cash or securities in place of liability insurance or bonds;

    applies at the time of the **accident**;

2.  Which is a vehicle whose operator or **owner** is unknown, and which causes **bodily injury** or **property damage**. If there has been no actual physical contact with the at-fault vehicle, corroborating evidence of the existence of the at-fault vehicle causing the **accident** must be provided from a witness other than an **insured** who is making a claim as a result of the **accident**.

3.  To which a liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
    a.  Legally denies coverage; or
    b.  Is or becomes insolvent. Before a motor vehicle shall be deemed to be an "**uninsured motor vehicle**" because of the insolvency of a liability insurer, **we** must be given notice within a reasonable time by an **insured** of the pendency of any legal proceeding against that liability insurer of which the **insured** may have knowledge. This notice to **us** must be given before:

      i.   The **insured** enters into any negotiation or arrangement with that liability insurer; and

      ii.  **We** are prejudiced by any action or inaction of the **insured** as to the determination of the insolvency of that liability insurer.

4. For which there is liability bond or policy described here depending on which coverage option you bought (only one such option applies):

   a. If you paid a premium for Uninsured Motorist Coverage with "**ADDED ON TO AT-FAULT LIABILITY LIMITS**", and as shown on the **Declarations Page**, there is a liability bond or policy but its limit of liability either:

      i. Is not enough to pay the full amount the insured is legally entitled to recover as damages; or

      ii.  Has been reduced by payments of other claims, or otherwise, to an amount which is not enough to pay the full amount the insured is legally entitled to recover as damages.

   b. If you paid a premium for Uninsured Motorist Coverage with "**REDUCED BY AT-FAULT LIABILITY LIMITS**" (also called "Traditional"), and as shown on the **Declarations Page**, there is a liability bond or policy but its limit of liability either:

      i. Is less than the sum of the limits of liability that apply to the **insured** for Uninsured Motorists Coverage under this and any other policy; or

      ii. Has been reduced by payment of other claims or otherwise, to an amount which is less than the sum of the limits of liability that apply to the **insured** for Uninsured Motorists Coverage under this and any other policy.

"**Uninsured motor vehicle**" does not include any vehicle or equipment:

1. **Owned** by, or furnished for the regular use of **you**, any **family member,** or a **resident**;
2. **Owned** or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent or is underinsured;
3. Operated on rails or crawler treads;
4. Designed for use off public roads while not on public roads;

5. While located for use or being used as a residence or premises;
6. That is not required to be registered as a motor vehicle; or
7. Which is shown on **your Declarations Page** or which is covered under Part A – Liability Coverage.

---

### ADDITIONAL DUTIES FOR PART C – UM COVERAGE.

---

A person seeking UM Coverage must also:

A. Notify the police within 24 hours or as soon as practical after the **accident** if a hit-and-run driver is involved.
B. Report the **accident** to **us** within 30 days of the **accident** .
C. Send **us** copies of legal papers if a lawsuit is commenced.
D. Promptly notify **us** in writing of an offer of settlement between the **insured** and the **owner**, operator or insurer of the **uninsured motor vehicle**.
E. Allow **us** 30 days after notice of an offer of settlement to advance payment to that insured in an amount equal to the offer, to preserve all of our rights against the insurer, owner, and operator of any uninsured motor vehicle. However, an **insured** may make a Limited Release settlement, as described in Georgia Code Section 33-24-41.1, as amended, which does not release the legally liable uninsured or underinsured motorist from personal liability to the extent that there may be benefits under this Part for the bodily injury or property damage sustained by that **insured**.
F. Give **us** proof that the limits of liability under any liability policies that apply to an **uninsured motor vehicle.**

---

### EXCLUSIONS – UM COVERAGE.

---

A. **We** do not provide Uninsured Motorists Coverage for **property damage** or **bodily injury** sustained by any insured:
   **1.** If the **insured**, or the legal representative of the **insured**, without 30 days advance written notice to **us** either:
      a. Settles the claim in a away that is not in accord with a Limited Release, as allowed in Georgia Code Section 33-24-44.1, as amended; or
      b. Brings suit and obtains a judgment related to the claim and in doing so, impairs or prejudices **our** rights or interests.

2. While **occupying** a **covered auto** while it is being used as a public or livery conveyance .

3. While using or **occupying** a vehicle without the express or implied permission to do so from the **owner** of the vehicle. This does not apply to **you**, a **family member,** or a **resident** when using or **occupying** a **covered auto**.

4. If it arises out of and in the course of employment. This Exclusion does not apply to **bodily injury** to a domestic employee unless workers' compensation, disability benefits, or other similar benefits are required or available for that domestic employee.

5. That occurs while the insured is employed or otherwise engaged in a **motor vehicle business**. However, this Exclusion does not apply to the **ownership**, maintenance, or use of a **covered auto** by:
   a. **You**;
   b. Any **family member**; or
   c. A **resident**.

6. That occurs while maintaining or using any vehicle while an **insured** is employed or otherwise engaged in any **business** or occupation (other than farming or ranching). However, with respect to a **business** use that is disclosed by **you** and allowed by **us**, and for which **you** have paid **our** added charge for **business** use, this exclusion shall not apply to that disclosed **business** use.

7. That results from the use of any vehicle by an insured while **racing**.

8. That results from an **accident** or **loss** that occurs while the **insured** is committing a **crime**.

9. That results from the operation, maintenance, or use of a **covered auto** by a:
   a. Person who is a named excluded driver;
   b. An **undisclosed driver;** or
   c. An **unlicensed driver**.

10. That arises out of the release, spill, or escape of any **hazardous material**.

11. For any obligation for which the United States government is liable under the Federal Tort Claims Act.

12. For which the **insured** is entitled to recover benefits under a nuclear energy liability policy, or would be entitled to recover benefits under such a policy but for its payment of its limit of liability.

13. That results from nuclear exposure, radiation, or contamination.

14. Caused by, resulting from, or a consequence of **war**.

15. While using or **occupying** any vehicle which has less than four wheels or which is designed for use mainly off public roads. However, this Exclusion does not apply to use of a **trailer**.

16. Other than **you** or a **family member** that arises out of the **use** of a **covered auto** while it is:

    a. Rented, leased, loaned, or given to anyone in exchange for any form of money, value, goods, services, compensation, or reimbursement;

    b. Entrusted to anyone other than **you** or a **family member** for consignment, sale, promoting sale, subleasing, leasing, renting or selling, and is no longer in **your** possession; or

    c. Is no longer in **your** possession in connection with a sale of the **auto**, including, but not limited to, conditional sale, or an exchange for goods or services.

17. That is caused intentionally by, or at the direction of, or that is or should be reasonably expected to result from the willful acts by, the injured **insured**, even if the **bodily injury** that results is not what was intended.

18. For **property damage** which has been paid by any other property or physical damage insurance or other similar source of recovery.

**19.** For **bodily injury** or **property damage** that occurs while maintaining, using, or occupying any vehicle for any **transportation network company services.**

B. Coverage under this Part C shall not apply directly or indirectly to benefit any insurer or self-insurer:

1. Under any of the following or similar laws:

   a. Workers' compensation law;

   b. Disability benefits law.; or

2. Of property.

C. **We** will not be bound by:

1. Any settlement entered into without **our** consent; or

2. Judgment entered into with a party who is liable for damages without **our** consent.

If any exclusion is found to be invalid or unenforceable by a court with proper jurisdiction due to a financial responsibility law or

GA 09AU02010116X                                                    36

compulsory insurance law or for any other reason, that exclusion shall apply to all damages in excess of the **minimum limits**.

