# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **DARNELL TAYLOR**, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO._____ |
| | ) | |
| **SDH SERVICES EAST, LLC d/b/a** | ) | |
| **SODEXO, INC.**, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendant*. | ) | |

## COMPLAINT

Plaintiff Darnell Taylor ("Plaintiff") submits the following Complaint for damages under 42 U.S.C. § 1981 ("Section 1981") against Defendant SDH Services East, LLC, d/b/a Sodexo, Inc. ("SDH" or "Defendant").

## JURISDICTION AND VENUE

1.   This action is for racial discrimination and retaliation.  Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages, liquidated damages and attorney's fees and costs.

2.   This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1331.

3.   Venue is appropriate in this Court as, upon information and belief, the events complained of herein occurred within the geographic boundaries of the U.S. District

Court for the Northern District of Georgia, and upon information and belief, all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

4. Plaintiff is an African American male and former employee of SDH.

5. SDH is a foreign for-profit corporation registered to conduct business in the state of Georgia.

6. SDH may be served through its registered agent if service of process is not waived:

> Registered Agent Name: **CORPORATE CREATIONS NETWORK INC.**
> Physical Address: **2985 GORDY PARKWAY, 1ST FLOOR, Marietta, GA, 30006, USA**
> County: **Cobb**

7. This Court has personal jurisdiction over Defendant.

## STATEMENT OF FACTS

8. SDH is a wholly owned subsidiary of Sodexo, Inc.

9. Sodexo contracts with educational, health care, and business institutions to operate food services and provide facilities management within their buildings.

10. Plaintiff worked for SDH at its account with Sanofi Forest Park Maintenance, 2500 Southpoint Drive, Forest Park, Georgia.

- 3 -

11. Defendant is an entity subject to the anti-discrimination and anti-retaliation provisions covered by Section 1981.

12. Plaintiff began working for SDH on October 2, 2020.

13. Plaintiff was hired as a maintenance coordinator.

14. When Plaintiff started, he worked with Christopher Prather ("Mr. Prather"), who was also a maintenance coordinator.

15. Mr. Prather was a white male.

16. Throughout the time Plaintiff and Mr. Prather were employed together, Plaintiff noticed that Mr. Prather often made disparaging remarks about African Americans.

17. Further, Mr. Prather was accused of sexual harassment against female coworkers while they were coworkers but was inexplicably cleared by SDH.

18. At the beginning of 2022, Mr. Prather was promoted to manager and a new maintenance coordinator, Derrick Williams, was hired.

19. Derrick Williams is a gay African American male.

20. Plaintiff noticed that Mr. Prather often bullied and harassed Mr. Williams due to his race (African American), and his sexual orientation.

21. Mr. Prather's comments were unwelcome and created a hostile work environment for other African American employees.

22. Upon information and belief, Mr. Williams made a complaint to SDH's HR department on or about March 1, 2022.

23. Plaintiff participated in the investigation and was one of the employees that made statements against Mr. Prather during this investigation.

24. Mr. Prather was terminated on March 30, 2022, for unacceptable workplace conduct.

25. After that point, Plaintiff felt that he and other African American employees were further ostracized and harassed by SDH's management in retaliation for the complaints and testimonies offered against Mr. Prather.

26. For example, SDH instituted a timecard policy requiring employees to clock in using the Kronos time clock, taking a selfie with the clock in the background, and texting those photos to management team members Kevin Fischer ("Mr. Fischer") and Benjamin Caudill ("Mr. Caudill").

27. Neither Mr. Fischer nor Mr. Caudill are African Americans.

28. Mr. Fischer and Mr. Caudill didn't make these same requirements of other similarly situated non-African American employees they managed.

29. This selfie was required even though the client Sanofi's policy stated explicitly that no pictures were to be taken in the building.

30. Plaintiff and other African American employees began to feel that they were being constantly questioned about their time and that SDH management did not trust them, despite there being no evidence that any African American employee had been found stealing time or otherwise behaving in a dishonest manner at work.

31. In fact, the only commonality among the affected employees were that they were African American.

32. In May 2022, Plaintiff notified HR that Mr. Caudill was creating a hostile work environment for African American employees.

33. Plaintiff was given a case number but received no other communication or follow-up about his complaint.

34. Mr. Caudill made a site visit in June 2022.

35. During the site visit, Mr. Caudill told Plaintiff that he knew someone from the facility called HR on him.

36. Further, Mr. Caudill implied that there would be retribution.

37. Mr. Caudill hired a new manager, Donnie Harris ("Mr. Harris").

38. It seemed clear to Plaintiff that Mr. Caudill informed Mr. Harris that he and Mr. Williams were "problem employees", whom he needed to get rid of.

