# EXHIBIT A

State Court of Fulton County
**E-FILED**
23EV001656
3/20/2023 2:02 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| SHANNON S. MOULTRIE | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIS BRYANT GREEN, III and | ) | |
| LAW OFFICE OF W. BRYANT | ) | |
| GREEN, III, P.C. | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S ORGINAL COMPLAINT FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, INTENTIONAL INFLICTION OF MENTAL SUFFERING, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND FALSE IMPRISONMENT

**COMES NOW** Plaintiff, Shannon S. Moultrie in the above-styled action, and hereby files Plaintiff's Original Complaint for Negligent Infliction of Emotional Distress, Intentional Infliction of Mental Suffering, Intentional Infliction of Emotional Distress, and False Imprisonment against the Defendants and shows this Honorable Court as follows:

## PARTIES AND JURISDICTION

### 1.

Plaintiff was at all times relevant to the above-referenced matter a citizen and domiciliary of the State of Georgia.

### 2.

Defendant Willis Bryant Green, III (hereinafter also referred to as "Bryant Green") is a Georgia resident and resides at 4070 Bowie Court, Clarkston, Dekalb County, Georgia, 30021 and can be served at this address.

### 3.

Defendant Law Office of W. Bryant Green, III, P.C. (hereinafter also referred to as "WBGPC") is a Georgia corporation located at 303 Peachtree Street, N.E., Ste 4100, Atlanta, Georgia 30308, whose registered agent is Willis Bryant Green, III at 303 Peachtree Street, N.E., Ste 4100, Atlanta, Georgia 30308 and can be served at this address.

## **FACTS**

### 4.

On or about November 1, 2022, Plaintiff reported to work and was in her office when Defendant Bryant Green called her into his office. When Plaintiff entered Defendant Bryant Green's office she was told to sit next to another employee who was asked to join them. Defendant Bryant Green immediately told Plaintiff that he wanted her to teach the other employee all of Plaintiff's responsibilities. After repeating himself several times, he dismissed the other person and told me to remain seated.

### 5.

Defendant Bryant Green reached under his desk and pushed a button that closes and locks the door to his office. Immediately and aggressively, Defendant Bryant Green begins to rage at Plaintiff saying, "I believe you are a part of the black jew militia group that is speaking out against white jews on television!" He continue to verbally attack Plaintiff by saying, "I believe you hate white people. Your people think you are the original jews, and you think you are better than my people." Plaintiff was forced to stay in Defendant Bryant Green's office and couldn't leave on her own volition; as the only way in and out of Defendant Bryant Green's office was to engage the button under his desk, and he was sitting in front of it.

### 6.

7.

Defendant Bryant Green had first-hand knowledge that Plaintiff did not hate white jews. In fact, a month prior to this incident, Plaintiff collaborated with Defendant Bryant Green to write the obituary and organize the memorial service for a mutual attorney friend of theirs, who happens to be a white Jewish man. However, this did not keep Defendant Bryant Green from arresting Plaintiff in his office and using her as a target for his prejudice.

8.

Once he was finished spewing his prejudice, and after Plaintiff asked several times if she can be excused, Defendant Bryant Green finally pushed the button underneath his desk so that Plaintiff could leave. While walking out of his office, Defendant Bryant Green further demeaned and sexually harassed Plaintiff by saying, "I think you hate white jews, but I love looking at your butt when you walk away."

9.

Stressed and full of anxiety, Plaintiff immediately returned to her office to collect her belongings to exit the premises. When she grabbed her phone she had a text message from her supervising attorney to call him as soon as she could. When she got in her car, Plaintiff called her supervisor and he asked her if she was okay. Crying, Plaintiff said no. Before she could speak her supervisor said, "I know what just happened to you because Bryant told me he was going to do it to you." Plaintiff's supervisor went on to say that he and Defendant Bryant Green went for lunch when Defendant Bryant Green told Plaintiff's supervisor he was angry with what Kanye West and Kyrie Irving was saying in the media and he no longer wanted black jews in his office. Plaintiff's supervisor told Defendant Bryant Green that he was wrong, and Defendant Bryant Green replied by saying, "I don't care."

10.

Plaintiff suffered such extreme, stress, fear, anxiety, sleep deprivation and physical pain that she began experiencing pain on the right side of her body that rendered it difficult to get out of bed; numbness on the right side of her face, and pain in her right shoulder, neck and arms. The symptoms were so severe that Plaintiff thought she was having a stroke, so she immediately sought medical care. Plaintiff was told that due to what Defendant Bryant Green had done to her, Plaintiff's stress and anxiety level was so high that for the first time in her life she was suffering from hypertension. Due to Plaintiff's symptoms and medical results, Plaintiff was prescribed immediate time off work and to see a phycologist.

## COUNT 1 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

11.

Plaintiff repeats and re-alleges each and every allegation contained in previous Paragraphs as if set forth at length herein.

12.

Defendant Bryant Green was negligent, amongst other things, for using his power and control to arrest Plaintiff in his office using a "trap button" to lock her in his office to verbally attack and abuse Plaintiff.

13.

Plaintiff sustained a physical impact due to Defendant Bryant Greens negligence.

14.

The physical impact caused by Defendant Bryant Green caused Plaintiff's injuries.

15.

The physical injuries caused by Defendant Bryant Green caused Plaintiff's emotional distress.

16.

Defendant Bryant Green's negligence is the proximate cause of the subject incident and Plaintiff's resulting injuries.

17.

Plaintiff reserves the right to amend her Complaint to add any other policies, procedures and laws that Defendant Bryant Green may have violated which may be determined during the course of discovery.

**COUNT 2 – INTENTIONAL INFLICTION OF EMOTION DISTRESS**

18. .

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

19.

Defendant Bryant Green's conduct against Plaintiff was intentional and/or reckless.

20.

Defendant Bryant Green's conduct against Plaintiff was extreme and outrageous.

21.

Defendant Bryant Green's conduct is the proximate cause of Plaintiff's emotional distress.

22.

The emotional distress that Defendant Bryant Green caused Plaintiff was so extreme in degree, as to it went beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

23.

Defendant Bryant Green's conduct was found to be so egregious that the U.S. Equal Employment Opportunity Commission approved Plaintiff's right to sue Defendants.

## COUNT 3 – INTENTIONAL INFLICTION OF MENTAL SUFFERING

24.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

25.

Defendant Bryant Green's malicious, willful, and wanton conduct caused Plaintiff mental anguish and suffering in the manner of, to include but not limited to, fear, anxiety, grief, feeling of distress and pain.

## FALSE IMPRISONMENT

26.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

27.

Defendant Bryant Green intentionally detained Plaintiff against her will by and through is power and control as Plaintiff's employer by demanding she enter his office, whereafter Defendant Bryant Green closed and securely locked his private door by using a "trap button" underneath his desk. Plaintiff had no way to exit Defendant Bryant Greens office at her own will.

## DAMAGES

28.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

29.

Plaintiff was physically injured and has experience physical and emotional pain and suffering, and lost wages as a direct and proximate result of the subject incident.

30. .

Plaintiff has incurred special damages no less than $15,000.00 as a direct and proximate result of the subject incident, plus additional special damages as may arise prior to trial.

31.

Plaintiff is entitled to an award of general damages from Defendants.

32.

Plaintiff is entitled to an award of special damages from Defendants.

31.

Plaintiff's injuries and damages resulting from the subject incident were directly and proximately caused by the intentional and/or negligence Defendants.

**TRIAL BY JURY DEMANDED ON ALL COUNTS.**

**WHEREFORE,** Plaintiff respectfully prays:

a)  That Summons issue requiring the above-named Defendants to answer each allegation of this Complaint within the time provided by law;

b) That Plaintiff has judgment against Defendants in such an amount to compensate Plaintiff for Plaintiff's past, present, and future injuries, and general damages resulting from subject incident and Plaintiff's special damages;

c) That Plaintiff recover the full value of past and future medical expenses and past and future lost wages in an amount to be proven at trial;

d) That Plaintiff recover for mental and physical pain and suffering and emotional distress in an amount to be determined by the enlightened conscience of the jury;

e) That all issues be tried before a jury;

f) That Plaintiff is awarded attorney's fees and expenses of litigation;

g) That all costs be cast against Defendants; and,

h) For any other relief this Honorable Court deems just and proper.


This the 19th day of March, 2023.


Respectfully submitted,

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie
Pro Se

State Court of Fulton County
**E-FILED**
23EV001656
3/20/2023 2:02 PM
Donald Talley, Clerk
Civil Division

# General Civil and Domestic Relations Case Filing Instructions

1. Provide the class of court and county in which the case is being filed.
2. Provide the plaintiff's and defendant's names.
3. Provide the plaintiff's attorney's name and State Bar number. If you are representing yourself, provide your own name and check the self-represented box.
4. Provide the primary type of case by checking only *one* appropriate box. Cases can be either general civil or domestic relations and only *one* type of primary case within those categories. Check the case type that most accurately describes the primary case. If applicable, check one sub-type under the primary case type. If you are making more than one type of claim, check the case type that involves the largest amount of damages or the one you consider most important. See below for definitions of each case type.
5. Provide an answer to the four questions by checking the appropriate boxes and/or filling in the appropriate lines.

## Case Type Definitions

### General Civil Cases

**Automobile Tort**: Any tort case involving personal injury, property damage, or wrongful death resulting from alleged negligent operation of a motor vehicle.

**Civil Appeal**: Any case disputing the finding of a limited jurisdiction trial court, department, or administrative agency.

**Contempt/Modification/Other Post-Judgment**: Any case alleging failure to comply with a previously existing court order, seeking to change the terms of a previously existing court order, or any other post-judgment activity in a general civil case.

**Contract**: Any case involving a dispute over an agreement between two or more parties.

**Garnishment**: Any case where, after a monetary judgment, a third party who has money or other property belonging to the defendant is required to turn over such money or property to the court.

**General Tort**: Any tort case that is not defined or is not attributable to one of the other types of torts listed.

**Habeas Corpus**: Any case designed to review the legality of the detention or imprisonment of an individual, but not the question of his or her guilt or innocence.

**Injunction/Mandamus/Other Writ**: Cases involving a written court order directing a specific person to perform or refrain from performing a specific act.

**Landlord/Tenant**: Any case involving a landlord/tenant dispute if the landlord removed a tenant and his or her property from the premises or placed a lien on the tenant's property to repay a debt.

**Medical Malpractice Tort**: Any tort case that alleges misconduct or negligence by a person in the medical profession acting in a professional capacity, such as doctors, nurses, physician's assistants, dentists, etc.

**Product Liability Tort**: Any tort case that alleges an injury to a person was caused by the manufacturer or seller of an article due to a defect in, or the condition of, the article sold or an alleged breach of duty to provide suitable instructions to prevent injury.

**Real Property**: Any case involving disputes over the ownership, use, boundaries, or value of land.

**Restraining Petition**: Any petition for a restraining order that does not result from a domestic altercation or is not between parties in a domestic relationship.

**Other General Civil**: Any case that does not fit into one of the other defined case categories in which a plaintiff is requesting the enforcement or protection of a right or the redress or prevention of a wrong.

### Domestic Relations Cases

**Adoption**: Cases involving a request for the establishment of a new and permanent parent-child relationship between persons not biologically parent and child.

**Contempt**: Any case alleging failure to comply with a previously existing court order. If the contempt action deals with the non-payment of child support, medical support, or alimony, also check the corresponding sub-type box.

**Dissolution/Divorce/Separate Maintenance/Alimony**: Any case involving the dissolution of a marriage or the establishment of alimony or separate maintenance.

**Family Violence Petition**: Any case in which a protective order from a family member or domestic partner is requested.

**Modification**: Any case seeking to change the terms of a previously existing court order. If the modification deals with custody, parenting time, or visitation, also check the corresponding sub-type box.

**Paternity/Legitimation**: Cases involving establishment of the identity and/or responsibilities of the father of a minor child or a determination of biological offspring.

**Support – IV-D**: Cases filed by the Georgia Department of Human Services to request maintenance of a minor child by a person who is required under Title IV-D of the Social Security Act of 1973 (42 USC §§ 651-669b) to provide such maintenance.

**Support – Private (non-IV-D)**: Cases filed to request maintenance of a parent/guardian or a minor child by a person who is required by a law other than Title IV-D of the Social Security Act of 1973 (42 USC §§ 651-669b) to provide such maintenance.

**Other Domestic Relations**: Domestic relations cases that do not adequately fit into any of the other case types, including name changes.

**Please note:** This form is for statistical purposes only. It shall have no legal effect in a case. The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or court rules. Information on this form will not be entered into evidence.

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior or** ☐ **State Court of** _____ **County**

State Court of Fulton County
**E-FILED**
23EV001656
3/20/2023 2:02 PM
Donald Talley, Clerk
Civil Division

**For Clerk Use Only**

**Date Filed** _____    **Case Number** _____
       **MM-DD-YYYY**

**Plaintiff(s)**

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

**Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|

**Plaintiff's Attorney** _____ **State Bar Number** _____ **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
   **Case Number**           **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV001656**
**3/20/2023 4:50 PM**
**Donald Talley, Clerk**
**Civil Division**

**GEORGIA, FULTON COUNTY**

DO NOT WRITE IN THIS SPACE

## STATE COURT OF FULTON COUNTY
Civil Division

CIVIL ACTION FILE #: _____

_____

_____

_____

Plaintiff's Name, Address, City, State, Zip Code

vs.

_____

_____

_____

Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [ ] ACCOUNT | PRINCIPAL $_____ |
| [ ] CONTRACT | |
| [ ] NOTE | INTEREST $_____ |
| [X] TORT | |
| [ ] PERSONAL INJURY | ATTY. FEES $_____ |
| [ ] FOREIGN JUDGMENT | |
| [ ] TROVER | COURT COST $_____ |
| [ ] SPECIAL LIEN | |

\*\*\*\*\*\*\*\*\*\*\*\*

[ X ] NEW FILING
[ ] RE-FILING:  PREVIOUS CASE NO. _____

## SUMMONS

TO THE ABOVE NAMED-DEFENDANT:

   You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: _____

Address: _____

City, State, Zip Code: _____   Phone No.:_____

An answer to this complaint, which is herewith served upon you, must be filed within thirty (30) days after service, not counting the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSES MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing or, if desired, at the e-filing public access terminal in the Self-Help Center  at 185 Central Ave., S.W., Ground Floor, Room TG300,  Atlanta, GA 30303.

Donald Talley, Chief Clerk (electronic signature)

_____

*SERVICE INFORMATION:*

 Served, this _____ day of _____, 20_____.   _____
DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:
We, the jury, find for _____

_____

This _____ day of _____, 20_____.   _____ Foreperson

**(STAPLE TO FRONT OF COMPLAINT)**

State Court of Fulton County
**E-FILED**
23EV001656
4/10/2023 10:46 AM
Donald Talley, Clerk
Civil Division

I NA

SHERIFF'S ENTRY OF SERVICE

4/6/23
@ 9:37 am

## SHERIFF'S ENTRY OF SERVICE

Civil Action No. 23EV001656

Date Filed 03/20/2023

RECEIVED

MAR 29 REC'D

Attorney's Address

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, GA 30214
Pro Se

Name and Address of Party to be Served.

Law Office of W. Bryant Green, III, P.C. c/o Willis Bryant Green, III

303 Peachtree St, N.E., Ste 4100

Atlanta, Georgia 30308

| | |
|---|---|
| Superior Court | ☑ |
| State Court | ☑ |
| Juvenile Court | |
| Magistrate Court | ☐ |
| Probate Court | ☐ |

Georgia, _____ Fulton _____ COUNTY

Shannon S. Moultrie

Plaintiff

VS.

Willis Bryant Green, III, and

Law Office of W. Bryant Green, III, P.C.      Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant_____ personally with a copy
of the within action and summons.

**NOTORIOUS**
I have this day served the defendant_____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.
☐ Delivered same into hands of_____ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and_____ inches, domiciled at the residence of
defendant.

**CORPORATION**
☐ Served the defendant_____
by leaving a copy of the within action and summons with_____ a corporation
in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the
premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail,
First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed
thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
☑ Diligent search made and defendant_____Willis Bryant Green_____
not to be found in the jurisdiction of this court. Wrong Suite Number.

This ___6___ day of ___April___, 20 23.

C. Lockwood 1433

DEPUTY

SHERIFF DOCKET          PAGE

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

I NA

4/6/23
@ 9:37 am

State Court of Fulton County
**E-FILED**
23EV001656
4/10/2023 10:46 AM
Donald Talley, Clerk
Civil Division

## SHERIFF'S ENTRY OF SERVICE

### SHERIFF'S ENTRY OF SERVICE

Civil Action No. 23EV001656

Date Filed 03/20/2023

RECEIVED
MAR 29 REC'D

Attorney's Address

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, GA 30214
Pro Se

Name and Address of Party to be Served.

Law Office of W. Bryant Green, III, P.C. c/o Willis Bryant Green, III

303 Peachtree St, N.E., Ste 4100

Atlanta, Georgia 30308

Superior Court ☑
State Court ☑
Juvenile Court
Magistrate Court ☐
Probate Court ☐

Georgia, _____ Fulton _____ COUNTY

Shannon S. Moultrie

_____ Plaintiff

VS.

Willis Bryant Green, III, and

Law Office of W. Bryant Green, III, P.C. _____ Defendant

_____ Garnishee

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant_____
of the within action and summons. _____ personally with a copy

**NOTORIOUS** I have this day served the defendant_____
copy of the action and summons at his most notorious place of abode in this County. _____ by leaving a
☐ Delivered same into hands of_____ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and_____ inches, domiciled at the residence of
defendant.

**CORPORATION** Served the defendant_____
☐ by leaving a copy of the within action and summons with _____ a corporation
in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL** I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the
premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail,
First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed
thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant_____ Willis Bryant Green_____
not to be found in the jurisdiction of this court. Wrong suite number.

This_____ 6_____ day of_____ April_____, 20 23 .

C. Larwood 1433

_____ DEPUTY

SHERIFF DOCKET          PAGE

WHITE-CLERK     CANARY-PLAINTIFF     PINK-DEFENDANT

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV001656**
**4/12/2023 8:04 AM**
**Donald Talley  Clerk**
**Civil Division**

# STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, GA 30214
Pro se

**Attorney or Plaintiff Name and Address**

RECEIVED
MAR 29 REC'D

Shannon S. Moultrie

vs.

Law office of W. Bryant Green III
c/o Willis Bryant Green, III
303 Peachtree St. N.E. Ste 4100
Atlanta GA 30308

540 Cornwallis Way
Fayetteville GA 30214

**Name and Address of PLAINTIFF**

**Name and Address of DEFENDANT**

## MARSHAL'S ENTRY OF SERVICE

**PERSONAL**

GEORGIA, FULTON COUNTY

I have this day served the defendant(s) _____

_____ personally with a copy of the within action and summons.

This _____ day of _____, _____

**DEPUTY MARSHAL**

**NOTORIOUS**

GEORGIA, FULTON COUNTY

I have this day served the defendant(s) _____

By leaving a copy of the action and summons at his/their most notorious place of abode in said County.

Delivered same in hands of _____, a _____

_____ described as follows:

Age, about _____ years; weight, about _____ lbs; height, about _____ ft. _____ in.,

Domiciled at the residence of the defendant(s).

This _____ day of _____, _____

**DEPUTY MARSHAL**

**CORPORATION**

GEORGIA, FULTON COUNTY

Served the defendant _Law Office of W Bryan Green_____, a corporation, by leaving a copy

of the within action and summons with _Doniella / Acosta (recephonist)_ in charge of the office and doing

business of said corporation, in Fulton County, Georgia.

This _11_ day of _April_ _2023_.  _[signature]_ 462

**DEPUTY MARSHAL**

**BETTER ADDRESS**

GEORGIA, FULTON COUNTY

Diligent search made and the defendant(s):

_____

Not to be found in the jurisdiction of said Court for the following reason:

_____

**NON-EST**

Please furnish this office with a new service form with the correct address.

This _____ day of _____, _____

**DEPUTY MARSHAL**

1 copy for court's records + 1 copy to be returned to Plaintiff after service attempted

State Court of Fulton County
**E-FILED**
23EV001656
4/28/2023 3:31 PM
Donald Talley, Clerk
Civil Division

# IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

**SHANNON MOULTRIE,**
Petitioner

Vs

**CIVIL ACTION NO: 23EV001656**

**WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.**
Respondent(s)

## AFFIDAVIT OF SERVICE

PERSONALLY appeared before me, **ZURI M. LAWSON**, the undersigned officer duly authorized to administer oaths, first being duly sworn, under oath deposes and states that he/she is a citizen of the United States and 18 years of age or older and is a party having no interest in the above-styled case. If required by statute. Affiant is appointed as process server by this Court by attached Order incorporated herein by reference.

**Serve: Willis Bryant Green, III**
**Service Address:  6148 Traveler Court, Stone Mountain, Ga. 30087**

Affiant further states that on **26th day of April, 2023 at 8:52 PM**, he/she served **Willis B. Green, III, personally,** at the address **6148 Traveler Court, Stone Mountain, Ga. 30087 (Dekalb)** with the following documents: **PLAINTIFF'S ORIGINAL COMPLAINT FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, INTENTIONAL INFLICTION OF MENTAL SUFFERING, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND FALSE IMPRISONMENT; SUMMONS; PLAINTIFF'S FIRST CONTINUING INTERROGATORIES TO DEFENDANT WILLIS BRYANT GREEN, III; PLAINTIFF'S FIRST CONTINUING INTERROGATORIES TO DEFENDANT LAW OFFICE OF W. BRYANT GREEN, III, P.C.; GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM; PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT WILLIS BRYANT GREEN, III; PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT W. BRYANT GREEN, III, P.C.; PLAINTIFF'S FIRST CONTINUING REQUEST FOR PRODUCTION OF DOCUMENTS AND NOTICE TO PRODUCE TO DEFENDANT WILLIS BRYANT GREEN, III; and PLAINTIFF'S FIRST CONTINUING REQUEST FOR PRODUCTION OF DOCUMENTS AND NOTICE TO PRODUCE TO DEFENDANT LAW OFFICE OF W. BRYANT GREEN, III, P.C.**

Description: Male, Caucasian, Hair: Black/White, Height: 5'6, Weight: 180, Approx Age: 50-55 yrs.

Dated April 28, 2023

Zuri M. Lawson, CPS225
GA Certified Process Server
Adia Management, LLC
404-247-4194

Sworn to and subscribed before me
this 28th day of April, 2023.

_____
Notary Public

**ALEX C BAUR**
NOTARY PUBLIC
Cherokee County
State of Georgia
My Comm. Expires Sept. 3, 2024

State Court of Fulton County
**E-FILED**
23EV001656
5/11/2023 5:29 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

|  |  |
|---|---|
| **SHANNON S. MOULTRIE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 23EV001656** |
| **WILLIS BRYANT GREEN, III and LAW OFFICE OF W. BRYANT GREEN, III, P.C.,** | |
| **Defendants.** | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 11, 2023, I served the foregoing ***DEFENDANT LAW OFFICE OF W. BRYANT GREEN, III, P.C.'S RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS*** upon *pro se* Plaintiff via e-mail and United States mail (first-class postage prepaid), addressed as follows:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

<div align="center">

<u>*s/ Darrick L. McDuffie*</u>
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

</div>

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

<div align="center">

**Counsel for Defendants**

</div>

9539254v1

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV001656**
**5/11/2023 5:24 PM**
**Donald Talley, Clerk**
**Civil Division**

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

**SHANNON S. MOULTRIE,**

        **Plaintiff,**

   **v.**

**WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,**

        **Defendants.**

**Civil Action No. 23EV001656**

### DEFENDANT WILLIS BRYANT GREEN, III'S RESPONSE TO
### PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS

Defendant Willis Bryant Green, III. ("Defendant" or "Green"), by and through undesigned counsel, hereby responds to Plaintiff Shannon S. Moultrie's ("Plaintiff") First Requests for Admissions as follows:

### GENERAL OBJECTIONS

A.      Defendant objects to Plaintiff's Requests for Admissions to the extent the requests exceed the bounds permitted by the Georgia Civil Practice Act.

B.      Defendant objects to each separate Request for Admission propounded by Plaintiff to the extent it seeks information or production of documents covered by the attorney-client privilege and/or immune from disclosure pursuant to the work product doctrine, on the grounds that said information are beyond the scope of discovery authorized by law.

C.      The following responses represent the best information ascertained by Defendant and are based upon information obtained from records, files and individuals within its possession, custody, control or employ.  Defendant reserves the right at any time to revise, correct, add to or clarify any of the responses provided herein.

9538824v1

State Court of Fulton County
**E-FILED**
23EV001656
5/11/2023 4:57 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

SHANNON S. MOULTRIE,

              Plaintiff,

    v.

WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,

              Defendants.

Civil Action No. 23EV001656

## DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

COME NOW, Defendants Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. ("Law Firm") (collectively "Defendants"), and hereby file this, their Answer and Defenses to Plaintiff Shannon Moultrie's ("Plaintiff") Original Complaint For Negligent Infliction of Emotional Distress, Intentional Infliction of Mental Suffering, Intentional Infliction of Emotional Distress, and False Imprisonment ("Complaint"), showing this Honorable Court as follows.

As to the allegations contained in the introductory Paragraph, Defendants admit Plaintiff has filed this Complaint, but deny any violation of any law, rule, or regulation, and deny any allegations or inferences of wrongdoing or illegality. Answering the numbered and unnumbered allegations contained in the Complaint, Defendants state as follows:

## PARTIES AND JURISDICTION

1.

Upon information and belief, Defendants admit the allegations contained in Paragraph 1 of the Complaint.

9541758v1

2.

In response to Paragraph 2, Defendants admit only that Green is a Georgia resident. Defendants deny the remaining allegations contained in Paragraph 2.

3.

In response to Paragraph 3, Defendants admit the Law Firm's principal office address is 303 Peachtree Street NE, Suite 4100, Atlanta, Georgia 30308, that the registered agent for the Law Firm as listed on the Georgia Secretary of State's website is Willis Bryant Green, III, and the registered agent's address as listed on the Georgia Secretary of State's website is 4070 Bowie Court, Clarkston, Georgia 30021. Defendants deny the remaining allegations contained in Paragraph 3.

**FACTS**

4.

In response to Paragraph 4 of the Complaint, Defendants admit only that Plaintiff was employed by the Law Firm on or about November 1, 2022, and that, on or around November 1, 2022, Plaintiff met with Green and another employee at the Law Firm to discuss work-related matters and Plaintiff training by the other employee. Defendants deny all other allegations and/or implications contained in Paragraph 4.

5.

In response to Paragraph 5 of the Complaint,  Defendants admit only that on or around November 1, 2022, while Green was meeting with Plaintiff and the employee who was to be trained by Plaintiff, Green opened the door and the other employee exited, and then Green closed the electronic door using one of the buttons which opens and closes the office door. Defendants deny the allegations contained in Paragraph 5 of the Complaint.

9541758v1

6.  [1]

7.

Defendants deny the allegations contained in Paragraph 7 of the Complaint.

8.

Defendants deny the allegations contained in Paragraph 8 of the Complaint.

9.

In response to Paragraph 9 of the Complaint, Defendants specifically deny that Plaintiff had a "supervisor" during her employment at the Law Office. Defendants deny the remaining allegations contained in Paragraph 9 of the Complaint.

10.

In response to the first two sentences in Paragraph 10, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein. Defendants deny the remaining allegations and/or implications contained in Paragraph 10 of the Complaint.  Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.

## <u>COUNT 1 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

11.

In response to Paragraph 11, Defendants incorporate by reference their responses and denials to the preceding paragraphs as if fully restated herein.

12.

Defendants deny the allegations contained in Paragraph 12 of the Complaint.

---

[1] Plaintiff's Compliant includes a blank Paragraph 6, but this Paragraph contains no substantive allegations.

13.

Defendants deny the allegations contained in Paragraph 13 of the Complaint.

14.

Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.

Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.

Defendants deny the allegations contained in Paragraph 16 of the Complaint.

17.

Paragraph 17 consists of a legal conclusion or argument requiring neither admission nor denial. Even so, Defendants deny any and all remaining allegations and/or implications contained in Paragraph 17. Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.

## COUNT 2 – INTENTIONAL INFLICTION OF EMOTION DISTRESS

18.

In response to Paragraph 18, Defendants incorporate by reference their responses and denials to the preceding paragraphs as if fully restated herein.

19.

Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.

Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21.

Defendants deny the allegations contained in Paragraph 21 of the Complaint.

9541758v1

22.

Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23.

In response to Paragraph 23, Defendants admit only that the U.S. Equal Employment Opportunity Commission issued Plaintiff a "Notice of Right to Sue *(Issued on Request)*" as to Charge No. 410-2023-02699. Defendants deny any remaining allegations, including any allegations and/or implications that Defendants violated any laws or that Plaintiff is entitled to any of the relief that she seeks.

## COUNT 3 – INTENTIONAL INFLICTION OF MENTAL SUFFERING

24.

In response to Paragraph 24, Defendants incorporate by reference their responses and denials to the preceding paragraphs as if fully restated herein.

25.

Defendants deny the allegations contained in Paragraph 25 of the Complaint.  Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.

## FALSE IMPRISONMENT

26.

In response to Paragraph 26, Defendants incorporate by reference their responses and denials to the preceding paragraphs as if fully restated herein.

27.

Defendants deny the allegations contained in Paragraph 27 of the Complaint.

9541758v1

## **DAMAGES**

28.

In response to Paragraph 28, Defendants incorporate by reference their responses and denials to the preceding paragraphs as if fully restated herein.

29.

Defendants deny the allegations contained in Paragraph 29 of the Complaint. Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.

30.

Defendants deny the allegations contained in Paragraph 30 of the Complaint. Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.

31.

Defendants deny the allegations contained in Paragraph 31 of the Complaint. Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.

32.

Defendants deny the allegations contained in Paragraph 32 of the Complaint. Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.

31.

Defendants deny the allegations contained in Paragraph 31 of the Complaint. Defendants specifically deny they violated any law, rule, or regulation, and deny that Plaintiff is entitled to any relief or recovery from Defendants in this action.[2]

In response to the allegation "Trial by Jury Demanded on All Counts", Defendants admit only that the Complaint contains a Jury Demand.  Defendants deny any allegation that Plaintiff is entitled to any recovery, entitled to the relief prayed for, or to any other relief. Defendants deny any and all allegations which may be contained in the Complaint except such allegations that are specifically admitted in their responses set forth above.  Defendants further deny any inferences or implications of wrongdoing.

In response to the allegations contained following the "WHEREFORE" clause, including subparts (a) through (h), Defendant denies any and all allegations which may be contained in Plaintiff's request for relief and further denies that Plaintiff is entitled to the relief prayed for, or to any other relief.

Defendants use the headings listed by Plaintiff in the Complaint for ease of reference only. By use of these headings, Defendants in no way admit or imply that they agree with the cause of action asserted, and in fact, specifically deny that the cause of action is appropriate or viable.

Any Complaint allegations not expressly admitted herein are hereby denied in their entirety.

## **FIRST DEFENSE**

Plaintiff fails to state a claim upon which relief can be granted under Georgia law.

---

[2]     Defendants' Answer follows the numbering in Plaintiff's Complaint, which contains duplicative paragraphs numbered 31.

9541758v1

## SECOND DEFENSE

Defendants acted in good faith and consistent with business judgment, and their actions were neither extreme and outrageous, reckless, willful, nor wanton.

## THIRD DEFENSE

Defendants' actions or inactions were not the direct and proximate cause of Plaintiff's alleged damages.

## FOURTH DEFENSE

Plaintiff's claims are barred to the extent that Defendants have not violated any legal duty owed to Plaintiff.

## FIFTH DEFENSE

Plaintiff's claims for damages are barred in whole or in part to the extent that she has failed to exercise reasonable diligence to mitigate her damages.

## SIXTH DEFENSE

Plaintiff is not entitled to recovery for any alleged damages from Defendants because they are excessive and unreasonable.

## SEVENTH DEFENSE

Plaintiff is precluded from recovery in this case by her own actions or inactions.

## EIGHTH DEFENSE

Plaintiff's claims are barred because Plaintiff's damages are speculative or non-existent.

## NINTH DEFENSE

Defendants assert the defense, to the extent applicable, of justification.

