IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICHARD OSBORN, ) | |
| ) | |
| ) | CIVIL ACTION FILE NO.: |
| Plaintiff, ) | _____ |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| DELTA AIR LINES, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

Plaintiff Richard Osborn ("Plaintiff" or "Mr. Osborn") respectfully submits the following Complaint:

## INTRODUCTION

Delta Air Lines, Inc. ("Delta" or "Defendant") is an international air carrier that has employed Mr. Osborn since 2010. Based on Delta's treatment of Mr. Osborn he asserts race and retaliation claims under 42 U.S.C. § 1981 ("§ 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and a national origin discrimination claim under Title VII.

## JURISDICTION AND VENUE

1. Plaintiff's claims under Title VII and § 1981 present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. This court is a proper venue of the Plaintiff's claims under 28 U.S.C. 1391(b), because Defendant is headquartered in the Northern District of Georgia.

## THE PARTIES

3. Plaintiff resides in Maryland. Plaintiff was an employee of Defendant at all times material to the Complaint.

4. Defendant is a for-profit company licensed to do business in Georgia that transacts business in the Northern District of Georgia.

5. Defendant is subject to the Court's jurisdiction and may be served with process through its registered agent for service of process Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

6. Defendant is a covered employer under Title VII.

## ADMINISTRATIVE PROCEEDINGS

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

8. On June 7, 2023, the EEOC issued Plaintiff a notice of right to sue.

9. All administrative prerequisites for filing suit on Plaintiff's Title VII claims have been satisfied.

## FACTUAL ALLEGATIONS

10. Richard Osborn is a white man originally from Australia. He has worked as an aircraft mechanic for Delta Air Lines since 2010. He currently fills the AMT 2, Line Maintenance position in the Technical Operations department in the Ronald Reagan Washington National Airport, Arlington, Virginia ("DCA") operations.

11. In 2020, Delta launched a "Close the Gap" program with the stated purpose to "correct racial injustice" for minority applicants and employees.

12. To help fulfill this mission, Delta requires employees to undergo annual computer-based training titled "Basics for Managing Unconscious Bias: Challenge Fit."

13. As a result of the initiative, white people, who are equally or more qualified than the diverse applicants, are not selected for positions.

14. The Close the Gap program worked as management within Mr. Osborn's work group has undergone a demographic shift by way of race and national origin. In other words, management has shifted from majority white to all minority.

15. In March 2022, Mr. Osborn applied for one of the Lead AMT 2 positions. He was passed over for a less qualified black man originally from Ethiopia named Biruk Debella. Mr. Osborn had more varied aircraft training and experience and more time with Delta than Mr. Debella.

16. Mr. Debella's only experience was as a Technician In Charge ("TIC"), a position that is in effect when there is no AMT Lead present on a shift, occurred during COVID-19. During that time flights were reduced by up to 70% of normal capacity and a substantial portion of the workforce was either on Leave of Absence or retired due to Delta's efforts to reduce payroll expenses during the pandemic. Thus, conditions under which Mr. Debella acted as TIC were not typical. In contrast, Mr. Osborn's TIC experience spanned multiple years and occurred under normal circumstances and normal workloads.

17. Mr. Osborn is also more qualified than Mr. Debella because he has 8+ years of experience working second shift, the shift that the AMT Lead position occupied. Mr. Debella had never worked second shift or the other operational shift (1st shift). Thus, he did not have the qualifications necessary to work second shift as even an AMT at the time of the interview because he lacked the required Boeing 757 ETOPS Qualification that is required to work on second shift.

18. After Mr. Debella was awarded the position, he was absent from the station for significant amounts of time to attend training necessary for the shift. After Mr. Debella's promotion, Mr. Osborn acted as TIC twice a week or more while Mr. Debella attended training that Mr. Osborn possessed at the time of the promotion.

19. Interestingly, Mr. Debella was not selected for the LAMT in April 2021 before the same selection panel. Instead, the position was awarded to AMT Pedro Valentine, a Hispanic man. Mr. Valentine has similar experience, qualifications, and time with the company as Mr. Osborn, who did not apply for the position at that time.

