## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **SOODABEH RABBANI**, **MASOUD RISMANBAF**, | Civil Case No.: |
| *Petitioner-Plaintiffs,* | |
| v. | |
| **ANTONY J. BLINKEN**, *in his official capacity as U.S. Secretary of State,* | **PLAINTIFFS' PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Respondent-Defendant.* | |

## PETITION FOR WRIT OF MANDAMUS AND COMPLAINT
## FOR DECLARATORY RELIEF

Petitioner-Plaintiffs SOODABEH RABBANI and her husband, MASOUD RISMANBAF ("Plaintiffs"), by and through the undersigned counsel, respectfully bring this Petition for Writ of Mandamus and Complaint for Declaratory Relief to compel Respondent-Defendant ANTONY J. BLINKEN ("Defendant"), and those acting under him, to adjudicate the immigrant visa application of Petitioner-Plaintiff MASOUD RISMANBAF.

## NATURE OF ACTION

1.    Petitioner-Plaintiff SOODABEH RABBANI ("Ms. RABBANI"), a U.S. Citizen, is the Petitioner for the approved immigrant visa petition filed on behalf of her husband, Petitioner-Plaintiff MASOUD RISMANBAF ("Ms. MASJEDI").

2.      On August 19, 2022 Mr. RISMANBAF filed his Form DS-260, Online Immigrant Visa and Alien Registration Application ("DS-260") with the National Visa Center ("NVC"), requesting to be interviewed at U.S. Embassy Yerevan. **Exhibit A,** *DS-260 Confirmation Page*.

3.      On October 18, 2022, NVC found Mr. RISMANBAF's application to be documentarily complete/qualified.

4.      On February 27 2023, Mr. RISMANBAF was interviewed by the Consular Section of U.S. Embassy Yerevan. He has yet to receive a final adjudication of his visa application almost 3 months later.

5.      Following his interview, Mr. RISMANBAF's case was placed in administrative processing, where it has remained indefinitely since that time.

6.      Plaintiffs have fulfilled all necessary administrative requirements for Ms. MASJEDI to obtain the immigrant visa, but Defendant has unreasonably delayed in making a final decision on the immigrant visa application, leaving the Plaintiffs in a perpetual status of uncertainty.

7.      The delay in adjudication of Mr. RISMANBAF's immigrant visa application has placed a severe emotional and financial strain on the Plaintiffs. Plaintiffs have been unable to definitively plan for their future and have been forced to put their plans on hold.

8.     Statutes, regulations, and agency guidance make clear that the Defendants have a mandatory duty to adjudicate Mr. RISMANBAF's immigrant visa application within a reasonable time – a duty which they have failed to fulfill.

9.     As a result of the unreasonable delay in adjudication, Plaintiffs have suffered concrete, severe, and particularized injury. Plaintiffs have been separated from one another with no idea of when, or if, they will ever be reunited. They are faced with the prospect of being separated indefinitely. This is particularly troubling as Ms. RABBANI is member of the Bahá'í faith, a persecuted minority religious group in Iran. Mr. RISMANBAF is considered a Muslim in his home country of Iran and marriage between the two groups are punishable by law in Iran. ***See* Exhibit B, Religious Persecution Information.**

10.     Failure by Defendant to promptly adjudicate Plaintiffs' request has, and will continue to, put Mr. RISMANBAF's freedom in jeopardy.

11.     Plaintiffs have informed the Embassy of their circumstances, but Defendant has persisted with the unreasonable delay. Defendant's delay in final adjudication is unreasonable and without justification.

12.     The Department of State, and its employees, are required to process immigrant visas within a specific time.

13.     "Section 237 of Public Law 106-113 and subsequent legislation *require* that the Department establish a policy under which immediate relative (and

fiancé(e)) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security (DHS); all other family-based IV *must* be processed within 60 days." *See* 9 FAM 504.7-2(b),[1] and District of Columbia Appropriations Act, 1999, Public Law 106-113, sec 237. (Emphasis added). The Department expects all posts to strive to meet the 30/60-day requirements. *Id.*

14.     Plaintiffs are entitled to a decision on Mr. RISMANBAF's immigrant visa application. See 22 C.F.R. § 42.81(a) ("Issuance or refusal mandatory. When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa[.]") (emphasis added); see also sections 101(a)(9), (16), 201(b)(2)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101(a)(9), (16), 1201(b)(2)(A)(i); *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) ("A consular office is required by law to act on visa applications.")

15.     If a visa is refused, the application must be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to

---

[1] The Foreign Affairs Manual ("FAM") and associated Handbooks ("FAHs") are internal sources for the Department of State's organization structures, policies, and procedures that govern the operations of the State Department. The FAM (generally policy) and the FAHs (generally procedures) together convey internal policies to Department of State staff and contractors so they can carry out their responsibilities.

overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e). (Emphasis added).

16.    Mr. RISMANBAF's immigrant visa application remains within the jurisdiction of the Defendants, who have improperly withheld action on it for over two years and three months since the filing of the immigrant visa application, **27 times** the amount of time intended by Congress for the processing of immediate relative visas, to the extreme detriment of the rights and privileges of Plaintiffs.

