## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ANDRIA SUMPTER | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | _____ |
| | : | |
| INSPYR SOLUTIONS LLC and | : | |
| UKG INC. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## COMPLAINT

Plaintiff Andria Sumpter files her Complaint against Defendants
INSPYR Solutions LLC ("INSPYR") and UKG Inc. ("UKG") (collectively
"Defendants").

## NATURE OF THE ACTION

### 1.

This is an action to recover unpaid wages and overtime, and
retaliation, under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.
("FLSA"). Plaintiff also brings breach of contract claims under Georgia
law against Defendant INSPYR Solutions LLC.

## PARTIES

2.

Plaintiff Andria Sumpter is a resident of Gwinnett County in the State of Georgia.

3.

Defendant INSPYR Solutions LLC, is a limited liability corporation organized under the laws of Delaware, with its principal place of business at: 600 Corporate Dr, Suite 500, Fort Lauderdale, Florida, 33334. It can be served with summons and complaint upon its Registered Agent, C T Corporation System, 289 S Culver Street, Lawrenceville, Georgia, 30046.

4.

Defendant UKG Inc. is a corporation organized under the laws of Delaware, with its principal place of business at:  2250 North Commerce Parkway, Weston, Florida, 33326. It can be served with summons and complaint upon its Registered Agent, C T Corporation System, 289 S Culver Street, Lawrenceville, Georgia, 30046.

## JURISDICTION AND VENUE

### 5.

The claims brought in this lawsuit present federal questions and jurisdiction in this Court are proper under 28 U.S.C. §§'s 1331 and 1337, and 29 U.S.C. § 216.

### 6.

The Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### 7.

Venue of this suit is proper in the Northern District of Georgia, Atlanta Division under 28 U.S.C. § 1391and 29 U.S.C. § 216. Both Defendants have offices and operate their business in this judicial district and division. In addition, the alleged unlawful acts against Plaintiff occurred in this judicial district and division.

## FACTUAL ALLEGATIONS

### 8.

INSPYR Solutions LLC used to operate as TekPartners Solutions, LLC until around January, 2023.

9.

TekPartners Solutions, LLC changed its name to INSPYR Solutions LLC. INSPYR is the successor in interest of all debts, liabilities, and assets of TekPartners Solutions, LLC.

10.

Before a merger with Kronos Incorporated with UKG Inc. on April 1, 2020, UKG used to operate as Ultimate Software.

11.

UKG Inc. is the successor in interest of all debts, liabilities, and assets of Ultimate Software Group, Inc.

12.

TekPartners Solutions, LLC entered into a contract to provide staffing to Ultimate Software Group, Inc. (later UKG).

13.

TekPartners Solutions, LLC hired Plaintiff to begin working on Ultimate Software projects as an Integrations Analyst starting on September 25, 2019.

4

14.

On September 12, 2019, TekPartners sent Plaintiff an offer letter, which stated that she would perform work for their client, Ultimate Software, and would be paid $55 per hour.

15.

Before her offer letter, Grant Garris, Technical Services Consulting Manager at Ultimate Software, promised Plaintiff that the more projects she worked, the more money she could make.

16.

While TekPartners, (later INSPYR) paid Plaintiff her paychecks, Ultimate Software (later UKG) supervised and controlled all aspects of Plaintiff's work.

17.

UKG could refuse to hire or recommend termination of any INSPYR employee working under its direction.

18.

UKG supervised and controlled Plaintiff's work schedules and conditions of employment.

19.

UKG determined Plaintiff's hourly rate and the method of payment.

20.

UKG exercised significant control over the terms and conditions of Plaintiff's work.

21.

Most importantly, UKG determined whether Plaintiff could be paid for hours worked over 40 hours per week and whether she would receive a premium pay rate for any overtime hours.

22.

Plaintiff was assigned an Ultimate Software (later UKG) email address.

23.

Plaintiff was instructed to have a signature line in her email listing her as an Integrations Analyst for Ultimate Software (later UKG). The signature line used its office address in Atlanta, Georgia.

24.

At all times, Plaintiff performed from her home based in Atlanta, Georgia while representing she was employed to work for Ultimate Software (later UKG) at its Atlanta office.

25.

Plaintiff was supervised by Ultimate Software (later UKG) employees virtually. Some of them worked in Georgia.

26.

Plaintiff was never paid on a "salary basis" within the meaning of the FLSA regulations because she did not regularly receive in each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Instead, she was always paid on an hourly basis.

27.

Defendants were aware that to do the projects and work that it assigned Plaintiff, it would take her more than forty hours per week no matter how efficient Plaintiff worked.

28.

From the very beginning of her employment, Plaintiff made Defendants aware that it took her more than forty hours per week to do her job duties.

29.

