# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# (ATLANTA DIVISION)

| | |
|---|---|
| TIMOTHY HORNE, | Case No.: |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| HYUNDAI CAPITAL AMERICA d/b/a HYUNDAI MOTOR FINANCE; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; and TRANS UNION LLC, | **FCRA, 15 U.S.C. § 1681** *et seq.* |
| Defendants. | |

Plaintiff Timothy Horne, ("Plaintiff") by and through the undersigned counsel, brings this action on an individual basis, against Defendants Hyundai Capital America d/b/a Hyundai Motor Finance ("Hyundai); Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") (collectively the "Credit Bureau Defendants") (all Defendants collectively, "Defendants").

1

## INTRODUCTION

1.    The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.    However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning

2

individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
See 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed. *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8.      The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained

4

within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.      In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.     Plaintiff's claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiff's potential creditors that Plaintiff had abandoned his automobile payments.

12.     Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. §

1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.     Plaintiff also brings a claim against Defendant Hyundai for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

15.     Timothy Horne ("Plaintiff" or "Mr. Horne") is a natural person residing in the city of Alpharetta, Fulton County, Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Equifax Information Services, LLC. ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located

at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Georgia, including within this District. Equifax can be served through its registered agent Corporation Service Company located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

17.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626, and is authorized to do business in the State of Georgia, including within this District.

19.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

20.     Defendant Trans Union LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 2

Baldwin Place, Chester, PA 19022, and is authorized to do business in the State of Georgia, including within this District. Trans Union can be served through its registered agent Illinois Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

21.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

22.     Defendant Hyundai is an automobile dealer with its principal place of business located at 3161 Michelson Drive, Suite 1900, Irvine, CA 92612, and is authorized to do business in the State of Georgia, including within this District. Hyundai can be served through its registered agent National Registered Agents, Inc., located at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

23.      Hyundai is also a credit grantor and "furnisher", as contemplated in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

24.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. §

8

1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

25.     Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

26.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

27.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681(a).

28.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  See 15 U.S.C. § 1681(b).

29.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

30.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## Factual Background

31.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting

methods undermine the public confidence, which is essential to the continual functioning of the banking system.

32.     The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

33.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

34.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

35.     The Credit Bureau Defendants' consumer reports generally contain the following information:

> a.     Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

b.      Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

c.      Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

d.      Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

36.     The Credit Bureau Defendants obtain consumer information from various sources.   Some consumer information is sent directly to the CRA by furnishers.

37.     The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like the Credit Bureau Defendants) to make lending decisions.

38.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret

12

the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the Credit Bureau Defendants' consumer reports.

39.    The information the Credit Bureau Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

40.    FICO Scores are calculated using information contained in the Credit Bureau Defendants' consumer reports.

41.    The Credit Bureau Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by the Credit Bureau Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

42.    The Credit Bureau Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

43.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

44.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

45.     The Credit Bureau Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

46.     The Credit Bureau Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

47.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against the Credit Bureau Defendants for their inaccurate credit reporting.

48.     Thus, the Credit Bureau Defendants are on continued notice of their respective inadequate reporting procedures.   Specifically, the Credit Bureau Defendants are on notice that their inadequate procedures regularly result in the

reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

49.     The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants reported inaccurate information about them.

### Plaintiff Purchases a Vehicle from Hyundai

50.     On or about January 17, 2020, Plaintiff financed the purchase of a vehicle through Hyundai, account number ending in 0053 (the "Account").[1]

51.     That same day while at the Hyundai dealership, Plaintiff purchased Guaranteed Asset Protection ("GAP") insurance through Western Diversified.

52.     Plaintiff had previously purchased primary insurance for the vehicle through Geico.

53.     Plaintiff purchased GAP insurance with the understanding that if his car were to be involved in a car accident where the car was rendered no longer drivable, the GAP insurance he purchased would cover any shortfall between Plaintiff's primary insurance and the balance owed on the auto loan.

