IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>$50,750 IN U.S. CURRENCY;<br>$1,667 IN U.S. CURRENCY; AND<br>$167,064.07 IN U.S. CURRENCY<br>SEIZED FROM AMERIS BANK CHECK<br>NUMBER 3160,<br><br>  Defendants. | Civil Action No. |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW plaintiff United States of America, by Ryan K. Buchanan, United States Attorney, and Norman L. Barnett, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

### NATURE OF THE ACTION

1. This is a civil forfeiture action against United States currency, seized as part of a pill mill investigation involving two medical clinics operating in the Northern District of Georgia.

### THE DEFENDANTS *IN REM*

2. The defendant property consists of the following:

    a. $50,750 in United States currency that the U.S. Drug Enforcement Administration ("DEA") seized on or about December 11, 2022, during the execution of a Federal search warrant at 1898 Connemara Drive, Atlanta, Georgia 30341 ("Defendant $50,750");

    b. $1,667 in United States currency that DEA seized on or about December 11, 2022, during the execution of a Federal search warrant at FAMCARE of Atlanta, LLC, 11285 Elkins Road, Roswell, Georgia 30076 on December 11, 2022 ("Defendant $1,667"); and,

    c. $167,064.07 in United States currency seized from Ameris Bank Check No. 3160, made payable to Dikla Rosh, pursuant to a Federal seizure warrant, on or about March 3, 2023 ("Defendant Ameris Bank Check"),

(collectively, "Defendant Property").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. This Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395 because the property is located in this district.

6. The Defendant Property is presently being held by the United States Marshals Service in a secure location.

## BASIS FOR FORFEITURE

7. The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and 846.

8. The Defendant Property is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of a "specified unlawful activity."

9. 18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

10. 18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

11. The Defendant Property also is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a transaction or an attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering), or is property traceable to such property.

# FACTUAL BACKGROUND

*DEA Identifies Valere Medical PC and FAMCARE as Pill Mills*

12. Beginning in approximately October 2016, DEA began investigating certain individuals for the suspected operation of a pill mill in the Northern District of Georgia.

13. A pill mill is a term used to describe a doctor, pharmacy or clinic that prescribes or dispenses large quantities of controlled substances for no legitimate medical purpose, or not in the course of professional practice, which is a violation of Federal narcotics trafficking laws.

14. Certain common characteristics that a physician is issuing prescriptions illicitly include, but are not limited to:

   a. Physician performing cursory medical examinations or none at all;

   b. Physician skipping or ignoring urine drug screens;

   c. Physician not requiring patients' medical histories;

   d. Physician prescribing excessive amounts of controlled substances;

   e. Physician prescribing multiple drugs within the same category (e.g., Schedule II painkillers);

   f. Physician prescribing more than one prescription for the same drug in a one-month period;

   g. Physician failing to treat patients with anything other than controlled substances;

   h. Physician failing to heed others' warning that drug-seeking persons are trying to get controlled substances from the physician;

i. Physician maintaining inappropriate relationships with patients;

j. Physician failing to conduct an independent evaluation of the patient, i.e., allowing patients to suggest or direct which medications to provide;

k. Physician running a practice where "appointments" are not for a specific time;

l. Physician not maintaining or fabricating patient files;

m. Physician operating a cash-only business;

n. Physician not accepting insurance;

o. Physician directing patients to a particular pharmacy to fill their prescriptions;

p. Pharmacies stop filling the physician's prescriptions because of suspicious activity or high numbers of controlled substance prescriptions;

q. Patients filling multiple prescriptions in the same month for the same drug or a drug with similar therapeutic effects, but at different pharmacies to conceal the prescriptions being filled;

r. Patients traveling long distances to visit the physician;

s. Patients appearing and behaving in a manner consistent with abusing, or being addicted to, controlled substances; and,

t. Patients openly engaging in drug deals or discussing diverting their prescriptions.

