**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WILLIAM IMAND, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| NIDEC MOTOR CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>COMPLAINT</u>

Plaintiff William Imand files this Complaint against his former employer Defendant Nidec Motor Corporation ("Defendant" or "Nidec") and alleges that Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. (the "ADEA"), by (1) terminating his employment based on his age, and (2) retaliating against him for engaging in protected activity (Counts I and II). Plaintiff additionally alleges that Defendant violated the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq*. (the "ADA") by (1) discriminating against him because of his disabilities, (2) failing to provide him with a reasonable accommodation, including by allowing him to return to work following his approved disability leave, and (3) retaliating against him by terminating his employment after he requested and took disability leave (Counts III, IV, and V). Lastly, Plaintiff

alleges that Defendant violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") by (1) interfering with his rights under the FMLA, and (2) retaliating against him for engaging in protected activity under the FMLA (Counts VI and VII). Plaintiff shows the Court as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1.      Plaintiff is currently fifty-eight (58) years old. He is a former employee of Defendant, where he was employed as a Regional Sales Director from approximately September 2020, until the company terminated his employment on or about May 8, 2023.

2.      In approximately mid-to-late 2021, Defendant began subjecting Plaintiff to discrimination and a hostile work environment based on his age, created by Plaintiff's Manager, Andrew Mrasek, who is approximately forty (40) years old. For example, Mr. Mrasek, *inter alia*, (a) repeatedly acted in a hostile manner towards Plaintiff, including by yelling at him on calls in the presence of Plaintiff's peers and subordinate employees; (b) often exhibited a complete lack of respect towards Plaintiff; and (c) made age-based comments regarding other employees in Plaintiff's presence.

3.      The discriminatory treatment and hostile work environment continued throughout Plaintiff's employment, and on or about July 20, 2022, Plaintiff

complained to Defendant's Human Resources Director, Tiffany Leuthold, that Mr. Mrasek was subjecting him to a hostile work environment and requested to work under a new manager.  Then, when the discriminatory treatment continued, on or about October 14, 2022, and again on October 25, 2022, Plaintiff complained to Defendant's President, Anthony Pickering, and the President of Motion and Energy, Michael Briggs, about the same.  To the best of Plaintiff's knowledge, no substantive action was taken regarding Plaintiff's complaints.

4.     On or about January 23, 2023, following the continued discrimination and hostile work environment, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and a hostile work environment in violation of the ADEA.  Two days later, on or about January 25, 2023, Defendant was notified of the filing of Plaintiff's EEOC Charge.

5.     Shortly thereafter, on or about February 14, 2023, in retaliation for Plaintiff's protected activity, Mr. Mrasek issued Plaintiff a poor performance rating, and, on or about February 21, 2023, Plaintiff received a retaliatory write-up for alleged insubordination.

6.     On or about February 24, 2023, due to the ongoing discriminatory treatment and hostile work environment, which environment further exacerbated Plaintiff's disabilities, Plaintiff took an approved FMLA and ADA leave.  Plaintiff

was scheduled to return to work on or about May 8, 2023; however, when Plaintiff met with Defendant on the day of his return, Defendant terminated his employment effective immediately.  No reason was provided for the termination.

7.     Defendant violated the ADEA by: (a) terminating his employment based on his age and (b) retaliating against him for engaging in protected activity. Plaintiff seeks all available relief under the ADEA, including declaratory relief, lost wages and benefits, an equal amount of liquidated damages, prejudgment and post-judgment interest, and attorneys' fees and costs of litigation.

8.     Defendant violated the ADA by: (a) discriminating against Plaintiff because of his disability, (b) failing to provide him with a reasonable accommodation, including by allowing him to return to work following his approved disability leave, and (c) retaliating against him by terminating his employment after he requested and took disability leave.  With respect to his ADA claims, Plaintiff seeks declaratory relief, lost wages and benefits, compensatory damages, punitive damages, prejudgment interest, and attorneys' fees and costs.

9.     Defendant violated the FMLA by: (a) interfering with Plaintiff's rights under the FMLA and (b) retaliating against him for engaging in protected activity under the FMLA.  With respect to his FMLA claims, Plaintiff seeks declaratory

relief, lost wages and benefits, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

10.    This court has federal question jurisdiction over Plaintiff's ADEA, ADA, and FMLA claims, pursuant to 28 U.S.C. § 1331.

