IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA OF GEORGIA

| | |
|---|---|
| QUENNEL D. WARREN,<br><br>     Plaintiff,<br><br>v.<br><br>CORRECTHEALTH CLAYTON,<br>LLC,<br><br>CORRECTHEALTH, LLC,<br><br>MILLENIA MEDICAL SERVICES,<br>INC.,<br><br>SHC SERVICES, INC. d/b/a/<br>SUPPLEMENTAL HEALTH CARE,<br><br>GLOBAL DIAGNOSTIC SERVICES,<br>INC.,<br><br>TRINITY SERVICES GROUP, INC.,<br><br>CLAYTON COUNTY, GEORGIA,<br><br>CGL FACILITY MANAGEMENT,<br>LLC,<br><br>LEVON ALLEN, in his official<br>capacity as Clayton County Sheriff,<br><br>CHARLES V. CLOPTON, JR., M.D.,<br>individually and in his capacity as<br>Clayton County Jail Medical Director, | CIVIL ACTION<br>FILE NO. |

MARVET WINT, individually,

AMBER E. REID, individually,

GERALDINE ECCLESTON
MENCHION, individually,

LARIKA L. MANN, individually,

PRISCILLA N. MADU-STERLING,
individually,

KYAIRRA D. JOHNSON,
individually, and

ANTON A. FRASER, individually,

  Defendants.

## **COMPLAINT**

COMES NOW, Plaintiff in the above-styled action and hereby files this

Complaint as follows:

## **JURISDICTION AND VENUE**

1.

This is an action under 42 U.S.C. §§ 1983 and 1988 for violations of

Plaintiff's First Amendment right to free speech and Fourteenth Amendment due

process rights as well as for state tortious conduct and remedies.

2.

This Court has original jurisdiction under 28 U.S.C. §§ 1331 & 1343 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.

Venue in this district and division is proper under 28 U.S.C. § 1391 as one or more Defendants are located in the Northern District of Georgia, Atlanta Division, and the conduct complained of herein occurred in Clayton County, Georgia and therefore within this judicial district and division.

## PARTIES

4.

At all relevant times, Plaintiff Quennel Warren was a resident of Georgia, and a citizen of the United States of America.

5.

Defendant CorrectHealth Clayton, LLC (Hereinafter "Defendant(s)" or "CorrectHealth Clayton") is a Georgia corporation authorized to transact business in Georgia and with a principal place of business in Fulton County, Georgia. Defendant CorrectHealth Clayton, LLC is sued in its individual capacity, as a private actor, and for actions taken under color of law, as providing a traditional public function of medical care and services at Clayton County Jail.  At all relevant

times, CorrectHealth Clayton was a private entity that contracts with Clayton County, Georgia and Clayton County Sheriff's Office to perform government functions in the form of providing health care to inmates and pre-trial detainees held at Clayton County Jail.  At all relevant times, Defendant CorrectHealth Clayton, LLC and its agents and employees were acting under color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia and the Clayton County Sheriff's Office, where their agents and employees are under the authority of their respective offices and within the scope of their employment, pursuant to Georgia laws.  CorrectHealth Clayton may be served through its registered agent, C T Corporation System, 106 Colony Park Drive, Suite 800-B, Cumming, Georgia 30040.

6.

Defendant CorrectHealth, LLC (Hereinafter "Defendant(s)" or "CorrectHealth") is a Georgia corporation authorized to transact business in Georgia and with a principal place of business in Fulton County, Georgia.  At all relevant times, Defendant CorrectHealth, LLC is a private entity and parent company to CorrectHealth Clayton, LLC.  Defendant CorrectHealth, LLC is sued in its individual capacity, as a private actor, and for actions taken under color of law, as providing a traditional public function of medical care and services at

Clayton County Jail.  Defendant CorrectHealth, LLC provided contract administration, staffing, and/or payroll services as well as health care to inmates and pre-trial detainees held at Clayton County Jail on behalf of Clayton County, Georgia and Clayton County Sheriff's Office.  At all relevant times, Defendant CorrectHealth, LLC and its subordinate corporation(s) and agents were acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia and CorrectHealth, LLC, where their subordinate corporation(s), agents, and employees are under the authority of their respective offices and within the scope of their employment, pursuant to Georgia laws.  CorrectHealth, LLC may be served through its registered agent, C T Corporation System, 106 Colony Park Drive, Suite 800-B, Cumming, Georgia 30040.

7.

Defendant Millenia Medical Services, Inc. (Hereinafter "Defendant(s)" or "Millenia Medical") is a South Carolina corporation authorized to transact business in Georgia.  Defendant Millenia Medical is sued in its individual capacity, as a private actor, and for actions taken under color of law, as providing a traditional public function of medical care and services at Clayton County Jail.  At all relevant times, Millenia Medical was a private entity that contracts with Defendants

CorrectHealth Clayton and CorrectHealth, to perform government functions in the form of providing health care to inmates and pre-trial detainees held at Clayton County Jail.  At all relevant times, Defendant Millenia Medical and its agents and employees were acting under color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia and the Clayton County Sheriff's Office, where their agents and employees are under the authority of their respective offices and within the scope of their employment, pursuant to Georgia laws.  Millenia Medical Services, Inc. may be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.

Defendant SHC Services, Inc. D/B/A Supplemental Health Care (Hereinafter "Defendant(s)" or "Supplemental Health") is a Delaware corporation authorized to transact business in Georgia.  Defendant Supplemental Health is sued in its individual capacity, as a private actor, and for actions taken under color of law, as providing a traditional public function of medical care and services at Clayton County Jail.  At all relevant times, Supplemental Health was a private entity that contracts with Defendants CorrectHealth Clayton and CorrectHealth, to perform government functions in the form of providing health care to inmates and

pre-trial detainees held at Clayton County Jail.  At all relevant times, Defendant Supplemental Health and its agents and employees were acting under color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia and the Clayton County Sheriff's Office, where their agents and employees are under the authority of their respective offices and within the scope of their employment, pursuant to Georgia laws.  SHC Services, Inc. D/B/A Supplemental Health Care may be served through its registered agent, CSC of Stephens County, Inc., 597 Big A Road, Toccoa, Georgia 30577.

9.

Defendant Global Diagnostic Services, Inc. (Hereinafter "Defendant(s)" or "Global Diagnostic") is a Georgia corporation authorized to transact business in Georgia.  Defendant Global Diagnostic is sued in its individual capacity, as a private actor, and for actions taken under color of law, as providing a traditional public function of medical care and services at Clayton County Jail.  At all relevant times, Global Diagnostic was a private entity that contracts with Defendants CorrectHealth Clayton and CorrectHealth, to perform government functions in the form of providing health care to inmates and pre-trial detainees held at Clayton County Jail.  At all relevant times, Defendant Global Diagnostic and its agents and employees were acting under color of law and pretense of the statutes, ordinances,

- 7 -

regulations, customs, and usages of the State of Georgia and the Clayton County

Sheriff's Office, where their agents and employees are under the authority of their

respective offices and within the scope of their employment, pursuant to Georgia

laws.  Global Diagnostic Services, Inc. may be served through its registered agent,

Marc C. Upshaw, 2504 Beech Tree Court, Conyers, Georgia 30094.

10.

Defendant Trinity Services Group, Inc. (Hereinafter "Defendant(s)" or

"Trinity Services") is a Florida corporation duly registered to transact business in

Georgia.  Defendant Trinity Services Group, Inc. is sued in its individual capacity,

as a private actor, and for actions taken under color of law, as providing a

traditional public function of providing food services at Clayton County Jail.

Trinity is a private entity that contracts with Clayton County, Georgia and/or

Clayton County Sheriff's Office to perform government functions in the form of

providing food services to inmates and pre-trial detainees held at the Clayton

County jail.  By doing so, Defendant Trinity Services Group regularly and

systematically conducts business in the state of Georgia and is subject to the

jurisdiction of this Court.  Trinity is responsible for preparing and distributing

specialized meals to Clayton County jail detainees that meet their individual

religious, medical, health and/or dietary needs.  At all relevant times, Defendant

- 8 -

Trinity Services Group and its agents and employees were acting under color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, Clayton County, Georgia, and the Clayton County Sheriff's Office, where their agents and employees are under the authority of their respective offices and within the scope of their employment, pursuant to Georgia laws. Service may be made upon Defendant Trinity's registered agent, Cogency Global, Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

11.

Defendant Clayton County, Georgia (Hereinafter "Defendant(s)"  or "Clayton County") is a local political division of the state of Georgia and is subject to the jurisdiction and venue of this Court.  Clayton County, Georgia, is responsible for approving and providing the budget for Clayton County Sheriff's Office and the Clayton County Jail.  Defendant Clayton County, Georgia, owns and maintains the physical Clayton County Jail facility and property, and Defendant Clayton County as well as Defendant Levon Allen, on behalf of Clayton County Sheriff's Office, are jointly responsible for providing constitutionally adequate conditions of confinement for Clayton County pre-trial detainees and inmates as well as establishing customs and policies related to these responsibilities.  *See* (Exhibit 1, Clayton County Ordinance, Part I, Art. II, Sec. 2-

10).  At all times material hereto, Defendant Clayton County, Georgia, and its

subordinate departments, agents, and employees were acting under color of law,

where its agents and employees were acting within the course and scope of their

employment.  Clayton County may be served with a copy of this Complaint and

process by serving the Chairman of the Clayton County Board of Commissioners,

Jeffrey E. Turner, at his address at 8491 Members Drive, Jonesboro, Georgia

30236.

12.

Defendant CGL Facility Management, LLC (Hereinafter "Defendant(s)" or

"CGL Facility Management") is a Texas corporation duly registered to transact

business in Georgia.  Defendant CGL Facility Management is sued in its individual

capacity, as a private actor.  CGL Facility Management is one of a family of CGL

companies providing justice facility planning, design, maintenance, and operation

services.  At all relevant times, CGL Facility Management was a private entity that

contracted with Clayton County, Georgia and/or Clayton County Sheriff's Office

to perform government functions in the form of providing facility maintenance for

county-owned properties and structures, including Clayton County Jail.  By doing

so, Defendant CGL Facility Management regularly and systematically conducts

business in the state of Georgia and is subject to the jurisdiction of this Court.

Service may be made upon Defendant CGL Facility Management's registered agent, Capitol Corporate Services, Inc., 3675 Crestwood Parkway NW, Ste. 350, Duluth, Georgia 30096.

13.

Defendant Levon Allen (Hereinafter "Defendant(s)" or "Allen") is an individual who, at all times relevant to the allegations in this Complaint, is the Sheriff of Clayton County.  Sheriff Allen is sued in his official capacity as a constitutional officer as Sheriff for Clayton County, Georgia.   Defendant Allen may be personally served with the complaint and summons at the Clayton County Sheriff's Office, 9157 Tara Boulevard, Jonesboro, Georgia 30236.

14.

At all relevant times, Defendant Charles V. Clopton, Jr., M.D. (Hereinafter "Defendant(s)" or "Clopton, M.D.") was an employee of Defendant CorrectHealth Clayton, LLC.  Defendant Charles V. Clopton, Jr., M.D. is sued in his individual capacity as a doctor of internal medicine as well as his capacity as the Clayton County Jail Medical Director.  At all relevant times, Defendant Clopton, M.D. was acting within the scope of his employment.  In his individual capacity, Defendant Clopton provided Plaintiff medical care during her detention at Clayton County Jail.  In his capacity Medical Director, Defendant Clopton was responsible for

administering the health services contract between CorrectHealth Clayton, LLC

and Clayton County Sheriff's Office as well as developing and implementing all

customs and policies for medical services at Clayton County Jail.  Defendant

Clopton was also responsible for supervising all CorrectHealth Clayton operations

at Clayton County Jail as well as medical providers and employees in the provision

of health care to inmates and pre-trial detainees.  Defendant Charles Clopton, M.D.

was and is acting under the color of law and pretense of the statutes, ordinances,

regulations, customs, and usages of the State of Georgia, CorrectHealth, LLC,

and/or CorrectHealth Clayton, LLC where he was under the authority of his office

and within the scope of his employment, pursuant to Georgia laws bestowed by

contract of services on behalf of Clayton County, Georgia and Clayton County

Sheriff's Office.  Defendant Charles V. Clopton, Jr., M.D., may be served at

Clayton County Jail, 9157 Tara Boulevard, Jonesboro, Georgia 30236.

15.

At all relevant times, Defendant Marvet Wint (Hereinafter "Defendant(s)" or

"Wint") was an employee of CorrectHealth Clayton, LLC.  At the time of

Plaintiff's detention between September 7-9, 2021, Defendant Marvet Wint was a

nurse responsible for the delivery of patient care through the nursing process of

assessment, planning, implementation, and evaluation.  Defendant Marvet Wint

was acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, Clayton County, Georgia, Clayton County Sheriff's Office, and where she was under the authority of her office and within the scope of her employment, pursuant to Georgia laws bestowed by contract of services on behalf of Clayton County, Georgia, Clayton County Sheriff's Office, and CorrectHealth Clayton, LLC.  Defendant Marvet Wint may be served at her residence at 114 Arabella Parkway, Locust Grove, Georgia 30248.

16.

At all relevant times, Defendant Amber E. Reid (Hereinafter "Defendant(s)" or "Reid") was an employee of Millenia Medical Services, Inc.  At the time of Plaintiff's detention between September 7-9, 2021, Defendant Amber Reid was a nurse responsible for the delivery of patient care through the nursing process of assessment, planning, implementation, and evaluation.   Defendant Amber Reid was acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, where she was under the authority of her office and within the scope of her employment, pursuant to Georgia laws bestowed by contract of services on behalf of Clayton County, Georgia, Clayton County Sheriff's Office, CorrectHealth Clayton, LLC, and

Millenia Medical Services, Inc.  Defendant Amber E. Reid may be served at her residence at 870 Fellowship Road, Unit 17, Fairburn, Georgia 30213.

17.

At all relevant times, Defendant Geraldine Eccleston Menchion (Hereinafter "Defendant(s)" or "Eccleston") was an employee of CorrectHealth Clayton, LLC. At the time of Plaintiff's detention between September 7-9, 2021, Defendant Geraldine Eccleston Menchion was a nurse responsible for the delivery of patient care through the nursing process of assessment, planning, implementation, and evaluation.  Defendant Geraldine Eccleston Menchion was acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, Clayton County, Georgia, Clayton County Sheriff's Office, and where she was under the authority of her office and within the scope of her employment, pursuant to Georgia laws bestowed by contract of services on behalf of Clayton County, Georgia, Clayton County Sheriff's Office, and CorrectHealth Clayton, LLC.  Defendant Geraldine Eccleston Menchion may be served at her residence at 4065 Rotterdam Pass, Hampton, Georgia 30228.

