# EXHIBIT 10
## (Timothy Beck, M.D. Preliminary Report)

Timothy Scott Beck, M.D.
P.O. Box 384
Clayton, Ga 30525
(706)982-4156

May 21, 2023

**Medical report regarding the care of Quennel Warren at the Clayton County Jail**

**Expert Qualifications:**

I am Timothy Scott Beck. I am a Medical Doctor licensed to practice medicine in the State of Georgia with board certification by the American Board of Internal Medicine. Through education, training and experience, I am familiar with the standards of care applicable to both the medical and nursing professions generally. Particularly, I am familiar with such standards of care as the same apply to appropriate medical and nursing care, or lack thereof, for **Quennel Warren** under the care of **Charles Clopton, M.D.** and **Clayton County Jail.**

All opinions expressed in this report are to a reasonable degree of medical certainty.

In preparation for this opinion I have reviewed:

- Executive Summary
- Audio: 911 call; 9/7/2021
- Video: Bodycam; 9/7/2021
- Audio: 911 call; 9/9/2021
- Audio: Warren call; 9/7/2021
- Audio: Warren call; 9/9/2021
- Audio: Michelle Barnes interview; 10/20/2021
- Audio: Kay Johnson interview; 10/20/2021
- Audio: Antone Fraser inteview; 10/20/2021
- Medical Records from Grady Hospital; 9/9/2021 – 12/14/2022
- Medical Records from Eagles Landing Diabetes; 5/14/2019 - 10/6/2021
- Medical Records from Southside Medical Center; 9/25/2019 - 4/13/2022
- Medical Records from Clayton County EMS; 9/7/2021 - 9/9/2021
- Medical Records from CorrectHealth; 10/17/2018 - 9/9/2021
- Medical Records from United Physician Group; 9/10/2021 – 11/3/2021
- Trinity Services Group Food recommendations; 9/7/2021
- Clayton County Police Department Incident Report No. 21050868; 9/7/2021
- Clayton County Police Department Incident Report No. 21050864; 9/7/2021
- Inmate Classification History; 10/17/2020 – 9/10/2021
- HU3 S5 Logs; 9/9/2021
- Suicide Watch Log; 9/9/2021
- Clayton County Sherriff's Office emails; 10/15/2021 – 10/20/2021
- Request for medical records to CorrectHealth Clayton, LLC; 3/29/2022
- NRN Email; 4/3/2023

1

**Brief summary of events:**

**Quennel Warren** was arrested and held at **Clayton County Jail** and was under the care of **Charles Clopton, M.D.** from 9/7/2021 - 9/9/2021 after interfacing with law enforcement in regards to an outstanding warrant. While at this facility, she experienced issues related to her type I diabetes and suffered a fall with injuries. I was asked to provide a professional medical opinion on specific aspects of her medical treatment at **Clayton County Jail** and under the care of **Charles Clopton, M.D.** in regards to her specific care/needs, what was administered and the prevailing standard of care.

**Questions:**

**Did Charles Clopton, M.D. violate the standard of care by releasing Quennel Warren from the infirmary back to general population, assuming that none of Nurse Practitioner Sims' orders were fulfilled?**

I believe that **Charles Clopton, M.D** did breach the standard of care by releasing **Quennel Warren** back into the general population. She was, more likely than not, in diabetic ketoacidosis. She was having symptoms of dizziness, nausea, vomiting and was subsequently diagnosed with uncontrolled diabetes, dehydration and nausea. These constellation of symptoms represent the exact signs and symptoms that you would expect in a type I diabetic that is in or at high risk for diabetic ketoacidosis. Furthermore, lab work that would have specifically addressed and confirmed that she was in diabetic ketoacidosis was ordered but never performed. She was released back into the general population without evidence of metabolic stability in regards to her diabetes and her fluid status.

**After Ms. Warren's fall and assuming Charles Clopton, M.D. evaluated Ms. Warren around 4:00 p.m. as stated by Nurse Madu-Sterling in her note on MRCorrectHealth 0051-0052, did Charles Clopton, M.D. violate the standard of care by:**

**(1) failing to order the administration of pain medication and/or insulin himself?** Not necessarily as he had midlevels that worked with him. Ensuring that treatment that is ordered or requested should not have been a question in a properly functioning medical unit.

**(2) failing to administer pain medication and/or insulin when he personally evaluated her?** Typically, this task would have been performed by support staff. However, he would have been expected to be actively involved in her care providing oversight and continued evaluations of the patient.

**(3) failing to verify pain medication and insulin had been administered?** Yes, it was his responsibility both as the attending physician and the medical director to ensure that orders that are written are carried out and documented appropriately.

