**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| KYLE MYERS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| GENESEE & WYOMING | ) | **JURY TRIAL DEMANDED** |
| RAILROAD SERVICES, INC. | ) | |
| and RAILROAD ENGINEERING | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Kyle Jordan Myers ("Plaintiff" or "Mr, Myers") brings this Complaint for Damages and Equitable Relief against Genesee & Wyoming Railroad Services, Inc. ("G&W") and Railroad Engineering Services, LLC ("RES"), alleging as follows:

## INTRODUCTION

1.      Plaintiff Kyle Jordan Myers is a professional engineer who enjoyed a successful career in the railroad industry, including over eight years with Defendants and promotion to Assistant Chief Engineer, until Defendants turned their back on him after he developed post-traumatic stress disorder as a result of a

violent crime. On a business trip to Indiana, Myers was assaulted by a group of unknown assailants, left hospitalized, and in recovery for several weeks. At first Defendants seemed understanding about this traumatic incident, but as Mr. Myers developed symptoms of post-traumatic stress disorder over the next 18 months, Defendants began to discriminate against him because of his disability. Ultimately, after he took leave to get treatment and was cleared to return to work without restrictions, Defendants terminated his employment. He was told he could apply for other jobs and did so, but the man who took his position, Brandon Graves, told employees that Mr. Myers was "defeated" and selected numerous less qualified applicants to fill the positions Mr. Myers applied for, leaving him unemployed.

2.      Plaintiff asserts claims for disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*. ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, as well as claims for interference and retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611 *et seq.* ("FMLA"). He seeks back pay and lost economic benefits of employment, liquidated damages, reinstatement of front pay in lieu of reinstatement, compensatory and punitive damages, reasonable attorney's fees and costs of litigation, and any other relief that this Court deems just.

## PARTIES

3.    Plaintiff is a resident of the State of North Carolina and subjects himself to the jurisdiction of this Court.

4.    Plaintiff was at all relevant times an "employee" as that term is defined by the ADA and the Rehabilitation Act.

5.    Plaintiff was at all relevant times an "eligible employee" of G&W within the meaning of the FMLA, 29 U.S.C. § 2611(2).

6.    Plaintiff was at all "qualified individual with a disability" as that term is used and defined by the ADA and the Rehabilitation Act.

7.    Defendant G&W is a foreign corporation organized for profit and licensed to do business in the State of Georgia, and which operates several railroads and rail transportation services.

8.    G&W may be served with process by personal service upon its registered agent, C T Corporation System, at 289 South Culver Street in Lawrenceville, GA 30046.

9.    Defendant G&W was at all relevant times an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(i).

10.    Defendant G&W was at all relevant times an "employer" as that term is defined by the ADA and the Rehabilitation Act.

11.     Defendant RES is a foreign corporation organized for profit and licensed to do business in the State of Georgia, and employes individuals like Plaintiff alongside Defendant G&W to service and maintain G&W railroads.

12.     RES may be served with process by personal service upon its registered agent, C T Corporation System, at 289 South Culver Street in Lawrenceville, GA 30046.

13.     Defendant RES was at all relevant times an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(i).

14.     Defendant RES was at all relevant times an "employer" as that term is defined by the ADA and the Rehabilitation Act.

15.     At all times relevant and material to this Complaint, Plaintiff was employed by Defendants, as joint employers, within the meaning of the ADA, Rehabilitation Act, and the FMLA.

## JURISDICTION AND VENUE

16.     Plaintiff's claims present federal questions over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(3)), and 29 U.S.C. § 2617(a)(2), because Defendants reside or conduct business within this district, the

alleged unlawful employment practices occurred here, and Plaintiff would have worked in this judicial district but for the alleged unlawful employment practices.

18.    Plaintiff exhausted all administrative remedies in this matter by filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission and receiving a Notice of Right to Sue issued by the Commission.

19.    This action has been timely commenced, within 90 days of Plaintiff's receipt of the Notice of Right to Sue issued by the U.S. Equal Employment Opportunity Commission.

## FACTUAL ALLEGATIONS

20.    Mr. Myers is a professional engineer with over 20 years of experience in the railroad industry.

21.    Mr. Myers began employment with G&W and RES in 2014.

22.    Because of his excellent performance, Mr. Myers was promoted several times and rose to the rank of Assistant Chief Engineer.

23.    The job duties performed by Mr. Myers included planning and monitoring construction and other projects completed by G&W to provide the rail transportation services it provides.

24.     On or about September 17, 2020, Mr. Myers flew to Ohio at the request of G&W Vice President Juan Carlos to do a site visit and safety observation of a crew led by Steve Cupps.

