# Exhibit A


**SOCIAL SECURITY ADMINISTRATION**

___

Office of Hearings Operations
Suite 500, Marquis 1
245 Peachtree Ctr. Ave
Atlanta, GA 30303-9913

Date: July 22, 2019

Anita Wiley
1438 Wood Creek Trail
Roswell, GA 30076

## Notice of Decision – Partially Favorable

I carefully reviewed the facts of your case and made the enclosed partially favorable decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did

Form HA-L76-OP1 (03-2010)
**Suspect Social Security Fraud?**
Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).

See Next Page

not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. If you

Form HA-L76-OP1 (03-2010)

See Next Page

Anita Wiley	Page 3 of 3

disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866)931-9946. Its address is:

>Social Security
>401 W Peachtree St NW
>Suite 2860 Flr 28
>Atlanta, GA 30308-3538


>Juan E. Milanés
>Administrative Law Judge


Enclosures:
Form HA-L15 (Fee Agreement Approval)
Decision Rationale
Form HA-L39 (Exhibit List)


cc:   Kathleen Flynn
      315 W. Ponce De Leon
      Avenue, Suite 940
      Decatur, GA 30030

Form HA-L76-OP1 (03-2010)

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings Operations

### ORDER OF ADMINISTRATIVE LAW JUDGE

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Anita Wiley | Supplemental Security Income |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

I approve the fee agreement between the claimant and her representative subject to the condition that the claim results in past-due benefits.  My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted.  I neither approve nor disapprove any other aspect of the agreement.

**YOU MAY REQUEST A REVIEW OF THIS ORDER AS INDICATED BELOW**

**Fee Agreement Approval:** You may ask us to review the approval of the fee agreement.  If so, write us within 15 days from the day you get this order.  Tell us that you disagree with the approval of the agreement and give your reasons.  Your representative also has 15 days to write us if he or she does not agree with the approval of the fee agreement.  Send your request to this address:

>Sheila Lowther
>Regional Chief Administrative Law Judge
>Suite 20T10
>61 Forsyth Street SW
>Atlanta, GA 30303-8819

**Fee Agreement Amount:** You may also ask for a review of the amount of the fee due to the representative under this approved fee agreement. If so, <u>please write directly to me as the deciding Administrative Law Judge</u> within 15 days of the day you are notified of the amount of the fee due to the representative.  Your representative also has 15 days to write me if he/she does not agree with the fee amount under the approved agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

/s/ *Juan E. Milanes*
Juan E. Milanés
Administrative Law Judge

July 22, 2019
Date

Form HA-L15 (03-2007)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Anita Wiley | Supplemental Security Income |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

**JURISDICTION AND PROCEDURAL HISTORY**

On November 29, 2016, the claimant protectively filed an application for supplemental security income, alleging disability beginning October 15, 2010. The claim was denied initially on July 6, 2017 and upon reconsideration on August 15, 2017. Thereafter, the claimant filed a written request for hearing on August 22, 2017 (20 CFR 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on June 28, 2019, in Atlanta, GA. Valerie Allen, an impartial vocational expert, also appeared at the hearing. The claimant's primary representative is Kathleen Flynn, an attorney, however, she was represented at the hearing by Brynne Holt.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 416.1435(a)).

**ISSUES**

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

On July 26, 2017, Disability Determination Services (DDS) physician Dr. Ramana Reddy, reviewed the evidence on Reconsideration, and issued a Disability Determination Explanation finding the claimant disabled as of April, 29, 2017, after the claimant turned 55 years of age. However, the claimant alleges an earlier onset date of disability, understands the possibility of an unfavorable determination, and requested to move forward with a hearing for an earlier onset date of disability.

See Next Page

Accordingly, after careful consideration of all the evidence, the Administrative Law Judge concludes that the claimant was not disabled prior to October 18, 2018, but became disabled on that date and has continued to be disabled through the date of this decision.

## **APPLICABLE LAW**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922; Social Security Rulings (SSRs) 85-28, and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must

See Next Page

consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.  The claimant has not engaged in substantial gainful activity since the date of application (20 CFR 416.971 *et seq.*).**

**2.  Since the date of application, November 29, 2016, the claimant has had the following severe impairments:  osteoarthritis, degenerative disc disease, depression, anxiety and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

The medical evidence also shows the claimant has the impairments consisting of coronary artery disease, hypertension, pulmonary embolism, visual disturbance, diabetes mellitus, gastrointestinal reflux disease (GERD), genital herpes, dyslipidemia and obesity (Exhibits B5F, B6F, B9F, B10F, B11F, B12F, B13F, b14F and B15F). However, there is no evidence of any significant complications and/or work-related limitations due to these conditions documented in the record. Accordingly, the Administrative Law Judge concludes that these additional

See Next Page

impairments do not have more than a minimal impact on the claimant's ability to perform work-related activities and are therefore "non-severe."

