# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
10155 Eagle Drive
Covington, GA 30014-3804

Date: July 19, 2019

Shanta Favors on behalf of
Joshua Tavion Favors
4016 Gladesworth Lane
Decatur, GA 30035

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. If you disagree with my decision, you should file an appeal within 60 days.

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general

Form HA-L76-OP2 (03-2010)

Joshua Tavion Favors

Page 3 of 3

questions about social security.  You may also call (800) 772-1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (877)626-9909.  Its address is:

Social Security
3554 Covington Hwy
Decatur, GA 30032-1850

Joseph Bestul
Administrative Law Judge

Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)

cc:     Kathleen Flynn
        315 W. Ponce De Leon
        Avenue, Suite 940
        Decatur, GA 30030

Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

<u>**IN THE CASE OF**</u>                                    <u>**CLAIM FOR**</u>

Joshua Tavion Favors_____          Supplemental Security Income_____
(Claimant)

_____          _____
(Wage Earner)                                   (Social Security Number)

## <u>JURISDICTION AND PROCEDURAL HISTORY</u>

On December 29, 2016, an application for supplemental security income was protectively filed on behalf of the claimant, a child under age 18, with an alleged disability onset date of May 21, 2015. The claim was denied initially on October 24, 2017, and upon reconsideration on February 7, 2018. Thereafter, the claimant filed a written request for hearing on February 13, 2018 (20 CFR 416.1429 *et seq.*). The claimant and his mother, Shanta Favors, appeared and testified at a hearing held on May 1, 2019, in Covington, Georgia. Michael C. Dorsey, an impartial vocational expert, also appeared and testified at the hearing. The claimant's main representative is Kathleen Flynn, an attorney. Francine McQueen, an attorney, represented the claimant at the hearing.

The claimant previously filed an application for supplemental security income on August 22, 2013. This claim was denied on initial determination November 25, 2013 and reconsideration January 2, 2014. These denials were affirmed at the hearing level in an unfavorable decision by an Administrative Law Judge dated May 20, 2015. The Appeals Council denied the claimant's request for review on September 26, 2016. (Exhibit B2A). The U.S. District Court for the Northern District of Georgia affirmed the May 20, 2015 decision on March 14, 2018. (Exhibit B8A/B9A).

If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 416.1435(a)). Pursuant to 20 CFR 416.1435(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned

See Next Page

Joshua Tavion Favors

Administrative Law Judge finds that the requirements of 20 CFR 416.1435(b) are satisfied and admits this evidence into the record.

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(C) of the Social Security Act. An individual under the age of 18 will be considered disabled if he has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Notwithstanding the above, no individual under the age of 18 who engages in substantial gainful activity may be considered to be disabled.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since December 29, 2016, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled (20 CFR 416.924(a)).

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity. Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in substantial gainful activity (20 CFR 416.974 and 416.975). If the claimant engages in SGA, he is not disabled regardless of his medical condition(s), age, education, or work experience (20 CFR 416.924(b)). If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.924(a)). For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations (20 CFR 416.924(c)). If the claimant does not have a severe medically determinable severe

See Next Page

impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment(s), the analysis proceeds to the third step (20 CFR 416.924(a)).

At step three, the undersigned must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of a listing, or that functionally equals the listings.  In making this determination, the undersigned must consider the combined effect of all medically determinable impairments, even those that are not severe (20 CFR 416.923, 416.924a(b)(4), and 416.926a(a) and (c)).  If the claimant has an impairment or combination of impairments that meets or medically equals the severity of, or functionally equals, the listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled.  If not, the claimant is not disabled (20 CFR 416.924(d)).

In determining whether an impairment or combination of impairments functionally equals the listings, the undersigned must assess the claimant's functioning in terms of six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  In making this assessment, the undersigned must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments.  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain (20 CFR 416.926a(d)).

In assessing whether the claimant has "marked" or "extreme" limitations, the undersigned must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe (20 CFR 416.926a(a)).  The undersigned must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain (20 CFR 416.926a(c)).

