# Exhibit A

 **SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
2nd Floor
10155 Eagle Drive
Covington, GA 30014-3804

Date: March 30, 2021

Joseys Bonus Joseph
11303 Fairington Ridge
Circle, Apt 11
Lithonia, GA 30038

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter. The form is available at https://www.ssa.gov/forms/ha-520.html. Please write the Social Security number associated with this case on any appeal you file. You may call (800) 772-1213 with questions.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Joseys Bonus Joseph                                                    Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

Joseys Bonus Joseph                                              Page 3 of 3


**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (877) 626-9909. Its address is:

> Social Security
> 3554 Covington Hwy
> Decatur, GA 30032-9803


> Kristen Glover
> Administrative Law Judge


Enclosures:
Decision Rationale


cc:     Kathleen Flynn
        315 W. Ponce De Leon
        Avenue, Suite 940
        Decatur, GA 30030


Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance |
| Joseys Bonus Joseph | Benefits, and Supplemental Security Income |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On June 28, 2019, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits. The claimant also protectively filed a Title XVI application for supplemental security income on June 28, 2019. In both applications, the claimant alleged disability beginning August 15, 2017. These claims were denied initially on January 30, 2020, and upon reconsideration on July 30, 2020. Thereafter, the claimant filed a written request for hearing received on August 13, 2020 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). On February 10, 2021, the undersigned held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing. The claimant is represented by Kathleen Flynn, an attorney. Tina Baker-Ivey, an impartial vocational expert, appeared at the hearing.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a)).

The claimant's request to reopen a prior application is denied. The undersigned does not find a basis for reopening the claimant's prior Title II application or Title XVI application (20 CFR 404.988 and 416.1488). Social Security Ruling 91-5p was also considered and does not apply in this case. There is no new and material evidence that would support reopening, the request to reopen was not made within the appropriate time period, and the outcome of this claim is not supportive of reopening.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination

of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through March 31, 2018. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from August 15, 2017, through the date of this decision.

## **APPLICABLE LAW**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512, 404.1560(c), 416.912 and 416.960(c)).

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

After careful consideration of the entire record, the undersigned makes the following findings:

1.   **The claimant meets the insured status requirements of the Social Security Act through March 31, 2018.**

**2.   The claimant has not engaged in substantial gainful activity since August 15, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

**3.   The claimant has the following severe impairments: schizoaffective disorder and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

The claimant's medical record includes references to hypertension and obesity. However, there is no indication of any symptoms from these conditions that may cause more than a mild limitation in her ability to engage in work-related activities. Therefore, they are not severe.

The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, and 12.05. In making this finding, the undersigned has considered whether the "paragraph B" criteria ("paragraph A or B" criteria of listing 12.05) are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has a moderate limitation. On her function report, she alleged some degree of limitation in her memory and her ability to complete tasks, understand, and follow instructions (Exhibit 4E). Dr. Muller, who saw the claimant for a psychological evaluation in 2018, estimated that the claimant could handle up to moderately complex tasks (Exhibit 2F). Treating psychiatrist Dr. Jariwala opined that the claimant was markedly limited in this domain (Exhibit 15F), but regular mental status examinations, outside of two periods of acute decompensation associated with noncompliance (Exhibit 4F; 5F; 13F), fell regularly within normal limits (Exhibit 6F; 11F; 12F; 14F; 16F; 17F; 18F; 22F; 23F).

In interacting with others, the claimant has a moderate limitation. She alleged significant problems getting along with others on her function report, noting that her mental instability had caused those close to her to prevent her from engaging in certain activities. She indicated that she never went anywhere to engage in social activities, and spent time only with her son (Exhibit 4E). Dr. Muller, who saw the claimant for a psychological evaluation in 2018, estimated that she was limited to superficial interactions with others (Exhibit 2F). Treating psychiatrist Dr. Jariwala

opined that the claimant was markedly limited in this domain (Exhibit 15F), but regular mental status examinations, outside of two periods of acute decompensation associated with noncompliance (Exhibit 4F; 5F; 13F), fell regularly within normal limits (Exhibit 6F; 11F; 12F; 14F; 16F; 17F; 18F; 22F; 23F).

