## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| D'NESE DARBY,<br><br>          Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>          Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC § 1681** *et seq.* |

## INTRODUCTION

1.     Plaintiff, Tasha Alston, brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Equifax Information Services, LLC (Equifax) has negligently and recklessly disseminated false information regarding the Plaintiff's credit.

2.     Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

3.     The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  Defendant regularly conducts business within the state of Georgia and violated Plaintiff's rights under the FCRA in the state of Georgia as alleged more fully below.

4.     Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conducts business in this District, and communications giving rise to this

action occurred in this District.

## PARTIES

5.     Plaintiff, Tasha Alston ("Plaintiff"), is a resident of Riverdale, Georgia and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.     Defendant Equifax Information Services, LLC is similarly one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

7.     Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

## FACTUAL BACKGROUND

8.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

9.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

10.    The FCRA is intended to ensure CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

11. Defendant Equifax is one of the three major consumer reporting agencies (at times referred to collectively as "the CRA's" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

12. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Defendant sells to third parties for a profit.

13. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

14. Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

15. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

16. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

17. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency

occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

18. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant/s in consumer reports.

19. DTI compares the total amount a consumer owes to the total amount a consumer earns.

20. Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

21. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

22. A consumer who has obtained a bankruptcy discharge and has a consumer report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero balance.

23. Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

24. However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

25. Rather than follow reasonable procedures to assure maximum possible accuracy, as is required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

26. Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

27. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge, including failure to report the discharge.

28. Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

29. Plaintiff filed for a Chapter 7 Bankruptcy on or about January 18, 2022 in the United States Bankruptcy Court for the Northern District of Georgia petition no. 1:22-bk-50441.

30. Plaintiff received an Order of Discharge on or about April 24, 2022.

31. Thereafter, Plaintiff was not personally liable for her dischargeable debts and these debts have a $0 balance after the bankruptcy discharge.

32. Defendant Equifax prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

33. Defendant failed to report Plaintiff's consumer bankruptcy information in the Public Records section or in any individual tradelines of Plaintiff's consumer reports.

34. Notably, the other CRA/s, Experian and Trans Union accurately reported Plaintiff's bankruptcy information in the Public Records sections of their respective reports, and in the individual tradelines of their respective reports.

35. Defendant reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

36. Defendant reported Plaintiff's consumer bankruptcy information in the Public Records section and in certain individual tradelines of Plaintiff's consumer reports.

37. Defendant is aware that CRAs are generally required to report any and all accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

38. Defendant should have reported all of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero balance but did not.

39. Defendant should not have reported any late payment, charge off, or balance history for discharged accounts in the months after Plaintiff filed for bankruptcy.

### *Inaccuracies on Plaintiff's Consumer Report/s*

40. The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on her Equifax consumer report.

41. Notably, furnishers reported the Plaintiff's discharged/zero account balances, bankruptcy and discharge information to Equifax.

42. Defendant knew or should have known that Plaintiff's bankruptcy was discharged.

43. On several occasions post-bankruptcy, including on May 14, 2023, Equifax generated a credit report of the Plaintiff.

44. On Plaintiff's consumer disclosure, Defendant inaccurately reported Plaintiff's DEAN ENTERPRISES GROUP INC. account, opened in February 2016 as "charge-off" with an open Balance owed of $8,360.00, when the account actually has a zero balance. Thus, Equifax knows this account predated Plaintiff's bankruptcy and is discharged thereby.

45. Similarly, Equifax inaccurately reported Plaintiff's FIFTH THIRD BANK, N.A. account, opened in September 2017 with an account status of UNAVAILABLE and a comment of "Account closed by credit grantor." Thus, Equifax knows this account predated Plaintiff's bankruptcy and is discharged thereby.

46. Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendant, that indicated Plaintiff had filed for bankruptcy and received a discharge, but Defendant rejected or otherwise failed to report the data it received.

47. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but Defendant failed to review those sources or knowingly rejected them.

48. In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

49. Defendant inaccurately reported that Plaintiff owed money that she did not actually owe, and also reported inaccurate Account statuses and payment histories.

50. Defendant inaccurately reported Plaintiff's UNITEDAA account with a balance owed after it was discharged in Chapter 7 Bankruptcy.

51. Defendant failed to indicate that the foregoing Account had a zero-dollar balance and was discharged in Chapter 7 Bankruptcy.

52. Defendant also erroneously reported that the discharged Account was a "voluntary surrender" after the discharge.

53. Notably, non-parties Experian and Trans Union, the other national CRAs, reported Plaintiff's accounts accurately on consumer reports produced after Plaintiff's discharge.

54. Defendant's reporting of the Account is patently inaccurate.

55. If not patently inaccurate, Defendant's reporting of the Account is materially misleading.

## *Plaintiff's Damages*

56. Plaintiff's DTI was negatively affected by Defendant's reporting of debt which Plaintiff does not owe, in turn negatively impacting Plaintiff's credit worthiness.

57. Defendant's inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was published to creditors by Defendant during the process of any of Plaintiff's credit applications.

58. Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Equifax.

59. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a denial of credit, decreased credit score, lower overall creditworthiness, and other financial harm.

60. As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendant's inaccurate reporting.

61. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

### I.　COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

62. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

63. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

64. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

65. Defendant's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

66. Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

67. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

68. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

69. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

70. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

71. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

72. Defendant is a direct and proximate cause/s of Plaintiff's damages.

73. Defendant is a substantial factor/s in Plaintiff's damages.

74. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## II.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a)   Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)   Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

### III.    JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: August 16, 2023

/s/ Misty Oaks Paxton
Misty Oaks Paxton, Esq.
THE OAKS FIRM
3895 Brookgreen Pt.
Decatur, GA 30034
Tel: (404) 500-7861
Email: attyoaks@yahoo.com
*Attorney for Plaintiff*


/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
yzelman@marcuszelman.com

*Pro Hac Vice Motion Forthcoming*
*Attorney for Plaintiff*