SHERIFF'S ENTRY OF SERVICE

| | |
|---|---|
| Civil Action No. 23-A-06093-3 | Superior Court ☒   Magistrate Court ☐ |
| | State Court ☐   Probate Court ☐ |
| | Juvenile Court ☐ |
| Date Filed 7/17/2023 | Georgia, Gwinnett COUNTY |
| | Club Pointe Condominium Association |
| Attorney's Address | |
| Huggins Law Firm, LLC | _____ |
| | Plaintiff |
| 110 Norcross St | VS. |
| Roswell, GA 30075 | State Farm Fire and Casualty Company |
| Name and Address of Party to Served | |
| Corporation Service Company | _____ |
| | Defendant |
| C/O State Farm Fire and Casualty Company | |
| 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 | _____ |
| | Garnishee |

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS**
I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place abode in this County.

Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
Served the defendant _____ a corporation
by leaving a copy of the within action and summons with _____
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This _____ day of _____, 20____

DEPUTY _____

**CLERK'S | DEFENDANT'S | PLAINTIFF'S COPY**

E-FILED IN OFFICE - SP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-06093-3**
**7/17/2023 11:28 AM**
TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Club Pointe Condominium Association**
3201 - 3208 Club Point Way, Gainesville, GA 30506

PLAINTIFF          CIVIL ACTION NUMBER: _____ 23-A-06093-3

**VS**

**State Farm Fire and Casualty Company**
**RA: Corporation Service Company**
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

DEFENDANT

---

## SUMMONS

---

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Foster L. Peebles**
**Attorney For the Plaintiff**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
**770-913-6229**
fpeebles@lawhuggins.com

an Answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 2023.

18th day of July, 2023

Tiana P. Garner,
Clerk of Superior Court

BY: _Sarah Payne_____
Deputy Clerk

E-FILED IN OFFICE - SP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-06093-3
7/17/2023 11:28 AM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CLUB POINTE CONDOMINIUM** | ) | |
| **ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | ~~23-A-06093-3~~ |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff **Club Pointe Condominium Association,** by and through the undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, **State Farm Fire and Casualty Company**, and in support hereof, states as follows:

## PARTIES

1.

Plaintiff is an entity located in Hall County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of an insurance claim because the breached contract was entered into, and concerned property in, the state of Georgia and the amount in controversy exceeds $15,000.00. This Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the state of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

Prior to July 16, 2021, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued a policy with Policy No. 91-LQ-5865--9 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A."

7.

The Policy provides numerous coverages for the real and personal property, which includes several propertys, located at 3201 - 3208 Club Point Way, Gainesville, GA 30506 (the "Insured

Property," "Property," or the "home"). The Policy likewise insures against loss due to a Hail Storm, subject to a deductible of $2,500.00 per occurrence. (*See* Ex. A).

8.

The Policy is an all-perils policy providing coverage for sudden and accidental direct physical loss to the dwelling, other structures, and personal property. The Policy covers property repairs and personal property on a full replacement cost basis. (*See* Ex. A).

9.

The Policy covers various types of expenses, including reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss and additional living expenses. (*See* Ex. A).

## SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

On or about July 16, 2021, the above-referenced property suffered damage from a sudden and accidental direct physical loss resulting from a Hail Storm (the "Loss"). The Policy was in effect at the time of the Loss.

11.

Plaintiff promptly and timely notified Defendant of the damage to the Property resulting from the Loss and made a claim pursuant to the Policy. As a result, Defendant assigned Loyal V. Hoover ("Mr. Hoover") to investigate Plaintiff's claim for sudden and accidental direct physical loss. Mr. Hoover was authorized as Defendant's representative and agent for purposes of the claim.

3

12.

At all times, Plaintiff made themselves and the Property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

13.

Defendant, through its authorized representative and agent, Mr. Hoover, is believed to have performed a site inspection of the Property.

14.

Defendant's authorized representative and agent, Mr. Hoover, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when Mr. Hoover undertook the handling of the claim.

15.

Defendant, through Mr. Hoover, grossly underestimated the scope of loss suffered by the Plaintiff as a result of the Loss. Defendant failed to properly indemnify the Plaintiff and completely denied Plaintiff's claim for insurance benefits. A true and accurate copy of the Defendant's denial is attached hereto as Exhibit "B."

16.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for the Loss.

4

17.

Plaintiff made repeated requests for payment of the claim, including a written demand sent to Defendant on May 16, 2023. A true and accurate copy of the written demand is attached hereto as Exhibit "C."  Despite this demand for $118,458.00, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one or more portions of the Policy, the obligation to settle the claim became reasonably clear.

18.

The Plaintiff's May 16, 2023, correspondence (Ex. C) to Defendant constituted a formal 60-Day demand, pursuant to the guidelines set forth in O.C.G.A. §33-4-6. After putting Defendant on notice of a potential lawsuit through the formal 60-Day demand, the Defendant continued to deny Plaintiff's claim without just cause.

19.

Defendant did not act fairly or honestly toward the Plaintiff, or with due regard to the Plaintiff's claim and interests, when Defendant, under all circumstances articulated herein, failed to indemnify the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

20.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

21.

There exists a genuine, justifiable controversy between the Plaintiff and the Defendant as to whether Defendant is responsible for further indemnification owed to the Plaintiff as a result of the Loss. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the

Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incur additional expenses, and file this lawsuit.

22.

Plaintiff has suffered loss under the Policy in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

23.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-22 of this Complaint as if fully set forth herein.

24.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy including, without limitation, the timely payment of premiums, timely notice of the claim, and post loss obligations, or the Defendant has waived any and all other conditions.

25.

Under the terms of the Policy, Defendant is required to fully indemnify the Plaintiff for the damages sustained from the Loss.

26.

Despite Plaintiff's timely written demand, Defendant failed to provide full indemnification to the Plaintiff under the terms of the Policy.

27.

Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and fully indemnify the Plaintiff according to the terms of the Policy.

6

28.

As a result of the Defendant's denying and delaying payment in Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Property in an amount to be determined at trial.

29.

The Plaintiff suffered damages as a direct result of Defendant's failure to indemnify the Plaintiff for their loss.

30.

All foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

Plaintiff hereby adopts, re-alleges, and incorporates their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

By failing to achieve a proper disposition of Plaintiff's claim, Defendant acted frivolously, and without a reasonable basis or justification, in contravention of its duty of good faith and fair dealing.

7

34.

Defendant did not attempt in good faith to settle the Plaintiff's claim when it could have, and should have, done so under all attendant circumstances had it acted fairly and honestly toward the Plaintiff and with due regard for the Plaintiff's interests.

35.

Defendant's failures to adjust Plaintiff's claim in good faith include, but are not limited to:

(1) Knowingly misrepresenting to claimants, and insureds, relevant facts or policy provisions relating to coverages at issue (*see* O.C.G.A. § 33-6-34(1));

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies (*see* O.C.G.A. § 33-6-34(2));

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies (*see* O.C.G.A. § 33-6-34(3));

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear (*see* O.C.G.A. § 33-6-34(4));

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them (*see* O.C.G.A. § 33-6-34(5));

(6) Refusing to pay claims without conducting a reasonable investigation (*see* O.C.G.A. § 33-6-34(6));

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims (*see* O.C.G.A. § 33-6-34(7)); and

(8) When requested by the insured in writing, failing in the case of payments or offers of compromise to provide promptly a reasonable and accurate explanation of the basis for such action (or, in the case of claims denials, providing said denial to the insured in writing) (*see* O.C.G.A. § 33-6-34(10)).

<div align="center">36.</div>

The above and foregoing actions of Defendant constitute bad faith pursuant to O.C.G.A. § 33-4-6, as the Defendant refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Ex. C) for payment without a reasonable basis for doing so.

<div align="center">37.</div>

Defendant frivolously, and without a reasonable basis, denied proper indemnification to the Plaintiff for their covered loss.

<div align="center">38.</div>

Defendant's refusal to indemnify the Plaintiff was done frivolously, without a reasonable basis, and in bad faith.

<div align="center">39.</div>

As a result of Defendant's above-referenced bad faith breach of the Policy issued to the Plaintiff, and pursuant to O.C.G.A. § 33-4-6(a), Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."

<div align="center">40.</div>

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of the statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded

<div align="center">9</div>

or $5,000.00, whichever is greater, along with a statutory allowance for reasonable attorneys' fees in prosecuting this action, pursuant to O.C.G.A. § 33-4-6, for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## DEMAND FOR JURY TRIAL

### 41.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

### 42.

**WHEREFORE,** Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which they are justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d. Plaintiff's attorneys' fees and costs of suit in this action;

e. Plaintiff's consultant and expert fees;

10

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Respectfully submitted, this 17th day of July, 2023.

**The Huggins Law Firm, LLC**

*/s/ Foster L. Peebles*

Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852

110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

*Attorneys for the Plaintiff*

# EXHIBIT A

**STATE FARM FIRE AND CASUALTY COMPANY**
A STOCK COMPANY WITH HOME OFFICES IN BLOOMINGTON, ILLINOIS

**DECLARATIONS** COVERAGE SUMMARY  APR 5 2021

File Base 556212
Bloomington, GA 26306-0654

Named Insured

002530 3123
CLUB POINTE
CONDOMINIUM ASSOCIATION
1202 CLUB POINT WAY
GAINESVILLE GA  30506-1638

| Policy Number | 91-LQ-5855-0 |
|---|---|

**Policy Period** 12 Months  **Effective Date** MAR 4 2021  **Expiration Date** MAR 4 2022
The policy period begins and ends at 12:01 am standard time at the premises location.

**Agent and Mailing Address**
SEE JEFFREY
2234 THOMPSON BRG RD
GAINESVILLE GA  30501-1146
PHONE: (770) 297-4322

44-27-2052-FC1B  F  V

**Residential Community Association Policy**

Automatic Renewal - If the policy period is shown as 12 months, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If the policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Entity: HOMEOWNER ASSOCIATION

Policy Premium          $  10,005.00

Discounts Applied:
Renewal Year
Claim Record

Prepared
APR 05 2021
CMP-4000
023608 290   I
N

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Continued on Reverse Side of Page          Page  1 of  6

---

**DECLARATIONS (CONTINUED)**
Residential Community Association Policy for CLUB POINTE
Policy Number      91-LQ-5855-0

**SECTION I - PROPERTY BLANKET**

Coverage A - Buildings
Coverage B - Business Personal Property

Limit of Insurance*
$  3,537,500
No Coverage

| Location Number | Location of Described Premises |
|---|---|
| 001 | 3201-3706 CLUB POINTE WAY<br>GAINESVILLE GA  30506-1638 |
| 002 | 3207-2208 CLUB POINTE WAY<br>GAINESVILLE GA  30506-1638 |

**AUXILIARY STRUCTURES**

| Location Number | Description |
|---|---|
| 001A | Fence, walls, etc. |
| 001A | WALL |

* As of the effective date of this policy, the Limit of Insurance as shown includes any increase in the limit due to Inflation Coverage.

**SECTION I - INFLATION COVERAGE (INDEXED)**

Inflation Coverage Index:          178.2

Prepared
APR 05 2021
CMP-4000
023608

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Continued on Next Page          Page  2 of  6

---

**DECLARATIONS (CONTINUED)**
Residential Community Association Policy for CLUB POINTE
Policy Number      91-LQ-5855-0

**SECTION I - DEDUCTIBLES**

Basic Deductible          $2,500

Special Deductibles:
Money and Securities          $250     Employee Dishonesty          $250
Equipment Break-down          $2,500

Other deductibles may apply - refer to policy.

**SECTION I - EXTENSIONS OF COVERAGE - LIMIT OF INSURANCE - EACH DESCRIBED PREMISES**

The coverages and corresponding limits shown below apply separately to each described premises shown in these Declarations, unless indicated by "See Schedule." If a coverage does not have a corresponding limit shown below, but has "Included" indicated, please refer to that policy provision for an explanation of that coverage.

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Collapse | Included |
| Damage To Non-Owned Buildings From Theft, Burglary Or Robbery | Coverage B Limit |
| Debris Removal | 25% of covered loss |
| Equipment Breakdown | Included |
| Fire Department Service Charge | Included |
| Fire Extinguisher Systems Recharge Expense | $5,000 |
| Glass Expenses | Included |
| Increased Cost Of Construction And Demolition Costs (applies only when buildings are insured on a replacement cost basis) | 10% |
| Newly Acquired Business Personal Property (applies only if this policy provides Coverage B - Business Personal Property) | $100,000 |
| Newly Acquired Or Constructed Buildings (applies only if this policy provides Coverage A - Buildings) | $250,000 |

Prepared
APR 05 2021
CMP-4000
023608 290
N

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Continued on Reverse Side of Page          Page  3 of  6

---

**DECLARATIONS (CONTINUED)**
Residential Community Association Policy for CLUB POINTE
Policy Number      91-LQ-5855-0

| | |
|---|---|
| Ordinance Or Law - Equipment Coverage | Included |
| Preservation Of Property | 30 Days |
| Water Damage, Other Liquids, Powder Or Molten Material Damage | Included |

**SECTION I - EXTENSIONS OF COVERAGE - LIMIT OF INSURANCE - EACH COMPLEX**

The coverages and corresponding limits shown below apply separately to each complex as described in the policy.

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Accounts Receivable<br>  On Premises<br>  Off Premises | $50,000<br>$15,000 |
| Arson Reward | $5,000 |
| Forgery Or Alteration | $10,000 |
| Money And Securities (Off Premises) | $5,000 |
| Money And Securities (On Premises) | $10,000 |
| Money Orders And Counterfeit Money | $1,000 |
| Outdoor Property | $5,000 |
| Personal Effects (applies only to those premises provided Coverage B - Business Personal Property) | $2,500 |
| Personal Property Off Premises | $15,000 |
| Pollutant Clean Up And Removal | $10,000 |
| Property Of Others (applies only to those premises provided Coverage B - Business Personal Property) | $2,500 |
| Signs | $2,500 |
| Valuable Papers And Records<br>  On Premises<br>  Off Premises | $10,000<br>$5,000 |

Prepared
APR 05 2021
CMP-4000
023609

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Continued on Next Page          Page  4 of  6

## DECLARATIONS (CONTINUED)

Residential Community Association Policy for CLUB POINTE
Policy Number    91-LG-5865-0

### SECTION I - EXTENSIONS OF COVERAGE - LIMIT OF INSURANCE - PER POLICY

The coverages and corresponding limits shown below are the most we will pay regardless of the number of described premises shown in these Declarations.

