UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**KEITH CREWS,**<br><br>**Defendant.** | Civil Action No.:<br><br>_____<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Plaintiff," "Commission" or "SEC"), alleges the following:

1. This matter involves an affinity offering fraud perpetrated by Defendant Keith Crews ("Crews") through two entities which he owned and controlled, Four (4) Square Biz LLC ("4 Square Biz") and Stem Biotech LLC ("Stem Biotech").

2. Between at least October 2019 and May 2021, Crews raised at least $800,000 from approximately 200 investors – many of whom were solicited through

1

relationships in African-American and church communities – through the sale of a purported crypto asset security named "Stemy Coin."

3.  In connection with the offer and sale of Stemy Coin, Crews and his entities made numerous material misstatements and omissions, including that Stemy Coin was backed by stem cell technology and other assets, that Stem Biotech had existing operations and stem cell products, that Stem Biotech had existing partnerships with entities involved in the stem cell industry – with one of those entity's owners serving as the Chief Executive Officer of Stem Biotech – and that the investment in Stemy Coin would provide substantial dividend returns and "legacy wealth."

4.  In fact, Crews and his entities had no existing stem cell technology, products, or operations, there was no partnership with the claimed entities – much less service as CEO by one of those entity's leaders – and any returns on their Stemy Coin investment were highly speculative at best.

## VIOLATIONS

5.  Crews has engaged in and, unless restrained and enjoined by this Court, will continue to engage in acts and practices that constitute and will constitute violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], Section 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## DEFENDANT AND RELEVANT ENTITIES

6.     Defendant **Keith Crews**, 69 years old, is a resident of Kennesaw, Georgia.  Crews is the Chairman of and controlled Stem Biotech and 4 Square Biz for all times relevant to this complaint.

7.     **Four (4) Square Biz LLC** ("4 Square Biz") was a Wyoming limited liability company with its principal place of business in Kennesaw, Georgia.  4 Square Biz has been controlled by Crews since its formation.  On September 8, 2021, 4 Square Biz was administratively dissolved due to its failure to file its annual report.

8.     **Stem Biotech LLC** ("Stem Biotech") was a Wyoming limited liability company with its principal place of business in Kennesaw, Georgia.  Stem Biotech was owned by 4 Square Biz and controlled by Crews since its formation.  On July 9, 2021, Stem Biotech was administratively dissolved due to its failure to file its annual report.

## JURISDICTION AND VENUE

9.     The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77b] and Sections 21(d) and 21(e) of the

Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin Crews from engaging in the transactions, acts, practices, and courses of business alleged in this complaint, and transactions, acts, practices, and courses of business of similar purport and object, for civil penalties, and for other equitable relief.

10. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

11. Crews, directly and indirectly, made use of the mails and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

12. Venue is proper in this Court because certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act and the Exchange Act occurred in this District, Defendant Crews resides in this District and Stem Biotech and 4 Square Biz had their principal place of business in this District.

## THE OFFER AND SALE OF STEMY COIN

13. Crews formed 4 Square Biz in or about July 2018. According to its website, 4 Square Biz planned to develop online banking systems and exchanges using blockchain technology. In or about May 2019, Crews formed Stem Biotech as a subsidiary of 4 Square Biz.

14. Stem Biotech's purported "goal [was] to deploy worldwide advanced rejuvenation centers utilizing the latest and greatest stem cell technology to reverse aging and illness plaguing human beings on planet earth." Since the start of the pandemic in early 2020, Stem Biotech also represented that its stem cell treatments aid in the fight against Covid-19.

15. In or about May 2019, Crews, through 4 Square Biz and Stem Biotech, supposedly launched a crypto wallet to sell "Stemy Coin," a purported crypto asset allegedly backed by Stem Biotech's stem cell technology and hard assets such as gold.

16. From at least October 2019 to May 2021, Crews offered and sold Stemy Coin to investors (often through email or telephone) through specific and general solicitations, including information on 4 Square Biz's and Stem Biotech's websites, and a network of "ambassadors" who solicited investors using materials and information Crews created or reviewed and approved. Crews used his connections in the African-American community to solicit investors – many of whom were non-accredited – and also recruited investors through relationships at church and a Bible study.

17. Through these solicitations, 4 Square Biz's and Stem Biotech's websites and other offering materials provided to investors and prospective investors, Crews offered and sold Stemy Coin claiming, among other things, that:

5

- Stem Biotech had existing assets, operations, and products and a successful history and track record, including their own labs and stem cell products, a "legacy of delivering transformational treatments," "dozens of other FDA studies," and their "own research, as well as partnerships with universities, medical research institutions and other global pharmaceutical leaders, [through which] Stem Biotech is bringing forward scientific and clinical advancements that prevent, treat or cure life-threatening diseases";

- Stemy Coin "is backed by both stem cell technology and hard assets such as gold";

- Stem Biotech had a partnership with Alexandros LLC ("Alexandros") – an entity owned by Dr. Nayan Shah – and Dr. Shah was serving as Chief Executive Officer of Stem Biotech, overseeing "the company's research and preclinical programs," and "leading efforts to advance multiple products from early-stage research into clinical development";

- Stem Biotech had a partnership with BHI Therapeutic Sciences ("BHI"), an entity engaged in stem cell research and treatment;

- Crews was a successful businessman with experience in marketing, telecommunications, renewable energy, and oil and gas who had founded and/or served as the president and CEO of multiple, successful companies; and

- Investors would receive substantial returns on their investment through dividends and great increases in the value of Stemy Coin.

