## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **SHEILA ALKAMEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No:** |
| **V.** | ) | |
| | ) | **Jury Trial Demanded** |
| **J.B. HUNT TRANSPORT, INC.** | ) | |
| **and UNUM LIFE INSURANCE** | ) | |
| **COMPANY OF AMERICA** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Sheila Alkamel, ("Plaintiff" or "Ms. Alkamel") files this Complaint against Defendants J.B. Hunt Transport, Inc. ("J.B. Hunt" or "the Company") and Unum Life Insurance Company of America. ("Unum") (collectively referred to as "Defendants") seeking relief and damages available under law, based on the following factual allegations and causes of action:

## NATURE OF THE ACTION

1.       This action to correct unlawful employment discrimination and retaliation arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e

*et. seq.* ("Title VII") and the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008 (collectively referred to as the "ADA").

## THE PARTIES

2.      Ms. Alkamel is an individual and a resident of the state of Georgia. During the time of the events alleged in this Complaint, Ms. Alkamel worked as a truck driver for J.B. Hunt.

3.      Ms. Alkamel is an African American adult female.

4.      J.B. Hunt is a domestic profit corporation registered with the Georgia Secretary of State Corporations Division.

5.       Unum is a foreign insurance company registered with the Georgia Secretary of State Corporations Division.

6.      J.B. Hunt is Plaintiff's employer.

7.      Unum is also Plaintiff's employer because J.B. Hunt delegated control to Unum concerning certain employment practices affecting Plaintiff.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

8.     On February 4, 2022, Plaintiff filed a Charge of Discrimination against Defendants J.B. Hunt and Unum with the Equal Employment Opportunity Commission ("EEOC") (See Exhibit No. 1).

9.     On March 31, 2022, Plaintiff filed an Amendment to her February 4, 2022, EEOC Charge of Discrimination (410-2022-02843) against Defendants. (See Exhibit No. 2).

10.    On May 19, 2023, the EEOC issued Plaintiff a Determination and Notice of Rights letter for EEOC Charge Number 410-2022-02843 and the amendment thereto ("Right to Sue Letter"). (See Exhibit No. 3).

11.    Plaintiff has filed this present civil action within 90 days of receiving the Right to Sue Letter.

## SUBJECT MATTER JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction concerning this civil action pursuant to 28 U.S.C.A. §§ 1331 and 1343.

13.    Venue is proper in this district and division under 28 U.S.C.A. § 1391, as Defendants conduct business in, and the alleged unlawful acts occurred in this district and division.

## PERSONAL JURISDICITON

14.     J.B. Hunt may be served with process concerning this civil action through its registered agent, listed with the Georgia Secretary of State: CSC of Cobb County, Inc., 192 Anderson Street, Suite 125, Marietta, Georgia 30060.

15.   Unum  may be served with process concerning this civil action through its registered agent, listed with the Georgia Secretary of State: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## FACTUAL ALLEGATIONS

### *History of Harassment and lodging Complaints*

16.     Plaintiff incorporates by reference paragraphs 1 through 14 hereinabove as though set forth fully and separately herein.

17.     J.B. Hunt is a freight shipping provider for large and small businesses. It is one of the largest trucking companies in the United States.

18.     In August of 2019 J.B. Hunt hired Ms. Alkamel to work as a full-time truck driver from its Lithia Springs, Georgia truck terminal ("the terminal").

19.    As a truck driver her primary job responsibility was to receive assignments that required her to drive a Company truck to transport and deliver cargo and freight for the Company's various customers.

20.    The terminal consists a of one-story industrial style building, and a large parking lot where cars, trucks and trailers are parked.

21.    Several employees work at this facility including but not limited to truck drivers, fleet managers, dispatchers, and a cleaning crew.

22.    Ms. Alkamel was one of very few women in a predominately male workforce at the terminal.

23.    Approximately a month into her employment with the Company, beginning in September of 2019 Ms. Alkamel began to be harassed daily by some of the men at work.

24.  This harassment was directed at her by male fleet managers as well as a male operations manager Billy Mosley, who oversaw managers at the terminal.

25.    In addition to being harassed by fleet manager and the operations manager, Ms. Alkamel was harassed by a male dispatcher, Andrew Charles Carson.