## LIMIT OF LIABILITY - UM COVERAGE.

A. There will be no adding, stacking, or combining of coverage. within this policy.
B. The UM Bodily Injury limit of liability that applies as shown on the **Declarations Page** is the most **we** will pay for **bodily injury** to an **insured** in any one **accident**. This "each person" limit includes all claims or lawsuits of others derived from the **bodily injury** to the **insured**. This includes, but is not limited to, claims or lawsuits for emotional distress or mental anguish as a result of observing a person sustain **bodily injury**. It also includes all claims, when recognized by law, for:
   1. Loss of society;
   2. Loss of companionship;
   3. Loss of services;
   4. Loss of consortium; and
   5. Wrongful death.
   Subject to the limit of liability that applies for each person, the applicable limit of liability that applies for each **accident** is the most **we** will pay for all damages for **bodily injury** resulting from any one **accident**.
C. **We** will not pay more than the UM Property Damage limit of liability shown on the **Declarations Page** for compensatory damages because of **property damage** that results from any one **accident**.
D. The applicable UM limit of liability that applies as shown on the **Declarations Page** for coverage under this Part C is the most **we** will pay in any one **accident**, without regard to the number of:
   1. **Insureds**, heirs or survivors;
   2. Claims made;
   3. Vehicles or premiums shown on **your Declarations Page**;
   4. Vehicles involved in the **accident**;
   5. Lawsuits brought; or
   6. Contacts or collisions with any other vehicles.
E. **We** will not pay for damages that are less than the deductible that may apply.  The deductible shown on the **Declarations Page** for the applicable coverage is the portion of damages that:
   a. Is not covered by this Part C; and

GA 09AU02010116X                                           37

      b.   **You** are responsible to pay.

F.  No one will be entitled to receive duplicate payments for the same damages or elements of **loss** under this coverage and for which payment has been made:

1.  Under any other coverage provided by this policy;

2.  By or on behalf of the person or organization that may be legally responsible; or

3.  Under any other insurance or source of recovery.

G.  One of the following will apply:

1.  If **you** paid a premium for Uninsured Motorist Coverage with "**ADDED ON TO AT-FAULT LIABILITY LIMITS**", as shown on the **Declarations Page**, the damages an **insured** is legally entitled to recover for **bodily injury** or **property damage** from the **owner** or operator of the **uninsured motor vehicle** shall be reduced by any amount:

    a.  Paid to the **insured** because of **bodily injury** or **property damage** by or on behalf of any persons or parties that may be legally responsible, including, but not limited to all sums paid under Part A of this policy;

    b.  Paid to or to be paid under Part B or Part E; and

    c.  Paid or payable because of **bodily injury** under any workers' compensation law.

2.  If **you** paid a premium for Uninsured Motorist Coverage with "**REDUCED BY AT-FAULT LIABILITY LIMITS**" (also called "Traditional"), and as shown on the **Declarations Page**, **our** limit of liability under this Part C shown on the **Declarations Page** shall be reduced by any amount:

    a.  Paid to the **insured** because of **bodily injury** or **property damage** by or on behalf of any persons or parties that may be legally responsible, including, but not limited to all sums paid under Part A of this policy;

    b.  Paid or to be paid under Part B or Part E; and

    c.  Paid or to be paid under any workers' compensation law.

H.  Subject to the UM PD limit of liability shown on the **Declarations Page**, in no event shall payment for **property damage** exceed the lowest of:

1.  The actual cash value of the damaged property at the time of the **accident** or **loss**, reduced by the deductible shown on the **Declarations Page**. An adjustment for depreciation

and physical condition will be made in determining the
actual cash value at the time of the **accident** or **loss**;

2. The limit of UM PD Coverage shown on the **Declarations Page**; or

3. The amount necessary to repair or replace, as **we** deem appropriate, the physical damage to the **covered auto** with parts that are of like kind and quality, and replace parts that are missing, to return the **covered auto** to its pre-**loss** physical condition, reduced by depreciation and by the applicable deductible.

I. In determining the amount necessary to repair the property to its pre-**loss** condition, the amount to be paid by **us** will be based on the cost of repair or replacement parts and equipment which may be new, used, reconditioned, remanufactured or restored, including parts that are and are not **OEM** parts or equipment, as reasonably determined by **us** and when allowed by law.

J. A deduction will be made from **your** repair costs for betterment if the repair or replacement of the damaged parts or property improves market value of the property, the useful life of a part or the property, or improves the condition of the property considering wear and tear and damage that existed prior to the loss. Betterment deductions will consider replacement of parts that have a useful life shorter than the life of the **auto**, such as tires and batteries, and also considers prior wear and tear, missing parts and rust damage that is reflective of the general overall condition of the vehicle considering its age. **You** are responsible to pay for any betterment, but it will not be more than 20% of the market value of the **covered auto** prior to the loss.

## OTHER INSURANCE.

A. If there is other uninsured or underinsured motorists  coverage, or similar insurance, that applies or is available under one or more policies, **we** will pay only **our** share of the damages or **loss**. **Our** share of the damages or **loss** is the proportion that **our** limit of coverage under this Part C bears to the total of all applicable limits with the same priority as this coverage, on either a primary or excess basis, whichever is applicable.

B. The order of priority for payment is:

> **1st priority:** All policies covering the **insured** as a named insured; then
> **2nd priority:** All policies covering the **insured** as a **family member** or relative; then
> **3rd priority:** All policies covering the motor vehicle the **insured** was **occupying** or **using** at the time of the **accident**.

## PART D – COVERAGE FOR DAMAGE TO YOUR AUTO.

### INSURING AGREEMENT.

**COLLISION COVERAGE INSURING AGREEMENT**
If **you** pay the premium for Collision Coverage for **your covered auto**, then subject to the limits of liability and deductible shown on the **Declarations Page**, **we** will pay for accidental **loss** to a **covered auto** if it is damaged as a result of a collision with another object or if it overturns.

**COMPREHENSIVE COVERAGE INSURING AGREEMENT**
A. If **you** pay the premium for Comprehensive Coverage a **covered auto**, then subject to the limits of liability and deductible shown on the **Declarations Page**, **we** will pay for **loss** to a **covered auto** if it is damaged by something other than a collision as defined in paragraph B below.
B. Comprehensive Coverage applies to a **loss** caused by any of the following:
   1. Missiles;
   2. Falling objects;
   3. Fire;
   4. Theft;
   5. Larceny;
   6. Explosion;
   7. Earthquake;
   8. Windstorm;
   9. Hail;
   10. Water;
   11. Flood;
   12. Malicious mischief;
   13. Vandalism;
   14. Riot;

GA 09AU02010116X                                          40

15. Civil commotion;
16. Contact with bird or animal; or
17. Breakage of glass, except breakage of glass caused by a collision.

**CHILD RESTRAINTS.**
In the event of a **loss** to which Collision Coverage or Comprehensive Coverage apply, and **we** determine that the integrity of a child safety seat or restraint system is compromised, **we** will pay up to $250 to replace it with a like kind and quality child safety seat or restraint system, provided it was in the **auto** at the time of the covered **loss**. No deductible applies to this child safety seat or restraint system.

## TRANSPORTATION EXPENSE COVERAGE.

A. If there is total theft of a **covered auto**, **we** will pay up to $25 per day for transportation expenses incurred by **you**, subject to a limit of $750. **We** will pay only transportation expenses incurred during the period:
   1. Beginning forty-eight (48) hours after **you** notify the police and **us** of the theft of a **covered auto**; and
   2. Ending the earliest of:
      a. When a **covered auto** has been recovered and returned to **you** or its **owner**;
      b. When a **covered auto** has been recovered and repaired;
      c. When a **covered auto** has been replaced;
      d. Seventy-two (72) hours after **we** make an offer to pay for the **loss** if a **covered auto** is deemed by **us** to be a total loss or unrecoverable; or
      e. When **you** have incurred the $750 transportation expense limit.
B. **We** will not pay for the cost of transportation if there is a theft only of a **trailer**.
C. **You** must give **us** written verifiable proof of **your** transportation and or loss of use expenses.
D. At **your** request, **we** will guarantee payment of transportation expenses to the provider of such transportation up to $25 a day, to a limit of $750, and shall pay such provider directly.
E. There shall be no duplicate recovery for the same elements of **loss** or expense under this coverage and any other coverage provided by this Policy.