39. Mr. Harris treated Plaintiff and Mr. Williams with a clear preconceived idea that they were causing trouble for SDH.

40. On or about July 15, 2022, Plaintiff and Mr. Williams went to Mr. Harris' office to speak to him regarding an allegation made by Omega, a contractor, that they were stealing time.

41. Mr. Harris became upset at Mr. Williams, stating, "I'm the manager, and I'm going to do what it takes to figure out what's going on here, and I could fire you if I want to."

42. Mr. Williams and Mr. Harris began to argue back and forth in an escalating manner.

43. Plaintiff was not involved in the argument between Mr. Williams and Mr. Harris.

44. During the argument, Plaintiff was outside of the office. His only action was to try and calm the situation down, at which point he and Mr. Williams left Mr. Harris' office.

45. Plaintiff was not involved in the yelling match between Mr. Williams and Mr. Harris in any way.

46. The only question Plaintiff asked of Mr. Harris was if they were allowed to work overtime, and Mr. Harris responded yes.

47. On or about July 19, 2022, Plaintiff and Mr. Williams received letters that they were each being put on a suspension while the incident with Mr. Harris was investigated.

48. In the letter addressed to Plaintiff, the matter was described as follows:

> Donnie [Harris] advised that the two [Plaintiff and Mr. Williams] came in his office…. Donnie advised that the two…began a heated discussion over Don asking a contractor (Omega) about the two being needed to be with the contractor for their work at the site. *Apparently, Derrick [Mr. Williams] became enraged to the point he was being physically threatening to Don*. [Emphasis added].

> Attached hereto and incorporated herein is **Exhibit A.**

49. Plaintiff was clearly not identified as being physically threatening to Mr. Harris.

50. In fact, in Mr. Williams' suspension notice, SDH states, "*You* [referring to Mr. Williams] became visually upset acting threatening to Don. Don said he felt threatened by your behavior to the point he thought he was going to have to call the police." [Emphasis added.]

51. At no point in either of the suspension notices did SDH identify Plaintiff as being threatening or raising his voice to Mr. Harris.

52. Plaintiff wrote an optional statement on July 20, 2022, about the incident.

53. No one from HR ever spoke to Plaintiff about his involvement after his suspension.

54. In fact, the only person Plaintiff spoke to with regarding this issue was Mr. Caudill, whom Plaintiff had previously opened a complaint about regarding race discrimination and for whom had expressly told him that he would face retribution.

55. On or about July 22, 2022, Plaintiff received notice that he was being terminated because he was "yelling and used verbal threats against [his] manager."

56. However, Mr. Williams, *not* Plaintiff, was the employee that yelled and used threats against Mr. Harris.

57. Plaintiff again never heard directly from HR about his potential involvement even at the point where he was terminated.

58. Since Plaintiff was not the party who threatened Mr. Harris, this reasoning for his termination is clearly pretextual.

59. Similarly situated non-African American employees who witnessed an argument between a co-worker and a manager were not terminated by SDH.

60. Plaintiff was actually terminated in retaliation for his complaints of race discrimination against Mr. Prather and Mr. Caudill.

## COUNT I

## DISCRIMINATION ON THE BASIS OF RACE

61. Plaintiff incorporates by refence each and every preceding paragraph of this Complaint.

62. Plaintiff and other African American employees were treated unfavorably as compared to their non-African American counterparts, including but not limited to being accused of stealing time, having to follow a timeclock procedure that violated the client's policies, and having to take selfies at the time clock that similarly situated non-African American didn't have to take.

63. Defendant's actions violated Section 1981.

64. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

## COUNT II

## RETALIATION

65. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

66. Plaintiff engaged in protected activity under Section 1981.

67. In response, Defendant retaliated against Plaintiff.

68. Specifically, Plaintiff was retaliated against (1) he was accused of stealing time, (2) when he was held to different standards than similarly situated employees

regarding clocking in, when he was suspended without pay for the actions of another employee and (3) when he was terminated.

69. Defendant's actions constitute unlawful retaliation in violation of Section 1981.

70. Defendant willfully and wantonly disregarded Plaintiff's rights and Defendant's retaliation against Plaintiff was undertaken intentionally and in bad faith.

71. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a)     a declaratory judgment that Defendant has engaged in unlawful employment practices in violation of Section 1981;

(b)     an injunction prohibiting Defendants from engaging in unlawful employment practices in violation of Section 1981;

(c)     full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination,

and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) liquidated damages and compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f) punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for its conduct toward Plaintiff and deter it from similar conduct in the future;

(g) reasonable attorney's fees and costs; and

(h) nominal damages and any other and further relief as the Court deems just and proper.

Respectfully submitted this 7th day of August, 2023.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorneys for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard
Suite 150

Atlanta, Georgia 30349
Telephone: (770) 955-0100
Facsimile: (678) 999-5039