## TENTH DEFENSE

Defendants assert the defense of privilege.

9541758v1

## ELEVENTH DEFENSE

To the extent applicable, Plaintiff's claims are barred by the applicable statute of limitations.

## RESERVATION OF RIGHTS

Defendants reserve the right to amend this Answer or assert additional defenses as Plaintiff's claims are investigated in the course of this litigation.

WHEREFORE, Defendants respectfully pray of this Honorable Court as follows:

(a)    That the Court dismiss the Complaint with prejudice, charging all costs against Plaintiff;

(b)    That judgment be entered against Plaintiff and in favor of Defendants;

(c)    That Defendants be awarded their costs, attorneys' fees and expenses in defending the Complaint; and

(d)    That this Court award such other and further relief to Defendants as is just, proper and equitable under the circumstances.

Respectfully submitted, this 11th day of May, 2023.

<div style="margin-left: 45%;">

_s/ Darrick L. McDuffie_
Darrick L. McDuffie
Georgia Bar No. 490248
_dmcduffie@constangy.com_
Sarah M. Phaff
GA Bar No. 140626
_sphaff@constangy.com_

</div>

**CONSTANGY, BROOKS, SMITH**
**& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

<div style="margin-left: 45%;">

**Counsel for Defendants**

</div>

9541758v1

**IN THE STATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

**SHANNON S. MOULTRIE,**

      **Plaintiff,**

    **v.**

**WILLIS BRYANT GREEN, III and**
**LAW OFFICE OF W. BRYANT**
**GREEN, III, P.C.,**

      **Defendants.**

**Civil Action No. 23EV001656**

## CERTIFICATE OF SERVICE

    I certify that on May 11, 2023, I served the foregoing ***DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT*** upon *pro se* Plaintiff via e-mail and United States mail (first-class postage prepaid), addressed as follows:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

                *s/ Darrick L. McDuffie*
                Darrick L. McDuffie
                Georgia Bar No. 490248
                *dmcduffie@constangy.com*
                Sarah M. Phaff
                GA Bar No. 140626
                *sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH**
**& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

                **Counsel for Defendants**

9541758v1

State Court of Fulton County
**E-FILED**
23EV001656
5/11/2023 5:01 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| SHANNON S. MOULTRIE, | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 23EV001656 |
| WILLIS BRYANT GREEN, III and LAW OFFICE OF W. BRYANT GREEN, III, P.C., | |
| **Defendants.** | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COME NOW Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. ("Law Office") (hereafter collectively referred to as "Defendants"), pursuant to O.C.G.A. § 9-11-12(b)(6), file this Motion to Dismiss (the "Motion") Shannon S. Moultrie's ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted.

For the reasons set forth more fully in their Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint, Defendants respectfully request that all Counts in Plaintiff's Complaint be dismissed in their entirety. In support of the Motion, Defendants rely upon their Memorandum, filed contemporaneously herewith, and all pleadings of record.

Respectfully submitted, this 11th day of May, 2023.

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400

Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2023, I served the foregoing *MOTION TO DISMISS PLANTIFF'S COMPLAINT* upon *pro se* Plaintiff via U.S. Mail, first-class postage prepaid, addressed as follows and via email delivery:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

State Court of Fulton County
**E-FILED**
23EV001656
5/11/2023 5:07 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| SHANNON S. MOULTRIE, | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 23EV001656 |
| WILLIS BRYANT GREEN, III and LAW OFFICE OF W. BRYANT GREEN, III, P.C., | |
| **Defendants.** | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COME NOW Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. (the "Law Office") (hereafter collectively referred to as "Defendants"), by and through counsel, and file this Memorandum of Law in Support of their Motion to Dismiss Shannon Moultrie's ("Plaintiff") Complaint[1] pursuant to O.C.G.A. § 9-11-12(b)(6) for failure to state a claim upon which relief can be granted. Defendants move to dismiss Plaintiff's Complaint in its entirety, and state as follows:

## I.    INTRODUCTION AND FACTUAL SUMMARY

In her Complaint, Plaintiff asserts the following claims against Defendants: Negligent Infliction of Emotional Distress (Compl. ¶¶ 11-17 (Count I)); Intentional Infliction of Emotional Distress (*Id.* at ¶¶ 18-23 (Count II)); Intentional Infliction of Mental Suffering (*Id.* at ¶¶ 24-25 (Count III)); and False Imprisonment (*Id.* at ¶¶ 26-27 (Count IV)). Defendants are moving for dismissal of each of these claims for the reasons discussed below.

---

[1] The Complaint in this matter was filed on March 20, 2023.

1

9557949v1

Plaintiff's Complaint centers around a single incident which she alleges occurred in November 2022 while she was employed by the Law Office. (Compl., ¶ 4.) Plaintiff contends that she and another employee were called into Green's office at the Law Office to discuss a work matter. (*Id.*) According to Plaintiff, after Green dismissed the other employee from the meeting, Green asked Plaintiff to remain seated. (*Id.*) Plaintiff alleges that Green then pressed a button located underneath his desk to lock his office door and "verbally attack[ed]" her by allegedly accusing her of being "part of [a] black [J]ew militia group that is speaking out against white jews on television!" (*Id.* at ¶ *5.*) Plaintiff further alleges that, after the conclusion of this conversation, she "asked several times if she can be excused," and Green "pushed the button" so that Plaintiff could leave. (*Id.* at ¶ 8.) Plaintiff alleges that, as she was leaving the office, Green made a singular "demean[ing]" and "harass[ing]" comment to her. (*Id.*) Plaintiff contends that as a result of this incident, she suffered "stress, fear, anxiety, sleep deprivation and physical pain." (*Id.* at ¶ 10.) On its face, Plaintiff's own description of the events at issue makes it abundantly clear that Plaintiff cannot maintain any of her causes of action against Defendants, as Defendants did nothing unlawful, even assuming everything she alleges in fact happened.[2]

As explained more fully below, Plaintiff's allegations fail to state a claim and are woefully deficient. Thus, Defendants' Motion to Dismiss should be granted, and Counts I, II, III,[3] and IV should be dismissed with prejudice.

---

[2] To be clear, Defendants deny Plaintiff's allegations, but Defendants are only assuming they are true solely for purposes of this motion to dismiss.

[3] Plaintiff's claim for "Intentional Infliction of Mental Suffering" (Count III) must be dismissed because it is not recognized under Georgia law, and is duplicative of the elements of Plaintiff's other claims. *See Reid v. Waste Indus. USA, Inc.*, 345 Ga. App. 236, 244, 812 S.E.2d 582, 590 (2018) (stating that the third element of a negligent infliction of emotional distress claim is "the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress"); *see also Johnson v. Allen*, 613 S.E.2d 657, 663, 272 Ga. App. 861, 869 (2005) ("The plaintiffs'

2

## II.   <u>STANDARD FOR DISMISSAL</u>

Pursuant to O.C.G.A., 9-11-12(b)(6), a court should grant a motion to dismiss when a plaintiff "would not be entitled to relief under any state of facts that could be proven in support of his claim." *Northeast Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 297 Ga. App. 28, 29, 676 S.E.2d 428, 430 (2009) (quoting *Walker Cty. v. Tri-State Crematory*, 284 Ga. App. 34, 35, 643 S.E.2d 324, 325 (2007)). In ruling on such a motion, the Court must accept all "well-[pled] material allegations in the Complaint and [resolve] any doubts in favor of the plaintiff." *Parnell v. Sherman & Hemstreet*, Inc., 364 Ga. App. 205, 213–14, 874 S.E.2d 394, 401 (2022). However, the Court is under no obligation to "adopt a party's legal conclusions based on these facts." *Id*. Taking Plaintiff's factual allegations as true[4], her claims must be dismissed.

## III.   <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A.   **Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.**

Under Georgia law, in the absence of pecuniary loss,[5] three elements are necessary to establish a claim for negligent infliction of emotional distress: "(1) a physical impact to the

---

premises liability prayers for mental anguish against Atlas amount to claims for the negligent infliction of emotional distress, which does not conform to the facts herein."). As a result, this memorandum will focus on the dismissal of the cognizable claims in Plaintiff's Complaint, Counts I, II, and IV. *See Common Cause/Georgia v. Campbell*, 268 Ga. App. 599, 602, 602 S.E.2d 333, 336–37  (2004) (affirming trial court's dismissal of plaintiff's complaint for failing to state a legally cognizable claim); *Abramyan v. State*, 301 Ga. 308, 308, 800 S.E.2d 366, 367 (2017) (same).

[4] Defendants have contemporaneously filed an Answer responding to the allegations in the Complaint.

[5] Plaintiff alleges that she suffered extreme "stress, fear, anxiety, sleep deprivation", pain "on the right side of her body" and "in her right shoulder, neck and arms" as well as "numbness on the right side of her face", and due to her high stress and anxiety levels is "suffering from hypertension." (Compl. ¶ 10.) She further alleges that "[d]ue to [her] symptoms and medical results, [she] was prescribed immediate time off work and to see a phycologist [sic]." (*Id*.) These allegations fail to justify a pecuniary injury as Georgia courts have held that medical expenses, psychological treatment fees, and lost income incurred as a result of emotional distress do not

3

plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury

to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Reid*, 345 Ga. App. at

244, 812 S.E.2d at 590 (citing *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 797 S.E.2d 828 (2017)). Under

Georgia law, the "impact rule" specifically applies to claims for negligent infliction of emotional

distress. *McConnell v. Dept. of Lab.*, 345 Ga. App. 669, 674 (1) (b), 814 S.E.2d 790 (2018). Indeed,

Georgia courts have consistently dismissed negligent infliction of emotional distress claims where

no physical impact was found. *See Coon*, 300 Ga. 722, 797 S.E.2d 828 (affirming summary

judgment on plaintiff's negligent infliction of emotional distress claim where plaintiff sought to

recover damages after a hospital mishandled the remains of her stillborn baby because she did not

suffer a physical impact that resulted in physical injury); *Hang v. Wages & Sons Funeral Home,

Inc.*, 262 Ga. App. 177, 179–82, 585 S.E.2d 118, 120 (2003) (affirming summary judgment on a

negligent infliction of emotional distress claim which involved the premature cremation of a family

member's body before his viewing and funeral). "On the other hand, where the [defendant's]

conduct is malicious, willful, or wanton, recovery can be had without the necessity of an impact."

*Hang*, 262 Ga. App. at 179-180, 585 S.E.2d at 120.

Plaintiff has not alleged any facts supporting a conclusion she suffered a physical impact.

Although Plaintiff alleges that she was "[s]tressed and full of anxiety", "that she began

experiencing pain on the right side of her body that rendered it difficult to get out of bed," and

generally alleges that she "sustained a physical impact due to [Green's] negligence," she does not

allege specific facts showing that she sustained a physical impact or that Green even physically

---

qualify as a pecuniary loss. *See Mayorga v. Benton*, 364 Ga. App. 665, 678, 875 S.E.2d 908, 918
(2022); *see also Eley v. Fedee*, 362 Ga. App. 618, 623, 869 S.E.2d 566, 571 (2022), cert. denied
(Oct. 25, 2022); *Grizzle v. Norsworthy*, 292 Ga. App. 303, 306 (2), 664 S.E.2d 296 (2008).

touched Plaintiff. (Compl. at ¶¶ 4-10, 13.) Thus, her Complaint should be dismissed. *See Parnell*, 364 Ga. App. at 213–14, 874 S.E.2d at 401; *Bailey v. Experian Info. Sols., Inc.*, No. 1:16-CV-789-MHC-JCF, 2016 WL 9558951, at *7 (N.D. Ga. Dec. 9, 2016) (recommending dismissal of plaintiff's negligent infliction of emotional distress claim where he "provided no allegations of any such physical impact causing emotional distress."). Similarly, Plaintiff alleges that she began to cry when she returned to her car after the meeting and after leaving the Law Office (Compl. ¶ 9); again, however, she fails to allege that she suffered physical impact. Thus, Plaintiff's Complaint is utterly devoid of any factual allegations to support a negligent infliction of emotional distress cause of action.

Nor does Plaintiff allege facts sufficient to support a conclusion that Defendants' conduct was malicious, willful, or wanton. Plaintiff alleges that, after the incident about which she complains, she spoke with her supervisor, who informed her that he knew what Green was going "to do" to Plaintiff. (Compl. ¶ 9.) She alleges that Green "no longer wanted black [J]ews in his office", and when Plaintiff's supervisor challenged Green on his claim, he replied "I don't care." *(Id.)* These allegations are insufficient to show malicious, willful, or wanton behavior. "Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent" *Phillips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 76–77, 699 S.E.2d 58, 61 (2010). Nothing about Plaintiff's allegations even comes close to supporting an inference that Green intended to "do harm or inflict injury" upon Plaintiff. *Id*. Without actual facts, Plaintiff's conclusory allegation that Green's behavior was malicious, willful, and wanton (Compl. ¶ 25) falls woefully short of adequately asserting a claim for negligent infliction of emotional distress.

*Parnell*, 364 Ga. App. at 213–14, 874 S.E.2d at 401. Accordingly, Plaintiff's claim for negligent infliction of emotional distress fails to state a claim upon which relief may be granted.

**B.      Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.**

To establish a claim for intentional infliction of emotional distress a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Mayorga*, 364 Ga. App. at 670, 875 S.E.2d at 913 (citing *Racette v. Bank of Am.*, 318 Ga. App. 171, 179 (3), 733 S.E.2d 457 (2012)). The standard for an intentional infliction of emotional distress claim is "very high," and the burden of the Plaintiff is a "stringent one." *Bowens v. Sodexo, Inc.*, No. 1:18-CV-4650-CAP-JSA, 2019 WL 13268194, at *12 (N.D. Ga. Feb. 14, 2019) (noting that the law only intervenes "where the distress inflicted is so severe that no reasonable person could be expected to endure it."). The question of whether conduct meets the threshold of extreme or outrageous is a question of law for the Court, and "[l]iability for IIED has been found in Georgia only when a defendant's conduct ... is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Underwood v. Apple Inc.*, CV 120-136, 2022 WL 193725, at *4 (S.D. Ga. Jan. 20, 2022) (internal citations and quotations omitted). Plaintiff's Complaint fails to state a claim for intentional infliction of emotional distress.

Plaintiff alleges that Green "verbally attack[ed]" her by making the following statements in an aggressive manner during a single incident: "I believe you are a part of the black [J]ew militia group that is speaking out against white [J]ews on television!"; "I believe you hate white people. Your people think you are the original [J]ews, and you think you are better than my people."; and "I think you hate white [J]ews, but I love looking at your butt when you walk away." (Compl. ¶¶

6

5, 8.) These allegations are insufficient to sufficiently plead that Green's conduct was extreme and outrageous. It has been long-settled under Georgia law that extreme and outrageous conduct is behavior "so extreme in degree… beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mayorga*, 364 Ga. App. at 670, 875 S.E.2d at 913. Extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." *Ghodrati v. Stearnes*, 314 Ga. App. 321, 323, 723 S.E.2d 721, 723 (2012) (citation omitted.); *Wilcher v. Confederate Packaging*, 287 Ga.App. 451, 454(2), 651 S.E.2d 790 (2007); *Lockhart v. Marine Mfg. Corp.*, 281 Ga. App. 145, 147, 635 S.E.2d 405, 407 (2006) ("Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life."). Rather, the conduct must "rise to the requisite level of egregious or outrageous behavior which justifiably results in that severe fright, humiliation, embarrassment, or outrage which no reasonable person is expected to endure." *Lockhart*, 281 Ga. App. at 147, 635 S.E.2d at 407.

When analyzed under clear Georgia law, Plaintiff's allegations do not meet this stringent burden. First, Plaintiff only alleges that Green verbally attacked her on one individual instance on one single day. (Compl. ¶¶ 4-9); *See Jarrard v. United Parcel Serv., Inc.*, 242 Ga. App. 58, 62, 529 S.E.2d 144, 149 (2000) (finding that a single "brutal" employee evaluation cannot rise to the outrageous level); *Metro. Atlanta Rapid Transit Auth. v. Mosley*, 280 Ga. App. 486, 491, 634 S.E.2d 466, 470 (2006) (holding that one isolated incident did not approach the degree of reprehensibility required for an intentional infliction of emotional distress claim).

Second, the comments (including allegedly racial remarks) allegedly made by Green fall within the category of mere insults and do not rise to the stringent level for an IIED claim. (Compl. ¶¶ 5, 8); *See Cook v. Covington Credit of Georgia, Inc.*, 290 Ga. App. 825, 828, 660 S.E.2d 855,

7

9557949v1

858 (2008) (acknowledging that although Carter's use of a racial epithet to insult Cook during their confrontation was "demeaning, degrading, and insensitive, such conduct did not constitute egregious or outrageous behavior so as to sustain a claim for intentional infliction of emotional distress"); *Lockhart*, 281 Ga. App. at 148, 635 S.E.2d at 407-408 (holding that use of "racially-laden, rude, and insensitive" comments were not "'egregious or outrageous behavior' so as to sustain a claim for intentional infliction of emotional distress"); *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 232-233, 718 S.E.2d 88, 91 (2011) ("Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it.") (citations and quotations omitted).[6]

For all of these reasons, the Complaint lacks sufficient factual allegations to assert a claim for intentional infliction of emotional distress.

### C.    Plaintiff Fails to State a Claim for False Imprisonment.

Under Georgia law, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." *Ferrell v. Mikula*, 295 Ga. App. 326, 329, 672 S.E.2d 7, 10 (2008) (quoting O.C.G.A. § 51–7–20). The essential elements for false imprisonment are "a detention of the person of another for any length

---

[6] Nor is there any basis to hold the Law Office liable as Plaintiff's employer. *See Ahmed v. Air France-KLM*, 165 F. Supp. 3d 1302, 1310 (N.D. Ga. 2016) ("Georgia courts will hold an employer responsible for the conduct of its employee if the employee acted in the course of the employer's business and with a desire to benefit the employer."); *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752 (1996) ( Because these torts are personal in nature, they fall outside the scope of employment.); *see also* O.C.G.A. § 51-2-2 (codifying Georgia doctrine of respondeat superior); *Mangrum v. Republic Inds., Inc.*, 260 F. Supp. 2d 1229, 1254–55 (N.D. Ga. 2003).

9557949v1

of time, and the unlawfulness of that detention." *Smith v. Wal-Mart Stores E., LP*, 330 Ga. App.
340, 343, 765 S.E.2d 518, 521-522 (2014) (citations omitted). "A detention need not consist of
physical restraint, but may arise out of words, acts, gestures, or the like, which induce a reasonable
apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate
upon the will of the person threatened, and result in a reasonable fear of personal difficulty or
personal injuries." *Id*. (quoting *Fields v. Kroger Co.*, 202 Ga. App. 475, 414 S.E.2d 703 (1992)).
The allegations in the Complaint do not come close to asserting a viable claim for false
imprisonment.

Plaintiff's false imprisonment claim fails because the Complaint is utterly devoid of any
allegations that Plaintiff reasonably feared Green would use force if Plaintiff did not comply.
Plaintiff alleges that after another employee was dismissed from Green's office, he "reached under
his desk and pushed a button that close[d] and lock[ed] the door to his office." (Compl. ¶ 5.)
Plaintiff further alleges that Green then began to "verbally attack" her while she was "forced to
stay … and couldn't leave on her own volition" because Green was in a position of "power and
control as Plaintiff's employer". (*Id*. at ¶¶ 5, 27.) Plaintiff contends that "the only way in and out
… was to engage the button under his desk, and [Green] was sitting in front of it", and it was not
until "Plaintiff asked several times if she can be excused, [when] Green finally pushed the button
underneath his desk so that Plaintiff could leave." (*Id*. at ¶¶ 5, 8.) Nowhere in her Complaint does
Plaintiff allege that she had a reasonable apprehension that force would be used if she failed to
remain in Green's office. In fact, Plaintiff explicitly alleges that Green's status as her employer,
not any fear he would use force against her, was the reason for her alleged unlawful detention. (*Id*.
at ¶ 27); *see Hill v. Macrina*, No. 1:16-CV-16-RWS, 2017 WL 5203053, at *5 (N.D. Ga. June 26,
2017) (holding that the employees' false imprisonment claim must fail because they had no

9

reasonable fear that force would be used to keep them from leaving). To the extent that Plaintiff is alleging that she feared for her employment, such an assertion cannot support a claim for false imprisonment. *See Shannon v. Off. Max N. Am., Inc.*, 291 Ga. App. 834, 835–36, 662 S.E.2d 885, 888 (2008) (holding that the threat of being terminated from at-will employment cannot constitute the basis of a false imprisonment claim); *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 161, 561 S.E.2d 483, 489 (2002) (same). Accordingly, Plaintiff's claim must fail.

For all of these reasons, Defendants move this court to dismiss all of Plaintiff's claims with prejudice.

## IV.    **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety, with prejudice; that a judgment be entered in favor of Defendants; and that Plaintiff be required to pay Defendants' attorneys' fees incurred in defending against this frivolous lawsuit.

Respectfully submitted, this 11th day of May, 2023.

> *s/ Darrick L. McDuffie*
> Darrick L. McDuffie
> Georgia Bar No. 490248
> *dmcduffie@constangy.com*
> Sarah M. Phaff
> GA Bar No. 140626
> *sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2023, I served the foregoing *DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLANTIFF'S
COMPLAINT* upon *pro se* Plaintiff via U.S. Mail, first-class postage prepaid, addressed as follows
and via email delivery:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

<u>*s/ Darrick L. McDuffie*</u>
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

<div align="center">

11

</div>

State Court of Fulton County
**E-FILED**
23EV001656
5/15/2023 12:51 PM
Donald Talley, Clerk
Civil Division

# IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

**SHANNON S. MOULTRIE,**

**Plaintiff,**

**v.**

**WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,**

**Defendants.**

Civil Action No. 23EV001656

## ENTRY OF APPEARANCE

COMES NOW Sarah M. Phaff and hereby requests that the Court enter her appearance as additional counsel for Defendants Willis Bryant Green, III and Law Office of W. Bryant Green, III, P.C. ("Defendants") in the above-referenced matter, and request that copies of all communications, filings, and orders in this matter also be directed to the undersigned.

This the 15th day of May, 2023.

/s/ Sarah M. Phaff
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

9584770v1

**IN THE STATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

SHANNON S. MOULTRIE,

          Plaintiff,

    v.                                         Civil Action No. 23EV001656

WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,

        Defendants.

## CERTIFICATE OF SERVICE

    I certify that on May 15, 2023, I served the foregoing ***ENTRY OF APPEARANCE*** upon *pro se* Plaintiff via e-mail and United States mail (first-class postage prepaid), addressed as follows:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

                   */s/ Sarah M. Phaff*
                   Sarah M. Phaff
                   GA Bar No. 140626
                   *sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

                   **Counsel for Defendants**

9584770v1

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV001656**
**6/7/2023 8:57 PM**
**Donald Talley, Clerk**
**Civil Division**

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

SHANNON S. MOULTRIE            )
                              )
          Plaintiff,           )
                              )          Civil Action No. 23EV001656
     v.                        )
                              )
WILLIS BRYANT GREEN, III and   )
LAW OFFICE OF W. BRYANT        )
GREEN, III, P.C.,              )

**MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MEMORANDUM OF
LAW IN SUPPORT**

COMES NOW Plaintiff, Shannon S. Moultrie, respectfully moves the Court pursuant to

O.C.G.A. §9-11-21, for leave to file an AMENDED COMPLAINT, a copy of which is attached

hereto. The new complaint maintains the counts and allegations against the same defendants

from the original complaint, but accounts for the significant factual and procedural developments

that have occurred since the original complaint was filed. Accordingly, Plaintiff seeks the Court's

leave to amend, which should be granted for the reasons set forth below.

**STATEMENT OF FACTS**

On March 20, 2023, Plaintiff filed her Original Complaint against Defendants, alleging

negligent infliction of emotional distress, intentional infliction of mental suffering, intentional

infliction of emotional distress and false imprisonment. On May 11, 2023, Defendants filed their

Answer, Discovery Responses and Motion to Dismiss with Prejudice. On June 7, 2023, Plaintiff

filed her Response in Opposition to Defendants' Motion to Dismiss with Prejudice, and now

Plaintiff files her Motion to Amend her Complaint. At this time discovery is on going.

**ARGUMENT**

**PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER O.C.G.A. §9-11-15**

Pursuant to O.C.G.A. §9-11-15(a), "Leave shall be freely given when justice so requires." The decision whether to grant leave to amend a pleading is within the sound discretion of the court, but as the courts has aptly recognized, "this discretion is strictly circumscribed by the proviso that 'leave [should] be freely given when justice so requires." Therefore, a justifying reason must be apparent for denial of a motion to amend. "Unless a substantial reason exists to deny leave to amend, the discretion of the court is not broad enough to permit denial."

In light of the significant factual and procedural developments since Plaintiffs filed suit on March 20, 2023, good cause for amending the Complaint is immediately apparent. Defendants will in no way be prejudiced if the changes are allowed at this point in the proceedings. Furthermore, there is no apparent reason for denying the motion to amend, as none of the factors that may militate against it is present in this case. Consistent with the liberal standard that applies to motions to amend under O.C.G.A. §9-11-15(a), the Court should therefore grant Plaintiff's motion.

The interests of justice and judicial economy will undoubtedly be served by having all allegations properly before the Court as set forth in Plaintiff's proposed amended complaint. The amendments are narrowly tailored to reflect the present circumstances and Plaintiff's present understanding of the case. In so doing, the action can more effectively proceed on the merits.

Defendants will not suffer any undue prejudice by virtue of the Court's allowance of the proposed amendment. The determination of whether prejudice would occur often includes assessing whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories. Defendants cannot be prejudiced, or

caught off guard, by the new facts alleged by Plaintiff in the proposed amendment, since the Defendants have first-hand knowledge of the allegations as they were provided to them by the Equal Employment Opportunity Commission ("EEOC").

Finally, Plaintiff's request to file an amended complaint is not futile as Plaintiff has alleged sufficient facts to state a claim for relief that is facially plausible. Where the proposed amendment is not clearly futile, denying leave to amend on this ground is highly improper. Accordingly, in the interest of justice, this Court should grant Plaintiff's motion for leave to file the proposed amended complaint. The grant of this motion is particularly appropriate here, given the clear absence of any substantial reason to deny leave to amend.

## CONCLUSION

For the reasons identified above, Plaintiff requests that the Court grant her motion for leave to file the proposed amended complaint.

Respectfully submitted,

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie
Pro Se

## CERTIFICATE OF SERVICE

This is to hereby certify that I have this day served the foregoing ***PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS*** upon party or counsel of record by electronic filing, which will automatically serve:

Sarah M. Phaff
Constangy, Brooks, Smith & Prophet, LLP
230 Peachtree Street, N.W.
Suite 2400
Atlanta, Georgia 30303
sphaff@constangy.com

Respectfully submitted, this 5th day of June, 2023.

Respectfully submitted,

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie
Pro Se

State Court of Fulton County
**E-FILED**
23EV001656
6/7/2023 8:57 PM
Donald Talley, Clerk
Civil Division

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| SHANNON S. MOULTRIE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 23EV001656 |
| v. | ) | |
| | ) | |
| WILLIS BRYANT GREEN, III and | ) | |
| LAW OFFICE OF W. BRYANT | ) | |
| GREEN, III, P.C., | ) | |

## [PROPOSED] ORDER ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Having read and considered the Motion for Leave to File Amended Complaint, filed by

Plaintiff, and good cause having been shown in support thereof,

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File Amended

Complaint is hereby **GRANTED**.

This_____day of _____2023

_____
Honorable, Judge Patsy Porter

Presented by:

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie
Pro Se

State Court of Fulton County
**E-FILED**
23EV001656
6/7/2023 8:57 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

SHANNON S. MOULTRIE      )
     )
     Plaintiff,      )      CIVIL ACTION NO. <u> 23EV001656 </u>
     )
     v.      )
     )
WILLIS BRYANT GREEN, III and      )
LAW OFFICE OF W. BRYANT      )
GREEN, III, P.C.      )
     )
     Defendant.      )

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiff, Shannon S. Moultrie in the above-styled action, and hereby files

Plaintiff's First Amended Complaint against the Defendants and shows this Honorable Court as

follows:

## PARTIES AND JURISDICTION

1.

Plaintiff was at all times relevant to the above-referenced matter a citizen and domiciliary

of the State of Georgia.

2.

Defendant Willis Bryant Green, III (hereinafter also referred to as "Bryant Green") is a

Georgia resident and resides at 6148 Traveler Ct, Stone Mountain, Georgia 30087 and can be

served at this address.

3.

Defendant Law Office of W. Bryant Green, III, P.C. (hereinafter also referred to as

"WBGPC") is a Georgia corporation located at 303 Peachtree Street, N.E., Ste 4100, Atlanta,

Georgia 30308, whose registered agent is Willis Bryant Green, III at 4070 Bowie Court, Clarkston,

Dekalb County, Georgia, 30021 and can be served at either address.

## FACTS

This case arose out of a series of events of sexual harassment, intimidation, racial and

religious attacks, and false imprisonment inflicted upon Plaintiff by Defendant Willis Bryant

Green, III ("Defendant Green) while Plaintiff was employed with the Law Office of W. Bryant

Green, III, P.C.  Plaintiff sustained personal injuries and approached the Equal Employment

Opportunity Commission ("EEOC") with her complaint and charges with supporting

documentation of each charge. On January 6, 2023, the EEOC granted Plaintiff's right to sue and

provided her a Right to Sue Letter, which resulted in the present action. ***See Attached, Exhibit A***.

As noted on the EEOC Right to Sue Letter, within seven days of the January 6, 2023 decision,

the EEOC served upon Defendants Plaintiff's complaint and charges with supporting

documentation of claims of sexual harassment, intimidation, racial and religious attacks, and

false imprisonment. ***See Attached, Exhibit A***. 5.

Prior to the November 2022 incident, Defendant Green made multiple sexual advances

toward Plaintiff which were met with a resounding no each time. Repeatedly, Defendant Green

asked Plaintiff if her prior employer tried to have sex with her. Several times Defendant Green

asked Plaintiff if she would like for him to take care of her, and buy her designer bags and

watches. He then asked her to come to his house and swim with him in his swimming pool.

Defendant Green then texted Plaintiff and asked her if she wanted to be one of his women. ***See***

***Attached, Exhibit B.***

As if Defendant Greens' above stated behavior wasn't abhorrent enough, on or about

November 1, 2022, Defendant Green summoned for Plaintiff to come into his office, where

Green securely locked the door using a button underneath his desk, forcing Plaintiff to remain in his office and preventing her from leaving. Defendant Green was intoxicated and belligerent as he began to verbally attack and sexually harass Plaintiff. Amongst several things, Defendant Green accused Plaintiff of being "a part of a black Jew militia group that is speaking out against white Jews on television! During this attack, Plaintiff asked several times if she could be excused, and Defendant Green did not release the button so that she could leave. When Defendant Green finally pushed the button underneath his desk to allow Plaintiff to leave, Defendant Green said, "I think you hate white jews, but I love looking at your butt when you walk away." The physically painful anxiety and fear overtook Plaintiff so much that she immediately went to her office to collect her belongings and left. Plaintiff's supervising attorney texted her, asking her to call him. When she did, Plaintiff's supervising attorney told her that while out having several drinks of alcohol during lunch, Defendant Green told him he was about to attack her, and that he was trying to save Plaintiff before Defendant Green called her in his office.

On November 4, 2022, Defendant Green doubled down on his false accusations when he singled Plaintiff out and sent her an email saying, "Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." ***See Attached, Exhibit C.*** When Plaintiff responded by asking, "Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that." ***See Attached, Exhibit D***. Defendant Green replied by saying, "You're a valued employee and I'm glad we do not have a problem here about such things." ***See Attached, Exhibit E***. He could not provide a reason for his behavior. In fact, Defendant Green had knowledge that Plaintiff didn't hate white Jews, as they together just one month or so prior memorialized a mutual friend and colleague who happened to be a white Jewish man. ***See***

***Attached, Exhibit F.*** It was clear that Defendant Green's behavior on November 1, 2022 was solely to cause Plaintiff harm and to destroy her reputation.