20. Following the April 2021 Lead opening, another position became open for which Mr. Debella applied. Again, he was not promoted but the position went to a much less experienced and less qualified mechanic, Pablo Cortes (Hispanic), with the reasoning being that the position was for Second Shift Lead and Cortes was performing well in the job as Second shift lead as he was second shift TIC. When Mr. Osborn, a white man, applied for the Lead position for second shift based on his years of experience on second shift, he was passed over for Mr. Debella, who had no experience in this position as a second shift TIC.

21. Befuddled by the selection, Mr. Osborn asked his immediate manager why he was not chosen. Tristan Budhram, Mr. Osborn's supervisor, told him that he was a "bad fit" and "did not score enough cultural points."

22. Not surprisingly, in light of the extensive diversity and equity measures put in place by Delta in 2020, Mr. Budhram told Mr. Osborn to the effect that "You have gone as far as you are going to go. Delta isn't promoting people like you anymore."

23. After that conversation, Mr. Osborn complained to Human Resources about being passed over for a promotion for a less qualified, black man. Delta HR failed to respond to Osborn's multiple complaints submitted on May 16, 2022; May 26, 2022; and June 27, 2022.

24. After these reports, Delta refused to pay Mr. Osborn for time worked and did not allow him use of the Human Resources processes. Additionally, Delta assigned him extra work with no increased compensation.

## COUNT I

## **DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq.***

40. Defendant discriminated against Plaintiff when it passed him over for promotion.

41. Defendant's stated reason for failing to promote Plaintiff is pretext for racial and/or national origin discrimination.

42. Defendant's discriminatory treatment of Plaintiff was in violation of Title VII.

43. Defendant willfully and wantonly disregarded Plaintiff's rights under Title VII and acted in reckless disregard for Plaintiff's rights under Title VII.

44. Defendant's discriminatory actions against Plaintiff were taken in bad faith.

45. As a result of Defendant's discriminatory treatment of Plaintiff, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

46. Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT II
## DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

47. Defendant discriminated against Plaintiff when they passed him over for promotion.

48. Defendant's stated reason for failing to promote Plaintiff is pretext for racial discrimination.

49. Defendant's discriminatory treatment of Plaintiff was in violation of 42 U.S.C. § 1981 ("Section 1981").

50. Defendant willfully and wantonly disregarded Plaintiff's rights under Section 1981 and acted in reckless disregard for Plaintiff's rights under Section 1981.

51. Defendant's discriminatory actions against Plaintiff were taken in bad faith.

52. As a result of Defendant's discriminatory treatment of Plaintiff, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

53. Pursuant to Section 1981, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

54. Plaintiff engaged in protected activity under Title VII by making internal complaints to Defendant alleging racial discrimination. After these complaints, Delta refused to pay Mr. Osborn for time worked and did not allow him use of the Human Resources processes. Additionally, Delta assigned him extra work with no increased compensation.

55. Defendant's actions, in subjecting Plaintiff to retaliation for engaging in protected activity by complaining of, and opposing, race discrimination, constitute unlawful intentional retaliation in violation of Title VII.

56. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

57. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

58. Pursuant to Title VII, Plaintiff is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Title VII.

## COUNT IV
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

59. Plaintiff engaged in protected activity under § 1981 by making internal complaints to Defendant alleging racial discrimination. After these complaints, Delta refused to pay Mr. Osborn for time worked and did not allow him use of the Human Resources processes. Additionally, Delta assigned him extra work with no increased compensation.

60. Defendant's actions, in subjecting Plaintiff to retaliation for engaging in protected activity by complaining of, and opposing, race discrimination, constitute unlawful intentional retaliation in violation of § 1981.

61. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

62. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

63. Pursuant to § 1981, Plaintiff is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a) A declaration that Defendant has violated the rights of Plaintiff under the federal statutes listed above;

(b) A permanent injunction against Defendant enjoining Defendant from further violations of the federal statutes listed above;

(c) Full back pay from the date of Plaintiff's failure to be promoted taking into account all raises to which Plaintiff would have been entitled but for Delta's unlawful action, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) Reinstatement to the Lead AMT 2 position with Defendant, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's garden variety emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f) Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(g) Reasonable attorneys' fees and costs.

(h) Other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted on this 9th day of August 2023.

LEGARE, ATTWOOD & WOLFE, LLC

*/s/ Eleanor M. Attwood*
Eleanor M. Attwood
Georgia Bar No. 514014
emattwood@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: (470) 823-4000