17.    Plaintiffs now turn to this Court seeking an order to compel the Defendant and those acting under them to immediately and forthwith take all appropriate action to fulfill their mandatory, non-discretionary duty to provide a final adjudication of Mr. RISMANBAF's immigrant visa application within a reasonable time.

## **JURISDICTION**

18.    This case arises under the United States Constitution; the INA, 8 U.S.C. § 1101 *et seq.*; and the APA, 5 U.S.C. § 555(b) and § 701 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1329, and 1361.

19.    This is a civil action brought pursuant to 28 U.S.C. § 1361. ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff.") Jurisdiction is further conferred by 8 U.S.C. § 1329 (jurisdiction of the district courts) and 28 U.S.C. § 1331 (federal subject matter jurisdiction). This Court also has authority to grant declaratory relief under 28 U.S.C. § 2201 and 2202, and injunctive relief under 5 U.S.C. § 702 and 28 U.S.C. § 1361.

20.     Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

21.     Plaintiffs are challenging the Defendant's authority to refuse to adjudicate Plaintiff's immigrant visa application, and not challenging a final decision which is within the discretion of the Defendants. Therefore, jurisdiction exists for this Court to consider whether Defendants have authority to withhold adjudication. *See Patel*, 134 F.3d at 932; *Raduga USA Corp. v. United States Dep't of State*, 440 F. Supp. 2d 1140, 1149 (S.D. Cal. 2005) (finding mandamus jurisdiction where "Plaintiffs simply seek to compel the consul to render a final decision on Plaintiff's visa application which is mandated under [8 C.F.R.] § 42.81(a)").

22.     Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b) and 702, the Administrative Procedure Act ("APA"). The APA requires the Defendants to

carry out their duties within a reasonable time.  5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it."  (Emphasis added). The Defendants are subject to 5 U.S.C. § 555(b). *See Patel*, 134 F.3d at 931-32 ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.") (Internal citations omitted); *Raduga USA*, 440 F. Supp. 2d at 1146 ("[T]he Court finds that Plaintiffs have sufficiently demonstrated Article III standing to bring this APA mandamus action.") *See also Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that district court has jurisdiction under the APA, in conjunction with 28 U.S.C. § 1331, to review Plaintiffs' complaint for declaratory and injunctive relief against federal agency); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 114 (D.D.C. 2005) ("The [APA] requires an agency to act, within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to compel agency action … unreasonably delayed," 5 U.S.C. § 706(1).")

23.  Section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. INA § 242(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this

section, shall be the sole and exclusive means for judicial review of an order of

removal entered or issued under any provision of this Act[.]" As the present action

does not seek review of a removal order, but is simply an action to compel the

Defendants to adjudicate the Plaintiffs' unreasonably delayed application, this Court

retains original mandamus jurisdiction under 28 U.S.C. § 1361. See *Liu v. Novak*,

509 F. Supp. 2d 1, 5 (D.D.C. 2007) ("[T]here is … significant district court authority

holding that [8 U.S.C.] § 1252(a)(2)(B)(ii) does not bar judicial review of the pace

of application processing or the failure to take action.") As set forth below, the delay

in adjudicating Plaintiffs' immigrant visa applications is unreasonable.

24.     Under the APA, a reviewing court may order action unlawfully

withheld, and may also "hold unlawful and set aside agency action, findings, and

conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise

not in accordance with law" and agency action taken "without observance of

procedure required by law" *See* 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D).

25.     The Code of Federal Regulations is unambiguous that the Embassy has

a mandatory and affirmative duty to adjudicate a properly filed immigrant visa

application where the underlying I-130 petition has been approved by USCIS and

forwarded to the appropriate overseas embassy. 22 C.F.R. § 42.81(a); *see also* INA

§ 201(c)(1)(A-C) ("Worldwide Level of Family-Sponsored Immigrants.").

26.    The court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*

## VENUE

27.    Venue properly lies within the Northern District of Georgia pursuant to 28 U.S.C. § 1391(e)(1)(C) because one Plaintiff, Ms. RABBANI, resides in Lawrenceville, Georgia, within this district, and Defendant is an officer and employee of the United States sued in his office capacities.

## PARTIES

28.    Petitioner-Plaintiff Ms. RABBANI is a U.S. Citizen and the Petitioner of a Form I-130 Petition for Alien Relative filed on behalf of her husband,  Mr. RISMANBAF.

29.    Petitioner-Plaintiff Mr. RISMANBAF is the beneficiary of an approved Form I-130 Petition for Alien Relative, filed by her U.S. Citizen wife, Ms. RABBANI, and an applicant for an immigrant visa, pending administrative processing at the U.S. Embassy Yerevan.

30.    Respondent-Defendant Antony J. Blinken, is the Secretary of the U.S. Department of State, the department under which the U.S. embassies and consulates operate. As such, Defendant Blinken has supervisory responsibility over the U.S. Embassy. Defendant Blinken is sued in his official capacity.

## STATUTORY AND REGULATORY FRAMEWORK

**I.      Statutory and Regulatory Framework for Visa Adjudications**

31.     Family reunification, which has long been a key principle underlying U.S. immigration policy, is embodied in the Immigration and Nationality Act (the "INA").