Plaintiff was instructed by TekPartners employees that she could be terminated if she documented more than 40 hours per week on her timesheets. Employees of Ultimate Software (UKG) employees indicated that she could not document 40 hours per week on her timesheets.

30.

Defendants did not want an accurate record of the time Plaintiff actually worked, and did not keep such records even though the FLSA requires that them to do so.

31.

 Plaintiff did not want to be fired so for certain periods she did not submit all hours worked on her timesheets.

32.

But Plaintiff did keep track of all hours she worked.

33.

Plaintiff regularly worked over forty hours per week.

34.

Defendants were aware that Plaintiff regularly worked more than forty hours per week.

35.

During her entire employment, Defendants never paid Plaintiff an overtime premium for one minute of the time she spent working past forty hours per week. Rather, no matter how many hours Plaintiff worked, Defendants only paid her a straight hourly rate.

36.

Plaintiff complained on numerous occasions that she was never paid for all hours worked over forty hours per week or at an overtime premium.

37.

In 2021, there was one week where Rachel Mezzo, TekPartners' Engagement Manager, told Plaintiff and other employees in her position that they could record up to 44 hours per week on their timesheets.

38.

In accord with this instruction, Plaintiff recorded 44 hours on her timesheet that week.

39.

Michael McCarthy, an INSPYR Recruiter, asked Plaintiff and others to pay back the four hours of pay, otherwise it would come out of his check.

40.

Plaintiff refused.

41.

INSPYR did take the amounts paid for that week over forty hours out of McCarthy's paycheck.

42.

In June 2022, UKG had Katrina Ramirez start managing some of Plaintiff's work.

43.

Ramirez became aware that Plaintiff and others in her position were not recording their time for hours worked over forty hours per week or being paid for all hours worked.

44.

Ramirez instructed Plaintiff and other employees to begin submitting all of their time worked.

45.

But on June 16, 2022, UKG employee Mary Paulson emailed Plaintiff letting her know that any hours over forty per week would not be paid at the overtime premium rate.

46.

Later, Ramirez instructed Plaintiff and other employees that they could put up to 45 hours of work on their timesheets.

47.

On April 6, 2022, Plaintiff emailed Ramirez that she had worked more than 55 hours for the pay period. Ramirez did not respond.

48.

In October 2022, Defendants began assigning Plaintiff more than one role, but did not change her compensation for doing so until March 3, 2023, when she received a raise to $60 per hour.

49.

On April 6, 2023, Plaintiff sent an email to Ramirez informing her that now that she was being assigned two to three roles, she could not complete her work in less than 45 hours per week. Thus, Plaintiff complained that she should be able to record overtime on her timesheets and be paid overtime.

Her email specifically noted that she did not want to revert to working 50 to 70 hours a week like in the past and not be paid for overtime.

50.

Ramirez did not respond to Plaintiff's email.

51.

Plaintiff subsequently recorded that she worked more than 45 hours per week on her timesheets.

52.

On May 26, 2023, at the instruction of UKG, INSPYR terminated Plaintiff.

53.

The INSPYR Recruiter informing Plaintiff she was terminated was not sure of the reason for termination.

54.

When pressed, he later stated that Plaintiff was terminated for arguing with a client.

55.

Plaintiff had not argued with a client and no manager had ever counseled or disciplined her for any such behavior.

56.

In responding to the Georgia Department of Labor, INSPYR changed its reason to Plaintiff was part of a permanent layoff.

57.

UKG instructed INSPYR to terminate Plaintiff because of her complaints about not being paid overtime.

58.

Upon information and belief, UKG and INSPYR continue to retaliate against Plaintiff by giving her bad references.

## COUNT ONE
## FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA.

59.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of her Complaint as if fully set forth in this Paragraph.

60.

Plaintiff was an employee of both Defendants within the meaning of the FLSA.

61.

As described above, Defendants were joint employers of Plaintiff, subject to joint and several liability for failure to pay wages or overtime under the FLSA.

62.

While Defendant INSPYR paid her checks, Defendant UKG controlled and supervised all aspects of Plaintiff's work.

63.

Both Defendants are covered employers within the meaning of the FLSA because they both have more than two employees and annual revenues of $500,000 or more.

64.

Plaintiff is also a covered employee under the FLSA because her work duties engaged her in interstate commerce.

65.

Plaintiff regularly worked over forty hours per week during her entire employment.

66.

Plaintiff was not subject to any exemption from overtime under the FLSA.

67.

She was never paid a guaranteed salary. Instead, she was paid hourly.

68.

Defendants were aware that to do the projects and work that it assigned Plaintiff, it would take her more than forty hours per week no matter how efficient Plaintiff worked.

69.

Plaintiff constantly made Defendants aware that it took her more than forty hours per week to do her job.

70.