---

[1] On some of Plaintiff's Trans Union reports, the Account appears as "Kia Motors Finance", but is the same account as the Account at issue.

54.    On June 15, 2021, Plaintiff was involved in a car accident where the vehicle was deemed totaled.

55.    Plaintiff's Geico and GAP insurance were to pay the remaining balance owed to Defendant Hyundai.

56.    On June 21, 2021, Geico paid Defendant Hyundai $22,344.

57.    On or about June 30, 2021, Western Diversified paid Defendant Hyundai $4,070.32.

58.    At this time, Plaintiff believed he no longer owed money on the Account.

59.    On or about September 17, 2021, Hyundai issued a Loss Claim letter that suggested a balance of $531.04 remained.

60.    Plaintiff assumed the letter was a fluke, considering the insurance carriers had already tendered payments to satisfy the entire balance, or alternatively, that further insurance reimbursement would be made.

61.    Shortly thereafter, Plaintiff began receiving phone calls from Defendant Hyundai, demanding that Plaintiff make a payment. Plaintiff explained that his insurance should have covered any remaining balance that was owed to Hyundai.

16

62.     In or around November 2021, Plaintiff received a billing statement, dated October 28, 2021 (the "Billing Statement), from Defendant Hyundai.

63.     The Billing Statement provided a payoff summary to Plaintiff, and indicated a payoff amount of $535.15, and a payment due date of November 17, 2021.

64.     Shortly thereafter, Plaintiff received another call from Defendant Hyundai. During that call, Plaintiff again explained that his insurance was to pay the remaining amount owed and specifically requested that Defendant Hyundai cease communication.

65.     Rather than contacting Geico or Western Diversified, upon information and belief, Defendant Hyundai simply charged off Plaintiff's Account.

66.     Defendant Hyundai sent Plaintiff a letter, dated November 5, 2021, confirming they would cease all verbal communication.

67.     Despite the November 5, 2021, letter, Plaintiff received another letter dated November 20, 2021, from Defendant Hyundai, indicating that he owed a payment of $531.04 and was past due. The letter further indicated that payment was due immediately.

**Plaintiff's Wallet Hub Notification December 2021**

68.     In or around December 7, 2021, Plaintiff received a notification from a WalletHub that informed him his credit score had dropped "65+ points" because a charged off account was reported. Upon reviewing, Plaintiff discovered his Hyundai Account was closed and charged off with an owed balance of $531.

69.     Upon information and belief, Wallet Hub uses Defendant Trans Union to gather credit information.

70.     After receiving the notification from WalletHub, Plaintiff obtained his credit reports from the Credit Bureau Defendants because he could not believe that the Account was actually reporting as a charge off with a balance owed.

71.     Plaintiff discovered the Credit Bureau Defendants inaccurately reported the Account with a status of charge off with an owed and past due balance of $531.

72.     The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed or indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

73.     The Credit Bureau Defendants specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

18

74.     According to Experian, creditors typically charge off accounts after they have been delinquent, *i.e.*, gone without any scheduled payments for six months, a charge-off does not mean your debt is forgiven, you are still legally responsible for repaying the outstanding amount.[2]

75.     According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges, the time frame is generally between 120 and 180 days after you become delinquent, and a charge-off does not mean that you no longer owe the debt, you are still legally obligated to pay the debt.[3]

### Plaintiff's Dispute to Experian February 2022

76.     On or about February 14, 2022, Plaintiff sent a letter to Defendant Experian disputing its inaccurate reporting of Plaintiff's credit reports.

77.     In the letter to Defendant Experian, Plaintiff informed it that his car was totaled, that he had insurance and Hyundai should have been reimbursed because of that, and asked Experian to remove the reporting immediately.

---

[2] https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/
[3] https://www.equifax.com/personal/education/credit/report/charge-offs-faq/

78.    Upon information and belief, Experian responded to Plaintiff's dispute that the disputed information was verified as accurate.