15. Law enforcement suspected that Dr. Isaac Sved, an Atlanta-area physician registered with DEA to treat drug addiction, was unlawfully operating a pill mill at his two medical clinics: Valere Medical PC, located at 3331 Hamilton Mill Road, Suite 1102, Buford, Georgia 30519 and FAMCARE of Atlanta, LLC, located at 11285 Elkins Road, Suite J7, Roswell, Georgia 30076.

16. According to the Georgia Secretary of State, FAMCARE of Atlanta was established in October 2016. This location was not registered with the DEA.

17. Georgia Secretary of State records indicate that Valere Medical PC was established May 15, 2015. Dr. Sved is listed as the Chief Executive Officer, Chief Financial Officer, and Secretary.

18. During the investigation, DEA observed the following characteristics of a pill mill at FAMCARE:

   a. Dr. Sved regularly prescribed excessive amounts of controlled substances;

   b. Patients received minimal or non-existent medical examinations, evaluation, or testing prior to Dr. Sved writing prescriptions for controlled substances;

   c. Patients have been arrested for illegally selling the controlled substances that Dr. Sved prescribed;

   d. Patients traveled lengthy distances, passing numerous qualified practitioners, to see Dr. Sved; and,

   e. Patients were required to visit Dr. Sved's office every month and were required to pay approximately $500-$600 cash per visit.

19. In addition, FAMCARE operated only on Sundays purportedly between the hours of 9:00 a.m. and 1:00 p.m. However, there were no signs or outward markings indicating that there was a medical office at the location.

20. According to a sign posted on the Valere Medical PC clinic main door, Dr. Sved operated out of Valere Medical PC on Monday, Wednesday, and Thursday, by appointment only.

21. Valere Medical PC was listed on the majority of the prescriptions that Dr. Sved prescribed.

22. The investigation further revealed that Dikla "Rebecca" Rosh was the office manager at FAMCARE.

23. Rosh collected cash payments from individuals that obtained prescriptions for controlled substances at FAMCARE.

24. Throughout the investigation, law enforcement officers observed Rosh exit FAMCARE with large amounts of cash and drive directly to her residence, located at 1898 Connemara Drive, Atlanta, Georgia, 30341 (hereinafter, "Connemara residence"), without stopping at a bank.

*DEA Executes Federal Search Warrants at the Connemara Residence and FAMCARE*

25. On December 11, 2022, DEA executed a Federal search warrant at FAMCARE.

26. During the search, law enforcement officers located Defendant $1,667 in a drawer in the front office desk of the clinic.

27. On that same day, DEA also executed a Federal search warrant at the Connemara residence.

7

28. Based on the investigation, DEA believed that Rosh lived at the Connemara residence with a juvenile who was present during the execution of the Federal search warrant. During the course of the investigation, no other adult women were found to reside at the Connemara residence. The only clothing located in the master bedroom was consistent with clothing that would typically be worn by adult women.

29. During the search, law enforcement officers located Defendant $50,750, in bundles and envelopes in a resealable plastic bag, in a safe in the master bedroom.

30. Such packaging is consistent with money involved in the unlawful distribution of controlled substances.

31. In the master bedroom, DEA also located a blank prescription pill bottle with 13 suspected Percocet pills and pre-signed, blank prescriptions with Dr. Sved's signature.

32. In the basement office of the Connemara residence, law enforcement officers located sheets of blank prescription paper and folders containing FAMCARE paperwork.

33. Law enforcement officers also located prescriptions signed by Dr. Sved in the Connemara residence.

*Rosh Used Proceeds from the Pill Mill to Purchase the Connemara Residence*

34. Following the execution of the Federal search warrant at the Connemara residence, DEA discovered that the Connemara residence was listed for sale.

35. The investigation revealed that Rosh purchased the Connemara residence using proceeds from the illegal pill mill.

36. Specifically, Rosh used funds from several bank accounts that received hundreds of thousands of dollars in cash deposits during the period of time that Valere and FAMCARE operated.