11.    Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

12.    Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; he submits himself to the jurisdiction of this Court.

13.    Defendant employed Plaintiff from approximately September 2020 to May 8, 2023 as a Regional Sales Director.

14.    At all relevant times, Plaintiff is and was a qualified individual with disabilities within the meaning of the ADA.

15.    Defendant is a for-profit corporation with its principal place of business at 8050 West Florissant Avenue, St. Louis, Missouri 63136.

16.     Defendant is licensed to do business in Georgia and regularly does business in the Northern District of Georgia, where it employed Plaintiff.

17.     Defendant is subject to the Court's jurisdiction and may be served with process through its registered agent, CT Corporation System at 289 S Culver Street, Lawrenceville, Georgia 30046.

18.     Defendant is governed by and subject to the ADEA.

19.     Defendant is governed by and subject to the ADA.

20.     Defendant is governed by and subject to the FMLA.

**ADMINISTRATIVE EXHAUSTION**

21.     Plaintiff has satisfied all administrative prerequisites for bringing his ADEA and ADA claims in this Court.

22.     On January 23, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

23.     On May 15, 2023, Plaintiff filed a Second Charge of Discrimination with the EEOC.

24.     On August 4, 2023, the EEOC issued a Notice of Right to Sue regarding Plaintiff's Charges of Discrimination.

25.     Plaintiff brings this suit within ninety (90) days of his receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

26.     Plaintiff is a 58-year-old male and suffers from disabilities, including mixed anxiety and depressive disorder and Type II Diabetes.

27.     In approximately September 2020, Plaintiff was hired by Control Techniques, a division of Defendant, as a Regional Sales Director.  Plaintiff was responsible for managing the East region.

28.     Within the first week of his employment, then-Vice President of Sales and Marketing, Ted Danhauser, asked Plaintiff whether it was time for Madhu Sane, one of Plaintiff's direct reports, to retire.  On information and belief, Mr. Sane was approximately in his late-60s to early-70s at the time.  Plaintiff found this line of questioning to be offensive and inappropriate considering Mr. Sane's age.

29.     Further, around the same time period, Mr. Danhauser asked Plaintiff whether he thought Craig Witker, Area Sales Manager and also one of Plaintiff's direct reports, needed to be placed on a Performance Improvement Plan ("PIP").  On information and belief, Mr. Witker was in his mid-to-late 50s.

30.     On information and belief, during his tenure as the VP of Sales and Marketing, Mr. Danhauser maintained a spreadsheet detailing and highlighting the ages of his subordinate employees.

31.     In approximately March 2021, after approximately six (6) months of employment, Plaintiff received a satisfactory performance review in which Mr. Danhauser rated him as "fully meeting expectations."

32.     In approximately July 2021, Andrew Mrasek was promoted to Vice President of Sales and Marketing, CTA Americas, and became Plaintiff's manager, replacing Mr. Danhauser.  Prior to Mr. Mrasek's promotion, he was Plaintiff's peer. On information and belief, Mr. Mrasek is approximately 40 years old.

33.     Following his promotion, Mr. Mrasek began subjecting Plaintiff to a hostile work environment based on his age.  For example, Mr. Mrasek berated Plaintiff in front of his peers during a strategy meeting.

34.     In approximately July or August 2021, Plaintiff's peer, Paul Detkowski, informed Plaintiff that Mr. Mrasek asked him "what is your succession plan?" or words to that effect.  On information and belief, Mr. Detkowski is approximately in his early 60s.  Further, Mr. Mrasek made age-based comments regarding other employees to Plaintiff, and, similar to Mr. Danhauser, questioned whether it was time for Mr. Sane to retire.

35.     In Plaintiff's observation, Mr. Mrasek focused on hiring younger employees.  For example, Mr. Mrasek was tasked with hiring a replacement for his former role of Director of Business Development.  In doing so, Mr. Mrasek hired

Brett Mernin, an internal candidate who was previously an Engineering Manager, and who on information and belief was in his mid-30s.  To the best of Plaintiff's knowledge, there were several older employees who were far more qualified than Mr. Mernin.

36.     The hostile treatment from Mr. Mrasek continued and on or about November 19, 2021, while on a call with Plaintiff and Mr. Danhauser, Mr. Mrasek became extremely belligerent, speaking to Plaintiff in an extremely hostile tone.

37.     In approximately December 2021, Plaintiff ruptured the bicep tendon in his right arm, which required that he have surgery on or about January 19, 2022. Due to this and his physician's orders, Plaintiff could not travel by plane.

38.     Therefore, in approximately mid-January 2022, Plaintiff notified Mr. Mrasek that he would be unable to attend a "face-to-face" strategy meeting on January 24, 2022 being held in Eden Prairie, Minnesota.  Plaintiff attended the meeting virtually and satisfactorily contributed to the meeting; however, Mr. Mrasek was unhappy that Plaintiff did not attend in-person and continued to exhibit a hostile attitude towards him.

39.     In approximately March 2022, despite Plaintiff's objectively positive sales metrics, Mr. Mrasek gave him a poor performance review.  More specifically, Mr. Mrasek rated Plaintiff a: "4" for sales; "2" for travel; and "2" for knowledge

with respect to his accounts.   These ratings averaged to a 2.67, yet Mr. Mrasek downgraded Plaintiff's overall rating to a "2."

40.   The discriminatory treatment and hostile work environment created by Mr. Mrasek continued thereafter.   More specifically, Mr. Mrasek (a) continued to exhibit a complete lack of respect towards Plaintiff; (b) continued to be openly belligerent towards him on calls; (c) on or about May 16, 2022, Mr. Mrasek stated, in a room full of salespeople at a national sales meeting, that he viewed them all as his "kids," or similar words, a comment that several of Plaintiff's team members considered offensive given the fact that many of them were approximately twenty-five (25) years older than Mr. Mrasek; and (d) on or about July 19, 2022, when Mr. Mrasek joined a call in which Plaintiff and Mr. Witker were discussing an account, Mr. Mrasek became angry and stated, "we will get fucking Bill involved," or words to that effect, exhibiting a complete lack of regard for Plaintiff, despite knowing that Plaintiff was on the call.

41.   On or about July 19, 2022, Plaintiff complained to Tiffany Leuthold, Director of Human Resources, that Mr. Mrasek was creating a hostile work environment.

42.   On or about July 20, 2022, Ms. Leuthold informed Plaintiff that she would look into his complaint, but Plaintiff never heard back from her.

43.    On or about October 14, 2022, Plaintiff sent an email to President, Tony Pickering, and President of Motion and Energy, Michael Briggs, complaining that, among many things, Mr. Mrasek was subjecting him to a hostile work environment due to his age.

44.    The following day, Plaintiff received a response from Mr. Pickering in which he informed him that a full investigation would take place.

45.    On or about October 19, 2023, Plaintiff was diagnosed with Type II Diabetes.

46.    On or about October 25, 2022, following a phone call Plaintiff had with Mr. Mrasek in which he, *inter alia*, spoke to Plaintiff in a hostile and angry tone, and accused him of not being "right" for his position, Plaintiff sent a second email to Mr. Pickering and Mr. Briggs complaining about the ongoing discriminatory treatment and hostile work environment to which he was being subjected by Mr. Mrasek.

47.    On or about November 15, 2022, Plaintiff met with Shelley Saufferer, Legal Compliance Officer.  In that meeting, Plaintiff once more complained that he was being subjected to discrimination and a hostile work environment based on his age.

48.    In approximately December 2022, Ms. Saufferer informed Plaintiff that following an investigation, no evidence of wrongdoing was found.

11

49.     On or about January 23, 2023, Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination and hostile work environment on the basis of his age.  Two days later, Defendant was notified of Plaintiff's EEOC Charge.

50.     Throughout the months of January 2023 and February 2023, the discriminatory treatment continued, and Plaintiff began experiencing increased stress levels, which exacerbated the issues caused by Plaintiff's disabilities.

51.     On or about February 14, 2023, Plaintiff received a poor performance review from Mr. Mrasek.  Plaintiff complained directly to Mr. Mrasek that the poor performance review was harassing and in retaliation for his protected activity.

52.     On or about February 21, 2023, Defendant wrote Plaintiff up for alleged insubordination.  The write-up was in retaliation for Plaintiff's ongoing protected activity.

53.     On or about February 24, 2023, Plaintiff took an approved ADA and FMLA leave due to his disabilities, which conditions were exacerbated by Defendant's treatment of him.

54.     On or about April 21, 2023, Plaintiff sent an email to Ms. Leuthold informing her that his physician cleared him to return to work on May 8, 2023.

55.     On or about May 2, 2023, Ms. Leuthold emailed Plaintiff informing him that they would meet via Microsoft Teams on the morning of May 8 to discuss

his return; however, when Plaintiff logged into the call that morning, Defendant terminated his employment effective immediately.  No reason was provided for the termination.

56.     Defendant terminated Plaintiff because of his age and/or disabilities.

57.     In the alternative, Defendant terminated Plaintiff because he engaged in protected activity by complaining of discrimination, filing an EEOC Charge and/or taking leave protected by the ADA and FMLA.

58.     Defendant's termination of Plaintiff interfered with Plaintiff's right to reinstatement under the FMLA.

59.     Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights under the ADEA.

60.     Defendant's ADEA violations were willful.

61.     Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights under the ADA.

62.     Defendant's termination of Plaintiff's employment interfered with his right to benefits under the FMLA.

63.     Defendant interfered with Plaintiff's FMLA rights and retaliated against him for exercising such rights.

64.    Defendant's violations of the FMLA with respect to Plaintiff were willful, and not in good faith.

65.    Due to Defendant's violations of federal law, Plaintiff has incurred lost wages and benefits.

**COUNT I**
**Discriminatory Termination in Violation of the ADEA**

66.    Plaintiff is 58 years old and, at all relevant times, was an employee protected by the ADEA.

67.    Throughout his employment, and at the time of his termination, Plaintiff was more than qualified for the position in which he held.

68.    Defendant harbored a discriminatory animus towards Plaintiff based on his age.

69.    Defendant discriminated against Plaintiff in violation of the ADEA by subjecting him to a hostile work environment based on his age, created by his manager Andrew Mrasek, in which Mr. Mrasek, *inter alia*, (a) exhibited a lack of respect towards plaintiff; (b) berated Plaintiff in front of his peers during strategy meetings; (c) made age-based comments about other employees to Plaintiff; (d) spoke to Plaintiff in a belligerent and hostile manner during calls; (e) gave Plaintiff poor performance ratings despite his objectively-positive sales metrics; and (f) ultimately terminated his employment.

14

70.     Defendant terminated Plaintiff because of his age.

71.     As a consequence of Defendant's violations of the ADEA, Plaintiff has incurred lost wages and benefits.

72.     Plaintiff seeks all available relief under the ADEA, including lost wages and benefits, an equal amount of liquidated damages, interest, reasonable attorneys' fees, and costs.

## COUNT II
## Retaliation in Violation of the ADEA

73.     Plaintiff engaged in protected activity under the ADEA when: (1) on or about July 19, 2022, he complained to Tiffany Leuthold that Mr. Mrasek was subjecting him to a hostile work environment; (2) on or about October 14, 2022 and again on October 25, 2022, he complained to President Anthony Pickering, and President of Motion and Energy Michael Briggs, that Mr. Mrasek was subjecting him to a hostile work environment based on his age; and (3) on or about January 23, 2023, he filed an EEOC Charge and informed Defendant of the same on or about January 25, 2023.

74.     Defendant retaliated against Plaintiff for engaging in protected activity by, *inter alia*, issuing Plaintiff a poor performance rating on or about February 14, 2023, writing Plaintiff up for alleged insubordination on or about February 21, 2023, and terminating Plaintiff's employment on or about May 8, 2023.

15

75.     As a consequence of the retaliation that he experienced from Defendant in violation of the ADEA, Plaintiff has experienced lost wages and benefits.

76.     Plaintiff seeks all available relief under the ADEA, including lost wages and benefits, an equal amount of liquidated damages, interest, reasonable attorneys' fees, and costs.

### COUNT III
### Discriminatory Termination in Violation of the ADA

77.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

78.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Regional Sales Director position.

79.     At all times material to the claims herein, Defendant was an employer as defined in the ADA, 42 U.S.C. § 12111(5).

80.     Defendant violated the ADA by discriminating against Plaintiff on the basis of his disabilities, including terminating Plaintiff because of his disabilities and/or because of the approved leave he took related thereto.

81.     Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights under the ADA.

82.     As a consequence of Defendant's violation of the ADA, Plaintiff has suffered lost wages, emotional distress, embarrassment, humiliation, and loss of enjoyment of life.

83.     Plaintiff is entitled to declaratory relief, lost wages, compensatory damages, punitive damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT IV
## Failure to Accommodate Disabilities in Violation of the ADA

84.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

85.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Regional Sales Director position.

86.     At all times material to the claims herein, Defendant was an employer as defined in the ADA, 42 U.S.C. § 12111(5).

87.     Defendant violated the ADA by failing to provide Plaintiff with a reasonable accommodation for his disabilities, specifically by failing to allow Plaintiff to return to work following his approved disability leave and instead terminating his employment.

88.     Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights under the ADA.

17

89.     As a consequence of Defendant's violation of the ADA, Plaintiff has suffered emotional distress, embarrassment, humiliation, and loss of enjoyment of life.

90.     Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT V
## Retaliatory Termination in Violation of the ADA

91.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

92.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Regional Sales Director position.

93.     At all times material to the claims herein, Defendant was an employer as defined in the ADA, 42 U.S.C. § 12111(5).

94.     Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation for his disabilities, and specifically that he be permitted to take disability leave and then return to work following his disability leave.

95.     Defendant violated the ADA by terminating Plaintiff's employment in retaliation for his protected activity.

96.   Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights.

97.   Plaintiff is entitled to declaratory relief, lost wages and benefits, compensatory damages, punitive damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT VI
## Interference in Violation of the FMLA

98.   At all relevant times, Plaintiff was an "eligible employee" of Defendant within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

99.   At all relevant times, Defendant was and continues to be a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

100.   Plaintiff requested FMLA leave due to his disabilities, including mixed anxiety and depressive disorder and Type II Diabetes, which constitute serious health conditions within the meaning of the FMLA.

101.   Defendant approved Plaintiff for continuous FMLA leave, including from February 24, 2023, until on or about May 5, 2023.

102.   Plaintiff was scheduled to return to work on May 8, 2023; however, on that day, Defendant terminated his employment, interfering with an FMLA benefit to which he was entitled.

103.   As a direct and proximate cause of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has been damaged and is entitled to declaratory relief, lost wages and benefits, liquidated damages, reinstatement and attorneys' fees and costs.

## COUNT VII
## Retaliatory Termination in Violation of the FMLA

104.   At all relevant times, Plaintiff was an "eligible employee" of Defendant within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

105.   At all relevant times, Defendant was and continues to be a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

106.   Plaintiff had serious health conditions under the FMLA.

107.   Plaintiff engaged in protected activity under the FMLA by taking and attempting to return from an approved FMLA leave.

108.   Defendant terminated Plaintiff's employment because he engaged in protected activity, and specifically because he requested, was granted, and took FMLA leave.

109.   As a direct and proximate cause of Defendant's unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to declaratory relief, lost wages and benefits, liquidated damages, reinstatement, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)      A declaratory judgment that Defendant's practices complained of herein violated the ADEA;

b)      A declaratory judgment that Defendant's practices complained of herein violated the ADA;

c)      A declaratory judgment that Defendant's practices complained of herein violated the FMLA;

d)      Lost wages and benefits resulting from Defendant's ADEA violations;

e)      Liquidated damages for Defendant's willful ADEA violations;

f)      Lost wages and benefits resulting from Defendant's ADA violations;

g)      Compensatory damages for Defendant's ADA violations;

h)      Punitive damages for Defendant's ADA violations;

i)      Lost wages and benefits resulting from Defendant's FMLA violations;

j)      Liquidated damages for Defendant's willful FMLA violations;

k)      An award of prejudgment and post-judgement interest;

l)      Reinstatement and/or front pay and benefits;

21

m)     An award of costs of expenses of this action, including reasonable attorneys' fees and expert fees; and

n)     Such other and further relief as this Court deems just and proper.

Respectfully submitted, this 11th day of August 2023.

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Tierra M. Monteiro
Georgia Bar No. 743224
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
tmonteiro@scottemploymentlaw.com

Counsel for Plaintiff

22