18.

At all relevant times, Defendant Larika L. Mann (Hereinafter "Defendant(s)" or "Mann") was an employee of SHC Services, Inc. D/B/A Supplemental Health

Care.  At the time of Plaintiff's detention between September 7-9, 2021, Defendant Larika Mann was a nurse responsible for the delivery of patient care through the nursing process of assessment, planning, implementation, and evaluation. Defendant Larika Mann was acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, where she was under the authority of her office and within the scope of her employment, pursuant to Georgia laws bestowed by contract of services on behalf of Clayton County, Georgia, Clayton County Sheriff's Office, CorrectHealth Clayton, LLC, and SHC Services, Inc. D/B/A Supplemental Health Care. Defendant Larika Mann may be served at her residence at 475 Agler Road, Columbus, Ohio 43230.

19.

At all relevant times, Defendant Priscilla Madu-Sterling (Hereinafter "Defendant(s)" or "Madu-Sterling") was an employee of Global Diagnostic Services, Inc.  At the time of Plaintiff's detention between September 7-9, 2021, 2021, Defendant Madu-Sterling was a nurse responsible for the delivery of patient care through the nursing process of assessment, planning, implementation, and evaluation.  Defendant Priscilla N. Madu-Sterling was acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of

the State of Georgia, CorrectHealth, LLC, and/or CorrectHealth Clayton, LLC

where she is under the authority of her office and within the scope of her

employment, pursuant to Georgia laws bestowed by contract of services on behalf

of Clayton County, Georgia, Clayton County Sheriff's Office, CorrectHealth

Clayton, LLC, and Global Diagnostic Services, Inc.  Defendant Priscilla Madu-

Sterling may be served at her residence at 3382 Fairway Oaks Drive, Apt. 1D,

Lawrenceville, Georgia, 30044.

20.

At all relevant times, Defendant Kyairra D. Johnson (Hereinafter

"Defendant(s)" or "Johnson") was an employee of Clayton County, Georgia and

Clayton County Sheriff's Office.  Defendant Johnson is sued in her individual

capacity.  At the time of Plaintiff's injuries from her fall on September 9, 2021,

Defendant Kyairra D. Johnson was a jailer employed at Clayton County Jail.

Defendant Johnson was responsible for maintaining and controlling all activities

within the housing unit, including daily supervision of inmate activities,

maintaining the safety and welfare of the inmates, as well as ensuring the security

of the housing unit, and maintaining Housing Unit records.  Defendant Johnson

was a sworn member of the Clayton County Sheriff's Office and was acting under

the color of law and pretense of the statutes, ordinances, regulations, customs, and

usages of the State of Georgia, Clayton County, Georgia, and Clayton County Sheriff's Office, where she was under the authority of his office and within the scope of her employment.  Defendant Kyairra D. Johnson may be served at her residence at 110 Park Place Court, Fayetteville, Georgia 30215.

21.

At all relevant times, Defendant Anton A. Fraser, (Hereinafter "Defendant(s)" or "Fraser") was an employee of Clayton County, Georgia and Clayton County Sheriff's Office.  Defendant Fraser is sued in his individual capacity.  At the time of Plaintiff's injuries from her fall on September 9, 2021, Defendant Anton Fraser was a jailer employed at Clayton County Jail.  Defendant Fraser was a sworn member of the Clayton County Sheriff's Office and was acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, Clayton County, Georgia, and Clayton County Sheriff's Office, where he was under the authority of his office and within the scope of his employment.  Defendant Anton A. Fraser may be served at his residence at 400 Lake Chase, Fairburn, Georgia 30213..

## STATEMENT OF FACTS

### a) Plaintiff Quennel Warren's Physical Injuries

22.

On September 9, 2021, Plaintiff Quennel Warren was experiencing uncontrolled blood sugar levels and diabetic ketoacidosis, other blood imbalances, severe dehydration, nausea, and weakness when she suffered from a fall within Clayton County Jail that resulted in traumatic injuries, including but not limited to a shattered right ankle, a crushed vertebra as well as other fractured vertebrae, and a pelvis broken in three places. *See* (Exhibit 2, Medical Illustrations).



**b) Plaintiff Quennel Warren's Serious Medical Need: Type 1 Diabetes**

23.

At all relevant times and other than traffic violations, Plaintiff Quennel Warren has never been convicted of any crime nor has she ever been charged or accused of committing any crime by any law enforcement agency within Clayton County, Georgia.

24.

At all relevant times, Plaintiff Quennel Warren only had one pending charge– petty misdemeanor theft in January 2019 in Fayette County, Georgia.

25.

At all relevant times, Plaintiff Quennel Warren was a thirty-four (34) year old single mother of a two-year-old infant and a four-month-old baby.

26.

At all relevant times, Plaintiff suffers from type 1 diabetes.  She was diagnosed with type 1 diabetes in her early teens.

27.

Generally speaking, a type 1 diabetic's blood sugar should ideally remain below 180 mg/dL.  Anything above 180 mg/dL is considered elevated.  Diabetic ketoacidosis is indicated when blood sugars reach 250-300 mg/dL or higher.

28.

Defendant Charles V. Clopton, JR., M.D. testified on December 8, 2020 in his capacity of Medical Director of Clayton County Jail that he "see[s] people for **emergency reasons**, whatever that might be, [including] . . . high sugars, diabetes . . . ." (Exhibit 3, *Rhonda Jones, et al, v. Victor Hill, et al*, Case No. 1:20-CV-02791-JPB-CCB, preliminary injunction transcript dated Dec. 8, 2020, pp. 233-234) (emphasis added).

29.

Defendant Charles V. Clopton, JR., M.D. testified on December 8, 2020, in his capacity as Medical Director of Clayton County Jail, that he views the Center for Disease Control and Prevention ("CDC") guidelines for Covid-19 protocols and procedures as the "gold standard."  (Exhibit 3, pp. 235-236).

30.

The CDC also states that type 1 diabetics constitute about 5-10% of total diabetics.  "Diet and lifestyle habits don't cause type 1 diabetes," and type 1 diabetics "need to take insulin shots (or wear an insulin pump) every day." (Exhibit 4, https://www.cdc.gov/diabetes/basics/what-is-type-1-diabetes.html, accessed August 2, 2023).

31.

The CDC identifies that a common complication of type 1 diabetes is diabetic ketoacidosis, which is defined as "a serious complication of diabetes that can be life-threatening.  DKA develops when you don't have enough insulin to let blood sugar into your cells.  Very high blood sugar and low insulin levels lead to DKA. The two most common causes are illness and missing insulin shots." (Exhibit 4).

32.

The CDC states that "[i]f you have DKA [(diabetic ketoacidosis)], **you'll be treated in the emergency room or admitted to the hospital**."  (Exhibit 5, (https://www.cdc.gov/diabetes/basics/diabetic-ketoacidosis.html, accessed May 1, 2023) (emphasis added).

33.

In September 2021, the Social Security Administration defined diabetic ketoacidosis as follows:

> *Diabetic ketoacidosis (DKA). DKA is an acute, potentially life-threatening complication of DM in which the chemical balance of the body becomes dangerously hyperglycemic and acidic. It results from a severe insulin deficiency, which can occur due to missed or inadequate daily insulin therapy or in association with an acute illness. **It usually requires hospital treatment to correct the acute complications of dehydration, electrolyte imbalance, and insulin deficiency**.*

- 21 -

(Exhibit 6, 20 C.F.R. § Pt. 404, Subpt. P., App. 109.00(A)(5)(b)) (emphasis added).

**c) Plaintiff's 911 Call for Assistance and Arrest**

34.

On Tuesday, September 7, 2022, at or around 12:00 P.M., Plaintiff Quennel Warren called 911 in regard to a minor domestic dispute at her apartment and requested assistance to obtain a car seat for one of her infant children.

35.

While responding to Plaintiff's request for assistance, Clayton County Police Department identified that Plaintiff had an outstanding warrant for the 2019 allegations of misdemeanor petty theft in Fayette County and arrested Plaintiff.

36.

Plaintiff was transported to Clayton County Jail located at 9157 Tara Boulevard, Jonesboro, Georgia 30236.

37.

Pursuant to O.C.G.A. § 17-4-26, Plaintiff was to be detained until she could be either transferred to Fayette County, Georgia, or released after 72 hours, whichever occurred sooner.

### d) **Plaintiff's Medical Emergencies: Uncontrolled Diabetes, Untreated Diabetic Ketoacidosis, Untreated Blood Imbalances, Untreated Severe Dehydration, and Resulting Fall, Broken Bones, and Untreated Pain**

38.

Plaintiff was detained in Clayton County Jail and began its intake process on or about 3:51 P.M.

39.

Plaintiff's medical intake did not begin until on or about 5:16 p.m., which was started by Nurse Latisha Smith.  During this intake, it was noted that Ms. Warren's current medications were "Humalog, Humulin R" with a medical history of "Diabetes."   Her blood sugar was measured at 140 mg/dL.  It was noted that Ms. Warren did not appear to be under the influence of, or withdrawing from, drugs or alcohol.  Ms. Warren's past and current history notes diabetes as well as 2 weeks at Piedmont Fayetteville Hospital for dehydration linked to diabetes.   It is noted Ms. Warren had no past or current mental health history, suicide attempts or ideation, or substance abuse.

40.

Although not noted in her records, Plaintiff Quennel Warren reported her type 1 diabetic condition and her insulin treatment requirements.

41.

At approximately 6:01 p.m., Defendant Marvet Wint communicated to Nurse Katherin Calderon, diagnosing Plaintiff with "type 2 diabetes mellitus," and Defendant Wint ordered Ms. Warren to undergo blood sugar checks twice a day with insulin treatment twice a day.  Defendant Wint also ordered a special diet request for Ms. Warren for a 2800 calorie ADA (American Diabetes Association) diet with a bedtime snack.  Nurse Calderon entered these diagnoses and orders into Plaintiff's chart.  Defendant Clopton approved of Defendant Wint's orders at approximately 6:39 p.m.

42.

Nurses Wint and Calderon failed or refused to verify Plaintiff's diabetic diagnosis with Plaintiff Quennel Warren, individually, or with Plaintiff's past medical history documented in her chart with CorrectHealth.

43.

Nurse Wint's ordered insulin medications, dosage, and treatment intervals were inadequate, individually and cumulatively, to manage and treat Plaintiff Quennel Warren's type 1 diabetes.

44.

Plaintiff was assigned to the general population on or about 8:43 p.m. on September 7, 2021.

45.

Defendant Trinity Services Group, Inc. records indicate that the special diet order for Plaintiff was received on or around 6:02 p.m.  Pursuant to its contract authorizing the use of inmate workers, Defendant Trinity Services Group utilized free services of inmate workers to assist in preparing and distributing inmate meals, under Trinity Services Group direction, supervision, and control.  At all relevant times that Plaintiff was in the general population, she was only provided a regular inmate diet by Trinity Services Group inmate workers.

46.

Plaintiff's first blood-sugar test was administered on September 8, 2021, at approximately 4:34 a.m. by Nurse Sakelya Bea.  Plaintiff's blood sugar was measured dangerously high at 430 mg/dL, consistent with diabetic ketoacidosis. Nurse Sakelya Bea administered the prescribed dose of insulin and released Plaintiff back to the general population.

47.

On September 8, 2021, at approximately 3:43 p.m., Plaintiff Quennel Warren was admitted to the Clayton County Jail infirmary by Nurse John Sims, noting symptoms of dizziness, nausea, and vomiting.  Nurse Sims examined Plaintiff, and recorded his impressions as poorly controlled diabetes, dehydration, and nausea.

48.

Plaintiff notified Nurse Sims that she was a type 1 diabetic and the insulin treatment they had prescribed was inadequate.  This was not recorded in her medical chart, and her diagnosis of type 2 diabetes was not corrected.

49.

Nurse Sims placed the following orders in Plaintiff's chart:

a) Blood tests three times a day;

b) A lipid panel;

c) Urine ketone test;

d) IV treatment with one liter, short-term and one-liter, slow drip;

e) Immediate insulin treatment with a blood sugar "recheck" in two hours and to notify Nurse Sims of the results.

50.

The lipid panel, urine test, and IV treatments were never completed.  There are no records that insulin was administered immediately after Plaintiff's admission or that her blood sugar were ever checked upon admission or rechecked after two hours, nor are there records that her insulin was checked on a schedule three times a day.

51.

A currently unidentified female nurse attempted to administer an IV in each of Plaintiff's arms, but the nurse was unable to pierce a vein due to Plaintiff's dehydration, and her attempts were abandoned.  The IV treatment attempt was not recorded in Plaintiff's chart.

52.

On September 8, 2021, at 10:13 p.m., Defendant Geraldine E. Menchion checked on Plaintiff, noting Plaintiff was sleeping and reported feeling "tired and weak."  Her clinical impressions were noted as dehydration and diabetic. Defendant Menchion failed to administer any of Nurse Sim's orders for lipid panel, ketone test, and IV treatment.  There are no records that Defendant Menchion checked Plaintiff's blood sugar levels or administered insulin treatment.

53.

On September 9, 2021, at 2:39 a.m., Defendant Larika Mann recorded

Plaintiff's first insulin treatment as well as blood sugar levels at 206 mg/dL.

Defendant Mann recorded a second insulin treatment at 3:08 a.m. after measuring

Plaintiff's blood sugar levels again, but she did not record Plaintiff's blood sugar

measurements in her chart.  Defendant Mann failed to administer any of Nurse

Sims's remaining orders for lipid panel, ketone test, and IV treatment.  At 4:07

a.m. Defendant Mann re-entered Plaintiff Warren's diagnosis as type 2 diabetes,

noting a diabetic diet.

54.

On September 9, 2021, at approximately 7:05 a.m., Defendant Amber Reid

marked all of Nurse John Sims's orders as "completed" in Plaintiff's medical chart.

55.

On September 9, 2021, at approximately 11:07 a.m., Defendant Amber Reid

re-entered a diagnosis of type 2 diabetes in Plaintiff's medical chart but switched

Plaintiff off the special diabetic diet to a regular inmate diet.

56.

On September 9, 2021, at approximately 11:54 a.m., Defendant Charles V.

Clopton, JR., M.D. entered an order for Plaintiff to be discharged from the

infirmary and transferred her back to the general population with insulin treatment ordered twice a day "per protocol."

57.

Defendant Charles V. Clopton, JR., M.D. knows and understands the recognized, accepted, and medically necessary treatment for diabetic patients experiencing Plaintiff's symptoms is a medical emergency requiring immediate transportation to a hospital.  Defendant Clopton knew Plaintiff was at a substantial risk of serious injury by discharging her to the general population in her condition.

58.

On September 9, 2021, at approximately 1:39, Plaintiff, as well as other inmates, were escorted from the infirmary to her housing unit in the general population.  At the time, she was still experiencing uncontrolled blood sugar levels and diabetic ketoacidosis, other blood imbalances, severe dehydration, nausea, and weakness.

59.

Upon entering her housing unit, Plaintiff walked up the stairs to the second floor, or "tier," when she turned to face the control tower occupied by Defendant Kyairra D. Johnson to unlock her cell door.  At this time and to the best of her recollection under the circumstances, Plaintiff believes she was pushed from the

back by an unidentified passing inmate.  Due to the exertion of climbing the stairs as well as her physical and mental impairment from her uncontrolled blood sugar levels and diabetic ketoacidosis, other blood imbalances, severe dehydration, nausea, and weakness, Plaintiff lost her balance and was unable to prevent herself from falling over the second-floor railing.

60.

Plaintiff hung from the second-floor railing for a period of time, yelling for help, until she was unable to hang on any longer and let go, resulting in her fall and traumatic injuries.

61.

Although mandated by Clayton County Sheriff's Office policies and procedures, Clayton County Sheriff's Office failed to preserve video records of Plaintiff's fall.

62.

Although Plaintiff's counsel sent a preservation letter to Defendants Clayton County, Georgia, and Clayton County Sheriff's Office in the weeks after the fall, Clayton County Sheriff's Office have represented to Plaintiffs' counsel that they failed to preserve video records of Plaintiff's fall and allowed it to be overwritten.

63.

An inmate worker who allegedly witnessed the incident and identified by Clayton County Sheriff's Office stated that she "think[s] [Plaintiff] fell backwards" . . . "I just happened to look over out of the corner of my eye at something. And there was an inmate hanging off the bars like this, backwards."   This inmate worker also offered that Plaintiff Warren "held on for a while" and "[i]t was like she didn't want to let go[.]"

64.

After her fall, Plaintiff was crying but was unable to produce tears due to her severe dehydration.

65.

After the fall, Defendant Kyairra D. Johnson reported Plaintiff fell when "she let go" of the railing.  Defendant Johnson also reported that Ms. Warren "was mostly screaming in pain. I called for a paramedic a few times." . . . "But other than her really crying, she wasn't saying much." "When she was coming out of the section on a stretcher, she mostly was crying."

66.

After the fall, Defendant Anton A. Fraser also reported that Plaintiff fell when "she released her hands from the rails."  He reported "[s]o as she fell down,

she fell down – her feet touched the floor first but I believe she of course landed on it incorrectly, which caused her to get an injury on the right side of her body. She fell on I believe it was her right leg and her right arm. She was just crying out loud and – yeah, she was crying out loud until the paramedic got there."  He also reported that an inmate worker "was basically trying to comfort the inmate by saying it's going to be okay. Relax. The paramedic is coming."

67.

At or around 1:57 p.m., Defendant Priscilla N. Madu-Sterling was the responding jail paramedic who reported to the housing unit and noted Plaintiff was "on floor crying and c/o pain to right leg."

68.

At approximately 2:10 p.m., mental health professional Nurse Tracie Thibodeaux noted that she also reported to the housing unit.  Nurse Thibodeaux noted Plaintiff was laying on the floor "screaming."  Nurse Thibodeaux designated Plaintiff to be placed on suicide watch.  Nurse Thibodeaux also identified Plaintiff's type 2 diabetes and designated it as a current problem:  "INFIRMARY / SPECIAL NEEDS UNIT."

69.

Defendant Marvet Wint examined Plaintiff, though she did not record this examination in Plaintiff's chart until approximately 3:52 p.m., and she was notified of Plaintiff's fall from the second tier.  Defendant Marvet Wint noted that Plaintiff was "alert, making crying sounds without a tear.  Complaints reportedly changing as the assessment progressed."  Under the skin assessment, Defendant Wint noted "no bruising, scratches no swelling noted on inmates body."  Defendant forced Plaintiff to engage in passive range of motion tests, noting under the musculoskeletal and extremities examination that "MSS 5/5 (able to move lower extremities without pain.  At first inmate stated that her foot hurt.  PROM [(passive range of motion)] achieved without a wince.  No edema noted)."   Finally, Defendant Wint also forced Plaintiff to stand and weight-bear.  Under the "other" section of Plaintiff's medical chart, it was noted that "inmate stated after ROM that her right back hurt.  No impairment noted.  Skin intact.  No edema, no variation in color, no scratch seen.  Inmate was able to stand without grimace."

70.

Defendant Marvet Wint placed several medical orders, including:

a) To admit Plaintiff to suicide watch;

b) X-rays of Plaintiff's right-side leg and foot;

c) Pain management initiation; and

d) Continue with current medication regimen for diabetes.

71.

Defendant Marvet Wint made no attempt to measure Plaintiff's blood sugar or to administer insulin treatment.  She also made no attempt to administer any pain management.

72.

At approximately 2:45 p.m. and after Defendant Wint's examination and testing, Defendant Wint ordered an inmate worker to strip Plaintiff naked and drag her across the floor by her wrists to suicide watch, where she was deposited on the floor of a room, with other naked inmates, under suicide watch observation.

73.

While Plaintiff was on suicide watch, she continued to scream and cry in pain and for help.  At least one other inmate on suicide watch repeatedly banged against the door, yelling that Plaintiff was hurt, and requesting medical help for Plaintiff Quennel Warren.

74.

Defendant Amber Reid monitored Plaintiff on suicide watch, and she was notified of Plaintiff's fall from the second tier.  Defendant Reid noted on Plaintiff's

watch log her observation "*Broke Leg*[.]"  Defendant Reid failed to execute any of Defendant Wint's orders while Plaintiff was on suicide watch.

75.

Defendant Priscilla N. Madu-Sterling noted that at about 4:00 p.m., Plaintiff "was noted crying with c/o severe pain."  She notes that Dr. Clopton evaluated Plaintiff and ordered a transfer to the hospital "for evaluation of right leg fracture." Defendant Priscilla N. Madu-Sterling also failed to execute any of Defendant Wint's orders.

76.

At approximately 4:54 p.m., Plaintiff's vitals were taken but her records do not indicate which medical professional took her vitals.  At the same time, Defendant Madu-Sterling noted that Dr. Clopton made an offsite referral to Southern Regional Medical Center for a "right distal fracture."

77.

Clayton County Sheriff's Office specialist called Clayton County Communications requesting paramedics at the Clayton County Jail, reporting that Plaintiff Warren "has a fractured leg."

78.

Clayton County EMS records indicate that dispatch was not notified until approximately 5:49 p.m. and that paramedics did not arrive at the jail until approximately 6:28 p.m. and did not start attending Ms. Warren until approximately 6:30 p.m.  Before their arrival, Ms. Warren's suicide watch logs indicate she was removed from suicide watch some time around 6:15 p.m.

79.

Between approximately 5:49 p.m. and 6:28 p.m., no medical treatment is noted in Plaintiff's medical chart.

80.

It is believed sometime on or after 5:49 p.m., Dr. Clopton entered suicide watch with a male inmate worker.  The inmate worker was ordered to pick Plaintiff off the floor and placed on a gurney.  The inmate worker placed one arm under Plaintiff's back and one arm under her knees, lifting her off the floor, placing her on the gurney.  This was not noted in her medical chart.

81.

At this time, Plaintiff was entering in-and-out of consciousness due to her severe pain, untreated diabetic ketoacidosis, and severe dehydration.  Her blood sugar was measured dangerously high, insulin was administered, and Plaintiff was

dressed back into her jail uniform.  She was placed on a backboard with a neck brace, and a piece of cardboard was taped to her right leg.  This was not noted in her medical chart.

82.

Clayton County EMS paramedic noted Plaintiff was found face-up on a backboard with a neck brace.  The paramedic noted that Plaintiff Quennel Warren's "right leg appears to be shorter than the left leg with possible hip fracture."  Ms. Warren was given "100 mcg of Fentanyl for pain management." Her blood sugar levels were measured at 436 mg/dL and she was emergently transported to Grady Hospital.

83.

After arriving at Grady Hospital, Plaintiff remained "detained" by Clayton County Sheriff deputies until September 10, 2021, at approximately 11:52 P.M. and beyond the statutory 72 hour detainment period.  She was not permitted to contact family or friends during this period.

84.

Plaintiff Warren's admission condition at Grady Hospital was noted as "serious."  Her initial complaints were pain to her right hip, right thigh, right leg

and abdomen.  She also reported "numbness and tingling" in bilateral lower

extremities or legs.

85.

Shortly after admission, a metabolic panel was taken and Plaintiff was noted

to be in diabetic ketoacidosis on admission with uncontrolled diabetes mellitus

A1C10,+B-hydroxybutyrate.  Her blood sugar levels had dropped to 268 mg/dL,

consistent with CorrectHealth's uncharted administration of insulin before EMS

arrived at the jail.

86.

Grady neurological surgery consultation reports reviewing the radiology

findings, noting that "Patient unable to urinate due to pain."   Neurology attempted

to complete a motor exam of Ms. Warren but noted that they "[c]ould not evaluate

motor function due to cast per ortho and patient refusal givens severe sacral pain."

87.

At approximately 11:55 p.m. on September 9, 2021, Grady orthopedist noted

"unstable pelvis" and she needed surgery in the morning, but surgery was noted as

"delayed due to patient in DKA[,]" or diabetic ketoacidosis.

88.

On September 10, 2021, additional labs were taken, and her urine was noted as yellow-strawberry in color.  Grady endocrinology noted "DKA" or diabetic ketoacidosis as well as "Metabolic Acidosis."

89.

Ms. Warren's diabetes was treated with slow-drip insulin IV's.  By the very early morning of September 11, 2021, she was placed on glucommander, which uses real-time data to personalize insulin dosing based on the patient's sensitivity and blood level responses.

90.

She was started on a carbohydrate consistent diet on September 12, 2023. Prior to that, it appears she was on an "NPO" diet – nothing by mouth, including before surgeries.

91.

Plaintiff's diabetes, dehydration, and blood levels were not adequately controlled until September 13, 2021 when she was cleared to undergo her first surgery for procedures on her ankle and hip.

92.

Plaintiff underwent a second surgery on September 20, 2021 on her right ankle.  That same day Plaintiff underwent a barium swallow exam where she experienced a seizure.

e)  **Plaintiff Quennel Warren's Prior Detentions and Deliberate Indifference to her Type 1 Diabetes, a Serious Medical Need**

93.

CorrectHealth Clayton has a custom and policy to treat all pretrial detainees with diabetes, regardless of type, the same in which insulin medication, dosage, and intervals are pre-set and offered only twice a day.

94.

Plaintiff had previously been detained in Clayton County Jail as a pretrial detainee on October 17-18, 2018 and on October 17-20, 2020.  During both of those detentions, Defendant Charles V. Clopton, JR., M.D. was serving as the Medical Director of Clayton County Jail.

95.

During her October 17-18, 2018 detention, her past and current medical history is noted to include type 1 diabetes with a history of seizures.  Her medical records show that Plaintiff only received two insulin treatments during that

detention.  Only two blood-sugar measurements were recorded in her chart during this detention, both measured dangerously high at 306 mg/dL.

96.

During her October 17-20, 2020 detention, she was again noted to be a type 1 diabetic, and her appointment descriptions were noted as "blood glucose checks x5 days."  During this three-day detention, only five insulin treatments were offered and only two blood-sugar measurements were recorded in her chart.

**f)  <u>Retaliation against Plaintiff Quennel Warren</u>**

97.

On September 9, 2021, Defendant Kyairra D. Johnson and Anton A. Fraser both completed separate Discipline Reports against Ms. Warren for her fall.

98.

On October 15, 2021, Plaintiff's counsel faxed and mailed a letter of representation and request to preserve evidence, including video evidence, to Clayton County Sheriff's Office, Clayton County Jail, and Clayton County, Georgia.

99.

On October 18, 2021, an internal email at Clayton County Sheriff's Office acknowledged receipt and the need to preserve video evidence.

100.

As a result of the letter from Plaintiff's counsel, Clayton County Sheriff's internal affairs opened an investigation into the incident, including Defendant Kyairra D. Johnson and Defendant Anton A. Fraser.

101.

Neither Defendant Johnson nor Defendant Fraser made any attempt to preserve the video footage of Plaintiff's fall after learning of the internal investigation.

102.

In response and on October 19, 2021, Defendant Kyairra D. Johnson completed a "Jail Miscellaneous Incident Report" claiming that Plaintiff "jumped" from the second-tier ledge.  On the same date, Defendant Anton A. Fraser also completed an incident report with nearly identical language, also claiming Plaintiff "jumped" from the second-tier ledge.

103.

Internal affairs interviewed Defendant Johnson on October 20, 2021 at
approximately 10:12 a.m.  The interview concluded at 10:22 a.m., according to the
audio timestamp.

104.

At 10:23 a.m. on October 20, 2021, and immediately after the internal affairs
interview, Defendant Kyairra D. Johnson completed a "Discipline Violation
Reporting" on Plaintiff Quennel Warren, again accusing her of jumping off of a
tier 2 ledge.

105.

Plaintiff Quennel Warren has never received a copy of the various discipline
reports made against her nor has she been afforded an opportunity to contest the
allegations in those reports.

106.

The various discipline reports written by Defendants Kyairra D. Johnson and
Anton A. Fraser are permanently part of Plaintiff's inmate file.  According to the
Clayton County Inmate Handbook, these records are in Plaintiff's file for "future
reference by other detention facilities, Georgia Board of Corrections, and the State
Board of Pardon and Parole."

107.

According to Clayton County Sheriff's Office Standard Operating Procedures, video records are stored for 40 days until they are overwritten.

108.

Clayton County internal affairs was able to preserve the videos of Plaintiff's fall and post-fall treatment until October 20, 2021 at approximately 1:51 p.m. before they were overwritten, but internal affairs made no attempt to preserve the videos.

**g) <u>Preliminary Medical Opinions on Standard of Care and Causation</u>**

109.

Attached to this Complaint as Exhibit 7 is the *Curriculum Vitae* of Renee Dahring, MSN, RN, CNP, CCHP, FAANP.  Ms. Dahring's analysis and opinions are outlined in Exhibit 8 and incorporated herein.

110.

Attached to this Complaint as Exhibit 9 is the *Curriculum Vitae* of Timothy S. Beck, M.D., doctor of internal medicine.  Dr. Beck's analysis and opinions are outlined in Exhibit 10 and incorporated herein.

111.

Attached to this Complaint as Exhibit 11 is the *Curriculum Vitae* of Robert

J. Cooper, M.D., F.A.C.E, F.A.C.P., doctor of endocrinology.  Dr. Cooper's

analysis and opinions are outlined in Exhibit 12 and incorporated herein.

112.

Attached to this Complaint as Exhibit 13 is the *Curriculum Vitae* of Howard

B. Krone, doctor of orthopaedics.  Dr. Krone's analysis and opinions are outlined

in Exhibit 14 and incorporated herein.

**h) Pattern, Custom, or Policy of Underfunding and Understaffing**

113.

Clayton County, Georgia entered into a contract with CGL Companies, LLC

to design and construct the justice facility that includes Clayton County Jail.  CGL

Companies, LLC is the corporate principal and member of the family of businesses

with Defendant CGL Facility Management.  After construction was completed,

Defendant CGL Facility Management was awarded the contract for facility

maintenance, repairs, and improvements.

114.

Per its intended design, CGL Companies, LLC describes Clayton County

Jail as a 1,536-bed jail.  (Exhibit 15).

115.

After the jail's construction was completed in 2000, Clayton County,

Georgia employed CGL Companies, LLC's subsidiary, Defendant CGL Facility

Management, LLC, to provide facility maintenance and improvements.

116.

In April 2018, Defendants Clayton County, Georgia and Clayton County

Sheriff's Office issued a "Request for Proposal" inviting private contractors to

submit proposals to bid on the annual contract to provide inmate health care for

Clayton County Jail.

117.

The Proposal identified that "[a] base price quoted will provide the

professional staffing and complete program of administrative and health services

for a base census count of 1800 inmates incarcerated at the Harold R. Banke

Justice Center[.]"

118.

The proposers were explicitly permitted to provide "[a] daily per diem

charge for each inmate in excess of the 1800 base census may be quoted by the

proposer."

119.

In August 2018, Defendants CorrectHealth Clayton, LLC, and Clayton County Sheriff's Office entered into a Health Services Agreement for CorrectHealth Clayton, LLC to provide correctional healthcare and healthcare management at Clayton County Jail.

120.

The Agreement identified a compensation level for CorrectHealth Clayton, LLC, stating "[t]his compensation level assumes a **maximum** inmate population of 1800 inmates." (emphasis added). If the inmate census were to exceed 1800, CorrectHealth Clayton, LLC was to be reimbursed at a set rate, "per inmate per day for each inmate in excess of 1800." "However, the per diem is not intended to provide for any additional fixed costs, such as new staffing positions, which might prove necessary if the inmate population increases to more than 1800 inmates."

121.

The Agreement identified that this compensation, relative to the inmate population, "reflects the scope of services as outlined herein and the current community standard of care with regard to correctional healthcare services."

122.

Based on inmate census data selected and provided by Clayton County Sheriff's Office for 2019, average monthly inmate population appears to be at or around 1894, and all monthly data provided had inmate population above 1800.

123.

Based on inmate census data selected and provided by Clayton County Sheriff's Office for 2020, average monthly inmate population appears to be at or around 1890, and all monthly data provided had inmate population above 1800.

124.        .

Based on inmate census data selected and provided by Clayton County Sheriff's Office for 2021, average monthly inmate population up to September 9, 2021 appears to be at or around 1895, and all monthly data provided had inmate population above 1800.

125.

Based on inmate census data provided by Clayton County Sheriff's Office for September 7-9, 2021, total inmate population was as follows:

a)  1935 inmate population for September 7, 2021;

b)  1932 inmate population for September 8, 2021; and

c)  1940 inmate population for September 9, 2021.

126.

Through payment of the per diem for an inmate population in excess of
1800, Defendants Clayton County, Georgia and Clayton County Sheriff's Office
had actual knowledge of the inmate population at any given day.

127.

The Health Services Agreement stated that CorrectHealth Clayton "will
provide staffing generally in accordance with Exhibit [D], attached hereto. This
staffing plan assumes an inmate population of 1800."

128.

Exhibit D of the Health Services Agreement is a staffing matrix identifying
the medical professional positions, shifts, full-time employees, and hours estimated
hours per week with each position.  In 2018, the staffing matrix provided for 58.05
full-time employees per week, totaling 2322 hours per week.

129.

Exhibit D of the Health Services Agreement was amended in September
2019, modifying some of the positions and shifts.  The amended staffing matrix
provided for 57.95 full-time employees per week, totaling 2318 hours per week.  It
is estimated that this would be at or around 331.14 cumulative hours per day, for
seven days a week.

130.

The Health Services Agreement specifically designated that any health care professionals that are utilized by CorrectHealth Clayton LLC from other independent contractors, CorrectHealth Clayton, LLC "will not exercise control over the manner or means by which these independent contractors perform their professional medical duties."

131.

Plaintiffs' counsel sent CorrectHealth and CorrectHealth Clayton an open record request asking for timesheets for the two weeks preceding this incident, but CorrectHealth and CorrectHealth Clayton refused to produce the requested timesheets. These Defendants only produced timesheets for September 7-9, 2021, and they have refused to produce records of any of Dr. Charles V. Clopton's timesheets or employee file.

132.

According to the medical provider timesheets provided by CorrectHealth Clayton and CorrectHealth for September 7, 2021, only twenty-five medical professionals were on duty, and total hours worked for all medical professionals appears to be 271.96 hours. Six of these medical professionals were employed by independent contractors. The average hours for CorrectHealth's medical

professionals appear to be 9.75 hours, while the average hours for independent

contractors appear to be 14.4 hours.  For medical professionals involved with

Plaintiff during her detention, the timesheets on this date appeared to show:

    a)  Latisha Smith was on duty for approximately 12 hours;

    b)  Katherin Calderon was on duty for approximately 12.5 hours;

    c)  Marvet Wint was on duty for approximately 11.7 hours;

    d)  Larika Mann was an independent contractor on duty for approximately 12.3 hours;

    e)  Amber Reid was an independent contractor on duty for approximately 14.5 hours;

    f)  Tracie Thibodeaux was on duty for approximately 2.36 hours;

    g)  Sakelya Bea was an independent contractor on duty for approximately 13 hours through September 8, 2021, on night shift.

133.

According to the medical provider timesheets provided by CorrectHealth

Clayton and CorrectHealth for September 8, 2021, only twenty-seven medical

professionals were on duty, and total hours worked for all medical professionals

appears to be 303.99 hours.  Six of these medical professionals were employed by

independent contractors.  The average hours for CorrectHealth's medical

professionals appear to be 10.85 hours, while the average hours for independent

contractors appear to be 12.69 hours.    For medical professionals involved with

Plaintiff during her detention, the timesheets on this date appeared to show:

a) John Sims was on duty for approximately 13.3 hours;

b) Amber Reid was an independent contractor on duty for approximately 15.35 hours;

c) Larika Mann was an independent contractor on duty for approximately 11.65 hours;

d) Priscilla Madu-Sterling was on duty for approximately 12.3 hours;

e) Geraldine Eccleston was on duty for approximately 12.1 through September 9, 2021, on night shift.

134.

According to the medical provider timesheets provided by CorrectHealth

Clayton and CorrectHealth for September 7, 2021, only twenty-five medical

professionals were on duty, and total hours worked for all medical professionals

appears to be 250.47 hours.  Six of these medical professionals were employed by

independent contractors.  The average hours for CorrectHealth's medical

professionals appear to be 9.24 hours, while the average hours for independent

contractors appear to be 12.7 hours.  For medical professionals involved with Plaintiff during her detention, the timesheets on this date appeared to show:

a) Marvet Wint was on duty for approximately 12.47 hours;

b) Amber Reid was an independent contractor on duty for approximately 13.35 hours;

c) Larika Mann was an independent contractor on duty for approximately 12.35 hours;

d) Priscilla Madu-Sterling was on duty for approximately 11 hours;

e) Tracie Thibodeaux was on duty for approximately 9.69 hours;

f) Geraldine Eccleston was on duty for approximately 12.1 hours;

g) Sakelya Bea was an independent contractor on duty for approximately 11 hours.

135.

Defendants Clayton County, Georgia and Clayton County Sheriff's Office had actual knowledge of the inadequate staffing and quality of care through the quality assurance program and auditing data gathered pursuant to the Health Services Agreement.

136.

On or about June 3, 2021, and three months before Plaintiff's detention,
Defendants CorrectHealth Clayton, LLC and CorrectHealth, LLC notified Clayton
County Sheriff's Office that it was underfunded, identifying that "[l]abor is the
largest line item in our budget[,]" stating that "inmate healthcare costs for the other
4 metro jails are considerably higher, with only Fulton County housing more
inmates than Clayton[,]" and requesting a permanent increase of 13.2% in their
budget.

137.

In August 2018, Defendants Clayton County, Georgia and Clayton County
Sheriff's Office entered into a Food and Laundry Services Agreement with
Defendant Trinity Services Group, Inc. to provide, in part, inmate food services at
Clayton County Jail.

138.

As part of the Food and Laundry Services Agreement, Defendants Clayton
County, Georgia and Clayton County Sheriff's Office reimburse Defendant Trinity
Services Group, Inc. according to Schedule 1 of the contract.  Schedule 1 provides
a scale of reimbursement associated with meal prices and inmate population.

139.

Based on the Food and Laundry Services Agreement for reimbursing meal costs, Defendants Clayton, Georgia and Clayton County Sheriff's Office have actual knowledge of the inmate population at any given day.

140.

Attached to this Complaint as Exhibit 16 is the *Curriculum Vitae* of Christine Richardson, LPN, JD, CCHP, a former correctional nurse for Clayton County Jail.  Ms. Richardson's conclusions and opinions are summarized in Exhibit 17 and incorporated herein.

i)  **Prior Similar Incidents of Deliberate Indifference and Notice of Understaffing as well as Risks of Random Inmate Violence**

141.

The inmate worker that witnessed Plaintiff's fall offered to Clayton County Sheriff's Office that inmates falling from the second tier is "common[.]"  "[I]t's getting to be more common than it's ever been."

142.

Attached to this Complaint as Exhibit 18 is the declaration of former diabetic inmate Barry Watkins.  The contents of this declaration are incorporated herein.

143.

Attached to this Complaint as Exhibit 19 is the affidavit of former inmate Jude Dichristopher.  The contents of this affidavit are incorporated herein.

144.

Attached to this Complaint as Exhibit 20 is the affidavit of former inmate Kristal Moyer.  The contents of this affidavit are incorporated herein.

145.

Attached to this Complaint as Exhibit 21 is an excerpt of the sworn testimony of former inmate Jamie Mills.  The contents of this excerpt of sworn testimony are incorporated herein.

146.

Plaintiff's counsel sent open record requests to Clayton County, Georgia and Clayton County Sheriff's office requesting inmate grievances for a five-year period.  In response, Defendants produced records for inmate grievances for a total of 120 days over a five-year period, identified as follows:

   a) October 16, 2018 – November 26, 2018;

   b) January 1, 2019 – January 18, 2019;

   c) January 1, 2020 – January 24, 2020;

   d) January 1, 2021 – January 21, 2021; and

e)  January 1, 2022 – January 20, 2022.

147.

The produced inmate grievances identified the following grievances

associated with medical treatment:

| | DATE CREATED (REQ ID) | DATE STATUS ENTERED | GRIEVANCE (summary) |
|---|---|---|---|
| (a)(1) | 11/10/2018 (94791) | 11/27/2018 (18 days) | Inmate denied mental health evaluation for medications that she's had for 22 years, until medication list was requested but not received. |
| (a)(2) | 11/11/2018 (94976) | 11/13/2018 (2 days) | Officer did not respond to emergency call button when inmate was hurt. |
| (a)(3) | 11/11/2018 (95038) | 11/27/2018 (16 days) | Inmate was only being given 1 out of 4 prescribed pain pills due to dental pain, |

| | | | causing him "a lot of pain" because Infirmary had failed to renew prescriptions |
|---|---|---|---|
| (a)(4) | 11/12/2018 (95276) | 12/10/2018 (29 days) | Request for medical on 11/2/2018 ignored, regarding lack of sleep and discomfort after being jumped by 3 inmates. |
| (a)(5) | 11/12/2018 (95301) | 11/14/2018 (2 days) | Inmate denied contact solution at pill call. |
| (a)(6) | 11/13/2018 (95373) | 11/14/2018 (1 day) | Neuropathy inmate whose feet hurt due to surgery, "waiting 13 days" for officers to pick up "easy walker" shoes. |
| (a)(7) | 11/13/2018 (95536) | (not answered) | Inmate has "been trying to see mental he[a]lth to get my meds and they still have not come to see me." |

| | | | |
|---|---|---|---|
| (a)(8) | 11/13/2018 (95544) | 11/14/2018 (1 day) | The "emergency button was never answered" when inmate had bloody tissue. |
| (a)(9) | 11/13/2018 (95610) (95611) | 11/16/2018 (3 days) | Inmate requested medical attention for their foot on October 8, 2018 but never got a response. |
| (a)(10) | 11/14/2018 (95741) | 12/12/2018 (29 days) | Inmate denied rescue inhaler and "much needed medications," such as anxiety pills, sleep disorder pills, and mental health pills, for almost a month at time of complaint. |
| (a)(11) | 11/14/2018 (95750) | 11/14/2018 (<1 day) | Inmate's roommate passed out, hit her head, and has a knot on it. "For 2 days now I have spoken to every officer and pill call nurse on shift and she has yet to receive Medical attention. Now her eye is closed shut and black." |

| | | | |
|---|---|---|---|
| (a)(12) | 11/14/2018 (95752) | 11/14/2018 (<1 day) | Officer denied inmate denied medical attention and put on lock down after slipping and falling and hurting arm. |
| (a)(13) | 11/14/2018 (95959) | 11/16/2018 (2 days) | Officer refused to respond to inmate's emergency call button. |
| (a)(14) | 11/14/2018 (95973) | 4/26/2019 (163 days) | Officer ignored inmate's emergency call button and assaulted inmate instead. |
| (a)(15) | 11/15/2018 (96067) | 3/31/2020 (503 days) | Inmate "filled out a medical about 3 months ago about contact solution" and still had not received any. |
| (a)(16) | 11/15/2018 (96081) | 11/16/2018 (1 day) | Inmate complaining of Leukemia and gradually increasing bruising on right side, and needing to be seen by doctor. |

|  |  |  |  |
|---|---|---|---|
| (a)(17) | 11/16/20218 (96348) | 11/20/2018 (5 days) | Inmate in pain for "longer than a week and no response" for pain medication. |
| (a)(18) | 11/16/2018 (96447) | 4/30/2019 (165 days) | Nurse denied inmate prescription meds after inmate returned from court and missing pill call. |
| (a)(19) | 11/16/2018 (96514) | 11/27/2018 (11 days) | Inmate put in sick call "over two weeks" ago for pain and fever, and never received medical attention. |
| (a)(20) | 11/17/2018 (96709) | 11/20/2018 (3 days) | Multiple medical requests over 2 weeks for dental infection and medication refill were ignored. |
| (a)(21) | 11/19/2018 (97005) | 11/20/2018 (1 day) | Inmate had not seen dentist since tooth was knocked out on October 31, 2018. |

| | | | |
|---|---|---|---|
| (a)(22) | 11/19/2018 (97144) | 11/20/2018 (1 day) | Officer took over an hour to respond to emergency call button. |
| (a)(23) | 11/20/2018 (97307) | 4/26/2019 (157 days) | Inmate was told by nurses and doctors that nothing was wrong for chest pain, but required heart surgery at hospital and was being denied a follow-up appointment. |
| (a)(24) | 11/21/2018 (97624) | 2/25/2020 (464 days) | Inmate put in 3 medical requests (2 for dental and 1 for sick) since October but none have been answered. |
| (a)(25) | 11/21/2018 (97757) | 12/8/2018 (18 days) | Inmate not receiving medicine. |
| (a)(26) | 11/22/2018 (97879) | 1/2/2019 (11 days) | Inmate's sick call for pain has been ignored. |

| (a)(27) | 11/22/2018 (97899) | 11/27/2018 (5 days) | Inmate feeling sick ever since sewage came up through their sink and did not drain, and was not seen by medical until November 20. |
| (a)(28) | 11/22/2018 (97902) | (not answered) | Inmate denied pain medication for 4 days and in pain. |
| (a)(29) | 11/22/2018 (98009)<br><br>11/23/2018 (98099) | (not answered)<br><br>4/26/2019 (154 days) | 2 Grievances from inmate with severe vaginal cramps, discharge, reports of seeing black and white spots, and blurry vision was refused any testing and blood work by medical on several occasions. |
| (a)(30) | 11/23/2018 98113 | 12/5/2018 (12 days) | Inmate denied medical request after suffering breathing problems when raw |

| | | | sewage started to come out of sink for 8 days. |
|---|---|---|---|
| (a)(31) | 11/23/2018 (98203) | (not answered) | On September 7, 2018, ER doctor recommended GI test for inmate due to bloody rectum that still had not been completed by CCSO, causing "severe PAIN and extreme uncomfort." |
| (a)(32) | 11/23/2018 (98206) | 11/30/2018 (7 days) | Inmate was supposed to be seen by medical that week but had not and state "my health at stake and don't feel like the only one who taking the value of life serious is me." |
| (a)(33) | 11/23/2018 (98209) | 1/2/2019 (40 days) | Inmate has 5 medical requests that were being ignored for doctor due to him being unable to use restroom for 2 weeks. |

| | | | |
|---|---|---|---|
| (a)(34) | 11/24/2018 (98282) | 11/30/2018 (6 days) | Inmate "need[s] medical to answer to my request asap my condition is serious[.]" CCSO responded "This should never go on this long. We will see you today." |
| (a)(35) | 11/24/2018 (98331) | 11/26/2018 (2 days) | Officer refused to answer emergency call button as pregnant inmate has been in "labor pains for 3 hours" |
| (a)(36) | 11/24/2018 (98355) | (not answered) | Inmate made an unanswered medical request on September 12 for a tooth ache causing "a lot of pain" and needing it pulled. |
| (a)(37) | 11/25/2018 (98476) | 11/26/2018 (1 day) | Officer ignored inmate's emergency call button request for medical attention for chest pains. |

| | | | |
|---|---|---|---|
| (a)(38) | 11/26/2018 (98580) | 11/26/2018 (< 1 day) | Inmate denied daily requests for toothbrush for 3 weeks, claiming oral surgery in September, prior to being detained. |
| (a)(39) | 1/1/2019 107405 | (not answered) | Inmate's wife brought inmate's mental health meds to jail, but inmate was being denied meds. |
| (a)(40) | 1/2/2019 107512 | 1/17/2019 (15 days) | Inmate denied contact lens solution during pill call, and denied contact lens solution that their family brought to jail. |
| (a)(41) | 1/2/2019 107524 | 1/17/2019 (15 days) | Inmate who can't see out of left eye after being attacked on December 24, 2019 refused x-rays. |
| (a)(42) | 1/2/2019 107547 | 1/2/2019 (< 1 day) | Officer denying inmate of medical privileges. |

|  |  |  |  |
|---|---|---|---|
| (a)(43) | 1/2/2019 <br> 107593 | (not answered) | Inmate denied medications for H.I.V. treatment since November 19, 2018. |
| (a)(44) | 1/2/2019 <br> 107732 | 1/15/2019 <br> (13 days) | Inmate has been asking to see a doctor "for a good minute" but has not seen one. |
| (a)(45) | 1/3/2019 <br> 107801 | 2/11/2019 <br> (39 days) | Inmate has been requesting medical about their tooth, has been on list to see doctor for "two months," but inmate has not been seen, claiming to be in "major pain." |
| (a)(46) | 1/3/2019 <br> 107821 | 4/26/2019 <br> (113 days) | Inmate has been putting in a medical dental request since November, but still has not been seen about their tooth.  CCSO responded "Hopefully you have been seen by now. If not put in a medical request." |

| (a)(47) | 1/3/2019 107836 | 1/17/2019 (14 days) | Inmate complained no one is listening to them, and CCSO responds, stating "YOU WERE ESCORTED TO MEDICAL THIS DAY. IF YOU ARE STILL FEELING THIS WAY PLEASE IMMEDIATELY ADVISE ANOFFICER." |
|---|---|---|---|
| (a)(48) | 1/3/2019 107875 | 1/7/2019 (4 days) | Inmate who slipped and fell, lacerating face and braking leg in several places, pressed emergency call button "over 20 times but received no assistance from staff" and did not receive medical assistance "until after 12 PM[,] a response time of over 5 hours." |
| (a)(49) | 1/3/2019 107944 | 1/28/2019 (25 days) | Inmate complained of "vaginal discomfort for a week" without a response. |

| (a)(50) | 1/3/2019<br><br>107989 | 1/23/2019<br><br>(20 days) | Inmate reported "real bad" chest pain to officer who assured him a paramedic would respond, but never came, claiming action "needs to be done" because it concerns his "life an[d] health."  CCSO noted that an EKG was eventually done. |
| (a)(51) | 1/4/2019<br><br>108090 | 1/23/2019<br><br>(19 days) | Inmate has been asking for medical care and been told they would be seen by a nurse, but have not yet, and "I haven't been able to make [a] medical kiosk request." |
| (a)(52) | 1/4/2019<br><br>108123 | 1/7/2019<br><br>(3 days) | Inmate's cellmate took pills at pill call that made him "sick and dizzy[,]" "throwing up[,]" and about to "passout."  Officer assured inmate he'd get a "nurse or emt" to check on his cellmate, but did not.  Inmate |

| | | | |
|---|---|---|---|
| | | | pressed emergency call button "for 45 mins and nobody ever came" |
| (a)(53) | 1/4/2019<br><br>108137 | 1/7/2019<br><br>(3 days) | Medical requests of sick inmate "on the verge of blacking out and throwing up" were ignored and denied until next day. Also complained that "it took six days of pain before my med request was answered." |
| (a)(54) | 1/7/2019<br><br>108697 | 8/20/2020<br><br>(591 days) | On December 24, inmate's finger was crushed in unit door and nurse "assured me numerous times the injured finger needed to be xrayed" but "it never occurred."  It is "is still swollen and continues to throb with pain[.]"  CCSO responded:  "Seen, xrayed and referred to ortho." |

| | | | |
|---|---|---|---|
| (a)(55) | 1/7/2019<br><br>108889 | 4/26/2019<br><br>(109 days) | "I have been scheduled for numerous dental appointments but have yet to don't any assistance on my rotting and decayed tooth." "[D]ue to the nerves in my tooth being exposed by air and germs and with the chipping of my tooth i have not been able to eat[.]" |
| (a)(56) | 1/8/2019<br><br>109066 | 1/28/2019<br><br>(20 days) | "I have put in several requests to mental health, and medical. And have been ignored on all." |
| (a)(57) | 1/8/2019<br><br>109209 | 1/17/2019<br><br>(9 days) | Inmate "sat 15 days in godly pain" after falling off top bunk on December 17, not getting x-rayed until December 31, and discovering hip was broken in 3 places, undergoing surgery, and now being denied |

| | | | |
|---|---|---|---|
| | | | pain medications.  "[H]ip is getting infected[.]" |
| (a)(58) | 1/8/2019 109272 | 4/26/2019 (109 days) | "I have asked to be seen by the dentist numerous times" about bleeding wisdom teeth that is causing an infection and is "really painful."  Inmate believes his "lack of funding is whats stopping me from being seen." |
| (a)(59) | 1/10/2019 109662 | 1/23/2019 (13 days) | Inmate complaining about medical "requests from weeks ago that haven't even been open[ed]" and that he "put in for dental 2 months ago and still aint been seen" |

| (a)(60) | 1/10/2019 109674 | 1/28/2019 (18 days) | Inmate has "put in several request[s] about refill of pain pills" and that they "cant sleep please help" |
|---|---|---|---|
| (a)(61) | 1/10/2019 109796 | 2/11/2019 (32 days) | Officers would not respond to emergency call button and only responded when "the whole dorm was beating on their doors to get their attn" |
| (a)(62) | 1/10/2019 109857 | 1/28/2019 (18 days) | Inmate came from ER with 40 stitches for "wound is suppose[d] to be clean everyday but has only been attended to once" in five days.  And inmate has not been "getting my hiv meds" |
| (a)(63) | 1/10/2019 109859 | 1/11/2019 (1 day) | Doctor said inmate could have diabetic sneakers, but was not receiving them. |

| (a)(64) | 1/11/2019 109972 | 1/28/2019 (17 days) | Inmate had "really bad headache" but "the nurse has not come with meds" |
| (a)(65) | 1/11/2019 110035 | 1/31/2019 (21 days) | Inmate "BEGGED" an officer to take her to mental health because "I WAS HAVING A BREAK-DOWN" and was suicidal but was ignored |
| (a)(66) | 1/12/2019 110168 | 4/30/2019 (108 days) | Inmate's "medication was discontinued without notice" and her "TB shot given [on] 12/23/18 was never checked by medical staff." |
| (a)(67) | 1/13/2019 110336 | 1/28/2019 (15 days) | Inmate who wears contact lenses and has an eye stigmatism was being denied contact lens solution. |

| (a)(68) | 1/13/2019 110375 | 1/28/2019 (15 days) | "I've put in medical request concerning my eyes and nothing been done this is like my fourth time" |
|---|---|---|---|
| (a)(69) | 1/13/2019 110392 | 1/28/2019 (15 days) | "NEED PAIN PILLS UNTIL I SEE DENTIST OPEN NERVE W CAVITY ANDHOLE IN TOOTH ALSO ABCESSS!!!!!!!" |
| (a)(70) | 1/14/2019 110505 | 1/28/2019 (14 days) | Inmate needs her "welbutrin 150mg" and mental health nurse denied prescription and told "just do the mental exercises" |
| (a)(71) | 1/14/2019 110612 | 1/29/2019 (15 days) | Inmate denied pain medication and medical requests for "3 teeth broken off in my gums that bring me constant pain" as well as "bleeding from my gum, and no sleep.  my irritation is beyond bearable." |

| | | | |
|---|---|---|---|
| (a)(72) | 1/15/2019 110721 | 1/28/2019 (13 days) | Inmate has been "PUTTING IN MEDICAL REQUESTS SINCE DECEMBER AND HAVE NOT GOTTEN SEEN ABOUT MY REQUEST" |
| (a)(73) | 1/15/2019 110889 | 1/28/2019 (13 days) | Inmate has "BEEN TRYING SINCE 1/01 TO BE SEEN BY MEDICAL , AND HAVE PUT 2 MEDICAL RRQUESTS" for Cholesterol and STD symptoms. |
| (a)(74) | 1/16/2019 110981 | 1/28/2019 (12 days) | OBGYN prescribed pregnant inmate vaginal cream "8 days ago," which inmate asks for "2 times a day" but still has not received. |
| (a)(75) | 1/17/2019 111277 | 12/14/2020 (28 days) | "don't need to visit medical about my mouth teeth hurting still no sleep pain is 10 |

| | | | |
|---|---|---|---|
| | | | out of 10" and noting he "can not even eat the food bc of pain and really cant chew food feel like something - 77 -hreateni my mouth open and the air making it worst[.]" [A]ny help is better then no help." |
| (a)(76) | 1/17/2019 111281 | 1/29/2019 (12 days) | Inmate has "put in the max amount of medical request and don't still - 77 -hreate got help" |
| (a)(77) | 1/17/2019 111397 | 1/18/2019 (1 day) | Inmate needs "packing and bandage changed on my face before it get[s] infected" but has not been to doctor in 3 days. |
| (a)(78) | 1/1/2020 206724 | 2/4/2020 (35 days) | "[T]he sink in my cell don't work at all" for an Epileptic inmate who needs water for |

| | | | |
|---|---|---|---|
| | | | condition.  CCSO did not place work order until "02/04/2020 @ 1528 hrs." |
| (a)(79) | 1/2/2020 206884 | 1/3/2020 (1 day) | Inmate broke tooth on 12/6 and has "not been seen by dental" yet. |
| (a)(80) | 1/3/2020 207212 | 1/13/2020 (10 days) | "im missing part of my finger and the bone is still showing my lawyer told me don't shoudve been taken to the hospital for - 78 -hreateni" |
| (a)(81) | 1/3/2020 207416 | 1/10/2020 (7 days) | Inmate on work detail, while taking down a homeless person's tent was "stuck by a needle and it still painful" and "is now infected" without ever being tested for  "any diseases or infections" |

| (a)(82) | 1/7/2020 208384 | 2/6/2020 (30 days) | Inmate with "ptsd, and bipolor, and manic major depression" has gone "30 days of no medicine" |
| (a)(83) | 1/7/2020 208397 | 1/10/2020 (3 days) | Inmate suffering from chronic neck and back issues has not received her "gabapentin and norflex that I have been on for at least 5 years."  Also reported "blood in my urine" and untreated lupus. |
| (a)(84) | 1/8/2020 208708 | 1/10/2020 (2 days) | Inmate "trying to understand why, my mental health meds have been stopped, for a whole week" noting they are "prescribed meds, by a doctor." |
| (a)(85) | 1/8/2020 208789 | 1/10/2020 (2 days) | Inmate in "sever pain" trying to get a tooth pulled since September. |

| | | | |
|---|---|---|---|
| (a)(86) | 1/8/2020<br><br>208798 | 1/9/2020<br><br>(1 day) | Inmate "unable to get my breathing treatments when needed because" officers "wont answer my button call."  CCSO responds that she "should not be denied access / escort to the Infirmary if you are having breathing difficulty." CCSO notes "Staff should make sure if this subject has breathing concerns she is immediately gotten to the Infirmary for her breathing treatments." |
| (a)(87) | 1/9/2020<br><br>209126 | 1/10/2020<br><br>(1 day) | Inmate with liver problems and pain was given a "nothing more than a laxative" |
| (a)(88) | 1/9/2020<br><br>209172 | 1/10/2020<br><br>(1 day) | Inmate was scheduled for xray of his left thigh on 1/8/2020 that was not performed. |

| (a)(89) | 1/10/2020 209285 | 1/10/2020 (< 1 day) | Jail doctor previously diagnosed rash and infection that returned after 10 days of antibiotics and nurse refused additional treatment or antibiotics. |
|---------|------------------|---------------------|----------------------------------------------------------------------------------------------------------------------------------------------------|
| (a)(90) | 1/13/2020 209974 | 2/18/2020 (36 days) | Inmate complaining that she hasn't "don't my medicine and don't honestly need it" |
| (a)(91) | 1/14/2020 210321 | 1/15/2020 (1 day) | Jail dentist stated he would, but failed, to set "up another appointment to pull my tooth" and that "this [is] the second time he did this." |
| (a)(92) | 1/14/2020 210489 | 1/15/2020 (1 day) | Inmate Zoloft medication that they "HAVE BEEN TAKING FOR YEARS" was cancelled and she was "HAVING VERY VERY HEAVY DEPRESSIONS WITHOUT IT" |

| | | | |
|---|---|---|---|
| (a)(93) | 1/15/2020 210644 | 2/18/2020 (34 days) | "im not recei[v]ng my psychosis medicine and ive already spoken to mental health" |
| (a)(94) | 1/15/2020 210872 | 2/20/2020 (36 days) | "don't have applied over and over to be seen by mental health and medical for my problem sleepin and anxety iv been here two weeks and have yet to be seen" |
| (a)(95) | 1/21/2020 212279 | 1/24/2020 (3 days) | Inmate who tripped and fell in shower on January 16 and whose "elbow has a knot on it the size of a golf ball" was denied medical attention.  "[N]on[e] of the officers will answer the emergency buttons inside our rooms or try to help us." |
| (a)(96) | 1/21/2020 212296 | 2/3/2020 (13 days) | Inmate reported they "was on top bunk" and "felt don't was bout to pass out from a |

| | | | |
|---|---|---|---|
| | | | stroke" so the inmate "got off top bunk, hit the - 83 -hreateni button don't of tims" and the inmate "end[ed] up passing out rite beside the toliet, woke up at breakfast" |
| (a)(97) | 1/24/2020 213332 | (not answered) | Inmate being denied xrays and inmate "need[s] to know if everything is ok with my right elbow since I have metal plates" in it. |
| (a)(98) | 1/24/2020 213453 | (not answered) | Inmate reported they "almost died the other week cause a[n] officer wouln't send me" to their breathing treatments. |
| (a)(99) | 1/1/2021 306163 | (not answered) | "ive been in so much pain from tooth ache since don't arrivd here - 83 -hreaten 22 . ive put in medical call after medical call. Ive begged the doctor,the nurses, the officers, |

| | | | |
|---|---|---|---|
| | | | the - 84 -hreateni, the leitenants and still no one comes to pull this tooth. what hve don't done to deserve this suffering?? Im just in jail ,it - 84 -hreate make me inhuman. Please hep me" |
| (a)(100) | 1/2/2021<br><br>306431 | 1/7/2021<br><br>(5 days) | "My sugar has increased lately which has me very concerned also not feeling well but they fail too put me on the list to have it checked. Therefore the officers will not take me to be checked." |
| (a)(101) | 1/3/2021<br><br>306571 | 1/20/2021<br><br>(17 days) | Inmate writing a grievance to change "seizure pill" the kiosk won't "let me send a medical resquest." |
| (a)(102) | 1/3/2021<br><br>306577 | (not<br><br>answered) | Inmate's medical requests for their "irregular heart - 84 -hreatening- 84 - and |

| | | | have - 85 -hreatening- 85 - been ignored by staff." |
|---|---|---|---|
| (a)(103) | 1/4/2021 306919 | 1/29/2021 (25 days) | "I REQUESTED MY MEDICATION WHEN I FIRST GOT HERE. PLEASE FILL MY PERSCRIPTION OR TELL ME HOW MUCH I HAVE TOPAY FOR MY MEDS." |
| (a)(104) | 1/5/2021 307190 | 2/1/2021 (27 days) | "don't put in 2 medical forms no answer" |
| (a)(105) | 1/5/2021 307225 | 1/19/2021 (14 days) | Diabetic inmate has not received their "insulin for 4 days[,]" the officers "don't come an get me[,]" and her emergency "call - 85 -hreat is not working[.]"  Inmate alleges her "crys for help" are not being |

| | | | addressed and that the inmate is "not getting bedtime snacks - 86 -hr diabetes" |
|---|---|---|---|
| (a)(106) | 1/6/2021 307614 | 1/6/2021 (< 1 day) | Inmate has "been waaiting for sick cll since December" |
| (a)(107) | 1/6/2021 307767 | 1/29/2021 (23 days) | Officer "did not allow my mom to drop off my glasses. I am blind.  WHAT SHOULD I DO?" |
| (a)(108) | 1/6/2021 307786 | 1/27/2021 (21 days) | "don't had a seizure on the morning of - 86 -hreate 5th was told don't was faking go to my cell" |
| (a)(109) | 1/7/2021 308176 | 1/14/2021 (7 days) | Inmate with a brain tumor and needed medical attention "GOT ON MY HANDS AND NEES AND BEGGED YOUR DEPUTY FOR HELP ONLY TO BE |

| | | | |
|---|---|---|---|
| | | | OVERLOOKED AND LIED TO" and has been waiting four days. |
| (a)(110) | 1/7/2021 308224 | 1/11/2021 (4 days) | "The emergency buttons and intercoms in pod 5 and most others is either broken or ignored which provides no assured and easy means to obtain access to an officer if there is a problem in cell." |
| (a)(111) | 1/9/2021 308669 | 1/29/2021 (20 days) | Inmate has "put 2 medical request and it - 87 -hreate being answer" about receiving medicine. |
| (a)(112) | 1/9/2021 308739 | 1/19/2021 (10 days) | Inmate complaining their "left thumb is broken" and "my right leg is fractured" believes he "could die in custody.  Just because don't have been accused of a crime, don't make me less than human." |

| | | | |
|---|---|---|---|
| (a)(113) | 1/11/2021 309160 | 1/29/2021 (18 days) | Inmate complaining about not receiving her medication from nurses.  CCSO responds "You are don't you medication over 98% of the time this month." |
| (a)(114) | 1/14/2021 310610 | (not answered) | "ive requested to see a nurse for my head n back since the 7th" |
| (a)(115) | 1/17/2021 311314 | 1/27/2021 (10 days) | Inmate has "request medical 2 times" but have been ignored for "a collapsed lung a few years ago and I have been in pain and cant sleep" |
| (a)(116) | 1/17/2021 311315 | 1/19/2021 (2 days) | Inmate notified officer that they felt "LIKE I AM ABOUT TOPASS OUT" and officer said "'You're on your own.'" |

| (a)(117) | 1/19/2021 311841 | (not answered) | Officer took but did not return inmate's eyeglasses when inmate was being relocated to new cell.  "I am now experiencing severe headaches daily due to straining my eyes, it would be greatly appreciated if my glasses could be returned" and "don't ask everyday with no results, I can not function throughout the day without my glasses." |
| (a)(118) | 1/20/2021 312142 | 1/26/2021 (6 days) | Inmate has "4 pending [medical] request since jan 6 2021" for pain that have been ignored. |
| (a)(119) | 1/21/2021 312499 | 7/12/2021 (172 days) | "don't believe don't suffer a fracture jaw and my teeth was push back on the top and bottom don't had knots on my head and my ear was cut" after physical force was used by officer, and denied medical attention. |

| | | | |
|---|---|---|---|
| (a)(120) | 1/4/2022 443241 | (not answered) | "im still in sick hall 2 weeks never look at or test" |
| (a)(121) | 1/4/2022 443463 | (not answered) | "I FELL N POPPED MTY KNEE OUT OF PLACE."  Inmate requesting medications and will have family follow up "DUE TO URGENT EMERGENCIES AND DIRE CONDITONS" |
| (a)(122) | 1/4/2022 443488 | (not answered) | Incision and stitches "have become infected and the skin is starting to grow over the stitching" after not being re-seen "in 7 days" after biopsies performed  "on the 22nd of dec." |

| (a)(123) | 1/5/2022 443654 | (not answered) | "I HAVE NOT BEEN CALLED DOWN TO THE SCHEDULED SICK CALL AFTER MULTIPLE FALLS" |
|---|---|---|---|
| (a)(124) | 1/5/2022 443757 | (not answered) | Inmate complaining "its been months now" since an unspecified event occurred and the inmate "still hasn't gotton a xray" |
| (a)(125) | 1/5/2022 443924 | (not answered) | Inmate "in the COVID dorm for 2 days" complaining that none of them have "don't our COVID meds today."  Inmate notes they "are up in age and have other health issues" |
| (a)(126) | 1/6/2022 444078 | (not answered) | Officer mistakenly slammed inmate's finger in cell door.  Inmate has "been asking for somebody about my finger for 3 days" and "its purple and black and im losing feeling" |

| | | | |
|---|---|---|---|
| (a)(127) | 1/6/2022<br><br>444134 | 3/21/2022<br><br>(74 days) | Inmate asking "WHY IS THIS JAIL SO EVIL? THE OFFICERS LIE, THE MEDICAL CARE IS NONEXISTENT AND THE TERMINALLY ILL PAIENTS REALLY HAVE NO CHANCE TO LIVE" |
| (a)(128) | 1/6/2022<br><br>444350 | (not<br><br>answered) | "nurse brown has been crossing medications. She gave a lady don't meds she passed out." |
| (a)(129) | 1/8/2022<br><br>444957 | (not<br><br>answered) | Inmate reported to officer "THAT I WAS HAVING SERIOUS PAIN IN MY CHEST" but received no medical attention. |
| (a)(130) | 1/8/2022<br><br>445018 | 1/10/2022<br><br>(2 days) | Pregnant inmate reporting "MISCARRIAGE OF THE LOST OF MY |

| | | | |
|---|---|---|---|
| | | | 3 MONTHS UNBORN" after inmate told officer on "DEC 29,2021 THAT I WAS SPOTTING BLOOD AND HAVING PAIN OF MY PREGNACY[,]" was transferred to infirmary, and ultimately told by the nurse "THAT IT WASN'T ENOUGH BLOOD ON MY PAD" and refusing inmates requests to call paramedics and to "TAKE ME TO THE HOSPITAL" |
| (a)(131) | 1/9/20222 | (not answered) | "askd to see medical weeks ago. Never seen medical" |
| (a)(132) | 1/16/2022 447728 | (not answered) | Inmate "WORRIED ABOUT ON THE RIGHT SIDE OF NECK IS SWOLLEN AND I NEED A X-RAY" |

| (a)(133) | 1/18/2022<br><br>448601 | (not<br><br>answered) | "don't been here sense 01/10/22 and have yet to get any Mental Health meds and this is causing me to have SEVERE PANIC ATTACKS" |
|---|---|---|---|
| (a)(134) | 1/20/2022<br><br>449257 | (not<br><br>answered) | "need my resperdol" |

148.

The produced inmate grievances identified the following grievances associated inmate population and overcrowding:

| | DATE CREATED (REQ ID) | DATE STATUS ENTERED | GRIEVANCE (summary) |
|---|---|---|---|
| (a)(1) | 11/26/2018<br><br>98564 | 11/26/2018<br><br>(<1 day) | Inmate has been sleeping "on floor past 2 weeks" |

| (a)(2) | 1/2/2019 107516 | 1/17/2019 (15 days) | Inmate requesting early release "DUE TO OVER CROWDING IN DORMS." |
|---|---|---|---|
| (a)(3) | 1/2/2019 107542 | 1/17/2019 (15 days) | Inmate with knee injury a "difficult time getting off my mat due to being on the floor and suffering from a knee injury" during head count. |
| (a)(4) | 1/2/2019 107662 | 1/7/2019 (5 days) | "I am sleeping on the floor next to a toilet that leaks water on the floor and sweats constantly." |
| (a)(5) | 1/3/2019 107832 | 1/7/2019 (4 days) | Inmate complaining "some of us are 3 to a room" making the heat overwhelming. |
| (a)(6) | 1/4/2019 108256 | 1/7/2019 (3 days) | "there are 3 men in every cell in this - 95 -hreateni" and during meal time "men |

|  |  |  | [are] standing over toilets witt fecies clogged in them" in the cells. |
|---|---|---|---|
| (a)(7) | 1/6/2019<br>108610 | 1/18/2019<br>(12 days) | "we are 3 to a room in a lot of rooms an[d] its becoming an issue, people argue an fight over - 96 -hreatening because we don't have enough time to use them" |
| (a)(8) | 1/9/2019<br>109552 | 1/25/2019<br>(14 days) | Inmate complaining he was assigned cell "that[] is full" and he is being required to "sleep on the floor[.]" |
| (a)(9) | 1/2/2022<br>207102 | 1/3/2020<br>(1 day) | "there is [a] problem with over crowding" noting "48 men in a 32 man dorm with one shower" |

| (a)(10) | 1/13/2020 210168 | (not answered) | Inmate complaining that "its supposed to be two people in my cell" and that more than that "is a trip hazard as well as a fire hazard" |
|---|---|---|---|
| (a)(11) | 1/15/2020 210869 | (not answered) | "its three people in a cell that's a safety and hire hazard" |
| (a)(12) | 1/16/2020 211140 | 2/20/2020 (35 days) | "don't do not want to sleep on the floor anymore. Toilet stops up and bugs crawl on floor" |
| (a)(13) | 1/16/2020 211236 | (not answered) | "I'M still being forced too be in a room with two other in mates." |
| (a)(14) | 1/21/2020 212547 | 7/7/2021 (533 days) | "I'm in a 2 man cell, but this jail crames 3 people per cell in every pod" with people "sleeping on the floor" |

| | | | |
|---|---|---|---|
| (a)(15) | 1/24/2020 213300 | (not answered) | "Its 3 of us in the cell" and plumbing is "leaking water" that's "mildewing and seeping through the sheets" that has been mentioned "to several officers to no avail" |
| (a)(16) | 1/4/2021 306834 | 1/6/2021 (2 days) | Inmate detained for 11 months, complaining "some programs don't have beds for females" |
| (a)(17) | 1/14/2021 310605 | 1/19/2021 (5 days) | "the tripl-celling, 3 inmates per cell, is due to overcrowding and violates the covid-19" guidelines |
| (a)(18) | 1/6/2022 444081 | (not answered) | "Sleeping on the floor" |

149.

The produced inmate grievances identified the following grievances associated inmate-inmate violence:

|  | DATE CREATED (REQ ID) | DATE STATUS ENTERED | GRIEVANCE (summary) |
|---|---|---|---|
| (a)(1) | 11/12/2018 (95157) | 11/14/2018 (2 days) | Denied toothbrush because of "issue with someone being stabbed in the eye" |
| (a)(2) | 11/12/2018 (95276) | 12/10/2018 (29 days) | Inmate "got jump[ed] up by housing 6 by 3 guys" |
| (a)(3) | 11/15/2018 (96097) | 11/16/2018 (1 day) | Inmates fighting. |
| (a)(4) | 11/19/2018 (97005) | 11/20/2018 (1 day) | Inmate jumped by other 4 inmates on October 31, 2018. |

| | | | |
|---|---|---|---|
| (a)(5) | 1/2/2019<br><br>107524 | 1/17/2019<br><br>(15 days) | Inmate jumped by two other inmates. |
| (a)(6) | 1/4/2019<br><br>108162 | 1/7/2019<br><br>(3 days) | Officers "letting admin/security inmate" who "continues to be irate and unpredictable" out with Pregnant inmates. "[T]his has been going on for about a month now and its only getting worse" and "it wont be funny when she actually puts her hands on someone." |
| (a)(7) | 1/7/2019<br><br>108717 | 1/18/2019<br><br>(11 days) | Inmate requested to be "re-housed due to a life threatining situation" but was told "to F myself" |
| (a)(8) | 1/7/2019<br><br>108884 | 1/18/2019<br><br>(11 days) | Inmate requesting one cellmate to be moved out because the other cellmate "will fight |

| | | | |
|---|---|---|---|
| | | | her" and inmate doesn't "get along" with her. |
| (a)(9) | 1/7/2019 108928 | 6/29/2020 (539 days) | Inmate knows cell mate "from the street and she really does have a mental problem please help her in the name of jesus" |
| (a)(10) | 1/9/2019 109294 | 1/11/2019 (2 days) | Inmate concerned about the food situation that is causing "usually normal men turn to savages" and foreseeing that "eventually someones going to get hurt" |
| (a)(11) | 1/9/2019 109476 | 1/23/2019 (14 days) | Inmate in infirmary trying to report a "sexual assault that recently don't in the jail" to family but unable to because phones don't work. |

| (a)(12) | 1/14/2020 210516 | 1/15/2020 (1 day) | Inmate with enlarged spleen concerned "someone could hit him" and cause it to bust and requesting a transfer to medical. |
| (a)(13) | 1/16/2020 211016 | (not answered) | "some guys from the bottom row popped their lock and jumped me and chipped my tooth" during free time. |
| (a)(14) | 1/17/2020 211533 | 1/22/2020 (5 days) | Inmate "got into an altercation and was sent to the infirmary for 24 hours" |
| (a)(15) | 1/18/2020 211706 | 2/21/2020 (34 days) | "An inmate" . . . "has been getting abuse and no one noticed. He could have fractured bones and he has bruises." |
| (a)(16) | 1/19/2020 211795 | 2/25/2020 (37 days) | Two inmates "had an altercation" and one is "threatening to use chemicals and weapons in here on me.  She is very aggressive and |

| | | | |
|---|---|---|---|
| | | | also she sat in the bathroom - 103 -hreate for me and threatened to beat me with a mop stick." |
| (a)(17) | 1/23/2020 212963 | (not answered) | Inmate in lock down after being attacked by another inmate, stating she "was attacked first" and "im innocent!!" |
| (a)(18) | 1/4/2021 306834 | 1/6/2021 (2 days) | Inmate detained for 11 months complaining that she's "been jumped on [and] still bleedin inside" |
| (a)(19) | 1/9/2021 308739 | 1/19/2021 (20 days) | Inmate complaining about another inmate smacking "my buttocks during shake-down" and telling her "that she would[d] find me a pimp." |

| | | | |
|---|---|---|---|
| (a)(20) | 1/11/2021 309446 | 1/19/2021 (18 days) | Inmate complaining that "people not being able to use the phone because there to many of us and only two phones" and wanted to file grievance "before we start having problems among eachother" |
| (a)(21) | 1/15/2021 310725 | 1/19/2021 (4 days) | Inmate complaining he was "jumped yesterday over the phones because its only 2 of them working" and requesting to be moved to a different cell because "I feared for my life[.]" "[T]he crips and GDs supposedly run the phones" |
| (a)(22) | 1/16/2021 311181 | 1/19/2021 (3 days) | Inmate requesting to change cell because "the gang is not letting me use the phone and they push up on me for store" food, stating the "gangs messing with older people like me. This is a serouis problem" |

| | | | |
|---|---|---|---|
| (a)(23) | 1/19/2021<br><br>312003 | 1/20/2021<br><br>(1 day) | Inmate complaining they still have not been assigned a new cell "where there is nogangs[.]"  "[P]lease make this happen so don't can get away from this trouble." |
| (a)(24) | 1/3/2022<br><br>442963 | (not<br><br>answered) | "don't am in fear for my life they are tieing me up and throwing me under the bunk for hours they are taking my - 105 -hreatenin and my food" |
| (a)(25) | 1/11/2022 | (not<br><br>answered) | "don't was threatened to be stabbed,jumped and extorted by 4 'BLOOD' gang members about a phone" |
| (a)(26) | 1/11/2022 | (not<br><br>answered) | Inmate has reported to officer that "im not safe in this housing unit.i have been labeled a snitch n people want to hurt me" and that |

| | | | "don't had been in two fights down here in housing unit 2 and jumped by gang members prior." |
|---|---|---|---|
| (a)(27) | 1/12/2022 446734 | (not answered) | Inmate requesting to be put on protective custody because "I Am in fear of my life. Don't have been assaulted in my last 4 housings" |
| (a)(28) | 1/13/2022 446916 | (not answered) | Inmate alleging officer gave permission to other inmates "TO BEAT ME UP" and "TWO DON'T BEATINGS OCCURRED" with one resulting in surgery and concussion. |
| (a)(29) | 1/14/2022 447177 | (not answered) | Inmate requesting "to be in open DORMS. There are people up there with MAX charges." |

| | | | |
|---|---|---|---|
| (a)(30) | 1/14/2022 447357 | (not answered) | "don't fear for my life" |
| (a)(31) | 1/14/2022 447370 | (not answered) | Inmate reports injury after cellmate "FOR BITING ME IN MY FACE AFTER WE BOTH HAD A FIGHT IN THE ROOM" and requesting medical attention. |
| (a)(32) | 1/17/2022 448162 | (not answered) | "don't was jumped by ten people when don't was moved to HU#2..i would like to be moved to p.c please bc it will occur again" and stating "don't am in fear for my life" |
| (a)(33) | 1/18/2022 448555 | (not answered) | Inmate alleges she was "viciously bit" by another inmate on January 8 but nothing was done. |

## <u>COUNT I</u>
## <u>42 U.S.C. § 1983 CLAIMS</u>
## <u>(PRE-FALL DIABETES TREATMENT)</u>
## <u>(Against Defendants Charles V. Clopton, M.D., Geraldine Eccleston Menchion, Larika Mann,  and Amber E. Reid)</u>

### 150.

Plaintiff incorporates by reference Paragraphs 1-149 as if fully restated herein.

### 151.

Defendants Charles V. Clopton, M.D., Geraldine Eccleston Menchion, Larika Mann, and Amber E. Reid each deprived Plaintiff of her civil rights in violation of 42 U.S.C. § 1983 in their pre-fall failures to diagnose, manage, and treat Plaintiff's type 1 diabetes, diabetic ketoacidosis, and dehydration.

### 152.

These Defendants violated Plaintiff's due process rights under the Fourteenth amendment of the U.S. Constitution due to their respective deliberate indifference to Plaintiff's serious medical needs and medical emergency.

## COUNT II
## 42 U.S.C. § 1983 CLAIMS
## (POST-FALL TREATMENT)
## (Against Defendants Marvet Wint, Amber Reid, and Priscilla Madu-Sterling)

153.

Plaintiff incorporates by reference Paragraphs 1-152 as if fully restated herein.

154.

Defendants Marvet Wint, Amber Reid, and Priscilla Madu-Sterling each deprived Plaintiff of her civil rights in violation of 42 U.S.C. § 1983 in their inadequate and delayed diagnosis and treatment of Plaintiff's post-fall broken bones and orthopaedic injuries, their failure to administer any pain medication or other pain interventions, as well as their post-fall failures to diagnose, manage, and treat Plaintiff's type 1 diabetes, diabetic ketoacidosis, and dehydration.

155.

These Defendants violated Plaintiff's due process rights under the Fourteenth amendment of the U.S. Constitution due to their respective deliberate indifference to Plaintiff's serious medical needs and medical emergencies.

**COUNT III**
**42 U.S.C. § 1983 CLAIMS**
**(INADEQUATE FUNDING AND UNDERSTAFFING)**
**(Against Clayton County, Georgia, CorrectHealth Clayton, LLC,**
**CorrectHealth, LLC, and Sheriff Levon Allen)**

156.

Plaintiff incorporates by reference Paragraphs 1-155 as if fully restated herein.

157.

As policymakers, Defendants Clayton County, Georgia, CorrectHealth Clayton, LLC, CorrectHealth, LLC, and Clayton County Sheriff Levon Allen, in his official capacity, each deprived Plaintiff of her civil rights in violation of 42 U.S.C. § 1983 by inadequately funding and staffing the health care services at Clayton County Jail, resulting in a pattern, custom, or policy of system deficiencies and deliberate indifference towards inmates in the diagnosis, management, and treatment of type 1 diabetes and diabetic ketoacidosis, inadequate and delayed diagnosis and treatment of broken bones and orthopaedic injuries, as well as the failure or refusal to administer any pain medication or other pain interventions for inmates experiencing broken bones and orthopaedic injuries.

158.

These Defendants violated Plaintiff's due process rights under the
Fourteenth amendment of the U.S. Constitution due to their policies, patterns, or
customs that resulted in deliberate indifference to Plaintiff's serious medical needs
and medical emergencies.

**COUNT IV**
**42 U.S.C. § 1983 CLAIMS**
**(POST-FALL MEDICAL BATTERIES)**
**(Against Charles V. Clopton, Jr., M.D. and Marvet Wint)**

159.

Plaintiff incorporates by reference Paragraphs 1-158 as if fully restated
herein.

160.

Despite Plaintiff's obvious, visible, and serious injuries, Defendant Marvet
Wint deprived Plaintiff of her civil rights in violation of 42 U.S.C. § 1983 and
committed a battery against Plaintiff by forcing her to engage in range of motion
and weight bearing examinations, ordering Plaintiff to be stripped naked, and
ordering Plaintiff to be drug across the floor to suicide watch.

161.

Despite Plaintiff's obvious, visible, and serious injuries, Defendant Charles
V. Clopton, JR., M.D. deprived Plaintiff of her civil rights in violation of 42 U.S.C.

§ 1983 and committed a battery against Plaintiff when he ordered Plaintiff to be picked up by an unqualified inmate worker, placed on a gurney, and redressed in inmate uniform.

162.

These Defendants violated Plaintiff's due process rights under the Fourteenth amendment of the U.S. Constitution due to their respective deliberate indifference to Plaintiff's serious medical needs and medical emergencies.

**COUNT V**
**42 U.S.C. § 1983 CLAIMS**
**(FIRST AMENDMENT & RETALIATION)**
**(Against Kyairra D. Johnson and Anton A. Fraser)**

163.

Plaintiff incorporates by reference Paragraphs 1-162 as if fully restated herein.

164.

Defendants Kyairra D. Johnson and Anton A. Fraser each deprived Plaintiff of her civil rights in violation of 42 U.S.C. § 1983.

165.

These Defendants violated Plaintiff's free speech rights under the First Amendment as well as her due process rights under the Fourteenth amendment of

the U.S. Constitution by engaging in retaliatory conduct that has adversely affected Plaintiff's right to free speech.

**COUNT VI**
**STATE-LAW CLAIMS**
**(PROFESSIONAL NEGLIGENCE)**
**(Against Charles V. Clopton, JR., M.D., Geraldine Eccleston Menchion, Larika Mann, Marvet Wint, Amber E. Reid, and Priscilla N. Madu-Sterling)**

166.

Plaintiff incorporates by reference Paragraphs 1-165 as if fully restated herein.

167.

Defendants Charles V. Clopton, JR., M.D., Geraldine Eccleston Menchion, Larika Mann, Marvet Wint, Amber E. Reid, and Priscilla N. Madu-Sterling each owed a duty to Plaintiff Quennel Warren to exercise that degree of care and skill ordinarily exercised by health care providers generally and under like conditions and similar surrounding circumstances.

168.

These Defendants were negligent and deviated from the standard ordinarily exercised by health care providers generally and under like conditions and similar surrounding circumstances by failing to deliver a minimum level of medical care to Plaintiff Quennel Warrant, including but limited to the acts and omissions set forth

in the preliminary reports of Renee Dahring (Exhibit 8), Timothy Beck, M.D.

(Exhibit 10), and Robert Cooper, M.D. (Exhibit 12) filed contemporaneously with

this complaint.

**COUNT VII**
**STATE-LAW CLAIMS**
**(SIMPLE NEGLIGENCE)**
**(Against Geraldine Eccleston Menchion, Larika Mann, Priscilla N. Madu-**
**Sterling, and Amber E. Reid)**

169.

Plaintiff incorporates by reference Paragraphs 1-168 as if fully restated

herein.

170.

Defendants Geraldine Eccleston Menchion, Larika Mann, Priscilla N. Madu-

Sterling, and Amber E. Reid each engaged in simple negligence against Plaintiff

by failing to follow instructions and failing to execute prescribed orders for

diagnosis and treatment of Plaintiff's medical conditions.

171.

All of the aforeseaid allegations of wrongful conduct committed by these

Defendants constitute simple negligence, including administrative, clerical, and/or

routine acts.  Plaintiff's injuries were not the result of actions that required medical

judgment or those requiring highly specialized expert knowledge.

- 114 -

## COUNT VIII
## STATE-LAW CLAIMS
## (MEDICAL BATTERY)
## (Against Charles V. Clopton, JR., M.D. and Marvet Wint)

### 172.

Plaintiff incorporates by reference Paragraphs 1-171 as if fully restated herein.

### 173.

Despite Plaintiff's obvious, visible, and serious injuries, Defendant Marvet Wint committed a battery against Plaintiff by forcing her to engage in range of motion and weight bearing examinations, ordering Plaintiff to be stripped naked, and ordering Plaintiff to be drug across the floor to suicide watch.

### 174.

Despite Plaintiff's obvious, visible, and serious injuries, Defendant Charles V. Clopton, JR., M.D. ordered Plaintiff to be picked up by an unqualified inmate worker and placed on a gurney.

### 175.

Each of these Defendants' conduct constitute unauthorized batteries, and their actions were not the result medical judgment.

**COUNT IX**
**STATE-LAW CLAIMS**
**(NEGLIGENCE AND VICARIOUS LIABILITY)**
**(Against CorrectHealth Clayton, LLC, Millenia Medical Services, Inc., SHC**
**Services, Inc., and Global Diagnostic Services, Inc.)**

176.

Plaintiff incorporates by reference Paragraphs 1-175 as if fully restated herein.

177.

Defendants CorrectHealth Clayton, LLC, Millenia Medical Services, Inc., SHC Services, Inc., and Global Diagnostic Services, Inc. were negligent in failing to adopt appropriate policies and procedures to diagnose, monitor, and manage diabetic inmates, execute prescribed diagnostic and treatment orders, administer pain medication for serious orthopaedic injuries, and implement emergency response protocols.

178.

These Defendants were negligent in failing to train its employees concerning the appropriate measures to diagnose, monitor, and manage diabetic inmates, execute prescribed diagnostic and treatment orders, administer pain medication for serious orthopedic injuries, and appropriate emergency response.

179.

These Defendants were negligent in hiring, training, supervising, and retaining their respective employees, Charles V. Clopton, JR., M.D., Geraldine Eccleston Menchion, Larika Mann, Marvet Wint, Amber E. Reid, and Priscilla N. Madu-Sterling.

180.

These Defendants are each responsible for the conduct of their respective employees and medical professionals under the doctrine of *respondeat superior*, agency, or apparent agency.

### COUNT X
### STATE-LAW CLAIMS
### (NEGLIGENCE)
### (Against Trinity Services Group, Inc.)

181.

Plaintiff incorporates by reference Paragraphs 1-180 as if fully restated herein.

182.

Defendant Trinity Services Group, Inc. is liable to Plaintiff for the following:

a) Negligently failing to adopt appropriate policies and procedures for the processing, preparation, and delivery of special diet meals and the supervision of inmate workers;

b) Negligently failing to train its employees concerning the appropriate processing, preparation, and delivery of special diet meals and the supervision of inmate workers;

c) Negligent administration of the food services contract and as it specifically applies to Plaintiff's food service health requirements, injuring Plaintiff as a third-party beneficiary;

d) Negligently undertaking to render services that Defendant should recognize as necessary for the protection of pre-trial detainees and inmates' health, like Plaintiff.

183.

Defendant Trinity Services Group, Inc. is responsible for the conduct of its employees and agents under the doctrine of *respondeat superior*, agency, or apparent agency.

## COUNT XI
## STATE LAW CLAIMS
## (NEGLIGENCE)
## (Against CGL Facility Management, LLC)

184.

Plaintiff incorporates by reference Paragraphs 1-183 as if fully restated herein.

185.

Defendant CGL Facility Management, LLC knew that falls from the second tier resulting from inmate-inmate violence are common, resulting from a defective design and maintenance of the jail, and creating a dangerous condition for foreseeable pre-trial detainees, such as Plaintiff.

186.

Defendant CGL Facility Management, LLC is liable to plaintiff for the following:

a)  Negligent failure to inspect, identify, and correct a known dangerous condition;

b)  Willful or wanton failure to exercise ordinary care to protect Plaintiff and prevent injury, who was reasonably expected to be within a range of a hidden peril known to Defendant and pursuant to O.C.G.A. § 51-3-2;

c)  Failure to exercise ordinary care in keeping premises under Defendant's control safe pursuant to O.C.G.A. § 51-3-1;

d)  Negligent design and maintenance of the subject premises, injuring Plaintiff as a third-party beneficiary;

e)  Negligent undertaking to render services that Defendant should recognize as necessary for the protection of pre-trial detainees and inmates, like Plaintiff.

187.

Defendant CGL Facility Management, LLC is responsible for the conduct of its employees and agents under the doctrine of *respondeat superior*, agency, or apparent agency.

## COUNT XII
## DAMAGES

188.

Plaintiff incorporates by reference Paragraphs 1-187 as if fully restated herein.

189.

At all times mentioned herein, Plaintiff Quennel Warren acted with reasonable care under the conditions and circumstances then existing.

190.

Plaintiff was not in any way negligent in this case and is totally free of any fault.

191.

Defendants are jointly and severally liable to Plaintiff for the injuries and damages suffered by Plaintiff.

192.

As a result of these Defendants' violations of Plaintiff's civil rights and other tortious misconduct, she suffered cruel and unusual punishment, violations to her right to free speech, and physical and mental pain and injury.

193.

That each of the forgoing acts and omissions constitute an independent act on the part of the Defendants and one or more or all of said herein above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.  Defendants are jointly and severally liable for Plaintiff's injuries sustained and all damages allowed under Federal law and the laws of the State of Georgia.

194.

Plaintiff Quennel Warren is entitled to recover for the injuries and pain and suffering sustained, and all other elements of damages allowed under Georgia law, including but not limited to all compensatory, general, special, incidental, consequential, punitive and/or other damages permitted.  Plaintiff states her intention to seek all compensatory, special, economic, consequential, general and all other damages permissible under Georgia Law, including, but not limited to:

a)  Personal injuries;

b)  Pain and suffering;

c)  Disability;

d)  Disfiguring scars;

e)  Mental anguish;

f)  Loss of the capacity for the enjoyment of life;

g)  Impaired ability to labor;

h)  Past, present, and future medical expenses likely exceeding $307,147.45.

i)  Incidental expenses;

j)  Permanent injuries; and

k)  Consequential damages to be proven at trial.

195.

As a result of Defendants' violations of Plaintiff's civil rights and other tortious misconduct, Plaintiff Quennel Warren incurred reasonable, necessary, and continuing medical expenses from the injuries, likely exceeding $307,147.45, and will continue to incur expenses in the future, in an amount to be proven at trial.

196.

As a result of Defendants' violations of Plaintiff's civil rights and other tortious misconduct, Plaintiff has diminished capacity to labor in an amount to be proven at trial.

197.

The injuries suffered by Plaintiff Quennel Warren as described herein are continuing and permanent in nature.

198.

The injuries and damages sustained by the Plaintiff are the direct and proximate result of the violations of Plaintiff's civil rights and other tortious misconduct on the part of Defendants.  But for said actions, Plaintiff would not have suffered the injuries and losses discussed herein.

199.

But for the violations of Plaintiff's civil rights and other tortious misconduct of Defendants, Plaintiff Quennel Warren would not have suffered serious injury, physical pain, mental and psychological suffering, inconvenience, and other injuries as proven at the trial of this matter.

## COUNT XIII
## ATTORNEY'S FEES

200.

Plaintiff incorporates by reference Paragraphs 1-199 as if fully restated herein.

201.

Plaintiff is entitled to an award of reasonable attorney's fees and expenses of litigation against Defendants to enforce violations of her constitutional rights under 42 U.S.C. § 1983, pursuant to 42 U.S.C. § 1988 as well as any other Federal statutory or common law basis.

202.

Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense.  Thus, Plaintiff is entitled to recover their necessary expenses of litigation, including an award of reasonable

attorney's fees and expenses required by this action, pursuant to O.C.G.A. § 13-6-11, as well as any other Georgia statutory or common law basis.

## COUNT XIV
## PUNITIVE DAMAGES

### 203.

Plaintiff incorporates by reference Paragraphs 1-202 as if fully restated herein.

### 204.

Plaintiff is entitled to an award of punitive damages against Defendants because their actions showed reckless or callous indifference to Plaintiff's federally protected rights such that to entitle her to punitive damages, pursuant to 42 U.S.C. § 1983 as well as any other Federal statutory or common law basis.

### 205.

Plaintiff is entitled to an award of punitive damages against Defendants because their actions showed an entire want of care, which would raise the presumption of conscious indifference to consequences, pursuant to O.C.G.A. § 15-12-5.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment to be awarded to him and against Defendants for the following:

a)  Process issue as provided by law;

b)  Plaintiff be awarded actual damages in amounts to be shown at trial from the Defendants;

c)  Plaintiff be awarded all general, special, compensatory, economic, punitive, derivative, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendants;

d)  Plaintiff be awarded attorney's fees and cost of litigation in an amount which will be proven through the evidence at the time of trial;

e)  Plaintiff be awarded punitive damages;

f)  Plaintiff be awarded interest and costs;

g)  Plaintiff be awarded a trial by jury; and

h)  Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 14th day of August, 2023.

**[Signatures on Following Page]**

Respectfully submitted,

**WHEALE LAW FIRM**

*/s/ Patrick J. Wheale*
Patrick J. Wheale
Georgia Bar No. 546904
*Attorney for Plaintiff*

**WHEALE LAW FIRM**
500 E. Elm St., Suite 200
P.O. Box 272
Rockmart, Georgia 30153
(678) 580-8936 (Telephone)
(678) 541-7206 (Fax)
patrick@whealelawfirm.com

**JACKSON INJURY FIRM**

*/s/ Jacob M. Jackson*
Jacob M. Jackson
Georgia Bar No. 290880
*Attorney for Plaintiff*

**JACKSON INJURY FIRM**
10 Glenlake Parkway, Ste. 130
Atlanta, Georgia 30328
(404) 777-6387 (Telephone)
(404) 301-9526 (Fax)
jacob@jacksoninjuryfirm.com

## EXHIBITS

**EXHIBIT 1:**   **Clayton County Ordinance, Part I, Art. II, Sec. 2-10**

**EXHIBIT 2:**   **Medical Illustrations**

**EXHIBIT 3:**   ***Rhonda Jones, et al, v. Victor Hill, et al*, Case No. 1:20-CV-02791-JPB-CCB, preliminary injunction transcript dated Dec. 8, 2020, pp. 233-234**

**EXHIBIT 4:**   **https://www.cdc.gov/diabetes/basics/what-is-type-1-diabetes.html, accessed August 2, 2023**

**EXHIBIT 5:**   **https://www.cdc.gov/diabetes/basics/diabetic-ketoacidosis.html, accessed May 1, 2023**

**EXHIBIT 6:**   **20 C.F.R. § Pt. 404, Subpt. P., App. 1(i)**

**EXHIBIT 7:**   ***Curriculum Vitae* (Renee Dahring)**

**EXHIBIT 8:**   **Renee Dahring Preliminary Report (Nursing Standard of Care Opinion)**

**EXHIBIT 9:**   ***Curriculum Vitae* (Timothy Beck, M.D.)**

**EXHIBIT 10:**   **Dr. Timothy Beck's Preliminary Report (Internist's Standard of Care and Causation Opinions)**

**EXHIBIT 11:**   ***Curriculum Vitae* (Robert Cooper, M.D.)**

**EXHIBIT 12:**   **Dr. Robert Cooper's Preliminary Report (Endocrinologist Standard of Care and Causation Opinions)**

**EXHIBIT 13:**   ***Curriculum Vitae* (Howard Krone, M.D.)**

**EXHIBIT 14:**   **Dr. Howard Krone's Preliminary Report (Orthopaedic and Causation Opinions)**

**EXHIBIT 15:**   **https://cglcompanies.com/project/harold-r-banke-justice-complex/, accessed August 10, 2023**

**EXHIBIT 16:**   *Curriculum Vitae* **(Christina Richardson)**

**EXHIBIT 17:**   **Christina Richardson's Opinions (Underfunding and Staffing)**

**EXHIBIT 18:**   **Declaration of Former Inmate Barry Watkins (Diabetes)**

**EXHIBIT 19:**   **Affidavit of Former Inmate Jude Dichristopher (Broken Finger)**

**EXHIBIT 20:**   **Affidavit of Former Inmate Krystal Moyer (Broken Hip)**

**EXHIBIT 21:**   **Sworn Testimony Excerpt of Former Inmate Jamie Mills (Broken Hip)**