**After Ms. Warren's fall, did the medical care provided by the jail's medical providers cause an unnecessary delay in the failure to order a transfer to the hospital for several hours?** More likely than not, her right ankle fracture was obvious to the medical personnel. The delay in treatment was excessive. In my professional opinion, more likely than not, this injury was blatantly obvious and she should have been transferred to the hospital for further evaluation as soon as her right ankle injury became apparent. There was no obvious reason for her to have not been transported to the hospital for another 5 hours and this delay denoted a breach in the standard of care. This delay caused her unnecessary pain and suffering and likely advanced her underlying diabetic ketoacidosis.

**After Ms. Warren's fall, did the medical care provided by the jail's medical providers cause Ms. Warren to experience unnecessary pain due to the failure to administer pain medication?** There is no evidence that she was administered pain medication. Her injuries were obvious and substantial. The failure to administer pain medication absolutely caused her to experience unnecessary pain and discomfort.

2

**After Ms. Warren's fall, did the medical care provided by the jail's medical providers cause or contribute Ms. Warren to enter into the diabetic ketoacidosis that was diagnosed by Grady Hospital, resulting in her delay in surgery?** Quennel Warren was definitely in ketoacidosis upon her arrival to Grady Hospital. More likely than not, the stress reaction and subsequently delay in treatment furthered her underlying diabetic ketoacidosis. The diabetic ketoacidosis would have to be treated adequately before she would be able to undergo surgery safely. More likely than not, the initial delay in care and the advancement of her diabetic ketoacidosis delayed her surgery.

**Whether Nurse Practitioner Sim's observations of dizziness, nausea, and vomiting; his diagnosis of uncontrolled diabetes, dehydration, and nausea; as well as his ordered tests: are these symptoms, diagnoses, and treatments consistent with diabetic ketoacidosis?** The investigation and interventions entered by John Sims, NP reflected a concern that she may be in diabetic ketoacidosis such as normal saline administration as an intervention (though incomplete) that would be appropriate for someone at risk or in diabetic ketoacidosis. There was no evidence that these interventions were performed according to the chart. Not performing these interventions and releasing patient back into general population represented an inadequate evaluation, lack of clinical integrity and denoted a breach in the standard of care. More likely than not, the results of these test would have confirmed his prospective diagnosis of diabetic ketoacidosis and would have prompted the medical team to escalate care to an appropriate level (i.e. emergency room evaluation).

**Whether untreated diabetic ketoacidosis in a type 1 diabetic is a medical emergency typically requiring inpatient treatment, such as at a hospital?** Diabetic ketoacidosis is a serious metabolic disorder that always requires admission to the hospital. Typically, a patient in diabetic ketoacidosis will be admitted to a higher level of care that just inpatient status and requires close observation of blood glucose levels, hydration status and electrolytes until stable.

**Conclusion:**

**Quennel Warren** was an inmate at **Clayton County Jail.** She had underlying type I diabetes that if not treated appropriately can have the complication of diabetic ketoacidosis. Diabetic ketoacidosis is a serious metabolic derangement that requires prompt identification, treatment and ongoing evaluations. There were several breaches in the standard of care by **Charles Clopton, M.D.** and **Clayton County Jail** in regards to her diabetes, diabetic ketoacidosis and a fall with injuries. Specifically:

- **Charles Clopton, M.D.** and **Clayton County Jail** failed to appropriately evaluate and treat an inmate with a serious medical condition (diabetic ketoacidosis) within the prevailing standard of care.
- **Charles Clopton, M.D.** and **Clayton County Jail** failed to properly document the appropriate medical evaluation and treatments for diabetes and diabetic ketoacidosis that would have been expected in a properly functioning medical unit to meet the standard of care.
- **Clayton County Jail** failed to execute and document their own orders and evaluations regarding diabetic ketoacidosis causing a significant delay in meaningful interventions that resulted in a breach in the standard of care.
- **Charles Clopton, M.D.** and **Clayton County Jail** failed to respond and provide treatment to an obvious injury (right ankle fracture) in a timely fashion and subsequently allowed her to experience a delay in care, as well as, unnecessary pain and suffering.
- **Clayton County Jail** failed to appropriately provide and document medical interventions and medication administration that would be expected from a properly functioning medical unit for a serious injury (right ankle fracture).

In my professional opinion, more likely than not, the facility and its staff, to include **Charles Clopton, M.D.,** failed to meet the standard of care in the treatment of **Quennel Warren.** In my professional opinion, more

3

likely than not, these breaches in the standard of care caused unnecessary pain and suffering. In my professional opinion, more likely than not, the facility failed to uphold the prevailing standard of care and **Quennel Warren** suffered the consequences with a delay in care, unnecessary pain, suffering and bodily injury.

Lastly, the overt lack of documentation and the persistent failure to uphold the standard of care in the face of a metabolic derangement and an obvious injury reflected systemic procedural deficiencies and a lack of clinical integrity that you would expect from a properly functioning medical unit. In my professional opinion, more likely than not, these breaches in the standard of care, procedural deficiencies and lack of clinical integrity are systemic issues and likely are not isolated to the events specifically related to **Quennel Warren.**

I reserve the right to amend or update this report should further information become available.

Timothy Scott Beck, M.D.

4