25.     During this trip, Mr. Myers received a call from G&W Manager of Production David Burdine, who said that a train had struck a piece of equipment in Waraw, Indiana, and requested that Mr. Myers help to resolve the damage and complete any necessary reports.

26.     Because Mr. Myers was only four hours away, it was determined that Mr. Myers would go to the site in Warsaw and assess the situation.

27.     Mr. Myers planned to stay at a motel in Lima, Ohio the night before going to the site in Warsaw.

28.     While driving to the motel, Mr. Myers was waylaid by several individuals riding motorcycles who drove him off the road and savagely beat him, causing multiple injuries.

29.     After the incident, Mr. Myers was taken to the hospital and treated for his injuries.

30.     On September 18, 2020, Brandon Graves arrived at the motel at which Mr. Myers was supposed to stay and made a telephone call to someone at G&W, who directed him to take Mr. Myers to the airport and send him home.

31.    Graves told the G&W employee that Mr. Myers was "defeated," and that he did not think they would see him come back to work.

32.    At first, Defendants seemed supportive to Mr. Myers; G&W Senior Vice President Andy Chunko contacted him and told him that the company would help to get whatever care he needed to get better.

33.    In October 2020, Mr. Myers returned to work, now under the supervision of Graves, but struggled with serious emotional problems caused by the violent victimization he had suffered.

34.    Throughout the remainder of 2020 and early 2021, Mr. Myers began to suffer from anxiety and depression.

35.    Mr. Myers told Graves that he was struggling, and Graves asked whether he was seeing a counselor, to which Mr. Myers replied affirmatively.

36.    Mr. Myers also tried to reach out to Juan Carlos for help, but the conversation went nowhere.

37.    Mr. Myers then tried to reach out to Andy Chunko but was ignored.

38.    Mr. Myers also tried to talk to Art Chandler, the new Chief Engineer, about his struggles and how to get help, but Mr. Chandler said he did not supervise Mr. Myers when the incident happened to him and did not want to be involved.

39.    In June 2021, while driving to a site for work, Mr. Myers had a panic attack and became overwhelmed in traffic and had to pull off the road.

40.    On the side of the roadway and in a state of extreme anxiety and emotional disturbance, Mr. Myers called Branden Swain, G&W's Human Resources Director, who told him that he had spoken with Andy Chunko and Jeff Watson and that they had decided Mr. Myers should drive himself home.

41.    Mr. Swain then contacted Mr. Myers and told him that he needed to take leave under the FMLA, which Mr. Myers did.

42.    During his FMLA leave, Mr. Myers was diagnosed with and received treatment for post-traumatic stress disorder.

43.    Mr. Myers' FMLA leave was set to end in September 2021, but his medical providers requested that his leave be extended for another month until October 2021.

44.    Through his medical providers, Mr. Myers provided Defendants with a medical release or "fit-for-duty" evaluation indicating he could return to work.

45.    However, in November 2021, Defendants told Mr. Myers that he would have to be examined by a company doctor in order to return to work.

46.    Mr. Myers asked several times to have the examination so that he could return to work, but Defendants delayed.

47.    Finally, the week before Christmas of 2021, Mr. Myers received a psychiatric evaluation from a psychiatrist employed by Defendants.

48.    Mr. Myers contacted Defendants to ask about his evaluation and when he could return to work, and was told on January 10, 2022 that the evaluation confirmed his ability to return to work and that he was cleared to return to work.

49.    However, Defendants told Mr. Myers that his position had been filed and he would need to apply for any open positions.

50.    Mr. Myers did apply for several open positions, most of which were positions he either previously held before being promoted or who had been previously filled by people he trained.

51.    Based on Mr. Myers' work history, experience, and qualifications, he should not have had any trouble being placed in one of the positions he applied for.

52.    Yet, Defendants refused to hire him for any of the positions.

53.    Graves was the hiring official for these positions, as he was the person to whom Defendants gave Mr. Myers' Assistance Chief Engineer positions.

54.    As a result of the failure by Defendants to restore Mr. Myers to his position or to reassign, transfer, or otherwise place him any position with the company, Mr. Myers lost his employment with Defendants in March 2022.

## COUNT I

### DISCRIMINATION IN VIOLATION OF THE ADA
### *Against all Defendants*

55.     Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth fully herein.

56.     At all relevant times, Defendants have been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

57.     At all times relevant, Plaintiff was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1), because he had mental and/or physical impairments that substantially limited one or more major life activities, had a record of such impairments, and/or was regarded as a person with such impairments.

58.     At all relevant times, Plaintiff was a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and he was able to perform the essential functions of his job with or without a reasonable accommodation.

59.     Defendants intentionally discriminated against Plaintiff by subjecting him to adverse employment actions including, but not limited to, termination of his employment and refusal to hire and/or transfer him to other jobs.

60.     Defendants violated Plaintiff's rights under the ADA, 42 U.S.C. § 12112, by discriminating against him on the basis of his disability.

61.    As a direct and proximate result of Defendants' intentional discrimination, Plaintiff has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to proved at trial.

62.    Defendants' actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

63.    Defendants' actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and he is therefore entitled to punitive damages.

64.    Plaintiff is entitled to be reinstated to employment by Defendants, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## **COUNT II**

### **FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**
### *Against all Defendants*

65.    Plaintiff incorporates all preceding paragraphs of the Complaint as if set forth fully herein.

66.    At all relevant times, Defendants have been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

67.     At all times relevant, Plaintiff was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1), because he had mental and/or physical impairments that substantially limited one or more major life activities, had a record of such impairments, and/or was regarded as a person with such impairments.

68.     At all relevant times, Plaintiff was a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8), and he was able to perform the essential functions of his job with or without a reasonable accommodation.

69.     Defendants intentionally discriminated against Plaintiff by refusing to accommodate his requests for reasonable accommodation in the form of a leave of absence to obtain medical treatment and returning him to his position, and/or hiring, transferring, or otherwise placing him in other jobs for which he was qualified.

70.     Defendants' actions amount to a violation of 42 U.S.C. § 12112(a)-(b)(5)(A), which prohibit discrimination on the basis of disability in the form of not making reasonable accommodations for disabilities.

71.     As a direct and proximate result of Defendants' intentional discrimination and failure and refusal to accommodate Plaintiff, he has suffered out-of-pocket losses and has been deprived of job-related economic benefits,

including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

72.    Defendants' actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

73.    Defendants' actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and he is therefore entitled to punitive damages.

74.    Plaintiff is entitled to be reinstated to employment by Defendants, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT III

### RETALIATION IN VIOLATION OF THE ADA
### *Against all Defendants*

75.    Plaintiff incorporates all preceding paragraphs of the Complaint as if set forth fully herein.

76.    At all relevant times, Defendants have been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

77.    At all times relevant, Plaintiff was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1), because he had mental and/or physical

impairments that substantially limited one or more major life activities, had a record of such impairments, and/or was regarded as a person with such impairments.

78.    At all relevant times, Plaintiff was a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and was able to perform the essential functions of his job with or without a reasonable accommodation.

79.    Plaintiff engaged in statutorily protected activity within the meaning of the ADA by requesting reasonable accommodation, complaining of Defendants' denial of reasonable accommodations, and/or otherwise attempting to assert or exercise his statutory rights under the ADA.

80.    Defendants intentionally retaliated against Plaintiff by subjecting him to adverse employment actions including, but not limited to, refusing to return him to work after he took leave to obtain medical treatment for his disability, and refusing to hire, transfer, and/or otherwise place him other jobs for which he was qualified.

81.    As a direct and proximate result of Defendant's intentional retaliation, Plaintiff has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

82.    Defendants' actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

83.    Defendants' actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and he is therefore entitled to punitive damages.

84.    Plaintiff is entitled to be reinstated to employment by Defendants, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT IV

### DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT
### *Against all Defendants*

85.    Plaintiff incorporates all preceding paragraphs of the Complaint as if set forth fully herein.

86.    Plaintiff's employment was part of a program or activity receiving federal financial assistance, and for that reason, Defendants are subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)-(b).

87.    The standards used to determine whether Defendants have discriminated against Plaintiff are the same as applied to claims for discrimination in violation of Title I of the ADA. 29 U.S.C. § 794(d).

88.     Plaintiff was an individual with a "disability" as defined by the ADA and Rehabilitation Act because he had mental and/or physical impairments that substantially limited one or more major life activities, had a record of such impairments, and/or was regarded as a person with such impairments.

89.     Plaintiff was at all relevant times a "qualified individual" because he was able to perform the essential functions of his job with or without reasonable accommodation.

90.     Defendants intentionally discriminated against Plaintiff by subjecting him to adverse employment actions including, but not limited to, termination of his employment and refusal to hire and/or transfer him to other jobs.

91.     Defendants violated Plaintiff's rights under the ADA and the Rehabilitation Act by discriminating against him because of his disability.

92.     As a direct and proximate result of Defendants' intentional discrimination, Plaintiff has suffered out-of-pocket losses and been deprived of job-related economic benefits, including wage income, retirement benefits, and other benefits, including social security, all in an amount to be established at trial.

93.     Plaintiff is entitled to be reinstated to employment by Defendants, and if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT V

### FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE REHABILITATION ACT
### *Against all Defendants*

94.     Plaintiff incorporates all preceding paragraphs of the Complaint as if set forth fully herein.

95.     Plaintiff's employment was part of a program or activity receiving federal financial assistance, and for that reason, Defendants are subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)-(b).

96.     The standards used to determine whether Defendants discriminated against Plaintiff are the same as applied to claims for discrimination in violation of Title I of the ADA. 29 U.S.C. § 794(d).

97.     Plaintiff was an individual with a "disability" because he had mental and/or physical impairments that substantially limited one or more major life activities, had a record of such impairments, and/or was regarded as a person with such impairments.

98.     Plaintiff was at all relevant times a "qualified individual" because he was able to perform the essential functions of his job with or without reasonable accommodation.

99.     Defendants intentionally discriminated against Plaintiff by refusing to accommodate his requests for reasonable accommodation in the form of a leave of absence to obtain medical treatment and returning him to his position, and/or hiring, transferring, or otherwise placing him in other jobs for which he was qualified.

100.    Defendants violated Plaintiff's rights under the ADA and Rehabilitation Act by failing and refusing to provide him with reasonable accommodation.

101.    As a direct and proximate result of Defendants' intentional discrimination, Plaintiff has suffered out-of-pocket losses and been deprived of job-related economic benefits, including wage income, retirement benefits, and other benefits, including social security, all in an amount to be established at trial.

102.    Plaintiff is entitled to be reinstated to employment by Defendants, and if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## **COUNT VI**

### **RETALIATION IN VIOLATION OF THE REHABILITATION ACT**
### *Against all Defendants*

103.    Plaintiff incorporates all preceding paragraphs of the Complaint as if set forth fully herein.

104.   Plaintiff's employment was part of a program or activity receiving federal financial assistance, and for that reason, Defendants are subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)-(b).

105.   The standards used to determine whether Defendants have discriminated against Plaintiff are the same as applied to claims for retaliation in violation of 42 U.S.C. § 12203. 29 U.S.C. § 794(d).

106.   At all relevant times, Plaintiff was an individual with a "disability" because he had mental and/or physical impairments that substantially limited one or more major life activities, had a record of such impairments, and/or was regarded as a person with such impairments.

107.   Plaintiff was at all relevant times a "qualified individual" because he was able to perform the essential functions of his job with or without reasonable accommodation.

108.   Plaintiff engaged in statutorily protected activity within the meaning of the ADA and Rehabilitation Act by requesting reasonable accommodation, complaining of Defendants' denial of reasonable accommodations, and/or otherwise attempting to assert or exercise his statutory rights under the Rehabilitation Act.

109.   Defendants intentionally retaliated against Plaintiff by subjecting him to adverse employment actions including, but not limited to, refusing to return him to work after he took leave to obtain medical treatment for his disability, and refusing to hire, transfer, and/or otherwise place him other jobs for which he was qualified.

110.   Defendants' actions amount to violations of the ADA and Rehabilitation Act which prohibits employers from discriminating against employees because they exercised or attempted to exercise or enjoy rights secured to him by those laws.

111.   As a direct and proximate result of Defendants' unlawful retaliation against Plaintiff, he has suffered out-of-pocket losses and been deprived of job-related economic benefits, including wage income, retirement benefits, and other benefits, including social security, all in an amount to be established at trial.

112.   Plaintiff is entitled to be reinstated to employment by Defendants, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VII

## INTERFERENCE IN VIOLATION OF THE FMLA
### *Against all Defendants*

113.   Plaintiff incorporates all preceding paragraphs of the Complaint as if set forth fully herein.

114.   Plaintiff was an "eligible employee" who was entitled to a total of twelve workweeks of leave because of his own serious health condition, and to be restored to his own position or an equivalent position, within the meaning of 29 U.S.C. § 2612(a)(1)(D) and § 2614(a).

115.   Plaintiff was eligible for FMLA leave under 29 U.S.C. § 2611(2)(A), and was not excluded under § 2611(2)(B)(ii), because, while he was employed with Defendants, they had 50 or more employees within 75 miles of Plaintiff's primary "worksite" as that term is defined by the FMLA, 29 C.F.R. § 825.111(a)(2).

116.   Defendants unlawfully interfered with and/or prevented Plaintiff from exercising and enjoying the rights to which he was entitled under the FMLA by, among other things, terminating his employment after he took FMLA leave and failing or refusing to restore him to his own position or an equivalent position after the conclusion of that leave.

117.   Graves unlawfully interfered with and/or prevent Plaintiff from exercising and enjoying the rights to which he was entitled under the FMLA by,

among other things, refusing to restore him to an equivalent position after the conclusion of his FMLA leave.

118.   Defendants also required Plaintiff, without reason to doubt the validity of his medical certification or any other justification, to obtain a second opinion regarding his fitness to return to duty from a doctor employed by the company, in violation of 29 C.F.R. § 825.307.

119.   The actions of Defendants in interfering with Plaintiff's rights under the FMLA were committed with reckless disregard for his right to take up to twelve workweeks of leave time because of his serious health condition and in violation of 29 U.S.C. § 2612(a)(1)(D) and § 2612(a).

120.   The effect of the actions of Defendants has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits, because of the violation of his right to leave under the FMLA and restoration to his own position or an equivalent position after the conclusion of that leave.

121.   Accordingly, and because of the violations of the FMLA committed by Defendants, Plaintiff is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other

lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

122.   Plaintiff also is entitled to liquidated damages for the willful violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii), by Defendants.

123.   Plaintiff is entitled to be reinstated to employment by G&W, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VIII

### RETALIATION IN VIOLATION OF THE FMLA
### *Against Defendants G&W and Graves*

124.   Plaintiff incorporates all preceding paragraphs of the Complaint as if set forth fully herein.

125.   Plaintiff was an "eligible employee" who was entitled to a total of twelve workweeks of leave because of his own serious health condition, and to be restored to his own position or an equivalent position, within the meaning of 29 U.S.C. § 2612(a)(1)(D) and § 2614(a).

126.   Plaintiff was eligible for FMLA leave under 29 U.S.C. § 2611(2)(A), and was not excluded under § 2611(2)(B)(ii), because, while he was employed with Defendants, they had 50 or more employees within 75 miles of Plaintiff's primary "worksite" as that term is defined by the FMLA, 29 C.F.R. § 825.111(a)(2).

127.   Plaintiff engaged in statutorily protected activity by giving notice to Defendants of a serious health condition and need for future FMLA leave and requesting that leave, to which he was entitled under 29 U.S.C. § 2612(a)(1)(D).

128.   By terminating Plaintiff's employment because he exercised and attempted to exercise rights under 29 U.S.C. § 2612(a)(1)(D), and/or by considering Plaintiff's attempt to exercise rights under the FMLA as a "motivating factor" among other reasons in the decisions to terminate his employment and refuse to restore him to his own position or an equivalent position or any position, Defendants unlawfully retaliated against Plaintiff because of his exercise of rights under the FMLA.

129.   Defendants' actions in retaliating against Plaintiff because he exercised and attempted to exercise rights under the FMLA were committed with reckless disregard for his right to take up to twelve workweeks of leave time because of his own serious health condition and be restored to his own position or an equivalent position or any position in violation of 29 U.S.C. § 2612(a)(1)(D).

130.   The effect of the unlawful actions of Defendants has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits as a result of the violation of his right to leave under the FMLA.

131.   Accordingly, and because the violations of the FMLA committed by Defendants, Plaintiff is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs.

132.   Plaintiff also is entitled to liquidated damages for the willful violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

133.   Plaintiff is entitled to be reinstated to employment by G&W, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demand a **TRIAL BY JURY** and that the following relief be granted:

a.   A declaratory judgment that Defendants violated the ADA, Rehabilitation Act, and FMLA;

b.   A declaratory judgment that Defendants violated the FMLA;

c.   Full back pay and all fringe and pension benefits, including but not limited to bonuses, raises, vacation time, paid time off, and the like,

which Plaintiff would have received but for the unlawful discrimination perpetrated by Defendants, with prejudgment interest;

d.      Liquidated damages against Defendants;

e.      An award of compensatory damages against Defendants in an amount to be determined by a jury for Plaintiff's emotional distress,

f.      An award of punitive damages against Defendants in an amount to be determined by a jury;

g.      Reasonable attorney's fees and expenses of litigation against Defendants;

h.      Prejudgment interest at the rate allowed by law;

i.      Injunctive relief prohibiting Defendants from further unlawful conduct of the type described herein; and

j.      Any other relief this Court deems proper and just.

Respectfully submitted this 15th day of August, 2023.

**BEAL SUTHERLAND
BERLIN & BROWN**

*/s/ Brian J. Sutherland*
Brian J. Sutherland
Georgia Bar No. 105408
brian@beal.law
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@beal.law

945 East Paces Ferry Road
Suite 2000
Atlanta, Georgia 30326

*Attorneys for Plaintiff*