**3.   Since November 29, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

As discussed below, the medical evidence does not contain the objective signs, symptoms, or findings, or the degree of functional limitations necessary for the claimant's impairments, considered singly or in combination, to meet or equal the severity of any sub-section of the above-mentioned listings or any other section contained in Appendix 1.  In reaching this conclusion, the Administrative Law Judge has considered the opinions of the state agency medical consultants who evaluated the issue at the administrative review process and reached the same conclusion (20 CFR § 416.927(f)).  The Administrative Law Judge also notes no treating or examining medical source has stated the claimant has an impairment or combination of impairments that meets or equals the criteria of any listed impairment.

Before the established onset date, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

On June 12, 2017, psychologist Dr. Charles Hamby evaluated the claimant, who reported losing her train of thought, difficulty sleeping and poor energy.  She also reported receiving intermittent mental health treatment for depression and anxiety in the form of medication, from psychiatrist Dr. Tamara Haynes.  The claimant reported a history of treatment for PTSD after a robbery.  She noted she has been taking Paxil for the past year, which helps because she says it keeps her from being quite so moody and irritable (Exhibit B8F).

Although the claimant reported losing her train of thought, she reported to Dr. Hamby the ability to keep up with her medication, and take care of bills and finances.  In addition, she is able to perform her personal care with no difficulty and reported only physical limitations in regard to her ability to perform household chores.  The claimant stated she reads newspapers and magazines, the Bible and other books, keeps up with the mail, and does some reading online. She uses a computer for Facebook and email, takes public transportation independently, as that is how she arrived to their meeting.  Moreover, the claimant can make purchases, indicating an ability to handle money (Exhibit B8F).

Dr. Hamby noted during the mental status examination the claimant was well oriented in all spheres, polite and cooperative.  She made good eye contact and her attention span and

See Next Page

concentration were good, as no question had to be repeated.  Dr. Hamby noted the claimant did not appear to be distractible and her speech was adequate with no problems detected.  Her thought process appeared normal with no evidence of clouding or confusion, and she had an adequate memory, as she was a good historian, remembered her last meal and was able to repeat two of three simple objects after three minutes (Exhibit B8F).

The claimant reported life-long depression, and a history anxiety since 2010 that is triggered from worrying and thinking too much.  Her PTSD symptoms are the result of a New Year's Day 2001 robbery by two men, one of whom wanted to kill her before leaving.  PTSD symptoms include worsening and frequent nightmares and flashbacks (Exhibit B8F).

Based on his examination, Dr. Hamby diagnosed the claimant with major depressive disorder, recurrent, severe, without psychotic features, PTSD and anxiety disorder, and opined she would be able to understand, remember and carry out simple instructions.  He opined the claimant would be able to sustain her attention in order to complete simple tasks, have mild-to-moderate difficulty relating to supervisors and coworkers and would be at mild-to-moderate risk for psychiatric decompensation under stressful work conditions (Exhibit B9F).

However, during an August 4, 2017 clinic visit with primary care physician Dr. Sandra Robinson, the claimant reported that she-restarted Paxil 40mg daily, is doing well and feels like her symptoms are managed well, for which Dr. Robinson notes the claimant is to continue to follow with Dr. Haynes as needed (Exhibit B9F).

Although January 12, 2018 clinic notes reveal the claimant reported compliance with her medication, but worsening symptoms, such as nightmares, re-living traumatic events from the past and insomnia, she reported she has not followed up with her psychiatrist, as she is embarrassed.  Examining physician Dr. Caitlin Taylor prescribed Prazosin and sent a message to Dr. Haynes for a private visit in her office rather than in the clinic setting.  The claimant presented to Dr. Haynes on February 13, 2018, and notes she had prescribed Paxil, trazodone and amitriptyline for the claimant previously.  However, she notes this was in 2014, when she last saw the claimant, and notes the claimant is only taking the Paxil, and has not started the prazosin, which was recently prescribed by Dr. Robinson (Exhibit B12F).

Dr. Haynes notes the claimant reported she watches her grandson and is stressed by having to care for him.  The claimant reported dealing with traumatic memories of her mother's abusive behavior, difficulty falling sleep and fatigue. Dr. Haynes re-prescribed trazodone and recommended the claimant continue Paxil and start prazosin when ready (Exhibit B12F).

During a June 2018 clinic visit, the claimant reported to Dr. Taylor that medications have helped with nightmares for the most part and has helped with sleep.  However, she also reported she missed a follow-up appointment with Dr. Haynes (Exhibit B13F).  When the claimant presented to Dr. Haynes on July 31, 2018, clinic notes show the claimant reported depressed mood with intrusive thoughts, and that she had missed an appointment for housing.  However, the claimant also reported she had run out of her medication and restarted Paxil two weeks ago, for which Dr. Haynes advised on discontinuation syndrome if her medication is stopped abruptly, rather than to taper off (Exhibit B13F).

During an October 26, 2018 clinic visit with Dr. Taylor, clinic notes show the claimant recently tapered off Paxil and started Cymbalta, has not started taking prazosin due to headaches, is doing well with sleep with just melatonin, and feels like her mood symptoms have improved since her last visit (Exhibit B13F).

The Administrative Law Judge has determined the totality of the evidence shows that prior to October 18, 2018, in understanding, remembering, or applying information, the claimant has a mild limitation.  In interacting with others, and with regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations before the established onset date.  As for adapting or managing oneself, the claimant has experienced a moderate limitation before the established onset date.

The claimant's mental impairment(s) does not satisfy the paragraph "C" criteria of the applicable mental disorder listing(s).  As to the "C" criteria of Listing 12.04, the evidence does not reveal the claimant has a medically documented history of chronic affective disorder of at least two years' duration that has caused more than a minimal limitation in her ability to perform basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, or that she has experienced repeated episodes of decompensation, has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or changes in the environment has been predicted to cause her to decompensate, or that she has a current history of one or more years' inability to function outside a highly supportive arrangement.  Also, the claimant has required no psychiatric hospitalizations, has not attended or been referred to a partial hospitalization program nor has she resided in a halfway house or in any other highly supportive living arrangement due to a medically documented affective disorder (Exhibits B8F, B9F, B12F and B13F).

As to the "C" criteria of Listing 12.06, the evidence does not reveal the claimant experiences a complete inability to function independently outside the area of her home.  As discussed above, the claimant uses public transportation independently, as Dr. Hamby noted that is how she arrived to their meeting (Exhibit B8F).   In addition, progress notes and reports from treating and examining physicians do not contain any references that the claimant has problems interacting or communicating.

**4.   After careful consideration of the entire record, the undersigned finds that prior to October 18, 2018, the date the claimant became disabled, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can occasionally climb rope, ladders and scaffolds, ramps and stairs, and occasionally  stoop, kneel, and crawl; can frequently balance and crouch.  The claimant must avoid concentrated exposure to unprotected heights and hazardous machinery. She is not required to see at far distances in excess of 100 feet, limited to simple and repetitive tasks in low stress work setting, which I define as being limited to making only simple job related decisions, having no more than occasional over-the-shoulder supervision, and being subject to no more than a few (defined as no more than 3) gradually introduced changes to the daily work routine.  The claimant cannot perform conveyor belt work or fast-paced production work; can occasionally interact with supervisors and co-workers, and can**

See Next Page

**occasionally interact with the public.  Due to combination of impairments, the claimant will be off task up to five percent of the workday.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned considered other evidence in the record to determine if the claimant's symptoms limited the ability to do work-related activities.

The claimant alleged when she filed this application for supplemental security income that her ability to work was limited due to osteoarthritis, depression, anxiety and PTSD (Exhibit B2E).  In a Function Report and during testimony, the claimant states she experiences weakness in her arms, back and legs, daily headaches and that her hand and fingers lock in place when writing.  She is limited in her ability to stand, walk and sit for long periods, limited in her ability to lift heavy items and takes longer than usual to perform her personal care and household chores without assistance.  The claimant reports she suffers from depression, anxiety and PTSD, with symptoms that include loss of concentration, social isolation, fear of people walking behind her and anxiety attacks a couple of times a week (Exhibit B5E).

However, the clinical and objective findings are inconsistent with an individual experiencing totally debilitating symptomatology as described above.

During Dr. Charles Hamby's June 12, 2017 examination, he noted the claimant reported disability due to arthritis in her legs and arms, with back pain.  She also reported hand pain due to her hands locking and difficulty walking for long periods (Exhibit B9F).

The evidence shows the claimant has bilateral knee and hip arthritis, as confirmed by x-rays. However, treatment notes from Grady Hospital physician Dr. Meredith Lora reveals the claimant receives injections, and that she also experiences some relief with diclofenac cream and heat (Exhibit B5F).

See Next Page

During an August 2, 2018 well-woman examination, the claimant reported back pain that radiates down her legs to gynecologist Dr. Herschel Lawson, who advised the claimant to see her PCP for back pain issues (Exhibit B13F).

The claimant presented to Dr. Taylor on October 26, 2018, and clinic notes show she was found to have lumbar spinal stenosis.  Also noted is an October 18, 2018 magnetic resonance image (MRI) of the cervical and lumbar spine, which revealed multilevel degenerative changes of the cervical spine with notable disc osteophyte complex and severe spinal canal stenosis at C6-C7. Found on the lumbar spine MRI was multilevel degenerative changes with severe spinal stenosis at L3-L4, with effacement of the CSF, moderate to severe spinal canal stenosis at L2-L3 and L4-L5.  A neurosurgical follow-up was scheduled for October 30, 2018, and on this date, the claimant presented to neurosurgeon Dr. David Gimbel, who examined the claimant and recommended a C6/7 ACDF (cervical discectomy and fusion) surgery (Exhibit B13F).

The Administrative Law Judge also notes the claimant is obese as she stands 52 inches tall with her weight ranging from 198 to 209; thus, having a maximum body mass index (BMI) of 38.2, meeting the clinical definition of obesity (Exhibits B2E, B5F and B13F). The Administrative Law Judge has considered the claimant's obesity in accordance with SSR 19-2p, and has determined it does not have a significant impact on her other body systems or that it significantly affects her ability with ambulation, mobility or manipulation. Also, the progress notes and reports from treating and examining medical sources do not contain any references to problems or exacerbations of any body system as a result of obesity.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because although the evidence shows she reported many of her symptoms to treating and examining physicians, she also reported the ability to perform her activities of daily living, which includes using public transportation independently, and the ability to function cognitively and mentally, as she read frequently, used a computer and handled mail and her personal finances.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to October 18, 2018, for the reasons explained in this decision.

As for the opinion evidence, the opinions of Dr. Hamby are accorded great weight, as he is an examining specialist, and his opinions are supported by the claimant's reported activities of daily living, which show her relatively high level of mental functioning.

In reaching the above-stated residual functional capacity, the Administrative Law Judge recognizes that the state agency medical consultants who evaluated the evidence of record concluded the claimant is capable of performing work at the light exertional level and capable of performing the mental demands of work-like activities (Exhibits 1A and 3A).  However, these opinions are given little weight, as they are not consistent with the findings in the consultative examination.  In addition, the medical evidence shows the claimant as more capable than

See Next Page

assessed by the agency consultant's medical opinions until October 18, 2018 radiologic evidence of a cervical spine disorder., which requires surgery.

Accordingly, these opinions are given little weight prior to October 18, 2018, as they are not consistent with the other evidence in the record.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the totality of the evidence shows her high level of functioning, given her reported activities of daily living, which included caring for her grandson.

**5.   After careful consideration of the entire record, the undersigned finds that beginning on October 18, 2018, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant cannot reach overhead bilaterally, can occasionally climb ramps, ladders and scaffolds, ramps and stairs, stoop, kneel, and crawl and frequently balance and crouch.  The claimant must avoid concentrated exposure to unprotected heights and hazardous machinery and must not be required to see at far distances in excess of 100 feet.  She is limited to simple and repetitive tasks in low stress work setting, defined as limited to making only simple job related decisions, having no more than occasional over-the-shoulder supervision, and being subject to no more than a few (defined as no more than three) gradually introduced changes to the daily work routine.  The claimant cannot perform conveyor belt work or fast-paced production work, can occasionally interact with supervisors and co-workers, and can occasionally interact with the public.  Due to combination of impairments, the claimant will be off task up to five percent of the workday.**

In reaching this conclusion, the undersigned finds that beginning on October 18, 2018, the claimant's allegations regarding her symptoms and limitations are consistent with the evidence. The evidence shows the claimant reported right upper extremity weakness and numbness to all of her fingers, especially the middle three.  As a result, she has trouble picking up objects and drops things, has spasms that involve her entire hand and also has trouble with her balance.  As discussed previously, a cervical spine MRI revealed severe stenosis at C6-7 and an examination revealed a moderately positive Hoffman's reflex bilaterally.  On January 10, 2019, Dr. David Gimbel performed an anterior cervical discectomy, followed by occupational and physical therapy (Exhibits B14F and B15F).

It is important to note that the MRI completed in October, 2018 confirmed chronic microangiopathic ischemic changes in the brain; multilevel degenerative changes of the cervical spine with severe stenosis at C6-C7 and multilevel degenerative changes of the lumbar spin with severe spinal canal stenosis at L3-L4 with effacement of the CSF. (Exhibit B13F)  Unlike the clear disabling conditions identified in October, 2018, prior medical records from January and February, 2018  and from 2017 reported that the claimant was doing well; had no muscle weakness, joint stiffness, instability, redness or swelling.  The records reported that the claimant was performing daycare worker functions at home and had travelled cross-country to spend time with family in California.  (Exhibits B9F and B12F).

See Next Page

Subsequent treatment notes post-October, 2018 show the claimant continues to experience pain, for which she uses a TENS unit (Exhibit B15F).

The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are consistent with the objective medical evidence and other evidence that show a substantial change in her condition after October, 2018.  In fact, the evidence shows the claimant required surgery, but continues to experience pain for which she receives pain management (Exhibit B15F).

**6.   The claimant has no past relevant work (20 CFR 416.965).**

**7.   Prior to the established disability onset date, the claimant was a younger individual age 18-49.  Since the established disability onset date, the claimant's age category has changed to an individual of advanced age (20 CFR 416.963).**

**8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**9.   Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).**

**10.  Prior to October 18, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Prior to October 18, 2018, if the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.28.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations.  To determine the extent to which these limitations eroded the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual

See Next Page

would have been able to perform the requirements of representative occupations such as laundry worker, DOT 361.684-014, 57,500 jobs nationally, dishwasher, DOT 318.687-010, 388,000 jobs nationally and linen room attendant, DOT 222.387-030, 75,000 jobs nationally.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*.

Based on the testimony of the vocational expert, the undersigned concludes that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to October 18, 2018, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rule in the Medical-Vocational Guidelines.

**11. Beginning on October 18, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

Even if the claimant had the residual functional capacity for the full range of light work, a finding of "disabled" is directed by Medical-Vocational Rule 202.04.

**12. The claimant was not disabled prior to October 18, 2018, but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date (20 CFR 416.920(g)).**

## DECISION

Based on the application for supplemental security income protectively filed on November 29, 2016, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on October 18, 2018.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

/s/ *Juan E. Milanés*
_____
Juan E. Milanés
Administrative Law Judge

July 22, 2019
_____
Date

# LIST OF EXHIBITS

### Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO B1A | DDE-T16-PRFC by DDS MD | | 04/08/2017 | 13 |
| HO B2A | T16 Disability Determination Transmittal-Initial | | 07/06/2017 | 1 |
| HO B3A | DDE-T16-PRFC by DDS MD | | 07/26/2017 | 16 |
| HO B4A | T16 Disability Determination Transmittal-Recon | | 08/11/2017 | 1 |

### Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO B1B | Representative Fee Agreement | | 11/29/2016 | 1 |
| HO B2B | Appointment of Representative | | 11/29/2016 | 1 |
| HO B3B | T16 Notice of Disapproved Claim | | 07/06/2017 | 5 |
| HO B4B | Request for Reconsideration | | 07/13/2017 | 3 |
| HO B5B | T16 Interim Onset Notice | | 08/15/2017 | 3 |
| HO B6B | Request for Hearing by ALJ | | 08/22/2017 | 2 |
| HO B7B | Request for Hearing by ALJ | | 09/26/2017 | 3 |
| HO B8B | Request for Hearing Acknowledgement Letter | | 10/10/2017 | 15 |
| HO B9B | Objection to Video Hearing | | 10/11/2017 | 1 |
| HO B10B | Claimant's Change of Address Notification | | 11/14/2018 | 1 |
| HO B11B | Outgoing ODAR Correspondence | | 12/19/2018 | 8 |
| HO B12B | Hearing Notice | | 02/27/2019 | 26 |

HA-L39 (03-2007)

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO B13B | Acknowledge Notice of Hearing | | 03/04/2019 | 2 |
| HO B14B | Notice Of Hearing Reminder | | 06/14/2019 | 6 |
| HO B15B | Appointment of Representative | | 06/20/2019 | 2 |
| HO B16B | Representative Fee Agreement | | 06/20/2019 | 2 |

## **Non-Disability Development**

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO B1D | Application for Supplemental Security Income Benefits | | 12/13/2016 | 9 |
| HO B2D | Certified Earnings Records | | 06/21/2018 | 2 |
| HO B3D | Detailed Earnings Query | | 06/21/2018 | 1 |
| HO B4D | Summary Earnings Query | | 06/21/2018 | 1 |
| HO B5D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 06/21/2018 | 1 |
| HO B6D | Certified Earnings Records | | 06/04/2019 | 2 |
| HO B7D | Detailed Earnings Query | | 06/18/2019 | 1 |
| HO B8D | Summary Earnings Query | | 06/18/2019 | 1 |
| HO B9D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 06/18/2019 | 1 |
| HO B10D | MBR Query-Full | | 06/24/2019 | 2 |

## **Disability Related Development**

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO B1E | Disability Report - Field Office | | FO | to 12/13/2016 | 3 |
| HO B2E | Disability Report - Adult | | FO | to 12/13/2016 | 7 |

| Component No. | Description | | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO B3E | Disability Report - Appeals | | FO | to 07/13/2017 | 7 |
| HO B4E | Disability Report - Field Office | | FO | to 07/13/2017 | 2 |
| HO B5E | Function Report - Adult | | WILEY, ANITA | to 07/24/2017 | 8 |
| HO B6E | Disability Report - Appeals | | FO | to 08/18/2017 | 8 |
| HO B7E | Disability Report - Field Office | | FO | to 09/26/2017 | 2 |
| HO B8E | Disability Report - Appeals | | FO | to 09/26/2017 | 7 |
| HO B9E | Exhibit List to Rep PH2E | | HO | to 06/21/2018 | 5 |
| HO B10E | Resume of Vocational Expert | | Valerie E. Allen | 06/14/2019 to 06/14/2019 | 2 |
| HO B11E | Five Day Rule Letter | | | to 06/26/2019 | 2 |
| HO B12E | Medications | | CLAIMANT | to 06/28/2019 | 1 |

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO B1F | Progress Notes | | ST. JOSEPH'S HEALTH SYSTEM | 12/18/2006 to 02/14/2007 | 32 |
| HO B2F | Emergency Department Records | | ST. JOSEPH'S HEALTH SYSTEM | 01/17/2007 to 03/31/2012 | 19 |
| HO B3F | Hospital Records | | DEKALB MEDICAL CENTER | to 10/15/2014 | 27 |

| | | | | |
|---|---|---|---|---|
| HO B4F | Hospital Records | GRADY MEMORIAL HOSPITAL | 12/20/2006 to 11/11/2016 | 521 |
| HO B5F | Hospital Records | GRADY MEMORIAL HOSPITAL | 10/07/2014 to 12/05/2016 | 151 |
| HO B6F | Hospital Records | GRADY MEMORIAL HOSPITAL | 12/21/2016 to 05/12/2017 | 82 |
| HO B7F | Hospital Records | GRADY MEMORIAL HOSPITAL | 01/17/2017 to 05/12/2017 | 35 |
| HO B8F | Consultative Examination Report | CHARLES STEPHEN HAMBY PHD | to 06/12/2017 | 8 |
| HO B9F | Hospital Records | GRADY MEMORIAL HOSPITAL | 08/04/2017 to 08/04/2017 | 10 |
| HO B10F | Office Treatment Records | HEALTH DEPARTMENT | to 08/08/2017 | 2 |
| HO B11F | Hospital Records | GRADY MEMORIAL HOSPITAL | 08/04/2017 to 12/20/2017 | 17 |
| HO B12F | Hospital Records | GRADY MEMORIAL HOSPITAL | 01/02/2018 to 02/13/2018 | 18 |
| HO B13F | Outpatient Hospital Records | Grady Memorial Hospital | 04/07/2007 to 10/30/2018 | 48 |
| HO B14F | Outpatient Hospital Records | GRADY HOSPITAL | 11/08/2018 to 01/25/2019 | 49 |
| HO B15F | Progress Notes | Grady Hospital | 02/06/2019 to 06/13/2019 | 343 |