Social Security regulation 20 CFR 416.926a(e)(2) explains that a child has a "marked limitation" in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities.  A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  The regulations also explain that a "marked" limitation also means:

1.  A limitation that is "more than moderate" but "less than extreme."

2.  The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

3.  A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

See Next Page

4. For the domain of health and physical well-being, frequent episodes of illnesses because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur: (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times in a year or once every 4 months, but not lasting for 2 weeks; or (c) less often than an average of 3 times a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

Social Security regulation 20 CFR 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairments(s) limit several activities. The regulations also explain that an "extreme" limitation also means:

1. A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.    The claimant was born on September 19, 2001.  Therefore, he was an adolescent on December 29, 2016, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).**

**2.    The claimant has not engaged in substantial gainful activity since December 29, 2016, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).**

**3.    The claimant has the following severe impairments: depression and attention deficit hyperactivity disorder (ADHD) (20 CFR 416.924(c)).**

A severe impairment is more than a slight abnormality or a combination of slight abnormalities that causes more than minimal functional limitations (20 CFR 416.924(c)). After considering the

evidence of record, the undersigned finds that the above medically determinable impairments are severe.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).**

The severity of the claimant's impairment does not meet or medically equal the criteria of any impairment listed in sections 112.04 (depressive, bipolar, and related disorders) and 112.11 (neurodevelopmental disorders).

Listings 112.04 and 112.11 are not met, because the record does not show an extreme limitation of one or marked limitation of two of the following areas of mental functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; or 4) adapting or managing oneself.

Education records and pediatric treatment notes documenting average intelligence, appropriate peer interactions, stable attention and concentration, and the ability to independently care for his needs and perform age-appropriate hygiene tasks does not support two marked or one extreme limitation in these areas. (Exhibits B20E/3; B16F/10-11; B17F/5; B18F/18; B20F/8; B22F/15).

Listing 112.04(C) is not met, because the medical record does not show that he requires medical treatment, mental health therapy, psychosocial support, or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of his mental disorder; and marginal adjustment, or minimal capacity to adapt to changes in his environment or demands that are not already part of his daily life.

In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis. The claimant has the following degrees of limitation in the four broad areas of mental functions set out in the disability regulations for evaluating mental disorders and in the mental disorder listings in 20 C.F.R., Part 404, Subpart P, Appendix 1: moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself.

**5.   The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).**

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record. "All of the relevant evidence" includes

objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

As provided in 20 CFR 416.926a(b) and (c) and explained in SSR 09-1p, the undersigned has evaluated the "whole child" in making findings regarding functional equivalence. The undersigned has first evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments. The undersigned has also assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains. In evaluating the claimant's limitations, the undersigned has considered the type, extent, and frequency of help the claimant needs to function.

In determining the degree of limitation in each of the six functional equivalence domains, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned has considered the medical source opinions in accordance with 20 CFR 416.927.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine the claimant's functional limitations.

The claimant's mother, Shanta Favors, alleges that the claimant is unable to perform age-appropriate functions due to the effects of his severe impairments. Ms. Favors testified that the claimant has impulse and anger issues. She stated that he does not finish his work and requires reminders to complete chores. She stated that he is not receiving the help he needs from his school, and is not on track to graduate. She also stated that he gets in fights with peers and has been suspended from school.

The claimant testified that he has problems with memory and concentration. He stated that he is failing geometry and close to failing other classes. He stated that his mood is up and down and that he has a low appetite and increased need for sleep. He stated that he needs reminders to

See Next Page

complete household chores. He testified that he has had hallucinations every two weeks since his father died.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant has received outpatient therapy for behavioral problems at home and school. (Exhibit B5F). He stopped attending therapy after the unexpected death of his stepfather, and resumed treatment in late 2016 due to his mother's complaints of insubordinate behavior at home. (Exhibits B7F/6; B12F/84). However, she noted that the claimant's school had not complained about his behavior. (Exhibit B7F/6).

The record reflects further gaps in treatment during 2017. He sought to restart outpatient therapy for depression during July 2017. (Exhibit B4F). The claimant reported having problems focusing and sustaining attention in school. His mother also reported that he had anger issues and outbursts. Treatment notes show that the claimant was not on medication for depression or ADHD.

The claimant did not restart medication or therapy until he was hospitalized on multiple occasions for suicidal ideation during 2018. Medical records from Children's Healthcare of Atlanta show that the claimant presented to the hospital during March 2018 after expressing a desire to hurt himself following an argument with his mother. (Exhibits B16F/5-9, 18; B24F/1). He denied experiencing hallucinations.

During October 2018, the claimant presented to the hospital again with suicidal and homicidal ideation, as well as visual and auditory hallucinations instructing him to harm his sister. (Exhibit B24F/9). The claimant was involuntarily hospitalized for nine days. (Exhibit B17F).

On follow-up, his treatment provider recommended that the claimant restart mental health treatment, including group therapy. (Exhibit B15F/9, 15). The claimant reported increased grief related to the recent death of an infant sibling. His mother expressed concerns about academic struggles. The claimant did not present with behavioral problems or hallucinations at his psychological assessment appointment.

At a well-child examination the following month, the claimant exhibited normal attention, behavior, and confidence. (Exhibit B23F/1). He reported completing homework regularly and having friends and ways to cope with stress. At his November 2018 therapy appointment, his treatment provider noted he had self-esteem issues from bullying, but that he was responding well to rapport building and was much more willing and able to acknowledge and address difficult thoughts and feelings. (Exhibit B19F/11, 14).

The claimant was hospitalized again from December 29, 2018 until January 7, 2019 due to hallucinations and thoughts of hurting himself. (Exhibits B18F; B24F/18-19). Hospital records

See Next Page

show that the claimant had not been taking his medications.  He was restarted on Prozac and Risperdal.

The claimant's therapy treatment remained inconsistent after his discharge. (Exhibit B19F/21). When the claimant attended treatment and remained compliant with medication, he reported improved mood stability. (Exhibit B19F/32-34). The claimant's therapist emphasized the need for consistent care and recommended CORE in-home services to assist with the claimant's ability to maintain behavioral health treatment; however, his mother declined. (Exhibit B19F/34).

Therapy records from March 2019 and April 2019 continue to document inconsistent treatment. (Exhibits B20F; B22F/4-11).  He responded positively to therapeutic interventions and appeared motivated to improve his ability to regulate his emotions to prevent further hospitalizations.

Overall, the record indicates that the claimant responds well to medication and therapy treatment. The record does not document frequent reports of hallucinations or delusions. (Exhibits B12F/70; B14F/4; B24F/1).  He is able to interact well with peers and medical personnel during regular treatment appointments and hospital visits. (Exhibits B16F/10; B17F/5).  Exacerbations with the claimant's depressive symptoms occurred when he was noncompliant with medication and therapy recommendations.

The record also indicates that the claimant's frequent absences have interfered with the claimant's academic progress to a greater extent than ADHD symptoms. Since the application date, the claimant's teachers have reported that his school performance is negatively affected by the frequency of the claimant's unexcused absences. (Exhibits B8E; B13E/9-10; B20E/10; B25E).

During his eighth-grade year, his science teacher noted that his absences and failure to complete assignments greatly impacted his grade. (Exhibit B13E/9-10).  His teacher noted that the claimant was a hard worker whose grades would improve if he attended school regularly, which would allow him to complete more classroom assignments. His general education teacher also noted that he missed an excessive amount of days during the 2016-2017 school year. While his individualized education plan (IEP) notes some problems with focus and attention, he did not require a behavioral intervention plan for distracting or hyperactive behaviors. (Exhibits B4E/6; B13E/9-10).

Grade reports from his ninth-grade year show that he was failing science class, but received As, Bs, and Cs in other courses. (Exhibit B16E/4). The record indicates that the claimant began medication treatment for depression and ADHD symptoms during his 10th-grade year. (Exhibit B20E/3). He continued to receive IEP services and accommodations.  His IEP notes that he could follow written and oral directions, but required additional time to complete tasks, as well as redirection. His 10th-grade science teacher noted that he was frequently absent from class and failed to complete homework and makeup work. (Exhibit B25E).  His grade report shows that he performed well on many assignments that he completed, but was missing several assignments. Notably, the claimant remains on track to complete coursework towards a general education diploma. (Exhibit B13E/4).  Mental status examinations show normal cognitive functioning and average intelligence. (Exhibits B18F/18; B20F/8).

See Next Page

As for the opinion evidence, the record includes opinions from multiple teachers. Kevin Rogers reported that the claimant had mostly "slight" or no problem in each of the domains, aside from some "obvious" problems acquiring and using information and attending and completing tasks. (Exhibit B23E). Alleshia Mazyck reported that the claimant had "slight," "obvious" and "serious" problems in the domains of acquiring and using information and attending and completing tasks, with minimal problems in the other domains. (Exhibit B22E). David Watts reported that the claimant had no problem in any domain, aside from a serious problem complying with classroom rules to change into his physical education uniform on a consistent basis. (Exhibit B21E). Ms. Wright, a case manager, reported that the claimant had "slight" to "serious" problems in the domain of attending and completing tasks, with minimal limitations in all other domains. (Exhibit B10E).

As teachers, these individuals are familiar with the functioning of similarly aged children without severe impairments. They have based their opinions on observations of the claimant in an academic setting. Their reports are given partial weight, to the extent their observations are consistent with the medical evidence of record. For example, their reports of problems in the domains of acquiring and using information and attending and completing tasks are consistent with IEPs noting that the claimant has academic accommodations for deficits in reading comprehension, and requires additional time to complete tasks and redirection. (Exhibits B4E; B13E; B20E). Behavioral health records support some additional limitation in the domain of caring for self. (Exhibits B19F; B24F).

The record also includes Global Assessment of Functioning (GAF) scores. (Exhibit B12F). GAF scores are snapshot assessments that reflect the claimant's presentation on the exact day he presented before a particular mental health clinician, but do not reflect his overall level of functioning. Unless a clinician clearly explains the reasons behind a GAF score and the period to which the score applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Additionally, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V), no longer recognizes GAF scores. As such, the undersigned accords these scores little weight.

State-agency psychiatric consultant Aroon Suansilppongse, M.D., found that there was insufficient evidence to evaluate his claim. (Exhibit B4A). This opinion is given no weight, as evidence received at the reconsideration and hearing levels support the severity of the claimant's mental impairments.

State-agency psychological consultant Michelle Wierson, Ph.D., opined that the claimant had no limitation in the domains of moving about and manipulating objects and health and physical well being, with less than marked limitation in all other domains. (Exhibit B6A). The opinion of Dr. Wierson is given great weight. Her opinion is generally consistent with the overall evidence of record, which documents normal social interactions, no signs of chronic physical symptoms, improvements in depressive symptoms with treatment, and a capacity for academic achievement when the claimant applies effort to attend school and complete assignments. However, hospital records documenting inpatient treatment for depressive symptoms support a greater limitation in the domain of caring for self.

See Next Page

In terms of the six functional equivalence domains, the undersigned finds the following regarding limitations caused by the claimant's impairments:

### a.  Acquiring and Using Information

Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information he has learned.  This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community (20 CFR 416.926a(g) and SSR 09-3p).

Social Security rules provide that an adolescent (i.e., a child age 12 to attainment of age 18) without an impairment should continue to demonstrate in middle and high school what he has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). The child should also be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). The child should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). The child should also learn to apply these skills in practical ways that will help him enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).  The child should be able to plan ahead for future activities and begin realistic occupational planning (20 CFR 416.926a(g)(2)(v) and SSR 09-3p).

Social Security regulation 20 CFR 416.926a(g)(3) and SSR 09-3p set forth some examples of limited functioning in this domain that children of different ages might have.  The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers (e.g., learning to count, reciting ABCs, scribbling); (vi) has difficulty comprehending written or oral directions; (vii) struggles with following simple instructions; (viii) has difficulty solving mathematics questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what he means.

<u>The claimant has less than marked limitation in acquiring and using information.</u>

His mother testified that the claimant is not on track to graduate and does not receive adequate academic assistance from his school. The claimant testified that he is failing geometry and close to failing his other classes. He has an IEP that provides for academic accommodations such as extended time and small group settings for tests, as well as speech and language services. (Exhibit B13E/7). The claimant's grades have ranged from As to Fs. (Exhibit B8E).  His teachers

have noted his mother's concern about the adequacy of his IEP services. (Exhibit B13E/9-10). However, his education records have consistently stated that his grades are negatively impacted by his frequent absences. The claimant's teachers noted that the claimant's grades would rise if he completed assignments and attended class. The claimant has not been retained since the application date. His IEP notes that he remains on track for a general education degree, and he has not required extended school year services. (Exhibits B13E). The claimant receives academic instruction within the general education program setting. (Exhibit B8F/59). Mental status examinations show that the claimant has normal memory and average intelligence. (Exhibit B18F/18; B20F/8). The claimant understands how to play video games and complete chores. (Hearing Testimony). Additionally, the claimant has been able to understand and apply coping mechanisms learned in therapy. (Exhibit B22F). Thus, the overall evidence of record supports less than marked limitation in this domain (SSR 09-3p).

### b. Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time (20 CFR 416.926a(h) and SSR 09-4p).

Social Security rules provide that an adolescent without an impairment should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The child should also be able to organize his materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, the child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting (20 CFR 416.926a(h)(2)(v) and SSR 09-4p).

Social Security regulation 20 CFR 416.926a(h)(3) and SSR 09-4p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

The claimant has less than marked limitation in attending and completing tasks.

See Next Page

Ms. Favors testified that the claimant is frequently distracted and does not finish his work. She stated that he requires reminders to complete chores at home. The claimant testified that he has problems with concentration. His IEP notes problems with failing to complete work at school and excessive absences. (Exhibit B13E; B20E). The claimant's mental health treatment does not account for the number of unexcused absences in his record. (Exhibits B8E; B25E). The claimant's IEP also notes that he is capable of following written and oral directions. (Exhibit B20E/3). Mental status examinations document normal attention and concentration. (Exhibits B16F/11; B22F/15; B23F/1). Additionally, he is able to sustain concentration and attention to watch television and play video games. (Hearing Testimony). He is also able to sustain attention to learn songs and participate in choir at school. The claimant's IEP notes that his behavior does not impede the learning of others, and that he did not require a behavioral intervention plan. (Exhibit B20E/3). Thus, the record supports less than marked limitation in this domain (SSR 09-4p).

### c.  Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community (20 CFR 416.926a(i) and SSR 09-5p).

Social Security rules provide that an adolescent without an impairment should be able to initiate and develop friendships with children of the same age and to relate appropriately to other children and adults, both individually and in groups. The child should focus less attention on parents and more on relationships with peers, and develop an increasing desire for privacy. The child should be increasingly able to solve conflicts with peers, family members or adults outside of the family. The child should also recognize that there are different social rules for dealing with his friends and acquaintances than with adults (e.g., behaving casually with friends but more formally with people in authority). The child should be able to intelligibly express his feelings, ask for assistance, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers) (20 CFR 416.926a(i)(2)(v) and SSR 09-5p).

Social Security regulation 20 CFR 416.926a(i)(3) and SSR 09-5p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others

See Next Page

(e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

<u>The claimant has less than marked limitation in interacting and relating with others.</u>

His mother testified that he has anger and impulse issues, and often has confrontations with his siblings and peers at school. However, the claimant testified that he enjoys spending time with friends and attending parties. He is also able to participate in school choir. He has been able to participate in team sports such as basketball and soccer. (Exhibit B7F/1). Mental status examinations show good eye contact and cooperative behavior with treatment providers and peers. (Exhibit B12F/70; B15F/15; B16F/10; B17F/5; B19F/14). He was able to participate in group therapy without incident during his hospital stay. He has received few disciplinary infractions since the application date. (Exhibit B16E; B24E; B25E). His IEP notes that the claimant's behavior does not impede the learning of others, and he does not require a functional behavioral assessment. (Exhibit B13E; B20E/3). His speech pathologist noted that the claimant's speech is 100 percent intelligible in known and unknown contexts. (Exhibit B21F). While the claimant had difficulty understanding the meaning of some words and using figurative language, he demonstrated strengths in articulation, fluency, and pragmatic language and social skills. Therefore, the claimant has less than marked limitation in this domain (SSR 09-5p).

### d. Moving About and Manipulating Objects

This domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. These activities may require gross motor skills, fine motor skills, or a combination of both. Limitations in this domain can be associated with musculoskeletal and neurological impairments, other physical impairments, medications or treatments, or mental impairments (20 CFR 416.926a(j) and SSR 09-6p).

Social Security rules provide that an adolescent should be able to use his motor skills to move freely and easily at home, at school, and in the community. The child should be able to participate in a full range of individual and group physical fitness activities. The child should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard (20 CFR 416.926a(j)(2)(v) and SSR 09-6p).

Social Security regulation 20 CFR 416.926a(j)(3) and SSR 09-6p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in moving about and manipulating objects are: (i) difficulty with motor activities (e.g., stumbling, unintentionally dropping things) because of muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia); (ii) difficulty with balance or climbing up and down stairs, or jerky or disorganized locomotion; (iii) difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); (iv) difficulty with sequencing hand or finger movements (e.g., using utensils or manipulating buttons); (v)

See Next Page

difficulty with fine motor movement (e.g., gripping or grasping objects); or (vi) poor eye-hand coordination when using a pencil or scissors.

<u>The claimant has no limitation in moving about and manipulating objects.</u>

Pediatric treatment records do not show problems with fine and gross motor skills. (Exhibit B16F/10). The claimant has been able to participate in track, basketball, soccer, and play video games. (Hearing Testimony; Exhibit B7F/1). His teachers reported no problem in this area. (Exhibits B10E; B21E; B22E; B23E). Therefore, the overall record supports no limitation in this domain (SSR 09-6p).

### e.  Caring for Yourself

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area (20 CFR 416.926a(k) and SSR 09-7p).

Social Security rules provide that an adolescent without an impairment should feel more independent from others and should be increasingly independent in all of his day-to-day activities. The child may sometimes experience confusion in the way he feels about himself. The child should begin to notice significant changes in his body's development, and this can result in anxiety or worrying. Sometimes these worries can make the child feel angry or frustrated. The child should begin to discover appropriate ways to express his feelings, both good and bad (e.g., keeping a diary to sort out angry feelings, exercising, or listening to music to calm down). The child should begin to think seriously about his future plans (e.g., work), and what he will do upon completing school. The child should maintain personal hygiene adequately (e.g., bathing, brushing teeth, wearing clean clothing appropriate for weather and context). The child should take medications as prescribed (20 CFR 416.926a(k)(2)(v) and SSR 09-7p).

Social Security regulation 20 CFR 416.926a(k)(3) and SSR 09-7p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth (e.g., dirt, chalk); (ii) often uses self-soothing activities that are developmentally regressive (e.g., thumb-sucking or re-chewing food); (iii) does not feed, dress, toilet, or bathe self age-appropriately; (iv) engages in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or interests (e.g., listening to music, reading a book); (vi) has restrictive or stereotyped mannerisms (e.g., head banging, body rocking); or (vii) has disturbances in eating or sleeping patterns.

<u>The claimant has marked limitation in the ability to care for himself.</u>

See Next Page

The record indicates that the claimant has some problems with coping with emotions and managing frustration.  He has had three hospital visits for suicidal ideation. (Exhibit B16F; B17F; B18F; B19F; B24F).  However, the record shows that he does not take his medication as directed or attend treatment consistently. (Hearing Testimony; Exhibit B22F).  With treatment, the claimant experienced stabilized mood and improvements at school and home. (Exhibit B19F/32-33).  His therapist noted that he responded positively to interventions, and was able to better manage his stress and frustration. (Exhibit B22F).  The claimant's education records do not document frequent outbursts, or frequent displays of anger or physical aggression at school.  The record indicates that the claimant can manage self-care needs, identify coping skills, process information, and express himself. (Exhibit B17F/5).  His speech therapist also noted that he could express his wants and needs independently. (Exhibit B21F).   The claimant is also able to engage in hobbies. (Hearing Testimony). His teachers described mostly "none" to "slight" issues in this area. (Exhibits B10E; B21E; B22E; B23E). Therefore, the claimant has no more than marked limitation in this domain (SSR 09-7p).

## f.  Health and Physical Well-Being

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects.  Unlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning.  The "Health and Physical Well-Being" domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being (20 CFR 416.929a(l) and SSR 09-8p).

Social Security regulation 20 CFR 416.926a(l)(3) and SSR 09-8p set forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain.  Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of need for frequent treatment or therapy (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) periodic exacerbations from an impairment(s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia); or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

The claimant has no limitation in health and physical well-being.

The record does not show that the claimant has had frequent absences from school for medical appointments or pain complaints.  Aside from noting treatment for acute ailments, his physical examinations are generally normal. (Exhibits B6F/2-4, 8, 14; B14F/6; B16F/6).  His IEP does not provide for accommodations for any physical issue. Additionally, the claimant has not required

frequent emergency medical treatment for any physical ailment.  Therefore, the claimant has no limitation in this domain (SSR 09-8p).

Overall, the medical evidence, evaluations, testimony and opinions do not support a finding of disability.  Although the claimant's impairments impose some limitations he does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning

**6.    The claimant has not been disabled, as defined in the Social Security Act, since December 29, 2016, the date the application was filed (20 CFR 416.924(a)).**

## DECISION

Based on the application for supplemental security income protectively filed on December 29, 2016, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act.

/s/ *Joseph Bestul*

Joseph Bestul
Administrative Law Judge

July 19, 2019
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO B1A | ALJ Hearing Decision | | 05/20/2015 | 23 |
| HO B2A | AC Denial | | 09/26/2016 | 6 |
| HO B3A | Complaint | | 02/02/2017 | 35 |
| HO B4A | DDE T16 Initial; No CDE; No RFC | | 10/23/2017 | 12 |
| HO B5A | Initial Disability Determination by State Agency, Title XVI | | 10/23/2017 | 1 |
| HO B6A | DDE T16 Recon; CDE DDS PhD; No RFC | | 02/05/2018 | 19 |
| HO B7A | Reconsideration Disability Determination by State Agency, Title XVI | | 02/05/2018 | 1 |
| HO B8A | Decision of U.S. District Court | | 03/14/2018 | 57 |
| HO B9A | Decision of U.S. District Court | | 03/14/2018 | 1 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO B1B | Appointment of Representative- Flynn, Kathleen | | 12/29/2016 | 2 |
| HO B2B | Representative Fee Agreement | | 12/29/2016 | 2 |
| HO B3B | Representative Correspondence | | 12/29/2016 | 2 |
| HO B4B | T16 Notice of Disapproved Claim | | 10/24/2017 | 4 |
| HO B5B | Request for Reconsideration | | 11/06/2017 | 3 |
| HO B6B | T16 Disability Reconsideration Notice | | 02/07/2018 | 5 |

HA-L39 (03-2007)

Joshua Tavion Favors                                        Page 2 of 6

| | | | |
|---|---|---|---|
| HO B7B | Request for Hearing by ALJ | 02/13/2018 | 3 |
| HO B8B | Request for Hearing Acknowledgement Letter | 02/21/2018 | 15 |
| HO B9B | Objection to Video Hearing | 02/22/2018 | 1 |
| HO B10B | Hearing Notice | 08/16/2018 | 25 |
| HO B11B | Hearing Notice | 01/30/2019 | 29 |
| HO B12B | Notice Of Hearing Reminder | 04/17/2019 | 6 |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO B1D | Application for Supplemental Security Income Benefits (Abbreviated) | | 12/29/2016 | 10 |
| HO B2D | Application for Supplemental Security Income Benefits | | 01/03/2017 | 6 |
| HO B3D | Certified Earnings Records | | 05/18/2018 | 1 |
| HO B4D | Detailed Earnings Query | | 05/31/2018 | 1 |
| HO B5D | Summary Earnings Query | | 05/31/2018 | 1 |
| HO B6D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 05/31/2018 | 2 |
| HO B7D | Certified Earnings Records | | 04/26/2019 | 1 |
| HO B8D | Detailed Earnings Query | | 04/26/2019 | 1 |
| HO B9D | Summary Earnings Query | | 04/26/2019 | 1 |
| HO B10D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 04/26/2019 | 2 |

## Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|

HA-L39 (03-2007)

Joshua Tavion Favors                                    Page 3 of 6

| HO B1E | Education Records - Non Medical | Atlanta Public Schools 2009- 2014 School Years | 03/01/2009 to 12/04/2013 | 35 |
| HO B2E | Individualized Education Plan | DeKalb County School District | to 05/05/2014 | 17 |
| HO B3E | Education Records - Non Medical | DeKalb County School District | 03/02/2014 to 03/02/2015 | 22 |
| HO B4E | Individualized Education Plan | Columbia Middle School/DeKalb County Schools | 02/24/2014 to 12/05/2016 | 73 |
| HO B5E | HIT Request | MegaHit FO | to 01/04/2017 | 1 |
| HO B6E | Disability Report - Field Office | Decatur, GA FO | to 01/04/2017 | 3 |
| HO B7E | Disability Report - Child | Favors, Shanta- Mother | to 01/04/2017 | 7 |
| HO B8E | Education Records - Non Medical | Columbia Middle School | to 01/04/2017 | 9 |
| HO B9E | Education Records - Non Medical | DeKalb County Schools 2013- 2014 School Years | to 01/27/2017 | 2 |
| HO B10E | Teacher Questionnaire | Ms. Wright- Case Manager | to 01/27/2017 | 8 |
| HO B11E | Disability Report - Field Office | Decatur, GA FO | to 11/07/2017 | 2 |
| HO B12E | Disability Report - Appeals | Flynn, Kathleen- Rep | to 11/07/2017 | 7 |
| HO B13E | Education Records - Non Medical | Columbia Middle School/DeKalb County Schools | 02/24/2014 to 12/01/2017 | 49 |
| HO B14E | Disability Report - Field Office | Decatur, GA FO | to 02/14/2018 | 2 |

HA-L39 (03-2007)

Joshua Tavion Favors                                                   Page 4 of 6

| | | | | |
|---|---|---|---|---|
| HO B15E | Disability Report - Appeals | Flynn, Kathleen-Rep | to 02/14/2018 | 7 |
| HO B16E | Education Records - Non Medical | DeKalb County School District | to 03/05/2018 | 7 |
| HO B17E | Exhibit List to Rep PH2E | Covington OHO | to 06/01/2018 | 11 |
| HO B18E | Education Records - Non Medical | MILLER GROVE HIGH SCHOOL | 03/20/2018 to 03/20/2018 | 1 |
| HO B19E | Education Records - Non Medical | DEKALB COUNTY SCHOOL DISTRICT | 03/20/2018 to 03/20/2018 | 1 |
| HO B20E | Individualized Education Plan | DEKALB COUNTY SCHOOL DISTRICT | 11/28/2018 to 11/28/2018 | 12 |
| HO B21E | Teacher Questionnaire | MILLER GROVE HIGH SCHOOL | 12/03/2018 to 12/03/2018 | 10 |
| HO B22E | Teacher Questionnaire | MILLER GROVE HIGH SCHOOL | 12/03/2018 to 12/03/2018 | 10 |
| HO B23E | Teacher Questionnaire | MILLER GROVE HIGH SCHOOL | 12/03/2018 to 12/03/2018 | 10 |
| HO B24E | Education Records - Non Medical | MILLER GROVE HIGH SCHOOL | 03/21/2019 to 03/21/2019 | 1 |
| HO B25E | Education Records - Non Medical | DEKALB COUNTY SCHOOL SYSTEM | 03/29/2019 to 03/29/2019 | 3 |
| HO B26E | Representative Correspondence | | 04/24/2019 to 04/24/2019 | 2 |
| HO B27E | Resume of Vocational Expert | Kim Bates | to 04/26/2019 | 2 |

**Medical Records**

HA-L39 (03-2007)

Joshua Tavion Favors                                                    Page 5 of 6

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO B1F | Treating Source Statement | | DeKalb CSB | to 06/12/2014 | 1 |
| HO B2F | Education Records - Medical | | DeKalb County School System | 09/16/2014 to 09/25/2014 | 4 |
| HO B3F | Individualized Education Plan | | DeKalb County School District | to 10/28/2014 | 19 |
| HO B4F | Outpatient/Inpatient Rehabilitation Records | | Dekalb CSB | to 08/30/2016 | 7 |
| HO B5F | Outpatient/Inpatient Rehabilitation Records | | Winn Way MHC | 09/25/2014 to 09/16/2016 | 56 |
| HO B6F | Office Treatment Records | | Family Health Centers of Georgia | 05/31/2013 to 10/21/2016 | 37 |
| HO B7F | Outpatient/Inpatient Rehabilitation Records | | Winn Way MHC | 09/07/2016 to 10/26/2016 | 11 |
| HO B8F | Education Records - Medical | | DeKalb County School System | 02/24/2014 to 12/05/2016 | 197 |
| HO B9F | HIT Response | | DeKalb County Board of Health | to 01/04/2017 | 1 |
| HO B10F | Medical Source - No MER Available | | DeKalb County Board of Health | to 01/20/2017 | 2 |
| HO B11F | Medical Source - No MER Available | | DeKalb County Board of Health | to 01/30/2017 | 2 |
| HO B12F | Outpatient/Inpatient Rehabilitation Records | | Winn Way MHC | 12/11/2014 to 01/30/2017 | 94 |
| HO B13F | Medical Source - No MER Available | | Family Health Centers of Georgia | to 11/06/2017 | 3 |
| HO B14F | Progress Notes | | Family Health Centers of Georgia | to 01/05/2018 | 8 |

HA-L39 (03-2007)

Joshua Tavion Favors                                                              Page 6 of 6

| | | | | |
|---|---|---|---|---|
| HO B15F | Office Treatment Records | Dekalb Community Service Board | 10/26/2018 to 10/31/2018 | 17 |
| HO B16F | Hospital Records | Lakeview Behavioral Health Hospital | 03/08/2018 to 03/08/2018 | 25 |
| HO B17F | Office Treatment Records | Ridgeview Institute Monroe | 10/01/2018 to 10/09/2018 | 185 |
| HO B18F | Hospital Records | Summit Ridge Hospital | 12/29/2018 to 01/07/2019 | 19 |
| HO B19F | Office Treatment Records | DeKalb CSB | 02/13/2019 to 02/13/2019 | 51 |
| HO B20F | Office Treatment Records | DeKalb CSB | 03/06/2019 to 03/06/2019 | 8 |
| HO B21F | Speech Questionnaire/Speech Pathologist Report | Deborah DeJoie | 03/06/2019 to 03/06/2019 | 2 |
| HO B22F | Hospital Records | DeKalb CSB | 04/01/2019 to 04/03/2019 | 16 |
| HO B23F | Medical Evidence of Record | Southside Medical Center 11-7-18 | 11/07/2018 to 11/07/2018 | |
| HO B24F | Medical Evidence of Record | Childrens Healthcare of Atlanta 3-7-18 to 12-29-18 | 03/07/2018 to 12/29/2018 | |

HA-L39 (03-2007)