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. On her function report, she estimated she could pay attention for no more than 20 minutes. She said she does not finish what she starts (Exhibit 4E). Dr. Muller, who saw the claimant for a psychological evaluation in 2018, noted no issues with concentration but estimated that she would work at a below-average pace (Exhibit 2F). Treating psychiatrist Dr. Jariwala opined that the claimant was markedly limited in this domain (Exhibit 15F), but regular mental status examinations, outside of two periods of acute decompensation associated with noncompliance (Exhibit 4F; 5F; 13F), fell regularly within normal limits (Exhibit 6F; 11F; 12F; 14F; 16F; 17F; 18F; 22F; 23F).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. On her function report, she wrote about her extreme anxiety, which she said causes her to worry about if she was doing something wrong (Exhibit 4E). Treating psychiatrist Dr. Jariwala opined that the claimant was markedly limited in this domain (Exhibit 15F), but regular mental status examinations, outside of two periods of acute decompensation associated with noncompliance (Exhibit 4F; 5F; 13F), fell regularly within normal limits (Exhibit 6F; 11F; 12F; 14F; 16F; 17F; 18F; 22F; 23F).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria (criteria of listing 12.05) are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. To meet this criteria, a mental disorder must be "serious and persistent;" that is, displaying a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and 2) marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. Because the claimant's diagnosed mental conditions do not meet these criteria, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Turning back to listing 12.05, this listing is based on the three elements that characterize intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22.

See Next Page

The required level of severity for this disorder is met when the requirements in paragraphs A or B are satisfied.

Paragraph A requires the following:

1.  Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2.  Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3.  The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

In this case, these requirements are not met because evidence is insufficient to prove the claimant's low function beginning prior to age 22, or that her adaptive functioning is as deficient as described.

Paragraph B requires the following:

1.  Significantly subaverage general intellectual functioning evidenced by a or b:

    a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2.  Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

    a.  Understand, remember, or apply information (see 12.00E1); or

    b.  Interact with others (see 12.00E2); or

    c.  Concentrate, persist, or maintain pace (see 12.00E3); or

    d.  Adapt or manage oneself (see 12.00E4); and

See Next Page

3.  The evidence about your current intellectual and adaptive functioning and about the
history of your disorder demonstrates or supports the conclusion that the disorder
began prior to your attainment of age 22.

In this case, these requirements are not met because her functioning in the areas described under
section 2 is only moderately limited, as is described above.

**5.   After careful consideration of the entire record, the undersigned finds that the
claimant has the residual functional capacity to perform a full range of work at all
exertional levels but with the following nonexertional limitations: simple, routine tasks with
simple work-related decisions; no contact with the public and only occasional contact with
coworkers and supervisors; and gradual and infrequent workplace changes.**

In making this finding, the undersigned has considered all symptoms and the extent to which
these symptoms can reasonably be accepted as consistent with the objective medical evidence
and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p.
The undersigned also considered the medical opinion(s) and prior administrative medical
finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in
which it must first be determined whether there is an underlying medically determinable physical
or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable
clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the
claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to
produce the claimant's pain or other symptoms has been shown, the undersigned must
evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine
the extent to which they limit the claimant's work-related activities. For this purpose, whenever
statements about the intensity, persistence, or functionally limiting effects of pain or other
symptoms are not substantiated by objective medical evidence, the undersigned must consider
other evidence in the record to determine if the claimant's symptoms limit the ability to do work-
related activities.

The claimant alleged that she is unable to work due to schizoaffective disorder, auditory
hallucinations, visual hallucinations, bipolar disorder, depression, anxiety, panic attacks, status
post suicide attempts, and high blood pressure. She alleged problems that include difficulty
concentrating and "using [her] brain." She also noted paranoia and erratic behavior. She
endorsed limitations in her ability to talk, remember, complete tasks, understand, follow
instructions, and get along with others (Exhibit 4E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically
determinable impairments could reasonably be expected to cause the alleged symptoms;
however, the claimant's statements concerning the intensity, persistence and limiting effects of
these symptoms are not entirely consistent with the medical evidence and other evidence in the
record for the reasons explained in this decision.

See Next Page

Dr. Muller saw the claimant for a psychological evaluation on May 1, 2018. A mental status examination described her as friendly and cooperative. There were positive findings for history of suicidal ideation and auditory hallucinations, and her affect was "somewhat inappropriate" with respect to her stated mood. Her Full Scale IQ was measured at 71, which falls in the Borderline range of intellectual functioning. The examiner diagnosed major depressive disorder, severe with psychotic features, in partial remission; and borderline intelligence. He estimated that the claimant's social interactions would be limited to superficial exchanges; she could understand simple instructions and "to some degree" moderately complex instructions; and would perform work at a pace likely below average (Exhibit 2F).

The claimant had an involuntary admission for mental health treatment at Grady Hospital from June 18 to August 12, 2019 for delusions, hallucinations, paranoia, and poor medication compliance. While inpatient, treatment modalities included Ativan for catatonia, Abilify for psychosis and mood, lithium for mood lability, and sertraline for depression. With strict adherence to these medications, the claimant's condition improved and she was able to perform activities of daily living independently. The claimant's diagnosis on discharge was for schizoaffective disorder, bipolar type. Providers described "significant improvement" since admission, and the claimant reported improved symptoms on mental status examination. The exam was negative with the exception of poor recall (Exhibit 4F; 5F).

Soon afterward, the claimant had a psychosocial assessment at Winn Way on August 22, 2019. She maintained mental health services with this provider. On the 26th, she had run out of meds and asked for more, stating that she needed them. A mental status exam was negative (Exhibit 11F). Notes from a September 12 session described her as "less hyper" (Exhibit 12F).

Records from Emory Decatur Hospital dated January 18, 2020 describe treatment for the claimant's behavioral disorder. She had come to the emergency room complaining of auditory hallucinations. She voiced medication compliance. The psychiatrist on call recommended a four-day course of Risperdal. She was discharged the same day and permitted to complete the course at home (Exhibit 21F, pp. 306-310).

The claimant was again admitted for inpatient mental health treatment from April 23 to 28, 2020 at Emory Hillandale Hospital. She had threatened to kill her family members according to EMS. She was assessed with an acute exacerbation of chronic paranoid schizophrenia. It was noted that she had not been taking her prescribed medications (Exhibit 13F).

Follow-up records from PACT Atlanta dated April 30, 2020 mention that the claimant was stable and back on medication. On May 21, her mental status exam was normal other than for slow speech and reported extrapyramidal symptoms (Exhibit 14F).

Dr. Jariwala, the claimant's treating psychiatrist, completed some forms on the claimant's behalf on June 11, 2020. In part, he indicated that the claimant had poor/no ability to function in multiple areas: relating to coworkers and the public, using judgment, dealing with work stress, functioning independently, maintaining attention and concentration, adjusting to simple job instructions, and relating predictably in social situations. He wrote that she struggles to keep up

with her part on most activities. He said that she was depressed with low energy and poor focus, and manic at times with homicidal tendencies (Exhibit 15F).

Additional mental health treatment records come from Dekalb Community Service Board. On September 24, 2020, it was noted that the claimant had not been seen since August. She reported doing well on medication (Exhibit 22F).

Most recently, PACT Atlanta notes from November 4, 2020 give a normal mental status exam report for the claimant. She said she was doing well with anxiety and mood and reported no psychosis (Exhibit 23F).

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: the reports of the nonexamining State Agency consultants, finding the claimant to have no severe impairment (Exhibit 1A; 2A), or on reconsideration, capable of the full range of exertional activity with moderate mental limitations, are persuasive (Exhibit 5A; 6A). The opinion additionally includes a limitation to simple instructions, limited public contact, and routine changes. As is amply discussed above, the four mental functional domains are no more than moderately limited. This is supported by a wealth of records showing the claimant in stable condition when she is compliant with treatment recommendations (Exhibit 6F; 11F; 12F; 14F; 16F; 17F; 18F; 22F; 23F). While the claimant has had periods of decompensation, there have only been two instances of inpatient treatment during the adjudicated period (Exhibit 4F; 5F; 13F). The assessments are consistent with cited evidence from Emory Hillandale and PACT Atlanta, which in turn show the claimant's condition when she is stable vs. unstable. A finding that the claimant has no severe impairments can be supported by this same evidence, but giving the claimant the benefit of the doubt and acknowledging the two periods of decompensation, the above residual functional capacity is more appropriate with all possible deference to subjective complaints.

Dr. Muller's assessment (Exhibit 2F) is dated during the adjudicated period, but took place remote from most of the available evidence. At the time it was promulgated, the claimant was not receiving regular behavioral health treatment (*Ibid*). For this reason, the opinion is only partially persuasive, as the claimant's level of functioning changed when she began seeing providers and taking medication for her issues. However, the IQ test score is stated to be valid; this supports a finding of borderline intellectual functioning as a severe impairment as there is no evidence from any other source that would contradict the finding.

The forms completed by Dr. Jariwala (Exhibit 15F) are not persuasive. While this provider did examine the claimant on three occasions (Exhibit 14F), none of these extraordinary levels of limitations find support in any of his exam notes. His only positive finding is for slow speech, and he fails to articulate any additional objective evidence in his opinion for why he believes she is so restricted.

See Next Page

There is also a letter in the file from a Dr. Famakinwa (Exhibit 10F, p. 3) which states that the claimant had been admitted for psychiatric evaluation on June 19, 2019 (see Exhibit 21F, p. 306). His statement reads, "She is unable to care for self or others at this time. She continues to require inpatient treatment for further stabilization at this time. She will need family support to care for her son." To the extent this may be seen as a medical opinion, it is not persuasive. It clearly pertains to the claimant's immediate condition rather than to her ongoing functional limitations.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by longitudinal records showing that the claimant is in stable condition when taking her meds as prescribed.

**6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).**

**7.    The claimant was born on June 4, 1992 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

**9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational

See Next Page

expert testified that given all of these factors the individual would be able to perform the
requirements of representative occupations such as:

- Dishwasher, DOT # 318.687-010, medium SVP 2 (30,000 jobs nationally)
- Laundry laborer, DOT # 361.687-010, medium SVP 2 (20,000 jobs nationally)
- House worker, general, DOT # 301.474-010, medium SVP 2 (30,000 jobs nationally).

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is
consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the
claimant's age, education, work experience, and residual functional capacity, the claimant is
capable of making a successful adjustment to other work that exists in significant numbers in the
national economy. A finding of "not disabled" is therefore appropriate under the framework of
section 204.00 in the Medical-Vocational Guidelines.

**11.  The claimant has not been under a disability, as defined in the Social Security Act,
from August 15, 2017, through the date of this decision (20 CFR 404.1520(g) and
416.920(g)).**

## <u>DECISION</u>

Based on the application for a period of disability and disability insurance benefits protectively
filed on June 28, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social
Security Act.

Based on the application for supplemental security income protectively filed on June 28, 2019,
the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Kristen Glover*

Kristen Glover
Administrative Law Judge

March 30, 2021
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1A | Disability Determination Explanation-DIB INITIAL:PRT/RFC-MD | | 2020-01-29 | 17 |
| T1I | 2A | Disability Determination Explanation-DI INITIAL:PRT/RFC-MD | | 2020-01-29 | 17 |
| T1I | 3A | Initial Disability Determination by State Agency, Title XVI | | 2020-01-29 | 1 |
| T1I | 4A | Initial Disability Determination by State Agency, Title II | | 2020-01-30 | 1 |
| T1I | 5A | Disability Determination Explanation-DIB RECON:PRT/RFC-MD | | 2020-07-27 | 21 |
| T1I | 6A | Disability Determination Explanation-DI RECON:PRT/RFC-MD | | 2020-07-27 | 21 |
| T1I | 7A | Reconsideration Disability Determination by State Agency, Title XVI | | 2020-07-30 | 1 |
| T1I | 8A | Reconsideration Disability Determination by State Agency, Title II | | 2020-07-30 | 1 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 1B | T2 Notice of Disapproved Claim | | 2020-01-29 | 4 |
| T1I | 2B | T16 Notice of Disapproved Claim | | 2020-01-29 | 5 |
| T1I | 3B | Request for Reconsideration | | 2020-05-04 | 2 |

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | 4B | SSA-1696 - Claimant's Appointment of a Representative-Kathleen Flynn-atty | | 2020-07-18 | 6 |
| T1I | 5B | SSA-1696 - Claimant's Appointment of a Representative | | 2020-07-18 | 6 |
| T1I | 6B | Notice of Disapproved Claim - Concurrent | | 2020-07-30 | 7 |
| T1I | 7B | SSA-1696 - Claimant's Appointment of a Representative | | 2020-08-31 | 1 |
| T1I | 8B | Misc Jurisdictional Documents/Notices | | 2020-08-31 | 1 |
| T1I | 9B | SSA-1693 - Fee Agreement for Representation before SSA | | 2020-08-31 | 1 |
| T1I | 10B | Request for Hearing by ALJ | | 2020-08-31 | 3 |
| T1I | 11B | Request for Hearing by ALJ | | 2020-09-22 | 1 |
| T1I | 12B | Request for Hearing by ALJ | | 2020-09-22 | 11 |
| T1I | 13B | Request for Hearing Acknowledgement Letter | | 2020-09-23 | 15 |
| T1I | 14B | Objection to Video Hearing | | 2020-10-01 | 1 |
| T1I | 15B | Outgoing ODAR Correspondence | | 2020-10-01 | 6 |
| T1I | 16B | Objection to Video Hearing | | | 1 |
| T1I | 17B | Hearing Notice | | | 25 |
| T1I | 18B | Objection to Video Hearing | | | 1 |
| T1I | 19B | Notice Of Hearing Reminder | | | 6 |
| T1I | 20B | Notice Of Hearing Reminder | | | 6 |

## Non-Disability Development

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|

| T1I | 1D | Application for Disability Insurance Benefits | 2019-08-19 | 9 |
| T1I | 2D | Application for Supplemental Security Income Benefits | 2019-08-19 | 9 |
| T1I | 3D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2020-10-01 | 1 |
| T1I | 4D | Detailed Earnings Query | 2020-10-01 | 2 |
| T1I | 5D | Summary Earnings Query | 2020-10-01 | 1 |
| T1I | 6D | Certified Earnings Records | 2020-10-01 | 2 |
| T1I | 7D | Detailed Earnings Query | 2021-02-02 | 1 |
| T1I | 8D | Summary Earnings Query | 2021-02-03 | 1 |
| T1I | 9D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 2021-02-02 | 1 |
| T1I | 10D | Certified Earnings Records | 2021-02-02 | 2 |

**Disability Related Development**

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | 1E | Disability Report - Field Office | | | to 2019-08-19 | 4 |
| T1I | 2E | Disability Report - Adult | | | to 2019-08-19 | 12 |
| T1I | 3E | Work History Report | | | to 2019-08-19 | 9 |
| T1I | 4E | Function Report - Adult | | Joseph, Joseys Bonus | to 2019-09-03 | 9 |
| T1I | 5E | 3rd Party Function Report - Adult | | Samata Joseph | to 2019-09-03 | 9 |
| T1I | 6E | Disability Report - Appeals | | | to 2020-05-22 | 7 |
| T1I | 7E | Disability Report - Field Office | | | to 2020-05-22 | 3 |
| T1I | 8E | Function Report - Adult | | Samata Joseph-Sister | to 2020-07-23 | 17 |
| T1I | 9E | Disability Report - Appeals | | | to 2020-08-31 | 8 |

| | | | | | | |
|---|---|---|---|---|---|---|
| T1I | 10E | Disability Report - Appeals | | | to 2020-09-22 | 7 |
| T1I | 11E | Disability Report - Field Office | | | to 2020-09-22 | 3 |
| T1I | 12E | Exhibit List to Rep PH2E | | | to 2020-10-01 | 11 |
| T1I | 13E | Authorization for Source to Release Information to SSA | | | | 3 |
| T1I | 14E | Misc Disability Development and Documentation | | Flynn, Kathleen | to 2021-01-11 | 3 |
| T1I | 15E | Resume of Vocational Expert | | Tina Baker-Ivery | to 2021-01-21 | 1 |
| T1I | 16E | Representative Brief | | Flynn, Kathleen | to 2021-01-29 | 2 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | 1F | Office Treatment Records | | Positive Growth | 2015-01-14 to 2015-04-01 | 14 |
| T1I | 2F | CE Psychology | | John S. Muller, PhD | to 2018-05-01 | 7 |
| T1I | 3F | Office Treatment Records | | Adult Mental Health | to 2019-06-18 | 10 |
| T1I | 4F | Hospital Records | | Georgia Regional Hospital (Atlanta) | to 2019-06-18 | 411 |
| T1I | 5F | Hospital Records | | Grady Hospital | 2019-06-13 to 2019-06-18 | 34 |
| T1I | 6F | Hospital Records | | Grady Memorial Hospital | 2019-06-12 to 2019-06-18 | 153 |
| T1I | 7F | Office Treatment Records | | Ga. Dpt. Of Behavioral Health | 2019-06-18 to 2019-08-16 | 6 |
| T1I | 8F | Office Treatment Records | | Emily Hrabovsky, Lcsw | to 2019-08-19 | 2 |

| T1I | 9F | Office Treatment Records | Dekalb Community Service Board | to 2019-08-19 | 2 |
| T1I | 10F | Office Treatment Records | Dekalb Csb | to 2019-08-19 | 3 |
| T1I | 11F | Office Treatment Records | Winn Way Mental Health Center | 2019-08-19 to 2019-08-22 | 40 |
| T1I | 12F | Office Treatment Records | Winn Way Mental Health Center | 2019-09-04 to 2019-09-30 | 18 |
| T1I | 13F | Hospital Records | Emory Hillandale Hospital | 2020-04-22 to 2020-04-28 | 53 |
| T1I | 14F | Hospital Records | Pact Atlanta Llc | 2020-04-30 to 2020-05-21 | 19 |
| T1I | 15F | Medical Assessment Mental Ability-Work Related Activities | Dr. Neil Jariwala | to 2020-06-11 | 6 |
| T1I | 16F | Office Treatment Records | Dekalb Community Service Board | 2019-08-19 to 2020-06-18 | 86 |
| T1I | 17F | Office Treatment Records | Pact Atlanta Psychiatric Clinic | 2020-04-30 to 2020-06-22 | 16 |
| T1I | 18F | Office Treatment Records | Dekalb Community Service Board | 2020-06-24 to 2020-06-24 | 7 |
| T1I | 19F | Hospital Records | Grady Memorial Hospital | 2012-11-16 to 2019-06-18 | 68 |
| T1I | 20F | Inpatient Hospital Records | Georgia Regional Hospital | 2019-06-18 to 2019-08-16 | 253 |
| T1I | 21F | Hospital Records | Emory Decatur Hospital | 2008-06-28 to 2020-04-22 | 403 |
| T1I | 22F | Office Treatment Records | Dekalb Community Service Board | 2020-09-16 to 2020-09-24 | 9 |
| T1I | 23F | Progress Notes | Pact Atlanta Psychiatric Clinic | to 2020-11-04 | 7 |