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Back-Up of Sewer or Drain | Included |
| Employee Dishonesty | $25,000 |
| Loss Of Income And Extra Expense | Actual Loss Sustained - 12 Months |

### SECTION II - LIABILITY

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Coverage L - Business Liability | $1,050,000 |
| Coverage M - Medical Expenses (Any One Person) | $5,000 |
| Damage To Premises Rented To You | $300,000 |
| Directors And Officers Liability | $1,000,000 |

| AGGREGATE LIMITS | LIMIT OF INSURANCE |
|---|---|
| Products/Completed Operations Aggregate | $2,100,000 |
| General Aggregate | $2,100,000 |
| Directors and Officers Aggregate | $1,000,000 |

Each paid claim for Liability Coverage reduces the amount of insurance we provide during the applicable annual period. Please refer to Section II - Liability in the Coverage Form and any attached endorsements.

Prepared
APR 05 2021
CMP-4000
023510 250
N

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Continued on Reverse Side of Page                    Page  5 of  6

---

## DECLARATIONS (CONTINUED)

Residential Community Association Policy for CLUB POINTE
Policy Number    91-LG-5865-0

Your policy consists of these Declarations, the BUSINESSOWNERS COVERAGE FORM shown below, and any other forms and endorsements that apply, including those shown below as well as those issued subsequent to the issuance of this policy.

### FORMS AND ENDORSEMENTS

| | |
|---|---|
| CMP-4100 | Businessowners Coverage Form |
| CMP-4561.1 | Policy Endorsement |
| CMP-4705.2 | Loss of Income & Extra Expense |
| CMP-4211.2 | Amendatory Endorsement |
| CMP-4814 | Directors & Officers Liability |
| CMP-4556 | Residential Community Assn |
| CMP-4719 | Employee Dishonesty |
| CMP-4746.1 | Hotel Auto Liability |
| FE-3650 | Actual Cash Value Endorsement |
| CMP-4508 | Money and Securities |
| FE-6299.3 | Terrorism Insurance Cov Notice |
| FD-6007 | Inland Marine Attach Doc |

This policy is issued by the State Farm Fire and Casualty Company.

Participating Policy

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                    President

Prepared
APR 05 2021
CMP-4000
023510 250
N

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page  6 of  6

---

STATE FARM FIRE AND CASUALTY COMPANY
A STOCK COMPANY WITH HOME OFFICES IN BLOOMINGTON, ILLINOIS    **INLAND MARINE ATTACHING DECLARATIONS**

Po Box 588912
Nashville TN 38588-0954

Named Insured          M-27-2053-FC1B  F  V

| Policy Number | 91-LG-5865-0 | |
|---|---|---|
| Policy Period | Effective Date | Expiration Date |
| 12 Months | MAR 4 2021 | MAR 4 2022 |

The policy period begins and ends at 12:01 am standard time where premises located.

CLUB POINTE
CONDOMINIUM ASSOCIATION
1232 CLUB POINT WAY
GAINESVILLE GA  30506-1631

## ATTACHING INLAND MARINE

**Automatic Renewal** - If the policy period is shown as 12 months, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Annual Policy Premium          Included

The above Premium Amount is included in the Policy Premium shown on the Declarations.

Your policy consists of these Declarations, the INLAND MARINE CONDITIONS shown below, and any other forms and endorsements that apply, including those shown below as well as those issued subsequent to the issuance of this policy.

### Forms, Options, and Endorsements

| | |
|---|---|
| FE-6871.1 | Inland Marine Computer Prop |
| FE-6729 | Inland Marine Conditions |
| FE-6870 | Amend of Inland Marine Condtns |

See Reverse for Schedule Page with Limits

Prepared
APR 05 2021
FD-6007
023611

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

---

91-LG-5865-0

### ATTACHING INLAND MARINE SCHEDULE PAGE

#### ATTACHING INLAND MARINE

| ENDORSEMENT NUMBER | COVERAGE | LIMIT OF INSURANCE | DEDUCTIBLE AMOUNT | ANNUAL PREMIUM |
|---|---|---|---|---|
| FE-6871.1 | Inland Marine Computer Prop | $  10,000 | $  500 | Included |
| | Loss of Income and Extra Expense | $  10,000 | | Included |

OTHER LIMITS AND EXCLUSIONS MAY APPLY - REFER TO YOUR POLICY

Prepared
APR 05 2021
FD-6007
023611

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

91-LQ-5865-9   033812

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4501.1 POLICY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

1. **BUSINESSOWNERS COVERAGE FORM TABLE OF CONTENTS** is amended as follows:

   a. The title Electronic Data is changed to Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability.

   b. The title Recording And Distribution Of Material or Information In Violation Of Law is changed to Recording And Distribution Of Material.

2. Paragraph 2.f. Dishonesty under **SECTION I – EXCLUSIONS** is replaced by the following:

   f. Dishonesty

   (1) Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, or authorized representatives, whether acting alone or in collusion with each other or with any other party; or

   (2) Theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

   This exclusion applies whether or not an act occurs during your normal hours of operation.

   This exclusion does not apply to acts of destruction by your employees, but theft by your employees is not covered.

   This exclusion does not apply to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

3. **SECTION I – EXTENSIONS OF COVERAGE** is amended as follows:

   a. Paragraph 4.a.(1) under Collapse is replaced by the following:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building.

   b. Paragraph 5. is replaced by the following

5. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss caused by covered water or other liquid, powder, or molten material occurs, we will also pay the cost to tear out and replace only that particular part of the covered building or structure necessary to gain access to the specific point of that system or appliance from which the water or other liquid has escaped.

   We will not pay the cost to repair any defect that caused the loss, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a. Results in discharge of any substance from an automatic fire protection system; or

   b. Is directly caused by freezing.

   The amount we pay under this Extension of Coverage will not increase the applicable Limit of Insurance.

   c. Paragraph 13. is replaced by the following

13. **Personal Property Off Premises**

   You may extend the insurance provided by this coverage form to apply to Covered Property, other than "money" and "securities", "valuable papers and records", or accounts receivable, while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the described premises.

   The most we will pay for loss under this Extension Of Coverage is $10,000.

   The amount we pay under this Extension Of Coverage will not increase the applicable Limit of Insurance.

   Coverage will end 90 days after Business Personal Property has been placed in the storage unit. Coverage does not apply if the storage unit itself has been in one of the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days at the time of loss.

4. **SECTION II – LIABILITY** is amended as follows:

   a. Paragraph 3. – Exclusions is amended as follows:

   (1) The following is added to Paragraph 3. Liquor Liability.

      This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring,

---

91-LQ-5865-9   033812

only if the loss occurs within 90 days after the property is first moved.

The Other Insurance Condition contained in SECTION I AND SECTION II – COMMON POLICY CONDITIONS does not apply to the Extension Of Coverage. The insurance provided under this Extension Of Coverage is primary and does not contribute with any other insurance.

   d. The following is added to Paragraph 22.c. under Equipment Breakdown:

      Paragraph 5.b. under Coverage B – Business Personal Property is replaced by the following:

      b. Be your responsibility to maintain or insure according to the terms of your lease or rental agreement.

   e. The following is added:

      **Business Personal Property In Portable Storage Units**

      You may extend the insurance provided by this coverage form to apply to Business Personal Property, other than "money" and "securities", "valuable papers and records", or accounts receivable, while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the described premises.

      The most we will pay for loss under this Extension Of Coverage is $10,000.

      The amount we pay under this Extension Of Coverage will not increase the applicable Limit of Insurance.

5. **SECTION II – LIABILITY** is amended as follows:

   a. Paragraph 3. – Exclusions is amended as follows:

employment, training, or monitoring of others by an insured, or providing of failing to provide transportation with respect to any person that may be under the influence of alcohol if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph 3.b.

   (2) Paragraph 3.h. under Aircraft, Auto Or Watercraft is replaced by the following:

      h. "Bodily injury" or "property damage" arising out of:

      (1) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

      (2) The operation of any of the following machinery or equipment:

      (a) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (b) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or

      (3) The operation of your business from a land vehicle.

      However, with respect to the operation of any land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration

---

91-LQ-5865-9   033813

law where it is licensed or principally garaged:

   (3) The exclusions in Paragraphs 17.b. and 17.c. under Personal And Advertising Injury are replaced by the following:

      b. Arising out of oral or written publication of material, in any manner, if done by or at the direction of the insured with knowledge of its falsity;

      c. Arising out of oral or written publication of material, in any manner, whose first publication took place before the beginning of the policy period;

   (4) The last paragraph of 17.h. under Personal And Advertising Injury is replaced by the following:

      For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

   b. Paragraphs 18. Electronic Data and 19. Recording And Distribution Of Material In Violation Of Law are replaced by the following:

18. **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

   a. Damages arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information; or

   b. Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost or

expense incurred by you or others arising out of that which is described in Paragraph a. or b. above.

   As used in this exclusion, electronic data means information, facts, or computer programs stored on or on, created or valid on, or transmitted to or from computer software including systems and applications software, on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices, or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve, or send data.

19. **Recording and Distribution of Material**

   Damages arising directly or indirectly out of any communication, by or on behalf of any insured, that violates or is alleged to violate:

   a. The Telephone Consumer Protection Act (TCPA), CAN-SPAM Act of 2003, Fair Credit Reporting Act (FCRA), or Fair and Accurate Credit Transaction Act (FACTA) including any regulations and any amendment of or addition to such statutes;

   b. Any federal, state or local law, statute, ordinance, or regulation, in addition to Paragraph a. above, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information; or

   c. Any other federal, state or local law, statute, ordinance, or regulation that may provide a basis for a separate claim or cause of action arising out of any communication referenced in Paragraphs a. or b. above.

---

91-LQ-5865-9   033813

   c. Paragraph 1.d.(2) under Coverage M – Medical Expenses is replaced by the following:

      (2) Executes authorization to allow us to obtain copies of medical bills, medical records, and any other information we deem necessary to substantiate the claim.

      Such authorizations must not:

      i. Obtaining records, bills, information, and data; or

      ii. Using or retaining records, bills, information, and data collected or received by us;

      b) Require us to waive federal or state laws or regulations;

      c) Prevent us from fulfilling our data reporting and data retention obligations to insurance regulators; or

      d) Prevent us from disclosing claim information and data.

      i. To enable performance of our functions;

      ii. To meet our reporting obligations to insurance regulators;

      iii. To meet our reporting obligations to insurance data consolidators; and

      iv. As otherwise permitted by law.

   If the holder of the information refuses to provide it to us or despite the authorization, then at our request the person making claim or his or her legal representative must obtain the information and promptly provide it to us; and

   e. **SECTION II – WHO IS AN INSURED** is amended as follows:

   (1) Paragraph 1.e. does not apply.

   (2) Paragraphs 2.b.(1) and (4) are replaced by the following:

      (1) "Employee" with respect to "bodily injury" to:

      (a) Any co-"employee" arising out of and in the course of the co-"employee's" employment or

while performing duties related to the conduct of your business; or

      (b) The spouse, child, parent, brother, or sister of that co-"employee" as a consequence of Paragraph (a) above;

   (4) The owner of a "non-owned auto" or any agent of or any person or entity employed by such owner.

   (2) Paragraph 12. under Financial Responsibility Laws of SECTION II – GENERAL CONDITIONS does not apply.

   e. **SECTION II – DEFINITIONS** is amended as follows:

   (1) Paragraph 2.b. replaced by the following:

      2. "Auto" means:

      a. A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

      b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

   (2) The following is added to Paragraph 15."mobile equipment":

      However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or motor vehicle registration law are considered "autos".

   (3) Paragraphs 18.f. and g. of "personal and advertising injury" are replaced by the following

      f. The use of another's advertising idea in your "advertisement";

© Copyright, State Farm Mutual Automobile Insurance Company, 2015
Includes copyrighted material of Insurance Services Office, Inc., with its permission
CONTINUED

91-LG-5865-0   023844

CMP-4561 1
Page 5 of 5

g. Infringing upon another's trade dress or slogan in your "advertisement", or

h. Infringement of another's copyright, patent, trademark, or trade secret.

f. The following are added to SECTION I AND SECTION II – COMMON POLICY CONDITIONS:

**Our Rights Regarding Claim Information**

a. We will collect, receive, obtain, use, and retain all the items described in Paragraph b.(1) below and use and retain the information described in Paragraph b.(3).(b) below in accordance with applicable federal and state laws and regulations and consistent with the performance of our business functions.

b. Subject to Paragraph a. above, we will not be restricted in or prohibited from:

(1) Collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) Using any of the items described in Paragraph b.(1) above; or

(3) Retaining:
  (a) Any of the items in Paragraph b.(1) above; or
  (b) Any other information we have in our possession as a result of

our processing, handling, or otherwise resolving claims submitted under this policy.

c. We may disclose any of the items in Paragraph b.(1) above and any of the information described in Paragraph b.(3).(b) above:
  (1) To enable performance of our business functions;
  (2) To meet our reporting obligations to insurance regulators;
  (3) To meet our reporting obligations to insurance data consolidators;
  (4) To meet other obligations required by law; and
  (5) As otherwise permitted by law.

d. Our rights under Paragraphs a., b., and c. above shall not be impaired by any:
  (1) Authorization related to any claim submitted under this policy; or
  (2) Act or omission of an insured or a legal representative acting on an insured's behalf.

**Electronic Delivery**

With your consent, we may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

All other policy provisions apply.

© Copyright, State Farm Mutual Automobile Insurance Company, 2015
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CMP-4561 1

(CONTINUED)

---

91-LG-5865-0   023845

FE-6871 1
Page 2 of 4

(2) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**EXTENSIONS OF COVERAGE**

**1. Computer Programs And Electronic Data**

a. We will pay for accidental direct loss to:
  (1) The following types of "computer programs" and "electronic data" that you own, license from others, lease from others, or rent from others:
    (a) "Computer programs" used in your business operations;
    (b) The "electronic data" that exists in "computer" memory or on "computer" storage media, used in your business operations;
  (2) That portion of your customers' "electronic data" that is supplied to you for processing or other use in your business operations. Coverage for customers' "electronic data" is limited to the specific data file(s) containing the information you are processing or using in your business operations.

b. All items under the EXCLUSIONS section of this form apply to this Extension Of Coverage except:
  (1) Item a. in Paragraph 2. does not apply to:
    (a) "Computer programs" other than the program in which the error or omission in programming occurs; and
    (b) "Electronic data";
  covered under this extension;
  (2) Item b. in Paragraph 2. does not apply to "electronic data" covered under this extension; and

(3) Items a. and c. in Paragraph 2. do not apply to "computer programs" and "electronic data" covered under this extension.

c. We do not provide coverage for loss to, or loss of value resulting from infringement of your intellectual property rights.

**2. Fire Protection Devices**

We will cover your expense, for up to $25,000, to recharge or refill any fire protection devices which have been discharged to protect the covered property.

The amount we pay under this Extension Of Coverage is an additional amount of insurance and is not subject to a deductible.

**3. Debris Removal**

We will cover your expense to remove the debris of covered property, caused by Covered Cause Of Loss.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

**SPECIAL CONDITIONS**

**1. Valuation**

We agree all losses to:

a. "Computer equipment" will be determined based on the cost to repair or replace with that of similar performance, capacity or function;

b. Removable data storage media will be determined based on the cost to repair or replace that media with media of similar performance, capacity or function;

c. "Computer programs":
  (1) That are commercial off-the-shelf will be determined based on the cost to repair or replace with that of similar performance, capacity or function;
  (2) That are not commercial off-the-shelf will be determined based on the cost of reproducing the programs if they are reproduced. If not reproduced, loss will be determined based on the cost of blank, readily available, removable data storage media, such as blank disks, with suitable capacity to store the programs;

d. "Electronic data" will be determined based on the cost of reproducing the data, if it is reproduced. If not reproduced, loss will be

© Copyright, State Farm Mutual Automobile Insurance Company, 2015
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
(CONTINUED)

---

91-LG-5865-0   023844

FE-6871 1
Page 1 of 4

**FE-6671.1 INLAND MARINE COMPUTER PROPERTY FORM**

**INSURING AGREEMENT**

We will pay for accidental direct physical loss to:

1. "Computer equipment", used in your business operations, that you own, lease from others, rent from others, or that is loaned to you. However, we do not insure "computer equipment" used to operate or control vehicles.

2. Removable data storage media used in your business operations to store "electronic data".

We do not insure property you lease to others or rent to others.

We do not insure "computer programs" or "electronic data" except as provided in the Computer Programs And Electronic Data Extension Of Coverage.

**LIMIT OF INSURANCE**

We will pay for all covered loss up to the limits shown on the Schedule Page.

**DEDUCTIBLE**

The deductible amount shown on the Schedule Page will only apply to the property covered under this form. This amount will be deducted from the amount of any loss under this coverage.

**EXCLUSIONS**

1. We do not insure under any coverage for any loss to any property while in transit as checked baggage on a commercial airline;

2. We do not insure for loss either consisting of, or caused by, one or more of the following:
  a. Errors and omissions in programming. However, we do insure for any resulting loss unless the resulting loss itself is excluded;
  b. Faulty, inadequate, unsound or defective design, specifications, workmanship, or repair. However, we do insure for any resulting loss unless the resulting loss itself is excluded;
  c. Wear, tear, marring, scratching, rust, corrosion or deterioration. However, we do insure for any resulting loss unless the resulting loss itself is excluded;
  d. Property that is missing, where the only evidence of the loss is a shortage disclosed on taking inventory, or other instances

where there is no physical evidence to show what happened to the property;
  e. Any dishonest or criminal act occurring at any time by you, any of your partners, employees, directors, or trustees;
  f. Hidden or latent defect or any quality in property that causes it to damage or destroy itself. However, we do insure for any resulting loss unless the resulting loss itself is excluded;
  g. Obsolescence;

3. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
  a. Governmental Action
    Seizure or destruction of property by order of governmental authority.
    But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread.
  b. Nuclear Hazard
    Nuclear reaction or radiation, or radioactive contamination. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke.
    But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the loss caused by that fire.
  c. War And Military Action
    (1) War, including undeclared or civil war;
    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2015
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
(CONTINUED)

---

91-LG-5865-0   023845

FE-6871 1
Page 3 of 4

determined based on the cost of blank, readily available, removable data storage media, such as blank disks, with suitable capacity to store the data.

**2. One Loss**

If an initial loss causes other losses, all will be considered one loss. All losses that are the result of the same event will be considered one loss.

**OPTIONAL COVERAGE – LOSS OF INCOME AND EXTRA EXPENSE**

1. If a limit is shown on the Inland Marine Schedule Page for Loss Of Income And Extra Expense, coverage under this form is provided, subject to that limit, for the following:

a. The actual "Loss Of Income" you sustain due to the necessary "suspension" of your operations during the "period of restoration". The "suspension" must be caused by damage or destruction to property covered under this form, by a Covered Cause Of Loss;

b. Any necessary "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no damage or destruction to property covered under this form, by a Covered Cause Of Loss.

We will only pay for "Loss Of Income" or "extra expense" that you sustain during the "period of restoration" and only within 12 consecutive months after the date of loss. We will only pay for "ordinary payroll" expenses for 90 days following the date of loss.

2. We will not pay for:

a. Any "extra expense" or increase of "Loss Of Income" caused by suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of your operations, we will cover such loss that affects your "Loss Of Income" during the "period of restoration";

b. Any "extra expense" caused by suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration";

c. Any other consequential loss;

d. Loss caused by seizure or destruction of property by order of governmental authority. But we will pay for acts of destruction ordered by governmental authority and

taken at the time of a fire to prevent its spread.

**DEFINITIONS**

1. "Computer" means:
  a. Programmable electronic equipment that is used to store, retrieve and process data, and
  b. Associated peripheral equipment that provides communication, including input and output functions such as printing and data-entry functions such as data scanners.
  "Computer" does not include those used to operate production type machinery or equipment.

2. "Computer equipment" means "computers", "computer" cables and wiring not attached to or forming a part of a building, and equipment manuals. "Computer equipment" does not mean other types of devices with internal computing capability, such as intelligent devices that contain an embedded chip or some other form of logic circuitry, or the computing components in those devices.

3. "Computer programs" means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to, which enable the "computer" or device to receive, process, store, retrieve or send data.

4. "Electronic data" means information, facts or "computer programs" stored as or on, created on, or transmitted to or from "computer" software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of "computer" software which are used with electronically controlled equipment.

5. "Extra expense" means expense incurred:
  a. To avoid or minimize the "suspension" of business and to continue operations;
  b. To minimize the "suspension" of business if you cannot continue operations.
  c. To repair or replace any property to the extent it reduces the amount of loss that would otherwise have been payable under this coverage or "Loss Of Income" coverage.

© Copyright, State Farm Mutual Automobile Insurance Company, 2015
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
(CONTINUED)

## Top-left column

91-LQ-5065-9   003816

FE-6271 1
Page 4 of 4

**6.** "Loss Of Income" means the sum of the amounts as described in a. and b. below.

a. Net income (net profit or loss before income taxes) that would have been earned or incurred if no accidental direct loss had occurred, including:

(1) "Rental value";

(2) "Maintenance fees", if you are a condominium association or other similar community association;

(3) Total receipts and contributions (less registration earnings) normally received during the period of disruption of operations; and

(4) Tuition and fees from students, including fees from room, board, laboratories and other similar sources.

b. Continuing normal operating expenses incurred, including "ordinary payroll expenses".

Net income does not include any net income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause Of Loss on customers or on other businesses.

**7.** "Ordinary payroll expenses":

a. Mean payroll expenses for all your employees except:

(1) Officers;

(2) Executives;

(3) Department Managers; and

(4) Employees under contract;

b. Include:

(1) Payroll;

(2) Employee benefits, if directly related to payroll;

(3) FICA payments you pay;

(4) Union dues you pay; and

(5) Workers' compensation premiums.

**8.** "Period of restoration" means the period of time that:

a. Begins immediately after the time of loss to property covered by this form; and

b. Ends on the date when the property covered by this form should be repaired, rebuilt, restored or replaced with reasonable speed and similar quality.

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Rental value" means:

a. The total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you;

b. The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

c. The fair rental value of any portion of the described premises which is occupied by you.

**11.** "Suspension" means the partial slowdown or complete cessation of your business activities.

© Copyright, State Farm Mutual Automobile Insurance Company, 2015
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FE-6271 1

(CONTINUED)

## Top-right column

91-LQ-5065-9   003816

CMP-4705.2
Page 1 of 4

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CMP-4705.2 LOSS OF INCOME AND EXTRA EXPENSE**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The coverage provided by this endorsement is subject to the provisions of **SECTION I — PROPERTY**, except as provided below.

**COVERAGES**

**1. Loss Of Income**

a. We will pay for the actual "Loss Of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss. With respect to loss to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, then the described premises means:

(1) The portion of the building which you rent, lease or occupy; and

(2) Any area within the building or on the site at which the described premises are located, if that area is the only such area that:

(a) Services; or

(b) Is used to gain access to;

the described premises.

b. We will only pay for "Loss Of Income" that you sustain during the "period of restoration" that occurs within the number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations.

**2. Extra Expense**

a. We will pay necessary "Extra Expense" you incur during the "period of restoration" that you would not have incurred if there had been no accidental direct physical loss to property of the described premises. The loss must be caused by a Covered Cause Of Loss. With respect to loss to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, then the described premises means:

(1) The portion of the building which you rent, lease or occupy; and

(2) Any area within the building or on the site at which the described premises are located, if that area is the only such area that:

(a) Services; or

(b) Is used to gain access to;

the described premises.

b. We will only pay for "Extra Expense" that occurs after the date of accidental direct physical loss and within the number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations.

**3. Extended Loss Of Income**

a. If the necessary "suspension" of your "operations" produces a "Loss Of Income" payable under this policy, we will pay for the actual "Loss Of Income" you incur during the period that:

(1) Begins on the date property (except finished stock) is actually repaired, rebuilt or replaced and "operations" are resumed; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CONTINUED

## Bottom-left column

91-LQ-5065-9   003817

CMP-4705.2
Page 2 of 4

(2) Ends on the earlier of:

(a) The date you could restore your "operations", with reasonable speed, to the level which would generate the lost income amount that would have existed if no accidental direct physical loss had occurred; or

(b) 60 consecutive days after the date determined in Paragraph a.(1) above.

However, Extended Loss Of Income does not apply to "Loss Of Income" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause Of Loss in the area where the described premises are located.

b. "Loss Of Income" means the sum of net income and continuing normal operating expenses caused by the necessary "suspension" of your "operations". However, the "suspension" must be caused by accidental direct physical loss at the described premises caused by any Covered Cause Of Loss.

**4. Civil Authority**

a. When a Covered Cause Of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

b. Civil Authority coverage for "Loss Of Income" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

c. Civil Authority coverage for necessary "Extra Expense" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority coverage for "Loss Of Income" ends;

whichever is later.

**EXTENSIONS OF COVERAGE**

**1. Newly Acquired Property**

a. You may extend the insurance provided by this endorsement to apply to newly acquired or constructed property covered as described in Paragraph 12. of SECTION I — PROPERTY under the "suspension" of your policy.

b. The most we will pay at any one occurrence under this coverage for "Loss Of Income" and necessary "Extra Expense" is the actual loss you sustain.

**2. Interruption Of Web Site Operations**

a. You may extend the insurance provided by this endorsement to apply to the necessary interruption of your business. The interruptions must be caused by an accidental direct physical loss to your Web Site Operations at the premises of a vendor acting as your service provider.

Such interruption must be caused by a Covered Cause Of Loss other than a loss covered under Equipment Breakdown Extension Of Coverage of your Businessowners Coverage Form.

(1) Coverage Time Period

You may extend the insurance provided under this Extension to apply for the lost income during the seventy-two (72) hours after the direct physical loss occurs during the first 12 hours after the Covered Cause Of Loss.

(2) Conditions

(a) This coverage applies only if you have a back-up copy of your Web Site stored at a location other than the site of the Web Site vendor and to the extent "Loss Of Income" is permanently lost.

(b) Notwithstanding any provision to the contrary, the coverage provided under this Interruption Of Web Site

© Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

## Bottom-right column

91-LQ-5065-9   003818

CMP-4705.2
Page 3 of 4

Operations Extension Of Coverage is primary to any LOSS OF INCOME AND EXTRA EXPENSE coverage provided by the Inland Marine Computer Property Form.

b. The most we will pay at any one occurrence under this coverage is $10,000.

**3. Off Premises — Loss Of Income**

a. You may extend the insurance provided by this endorsement to apply to the necessary "suspension" of your business. The "suspension" must be caused by an accidental direct physical loss to Covered Property while it is in the course of transit or at another premises.

If the Covered Property is located at another premises you own, lease, operate, or regularly use, the insurance provided under this extension applies only if the loss occurs within 90 days after the property is first moved.

We will only pay for loss you sustain during the period beginning immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss and ending when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

b. The most we will pay at any one occurrence under this coverage is $20,000.

**EXCLUSIONS**

We will not pay for:

**1.** Any "Extra Expense", or increase of "Loss Of Income", caused by:

a. Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers, pickets, or any others charged with rebuilding, repairing, or replacing property; or

b. Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of your "operations", we will cover such loss that affects your "Loss Of Income" during the "period of restoration".

**2.** Any other consequential loss.

**CONDITION**

**Resumption Of Operations**

We will reduce the amount of your:

**1.** "Loss Of Income", other than "Extra Expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**2.** "Extra Expense" loss to the extent you can return "operations" to normal and discontinue such "Extra Expense".

**DEDUCTIBLE**

No deductible applies to the coverage provisions provided in this "Loss Of Income" endorsement.

However, for any loss covered under Paragraph 22.b.(4) of the Equipment Breakdown Extension Of Coverage of your policy, the Special Deductible for Equipment Breakdown will apply to this "Loss Of Income".

**DEFINITIONS**

**1.** "Extra Expense" means expense incurred:

a. To avoid or minimize the "suspension" of business and to continue "operations":

(1) At the described premises; or

(2) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary location; and

b. To minimize the "suspension" of business if you cannot continue "operations"; or

c. To:

(1) Repair or replace any property, or

(2) Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under the coverage on "Loss Of Income" resulting.

**2.** "Loss Of Income" means the sum of the amounts as described in a. and b. below:

a. Net income (net profit or loss before income taxes) that would have been earned or incurred if no accidental direct physical loss had occurred, including:

(1) "Rental value";

© Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CONTINUED

(2) "Maintenance fees", if you are a condominium association or other similar community association;

(3) Total receipts and contributions (less operating expenses) normally received during the period of disruption of operations; and

(4) Tuition and fees from students, including fees from room, board, laboratories and other similar sources.

Net Income does not include any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause Of Loss on customers or on other businesses.

b. Continuing normal operating expenses incurred, including "ordinary payroll expenses".

3. "Maintenance fees" means the regular payment made to you by unit-owners and used to service the common property.

4. "Operations" means your business activities occurring at the described premises.

5. "Ordinary payroll expenses":

a. Mean payroll expenses for all your employees except:

(1) Officers;

(2) Executives;

(3) Department Managers; and

(4) Employees under contract.

b. Include:

(1) Payroll;

(2) Employee benefits, if directly related to payroll;

(3) FICA payments you pay;

(4) Union dues you pay; and

(5) Workers' compensation premiums.

6. "Period of restoration":

a. Means the period of time that:

(1) Begins immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss at the described premises; and

(2) Ends on the earlier of:

(a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(b) The date when business is resumed at a new permanent location.

b. Does not include any increased period required due to the enforcement of any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

7. "Rental value" means:

a. The total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you;

b. The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

c. The fair rental value of any portion of the described premises which is occupied by you.

8. "Suspension" means:

a. The partial slowdown or complete cessation of your business activities; or

b. That a part or all of the described premises is rendered untenantable, if coverage for "Loss Of Income" applies.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission

(CONTINUED)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CMP-4211.2 AMENDATORY ENDORSEMENT (Georgia)**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

1. **SECTION I** is amended as follows:

a. The following is added to **SECTION I – COVERED CAUSES OF LOSS:**

Loss does not include diminution in value.

b. Paragraph **(1)** under **1.o. Loss Payment** of **SECTION I – CONDITIONS** is replaced by the following:

(1) At our option, we will either:

(a) Repair, rebuild, or replace the property with other property of like kind and quality, or pay the cost of such repair, rebuilding, or replacement; or

(b) Take all or any part of the property at an agreed or appraised value.

With respect to Paragraph (1)(a), this policy covers only the cost of repair, rebuilding or replacement. Such cost does not include any reduction in the value of the Covered Property prior to or following repair, rebuilding, or replacement as compared to the value before the loss.

2. **SECTION II** is amended as follows:

a. The following is added to Paragraph 7.a. of Pollution under **SECTION II – EXCLUSIONS:**

This exclusion does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, spill, release or escape of "pollutants" which occurs quickly and abruptly and is accidental.

b. The following is added to Paragraph 20. Fungi under **SECTION II – EXCLUSIONS:**

This exclusion does not apply to the extent there is coverage provided under Fungi Limited Liability of **SECTION II – LIABILITY LIMITATIONS.**

c. The following is added under **SECTION II:**

**SECTION II – LIABILITY LIMITATIONS**

**Fungi Limited Liability**

We will pay up to our limit of liability all sums which the insured is legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of or resulting from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" at or from any source or location.

Regardless of the number of insureds under this coverage or number of claims made or "suits" brought, the most we will pay under this Fungi Limited Liability coverage for all claims for damages in any one "occurrence" is $50,000. This limit is also the most we will pay under this Fungi Limited Liability coverage for the sum of all claims arising from all "occurrences" during each policy period.

3. **SECTION I AND SECTION II — COMMON POLICY CONDITIONS** are amended as follows:

a. Paragraph **2.** is replaced by the following:

**2. Concealment, Misrepresentation Or Fraud**

We will not provide coverage to one or more insureds if, at any time, you or any other insured misrepresent, omit, conceal facts, and provide incorrect statements in any descriptions or statements relating to this insurance and such misrepresentations, omissions, concealment of facts, and incorrect statements are:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by us; or

(3) We in good faith would either not have issued the policy or contract or would not have issued a policy or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission

contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to us as required either by the application for the policy or contract or otherwise.

b. Paragraph **8.** is replaced by the following:

**8. Premiums**

a. The first Named Insured shown in the Declarations:

(1) Is responsible for the payment of all premiums; and

(2) Will be the payee for any return premiums we pay.

b. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

c. Unless otherwise provided by an alternative payment plan in effect with "State Farm Companies", you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

(1) Paid to us prior to the anniversary date; and

(2) Determined in accordance with Paragraph **b.** above.

Our forms then in effect will apply.

d. Undeclared exposures or change in your business operation, acquisition, or use of premises may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

When you request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, we may adjust the premium in accordance with the change during the policy period and you must pay any additional premium due within the time we specify.

e. The premium for this policy may vary based upon:

(1) The purchase of other insurance from the "State Farm Companies".

(2) The purchase of products or services from an organization that has entered into an agreement or contract with the "State Farm Companies". The "State Farm Companies" do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) An agreement, concerning the insurance provided by this policy, that the "State Farm Companies" has with an organization in which you have a membership, or of which you are a subscriber, licensee, or franchisee.

f. Your purchase of this policy may allow:

(1) You to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the "State Farm Companies", subject to their applicable eligibility rules; or

(2) The premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the "State Farm Companies" or by an organization that has entered into an agreement or contract with the "State Farm Companies". The "State Farm Companies"

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission

do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

c. The following are added:

**Cancellation**

a. The first Named Insured shown in the Declarations may cancel this policy at any time by giving us advance notice of the date cancellation is to take effect, subject to the following:

(1) If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later.

(2) If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

(a) 10 days from the date of mailing or delivering our notice; or

(b) The effective date of cancellation stated in the first Named Insured's notice to us.

(3) We may require written, electronic, or other recorded verification of the request for cancellation prior to such cancellation taking effect.

b. If we decide to:

(1) Cancel or nonrenew this policy;

(2) Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

(3) Change any policy provision which would limit or restrict coverage;

then we will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us.

c. We will mail or deliver notice at least:

(1) 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium;

(2) 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

(3) 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. Premium Refund

(1) If this policy is cancelled, we will send the first Named Insured any premium refund due.

(2) If we cancel, the refund will be pro rata, except as provided in Paragraph **f.(3)** below.

(3) If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

(4) If the first Named Insured cancels, the refund may be less than pro rata.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission

914-Q-5865-9    023820

(5) The cancellation will be effective even if we have not made or offered a refund.

g. If the policy insured more than one Named Insured

(1) The first Named Insured may affect cancellation for the account of all insureds; and

(2) Our notice of cancellation to the first Named Insured is notice to all insureds. Payment of unearned premium to the first Named Insured is for the account of all interests thereon.

4. THE FOLLOWING ADDITIONAL PROVISIONS ARE APPLICABLE ONLY TO POLICIES INSURING RESIDENTIAL REAL PROPERTY WHERE THE NAMED INSURED IS A NATURAL PERSON:

Paragraph e. under Cancellation above, is replaced by the following:

e. We will mail or deliver notice at least:

(1) 10 days before the effective date of cancellation if this policy has been in effect for 60 days or less or if we cancel for nonpayment of premium;

(2) 45 days before the effective date of cancellation if this policy has been in effect for more than 60 days and only if we cancel for a reason listed below.

(3) Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or

CMP-4211.2

presenting a claim under this policy.

(4) Upon the occurrence of a change in the risk which substantially increases any hazard insured against, or

(5) Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy; or

(6) 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or reduce coverage.

THE FOLLOWING ADDITIONAL PROVISIONS ARE APPLICABLE ONLY TO POLICIES WRITTEN TO PERMIT AN AUDIT:

The following is added to Cancellation above:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

(1) We will make two documented efforts to send you and your agent notification of contactual cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

(2) If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

All other policy provisions apply.

© Copyright, State Farm Mutual Automobile Insurance Company, 2015
Includes copyrighted material of Insurance Services Office, Inc., with its permission

---

FE-8733 INLAND MARINE CONDITIONS

Coverage in the Inland Marine Form is primary to any coverage provided in the policy this Form is attached to, for the same property.

The following Conditions also apply:

1. Agreement. We agree to provide the Insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.

2. Definitions. Throughout this policy, the words "you" and "your" refer to the Named Insured and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

3. Valuation. The value of covered property will be determined based on the provisions in the applicable coverage form attached.

4. Loss Payment. In the event of loss covered by this policy:

a. We will give notice, within 30 days after we receive the sworn statement of loss, of our intent to settle the loss according to one of the following methods:

(1) Pay the value of lost or damaged property as determined in the Valuation Condition shown in the applicable coverage form;

(2) Pay the cost of replacing or repairing the lost or damaged property, plus any reduction in value of repaired items;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

b. We will not pay you more than your financial interest in the covered property.

c. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the covered property.

d. We may elect to defend you, at our expense, against suits arising from claims of owners of property.

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission
(CONTINUED)

FE-8733
Page 1 of 3

e. We will pay for covered loss within 30 days after we receive the sworn statement of loss, if:

(1) You have complied with all of the terms of this policy, and

(2) We have reached agreement with you on the amount of loss or an appraisal award has been made.

5. Duties in the Event of Loss. You must see that the following are done in the event of loss to covered property.

a. Notify the police if a law may have been broken;

b. Give us prompt notice of the loss. Include a description of the lost or damaged property in the notice.

c. As soon as possible, give us a description of how, when and where the loss occurred;

d. Take all reasonable steps to protect the covered property from further damage by an insured loss. If possible, set the damaged property aside and in the best possible order for examination. Also keep a record of your emergency and temporary repair expenses for consideration in the settlement of the claim. This will not increase the limit of insurance;

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed;

f. Permit us to inspect the property and records proving the loss;

g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed;

h. Send us a signed, sworn statement of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms;

i. Cooperate with us in the investigation or settlement of the claim;

---

914-Q-5865-9    023821

j. Resume part or all of your business activities at the described premises as quickly as possible.

6. Appraisal. If you and we disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

7. Abandonment. There can be no abandonment of any property to us.

8. Legal Action Against Us. No one may bring legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date on which the accidental direct physical loss occurred. But if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer period of time will apply.

9. Recovered Property. If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property subject to the limit of insurance.

No Benefit to Bailee. No person or organization, other than you, having custody of covered property will benefit from this insurance.

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission
(CONTINUED)

FE-8733
Page 2 of 3

11. Knowledge or Control. We will not pay for loss while the chance of loss is increased by any means within your knowledge or control.

12. Policy Period, Coverage Territory. We cover loss commencing during the policy period and within or between the coverage territory. The coverage territory is the United States of America (including its territories and possessions), Puerto Rico and Canada.

13. Changes

a. This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

b. We may change the Named Insured's policy policies as shown in the Declarations and all changes will be made at addresses provided to us by:

(1) You; or

(2) The United States Postal Service.

14. Concealment, Misrepresentation or Fraud. This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured intentionally conceal or misrepresent a material fact concerning:

a. This policy;

b. The covered property;

c. Your interest in the covered property; or

d. A claim under this policy

15. Examination of Your Books and Records. We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

16. Inspections and Surveys

a. We have the right to:

(1) Make inspections and surveys at any time;

(2) Give you reports on the conditions we find; and

(3) Recommend changes.

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission
(CONTINUED)

FE-8733
Page 3 of 3

Our forms then in effect will apply. If you do not pay the construction premium, this policy will expire on the first anniversary date after each Named Insured has received the premium.

d. Undeclared exposures, acquisition, or change in your business operation may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

20. Transfer of Rights of Recovery Against Others to Us. If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

21. Transfer of Your Rights and Duties Under This Policy. Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

22. Conformity to State Law. When a provision of this policy is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

© Copyright, State Farm Mutual Automobile Insurance Company, 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission
(CONTINUED)

94-LO-5865-9    023822

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.



## CMP-4814 DIRECTORS AND OFFICERS LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**1.** The following coverage is added to SECTION II — LIABILITY.

### DIRECTORS AND OFFICERS LIABILITY

a. When a Limit Of Insurance as shown in the Declarations for Directors And Officers Liability, we will pay those sums that the insured becomes legally obligated to pay as damages because of a "wrongful act" to which this endorsement applies.

We will have the right and duty to defend the insured, by counsel of our choice, against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this endorsement does not apply. We may at our discretion, investigate any incident and settle any claim or "suit" with or without the insured's consent, for any reason and at any time. But

(1) The most we will pay for damages is limited as described in SECTION II — DIRECTORS AND OFFICERS LIABILITY LIMITS OF INSURANCE; and

(2) Our right and duty to defend end when we have used up the amount in the payment of judgments or settlements for a "wrongful act".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section II — Supplementary Payments.

b. This insurance applies to a "wrongful act" only if the "wrongful act" takes place:

(1) During the policy period and a claim is made in writing or "suit" filed and brought no later than one year from the end of the policy period; or

(2) Prior to the policy period when:

(a) There is no other insurance which:
    i. Is valid and collectible; or

ii. Would be valid and collectible but for the exhaustion of the limits of insurance;

(b) No insured had under SECTION II — WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of a "wrongful act", had prior knowledge or could reasonably have foreseen any circumstances which might result in a claim or "suit"; and

(c) A claim is made in writing or "suit" filed and brought during the policy period.

c. All damage involving a single "wrongful act" or a series of related "wrongful acts", caused by one or more persons, is considered one "wrongful act".

**2.** With respect to coverage provided under Directors And Officers Liability, the exclusions under SECTION II — Exclusions are replaced with the following:

### Section II — Exclusions

This coverage provided under Directors And Officers Liability does not apply to:

a. Criminal Acts
Dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts.

b. Actual Knowledge Or Intent
"Wrongful act" by an insured with actual knowledge of its wrongful nature or with intent to cause injury or damage.

c. Bodily Injury, Property Damage Or Personal Or Advertising Injury
"Bodily injury", "property damage" or "personal or advertising injury" liability.

d. Profit Or Advantage From Securities
Any profit, remuneration or advantage, resulting from the purchase or sale of any securities, including any accounting of these.

---

e. Salaries Or Compensations
Salaries, compensations, bonuses or other remuneration, of employees, directors, officers, "managers" or trustees.

f. Insurance Policy and Claims
Any failure or omission to effect, maintain, or procure any insurance policy or bond, including any failure or omission to report a loss or obtain proper amounts, forms, conditions or provisions on any insurance policy or bond.

g. Personal Profit Or Advantage
Damages arising out of any transaction of the insured from which the insured will gain any personal profit or advantage, which is not shared equitably by the members of the organization.

h. Civil Rights Violations
Violations of any federal or state civil rights law or local ordinance, including but not limited to discrimination on account of race, religion, disability, sex or age.

i. Non-Monetary Relief
Any costs incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief.

j. Fines Or Penalties
Any civil or criminal fines or penalties imposed by law.

k. ERISA
Any obligation of the insured under the Employees' Retirement Income Security Act (ERISA) and any amendments thereto or any similar federal, state or local statute.

l. Pollution, "Fungi" Or Bacteria
"Pollutants", "fungi", bacteria, wet or dry rot or nuclear radiation or the cost of expense to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants", "fungi", bacteria, wet or dry rot or nuclear reaction.

m. Construction Operations
Damage caused by or resulting from operations involving construction, design, survey and engineering services performed by or on behalf of the declarant, builder, sponsor, developer, promoter, engineer or architect of any premises insured under this policy.

---

n. Rights Against Builder
Any failure or inability of any insured to enforce your rights against the declarant, builder, sponsor, developer, promoter, engineer or architect at any premises insured under this policy.

o. Workers' Compensation And Similar Laws
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

p. Employment-Related Practices
(1) Damages to:
    i. A person arising out of any:
        i. Refusal to employ that person;
        ii. Termination of that person's employment; or
        iii. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, malicious prosecution, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
    (b) The spouse, child, parent, brother or sister of that person as a consequence of Paragraph (a) above.

(2) This exclusion applies:
    (a) Whether the insured may be liable as an employer or in any other capacity;
    (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury; or
    (c) Whether the injury causing event described in Paragraph (1)(i) above occurs before employment, during employment of after employment of that person.

q. Other Organizations
Any "wrongful act" committed or allegedly committed by any insured serving in any position or capacity in any organization or association other than the Named Insured even if the Named Insured directed or requested that insured to serve in such other position or capacity.

© Copyright, State Farm Mutual Automobile Insurance Company, 2005
Includes copyrighted material of Insurance Services Office, Inc., with its permission
CONTINUED

---

94-LO-5865-9    023822

r. Supervision Of Contractors
Any "wrongful act" in the selection or direct or indirect supervision of any contractor or subcontractor liable or alleged to be liable for any defect in construction at any premises insured under this policy.

s. Budgeting
Any act or failure to budget, reserve, conduct reserve studies or account for the cost to upkeep, maintain or address deficiencies on repairs regarding any premises insured under this policy.

**3.** With respect to coverage provided under Directors And Officers Liability, SECTION II — WHO IS AN INSURED is replaced with the following:

### SECTION II — DIRECTORS AND OFFICERS LIABILITY LIMITS OF INSURANCE

The unqualified word insured means only the following:

a. Any of your directors, officers, "managers" or trustees, collectively and individually, which form your administrative body provided that each individual:
    (1) Is duly elected or appointed to serve on the managing body of this organization; and
    (2) Acts within the scope of those duties as a director, officer, "manager" or trustee on your behalf.

However if the declarant, builder, sponsor, developer, promoter, engineer or architect is also a director, officer, "manager" or trustee, the declarant, builder, sponsor, developer, promoter, engineer or architect is an insured, but only with respect to their liability arising solely out of his or her capacity as a director, officer, "manager" or trustee.

b. The Named Insured shown in the Declarations with respect to liability because of "wrongful acts" committed by an insured.

c. Any of your members or retirees, but only with respect to their liability for your activities or activities they perform on your behalf as a member of a committee appointed by the administrative or managing body

d. Any lawful spouse of any person identified in Paragraph a.(1) or a.(2) above, but only in respect to liability arising solely out of his or her capacity as a spouse where such liability seeks damages from that marital property, community property, jointly held property or property transferred from any

---

person identified in Paragraph a.(1) or a.(2) above. The spouse is not an insured for any "wrongful act" of any person in Paragraph a.(1) or a.(2) above.

e. No person or organization, including those listed in Paragraphs a. through d. above, is an insured with respect to "wrongful act":
    (1) For which that person or organization may be liable in their capacity as a declarant, builder, sponsor, developer, promoter, engineer or architect; or
    (2) While acting within the scope of their duties for a declarant, builder, sponsor, developer, promoter, engineer or architect.

**4.** With respect to coverage provided under Directors And Officers Liability, SECTION II — LIMITS OF INSURANCE is replaced by the following:

### SECTION II — DIRECTORS AND OFFICERS LIABILITY LIMITS OF INSURANCE

a. The Limits Of Insurance for Directors And Officers Liability, shown in the Declarations, and the rules below, fix the most we will pay regardless of the number of:
    (1) Insureds;
    (2) Premises insured;
    (3) Claims made or "suits" brought; or
    (4) Persons or organizations making claims or bringing "suits".

b. The most we will pay for damages because of any one "wrongful act" in the Directors And Officers Liability Limit shown in the Declarations.

The most we will pay for the sum of all damages because of all "wrongful acts" during the policy period in the Directors And Officers Aggregate Limit shown in the Declarations.

**5.** With respect to coverage provided under Directors And Officers Liability, the following definitions are added to SECTION II — DEFINITIONS:

"Wrongful act" means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted by an insured arising solely out of his or her capacity as director, officer, "manager" or trustee relating to the operations of your organization.

All other policy provisions apply.

© Copyright, State Farm Mutual Automobile Insurance Company, 2005
Includes copyrighted material of Insurance Services Office, Inc., with its permission

(CONTINUED)

---

94-LO-5865-9    023822

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4556 RESIDENTIAL COMMUNITY ASSOCIATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**I. SECTION I — PROPERTY** is amended as follows:

a. Under Coverage A — Buildings:
    (1) Paragraph 2. is replaced by the following:
        2. Fixtures, outside of individual units, including outdoor fixtures.
    (2) Paragraph 5.d. is replaced by the following:
        d. Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units
    (3) The following is added:
        Any of the following types of property contained within an individual unit, regardless of ownership:
        (a) Fixtures, improvements and alterations that are a part of the building or structure; and
        (b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

    But buildings does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraphs (a) or (b) above.

b. Under Coverage B — Business Personal Property.
    (1) Paragraph 1. is replaced by the following:
        1. Property that:
            a. You own, lease from others or rent from others, or that is loaned to you; or
            b. Owned indirectly by all unit-owners;
    (2) Paragraph 3. does not apply.

---

c. The following is added under Property Not Covered:

Personal property owned by a unit-owner except as provided in Coverage A — Buildings or Coverage B — Business Personal Property.

d. Paragraph 1.b. of SECTION I — EXCLUSIONS is replaced by the following:

b. Water
    (1) Flood, surface water, waves (including tidal wave, tsunami, seiche) tides, tidal water, overflow of any body of water or spray from any of these, all whether driven by wind or not, except as provided in the Backup Of Sewer Or Drain Extension Of Coverage;
    (2) Mudslide or mudflow;
    (3) Water or sewage that backs up or overflows from a sewer, drain or sump, except as provided in the Back-up Of Sewer Or Drain Extension Of Coverage;
    (4) Water or sewage under the ground surface pressing on, or flowing or seeping through:
        (a) Foundations, walls, floors or paved surfaces;
        (b) Basements, whether paved or not; or
        (c) Doors, windows or other openings; or
    (5) Material caused or otherwise moved by any of the Water, as described in Paragraphs (1) through (4) above.

    But if Water, as described in Paragraphs (1) through (5) above, results in accidental direct physical loss by fire, explosion or sprinkler leakage, we will pay for the loss caused by that fire, explosion or sprinkler leakage.

© Copyright, State Farm Mutual Automobile Insurance Company, 2011
Includes copyrighted material of Insurance Services Office, Inc., with its permission
CONTINUED

91-LO-5865-9    023824

CMP-4356
Page 2 of 3

**c. SECTION I — EXTENSIONS OF COVERAGE** is amended as follows:

(1) Regardless of any language to the contrary in this policy, and only for the following Extensions Of Coverage, the most we will pay for loss at any one occurrence at each "complex" is the Limit Of Insurance for that Extension Of Coverage shown in the Declarations:

Pollutant Clean Up And Removal;

Money Orders And Counterfeit Money;

Forgery Or Alterations;

Personal Property Of Premises;

Outdoor Property;

Personal Effects;

Valuable Papers And Records;

Accounts Receivable;

Signs;

Arson Reward; and

Property Of Others.

(2) The following is added:

Back-up Of Sewer Or Drain.

1. We will pay for accidental direct physical loss to Covered Property directly and immediately caused by water or sewage.

That enters through a sewer or drain located inside the interior structure, or

a. Which enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the structure, designed to remove subsurface water drained from the foundation area.

2. This coverage does not apply if the loss is resulting from your failure to:

a. Keep a sump pump or its related equipment in proper working condition; or

b. Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstruction.

f. Paragraph 3, of **SECTION I — LIMITS OF INSURANCE** does not apply.

g. Paragraph 1.a.(4)(d) under Loss Payment of **SECTION I — CONDITIONS** does not apply.

The following is added to Paragraph 1.a. under Loss Payment of **SECTION I — CONDITIONS**:

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

The following is added to **SECTION I — DEFINITIONS**:

"Complex" means one or more covered buildings subject to common ownership, management, and maintenance located on the same or connecting lots.

2. **SECTION II — LIABILITY** is amended as follows:

a. The following applies to **SECTION II — WHO IS AN INSURED**:

No person or organization is an insured with respect to acts, errors or omissions:

(1) For which that person or organization may be liable in their capacity as a declarant, builder, sponsor, developer, promoter, engineer or architect; or

(2) While acting within the scope of their duties for a declarant, builder, sponsor, developer, promoter, engineer or architect.

b. The following is added to **SECTION II — WHO IS AN INSURED**:

Each of the following is an insured:

(1) All agents of the condominium association or similar community association.

(2) All unit-owners including:

(a) The declarant, builder, sponsor, developer or promoter in the capacity as a unit-owner, but only with respect to the declarants, builder's, sponsor's, developer's or promoter's liability arising out of:

i. The use, ownership, maintenance or repair of the common elements or other portion of the condominium which the association has the responsibility to maintain; or

II. The declarant's, builder's, sponsor's, developer's or promoter's membership in the association.

(b) Each other unit-owner and other persons entitled to occupy any unit or other portion of the described condominium association or similar community association, but only with respect to that person's liability arising out of:

i. The use, ownership, maintenance or repair of the common elements or other portion of the condominium which the association has the responsibility to maintain; or

ii. Membership in the association.

3. **SECTION I AND SECTION II — COMMON POLICY CONDITIONS** is amended as follows:

a. **SECTION I — PROPERTY** under Paragraph 7, Other Insurance is replaced by the following:

**SECTION I — PROPERTY**

If there is other insurance covering the same loss, we will pay only for the amount of covered loss in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit Of Insurance of **SECTION I — PROPERTY** shown in the Declarations.

If, at the time of loss, a unit-owner has other insurance covering the same property as this insurance, this insurance is intended to be primary, and not to contribute with such other insurance.

b. The following is added to Paragraph 10, Transfer Of Rights Of Recovery Against Others To Us:

We waive our right to recover payment from:

(1) Any unit-owner, including the developer as a unit-owner, and household members;

(2) The association; and

(3) Any member of the board of directors for acts or omissions within the scope of their duties for you.

We reserve our right, however, to recover against the declarant, builder, sponsor, developer or promoter for acts, errors or omissions that the declarant, builder, sponsor, developer or promoter may be liable for in the capacity as a declarant, builder, sponsor, developer or promoter.

All other policy provisions apply.

© Copyright, State Farm Mutual Automobile Insurance Company 2011
Includes copyrighted material of Insurance Services Office, Inc., with its permission

CMP-4356

CMP-4356
Page 3 of 3

---

91-LO-5865-9    023825

CMP-4710
Page 1 of 2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4710 EMPLOYEE DISHONESTY

**BUSINESSOWNERS COVERAGE FORM**

This endorsement modifies insurance provided under the following:

**Employee Dishonesty**

The following is added as an Extension of Coverage under **SECTION I — EXTENSIONS OF COVERAGE**:

**Employee Dishonesty**

1. We will pay for direct physical loss to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you or your partners) with the manifest intent to:

a. Cause you to sustain loss; and

b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other "employee" benefits earned in the normal course of employment) for:

(1) Any "employee"; or

(2) Any other person or organization intended by that "employee" to receive that benefit.

2. The most we will pay for loss under this Coverage in any one occurrence, regardless of the number of described premises, is the Limit Of Insurance for Employee Dishonesty shown in the Declarations, even if the occurrence includes more than one policy period.

The amount we pay under this Extension of Coverage is an additional amount of insurance.

Regardless of the amount of the Basic Deductible, the most we will deduct from any loss under this Extension of Coverage in any one occurrence is the applicable deductible listed for Employee Dishonesty under Special Deductibles shown in the Declarations.

3. We will determine the value of:

a. "Money" at its face value; and

b. "Securities" at their value at the close of business on the day the loss is discovered:

4. All loss:

a. Caused by one or more persons, or

b. Involving a single act or series of acts;

is considered one occurrence.

5. With respect to coverage provided by this endorsement:

a. Paragraph 2. of Property Not Covered does not apply.

b. Paragraph 1.d. of Property Subject To Limitations does not apply.

c. Paragraph 2.f. of **SECTION I — EXCLUSIONS** does not apply.

d. The first paragraph under **SECTION I — EXTENSIONS OF COVERAGE** does not apply.

6. We will not pay for loss:

a. Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

b. When the only proof of its existence or amount is:

(1) An inventory computation; or

(2) A profit and loss computation.

7. This Coverage does not apply to any "employee" immediately upon discovery by:

a. You; or

b. Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with that "employee";

of any dishonest act committed by that "employee" before or after being hired by you.

8. We will pay only for loss you sustain through acts committed or events occurring during the policy period.

These acts must be discovered no later than one year from the end of the policy period.

9. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit Of Insurance cumulates from year to year or period to period.

10. If any loss is covered:

a. Partly by this Insurance; and

b. Partly by any prior cancelled or terminated insurance or expired policy period that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

11. If you (or any predecessor in interest) sustained loss during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this Coverage, provided:

a. This Coverage became effective at the time of cancellation or termination of the prior insurance; and

b. The loss would have been covered by this Coverage had it been in effect when the acts or events causing the loss were committed.

12. The Insurance under Paragraph 11, above is part of, not in addition to, the Limit Of Insurance applying to this Coverage and is limited to the lesser of the amount recoverable under:

a. This Coverage as of its effective date, or

b. The prior insurance had it remained in effect.

13. With respect to this Coverage "employee" means:

a. Any natural person:

(1) While in your service or for 30 days after termination of service;

(2) Who you compensate directly by salary, wages or commissions; and

(3) Who you have the right to direct and control while performing services for you.

b. Any "manager", director, officer or trustee, whether compensated or not, except while performing acts outside the scope of their normal duties;

c. Any natural person who is furnished temporarily to you:

(1) To substitute for a permanent "employee" as described in Paragraph a. above, who is on leave; or

(2) To meet seasonal or short-term work load conditions;

d. Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as described in Paragraph c. above;

e. Any natural person who is a former "employee", director, officer, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

f. Any natural person who is a guest student of students pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the premises you occupy in conducting your business.

But this does not include any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

All other policy provisions apply.

© Copyright, State Farm Mutual Automobile Insurance Company 2006
Includes copyrighted material of Insurance Services Office, Inc., with its permission

CMP-4710

CMP-4710
Page 2 of 2

91-LQ-5865-9    003826

CMP-4745 1
Page 1 of 2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CMP-4745.1 HIRED AUTO LIABILITY**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

1. This insurance provided under Coverage L – Business Liability in SECTION II – LIABILITY, applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

   For insurance provided by this endorsement only:

   a. The exclusions under Section II – Exclusions, other than exclusions 1., 2., 4., 7., and 10., and the SECTION II – NUCLEAR ENERGY LIABILITY EXCLUSION, are deleted and replaced by the following:

      (1) "Bodily injury" to:

         (a) An "employee" of the insured arising out of and in the course of:

            i. Employment by the insured; or

            ii. Performing duties related to the conduct of the insured's business; or

         (b) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (a) above.

      This exclusion applies:

      (a) Whether the insured may be liable as an employer or in any other capacity; and

      (b) To any obligation to share damages with or repay someone else who must pay damages because of injury.

      This exclusion does not apply to:

      (a) Liability assumed by the insured under an "insured contract"; or

      (b) "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

      (2) "Property damage" to:

         (a) Property owned or being transported by, or rented or loaned to the insured; or

         (b) Property in the care, custody or control of the insured.

   b. We will not pay under Coverage M – Medical Expenses for "bodily injury" arising out of the use of any "hired auto".

   c. SECTION II – WHO IS AN INSURED, is replaced by the following:

      1. Each of the following is an insured under this endorsement to the extent set forth below:

         a. You;

         b. Any other person using a "hired auto" with your permission; and

         c. Any other person or organization, but only for their liability because of acts or omissions of an insured under a. or b. above.

      2. None of the following is an insured:

         a. Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury"; or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

         b. Any:

            (1) Partner or "executive officer" for any "auto" owned by or registered to such partner or officer or a member of his or her household; or

(2) "Employee" for any "auto" owned by or registered to such "employee" or a member of his or her household;

   c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

   d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or any agent or of any person or entity employed by such owner or lessee; or

   e. Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

3. With respect to this endorsement the following additional definitions apply:

   a. "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

   b. "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or members (if you are a partnership or joint venture), "members" or "managers" (if you are a limited liability company), your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or members of their households.

All other policy provisions apply.

CMP-4745 1
© Copyright, State Farm Mutual Automobile Insurance Company, 2013
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED

---

91-LQ-5865-9    003826

CMP-4745 1
Page 2 of 2

FE-3650
Page 1 of 1

**FE-3650 ACTUAL CASH VALUE ENDORSEMENT**

The following is added to any provision which uses the term "actual cash value":

Actual cash value means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property less a deduction to account for pre-loss depreciation. On that calculation, all components of this estimated cost including, but not limited to:

1. materials, including any tax;

2. labor, including any tax; and

3. overhead and profit;

are subject to depreciation.

The depreciation deduction may include such considerations as:

1. age;

2. condition;

3. reduction in useful life;

4. obsolescence; and

5. any pre-loss damage (including wear, tear, or deterioration);

of the damaged part of the property.

All other policy provisions apply.

FE-3650
© Copyright, State Farm Mutual Automobile Insurance Company, 2015

CONTINUED

---

91-LQ-5865-9    003827

CMP-4566
Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CMP-4566 MONEY AND SECURITIES**
**(Apartment And Residential Community Association)**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added as an Extension of Coverage under SECTION I – EXTENSIONS OF COVERAGE.

**Money And Securities**

1. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

   a. Theft, meaning any act of stealing;

   b. Disappearance; or

   c. Destruction.

2. The most we will pay for loss to "money" and "securities" in any one occurrence, at each "complex", under this Coverage is:

   a. The Limit Of Insurance for Money And Securities (On Premises) shown in the Declarations while:

      (1) In or at the "complex"; or

      (2) Within a bank or savings institution; and

   b. The Limit Of Insurance for Money And Securities (Off Premises) shown in the Declarations while anywhere else.

   The amount we pay under this Extension of Coverage is an additional amount of insurance.

   Regardless of the amount of the Basic Deductible, the most we will deduct from any loss under this Extension of Coverage is any one occurrence is the applicable deductible for Money And Securities under Special Deductibles shown in the Declarations.

3. We will determine the value of:

   a. "Money" at its face value; and

   b. "Securities" at their value at the close of business on the day the loss is discovered.

4. With respect to coverage provided by this endorsement:

   a. Paragraph 2. of Property Not Covered does not apply.

   b. Paragraphs 1.c. and 1.d. of Property Subject To Limitations does not apply.

   c. The first paragraph under SECTION I – EXTENSIONS OF COVERAGE is replaced by the following:

      Subject to the terms and conditions applicable to SECTION I – PROPERTY of this coverage form, Money and Securities applies separately to each "complex" we insure.

5. All loss:

   a. Caused by one or more persons; or

   b. Involving a single act or series of related acts,

   is considered one occurrence.

6. We will not pay under this Extension Of Coverage for loss consisting of one or more of the following:

   a. Resulting from accounting or arithmetical errors or omissions;

   b. Due to the giving or surrendering of property in any exchange or purchase; or

   c. Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

7. You must keep records of all "money" and "securities" so we can verify the amount of any loss.

All other policy provisions apply.

CMP-4566
© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

---

91-LQ-5865-9    003827

FE-6200-3
Page 1 of 1

In accordance with the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2019, this disclosure is part of your policy.

**POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE**

Coverage for acts of terrorism is not excluded from your policy. However your policy does contain other exclusions which may be applicable, such as an exclusion for nuclear hazard. You are hereby notified that the Terrorism Risk Insurance Act, as amended in 2019, defines an act of terrorism in Section II(1)(1) of the Act. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under this policy, any covered losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. Under the formula, the United States Government generally reimburses 80% beginning on January 1,

2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

There is no separate premium charged to cover insured losses covered by terrorism. Your insurance policy establishes the coverage that exists for insured losses. This notice does not expand coverage beyond that described in your policy.

THIS IS YOUR NOTIFICATION THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE.

FE-6200-3
© Copyright, State Farm Mutual Automobile Insurance Company, 2020

FE-6870
Page 1 of 1

**FE-6870 AMENDMENT OF INLAND MARINE CONDITIONS**

Paragraph 14. Concealment, Misrepresentation Or Fraud is replaced by the following:

**14. Concealment, Misrepresentation Or Fraud**

We will not provide coverage to one or more insureds if, at any time, you or any other insured misrepresent, omit, conceal facts, and provide incorrect statements in any descriptions or statements relating to this insurance and such misrepresentations, omissions, concealment of facts, and incorrect statements are:

a. Fraudulent;

b. Material either to the acceptance of the risk, or to the hazard assumed by us; or

c. We in good faith would either not have issued this policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied had we been notified; or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to us as required either by the application for the policy or contract or otherwise.

FE-6870
© Copyright, State Farm Mutual Automobile Insurance Company, 2011
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*StateFarm*

**Certified Policy Record**

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 91-LQ-5865-9 including any endorsements, if applicable, for the policy term(s) 03/04/2021 - 03/04/2022 and insuring CLUB POINTE CONDOMINIUM ASSOCIATION based on available records.

The policy was in effect on the loss date of 04/24/2021.

Jessica Zavala
Underwriting Team Manager
Date: 06/30/2022

Page 1 of 1

# EXHIBIT B

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **StateFarm**

May 7, 2022

Club Pointe Condominium Association
3202 Club Point Way
Gainesville GA 30506-1638

**State Farm Claims**
PO Box 106169
Atlanta GA 30348-6169

RE:   Claim Number:      11-32F4-12W
      Date of Loss:       April 24, 2021

To Whom It May Concern:

Thank you for the opportunity to discuss your claim.

As we discussed, our inspection did not reveal any covered accidental direct physical loss to
your roof. Accordingly, we are unable to issue payment for your roof.

If you have questions or need assistance, call us at (844) 458-4300 Ext. 3099940837.

Sincerely,

Loyal V Hoover
External Claim Resource - Eberl
(844) 458-4300 Ext. 3099940837
statefarmfireclaims@statefarm.com
*For your protection, when emailing State Farm, please do not include sensitive personal information such as Social Security
Number, credit/debit card number (financial account number), driver's license number, or health/medical information in an email.
Please contact us at (844) 458-4300 Ext. 3099940837 to discuss sensitive information.*

State Farm Fire and Casualty Company

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, update direct deposit account information for claim
payments and many other insurance and banking services.

# EXHIBIT C



**Foster L. Peebles, Esq.**
110 Norcross Street
Roswell, GA 30075
FPeebles@lawhuggins.com
(770) 913-6229

May 16, 2023

Tom Martin
Swift, Currie, McGhee & Hiers
1420 Peachtree St. NE, Suite 800
Atlanta, GA 30309

**Sent Via email:**
Tom.Martin@swiftcurrie.com

Re:   State Farm Insurance Claim No. 11-32F4-12W
      Insured: Club Pointe Condo Association

Tom:

I hope this letter finds you well. I'm writing in response to your letter dated March 1, 2023. I appreciate your patience while I worked with my client to ascertain the additional information you requested. My response to your letter is below.

**Sworn Proof of Loss**

In your March 1, 2023, correspondence, you advised that State Farm would "not accept the SPOL as complete" due to outstanding document requests. After review of the Policy, we reject this contention. The Policy provides, under Section I – Conditions, 1(c)(g), that State Farm is entitled to receive "a signed, sworn proof of loss containing the information [State Farm] requests to investigate the claim." The Policy further states that State Farm "will supply [the insured] with the necessary forms."

On November 29, 2022, my office was provided the enclosed "Sworn Statement in Proof of Loss" form. This form was completed, signed, notarized, and returned on February 20, 2023, following an extension afforded by State Farm. At the time of submission, the Sworn Proof of Loss was accompanied by an invoice from United Contracting & Roofing ("United") in support and verification of the repair amounts listed on the proof of loss form.

**Requested Documentation**

Alongside State Farm's rejection of the Sworn Proof of Loss, they reiterated requests for several documents. Please note, the association and its board are comprised of a very small number of members, which has not had continuous ownership, control, or leadership over the property since its construction. As such, many documents have been lost to the passage of time or are otherwise unavailable. To the extent that such requested information is within the insured's possession or control, their responses to the requests are as follows:

To: Tom Martin
Re: Club Pointe Condominium Association
May 16, 2023
Page **2** of **3**

**Demolition, Repair and Replacement Records** – Attached to the sworn proof of loss, which was provided on February 20, 2023, the insured included a copy of the invoice for the completion of roof replacements from United. This was the only documentation provided by United and is the only record of replacement that the insured are aware of.

**Prior Leak Investigation Records** – The association has records of prior fascia board repairs for the wood behind the gutters in November of 1995, March of 2006, and August of 2014. Some of the woodwork behind the gutters was authorized in 1995 and 2006, but the association has no records of the work being completed. The work authorized in August 2014 was completed and paid for the same year.

None of these damages or repairs resulted in an insurance claim.

Meeting minutes discussing these repairs are enclosed with this letter, but no other records are known to exist.

**Roof Age** – The roof is believed to have been replaced in the first quarter of 2004. Bills and a check stub are enclosed.

**Prior Roof Inspections** – No records of prior roof claims have been recorded by the association's board. Further, there are no further records of damage being reported by the unit owners to the association. To the extent any damage was noticed by unit owners, it would have only been brought to anyone's attention in passing.

**Prior Inspections, Appraisals, Bids and Estimates** – The only inspections known by the association are in relation to the instant insurance claim, and all such reports are believed to have been produced to State Farm.

**Photos** – To the extent any photos are in the association's possession, they have already been produced to State Farm.

**Prior Claim Records** – The association has no records of prior insurance claims being filed.

**Condo Association Assessments** – Any records of assessments would be included in the enclosed meeting minutes from 1995, 2006, and 2014.

## Reinspection

The association is ready and willing to furnish the property for an inspection. However, we request that any inspection is scheduled through my office.

To: Tom Martin
Re: Club Pointe Condominium Association
May 16, 2023
Page **3** of **3**

## Demand for Payment Pursuant to O.C.G.A. § 33-4-6

      Following the above, and pursuant to O.C.G.A. § 33-4-6, the insured hereby demands that State Farm settle the above claim in the amount of **$118,458.00**. This demand is being made pursuant to O.C.G.A. § 33-4-6, and State Farm has sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law.

Sincerely,

Foster L. Peebles
Attorney at Law

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CLUB POINTE CONDOMINIUM ASSOCIATION,**<br>　　　　　**Plaintiff,** | ) ) ) ) | |
| **v.** | ) ) | **CIVIL ACTION FILE NO.:**<br>**23-A-06093-3** |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) ) ) | |
| 　　　　**Defendant.** | ) ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

COMES NOW, Plaintiff, **Club Pointe Condominium Association,** by and through the undersigned counsel, and hereby propounds the following First Set of Interrogatories and Request for Production of Documents to the Defendant, **State Farm Fire and Casualty Company,** to be answered separately and fully, in writing, under oath, and in accordance with the Georgia Civil Practice Act, O.C.G.A. §§ 9-11-33 and 9-11-34.

### GENERAL INSTRUCTIONS

1.  You are required to answer and verify the following interrogatories and requests for production of documents within forty-five (45) days of the date of service.

2.  Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3.  In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4. Your obligation to answer these discovery requests is intended to be continuing in nature; therefore, you are required by O.C.G.A. § 9-11-26 and instructed by the Plaintiff to reasonably & promptly amend or supplement your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

7. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

8. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

9. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

10. For each document responsive to any request that is withheld under a claim of privilege, you are required by Uniform Superior Court Rule 5.5 to provide a privilege log containing the following information:

    a.  The date the document was prepared or created;

    b.  The name and title of the author or authors of the document;

    a.  A summary of the subject matter of the document;

    b.  The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    c.  The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    d.  A statement of the basis on which privilege is claimed; and

    e.  The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document(s)" or "documentation" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other

communications, bulletins, magazines, publications, printed matter, photographs, computer printouts, teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, memorialized depictions of the Property or of Communications relating to the Claim, and electronic, mechanical or electric records or representations of any kind which You have knowledge or which are now or were formally in your actual or constructive possession, custody or control.

2. "Claim" or "Policyholder's Claim" shall refer to Claim No. 11-32F4-12W, which was drafted by the Insurance Company and issued to the Policyholder for direct physical loss or direct physical damage to the Property.

3. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

4. "Identify" shall mean:

    a. when used to refer to a document, means to state the following:

        1. The subject of the document;

        2. The title of the document;

        3. The type of document (e.g., letter, memorandum, telegram, chart);

4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

6. The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with,

touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

5. "Including" shall mean "including, but not limited to."

6. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of a discovery request so as not to exclude any information that might be deemed outside the scope of the request or by any other construction.

7. "Person(s)" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation (public or private), or government entity.

8. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9. "Plaintiff" and "Policyholder" mean the above-captioned Plaintiff or the Policyholder listed on 91-LQ-5865--9 and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10. "Property" or "Insured Property" means the property and building structures located at 3201 - 3208 Club Point Way, Gainesville, GA 30506.

11. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review or claims committee, and each person presently or formerly acting or authorized to act on Defendant's behalf.

12. "Policy" means Policy No. 91-LQ-5865-9 issued by State Farm Fire and Casualty Company.

13. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

14. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

15. "Loss" means the event on or around July 16, 2021, in which Policyholder suffered property damage and has consequently incurred extra expenses such as additional living expenses, business income losses, and other losses afforded coverage for under the Policy.

16. "Possession, custody or control" includes the joint or several possession, custody, or control not only by the person to whom these interrogatories are addressed, but also the joint or several possession, custody, or control by each or any other person acting, or purporting to act on behalf of, the Person, whether as an employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **<u>INTERROGATORIES</u>**

### 1.

Identify any and all Persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the Loss on or about July 16, 2021, and for each, please include his/her name, place of employment, address, and telephone number; his/her title, license(s), and certification(s); the date his/her involvement in this claim commenced; the date his/her involvement in this claim concluded; and a description his/her involvement in this claim.

This interrogatory seeks information about every individual involved in the Claim including, but not limited to, Persons employed by the Defendant or retained by Defendant through

a third-party entity. For Defendant's employees specifically, this Interrogatory seeks the name of every employee of Defendant who had anything to do with the Claim.

2.

If any Person identified in Your answer to Interrogatory No. 1 is or was Your employee, agent, or representative, please state whether said Person has been promoted, demoted, terminated, or transferred from July 16, 2021 to present; describe in detail the change in employment status of each such Person, including the circumstances of the Person's employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such former employee.

3.

Describe each and every investigative step conducted by You, or by anyone on Your behalf, regarding Plaintiff's Claim, beginning with the date and method You received notice of the subject Claim, and identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in Your possession, in the course of Your investigation.

4.

Identify each and every person that You expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents You furnished to the expert.

5.

If You have retained or employed an expert in conjunction with the Claim who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

6.

Please state the date and manner in which You received notice of the Claim; the date and manner in which You acknowledged receipt of the Claim; the date and manner in which You commenced investigation of the Claim; the date and manner in which You requested from the Plaintiff all items, statements, and forms that You reasonably believed, at the time, would be required from the Plaintiff; the date and manner in which You notified the Plaintiff in writing of the acceptance or rejection of the claim; and the date, amount, and reason for any insurance proceed payments You have made to the Plaintiff.

7.

Have You extended coverage for any part of Plaintiff's Claim for insurance benefits, or have You denied or rejected Plaintiff's Claim? If You extended coverage for any part of Plaintiff's Loss, please state with specificity the provisions, endorsements, or any other part of the Policy governing Plaintiff's Loss that supports Your extension of coverage; please state with specificity Your reasons for denying or rejecting any part of Plaintiff's Claim; and include all facts and policy provisions that supported Your decision to deny or reject Plaintiff's Claim. This Interrogatory seeks the above information even if coverage was extended for the Loss but fell below the Plaintiff's deductible.

8.

Do You contend the damage to the Property can be repaired?  If so, please state with specificity the method of repair Defendant contends should be used to repair the Property. This request seeks any and all building codes (state, county, city, or municipal), industry standards, and industry practices employed in the investigation, evaluation, and determination of methods used to repair damages caused by the Loss that Defendant states could be used to repair the Property. If such information exists, please state: the name(s), address(es), and telephone number(s) of all Persons who have personal knowledge of any of these industry standards or practices; and identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

If You do not have an answer to this Interrogatory, please affirmatively state none of the above was relied upon in determining if the damage sustained to the Property by the Loss is or was repairable.

9.

Does the Policy owe for anything less than a proper repair of the damaged Property caused by a covered loss? If the Policy does not owe for a proper repair, please state with specificity the provision of the Policy which does not provide for a proper repair.

10.

Please identify any and all written policies, procedures, guidelines, or other documents (including document(s) maintained in physical or electronic form) You maintained for Your internal or third party adjusters to use in the state of Georgia in connection with adjusting Wind and Hail Storm losses that were in effect on July 16, 2021 through present.

11.

Please state with specificity the approximate date and event which caused You to anticipate litigation with respect to Plaintiff's cause of action and identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation, claim handling, and adjustment of Wind and Hail Storm claims in the state of Georgia that are routinely generated throughout the handling and investigation of such claims (including, but not limited to, Investigation Reports; reserve sheets; electronic claims diaries or similar record logs; claims review reports; and/or any team report relative to this claim) for the two years preceding July 16, 2021 to the present, and state whether any such documents were generated during the investigation and handling of the Claim.

13.

Have any documents (including those maintained electronically) relating to the Claim been destroyed, lost, or disposed of? If so, please identify what, when and why the document was destroyed, and describe Your document retention policy.

14.

Do You contend the Property was damaged by any excluded peril? If so, state the specific provision in the Policy supporting the exclusion and how the exclusion impacted Your claim decision, state in detail Your factual basis for this contention, and identify any documents supporting Your contention.

15.

Do You contend the Plaintiff failed to satisfy any condition, covenant, or duty of the Policy or otherwise breached the Policy? If so, identify each specific condition, covenant, or duty of the Policy You contend the Plaintiff failed to satisfy or breach, and identify all the documents relating to Your assertion and all Persons with knowledge of such facts.

16.

Identify the underwriting documents created or acquired in the formation of the Policy for the Property including any risk reports for the Property that have been generated or obtained at any time, and state if any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy have been issued.

17.

Identify any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the Claim. In Your response, please describe in detail what each document depicts or memorializes and state the date when each such document or memorialization was obtained or generated.

18.

Identify any and all repair estimates, invoices, quotes, receipts, or other documentation reflecting the cost or methodology to repair the damages at issue in this Claim, even if said item never left Your possession. In Your response, please describe in detail what each document depicts, when it was generated or obtained, why it was generated or obtained, and state the date when the item was created, received, or requested.

19.

Please identify each Person who assisted You in any way to provide responses to these Interrogatories. For each identified Person, please include the Person's name, place of employment, address, telephone number and relationship to you.

20.

State the good faith factual basis for Your Affirmative Defenses(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by You to refer or relate in any way to the facts You contend support Your Affirmative Defense(s) and comprehensively describe all basis (factual and otherwise), documents, notes, memorandum, reports, or other documentation supporting Your responses to the paragraphs of Plaintiff's Complaint.

## **<u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>**

1.

All documents responsive to Plaintiff's Interrogatories identified in Your responses to Plaintiff's Interrogatories or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim file, claims notes, or other similar records from the home, regional, or local offices; third party adjusters or adjusting firms; or ladder assist Persons retained by You regarding the Claim. This request includes, but it not limited to, copies of the file jackets; "field" files and notes; and drafts of documents contained in the file.

To the extent that this request seeks documents from third-party adjusters/adjusting firms, ladder assists, or other Persons retained by the Defendant, this request is only seeking such documents that have been provided to, or are in the control of, the Defendant.

3.

A certified copy of the Policy or insurance policies possessed by Defendant pertaining to the Property involved in this suit.

4.

All documents and tangible things supporting the method You contend could be used to properly repair the damages sustained to the Property as a result of the Loss.

5.

Your written procedures, policies, guidelines, or other similar documentation (including document(s) maintained in electronic form) that pertain to the handling of Wind and Hail Storm claims in the state of Georgia for the year preceding July 16, 2021 to present.

6.

Any and all weather reports in Your possession which concern the Property, regardless of whether You relied upon them in making Your claims decision in this matter, for the two years preceding July 16, 2021 to present.

7.

The Operation Guides which relate to the handling of Wind and Hail Storm claims in the state of Georgia in effect for the year preceding July 16, 2021 to present.

8.

The field notes, measurements, electronic diary, file materials, or other similar records (including all electronic and paper notes) created, obtained, or maintained by the claims personnel,

contractors, adjusters, engineers, or any other Person who physically inspected the Property or adjusted the Claim.

<div align="center">9.</div>

The emails, instant messages, internal or external correspondence, or any other communication between Defendant and any agent, representative, employee, or other Person pertaining to the Claim.

<div align="center">10.</div>

Defendant's internal newsletters, bulletins, publications, or other memoranda internally circulated which relates to the policies and procedures relied upon in the handling of Wind and Hail Storm claims in the state of Georgia that were issued one year preceding July 16, 2021 through the present, including, but not limited to, memoranda issued to claims adjusters.

<div align="center">11.</div>

The price guidelines, price indexes, or other similar information utilized in the creation of any repair estimates prepared, edited, requested, or relied upon by the Defendant. In the event published guidelines of "off the shelf" software (including, but not limited to, Xactimate software) were utilized to inform pricing decisions, You may respond by simply identifying the name, version, and/or edition of the published guidelines used.

<div align="center">12.</div>

Any "Summary of Loss," "Pay sheet," "Payment Log," copy of issued payments, or other similar list or record of payments made by Defendant in relation to the Claim. This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents and representatives; all payments issued to independent adjusters, ladder assists, engineers, or other Persons retained in

Your adjustment of this claim; all copies of any and all checks issued; and all expenses incurred by You in Your adjustment of this claim.

13.

The documents reflecting reserves applied to the Claim.

14.

The contract or agreement between the Defendant and any third-party Person retained in the investigation and adjustment of the Claim. This request includes, but is not limited to, contracts or agreements with ladder assists, independent adjusters, contractors, engineers, meteorologists, or hygienists involved in any way throughout the Claim.

15.

All documents submitted to, or received from, each Person You expect to call as an expert witness at trial. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same); all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

16.

All documents submitted to, or received from, each Person Defendant hired or consulted as an expert witness which Defendant does not intend to call as an expert witness at trial in this case. This request includes, but is not limited to: any agreement exchanged or entered into between Defendant and the witness (including proposals not agreed upon and counteroffers to the same);

all reports generated by the witness (including drafts); a current *curriculum vitae* for the witness; a list of all other publications authored by the witness; a list of all other cases in which the witness has testified as an expert at trial or by deposition; an invoice showing the compensation paid or owed to the witness; and all documents and tangible things consulted by and relied upon by the witness in forming his or her expert opinion.

17.

All documents in Your possession concerning the underwriting of the Policy issued for the Property. This request includes, but is not limited to, any risk reports for the Property and any Notice(s) of Cancellation or Notice(s) of Non-Renewal of the Policy for the Property.

18.

All repair estimates, invoices, quotes, receipts, or other documentation Defendant reviewed throughout the adjustment of the Claim which reflect the cost to repair any agreed upon, contested, or suspected damages at issue in the Claim. This request is inclusive of documents not transmitted to the Plaintiff through the adjustment of the Claim.

19.

Any and all photographs, audio recordings, video recordings, written statements taken, or other memorializing documentation obtained during the course of Your investigation of the claim. This request seeks the requested documentation to be produced in a format most similar to the original, in the highest quality version available, and in a format which retains the original metadata.

20.

A copy of the license, registration, certification, or other similar documentation for all Persons retained, employed, or consulted by the Defendant to inspect the Property and/or adjust the Claim.

21.

All evidence You intend to introduce at the trial of this matter.

It is requested that the above-requested responses be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Respectfully submitted, this 18th day of July, 2023.

**The Huggins Law Firm, LLC**

*/s/ Foster L. Peebles*
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852

110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

*Attorneys for the Plaintiff*

E-FILED IN OFFICE - SP
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
23-A-06093-3
7/17/2023 11:28 AM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CLUB POINTE CONDOMINIUM ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) | 23-A-06093-3 |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant State Farm Fire and Casualty Company by serving them with the ***Summons, Complaint and Exhibits***, and ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to Defendant State Farm Fire and Casualty Company at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant State Farm Fire and Casualty Company**
**2 Sun Court, Suite 400**
**Peachtree Corners, GA 30092**

Respectfully submitted, this 17th day of July, 2023.

**The Huggins Law Firm, LLC**

*/s/ Foster L. Peebles*
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852

110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

*Attorneys for the Plaintiff*

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| CLUB POINTE CONDOMINIUM ASSOCIATION., | ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File |
| | ) | |
| v. | ) | No.  23-A-06093-3 |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation, | ) ) | |
| | ) | |
| Defendant. | | |

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

COMES NOW, State Farm Fire and Casualty Company (hereinafter "State Farm" or "Defendant"), by and through the undersigned attorneys, and hereby files this, its Answer and Affirmative Defenses to Plaintiff's Complaint, and shows this Court as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Defendant is not liable to Plaintiff for any cause of action, including for breach of contract, because Defendant at no time breached or otherwise violated any of the terms or conditions of the insurance policy between State Farm and Plaintiff. At all times, Defendant acted in accordance with its rights and obligations as set forth in the Policy.

## THIRD AFFIRMATIVE DEFENSE

1

To the extent Plaintiff's Complaint or prayer for relief seeks, or is construed as seeking, damages other than the contractual damages, such remedies are not available to the Plaintiff inasmuch as O.C.G.A. § 33-4-6 is the sole manner by which to recover extra-contractual damages, including attorney's fees, from an insurer in a first party dispute over payment of insurance benefits.

## FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiff's Complaint or prayer for relief seeks or is construed as seeking to recover bad faith penalties and attorney's fees under O.C.G.A. § 33-4-6 against State Farm, such remedies are not available to Plaintiff, as Plaintiff failed to satisfy the substantive and/or procedural requirements for making a claim for bad faith, as required under O.C.G.A. § 33-4-6.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff may not recover for any damage to real or personal property under the subject insurance policy and applicable Georgia law to the extent that the damages are excluded by the Policy.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendant because the Policy specifically excludes coverage for Plaintiff's claimed damages. Specifically, the Policy provides:

### SECTION I – EXCLUSIONS

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether

2

the event occurs suddenly or gradually, involves isolated or widespread damage, arises from
natural or external forces, or occurs as a result of any
combination of these:

**. . .**

K. **Neglect** of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**. . .**

I. **Other Types of Loss** (1) wear and tear…

. . .

3. We will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

b. conduct, acts or decisions, including the failure to
act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault

    c. **Work**
        Faulty, inadequate, or defective:
        (1) Planning, zoning, development, surveying, siting;
        (2) Design, specifications, workmanship, repair,
        construction, renovation, remodeling, grading,
        compaction;
        (3) Materials used in repair, construction, renovation or remodeling, or
        (4) Maintenance; of part or all of any property (including land, structures or improvement of any kind) on or off the described premises.
        But if accidental direct physical loss results from items 3.a,, 3.b., or 3.c., we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in SECTION I of this coverage form

## SEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is entitled to any recovery under the Policy, which State Farm denies, Plaintiff's recovery is limited by the coverage limits and loss settlement provisions of the insurance Policy.

## EIGHTH AFFIRMATIVE DEFENSE

3

Even if Plaintiff was entitled to recover under its Complaint, which Defendant denies, Plaintiff is unable to recover the damages as set forth in its Complaint because this amount does not reflect the reasonable and necessary costs to repair the damage to the Property.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendant for any alleged damage to the extent that the damage did not occur within the Policy Period. The Policy provides in pertinent part:

### SECTION I– CONDITIONS

**d. Policy Period.**
    1) We cover loss commencing:
    (a) During the policy period shown in the Declarations; and
    (b) Within the coverage territory or, with respect
        to property in transit, while it is between
        points in the coverage territory

## TENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendant on the basis that Plaintiff failed to mitigate its damages in accordance with Georgia law.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to recover pursuant to any alleged violation of Georgia's Unfair Claims Settlement Practices Act, Plaintiff is legally prohibited from doing so as the Act does not create or imply any private cause of action. *See* O.C.G.A. § 33-6-37.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff attempts to impose duties upon Defendant aside from those set forth in the insurance contract, Plaintiff fails in both fact and law. Georgia law does not impose extra-contractual duties on insurers when adjusting claims asserted by insureds.

Moreover, at all times relevant hereto, Defendant acted in good faith and in accordance with the terms and conditions of the Policy.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery on the basis of waiver and/or estoppel.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to recover replacement cost benefits, Plaintiff has not satisfied the contractual requirements to recover these benefits pursuant to the terms of the Policy and applicable law.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for any damages that did not result from accidental direct physical loss as required by the policy. Specifically, the Policy provides:

**SECTION I – COVERED CAUSES OF LOSS**
We insure for accidental direct physical loss to Covered Property unless the loss is: 1. Excluded in SECTION 1 EXCLUSIONS; or 2. Limited in the Property Subject To Limitations provision.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Defendant because Plaintiff failed to satisfy the conditions precedent to bringing suit set forth in the insurance policy issued by Defendant to Plaintiff. Specifically, the policy provides:

**SECTION I – CONDITIONS**
. . .
d.  **Legal Action Against Us**. No one may bring a legal action against us under this insurance unless: 1) there has been full compliance with the terms of this insurance; and 2) the action is brought within 2 years after the date on which the accidental direct physical loss occurred.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Defendant because Plaintiff did not satisfy the **Duties After Loss** provisions in accordance with the policy requirements. Specifically, the Policy provides:

## SECTION I – CONDITIONS

. . .

c. **Duties In The Event Of Loss**

1) You must see that the following are done in the event of loss to Covered property:

(a) Notify the police if a law may have been broken.

(b) Give us prompt notice of the loss. Include a description of the property involved.

(c) As soon as possible, give us a description of how, when and where the loss occurred

(d) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your emergency and temporary repair expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits Of Insurance of SECTION 1 — PROPERTY.

However, we will not pay for any subsequent loss resulting from a cause of loss that is not a Covered Cause Of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(e) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(f) As often as may be reasonably required, permit us to inspect the property proving the loss and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(g) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(h) Cooperate with us in the investigation or settlement of the claim.

(i) Resume all or part of your "operations" as quickly as possible.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant responds to the specific allegations of Plaintiff's Complaint as follows:

## PARTIES

1.

Upon information and belief, in response to Paragraph 1 of Plaintiff's Complaint, Defendant admits that Plaintiff is an entity located in Hall County, Georgia.

2.

In response to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Defendant admits only that it is a foreign insurance company, authorized to transact business in the State of Georgia, and in the business of selling insurance policies and that its registered agent is located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 2 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the insurance policy issued by Defendant provides unfettered and/or unrestricted insurance coverage. All coverage provided is subject to the terms and provisions of the Policy and applicable Georgia law.

## JURISDICTION AND VENUE

3.

In response to the allegations contained in Paragraph 3 of Plaintiff's Complaint, Defendant admits only that the Superior Court of Gwinnett County has jurisdiction over this matter but denies all remaining allegations contained in Paragraph 3 of Plaintiff's Complaint, including, but not limited to, any allegations that the Superior Court of Gwinnett County is the only court having jurisdiction over this matter and any allegations that Defendant breached its contract with Plaintiff or otherwise acted in bad faith.

4.

In response to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Defendant admits only that the Superior Court of Gwinnett County is a proper venue in which to bring this matter, but denies all remaining allegations contained in Paragraph 4 of Plaintiff's Complaint, including, but not limited to, any allegations that the Superior Court of Gwinnett County is the only venue in which this matter could be brought and any allegations that Defendant breached its contract with Plaintiff or otherwise acted in bad faith.

5.

In response to the allegations contained in Paragraph 5 of Plaintiff's Complaint, Defendant admits only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and deny all allegations contained in Paragraph 5 in direct contradiction thereto. Defendant admits that jurisdiction and venue are proper in this Court.

## **THE POLICY**

6.

In response to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Defendant admits only that it issued Policy Number 91-LQ-5856-9 (the "Policy") to Plaintiff. Defendant responds further that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 6 in direct contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 6 of Plaintiff's Complaint are denied.

7.

In response to the allegations contained in Paragraph 7 of Plaintiff's Complaint, Defendant admits only that it issued the Policy to Plaintiff for the property located at:

- 3201 to 3206 Club Pointe Way
  Gainesville, GA  30506
- 3207 to 3208 Club Pointe Way
  Gainesville, GA  30506
   ("the Property")

Defendant responds further that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 7 in direct contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 7 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the Policy provided unrestricted and/or unfettered insurance coverage, as all coverage under the Policy is subject to the terms and conditions of the Policy and applicable Georgia law.

8.

In response to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Defendant admits only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 8 in direct contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 8 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the Policy provided unrestricted and/or unfettered insurance coverage, as all coverage provided under the Policy is subject to the terms and conditions of the Policy and applicable Georgia law.

9.

In response to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Defendant admits only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and denies all allegations contained in Paragraph 9 in contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 9 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the Policy provided unrestricted and/or unfettered insurance coverage, as all coverage provided under the Policy is subject to the terms and provisions of the Policy and applicable Georgia law.

## *[Alleged]* SUDDEN AND ACCIDENTAL DAMAGE TO THE INSURED PROPERTY

10.

In response to the allegations contained in Paragraph 10 of Plaintiff's Complaint, Defendant admits only that the coverage terms of the Policy extended from March 4, 2021, to March 4, 2022, and that Plaintiff first reported that the Property suffered alleged damage from a storm event on or about April 25, 2021, then later alleged the date was July 16, 2021. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 10 of Plaintiff's Complaint are denied.

11.

In response to the allegations contained in Paragraph 11 of Plaintiff's Complaint, Defendant admits only that on or around March 31, 2022, the Plaintiff notified Defendant of the alleged storm damage to the Property that occurred on April 24, 2021. Defendant admits further that Plaintiff made a claim pursuant to the Policy for the alleged storm damage to the Property, and State Farm assigned the claim no. 11-32F4-12W. Defendant further admits that

on August 2, 2022, Defendant received a correspondence from Plaintiff's counsel requesting to change the date of loss to July 21, 2022. A State Farm Claim Representative was assigned to adjust the claim on behalf of State Farm. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 11 of Plaintiff's Complaint are denied.

12.

In response to the allegations contained in Paragraph 12 of Plaintiff's Complaint, Defendant admits only that Plaintiff permitted Defendant to inspect the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 12 of Plaintiff's Complaint are denied.

13.

In response to the allegations contained in Paragraph 13 of Plaintiff's Complaint, Defendant admits only that Plaintiff permitted Defendant to inspect the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 13 of Plaintiff's Complaint are denied.

14.

In response to Paragraph 14 of Plaintiff's Complaint, Defendant admits only that Defendant conducted an inspection of the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 14 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant owed Plaintiff any duties aside from those set forth by the terms and provisions of the insurance contract.

15.

In response to the allegations contained in Paragraph 15 of Plaintiff's Complaint, Defendant admits only that Exhibit "B" is a true and accurate copy of Defendant's letter sent

11

to Plaintiff, which speaks for itself. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 15 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant undervalued the claim.

16.

In response to the allegations contained in Paragraph 16 of Plaintiff's Complaint, Defendant admits only that Defendant and representatives of Plaintiff exchanged communications during the claim, but states that these communications speak for themselves and denies any allegations contained in Paragraph 16 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 16 of Plaintiff's Complaint are denied.

17.

In response to the allegations contained in Paragraph 17 of Plaintiff's Complaint, Defendant admits only that Plaintiff sent Defendant correspondence dated May 16, 2023, which speaks for itself. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 17 of Plaintiff's Complaint are denied.

18.

In response to the allegations contained in Paragraph 18 of Plaintiff's Complaint, Defendant admits only that Plaintiff sent correspondence to Defendant dated May 16, 2023, which speaks for itself. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 18 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that the May 16, 2023 correspondence the constituted a timely or valid demand for payment.

19.

All allegations contained in Paragraph 19 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

20.

Defendant denies all the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

In response to the allegations contained in Paragraph 21 of Plaintiff's Complaint, Defendant admits only that there is a dispute between Plaintiff and Defendant regarding whether the alleged damage to the Property was caused by a covered cause of loss, the amount necessary to repair any covered damage, and the alleged date that the loss or losses occurred. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 21 of Plaintiff's Complaint are denied.

22.

Defendant denies the allegations contained in Paragraph 22 of Plaintiff's Complaint.

## COUNT I:  *[alleged]* BREACH OF CONTRACT

23.

To the extent a response is required to the allegations contained in Paragraph 23 of Plaintiff's Complaint, Defendant incorporates herein by reference its responses to Plaintiff's enumerated Paragraphs 1 through 22.

24.

13

In response to the allegations contained in Paragraph 24 of Plaintiff's Complaint, Defendant admits only that Plaintiff provided some information and documentation requested by State Farm during the adjustment of Plaintiff's claim as required under the terms and conditions of the Policy. Except as otherwise herein admitted, Defendant denies all remaining allegations contained in Paragraph 24 of Plaintiff's Complaint

25.

In response to the allegations contained in Paragraph 25 of Plaintiff's Complaint, Defendant admits that the Policy speaks for itself and would afford coverage for certain losses subject to the Policy's terms and conditions and applicable Georgia law. All remaining allegations contained in Paragraph 25 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property, pursuant to the terms and provisions of the Policy and applicable Georgia law.

26.

All allegations contained in Paragraph 26 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law, and that Plaintiff made a timely or valid demand for payment.

27.

All allegations contained in Paragraph 27 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to conduct a proper claim investigation or that it failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

28.

All allegations contained in Paragraph 28 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

29.

All allegations contained in Paragraph 29 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendant failed to issue payment for covered damages to the Property pursuant to the terms and provisions of the Policy and applicable Georgia law.

30.

Defendant denies all the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.

To the extent a response is required to the allegations contained in Paragraph 31 of Plaintiff's Complaint, Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

### COUNT II:  *[alleged]* BAD FAITH PURSUANT TO O.C.G.A. § 33-4-6

32.

To the extent a response is required to the allegations contained in Paragraph 32 of Plaintiff's Complaint, Defendant hereby incorporates by reference its answers to Paragraphs 1 through 31 as if each were fully set forth herein.

33.

Defendant denies the allegations contained in Paragraph 33 of Plaintiff's Complaint.

15

34.

Defendant denies the allegations contained in Paragraph 34 of Plaintiff's Complaint.

35.

Defendant denies the allegations contained in Paragraph 35, including subsection (1)-(8), of Plaintiff's Complaint.

36.

Defendant denies the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.

Defendant denies the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.

Defendant denies the allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.

Paragraph 39 of Plaintiff's Complaint contains legal conclusions or argument to which no response is required.   To the extent a response is required, Defendant denies Paragraph 39 of Plaintiff's Complaint.   By way of further response, Defendant explicitly denies that it is indebted to Plaintiff in any amount whatsoever.

40.

To the extent a response is required to the allegations contained in Paragraph 40 of Plaintiff's Complaint, Defendant denies the allegations contained in Paragraph 40 of Plaintiff's Complaint.

**<u>DEMAND FOR JURY TRIAL</u>**

41.

16

To the extent a response is required to the allegations contained in Paragraph 41 of Plaintiff's Complaint, Defendant admits the allegations contained in Paragraph 41 of Plaintiff's Complaint.

## PRAYER FOR RELIEF

42.

Defendant denies all allegations contained in Plaintiff's Prayer for Relief and Paragraph 42 of Plaintiff's Complaint, including those allegations set forth in subsections (a) through (i) contained therein.

Except as otherwise herein admitted, Defendant denies all remaining allegations contained in Plaintiff's Complaint.

WHEREFORE, having fully answered, Defendant respectfully requests that this Court:

(a) Deny Plaintiff's prayer for damages;

(b) Dismiss this action with prejudice and cast all costs upon Plaintiff;

(c) The Defendant be granted a jury of twelve; and

(d) Award Defendant any other relief that this Court deems just and equitable.

This 17th day of August, 2023.

*[signatures on next page]*

17

SWIFT CURRIE MCGHEE & HIERS

*/s/   Kayla M. McCallum*
Melissa A. Segel
Georgia Bar No. 020406
Kayla M. McCallum, Esq.
Georgia Bar No. 240946
***Attorneys for Defendant***

1420 Peachtree Street NE
Suite 800
Atlanta, GA  30309
(404) 874-8800
melissa.segel@swiftcurrie.com
kayla.mccallum@swiftcurrie.com

18

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this day electronically filed *Defendant State Farm Fire and Casualty Company's Answer and Affirmative Defenses* with the Clerk of Court via Odyssey e-filing system which will notify counsel of record as follows:

<div align="center">

Michael D. Turner
Foster L. Peebles
The Huggins Law Firm, LLC
110 Norcross Street
Roswell, GA  30075
mdturner@lawhuggins.com
fpeebles@lawhuggins.com
***Attorneys for Plaintiff***

</div>

This 17th day of August, 2023.

**SWIFT CURRIE MCGHEE & HIERS**

/s/  Kayla M. McCallum
Melissa A. Segel
Georgia Bar No. 020406
Kayla M. McCallum, Esq.
Georgia Bar No. 240946
***Attorneys for Defendant***

1420 Peachtree Street NE
Suite 800
Atlanta, GA  30309
(404) 874-8800
melissa.segel@swiftcurrie.com
kayla.mccallum@swiftcurrie.com

4889-5402-8152, v. 2