18. Through these and other misstatements and omissions, Crews lured as

many as 200 investors to invest at least $800,000 in Stemy Coin, several of whom invested their money through cash transfer apps and wire transfers.

## CREWS'S MATERIAL MISSTATEMENTS AND OMISSIONS

19.     Contrary to Crews's statements to investors and prospective investors, Stem Biotech never had any labs, delivered any treatments, conducted any stem cell research, developed or sold any stem cell products, had existing stem cell business operations or any legacy or track record in that area.  In short, none of Stem Biotech, 4 Square Biz or Crews owned stem cell technology or, upon information and belief, other assets to provide security to the investors of Stemy Coin.

20.     Additionally, neither Stem Biotech nor 4 Square Biz had any partnership with Alexandros, and Dr. Shah never served as an officer of Stem Biotech.  In May 2020, Dr. Shah specifically asked Crews to stop using his and Alexandros's name in connection with Crews's businesses.

21.     Similarly, none of Stem Biotech, 4 Square Biz or Crews ever had any rights to BHI's intellectual property.  In January 2021, BHI sent a cease and desist letter to Crews, requesting that he stop using BHI's name, logo, products, or videos to solicit investors for Crews's entities.

22.     Contrary to his portrayal as a successful business person, undisclosed to investors, Crews had also personally filed for bankruptcy multiple times.

23.     And, far from being a reliable source of future income and substantial

asset growth, any investment in Stemy Coin was highly speculative and uncertain at best.

24.     Stemy Coin cannot be traded, exchanged, or used to pay for services. Moreover, investors have not received any dividends or returns on their investments.

## CREWS'S SECURITIES REGISTRATION VIOLATIONS

25.     Crews engaged in the offers or sales of Stemy Coin without filing a registration statement with the Commission or without any exemption from registration available.

26.     Crews offered and sold these securities via email and publicly available websites, accepting investors from multiple states.

27.     Many of the investors made their investments by electronically transferring their funds through cash transfer apps or wire transfers.

28.     Many of the investors in Stemy Coin were not qualified as accredited investors.

29.     Crews did not take reasonable steps to verify that investors were accredited; he had little to no personal knowledge of most of the investors' financial circumstances and did not take steps to determine or verify their financial condition.

30.     While Crews subsequently sent out investor communications promising to return funds invested by unaccredited investors, upon information and

belief, no such investor funds have ever been returned.

## COUNT I
## FRAUD

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

31. Paragraphs 1 through 30 are hereby realleged and incorporated herein by reference.

32. Between at least October 2019 and May 2021, Crews, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities; all as more particularly described above.

33. Crews knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

34. While engaging in the course of conduct described above, Crews acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

35. By reason of the foregoing, Crews, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II
## FRAUD

## Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act
## [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

36. Paragraphs 1 through 30 are hereby realleged and incorporated herein by reference.

37. Between at least October 2019 and May 2021, Crews, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

> a. obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

> b. engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

38. By reason of the foregoing, Crews, directly and indirectly, has violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III
## FRAUD

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**

39. Paragraphs 1 through 30 are hereby realleged and incorporated herein by reference.

40. Between at least October 2019 and May 2021, Crews, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

   a. employed devices, schemes, and artifices to defraud;

   b. made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   c. engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

41. Crews intentionally and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business. In engaging in such conduct, Crews acted with scienter, that is, with an

intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

42. By reason of the foregoing, Crews, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Sections (a), (b), and (c) of Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)].

## COUNT IV
## SECURITES REGISTRATION VIOLATIONS

### Violations of Sections 5(a) and (c) of the Securities Act
### [15 U.S.C. §§ 77e(a) and 77e(c)]

43. Paragraphs 1 through 30 are hereby realleged and incorporated herein by reference.

44. Crews offered and sold securities in the form of Stemy Coins.

45. Crews used interstate transportation, communication or mails in connection with the sale of these securities.

46. At the time of the offer and sale of these securities, no registration statement was in effect nor any exemption applicable as to the securities offered and sold.

47. By reason of the foregoing, Crews has violated and, unless enjoined, will continue to violate Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

# **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully prays for:

## **I.**

Findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that Defendant Crews committed the violations alleged.

## **II.**

An order permanently restraining and enjoining Crews from the violations alleged herein.

## **III.**

An order requiring Crews to disgorge ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon.

## **IV.**

An order requiring Crews to pay a civil penalty pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

## **V.**

An order pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)]

and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] barring Crews from serving as an officer or director of a public company.

## VI.

An order pursuant to Section 20(b) of the Securities Act and Sections 21(d)(1) and/or 21(d)(5) of the Exchange Act permanently restraining and enjoining Crews from participating, directly or indirectly, in any offering of securities, including any crypto asset security; provided, however, that such injunction shall not prevent Crews from purchasing or selling securities for his own personal account.

## VII.

Granting such other and further relief as this Court may deem just, equitable, and appropriate.

## **JURY TRIAL DEMAND**

The Commission hereby demands a trial by jury as to all issues that may be so tried.

This 17th day of August 2023.

        Respectfully submitted,

        /s/M. Graham Loomis
        M. Graham Loomis
        Regional Trial Counsel
        Georgia Bar No. 457868
        loomism@sec.gov

        Paul Kim
        Senior Trial Counsel
        Georgia Bar No. 418841
        kimpau@sec.gov

        Attorneys for Plaintiff
        Securities and Exchange Commission
        950 East Paces Ferry Road, NE, Suite 900
        Atlanta, GA 30326
        Tel: (404) 842-7600
        Facsimile: (404) 842-7679