26.  Mr. Carson intentionally and repeatedly omitted the workload from the J.B. Hunt's computer system, after Ms. Alkamel had performed the work, which resulted in her not being paid for work she performed.

27.  Additionally, Mr. Carson would stare at Ms. Alkamel coldly whenever she entered an office he was in at work.  He also would walk very close to her in around the terminal in an intimidating manor.

28.  In addition to being harassed by fleet managers; the operations manager Bill Mosley; and dispatcher Mr. Carson, Ms. Alkamel was harassed by Phillip Busino a dispatcher at the terminal.

29.  Mr. Busino would verbally snap at Ms. Alkamel and speak harshly to her when she would ask him about the status of loads.

30.  Mr. Busino, to annoy, antagonize and ridicule Ms. Alkamel would ofter dispatch her to pick up loads that had already been picked up and delivered by other J.B. Hunt drivers.

31.  When she would return to the terminal he would mockingly ask her why she went to a particular location and laugh at her in ridicule.

32.  Mr. Busino would also frequently dispatch Ms. Alkamel to pick up loads and intentionally give her the wrong dispatch information and when she called

him for the correct information, he would ignore her calls, despite being on duty and answer calls from other drivers.

33.    In addition to being harassed by fleet managers; the operations manager Billy Mosley; dispatcher Mr. Carson; and dispatcher Mr. Businon , Ms. Alkamel was harassed by a cleaning crew employee Kelvin Omar Osorio Rosales ("Mr. Rosales").

34.    Mr. Rosales made unwanted sexual advances towards Ms. Alkamel.  He asked her if she wanted to have sexual intercourse inside one of the truck trailers. He also exposed his genitals during work hours while at the terminal to her while propositioning her for sex.

35.  Ms. Alkamel reported the constant harassment she was subjected to from the male employees to a Company Human Resources ("H.R.") Representative, Ivy Williams; H.R. Vice President Megan Perez; the Douglas County Sheriff's Office and the EEOC.

36.  After her complaint to H.R., a Company employee Herman (Last Name Unknown "LNU") told her that Mr. Mosley was very upset with her and would send his goons after her to harm her once things calmed down at work.

37.  After  filing her complaint to H.R. concerning Mr. Mosley and Herman's ominous and threatening statements, beginning in December of 2021 and regularly

7

thereafter, Ms. Alkamel began being followed and stalked by strange men during her time away from the terminal.

38.    On one occasion on or about August 2021. A strange man began knocking on her back bedroom window at around 3:45 a.m. in the morning. Her back yard was dark and private, but the man was caught on an infrared surveillance camera. She was terrified and did not answer the knock. She called the police instead. When the police arrived, the man was gone. Upon information and belief this person was sent by Mr. Mosley to intimidate her.

39.    On December 31, 2021, she was stalked by a strange man while at a public car wash. Upon information and belief this person was sent by Mr. Mosley to intimidate her.

40.  After her report to the Douglas County Sherriff's Office, a male cleaning service employee, who knew Mr. Rosales, began to stare her down, invade her personal space and intimidate her.

41.  Upon information and belief, this individual cut Ms. Alkamel's radiator hose causing her to replace her car engine.

42.  Ms. Alkamel once again reported this harassment to the Douglas County

43.    Ms. Alkamel complained to J.B. Hunt of these and several other

incidents of her being followed by strange individuals in her private life after receiving a direct threat from Herman on behalf of Mr. Mosley.

44.  She sent a letter on December 22, 2021 to J.B. Hunt's Human Resources representative Megan Perez advising J.B. Hunt to instruct employees to cease and desist from the threatening behavior.

### *FMLA and Disability Leave*

45.      On or about February of 2021 Ms. Alkamel filed for FMLA leave and short-term disability with JB Hunt and the agent it uses for processing these requests, UNUM.

46.      Her request for FMLA and short-term disability were because of issues she was having with her knees.

47.      Her request for short-term disability leave was approved and while on leave it converted to long-term disability leave.

48.      In November of 2021 Ms. Alkamel submitted a request to Unum and JB Hunt for additional leave as an ADA accommodation.

49.      In January of 2022 J.B. Hunt began to ask her doctor for a return-to-work date. Her doctor notified J.B. Hunt that she was not able to return to work as a driver because she was not fully recovered, but she could perform some light duty.

50.   J.B. Hunt responded that this was not an option, and they did not offer light duty and that if she cannot come back as a driver she could not work for J.B. Hunt.

51.   Her doctor indicated that she would most likely be released to return to work in March of 2022.

52.    In January of 2022, a few weeks thereafter, she learned that J.B. Hunt prematurely ended the process of considering her extended leave request that she was requesting as an accommodation under the Americans with Disabilities Act.

### *Unum as Ms. Alkamel's Employer*
### *for Certain Purposes*

53.    In addition to J.B. Hunt being Ms. Alkamel's Employer, Unum is also her employer because J.B. Hunt contracted with Unum as its agent for certain purposes directly affecting Ms. Alkamel's employment with Unum.

54.   J.B. Hunt and Unum entered into a contract concerning the administration of various types of leave J.B. Hunt provides to its employees pursuant to the various laws and benefits the Company provides.

55.    Ms. Alkamel was one of said employees covered under the contract between J.B. Hunt and Unum.

56.     Ms. Alkamel submitted her request for FMLA leave to Unum pursuant to the contract between J.B. Hunt and Unum.

57.     Ms. Alkamel submitted her request for short-term disability leave to Unum pursuant to the contract between J.B. Hunt and Unum.

58.     Ms. Alkamel submitted her request for long-term disability leave to Unum pursuant to the contract between J.B. Hunt and Unum.

59.     On or about November of 2021, Ms. Alkamel submitted a request for additional leave as an ADA Accommodation to Unum pursuant to the contract between J.B. Hunt and Unum.

60.     Unum received documents and communications from Ms. Alkamel, in place of J.B. Hunt, concerning her requests for FMLA leave, disability leave and additional leave as an ADA accommodation.

61.     Unum representative and J.B. Hunt representative conferred concerning Ms. Alkamel's request for FMLA leave, disability leave and additional leave as an ADA accommodation; accordingly, Unum and J.B. Hunt were well aware of Ms. Alkamel information concerning these matters.

62.    Unum and J.B. Hunt conferred concerning the termination of Ms. Alkamel's employment in January of 2022.

### *Termination of Employment*

63.    In January of 2022 Ms. Alkamel learned that J.B. Hunt and Unum separately and independently our jointly terminated her employment.

64.    On or about January 16, 2022, Ms. Alkamel learned that her CIGNA medical insurance benefits was discontinued.

65.    On or about January 17, 2022, Ms. Alkamel contacted J.B. Hunt's H.R. Department, and it was then that they confirmed that her employment with J.B. Hunt ended effective January 7, 2022.

66.    Ms. Alkamel spoke to a supervisor, Amanda, and told her that she had not been given notice that her employment and insurance had ended. Amanda checked the system and told Ms. Alkamel that Billy Mosley input the discontinuance of her employment and was supposed to have contacted her regarding the matter but he did not.

### **COUNT I**

### *(Against J.B. Hunt)*

## Gender-based hostile work environment in violation of Title VII

67.    Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

68.    As a woman, Plaintiff belongs to a protected group under Title VII.

69.    Plaintiff was subjected to unwelcome harassment by several J.B. Hunt male employees.

70.    The harassment directed at Plaintiff was based on her gender as a woman in a male dominated work environment.

71.    The harassment she experienced was pervasive as it persisted on weekly basis all throughout her employment and even while she was on FMLA and disability leave.

72.    Some the harassment she experienced was severe.

73.    J.B. Hunt knew or should have known of the pervasiveness and/or severity of the harassment she experienced engaged in by her co-workers; as such, J.B. Hunt is liable to Plaintiff for the harassment she experienced from her non-supervisory co-workers.

74.    Plaintiff reported, on several occasions, the harassment she experienced; but J.B. Hunt failed to take prompt and effective remedial action to end the

harassment; as such, J.B. Hunt is liable to Plaintiff for the harassment she experienced concerning her supervisory co-workers.

## COUNT II

### *(Against J.B. Hunt)*

### Retaliatory Termination in violation of Title VII

75.     Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

76.     Plaintiff engaged in protected activity by opposing harassment and discrimination she reasonably believed was in violation of Title VII.

77.     J.B. Hunt was aware of Plaintiff's protected activity opposing harassment and discrimination, by way of the internal complaints she lodged, the incident reports she filed with the law enforcement, a former EEOC charge she filed and lastly a cease and desist letter she sent on December 22, 2021 concerning harassment.

78.   Within two weeks of sending her December 22, 2021 letter to J.B. Hunt effective January 7, 2022, J.B. Hunt terminated Ms. Alkamel's employment.

79.     J.B. Hunt is liable to Ms. Alkamel for terminating her employment in retaliation for engaging in oppositional protected activity.

14

## COUNT III

### *(Against J.B. Hunt and Unum Jointly and Severally)*

### Denial of a Reasonable Accommodation in violation of the ADA

80.     Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

81.     Plaintiff is a person with a disability within the meaning of the ADA.

82.     Both J.B. Hunt and Unum had notice of Plaintiff's disability.

83.     Plaintiff would have been able to perform the essential functions of her job as a truck driver for J.B. Hunt.

84.     Plaintiff asked J.B. Hunt and Unum for extended leave as a reasonable accommodation.

85.     J.B. Hunt and  Unum, jointly and severally, refused to provide Plaintiff with a reasonable accommodation in violation of the ADA.

## COUNT IV

### *(Against J.B. Hunt and Unum Jointly and Severally)*

### Discriminatory Termination in violation of the ADA

86.   Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

87.   Plaintiff is a person with a disability within the meaning of the ADA, in that she had an actual disability or was regarded by J.B. Hunt and/or Unum as an individual with a disability.

88.   Both J.B. Hunt and Unum had notice of Plaintiff's disability.

89.   Plaintiff was a qualified individual meaning that she was able perform the essential functions of her job as a truck driver for J.B. Hunt with a reasonable accommodation.

90.   Defendants terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

91.   By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendants violated the ADA.

92.   Defendants treated other employees outside Plaintiff's protected class differently.

93.   Defendants' actions in subjecting Plaintiff to different terms and conditions of employment on the basis of disability constitute unlawful discrimination in violation of the ADA.

## COUNT V

*(Against J.B. Hunt and Unum Jointly and Severally)*

**Retaliatory Termination in violation of the ADA**

94.   Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

95.   In November of 2021 Plaintiff engaged in statutorily protected expression under the ADA by requesting extended leave as a reasonable accommodation.

96.   J.B. Hunt and Unum were aware of Plaintiff's statutorily protected activity by way of her request.

97.   Within two months effective January 7, 2022, J.B. Hunt terminated Ms. Alkamel's employment.

98.   J.B. Hunt is liable to Ms. Alkamel under the ADA for terminating her employment in retaliation for engaging in statutorily protected expression.

## COUNT VI

*(Against J.B. Hunt and Unum Jointly and Severally)*

**Punitive Damages**

99.    Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

100.    Defendants engaged in discriminatory and retaliatory practices, as set forth herein, with malice or with reckless indifference to the federally protected rights of Plaintiff.

101.    Accordingly, Defendants must pay Plaintiff punitive damages in accordance with applicable law.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff demands a trial by jury and that the following relief be granted:

A.    Back pay and front pay, as well as lost benefits;

B.    Compensatory damages, including but not limited to compensation for her emotional distress, mental anguish, and inconvenience;

C.    Liquidated damages;

D.     Punitive damages based on Defendants' willful, malicious,

       intentional, and deliberate acts;

E.     Attorneys' fees and costs of litigation;

F.     Prejudgment and post-judgment interest; and

G.     Other relief deemed appropriate by the Court.

Respectfully submitted, this 17th day of August, 2023.

**HKM EMPLOYMENT ATTORNEYS LLP**
By: s/ *Jermaine A. Walker*
Jermaine "Jay" A. Walker
Ga. Bar No. 142044
3344 Peachtree Road NE, Suite 800 (Office #35)
Atlanta, Georgia 30326
(telephone) 404-301-4020
(fax, same #) 404-301-4020
jwalker@hkm.com

**Attorney for Plaintiff**