**OPTIONAL RENTAL REIMBURSEMENT COVERAGE.**

A.  If **you** pay the premium for Rental Reimbursement Coverage, then subject to the limits of liability shown on the **Declarations Page**, **we** will reimburse **you** for reasonable rental expenses **you** incur when **you** rent an **auto** from a car rental agency or service or repair garage due to **loss** to a **covered auto** that is covered under Collision Coverage or Comprehensive Coverage.
B.  Rental charges will be reimbursed beginning:
    1.  The date the **loss** is reported to **us** if a **covered auto** is disabled and **you** promptly tow **covered auto** to a garage for repairs;
    2.  The date a **covered auto** is delivered to a garage for repairs if the **auto** is drivable; or
    3.  Forty-eight (48) hours after **you** report the theft of **covered auto** to **us** and the police or other law enforcement authority.
C.  Rental charge reimbursement will end at the earliest of the following:
    1.  The expiration of the reasonable period of time required to repair a **covered auto**;
    2.  The day following the settlement offer, if **we** offer settlement instead of repairs;
    3.  When a **covered auto** has been returned to **you;**
    4.  When a **covered auto** is replaced;
    5.  When a **covered auto** that was stolen is returned to **you** if no repairs are needed due to the theft;
    6.  Seventy-two (72) hours after **we** make an offer to pay for the **loss**, if a **covered auto** is deemed by **us** to be a total loss;
    7.  When **you** incur 30 days rental; or
    8.  When **you** incur the maximum rent shown on the **Declarations Page**.
D.  At **your** request, **we** will guarantee such rental payments hereunder to the provider of the vehicle. If **we** guarantee payment, such payment will be made directly to the provider of the vehicle up to **our** limits of liability as shown on the **Declarations Page**.
E.  Coverage will not be provided for any amounts incurred for:
    1.  Mileage;

GA 09AU02010116X                                                    42

     2.   Fuel;
     3.   Collision damage waiver;
     4.   Navigation devices;
     5.   Insurance; or
     6.   Tolls.
F.  Any amount payable under this coverage shall be reduced to the extent any expense is payable under any other coverage under this Policy.
G.  There shall be no duplicate recovery for the same elements of **loss** or expense under this coverage and any other coverage provided by this Policy.
H.  **You** must give **us** written verifiable proof of incurred rental expenses.

---

### OPTIONAL TOWING AND LABOR COST COVERAGE.

A.  If **you** pay the premium for Towing and Labor Cost Coverage, subject to the limits of liability as shown on the **Declarations Page we** will reimburse **you** for the following expenses each time a **covered auto** is disabled:
     1.   Towing of the **covered auto** to a qualified repair facility nearest to the site of the **accident** or disablement; and
     2.   Labor costs for necessary service at the place where a **covered auto** is disabled.
B.  **We** will not pay for:
     1.   Labor performed due to a failure to maintain a **covered auto**;
     2.   Labor performed anywhere other than at the place of disablement;
     3.   Parts, materials, fuel or lubricants;
     4.   A tow if a **covered auto** is not disabled;
     5.   More than one tow per disablement; or
     6.   Towing of or labor for a **covered auto** that is:
         a.   Stuck in snow, mud, water or sand, more than 50 feet from a public road or highway; or
         b.   Disabled on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement.
C.  **We** will not pay for towing or labor costs incurred due to disablement caused by the same reason, other than covered losses under Part D, to any one vehicle more than one time during a policy term.

D. This coverage is limited to no more than three occurrences in any 6-month period.
E. Any amount payable under this coverage shall be reduced to the extent any expense is payable under any other coverage under this Policy.
F. There shall be no duplicate recovery for the same elements of **loss** or expense under this coverage and any other coverage provided by this Policy.
G. **You** must give **us** written verifiable proof of towing and/or labor charges incurred.

## OPTIONAL CUSTOM PARTS & EQUIPMENT COVERAGE.

A. If **you** pay the premium for Optional Custom Parts & Equipment Coverage for **your covered auto**,  then subject to the limits of liability as shown on the **Declarations Page** for this coverage for that a **covered auto**, **we** will pay for **loss** to a **custom parts and equipment** in or on **your covered auto** that results from a **loss** to which Collision Coverage or Comprehensive Coverage applies. All payments for **loss** to **custom parts and equipment** shall be reduced by the applicable deductible, but only one deductible shall be applied to any one **loss** under this Part D – Coverage for Damage to Your Auto.
B. The limit of liability for **loss** to **custom parts and equipment** is the lowest of:
   1. The actual cash value of such **custom parts and equipment**, reduced by the applicable deductible, and by its salvage value if **you** or the **owner** retain the salvage;
   2. The amount necessary to repair the **custom parts and equipment**, reduced by the applicable deductible;
   3. The amount necessary to replace the **custom parts and equipment**, reduced by the applicable deductible, and reduced by its salvage value if **you** or the **owner** retain the salvage; or
   4. The limit of liability for Optional Custom Parts & Equipment Coverage shown on the **Declarations Page**.
C. Coverage for **custom parts and equipment** shall not cause **our** limit of liability for **loss** to an **auto** under this Part D – Coverage for Damage to Your Auto, to be increased to an amount in excess of:
   1. The actual cash value of the **auto**, including its **custom**

GA 09AU02010116X                                                44

        **parts and equipment**; or
2. Any applicable limits of liability or Stated Amount elected by **you**.

D. Any amount payable under this coverage shall be reduced to the extent any expense is payable under any other coverage under this Policy.
E. There shall be no duplicate recovery for the same elements of **loss** or expense under this coverage and any other coverage provided by this Policy.

---

### ADDITIONAL DEFINITION FOR PART D – COVERAGE FOR DAMAGE TO YOUR AUTO.

---

Terms appearing in **bold** type will have the following meaning throughout Part D – Coverage for Damage to Your Auto, whether in the singular, plural or possessive.  As used in this Part D:

"**Custom parts and equipment,**" means cosmetic enhancements, equipment, devices, accessories and changes to an **auto** that are permanently installed or attached by bolts, brackets, or slide-out brackets, that alter the appearance or performance of a **auto** and were not installed by the:
1. Original manufacturer or factory; or
2. **Auto** dealer as an original manufacturer option as part of the original retail sale of a new **auto**.

"**Custom parts and equipment**" includes any electronic equipment designed for the reproduction of sound or to transmit or receive audio, visual, or data signals.  It includes, but is not limited to, the following items when such items are not the manufacturer's standard or optional equipment on the **auto**:
1. Citizen band radios;
2. Telephones;
3. Two-way mobile radios;
4. Radios;
5. Stereos;
6. Tape decks;
7. Compact disc systems;
8. Satellite radio systems;
9. Navigation systems;

GA 09AU02010116X                                          45

10. Internet access systems;
11. Personal computers;
12. Video entertainment systems;
13. Televisions; and
14. Scanners.

"**Custom parts and equipment**" also includes, but is not limited to, the following custom furnishings or equipment when they are not the manufacturer's standard or optional equipment on the **auto**:

1. Custom paint;
2. Murals;
3. Decals or graphics;
4. Custom seats;
5. Custom wheels;
6. Tires that are not the size specified by the **auto** manufacturer for the **covered auto**;
7. Covers;
8. Camper body;
9. Height-extending roofs;
10. Winches;
11. Roll bars;
12. Running boards;
13. Handicap equipment;
14. Pickup truck cap covers; and
15. Pickup truck bed liners.

## EXCLUSIONS.

A. **We** will not pay for:
   1. **Loss** to any **auto,** including a **covered auto** that occurs while it is being used to **carry persons or property for compensation or a fee**, or as a public or livery conveyance. It does not apply to a share-the-expense car pool.
   2. Damage due and confined to:
      a. Wear and tear;
      b. Freezing;
      c. Deterioration, rust or corrosion;

    d.  Mechanical or electrical breakdown or failure; or

    e.  Road damage to tires.

This Exclusion does not apply if the damage results from the total theft of a **covered auto** to which Comprehensive Coverage under this policy applies.

3.  Damage due and confined to:

    a.  Prior **loss** or damage;

    b.  Manufacturer's defects or faulty materials;

    c.  Lack of routine and/or proper maintenance as prescribed by the manufacturer.

4.  **Loss** to any electronic equipment, devices, accessories, and any other personal effects that are not permanently installed in an **auto**. This includes, but is not limited to:

    a.  Radios;

    b.  Stereos;

    c.  Tape decks;

    d.  Compact disc systems;

    e.  Audio cassette recorders;

    f.  Tapes;

    g.  Compact discs;

    h.  Cassettes;

    i.  VHS tapes;

    j.  DVDs, and other recording or recorded media;

    k.  Any equipment designed or used for the detection or location of radar or laser;

    l.  Satellite radio systems;

    m.  Citizen band radios;

    n.  Telephones;

    o.  Two-way mobile radios;

    p.  Televisions;

    q.  Personal computers;

    r.  Video entertainment systems;

    s.  Digital video device players;

    t.  Navigation systems;

    u.  Utility boxes; and

    v.  Toolboxes.

This Exclusion does not apply to:

    a.  Any electronic equipment that is necessary for the normal operation of the **auto** or the monitoring of the **auto's** operating systems;

    b.  A permanently installed telephone designed to be operated by use of the power from the **auto's** electrical

system and any accessories used with the telephone;

   c. Permanently installed equipment designed to be solely operated by use of the power from the **auto's** electrical system; and

   d. Equipment removable from a housing unit that is permanently installed in the **auto** by bolts, brackets, or slide-out brackets.

5. **Loss** to a **covered auto** due to or as a consequence of:

   a. Destruction, seizure or confiscation by any government or civil authorities including, but not limited to, destruction, seizure or confiscation by any federal or state law enforcement officer in connection with any violation of any controlled substances law for which **you** are convicted; or

   b. Repossession by any entity acting on behalf of the **owner** of the **covered auto.**

6. **Loss** that occurs while a **covered auto** is being **used** in the course of a **crime**. This does not apply to **loss** that occurs when the a **covered auto** has been stolen.

7. **Loss** to a recreational vehicle, motor home, or travel trailer.

8. **Loss** to any custom furnishings or equipment. Custom furnishings or equipment include, but are not limited to:

   a. Modified or customized engines;

   b. Carburetor systems;

   c. Special carpeting and insulation, furniture, bars or television receivers;

   d. Facilities for cooking and sleeping;

   e. Sun roofs, moon roofs, t-bar roofs or height-extending roofs;

   f. Custom murals, paintings or other decals or graphics; or

   g. Winches.

However, items or features in 8.e., 8.f. and 8.g. above will not be excluded if:

   a. **You** have disclosed these items or features to **us** in writing prior to the **loss**;

   b. **We** agree to cover them; and

   c. **You** have paid the additional premium for it by buying Optional Custom Parts & Equipment Coverage.

9. **Loss** to any non-factory installed or non-original equipment manufactured (non-**OEM**) item or feature, unless **you** have disclosed the equipment to **us** in writing

prior to the **loss** and paid an additional premium for it by buying Optional Custom Parts & Equipment Coverage.

10. **Loss** to a **covered auto** arising out of or during its use for the transportation of any:
    a. Explosive substance;
    b. Flammable liquid; or
    c. Similar **hazardous materials**;
    except for transportation incidental to **your** ordinary household or farm activities.

11. **Loss** to a **covered auto** being maintained or used by any person while employed or otherwise engaged in an **auto business**.

12. **Loss** to a **covered auto** being maintained or used by any person while employed or otherwise engaged in any **business** or occupation (other than farming or ranching). However, with respect to a **business** use that is disclosed by **you** and allowed by **us**, and for which **you** have paid **our** added charge for **business** use, this exclusion shall not apply to that disclosed **business** use.

13. **Loss** resulting from the use of a **covered auto** while it is **racing**.

14. **Loss** to clothes, tools, or personal effects.

15. **Loss** to a **covered auto** if **you** acquire it from the seller without legal title or if the **covered auto** has been sold, gifted or conveyed to anyone prior to the date of **loss** for which coverage is sought under this Part D.

16. **Loss** to a **covered auto** caused intentionally by or at the direction of **you**, any **family member**, a **resident**, or the **owner** of a **covered auto.** However, this Exclusion does not apply to an innocent co-insured's legal interest in a **covered auto** if:
    a. The innocent co-insured did not cooperate in or contribute to the cause of the **loss**;
    b. The **loss** arose out of an act of family violence , as defined by Georgia laws, as amended; and
    c. The person who caused the **loss** is the subject of a family violence complaint that has been brought for the act causing the **loss**.

17. **Loss** to a **covered auto** while being operated by a:
    a. A named excluded driver;
    b. An **undisclosed driver;** or
    c. An **unlicensed driver**.

18. **Loss** to any **auto** that is subject to any bailment lease, conditional sale, or consignment agreement.
19. **Loss** due to theft or conversion of a **covered auto**
    a. By **you**, a **family member** or any **resident**; or
    b. Prior to its delivery to **you** or a **family member** or any **resident**.
20. **Loss** to any **auto** while in the care, custody or control of anyone other than **you** or a **family member** for consignment, sale, promoting sale, subleasing, leasing, renting or selling, and is no longer in **your** possession.
21. **Loss** to, or loss of use of, any **auto** rented by:
    a. **You**;
    b. Any **family member**; or
    c. A **resident**
    for pleasure use.
22. **Loss** due to a lack of lubricant or coolant or resulting from seepage of water.
23. **Loss** due to or as a result of:
    a. Nuclear reaction, radiation, exposure, or contamination;
    b. Discharge of any nuclear weapon (even if accidental);
    c. **War** (other than a riot or civil commotion); or
    d. Bio-chemical attack or exposure to bio-chemical agents.
24. **Loss** caused by fungus, mold, mildew, spores, or any byproducts or resulting organisms, without regard to the factors causing or contributing to its growth.
25. **Loss** to any **custom parts and equipment** in or upon any **auto** in excess of the applicable limits of liability.
26. **Loss** to a **covered auto** while:
    a. Rented or leased to another; or
    b. Provided to another in exchange for services, goods or anything else of value.
27. **Loss** to an **auto** sustained while being operated for recreational or off-road use when the **auto** is not specifically designed and recommended by the original manufacturer for such use.
28. **Loss** due to any intentional discharge, dispersal, or release of chemical or **hazardous material** for other than its safe and useful purpose. This does not apply to an act of vandalism:
    a. By someone who is not **you**, a **family member,** or any **resident**; and

GA 09AU02010116X                                              50

b. That is specifically intended to damage a **covered auto.**

29. Amounts incurred for:
   a. Mileage;
   b. Fuel;
   c. Collision damage waiver;
   d. Navigation devices;
   e. Insurance; or
   f. Tolls.

30. Loss to any **auto** while maintained, used, occupied or operated for **transportation network company services**.

B. If **you** agree to have window glass repaired after a **loss**, **we** will not pay:
   1. The **actual cash value** for **loss** to that glass; or
   2. The cost to replace it.

---

### LIMIT OF LIABILITY.

A. **Our** limit of liability for **loss** shall not exceed the lowest of the:
   1. Actual cash value of the stolen or damaged property at the time of the **loss**, reduced by the applicable deductible shown on the **Declarations Page**, and by its salvage value if **you** or the **owner** retain the salvage;
   2. Amount necessary to replace the stolen or damaged property, or its parts if the **loss** is limited to parts, reduced by the applicable deductible shown on the **Declarations Page**, and by its salvage value if **you** or the **owner** retain the salvage;
   3. Amount necessary to repair the physical damage to the **auto**, or its parts if the **loss** is limited to parts, to return it to its pre-**loss** physical condition, reduced by the applicable deductible shown on the **Declarations Page**; or
   4. At **our** discretion, if permitted by law in the state in which **you reside**, as shown in **our** records, the amount necessary to repair the physical damage to the **auto**, or its parts if the **loss** is limited to parts, and return it to its pre-**loss** physical condition:
      a. At a facility that is a member of **our** preferred repair facility network, if:
         i. A network repair facility is located within 25 miles of the location of the **auto** if the **auto** is not

GA 09AU02010116X                                                    51

      drivable after a **loss**; or
   ii. A network repair facility is located within 25 miles of the **auto's** garaging location where **you** reside, if the **auto** is drivable after a **loss**; or
  b. At a facility that is not a member of **our** preferred repair facility network, if:
   i. A network repair facility is not located within 25 miles of the location of the **auto** and the **auto** is not drivable after a **loss**; or
   ii. A network repair facility is not located within 25 miles of the **auto's** garaging location and the **auto** is drivable after a **loss**.

However, **our** limit of liability under this Part D – Coverage for Damage to Your Auto may never exceed $500 for **loss** to any **trailer**.

B. A deduction for depreciation and betterment will be made from the amount **we** will pay for repair or replacement of the damaged or stolen property, or any part thereof, if the repair or replacement results in better property or in a better part with regard to:
  1. Its market value;
  2. The useful life of the part; or
  3. Improves the condition of the **auto** considering wear and tear and damage that existed prior to the **loss**.

**You** are responsible to pay for any betterment, but no more than 20% of the market value of the **auto** prior to the **loss**.

Our adjustment to the amount payable by **us** due to betterment or depreciation on parts replaced includes, but is not limited **to:**
  1. Batteries;
  2. Tires;
  3. Engines;
  4. Transmissions; and
  5. Any other parts that wear out over time or have a finite useful life or duration typically shorter than the life of the **auto** as a whole. This does not include external crash parts, wheels, windshields, or other glass.

C. Payments for **loss** covered under this Part D are subject to the terms set forth here:
  1. No more than one deductible shall be applied to any one covered **loss**.

2. If coverage applies to a **covered auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on **your Declarations Page**. However, the highest deductible on any **covered auto** shall apply.

3. In determining the amount necessary to repair damaged property to its pre-**loss** condition, the amount to be paid by **us**:

   a. Shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

   b. Will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

      i. Original manufacturer parts or equipment; and

      ii. Non-**original equipment manufactured** parts or equipment.

4. The actual cash value is determined by the market value, age and condition of the vehicle at the time the **loss** occurs.

5. Duplicate recovery for the same elements of **loss** is not permitted. No one will be entitled to receive duplicate payments for the same elements of **loss** under this coverage and:

   a. Any other coverage provided by this policy; or

   b. Under any other insurance or source of recovery.

D. With respect to the repair of a **covered auto** under this Part D, **we** may specify the use of non-original equipment manufactured parts except where not permitted by law. Warranties applicable to non-**OEM** parts may be provided by the manufacturer or distributor of these parts rather than the manufacturer of **your auto**. If **we** specify the use of non-**OEM** parts, **we** will identify each such part on **your** repair estimate.

E. **We** have no duty to pay the actual cash value of window glass or to replace window glass after a **loss** if **you** agree to have the window glass repaired at **our** expense.

F. Any amount payable by **us** to repair or replace damaged property will be reduced by the cost of labor, parts, and materials to repair prior damage, deterioration, and defects to the property that had not been repaired prior to the **loss**.

---

**PAYMENT OF LOSS.**

---

A. At **our** option, **we** may pay for the **loss** in money or repair or replace the damaged or stolen property.

B. **We** may, at **our** expense, return any stolen property to **you** or to the address shown on the **Declarations Page**. If **we** return stolen property, **we** will pay for covered damage resulting from the theft. **We** may keep all or part of the property at an agreed or appraised value, but there shall be no abandonment to **us**.

C. **We** may make payment for a **loss** to **you**, the **owner** of the property, or the lienholder.

D. **We** may make payment for a **loss** directly to a repair facility with **your** consent.

E. If **we** make a payment for theft or total **loss** of an **auto**, **you** or the **owner** must transfer the title of that **auto** to **us** at or before the time of payment, unless **you** or the **owner** keep the salvage of a totaled **auto**.

---

### NO BENEFIT TO BAILEE.

---

This insurance shall not directly or indirectly benefit any carrier, organization, person, or other bailee for hire.

---

### OTHER INSURANCE.

---

A. If other insurance or source of recovery also covers the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **non-owned auto** shall be excess over any other collectible insurance or source of recovery.

B. Notwithstanding the other terms in this "Other Insurance" clause, if **you** or a **family member** are:
   1. Operating a **non-owned auto** that is an **auto owned** by a person, firm or corporation engaged in the **business** of retail sales of new and/or used motor vehicles; and
   2. Not the **auto's owner** nor employed by the **auto's owner** or that **business**;

   then the excess clause above does not apply with respect to that **auto**, and **we** will provide primary coverage for **you** or a **family member**, but only as compared to a policy of liability insurance that provides similar physical damage coverage that applies to and is issued for that **auto owned** by a person, firm

GA 09AU02010116X                                                                 54

or corporation in the **business** of retail sales of new and/or used motor vehicles.

## APPRAISAL.

A. If **you** and **we** do not agree on the amount of the **loss**, then either **you** or **we** may demand an appraisal of the **loss.** In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will separately state the actual cash value and the amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
B. Each party will pay its chosen appraiser and bear the expenses of the appraiser and umpire equally.
C. Neither **you** nor **we** waive any rights under this Policy by agreeing to an appraisal.
D. Appraisers have authority only to decide the amount of the **loss**. The appraisers have no authority to:
   1. Make any coverage decisions under the policy; or
   2. Award any fees, interest, or costs.

## LOSS PAYABLE CLAUSE.

A. **We** will pay **loss** or damage due under this Policy according to **your** interest and that of any loss payee, if one is shown on the **Declarations Page**. **We** may, at **our** option, make separate payments according to those interests.
B. The loss payee's interest will not be protected if the **loss** results from **your** fraudulent acts or omissions, conversion, secretion or embezzlement of a **covered auto**, or if the **loss** is not payable to **you** under the terms of this Policy.
C. When **we** pay the loss payee, **we** shall, to the extent of the payment, be subrogated to the loss payee's rights of recovery.

## PART E – GENERAL PROVISIONS.

## BANKRUPTCY.

Bankruptcy or insolvency of the insured shall not relieve **us** of any obligations under this Policy.

## CHANGES.

A. This Policy, including the **Declarations Page** and any amendments and endorsements issued by **us**, and the Application (as if all are attached to this Policy), contains all the agreements between **you** and **us**. Its terms may not be changed or waived except in writing by **us**.

B. If there is a change in the information used by **us** to determine **your** policy premium, **we** may adjust **your** premium effective the date of the change. Changes during the policy term or at renewal that may result in a premium increase or decrease include, but are not limited to, changes in or to:

1. The number or type of **autos** or **trailers** insured under **your** Policy;
2. The use classification of the **autos** insured under **your** Policy;
3. The operators using the **autos** insured under **your** Policy (either additions or deletions);
4. **You**, a **family member** or **resident** obtaining a driver's license or operator's permit or having a driver's license reinstated after a suspension;
6. The driver's license for **You**, a **family member** or **resident** has been suspended or revoked;
5. **Your** address and/or the principal place where **you** garage any of the **autos** insured under this Policy;
6. The marital status of **you**, a **family member** or any **resident** or **regular operator**;
7. Death of the **named insured**;
8. The coverage, coverage limits, or deductible amounts; and
9. Qualification or eligibility for any premium discounts under the Policy.

C. **You** must notify **us** of any change listed in Clause B above within 30 calendar days unless the type of change is subject to a shorter notification period under this policy.

D. If any change requires a premium adjustment, **we** will make the premium adjustment in accord with **our** Rating Rules. **We** will mail or deliver a notice of an additional premium to the **named insured** and payment of the additional premium must be made in accordance with that notice. The **Declarations Page** may be

revised during the policy term due to any change described above.

E. If **we** make a change to this policy during the policy term that broadens any coverage without an additional premium charge, **you** will have the broadened coverage if that coverage is in effect on this Policy when the change occurs. The effective date of a change will be the date **we** implement that change in **your** state.

## FRAUD OR MISREPRESENTATION.

A. **We** rely upon the truth and accuracy of the information **you** provide to **us** at any time during the application and policy period to determine **your** eligibility for coverage and to determine **your** premium. **We** also rely on any additional information **you** give us during the policy term, at endorsement, at renewal, and at any request for reinstatement, to determine **your** eligibility for coverage under this Policy and to determine **your** premium. **We** will deny coverage for any **accident**, **loss** or claim under this Policy and will cancel the policy if **you** or the person applying for insurance for **you**:
   1. Made any false statements or representations to **us** with respect to any material fact or circumstance; or
   2. Concealed, omitted, or misrepresented any material fact or circumstance, or engaged in any fraudulent conduct;
   in the Application for this insurance or when renewing the policy, requesting reinstatement of this Policy, when endorsing this policy or at any other time during the Policy term.
   A fact or circumstance will be deemed material if **we** would not have written the coverages under the Policy, would not have agreed to insure the risk assumed, or **we** would not have assumed the risk at the premium charged.

B. **We** do not provide coverage or benefits for any person who has made fraudulent statements or engaged in fraudulent conduct in connection with any **accident** or **loss** for which coverage or benefits are sought under this Policy.

C. **We** will cancel the Policy and/or deny coverage for any **accident**, **loss** or claim if **you** or any other person committed fraud, misrepresentation, concealment, or misstatement of a material fact or circumstance in connection with any **accident**, **loss** or claim under this Policy.

## SETTLEMENT OF CLAIMS.

**We** may use estimating, appraisal, or injury evaluation systems or tools to determine any amounts to be paid under this policy. These systems or tools may be developed by **us** or by third parties, and may include computer software, databases, and specialized technology.

## LEGAL ACTION AGAINST US.

A. No legal action may be brought against **us** by anyone claiming coverage as a person insured under this Policy until there has been full compliance with all the terms of this Policy. In addition, under Part A - Liability Coverage, no legal action may be brought against **us** until:
   1. **We** agree in writing that an **insured** under Liability Coverage has an obligation to pay for damages due to a covered **accident**; or
   2. The amount of that obligation has been finally determined by judgment after trial.
B. No person or organization has any right under this Policy to bring **us** into any action to determine the liability of an **insured** under Part A.
C. If **we** retain salvage, **we** have no duty to preserve or retain the salvage for any purpose, including evidence for any civil or criminal proceeding.
D. Any lawsuit against **us** for benefits under any Part of this Policy, or any lawsuit filed against **us** by an insured following an **accident**, must be commenced within the time period set forth in the **bodily injury** statute of limitations in the law of the state where the **accident** occurred.

## OUR RIGHT TO RECOVER PAYMENT.

A. If **we** make a payment under this Policy and the person to or for whom payment was made has a right to recover damages from another, **we** shall be subrogated to that right. That person shall do:
   1. Whatever is necessary to enable **us** to exercise **our** rights; and
   2. Nothing after the **loss** to prejudice **our** rights.

B. However, **our** rights to recover by subrogation do not apply to:
1. Part B;
2. Part D when a person uses a **covered auto** with **your** permission; or
2. Uninsured Motorist Coverage if
   a. **we**:
      i. Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **uninsured motor vehicle** (as defined in that coverage part); and
      ii. Fail to make advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.
   b. The injured insured person has not been fully compensated for damages.
C. If **we** make a payment under this Policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for **us** the proceeds of the recovery; and
2. Reimburse **us** to the extent of **our** payment.
   However, **our** right to be reimbursed will apply only when that injured insured has been fully compensated for damages, and any reimbursement due to **us** in this case shall be reduced by **our** pro rata share of attorney's fees and expenses of litigation in bringing the claim.
D. If **we** pursue recovery from a liable party:
   **1.** **You** permit **us** to seek recovery of any deductible that may apply, but **we** have no duty to do so and **we** will notify **you** if **we** do not intend to collect the deductible.
   2. **We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. For those sums, **you** agree to be bound by:
      a. A settlement agreement entered into by **us** and the liable party; or
      b. The outcome of appraisal or arbitration.
   3. If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible to **you** based on the proportion that the actual recovery bears to the total of **our** payment and the deductible.

4. Any reimbursement to **you** by **us** will be reduced by a proportionate share of expenses and lawyer fees incurred due to the recovery.

E. If **we** make a payment to or on behalf of anyone insured under this policy which is not covered by this Policy but is compelled by law, then to the extent allowed by law **you** must reimburse **us** to the full extent of all **loss** or damages paid by **us** and **our** claims adjustment expenses.

G. If any insured under this Policy makes recovery from a responsible party without **our** written consent, **we** shall be entitled to a credit under any affected coverage to the extent that recovery prejudices **our** rights of recovery by subrogation or reimbursement.

---

## POLICY TERM AND TERRITORY.

---

A. This Policy applies only to **accidents** and **losses** which occur:
   1. During the policy term, as shown on the **Declarations Page**. However, this Policy does not apply to **accidents** or **loss** that occur during any lapse of coverage under this Policy or for **accidents** or **loss** that occur after this Policy has been cancelled or terminated; and
   2. In the policy territory.
B. The policy territory is:
   1. The United States of America, including its territories and provinces;
   2. The District of Columbia of the United States of America; and
   3. Canada.

This Policy also applies to **loss** or **accidents** involving a **covered auto** while being transported between their ports.

---

## PROOF OF NOTICE.

---

**We** may deliver through electronic or other means any notice instead of mailing it. **Proof of mailing** of any notice shall be sufficient proof of notice.

"**Proof of mailing**" means sufficient evidence that a letter or notice has been presented to or deposited with the United States Postal Service (USPS) for mailing by at least first-class mail and

there is receipt provided by the USPS or such other evidence of mailing as prescribed or accepted by the USPS. **Proof of mailing** includes but is not limited to any form of certificate of mailing or certificate of bulk mailing issued by the USPS, including a Certificate of Bulk Mail.

## PAYMENT OF PREMIUM.

A. If **your** initial premium payment is by check, draft, or any remittance other than cash, coverage under this Policy is conditioned upon the check, draft, or remittance being honored upon presentment to the bank or other financial institution. If the check, draft, or remittance is not honored upon presentment, this Policy shall be void from its inception and is not subject to the Cancellation provisions of the Policy. This means that **we** will not be liable under this Policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment. If **we** are required by law to make any payment after **we** void this policy, **you** must pay **us** for all expenses incurred and payments made.
B. If **you** make a premium payment for a renewal of **your** policy using an uncollectible instrument, **our** offer of policy renewal is deemed rejected by **you** and the policy terminated without renewal.
C. Examples of an uncollectible instrument and payment not being honored upon presentment, include, but are not limited to:
    1. Checks dishonored or refused due to insufficient funds;
    2. Checks drawn from closed accounts;
    3. Invalid credit cards or credit card charges dishonored or refused by the issuing financial institution; and
    4. Electronic Funds Transfer or Automated Clearing House transfers or payments from a financial institution or similar account that are refused, dishonored or rejected.
    If any of these acts or events occur at initial Application or at any time during the policy term, it shall be deemed to be nonpayment of premium.

## TERMINATION.

A. CANCELLATION:

This Policy may be cancelled during the policy period as follows:

1. The named insured shown as the policyholder on the **Declarations Page** may cancel by:
   a. Returning this Policy to **us**; or
   b. Giving **us** or **our** authorized agent advance written notice of cancellation stating a future date on which the named insured is requesting the Policy be cancelled. The effective date of the cancellation shall be subject to the following
      i. If only **your** interest is affected, the date **we**, or **our** agent, receive **your** returned Policy or the date specified in the notice, whichever is later. Except that **we** may, at **our** option, waive the requirement that the notice state a future date for cancellation by confirming the date and time of cancellation in writing to the named insured..
      ii. If by statute, regulation or contract the Policy may not be cancelled unless notice is given to a government agency, mortgagee or other third party, **we** will mail or deliver at least 10 days notice to the named insured and any third party as soon as practicable after receiving **your** request for cancellation.

2. **We** may cancel by mailing to the named insured shown as the policyholder on the **Declarations Page** at the address last known by **us**:
   a. At least ten (10) days notice if :
      i. Cancellation is for nonpayment of premium; or
      ii. Notice is mailed during the first 59 days of the first policy period; or
   b. At least thirty (30) days notice in all other cases.

3. When this Policy has been in effect for less than sixty (60) days or within the underwriting period as defined by state law, whichever is less, **we** may cancel this Policy for any lawful reason. Notice of Cancellation will be provided as required by state law.

4. After this Policy has been in effect for more than fifty-nine (59) days, or if this is a renewal or continuation policy, **we** will cancel only for one or more of the following reasons:
   a. For nonpayment of premium;
   b. The Policy was obtained through fraud or material misrepresentation;

GA 09AU02010116X                                          62

   c. The named insured failed to disclose in the written Application, or in response to inquiry by **us**, **our** authorized agent or a broker, information necessary for the acceptance or proper rating of the risk;

   d. An insured person violated any of the terms or conditions of the policy;

   e. The named insured failed to disclose fully, if called for in the Application, his or her record for the preceding 36 months of motor vehicle accidents and moving traffic violations;

   f. A named insured under this policy made a false or fraudulent claim, or knowingly aided or abetted another in the presentation of such a claim;

   g. **Your** driver's license or that of:

      i. Any driver who lives with **you**; or

      ii. Any driver who customarily uses a **covered auto**; has been suspended or revoked during the 36 months prior to the notice of cancellation, unless that person is a named excluded driver or **you** have paid us the applicable premium surcharge for a driver with a suspended or revoked license.

   h. If the **named insured** or any other driver who either **resides** in the same household or who customarily uses **a covered auto**:

      i. Is or becomes subject to epilepsy or heart attacks and the person does not produce a certificate from a doctor testifying to that person's unqualified ability to operate a motor vehicle;

      ii. Has an accident, conviction, criminal or traffic record, or a physical, mental, or other condition which is such that that person's operation of a motor vehicle might endanger the public safety;

      iii. Has within a three-year period prior to the notice of cancellation been addicted to the use of narcotics or other drugs;

      iv. Has been convicted of, or forfeited bail for, any of the following during the 36 months immediately prior to the notice of cancellation for:

         (a) A felony;

         (b) Criminal negligence in the operation of a motor vehicle resulting in homicide, death or assault;

         (c) Driving under the influence of drugs or alcohol;

         (d) Being intoxicated while in or about a motor vehicle or while having custody of an motor vehicle;

         (e) Leaving the scene of an accident without reporting the accident;

         (f) Theft or unlawful taking of a motor vehicle;

         (g) Making false statements in an application for a driver's license;

    v. Has been convicted of or forfeited bail for three or more violations, within the 36 months immediately prior to the notice of cancellation, of any law, ordinance, or regulation limiting the speed of motor vehicles or any of the provisions of the motor vehicle laws of any state, violation of which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or different offenses;

i. A **covered auto** is:
1. So mechanically defective that its operation might endanger public safety;
2. Used in carrying passengers for hire or compensation.  However, this shall not apply to a shared-expense car pool;
3. Used in the **business** of transportation of flammables or explosives.
4. An authorized emergency vehicle;
5. In such a condition that it becomes a substantially greater risk to insure;

j. Any lawful reason not specified above.

5. **We** may cancel this Policy according to its terms and the cancellation shall terminate this agreement as to any loss payee's interest. If **we** are required by law or regulation to give the loss payee notice of cancellation, **we** will give such notice in accordance to such law or regulation. In the event the loss payee makes a claim under this Policy, the loss payee shall be required to abide by all terms and conditions of this Policy applicable to **you**, and shall have no greater rights than **you** to receive payment. When **we** pay the loss payee, **we** shall, to the extent of payment, be subrogated to the loss payee's rights of recovery. This clause 5 has no effect if the name of the lienholder or loss payee is not shown on the **Declarations Page**.

B. NONRENEWAL:
   If **we** decide not to renew or continue this Policy at the end of a
   policy term, **we** will mail notice to the named insured shown as
   the policyholder on the **Declarations Page** at the last address
   shown in **our** records. Notice will be mailed at least thirty (30)
   days before the end of the policy term, or any greater number of
   days required under state law.
C. AUTOMATIC TERMINATION:
   1. If **we** offer to renew or continue this Policy and **you** or
      **your** representative do not pay the premium when due, this
      Policy will automatically terminate at the end of the current
      policy term. Failure to pay the required renewal or
      continuation premium when due (this includes a payment
      that is dishonored by a financial institution for any reason)
      shall mean that **you** have rejected **our** offer to renew.
   2. If **you** obtain other insurance on a **covered auto**, any
      similar insurance provided by this Policy will terminate as
      to that **auto** on the effective date of the other insurance.
   3. If a person other than **you**, a **family member**, or a
      **resident**, becomes the **owner** of the **auto**, coverage for
      that **auto** will automatically terminate at the time the new
      **owner** gets possession of the **auto,** or **ownership** is
      conveyed to the new **owner**, whichever occurs first.
D. OTHER TERMINATION PROVISIONS:
   1. If this Policy is cancelled **we** will refund any unearned
      premium that is due. **You** and **we** agree that there may be
      fees charged that are earned on the effective date of this
      policy and nonrefundable The premium refund, if any, will
      be computed on a daily pro-rata basis and computed
      according to **our** rating rules. However, the making of or
      offering to make the refund is not a condition of
      cancellation.
   2. The earliest effective date shown in any notice of
      cancellation shall be the end of the policy term.
   3. This Policy is neither severable nor divisible. Any
      cancellation will be effective for all coverage for all persons
      or entities and all **autos** and **trailers** under this Policy.
   4. Nothing in this "Termination" clause shall waive **our** rights
      to void this Policy if permitted by law.

---

**TRANSFER OF YOUR INTEREST IN THIS POLICY.**

---

A. **Your** rights and duties under this Policy may not be assigned without **our** written consent. However, if a named insured shown as the policyholder on the **Declarations Page** dies, coverage will be provided for:
   1. That named insured's surviving spouse or the named insured's registered domestic partner, if that person **resides** in the same household as the named insured at the time of death. Coverage applies to that person's spouse or registered domestic partner as if he or she were a named insured shown on the **Declarations Page**; and
   2. The legal representative of the deceased named insured, but only with respect to such representative's legal duty to maintain or use a **covered auto**.
B. Coverage will only be provided until the end of the policy term or until otherwise terminated under the terms of this Policy.
C. Any person or entity who receives assignment of the policy or its benefits as set forth above is subject to all the terms and conditions of the Policy.

## TWO OR MORE POLICIES.

If this Policy and any other motor vehicle insurance policy issued to **you** by **us** apply to the same **accident** or **loss**, **our** maximum limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy. There will be no adding, stacking, or combining of coverage and no one will be entitled to receive duplicate payments for the same elements of loss.

## CONFORMITY TO STATUTES.

If any terms of this Policy are in conflict with the statutes of the state in which this Policy is issued, those terms are amended to conform to such statutes. If a court with proper jurisdiction strikes down any duty, condition, exclusion, limitation or other policy term, then, to the extent permitted by law, the policy term at issue shall not apply to the amount of the damages that is less than or equal to **minimum limits**, but only if the injured person is an innocent third party who is not able to recover damages from any other source including, but not limited to, other liability coverage and/or uninsured motorist coverage. Any such conflict shall not affect or

void any terms that conform to law, nor affect the Policy as a binding contract.

Notwithstanding any of the other terms and conditions of the policy, any Liability Coverage afforded under this Policy shall be at least as extensive as the minimum liability coverage required by Georgia law, as amended.

## JOINT AND INDIVIDUAL INTERESTS.

If there is more than one named insured shown as the policyholder on the **Declarations Page** of this Policy, any named insured may cancel or change this Policy. The action the named insured or the named insured's spouse shall be binding on all persons provided coverage under this Policy.

## ELECTRONIC SIGNATURES.

**You** and **we** agree that electronic signatures may be used and will satisfy any regulatory or other requirement for written signatures. When a law requires a signature on any form or document, or letter or document to be notarized, verified or acknowledged or made under oath, the electronic signatures will satisfy this requirement if the signature of the person authorized to perform the service of:

1. notarizing;
2. verification; or
3. acknowledgment

is attached or logically associated with the signature or electronic signatures of record. **You** and **we** agree that electronic signatures shall include, but are not limited to, any:

1. assent;
2. acceptance;
3. agreement;
4. election;
5. selection; and
6. rejection

sent via:

1. e-mail;
2. internet;
3. text message; or
4. fax, or

GA 09AU02010116X                                                             67

5.   done as a recorded telephonic signature or assent,
when done with the intent of the person to be bound, as if signed in
writing.

\* \* \* \* \*

REMAINDER OF PAGE IS INTENTIONALLY BLANK.
POLICY SIGNATURE PAGE FOLLOWS.

\* \* \* \* \*

**EXECUTED ON BEHALF OF THE COMPANY:**

Robert Karfunkel
President

Jeffrey Weissmann
Secretary

* * * * *

REMAINDER OF PAGE IS INTENTIONALLY BLANK.
POLICY SIGNATURE PAGE FOLLOWS.

* * * * *

## ENDORSEMENTS TO PERSONAL AUTO POLICY.

The following Endorsements apply when indicated on the **Declarations Page** as described below and, if applicable, any additional premium due is paid.

## EXCLUDED DRIVER ENDORSEMENT.

**INSURING AGREEMENT.**

A. If **you** have elected to exclude a named driver from coverage under this Policy, or a driver is shown as "excluded" on the Type of Driver section of the **Declarations Page**, in consideration of the premium for **your** Policy, **you** agree that no coverage applies under this Policy, and **we** will not be liable for any injury, damage, loss, expense or claim, that arises out of the operation; maintenance; use; custody; or control of any **auto** by an **excluded driver**, either with or without permission. This includes any claim for damages made against **you**, a **family member**, or any other person or entity that is vicariously liable for an **accident** or **loss** arising out of the maintenance, use, custody or control of any **auto** by an **excluded driver**. **We** have no duty to defend any suit or settle any claim that arises out of the operation, maintenance, use, custody, or control of any **auto** by an **excluded driver**.

B. If a state law prohibits **us** from excluding coverage for the **minimum limits**, **we** will provide such **minimum limits** to the extent required by law. However, in no event will **we** provide any coverage during any time that an **excluded driver's** license is suspended or revoked. All other coverage under **your** Policy and any amounts in excess of the **minimum limits** shall be excluded.

C. If **we** are compelled by law or otherwise to pay for any: injuries; damages; losses; expenses; or claims that are directly or indirectly caused by the operation of an **auto** by an **excluded driver**, **you** agree to reimburse **us** for any expense incurred by **us**, including attorney fees, and any payments made by **us**, due to the operation of any **auto** by an **excluded driver**. **You** also agree to reimburse **us** for any expense incurred by **us** to enforce the terms of this Excluded Driver Endorsement and **our** right of recovery of such expenses and payments.

D. Any provision herein that conflicts with applicable laws is amended to conform to such laws. All other provisions shall be given their full force and effect.

E. Any Driver Exclusion election made under this Policy shall continue in force as to any: continuation; reinstatement; renewal; substitute; amendment; or replacement of **your** Policy until **we** receive written instructions from **you** to terminate the Driver Exclusion election and **we** are paid all additional premium due.

"**Excluded driver**" means any person who is shown on the **Declarations Page** as "excluded."

---

### ACCIDENTAL DEATH BENEFIT ENDORSEMENT.

If **you** pay the premium for this Accidental Death Benefit Endorsement, **we** will provide this insurance, subject to the limits of liability shown on the **Declarations Page** and subject to all of the provisions of this endorsement and the provisions and definitions of the Policy, except as modified herein, as follows:

### INSURING AGREEMENT.
**We** will pay the limit of liability shown on the **Declarations Page** in the event of the death of the named insured who is shown as the policyholder on the **Declarations Page**, and which results directly from injuries caused by a motor vehicle **accident**, while the named insured is **occupying** a **vehicle**, if the death occurs within one year from the date of the **accident**.

### ADDITIONAL DEFINITIONS FOR THIS ENDORSEMENT.
When used in bold type in this Accidental Death Benefit Endorsement, "**vehicle**" means a motor vehicle having more than three-load bearing wheels of a kind required to be registered under **your** state motor vehicles laws, that is designed primarily for operation upon the public streets, roads and highways, and includes a **trailer** while attached to such a vehicle.

### EXCLUSIONS.
This Policy does not cover any **accident** or death that results from:
A. Intentionally self-inflicted injury; suicide; or attempted suicide; whether sane or insane;
B. Injury sustained while voluntarily taking drugs; sedatives; narcotics; barbiturates; amphetamines; or hallucinogens;, unless prescribed for or administered by a licensed physician;

GA 09AU02010116                                                          71

    C.   Injury sustained while legally intoxicated from the use of alcohol;

    D.   **War** or any aggression by armed forces, or where nuclear devices are used;

    E.   Injury sustained while in the armed forces of any country or international authority; or

    F.   Injury sustained while committing a **crime**.

### PRINCIPAL SUM.

The principal sum to be paid is $5,000 on behalf of the named insured shown as the policyholder on the **Declarations Page**.

### PAYMENT OF LOSS.

A.   All Policy proceeds will be paid, upon **our** receipt of an appropriate proof of death of the named insured, to the survivors of the named insured, in equal shares, in the first of the following classes to have a survivor at the death of the named insured:

    1.   Spouse;

    2.   Children;

    3.   Parents;

    4.   Brothers and sisters.

   If there is no survivor in any of these classes, payment will be made to the estate of the named insured.

B.   In the event there is more than one named insured shown as the policyholder on the **Declarations Page**, and if each of the named insureds sustains death covered pursuant to the Insuring Agreement of this endorsement, **we** will pay $5000 for the death of each named insured.

### PHYSICAL EXAMINATIONS.

While a claim is pending, **we** have the right at **our** expense:

A.   To examine any medical records arising out of the motor vehicle **accident** which resulted in the death; and

B.   To request an autopsy, at **our** expense, except where barred by law.

All other terms and conditions of this Policy remain in effect.

## NAMED OPERATOR ENDORSEMENT – NON-OWNED AUTOMOBILES.

If the Vehicle Section of the **Declarations Page** says "NON-OWNER", it is agreed that all coverage under this Policy, is limited to the named insured shown as the policyholder on the **Declarations Page**. No insurance under this Policy applies to the spouse, domestic partner, **family member**, a **resident**, **regular operator** or any permissive operator or passenger of any **auto**. In addition to the limitations set forth in each coverage part and on the **Declarations Page**, Coverage under this Policy is further limited as follows:

A. The insurance does not apply to any **covered auto** or any vehicle **owned** in full or in part by, or registered in the name of, **you**, any **family member**, or a **resident**; and

B. Without regard to any terms to the contrary in this Policy, any insurance provided under this endorsement shall be excess over any other valid and collectible insurance, self-insurance or bond applicable to the **bodily injury**; property damage; **loss**, expense, or other amount which may be paid under this Policy. However, if the named insured is:

   1. Operating an **auto owned** by a person, firm or corporation engaged in the **business** of retail sales of new and/or used motor vehicles; and

   2. Not the **auto's owner** nor employed by the **auto's owner** or that **business**;

   then any excess clause; does not apply with respect to that **auto**, and **we** will provide primary coverage for that named insured, but only as compared to a policy of liability insurance that provides similar coverage and that applies to and is issued for that **auto owned** by a person, firm or corporation in the **business** of retail sales of new and/or used motor vehicles.

No coverage is provided for the ownership, maintenance, or use of any **auto owned** by or acquired by **you** or a **family member** until after **you** ask **us** to insure the **auto** and **we** agree it is an acceptable risk, and the **auto** is listed in **our** records as a **covered auto** on this Policy.

When this Endorsement applies, no coverage is provided under Part D– Coverage for Damage to Your Auto or for **property damage** as defined and set forth under Part C.

All other terms and conditions of this policy remain in effect.

GA 09AU02010116                                                    73

# Notes

# Notes

# Notes