As a direct result of Defendant Willis Bryant Green's behavior, Plaintiff suffered extreme, stress, fear, anxiety, sleep deprivation and physical pain so bad that she began experiencing pain on the right side of her body that rendered it difficult to get out of bed; numbness on the right side of her face, and pain in her right shoulder, neck and arms. The symptoms were so severe that Plaintiff thought she was having a stroke, so she immediately sought medical care. Plaintiff was told that due to what Defendant Bryant Green had done to her, Plaintiff's stress and anxiety level was so high that for the first time in her life she was suffering from hypertension. Due to Plaintiff's symptoms and medical results, Plaintiff was prescribed immediate time off work and to see a phycologist.

## COUNT 1 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff repeats and re-alleges each and every allegation contained in previous Paragraphs as if set forth at length herein.

1.

Defendant Bryant Green was negligent, amongst other things, for using his power and control to arrest Plaintiff in his office using a "trap button" to lock her in his office to verbally attack and abuse Plaintiff.

2.

Plaintiff sustained a physical impact due to Defendant Bryant Greens negligence.

3.

The physical impact caused by Defendant Bryant Green caused Plaintiff's injuries.

4.

The physical injuries caused by Defendant Bryant Green caused Plaintiff's emotional distress.

5.

Defendant Bryant Green's negligence is the proximate cause of the subject incident and Plaintiff's resulting injuries.

6.

Plaintiff reserves the right to amend her Complaint to add any other policies, procedures and laws that Defendant Bryant Green may have violated which may be determined during the course of discovery.

## COUNT 2 – INTENTIONAL INFLICTION OF EMOTION DISTRESS

**1.**

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

2.

Defendant Bryant Green's conduct against Plaintiff was intentional and/or reckless.

3.

Defendant Bryant Green's conduct against Plaintiff was extreme and outrageous.

4.

Defendant Bryant Green's conduct is the proximate cause of Plaintiff's emotional distress.

5.

The emotional distress that Defendant Bryant Green caused Plaintiff was so extreme in degree, as to it went beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

6.

Defendant Bryant Green's conduct was found to be so egregious that the U.S. Equal Employment Opportunity Commission approved Plaintiff's right to sue Defendants.

## COUNT 3 – INTENTIONAL INFLICTION OF MENTAL SUFFERING

1.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

2.

Defendant Bryant Green's malicious, willful, and wanton conduct caused Plaintiff mental anguish and suffering in the manner of, to include but not limited to, fear, anxiety, grief, feeling of distress and pain.

## COUNT 4 FALSE IMPRISONMENT

1.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

2.

Defendant Bryant Green intentionally detained Plaintiff against her will by and through is power and control as Plaintiff's employer by demanding she enter his office, whereafter

Defendant Bryant Green closed and securely locked his private door by using a "trap button" underneath his desk. Plaintiff had no way to exit Defendant Bryant Greens office at her own will.

## DAMAGES

1.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

2.

Plaintiff was physically injured and has experience physical and emotional pain and suffering, and lost wages as a direct and proximate result of the subject incident.

3.

Plaintiff has incurred special damages in excess of $15,000.00 as a direct and proximate result of the subject incident, plus additional special damages as may arise prior to trial.

4.

Plaintiff is entitled to an award of general damages from Defendants.

5.

Plaintiff is entitled to an award of special damages from Defendants.

6.

Plaintiff's injuries and damages resulting from the subject incident were directly and proximately caused by the intentional and/or negligence of Defendants.

**TRIAL BY JURY DEMANDED ON ALL COUNTS.**

**WHEREFORE,** Plaintiff respectfully prays:

a) That Summons issue requiring the above-named Defendants to answer each allegation of this Amended Complaint within the time provided by law;

b) That Plaintiff has judgment against Defendants in such an amount to compensate Plaintiff for Plaintiff's past, present, and future injuries, and general damages resulting from subject incident and Plaintiff's special damages;

c) That Plaintiff recover the full value of past and future medical expenses and past and future lost wages in an amount to be proven at trial;

d) That Plaintiff recover for mental and physical pain and suffering and emotional distress in an amount to be determined by the enlightened conscience of the jury;

e) That all issues be tried before a jury;

f) That Plaintiff is awarded attorney's fees and expenses of litigation;

g) That all costs be cast against Defendants; and,

h) For any other relief this Honorable Court deems just and proper.

This the 4th day of June, 2023.

Respectfully submitted,

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie
Pro Se

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Shannon Moultrie<br>540 Cornwallis Way<br>Fayetteville, GA 30214 | From: | Atlanta District Office<br>100 Alabama Street, SW, Suite 4R30<br>Atlanta, GA 30303 |
|---|---|---|---|

| EEOC Charge No.<br>**410-2023-02699** | EEOC Representative<br>**RIVAH MILLS,**<br>**Federal Investigator** | Telephone No.<br>**470-531-4859** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

    The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that back pay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

I. Daniel-Edward Anance'
On behalf of the Commission

*I. Daniel-Edward Anance*         For

Digitally signed by I.
Daniel-Edward Anance'
Date: 2023.01.06
15:22:54 -05'00'

Darrell Graham
**District Director**

Enclosures(s)

cc: **Willis B Green**
**Law Office of W. Bryant Green, III, PC**
**303 Peachtree Street Suite 4100**
**Atlanta, GA 30308**
**(404) 522-5330**

**Shannon Moultrie**
**540 Cornwallis Way**
**Fayetteville, GA 30214**
**(404) 202-2692**

8:30



W. Bryant >

I'm not nice

You want to be a girl of mine? You got one minute

Yes you are

You are nice

No I am not

Did they log you out yet?

I think you're terrific then would have picked you

I believe it logged me out. I closed out of the entire browser.

Aww thanks Boss

Wed, Sep 28 at 9:02 PM

Thank you for speaking with me. For my mental health, I am listening to Vintage Marvin Gaye

It was my pleasure. Thank you for sharing. Marvin Gaye is classic.

had hate in my heart for white Jewish people.

When you called me in your office and accused me of being "a part of the black jewish movement that hates white jews", I was devastated. When you said, "you black jews think you're the real jews and you hate my people", I was crushed. On every holy day, me, you and Michael wished each other well. I appreciated and valued that connection between the three of us, and I thought you did too.

Unapologetically, I am a Jewish woman, who happens to also be black. I deserve to have confidence in our faith, just as you do. I did not deserve what you said and did to me.

I am hoping that we can resolve this in a professional manner and move forward. I would really appreciate an apology from you for your actions, and assurance that this won't happen again.

...

 **WBG** 11:12 AM
to me ⌄

Do not misconstrue our conversation. Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism.

To the extent we have miscommunicated, I apologize for my part.

...

12:01

# Sensitive Matter ⟩ Inbox

**S** **me** 11:03 AM
Hi, Bryant, Since Tuesday, I've been devastated. I cann...

**B** **WBG** 11:12 AM
Do not misconstrue our conversation. Be very clear, I d...

**S** **me** 11:34 AM
to WBG ⌄

Are you denying you said those things to me? Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that.

**B** **WBG** 11:43 AM
to me ⌄

You misunderstood our conversation. My recollection of the conversation is very different. You're a valued employee and I'm glad we do not have a problem here about such things.

**S** **me** 11:54 AM
to WBG ⌄

Thank you for saying I'm a valued employee. However, I didn't misunderstand the conversation at all.

↩ Reply → Forward

12:01

# Sensitive Matter ➤ Inbox

**S** **me** 11:03 AM
Hi, Bryant, Since Tuesday, I've been devastated. I cann...

**B** **WBG** 11:12 AM
Do not misconstrue our conversation. Be very clear, I d...

**S** **me** 11:34 AM
to WBG ⌄

Are you denying you said those things to me? Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that.

**B** **WBG** 11:43 AM
to me ⌄

You misunderstood our conversation. My recollection of the conversation is very different. You're a valued employee and I'm glad we do not have a problem here about such things.

**S** **me** 11:54 AM
to WBG ⌄

Thank you for saying I'm a valued employee. However, I didn't misunderstand the conversation at all.

↩ Reply | → Forward

As you may have noticed, I've been working remotely. I cannot express to you how it felt and continues to feel after being verbally attacked at work for simply being black and jew. I've never hidden my faith because it is literally everything to me.

Going to the office for any employee should be safe and without racial and/or religious prejudice and bias. What happened to me is not small, and should never happen to anyone.

Thank you for your understanding as I continue to work remotely.

...



**Anthony Showell** 10:00 AM
to me, Semra, Clarence, Eugene ⌄

No worries Shan.

Best Regards,

Anthony Showell

Office (404) 522-5330
Fax (404) 577-0860


Law Office of W. Bryant Green, III
303 Peachtree Street, Suite 4100
Atlanta, GA 30308

...



**Clarence Hollins** 10:09 AM
to me ⌄

Take all the time you need and please let me know if there is anything I can do.

...

## Michael's Write ups ▶ Inbox ⭐

**WBG** Sep 16
to Lorraine, JEFF, Trishb211, Shannon ⌄

Hey guys,

Again, I am sorry for your loss. I have attached the write up from the legal paper and the Atlanta Journal and Constitution. I am doing my best to make arrangements. I have copied one of our staff, who has been helping a good deal. Her name is Shannon Moultrie.

I spoke with Jeffrey and am trying to nail down which of the weekends (9/23 or 9/30) works best, so that we can secure the venue that he wanted.

I hope that you can forward the writeups to other members of the family.

Many of his friends have reached out all week. I am getting where I can't remember everything.

Please take care and respond soon. Thank you.

Bryant

• • •

| Daily Report - Michael.pdf | AJC Obit - Michael Haupt... |
|---|---|
| 📕 PDF | 📕 PDF |

**Lorraine Monteiro** Sep 16
Hi Bryant! Thank you for these articles. We will be sure...

Obituary  Inbox



**WBG** Sep 14
to Leslie, Bryant, bcc: shannon ⌄



This is what I have got.

• • •

Obituary of
Michael Raymo...

 Doc

**WBG** Sep 14
to Shannon ⌄

Slight revision.

State Court of Fulton County
**E-FILED**
23EV001656
6/7/2023 9:08 PM
Donald Talley, Clerk
Civil Division

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

SHANNON S. MOULTRIE          )
                             )
          Plaintiff,         )
                             )          Civil Action No. 23EV001656
     v.                      )
                             )
WILLIS BRYANT GREEN, III and )
LAW OFFICE OF W. BRYANT      )
GREEN, III, P.C.,            )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMES NOW, Shannon S. Moultrie (hereinafter "Plaintiff"), Plaintiff in the above

referenced case, and files this Response in Opposition to Defendants' Motion to Dismiss and

Brief in Support thereof and shows the Court as follows:

## I.     INTRODUCTION

This case arose out of a series of events of sexual harassment, intimidation, racial and

religious attacks, and false imprisonment inflicted upon Plaintiff by Defendant Willis Bryant

Green, III ("Defendant Green) while Plaintiff was employed with the Law Office of W. Bryant

Green, III, P.C.  Plaintiff sustained personal injuries and approached the Equal Employment

Opportunity Commission ("EEOC") with her complaint and charges with supporting

documentation of each charge. On January 6, 2023, the EEOC granted Plaintiff's right to sue and

provided her a Right to Sue Letter, which resulted in the present action. ***See Attached, Exhibit A***.

As noted on the EEOC Right to Sue Letter, within seven days of the January 6, 2023 decision,

the EEOC served upon Defendants Plaintiff's complaint and charges with supporting

documentation of claims of sexual harassment, intimidation, racial and religious attacks, and false imprisonment. *See Attached, Exhibit A*.

Prior to the November 2022 incident, Defendant Green made multiple sexual advances toward Plaintiff which were met with a resounding no each time. Repeatedly, Defendant Green asked Plaintiff if her prior employer tried to have sex with her. Several times Defendant Green asked Plaintiff if she would like for him to take care of her, and buy her designer bags and watches. He then asked her to come to his house and swim with him in his swimming pool. Defendant Green then texted Plaintiff and asked her if she wanted to be one of his women. *See Attached, Exhibit B.*

As if Defendant Greens' above stated behavior wasn't abhorrent enough, on or about November 1, 2022, Defendant Green summoned for Plaintiff to come into his office, where Green securely locked the door using a button underneath his desk, forcing Plaintiff to remain in his office and preventing her from leaving. Defendant Green was intoxicated and belligerent as he began to verbally attack and sexually harass Plaintiff. Amongst several things, Defendant Green accused Plaintiff of being "a part of a black Jew militia group that is speaking out against white Jews on television!" as stated in Plaintiff's Complaint. *See Attached Complaint, Exhibit C*. During this attack, Plaintiff asked several times if she could be excused, and Defendant Green did not release the button so that she could leave. When Defendant Green finally pushed the button underneath his desk to allow Plaintiff to leave, Defendant Green said, "I think you hate white jews, but I love looking at your butt when you walk away." The physically painful anxiety and fear overtook Plaintiff so much that she immediately went to her office to collect her belongings and left. Plaintiff's supervising attorney texted her, asking her to call him. When she did, Plaintiff's supervising attorney told her that while out having several drinks of alcohol

during lunch, Defendant Green told him he was about to attack her, and that he was trying to save Plaintiff before Defendant Green called her in his office.

On November 4, 2022, Defendant Green doubled down on his false accusations when he singled Plaintiff out and sent her an email saying, "Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." ***See Attached, Exhibit D.*** When Plaintiff responded by asking, "Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that." ***See Attached, Exhibit E***. Defendant Green replied by saying, "You're a valued employee and I'm glad we do not have a problem here about such things." ***See Attached, Exhibit F***. He could not provide a reason for his behavior. In fact, Defendant Green had knowledge that Plaintiff didn't hate white Jews, as they together just one month or so prior memorialized a mutual friend and colleague who happened to be a white Jewish man. ***See Attached, Exhibit G.*** It was clear that Defendant Green's behavior on November 1, 2022 was solely to cause Plaintiff harm and to destroy her reputation.

Importantly, on June 7, 2023, Plaintiff amended her Complaint to sufficiently state her claims on all counts of Negligent Infliction of Emotional Distress, Intentional Infliction of Mental Suffering, Intentional Infliction of Emotional Distress, and False Imprisonment against the Defendants. ***See Attached, Exhibit H***.

The present issue in this *Response in Opposition To Defendants' Motion to Dismiss* is whether (1) Plaintiff's allegations fail to state a claim and are woefully deficient on all counts alleged in her Complaint.

## II. **STANDARD FOR DISMISSAL**

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under O.C.G.A. § 9-11-12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from the complaint, E.g., Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. GSW, Inc. v. Long County, 999 F.2nd 1508, 1510 (11th Cir.1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atl.Corp. v. Twombly, 127, 127 S.Ct.1955, 1969 (2007).

## III. **ARGUMENT AND CITATION OF AUTHORITY**

The impact rule states, "In a claim concerning negligent conduct, a recovery for emotional distress is allowed where there is some impact on the plaintiff, and that impact must be physical." Lee v. State Farm Mut. Ins. Co. et al., 272 Ga. 583, 584 (2000). "...this Court recognizes that the policy concerns behind our traditional impact rule are not extant in this case, and there is no meritorious reason in an appropriate and compelling situation to refuse to extend recovery for emotional distress to an incident in which the distress is the result of physical injury negligently inflicted on another." "…The circumstances of this case is such an appropriate and compelling situation." "...it will be for the finder of fact to determine…" Lee v. State Farm Mut. Ins. Co. et al., 272 Ga. 583, 584 (2000).

In the present case, after relentlessly sexually harassing Plaintiff, on November 1, 2022, Defendant Green summoned Plaintiff into his office with the intent to cause her harm, and in fact

he did. His intent was so clear that he told his intentions to Plaintiff's supervising attorney. When Defendant Green had Plaintiff alone, he secured the door shut with the button underneath his desk. Immediately after securing the door shut, Defendant Green began to aggressively verbally attack Plaintiff. Plaintiff is a petite woman who was alone with an intoxicated male executive, owner of the firm, being aggressive while verbally attacking her, after being sexually harassed by Defendant Green on multiple occasions, no doubt left Plaintiff helpless and in despair. "Nevertheless, it is likewise true, as this case demonstrates, that certain conduct can support both a claim for malicious prosecution and a claim for intentional infliction of emotional distress." Turnage v. Kasper 307 Ga. App. 172 (Ga. Ct. App. 2010). Not only did the incident render her powerless, it immediately caused Plaintiff anxiety to the degree of physical pain, and distress as she feared for her safety, job and reputation.

Defendant Green's conduct was "so extreme in degree…beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Mayorga v. Benton, at 670, 875 S.E.2nd at 913. His behavior was not "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living. Instead, his behavior was such that you could "Tell it all to "an average member of the community" and I think there is a good chance "she would exclaim, 'Outrageous!' Wilcher v. Confederate Packaging, 287 Ga. App. 451, 651 S.E.2d 790 (Ga. Ct. App. 2007).  "The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her sentiment against the defendant so that she would exclaim, `Outrageous!'" Wilcher v. Confederate Packaging, Inc., 287 Ga. App. 451, 453, 651 S.E.2d 790 (2007). "Whether or not any of this will ultimately be proven, it is enough "possible" support for the "extreme and outrageous" element to survive a motion to

dismiss. <u>Mayorga v. Benton</u> 364 Ga. App. 665 (Ga. Ct. App. 2022), and "If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly [sic] severe emotional distress, the jury then must find the facts and make its own determination. <u>Ellison v. Burger King Corp.</u> 294 Ga. App. 814 (Ga. Ct. App. 2008)

## **IV. CONCLUSION**

WHEREFORE, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss based on the Plaintiff's Complaint and Response in Opposition to Defendants' Motion to Dismiss with supporting exhibits being sufficient for Plaintiff to state all of her claims against Defendants.

Respectfully submitted, this 29th day of May, 2023

<u>/s/ Shannon S. Moultrie</u>
Shannon S. Moultrie, *Pro Se*
540 Cornwallis Way
Fayetteville, Georgia 30214
smoultrie@me.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 12, 2023, I served the foregoing ***PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS and BRIEF IN SUPPORT*** upon Defendants via e-mail and United States mail (first-class postage prepaid), addressed as follows:

<div align="center">

Sarah M. Phaff
Darrick L. McDuffie
**Constancy, Brooks, Smith & Prophete, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
*sphaff@constangy.com*
*dmcduffie@constangy.com*

</div>

Respectfully submitted, this 29th day of May, 2023

<u>*/s/ Shannon S. Moultrie*</u>
Shannon S. Moultrie, *Pro Se*
540 Cornwallis Way
Fayetteville, Georgia 30214
smoultrie@me.com

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Shannon Moultrie<br>540 Cornwallis Way<br>Fayetteville, GA 30214 | From: | Atlanta District Office<br>100 Alabama Street, SW, Suite 4R30<br>Atlanta, GA 30303 |
|---|---|---|---|

| EEOC Charge No.<br>**410-2023-02699** | EEOC Representative<br>**RIVAH MILLS,**<br>**Federal Investigator** | Telephone No.<br>**470-531-4859** |
|---|---|---|

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    ☐ Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

    ☐ The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that back pay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

I. Daniel-Edward Anance'
Digitally signed by I. Daniel-Edward Anance'
Date: 2023.01.06 15:22:54 -05'00'

*I. Daniel-Edward Anance*                                    For

**Darrell Graham**
**District Director**

Enclosures(s)

cc:    **Willis B Green**
    **Law Office of W. Bryant Green, III, PC**
    **303 Peachtree Street Suite 4100**
    **Atlanta, GA 30308**
    **(404) 522-5330**

    **Shannon Moultrie**
    **540 Cornwallis Way**
    **Fayetteville, GA 30214**
    **(404) 202-2692**

8:30



W. Bryant >

I'm not nice

You want to be a girl of mine? You got one minute

Yes you are

You are nice

No I am not

Did they log you out yet?

I think you're terrific then would have picked you

I believe it logged me out. I closed out of the entire browser.

Aww thanks Boss

Wed, Sep 28 at 9:02 PM

Thank you for speaking with me. For my mental health, I am listening to Vintage Marvin Gaye

It was my pleasure. Thank you for sharing. Marvin Gaye is classic.

had hate in my heart for white Jewish people.

When you called me in your office and accused me of being "a part of the black jewish movement that hates white jews", I was devastated. When you said, "you black jews think you're the real jews and you hate my people", I was crushed. On every holy day, me, you and Michael wished each other well. I appreciated and valued that connection between the three of us, and I thought you did too.

Unapologetically, I am a Jewish woman, who happens to also be black.  I deserve to have confidence in our faith, just as you do. I did not deserve what you said and did to me.

I am hoping that we can resolve this in a professional manner and move forward.  I would really appreciate an apology from you for your actions, and assurance that this won't happen again.

•••

**WBG** 11:12 AM
to me ⌄

Do not misconstrue our conversation.  Be very clear, I do not want hate in my office.  I am very sensitive about anti-semitism.

To the extent we have miscommunicated, I apologize for my part.

•••

12:01

## Sensitive Matter ▶ Inbox ☆

**me** 11:03 AM
Hi, Bryant, Since Tuesday, I've been devastated. I cann...

**WBG** 11:12 AM
Do not misconstrue our conversation. Be very clear, I d...

**me** 11:34 AM
to WBG ⌄

Are you denying you said those things to me? Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that.

**WBG** 11:43 AM
to me ⌄

You misunderstood our conversation. My recollection of the conversation is very different. You're a valued employee and I'm glad we do not have a problem here about such things.

**me** 11:54 AM
to WBG ⌄

Thank you for saying I'm a valued employee. However, I didn't misunderstand the conversation at all.

↩ Reply      ↪ Forward

12:01

# Sensitive Matter  Inbox

**S** **me** 11:03 AM
Hi, Bryant, Since Tuesday, I've been devastated. I cann...

**B** **WBG** 11:12 AM
Do not misconstrue our conversation. Be very clear, I d...

**S** **me** 11:34 AM
to WBG ⌄

Are you denying you said those things to me? Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that.

**B** **WBG** 11:43 AM
to me ⌄

You misunderstood our conversation. My recollection of the conversation is very different. You're a valued employee and I'm glad we do not have a problem here about such things.

**S** **me** 11:54 AM
to WBG ⌄

Thank you for saying I'm a valued employee. However, I didn't misunderstand the conversation at all.

↩ Reply     → Forward

As you may have noticed, I've been working remotely. I cannot express to you how it felt and continues to feel after being verbally attacked at work for simply being black and jew. I've never hidden my faith because it is literally everything to me.

Going to the office for any employee should be safe and without racial and/or religious prejudice and bias. What happened to me is not small, and should never happen to anyone.

Thank you for your understanding as I continue to work remotely.

...

**Anthony Showell** 10:00 AM
to me, Semra, Clarence, Eugene ⌄

No worries Shan.

Best Regards,

Anthony Showell

Office (404) 522-5330
Fax (404) 577-0860

Law Office of W. Bryant Green, III
303 Peachtree Street, Suite 4100
Atlanta, GA 30308

...

**Clarence Hollins** 10:09 AM
to me ⌄

Take all the time you need and please let me know if there is anything I can do.

...

Michael's Write ups ▶ Inbox ☆

**WBG** Sep 16
to Lorraine, JEFF, Trishb211, Shannon ⌄

Hey guys,

Again, I am sorry for your loss. I have attached the write up from the legal paper and the Atlanta Journal and Constitution. I am doing my best to make arrangements. I have copied one of our staff, who has been helping a good deal. Her name is Shannon Moultrie.

I spoke with Jeffrey and am trying to nail down which of the weekends (9/23 or 9/30) works best, so that we can secure the venue that he wanted.

I hope that you can forward the writeups to other members of the family.

Many of his friends have reached out all week. I am getting where I can't remember everything.

Please take care and respond soon. Thank you.

Bryant

• • •

| Daily Report - Michael.pdf | AJC Obit - Michael Haupt... |
|---|---|
| 📕 PDF | 📕 PDF |

Lorraine Monteiro   Sep 16
Hi Bryant! Thank you for these articles. We will be sure...

Obituary  Inbox 

 **WBG** Sep 14
to Leslie, Bryant, bcc: shannon ⌄



This is what I have got.

• • •

| Obituary of Michael Raymo... |
|---|
|  Doc |

**WBG** Sep 14
to Shannon ⌄

Slight revision.

State Court of Fulton County
**E-FILED**
23EV001656
6/21/2023 6:57 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

SHANNON S. MOULTRIE,

      **Plaintiff,**

    **v.**

WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,

      **Defendants.**

Civil Action No. 23EV001656

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COME NOW Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. ("Law Office") (hereafter collectively referred to as "Defendants"), pursuant to O.C.G.A. § 9-11-12(b)(6), and files this Reply in Support of its Motion to Dismiss Plaintiff's Complaint. ("Reply"). In support, Defendants state as follows:

## I.    INTRODUCTION

In Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint which was filed on June 7, 2023 ("Opposition"), the argument contained in the section titled "Introduction", appears to be substantially identical to the "Facts" as alleged in Plaintiff's proposed First Amended Complaint ("Amended Complaint"), which was attached as Exhibit H to her Opposition. (Opposition, p. 3, Ex. H; Am. Compl., pp. 2-4.) Defendants contemporaneously filed herewith a Response to Plaintiff's Motion to Amend and, in the alternative, Motion to Dismiss Plaintiff's Amended Complaint, demonstrating that this Amended Complaint is still insufficient to state a claim. Defendants incorporate the arguments made in that contemporaneous filing by reference here for ease of the Court and to avoid duplicative filings.

1

In this Reply below, Defendants directly address the scant legal arguments provided by Plaintiff in the "Argument and Citation of Authority" section and demonstrate that they are without merit. (*See* Opposition, pp. 4-6.) Accordingly, Plaintiff's Complaint should be dismissed and Defendants' Motion to Dismiss should be granted.

## II.   <u>ARGUMENT</u>

Defendants note that none of Plaintiff's legal arguments specifically identify to which claims she intends the arguments to apply, thereby making it difficult for Defendants to respond. (*See* Opposition, pp. 4-6.) Furthermore, Plaintiff appears to simply recite facts from her Complaint and Amended Complaint,[1] with her own characterizations of those "facts",[2] which Defendants' Motion has already shown are insufficient. (*Id.; see* Defendants' Motion to Dismiss.) As such, Plaintiff's Opposition is not enough to overcome Defendants' Motion to Dismiss.

### A.   **Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.**

It appears that Plaintiff's first argument relates to the "impact rule" in connection with her negligent infliction of emotional distress claim. (Opposition, p. 4.) Plaintiff cites *Lee v. State Farm Mut. Ins. Co.,* 272 Ga. 583, 588 (2000), quoting the portion of the case stating as follows: "this Court recognizes that the policy concerns behind our traditional impact rule are not extant in this case, and there is no meritorious reason in an appropriate and compelling situation to refuse to extend recovery for emotional distress to an incident in which the distress is the result of physical injury negligently

---

[1] Plaintiff incorporates facts from her proposed Amended Complaint, even though she did not file her Motion to Amend until she filed her Response to Defendants' Motion to Dismiss. However, for ease of the Court, Defendants have shown that Plaintiff has failed to state a claim under both her Complaint and Amended Complaint.

[2] For example, Plaintiff characterizes the facts without specific support. For example, without any citation to her Complaint, Plaintiff contends that Green "relentlessly sexually harass[ed]" her. (Opposition, p. 4.) However, there are no facts in either Plaintiff's Complaint or Amended Complaint for that matter, which support such a conclusion. (*See* Compl., and Am. Compl.)

inflicted on another. … The circumstance of this case is such an appropriate and compelling situation." (internal citations omitted); (Opposition, p. 4.) However, the facts in *Lee* are wholly distinguishable from the present case, since the facts here do not show that Plaintiff suffered a physical impact nor do they involve the death of a child.  *See Lee.,* 272 Ga. at 588 ("When, as here, a parent and child sustain a direct physical impact and physical injuries through the negligence of another, and the child dies as the result of such negligence, the parent may attempt to recover for serious emotional distress from witnessing the child's suffering and death without regard to whether the emotional trauma arises out of the physical injury to the parent…. This is in accord with the precepts of the impact approach and appropriately restricts recovery to those directly affected by the defendant's negligent act or omission. … Of course, the parent will be allowed to seek damages for the parent's own physical injuries and any mental suffering or emotional distress arising from those injuries. It will be for the finder of fact to determine whether the parent suffered emotional distress from witnessing the child's suffering and death apart from the grief which would naturally arise from a parent's loss of a child.") (internal citations omitted). As such, Plaintiff's citations to *Lee* are inapplicable. Neither the Complaint nor Amended Complaint support a conclusion that Plaintiff suffered a physical impact. *See Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 734-35 797 S.E.2d 828, 837 (2017) ("Unlike the mother in Lee, who was physically injured in the same accident that resulted in her child's death, Coon did not suffer any physical impact that resulted in physical injury from the hospital's negligent mishandling of her stillborn child's remains, nor did the child suffer any physical impact or injury."); *Malibu Boats, LLC, v. Batchelder*, 347 Ga. App. 742, 745 (2018).

To the extent Plaintiff attempts to argue that Defendants' conduct was malicious, willful, or wanton as she states in her Opposition that Green had "intent to cause her harm", Plaintiff does not allege facts sufficient to support that conclusion. "Willful conduct is based on an actual intention to

do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent." *Phillips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 76–77, 699 S.E.2d 58, 61 (2010). Aside from her conclusory allegation, nothing about Plaintiff's allegations even comes close to supporting an inference that Green intended to "do harm or inflict injury" upon Plaintiff. *Id.*  ("In the case at bar, Phillips told the assistant manager, Orgaumni, not to allow Walker to access Phillips's apartment without notifying her first. There is evidence that Orgaumni failed to communicate this restriction to the leasing specialist, Harmon, and that he subsequently gave Phillips's key and alarm code to Walker. Although these actions evince negligence, perhaps even gross negligence, we cannot say that they evince an intent to inflict injury.") Without actual facts, Plaintiff's conclusory allegation falls short. *See Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205, 213–14, 874 S.E.2d 394, 401 (2022).

Furthermore, Plaintiff's claim fails because it is not the proper claim for Plaintiff to seek recovery for emotional distress caused by intentional acts, and this claim is duplicative of her claim for Intentional Infliction of Emotional Distress. (*See* Am. Compl., pp. 4-5; Compl., ¶¶ 4-23); *see Bryant v. Norfolk Southern Railroad*, NO. 5:20-cv-00225-TES, 2020 WL 7634588 , *9 (M.D. Ga. December 22, 2020) ("Bryant alleges McWilliams is liable for negligent infliction of emotional distress. [Doc. 24, ¶ 83]. "McWilliams (sic) acts or omissions in touching the Plaintiff in a sexually provocative manner, leaning into and rubbing against him while simultaneously threatening to rape or forceable sodomize the Plaintiff constitutes negligence (sic) infliction of emotional distress when accompanying (sic) by the touching, under Georgia law."). "[W]hile it may seem obvious since the name of the tort is *negligent* infliction of emotional distress, it is necessary to clarify that the [below]-mentioned elements, which omit any negligence requirement, only apply to negligent acts. Said another way, the proper claim for a plaintiff seeking to recover for emotional distress

4

caused by intentional acts is IIED." *Id.* (citing *Amstead v. McFarland*, 650 S.E.2d 737, 742 (Ga. Ct. App. 2007))  Plaintiff "does not properly allege that [Defendants are] liable for negligence. [She] instead alleges that [Defendants] committed several intentional acts that caused [her] emotional distress. Any chance that [she] might have at recovering emotional distress damages is by way of an IIED claim" – which in this case also fails as articulated below. *Id.*[3] In addition, Plaintiff's allegations do not identify or demonstrate that Plaintiff has met the elements of a claim for negligence, or how Plaintiff contends that Defendants are liable for negligence, and thus they should be dismissed on this basis as well.

Accordingly, Plaintiff's claims should be dismissed.

**B.      Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.**

The remaining citations and arguments contained in Plaintiff's Opposition argue that the actions alleged rise to a level of conduct so "extreme" as to be actionable under the theory of Intentional Infliction of Emotional Distress (IIED). (Opposition, pp. 5-6.) However, the case law demonstrates that the conduct alleged by Plaintiff (a single incident in November 2022 in which she felt "verbally attacked" during a meeting at work and other alleged incidents of "harassment") does not sustain an IIED claim. *See Jarrard v. United Parcel Service, Inc.*, 242 Ga. App. 58, 61-62 (2000).

As articulated in Defendants' Motion, "the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and

---

[3] The Law Office cannot be held vicariously liable for the alleged intentional torts. *Id.* ("every claim against McWilliams involves an intentional tort. …Bryant alleging that McWilliams made overt sexual remarks to him, touched and rubbed against him, rubbed his penis against him, threatened to rape and sodomize him, tried to kiss him, and generally acted in a hostile and aggressive manner towards him… Therefore, since Bryant did not allege that McWilliams committed the type of act he claims Norfolk Southern is vicariously liable for").

outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Wainberg v. Piedmont University*, NO. 2:19-CV-251-MHC, 2023 WL 3931506, *16 (N.D. Ga. March 7, 2023) (quoting *McClendon v. Harper*, 349 Ga. App. 581, 589 (2019)). "[E]xtreme and outrageous conduct is that which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 818-19 (2011) (citations and quotation omitted). "Such does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." *Jarrard*, 242 Ga. App. at 59. The question of whether conduct meets the threshold of extreme or outrageous is a question of law for the Court. *Underwood v. Apple Inc.*, CV 120-136, 2022 WL 193725, at *4 (S.D. Ga. Jan. 20, 2022).

Notably, while Plaintiff's Opposition focuses on Green's alleged "intent to cause her harm" (Opposition, pp. 4-5), "it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Phinazee v. Interstate Nationalease, Inc.*, 237 Ga. App. 39, 39-40 (1999) (internal punctuation and citation omitted); *Wainberg*, 2023 WL 3931506, at *18 ("Even in cases attributing malicious motivations to the employer, coupled with reckless and possibly wanton behavior, courts have found that the evidence failed to rise to the level of extreme and outrageous conduct.") (citing *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 157-160 (2002) (affirming a finding no intentional infliction of

6

emotional distress where employer ordered plaintiff, a single mother, to remain at work after plaintiff learned that her son had been injured at school, employer refused to let employee call school to ask about son's injuries, pulled plug on the phone when the employee attempted to call the school, threatened employee that she would be fired if she left work, and ordered employee to stop crying and return to work)).

Further, the Opposition contends that Plaintiff was "verbally attacked" and that Green made what Plaintiff characterizes as inappropriate comments towards her which are identified in her proposed Amended Complaint. (Opposition, pp. 2, 4-6.) However, "[w]ords alone do not typically support an intentional infliction of emotional distress claim." *Fortson v. Columbia Farms Feed Mill*, 34 F. Supp. 3d 1302, 1309 (M.D. Ga. 2014), aff'd sub nom., *Fortson v. Carlson*, 618 F. App'x 601 (11th Cir. 2015).

To the extent Plaintiff attempts to rely on her characterization of this single incident in November 2022 as with an "intoxicated male executive… being aggressive" which occurred after other allegedly "sexually harassing" conduct (Opposition, pp. 2, 4-6), this is still not enough. *See Jarrard*, 242 Ga. App. at 61-62; *Harris v. Leader*, 231 Ga. App. 709, 712(1)(b), 499 S.E.2d 374 (1998) (psychiatrist who expresses personal sexual fantasies to client not liable despite his knowledge of her susceptibility to emotional distress); *Bowers v. Estep*, 204 Ga. App. 615, 616, 618, 420 S.E.2d 336 (1992) (even though employer knew of employee's depression and severe claustrophobia and intentionally harassed and belittled him until he broke down and was admitted to a psychiatric clinic, no liability for intentional infliction of mental distress); *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227,  231, 335 S.E.2d 445, 448-49 (even though employer knew of employee's low emotional threshold brought on by her multiple sclerosis, no liability for insensitive and tactless demands for polygraph and for termination based on her refusal to cooperate).

7

Notably, allegations much more egregious than those alleged here have been deemed insufficient as a matter of law. (Compl., ¶¶ 4-10.)  Thus, Plaintiff's IIED claim should be dismissed. *Richardson v. Jackson*, NO. 1:20-CV-00519-LMM-WEJ, 2021 WL 9598490, *16-17 (N.D. Ga. Sep. 16, 2021) (citing *Galloway v. GA Tech. Auth.*, 182 F. App'x 877, 883 (11th Cir. 2006) (per curiam) (supervisors' alleged conduct in meeting male employee's complaints alleging, inter alia, an anti-male bias, with hostility, moving him to a small and messy cubicle, commenting about the tidiness of his workspace, showing him a pornographic photograph, and asking him whether he enjoyed his vacation after he attended a funeral, was not sufficiently extreme or outrageous to support claim for the IIED); *Spears v. Kaiser Found. Health Plan of Ga., Inc.*, No. 1:17-CV-02102-TCB-RGV, 2019 WL 1225214, at *32-33 (N.D. Ga. Jan. 30, 2019), R. & R. adopted, 2019 WL 1225199 (N.D. Ga. Feb. 14, 2019) (supervisor's alleged sexual harassment and Kaiser's termination of plaintiff's employment, even considering that the parties had an employer-employee relationship, were insufficient to support IIED claim); *Smith v. Akstein*, 408 F. Supp. 2d 1309, 1317-18, 1335-36 (N.D. Ga. 2005) (granting summary judgment for employer and ophthalmologist on IIED claim because conduct was insufficiently egregious where ophthalmologist touched plaintiff female office receptionist in a sexual manner, inquired whether the plaintiff gave sexual massages, made comments on her appearance, and expressed desire to kiss her and wine and dine her); *Kimsey v. Akstein*, 408 F. Supp. 2d 1281, 1288-89, 1307-08 (N.D. Ga. 2005) (finding no IIED where defendant touched plaintiff's breast on two occasions, engaged in less offensive touching on other occasions, and made sexually harassing comments); *Spence v. Panasonic Copier Co.*, 46 F. Supp. 2d 1340, 1350-51 (N.D. Ga. 1999) (supervisor's conduct not extreme and outrageous where he screamed at and insulted plaintiff); *Fox v. Ravinia Club, Inc.*, 202 Ga. App. 260, 261, 414 S.E.2d 243, 244 (Ga. App. 1991) (finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile,

intimidating and abusive manner" and gave her false reasons for termination)). Simply put, Plaintiff has not alleged enough to state a claim.

In essence, Plaintiff's allegations amount to Green allegedly making comments about Plaintiff "hat[ing] white jews", an accusation which she contends is untrue based on the November 4, 2022 email exchange and her assistance with "memoraliz[ing] a mutual friend … who happened to be a white Jewish man." (Opposition, pp. 2-3.) However, "[d]efamatory or derogatory remarks regarding one's employment generally do not rise to this [extreme and outrageous] level." *Wainberg*, 2023 WL 3931506, *17 (citations omitted). Likewise, false accusations in the workplace are insufficient to support an IIED claim. *Id.*; *Southland Propane*, 312 Ga. App. at 818-19 (2011) ("accusing [an employee] of misappropriating corporate funds and forgery, terminating his employment, and then ordering him to immediately leave the [employer's] premises" does not rise to the level of extreme or outrageous under Georgia law.); *ITT Rayonier, Inc. v. McLaney*, 204 Ga. App.762, 763 (March 7, 2023) ("A false accusation in connection with one's employment conduct is undoubtedly a distressful, even horrifying and traumatizing insult, but it is a common vicissitude of ordinary life.") (internal punctuation and citation omitted); *Crowe v. J.C. Penney, Inc.*, 177 Ga. App. 586, 588 (1986) (affirming summary judgment based on plaintiff's failure as a matter of law to show extreme and outrageous conduct where employer interrogated plaintiff for theft, falsely accused the employee of theft in connection with the employment, called her a liar, slammed his hands on the desk, and yelled at her); *Abdul-Malik v. AirTran Airways, Inc*., 297 Ga. App. 852, 857 (2009) (affirming trial court's award of summary judgment to employer on an intentional infliction of emotional distress claim in a case in which it was alleged that the plaintiff was accused of being a "terrorist and a liar, and told him he was guilty [of making a terroristic threat].");  *Baynes v. Philips Med. Sys. (Cleveland), Inc*., 410 F. App'x 291, 292-93 (11th Cir. 2011) (holding that an employer's conduct, including forcing

an employee to travel for seventeen days shortly after undergoing heart catheterization, disclosing her confidential medical information, causing anxiety attacks with false accusations, and terminating the employee for a false reason was not extreme and outrageous).

Accordingly, Plaintiff's claims should be dismissed.

## III.    CONCLUSION

Accordingly, Plaintiff's claims should be dismissed with prejudice; this action should be dismissed with prejudice; and Defendants' Motion to Dismiss should be granted.

Respectfully submitted, this 21st day of June, 2023.

<div style="text-align: right;">

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

</div>

**CONSTANGY, BROOKS, SMITH**
**& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

<div style="text-align: center;">

**Counsel for Defendants**

</div>

<div style="text-align: center;">

10

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, I served the foregoing *DEFENDANTS'
REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINTT* upon *pro se* Plaintiff via U.S. Mail, first-class postage prepaid,
addressed as follows and via email delivery:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

State Court of Fulton County
**E-FILED**
23EV001656
6/21/2023 7:03 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
### STATE OF GEORGIA

SHANNON S. MOULTRIE,

       **Plaintiff,**

   **v.**

WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,

       **Defendants.**

Civil Action No. 23EV001656

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

COME NOW Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. (the "Law Office") (hereafter collectively referred to as "Defendants"), by and through counsel, and file this Response in Opposition to Plaintiff's Motion to Amend and, in the alternative, Motion to Dismiss Shannon Moultrie's ("Plaintiff") First Amended Complaint pursuant to O.C.G.A. § 9-11-12(b)(6) for failure to state a claim upon which relief can be granted (hereinafter referred to as "Response and Motion"). In support, Defendants state as follows:

## I.   PROCEDURAL HISTORY

Plaintiff filed her original Complaint on March 20, 2023, which asserted the following claims against Defendants: Negligent Infliction of Emotional Distress (Compl. ¶¶ 11-17 (Count I)); Intentional Infliction of Emotional Distress (*Id.* at ¶¶ 18-23 (Count II)); Intentional Infliction of Mental Suffering (*Id.* at ¶¶ 24-25 (Count III)); and False Imprisonment (*Id.* at ¶¶ 26-27 (Count IV)). On May 11, 2023, Defendants timely filed their Answer and Motion to Dismiss Plaintiff's Complaint in its entirety for failure to state a claim. On June 7, 2023, Plaintiff filed her Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint and also filed a Motion for

9715683v1

Leave to File Amended Complaint and Memorandum of Law in Support ("Motion to Amend"), along with a copy of her proposed First Amended Complaint ("Amended Complaint"). Plaintiff's Amended Complaint contains the same claims as her original Complaint: Negligent Infliction of Emotional Distress (Am. Compl., pp. 4-5, ¶¶ 1-6 (Count I)); Intentional Infliction of Emotional Distress (*Id.* at pp. 5-6, ¶¶ 1-6 (Count II)); Intentional Infliction of Mental Suffering (*Id.* at p. 6, ¶¶ 1-2 (Count III)); and False Imprisonment (*Id.* at pp. 6-7, ¶¶ 1-2 (Count IV)).[1]

In response, Defendants are filing the instant Response and Motion demonstrating that Plaintiff's Motion to Amend should be denied as futile and that Defendants' pending Motion to Dismiss her Complaint should be granted, or, in the alternative, that this Court should dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim. Defendants are contemporaneously filing a reply in response to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's original Complaint.

## II.    FACTUAL SUMMARY

Plaintiff's Amended Complaint centers around largely the same incidents and facts as her original Complaint. The Amended Complaint still focuses on a single incident which Plaintiff

---

[1] The numbering in Plaintiff's Amended Complaint is not consecutive, and Plaintiff repeats the same numbering throughout her Amended Complaint. Furthermore, the "Facts" section of her Amended Complaint contains no numbering at all, and instead contains a series of paragraphs. As a result, Defendants will refer to the Amended Complaint utilizing both page numbers and paragraph numbering, where applicable. Notably, these rambling, unnumbered paragraphs tend to show that Plaintiff's Amended Complaint is a shotgun pleading, and could be dismissed on that basis. *See Bush v. Bank of New York Mellon*, 313 Ga. App. 84, 91-92, 720 S.E. 2d 370, 375-76 (2011) ("Although the concept of a shotgun pleading is not one susceptible of a terse definition, the Eleventh Circuit has identified several characteristics that typically mark such pleadings. A shotgun complaint, for instance, often "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts ... contain irrelevant factual allegations and legal conclusions,... combines "multiple claims together in one count,".., and buries material allegations "beneath innumerable pages of rambling irrelevancies.").

2

alleges occurred on or about November 1, 2022 while she was employed by the Law Office. (Am. Compl., pp. 2-4.) Plaintiff contends she was asked to come to Green's office. (Am. Compl., p. 2.)[2] Plaintiff alleges that Green then pressed a button located underneath his desk to lock his office door and "verbally attack[ed]" and "sexually harass[ed]" her by allegedly accusing her of being "part of a black Jew militia group that is speaking out against white jews on television!" (Am. Compl., p. 3.) Plaintiff further alleges that, during this conversation, she "asked several times if she could be excused," and that "finally" Green "pushed the button" so that Plaintiff could leave. (*Id.*) Plaintiff alleges that, as she was leaving the office, Green said "I think you hate white jews, but I love looking at your butt when you walk away." (*Id.*)  Plaintiff contends that she suffered "physically painful anxiety and fear",  and  "she immediately … left." (*Id.*) Plaintiff alleges that she spoke to her  "supervising attorney" after this conversation and that they "told her that, while out having several drinks of alcohol during lunch, Green told him he was about to attack her, and that he was trying to save Plaintiff before [ ] Green called her in his office." (*Id.*)

Plaintiff also contends that on November 4, 2022, she and Green exchanged emails, in which Green said "Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." (*Id.*) To which Plaintiff responded: "Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that." (*Id.*) To which Green responded, "You're a valued employee and I'm glad we do not have a problem here about such things." (*Id.*) Plaintiff contends that as a result of this incident, she suffered "stress, fear, anxiety, sleep

---

[2] In her original Complaint, Plaintiff contends that she and another employee were called into Green's office at the Law Office to discuss a work matter. (Compl., ¶ 4.) According to Plaintiff, after Green dismissed the other employee from the meeting, Green asked Plaintiff to remain seated. (*Id.*)

3

deprivation and physical pain." (Am. Compl., p. 4.) Plaintiff does not contend she was terminated. (*See* Am. Compl.)

On its face, Plaintiff's own description of the events at issue makes it abundantly clear that Plaintiff still cannot maintain any of her causes of action against Defendants as Defendants did nothing unlawful, even assuming everything she alleges in fact happened.[3] As explained more fully below, Plaintiff's allegations fail to state a claim and are woefully deficient. Thus, Defendants' Motion to Dismiss both her Complaint and Amended Complaint should be granted, and Counts I, II, III,[4] and IV should be dismissed with prejudice.

## III.   DIFFERENCES BETWEEN PLAINTIFF'S COMPLAINT AND AMENDED COMPLAINT

In her Amended Complaint, instead of including numbered paragraphs, Plaintiff includes about two and half pages of "facts" written in paragraph form along with Exhibits. (Am. Compl., pp. 2-4.) The additional "facts" provided by Plaintiff, which were not contained in her original Complaint, are listed below:

---

[3] To be clear, as articulated in Defendants' Answer to the Complaint, Defendants deny Plaintiff's allegations, but Defendants are only assuming they are true solely for purposes of this motion.

[4] Plaintiff's claim for "Intentional Infliction of Mental Suffering" (Count III) must be dismissed because it is not recognized under Georgia law, and is duplicative of the elements of Plaintiff's other claims. *See Reid v. Waste Indus. USA, Inc.*, 345 Ga. App. 236, 244, 812 S.E.2d 582, 590 (2018) (stating that the third element of a negligent infliction of emotional distress claim is "the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress"); *see also Johnson v. Allen*, 613 S.E.2d 657, 663, 272 Ga. App. 861, 869 (2005) ("The plaintiffs' premises liability prayers for mental anguish against Atlas amount to claims for the negligent infliction of emotional distress, which does not conform to the facts herein."). As a result, this memorandum will focus on the dismissal of the cognizable claims in Plaintiff's Amended Complaint, Counts I, II, and IV, and demonstrate that they should be dismissed. *See Common Cause/Georgia v. Campbell*, 268 Ga. App. 599, 602, 602 S.E.2d 333, 336–37 (2004) (affirming trial court's dismissal of plaintiff's complaint for failing to state a legally cognizable claim); *Abramyan v. State*, 301 Ga. 308, 308, 800 S.E.2d 366, 367 (2017) (same).

4

- In her Amended Complaint, Plaintiff attaches a copy of a Notice of Right to Sue, she alleges  was "Issued on Request" by the Equal Employment Opportunity Commission ("EEOC"), and various allegations regarding communications to or from the EEOC. (Am. Compl., p. 2, Ex. A.)[5]

- Plaintiff alleges that prior to the November 2022 incident, Green made "sexual advances" which Plaintiff declined. (Am. Compl., p. 2.) Specifically, Plaintiff alleges that: (1) Green repeatedly "asked Plaintiff if her prior employer tried to have sex with her"; (2) Green "s[]everal times… asked Plaintiff if she would like for him to take care of her, and buy her designer bags and watches"; (3) Green asked Plaintiff "to come to his house and swim with him in his swimming pool"; and (4) Green  "texted Plaintiff and asked her if she wanted to be one of his women." (*Id.*; Ex. B.)

- Plaintiff also contends that on November 4, 2022, she and Green exchanged emails, in which Green said "Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." (Am. Compl., p. 3.) To which Plaintiff responded: "Are you implying that I brought anti-semitism into your office? If so, be specific

---

[5] None of the allegations related to Plaintiff's Notice of Right to Sue have any bearing on the claims contained in her Complaint or Amended Complaint, since Plaintiff is not seeking relief under any of the federal laws for employment discrimination administered by the EEOC. (*See* Ex. A); *see e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies. … The first step down this path is filing a timely charge of discrimination with the EEOC.") (internal citations omitted). Nor is receiving a Notice of Right to Sue indicative of any wrongdoing by Defendants. (*See* Ex. A) ("This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request… Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date. The EEOC is terminating its processing of this charge.").

as to when I've ever done that." (*Id.*) To which Green responded, "You're a valued employee and I'm glad we do not have a problem here about such things." (*Id.*; Exs. C, D, and E.) Plaintiff contends that as a result of this incident, she suffered "stress, fear, anxiety, sleep deprivation and physical pain." (Am. Compl., p. 4.)

- Plaintiff also provided a copy of alleged correspondence, which she mentioned in Paragraph 7 of her original Complaint, related to "memoraliz[ing] a mutual friend and colleague who happened to be a white Jewish man." (Am. Compl., pp. 3-4, Ex. F.)

However, none of these additional allegations cure Plaintiff's deficiencies, and therefore this action should be dismissed in its entirety with prejudice.

## IV.   PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED AS FUTILE

Plaintiff's Motion to Amend should be denied as futile.[6] In support of her Motion to Amend, Plaintiff contends that "[i]n light of the significant factual and procedural developments since [she] filed suit[,]…[there is] good cause for amending." (Motion to Amend, p. 2.) Plaintiff contends that judicial economy will be served by having "all allegations properly before the Court" as set for in her Amended Complaint. (*Id.*)   Also, she contends that Defendants will not be prejudiced because Defendants allegedly  have "first-hand" knowledge of the allegations provided

---

[6] In her Motion to Amend, Plaintiff contends that "[a]t this time discovery is on going." (Motion to Amend, p. 1.) However, as a result of the filing of Defendants' initial Motion to Dismiss on May 11, 2023, discovery in this matter is currently stayed. *See* O.C.G.A. § 9-11-12 (j) ("If a party files a motion to dismiss before or at the time of filing an answer and pursuant to the provisions of this Code section, discovery shall be stayed for 90 days after the filing of such motion or until the ruling of the court on such motion, whichever is sooner. The court shall decide the motion to dismiss within the 90 days provided in this paragraph.").

9715683v1

to them by the EEOC. (*Id.* at pp. 2-3)[7] Finally, Plaintiff contends that she has alleged sufficient facts to state a claim and therefore her amendment is not "futile." (*Id.*)

For the same reasons articulated below which warrant dismissal of Plaintiff's Amended Complaint, her Motion to Amend should be denied as futile. *See Alberto v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019) ("A court may nevertheless dismiss a pro se complaint with prejudice where any amendment would be futile—that is, where even 'a more carefully drafted complaint could not state a claim.'") (citations omitted); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

## V.   DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT SHOULD BE GRANTED AND PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY

In light of the pleading standards on amendment outlined in O.C.G.A. § 9-11-15, Defendants also move, in the alternative, to dismiss Plaintiff's Amended Complaint. For the reasons articulated below, Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

### A.   Standard on Dismissal

Pursuant to O.C.G.A., 9-11-12(b)(6), a court should grant a motion to dismiss when a plaintiff "would not be entitled to relief under any state of facts that could be proven in support of his claim" and "the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought *Northeast*

---

[7] As noted above, the documents identified by Plaintiff in her Amended Complaint do not demonstrate or support this argument, nor are they relevant to her pending claims. *See supra* note 5.

9715683v1

*Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 297 Ga. App. 28, 29, 676 S.E.2d

428, 430 (2009) (quoting *Walker Cty. v. Tri-State Crematory*, 284 Ga. App. 34, 35, 643 S.E.2d

324, 325 (2007)); *Mayorga v. Benton*, 364 Ga. App. 665, 666 (2022). In ruling on such a motion,

the Court must accept all "well-[pled] material allegations in the Complaint and [resolve] any

doubts in favor of the plaintiff." *Parnell v. Sherman & Hemstreet*, Inc., 364 Ga. App. 205, 213–

14, 874 S.E.2d 394, 401 (2022). However, the Court is under no obligation to "adopt a party's

legal conclusions based on these facts." *Id*. Taking Plaintiff's factual allegations as true[8], her

claims must be dismissed.

**B.**     **Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.**

As an initial matter, Plaintiff's claim fails because it is not the proper claim for Plaintiff to

seek recovery for emotional distress caused by intentional acts, and this claim is duplicative of her

claim for Intentional Infliction of Emotional Distress. (*See* Am. Compl., pp. 4-5); *see Bryant v.*

*Norfolk Southern Railroad*, NO. 5:20-cv-00225-TES, 2020 WL 7634588 , *9 (M.D. Ga. Dec. 22,

2020) ("Bryant alleges McWilliams is liable for negligent infliction of emotional distress. [Doc.

24, ¶ 83]. "McWilliams (sic) acts or omissions in touching the Plaintiff in a sexually provocative

manner, leaning into and rubbing against him while simultaneously threatening to rape or forceable

sodomize the Plaintiff constitutes negligence (sic) infliction of emotional distress when

accompanying (sic) by the touching, under Georgia law."). "[W]hile it may seem obvious since

the name of the tort is *negligent* infliction of emotional distress, it is necessary to clarify that the

[below]-mentioned elements, which omit any negligence requirement, only apply to negligent acts.

---

[8] Defendants filed an Answer responding to the allegations in the original Complaint. As noted
above, Defendants deny the allegations in both Plaintiff's Complaint and Amended Complaint and
only assume they are true for the purposes of this Motion.

8

Said another way, the proper claim for a plaintiff seeking to recover for emotional distress caused by intentional acts is IIED." *Id.* (citing *Amstead v. McFarland*, 650 S.E.2d 737, 742 (Ga. Ct. App. 2007))  Plaintiff "does not properly allege that [Defendants are] liable for negligence. [She] instead alleges that [Defendants] committed several intentional acts that caused [her] emotional distress. Any chance that [she] might have at recovering emotional distress damages is by way of an IIED claim" – which in this case also fails as articulated below. *Id.*[9] In addition, Plaintiff's allegations do not identify or demonstrate that Plaintiff has met the elements of a claim for negligence, or how Plaintiff contends that Defendants are liable for negligence, and thus they should be dismissed on this basis as well.[10]

Furthermore, "the Supreme Court of Georgia held that '[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Bryant*, 2020 WL 7634588  at *9 (citations omitted). Under Georgia law, in the absence of pecuniary loss,[11] three elements are necessary to

---

[9] The Law Office cannot be held vicariously liable for the alleged intentional torts. *Id.* ("every claim against McWilliams involves an intentional tort. …Bryant alleging that McWilliams made overt sexual remarks to him, touched and rubbed against him, rubbed his penis against him, threatened to rape and sodomize him, tried to kiss him, and generally acted in a hostile and aggressive manner towards him… Therefore, since Bryant did not allege that McWilliams committed the type of act he claims Norfolk Southern is vicariously liable for").

[10] "It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 272 (1), 578 S.E.2d 106 (2003) (Citations and punctuation omitted.) Thus, in order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty. *Id.*

[11] Plaintiff alleges that she suffered extreme "stress, fear, anxiety, sleep deprivation", pain "on the right side of her body" and "in her right shoulder, neck and arms" as well as "numbness on the right side of her face", that she "thought she was having a stroke", and due to her stress and anxiety levels is "suffering from hypertension." (Am. Compl., p. 4.) She further alleges that "[d]ue to [her] symptoms and medical results, [she] was prescribed immediate time off work and to see a phycologist [sic]." (*Id.*) These allegations fail to justify a pecuniary injury as Georgia courts have

9

establish a claim for negligent infliction of emotional distress: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Reid*, 345 Ga. App. at 244, 812 S.E.2d at 590 (citing *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 797 S.E.2d 828 (2017)). Under Georgia law, the "impact rule" specifically applies to claims for negligent infliction of emotional distress. *McConnell v. Dept. of Lab.*, 345 Ga. App. 669, 674 (1) (b), 814 S.E.2d 790 (2018). Indeed, Georgia courts have consistently dismissed negligent infliction of emotional distress claims where no physical impact was found. *See Coon*, 300 Ga. 722, 797 S.E.2d 828 (affirming summary judgment on plaintiff's negligent infliction of emotional distress claim where plaintiff sought to recover damages after a hospital mishandled the remains of her stillborn baby because she did not suffer a physical impact that resulted in physical injury); *Hang v. Wages & Sons Funeral Home, Inc.*, 262 Ga. App. 177, 179–82, 585 S.E.2d 118, 120 (2003) (affirming summary judgment on a negligent infliction of emotional distress claim which involved the premature cremation of a family member's body before his viewing and funeral). "On the other hand, where the [defendant's] conduct is malicious, willful, or wanton, recovery can be had without the necessity of an impact." *Hang*, 262 Ga. App. at 179-180, 585 S.E.2d at 120.

Plaintiff has not alleged facts supporting a conclusion she suffered a physical impact. Although Plaintiff alleges "that she began experiencing pain on the right side of her body that rendered it difficult to get out of bed," and generally alleges that she "sustained a physical impact

---

held that medical expenses, psychological treatment fees, and lost income incurred as a result of emotional distress do not qualify as a pecuniary loss. *See Mayorga v. Benton*, 364 Ga. App. 665, 678, 875 S.E.2d 908, 918 (2022); *see also Eley v. Fedee*, 362 Ga. App. 618, 623, 869 S.E.2d 566, 571 (2022), cert. denied (Oct. 25, 2022); *Grizzle v. Norsworthy*, 292 Ga. App. 303, 306 (2), 664 S.E.2d 296 (2008).

due to [Green's] negligence," she does not allege specific facts showing that she sustained a physical impact or that Green even physically touched Plaintiff. (Am. Compl., pp. 4-5.) Notably, none of Plaintiff's new allegations contained in her Amended Complaint demonstrate a physical impact or show that Green ever physically touched Plaintiff either. (*See* Am. Compl., pp. 2-4; Section III *supra*.) Plaintiff alleges only that after the November 2022 incident, generally the "physically painful anxiety and fear overtook Plaintiff so much that she immediately went to her office to collect her belongings and left." (Am. Compl., p. 3.)[12] Thus, her First Amended Complaint should be dismissed. *See Parnell*, 364 Ga. App. at 213–14, 874 S.E.2d at 401; *Bailey v. Experian Info. Sols., Inc.*, No. 1:16-CV-789-MHC-JCF, 2016 WL 9558951, at *7 (N.D. Ga. Dec. 9, 2016) (recommending dismissal of plaintiff's negligent infliction of emotional distress claim where he "provided no allegations of any such physical impact causing emotional distress.") Plaintiff's First Amended Complaint is utterly devoid of any factual allegations to support a negligent infliction of emotional distress cause of action.

Nor does Plaintiff allege facts sufficient to support a conclusion that Defendants' conduct was malicious, willful, or wanton. Plaintiff alleges that, after the incident about which she complains, she spoke with her supervisor, who informed her that he knew what Green was going to do to Plaintiff and that he was "trying to save" her. (Am. Compl., p. 3; Compl., ¶ 9.) Plaintiff also alleges she and Green exchanged emails, in which Green said ""Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." (Am. Compl., p. 3.) To which Plaintiff responded: "Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that." (*Id.*) To which Green responded, "You're a valued employee and

---

[12] In her prior Complaint, Plaintiff alleged that "[s]tressed and full of anxiety, Plaintiff immediately returned to her office to collect her belongings to exit the premises" and that she cried.  (Compl., ¶ 9.)

11

I'm glad we do not have a problem here about such things." (*Id*.) The allegations that are insufficient to show malicious, willful, or wanton behavior. "Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent" *Phillips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 76–77, 699 S.E.2d 58, 61 (2010). Nothing about Plaintiff's allegations even comes close to supporting an inference that Green intended to "do harm or inflict injury" upon Plaintiff. *Id*. Without actual facts, Plaintiff's conclusory allegation that Green's behavior was malicious, willful, and wanton, which is not contained in the allegations pertaining to her negligent infliction of emotional distress claim, (Am. Compl., p. 6) falls woefully short of adequately asserting a claim for negligent infliction of emotional distress. *See Parnell*, 364 Ga. App. at 213–14, 874 S.E.2d at 401. Accordingly, Plaintiff's claim for negligent infliction of emotional distress fails to state a claim upon which relief may be granted.

**C.**     **Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.**

To establish a claim for intentional infliction of emotional distress a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Mayorga*, 364 Ga. App. at 670, 875 S.E.2d at 913 (citing *Racette v. Bank of Am.*, 318 Ga. App. 171, 179 (3), 733 S.E.2d 457 (2012)). The standard for an intentional infliction of emotional distress claim is "very high," and the burden of the Plaintiff is a "stringent one." *Bowens v. Sodexo, Inc.*, No. 1:18-CV-4650-CAP-JSA, 2019 WL 13268194, at *12 (N.D. Ga. Feb. 14, 2019) (noting that the law only intervenes "where the distress inflicted is so severe that no reasonable person could be expected to endure it."). The question of whether conduct meets the threshold of extreme or outrageous is a question of law for the Court, and "[l]iability for IIED

has been found in Georgia only when a defendant's conduct ... is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Underwood v. Apple Inc*., CV 120-136, 2022 WL 193725, at \*4 (S.D. Ga. Jan. 20, 2022) (internal citations and quotations omitted). Plaintiff's Amended Complaint fails to state a claim for intentional infliction of emotional distress.

Plaintiff alleges that Green "verbally attack[ed]" her by making the following statements in an aggressive manner during a single incident: "accus[ing] Plaintiff of being a part of the black Jew militia group that is speaking out against white Jews on television!" and "I think you hate white [J]ews, but I love looking at your butt when you walk away." (Am. Compl., p. 3; Compl. ¶¶ 5, 8.) Plaintiff also alleges that prior to the November 2022 incident, Green made "sexual advances" which Plaintiff declined. (Am. Compl., p. 2.) Specifically, Plaintiff alleges that: (1) Green repeatedly "asked Plaintiff if her prior employer tried to have sex with her"; (2) Green "several times… asked Plaintiff if she would like for him to take care of her, and buy her designer bags and watches"; (3) Green asked Plaintiff "to come to his house and swim with him in his swimming pool"; and (4) Green  "texted Plaintiff and asked her if she wanted to be one of his women." (*Id.*) Finally, Plaintiff also contends that on November 4, 2022, she and Green exchanged emails, in which Green said "Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." (Am. Compl., p. 3.) To which Plaintiff responded: "Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that." (Id.) To which Green responded, "You're a valued employee and I'm glad we do not have a problem here about such things." (*Id.*)

These allegations are insufficient to sufficiently plead that Green's conduct was extreme and outrageous. It has been long-settled under Georgia law that extreme and outrageous conduct

13

is behavior "so extreme in degree… beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mayorga*, 364 Ga. App. at 670, 875 S.E.2d at 913. Extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." *Ghodrati v. Stearnes*, 314 Ga. App. 321, 323, 723 S.E.2d 721, 723 (2012) (citation omitted.); *Wilcher v. Confederate Packaging*, 287 Ga. App. 451, 454(2), 651 S.E.2d 790 (2007); *Lockhart v. Marine Mfg. Corp.*, 281 Ga. App. 145, 147, 635 S.E.2d 405, 407 (2006) ("Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life."). Rather, the conduct must "rise to the requisite level of egregious or outrageous behavior which justifiably results in that severe fright, humiliation, embarrassment, or outrage which no reasonable person is expected to endure." *Lockhart*, 281 Ga. App. at 147, 635 S.E.2d at 407.

When analyzed under clear Georgia law, Plaintiff's allegations do not meet this stringent burden. First, the thrust of Plaintiff's Amended Complaint still focuses primarily on the allegation that Green allegedly verbally attacked her in a single instance. (Am. Compl., pp. 2-3; Compl. ¶¶ 4-9); *See Jarrard v. United Parcel Serv., Inc.*, 242 Ga. App. 58, 62, 529 S.E.2d 144, 149 (2000) (finding that a single "brutal" employee evaluation cannot rise to the outrageous level); *Metro. Atlanta Rapid Transit Auth. v. Mosley*, 280 Ga. App. 486, 491, 634 S.E.2d 466, 470 (2006) (holding that one isolated incident did not approach the degree of reprehensibility required for an intentional infliction of emotional distress claim).

Second, even taking into account the alleged pre-November 2022 alleged comments and the email exchange which she alleges occurred on November 4, 2022, the comments (including allegedly religious and sexual remarks) allegedly made by Green do not rise to the stringent level for an IIED claim. (Am. Compl., pp. 2-3; Compl. ¶¶ 5, 8); *See Cook v. Covington Credit of*

14

*Georgia, Inc.*, 290 Ga. App. 825, 828, 660 S.E.2d 855, 858 (2008) (acknowledging that although Carter's use of a racial epithet to insult Cook during their confrontation was "demeaning, degrading, and insensitive, such conduct did not constitute egregious or outrageous behavior so as to sustain a claim for intentional infliction of emotional distress"); *Harris v. Leader*, 231 Ga. App. 709, 712(1)(b), 499 S.E.2d 374 (1998) (psychiatrist who expresses personal sexual fantasies to client not liable despite his knowledge of her susceptibility to emotional distress); *Bowers v. Estep*, 204 Ga. App. 615, 616, 618, 420 S.E.2d 336 (1992) (even though employer knew of employee's depression and severe claustrophobia and intentionally harassed and belittled him until he broke down and was admitted to a psychiatric clinic, no liability for intentional infliction of mental distress); *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227,  231, 335 S.E.2d 445, 448-49 (even though employer knew of employee's low emotional threshold brought on by her multiple sclerosis, no liability for insensitive and tactless demands for polygraph and for termination based on her refusal to cooperate).

Notably, allegations much more egregious than those alleged here have been deemed insufficient as a matter of law. Thus, Plaintiff's IIED claim should be dismissed. *See Richardson v. Jackson*, NO. 1:20-CV-00519-LMM-WEJ, 2021 WL 9598490, *16-17 (N.D. Ga. Sep. 16, 2021) (citing *Galloway v. GA Tech. Auth.*, 182 F. App'x 877, 883 (11th Cir. 2006) (per curiam) (supervisors' alleged conduct in meeting male employee's complaints alleging, inter alia, an anti-male bias, with hostility, moving him to a small and messy cubicle, commenting about the tidiness of his workspace, showing him a pornographic photograph, and asking him whether he enjoyed his vacation after he attended a funeral, was not sufficiently extreme or outrageous to support claim for the IIED); *Spears v. Kaiser Found. Health Plan of Ga., Inc.*, No. 1:17-CV-02102-TCB-RGV, 2019 WL 1225214, at *32-33 (N.D. Ga. Jan. 30, 2019), R. & R. adopted, 2019 WL 1225199 (N.D. Ga.

Feb. 14, 2019) (supervisor's alleged sexual harassment and Kaiser's termination of plaintiff's employment, even considering that the parties had an employer-employee relationship, were insufficient to support IIED claim); *Smith v. Akstein*, 408 F. Supp. 2d 1309, 1317-18, 1335-36 (N.D. Ga. 2005) (granting summary judgment for employer and ophthalmologist on IIED claim because conduct was insufficiently egregious where ophthalmologist touched plaintiff female office receptionist in a sexual manner, inquired whether the plaintiff gave sexual massages, made comments on her appearance, and expressed desire to kiss her and wine and dine her); *Kimsey v. Akstein*, 408 F. Supp. 2d 1281, 1288-89, 1307-08 (N.D. Ga. 2005) (finding no IIED where defendant touched plaintiff's breast on two occasions, engaged in less offensive touching on other occasions, and made sexually harassing comments); *Spence v. Panasonic Copier Co.*, 46 F. Supp. 2d 1340, 1350-51 (N.D. Ga. 1999) (supervisor's conduct not extreme and outrageous where he screamed at and insulted plaintiff); *Fox v. Ravinia Club, Inc.*, 202 Ga. App. 260, 261, 414 S.E.2d 243, 244 (Ga. App. 1991) (finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile, intimidating and abusive manner" and gave her false reasons for termination)).

In essence  Plaintiff's allegations amount to Green allegedly making comments about Plaintiff "hat[ing] white jews", which she contends are untrue based on the November 4, 2022 email exchange and her assistance with "memoraliz[ing] a mutual friend … who happened to be a white Jewish man." (Am. Compl., pp. 2-3.) Under Georgia law, "[d]efamatory or derogatory remarks regarding one's employment generally do not rise to this [extreme and outrageous] level." *Wainberg*, 2023 WL 3931506, *17 (citations omitted). Likewise, false accusations in the workplace are insufficient to support an IIED claim. *Id.*; *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 818-19 (2011) ("accusing [an employee] of misappropriating corporate funds and forgery, terminating his employment, and then ordering him to immediately leave the [employer's] premises" does not rise

to the level of extreme or outrageous under Georgia law.); *ITT Rayonier, Inc. v. McLaney*, 204 Ga.
App.762,  763 (March 7, 2023) ("A false accusation in connection with one's employment conduct
is undoubtedly a distressful, even horrifying and traumatizing insult, but it is a common vicissitude
of ordinary life.") (internal punctuation and citation omitted); *Crowe v. J.C. Penney, Inc.*, 177 Ga.
App. 586, 588 (1986) (affirming summary judgment based on plaintiff's failure as a matter of law to
show extreme and outrageous conduct where employer interrogated plaintiff for theft, falsely
accused the employee of theft in connection with the employment, called her a liar, slammed his
hands on the desk, and yelled at her); *Abdul-Malik v. AirTran Airways, Inc*., 297 Ga. App. 852, 857
(2009) (affirming trial court's award of summary judgment to employer on an intentional infliction
of emotional distress claim in a case in which it was alleged that the plaintiff was accused of being
a "terrorist and a liar, and told him he was guilty [of making a terroristic threat]."); *Baynes v. Philips
Med. Sys. (Cleveland), Inc*., 410 F. App'x 291, 292-93 (11th Cir. 2011) (holding that an employer's
conduct, including forcing an employee to travel for seventeen days shortly after undergoing heart
catheterization, disclosing her confidential medical information, causing anxiety attacks with false
accusations, and terminating the employee for false reasons was not extreme and outrageous).

The remainder of Plaintiff's allegations lack specificity or do not go beyond a speculative
level. *See Hajhossein v. City of Statesboro*, No. 609CV048, 2010 WL 538209, at *4 (S.D. Ga. Feb.
10. 2010) ("[The] Complaint fails to state a claim for intentional infliction of emotional distress.
To begin with, [plaintiff] crippled his chances at surviving this motion to dismiss by pleading
vague allegations without much detail regarding the [defendant's] alleged wrongful conduct. He
hinges much of his claim on his demotion (which he claims was prompted by a discriminatory
motive by the [defendant]). Even if [plaintiff] was demoted due to racial animosity, his claim does
not necessarily rise to the requisite level of outrageousness.").

<div align="center">17</div>

9715683v1

For all of these reasons, the Amended Complaint lacks sufficient factual allegations to assert a claim for intentional infliction of emotional distress.

### D.   Plaintiff Fails to State a Claim for False Imprisonment.

Under Georgia law, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." *Ferrell v. Mikula*, 295 Ga. App. 326, 329, 672 S.E.2d 7, 10 (2008) (quoting O.C.G.A. § 51–7–20). The essential elements for false imprisonment are "a detention of the person of another for any length of time, and the unlawfulness of that detention." *Smith v. Wal-Mart Stores E., LP*, 330 Ga. App. 340, 343, 765 S.E.2d 518, 521-522 (2014) (citations omitted). "A detention need not consist of physical restraint, but may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries." *Id*. (quoting *Fields v. Kroger Co.*, 202 Ga. App. 475, 414 S.E.2d 703 (1992)). The allegations in the Amended Complaint, which are largely unchanged from the original Complaint as to this claim, do not come close to asserting a viable claim for false imprisonment.

Plaintiff's false imprisonment claim fails because the Amended Complaint is utterly devoid of any allegations that Plaintiff reasonably feared Green would use force if Plaintiff did not comply. Plaintiff alleges after being "summoned" to his office, Green "securely locked the door using a button underneath his desk." (Am. Compl., pp. 2-3; Compl. ¶ 5.) Plaintiff further alleges that Green then began to "verbally attack" her while she was "forc[ed] to remain in his office." (Am. Compl., p. 3; Compl., ¶¶ 5, 27.) Plaintiff contends she "asked several times if she can be excused, …[and] Green finally pushed the button underneath his desk so that Plaintiff could leave." (Am. Compl., p. 3; Compl., ¶¶ 5, 8.) Nowhere in her Amended Complaint does Plaintiff

allege that she had a reasonable apprehension that force would be used if she failed to remain in Green's office. In fact, in her prior Complaint, Plaintiff explicitly alleges that Green's status as her employer, not any fear he would use force against her, was the reason for her alleged unlawful detention, and in her Amended Complaint Plaintiff provides no further allegations on this point. (Am. Compl, p. 3; Compl., ¶ 27); *see Hill v. Macrina*, No. 1:16-CV-16-RWS, 2017 WL 5203053, at *5 (N.D. Ga. June 26, 2017) (holding that the employees' false imprisonment claim must fail because they had no reasonable fear that force would be used to keep them from leaving). To the extent that Plaintiff is alleging that she feared for her employment, such an assertion cannot support a claim for false imprisonment. *See Shannon v. Off. Max N. Am., Inc.*, 291 Ga. App. 834, 835–36, 662 S.E.2d 885, 888 (2008) (holding that the threat of being terminated from at-will employment cannot constitute the basis of a false imprisonment claim); *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 161, 561 S.E.2d 483, 489 (2002) (same). Accordingly, Plaintiff's claim must fail.

For all of these reasons, Defendants move this court to dismiss all of Plaintiff's claims with prejudice.

## VI. <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, Defendants respectfully request that Plaintiff's Motion to Amend be denied; Defendants' Motion to Dismiss Plaintiff's original Complaint be granted and Plaintiff's Complaint be dismissed in its entirety, with prejudice; Plaintiff's First Amended Complaint be dismissed in its entirety, with prejudice; that a judgment be entered in favor of Defendants; and that Plaintiff be required to pay Defendants' attorneys' fees incurred in defending against this frivolous lawsuit.

Respectfully submitted, this 21st day of June, 2023.

<div align="right">

*s/ Darrick L. McDuffie*
Darrick L. McDuffie

</div>

<div align="center">19</div>

Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

9715683v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2023, I served the foregoing *DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT* upon *pro se* Plaintiff via U.S. Mail, first-class postage prepaid, addressed as follows and via email delivery:

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

21

9715683v1

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV001656**
**7/23/2023 7:21 PM**
**Donald Talley, Clerk**
**Civil Division**

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| SHANNON S. MOULTRIE | ) |
| | ) |
| Plaintiff, | ) |
| | )    Civil Action No. 23EV001656 |
| v. | ) |
| | ) |
| WILLIS BRYANT GREEN, III and | ) |
| LAW OFFICE OF W. BRYANT | ) |
| GREEN, III, P.C., | ) |

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW Plaintiff, Shannon S. Moultrie, respectfully moves the Court pursuant to O.C.G.A. §9-11-21, for leave to file a SECOND AMENDED COMPLAINT, a copy of which is attached hereto. The new complaint maintains the counts and allegations against the same defendants from the original complaint, but accounts for the significant factual and procedural developments that have occurred since the original complaint was filed. Accordingly, Plaintiff seeks the Court's leave to amend, which should be granted for the reasons set forth below.

## STATEMENT OF FACTS

On March 20, 2023, Plaintiff filed her Original Complaint against Defendants, alleging negligent infliction of emotional distress, intentional infliction of mental suffering, intentional infliction of emotional distress and false imprisonment. On May 11, 2023, Defendants filed their Answer, Discovery Responses and Motion to Dismiss with Prejudice. On June 5, 2023, Plaintiff filed her Response in Opposition to Defendants' Motion to Dismiss with Prejudice, and Motion to Amend her Complaint. And now Plaintiff files her Motion for Leave to File a Second Amended Complaint. At this time discovery is ongoing.

## <u>ARGUMENT</u>

**PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER O.C.G.A. §9-11-15**

Pursuant to O.C.G.A. §9-11-15(a), "Leave shall be freely given when justice so requires." The decision whether to grant leave to amend a pleading is within the sound discretion of the court, but as the courts has aptly recognized, "this discretion is strictly circumscribed by the proviso that 'leave [should] be freely given when justice so requires." Therefore, a justifying reason must be apparent for denial of a motion to amend. "Unless a substantial reason exists to deny leave to amend, the discretion of the court is not broad enough to permit denial."

In light of the significant factual and procedural developments since Plaintiffs filed suit on March 20, 2023, good cause for amending the Complaint is immediately apparent. Defendants will in no way be prejudiced if the changes are allowed at this point in the proceedings. Furthermore, there is no apparent reason for denying the motion to amend, as none of the factors that may militate against it is present in this case. Consistent with the liberal standard that applies to motions to amend under O.C.G.A. §9-11-15(a), the Court should therefore grant Plaintiff's motion.

The interests of justice and judicial economy will undoubtedly be served by having all allegations properly before the Court as set forth in Plaintiff's proposed amended complaint. The amendments are narrowly tailored to reflect the present circumstances and Plaintiff's present understanding of the case. In so doing, the action can more effectively proceed on the merits.

Defendants will not suffer any undue prejudice by virtue of the Court's allowance of the proposed amendment. The determination of whether prejudice would occur often includes assessing whether allowing an amendment would result in additional discovery, cost, and

preparation to defend against new facts or new theories. Defendants cannot be prejudiced, or caught off guard, by the new facts alleged by Plaintiff in the proposed amendment, since the Defendants have first-hand knowledge of the allegations as they were provided to them by the Equal Employment Opportunity Commission ("EEOC").

Finally, Plaintiff's request to file a second amended complaint is not futile as Plaintiff has alleged sufficient facts to state a claim for relief that is facially plausible. Where the proposed amendment is not clearly futile, denying leave to amend on this ground is highly improper. Accordingly, in the interest of justice, this Court should grant Plaintiff's motion for leave to file the proposed amended complaint. The grant of this motion is particularly appropriate here, given the clear absence of any substantial reason to deny leave to amend.

## CONCLUSION

For the reasons identified above, Plaintiff requests that the Court grant her motion for leave to file her second amended complaint.

Respectfully submitted,

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie
Pro Se

## CERTIFICATE OF SERVICE

This is to hereby certify that I have this day served the foregoing **PLAINTIFF'S RESPONSE IN**

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** upon party or counsel of record by

electronic filing, which will automatically serve:

<div align="center">

Sarah M. Phaff
Constangy, Brooks, Smith & Prophet, LLP
230 Peachtree Street, N.W.
Suite 2400
Atlanta, Georgia 30303
sphaff@constangy.com

</div>

Respectfully submitted, this 23rd day of July, 2023.


Respectfully submitted,

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie
Pro Se

**IN THE STATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| SHANNON S. MOULTRIE | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 23EV001656 |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIS BRYANT GREEN, III and | ) | |
| LAW OFFICE OF W. BRYANT | ) | |
| GREEN, III, P.C. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**COMES NOW** Plaintiff, Shannon S. Moultrie in the above-styled action, and hereby

files Plaintiff's First Amended Complaint against the Defendants and shows this Honorable

Court as follows:

**PARTIES AND JURISDICTION**

1.

Plaintiff was at all times relevant to the above-referenced matter a citizen and

domiciliary of the State of Georgia. Plaintiff filed a timely charge with the United States Equal

Employment Opportunity Commission ("EEOC") (Charge No. 410-2023-02699) on or about

December 29, 2022. Plaintiff alleged a pattern of sexual harassment over three years of

employment with the Law Office of W. Bryant Green, III, P.C., along with complaints of racial

and religious attacks, and false allegations against her in retaliation of her rejecting sexual

advances by the owner and managing attorney Wills Bryant Green, III who's behavior ultimately

forced the termination of Plaintiff's employment with the Law Office of W. Bryant Green.

Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the Americans with Disabilities Act

(ADA), the Genetic Information Nondiscrimination Act (GINA) the EEOC investigated the

charge and found reasonable cause to believe that Plaintiff was discriminated  against because of her sex, age, race and religion and denied safe permanent employment in retaliation for engaging in a protected activity. On January 6, 2023, the EEOC granted Plaintiff's right to sue and provided her a Right to Sue Letter, which resulted in the present action. ***See Attached, Exhibit A***.

<div align="center">2.</div>

Defendant Willis Bryant Green, III (hereinafter also referred to as "Defendant Green") is a Georgia resident and resides at 6148 Traveler Ct, Stone Mountain, Georgia 30087 and can be served at this address. Defendant Green was successfully served at this address.

<div align="center">3.</div>

Defendant Law Office of W. Bryant Green, III, P.C. (hereinafter also referred to as "WBGPC") is a Georgia corporation located at 303 Peachtree Street, N.E., Ste 4100, Atlanta, Georgia 30308, whose registered agent is Willis Bryant Green, III at 4070 Bowie Court, Clarkston, Dekalb County, Georgia, 30021 and can be served at either address. Defendant Law Office of W. Bryant Green was successfully served at this address.

<div align="center">4.</div>

All conditions precedent to this lawsuit have been performed or have occurred.

<div align="center">**FACTUAL BACKGROUND AND ALLEGATIONS**</div>

<div align="center">5.</div>

On or about December 20, 2019,  Plaintiff was hired as a litigation supervisor / litigation paralegal. Throughout her permanent employment, Plaintiff was advised by Defendant Green that her work performance was excellent, and that she was the firm's "best hire." Plaintiff's work performance was reflective in her pay, as she received two pay increases during her time of

employment with the Law Office of W. Bryant Green, III, P.C. Defendant Green regularly told Plaintiff's coworker that she was a good, hardworking employee.

6.

The Law Office of W. Bryant Green, III, P.C. did not have a human resource department or an individual to make formal complaints to outside of himself. In fact, Defendant Green regularly announced that he was the only authority in the firm. Additionally, Defendant Green frequently announced that if he ever had an issue in his office, he had criminal minded people that he has helped in the past to resolve his issues for him.

7.

Defendant Green engaged in conduct toward Plaintiff in violation of  Title VII, the ADA and/or GINA by Defendant Green's unwelcome and uninvited sexual advances, remarks, comments and conduct to Plaintiff, unlawful detainment, and attacks on Plaintiff's race and religion.

8.

This case arose out of a pattern of events of sexual harassment, intimidation, racial and religious attacks, false imprisonment and violation of privacy inflicted upon Plaintiff by Defendant Green while Plaintiff was employed with the Law Office of W. Bryant Green, III, P.C.  Plaintiff sustained personal injuries and approached the Equal Employment Opportunity Commission ("EEOC") with her complaint and charges with supporting documentation of each charge. On January 6, 2023, the EEOC granted Plaintiff's right to sue and provided her a Right to Sue Letter, which resulted in the present action. ***See Attached, Exhibit A***.

9.

As noted on the EEOC Right to Sue Letter, within seven days of the January 6, 2023 decision, the EEOC served upon Defendants Plaintiff's complaint and charges with supporting documentation of claims of sexual harassment, intimidation, racial, religious attacks, false allegations, false imprisonment and invasion of privacy. ***See Attached, Exhibit A***.

10.

On or about, and throughout, December 2019- November 2022,, Defendant Green made multiple unwelcomed sexual advances and lude and sexual comments toward Plaintiff which were met with a resounding no each time. Repeatedly, Defendant Green asked Plaintiff if her prior employer tried to have sex with her. Several times Defendant Green asked Plaintiff if she would like for him to take care of her financially, and buy her designer bags and watches. Defendant Green asked Plaintiff to come to his house and swim with him in his swimming pool. Defendant Green then texted Plaintiff and asked her if she wanted to be one of his women. ***See Attached, Exhibit B.***

11.

After years of rejecting Defendant Green's unwelcomed sexual advances lude comments, and indecent proposals, on or about November 1, 2022, Defendant Green joined Plaintiff's supervising attorney for alcoholic drinks and lunch, when Defendant Green shared his plan to falsely accuse Plaintiff of being anti-semitic and being a part of a black-jew malicia, Defendant Green told the colleague that he would need his help to cover this attack by falsely claiming that Plaintiff's work was substandard. Plaintiff's supervising attorney refused to participate, and later that day, and for several days after, told Plaintiff what Defendant Green said and was planning to do to harm her.

12.

After drinking alcohol Defendant Green summoned for Plaintiff to come into his office, where Green securely locked the door using a button underneath his desk, forcing Plaintiff to remain in his office and preventing her from leaving. Defendant Green was intoxicated and belligerent as he began to verbally attack and sexually harass Plaintiff. Amongst several things, Defendant Green accused Plaintiff of being "a part of a black Jew militia that is speaking out against white-jews on television!" During this attack, Plaintiff asked several times if she could be excused, and Defendant Green did not release the button so that Plaintiff could leave. When Defendant Green finally pushed the button underneath his desk, releasing the lock on his door, to allow Plaintiff to leave, Defendant Green said, "I think you hate white-jews, but I love looking at your butt when you walk away." The physically painful anxiety and fear overtook Plaintiff so much that she immediately went to her office to collect her belongings and left. Plaintiff's supervising attorney texted her, asking her to call him. When she did, Plaintiff's supervising attorney told her that while out having several drinks of alcohol during lunch, Defendant Green told him he was about to attack her and falsely accuse, and that he [the supervising attorney] was trying to save Plaintiff before Defendant Green called her in his office.

13.

On November 4, 2022, Defendant Green doubled down on his false accusations when he singled Plaintiff out in the entire office and sent her an email saying, "Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." *See Attached, Exhibit C.* When Plaintiff responded by asking, "Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that." *See Attached, Exhibit D*. Defendant Green replied by saying, "You're a valued employee and I'm glad we do not have a problem here about such things." *See Attached, Exhibit E*. Defendant Green's intentional and abusive behavior

made the work place hostile. Defendant Green could not provide a reason for his behavior. In fact, Defendant Green had knowledge that Plaintiff didn't hate white-jews, as they together just one month or so prior memorialized a mutual friend and colleague who happened to be a white jewish man. In fact, while assisting with the death arrangements for their friend, Defendant Green texted Plaintiff and asked if she wanted to be one of his women. ***See Attached, Exhibit B.***

14.

Days and weeks after the attack, employees, including Plaintiff's supervising attorney, came to Plaintiff to see how she was feeling after what Defendant Green had done. One attorney quit, and Defendant Green asked him if it was because of what he did to Plaintiff, and the attorney said, yes. Defendant Green intentionally created an environment that made it impossible for Plaintiff to work in.

After years of rejecting Defendant Green's sexual advances and comments, Defendant Green singled Plaintiff out with false anti-semitic accusations and tried to devise a plan with others to fire her. Defendant Green didn't send a company-wide email with his threat and warning, without cause, he only sent it to Plaintiff.

15.

As a direct result of Defendant Willis Bryant Green's behavior, Plaintiff suffered extreme, stress, fear, anxiety, sleep deprivation, physical pain in her neck and shoulder so bad that she began experiencing pain on the right side of her body that rendered it difficult to get out of bed; numbness on the right side of her face, and pain in her right shoulder, neck and arms. The symptoms were so severe that Plaintiff thought she was having a stroke, so she immediately sought medical care. Additionally, Plaintiff suffered embarrassment and humiliation. Plaintiff was told that due to what Defendant Bryant Green had done to her, Plaintiff's stress and anxiety

level was so high that for the first time in her life she was suffering from hypertension. Due to

Plaintiff's symptoms and medical results, Plaintiff was prescribed immediate time off work and

to see a phycologist.

## CLAIMS FOR RELIEF

## COUNT 1 – TITLE VII, 42 U.S.C. §§ 2000e - RETALIATION FOR REJECTING SEXUAL ADVANCES AND FALSE ALLEGATION

16.

Plaintiff repeats and re-alleges each and every allegation contained in previous

Paragraphs as if set forth at length herein.

17.

Defendant engaged in an unlawful employment practice in violation of Title VII when it

devised a plan to terminate, bully and harm Plaintiff because she repeatedly rejected his sexual

advances.

18.

After having his sexual advances repeatedly rejected by Plaintiff, Defendant Green

solicited the help of a colleague to fabricate a story of anti-semitism and poor work performance

against Plaintiff.

19.

As a result of Defendant's unlawful sexual advances and comments, false allegations and

unlawfully imprisoning Plaintiff in Defendant's office to aggressively spew racial and religious

hate, and soliciting the help of other employees to fabricate Plaintiff's work performance to force

her out of her permanent employment by making the work environment unsafe and scarry,

Plaintiff suffered physical and emotional harm including, but not limited to, pain and suffering, emotional distress, anxiety, stress, and loss of enjoyment of life.

## COUNT 2 - TITLE VII, 42 U.S.C. §§ 2000e - HOSTILE WORK ENVIRONMENT AND SEX DISCRIMINATION

20.

Plaintiff repeats and re-alleges each and every allegation contained in previous Paragraphs as if set forth at length herein.

21.

Due to Defendant Green's repeated unwanted sexual advances, comments and texting, bullying, verbal attacks, and false imprisonment, the work environment was offensive. Defendant Green sexually harassed Plaintiff because she was a female/woman. Defendant Green's conduct was so severe and pervasive, that there is a basis for liability against Defendants.

## COUNT 3 - TITLE VII, 42 U.S.C. §§ 2000 - RETALIATORY

22.

Plaintiff repeats and re-alleges each and every allegation contained in previous Paragraphs as if set forth at length herein.

23.

Defendant engaged in an unlawful employment practice in violation of Title VII when repeatedly sexually harassed Plaintiff and then retaliated against her for rejecting him by

devising a plan to falsely imprison Plaintiff in his office, under a drunkin rage, verbally and aggressively attack Plaintiff about her race and religion.

24.

At the time Plaintiff was forced to terminate her employment due to Defendant Green's sexual harassment, race and religious attacks, and false imprisonment and making the office unsafe for her to be in. Defendant gave Plaintiff no reason for singling her out for his attacks and sexual harassment.

25.

As a result of Defendants Green's unlawful sexually harassment and retaliation, Plaintiff incurred damages including, but not limited to, lost income.

26.

As a result of Defendant Green's unlawful sexual harassment and retaliation, Plaintiff suffered physical and emotional harm including, but not limited to, neck and shoulder pain, pain and suffering, emotional distress, anxiety, stress, and loss of enjoyment of life.


**COUNT 4 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

27.

Plaintiff repeats and re-alleges each and every allegation contained in previous Paragraphs as if set forth at length herein.

28.

Plaintiff is a black – African America female/woman in her forties. Plaintiff was subjected to unwelcome verbal or physical conduct by Defendant Green. The harassment complained of was based on statutorily protected classes; the harassment had the purpose or

effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment; and there is a basis for imputing liability to Defendants.

29.

Defendant Green's behavior of sexual harassment and attacks were so terrifying and/or insulting as naturally to humiliate, embarrass, and/or frighten Plaintiff and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.

30.

Plaintiff sustained a physical impact due to Defendant Bryant Greens negligence.

31.

The physical impact caused by Defendant Bryant Green caused Plaintiff's injuries.

32.

The physical injuries caused by Defendant Bryant Green caused Plaintiff's emotional distress.

33.

Defendant Bryant Green's negligence is the proximate cause of the subject incident and Plaintiff's resulting injuries.

34.

Defendant Bryant Green's conduct was found to be so egregious that the U.S. Equal Employment Opportunity Commission approved Plaintiff's right to sue Defendants.

35.

Plaintiff reserves the right to amend her Complaint to add any other policies, procedures and laws that Defendant Bryant Green may have violated which may be determined during the course of discovery.

## COUNT 5 – INTENTIONAL INFLICTION OF EMOTION DISTRESS

36.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

37.

Defendant Green's behavior of sexual harassment and attacks were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

38.

Defendant Bryant Green's conduct against Plaintiff was intentional and/or reckless.

39.

Defendant Bryant Green's conduct against Plaintiff was extreme and outrageous.

40.

Defendant Bryant Green's conduct is the proximate cause of Plaintiff's emotional distress.

41.

The emotional distress that Defendant Bryant Green caused Plaintiff was so extreme in degree, as to it went beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

42.

Defendant Bryant Green's conduct was found to be so egregious that the U.S. Equal Employment Opportunity Commission approved Plaintiff's right to sue Defendants.

43.

Plaintiff reserves the right to amend her Complaint to add any other policies, procedures and laws that Defendant Bryant Green may have violated which may be determined during the course of discovery.

## COUNT 6 – INVASION OF PRIVACY

44.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

45.

Defendant Green regularly and repeatedly, over a three years, sexualized Plaintiff to other employees and to her directly. Additionally, Defendant Green intentionally presented Plaintiff in a false light by claiming she hated white-jews and intentionally lying to others by saying she was in a black-jew militia group. False accusations that not only harmed her instantly, but had the potential to hender future employment.

46.

Defendant Green intruded upon Plaintiff seclusion or solitude, and into her private affairs; and publicity that places the employee in a false light in the public eye.

47.

Defendant Green's negligence and behavior is the proximate cause of the subject incident and Plaintiff's resulting injuries.

## COUNT 4 FALSE IMPRISONMENT

### 48.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

### 49.

Defendant Green engaged in the act of restraint of Plaintiff which confound Plaintiff in a restricted area. Defendant Green unlawfully detained Plaintiff and deprived her of her personal liberty. The restraint was against Plaintiff's will and was accomplished by force or fear and occurred by physical force and words or threats that produce a reasonable fear that physical force will be used against Plaintiff.

### 50.

Defendant Bryant Green's negligence and behavior is the proximate cause of the subject incident and Plaintiff's resulting injuries.

## DAMAGES

### 51.

Plaintiff repeats and re-alleges each and every allegation contained in previous Counts and Paragraphs as if set forth at length herein.

### 52.

Plaintiff was physically injured and has experience physical and emotional pain and suffering, and lost wages as a direct and proximate result of the subject incident.

### 53.

Plaintiff has incurred special damages in excess of $15,000.00 as a direct and proximate result of the subject incident, plus additional special damages as may arise prior to trial.

54.

Plaintiff is entitled to an award of general damages from Defendants.

55.

Plaintiff is entitled to an award of special damages from Defendants.

56.

Plaintiff;s injuries and damages resulting from the subject incident were directly and proximately caused by the intentional and negligence of Defendants.

**TRIAL BY JURY DEMANDED ON ALL COUNTS.**

**WHEREFORE,** Plaintiff respectfully prays:

a) That Summons issue requiring the above-named Defendants to answer each allegation of this Second Amended Complaint within the time provided by law;

b) That Plaintiff has judgment against Defendants in such an amount to compensate Plaintiff for Plaintiff's past, present, and future injuries, and general damages resulting from subject incident and Plaintiff's special damages;

c) That Plaintiff recover the full value of past and future medical expenses and past and future lost wages in an amount to be proven at trial;

d) That Plaintiff recover for mental and physical pain and suffering and emotional distress in an amount to be determined by the enlightened conscience of the jury;

e) That all issues be tried before a jury;

f) That Plaintiff is awarded attorney's fees and expenses of litigation;

g) That all costs be cast against Defendants; and,

h)  For any other relief this Honorable Court deems just and proper.


This the 23rd day of July, 2023.


Respectfully submitted,

_/s/ Shannon S. Moultrie_
Shannon S. Moultrie
Pro Se

EXHIBIT A

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Shannon Moultrie<br>540 Cornwallis Way<br>Fayetteville, GA 30214 | From: | Atlanta District Office<br>100 Alabama Street, SW, Suite 4R30<br>Atlanta, GA 30303 |

| EEOC Charge No.<br>**410-2023-02699** | EEOC Representative<br>**RIVAH MILLS,**<br>**Federal Investigator** | Telephone No.<br>**470-531-4859** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

    The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA):* You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. *This means that back pay due for any violations that occurred* <u>more than 2 years (3 years)</u> *before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

I. Daniel-Edward Anance'

Digitally signed by I.
Daniel-Edward Anance'
Date: 2023.01.06
15:22:54 -05'00'

*I. Daniel-Edward Anance'*                    *For,*

**Darrell Graham**
**District Director**

Enclosures(s)

cc:    **Willis B Green**
      **Law Office of W. Bryant Green, III, PC**
      **303 Peachtree Street Suite 4100**
      **Atlanta, GA 30308**
      **(404) 522-5330**

      **Shannon Moultrie**
      **540 Cornwallis Way**
      **Fayetteville, GA 30214**
      **(404) 202-2692**

8:30



W. Bryant >

I'm not nice

You want to be a girl of mine? You got one minute

Yes you are

You are nice

No I am not

Did they log you out yet?

I think you're terrific then would have picked you

I believe it logged me out. I closed out of the entire browser.

Aww thanks Boss

Wed, Sep 28 at 9:02 PM

Thank you for speaking with me. For my mental health, I am listening to Vintage Marvin Gaye

It was my pleasure. Thank you for sharing. Marvin Gaye is classic.

had hate in my heart for white Jewish people.

When you called me in your office and accused me of being "a part of the black jewish movement that hates white jews", I was devastated. When you said, "you black jews think you're the real jews and you hate my people", I was crushed. On every holy day, me, you and Michael wished each other well. I appreciated and valued that connection between the three of us, and I thought you did too.

Unapologetically, I am a Jewish woman, who happens to also be black.  I deserve to have confidence in our faith, just as you do. I did not deserve what you said and did to me.

I am hoping that we can resolve this in a professional manner and move forward.  I would really appreciate an apology from you for your actions, and assurance that this won't happen again.

•••



**WBG** 11:12 AM

to me ˅

Do not misconstrue our conversation.  Be very clear, I do not want hate in my office.  I am very sensitive about anti-semitism.

To the extent we have miscommunicated, I apologize for my part.

•••

EXHIBIT D

# Sensitive Matter ⟩ Inbox

**S**   **me**   11:03 AM
Hi, Bryant, Since Tuesday, I've been devastated. I cann...

**B**   **WBG**   11:12 AM
Do not misconstrue our conversation. Be very clear, I d...

**S**   **me**   11:34 AM
to WBG ⌄

Are you denying you said those things to me? Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that.

**B**   **WBG**   11:43 AM
to me ⌄

You misunderstood our conversation. My recollection of the conversation is very different. You're a valued employee and I'm glad we do not have a problem here about such things.

**S**   **me**   11:54 AM
to WBG ⌄

Thank you for saying I'm a valued employee. However, I didn't misunderstand the conversation at all.

↩ Reply      �forward Forward

12:01

# Sensitive Matter ⟩ Inbox

**S** · **me** 11:03 AM
Hi, Bryant, Since Tuesday, I've been devastated. I cann…

**B** · **WBG** 11:12 AM
Do not misconstrue our conversation. Be very clear, I d…

**S** · **me** 11:34 AM
to WBG ⌄

Are you denying you said those things to me? Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that.

…

**B** · **WBG** 11:43 AM
to me ⌄

You misunderstood our conversation.  My recollection of the conversation is very different. You're a valued employee and I'm glad we do not have a problem here about such things.

…

**S** · **me** 11:54 AM
to WBG ⌄

Thank you for saying I'm a valued employee. However, I didn't misunderstand the conversation at all.

…

↩ Reply          ↪ Forward

As you may have noticed, I've been working remotely. I cannot express to you how it felt and continues to feel after being verbally attacked at work for simply being black and jew. I've never hidden my faith because it is literally everything to me.

Going to the office for any employee should be safe and without racial and/or religious prejudice and bias. What happened to me is not small, and should never happen to anyone.

Thank you for your understanding as I continue to work remotely.

• • •

---

 **Anthony Showell**  10:00 AM
to me, Semra, Clarence, Eugene ⌄

No worries Shan.

Best Regards,

Anthony Showell

Office (404) 522-5330
Fax (404) 577-0860


Law Office of W. Bryant Green, III
303 Peachtree Street, Suite 4100
Atlanta, GA 30308

• • •

---

 **Clarence Hollins**  10:09 AM
to me ⌄

Take all the time you need and please let me know if there is anything I can do.

• • •

# Michael's Write ups ▸ Inbox

**WBG** Sep 16
to Lorraine, JEFF, Trishb211, Shannon ⌄

Hey guys,

Again, I am sorry for your loss. I have attached the write up from the legal paper and the Atlanta Journal and Constitution. I am doing my best to make arrangements. I have copied one of our staff, who has been helping a good deal. Her name is Shannon Moultrie.

I spoke with Jeffrey and am trying to nail down which of the weekends (9/23 or 9/30) works best, so that we can secure the venue that he wanted.

I hope that you can forward the writeups to other members of the family.

Many of his friends have reached out all week. I am getting where I can't remember everything.

Please take care and respond soon. Thank you.

Bryant

• • •

| Daily Report - Michael.pdf | AJC Obit - Michael Haupt... |
|---|---|
| 📕 PDF | 📕 PDF |

Lorraine Monteiro Sep 16
Hi Bryant! Thank you for these articles. We will be sure...


 **WBG** Sep 14
to Leslie, Bryant, bcc: shannon ⌄



This is what I have got.

•••

Obituary of
Michael Raymo...

 **W** Doc

 **WBG** Sep 14
to Shannon ⌄

Slight revision.

State Court of Fulton County
**E-FILED**
23EV001656
7/23/2023 7:21 PM
Donald Talley, Clerk
Civil Division

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

SHANNON S. MOULTRIE              )
                                )
          Plaintiff,            )
                                )        Civil Action No. 23EV001656
     v.                         )
                                )
WILLIS BRYANT GREEN, III and    )
LAW OFFICE OF W. BRYANT         )
GREEN, III, P.C.,               )

**PLAINTIFF'S  REPLY IN OPPOSITION TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND, AND IN THE ALTERNATIVE MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, AND IN THE ALTERNATIVE PLAINTIFF'S MOTION TO FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

COMES NOW, Shannon S. Moultrie (hereinafter "Plaintiff"), Plaintiff in the above referenced case, and files this Response in Opposition to Defendants' Motion to Dismiss and Brief in Support thereof and shows the Court as follows:

**INTRODUCTION**

1.

On or about December 20, 2019,  Plaintiff was hired as a litigation supervisor / litigation paralegal. Throughout her permanent employment, Plaintiff was advised by Defendant Green that her work performance was excellent, and that she was the firm's "best hire." Plaintiff's work performance was reflective in her pay, as she received two pay increases during her time of employment with the Law Office of W. Bryant Green, III, P.C. Defendant Green regularly told Plaintiff's coworker that she was a good, hardworking employee.

2.

The Law Office of W. Bryant Green, III, P.C. did not have a human resource department or an individual to make formal complaints to outside of himself. In fact, Defendant Green regularly announced that he was the only authority in the firm. Additionally, Defendant Green frequently announced that if he ever had an issue in his office, he had criminal minded people that he has helped in the past to resolve his issues for him.

3.

Defendant Green engaged in conduct toward Plaintiff in violation of Title VII, the ADA and/or GINA by Defendant Green's unwelcome and uninvited sexual advances, remarks, comments and conduct to Plaintiff, unlawful detainment, and attacks on Plaintiff's race and religion.

4.

This case arose out of a pattern of events of sexual harassment, intimidation, racial and religious attacks, false imprisonment and violation of privacy inflicted upon Plaintiff by Defendant Green while Plaintiff was employed with the Law Office of W. Bryant Green, III, P.C. Plaintiff sustained personal injuries and approached the Equal Employment Opportunity Commission ("EEOC") with her complaint and charges with supporting documentation of each charge. On January 6, 2023, the EEOC granted Plaintiff's right to sue and provided her a Right to Sue Letter, which resulted in the present action. ***See Attached, Exhibit A***.

5.

As noted on the EEOC Right to Sue Letter, within seven days of the January 6, 2023 decision, the EEOC served upon Defendants Plaintiff's complaint and charges with supporting documentation of claims of sexual harassment, intimidation, racial, religious attacks, false allegations, false imprisonment and invasion of privacy. ***See Attached, Exhibit A***.

6.

On or about, and throughout, December 2019- November 2022,, Defendant Green made multiple unwelcomed sexual advances and lude and sexual comments toward Plaintiff which were met with a resounding no each time. Repeatedly, Defendant Green asked Plaintiff if her prior employer tried to have sex with her. Several times Defendant Green asked Plaintiff if she would like for him to take care of her financially, and buy her designer bags and watches. Defendant Green asked Plaintiff to come to his house and swim with him in his swimming pool. Defendant Green then texted Plaintiff and asked her if she wanted to be one of his women. ***See Attached, Exhibit B.***

7.

After years of rejecting Defendant Green's unwelcomed sexual advances lude comments, and indecent proposals, on or about November 1, 2022, Defendant Green joined Plaintiff's supervising attorney for alcoholic drinks and lunch, when Defendant Green shared his plan to falsely accuse Plaintiff of being anti-semitic and being a part of a black-jew malicia, Defendant Green told the colleague that he would need his help to cover this attack by falsely claiming that Plaintiff's work was substandard. Plaintiff's supervising attorney refused to participate, and later that day, and for several days after, told Plaintiff what Defendant Green said and was planning to do to harm her.

8.

After drinking alcohol Defendant Green summoned for Plaintiff to come into his office, where Green securely locked the door using a button underneath his desk, forcing Plaintiff to remain in his office and preventing her from leaving. Defendant Green was intoxicated and belligerent as he began to verbally attack and sexually harass Plaintiff. Amongst several things,

Defendant Green accused Plaintiff of being "a part of a black Jew militia that is speaking out against white-jews on television!" During this attack, Plaintiff asked several times if she could be excused, and Defendant Green did not release the button so that Plaintiff could leave. When Defendant Green finally pushed the button underneath his desk, releasing the lock on his door, to allow Plaintiff to leave, Defendant Green said, "I think you hate white-jews, but I love looking at your butt when you walk away." The physically painful anxiety and fear overtook Plaintiff so much that she immediately went to her office to collect her belongings and left. Plaintiff's supervising attorney texted her, asking her to call him. When she did, Plaintiff's supervising attorney told her that while out having several drinks of alcohol during lunch, Defendant Green told him he was about to attack her and falsely accuse, and that he [the supervising attorney] was trying to save Plaintiff before Defendant Green called her in his office.

9.

On November 4, 2022, Defendant Green doubled down on his false accusations when he singled Plaintiff out in the entire office and sent her an email saying, "Be very clear, I do not want hate in my office. I am very sensitive about anti-semitism." ***See Attached, Exhibit C.*** When Plaintiff responded by asking, "Are you implying that I brought anti-semitism into your office? If so, be specific as to when I've ever done that." ***See Attached, Exhibit D***. Defendant Green replied by saying, "You're a valued employee and I'm glad we do not have a problem here about such things." ***See Attached, Exhibit E***. Defendant Green's intentional and abusive behavior made the work place hostile. Defendant Green could not provide a reason for his behavior. In fact, Defendant Green had knowledge that Plaintiff didn't hate white-jews, as they together just one month or so prior memorialized a mutual friend and colleague who happened to be a white

jewish man. In fact, while assisting with the death arrangements for their friend, Defendant

Green texted Plaintiff and asked if she wanted to be one of his women.  ***See Attached, Exhibit B.***

<div align="center">10.</div>

Days and weeks after the attack, employees, including Plaintiff's supervising attorney,

came to Plaintiff to see how she was feeling after what Defendant Green had done. One attorney

quit, and Defendant Green asked him if it was because of what he did to Plaintiff, and the

attorney said, yes. Defendant Green intentionally created an environment that made it impossible

for Plaintiff to work in.

After years of rejecting Defendant Green's sexual advances and comments, Defendant

Green singled Plaintiff out with false anti-semitic accusations and tried to devise a plan with

others to fire her. Defendant Green didn't send a company-wide email with his threat and

warning, without cause, he only sent it to Plaintiff.

<div align="center">11.</div>

As a direct result of Defendant Willis Bryant Green's behavior, Plaintiff suffered

extreme, stress, fear, anxiety, sleep deprivation, physical pain in her neck and shoulder so bad

that she began experiencing pain on the right side of her body that rendered it difficult to get out

of bed; numbness on the right side of her face, and pain in her right shoulder, neck and arms. The

symptoms were so severe that Plaintiff thought she was having a stroke, so she immediately

sought medical care. Additionally, Plaintiff suffered embarrassment and humiliation. Plaintiff

was told that due to what Defendant Bryant Green had done to her, Plaintiff's stress and anxiety

level was so high that for the first time in her life she was suffering from hypertension. Due to

Plaintiff's symptoms and medical results, Plaintiff was prescribed immediate time off work and

to see a phycologist.

## II. **STANDARD FOR DISMISSAL**

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under O.C.G.A. § 9-11-12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from the complaint, E.g., <u>Jackson v. Okaloosa County</u>, 21 F.3d 1531, 1534 (11th Cir. 1994); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. <u>GSW, Inc. v. Long County</u>, 999 F.2nd 1508, 1510 (11th Cir.1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. <u>Bell Atl.Corp. v. Twombly</u>, 127, 127 S.Ct.1955, 1969 (2007).

## III. **ARGUMENT AND CITATION OF AUTHORITY**

The impact rule states, "In a claim concerning negligent conduct, a recovery for emotional distress is allowed where there is some impact on the plaintiff, and that impact must be physical." <u>Lee v. State Farm Mut. Ins. Co. et al.</u>, 272 Ga. 583, 584 (2000). "...this Court recognizes that the policy concerns behind our traditional impact rule are not extant in this case, and there is no meritorious reason in an appropriate and compelling situation to refuse to extend recovery for emotional distress to an incident in which the distress is the result of physical injury negligently inflicted on another." "…The circumstances of this case is such an appropriate and compelling situation." "...it will be for the finder of fact to determine…" <u>Lee v. State Farm Mut. Ins. Co. et al.</u>, 272 Ga. 583, 584 (2000).

In the present case, after repeatedly and relentlessly sexually harassing Plaintiff for three years, on November 1, 2022, Defendant Green retaliated against Plaintiff and summoned Plaintiff into his office with the intent to cause her harm, falsely accuse, attack her race and religion, and in fact he did. His intent was so clear that he told his intentions to Plaintiff's supervising attorney. When Defendant Green had Plaintiff alone, he secured the door shut with the button underneath his desk. Immediately after securing the door shut, Defendant Green began to aggressively verbally attack Plaintiff. Plaintiff is a petite woman who was alone with an intoxicated male executive, owner of the firm, being aggressive while verbally attacking her, after being sexually harassed by Defendant Green on multiple occasions, no doubt left Plaintiff helpless and in despair.

"Nevertheless, it is likewise true, as this case demonstrates, that certain conduct can support both a claim for malicious prosecution and a claim for intentional infliction of emotional distress." <u>Turnage v. Kasper</u> 307 Ga. App. 172 (Ga. Ct. App. 2010). Not only did the incident render her powerless, it immediately caused Plaintiff anxiety to the degree of physical pain, and distress as she feared for her safety, job and reputation.

Defendant Green's conduct was "so extreme in degree…beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. <u>Mayorga v. Benton</u>, at 670, 875 S.E.2nd at 913. His behavior was not "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living. Instead, his behavior was such that you could "Tell it all to "an average member of the community" and I think there is a good chance "she would exclaim, 'Outrageous!' Wilcher v. Confederate Packaging, 287 Ga. App. 451, 651 S.E.2d 790 (Ga. Ct. App. 2007).  "The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her sentiment against the defendant so that she would exclaim, `Outrageous!'" <u>Wilcher v. Confederate Packaging, Inc.</u>, 287 Ga. App.

451, 453, 651 S.E.2d 790 (2007). "Whether or not any of this will ultimately be proven, it is enough "possible" support for the "extreme and outrageous" element to survive a motion to dismiss. Mayorga v. Benton 364 Ga. App. 665 (Ga. Ct. App. 2022), and "If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly [sic] severe emotional distress, the jury then must find the facts and make its own determination. Ellison v. Burger King Corp. 294 Ga. App. 814 (Ga. Ct. App. 2008)

**IV. CONCLUSION**

WHEREFORE, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss Plaintiff's Complaint and Amended Complaint based on the Plaintiff's Second Amended Complaint and Reply to Defendant's Response in Opposition to Defendants' Motion for Leave to a Second Amended Complaint with supporting exhibits being sufficient for Plaintiff to state all of her claims against Defendants.

Respectfully submitted, this 23rd day of July, 2023

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie, *Pro Se*
540 Cornwallis Way
Fayetteville, Georgia 30214
smoultrie@me.com

## CERTIFICATE OF SERVICE

I certify that on July 23, 2023, I served the foregoing ***PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND, AND IN THE ALTERNATIVE MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, AND IN THE ALTERNATIVE PLAINTIFF'S MOTION TO FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT*** upon Defendants via e-mail and United States mail (first-class postage prepaid), addressed as follows:

<div align="center">

Sarah M. Phaff
Darrick L. McDuffie
**Constangy, Brooks, Smith & Prophete, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
*sphaff@constangy.com*
*dmcduffie@constangy.com*

</div>

Respectfully submitted, this 23rd day of July, 2023

*/s/ Shannon S. Moultrie*
Shannon S. Moultrie, *Pro Se*
540 Cornwallis Way
Fayetteville, Georgia 30214
smoultrie@me.com

State Court of Fulton County
**E-FILED**
23EV001656
8/7/2023 5:12 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

**SHANNON S. MOULTRIE,**

**Plaintiff,**

**v.**

**WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,**

**Defendants.**

**Civil Action No. 23EV001656**

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COME NOW Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. ("Law Office") (hereafter collectively referred to as "Defendants"), pursuant to O.C.G.A. § 9-11-12(b)(6), and files this Reply in Support of its Motion to Dismiss Plaintiff's Amended Complaint. ("Reply").[1] In support, Defendants state as follows:

## I.  INTRODUCTION

---

[1] Defendants file this Reply in the event that Plaintiffs Reply in Opposition to Defendants' Response in Opposition to Plaintiff's Motion to Amend, and, in the alternative, Motion to Dismiss Plaintiff's Amended Complaint is construed as response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

1

9878405v1

In Plaintiff's Reply in Opposition to Defendants' Response in Opposition to Plaintiff's Motion to Amend, and, in the alternative, Motion to Dismiss Plaintiff's Amended Complaint, which was filed on July 23, 2023 ("July 23 Opposition"), the "Introduction" section appears to be substantially identical to the "Facts" section in Plaintiff's proposed Second Amended Complaint ("SAC"). (SAC, ¶¶ 5-15.) Defendants are contemporaneously filing a Response to Plaintiff's Motion for Leave to File Second Amended Complaint and, in the alternative, Motion to Dismiss Plaintiff's Second Amended Complaint. For the Court's convenience and to avoid duplicative filings, Defendants incorporate herein by reference the arguments made in that filing.

In this Reply, Defendants respond to scant legal arguments in the "Argument and Citation of Authority" section of Plaintiff's Opposition and demonstrate that they are without merit. (*See* July 23 Opposition, pp. 6-8). Accordingly, Plaintiff's Amended Complaint should be dismissed.

## II.   <u>ARGUMENT</u>

In her Opposition, Plaintiff appears to merely characterize the allegations made in her Complaint, Amended Complaint, *and* Second Amended Complaint, even though she filed the Second Amended Complaint on the same day she filed her

9878405v1

Opposition. [2] (July 23 Opposition, pp. 1-7). For all of the reasons discussed below, Plaintiff's Opposition is not enough to overcome Defendants' Motion to Dismiss her First Amended Complaint.

**A.      Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.**

It appears that Plaintiff regurgitates the same arguments contained in her June 7, 2023 Response in Opposition to Defendants' Motion to Dismiss her original Complaint ("June 7 Opposition").  As explained in Defendants' motions to dismiss the original Complaint and the First Amended Complaint, Plaintiff's claim for negligent infliction of emotional distress is foreclosed because it is improper to seek recovery for emotional distress under a theory of negligence based on  alleged intentional acts, the "impact rule" forecloses her claim; and her complaint does not otherwise demonstrate the elements of this claim. (May 11 Motion to Dismiss, pp. 3-6;  June 21, 2023 Motion to Dismiss, pp. 8-12). As she did in her June 7, 2023

---

[2] Plaintiff incorporates facts from her proposed Second Amended Complaint, even though she did not file her Motion to Amend until she filed her Opposition. However, for ease of the Court, Defendants have shown that Plaintiff has failed to state a claim under her original Complaint, Amended Complaint, and Second Amended Complaint in its respective filings.

9878405v1

Opposition, Plaintiff cites *Lee v. State Farm Mut. Ins. Co.,* 272 Ga. 583, 588 (2000),

quoting *inter alia*, the following portion of the opinion:

> "[T]his Court recognizes that the policy concerns behind our traditional
> impact rule are not extant in this case, and there is no meritorious reason
> in an appropriate and compelling situation to refuse to extend recovery
> for emotional distress to an incident in which the distress is the result of
> physical injury negligently inflicted on another. … The circumstance of
> this case is such an appropriate and compelling situation…It will be for
> the finder of fact to determine…"

(internal citations omitted); (June 7, 2023 Opposition p. 4; July 23, 2023 Opposition,

p. 6). As previously noted (June 21 2023 Reply, p. 3), the facts in *Lee* are wholly

distinguishable from the present case, as Plaintiff suffered no  physical impact, let

alone the death of a child.  *See Lee.,* 272 Ga. at 588 ("When, as here, a parent and

child sustain a direct physical impact and physical injuries through the negligence of

another, and the child dies as the result of such negligence, the parent may attempt to

recover for serious emotional distress from witnessing the child's suffering and death

without regard to whether the emotional trauma arises out of the physical injury to the

parent…. This is in accord with the precepts of the impact approach and appropriately

restricts recovery to those directly affected by the defendant's negligent act or

omission. … Of course, the parent will be allowed to seek damages for the parent's

own physical injuries and any mental suffering or emotional distress arising from

9878405v1

those injuries. It will be for the finder of fact to determine whether the parent suffered emotional distress from witnessing the child's suffering and death apart from the grief which would naturally arise from a parent's loss of a child.") (internal citations omitted). Here, none of Plaintiff's complaints or proposed complaints support a conclusion that Plaintiff suffered a physical impact. As such, Plaintiff's reliance on *Lee* is misplaced. *See Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 734-35 (2017) ("Unlike the mother in Lee, who was physically injured in the same accident that resulted in her child's death, Coon did not suffer any physical impact that resulted in physical injury from the hospital's negligent mishandling of her stillborn child's remains, nor did the child suffer any physical impact or injury.").

To the extent Plaintiff attempts to argue that Defendants' conduct was malicious, willful, or wanton, Plaintiff does not allege facts sufficient to support that conclusion. (July 23 Opposition, p. 7.) "Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent." *Phillips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 76–77 (2010). Aside from her conclusory allegation, nothing about Plaintiff's allegations even comes close to supporting an inference that Green intended to "do harm or inflict injury" upon

Plaintiff. *Id.* ("In the case at bar, Phillips told the assistant manager, Orgaumni, not to allow Walker to access Phillips's apartment without notifying her first. There is evidence that Orgaumni failed to communicate this restriction to the leasing specialist, Harmon, and that he subsequently gave Phillips's key and alarm code to Walker. Although these actions evince negligence, perhaps even gross negligence, we cannot say that they evince an intent to inflict injury.") Without actual facts, Plaintiff's conclusory allegation falls short. *See Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205, 213–14 (2022).

Furthermore, Plaintiff's claim fails because she cannot rely on a theory of negligence to recover for emotional distress caused by alleged intentional acts, and, in any event,  this claim is essentially duplicative of her claim for Intentional Infliction of Emotional Distress. (*See* SAC, ¶¶ 5-43; Am. Compl., pp. 4-6; Compl., ¶¶ 4-23). "[W]hile it may seem obvious since the name of the tort is *negligent* infliction of emotional distress, it is necessary to clarify that … elements, which omit any negligence requirement, only apply to negligent acts. … Said another way, the proper claim for a plaintiff seeking to recover for emotional distress caused by intentional acts is IIED." *See Bryant v. Norfolk Southern Railroad*, NO. 5:20-cv-00225-TES, 2020 WL 7634588, *9 (M.D. Ga. December 22, 2020) (citing *Amstead*

6

*v. McFarland*, 650 S.E.2d 737, 742 (Ga. Ct. App. 2007)). Plaintiff "does not properly allege that [Defendants are] liable for negligence. [She] instead alleges that [Defendants] committed several intentional acts that caused [her] emotional distress. Any chance that [she] might have at recovering emotional distress damages is by way of an IIED claim" – which in this case also fails as articulated below. *Id.*[3] In addition, Plaintiff's allegations do not demonstrate that Plaintiff has met the elements of a claim for negligence as outlined in Defendants' filings, or, and, thus, Plaintiff's claim for negligent infliction of emotional distress should be dismissed on this basis as well.

**B.    Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.**

Mirroring her June 7, 2023 Opposition, Plaintiff continues to argue that Defendants' alleged conduct was so "extreme" as to be actionable under the theory of intentional infliction of emotional distress ("IIED"). (July 23 Opposition, pp. 7-8; June

---

[3] The Law Office cannot be held vicariously liable for the alleged intentional torts. *Id.* ("every claim against McWilliams involves an intentional tort. …But, Bryant's Second Amended Complaint doesn't contain a single claim for negligence against McWilliams. Further, as discussed below, Bryant does not state a valid "negligence per se" claim against McWilliams. Instead, every claim against McWilliams involves an intentional tort.… Therefore, since Bryant did not allege that McWilliams committed the type of act he claims Norfolk Southern is vicariously liable for").

7, 2023 Opposition, pp. 5-6). However, no matter how much Plaintiff tries to avoid this conclusion, applying well-reasoned Georgia case law to the conduct alleged by Plaintiff (the incident during a work meeting in November 2022 and other alleged incidents of "harassment") reveals that Plaintiff's IIED claim cannot survive dismissal. *See Jarrard v. United Parcel Service, Inc*., 242 Ga. App. 58, 61-62 (2000).

Plaintiff does not—because she cannot—dispute that "the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Wainberg v. Piedmont University*, NO. 2:19-CV-251-MHC, 2023 WL 3931506, *16 (N.D. Ga. March 7, 2023) (quoting *McClendon v. Harper*, 349 Ga. App. 581, 589 (2019)). "[E]xtreme and outrageous conduct is that which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 818-19 (2011) (citations and quotation omitted). "Such does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." *Jarrard*, 242 Ga. App. at 59. The

question of whether conduct meets the threshold of extreme or outrageous is a question of law for the Court. *Underwood v. Apple Inc.*, CV 120-136, 2022 WL 193725, at *4 (S.D. Ga. Jan. 20, 2022).[4]

Notably, while Plaintiff's Opposition focuses on Green's alleged "intent to cause her harm" (July 23 Opposition, p. 7), Georgia courts have made it clear that such basic allegations about a defendant's intent cannot sustain an IIED claim. As the Georgia Court of Appeals has explained:

> "[I]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Phinazee v. Interstate Nationalease, Inc.*, 237 Ga. App. 39, 39-40 (1999) (internal punctuation and citation omitted); *Wainberg*, 2023 WL 3931506, at *18 ("Even in

---

[4] *Turnage v. Kasper*, 307 Ga. App. 172, 172 (2010), which is cited by Plaintiff, is both factually and procedurally distinguishable. (July 23 Opposition, p. 7). In *Turnage*, the plaintiff filed suit after the defendants "had her arrested for aggravated stalking because she had the temerity to walk past them while retrieving her children from their designated bus stop" and "she spent two weeks in jail before the case was eventually dismissed for lack of probable cause." (*Id.* at 172). This is unlike the facts here. Also, *Turnage* evaluated a judgment after a jury verdict had been rendered, not a motion to dismiss. (*Id.*)

cases attributing malicious motivations to the employer, coupled with reckless and possibly wanton behavior, courts have found that the evidence failed to rise to the level of extreme and outrageous conduct.") (citing *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 157-160 (2002) (affirming a finding no intentional infliction of emotional distress where employer ordered plaintiff, a single mother, to remain at work after plaintiff learned that her son had been injured at school, employer refused to let employee call school to ask about son's injuries, pulled plug on the phone when the employee attempted to call the school, threatened employee that she would be fired if she left work, and ordered employee to stop crying and return to work)).

Nor is it sufficient for Plaintiff to argue that she was "verbally attacked" and that Green made what Plaintiff characterizes as inappropriate comments towards her. (July 23 Opposition, pp. 3-4, 7-8.) It is axiomatic that, "[w]ords alone do not typically support an intentional infliction of emotional distress claim." *Fortson v. Columbia Farms Feed Mill*, 34 F. Supp. 3d 1302, 1309 (M.D. Ga. 2014), aff'd sub nom., *Fortson v. Carlson*, 618 F. App'x 601 (11th Cir. 2015).

To the extent Plaintiff attempts to rely on her characterization of the single incident in November 2022 during which Plaintiff claims an "intoxicated and belligerent [Green]… verbally attack[ed] and sexually harass[ed]" her which occurred

10

after having allegedly engaged in other allegedly "sexually harassing" conduct toward her on prior occasions (July 23 Opposition, pp. 3-4, 7-8), this is still not enough to save Plaintiff's IIED claim. *See Jarrard*, 242 Ga. App. at 61-62; *Harris v. Leader*, 231 Ga. App. 709, 712(1)(b), 499 S.E.2d 374 (1998) (psychiatrist who expresses personal sexual fantasies to client not liable despite his knowledge of her susceptibility to emotional distress); *Bowers v. Estep*, 204 Ga. App. 615, 616, 618, 420 S.E.2d 336 (1992) (even though employer knew of employee's depression and severe claustrophobia and intentionally harassed and belittled him until he broke down and was admitted to a psychiatric clinic, no liability for intentional infliction of mental distress); *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 231, 335 S.E.2d 445, 448-49 (even though employer knew of employee's low emotional threshold brought on by her multiple sclerosis, no liability for insensitive and tactless demands for polygraph and for termination based on her refusal to cooperate).

A review of Georgia case law reveals that, allegations much more egregious than those alleged here have been deemed insufficient as a matter of law. (July 23 Opposition, p. 7.) *See Richardson v. Jackson*, NO. 1:20-CV-00519-LMM-WEJ, 2021 WL 9598490, *16-17 (N.D. Ga. Sep. 16, 2021) (citing *Galloway v. GA Tech. Auth.*, 182 F. App'x 877, 883 (11th Cir. 2006) (per curiam) (supervisors' alleged conduct in

meeting male employee's complaints alleging, inter alia, an anti-male bias, with hostility, moving him to a small and messy cubicle, commenting about the tidiness of his workspace, showing him a pornographic photograph, and asking him whether he enjoyed his vacation after he attended a funeral, was not sufficiently extreme or outrageous to support claim for the IIED); *Spears v. Kaiser Found. Health Plan of Ga., Inc.*, No. 1:17-CV-02102-TCB-RGV, 2019 WL 1225214, at *32-33 (N.D. Ga. Jan. 30, 2019), R. & R. adopted, 2019 WL 1225199 (N.D. Ga. Feb. 14, 2019) (supervisor's alleged sexual harassment and Kaiser's termination of plaintiff's employment, even considering that the parties had an employer-employee relationship, were insufficient to support IIED claim); *Smith v. Akstein*, 408 F. Supp. 2d 1309, 1317-18, 1335-36 (N.D. Ga. 2005) (granting summary judgment for employer and ophthalmologist on IIED claim because conduct was insufficiently egregious where ophthalmologist touched plaintiff female office receptionist in a sexual manner, inquired whether the plaintiff gave sexual massages, made comments on her appearance, and expressed desire to kiss her and wine and dine her); *Kimsey v. Akstein*, 408 F. Supp. 2d 1281, 1288-89, 1307-08 (N.D. Ga. 2005) (finding no IIED where defendant touched plaintiff's breast on two occasions, engaged in less offensive touching on other occasions, and made sexually harassing comments); *Spence v.*

9878405v1

*Panasonic Copier Co*., 46 F. Supp. 2d 1340, 1350-51 (N.D. Ga. 1999) (supervisor's

conduct not extreme and outrageous where he screamed at and insulted plaintiff); *Fox*

*v. Ravinia Club, Inc*., 202 Ga. App. 260, 261, 414 S.E.2d 243, 244 (Ga. App. 1991)

(finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile,

intimidating and abusive manner" and gave her false reasons for termination). Simply

put, Plaintiff has not alleged conduct by Green that could support an IIED claim.

Essentially, Plaintiff's allegations amount to Green allegedly making comments

about Plaintiff "hat[ing] white jews", an accusation which she contends is untrue

based on the November 4, 2022 email exchange and her assistance with

"memoraliz[ing] a mutual friend … who happened to be a white Jewish man." (July

23 Opposition, pp. 4-5.) However, "[d]efamatory or derogatory remarks regarding

one's employment generally do not rise to [an] [extreme and outrageous] level."

*Wainberg*, 2023 WL 3931506, *17 (citations omitted). Likewise, false accusations in

the workplace are insufficient to support an IIED claim. *Id.*; *Southland Propane*, 312

Ga. App. at 818-19 (2011) ("accusing [an employee] of misappropriating corporate

funds and forgery, terminating his employment, and then ordering him to immediately

leave the [employer's] premises" does not rise to the level of extreme or outrageous

under Georgia law.); *ITT Rayonier, Inc. v. McLaney*, 204 Ga. App.762, 763 (1992)

("A false accusation in connection with one's employment conduct is undoubtedly a distressful, even horrifying and traumatizing insult, but it is a common vicissitude of ordinary life.") (internal punctuation and citation omitted); *Crowe v. J.C. Penney, Inc.*, 177 Ga. App. 586, 588 (1986) (affirming summary judgment based on plaintiff's failure as a matter of law to show extreme and outrageous conduct where employer interrogated plaintiff for theft, falsely accused the employee of theft in connection with the employment, called her a liar, slammed his hands on the desk, and yelled at her); *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 857 (2009) (affirming trial court's award of summary judgment to employer on an intentional infliction of emotional distress claim in a case in which it was alleged that the plaintiff was accused of being a "terrorist and a liar."); *Baynes v. Philips Med. Sys. (Cleveland), Inc.*, 410 F. App'x 291, 292-93 (11th Cir. 2011) (holding that an employer's conduct, including forcing an employee to travel for seventeen days shortly after undergoing heart catheterization, disclosing her confidential medical information, causing anxiety attacks with false accusations, and terminating the employee for a false reason was not extreme and outrageous). As shown by the case law collected above, even assuming Plaintiff's allegations are true for purposes of this Motion, Plaintiff's IIED claim must be dismissed.

9878405v1

## III.   CONCLUSION

For all of the reasons discussed herein and in Defendants' other filings, Plaintiff's claims should be dismissed with prejudice and this action should be dismissed with prejudice.

Respectfully submitted, this 7th day of August, 2023.

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

15

9878405v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2023, I served the foregoing *DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT* upon *pro se* Plaintiff via U.S. Mail, first-class postage prepaid, addressed as follows and via email delivery:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

<div align="right">

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

</div>

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

<div align="right">

**Counsel for Defendants**

</div>

9878405v1

State Court of Fulton County
**E-FILED**
23EV001656
8/7/2023 5:19 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

SHANNON S. MOULTRIE,

        **Plaintiff,**

    **v.**

WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,

        **Defendants.**

Civil Action No. 23EV001656

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

COME NOW Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. (the "Law Office") (collectively "Defendants"), by and through counsel, and file this Response in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint and, in the alternative, Motion to Dismiss Shannon Moultrie's ("Plaintiff") Second Amended Complaint pursuant to O.C.G.A. § 9-11-12(b)(6) for failure to state a claim upon which relief can be granted (hereinafter referred to as "Response and Motion"). In support, Defendants state as follows:

## I.    PROCEDURAL HISTORY

Plaintiff filed her original Complaint on March 20, 2023, asserting the following claims against Defendants: Negligent Infliction of Emotional Distress (Compl. ¶¶ 11-17 (Count 1)); Intentional Infliction of Emotional Distress (*id.* at ¶¶ 18-23 (Count 2)); Intentional Infliction of Mental Suffering (*id.* at ¶¶ 24-25 (Count 3)); and False Imprisonment (*id.* at ¶¶ 26-27 (Count 4)). On May 11, 2023, Defendants timely filed their Answer and Motion to Dismiss Plaintiff's Complaint in its entirety for failure to state a claim. On June 7, 2023, Plaintiff filed her Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint and a Motion for Leave to

File Amended Complaint and Memorandum of Law in Support ("Motion to Amend"), along with a copy of her First Amended Complaint ("FAC"). The FAC contains certain new factual allegations, but otherwise contains the same claims as her original Complaint. (FAC, pp. 4-6). On June 21, 2023, Defendants timely filed their Reply in Support of their Motion to Dismiss and their Response in Opposition to Plaintiff's Motion to Amend and, in the Alternative, Motion to Dismiss Plaintiff's First Amended Complaint.

On July 23, 2023, Plaintiff filed her Reply in Opposition to Defendants' Response in Opposition to Plaintiff's Motion to Amend[1] and a Motion for Leave to File Second Amended Complaint and Memorandum of Law in Support ("Second Motion to Amend"), along with a copy of her Second Amended Complaint ("SAC"). The SAC contains certain new factual allegations but no longer contains a claim for Intentional Infliction of Mental Suffering, while adding a claim for Invasion of Privacy under Georgia law along with three (3) federal claims. The claims in her SAC are: Title VII- 42 U.S.C. §§ 2000e-Retaliation for Rejecting Sexual Advances and False Allegation[2] (SAC, ¶¶ 16-19 (Count 1)); Title VII- 42 U.S.C. §§ 2000e-Hostile Work Environment and Sex Discrimination (*id*. at ¶¶ 20-21 (Count 2)); Title VII- 42 U.S.C. §§ 2000e- Retaliatory (*id*. at ¶¶ 22-26 (Count 3)); Negligent Infliction of Emotional Distress (*id*. at ¶¶ 27-35 (Count 4)); Intentional Infliction of Emotion Distress (*id*. at ¶¶ 36-43 (Count 5)); Invasion of Privacy (*id*. at ¶¶ 44-47 (Count 6)); and False Imprisonment (*id*. at ¶¶ 48-50 (Count 4))[3]. Defendants are filing

---

[1] To the extent Plaintiff intended this filing to serve as a Response to Defendants' Motion to Dismiss her FAC, it is untimely as filed more than 30 days after Defendants' Motion was served on June 21, 2023. Un. State Ct. R. 6.2. However, in an abundance of caution, Defendants are also contemporaneously filing a reply to this filing. Defendants are also filing a Notice of Removal.

[2] The titles of each claim are spelled as they are laid out in the SAC.

[3] Plaintiff mistakenly asserts two "Count 4"s in her SAC.

this Response and Motion demonstrating that Plaintiff's Second Motion to Amend should be denied as futile and that Defendants' pending Motions to Dismiss should be granted, or, in the alternative, that this Court should dismiss Plaintiff's SAC in its entirety.

## II.   FACTUAL SUMMARY

The SAC largely centers around the same alleged incidents and factual allegations set forth in her original Complaint and Amended Complaint. The SAC still focuses primarily on a single incident which Plaintiff alleges occurred on or about November 1, 2022 while she was employed by the Law Office. (SAC, ¶¶ 11-15.) Plaintiff contends she was asked to come to Green's office. (*Id*. at ¶ 12.)[4] Plaintiff alleges that Green then pressed a button located underneath his desk to lock his office door and "verbally attack[ed]" and "sexually harass[ed]" her by allegedly accusing her of being "part of a black Jew militia group that is speaking out against white [J]ews on television!" (*Id*.) Plaintiff further alleges that, during this conversation, she "asked several times if she could be excused," and that "finally" Green "pushed the button" so that Plaintiff could leave. (*Id.*) Plaintiff alleges that, as she was leaving the office, Green said "I think you hate white [J]ews, but I love looking at your butt when you walk away." (*Id.*) Plaintiff contends that she suffered "physically painful anxiety and fear", and "she immediately … left." (*Id.*) Plaintiff alleges that she spoke to her "supervising attorney" after this conversation and that they "told her that, while out having several drinks of alcohol during lunch, [Green] told him he was about to attack her…, and that… he was trying to save Plaintiff before [Green] called her in his office." (*Id.*)

Plaintiff also contends that on November 4, 2022, she and Green had an email exchange, wherein Green said "Be very clear, I do not want hate in my office. I am very sensitive about anti-

---

[4] In her original Complaint, Plaintiff contends that she and another employee were called into Green's office to discuss a work matter. (Compl., ¶ 4.) According to Plaintiff, after Green dismissed the other employee from the meeting, Green asked Plaintiff to remain seated. (*Id.*)

[S]emitism." (*Id.* at ¶ 13, Ex. C.) Plaintiff responded: "Are you implying that I brought anti-[S]emitism into your office? If so, be specific as to when I've ever done that." (*Id.* at ¶ 13, Ex. D.) In response, Green stated, "You misunderstood our conversation…You're a valued employee and I'm glad we do not have a problem here about such things." (*Id.*) Thus, Plaintiff concedes that Green de-escalated any perceived conflict involved in the November 1, 2022 incident. Nevertheless, Plaintiff contends that as a result of the November 1 incident, she suffered "stress, fear, anxiety, sleep deprivation and physical pain." (*Id.* at ¶ 15.)

On its face, Plaintiff's own description of the events at issue makes it abundantly clear that Plaintiff, on her third attempt, still cannot maintain any of her causes of action against Defendants, even assuming everything she alleges in fact happened.[5] Plaintiff's allegations fail to state a claim and are woefully deficient. Thus, Defendants' Motions to Dismiss Plaintiff's Complaint and proposed complaints should be granted, and this action should be dismissed.

## III.   DIFFERENCES BETWEEN PLAINTIFF'S FAC AND SAC

The SAC contains the following new factual allegations, which were not contained in the original Complaint or FAC:[6]

- Plaintiff alleges that "[o]n or about December 20, 2019 [she] was hired as a [L]itigation [S]upervisor/[L]itigation [P]aralegal." (SAC, at ¶ 5.)

- Plaintiff alleges that, throughout her employment, she "was advised by [Green] that her work performance was excellent, and that she was the [Law Office's] 'best hire.'", and that as a result, "she received two pay increases during her employment." (*Id.*)

---

[5] To be clear, as articulated in Defendants' Answer to the Complaint, Defendants deny Plaintiff's allegations, but Defendants are only assuming they are true solely for purposes of this motion.

[6] Defendants incorporate by reference their June 21, 2023 Response in Opposition to Plaintiff's Motion to Amend, in which Defendants highlight the differences between the original Complaint and the FAC. (Response and Motion to Dismiss Amended Complaint, pp. 4-6).

- Plaintiff alleges that the Law Office "did not have a human resources department or an individual to make formal complaints to outside of [Green]." (*Id*. at ¶ 6.) Further, Plaintiff claims that "Green regularly announced that he was the only authority in the [Law Office][,]" and that "Green frequently announced that if he ever had an issue in his office, he had criminal minded people that he has helped in the past to resolve his issues for him." (*Id*.)

- Plaintiff contends that "Green engaged in conduct towards her in violation of [federal law]." (*Id*. at ¶ 7.)

- Plaintiff alleges that "[o]n or about and throughout, December 2019- November 2022, [Green] made multiple unwelcomed sexual advances and lude [sic] and sexual comments toward[s] Plaintiff[,] [to] which [Plaintiff responded] with a resounding no each time." (*Id*. at ¶ 10.) According to Plaintiff, after years of being rejected by Plaintiff, on November 1, 2022, Green allegedly met with Plaintiff's supervising attorney and "shared his plan to falsely accuse Plaintiff of being anti-[S]emitic and being a part of a black-[J]ew malicia [sic]." (*Id*. at ¶ 11.) Plaintiff alleges that, during this meeting, Green asked Plaintiff's supervising attorney to assist him by "falsely claiming that Plaintiff's work performance was substandard" but that "Plaintiff's supervising attorney refused to participate." (*Id*.)

- Plaintiff contends that the November 4, 2022 email Plaintiff received from Green was a "threat and [a] warning" and was sent only to her, not "company-wide." (*Id*. at ¶ 14.)

- Plaintiff claims that in the days and weeks following the November 1, 2022 meeting discussed above, "employees, including [her] supervising attorney, came to Plaintiff to

see how she was feeling after what [Green] had done." Plaintiff further alleges that as a result of Green's alleged conduct one attorney resigned from the Law Office. (*Id*.)

- Plaintiff contends that "Green intentionally created an environment that made it impossible for Plaintiff to work in." (*Id*.)

- Finally, Plaintiff alleges that as a direct result of Green's behavior, she "suffered from embarrassment and humiliation." (*Id*. at ¶ 15.)

Again, none of these additional allegations cure Plaintiff's deficiencies as to both her prior and current claims, and, therefore, this action should be dismissed in its entirety with prejudice.

## IV. <u>PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED AS FUTILE</u>

Plaintiff's Second Motion to Amend should be denied as futile. In support of her Second Motion to Amend, Plaintiff parrots her previous contention "[i]n light of the significant factual and procedural developments since [she] filed suit[,] … [there is] good cause for amending." (Sec. Mot. to Am., p. 2.) Plaintiff contends that judicial economy will be served by having "all allegations properly before the Court." (*Id.*) Plaintiff also contends that Defendants will not be prejudiced because Defendants allegedly have "first-hand" knowledge of the allegations provided to them by the EEOC. (*Id.* at pp. 2-3.)[7] Finally, Plaintiff claims that her SAC "is not futile as [she] has alleged sufficient facts to state a claim for relief that is facially plausible", and Plaintiff further argues, without providing any legal support, that "[w]here the proposed amendment is not clearly futile, denying leave to amend on this ground is highly improper." (*Id*. at 3.)

Plaintiff's Second Motion to Amend should be denied as futile for the same reasons that warrant dismissal of the SAC as discussed below. *See Alberto v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th

---

[7] Receiving a Notice of Right to Sue is not indicative of any wrongdoing by Defendants. (Ex. A.)

Cir. 2014) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

## V.  **PLAINTIFF'S SECOND AMENDED COMPLAINT IS DUE TO BE DISMISSED**

In light of the pleading standards applicable to amendments as outlined in O.C.G.A. § 9-11-15, Defendants move, in the alternative, to dismiss Plaintiff's SAC. For the reasons below, Plaintiff's SAC should be dismissed in its entirety with prejudice.

### A.  **Standard on Dismissal**

Pursuant to O.C.G.A., 9-11-12(b)(6), a court should grant a motion to dismiss when a plaintiff "would not be entitled to relief under any state of provable facts in support [of her claim]" and "the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. *See Mayorga v. Benton*, 364 Ga. App. 665, 666 (2022). In ruling on such a motion, the Court must accept all "well-[pled] material allegations in the Complaint and [resolve] any doubts in favor of the plaintiff", but the Court is under no obligation to "adopt a party's legal conclusions based on these facts." *Parnell v. Sherman & Hemstreet*, Inc., 364 Ga. App. 205, 213-14 (2022). Taking Plaintiff's factual allegations as true, her claims must be dismissed.[8]

### B.  **Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.[9]**

---

[8]  A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under *Iqbal*, the court first determines which allegations are legal conclusions which it will not assume are true. 556 U.S. 662, 678. The court then determines whether the remaining well-pleaded factual allegations which it assumes are true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

[9] Defendants address first Plaintiff's previously alleged state law claims, followed by her new state and federal claims.

As an initial matter, Plaintiff's claim fails because Plaintiff cannot seek recovery on a *negligence* theory for emotional distress caused by alleged *intentional* acts, and this claim is duplicative of her claim for Intentional Infliction of Emotional Distress. (*See* SAC, ¶¶ 36-43.). "[W]hile it may seem obvious since the name of the tort is *negligent* infliction of emotional distress, it is necessary to clarify that the [below]-mentioned elements, which omit any negligence requirement, only apply to negligent acts. Said another way, the proper claim for a plaintiff seeking to recover for emotional distress caused by intentional acts is IIED." *Bryant v. Norfolk Southern Railroad*, 2020 WL 7634588, *9 (M.D. Ga. Dec. 22, 2020). Plaintiff "does not properly allege that [Defendants are] liable for negligence. [She] instead alleges that [Defendants] committed several intentional acts that caused [her] emotional distress. Any chance that [she] might have at recovering emotional distress damages is by way of an IIED claim" – which in this case also fails as articulated below. *Id.*[10] Moreover, Plaintiff's allegations do not identify or demonstrate that Plaintiff has met the elements of a claim for negligence, or how Plaintiff contends that Defendants are liable for negligence, and thus they should be dismissed on this basis as well.[11]

Furthermore, "the Supreme Court of Georgia held that '[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Bryant*, 2020 WL 7634588, at *9 (citations

---

[10] The Law Office cannot be held vicariously liable for the alleged intentional torts. *Id.*

[11] "It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 272 (2003) Thus, in order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty. *Id.*

omitted). Under Georgia law, in the absence of pecuniary loss,[12] three elements are necessary to establish a claim for negligent infliction of emotional distress: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Reid v. Waste Indust. USA, Inc.*, 345 Ga. App. 236 (citing *Coon v. Med. Ctr., Inc.*, 300 Ga. 722 (2017)). Under Georgia law, the "impact rule" specifically applies to claims for negligent infliction of emotional distress. *McConnell v. Dept. of Lab.*, 345 Ga. App. 669, 674 (2018). Indeed, Georgia courts have consistently dismissed negligent infliction of emotional distress claims where no physical impact was found. *See Coon*, 300 Ga. 722 (affirming summary judgment on plaintiff's negligent infliction of emotional distress claim where plaintiff sought to recover damages after a hospital mishandled the remains of her stillborn baby because she did not suffer a physical impact that resulted in physical injury); *Hang v. Wages & Sons Funeral Home, Inc.*, 262 Ga. App. 177, 179-82 (2003) (affirming summary judgment on a negligent infliction of emotional distress claim which involved the premature cremation of a family member's body before his viewing and funeral). "On the other hand, where the [defendant's] conduct is malicious, willful, or wanton, recovery can be had without the necessity of an impact." *Hang*, 262 Ga. App. at 179-180.

---

[12] Plaintiff alleges that she suffered extreme "stress, fear, anxiety, sleep deprivation", pain "on the right side of her body" and "in her right shoulder, neck and arms" as well as "numbness on the right side of her face", that she "thought she was having a stroke", and due to her stress and anxiety levels is "suffering from hypertension." (SAC, ¶ 15.) She further alleges that "[d]ue to [her] symptoms and medical results, [she] was prescribed immediate time off work and to see a phycologist [sic]." (*Id.*) These allegations fail to justify a pecuniary injury as Georgia courts have held that medical expenses, psychological treatment fees, and lost income incurred as a result of emotional distress do not qualify as a pecuniary loss. *See Mayorga*, 364 Ga. App. at 678; *see also Eley v. Fedee*, 362 Ga. App. 618, 623 (2022), cert. denied (Oct. 25, 2022); *Grizzle v. Norsworthy*, 292 Ga. App. 303, 306 (2008).

Although Plaintiff asserts in a conclusory fashion that she suffered a physical impact, she has not alleged underlying facts supporting a conclusion she suffered a physical impact. (SAC, ¶ 30). Plaintiff alleges "that she began experiencing pain on the right side of her body that rendered it difficult to get out of bed," and generally alleges that she "sustained a physical impact due to [Green's] negligence," and was "subjected to unwelcome … physical conduct by [ ] Green", but she does not allege specific facts showing that she sustained a physical impact or that Green even physically touched Plaintiff. (SAC, at ¶¶ 15, 28, 30, Section 3 *supra*.) Plaintiff alleges only that after the November 2022 incident, generally the "physically painful anxiety and fear overtook Plaintiff so much that she immediately went to her office to collect her belongings and left." (SAC, at ¶ 12.)[13]; *see Parnell*, 364 Ga. App. at 213-14; *Bailey v. Experian Info. Sols., Inc.*, 2016 WL 9558951, at *7 (N.D. Ga. Dec. 9, 2016) (recommending dismissal of plaintiff's negligent infliction of emotional distress claim where he "provided no allegations of any such physical impact causing emotional distress."). Because Plaintiff's SAC is utterly devoid of any factual allegations to support this cause of action, this claim should be dismissed.

Nor does Plaintiff allege facts sufficient to support a conclusion that Defendants' conduct was malicious, willful, or wanton. Plaintiff alleges that, after the incident about which she complains, she spoke with her supervisor, who informed her that he knew what Green was going to do to Plaintiff and that he was "trying to save" her. (SAC, at ¶ 12; FAC, p. 3; Compl, ¶ 9.) Plaintiff also alleges she and Green exchanged emails, in which Green said "Be very clear, I do not want hate in my office. I am very sensitive about anti-[S]emitism." (SAC, ¶ 13; FAC, p. 3.) Plaintiff responded: "Are you implying that I brought anti-[S]emitism into your office? If so, be

---

[13] In her Complaint, Plaintiff alleged that she cried and "[s]tressed and full of anxiety, Plaintiff immediately returned to her office to collect her belongings to exit the premises". (Compl., ¶ 9.)

specific as to when I've ever done that." (*Id.*) Green responded, "You misunderstood our conversation…You're a valued employee and I'm glad we do not have a problem here about such things." (*Id.*, Ex. E). These allegations are insufficient to show malicious, willful, or wanton behavior. In fact, Plaintiff's own allegations demonstrate that Green de-escalated any perceived conflict involved in the November 1, 2022 incident. "Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent" *Phillips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 76-77 (2010). Nothing about Plaintiff's allegations even comes close to supporting an inference that Green intended to "do harm or inflict injury" upon Plaintiff. *Id*. In fact, unlike the FAC, the SAC is devoid of any allegations that Green's behavior was "malicious, willful, and wanton." (*See* SAC; FAC, p. 6.); *See Parnell*, 364 Ga. App. at 213-14. Accordingly, Plaintiff's claim for negligent infliction of emotional distress fails to state a claim upon which relief may be granted.

### C.  <u>Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.</u>

To establish a claim for intentional infliction of emotional distress (IIED) a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Mayorga*, 364 Ga. App. at 670 (citing *Racette v. Bank of Am.*, 318 Ga. App. 171, 179 (2012)). The standard for an IIED claim is "very high," and the burden of the Plaintiff is a "stringent one." *Bowens v. Sodexo, Inc.*, 2019 WL 13268194, at *12 (N.D. Ga. Feb. 14, 2019). The question of whether conduct meets the threshold of extreme or outrageous is a question of law for the Court, and "[l]iability for IIED has been found in Georgia only when a defendant's conduct ... is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Underwood v.*

*Apple Inc.*, 2022 WL 193725, at *4 (S.D. Ga. Jan. 20, 2022) (citations and quotations omitted). Plaintiff's SAC fails to state a claim for intentional infliction of emotional distress.

Plaintiff alleges that Green "verbally attack[ed]" her by making the following statements in an aggressive manner during a single incident: "accus[ing] Plaintiff of being a part of the black Jew militia group that is speaking out against white Jews on television!" and "I think you hate white [J]ews, but I love looking at your butt when you walk away." (SAC, ¶ 12) Plaintiff also alleges that prior to the November 2022 incident, Green made "sexual advances" that Plaintiff declined. (*Id*. at ¶ 10.) Specifically, Plaintiff alleges that: (1) Green repeatedly "asked Plaintiff if her prior employer tried to have sex with her"; (2) Green "several times… asked Plaintiff if she would like for him to take care of her", and "buy her designer bags and watches"; (3) Green asked Plaintiff "to come to his house and swim with him in his swimming pool"; and (4) Green "texted Plaintiff and asked her if she wanted to be one of his women." (*Id.*) Finally, Plaintiff contends that on November 4, 2022, Green "threat[ened] and warn[ed]" her through an email exchange, by saying: "Be very clear, I do not want hate in my office. I am very sensitive about anti-[S]emitism." (*Id*. at ¶ 14.) Plaintiff responded: "Are you implying that I brought anti-[S]emitism into your office? If so, be specific as to when I've ever done that." (*Id*.) In response Green stated: "You're a valued employee and I'm glad we do not have a problem here about such things." (*Id.*) Again, however, these allegations show Green de-escalating any perceived conflict.

These allegations are insufficient to plead that Green's conduct was extreme and outrageous. It has been long-settled under Georgia law that extreme and outrageous conduct is behavior "so extreme in degree… beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mayorga*, 364 Ga. App. at 670. Extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances,

petty oppressions, or other vicissitudes of daily living." *Ghodrati v. Stearnes*, 314 Ga. App. 321, 323 (2012); *Lockhart v. Marine Mfg. Corp.*, 281 Ga. App. 145, 147 (2006) ("Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life."). Rather, the conduct must "rise to the requisite level of egregious or outrageous behavior which justifiably results in that severe fright, humiliation, embarrassment, or outrage which no reasonable person is expected to endure." *Lockhart*, 281 Ga. App. at 147.

When analyzed under clear Georgia law, Plaintiff's allegations do not meet this stringent burden. First, the thrust of Plaintiff's SAC still focuses primarily on the allegation that Green allegedly verbally attacked her in a single instance. (SAC, ¶¶ 5-15; FAC, pp. 2-3; Compl. ¶¶ 4-9); *see Jarrard v. United Parcel Serv., Inc.*, 242 Ga. App. 58, 62 (2000) (finding that a single "brutal" employee evaluation cannot rise to the outrageous level); *Metro. Atlanta Rapid Transit Auth. v. Mosley*, 280 Ga. App. 486, 491 (2006) (holding that one isolated incident did not approach the degree of reprehensibility required for an intentional infliction of emotional distress claim).

Second, even taking into account the pre-November 2022 comments allegedly made by Green to Plaintiff (including allegedly sexual comments) and the November 4, 2022 email exchange that Plaintiff characterizes as "threaten[ing] and warning", the comments allegedly made by Green do not rise to the stringent level for an IIED claim. (SAC, ¶ 14; FAC, pp. 2-3; Compl. ¶¶ 5, 8); *Cook v. Covington Credit of Georgia, Inc.*, 290 Ga. App. 825, 828 (2008) (acknowledging that although Carter's use of a racial epithet to insult Cook during their confrontation was "demeaning, degrading, and insensitive, such conduct did not constitute egregious or outrageous behavior so as to sustain a claim for intentional infliction of emotional distress"); *Harris v. Leader*, 231 Ga. App. 709, 712 (1998) (psychiatrist who expresses personal sexual fantasies to client not

liable despite his knowledge of her susceptibility to emotional distress); *Bowers v. Estep*, 204 Ga. App. 615, 616, 618 (1992) (even though employer knew of employee's depression and severe claustrophobia and intentionally harassed and belittled him until he broke down and was admitted to a psychiatric clinic, no liability for intentional infliction of mental distress).

Notably, allegations much more egregious than those alleged here have been deemed insufficient as a matter of law. *See Richardson v. Jackson*, 2021 WL 9598490, *16-17 (N.D. Ga. Sep. 16, 2021) (citing *Galloway v. GA Tech. Auth.*, 182 F. App'x 877, 883 (11th Cir. 2006) (per curiam) (supervisors' alleged conduct, inter alia, an anti-male bias, with hostility, moving him to a small and messy cubicle, commenting about the tidiness of his workspace, showing him a pornographic photograph, and asking him whether he enjoyed his vacation after he attended a funeral, was not sufficiently extreme or outrageous to support claim for the IIED); *Spears v. Kaiser Found. Health Plan of Ga., Inc*., 2019 WL 1225214, at *32-33 (N.D. Ga. Jan. 30, 2019), R. & R. adopted, 2019 WL 1225199 (N.D. Ga. Feb. 14, 2019) (supervisor's alleged sexual harassment and Kaiser's termination of plaintiff's employment, even considering that the parties had an employer-employee relationship, were insufficient to support IIED claim); *Smith v. Akstein*, 408 F. Supp. 2d 1309, 1317-18, 1335-36 (N.D. Ga. 2005) (granting summary judgment for employer and ophthalmologist on IIED claim because conduct was insufficiently egregious where ophthalmologist touched plaintiff female office receptionist in a sexual manner, inquired whether the plaintiff gave sexual massages, made comments on her appearance, and expressed desire to kiss her and wine and dine her); *Kimsey v. Akstein*, 408 F. Supp. 2d 1281, 1288-89, 1307-08 (N.D. Ga. 2005) (finding no IIED where defendant touched plaintiff's breast on two occasions, engaged in less offensive touching on other occasions, and made sexually harassing comments); *Spence v. Panasonic Copier Co.*, 46 F.

Supp. 2d 1340, 1350-51 (N.D. Ga. 1999) (supervisor's conduct not extreme and outrageous where he screamed at and insulted plaintiff).

In essence, Plaintiff's allegations amount to Green allegedly making comments about Plaintiff "hat[ing] white [J]ews", which she contends are untrue based on the November 4, 2022 email exchange and her assistance with "memoraliz[ing] a mutual friend … who happened to be a white Jewish man." (SAC, ¶ 13; FAC, pp. 2-3.) Under Georgia law, "[d]efamatory or derogatory remarks regarding one's employment generally do not rise to this [extreme and outrageous] level." *Wainberg*, 2023 WL 3931506, *17 (citations omitted). Likewise, false accusations in the workplace are insufficient to support an IIED claim. *Id.*; *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 818-19 (2011) ("accusing [an employee] of misappropriating corporate funds and forgery, terminating his employment, and then ordering him to immediately leave the [employer's] premises" does not rise to the level of extreme or outrageous under Georgia law.); *ITT Rayonier, Inc. v. McLaney*, 204 Ga. App.762,  763 (2023) ("A false accusation in connection with one's employment conduct is undoubtedly a distressful, even horrifying and traumatizing insult, but it is a common vicissitude of ordinary life."); *Crowe v. J.C. Penney, Inc.*, 177 Ga. App. 586, 588 (1986) (affirming summary judgment based on plaintiff's failure as a matter of law to show extreme and outrageous conduct where employer interrogated plaintiff for theft, falsely accused the employee of theft in connection with the employment, called her a liar, slammed his hands on the desk, and yelled at her); *Abdul-Malik v. AirTran Airways, Inc*., 297 Ga. App. 852, 857 (2009) (affirming trial court's award of summary judgment to employer on an intentional infliction of emotional distress claim in a case in which it was alleged that the plaintiff was accused of being a "terrorist and a liar, and told him he was guilty [of making a terroristic threat]."); *Baynes v. Philips Med. Sys. (Cleveland), Inc*., 410 F. App'x 291, 292-93 (11th Cir. 2011) (holding that an employer's conduct, including forcing an

15

employee to travel for seventeen days shortly after undergoing heart catheterization, disclosing her confidential medical information, causing anxiety attacks with false accusations, and terminating the employee for false reasons was not extreme and outrageous).

The remainder of Plaintiff's allegations either lack specificity or amount to nothing more than speculation. *See Hajhossein v. City of Statesboro*, 2010 WL 538209, at *4 (S.D. Ga. Feb. 10. 2010) ("[The] Complaint fails to state a claim for [IIED]…[plaintiff] crippled his chances at surviving this motion to dismiss by pleading vague allegations without much detail .... He hinges much of his claim on his demotion .... Even if [plaintiff] was demoted due to racial animosity, his claim does not necessarily rise to the requisite level of outrageousness."). Thus, the SAC lacks sufficient factual allegations to assert a claim for IIED.

### D.  Plaintiff Fails to State a Claim for False Imprisonment.

Under Georgia law, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." *Ferrell v. Mikula*, 295 Ga. App. 326, 329 (2008) (quoting O.C.G.A. § 51-7-20). The essential elements for false imprisonment are "a detention of the person of another for any length of time, and the unlawfulness of that detention." *Smith v. Wal-Mart Stores E., LP*, 330 Ga. App. 340, 343 (2014). "A detention need not consist of physical restraint, but may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries." *Id*. The false imprisonment allegations in the SAC, which are substantially the same as those set forth in the original Complaint and the FAC, do not come close to asserting a viable claim.

Plaintiff's false imprisonment claim fails because the SAC is utterly devoid of any allegations that Plaintiff reasonably feared Green would use force if Plaintiff did not comply.

According to Plaintiff, after Green "summoned" her to his office, Green "securely locked the door using a button underneath his desk." (SAC, ¶ 12; FAC, pp. 2-3; Compl. ¶ 5.) Plaintiff alleges that Green then began to "verbally attack" her while she was "forc[ed] to remain in his office." (SAC, ¶ 12; FAC, p. 3; Compl., ¶¶ 5, 27.) Plaintiff contends she "asked several times if she can be excused, … [and] Green finally pushed the button underneath his desk so that Plaintiff could leave." (SAC, ¶ 12; FAC, p. 3; Compl., ¶¶ 5, 8.) Nowhere in the SAC does Plaintiff allege facts supporting a conclusion that she had a reasonable apprehension that force would be used if she failed to remain in Green's office. Instead, to survive dismissal, Plaintiff generally alleges that "[t]he restraint was against Plaintiff's will and was accomplished by force or fear and occurred by physical force and words or threats that produce a reasonable fear that physical force will be used against Plaintiff." (SAC, ¶ 49.) Yet in her prior Complaint, Plaintiff explicitly alleges that Green's status as her employer, not any fear he would use force against her, was the reason for her alleged unlawful detention. (Compl., ¶ 27); *see Hill v. Macrina*, 2017 WL 5203053, at *5 (N.D. Ga. June 26, 2017) (holding that the employees' false imprisonment claim must fail because they had no reasonable fear that force would be used to keep them from leaving). To the extent Plaintiff is alleging that she feared for her employment, such an assertion cannot support a claim for false imprisonment. *See Shannon v. Off. Max N. Am., Inc.*, 291 Ga. App. 834, 835–36 (2008) (holding that the threat of being terminated from at-will employment cannot constitute the basis of a false imprisonment claim); *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 161 (2002) (same). Accordingly, Plaintiff's claim must fail.

### E.   Plaintiff Fails to State a Claim for Invasion of Privacy

Under Georgia law, there are four distinct torts under the common name "invasion of privacy." Namely, they are: (1) invasion of privacy by appropriation, (2) invasion of privacy by intrusion, (3) invasion of privacy by public disclosure of private facts, and (4) invasion of privacy

by false light. *Torrance v. Morris Pub. Grp. LLC*, 281 Ga. App. 563, 572 (2006). Plaintiff appears to assert two distinct invasion of privacy claims, alleging that Green placed her in "false light" and "intruded upon [her] seclusion or solitude, and into her private affairs." (SAC, at ¶¶ 45-46). The SAC fails to state a claim for invasion of privacy under either of these two theories.

1.   *Plaintiff fails to state a claim for False Light Invasion of Privacy.*[14]

To establish a claim of false light, a plaintiff must show "the existence of false publicity that depicts the plaintiff as something or someone which he is not." *Ass'n Servs., Inc. v. Smith*, 249 Ga. App. 629, 633 (2001). "Next, the plaintiff must demonstrate that 'the false light in which [she] was placed would be highly offensive to a reasonable person.'" *Id.*

Plaintiff alleges that Green "presented [her] in a false light by claiming [that] she hated white-[J]ews and intentionally l[ied] to others by saying she was in a black militia group." (SAC, ¶¶ 45-46.) Again, Plaintiff alleges that Green "doubled down … when he singled Plaintiff out [with false anti-[S]emitic accusations] in [front of] the entire office and sent her an email saying, "Be very clear, I do not want hate in my office. I am very sensitive about anti-[S]emitism." (*Id*. at ¶ 13.) Plaintiff responded: "Are you implying that I brought anti-[S]emitism into your office? If so, be specific as to when I've ever done that." (*Id.*) In response Green stated, "You misunderstood our conversation…You're a valued employee and I'm glad we do not have a problem here about such things." (*Id*.; Ex. E). Plaintiff's allegations do not meet the standard articulated above.

The SAC fails to allege that Plaintiff was placed in the public eye. Although Green allegedly "singled Plaintiff out" in front of the "entire office", this merely confirms that *only* other employees heard Green's alleged accusations. (*Id*. at ¶ 13.) Indeed, several Georgia courts have

---

[14] As a matter of law Plaintiff cannot assert a separate invasion of privacy false light claim. *Smith v. Stewart*, 291 Ga. App. 86, 100 (2008) (citation omitted) ("In order to survive as a separate cause of action, a false light claim must allege a nondefamatory statement.").

found that similar "limited disclosure[s]" failed to meet the publicity element of a false light claim. For example, in *Smith* the Georgia Court of Appeals concluded that the publication requirement was not met where three investigators and two company representatives viewed a video of the plaintiff. 249 Ga. App. at 633. In *Peacock v. Retail Credit Co.*, 302 F. Supp. 418, 423 (N.D. Ga. 1969), aff'd, 429 F.2d 31 (5th Cir. 1970), the District Court for the Northern District of Georgia held that the publication requirement had not been met when a credit reporting agency distributed allegedly false information to its clients. There, the district court aptly noted that plaintiff's "limited disclosure" was not "the type of public disclosure required to establish an invasion of privacy [through false light]." *Id.*; *see Zarach v. Atlanta Claims Ass'n*, 231 Ga. App. 685, 690 (1998) (evidence of publicity where plaintiff was falsely depicted in public materials); *Brewer v. Rogers*, 211 Ga. App. 343, 349 (1993) (evidence of publicity where plaintiff was falsely depicted in a televised newscast). As such, Plaintiff's allegation that she was falsely depicted in front of an "entire office" is woefully insufficient to satisfy the publication requirement. *Peacock*, 302 F. Supp. 423, 429 F.2d 31. Similarly,  Plaintiff's admission that Green "didn't send a company-wide email" and "only sent it to Plaintiff further demonstrates Plaintiff's failure to satisfy the publication requirement." (SAC, ¶ 14, Exs. C-E). Because the comments within the emails were only between Green and Plaintiff it is impossible for Plaintiff to argue they satisfy the publication requirement. In sum, the SAC is devoid of any factual allegations to support an inference that Plaintiff was placed in a public light and, therefore, her claim must be dismissed. Even if Plaintiff somehow satisfies the publication requirement, her claim still fails because nothing allegedly said by Green could be conceivably viewed as "highly offensive to a reasonable person." *Smith*, 249 Ga. App. at 634. "Any false depiction was merely the result of [Green allegedly accusing Plaintiff of being anti-[S]emitic and a part of a black-Jew militia]." *Id*. The comments allegedly made by Green do

not come close to being so highly offensive to support false light claim. *See Thomason*, 190 Ga. App. at 604, 379 S.E.2d at 554 (holding that a newspaper's publication of a false obituary did not satisfy the "offensiveness" element); *Smith*, 249 Ga. App. at 634 (finding that the videotape of Smith would not be "offensive and objectionable to a reasonable person of ordinary sensitivities."). So, Plaintiff's invasion of privacy false light claim must be dismissed.

2. *Plaintiff fails to state a claim for Invasion of Privacy by Intrusion.*

The Georgia Supreme Court has held that a claim for intrusion upon seclusion fundamentally "involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." *See Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703 (1991). "In order to show the tort of unreasonable intrusion, a plaintiff must show a physical intrusion which is analogous to a trespass; however, this 'physical' requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored plaintiff's activities." *Sitton v. Print Direct., Inc.*, 312 Ga. App. 365 (2011); *Benedict v. State Farm Bank, FSB.*, 301 Ga. App. 133, 318 (2011) ("An "unwanted, physical touching" can be actionable under this tort."). In some instances, "[h]ighly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." *Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 584(2008). "However, there are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress." *Id*.

To support her unreasonable intrusion claim Plaintiff again alleges that Green "intruded upon [her] seclusion or solitude, and into her private affairs" by accusing her of "hating white-[J]ews" and being "a part of a black Jew militia." (SAC, ¶¶ 45-46.) Plaintiff also alleges that Green asked the following questions: (1) "if her prior employer tried to have sex with her"; (2) "if she

20

would like for him to take care of her, and buy her designer bags and watches"; (3) "to come to his house and swim with him in his swimming pool"; and (4) "if she wanted to be one of his women." (*Id*. at ¶ 10.) These allegations cannot support Plaintiff's unreasonable intrusion claim for two reasons. First, the SAC is utterly devoid of any factual allegations that Green surveilled Plaintiff, monitored her activities, asked personal questions, or made any demands with respect to her affiliations. *See Smith*, 249 Ga. App. at 634 (declining to dismiss an invasion of privacy unreasonable intrusion claim where an investigator mistakenly surveilled plaintiff in connection with a workers' compensation claim); *Anderson v. Mergenhagen*, 283 Ga. App. 546 (2007) (finding that a triable issue existed as to whether the first wife's boyfriend followed and photographed the second wife so frequently as to amount to an invasion of her privacy by intrusion). Second, to the extent that Plaintiff is alleging that Green intruded into her personal life by asking questions about her intimate relationships, these allegations still fall short as they are not accompanied by any alleged unwanted psychical touching. *Benedict*, 709 S.E.2d at 318; *Troncalli v. Jones*, 237 Ga. App. 10, 14 (1999) (finding that plaintiff stated a claim for invasion of privacy by intrusion when she alleged defendant kissed her on the back of her neck, intentionally touched her breasts, followed her in his car, and came to her house and knocked on the door); *Mills v. Last Resort Grill, Inc.*, 2021 WL 5467052, at *8 (M.D. Ga. May 19, 2021) (holding that plaintiffs stated a claim for invasion of privacy by intrusion when they all alleged unwelcome touching analogous to a trespass and that defendant directed intrusive comments, questions, or demands at them). Without supporting facts of a physical touching, Plaintiff's allegations fall woefully short of adequately asserting a claim for invasion of privacy by intrusion. Accordingly, Plaintiff's claim for invasion of privacy fails to state a claim upon which relief may be granted.

## F.    **Plaintiff's Federal Claims are Time-Barred**

Plaintiff's new Title VII claims (Counts 1, 2, and 3) should be dismissed as they are time-barred. "In a Title VII suit, a party must file [her] complaint within 90 days of receiving an EEOC notice of [her] right to sue." *Patel v. Georgia Dep't of Behav. Health & Developmental Disabilities*, 517 F. App'x 750, 752 (11th Cir. 2013) (quoting 42 U.S.C. § 2000e–5(f)(1)); (SAC, Ex. A). The employee bears "the initial burden of establishing that [she] filed [her] Complaint within ninety days of [her] receipt of the EEOC's right-to-sue letter," and "[o]nce the defendant contest[s] this issue, the plaintiff has the burden of establishing that [she] met the ninety day filing requirements." *Zwick v. Univ. of S. Fla. Bd. of Trustees*, 505 F. Supp. 3d 1317, 1332 (M.D. Fla. 2020) (quoting *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002) (dismissing a Title VII complaint filed on the ninety-seventh day); *Martinez v. United States Sugar Corp.*, 880 F. Supp. 773, 777 (M.D. Fla. 1995), *aff'd* 77 F.3d 497 (11th Cir. 1996) (dismissing a Title VII complaint filed on the ninety-fifth day). Plaintiff's new Title VII claims should be dismissed for this reason alone.

Plaintiff cannot establish that she met the ninety day filing requirements. Plaintiff's right-to-sue letter (which was issued at her request) is dated January 6, 2023, and clearly stated that Plaintiff's "lawsuit under Title VII… **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost." (SAC, Ex. A) (emphasis in original). This means that Plaintiff had until April 6, 2023 to assert her claims under Title VII. *Green*, 281 F.3d at 1234. Instead, Plaintiff did not assert her Title VII claims until July 23, 2023, one hundred and ninety-eight days later. As such, "Plaintiff has not met [her] burden of proof. On this ground alone, the Court can, and [should], find ample reason to grant judgment for the Defendant[s]." *Martinez*, 880 F. Supp. at 777.

Furthermore, Plaintiff alleges she submitted her EEOC Charge on December 29, 2022. (SAC, ¶ 1). In a non-deferral state like Georgia, a plaintiff must file an EEOC charge within 180 days of the last alleged discriminatory act. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003). Plaintiff alleges that between December 2019 and November 2022, Green made "sexual advances [and] comments". (SAC, ¶ 10). However, only alleged discriminatory actions that occurred after July 2, 2022 are actionable; thus, any claims based on incidents that occurred prior to that date are time barred. Thus, Counts 1, 2, and 3 are due to be dismissed in their entirety.

## G.     Plaintiff Fails to State a Claim for Retaliation

Counts 1 and 3 both appear to allege claims under Title VII for retaliation. To state a *prima facie* case of retaliation under Title VII, a plaintiff must allege that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected conduct. *See Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir. 2008). Plaintiff's claim fails as it does not allege an adverse action.

"[I]n the context of a Title VII retaliation claim, a materially adverse action 'means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. & White*, 548 U.S. 53, 68 (2006)). "[P]etty slights, minor annoyances, and simple lack of good manners" in the workplace are normally not actionable under Title VII. *See Burlington*, 548 U.S. at 68. But that is all Plaintiff alleges here.

Plaintiff alleges that she was "forced to terminate her employment due to Green's sexual harassment…" (SAC, ¶ 24). However, the SAC provides little context about how Plaintiff (who worked for Defendants since 2019) was "forced to terminate her employment..." (SAC, ¶ 5). In fact, the SAC shows that Green remediated the situation only a few days after the November 1 event. (SAC, ¶ 13) "A constructive discharge occurs when a discriminatory employer imposes

working conditions that are so intolerable that a reasonable person in the employee's position would have been compelled to resign." *Fitz v. Pugmire Lincoln–Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003).[15] Plaintiff's allegations are simply not enough. *See Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987) (affirming summary judgment where the employee quit after one day in what she perceived as an unacceptable position); *Fitz v. Pugmire Lincoln– Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (Upheld summary judgment for the employer where the plaintiff claimed that his employer's racial discriminatory conduct compelled him to resign. One of the facts used by the plaintiff to support his position was his co-worker's statements that his employer planned to fire him because of his race sometime in the future. Noting that the plaintiff never confronted his employer about the alleged plot, we "decline[d] to reach a holding that would encourage speculative litigation" since the employer might "never carry out the plan."). Thus, Plaintiff's federal retaliation claims (Counts 1 and 2) fail.

### H.    Plaintiff Fails to State a Claim for Sex Discrimination

Count 2 of the SAC alleges sex discrimination. To establish a *prima facie* case of sex discrimination, a plaintiff must show (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to do the job in question, and (4) her employer treated similarly situated employees outside her protected classification more favorably than it treated her. *See Lewis v. Union Cty*, 918 F.3d 1213, 1220-21 (11th Cir. 2019). While Plaintiff's theory regarding sex discrimination is unclear, she nevertheless cannot sustain such a claim as she has failed to identify a "specific, similarly situated, non-minority individual [outside

---

[15] As shown below, because Plaintiff cannot plead a hostile work environment claim, she cannot plead a constructive discharge claim, either. *See Van Der Meulen v. Brinker Intern.*, 153 Fed. Appx. 649, 655 (11th Cir. 2005) ("Because the standard of proof for a constructive discharge claim is higher than that for a hostile work environment claim, the plaintiff must show more than that she was subjected to actionable harassment.")

of her protected class] who was treated better in a similar situation." *See Henley v. Turner Broadcasting Sys., Inc*., 267 F.Supp.3d 1341, 1353 (N.D. Ga. July 25, 2017). "The Eleventh Circuit has upheld dismissal of Title VII discrimination claims where the complaint does not provide a factual basis for showing that the alleged comparator is 'similarly situated in all material respects." *Walton v. Ga. Dep't. of Comm. Affairs*, 2022 WL 3337406, at *3 (N.D. Ga. July 6, 2022); *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013); *Uppal v. Hosp. Corp. of Am.*, 2011 WL 2631869, at *3 (M.D. Fla. July 5, 2011). Furthermore, as with Plaintiff's retaliation claim, she fails to plead an adverse action which dooms her discrimination claim. (*See supra*). Accordingly, the SAC fails to state a claim for sex discrimination under Title VII, and should be dismissed.

## I.      Plaintiff Fails to State a Claim for Hostile Work Environment Based on Sex

In Count 2 of the SAC, Plaintiff alleges a sex-based hostile work environment claim. (SAC, ¶¶ 20-21.) To establish a Title VII hostile work environment claim, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) that there is a basis for holding the employer liable. *See Buford v. Life Storage, LP*, 2019 WL 13031988, *16 (N.D. Ga. Oct. 17, 2019) (citing *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014)). The allegations are insufficient.

First, many of the allegations contained in the SAC, such as the alleged email exchange wherein Green stated "I am very sensitive about anti-[S]emitism." are not based on gender/sex. (SAC, ¶¶ 12-14). Thus, they cannot support Plaintiff's sex-based hostile work environment claim. *See Taylor v. Dep't of Veterans Affs.*, 2021 WL 5435156, at *5 (S.D. Ala. Nov. 19, 2021) ("Under well-settled Eleventh Circuit precedent, '[s]ubstantive hostile work environment claims ... require

plaintiffs to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. That intimidation, ridicule, and insult must also bear the necessary sexual or other gender-related connotations to be actionable sex discrimination.'); *Elliott v. RE/MAX of Ga., Inc.*, 2007 WL 9700772, at *15 (N.D. Ga. Feb. 7, 2007) ("Elliott has not presented evidence to show that [their] harsh treatment of her—such as yelling or raising his voice at her or criticizing her—was sexual in nature or based on her sex. There is ample evidence that Moe was also harsh and abusive toward men").

Furthermore, the SAC fails to allege conduct that is both severe and pervasive.[16] Plaintiff alleges that Green said "I think you hate white [J]ews, but I love looking at your butt when you walk away." (SAC, ¶ 12). Plaintiff also alleges that prior to the November 2022 incident, Green made "sexual advances" that Plaintiff declined. (*Id.* at ¶ 10.) Specifically, Plaintiff alleges that: (1) Green repeatedly "asked Plaintiff if her prior employer tried to have sex with her"; (2) Green "several times… asked Plaintiff if she would like for him to take care of her, and buy her designer bags and watches"; (3) Green asked Plaintiff "to come to his house and swim with him in his swimming pool"; and (4) Green "texted Plaintiff and asked her if she wanted to be one of his women." (*Id.*) The conduct alleged by Plaintiff simply does not rise to the level of severe and pervasive conduct under the standards of Title VII. *See Beamon v. Tyson Foods, Inc.*, 2015 WL 6159479, at *4-5 (M.D. Ga. Oct. 20, 2015) ("Beamon's conduct, although rude and socially unacceptable, occurred relatively infrequently. Over an eleven-month period, Schimek showed or attempted to show Beamon pornographic videos on four occasions; made two isolated arguably sexually-related comments; and got into one heated altercation that involved no physical contact.

---

[16] For these reasons, a hostile work environment claim based on any protected category fails.

Other than Schimek's angry tone and "not happy" facial expressions, there is no evidence of ongoing, daily, or even periodic harassment…. She points to three isolated occasions where Schimek briefly showed her pornographic videos on his cell phone. Each time, Beamon glanced at the videos for a few seconds and left. While this display of pornography in the workplace may be offensive, the federal employment laws require more before an employer may be held legally liable for such conduct.") (citing *Mendoza v. Borden Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (The Eleventh Circuit found that an employer's conduct—that included constantly following an employee around, saying "I'm getting fired up," and rubbing his body against the employee—fell "well short of the level of either severe or pervasive conduct sufficient to" constitute a Title VII claim). For these reasons, the Court should dismiss Plaintiff's hostile work environment claim.

## VI.   <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request that Plaintiff's Second Motion to Amend be denied or in the alternative that the Second Amended Complaint be dismissed; and that this action be dismissed with prejudice; that a judgment be entered in favor of Defendants; and that Plaintiff be required to pay Defendants' attorneys' fees incurred in defending against this frivolous lawsuit.

Respectfully submitted, this 7th day of August, 2023.

<div style="text-align:right">

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

</div>

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557

Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, I served the foregoing *DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT* upon *pro se* Plaintiff via U.S. Mail, first-class postage prepaid, addressed as follows and via email delivery:

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*


*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

State Court of Fulton County
**E-FILED**
23EV001656
8/7/2023 5:24 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **SHANNON S. MOULTRIE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 23EV001656** |
| **WILLIS BRYANT GREEN, III and LAW OFFICE OF W. BRYANT GREEN, III, P.C.,** | |
| **Defendants.** | |

## <u>EXPEDITED MOTION TO STAY DISCOVERY AND ALL DEADLINES PENDING RESOLUTION OF DEFENDANTS' PENDING MOTIONS TO DISMISS</u>

COME NOW Willis Bryant Green, III ("Green") and the Law Office of W. Bryant Green, III, P.C. (the "Law Office") (hereafter collectively referred to as "Defendants"), pursuant to the Uniform State Court Rules and Uniform Superior Court Rule 5.1, respectfully move this Court for an extension of the stay of the discovery period and all other deadlines in this matter pending an order from this Court on Defendants' pending Motion to Dismiss Plaintiff's Complaint; Defendants' Response in Opposition to Plaintiff's Motion to Amend and, in the Alternative, Motion to Dismiss Plaintiff's First Amended Complaint; and the contemporaneously filed Defendants' Response in Opposition to Plaintiff's Motion For Leave To File Second Amended Complaint and, in the Alternative, Motion to Dismiss Plaintiff's

Second Amended Complaint (hereinafter referred to as "Responses and Motions to Dismiss").

## I.   <u>Overview of the Case.</u>

On March 20, 2023, Plaintiff filed her original Complaint asserting the following claims against Defendants: Negligent Infliction of Emotional Distress (Compl. ¶¶ 11-17 (Count 1)); Intentional Infliction of Emotional Distress (*id.* at ¶¶ 18-23 (Count 2)); Intentional Infliction of Mental Suffering (*id.* at ¶¶ 24-25 (Count 3)); and False Imprisonment (*id.* at ¶¶ 26-27 (Count 4)). On May 11, 2023, Defendants timely filed their Answer and Motion to Dismiss Plaintiff's Complaint in its entirety for failure to state a claim. As such, pursuant to O.C.G.A § 9-11-12(j), discovery was stayed for ninety days (until August 9, 2023), or until the Court's ruling. On June 7, 2023, Plaintiff filed her Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint and also filed a Motion for Leave to File Amended Complaint and Memorandum of Law in Support ("Motion to Amend"), along with a copy of her proposed First Amended Complaint ("FAC"). Plaintiff's FAC makes certain new factual allegations but otherwise contains the same claims as her original Complaint: Negligent Infliction of Emotional Distress (Am. Compl., pp. 4-5, ¶¶ 1-6 (Count 1)); Intentional Infliction of Emotional Distress (*id.* at pp. 5-6, ¶¶ 1-6 (Count 2)); Intentional Infliction of Mental Suffering (*id.* at p. 6, ¶¶ 1-2

(Count 3)); and False Imprisonment (*id*. at pp. 6-7, ¶¶ 1-2 (Count 4)). On June 21, 2023, Defendants filed their Reply in support of their Motion to Dismiss Plaintiff's Complaint and their Response in Opposition to Plaintiff's Motion to Amend and, in the Alternative, Motion to Dismiss Plaintiff's First Amended Complaint. In their filing, Defendants demonstrated the following:

- Plaintiff's Negligent Infliction of Emotional Distress claim should be dismissed both because Plaintiff cannot seek recovery under a negligence theory for emotional distress caused by alleged intentional acts and because this claim is duplicative of her claim for Intentional Infliction of Emotional Distress. Plaintiff also failed to allege that she suffered a physical impact, or that the alleged conduct was malicious, willful, or wanton. (Def. Resp., pp. 8-12).

- Plaintiff's claim for Intentional Infliction of Emotional Distress should be dismissed because Plaintiff alleges no facts to support a conclusion that the alleged conduct was "extreme and outrageous" as is necessary to maintain this claim. For example, Plaintiff's claim focuses primarily on a single incident in the workplace, even though allegations much more egregious than those alleged have been deemed insufficient as a matter of law, and false accusations made in the workplace are

generally insufficient to support an IIED claim. Each of Plaintiff's remaining allegations is entirely speculative on its face. (*Id*. at pp. 12-18).

- Plaintiff's claim for Intentional Infliction of Mental Suffering should be dismissed because it is not a recognized cause of action under Georgia law, and is duplicative of her other claims. (*Id*. at p. 4, n. 4).

- Plaintiff's claim for False Imprisonment should be dismissed because Plaintiff does not allege any facts necessary to maintain this cause of action, such as a reasonable fear that Defendant would use force against her. (*Id*. at 18-19).

On July 23, 2023, Plaintiff filed a Motion for Leave to File Second Amended Complaint and Memorandum of Law in Support ("Second Motion to Amend"), along with a copy of her proposed Second Amended Complaint ("SAC") and her Reply in Opposition to Defendants' Response in Opposition to Plaintiff's Motion to Amend and, in the Alternative, Motion to Dismiss Plaintiff's Amended Complaint, and in the Alternative Plaintiff's Motion to [sic] for Leave to File a Second Amended Complaint. The SAC makes certain new factual allegations, but no longer contains a claim for Intentional Infliction of Mental Suffering, while adding a claim for Invasion of Privacy under Georgia law, along with three federal claims. The claims

in Plaintiff's proposed SAC are: Title VII- 42 U.S.C. §§ 2000e-Retaliation for Rejecting Sexual Advances and False Allegation[1] (SAC, ¶¶ 16-19 (Count 1)); Title VII- 42 U.S.C. §§ 2000e-Hostile Work Environment and Sex Discrimination (*id*. at ¶¶ 20-21 (Count 2)); Title VII- 42 U.S.C. §§ 2000e- Retaliatory (*id*. at ¶¶ 22-26 (Count 3)); Negligent Infliction of Emotional Distress (*id*. ¶¶ 27-35 (Count 4)); Intentional Infliction of Emotion Distress (*id*. at ¶¶ 36-43 (Count 5)); Invasion of Privacy (*Id*. at ¶¶ 44-47 (Count 6)); and False Imprisonment (*id*. at ¶¶ 48-50 (Count 4)).[2] Defendants have contemporaneously filed a Response in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint, and, in the Alternative, Motion to Dismiss Plaintiff's Second Amended Complaint, which articulates why this matter should be dismissed and which is incorporated by reference herein.

## II.   <u>Legal Argument.</u>

A stay of discovery pending the resolution of a Motion to Dismiss is appropriate in this matter. It is well established "[i]n civil cases, a trial court has broad discretion…to control the sequence and timing of discovery." *Lee v. Smith*,

---

[1] The titles of each claim are spelled as they are laid out in the proposed Second Amended Complaint.

[2] Plaintiff mistakenly asserts two "Count 4" in her proposed Second Amended Complaint. For purposes of this Motion Defendants will refer to the claims as asserted in the proposed Second Amended Complaint.

307 Ga. 815, 820-821 (2020). Generally, "a court's authority to order a stay in any proceeding before it is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Jurden v. HSBC Mortg. Corp.*, 330 Ga. App. 179, 180-81 (2014) (citing *Francis v. Reynolds*, 215 Ga.App. 418 (1994) (citations and punctuation omitted)). "O.C.G.A. § 9-11-12(j) mandates a stay of discovery when a motion to dismiss is filed before or at the time of filing an answer." *Id*.; *See* O.C.G.A. § 9-11-12 (j) ("If a party files a motion to dismiss before or at the time of filing an answer and pursuant to the provisions of this Code section, discovery shall be stayed for 90 days after the filing of such motion or until the ruling of the court on such motion, whichever is sooner. The court shall decide the motion to dismiss within the 90 days provided in this paragraph.") (emphasis added).

Currently, discovery is stayed until August 9, 2023, as a result of the filing of Defendants' Motion to Dismiss Plaintiff's original Complaint. Since then, Plaintiff has twice moved to amend her Complaint, and in each instance, Defendants sought denial of Plaintiff's motions to amend or, in the alternative, dismissal of her proposed complaints. Therefore, in the interest of judicial economy and the

resources of the parties, the current stay should be extended until all briefing has been completed and this Court has ruled on Defendants' pending Motions to Dismiss. *See Campbell v. Cirrus Educ., Inc.*, 355 Ga. App. 628, 631 (2020) ("Here, the record shows that after the appellants filed the initial complaint, Cirrus filed an answer and simultaneously filed a motion to dismiss on September 14, 2018. The appellants filed an amended complaint on October 10, 2018, and Cirrus filed an answer to the amended complaint and another motion to dismiss. More importantly, Cirrus filed a motion to extend the stay of discovery until a ruling on the motion to dismiss, to which the appellants did not object. Accordingly, we reject the appellants' argument that the trial court erred by granting the motion to dismiss when discovery had not yet commenced.").

A stay of discovery pending resolution of Defendants' pending Motions to Dismiss is in the interest of judicial economy, would not harm either party, and would prevent unnecessary expenses for the parties by avoiding undertaking discovery on claims or allegations which may be dismissed and/or stricken. *See Jurden*, 330 Ga. App. at 181 (upholding order to stay discovery where no harm from the stay was found since discovery had no bearing on the dismissal ruling); *Settles Bridge Farm v. Masino*, 318 Ga. App. 576, 581 (2012) (explaining that the trial court

has wide discretion to extend, shorten, or reopen the time for discovery, and its decision will not be reversed absent a clear abuse of that discretion).

**III.**   **Conclusion**.

Defendants respectfully request that this matter be stayed in its entirety, including, but not limited to, a stay of the discovery period and all deadlines in this matter, pending an order from this Court on Defendants' pending Motions to Dismiss.

A proposed order is attached for the Court's consideration.

This 7th day of August, 2023.

<div align="right">

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

</div>

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

<div align="center">

**Counsel for Defendants**

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing *EXPEDITED MOTION TO STAY DISCOVERY AND ALL DEADLINES PENDING RESOLUTION OF DEFENDANTS' PENDING MOTIONS TO DISMISS* upon *pro se* Plaintiff via U.S. Mail, first-class postage prepaid, addressed as follows and via email delivery:

<div align="center">

Shannon S. Moultrie
540 Cornwallis Way
Fayetteville, Georgia 30214
*smoultrie@me.com*

</div>

This 7th day of August, 2023.

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
*dmcduffie@constangy.com*
Sarah M. Phaff
GA Bar No. 140626
*sphaff@constangy.com*

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955

**Counsel for Defendants**

State Court of Fulton County
**E-FILED**
23EV001656
8/7/2023 5:27 PM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

**SHANNON S. MOULTRIE,**

      **Plaintiff,**

    **v.**

**WILLIS BRYANT GREEN, III and
LAW OFFICE OF W. BRYANT
GREEN, III, P.C.,**

      **Defendants.**

**Civil Action No. 23EV001656**

## [PROPOSED] ORDER

Having read and considered Defendants' Expedited Motion to Stay Discovery and All Deadlines Pending Resolution of Defendants' Pending Motions to Dismiss, said Motion is hereby **GRANTED**.

This matter is stayed in its entirety, including but not limited to the discovery period and related deadlines, until an Order(s) is issued by this Court on Defendants' Motion to Dismiss Plaintiff's Complaint; Defendants' Response in Opposition to Plaintiff's Motion to Amend and, in the Alternative, Motion to Dismiss Plaintiff's First Amended Complaint; and the contemporaneously filed Defendants' Response in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint and, in the Alternative, Motion to Dismiss Plaintiff's Second Amended Complaint.

8695315v1

So ORDERED, this _____ day of _____, 2023.

 

 

_____
Judge, State Court of Fulton County