32.     In 1952, Congress enacted the INA and has amended it several times since.

33.     The Immigration and Nationality Act Amendments of 1965 (P.L. 89-236), enacted during a period of broad social reform, eliminated the national origins quota system, which was widely viewed as discriminatory, and gave priority to immigrants with relatives living permanently in the United States. In 1990, Congress passed the Immigration Act of 1990. Pub. L. 101-649.

34.     The INA established a complex system of immigrant visa availability to classes of foreign nationals. Congress's chief goals in writing the INA were reunifying families, admitting skilled immigrants, protecting humanitarian interests, and promoting diversity. *See, e.g.*, *Solis- Espinoza v. Gonzales*, 401 F.3d 1090, 1094 (9th Cir. 2005).

35.    The INA authorizes consular officers to issue immigrant and nonimmigrant visas to foreign nationals who are eligible for those visas and who are admissible to the United States. *See* 8 U.S.C. § 1201; 22 C.F.R. § 42.71.

36.    One of the primary methods by which foreign nationals seek to immigrate to the United States is immigration based on their familial relationship with a United States citizen or lawful permanent resident. Under the INA, family-sponsored visas may be issued to, *inter alia*, the children of U.S. citizens. 8 U.S.C. § 1153(a)(1)-(4).

37.    A family-based immigrant visa application is first initiated when a U.S. citizen or legal permanent resident files a Petition for Alien Relative ("Form I-130") with USCIS. 8 U.S.C. § 1154. USCIS then verifies that the petitioner is a United States citizen or legal permanent resident and that a qualifying relationship exists between the petitioner and the beneficiary. 8 C.F.R. § 204.1(a)(1).

38.    Upon I-130 approval, if the beneficiary of the immigrant visa petition is residing outside of the United States, the petition is then sent to NVC for pre-processing and the beneficiary is able to begin the process of formally applying for an immigrant visa by submitting a DS-260 Online Immigrant Visa and Alien Registration Application ("the DS-260").

39.    After completing the DS-260, filing supporting documentation and submitting fees, forms and supporting documentation to the NVC for review, the

application is then sent to the Embassy having jurisdiction over the alien's place of residence for interview.

40.     Generally, Department regulations designate the applicant's residence as the determining factor for the place of application under normal circumstances. 9 FAM 504.4-8(A).

41.     However, for "homeless" applicants, The Visa Office (VO) has designated specific posts to process those IV applications. 9 FAM 504.4-8(E)(2)(c).

42.     A homeless visa applicant is a national of a country in which the United States has no consular representation or the political or security situation is tenuous or uncertain enough that the limited consular staff is not authorized to process IV applications. 9 FAM 504.4-8(E)(1)(a).

43.     The Department of State website instructs that "if a visa is available for [the] relative's category, and their case involves a life-or-death medical emergency, processing of [the] case may be expedited," and that "[consular sections overseas [are] able to expedite [the] interview date if there is an urgent, unforeseen situation such as a funeral, medical emergency, or school start date."

## II.    Defendant's Mandatory Duty to Adjudicate Plaintiff's Visa Application

44.     Defendants have a mandatory duty to adjudicate Mr. RISMANBAF's visa application within a reasonable time. *Mohamed v. Pompeo*, No. 1:19-cv-01345-

LJO-SKO, 2019 U.S. Dist. LEXIS 167266 (E.D. Cal. Sep. 27, 2019) (issuing a mandatory injunction ordering the DOS to complete adjudications of immigrant visa applications); 5 U.S.C § 555(b) (requiring agencies to, "within a reasonable time … conclude the matter presented to it"); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry* ("Nine Iraqi Allies"), 168 F. Supp. 3d 268, 293 n. 22, 295–96 (D.D.C. 2016).

45.     The INA, its implementing regulations, and preexisting Department policies in the Field Affairs Manual ("FAM") all mandate timely adjudication of immigrant visa applications.

46.     Every foreign national executing an immigrant visa application "*must be interviewed by a consular officer* who shall determine on the basis of the applicant's representations and the visa application and other relevant documentation - (1) The proper immigrant classification, if any, of the visa applicant, and (2) The applicant's eligibility to receive a visa." 22 C.F.R. § 42.62 (b).

47.     After completing a medical examination, and paying applicable fees, the beneficiary is interviewed by a consular officer at the beneficiary's applicable U.S. Embassy or consulate. During the interview, the applicant executes Form DS-260 by swearing to or affirming its contents and signing it before a consular officer. *See* 22 C.F.R. §42.67.

48.     The Department of State website instructs that at the end of one's immigrant visa interview at the U.S. Embassy or Consulate, the consular officer will inform the applicant whether their visa application is approved or denied. "If your visa is denied, you will be informed by the consular officer why you are ineligible to receive a visa." [2]

49.     At the interview, a consular officer must issue a visa to an eligible applicant.

50.     Under 22 C.F.R. § 42.81(a), "when a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer *must* issue the visa [or] refuse the visa under INA 212(a) or 221(g) or other applicable law."

51.     If the applicant is admissible to the United States, the consular officer "shall" issue the selectee an immigrant visa and may only refuse a visa "upon a ground specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.

52.     The Department of State Foreign Affairs Manual ("FAM") reiterates that "[o]nce an application has been executed, you must either issue the visa or refuse it [...]. You cannot temporarily refuse, suspend, or hold the visa for future action. If you refuse the visa, you must inform the applicant of the provisions of law on which

---

[2] *See "The Immigrant Visa Process*," U.S. Department of State, *available at* https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-12-after-the-interview.html (last accessed Feb. 21, 2023).

the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM § 504.9-2.

53.    If the consular officer determines that a visa should be issued, the officer is required to arrange the appropriate visa documentation and sign and seal the immigrant visa, consistent with the requirements set forth in 22 C.F.R. § 42.73. "The immigrant visa shall then be issued by delivery to the immigrant or the immigrant's authorized agent or representative." *Id*. § 42.73(d).

54.    Conversely, if the consular officer determines that the visa should be refused, the officer must have a basis for refusal that is "specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.

55.    The officer also must comply with the refusal procedure outlined in 22 C.F.R. § 42.81(b), which mandates, in relevant part, that the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."

56.    If the consular officer determines that a visa should be issued, the officer is required to arrange the appropriate visa documentation and sign and seal the immigrant visa, consistent with the requirements set forth in 22 C.F.R. § 42.73. "The immigrant visa shall then be issued by delivery to the immigrant or the immigrant's authorized agent or representative." *Id*. § 42.73(d).

57.     Conversely, if the consular officer determines that the visa should be refused, the officer must have a basis for refusal that is "specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.

58.     The officer also must comply with the refusal procedure outlined in 22 C.F.R. § 42.81(b), which mandates, in relevant part, that the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."

59.     There are no exceptions to the rule that once a visa application has been properly completed and executed before a consular officer, a visa must be either issued or refused. 9 FAM § 504.9-2

60.     Accordingly, any foreign national to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day if it is normal post procedure to issue visas to some or all applicants the following day, must be found ineligible under one or more provisions of INA 212(a), 212(e), or 221(g). Furthermore, INA 221(g) is not to be used when a provision of INA 212(a) is applicable.

61.     The regulations and the FAM specify what are valid grounds for refusal.

62.     If the consular officer determines that the visa should be refused, the officer "shall provide the applicant a timely written notice" that states the basis for the denial and lists the specific provisions of the law under which the visa was refused. INA § 212(b), 8 USC § 1182(b); 22 § CFR 41.121(b).

63.     The FAM categorizes Section 221(g) refusals issued for the purpose of conducting administrative processing as "Quasi-Refusal Cases." 9 FAM § 504.11-3(B).

64.     When a "quasi-refusal" is issued pursuant to INA § 221(g), the applicant must be notified **both** orally and through a refusal letter, which is required to "[e]xplicitly state the provision of the law under which the visa was refused." 9 FAM § 504.11-3(A)(1) (emphasis added).

65.     In the event that a visa is refused, the application **must** be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e) (emphasis added).

66.     In addition, 22 C.F.R. § 40.6 states that "[a] visa can be refused only upon a ground specifically set out in the law or implementing regulations."

67.     A consular officer cannot temporarily refuse, suspend, or hold the visa for future action.

68.     If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available. 9 FAM 504.1-3(g); see 9 FAM § 504.11-2(A)(b) ("There is no such thing as an informal refusal or a pending case once a formal application has been made."); *see also Alharbi v. Miller*, 368 F. 3d 527, 558 (E.D.N.Y. 2019) (holding that consular officers have a "nondiscretionary binary" duty to issue or refuse visas).

69.     "Section 237 of Public Law 106-113 and subsequent legislation require that the Department establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security (DHS); all other family-based IV ***must*** be processed within 60 days." *See* 9 FAM 504.7-2(b), and District of Columbia Appropriations Act, 1999, Public Law 106-113, sec 237. (Emphasis added).

70.     When read together, the INA, regulations, and DOS policy require Defendant to process, interview, and issue visas to eligible visa applicants.

## STATEMENT OF FACTS

71.     Petitioner-Plaintiff Ms. RABBANI is a U.S. Citizen, and the Petitioner of approved Form I-130 Petition for Alien Relative filed on behalf of her Husband, Mr. RISMANBAF.

72.     Petitioner-Plaintiff Mr. RISMANBAF is an Iranian national and the principal applicant for an immigrant visa application currently pending final adjudication at the U.S. Embassy Yerevan. Mr. RISMANBAF currently lives in Iran and is indefinitely separated from his wife, Ms. RABBANI.

73.     Ms. RABBANI began the process to bring her husband, Mr. RISMANBAF, to the United States by filing an I-130 Petition for Alien Relative for each.

74.     On or about July 1, 2022, the I-130 Petition was approved. Upon approval, USCIS forwarded the approved petition to the NVC for pre-processing.

75.     On August 19, 2022, NVC assigned Mr. RISMANBAF's immigrant visa application the consular case number ABD2022717100. (which is no longer his case number, see below).

76.     On August 19, 2022,  Plaintiffs paid the appropriate immigrant visa processing fees and timely submitted the DS-260, Online Immigrant Visa and Alien Registration Application visa along with the supporting documentation to the NVC.

77.     On September 1, 2022, NVC changed Mr. RISMANBAF's interview location to U.S. Embassy Yerevan, and NVC assigned a new case number **YRV2022744004**.

78.     On February 27, 2023, Mr. RISMANBAF was interviewed by the Consular Section of the U.S. Embassy Yerevan.

79.    After the interview, Mr. RISMANBAF was informed that his application would have to undergo mandatory administrative processing.

80.    The consular officer gave Mr. RISMANBAF a temporary refusal notice which stated that the "visa application is refused under section 221(g) of the U.S. Immigration and Nationality Act. This refusal may be overcome when requested documents are provided and/or administrative processing is completed.

81.    The consular officer also requested that Mr. RISMANBAF complete and submit Form DS-5535, Supplemental Questions for Visa Applicants, requesting 15 years of detailed history including addresses, employment, travel, and social media handles.

82.    Mr. RISMANBAF promptly completed and submitted her detailed response to the questionnaire on February 27, 2023.

83.    Despite the passage of nearly 9 months since the case was created, Plaintiffs have yet to receive a final decision on the pending visa application.  In fact, for 3 months since the interview, Mr. RISMANBAF's visa application status on the State Department Consular Electronic Application Center ("CEAC") website continues to show that the case is "Refused" and informs those that were "refused for administrative processing, [that their] case will remain refused while undergoing such processing [and] will receive another adjudication once such processing is

complete […] you will be contacted if additional information is needed." **Exhibit C**, ***CEAC Online Case Status***.

84.     Despite Plaintiffs' inquiries with the Embassy, Mr. RISMANBAF's immigrant visa application remains in an indefinite state of additional "administrative processing" with no timeline for completion.

85.     Plaintiffs have yet to receive a final decision on Mr. RISMANBAF's visa application, and Defendants have failed to complete their duties in order to adjudicate Mr. RISMANBAF's visa application in a reasonable amount of time.

86.     As the beneficiary of an approved I-130 petition, Mr. RISMANBAH is entitled to the issuance of the immigrant visa unless she is ineligible under a specific ground of ineligibility set forth in the governing statutes and regulations.

87.     As a direct result of Defendant's failure to issue a decision on Mr. RISMANBAF's immigrant visa application, Plaintiffs have experienced, and will continue to experience severe, particularized, and concrete injury.

88.     Due to the persistent delay in adjudication of the visa application, what was meant to be a very temporary separation has become a nightmare of living apart. Due to the lack of substantive updates from Defendants, Plaintiffs live with the ever-increasing fear that they will be separated indefinitely.

89.    Plaintiffs desperately wish to live a normal life as a family and have been forced to resort to phone calls as their only source of comfort and emotional support.

90.    The failure of the Defendants to timely adjudicate Mr. RISMANBAF's applications is causing severe emotional distress and psychological harm to the entire family by forcing them to  remain separated with no idea when they will be reunited.

91.    Plaintiffs had anticipated that they would have to wait for some time in order to be reunited. However, they never expected nor were prepared to be separated from each other for this long.

92.    Plaintiffs have also spent a considerable amount of money on legal representation as well as other expenses related to the adjudication of their visa application.

93.    Plaintiffs are now left in an untenable situation with no apparent end in sight. As a result, they are suffering from extreme emotional and psychological harm due to the uncertainty of their family's future.

94.    Plaintiffs have informed the U.S. Embassy repeatedly of their circumstances. However, they have received no substantive information from these inquiries and have only been told that the case is pending administrative processing and that no additional information is needed.

95.     Despite all reasonable attempts by Plaintiffs to determine the nature of the delay in visa issuance, Defendants have unreasonably delayed making a final decision on Plaintiffs' visa applications without explanation or on the grounds of any rational basis.

96.     Defendant's delay in adjudication is unreasonable and is causing irreparable injury to the Plaintiffs.

97.     The physical, financial, and emotional stresses that Plaintiffs have suffered, all of which Defendants are fully aware of, because of Defendant's failure to act have exacted a significant toll on Plaintiffs that will not be relieved until the visa application is adjudicated.

## CAUSES OF ACTION

### COUNT ONE:
### Mandamus Act, 28 U.S.C. § 1361

98.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.     Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

100.   A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 113 (D.D.C. 2005); *see also Patel*, 134 F. 3d at 933 (duty to adjudicate an immigrant visa application).

101.   The Plaintiffs clearly meet all three of these criteria. *See, e.g.*, *Raduga USA*, 440 F. Supp. 2d at 1146 ("Plaintiffs' claim here is clear and certain, and the consul's nondiscretionary, ministerial duty is plainly prescribed. Furthermore, Plaintiffs have no other means to compel the United States consul to make a decision.") *United States v. Kerry,* 168 F.Supp.3d 268, 291-92 (D.D.C. 2016)(holding the doctrine of consular non-reviewability did not apply where plaintiffs' visa applications were not formally refused, but were held in "administrative processing"); see also *Patel v. Reno,* 134 F.3d 929, 932-33 (9th Cir. 1997)(affirming the granting of mandamus relief where plaintiff's application had only been "provisionally refused"); *Maramjaya v. U.S. Citizenship & Immigration Servs.,* 2008 WL 9398947, at 4 (D.D.C. Mar. 26, 2008)(holding that the doctrine of consular non-reviewability did not apply when the case had not procedurally progressed to the point where consular immunity would bar judicial review").

24

102.    Plaintiffs have fully complied with all statutory and regulatory requirements for obtaining an immigrant visa for Mr. RISMANBAF, including obtaining approval of an I-130 Petition for Alien Relative, applying for his visa with a properly filed DS-260, and submitting all necessary documentation and paying all required fees.

103.    Defendants have a clear non-discretionary duty to adjudicate immigrant visa applications and issue a visa to Mr. RISMANBAF, who is eligible to receive the visa and not inadmissible under 8 U.S.C. § 1182(a).

104.    Defendants owe Plaintiffs a duty to act upon Mr. RISMANBAF's immigrant visa application. The INA and the relevant regulations impose on the Defendants a non-discretionary duty to timely adjudicate Plaintiff's visa application and to complete any background checks, interviews, or other investigations required by the Defendants to do so.

105.    This duty is owed under the INA, federal regulations, and published agency guidance. *See* INA § 201(b)(2)(A)(i); INA §§ 101(a)(9), (16); 22 C.F.R. § 42.81(a); *see also, e.g.*, *Donovan v. United States*, 580 F.2d 1203, 1208 (3d Cir. 1978) (holding that mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act).

106.   The Department of State, its employees, and its subsidiaries are required to process immediate relative visas "***within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security***; all other family-based immigrant visas (IV) must be processed within 60 days." *See* 9 FAM § 504.7-2(b), and District of Columbia Appropriations Act, 1999, Public Law 106-113, sec 237, (emphasis added).

107.   Nonetheless, Defendants have willfully and unreasonably failed to adjudicate Mr. RISMANBAF's immigrant visa application, thereby depriving Plaintiffs of their rights under 22 C.F.R. § 42.81(a), 8 U.S.C. 1184(d)(1), and the APA to have a properly filed visa application decided in a timely manner.

108.   Adjudication of Plaintiff's immigrant visa application is a purely ministerial, non-discretionary act which the Defendant is under obligation to perform in a timely manner; the Plaintiffs have no alternative means to obtain adjudication of the visa; and their right to issuance of the writ is "clear and indisputable." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980); *see also First Federal Savings and Loan Ass'n of Durham*, 860 F.2d at 138; *Patel*, 134 F.3d at 933 ("[W]e find that the consulate had a duty to act and that to date ... the consulate has failed to act in accordance with that duty and the writ [of mandamus] should issue.").

109.    Mandamus action is also appropriate because Defendants failed to act within a reasonable time. *See, e.g., Liu v. Novak*, 509 F. Supp. 2d 1, 9 (D.D.C. 2007) (holding that the APA requires the government to act within a reasonable period of time); *see also Sierra Club v. Thomas*, 828 F.2d 783, 794 (D.C. Cir. 1987) (stating that "regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice").

110.    It is the sense of Congress that the processing of an immigration benefit application should be **completed not later than 180 days after the initial filing** of the application. *See* 8 U.S.C. § 1571 and (Pub. L. 106–313, title II, §202, Oct. 17, 2000, 114 Stat. 1262.).

111.    Defendants have failed in their duty to adjudicate Plaintiff's visa application by refusing to act for an entirely unreasonable amount of time and well over 70 days since the interview.

112.    Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law. *See* INA § 201(b)(2)(A)(i), INA §§ 101(a)(9), (16); 22 C.F.R. § 42.81(a) and 42.81(e).

113.    "A claim of unreasonable delay is necessarily fact based and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage" *Moreno v. Wolf*, 558 F. Supp. 3d 1357, 1366 (citing *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 and *Yue Yu v. Brown*, 36 F. Supp. 2d 922, 935)

114.    Defendants have a clear, non-discretionary, and mandatory duty to adjudicate the visa applications. There is no legal bar to doing so.

115.    Defendants have no legal basis for failing to proceed with the applications and for their failure to timely adjudicate the applications and any background checks or other investigations required.

116.    No alternative remedy exists to compel action by Defendants.

117.    Accordingly, Plaintiffs have a clear and indisputable right to have the visa application adjudicated.

**COUNT TWO:**
**Violation of the APA, 5 U.S.C. § 706(2)**
***Withholding of Plaintiff's Immigrant Visa Application***

118.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

119.    The Department is an Agency subject to the requirements of the APA 5 U.S.C. § 701(b)(1).

120.    Under 5 U.S.C. § 706(2), courts shall hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law.

121.    The APA defines action, in part, as a "failure to act." 5 U.S.C. § 551(13).

122.    The APA authorizes courts to compel agency action for two distinct types of "failures to act" – (1) unlawful withholding of agency action or (2) unreasonable delay of agency action. 5 U.S.C. § 706(1).

123.    Here, Defendants have unlawfully withheld agency action in contravention of statutes, regulations, and stated policy pronouncement.

124.    Mr. RISMANBAF has fulfilled all requirements, paid all fees, and is otherwise eligible for an immigrant visa. Yet Defendants have failed to adjudicate Mr. RISMANBAF's application within a reasonable time and have instead unlawfully withheld agency action, leaving Plaintiffs in an indefinite limbo.

125.    Fully adjudicating an immigrant visa application for a relative of a U.S. citizen within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security is a discrete and required action. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004).

126.    The unlawful withholding and unreasonable delay in the adjudication and issuance of Mr. RISMANBAF immigrant visa constitute a final agency action that is reviewable by this Court. *Whitman*, 531 U.S. at 478; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

127.    Agency action "cover[s] comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'n*, 531 U.S. at 478.

128.    Agency action that is final is "mark[ed by] the consummation of the agency's decision-making process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

129.    As demonstrated above, Defendants have failed to timely adjudicate Plaintiff's immigrant visa application, effectively suspending the processing and adjudication of a visa for an otherwise qualified and eligible applicant.

130.    In this case, the legal consequences flowing from the consummation of the State Department's decision-making process are the Defendant's withholding and delay in processing Plaintiff's immigrant visa well beyond the 30/60-day requirement by which they are required. *Bennett*, 520 U.S. 154; *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 (D.C. Cir. 1986).

131.    Defendant's inaction, in this case, creates jurisdiction. *Moghaddam v. Pompeo*, 424 F. Supp. 3d 103, 114 (D.D.C. 2020) (quoting *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997)); *see also Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry* ("*Nine Iraqi Allies*"),

168 F. Supp. 3d 268, 290–91 (D.D.C. 2016) ("When the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all.").

132.    Plaintiffs were harmed by Defendant's inaction and delay.

133.    Plaintiffs will continue to be irreparably harmed by these unlawful acts absent an injunction from this Court enjoining Defendants from withholding adjudication of Mr. RISMANBAF's immigrant visa application.

**COUNT THREE:**
**Violation of the APA, 5 U.S.C. § 706(1)**
***Withholding of a Mandatory Entitlement Owed to Plaintiffs***

134.    Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein.

135.    Section "706(1) grants judicial review if a federal agency has a 'ministerial or non- discretionary' duty amounting to a 'specific, unequivocal command.'" *Anglers ConservationNetwork v. Pritzker*, 809 F.3d at 670.

136.    Under section 706(1) of the APA, the court may "compel agency action unlawfullywithheld." 8 U.S.C. § 706(1).

137.    The timely adjudication of and decision on a properly filed pending application are not optional. This is not committed to agency discretion, nor are the statutes, regulations, and policies, so broad as to provide no meaningful standard to

judge the agency's action. Rather, these duties and how Defendants must undertake them are detailed in the INA, the FAM, and its governing regulations.

138.  Defendant's conduct is contrary to the INA's mandate that all immigrant and nonimmigrant "visa applications *shall* be reviewed and adjudicated by a consular officer" 8 U.S.C. § 1202(b), (d), and 8 U.S.C. § 1201(a)(1) which provides that a "consular officer may issue" a visa to an individual who has "made proper application therefor,"

139.  Pursuant to sections 1202(b) and 1202(d) of the INA, Defendants owe a nondiscretionary duty to Plaintiffs, which require that all immigrant and nonimmigrant visa applications "*shall* be reviewed and adjudicated by a consular officer" and creates a discrete, legally required action. 8 U.S.C. § 1202(b), (d) (emphasis added).

140.  Congress's use of the word "shall" imposes a mandatory non-ministerial duty on consular officers to review, adjudicate, and issue fiancé visas. *Sierra Club v. E.P.A.*, 705 F.3d 458, 467 (D.C. Cir. 2013) ("the word 'shall' ... evidences a clear legislative mandate…")

141.  Likewise, the Code of Federal Regulations is unambiguous that Defendants have a mandatory and affirmative duty to interview immigrant visa applicants and adjudicate a properly filed immigrant visa application. Under 22 C.F.R. § 42.81(a), "when a visa application has been properly completed and

executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer *must* issue the visa [or] refuse the visa under INA 212(a) or 221(g) or other applicable law."

142.    Defendants have a "nondiscretionary, ministerial" duty to act. The INA governs visa processing and "confers upon consular officers' exclusive authority to review applications for visas. *Saavedra Bruno v. Albright,* 197 F. 3d 1153, 1156 (D.C. Cir. 1999); *see also* § 201(e), INA §§ 101(a)(9), (16); a "consular office is required by law to act on visa applications." *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997).

143.    Defendants owe Plaintiffs a nondiscretionary, ministerial duty to act upon the immigrant visa application, one that they have failed to fulfill. *See* INA §201(e); INA §§ 101(a)(9), (16); 22 C.F.R.§ 42.62; *see also, e.g., Donovan v. United States*, 580 F.2d 1203, 1208 (3d Cir. 1978) (holding that mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act).

144.    Defendants have refused to adjudicate Mr. RISMANBAF's immigrant visa application despite him being eligible for adjudication and visa issuance.

145.    Defendants are unlawfully withholding discrete action they are required to take within the temporal limits imposed by statute and the express intent of

Congress, and as outlined above they have failed to adjudicate Plaintiff's immigrant visa application in contravention of that nondiscretionary duty.

## COUNT FOUR:
### *Unreasonably Delayed Adjudication*

146.    Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein.

147.    Pursuant to the APA, Defendants have a nondiscretionary duty to conclude a matter presented to it within a reasonable time. *See* 5 U.S.C. § 555(b).

148.    Pursuant to the APA, 5 U.S.C. §706(1), a court may compel agency action  unlawfully withheld or unreasonably delayed.

149.    Plaintiffs' claims implicate the statutory mandates that "*[a]ll* immigrant visa applications *shall* be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b) (emphases added).

150.    Defendants have unreasonably delayed processing Plaintiff's visa application for over 31 months since the submission of the application, and all required fees and documents.

151.    The Department of State, and its employees are required to process immediate relative immigrant visas "within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security" and all family-based immigrant visas "within 60 days of receipt of the necessary information from the applicant and the Department of Homeland Security." See 9

FAM § 504.7-2(b), and District of Columbia Appropriations Act, 1999, Public Law 106-113, sec 237. The FAM makes clear that "the Department expects all posts to strive to meet the 30/60-day requirements." *Id*.

152.    This is a clear indication of speed with which the agency is expected to process immediate relative and family-based immigrant visa applications.

153.    "Reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004).

154.    Plaintiffs' human welfare is "at stake" in this case and the prejudice from any further delay is devastating and unconscionable. If Defendants continue to neglect adjudication of Plaintiff's visa application, Plaintiffs will continue to suffer financially, psychologically, and emotionally indefinitely until they are reunited. *TRAC*, 750 F.2d at 80.

155.    Defendant's blatant disregard for the indefinite suffering of separated families and the time-sensitive nature of Plaintiffs' case shows—although not needed to satisfy the *TRAC* analysis—that Defendants act with impropriety in creating "agency lassitude."

156.    Defendant has failed to adjudicate immigrant visas for Plaintiff within a reasonable time.

157.    Plaintiff has submitted all required information, documents, and payments and is eligible for the visa they seek, and yet, Defendants have failed to issue a final decision on the visa application.

158.    Defendants have already cost Plaintiffs precious time together by unreasonably delaying the adjudication of their immigrant visa. Plaintiffs have missed memories, milestones, and the simple shared joys of daily family life that they cannot regain or recreate.

159.    Absent an order from this Court, Defendant will continue to delay and fail to adjudicate Plaintiff's immigrant visa application. With each passing day, the risk of irreparable intergenerational harm to their family substantially increases.

160.    Considering the irreparable harms that Plaintiffs face, which are well known to Defendants, the mandatory duty to adjudicate Mr. RISMANBAF's visa application is unreasonable and constitutes agency action unreasonably delayed.

161.    Plaintiffs were harmed and will continue to suffer irreparable harm as long as Defendants persist in their unreasonable delay.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grant them the following relief:

A.     Declare that the Defendant's delay in adjudicating Mr. RISMANBAF's immigrant visa application is unreasonable and violates the INA and applicable statutes, regulations, agency guidance, and that Plaintiffs are entitled to a prompt adjudication of the immigrant visa application pursuant to the Declaratory Judgement Act 28 U.S.C. § 2201;

B.     Issue a writ of mandamus compelling the Defendants and those acting under them to perform their duty to complete all steps necessary to adjudicate Mr. RISMANBAF immigrant visa application, within thirty (30) days from the date of the order pursuant to the Court's mandamus authority under 28 U.S.C. § 1361;

C.     Issue an order compelling the Defendants and those acting under them to perform their duty to adjudicate the immigrant visa application of Mr. RISMANBAF within 30 days of the order pursuant to the Administrative Procedure Act;

D.     Enjoin Defendants and those acting under them from any further unreasonable delay in adjudication of Mr. RISMANBAF's pending immigrant visa application;

E.     Retain jurisdiction over this action to monitor and enforce Defendant's compliance with all orders of this Court;

F.     Award Plaintiffs reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 42 U.S.C. § 1988, 5 U.S.C. § 504, 28 U.S.C. § 2412 and any other applicable law; and

G.     Grant such further relief as this Court deems just and proper.

Dated: August 9, 2023                     Respectfully submitted,


                                          _/s/Curtis Lee Morrison_
Charles H. Kuck, Esq.*                    Curtis Lee Morrison, Esq.**
**Kuck Baxter Immigration LLC**
365 Northridge Rd, Suite 300              **Red Eagle Law, L.C.**
Atlanta, GA 30350                         5256 S. Mission Road, Suite 135
Tel: (404) 816-8611                       Bonsall, CA. 92003
Fax: (404) 816-8615                       Phone: (714) 661-3446
ckuck@immigration.net                     curtis@redeaglelaw.com
*Local Counsel*                           **Pro Hac Vice Forthcoming*
                                          *Attorneys for Petitioner-Plaintiffs*

INDEX OF EXHIBITS

Exhibit A, *DS-260 Confirmation Page*

Exhibit B, *Religious Persecution Information*

Exhibit C, *CEAC online case status*