Defendants violated the FLSA by failing to pay Plaintiff for all hours worked above forty hours in a week.

71.

Defendants also violated the FLSA because even when they paid some hours above forty hours per week, they never paid her the overtime premium of time and a half. Instead, they would pay her the straight hourly rate.

72.

Defendants also violated the FLSA by instructing Plaintiff not to report all hours worked on her timesheets.

73.

Defendants knew or should have known that such actions violate the FLSA, and they have not made a good faith effort to comply with the FLSA.

74.

Defendants knew or should have known that Plaintiff was not exempt from the overtime requirements of the FLSA, and they have not made a good faith effort to comply with the FLSA.

75.

Defendants knowingly, willfully, and/or with reckless disregard, failed to pay Plaintiff her overtime wages.

76.

As a result of Defendants' unlawful acts, Plaintiff is entitled to recover the relief requested below.

## COUNT TWO
## RETALIATION UNDER THE FLSA

### 77.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of her Complaint as if fully set forth in this Paragraph.

### 78.

Plaintiff was an employee of both Defendants within the meaning of the FLSA.

### 79.

As described above, Defendants were joint employers of Plaintiff, and can be held jointly and severally liable for any retaliation against Plaintiff under the FLSA.

### 80.

While Defendant INSPYR paid her checks, Defendant UKG controlled and supervised all aspects of Plaintiff's work.

### 81.

By continuing to seek to be paid for all hours worked and for overtime, Plaintiff engaged in protected activity under the FLSA.

82.

Less than two months before she was terminated, Plaintiff engaged in protected activity by sending an email on April 6, 2023 complaining of not receiving overtime in the past and insisted she be paid her wages and overtime going forward was she took on more job roles.

83.

After that email, Plaintiff engaged in the protected activity of actually recording hours worked past forty-five hours per week contrary to Defendants' instructions.

84.

Defendant UKG instructed Defendant INSPRY to terminate Plaintiff.

85.

Defendant INSPYR followed this instruction and terminated Plaintiff.

86.

Defendants termination of Plaintiff has caused her emotional distress.

87.

As a result of this termination, Plaintiff is entitled to recover the damages pled below in the prayer for relief.

**COUNT THREE**
**BREACH OF CONTRACT UNDER GEORGIA LAW**
**(AGAINST DEFENDANT INSPYR SOLUTIONS LLC)**

88.

Plaintiff incorporates by reference the allegations set forth in the

preceding paragraphs of her Complaint as if fully set forth in this Paragraph

89.

While she was employed, Defendant INSPYR promised to pay Plaintiff

an hourly wage for all hours worked.

90.

Defendant INSPYR did not pay Plaintiff for all hours worked.

91.

Defendant INSPYR breached its contract to pay Plaintiff her wages for

all hours worked.

92.

As a direct and proximate cause of Defendant INSPYR's breach of

contract, Plaintiff has been damaged and is entitled to recover damages for

her unpaid wages in an amount to be proven at trial.

19

## COUNT FOUR
## O.C.G.A. § 13-6-11
## (AGAINST DEFENDANT INSPYR SOLUTIONS LLC)

### 93.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of her Complaint as if fully set forth herein.

### 94.

In failing to pay her wages for all hours worked, Defendant INSPYR has acted in bad faith, been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, such that she should be awarded her attorneys' fees and costs under O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff prays:

a.      That Summons issue requiring Defendants to answer the Complaint within the time provided by law;

b.      That Plaintiff be awarded declaratory judgment that Defendants violated the FLSA;

c.      That Plaintiff recover from Defendants her unpaid overtime for which she was not paid;

d.     That Plaintiff recover from Defendants for the unpaid overtime premium for which she was not paid;

e.     That Plaintiff recover liquidated damages against Defendants;

f.     That Plaintiff recover her back pay and benefits;

g.     That the Court order that Plaintiff be reinstated, or in lieu of reinstatement, award her front pay and benefits;

h.     That Plaintiff recover for emotional distress caused by Defendants' retaliation against her;

i.     That Plaintiff recover against Defendant INSPYR Solutions LLC the wages she should have been paid had it not breached her contract;

j.     That Plaintiff recover attorney's fees and costs of litigation under the FLSA, O.C.G.A. § 13-6-11, and any other applicable federal or state law;

k.     That the Court award Plaintiff any other or further relief as it deems necessary and proper, or equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted this 9th day of August, 2023.

T. Robert Reid, LLC

<u>s/ Tilden Robert Reid, II</u>
T. Robert Reid
Ga. Bar No. 600138

1030 Woodstock Road
Suite 3112
Roswell, Georgia  30075
Telephone (678) 743-1064
Facsimile (404) 549-4136
robreidattorney@gmail.com

Attorney for Plaintiff