**Plaintiff's Dispute to Equifax February 2022**

79.    On or about February 21, 2022, Plaintiff sent a letter to Defendant Equifax disputing its inaccurate reporting of Plaintiff's credit reports.

80.    In the letter to Defendant Equifax, Plaintiff informed it that his car was totaled, that he had insurance and Hyundai should have been reimbursed because of that, and asked Equifax to remove the reporting immediately.

81.    Upon information and belief, Equifax responded to Plaintiff's dispute that the disputed information was verified as accurate.

**Plaintiff's Dispute to Trans Union February 2022**

82.    On or about February 21, 2022, Plaintiff sent a letter to Defendant Trans Union disputing its inaccurate reporting of Plaintiff's credit reports.

83.    In the letter to Defendant Trans Union, Plaintiff informed it that his car was totaled, that he had insurance and Hyundai should have been reimbursed because of that and asked Trans Union to remove the reporting immediately.

84.    Defendant Trans Union never responded to Plaintiff's dispute.

**Plaintiff's Dispute to Hyundai February 2022**

85.    That same day, Plaintiff also sent a letter to Defendant Hyundai disputing its inaccurate reporting to the CRAs.

86.    In his letter, Plaintiff explained that he had GAP insurance, which he purchased at the Hyundai dealership when he purchased the vehicle, which should have paid the remainder of his balance to Hyundai.

87.    Plaintiff purchased GAP insurance with the understanding that if his car were to be involved in a car accident where the car was rendered no longer drivable, the GAP insurance he purchased would cover any shortfall between Plaintiff's primary insurance and the balance owed on the auto loan.

88.    Defendant Hyundai never responded to Plaintiff's dispute.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

89.    Upon information and belief, Experian sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2022 disputes to Experian.

90.    Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

91.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's February 2022 dispute.

92.     Thereafter, Defendant Experian failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

93.     Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered February 2022, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendant Equifax's Unreasonable Dispute Reinvestigation

94.     Upon information and belief, Equifax sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2022 dispute to Equifax.

95.     Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

96.     Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's February 2022 dispute. Defendant Equifax failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

97.     Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered February 2022, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

98.     Upon information and belief, Trans Union sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2022 dispute to Trans Union.

99.     Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

100.    Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's February 2022 dispute.

101.    Thereafter, Defendant Trans Union failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

102.    Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered February 2022 or any reinvestigation whatsoever, to determine

whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes

103.   The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

104.   The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

105.   That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

106.  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

107.   Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

108.   Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

109.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

110.   These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

111.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

112.   The data furnishers, like Defendant Hyundai, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with

the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

113.   Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

### Defendant Hyundai's Unreasonable Dispute Reinvestigation

114.   Upon information and belief, in or about February 2022, Defendant Hyundai received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

115.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or about February 2022.

116.   Upon information and belief, Defendant Hyundai failed to request any additional supporting documentation pertaining to the Equifax dispute notification, to the extent any additional supporting documentation was available to it to view.

117.   Upon information and belief, Defendant Hyundai verified the disputed information as accurate to Defendant Equifax in or about February 2022.

118.   Upon information and belief, in or about February 2022, Defendant Hyundai received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

119.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or about February 2022.

120.   Upon information and belief, Defendant Hyundai failed to request any additional supporting documentation pertaining to the Experian dispute notification, to the extent any additional supporting documentation was available to it to view.

121.   Upon information and belief, in or about February 2022, Defendant Hyundai verified the disputed information as accurate to Defendant Experian.

122.   Upon information and belief, in or about February 2022, Defendant Hyundai received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

123.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or about February 2022.

124.   Upon information and belief, Defendant Hyundai failed to request any additional supporting documentation pertaining to the Trans Union dispute notification, to the extent any additional supporting documentation was available to it to view.

125.   Upon information and belief, in or about February 2022, Defendant Hyundai verified the disputed information as accurate to Defendant Trans Union.

126.   Upon information and belief, in or about February 2022, Defendant Hyundai disregarded the letter Plaintiff sent directly to it.

127.   Defendant Hyundai violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

///

**Plaintiff's WalletHub Notification March 2022**

128.   On or about March 27, 2022, Plaintiff received a notification from WalletHub stating that as of March 23, 2022, the Account was reopened after it had been closed on November 30, 2021.

129.   The notification also stated that this information came from Defendant Tran Union.

130.   Plaintiff was astonished to discover that the Account was reporting as reopened because after the accident, the car was totaled, and the remaining balance owed was supposed to have been satisfied by his insurance carrier and any shortfall by the GAP insurance provider. Plaintiff further believed the Account was closed at the same time it was reported as charged off by Defendant Hyundai.

**Plaintiff's Dispute to Trans Union August 2022**

131.   On or about August 9, 2022, Plaintiff called Trans Union to dispute the inaccurate reporting of Plaintiff's credit reports.

132.   During the call, Plaintiff informed Trans Union that his car was totaled, that he had insurance, and that Defendant Hyundai should have been reimbursed. Plaintiff also ask Trans Union to remove the reporting immediately.

133.   During the phone call, Trans Union advised Plaintiff to mail documents showing proof of his disputed claims.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

134.   Upon information and belief, Trans Union sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's August 9, 2022, dispute to Trans Union.

135.   Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

136.   Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's August 9, 2022, dispute.

137.   Thereafter, Defendant Trans Union failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

138.   Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered August 9, 2022, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Hyundai's Unreasonable Dispute Reinvestigation**

139.   Upon information and belief, on or about August 9, 2022, Defendant Hyundai received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

140.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered on or about August 9, 2022.

141.   Upon information and belief, on or about August 9, 2022, Defendant Hyundai verified the disputed information as accurate to Defendant Trans Union.

142.   Defendant Hyundai violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's Dispute to Trans Union August 2022**

143.   On or about August 11, 2022, Plaintiff sent a letter to Defendant Trans Union disputing its inaccurate reporting of Plaintiff's credit reports.

144.    In the letter to Defendant Trans Union, Plaintiff specifically referenced his phone conversation from two days prior, provided the requested documentation, and specifically requested that Trans Union remove the Account immediately.

145.    Trans Union never responded to Plaintiff's dispute letter.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

146.    Upon information and belief, Trans Union sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's August 11, 2022, dispute to Trans Union.

147.    Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

148.    Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's August 11, 2022, dispute.

149.    Thereafter, Defendant Trans Union failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

150.    Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered August 11, 2022, or any reinvestigation whatsoever, to determine

whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## Defendant Hyundai's Unreasonable Dispute Reinvestigation

151.   Upon information and belief, on or about August 11, 2022, Defendant Hyundai received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

152.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered on or about August 11, 2022.

153.   Upon information and belief, on or about August 11, 2022, Defendant Hyundai verified the disputed information as accurate to Defendant Trans Union.

154.   Defendant Hyundai violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

## Geico Satisfies Remaining Balance to Hyundai

155.    On August 25, 2022, Plaintiff received an email from Geico indicating it paid the remaining $527 insurance claim to Defendant Hyundai.

33

156.   Upon receipt of the email, Plaintiff called Geico to verify that it paid the entire balance owed to Hyundai. Geico explained it had initially misquoted the total amount they had to pay, but as of August 25, 2022, the entire balance owed to Defendant Hyundai had been paid.

**Plaintiff's Dispute to Experian September 2022**

157.   Shortly after receiving Geico's email, in or around September 2022, Plaintiff disputed Experian's inaccurate reporting again.

158.   Plaintiff re-explained the car had been totaled, and informed Experian that Geico had paid the remaining balance to Hyundai and asked Experian to remove the reporting immediately.

159.   On September 6, 2022, Plaintiff received a dispute response from Experian stating it had previously investigated this matter and confirmed the accuracy of the reporting.

160.   Defendant Experian completely ignored the additional information Plaintiff provided in this dispute.

///

**Defendant Experian's Unreasonable Dispute Reinvestigation**

161.   Upon information and belief, Experian sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's September 2022 dispute to Trans Union.

162.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

163.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's September 2022 dispute.

164.   Thereafter, Defendant Experian failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

165.   Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered September 2022, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

///

**Defendant Hyundai's Unreasonable Dispute Reinvestigation**

166.   Upon information and belief, on or about September 2022, Defendant Hyundai received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

167.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered on or about September 2022.

168.   Upon information and belief, on or about September 2022, Defendant Hyundai verified the disputed information as accurate to Defendant Experian.

169.   Defendant Hyundai violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's Dispute to Experian October 2022**

170.   In or around early October 2022, Plaintiff disputed Experian's inaccurate reporting for a third time and reiterated he did not owe Hyundai money and that Geico had paid the remaining balance.

36

171.   On November 1, 2022, Plaintiff received a dispute response from Experian indicating the disputed item had been updated. Experian, however, continued to inaccurately report the Account as having $531 charged off and past due.

172.   On November 2, 2022, Plaintiff received a dispute response nearly identical to the one he'd received the day before.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

173.   Upon information and belief, Experian sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 2022 dispute to Trans Union.

174.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

175.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's October 2022 dispute.

176.   Thereafter, Defendant Experian failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

177.   Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered October 2022, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Hyundai's Unreasonable Dispute Reinvestigation**

178.   Upon information and belief, on or about October 2022, Defendant Hyundai received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

179.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered on or about October 2022.

180.   Upon information and belief, on or about October 2022, Defendant Hyundai verified the disputed information as accurate to Defendant Experian.

181.   Defendant Hyundai violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff Requests Credit Reports in November 2022**

182.   On or about November 26, 2022, Plaintiff requested his credit report from each of the Credit Bureau Defendants to see if any updates had been made.

183.   Plaintiff discovered Experian and Equifax continued to inaccurately report the Account as having $531 charged off and past due.

184.   Plaintiff discovered Trans Union was no longer reporting the Account.

**Plaintiff's Dispute to Experian, Trans Union, and Equifax March 2023**

185.   After receiving January 20, 2023, letter from Hyundai, Plaintiff feared the account was re-reported to the Credit Bureau Defendants.

186.   On March 14, 2023, Plaintiff sent a dispute letter to each of the Credit Bureau Defendants disputing their inaccurate reporting of Plaintiff's credit reports.

187.   In the letters to the Credit Bureau Defendants, Plaintiff informed them the automobile associated with the Account was totaled in July 2021; that his insurance covered the majority of the balance on the Account after the car was totaled; and that Geico paid the remining balance to Hyundai on August 25, 2022.

188.   Plaintiff was very concerned that perhaps Trans Union had reinserted the account to his credit file and out of an abundance of caution, Plaintiff submitted a dispute letter to Trans Union as well.

189.   Upon information and belief, Defendant Experian never responded to Plaintiff's dispute.

190.   Upon information and belief, Defendant Equifax never responded to Plaintiff's dispute.

191.   Upon information and belief, Defendant Trans Union never responded to Plaintiff's dispute.

### Defendant Experian's Unreasonable Dispute Reinvestigation

192.   Upon information and belief, Experian sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's  March 2023 disputes to Experian.

193.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

194.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's March 2023 dispute.

195.   Thereafter, Defendant Experian failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

196.   Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered March 2023, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

197.   Upon information and belief, Equifax sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's March 2023 dispute to Equifax.

198.   Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

199.   Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's March 2023dispute.

200.   Defendant Equifax failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

201.   Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered March 2023, or any reinvestigation whatsoever, to determine

whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

202.   Upon information and belief, Trans Union sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's March 2023 dispute to Trans Union.

203.   Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

204.   Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's March 2023 dispute.

205.   Thereafter, Defendant Trans Union failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

206.   Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered March 2023 or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Hyundai's Unreasonable Dispute Reinvestigation**

207.   Upon information and belief, in or about March 2023, Defendant Hyundai received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

208.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or about March 2023.

209.   Upon information and belief, Defendant Hyundai verified the disputed information as accurate to Defendant Equifax in or about March 2023.

210.   Upon information and belief, in or about March 2023, Defendant Hyundai received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

211.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or about March 2023.

212.   Upon information and belief, in or about March 2023, Defendant Hyundai verified the disputed information as accurate to Defendant Experian.

213.   Upon information and belief, in or about March 2023, Defendant Hyundai received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

214.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or about March 2023.

215.   Upon information and belief, in or about March 2023, Defendant Hyundai verified the disputed information as accurate to Defendant Trans Union.

216.   Defendant Hyundai violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's WalletHub Notification April 2023**

217.   On or about April 10, 2023, Plaintiff received a notification from WalletHub stating that as of April 10, 2023, the Account was reopened after it had been closed on August 31, 2022.

218.   The notification also stated that this information came from Defendant Trans Union.

44

219.   Plaintiff was dumbfounded. He believed, based on a prior report from Trans Union, that Trans Union had previously deleted the Account.

**Plaintiff Requests Experian, Equifax, and Trans Union Reports in April 2023**

220.   After receiving the WalletHub notification, on or about April 26, 2023, Plaintiff requested his Experian, Equifax, and Trans Union reports to see if any updates had been made.

221.   Plaintiff discovered that all three of the Credit Bureau Defendants continued to inaccurately report the Account as having $531 charged off and past due.

**Plaintiff's Dispute to Experian, Trans Union, Equifax June 2023**

222.   On or about June 12, 2023, Plaintiff sent a dispute letter to each of the Credit Bureau Defendants disputing their inaccurate reporting of Plaintiff's credit reports.

223.   In the letters to the Credit Bureau Defendants, Plaintiff informed them the automobile associated with the Account was totaled in July 2021; that his insurance covered the amount owed to Defendant Hyundai, that Defendant Hyundai cashed the check, and provided supporting documentation.

224.     On or about June 30, 2023, Equifax responded to Plaintiff's dispute. Equifax updated the Account to report at $135 owed and past due and continued to report the Account as charged off.

225.   On or about July 7, 2023, Trans Union responded to Plaintiff's dispute. Trans Union stated the disputed item was verified as accurate and reported the Account as having an owed and past due balance of $135 due and continued to report the Account as charged off.

226.   On or about August 1, 2023, Plaintiff called Experian to inquire about his dispute as Experian had not yet responded. An Experian representative informed Plaintiff that the disputed item was verified as accurate and that it would send Plaintiff a copy of his report via mail.

**Plaintiff's WalletHub Notification August 2023**

227.     In early August 2023, Plaintiff received a notification from WalletHub stating that as of July 5, 2023, the Account was reopened after it had been closed on April 30, 2023.

228.     The notification also stated that this information came from Defendant Trans Union.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

229.   Upon information and belief, Experian sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's June 2023 disputes to Experian.

230.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

231.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's June 2023 dispute.

232.   Thereafter, Defendant Experian failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

233.   Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered June 2023, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

234.   Upon information and belief, Equifax sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's June 2023

47

dispute to Equifax.

235.   Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

236.   Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's June 2023dispute.

237.   Defendant Equifax failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

238.   Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered June 2023, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

239.   Upon information and belief, Trans Union sent Defendant Hyundai an automated credit dispute verification ("ACDV") pursuant to Plaintiff's June 2023 dispute to Trans Union.

240.   Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

241.   Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's June 2023 dispute.

242.   Thereafter, Defendant Trans Union failed to correct or delete the charge off notation appearing in Plaintiff's credit file.

243.   Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered June 2023 or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Hyundai's Unreasonable Dispute Reinvestigation**

244.   Upon information and belief, in or about June 2023, Defendant Hyundai received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

245.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or about June 2023.

49

246.   Upon information and belief, Defendant Hyundai verified the disputed information as accurate to Defendant Equifax in or about June 2023.

247.   Upon information and belief, in or about June 2023, Defendant Hyundai received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

248.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or about June 2023.

249.   Upon information and belief, in or about June 2023, Defendant Hyundai verified the disputed information as accurate to Defendant Experian.

250.   Upon information and belief, in or about June 2023, Defendant Hyundai received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

251.   Upon information and belief, Defendant Hyundai failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or about June 2023.

252.   Upon information and belief, in or about June 2023, Defendant Hyundai verified the disputed information as accurate to Defendant Trans Union.

253.   Defendant Hyundai violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

254.   Plaintiff reasonably believes that Defendant Hyundai continued to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff's Account was charged off at some point between December 2021 to the present.

255.   Plaintiff reasonably believes that the Credit Bureau Defendants continued to publish that Plaintiff's Account was charged off at some point between December 2021 to the present.

256.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

257.   At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

258.   As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.  See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); Gorman v. Experian Info. Sols., Inc., 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

259.   The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

260.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

261.   Upon information and belief, had Defendants accurately reported the Account, Plaintiff's credit score and credit worthiness would have been better.

262.   Defendants' conduct reduced Plaintiff's access to credit by reporting materially misleading and patently false information on his consumer credit report.

263.   After disputing the inaccurate information numerous times with each Defendant CRA, Plaintiff applied for a credit card with Capital One. Plaintiff was approved at disadvantageous terms which he attributes to Defendants' inaccurate reporting.

264.   As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendants' inaccurate reporting.

## COUNT I
## 15 U.S.C. § 1681e(b)

### Failure to Follow Reasonable Procedures to
### Assure Maximum Possible Accuracy

### (First Claim for Relief Against Defendants
### Equifax, Experian, and Trans Union)

265.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

266.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

267.   On numerous occasions, Defendants Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

268.   Defendants Equifax, Experian, and Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

269.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

270.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

271.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

272.   As a result of Defendants' Equifax, Experian, and Trans Union conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the

expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

273.   Defendants Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

274.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i

### Failure to Perform a Reasonable Reinvestigation

### (Second Claim for Relief Against Defendants Equifax, Experian, and Trans Union)

275.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

276.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

277.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

278.   On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with Equifax, Experian, and Trans Union and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the charge off notation, reported from December 2021 to the present, in relation to Plaintiff's automobile loan with Defendant Hyundai.

279.  In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

280.   In response to Plaintiff's dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

281.   In response to Plaintiff's dispute, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

282.   The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

283.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit

reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

284.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

285.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681s-2(b)

**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**

**(Only Claim for Relief Against Defendant Hyundai)**

286.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

287.   Defendant Hyundai furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

288.   Defendant Hyundai violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

289.   As a result of Defendant Hyundai's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit

reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

290.   Defendant Hyundai's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

291.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Hyundai in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants for the following:

i.    Declaratory judgment that Defendants Hyundai, Experian, Equifax, and Trans Union violated the FCRA;

ii.   Actual damages pursuant to 15 U.S.C. § 1681n(a);

iii.   Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

iv.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

v.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

vi.   Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

vii.   Any other relief that this Court deems appropriate.

Dated: August 10, 2023

*/s/Jenna Dakroub*
Jenna Dakroub, GA #385021
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
E: jdakroub@consumerattorneys.com
T: (602) 807-1525
F: (718) 715-1750
*Attorneys for Plaintiff,*
*Timothy Horne*