37. On or about August 26, 2020, Rosh withdrew $42,000 from Wells Fargo account ending 0534 and, shortly thereafter, paid a cashier's check in that same amount towards the purchase of the Connemara residence.

38. The investigation revealed that Wells Fargo account ending 0534 was a business account held in the name of "Physician Specialists of Atlanta" over which Rosh had signatory authority.

39. According to Georgia Secretary of State records, Rosh signed documents authorizing the incorporation of "Physician Specialists of Atlanta, LLC" and is the LLC's member/manager, registered agent, and sole organizer.

40. Between July 2017 and January 2021, cash deposits totaling $187,373 were made into Wells Fargo account ending 0534.

41. From approximately November 2021 through November 2022, Rosh made monthly mortgage payments totaling approximately $41,197 from J.P. Morgan Chase account ending 2802.

42. J.P. Morgan Chase account ending 2802 also is a business account held in the name of "Physician Specialists of Atlanta, LLC" over which Rosh had signatory authority.

43. From November 2021 through November 2022, cash totaling $187,109 was deposited into J.P. Morgan Chase account ending 2802.

44. On November 2, 2020, Rosh also made a monthly mortgage payment using Wells Fargo business account ending 9862.

45. The investigation revealed that Wells Fargo account ending 9862 also was held in the name of "Physician Specialists of Atlanta, LLC" and that Rosh had signatory authority over the account.

46. Like the other Physician Specialists of Atlanta accounts, Wells Fargo business account ending 9862 received a large amount of cash deposits, i.e., $280,026, from January 2015 through January 2021.

47. Rosh also made two monthly mortgage payments, on December 2, 2020 and December 29, 2020, from Wells Fargo business account ending 3193.

48. Wells Fargo account ending 3193 also was a business account held in the name of "Physician Specialists of Atlanta, LLC" over which Rosh had signatory authority.

49. Wells Fargo account ending 3193 received cash deposits totaling $273,505 from January 2017 through January 2021.

*Administrative Proceedings*

50. DEA initiated administrative proceedings against Defendant $50,750 and Defendant $1,667 on or about December 11, 2022.

51. DEA initiated administrative proceedings against Defendant $167,064.07 on or about March 3, 2023.

52. Dikla Rosh, on her own behalf and through her counsel, Jay Strongwater, Esq., filed a claim with DEA to the Defendant Property, asserting that she is the owner of the Defendant Property.

53. Pursuant to 18 U.S.C. § 983(a)(3), DEA referred the matter for judicial forfeiture to the U.S. Attorney's Office for the Northern District of Georgia.

## CONCLUSION

54. Based on the foregoing, the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the possession of a controlled substance in violation of 21 U.S.C. §§ 841 and 846.

55. The Defendant Property also is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or was derived from proceeds traceable to a violation of a specified unlawful activity, namely, the illegal distribution of controlled substances.

56. The Defendant Property also is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a transaction or an attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering), or is property traceable to such property.

WHEREFORE, the United States prays as follows:

(a) That the Court forfeit the Defendant Property to the United States of America;

(b) That the Court award the United States the costs of suit incurred in this action; and,

(c) That the Court grant such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 10th day of August 2023.

                                      RYAN K. BUCHANAN
                                         *United States Attorney*
                                      600 U.S. Courthouse
                                      75 Ted Turner Drive SW
                                      Atlanta, GA 30303
                                      (404) 581-6000   fax (404) 581-6181

                                      */s/ Norman L. Barnett*

                                      NORMAN L. BARNETT
                                         *Assistant United States Attorney*
                                      Georgia Bar No. 153292
                                      norman.barnett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>v.<br><br>$50,750 IN U.S. CURRENCY;<br>$1,667 IN U.S. CURRENCY; AND<br>$167,064.07 IN U.S. CURRENCY<br>SEIZED FROM AMERIS BANK CHECK<br>NUMBER 3160,<br><br>　　　Defendants. | Civil Action No. |

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Russell Orrick, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 10th day of August 2023.

.

_____
RUSSELL ORRICK
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION